Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

*Counsel for Defendant listed on next page.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **JOINT STIPULATION**<br>) **REGARDING PLAINTIFFS'**<br>) **MOTION TO DENY ACCESS TO**<br>) **CONFIDENTIAL INFORMATION**<br>) **TO DR. MARCO PEREZ**<br>)<br>) [Discovery Document: Referred to<br>) Magistrate Judge John D. Early]<br>)<br>) Date:      Thurs., June 24, 2021<br>) Time:      10:00 a.m.<br>) Ctrm:      6A<br>)<br>) Discovery Cut-Off:      7/5/2021<br>) Pre-Trial Conference:   3/21/2022<br>) Trial:      4/5/2022<br>)<br>) Hon. James V. Selna<br>) Magistrate Judge John D. Early |

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTORY STATEMENTS ....................................................1

    A.   Plaintiffs' Introductory Statement ...................................1

    B.   Apple's Introductory Statement .......................................2

II.  CONTENTIONS AND POINTS OF AUTHORITY .............................5

    A.   Plaintiffs' Contentions and Points of Authority ............5

        1.   Procedural Background ...........................................5

        2.   This Court Should Deny Dr. Perez Access To Plaintiffs' Confidential Materials Unless He Agrees To The Reasonable Restrictions Plaintiffs Have Proposed ...........................................................7

            a.   The Risk That Dr. Perez Will Use Plaintiffs' Confidential Information Relating To Developing Clinical Research Protocols When  Dr. Perez Is Developing His Own Clinical Research Protocols Is Unacceptably High .........................................8

            b.   The Risks to Plaintiffs Outweigh any Harm to Apple ............................................10

    B.   Apple's Response...............................................................11

        1.   Factual and Procedural Background.....................11

        2.   Plaintiffs Seek to Impose an Unfair Standard that Effectively Precludes Apple from Hiring *Any* Practicing Physician Qualified to Opine on Clinical Protocols .................................................17

        3.   Plaintiffs Fail to Meet Their Burden to Exclude Dr. Perez ...............................................................18

            a.   Plaintiffs' Assertion that Dr. Perez Will Use Plaintiffs' Unspecified Confidential Information Regarding Clinical Research Protocols in His Work Is Speculative ......................18

            b.   Plaintiffs' Allegations Of Harm Are Equally Unfounded. ................................23

-i-

# TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

4.   Plaintiffs' Protective Order, Which Was Adopted
by This Court, Requires No Future Restrictions
on an Expert's Ability to "Consult" in the Field ...............26

5.   Plaintiffs Have Waived Their Objections to Dr.
Perez ....................................................................................27

**TABLE OF AUTHORITIES**

**Page No(s).**

*Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*,
  2011 WL 197811 (N.D. Cal. Jan. 20, 2011) ........................................... *passim*

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1992)................................................................ 7, 18

*Digital Equip. Corp. v. Micro Tech., Inc.*,
  142 F.R.D. 488 (D. Colo. 1992)............................................................ *passim*

*Emerson Electric Co. v. Sipco, LLC*,
  2016 WL 6833741 (N.D. Cal. Nov. 21, 2016)...................................... 10, 24

*FTC v. Exxon Corp.*,
  636 F.2d 1336 (D.C. Cir. 1980) ............................................................ 8, 22

*Glaukos Corp. v. Ivantis, Inc.*,
  No. 8:18-cv-00620-JVS-JDE, Dkt. No. 36
  (C.D. Cal. Aug. 3, 2018) ..................................................................... 22

*Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*,
  2013 WL 3367575 (S.D. Cal. July 5, 2013)......................................... 25, 27

*Masimo Corporation v. True Wearables, Inc.*,
  8:18-cv-02001-NS ............................................................................... 23

*Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*,
  242 F.R.D. 552 (C.D. Cal. 2007) ......................................................... 18

*ODS Techs., L.P. v. Magna Entm't Corp.*,
  583 F. Supp. 2d 1141 (C.D. Cal. 2008)................................................. 20

*Parsons Xtreme Gold LLC v. Taylor Made Gold Co.*,
  2018 WL 6242280 (D. Ariz. 2018) ....................................................... 20

*Realtime Adaptive Streaming LLC v. Adobe Sys. Inc.*,
  2019 WL 11717183 (C.D. Cal. May 14, 2019)..................................... 24

*Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*,
  682 F. Supp. 20 (D. Del. 1988) ............................................... 9, 11, 22

# TABLE OF AUTHORITIES
*(cont'd)*

**Page No(s).**

*Santella v. Grizzly Indus., Inc.*,
  2012 WL 5399970 (D. Or. Nov. 5, 2012) .................................................. 4, 25

*Sip-Top, Inc. v. Ekco Grp, Inc.*,
  86 F.3d 827 (8th Cir. 1996) .......................................................................... 19

*Symantec Corp. v. Acronis Corp.*,
  No. 11-5310 EMC JSC, 2012 WL 3582974
  (N.D. Cal. Aug. 20, 2012) ............................................................. 8, 9, 23, 24

*Voice Domain Techs., LLC v. Apple, Inc.*,
  No. 4:13-cv-40138-TSH, Dkt. 45 (D. Mass. July 17, 2014).................. *passim*

*Whitehead v. Gateway Chevrolet, Oldsmobile*,
  2004 WL 1459478 (N.D. Ill. June 29, 2004) ................................................ 27

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 37 ........................................................................ 1

Federal Rule of Civil Procedure 65 ...................................................................... 21

Local Rule 37................................................................................................. *passim*

Rule 37 ................................................................................................................. 27

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as movant, and Defendant Apple Inc. ("Apple"), as respondent, through their respective counsel of record, submit this Joint Stipulation in connection with Plaintiffs' motion to deny access to Plaintiffs' confidential information to Dr. Marco Perez.

# I.  <u>INTRODUCTORY STATEMENTS</u>

## A.  <u>Plaintiffs' Introductory Statement</u>

Pursuant to Local Rule 37-1, the parties prepared this Joint Stipulation following the conference of counsel, which took place on May 14, 2021, and was followed by numerous email exchanges and proposals.

Plaintiffs object to one of Apple's proposed experts, Dr. Marco Perez, receiving access to Plaintiffs' confidential information without further restrictions on his future work.  In the past few years, Dr. Perez helped Apple develop clinical research protocols and strategies.  Apple concedes that "Dr. Perez did help design the protocols for the Apple Heart Study."  Ex. 1[1] (May 6, 2021 email from Kaounis to Oldham).  Thus, Plaintiffs have grave concerns that Dr. Perez may develop clinical research protocols and strategies for Apple or others in the near future after reviewing Plaintiffs' confidential information for developing similar clinical protocols.  This would place Dr. Perez in the impossible position of trying to segregate the confidential information he learned from participating in this litigation as he develops clinical research protocols and strategies in his future work for Apple and others.

Because of these concerns, Plaintiffs requested that Dr. Perez agree not to develop clinical research protocols and strategies for Apple (or any third-party

---

[1] All exhibits in Plaintiffs' sections are attached to the Declaration of Perry D. Oldham, filed concurrently.

commercial enterprise) for the duration of this litigation plus two years.  Ex. 3. Plaintiffs explained that "[t]his agreement will not prevent [Dr. Perez] from collecting data pursuant to clinical protocols." *Id*.  Dr. Perez would remain free to participate in clinical protocols and practice medicine; he just could not develop clinical protocols for any commercial enterprise.

Apple refused Plaintiffs' proposal, describing it as "not workable for Dr. Perez." Ex. 2 (May 18, 2021 email from Kaounis to Oldham).  Apple argued the agreement would impose "further limitations on Dr. Perez's ability to practice medicine and engage in clinical research." *Id*.  Apple's response heightened Plaintiffs' concern that Dr. Perez planned to engage in the development of clinical protocols – precisely the subject matter of Plaintiffs' confidential information.  Even the utmost good faith by Dr. Perez would not guard against him developing clinical protocols in light of his knowledge of the confidential information that he reviews in this litigation.

Plaintiffs should not be required to disclose confidential information to potential experts under these circumstances.  Courts consistently recognize that it is impossible for the human mind to suppress or erase information learned through litigation that is relevant to that person's future work.  Moreover, the risk to Plaintiffs from the misuse of their confidential information to benefit competitors outweighs any potential inconvenience to Apple.  Dr. Perez is not the only potential expert in this field.  Accordingly, Plaintiffs now move to exclude Dr. Perez from receiving Plaintiffs' confidential information absent his agreement that he will not, for any commercial enterprise, develop clinical protocols in the subject areas for which he receives confidential information.

**B.**    **Apple's Introductory Statement**

The Court should reject Plaintiffs' attempt to prevent Apple from hiring Dr. Perez—or, if Plaintiffs' position is accepted, any other qualified expert—to enable Apple to defend against the remainder of Plaintiffs' claim that Apple

misappropriated certain "business and marketing" and hospital-related trade secrets.  Dr. Perez is an Associate Professor of Cardiovascular Medicine at Stanford University.  Perez Decl. ¶ 3.  He is a Director of Stanford's Inherited Cardiac Arrhythmia Clinic and Electrocardiography Department.  *Id*.  He has agreed to sign on to the Protective Order here and to other reasonable restrictions.  There are four reasons to reject Plaintiffs' attempt to scuttle Dr. Perez's expert work for Apple:

*First*, as demonstrated by the rest of the arguments below, Plaintiffs' position—that Dr. Perez should be excluded because he has developed clinical protocols in the past and will again in the future—violates fairness and common sense.  Plaintiffs allege broad secrets concerning "confidential information relating to developing clinical research protocols" (J.S. at 8), and insist that no one at Apple can see the alleged secrets to assist in Apple's defense.  Under the standards Plaintiffs apply to Dr. Perez, Apple does not believe that any expert with current knowledge of this category of secrets could testify for Apple.  If Apple cannot have an expert with experience related to the alleged secrets to assist it in the case—which is the logical result of Plaintiffs' position—Apple's ability to defend itself is not just impaired; it is eliminated.  Furthermore, Plaintiffs are trying to impose a double-standard for Apple's experts as compared to their own personnel—claiming experience and consulting are beneficial and acceptable as to their outside counsel and experts, respectively, but not as to Dr. Perez.  Plaintiffs' position is fundamentally unfair and improper.  Indeed, Plaintiffs' counsel, who sits on Masimo's Board, is allowed to see Apple's most sensitive documents because he—just like Dr. Perez—is willing to swear to abide by the Protective Order.  If Plaintiffs' motion is granted, it would allow Plaintiffs to continue using their chosen counsel and experts while incongruently excluding Apple from doing the same.  The motion should be denied for this reason alone.

*Second*, Plaintiffs' argument is based on speculation, not facts.  Plaintiffs observe that Dr. Perez has previously consulted for Apple (*supra*, § I.A).  Because of that, they argue there is some unknown (and purportedly unacceptable) risk of disclosure of their *unspecified* confidential information that he might receive in this case in certain *unnamed* "subject areas" unless he agrees to restrict his consulting work in those areas for two (2) years <u>after</u> the termination of this case, <u>including appeals</u> (*see* Plts' Proposed Order, ¶ 2).  With an April 2022 trial date—and Plaintiffs seeking an extension until July 2023 (Dkt. 383-1)—that prohibition will last 3-4 years.  Regardless, Plaintiffs fail to connect *any* specific facts about their alleged secrets to any work that Dr. Perez has or even *might* conduct.  Plaintiffs' allegations of harm are equally baseless.  Mr. Perez has addressed Plaintiffs' concerns about algorithms.  If Plaintiffs are blocking experts for Apple based on these conditions, Plaintiffs must at least provide some factual backup for their alleged concerns.

*Third*, Plaintiffs' cases do not support their motion.  Plaintiffs' reasons for excluding Dr. Perez are not remotely comparable to their cases, which involve patent prosecution bars, source code, and competitive decision-making—none of which are at issue here.  Dr. Perez was a Co-Principal Investigator for the Apple Heart Study, which concluded over two years ago.  He is not a technical expert working with patents in this case (Kaounis Decl. ¶ 2), he is not a competitive or strategic decision-maker for Apple (Perez Decl.,¶ 7), and he expressly has agreed (i) not to review algorithms (Ex. 4 at 22) and (ii) to the Protective Order's future limits on serving as an "an officer, director, or employee of a Party or of a competitor of a Party."   Kaounis Decl., Ex. A, at 37; *see Santella v. Grizzly Indus., Inc.*, 2012 WL 5399970, at *6 (D. Or. Nov. 5, 2012) (where expert was "involved with an organization" "composed of [objecting party's] competitors," that "competitive relationship alone" was

/ / /

1  insufficient to find that the expert "will inadvertently disclose . . . confidential
2  information").

3  *Finally*, Plaintiffs' positions are inconsistent with the Protective Order.
4  Dr. Perez qualifies as a former consultant under the Protective Order, yet
5  Plaintiffs try to treat him as an employee.   Even if Plaintiffs were not
6  misconstruing the Protective Order, they have waived any right to seek limits on
7  Dr. Perez's future consulting work by failing to (1) timely meet and confer
8  under the Protective Order, (2) comply with the Protective Order's Joint
9  Stipulation requirement, and (3) meet and confer under Local Rule 37.
10 Plaintiffs' objection to Dr. Perez is purely a litigation tactic to prevent Apple
11 from using the expert of its choice—notably, their third attempt to exclude one
12 of Apple's chosen experts.

13 Plaintiffs' position is unfair and improper.  The motion should be denied.

14 ## II.  CONTENTIONS AND POINTS OF AUTHORITY

15 **A.   Plaintiffs' Contentions and Points of Authority**

16 **1.   Procedural Background**

17 On April 20, 2021, Apple first notified Plaintiffs that it intended to
18 disclose confidential materials to Dr. Perez.   *See* Ex. 1.   Pursuant to the
19 Protective Order, fourteen days later, on May 4, 2021, Plaintiffs notified Apple
20 in writing that they object to the disclosure of confidential information to
21 Dr. Perez. *See Id*. *See also* Dkt. 67 § 9.2(c) (providing 14 day window to object
22 to disclosures to experts).   Plaintiffs explained, among other things, that Dr.
23 Perez had previously consulted for Apple regarding the development of
24 protocols from clinical studies.  *See Id*.  Accordingly, Plaintiffs requested that
25 Dr. Perez agree to refrain from performing such work in the future for Apple
26 and others as a condition of receiving Plaintiffs' confidential information. *See*
27 *Id*.
28 / / /

Apple responded on May 6, 2021, confirming that "Dr. Perez did help design the protocols for the Apple Heart Study." *Id.* Nevertheless, Apple refused to agree to Plaintiffs' proposed restriction for Dr. Perez. *Id.* On Friday, May 14, 2021, the parties then met and conferred regarding the disclosure of confidential information to Dr. Perez and specifically discussed Plaintiffs' proposal that Dr. Perez agree to restrictions on his future work. Oldham Decl. ¶ 2. On Monday, May 17, 2021, Plaintiffs sent a formal written proposal to Apple. *See* Ex. 2 (May 17, 2021 email from Oldham to Kaounis); Ex. 3 (proposal). The following day, Apple rejected the relevant portion of the proposal and sent Plaintiffs a counter-proposal. *See* Ex. 2(May 18, 2021 email from Kaounis to Oldham); Ex. 4 (counter-proposal). The counter-proposal contained no restrictions regarding Dr. Perez's development of clinical research protocols. *See* Ex. 4. The following day (May 19, 2021), Plaintiffs sent a revised proposal to Apple. *See* Ex. 2; Ex. 5 (first revised proposal). Apple did not respond to that proposal. On May 20, 2021, Plaintiffs sent another proposal. *See* Ex. 2; Ex. 6 (second revised proposal). Apple rejected Plaintiffs' proposals and reverted back to its original proposal from May 18, 2021. *See* Ex. 2 (May 20, 2021 email from Kaounis to Oldham). Plaintiffs tried one last time on May 20, 2021 to reach agreement with another revised proposal. *See* Ex. 7 (May 20, 2021 email from Oldham to Kaounis); Ex. 8 (third revised proposal). On May 21, 2021, Apple provided a response. *See* Ex. 7 (May 20, 2021 email from Kaounis to Oldham); Ex. 9 (revised counter-proposal). Apple remained entrenched in its original proposal regarding the issue of developing clinical protocols.

In recent correspondence, Apple has complained that the parties' conference of counsel on May 14, 2021 was untimely. *See* Ex. 7 (May 20, 2021 email from Kaounis to Oldham). Apple has pointed to a sentence in Section 9.2(c) of the Protective Order, which states: "If an objection is received within

that fourteen (14) day period, the Parties agree to meet and confer within seven (7) days following the objection and to use good faith to resolve any such objection." Dkt. 67 ¶ 9.2(c). However, Apple has never alleged any prejudice arising from the parties' mutual oversight of this provision.

Moreover, the Protective Order does not specify **who** is responsible for scheduling the meeting of counsel. In past disputes regarding disclosures to proposed experts, the party retaining the expert and seeking to make the disclosure has requested the conference of counsel. *See* Ex. 10. In connection with the present dispute, however, Apple never requested any conference of counsel. Apple's current position that the burden was on Plaintiffs to schedule the conference is inconsistent with the parties' prior practice under the Protective Order.

Finally, the Protective Order does not specify any remedy for a non-prejudicial, very short delay in scheduling the conference of counsel. Certainly, it does not suggest the draconian remedy of denying a motion to preclude an expert from receiving confidential information, as Apple seems to contend.

> **2.** **This Court Should Deny Dr. Perez Access To Plaintiffs' Confidential Materials Unless He Agrees To The Reasonable Restrictions Plaintiffs Have Proposed**

Under the Protective Order, if a party objects to the disclosure of confidential information to an expert, "[t]he objecting Party shall have the burden of proving the need for a protective order." Dkt. 67 at ¶ 9.2(c); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (objecting party bears the burden of establishing risk of disclosure). Plaintiffs have met their burden here because the risk of inadvertent use of confidential information by Dr. Perez greatly outweighs any inconvenience to Apple from retaining an alternative expert.

/ / /

**a.** **The Risk That Dr. Perez Will Use Plaintiffs' Confidential Information Relating To Developing Clinical Research Protocols When Dr. Perez Is Developing His Own Clinical Research Protocols Is Unacceptably High**

Dr. Perez has a history of developing clinical research protocols, including the recent Apple Heart Study for Apple. Apple has made clear he has every intention to continue developing clinical research protocols in the future.

Courts uniformly recognize that this set of circumstances places even the most well-intentioned recipient of confidential information in an impossible position and requires the exclusion of that person from receiving confidential information. As explained by one Court of Appeals, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980). Accordingly, the Court of Appeals affirmed the preclusion of disclosure of confidential information. *Id*.

Similarly, the Northern District of California has observed that, "[a] review of the relevant case law supports a finding that [an expert's] ongoing work in the field of [the litigation] creates a substantial risk and that absent a showing that [the expert] possesses unique expertise he should not be allowed access to [a party's] highly confidential information." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC JSC, 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012). The court noted that "[n]either the parties nor the Court on its own have been able to identify a case within the Ninth Circuit where a party's objections to an expert were overruled where that expert actively consulted in the very field at issue." *Id.* at *3 n.1. The court added that sustaining the objections did not effectively allow veto power with respect to the other side's experts. *Id.* The court found it was entirely reasonable to insist that litigants / / /

retain technical experts who do not work for or consult with competitors in the field of the litigation. *Id.*

The other courts to address the issue have reached the same conclusion. For example, the court in *Digital Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 492 (D. Colo. 1992), precluded access to confidential information in circumstances similar to those here. The court explained that "[o]nce [the plaintiff's] confidential and proprietary data is reviewed by [the proposed expert], it will become part of his general acquired knowledge, which cannot be 'unlearned' or utilized only on a selective basis." *Id.* *See also Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) ("Mr. Greene is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from Sundstrand's documents from those he develops from his own ideas.").

Even Apple recognized this in another federal case. When it was seeking to exclude an opposing party representative from having access to its confidential information, Apple argued that "[c]ourts have recognized the high risk of inadvertent use of highly confidential information *if disclosed to inventors, engineers and scientists*." *Voice Domain Techs., LLC v. Apple, Inc.*, No. 4:13-cv-40138-TSH, Dkt. 45 (D. Mass. July 17, 2014) (emphasis added) (citing cases holding that, even with the best of intentions, it is not reasonable to expect an inventor to segregate information acquired under a protective order). The same analysis and considerations apply here. Dr. Perez can either continue to develop clinical research protocols commercially – the field of Plaintiffs' confidential information – *or* he can access Plaintiffs' confidential information. He should not be allowed to do both.

/ / /

/ / /

-9-

**b.**     <u>The Risks to Plaintiffs Outweigh any Harm to Apple</u>

Courts also balance the risk of inadvertent use or disclosure against the potential harm to the non-movant from restricting its choice of experts.  As the party seeking disclosure, Apple bears the burden to show that there is a dearth of experts in the field or that Apple will be seriously prejudiced by the exclusion of this particular expert.  *See Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*, 2011 WL 197811 at *5 (N.D. Cal. Jan. 20, 2011); *Emerson Electric Co. v. Sipco, LLC*, 2016 WL 6833741 at *5 (N.D. Cal. Nov. 21, 2016) (party seeking access bears the burden of establishing that the injury from restrictions imposed on its choice of expert exceeds the risk of inadvertent use).

As the court explained in *Applied Signal*, the typical "concerns about the potential injury" from denying a party their "choice of counsel" are not present when excluding experts.  *Applied Signal*, 2011 WL 197811 at *5 ("Requiring a party to replace counsel with whom they may have a longstanding relationship 'creates a much greater burden than requiring a party to hire different experts.'") In that case, the court noted that the party had "already been able to retain two experts" and made "no showing that there is a dearth of experts in the field . . .." *Id.*

Apple never asserted that it cannot locate another qualified expert.  Surely, there are other qualified individuals who have expertise in the development of clinical research protocols, but who are either no longer actively participating in that specific field, or would be willing to refrain from doing so during their service as an expert in this case and for two years thereafter.  As the courts have recognized, it would be a simple matter for Dr. Perez, or an alternate expert, to agree not to participate in the field for a brief period of time to help ensure that Plaintiffs' confidential information is not inadvertently misused.  *See Digital Equipment*, 142 F.R.D. at 492 (explaining that the excluded expert

-10-

1   would be permitted to review confidential information upon "relinquishing his
2   non-litigation consulting duties for Micro and agreeing to forego such
3   assignments in the future"); *Safe Flight*, 682 F. Supp. at 22 ("plaintiff has not
4   assured the Court that Mr. Greene is willing to curtail his future research of
5   wind shear equipment").   Thus, Apple should have no difficulty finding an
6   expert – including Dr. Perez himself if he would agree to reasonable restrictions.

7        In short, Apple has not identified any prejudice that would outweigh the
8   risk of inadvertent disclosure or misuse of Plaintiffs' information.   The Court
9   therefore should exclude Dr. Perez from accessing Plaintiffs' confidential
10  information unless he agrees to refrain from developing clinical research
11  protocols for commercial enterprises for the duration of this litigation plus two
12  years.

13  **B.**   **Apple's Response**

14       **1.**   **Factual and Procedural Background**

15  Dr. Perez:   Dr. Perez is a practicing cardiologist and Stanford professor
16  whose work involves, *inter alia*, treating patients, clinical research, and
17  advising/mentoring students as a research advisor.   Perez Decl. ¶¶ 3, 5 & Ex. A.
18  To assist his patients and maintain his position at a leading university, he
19  conducts research and has authored (or co-authored) more than 90 peer-
20  reviewed publications.  *Id*. ¶ 6 & Ex. A.

21  Dr. Perez's Work on Algorithms:   Dr. Perez is developing Artificial
22  Intelligence/Machine Learning algorithms in a study sponsored by the NIH that
23  utilizes Electrocardiogram ("ECG") measurements, as well as genetic and other
24  clinical data to help predict patient outcomes after catheter-based ablation[2] for
25  atrial fibrillation.   Perez Decl. ¶ 8; *see* Ex. 1 at 9.  ***Algorithms are not at issue***

26  _____

27  [2] Ablation involves the surgical removal of tissue to block abnormal electrical
28  signals to the heart and restore a normal heartbeat.   Perez Decl. ¶ 8, n.1.

-11-

*here because Dr. Perez has agreed to not review algorithms for calculating heart rate, oxygen saturation, electrocardiograms, or arrhythmia detection designated by Plaintiffs as "Confidential" or "Highly Confidential."* Ex. 7 at 29.

Clinical Protocols: A clinical protocol is a particular research plan created to conduct a specific clinical study. As Dr. Perez explains, each clinical protocol is tailored to the specific objectives, population, methodology, data limitations and statistical considerations of the clinical trial at issue. Perez Decl., ¶ 12. Moreover, certain regulatory requirements apply to research protocols, and the NIH provides many resources for protocol development to assist investigators in writing and developing compliant clinical protocols. *Id.* For these reasons, Plaintiffs' request that Dr. Perez refrain from developing, or contributing to the development of clinical protocols for *any commercial enterprise* in the *unspecified subject areas* for which he receives such materials is unnecessary and unreasonably restrictive of Dr. Perez's practice. Perez Decl., ¶ 12. Simply put, a clinical research protocol is not the type of document an expert can just "reuse" for a different study, and Plaintiffs have pointed to no specific facts that create a risk of any harm to Plaintiffs.

The Apple Heart Study: Dr. Perez was a Co-Principal Investigator for the Study, which was in collaboration with Stanford and concluded more than two years ago. Perez Decl. ¶ 7. The Study's goals were to measure the Apple Watch's ability to detect new onset atrial fibrillation using long-term intermittent photoplethysmogram monitoring. *Id.* Dr. Perez's role was to design the study and interpret its results. *Id.* While Plaintiffs point to the Study as support for their argument, they offer ***no*** facts to suggest the Study makes it more likely Dr. Perez would violate the Protective Order.

Plaintiffs Failed to Timely Meet and Confer or Propose a Joint Stipulation: On April 20, 2021, Apple notified Plaintiffs that it intended to

disclose confidential material to Dr. Perez and provided the requisite expert disclosure information under the Protective Order.  Kaounis Decl., Ex. A; *see* Ex. 1 at 11.  Plaintiffs objected to Dr. Perez because he was "involved in the development of algorithms for processing physiological parameters" and asked for "more information about his role in the research relating to 'Machine Learning in Atrial Fibrillation.'"  Ex. 1 at 10.  Plaintiffs also observed that Dr. Perez had, over two years ago, consulted for Apple regarding the development of protocols for a clinical study.  *Id.* at 10.  Plaintiffs informed Apple that they "expected" Dr. Perez—a practicing cardiologist—to refrain at *any* point in the future from providing non-litigation *consulting* services relating to *any* type of physiological monitoring.  Ex. 1 at 10.  There is no such requirement with regard to future *consulting* work in the Protective Order.  Dkt. 67 § 9.2.

Two days later, Apple explained Dr. Perez's role in developing Artificial Intelligence/Machine Learning algorithms in the NIH study and asked Plaintiffs whether they intended to maintain their objection.  Ex. 1 at 9.  Apple further explained that Dr. Perez helped design the Apple Heart Study.  *See* Kaounis Exs. D & E.  Apple also explained that Dr. Perez had agreed to the Protective Order, which requires him to affirm that he did not "anticipate at the time of retention [] becom[ing] an **officer, director or employee** of a Party or of a competitor of a Party," and that further, per Stanford policy, he is not allowed to become an officer, director or employee of any entity outside of Stanford.  Ex. 1 at 9 (citing Dkt. 67 § 9.2 (emphasis added)).  Finally, Apple explained that because Dr. Perez is a practicing physician whose work necessarily involves utilizing physiological measurements obtained using commercially available devices, he could not agree to the limitation Plaintiffs requested—i.e., "to not in the future provide Apple or others with non-litigation consulting services relating to physiological monitoring."  Ex. 1 at 9; *see* Perez Decl. ¶ 13.

/ / /

Plaintiffs did not timely respond to Apple's email within the Protective Order's seven-day meet and confer window following their objection—which ended on May 11—or seek a conference of counsel under the Local Rules.  Dkt. 67 § 9.2 ("The objecting Party shall have the burden of proving the need for a protective order."); L.R. 37-1 ("It is the responsibility of counsel for the moving party to arrange" for the "Prefiling Conference of Counsel").[3]  Plaintiffs also failed to timely serve a Joint Stipulation within the Protective Order's seven-day period after Apple's May 6 email—by May 13. Ex. 1 at 9; *see* Dkt. 67 § 9.2 ("If the Parties are unable to resolve any objection, the objecting Party shall serve on the other Party a Joint Stipulation pursuant to Local Rule 37-2.1 within seven (7) days of the meet and confer.").  Although Plaintiffs waived any objections by failing to take such timely actions, Apple agreed to meet and confer without waiver of Apple's positions on timeliness and procedure. *Id*. at 4-5.

On May 14, during a telephonic conference, *Apple* proposed that Dr. Perez not receive Plaintiffs' relevant "Confidential" or "Highly Confidential" algorithms and requested a proposed compromise in writing as soon as practicable.  Kaounis Decl. ¶ 3.  Apple also noted that Plaintiffs' proposed restriction on Dr. Perez's future consulting work was not supported by the Protective Order. *Id*. ¶ 3.

On May 17, Plaintiffs proposed excessive limitations on Dr. Perez. Plaintiffs suggested that for the duration of the case, including all appeals, plus two years (effectively, 3-4 years), Dr. Perez not (1) "review any confidential documents that describe algorithms or technology designed for physiological parameters," (2) "develop, design, or contribute to the development or design of

---

[3] Plaintiffs' assertion that the "Protective Order does not specify **who** is responsible for scheduling the meeting of counsel" (J.S. at 7) overlooks that that Protective Order must be read alongside the Local Rules.

clinical protocols for any commercial enterprise," (3) "analyze" data collected "pursuant to clinical protocols" for any commercial enterprise or (4) "provide any suggestions or feedback relating to the development, design or modification of clinical protocols for any commercial enterprise." Ex. 3 at 19-20.

The following day (May 18), Apple proposed a compromise—that Dr. Perez agree to "not review algorithms for calculating heart rate or oxygen saturation using light emitting technology designated by Plaintiffs as 'Confidential' or 'Highly Confidential'," since those are the only algorithms at issue. Ex. 4 at 22; *see* Dkt. 380 at 1. Apple explained that Plaintiffs' proposal as to clinical protocols was unworkable for Dr. Perez and reiterated that Plaintiffs' "limitations on Dr. Perez's ability to practice medicine and engage in clinical research are not required by the Protective Order," which "distinguishes between consulting and employment roles." Ex. 2 at 17.

On May 19, Plaintiffs confusingly attempted to justify their position by arguing that the Protective Order "refers to 'consultants in this action' in the context of experts," and that the "consulting Dr. Perez provided in the past to Apple was not pursuant to this action" or "in the context of litigation services." *Id.* at 16. Plaintiffs claimed they could not find "where the protective order 'distinguishes between consulting and employment roles,'" then cited Section 9(c), which contains that distinction. *Id.* Plaintiffs tried to explain that Section 9.2(c) equates consultants providing non-litigation work with "traditional employee[s]," though the Order distinguishes between the two. *Id.*, § 4.13.

The next day (May 20), Apple responded that Plaintiffs were misreading the term "consultant" in the Protective Order—i.e., in the phrase "consultants in this action" (Dkt. 67 § 9.2(c)), which is an alternate way of referring to "nontestifying experts." Ex. 2 at 14. The term does not speak to future "consulting" work of an expert outside of the case. Dkt. 67 §9.2(c). Apple explained that Section 9.2(c) "allows a Receiving Party to disclose Designated

Material to any expert, so long as that expert is 'not presently an officer, director, or *employee* of a Party or of a competitor of a Party,' nor anticipated to become one." Ex. 2 at 14. However, Plaintiffs contended Section 9.2(c) includes a prohibition on acting as a current or future *consultant*, although the express limitations as to current and future work only applied to serving as "an officer, director, or employee of a Party or of a competitor of a Party," or having a reasonable then-current belief of future service in *one of those roles*. *Id*.

Apple also explained that in light of the Protective Order's references to litigation consultants elsewhere (Dkt. 67 §§ 4.9, 4.13, 9.2(f)), it is significant that the Order "mentions only employees and not consultants in the context of the prohibition" Plaintiffs cited. Ex. 2 at 14. Apple reiterated that Plaintiffs' additional requested limitations were not supported by the Protective Order and once again asked Plaintiffs to agree to Apple's May 18 proposal or serve their portion of the Joint Stipulation. *Id*. Later that day, Plaintiffs re-cast their position, arguing "that Dr. Perez worked for Apple in a non-legal context," "in the context of the type of work that would be done by a contract employee." Ex. 7 at 31. They claimed it was "irrelevant" whether Dr. Perez "was called a 'consultant' or something else" (Ex. 7 at 31). Dkt. 67, §§ 4.13, 9.2(c). Plaintiffs also asserted without basis that Dr. Perez's work "advising on physiological measurement analysis and clinical studies" "presents a very high risk of inadvertent disclosure." Ex. 7 at 20-31.

The following day (May 21), Apple reiterated its solution on the algorithm issue (Ex. 7 at 29). Apple further explained that "Dr. Perez cannot agree to a future limitation on his ability to conduct research and practice medicine" because of "Plaintiffs' speculative concern that he will violate the terms of the Protective Order in his future consulting work *based on his past work for Apple*." Ex. 7 at 29 (emphasis added). Apple also explained that "Plaintiffs' attempt to redefine the term 'employee'" in the Protective Order "to

include a 'consultant' by claiming the phrase 'contract employee' (which appears nowhere in the PO) somehow encompasses a 'consultant' is unsupported by the PO." *Id*. Plaintiffs were "attempting to retroactively insert a restriction into the Protective Order that they could have negotiated, or presented to the Court at the time they submitted their proposed Protective Order, but did not." *Id*. Apple encouraged Plaintiffs to reconsider their position. *Id*. Later that day, Plaintiffs served their portion of this Joint Stipulation. Kaounis Decl., Ex. B.

## 2. Plaintiffs Seek to Impose an Unfair Standard that Effectively Precludes Apple from Hiring *Any* Practicing Physician Qualified to Opine on Clinical Protocols

Plaintiffs' motion seeks an inequitable result that permits them to retain their outside counsel and experts of choice but precludes Apple from hiring a practicing physician who participates in developing or assessing clinical protocols. Plaintiffs reject Dr. Perez because he developed clinical protocols, and argue that he cannot separate his work here from other future consulting work, even though he has agreed to the Protective Order and numerous studies' confidentiality terms, and is subject to ethical obligations as a physician. Perez Decl., ¶ 12. In the past, however, Plaintiffs argued that their own counsel's "experience[]" was sufficient to allow him to receive Apple's highly confidential information while also "hav[ing] a business or ownership interest" in Plaintiffs. Dkt. 61-1, at 30-31 & 34. Plaintiffs' counsel, Mr. Jensen, was permitted to access Apple's confidential information despite being on the board of Plaintiff Masimo's Foundation. *See* Dkt. 67 at 17; Kaounis Decl., Ex. H. By contrast, Dr. Perez has no current business relationships with the parties. Kaounis Decl., Ex. A, at 5. Plaintiffs maintain the Protective Order is sufficient to allow Mr. Jensen access to Apple's Highly Confidential information without

/ / /

further restrictions (Dkt. 61-1, at 30-31), but somehow not enough as to Dr. Perez, who already *has* agreed to additional restrictions.  Perez Decl., ¶ 11.

Further, Plaintiffs claim their proposed expert—Mr. Goldberg, who is addressing a claimed "technical" trade secret, *unlike* Dr. Perez—*may consult* in the area of electrotechnology with a focus on sensors, measurement, medical instrumentation, and signal processing.  Kaounis Decl., Ex. F at 160.

This is reason enough to deny Plaintiffs' motion.

### 3.    Plaintiffs Fail to Meet Their Burden to Exclude Dr. Perez

As the moving party seeking to limit access to information, Plaintiffs bear the burden to show they are entitled to a Protective Order.  Dkt. 67 § 9.2(c); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (objecting party bears burden of establishing risk of disclosure); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007); *see* J.S at 8. Plaintiffs' own cases impose a high bar, requiring them to show:

> (a) the information is highly confidential commercial information or a trade secret; (b) disclosure of such material might be damaging to the producing party; and (c) the harm associated with disclosure outweighs the need for access.

*Digital Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 491 (D. Colo. 1992).[4]

Plaintiffs have failed to satisfy this weighty burden for the following reasons:

### a.    Plaintiffs' Assertion that Dr. Perez Will Use Plaintiffs' Unspecified Confidential Information Regarding Clinical Research Protocols in His Work Is Speculative

Plaintiffs' motion hinges on the speculative theory that seeing their *unspecified* clinical protocols used for *undescribed* purposes—not one of which is before this Court and not one of which is described by a competent

---

[4] Only "[i]f these requirements are met" does "the burden shift[]."  *Digital Equip. Corp.*, 142 F.R.D. at 491.

declarant—would persuade a reputable physician to discard his own ethical obligations and those of the Protective Order and compromise his future ability to craft protocols, oversee studies, and interpret data.  *See, e.g.*, Kaounis Decl., Ex. C, AMA Code of Medical Ethics, Principles II ("A physician shall uphold the standards of professionalism, be honest in all professional interactions . . ."); III ("A physician shall respect the law . . .");  Perez Decl., Ex. C.  Plaintiffs' Motion is unfounded and their requested relief is impermissibly vague.

Plaintiffs previously argued to this Court that "[t]o evaluate the risk of inadvertent disclosure, the Court should examine 'the factual circumstances surrounding [receiving person's] activities, association, and relationship with a party," Dkt. 61-1 at 32 (citing *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).  As Dr. Perez's CV shows, he has overseen numerous clinical studies as a Principal Investigator ("PI") or Co-PI for the NIH, Apple, AHA, Robert Wood Johnson, Weston Havens Foundation, Stanford, the Gooter Foundation, and others.  Perez Decl., Ex. A & Kaounis Decl., Ex. A at 40-42.  This vast experience strongly suggests that Dr. Perez will approach the drafting of clinical protocols and interpretation of data resulting from clinical studies based on the unique requirements of each study—not default to rote reliance on inapt protocols for different studies looking at different issues.  *Cf. Sip-Top, Inc. v. Ekco Grp, Inc.*, 86 F.3d 827, 830-31 (8th Cir. 1996) (declining to "resort to speculation" and make the "unreasonable inference that every time a [recipient] receives confidential information it uses that" in future business dealings).[5]

/ / /

---

[5] When on the other side of this issue, Plaintiffs argued that being "accustomed to abiding by protective orders, appropriately handling and maintaining designated materials, and ensuring that he never reveals those materials, or the confidential information they contain" were reasons to *allow* certain counsel to see Apple's confidential information.  Dkt 61-1, at 35.

-19-

Plaintiffs offer no evidence to the contrary to "evaluate the risk of inadvertent disclosure."  Dkt. 61-1 at 32 (citing *U.S. Steel*, 730 F.2d at 1468); *see ODS Techs., L.P. v. Magna Entm't Corp.*, 583 F. Supp. 2d 1141, 1144 (C.D. Cal. 2008) ("unacceptable risk of or opportunity for the inadvertent disclosure" not established by "[p]ointing only" to expert's "job duties").  Plaintiffs do not describe what specific information could be used, how it could be used, or how Dr. Perez's past work represents anything more than affirmation of his ability to act independently based on each specific clinical study before him.  *See Applied Signal Tech., Inc. v. Emerging Markets Comms., Inc.*, 2011 WL 197811 at *2 (N.D. Cal. Jan. 20, 2011) (Defendants submitted a declaration).  "[A]rguments concerning future harm (which are tellingly not substantiated with an affidavit) are largely based on 'mights' and 'ifs'" and are "too slender and speculative of a reed on which to deprive … access to important documents in this litigation." *Parsons Xtreme Gold LLC v. Taylor Made Gold Co.*, 2018 WL 6242280, at *8 (D. Ariz. 2018).

Plaintiffs' own criteria make clear they have not met their burden to show Dr. Perez is not "independent" and thus should be subject to further restrictions:

> (a) The expert's position, if any, *within the receiving party's business as an officer, director, shareholder or employee* …
> (b) The extent of *regular* employment, consultation or association with the receiving party…
> (c) The expert's *present* involvement in the receiving party's *competitive decisions*…
> (d) The *potential* for future involvement of the expert in the receiving party's *competitive decisions* … and
> (e) *If the expert's involvement is deemed beyond the point of "independence"*, the individual's willingness to curtail or forego future involvement with the receiving party….

*Digital Equip. Corp.,* 142 F.R.D. at 491 (emphases added).

Plaintiffs have not even tried to satisfy this test—nor could they.  As Dr. Perez makes clear, while employed as a Stanford professor, he is expressly

prohibited from becoming an officer, director or employee of any entity outside of Stanford.  Perez Decl. ¶ 3.  And Dr. Perez does not "*regular[ly]" consult* for Apple; is not "*present[ly]* involve[d]" in Apple's "*competitive decisions*;" and has not even hinted of "*potential* for [his] future involvement" in Apple's "*competitive decisions.*"  *Digital Equip. Corp.,* 142 F.R.D. at 491 (emphases added) (consultant had an "ongoing relationship with Micro" concerning "an important aspect of Micro's business"); *see* Kaounis Decl., Ex. A, at 5, 37–59; Perez Decl., ¶ 7.  Because Plaintiffs satisfy none of these requirements—and thus fail to demonstrate that Dr. Perez's "*involvement is deemed beyond the point of 'independence*,'" the Court need not even reach the final factor of the analysis—i.e., future curtailment or involvement with Apple.  *Id*. (emphasis added).

Nor can Plaintiffs cite any authority supporting their hopelessly vague restriction on a physician's ability to review clinical protocols.  Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting an injunction"— which is precisely what Plaintiffs seek here (Ex. 3 at 19-20 & Ex. 5 at 24)— "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained."  *Id*.  Plaintiffs' Proposed Order simply demands that if Dr. Perez receives "material designated as 'Confidential' or 'Highly Confidential'" that *vaguely* "relates to the development or design of clinical protocols"—apparently of *any* type—"he will not, for any commercial enterprise, develop, or contribute to the development, of clinical protocols in the [unspecified] subject areas for which he receives such materials."  *See* Proposed Order ¶ 2.  Plaintiffs do not (1) provide any rationale for the proposed Order's issuance, (2) describe which protocols are at issue, (3) explain how they define "development or design," (4) specify what they mean by "commercial enterprise," (5) detail what they mean by "develop, or contribute to the development"—e.g., serving as an investigator, providing

-21-

data, peer reviewing the protocol, or other, or (6) explain the "subject areas" for which Dr. Perez will receive information and be prohibited from participating.[6] Even Plaintiffs' previously-cited "authority" rejects the limitation they seek here.  The Protective Order in *Glaukos Corp. v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE, Dkt. No. 36 (C.D. Cal. Aug. 3, 2018), which Plaintiffs pointed to as a model, expressly provided that "*no objection* may be made solely on the basis that an expert has *previously consulted for a competitor, participated in clinical studies regarding a competitor's product*, or used a competitor's product." Dkt. 61-2 (Powell Decl.), Ex. 21 at p. 541 (emphases added).[7]

Further, Plaintiffs' cases are inapposite.  Unlike several of those cases, Dr. Perez neither is nor was a competitive decisionmaker for Apple (Perez Decl., ¶ 7).  *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) (exclusion of in-house counsel whose "continuing employment often intimately involve[d] them in the management and operation of the corporation of which they are a part"); *Voice Domain Techs., LLC v. Apple, Inc.*, No. 4:13-cv-40138-TSH, Dkt. 45 at 1-2 (D. Mass. July 17, 2014) (involving whether the sole owner and operator of plaintiff's business was allowed access to highly confidential information); *Safe Flight Instr. Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (proposed disclosure to plaintiffs' company's president); *see also Applied Signal*, 2011 WL 197811 at *5 ("expert witness who prepares or applies for patents themselves is undoubtedly a competitive decisionmaker").

---

[6]  The Court should reject any effort by Plaintiffs to remedy these fatal defects in a supplemental memorandum, because Apple would not be able to respond to specifics relating to the information at issue or Plaintiffs' alleged future harm.

[7] Unlike here (Dkt. 67 § 2), the *Glaukos* Protective Order expressly recognized "clinical information" as that "for which special protection from disclosure and restrictions on use is warranted."  Dkt. 61-2 (Powell Decl.), Ex. 21, at p. 531.

-22-

Plaintiffs' other cases involve highly technical information similar to what Dr. Perez *already agreed not to access*. *See, e.g.*, *Symantec Corp. v. Acronis Corp.*, 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012) (dispute over access to source code); *see also Voice Domain Techs.*, No. 4:13-cv-40138-TSH, Dkt. 45 at 2 (D. Mass. July 17, 2014) ("protective order allow[ed] counsel who access Apple's highly confidential information to participate in the original prosecution of patents and counsel who access Apple's highly confidential information and source code to draft and restructure claims").  For this same reason, any analogy Plaintiffs may attempt to draw to the Court's recent order (Dkt. 272) in *Masimo Corporation v. True Wearables, Inc.*, 8:18-cv-02001-NS (JDEx), is likewise inapt.  Unlike Dr. Perez, who is addressing Plaintiffs' alleged "business and marketing" and hospital interaction trade secrets, not source code—and who agreed not to receive Plaintiffs' specified algorithms (Perez Decl., ¶ 11)—the *True Wearables* expert *was* working with source code and algorithms. *Id.*[8]

Plaintiffs' assertion that Dr. Perez will use their unspecified information relating to clinical protocols is neither supported by the facts nor law.

### b.  Plaintiffs' Allegations Of Harm Are Equally Unfounded.

Plaintiffs Have Failed to Show *Any* Harm to Them.  Plaintiffs incorrectly assert that Apple must show "a dearth of experts in the field or that Apple will be seriously prejudiced" by Dr. Perez's exclusion (J.S. at 10).  Again, Plaintiffs ignore their own case establishing that "the Party opposing disclosure … bear[s] the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to

---

[8]  Notably, as here, Plaintiffs' "proposed additional restrictions," which the Court found were "more restrictive than necessary."  *Masimo Corp. v. True Wearables, Inc.*, 8:18-cv-02001-NS (JDEx) (May 24, 2021), Dkt. 272, at 2.

disclose the Protected Material to its Expert." *Symantec Corp.*, 2012 WL 3582974, at *3. Plaintiffs also previously argued to the Court that the party seeking the information restriction (1) has the "burden of showing that *specific* prejudice or harm will result from the disclosure of *each document (or item of information)*," and (2) is required to "specify any particular information" a recipient "should be excluded from viewing" and "explain any particular harm that [it] would suffer from [the recipient] viewing such information." Dkt 61-1 at 31 (emphasis added) (citing *Nutratech*, 242 F.R.D. at 554) & 33. Plaintiffs now "gloss[] over this step" by failing to submit evidence of "specific prejudice or harm." *Realtime Adaptive Streaming LLC v. Adobe Sys. Inc*., 2019 WL 11717183, at *6-7 (C.D. Cal. May 14, 2019).

Further, *Emerson Electric Co. v. Sipco, LLC*, 2016 WL 6833741 (N.D. Cal. Nov. 21, 2016)—involving a *competitive decisionmaker's* potential access to *source code*—is factually inapposite. *Id.* at *1 & *4; *see supra* § II.B.3.a.[9]

The Harm to Apple is Manifest. First, depriving Apple of *Dr. Perez's* expertise would be prejudicial. Plaintiffs claim certain business and marketing and hospital-related clinical information is trade-secret protected. Fourth Am. Compl. ¶¶ 43-44. Apple intends to show that this information was public or generally known in the field at the time of the alleged misappropriation. What makes Dr. Perez's input and opinion critically important is his cutting edge (and extensive) knowledge in the field. *See* Kaounis Decl., Ex. A, at 38-39 (listing awards and recognitions). The "risk of unfair prejudice to [Apple's] ability to defend against Plaintiffs' claims outweighs the potential of inadvertent disclosure" here because the "nature of Plaintiffs' suit requires inquiry into the

---

[9] Also, unlike *Emerson*, the patent prosecution bar rule is not at issue here (*supra*, § II.A). Thus, *Emerson*, 2016 WL 6833741, *Applied Signal*, 2011 WL 197811, and *Voice Domain Techs*., No. 4:13-cv-40138-TSH, are inapposite.

state of the art during a prior time period," and Dr. Perez's "involvement in the … industry during that period is important to [Apple's] defense." *Santella*, 2012 WL 5399970, at *8.[10]   Plaintiffs' speculation as to future harm does not warrant Dr. Perez's exclusion.   *See Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*, 2013 WL 3367575, at *4 (S.D. Cal. July 5, 2013) (denying request to prevent expert from viewing confidential information due to his "past relationship with plaintiff as well as his work as a consultant with competitors in the field" where "risk of unfair prejudice to plaintiff in its ability to defend" outweighed "potential risk of inadvertent disclosure of defendants' confidential information" due to the expert's continued work in the field).

More broadly, however, Plaintiffs' proposed restrictions would prevent Apple from using *any* practicing doctor who participates in even tangentially relevant clinical studies.[11]   Plaintiffs concede that they are asking for Apple to hire someone "no longer actively participating in that specific field." J.S. at 10. Contrary to Plaintiffs' assertion (J.S. at 11), no practicing physician would agree to their burdensome and unecessary 3-4 year restriction because it would unduly restrict the ability to perform research in the clinical setting. *See, e.g.*, Perez Decl., ¶¶ 12–13.   So Apple is left hiring someone who no longer does clinical research, and it would not be able to effectively rebut aspects of Plaintiffs' business and marketing and hospital-related trade secrets claim.

/ / /

---

[10] Moreover, unlike Plaintiffs authority, Apple has not already "retain[ed] two experts" whose work will focus on Plaintiffs' so-called business and marketing and hospital related secrets, such as clinical research and data collection. *Applied Signal*, 2011 WL 197811 at *5; *see* Kaounis Decl., ¶ 2.

[11] For this reason, Plaintiffs assertion that "Apple never asserted that it cannot locate another qualified expert," J.S. at 10, is unavailing.   Regardless, Apple does not have to show prejudice until Plaintiffs have met their burden (*Applied Signal*, 2011 WL 197811 at *1-6).

**4.**     <u>**Plaintiffs' Protective Order, Which Was Adopted by This Court, Requires No Future Restrictions on an Expert's Ability to "Consult" in the Field**</u>

The parties briefed Section 9.2—the provision at issue here—and the Court adopted Plaintiffs' proposed Protective Order.  At no point did Plaintiffs seek the consulting restriction that they now wish to retroactively impose.

To the contrary, Section 9.2(c) of the Protective Order permits a Receiving Party to disclose protected material to experts so long as "(1) such consultants or experts are not presently an officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not involved in competitive decision-making…."  Dkt. 67 § 9.2(c).  Plaintiffs' current request for relief is equivalent to including the term "consultant" in this provision, as follows [in brackets]: "(1) such consultants or experts are not presently an officer, director, [consultant,] or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director[, consultant,] or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not involved in competitive decision-making . . ."  Plaintiffs could have done so when presenting their proposed order to the Court.  They did not.

To get around this omission, Plaintiffs now attempt to equate a "consultant" with "employee" in Section 9.2(c). Ex. 2 at 16.  But the Protective Order expressly distinguishes between the two: a "Party" is defined as "any party to this Action, including all of its officers, directors, **employees, consultants**, retained experts, and Outside Counsel of Record (and their support staffs)."  Dkt. 67 § 4.13 (emphases added).  And the Order's different use of the term "consultants" elsewhere—including in Section 9.2(c) itself—belie

/ / /

-26-

Plaintiffs' counter-textual argument. *Id.* § 9.2(c). Plaintiffs' additional requested limitations are simply not supported by the Order.

### 5.    Plaintiffs Have Waived Their Objections to Dr. Perez

As detailed above (in Section B.1), Plaintiffs—the moving party—failed to timely request a conference of counsel per the Protective Order (Dkt. 67 § 9.2) and Local Rule 37-1, and to timely serve their portion of a Joint Stipulation (*id.*). Plaintiffs also waived their objections because they failed to "identify any legal authority Plaintiffs believe is dispositive of the dispute or specify the terms of the discovery order to be sought as required by Rule 37." Ex. 7 at 30.

Plaintiffs incorrectly respond that the parties "mutual[ly]" overlooked Section 9.2(c)'s meet and confer requirement, and that "Apple has never alleged any prejudice" by their failure to timely meet and confer (J.S. at 7). But again, since Apple is not the moving party, it is not Apple's obligation to seek a conference of counsel. Dkt. 67 § 9.2; L.R. 37-1. Further, although Apple has no obligation to show prejudice, it is harmed by Plaintiffs' delay inasmuch as it shortens Apple's time to (1) onboard an expert witness by providing him relevant materials, or worse, (2) find a new expert. *Isis Pharms.*, 2013 WL 3367575, at *7-8 ("impending deadline[s]" and "significant costs already expended in retaining and preparing" experts supported conclusion that "the risk of unfair prejudice . . . outweighs the potential risk of inadvertent disclosure of [] confidential information").

Nor can Plaintiffs rely on what occurred in "past disputes" (J.S. at 7) (citing Ex. 10). That Apple initiated a meet and confer for a prior expert objection does not alter Plaintiff's obligation under the Protective Order. *Whitehead v. Gateway Chevrolet, Oldsmobile*, 2004 WL 1459478, at *4 (N.D. Ill. June 29, 2004) (purported "course of dealing between the parties" was "irrelevant in light of the unambiguous terms of the [] protective order"); Dkt. 67 § 9.2 (moving party must seek conference of counsel). Nor must the

1  Protective Order "specify a[] remedy" for Plaintiffs' failure to timely seek or

2  adequately participate in the conference of counsel (J.S. at 7).  Plaintiffs cite no

3  authority rewarding a party with relief despite its multiple violations of an

4  existing order and the local rules.   Plaintiffs' Motion should be denied.

5                              Respectfully submitted,

6                              KNOBBE, MARTENS, OLSON & BEAR, LLP

7

8  Dated: __June 3, 2021__        By: _/s/ Perry D. Oldham_____

9                                  Joseph R. Re
                                   Stephen C. Jensen
10                                  Perry D. Oldham
                                   Stephen W. Larson
11                                  Adam B. Powell

12                                  Attorneys for Plaintiffs
                                   Masimo Corporation and
13                                  Cercacor Laboratories

14                              GIBSON, DUNN & CRUTCHER LLP

15

16  Dated: __June 3, 2021__        By: _/s/ Angelique Kaounis (with permission)_
                                   Joshua H. Lerner
17                                  H. Mark Lyon
                                   Brian M. Buroker
18                                  Brian A. Rosenthal
                                   Ilissa Samplin
19                                  Angelique Kaounis

20                                  Attorneys for Defendant Apple Inc.

21

22        **ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

23        Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the

24  filing of this document has been obtained from each of the signatories above.

25

26                         By: _/s/ Perry D. Oldham____
                              Perry D. Oldham
27

28