# EXHIBIT 105

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

| | | |
|---|---|---|
| MASIMO CORPORATION, ET AL, | ) | CASE NO: 8:20-CV-00048-JVS-JDEx |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Santa Ana, California |
| | ) | |
| APPLE, INC, | ) | Thursday, May 20, 2021 |
| | ) | |
| Defendant. | ) | |

PARTIAL TRANSCRIPT RE:

MOTION TO COMPEL [DKT.NOS.351,357]

BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE

(SEALED PORTIONS OMITTED)

**APPEARANCES:**           SEE PAGE 2

Court Reporter:        Recorded; REMOTE; Wave

Courtroom Deputy:      Maria Barr

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 8365
                       Corpus Christi, TX 78468
                       361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

For Plaintiffs:            BENJAMIN A. KATZENELLENBOGEN, ESQ.
                           Knobbe Martens Olson & Bear, LLP
                           2040 Main Street
                           14th Floor
                           Irvine, CA 92614

                           ADAM POWELL, ESQ.
                           Knobbe Martens Olson & Bear, LLP
                           12790 El Camino Real
                           San Diego, CA 92130


For Defendant:             JOSHUA H. LERNER, ESQ.
                           Gibson Dunn & Crutcher, LLP
                           555 Mission Street
                           Suite 3000
                           San Francisco, CA 94105

                           ILISSA S. SAMPLIN, ESQ.
                           Gibson Dunn & Crutcher, LLP
                           2029 Century Park East
                           Suite 4000
                           Los Angeles, CA 90067

3

**Santa Ana, California; Thursday, May 20, 2021**

**(Remote Appearances)**

**Call to Order**

**THE CLERK:** Please come to order. This United States District Court is now in session, the Honorable John D. Early, United States Magistrate Judge presiding.

**THE COURT:** Good morning, everyone, please be seated.

**(All respond good morning)**

**THE COURT:** All right, calling the case of *Masimo Corporation, et al versus Apple Inc.*, Central District of California Case Number 8:20-00048-JVS.

We are here on two Motions. We'll take appearances with Counsel and then we'll describe the Motion. We'll start with Counsel for Plaintiff.

**MR. POWELL:** Thank you, Your Honor, Adam Powell for the Plaintiff Masimo Corporation and Cercacor.

With me is my partner Ben Katzenellenbogen.

**THE COURT:** All right, thank you, good morning.

And for Defendants -- for Defendant?

**MR. LERNER:** Good morning, Your Honor, Joshua Lerner of Gibson Dunn on behalf of Apple, and with me is my partner, Ilissa Samplin.

**THE COURT:** All right, good morning and welcome, as well.

We are proceeding and everyone is wearing a mask.

1   assist the Court, from what you've described if I have to
2   handle these in serial matters with a discovery cutoff that
3   apparently may be stipulated to continue, and bearing in mind
4   that, depending on the outcome of the review before the Patent
5   Appeals Board, we may be having a whole separate side of the
6   case where we're going to have discovery motions similarly
7   contested, what you've described I don't think I can
8   effectively and timely handle these things.  All right?
9            You don't have to -- we're not going to make a
10  decision.  I can't order it.  But let me hear you talk about
11  it, because we have to hear from you.  It's part of Rule 53.
12  That's why I grabbed the Rule book.  And I'm going to give you
13  an opportunity in writing.  But I'm probably going to direct
14  that the parties, in light of what's just been described to me,
15  show cause why a discovery special master should not be
16  appointed.  And if you don't mind and agree to having a special
17  master appointed, I think it's going to make your lives a
18  lot -- well, I'm not going to say anything further.
19            So, let me start with Mr. Powell.  What's Plaintiffs'
20  position regarding the appointment of a discovery special
21  master?
22            **MR. POWELL:**  Thank you, Your Honor.
23            I don't have a position myself right now.  I would
24  need to speak to co-counsel and my client.  That's not
25  something that we have discussed recently.

1  on one side, I don't know what's coming from the other side.
2  And I had a 240-page joint stipulation not too long ago that
3  was not difficult at all to rule on.  Sometimes I have six-page
4  apex-type depositions that are incredibly complex and require a
5  great deal of thought.
6         And -- again you're getting too inside baseball here.
7  Law clerks are great.  Law clerks who have never practiced I
8  don't think are able to handle a lot of the discovery disputes
9  as easily as someone who has practiced.  So -- I don't want to
10 waste any more time.  You don't have positions on it.  We're
11 going to proceed, but it can't go on like this and I don't know
12 what to do.
13        I think we had -- and maybe it was that same phone
14 call or maybe it was on a subsequent Order, but I on one issue
15 offered to have an informal, made myself available to have an
16 informal telephone call about whatever the issue was, and my
17 mind is forgetting what that was, and I wasn't taken up on it.
18        I don't know if that's going to help, but things like
19 spoliation or spolation, that's not one I can rule on on the
20 fly and that's not one anyone can.  But if we -- if this is the
21 reality of what we have, we're going to have to come up with
22 another way or a better way to handle it that takes into
23 account that this is a public office that serves all sorts of
24 people, not just one case.
25        So, let's proceed on with -- we left off at Request

1  Number 65.  I read it into the record.  I gave some tentative

2  thoughts to you, Mr. Powell.  It's the refer or relate and any

3  ruling would be without prejudice to you or your client serving

4  a follow-up request for production.

5          And I'm going to throw this out there.  I don't mind

6  seeing request for production number 850.  That in and of

7  itself tells me nothing, because 850 carefully crafted requests

8  for production are much better than ten, you know, give me

9  every single document referring, relating, concerning, having

10 anything to do with some general topic.  So, I don't mind if

11 the numbers get up there high.

12         What I mind is trying to figure out how on an eight-

13 year time period with I understand there's still a dispute on

14 up to 39 custodians, and possibly more if a showing is made

15 that it's warranted, how refer or relate to documents are

16 needed.  You know, I don't -- the difficulty is I don't have on

17 the flip side the evidence of the burden.  But on this one,

18 when I see refer or relate to it causes me concern and we'll

19 continue to hear that as we go through this.

20         But let me hear from you, Mr. Powell.  I don't

21 actually recall if you had an opportunity to be heard on 65.

22         **MR. POWELL:**  Sure, Your Honor.

23         So, just a few things.  And I recognize what you're

24 saying about it being -- this language being a bit broad.  And

25 part of that is because we're in a situation where we don't

1      We're -- why isn't the request here, "Please tell us
2 Mr. Lamego's source code commit history"?  That's not what this
3 is.  This is everything related to pulse oximetry, and
4 everything related to oxygen saturation.
5      There is one person who has alleged six years ago to
6 have done this.  You don't have a Rule 11 basis in front of you
7 to hear that anybody else took any secret from them and gave it
8 to us.  One person.  And we're doing 28 custodians.
9      And the question is, to your point, if you want to
10 ask, "Did Lamego write that?", that's a whole lot different
11 than every document related to pulse oximetry or oxygen
12 saturation.  It's also a whole lot different than sufficient to
13 show.
14      **THE COURT:**  All right; 150, the motion is denied
15 without prejudice.
16      And I'm going to clarify on 148, and it's because
17 it's what Apple has put in its portion of the joint stipulation
18 where I want 148, Apple to -- the motion is granted in part
19 that Apple has to put in writing in response -- an amended
20 response compliant with Rule 34 that states what they have
21 produced and what they are not producing, or what they have
22 searched for and what they will not search for in response to
23 148 so that, at a minimum, plaintiff knows what it has and what
24 it doesn't have.
25      And that's without prejudice to plaintiff being able

1  to move on that response or move -- serve an additional more
2  narrow request.
3         All right.  Let's move on to 151.  And 151, I'm
4  probably going to treat the same way I did 150.  And let's see.
5  And 65; although as I mentioned with 65, it's a close call, I'm
6  inclined to deny that without prejudice to a more narrowly
7  served request.
8         Mr. Powell, I'll hear from you.
9         **MR. POWELL:**  Your Honor, I would submit I still think
10 that pulse oximetry is different than pulse rate for the
11 reasons discussed, but I understand your Court's ruling -- or
12 the Court's ruling.
13        **THE COURT:**  All right.  Mr. Powell, anything more
14 having heard the tentative on 151 that you -- that Apple wants
15 to be heard on?
16        **MR. LERNER:**  No, Your Honor.
17        **THE COURT:**  All right; 153.  This is a little
18 different.
19             "All documents and things that refer or relate to the
20             operation of any LEDs used to determine oxygen
21             saturation for any Apple Watch Product, including but
22             not limited to documents and things that refer or
23             relate to LED timing, duty cycle, current, or power
24             usage."
25             Mr. Powell, I'll start with you on the issue of both

1  relating to or otherwise evidencing the parameters by which

2  Defendant or its customers evaluates the performance of

3  physiological monitoring -- physiological parameter monitoring

4  technology.

5        And 85 is factors Apple itself considered when

6  selecting technology to be used.  So, again, we think -- I

7  would submit that those are also directly relevant.

8        **THE COURT:**  All right, understood.  The motion is

9  denied as to 71 to 77 -- RFP Number 71 to 77, 83 to 86.  That

10 denial is without prejudice to Plaintiffs' ability to propound

11 Request for Production more narrowly tailored to its -- the

12 alleged trade secrets at issue rather than physiological

13 testing or noninvasive physiological testing in general.

14       All right.  Turning to Request -- this is now Section

15 4 of Motion 1.  Request for Production Number 97, "All

16 documents and things that refer or relate to any comparison

17 between any Masimo or" -- and how do you pronounce your

18 client's name?

19       **MR. POWELL:**  Cercacor.

20       **THE COURT:**  -- "Cercacor product or testimony and any

21 Apple Watch products."

22       And, Mr. Powell, I guess I'm going to cut right to

23 the chase.  Why wouldn't this be limited to -- and it may take

24 several requests for production but limited to comparisons

25 relating to the trade secrets that are at issue?  And -- so

1  for and presumably are asking for information regarding the

2  recruitment of Mr. Lamego or anybody else who you contend

3  improperly was induced to bring trade secret information.  This

4  doesn't ask for that.  This asks for something much broader.

5          So I'm making clear to you that I'm not saying that

6  the issues that I'm talking about and that -- and I'm not

7  saying that your statement of relevance is wrong.  I'm just

8  saying the link between your statement of relevance and this

9  request is lacking.

10         So I'm going to deny the motion as to 97 and my

11 memory is that 100 was very similar but let me compare them.

12         **MR. POWELL:**  It's very similar, Your Honor.

13         **THE COURT:**  What am I missing?  How is 100 different

14 from 97?

15         **MR. POWELL:**  I don't think there's a substantive

16 difference.

17         **THE COURT:**  Okay.  So 97 and 100 are denied and as

18 with all denials, it's without prejudice to propounding a more

19 narrowly crafted request or if -- and sometimes this happens.

20 I deny it because there isn't a sufficient showing of

21 relevance.  It's too broad.  You all of a sudden get a document

22 that references, oh, we did this great analysis of the Masimo

23 detector and we should run a comparison to see what else we can

24 steal from them.  I'm obviously joking but that would suddenly

25 potentially make Request Number 97, oh, okay, that ties those

1  two things together but right now, the tie is lacking.

2  All right.  Moving on to 128.  Reading -- quoting,

3  "All communications between Defendant and Plaintiffs referring

4  or relating to subject matter disclosed or claimed in the

5  disputed patents."  And let's see.  Is it all of 128, 129, 184,

6  196?  They're all referring to the patents.

7  **MR. POWELL:**  Right, Your Honor.  And these are not

8  the patent infringement patents.  These are the patents subject

9  to our correction of inventorship and ownership claims which

10 are not stayed.

11 **THE COURT:**  Okay.  So when -- so some of the patents

12 are specifically referred to by number.  128 and 129, however,

13 are just "disputed patents."  So make sure I'm not missing

14 something.  Does disputed patents -- is that limited to the

15 claims that are still alive or does that include the patents

16 that have been stayed, the claims relating to patents that have

17 been stayed?

18 **MR. POWELL:**  It is limited, Your Honor, to the claims

19 are not stayed.  Again, patent infringement, that's our patents

20 against them.  That's stayed.

21 **THE COURT:**  Okay.

22 **MR. POWELL:**  Apple's patents that we're asserting

23 correction of inventorship and ownership are not stayed and

24 I'll direct Your Honor to Exhibit 2 of my declaration.  There's

25 a definition of what "disputed patents" means.

1      **(Pause)**

2              **THE COURT:**  So, I'm going to order Apple to produce
3  responsive documents.  I'm going to deny -- to that.  I'm going
4  to deny the motion in other respects.  I'm going to deny the
5  motion as to 129 without prejudice to plaintiff following up
6  with a request for production that identifies particular
7  individuals that they seek to have communications between those
8  folks and Apple's that relate to relevant topics.  So, draft it
9  a little bit more narrowly.  I know there is a dispute over
10 these 20 people.  Why don't you focus on the ones that you
11 really think might be related to the issues.  So, we'll deny
12 129 outright.

13             The issues in 184 and 196 are a little different.  We
14 didn't really talk about them.  It looks awful broad to me.
15 I'm inclined to deny the motion as to those requests for
16 production, again, without prejudice to serving a more limited
17 request, but I'll give you a chance, because we didn't really
18 talk about those either, Mr. Powell or Mr. Katzenellenbogen.

19             **MR. POWELL:**  Sure.  So, Your Honor, this is
20 Mr. Powell.

21             I'll address both of these.  These specific patent
22 numbers are at issue.  Again, without getting into too much
23 detail here, this is both the disputed patents and the trade
24 secrets here.  So, these are patents that contain information
25 that we assert is -- was misappropriated and then ended up in

1        The order also said at the end, as I recall, this is
2   just ruling on this application.  It's not saying that if
3   someone can't meet those requirements that they have to appear
4   in person.  It may be that another application is required but
5   those rulings were based on the information that was presented
6   to me in an ex parte application that was filed at what?
7   5:36 p.m.  The opposition came in at 4:00 p.m.  And Marie, I
8   think you hit the docket with our order at exactly 5:00 p.m.
9   the next day because it was so urgent.  If it really is that
10  urgent, then you've got to comply with what you say.  And by
11  "you" I mean Apple says, this is the situation that employees
12  aren't permitted to or are required to work remotely and that
13  this would put them at an increased risk than what they're
14  facing at work.  If that's not the case, but there's some other
15  basis -- because this is a serious issue for these folks to
16  need remote depositions -- meet and confer.  If you can't
17  agree, we're going to go forward.  But I'm not going to sit
18  here and assess the sufficiency of responses because even if a
19  response is insufficient, it doesn't mean the person then has
20  been ordered to appear in person.  That order does not say
21  that.  It merely says the application's either granted or
22  denied for all those people that meet these restrictions.  If
23  the application is denied, those people are still free to make
24  a separate application.  But lumping 11 people together with a
25  bunch of representations that may or may not apply to each of

1  them -- and I didn't even know, that it didn't even appear to
2  me that counsel had even conferred with each of those folks to
3  see if they really wanted to do it remotely rather than in
4  person.  So that's what the ruling was a ruling on that
5  application and the unique facts presented as the basis for
6  both it being urgent and for the relief requested.
7           I can believe -- now I'm going to step aside.
8           I can't believe you folks are fighting about this.  I
9  really can't.  I can't believe it.  I'm looking at both of you
10 by the way.  So you're nodding your head, Oh, I can't believe
11 they're doing it too.  I'm looking at both of you.  Work it
12 out.
13          I really -- I know every client is different but when
14 you get stuff thirdhand through in-house counsel, through a
15 supervisor, to get to the person who is the relevant person,
16 things get lost in the middle, in the muddle.  And in-house
17 counsel, great people, I'm sure, but their loyalty is to the
18 entity.
19          I want to know, if I see one of these, what the
20 particular person wants.  If the particular person has a
21 reasonable concern, why are we fighting about this?  If you
22 think that the particular person is faking and you really want
23 me to start making rulings on whether someone is faking
24 discomfort at appearing in person due to COVID, I'm going to do
25 it but that means I'm going to have to hear from the person,

1   all right?  And if I put someone through that and it turns out
2   they're honestly have a very real and rational concern about
3   their health or a family member's health, there's going to be
4   consequences to the side that wouldn't accept that and contest
5   it.  You better have a good-faith basis to say, No, no, this
6   person's not really -- doesn't really feel concerned.  This is
7   an under the table effort to have a deposition be remote
8   because that gives them more time to think about questions or
9   it makes it harder for us to proceed.  But if you want to
10  proceed down that route -- and I'm looking now at Plaintiffs'
11  side, feel free.  But I'm letting Defendant know, if that's
12  where we go, I need evidence from the person, not from an in-
13  house counsel lawyer who says, We're not letting anybody
14  participate in person because I get it.  They protect -- they
15  want to protect their people.  Okay?  I have to protect the
16  system and the person.  All right?  Due process rights over
17  here.  Health rights of our witnesses.  We're going to assess
18  that.  But I can't believe that it's going to come to that and
19  if it does, nobody's asking for sanctions here and it's
20  probably because what you folks are spending just on your meet
21  and confer letters would dwarf what any sanction order would be
22  on a discovery motion.  But it'll start becoming a sua sponte
23  thing and the language in the orders are going to be much more
24  blunt and direct and reference whatever is appropriately
25  referenced in terms of how things are being handled and what

1   the parties are putting everyone thorough and what the lawyers
2   are doing.  It's all going to be part of the future findings on
3   these things.  All right?  So forewarned is forearmed.
4           Bring me whatever disputes you can't resolve but this
5   case has taken up an awful lot of this whole chamber's time and
6   I'm really hoping not to see you as much.
7           All right?
8           **MS. SAMPLIN:**  Understood, Your Honor, thank you.
9           **THE COURT:**  All right?  Is there anything further?
10  So we'll see you back on June 3rd at 10:00 o'clock.
11          And if there's anything in the interim, let me do
12  this.  Let me ask you to file it by -- any further results of
13  any further meet and confer by a week from today, May 27th.
14  All right?
15          **MR. LERNER:**  Thank you.
16          **THE COURT:**  All right.  We are adjourned.
17      **(Proceeding adjourned)**
18
19
20
21
22
23
24
25

173

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*[signature: Toni Hudson]*                                    **May 26, 2021**

        Signed                                                              Dated

*TONI HUDSON, TRANSCRIBER*