```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)




MASIMO CORPORATION, ET AL,     ) CASE NO: 8:20-CV-00048-JVS-JDEx
                               )
             Plaintiffs,       )            CIVIL
                               )
     vs.                       )        Santa Ana, California
                               )
APPLE, INC,                    )        Thursday, June 17, 2021
                               )
             Defendant.        )     (9:58 a.m. to 10:36 a.m.)


        HEARING RE: PLAINTIFFS' MOTION TO COMPEL [DKT.NO.400]


             BEFORE THE HONORABLE JOHN D. EARLY,
                UNITED STATES MAGISTRATE JUDGE




APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart

Courtroom Deputy:         Maria Barr

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988
```

**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

<u>**APPEARANCES**</u>:


For Plaintiffs:              JOSEPH R. RE, ESQ.
                             Knobbe Martens Olson & Bear, LLP
                             2040 Main Street
                             14th Floor
                             Irvine, CA 92614

                             ADAM POWELL, ESQ.
                             Knobbe Martens Olson & Bear, LLP
                             12790 El Camino Real
                             San Diego, CA 92130


For Defendant:               JOSHUA H. LERNER, ESQ.
                             Gibson Dunn & Crutcher, LLP
                             555 Mission Street
                             Suite 3000
                             San Francisco, CA 94105

1          **Santa Ana, California; Thursday, June 17, 2021; 9:58 a.m.**

2                          **(Call to Order)**

3          **THE COURT:**  Good morning, everyone.

4      **(Attorneys greet the Court)**

5          **THE COURT:**  We're calling the case of *Masimo*

6  *Corporation, et al. versus Apple, Inc*; Central District of

7  California Case Number 8:20-cv-48-JVS-JDE.

8          We'll take appearances, starting with counsel for the

9  plaintiff.

10         **MR. POWELL:**  Thank you, Your Honor.

11         Adam Powell for Plaintiff Masimo Corporation and

12  Cercacor Laboratories, Inc.  With me is my partner, Joseph Re.

13         **THE COURT:**  Good morning.

14         **MR. LERNER:**  Good morning, Your Honor.  On behalf of

15  Apple, Josh Lerner.

16         **THE COURT:**  Good morning.

17         And I want to let counsel know that we have a

18  visitor.  This is Ms. Pauline Alarcon (phonetic).  She is a

19  second year going into her third year of studies at UCLA Law

20  School and she is here as a guest of the Court.  But we're

21  going to get into some issues and why don't I start right away.

22         We're here for the Motion to Compel filed by

23  Plaintiffs to compel Apple to provide information regarding

24  what's described as documents Apple destroyed, what Apple would

25  characterize as information that Apple removed from its system

4

1    as part of its routine document retention policy.  A wonderful

2    Turner phrase for a policy that focuses on document removal.

3    And I don't hold that against Apple; that's what everyone calls

4    it as you know.

5            All right.  We're here for the motion.

6            Before we get into the substance, I want to talk

7    about one of the matters that was submitted, proposed to be

8    under seal.  I granted the under seal application because it

9    was a mixture of things that looked like it was appropriately

10   to be filed under seal.  But one of them I had a question and

11   wanted to do follow up on because we may be amending that

12   order; and that is the declaration of Robin Goldberg (phonetic)

13   and it's a focal point of our motion today.

14           The basis for the sealing was a representation in

15   Mr. Powell's declaration that accompanies the motion that Apple

16   had designated the entirety of the declaration as attorneys'

17   eyes only and I just want to first of all make sure that's

18   correct.

19           Am I understanding that correct, Mr. Powell?  -- and

20   then I'll ask Mr. Lerner.

21           **MR. POWELL:**  That is my understanding, Your Honor.

22           **THE COURT:**  And Mr. Lerner, is it Apple's intention

23   or desire that the entirety of -- and is it -- what's the

24   correct pronoun for Robin Goldberg?

25           **MR. LERNER:**  Miss, Your Honor.

1          **THE COURT:**  Is it Miss -- the intention that the

2    entirety of Ms. Goldberg's three-page declaration -- and that's

3    filed under seal at Docket Number 403-2 -- is to be sealed?

4          **MR. LERNER:**  That was our intent, Your Honor.

5          **THE COURT:**  All right.  Well, I'm going to tell you

6    that I don't think the entirety of it should be sealed and I'm

7    not sure that any of it should be sealed.  So let's start out

8    by going through that, Mr. Lerner and Mr. Powell.

9          As you know, because you've filed plenty of documents

10   under seal in this case and in others under Local Rule

11   79-5.2.2.  And we're now looking at subsection (b) because this

12   is a situation where the non-moving party is seeking to have

13   something filed under seal that was designated as confidential

14   by the opposing party.

15         The process under subsection (b) is:

16         "At least three days before seeking to file under

17         seal a document containing information previously

18         designated as confidential by another person pursuant

19         to a protective order, the filing party must confer

20         with the person that designated the material

21         confidential, defined term 'designating party,' in an

22         attempt to eliminate or minimize the need for filing

23         under seal by means of redaction.

24         "If the document cannot be suitably redacted by

25         agreement, the filing party may file an application

1          pursuant to subsection (a), but the supporting

2          declaration must identify the material previously

3          designated as confidential, as well as the

4          designating party, and must describe in detail the

5          efforts made to resolve the issue.

6          "The declaration must be served on the designating

7          party on the same day it is filed and proof of this

8          service must be filed with the declaration.

9          "Subsequently --

10    And we'll just focus on adding little "i"

11          "-- within four days of the filing of the

12          application, the designating party must file a

13          declaration establishing that all or part of the

14          designated material is sealable by a showing of good

15          cause, or demonstrating compelling reasons why the

16          strong presumption of public access in civil cases

17          should be overcome, with citations to the applicable

18          legal standard.

19          "If the designating party maintains that only part of

20          the designated materials -- material is sealable, the

21          designating party must file with its declaration a

22          copy of the relevant material with proposed

23          redactions highlighted.

24          "The declaration, and if applicable, the document

25          highlighting proposed redactions will be closed to

1          public inspection.  Failure to file a declaration or

2          other required document may be deemed sufficient

3          grounds for denying the application."

4          (Period, end of quotation)

5          I did not see on the docket any filing by Apple.

6          First of all, Mr. Lerner, is that correct?

7          **MR. LERNER:**  On the sealing, Your Honor --

8          **THE COURT:**  Yes.

9          **MR. LERNER:**  -- that's correct.

10          **THE COURT:**  So under the local rule, I could deny it

11    based on that failure alone.  But I want to hear from you

12    because we're dealing with potentially confidential information

13    and I want to smooth things over for everyone.

14          But this declaration in material, (a), it's very

15    important to our resolution of the motion here today; and (b),

16    I got to tell you, large portions of it do not look

17    confidential.  They certainly don't look like they'd meet the

18    definition of attorneys' eyes only under the protective order.

19          And maybe the best thing, since you advised that it

20    was your -- I thought maybe it might have been an oversight,

21    that it was your intention to have the entirety of the

22    declaration filed under seal, let's go through it, sort of

23    provision by provision.  And we are in open record right now.

24    If you feel a need to seal a record, we'll take that and we can

25    talk about whether we need to close the courtroom or not.

1            But let's start out with just the cover page of the

2    declaration.  Page one, the caption.

3            Is there anything on that caption that is, from

4    Apple's standpoint, confidential; if so, what?

5            **MR. LERNER:**  No, Your Honor.

6            And to answer your question when you asked whether or

7    not it was our intention, it definitely was when we did this.

8    I take your point that the cover page, for example, and some of

9    the introductory paragraphs are general information.  And --

10           **THE COURT:**  All right.  So maybe we can streamline

11   this.

12           **MR. LERNER:**  Yes.

13           **THE COURT:**  The cover page -- the first page, the

14   entirety, the title of the document, the "I, Robin Goldberg,

15   declare and state."  And then, from my view, certainly

16   paragraphs one through three -- which are foundational -- do

17   not appear confidential to me but maybe I'm missing something

18   so let me know.

19           **MR. LERNER:**  I agree with you.

20           **THE COURT:**  All right.  Now we'll turn to paragraph

21   four.

22           I suppose there could be an argument, although I have

23   to say it's at such a level of generality.  And having received

24   communications from Apple for various products and seen various

25   writings from Apple's and various products, and also

1  recognizing that Apple is a public company, probably has to

2  make disclosures in SEC filings and other locations about a

3  variety of different issues related to what's in paragraph

4  four, is paragraph four confidential?

5          **MR. LERNER:**  So Your Honor, with respect to the

6  positions we take, for example, on how long we store this

7  information and --

8          **THE COURT:**  Okay but that's not paragraph four.  I'm

9  just asking what's in paragraph four.

10          **MR. LERNER:**  Right.  And paragraph four talks about

11  storage and whether or not it's indefinite or not, and the

12  reasons why we treat it that way.

13          I think it's fair to say, as Your Honor just alluded

14  to, publicly how Apple treats information like this and how it

15  is stored is definitely a security issue that comes up

16  regularly.  And so with respect to paragraph four, that is a

17  paragraph that we would take the position should be sealed.

18          **THE COURT:**  All right.  I'm going to overrule the

19  position that such a level of generality and vagueness, and a

20  general statement of a corporate intent that there's no time,

21  specific time period in there.  There's no specific action

22  regarding any specific time period; it merely states a cost

23  benefit, a general cost benefit discussion.

24          So I don't find -- and it's partly based on the

25  failure to submit a declaration with respect to paragraph four

10

 1   -- that Apple has met its burden to overcome the presumption of

 2   public access.

 3          We're going to skip paragraphs five, six, seven and

 4   -- just five, six and seven.

 5          Talk to me, Mr. Lerner, about -- and we can do them

 6   as a group or we can -- let's do them one by one.

 7          Paragraph 8.

 8          **MR. LERNER:**  So with respect to these, Your Honor,

 9   given that they are former employees that we're talking about

10   as a general matter, we have definitely tried to -- and I think

11   both parties have tried to be sensitive when we're talking

12   about former employees.  Identifying them individually and

13   their information, we were trying to be cautious here with

14   respect to information about prior employees.

15          **THE COURT:**  Are you saying that as a legal matter,

16   the fact that someone worked for Apple is sufficiently

17   confidential as to overcome the presumption of public access to

18   court records?

19          **MR. LERNER:**  No, Your Honor.  Here we were addressing

20   specifically the retention of their communications.

21          **THE COURT:**  All right.  So what you're saying is for

22   at least one person who departed Apple six years ago, that it's

23   confidential.  That what's contained in paragraph eight under

24   the applicable Ninth Circuit standards regarding what the

25   definition of good cause to seal public -- information from

11

1  public records?

2       MR. LERNER:  That was the position we took and I

3  think it applies to Your Honor's point as a group on paragraphs

4  eight and nine.  Again, understand if you disagree but we have

5  been trying to be protective of information about individual

6  prior employees.

7       THE COURT:  And that's the basis for the -- because I

8  don't have any basis; all I have is a statement from Plaintiffs

9  that Apple designated the entirety of the declaration as

10  attorneys' eyes only.  And I don't see any basis for this

11  information to be attorneys' eyes only.  And I don't think the

12  fact that someone worked there or the fact that Apple, six

13  years ago, followed its own policies and procedures with

14  respect to two identified employees is in any way there's good

15  cause.  Or it's not a compelling -- we're not at compelling

16  interest because this is not a dispositive motion but there's

17  no good cause to overcome the general presumption to public

18  information.

19       MR. LERNER:  Understood, Your Honor.  And if the

20  issue is confidential verse [sic] attorneys' eyes only, that's

21  certainly something we're willing to discuss but -- and I won't

22  keep arguing it with you.

23       THE COURT:  All right.  Well let's just look at

24  eight, nine 10 and 11.  I have the same view on all those.  Do

25  you have the same position?

12

1          **MR. LERNER:**  On 11, I do think that how we go about

2     this and the way that we look at this, again, is information

3     that we -- is confidential and we don't share for the same

4     reasons we were discussing with --

5          **THE COURT:**  Again, I look at 11 and I'm just going to

6     say, it's so vague.

7          There are two general locations of what -- where data

8     was searched for, and those two locations are merely just

9     generic terms that don't provide an actual location, don't

10    provide the nature, don't, for instance, distinguish between

11    cloud-based, nothing.  It's just -- and because I'm finding

12    that this is not confidential, the only two specific locations

13    are the words "servers" and "other data storage systems".  And

14    I don't see any way that that's -- meets the showing of good

15    cause to seal.  So I'm going to overrule and order that that

16    information not be sealed.

17         And then lastly, paragraph 12 is sort of a closer

18    call but it really is just the foundation for why, to the

19    extent I proceed and maintain paragraphs five, six and seven as

20    sealed, that would be the foundation for it.  And I think that

21    that's -- that should be public so that the public can see

22    because otherwise there's nothing in the record to justify the

23    sealing of paragraphs five, six and seven.

24         So what's your view on that, Mr. Lerner?

25         **MR. LERNER:**  If you need that information to seal

13

1   five, six and seven, then I understand your position, Your

2   Honor.

3           THE COURT:  All right.  I'm going to overrule that.

4           So here's what I'm going to direct you to do,

5   Mr. Lerner.

6           After our hearing today, file a redacted version.

7   And indicate that, per my order in court today, that there's a

8   redacted version of the Declaration of Robin Goldberg with

9   everything in paragraphs -- the substance of paragraphs five,

10  six and seven redacted but the rest of the document not

11  redacted.

12          But I should probably lastly hear from Plaintiffs.

13          And I'll note, if you are going to talk to me, I'm

14  going to ask you why you didn't follow through with the

15  provisions and the requirements under Local Rule 79.2.2 about

16  how these documents are supposed to be discussed in good faith

17  to attempt to eliminate and that that should be in the

18  declaration.

19          But let me know if you have any disagreement or want

20  to be heard on what my proposed resolution is.

21          MR. POWELL:  We have no objection, Your Honor.

22          THE COURT:  All right.  So that will be the order of

23  the Court.

24          What we're going to do now is to the extent we refer

25  -- and we're now in a much limited universe of what's

14

1   confidential.  You let me know; I'll try to remember it and if

2   we have to get into the specifics, we can seal that portion of

3   the recording and the -- any eventual transcript and talk about

4   whether we need to clear the courtroom.  All right?

5           With respect to the substance of the motion,

6   obviously I read the motion, the joint stipulation, the

7   evidence in support and in opposition, and Plaintiffs'

8   supplemental memorandum and supporting information.

9           One of the difficult things to make sure we're all

10  arguing about -- arguing about the same thing, the joint

11  stipulation, Plaintiffs' portion says that this is a motion

12  about all custodial files of Lamego and Navarro [sic].  And

13  that Mr. -- Nazaro, sorry.  And that Apple advised them,

14  advised Plaintiffs on February 12th by email that those

15  documents had been destroyed.

16          Here's what I view the dispute as is more narrow than

17  that because as I understand it -- and this is from Docket

18  Number 401-1 at page 72.  This is that March 12th email that

19  was referenced regarding Dr. Lamego and -- Is it Dr. Nazaro or

20  Mr. Nazaro?

21          **MR. LERNER:**  Mister, Your Honor.

22          **THE COURT:**  Mr. Nazaro.

23          (Quote):

24          "Apple no longer has either individuals' email

25          files." (period).

**EXCEPTIONAL REPORTING SERVICES, INC**

15

1          "To the extent Apple has relevant documents from

2          either individual in noncustodial databases or the

3          files of other custodians, Apple will produce such

4          documents, (parenthesis), (and has -- and in fact has

5          already begun producing such documents)." (period --

6          or paren, period, close/quote).

7          So we're really talking about email data; is that

8     right, from the plaintiffs' standpoint?

9          **MR. POWELL:**  To be honest I'm not sure, Your Honor,

10    because I'm not sure what has been removed and what they still

11    have.  And that's part of the issue is that we've tried to

12    understand what has been removed or deleted -- whatever

13    "removed" means, and we don't really know.

14         **THE COURT:**  Well, I'm telling you how I view it.

15         You've got a representation here that other than the

16    -- what they limit it to, they're going to produce documents,

17    whether it's in noncustodial databases or files of other

18    custodians.

19         Now, you are correct that there has been some

20    difficulty and I had difficulty following the meet and confer

21    as to what this all means but here's what I'm going to tell you

22    is my understanding of what I'm ruling on.

23         I'm just ruling on email.  And I hope Apple is

24    listening.

25         If there are other locations where responsive

1  information would reasonably be anticipated to be found, and I

2  don't want to get more further -- we'll talk about it more in a

3  moment -- we're just talking about the email.  We're just

4  talking about that's what Ms. Goldberg described in her

5  declaration.

6          I don't have any information on other locations where

7  it could be.  There's -- Plaintiffs talk about back-up tapes

8  and whether they exist and all.

9          Ms. Goldberg's declaration, I found very helpful but

10  I'll also say it was carefully crafted.  And this is a perfect

11  situation where I know if I were to issue an order to say, I

12  looked at the proposed order that Plaintiffs want that says,

13  Hey, Apple, describe everything you did, we'd be back here in

14  two weeks because -- and I'm not casting blame -- you can ask

15  -- Plaintiffs could ask questions forever:  Well what about

16  this and what about this and how about this?  What's that sound

17  like the best mechanism to get to the bottom of it is?  What

18  does that sound like?  A deposition.

19          So here's my -- here's where I'm going to shift over

20  to because I think, as I'm viewing the issue, it's hard to tell

21  what you're fighting about.  I think that representation from

22  Apple says, Hey, we're just talking about email but as

23  Plaintiff points out, some of the other things in the meet and

24  confer process were less clear.  And Ms. Goldberg's declaration

25  just focuses on -- she uses the phrase repeatedly -- email

1  data, email data, email data, email data.

2       So I'm inclined, based on that, based on what

3  Ms. Goldberg has said, that if that's the dispute, the motion

4  would be denied.  Because she has fairly clearly, I think as

5  clearly as could be, resolved the universe about

6  (quote/unquote), "email data" and whether I should now order

7  some further inquiry I don't think is warranted.

8       And my understanding is -- and it was in the

9  supplemental memoranda -- that that was -- that declaration was

10  the first time Plaintiffs had received some of this

11  information.  I don't really want to get bogged down in that

12  but I guess I want to turn now to Plaintiffs.

13       Has there been a 30(b)(6) deposition on the issue;

14  and if not, why not?

15       **MR. POWELL:**  Certainly, Your Honor.

16       So we did ask for a deposition of one of the people

17  with knowledge of these topics and Apple refused to give us

18  that deposition.

19       **THE COURT:**  All right.  And what was the stated basis

20  that they gave for refusing?

21       **MR. POWELL:**  They stated the person that we named was

22  too high level.  I don't have his name handy right now.

23       **THE COURT:**  Well hold on.  A 30(b)(6) deposition is a

24  30(b)(6) deposition.  You're not naming a person; you're saying

25  I want you to designate the person most knowledgeable on -- and

18

1   you could put Mr. Lamego's emails, wherever they may be found.

2   Mr. Navarro's email files, wherever they may be found.  And

3   then Apple designates the person most knowledgeable and then

4   they have an obligation under the rules, under Rule 30 to find

5   that person and to make sure that person is reasonably prepared

6   through -- and the cases say "through counsel, if necessary,"

7   but reasonably prepared to answer those questions.

8         So why didn't -- has that been done?  Has a 30(b)(6)

9   deposition on these issues been noticed?

10        **MR. POWELL:**  No, Your Honor, and I'd like to explain

11  why.

12        **THE COURT:**  All right.

13        **MR. POWELL:**  So the reason is that we offered to do

14  that but Apple has taken the position that you can only serve

15  one 30(b)(6) deposition notice in a case, and it must contain

16  all of the topics and you can never add to it later.

17        **THE COURT:**  All right.

18        **MR. POWELL:**  And so what we said is, could we please

19  serve one just on this topic and then we'll serve our broader

20  30(b)(6) later on other ones and the answer was no.

21        **THE COURT:**  All right.  I'll turn to Mr. Lerner.

22        Is that correct?

23        **MR. LERNER:**  Your Honor, it is our position that they

24  should do everything in their power to include all the topics

25  so that we don't risk --

1          And this has come up throughout the depositions.  We

2     have been begging --

3          **THE COURT:**  I'm just going to ask you, yes or no?

4          Is what Mr. Powell said, was that Apple's response?

5          **MR. LERNER:**  Not -- that is not entirely accurate

6     because --

7          **THE COURT:**  Tell me what Apple's response was.

8     Without getting into the history of the litigation, what was

9     Apple's response to the request for a separate 30(b)(6)

10    deposition with respect to the emails of Dr. Lamego and

11    Mr. Nazaro?

12         **MR. LERNER:**  So when you asked what was our response,

13    I want to be sure that I know which email we're talking about

14    here because there have been, no joke, probably hundreds of

15    emails on this 30(b)(6) issue.

16         So I know that our position is, they should do their

17    level best to present all of the topics in one 30(b)(6) notice.

18    And the reason this is so important is when they said they

19    identified somebody on this deposition, they identified the

20    vice president who oversees --

21         **THE COURT:**  Okay.  If you heard me, I moved past

22    that.  Now the question is, is that your position; and if so,

23    is there any reason why, for good cause, I can't overrule your

24    objection and say, no, we're going to do this deposition first?

25         **MR. LERNER:**  You could without the context.  I think

1    the important context is, if you start serving 30(b)(6) notices

2    one off, you almost defeat the purpose of the 30(b)(6) notice

3    because we're going to have, potentially, I think, not --

4    almost certainly, people testifying over and over again.  So

5    the reason we've requested this over and over and still have no

6    30(b)(6) notice in the entire case is to get to Your Honor's

7    point.  If they want to take the position that there's nothing

8    else they could identify right now, at all, so that we avoid

9    the risk of duplicative testimony; and even on this narrow

10   issue, Your Honor, you said it earlier.  There is no discovery

11   request pending.  And if they don't serve at least as complete

12   a 30(b)(6) notice as they can, what are the chances that we're

13   going to have another fight over another person on the same

14   subject matter?  Incredibly high.  So we just asked them -- and

15   I do think I'm stating this accurately -- Tell us the 30(b)(6)

16   topics you currently have so this isn't inefficient.  And I

17   don't think, Your Honor, that --

18          **THE COURT:**  Well let me tell you.  I'm going to

19   interrupt --

20      **(Voices overlap)**

21          **MR. LERNER:**  -- (glitch in audio) good cause to not

22   do that.

23          **THE COURT:**  I'm going to interrupt.

24          It's incredibly inefficient.  I read the meet and

25   confer paperwork as well and I'm going to be blunt.  I can't

1  always tell what Apple is saying and what representations are

2  made.  And I do wish that the parties would work more

3  collaboratively.  This is an issue that cries out for, frankly,

4  two -- a telephone call with Plaintiffs' tech email recovery

5  person and Apple's tech email recovery person having a

6  conversation about how it works.  And if Apple wants to

7  designate the contents of that confirmation attorneys' eyes

8  only because the system is so confidential that they don't want

9  it to get out, fine.  But we wind up without that, without a

10 two-way -- That's what I'm getting at.  Without a two-way

11 conversation with people who know what they're talking about,

12 you get a letter, I need this; and you say, Okay well I'll give

13 you some of this; and here it is; and then it's like, Oh, we

14 got more questions as a result of that; tell me about this.

15 And then you're going to have email correspondence that looks

16 like this as opposed to a phone call.

17          **MR. LERNER:**  We did also have phone calls, Your

18 Honor.

19          **THE COURT:**  Of tech people?

20          **MR. LERNER:**  I don't know what you mean by "tech

21 people," I'm sorry.

22          **THE COURT:**  I mean the people who understands Apple's

23 document storage facility now and facility back in 2015 and

24 2016, so that the tech people here who speak a different

25 language -- just like we speak a different language of law,

1  they speak a different language of when they hear someone say,

2  We removed the records.  Well the tech will say, Hmm, removed?

3  Does that mean destroyed or deleted?  No it means removed; it

4  leaves a trace and sometimes you can go in through other

5  software; there may be tapes somewhere.  And rather than having

6  that go back and forth forever, let those people talk.  And

7  then as a result of that talk, if there's some sufficient

8  showing that there's a spoliation issue under Rule 37, boom.

9  You got what you want and you go and you fight against it.

10  Then we get into whether there was a -- if there aren't -- if

11  there were documents and if they were destroyed, we then can

12  get into the issue of the preliminary question is was there a

13  preservation obligation at the time.  That's not being asked of

14  me now and I'm not going to opine on it or rule on it.  But it

15  seems like a phone call could address a lot of this.  But that

16  doesn't sound like it happened where the tech people talked so

17  maybe -- and I'm not going to order a phone call; I'm just

18  going to order a 30(b)(6) deposition but they don't get to pick

19  -- you don't get to pick who it is as a 30(b)(6) deposition --

20  and I'm pointing to Plaintiffs -- Apple does.  And they have to

21  do it in good faith and they have to make sure that person is

22  knowledgeable and you have to be careful in your designation

23  because that's the limit of what they're going to be preparing.

24          I know you've got a July 5th discovery cutoff; I know

25  you've got a motion pending before Judge Selna.

1          I don't see a reason for this narrow issue to say I

2    need all your 30(b)(6) topics because this may make other

3    topics necessary or it may make the entire dispute go away.

4    All right?

5          I understand Apple's position.  We had no -- we had

6    no obligation to preserve records that were destroyed in 2016.

7    And I'm going to say that the fact that they've taken a statute

8    of limitations accrual notice position doesn't put them on

9    notice that they have a preservation obligation.  But I don't

10   want to get into that.

11         What I am going to say though is, having done lots of

12   trials, what's the most damaging document in any trial?  It's

13   the one that was destroyed.  Okay?  And they have a right to

14   get discovery about what happened.  Leaving aside spoliation,

15   okay?  If there were potentially relevant documents, then Apple

16   has an opportunity to say, they were just routinely, routinely

17   destroyed but let's get to the bottom of it.

18         **MR. LERNER:**  Completely understood.

19         One important point of clarity.

20         This door absolutely swings both ways.  Correct?

21         So for example, last week when Your Honor first saw

22   documents never produced to us in this case but cited in a

23   motion to you -- which is actually the basis for their cases

24   where there are discrepancies.  The 30(b)(6) on these issues

25   absolutely --

24

1          THE COURT:  Remind me what you're talking about.

2          MR. LERNER:  Last week, as you know, we had a

3    discussion --

4          THE COURT:  It's funny we're here every week and --

5          MR. LERNER:  Yeah.  We had a discussion about --

6          THE COURT:  And Mitch Albom has a book <u>Tuesday's with</u>

7    <u>Morrie</u>.  Are you guys going to write a book <u>Thursdays with</u>

8    <u>Early</u>?

9          MR. LERNER:  Yes.

10          THE COURT:  Okay.

11          MR. LERNER:  We already started.

12          THE COURT:  Okay.

13          MR. LERNER:  Last week when we were here, Your Honor,

14    I didn't bring it up because you were busy and it was not

15    immediately relevant given the way things transpired but it is

16    relevant to this issue.

17          They cited to the Court in their declaration and to

18    us, documents from the very people that they claim are at the

19    heart of this case, their emails, which have never been

20    produced to us in the case; no Bates numbers, nothing, just out

21    of the blue.  And yet here we are talking about when we're

22    submitting declarations on every (glitch in audio) done here

23    from documents six years ago which nobody is arguing --

24          THE COURT:  So let me just cut to the chase.

25          MR. LERNER:  Yeah.

1    **THE COURT:**  I can't speak to the specific issue

2   because I don't know what it is but I certainly can tell you

3   the origin of mysterious documents that appear out of nowhere

4   or documents that disappear that otherwise are relevant, yeah,

5   you're going to be able to probe that.  Are there limits?  Yes.

6        But the -- again, my criminal background.  You've got

7   the concept of opening an inquiry, right?  It's not formal;

8   you're just trying to get some information to see whether you

9   get to the stage of an investigation to see whether you get to

10  the stage of an indictment to see whether you get to the stage

11  of a trial.  That initial period, yeah.

12        Now, we're going to have a careful balancing though.

13  If you -- in the inquiry stage, you're not sure, there might be

14  something here.  The concept or proportionality and every

15  discovery dispute is a matter of proportionality.  You're not

16  going to base on, Hmm, I hadn't seen this before so I want

17  every email ever issued so I can make sure, I can have my tech

18  guy make sure that they're in the flow of whatever the storage

19  would be and it wasn't somehow inserted by looking at the

20  metadata to see that somehow the date here was -- There's a

21  limit to it but yes.

22        If there's a question about the origin, the

23  foundation, the potential fraudulentness of a document, yeah,

24  you could take discovery and find out information on that but

25  it's subject to proportionality and that applies both ways, of

26

```
 1   course.  All right?

 2              So here is my inclination.

 3              It's to deny the motion, viewing it relatively

 4   narrowly.  But granting plaintiff leave sua sponte to serve a

 5   30(b)(6) deposition notice.

 6              You have a discovery cutoff of July 5th.

 7              I hate to do it but I can't prejudge what Judge Selna

 8   is going to do with the motion to continue.  So to the extent

 9   there's an order shortening time, I'll order it.  But if you're

10   asking for records as part of that 30(b)(6), considering the

11   timeframe, I expect it to be a very narrow request; and again,

12   it's on Plaintiff to make -- make this carefully crafted.  This

13   is a narrow issue.

14              And you need to work in good faith.  We have a

15   holiday coming up; you need to work in good faith with Apple to

16   schedule this.

17              So arguably, under Judge Selna's scheduling order, I

18   would have the authority to direct that a deposition be taking

19   place -- to take place after the cutoff as long as it's within

20   the motion was made timely because he allows discovery motions

21   to be made up till 10 days after the discovery cutoff so I --

22   And I've talked to him about this.  I interpret that to allow

23   me to have the deposition proceed after the cutoff but maybe

24   you can work together.

25              Your hearing with Judge Selna is Monday, right?
```

27

```
 1              MR. POWELL:  Yes, Your Honor, and a tentative has

 2     been issued already.

 3              THE COURT:  Oh I haven't seen it.  What's the

 4     tentative?

 5              MR. POWELL:  The tentative was to extend the

 6     discovery period by eight months.

 7              THE COURT:  Okay.  So it's obviously a tentative

 8     but --

 9              MR. POWELL:  I'm sorry, Your Honor, and also to issue

10     a -- or appoint a special master.

11              THE COURT:  Well we'll wait to see what happens.

12     I'll miss my Thursdays with Early.  I'm sure you will as well.

13              Who's the special master, did he say?

14              MR. POWELL:  He's not said yet.  He is considering

15     Judge Gilford (phonetic) and Judge Segal (phonetic).

16              THE COURT:  All right.  Well we'll cross that

17     proverbial bridge or you'll cross that proverbial bridge when

18     we get to it but in the meantime this is before me and I'm

19     going to -- inclined to rule on this with a denial but with

20     granting leave to take this 30(b)(6) topic separately from

21     other ones.  But don't have the fact that your nose is under

22     the tent to be an example to get the whole camel under there.

23              This is a narrow issue and it's to get to the bottom

24     of these emails or other documents and what was done.  It's not

25     to do a full bore investigation of the document production of
```

1   Apple, unless -- listen.  And it's subject to unless with the

2   extension, you want to instead make this a part of your -- I'm

3   assuming you're going to do what everybody does which one of

4   the 30(b)(6) topics is, what you did to respond to documents.

5   Am I wrong?  Is that not going to be one of the 30(b)(6)

6   topics?

7           **MR. POWELL:**  I'm not sure, Your Honor.

8           **THE COURT:**  Okay.  Well --

9           **MR. POWELL:**  Probably.

10          **THE COURT:**  And that's where their frustration comes

11  from.

12          But so what I'm authorizing is very narrow.  If you

13  decide that with the extension you're going to wrap this into a

14  general topic of what was done to comply with document

15  requests, you're allowed to but you need to let them know that.

16  And that will obviously allow -- afford you greater flexibility

17  in how you define the topic.  Is that clear?

18          **MR. POWELL:**  It's clear, Your Honor.

19          **THE COURT:**  And in terms of the timing, I'm going to

20  say it needs to be done by July 5th.  But if there is an

21  intervening order extending the discovery cutoff, I am not

22  going to put a time period on this 30(b)(6) deposition other

23  than as soon as practicable, assuming it's narrowly tailored to

24  get to the bottom to this narrow issue.

25          And Mr. Lerner, here's my hope, that it actually ends

29

1   all these emails back and forth and everybody gets either

2   comfort that, okay this is what happened and there's no further

3   action to be taken or we're going to run with some other motion

4   and that's what we're going to do.

5           All right.  So that's going to be the ruling.  It's

6   going to be to deny the motion but to sua sponte grant the

7   30(b)(6) deposition on narrow topics relating to document

8   retention (slash) destruction for these two witnesses to be

9   completed by July 5th, unless the discovery cutoff is extended

10  by Judge Selna.

11          And Apple is separately directed to file a redacted

12  version of the Goldberg Declaration, if you could do that let's

13  say by Monday, June 21st.

14          All right.  First of all, are there any questions on

15  the ruling, starting with plaintiff?

16          **MR. POWELL:**  No, Your Honor.

17          **THE COURT:**  Mr. Lerner, on behalf of Apple?

18          **MR. LERNER:**  Nothing, Your Honor, thank you.

19          **THE COURT:**  All right.  That'll be the order of the

20  Court.  Thank you.

21          **MR. POWELL:**  Thank you, Your Honor.

22      **(Proceeding adjourned at 10:36 a.m.)**

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 18, 2021

          Signed                                                      Dated

*TONI HUDSON, TRANSCRIBER*