Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF ADAM B. POWELL IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 10 ORDER DENYING MOTION TO COMPEL DISCOVERY FROM TIM COOK (DKT. 455)**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date: August 19, 2021<br>Time: 10:00 a.m.<br>Ctrm: 6A<br><br>Discovery Cut-Off: 3/7/2022<br>Pre-Trial Conference: 11/21/2022<br>Trial: 12/6/2022 |

I, Adam B. Powell, hereby declare as follows:

1.      I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.  I submit this Declaration in Support of Masimo's Motion for Reconsideration of the Court's June 10 Order Denying Motion to Compel Discovery From Tim Cook (Dkt. 455).

2.      On July 9, 2021, I participated in a meet and confer with counsel for Apple regarding this motion.  Apple declined to search Mr. Cook's documents, and the parties were unable to resolve their dispute.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of a transcript of the June 10, 2021, hearing before the Court.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of the publicly filed Joint Stipulation Regarding Non-Party Apple Inc.'s Motion to Quash Subpoena and For a Protective Order in *Masimo Corp. v. True Wearables, Inc.*, No. 8:18-cv-02001-JVS (JDEx) (C.D. Cal. July 2, 2021), Dkt. 321.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of an email chain the last email of which is from Paige Stradley (who is counsel for True Wearables) to Mark Kachner (who is counsel for Masimo), dated June 3, 2021.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of an email chain the last email of which is from Mr. Kachner to Angelique Kaounis (who is counsel for Apple), dated June 3, 2021, excluding attachments.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of the Civil Minutes – General in *Masimo Corp. v. True Wearables, Inc.*, No. 8:18-cv-02001-JVS (JDEx) (C.D. Cal. June 24, 2021), Dkt. 311.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of Exhibit 4 of the publicly filed Plaintiffs' Exhibits 3-5, 8, and 10 to the Declaration of Mark D. Kachner

in Support of Opposition to Apple Inc.'s Motion to Quash and For a Protective Order in *Masimo Corp. v. True Wearables, Inc.*, No. 8:18-cv-02001-JVS (JDEx) (C.D. Cal. July 2, 2021), Dkt. 321-01.

9.    Attached hereto as **Exhibit 7** is a true and correct copy of a transcript of the June 24, 2021, hearing before the Court in *Masimo Corp. v. True Wearables, Inc.* No. 8:18-cv-02001-JVS (JDEx) (C.D. Cal. June 29, 2021), Dkt. 316.

10.    Attached hereto as **Exhibit 8 [Filed Under Seal]** is a true and correct copy of the document that Apple produced in discovery as APL-MAS_00332234.

11.    Attached hereto as **Exhibit 9 [Filed Under Seal]** is a true and correct copy of the document that Apple produced in discovery as APL-MAS_00310646.

12.    Attached hereto as **Exhibit 10** is a true and correct printout of the webpage located at https://www.apple.com/newsroom/2011/11/15enUS-Apple-Names-Arthur-D-Levinson-Chairman-of-the-Board/, entitled "Apple Names Arthur D. Levinson Chairman of the Board," dated November 15, 2011.

13.    Attached hereto as **Exhibit 11 [Filed Under Seal]** is a true and correct copy of the document that Apple produced in discovery as APL-MAS_00332011.

14.    Attached hereto as **Exhibit 12** is a true and correct redacted copy of an email chain the last email of which is from myself to Brian Andrea (who is counsel for Apple), dated July 9, 2021.

15.    Attached hereto as **Exhibit 13** is a true and correct printout of the webpage located at https://www.beckershospitalreview.com/consumerism/behind-apple-s-healthcare-strategy-4-quotes-from-ceo-tim-cook.html, entitled "Behind Apple's healthcare strategy: 4 quotes from CEO Tim Cook," dated December 14, 2020.

16.    Attached hereto as **Exhibit 14** is a true and correct printout of the webpage located at https://www.sportspromedia.com/news/tim-cook-apple-watch-sports-fitness-plus, entitled "Tim Cook: 'Apple's greatest contribution could be in health and wellness'," dated February 16, 2021.

17.    Attached hereto as **Exhibit 15** is a true and correct printout of the webpage located at https://frontofficesports.com/apples-next-move/, entitled "Tim Cook Believes Health and Wellness Will be Apple's Legacy," dated February 16, 2021.

18.    Attached hereto as **Exhibit 16 [Filed Under Seal]** is a true and correct copy of an excerpt of a document that Apple produced in discovery as APL-MAS_00098752.

19.    Attached hereto as **Exhibit 17 [Filed Under Seal]** is a true and correct copy of an excerpt of a document that Apple produced in discovery as APL-MAS_00117006.

20.    Attached hereto as **Exhibit 18 [Filed Under Seal]** is a true and correct copy of a document that Masimo produced in discovery as MASA00085626.

21.    Attached hereto as **Exhibit 19 [Filed Under Seal]** is a true and correct copy of an email chain the last email of which is from Michael O'Reilly, dated July 12, 2013.

22.    Attached hereto as **Exhibit 20 [Filed Under Seal]** is a true and correct redacted copy of an email chain the last email of which is from Joe Kiani to Michael O'Reilly, dated July 13, 2013.

23.    Attached hereto as **Exhibit 21** is a true and correct copy of the Discovery Order in *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640-YGR (N.D. Cal. Dec. 16, 2020), Dkt. 192 (consolidated with other cases).

24.    Attached hereto as **Exhibit 22 [Filed Under Seal]** is a true and correct copy of a letter from myself to Mr. Andrea, dated March 12, 2021.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on July 19, 2021, at Encinitas, California.

*/s/ Adam B. Powell*
Adam B. Powell

35331409

# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)




MASIMO CORPORATION, ET AL,    ) CASE NO: 8:20-CV-00048-JVS-JDEx
                              )
              Plaintiffs,     )              CIVIL
                              )
      vs.                     )         Santa Ana, California
                              )
APPLE, INC,                   )         Thursday, June 10, 2021
                              )
              Defendant.      )    (10:01 a.m. to 10:19 a.m.)


        HEARING RE: PLAINTIFFS' MOTION TO COMPEL [DKT.NO.377]
                 AND ORDER DENYING THE MOTION


           BEFORE THE HONORABLE JOHN D. EARLY,
              UNITED STATES MAGISTRATE JUDGE




APPEARANCES:              SEE PAGE 2


Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Maria Barr

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

Exhibit 1
-4-

2

**<u>APPEARANCES</u>:**


For Plaintiffs:                    JOSEPH R. RE, ESQ.
                                   Knobbe Martens Olson & Bear, LLP
                                   2040 Main Street
                                   14th Floor
                                   Irvine, CA 92614

                                   ADAM POWELL, ESQ.
                                   Knobbe Martens Olson & Bear, LLP
                                   12790 El Camino Real
                                   San Diego, CA 92130


For Defendant:                     JOSHUA H. LERNER, ESQ.
                                   Gibson Dunn & Crutcher, LLP
                                   555 Mission Street
                                   Suite 3000
                                   San Francisco, CA 94105

                                   ANGELIQUE KAOUNIS, ESQ.
                                   Gibson Dunn & Crutcher, LLP
                                   2029 Century Park East
                                   Suite 4000
                                   Los Angeles, CA 90067

3

1       **Santa Ana, California; Thursday, June 10, 2021; 10:01 a.m.**

2                          **(Call to Order)**

3               **THE COURT:**  Good morning, everyone.

4          **(Attorneys greet the Court)**

5               We're calling the case of *Masimo Corporation, et al.*

6   *versus Apple, Inc.*; Central District of California Case Number

7   8:20-cv-48-JVS-JDEx.  We're here on Plaintiffs' Motion to

8   Compel which is Docket Number 377.

9               And we'll take appearances of counsel, starting with

10  counsel for Plaintiffs.

11              **MR. RE:**  Good morning, Your Honor.  Joseph Re from

12  Knobbe Martens.  With me is my partner, Adam Powell.

13              **THE COURT:**  Good morning.

14              And on behalf of Defendant?

15              **MR. LERNER:**  Good morning, Your Honor.  Joshua Lerner

16  and Angelique Kaounis from Gibson Dunn on behalf of Apple.  And

17  with us today is Ryan Moran, in-house counsel at Apple.

18              **THE COURT:**  All right.  Good morning.

19              All right.  We're here on the Motion to Compel.  I've

20  reviewed the motion; I've reviewed the joint stipulation; I've

21  reviewed declarations and exhibits offered in support and

22  opposition to the requested relief and Plaintiffs' supplemental

23  memorandum and related information.

24              We're going to get started.

25              I have a tentative.  I'm going to give you the short

Exhibit 1
-6-

4

1   version.

2          The tentative is I'm tentatively inclined to deny the

3   motion.

4          I'm going to assume, without deciding, that it was

5   Apple's burden here, based on both the case law and the

6   existing order previously entered by me in this case, that

7   Apple had the burden here to oppose the relief Plaintiffs seek

8   with respect to Mr. Cook's -- a search of Mr. Cook's -- or

9   designating Mr. Cook as an ESI custodian.

10          And although the apex doctrine relating to

11   depositions and 30(b) -- or depositions doesn't apply directly

12   here; some, but not all, of the considerations that underly

13   that doctrine apply; and that is that it is more burdensome.

14   And I don't need a declaration to know this; that it is more

15   burdensome to search the CEO of a multi-billion dollar, maybe

16   multi-trillion dollar international corporation for records.

17   But the burden is not the same as having that person appear for

18   an apex depositions but there is some burden, there is some

19   burden and that's facially apparent.

20          And the proffer made by Plaintiffs, I'm going to

21   characterize as relatively weak in connection with the

22   relevance of Mr. Cook's email and other electronically stored

23   information sources as it relates to the claim in this case --

24   claims in this case -- claims and defenses in this case.

25          Gonna have a big bright light proviso now.  Counsel

Exhibit 1
-7-

5

1 have heard me say this at least once, maybe twice.

2    I'm going on what's in front of me; and in

3 particular, I would take counsel at their word.  We've got

4 excellent counsel in this case.  And I've got a representation

5 by counsel for Apple -- and although only -- it's

6 electronically signed by one person, there are (one, two,

7 three, four, five, six) seven attorneys underneath that

8 signature so I'm attributing this to all those counsel and the

9 firm representing Apple and Apple itself.

10    Quote, page -- this is from page 9 of the Joint

11 Stipulation, (quote):

12    "Tim Cook (comma), Apple's CEO (comma), is not likely

13    to have discoverable information relevant to any

14    parties' claims or defenses." (period, close/quote).

15    It's a conclusory statement but it's made by an

16 Officer of the Court and Officers of the Court, to this Court

17 in connection with this motion.  And I want Apple and its

18 counsel to understand that's the basis for my tentative and

19 potentially the basis for my ruling.

20    The world's a funny place.  We talked about it

21 before.  Sometimes there are acquisitions.  Sometimes things

22 come out that no one knew were going to come out and no one

23 understood were going to come out that can change how things

24 are looked at later.

25    I'm accepting that representation, that counsel's

Exhibit 1
-8-

6

1    done an inquiry and based on their inquiry, Tim Cook is not

2    likely to have discoverable information relevant to any

3    parties' claims or defenses.  And I've read -- there's dueling

4    declarations here.  Frankly, the issues at depth in those

5    dueling declarations are sort of tersely.  They're not to the

6    heart of the case.

7              But that statement, I'm relying on.  If that turns

8    out to not be true, through some other source, there will be

9    severe repercussions because I'm relying on it.  So I want to

10   make sure Apple understands that.

11             Regardless of my ruling here, Apple can still agree

12   to conduct a search of Mr. Cook's email as an ESI custodian.

13   I'm not -- my tentative is not to order it but be on notice.

14   You have put yourself out there and I'm relying on it.  If it

15   turns out not to be true, the consequences, we will be back

16   here and there will be an evidentiary hearing.

17             All right.  So let me hear -- Plaintiff, it's your

18   motion.  You've heard my tentative is to rule against you.  Let

19   me hear from you.

20             **MR. RE:**  Thank you, Your Honor.

21             I think --

22             **THE COURT:**  And this is Mr. Re speaking for our

23   recording.

24             **MR. RE:**  Thank you.  Mr. Re, R-e, is the last name.

25             I don't see any record evidence at all about burden.

Exhibit 1
-9-

7

1    This is simply an ESI search.  It is minimal effort.

2              **THE COURT:**  And if you heard what I said, there are

3    -- you haven't been here for all the discovery motions in here

4    and I've talked about that issue, that there are some -- some

5    cases where the burden is facially apparent.  And I'm not

6    saying it rises to the level of what the burden would be for an

7    apex deposition but I am saying it's facially apparent that

8    there is a burden to -- and we've also talked about pipes in

9    this case a lot -- that discovery requests are going through

10   pipes.  The pipes here are expanded in terms of the number of

11   potential custodians.  But we're trying to do things that make

12   economic sense under Rule 1 of the Federal Rules of Civil

13   Procedure but also get you what you're looking for.

14             Your showing to me, Plaintiffs showing to me is

15   minimal at best.  The fact that the CEO of Apple indicated he's

16   very interested in health care technology, it has very little

17   weight in terms of making that person's email subject to

18   search.

19             The issues regarding Dr. O'Riley, the fact that

20   regardless of how you characterize it, I don't see evidence.

21   We have Dr. O'Riley's first person attestation that his

22   interaction with Mr. Kirk at his interviews was essentially a

23   windup; they did not discuss substance of any Masimo

24   technology.  And the fact that the CEO met with someone at the

25   end of a day's worth of interviews, even taking into account

Exhibit 1
-10-

1   all the information, is not to me sufficient to overcome that

2   limited burden that's facially apparent from the request.

3          **MR. RE:**  Okay.  You say "facially apparent."  I do

4   want to address the basis for the tentative.

5          The representation made that you're relying upon is

6   made without any representation as to how they could possibly

7   know this.  What's the basis for the representation?  I don't

8   even see them even suggesting that they've done any ESI

9   searching to even have a basis for the representation.

10         **THE COURT:**  And again, it gets back to they're -- I

11   think I quoted Bob Dylan at one of our earlier hearings.  I

12   don't need a weatherman to know which way the wind blows.

13         I can -- you don't have to have 15 declarations to

14   say doing an ESI search for the President and CEO of Apple,

15   Inc. from 2013 to the present -- where, again, talking

16   generally about whatever the time period is going to be -- the

17   number of devices, the number of avenues of communication that

18   need to be searched and the heightened -- the heightened need

19   for review when you're looking at a CEO's search is different

20   from the type of review, an attorney review that you're doing

21   for an engineer's -- search of an engineer's email.  These are

22   all things that I don't need a declaration to tell me.  They're

23   independently knowable.

24         That said, I'm not saying it's a massive showing or a

25   massive, per se, burden demonstrated, but that's the whole

Exhibit 1
-11-

9

1   purpose of the apex doctrine in depositions is it goes without

2   saying that that's a burden.

3          Now I'm not saying the apex doctrine applies here but

4   the aspects of it are equally available.  And I'm going to ask

5   you, Mr. Re, if you can if you can keep your mask on.

6          Aspects of it, aspects of it, the theory of it is the

7   same but I'm being very clear and I'm repeating that

8   representation that I mentioned and that you mentioned.

9          Implicit in every discovery response is an

10  affirmation and attestation by the attorney that it's made in

11  good faith; that it's made not to conceal or not to

12  unnecessarily delay the case.  Ramp it up when it's made in a

13  brief to the court.

14          I don't believe that Apple's lawyers would make that

15  willy-nilly without some foundation and I'm accepting it.  But

16  I am letting everyone know if it turns out from some other

17  source that Mr. Cook actually does have discoverable

18  information relevant to any parties' claims or defenses in his

19  ESI streams, we will be having a hearing and it may involve a

20  hearing of Mr. Cook testifying in this court, in person, if

21  that turns out to be a representation that was made to me that

22  I'm relying on for purposes of making this order.  And it may

23  also require testimony from counsel who made this

24  representation but that's only if it turns out to potentially

25  not be true.

Exhibit 1
-12-

10

```
1                All right.  Please continue, Mr. Re.

2                MR. RE:  Well, it sounds like you made up your mind

3     and --

4                THE COURT:  I mean I have thought about it and -- but

5     I want to make sure you have a full and fair opportunity to be

6     heard.

7                MR. RE:  Well, my only point is that there's no basis

8     for the statement.  You're just relying on the good-faith

9     Officer of the Court; I assume it's true.  If that's the

10    analysis, I have nothing further to add.

11               THE COURT:  Well let me just say, combined with what

12    doesn't require evidence; and that is, there is a burden on the

13    CEO of one of the largest corporations in the world to have me

14    have that person designated as an ESI custodian beyond what it

15    would be for, say, an engineer or a lesser person who's not

16    dealing with lawyers on a regular basis, who's not probably got

17    a the same level of communications.

18               So I don't need an expert, I don't need a declaration

19    to understand that that's where the apex doctrine comes from.

20               MR. RE:  But the apex doctrine is based on the burden

21    and oppression to the witness.  We have no evidence or

22    suggestion by anybody that the witness is even involved --

23               THE COURT:  So I'm going to disagree with you.  The

24    apex doctrine is not just the burden on the witness; it's the

25    burden on the entity to have --
```

Exhibit 1
-13-

1          We talked about the *Mattel versus Bratx* case, right?

2     We were here -- I know you were here, Mr. Lerner, when you had

3     the CEO of Mattel International sitting up in Judge Carter's

4     courtroom in the back row for a week.  That was a burden on him

5     but it was also a burden on Mattel.  And what we're talking

6     about with respect to the apex doctrine is a burden on the

7     witness but also a burden on the company itself to have the CEO

8     pulled out for eight hours or four hours or whatnot.  So it's a

9     burden on both.

10          **MR. RE:**  I agree with what you just said but we have

11     no evidence that Mr. Cook will be pulled to do anything.

12     That's the difference between a personal appearance and a ESI.

13     You can check my ESI and I don't even know it's happening so

14     there's no participation --

15          **THE COURT:**  Well so again I'm going to stop you.

16          I expect more from counsel when checking ESI.  If

17     Mr. Cook or any custodian uses devices, uses a communications

18     stream other than company email, it's up to the lawyers to

19     investigate that and find out.  What's the simplest way?  Ask

20     the person.  And he may say well that takes three seconds to

21     ask.

22          Easier said than done when presumably the primary

23     time period you're talking about is 2013 and 2014, to ask the

24     CEO where and what communication streams he or she used during

25     that time period is not an easy task.

Exhibit 1
-14-

1          **MR. RE:**  I can't debate non-existent evidence.  You

2    tell me this.  I've been doing this for 35 years.  If you say

3    so, okay.  I can't convince you but I can't rebut non-existent

4    evidence.

5          **THE COURT:**  Well again, I'm doing a balancing, and

6    one of the things I'm balancing is what's the relevance.  And

7    what I'm telling you is what's been presented is not compelling

8    in terms of even if it's just a limited burden, what's been

9    presented is not compelling.  Most of it relates to, again, the

10   idea of Mr. Cook was interested in health care products.  All

11   right.  Mr. Cook spoke with Dr. Riley after his interviews.

12   Okay.

13         And the rest of it is primarily Mr. Cook's, as it's

14   characterized -- and I'm doing air quotes -- "right-hand man,"

15   (close/quote), also had interactions that you want to know

16   about.  But my understanding is that right-hand man is one of

17   the custodians.  And so to the extent Mr. Cook was

18   communicating with the right-hand man, presumably you're going

19   to get that.

20         So I don't find the showing by Plaintiffs

21   particularly compelling.

22         And from the defense standpoint, it's by operation of

23   law and commonsense that there is a burden and I don't find --

24   I find that you haven't overcome it.

25         But again, I'm going to reiterate what I said before

Exhibit 1
-15-

13

1  about none of this prevents Defendant from going forward with

2  the ESI search of Mr. Cook and agreeing to do so.  And if they

3  don't, they do it at their own risk.

4          All right.  Anything else, Mr. Re?

5          **MR. RE:**  Nothing further.

6          **THE COURT:**  All right.  Mr. Lerner, unless there's

7  something you want to add or clarify or find out about, the

8  tentative will be the order of the court and the motion will be

9  denied for the reasons stated on the record.

10          **MR. LERNER:**  No, Your Honor.  We agree with both the

11 reasoning as to relevance on the issues raised in the

12 plaintiffs' papers like health care and with respect to the

13 burden.

14          **THE COURT:**  All right.  And do you hear and

15 understand what I said about the representation made at page 9

16 of the Joint Stipulation?

17          **MR. LERNER:**  Yes, Your Honor.

18          **THE COURT:**  All right.  Could you make sure.  And I

19 know we have a representative from Apple's in-house counsel.

20 Could you make sure that that is passed on.  And nothing

21 prevents you and Apple from going forward with Mr. Cook, doing

22 a search of Mr. Cook's ESI.  This order merely denies the

23 motion.  And I'm letting plaintiffs know if they get further

24 information that bears on -- that causes me to question this

25 linchpin of what I'm relying on, this is without prejudice to

Exhibit 1
-16-

14

1    re-raising this motion and I would expect that there would be a

2    hearing.  But it depends on what the showing is; I'm not going

3    to prejudge anything but I expect that there would be a hearing

4    where live testimony would be taken if that's the case and a

5    sufficient showing is made and there will be likely -- well

6    I'll leave it at that.

7              All right?

8              **MR. LERNER:**  Thank you.

9              **MR. RE:**  Thank you.

10             **THE COURT:**  Thank you.  We're adjourned.

11             **MS. KAOUNIS:**  Thank you, Your Honor.

12         **(Proceeding adjourned at 10:19 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 1
-17-

15

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>June 12, 2021</u>

          Signed                                                        Dated


*TONI HUDSON, TRANSCRIBER*

Exhibit 1
-18-

# EXHIBIT 2

1  Joseph R. Re (Bar No. 134479)
     joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
     stephen.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
     perry.oldham@knobbe.com
4  Irfan A. Lateef (Bar No. 204004)
     irfan.lateef@knobbe.com
5  Brian C. Claassen (Bar No. 253627)
     brian.claassen@knobbe.com
6  James E. Youngblood (Bar No. 325993)
     jamie.youngblood@knobbe.com
7  KNOBBE, MARTENS, OLSON &
   BEAR, LLP
8  2040 Main Street, Fourteenth Floor
   Irvine, CA 92614
9  Telephone: (949)-760-0404
   Facsimile: (949)-760-9502
10
   Adam B. Powell (Bar. No. 272725)
11   adam.powell@knobbe.com
   KNOBBE, MARTENS, OLSON &
12 BEAR, LLP
   3579 Valley Centre Drive
13 San Diego, CA 92130
   Telephone: (858) 707-4000;
14 Facsimile: (858) 707-4001

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

15  *Attorneys for Plaintiffs Masimo Corp. and*      *Attorneys for Non-Party Apple Inc.*
    *Cercacor Laboratories, Inc.*                     *[Additional counsel listed on next page]*
16  *[Additional counsel listed on next page]*

17              **UNITED STATES DISTRICT COURT**

18             **CENTRAL DISTRICT OF CALIFORNIA**

19                    **SOUTHERN DIVISION**

20  MASIMO CORPORATION, a            CASE NO. 8:18-cv-02001-JVS (JDEx)
    Delaware corporation; and
21  CERCACOR LABORATORIES, INC.,     **JOINT STIPULATION REGARDING**
    a Delaware corporation,          **NON-PARTY APPLE INC.'S**
22                                   **MOTION TO QUASH SUBPOENA**
                                     **AND FOR A PROTECTIVE ORDER**
23                 Plaintiffs,
24         v.                        **Hearing:**
                                     Date:    June 24, 2021
25  TRUE WEARABLES, INC., a          Time:    10:00 a.m.
    Delaware corporation; and        Place:   Courtroom 6A
26  MARCELO LAMEGO, an individual,   Judge:   Hon. John D. Early

27                 Defendants.       [Discovery Document Referred to
                                     Hon. Magistrate John D. Early]
28
    UNREDACTED VERSION OF DOCUMENT FILED PURSUANT TO ORDER OF THE
            COURT DATED JUNE 24, 2021 (DKT. NO. 311)

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-19-

1    Mark D. Kachner (Bar No. 234192)     ILISSA SAMPLIN, SBN 314018
         mark.kachner@knobbe.com        isamplin@gibsondunn.com
2    KNOBBE MARTENS OLSON &     GIBSON, DUNN & CRUTCHER LLP
    BEAR LLP                     333 South Grand Avenue
3    1925 Century Park East, Suite 600    Los Angeles, CA 90071-3197
    Los Angeles, CA 90067           Tel.: 213.229.7000 / Fax: 213.229.7520
4    Telephone: (310) 551-3450      *Attorney for Non-Party Apple Inc.*
    Facsimile: (310) 601-1263
5

6    *Attorney for Plaintiffs Masimo Corp. and*
    *Cercacor Laboratories, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-20-

# TABLE OF CONTENTS

Page

I.     INTRODUCTORY STATEMENTS ................................................................. 1

    A.     Apple's Introductory Statement ................................................. 1

    B.     Masimo's Introductory Statement ............................................. 3

II.    DISCOVERY AT ISSUE ............................................................................... 6

    A.     Deposition Topics ........................................................................ 6

    B.     Requests for Production ............................................................... 6

III.   APPLE'S POSITION .................................................................................... 8

    A.     Factual Background ...................................................................... 8

        1.   Plaintiffs Filed The True Wearables Case Against Mr.
            Lamego And True Wearables ............................................ 8

        2.   Plaintiffs First Served Apple With A Subpoena In The
            True Wearables Case One Day Before Filing The Apple
            Case ..................................................................................... 8

        3.   A Dispute Concerning The Same Discovery Plaintiffs
            Seek Via Their Subpoena In This Case Is Before This
            Court In The Apple Case .................................................. 10

        4.   Apple's Counsel Met And Conferred With Plaintiffs'
            Counsel About The Pending Apple Subpoena ............................ 11

    B.     Legal Standard ............................................................................ 12

    C.     Argument ..................................................................................... 14

        1.   The Information Sought By The Subpoena Is Neither
            Relevant Nor Proportionate To This Case ..................................... 14

            a.   Plaintiffs Seek Discovery For The Apple Case ................. 15

            b.   The Documents And Testimony Requested From
               Apple Are Not Relevant To This Case ............................... 16

            c.   The Discovery Sought Is Unduly Burdensome And
               Not Proportionate To The Needs Of This Case ................. 18

i

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-21-

# TABLE OF CONTENTS
## (*Cont'd*)

Page

2. Plaintiffs Have Not Demonstrated A Substantial Need For Seeking Confidential Discovery From Apple In This Case ........ 19

3. Plaintiffs' Subpoena Improperly Seeks To Duplicate Discovery Work In The Apple Case .............................................. 21

4. Plaintiffs' Subpoena Is An End Run Around The Discovery Limits Imposed By The Court In The Apple Case ............................................................................................... 25

D. Conclusion ............................................................................................... 26

IV. MASIMO'S POSITION ............................................................................................... 26

A. Factual Background ............................................................................................... 26

1. Lamego Pursued An Executive Position At Apple While Still Serving as Cercacor's Chief Technology Officer ................ 26

2. Lamego Put His Apple Job Duties at Issue in This Case ............. 27

3. Lamego Put His Termination From Apple at Issue In This Case ........................................................................................... 28

4. Apple's Actions Show That Facts About Apple Are Relevant to This Case ............................................................................ 29

B. Legal Standard ............................................................................................... 30

C. Argument ............................................................................................... 30

1. Masimo Seeks Limited Discovery that is Relevant and Proportionate to This Case ................................................................. 30

a. Apple's recruitment of Lamego while still at Cercacor is highly relevant to this case ................................ 31

b. Limited discovery about Lamego's job duties at Apple is highly relevant in this case ................................... 32

c. Apple terminating Mr. Lamego is highly relevant in this case ............................................................................... 33

ii

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-22-

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**
(*Cont'd*)

Page

2. Masimo Has a Substantial Need For the Requested Discovery .......................................................................................35

3. Masimo's Subpoena Does Not Impose an Undue Burden on Apple ...............................................................................35

4. Apple's Remaining Arguments Do Not Justify Quashing The Subpoena ...................................................................36

    a. Masimo timely served its subpoena .................................36

    b. Masimo is not seeking to avoid discovery limits in the Apple case ...................................................................37

    c. Masimo's first subpoena is irrelevant .............................37

    d. Masimo properly focused the subpoena ..........................38

    e. Any overlap in discovery between this case and the Apple Case is not a basis to quash .................................39

D. Conclusion ...............................................................................40

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-23-

Pursuant to Federal Rules of Civil Procedure 37 and 45, and Local Rules 37-2 and 45-1, Non-Party Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as respondents, respectfully submit the following Joint Stipulation regarding Apple's Motion to Quash Subpoena and for a Protective Order. The parties met and conferred on May 19, 2021, but were unable to resolve the disputes presented in this Joint Stipulation. *See* Declaration of Ilissa Samplin ("Samplin Decl.") ¶ 5.

# I. INTRODUCTORY STATEMENTS

## A. Apple's Introductory Statement

This is the second time Plaintiffs Masimo and Cercacor have served an improper subpoena on Apple to obtain evidence that has nothing to do with this case. After Apple went through the burden and expense of challenging their last such subpoena, Plaintiffs withdrew it. Apple asks the Court to quash Plaintiffs' second subpoena (the "Subpoena"), which is even more improper than the first. This time Plaintiffs seek evidence concerning Mr. Lamego's employment history with Apple that is not only irrelevant to this case but also is the subject of a fully briefed motion to compel in Plaintiffs' separate case against Apple. Apparently aware of the weakness of their pending motion in their case against Apple, Plaintiffs are using the subpoena process in this case to improperly take a second shot at the same evidence. The Court should grant Apple's motion and quash the Subpoena for four reasons:

*First*, Plaintiffs' Subpoena for information related to Marcelo Lamego's connections to Apple violates Federal Rule of Procedure 26 because none of the discovery sought is relevant to, or proportionate to the needs of, *this* case (the "True Wearables Case"). In this case, Plaintiffs' claims are based on Mr. Lamego's conduct while employed by Cercacor and in connection with the company he founded, True Wearables. The claims are not based on Mr. Lamego's conduct at Apple, for Apple, or on behalf of Apple—Apple is not even mentioned in any of Plaintiffs' eleven causes of action in this case. *See generally* Samplin Decl. Ex. A, at 43–95 (Subpoena Addendum

1

Exhibit 2
-24-

2, True Wearables Case, Dkt. No. 42, First Am. Compl.) ("True Wearables FAC"). Accordingly, Plaintiffs' Subpoena is not designed to elicit discovery relevant to Plaintiffs' claims in, and proportional to the needs of, this case. Rather, the Subpoena on its face pertains to Plaintiffs' claims against Apple in Plaintiffs' separate case against Apple, *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048-JVS (JDEx) (C.D. Cal.) (the "Apple Case").

*Second*, the information Plaintiffs seek is not only irrelevant to this case, it is Apple's confidential information—including, to give a few examples, documents relating to Apple's patent applications and communications, including with Apple attorneys, relating to hiring and termination decisions. Plaintiffs have made no showing of a "substantial need" for this confidential information in the True Wearables Case that cannot be otherwise met without undue hardship. Indeed, the information Plaintiffs seek here is the same discovery they seek in the Apple Case (where Plaintiffs also lack a basis for the discovery, as explained in Section III.A.3 below). Plaintiffs' lack of substantial need for Apple's confidential information responsive to the Subpoena provides the Court with further good cause to quash the Subpoena and enter a protective order.

*Third*, it is inappropriate and inefficient for Plaintiffs to propound discovery in this case that has nothing to do with this case and requires both Apple and the Court to duplicate work that already is being done in the Apple Case. The deposition topics and document requests in Plaintiffs' Subpoena are identical in subject matter to several of Plaintiffs' requests at issue in a pending motion to compel in the Apple Case. Plaintiffs' attempt to use this case to duplicate discovery is highly improper; it is nothing more than an attempted end run around the relevance and proportionality requirements of Federal Rule of Civil Procedure 26.

*Fourth*, Plaintiffs' Subpoena also is an end run around the Scheduling Order in the Apple Case (Samplin Decl. Ex. M (Dkt. No. 37)) because Plaintiffs are attempting to take the equivalent of an additional Rule 30(b)(6) deposition of Apple's corporate witness that will not count against the 100-hour deposition limit set by the Court in the

2

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-25-

Apple case. Plaintiffs' attempt to obtain additional deposition time is even more troubling given their steadfast refusal to serve on Apple in the Apple Case their Rule 30(b)(6) notice or deposition topics, despite Apple's repeated requests for such a notice since the middle of May.

Plaintiffs should not be permitted to use the existence of the True Wearables Case to circumvent discovery rules and the Court's Scheduling Order in the Apple Case. Apple respectfully requests that this Court quash the Subpoena in full and enter a protective order prohibiting the deposition and document production sought.

## B. Masimo's Introductory Statement

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") served the subpoena at issue to discover discrete facts from Apple that are at issue in this case. Masimo seeks a very narrow set of documents related to (1) Apple's recruitment of Lamego while he worked at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. These limited topics are highly relevant in this case. Also, Lamego put all three topics directly at issue in this case.

As part of the meet-and-confer process, Masimo focused the document requests to make clear these were the only topics on which Masimo sought discovery. Apple still refused discovery. Apple mischaracterizes the subpoena as broadly seeking information concerning "Mr. Lamego's employment history with Apple." To the contrary, the subpoena is limited to three discrete topics, which are highly relevant in this case.

Apple's recruitment of Lamego is highly relevant. In October 2013, while serving as the Chief Technical Office of Cercacor, Lamego emailed Apple's CEO, Tim Cook, to seek an executive position at Apple. At that same time, Lamego was telling Cercacor's Board of Directors that he had made a significant breakthrough, and Cercacor engineers were very excited about the company's future. Lamego's alleged breakthrough included the feasibility of measuring blood glucose non-invasively. Yet, Lamego was secretly seeking employment from Apple. Lamego told Mr. Cook that, with his 10 years of exposure to Masimo and Cercacor's technology, he "could add a

1  significant value to the Apple team" to help solve "the patient problem." Lamego

2  offered that, as a senior executive at Apple, he could solve that very difficult problem

3  for Apple. Lamego then interviewed with Apple. Lamego's email and interview

4  occurred months *before* he left Cercacor, while still under a fiduciary duty to Cercacor.

5  Apple's recruitment of Lamego while he was still at Cercacor is highly relevant to the

6  claims in this case. For example, Masimo is entitled to discover the specifics of what

7  Lamego offered Apple in exchange for an executive position. This information is

8  directly relevant to at least the breach-of-fiduciary-duty claims in this case.

9       Lamego's title and duties at Apple are also highly relevant. In response to

10  Masimo's accusations *in this case*, Lamego initially denied that his work at Apple had

11  any connection to Masimo or Cercacor. But Lamego now admits he worked on

12  noninvasive physiological measurements for the Apple Watch. Masimo must be

13  allowed some modest discovery on Lamego's activities at Apple to test the veracity of

14  Lamego's seemingly contradictory statements. Further, Lamego specifically requested

15  an executive level position at Apple. Masimo's modest request for information about

16  Lamego's title and duties is not burdensome and highly relevant to paint a complete

17  picture of Lamego's motivation for leaving Cercacor, his intent to commit the

18  misconduct at issue here, and his intent to harm Masimo. This information is relevant

19  to at least the breach-of-fiduciary-duty claims, the breach-of-contract claims, and

20  Lamego's willful and malicious misappropriation of trade secrets.

21       Apple's basis for terminating Lamego is also highly relevant. Lamego and True

22  Wearables have put Apple's firing of Lamego directly at issue. Lamego contends that

23  Masimo "repeatedly tried to disrupt Dr. Lamego's career and business efforts." Lamego

24  and his family blame Masimo for causing Apple to terminate Lamego's employment.

25  Yet, Lamego refuses to provide any information about his termination by claiming he

26  owes a duty of confidentiality to Apple. Because Defendants have put Lamego's

27  termination at issue *in this case*, Masimo is entitled to discover the basis for the

28  termination. This discovery is also relevant to Lamego's motive to harm Masimo.

4

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-27-

Apple cannot genuinely contend that all facts about Lamego's employment with Apple are irrelevant to this case. Apple filed a notice of related cases identifying **this case** as related to the Apple Case. Moreover, Apple and the Defendants in this case recently entered into a common-interest agreement. To support that agreement, Defendants contend they have a common interest with Apple based on overlapping facts between this case and the Apple Case. But they steadfastly refuse to identify those alleged overlapping facts. They also refuse to provide any discovery about Apple. Apple's agreement with Defendants and their reliance on overlapping facts to support a common-interest agreement, and the notice of related case, show some facts from Apple are relevant in this case.

Rather than address the relevant facts, Apple accuses Masimo of engaging in "gamesmanship with respect to basic discovery rules." Apple speculates about the timing of Masimo's original subpoena to Apple, but that was dictated by the then-rapidly approaching deadline for the close of fact discovery in this case. Once the Court extended the fact discovery deadline, Masimo promptly withdrew the subpoena to continue obtaining as much discovery as possible from Defendants. Masimo cannot be faulted for trying to avoid unnecessarily burdening the Court. Indeed, Masimo committed to narrow its subpoena before Apple unexpectedly cut off the parties' communications and suddenly filed a motion to quash. Apple's accusations contradict the simple facts surrounding the original subpoena.

Apple speculates that Masimo is seeking discovery in this case to use in the Apple case. But the protective orders in both cases preclude a party from using protected material in connection with any other case, absent agreement or further court order. The email between Tim Cook and Marcelo Lamego, that Defendants produced under the protective order in this case, is a perfect example. While that email is directly relevant to the Apple case, Masimo cannot present it in the Apple case until it is produced in that case. In this case, Apple is not a party and thus Masimo must subpoena Apple for information that is relevant to this case even if the information is also relevant and will

5

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-28-

be produced in the Apple case.  Thus, Apple cannot support its argument that Masimo is seeking discovery for the Apple case.

Masimo seeks a very narrow and targeted set of information from Apple that is directly relevant to the issues in this case.  The discovery would not be burdensome for Apple to produce.  Apple fails to meet its burden to preclude this discovery.

## II. DISCOVERY AT ISSUE

Consistent with Local Rule 37-2, this section contains the full text of the deposition topics and documents requests contained in Plaintiffs' Subpoena.  A copy of the Subpoena is also attached as Exhibit A to the Samplin Declaration.

**A.    Deposition Topics**

**TOPIC NO. 1:**

Apple's reasons for hiring Marcelo Lamego.

**TOPIC NO. 2:**

Reasons for termination of Marcelo Lamego's employment relationship with Apple.

**TOPIC NO. 3:**

Apple's communications with Marcelo Lamego concerning Apple recruiting Marcelo Lamego.

**TOPIC NO. 4:**

Apple's communications with Marcelo Lamego concerning termination of Marcelo Lamego's employment relationship with Apple.

**B.    Requests for Production**

**REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REQUEST FOR PRODUCTION NO. 2:**

All documents related to Apple hiring Marcelo Lamego.

**REQUEST FOR PRODUCTION NO. 3:**

All documents related to the termination of Marcelo Lamego's employment

6

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-29-

1    relationship with Apple.

2    **REQUEST FOR PRODUCTION NO. 4:**

3         All communications with Marcelo Lamego regarding his employment at

4         Apple, including his recruitment and termination.

5    **REQUEST FOR PRODUCTION NO. 5:**

6         All documents reflecting Marcelo Lamego's job duties and title, who he

7         reported to, group he was assigned to, compensation, severance, and

8         communications regarding patent applications.

9    After Apple served its portion of the Joint Stipulation on Masimo, Masimo

10   proposed to revise the Subpoena's Document Requests Nos. 2-5, as reflected in the

11   parties' correspondence in Exhibits 1 and 2 to the Kachner Declaration, as follows:

12   **ORIGINAL REQUEST FOR PRODUCTION NO. 1:**

13        The personnel file for Marcelo Lamego.

14   **REVISED REQUEST FOR PRODUCTION NO. 2:**

15        Documents and Communications about Apple's consideration and hiring

16        of Marcelo Lamego, prior to January 21, 2014.

17   **REVISED REQUEST FOR PRODUCTION NO. 3:**

18        Apple's communications with Marcelo Lamego regarding the end of his

19        employment.

20   **REVISED REQUEST FOR PRODUCTION NO. 4:**

21        Apple's communications with Marcelo Lamego regarding his hiring by

22        Apple.

23   **REVISED REQUEST FOR PRODUCTION NO. 5:**

24        Documents sufficient to show Marcelo Lamego's job duties and title at

25        Apple.

26   / / /

27   / / /

28   / / /

Gibson, Dunn &
Crutcher LLP

7

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-30-

# III. APPLE'S POSITION

## A.   Factual Background

### 1.   Plaintiffs Filed The True Wearables Case Against Mr. Lamego And True Wearables.

Plaintiffs filed suit against Mr. Lamego and his company, True Wearables, on November 8, 2018, alleging breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement.

In their Complaint in the True Wearables Case, Plaintiffs allege that, following his roles at Masimo and Cercacor, Mr. Lamego worked at Apple for seven months before he founded True Wearables.  Samplin Decl. Ex. A, at 57–58 (Subpoena Addendum 2, Dkt. No. 42, First Am. Compl. ¶¶ 35, 37, 38) ("True Wearables FAC").  Plaintiffs do not allege any claims against Mr. Lamego or True Wearables based on Mr. Lamego's seven months at Apple.  The claims in the True Wearables Case do not concern Mr. Lamego's conduct for, on behalf of, or during his seven-month tenure at, Apple. Nor do they concern the circumstances of Mr. Lamego's departure from Apple.  While Plaintiffs allege in the True Wearables Case that Apple recruited Mr. Lamego, *see id.* at 57 (¶ 35), there are no claims asserted in this case based on that alleged conduct by Apple.  Indeed, Apple is not a party to the case.

The same Plaintiffs separately sued Apple in this Court on January 1, 2020.  The parties are actively litigating the Apple Case and are in the middle of negotiating and litigating numerous discovery-related issues, including a dispute pertaining to the same discovery Plaintiffs seek in their Subpoena in this case.

### 2.   Plaintiffs First Served Apple With A Subpoena In The True Wearables Case One Day Before Filing The Apple Case.

Again, this is not the first time Plaintiffs have tried to use this case to seek discovery that they know they are unlikely to obtain in the Apple case.  On January 8, 2020, Plaintiffs served a subpoena on Apple in connection with this case, noticing a deposition and requesting the production of documents.  Samplin Decl. Ex. C, at 318.

8

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-31-

Gibson, Dunn &
Crutcher LLP

The subpoena noticed seven topics for deposition concerning Mr. Lamego's alleged "disclosures to Apple" about physiological parameter monitoring, Mr. Lamego's "contributions to Apple's marketing strategies" for the same, and Apple's communications with Mr. Lamego regarding his employment with Apple and his termination thereof. *Id.* at 323 (January 8, 2020 Subpoena Ex. A, at 2). The eleven requests for production in that prior subpoena covered similar topics, including documents concerning Mr. Lamego's "disclosures to Apple" and "involvement in" and "contributions to" work for Apple. *Id.* at 329–331 (January 8, 2020 Subpoena Ex. B, at 7–9). Indeed, Plaintiffs' RFP No. 4 in this latest Subpoena is identical to RFP No. 10 in their prior improper subpoena—both request "All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination." *Compare id.* at 330 (January 8 Subpoena Ex. B, at 8), *with id.* Ex. A, at 19 (May 11, 2021 Subpoena Ex. B. at 6).

On January 9, 2020, one day after serving their prior subpoena on Apple in connection with this case, Plaintiffs filed the Apple Case—alleging claims against Apple for patent infringement and trade secret misappropriation relating to physiological parameter monitoring in the Apple Watch. Plaintiffs allege, among other things, that Apple recruited Mr. Lamego, who had been "taught about the keys to effective non-invasive monitoring" by Plaintiffs, which he then disclosed to Apple. *Id.* Ex. N, at 568–70 (Apple Case, Dkt. No. 296-1, Fourth Am. Compl. ¶¶ 22, 24–35). On February 28, 2020, Apple filed a notice of related cases pursuant to Local Rule 83-1.3.1, identifying this case as related to the Apple Case. Apple Case, Dkt. No. 14. On March 4, 2020, the Central District transferred the Apple Case to Judge James V. Selna, who is presiding over this action.

On March 10, 2020, Apple filed a Motion to Quash and for a Protective Order in the Northern District of California, directed at Plaintiffs' first subpoena to Apple in the True Wearables Case. Samplin Decl. Ex. D (March 10, 2020 N.D. Cal. Motion to Quash). Faced with that motion, which underscored Plaintiffs' gamesmanship with

9

1  respect to basic discovery rules, Plaintiffs voluntarily withdrew their subpoena on March

2  18, 2020, and Apple voluntarily dismissed the miscellaneous action it was forced to file

3  in the Northern District in connection with its motion to quash.  *Id.* Ex. E (March 20,

4  2020 N.D. Cal. Notice of Voluntary Dismissal).

5       **3.     A Dispute Concerning The Same Discovery Plaintiffs Seek Via Their**

6            **Subpoena In This Case Is Before This Court In The Apple Case.**

7       Plaintiffs filed a Motion to Compel in the Apple Case on April 28, 2021, laying

8  out the parties' respective positions on, *inter alia*, discovery requests that seek the same

9  information requested in the Subpoena in this case.  *Compare id.* Ex. A, at 19 (Subpoena

10 Request No. 1) (seeking "[t]he personnel file for Marcelo Lamego"), *with id.* Ex. G, at

11 390 (Apple Case Request for Production No. 240) (requesting "[a] full and complete

12 copy of Apple's human resources file for each of the Former Employees," which

13 includes Mr. Lamego); *compare id.* Ex. A, at 19 (Subpoena Request Nos. 2–3)

14 (requesting "all documents related to Apple hiring Marcelo Lamego" and "all documents

15 related to the termination of Marcelo Lamego's employment relationship with Apple"),

16 *with id.* Ex. G, at 391 (Apple Case Request for Production No. 248) (seeking

17 "[d]ocuments sufficient to show the date and reason for Marcelo Lamego's employment

18 at Apple ending"); *see also id.* Ex. G, at 390 (Apple Case Request for Production No.

19 239, 241) (requesting documents "relat[ing] to any efforts by Apple or any Former

20 Employee to . . . recruit . . . any employee or consultant of Masimo or Cercacor" and

21 "concerning Apple's hiring or termination of any of the Former Employees").  As Apple

22 explained in its portion of that Motion to Compel briefing, Plaintiffs seek information

23 that is not even relevant to the Apple Case—in which Mr. Lamego's work for Apple

24 actually is at issue (unlike in this case, where it is not).

25      For example, Plaintiffs failed to demonstrate that their request for documents

26 showing the reason for Mr. Lamego's employment at Apple ending was relevant to the

27 Apple Case.  In support of their motion to compel such documents, Plaintiffs merely put

28 forth a speculative theory that Mr. Lamego's employment at Apple ended because he

10

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-33-

stole Plaintiffs' alleged trade secrets (which is not true). Plaintiffs did not provide *any* basis to suggest that their alleged secrets had anything to do with Mr. Lamego's termination.

Plaintiffs also failed to demonstrate that their request for the full personnel file of Mr. Lamego (or any other former employee of Masimo or Cercacor) was relevant to the Apple Case. Plaintiffs' asserted justification for full personnel files in the Apple Case amounted to nothing more than speculation. For example, Plaintiffs argued that "individuals *may have* gotten a promotion shortly after providing Plaintiffs' trade secrets to Apple or Apple *may have* reprimanded an employee for sharing Plaintiffs' trade secrets." *Id.* Ex. H, at 493 (Dkt. 359-1 at 96) (emphasis added). Plaintiffs further argue that the documents "*could show* Apple's knowledge that it was using Plaintiffs' technology." *Id.* at 491 (Dkt. 359-1 at 95) (emphasis added). And with respect to Mr. Lamego's personnel file in particular, Plaintiffs put forth no compelling need for the entirety of his personnel file. Indeed, when Apple served an RFP on Plaintiffs in the Apple Case for Plaintiffs' full personnel file for Mr. Lamego, *Plaintiffs* objected on the basis of relevance and overbreadth—and Apple greatly narrowed its request in response. *Id.* at 497 (Dkt. 359-1 at 100).

The Court continued the hearing on Plaintiffs' Motion to Compel in the Apple Case from May 20, 2021, to June 3, 2021, to give the parties another opportunity to meet and confer in an effort to resolve or narrow their disputes. *Id.* ¶ 15. Unwilling to wait or to abide by the rules governing discovery in the Apple Case, Plaintiffs resorted to burdening Apple and the Court by seeking much of the same information that is the subject of that Motion to Compel through non-party discovery in this case.

### 4. Apple's Counsel Met And Conferred With Plaintiffs' Counsel About The Pending Apple Subpoena.

Plaintiffs served the Subpoena late in the day on May 11, 2021, demanding production of documents less than 10 days later, on May 20, 2021—the same day the Court in the Apple Case was at the time scheduled to hear Plaintiffs' Motion to Compel

11

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-34-

the same documents in the Apple case.  Plaintiffs also noticed a deposition of Apple for May 21, 2021.  Samplin Decl. ¶ 4 & Ex. A, at 7 (Subpoena at 1).

On May 18, 2021, Apple asked Plaintiffs to meet and confer to discuss the Subpoena, and Plaintiffs agreed to discuss via telephone the following day.  *Id.*  ¶ 5.  In advance of the call, Apple requested that Plaintiffs consent to a reasonable extension of time to respond to the Subpoena, noting that Plaintiffs provided less than 14 days' notice, which was unreasonable and insufficient to allow any dispute about the Subpoena to be briefed before this Court according to the joint stipulation process called for by the Local Rules.  *Id.*  Apple also requested that Plaintiffs provide a similar reasonable extension of time for Apple to serve its objections to this Subpoena.  *Id.*

The parties met and conferred on May 18, 2021.  *Id.*  Plaintiffs agreed to an extension that would permit the parties to brief this dispute in accordance with the procedures set by Local Rule 37 (as required by Local Rule 45).  *Id.*  With respect to Apple's objections to the Subpoena, Plaintiffs conditioned any extension on Apple waiving all objections except for those that form the basis for this Motion.  *Id.* & Ex. B, at 304.  Apple declined to accept Plaintiffs' conditions and served its objections to the Subpoena on May 20, 2021.  *Id.* Ex. B, at 304.

## B.    Legal Standard

The scope of civil discovery is not unlimited.  A party may obtain discovery only insofar as it relates to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The scope of permissible nonparty discovery under Rule 45 mirrors that of party discovery under Rule 26.  *See* Fed. R. Civ. P. 45 advisory committee note (1970 amendment) ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules.").  "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006) (citation omitted).

/ / /

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn & Crutcher LLP

Exhibit 2
-35-

"'While discovery is a valuable right and should not be unnecessarily restricted . . . the "necessary" restriction may be broader when a nonparty is the target of discovery.'" *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *mot. for relief from judgment denied*, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).  The party issuing a subpoena must take "reasonable steps to avoid imposing undue burden or expense" on the subject.  Fed. R. Civ. P. 45(d)(1).

If a subpoena "fails to allow a reasonable time to comply," seeks "disclosure of privileged or other protected matter," or "subjects a person to undue burden," the Court shall quash or modify the subpoena.  Fed. R. Civ. P. 45(d)(3)(A)(i), (iii)–(iv).  A court may also quash or modify a subpoena if it "requires . . . disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).  Once it is shown that a subpoena requests such confidential information, "the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship; and [to] ensure[ ] that the subpoenaed person will be reasonably compensated."  *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 2582097, at *2 (N.D. Cal. June 9, 2014) (quoting *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014), and Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii)).

"[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."  *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citation omitted).  However, "if the sought-after [information is] not relevant . . . then *any burden whatsoever* imposed . . . would be by definition 'undue.'"  *Williams v. Cty. of San Diego*, 2019 WL 5963969, at *3 (S.D. Cal. Nov. 13, 2019) (quoting *Compaq Comput. Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)) (emphasis in original).  "[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations

13

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-36-

and claims at issue in the proceedings." *Unsworth v. Musk*, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019) (citation omitted).

"A non-party moving to quash a subpoena may also seek a protective order under Federal Rule of Civil Procedure 26." *Williams*, 2019 WL 5963969, at *4; *see also* Fed. R. Civ. P. 26(c) (providing that "[a] party or any person from whom discovery is sought may move for a protective order"). "The court may, for good cause, issue an order to protect a party or a person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c). The court may also issue a protective order to prevent discovery that is irrelevant to any of the claims at issue. *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 2019 WL 7489108, at *5 n.9 (D. Nev. Dec. 20, 2019) ("[C]ourts may enter protective orders preventing irrelevant questioning at deposition."); *Nguyen v. LVNV Funding, LLC*, 2017 WL 951026, at *11 (S.D. Cal. Mar. 10, 2017) (declining to compel deposition testimony that was irrelevant and instead issuing a protective order); *United States v. Capriotti*, 2012 WL 2994244, at *2 (E.D. Cal. July 20, 2012) (finding "good cause" for a protective order when "the proposed subject matter of the depositions is irrelevant to [the] proceeding").

## C. Argument

The Subpoena is improper because (1) it is not relevant or proportionate to the claims in this action, but rather is designed for Plaintiffs' separate lawsuit against Apple; (2) it requires Apple to disclose confidential information without the requisite showing of substantial need; (3) it duplicates discovery efforts in the Apple Case, including those covered by a pending Motion to Compel in the Apple Case; and (4) it attempts an end run around the Scheduling Order in the Apple Case by demanding a Rule 30(b)(6)-equivalent deposition outside the 100-hour limit on depositions imposed by that Order. This Court should quash Plaintiffs' improper Subpoena and enter a protective order.

### 1. The Information Sought By The Subpoena Is Neither Relevant Nor Proportionate To This Case.

Discovery must be "relevant" to a "party's claim or defense." Fed. R. Civ. P.

14

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-37-

26(b)(1). Courts routinely reject requests for discovery that "bear no indication of any nexus to the disputes" in the case. *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016). In addition to relevance, Rule 26 imposes a proportionality requirement—which creates a "collective responsibility" for "[t]he parties and the court . . . to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing committee notes requiring that "parties . . . tailor their efforts to the needs of this case"). Thus, any discovery propounded by Plaintiffs in the True Wearables Case must be relevant and proportionate to the needs of *that* case. Plaintiffs cannot satisfy these relevance or proportionality requirements, which is fatal to their Subpoena.

### a. Plaintiffs Seek Discovery For The Apple Case.

The Subpoena Plaintiffs propounded on Apple in this case plainly was drafted based on Plaintiffs' claims in the Apple Case. Every one of the Subpoena's requests on its face is directed to Mr. Lamego's employment *at Apple*, which is one of two asserted bases for all allegations concerning Plaintiffs' trade secret misappropriation, correction of inventorship, and patent ownership claims in the Apple Case. *See generally* Samplin Ex. N, at 568–70 (Apple Case Fourth Am. Compl. ¶¶ 20–25, 228–263) (alleging improper disclosure of purported confidential information to Apple by Mr. Lamego and Mr. O'Reilly); *id.* at 582–83, 665–691 (¶¶ 47–50, 268–371) (alleging that the subject matter of certain patents that Mr. Lamego assigned to Apple was invented by Masimo and/or Cercacor). Specifically:

- Subpoena Deposition Topic Nos. 1–2 seek information about *Apple's* reasons for hiring or terminating Mr. Lamego, and Deposition Topic Nos. 3–4 seek information about *Apple's* communications with Mr. Lamego concerning the same, Samplin Decl. Ex. A, at 12 (Subpoena Ex. A, at 2);
- Subpoena Request for Production No. 1 seeks a copy of *Apple's* personnel file for Mr. Lamego, *id.* at 19 (Subpoena Ex. B, at 6) (emphasis added);

15

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-38-

- Subpoena Request for Production Nos. 2–4 seek documents and communications related to *Apple's* hiring and termination of Mr. Lamego, including all communications "*regarding his employment at Apple*," *id.* (Subpoena Ex. B, at 6) (emphasis added);

- Subpoena Request for Production No. 5 seeks documents concerning details of Mr. Lamego's position, duties, and compensation while *employed by Apple*, *id.* (Subpoena Ex. B, at 6) (emphasis added); and

- Subpoena Request for Production No. 5 seeks Apple's documents concerning Mr. Lamego's "patent applications," which go directly to Plaintiffs' correction of inventorship and patent ownership claims in the Apple Case, *id.*[1]

*None* of these Subpoena requests have anything to do with Plaintiffs' claims in this case.

### b. The Documents And Testimony Requested From Apple Are Not Relevant To This Case.

While Mr. Lamego's employment at Apple is one of two asserted bases for Plaintiffs' claims in the Apple Case, Mr. Lamego's employment at Apple is *not* an asserted basis for any of Plaintiffs' claims in the True Wearables Case.  *None* of Plaintiffs' claims in this case are based on Mr. Lamego's employment at Apple, or his conduct at, for, or on behalf of, Apple.  Rather, this case concerns solely Mr. Lamego's conduct while still employed by Cercacor, as well as his conduct at, and disclosures to, True Wearables—the company he founded *after* he left Apple.

For example, the first two of Plaintiffs' causes of action in this case are for breach of contract, in which Plaintiffs allege that Mr. Lamego breached his contracts with Masimo and Cercacor "by taking and using Masimo's [and Cercacor's] confidential information for his own benefit and for the benefit of True Wearables."  Samplin Decl. Ex. A, at 60–61 (Subpoena Addendum 2, True Wearables FAC ¶¶ 49, 63).  These causes of action do not implicate Apple in any way.  Plaintiffs also accuse Mr. Lamego of

---

[1] Moreover, the Subpoena's Request for Production No. 5 is identical to Request for Production No. 293 that Plaintiffs just served in the Apple Case on May 19, 2021. *Compare* Samplin Decl. Ex. A, at 19, *with id.* Ex. J, at 548.

Exhibit 2
-39-

1    "failing to pursue the patenting of certain subject matter" on *their behalf*, *id.* at 60, 62

2    (¶¶ 51, 66), which has nothing to do with any patent applications for which Mr. Lamego

3    was responsible while at Apple.

4         Plaintiffs' other causes of action in this case likewise have no relation to

5    Mr. Lamego's employment at Apple. Plaintiffs' third and fourth causes of action, which

6    concern trade secret misappropriation, allege that Mr. Lamego disclosed Plaintiffs'

7    supposed confidential information to True Wearables and used that information "in

8    deciding to form True Wearables" and "during [his] employment at True Wearables" to

9    "improperly develop [True Wearables'] Oxxiom product." *Id.* at 64–66, 68–69 (¶¶ 80–

10   83, 94–97). Plaintiffs' fifth cause of action is for breach of fiduciary duty based on

11   Mr. Lamego's alleged failure "to pursue patent subject matter he was instructed to

12   pursue" while at Cercacor and his alleged failure "to disclose sufficient information to

13   Cercacor regarding feasibility of [certain] technology." *Id.* at 70–71 (¶¶ 104–110).

14   Plaintiffs' remaining causes of action in this case concern True Wearables' alleged

15   infringement of Plaintiffs' patents. Nothing in these causes of action implicates Apple

16   or its employment of Mr. Lamego in any way—Apple is not mentioned once in *any* of

17   Plaintiffs' causes of action in this case.

18        Thus, Apple's hiring of Mr. Lamego, the details of his position and compensation,

19   his involvement in Apple programs or projects during his seven-month tenure at Apple,

20   including his work on Apple's patent applications and Apple's termination of his

21   employment—the focus of the Subpoena—are not bases for any of Plaintiffs' claims

22   against Mr. Lamego and True Wearables in this case. Plaintiffs admit as much by

23   alleging in their True Wearables FAC that Mr. Lamego engaged in pulse oximetry work

24   "on his own *after leaving Apple*" and basing their claims on that pulse oximetry work.

25   *See id.* at 57 (¶ 36) (emphasis added). The claims here are based on Mr. Lamego's

26   conduct while at Cercacor and his conduct at and on behalf of True Wearables. Plaintiffs

27   cannot satisfy the threshold relevance requirement for pursuit of their Subpoena on these

28   facts, which demonstrate that Plaintiffs' Subpoena is actually directed, if anywhere, at

Exhibit 2
-40-

their Apple Case. *See In re REMEC, Inc. Secs. Litig.*, 2008 WL 2282647, at *2 (S.D. Cal. May 30, 2008) ("Parties have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings.").

Because there is no connection between the Subpoena's deposition topics or discovery requests and Plaintiffs' claims in the True Wearables Case, the Subpoena should be quashed. *See Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) ("Enforcing a discovery request for *irrelevant* information is a per se abuse of discretion." (emphasis in original)); *see also Williams*, 2019 WL 5963969, at *8–10 (granting motion to quash deposition subpoena and for a protective order because discovery sought was not relevant); *see also* Fed. R. Civ. P. 26(b)(1) (a party is only entitled to discovery "regarding any nonprivileged matter that is *relevant* to any party's claim or defense") (emphasis added); Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

### c.   The Discovery Sought Is Unduly Burdensome And Not Proportionate To The Needs Of This Case.

Rule 26's proportionality requirement considers, among other things, "the needs of the case, . . . the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). The "needs" of this case do not support Plaintiffs' Subpoena to Apple because the case does not involve any claims of breach, misappropriation, or infringement, based on or relating to Apple. *See* Section III.C.1.b, *supra*. Nor do any of Rule 26's other proportionality considerations favor Plaintiffs.

Indeed, because the discovery the Subpoena seeks is not relevant to this case (*see* Section III.C.1.b, *supra*), it is "inherently unduly burdensome." *P&P Imports LLC v. Johnson Enters. LLC*, 2020 WL 4258817, at *1 (C.D. Cal. Apr. 16, 2020) (Early, J.) (citing *Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018)). The Federal Rules require the Court to "quash or modify" a

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-41-

subpoena in such circumstances where, as here, the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also In re Glumetza Antitrust Litig.*, 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020) ("[C]ourts are required to limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit; such is 'the essence of proportionality,' an all-too-often ignored discovery principle." (citing Fed. R. Civ. P. 26(b)(1) and *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013))).

The discovery Plaintiffs seek from Apple is not relevant or proportionate to the needs of this case, but rather is on its face designed to elicit discovery Plaintiffs seek for the Apple Case. This is confirmed by the fact that the subject matter of this discovery is identical to that of several of Plaintiffs' requests for production served in the Apple Case—which are the subject of a dispute that has already been briefed for the Court in the Apple Case, in a Motion to Compel scheduled to be heard on June 3, 2021. Samplin Decl. ¶¶ 12, 15 & Ex. A, at 7 (Subpoena at 1). Thus, while this Court is currently dealing with the parties' dispute concerning the same requests in the Apple Case, Plaintiffs are blatantly seeking to misuse the nonparty subpoena process in this case to short-circuit requirements attendant to discovery in the Apple Case.[2] The discovery sought by the Subpoena is not relevant or proportionate to the needs of this case—and thus, the Subpoena should be quashed.

### 2. Plaintiffs Have Not Demonstrated A Substantial Need For Seeking Confidential Discovery From Apple In This Case.

In circumstances where confidential information is at issue, Federal Rule of Procedure 45(d)(3) permits the Court to quash the Subpoena unless the requesting party demonstrates a "substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Verinata Health*, 2014 WL 2582097, at *2; *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 n.1 (Fed. Cir. 1993); *In*

---

[2] Further underscoring the impropriety of Plaintiffs' attempt to circumvent the discovery rules here is the fact that the *same* attorneys from the *same* law firm represent Plaintiffs in both the True Wearables Case and the Apple Case.

Exhibit 2
-42-

*re Subpoena of DJO*, 295 F.R.D. at 497.  This showing must be particularly strong "when confidential information from a non-party is sought." *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (requiring moving party to show "substantial need" before compelling "disclosure of trade secrets or other confidential research, development or commercial information").  Plaintiffs have not, and cannot, make any such "strong showing of need" here. *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("The subpoena calls for confidential technology . . . . While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff . . . . [The non-party] should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need.").

Plaintiffs' Subpoena improperly seeks production of Apple's privileged and confidential documents, such as Apple's confidential documents relating to its patent applications and its hiring practices, and privileged communications with Apple's attorneys relating to hiring and termination decisions.   Yet Plaintiffs have not demonstrated any need—much less a *substantial* need—for the documents because they cannot:  the discovery requests in Plaintiffs' Subpoena have already been propounded on Apple in the Apple Case, and a dispute concerning that discovery is presently before the Court in that case.  And in that case, where Mr. Lamego's work at Apple actually is at issue (in this case, it is not), the requests are still irrelevant and overbroad—because they seek entire personnel files and communications that have nothing to do with the conduct or claims alleged.  If the Court denies Plaintiffs' Motion to Compel that discovery in the Apple Case, then Plaintiffs *ipso facto* have no need for such discovery in either case, much less a substantial need.  For this additional and independent reason, Plaintiffs' Subpoena should be quashed and a protective order entered.

/ / /

/ / /

/ / /

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-43-

### 3.    Plaintiffs' Subpoena Improperly Seeks To Duplicate Discovery Work In The Apple Case.

The Subpoena Plaintiffs propounded on Apple in the True Wearables Case unnecessarily duplicates work that is already being done in the Apple Case, including Plaintiffs' pending Motion to Compel in the Apple Case.  *See* Apple Case Dkt. Nos. 357–359; Samplin Decl. Ex. H.   The deposition topics and document requests in Plaintiffs' Subpoena are identical in subject matter to several of Plaintiffs' requests at issue in that Motion to Compel (*see* Samplin Decl. Ex. F, at 370, *id.* Ex. H, at 487–91; *id.* Ex. I, at 533–34; *id.* J, at 548), as shown in the following table:

| Document Requests in Plaintiffs' Subpoena | Related Document Requests in the Apple Case |
|---|---|
| **SUBPOENA REQUEST NO. 1:**  The personnel file for Marcelo Lamego. | **RFP NO. 240:**  A full and complete copy of Apple's human resources file for each of the Former Employees.[3] |
| **SUBPOENA REQUEST NO. 2:**  All documents related to Apple hiring Marcelo Lamego. | **RFP NO. 239:**  All documents and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor.<br><br>**RFP NO. 241:**  All documents concerning Apple's hiring or termination of any of the Former Employees. |
| **SUBPOENA REQUEST NO. 3:**  All documents related to the termination of Marcelo Lamego's employment relationship with Apple. | **RFP NO. 241:**  All documents concerning Apple's hiring or termination of any of the Former Employees. |

---

[3] Plaintiffs defined the term "Former Employee" to "mean and refer to any current or former Apple employee who worked at Masimo or Cercacor before being employed by Apple."  Samplin Decl. Ex. G, at 378 (Plaintiffs' Fifth Set of Requests of Production to Apple).  Plaintiffs' definition of "Former Employee" covers Mr. Lamego, who is a former employee of Apple and worked for Plaintiffs prior to his employment at Apple.

21
JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-44-

|  | **RFP NO. 248:**  Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending. |
|---|---|
| **SUBPOENA REQUEST NO. 4:**  All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination. | **RFP NO. 236:**  All communications between Apple and any Former Employee while the Former Employee was working for Masimo or Cercacor. |
|  | **RFP NO. 237:**  All communications between Apple and any Former Employee before the Former Employee began working for Apple. |
|  | **RFP NO. 239:**  All documents[4] and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor. |
|  | **RFP NO. 241:**  All documents concerning Apple's hiring or termination of any of the Former Employees. |
|  | **RFP NO. 248:**  Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending. |
|  | **RFP NO. 258:**  All communications between (1) Marcelo Lamego or other individuals associated with True Wearables, Inc. including employees of Merchant & Gould, P.C., and (2) any |

---

[4] Plaintiffs' definition of "documents" is broad enough to include "communications." *See* Samplin Decl. Ex. G, at 378–79 (Plaintiffs' Fifth Set of Requests of Production to Apple) (defining "documents" to "include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, *including, but not limited to . . .video recordings, emails, voice mails, handwritten notes, [and] phone messages*" (emphasis added)).

Joint Stipulation Regarding Non-Party Apple Inc.'s Motion to Quash Subpoena and for a Protective Order
CASE NO. 8:18-cv-02001-JVS (JDEx)

Exhibit 2
-45-

| | Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, regarding this case or the allegations in [the Apple Case].[5] |
|---|---|
| **SUBPOENA REQUEST NO. 5:** All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications. | **RFP NO. 129:** All communications between [Apple] and any individual who previously worked for Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.[6]<br><br>**RFP NO. 239:** All documents and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor. |

---

[5] Plaintiffs' RFP No. 258 in the Apple Case was served on April 28, 2021, less than 30 days ago, and so is not part of Plaintiffs' pending Motion to Compel. Nonetheless, it also seeks documents that would be responsive to Plaintiffs' Subpoena Request No. 4. *Compare* Samplin Decl. Ex. I, at 533–34, *with id.* Ex. A, at 19.

[6] Plaintiffs have defined the term "Disputed Patents" to mean "the patents Plaintiffs assert should have their inventorship and/or ownership corrected" in the Apple Case. Samplin Decl. Ex. G, at 378 (Plaintiffs' Fifth Set of Requests of Production to Apple). Accordingly, communications "referring or relating to subject matter disclosed or claimed in the Disputed Patents" include communications concerning the patent applications from which the Disputed Patents issued. To the extent Plaintiffs are seeking communications concerning patent applications other than those from which issued the Disputed Patents in the Apple Case, such discovery is irrelevant to *both* the True Wearables Case *and* the Apple Case, because it is not related to any claim or defense in either case. Indeed, on May 20, 2021, Judge Early denied Plaintiffs' Motion to Compel with respect to RFP 129 and RFPs 242 and 243 (which sought *all* patent applications from Apple). Samplin Decl. ¶ 15 & Ex. G, at 390.

*(Cont'd on next page)*

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-46-

Gibson, Dunn & Crutcher LLP

| | RFP NO. 240:  A full and complete copy of Apple's human resources file for each of the Former Employees.[7]<br><br>RFP NO. 293:  All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications.[8] |
|---|---|

Plaintiffs' Subpoena deposition topics—which seek testimony concerning Mr. Lamego's termination by Apple—also will likely be duplicative of Plaintiffs' Rule 30(b)(6) topics in the Apple Case.[9]

Plaintiffs' Subpoena clearly has but one purpose—to seek the same irrelevant discovery from Apple in this case that is at issue in Plaintiffs' pending Motion to Compel in the Apple Case  The abridged timing of Plaintiffs' Subpoena and its substance—which tracks Plaintiffs' claims in the Apple Case and seeks documents that are the subject of a discovery dispute in that case—confirms its improper purpose.  Such a thinly-veiled end run around Federal Rule of Civil Procedure 26 and this Court's discovery procedures is improper.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1236054, at *2 (N.D. Cal. Mar. 18, 2019) (quashing a

[7] Documents "reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, [and] severance" would be located in his human resource file at Apple.

[8] Plaintiffs' RFP No. 293 in the Apple Case was served on May 19, 2021, just one day before Apple's production in response to this Subpoena was initially due, and is therefore not part of Plaintiffs' pending Motion to Compel.  *See* Samplin Decl. Ex. J.  RFP 293 in the Apple Case is *identical* to Plaintiffs' Subpoena Request No. 5.  *Compare id.* Ex. A, at 19, *with id.* Ex. J, at 548.

[9] Plaintiffs have refused to propound their Rule 30(b)(6) topics in the Apple Case, despite Apple having served its Rule 30(b)(6) notice and topics on May 10, 2021, and despite Apple's repeated requests that Plaintiffs do the same.  Samplin Decl. ¶ 17.  Nonetheless, given that the majority of Plaintiffs' allegations in the Apple Case center on Mr. Lamego's employment by Apple, it is very likely that Plaintiffs will seek to depose an Apple corporate witness about such topics.

Gibson, Dunn & Crutcher LLP

subpoena that "amounts to an improper end run around the court's prior orders" because defendant "is not entitled to discovery from third parties that the court has already ruled out-of-bounds"); *see also Thogus Prod. Co. v. Bleep, LLC*, 2021 WL 827003, at *5 (N.D. Ohio Mar. 4, 2021) (quashing subpoenas that "improperly attempt to circumvent this Court's . . . Order denying expedited discovery" because "in large measure, [the subpoenas] seek production of the same universe of documents and information"). Plaintiffs should not be permitted to bypass the Federal Rules through a third-party subpoena directed at discovery that has no relevance to this case and to which they will not even be entitled in the Apple Case.

Plaintiffs' attempt to use this case to obtain discovery that is irrelevant here and duplicative to that being challenged by Apple in the Apple Case is highly improper. The parties fully briefed Plaintiffs' Motion to Compel on these topics in the Apple case (in a motion totaling over 130 pages and approximately 960 pages of exhibits, *see* Samplin Decl. ¶ 12 & Ex. H). The Court has already expended significant time and resources reviewing the briefing and scheduled a hearing on June 3 to resolve the motion. Plaintiffs should not be permitted to waste the Court's time by bypassing the Court's discovery procedures with this Subpoena. This attempt to obtain the same discovery here that is being actively litigated in the Apple Case is an improper end run around Federal Rule of Civil Procedure 26, and should be denied.

### 4. Plaintiffs' Subpoena Is An End Run Around The Discovery Limits Imposed By The Court In The Apple Case.

The Subpoena is also improper because it attempts to circumvent the deposition time limits imposed by the Court in the Apple Case Scheduling Order. This Court limited each party to 100 hours of depositions in the Apple Case, which includes the parties' Rule 30(b)(6) depositions. Samplin Decl. Ex. M, at 560 (Apple Case, Dkt. No. 37 at 1). Yet Plaintiffs seek a deposition from Apple in this case that is equivalent to a Rule 30(b)(6) deposition—and concerns topics related solely to the Apple Case—but would not count against Plaintiffs' 100-hour limit in the Apple Case. Such an end run

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-48-

1  around the Court's Scheduling Order in the Apple Case is improper.

2  Plaintiffs' attempt to circumvent the Scheduling Order in the Apple Case is

3  particularly egregious given their refusal to even provide to Apple their Rule 30(b)(6)

4  notice and topics in the Apple Case, despite Apple's repeated requests for such

5  information. *See* Samplin Decl. ¶¶ 16–17 & Exs. K–L. By seeking to take a Rule

6  30(b)(6)-equivalent deposition in this case, Plaintiffs plainly hope to obtain additional

7  testimony from Apple beyond that which the Court has permitted in the Apple Case.

8  Plaintiffs should not be permitted to evade the Apple Case Scheduling Order in this

9  manner.

10  **D.    Conclusion**

11  For all of the foregoing reasons, Apple respectfully requests that the Court grant

12  its motion to quash the Subpoena in its entirety and enter a protective order prohibiting

13  the deposition testimony and document discovery Plaintiffs seek from Apple in this case.

14  **IV. MASIMO'S POSITION**

15  **A.    Factual Background**

16  **1.    Lamego Pursued An Executive Position At Apple While Still Serving**

17  **as Cercacor's Chief Technology Officer**

18  Apple began recruiting Lamego from Cercacor in early 2013. Kachner Decl. Ex.

19  3, at 250:14-251:20. Lamego later touted his exposure to developing noninvasive patient

20  monitors in an email to Apple's CEO, Mr. Cook. Kachner Decl. Ex. 4.[10] Lamego told

21  Mr. Cook that he had developed intellectual property for Masimo and Cercacor over a

22  ten-year period and he was "sure [he] could add a significant value to the Apple team."

23  *Id*. Lamego also told Mr. Cook that, while it is easy to develop medical products that

24  work well for most users, "[g]etting the same technology to work in almost the entire

25  population is extremely more complex." *Id*. Lamego referred to this complexity as the

---

[10] Defendants produced the Lamego email as confidential under the protective order. Defendants refuse to allow Masimo to disclose to Apple's counsel all information in this brief that Defendants designated as confidential, including the Lamego email. Kachner Decl. Ex. 5.

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-49-

"patient equation." *Id*.  Lamego went on to explain to Mr. Cook that he could "solve" this "patient equation" for Apple "without conflicting with the large IP I have developed for Masimo and Cercacor." *Id*.  Lamego asked Mr. Cook for an executive position in exchange for providing the solution. *Id*.  When Lamego wrote to Mr. Cook, he was still the Chief Technical Officer at Cercacor, with a fiduciary duty.

At that time, Lamego was preparing to reveal a supposed breakthrough to the Board of Directors at Cercacor. Kachner Decl. Ex. 7 at 164:19-25. He "enthusiastically" claimed that he had proven the feasibility of measuring glucose and several other parameters non-invasively. *Id.* at 166:20-23; Dkt. 42, ¶¶ 42, 67. This would have been a major technological and commercial accomplishment for Masimo and Lamego. Lamego understood that these breakthroughs were very significant to Cercacor and would have made him wealthy. Kachner Decl. 8 at MASM0205492.

Apple hired Lamego in January 2014. After Lamego left Cercacor, Cercacor was unable to replicate the feasibility Lamego claimed to have achieved. *See* Kachner Decl. Ex. 7 at 182:25-184:8.

### 2. Lamego Put His Apple Job Duties at Issue in This Case

Before departing Cercacor for Apple, Lamego told Masimo's CEO, Joe Kiani, that he would not work on technologies that compete with Masimo and Cercacor. Dkt. 152-4 ¶ 6; Kachner Decl. Ex. 7 at 69:16-70:19, 88:10-15. After Lamego left Apple but before Masimo filed this suit, Masimo confronted Lamego. In response, Lamego denied any wrongdoing and accused Masimo of attempting to "disrupt Dr. Lamego's career and business efforts" since January 2014, before he started at Apple. Kachner Decl. 8 at TRUE16532 ¶ 16. Lamego represented Apple hired him "to work in (sic.) a project that had ***no connection*** with any products developed by Masimo or Cercacor." *Id*. (emphasis added).

Masimo is entitled to test the veracity of Lamego's denials, representations, and bases for his accusations. Lamego's representations appear to conflict with his recent public statements about his actual role at Apple. *See* Kachner Decl. Ex. 9. According

27

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-50-

to Lamego's current Linkedin profile, his work at Apple included developing "bio-sensing functionalities" and designing "hardware and algorithm architectures." *Id*. Such activities appear to compete with Masimo. Masimo is also entitled to explore from Apple precisely what Lamego was offering when he emailed Mr. Cook. Masimo should also be entitled to explore what Apple understood by Lamego's statement that Apple could leverage value from his Masimo and Cercacor experience. But Lamego has refused to answer any questions about Apple, citing a confidentiality obligation to Apple. *See* Kachner Decl. Ex. 3 10:13-12:18. Masimo should be allowed to explore the apparent contradictions in Mr. Lamego's statements and testimony.

### 3. Lamego Put His Termination From Apple at Issue In This Case

Shortly after leaving Apple, Lamego's friend and then-Cercacor employee Cristiano Dalvi told Masimo's CEO that Lamego left Apple because Apple asked Lamego to compete with Masimo and Cercacor. Kachner Decl. Ex. 6 at 69:16-70:19, 88:16-20. This explanation was consistent with Lamego's prior statements that he would not work on competing technologies while at Apple. Dkt. 152-4 (Kiani Decl.) ¶ 6; Kachner Decl. Ex. 6 at 69:16-70:19, 88:10-15. Much later, it became clear that Lamego worked in exactly the same technical area at Apple as he had at Masimo and Cercacor. Kachner Decl. Ex. 9.

Now, Lamego contends that Apple terminated his employment because of Masimo. Lamego contends that Masimo "repeatedly tried to disrupt Dr. Lamego's career and business efforts" while he was at Apple. Kachner Decl. Ex. 8 at TRUE165232 ¶ 16. Lamego further testified that Masimo's CEO threatened his employment with Apple. Kachner Decl. Ex. 3 at 423:11-424:12. Lamego and his family blame Masimo for disrupting his employment with Apple. *See also* Kachner Decl. Ex. 10 at 49:15-18; 56:9-14.

But Lamego refuses to provide any discovery about why Apple terminated him. Kachner Decl. Ex. 3 at 10:13-12:18. Lamego refused to answer direct questions about why he was fired, again citing his confidentiality obligations to Apple. *Id*. at 231:14-

28

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-51-

233:16.  Masimo is entitled to discover why Apple fired Lamego to rebut Lamego's accusations that Masimo is supposedly the cause for all of his unfortunate circumstances. Masimo is also entitled to discover why Lamego intended to harm Masimo, especially in response to Apple firing him.  Such discovery is relevant to Lamego's willful and malicious misappropriation of Masimo's trade secrets.  *See* Cal. Civ. Code § 3426.3(c); 18 U.S.C. § 1836(b)(3)(C).

### 4.    Apple's Actions Show That Facts About Apple Are Relevant to This Case

At the outset of the Apple Case, Apple filed a notice of related cases.  *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.) (Dkt. 14).  Apple represented the Apple Case "arises from the same or a closely related **transaction, happening, or event** as the 20-00048 case presently before this Court, [and] calls for determination of the same or substantially related or similar questions of law and fact." *Id*. (emphasis added).  Having filed that notice—and obtaining a transfer to Judge Selna based on that notice—Apple cannot now genuinely argue the cases are unrelated and that information about Apple is irrelevant.

Apple also recently entered into a common-interest agreement with Defendants in this case.  *See* Kachner Decl. Ex. 11.  Attempting to justify that common-interest agreement, Defendants contend that the Apple Case and this case involve "overlapping facts and legal issues."  *Id*. at p.3.[11]  Presumably Apple must also believe that some overlap in the two cases justify entering into this common-interest agreement.  That overlap pertains to Lamego and his involvement with Apple.  Apple's common-interest agreement and representations to this Court that the two cases are legally and factually

---

[11] Defendants refused to identify those overlapping facts, claiming that would reveal work product.  Kachner Decl. Ex. 11.  A common-interest privilege does not shield the overlapping facts from discovery. *Eli Lilly and Co. v. Arch Ins. Co.*, 2016 WL 5394402, *6 (S.D. Ind. Sept. 27, 2016) (common interest privilege shields only documents that "advance a shared legal interest and seek an attorney's advice to advance that interest").

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-52-

1 related contradict Apple's argument that the cases are unrelated and that Lamego's
2 recruitment, employment, and termination by Apple are irrelevant.

**B.    Legal Standard**

4       The party who moves to quash a subpoena has the "burden of persuasion" under
5 Rule 45(c)(3). *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). A party
6 "claiming undue burden as a basis for a motion to quash is held to a high burden of proof
7 which requires the party to demonstrate the actual 'manner and extent of the burden and
8 the injurious consequences of insisting upon compliance with the subpoena.'" *Ohio*
9 *Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, 2012 WL 112325, at *2 (N.D.
10 W.Va. Jan.12, 2012), *quoting* 9A C. Wright and A. Miller, M. Kane, *Federal Practice*
11 *and Procedure*, Civ.3d § 2463.1.

12      "In deciding whether to quash or modify a subpoena to a third party, a court must
13 balance the relevance of the discovery sought and the burden to the party seeking the
14 subpoena against the potential hardship to the deponent, keeping in mind Rule 26's
15 broad policy favoring full discovery." *Apple, Inc. v. Samsung Elecs. Co.*, No.
16 SACV122176AGJPRX, 2013 WL 12324184, at *1 (C.D. Cal. Jan. 3, 2013) (citing Fed.
17 R. Civ. P. 26(b)(1); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024
18 (Fed. Cir. 1986); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th
19 Cir. 1994)) (denying motion to quash).

**C.    Argument**

21      The Court should deny Apple's attempt to quash Masimo's subpoena because (1)
22 the subpoena is narrowly drawn to relevant discovery in this case; (2) Masimo has a
23 substantial need for the requested discovery; and (3) Masimo's subpoena does not
24 require Apple to duplicate any effort, much less incur a substantial burden.

**1.    Masimo Seeks Limited Discovery that is Relevant and Proportionate**
**to This Case**

27      Masimo narrowly tailored the Apple subpoena to seek discovery on just three
28 topics that are at issue in this case: (1) Apple's recruitment of Lamego while he worked

30

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-53-

at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego.  These topics are highly relevant to Masimo's breach-of-fiduciary-duty claim and misappropriation-of-trade-secret claims.  These topics are also highly relevant to show Lamego's intentions when he departed Cercacor and when he later departed Apple to form True Wearables.  Lamego and True Wearables have also put all three topics at issue in this case.

### a. Apple's recruitment of Lamego while still at Cercacor is highly relevant to this case

As Apple acknowledges, this case concerns "Mr. Lamego's conduct while employed by Cercacor."  Br. at 1.  But Apple must not appreciate that Lamego was communicating directly with Apple and its CEO Tim Cook while he was still a fiduciary at Cercacor.  *See* Kachner Decl. Ex. 4.  Lamego was claiming to Cercacor that he had made a major technology breakthrough and, at the same time, he was seeking executive employment from Apple.  In seeking that employment, Lamego offered what he had learned at Cercacor and Masimo.  Those interactions are highly relevant to Masimo's breach-of-fiduciary-duty and trade-secret claims in this case.

Lamego's interactions with Apple are also relevant to whether he believed in the breakthrough he was presenting to Cercacor.  Those communications with Apple to secure employment show the gravity of Lamego's breach of his fiduciary duty and his intent to harm Masimo and Cercacor upon his departure.

Based on the foregoing, Masimo should be permitted to depose Apple regarding:

**TOPIC NO. 1:**

Apple's reasons for hiring Marcelo Lamego.

**TOPIC NO. 3:**

Apple's communications with Marcelo Lamego concerning Apple recruiting Marcelo Lamego.

Before any deposition, Masimo should also receive documents pertaining to Apple's recruiting and hiring of Lamego.  Presumably those documents would be inside

31

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-54-

Lamego's personnel file maintained at Apple (RFP No. 1). If those documents are maintained elsewhere, Masimo has specified that Apple produce any documents concerning Apple's recruiting and hiring of Lamego. (Revised RFP Nos. 2 and 4). Accordingly, Masimo should be permitted to discover the following Apple documents, as Masimo clarified as part of the meet and confer with Apple:

### REQUEST FOR PRODUCTION NO. 1:

The personnel file for Marcelo Lamego.

### REVISED REQUEST FOR PRODUCTION NO. 2:

Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014.

### REVISED REQUEST FOR PRODUCTION NO. 4:

Apple's communications with Marcelo Lamego regarding his hiring by Apple.

**b.    Limited discovery about Lamego's job duties at Apple is highly relevant in this case**

Lamego's title and job duties at Apple will show the nature of the position which enticed Lamego to leave Cercacor. That position is also part of the exchange between Lamego and Apple for which Apple was to obtain help to solve their "patient problem." The title and job duties complete the story pertaining to Lamego's email to Mr. Cook.

Specifically, Lamego told Apple's CEO Tim Cook that he had developed intellectual property for Masimo and Cercacor over a ten year period and he was "sure [he] could add a significant value to the Apple team." Kachner Decl. Ex. 4. Lamego also told Mr. Cook that he could "solve" Apple's issues with non-invasive measurement technologies. *Id*. In exchange, Lamego sought an executive position at Apple. Information about Lamego's duties and title at Apple are relevant to understand how Lamego planned to execute on his proposal to help Apple and how Apple enticed Lamego to leave Cercacor. This information is also highly relevant to Lamego's state of mind upon departing Cercacor, his intent to harm Masimo, and his breach of his

32

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-55-

1    fiduciary duty to Cercacor.

2         Moreover, the title and duties Lamego had at Apple will also allow Masimo to

3    test Lamego's credibility.  Specifically, Lamego told Masimo's CEO he would not work

4    on technologies that compete with Masimo and Cercacor.  Dkt. 152-4 (Kiani Decl.) ¶ 6;

5    Kachner Decl. Ex. 6 at 69:16-70:19, 88:10-15.  After Lamego left Apple he represented

6    to Masimo that Apple hired him "to work in (sic.) a project that had **no connection** with

7    any products developed by Masimo or Cercacor."  Kachner Decl. Ex. 8 at TRUE165232

8    ¶ 16.  (emphasis added).  Lamego's representations appear to conflict with his own

9    recent public statements about his actual role at Apple.  *See* Kachner Decl. Ex. 9.

10   Masimo should be allowed to explore the apparent contradictions in Mr. Lamego's

11   statements.

12        Based on the foregoing, Masimo should be permitted to discover Lamego's

13   personnel file maintained at Apple (RFP No. 1), which presumably contains documents

14   showing Lamego's duties and title at Apple.   If those documents are maintained

15   elsewhere, Masimo has specified that Apple produce documents sufficient to show

16   Lamego's job duties and title. (Revised RFP No. 5).  Thus, Masimo should be permitted

17   to discover the following Apple documents:

18               **REQUEST FOR PRODUCTION NO. 1:**

19        The personnel file for Marcelo Lamego.

20               **REVISED REQUEST FOR PRODUCTION NO. 5:**

21        Documents sufficient to show Marcelo Lamego's job duties and title at

22        Apple.

23        **c.    Apple terminating Mr. Lamego is highly relevant in this case**

24        In this case, Lamego has blamed Masimo for Apple firing him.  Even before

25   Masimo filed this lawsuit, Lamego claimed Masimo caused Apple to fire him, and that

26   he "had no choice other than to return to Orange County and open his own company,"

27   True Wearables.  Kachner Decl. Ex. 8 at TRUE16532 ¶ 16.  Lamego put his termination

28   from Apple directly at issue by blaming Masimo for that termination.  Masimo should

33

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-56-

be permitted to ask Apple about the basis for that termination to defend itself from this accusation.

Lamego's termination by Apple is also independently discoverable to show evidence of Lamego's character. *United States v. Shanshan Du*, 570 F. App'x 490, 498 (6th Cir. 2014). Such discovery could help complete the story of Lamego's misconduct that started when he was Cercacor's Chief Technology Officer and continued when he founded True Wearables. *See id.* (defendant's firing by former employer "was admissible character evidence as background information that completed story" of misconduct).

Based on the foregoing, Masimo should be permitted to depose Apple regarding:

**TOPIC NO. 2:**

Reasons for termination of Marcelo Lamego's employment relationship with Apple.

**TOPIC NO. 4:**

Apple's communications with Marcelo Lamego concerning termination of Marcelo Lamego's employment relationship with Apple.

Before any deposition, Masimo should also receive documents pertaining to Apple's termination of Lamego. Presumably those documents would also be inside Lamego's personnel file maintained at Apple (RFP No. 1). If those documents are maintained elsewhere, Masimo has specified that Apple produce any documents concerning Apple's termination of Lamego. (Revised RFP No. 3). Accordingly, Masimo should be permitted to discover the following Apple documents, as Masimo clarified as part of the meet and confer with Apple:

**REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REVISED REQUEST FOR PRODUCTION NO. 3:**

Apple's communications with Marcelo Lamego regarding the end of his employment.

34

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Gibson, Dunn & Crutcher LLP

Exhibit 2
-57-

## 2. Masimo Has a Substantial Need For the Requested Discovery

The parties agree that a Court should not quash a subpoena if the need for the discovery "cannot be otherwise met without undue hardship." *See* Br. at 1, 19. Apple is the only source of the documents Masimo seeks, and therefore, Masimo has no other options for the discovery. Lamego confirmed that he has incomplete copies of his communications with Apple. Kachner Decl. Ex. 3 at 327:17-328:14. And in the final days of fact discovery in this case, Lamego refused to provide any meaningful testimony about Apple, citing his confidentiality obligations to Apple. Id. at 10:13-12:18. Thus, Apple is the only source of this relevant discovery.

Apple's cases do not support quashing Masimo's subpoena. Apple cites two cases, but both are inapposite because both cases concern confidential research and technology. *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (discussing a subpoena that sought "trade secrets or other confidential research, development or commercial information"); *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (discussing a subpoena that sought "confidential technology"). Masimo seeks no such information here. Rather, Masimo seeks limited discovery on: (1) Apple's recruitment of Lamego while he worked at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. All three topics are directly relevant in this case, and Defendants have also put all three topics at issue.

## 3. Masimo's Subpoena Does Not Impose an Undue Burden on Apple

Apple contends that Masimo's subpoena "unnecessarily duplicates work that is already being done in the Apple Case." Br. 21. This argument is not a basis to deny discovery, and Apple provides no evidence to support its position. It also falls well short of showing an undue burden.

For the subpoenaed documents, Apple merely identifies similarities between the subpoena and certain document requests that Masimo served in the Apple case. Br. at 21-24. But Apple identifies no extra effort or cost to produce the same document in two

35

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-58-

different cases. Moreover, Apple has not committed to producing all of the documents at issue in the Apple case.

For the deposition topics, Apple contends Masimo seeks testimony that will "also will likely be duplicative of Plaintiffs' Rule 30(b)(6) topics in the Apple Case." Br. at 24. But any duplication does not show an undue burden. Rather, any duplication is merely the result of the protective orders governing each case. Those protective orders prohibit use of confidential discovery in another case without authorization or further court order. Kachner Decl. Ex. 12 at ¶ 5.1; Dkt. 260 ¶ 5. Masimo is merely complying with the protective orders by seeking relevant information by subpoena so that the information can be used in this case. Masimo did not serve the subpoena for "gamesmanship" or for an "improper purpose" as Apple alleges. *See* Br. at 9.

Masimo has no desire to take the same deposition or duplicate Apple's documents in both cases. Similarly, it appears Apple would prefer not to duplicate its discovery efforts. The parties could avoid any duplicate effort if Apple simply allows confidential discovery to be used in both cases, and Masimo is perfectly willing to enter into such a stipulation. If Apple refuses, any duplicate discovery efforts would be of Apple's own making. Moreover, Apple is of course presuming that it has already produced all of the information sought by the subpoena in the Apple Case. But Apple is fighting that discovery in the Apple Case as well.

### 4. Apple's Remaining Arguments Do Not Justify Quashing The Subpoena

#### a. Masimo timely served its subpoena

Apple argues that Masimo timed this subpoena to disrupt or conflict with the timing of discovery hearings in the Apple case. Br. at 24. Apple argues "the abridged timing of Plaintiffs' Subpoena … confirms its improper purpose." *Id*. This argument is baseless. The timing is actually very simple. The timing of the subpoena was due to the case schedule in this case, and Masimo's attempts to obtain all discovery possible from True Wearables and Lamego before pursuing the discovery from Apple. Indeed,

36

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-59-

Masimo just recently completed Lamego's deposition where he refused to provide information about his employment at Apple. Masimo timely served the subpoena near the close of fact discovery. Any overlap with proceedings in the Apple Case was merely the result of the deadline for discovery in this case. Apple's attempt to attribute improper motive to Masimo is baseless. And because the protective order prohibits the use of protected material in another case, Apple's claims of improper purposes is not plausible.

Apple's legal citations are also misplaced. In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1236054, at *2 (N.D. Cal. Mar. 18, 2019), the court quashed a subpoena seeking discovery from a third party that the court had already ruled was "out-of-bounds." But here, this Court has not yet considered, much less ruled on, the relevance of the requested discovery in either this case or the Apple Case. *Thogus Prod. Co. v. Bleep, LLC*, 2021 WL 827003, at *5 (N.D. Ohio Mar. 4, 2021), is also inapposite. There the court denied Plaintiff's attempt to take expedited discovery from the Defendant. Plaintiff then served fifteen subpoenas on Defendant's customers, seeking the very same expedited discovery the court had already denied. Masimo is not seeking to bypass any court order. Masimo merely seeks very focused and limited discovery from Apple that is relevant to this case and is available from no other source.

### b.   Masimo is not seeking to avoid discovery limits in the Apple case

Apple also argues Masimo's subpoena is an attempt to avoid the 100-hour deposition limit in the Apple case.[12] Br. at 2, 14, 25. This argument is pure conjecture. Masimo has not yet used a single hour of deposition time in the Apple case, and does not currently expect to be short on hours. Apple should not be able to rely on the deposition clock in the Apple Case (which has not started to run) to avoid a deposition in this case.

### c.   Masimo's first subpoena is irrelevant

As Apple acknowledges, Masimo voluntarily withdrew a prior subpoena to Apple

---

[12] This argument is irrelevant to Masimo's subpoena for documents.

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-60-

more than a year ago. Br. at 10. Apple argues that Masimo's withdrawn subpoena and the current subpoena are merely attempts to "use this case to seek discovery that [Plaintiffs] know they are unlikely to obtain in the Apple case." *Id*. at 8. Apple further accuses Masimo of engaging in "gamesmanship with respect to basic discovery rules." *Id*. at 9. Apple's argument and accusations are unsupported.

Masimo's withdrawn subpoena is not before this Court. Apple's discussion of that subpoena distracts from the narrowly focused subpoena at issue. Masimo served the withdrawn subpoena when it was facing a discovery deadline, before Defendants sat for a single deposition or produced significant discovery. That discovery deadline was subsequently moved. *See* Dkt. 79. With the additional time, Masimo withdrew the subpoena to first pursue as much discovery as possible from Defendants in this case before serving Apple with the subpoena at issue. That is entirely proper.

The discovery Masimo obtained has allowed Masimo to narrowly focus the current subpoena on discovery that is directly at issue in this case that Masimo cannot receive from Lamego. Apple understood that Masimo reserved the right to re-serve a new subpoena at a later stage in the case. For that reason, Apple dismissed its motion to quash without prejudice, "reserving the right to refile both should Plaintiffs at any time decide to re-issue the subpoena to Apple in connection with the True Wearables Case." Samplin Decl. Ex. E.

### d. Masimo properly focused the subpoena

After meeting and conferring on Apple's motion, Masimo further focused the subpoena in response to Apple's objections. Kachner Decl. Ex. 1. Despite Masimo's clarification, Apple still refused to respond. Kachner Decl. Ex. 2.

Apple contends that Masimo is not permitted to clarify and narrow the scope of its subpoena. *Id*. Apple's argument lacks support. Nothing precludes an issuing party from focusing a subpoena to resolve objections. Indeed, that is what the meet and confer process is supposed to facilitate. Apple cites no authority, and Masimo is aware of none, holding that a party may not narrow a subpoena after it is served. Apple's own cited

38

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-61-

authority recognizes that a subpoena may be narrowed by agreement. *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *3 (S.D.N.Y. Sept. 6, 2019). Courts have denied motions to quash when the moving party refuses efforts to narrow the subpoena. *See, e.g., In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 2764260, at *2 (N.D. Ill. May 6, 2019).

Instead, Apple argues Masimo must withdraw its subpoena and issue a new subpoena if Masimo seeks to clarify the subpoena's scope. Kachner Decl. Ex. 2. This is unnecessary for four reasons. First, Masimo's subpoena as served is already directed to the three relevant issues identified above. Second, Masimo is permitted to further focus its subpoena. Third, Apple's suggestion is not available here because discovery has now closed in this case. By serving this subpoena near the end of fact discovery, Masimo was able to focus the subpoena on narrow issues for which discovery from Apple was still needed. Fourth, Apple's suggestion would not resolve the matter because Apple objects to the narrowed topics based on the same objections raised here. *Id*.

### e.   Any overlap in discovery between this Case and the Apple Case is not a basis to quash

The facts in this case overlap to some degree with the Apple Case. Indeed, True Wearables and Apple entered a common-interest agreement based on purported overlapping factual issues. Kachner Decl. Ex. 11 at p.3. Their reliance on overlapping facts to support a common-interest agreement shows some facts from Apple are relevant in this case. Apple also relied on the overlap in its notice of related case when Masimo sued Apple. *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.) (Dkt. 14). There appears to be no genuine dispute that some discovery will be relevant to both cases. Masimo should be entitled to relevant discovery from Apple in this case, even though that discovery is also relevant in the Apple case.

Based on discovery in this case, Masimo learned that Apple is the unique source for some discovery. For example, when Masimo questioned Lamego about Apple, he

39

Exhibit 2 -62-

refused to respond and explained that some discovery was available only from Apple.

*See* Kachner Decl. Ex. 3 10:13-12:18, 327:17-328:14.  Apple should provide Masimo with this relevant discovery.

Apple's argument that Masimo is seeking discovery for use in the Apple Case is also baseless.  Masimo needs, and is entitled to, discovery from Apple ***in this case***.  Even if Apple were to produce the requested discovery in the Apple Case, the protective order there would preclude Masimo from using that discovery outside that case, unless Masimo obtained relief from the protective order.  Kachner Decl. Ex. 12 at ¶ 5.1.  Similarly, the protective order in this case precludes Masimo from using any discovery in any other case, including the Apple case, absent relief from the protective order.  Dkt. 260 ¶ 5.  Masimo's subpoena is necessary for Masimo to secure discovery from Apple for use in this case.

### D.    Conclusion

Because Masimo's subpoena is focused on relevant issues in this case, and because the discovery is available only from Apple, Masimo respectfully requests that the Court deny Apple's motion to quash.

Dated: June 3, 2021               GIBSON, DUNN & CRUTCHER LLP

                                  By:    */s/ Joshua H. Lerner*
                                         Joshua H. Lerner
                                         H. Mark Lyon
                                         Ilissa Samplin

                                  *Attorneys for Non-Party Apple Inc.*

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-63-

Dated: June 3, 2021                    KNOBBE, MARTENS, OLSON & BEAR LLP

                                       By:   /s/ Mark D. Kachner
                                             Joseph R. Re
                                             Stephen C. Jensen
                                             Perry D. Oldham
                                             Irfan A. Lateef
                                             Brian C. Claassen
                                             James E. Youngblood
                                             Adam B. Powell
                                             Mark D. Kachner

                                             *Attorneys for Plaintiffs,*
                                             *Masimo Corporation and Cercacor*
                                             *Laboratories, Inc.*


## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

                                       By:   /s/ Joshua H. Lerner
                                             Joshua H. Lerner

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-64-

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 3

| | |
|---|---|
| **From:** | Paige Stradley |
| **To:** | Mark.Kachner |
| **Cc:** | Lit MASIMOL.1085L; Truewearables |
| **Subject:** | RE: Masimo v. True Wearables |
| **Date:** | Thursday, June 3, 2021 6:07:54 AM |

Thank you Mark. Confirmed.

Best,
Paige

**Paige Stradley**
she/her/hers
Partner
Merchant & Gould P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
USA

**Telephone** (612) 336-4671
**Fax** (612) 332-9081
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever. Please consider the environment before printing this email. Thank you.

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Thursday, June 3, 2021 12:48 AM
**To:** Paige Stradley <PStradley@MerchantGould.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables

CAUTION - External.

---

Paige,

Apple's counsel responded to your proposal and stated: "we confirm the information will be treated as AEO and that the information will only be used for the purposes of and in connection with Apple's motion to quash."

Please confirm we have your authorization to disclose the documents cited herein to Apple's

Exhibit 3
-65-

counsel.

Regards, Mark

**Mark Kachner**
Partner
310-407-3472 Direct

**Knobbe | Martens**
INTELLECTUAL PROPERTY LAW

**five decades. one focus.**

---

**From:** Paige Stradley [mailto:PStradley@MerchantGould.com]
**Sent:** Wednesday, June 2, 2021 3:17 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables

Mark,

Defendants are not the ones who wish to disclose the information. Plaintiffs asked for our permission to do so. If Plaintiffs wish to disclose the information, they may do so subject to the below conditions. There is no reason for me to reach out to Apple when I am not the one asking to disclose the information. Once you provide the below confirmation, Plaintiffs may disclose the information.

Best,
Paige

**Paige Stradley**
she/her/hers
Partner
Merchant & Gould P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
USA

**Telephone** (612) 336-4671
**Fax** (612) 332-9081
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient,

Exhibit 3
-66-

please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever. Please consider the environment before printing this email. Thank you.

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Wednesday, June 2, 2021 5:01 PM
**To:** Paige Stradley <PStradley@MerchantGould.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables

**CAUTION - External.**

Paige,

Please obtain any authorization you require directly from Apple's attorneys at Gibson Dunn, with you already entered a common-interest agreement for this case, and please let us know when we have authorization to disclose these materials.

Thank you, Mark

**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe Martens**

**From:** Paige Stradley <PStradley@MerchantGould.com>
**Sent:** Wednesday, June 2, 2021 2:31 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables

Mark,

Defendants will authorize Plaintiffs to disclose TRUE016520-21;  TRUE016528-66; Marcelo Lamego's deposition testimony at pages 10-12, 231-236, 250-257, 327-328, and 423-424; and Tatiana Lamego's deposition testimony at pages 49 and 56 to Apple's outside counsel so long as the information is treated as AEO under our Protective Order such that only Apple's outside counsel is viewing the information and so long as the information is only used for the purposes of and in connection with Apple's motion to quash.  Please confirm the information will be treated as AEO under our Protective Order and that the information will only be used for the purposes of and in connection with Apple's motion to quash.

Defendants' agreement to authorize disclosure of these limited documents and testimony for this limited purpose (and subject to the above conditions) is not and should not be viewed as permission

Exhibit 3
-67-

to disclose any other information of Defendants to Apple's outside counsel. Thank you,
Paige

**Paige Stradley**
she/her/hers
Partner
Merchant & Gould P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
USA

**Telephone** (612) 336-4671
**Fax** (612) 332-9081
**merchantgould.com**

GUARDIANS OF GREAT IDEAS°

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever. Please consider the environment before printing this email. Thank you.

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Wednesday, June 2, 2021 1:16 PM
**To:** Paige Stradley <PStradley@MerchantGould.com>; Truewearables <Truewearables@MerchantGould.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>
**Subject:** RE: Masimo v. True Wearables

**CAUTION - External.**

Paige,

Do you have an update on this request?  Also, what is your basis for saying that Plaintiffs may not disclose TRUE016520-21 to Apple's counsel, pursuant to Paragraph 6(g) of the Protective Order?

Thanks, Mark

**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe Martens**

**From:** Paige Stradley <PStradley@MerchantGould.com>
**Sent:** Tuesday, June 1, 2021 9:29 AM

Exhibit 3
-68-

**To:** Mark.Kachner <Mark.Kachner@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>
**Subject:** RE: Masimo v. True Wearables

Mark,

We are considering your below email, but we will not be able to respond by noon today as we need time to confer with our client. We will get back to you after we have had an opportunity to speak with him and confer internally regarding the same. Until then, we do not agree that you may disclose any of the below documents or testimony to Apple's counsel.

Best,
Paige

**Paige Stradley**
she/her/hers
Partner
Merchant & Gould P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
USA

**Telephone** (612) 336-4671
**Fax** (612) 332-9081
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever. Please consider the environment before printing this email. Thank you.

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Sunday, May 30, 2021 7:26 PM
**To:** Truewearables <Truewearables@MerchantGould.com>
**Cc:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>
**Subject:** Masimo v. True Wearables

---

**CAUTION - External.**

---

Counsel,

Apple is moving to quash Plaintiffs' subpoena based on relevance.  To explain the relevance of the

Exhibit 3
-69-

requested discovery, Plaintiffs intend to rely on TRUE016520-21, TRUE016528-66, and deposition testimony. The document at TRUE016520-21 is a communication between Marcelo Lamego and certain Apple employees.  Paragraph 6(g) of the Protective Order allows Plaintiffs to disclose this document to Apple counsel.  We request your authorization to disclose TRUE016528-66 to Apple's counsel pursuant to the Protective Order. We further request your authorization to disclose Marcelo Lamego's deposition testimony on pages 10-12, 231-236, 250-257, 327-328, and 423-424, and Tatiana Lamego's deposition testimony at pages 49 and 56.  Please let us know by no later than noon on Tuesday 6/1, whether you authorize Plaintiffs to disclose this information to Apple's counsel.

Regards, Mark

**Mark Kachner**
Partner
Mark.Kachner@knobbe.com
**310-407-3472** Direct

**Knobbe | Martens**
INTELLECTUAL PROPERTY LAW
**five decades. one focus.**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
www.knobbe.com/mark-kachner

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit 3
-70-

# EXHIBIT 4

| | |
|---|---|
| **From:** | Mark.Kachner |
| **To:** | Kaounis, Angelique |
| **Cc:** | Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Andrea, Brian; Rosenthal, Brian A.; Lit MASIMOL.1085L; Irfan.Lateef; Brian.Claassen; *** Apple-Masimo; Samplin, Ilissa |
| **Subject:** | RE: Masimo Corp. et. al. v. True Wearables, Inc. et al., Case No. 8:18-cv-02001 - subpoena to Apple |
| **Date:** | Thursday, June 3, 2021 11:00:44 AM |
| **Attachments:** | 2021-06-03 Joint Stipulation re Apple"s Motion to Quash Subpoena Issued in TW Case.DOCX |
| | Exhibit 04 - TRUE016520-522 (Confidential)(Apprv).PDF |
| | Exhibit 05 - Email re Masimo v. True Wearables dated June 1, 2021 (FUS).PDF |
| | Exhibit 06 - [EXCERPTS] 2021-05-19 Deposition Transcript of Joseph Kiani (AEO).PDF |
| | Exhibit 07 - MASM0205492-493 (AEO).PDF |
| | Exhibit 08 - TRUE016528-566 (Confidential)(Apprv).PDF |
| | Exhibit 10 - [EXCERPTS] 2020-12-21 Deposition Transcript of Tatiana Lamego (AEO)(Apprv).PDF |
| | Exhibit 11 - Email RE Masimo v. True Wearables dated May 27, 2021 [FUS].PDF |
| | Exhibit 03 - [EXCERPTS] 5-20 & 5-21 2021 Deposition Transcript of Marcel Lamego (AEO) (Apprv).PDF |

Angelique,

Thank you for your confirmation.  Please find attached:

1. Confidential version of the Joint Stipulation, with the confidential material highlighted that needs to be redacted.
2. Confidential exhibits to the Kachner Declaration, Ex. Nos. 3-8, 10-11.

With this we understand Apple will prepare the final version of documents for filing, and send today for approval.

Also, because of the size of attachments, please confirm receipt.

Thanks, Mark

**Mark Kachner**
Partner

310-407-3472 **Direct**

**Knobbe** Martens

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, June 3, 2021 10:26 AM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Masimo Corp. et. al. v. True Wearables, Inc. et al., Case No. 8:18-cv-02001 - subpoena to Apple

Mark,

With regard to Plaintiffs' confidential information on which Plaintiffs rely in opposing Apple's motion to quash, we confirm such information will be treated as AEO and that the information will only be used for the purposes of and in connection with Apple's motion to quash.

**Exhibit 4**
**-71-**

Please send us the unredacted papers for today's filing.

Thanks,

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026

Tel +1 310.552.8546 • Fax +1 310.552.7026

AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>

**Sent:** Thursday, June 3, 2021 9:26 AM

**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>

**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>

**Subject:** RE: Masimo Corp. et. al. v. True Wearables, Inc. et al., Case No. 8:18-cv-02001 - subpoena to Apple

[External Email]

Angelique,

This morning, True Wearables' counsel confirmed that based on your agreement, we are authorized to provide Apple's counsel with True Wearables' information in Plaintiffs' opposition to Apple's motion to quash.  Please also confirm Apple's counsel agrees to only use Plaintiffs' confidential information in connection with Apple's motion to quash.

Regards, Mark

**Mark Kachner**

Partner

**310-407-3472 Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>

**Sent:** Wednesday, June 2, 2021 9:36 PM

**To:** Mark.Kachner <Mark.Kachner@knobbe.com>

**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Lit MASIMOL.1085L

Exhibit 4
-72-

<LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Masimo Corp. et. al. v. True Wearables, Inc. et al., Case No. 8:18-cv-02001 - subpoena to Apple

Mark,
Thanks for your email.  We understand your email to mean that the proposal made by counsel for True Wearables covers all of True Wearables' information on which Plaintiffs rely in opposing Apple's motion to quash.  If that is correct, we confirm the information will be treated as AEO and that the information will only be used for the purposes of and in connection with Apple's motion to quash.  Will Plaintiffs also agree to permit Apple's outside counsel to see Plaintiffs' confidential and highly confidential information cited in the motion to quash briefing, including any supplemental brief, on an Attorneys' Eyes Only basis?  This means we will treat Plaintiffs' information as AEO without the need to formally sign the protective order in the True Wearables matter.
We think it is most efficient and sensible to treat all of the confidential information at issue in this motion the same way—as AEO.  Please let us know if you agree.
Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Wednesday, June 2, 2021 3:35 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et. al. v. True Wearables, Inc. et al., Case No. 8:18-cv-02001 - subpoena to Apple

[External Email]
Angelique and Ilissa,

True Wearables' counsel authorized us to disclose their confidential information that Plaintiffs rely on in opposition to Apple's motion to quash, subject to the conditions below.  Please confirm you

Exhibit 4
-73-

agree.

      Defendants will authorize Plaintiffs to disclose TRUE016520-21;  TRUE016528-66; Marcelo Lamego's deposition testimony at pages 10-12, 231-236, 250-257, 327-328, and 423-424; and Tatiana Lamego's deposition testimony at pages 49 and 56 to Apple's outside counsel so long as the information is treated as AEO under our Protective Order such that only Apple's outside counsel is viewing the information and so long as the information is only used for the purposes of and in connection with Apple's motion to quash.  Please confirm the information will be treated as AEO under our Protective Order and that the information will only be used for the purposes of and in connection with Apple's motion to quash.

      Defendants' agreement to authorize disclosure of these limited documents and testimony for this limited purpose (and subject to the above conditions) is not and should not be viewed as permission to disclose any other information of Defendants to Apple's outside counsel. Thank you,
Paige


Regards, Mark

**Mark Kachner**
Partner
Mark.Kachner@knobbe.com
310-407-3472 **Direct**
**Knobbe** Martens
1925 Century Park East, Suite 600
Los Angeles, CA 90067
www.knobbe.com/mark-kachner


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit 4
-74-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 4
-75-

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 24, 2021 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

Present: The Honorable    John D. Early, United States Magistrate Judge

| Maria Barr | CS 06/24/21 |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Moving Party: |
| Joseph R. Re, Mark D. Kachner | Ilissa Samplin for Apple Inc. |
| | [No Appearance for Defendants] |

**Proceedings:**    Hearing re: Non-Party Apple, Inc.'s Motion to Quash Subpoena (Dkt. 282) and Sealing Applications (Dkt. 280, 289, 291)

Case called. Appearance made. Counsel for Non-Party Apple Inc. ("Apple") and for Plaintiffs are heard regarding Apple's Motion to Quash Subpoena and for a Protective Order (Dkt. 282, "Motion") and the Applications for Sealing filed by Apple and Plaintiffs (Dkt. 280, 289, 291, collectively, "Sealing Applications").

Following argument, the Court ordered, for the reasons stated on the record, that the Motion (Dkt. 282) is DENIED in its entirety EXCEPT as to Request for Production No.1 in the Subpoena; Apple is ordered to produce all non-privileged documents in its possession, custody or control that are responsive to "Revised" Requests for Production Nos. 2-5 as limited by Plaintiffs in the Joint Stipulation filed in connection with the Motion (see Dkt. 282-1 at 7 (original pagination)) by July 7, 2021, with a deposition to proceed as to Topics 1-4 (id. at 6) as soon thereafter as may be reasonably scheduled by the parties.

As to the Sealing Applications:
- Dkt. 280 is:
  - GRANTED as to:
    - (i) the Joint Stipulation (Dkt. 281-1), with the parties to meet and confer and file a new, redacted version on the public docket no earlier than 11 days after the hearing herein that accounts for the sealing rulings herein;
    - (ii) Exhibits H and N to the Declaration of Illissa Sample in support of the Motion;

Exhibit 5
-76-

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 24, 2021 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

- o DENIED as to Exhibits 3-5, 8, and 10 to the Declaration of Mark Kachner in support of the Motion as a sufficient showing to overcome the strong presumption of public access in civil cases has not been made, as no declaration by the party that had designated material as confidential was filed within 4 days of the filing of the sealing request showing good cause for sealing (see Local Rule 79-5.2.2(b)(i)) and no party sought continued sealing at the hearing;
- o Subject to a further showing by Plaintiffs as to Exhibits 6, 7, and 11 to the Declaration of Mark Kachner in support of the Motion, with Plaintiffs to submit, under seal, by June 28, 2021, an evidentiary showing and legal basis to support sealing of such materials, with redacted versions of Exhibits 6, 7, and 10, if appropriate, filed in the public docket (see Local Rule 79-5.2.2);
- Dkt. 289 is DENIED;
- Dkt. 291 is DENIED; and
- For any material as to which a sealing request is denied, barring intervening order, the filing party shall file such material on the public docket no earlier than 4 days and no later than 10 days after the hearing herein.

IT IS SO ORDERED.

| | 1 | : | 10 |
|---|---|---|---|

Initials of Clerk:     mba

Exhibit 5
-77-

# EXHIBIT 6

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com Irfan
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON
 & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON
 & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067 Telephone:
(310) 551-3450 Facsimile: (310)
601-1263

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs/Counterdefendants,<br><br>v.<br><br>TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,<br><br>Defendants/Counterclaimants. | Case No. 8:18-CV-02001-JVS-JDE<br><br>**PLAINTIFFS' EXHIBITS 3-5, 8, AND 10 TO THE DECLARATION OF MARK D. KACHNER IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER**<br><br>**Hon. James V. Selna**<br>**Hon. Magistrate John D. Early**<br><br>**[Discovery Document: Referred to Magistrate Judge John D. Early]**<br><br>**Hearing: June 24, 2021**<br>**Time: 10:00 a.m.**<br>**Court: Room: 6A** |

UNREDACTED VERSION OF DOCUMENTS FILED PURSUANT TO ORDER OF THE
COURT DATED JUNE 24, 2021 (DKT. NO. 311)

Exhibit 6
-78-

# EXHIBIT 4

**[TRUE016520-522]**

Stanford Alumni Mail - The three equations                                                                11/24/18, 11:30 AM



## The three equations

**Marcelo Lamego** <mmlamego@stanfordalumni.org>                    Wed, Oct 2, 2013 at 12:54 AM
To: tcook@apple.com

Dear Tim Cook,

I was approached by Apple in the beginning of this year (by David Affourtit and James Foster) and was asked if I would like to join the executive technical team. Because I did not want to sign the Apple's NDA for an onsite interview, the process came to a halt. I felt that it was not appropriate to receive confidential information from or disclose confidential information to Apple given my fiduciary responsibilities as the Chief Technical Officer of Cercacor.

I have developed several medical devices in the last 10 years and I am positively sure I could add a significant value to the Apple team, if I was given the chance of becoming part of it in a senior technical executive position and without conflicting with the large IP I have developed for Masimo and Cercacor during the same period.

What I am sure Apple soon will realize is that medical, wellness and fitness technologies are very deceptive in the sense that they are easy to develop for products that work in most (~80%) of the users. Getting the same technology to work in almost the entire population is a problem extremely more complex . This is the very reason most medical device startups become insolvent. Knowing Apple's reputation, I am sure you would not settle for even 99%, imagine then, 80%.

As you probably know, regulatory barriers are another important consideration when dealing with medical technologies in general. If the FDA or any other regulatory agency worldwide (i.e., Canada, Japan, Korea, Europe, etc.) believe your product should be regulated by their standards then, the choice of intended use combined with the technology realization strategy can make the development shorten or longer by several years.

The reason I feel attracted to Apple as a company is not related to the things most people are interested in, i.e., brand recognition, great culture, great products, great people. It has to do with the fact that, as an engineer, I realized that there are three important equations to be solved in order to create a competitive global medical, wellness and fitness product portfolio:

(i) The user equation - Apple has solved it and created the industry standard. With a brand recognition similar to the ones from luxury products, everybody is interested in understanding and using Apple's intuitive interfaces.

(ii) The patient equation - This is the deceptive part.

(iii) The connectivity equation - This can only be solved with scale and brand recognition, which are synonymous for Apple. Reliable wireless technology and device interoperability will become a must in the medical device segment.

**EXHIBIT 4**
**-36-**

CONFIDENTIAL                                                              TRUE016520
                                                                                  Exhibit 6
                                                                                  -80-

Stanford Alumni Mail - The three equations                                                                11/24/18, 11:30 AM

I believe Apple has solved (i) and has enough resources to solve (iii). I can help you to solve (ii).

I would appreciate if the content of this letter could be kept confidential, since it can jeopardize the outcome of my career at Cercacor.

I strongly believe that we can develop the new wave of technology that will make Apple the number one brand in the medical, fitness and wellness device market. If you agree, feel free to contact me anytime.

All the best,

Marcelo Malini Lamego

18 Lyra Way

Coto de Caza CA 92679

Home phone: (949) 216-9294

My resume is available at http://www.linkedin.com/pub/marcelo-lamego/54/644/725

Confidentiality notice: This e-mail may contain information confidential and/or privileged from disclosure. If the reader is not the intended recipient, copying, dissemination or continued possession of this communication is strictly prohibited.

**EXHIBIT 4**

CONFIDENTIAL                                            -37-                                            TRUE016521

Exhibit 6

-81-

Stanford Alumni Mail - Apple                                                                11/26/18, 9:09 PM



Marcelo Lamego <mmlamego@alumni.stanford.edu>

## Apple

**David Affourtit** <affourtit@apple.com>                          Wed, Oct 2, 2013 at 10:25 AM
To: Marcelo Lamego <mmlamego@stanfordalumni.org>
Cc: Denby Frazier <denby@apple.com>

Hello Marcelo,

Thank you for your voicemail and follow up.  I saw your note to Tim Cook.  I'm glad you remain enthusiastic about Apple.

As I've transitioned out of the Exec Recruiting team into a management role, I've asked my associate from the Exec Recruiting team to reach out to you directly.  Her name is Denby Frazier, cc'd.

Denby, meet Marcelo, Marcelo, Denby.

All the best and thanks again!

Cheers,
Dave



                                          **EXHIBIT 4**
CONFIDENTIAL                                  **-38-**                            TRUE016522
                                                                                 Exhibit 6
                                                                                   -82-

# EXHIBIT 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,    ) CASE NO: 8:18-CV-02001-JVS-JDE
                              )
              Plaintiffs,     )            CIVIL
                              )
      vs.                     )       Santa Ana, California
                              )
TRUE WEARABLES, INC, ET AL,   )       Thursday, June 24, 2021
                              )
              Defendants.     )
_____ )


HEARING RE: NON-PARTY APPLE, INC'S MOTION TO QUASH SUBPOENA
[DKT.NO.282];

AND SEALING APPLICATIONS [DKT.NOS.280,289,291]


BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE



<u>APPEARANCES</u>:              SEE PAGE 2


Court Reporter:           Recorded; Digital

Courtroom Deputy:         Maria Barr

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES</u>:


For Plaintiffs:          JOSEPH R. RE, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         2040 Main Street
                         14th Floor
                         Irvine, CA 92614

                         MARK D. KACHNER, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         1925 Century Park East
                         Suite 600
                         Los Angeles, CA 90067


For Moving Party:        ILISSA S. SAMPLIN, ESQ.
                         Gibson Dunn & Crutcher, LLP
                         2029 Century Park East
                         Suite 4000
                         Los Angeles, CA 90067

Exhibit 7
-84-

3

1          <u>Santa Ana, California; Thursday, June 24, 2021</u>

2                    <u>(Remote appearances)</u>

3                      <u>(Call to Order)</u>

4          **THE CLERK:**  Please remain seated, and come to order.

5   This United States District Court is now in session.  The

6   Honorable John D. Early, United States Magistrate Judge,

7   presiding.

8          **THE COURT:**  Good morning everyone.  We're calling the

9   case of Masimo Corporation, et al, versus True Wearables, Inc.,

10  et al; Case Number 8:18-cv-2001-JVS-JDE.

11         Let's have appearances from Counsel, starting with

12  Counsel for the Plaintiffs.

13         **MR. RE:**  Thank you, Your Honor.  For the Plaintiff

14  Masimo Corporation and Cercacor Laboratories, my name is Joseph

15  Re from the law firm of Knobbe Martens.  And to my left is my

16  partner, Mark Kachner.

17         **THE COURT:**  All right.  And on behalf of Debtor -- or

18  I'm sorry -- on behalf of moving party Apple Inc.

19         **MS. SAMPLIN:**  Yes.  Good morning, Your Honor.  On

20  behalf of a non-party, but moving party in this case, on the

21  Motion to Quash, Apple Inc., Ilissa Samplin from Gibson, Dunn &

22  Crutcher.

23         **THE COURT:**  All right.  Is there any appearance or

24  person here on behalf of any of the Defendants; True Wearables,

25  or the other Defendant, Mr. Lamego?

4

1          Seeing or hearing nothing.  It was noticed for today.

2  They are not required to be here if they don't find an interest

3  in it.

4          All right.  We're here for one substantive motion,

5  and that's Docket Number 282, non-party Apple's Motion to Quash

6  and/or for a protective order regarding a subpoena.

7          In connection with that motion, there's a joint

8  stipulation supporting and opposing evidence.  There are

9  supplemental memoranda filed by each Plaintiff and moving party

10  Apple, at least one of which is supported by additional

11  evidence.  And then there are three applications to seal

12  documents in connection with the initial motion and joint

13  stipulation in evidence, and then in connection with each

14  supplemental memorandum.

15          We're going to start with the Motions to Seal -- or

16  the Requests to Seal.  We're going to go through these item by

17  item.  And we're going to start -- and I know it was a

18  different case, but at least some of the same Counsel were here

19  last week, or two weeks ago, where we talked about Local Rule

20  79-5.2.2, governs sealing.

21          Our protected order in this case also requires

22  parties, if they seek to seal documents, to proceed under Local

23  Rule 79.

24          And I'm just going to read, so that we all are on the

25  same footing.

5

1          This is Subsection B.

2          The heading is, "Documents designated by another as

3          confidential pursuant to a protective order."

4  And now I'll quote.  And this is a long quote:

5          "At least three days before seeking to file under

6          seal a document containing information previously

7          designated as confidential by another pursuant to a

8          protected order, the filing party must confer with

9          the person that designated the material confidential,

10          open paren, (the, (quote), 'designating party')

11          (close quote, close paren), "in an attempt to

12          eliminate or minimize the need for filing under

13          sealing by means of redaction. (period).

14          "If the document cannot be suitably redacted by

15          agreement, comma, the filing party may file an

16          application pursuant to Subsection A, comma, but the

17          supporting declaration must identify the material

18          previously identified as confidential, (comma), as

19          well as the designating party, (comma), and must

20          describe in detail the efforts made to resolve the

21          issue. (period).

22          I'm going to skip a sentence.  And then:

23          "Subsequently: (colon) --

24  Again, we're just going to talk about little i:

25          "Within four days of the filing of the application,

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 7
-87-

1              comma, the designating party must file a declaration

2              establishing that all or part of the designated

3              material is sealable by showing good cause or

4              demonstrating compelling reasons why the strong

5              presumption of public access in civil cases should be

6              overcome, (comma), with citations to the applicable

7              legal author -- legal standard. (period).

8          I'm going to end it there.  There's discussions about

9      if the designating party maintains that only a portion of the

10     material is sealable, the designated party should file, with

11     that declaration, a copy of what the proposed portion to be

12     sealed should be highlighted.

13         The last sentence of Subsection (i) provides,

14     (quote):

15             "Failure to file a declaration or other required

16             document may be deemed sufficient grounds for denying

17             the application."  (period, close quote).

18     Then little i-2 -- so little ii.

19             "If the application is denied, the filing party may

20             file the document in the public case file, i.e.,

21             unsealed, no earlier than four days and no later than

22             ten days after the application is denied unless the

23             Court orders otherwise." (period).

24         All right.  So with that standard in mind, let's turn

25     to Docket Number 289.  And that is an application to seal --

7

1    I'm sorry -- Docket Number 280.  That is an application to file

2    certain documents under seal along with redacted versions, and

3    then, in conjunction with that Docket 281, which is sealed.

4           And I won't, at this moment, get into anything that

5    appears to be confidential or had been designated as

6    confidential in those documents, but I will momentarily.

7           The declaration in support of the sealing request --

8    and this all relates to the original motion, which is Docket

9    282.  So we're in Docket 281.  It's by Mr. Lerner, Counsel for

10   moving party Apple.  And it cites to the appropriate Local Rule

11   79-5.2.2.  And it says it seeks to seal portions of the joint

12   stipulation.  And there is a sealed version, which is

13   unredacted and then separately filed at Docket 280; 281 is a

14   redacted version, along with Exhibits H and N to the

15   declaration of Ilissa Samplin, and Exhibits 3 through 8 and 10

16   through 11, to the declaration of Mark Kachner -- I'm sorry, I

17   butchered that.  Is it --

18           **MR. RE:**  Kachner.

19           **MR. KACHNER:**  Kachner, thank you.

20           **THE COURT:**  Kat --

21           **MR. KACHNER:**  Kack --

22           **THE COURT:**  Kachner -- which are all submitted in

23   connection with the motion.

24           So I'll tell you, I preliminarily looked at the

25   Documents H and N; they're Exhibits H and N to Ms. Samplin's

Exhibit 7
-89-

8

1    declaration.  And I find, based on what's in front of me and

2    the reference to the Case 8:20-cv-48-JVS that a sufficient

3    showing has been made to seal those documents.

4           As to the exhibits to Mr. Kachner's declaration, let

5    me start by asking.  I didn't see it on the docket.  And I'll

6    start with you, Ms. Samplin, because it's Mr. Lerner's

7    declaration that seeks sealing.

8           Turning -- and I'm going to go in a quick aside,

9    turning to paragraph 7 of that declaration, at Docket 281, it

10   indicates that Exhibits 3 through 8, 10 through 11, to the

11   Kachner declaration, contain material designated as

12   confidential or confidential attorney eyes' only, "AEO," by

13   Plaintiff and/or Defendants True Wearables and Marcelo Lamego

14   under the protected order in this case.

15          And I'm going to start with you, Ms. Samplin.  To

16   your knowledge, has anyone filed a declaration, either from

17   Plaintiffs or Defendants, as required under Local Rule

18   79-5.2.2(b), as I previously read from?

19          **MS. SAMPLIN:**  Your Honor, I don't have knowledge of

20   that off the top of my head.  But it --

21          **THE COURT:**  All right.

22          **MS. SAMPLIN:**  -- doesn't mean it's going to happen.

23          **THE COURT:**  Okay.  I'll ask Plaintiffs.

24          Are you aware of anyone having filed a declaration as

25   required to maintain a request to seal an evidentiary showing

Exhibit 7
-90-

9

1    under -- or just right now, it's a yes or no question, okay --

2    under Local Rule 79.5.2.2(b), to support sealing of the

3    documents attached -- that are sought to be sealed, attached to

4    your declaration?

5            **MR. RE:**  No, Your Honor.

6            **THE COURT:**  All right.  So with that being the lay of

7    the land, tentatively, under the Local Rules, I could, based on

8    that alone, order the request for sealing denied.

9            But let's do this:  Let's go through these, because I

10   don't want to do anything that's going to create unnecessary

11   heartburn due to maybe an oversight by someone.  So let's pull

12   up -- and, unfortunately, my computer right now is really slow.

13   But let's go through Exhibits 3 through 8, comma, 10 through

14   11, from Mr. Kachner's declaration.

15           And the only -- you're the only person here between

16   Plaintiffs and Defendants, who I can hear from, about the --

17   any basis to grant the sealing request.

18           So let's start with Exhibit 3.  Which I think I'm

19   safe to say is -- let's characterize it as a portion of a

20   transcript of a deposition taken on May 20, 2021.  I don't know

21   if we want me to get more specific than that.

22           But from Plaintiffs' standpoint, is this transcript

23   something that needs to remain under seal?  Is there

24   appropriate evidentiary showing?  And if there hasn't, do you

25   want to try to make one now?

1       **MR. RE:**  Thank you, Your Honor.  This is a deposition

2  transcript of the Defendant in the litigation that Defendant's

3  Counsel designated confidential.

4       **THE COURT:**  All right.  Are you requesting

5  confidential or attorneys' eyes only treatment for it?

6       **MR. RE:**  Yes, Your Honor.

7       **THE COURT:**  You are?  I want to be clear.  The way it

8  works is, they had an opportunity -- the Defendants did -- had

9  an opportunity to support the sealing request that was made

10  here under the Local Rules.

11       They did not make an evidentiary showing.  But if we

12  have a kind of situation where someone made a mistake, they're

13  not here today -- I wish they were -- they're not here today.

14       And if there's something in here that maybe you, as

15  an officer of the Court, are going to tell me, "Well, you know,

16  Judge, there's something in here that I think that they've

17  expressed separately or in some other circumstance."

18       And if you want to take a few moments to review it, I

19  encourage you to.  But my tentative is to find that the sealing

20  requirements have not been met, and order that this be filed in

21  the public docket within four days, and that we're going to

22  talk about these things today.

23       So let me start with -- it was a bit of a litany of

24  questions.  It's not your -- you never requested attorneys'

25  eyes only or confidential treatment of this portion of the

11

1    transcript, correct?

2              **MR. RE:**  Correct.

3              **THE COURT:**  And by you, I mean your clients.

4              Defendants did.  Is there anything in there that --

5    and, again, I'm putting you in an awkward spot, and I'm just

6    asking if you can tell me anything that you see in there that I

7    should independently verify.

8              Because I'll tell you, I don't see anything in there

9    that looks some -- looks like something that rises to the level

10   of attorneys' eyes only substantively or even to the level of

11   confidential.  I largely see objections and colloquies between

12   Counsel here.

13             So tell me if you see anything.  And when you're

14   done, after you've had enough time to look at it, tell me if

15   there's anything in here that you think I should be concerned

16   with.

17             **MR. RE:**  I attended the deposition.  And I know

18   exactly what the situation is.  The deposition --

19             **THE COURT:**  This is Mr. Re?

20             **MR. RE:**  This is Mr. Re.  Under the protected order,

21   the parties are given 30 days in which to make the redactions.

22             At the time of this filing, the entirety of the

23   transcript has to be treated as confidential or AEO under the

24   protected order until a certain amount of time -- I believe

25   it's 30 days -- passes for the witness to then designate the

12

 1   portions they want to make AEO or confidential.

 2          The trouble was, at the time this was filed, the

 3   30-day --

 4          **THE COURT:**  Understood.

 5          **MR. RE:**  -- time passed.

 6          **THE COURT:**  So has there been any specific

 7   designation of any of this portion to your knowledge?

 8          **MR. RE:**  To my knowledge, no.

 9          **THE COURT:**  And do you see anything independently in

10   there that would -- that I should really look closely at,

11   because I'm inclined to deny the sealing request as to this

12   transcript?

13          You're not representing them.  I'm just asking you,

14   as an officer of the Court, sometimes things come up in

15   litigation where the parties know, "Hey, this is a very

16   sensitive topic for the other side."

17          **MR. RE:**  I believe that the Defendant has

18   over-designated.  I'm with the Court.  I think much has been

19   over-designated.

20          **THE COURT:**  Is there anything in here that is not

21   over-designated, from your view?  We're just talking about

22   Exhibit 3.

23          **MR. RE:**  In my opinion, nothing should be

24   designated --

25          **THE COURT:**  I don't even want you to give your

Exhibit 7
-94-

13

1   opinion.  It's more, has anything come to you from the

2   Defendants?

3           **MR. RE:**  Yes.  The Defendant has previously

4   designated documents that are inferentially referred to --

5           **THE COURT:**  We're going to be getting to those, I

6   believe.

7           **MR. RE:**  -- into the --

8           **THE COURT:**  We're going to be --

9           **MR. RE:**  -- deposition.

10          **THE COURT:**  -- getting to those.

11          **MR. RE:**  Particularly the deposition on page 327; the

12  email in question, which has been designated as confidential,

13  is --

14          **THE COURT:**  All right.  And I'll tell you --

15          **MR. RE:**  -- is discussed.

16          **THE COURT:**  -- that I've looked at that, and I don't

17  think that's confidential.

18          **MR. RE:**  I agree with you.

19          **THE COURT:**  All right.  So other than -- thank you

20  for relaying that information that's come from the Defendants

21  who were -- had notice of this hearing and are not appearing,

22  had an opportunity to file the required declaration, under

23  Local Rule 79.5.2.2(b), and did not.

24          So other than that, anything else you should -- that

25  I should look at closely that you're aware of?

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 7
-95-

14

1          **MR. RE:**  Nothing from the Plaintiff.

2          **THE COURT:**  All right.  So I'm going to deny the

3   motion -- the Request to Seal Exhibit 3 to the Kachner

4   declaration.

5          Let's move on to Exhibit 4.

6          And I should say that Exhibit 3, actually it's

7   several sessions of a deposition transcript of Mr. Lamego, just

8   to be clear for the record.

9          All right.  Exhibit 4 is, I believe, two emails.  I'm

10  not going to say the substance yet.  But the header -- I'll

11  put -- I'll say the date and time -- is an email dated

12  Wednesday, October 2, 2013, at 12:54 a.m.  It's a three-page

13  email followed by -- it's part of the same exhibit -- a

14  separate email, dated Wednesday, October 2, 2013, at 10:25 a.m.

15         I'll start with you, Ms. Samplin.  Are you aware of

16  any filing by Defendants seeking to support -- it's

17  Mr. Lerner's declaration -- seeking to support an evidentiary

18  finding to keep this document -- or to file this document under

19  seal?

20         **MS. SAMPLIN:**  I am not, Your Honor.

21         **THE COURT:**  All right.  On behalf of Plaintiffs,

22  either Mr. Re or Mr. Kachner, are you aware of any information

23  in the record -- let's just start with on the docket -- of an

24  evidentiary showing to support the continued sealing of

25  Exhibit 4?

15

1          **MR. RE:**  No, Your Honor.

2          **THE COURT:**  And is there anything in there -- and

3   I've reviewed it.  And it tentatively appears to me to not

4   contain anything that would rise to the level of -- and we're

5   looking at good cause here as opposed to compelling reasons --

6   but good cause to overcome the general presumption of public

7   access.

8          But tell me if you, first of all, on behalf of your

9   client, do you see anything in there that you think requires

10  sealing?

11         **MR. RE:**  No, Your Honor.

12         **THE COURT:**  And is there anything that you know of

13  from your dealings with Mr. Lamego or his Counsel -- Mr. Re had

14  mentioned that this is something that they had taken the

15  position, was -- is it attorneys' eyes only?  Is that how they

16  designated it, or just confidential?

17         **MR. RE:**  Just confidential.

18         **MR. KACHNER:**  Just confidential.

19         **THE COURT:**  All right.  That they find this document

20  confidential, other than generally attesting to that and

21  stating that in other portions of the litigation?

22         **MR. RE:**  We only know, having attended the Lamego

23  deposition, that he believes he kept it confidential because he

24  feels he has an obligation to Apple.

25         **THE COURT:**  Okay.  And just to be clear, Mr. Lerner's

Exhibit 7
-97-

16

1   declaration, the only basis for sealing the Request to Seal

2   anything in Mr. Kachner's declaration is the assertion that the

3   material had been designated confidential or AEO by Plaintiffs

4   and/or Defendants, correct?

5          **MR. RE:**   There's one item, Your Honor.  We requested

6   to True Wearables' Counsel that we could disclose this to

7   Apple.  And they put conditions on that.

8          **THE COURT:**  I recall that.  And I saw that there's

9   references in the briefing to that.  But here's my -- stepping

10  back, there's only one basis that's -- now it's in front of me.

11  There's a request to seal it.  The only basis for the request

12  to seal it is Mr. Lerner's statement that this document has

13  been designated confidential or confidential attorneys' eyes

14  only by Plaintiffs and/or Defendant.  Is that correct?

15         **MR. RE:**   It's misleading.  We only designated it --

16         **THE COURT:**  No, no, no.  I guess -- is there anybody

17  else?  Did Apple?  Has Apple attempted to designate this email

18  in connection with this motion?

19         **MR. KACHNER:**  No, Your Honor.

20         **THE COURT:**  Okay.  So we're just focusing on

21  Plaintiffs and/or Defendants.  I wish we knew who it was.  My

22  understanding is that you advised him that Defendants -- you

23  advised Apple that the Defendants had designated this as

24  confidential.  And then as pursuant to the protective order

25  would need to be filed under the procedures of Local Rule

Exhibit 7
-98-

17

1   79-5.2.  But no one has filed any evidentiary showing with

2   respect to this email; is that correct?

3           **MR. KACHNER:**  Correct.

4           **THE COURT:**  All right.  And other than the general

5   history of the litigation where they have stated they consider

6   it confidential, is there anything before today's hearing or

7   anything that you've been advised, recognizing that they didn't

8   initially want to share it with Apple.  Anything other than

9   that that contains information in here that's been relayed to

10  you as somehow particularly sensitive in this eight-year-old,

11  nearly eight-year-old email involving being approached for

12  potentially joining an executive team?

13          **MR. RE:**  No, Your Honor.

14          **THE COURT:**  All right.  I find that I'm going to deny

15  the request to seal Exhibit 4.  And as with all the exhibits I

16  decline, we're going to follow the procedure in Local Rule

17  79-5.2 that that's ordered to be filed in the public docket

18  between four 10 days from today.

19          Let's move on to Exhibit 5, looks like a meet-and-

20  confer correspondence.  And I think this was at least generally

21  what Mr. Kachner was talking about, that there was

22  communications with between counsel for Plaintiffs and

23  Defendants regarding certain records and this motion.

24          Then I'll ask Ms. Samplin, are you aware of anything

25  that's been submitted by Defendants that would support an

Exhibit 7
-99-

18

1   evidentiary showing to continue to seal Exhibit 5?

2          **MS. SAMPLIN:**  No, Your Honor.

3          **THE COURT:**  All right.  And on behalf of Plaintiffs,

4   do Plaintiffs contend that Exhibit 5 contains confidential or

5   attorneys'-eyes-only information under the protective order?

6          **MR. KACHNER:**  No, Your Honor.

7          **THE COURT:**  All right.  Having independently reviewed

8   it, I don't see anything in Exhibit 5 that would warrant or

9   justify any finding of confidentiality or other basis to

10  overcome the general presumption of public access.  And there's

11  been no evidentiary showing as required under Local Rule

12  79-5.2.2(b), so I'm going to deny the motion to seal Exhibit 5.

13         Exhibit 6 is another deposition transcript.  This is

14  a deposition, I won't say of whom, but of a representative of

15  Plaintiffs that was designated attorneys' eyes only.  And

16  again, it does not appear that there's been an evidentiary

17  showing with respect to Exhibit 6.

18         Ms. Samplin, are you aware of any that I have missed?

19         **MS. SAMPLIN:**  I am not, Your Honor.

20         **THE COURT:**  All right.  On behalf of Plaintiffs,

21  since I can't tell from Mr. Lerner's declaration because it

22  says "and/or," I can't tell who designated this.  Do you know

23  who designated this for purposes of our hearing here today,

24  designated it as attorneys' eyes only?

25         **MR. KACHNER:**  Understood, Your Honor.

19

 1          **THE COURT:**  Okay.  And what is your view about

 2    whether it should continue to be attorneys' eyes only or

 3    confidential; or maybe more generally, should it be filed under

 4    seal or not?

 5          **MR. KACHNER:**  There are some materials in here, Your

 6    Honor, that we would like to maintain under seal.

 7          **THE COURT:**  All right.  Even though the showing is

 8    late, I'm going to allow you, counsel for Plaintiffs, to file a

 9    supplemental declaration setting forth, as required under Local

10    Rule 79-5.2.2(b), with highlighting what portions of Exhibit 6

11    you believe are -- should be maintained under seal, with an

12    evidentiary showing as to why.  And that filing may itself be

13    under seal.  And then we'll make a ruling on Exhibit 6.

14          All right.  Let's turn to Exhibit 7.  It looks like a

15    series of a family of email chain.

16          Ms. Samplin, do you have any -- is there anything in

17    the docket that suggests that any party made an evidentiary

18    showing to continue sealing Exhibit 7?

19          **MS. SAMPLIN:**  No, Your Honor.

20          **THE COURT:**  And on behalf of Plaintiffs, did you

21    designate this confidential or attorneys' eyes only or did

22    Defendants designate that?

23          **MR. KACHNER:**  Plaintiffs designated Exhibit 7.

24          **THE COURT:**  All right.  They had an opportunity and

25    did not submit any follow up and did not appear at the hearing

Exhibit 7
-101-

20

1    -- have not appeared at the hearing this morning.

2            Is there anything that you'd like to offer?  And

3    Mr. Kachner, you raised your hand.

4            **MR. KACHNER:**  I just want to be clear.  Plaintiffs

5    designated this document.

6            **THE COURT:**  Oh you said "Plaintiffs".  All right.

7    Well what's the basis for it?

8        **(Pause)**

9            **MR. KACHNER:**  We withdraw the confidentiality

10   designation, Your Honor.

11           **THE COURT:**  I don't want to rush you.  Here's what I

12   really don't want to do.  I don't want to have someone come

13   rushing back and say, whoops, we forgot this, so take as much

14   time as you need.  And if you withdraw it then it will be

15   withdrawn and the request to seal as to Exhibit 7 will be

16   denied but take your time.

17       **(Pause; Counsel confer).**

18           **THE COURT:**  Mr. Re, you want to speak.

19           **MR. RE:**  Yes.  I wonder if we can include this with

20   Exhibit 6 and go back to see our clients.  We're a little

21   concerned that there's individual names and their immigration

22   status --

23           **THE COURT:**  All right.

24           **MR. RE:**  -- that's mentioned on the document.

25           **THE COURT:**  The same order for Exhibit 7 as to

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 7
-102-

21

1    Exhibit 6 that to the extent continued sealing is requested, I

2    need a basis for it and I need an evidentiary showing to

3    support it.  And if not all of the document needs to be sealed,

4    I need a redacted version and then a version highlighting -- a

5    clean and unredacted version but has the portions to be

6    redacted highlighted.  And that submission may be made under

7    seal.

8            Exhibit 8, this is a letter dated July 23rd, 2016.

9    On its face, it indicates that there may be a basis to maintain

10   it confidential although the basis is an evidentiary basis as

11   opposed to meaning the basis to treat it as restricted that's

12   on the face of it is as an evidentiary privilege, not as a

13   public privilege.

14           So I'll ask you again, Ms. Samplin, any information

15   that you're aware of in the docket that I've missed about an

16   evidentiary showing to keep Exhibit 7 confidential or under

17   seal?

18           **MS. SAMPLIN:**  Are we on Exhibit 7 or Exhibit 8?

19           **THE COURT:**  You're right, Exhibit 8.

20           **MS. SAMPLIN:**  No, Your Honor.

21           **THE COURT:**  All right.  And on behalf of Plaintiffs,

22   who designated Exhibit 8?

23           **MR. KACHNER:**  This was designated by Defendants.

24           **THE COURT:**  All right.  Anything in there that you're

25   aware of that -- bearing in mind if it's filed in the public

22

1  docket, it doesn't alter any -- for lack of a better term --

2  "mediation privilege" or "settlement communication privilege"

3  but that's the one that caused me a little bit of pause.

4        **MR. KACHNER:**  We do not maintain confidentiality --

5        **THE COURT:**  All right.  Exhibit -- I'm going to deny

6  the motion as to Exhibit 8.

7        And then we turn to Exhibit 10.

8        So Exhibit 8 I actually left off.  There are

9  attachments to Exhibit 8 that have photos.

10        I just want to make sure, none of that is an issue

11  for Plaintiffs, correct?

12        **MR. KACHNER:**  None of that's an issue for Plaintiffs.

13        **THE COURT:**  All right.  Turning to exhibit -- well

14  there's more even beyond that but it looks like some emails but

15  since there's been no evidentiary showing I'm going to deny the

16  application.

17        Exhibit 10 is additional transcript of a different

18  witness' deposition in this case.

19        Ms. Samplin, any information that you're aware of

20  that's on the record that any party made an evidentiary showing

21  to support a sealing request?

22        **MS. SAMPLIN:**  No, Your Honor.

23        **THE COURT:**  On behalf of Plaintiffs, who requested

24  this transcript to be treated confidential?

25        **MR. KACHNER:**  Defendants, Your Honor.

Exhibit 7
-104-

23

1       **THE COURT:**  All right.  And it looks like it's dated

2  back in December of 2020 so the earlier situation seems less at

3  issue.

4       Is there anything in this transcript that you appear

5  cause -- would cause -- would support just facially a continued

6  sealing of Exhibit 10?

7       **MR. KACHNER:**  No, Your Honor.  I would qualify that,

8  that this also falls in the category of documents that we

9  requested True Wearables' permission to disclose to Apple, and

10  even right before the filing they conditioned that disclosure.

11       **THE COURT:**  All right.  And there's a reference to an

12  investigation, a government investigation.  Is there anything

13  that you're aware of that that -- this wasn't sealed based on

14  some governmental request or agency request that something be

15  kept confidential.  Is that correct?  From your perspective?

16       **MR. KACHNER:**  I don't believe so, Your Honor.

17       **THE COURT:**  Okay. All right.  The motion will be

18  denied for lacking and evidentiary support as to Exhibit 10.

19       And lastly, Exhibit 11 is another email chain with

20  counsel.

21       Ms. Samplin, are you aware of any evidentiary basis

22  on the docket to support the continued or the request to seal

23  beyond Mr. Lerner's declaration for Exhibit 11?

24       **MS. SAMPLIN:**  No, Your Honor.

25       **THE COURT:**  Oh behalf of Plaintiffs, do you know who

24

1    designated Exhibit 11 to be treated as confidential?  It's not

2    facially stamped confidential.

3              **MR. KACHNER:**  Plaintiffs designated this document,

4    Your Honor.

5              **THE COURT:**  Plaintiffs did.

6              **MR. KACHNER:**  Yes, Your Honor.

7              **THE COURT:**  All right.  What's the basis?

8              **MR. KACHNER:**  There is material in here discussing

9    confidential development work that was going on at Masimo and

10   Cercacor.

11             **THE COURT:**  All right.  Other than that, is there

12   anything that Plaintiff based its designation on?

13             **MR. KACHNER:**  No, Your Honor.

14             **THE COURT:**  All right.  As with Exhibit 6 and 7

15   authorized Plaintiff to make a filing with respect to

16   Exhibit 11 that sets forth what the legal basis for the

17   sealing, what an evidentiary foundation would be for sealing.

18   And take proposed redacted (indisc. papers shuffling) if

19   anything can be publicly disclosed to propose redacted and a

20   unredacted version with the proposed redactions highlighted in

21   the unredacted version.

22             So that's with respect to just the motion.  As I

23   noted, I don't see a problem with Exhibits H and N to

24   Ms. Samplin's declaration based on what's in the record and

25   what's in the record in the other case being under seal, but

Exhibit 7
-106-

25

1   everything else will be unsealed with an unredacted copy to be

2   filed within four days, except for Exhibits 6, 7 and 11 and

3   we'll await further ruling on that based on a further showing

4   by Plaintiffs.

5          In terms of the two supplemental memoranda, I think

6   that Apple's supplemental memoranda was only -- sought an

7   under-seal filing because argument portions in the supplemental

8   memoranda referred to other materials that were provisionally

9   sought sealing, so we're going to take that up after everything

10  gets final.  And we'll direct that with respect to Apple's

11  supplement -- and also the joint stipulation -- anything that

12  is ordered unsealed will no longer be a basis to redact from

13  the joint stipulation.  Anything that remains sealed will

14  remain.  And so since it's a joint submission, we're going to

15  have to have the parties work together to submit a redacted

16  joint -- a newly redacted joint stipulation with everything

17  that's been ordered not sealed to be included in that new

18  redacted joint stipulation to be filed.  Everybody understand

19  that?

20         And the same applies to the supplemental memoranda.

21         There are some exhibits to Plaintiffs' supplemental

22  memoranda.  I think it's Exhibit 16 which Plaintiff seeks

23  sealing.  And let's pull that up.  And while I'm doing that

24  I'll ask since this is at Plaintiffs' request -- well let me

25  take a look.

1          **(Pause)**

2                **MR. RE:**  Your Honor, I might be able to make this one

3      easy for you.

4                **THE COURT:**  All right.

5                **MR. RE:**  The Exhibit 16 is a continuation of an email

6      chain that was previously filed at Exhibit 5.  And there's

7      nothing new in the additional discussion that would warrant

8      sealing.  So the same treatment applies to Exhibit 5 which was

9      unsealed, I believe.

10               **THE COURT:**  All right.  I guess -- let me ask you.

11               Who -- although you did the declaration, did you do

12     the declaration seeking sealing of Exhibit 16 because

13     Defendants had designated Exhibit 16 confidential?

14               **MR. RE:**  That's right, Your Honor.

15               **THE COURT:**  All right.  And you're not aware of any

16     filing by Defendants providing an evidentiary basis to keep

17     that document under seal since you filed your request to seal?

18               **MR. RE:**  No, Your Honor.

19               **THE COURT:**  And do you independently see anything

20     from your perspective that would require sealing with respect

21     to Exhibit 16?

22               **MR. RE:**  No, Your Honor.

23               **THE COURT:**  All right.  Exhibit 16 -- the request to

24     seal Exhibit 16 is denied.  And it will be ordered to be filed

25     on the public docket four days after today.

1          And your joint -- I don't actually recall any

2   redactions from your joint or your supplemental memoranda --

3   Oh, there are, okay.

4          **MS. SAMPLIN:**  For Apple, Your Honor?

5          **THE COURT:**  Pardon?

6          **MS. SAMPLIN:**  Apple you mean?

7          **THE COURT:**  I was talking about for Plaintiffs but I

8   see that there are.

9          So you're each going to go through -- for your

10  supplemental memoranda, you're going to file a new one.  And

11  it's going to be redacted, only the materials that have been

12  approved for redaction which as of right now is only the two

13  exhibits to Ms. Samplin's declaration, and may also include the

14  three exhibits, Exhibits 6, 7 and 11 from Mr. Kachner's

15  declaration.  Anything that's in the joint stipulation or

16  either supplemental memoranda that's maintained as redacted

17  will be -- as deemed confidential will be maintained as

18  redacted.  Anything else that's redacted based on one of the

19  other things that the application had been denied, you're going

20  to be filing a new one but we're going to wait four days so

21  we're going to get new -- what did I say, the rule say it's

22  either four to 10 days you're going to be filing all this stuff

23  and so I do -- actually, you know what?  For your supplemental

24  memoranda and your joint stipulations, you're going to have to

25  wait to file that until I've ruled on the new submissions by

Exhibit 7
-109-

28

1   Plaintiffs with respect to Exhibits 6, 7 and 11.  So we'll hold

2   off on that and there'll be a separate order regarding those.

3          All right.  So that's the sealing.

4          **MS. SAMPLIN:**  Your Honor, I just have one question.

5          **THE COURT:**  Yeah.

6          **MS. SAMPLIN:**  Our supplemental memorandum only quotes

7   from Exhibit 8 which you just denied the motion so should we

8   just go ahead and file that and not wait --

9          **THE COURT:**  Wait --

10         **MS. SAMPLIN:**  -- or --

11         **THE COURT:**  Wait four days because that's what the

12  local rules provide.  It says "Unless by order of the court".

13  If we had Defendants here I would just do it now but we're

14  going to wait.  It doesn't mean that they have -- having had

15  both an ability to comply with the rule as required and appear

16  here today that -- well I'm just going to leave it at that but

17  we'll have  it --

18         **MS. SAMPLIN:**  But we don't need to wait for your

19  further order on the other exhibit.

20         **THE COURT:**  Correct.  On that one once four days have

21  passed, you can go ahead and file it unless you hear otherwise

22  from the Court.

23         Okay.  Let's now turn to the substance.

24         And I'm going to speak about everything that's been

25  unsealed.  And in the event that anything changes on that,

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 7
-110-

29

1  we'll go back and have to perhaps designate from here on

2  forward this transcript confidential but for now it's not and

3  we're proceeding in a public fashion.

4          My tentative is to deny the motion in its entirety

5  with the possible exception -- I haven't decided -- as to

6  Request for Production Number 1 which is the entire human

7  resources employee file for Mr. Lamego and we can talk further

8  about that.  And I'm going to tell you that I'm using the

9  amended categories for document productions proffered by

10  Plaintiff in their portion of the joint stipulation as opposed

11  to what's in the original subpoena.

12          I find that, tentatively, that both the requested

13  categories of records and the topics for testimony are relevant

14  -- again, with a little proviso on the employee file -- are

15  relevant and are proportional to the needs to the case, taking

16  into account the somewhat heightened review under Rule 45

17  because Apple is a nonparty.  But I do find that the material

18  sought is relevant; it's narrowly crafted to go to those

19  issues; again, bearing in mind that even with the heightened

20  relevance standard of Rule 45, relevance is still broadly

21  construed.

22          To the extent Apple argues that confidential

23  information is sought, I find that the protective order in this

24  case is sufficient to protect any such interests and does not

25  overcome the need and proportionality for the information.

30

1    There's an argument that these requests duplicate requests for

2    documents in what Apple designated as a related case in Masimo,

3    et al. v. Apple, Inc; Case Number 8:20-cv-48-JVS.  And I think

4    that argument is somewhat related but not identical to Apple's

5    last argument that the subpoena is -- and they used the phrase

6    "and around" various limitations and discovery that were either

7    agreed to or imposed in that other case.  And on each of those

8    grounds I deny the motion and find that this is an appropriate

9    effort to obtain legitimate discovery.

10            And I'm not going to at this point make any findings

11   about Apple and counsel but I'm going to say that there is a

12   whiff of Three-card Monte going on here about getting documents

13   and finding documents and doing a shell game about where

14   Plaintiffs are supposed to go and the procedural mechanisms.

15            And we have -- it's actually referenced in one of the

16   exhibits that we were just discussing that's been unsealed --

17   an assertion of a common interest privilege.  And there's been

18   fingers pointing that you can't disclose this or you can't use

19   something disclosed in this case in another case -- and that's

20   what the protective orders do say that parties are limited.

21   And so to the extent a party is -- demands that a party obtain

22   discovery through another case because that party is not

23   allowed to obtain it or use it under the protective order in

24   that case, then that's a perfectly appropriate situation.

25            And when defendants who are apparently in a common

Exhibit 7
-112-

31

1    interest privilege with nonparty Apple assert that they're not

2    going to answer questions or provide information because they

3    deem it to be confidential and that confidentiality is alleged

4    to be held by Apple, these are all the factors that go into why

5    those final two arguments raised by Apple, that it's Plaintiffs

6    that are doing an end-around or -- and this may be my words,

7    not theirs -- playing games that I do not agree.  And I'm not

8    going to make a finding, at least not at this juncture, about

9    good faith or bad faith but I'll certainly be willing to hear.

10         So having heard my tentative, Apple -- Ms. Samplin,

11   it's Apple's motion.  I'll hear from you.

12         **MS. SAMPLIN:**  Thank you, Your Honor.  I just want to

13   clarify.

14         Our end run argument was about the fact that we

15   appeared before Your Honor a few weeks ago, on request in the

16   Apple case that related to Marcelo Lamego's duties at Apple or

17   job responsibilities and hiring and whatnot, and Your Honor

18   denied all but one of those requests.  And so the end run that

19   we are arguing is that they are trying to get documents of the

20   type that were deemed overbroad and irrelevant to the Apple

21   case.  They're now trying to get it in the True Wearables case

22   which has nothing to do with Apple or Marcelo Lamego's time at

23   Apple.  That's the argument we were trying to make.

24         I hear Your Honor on your other point but

25   respectfully, we believe if the discovery is not relevant in

Exhibit 7
-113-

1    the Apple case where Apple is a party, and the issues in the

2    case are tied to Lamego's work at Apple, we don't see how those

3    documents are relevant in this case where all of the causes of

4    action are about Lamego's time at True Wearables.

5              And then when you look at the supplemental memorandum

6    from Plaintiffs, their justification is basically an email from

7    Lamego, that was Exhibit 16, and then all they point to at the

8    end is that it's relevant to their breach of fiduciary duty

9    claim.  But that claim in the complaint is that Lamego breached

10   his fiduciary duty to Cercacor by, one, failing to disclose

11   facts that showed some noninvasive measurement technology was

12   not feasible, causing Cercacor to license this technology to

13   Masimo even though it did not work; and, two, failing to file

14   patents on subject matter he was instructed to include.  That

15   has nothing to do with Apple; that has nothing to do with the

16   email to Tim Cook; that has nothing to do with Apple hiring

17   Lamego or Lamego choosing to work at Apple.  So I'm just

18   struggling to see the relevance of the breach of fiduciary duty

19   claim which is the only purported basis set forth in the

20   supplemental memorandum for the discovery at issue.

21             **THE COURT:**  Where did Mr. Lamego work between the

22   time he worked at Cercacor and True Wearables?

23             **MS. SAMPLIN:**  He worked at Apple, Your Honor, but the

24   claims in this case are not based on his time at Apple.

25             **THE COURT:**  He's alleged to have taken trade secrets

33

```
 1    and used them at his new business, correct?

 2              MS. SAMPLIN:  His new business meaning True

 3    Wearables?

 4              THE COURT:  Yes.

 5              MS. SAMPLIN:  Yes, correct.

 6              THE COURT:  And that was roughly six, seven, eight

 7    months after he left Cercacor, correct?

 8              MS. SAMPLIN:  That is correct.

 9              THE COURT:  And in that intervening six, seven, eight

10    months he was at Apple, correct?

11              MS. SAMPLIN:  That is correct.

12              THE COURT:  And I have in front of me an email that

13    he sent to Apple's CEO.  Let's just say it speaks for itself as

14    to what Mr. Lamego was saying.  And then the timing is that

15    email was sent at what?  12:00 a.m.?  1:00 a.m.?  And then at

16    10:00 a.m. -- I'm sorry, even earlier than that.  What is it?

17    10:30 a.m. an Apple recruiter responds to that email that was

18    sent to Mr. Cook by Mr. Lamego, correct?

19              MS. SAMPLIN:  That's correct.

20              THE COURT:  Well, I'm going to tell you that in my

21    view, under the broad definition of relevance, even as somewhat

22    constricted by the Rule 45 requirements that we have tried to

23    avoid an undue burden on a party or on a nonparty that a

24    sufficient showing of relevance as to why the hiring and

25    potential grounds for termination, grounds which apparently --
```

Exhibit 7
-115-

34

1    it's unrebutted -- Mr. Lamego has refused to answer, stating

2    that it's because he owes a duty of confidentiality to Apple

3    that I think rise to the level of relevance, that rise to the

4    level of proportional to the needs of the case.

5            And again, I don't really want to but maybe I should

6    get into some other issues that this email disclosure raises.

7    I'm not going to but if we want to go talk about it more, let's

8    do that.  I'll leave it up to you, Ms. Samplin.

9            **MS. SAMPLIN:**  I defer to Your Honor as to what you --

10           **THE COURT:**  Well I guess what I'm saying is, argue as

11   much if you want.  If we really want to get into -- when you

12   say there's no connection or no relevance to this case for

13   information about Mr. Lamego's short stint at Apple, why he was

14   hired, why he was terminated, this email sheds a lot of light

15   on some issues.  It's not in and of itself going to be a case

16   dispositive but it's certainly --

17           I've done a lot of trials and you want to tell a

18   story.  And part of -- and I don't mean like a fairy tale.  I

19   mean there's a beginning, middle and end.  And Mr. Lamego's

20   time at Apple is fairly -- I'm not going to overstate it -- but

21   fairly described as part of the middle of this story.  And to

22   excise it would not meet with what a trial is for, what a jury

23   is for.  Again, I'm not going to do the trial; that's going to

24   be up to Judge Selna to see what comes in and what doesn't but

25   I'm not going to, at this stage, excise what I believe -- and

Exhibit 7
-116-

35

```
 1   this email seems to confirm -- there's a significant,

 2   potentially significant information in that six, seven or

 3   eight-month period that are part of the story.  And maybe

 4   there's nothing, maybe there's nothing to it but there's enough

 5   here to fall within the definition of relevance and

 6   proportionality to tell a story.

 7            And the email, the follow-up email from a recruiter,

 8   the whole history of the allegations in the case, and we'll see

 9   what happens.  It may be -- again, it may be nothing; there may

10   be nothing to it but it appears relevant and it appears

11   proportional.

12            And in terms of the end-run language -- well, I think

13   that there's more going on here than -- I'm going to leave it

14   at that.  There's more going on here.  And I have some concerns

15   about some of the things that are going on but I'm just going

16   to leave it at that and give you an opportunity, Ms. Samplin,

17   to argue anything else that you want on anything in my

18   tentative or anything else.

19            MS. SAMPLIN:  Well, Your Honor, can we talk about --

20   or did you want to do it separately, the personnel file?

21            THE COURT:  Sure, let's talk about the personnel

22   file.  I'll tell you my concerns are it's -- somebody's

23   personnel file could contain a lot of things that I don't think

24   are necessarily relevant, things like medical leave, things

25   like reasonable accommodations.  I don't know if any of these
```

1    things exist; I don't have a factual basis.  Mr. Lamego who I

2    kind of would have thought would have filed something to the

3    extent my concerns are based on his right to privacy, he didn't

4    and he's not here.  It's kind of why I'm surprise -- one of the

5    reasons I'm surprised his counsel isn't here.  But that said, I

6    do still have to take everything into account.

7         We have a protective order but we have Rule 45.  I

8    don't know how burdensome it would be to produce the personnel

9    file but maybe we can get some clarification on why the

10   entirety of the personnel file is relevant and proportional.

11        But first of all, it's your motion, Ms. Samplin.  And

12   having heard my thoughts, you tell me what you think.

13        MS. SAMPLIN:  I believe that the request for the full

14   personnel file is overbroad and not proportional.  And if we're

15   going based on Your Honor's articulation of relevance and why

16   you believe certain of these requests fit in the relevance

17   standard, then I would argue that the requests that they're

18   going to get, if you're going to deny our motion, elsewhere

19   between Requests for Production 2 to 5, as modified -- because

20   I understand we're going by their modified requests for

21   production -- they're getting the information that you've

22   articulated as relevant.  I don't see why they need to open up

23   an entire personnel file which Your Honor already said did need

24   to be produced in the Apple case.

25        THE COURT:  well let's -- to some extent the Apple

37

```
 1   case had different issues.  There where what?  Ten or 12 former
 2   employees governed by the request at issue in that case,
 3   although there were one or two that related to Mr. Lamego and
 4   the issues are somewhat subtly different.  And in the Apple
 5   case, Mr. Lamego wasn't a party whereas here, I'm just -- again
 6   I'm surprised he's not here to assert a right to privacy
 7   because that would be the primary basis.
 8            I don't really see -- I don't know how big his
 9   personnel file is, considering the number of motions, both in
10   this case and the related case.  From a comparison standpoint,
11   I don't imagine the photocopying costs of a personnel file are
12   unduly burdensome or expensive under Rule 45 but that's the
13   only one that I'm unsure about and particularly considering.
14   I'm tentatively going to grant it as to all those other
15   categories.
16            So anything else, Ms. Samplin?
17            MS. SAMPLIN:  Yes.  So Your Honor I just want to
18   point you to page 1 in our Supplemental Memorandum because you
19   are correct that requests in the Apple case did have that
20   definition of former employees that was broader and went beyond
21   Lamego.
22            But then we specifically spoke about the personnel
23   file as it related to Lamego.  And on page 64 of the transcript
24   you reiterated that you weren't compelling Apple to produce the
25   entire HR files of Lamego.  I hear you that Lamego is a party
```

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 7
-119-

38

1  here and he's not here to assert privacy interests but we still

2  think it's overbroad and not proportional to the needs of the

3  case, particularly if you are going to grant the other requests

4  for production.

5          **THE COURT:**  All right.  Anything further?

6          **MS. SAMPLIN:**  I guess I would just ask for

7  clarification.

8          Your tentative on Requests 2 through 5, that's for

9  all modified versions of those requests.

10         **THE COURT:**  Yes.

11         **MS. SAMPLIN:**  Right?  Okay.

12      **(Pause)**

13         I guess I would still argue that I think Request

14  Number 2, for example, is too broad because weren't limited by

15  Plaintiffs to "documents sufficient to show".  They were just

16  enlarged to "documents and communications".  So we're now

17  requesting documents and communications related to the hiring

18  of Lamego.  I understand they dropped the word "all" but the

19  fact that they've used documents sufficient to show elsewhere

20  shows that their request for documents, as opposed to all

21  documents is really just the same thing.  And so I think the

22  request is still broad -- is still overbroad.

23         **THE COURT:**  Anything further?

24         **MS. SAMPLIN:**  Are we going to deal with the

25  deposition topic separately?

Exhibit 7
-120-

39

1          **THE COURT:**  No.  It's your motion.  Anything else you

2   want to raise with respect to the motion?

3          **MS. SAMPLIN:**  Yes.  So I would say that I think the

4   deposition topics are unnecessary if Your Honor is granting the

5   request -- sorry -- is denying the motion with respect to

6   Requests 2 through 5.  The deposition topics get at largely the

7   same material.  And I would suggest at a minimum the Plaintiff

8   should get the documents -- if we're being ordered to produce

9   the documents -- see what's in the documents and then decide.

10  And maybe we can work together and meet and confer as to

11  whether a deposition is actually necessary from a nonparty in

12  this case on the same exact topics that they're seeking

13  documents about.

14          **THE COURT:**  Well the good news is that will be my

15  order with one little proviso.  Apple will be ordered to

16  produce the documents first.  And then once the documents are

17  received, the 30(b)(6) or the Rule 45 deposition will proceed.

18  And if for whatever reason Plaintiff doesn't need it any

19  further or doesn't want it any further, they can cancel it but

20  it will be ordered and it will be ordered to take place after

21  the documents are received.

22          Anything further?

23          **MS. SAMPLIN:**  The deposition topics, Your Honor.

24      **(Pause)**

25          I would also just add, I think the deposition topics

Exhibit 7
-121-

40

1   were not revised and they still go beyond the revised requests

2   for production.  And so again, I think the deposition is not

3   necessary here on these broad topics, getting at all

4   communications that were had between Apple and Marcelo Lamego

5   related to hiring or termination.  And I think the documents

6   are sufficient in that regard.  And if they're not, if the

7   Court deemed them not, the deposition should be tailored to the

8   revised topics.

9           **THE COURT:**  Anything further?

10          **MS. SAMPLIN:**  No, Your Honor.

11          **THE COURT:**  All right.  On behalf of Plaintiffs, I'm

12   telling you, I'm inclined at this point to stick with my

13   tentative, including the tentative to deny the request for the

14   entirety of Mr. Lamego's personnel file.

15          If there's something specific, other than what's

16   already been granted, that there's a proffer of relevance, I'll

17   hear it.  But I'm, at this point, inclined to stick with my

18   tentative.  But you can argue anything you wish.

19          **MR. RE:**  Well, I agree with the tentative.  And we

20   have no interest in trying to invade his right to privacy on

21   the medical.  And those types of issues are obviously not of

22   interest to us at all.

23          And I haven't seen any evidence of burden.  And I

24   think the Court's correct.  And I agree with tentative.

25          I just want to correct one thing on the record.

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 7
-122-

41

 1    Ms. Samplin repeatedly has stated as if this Court has denied

 2    the Apple Motion to Compel.  And I agree with you, it's

 3    slightly different circumstances.

 4           But just so the record is clear, we submitted the

 5    order from that Apple hearing.  And the reason why 236, 237,

 6    and 239 were denied, they were denied as moot.  Because Apple

 7    agreed to produce the documents with respect to Lamego and

 8    O'Reilly.

 9           So it's not correct that these motions were just

10    denied outright.  They were denied as moot, as unnecessary

11    because they did agree to produce, even in the Apple case, the

12    Lamego-related documents.  So I wanted that to be clear.

13           And with regard to this discussion we're having now

14    about the Cook email and all of that, they had the Cook email,

15    they had all the evidence, and their supplemental memorandum

16    ignored the notice of related cases, ignored the confidential

17    agreement, ignored the Tim Cook email, and, as you noted, they

18    didn't even contest that Lamego is not giving us the

19    information, because he's saying, "Go to Apple."

20           And I attended that Lamego deposition.  And his --

21    he's not even taking the view that this stuff is irrelevant.

22    He's just taking, you know, "Go to Apple.  I don't want to be

23    sued by Apple."

24           So you're right.  Lamego himself is not even

25    contesting the relevance of this information.  He's just not

42

```
 1   comfortable with us seeing it because he's afraid of Apple.

 2              I have nothing further, and I agree with the

 3   tentative.

 4              THE COURT:  All right.  The tentative order, with

 5   respect to the motion itself, Docket 282, will be the order of

 6   the Court.  There will be a written order to follow.  The

 7   motion will be denied with the exception of Category I, the

 8   entirety of the personnel file.  I'm not going to order that.

 9   I didn't hear anything about some sub-information other than

10   what's contained in Request Numbers 2 through 5.

11              So that will be the order of the Court.  And in terms

12   of the sealing applications, the three sealing applications we

13   mentioned, the request to seal the two exhibits to

14   Ms. Samplin's declaration, Exhibits H and N, those -- that

15   request will be granted as to those, and it will be denied as

16   to Exhibits 3, 4, 5, 9, and 10 to the declaration of

17   Mr. Kachner, with respect -- and that's the initial declaration

18   of Mr. Kachner -- with respect to Exhibit 6, 7, and 11.

19              Apple is -- or Plaintiffs are ordered to file a

20   supplemental declaration under seal that provides their grounds

21   for continued sealing as to those exhibits, and an evidentiary

22   showing in support of those grounds, and newly redacted and

23   highlighted versions of those exhibits, to only seek to redact

24   those portions as to which confidentiality or attorneys' eyes

25   only or whatever the legal basis for sealing is made.
```

Exhibit 7
-124-

43

```
 1              And as to the, I think it was Exhibit -- what did we
 2    say Exhibit 12 in -- filed by -- in Mr. Kachner's declaration,
 3    in support of Plaintiffs' supplemental memorandum, that request
 4    to seal is denied.
 5              MS. SAMPLIN:  I think it's Exhibit 16, Your Honor.
 6              THE COURT:  Oh, 16.  I'm sorry.  Thank you.
 7              Exhibit 16, that request is denied.  All those
 8    documents as to which requests to seal have been denied are to
 9    be filed within four to ten days from today, on the public
10    record.
11              And Apple's showing -- how much time do you think you
12    need to make your showing with respect to Exhibits 6, 7, and
13    11?
14              MR. SPEAKER:  Maybe by Monday.
15              THE COURT:  All right.
16              MR. SPEAKER:  Monday is fine, Your Honor.
17              THE COURT:  By Monday, June 28th.  Apple will file
18    that request.
19              And then I know this is a lot.  Apple's supplemental
20    memoranda should be refiled without any item under seal, let's
21    say, by Tuesday, June 29th -- and I may have said, "July 28th"
22    earlier -- June 28th -- by Tuesday, June 29th.
23              And then the joint stipulation, the parties are to
24    meet and confer and determine, after this hearing and the
25    rulings, what still needs to be redacted, and then to file a
```

44

1   redacted version of the joint stipulation with only the

2   provisions that remain under seal redacted.

3           And Plaintiffs' supplemental memorandum, same with

4   that, because there were some provisions in the supplemental

5   memorandum that are redacted -- or that were redacted because

6   of earlier filings.

7           Does that all make sense?

8           **MR. SPEAKER:**  Yes, Your Honor.

9           **THE COURT:**  Any questions?

10          In terms of the timing of the production, I guess,

11  since I'm denying the motion, I don't necessarily want to get

12  into timing.  It's not really before me.  It was a Motion to

13  Quash.  So the subpoena goes forward.  Obviously, the return

14  date has passed.

15          I'd be inclined to say ten days, produce documents.

16  And when is our discovery cutoff in this case?  It's already

17  passed, right?

18          **MR. RE:**  No.

19          **MR. KACHNER:**  Yes, Your Honor.  True Wearables,

20  (audio glitch).

21          **THE COURT:**  Okay.  And it was in May, right?

22          **MR. RE:**  Yes.  We're now in expert discovery.

23          **THE COURT:**  Okay.  So let's --

24          **MS. SAMPLIN:**  Your Honor, I would just ask, with the

25  July 4th holiday, I'm just -- it's just going to be a little

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 7
-126-

45

 1    tough for -- our client shuts down the arm of production.

 2          **THE COURT:**  Well, how much -- can I ask you -- of the

 3    requested documents, how much is different from what I assume

 4    your clients are already gathering in the 20-48 case?

 5          **MS. SAMPLIN:**  Your Honor, honestly, most of these

 6    requests were denied in that case, so -- or they were narrowed.

 7    I mean, I just do want to want to say --

 8          **THE COURT:**  All right.  We don't need to hear

 9    anymore.  We've got trial dates, Selma has trial dates.

10    They've got expert discovery cutoffs; they've got motion

11    deadlines coming up.

12          There was no expedited request for a hearing on this

13    motion, so I won't make an unreasonably short response.  But

14    for June 24th, I'm not really sure why Friday, July 2nd

15    wouldn't be a reasonable deadline to get what, to me, for a guy

16    that worked at Apple for seven months, we're not talking

17    about -- I don't think.

18          I don't see anything in front of me that would

19    suggest that we're talking about a substantial amount of

20    documents.  There may be work to locate them.

21          **MS. SAMPLIN:**  I'm just saying the client is closed on

22    July 2nd.  And I believe July 1st.  So that's my hesitation.

23    I'm not sure about July 1st, but I know July 2nd.  So that's my

24    hesitation.

25          **THE COURT:**  Apple, as a company, company-wide is

Exhibit 7
-127-

```
 1   closed?

 2           MS. SAMPLIN:  Production.  The production team that

 3   does the productions for us.

 4           THE COURT:  When is your expert discovery cutoff?

 5           MR. SPEAKER:  August.

 6           MR. SPEAKER:  Opening reports have already been

 7   served.  August is --

 8           MR. SPEAKER:  Yeah.  We're in the middle of rebuttal

 9   reports.  So we probably have about six weeks.

10           THE COURT:  All right.  Well, I'm not sure that this

11   has -- I don't know you case well enough to know how much this

12   has to do with expert reports.

13           But I'll tell you what, I'll give Apple until July

14   7th, which is 13 days.  And the parties are to schedule the

15   deposition testimony to take place expeditiously after the

16   production and the full production of documents.

17           All right.  Is there anything further that I need to

18   take up this morning with request to the motions, the sealing

19   applications, or any other matter?

20           On that general question, I'll start with Plaintiff.

21           MR. RE:  Nothing further from the Plaintiff.

22           THE COURT:  All right.  From Apple?

23           MS. SAMPLIN:  I do just want to state on the record

24   that I think Mr. -- just to the extent there was a suggestion

25   by Mr. Re that we have somehow mislead the Court as to what was
```

47

1  ordered or agreed to in the Apple case, our supplemental

2  memorandum is clear.  On page 2, we said Apple voluntarily

3  agreed to produced.  And we referred to RFP 236.

4           So I just want to correct the record before the

5  Court.  I don't think there was any effort.  I know there

6  wasn't an effort to mislead the Court as to what Apple

7  voluntarily agreed to do in the Apple case.

8           **THE COURT:**  We'll leave it at that.  I'm not making

9  any findings one way or another right now.

10           I'll tell Apple I almost did.  And I'm not going to,

11  based on what seems to be going on, on some of these issues.

12  But we're just going to leave it -- we're going to leave it at

13  that.

14           All right.  So we are adjourned.

15       **(Proceeding Concluded)**

16

17

18

19

20

21

22

23

24

25

Exhibit 7
-129-

48

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 26, 2021

          Signed                                    Dated

*TONI HUDSON, TRANSCRIBER*

Exhibit 7
-130-

# EXHIBIT 10

Newsroom

Search Newsroom          Popular Topics

PRESS RELEASE

November 15, 2011

# Apple Names Arthur D. Levinson Chairman of the Board

## Robert A. Iger, President & Chief Executive Officer of The Walt Disney Company, Joins Apple's Board

CUPERTINO, California—November 15, 2011—Apple® today named Arthur D. Levinson, Ph. D. as the Company's non-executive Chairman of the Board. Levinson has been a co-lead director of Apple's board since 2005, has served on all three board committees— audit and finance, nominating and corporate governance, and compensation— and will continue to serve on the audit committee. Apple also announced that Robert A. Iger, President and Chief Executive Officer of The Walt Disney Company, will join Apple's board and will serve on the audit committee.

"Art has made enormous contributions to Apple since he joined the board in 2000," said Tim Cook, Apple's CEO. "He has been our longest serving co-lead director, and his insight and leadership are incredibly valuable to Apple, our employees and our shareholders."

"Bob and I have gotten to know one another very well over the past few years and on behalf of the entire board, we think he is going to make an extraordinary addition to our already very strong board," said Tim Cook. "His strategic vision for Disney is based on three fundamentals: generating the best creative content possible, fostering innovation and utilizing the latest technology, and expanding into new markets around the world which makes him a great fit for Apple."

"I am honored to be named chairman of Apple's board and welcome Bob to our team," said Art Levinson. "Apple is always focused on out-innovating itself through the delivery of truly innovative products that simplify and improve our lives, and that is something I am very proud to be a part of."

Exhibit 10
-138-

"Apple has achieved unprecedented success by consistently creating high quality, truly innovative products, and I am extremely pleased to join the board of such a wonderful company," said Bob Iger. "Over the years, I have come to know and admire the management team, now ably led by Tim Cook, and I am confident they have the leadership and vision to ensure Apple's continued momentum and success."

Levinson is chairman of Genentech, Inc. and a member of the Roche Board of Directors. He joined Genentech as a research scientist in 1980, and served as Genentech's Chief Executive Officer from 1995 to 2009. He is also a director of Amyris, NGM Biopharmaceuticals, Inc., and the Broad Institute of MIT and Harvard. Levinson currently serves on the Board of Scientific Consultants of the Memorial Sloan-Kettering Cancer Center and the Advisory Council for the Lewis-Sigler Institute for Integrative Genomics. He has authored or co-authored more than 80 scientific articles and has been a named inventor on 11 United States patents. In 2008, he was elected to the American Academy of Arts & Sciences. Levinson received his Bachelor of Science degree from the University of Washington and earned a doctorate in Biochemical Sciences from Princeton University.

Iger is the steward of the world's largest media company and some of the most respected and beloved brands around the globe. He has built on Disney's rich history of unforgettable storytelling, with the acquisition of Pixar (2006) and Marvel (2009), two of the entertainment industry's greatest storytellers. Always one to embrace new technology, Iger has made Disney an industry leader at the forefront of offering its creative content across new and multiple platforms. He is a member of the board of directors for the National September 11 Memorial & Museum and Lincoln Center for the Performing Arts, Inc. He became a board member of the US-China Business Council in June 2011. In June 2010, President Barack Obama appointed him to the President's Export Council, which advises the president on how to promote US exports, jobs and growth. He is also a member of the Partnership for a New American Economy, a coalition of mayors and business leaders from across the United States that support comprehensive immigration reform. Iger is a graduate of Ithaca College.

Apple designs Macs, the best personal computers in the world, along with OS X, iLife, iWork and professional software. Apple leads the digital music revolution with its iPods and iTunes online store. Apple has reinvented the mobile phone with its revolutionary iPhone and App Store, and has recently introduced iPad 2 which is defining the future of mobile media and computing devices.

**Press Contacts:**
Katie Cotton

Exhibit 10
-139-

Apple

katiec@apple.com

(408) 974-7269

Steve Dowling

Apple

dowling@apple.com

(408) 974-1896

© 2011 Apple Inc. All rights reserved. Apple, the Apple logo, Mac, Mac OS and Macintosh are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

**The latest news and updates, direct from Apple.**

**Read more ›**

Newsroom          Apple Names Arthur D. Levinson Chairman of the Board

| **Shop and Learn** | **Services** | **Apple Store** | **For Business** | **Apple Values** |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple TV+ | Shop Online | Shop for Business | Education |
| iPhone | Apple Fitness+ | Genius Bar | | Environment |
| Watch | Apple News+ | Today at Apple | **For Education** | Inclusion and Diversity |
| TV | Apple Arcade | Apple Camp | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for K-12 | Racial Equity and Justice |
| AirPods | Apple One | Refurbished and Clearance | Shop for College | Supplier Responsibility |
| HomePod | Apple Card | Financing | | |
| iPod touch | Apple Books | Apple Trade In | **For Healthcare** | **About Apple** |
| AirTag | App Store | Order Status | Apple in Healthcare | Newsroom |
| Accessories | | Shopping Help | Health on Apple Watch | Apple Leadership |
| Gift Cards | **Account** | | Health Records on iPhone | Career Opportunities |
| | Manage Your Apple ID | | | Investors |
| | Apple Store Account | | **For Government** | Ethics & Compliance |
| | iCloud.com | | Shop for Government | Events |
| | | | Shop for Veterans and Military | Contact Apple |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2021 Apple Inc. All rights reserved.     Privacy Policy  |  Terms of Use  |  Sales and Refunds  |  Legal  |  Site Map                    United States

Exhibit 10
-140-

# EXHIBIT 12

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian; *** Apple-Masimo |
| **Cc:** | Masimo.Apple |
| **Subject:** | RE: Masimo v. Apple - Meet and Confer on Motion for Reconsideration |
| **Date:** | Friday, July 9, 2021 7:24:33 AM |

Thank Brian.  Please use the following dial in:

Phone number: ▮▮▮▮▮▮▮
Room #: ▮▮▮▮▮▮

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, July 9, 2021 5:48 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer on Motion for Reconsideration

Adam – we can be available at 1:30pm PT today.  Please send a dial in when you get a chance.  Thanks.

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, July 8, 2021 7:31 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer on Motion for Reconsideration

[External Email]
Brian,

Masimo's motion for reconsideration will be based in part on Dkt. 321-1 Ex. 4 in the *True Wearables* case, which Apple filed publicly on July 2.  It will also be based on new documents that Apple recently produced, including APL-MAS_00310640 and APL-MAS_00310646.  We are still reviewing

Exhibit 12
-142-

Apple's recent productions for other relevant evidence.

I am available after 5pm today to discuss.  Alternatively, I am available after 11am tomorrow.  Please let me know when is a convenient time for you.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, July 7, 2021 9:41 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer on Motion for Reconsideration

Hi Adam,

We are available to discuss tomorrow 10-11:30am PT.  If that doesn't work, let us know and we'll work on finding a time on Friday.  Please let us know what "new evidence" Plaintiffs intend to rely upon before the meet and confer.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, July 6, 2021 9:20 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Meet and Confer on Motion for Reconsideration

[External Email]
Counsel,

Exhibit 12
-143-

Plaintiffs intend to request reconsideration of the Court's Order denying Masimo's motion to compel discovery from Tim Cook (Dkt. 445) based on new evidence.  Please let us know when you are available to meet and confer.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 12
-144-

EXHIBIT 13



Behind Apple's healthcare strategy: 4 quotes from CEO Tim Cook

Jackie Drees - Monday, December 14th, 2020   Print  |  Email

Apple CEO Tim Cook expects the tech giant's devices and developments in healthcare and wellness to account for the company's overall greatest contributions.

Apple has been moving into the healthcare space over the past few years, with products including its Apple Watch, Health Records app, Research app and iCloud Platform. This year, the company launched Apple Watch Series 6, which includes features for tracking blood oxygen levels and an electrocardiogram app.

In a recent interview for *Outside*'s podcast, Mr. Cook shared some insights on Apple's healthcare strategy and outlook on the future. Here are four quotes from the discussion:

1. On Apple Watch's impact on consumers' health: "We thought it was a big idea to continuously monitor the heart. What we didn't necessarily predict was all of these cases were going to come out of it where the person told us, 'I would not have been here any longer. Do you understand? This is life changing for me.'"

3. On the impact that customer's Apple Watch reviews had on innovation process: "After the first few of those, you realize that there's something there. And you start pulling that string further. That led to AFib and then ECG. It led to putting control limits around your heart where, if it gets too low, you get a notification. If it gets too high, you get a notification. … All of these things are in service of the user so they can own their health in a way that they haven't been able to in the past."

3. On Apple's research study initiatives: "We've also got many people enrolled in different research projects; and we have democratized research in a way as well by having much larger constituents that are able to participate. Because a lot of people do want to help, but they don't know how. And now they can opt in, make conscious decisions to take part in that."

4. On Apple's biggest contribution: "I really believe that if you zoom out to the future and you look back to ask: 'What has Apple's greatest contribution been?' It will be in the wellness-and-health area."

Latest articles on consumerism:
Bose releases first direct-to-consumer hearing aids
What healthcare providers can learn from Netflix: 4 insights on consumer engagement
White House teams up with Uber, Lyft to provide free rides to vaccination clinics

**Do not miss our** Radiology Virtual Event **which will take place on Wednesday, June 23rd, 2021**

© Copyright ASC COMMUNICATIONS 2021. Interested in LINKING to or REPRINTING this content? View our policies by clicking here.

**Subscribe to the Becker's Hospital Review newsletter for the latest in healthcare news!**

Email*

You can unsubscribe from these communications at any time. For more information, please review our Privacy Policy.

f  Register with Facebook

SUBSCRIBE          OR          in  Register with LinkedIn

Invite a Friend

**Related Articles**

1. Singapore to pay residents to track health with Apple Watches: 4 details

2. Fitbit gets $2.5M to test wearable tech COVID-19 early detection algorithm on Northwell Health employees

3. Montefiore, Albert Einstein College of Medicine partner on wearables study for remote monitoring care

4. Moda Health teams up with Fitbit to offer health trackers to 64,000+ members

5. 85% of Apple Watch users that get AFib alert don't have the condition, Mayo Clinic study finds

**Featured Content**

OR evolution at MUSC: How the health system brought 24/7 robotics to emergency surgery

Guidehouse supporting health systems and state and local government entities' allocation of $10 billion in federal COVID-19 aid

Reinventing Community-Based Healthcare Delivery in a Value-

Exhibit 13
-145-

Based Landscape

**Virtual care: the first step on any healthcare journey**

**Podium and Sharp Healthcare Partner to Modernize Patient Experience Through Text Communication and Online Reviews**

**Humanizing technology to enhance personal interactions**

**An effective enhancement to your multimodal pain management program**

**In Consultants' Words: Why We Left the Big Firms to Join Premier**

**Featured Whitepapers**

1. Interlace Health and Meditech help KDMC digitize informed consent processes

2. Are cracks showing in your IT infrastructure? How to future-proof IT for uncertain times ahead

3. Healthcare's top 5 business challenges + solutions

4. The evolution of care delivery and implications for health system supply chains: 5 takeaways

5. Digital patient access, intake and engagement: Delight patients, grow your bottom line

6. How to make use of article access data amid times of crisis

7. The quest for value: What health systems really want from their suppliers

8. The evolution of threat detection and response: Why integration expertise is crucial

9. Beyond video visits: How remote patient monitoring is shaping the future of healthcare — 9 must-reads

10. Use cases: How ADT alerts helped two large health systems improve their operations and health outcomes

**Featured Webinars**

1. Optimizing protocols to improve patient wound healing outcomes and the effectiveness of total hip arthroplasty via the direct anterior approach in both the hospital and ASC settings

2. Dental leaders who made transformational decisions in 2020

3. How to build a better financial experience through the EHR — Lessons from two providers

4. Security advice for healthcare organizations' front lines & back offices

5. Strategies to support trauma-exposed healthcare workers

6. Innovating the revenue cycle for

---

**0 Comments**     Becker's Hospital Review     🔒 Disqus' Privacy Policy     🔴 Login ⌄

♡ Recommend          🐦 Tweet   f Share                    Sort by Oldest ⌄

Start the discussion…

LOG IN WITH          OR SIGN UP WITH DISQUS ?

Ⓓ Ⓕ Ⓣ Ⓖ          Name

Be the first to comment.

✉ Subscribe     🚫 Do Not Sell My Data

Exhibit 13
-146-



collective success

7. How to build a viable health equity strategy — The tech and proc healthcare needs

8. The prevention protocol cutting pressure injury incidence at Mayo Clinic — case study

9. How ASCs can improve workflows & patient satisfaction with a secure text messaging platform

10. Advancing the health of underserved populations

**BECKER'S HEALTHCARE**  GET TOP NEWS STORIES DELIVERED TO YOUR INBOX DAILY. *SUBSCRIBE.*

**Becker's Websites**
Hospital
ASC
Spine
Clinical
Health IT
CFO
Dental + DSO
Payer

**Virtual Learning**
Webinars
Whitepapers
Podcasts

**Conferences**
Health IT + Revenue Cycle Conference
ASC Annual Meeting: The Business and Operations of ASCs
CEO + CFO Roundtable
Becker's Hospital Review Annual Meeting
Health IT + Clinical Leadership + Pharmacy Conference
Spine, Orthopedic and Pain Management-Driven ASC + the Future of Spine Conference

**Contact Us**
1.800.417.2035
becker@beckershealthcare.com

Copyright © 2021 Becker's Healthcare. All Rights Reserved. Interested in linking to or reprinting our content? View our policies by clicking here.

Exhibit 13
-147-

EXHIBIT 14



https://www.sportspromedia.com_news_tim-cook-apple-watch-report-fitness-plus

SportsPro Insider Series    SportsPro Live    SportsPro APAC    OTT Summit    OTT Asia    OTT Summit USA    Motorsport Forum

**SportsPro**

News ▾    Insights ▾    SportsPro Magazine ▾    Podcasts    Playbook    Most Marketable    Events ▾    Shop    •••

Sign up    🐦  f  in  🔍

SportsPro APAC    7 & 8 July 2021
Transformation of sports consumption    48hrs    FLASH SALE – VIP PASS ONLY $99

# Tim Cook: 'Apple's greatest contribution could be in health and wellness'

Convergent hardware and software sees tech giant's CEO eyeing personal fitness sector.

Posted: February 16 2021    By: Tom Bassam    🐦 f in ✉



Getty Images

- **Apple launched Fitness+ home workout platform in December**
- **Tech giant holds dominant 28% share in smartwatch sector**

**Apple chief executive Tim Cook has suggested that the technology giant could be set to play a major role in the rapidly developing personal fitness sector.**

With people stuck at home during the pandemic, Apple decided to launch subscription home workout platform Fitness+, which went live in December.

- [At Large | What would an Apple sports strategy look like?](#)

The platform draws on the company's blend of consumer products, including Apple Watch's measurement tools, Apple Music and larger-screen hardware such as iPads or laptops. In identifying an area which draws together Apple's various offerings, Cook feels personal fitness could be a sector the company comes to define itself by.

Cook told Outside: "I really believe that if you zoom out to the future and then look back and ask, 'what has Apple's greatest contribution been?' it will be in the health and wellness area."

Cook's comments come with Apple appearing to want to double-down on a sector where it also leads the wearable technology race. Reporting on Q3 2020 in December last year, Apple held a 28 per cent share of the smartwatch market, up from 26 per cent in the same quarter in 2019, with sales reaching US$2.3

## Top 5

**1** Report: Manchester United lose UK£200m training kit deal over fan protests
May 10 2021

**2** Canelo-Saunders breaks US indoor boxing attendance record
May 10 2021

**3** OTT platform Recast sees valuation hit US$29m on back of Series A investment
May 10 2021

**4** Report: Orlando City set to be sold to Wilf family
May 10 2021

**5** Canelo Alvarez exits US$365m DAZN contract
November 09 2020



Grow your fanbase with Gen Z
lait  Gen Z Insights Platform

billion in that period, up 18 per cent year-over-year.

Cook also hinted that he thinks Apple has room to innovate more as the sector develops.

"Never discount the amount of innovation that can be in the future," he said. "To use a baseball analogy, we are in the early innings."

He added: "We take the challenge to continue innovating in that space just as seriously as we take the challenge to keep innovating in each of the product categories we're in."

POSTED IN: INVESTMENT, MULTIPLE SPORTS, NORTH AMERICA, GLOBAL 



## Latest News



Study: 69% of young sports fans support environmental change



Lions warmup match lands on Channel 4 as it picks up highlights package



NFL returning to London with two games in October



MLB urges Oakland Athletics to relocate



FuboTV updates 2021 forecasts on back of its strongest ever Q1



Study: Premier League could generate US$432m from digital inventory in 2021



Nascar's Darlington race scores 3.09m average audience for Fox



World Rallycross confirms revised 2021 calendar



Extreme E powers up with Zenobe



Phoenix Suns strike Fanatics merchandise deal ahead of playoffs return



Report: KB Partners raising US$100m to invest in sports tech startups



Hong Kong government secures Tokyo Olympics broadcast rights

Load comments

blog comments powered by Disqus

Exhibit 14
-149-



**Events**

SportsPro Insider Series

SportsPro Live

SportsPro APAC

OTT Summit

OTT Awards

OTT Summit USA

Motorsport Forum

Follow:

**News**

**Features**

**Opinion**

**Movers & Shakers**

**SportsPro Magazine**

**Shop**

**About SportsPro**

**Daily Deal Newsletter**

**Black Book**

**SmartSeries**

**Advertise**

**Contact Us**

© SportsPro Media Limited. All rights reserved. Privacy Policy • Cookie Policy

Exhibit 14
-150-

# EXHIBIT 15

https://frontofficesports.com/apples-next-move

# FRONT OFFICE SPORTS

FLOSPORTS *Finally*, YOUR SPORT HAS A HOME    LEARN MORE

FITNESS

# Tim Cook Believes Health and Wellness Will Be Apple's Legacy

▶ **Apple launched Fitness+ in December.**

▶ **The package integrates Apple Watch, Apple TV, Apple Music, and a workout video recommendation engine.**



APPLE

BY OWEN POINDEXTER
FEBRUARY 15, 2021

Apple CEO Tim Cook wants you to take a break from the devices and move your body.

"I really believe that if you zoom out to the future and then look back and ask, 'What has Apple's greatest contribution been?' it will be in the health and wellness area," Cook told Outside Magazine.

With gyms closed or limited, Apple is bringing the workout experience into homes through Fitness+, a subscription service it launched in December.

Fitness+ combines many of the tech giant's hardware and software capabilities: Apple Watch's heart rate monitor, Apple Music for playlists, iPads to present classes with workout data displayed natively.

**"Never discount the amount of innovation that can be in the future,"** Cook said. "To use a baseball analogy, we are in the early innings."

Fitness hardware and subscriptions have seen impressive investor interest lately.

- Lululemon acquired Mirror for $500 million last June.
- Amazon, Stephen Curry and several other star athletes joined Tonal's $110 million funding round in September.
- Peloton went public at $27 per share in September 2019 and has seen its

chrome-extension://mcbpblocgmgfnpjjppndjkmgjaogfceg/fsCaptured.html

Exhibit 15
-151-

https://frontofficesports.com/apples-next-move/

- Peloton went public at $27 in September 2019 and has seen its stock price reach as high as $171 since then.
- Beachbody is going public via a SPAC with a nearly $3 billion dollar valuation.

**So how does Apple prioritize turning off the screens when its products have largely enabled our dependence on them?** Cook admits he doesn't know, but is searching for a solution.

"We take the challenge to continue innovating in that space just as seriously as we take the challenge to keep innovating in each of the product categories we're in," he said.

Beyond workouts, a recent Mount Sinai study found the Apple Watch could detect heart rate variability changes that can help identify COVID-19 — a testament to the potential of Apple's health and wellness ambitions.

---

**Related**



FITNESS

**ClassPass, MindBody Health Apps In IPO Talks Together**

BY ABIGAIL GENTRUP / MAY 6, 2021



FITNESS

**Peloton Recalls Treadmills, Stock Tumbles**

BY OWEN POINDEXTER / MAY 5, 2021



FITNESS

**Equinox in SPAC Talks with Warriors Minority Owner**

BY OWEN POINDEXTER / MAY 5, 2021



FITNESS

**Oura Brings In $100M in Funding**

BY ABIGAIL GENTRUP / MAY 5, 2021

---

*FRONT OFFICE SPORTS*

BEST EMPLOYERS IN SPORTS    RISING 25    SPORTS MARKETING ESSENTIALS    TRENDING 20    TERMS OF USE/PRIVACY POLICY    ADVERTISE

© 2021 FRONT OFFICE SPORTS

Exhibit 15
-152-

# EXHIBIT 21

1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                  NORTHERN DISTRICT OF CALIFORNIA

6

7    IN RE APPLE IPHONE ANTITRUST              Case No.  11-cv-06714-YGR   (TSH)
     LITIGATION
8
                                               **DISCOVERY ORDER**
9
                                               Re: Dkt. Nos. 269, 270, 271, 295, 298
10

11

12   DONALD R. CAMERON, et al.,                Case No.  19-cv-03074-YGR   (TSH)

13           Plaintiffs,

14       v.
                                               Re: Dkt. Nos. 145, 146, 147, 173, 177
15   APPLE INC., et al.,

16           Defendants.

17   EPIC GAMES, INC.,                         Case No.  20-cv-5640-YGR   (TSH)

18           Plaintiff and Counter-

19   defendant
                                               Re: Dkt. Nos. 170, 173
20       v.

21   APPLE INC.,

22           Defendant and

23   Counterclaimant.

24

25       The parties to these related actions have raised a number of discovery disputes.  The Court

26   held a hearing on them on December 15, 2020, and now issues the following order.

27

28

Exhibit 21
-178-

**A.      Consumer Plaintiffs' Requests for Production 33-34, 36-41, 44, 47-48, 50-53 (11-6714 ECF No. 269; 19-3074 ECF No. 145)**

<u>RFPs 33-34, 36-38, 44.</u>  For these RFPs, Apple states that it "has produced, or will produce, non-privileged documents responsive to" these RFPs.  ECF No. 269,[1] Ex. E.  This response is satisfactory.  Apple is not obligated to do a new search each time it is served with new RFPs, as long as its prior search, collection and review efforts resulted in the production of documents responsive to the new RFPs.

<u>RFPs 39-41, 50.</u>  For these RFPs, Apple states that "its productions to date have included non-privileged documents responsive to these RFPs."  ECF No. 269, Ex. E.  As written, this sounded like Apple was making a production of only some portion of the responsive documents.  However, at the hearing, Apple clarified that it has produced, or will produce, non-privileged documents responsive to these RFPs.  That response is sufficient.

<u>RFP 47.</u>  This RFP presents a tricky issue in these related cases.  The Consumer Plaintiffs move to compel Apple to produce transactional data related to app sales from foreign App Store storefronts.  They narrow their request to include only aggregate global revenues by month for each app available to U.S. consumers, including revenues from foreign transactions.  In other words, the Consumer Plaintiffs are not requesting revenues for apps that are sold only through a foreign storefront.  They argue that this global revenue is highly relevant because it relates to the profitability of apps and the effect Apple's monopoly has on developers' willingness and/or ability to create apps.

This RFP is tricky because this revenue information seems to be relevant to the Developer Plaintiffs' claims, which do indeed focus on the impact of Apple's policies on developers, but the Court has a hard time understanding its relevance to the Consumer Plaintiffs' claims.  The Consumer Plaintiffs allege a *Kodak*-style aftermarket, asserting that once consumers purchase expensive iPhones, they are "locked in" to the iPhone app aftermarket due to the high price tag of the phone and large switching costs, ECF No. 111 ¶¶ 65, 66, enabling Apple to charge supracompetitive prices in the aftermarket for app sales.  *Id.* ¶ 45.  The proposed class of "All

---

[1] ECF citations in this order are to 11-cv-6714 unless otherwise indicated.

Exhibit 21
-179-

United States District Court
Northern District of California

1    persons in the United States" (*id*. ¶ 54) does not include foreign purchasers, and app sales outside

2    of the United States are not part of the alleged "national" aftermarket. *Id*. ¶ 67.

3            Normally when cases are related, the Court would not spend time scrutinizing which

4    discovery is relevant to which related case because it doesn't matter.  But here is the thing:  This

5    motion to compel was brought by both the Consumer and Developer Plaintiffs *except* that for RFP

6    47, the Developer Plaintiffs specifically disclaim moving to compel.  ECF No. 269 at 2 n.3

7    ("While the Developer Plaintiffs' position is that such data is relevant and responsive to their

8    RFPs, they do not join in Consumers' request to compel at this time, in part because they are

9    working with Apple on a voluntary accommodation regarding certain foreign distribution

10   transactions.").  Proceeding with this motion to compel by Plaintiffs who seem to have no standing

11   to request this information, while the Plaintiffs that do seem to have standing are trying to work

12   out a voluntary accommodation, would discourage cooperation and encourage discovery fights,

13   which is inconsistent with the "just, speedy, and inexpensive determination of every action and

14   proceeding." Fed. R. Civ. Proc. 1.  The divergent paths taken by the Consumer and Developer

15   Plaintiffs for this RFP are also in tension with the Coordination Order.  *See* ECF No. 194 ¶ 1

16   ("Plaintiffs shall coordinate discovery efforts to minimize expenses and facilitate the orderly and

17   efficient progress of the Related App Store Actions.  Consumer Plaintiffs and Developer Plaintiffs

18   shall consult in good faith and engage in reasonable efforts to coordinate discovery and jointly

19   resolve any disputes concerning discovery they are seeking so as to avoid duplication and

20   unnecessary burden.").

21           However, at the hearing, the Consumer Plaintiffs argued that this information is in fact

22   relevant to their claims and that it is important for their showing of classwide injury in their class

23   certification motion.  They requested an opportunity to submit an expert declaration to

24   demonstrate the relevance of this information to their claims.  The Court is amenable to that

25   approach.  As discussed at the hearing, the parties shall file a joint discovery letter brief by

26   January 6, 2021 discussing the Consumer Plaintiffs' expert declaration (and any competing

27   declaration submitted by Apple).  The Court will hold a hearing on this issue at 9:00 a.m. on

28   January 8, 2021.

United States District Court
Northern District of California

3

Exhibit 21
-180-

RFP 48.  This dispute is not ripe for review.  The Court orders Apple to investigate further and orders the parties to meet and confer further.  In the event this dispute comes back to the Court, Plaintiffs must explain why this information is relevant in an argument that is more developed than one conclusory sentence.

RFPs 51-52.  Plaintiffs seek documents or data that Apple provided to Analysis Group in connection with two public reports it published in July 2020 (entitled, "Apple's App Store and Other Digital Marketplaces: A Comparison of Commission Rates" and "How Large is the Apple App Store Ecosystem?"), as well as all communications between Apple and Analysis Group concerning these reports.  This information is clearly relevant, and Apple does not disagree. Apple states that Analysis Group is an expert consultant in this litigation and that the reports were cited in the *Epic Games* preliminary injunction briefing.  Apple therefore claims the communications with Analysis Group (as opposed to the documents or data) are attorney work product.

The problem here is that Apple has hired the same company to do two very different things:  publish reports favorable to Apple in what seems like a public relations effort, and serve as expert consultants in litigation.  Apple has also hired the same people (attorneys at Gibson Dunn) to work with Analysis Group for both efforts.  Retaining the same expert for different purposes does not cause work product protection to become a giant blanket that covers everything. And citing a publicly available document in a brief does not magically bestow work product protection on the document's creation.  Apple's invocation of work product over all of its communications with Analysis Group threatens an inappropriate expansion of the work product doctrine.  For example, emails from Gibson Dunn with drafting suggestions for the reports could very well have no attorney work product in them if the edits are unrelated to litigation preparation. Since the reports themselves were not expert reports under Rule 26, it is not reasonable to assume that every communication about them was work product.

The Court orders Apple to produce the documents and data it provided Analysis Group in connection with these two reports, since Apple does not claim work product is implicated by those.  As for communications between Apple and Analysis Group concerning these reports, the

4

Exhibit 21
-181-

Court orders Apple to produce non-work product communications about the reports.  The Court also orders Apple to log any communications with Analysis Group about these reports over which it claims work product protection.  Ordinarily, litigants do not log communications with their litigation experts, but the Court believes a log is appropriate here because of the dual roles Analysis Group performed and because Apple's blanket argument that all of these communications contain work product is so difficult to believe.  The logging requirement expires on the date these public reports were published because after that date we may infer that Analysis Group wasn't working on the reports anymore.  Its communications with Apple after that date, even if they discuss the reports, are so likely to be in anticipation of litigation that logging them is not a worthwhile endeavor.

RFP 53.  This RFP seeks documents concerning Apple's decision to change its app review procedure related to bug fixes that it announced on August 31, 2020.  These documents are relevant to Apple's business justification defense that subjecting all iPhone apps to Apple's review is important to ensure quality and security.  The Court orders Apple to produce responsive documents.  The Court does not order Apple to do a new search for responsive documents if it has already collected them in a previous search.

**B.  Apple's Production of Cost and Expense Documents and Data (11-6714 ECF No. 270; 19-3074 ECF No. 146)**

Hyperlinked documents.  The issue here is that when Apple employees email each other documents, they are often not sent as attachments to the emails.  Rather, the emails contain a link to either a cloud-based storage system or some other file transfer system.  The link allows the sender to securely transmit a file as it then existed via a link that is often live for a limited period of time.  The file itself could later be edited, renamed, and so on.  What this means is that when Apple collected its custodians' emails for discovery, there was no parent-child relationship between an email and the document that was hyperlinked.  Apple says that when it did custodial document collections, it collected from all the places where each custodian kept documents, and Apple represented at the hearing that this included all the locations where the hyperlinked documents would have been.  To be clear, Apple's search was not hyperlinked-based, meaning it

United States District Court
Northern District of California

Exhibit 21
-182-

United States District Court
Northern District of California

1    did not examine each link and go look in each file transfer system to find things.  Rather, Apple

2    searched the custodial locations, including cloud locations, from which the custodians could have

3    taken the documents to put in the file transfer system.  Apple maintains that this method should

4    have collected all the hyperlinked documents (unless they were not retained by the custodian, but

5    Apple says it is not aware of any non-retention), subject to the caveat that they could have been

6    revised or altered by the custodian.

7        The issue, from Apple's perspective, is that when Plaintiffs point to a custodian's email

8    that has a hyperlinked document and demand that Apple produce that document, it is time-

9    consuming and somewhat uncertain for Apple to identify that document in the custodian's

10   documents.  Apple sometimes has to interview the custodian, and even then it may not be clear if

11   the document that got produced is exactly the same as the one that was hyperlinked because, for

12   example, it may be a different version of a document with the same name.

13       Plaintiffs are skeptical that Apple has in fact produced the custodial documents.  However,

14   there is a bit of a chicken-and-egg problem here:  Plaintiffs see emails with hyperlinks, they can't

15   find linked documents, so it looks like Apple hasn't produced them, so they ask Apple for them,

16   and then Apple takes a while to identify the likely candidates.  While Apple has done this for a

17   limited number of emails, Plaintiffs are staring at a large email production where this hyperlink

18   problem seems to be everywhere.

19       The Court finds that Plaintiffs have not established that any custodial documents are

20   actually missing.  The Court also finds that the burden on Apple to go through its entire document

21   production and for each email to try to identify what all of the hyperlinked documents were would

22   be overwhelming, as well as impossible for documents that were revised after the hyperlink was

23   sent.  However, the Court is not going to let Apple off the hook completely because Apple is in a

24   far better position than Plaintiffs to try to line up emails with hyperlinked documents.  For

25   example, Apple can interview the custodian.  Accordingly, the Court orders Apple, in response to

26   requests by Plaintiffs directed at particular emails, to do its best to identify the hyperlinked

27   documents for a reasonable number of emails.

28       RFP 72.  The Court orders Apple to produce the data used to generate App Store-specific

6

Exhibit 21
-183-

1    profit and loss and gross margin information, and documents (if any exist) that show the

2    methodology by which such information was generated, including any apportionment and/or

3    allocation methods.  This information is relevant.  Apple argues that it does not have App Store-

4    specific profit and loss and gross margin information.  That would have been a more persuasive

5    argument had Plaintiffs not attached to the letter brief an App Store-specific P&L calculation that

6    included gross margin (APL_APPSTORE_08883286).  Apple argues that this particular P&L was

7    an estimate and that Apple in the normal course doesn't formally prepare P&L calculations that

8    are specific to the App Store.  However, that does not absolve Apple of the obligation to produce

9    relevant information that it does have.  This P&L calculation is App Store-specific, and it was

10   used in business planning.  There was a method by which this was put together, and there was data

11   someone used to do it.  Plaintiffs are entitled to that same data so they can also estimate P&L

12   information.  Whatever data was used to come up with this real-life P&L calculation, the Court

13   orders Apple to produce that same type of data for the relevant time period.  If there are

14   documents that show the methodology behind this P&L calculation, Apple must produce those

15   too.

16        Motion to Seal.  The motion to seal is granted in part and denied in part.  Apple's proposed

17   redactions (*see* ECF Nos. 273 & 274) are acceptable.  Since Apple has already filed a public

18   version with these redactions implemented (ECF No. 273-2), no further action is required.  (In

19   other words, Apple has already complied with Civil Local Rule 79-5(f)(3).)

20   **C.    Apple's Production of Transactional Data (11-6714 ECF No. 271; 19-3074 ECF No. 147)**

21        Proceeds_reason field.  The Court orders Apple to include the Proceeds_reason field in its

22   upcoming production of transactional data.  There are occasions when Apple charges a 15%

23   commission (instead of 30%) for reasons other than that a developer had a subscription for over

24   one year, and without this field all of those instances would be missing from the transactional data

25   production.  (Note that even though the field is entitled "Proceeds_reason," it doesn't give a

26   *reason* for the 15% commission.  The field is either blank (indicating a 30% commission was

27   charged) or has a value stating a different commission amount.)

28

United States District Court
Northern District of California

7

Exhibit 21
-184-

United States District Court
Northern District of California

1         <u>Transactional data.</u>  With the above addition, Apple must now produce the transactional

2  data.  The parties discussed the anticipated time frame for this production at the hearing.  Apple

3  has argued that it should only have to make this production once because it is so burdensome.  The

4  Court is sympathetic to Apple on that point.  If Plaintiffs wait until after this production takes

5  place to raise new arguments about other fields that should have been included, they will face a

6  high burden in attempting to get an order requiring Apple to do this again.

7         <u>Consumer Plaintiffs' RFPs 45 and 46.</u>  It became clear at the hearing that this dispute is not

8  ripe.  The Court orders Apple to promptly investigate these databases further and to promptly meet

9  and confer with Plaintiffs.

10        <u>Motion to seal.</u>  The motion to seal is granted in part and denied in part.  Apple's proposed

11  redactions (*see* ECF Nos. 275 & 276) are acceptable.  Since Apple has already filed a public

12  version with these redactions implemented (ECF No. 275-2), no further action is required.

**D.**      **Additional Apple Custodians (11-6714 ECF No. 298; 19-3074 ECF No. 177; 20-5640
        ECF No. 173)**

15        <u>Tim Cook.</u>  Apple has agreed to make Cook a document custodian on the condition that

16  Plaintiffs limit their deposition of him to four hours.  The only issue in dispute between the parties

17  is whether this condition is appropriate.  The Court finds that it is not.  Plaintiffs cannot

18  meaningfully assess how long this deposition should be until they see Cook's documents.  The

19  Court orders Apple to make Cook a document custodian.  The length of his deposition can be

20  addressed later.

21        <u>Craig Federighi.</u>  Plaintiffs want Apple to make Craig Federighi a document custodian.

22  Apple has refused and has offered Eric Neuenschwander instead.  Thus, the dispute is not over

23  how many document custodians there should be, but which of these two people should fill this

24  slot.

25        Federighi is in charge of engineering for all iOS.  Neuenschwander is his subordinate and

26  reports to him.  In meet and confer, Apple stated that Neuenschwander is in charge of the App

27  Store.  In the letter brief Apple states somewhat differently that Neuenschwander oversees privacy

28  across Apple's platforms and also asserts that he oversees a broad spectrum of security issues.

8

Exhibit 21
-185-

United States District Court
Northern District of California

1    Plaintiffs want Federighi's documents because he is in charge of iOS. Plaintiffs observe

2    that at a high level, Apple's business justification defense is about the benefits of the integrated

3    Apple ecosystem, in which the hardware, operating system, App Store and apps are a closed

4    system that Apple says is more secure, protective of privacy, and results in higher quality. They

5    want Federighi's documents precisely because he is higher up and, they believe, better able to

6    speak to the reasons for Apple's closed, integrated ecosystem. They also quote some documents

7    that tend to show that Federighi is more of a decisionmaker than Neuenschwander is, which seems

8    inevitably true since he is his boss.

9    Apple cites the default presumption that the party responding to discovery ordinarily has

10   the responsibility and entitlement to choose document custodians. In practice this is really more

11   of an obligation than a prerogative because the responding party has to live up to its discovery

12   obligations, and most of the time the requesting party would have no idea who the relevant

13   custodians should be. Beyond that, Apple does not have much to say about why Neuenschwander

14   should be the custodian, other than to assure us that it has considered the issue and thinks it should

15   be him. Apple also argues Federighi's documents are likely to contain particularly sensitive

16   business information, requiring more extensive individual review, which would further burden

17   Apple. However, that last argument also tends to suggest that Plaintiffs are right to want

18   Federighi's documents.

19   The Court rules for Plaintiffs and orders Apple to make Federighi a document custodian

20   instead of Neuenschwander. First, Plaintiffs have shown that Federighi is a higher-level

21   decisionmaker whose documents are more likely to go to the heart of Apple's business

22   justification defense. Second, if Plaintiffs have guessed wrong, and Federighi's documents are not

23   as relevant as Neuenschwander's are, that hurts Plaintiffs. Assuming the requests are relevant and

24   proportional, it is up to Plaintiffs to decide what discovery they want to take to prove their claims,

25   and if they make bad choices, that's their problem.

26   Motion to seal. The motion to seal is granted in part and denied in part. Apple's proposed

27   redactions (*see* ECF Nos. 305 & 306) are acceptable. Since Apple has already filed public

28   versions with these redactions implemented (ECF Nos. 305-2 to 305-5), no further action is

9

Exhibit 21
-186-

1    required.

2        **IT IS SO ORDERED.**

3

4    Dated: December 16, 2020

5

6                                              THOMAS S. HIXSON
                                              United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

10

Exhibit 21
-187-