JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
JOSHUA LERNER, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

Plaintiffs,

v.

APPLE INC.,
a California corporation,

Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**DECLARATION OF JOSHUA LERNER IN SUPPORT OF DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

Judge:         Magistrate Judge John D. Early
Date/Time:  August 19, 2021 / 10:00 AM
Courtroom: 6A

Discovery Cutoff:          3/7/2022
Pre-trial Conference:     11/21/2022
Trial:                            12/6/2022

1.     I, Joshua Lerner, declare and state as follows:

2.     I am a partner with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and counsel of record for Defendant Apple Inc. ("Apple") in the above-captioned action.

3.     I have personal, firsthand knowledge of the facts stated herein and, if called upon to do so, could and would competently testify thereto.

4.     I make this declaration in support of Apple's Opposition to Plaintiffs' Motion for Reconsideration of the Court's Denial of Plaintiffs' Motion to Compel Discovery from Tim Cook (the "Motion").

5.     In my role as counsel to Apple, I am generally aware of the content and timing of Apple's document productions.

6.     I am aware that Apple produced an email chain that included a message sent from Marcelo Lamego to Tim Cook.  A copy of that email chain bears Bates stamp APL-MAS_003322234, and an accurate copy of the document bearing that Bates stamp was attached to the declaration of Adam Powell (Dkt. 473) as Exhibit 8.

7.     After this email was produced, I directed attorneys on my team to conduct a search for any other versions of this email chain to determine whether other individuals received or replied to this email.  I attest that a reasonably diligent search did not yield any indication that Tim Cook ever responded to or substantively commented on this email chain.

8.     Attached hereto as **Exhibit A** is a true and correct copy of the publicly available Protective Order governing treatment of confidential materials in *Masimo Corp. v. True Wearables, Inc.*, No. 8:18-cv-02001-JVS (JDEx) (C.D. Cal. Apr. 2, 2020) (Dkt. 100).

9.     On May 5, 2021, Cheryl Burgess, counsel for Plaintiffs, sent counsel for Apple an email acknowledging that Apple already agreed to search ESI for 15

Gibson, Dunn & Crutcher LLP

DECL. OF JOSHUA LERNER IN SUPPORT OF APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION            2            CASE NO. 8:20-CV-00048-JVS (JDEX)

custodians, including Michael O'Reilly and Steve Hotelling.  A copy of Cheryl Burgess's May 5 email to counsel for Apple is attached as **Exhibit B [Filed under seal]**.

10.     Attached hereto as **Exhibit C [Filed under seal]** is a true and correct copy of email correspondence between counsel for Apple and counsel for Plaintiffs regarding the purported relevance of Tim Cook as an ESI custodian, with the top email in the chain dated May 12, 2021.

11.     On May 18, 2021, my colleague Brian Andrea sent an email to Adam Powell, informing him that Apple would search ESI for Adrian Perica and Steve Smith. A copy of Brian Andrea's email to Adam Powell is attached as **Exhibit D**.

12.     Attached hereto as **Exhibit E [Filed under seal]** is a true and correct copy of the declaration of Michael O'Reilly filed in support of Apple's opposition to Plaintiffs' Motion to Compel Tim Cook's ESI, filed on May 20, 2021.

13.     Attached hereto as **Exhibit F [Filed under seal]** is a true and correct copy of the declaration of Adrian Perica filed in support of Apple's opposition to Plaintiffs' Motion to Compel Tim Cook's ESI, filed on May 20, 2021.

14.     Attached hereto as **Exhibit G** is a true and correct copy of a declaration filed publicly on June 3, 2021 in *Masimo v. True Wearables, Inc.*, No. 8:18-cv-02001-JVS (JDEx) (C.D. Cal. June 3, 2021) (Dkt. 282-3).

15.     On June 14, 2021, my colleague Brian Andrea sent an email to Cheryl Burgess, counsel of record for Plaintiffs, informing her that Apple identified Paul Mannheimer as an individual likely to have relevant ESI, and asking Plaintiffs to confirm whether they would like to identify Mr. Mannheimer as an ESI custodian.  On July 14, 2021, my colleague Susanna Schuemann sent an email to counsel for Plaintiffs, reminding them that they still had not confirmed whether Plaintiffs would like to identify Mr. Mannheimer as an ESI custodian.  On July 28, 2021, Ms. Burgess responded that Plaintiffs would like to accept Apple's offer to include Mr. Mannheimer as an ESI

1    custodian.   A copy of the email chain between counsel for Apple and counsel for

2    Plaintiffs is attached as **Exhibit H [Filed under seal]**.

3        16.    On July 28, 2021, my colleague Jason Lo sent an email to Adam Powell,

4    counsel of record for Plaintiffs, informing him that Apple agreed to treat Jeff Williams

5    as a document custodian in this case.  A copy of the email from Mr. Lo to Mr. Powell is

6    attached as **Exhibit I**.

7        17.    On July 9, 2021, Adam Powell requested to meet and confer regarding the

8    collection and production of "non-email communication streams, such as imessages and

9    text messages."  The parties met and conferred about this issue on July 14, July 19, and

10   July 23, 2021.  Apple relayed that it was collecting non-email communication streams

11   for custodians who represented that they used modes of communication other than email

12   for work relevant to this case.  Plaintiffs insisted that Apple collect all non-email ESI for

13   *all* custodians who *ever* used non-email communication streams for work, regardless of

14   the likelihood that those communication streams may be relevant to this case.  A copy

15   of a July 23, 2021 email from Mr. Powell regarding Plaintiffs' proposal is attached as

16   **Exhibit J [Filed under seal]**.

17        I declare under penalty of perjury under the laws of the United States of America

18   that the foregoing is true and correct.

19        Executed this 29th day of July, 2021, in San Francisco.

20

21        By:  /s/ *Joshua Lerner*

22             Joshua Lerner

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Decl. of Joshua Lerner in Support of
Apple's Opposition to Plaintiffs'
Motion for Reconsideration          4          Case No. 8:20-cv-00048-JVS (JDEx)

# Exhibit A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, | Case No. 8:18-cv-2001-JVS-JDEx |
| Plaintiffs/Counterdefendants, | PROTECTIVE ORDER |
| v. | |
| TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, | |
| Defendants/Counterclaimants. | |

Based on the Joint Stipulation (Dkt. 82-1) and related filings (Dkt. 82, Dkt. 82-2 to 82-9, and Dkt. 86-89) by Plaintiffs and Counterdefendants MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC. ("Cercacor") (collectively "Plaintiffs"), on the one hand, and Defendants TRUE WEARABLES, INC. ("True Wearables") and MARCELO LAMEGO ("Lamego") (collectively "Defendants"), on the other hand, hereafter collectively referred to as "the Parties," by which the Parties seek a protective order ("Order")

-1-

limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c), and good cause appearing therefor,

The Court hereby FINDS and ORDERS that:

1. This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development documentation, source code, hardware specifications, schematics, algorithms, prototypes, test reports, market projections, sales reports, revenue reports, profit reports, cost of goods, sales projections and forecasts, financial reports, business strategies, and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. If such confidential and proprietary information is not kept confidential, then the parties risk losing the information's trade secret status and providing competitors with an unfair advantage which could harm the parties' business. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for

1  tactical reasons and that nothing be so designated without a good faith belief that
2  it has been maintained in a confidential, non-public manner, and there is good
3  cause why it should not be part of the public record of this case.

4         2.      Discovery materials produced in this case may be labeled as one of
5  three categories: "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS'
6  EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE"
7  (collectively and individually, "DESIGNATED MATERIAL") as set forth
8  below. Each Party may designate as confidential for protection under this Order,
9  in whole or in part, any document, information or material that constitutes or
10  includes, in whole or in part, confidential or proprietary information or trade
11  secrets of the Party or a Third Party to whom the Party reasonably believes it
12  owes an obligation of confidentiality with respect to such document, information,
13  or material ("Protected Material"). This Order shall encompass not only
14  Protected Material, but also (1) any information copied or extracted from
15  Protected Material; (2) all copies, excerpts, summaries, or compilations of
16  Protected Material; (3) any testimony, conversations, or presentations by Parties
17  or their counsel that might reveal Protected Material; and (4) briefs memoranda
18  or other writings filed with the Court and exhibits thereto that contain or reflect
19  the content of any such Protected Material. All copies, reproductions, extracts,
20  digests, and complete or partial summaries prepared from any DESIGNATED
21  MATERIAL shall also be considered DESIGNATED MATERIAL and treated
22  as such under this Order.

23         3.      Protected Material shall be designated by the Party producing it by
24  affixing a legend or stamp on such document, information, or material as follows:
25  the word designating the category of Protected Material, i.e.,
26  "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or
27  "RESTRICTED CONFIDENTIAL SOURCE CODE," shall be placed clearly on
28  each page of the Protected Material (except deposition and hearing transcripts)

-3-

for which such protection is sought. For deposition and hearing transcripts, the word designating the material (i.e., "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as DESIGNATED MATERIAL.

4. A designation of Protected Material (i.e., "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information, or material that has not been designated as described herein shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as described herein may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5. Non-public documents, information, or material produced in discovery in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the receiving Party, and its witnesses, experts, consultants, and other persons involved as permitted recipients hereunder, only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED

-4-

Case 8:20-cv-00048-JVS-JDE Document 479-1 Filed 07/29/21 Page 12 of 103 Page ID
#:39182
Case 8:20-cv-00048-JVS-JDE Document 160-1 Filed 04/02/20 Page 9 of 21 Page ID #:3907

MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

6.    **CONFIDENTIAL**. This category of Protected Information contains information or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), or contain confidential and/or proprietary information not known or readily available to the general public.  In determining whether information should be designated as "CONFIDENTIAL," each party agrees to use such designation only in good faith. CONFIDENTIAL documents, information, and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraph 12 herein:

> (a)    outside counsel of record in this Action for the Parties, including partners, associates, employees, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation and independent attorneys contracted to assist outside counsel in connection with this action and to whom it is reasonably necessary to disclose the information for this litigation;

> (b)    up to three (3) designated representatives (including in-house counsel) for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action;

> (c)    outside consultants or experts (i.e., not existing employees or affiliates of a party or an affiliate of a Party) retained for the purpose of this litigation, provided that: (1) such consultants

or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Exhibit A ("Agreement to be Bound by Protective Order") hereto and the same is served upon the producing Party with (i) a current curriculum vitae of the consultant or expert, (ii) a listing of each person or entity from whom the expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (iii) a listing (by name and number of the case, filing date, and location of court) of any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years, at least seven (7) days before access to the DESIGNATED MATERIAL is to be given to that consultant or expert. The producing party may object to and notify the receiving Party in writing that it objects to disclosure of DESIGNATED MATERIAL to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

(d) independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

(e) the Court and its personnel;

(f) any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(g) an author, signatory, or prior recipient of the document or the original source of the CONFIDENTIAL information. Such person shall be given access only to the specific document or information therein.

7. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL – ATTORNEYS' EYES ONLY" (or alternatively "CONFIDENTIAL – AEO"). To the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) (i.e., "Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE."

8. **CONFIDENTIAL – ATTORNEYS' EYES ONLY.** This category of Protected Material includes confidential information or items that the designating party has a good faith belief constitutes or contains trade secrets or other non-public, highly confidential research, development, technical, business,

and/or financial information that has not become public, the disclosure of which is likely to cause harm to the competitive position of the Disclosing Party. "CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may include, without limitation: (i) technical information containing confidential information or items such as materials that show the internal technical structure, design or operation of products that have been made, imported, used, or sold by the producing party; (ii) financial and/or other commercially-sensitive information (e.g., pricing, customer lists, business, and/or marketing plans or analysis, license agreements, and the like); (iii) trade secrets; (iv) information subject to an obligation of confidentiality owed by the Producing Party to a third-party; and/or (v) information subject to the privacy interest of any individual. In determining whether information should be designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY," each party agrees to use such designation in good faith. For Protected Material designated CONFIDENTIAL – ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 6(a) and (c-g) who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, are not competitive decision-makers of a Party or affiliates of a Party.

9. **RESTRICTED CONFIDENTIAL SOURCE CODE.** For the Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

(a)     Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet).   The stand-alone computer(s) may be connected to a printer. Additionally, the stand-alone computer(s) may only be located at the offices of

-8-

the producing Party's outside counsel within the Central District of California;

(b) The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 9:00am through 6:00pm.  The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;[1]

(c) The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s);

(d) The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above.  The receiving Party shall be permitted to take notes; any notes taken during inspection of source code or based upon inspection of source code, must be marked "RESTRICTED CONFIDENTIAL SOURCE CODE" and shall be treated as RESTRICTED CONFIDENTIAL SOURCE CODE under the terms of this Order.  Any such

---

[1] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

notes shall not count towards the limitations on printing pages set forth below in paragraph 8(h);

(e) The producing Party shall install tools that are sufficient for viewing and searching the source code produced, on the platform produced. At a minimum, these tools must provide the ability to (1) view, search, and line-number any source file and (2) search for a given pattern of text through a number of files;

(f) Access to DESIGNATED MATERIAL designated RESTRICTED CONFIDENTIAL SOURCE CODE shall be limited to outside counsel of record who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, are not competitive decision-makers of a Party or affiliates of a Party and up to one (1) outside consultant or expert (i.e., not existing employees or affiliates of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(c) above;

(g) To the extent portions of Source Code Material are quoted in a document containing source code (a "Source Code document"), either (1) the entire Source Code document will be stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE;

(h) In no event may the receiving Party request printing of more than 15 consecutive pages and more than 200 pages of information in aggregate during the duration of the case

-10-

without prior agreement from the producing Party or further order of the Court.  If the receiving Party requires the printing of additional pages of source code beyond the limits stated herein, the parties agree to negotiate in good faith to determine the extent of any modification of these limits.  The receiving Party should provide the producing Party with specific identification of the Source Code Material it requests to be printed.  Printing of directory paths or structures and file names shall not count toward the consecutive or aggregate page count listed in this section;

(i)     Except as set forth in paragraphs 8(l)-(m) below, no additional copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures, and order, must be filed or served electronically;

(j)     The receiving Party shall only request printing of those limited portions of the Source Code Material specifically necessary for a case activity (e.g., as evidence for trial or an exhibit for an expert's report). Counsel for the producing Party will keep the originals of all printed Source Code Material. Producing Party will produce a Bates-numbered copy of the originals of all printed Source Code Material to receiving Party within ten (10) business days of the request for printing.  The Parties will cooperate in good faith if a different timeframe for production is required;

(k)     The producing Party shall print every page of Source Code Material in 12 point font and with information necessary to later identify that Source Code Material, such as, but not

-11-

limited to, a header or footer, that identifies the file name and
directory path;

(l)     Intentionally omitted;

(m)     If the receiving Party's outside counsel, consultants, or
experts obtain the printout of the Source Code Material, the
receiving Party shall ensure that such outside counsel,
consultants, or experts keep the printout in a secured locked
area in the offices of such outside counsel, consultants, or
expert; and

(n)     A producing Party's Source Code Material may only be
transported by the receiving Party at the direction of a person
authorized under paragraph 8(f) above to another person
authorized under paragraph 8(f) above, on paper via hand
carry, Federal Express, or other similarly reliable courier.
Source Code Material may not be transported or transmitted
electronically over a network of any kind, including a LAN,
an intranet, or the Internet.

10.     Nothing in this Order shall require production of documents,
information, or other material that a Party contends is protected from disclosure
by the attorney-client privilege, the work product doctrine, or other privilege,
doctrine, or immunity. If documents, information, or other material subject to a
claim of attorney-client privilege, work product doctrine, or other privilege,
doctrine, or immunity is inadvertently or unintentionally produced, such
production shall in no way prejudice or otherwise constitute a waiver of, or
estoppel as to, any such privilege, doctrine, or immunity. Any Party that
inadvertently or unintentionally produces documents, information, or other
material it reasonably believes are protected under the attorney-client privilege,
work product doctrine, or other privilege, doctrine, or immunity may obtain the

-12-

return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

11. The production of privileged or work-product protected documents, electronically stored information ('ESI") or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

12. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

13. Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee,

1    or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary
2    course of business, seen such DESIGNATED MATERIAL, (iv) a current or
3    former officer, director, or employee of the producing Party or a current or former
4    officer, director, or employee of a company affiliated with the producing Party;
5    (v) counsel for a Party, including outside counsel and in-house counsel (subject
6    to paragraph 8 of this Order); (vi) an independent contractor, consultant, and/or
7    expert retained for the purpose of this litigation; (vii) court reporters and
8    videographers; (viii) the Court; or (ix) other persons entitled hereunder to access
9    DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be
10   disclosed to any other persons unless prior authorization is obtained from counsel
11   representing the producing Party or from the Court.

12        14.    Parties may, at the deposition or hearing or within thirty (30)
13   days after receipt of a deposition or hearing transcript, designate the deposition
14   or hearing transcript or any portion thereof as "CONFIDENTIAL,"
15   "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED
16   CONFIDENTIAL SOURCE CODE" pursuant to this Order. Access to the
17   deposition or hearing transcript so designated shall be limited in accordance with
18   the terms of this Order.  Until expiration of the 30-day period, the entire
19   deposition or hearing transcript shall be treated as CONFIDENTIAL –
20   ATTORNEYS' EYES ONLY.

21        15.    Without written permission from the Designating Party or a
22   court order secured after appropriate notice to all interested persons, a Party may
23   not file in the public record in this action any Protected Information or Material.
24   In the event a Party wishes to use DESIGNATED MATERIAL in any pleading,
25   motion, or other paper filed with the Court in this litigation, such pleading,
26   motion, or other paper and Confidential Material shall be filed under seal
27   pursuant to L.R. 79-5 and other applicable rules of the Court.

28

16.     The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the parties form introducing and DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

17.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) business days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.  Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

18.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order and shall sign an acknowledgement that he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the acknowledgment form is attached as Exhibit A.

19.     To the extent that any discovery is taken of persons who are not Parties to this Action (i.e., "Third Parties") and in the event that such Third Parties contended the discovery sought involves trade secrets, confidential

-15-

Case 8:20-cv-00048-JVS-JDE   Document 479-1   Filed 07/29/21   Page 21 of 103   Page ID
#:39193
Case 8:18-cv-02001-JVS-JDE   Document 19-1   Filed 04/02/20   Page 16 of 210   Page ID
#:98

business or technical information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

20.     To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" any documents, information, or other material, in whole or in part, produced or given by such documents, information or other material, in whole or in part, produced or given by such Third Parties. The Third Parties shall have ten (10) business days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

21.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts, or extracts thereof (excluding excerpt or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

22.     The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information, and material hereunder shall in

1  no way constitute a waiver of any objection to the furnishing thereof, all such

2  objections being hereby preserved.

3       23.    Any Party knowing or believing that any other party is in

4  violation of or intends to violate this Order and has raised the question of

5  violation or potential violation with the opposing party and has been unable to

6  resolve the matter by agreement may move the Court for such relief as may be

7  appropriate in the circumstances. Pending disposition of the motion by the Court,

8  the Party alleged to be in violation of or intending to violate this Order shall

9  discontinue performance of and/or shall not undertake the further performance of

10  any action alleged to constitute a violation of this Order.

11       24.    Production of DESIGNATED MATERIAL by each of the

12  Parties shall not be deemed a publication of the documents, information, and

13  material (or the contents thereof) produced so as to void or make voidable

14  whatever claim the Parties may have as to the proprietary and confidential nature

15  of the documents, information, or other material or its contents.

16       25.    Nothing in this Order shall be construed to effect an

17  abrogation, waiver, or limitation of any kind on the rights of each of the Parties

18  to assert any applicable discovery or trial privilege.

19       26.    Nothing in this Order shall prevent or otherwise restrict

20  outside counsel of record from rendering advice to their clients and, in the course

21  of rendering such advice, relying upon the examination of DESIGNATED

22  MATERIAL subject to paragraphs 7 and 8 of this Order. In rendering such advice

23  and otherwise communicating with the client, however, counsel shall not disclose

24  or reveal the substance or content of any DESIGNATED MATERIAL, except as

25  permitted by this Order.

26       27.    Each of the Parties shall also retain the right to file a motion

27  with the Court (a) to modify this Order to allow disclosure of DESIGNATED

28  MATERIAL to additional persons or entities if reasonably necessary to prepare

-17-

1   and present this Action and (b) to apply for additional protection of
2   DESIGNATED MATERIAL.

3         After the adoption of this provision by the parties, Outside Counsel
4   representing a Party and any person associated with a Party who receive a
5   producing Party's Protected Material designated    "CONFIDENTIAL –
6   ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE
7   CODE" under this Protective Order who accesses  or otherwise learns of, in whole
8   or in part, said Protected Material designated "CONFIDENTIAL –
9   ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE
10  CODE" under this Protective Order shall not prepare, prosecute, supervise,
11  advise, counsel, or assist in the preparation or prosecution of any patent
12  application seeking a patent on behalf of the receiving Party or its acquirer,
13  successor, or predecessor in the field of pulse oximetry during the pendency of
14  this Action and for two years after final termination of this action.  To avoid any
15  doubt, "prosecution" as used in this paragraph does not include representing or
16  advising a Party before a domestic or foreign agency in connection with a reissue
17  protest, ex parte reexamination, covered business method review, or *inter partes*
18  review; though in connection with any such reissue protest, ex parte
19  reexamination, covered business method review, or *inter partes* review involving
20  the patents-in-suit, Outside counsel for a receiving Party shall not: (i) participate
21  in the preparation, prosecution, supervision, advice, counsel, or assistance of any
22  amended claims; (ii) reveal a producing Party's Protected Material to any
23  prosecuting reexamination counsel or agent; or (iii) use a producing Party's
24  Protected Material for any purpose other than this litigation.  The applicability of
25  this provision is to be determined on an individual-by-individual basis such that
26  an individual attorney who has not received Protected Material designated
27  "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED
28  CONFIDENTIAL SOURCE CODE" is not restricted from undertaking any

Case 8:20-cv-00048-JVS-JDE   Document 479-1   Filed 07/29/21   Page 24 of 103   Page ID
#:39126
Case 8:18-cv-02001-JVS-JDE   Document 79-1   Filed 04/02/20   Page 19 of 19   Page ID
#:3921

activities by virtue of this provision even if said individual attorney is employed by or works for the same firm or organization as an individual who has received such Protected Material.

IT IS SO ORDERED.

DATED: April 02, 2020

_____
JOHN D. EARLY
United States Magistrate Judge

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendants/Counterclaimants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 8:18-cv-2001-JVS-JDE |

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I, _____,

declare that:

    1.    My address is _____ _____. My current employer is _____. My current occupation is _____.

    2.    I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

    3.    I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the

-1-

Case 8:20-cv-00048-JVS-JDE   Document 479-1   Filed 07/29/21   Page 26 of 103   Page ID
#:39128
Case 8:18-cv-02001-JVS-JDE   Document 179-1   Filed 04/02/21   Page 26 of 210   Page ID
#:3923

Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" that is disclosed to me.

4.    Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

-2-

# Exhibit B

## UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit C

## UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Exhibit C
Page 37

# Exhibit D

| | |
|---|---|
| **From:** | Andrea, Brian |
| **Sent:** | Tuesday, May 18, 2021 4:42 PM |
| **To:** | Adam.Powell; *** Apple-Masimo; Rosenthal, Brian A.; Lerner, Joshua H.; Samplin, Ilissa; Lyon, H. Mark; Kaounis, Angelique; Buroker, Brian M. |
| **Cc:** | Masimo.Apple |
| **Subject:** | RE: Masimo v. Apple - Deposition Notices and ESI Custodians |

Adam,

Apple agrees to search the ESI for both Adrian Perica and Steve Smith.  We will also work on obtaining the availability of the individuals you have noticed for deposition, with the exception of Jeff Williams, as discussed below.

Apple objects to Plaintiffs' notice of Jeff Williams' deposition and his identification as an ESI custodian.  Mr. Williams is the Chief Operating Officer of Apple who oversees Apple's entire worldwide operations.  Mr. Williams is not an appropriate deponent or custodian in this case, as he does not appear to possess unique or direct knowledge of relevant facts.  The fact that he is a manager is insufficient to establish the unique or direct knowledge requisite to show that discovery from him is appropriate.  *See, e.g., BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSX), 2019 WL 4544425, at *6-7 (C.D. Cal. Aug. 19, 2019).  Moreover, Plaintiffs have not exhausted alternative means of obtaining the discovery they seek, which includes ESI and depositions from lower level employees that are more likely to have any information you seek from Mr. Williams about the allegations in this case.

Thanks,
Brian

**Brian Andrea**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, May 13, 2021 11:00 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Deposition Notices and ESI Custodians

[External Email]
Counsel,

Please see the attached deposition notices.

Exhibit D
Page 52

Additionally, Plaintiffs request that Apple add the following individuals to the list of custodians that Apple searches pursuant to the parties' ESI discussions.

1. Adrian Perica
2. Steve Smith
3. Jeff Williams

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit D
Page 53

# Exhibit E

## UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit F

## UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit G

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Perry D. Oldham (Bar No. 216016)
Perry.oldham@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON
  & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

Mark D. Kachner (Bar No. 6285338)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON
  & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>    Plaintiffs/Counterdefendants,<br><br>    v.<br><br>TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,<br><br>    Defendants/Counterclaimants. | Case No. 8:18-CV-02001-JVS-JDE<br><br>**DECLARATION OF MARK D. KACHNER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO NON-PARTY APPLE INC'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER**<br><br>**Hon. James V. Selna**<br>**Hon. Magistrate John D. Early**<br><br>**[Discovery Document: Referred to Magistrate Judge John D. Early]**<br><br>**Hearing: June 24, 2021**<br>**Time: 10:00 a.m.**<br>**Court: Room: 6A** |

I, Mark D. Kachner, hereby declare:

1.     I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, and I am licensed to practice law in the State of California. I am a member of the bar of this Court, and counsel of record for Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively "Plaintiffs") in the above-captioned action. I have personal knowledge of the matters set forth herein, and if I am called upon to testify, I could testify competently thereto.

2.     I submit this Declaration in support of Plaintiffs' Opposition to Third Non-Party Apple Inc.'s Motion to Quash Subpoena and for a Protective Order.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of a May 26, 2021 letter from myself to Ilissa Samplin, counsel for Apple, Inc.

4.     Attached hereto as **Exhibit 2** is a true and correct copy of a May 26, 2021 letter from Ilissa Samplin to me.

5.     Attached hereto as **Exhibit 3 [FUS]** is a true and correct copy of excerpts from the May 20, 2021 and May 21, 2021 deposition of Defendant, Marcelo Lamego.

6.     Attached hereto as **Exhibit 4 [FUS]** is a true and correct copy of a document produced by Defendants in this litigation, bearing Bates Numbers TRUE016520-522.

7.     Attached hereto as **Exhibit 5 [FUS]** is a true and correct copy of an email exchange between myself and Paige Stradley, counsel of record for Defendants dated May 30, 2021 and June 1, 2021.

8.     Attached hereto as **Exhibit 6 [FUS]** is a true and correct copy of excerpts from the May 19, 2021 deposition of Masimo's CEO, Joe Kiani.

9.     Attached hereto as **Exhibit 7 [FUS]** is a true and correct copy of an email exchange between Masimo's CEO, Joe Kiani and Defendant Marcelo Lamego, dated March 6, 2009 through March 8, 2009, produced in this litigation,

bearing Bates Numbers MASM0205492-493.

10. Attached hereto as **Exhibit 8 [FUS]** is a true and correct copy of a document produced by Defendants in this litigation, bearing Bates Numbers TRUE016528-566.

11. Attached hereto as **Exhibit 9** is a true and correct copy of a printout from Defendant, Marcelo Lamego's public profile on LinkedIn, accessed on May 17, 2021.

12. Attached hereto as **Exhibit 10 [FUS]** is a true and correct copy of excerpts from the December 21, 2020 deposition of Tatiana Lamego.

13. Attached hereto as **Exhibit 11 [FUS]** is a true and correct copy of an email exchange between myself and Paige Stradley, counsel of record for Defendants between May 24, 2021 and May 27, 2021.

14. Attached hereto as **Exhibit 12** is a true and correct copy of the protective order entered by this Court in *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.), Dkt. 67.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 1, 2021 at Los Angeles, California.


*/s/ Mark D. Kachner*
Mark D. Kachner

-2-

# EXHIBIT 1

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

1925 Century Park East, Suite 600, Los Angeles, CA 90067
T (310) 551-3450

Mark Kachner
Mark.Kachner@knobbe.com

May 26, 2021

**VIA EMAIL**

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071

Re:     *Masimo Corp. Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego*,
        Case No. 8:18-cv-02001

Dear Ilissa:

We write to address Plaintiffs' subpoena to Apple in the above captioned matter. When we met and conferred on May 19, 2021, Apple raised five arguments for a planned motion to quash. Apple argued (1) the topics and requests are not relevant or proportional to needs of case, (2) the subpoena is an improper attempt to circumvent the timing on a pending motion to compel in the Apple case that was heard on May 20, 2021, (3) the subpoena is an improper attempt to circumvent the deposition time limits in the Apple case, (4) the subpoena seeks privileged communications, and (5) the subpoena seeks Apple's confidential information.

Apple did not contend that the scope of any particular request in the subpoena was either overbroad or unduly burdensome. Apple refused to provide ***any*** responsive discovery requested in the subpoena. Apple took the position that responding to any aspect of the subpoena was not proportional to the needs of the case. So, although Apple offered no indication it was willing to respond to more specific document requests, in an attempt to resolve the dispute, Plaintiffs propose to narrow their Requests For Production Nos. 2-5, as set forth below. Plaintiffs maintain their Request For Production No. 1.

Revised Request For Production No. 2:
Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014.

Revised Request For Production No. 3:
Apple's communications with Marcelo Lamego regarding the end of his employment.

Revised Request For Production No. 4:
Apple's communications with Marcelo Lamego regarding his hiring by Apple.

Revised Request For Production No. 5:
Documents sufficient to show Marcelo Lamego's job duties and title at Apple.

**EXHIBIT 1**

**Knobbe Martens**

Please let us know soon if Apple is willing to produce documents responsive to these revised and narrowed requests.  If you would like to discuss these revised requests or believe these revisions provide room to resolve any aspect of Apple's motion to quash, we are available to discuss on Thursday May 27, 2021, after 3:00 p.m. PDT or Friday May 28, 2021 after 12:00 p.m. PDT.

Best regards,

Mark D. Kachner

35030734

EXHIBIT 1

-4-

knobbe.com
Exhibit 9
Page 69

# EXHIBIT 2

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Ilissa Samplin
Direct: +1 213.229.7354
Fax: +1 213.229.6354
ISamplin@gibsondunn.com

May 26, 2021

VIA E-MAIL

Mark Kachner
Knobbe, Martens, Olson & Bear, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Mark.Kachner@Knobbe.com

Re:     *Masimo Corp. et al. v. True Wearables, Inc. et al.*, Case No. 8:18-cv-02001(C.D. Cal.)

Dear Mark:

We write in response to your May 26, 2021 letter concerning Plaintiffs' proposal to modify the subpoena to Apple in the above captioned case. Plaintiffs' proposal is improper for three reasons.

*First*, Plaintiffs' proposal is procedurally improper. Apple is obligated to respond to the current subpoena as written unless Plaintiffs withdraw it. *See* Fed. R. Civ. P. 45(g) (providing for sanctions for non-compliance with a subpoena); *see also* Fed. R. Civ. P. 45(d)(3)(A)–(B) (providing that only "the court" can modify a subpoena); *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *3 (S.D.N.Y. Sept. 6, 2019) (rejecting plaintiff's argument that defendant could have modified the definitions in the subpoena because defendant "would need to comply with the subpoena as written, absent some agreement between the parties"). Apple already did that, by responding to the current subpoena as written with objections and a motion to quash and for a protective order. If Plaintiffs wish to amend their Requests for Production in the subpoena, they must withdraw the subpoena and serve a new subpoena with a new noticed due date for Apple's responses.[1]

*Second*, Plaintiffs' proposal fails to address the fundamental problem with Plaintiffs' subpoena—that it seeks discovery that is wholly unrelated to Plaintiffs' claims in the *True Wearables* action and is the subject of several of Plaintiffs' discovery requests at issue in their Second Motion to Compel in *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048-JVS (JDEx) (C.D. Cal.) (the "Apple Case"). Each of Plaintiffs' proposed Revised Requests For Production

---

[1]  Your statement that "Apple did not contend that the scope of any particular request in the subpoena was either overbroad or unduly burdensome," Letter at 1, is wrong. During our meet and confer, I stated Apple's position that the topics and requests in Plaintiffs' subpoena are not relevant or proportional to the needs of case. Discovery requests that are not relevant are de facto unduly burdensome, a point Apple makes in its portion of the joint stipulation on its motion to quash and for a protective order. Thus, there is no argument in Apple's portion of the joint stipulation that was not discussed during the parties' meet and confer.

**EXHIBIT 2**

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

-5-

Exhibit G
Page 71

## GIBSON DUNN

Mark Kachner
May 26, 2021
Page 2

*still* seeks discovery concerning Mr. Lamego's employment history with Apple, which has nothing to do with Plaintiffs' allegations against Mr. Lamego and True Wearables, the company he founded *after* leaving Apple. Thus, Plaintiffs' proposal does nothing to resolve the parties' dispute with respect to Plaintiffs' current subpoena—which is that it seeks documents and testimony that have nothing to do with the True Wearables Case.

*Third*, Plaintiffs' proposal purports to "narrow their Requests For Production Nos. 2-5," but it fails to do so for most of the requests.[2] For example, it is unclear how Revised Request For Production No. 2 (which seeks "Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014") is different in scope from the original Request For Production No. 2 (which seeks "All documents related to Apple hiring Marcelo Lamego"). Plaintiffs' attempt to limit the timeframe of the request to January 21, 2014, or earlier does not meaningfully limit the scope of discovery responsive to this request because Mr. Lamego began his employment with Apple three days after leaving Plaintiffs' employ on that date, and thus most if not all "Documents and Communications about Apple's *consideration and hiring* of Marcelo Lamego" (emphasis added) would have been created prior to that date. Similarly, Plaintiffs' Revised Request For Production No. 3 (which seeks "Apple's communications with Marcelo Lamego regarding the end of his employment") does not appear to be meaningfully different from the original Request For Production No. 2 (which seeks "All documents related to the termination of Marcelo Lamego's employment relationship with Apple.")—particularly given Plaintiffs' broad definition of "communications" in the subpoena. Revised Request For Production No. 5 is the only one that demonstrates some narrowing, but that request nonetheless remains improper because it seeks documents that are irrelevant to, and not proportional to the needs of, the above-captioned action.

Plaintiffs served an overbroad and irrelevant subpoena. Unless Plaintiffs agree to withdraw it, Apple will proceed with its motion to quash and for a protective order.

Sincerely,

Ilissa Samplin

---

[2] Plaintiffs do not even attempt to revise their deposition topics, and state that they "maintain their Request For Production No. 1." Letter at 1.

**EXHIBIT 2**

# EXHIBIT 3

**[[EXCERPTS] 2021-05-20 &
2021-05-21 Deposition Transcripts of
Marcelo Lamego, Vols. I & II]**

**FILED UNDER SEAL**

# EXHIBIT 4

**[TRUE016520-522]**

**FILED UNDER SEAL**

# EXHIBIT 5

**[Email re Masimo v. True Wearables dated June 1, 2021]**
**FILED UNDER SEAL**

# EXHIBIT 6

**[[EXCERPTS] 2021-05-19 Deposition Transcript of Joseph Kiani ]**
**FILED UNDER SEAL**

# EXHIBIT 7

**[MASM0205492-493]**

**FILED UNDER SEAL**

# EXHIBIT 8

**[TRUE016528-566]**

**FILED UNDER SEAL**

# EXHIBIT 9

# Marcelo Lamego | LinkedIn

 linkedin.com/in/marcelo-lamego-72564454

Message

- Marcelo Lamego



## Founder and CEO - True Wearables

- Rancho Santa Margarita, California, United States
- 500+ connections
- Contact info

-   True Wearables

-   Stanford University

**EXHIBIT 9**

**-13-**

## About

Marcelo Malini Lamego is currently with True Wearables, Rancho Santa Margarita, CA. Throughout his career, he concentrated his efforts on the development of medical technologies and products. He is an inventor on more than 100 patents related to optimization and signal processing, devices, sensors and patient monitoring technologies, and author on more than 30 peer-reviewed journal and international conference articles in the areas of Automatic Control and Optimization, Adaptive Systems and Neural Networks, Power Electronics, and Mossbauer Spectroscopy applied to environmental control. Marcelo holds a Ph.D. degree in Electrical Engineering from Stanford University, California.

## Experience

- 

**Founder and CEO**

Company Name

True Wearables

**Dates Employed Aug 2014 – Present**

**Employment Duration 6 yrs 10 mos**

**Location 29826 Avenida de Las Banderas, Suite 300, Rancho Santa Margarita CA 92688**

True Wearables is a medical device company based in Rancho Santa Margarita, California that designs and manufactures low-cost, reliable, fully disposable, and wireless devices that are disrupting the medical industry and making the world a better place. Oxxiom is True Wearables' first product and is available in two versions: Oxxiom Rx - True Wearables' FDA 510(k) cleared product and the world's first wireless (completely cordless), fully disposable, single-use pulse oximeter. It measures oxygen saturation (SpO2), pulse rate (PR), and pulse amplitude (PA).

Oxxiom for Sports and Aviation - True Wearables' device targeting fitness and wellness applications and the world's first wireless (completely cordless), fully disposable, single-use pulse oximeter for continuous monitoring of SpO2, PR, perfusion index (PI), and peripheral blood pressure (SpBP™). The measurement of SpBP™ does NOT require a cuff.

Oxxiom's unique design is the recipient of:

(1) The 2017 Good Design Award by the Chicago Athenaeum Museum of Architecture and Design, in the medical category: The award is presented to the most innovative and cutting-edge industrial, product, and graphic designs produced around the world. Winners are selected among thousands of submissions from leading manufacturers and industrial and graphic designers from over 48 countries, representing the most important and influential corporations around the world.

(2) The 2018 iF DESIGN AWARD: Each year, the world's oldest independent design organization, Hannover-based iF International Forum Design GmbH, organizes the iF DESIGN AWARD. Oxxiom won over the 63-member jury, made up of independent experts from all over the world, with its original origami-style design. Over 6,400 entries were submitted from 54 countries in hopes of receiving the seal of quality.

**EXHIBIT 9**

**-15-**

- 

**R&D**

Company Name

Apple

**Dates Employed Jan 2014 – Jul 2014**

**Employment Duration 7 mos**

**Location Cupertino, CA**

Worked in the Apple Watch project. Activities included:

(1) Produced key intellectual property related to bio-sensing under the form of several issued patents (US9723997, US9952095, US10078052, US10219754, US10247670, US10524671);

(2) Defined required resources for current and future bio-sensing functionalities;

(3) Selected and hired scientists and engineers;

(4) Proposed and reviewed hardware and algorithm architectures, and advised team regarding bio-sensing functionalities;

(5) Negotiated and signed contract with large local university for data collection on human subjects to model the interaction between the subjects' physiology and bio-sensing technology.

**EXHIBIT 9**

**-16-**

- 

## Chief Technical Officer

Company Name

Cercacor Laboratories, Inc.

**Dates Employed 2006 – Jan 2014**

**Employment Duration 8 yrs**

**Location 189 Technology, Irvine CA 92618**

Responsible for the engineering team and Cercacor's research and product development. Developed the Pronto-7, a FDA/CE approved noninvasive hemoglobin meter, currently being sold worldwide by Masimo Corp, and recipient of:
(1) The 2011 Medical Design Excellence Award;
(2) The 2011 iF Product Design Award;
(3) The 2011 TechAmerica High-Tech Innovation Award;
(4) The 2011 World Health Organization Innovative Medical Technology (cost-effectively address global health concerns and needs);
(5) The 2012 GOLD Stevie® American Business Award for the Best New Product or Service in the Health & Pharmaceuticals category.
Pronto-7 uses Rainbow 4D Technology, an extension of Rainbow Technology.

Management activities included:
(i) Budget forecast, product roadmap, IP strategy, and updates to the Board of Directors;
(ii) Project management and design controls per ISO13485 and FDA Quality System Regulation (QSR);
(iii) Regulatory (510k, CE Mark, etc.) and clinical (IRB sites/protocols, demographics, etc.) strategies;
(iv) Negotiated supplier agreements and NDAs;
(v) Engineering and clinical labs (layout, equipment, people, workflow, etc.);
(vi) Setup HR (payroll and insurances, hiring package, evaluations, etc.), building lease, biz licenses and insurances.
(vii) Hired/trained engineering and clinical teams (over 50 employees).

Technical activities included:
(i) Modeling: Numerical solver for 3D simulation of light transport in biological tissues;
(ii) HW: Device and sensor circuit architectures, and HW characterization metrics;

**EXHIBIT 9**

**-17-**

(iii) Algorithm: Design methodology and all core real-time estimation algorithms;
(iv) SW: Architecture, kernels, services, drivers, and graphical interface;
(v) Biosensor: Mechanical, electrical, and optical specifications of emitters and detectors;
(vi) Industrial design: Device and sensor form factors to receive certifications;
(vii) Connectivity: EMR connectivity for data sharing with HIPAA compliance via standard protocols (HL7, POCT1A, etc.).



Patient Safety Challenge with Former President Bill Clinton: Cercacor, Cerner, DrÄ¤ger, GE Healthcare Systems, Masimo, Smiths Medical, Sonosite, Surgicount, and Zoll pledges of interoperability and patient data accessibility

Patient Safety Challenge with Former President Bill Clinton: Cercacor, Cerner, DrÄ¤ger, GE Healthcare Systems, Masimo, Smiths Medical, Sonosite, Surgicount, and Zoll pledges of interoperability and patient data accessibility

**EXHIBIT 9**

**-18-**



## Research Scientist

Company Name

Masimo

**Dates Employed Jan 2003 – Nov 2006**

**Employment Duration 3 yrs 11 mos**

**Location 50 Parker, Irvine, CA 92618**

Leading scientist in the development of the Rainbow Technology and of the first FDA/CE approved noninvasive carboxyhemoglobin and methemoglobin meter Rad-57, currently being sold worldwide by Masimo Corp, and recipient of:
(1) The 2006 Medical Design Excellence Award;
(2) The STA 2006 Application of Technology Award;
(3) The 2006 AEA Innovative Medical Technology Award.
This technology required mathematical concepts in several fields, ranging from optimal control theory and optimization, adaptive systems and statistics, transport theory and light interaction with biological tissues, light modulation, advanced digital signal processing techniques, embedded HW and SW.



## Professor

Company Name

Universidade de São Paulo

**Dates Employed Jan 2002 – Dec 2002**

**Employment Duration 12 mos**

**Location MBA in Management and Product Engineering - PECE program**

Taught during two semesters a graduate course entitled "Strategic Consulting for Engineers", wherein students learned and developed a number of business concepts and investment science skills needed to analyze business problems and create visual presentations in order to advise corporate management in the decision making process.

**EXHIBIT 9**

-19-

- 

**Management Consultant**

Company Name

The Boston Consulting Group

**Dates Employed Jan 2001 – Dec 2002**

**Employment Duration 2 yrs**

**Location Sao Paulo, Brazil**

Worked in several projects in the areas of energy, technology, banking, new investment opportunities, and pharmaceuticals, mainly helping a pharmaceutical company on market assessment of various highly specialized drugs (HIV, Cancer, Hepatitis, etc.). Completed The Boston Consulting Group 2001 Business Essentials Program at Babson College Wellesley, MA. Program instructors included several Senior BCG members and Harvard Business School professors, and Prof. Clayton M. Christensen, author of The Innovator's Dilemma book.

- 

**Algorithm Engineer**

Company Name

Masimo

**Dates Employed 2000**

**Employment Duration less than a year**

**Location Irvine, CA**

Developed estimation algorithms, simulation tools, and experimental clinical data collection setups for the noninvasive measurement of blood constituents.

**EXHIBIT 9**

**-20-**

https://www.linkedin.com/in/marcelo-lamego-72564454/

- 

## Assistant Professor (full tenure)

Company Name

Universidade Federal do Espírito Santo (Oficial)

**Dates Employed Jan 1994 – Aug 1996**

**Employment Duration 2 yrs 8 mos**

**Location Electrical Engineering Department, Vitoria, ES, Brazil**

Taught undergraduate semester courses in Automatic Control (Classic and Modern), Electronics and Electrical Circuits II, with twice a week lectures (2 hours each with 40 to 60 students), and weekly laboratory sections (smaller number of students). Member of the Power Electronics Laboratory (LEPAC), conducting research in Automatic Control and Power Electronics (results published in 20+ papers in international conferences and journals), and supervising senior students on their final graduation projects.

Electrical Engineering Department Internship Coordinator, responsible for contacting local companies and enabling internships for senior students, a mandatory requirement for graduation.

**EXHIBIT 9**

**-21-**



**Visiting Researcher**

Company Name

NHL Hogeschool

**Dates Employed Feb 1993 – Aug 1993**

**Employment Duration 7 mos**

**Location Leeuwarden, The Netherlands**

Developed a fuzzy logic laboratory comprising of laboratory-scale experiments /setups for educational purposes, including an inverted pendulum, an interval fuzzy simulator for differential equations, and a high-performance motion control system using extremity fuzzy PID controllers. The results were published in a number of research-oriented conference papers.

- **Co-founder**

Company Name

Hard Sistemas

**Dates Employed Jul 1990 – Jan 1993**

**Employment Duration 2 yrs 7 mos**

**Location Vitoria, ES, Brazil**

Projects Developed:
(1) Audio Switching Power Amplifier - developed as a prototype (the first of its kind), delivering over 1kW rms high-quality audio power. Patent was filed in the Brazilian Patent Office (INPI, 22/08/1991, # 103746-8)
(2) Hot Ductility Test Machine - Steel samples were subjected to controlled tension and temperature profiles and immediately frozen upon rupture to reproduce microstructure changes during the cold milling of large steel ingots. This test machine was developed for the Companhia Siderurgica de Tubarao (CST), Vitoria, ES, Brazil. Patent was filed in the Brazilian Patent Office(INPI, 16/09/1997, # PI9704161-0)

# Education

**EXHIBIT 9**

**-22-**

https://www.linkedin.com/in/marcelo-lamego-72564454/



**Stanford University**

Degree Name Doctor of Philosophy (Ph.D.)

Field Of Study Electrical and Electronics Engineering

Dates attended or expected graduation 1996 – 2000



**Universidade Federal do Espírito Santo (Oficial)**

Degree Name Master of Science (MS)

Field Of Study Electrical and Electronics Engineering

Dates attended or expected graduation 1991 – 1993

**EXHIBIT 9**

**-23-**





Modeling and Simulation of a Complex Industrial Process
Modeling and Simulation of a Complex Industrial Process

## Universidade Federal do Espírito Santo (Oficial)

Degree Name Bachelor of Engineering (B.E.)

Field Of Study Electrical and Electronics Engineering

Dates attended or expected graduation 1985 – 1990

## Skills & endorsements

1. R&D

See 43 endorsements for R&D 43
Kris Rath, Ph.D and 42 connections have given endorsements for this skill

**EXHIBIT 9**
-24-

https://www.linkedin.com/in/marcelo-lamego-72564454/

2. Medical Devices

See 39 endorsements for Medical Devices 39

    ○  

       Endorsed by tho tran and 4 others who are highly skilled at this

    ○  🍎

       Endorsed by 2 of Marcelo's colleagues at Apple

3. Product Development

See 31 endorsements for Product Development 31

    ○  

       Endorsed by Gopi Soundararajan and 2 others who are highly skilled at this

    ○  🍎

       Endorsed by 2 of Marcelo's colleagues at Apple

## Recommendations

**Yannick de Alwis**

Multidisciplinary Engineer at Raytheon Missiles & Defense | ACP Mentor | Proud Blue Jay

February 6, 2014, Marcelo was senior to Yannick but didn't manage directly

> Marcelo hired me on to the team at Cercacor in 2010, generously giving me an even more rewarding position than the one I had applied for. Marcelo is a brilliant engineer with many inventions to his name. He has the heart of a teacher, and was eager to help me in my career growth by freely sharing his experience a
> ...

> See more

## Accomplishments

## Marcelo has 2 languages 2

**EXHIBIT 9**

-25-

Exhibit G
Page 92

13/14

## Languages

- English
- Portuguese

LinkedIn Corporation © 2021

**EXHIBIT 9**

**-26-**

https://www.linkedin.com/in/marcelo-lamego-72564454/

# EXHIBIT 10

**[[EXCERPTS] 2020-12-21 Deposition Transcript of Tatiana Buticosky Lamego]**
**FILED UNDER SEAL**

# EXHIBIT 11

**[Email RE Masimo v. True Wearables**
**dated May 27, 2021]**
**FILED UNDER SEAL**

# EXHIBIT 12

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>APPLE INC.,<br>a California corporation,<br><br>          Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>PROTECTIVE ORDER |

Based on Plaintiffs' Motion for Protective Order (Dkt. 61, "Motion"), the Joint Stipulation of the parties (Dkt. 61-1), the evidence submitted in support of and in opposition to the Motion (Dkt. 61-2 to 61-5), including the parties' respective proposed protective orders (Dkt. 61-2, Exh. 2, and Dkt. 61-5, Exh. A), and the June 23, 2020 Order by the Honorable Judge James V. Selna, United States District Judge (Dkt. 59), and good cause appearing therefor, the Motion is granted, in part, and the Court finds and orders as follows.

**EXHIBIT 12**

**-29-**

Exhibit G
Page 97

1. **PURPOSES AND LIMITATIONS**

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, including disclosures under Rule 26, and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2. **GOOD CAUSE STATEMENT**

This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such

-1-

**EXHIBIT 12**

**-30-**

Exhibit G
Page 98

information is justified in this matter, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure or any other applicable authority. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

3.     <u>ACKNOWLEDGMENT OF UNDER SEAL FILING PROCEDURE</u>

The parties further acknowledge, as set forth in Section 14.3, below, that this Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006), *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), *Makar-Welbon v. Sony Electrics, Inc.*, 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

-2-

**EXHIBIT 12**

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. *See Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

4.     <u>DEFINITIONS</u>

4.1     Action: this pending federal lawsuit.

4.2     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

4.3     "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26, and as specified above in the Good Cause Statement.

4.4     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely confidential and/or sensitive "Confidential

-3-

**EXHIBIT 12**

**-32-**

Exhibit G
Page 100

Information or Items," disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.

4.5 "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), source code comments, object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party. Other documents that quote source code or internal documents that contain specific descriptions of source code (e.g. descriptions of declarations, functions, and parameters) that describe how the source code operates, to be narrowly applied, may be designated pursuant to this Paragraph, provided that the Producing Party also produces a redacted version designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," which removes the quoted source code or specific descriptions of source code. Native Computer Aided Design (CAD) files may be designated pursuant to this Paragraph, provided that any printouts of CAD files shall be designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" and will not be included in the page limits discussed in Section 11 below.

4.6 Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

4.7 Designating Party or Producing Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," HIGHLY CONFIDENTIAL –

-4-

**EXHIBIT 12**

**-33-**

ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

4.8    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery.

4.9    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

4.10    House Counsel: attorneys who are employees of a party to this Action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

4.11    Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.12    Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.13    Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.15    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

-5-

**EXHIBIT 12**

**-34-**

4.16  Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."  Protected Material shall not include:  (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

4.17   Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

5.   SCOPE

5.1   All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

5.2   The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel in court or in other settings that might reveal Protected Material.

5.3   Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material to any person for any purpose.

-6-

**EXHIBIT 12**

-35-

5.4     This Order does not preclude any Party or Non-Party from using Protected Material with the consent of the Producing Party or by order of the Court.

5.5     This Order does not preclude any Party or Non-Party from moving the Court for additional protection of any Discovery Material or modification of this Order, including, without limitation, moving for an order that certain matter not be produced at all.

5.6     Any use of Protected Material at trial shall be governed by the orders of the trial judge and other applicable authorities. This Order does not govern the use of Protected Material at trial.

6.     <u>DURATION</u>

Even after Final Disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or the information was made public during trial. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

7.     <u>DESIGNATING PROTECTED MATERIAL</u>

7.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

Mass, indiscriminate or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

-7-

**EXHIBIT 12**

**-36-**

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

7.2    Manner and Timing of Designations. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" (hereinafter "Confidentiality legend"), to each page that contains protected material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants

-8-

**EXHIBIT 12**

-37-

copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate Confidentiality legend to each page that contains Protected Material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identifies the Disclosure or Discovery Material on the record at the time the testimony is given or by sending written notice of which portions of the transcript of the testimony are designated within 30 days of receipt of the transcript of the testimony. During the 30-day period, the entire transcript will be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is recorded (by video or otherwise), the original and all copies of the recording shall be  designated pursuant to the terms of this Protective Order. Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

-9-

**EXHIBIT 12**

**-38-**

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the appropriate Confidentiality legend. If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

(d) When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 9.2(c), the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file. The parties reserve the right to object to the use of any image format version of a document produced in native file format to the extent any information has been altered.

7.3     Inadvertent Failures to Designate. An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material, provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. Upon such timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties. Upon receiving the Protected Material with the correct confidentiality designation, the Receiving

-10-

EXHIBIT 12

-39-

Exhibit G
Page 107

Parties shall return or securely destroy all Discovery Material that was not designated properly.

A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in the following Paragraph below) at the appropriately designated level pursuant to the terms of this Order.

A subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" from engaging in the activities set forth in Paragraph 10.

8      CHALLENGING CONFIDENTIALITY DESIGNATIONS

8.1.   Timing and Form of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.   Any challenge to a designation of Discovery Material under this Order shall comply with the procedures set forth in Local Rule 37-1.

-11-

**EXHIBIT 12**

**-40-**

8.2     <u>Meet and Confer</u>. It shall be the responsibility of the Challenging Party to initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3     <u>Joint Stipulation</u>. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

9       <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

9.1     <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in accordance with Section 5.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 17 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party in a secure manner at a location in the United States that ensures that access is limited to the persons authorized under this Order. For any Protected Material that is subject to export control, such material shall be so marked or designated by the Designating Party and the Receiving Party shall upon receipt be responsible for complying with all applicable United States Export Administration Regulations and shall take all reasonable steps to so comply,

-12-

**EXHIBIT 12**

**-41-**

including taking steps to ensure such material is not exported outside the United States or provided to foreign nationals to whom such assess is restricted.

Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

Nothing in this Protective Order shall preclude a party from using material obtained lawfully from a source other than the Producing Party, even if the Producing Party also designated the material pursuant to this Protective Order.

9.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action, including the expert's support staff, provided that: (1) such consultants or experts are not presently an officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not

-13-

**EXHIBIT 12**

**-42-**

Exhibit G
Page 110

involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party. At least fourteen (14) days before access to the Protected Material is to be given to a consultant or expert, the consultant or expert shall complete the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and the same shall be served upon the producing Party along with the following "Pre-Access Disclosure Requirements":

(i)    a current curriculum vitae of the consultant or expert;

(ii)    identification of the consultant or expert's present employer and job title;

(iii)    identification of all of the person's past and current employment and consulting relationships in the past five years, including direct relationships and relationships through entities owned or controlled by the person, including but not limited to, an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of non-invasive physiological monitoring technologies, or relating to the acquisition of intellectual property assets relating to non-invasive physiological monitoring;

(iv)    identification (by application number, title, and filing date) of all pending patent applications on which the person is named as an inventor, in which the person has any ownership interest, or as to which the person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

-14-

**EXHIBIT 12**

**-43-**

1           (v)    a listing (by name and number of the case, filing date, and

2              location of court) of any litigation in connection with which the

3              person has offered expert testimony, including through a

4              declaration, report, or testimony at a deposition or trial, during the

5              preceding five years.

6  The Party seeking to disclose Protected Material shall provide such other

7  information regarding the person's professional activities reasonably requested

8  by the Producing Party for it to evaluate whether good cause exists to object to

9  the disclosure of Protected Material to the outside expert or consultant.

10  Objection Process: The producing party may object to and notify the receiving

11  Party in writing that it objects to disclosure of Protected Material to the

12  consultant or expert.  In the absence of an objection within fourteen (14) days of

13  the date on which the Producing Party receives notice that a consultant or expert

14  will be given access to Protected Material, the person shall be deemed approved

15  under this Protective Order.  There shall be no disclosure of Protected Material

16  to the person prior to expiration of this fourteen (14) day period.  If an objection

17  is received within that fourteen (14) day period, the Parties agree to meet and

18  confer within seven (7) days following the objection and to use good faith to

19  resolve any such objection.  If the Parties are unable to resolve any objection,

20  the objecting Party shall serve on the other Party a Joint Stipulation pursuant to

21  Local Rule 37-2.1 within seven (7) days of the meet and confer.  The objecting

22  Party shall have the burden of proving the need for a protective order.  No

23  disclosure shall occur until all such objections are resolved by agreement or

24  Court order;

25          (d) the court and its personnel;

26          (e) court reporters, videographers, and their staff;

27

28                                    -15-

**EXHIBIT 12**

**-44-**

Exhibit G
Page 112

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the specific information at issue based on the face of the document, the document's metadata, other documents, or sworn witness testimony;

(h) any mediators or settlement officers and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions;

(i) any other person with the prior written consent of the Producing Party; and

(j) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order. If a Designating Party believes a party is not acting in good faith in seeking to show Protected Material to a witness during a deposition, the Designating Party may seek a further protective order under Local Rule 37 to prevent the showing of Protected Material to the witness, with the Designating Party bearing the burden

of proof to show that the party seeking to show Protected Material to a witness
during a deposition is not acting in good faith.

9.3.  Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS'
EYES ONLY" Information or Items. Unless otherwise ordered by the court or
permitted in writing by the Designating Party, a Receiving Party may disclose
any information or item designated "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" only to the individuals identified in Paragraphs
9.2 (a), (c)-(i), who are not competitive decision-makers of a Party as defined by
applicable authorities.

10.  PROSECUTION BAR

After the adoption of this provision by the parties, Outside Counsel of
Record and any person associated with a Party who receive a Producing Party's
material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under this
Protective Order who accesses or otherwise learns of, in whole or in part, said
material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under this
Protective Order shall not prepare, prosecute, supervise, advise, counsel, or
assist in the preparation or prosecution of any patent application seeking a
patent on behalf of the Receiving Party or its acquirer, successor, or predecessor
in the field of non-invasive monitoring during the pendency of this Action and
for two years after final termination of this action.  To avoid any doubt,
"prosecution" as used in this paragraph does not include representing or
advising a Party before a domestic or foreign agency in connection with a
reissue, ex parte reexamination, covered business method review, *inter partes*
review, opposition, cancelation, or similar proceeding; though in connection
with any such agency proceeding involving the patents-in-suit, Outside Counsel

-17-

**EXHIBIT 12**

**-46-**

Exhibit G
Page 114

of Record for a Receiving Party shall not: (i) participate in the preparation, prosecution, supervision, advice, counsel, or assistance of any amended claims; (ii) reveal a Producing Party's Protected Material to any prosecuting reexamination counsel or agent; or (iii) use a producing Party's Protected Material for any purpose not permitted by Section 5. The applicability of this provision is to be determined on an individual-by-individual basis such that an individual attorney who has not received Protected Material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" is not restricted from undertaking any activities by virtue of this provision even if said individual attorney is employed by or works for the same firm or organization as an individual who has received such Protected Material.

11. SOURCE CODE

(a) To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code. Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(b) Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information including the Prosecution Bar set forth in Paragraph 10, and may be disclosed only to the individuals identified in Paragraphs 9.2(a), (c), (d), (e), (g), and (j), subject to the restrictions set forth in Paragraph 9.3.

(c) Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and

-18-

**EXHIBIT 12**

-47-

Exhibit G
Page 115

searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel in the Central District of California or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)      The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business.  The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for

-19-

**EXHIBIT 12**

**-48-**

use on the Source Code Computer.     The Parties agree to cooperate in good

faith if additional software becomes necessary on an expedited basis.

(e)     The Receiving Party's outside counsel and/or experts shall

be entitled to take notes relating to the Source Code but may not copy the

Source Code into the notes and may not take such notes electronically on the

Source Code Computer itself or any other computer.

(f)     The Receiving Party may request paper copies of limited

portions of source code that are reasonably necessary for the preparation of

court filings, pleadings, expert reports, or other papers, or for deposition or trial,

but shall not request paper copies for the purposes of reviewing the source code

other than electronically as set forth in Paragraph (c) in the first instance.  Any

printed portion that consists of more than fifteen (15) pages of a continuous

block of Source Code or more than two hundred (200) pages total shall be

presumed to be excessive, and the burden shall be on the Receiving Party to

demonstrate the need for such a printed copy.   Within ten (10) days, the

Producing Party shall either (i) provide one copy set of such pages to the

Receiving Party or (ii) inform the Requesting Party that it objects that the

printed portions are excessive and/or not done for a permitted purpose.  The

Parties will cooperate in good faith if a different timeframe for production is

required.   If, after meeting and conferring, the Producing Party and the

Receiving Party cannot resolve the objection, the Receiving Party shall be

entitled to seek a Court resolution of whether the printed Source Code in

question is narrowly tailored and was printed for a permitted purpose.   The

burden shall be on the Receiving Party to demonstrate that such printed portions

are no more than is reasonably necessary for a permitted purpose and not merely

printed for the purposes of review and analysis elsewhere.  The printed pages

-20-

**EXHIBIT 12**

**-49-**

shall constitute part of the Source Code produced by the Producing Party in this action.

(g)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.   All persons viewing Source Code on the source code computer shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The log shall be kept by the Producing Party.

(h)     Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room; failure to do so could be deemed a waiver of confidentiality to any materials left behind.  The Producing Party is not responsible for any items left in the room following each inspection session. But all counsel remain bound by their ethical duties regarding the handling and possible return of work product inadvertently left behind by a representative of an opposing party. Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

-21-

**EXHIBIT 12**

**-50-**

(i)     The Receiving Party's outside counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(f), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon request from the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party as soon reasonably practicable and in no event more than three (3) days after receipt of such request.

(j)     The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  Absent agreement of the Parties or order of this Court, no more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of the Source Code (except insofar as such code appears in any court filing or expert report).  The Parties agree to cooperate in good faith if it becomes necessary for more than fifteen (15) individuals to have access to the printed portions of the Source Code. Nothing in this paragraph reflects an agreement by any Party in advance that access by more than fifteen individuals is warranted.

(k)     For depositions, the Receiving Party shall not bring copies of any printed Source Code.  Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party it wishes to use Source Code at the deposition, and the Producing Party shall bring printed

-22-

**EXHIBIT 12**

-51-

copies of the Source Code to the deposition for use by the Receiving Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. The Producing Party shall maintain the marked deposition exhibits during the pendency of this case. All other paper copies of Source Code brought to the deposition by the Producing Party shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

(l) Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate or order of this Court. If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials

-23-

EXHIBIT 12

-52-

Exhibit G
Page 120

containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order.  Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored.  Additionally, any such electronic copies must be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" as provided for in this Order.

12. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena, including one issued by any court, arbitral, administrative or legislative body or a court order issued in other litigation, that requests or compels disclosure of any Protected Material, that Party must:

(a) promptly notify in writing each Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this

-24-

**EXHIBIT 12**

**-53-**

Exhibit G
Page 121

action as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

13.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as Protected Material. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

-25-

**EXHIBIT 12**

**-54-**

Exhibit G
Page 122

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

14. <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order and (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A. Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive a Producing Party's right to maintain the disclosed document or information as Protected Material.

-26-

**EXHIBIT 12**

-55-

Exhibit G
Page 123

15.     <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

(a) The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b) Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c) Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

16.     <u>MISCELLANEOUS</u>

16.1   <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

16.2   <u>Right to Assert Other Objections</u>. By agreeing to the entry of this Protective Order, no Party waives any right it otherwise would have to object to

-27-

**EXHIBIT 12**

**-56-**

Exhibit G
Page 124

disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

16.3    Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

16.4    Termination of Matter and Retention of Jurisdiction.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter.  The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

16.5    Successors.  This Order shall be binding upon the Parties hereto, their successors, and anyone who obtains access to Protected Material.

16.6    Modification by Court.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order sua sponte in the interests of justice.  All disputes between the Parties concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

16.7    Computation of Time.  The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

-28-

**EXHIBIT 12**

-57-

## 17.  FINAL DISPOSITION

After the Final Disposition of this Action, as defined in Paragraph 6, within 60 days of a written request by the Designating Party, each Receiving Party shall return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material, but must return or destroy any pleadings, correspondence, and consultant or expert work product that contain information designated "HIGHLY CONFIDENTIAL – SOURCE CODE." Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Paragraph 6 (DURATION).

/ / /

/ / /

/ / /

/ / /

-29-

**EXHIBIT 12**

**-58-**

Exhibit G
Page 126

18.   <u>VIOLATION</u>

Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**IT IS SO ORDERED.**

Dated:  June 30, 2020

_____
JOHN D. EARLY
United States Magistrate Judge

-30-

**EXHIBIT 12**

**-59-**

## EXHIBIT A

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Masimo Corp., et al. v. Apple Inc.*, United States District Court, Central District of California, Southern Division, Civil Action No. 8:20-cv-00048-JVS (JDEx).  Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____


Dated: _____


_____

[Signature]


-31-

**EXHIBIT 12**

-60-

# Exhibit H

## UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Exhibit I

Exhibit I
Page 135

| | |
|---|---|
| **From:** | Lo, Jason |
| **Sent:** | Wednesday, July 28, 2021 8:32 AM |
| **To:** | Masimo.Apple |
| **Cc:** | *** Apple-Masimo |
| **Subject:** | Masimo v. Apple: Jeff Williams |

Counsel:

In follow-up to the parties' meet and confer discussions, I write to inform you that Apple agrees to treat Jeff Williams as a document custodian in this case.  As we believe the materials will confirm, Apple disagrees with much of the speculation and allegations Plaintiffs have lodged about Mr. Williams.

Equally important, the documents will further put to bed Plaintiffs' other speculations about Tim Cook's alleged involvement in the activities relevant to this case.  As we repeatedly have stated, Plaintiffs are simply wrong on the facts in baselessly suggesting that Mr. Cook's forwarding of an unsolicited email, or his brief attendance at a meeting, somehow places Mr. Cook in the center of Plaintiffs' accusations.  In the past, Plaintiffs have speculated that if only Plaintiffs had access to Mr. Williams's documents, that would somehow shed light on Mr. Cook's involvement.  While Plaintiffs' bootstrapping argument has no foundation and flies in the face of the applicable law on apex witnesses, Apple is agreeing to treat Mr. Williams as a document custodian in part to debunk Plaintiffs' speculations.

With respect to Plaintiffs' renewed efforts to obtain Mr. Cook's documents, Apple also notes that with Mr. Williams, Apple has now agreed to produce documents from 33 custodians (including Mr. Mannheimer, although Plaintiffs have not yet responded as to whether they would like to include him as a custodian).  And as you know, Apple has now produced over 30,000 documents from the files of various custodians.  And yet, Plaintiffs' current motion for reconsideration continues to rehash documents that Plaintiffs have had for months.  Moreover, Plaintiffs have made no effort to depose any of Apple's witnesses, despite the fact that Plaintiffs are required to seek less intrusive means of discovery before resorting to taking discovery for an apex witness such as Mr. Cook.

Plaintiffs' pending Motion for Reconsideration is baseless, and we urge Plaintiffs to withdraw that motion, at least in view of this development.

**Jason C. Lo**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7153 • Fax +1 213.229.6153
JLo@gibsondunn.com • www.gibsondunn.com

Exhibit I
Page 136

# Exhibit J

## UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL