Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation

Plaintiffs,

v.

APPLE INC., a California corporation

Defendant.

Case No. 8:20-cv-00048-JVS-JDE

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO MODIFY THE PROTECTIVE ORDER (DKT. 67)**

[Discovery Document: Referred to Magistrate Judge John D. Early]

Date: November 18, 2021
Time: 10:00 a.m.
Ctrm: 6A

Discovery Cut-Off: 3/7/2022
Pre-Trial Conference: 11/21/2022
Trial: 12/6/2022

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 1
  A. Masimo's Allegations In This Case ..... 1
  B. Masimo Expended Significant Resources Obtaining Discovery From Apple ..... 2
  C. The ITC Investigation ..... 3
III. ARGUMENT ..... 4
  A. Legal Standards ..... 4
  B. Granting The Motion Would Avoid Duplicative Discovery ..... 5
  C. Apple Cannot Show Substantial Prejudice ..... 7
  D. Apple's Alternative Proposal Is Inefficient And Unfair ..... 9
  E. The Parties Agree The Court May Resolve This Dispute ..... 9
IV. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page No(s).**

*In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 .......... *passim*

*Cummins-Allison Corp. v. SBM Co.*, 2013 WL 12250448 (D. Haw. Nov. 8, 2013) .......... 5, 7, 8

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) .......... 4, 5, 7, 8

*Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 2238022 (N.D. Cal. June 15, 2012) .......... 8

*Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994) .......... 5, 7

*In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417 (9th Cir. 2011) .......... 7

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 2008 WL 2813081 (D. Neb. July 18, 2008) .......... 5, 6, 8

*Universal Entertainment Corporation v. Aruze Gaming America, Inc.*, 2020 WL 2308226 (D. Nev. May 8, 2020) .......... 5, 8

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing L.P.*, 214 F.R.D. 583 (C.D. Cal. 2003) .......... 5

### OTHER AUTHORITIES

19 CFR § 210.27 .......... 6

Fed. R. Civ. P. 26 .......... 6

Local Rule 7 .......... 10

Local Rule 37 .......... 9, 10

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (jointly, "Masimo") respectfully move to modify the Protective Order (Dkt. 67).

Masimo brings this Motion before this Court at Apple's request and the Special Master's suggestion. *See* Section III. E, *supra*.

## I. INTRODUCTION

Masimo seeks to modify the Protective Order to allow the parties to use discovery from this case in an ITC investigation between the same parties, *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 (the "ITC Investigation"). Masimo does not ask this Court to decide whether any discovery material from this case is admissible in the ITC. That decision is for the ITC. Masimo merely seeks to make discovery from this case available in the ITC Investigation as if it had been produced there.

Masimo brings this Motion to avoid unnecessarily duplicating discovery. The ITC Investigation involves the same parties (Masimo, Cercacor, and Apple), common products (the Apple Watch), and overlapping technology (light-based physiological monitoring). Thus, significant discovery in this case will also need to be produced in the ITC Investigation. Granting this Motion would save the parties significant time and money by avoiding repeating discovery efforts from this case.

Apple agrees discovery in both cases will overlap. However, Apple rejected Masimo's proposal because some discovery in this case is not relevant to the ITC Investigation. Apple proposed each party designate specific documents they produced in this case that would be available for use in the ITC Investigation. Apple's proposal would be burdensome and result in disputes as to which documents are "relevant" in the ITC Investigation. The Court should grant Masimo's Motion.

## II. STATEMENT OF FACTS

### A. Masimo's Allegations In This Case

Masimo and its spin-off company, Cercacor, are medical technology companies that revolutionized non-invasive monitoring. Dkt. 296-1 ¶¶ 9, 15. In 2013, Apple

contacted Masimo to discuss a potential collaboration. *Id.* ¶ 19. After the meetings, Apple began hiring Masimo employees. *Id.* ¶¶ 20-21. Apple first hired Masimo's Chief Medical Officer (Michael O'Reilly) and then hired Cercacor's Chief Technical Officer (Marcelo Lamego). *Id.* ¶¶ 20-24. Apple then hired many more Masimo engineers. *Id.* Masimo alleges Apple gained access to Masimo's technology through these former Masimo employees. *Id.* ¶¶ 228-232. Apple filed patent applications on Masimo's technology and incorporated Masimo technology into various versions of the Apple Watch. *Id.* ¶¶ 233-257. While Apple's original heart rate measurement feature had performance issues, Apple addressed some problems in the Series 4 and 5 watches by using Masimo's technology. *Id.* ¶¶ 25, 238-239. In 2020, Apple added a pulse oximeter in the Series 6 watch using Masimo's technology. *Id.* ¶¶ 25, 238, 240, 254-255.

Masimo filed this action in January 2020, alleging claims for patent infringement, correction of inventorship/ownership of Apple patents, and misappropriation of trade secrets. Dkt. 1.

**B. <u>Masimo Expended Significant Resources Obtaining Discovery From Apple</u>**

As explained in Masimo's prior motion to modify the scheduling order (Dkt. 384), discovery has been a long and arduous task. For example, to obtain Apple's "core technical documents" that Apple was required to produce under the scheduling order, Masimo wrote to Apple eighteen times, met with Apple twice, moved the Court three times, and responded to three Apple motions. *Id.* at 2-3. To obtain an order requiring Apple to search a reasonable number of ESI custodians, Masimo wrote to Apple over thirty times, met with Apple numerous times, and briefed three motions. *Id.* at 3-5.

Masimo also spent months compelling Apple to search a single ESI custodian (Apple CEO Tim Cook). On June 10, this Court denied Masimo's initial request that Apple search Cook's ESI based on Apple's representation that Cook was "not likely" to have discoverable information. Ex. 1 at 5:12-19.[1] However, an email Lamego sent to

[1] All exhibits are attached to the Declaration of Adam B. Powell, submitted herewith. All emphasis in quotations is added unless noted otherwise.

Cook, filed in the related *True Wearables* case,[2] called that representation into question. *See* Ex. 4 (the "Lamego-Cook Email"). During a hearing in the *True Wearables* case, the Court found: "there is a whiff of Three-card Monte going on here about getting documents and finding documents and doing a shell game about where Plaintiffs are supposed to go and the procedural mechanisms." Ex. 3 at 30:1-14.

Masimo then moved for reconsideration in this case based, in part, on the Lamego-Cook Email. Apple initially argued the email was not relevant, but eventually conceded it was relevant after extensive questioning by the Court. Ex. 5 at 12:5-32:23. The Court granted Masimo's motion and ordered Apple to produce Cook's ESI. Dkt. 502.

**C. <u>The ITC Investigation</u>**

Masimo filed the ITC Investigation in June 2021. Powell Decl. ¶ 8. Similar to this case, part of the ITC Investigation involves light-based physiological monitoring technologies, including pulse rate and oxygen saturation. Ex. 6 ¶¶ 24, 31, 46, 53, 60, 67, 74. As in this case, Masimo alleges Apple copied Masimo's technology after meeting with Masimo in 2013 to discuss a potential collaboration. *Id.* ¶¶ 32-38. Masimo also alleges Apple gained access to Masimo's technology through O'Reilly, Lamego, and others. *Id.* Masimo alleges the Apple Watch infringes several Masimo patents related to hardware designs and physiological monitoring methods relating to light. *Id.* ¶¶ 31 & 38. The ITC instituted a formal investigation in August 2021 (Ex. 7) and issued a protective order with confidentiality obligations similar to the "Attorneys Eyes Only" tier in this case (Ex. 8 ¶ 3). Fact discovery in the ITC Investigation is set to close in February 2022 with trial in June 2022. Ex. 9.

/ / /

---

[2] In *True Wearables*, Masimo sued Lamego and True Wearables (the company Lamego founded after leaving Apple). Apple moved to quash a subpoena Masimo issued on Apple in that case. Ex. 2. The joint stipulation discussed the Lamego-Cook Email, which Lamego designated as "confidential" in that case, thereby preventing Masimo from using it in this case. *See id.* at 26-27. This Court found the email was not confidential and ordered Apple to file it publicly. Ex. 3 at 17:14-18.

Apple has also raised some of the same discovery objections in the ITC Investigation that this Court considered and rejected in this case. Among other things, Apple seeks to exclude Masimo's preferred counsel (Steve Jensen) from accessing confidential information. Powell Decl. ¶ 12. Apple also refuses to search a reasonable number of ESI custodians. *Id.* Apple also refuses to produce discovery on future products and prototypes. *Id.* The Court rejected Apple's objections on all of those issues in this case. Dkt. 67, 355, 503.

## III. ARGUMENT

### A. Legal Standards

The Ninth Circuit "***strongly favors*** access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (addressing motion filed by third-party intervenors). "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* at 1131. "Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material ***should generally be granted***." *Id.*

Courts addressing discovery cross-use weigh two factors. ***First***, the moving party must "demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Id.* The Ninth Circuit requires only a minimal threshold showing that at least some documents may be relevant. *Id.* at 1133-34 ("If ***any*** properly protected *Foltz* discovery is relevant to the collateral suits, the district court should have modified the protective order in the interest of avoiding duplicative discovery.") ***Second***, the court "must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133. The reliance interest is diminished in cases involving a "blanket protective order" because such orders are "by nature overinclusive." *Id.* Courts are less likely to

find prejudice where the parties in both cases are the same because "no concerns exist regarding unfettered dissemination to unknown third parties." *See Cummins-Allison Corp. v. SBM Co.*, 2013 WL 12250448, at *2, *3 (D. Haw. Nov. 8, 2013).

In *Foltz*, the Ninth Circuit quoted with approval the standard expressed by the Seventh and Tenth Circuits that, "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Id.* at 1132 (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) and *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)). The Seventh Circuit has also held it was an abuse of discretion to refuse to modify a protective order to allow use of a deposition in a collateral ITC action where refusal "forces [the moving party] and the ITC to duplicate discovery that has already been made" and the opposing party "made no showing that its substantial rights will be prejudiced" by modification. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 860-61 (7th Cir. 1994).

**B. <u>Granting The Motion Would Avoid Duplicative Discovery</u>**

In evaluating the minimal threshold of overlapping discovery, "the district court that issued the [protective] order makes only a rough estimate of relevance . . . ." *Foltz*, 331 F.3d at 1132. The court's analysis is "based upon a comparison of the complaints in the [present] litigation and the collateral suits, the contents of the protected discovery, the general rules on the scope of discovery in the collateral jurisdictions, and any other relevant factors that are in conformity with this opinion." *Id.* at 1134.

The required showing of relevance is not high. *See, e.g.*, *Universal Entertainment Corporation v. Aruze Gaming America, Inc.*, 2020 WL 2308226, at *4 (D. Nev. May 8, 2020) (finding the discovery is "relevant enough" that "a substantial amount of discovery could be avoided therein by modifying the protective order"); *Verizon California Inc. v. Ronald A. Katz Tech. Licensing L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003) (modifying protective order over plaintiff's relevance objections); *Streck, Inc. v.*

*Rsch. & Diagnostic Sys., Inc.*, 2008 WL 2813081, at *4 (D. Neb. July 18, 2008) (modifying protective order without making findings on relevance).

The allegations in this case and the ITC Investigation overlap such that discovery in this case is likely to be relevant in the ITC Investigation. Both cases involve Masimo's allegations that Apple hired former Masimo employees, including Michael O'Reilly and Marcelo Lamego, to incorporate Masimo's technology into Apple Watch products. *Compare* Dkt. 296-1 (4th Amended Complaint) at ¶¶ 19-25 *with* Ex. 6 (ITC Complaint) at ¶¶ 32-38. Both cases also involve Apple's use of Masimo's non-invasive monitoring technology. *Compare* Dkt. 296-1 at ¶¶ 9-17 *with* Ex. 6 at ¶¶ 9-20. Masimo accuses overlapping versions of the same Apple product in both cases. *Compare* Dkt. 296-1 at ¶¶ 238, 240, 255 *with* Ex. 6 at ¶ 39. Light-based physiological monitoring features, including pulse oximetry and pulse rate, are at issue in both cases. *Compare* Dkt. 296-1 at ¶¶ 10-12, 25, 234-244, 254-256 *with* Ex. 6 at ¶¶ 24-25, 31, 46, 53, 60, 67, 74.

As a result of the overlapping allegations, both parties served overlapping discovery requests. For example, Masimo requested Apple's source code, product guides, lab notebooks, and other development documents in both cases. *Compare* Ex. 10 at Nos. 6, 14, 71, 78 *with* Ex. 11 at Nos. 19, 26, 42, 43. Masimo also requested an inspection of Apple prototypes, documents about reverse engineering Masimo products, and communications with the FDA. *Compare* Ex. 10 at Nos. 96, 226, 285, 442 *with* Ex. 11 at Nos. 27, 51, 107, 126. Apple similarly requested Masimo's source code, lab notebooks, other development documents, marketing documents, and financial documents in both cases. *Compare* Ex. 12 at Nos. 68, 79, 144, 194, 198, *with* Ex. 13 at Nos. 13, 121, 136, 137, 161, 169. Both parties will produce overlapping documents.

The discovery standards are also similar in the ITC and this Court. *Compare* 19 CFR § 210.27(b)(1) (permitting discovery of "any matter, not privileged, that is relevant to . . . the claim or defense of the party seeking discovery or to the claim or defense of any other party") *with* Fed. R. Civ. P. 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to

the needs of the case"); *see also Jepson*, 30 F.3d at 861 (finding the broad discovery rules in the ITC indicated the information at issue was discoverable in the ITC).

Accordingly, both parties have produced and will produce a significant number of documents that are relevant to the ITC Investigation. The same law firms have made appearances in both cases, so counsel on both sides already have the documents produced in both cases. Moreover, discovery in this case has been contentious and it appears that discovery in the ITC Investigation will be similarly contentious. Granting the Motion would save significant costs by allowing the parties access to discovery from this case as if it had been produced in the ITC Investigation. The accelerated schedule for ITC matters makes it far more efficient for the parties to use documents already produced in this case rather than starting from scratch. Masimo has satisfied the relevancy prong of *Foltz*.

**C. Apple Cannot Show Substantial Prejudice**

A party seeking continued protection under a protective order bears the burden to "allege specific prejudice or harm." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not suffice. *Id.*

Apple has not presented any reason why modifying the Protective Order would prejudice Apple. Nor could Apple claim it would suffer any prejudice. Most cases addressing prejudice and cross-use disputes involve disclosure to ***others*** not involved in the original case. *See, e.g.*, *Foltz*, 331 F.3d at 1138 (addressing motion filed by third-party intervenors). Courts are even less likely to find prejudice where, as here, the parties are the same. As one court explained, "Plaintiff wishes to use confidential information and discovery in the pending actions involving it and Defendant" so "no concerns exist regarding unfettered dissemination to unknown third parties." *Cummins*, 2013 WL 12250448, at *2, *3. The court explained:

/ / /

> Thus, Defendant cannot legitimately raise concerns about disclosure to unknown collateral litigants. Neither can Defendant reasonably contend that Plaintiff should have access in this litigation, but not in other pending litigation involving these same parties, particularly given the relatedness of the cases. Plaintiff's obligation to maintain confidence is the same in any action, so it is unclear why access would be permissible here, but not in [the collateral litigation].

*Id.*

Another district court in the Ninth Circuit recently addressed a similar request to modify the "use" restriction in a protective order to allow use in other cases. *Universal Entertainment*, 2020 WL 2308226, at *1. The court denied the request with respect to a criminal case involving different parties where the moving party failed to identify "any overlap of facts and issues between the cases." *Id.* at *3-*4. However, the court granted the request with respect to a case involving the same parties and overlapping discovery. *Id.* at *4. The court concluded the "protected discovery is relevant enough" and found no prejudice because the existing parties "are the only parties that have access to the protected discovery." *Id.* at *4. The same analysis applies here.

During the meet and confer process, Apple asserted that allowing use in the ITC Investigation would "add[] a significant amount of irrelevant documents into each proceeding," which "would only cause confusion." Ex. 16 at 1-2. Apple does not explain why production of some irrelevant documents it already reviewed for this case would cause "confusion," much less substantial prejudice. Moreover, courts reject similar arguments because the "ultimate admissibility" of the information would still be decided by the collateral court. *See Cummins*, 2013 WL 12250448 at *2-3; *see also Streck*, 2008 WL 2813081, at *1 ("Whether the documents may ultimately be admissible in the Interference proceeding is not for this court to decide."); *Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 2238022, at *3 (N.D. Cal. June 15, 2012) (explaining "Plaintiff will obviously have to obtain the Nevada court's permission before using the disputed materials at trial"). Apple has not met its burden under the prejudice prong of *Foltz*.

/ / /

**D. Apple's Alternative Proposal Is Inefficient And Unfair**

Apple suggested each side should designate only specific documents that it produced in this case that would be available for use in the ITC Investigation. Ex. 16 at 2. Apple's proposal would thus allow each side to determine for itself which of its own documents from this case would be available in the ITC Investigation. That proposal is inefficient and unfair.

Apple's proposal would require the parties to duplicate their discovery efforts in this case. It would also allow Apple to prevent Masimo from relying on a document Masimo believes is highly relevant to the ITC Investigation merely because ***Apple*** decides it is not relevant in the ITC Investigation. Permitting Apple to pick which documents it decides are relevant is particularly problematic because Apple applies an unduly narrow definition of "relevance" in attempting to limit discovery. Indeed, this Court recently found Apple did so in opposing discovery from Tim Cook. *See* Ex. 4 at 12:5-32:23. Based on Apple's positions in discovery, the Court should not allow Apple to use the Protective Order here to withhold documents in the ITC Investigation. Discovery in this case should be available for use in the ITC Investigation. The ITC can resolve any disputes about admissibility, just as it will for other documents produced in the ITC Investigation.

**E. The Parties Agree The Court May Resolve This Dispute**

Masimo files the Motion, in this particular forum, at Apple's request. Masimo originally suggested the Court referred this dispute to the Special Master. Ex. 17 at 1-2; Dkt. 470 ¶ 4 (the Court referring "disputes that would normally be addressed under Local Rule 37 and any motions relating to discovery under Fed. R. Civ. P. 26-37"). Apple argued the dispute had not been referred to the Special Master because it was not a discovery dispute. Ex. 18 at 2. Masimo explained it had no preference as to who decides the dispute, but wanted to avoid delay associated with filing the motion in the wrong location. Ex. 19 at 1-2. Thus, the parties sought the Special Master's guidance. *See* Ex. 20. The Special Master declined to rule on the dispute unless the Court first

stated he had jurisdiction. *Id.* Thus, both parties agreed this Court may decide this dispute. Ex. 21. Apple also argued that Masimo should raise this dispute as an ordinary motion under Local Rule 7 instead of under Local Rule 37. *Id.* Masimo did so to avoid any further dispute or delay. *Id.*

## IV. CONCLUSION

Masimo respectfully requests the Court modify the Protective Order as set forth in the Proposed Order. These modifications would allow the parties to use Protected Material from this case in the ITC Investigation and would confirm the Protective Order does not prevent the parties from producing Protected Material from this case in the ITC Investigation.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 19, 2021

By: */s/ Adam B. Powell*
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Adam B. Powell

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

35267435