# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

MASIMO CORPORATION, ET AL,      ) CASE NO: 8:20-CV-00048-JVS-JDEx
                                )
              Plaintiffs,       )           CIVIL
                                )
     vs.                        )      Santa Ana, California
                                )
APPLE, INC,                     )      Thursday, June 10, 2021
                                )
              Defendant.        )    (10:01 a.m. to 10:19 a.m.)

HEARING RE: PLAINTIFFS' MOTION TO COMPEL [DKT.NO.377]
AND ORDER DENYING THE MOTION

BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:              SEE PAGE 2

Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Maria Barr

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES</u>:


For Plaintiffs:                 JOSEPH R. RE, ESQ.
                                Knobbe Martens Olson & Bear, LLP
                                2040 Main Street
                                14th Floor
                                Irvine, CA 92614


                                ADAM POWELL, ESQ.
                                Knobbe Martens Olson & Bear, LLP
                                12790 El Camino Real
                                San Diego, CA 92130


For Defendant:                  JOSHUA H. LERNER, ESQ.
                                Gibson Dunn & Crutcher, LLP
                                555 Mission Street
                                Suite 3000
                                San Francisco, CA 94105


                                ANGELIQUE KAOUNIS, ESQ.
                                Gibson Dunn & Crutcher, LLP
                                2029 Century Park East
                                Suite 4000
                                Los Angeles, CA 90067

Exhibit 1
-5-

3

1      <u>**Santa Ana, California; Thursday, June 10, 2021; 10:01 a.m.**</u>

2                          <u>**(Call to Order)**</u>

3              **THE COURT:**  Good morning, everyone.

4        **(Attorneys greet the Court)**

5              We're calling the case of *Masimo Corporation, et al.*

6    *versus Apple, Inc.*; Central District of California Case Number

7    8:20-cv-48-JVS-JDEx.  We're here on Plaintiffs' Motion to

8    Compel which is Docket Number 377.

9              And we'll take appearances of counsel, starting with

10   counsel for Plaintiffs.

11             **MR. RE:**  Good morning, Your Honor.  Joseph Re from

12   Knobbe Martens.  With me is my partner, Adam Powell.

13             **THE COURT:**  Good morning.

14             And on behalf of Defendant?

15             **MR. LERNER:**  Good morning, Your Honor.  Joshua Lerner

16   and Angelique Kaounis from Gibson Dunn on behalf of Apple.  And

17   with us today is Ryan Moran, in-house counsel at Apple.

18             **THE COURT:**  All right.  Good morning.

19             All right.  We're here on the Motion to Compel.  I've

20   reviewed the motion; I've reviewed the joint stipulation; I've

21   reviewed declarations and exhibits offered in support and

22   opposition to the requested relief and Plaintiffs' supplemental

23   memorandum and related information.

24             We're going to get started.

25             I have a tentative.  I'm going to give you the short

Exhibit 1
-6-

4

 1   version.

 2          The tentative is I'm tentatively inclined to deny the

 3   motion.

 4          I'm going to assume, without deciding, that it was

 5   Apple's burden here, based on both the case law and the

 6   existing order previously entered by me in this case, that

 7   Apple had the burden here to oppose the relief Plaintiffs seek

 8   with respect to Mr. Cook's -- a search of Mr. Cook's -- or

 9   designating Mr. Cook as an ESI custodian.

10          And although the apex doctrine relating to

11   depositions and 30(b) -- or depositions doesn't apply directly

12   here; some, but not all, of the considerations that underly

13   that doctrine apply; and that is that it is more burdensome.

14   And I don't need a declaration to know this; that it is more

15   burdensome to search the CEO of a multi-billion dollar, maybe

16   multi-trillion dollar international corporation for records.

17   But the burden is not the same as having that person appear for

18   an apex depositions but there is some burden, there is some

19   burden and that's facially apparent.

20          And the proffer made by Plaintiffs, I'm going to

21   characterize as relatively weak in connection with the

22   relevance of Mr. Cook's email and other electronically stored

23   information sources as it relates to the claim in this case --

24   claims in this case -- claims and defenses in this case.

25          Gonna have a big bright light proviso now.  Counsel

Exhibit 1
-7-

5

1    have heard me say this at least once, maybe twice.

2            I'm going on what's in front of me; and in

3    particular, I would take counsel at their word.  We've got

4    excellent counsel in this case.  And I've got a representation

5    by counsel for Apple -- and although only -- it's

6    electronically signed by one person, there are (one, two,

7    three, four, five, six) seven attorneys underneath that

8    signature so I'm attributing this to all those counsel and the

9    firm representing Apple and Apple itself.

10           Quote, page -- this is from page 9 of the Joint

11   Stipulation, (quote):

12               "Tim Cook (comma), Apple's CEO (comma), is not likely

13               to have discoverable information relevant to any

14               parties' claims or defenses." (period, close/quote).

15           It's a conclusory statement but it's made by an

16   Officer of the Court and Officers of the Court, to this Court

17   in connection with this motion.  And I want Apple and its

18   counsel to understand that's the basis for my tentative and

19   potentially the basis for my ruling.

20           The world's a funny place.  We talked about it

21   before.  Sometimes there are acquisitions.  Sometimes things

22   come out that no one knew were going to come out and no one

23   understood were going to come out that can change how things

24   are looked at later.

25           I'm accepting that representation, that counsel's

Exhibit 1
-8-

1   done an inquiry and based on their inquiry, Tim Cook is not

2   likely to have discoverable information relevant to any

3   parties' claims or defenses.  And I've read -- there's dueling

4   declarations here.  Frankly, the issues at depth in those

5   dueling declarations are sort of tersely.  They're not to the

6   heart of the case.

7            But that statement, I'm relying on.  If that turns

8   out to not be true, through some other source, there will be

9   severe repercussions because I'm relying on it.  So I want to

10  make sure Apple understands that.

11           Regardless of my ruling here, Apple can still agree

12  to conduct a search of Mr. Cook's email as an ESI custodian.

13  I'm not -- my tentative is not to order it but be on notice.

14  You have put yourself out there and I'm relying on it.  If it

15  turns out not to be true, the consequences, we will be back

16  here and there will be an evidentiary hearing.

17           All right.  So let me hear -- Plaintiff, it's your

18  motion.  You've heard my tentative is to rule against you.  Let

19  me hear from you.

20           **MR. RE:**  Thank you, Your Honor.

21           I think --

22           **THE COURT:**  And this is Mr. Re speaking for our

23  recording.

24           **MR. RE:**  Thank you.  Mr. Re, R-e, is the last name.

25           I don't see any record evidence at all about burden.

1    This is simply an ESI search.  It is minimal effort.

2         **THE COURT:**  And if you heard what I said, there are

3    -- you haven't been here for all the discovery motions in here

4    and I've talked about that issue, that there are some -- some

5    cases where the burden is facially apparent.  And I'm not

6    saying it rises to the level of what the burden would be for an

7    apex deposition but I am saying it's facially apparent that

8    there is a burden to -- and we've also talked about pipes in

9    this case a lot -- that discovery requests are going through

10   pipes.  The pipes here are expanded in terms of the number of

11   potential custodians.  But we're trying to do things that make

12   economic sense under Rule 1 of the Federal Rules of Civil

13   Procedure but also get you what you're looking for.

14        Your showing to me, Plaintiffs showing to me is

15   minimal at best.  The fact that the CEO of Apple indicated he's

16   very interested in health care technology, it has very little

17   weight in terms of making that person's email subject to

18   search.

19        The issues regarding Dr. O'Riley, the fact that

20   regardless of how you characterize it, I don't see evidence.

21   We have Dr. O'Riley's first person attestation that his

22   interaction with Mr. Kirk at his interviews was essentially a

23   windup; they did not discuss substance of any Masimo

24   technology.  And the fact that the CEO met with someone at the

25   end of a day's worth of interviews, even taking into account

Exhibit 1
-10-

1   all the information, is not to me sufficient to overcome that

2   limited burden that's facially apparent from the request.

3          **MR. RE:**  Okay.  You say "facially apparent."  I do

4   want to address the basis for the tentative.

5          The representation made that you're relying upon is

6   made without any representation as to how they could possibly

7   know this.  What's the basis for the representation?  I don't

8   even see them even suggesting that they've done any ESI

9   searching to even have a basis for the representation.

10         **THE COURT:**  And again, it gets back to they're -- I

11  think I quoted Bob Dylan at one of our earlier hearings.  I

12  don't need a weatherman to know which way the wind blows.

13         I can -- you don't have to have 15 declarations to

14  say doing an ESI search for the President and CEO of Apple,

15  Inc. from 2013 to the present -- where, again, talking

16  generally about whatever the time period is going to be -- the

17  number of devices, the number of avenues of communication that

18  need to be searched and the heightened -- the heightened need

19  for review when you're looking at a CEO's search is different

20  from the type of review, an attorney review that you're doing

21  for an engineer's -- search of an engineer's email.  These are

22  all things that I don't need a declaration to tell me.  They're

23  independently knowable.

24         That said, I'm not saying it's a massive showing or a

25  massive, per se, burden demonstrated, but that's the whole

9

1   purpose of the apex doctrine in depositions is it goes without

2   saying that that's a burden.

3       Now I'm not saying the apex doctrine applies here but

4   the aspects of it are equally available.  And I'm going to ask

5   you, Mr. Re, if you can if you can keep your mask on.

6       Aspects of it, aspects of it, the theory of it is the

7   same but I'm being very clear and I'm repeating that

8   representation that I mentioned and that you mentioned.

9       Implicit in every discovery response is an

10  affirmation and attestation by the attorney that it's made in

11  good faith; that it's made not to conceal or not to

12  unnecessarily delay the case.  Ramp it up when it's made in a

13  brief to the court.

14      I don't believe that Apple's lawyers would make that

15  willy-nilly without some foundation and I'm accepting it.  But

16  I am letting everyone know if it turns out from some other

17  source that Mr. Cook actually does have discoverable

18  information relevant to any parties' claims or defenses in his

19  ESI streams, we will be having a hearing and it may involve a

20  hearing of Mr. Cook testifying in this court, in person, if

21  that turns out to be a representation that was made to me that

22  I'm relying on for purposes of making this order.  And it may

23  also require testimony from counsel who made this

24  representation but that's only if it turns out to potentially

25  not be true.

10

1          All right.  Please continue, Mr. Re.

2          **MR. RE:**  Well, it sounds like you made up your mind

3     and --

4          **THE COURT:**  I mean I have thought about it and -- but

5     I want to make sure you have a full and fair opportunity to be

6     heard.

7          **MR. RE:**  Well, my only point is that there's no basis

8     for the statement.  You're just relying on the good-faith

9     Officer of the Court; I assume it's true.  If that's the

10    analysis, I have nothing further to add.

11         **THE COURT:**  Well let me just say, combined with what

12    doesn't require evidence; and that is, there is a burden on the

13    CEO of one of the largest corporations in the world to have me

14    have that person designated as an ESI custodian beyond what it

15    would be for, say, an engineer or a lesser person who's not

16    dealing with lawyers on a regular basis, who's not probably got

17    a the same level of communications.

18         So I don't need an expert, I don't need a declaration

19    to understand that that's where the apex doctrine comes from.

20         **MR. RE:**  But the apex doctrine is based on the burden

21    and oppression to the witness.  We have no evidence or

22    suggestion by anybody that the witness is even involved --

23         **THE COURT:**  So I'm going to disagree with you.  The

24    apex doctrine is not just the burden on the witness; it's the

25    burden on the entity to have --

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 1
-13-

11

1          We talked about the *Mattel versus Bratx* case, right?

2     We were here -- I know you were here, Mr. Lerner, when you had

3     the CEO of Mattel International sitting up in Judge Carter's

4     courtroom in the back row for a week.  That was a burden on him

5     but it was also a burden on Mattel.  And what we're talking

6     about with respect to the apex doctrine is a burden on the

7     witness but also a burden on the company itself to have the CEO

8     pulled out for eight hours or four hours or whatnot.  So it's a

9     burden on both.

10          **MR. RE:**  I agree with what you just said but we have

11     no evidence that Mr. Cook will be pulled to do anything.

12     That's the difference between a personal appearance and a ESI.

13     You can check my ESI and I don't even know it's happening so

14     there's no participation --

15          **THE COURT:**  Well so again I'm going to stop you.

16          I expect more from counsel when checking ESI.  If

17     Mr. Cook or any custodian uses devices, uses a communications

18     stream other than company email, it's up to the lawyers to

19     investigate that and find out.  What's the simplest way?  Ask

20     the person.  And he may say well that takes three seconds to

21     ask.

22          Easier said than done when presumably the primary

23     time period you're talking about is 2013 and 2014, to ask the

24     CEO where and what communication streams he or she used during

25     that time period is not an easy task.

12

1          **MR. RE:**  I can't debate non-existent evidence.  You

2     tell me this.  I've been doing this for 35 years.  If you say

3     so, okay.  I can't convince you but I can't rebut non-existent

4     evidence.

5          **THE COURT:**  Well again, I'm doing a balancing, and

6     one of the things I'm balancing is what's the relevance.  And

7     what I'm telling you is what's been presented is not compelling

8     in terms of even if it's just a limited burden, what's been

9     presented is not compelling.  Most of it relates to, again, the

10    idea of Mr. Cook was interested in health care products.  All

11    right.  Mr. Cook spoke with Dr. Riley after his interviews.

12    Okay.

13         And the rest of it is primarily Mr. Cook's, as it's

14    characterized -- and I'm doing air quotes -- "right-hand man,"

15    (close/quote), also had interactions that you want to know

16    about.  But my understanding is that right-hand man is one of

17    the custodians.  And so to the extent Mr. Cook was

18    communicating with the right-hand man, presumably you're going

19    to get that.

20         So I don't find the showing by Plaintiffs

21    particularly compelling.

22         And from the defense standpoint, it's by operation of

23    law and commonsense that there is a burden and I don't find --

24    I find that you haven't overcome it.

25         But again, I'm going to reiterate what I said before

Exhibit 1
-15-

13

1    about none of this prevents Defendant from going forward with

2    the ESI search of Mr. Cook and agreeing to do so.  And if they

3    don't, they do it at their own risk.

4           All right.  Anything else, Mr. Re?

5           **MR. RE:**  Nothing further.

6           **THE COURT:**  All right.  Mr. Lerner, unless there's

7    something you want to add or clarify or find out about, the

8    tentative will be the order of the court and the motion will be

9    denied for the reasons stated on the record.

10          **MR. LERNER:**  No, Your Honor.  We agree with both the

11   reasoning as to relevance on the issues raised in the

12   plaintiffs' papers like health care and with respect to the

13   burden.

14          **THE COURT:**  All right.  And do you hear and

15   understand what I said about the representation made at page 9

16   of the Joint Stipulation?

17          **MR. LERNER:**  Yes, Your Honor.

18          **THE COURT:**  All right.  Could you make sure.  And I

19   know we have a representative from Apple's in-house counsel.

20   Could you make sure that that is passed on.  And nothing

21   prevents you and Apple from going forward with Mr. Cook, doing

22   a search of Mr. Cook's ESI.  This order merely denies the

23   motion.  And I'm letting plaintiffs know if they get further

24   information that bears on -- that causes me to question this

25   linchpin of what I'm relying on, this is without prejudice to

Exhibit 1
-16-

14

1   re-raising this motion and I would expect that there would be a

2   hearing.  But it depends on what the showing is; I'm not going

3   to prejudge anything but I expect that there would be a hearing

4   where live testimony would be taken if that's the case and a

5   sufficient showing is made and there will be likely -- well

6   I'll leave it at that.

7           All right?

8           **MR. LERNER:**  Thank you.

9           **MR. RE:**  Thank you.

10          **THE COURT:**  Thank you.  We're adjourned.

11          **MS. KAOUNIS:**  Thank you, Your Honor.

12      **(Proceeding adjourned at 10:19 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 1
-17-

15

## <u>CERTIFICATION</u>

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>June 12, 2021</u>

         Signed                                                                              Dated


*TONI HUDSON, TRANSCRIBER*

Exhibit 1
-18-

# EXHIBIT 2

1  Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
    stephen.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
    perry.oldham@knobbe.com
4  Irfan A. Lateef (Bar No. 204004)
    irfan.lateef@knobbe.com
5  Brian C. Claassen (Bar No. 253627)
    brian.claassen@knobbe.com
6  James E. Youngblood (Bar No. 325993)
    jamie.youngblood@knobbe.com
7  KNOBBE, MARTENS, OLSON &
   BEAR, LLP
8  2040 Main Street, Fourteenth Floor        JOSHUA H. LERNER, SBN 220755
   Irvine, CA 92614                              jlerner@gibsondunn.com
9  Telephone: (949)-760-0404                 GIBSON, DUNN & CRUTCHER LLP
   Facsimile: (949)-760-9502                 555 Mission Street Suite 3000
10                                           San Francisco, CA 94105
   Adam B. Powell (Bar. No. 272725)          Tel.: 415.393.8200 / Fax: 415.393.8306
11    adam.powell@knobbe.com
   KNOBBE, MARTENS, OLSON &                  H. MARK LYON, SBN 162061
12  BEAR, LLP                                   mlyon@gibsondunn.com
   3579 Valley Centre Drive                  GIBSON, DUNN & CRUTCHER LLP
13  San Diego, CA 92130                       1881 Page Mill Road
   Telephone: (858) 707-4000;                Palo Alto, CA 94304-1211
14  Facsimile: (858) 707-4001                Tel.: 650.849.5300 / Fax: 650.849.5333

15  *Attorneys for Plaintiffs Masimo Corp. and*   *Attorneys for Non-Party Apple Inc.*
    *Cercacor Laboratories, Inc.*                 *[Additional counsel listed on next page]*
16  *[Additional counsel listed on next page]*

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19                  **SOUTHERN DIVISION**

20  MASIMO CORPORATION, a              CASE NO. 8:18-cv-02001-JVS (JDEx)
    Delaware corporation; and
21  CERCACOR LABORATORIES, INC.,       **JOINT STIPULATION REGARDING**
    a Delaware corporation,            **NON-PARTY APPLE INC.'S**
22                                      **MOTION TO QUASH SUBPOENA**
23               Plaintiffs,            **AND FOR A PROTECTIVE ORDER**

24        v.                           **Hearing:**
                                        Date:    June 24, 2021
25  TRUE WEARABLES, INC., a            Time:    10:00 a.m.
    Delaware corporation; and          Place:   Courtroom 6A
26  MARCELO LAMEGO, an individual,     Judge:   Hon. John D. Early

27               Defendants.           [Discovery Document Referred to
                                        Hon. Magistrate John D. Early]

28  UNREDACTED VERSION OF DOCUMENT FILED PURSUANT TO ORDER OF THE
       COURT DATED JUNE 24, 2021 (DKT. NO. 311)

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-19-

1

Mark D. Kachner (Bar No. 234192)
  mark.kachner@knobbe.com
KNOBBE MARTENS OLSON &
BEAR LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 601-1263

*Attorney for Plaintiffs Masimo Corp. and
Cercacor Laboratories, Inc.*

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520
*Attorney for Non-Party Apple Inc.*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-20-

# TABLE OF CONTENTS

Page

I.   INTRODUCTORY STATEMENTS .................................................................. 1

    A.   Apple's Introductory Statement ................................................. 1

    B.   Masimo's Introductory Statement ............................................. 3

II.  DISCOVERY AT ISSUE .......................................................................... 6

    A.   Deposition Topics .................................................................... 6

    B.   Requests for Production ........................................................... 6

III. APPLE'S POSITION ............................................................................. 8

    A.   Factual Background ................................................................. 8

        1.   Plaintiffs Filed The True Wearables Case Against Mr. Lamego And True Wearables ......................................... 8

        2.   Plaintiffs First Served Apple With A Subpoena In The True Wearables Case One Day Before Filing The Apple Case .................................................................... 8

        3.   A Dispute Concerning The Same Discovery Plaintiffs Seek Via Their Subpoena In This Case Is Before This Court In The Apple Case ............................................ 10

        4.   Apple's Counsel Met And Conferred With Plaintiffs' Counsel About The Pending Apple Subpoena ................. 11

    B.   Legal Standard ...................................................................... 12

    C.   Argument .............................................................................. 14

        1.   The Information Sought By The Subpoena Is Neither Relevant Nor Proportionate To This Case .................... 14

            a.   Plaintiffs Seek Discovery For The Apple Case ................. 15

            b.   The Documents And Testimony Requested From Apple Are Not Relevant To This Case ............................... 16

            c.   The Discovery Sought Is Unduly Burdensome And Not Proportionate To The Needs Of This Case ................. 18

i

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-21-

**TABLE OF CONTENTS**
*(Cont'd)*

Page

2. Plaintiffs Have Not Demonstrated A Substantial Need For Seeking Confidential Discovery From Apple In This Case .........19

3. Plaintiffs' Subpoena Improperly Seeks To Duplicate Discovery Work In The Apple Case................................................21

4. Plaintiffs' Subpoena Is An End Run Around The Discovery Limits Imposed By The Court In The Apple Case................................................................................25

D. Conclusion................................................................................26

IV. MASIMO'S POSITION ...........................................................26

A. Factual Background ................................................................26

1. Lamego Pursued An Executive Position At Apple While Still Serving as Cercacor's Chief Technology Officer................26

2. Lamego Put His Apple Job Duties at Issue in This Case .............27

3. Lamego Put His Termination From Apple at Issue In This Case................................................................................28

4. Apple's Actions Show That Facts About Apple Are Relevant to This Case ................................................................29

B. Legal Standard........................................................................30

C. Argument.................................................................................30

1. Masimo Seeks Limited Discovery that is Relevant and Proportionate to This Case.............................................................30

a. Apple's recruitment of Lamego while still at Cercacor is highly relevant to this case...............................31

b. Limited discovery about Lamego's job duties at Apple is highly relevant in this case...................................32

c. Apple terminating Mr. Lamego is highly relevant in this case.................................................................................33

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-22-

**TABLE OF CONTENTS**
(*Cont'd*)

Page

2.  Masimo Has a Substantial Need For the Requested Discovery ........................................................................ 35

3.  Masimo's Subpoena Does Not Impose an Undue Burden on Apple ........................................................................ 35

4.  Apple's Remaining Arguments Do Not Justify Quashing The Subpoena ..................................................................... 36

    a.  Masimo timely served its subpoena .................................. 36

    b.  Masimo is not seeking to avoid discovery limits in the Apple case ................................................................ 37

    c.  Masimo's first subpoena is irrelevant ............................... 37

    d.  Masimo properly focused the subpoena ............................ 38

    e.  Any overlap in discovery between this case and the Apple Case is not a basis to quash .................................... 39

D.  Conclusion ............................................................................. 40

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-23-

Pursuant to Federal Rules of Civil Procedure 37 and 45, and Local Rules 37-2 and 45-1, Non-Party Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as respondents, respectfully submit the following Joint Stipulation regarding Apple's Motion to Quash Subpoena and for a Protective Order. The parties met and conferred on May 19, 2021, but were unable to resolve the disputes presented in this Joint Stipulation. *See* Declaration of Ilissa Samplin ("Samplin Decl.") ¶ 5.

## I. INTRODUCTORY STATEMENTS

### A. Apple's Introductory Statement

This is the second time Plaintiffs Masimo and Cercacor have served an improper subpoena on Apple to obtain evidence that has nothing to do with this case. After Apple went through the burden and expense of challenging their last such subpoena, Plaintiffs withdrew it. Apple asks the Court to quash Plaintiffs' second subpoena (the "Subpoena"), which is even more improper than the first. This time Plaintiffs seek evidence concerning Mr. Lamego's employment history with Apple that is not only irrelevant to this case but also is the subject of a fully briefed motion to compel in Plaintiffs' separate case against Apple. Apparently aware of the weakness of their pending motion in their case against Apple, Plaintiffs are using the subpoena process in this case to improperly take a second shot at the same evidence. The Court should grant Apple's motion and quash the Subpoena for four reasons:

*First*, Plaintiffs' Subpoena for information related to Marcelo Lamego's connections to Apple violates Federal Rule of Procedure 26 because none of the discovery sought is relevant to, or proportionate to the needs of, *this* case (the "True Wearables Case"). In this case, Plaintiffs' claims are based on Mr. Lamego's conduct while employed by Cercacor and in connection with the company he founded, True Wearables. The claims are not based on Mr. Lamego's conduct at Apple, for Apple, or on behalf of Apple—Apple is not even mentioned in any of Plaintiffs' eleven causes of action in this case. *See generally* Samplin Decl. Ex. A, at 43–95 (Subpoena Addendum

Exhibit 2
-24-

2, True Wearables Case, Dkt. No. 42, First Am. Compl.) ("True Wearables FAC"). Accordingly, Plaintiffs' Subpoena is not designed to elicit discovery relevant to Plaintiffs' claims in, and proportional to the needs of, this case. Rather, the Subpoena on its face pertains to Plaintiffs' claims against Apple in Plaintiffs' separate case against Apple, *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048-JVS (JDEx) (C.D. Cal.) (the "Apple Case").

*Second*, the information Plaintiffs seek is not only irrelevant to this case, it is Apple's confidential information—including, to give a few examples, documents relating to Apple's patent applications and communications, including with Apple attorneys, relating to hiring and termination decisions. Plaintiffs have made no showing of a "substantial need" for this confidential information in the True Wearables Case that cannot be otherwise met without undue hardship. Indeed, the information Plaintiffs seek here is the same discovery they seek in the Apple Case (where Plaintiffs also lack a basis for the discovery, as explained in Section III.A.3 below). Plaintiffs' lack of substantial need for Apple's confidential information responsive to the Subpoena provides the Court with further good cause to quash the Subpoena and enter a protective order.

*Third*, it is inappropriate and inefficient for Plaintiffs to propound discovery in this case that has nothing to do with this case and requires both Apple and the Court to duplicate work that already is being done in the Apple Case. The deposition topics and document requests in Plaintiffs' Subpoena are identical in subject matter to several of Plaintiffs' requests at issue in a pending motion to compel in the Apple Case. Plaintiffs' attempt to use this case to duplicate discovery is highly improper; it is nothing more than an attempted end run around the relevance and proportionality requirements of Federal Rule of Civil Procedure 26.

*Fourth*, Plaintiffs' Subpoena also is an end run around the Scheduling Order in the Apple Case (Samplin Decl. Ex. M (Dkt. No. 37)) because Plaintiffs are attempting to take the equivalent of an additional Rule 30(b)(6) deposition of Apple's corporate witness that will not count against the 100-hour deposition limit set by the Court in the

2

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-25-

Apple case. Plaintiffs' attempt to obtain additional deposition time is even more troubling given their steadfast refusal to serve on Apple in the Apple Case their Rule 30(b)(6) notice or deposition topics, despite Apple's repeated requests for such a notice since the middle of May.

Plaintiffs should not be permitted to use the existence of the True Wearables Case to circumvent discovery rules and the Court's Scheduling Order in the Apple Case. Apple respectfully requests that this Court quash the Subpoena in full and enter a protective order prohibiting the deposition and document production sought.

## B. Masimo's Introductory Statement

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") served the subpoena at issue to discover discrete facts from Apple that are at issue in this case. Masimo seeks a very narrow set of documents related to (1) Apple's recruitment of Lamego while he worked at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. These limited topics are highly relevant in this case. Also, Lamego put all three topics directly at issue in this case.

As part of the meet-and-confer process, Masimo focused the document requests to make clear these were the only topics on which Masimo sought discovery. Apple still refused discovery. Apple mischaracterizes the subpoena as broadly seeking information concerning "Mr. Lamego's employment history with Apple." To the contrary, the subpoena is limited to three discrete topics, which are highly relevant in this case.

Apple's recruitment of Lamego is highly relevant. In October 2013, while serving as the Chief Technical Office of Cercacor, Lamego emailed Apple's CEO, Tim Cook, to seek an executive position at Apple. At that same time, Lamego was telling Cercacor's Board of Directors that he had made a significant breakthrough, and Cercacor engineers were very excited about the company's future. Lamego's alleged breakthrough included the feasibility of measuring blood glucose non-invasively. Yet, Lamego was secretly seeking employment from Apple. Lamego told Mr. Cook that, with his 10 years of exposure to Masimo and Cercacor's technology, he "could add a

3

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-26-

Gibson, Dunn &
Crutcher LLP

significant value to the Apple team" to help solve "the patient problem." Lamego offered that, as a senior executive at Apple, he could solve that very difficult problem for Apple. Lamego then interviewed with Apple. Lamego's email and interview occurred months *before* he left Cercacor, while still under a fiduciary duty to Cercacor. Apple's recruitment of Lamego while he was still at Cercacor is highly relevant to the claims in this case. For example, Masimo is entitled to discover the specifics of what Lamego offered Apple in exchange for an executive position. This information is directly relevant to at least the breach-of-fiduciary-duty claims in this case.

Lamego's title and duties at Apple are also highly relevant. In response to Masimo's accusations *in this case*, Lamego initially denied that his work at Apple had any connection to Masimo or Cercacor. But Lamego now admits he worked on noninvasive physiological measurements for the Apple Watch. Masimo must be allowed some modest discovery on Lamego's activities at Apple to test the veracity of Lamego's seemingly contradictory statements. Further, Lamego specifically requested an executive level position at Apple. Masimo's modest request for information about Lamego's title and duties is not burdensome and highly relevant to paint a complete picture of Lamego's motivation for leaving Cercacor, his intent to commit the misconduct at issue here, and his intent to harm Masimo. This information is relevant to at least the breach-of-fiduciary-duty claims, the breach-of-contract claims, and Lamego's willful and malicious misappropriation of trade secrets.

Apple's basis for terminating Lamego is also highly relevant. Lamego and True Wearables have put Apple's firing of Lamego directly at issue. Lamego contends that Masimo "repeatedly tried to disrupt Dr. Lamego's career and business efforts." Lamego and his family blame Masimo for causing Apple to terminate Lamego's employment. Yet, Lamego refuses to provide any information about his termination by claiming he owes a duty of confidentiality to Apple. Because Defendants have put Lamego's termination at issue *in this case*, Masimo is entitled to discover the basis for the termination. This discovery is also relevant to Lamego's motive to harm Masimo.

4

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-27-

Gibson, Dunn &
Crutcher LLP

Apple cannot genuinely contend that all facts about Lamego's employment with Apple are irrelevant to this case.  Apple filed a notice of related cases identifying ***this case*** as related to the Apple Case.  Moreover, Apple and the Defendants in this case recently entered into a common-interest agreement.  To support that agreement, Defendants contend they have a common interest with Apple based on overlapping facts between this case and the Apple Case.  But they steadfastly refuse to identify those alleged overlapping facts.  They also refuse to provide any discovery about Apple.  Apple's agreement with Defendants and their reliance on overlapping facts to support a common-interest agreement, and the notice of related case, show some facts from Apple are relevant in this case.

Rather than address the relevant facts, Apple accuses Masimo of engaging in "gamesmanship with respect to basic discovery rules."  Apple speculates about the timing of Masimo's original subpoena to Apple, but that was dictated by the then-rapidly approaching deadline for the close of fact discovery in this case.  Once the Court extended the fact discovery deadline, Masimo promptly withdrew the subpoena to continue obtaining as much discovery as possible from Defendants.  Masimo cannot be faulted for trying to avoid unnecessarily burdening the Court.  Indeed, Masimo committed to narrow that subpoena before Apple unexpectedly cut off the parties' communications and suddenly filed a motion to quash.  Apple's accusations contradict the simple facts surrounding the original subpoena.

Apple speculates that Masimo is seeking discovery in this case to use in the Apple case.  But the protective orders in both cases preclude a party from using protected material in connection with any other case, absent agreement or further court order.  The email between Tim Cook and Marcelo Lamego, that Defendants produced under the protective order in this case, is a perfect example.  While that email is directly relevant to the Apple case, Masimo cannot present it in the Apple case until it is produced in that case.  In this case, Apple is not a party and thus Masimo must subpoena Apple for information that is relevant to this case even if the information is also relevant and will

5

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-28-

be produced in the Apple case. Thus, Apple cannot support its argument that Masimo is seeking discovery for the Apple case.

Masimo seeks a very narrow and targeted set of information from Apple that is directly relevant to the issues in this case. The discovery would not be burdensome for Apple to produce. Apple fails to meet its burden to preclude this discovery.

## II. DISCOVERY AT ISSUE

Consistent with Local Rule 37-2, this section contains the full text of the deposition topics and documents requests contained in Plaintiffs' Subpoena. A copy of the Subpoena is also attached as Exhibit A to the Samplin Declaration.

### A. Deposition Topics

**TOPIC NO. 1:**

Apple's reasons for hiring Marcelo Lamego.

**TOPIC NO. 2:**

Reasons for termination of Marcelo Lamego's employment relationship with Apple.

**TOPIC NO. 3:**

Apple's communications with Marcelo Lamego concerning Apple recruiting Marcelo Lamego.

**TOPIC NO. 4:**

Apple's communications with Marcelo Lamego concerning termination of Marcelo Lamego's employment relationship with Apple.

### B. Requests for Production

**REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REQUEST FOR PRODUCTION NO. 2:**

All documents related to Apple hiring Marcelo Lamego.

**REQUEST FOR PRODUCTION NO. 3:**

All documents related to the termination of Marcelo Lamego's employment

6

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-29-

relationship with Apple.

**REQUEST FOR PRODUCTION NO. 4:**

All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination.

**REQUEST FOR PRODUCTION NO. 5:**

All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications.

After Apple served its portion of the Joint Stipulation on Masimo, Masimo proposed to revise the Subpoena's Document Requests Nos. 2-5, as reflected in the parties' correspondence in Exhibits 1 and 2 to the Kachner Declaration, as follows:

**ORIGINAL REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REVISED REQUEST FOR PRODUCTION NO. 2:**

Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014.

**REVISED REQUEST FOR PRODUCTION NO. 3:**

Apple's communications with Marcelo Lamego regarding the end of his employment.

**REVISED REQUEST FOR PRODUCTION NO. 4:**

Apple's communications with Marcelo Lamego regarding his hiring by Apple.

**REVISED REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show Marcelo Lamego's job duties and title at Apple.

/ / /

/ / /

/ / /

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-30-

# III. APPLE'S POSITION

## A. Factual Background

### 1. Plaintiffs Filed The True Wearables Case Against Mr. Lamego And True Wearables.

Plaintiffs filed suit against Mr. Lamego and his company, True Wearables, on November 8, 2018, alleging breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement.

In their Complaint in the True Wearables Case, Plaintiffs allege that, following his roles at Masimo and Cercacor, Mr. Lamego worked at Apple for seven months before he founded True Wearables. Samplin Decl. Ex. A, at 57–58 (Subpoena Addendum 2, Dkt. No. 42, First Am. Compl. ¶¶ 35, 37, 38) ("True Wearables FAC"). Plaintiffs do not allege any claims against Mr. Lamego or True Wearables based on Mr. Lamego's seven months at Apple. The claims in the True Wearables Case do not concern Mr. Lamego's conduct for, on behalf of, or during his seven-month tenure at, Apple. Nor do they concern the circumstances of Mr. Lamego's departure from Apple. While Plaintiffs allege in the True Wearables Case that Apple recruited Mr. Lamego, *see id.* at 57 (¶ 35), there are no claims asserted in this case based on that alleged conduct by Apple. Indeed, Apple is not a party to the case.

The same Plaintiffs separately sued Apple in this Court on January 1, 2020. The parties are actively litigating the Apple Case and are in the middle of negotiating and litigating numerous discovery-related issues, including a dispute pertaining to the same discovery Plaintiffs seek in their Subpoena in this case.

### 2. Plaintiffs First Served Apple With A Subpoena In The True Wearables Case One Day Before Filing The Apple Case.

Again, this is not the first time Plaintiffs have tried to use this case to seek discovery that they know they are unlikely to obtain in the Apple case. On January 8, 2020, Plaintiffs served a subpoena on Apple in connection with this case, noticing a deposition and requesting the production of documents. Samplin Decl. Ex. C, at 318.

8

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-31-

The subpoena noticed seven topics for deposition concerning Mr. Lamego's alleged "disclosures to Apple" about physiological parameter monitoring, Mr. Lamego's "contributions to Apple's marketing strategies" for the same, and Apple's communications with Mr. Lamego regarding his employment with Apple and his termination thereof. *Id.* at 323 (January 8, 2020 Subpoena Ex. A, at 2). The eleven requests for production in that prior subpoena covered similar topics, including documents concerning Mr. Lamego's "disclosures to Apple" and "involvement in" and "contributions to" work for Apple. *Id*. at 329–331 (January 8, 2020 Subpoena Ex. B, at 7–9). Indeed, Plaintiffs' RFP No. 4 in this latest Subpoena is identical to RFP No. 10 in their prior improper subpoena—both request "All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination." *Compare id.* at 330 (January 8 Subpoena Ex. B, at 8), *with id.* Ex. A, at 19 (May 11, 2021 Subpoena Ex. B. at 6).

On January 9, 2020, one day after serving their prior subpoena on Apple in connection with this case, Plaintiffs filed the Apple Case—alleging claims against Apple for patent infringement and trade secret misappropriation relating to physiological parameter monitoring in the Apple Watch. Plaintiffs allege, among other things, that Apple recruited Mr. Lamego, who had been "taught about the keys to effective non-invasive monitoring" by Plaintiffs, which he then disclosed to Apple. *Id.* Ex. N, at 568–70 (Apple Case, Dkt. No. 296-1, Fourth Am. Compl. ¶¶ 22, 24–35). On February 28, 2020, Apple filed a notice of related cases pursuant to Local Rule 83-1.3.1, identifying this case as related to the Apple Case. Apple Case, Dkt. No. 14. On March 4, 2020, the Central District transferred the Apple Case to Judge James V. Selna, who is presiding over this action.

On March 10, 2020, Apple filed a Motion to Quash and for a Protective Order in the Northern District of California, directed at Plaintiffs' first subpoena to Apple in the True Wearables Case. Samplin Decl. Ex. D (March 10, 2020 N.D. Cal. Motion to Quash). Faced with that motion, which underscored Plaintiffs' gamesmanship with

9

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-32-

respect to basic discovery rules, Plaintiffs voluntarily withdrew their subpoena on March 18, 2020, and Apple voluntarily dismissed the miscellaneous action it was forced to file in the Northern District in connection with its motion to quash. *Id.* Ex. E (March 20, 2020 N.D. Cal. Notice of Voluntary Dismissal).

### 3. A Dispute Concerning The Same Discovery Plaintiffs Seek Via Their Subpoena In This Case Is Before This Court In The Apple Case.

Plaintiffs filed a Motion to Compel in the Apple Case on April 28, 2021, laying out the parties' respective positions on, *inter alia*, discovery requests that seek the same information requested in the Subpoena in this case. *Compare id.* Ex. A, at 19 (Subpoena Request No. 1) (seeking "[t]he personnel file for Marcelo Lamego"), *with id.* Ex. G, at 390 (Apple Case Request for Production No. 240) (requesting "[a] full and complete copy of Apple's human resources file for each of the Former Employees," which includes Mr. Lamego); *compare id.* Ex. A, at 19 (Subpoena Request Nos. 2–3) (requesting "all documents related to Apple hiring Marcelo Lamego" and "all documents related to the termination of Marcelo Lamego's employment relationship with Apple"), *with id.* Ex. G, at 391 (Apple Case Request for Production No. 248) (seeking "[d]ocuments sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending"); *see also id.* Ex. G, at 390 (Apple Case Request for Production No. 239, 241) (requesting documents "relat[ing] to any efforts by Apple or any Former Employee to . . . recruit . . . any employee or consultant of Masimo or Cercacor" and "concerning Apple's hiring or termination of any of the Former Employees"). As Apple explained in its portion of that Motion to Compel briefing, Plaintiffs seek information that is not even relevant to the Apple Case—in which Mr. Lamego's work for Apple actually is at issue (unlike in this case, where it is not).

For example, Plaintiffs failed to demonstrate that their request for documents showing the reason for Mr. Lamego's employment at Apple ending was relevant to the Apple Case. In support of their motion to compel such documents, Plaintiffs merely put forth a speculative theory that Mr. Lamego's employment at Apple ended because he

10

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-33-

Gibson, Dunn &
Crutcher LLP

stole Plaintiffs' alleged trade secrets (which is not true). Plaintiffs did not provide *any* basis to suggest that their alleged secrets had anything to do with Mr. Lamego's termination.

Plaintiffs also failed to demonstrate that their request for the full personnel file of Mr. Lamego (or any other former employee of Masimo or Cercacor) was relevant to the Apple Case. Plaintiffs' asserted justification for full personnel files in the Apple Case amounted to nothing more than speculation. For example, Plaintiffs argued that "individuals *may have* gotten a promotion shortly after providing Plaintiffs' trade secrets to Apple or Apple *may have* reprimanded an employee for sharing Plaintiffs' trade secrets." *Id.* Ex. H, at 493 (Dkt. 359-1 at 96) (emphasis added). Plaintiffs further argue that the documents "*could show* Apple's knowledge that it was using Plaintiffs' technology." *Id.* at 491 (Dkt. 359-1 at 95) (emphasis added). And with respect to Mr. Lamego's personnel file in particular, Plaintiffs put forth no compelling need for the entirety of his personnel file. Indeed, when Apple served an RFP on Plaintiffs in the Apple Case for Plaintiffs' full personnel file for Mr. Lamego, *Plaintiffs* objected on the basis of relevance and overbreadth—and Apple greatly narrowed its request in response. *Id.* at 497 (Dkt. 359-1 at 100).

The Court continued the hearing on Plaintiffs' Motion to Compel in the Apple Case from May 20, 2021, to June 3, 2021, to give the parties another opportunity to meet and confer in an effort to resolve or narrow their disputes. *Id.* ¶ 15. Unwilling to wait or to abide by the rules governing discovery in the Apple Case, Plaintiffs resorted to burdening Apple and the Court by seeking much of the same information that is the subject of that Motion to Compel through non-party discovery in this case.

### 4. Apple's Counsel Met And Conferred With Plaintiffs' Counsel About The Pending Apple Subpoena.

Plaintiffs served the Subpoena late in the day on May 11, 2021, demanding production of documents less than 10 days later, on May 20, 2021—the same day the Court in the Apple Case was at the time scheduled to hear Plaintiffs' Motion to Compel

11

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-34-

Gibson, Dunn &
Crutcher LLP

the same documents in the Apple case.  Plaintiffs also noticed a deposition of Apple for May 21, 2021.  Samplin Decl. ¶ 4 & Ex. A, at 7 (Subpoena at 1).

On May 18, 2021, Apple asked Plaintiffs to meet and confer to discuss the Subpoena, and Plaintiffs agreed to discuss via telephone the following day.  *Id.*  ¶ 5.  In advance of the call, Apple requested that Plaintiffs consent to a reasonable extension of time to respond to the Subpoena, noting that Plaintiffs provided less than 14 days' notice, which was unreasonable and insufficient to allow any dispute about the Subpoena to be briefed before this Court according to the joint stipulation process called for by the Local Rules.  *Id.*  Apple also requested that Plaintiffs provide a similar reasonable extension of time for Apple to serve its objections to this Subpoena.  *Id.*

The parties met and conferred on May 18, 2021.  *Id.*  Plaintiffs agreed to an extension that would permit the parties to brief this dispute in accordance with the procedures set by Local Rule 37 (as required by Local Rule 45).  *Id.*  With respect to Apple's objections to the Subpoena, Plaintiffs conditioned any extension on Apple waiving all objections except for those that form the basis for this Motion.  *Id.* & Ex. B, at 304.  Apple declined to accept Plaintiffs' conditions and served its objections to the Subpoena on May 20, 2021.  *Id.* Ex. B, at 304.

## B.     Legal Standard

The scope of civil discovery is not unlimited.  A party may obtain discovery only insofar as it relates to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The scope of permissible nonparty discovery under Rule 45 mirrors that of party discovery under Rule 26.  *See* Fed. R. Civ. P. 45 advisory committee note (1970 amendment) ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules.").  "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006) (citation omitted).

/ / /

Gibson, Dunn & Crutcher LLP

Exhibit 2
-35-

"'While discovery is a valuable right and should not be unnecessarily restricted . . . the "necessary" restriction may be broader when a nonparty is the target of discovery.'" *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *mot. for relief from judgment denied*, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). The party issuing a subpoena must take "reasonable steps to avoid imposing undue burden or expense" on the subject. Fed. R. Civ. P. 45(d)(1).

If a subpoena "fails to allow a reasonable time to comply," seeks "disclosure of privileged or other protected matter," or "subjects a person to undue burden," the Court shall quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(i), (iii)–(iv). A court may also quash or modify a subpoena if it "requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Once it is shown that a subpoena requests such confidential information, "the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship; and [to] ensure[ ] that the subpoenaed person will be reasonably compensated." *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 2582097, at *2 (N.D. Cal. June 9, 2014) (quoting *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014), and Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii)).

"[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citation omitted). However, "if the sought-after [information is] not relevant . . . then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Williams v. Cty. of San Diego*, 2019 WL 5963969, at *3 (S.D. Cal. Nov. 13, 2019) (quoting *Compaq Comput. Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)) (emphasis in original). "[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations

13

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-36-

and claims at issue in the proceedings." *Unsworth v. Musk*, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019) (citation omitted).

"A non-party moving to quash a subpoena may also seek a protective order under Federal Rule of Civil Procedure 26." *Williams*, 2019 WL 5963969, at *4; *see also* Fed. R. Civ. P. 26(c) (providing that "[a] party or any person from whom discovery is sought may move for a protective order"). "The court may, for good cause, issue an order to protect a party or a person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c). The court may also issue a protective order to prevent discovery that is irrelevant to any of the claims at issue. *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 2019 WL 7489108, at *5 n.9 (D. Nev. Dec. 20, 2019) ("[C]ourts may enter protective orders preventing irrelevant questioning at deposition."); *Nguyen v. LVNV Funding, LLC*, 2017 WL 951026, at *11 (S.D. Cal. Mar. 10, 2017) (declining to compel deposition testimony that was irrelevant and instead issuing a protective order); *United States v. Capriotti*, 2012 WL 2994244, at *2 (E.D. Cal. July 20, 2012) (finding "good cause" for a protective order when "the proposed subject matter of the depositions is irrelevant to [the] proceeding").

## C. Argument

The Subpoena is improper because (1) it is not relevant or proportionate to the claims in this action, but rather is designed for Plaintiffs' separate lawsuit against Apple; (2) it requires Apple to disclose confidential information without the requisite showing of substantial need; (3) it duplicates discovery efforts in the Apple Case, including those covered by a pending Motion to Compel in the Apple Case; and (4) it attempts an end run around the Scheduling Order in the Apple Case by demanding a Rule 30(b)(6)-equivalent deposition outside the 100-hour limit on depositions imposed by that Order. This Court should quash Plaintiffs' improper Subpoena and enter a protective order.

### 1. The Information Sought By The Subpoena Is Neither Relevant Nor Proportionate To This Case.

Discovery must be "relevant" to a "party's claim or defense." Fed. R. Civ. P.

14

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-37-

26(b)(1).  Courts routinely reject requests for discovery that "bear no indication of any nexus to the disputes" in the case.  *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016).  In addition to relevance, Rule 26 imposes a proportionality requirement—which creates a "collective responsibility" for "[t]he parties and the court . . . to consider the proportionality of all discovery and consider it in resolving discovery disputes."  Fed. R. Civ. P. 26 advisory committee notes (2015 amendments); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing committee notes requiring that "parties . . . tailor their efforts to the needs of this case").  Thus, any discovery propounded by Plaintiffs in the True Wearables Case must be relevant and proportionate to the needs of *that* case.  Plaintiffs cannot satisfy these relevance or proportionality requirements, which is fatal to their Subpoena.

### a.  Plaintiffs Seek Discovery For The Apple Case.

The Subpoena Plaintiffs propounded on Apple in this case plainly was drafted based on Plaintiffs' claims in the Apple Case.  Every one of the Subpoena's requests on its face is directed to Mr. Lamego's employment *at Apple*, which is one of two asserted bases for all allegations concerning Plaintiffs' trade secret misappropriation, correction of inventorship, and patent ownership claims in the Apple Case.  *See generally* Samplin Ex. N, at 568–70 (Apple Case Fourth Am. Compl. ¶¶ 20–25, 228–263) (alleging improper disclosure of purported confidential information to Apple by Mr. Lamego and Mr. O'Reilly); *id.* at 582–83, 665–691 (¶¶ 47–50, 268–371) (alleging that the subject matter of certain patents that Mr. Lamego assigned to Apple was invented by Masimo and/or Cercacor).  Specifically:

- Subpoena Deposition Topic Nos. 1–2 seek information about *Apple's* reasons for hiring or terminating Mr. Lamego, and Deposition Topic Nos. 3–4 seek information about *Apple's* communications with Mr. Lamego concerning the same, Samplin Decl. Ex. A, at 12 (Subpoena Ex. A, at 2);

- Subpoena Request for Production No. 1 seeks a copy of *Apple's* personnel file for Mr. Lamego, *id.* at 19 (Subpoena Ex. B, at 6) (emphasis added);

15

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-38-

- Subpoena Request for Production Nos. 2–4 seek documents and communications related to *Apple's* hiring and termination of Mr. Lamego, including all communications "*regarding his employment at Apple*," *id.* (Subpoena Ex. B, at 6) (emphasis added);

- Subpoena Request for Production No. 5 seeks documents concerning details of Mr. Lamego's position, duties, and compensation while *employed by Apple*, *id.* (Subpoena Ex. B, at 6) (emphasis added); and

- Subpoena Request for Production No. 5 seeks Apple's documents concerning Mr. Lamego's "patent applications," which go directly to Plaintiffs' correction of inventorship and patent ownership claims in the Apple Case, *id.*[1]

*None* of these Subpoena requests have anything to do with Plaintiffs' claims in this case.

### b. The Documents And Testimony Requested From Apple Are Not Relevant To This Case.

While Mr. Lamego's employment at Apple is one of two asserted bases for Plaintiffs' claims in the Apple Case, Mr. Lamego's employment at Apple is *not* an asserted basis for any of Plaintiffs' claims in the True Wearables Case. *None* of Plaintiffs' claims in this case are based on Mr. Lamego's employment at Apple, or his conduct at, for, or on behalf of, Apple. Rather, this case concerns solely Mr. Lamego's conduct while still employed by Cercacor, as well as his conduct at, and disclosures to, True Wearables—the company he founded *after* he left Apple.

For example, the first two of Plaintiffs' causes of action in this case are for breach of contract, in which Plaintiffs allege that Mr. Lamego breached his contracts with Masimo and Cercacor "by taking and using Masimo's [and Cercacor's] confidential information for his own benefit and for the benefit of True Wearables." Samplin Decl. Ex. A, at 60–61 (Subpoena Addendum 2, True Wearables FAC ¶¶ 49, 63). These causes of action do not implicate Apple in any way. Plaintiffs also accuse Mr. Lamego of

---

[1] Moreover, the Subpoena's Request for Production No. 5 is identical to Request for Production No. 293 that Plaintiffs just served in the Apple Case on May 19, 2021. *Compare* Samplin Decl. Ex. A, at 19, *with id.* Ex. J, at 548.

Gibson, Dunn & Crutcher LLP

"failing to pursue the patenting of certain subject matter" on *their behalf*, *id.* at 60, 62 (¶¶ 51, 66), which has nothing to do with any patent applications for which Mr. Lamego was responsible while at Apple.

Plaintiffs' other causes of action in this case likewise have no relation to Mr. Lamego's employment at Apple. Plaintiffs' third and fourth causes of action, which concern trade secret misappropriation, allege that Mr. Lamego disclosed Plaintiffs' supposed confidential information to True Wearables and used that information "in deciding to form True Wearables" and "during [his] employment at True Wearables" to "improperly develop [True Wearables'] Oxxiom product." *Id.* at 64–66, 68–69 (¶¶ 80–83, 94–97). Plaintiffs' fifth cause of action is for breach of fiduciary duty based on Mr. Lamego's alleged failure "to pursue patent subject matter he was instructed to pursue" while at Cercacor and his alleged failure "to disclose sufficient information to Cercacor regarding feasibility of [certain] technology." *Id.* at 70–71 (¶¶ 104–110). Plaintiffs' remaining causes of action in this case concern True Wearables' alleged infringement of Plaintiffs' patents. Nothing in these causes of action implicates Apple or its employment of Mr. Lamego in any way—Apple is not mentioned once in *any* of Plaintiffs' causes of action in this case.

Thus, Apple's hiring of Mr. Lamego, the details of his position and compensation, his involvement in Apple programs or projects during his seven-month tenure at Apple, including his work on Apple's patent applications and Apple's termination of his employment—the focus of the Subpoena—are not bases for any of Plaintiffs' claims against Mr. Lamego and True Wearables in this case. Plaintiffs admit as much by alleging in their True Wearables FAC that Mr. Lamego engaged in pulse oximetry work "on his own *after leaving Apple*" and basing their claims on that pulse oximetry work. *See id.* at 57 (¶ 36) (emphasis added). The claims here are based on Mr. Lamego's conduct while at Cercacor and his conduct at and on behalf of True Wearables. Plaintiffs cannot satisfy the threshold relevance requirement for pursuit of their Subpoena on these facts, which demonstrate that Plaintiffs' Subpoena is actually directed, if anywhere, at

17

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-40-

their Apple Case.  *See In re REMEC, Inc. Secs. Litig.*, 2008 WL 2282647, at *2 (S.D. Cal. May 30, 2008) ("Parties have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings.").

Because there is no connection between the Subpoena's deposition topics or discovery requests and Plaintiffs' claims in the True Wearables Case, the Subpoena should be quashed.  *See Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) ("Enforcing a discovery request for *irrelevant* information is a per se abuse of discretion." (emphasis in original)); *see also Williams*, 2019 WL 5963969, at *8–10 (granting motion to quash deposition subpoena and for a protective order because discovery sought was not relevant); *see also* Fed. R. Civ. P. 26(b)(1) (a party is only entitled to discovery "regarding any nonprivileged matter that is *relevant* to any party's claim or defense") (emphasis added); Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

### c.    The Discovery Sought Is Unduly Burdensome And Not Proportionate To The Needs Of This Case.

Rule 26's proportionality requirement considers, among other things, "the needs of the case, . . . the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(1).  The "needs" of this case do not support Plaintiffs' Subpoena to Apple because the case does not involve any claims of breach, misappropriation, or infringement, based on or relating to Apple.  *See* Section III.C.1.b, *supra*.  Nor do any of Rule 26's other proportionality considerations favor Plaintiffs.

Indeed, because the discovery the Subpoena seeks is not relevant to this case (*see* Section III.C.1.b, *supra*), it is "inherently unduly burdensome."  *P&P Imports LLC v. Johnson Enters. LLC*, 2020 WL 4258817, at *1 (C.D. Cal. Apr. 16, 2020) (Early, J.) (citing *Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018)).  The Federal Rules require the Court to "quash or modify" a

Exhibit 2
-41-

subpoena in such circumstances where, as here, the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also In re Glumetza Antitrust Litig.*, 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020) ("[C]ourts are required to limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit; such is 'the essence of proportionality,' an all-too-often ignored discovery principle." (citing Fed. R. Civ. P. 26(b)(1) and *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013))).

The discovery Plaintiffs seek from Apple is not relevant or proportionate to the needs of this case, but rather is on its face designed to elicit discovery Plaintiffs seek for the Apple Case. This is confirmed by the fact that the subject matter of this discovery is identical to that of several of Plaintiffs' requests for production served in the Apple Case—which are the subject of a dispute that has already been briefed for the Court in the Apple Case, in a Motion to Compel scheduled to be heard on June 3, 2021. Samplin Decl. ¶¶ 12, 15 & Ex. A, at 7 (Subpoena at 1). Thus, while this Court is currently dealing with the parties' dispute concerning the same requests in the Apple Case, Plaintiffs are blatantly seeking to misuse the nonparty subpoena process in this case to short-circuit requirements attendant to discovery in the Apple Case.[2] The discovery sought by the Subpoena is not relevant or proportionate to the needs of this case—and thus, the Subpoena should be quashed.

### 2. Plaintiffs Have Not Demonstrated A Substantial Need For Seeking Confidential Discovery From Apple In This Case.

In circumstances where confidential information is at issue, Federal Rule of Procedure 45(d)(3) permits the Court to quash the Subpoena unless the requesting party demonstrates a "substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Verinata Health*, 2014 WL 2582097, at *2; *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 n.1 (Fed. Cir. 1993); *In*

---

[2] Further underscoring the impropriety of Plaintiffs' attempt to circumvent the discovery rules here is the fact that the *same* attorneys from the *same* law firm represent Plaintiffs in both the True Wearables Case and the Apple Case.

19
JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-42-

Gibson, Dunn &
Crutcher LLP

*re Subpoena of DJO*, 295 F.R.D. at 497. This showing must be particularly strong "when confidential information from a non-party is sought." *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (requiring moving party to show "substantial need" before compelling "disclosure of trade secrets or other confidential research, development or commercial information"). Plaintiffs have not, and cannot, make any such "strong showing of need" here. *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("The subpoena calls for confidential technology . . . . While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff . . . . [The non-party] should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need.").

Plaintiffs' Subpoena improperly seeks production of Apple's privileged and confidential documents, such as Apple's confidential documents relating to its patent applications and its hiring practices, and privileged communications with Apple's attorneys relating to hiring and termination decisions. Yet Plaintiffs have not demonstrated any need—much less a *substantial* need—for the documents because they cannot: the discovery requests in Plaintiffs' Subpoena have already been propounded on Apple in the Apple Case, and a dispute concerning that discovery is presently before the Court in that case. And in that case, where Mr. Lamego's work at Apple actually is at issue (in this case, it is not), the requests are still irrelevant and overbroad—because they seek entire personnel files and communications that have nothing to do with the conduct or claims alleged. If the Court denies Plaintiffs' Motion to Compel that discovery in the Apple Case, then Plaintiffs *ipso facto* have no need for such discovery in either case, much less a substantial need. For this additional and independent reason, Plaintiffs' Subpoena should be quashed and a protective order entered.

/ / /

/ / /

/ / /

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-43-

Gibson, Dunn &
Crutcher LLP

### 3. Plaintiffs' Subpoena Improperly Seeks To Duplicate Discovery Work In The Apple Case.

The Subpoena Plaintiffs propounded on Apple in the True Wearables Case unnecessarily duplicates work that is already being done in the Apple Case, including Plaintiffs' pending Motion to Compel in the Apple Case.  *See* Apple Case Dkt. Nos. 357–359; Samplin Decl. Ex. H.  The deposition topics and document requests in Plaintiffs' Subpoena are identical in subject matter to several of Plaintiffs' requests at issue in that Motion to Compel (*see* Samplin Decl. Ex. F, at 370, *id.* Ex. H, at 487–91; *id.* Ex. I, at 533–34; *id.* J, at 548), as shown in the following table:

| Document Requests in Plaintiffs' Subpoena | Related Document Requests in the Apple Case |
|---|---|
| **SUBPOENA REQUEST NO. 1:**  The personnel file for Marcelo Lamego. | **RFP NO. 240:**  A full and complete copy of Apple's human resources file for each of the Former Employees.[3] |
| **SUBPOENA REQUEST NO. 2:**  All documents related to Apple hiring Marcelo Lamego. | **RFP NO. 239:**  All documents and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor.<br><br>**RFP NO. 241:**  All documents concerning Apple's hiring or termination of any of the Former Employees. |
| **SUBPOENA REQUEST NO. 3:**  All documents related to the termination of Marcelo Lamego's employment relationship with Apple. | **RFP NO. 241:**  All documents concerning Apple's hiring or termination of any of the Former Employees. |

---

[3] Plaintiffs defined the term "Former Employee" to "mean and refer to any current or former Apple employee who worked at Masimo or Cercacor before being employed by Apple."  Samplin Decl. Ex. G, at 378 (Plaintiffs' Fifth Set of Requests of Production to Apple).  Plaintiffs' definition of "Former Employee" covers Mr. Lamego, who is a former employee of Apple and worked for Plaintiffs prior to his employment at Apple.

21

Gibson, Dunn & Crutcher LLP

| | RFP NO. 248: Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending. |
|---|---|
| **SUBPOENA REQUEST NO. 4:** All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination. | **RFP NO. 236:** All communications between Apple and any Former Employee while the Former Employee was working for Masimo or Cercacor. |
| | **RFP NO. 237:** All communications between Apple and any Former Employee before the Former Employee began working for Apple. |
| | **RFP NO. 239:** All documents[4] and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor. |
| | **RFP NO. 241:** All documents concerning Apple's hiring or termination of any of the Former Employees. |
| | **RFP NO. 248:** Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending. |
| | **RFP NO. 258:** All communications between (1) Marcelo Lamego or other individuals associated with True Wearables, Inc. including employees of Merchant & Gould, P.C., and (2) any |

---

[4] Plaintiffs' definition of "documents" is broad enough to include "communications." *See* Samplin Decl. Ex. G, at 378–79 (Plaintiffs' Fifth Set of Requests of Production to Apple) (defining "documents" to "include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, *including, but not limited to . . .video recordings, emails, voice mails, handwritten notes, [and] phone messages*" (emphasis added)).

22

Exhibit 2
-45-

| | Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, regarding this case or the allegations in [the Apple Case].[5] |
|---|---|
| **SUBPOENA REQUEST NO. 5:** All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications. | **RFP NO. 129:** All communications between [Apple] and any individual who previously worked for Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.[6] <br><br> **RFP NO. 239:** All documents and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor. |

---

[5] Plaintiffs' RFP No. 258 in the Apple Case was served on April 28, 2021, less than 30 days ago, and so is not part of Plaintiffs' pending Motion to Compel. Nonetheless, it also seeks documents that would be responsive to Plaintiffs' Subpoena Request No. 4. *Compare* Samplin Decl. Ex. I, at 533–34, *with id.* Ex. A, at 19.

[6] Plaintiffs have defined the term "Disputed Patents" to mean "the patents Plaintiffs assert should have their inventorship and/or ownership corrected" in the Apple Case. Samplin Decl. Ex. G, at 378 (Plaintiffs' Fifth Set of Requests of Production to Apple). Accordingly, communications "referring or relating to subject matter disclosed or claimed in the Disputed Patents" include communications concerning the patent applications from which the Disputed Patents issued. To the extent Plaintiffs are seeking communications concerning patent applications other than those from which issued the Disputed Patents in the Apple Case, such discovery is irrelevant to *both* the True Wearables Case *and* the Apple Case, because it is not related to any claim or defense in either case. Indeed, on May 20, 2021, Judge Early denied Plaintiffs' Motion to Compel with respect to RFP 129 and RFPs 242 and 243 (which sought *all* patent applications from Apple). Samplin Decl. ¶ 15 & Ex. G, at 390.

*(Cont'd on next page)*

23

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-46-

Gibson, Dunn & Crutcher LLP

| | **RFP NO. 240:** A full and complete copy of Apple's human resources file for each of the Former Employees.[7]<br><br>**RFP NO. 293:** All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications.[8] |
|---|---|

Plaintiffs' Subpoena deposition topics—which seek testimony concerning Mr. Lamego's termination by Apple—also will likely be duplicative of Plaintiffs' Rule 30(b)(6) topics in the Apple Case.[9]

Plaintiffs' Subpoena clearly has but one purpose—to seek the same irrelevant discovery from Apple in this case that is at issue in Plaintiffs' pending Motion to Compel in the Apple Case  The abridged timing of Plaintiffs' Subpoena and its substance— which tracks Plaintiffs' claims in the Apple Case and seeks documents that are the subject of a discovery dispute in that case—confirms its improper purpose.  Such a thinly-veiled end run around Federal Rule of Civil Procedure 26 and this Court's discovery procedures is improper.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1236054, at *2 (N.D. Cal. Mar. 18, 2019) (quashing a

---

[7] Documents "reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, [and] severance" would be located in his human resource file at Apple.

[8] Plaintiffs' RFP No. 293 in the Apple Case was served on May 19, 2021, just one day before Apple's production in response to this Subpoena was initially due, and is therefore not part of Plaintiffs' pending Motion to Compel.  *See* Samplin Decl. Ex. J. RFP 293 in the Apple Case is *identical* to Plaintiffs' Subpoena Request No. 5.  *Compare id.* Ex. A, at 19, *with id.* Ex. J, at 548.

[9] Plaintiffs have refused to propound their Rule 30(b)(6) topics in the Apple Case, despite Apple having served its Rule 30(b)(6) notice and topics on May 10, 2021, and despite Apple's repeated requests that Plaintiffs do the same.  Samplin Decl. ¶ 17. Nonetheless, given that the majority of Plaintiffs' allegations in the Apple Case center on Mr. Lamego's employment by Apple, it is very likely that Plaintiffs will seek to depose an Apple corporate witness about such topics.

24

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-47-

subpoena that "amounts to an improper end run around the court's prior orders" because defendant "is not entitled to discovery from third parties that the court has already ruled out-of-bounds"); *see also Thogus Prod. Co. v. Bleep, LLC*, 2021 WL 827003, at \*5 (N.D. Ohio Mar. 4, 2021) (quashing subpoenas that "improperly attempt to circumvent this Court's . . . Order denying expedited discovery" because "in large measure, [the subpoenas] seek production of the same universe of documents and information"). Plaintiffs should not be permitted to bypass the Federal Rules through a third-party subpoena directed at discovery that has no relevance to this case and to which they will not even be entitled in the Apple Case.

Plaintiffs' attempt to use this case to obtain discovery that is irrelevant here and duplicative to that being challenged by Apple in the Apple Case is highly improper. The parties fully briefed Plaintiffs' Motion to Compel on these topics in the Apple case (in a motion totaling over 130 pages and approximately 960 pages of exhibits, *see* Samplin Decl. ¶ 12 & Ex. H). The Court has already expended significant time and resources reviewing the briefing and scheduled a hearing on June 3 to resolve the motion. Plaintiffs should not be permitted to waste the Court's time by bypassing the Court's discovery procedures with this Subpoena. This attempt to obtain the same discovery here that is being actively litigated in the Apple Case is an improper end run around Federal Rule of Civil Procedure 26, and should be denied.

### 4. Plaintiffs' Subpoena Is An End Run Around The Discovery Limits Imposed By The Court In The Apple Case.

The Subpoena is also improper because it attempts to circumvent the deposition time limits imposed by the Court in the Apple Case Scheduling Order. This Court limited each party to 100 hours of depositions in the Apple Case, which includes the parties' Rule 30(b)(6) depositions. Samplin Decl. Ex. M, at 560 (Apple Case, Dkt. No. 37 at 1). Yet Plaintiffs seek a deposition from Apple in this case that is equivalent to a Rule 30(b)(6) deposition—and concerns topics related solely to the Apple Case—but would not count against Plaintiffs' 100-hour limit in the Apple Case. Such an end run

25

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-48-

around the Court's Scheduling Order in the Apple Case is improper.

Plaintiffs' attempt to circumvent the Scheduling Order in the Apple Case is particularly egregious given their refusal to even provide to Apple their Rule 30(b)(6) notice and topics in the Apple Case, despite Apple's repeated requests for such information. *See* Samplin Decl. ¶¶ 16–17 & Exs. K–L. By seeking to take a Rule 30(b)(6)-equivalent deposition in this case, Plaintiffs plainly hope to obtain additional testimony from Apple beyond that which the Court has permitted in the Apple Case. Plaintiffs should not be permitted to evade the Apple Case Scheduling Order in this manner.

## D. Conclusion

For all of the foregoing reasons, Apple respectfully requests that the Court grant its motion to quash the Subpoena in its entirety and enter a protective order prohibiting the deposition testimony and document discovery Plaintiffs seek from Apple in this case.

# IV. MASIMO'S POSITION

## A. Factual Background

### 1. Lamego Pursued An Executive Position At Apple While Still Serving as Cercacor's Chief Technology Officer

Apple began recruiting Lamego from Cercacor in early 2013. Kachner Decl. Ex. 3, at 250:14-251:20. Lamego later touted his exposure to developing noninvasive patient monitors in an email to Apple's CEO, Mr. Cook. Kachner Decl. Ex. 4.[10] Lamego told Mr. Cook that he had developed intellectual property for Masimo and Cercacor over a ten-year period and he was "sure [he] could add a significant value to the Apple team." *Id*. Lamego also told Mr. Cook that, while it is easy to develop medical products that work well for most users, "[g]etting the same technology to work in almost the entire population is extremely more complex." *Id*. Lamego referred to this complexity as the

---

[10] Defendants produced the Lamego email as confidential under the protective order. Defendants refuse to allow Masimo to disclose to Apple's counsel all information in this brief that Defendants designated as confidential, including the Lamego email. Kachner Decl. Ex. 5.

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-49-

"patient equation." *Id*. Lamego went on to explain to Mr. Cook that he could "solve" this "patient equation" for Apple "without conflicting with the large IP I have developed for Masimo and Cercacor." *Id*. Lamego asked Mr. Cook for an executive position in exchange for providing the solution. *Id*. When Lamego wrote to Mr. Cook, he was still the Chief Technical Officer at Cercacor, with a fiduciary duty.

At that time, Lamego was preparing to reveal a supposed breakthrough to the Board of Directors at Cercacor. Kachner Decl. Ex. 7 at 164:19-25. He "enthusiastically" claimed that he had proven the feasibility of measuring glucose and several other parameters non-invasively. *Id*. at 166:20-23; Dkt. 42, ¶¶ 42, 67. This would have been a major technological and commercial accomplishment for Masimo and Lamego. Lamego understood that these breakthroughs were very significant to Cercacor and would have made him wealthy. Kachner Decl. 8 at MASM0205492.

Apple hired Lamego in January 2014. After Lamego left Cercacor, Cercacor was unable to replicate the feasibility Lamego claimed to have achieved. *See* Kachner Decl. Ex. 7 at 182:25-184:8.

## 2. Lamego Put His Apple Job Duties at Issue in This Case

Before departing Cercacor for Apple, Lamego told Masimo's CEO, Joe Kiani, that he would not work on technologies that compete with Masimo and Cercacor. Dkt. 152-4 ¶ 6; Kachner Decl. Ex. 7 at 69:16-70:19, 88:10-15. After Lamego left Apple but before Masimo filed this suit, Masimo confronted Lamego. In response, Lamego denied any wrongdoing and accused Masimo of attempting to "disrupt Dr. Lamego's career and business efforts" since January 2014, before he started at Apple. Kachner Decl. 8 at TRUE16532 ¶ 16. Lamego represented Apple hired him "to work in (sic.) a project that had **no connection** with any products developed by Masimo or Cercacor." *Id*. (emphasis added).

Masimo is entitled to test the veracity of Lamego's denials, representations, and bases for his accusations. Lamego's representations appear to conflict with his recent public statements about his actual role at Apple. *See* Kachner Decl. Ex. 9. According

27

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-50-

1    to Lamego's current Linkedin profile, his work at Apple included developing "bio-

2    sensing functionalities" and designing "hardware and algorithm architectures." *Id*. Such

3    activities appear to compete with Masimo.  Masimo is also entitled to explore from

4    Apple precisely what Lamego was offering when he emailed Mr. Cook.  Masimo should

5    also be entitled to explore what Apple understood by Lamego's statement that Apple

6    could leverage value from his Masimo and Cercacor experience.  But Lamego has

7    refused to answer any questions about Apple, citing a confidentiality obligation to

8    Apple. *See* Kachner Decl. Ex. 3 10:13-12:18.  Masimo should be allowed to explore the

9    apparent contradictions in Mr. Lamego's statements and testimony.

10         **3.**     **Lamego Put His Termination From Apple at Issue In This Case**

11        Shortly after leaving Apple, Lamego's friend and then-Cercacor employee

12    Cristiano Dalvi told Masimo's CEO that Lamego left Apple because Apple asked

13    Lamego to compete with Masimo and Cercacor.  Kachner Decl. Ex. 6 at 69:16-70:19,

14    88:16-20.  This explanation was consistent with Lamego's prior statements that he

15    would not work on competing technologies while at Apple.  Dkt. 152-4 (Kiani Decl.)

16    ¶ 6; Kachner Decl. Ex. 6 at 69:16-70:19, 88:10-15.  Much later, it became clear that

17    Lamego worked in exactly the same technical area at Apple as he had at Masimo and

18    Cercacor.  Kachner Decl. Ex. 9.

19        Now, Lamego contends that Apple terminated his employment because of

20    Masimo.  Lamego contends that Masimo "repeatedly tried to disrupt Dr. Lamego's

21    career and business efforts" while he was at Apple.  Kachner Decl. Ex. 8 at

22    TRUE165232 ¶ 16.  Lamego further testified that Masimo's CEO threatened his

23    employment with Apple.  Kachner Decl. Ex. 3 at 423:11-424:12.  Lamego and his family

24    blame Masimo for disrupting his employment with Apple.  *See also* Kachner Decl. Ex.

25    10 at 49:15-18; 56:9-14.

26        But Lamego refuses to provide any discovery about why Apple terminated him.

27    Kachner Decl. Ex. 3 at 10:13-12:18.  Lamego refused to answer direct questions about

28    why he was fired, again citing his confidentiality obligations to Apple.  *Id*. at 231:14-

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-51-

233:16.  Masimo is entitled to discover why Apple fired Lamego to rebut Lamego's accusations that Masimo is supposedly the cause for all of his unfortunate circumstances. Masimo is also entitled to discover why Lamego intended to harm Masimo, especially in response to Apple firing him.  Such discovery is relevant to Lamego's willful and malicious misappropriation of Masimo's trade secrets.  *See* Cal. Civ. Code § 3426.3(c); 18 U.S.C. § 1836(b)(3)(C).

### 4. Apple's Actions Show That Facts About Apple Are Relevant to This Case

At the outset of the Apple Case, Apple filed a notice of related cases.  *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.) (Dkt. 14).  Apple represented the Apple Case "arises from the same or a closely related ***transaction, happening, or event*** as the 20-00048 case presently before this Court, [and] calls for determination of the same or substantially related or similar questions of law and fact." *Id*. (emphasis added).  Having filed that notice—and obtaining a transfer to Judge Selna based on that notice—Apple cannot now genuinely argue the cases are unrelated and that information about Apple is irrelevant.

Apple also recently entered into a common-interest agreement with Defendants in this case.  *See* Kachner Decl. Ex. 11.  Attempting to justify that common-interest agreement, Defendants contend that the Apple Case and this case involve "overlapping facts and legal issues."  *Id*. at p.3.[11]  Presumably Apple must also believe that some overlap in the two cases justify entering into this common-interest agreement.  That overlap pertains to Lamego and his involvement with Apple.  Apple's common-interest agreement and representations to this Court that the two cases are legally and factually

---

[11] Defendants refused to identify those overlapping facts, claiming that would reveal work product.  Kachner Decl. Ex. 11.  A common-interest privilege does not shield the overlapping facts from discovery.  *Eli Lilly and Co. v. Arch Ins. Co.*, 2016 WL 5394402, *6 (S.D. Ind. Sept. 27, 2016) (common interest privilege shields only documents that "advance a shared legal interest and seek an attorney's advice to advance that interest").

Gibson, Dunn & Crutcher LLP

Exhibit 2
-52-

related contradict Apple's argument that the cases are unrelated and that Lamego's recruitment, employment, and termination by Apple are irrelevant.

### B.  Legal Standard

The party who moves to quash a subpoena has the "burden of persuasion" under Rule 45(c)(3).  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).  A party "claiming undue burden as a basis for a motion to quash is held to a high burden of proof which requires the party to demonstrate the actual 'manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.'" *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, 2012 WL 112325, at *2 (N.D. W.Va. Jan.12, 2012), *quoting* 9A C. Wright and A. Miller, M. Kane, *Federal Practice and Procedure*, Civ.3d § 2463.1.

"In deciding whether to quash or modify a subpoena to a third party, a court must balance the relevance of the discovery sought and the burden to the party seeking the subpoena against the potential hardship to the deponent, keeping in mind Rule 26's broad policy favoring full discovery."  *Apple, Inc. v. Samsung Elecs. Co.*, No. SACV122176AGJPRX, 2013 WL 12324184, at *1 (C.D. Cal. Jan. 3, 2013) (citing Fed. R. Civ. P. 26(b)(1); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)) (denying motion to quash).

### C.  Argument

The Court should deny Apple's attempt to quash Masimo's subpoena because (1) the subpoena is narrowly drawn to relevant discovery in this case; (2) Masimo has a substantial need for the requested discovery; and (3) Masimo's subpoena does not require Apple to duplicate any effort, much less incur a substantial burden.

### 1.  Masimo Seeks Limited Discovery that is Relevant and Proportionate to This Case

Masimo narrowly tailored the Apple subpoena to seek discovery on just three topics that are at issue in this case: (1) Apple's recruitment of Lamego while he worked

30

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-53-

at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. These topics are highly relevant to Masimo's breach-of-fiduciary-duty claim and misappropriation-of-trade-secret claims. These topics are also highly relevant to show Lamego's intentions when he departed Cercacor and when he later departed Apple to form True Wearables. Lamego and True Wearables have also put all three topics at issue in this case.

### a. Apple's recruitment of Lamego while still at Cercacor is highly relevant to this case

As Apple acknowledges, this case concerns "Mr. Lamego's conduct while employed by Cercacor." Br. at 1. But Apple must not appreciate that Lamego was communicating directly with Apple and its CEO Tim Cook while he was still a fiduciary at Cercacor. *See* Kachner Decl. Ex. 4. Lamego was claiming to Cercacor that he had made a major technology breakthrough and, at the same time, he was seeking executive employment from Apple. In seeking that employment, Lamego offered what he had learned at Cercacor and Masimo. Those interactions are highly relevant to Masimo's breach-of-fiduciary-duty and trade-secret claims in this case.

Lamego's interactions with Apple are also relevant to whether he believed in the breakthrough he was presenting to Cercacor. Those communications with Apple to secure employment show the gravity of Lamego's breach of his fiduciary duty and his intent to harm Masimo and Cercacor upon his departure.

Based on the foregoing, Masimo should be permitted to depose Apple regarding:

**TOPIC NO. 1:**

Apple's reasons for hiring Marcelo Lamego.

**TOPIC NO. 3:**

Apple's communications with Marcelo Lamego concerning Apple recruiting Marcelo Lamego.

Before any deposition, Masimo should also receive documents pertaining to Apple's recruiting and hiring of Lamego. Presumably those documents would be inside

31

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-54-

Lamego's personnel file maintained at Apple (RFP No. 1). If those documents are maintained elsewhere, Masimo has specified that Apple produce any documents concerning Apple's recruiting and hiring of Lamego. (Revised RFP Nos. 2 and 4). Accordingly, Masimo should be permitted to discover the following Apple documents, as Masimo clarified as part of the meet and confer with Apple:

<u>REQUEST FOR PRODUCTION NO. 1:</u>

The personnel file for Marcelo Lamego.

<u>REVISED REQUEST FOR PRODUCTION NO. 2:</u>

Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014.

<u>REVISED REQUEST FOR PRODUCTION NO. 4:</u>

Apple's communications with Marcelo Lamego regarding his hiring by Apple.

### b. Limited discovery about Lamego's job duties at Apple is highly relevant in this case

Lamego's title and job duties at Apple will show the nature of the position which enticed Lamego to leave Cercacor. That position is also part of the exchange between Lamego and Apple for which Apple was to obtain help to solve their "patient problem." The title and job duties complete the story pertaining to Lamego's email to Mr. Cook.

Specifically, Lamego told Apple's CEO Tim Cook that he had developed intellectual property for Masimo and Cercacor over a ten year period and he was "sure [he] could add a significant value to the Apple team." Kachner Decl. Ex. 4. Lamego also told Mr. Cook that he could "solve" Apple's issues with non-invasive measurement technologies. *Id*. In exchange, Lamego sought an executive position at Apple. Information about Lamego's duties and title at Apple are relevant to understand how Lamego planned to execute on his proposal to help Apple and how Apple enticed Lamego to leave Cercacor. This information is also highly relevant to Lamego's state of mind upon departing Cercacor, his intent to harm Masimo, and his breach of his

32

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-55-

fiduciary duty to Cercacor.

Moreover, the title and duties Lamego had at Apple will also allow Masimo to test Lamego's credibility. Specifically, Lamego told Masimo's CEO he would not work on technologies that compete with Masimo and Cercacor. Dkt. 152-4 (Kiani Decl.) ¶ 6; Kachner Decl. Ex. 6 at 69:16-70:19, 88:10-15. After Lamego left Apple he represented to Masimo that Apple hired him "to work in (sic.) a project that had **no connection** with any products developed by Masimo or Cercacor." Kachner Decl. Ex. 8 at TRUE165232 ¶ 16. (emphasis added). Lamego's representations appear to conflict with his own recent public statements about his actual role at Apple. *See* Kachner Decl. Ex. 9. Masimo should be allowed to explore the apparent contradictions in Mr. Lamego's statements.

Based on the foregoing, Masimo should be permitted to discover Lamego's personnel file maintained at Apple (RFP No. 1), which presumably contains documents showing Lamego's duties and title at Apple. If those documents are maintained elsewhere, Masimo has specified that Apple produce documents sufficient to show Lamego's job duties and title. (Revised RFP No. 5). Thus, Masimo should be permitted to discover the following Apple documents:

### REQUEST FOR PRODUCTION NO. 1:

The personnel file for Marcelo Lamego.

### REVISED REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to show Marcelo Lamego's job duties and title at Apple.

### c.    Apple terminating Mr. Lamego is highly relevant in this case

In this case, Lamego has blamed Masimo for Apple firing him. Even before Masimo filed this lawsuit, Lamego claimed Masimo caused Apple to fire him, and that he "had no choice other than to return to Orange County and open his own company," True Wearables. Kachner Decl. Ex. 8 at TRUE16532 ¶ 16. Lamego put his termination from Apple directly at issue by blaming Masimo for that termination. Masimo should

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-56-

be permitted to ask Apple about the basis for that termination to defend itself from this accusation.

Lamego's termination by Apple is also independently discoverable to show evidence of Lamego's character. *United States v. Shanshan Du*, 570 F. App'x 490, 498 (6th Cir. 2014). Such discovery could help complete the story of Lamego's misconduct that started when he was Cercacor's Chief Technology Officer and continued when he founded True Wearables. *See id*. (defendant's firing by former employer "was admissible character evidence as background information that completed story" of misconduct).

Based on the foregoing, Masimo should be permitted to depose Apple regarding:

**TOPIC NO. 2:**

Reasons for termination of Marcelo Lamego's employment relationship with Apple.

**TOPIC NO. 4:**

Apple's communications with Marcelo Lamego concerning termination of Marcelo Lamego's employment relationship with Apple.

Before any deposition, Masimo should also receive documents pertaining to Apple's termination of Lamego. Presumably those documents would also be inside Lamego's personnel file maintained at Apple (RFP No. 1). If those documents are maintained elsewhere, Masimo has specified that Apple produce any documents concerning Apple's termination of Lamego. (Revised RFP No. 3). Accordingly, Masimo should be permitted to discover the following Apple documents, as Masimo clarified as part of the meet and confer with Apple:

**REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REVISED REQUEST FOR PRODUCTION NO. 3:**

Apple's communications with Marcelo Lamego regarding the end of his employment.

34

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-57-

## 2. Masimo Has a Substantial Need For the Requested Discovery

The parties agree that a Court should not quash a subpoena if the need for the discovery "cannot be otherwise met without undue hardship." *See* Br. at 1, 19. Apple is the only source of the documents Masimo seeks, and therefore, Masimo has no other options for the discovery. Lamego confirmed that he has incomplete copies of his communications with Apple. Kachner Decl. Ex. 3 at 327:17-328:14. And in the final days of fact discovery in this case, Lamego refused to provide any meaningful testimony about Apple, citing his confidentiality obligations to Apple. Id. at 10:13-12:18. Thus, Apple is the only source of this relevant discovery.

Apple's cases do not support quashing Masimo's subpoena. Apple cites two cases, but both are inapposite because both cases concern confidential research and technology. *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (discussing a subpoena that sought "trade secrets or other confidential research, development or commercial information"); *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (discussing a subpoena that sought "confidential technology"). Masimo seeks no such information here. Rather, Masimo seeks limited discovery on: (1) Apple's recruitment of Lamego while he worked at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. All three topics are directly relevant in this case, and Defendants have also put all three topics at issue.

## 3. Masimo's Subpoena Does Not Impose an Undue Burden on Apple

Apple contends that Masimo's subpoena "unnecessarily duplicates work that is already being done in the Apple Case." Br. 21. This argument is not a basis to deny discovery, and Apple provides no evidence to support its position. It also falls well short of showing an undue burden.

For the subpoenaed documents, Apple merely identifies similarities between the subpoena and certain document requests that Masimo served in the Apple case. Br. at 21-24. But Apple identifies no extra effort or cost to produce the same document in two

35

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-58-

1    different cases.  Moreover, Apple has not committed to producing all of the documents

2    at issue in the Apple case.

3         For the deposition topics, Apple contends Masimo seeks testimony that will "also

4    will likely be duplicative of Plaintiffs' Rule 30(b)(6) topics in the Apple Case."  Br. at

5    24.  But any duplication does not show an undue burden.  Rather, any duplication is

6    merely the result of the protective orders governing each case.  Those protective orders

7    prohibit use of confidential discovery in another case without authorization or further

8    court order.  Kachner Decl. Ex. 12 at ¶ 5.1; Dkt. 260 ¶ 5.  Masimo is merely complying

9    with the protective orders by seeking relevant information by subpoena so that the

10   information can be used in this case.  Masimo did not serve the subpoena for

11   "gamesmanship" or for an "improper purpose" as Apple alleges.  *See* Br. at 9.

12        Masimo has no desire to take the same deposition or duplicate Apple's documents

13   in both cases.  Similarly, it appears Apple would prefer not to duplicate its discovery

14   efforts.  The parties could avoid any duplicate effort if Apple simply allows confidential

15   discovery to be used in both cases, and Masimo is perfectly willing to enter into such a

16   stipulation.  If Apple refuses, any duplicate discovery efforts would be of Apple's own

17   making.  Moreover, Apple is of course presuming that it has already produced all of the

18   information sought by the subpoena in the Apple Case.  But Apple is fighting that

19   discovery in the Apple Case as well.

20   **4.    Apple's Remaining Arguments Do Not Justify Quashing The**

21   **Subpoena**

22   **a.    Masimo timely served its subpoena**

23        Apple argues that Masimo timed this subpoena to disrupt or conflict with the

24   timing of discovery hearings in the Apple case.  Br. at 24.  Apple argues "the abridged

25   timing of Plaintiffs' Subpoena … confirms its improper purpose."  *Id*.  This argument is

26   baseless.  The timing is actually very simple.  The timing of the subpoena was due to the

27   case schedule in this case, and Masimo's attempts to obtain all discovery possible from

28   True Wearables and Lamego before pursuing the discovery from Apple.   Indeed,

36

Exhibit 2
-59-

Masimo just recently completed Lamego's deposition where he refused to provide information about his employment at Apple. Masimo timely served the subpoena near the close of fact discovery. Any overlap with proceedings in the Apple Case was merely the result of the deadline for discovery in this case. Apple's attempt to attribute improper motive to Masimo is baseless. And because the protective order prohibits the use of protected material in another case, Apple's claims of improper purposes is not plausible.

Apple's legal citations are also misplaced. In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1236054, at *2 (N.D. Cal. Mar. 18, 2019), the court quashed a subpoena seeking discovery from a third party that the court had already ruled was "out-of-bounds." But here, this Court has not yet considered, much less ruled on, the relevance of the requested discovery in either this case or the Apple Case. *Thogus Prod. Co. v. Bleep, LLC*, 2021 WL 827003, at *5 (N.D. Ohio Mar. 4, 2021), is also inapposite. There the court denied Plaintiff's attempt to take expedited discovery from the Defendant. Plaintiff then served fifteen subpoenas on Defendant's customers, seeking the very same expedited discovery the court had already denied. Masimo is not seeking to bypass any court order. Masimo merely seeks very focused and limited discovery from Apple that is relevant to this case and is available from no other source.

### b. Masimo is not seeking to avoid discovery limits in the Apple case

Apple also argues Masimo's subpoena is an attempt to avoid the 100-hour deposition limit in the Apple case.[12] Br. at 2, 14, 25. This argument is pure conjecture. Masimo has not yet used a single hour of deposition time in the Apple case, and does not currently expect to be short on hours. Apple should not be able to rely on the deposition clock in the Apple Case (which has not started to run) to avoid a deposition in this case.

### c. Masimo's first subpoena is irrelevant

As Apple acknowledges, Masimo voluntarily withdrew a prior subpoena to Apple

---

[12] This argument is irrelevant to Masimo's subpoena for documents.

Exhibit 2
-60-

1   more than a year ago.  Br. at 10.  Apple argues that Masimo's withdrawn subpoena and

2   the current subpoena are merely attempts to "use this case to seek discovery that

3   [Plaintiffs] know they are unlikely to obtain in the Apple case." *Id*. at 8.  Apple further

4   accuses Masimo of engaging in "gamesmanship with respect to basic discovery rules."

5   *Id*. at 9.  Apple's argument and accusations are unsupported.

6           Masimo's withdrawn subpoena is not before this Court.  Apple's discussion of

7   that subpoena distracts from the narrowly focused subpoena at issue.  Masimo served

8   the withdrawn subpoena when it was facing a discovery deadline, before Defendants sat

9   for a single deposition or produced significant discovery.  That discovery deadline was

10  subsequently moved. *See* Dkt. 79.  With the additional time, Masimo withdrew the

11  subpoena to first pursue as much discovery as possible from Defendants in this case

12  before serving Apple with the subpoena at issue.  That is entirely proper.

13          The discovery Masimo obtained has allowed Masimo to narrowly focus the

14  current subpoena on discovery that is directly at issue in this case that Masimo cannot

15  receive from Lamego.  Apple understood that Masimo reserved the right to re-serve a

16  new subpoena at a later stage in the case.  For that reason, Apple dismissed its motion

17  to quash without prejudice, "reserving the right to refile both should Plaintiffs at any

18  time decide to re-issue the subpoena to Apple in connection with the True Wearables

19  Case."  Samplin Decl. Ex. E.

20                  **d.    Masimo properly focused the subpoena**

21          After meeting and conferring on Apple's motion, Masimo further focused the

22  subpoena in response to Apple's objections.  Kachner Decl. Ex. 1.  Despite Masimo's

23  clarification, Apple still refused to respond.  Kachner Decl. Ex. 2.

24          Apple contends that Masimo is not permitted to clarify and narrow the scope of

25  its subpoena.  *Id*.  Apple's argument lacks support.  Nothing precludes an issuing party

26  from focusing a subpoena to resolve objections.  Indeed, that is what the meet and confer

27  process is supposed to facilitate.  Apple cites no authority, and Masimo is aware of none,

28  holding that a party may not narrow a subpoena after it is served.  Apple's own cited

38

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit 2
-61-

authority recognizes that a subpoena may be narrowed by agreement. *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at \*3 (S.D.N.Y. Sept. 6, 2019). Courts have denied motions to quash when the moving party refuses efforts to narrow the subpoena. *See, e.g., In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 2764260, at \*2 (N.D. Ill. May 6, 2019).

Instead, Apple argues Masimo must withdraw its subpoena and issue a new subpoena if Masimo seeks to clarify the subpoena's scope. Kachner Decl. Ex. 2. This is unnecessary for four reasons. First, Masimo's subpoena as served is already directed to the three relevant issues identified above. Second, Masimo is permitted to further focus its subpoena. Third, Apple's suggestion is not available here because discovery has now closed in this case. By serving this subpoena near the end of fact discovery, Masimo was able to focus the subpoena on narrow issues for which discovery from Apple was still needed. Fourth, Apple's suggestion would not resolve the matter because Apple objects to the narrowed topics based on the same objections raised here. *Id.*

### e. Any overlap in discovery between this Case and the Apple Case is not a basis to quash

The facts in this case overlap to some degree with the Apple Case. Indeed, True Wearables and Apple entered a common-interest agreement based on purported overlapping factual issues. Kachner Decl. Ex. 11 at p.3. Their reliance on overlapping facts to support a common-interest agreement shows some facts from Apple are relevant in this case. Apple also relied on the overlap in its notice of related case when Masimo sued Apple. *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.) (Dkt. 14). There appears to be no genuine dispute that some discovery will be relevant to both cases. Masimo should be entitled to relevant discovery from Apple in this case, even though that discovery is also relevant in the Apple case.

Based on discovery in this case, Masimo learned that Apple is the unique source for some discovery. For example, when Masimo questioned Lamego about Apple, he

Exhibit 2
-62-

refused to respond and explained that some discovery was available only from Apple. *See* Kachner Decl. Ex. 3 10:13-12:18, 327:17-328:14.  Apple should provide Masimo with this relevant discovery.

Apple's argument that Masimo is seeking discovery for use in the Apple Case is also baseless.  Masimo needs, and is entitled to, discovery from Apple ***in this case***.  Even if Apple were to produce the requested discovery in the Apple Case, the protective order there would preclude Masimo from using that discovery outside that case, unless Masimo obtained relief from the protective order.  Kachner Decl. Ex. 12 at ¶ 5.1. Similarly, the protective order in this case precludes Masimo from using any discovery in any other case, including the Apple case, absent relief from the protective order.  Dkt. 260 ¶ 5.  Masimo's subpoena is necessary for Masimo to secure discovery from Apple for use in this case.

**D.    Conclusion**

Because Masimo's subpoena is focused on relevant issues in this case, and because the discovery is available only from Apple, Masimo respectfully requests that the Court deny Apple's motion to quash.

Dated: June 3, 2021                    GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Joshua H. Lerner*
Joshua H. Lerner
H. Mark Lyon
Ilissa Samplin

*Attorneys for Non-Party Apple Inc.*

40

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit 2
-63-

Dated: June 3, 2021                      KNOBBE, MARTENS, OLSON & BEAR LLP

                                         By:   */s/ Mark D. Kachner*
                                               Joseph R. Re
                                               Stephen C. Jensen
                                               Perry D. Oldham
                                               Irfan A. Lateef
                                               Brian C. Claassen
                                               James E. Youngblood
                                               Adam B. Powell
                                               Mark D. Kachner

                                         *Attorneys for Plaintiffs,*
                                         *Masimo Corporation and Cercacor*
                                         *Laboratories, Inc.*

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

                                         By:   */s/ Joshua H. Lerner*
                                               Joshua H. Lerner

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Lerner, Joshua on 7/2/2021 at 6:21 PM PDT and filed on 7/2/2021

| | |
|---|---|
| **Case Name:** | Masimo Corporation et al v. True Wearables, Inc. et al |
| **Case Number:** | 8:18-cv-02001-JVS-JDE |
| **Filer:** | Apple Inc. |
| **Document Number:** | 321 |

**Docket Text:**
**JOINT STIPULATION to MOTION to Quash Subpoena for Documents and Deposition of Apple Inc. [282]** *(Unredacted)* **filed by Miscellaneous Apple Inc.. (Attachments: # (1) Unredacted Document Exhibits 3-5, 8, and 10 to Kachner Declaration (Dkt. No. 282-3))(Lerner, Joshua)**

**8:18-cv-02001-JVS-JDE Notice has been electronically mailed to:**

Adam Powell     adam.powell@knobbe.com, 2abp@knobbe.com, litigation@knobbe.com

Amanda Rose Washton     a.washton@conklelaw.com, awashton@hotmail.com, support@conklelaw.com

Brian Christopher Claassen     brian.claassen@knobbe.com, KnobbeAdmin@ecf.courtdrive.com

Eric R. Chad     echad@merchantgould.com

Irfan A Lateef     irfan.lateef@knobbe.com, ial@kmob.com, litigation@kmob.com

James Eugene Youngblood     jamie.youngblood@knobbe.com

Joseph R. Re     litigation@kmob.com, joe.re@knobbe.com, jre@kmob.com, KnobbeAdmin@ecf.courtdrive.com

Joshua Hawkes Lerner     jlerner@gibsondunn.com, amoser@gibsondunn.com

Mark D Kachner     mark.kachner@knobbe.com, doreen.buluran@kmob.com, litigation@knobbe.com

Paige S Stradley     pstradley@merchantgould.com

Exhibit 2
-65-

Perry D Oldham     perry.oldham@knobbe.com, 2pdo@kmob.com, litigation@kmob.com

Peter A Gergely     pgergely@merchantgould.com

Ryan J Fletcher     rfletcher@merchantgould.com, KDrieman@merchantgould.com, smaney@merchantgould.com

Scott P Shaw     sshaw@merchantgould.com, kholst@merchantgould.com, smaney@merchantgould.com

Sherron L Wiggins     s.wiggins@conklelaw.com, Support@conklelaw.com

Stephen C Jensen     steve.jensen@knobbe.com, sjensen@kmob.com

Zach Kachmer     ZKachmer@merchantgould.com

**8:18-cv-02001-JVS-JDE Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

Andrew T Pouzeshi
Merchant and Gould PC
1801 California Street Suite 3300
Denver, CO 80202

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\UNREDACTED 2021-06-03 Joint Stipulation re Apple's Mot to Quash_REVISED.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/2/2021] [FileNumber=32221376-0]
[a8d44a8fb3472ba7a6d367e0b5b19052b16b713cb7cf2e3ec224b942c9cebb72ba7f
a127f9cebb66dccfd0fdd1e7e8b181f495a94bb0c00a76904c8ec8bb242b]]
**Document description:**Unredacted Document Exhibits 3-5, 8, and 10 to Kachner Declaration (Dkt. No. 282-3)
**Original filename:**C:\fakepath\UNREDACTED Exhibits to Kachner Declaration.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/2/2021] [FileNumber=32221376-1]
[00a736379237c706b24f74865adc0d139f28d73773d2e90a4f07dc748edcb023c5c8
8c17afe1477407fb4b0fe26a1c654872e0856c30692cbb959b30443ac7a1]]

Exhibit 2
-66-

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,    ) CASE NO: 8:18-CV-02001-JVS-JDE
                              )
              Plaintiffs,     )            CIVIL
                              )
     vs.                      )       Santa Ana, California
                              )
TRUE WEARABLES, INC, ET AL,   )      Thursday, June 24, 2021
                              )
              Defendants.     )
_____)


HEARING RE: NON-PARTY APPLE, INC'S MOTION TO QUASH SUBPOENA
[DKT.NO.282];

AND SEALING APPLICATIONS [DKT.NOS.280,289,291]


BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE



<u>APPEARANCES</u>:              SEE PAGE 2


Court Reporter:           Recorded; Digital

Courtroom Deputy:         Maria Barr

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

Exhibit 3
-67-

2

<u>APPEARANCES</u>:


For Plaintiffs:          JOSEPH R. RE, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         2040 Main Street
                         14th Floor
                         Irvine, CA 92614


                         MARK D. KACHNER, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         1925 Century Park East
                         Suite 600
                         Los Angeles, CA 90067


For Moving Party:        ILISSA S. SAMPLIN, ESQ.
                         Gibson Dunn & Crutcher, LLP
                         2029 Century Park East
                         Suite 4000
                         Los Angeles, CA 90067

Exhibit 3
-68-

3

| 1 | **Santa Ana, California; Thursday, June 24, 2021** |

| 2 | **(Remote appearances)** |

| 3 | **(Call to Order)** |

4        **THE CLERK:**  Please remain seated, and come to order.

5   This United States District Court is now in session.  The

6   Honorable John D. Early, United States Magistrate Judge,

7   presiding.

8        **THE COURT:**  Good morning everyone.  We're calling the

9   case of Masimo Corporation, et al, versus True Wearables, Inc.,

10  et al; Case Number 8:18-cv-2001-JVS-JDE.

11       Let's have appearances from Counsel, starting with

12  Counsel for the Plaintiffs.

13       **MR. RE:**  Thank you, Your Honor.  For the Plaintiff

14  Masimo Corporation and Cercacor Laboratories, my name is Joseph

15  Re from the law firm of Knobbe Martens.  And to my left is my

16  partner, Mark Kachner.

17       **THE COURT:**  All right.  And on behalf of Debtor -- or

18  I'm sorry -- on behalf of moving party Apple Inc.

19       **MS. SAMPLIN:**  Yes.  Good morning, Your Honor.  On

20  behalf of a non-party, but moving party in this case, on the

21  Motion to Quash, Apple Inc., Ilissa Samplin from Gibson, Dunn &

22  Crutcher.

23       **THE COURT:**  All right.  Is there any appearance or

24  person here on behalf of any of the Defendants; True Wearables,

25  or the other Defendant, Mr. Lamego?

4

1          Seeing or hearing nothing.  It was noticed for today.

2     They are not required to be here if they don't find an interest

3     in it.

4          All right.  We're here for one substantive motion,

5     and that's Docket Number 282, non-party Apple's Motion to Quash

6     and/or for a protective order regarding a subpoena.

7          In connection with that motion, there's a joint

8     stipulation supporting and opposing evidence.  There are

9     supplemental memoranda filed by each Plaintiff and moving party

10    Apple, at least one of which is supported by additional

11    evidence.  And then there are three applications to seal

12    documents in connection with the initial motion and joint

13    stipulation in evidence, and then in connection with each

14    supplemental memorandum.

15         We're going to start with the Motions to Seal -- or

16    the Requests to Seal.  We're going to go through these item by

17    item.  And we're going to start -- and I know it was a

18    different case, but at least some of the same Counsel were here

19    last week, or two weeks ago, where we talked about Local Rule

20    79-5.2.2, governs sealing.

21         Our protected order in this case also requires

22    parties, if they seek to seal documents, to proceed under Local

23    Rule 79.

24         And I'm just going to read, so that we all are on the

25    same footing.

Exhibit 3
-70-

5

1           This is Subsection B.

2           The heading is, "Documents designated by another as

3           confidential pursuant to a protective order."

4     And now I'll quote.  And this is a long quote:

5           "At least three days before seeking to file under

6           seal a document containing information previously

7           designated as confidential by another pursuant to a

8           protected order, the filing party must confer with

9           the person that designated the material confidential,

10          open paren, (the, (quote), 'designating party')

11          (close quote, close paren), "in an attempt to

12          eliminate or minimize the need for filing under

13          sealing by means of redaction. (period).

14          "If the document cannot be suitably redacted by

15          agreement, comma, the filing party may file an

16          application pursuant to Subsection A, comma, but the

17          supporting declaration must identify the material

18          previously identified as confidential, (comma), as

19          well as the designating party, (comma), and must

20          describe in detail the efforts made to resolve the

21          issue. (period).

22          I'm going to skip a sentence.  And then:

23          "Subsequently: (colon) --

24    Again, we're just going to talk about little i:

25          "Within four days of the filing of the application,

6

1          comma, the designating party must file a declaration

2          establishing that all or part of the designated

3          material is sealable by showing good cause or

4          demonstrating compelling reasons why the strong

5          presumption of public access in civil cases should be

6          overcome, (comma), with citations to the applicable

7          legal author -- legal standard. (period).

8          I'm going to end it there.  There's discussions about

9   if the designating party maintains that only a portion of the

10  material is sealable, the designated party should file, with

11  that declaration, a copy of what the proposed portion to be

12  sealed should be highlighted.

13         The last sentence of Subsection (i) provides,

14  (quote):

15         "Failure to file a declaration or other required

16         document may be deemed sufficient grounds for denying

17         the application."  (period, close quote).

18  Then little i-2 -- so little ii.

19         "If the application is denied, the filing party may

20         file the document in the public case file, i.e.,

21         unsealed, no earlier than four days and no later than

22         ten days after the application is denied unless the

23         Court orders otherwise." (period).

24         All right.  So with that standard in mind, let's turn

25  to Docket Number 289.  And that is an application to seal --

1    I'm sorry -- Docket Number 280.  That is an application to file

2    certain documents under seal along with redacted versions, and

3    then, in conjunction with that Docket 281, which is sealed.

4           And I won't, at this moment, get into anything that

5    appears to be confidential or had been designated as

6    confidential in those documents, but I will momentarily.

7           The declaration in support of the sealing request --

8    and this all relates to the original motion, which is Docket

9    282.  So we're in Docket 281.  It's by Mr. Lerner, Counsel for

10   moving party Apple.  And it cites to the appropriate Local Rule

11   79-5.2.2.  And it says it seeks to seal portions of the joint

12   stipulation.  And there is a sealed version, which is

13   unredacted and then separately filed at Docket 280; 281 is a

14   redacted version, along with Exhibits H and N to the

15   declaration of Ilissa Samplin, and Exhibits 3 through 8 and 10

16   through 11, to the declaration of Mark Kachner -- I'm sorry, I

17   butchered that.  Is it --

18           **MR. RE:**  Kachner.

19           **MR. KACHNER:**  Kachner, thank you.

20           **THE COURT:**  Kat --

21           **MR. KACHNER:**  Kack --

22           **THE COURT:**  Kachner -- which are all submitted in

23   connection with the motion.

24           So I'll tell you, I preliminarily looked at the

25   Documents H and N; they're Exhibits H and N to Ms. Samplin's

8

1   declaration.  And I find, based on what's in front of me and

2   the reference to the Case 8:20-cv-48-JVS that a sufficient

3   showing has been made to seal those documents.

4          As to the exhibits to Mr. Kachner's declaration, let

5   me start by asking.  I didn't see it on the docket.  And I'll

6   start with you, Ms. Samplin, because it's Mr. Lerner's

7   declaration that seeks sealing.

8          Turning -- and I'm going to go in a quick aside,

9   turning to paragraph 7 of that declaration, at Docket 281, it

10  indicates that Exhibits 3 through 8, 10 through 11, to the

11  Kachner declaration, contain material designated as

12  confidential or confidential attorney eyes' only, "AEO," by

13  Plaintiff and/or Defendants True Wearables and Marcelo Lamego

14  under the protected order in this case.

15         And I'm going to start with you, Ms. Samplin.  To

16  your knowledge, has anyone filed a declaration, either from

17  Plaintiffs or Defendants, as required under Local Rule

18  79-5.2.2(b), as I previously read from?

19         **MS. SAMPLIN:**  Your Honor, I don't have knowledge of

20  that off the top of my head.  But it --

21         **THE COURT:**  All right.

22         **MS. SAMPLIN:**  -- doesn't mean it's going to happen.

23         **THE COURT:**  Okay.  I'll ask Plaintiffs.

24         Are you aware of anyone having filed a declaration as

25  required to maintain a request to seal an evidentiary showing

Exhibit 3
-74-

9

1   under -- or just right now, it's a yes or no question, okay --

2   under Local Rule 79.5.2.2(b), to support sealing of the

3   documents attached -- that are sought to be sealed, attached to

4   your declaration?

5          **MR. RE:**  No, Your Honor.

6          **THE COURT:**  All right.  So with that being the lay of

7   the land, tentatively, under the Local Rules, I could, based on

8   that alone, order the request for sealing denied.

9          But let's do this:  Let's go through these, because I

10  don't want to do anything that's going to create unnecessary

11  heartburn due to maybe an oversight by someone.  So let's pull

12  up -- and, unfortunately, my computer right now is really slow.

13  But let's go through Exhibits 3 through 8, comma, 10 through

14  11, from Mr. Kachner's declaration.

15         And the only -- you're the only person here between

16  Plaintiffs and Defendants, who I can hear from, about the --

17  any basis to grant the sealing request.

18         So let's start with Exhibit 3.  Which I think I'm

19  safe to say is -- let's characterize it as a portion of a

20  transcript of a deposition taken on May 20, 2021.  I don't know

21  if we want me to get more specific than that.

22         But from Plaintiffs' standpoint, is this transcript

23  something that needs to remain under seal?  Is there

24  appropriate evidentiary showing?  And if there hasn't, do you

25  want to try to make one now?

10

1          **MR. RE:**  Thank you, Your Honor.  This is a deposition

2    transcript of the Defendant in the litigation that Defendant's

3    Counsel designated confidential.

4          **THE COURT:**  All right.  Are you requesting

5    confidential or attorneys' eyes only treatment for it?

6          **MR. RE:**  Yes, Your Honor.

7          **THE COURT:**  You are?  I want to be clear.  The way it

8    works is, they had an opportunity -- the Defendants did -- had

9    an opportunity to support the sealing request that was made

10   here under the Local Rules.

11         They did not make an evidentiary showing.  But if we

12   have a kind of situation where someone made a mistake, they're

13   not here today -- I wish they were -- they're not here today.

14         And if there's something in here that maybe you, as

15   an officer of the Court, are going to tell me, "Well, you know,

16   Judge, there's something in here that I think that they've

17   expressed separately or in some other circumstance."

18         And if you want to take a few moments to review it, I

19   encourage you to.  But my tentative is to find that the sealing

20   requirements have not been met, and order that this be filed in

21   the public docket within four days, and that we're going to

22   talk about these things today.

23         So let me start with -- it was a bit of a litany of

24   questions.  It's not your -- you never requested attorneys'

25   eyes only or confidential treatment of this portion of the

Exhibit 3
-76-

1   transcript, correct?

2          **MR. RE:**  Correct.

3          **THE COURT:**  And by you, I mean your clients.

4          Defendants did.  Is there anything in there that --

5   and, again, I'm putting you in an awkward spot, and I'm just

6   asking if you can tell me anything that you see in there that I

7   should independently verify.

8          Because I'll tell you, I don't see anything in there

9   that looks some -- looks like something that rises to the level

10  of attorneys' eyes only substantively or even to the level of

11  confidential.  I largely see objections and colloquies between

12  Counsel here.

13         So tell me if you see anything.  And when you're

14  done, after you've had enough time to look at it, tell me if

15  there's anything in here that you think I should be concerned

16  with.

17         **MR. RE:**  I attended the deposition.  And I know

18  exactly what the situation is.  The deposition --

19         **THE COURT:**  This is Mr. Re?

20         **MR. RE:**  This is Mr. Re.  Under the protected order,

21  the parties are given 30 days in which to make the redactions.

22         At the time of this filing, the entirety of the

23  transcript has to be treated as confidential or AEO under the

24  protected order until a certain amount of time -- I believe

25  it's 30 days -- passes for the witness to then designate the

12

1    portions they want to make AEO or confidential.

2           The trouble was, at the time this was filed, the

3    30-day --

4           **THE COURT:**  Understood.

5           **MR. RE:**  -- time passed.

6           **THE COURT:**  So has there been any specific

7    designation of any of this portion to your knowledge?

8           **MR. RE:**  To my knowledge, no.

9           **THE COURT:**  And do you see anything independently in

10   there that would -- that I should really look closely at,

11   because I'm inclined to deny the sealing request as to this

12   transcript?

13          You're not representing them.  I'm just asking you,

14   as an officer of the Court, sometimes things come up in

15   litigation where the parties know, "Hey, this is a very

16   sensitive topic for the other side."

17          **MR. RE:**  I believe that the Defendant has

18   over-designated.  I'm with the Court.  I think much has been

19   over-designated.

20          **THE COURT:**  Is there anything in here that is not

21   over-designated, from your view?  We're just talking about

22   Exhibit 3.

23          **MR. RE:**  In my opinion, nothing should be

24   designated --

25          **THE COURT:**  I don't even want you to give your

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 3
-78-

13

1   opinion.  It's more, has anything come to you from the

2   Defendants?

3           **MR. RE:**  Yes.  The Defendant has previously

4   designated documents that are inferentially referred to --

5           **THE COURT:**  We're going to be getting to those, I

6   believe.

7           **MR. RE:**  -- into the --

8           **THE COURT:**  We're going to be --

9           **MR. RE:**  -- deposition.

10          **THE COURT:**  -- getting to those.

11          **MR. RE:**  Particularly the deposition on page 327; the

12   email in question, which has been designated as confidential,

13   is --

14          **THE COURT:**  All right.  And I'll tell you --

15          **MR. RE:**  -- is discussed.

16          **THE COURT:**  -- that I've looked at that, and I don't

17   think that's confidential.

18          **MR. RE:**  I agree with you.

19          **THE COURT:**  All right.  So other than -- thank you

20   for relaying that information that's come from the Defendants

21   who were -- had notice of this hearing and are not appearing,

22   had an opportunity to file the required declaration, under

23   Local Rule 79.5.2.2(b), and did not.

24          So other than that, anything else you should -- that

25   I should look at closely that you're aware of?

Exhibit 3
-79-

14

1          **MR. RE:**  Nothing from the Plaintiff.

2          **THE COURT:**  All right.  So I'm going to deny the

3    motion -- the Request to Seal Exhibit 3 to the Kachner

4    declaration.

5          Let's move on to Exhibit 4.

6          And I should say that Exhibit 3, actually it's

7    several sessions of a deposition transcript of Mr. Lamego, just

8    to be clear for the record.

9          All right.  Exhibit 4 is, I believe, two emails.  I'm

10   not going to say the substance yet.  But the header -- I'll

11   put -- I'll say the date and time -- is an email dated

12   Wednesday, October 2, 2013, at 12:54 a.m.  It's a three-page

13   email followed by -- it's part of the same exhibit -- a

14   separate email, dated Wednesday, October 2, 2013, at 10:25 a.m.

15         I'll start with you, Ms. Samplin.  Are you aware of

16   any filing by Defendants seeking to support -- it's

17   Mr. Lerner's declaration -- seeking to support an evidentiary

18   finding to keep this document -- or to file this document under

19   seal?

20         **MS. SAMPLIN:**  I am not, Your Honor.

21         **THE COURT:**  All right.  On behalf of Plaintiffs,

22   either Mr. Re or Mr. Kachner, are you aware of any information

23   in the record -- let's just start with on the docket -- of an

24   evidentiary showing to support the continued sealing of

25   Exhibit 4?

Exhibit 3
-80-

15

1          **MR. RE:**  No, Your Honor.

2          **THE COURT:**  And is there anything in there -- and

3    I've reviewed it.  And it tentatively appears to me to not

4    contain anything that would rise to the level of -- and we're

5    looking at good cause here as opposed to compelling reasons --

6    but good cause to overcome the general presumption of public

7    access.

8          But tell me if you, first of all, on behalf of your

9    client, do you see anything in there that you think requires

10   sealing?

11         **MR. RE:**  No, Your Honor.

12         **THE COURT:**  And is there anything that you know of

13   from your dealings with Mr. Lamego or his Counsel -- Mr. Re had

14   mentioned that this is something that they had taken the

15   position, was -- is it attorneys' eyes only?  Is that how they

16   designated it, or just confidential?

17         **MR. RE:**  Just confidential.

18         **MR. KACHNER:**  Just confidential.

19         **THE COURT:**  All right.  That they find this document

20   confidential, other than generally attesting to that and

21   stating that in other portions of the litigation?

22         **MR. RE:**  We only know, having attended the Lamego

23   deposition, that he believes he kept it confidential because he

24   feels he has an obligation to Apple.

25         **THE COURT:**  Okay.  And just to be clear, Mr. Lerner's

16

1    declaration, the only basis for sealing the Request to Seal

2    anything in Mr. Kachner's declaration is the assertion that the

3    material had been designated confidential or AEO by Plaintiffs

4    and/or Defendants, correct?

5            MR. RE:  There's one item, Your Honor.  We requested

6    to True Wearables' Counsel that we could disclose this to

7    Apple.  And they put conditions on that.

8            THE COURT:  I recall that.  And I saw that there's

9    references in the briefing to that.  But here's my -- stepping

10   back, there's only one basis that's -- now it's in front of me.

11   There's a request to seal it.  The only basis for the request

12   to seal it is Mr. Lerner's statement that this document has

13   been designated confidential or confidential attorneys' eyes

14   only by Plaintiffs and/or Defendant.  Is that correct?

15           MR. RE:  It's misleading.  We only designated it --

16           THE COURT:  No, no, no.  I guess -- is there anybody

17   else?  Did Apple?  Has Apple attempted to designate this email

18   in connection with this motion?

19           MR. KACHNER:  No, Your Honor.

20           THE COURT:  Okay.  So we're just focusing on

21   Plaintiffs and/or Defendants.  I wish we knew who it was.  My

22   understanding is that you advised him that Defendants -- you

23   advised Apple that the Defendants had designated this as

24   confidential.  And then as pursuant to the protective order

25   would need to be filed under the procedures of Local Rule

17

1    79-5.2.  But no one has filed any evidentiary showing with

2    respect to this email; is that correct?

3              **MR. KACHNER:**  Correct.

4              **THE COURT:**  All right.  And other than the general

5    history of the litigation where they have stated they consider

6    it confidential, is there anything before today's hearing or

7    anything that you've been advised, recognizing that they didn't

8    initially want to share it with Apple.  Anything other than

9    that that contains information in here that's been relayed to

10   you as somehow particularly sensitive in this eight-year-old,

11   nearly eight-year-old email involving being approached for

12   potentially joining an executive team?

13             **MR. RE:**  No, Your Honor.

14             **THE COURT:**  All right.  I find that I'm going to deny

15   the request to seal Exhibit 4.  And as with all the exhibits I

16   decline, we're going to follow the procedure in Local Rule

17   79-5.2 that that's ordered to be filed in the public docket

18   between four 10 days from today.

19             Let's move on to Exhibit 5, looks like a meet-and-

20   confer correspondence.  And I think this was at least generally

21   what Mr. Kachner was talking about, that there was

22   communications with between counsel for Plaintiffs and

23   Defendants regarding certain records and this motion.

24             Then I'll ask Ms. Samplin, are you aware of anything

25   that's been submitted by Defendants that would support an

Exhibit 3
-83-

18

1    evidentiary showing to continue to seal Exhibit 5?

2              **MS. SAMPLIN:**  No, Your Honor.

3              **THE COURT:**  All right.  And on behalf of Plaintiffs,

4    do Plaintiffs contend that Exhibit 5 contains confidential or

5    attorneys'-eyes-only information under the protective order?

6              **MR. KACHNER:**  No, Your Honor.

7              **THE COURT:**  All right.  Having independently reviewed

8    it, I don't see anything in Exhibit 5 that would warrant or

9    justify any finding of confidentiality or other basis to

10   overcome the general presumption of public access.  And there's

11   been no evidentiary showing as required under Local Rule

12   79-5.2.2(b), so I'm going to deny the motion to seal Exhibit 5.

13             Exhibit 6 is another deposition transcript.  This is

14   a deposition, I won't say of whom, but of a representative of

15   Plaintiffs that was designated attorneys' eyes only.  And

16   again, it does not appear that there's been an evidentiary

17   showing with respect to Exhibit 6.

18             Ms. Samplin, are you aware of any that I have missed?

19             **MS. SAMPLIN:**  I am not, Your Honor.

20             **THE COURT:**  All right.  On behalf of Plaintiffs,

21   since I can't tell from Mr. Lerner's declaration because it

22   says "and/or," I can't tell who designated this.  Do you know

23   who designated this for purposes of our hearing here today,

24   designated it as attorneys' eyes only?

25             **MR. KACHNER:**  Understood, Your Honor.

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 3

-84-

1        **THE COURT:**  Okay.  And what is your view about

2   whether it should continue to be attorneys' eyes only or

3   confidential; or maybe more generally, should it be filed under

4   seal or not?

5        **MR. KACHNER:**  There are some materials in here, Your

6   Honor, that we would like to maintain under seal.

7        **THE COURT:**  All right.  Even though the showing is

8   late, I'm going to allow you, counsel for Plaintiffs, to file a

9   supplemental declaration setting forth, as required under Local

10  Rule 79-5.2.2(b), with highlighting what portions of Exhibit 6

11  you believe are -- should be maintained under seal, with an

12  evidentiary showing as to why.  And that filing may itself be

13  under seal.  And then we'll make a ruling on Exhibit 6.

14        All right.  Let's turn to Exhibit 7.  It looks like a

15  series of a family of email chain.

16        Ms. Samplin, do you have any -- is there anything in

17  the docket that suggests that any party made an evidentiary

18  showing to continue sealing Exhibit 7?

19        **MS. SAMPLIN:**  No, Your Honor.

20        **THE COURT:**  And on behalf of Plaintiffs, did you

21  designate this confidential or attorneys' eyes only or did

22  Defendants designate that?

23        **MR. KACHNER:**  Plaintiffs designated Exhibit 7.

24        **THE COURT:**  All right.  They had an opportunity and

25  did not submit any follow up and did not appear at the hearing

20

1    -- have not appeared at the hearing this morning.

2           Is there anything that you'd like to offer?  And

3    Mr. Kachner, you raised your hand.

4           **MR. KACHNER:**  I just want to be clear.  Plaintiffs

5    designated this document.

6           **THE COURT:**  Oh you said "Plaintiffs".  All right.

7    Well what's the basis for it?

8       **(Pause)**

9           **MR. KACHNER:**  We withdraw the confidentiality

10   designation, Your Honor.

11          **THE COURT:**  I don't want to rush you.  Here's what I

12   really don't want to do.  I don't want to have someone come

13   rushing back and say, whoops, we forgot this, so take as much

14   time as you need.  And if you withdraw it then it will be

15   withdrawn and the request to seal as to Exhibit 7 will be

16   denied but take your time.

17      **(Pause; Counsel confer).**

18          **THE COURT:**  Mr. Re, you want to speak.

19          **MR. RE:**  Yes.  I wonder if we can include this with

20   Exhibit 6 and go back to see our clients.  We're a little

21   concerned that there's individual names and their immigration

22   status --

23          **THE COURT:**  All right.

24          **MR. RE:**  -- that's mentioned on the document.

25          **THE COURT:**  The same order for Exhibit 7 as to

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 3
-86-

21

1    Exhibit 6 that to the extent continued sealing is requested, I

2    need a basis for it and I need an evidentiary showing to

3    support it.  And if not all of the document needs to be sealed,

4    I need a redacted version and then a version highlighting -- a

5    clean and unredacted version but has the portions to be

6    redacted highlighted.  And that submission may be made under

7    seal.

8            Exhibit 8, this is a letter dated July 23rd, 2016.

9    On its face, it indicates that there may be a basis to maintain

10   it confidential although the basis is an evidentiary basis as

11   opposed to meaning the basis to treat it as restricted that's

12   on the face of it is as an evidentiary privilege, not as a

13   public privilege.

14           So I'll ask you again, Ms. Samplin, any information

15   that you're aware of in the docket that I've missed about an

16   evidentiary showing to keep Exhibit 7 confidential or under

17   seal?

18           **MS. SAMPLIN:**  Are we on Exhibit 7 or Exhibit 8?

19           **THE COURT:**  You're right, Exhibit 8.

20           **MS. SAMPLIN:**  No, Your Honor.

21           **THE COURT:**  All right.  And on behalf of Plaintiffs,

22   who designated Exhibit 8?

23           **MR. KACHNER:**  This was designated by Defendants.

24           **THE COURT:**  All right.  Anything in there that you're

25   aware of that -- bearing in mind if it's filed in the public

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 3
-87-

1  docket, it doesn't alter any -- for lack of a better term --

2  "mediation privilege" or "settlement communication privilege"

3  but that's the one that caused me a little bit of pause.

4         **MR. KACHNER:**  We do not maintain confidentiality --

5         **THE COURT:**  All right.  Exhibit -- I'm going to deny

6  the motion as to Exhibit 8.

7         And then we turn to Exhibit 10.

8         So Exhibit 8 I actually left off.  There are

9  attachments to Exhibit 8 that have photos.

10        I just want to make sure, none of that is an issue

11  for Plaintiffs, correct?

12        **MR. KACHNER:**  None of that's an issue for Plaintiffs.

13        **THE COURT:**  All right.  Turning to exhibit -- well

14 there's more even beyond that but it looks like some emails but

15 since there's been no evidentiary showing I'm going to deny the

16 application.

17        Exhibit 10 is additional transcript of a different

18 witness' deposition in this case.

19        Ms. Samplin, any information that you're aware of

20 that's on the record that any party made an evidentiary showing

21 to support a sealing request?

22        **MS. SAMPLIN:**  No, Your Honor.

23        **THE COURT:**  On behalf of Plaintiffs, who requested

24 this transcript to be treated confidential?

25        **MR. KACHNER:**  Defendants, Your Honor.

23

1          **THE COURT:**  All right.  And it looks like it's dated

2    back in December of 2020 so the earlier situation seems less at

3    issue.

4          Is there anything in this transcript that you appear

5    cause -- would cause -- would support just facially a continued

6    sealing of Exhibit 10?

7          **MR. KACHNER:**  No, Your Honor.  I would qualify that,

8    that this also falls in the category of documents that we

9    requested True Wearables' permission to disclose to Apple, and

10   even right before the filing they conditioned that disclosure.

11         **THE COURT:**  All right.  And there's a reference to an

12   investigation, a government investigation.  Is there anything

13   that you're aware of that that -- this wasn't sealed based on

14   some governmental request or agency request that something be

15   kept confidential.  Is that correct?  From your perspective?

16         **MR. KACHNER:**  I don't believe so, Your Honor.

17         **THE COURT:**  Okay. All right.  The motion will be

18   denied for lacking and evidentiary support as to Exhibit 10.

19         And lastly, Exhibit 11 is another email chain with

20   counsel.

21         Ms. Samplin, are you aware of any evidentiary basis

22   on the docket to support the continued or the request to seal

23   beyond Mr. Lerner's declaration for Exhibit 11?

24         **MS. SAMPLIN:**  No, Your Honor.

25         **THE COURT:**  Oh behalf of Plaintiffs, do you know who

24

1    designated Exhibit 11 to be treated as confidential?  It's not

2    facially stamped confidential.

3              **MR. KACHNER:**  Plaintiffs designated this document,

4    Your Honor.

5              **THE COURT:**  Plaintiffs did.

6              **MR. KACHNER:**  Yes, Your Honor.

7              **THE COURT:**  All right.  What's the basis?

8              **MR. KACHNER:**  There is material in here discussing

9    confidential development work that was going on at Masimo and

10   Cercacor.

11             **THE COURT:**  All right.  Other than that, is there

12   anything that Plaintiff based its designation on?

13             **MR. KACHNER:**  No, Your Honor.

14             **THE COURT:**  All right.  As with Exhibit 6 and 7

15   authorized Plaintiff to make a filing with respect to

16   Exhibit 11 that sets forth what the legal basis for the

17   sealing, what an evidentiary foundation would be for sealing.

18   And take proposed redacted (indisc. papers shuffling) if

19   anything can be publicly disclosed to propose redacted and a

20   unredacted version with the proposed redactions highlighted in

21   the unredacted version.

22             So that's with respect to just the motion.  As I

23   noted, I don't see a problem with Exhibits H and N to

24   Ms. Samplin's declaration based on what's in the record and

25   what's in the record in the other case being under seal, but

25

1   everything else will be unsealed with an unredacted copy to be

2   filed within four days, except for Exhibits 6, 7 and 11 and

3   we'll await further ruling on that based on a further showing

4   by Plaintiffs.

5           In terms of the two supplemental memoranda, I think

6   that Apple's supplemental memoranda was only -- sought an

7   under-seal filing because argument portions in the supplemental

8   memoranda referred to other materials that were provisionally

9   sought sealing, so we're going to take that up after everything

10  gets final.  And we'll direct that with respect to Apple's

11  supplement -- and also the joint stipulation -- anything that

12  is ordered unsealed will no longer be a basis to redact from

13  the joint stipulation.  Anything that remains sealed will

14  remain.  And so since it's a joint submission, we're going to

15  have to have the parties work together to submit a redacted

16  joint -- a newly redacted joint stipulation with everything

17  that's been ordered not sealed to be included in that new

18  redacted joint stipulation to be filed.  Everybody understand

19  that?

20          And the same applies to the supplemental memoranda.

21          There are some exhibits to Plaintiffs' supplemental

22  memoranda.  I think it's Exhibit 16 which Plaintiff seeks

23  sealing.  And let's pull that up.  And while I'm doing that

24  I'll ask since this is at Plaintiffs' request -- well let me

25  take a look.

26

1        **(Pause)**

2             **MR. RE:**  Your Honor, I might be able to make this one

3    easy for you.

4             **THE COURT:**  All right.

5             **MR. RE:**  The Exhibit 16 is a continuation of an email

6    chain that was previously filed at Exhibit 5.  And there's

7    nothing new in the additional discussion that would warrant

8    sealing.  So the same treatment applies to Exhibit 5 which was

9    unsealed, I believe.

10            **THE COURT:**  All right.  I guess -- let me ask you.

11            Who -- although you did the declaration, did you do

12   the declaration seeking sealing of Exhibit 16 because

13   Defendants had designated Exhibit 16 confidential?

14            **MR. RE:**  That's right, Your Honor.

15            **THE COURT:**  All right.  And you're not aware of any

16   filing by Defendants providing an evidentiary basis to keep

17   that document under seal since you filed your request to seal?

18            **MR. RE:**  No, Your Honor.

19            **THE COURT:**  And do you independently see anything

20   from your perspective that would require sealing with respect

21   to Exhibit 16?

22            **MR. RE:**  No, Your Honor.

23            **THE COURT:**  All right.  Exhibit 16 -- the request to

24   seal Exhibit 16 is denied.  And it will be ordered to be filed

25   on the public docket four days after today.

Exhibit 3
-92-

```
 1           And your joint -- I don't actually recall any

 2   redactions from your joint or your supplemental memoranda --

 3   Oh, there are, okay.

 4           MS. SAMPLIN:  For Apple, Your Honor?

 5           THE COURT:  Pardon?

 6           MS. SAMPLIN:  Apple you mean?

 7           THE COURT:  I was talking about for Plaintiffs but I

 8   see that there are.

 9           So you're each going to go through -- for your

10   supplemental memoranda, you're going to file a new one.  And

11   it's going to be redacted, only the materials that have been

12   approved for redaction which as of right now is only the two

13   exhibits to Ms. Samplin's declaration, and may also include the

14   three exhibits, Exhibits 6, 7 and 11 from Mr. Kachner's

15   declaration.  Anything that's in the joint stipulation or

16   either supplemental memoranda that's maintained as redacted

17   will be -- as deemed confidential will be maintained as

18   redacted.  Anything else that's redacted based on one of the

19   other things that the application had been denied, you're going

20   to be filing a new one but we're going to wait four days so

21   we're going to get new -- what did I say, the rule say it's

22   either four to 10 days you're going to be filing all this stuff

23   and so I do -- actually, you know what?  For your supplemental

24   memoranda and your joint stipulations, you're going to have to

25   wait to file that until I've ruled on the new submissions by
```

1    Plaintiffs with respect to Exhibits 6, 7 and 11.  So we'll hold

2    off on that and there'll be a separate order regarding those.

3            All right.  So that's the sealing.

4            **MS. SAMPLIN:**  Your Honor, I just have one question.

5            **THE COURT:**  Yeah.

6            **MS. SAMPLIN:**  Our supplemental memorandum only quotes

7    from Exhibit 8 which you just denied the motion so should we

8    just go ahead and file that and not wait --

9            **THE COURT:**  Wait --

10           **MS. SAMPLIN:**  -- or --

11           **THE COURT:**  Wait four days because that's what the

12   local rules provide.  It says "Unless by order of the court".

13   If we had Defendants here I would just do it now but we're

14   going to wait.  It doesn't mean that they have -- having had

15   both an ability to comply with the rule as required and appear

16   here today that -- well I'm just going to leave it at that but

17   we'll have  it --

18           **MS. SAMPLIN:**  But we don't need to wait for your

19   further order on the other exhibit.

20           **THE COURT:**  Correct.  On that one once four days have

21   passed, you can go ahead and file it unless you hear otherwise

22   from the Court.

23           Okay.  Let's now turn to the substance.

24           And I'm going to speak about everything that's been

25   unsealed.  And in the event that anything changes on that,

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 3
-94-

1  we'll go back and have to perhaps designate from here on

2  forward this transcript confidential but for now it's not and

3  we're proceeding in a public fashion.

4       My tentative is to deny the motion in its entirety

5  with the possible exception -- I haven't decided -- as to

6  Request for Production Number 1 which is the entire human

7  resources employee file for Mr. Lamego and we can talk further

8  about that.  And I'm going to tell you that I'm using the

9  amended categories for document productions proffered by

10 Plaintiff in their portion of the joint stipulation as opposed

11 to what's in the original subpoena.

12      I find that, tentatively, that both the requested

13 categories of records and the topics for testimony are relevant

14 -- again, with a little proviso on the employee file -- are

15 relevant and are proportional to the needs to the case, taking

16 into account the somewhat heightened review under Rule 45

17 because Apple is a nonparty.  But I do find that the material

18 sought is relevant; it's narrowly crafted to go to those

19 issues; again, bearing in mind that even with the heightened

20 relevance standard of Rule 45, relevance is still broadly

21 construed.

22      To the extent Apple argues that confidential

23 information is sought, I find that the protective order in this

24 case is sufficient to protect any such interests and does not

25 overcome the need and proportionality for the information.

30

1   There's an argument that these requests duplicate requests for

2   documents in what Apple designated as a related case in Masimo,

3   et al. v. Apple, Inc; Case Number 8:20-cv-48-JVS.  And I think

4   that argument is somewhat related but not identical to Apple's

5   last argument that the subpoena is -- and they used the phrase

6   "and around" various limitations and discovery that were either

7   agreed to or imposed in that other case.  And on each of those

8   grounds I deny the motion and find that this is an appropriate

9   effort to obtain legitimate discovery.

10          And I'm not going to at this point make any findings

11  about Apple and counsel but I'm going to say that there is a

12  whiff of Three-card Monte going on here about getting documents

13  and finding documents and doing a shell game about where

14  Plaintiffs are supposed to go and the procedural mechanisms.

15          And we have -- it's actually referenced in one of the

16  exhibits that we were just discussing that's been unsealed --

17  an assertion of a common interest privilege.  And there's been

18  fingers pointing that you can't disclose this or you can't use

19  something disclosed in this case in another case -- and that's

20  what the protective orders do say that parties are limited.

21  And so to the extent a party is -- demands that a party obtain

22  discovery through another case because that party is not

23  allowed to obtain it or use it under the protective order in

24  that case, then that's a perfectly appropriate situation.

25          And when defendants who are apparently in a common

Exhibit 3
-96-

31

1   interest privilege with nonparty Apple assert that they're not

2   going to answer questions or provide information because they

3   deem it to be confidential and that confidentiality is alleged

4   to be held by Apple, these are all the factors that go into why

5   those final two arguments raised by Apple, that it's Plaintiffs

6   that are doing an end-around or -- and this may be my words,

7   not theirs -- playing games that I do not agree.  And I'm not

8   going to make a finding, at least not at this juncture, about

9   good faith or bad faith but I'll certainly be willing to hear.

10          So having heard my tentative, Apple -- Ms. Samplin,

11   it's Apple's motion.  I'll hear from you.

12          **MS. SAMPLIN:**  Thank you, Your Honor.  I just want to

13   clarify.

14          Our end run argument was about the fact that we

15   appeared before Your Honor a few weeks ago, on request in the

16   Apple case that related to Marcelo Lamego's duties at Apple or

17   job responsibilities and hiring and whatnot, and Your Honor

18   denied all but one of those requests.  And so the end run that

19   we are arguing is that they are trying to get documents of the

20   type that were deemed overbroad and irrelevant to the Apple

21   case.  They're now trying to get it in the True Wearables case

22   which has nothing to do with Apple or Marcelo Lamego's time at

23   Apple.  That's the argument we were trying to make.

24          I hear Your Honor on your other point but

25   respectfully, we believe if the discovery is not relevant in

Exhibit 3
-97-

32

1   the Apple case where Apple is a party, and the issues in the

2   case are tied to Lamego's work at Apple, we don't see how those

3   documents are relevant in this case where all of the causes of

4   action are about Lamego's time at True Wearables.

5           And then when you look at the supplemental memorandum

6   from Plaintiffs, their justification is basically an email from

7   Lamego, that was Exhibit 16, and then all they point to at the

8   end is that it's relevant to their breach of fiduciary duty

9   claim.  But that claim in the complaint is that Lamego breached

10  his fiduciary duty to Cercacor by, one, failing to disclose

11  facts that showed some noninvasive measurement technology was

12  not feasible, causing Cercacor to license this technology to

13  Masimo even though it did not work; and, two, failing to file

14  patents on subject matter he was instructed to include.  That

15  has nothing to do with Apple; that has nothing to do with the

16  email to Tim Cook; that has nothing to do with Apple hiring

17  Lamego or Lamego choosing to work at Apple.  So I'm just

18  struggling to see the relevance of the breach of fiduciary duty

19  claim which is the only purported basis set forth in the

20  supplemental memorandum for the discovery at issue.

21          **THE COURT:**  Where did Mr. Lamego work between the

22  time he worked at Cercacor and True Wearables?

23          **MS. SAMPLIN:**  He worked at Apple, Your Honor, but the

24  claims in this case are not based on his time at Apple.

25          **THE COURT:**  He's alleged to have taken trade secrets

33

1   and used them at his new business, correct?

2           MS. SAMPLIN:  His new business meaning True

3   Wearables?

4           THE COURT:  Yes.

5           MS. SAMPLIN:  Yes, correct.

6           THE COURT:  And that was roughly six, seven, eight

7   months after he left Cercacor, correct?

8           MS. SAMPLIN:  That is correct.

9           THE COURT:  And in that intervening six, seven, eight

10  months he was at Apple, correct?

11          MS. SAMPLIN:  That is correct.

12          THE COURT:  And I have in front of me an email that

13  he sent to Apple's CEO.  Let's just say it speaks for itself as

14  to what Mr. Lamego was saying.  And then the timing is that

15  email was sent at what?  12:00 a.m.?  1:00 a.m.?  And then at

16  10:00 a.m. -- I'm sorry, even earlier than that.  What is it?

17  10:30 a.m. an Apple recruiter responds to that email that was

18  sent to Mr. Cook by Mr. Lamego, correct?

19          MS. SAMPLIN:  That's correct.

20          THE COURT:  Well, I'm going to tell you that in my

21  view, under the broad definition of relevance, even as somewhat

22  constricted by the Rule 45 requirements that we have tried to

23  avoid an undue burden on a party or on a nonparty that a

24  sufficient showing of relevance as to why the hiring and

25  potential grounds for termination, grounds which apparently --

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 3
-99-

1    it's unrebutted -- Mr. Lamego has refused to answer, stating

2    that it's because he owes a duty of confidentiality to Apple

3    that I think rise to the level of relevance, that rise to the

4    level of proportional to the needs of the case.

5              And again, I don't really want to but maybe I should

6    get into some other issues that this email disclosure raises.

7    I'm not going to but if we want to go talk about it more, let's

8    do that.  I'll leave it up to you, Ms. Samplin.

9              **MS. SAMPLIN:**  I defer to Your Honor as to what you --

10             **THE COURT:**  Well I guess what I'm saying is, argue as

11   much if you want.  If we really want to get into -- when you

12   say there's no connection or no relevance to this case for

13   information about Mr. Lamego's short stint at Apple, why he was

14   hired, why he was terminated, this email sheds a lot of light

15   on some issues.  It's not in and of itself going to be a case

16   dispositive but it's certainly --

17             I've done a lot of trials and you want to tell a

18   story.  And part of -- and I don't mean like a fairy tale.  I

19   mean there's a beginning, middle and end.  And Mr. Lamego's

20   time at Apple is fairly -- I'm not going to overstate it -- but

21   fairly described as part of the middle of this story.  And to

22   excise it would not meet with what a trial is for, what a jury

23   is for.  Again, I'm not going to do the trial; that's going to

24   be up to Judge Selna to see what comes in and what doesn't but

25   I'm not going to, at this stage, excise what I believe -- and

1    this email seems to confirm -- there's a significant,

2    potentially significant information in that six, seven or

3    eight-month period that are part of the story.  And maybe

4    there's nothing, maybe there's nothing to it but there's enough

5    here to fall within the definition of relevance and

6    proportionality to tell a story.

7              And the email, the follow-up email from a recruiter,

8    the whole history of the allegations in the case, and we'll see

9    what happens.  It may be -- again, it may be nothing; there may

10   be nothing to it but it appears relevant and it appears

11   proportional.

12             And in terms of the end-run language -- well, I think

13   that there's more going on here than -- I'm going to leave it

14   at that.  There's more going on here.  And I have some concerns

15   about some of the things that are going on but I'm just going

16   to leave it at that and give you an opportunity, Ms. Samplin,

17   to argue anything else that you want on anything in my

18   tentative or anything else.

19             **MS. SAMPLIN:**  Well, Your Honor, can we talk about --

20   or did you want to do it separately, the personnel file?

21             **THE COURT:**  Sure, let's talk about the personnel

22   file.  I'll tell you my concerns are it's -- somebody's

23   personnel file could contain a lot of things that I don't think

24   are necessarily relevant, things like medical leave, things

25   like reasonable accommodations.  I don't know if any of these

36

1    things exist; I don't have a factual basis.  Mr. Lamego who I

2    kind of would have thought would have filed something to the

3    extent my concerns are based on his right to privacy, he didn't

4    and he's not here.  It's kind of why I'm surprise -- one of the

5    reasons I'm surprised his counsel isn't here.  But that said, I

6    do still have to take everything into account.

7             We have a protective order but we have Rule 45.  I

8    don't know how burdensome it would be to produce the personnel

9    file but maybe we can get some clarification on why the

10   entirety of the personnel file is relevant and proportional.

11            But first of all, it's your motion, Ms. Samplin.  And

12   having heard my thoughts, you tell me what you think.

13            **MS. SAMPLIN:**  I believe that the request for the full

14   personnel file is overbroad and not proportional.  And if we're

15   going based on Your Honor's articulation of relevance and why

16   you believe certain of these requests fit in the relevance

17   standard, then I would argue that the requests that they're

18   going to get, if you're going to deny our motion, elsewhere

19   between Requests for Production 2 to 5, as modified -- because

20   I understand we're going by their modified requests for

21   production -- they're getting the information that you've

22   articulated as relevant.  I don't see why they need to open up

23   an entire personnel file which Your Honor already said did need

24   to be produced in the Apple case.

25            **THE COURT:**  well let's -- to some extent the Apple

37

1    case had different issues.  There where what?  Ten or 12 former

2    employees governed by the request at issue in that case,

3    although there were one or two that related to Mr. Lamego and

4    the issues are somewhat subtly different.  And in the Apple

5    case, Mr. Lamego wasn't a party whereas here, I'm just -- again

6    I'm surprised he's not here to assert a right to privacy

7    because that would be the primary basis.

8         I don't really see -- I don't know how big his

9    personnel file is, considering the number of motions, both in

10   this case and the related case.  From a comparison standpoint,

11   I don't imagine the photocopying costs of a personnel file are

12   unduly burdensome or expensive under Rule 45 but that's the

13   only one that I'm unsure about and particularly considering.

14   I'm tentatively going to grant it as to all those other

15   categories.

16        So anything else, Ms. Samplin?

17        **MS. SAMPLIN:**  Yes.  So Your Honor I just want to

18   point you to page 1 in our Supplemental Memorandum because you

19   are correct that requests in the Apple case did have that

20   definition of former employees that was broader and went beyond

21   Lamego.

22        But then we specifically spoke about the personnel

23   file as it related to Lamego.  And on page 64 of the transcript

24   you reiterated that you weren't compelling Apple to produce the

25   entire HR files of Lamego.  I hear you that Lamego is a party

Exhibit 3
-103-

38

1   here and he's not here to assert privacy interests but we still

2   think it's overbroad and not proportional to the needs of the

3   case, particularly if you are going to grant the other requests

4   for production.

5          **THE COURT:**  All right.  Anything further?

6          **MS. SAMPLIN:**  I guess I would just ask for

7   clarification.

8          Your tentative on Requests 2 through 5, that's for

9   all modified versions of those requests.

10          **THE COURT:**  Yes.

11          **MS. SAMPLIN:**  Right?  Okay.

12      **(Pause)**

13          I guess I would still argue that I think Request

14   Number 2, for example, is too broad because weren't limited by

15   Plaintiffs to "documents sufficient to show".  They were just

16   enlarged to "documents and communications".  So we're now

17   requesting documents and communications related to the hiring

18   of Lamego.  I understand they dropped the word "all" but the

19   fact that they've used documents sufficient to show elsewhere

20   shows that their request for documents, as opposed to all

21   documents is really just the same thing.  And so I think the

22   request is still broad -- is still overbroad.

23          **THE COURT:**  Anything further?

24          **MS. SAMPLIN:**  Are we going to deal with the

25   deposition topic separately?

39

1          **THE COURT:**  No.  It's your motion.  Anything else you

2   want to raise with respect to the motion?

3          **MS. SAMPLIN:**  Yes.  So I would say that I think the

4   deposition topics are unnecessary if Your Honor is granting the

5   request -- sorry -- is denying the motion with respect to

6   Requests 2 through 5.  The deposition topics get at largely the

7   same material.  And I would suggest at a minimum the Plaintiff

8   should get the documents -- if we're being ordered to produce

9   the documents -- see what's in the documents and then decide.

10  And maybe we can work together and meet and confer as to

11  whether a deposition is actually necessary from a nonparty in

12  this case on the same exact topics that they're seeking

13  documents about.

14          **THE COURT:**  Well the good news is that will be my

15  order with one little proviso.  Apple will be ordered to

16  produce the documents first.  And then once the documents are

17  received, the 30(b)(6) or the Rule 45 deposition will proceed.

18  And if for whatever reason Plaintiff doesn't need it any

19  further or doesn't want it any further, they can cancel it but

20  it will be ordered and it will be ordered to take place after

21  the documents are received.

22          Anything further?

23          **MS. SAMPLIN:**  The deposition topics, Your Honor.

24      **(Pause)**

25          I would also just add, I think the deposition topics

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 3
-105-

40

1   were not revised and they still go beyond the revised requests

2   for production.  And so again, I think the deposition is not

3   necessary here on these broad topics, getting at all

4   communications that were had between Apple and Marcelo Lamego

5   related to hiring or termination.  And I think the documents

6   are sufficient in that regard.  And if they're not, if the

7   Court deemed them not, the deposition should be tailored to the

8   revised topics.

9           **THE COURT:**  Anything further?

10          **MS. SAMPLIN:**  No, Your Honor.

11          **THE COURT:**  All right.  On behalf of Plaintiffs, I'm

12  telling you, I'm inclined at this point to stick with my

13  tentative, including the tentative to deny the request for the

14  entirety of Mr. Lamego's personnel file.

15          If there's something specific, other than what's

16  already been granted, that there's a proffer of relevance, I'll

17  hear it.  But I'm, at this point, inclined to stick with my

18  tentative.  But you can argue anything you wish.

19          **MR. RE:**  Well, I agree with the tentative.  And we

20  have no interest in trying to invade his right to privacy on

21  the medical.  And those types of issues are obviously not of

22  interest to us at all.

23          And I haven't seen any evidence of burden.  And I

24  think the Court's correct.  And I agree with tentative.

25          I just want to correct one thing on the record.

Exhibit 3
-106-

41

1    Ms. Samplin repeatedly has stated as if this Court has denied

2    the Apple Motion to Compel.  And I agree with you, it's

3    slightly different circumstances.

4          But just so the record is clear, we submitted the

5    order from that Apple hearing.  And the reason why 236, 237,

6    and 239 were denied, they were denied as moot.  Because Apple

7    agreed to produce the documents with respect to Lamego and

8    O'Reilly.

9          So it's not correct that these motions were just

10   denied outright.  They were denied as moot, as unnecessary

11   because they did agree to produce, even in the Apple case, the

12   Lamego-related documents.  So I wanted that to be clear.

13         And with regard to this discussion we're having now

14   about the Cook email and all of that, they had the Cook email,

15   they had all the evidence, and their supplemental memorandum

16   ignored the notice of related cases, ignored the confidential

17   agreement, ignored the Tim Cook email, and, as you noted, they

18   didn't even contest that Lamego is not giving us the

19   information, because he's saying, "Go to Apple."

20         And I attended that Lamego deposition.  And his --

21   he's not even taking the view that this stuff is irrelevant.

22   He's just taking, you know, "Go to Apple.  I don't want to be

23   sued by Apple."

24         So you're right.  Lamego himself is not even

25   contesting the relevance of this information.  He's just not

Exhibit 3
-107-

42

1   comfortable with us seeing it because he's afraid of Apple.

2          I have nothing further, and I agree with the

3   tentative.

4          **THE COURT:**  All right.  The tentative order, with

5   respect to the motion itself, Docket 282, will be the order of

6   the Court.  There will be a written order to follow.  The

7   motion will be denied with the exception of Category I, the

8   entirety of the personnel file.  I'm not going to order that.

9   I didn't hear anything about some sub-information other than

10  what's contained in Request Numbers 2 through 5.

11         So that will be the order of the Court.  And in terms

12  of the sealing applications, the three sealing applications we

13  mentioned, the request to seal the two exhibits to

14  Ms. Samplin's declaration, Exhibits H and N, those -- that

15  request will be granted as to those, and it will be denied as

16  to Exhibits 3, 4, 5, 9, and 10 to the declaration of

17  Mr. Kachner, with respect -- and that's the initial declaration

18  of Mr. Kachner -- with respect to Exhibit 6, 7, and 11.

19         Apple is -- or Plaintiffs are ordered to file a

20  supplemental declaration under seal that provides their grounds

21  for continued sealing as to those exhibits, and an evidentiary

22  showing in support of those grounds, and newly redacted and

23  highlighted versions of those exhibits, to only seek to redact

24  those portions as to which confidentiality or attorneys' eyes

25  only or whatever the legal basis for sealing is made.

43

1           And as to the, I think it was Exhibit -- what did we

2    say Exhibit 12 in -- filed by -- in Mr. Kachner's declaration,

3    in support of Plaintiffs' supplemental memorandum, that request

4    to seal is denied.

5           **MS. SAMPLIN:**  I think it's Exhibit 16, Your Honor.

6           **THE COURT:**  Oh, 16.  I'm sorry.  Thank you.

7           Exhibit 16, that request is denied.  All those

8    documents as to which requests to seal have been denied are to

9    be filed within four to ten days from today, on the public

10   record.

11          And Apple's showing -- how much time do you think you

12   need to make your showing with respect to Exhibits 6, 7, and

13   11?

14          **MR. SPEAKER:**  Maybe by Monday.

15          **THE COURT:**  All right.

16          **MR. SPEAKER:**  Monday is fine, Your Honor.

17          **THE COURT:**  By Monday, June 28th.  Apple will file

18   that request.

19          And then I know this is a lot.  Apple's supplemental

20   memoranda should be refiled without any item under seal, let's

21   say, by Tuesday, June 29th -- and I may have said, "July 28th"

22   earlier -- June 28th -- by Tuesday, June 29th.

23          And then the joint stipulation, the parties are to

24   meet and confer and determine, after this hearing and the

25   rulings, what still needs to be redacted, and then to file a

Exhibit 3
-109-

44

1    redacted version of the joint stipulation with only the

2    provisions that remain under seal redacted.

3            And Plaintiffs' supplemental memorandum, same with

4    that, because there were some provisions in the supplemental

5    memorandum that are redacted -- or that were redacted because

6    of earlier filings.

7            Does that all make sense?

8            **MR. SPEAKER:**  Yes, Your Honor.

9            **THE COURT:**  Any questions?

10           In terms of the timing of the production, I guess,

11   since I'm denying the motion, I don't necessarily want to get

12   into timing.  It's not really before me.  It was a Motion to

13   Quash.  So the subpoena goes forward.  Obviously, the return

14   date has passed.

15           I'd be inclined to say ten days, produce documents.

16   And when is our discovery cutoff in this case?  It's already

17   passed, right?

18           **MR. RE:**  No.

19           **MR. KACHNER:**  Yes, Your Honor.  True Wearables,

20   (audio glitch).

21           **THE COURT:**  Okay.  And it was in May, right?

22           **MR. RE:**  Yes.  We're now in expert discovery.

23           **THE COURT:**  Okay.  So let's --

24           **MS. SAMPLIN:**  Your Honor, I would just ask, with the

25   July 4th holiday, I'm just -- it's just going to be a little

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 3
-110-

45

1    tough for -- our client shuts down the arm of production.

2          **THE COURT:**  Well, how much -- can I ask you -- of the

3    requested documents, how much is different from what I assume

4    your clients are already gathering in the 20-48 case?

5          **MS. SAMPLIN:**  Your Honor, honestly, most of these

6    requests were denied in that case, so -- or they were narrowed.

7    I mean, I just do want to want to say --

8          **THE COURT:**  All right.  We don't need to hear

9    anymore.  We've got trial dates, Selma has trial dates.

10   They've got expert discovery cutoffs; they've got motion

11   deadlines coming up.

12          There was no expedited request for a hearing on this

13   motion, so I won't make an unreasonably short response.  But

14   for June 24th, I'm not really sure why Friday, July 2nd

15   wouldn't be a reasonable deadline to get what, to me, for a guy

16   that worked at Apple for seven months, we're not talking

17   about -- I don't think.

18          I don't see anything in front of me that would

19   suggest that we're talking about a substantial amount of

20   documents.  There may be work to locate them.

21          **MS. SAMPLIN:**  I'm just saying the client is closed on

22   July 2nd.  And I believe July 1st.  So that's my hesitation.

23   I'm not sure about July 1st, but I know July 2nd.  So that's my

24   hesitation.

25          **THE COURT:**  Apple, as a company, company-wide is

Exhibit 3
-111-

1   closed?

2          **MS. SAMPLIN:**  Production.  The production team that

3   does the productions for us.

4          **THE COURT:**  When is your expert discovery cutoff?

5          **MR. SPEAKER:**  August.

6          **MR. SPEAKER:**  Opening reports have already been

7   served.  August is --

8          **MR. SPEAKER:**  Yeah.  We're in the middle of rebuttal

9   reports.  So we probably have about six weeks.

10          **THE COURT:**  All right.  Well, I'm not sure that this

11   has -- I don't know you case well enough to know how much this

12   has to do with expert reports.

13          But I'll tell you what, I'll give Apple until July

14   7th, which is 13 days.  And the parties are to schedule the

15   deposition testimony to take place expeditiously after the

16   production and the full production of documents.

17          All right.  Is there anything further that I need to

18   take up this morning with request to the motions, the sealing

19   applications, or any other matter?

20          On that general question, I'll start with Plaintiff.

21          **MR. RE:**  Nothing further from the Plaintiff.

22          **THE COURT:**  All right.  From Apple?

23          **MS. SAMPLIN:**  I do just want to state on the record

24   that I think Mr. -- just to the extent there was a suggestion

25   by Mr. Re that we have somehow mislead the Court as to what was

1  ordered or agreed to in the Apple case, our supplemental

2  memorandum is clear.  On page 2, we said Apple voluntarily

3  agreed to produced.  And we referred to RFP 236.

4         So I just want to correct the record before the

5  Court.  I don't think there was any effort.  I know there

6  wasn't an effort to mislead the Court as to what Apple

7  voluntarily agreed to do in the Apple case.

8         **THE COURT:**  We'll leave it at that.  I'm not making

9  any findings one way or another right now.

10         I'll tell Apple I almost did.  And I'm not going to,

11  based on what seems to be going on, on some of these issues.

12  But we're just going to leave it -- we're going to leave it at

13  that.

14         All right.  So we are adjourned.

15     **(Proceeding Concluded)**

16

17

18

19

20

21

22

23

24

25

<u>**CERTIFICATION**</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>June 26, 2021</u>

       Signed                                                Dated

*TONI HUDSON, TRANSCRIBER*

**From:** noreply@courtdrive.com <noreply@courtdrive.com>
**Sent:** Tuesday, June 29, 2021 10:13 PM
**To:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Mark Blake <mark.blake@masimo.com>
**Subject:** Activity in Case 8:18-cv-02001-JVS-JDE Masimo Corporation et al v. True Wearables, Inc. et al Transcript (CV)

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered on 6/29/2021 at 10:12 PM PDT and filed on 6/28/2021
**Case Name:**        Masimo Corporation et al v. True Wearables, Inc. et al
**Case Number:**      8:18-cv-02001-JVS-JDE
**Filer:**
**Document Number:** 316

**Docket Text:**
<span style="color:blue">**TRANSCRIPT for proceedings held on 6/24/2021. Court Reporter/Electronic Court Recorder: EXCEPTIONAL REPORTING SERVICES, INC., phone number (361) 949-2988. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 7/19/2021. Redacted Transcript Deadline set for 7/29/2021. Release of Transcript Restriction set for 9/27/2021. (ls)**</span>

**8:18-cv-02001-JVS-JDE Notice has been electronically mailed to:**

Adam Powell    adam.powell@knobbe.com, 2abp@knobbe.com, litigation@knobbe.com

Amanda Rose Washton    a.washton@conklelaw.com, awashton@hotmail.com, support@conklelaw.com

Brian Christopher Claassen    brian.claassen@knobbe.com, KnobbeAdmin@ecf.courtdrive.com

Eric R. Chad    echad@merchantgould.com

Irfan A Lateef    irfan.lateef@knobbe.com, ial@kmob.com, litigation@kmob.com

Exhibit 3
-115-

James Eugene Youngblood    jamie.youngblood@knobbe.com

Joseph R. Re    litigation@kmob.com, joe.re@knobbe.com, jre@kmob.com, KnobbeAdmin@ecf.courtdrive.com

Joshua Hawkes Lerner    jlerner@gibsondunn.com, amoser@gibsondunn.com

Mark D Kachner    mark.kachner@knobbe.com, doreen.buluran@kmob.com, litigation@knobbe.com

Paige S Stradley    pstradley@merchantgould.com

Perry D Oldham    perry.oldham@knobbe.com, 2pdo@kmob.com, litigation@kmob.com

Peter A Gergely    pgergely@merchantgould.com

Ryan J Fletcher    rfletcher@merchantgould.com, KDrieman@merchantgould.com, smaney@merchantgould.com

Scott P Shaw    sshaw@merchantgould.com, kholst@merchantgould.com, smaney@merchantgould.com

Sherron L Wiggins    s.wiggins@conklelaw.com, Support@conklelaw.com

Stephen C Jensen    steve.jensen@knobbe.com, sjensen@kmob.com

Zach Kachmer    ZKachmer@merchantgould.com

**8:18-cv-02001-JVS-JDE Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

Andrew T Pouzeshi
Merchant and Gould PC
1801 California Street Suite 3300
Denver, CO 80202

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\TR Masimo v True Wearables_062421.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=6/29/2021] [FileNumber=32197652-0
] [0e063645cebd11e488481a319652ba782307d45ae1d4f306b6d94a431adaa749e1c
cc04df24b098d69147031d2671b3a015fe5effbca6837d2387086b14c35f1]]

Exhibit 3
-116-

# EXHIBIT 4

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com Irfan
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON
& BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON
& BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067 Telephone:
(310) 551-3450 Facsimile: (310)
601-1263

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendants/Counterclaimants. | Case No. 8:18-CV-02001-JVS-JDE <br><br> **PLAINTIFFS' EXHIBITS 3-5, 8, AND 10 TO THE DECLARATION OF MARK D. KACHNER IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER** <br><br> **Hon. James V. Selna** <br> **Hon. Magistrate John D. Early** <br><br> **[Discovery Document: Referred to Magistrate Judge John D. Early]** <br><br> **Hearing: June 24, 2021** <br> **Time: 10:00 a.m.** <br> **Court: Room: 6A** |

UNREDACTED VERSION OF DOCUMENTS FILED PURSUANT TO ORDER OF THE COURT DATED JUNE 24, 2021 (DKT. NO. 311)

Exhibit 4
-117-

# EXHIBIT 4

**[TRUE016520-522]**

Exhibit 4
-118-

Stanford Alumni Mail - The three equations                                                                                    11/24/18, 11:30 AM



## The three equations

**Marcelo Lamego** <mmlamego@stanfordalumni.org>                                      Wed, Oct 2, 2013 at 12:54 AM
To: tcook@apple.com

Dear Tim Cook,

I was approached by Apple in the beginning of this year (by David Affourtit and James Foster) and was asked if I would like to join the executive technical team. Because I did not want to sign the Apple's NDA for an onsite interview, the process came to a halt. I felt that it was not appropriate to receive confidential information from or disclose confidential information to Apple given my fiduciary responsibilities as the Chief Technical Officer of Cercacor.

I have developed several medical devices in the last 10 years and I am positively sure I could add a significant value to the Apple team, if I was given the chance of becoming part of it in a senior technical executive position and without conflicting with the large IP I have developed for Masimo and Cercacor during the same period.

What I am sure Apple soon will realize is that medical, wellness and fitness technologies are very deceptive in the sense that they are easy to develop for products that work in most (~80%) he users. Getting the same technology to work in almost the entire population is a problem extremely more complex . This is the very reason most medical device startups become insolvent. Knowing Apple's reputation, I am sure you would not settle for even 99%, imagine then, 80%.

As you probably know, regulatory barriers are another important consideration when dealing with medical technologies in general. If the FDA or any other regulatory agency worldwide (i.e., Canada, Japan, Korea, Europe, etc.) believe your product should be regulated by their standards then, the choice of intended use combined with the technology realization strategy can make the development shorten or longer by several years.

The reason I feel attracted by Apple as a company is not related to the things most people are interested in, i.e., brand recognition, great culture, great products, great people. It has to do with the fact that, as an engineer, I realized that there are three important equations to be solved in order to create a competitive global medical, wellness and fitness product portfolio:

(i) The user equation - Apple has solved it and created the industry standard. With a brand recognition similar to the ones from luxury products, everybody is interested in understanding and using Apple's intuitive interfaces.

(ii) The patient equation - This is the deceptive part.

(iii) The connectivity equation - This can only be solved with scale and brand recognition, which e synonymous for Apple. Reliable wireless technology and device interoperability will become a must in the medical device segment.

**EXHIBIT 4**
**-36-**

CONFIDENTIAL                                                                          TRUE016520
                                                                               Exhibit 4
                                                                               -119-

Stanford Alumni Mail - The three equations                                                            11/24/18, 11:30 AM

I believe Apple has solved (i) and has enough resources to solve (iii). I can help you to solve (ii).

I ⁓uld appreciate if the content of this letter could be kept confidential, since it can jeopardize ⌐ outcome of my career at Cercacor.

I strongly believe that we can develop the  new wave of technology that will make Apple the number one brand in the medical, fitness and wellness device market. If you agree, feel free to contact me anytime.

All the best,

Marcelo Malini Lamego

18 Lyra Way

Coto de Caza CA 92679

Home phone: (949) 216-9294

My resume is available at http://www.linkedin.com/pub/marcelo-lamego/54/644/725

Confidentiality notice: This e-mail may contain information confidential and/or privileged from disclosure. If the reader is not the intended recipient, copying, dissemination or continued possession of this communication is strictly prohibited.

**EXHIBIT 4**
**-37-**

CONFIDENTIAL

TRUE016521
Exhibit 4
-120-

Stanford Alumni Mail - Apple                                                                                    11/26/18, 9:09 PM



## Apple

**David Affourtit** <affourtit@apple.com>                                          Wed, Oct 2, 2013 at 10:25 AM
To: Marcelo Lamego <mmlamego@stanfordalumni.org>
Cc: Denby Frazier <denby@apple.com>

Hello Marcelo,

Thank you for your voicemail and follow up.  I saw your note to Tim Cook.  I'm glad you remain enthusiastic about
Apple.

As I've transitioned out of the Exec Recruiting team into a management role, I've asked my associate from the Exec
Recruiting team to reach out to you directly.  Her name is Denby Frazier, cc'd.

Denby, meet Marcelo, Marcelo, Denby.

All the best and thanks again!

Cheers,
Dave

**EXHIBIT 4**
**-38-**

CONFIDENTIAL                                                                TRUE016522
                                                                                        Exhibit 4
                                                                                         -121-

# EXHIBIT 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,    ) CASE NO: 8:20-CV-00048-JVS-JDEx
                              )
              Plaintiffs,     )          CIVIL
                              )
     vs.                      )       Santa Ana, California
                              )
APPLE, INC,                   )    Thursday, September 23, 2021
                              )
              Defendant.      )
_____

IN-PERSON HEARING RE: PLAINTIFFS' MOTION FOR RECONSIDERATION

BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE



**APPEARANCES**:            SEE PAGE 2


Court Reporter:        Recorded; Digital wave file


Courtroom Deputy:      Maria Barr


Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 8365
                       Corpus Christi, TX 78468
                       361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

Exhibit 5
-122-

<u>**APPEARANCES**</u>:


For Plaintiffs:          JOSEPH R. RE, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         2040 Main Street
                         14th Floor
                         Irvine, CA 92614


                         ADAM POWELL, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         12790 El Camino Real
                         San Diego, CA 92130


For Defendant:           JOSHUA H. LERNER, ESQ.
                         Gibson Dunn & Crutcher, LLP
                         555 Mission Street
                         Suite 3000
                         San Francisco, CA 94105


                         NATALIE POUS, ESQ.
                         Apple In-House Counsel

3

| | |
|---|---|
| 1 | **Santa Ana, California; Thursday, September 23, 2021** |
| 2 | **(Call to Order)** |
| 3 | **THE COURT:**  Good morning, everyone. |
| 4 | **MR. RE:**  Good morning. |
| 5 | **MR. LERNER:**  Good morning, Your Honor. |
| 6 | **THE COURT:**  One item on calendar today.  Calling Case |
| 7 | Number Central District of California 8:20-cv-48-JVS-JDE, |
| 8 | *Masimo Corporation, et al., versus Apple, Inc.* |
| 9 | Appearances for this in-person hearing, Counsel, |
| 10 | starting with counsel for plaintiff. |
| 11 | **MR. RE:**  For Masimo and Cercacor, Joseph Re from |
| 12 | Knobbe Martens Olson and Bear.  With me is my partner, Adam |
| 13 | Powell. |
| 14 | **THE COURT:**  Good morning.  Thank you. |
| 15 | And on behalf of defendant? |
| 16 | **MR. LERNER:**  Good morning, Your Honor.  Joshua |
| 17 | Lerner, Gibson Dunn, on behalf of Apple, and with me today is |
| 18 | Natalie Pous, legal counsel, litigation, from Apple. |
| 19 | **THE COURT:**  I'm sorry; what was the last name? |
| 20 | **MR. LERNER:**  P-O-U-S, Your Honor. |
| 21 | **THE COURT:**  All right.  And that's in-house counsel |
| 22 | at Apple? |
| 23 | **MR. LERNER:**  Yes. |
| 24 | **THE COURT:**  All right.  All right.  We're here for |
| 25 | a -- what's been styled as a motion for reconsideration of my |

4

1   June 10th ruling regarding Mr. Cook's being designated as an

2   ESI custodian, a motion that I denied on June 10th. I'll tell

3   you what I've reviewed. Then I'm going to give you my

4   tentative thoughts.

5          I have reviewed the motion, which, let's see, is

6   Docket Number 471, and memorandum and exhibits and

7   declarations, some of which were filed under seal. I've

8   reviewed Apple's opposition, which is at 479, along also with

9   two declarations and exhibits. I don't think any of that was

10  filed -- oh, no, some of it was filed under seal; and a reply

11  from plaintiffs filed on August 5th, also with exhibits and a

12  declaration, some of which was filed under seal.

13         I'm going to now first ask, on plaintiffs' behalf, is

14  there anything that I should have reviewed that I haven't

15  referenced, from your perspective?

16         **MR. RE:** Nothing, Your Honor.

17         **THE COURT:** And on behalf of defendant?

18         **MR. LERNER:** No, Your Honor.

19         **THE COURT:** All right. Here is my tentative. My

20  tentative is to grant the motion for reconsideration, finding

21  that plaintiff under Local Rule 7-18 did act appropriately and

22  in a timely fashion and there is good cause for the motion not

23  being filed within 14 days after the hearing because -- for the

24  reasons stated in the papers, but the -- I don't want to

25  characterize one piece of evidence more important than another,

Exhibit 5
-125-

5

1  but certainly the public filing on July 2nd by Apple of an

2  October 2nd, 2013, email from Mr. Marcelo Lamego to Mr. Tim

3  Cook, and I think there was a follow-up email back to

4  Mr. Lamego from a representative at Apple later that same

5  morning, that was publicly filed on July 2nd.  There was a

6  meet-and-confer session requested, I think the next business

7  day, which was July 6th, and a meet-and-confer took place on

8  July 9th, and then per Local Rule 7-8 the motion couldn't have

9  been filed until July 16th, and it was filed on the next

10  business day thereafter, on July 19th, which I, based on all

11  the circumstances -- and I've summarized it; I haven't included

12  everything -- find was -- that plaintiffs acted diligently and

13  had good cause to not file the motion within 14 days after the

14  prior ruling.

15       And I'll also note that, from the bench, the last --

16  at the hearing on the July 10th original motion, I had invited

17  plaintiffs' counsel that should there be new information they

18  could refile the motion.  So, although it's styled as a motion

19  for reconsideration, they could have just filed a brand-new

20  motion.  I offered that up as an option, and that, obviously,

21  would not have been subject to the Local Rule 7-18, 14-day plus

22  good cause requirement.  Now, I may be speaking too much.  Had

23  that happened, it might have been heard by Judge Guilford

24  instead of me under the special master reference, but be that

25  as it may, I find good cause for the filing of motion.

6

1          Turning to the substance, I think it was the same

2     counsel who were here on July -- on June 10th.  I expressed

3     that it was a -- and I may not have used these words, but the

4     essence of it was it was a close call.  I found that the -- the

5     factual evidentiary showing relatively weak by plaintiff in

6     connection with their request to show that there was some

7     reasonable likelihood that Mr. Cook might have relevant

8     information in his emails or other streams.  The flip side was

9     I noted that defendants offered no evidence of the burden.

10    And, so, essentially, on that close call, I relied on two

11    people.  One of them was Bob Dylan, and one of them was

12    Mr. Lerner and four or five other attorneys from Gibson Dunn

13    and Crutcher who represented -- and I'm going to paraphrase --

14    that it was unlikely that Mr. Cook would have any relevant

15    discoverable information in his ESI.

16          That statement was confirmed at the hearing, and I

17    gave Mr. Lerner an opportunity to recognize that that was an

18    important basis for my ruling and that should that at some

19    future date turn out not to be true, there could be -- and I

20    used the word "severe" -- there could be severe repercussions.

21    I'm not inclined right now to get into repercussions.  I think

22    I'd need to gather some more information.  We can do that if

23    the parties wish.  Right now I'm inclined to move forward with

24    your case, help you each move forward with your respective

25    cases, and rule on the substance of the motion, but we can get

Exhibit 5
-127-

7

1    into a more deep dive into some other issues that may be

2    lurking out there.

3             And I'll note, in terms of the good cause, moving

4    back in time, that I have considered Apple's arguments that

5    plaintiffs' counsel, at least the firm, had possession of the

6    October 2nd, 2013, email as long ago as last year, and there is

7    a declaration from a paralegal from another firm regarding

8    production in another case.  I'm happy to get into a deep dive

9    on that.

10            I actually -- I don't think you were here,

11   Mr. Lerner, on that other case -- had some thoughts about what

12   was happening, and I used a term from my days visiting New York

13   City when I was a kid in the 1970s where you'd pop out of Penn

14   Station or Grand Central Station and there would be guys with

15   little tables set up playing Three Card Monte.  And I want to

16   explain what that is.  It's a game where you're trying to pick

17   the queen out of three cards.  And the queen is there, and the

18   person dealing the cards isn't cheating; and by dealing, he

19   just throws three cards around, but is being somewhat opaque.

20   And sometimes it involves having a third party who appears to

21   be an independent third party who's actually working with the

22   dealer out on this little table outside the station looking for

23   tourists coming into town to have the third party, who looks to

24   be independent, win a couple times, and then when the tourist

25   puts their money down, suddenly the card is much harder to

Exhibit 5
-128-

1   find.  The card exists; it's just being obscured.

2           I'm happy to hear from Apple about anything that they

3   want to talk about.  But one of the things we might get into

4   and have to get into if we're going to do a deep dive is the

5   relationship between Apple and True Wearables, the defendant in

6   the other case; how it came to pass that the October 2nd email

7   was designated as confidential in that case; maybe we need to

8   get into communications between the parties.  I don't know, and

9   I certainly am not going to issue any orders on the fly on

10  that, but maybe we need to, to find out how it came to pass.

11  And there is an argument from Apple that plaintiff --

12  plaintiffs could have just moved to de-designate that October

13  2nd, 2013, email in the True Wearables case.  I'm not sure what

14  the basis for that argument is.  There is no basis in the

15  protective order in that case to simply say:  I want to use

16  something that was designated as confidential in another case.

17  You can move to de-designate by saying something isn't

18  confidential.  And here at least it was represented at the last

19  hearing that -- I think it was by Mr. Re -- that during the

20  course of the True Wearables case Mr. Lamego said that that

21  email, he designated that as confidential at the request of --

22  and I'm not sure if it was expressed or in his mind

23  interpreted -- at the request of Apple.  And you each have

24  heard me talk about my views of protective orders and that

25  they're not to be willy-nilly disregarded, and that protective

Exhibit 5
-129-

9

1   order limited the use of that email once it was designated as

2   confidential to the prosecution or defense of that case only.

3   So, plaintiffs could not have simply thrown it in front of me.

4          Now, the timing here, perhaps it was a genius move by

5   plaintiffs to serve a third-party subpoena on Apple, have Apple

6   file a motion to quash, and then have that document be brought

7   to my attention in connection with that motion to quash, but be

8   that as it may, that was -- they didn't have an ability to

9   bring it to my attention in this court in this hearing on June

10  10th.  And I'm a little troubled by the suggestion that it was

11  that simple or that plaintiffs here were at fault.  And, so, if

12  we want to go down that road, we will, but we're probably at

13  that point going to have to have some evidentiary issues if we

14  really want to push it.  But I'm comfortable right now with

15  what I see to say they did not have authorization from me or

16  Mr. Lamego.  And I saw the emails from Mr. Lamego's counsel

17  essentially telling plaintiff they couldn't even disclose this

18  to in-house counsel at Apple; it could only be an attorneys'-

19  eyes-only presentation of the email from plaintiff to Apple's

20  counsel before plaintiffs' counsel would be authorized to file

21  it in connection with the motion to quash in the True Wearables

22  case.

23          So, I'm riffing a little bit.  I've given you the

24  short version of my tentative.  I guess I'll start with you,

25  Mr. Re, or Mr. Powell.  It's plaintiffs' motion.  At the risk

Exhibit 5
-130-

10

1   of potentially snatching defeat from the jaws of victory,

2   you're welcome to offer any additional argument, since you have

3   the burden here, but -- or give me any new information, since I

4   think the last filing was your reply over a month ago, if

5   there's any new information that you want to impart to me.

6           Mr. Re, the floor is yours.

7           **MR. RE:**  Thank you, Your Honor.  I only have one

8   statement to make, and that is, we, in an abundance of caution,

9   had the same interpretation of the protective order that you

10  just gave.  And that is, even if I were to show it to

11  Mr. Lerner, for example, for a meet-and-confer to get a court

12  order to approve it after the fact, that might even be deemed a

13  use.  So, we have an ambiguity on the word "use," and we took

14  the broadest interpretation, just like you just did in your

15  explanation.

16          **THE COURT:**  Anything further?

17          **MR. RE:**  Nothing further.

18          **THE COURT:**  All right.  Subject to your ability to

19  respond, any arguments from Mr. Lerner?  Mr. Lerner, you've

20  heard my tentative and my thoughts.  Let me hear what you want

21  to argue.

22          **MR. LERNER:**  Thank you, Your Honor.  I will not spend

23  time on your point about the procedure here.  I want to get to

24  the substance, which is that there's new information that

25  changes the basis for the Court's prior ruling.

Exhibit 5
-131-

11

1          **THE COURT:**  Could I ask you a favor?  Just pull the

2  microphone a little closer to you so I make sure that if there

3  is a transcript that the transcriber can hear the recording.

4          **MR. LERNER:**  Yeah.  Is that better, Your Honor?

5          **THE COURT:**  Yes.

6          **MR. LERNER:**  Okay.  So, the argument that you heard

7  and, obviously, what Your Honor has focused on is the email

8  from Mr. Lamego to Mr. Cook.

9          **THE COURT:**  And there's multiple facts, but that's

10  the one that I focused on in giving my tentative.  It's not the

11  only reason.

12          **MR. LERNER:**  Understood.  And I'll quickly address

13  the others, as well.  But that unsolicited email to Mr. Cook

14  notes that Apple -- to other people, not Mr. Cook, and not --

15  is suggested in the email that Mr. Cook's suggestion or

16  anything else had already approached Mr. Lamego.

17          **THE COURT:**  Okay.

18          **MR. LERNER:**  And --

19          **THE COURT:**  Let me slow everything down.  Okay.  The

20  question is whether Mr. Cook has relevant information, and

21  they're not going to prove their case by this email.  I want

22  you to -- tell you I don't view this as the smoking gun that

23  declares victory for plaintiffs in this case.  But the question

24  is, does -- have they shown enough to show that Mr. Cook has

25  potentially relevant information in his electronic streams,

12

```
 1   email, or whatnot.  And I mentioned I relied heavily on what
 2   you told me, in writing and affirmed at the hearing, that there
 3   is -- it's unlikely that there is relevant, discoverable
 4   information in his email streams.
 5            I have a question for you:  Is the email, from your
 6   perspective, from Mr. Lamego to Mr. Cook on August -- I'm
 7   sorry -- on October 2nd, 2013, relevant?
 8            MR. LERNER:  We have been consistent on the point
 9   that not only is the answer to that no, it should not be and
10   cannot be to bring Mr. Cook into a dispute --
11            THE COURT:  Okay.  You say the answer is no.  We're
12   going to do a little bit more of a deep dive now.  So, let's --
13   so that we're -- all know what we're talking about, let's pull
14   up -- well, first of all, let's talk about some of the claims
15   in the case.  Theft of trade secrets is a claim in the case,
16   right?
17            MR. LERNER:  Yes, sir.
18            THE COURT:  My days as a prosecutor, whenever you
19   file a -- whenever you investigate a charge, file a charge, get
20   ready for trial, you pull up the elements, right?  What are
21   some of the elements of a claim for theft of trade secret?
22            MR. LERNER:  You need a trade secret, and you need
23   misappropriation.
24            THE COURT:  Okay.  And in order for there to be
25   misappropriation, if a third party doesn't have any idea that
```

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 5
-133-

13

1   something is a trade secret, and some third party who just

2   walks in and without any knowledge or notice that it's

3   potentially a confidential trade secret, the company uses it,

4   would that company have a defense in that situation of lack of

5   knowledge and intent?

6           **MR. LERNER:**  Yes, Your Honor.

7           **THE COURT:**  Okay.  So, knowledge and intent of the

8   receiving party matters.  Is that true?

9           **MR. LERNER:**  Yes, it is, Your Honor.

10          **THE COURT:**  And tell me, in the grand scheme of

11  things, does knowledge and intent by the third person, who

12  allegedly walks out with a trade secret, does that matter?  Is

13  that something that -- under the broad definition of relevance

14  of Rule 401 under the evidence code, is that something that

15  matters?

16          **MR. LERNER:**  Could be, in that --

17          **THE COURT:**  Okay.  Could be.

18          **MR. LERNER:**  -- hypothetical; I don't know.

19          **THE COURT:**  All right.  We're at a stage where we

20  don't know; there's going to be -- you've got more than a year

21  until trial.

22          All right.  So, let's talk about -- those are some of

23  the issues, what Mr. Lamego, who's the person we're talking

24  about here, knew; what Apple knew when Mr. Lamego came on

25  board; and I think from your papers you concede that you hired

Exhibit 5
-134-

14

1   him effective to start January, 2014.  There is a dispute about

2   whether he was -- he was recruited or -- was recruited as part

3   of a grander scheme, but that that's part of the case.

4          So, let's turn to that email, because that's going to

5   be what we're focusing on.  The very first paragraph -- and I'm

6   looking at -- I'm going to go -- because some of this is

7   sealed, some of it isn't.  I don't think this -- I know this

8   was unsealed, and I'm just going to tell you where in the

9   record I'm finding it.  It is in a few places in connection

10  with the motion, but this is at Document Number 321-1, page 37

11  of 94, and this is -- it has the little Stanford alumni

12  insignia on top of it.  It's an email entitled:  The Three

13  Equations.  It's from, at least facially, from Mr. Lamego to T.

14  Cook at Apple.com dated Wednesday, October 2nd, 2013, at

15  12:54 a.m.  The first paragraph:

16          "I was approached by Apple in the beginning of this

17           year and was asked if I would like to join the

18           executive team."

19          Leaving aside where it was found, do you think that

20  that's -- that statement has any bearing on Mr. Lamego's state

21  of mind in connection with the issues in this case?

22          **MR. LERNER:**  Saying that he was approached by two

23  other people, to me, Your Honor, does not reflect on his state

24  of mind.

25          **THE COURT:**  Okay.  How about Apple's state of mind?

Exhibit 5
-135-

15

 1   Does it have any bearing?  Remembering that Rule 401 means,

 2   does the evidence at issue or the fact at issue have any

 3   tendency to make a fact of consequence at issue in the case

 4   more or less likely, does an assertion by Mr. Lamego that he

 5   was approached by Apple in the beginning of 2013 and asked if

 6   he would like to join the executive team, does that have any

 7   bearing on any issue in this case?  That statement.

 8          **MR. LERNER:**  Yes, and that's --

 9          **THE COURT:**  Okay.

10          **MR. LERNER:**  -- actually where I was starting.  If I

11   can --

12          **THE COURT:**  Perfect.

13          **MR. LERNER:**  -- just get a word in --

14          **THE COURT:**  No, no.

15          **MR. LERNER:**  -- edgewise, Your Honor --

16          **THE COURT:**  No, no, no.  No, no, no, no.  I've read

17   your papers.  So, that fact is material.  Where did that fact

18   originate?  Where did Mr. Lamego send that email with that fact

19   in it?

20          **MR. LERNER:**  It originated with two other gentlemen,

21   David Affourtit and James Foster, who were the people who

22   approached him.

23          **THE COURT:**  I'm asking you.  The statement that --

24   leaving that aside, may or may not be true -- I don't know if

25   it's true or not -- but I know that from this record, on its

16

1  face, Mr. Lamego says it's true.  So, where did Mr. Lamego send

2  that?

3          **MR. LERNER:**  He sent it to Mr. Cook.

4          **THE COURT:**  And, so, it existed at least at one time

5  in Mr. Cook's email stream.

6          **MR. LERNER:**  Yes.  And --

7          **THE COURT:**  All right.  Let's turn to the next thing

8  I want to ask you about.

9          **MR. LERNER:**  May I offer a point on that, Your Honor?

10          **THE COURT:**  No.  "Because I did not" -- I'm reading

11  from the email again.

12          "Because I did not want to sign the Apple's NDA for

13          onsite review, the process came to a halt."

14          Period.  Next sentence:

15          "I felt that it was not appropriate to receive

16          confidential information from or disclose

17          confidential information to Apple given my fiduciary

18          responsibilities as technical officer of Cercacor."

19          Period.  Close quote.

20          Do you think that a statement by Mr. Lamego in an

21  email directed to Mr. Cook stating, one, earlier in the year he

22  didn't want to sign an NDA, in part because he felt it was,

23  quote, "not appropriate," close quote, to, quote, "disclose

24  confidential information to Apple," and, two, that described he

25  had and owed, quote, "fiduciary responsibilities as technical

Exhibit 5
-137-

1    officer of Cercacor."  Period, close quote.

2              Are those two facts that are contained in this email

3    in any way relevant to any issue in this case?

4              **MR. LERNER:**  They could be.  The point which we've

5    been consistent on throughout, Your Honor, is that --

6              **THE COURT:**  Thank you.  They could be.

7              **MR. LERNER:**  -- is that --

8              **THE COURT:**  Let's talk about --

9              **MR. LERNER:**  Your Honor, may I please --

10             **THE COURT:**  Let's talk about one more --

11             **MR. LERNER:**  -- answer your question?

12             **THE COURT:**  -- clause from this email.  Let's talk

13   about one more clause from this email.  Next page.  We're now

14   at page 38 of Docket Number 321-1, second to last substantive

15   paragraph.  Quote:

16             "I would appreciate if the content of this letter

17             could be kept confidential since it can jeopardize

18             the outcome of my career at Cercacor."

19             Period.  Close quote.

20             Do you think that that expression of concern about

21   his career at Cercacor, based on this letter that he sent to

22   Mr. Cook, that that has any bearing on any fact of consequence

23   in this case?

24             **MR. LERNER:**  In this case?  It sounds like it was a

25   big deal in the other case where he was very concerned.

Exhibit 5
-138-

18

1              THE COURT:  I'm asking about this case.

2              MR. LERNER:  I --

3              THE COURT:  Do you think that Apple being placed on

4    notice that the person who, in your words, unsolicitedly sent

5    an email to Tim Cook, asked Mr. Cook to keep this email

6    confidential, a potential -- I don't know if you were

7    competing, if the companies were competitors at that point --

8    but asked to have this communication confidential, do you think

9    that that has any bearing on -- for instance, we talked about

10   knowledge of the receiving party in a trade secret case knowing

11   that the potential information is a trade secret or is

12   confidential -- does this have any bearing on any issue of

13   consequence in this case?

14             MR. LERNER:  It could, and we're addressing --

15             THE COURT:  Okay.  It could.

16             MR. LERNER:  -- two separate --

17             THE COURT:  It could.  Thank you.

18             MR. LERNER:  -- issues.  We're addressing --

19             THE COURT:  So, now let's turn to -- let's get --

20   let's really get into the weeds now.  I really want to get into

21   this.

22             MR. LERNER:  Your Honor --

23             THE COURT:  Let's talk about -- no, no.  I've read

24   your papers.

25             MR. LERNER:  I'm not commenting on my papers.  I just

Exhibit 5
-139-

1    would like to be heard.

2              **THE COURT:**  We're going to turn now to the -- what I

3    think is the operative pleading, which is the fourth

4    amendment -- fourth amended complaint.  Paragraph 21 of the

5    fourth amended complaint reads, in part:

6              "Apple systematically recruited other key Masimo

7              personnel, such as Marcello Lamego, who was the

8              former chief technical officer at Cercacor and a

9              former research scientist at Masimo."

10             The remainder of paragraph 21 describes dates that

11   Mr. Lamego worked at Masimo or Cercacor.

12             Here is -- and that's -- that's the fourth amended

13   complaint.  Here is defendant's, Apple's, amended answer to the

14   fourth amended complaint with respect to paragraph 21:

15             "To the extent it implicates a legal conclusion, no

16             response is required.  To the extent that a response

17             is required, Apple admits that it hired Marcelo

18             Lamego in 2014.  Apple denies that it systematically

19             recruited other key Masimo personnel, such as Marcelo

20             Lamego.  Apple lacks information sufficient to form a

21             belief about the truth of the remaining allegations

22             and characterizations in paragraph 21 of the fourth

23             amended complaint, and, therefore, Apple denies

24             them."

25             End of quotation.

20

1          So, Apple, in responding to paragraph 21, did not

2   admit and, in fact, denied, based on lack of information, that

3   Marcelo Lamego was the former chief technical officer of

4   Cercacor.  So, apparently, that Apple's taking is challenging

5   that based on lack of information or belief.

6          Does the -- Mr. Lerner, does the first line of -- or

7   not the first line, but the -- Mr. Lamego's letter, does that

8   have any bearing on whether he was the former chief technical

9   officer of Cercacor?

10         **MR. LERNER:**  It doesn't say he was former.  It says

11   as the chief, at this time.

12         **THE COURT:**  Okay.

13         **MR. LERNER:**  He held multiple positions.

14         **THE COURT:**  We're talking about relevance.  You're

15   not proving your case.  Does it have any bearing on the issue

16   of whether he was, at one time, the chief technical officer at

17   Cercacor?

18         **MR. LERNER:**  He says:  "My responsibilities as the

19   chief technical officer of Cercacor."

20         **THE COURT:**  So, could you answer my question?  Does

21   it have any bearing on the issue of a fact that apparently

22   Apple contests, due to lack of information or belief, whether

23   Mr. Lamego was the chief technical officer at Cercacor?

24         **MR. LERNER:**  He held multiple positions, and we're

25   talking about different times, but, yes, this does say he was

1    the --

2            **THE COURT:**  All right.  Yes.  Let's go on --

3            **MR. LERNER:**  -- chief technical officer.

4            **THE COURT:**  -- to paragraph 22.  All right.

5    Paragraph 22 of the fourth amended complaint.  Just read the

6    first sentence for now:

7            "Lamego had unfettered access to plaintiffs' highly

8            confidential, technical information."

9            Here is reading now from Apple's answer to the fourth

10   amended complaint:

11           "To the extent paragraph" -- 22 -- although it says,

12   "To the extent paragraph 23," I believe that's a typo, because

13   it's numbered 22.

14           "To the extent" -- the paragraph -- "implicates legal

15           conclusions, no response is required.  To the extent

16           that a response is required, Apple lacks knowledge or

17           information sufficient to form a belief about the

18           truth of the allegations and characterizations of

19           paragraph 22 of the fourth amended complaint, and

20           therefore Apple denies them."

21           So, that puts -- that statement whether or not

22   Mr. Lamego had unfettered access to plaintiffs' highly

23   confidential technical information, do you think, since that's

24   now at issue and plaintiff has to prove it since it's been

25   denied by Apple, that that letter has any bearing on that

22

1   issue?

2          **MR. LERNER:**  Whether or not he had unfettered access?

3          **THE COURT:**  Yeah.

4          **MR. LERNER:**  He says:  "I developed several medical

5   devices in the last 10 years."

6          **THE COURT:**  He also said that he didn't want to sign

7   an NDA because of -- that would require him -- by which he

8   would have shared confidential information, he wasn't

9   comfortable, given his fiduciary duties.  So --

10         **MR. LERNER:**  No, no, that's --

11         **THE COURT:**  -- does that letter have any bearing on

12  this?

13         **MR. LERNER:**  This is important.  That is not what

14  that says.

15         **THE COURT:**  All right.  Fine.  Your --

16         **MR. LERNER:**  It does not say he would have --

17         **THE COURT:**  Is it your contention -- yes or no, is it

18  your contention that that letter has any bearing on plaintiffs'

19  now requirement to prove its contentions in paragraph 22 of its

20  answer, this contention that Apple denies?

21         **MR. LERNER:**  Mr. Lamego sent this --

22         **THE COURT:**  Yes or no?  Just give me a yes or no.

23  Does it have any bearing?

24         **MR. LERNER:**  As to Apple, he sent this email.  The

25  whole point of our argument and what I've been trying to

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 5
-143-

23

1    explain is that it cannot be the test that sending an email to

2    Mr. Cook, where he effectively says, by forwarding it without

3    comment, this is not on my plate; I'm not --

4            **THE COURT:**  He doesn't say that.  He doesn't say that

5    at all.  We're moving on now.

6            **MR. LERNER:**  He --

7            **THE COURT:**  Since you didn't answer my question,

8    we're going to keep going.  Paragraph 228 of the fourth amended

9    complaint.

10           **MR. LERNER:**  I apologize.

11           **THE COURT:**  I'm going to --

12           **MR. LERNER:**  How did I not answer your question?

13           **THE COURT:**  I'm going to -- I asked you for a yes or

14   no question of whether it had any bearing on the issue of the

15   case, and you didn't answer that.

16           **MR. LERNER:**  That's --

17           **THE COURT:**  So, we're moving forward to paragraph 228

18   of the fourth amended complaint.  I'm reading a portion of it.

19           "At the time of the disclosure, O'Reilly and Lamego

20           knew, or had reason to know, that their knowledge of

21           plaintiffs' confidential information was acquired by

22           an employer-employee relationship, fiduciary

23           relationship, and employment agreements, which

24           created a duty for them to keep plaintiffs'

25           confidential information secret."

Exhibit 5
-144-

1        That's the allegation of paragraph 228.  In response,

2   in its answer to paragraph 228, leaving aside the legal

3   conclusion statement previously read, this is the entirety of

4   the answer:

5             "To the extent that a response is required, Apple

6             denies the allegations and characterizations in

7             paragraph 228 of the fourth amended complaint and

8             specifically denies that it has committed any active

9             trade secret misappropriation."

10        So, Apple is affirmatively denying all the

11   allegations contained in paragraph 28, including the allegation

12   that Mr. Lamego knew, or had reason to know, that their

13   knowledge of confidential information was required by, among

14   other -- was acquired by, among other things, a fiduciary

15   relationship.

16        Does the October 2nd, 2013, from Mr. Lamego have any

17   bearing on what plaintiff now has to prove -- because Apple has

18   denied it -- that Mr. Lamego knew that he had knowledge of

19   plaintiffs' confidential information acquired as a result of a

20   fiduciary obligation?

21        **MR. LERNER:**  It well could, and I will not contest

22   any of the further points, Your Honor.  I don't think I can get

23   out my point, but I take Your Honor's questions, understand

24   your point.  I don't need to keep arguing it.

25        **THE COURT:**  Well, we're going to go a little more;

Exhibit 5
-145-

25

1    because I want to make sure that -- you know, you had some

2    pushback there.  Let's go to paragraph 229, the next paragraph

3    of the fourth amended complaint:

4              "Plaintiffs allege at the time of the acquisition

5              defendant also knew, or had reason to know, that its

6              employees obtained plaintiffs' confidential

7              information pursuant to a duty to keep plaintiffs'

8              confidential information secret."

9         And, then, skipping down:

10             "Defendants also knew Lamego was the chief technical

11             officer of Cercacor and a research scientist at

12             Masimo.  Defendant knew Lamego and O'Reilly were each

13             under a duty to maintain the secrecy of the

14             information they obtained from plaintiffs.  Defendant

15             knew plaintiffs considered the information

16             confidential by virtue of its prior relationship of

17             plaintiffs."

18        And we talked earlier about in a trade secret case

19   the state of mind of the defendant matters, right?

20             **MR. LERNER:**  Yes, Your Honor.

21             **THE COURT:**  And this allegation is that the

22   defendant, Apple, a corporation, knew that, among other things,

23   Lamego was the chief technical officer of Cercacor and was

24   under a duty to maintain the secrecy of information --

25   confidential information contained, and that defendant knew

Exhibit 5
-146-

26

1    that plaintiffs considered information confidential by virtue

2    of that relationship.  Apple in its answer to paragraph 229

3    admits that it received a letter from plaintiffs on or around

4    January 24th, 2014, containing the language quoted in paragraph

5    229, but denied the remaining allegations and characterizations

6    of paragraph 229.

7            Do you think that Mr. Lamego's October 2nd, 2013,

8    letter bears in any way on Apple's denial -- other than

9    referencing the January 24th, 2014, letter -- has any bearing

10   on the issue of Apple's state of mind with respect to the trade

11   secret case?

12           **MR. LERNER:**  Not as we understood the accusations

13   there, Your Honor.  They were based on, as we understood them,

14   on that letter.

15           **THE COURT:**  So, you say it has no bearing whatsoever.

16   That letter has no bearing whatsoever about whether defendant

17   knew Lamego was the chief technical officer and that he was

18   under a duty to maintain secrecy of confidential information.

19   You're saying that that letter is irrelevant to plaintiffs'

20   obligation to prove those allegations.

21           **MR. LERNER:**  No, Your Honor.  The point we've been

22   trying to make -- and I accept your point, and I don't want to

23   keep arguing it, because I understand you don't --

24           **THE COURT:**  Yeah, and I can go on for --

25           **MR. LERNER:**  -- accept my argument.  So, I --

Exhibit 5
-147-

27

1          THE COURT:  -- for quite a long time.  But we'll stop

2    now on the fourth amended complaint.

3          And, now, before you get to what you want to tell

4    me --

5          MR. LERNER:  No, I --

6          THE COURT:  -- I want to ask you:  What did you know

7    at the time you wrote and affirmed in court when you said that

8    Mr. Cook's email is unlikely to contain relevant, discoverable

9    information?  Were you aware of the October 2nd, 2013, from

10   Mr. Lamego that you have now repeatedly confirmed contains

11   relevant information?  Were you aware of it at the time you

12   wrote your brief in connection with the June 10th, 2021, motion

13   or opposi- -- motion, and were you aware of it at the time you

14   sat here in court on June 10th and said you understood that I

15   was relying on that representation?  Were you aware of that

16   email at that time?

17         MR. LERNER:  Yes, Your Honor.  We had talked about it

18   with the Court a week earlier.

19         THE COURT:  You hadn't talked about it to me.

20         MR. LERNER:  I'm sorry.

21         THE COURT:  When did you talk about it to me a week

22   earlier?

23         MR. LERNER:  We --

24         THE COURT:  Tell me what day you spoke to me about

25   that email.

28

1        **MR. LERNER:**  I apologize if I got that incorrect in

2   terms of my characterization.  On June 3rd, at set forth in the

3   papers here, we had communicated with the plaintiffs about this

4   email.  They gave us a brief that was redacted and didn't have

5   the information, and we said, "What's redacted?"  And they went

6   to True Wearables and got approval to show it to us, and it was

7   this email.

8        **THE COURT:**  Are you saying that's the first you've

9   ever seen that email?

10        **MR. LERNER:**  No, Your Honor.

11        **THE COURT:**  Okay.

12        **MR. LERNER:**  So, at that point --

13        **THE COURT:**  So, when did you -- when did you -- you

14   said you told me about it a week before June 10th.  When did

15   you tell me about it?

16        **MR. LERNER:**  We -- I apologize.  We filed the brief

17   that day, June 3rd, with Your Honor.  As described there, we

18   didn't tell you about it; we filed the paper.  So, obviously,

19   we were aware of it.

20        **THE COURT:**  But you didn't tell me about it, and I --

21        **MR. LERNER:**  No, that's correct.

22        **THE COURT:**  Do you want to take a look at what I get

23   every morning?  It's a list of every document filed in every

24   case that I'm on.  Do you think, as I'm getting ready for

25   hearings, I open up and analyze every filing, in every other

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 5
-149-

29

 1   case, on the off chance that there's something in there that

 2   might have relevance?  Do you think that I do that?

 3           **MR. LERNER:**  No, Your Honor.

 4           **THE COURT:**  Of course not.  What do I do?  I rely on

 5   the candor of counsel at times, like I did on June 10th, when

 6   you told me Mr. Cook is unlikely to have any relevant,

 7   discoverable material in his email, and you just confirmed to

 8   me -- we could talk about the issue of ESI custodian in a

 9   moment -- but you just confirmed to me that this email is

10   relevant on so many issues that you -- you don't even want to

11   talk about it anymore.  Did you lie to me?

12           **MR. LERNER:**  Certainly it was not my intent, Your

13   Honor, and I apologize that you feel that way.

14           The -- very quickly, the point that I have been

15   trying to make to explain why I don't want you to feel that way

16   is that we have been very consistent in pointing out that

17   sending an email to Mr. Cook --

18           **THE COURT:**  I'm not -- we'll get to that.

19           **MR. LERNER:**  Okay.

20           **THE COURT:**  The question isn't -- look, there's all

21   sorts of things that you can argue.  You could have argued on

22   June 10th to say:  You know what, Your Honor?  I wrote in the

23   brief that there is -- his email is unlikely to have relevant,

24   discoverable information; you know, there is this email,

25   unsolicited from Mr. Lamego, that, you know, came in, I guess

Exhibit 5
-150-

1    that's relevant, but here's the reasons why that doesn't make

2    him and Mr. Cook a proper ESI custodian.  You didn't say that.

3    And to the extent you think that I'm scouring files --

4           **MR. LERNER:**  No.

5           **THE COURT:**  -- for -- for --

6           **MR. LERNER:**  I do not.

7           **THE COURT:**  -- when you tell me --

8           **MR. LERNER:**  I do not.

9           **THE COURT:**  -- there is unlikely to have relevant,

10   discoverable information, and this email is in there, separate

11   and apart from whether he's an appropriate discussion, and you

12   knew about it, and you told me:  No, nothing relevant or

13   discoverable; unlikely to have anything relevant and

14   discoverable in his email.  You sat there when I said --

15   because I'm relying on you and your four or five colleagues

16   that signed that brief -- that this is a close call.  But I'm

17   relying on that statement to deny the motion, and you didn't

18   say:  By the way, there is this other thing out there.  And

19   they couldn't tell me.  Because they heard me, and they heard

20   me when I talked about protective orders and what they mean.

21   They knew about it from a protective order.  They couldn't tell

22   me in the context of this case.  And you sat there and let it

23   all go by like it didn't exist.

24           So, before we get to the appropriateness of the

25   custodian, I want to get -- since we've now gone down this

31

1    road, I want to get to the bottom of this.  Do you still

2    contend -- and I noticed from your papers you no longer say his

3    email is unlikely to contain discoverable, relevant

4    information.  It now says it's unlikely to contain discoverable

5    non-duplicative information.  So, that tells me that you

6    recognized that you were not completely candid with me on June

7    10th.  And we can get to your other arguments, but how am I

8    supposed to trust anything you say now?

9            **MR. LERNER:**  I apologize, Your Honor.  As I said

10   earlier, the way that we understood the argument here and the

11   issues is, did he have information that made him a proper

12   custodian.

13           **THE COURT:**  Okay.  That's not what you wrote, and I

14   was at the hearing --

15           **MR. LERNER:**  I --

16           **THE COURT:**  -- and you were at the hearing, and I

17   made it very clear that there was a careful balancing going on

18   here, and that the plaintiffs' showing was not particularly

19   strong about specific contacts.  There was references to public

20   statements about Mr. Cook saying he wanted the future of Apple

21   to be and the health -- the health monitoring field, and the

22   statements around the timing and conversations and meetings

23   with Mr. O'Reilly, but that that didn't really show a lot of

24   relevance to our dispute here and in connection to it.

25           And on your side, you didn't show me any burden, and

Exhibit 5
-152-

32

1    so it was a close call, but I'm going to take you at your word

2    when you tell me as an officer of the Court it's not likely to

3    have any relevant discoverable information.  And to hear that

4    you knew about this October 2nd, 2013, letter at the time you

5    made that representation, and assured me that you understood

6    that that's what I was relying on, and to hear as we sat here

7    today the various myriad ways in ways that letter is relevant

8    to the issues in this case, I'm not sure what to do with that.

9            But let's move on.  You want to tell me something.

10   Do you now concede that that representation was, let's just say

11   not entirely accurate, and that there is reason to believe --

12   in fact, there is -- you've now conceded that there was at

13   least at one time relevant information in Mr. Cook's email?

14           **MR. LERNER:**  I understand your point, Your Honor, and

15   I apologize --

16           **THE COURT:**  I'm not making a point.  I'm asking a

17   question.  Can we move past that?

18           **MR. LERNER:**  Yes.

19           **THE COURT:**  Is it now the state of play that we can

20   start from this spot, where we couldn't start from last time.

21   I now have evidence in front of me that at least at one time

22   Mr. Cook had relevant information in his email strings.

23           **MR. LERNER:**  Yes.

24           **THE COURT:**  All right.  Make whatever further

25   argument you want to make.

Exhibit 5
-153-

33

1          MR. LERNER:  Two very quick points.

2          THE COURT:  I don't want you to be rushed.  Take as

3    much time as you want.

4          MR. LERNER:  I understand Your Honor's point so far.

5    When we briefed this throughout, and Your Honor just raised,

6    for example, the meeting with Mr. O'Reilly, that was a meeting.

7    We didn't say they didn't meet.  To the contrary.  We went and

8    got a declaration from Mr. O'Reilly about the meeting with

9    Mr. Cook.

10         THE COURT:  And as you heard, I'm not talking about

11   that.  I found that insufficient before.

12         MR. LERNER:  And what we had when we looked at this

13   email isn't even a meeting.  We have an email that comes in.

14   He forwards it, and as far as we can tell, has nothing else to

15   do with it.  And then, in order to make sure, and give the

16   Plaintiffs every opportunity we can to test this theory that

17   Mr. Cook knew anything about this, we said, on each of these

18   documents actually, we'll make the people involved custodians.

19   So, this was forwarded to Jeff Williams.

20         THE COURT:  What day did you offer Jeff Williams as

21   an ESI custodian?

22         MR. LERNER:  I think as they pointed out, it was

23   right before one of our briefs.

24         THE COURT:  Maybe the day before your opposition?

25         MR. LERNER:  I think that's what -- that's what was

Exhibit 5
-154-

34

1    said in the papers, and if that's so, that's accurate.

2         **THE COURT:**  And why should they take your word that

3    that's going to, in your words, "put the matter to bed"?

4         **MR. LERNER:**  That was one of many people who -- to

5    whom we said, let's make them a custodian so you can test this

6    theory.  That is who Tim Cook in the first instance forwarded

7    this to.

8              And by the way, when we -- when we went and looked,

9    and provided information about his emails, there was not, as

10   far as we can tell, not follow-ups until November.  And not to

11   involve Mr. Cook as we saw.

12             Now, on the second point where they say --

13        **THE COURT:**  When you say you investigated the email

14   chain, did you ask Mr. Cook?

15        **MR. LERNER:**  We have not asked Mr. Cook.

16        **THE COURT:**  Okay.

17        **MR. LERNER:**  And again, that goes, I think, to the

18   point I was trying to make.  And I understand Your Honor's

19   response to it which is, if in every instance where somebody

20   sends Mr. Cook an unsolicited email, and he forwards it to

21   other people to deal with, we have to go talk to him or review

22   his emails, that's not a workable standard.

23        **THE COURT:**  Well, when you make a representation that

24   an email account is not likely to have relevant information at

25   a time you know and knew that it did, I'd suggest, if you're

35

1   going to come back and say, "Oh, well, never mind, this was

2   never followed up on".

3           In that situation, when your credibility is now at

4   issue, maybe you should ask, or ask someone, and say, and this

5   is what you stated in your declaration at Paragraph 7 in

6   connection with the opposition, "I attest that a reasonably

7   diligent search did not yield any indication that Tim Cook ever

8   responded to or substantively commented on this email chain".

9   That doesn't mean that there isn't other information in his

10  email or that there isn't other potential information in the

11  question as -- well.

12          That's a very narrow statement.  "Oh, well, we

13  couldn't find that Mr. Cook further commented on this email

14  chain".

15          What about other email chains?  Did you ask him?

16  Apparently not.

17          **MR. LERNER:**  We --

18          **THE COURT:**  And we're starting from a kernel that

19  didn't exist at the last hearing that now exists, and you have

20  said a couple of times "unsolicited email".  Well, fine.

21  Unsolicited as to Mr. Cook, but at least according to the

22  email, Mr. Lamego had been contacted by two people from Apple.

23          So, it's not, as you put in your opposition, a

24  statement from customers that email Tim Cook, and he didn't

25  respond to.  It's unsolicited in the sense that Mr. Cook didn't

Exhibit 5
-156-

36

1    ask for it, but people from Apple contacted Mr. Lamego, and he

2    dealt directly with Mr. Cook.  Why did he deal directly with

3    Mr. Cook?  Well, maybe there's a -- we're now getting into

4    Mr. Lamego's head, but maybe there's a bit of an inkling in

5    that last second to last paragraph.  "Please keep this

6    confidential".  He's going to the top.

7              And you indicated, and your papers indicated, that

8    Mr. Cook, "Oh, he just forwarded it on for other people,

9    without any comment".

10             I'm going to tell you, just like I said, and I quoted

11   Bob Dylan last time, that I don't need a weather man to know

12   which way the wind blows.

13             I'm going to go out on a limb, and we do have an

14   Apple representative in court.  I'm going to go out on a limb

15   that if Mr. Cook got an email at 12:53 a.m. and forwarded it to

16   the head of HR and the head of the, what is it, the Health

17   Sciences Division, at what was it, like 7:00 a.m.  I mean, we

18   don't even have a minute of 9:00 to 5:00 business time before

19   that was sent out.

20             Now, obviously, Apple doesn't necessarily work on a

21   9:00 to 5:00 business, but you're talking about that's an

22   immediate turn around, and it's not just going to an assistant

23   or going to someone.  It's going to the head of HR and the head

24   of the relevant department.  So, he did put thought into it.

25   He didn't just slough it off.  He picked two critical people

37

1    that bear directly on what Plaintiffs are alleging, and he did

2    it almost instantaneously considering the time it came in.

3           And one of those people almost instantaneously

4    reached back out to Mr. Lamego within a couple of hours.  I am

5    very curious about whether there was any other communication

6    with Mr. Cook about this issue.  I'm sure the Plaintiffs are

7    interested were there emails to other people.

8           So, to say, "Well, we didn't find him commenting on

9    this email thread", doesn't answer the question and doesn't

10   really get to it other than it -- the fact that it's there

11   makes one of the legs that underpinned my prior ruling go away.

12   And it's more than just a customer sending an email that he has

13   his assistant look at.

14          And I'll say something else.  Again, this comes from

15   my time as a prosecutor.  The metadata on this is going to be

16   important because your client may say, "You know what, Tim Cook

17   doesn't even monitor his email account, the general email

18   account.  He's got an assistant that does that.  An assistant

19   made this decision".  Maybe so.  I don't know.  But I'd be

20   interested to know what came in before, what came in after.

21   And I'm not saying that's discoverable, but what I'm saying is

22   potentially where this goes, if there's an argument that

23   Mr. Cook didn't forward it, someone else did, well, they may

24   have the ability and be approved to make an ability to test

25   that.

Exhibit 5
-158-

38

1          But this is an important email.  What happened to it

2    is important, and it suggests to me, reasonable cause to

3    believe that there -- that first of all, Mr. Cook is

4    knowledgeable about the facts, because he didn't just send it

5    to his assistant and say, "I don't know what this is, deal with

6    it".  And sometimes saying nothing is saying a lot.  What is

7    it, Cool Hand Luke?  Sometimes nothing is a pretty cool hand?

8          Sometimes when the CEO of the world's largest company

9    forwards, without comment, an email about an unsolicited email

10   from the chief technology officer from a competitor or

11   potential competitor to the head of HR and the head of the

12   Health Sciences Division, that speaks loudly, even if there

13   isn't anything written in text in the email.

14         So, please continue.

15         **MR. LERNER:**  I do not need to continue to test your

16   patience, Your Honor.  As I can tell, so only --

17         **THE COURT:**  I have -- listen, you're not testing my

18   patience.

19         **MR. LERNER:**  -- the only two points I would clarify

20   is that I tend to read my email sometimes around 8:00 or 9:00

21   in the morning.  That's what Mr. Cook did based on the

22   documents we saw here.  I just want to clarify that point.

23         **THE COURT:**  Can I get the exact time?  When was the

24   exact time --

25         **MR. LERNER:**  8:50 a.m.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 5
-159-

1          **THE COURT:**  -- because again, it might be important

2   for the metadata to see when it was opened; how quickly it was

3   sent out.

4          What was the exact time he forwarded it to

5   Mr. Williams and --

6          **MR. LERNER:**  8:50 and 57 seconds Pacific time.

7          **THE COURT:**  All right.  And it was sent at 1:50 a.m.

8          **MR. LERNER:**  Right.  So --

9          **THE COURT:**  So, we're -- we didn't even get to

10  business hours.  You're right.  Maybe he does it first thing in

11  the morning, but again it shows you something.

12          **MR. LERNER:**  I just --

13          **THE COURT:**  You check your email in the morning.  I

14  check my Court docket in the morning.  Important things, I send

15  something to Maria right away.  Oh, we've got to deal with

16  this.  We've got an ex parte from -- well, leave it at that.

17  We've got to deal with this right away.

18          Less important things, they kind of filter out

19  through the day.  Maria is nodding her head.  We deal with them

20  when we deal with them, but important things, boy, we send them

21  out right away, and we make sure we get it to the right person

22  right away.

23          So, when Judge Carter or Judge Selna sends me an

24  email, even without comment, I'm getting back to him, or Judge

25  Staton right away because, boy, that's important.

Exhibit 5
-160-

40

1          So, go ahead.

2          **MR. LERNER:**  I, like I said, I do not have more to

3   take your time with this other than that the two people you

4   mentioned, Mr. Cook tends to interact with other senior people.

5   So, he forwarded it to senior people, and as you can tell from

6   the follow-up, some of those people, it sounds like already

7   knew about the discussions and there were discussions in place.

8   So, there was -- there was follow-up.

9          These are all factual issues.  I understand Your

10  Honor's point that you would like to know more about them.  We

11  understand your tentative.

12         I think I've made my point about the standard for

13  making him a custodian.  I understand that's not carrying

14  water, and I understand your other points.

15         **THE COURT:**  Well, do you have anything you want to

16  add from a legal standpoint?  Have I said anything wrong from a

17  legal standpoint about what the right standard is?

18         **MR. LERNER:**  For making him a custodian?

19         **THE COURT:**  Yeah, what's -- what do you contend the

20  standard is?

21         **MR. LERNER:**  I contend the standard should not and

22  cannot, and I don't have a case specific to these facts because

23  we have not seen one, but it should not be enough to make the

24  CEO of a company a custodian because he receives and forwards

25  an email.

 1          **THE COURT:**  All right.  You cited two cases in your

 2   opposition that dealt with the ESI custodian issue.  All the

 3   other cases --

 4          **MR. LERNER:**  Yep.

 5          **THE COURT:**  -- deal with the issue of the timing and

 6   appropriateness of the requests for -- of the motion for

 7   reconsideration under the rules.  Is there anything you want to

 8   tell me about those cases that you think should guide my

 9   analysis here?

10          **MR. LERNER:**  No, Your Honor.  I'm sure you've already

11   reviewed them and read the papers, as you've said.  So I,

12   again, don't need to take more of your time.

13          **THE COURT:**  Well, I want -- listen.  Tell me if

14   there's anything, and I'm going to point out from my reading.

15   You're right.  I did read them, the *BlackBerry* case, and that

16   was Judge Stevenson in L.A. from 2019, and the citation is 2019

17   WL 4544425.

18          I don't know that that helps your cause because

19   although Judge Stevenson denied a motion, and it relates to

20   Mr. Mark Zuckerberg from Facebook, denied a motion to require

21   that he search -- or that Facebook search his email strings as

22   to four categories or four search issues.

23          She had earlier had required Facebook to conduct a

24   search of Mr. Zuckerberg's email for a particular issue that

25   she found relevant, and then because -- it was largely because

1  it was a patent case, patent infringement case, there was no

2  showing that Mr. Zuckerberg knew anything about the patents at

3  issue, those other patent-related ESI terms were not required

4  to be searched, but he was required -- Facebook was required to

5  search as to an issue which he did have knowledge.

6         MR. LERNER:  And we cited that case, to be clear,

7  Your Honor, because the proposed order here that you've been

8  asked, is not just to run the terms that the parties have

9  negotiated on Mr. Cook --

10        THE COURT:  But what I'm -- but this is a very

11  different situation.  And if this were just a patent case,

12  we're not dealing with just a patent case.  We're dealing with

13  the very issue that that letter goes -- that email goes to the

14  heart of as it relates to the trade secret case.

15        MR. LERNER:  And --

16        THE COURT:  So, the relevant information that at

17  least at one time was in his email string, and that again, by

18  not speaking, he spoke loudly; by how quickly he forwarded it

19  and to whom he forwarded it to shows that he did have some

20  knowledge and did -- and there is reason to believe that

21  there'd be more information in his emails.

22        And then the other case is the *Lauris versus Novartis*

23  from 2016.  That's Stan Boone's case in the Eastern District.

24  And he also denied an ESI request for four senior executives of

25  Novartis, but first of all said, and I'm quoting from Star

43

1    Three of the Opinion, "That the Court is not persuaded that the

2    Apex Doctrine applies to discovery at issue", and then found

3    that the discovery sought was not proportionate to the needs of

4    the case noting that it would double the costs of the discovery

5    that had taken place thus far.

6           So, he had information from the Defense about what

7    the costs would be to do these four, and I'm using the term

8    loosely, Apex ESI searches, whereas I have none.  And I do find

9    that it is relevant, and there is reason to believe that

10   material information would be contained in the email thread,

11   and I'll note Judge Stevenson also did not apply, and expressly

12   said she was not applying an Apex Doctrine approach to the

13   issue, but was instead just relying on relevance and

14   proportionality.

15          And based on the information that I have, I find that

16   there is reason to believe that there's relevant information

17   and that I, having no countervailing facts, and the only thing

18   that I relied on last time, which was counsel's representation,

19   which turned out not to be true, from a proportionality

20   analysis, I find that -- or I am tentatively finding that the

21   -- Mr. Cook being designated as an ESI custodian is

22   proportional to the needs of the case, as Defendant has not

23   shown me any evidence otherwise.

24          Anything else, Mr. Lerner?

25          **MR. LERNER:**  No, Your Honor.

Exhibit 5
-164-

44

1          **THE COURT:**  Mr. Re or Mr. Powell, any rebuttal or

2    response?

3          **MR. RE:**  Nothing, Your Honor.

4          **THE COURT:**  So, I'm going to ask this.  I'm going to

5    hold off on issuing a ruling.  I'm not sure that -- I'm not

6    saying he isn't, I'm not saying he is.  I'm not sure that the

7    same search terms that might apply to the head of R and D or

8    the head of some of the other issues, would necessarily apply

9    to Mr. Cook in a search of his email, as I know there's this

10   issue of efficient infringement.

11         I'm not making a ruling on it, but I want there to be

12   some discussion among the parties about whether this -- whether

13   the search terms can be agreed to or whether I need to make a

14   finding.  I'll hear from you on that, Mr. Re.

15         **MR. RE:**  We did propose a very, very, very few terms

16   for Mr. Cook.

17         **THE COURT:**  Is this in the proposed order?

18         **MR. RE:**  It is in, actually in a letter to Mr. Brian

19   Andrea at Gibson Dunn.  And it's at Exhibit 22.  Oh, it's

20   Document 475-2, filed July 19th this year, and its Page 46 of

21   47; otherwise Exhibit 22 at 190.

22         And you'll see at the very, very bottom of that page

23   just how limited the terms are for Mr. Cook compared to

24   everybody else.  And so, you're right.  We have already had

25   correspondence setting forth a very, very targeted number of

Exhibit 5
-165-

45

1   search terms for Mr. Cook.

2         **THE COURT:**  All right.  So, for the record, those

3   search terms are, "Masimo, or Cercacor, or Kiani, or Diab" is

4   one Boolean search.  A second one is, "Lamego, or Marcelo, or

5   O'Reilly, or O'Riley", spelled alternatively.  The third one is

6   the phrase, "efficient infringement".  And the last is,

7   "healthcare, or embedded patient or medical closed in bed

8   (phonetic) within five of monitor, with an end Boolean change

9   allotment".  Those are the four terms.

10        Tell me what you think about those terms, Mr. Lerner.

11        **MR. LERNER:**  We think, as we briefed, that "efficient

12  infringement" has nothing to do with this case.  It feels like

13  it's plucked out of the media.

14        The last one on its face is not as described.  Asking

15  us to look through all of Tim Cook's emails for healthcare

16  is --

17        **THE COURT:**  All right.  Mr. Re.

18        It sounds like the main objection is to the final

19  two, so let's focus on those two.  Is there any connection that

20  you found in discovery thus far to the phrase "efficient

21  infringement" as it relates to this case?

22        **MR. RE:**  I will defer to Mr. Powell, who is the

23  author of that letter.

24        **MR. POWELL:**  Thank you, Your Honor.  I'm not aware of

25  any documents in discovery using that phrase that we've

46

1    received yet.  The phrase came out, and you'll see this in our

2    reply brief, is the issue is that there's been statements,

3    public statements about this is a practice at Apple known as

4    efficient infringement --

5            **THE COURT:**  I've seen it, and there was back and

6    forth about whether the person who made the allegation actually

7    was who, in terms of his position at Apple, was who he claimed

8    to be.  And my memory is whoever wrote the response to that

9    said something to the effect of Apple doesn't do that and

10   doesn't believe in that.

11           **MR. POWELL:**  Right, Your Honor.  So, Mr. Cook

12   indicated that he does not think Apple does that and so, our

13   point is this is just a search term.  If Apple doesn't do that,

14   then it shouldn't have any hits.  And if it does have hits, it

15   might be Mr. Cook saying, "Yeah, we definitely don't do

16   efficient infringement, that's not our practice".  You would

17   think that Apple would want to produce such documents.

18           **THE COURT:**  All right.  And tell me about the other

19   category that seems like it has the potential in using the

20   phrase "patient within five of monitor or monitoring"

21   considering the nature of some of Apple's products that that

22   conceivably could result in a large number of documents that

23   have nothing to do with the claims in this case.

24           **MR. POWELL:**  Yeah, I don't know how many documents it

25   would result on.  I think the issue here is to at least run the

47

1    search terms and get hit counts.  If the search terms don't

2    result in many documents, then there's no burden.  If the

3    search terms result in, you know, a million documents or

4    something, just for Mr. Cook, then of course we can -- I'm

5    happy to have that conversation with Mr. Lerner.

6          THE COURT:  All right.  Anything further on this

7    issue, Mr. Lerner?

8          MR. LERNER:  The only other thing that I'll add is,

9    particularly for Mr. O'Reilly obviously, you're talking about

10   an Apple employee.  So, just the name doesn't limit it to this

11   case.  You're talking about every communication with a

12   gentleman who was -- whose title at one point was chief medical

13   officer.  So, there's no limit there.

14         THE COURT:  Let me ask you, if I give you guys -- and

15   I understand you object and you don't agree with my ruling, but

16   if I give you guys 10 minutes, do you think you can narrow

17   this, or at least narrow some of it, because I am cognizant to

18   the potential -- because we're talking about -- what's the

19   timeframe we're talking about?

20         MR. POWELL:  We're talking roughly 2013 to present.

21         THE COURT:  Yeah, I'd like to see whether it's

22   something that you folks can narrow a little bit, but I'm not

23   making a ruling on whether that's inappropriate as stated, but

24   it might be worthwhile to, you know, any email for an eight-

25   year period -- is Mr. O'Reilly still at Apple?

Exhibit 5
-168-

48

1          **MR. LERNER:**  Yes, Your Honor.  And --

2          **THE COURT:**  Any email that comes up with the name

3    "O'Reilly", which seems to be what Bullet Point 2 would

4    authorize, seems likely to, even though we don't have the

5    testing, seems likely to pull up an untoward and unnecessary

6    number of documents.

7          **MR. POWELL:**  Well, Your Honor, I would be happy to

8    have that conversation.  I would just only note that what we've

9    done before is we run the search terms and get hit counts --

10          **THE COURT:**  I hear you.

11          **MR. POWELL:**  -- okay.

12          **THE COURT:**  And the problem with that here is, we're

13   trying -- I'm cognizant of a lot of issues, and to the extent

14   you can try to narrow things a little bit now and see whether

15   there's a way that you won't have to run it again, that way you

16   can get to -- hey, nothing is going to be perfect.  You're not

17   necessarily going to capture everything you want, and you're

18   probably going to capture some things that they don't want

19   captured that are going to be produced.  And I don't mean that

20   in a nefarious way.

21          Let's try to work it out.  Let's take five minutes.

22   Just give me five minutes to talk and see if the parties can

23   first talk amongst themselves, and then talk with each other to

24   see if there's a way to narrow these in a way that is less

25   objectionable.  And I'm not saying, again, that I'm not

Exhibit 5
-169-

49

1   ultimately going to order it.

2          And I'm just going to -- just going to sit here for

3   five minutes, and if you folks want to step outside, you may.

4      **(A five-minute recess was taken)**

5          **THE COURT:**  All right.  Counsel have returned.  Do

6   you need a minute?

7          **MR. POWELL:**  No.  You may not like what we're going

8   to say, but --

9          **THE COURT:**  Okay.  I don't --

10         **MR. POWELL:**  -- I think we both thought we needed to

11  have consultation with the rest of the people on our teams.  We

12  didn't feel that we could do the kind of job on the fly here at

13  the courthouse because we all rely on other people, and we

14  would kindly request if we could have additional time to --

15         **THE COURT:**  What's going -- obviously, we used to

16  meet regularly, and we don't anymore.  What's going on in your

17  case?  Are there any deadlines or any reasons that this needs

18  to be expedited?

19         **MR. POWELL:**  No, and in fact, we even postponed this

20  hearing a few weeks so that we both could be here.  So, there

21  -- the answer is no.

22         **THE COURT:**  How much time do you think you need to

23  talk?  And again, I'm not expecting Apple to agree with the

24  ruling, but to the extent there are things that are less

25  objectionable that can be worked out, I want to provide that

Exhibit 5
-170-

50

1    opportunity.

2            How much time to you think you need from Plaintiffs'

3    standpoint just to consult with your team and make a

4    presentation to Apple?

5            **MR. POWELL:**  A day or two.

6            **THE COURT:**  So, by Monday.

7            **MR. POWELL:**   Monday.

8            **THE COURT:**  Okay.  Monday, the 20th -- I'm sorry, the

9    27th.

10           And Mr. Lerner, assuming you get a proposal from

11   Apple by Monday, the 20th, is that something you can respond to

12   -- I'm sorry, the 27th.

13           **MR. LERNER:**  Proposal on the 27th.

14           **THE COURT:**  Monday the 27th.

15           **MR. LERNER:**  Yes, Your Honor.

16           **THE COURT:**  All right.  So, what I'll do is I'm going

17   to hold off on a written ruling at least until Monday, the

18   27th, and I'll direct Plaintiffs' counsel to file just a status

19   report if there's any change to the request by nature of search

20   terms for Mr. Cook's email, but my tentative will be the order

21   that the motion will be granted.

22           And in terms of the timing, Mr. Lerner, Plaintiffs

23   ask for this to be done within -- to be completed, including

24   production, within 14 days.  What's an appropriate time from

25   your perspective?

Exhibit 5
-171-

51

1          **MR. LERNER:**  It will obviously depend a little bit on

2    -- not a little bit, a lot on the search terms, just in terms

3    of volume and review.  And as Your Honor has noted before,

4    which should surprise nobody, it takes additional review of

5    Mr. Cook's emails, just given the importance.

6          If we could get 30 days at the very least, that is

7    much more workable for us.  It may, as I said, we may need more

8    time just given the volume, if it turns out to be a lot more.

9          **THE COURT:**  All right.  Is there any reason why 30

10    days -- why a faster time period is required, Mr. Re or

11    Mr. Powell?

12          **MR. POWELL:**  No, Your Honor.

13          **THE COURT:**  All right.  So, here's what we're going

14    to do.  The order is going to be, the parties are directed to

15    meet and confer, file a -- Plaintiff is directed to file a

16    status report as of September 27th regarding requested terms

17    following that meet and confer for the ESI search.  And the

18    production will be ordered to be made by October 27th.  And if

19    more time is needed, the parties can agree among themselves.

20    An if the parties can't agree, they can return this one issue

21    back to me on that.

22          Is there anything further with respect to this motion

23    on behalf of Plaintiffs?

24          **MR. POWELL:**  Nothing further, Your Honor.

25          **THE COURT:**  And on behalf of Defendants?

Exhibit 5
-172-

1            **MR. LERNER:**  No, Your Honor.

2            **THE COURT:**  All right.  Thank you.  We're adjourned.

3        **(Proceeding adjourned)**

53

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **September 29, 2021**

          **Signed**                                                 **Dated**

*TONI HUDSON, TRANSCRIBER*

Exhibit 5
-174-

# EXHIBIT 6

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**In the Matter of Certain Light-Based Physiological Measurement Devices and Components Thereof**

Investigation No. 337-TA-_____

## FIRST AMENDED COMPLAINT UNDER SECTION 337 OF
## THE TARIFF ACT OF 1930, AS AMENDED

Complainants:

Masimo Corporation
52 Discovery
Irvine, CA 92618
Telephone: 949-297-7000

Cercacor Laboratories, Inc.
15750 Alton Pkwy
Irvine, CA 92618
Telephone: 800-610-8522

Respondent:

Apple Inc.
One Apple Park Way
Cupertino, CA 95014
Telephone:  408-996-1010

Counsel for Complainants:

Stephen C. Jensen
Joseph R. Re
Sheila N. Swaroop
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone:  (949) 760-0404

Jonathan E. Bachand
KNOBBE MARTENS OLSON & BEAR, LLP
1717 Pennsylvania Ave NW, Suite 900
Washington DC, 20006
Telephone: (202) 640-6400

Exhibit 6
-175-

## TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ........................................................................................ 1

II. COMPLAINANTS .................................................................................... 3

III. PROPOSED RESPONDENT ................................................................... 7

IV. PRODUCTS AND TECHNOLOGY AT ISSUE .................................... 8

    A.    Complainants' Technology ........................................................ 8

    B.    Apple's Copying of Complainants' Technology ...................... 11

    C.    The Accused Products .............................................................. 13

V. THE ASSERTED PATENTS ................................................................... 14

    A.    U.S. Patent No. 10,912,501 ..................................................... 14

        1.    Identification of the Patent and Ownership by Masimo Corporation ....... 14

        2.    Foreign Counterparts to the '501 Patent ................................... 16

        3.    Non-Technical Description of the '501 Patent ......................... 17

    B.    U.S. Patent No. 10,912,502 ..................................................... 18

        1.    Identification of the Patent and Ownership by Masimo Corporation ....... 18

        2.    Foreign Counterparts to the '502 Patent ................................... 20

        3.    Non-Technical Description of the '502 Patent ......................... 20

    C.    U.S. Patent No. 10,945,648 ..................................................... 21

        1.    Identification of the Patent and Ownership by Masimo Corporation ....... 21

        2.    Foreign Counterparts to the '648 Patent ................................... 23

        3.    Non-Technical Description of the '648 Patent ......................... 24

    D.    U.S. Patent No. 10,687,745 ..................................................... 24

        1.    Identification of the Patent and Ownership by Masimo Corporation ....... 24

i

Exhibit 6
-176-

2.    Foreign Counterparts to the '745 Patent.................................................25

3.    Non-Technical Description of the '745 Patent ......................................26

E.    U.S. Patent No. 7,761,127 .................................................................26

1.    Identification of the Patent and Ownership by Cercacor.........................26

2.    Foreign Counterparts to the '127 Patent.................................................27

3.    Non-Technical Description of the '127 Patent ......................................28

F.    Licensees .......................................................................................28

VI. UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENT .............................29

VII. THE DOMESTIC INDUSTRY Related to Asserted Patents..............................37

A.    Technical Prong ..............................................................................38

B.    Economic Prong..............................................................................38

VIII. SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE............................40

IX. CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES .......................................................41

X. RELATED LITIGATION ...............................................................................41

XI. REQUESTED RELIEF..................................................................................42

Exhibit 6
-177-

**LIST OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Certified Copy of U.S. Patent No. 10,912,501 |
| 2 | Copy of U.S. Patent No. 10,912,502 |
| 3 | Certified Copy of U.S. Patent No. 10,945,648 |
| 4 | Certified Copy of U.S. Patent No. 10,687,745 |
| 5 | Certified Copy of U.S. Patent No. 7,761,127 |
| 6 | Certified Assignment Documents for U.S. Patent No. 10,912,501 |
| 7 | Certified Assignment Documents for U.S. Patent No. 10,912,502 |
| 8 | Certified Assignment Documents for U.S. Patent No. 10,945,648 |
| 9 | Certified Assignment Documents for U.S. Patent No. 10,687,745 |
| 10 | Certified Assignment Documents for U.S. Patent No. 7,761,127 |
| 11 | CONFIDENTIAL EXHIBIT: Amended and Restated Cross-Licensing Agreement between Masimo Laboratories and Masimo Corporation Effective January 1, 2007 |
| 12 | Listing of All Foreign Patents and All Foreign Patent Applications Corresponding to Asserted Patents |
| 13 | Representative Photos of Representative Apple Watch Series 6 (Model No. 109.627 shown) |
| 14 | Product Literature Regarding the Apple Watch Series 6 |
| 15 | CONFIDENTIAL EXHIBIT:  Claim Chart Comparing Claims of the '501 Patent to an Apple Watch Series 6 |
| 16 | CONFIDENTIAL EXHIBIT: Claim Chart Comparing Claims of the '502 Patent to an Apple Watch Series 6 |
| 17 | CONFIDENTIAL EXHIBIT: Claim Chart Comparing Claims of the '648 Patent to an Apple Watch Series 6 |
| 18 | CONFIDENTIAL EXHIBIT: Claim Chart Comparing Claims of the '745 Patent to an Apple Watch Series 6 |
| 19 | CONFIDENTIAL EXHIBIT: Claim Chart Comparing Claims of the '127 Patent to an Apple Watch Series 6 |
| 20 | CONFIDENTIAL EXHIBIT Drawings, Photographs, or Other Visual Representations of Masimo's rainbow® Sensors |
| 21 | CONFIDENTIAL EXHIBIT:  Drawings, Photographs, or Other Visual Representations of Masimo's Confidential Domestic Industry Product |
| 22 | CONFIDENTIAL EXHIBIT:  Claim Chart Comparing Exemplary Claims of the '501 Patent to Masimo's Domestic Industry Product |
| 23 | CONFIDENTIAL EXHIBIT:  Claim Chart Comparing Exemplary Claims of the '502 Patent to Masimo's Domestic Industry Product |
| 24 | CONFIDENTIAL EXHIBIT:  Claim Chart Comparing Exemplary Claims of the '648 Patent to Masimo's Domestic Industry Product |

Exhibit 6
-178-

| Exhibit No. | Description |
|:---:|:---|
| 25 | CONFIDENTIAL EXHIBIT:  Claim Chart Comparing Exemplary Claims of the '745 Patent to Masimo's Domestic Industry Product |
| 26 | CONFIDENTIAL EXHIBIT:  Claim Chart Comparing Exemplary Claims of the '127 Patent to Masimo's Domestic Industry Products |
| 27 | CONFIDENTIAL EXHIBIT:  Confidential Declaration of Bilal Muhsin |
| 28 | CONFIDENTIAL EXHIBIT: Confidential Declaration of Micah Young |
| 29 | September 15, 2020 Press Release |
| 30 | CONFIDENTIAL EXHIBIT: Invoice dated April 19, 2021 |
| 31 | Photographs of Product Packaging of the Apple Watch Series 6 |
| 32 | January 28, 2021 Apple 10K Filing with SEC |
| 33 | Fowler, Geoffrey, "The new Apple Watch says my lungs may be sick. Or perfect.  It can't decide." *Washington Post*, September 23, 2020. |
| 34 | Masimo Form 10-K, dated February 23, 2021 |
| 35 | "The Apple Watch's blood oxygen sensor is less accurate than you think" |
| 36 | "Can the Apple Watch Series 6 Keep the Doctor Away?" |
| 37 | "Apple Watch Series 6 review – Minute Improvements" |
| 38 | "The New Apple Watch 6 May Have a Problem.  Oddly Enough, That's OK" |
| 39 | "Apple Watch Series 6 and SE Review – Watch Out for the Upsell" |
| 40 | Provisional Application No. 60/367,428 |

Exhibit 6
-179-

## LIST OF APPENDICES

| Appendix | Description |
|----------|-------------|
| A | File History for U.S. Patent No. 10,912,501 |
| B | Relevant Technical References Cited in File History for U.S. Patent Nos. 10,912,501, 10,912,502, and 10,945,648 |
| C | File History for U.S. Patent No. 10,912,502 |
| D | File History for U.S. Patent No. 10,945,648 |
| E | Certified File History for U.S. Patent No. 10,687,745 |
| F | Relevant Technical References Cited in File History for U.S. Patent No. 10,687,745 |
| G | Certified File History for U.S. Patent No. 7,761,127 |
| H | Relevant Technical References Cited in File History for U.S. Patent No. 7,761,127 |

Exhibit 6
-180-

## I.  **INTRODUCTION**

1.      Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo" or "Complainants") request that the United States International Trade Commission ("Commission") institute an investigation into violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337") committed by Respondent Apple Inc. ("Apple") ("Apple" or "Respondent").

2.      This First Amended Complaint ("Complaint") is based on Respondent's unlawful and unauthorized importation into the United States, sale for importation, and/or sale within the United States after importation of certain light-based physiological measurement devices and components thereof.  Respondent's products, including, but not limited to, the "Apple Watch Series 6," or "Series 6" ("Accused Products") infringe at least one claim of U.S. Patent No. 10,912,501, titled "User-Worn Device for Noninvasively Measuring a Physiological Parameter of a User," ("the '501 Patent"), U.S. Patent No. 10,912,502, titled "User-Worn Device for Noninvasively Measuring a Physiological Parameter of a User," ("the '502 Patent"), U.S. Patent No. 10,945,648, titled "User-Worn Device for Noninvasively Measuring a Physiological Parameter of a User," ("the '648 Patent"), U.S. Patent No. 10,687,745, titled "Physiological Measurement Devices, Systems, and Methods," ("the '745 Patent"), and U.S. Patent No. 7,761,127, titled "Multiple Wavelength Sensor Substrate," ("the '127 Patent") (collectively, "the Asserted Patents"), either literally or under the doctrine of equivalents.

Exhibit 6
-181-

3.     The Accused Products directly infringe and/or induce the infringement of, literally or under the doctrine of equivalents, at least the following claims (collectively, "the Asserted Claims") of the Asserted Patents:

| U.S. Patent | Asserted Claims[1] |
|---|---|
| '501 Patent | **1**-9, 11-18, **19**-25 and **26**-30 |
| '502 Patent | **1**-2, 4-6, 8-12, 14-18, **19**-22, 24-26, and **28**-30 |
| '648 Patent | **1**-5, **6**-17, 19, and **20**-30 |
| '745 Patent | **1**-6, 8-9, 11, 14, **20**-24, and 26-27 |
| '127 Patent | **7**-9 |

Further discovery may reveal that Respondent infringes additional claims.

4.     Certified copies of the '501 Patent, '502 Patent, '648 Patent, '745 Patent, and '127 Patent are attached hereto as **Exhibits 1, 2, 3, 4, and 5**, respectively.  Masimo Corp. owns by assignment the entire right, title, and interest in and to the '501 Patent, '502 Patent, '648 Patent, and '745 Patent (collectively, "the Masimo Patents").  Certified copies of the recorded assignments of the Masimo Patents are attached hereto as **Exhibits 6, 7, 8, and 9**, respectively.  Masimo Corp. exclusively licenses certain rights to the Masimo Patents to Cercacor.  A copy of the Amended and Re-Stated Cross-Licensing Agreement between Masimo Corp. and Cercacor (formerly known as Masimo Laboratories) granting the license to Cercacor is attached hereto as **Confidential Exhibit 11**.  Cercacor owns by assignment the entire right, title, and interest in and to the '127 Patent ("the Cercacor Patent").  Certified copies of the recorded assignment of the Cercacor Patent are attached hereto as **Exhibit 9**.  Masimo is a licensee of certain exclusive rights to the Cercacor Patents, as reflected in **Confidential Exhibit 11.**

5.     Respondent's activities with respect to the importation into the United States, the

---

[1]     Independent claims are noted in **BOLD**.

Exhibit 6
-182-

sale for importation into the United Sates, and/or the sale within the United States after importation of certain light-based physiological measurement devices and components thereof, described more fully *infra*, are unlawful under 19 U.S.C. § 1337(a)(1)(B)(i) in that they constitute infringement of the valid and enforceable Asserted Patents.

6.      As required by Section 337(a)(2) and defined by Section 337(a)(3), industries exist in the United States relating to articles covered by the Asserted Patents or alternatively such industries relating to articles protected by the Asserted Patents are in the process of being established.

7.      Complainants seek relief from the Commission in the form of a permanent limited exclusion order, pursuant to Section 337(d), excluding from entry into the United States the Accused Products that infringe one or more claims of the Asserted Patents.  Complainants also seek a permanent cease and desist order, pursuant to Section 337(f), directing Respondent to immediately cease and desist from importing, marketing, advertising, demonstrating, warehousing inventory for distribution, distributing, offering for sale, selling, or using in the United States the certain light-based physiological measurement devices and components thereof that infringe one or more claims of the Asserted Patents.

8.      Complainants further seek as relief a bond, for the 60-day Presidential review period pursuant to Section 337(j), for the importation of the certain light-based physiological measurement devices and components thereof that infringe one or more claims of the Asserted Patents.

## II.  **COMPLAINANTS**

9.      Complainant Masimo Corporation is a Delaware corporation having its principal place of business at 52 Discovery, Irvine, California 92618.  Masimo owns the Masimo Patents and has certain exclusive rights to the Cercacor Patent.  (*See* **Exhibits 1-4, 6-9, Confidential**

Exhibit 6
-183-

**Exhibit 11**).   Complainant Cercacor is a Delaware corporation having its principal place of

business at 15750 Alton Pkwy, Irvine, CA 92618.  Cercacor is the owner of the Cercacor Patent

and has certain exclusive rights to the Masimo Patents.  (*See* **Exhibits 5 and 10, Confidential**

**Exhibit 11**).

10.     Masimo is a global medical technology company that has revolutionized non-

invasive monitoring of physiological parameters, such as pulse rate, arterial oxygen saturation and

many others.   These innovations have been repeatedly recognized by Federal courts.   *See*

*Mallinckrodt, Inc. v. Masimo Corp.*, Case No. 2:00-CV-06506 (C.D. Cal. Apr. 5, 2004), ECF No.

588; *Mallinckrodt, Inc. v. Masimo Corp.*, Case No. 2:00-CV-06506 (C.D. Cal. July 12, 2004), ECF

No. 622; *Mallinckrodt, Inc. v. Masimo Corp.*, Case No. 2:00-CV-06506 (C.D. Cal. Aug. 4, 2004),

ECF No. 632, *aff'd in part and rev'd in part*, 147 F. App'x 158 (Fed. Cir. 2005); *Mallinckrodt,*

*Inc. v. Masimo Corp.*, 147 F. App'x 158 (Fed. Cir. 2005); *Masimo Corp. v. Philips Elec. N. Am.*

*Corp.*, Case No. 1:09-CV-00080 (D. Del. Oct. 17, 2014), ECF No. 919; *Masimo Corp. v. Philips*

*Elec. N. Am. Corp.*, Case No. 1:09-CV-00080 (D. Del. May 18, 2015), ECF No. 997; *Masimo*

*Corp. v. Philips Elec. N. Am. Corp.*, Case No. 1:09-CV-00080 (D. Del. May 18, 2015), ECF No.

998.

11.     Masimo develops, manufactures, and markets a variety of noninvasive patient

monitoring technologies and hospital automation solutions as part of its mission to improve patient

outcomes and reduce the cost of patient care.  Masimo's patient monitoring solutions are systems

that generally incorporate a monitor or circuit board, proprietary single-patient use or reusable

sensors, software and/or cables.  Masimo primarily sells its products to professional caregivers,

such as hospitals, emergency medical service providers, home care providers, physician offices,

Exhibit 6
-184-

veterinarians, long term care facilities and also to consumers, through its direct sales force, online, distributors, and original equipment manufacturer (OEM) partners.

12.     Masimo has rapidly expanded its workforce despite the COVID-19 Pandemic.  As of December 28, 2019, Masimo had approximately 1,600 full-time employees and approximately 3,700 dedicated contract personnel worldwide.  **Exhibit 34** (Masimo Form 10k) at 34.  By January 2, 2021, Masimo had grown to 2,000 full-time employees and approximately 4,200 dedicated contract personnel worldwide.

13.     Masimo's core business is referred to as Masimo SET® pulse oximetry.  Pulse oximetry allows for the noninvasive measurement of the oxygen saturation level of arterial blood, which delivers oxygen to the body's tissues.  Pulse oximetry also allows for the measurement of pulse rate.  "SET" refers to Masimo's Signal Extraction Technology, a technology invented by Masimo that, for the first time, allowed pulse oximeters to provide accurate measurements of oxygen saturation even during patient motion and low perfusion (i.e., decreased arterial blood flow) conditions.

14.     Over the years, Masimo's product offerings have expanded significantly to also include rainbow® Pulse CO-Oximetry, with its unique ability to allow for real-time non-invasive monitoring of additional physiological measurements, including  carboxyhemoglobin (SpCO®), methemoglobin (SpMet®), total hemoglobin concentration (SpHb®) and fractional arterial oxygen saturation (SpfO2™).  Rainbow® Pulse CO-oximetry also has the ability to measure pulse rate, perfusion index (Pi), Pleth Variability Index (PVi®) and respiration rate from the pleth (RRp®).  The rainbow SET® platform also allows for the calculation of Oxygen Content (SpOC™) and Oxygen Reserve Index (ORi™).

Exhibit 6
-185-

15.     Masimo's current technology offerings also include remote patient monitoring, connectivity, and hospital automation solutions, including Masimo Patient SafetyNet™, Masimo Patient SafetyNet™ Surveillance, Replica™, Iris®, MyView®, UniView™ and Trace™. Masimo's technologies are supported by a substantial intellectual property portfolio.

16.     Masimo invests significantly in its research and development efforts, and currently spends about 10% of its sales revenue on research and development activities.  For the year ending January 2, 2021, Masimo spent approximately $118,689,000 for research and development activities.  **Exhibit 34** (Masimo Form 10k) at 66.  The majority of these activities take place in the United States.  **Exhibit 34** (Masimo Form 10k) at 62.  As a result of these efforts, Masimo has been awarded numerous patents in the United States and around the world.  As of January 2, 2021, Masimo had approximately 800 issued patents and approximately 500 pending applications in the U.S., Europe, Japan, Australia, Canada and other countries throughout the world.  **Exhibit 34** (Masimo Form 10k) at 32.

17.     Masimo owns two facilities in Irvine, California, with combined square footage of approximately 314,400, housing its corporate headquarters and the majority of its U.S. research and development activities.  Masimo also owns approximately 86,500 square feet of property in Hudson, New Hampshire, which is used to develop and manufacture advanced light emitting diodes and other advanced component-level technologies, as well as warehousing and administrative operations.

18.     Masimo also leases and occupies approximately 105,800 square feet of additional building space in Irvine, California for product manufacturing and warehousing.  Masimo also leases or owns an additional 61,000 square feet at various locations throughout the United States, that provide centers for distribution of Masimo's products directly to its customers, and is in the

Exhibit 6
-186-

████████████████████████████████████████████

process of establishing distribution centers throughout the United States, ████████████

███████████████████████████████████████████████████████.

19.     Complainant Cercacor is a health and wellness innovator based in Irvine, California.  In 1998, Masimo spun certain technology off into a new company, Masimo Laboratories, Inc. or "Masimo Labs," to further research and develop the technologies.  The name of the company was later changed to "Cercacor."  Cercacor and Masimo have a license agreement between them to facilitate collaboration between the companies.

20.     Like Masimo, Cercacor is an innovator of non-invasive monitoring technologies. Cercacor is on the frontline of understanding how measuring, tracking, and analyzing physiological parameters can impact pre-diabetic and diabetic patients, endurance sports training and performance, and overall health and wellness.  Cercacor continued the development that started at Masimo on numerous non-invasive parameters.  Leading hospitals around the world use Cercacor technology licensed to Masimo and sold under the name Masimo rainbow SET®.  This technology was the first, and remains the only, noninvasive monitoring technology that can measure carbon monoxide, methemoglobin, and total hemoglobin in the blood.

### III.  **PROPOSED RESPONDENT**

21.     Respondent Apple Inc. ("Apple") is a California corporation having a principal place of business at One Apple Park Way, Cupertino, California 95014.  Apple unlawfully sells for importation, imports, and/or sells after importation into the United States certain light-based physiological measurement devices and components thereof, including the Apple Watch Series 6, that infringe the '501 Patent, the '502 Patent, the '648 Patent, the '745 Patent, and the '127 Patent, either literally or under the doctrine of equivalents.

22.     Apple is in the business of designing, manufacturing, and marketing smartphones, personal computers, tablets, wearables, and accessories, and sells a variety of related services.

Exhibit 6
-187-

Apple's wearables include certain light-based physiological measurement devices and components thereof, including the Apple Watch Series 6.

## IV.  PRODUCTS AND TECHNOLOGY AT ISSUE

### A.  Complainants' Technology

23.    Products that practice one or more claims of the Asserted Patents—including the Accused Products and Masimo's Domestic Industry products—are light-based physiological measurement devices and components thereof.  These physiological measurement devices typically rely on light that is transmitted through the body tissue.  The received light, that has been attenuated by the various components of the body tissue, including the pulsing arterial blood, is known in the industry as a photoplethysmography or "PPG."  The transmission and receipt of this light is typically accomplished through a sensor that is applied to a body part such as a finger, arm, toes, forehead or ear.

24.    Before Masimo, non-invasive measurements from the PPG were plagued by unreliability, often when the measurement was needed most, due to the person moving or having low peripheral blood flow (known as "low perfusion").  The industry had essentially given up on solving these problems, concluding they were largely unsolvable.  In the medical context, clinicians had to live with the results—patient monitors gave excessive false alarms, froze their measurements for prolonged periods of time despite potential changes in the physiological parameter (e.g., oxygen saturation or pulse rate), delayed notification of alarms due to long averaging times of sensor data, produced inaccurate measurements, or were unable to obtain data on the most critical patients and babies who cannot be instructed to stay still.  Masimo's pioneering Masimo SET® technology, solves this problem and dramatically improved the reliability of monitoring and reporting physiological signals derived from the PPG.

Exhibit 6
-188-

████████████████████████████████████████

25.     Following its initial success with Masimo SET® technology, Masimo invested heavily in developing additional breakthrough measurement technologies, such as non-invasively measuring total hemoglobin, carboxyhemoglobin, and methemoglobin.  Masimo has continued to innovate, succeeding where others have consistently failed.  Masimo was the first, and remains the only, company delivering these game-changing technologies to hospitals in the United States.  Use of Masimo's technology in the clinical setting has been proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve transfusion management, while also saving substantial money for the hospitals providing care.

26.     Masimo's investment in its technology and research and development has included significant investments in wrist-worn devices for measurements of physiological parameters.  Masimo's patent filings as early as 2002 disclose wrist-worn devices for measuring physiological parameters that wirelessly connected to monitors.  *See* **Exhibit 40** (Provisional Application No. 60/367,428 filed on March 25, 2002).

27.     One of Masimo's commercially marketed wrist-worn device for measuring physiological parameters, the Radius PPG, was cleared by the FDA in May of 2019.  The Radius PPG eliminated the need for a cabled connection to a pulse oximetry monitor, allowing patients to move freely and comfortably while still being continuously monitored reliably and accurately.  The device communicated with monitors via a wireless connection allowing patients to benefit from mobility.

28.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Exhibit 6
-189-

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████.

29.     Given its success selling medical-grade devices for non-invasively measuring physiological parameters, Complainants decided to leverage these clinical grade products for sale directly to consumers where allowable.  Masimo noticed that there has been many devices sold to consumers purporting to provide physiological measurements, but could identify none that provided clinical grade measurement.  The devices available to consumers were more like toys.  In 2013, Masimo first began selling its pulse oximetry products to the consumer market.  After Masimo began selling directly to consumers, it also increased its investment in direct-to-consumer advertising, including being a premium sponsor of the BNP Paribas Open Tennis Tournament in Palm Springs, CA.

30.     Notably, despite the acute awareness of pulse oximetry created by the COVID-19 pandemic, the large multitude of so-called pulse oximeters offered to consumers are prohibited for medical purposes.  Unfortunately, the consumers do not recognize this, which puts their health at risk.

31.     The Asserted Patents claim devices and/or components of devices used in the non-invasive measurement of physiological parameters such as oxygen saturation.  For example, the four Masimo Patents claim devices containing multiple optical sources that emit light at different wavelengths and numerous light detectors.  The light detectors are configured to detect the optical radiation from the tissue and output a respective signal stream responsive to this detection.  The devices are configured in specific ways which improve the successful detection of the signal while minimizing the effects of light-piping.  The Cercacor Patent also claims novel technologies assisting in the non-invasive measurement of physiological parameters.  The '127 Patent claims a

10

Exhibit 6
-190-

sensor using a thermal mass within a substrate to measure and account for effects on measurements from temperature changes.

**B.**     **Apple's Copying of Complainants' Technology**

32.     In 2013, Apple contacted Masimo and asked to meet regarding a potential collaboration.  Apple told Masimo that Apple would like to understand more about Masimo's technology to potentially integrate that technology into Apple's products.  Apple and Masimo later entered into a confidentiality agreement, and Masimo's management met with Apple.  The meetings included confidential discussions of Masimo's technology.  After what seemed to Masimo to have been productive meetings, Apple quickly began hiring Masimo's employees, including engineers and key management.

33.     Masimo employed Michael O'Reilly as its Chief Medical Officer and Executive Vice President for Medical Affairs beginning in January 2008.  As part of the Masimo executive team, O'Reilly was privy to extremely sensitive information, including information about mobile medical products and applications, wellness applications, clinical data gathering and analytics, and other technology of Masimo.  Upon information and belief, Apple employed O'Reilly in July 2013, shortly after the meetings with Masimo, to assist in wellness and mobile applications that include non-invasive measurement of physiological parameters.  Not long after, by December of 2013, O'Reilly was already meeting with the FDA on behalf of Apple to discuss medical applications and discuss medical products that non-invasively measures blood constituents.

34.     Apple systematically recruited other key Masimo personnel, such as Marcelo Lamego (a named inventor on many of the Asserted Patents), who was the former Chief Technical Officer of Cercacor and a former Research Scientist at Masimo.  Lamego was a Masimo employee during 2000-2001 and 2003-2006, and the Cercacor Chief Technical Officer during 2006-2014.

Exhibit 6
-191-

35.     Lamego had unfettered access to Complainants' technical information.  He was trained and mentored at Masimo by the most skilled engineers and scientists, and was taught about the keys to effective non-invasive monitoring, something he was not involved in prior to Masimo. Masimo engineers and scientists including, among others, Ammar Al-Ali, Mohamed Diab, and Walter Weber, exposed Lamego to all of Masimo's technology on non-invasive monitoring.  The Masimo engineers, including Al-Ali, Diab, and Weber, were Masimo employees at all relevant times.  Lamego also had access to and learned guarded secrets regarding Complainants' mobile medical products, including key technology and advance plans for future products.

36.     When Lamego left Cercacor, he assured Complainants that he would not violate his agreements with Complainants and volunteered that he would not work on technology similar to Complainants' technology.  On January 24, 2014, Complainants sent a letter to Apple explaining that Lamego possessed Complainants' confidential proprietary information and warning Apple to respect Complainants' rights in such information.  The letter stated, "we trust that Apple will employ Mr. Lamego in an area that does not involved healthcare technology, including mobile health applications and the measurement of physiological information."  The letter also asked that "Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers."   Based on Complainants' conversations with Lamego, Complainants' letter to Apple, and Complainants' confidentiality agreement with Apple, Complainants' reasonably believed that Lamego would not use or disclose Complainants' confidential information and that Apple would not induce Lamego to do so or itself use Complainants' confidential information.

12

Exhibit 6 -192-

37.     Unbeknownst to Complainants at the time, it now appears that, shortly after joining Apple in January 2014, Lamego began pursuing on behalf of Apple numerous patent applications directed toward technologies he worked on at Complainants, and with which he had no prior experience or knowledge.

38.     Apple announced the first version of its watch in September 2014 and began shipping its watch in April 2015.  On information and belief, Apple began incorporating Masimo's technology in later versions of its watch.  Ultimately with the launch of the Apple Watch Series 6 in September 2020, Apple for the first time purported to have incorporated the ability to measure blood oxygen saturation (pulse oximetry) into its watches—technology, which as described in more detail below, infringes the Asserted Claims.  Unfortunately for U.S. consumers, the Apple Watch Series 6 differs from Masimo's medical grade technology in that Apple's Accused Products do not reliably measure blood oxygen concentrations, as described in **Exhibits 33 and 35-39**.

### C.     The Accused Products

39.     Pursuant to 19 C.F.R. § 210.12(a)(12), the category of the Accused Products may be plainly described as wearable electronic devices with light-based pulse oximetry functionality, including various devices made by Apple, including, but not limited to, various models of the Apple Watch Series 6.  The Apple Watch Series 6 is an electronic smartwatch, which purportedly includes pulse oximetry functionality.   Relevant here, the Accused Products contain LEDs, photodiodes, and other features within the scope of the Masimo Patents to measure the oxygen saturation of the user.  The Accused Products also contain the thermal mass technology claimed in the '127 Patent.  The infringing products—including their associated systems, and components thereof—are further described in **Exhibits 15, 16, 17, 18, and 19**, which include claim charts comparing the Asserted Claims to the Apple Watch Series 6.  The Apple Watch Series 6 either

Exhibit 6
-193-

infringes these claims upon importation or Apple induces consumers to infringe these claims through its sale of the Apple Watch Series 6 and its recommendation, encouragement, and/or instruction to users to use the Apple Watch Series 6 in connection with an iPhone.

40.     The Apple Watch Series 6 is imported into and sold within the United States by or on behalf of Apple.  On information and belief, commercially significant volumes of infringing products are maintained in inventory by Apple in the United States.

41.     The identification of exemplary Accused Products is intended purely for illustration and is not intended to limit the scope of the investigation.  Any remedy should extend to all present and future infringing products of Apple, regardless of model number, name, or type of product.

## V. <u>THE ASSERTED PATENTS</u>

### A. <u>U.S. Patent No. 10,912,501</u>

#### 1. <u>Identification of the Patent and Ownership by Masimo Corporation</u>

42.     Masimo Corporation owns by assignment the entire right, title, and interest in the '501 Patent, entitled "User-Worn Device for Noninvasively Measuring a Physiological Parameter of a User," which issued on February 9, 2021.  **Exhibit 1**.  The '501 Patent issued from U.S. Patent Application Serial No. 17/031,356, filed on September 24, 2020.  The '501 Patent is a continuation of U.S. Patent Application No. 16/834,538, filed March 30, 2020, which is a continuation of U.S. Patent Application No. 16/725,292, filed December 23, 2019, which is a continuation of U.S. Patent Application No. 16/534,949, filed August 7, 2019, which is a continuation of U.S. Patent Application No. 16/409,515, filed May 10, 2019, which is a continuation of U.S. Patent Application No. 16/261,326, filed January 29, 2019, which is a continuation of U.S. Patent Application No. 16/212,537, filed December 6, 2018, which is a continuation of U.S. Patent Application No. 14/981,290 filed December 28, 2015, which is a continuation of U.S. Patent

Exhibit 6
-194-

Application No. 12/829,352 filed July 1, 2010, which is a continuation of U.S. Patent Application No. 12/534,827 filed August 3, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/829,352 is also a continuation-in-part of U.S. Patent Application No. 12/497,528 filed July 2, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, 61/078,228 filed July 3, 2008, 61/078,207 filed July 3, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/497,528 also claims the benefit of priority under 35 U.S.C. § 120 as a continuation-in-part of the following U.S. Design Patent Application Nos. 29/323,409 filed August 25, 2008 and 29/323,408 filed August 25, 2008.  U.S. Patent Application No. 12/829,352 is also a continuation-in-part of U.S. Patent Application No. 12/497,523 filed July 2, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, 61/078,228 filed July 3, 2008, 61/078,207 filed July 3, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/497,523 also claims the benefit of priority under 35 U.S.C. § 120 as a continuation-in-part of the following U.S. Design Patent Application Nos. 29/323,409 filed August 25, 2008 and 29/323,408 filed August 25, 2008.  A certificate of correction issued on the '501 Patent on April 6, 2021.  Pursuant to Commission Rule 210.12(a)(9)(xi) the expiration date of the '501 Patent is August 25, 2028.

Exhibit 6
-195-

43.     The inventors of the '501 Patent, Jeroen Poeze, Marcelo Lamego, Sean Merritt, Cristiano Dalvi, Hung Vo, Johannes Bruinsma, Ferdyan Lesmana, Massi Joe E. Kiani, and Greg Olsen, assigned to Masimo Laboratories, Inc. the entire right, title, and interest throughout the world in, to and under said improvements in the invention described and claimed in U.S. Patent Application No. 12/534,827 and all divisions and continuations thereof, which includes the '501 Patent. **Exhibit 9**.  On August 2, 2010, Masimo Laboratories Inc. changed its name to Cercacor Laboratories, Inc. **Exhibit 9**.  On July 29, 2019, Cercacor assigned to Masimo Corporation, the entire right, title and interest to U.S. Application No. 16/212537 and all continuations thereof, which includes the '501 Patent. **Exhibit 9**.  Cercacor is the licensee of certain exclusive rights to the '501 Patent. **Confidential Exhibit 17**.  The '501 Patent is valid, enforceable, and is currently in full force and effect.

44.     Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by: 1) an electronic copy of the prosecution history of the '501 Patent[2]; and 2) an electronic copy of each patent and applicable pages of each technical reference mentioned in the prosecution history.  These materials are included in Appendices A and B, respectively.

## 2.     <u>Foreign Counterparts to the '501 Patent</u>

---

[2]     Due to USPTO errors, Complainants submitted certificates of correction to correct typographical errors in U.S. Patent Nos. 10,912,501, 10,912,502, and 10,945,648 as originally issued.  Complainants have not yet received a certified copy of U.S. Patent No. 10,912,502 with the certificate of correction attached and have not yet received the certified copies of the prosecution histories which contain the information related to the certificates of correction for U.S. Patent Nos. 10,912,501, 10,912,502, and 10,945,648.  Accordingly, Complainants are submitting uncertified copies of the prosecution histories of U.S. Patent Nos. 10,912,501, 10,912,502, and 10,945,648, and an uncertified copy of U.S. Patent No. 10,912,502, and will submit certified copies once received.

Exhibit 6
-196-

45.     Pursuant to Commission Rule 210.12(a)(9)(v), Complainants submit the attached list of foreign patents, foreign patent applications (not already issued as a patent), and each foreign patent application that has been denied, abandoned, or withdrawn corresponding to the '501 Patent. **Exhibit 12**.  No other foreign patents or patent applications corresponding to the '501 Patent are known to Masimo Corporation.

### 3.     Non-Technical Description of the '501 Patent

46.     The '501 Patent involves devices for the non-invasive measurement of physiological parameters such as blood oxygen saturation and pulse rate.  The devices include multiple optical sources that emit light at different wavelengths and numerous light detectors.  The light detectors are configured to detect the optical radiation from the tissue and output a respective signal stream responsive to this detection.  This data is then processed by a processing device which outputs a measurement of the physiological parameter.  The '501 Patent includes limitations to novel architecture features to implement the required measurement while limiting any light noise that could impact the accuracy of measurements.  The '501 Patent also includes limitations to novel arrangements of light sources and photodetectors.  The '501 Patent also contains limitations to processors, network devices, and user interfaces, allowing the device to be easily used by consumers.

47.     In sum, the invention of the '501 Patent provides a novel combination of features allowing for the measurement of a user's physiological parameters.

.

48.     The foregoing non-technical description of the patented technology is not intended to limit, define, or otherwise affect the scope of the claimed inventions, nor is the non-technical description in any way intended to construe or define any word, phrase, term, or limitation recited in any claim of the '501 Patent.

17

Exhibit 6
-197-

B. **U.S. Patent No. 10,912,502**

1. **Identification of the Patent and Ownership by Masimo Corporation**

49.     Masimo Corporation owns by assignment the entire right, title, and interest in the '502 Patent, entitled "User-Worn Device for Noninvasively Measuring a Physiological Parameter of a User," which issued on February 9, 2021. **Exhibit 2**. The '502 Patent issued from U.S. Patent Application Serial No. 17/031,407, filed on September 24, 2020. The '502 Patent is a continuation of a continuation of U.S. Patent Application No. 16/834,538, filed March 30, 2020, which is a continuation of U.S. Patent Application No. 16/725,292, filed December 23, 2019, which is a continuation of U.S. Patent Application No. 16/534,949, filed August 7, 2019, which is a continuation of U.S. Patent Application No. 16/409,515, filed May 10, 2019, which is a continuation of U.S. Patent Application No. 16/261,326, filed January 29, 2019, which is a continuation of U.S. Patent Application No. 16/212,537, filed December 6, 2018, which is a continuation of U.S. Patent Application No. 14/981,290 filed December 28, 2015, which is a continuation of U.S. Patent Application No. 12/829,352 filed July 1, 2010, which is a continuation of U.S. Patent Application No. 12/534,827 filed August 3, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, and 61/091,732 filed August 25, 2008. U.S. Patent Application No. 12/829,352 is also a continuation-in-part of U.S. Patent Application No. 12/497,528 filed July 2, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, 61/078,228 filed July 3, 2008, 61/078,207 filed July 3, 2008, and 61/091,732 filed August 25,

Exhibit 6
-198-

2008.  U.S. Patent Application No. 12/497,528 also claims the benefit of priority under 35 U.S.C. § 120 as a continuation-in-part of the following U.S. Design Patent Application Nos. 29/323,409 filed August 25, 2008 and 29/323,408 filed August 25, 2008.  U.S. Patent Application No. 12/829,352 is also a continuation-in-part of U.S. Patent Application No. 12/497,523 filed July 2, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, 61/078,228 filed July 3, 2008, 61/078,207 filed July 3, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/497,523 also claims the benefit of priority under 35 U.S.C. § 120 as a continuation-in-part of the following U.S. Design Patent Application Nos. 29/323,409 filed August 25, 2008 and 29/323,408 filed August 25, 2008.  On May 25, 2021, the PTO approved a certification of correction for the '502 patent and the certificate of correction issued on July 6, 2021.  Pursuant to Commission Rule 210.12(a)(9)(xi) the expiration date of the '502 Patent is August 25, 2028.

50.     The inventors of the '502 Patent, Jeroen Poeze, Marcelo Lamego, Sean Merritt, Cristiano Dalvi, Hung Vo, Johannes Bruinsma, Ferdyan Lesmana, Massi Joe E. Kiani, and Greg Olsen, assigned to Masimo Laboratories, Inc. the entire right, title, and interest throughout the world in, to and under said improvements in the invention described and claimed in U.S. Patent Application No. 12/534,827 and all divisions and continuations thereof, which includes the '502 Patent.  **Exhibit 7**.  On August 2, 2010, Masimo Laboratories Inc. changed its name to Cercacor Laboratories, Inc.  **Exhibit 7**.  On July 29, 2019, Cercacor assigned to Masimo Corporation, the entire right, title and interest to U.S. Application No. 16/212537 and all continuations thereof, which includes the '502 Patent.  **Exhibit 7**.  Cercacor is the licensee of certain exclusive rights to

19

Exhibit 6
-199-

the '502 Patent.  **Confidential Exhibit 11**.  The '502 Patent is valid, enforceable, and is currently in full force and effect.

51.     Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by: 1) an electronic copy of the prosecution history of the '502 Patent; and 2) a electronic copy of each patent and applicable pages of each technical reference mentioned in the prosecution history.  These materials are included in Appendices C and B, respectively.  Because the '501 Patent, '502 Patent, and '648 Patent are related, there is a substantial overlap of the patents and applicable pages of each technical reference mentioned in the prosecution histories and the copies are provided together in Appendix B.

## 2.     Foreign Counterparts to the '502 Patent

52.     Pursuant to Commission Rule 210.12(a)(9)(v), Complainants submit the attached list of foreign patents, foreign patent applications (not already issued as a patent), and each foreign patent application that has been denied, abandoned, or withdrawn corresponding to the '502 Patent. **Exhibit 12**.  No other foreign patents or patent applications corresponding to the '502 Patent are known to Masimo Corporation.

## 3.     Non-Technical Description of the '502 Patent

53.     Like the '501 Patent, the '502 Patent involves devices for the non-invasive measurement of physiological parameters such as blood oxygen saturation and pulse rate.  The devices include multiple optical sources that emit light at different wavelengths and numerous light detectors.  The light detectors are configured to detect the optical radiation from the tissue and output a respective signal stream responsive to this detection.  This data is then processed by a processing device which outputs a measurement of the physiological parameter.  The '502 Patent includes limitations to novel architecture features to implement the required measurement while limiting any light noise that could impact the accuracy of measurements.  The '502 Patent also

Exhibit 6
-200-

████████████████████████████

includes limitations to novel arrangements of light sources and photodetectors.  The '502 Patent

also contains limitations to processors, network devices, and user interfaces, allowing the device

to be easily used by consumers.

54.     In sum, the invention of the '502 Patent provides a novel combination of features

allowing for the measurement of a user's physiological parameters.  ████████████████

████████████████████████████ .

55.     The foregoing non-technical description of the patented technology is not intended

to limit, define, or otherwise affect the scope of the claimed inventions, nor is the non-technical

description in any way intended to construe or define any word, phrase, term, or limitation recited

in any claim of the '502 Patent.

### C.     U.S. Patent No. 10,945,648

#### 1.     Identification of the Patent and Ownership by Masimo Corporation

56.     Masimo Corporation owns by assignment the entire right, title, and interest in the

'648 Patent, entitled "User-Worn Device for Noninvasively Measuring a Physiological Parameter

of a User," which issued on March 16, 2021.  (*See* **Exhibit 3**).  The '648 Patent issued from U.S.

Patent Application Serial No. 17/031,316, filed on September 24, 2020.  The '648 Patent is a

continuation of is a continuation of U.S. Patent Application No. 16/834,538, filed March 30, 2020,

which is a continuation of U.S. Patent Application No. 16/725,292, filed December 23, 2019,

which is a continuation of U.S. Patent Application No. 16/534,949, filed August 7, 2019, which is

a continuation of U.S. Patent Application No. 16/409,515, filed May 10, 2019, which is a

continuation of U.S. Patent Application No. 16/261,326, filed January 29, 2019, which is a

continuation of U.S. Patent Application No. 16/212,537, filed December 6, 2018, which is a

continuation of U.S. Patent Application No. 14/981,290 filed December 28, 2015, which is a

Exhibit 6
-201-

continuation of U.S. Patent Application No. 12/829,352 filed July 1, 2010, which is a continuation of U.S. Patent Application No. 12/534,827 filed August 3, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/829,352 is also a continuation-in-part of U.S. Patent Application No. 12/497,528 filed July 2, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, 61/078,228 filed July 3, 2008, 61/078,207 filed July 3, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/497,528 also claims the benefit of priority under 35 U.S.C. § 120 as a continuation-in-part of the following U.S. Design Patent Application Nos. 29/323,409 filed August 25, 2008 and 29/323,408 filed August 25, 2008.  U.S. Patent Application No. 12/829,352 is also a continuation-in-part of U.S. Patent Application No. 12/497,523 filed July 2, 2009, which claims the benefit of priority under 35 U.S.C. § 119(e) of the following U.S. Provisional Patent Application Nos. 61/086,060 filed August 4, 2008, 61/086,108 filed August 4, 2008, 61/086,063 filed August 4, 2008, 61/086,057 filed August 4, 2008, 61/078,228 filed July 3, 2008, 61/078,207 filed July 3, 2008, and 61/091,732 filed August 25, 2008.  U.S. Patent Application No. 12/497,523 also claims the benefit of priority under 35 U.S.C. § 120 as a continuation-in-part of the following U.S. Design Patent Application Nos. 29/323,409 filed August 25, 2008 and 29/323,408 filed August 25, 2008.  A certificate of correction issued on the '648 Patent on April 20, 2021.  Pursuant to Commission Rule 210.12(a)(9)(xi) the expiration date of the '648 Patent is August 25, 2028.

Exhibit 6
-202-

57.     The inventors of the '648 Patent, Jeroen Poeze, Marcelo Lamego, Sean Merritt, Cristiano Dalvi, Hung Vo, Johannes Bruinsma, Ferdyan Lesmana, Massi Joe E. Kiani, and Greg Olsen, assigned to Masimo Laboratories, Inc. the entire right, title, and interest throughout the world in, to and under said improvements in the invention described and claimed in U.S. Patent Application No. 12/534,827 and all divisions and continuations thereof, which includes the '648 Patent.  **Exhibit 8**.  On August 2, 2010, Masimo Laboratories Inc. changed its name to Cercacor Laboratories, Inc.  **Exhibit 8**.  On July 29, 2019, Cercacor assigned to Masimo Corporation, the entire right, title and interest to U.S. Application No. 16/212537 and all continuations thereof, which includes the '648 Patent.  **Exhibit 8**.  Cercacor is the licensee of certain exclusive rights to the '648 Patent.  **Confidential Exhibit 11**.  The '648 Patent is valid, enforceable, and is currently in full force and effect.

58.     Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by: 1) an electronic copy of the prosecution history of the '648 Patent; and 2) a electronic copy of each patent and applicable pages of each technical reference mentioned in the prosecution history.  These materials are included in Appendices D and B, respectively.  Because the '501 Patent, '502 Patent, and '648 Patent are related, there is a substantial overlap of the patents and applicable pages of each technical reference mentioned in the prosecution histories and the copies are provided together in Appendix B.

### 2.     Foreign Counterparts to the '648 Patent

59.     Pursuant to Commission Rule 210.12(a)(9)(v), Complainants submit the attached list of foreign patents, foreign patent applications (not already issued as a patent), and each foreign patent application that has been denied, abandoned, or withdrawn corresponding to the '648 Patent. **Exhibit 12**.  No other foreign patents or patent applications corresponding to the '648 Patent are known to Masimo Corporation.

Exhibit 6
-203-

### 3.   Non-Technical Description of the '648 Patent

60.     Like the '501 and '502 Patents, the '648 Patent involves devices for the non-invasive measurement of physiological parameters such as blood oxygen saturation and pulse rate. The devices include multiple optical sources that emit light at different wavelengths and numerous light detectors.  The light detectors are configured to detect the optical radiation from the tissue and output a respective signal stream responsive to this detection.  This data is then processed by a processing device which outputs a measurement of the physiological parameter.  The '648 Patent includes limitations to novel architecture features to implement the required measurement while limiting any light noise that could impact the accuracy of measurements.  The '648 Patent also includes limitations to novel arrangements of light sources and photodetectors.  The '648 Patent also contains limitations to processors, network devices, and user interfaces, allowing the device to be easily used by consumers.

61.     In sum, the invention of the '648 Patent provides a novel combination of features allowing for the measurement of a user's physiological parameters.  █████████████████████ ██████████████████████████████████████████████████████.

62.     The foregoing non-technical description of the patented technology is not intended to limit, define, or otherwise affect the scope of the claimed inventions, nor is the non-technical description in any way intended to construe or define any word, phrase, term, or limitation recited in any claim of the '648 Patent.

### D.   U.S. Patent No. 10,687,745

#### 1.   Identification of the Patent and Ownership by Masimo Corporation

63.     Masimo Corporation owns by assignment the entire right, title, and interest in the '745 Patent, entitled "Physiological Monitoring Devices, Systems, and Methods," which issued on

Exhibit 6
-204-

June 23, 2020.  (*See* **Exhibit 4**).  The '745 Patent issued from U.S. Patent Application Serial No. 16/835,772, filed on March 31, 2020.  The '745 Patent is a continuation of U.S. Patent Application No. 16/791,963, filed February 14, 2020, which is a continuation of U.S. Patent Application No. 16/532,065 filed August 5, 2019, which is a continuation of U.S. Patent Application No. 16/226,249 filed December 19, 2018, which is a continuation of U.S. Patent Application No. 15/195,199 filed June 28, 2016, which claims priority benefit under 35 U.S.C. § 119(e) from U.S. Provisional Application No. 62/188,430, filed July 2, 2015.  A certificate of correction issued on the '745 Patent on September 22, 2020.  Pursuant to Commission Rule 210.12(a)(9)(xi) the expiration date of the '745 Patent is June 28, 2029.

64.     The inventor of the '745 Patent, Ammar Al-Ali, assigned to Masimo Corporation the entire right, title, and interest in in U.S. Patent Application No. 15/195199, and all divisions and continuations thereof, which includes the '745 Patent.  **Exhibit 9**.  Cercacor is the licensee of certain exclusive rights to the '745 Patent.  **Confidential Exhibit 11**.  The '745 Patent is valid, enforceable, and is currently in full force and effect.

65.     Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by: 1) an electronic copy of the certified prosecution history of the '745 Patent; and 2) an electronic copy of each patent and applicable pages of each technical reference mentioned in the prosecution history.  These materials are included in Appendices E and F, respectively.

### 2.     Foreign Counterparts to the '745 Patent

66.     Pursuant to Commission Rule 210.12(a)(9)(v), Complainants submit the attached list of foreign patents, foreign patent applications (not already issued as a patent), and each foreign patent application that has been denied, abandoned, or withdrawn corresponding to the '745 Patent.

Exhibit 6
-205-

See **Exhibit 12**.  No other foreign patents or patent applications corresponding to the '745 Patent are known to Masimo Corporation.

### 3.      Non-Technical Description of the '745 Patent

67.    The '745 Patent involves devices for the non-invasive measurement of physiological parameters such as blood oxygen saturation and pulse rate.  The devices include multiple optical sources that emit light at different wavelengths and numerous light detectors.  The devices also include optical transmission materials configured to change the shape of the emitted light or diffusers to spread the light.  The devices also contain light blocks to inhibit light from the optical sources from reaching the detectors before being attenuated by the user's skin.  The light detectors are configured to detect the optical radiation from the tissue and output a respective signal stream responsive to this detection.  This data is then processed by a processing device which outputs a measurement of the physiological parameter.  The '745 Patent includes limitations to novel architecture features to implement the required measurement while limiting any light noise that could impact the accuracy of measurements.  The '745 Patent also includes limitations to novel arrangements of light sources and photodetectors.

68.    In sum, the invention of the '745 Patent provides a novel combination of features allowing for the measurement of a user's physiological parameters.

69.    The foregoing non-technical description of the patented technology is not intended to limit, define, or otherwise affect the scope of the claimed inventions, nor is the non-technical description in any way intended to construe or define any word, phrase, term, or limitation recited in any claim of the '745 Patent.

### E.      U.S. Patent No. 7,761,127

### 1.      Identification of the Patent and Ownership by Cercacor

Exhibit 6
-206-

70.     Cercacor owns by assignment the entire right, title, and interest in the '127 Patent, entitled "Multiple Wavelength Sensor Substrate," which issued on July 20, 2010.  **Exhibit 5**.  The '127 Patent issued from U.S. Patent Application Serial No. 11/366,209, filed on March 1, 2006.  The '127 Patent claims priority to Provisional Application No. 60/657,596, filed on March 1, 2005, Provisional Application No. 60/657,281, filed on March 1, 2005, Provisional Application No. 60/657,268, filed on March 1, 2005, and Provisional Application No. 60/657,759, filed on March 1, 2005.  Certificates of correction issued on the '127 Patent on January 4, 2011 and February 1, 2011.  Pursuant to Commission Rule 210.12(a)(9)(xi) the expiration date of the '127 Patent is April 28, 2029.

71.     The inventors of the '127 Patent, Ammar Al-Ali, Mohamed Diab, Marcelo Lamego, James Coffin, and Yassir Abdul-Hafiz, assigned to Masimo Laboratories, Inc. the entire right, title, and interest in U.S. Patent Application No. 11/366,209, and all patents granted thereof, which includes the '127 Patent.  **Exhibit 10**.  On August 2, 2010, Masimo Laboratories, Inc. changed its name to Cercacor Laboratories, Inc.  **Exhibit 10**.  Masimo is a licensee of certain exclusive rights to the '127 Patent.  **Confidential Exhibit 11**.  The '127 Patent is valid, enforceable, and is currently in full force and effect.

72.     Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by: 1) an electronic copy of the certified prosecution history of the '127 Patent; and 2) an electronic copy of each patent and applicable pages of each technical reference mentioned in the prosecution history.  These materials are included in Appendices G and H, respectively.

## 2.     Foreign Counterparts to the '127 Patent

73.     Pursuant to Commission Rule 210.12(a)(9)(v), Complainants submit the attached list of foreign patents, foreign patent applications (not already issued as a patent), and each foreign

27

Exhibit 6
-207-

patent application that has been denied, abandoned, or withdrawn corresponding to the '127 Patent.

**Exhibit 12**. No other foreign patents or patent applications corresponding to the '127 Patent are known to Masimo Corporation.

### 3.   Non-Technical Description of the '127 Patent

74.   The '127 Patent discloses and involves a physiological sensor for the non-invasive measurement of physiological parameters such as blood oxygen saturation and pulse rate. The sensor includes a thermal mass, a plurality of light emitting sources operating at a plurality of wavelengths thermally coupled to the thermal mass, a temperature sensor to determine the bulk temperature of the thermal mass, and a detector capable of detecting light emitted from the light emitting sources after attenuation by the user's skin. Based on the bulk temperature of the thermal mass, the sensor is able to compensate for shifts in the LED wavelengths due to temperature.

75.   In sum, the '127 Patent provides a novel combination of features allowing for the measurement of a user's physiological parameters. Confidential samples of rainbow® sensors that embody the claims of the '127 Patent are available upon request.

76.   The foregoing non-technical description of the patented technology is not intended to limit, define, or otherwise affect the scope of the claimed inventions, nor is the non-technical description in any way intended to construe or define any word, phrase, term, or limitation recited in any claim of the '127 Patent.

### F.   Licensees

77.   Masimo has licensed certain exclusive rights to the Masimo Patents to Cercacor. **Confidential Exhibit 11**. Cercacor has licensed certain exclusive rights to the Cercacor Patent to Masimo. **Confidential Exhibit 11**. There are no other licensees to the Asserted Patents.

Exhibit 6
-208-

## VI.   <u>UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENT</u>

78.     Respondent manufactures, markets, sells for importation, imports and/or sells after

importation into the United States products that directly infringe the '501 Patent, the '502 Patent,

the '648 Patent, the '745 Patent, and the '127 Patent, either literally or under the doctrine of

equivalents.  Apple also induces the infringement of claims 20-24 and 26-27 of the '745 Patent by

recommending, encouraging, and/or suggesting that consumers use their Apple Watch Series 6

with the consumer's iPhone in an infringing manner.   On information and belief, Apple has

knowledge of the '745 Patent because it monitors Masimo's patent filings.  Apple will also have

knowledge of the '745 Patent before the issuance of any requested relief in this Investigation, from

the filing of this lawsuit itself and service of this complaint.

79.     Respondent's Apple Watch Series 6 are sold under the below model names and

numbers.

| Model Name | Model Number |
|---|---|
| Apple Watch Series 6 (GPS) 40 mm case | A2291 |
| Apple Watch Series 6 (GPS) 44 mm case | A2292 |
| Apple Watch Nike (GPS) 40 mm case | A2291 |
| Apple Watch Nike (GPS) 44 mm case | A2292 |
| Apple Watch Series 6 (GPS + Cellular) Aluminum 40 mm case | A2293 |
| Apple Watch Series 6 (GPS + Cellular) Aluminum 44 mm case | A2294 |
| Apple Watch Nike (GPS + Cellular) 40 mm case | A2293 |
| Apple Watch Nike (GPS + Cellular) 44 mm case | A2294 |
| Apple Watch Series 6 (GPS + Cellular) Stainless Steel 44 mm case | A2293 |
| Apple Watch Series 6 (GPS + Cellular) Stainless Steel 44 mm case | A2294 |

Exhibit 6
-209-

| Model Name | Model Number |
|---|---|
| Apple Watch Hermes (GPS + Cellular) 40 mm case | A2293 |
| Apple Watch Hermes (GPS + Cellular) 44 mm case | A2294 |
| Apple Watch Edition (GPS + Cellular) Titanium 40 mm case | A2293 |
| Apple Watch Edition (GPS + Cellular) Titanium 44 mm case | A2294 |

80.     Photographs of a representative Apple Watch Series 6 (specifically Model No. 2291) are attached to this Complaint as **Exhibit 13**.  A copy of information regarding the Apple Watch Series 6 from Apple's website is attached hereto as **Exhibit 14**.  Samples of the Apple Watch Series 6 can be made available upon request.

81.     On information and belief, Respondent and others on its behalf manufacture the Accused Products at least in China, and then import them into the United States, sell them for importation into the United States, and/or sell them within the United States after importation.

82.     These acts of Respondent constitute infringement of the Asserted Patents.

83.     Claim charts demonstrating how a representative Apple Watch Series 6 infringes the '501 Patent, the '502 Patent, the '648 Patent,'745 Patent, and the '127 Patent are attached as **Confidential Exhibits 15, 16, 17, 18, and 19**, respectively.  While a representative Apple Watch Series 6 is shown in the claim charts in **Confidential Exhibits 15, 16, 17, 18, and 19**, Respondent does not distinguish in any relevant manner between other model numbers of the Apple Watch Series 6 in their marketing or promotional materials, and Masimo alleges that all of Respondent's Apple Watch Series 6 identified in ¶79 above infringe at least one Asserted Claim of the Asserted Patents.

Exhibit 6
-210-

84.     Masimo has not licensed or otherwise authorized Respondent to make, use, sell, offer to sell, or import the Accused Products.

85.     Respondent has sought to capitalize on Masimo's extensive research and development efforts.

## VII.  THE DOMESTIC INDUSTRY RELATED TO ASSERTED PATENTS

86.     A domestic industry exists or is in the process of being established as defined by 19 U.S.C. §§ 1337(a)(2)–(3) relating to Masimo's significant investment in plant and equipment; significant employment of labor or capital; research and development activities; and substantial investment in exploitation of the patents, including engineering with respect to Masimo's physiological measurement devices and monitors.  With respect to the '501 Patent, the '502 Patent, the '648 Patent, and the '745 Patent, Masimo's activities in the United States with respect to ███ ████████████████████████████████████████—constitute a domestic industry for purposes of Section 337.  To the extent it is determined that a domestic industry ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ is protected by one or more claims of each of the '501 Patent, the '502 Patent, the '648 Patent, and the '745 Patent.

87.     With respect to the '127 Patent, Masimo's activities in the United States with respect to at least its rainbow® sensor technology constitute a domestic industry for purposes of Section 337.  Masimo's rainbow® sensors—including the, RD rainbow® Set-2, rainbow® R1, rainbow® R25, rainbow® R20, rainbow® DCI SC 200, rainbow® DCI SC 400, rainbow® DCI SC 1000, rainbow® DCI mini SC-200, rainbow® DCI mini SC-400, rainbow® DCI mini SC-1000,

Exhibit 6
-211-

rainbow® Super DCI mini SC-200, rainbow® Super DCI mini SC-400, rainbow® Super DCI mini-SC-1000, rainbow® DCI, rainbow® DCI-dc, RD rainbow® 8 λ SpCO Adhesive Sensor, LNCS-II™ rainbow® DCI 8λ SpHb, LNCS-II™ rainbow® DCIP® 8λ SpHb, LNCS-II™ rainbow® DCI® 8λ SpCO, and LNCS-II™ rainbow® DCIP® 8λ SpCO—are protected by at least one claim of the '127 Patent.

### A.    <u>Technical Prong</u>

88.    Masimo has designed and developed its domestic industry products through its extensive research and development efforts based almost entirely in the United States.  Moreover, Masimo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the United States and manufactures a material amount of the components of its rainbow® sensors in the United States. As set forth in more detail herein, Masimo's domestic industry products incorporate the inventions claimed in one or more claims of the Asserted Patents.

89.    Drawings, photographs, or other visual representations of representative Masimo domestic industry products (specifically, ▮▮▮▮▮▮▮▮▮ and certain rainbow® sensors) are attached hereto as **Confidential Exhibit 20 and Confidential Exhibit 21**.  Claim charts showing how a representative Masimo domestic industry product practices exemplary claims of the '501 Patent, the '502 Patent, the '648 Patent, the '745 Patent, and the '127 Patent are attached hereto as **Confidential Exhibits 15, 16, 17, 18 and 19**, respectively.  Additional information regarding the domestic industry products is found in the Declaration of Bilal Muhsin, attached hereto as **Confidential Exhibit 27**.

### B.    <u>Economic Prong</u>

90.    The domestic industry in this case is based on significant investments Masimo has made and/or plans to make and activities Masimo has undertaken and/or plans to undertake in the

Exhibit 6
-212-

United States relating to products protected by one or more claims of the Asserted Patents. These investments and activities include research and development, manufacturing, testing, and engineering for the Masimo domestic industry products. Specific, non-limiting examples of Masimo's substantial investments and activities related to the Asserted Patents are set forth in the confidential declaration of Micah Young, attached to this complaint as **Confidential Exhibit 28**.

91.     Masimo employs a significant number of employees in its U.S facilities in Irvine, California. These employees devote substantial personnel-hours toward the research and development, testing and engineering for the Masimo domestic industry products. The confidential declaration of Micah Young sets forth details regarding the investments it has made in these U.S. employees.

92.     Masimo also invests capital toward manufacturing and research and development for products protected by the Asserted Patents. The confidential declaration of Micah Young provides additional details regarding Masimo's capital investments.

93.     In addition, Masimo has made substantial investments in plant and equipment in the United States. Masimo's facilities in Irvine, California, houses activities for research and development, manufacturing, testing and engineering for the Masimo domestic industry products. Masimo also owns a facility in New Hampshire where manufacturing activities for its rainbow® sensors take place. The confidential declaration of Micah Young includes further non-limiting examples of Masimo's investments in this category.

94.     To the extent it is determined that a domestic industry does not currently exist, Masimo is in the process of establishing a domestic industry with respect to the Masimo Patents because it is actively engaged in the steps leading to the exploitation of its intellectual property rights, and there is a significant likelihood that an industry will be established in the United States

Exhibit 6
-213-

in the future ███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████.  Further, non limiting examples regarding the active steps taken by Masimo to establish a domestic industry are included in the confidential declaration of Micah Young filed herewith as **Confidential Exhibit 28**.

## VIII.   <u>SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE</u>

95.     Respondent, and/or others on its behalf, manufactures the Accused Products at least in China, and then imports them into the United States, sells them for importation into the United States, and/or sells them after importation into the United States.  Respondent sells and offers for sale the Accused Products directly to customers in the United States.  Respondent stated in a press release dated September 15, 2020, that it was introducing the Series 6 in the United States for sale starting on September 18, 2020.  **Exhibit 29**

96.     Prior to filing this Complaint, a representative Apple Watch Series 6 product was purchased on April 19, 2021, in the United States.  A copy of the invoice of this purchase is attached hereto as **Confidential Exhibit 30**.  The packaging of this Accused Product indicates that it was made outside the United States.  Photographs of the product packaging for this Apple Watch product, showing that it was made in China, are attached hereto as **Exhibit 31**.

97.     In addition, Apple's 10K filed with the SEC on January 28, 2021 states that "[s]ubstantially all of the Company's hardware products are manufactured by outsourcing partners that are located primarily in Asia, with some Mac computers manufactured in the U.S. and Ireland."  **Exhibit 32**.

Exhibit 6
-214-

## IX. <u>CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES</u>

98.     Upon information and belief, the Accused Products may be classified under at least the following heading of the Harmonized Tariff Schedules of the United States: 8517.62.0090. This HTS identification is illustrative and not exhaustive.  The identification is not intended to limit the scope of the Investigation, nor is it intended to restrict the scope of any exclusion order or other remedy ordered by the Commission.

## X. <u>RELATED LITIGATION</u>

99.     On January 9, 2020, Masimo Corp. and Cercacor filed suit in the United States District Court for the Central District of California, Case No. 8:20-cv-00048.  In that case, Complainants assert that Respondent Apple has, *inter alia*, engaged in trade secret misappropriation and has infringed patents not asserted in this complaint by the sale of the certain products, including the Apple Watch Series 6.  Complainants also seek a declaration of ownership of several patents and applications filed by Apple.  That case is currently pending before the district court, but Complainants' patent infringement claims are stayed pending resolution of the below referenced *inter partes* review proceedings.

100.     Respondent has filed numerous petitions for *inter partes* review of the patents involved in Case No. 8:20-cv-0048, none of which are asserted in this complaint:  IPR2020-01520 (Instituted March 2, 2021); IPR2021-00208 (Instituted June 3, 2021); IPR2020-01521 (Instituted April 14, 2021); IPR2021-00193 (Instituted June 3, 2021); IPR2021-00195 (Instituted June 3, 2021); IPR2021-00209 (Instituted June 3, 2021); IPR2020-01524 (Instituted April 16, 2021); IPR2020-01722 (Instituted May 12, 2021); IPR2020-01723 (Institution denied May 12, 2021); IPR2020-01536 (Instituted March 2, 2021); IPR2020-01537 (Instituted March 2, 2021); IPR2020-

Exhibit 6
-215-

01538 (Instituted March 2, 2021); IPR2020-01539 (Instituted March 2, 2021); IPR2020-01526 (Instituted April 16, 2021); and IPR2020-01523 (Instituted April 14, 2021).

101.    There have been no other foreign or domestic court or agency litigations involving any of the Asserted Patents.

## XI.  **REQUESTED RELIEF**

102.    WHEREFORE, by reason of the foregoing, Complainants request that the United States International Trade Commission:

a)  institute an immediate investigation pursuant to 19 U.S.C. § 1337 into the violations of that section based on Respondent's unlawful importation into the United States, sale for importation into the United States, and/or sale in the United States after importation of certain light-based physiological measurement devices and components thereof that infringe one or more claims of U.S. Patent Nos. 10,912,501, 10,912,502, 10,945,648, 10,687,745, and/or 7,761,127;

b)  schedule and conduct a hearing pursuant to Section 337(c), for the purposes of receiving evidence and hearing argument concerning whether there has been a violation of Section 337;

c)  determine that there has been a violation of Section 337 by Respondent;

d)  issue a permanent exclusion order, pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States all of Respondent's light-based physiological measurement devices and components thereof, including Apple Watch Series 6, that infringe one or more claims of U.S. Patent Nos. 10,912,501, 10,912,502, 10,945,648, 10,687,745, and/or 7,761,127;

Exhibit 6
-216-

e)  issue a permanent cease and desist order, pursuant to 19 U.S.C. § 1337(f), directing Respondent to cease and desist from importing, marketing, advertising, demonstrating, warehousing of inventory for distribution, sale, or use of certain light-based physiological measurement devices and components thereof that infringe one or more claims of U.S. Patent Nos. 10,912,501, 10,912,502, 10,945,648, 10,687,745, and/or 7,761,127;

f)  impose a bond upon Respondent should Respondent continue to import infringing articles during the 60-day Presidential Review period pursuant to 19 U.S.C. § 1337(j); and

g)  grant such other and further relief as the Commission deems appropriate and just under the law, based on the facts complained of herein and determined by the investigation.

Respectfully submitted,

Dated:  July 7, 2021

By: /s/ *Jonathan E. Bachand*
Jonathan E. Bachand
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Ave NW STE 900
Washington, DC 20006
Telephone: 202-640-6400
Facsimile: 949-760-9502

Stephen C. Jensen
Joseph R. Re
Sheila N. Swaroop
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Exhibit 6
-217-

## <u>VERIFICATION OF FIRST AMENDED COMPLAINT</u>

I, Jonathan E. Bachand, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a),

under penalty of perjury, that the following statements are true:

1.      I am Counsel for Complainants Masimo Corporation and Cercacor Laboratories,

Inc. and I am duly authorized to sign the First Amended Complaint on behalf of Complainants;

2.      I have read the foregoing First Amended Complaint;

3.      To the best of my knowledge, information, and belief, based upon reasonable

inquiry, the foregoing First Amended Complaint is well-founded in fact and is warranted by

existing law or by a non-frivolous argument for the extension, modification, or reversal of existing

law, or the establishment of new law;

4.      The allegations and other factual contentions have evidentiary support or are likely

to have evidentiary support after a reasonable opportunity for further investigation or discovery;

and

5.      The foregoing First Amended Complaint is not being filed for an improper purpose,

such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

Executed this 7th day of July, 2021.

/s/ *Jonathan E. Bachand*
Jonathan E. Bachand
Counsel for Complainants
Masimo Corporation and Cercacor
Laboratories, Inc.

35273626

44

Exhibit 6
-218-

# Notice of Receipt

## Document Filing Information

**Document ID:**
**746186**



**Document Type:**
Complaint
**Security Level:**
Public
**Document Title:**
Cover Letter attaching Amended Complaint, Request for Confidential Treatment, Amended Complaint, Exhibit 2, Appendix C
**Document Title:**
**Document Date:**
07/07/2021
**Official Received Date:**
07/07/2021 03:15 PM
**System Received Date:**
07/07/2021 03:15 PM
**Party Has Been Served:**
No
**APO Release Flag:**
No

## Investigation Information

**Investigation Number**
NR-004
**Investigation Phase**
New Request
**Investigation Type**
Sec 337
**Investigation Title**
Sec 337 New Request

## Submitter Information

**Filed By:**
Jonathan Bachand
**Firm/Organization:**
Knobbe, Martens, Olson & Bear
**Submitted By:**
JONATHANBACHAND
**On Behalf Of:**

Exhibit 6
-219-

Masimo Corporation and Cercacor Laboratories

## Attachments

| TITLE | FILE NAME | SIZE | PAGE COUNT | DATE CREATED |
| --- | --- | --- | --- | --- |
| Public Cover Letter, Request for Confidential Treatment, Amended Complaint | [PUBLIC] Cover Letter, Req for Conf. Treatment, Amended Complaint.pdf | 1.20 MB | 48 | 07/07/2021 03:00 PM |
| Exhibit 2 - USP10,912,502 | Exhibit 02 - USP10,912,502 with cert of correction.pdf | 6.08 MB | 111 | 07/07/2021 03:01 PM |
| Appendix C - File History for USP10,912,502 | Appendix C - FH of USP 10,912,502 .pdf | 24.63 MB | 574 | 07/07/2021 03:03 PM |

## Paper Copies Required

**Copies Required:**
8
**Delivery Requirement:**
Simultaneous with any filing

Exhibit 6
-220-

EXHIBIT 7

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

| In the Matter of | |
|---|---|
| CERTAIN LIGHT-BASED PHYSIOLOGICAL MEASUREMENT DEVICES AND COMPONENTS THEREOF | Inv. No. 337-TA-1276 |

## NOTICE OF INSTITUTION OF INVESTIGATION

Institution of Investigation Pursuant to 19 U.S.C. 1337

**AGENCY**:  U.S. International Trade Commission

**ACTION**:  Notice

**SUMMARY**:  Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on June 30, 2021, under section 337 of the Tariff Act of 1930, as amended, on behalf of Masimo Corporation of Irvine, California and Cercacor Laboratories, Inc. of Irvine, California.  An amended complaint was filed on July 12, 2021.  A supplement was filed on July 19, 2021.  The complaint, as amended, alleges violations of section 337 based upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain light-based physiological measurement devices and components thereof by reason of infringement of certain claims of U.S. Patent No. 10,912,501 ("the '501 patent"); U.S. Patent No. 10,912,502 ("the '502 patent"); U.S. Patent 10,945,648 ("the '648 patent"); U.S. Patent No. 10,687,745 ("the '745 patent"); and U.S. Patent No. 7,761,127 ("the '127 patent").  The amended complaint further alleges that an industry in the United States exists and/or is in the process of being established as required by the applicable Federal Statute.

The complainants request that the Commission institute an investigation and, after the investigation, issue a limited exclusion order and a cease and desist order.

**ADDRESSES**:  The complaint, as amended, except for any confidential information contained therein, may be viewed on the Commission's electronic docket (EDIS) at https://edis.usitc.gov. For help accessing EDIS, please email EDIS3Help@usitc.gov.  Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205-1810.  Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at (202) 205-2000. General information concerning the Commission may also be obtained by accessing its internet server at https://www.usitc.gov.

Exhibit 7
-221-

**FOR FURTHER INFORMATION CONTACT**:  Katherine Hiner, Office of Docket Services, U.S. International Trade Commission, telephone (202) 205-1802.

**SUPPLEMENTARY INFORMATION**:

**AUTHORITY**:  The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 C.F.R. 210.10 (2020).

**SCOPE OF INVESTIGATION**:  Having considered the complaint, the U.S. International Trade Commission, on August 13, 2021, **ORDERED THAT** –

(1)  Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain products identified in paragraph (2) by reason of infringement of one or more of claims 1-9 and 11-30 of the '501 patent; claims 1-2, 4-6, 8-12, 14-22, 24-26, and 28-30 of the '502 patent; claims 1-17 and 19-30 of the '648 patent; claims 1-6, 8-9, 11, 14, 20-24, and 26-27 of the '745 patent; and claims 7-9 of the '127 patent; and whether an industry in the United States exists and/or is in the process of being established as required by subsection (a)(2) of section 337;

(2)  Pursuant to section 210.10(b)(1) of the Commission's Rules of Practice and Procedure, 19 C.F.R. 210.10(b)(1), the plain language description of the accused products or category of accused products, which defines the scope of the investigation, is "wearable electronic devices with light-based pulse oximetry functionality and components thereof";

(3)  For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a)  The complainants are:

Masimo Corporation
52 Discovery
Irvine, CA 92618

Cercacor Laboratories, Inc.
15750 Alton Pkwy
Irvine, CA 92618

(b)  The respondent is the following entity alleged to be in violation of section 337, and is the party upon which the complaint is to be served:

Apple Inc.
One Apple Park Way
Cupertino, CA 95014

Exhibit 7
-222-

(4)  For the investigation so instituted, the Chief Administrative Law Judge, U.S. International Trade Commission, shall designate the presiding Administrative Law Judge.

The Office of Unfair Import Investigations will not participate as a party in this investigation.

Responses to the complaint and the notice of investigation must be submitted by the named respondent in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 C.F.R. 210.13.  Pursuant to 19 C.F.R. 201.16(e) and 210.13(a), as amended in 85 Fed. Reg. 15798 (March 19, 2020), such responses will be considered by the Commission if received not later than 20 days after the date of service by the complainants of the complaint and the notice of investigation.  Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of the respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

Lisa R. Barton
Secretary to the Commission

Issued: August 13, 2021

Exhibit 7
-223-

**CERTAIN LIGHT-BASED PHYSIOLOGICAL**       **Inv. No. 337-TA-1276**
**MEASUREMENT DEVICES AND COMPONENTS**
**THEREOF**

Certificate of Service – Page 1

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **INSTITUTION OF INVESTIGATION** has been served upon the following parties as indicated, on **August 13, 2021**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

**Complainants:**

Masimo Corporation
52 Discovery
Irvine, CA 92618

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification
of Availability for Download

Cercacor Laboratories, Inc.
15750 Alton Pkwy
Irvine, CA 92618

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification
of Availability for Download

**On Behalf of Complainants:**

Jonathan Bachand, Esq.
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1717 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006
Email: Jonathan.Bachand@knobbe.com

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification
of Availability for Download

**Respondent:**

Apple Inc.
One Apple Park Way
Cupertino, CA 95014

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Service to Be

Exhibit 7
-224-

**CERTAIN LIGHT-BASED PHYSIOLOGICAL**                    **Inv. No. 337-TA-1276**
**MEASUREMENT DEVICES AND COMPONENTS**
**THEREOF**

Certificate of Service – Page 2

Completed by Complainants

**Government Agencies:**

Lynda Marshall                                      ☐ Via Hand Delivery
International Section, Antitrust Division           ☐ Via Express Delivery
U.S. Department of Justice                          ☐ Via First Class Mail
450 5th Street NW, Room 11000                       ☒ Other: Email Notification
Washington, DC 20530                                of Availability for Download

U.S. Bureau of Customs and Border Protection        ☐ Via Hand Delivery
Intellectual Property Rights Branch                 ☐ Via Express Delivery
Mint Annex Building                                 ☐ Via First Class Mail
799 9th Street, NW, 7th floor                       ☒ Other: Email Notification
Washington, DC 20229                                of Availability for Download

Elizabeth Kraus, Deputy Director                    ☐ Via Hand Delivery
International Antitrust, Office of International Affairs  ☐ Via Express Delivery
Federal Trade Commission                            ☐ Via First Class Mail
600 Pennsylvania Avenue, Room 498                   ☒ Other: Email Notification
Washington, DC 20580                                of Availability for Download

Dale D. Berkley, Ph.D., J.D.                        ☐ Via Hand Delivery
Office of the General Counsel, PHD, NIH Branch      ☐ Via Express Delivery
National Institutes of Health                       ☐ Via First Class Mail
31 Center Drive                                     ☒ Other: Email Notification
Bldg. 31, Rm. 47                                    of Availability for Download
Bethesda, MD 20892

Exhibit 7
-225-



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Jonathan E. Bachand
Knobbe, Martens, Olson & Bear, LLP
1717 Pennsylvania Ave., NW, Suite 900
Washington, DC 20006

**Re:** **Certain Light-Based Physiological Measurement Devices and Components Thereof**
**Inv. No. 337-TA-1276**

Dear Jonathan E. Bachand:

This letter is to advise you that the U.S. International Trade Commission has instituted an investigation pursuant to section 337 of the Tariff Act of 1930 (19 U.S.C. 1337). A copy of the Commission's notice of investigation is enclosed. Also enclosed is the Section 337 Mediation Program brochure. After reviewing the brochure, please sign and return the enclosed certification of receipt.

Sincerely,

Lisa R. Barton
Secretary

Enclosures:
1. Notice of Investigation
2. Publication Regarding the Section 337 Mediation Program
3. Certification of Receipt of Mediation Materials

Exhibit 7
-226-



# UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Masimo Corporation
52 Discovery
Irvine, CA 92618

**Re:   Certain Light-Based Physiological Measurement Devices and Components Thereof
Inv. No. 337-TA-1276**

Dear Sir/Madam:

This letter is to advise you that the U.S. International Trade Commission has instituted an investigation pursuant to section 337 of the Tariff Act of 1930 (19 U.S.C. 1337). A copy of the Commission's notice of investigation is enclosed. Also enclosed is the Section 337 Mediation Program brochure. After reviewing the brochure, please sign and return the enclosed certification of receipt.

Sincerely,

Lisa R. Barton
Secretary

Enclosures:
1. Notice of Investigation
2. Publication Regarding the Section 337 Mediation Program
3. Certification of Receipt of Mediation Materials

Exhibit 7
-227-



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Cercacor Laboratories, Inc.
15750 Alton Pkwy
Irvine, CA 92618

**Re:**   **Certain Light-Based Physiological Measurement Devices and Components Thereof**
**Inv. No. 337-TA-1276**

Dear Sir/Madam:

This letter is to advise you that the U.S. International Trade Commission has instituted an investigation pursuant to section 337 of the Tariff Act of 1930 (19 U.S.C. 1337).  A copy of the Commission's notice of  investigation is enclosed.  Also enclosed is the Section 337 Mediation Program brochure.  After reviewing the brochure, please sign and return the enclosed certification of receipt.

Sincerely,

Lisa R. Barton
Secretary

Enclosures:
1. Notice of Investigation
2. Publication Regarding the Section 337 Mediation Program
3. Certification of Receipt of Mediation Materials

Exhibit 7
-228-



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436
August 13, 2021

Apple Inc.
One Apple Park Way
Cupertino, CA 95014

Re:     **Certain Light-Based Physiological Measurement Devices and Components Thereof
Inv.  No.  337-TA-1276**

Dear Sir/Madam:

This letter is to advise you that the United States International Trade Commission has instituted an investigation pursuant to Section 337 of the Tariff Act of 1930 (19 U.S.C. 1337). **Apple Inc.** is a named respondent in this investigation.

We are hereby serving you with a copy of the Complaint and the Notice of Investigation issued in this matter.  Enclosed is a copy of the Code of Federal Regulations.  Also enclosed is a the Section 337 Mediation Program brochure.  After reviewing this brochure, please sign and return the enclosed certification of receipt.

Please note that the Notice requires a response to the allegations in the Complaint and the response must be received not later than twenty (20) days after the date of service of the Complaint.  Failure to file a response may result in inferences being drawn against your interests.

Sincerely,

Lisa R. Barton
Secretary

`

Enclosures:
1. Complaint
2. Notice of Investigation
3. Code of Federal Regulation
4. Publication Regarding the Section 337 Mediation Program
5. Certification of Receipt of Mediation Materials

Exhibit 7
-229-



# UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Lynda Marshall
International Section
Antitrust Division
U.S. Dept of Justice
450 5th Street NW, Room 11000
Washington, DC 20530

**Re:   Certain Light-Based Physiological Measurement Devices and Components
Thereof
Inv.  No.  337-TA-1276**

Dear Lynda Marshall:

This letter is to advise you that the United States International Trade Commission has
instituted an investigation pursuant to Section 337 of the Tariff Act of 1930 (19 U.S.C.
1337).  A copy of the Notice of Investigation is enclosed.  Non-confidential copies of the
Complaint and any supplements filed in the investigation will be provided upon request.
Requests should be directed to Docket Services at (202) 205-1802.

If you have any questions concerning this investigation, please contact the Commission
Investigative Attorney whose name and telephone number appear in the enclosed Notice.

Sincerely,

Lisa R. Barton
Secretary

Enclosure:
    1.  Notice of Investigation

Exhibit 7
-230-



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Dax Terrill, Chief
Exclusion Order Enforcement Branch
U.S. Customs and Border Protection
Regulations and Rulings
90 K Street NE – 10th Floor
Washington, DC  20229-1177

**Re:    Certain Light-Based Physiological Measurement Devices and Components
Thereof
Inv.  No.  337-TA-1276**

Dear Dax Terrill:

This letter is to advise you that the United States International Trade Commission has
instituted an investigation pursuant to Section 337 of the Tariff Act of 1930 (19 U.S.C.
1337).  A copy of the Notice of Investigation is enclosed.  Non-confidential copies of the
Complaint and any supplements filed in the investigation will be provided upon request.
Requests should be directed to Docket Services at (202) 205-1802.

If you have any questions concerning this investigation, please contact the Commission
Investigative Attorney whose name and telephone number appear in the enclosed Notice.

Sincerely,

Lisa R. Barton
Secretary

Enclosure:
   1.  Notice of Investigation

Exhibit 7
-231-



# UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Elizabeth Kraus, Deputy Director
International Antitrust, Office of
International Affairs
Federal Trade Commission
600 Pennsylvania Avenue, Room 498
Washington, DC 20580

**Re:    Certain Light-Based Physiological Measurement Devices and Components Thereof**
**Inv.  No.  337-TA-1276**

Dear Elizabeth Kraus:

This letter is to advise you that the United States International Trade Commission has instituted an investigation pursuant to Section 337 of the Tariff Act of 1930 (19 U.S.C. 1337).  A copy of the Notice of Investigation is enclosed.  Non-confidential copies of the Complaint and any supplements filed in the investigation will be provided upon request. Requests should be directed to Docket Services at (202) 205-1802.

If you have any questions concerning this investigation, please contact the Commission Investigative Attorney whose name and telephone number appear in the enclosed Notice.

Sincerely,

Lisa R. Barton
Secretary

Enclosure:
1. Notice of Investigation

Exhibit 7
-232-



# UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

August 13, 2021

Dale D. Berkley, Ph.D., J.D.
Office of the General Counsel, PHD, NIH Branch
National Institutes of Health
31 Center Drive
Bldg. 31, Rm. 47
Bethesda, MD  20892

**Re:    Certain Light-Based Physiological Measurement Devices and Components Thereof
Inv.  No.  337-TA-1276**

Dear Dale Berkley:

This letter is to advise you that the United States International Trade Commission has instituted an investigation pursuant to Section 337 of the Tariff Act of 1930 (19 U.S.C. 1337).  A copy of the Notice of Investigation is enclosed.  Non-confidential copies of the Complaint and any supplements filed in the investigation will be provided upon request. Requests should be directed to Docket Services at (202) 205-1802.

If you have any questions concerning this investigation, please contact the Commission Investigative Attorney whose name and telephone number appear in the enclosed Notice.

Sincerely,

Lisa R. Barton
Secretary

Enclosure:
   1.  Notice of Investigation

Exhibit 7
-233-

# EXHIBIT 8

## UNITED STATES INTERNATIONAL TRADE COMMISSION

### Washington, D.C.

In the Matter of

**CERTAIN LIGHT-BASED PHYSIOLOGICAL MEASUREMENT DEVICES AND COMPONENTS THEREOF**

**Inv. No.  337-TA-1276**

**ORDER NO. 1:        PROTECTIVE ORDER**

(August 18, 2021)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1.  Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such

Exhibit 8
-234-

information.   The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).   Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.   Documents shall be clearly and prominently marked on their face with the legend: "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.   Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).   The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.   If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.   In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:   (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii)

- 2 -

Exhibit 8
-235-

technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.   Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission:  (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).
[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

Exhibit 8
-236-

internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.   If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6.   (a). Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above.  Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal.  When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER."  Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment A hereto.

- 4 -

Exhibit 8
-237-

Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7.   The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.   The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order.  *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

Exhibit 8
-238-

Commission or its Freedom of Information Act Officer, or the Administrative Law Judge.  When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.   During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.   Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to  take  action  before  the  Commission,  its  Freedom  of  Information  Act  Officer,  or  the Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.  If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it

- 6 -

Exhibit 8
-239-

shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.  No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the

- 7 -

Exhibit 8
-240-

Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.  If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.  Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.  Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy such material (including electronic media containing such information) in its possession which it regards as surplusage.

- 8 -

Exhibit 8
-241-

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.   If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.   Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.   The Secretary shall serve a copy of this order upon all parties.


Charles E. Bullock
Chief Administrative Law Judge

- 9 -

Exhibit 8
-242-

Attachment A

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____,* Investigation No. 337-TA-___, except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____

- 10 -

Exhibit 8
-243-

**CERTAIN LIGHT-BASED PHYSIOLOGICAL**                           Inv. No. 337-TA-1276
**MEASUREMENT DEVICES AND COMPONENTS**
**THEREOF**

Certificate of Service – Page 1

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served upon the following parties as indicated, on **August 18, 2021**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

**On Behalf of Complainants Masimo Corporation and Cercacor Laboratories, Inc.:**

| | |
|---|---|
| Jonathan Bachand, Esq. | ☐ Via Hand Delivery |
| **KNOBBE, MARTENS, OLSON & BEAR, LLP** | ☐ Via Express Delivery |
| 1717 Pennsylvania Avenue, NW, Suite 900 | ☐ Via First Class Mail |
| Washington, DC 20006 | ☒ Other: Email Notification |
| Email: Jonathan.Bachand@knobbe.com | of Availability for Download |

**Respondent:**

| | |
|---|---|
| Apple Inc. | ☐ Via Hand Delivery |
| One Apple Park Way | ☐ Via Express Delivery |
| Cupertino, CA 95014 | ☐ Via First Class Mail |
| | ☒ Other: Service to Be |
| | Completed by Complainants |

Exhibit 8
-244-

# EXHIBIT 9

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

| In the Matter of |
| --- |
| **CERTAIN LIGHT-BASED PHYSIOLOGICAL MEASUREMENT DEVICES AND COMPONENTS THEREOF** |

Inv. No. 337-TA-1276

**ORDER NO. 6:**      **SETTING PROCEDURAL SCHEDULE**

(October 14, 2021)

Pursuant to Order No. 5 (Sept. 22, 2021), the parties submitted a proposed procedural schedule. The proposed dates are hereby adopted with additional deadlines for expert reports on claim construction (if necessary) and modifications to the deadlines for submitting proposed exhibits and filing post-hearing briefs. The investigation shall proceed in accordance with the deadlines set forth below:

| Event | Date |
| --- | --- |
| File identification of expert witnesses, including their expertise and curriculum vitae | Wednesday, November 10, 2021 |
| Exchange list of claim terms to be construed | Friday, November 12, 2021 |
| Exchange of proposed claim constructions | Wednesday, November 24, 2021 |
| Initial deadline for responses to contention interrogatories on issues for which the responding party bears the burden of proof | Friday, December 3, 2021 |
| Initial deadline for responses to contention interrogatories on issues for which the responding party does not bear the burden of proof | Wednesday, December 22, 2021 |
| Meet and confer to discuss and limit number of disputed terms | Wednesday, January 5, 2022 |
| File joint proposed claim construction chart | Thursday, January 13, 2022 |
| Exchange of initial expert reports (if any) on claim construction issues | Tuesday, January 18, 2022 |

Exhibit 9
-245-

| Exchange of rebuttal expert reports (if any) on claim construction issues | Tuesday, January 25, 2022 |
|---|---|
| Initial *Markman* briefs | Thursday, January 27, 2022 |
| Rebuttal *Markman* briefs | Thursday, February 10, 2022 |
| Cut-off date for supplements to contention interrogatories on issues for which the responding party bears the burden of proof | Friday, February 11, 2022 |
| File notice of prior art | Tuesday, February 15, 2022 |
| **Joint Tutorial and Markman hearing** | **Thursday, February 17, 2022** |
| Cut-off date for supplements to contention interrogatories on issues for which the responding party does not bear the burden of proof | Friday, February 18, 2022 |
| Submission of updated joint proposed claim construction chart | Wednesday, February 23, 2022 |
| Fact discovery cutoff and completion | Wednesday, February 23, 2022 |
| Deadline for motions to compel discovery | Friday, March 4, 2022 |
| Exchange of initial expert reports (identify tests/surveys/data) | Friday, March 4, 2022 |
| File tentative lists of witnesses a party will call to testify at the hearing, with an identification of each witness' relationship to the party | Friday, March 18, 2022 |
| Exchange of rebuttal expert reports | Tuesday, March 22, 2022 |
| Expert discovery cutoff and completion | Tuesday, April 5, 2022 |
| Deadline for motions to compel expert discovery | Thursday, April 7, 2022 |
| Deadline for filing motions for summary determination | Thursday, April 7, 2022 |
| Attendance at one-day mediation session | No later than April 21, 2022 |
| Exchange of exhibit lists among the parties | Friday, April 22, 2022 |
| Exchange proposed direct exhibits, with physical exhibits available | Thursday, April 28, 2022 |
| Submission of joint report on mediation | No later than May 1, 2022 |
| Exchange proposed rebuttal exhibits, with rebuttal physical exhibits available | Thursday, May 5, 2022 |
| File pre-hearing statements and briefs | Friday, May 13, 2022 |

- 2 -

Exhibit 9
-246-

| File requests for receipt of evidence without a sponsoring witness | Friday, May 13, 2022 |
|---|---|
| Deadline to file motions in *limine* | Tuesday, May 17, 2022 |
| File high priority objections statements | Tuesday, May 17, 2022 |
| Submit proposed exhibits to the Administrative Law Judge | Monday, May 23, 2022 |
| File responses to requests for receipt of evidence without a sponsoring witness | Tuesday, May 24, 2022 |
| File responses to motions in *limine* | Tuesday, May 24, 2022 |
| File responses to high priority objection statements | Tuesday, May 24, 2022 |
| **Pre-hearing conference** | **Friday, June 3, 2022** |
| **Hearing** | **Week of June 6-10, 2022** |
| File initial post-trial briefs and final exhibit lists | Monday, June 27, 2022 |
| File reply post-trial briefs | Monday, July 11, 2022 |
| Initial determination due | Friday, September 16, 2022 |
| Target date for completion of investigation | Monday, January 16, 2023 |

**SO ORDERED.**

Monica Bhattacharyya
Administrative Law Judge

- 3 -

Exhibit 9
-247-

Certain Light-Based Physiological Measurement Devices and Components Thereof; Inv.   337-1276 Violation
No. 337-TA-1276 (Violation)

## CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached document has been served via EDIS upon the Commission
OUII Investigative Attorney and the following parties as indicated, upon the date listed below.

| Document | Security | Document Type | Official Rec'd Date | Title |
|----------|----------|---------------|---------------------|-------|
| 754138 | Public | Order | 10/14/2021 09:12 AM | Setting Procedural Schedule |

Service Date:        October 14, 2021

/s/

Lisa R. Barton

U.S. International Trade Commission

500 E Street, S.W.

Suite 112

Washington, D.C. 20436

Certain Light-Based Physiological Measurement Devices and Components Thereof; Inv.   337-1276 Violation No. 337-TA-1276 (Violation)

## CERTIFICATE OF SERVICE

**On behalf of Complainant Cercacor Laboratories, Inc.;Masimo Corporation:**

Joseph R. Re

**Knobbe, Martens, Olson & Bear**

2040 Main St.

14th Floor

Irvine, California 92614, United States

Electronic Service

**On behalf of Respondent Apple Inc.:**

Sarah  Frazier

**Wilmer Cutler Pickering Hale and Dorr LLP**

1875 Pennsylvania Avenue, NW

Washington, District of Columbia 20006, United States

Electronic Service

| Service Date: | October 14, 2021 | PDF Generated on: | October 14, 2021 |
|---|---|---|---|

Exhibit 9

-249-

# UNITED STATES INTERNATIONAL TRADE COMMISSION

Docket Services Division
500 E. Street SW
Washington, DC 20436

Selected Documents: [754138]

Creation Date: 10/14/2021 12:00 PM

| DOCUMENT ID | FILE NAME | INVESTIGATION | DOCUMENT TITLE | ATTACHMENT TITLE | DOCUMENT TYPE | FIRM/ORG | FILED BY | ON BEHALF OF | DOCUMENT DATE | OFFICIAL RECEIVED DATE | SECURITY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 754138 | 754138-1711678.pdf | 337-1276 Violation | Setting Procedural Schedule | 1711678 | Order | USITC | Monica Bhattacharyya | Administrative Law Judge | 10/14/2021 12:00 AM | 10/14/2021 09:12 AM | Public |
| 754138 | 754138-1711702.pdf | 337-1276 Violation | Setting Procedural Schedule | Certificate of Service 10/14/2021 | Order | USITC | Monica Bhattacharyya | Administrative Law Judge | 10/14/2021 12:00 AM | 10/14/2021 09:12 AM | Public |

Exhibit 9
-250-

# EXHIBIT 10

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
3  steve.jensen@knobbe.com
   Perry D. Oldham (Bar No. 216016)
4  perry.oldham@knobbe.com
   Stephen W. Larson (Bar No. 240844)
5  stephen.larson@knobbe.com
6  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
7  2040 Main Street, Fourteenth Floor
   Irvine, CA  92614
8  Telephone:  (949)-760-0404
9  Facsimile:  (949)-760-9502

10 Attorneys for Plaintiffs,
11 **Masimo Corporation and Cercacor Laboratories, Inc.**

12

13        **IN THE UNITED STATES DISTRICT COURT**

14        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15                **SOUTHERN DIVISION**

16

17 MASIMO CORPORATION,                    ) Case No. 8:20-cv-00048-JVS-JDE
   a Delaware corporation; and            )
18 CERCACOR LABORATORIES, INC.,           ) **PLAINTIFFS MASIMO**
   a Delaware corporation                 ) **CORPORATION AND**
19                                         ) **CERCACOR LABORATORIES,**
                                           ) **INC.'S FIRST SET OF REQUESTS**
20        Plaintiffs,                      ) **FOR PRODUCTION OF**
                                           ) **DOCUMENTS TO DEFENDANT**
21        v.                               ) **APPLE INC. (NOS. 1-25)**
                                           )
22 APPLE INC., a California corporation    )
                                           ) Hon. James V. Selna
23        Defendant.                       )
                                           )
24 _____ )

25

26

27

28

Exhibit 10
-251-

1  the Masimo Asserted Patents.

2  **REQUEST FOR PRODUCTION NO. 3:**

3  All documents and things that refer or relate to any efforts to design any

4  of the Accused Products around the inventions claimed in the Masimo Asserted

5  Patents.

6  **REQUEST FOR PRODUCTION NO. 4:**

7  All documents and things concerning, evaluating, discussing, and/or

8  commenting on the existence, infringement, or scope of the Masimo Asserted

9  Patents.

10 **REQUEST FOR PRODUCTION NO. 5:**

11 Documents sufficient to show the design and operation of the Accused

12 Products.

13 **REQUEST FOR PRODUCTION NO. 6:**

14 All documents and things describing the operation of the Accused

15 Products, including, without limitation, product brochures, user manuals,

16 instructional materials, and directions for use.

17 **REQUEST FOR PRODUCTION NO. 7:**

18 All training materials concerning any of the Accused Products, including,

19 without limitation, training manuals, training videos, presentations, and

20 handouts.

21 **REQUEST FOR PRODUCTION NO. 8:**

22 All marketing materials concerning any of the Accused Products,

23 including, without limitation, advertisements, promotional materials, pamphlets,

24 brochures, product catalogs, websites, product brochures, informational

25 materials, and videos.

26

27

28

Exhibit 10
-252-

**REQUEST FOR PRODUCTION NO. 9:**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 10:**

All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**

All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or

Exhibit 10
-253-

technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

Exhibit 10
-254-

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: __March 16, 2020__          By: _/s/ Stephen W. Larson_____
                                         Joseph R. Re
                                         Stephen C. Jensen
                                         Perry D. Oldham
                                         Stephen W. Larson

                                         Attorneys for Plaintiffs,
                                         Masimo Corporation and
                                         Cercacor Laboratories, Inc.

Exhibit 10
-255-

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404; Facsimile:  (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE <br> ) <br> ) **PLAINTIFFS MASIMO** <br> ) **CORPORATION AND** <br> ) **CERCACOR LABORATORIES,** <br> ) **INC.'S THIRD SET OF REQUESTS** <br> ) **FOR PRODUCTION OF** <br> ) **DOCUMENTS TO DEFENDANT** <br> ) **APPLE INC. (NOS. 61-147)** <br> ) <br> ) <br> ) Hon. James V. Selna <br> ) Magistrate Judge John D. Early <br> ) <br> ) |

Exhibit 10
-256-

any component of any of the Apple Watch Products that relate to pulse rate detection, pulse rate measurement, power consumption by pulse rate detection, or power consumption by pulse rate measurement, including, without limitation, testing protocols, reports, results, notes, and summaries.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and things concerning any attempt to obtain FDA approval of any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and things concerning the FDA approval of any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things submitted to or received from the FDA or any other governmental agency that refer or relate to the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and things that refer or relate to clinical trials of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to identify all persons involved in the research, design, and development of any physiological monitoring capability of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 72:**

All documents concerning any changes made to any of the Apple Watch Products' firmware, software, or comments thereto that relate to physiological monitoring.

**REQUEST FOR PRODUCTION NO. 73:**

All documents concerning any changes made to firmware, software, or comments thereto, between the Apple Watch Series 3 and Apple Watch Series 4 and later.

Exhibit 10
-257-

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things that refer or relate to the performance of non-invasive physiological measurements for the Apple Watch Series 3.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things that refer or relate to the performance of non-invasive physiological measurements for the Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and things that refer or relate to changes in the performance of non-invasive physiological measurements between the Apple Watch Series 3 and the Apple Watch Series 4.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and things that refer or relate to changes in the performance of non-invasive physiological measurements between the Apple Watch Series 4 and the Apple Watch Series 5.

**REQUEST FOR PRODUCTION NO. 78:**

The complete source code, including prior versions, revisions, and comments, that relates to the following features of Apple Watch Products: LEDs, photodiodes, duty cycle, changes in measurement modes, heart rate context, calculation of physiological parameters based on detected optical signals, determination of heart rate, the health application, the breathe application, and communications of physiological parameters to Apple iOS Products.

**REQUEST FOR PRODUCTION NO. 79:**

The complete source code, including prior versions, revisions, and comments, that relates to the following features of Apple iOS Products: communication of physiological parameters from Apple Watch Products, the health application, and tracking of physiological parameters over time.

Exhibit 10
-258-

**REQUEST FOR PRODUCTION NO. 95:**

All documents and things relating to any analysis, study, investigation, or test of any Masimo or Cercacor product or technology by Apple, including without limitation, emails, test results, notes, memoranda, and the actual products or systems examined.

**REQUEST FOR PRODUCTION NO. 96:**

All documents and things that refer or relate to any analysis, reverse engineering, and/or study of any Masimo or Cercacor product or technology.

**REQUEST FOR PRODUCTION NO. 97:**

All and things that refer or relate to any comparison between any Masimo or Cercacor product or technology and any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 98:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 3 and the Apple Watch Series 4.

**REQUEST FOR PRODUCTION NO. 99:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 4 and the Apple Watch Series 5.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and things that relate to any comparison of any of the Apple Watch Products to any of the Masimo or Cercacor products or technologies.

**REQUEST FOR PRODUCTION NO. 101:**

All documents and things concerning any competitive analysis of any competitor to the Apple Watch Products.

/ / /

/ / /

-9-

Exhibit 10
-259-

requests for production, responses to interrogatories, responses to requests for admission, and all supplemental disclosures and responses.

**REQUEST FOR PRODUCTION NO. 146:**

All documents and things relating to the contents and/or subject matter of any declarations or affidavits filed by You in this litigation.

**REQUEST FOR PRODUCTION NO. 147:**

All documents and things upon which You intend to rely upon, use, or introduce at trial, for any purpose, including to introduce into evidence, or use as impeachment, rebuttal, or demonstrative purposes.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: July 17, 2020        By: */s/ Adam B. Powell*
                               Joseph R. Re
                               Stephen C. Jensen
                               Perry D. Oldham
                               Stephen W. Larson
                               Adam B. Powell

                               Attorneys for Plaintiffs,
                               Masimo Corporation and
                               Cercacor Laboratories, Inc.

-17-

Exhibit 10
-260-

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949)-760-0404; Facsimile:  (949)-760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS MASIMO**<br>) **CORPORATION AND**<br>) **CERCACOR LABORATORIES,**<br>) **INC.'S FIFTH SET OF REQUESTS**<br>) **FOR PRODUCTION OF**<br>) **DOCUMENTS TO DEFENDANT**<br>) **APPLE INC. (NOS. 173-248)**<br>)<br>)<br>) Hon. James V. Selna<br>) Magistrate Judge John D. Early<br>)<br>) |

Exhibit 10
-261-

**REQUEST FOR PRODUCTION NO. 225:**

All documents and things relating to Apple's practices, procedures, and/or policies relating to the treatment of confidential information, including formal and informal policies, training documents, and presentations.

**REQUEST FOR PRODUCTION NO. 226:**

All documents and things owned by, created in whole or in part by, or originating with, Masimo or Cercacor.

**REQUEST FOR PRODUCTION NO. 227:**

All electronic documents that contain the word "Masimo" or "Cercacor" in the electronic document's "company" metadata field.

**REQUEST FOR PRODUCTION NO. 228:**

All computers, Computer Media, networks, or databases that were used or acquired by any Former Employee while they worked for Masimo or Cercacor.

**REQUEST FOR PRODUCTION NO. 229:**

All computers, Computer Media, networks, or databases that may have ever contained information owned by, created in whole or in part by, or originating with, Masimo or Cercacor.

**REQUEST FOR PRODUCTION NO. 230:**

All documents and things authored by, prepared by, provided by, reviewed by, or in the possession, custody, or control of any Former Employee that relate to Masimo or Cercacor or any Masimo or Cercacor products or technologies, including, without limitation, internal and external communications, and any studies, reports, memoranda, presentations, or other documents.

**REQUEST FOR PRODUCTION NO. 231:**

All documents and things authored by, prepared by, provided by, reviewed by, or in the possession, custody, or control of any Former Employee

-12-

Exhibit 10
-262-

**REQUEST FOR PRODUCTION NO. 244:**

All communications between Michael O'Reilly and any hospital or healthcare provider in the first twelve months that Mr. O'Reilly worked at Apple.

**REQUEST FOR PRODUCTION NO. 245:**

Documents sufficient to show the date and reason for any of Michael O'Reilly's changes in title or job responsibilities at Apple.

**REQUEST FOR PRODUCTION NO. 246:**

All communications between Marcelo Lamego and any hospital or healthcare provider while Mr. Lamego worked at Apple.

**REQUEST FOR PRODUCTION NO. 247:**

All patent and/or invention disclosure documents provided by Marcelo Lamego to Apple.

**REQUEST FOR PRODUCTION NO. 248:**

Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending.


                                        KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: October 9, 2020          By: */s/ Adam B. Powell*
                                        Joseph R. Re
                                        Stephen C. Jensen
                                        Perry D. Oldham
                                        Stephen W. Larson
                                        Adam B. Powell

                                        Attorneys for Plaintiffs,
                                        Masimo Corporation and
                                        Cercacor Laboratories, Inc.

-15-

Exhibit 10
-263-

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949)-760-0404; Facsimile: (949)-760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. (NOS. 281-317)**<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

Exhibit 10
-264-

**REQUEST FOR PRODUCTION NO. 283:**

All documents and communications reflecting the name and number of individuals hired by Apple who previously worked for companies that make pulse oximetry products, including but not limited to Masimo, Cercacor, Nellcor Puritan Bennett, Inc., Philips Electronic North America Corporation, Mindray DS USA, Inc., and Nonin Medical, Inc.

**REQUEST FOR PRODUCTION NO. 284:**

All communications between (1) Marcelo Lamego, True Wearables, Inc., or any other individuals associated with True Wearables, Inc., and (2) any Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, after Marcelo Lamego ended his employment at Apple.

**REQUEST FOR PRODUCTION NO. 285:**

All communications between (1) any Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, and (2) the Food and Drug Administration (FDA), regarding any of the Apple Watch Products, including any application operating on the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 286:**

All communications between (1) any Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, and (2) the FDA, regarding the measurement of any physiological parameter.

**REQUEST FOR PRODUCTION NO. 287:**

All communications between (1) any Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, and (2) the FDA, regarding any informal meetings with the FDA, including but not limited to informal meetings

Exhibit 10
-265-

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 19, 2021

By: /s/ Adam B. Powell
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Adam B. Powell

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

-10-

Exhibit 10
-266-

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Benjamin A. Katzenellenbogen (Bar No. 208527)
4  ben.katzenellenbogen@knobbe.com
   Perry D. Oldham (Bar No. 216016)
5  perry.oldham@knobbe.com
   Stephen W. Larson (Bar No. 240844)
6  stephen.larson@knobbe.com
7  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   2040 Main Street, Fourteenth Floor
8  Irvine, CA 92614
   Telephone: (949)-760-0404; Facsimile: (949)-760-9502
9
10 Adam B. Powell (Bar. No. 272725)
   adam.powell@knobbe.com
11 **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   3579 Valley Centre Drive
12 San Diego, CA 92130
   Telephone: (858) 707-4000; Facsimile: (858) 707-4001
13
14 Attorneys for Plaintiffs,
   Masimo Corporation and Cercacor Laboratories, Inc.
15

16            **IN THE UNITED STATES DISTRICT COURT**

17          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

18                    **SOUTHERN DIVISION**

19

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation | ) Case No. 8:20-cv-00048-JVS-JDE ) ) **PLAINTIFFS MASIMO** ) **CORPORATION AND** ) **CERCACOR LABORATORIES,** ) **INC.'S NINTH SET OF REQUESTS** |
| Plaintiffs, | ) **FOR PRODUCTION OF** ) **DOCUMENTS TO DEFENDANT** |
| v. | ) **APPLE INC. (NOS. 318-524)** ) **(CORRECTED)** |
| APPLE INC., a California corporation | ) ) |
| Defendant. | ) Hon. James V. Selna ) Magistrate Judge John D. Early ) |

Exhibit 10
-267-

**REQUEST FOR PRODUCTION NO. 436:**

Documents regarding Apple implementing or considering any of the Strategies For Interacting With Hospitals described under heading "E" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**REQUEST FOR PRODUCTION NO. 437:**

Documents regarding Apple implementing or considering any strategy for persuading hospitals to share clinical data.

**REQUEST FOR PRODUCTION NO. 438:**

Documents regarding the value and importance of any strategy for persuading hospitals to share clinical data.

**REQUEST FOR PRODUCTION NO. 439:**

Documents regarding decisions to research or design products used to calculate pulse rate and oxygen saturation.

**REQUEST FOR PRODUCTION NO. 440:**

Documents regarding decisions to research or design products that can be used for medical research.

**REQUEST FOR PRODUCTION NO. 441:**

Documents regarding decisions to research or design any Apple wrist worn monitor that performs pulse oximetry.

**REQUEST FOR PRODUCTION NO. 442:**

An inspection of any Apple product that calculates heart rate or pulse oximetry, including without limitation, prior and future planned versions and prototypes.

**REQUEST FOR PRODUCTION NO. 443:**

All communications regarding pulse rate or pulse oximetry between an Apple employee or Apple representative, including Apple's inhouse or outside counsel, and any employee of Plaintiffs, while the employee was employed by Plaintiffs.

-22-

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Exhibit 10
-268-

**REQUEST FOR PRODUCTION NO. 523:**

Documents sufficient to identify the source of each item of information regarding pulse rate or oxygen saturation technology used by each of the following individuals while employed by Apple: John Aguilar, Anderson Briglia, Johannes Bruinsma, Ottavia Golfetto, Haritha Haridas, Swapnil Harsule, Joe Jagenow, Marcelo Lamego, Inje Lee, Yinghui Lu, Ehsan Masoumi, Michael O'Reilly, Boris Oreshkin, Mathew Paul, Kornelius Raths, Will Regan, Felipe Tonello, Vincent Wayne, and Rich Young.

**REQUEST FOR PRODUCTION NO. 524:**

Documents identifying the source of each item of information regarding pulse rate or oxygen saturation technology used by each of the following individuals while employed by Apple: John Aguilar, Anderson Briglia, Johannes Bruinsma, Ottavia Golfetto, Haritha Haridas, Swapnil Harsule, Joe Jagenow, Marcelo Lamego, Inje Lee, Yinghui Lu, Ehsan Masoumi, Michael O'Reilly, Boris Oreshkin, Mathew Paul, Kornelius Raths, Will Regan, Felipe Tonello, Vincent Wayne, and Rich Young.


KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: May 25, 2021          By: /s/ Adam B. Powell
                                  Joseph R. Re
                                  Stephen C. Jensen
                                  Benjamin A. Katzenellenbogen
                                  Perry D. Oldham
                                  Stephen W. Larson
                                  Mark D. Kachner
                                  Adam B. Powell

                                  Attorneys for Plaintiffs,
                                  Masimo Corporation and
                                  Cercacor Laboratories, Inc.

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Exhibit 10
-269-

# EXHIBIT 11

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable Charles Bullock**
**Chief Administrative Law Judge**

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN LIGHT-BASED PHYSIOLOGICAL MEASUREMENT DEVICES AND COMPONENTS THEREOF** | Inv. No. 337-TA-1276 |

**MASIMO CORPORATION AND CERACOR LABORATORIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO APPLE INC. (1-126)**

Exhibit 11
-270-

**REQUEST FOR PRODUCTION NO. 18:**

Documents and things sufficient to identify all brands, models, product names, internal names, product numbers, and SKU codes for any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 19:**

Documents sufficient to identify each person involved in research, design, and development of the pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify all present employees, past employees, consultants, and contract employees, whether full- or part-time, whose responsibilities or assignments include work concerning the design, research, development, analysis, testing, manufacturing, purchase, marketing, importation, exportation or sale of any pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, including organizational charts and telephone and/or email directories.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to identify all third parties that worked with You or on Your behalf concerning the conception, design, development, implementation, testing, and manufacturing of the pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6 and all documents received by You from such third parties concerning such work.

Exhibit 11
-271-

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things concerning the design and development of the pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 23:**

All communications and files of anyone involved in the design or development of the Accused Products and Components Thereof , including the Apple Watch Series 6, concerning the pulse oximeter and thermistor features in such products.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things concerning any contracts, agreements, or understandings with any person or entity concerning the research, design, and development of the pulse oximetry and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things concerning any consulting, contracting or design work performed for You by any third party relating to the pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 26:**

All documents and things concerning the conception, engineering, design, qualification, testing, and development of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, including design briefs, knowledge sheets, bills of materials, specifications, reference designs, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test plans, test results, users manuals or other manuals,

13

Exhibit 11
-272-

journals, notes, laboratory notebooks, engineering notebooks, communications, and correspondence.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and things concerning any proposed production model, prototype, or other preproduction embodiment of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 28:**

All diaries, appointment calendars, journals, notebooks, and trip reports prepared at the direction of or maintained by any person involved in the research, design, development, marketing importation, or sale of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, concerning or evidencing in any way events concerning the research, design, development, marketing, importation, or sale of such products.

**REQUEST FOR PRODUCTION NO. 29:**

Documents, publications, articles, manuscripts, papers, technical disclosures, abstracts, papers, presentations, or speeches authored or given, in whole or in part, by any person involved in the research, design, development, marketing or sale of pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, concerning any such products.

**REQUST FOR PRODUCTION NO. 30:**

Documents and things sent to or from any person substantively involved in the research, design, development, marketing, importation, or sale of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, concerning such products.

Exhibit 11
-273-

specifications concerning the structure, function and operation of pulse oximeter and thermistor features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 42:**

All user manuals and user guides for any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 43:**

A complete set of engineering drawings, source code, and specifications for each Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, including all revisions of each engineering drawing and all engineering change orders.

**REQUEST FOR PRODUCTION NO. 44:**

All documents and things concerning changes or modifications to the design of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 45:**

All documents and things concerning any papers, articles or scientific works which refer to the oxygen saturation and heart rate measurement features of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, or discuss the scientific or engineering principles on which the design of pulse oximeter and thermistor features in any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, is based.

**REQUEST FOR PRODUCTION NO. 46:**

All technical papers, journal articles, and professional association presentations authored by You or Your employees, consultants, or affiliated entities that relate in whole or in part to the

Exhibit 11
-274-

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning any effort by Apple to incorporate any feature or functionality of any of Complainants' products into any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 51:**

All documents and things concerning any reverse engineering or other analysis performed by You or on behalf of You on any of Complainants' products, including but not limited to the Domestic Industry Products.

**REQUEST FOR PRODUCTION NO. 52:**

All documents and things concerning the Domestic Industry Products.

**REQUEST FOR PRODUCTION NO. 53:**

All documents concerning research, design, or development agreements entered into between Apple and any third party for any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 54:**

Five samples of each model of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and things concerning the manufacture of any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 56:**

All documents concerning original equipment manufacturer ("OEM") agreements relating to the pulse oximeter and thermistor features on any Accused Product and Components Thereof,

19

Exhibit 11
-275-

**REQUEST FOR PRODUCTION NO. 107:**

All documents and things concerning any communication between Apple and the Food and Drug Administration regarding any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6.

**REQUEST FOR PRODUCTION NO. 108:**

All documents and things prepared in connection with this Investigation by any person Apple expects to call as a witness (including both fact and expert witnesses) at any hearing or at trial in this Investigation.

**REQUEST FOR PRODUCTION NO. 109:**

All keys, codes, explanations, manuals, and other documents necessary to the interpretation or understanding of the financial and technical documents produced in response to these requests for production.

**REQUEST FOR PRODUCTION NO. 110:**

All documents and things that You may offer into evidence, submit to the ITC, or otherwise use in any way at any hearing in this Investigation.

**REQUEST FOR PRODUCTION NO. 111:**

To the extent not otherwise produced, all documents and things that Apple intends to offer or believes may be offered as evidence in this Investigation.

**REQUEST FOR PRODUCTION NO. 112:**

Biographies, each publication of any kind published (including on the Internet), personnel records, curriculum vitae, and resumes sufficient to provide a comprehensive educational and work history for each fact and/or expert witness Apple intends to call in this Investigation.

Exhibit 11
-276-

**REQUEST FOR PRODUCTION NO. 125:**

All documents and things concerning consumer feedback relating to the pulse oximetry features on any Accused Product and Components Thereof, including but not limited to, the Apple Watch Series 6, regardless of the country of origin, including documents regarding any action taken in response to the feedback.

**REQUEST FOR PRODUCTION NO. 126:**

All copies of Complainants' documents in Your possession, custody, or control, including, without limitation, all manuals, schematics, drawings, blueprints, block diagrams, software, and manufacturing, marketing, advertising, and promotional documents.

Dated:  August 19, 2021

By: */s/ Jonathan E. Bachand*
Stephen C. Jensen
Joseph R. Re
Sheila N. Swaroop
Jonathan E. Bachand

**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:   (949) 760-0404
Facsimile:    (949) 734-4988
Emails: steve.jensen@knobbe.com;
joe.re@knobbe.com;
sheila.swaroop@knobbe.com;

and

1717 Pennsylvania Ave NW #900
Washington, DC 20006
Telephone:   (202) 640-6400
Facsimile:    (949) 734-4988
Email: jonathan.bachand@knobbe.com

*Counsel for Complainants*
*Masimo Corporation and*
*Ceracor Laboratories, Inc.*

Exhibit 11
-277-

# EXHIBIT 12

1  JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street Suite 3000
3  San Francisco, CA 94105
   Telephone:  415.393.8200
4  Facsimile:   415.393.8306

5  H. MARK LYON, SBN 162061              ILISSA SAMPLIN, SBN 314018
      mlyon@gibsondunn.com                  isamplin@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP           GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road                   333 South Grand Avenue
7  Palo Alto, CA 94304-1211              Los Angeles, CA 90071-3197
   Telephone:  650.849.5300              Telephone:  213.229.7000
8  Facsimile:   650.849.5333             Facsimile:   213.229.7520

9  BRIAN M. BUROKER, *pro hac vice*      ANGELIQUE KAOUNIS, SBN 209833
      bburoker@gibsondunn.com               akaounis@gibsondunn.com
10 GIBSON, DUNN & CRUTCHER LLP           GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.         2029 Century Park East Suite 4000
11 Washington, DC 20036                  Los Angeles, CA 90067
   Telephone:  202.955.8541              Telephone:  310.552.8546
12 Facsimile:   202.467.0539             Facsimile:   310.552.7026

13 *Attorneys for Defendant Apple Inc.*

14                    **UNITED STATES DISTRICT COURT**
15   **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

16 MASIMO CORPORATION,
   a Delaware corporation; and           CASE NO. 8:20-cv-00048-JVS (JDEx)
17 CERCACOR LABORATORIES, INC.,
   a Delaware corporation,               **DEFENDANT APPLE INC.'S FIRST
18                                        SET OF REQUESTS FOR
                  Plaintiffs,            PRODUCTION OF DOCUMENTS
19                                        AND THINGS TO PLAINTIFFS
         v.                               MASIMO CORPORATION AND
20                                        CERCACOR LABORATORIES, INC.**
   APPLE INC.,
21 a California corporation,             Action Filed:    January 9, 2020

22                  Defendant.

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

64.     All Documents and Communications relating to the potential collaboration between Apple and You referenced in paragraph 19 of the Complaint.

65.     All Documents and Communications sufficient to show the alleged Trade Secrets referenced in paragraphs 210–24 of the Complaint.

66.     All Documents sufficient to show Your efforts to maintain the secrecy of the alleged Trade Secrets reference in paragraphs 211–24 of the Complaint, including without limitation (i) Documents sufficient to identify all Persons who have accessed the alleged Trade Secrets; and (ii) Documents sufficient to show the confidentiality obligations of each such Person to You, if such obligations differ from those identified and described in response to Request No. 58.

67.     All Documents and Communications that support, refute, or relate to the allegations in paragraphs 210–24 of the Complaint that Apple has misappropriated Trade Secrets belonging to You.

68.     All Documents and Communications relating to the conception, reduction to practice, diligence from conception to reduction to practice, development, and/or design of any information that You claim to be a Trade Secret misappropriated by Apple, including, without limitation, invention disclosure forms, laboratory notebooks, engineering notebooks, journals, laboratory reports, test results, test data, internal memoranda, correspondence, research reports, development proposals, Documents describing manufacturing techniques and specifications, product requirement Documents, product proposals, functional specifications, product literature, source code or other software, engineering drawings, Documents describing the system architecture, flow charts, user manuals, project approvals, research agreements, grant applications, business plans, articles, press releases, and sales and marketing materials.

69.     All Documents sufficient to identify each Person involved in the design, development, and/or use of any information that You claim to be a Trade

21

APPLE INC.'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 12
-279-

Gibson, Dunn & Crutcher LLP

informal means (i.e., not via litigation or legal action)—of trade secret misappropriation, including, but not limited to, cease and desist letters, demands, notices, or other correspondence.

77.     All Documents and Communications relating to any agreements with Apple regarding any product or technology that You contend involves or incorporates Your alleged Trade Secrets, including copies of all such agreements.

78.     To the extent not already requested or required, all Documents, Communications, and Things that You may use to support any of Your allegations or contentions in Your Complaint or otherwise made in this Action, including, but not limited to, any Documents, Communications, and/or Things that You intend to introduce at trial.

Dated: April 3, 2020                    Respectfully submitted,

                                        JOSHUA H. LERNER
                                        H. MARK LYON
                                        BRIAN M. BUROKER
                                        ILISSA SAMPLIN
                                        ANGELIQUE KAOUNIS
                                        GIBSON, DUNN & CRUTCHER LLP


                                        By:  */s/Joshua H. Lerner*
                                             Joshua H. Lerner

                                        *Attorneys for Defendant Apple Inc.*

23

Exhibit 12
-280-

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br>a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**DEFENDANT APPLE INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 79-98)**<br><br>Hon. James V. Selna<br><br>Magistrate Judge John D. Early |

Gibson, Dunn &
Crutcher LLP

Exhibit 12
-281-

20.     Each of the foregoing Definitions and Instructions is hereby incorporated by reference into, and shall be deemed a part of, each Request.

### III.     REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 79:**

The source code, including all prior versions, revisions, and comments, for any functionality of any product Plaintiffs identify in response to Apple's Interrogatory No. 21 as allegedly meeting an element of any Asserted Claim feature.

**REQUEST FOR PRODUCTION NO. 80:**

The source code, including all prior versions, revisions, and comments, from any product Masimo sold or offered for sale before July 2, 2001 that relates to any low power feature including, but not limited to changing or altering duty cycle, measurement mode, drive current, and/or sampling frequency.

**REQUEST FOR PRODUCTION NO. 81:**

All documents and things relating to whether any product Plaintiffs identify in response to Apple's Interrogatory No. 21 practices any Asserted Claim of any Asserted Patent and on a claim-by-claim basis, explain the basis for that assertion, identify all documents supporting or refuting that assertion, and identify the date on which the earliest such product practicing such claim was introduced to the market.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and things that refer or relate to any testing and/or analysis of the properties and/or characteristics of any product accused of infringement in your Infringement Contentions.

**REQUEST FOR PRODUCTION NO. 83:**

All monthly sales and revenue data for any product Plaintiffs identify in response to Apple's Interrogatory No. 21, from the priority date of the corresponding Asserted Patent to present.

**REQUEST FOR PRODUCTION NO. 84:**

APPLE INC.'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 12
-282-

Gibson, Dunn &
Crutcher LLP

1   performed by Plaintiffs or any third party.

2

3

4   Dated:  September 4, 2020                    Respectfully submitted,

5                                               JOSHUA H. LERNER
                                                H. MARK LYON
6                                               BRIAN M. BUROKER
                                                BRIAN A. ROSENTHAL
7                                               ILISSA SAMPLIN
                                                ANGELIQUE KAOUNIS
8                                               BRIAN K. ANDREA
                                                GIBSON, DUNN & CRUTCHER LLP
9

10

11                                              By:  */s/Joshua H. Lerner*
                                                     Joshua H. Lerner
12
                                                *Attorneys for Defendant Apple Inc.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Exhibit 12
-283-

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

                    Plaintiffs,

        v.

APPLE INC.,
a California corporation,

                    Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**DEFENDANT APPLE INC.'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 128-253)**

Hon. James V. Selna

Magistrate Judge John D. Early

Gibson, Dunn &
Crutcher LLP

APPLE INC.'S EIGHTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE No. 8:20-CV-00048-JVS (JDEx)

Exhibit 12
-284-

**REQUEST FOR PRODUCTION NO. 141:**

All Communications between You and Marcelo Lamego related to the subject matter of this litigation, including the Trade Secrets and the subject matter that is contained in the Apple Patents and Apple Applications.

**REQUEST FOR PRODUCTION NO. 142:**

All Communications between You and Michael O'Reilly related to the subject matter of this litigation, including the Trade Secrets and the subject matter that is contained in the Apple Patents and Apple Applications.

**REQUEST FOR PRODUCTION NO. 143:**

All Documents, Communications, and Things relating to Your products that are compatible with any Apple products.

**REQUEST FOR PRODUCTION NO. 144:**

All Documents, Communications, and Things relating to the marketing materials for all of Your products that are referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 145:**

Documents sufficient to show the date that each reflectance-based pulse oximetry product sold by You, including but not limited to the Masimo M-LNCS TF-I and LNCS-TFA-1 products, was offered for sale and sold anywhere in the world.

**REQUEST FOR PRODUCTION NO. 146:**

All Documents, Communications, and Things regarding the Apple Watch.

**REQUEST FOR PRODUCTION NO. 147:**

All Documents, Communications, and Things that relate to the ownership of the Trade Secrets, including but not limited to Documents, Communications, and Things that relate to any changes in ownership of each of the Trade Secrets since the conception of the Trade Secret.

Gibson, Dunn & Crutcher LLP

12

APPLE INC.'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 12
-285-

**REQUEST FOR PRODUCTION NO. 192:**

All Documents and Communications between Mohamed Diab, Ammar Al-Ali, Walter Weber, and Joe Kiani, on the one hand, and Marcelo Lamego, on the other, regarding the sensor placement techniques referenced in Paragraph 42 of the Complaint.

**REQUEST FOR PRODUCTION NO. 193:**

All Communications between Marcelo Lamego and anyone who You allege contributed to the development of the subject matter that is contained in the Apple Patents and Apple Applications, including Communications between Mr. Lamego and the Alleged Inventors.

**REQUEST FOR PRODUCTION NO. 194:**

Documents sufficient to show Your annual earnings, revenues, sales, costs, company valuation, and profits from 2012 to the present.

**REQUEST FOR PRODUCTION NO. 195:**

Documents sufficient to show the annual earnings, revenues, sales, costs, and profits from 2012 to the present for each of Your products that You contend incorporates Your Trade Secrets.

**REQUEST FOR PRODUCTION NO. 196:**

Documents sufficient to show the annual earnings, revenues, sales, costs, and profits from 2012 to the present resulting from Your use of the "Business and Marketing Plans and Strategies" Trade Secrets identified by You in Paragraph 43 of the Complaint.

**REQUEST FOR PRODUCTION NO. 197:**

Documents sufficient to show the annual earnings, revenues, sales, costs, and profits from 2012 to the present resulting from Your use of the "Strategies for Interacting with Hospitals" Trade Secrets identified by You in Paragraph 44 of the Complaint.

APPLE INC.'S EIGHTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn &
Crutcher LLP

Exhibit 12
-286-

**REQUEST FOR PRODUCTION NO. 198:**

Documents sufficient to show Your projections of annual earnings, revenues, sales, costs, company valuation, and profits for each year after and including 2012.

**REQUEST FOR PRODUCTION NO. 199:**

Document sufficient to show Your projections of annual earnings, revenues, sales, costs, and profits for each year after and including 2012 for each of Your products that You contend incorporates Your Trade Secrets.

**REQUEST FOR PRODUCTION NO. 200:**

Documents sufficient to show Your projections of annual earnings, revenues, sales, costs, and profits for each year after and including 2012 resulting from Your use of the "Business and Marketing Plans and Strategies" Trade Secrets identified by You in Paragraph 43 of the Complaint.

**REQUEST FOR PRODUCTION NO. 201:**

Documents sufficient to show Your projections of annual earnings, revenues, sales, costs, and profits for each year after and including 2012 resulting from Your use of the "Strategies for Interacting with Hospitals" Trade Secrets identified by You in Paragraph 44 of the Complaint.

**REQUEST FOR PRODUCTION NO. 202:**

All Documents and Communications relating to Your projections, business plans, budgets, forecasts, sales, profit margins, royalties, or profit projections regarding the sale, distribution, or licensing of each of Your Trade Secrets.

**REQUEST FOR PRODUCTION NO. 203:**

Documents sufficient to show the annual market share in the relevant market(s) for each year from 2012 to the present for each of Your products that You contend incorporates Your Trade Secrets.

**REQUEST FOR PRODUCTION NO. 204:**

Gibson, Dunn &
Crutcher LLP

Exhibit 12
-287-

**REQUEST FOR PRODUCTION NO. 252:**

All Documents and Communications relating to any "inability to generate sufficient return on Plaintiffs' significant investment in research and development" experienced by You and caused by Apple's alleged trade secret misappropriation in accordance with Your assertion in Your response to Apple's Interrogatory No. 27.

**REQUEST FOR PRODUCTION NO. 253:**

All Documents and Communications relating to any harm to "Plaintiffs' competitive advantage" experienced by You and caused by Apple's alleged trade secret misappropriation in accordance with Your assertion in Your response to Apple's Interrogatory No. 27.

Dated: March 5, 2021            Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP


By:  */s/Joshua H. Lerner*
      Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*

Exhibit 12
-288-

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 13

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, DC

**Before the Honorable Charles E. Bullock**
**Chief Administrative Law Judge**

| | |
|---|---|
| In the Matter of | |
| CERTAIN LIGHT-BASED PHYSIOLOGICAL MEASUREMENT DEVICES AND COMPONENTS THEREOF | Inv. No. 337-TA-1276 |

## RESPONDENT APPLE INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO COMPLAINANTS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 1-163)

Respondent Apple Inc. ("Respondent"), by counsel, and pursuant to 19 C.F.R. § 210.30, requests that Complainants Masimo Corporation and Cercacor Laboratories, Inc. (together, "Complainants") produce the following Documents and Things for inspection and copying. The inspection shall occur at the offices of Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Ave. NW, Washington, DC 20006, within (10) days of the date of service hereof, or at some other place that is mutually agreeable to the parties.

### <u>DEFINITIONS</u>

1.      "Complainants," "You," and "Your" mean Complainants Masimo Corporation and Cercacor Laboratories, Inc. (both together or individually), including any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all past or present officers, directors, employees, agents, attorneys, representatives, and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

Exhibit 13
-289-

employees, officers, agents, consultants and/or board of directors relating to the Asserted Patents, the Related Patents, or the subject matter thereof.

## REQUEST FOR PRODUCTION NO. 11

All minutes, memoranda, notes, or other Documents and Things relating to any of Complainants' corporate Board of Director meetings from 2005 to the present that relate to any Asserted Patent or Related Patent, Apple, any license or license Agreement with Apple, any license negotiations or discussions with Apple, this Investigation, or any action or litigation involving any Asserted Patent or Related Patent.

## REQUEST FOR PRODUCTION NO. 12

All Documents and Things relating to plans, suggestions, decisions, discussions, or contemplated action regarding the bringing or institution of this or any action relating to the Asserted Patents or any Related Patents against Respondent, including, without limitation, all corporate minutes and all other Documents and Things relating to meetings of either Complainant's Board of Directors, Executive Committee, other board committees, or stockholders or any other of Complainants' corporate boards, committees, or sub-committees.

## REQUEST FOR PRODUCTION NO. 13

All Documents and Things showing or relating to the conception, creation, design, development, testing, assembly, manufacture, actual or constructive reduction to practice, or alleged diligence leading to the reduction to practice, of the subject matter of each claim of each Asserted Patent, including, without limitation, any engineering notebooks, laboratory notebooks, log books, records books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, data sheets, electronically stored information, diaries, calendars, test results, invention disclosures or reports and patent prosecution records of

Exhibit 13
-290-

the Named Inventors, and any Documents or Things that Complainants contend corroborate the

conception, reduction to practice, and/or alleged diligence leading to the reduction to practice.

## REQUEST FOR PRODUCTION NO. 14

All Documents and Things relating to the identity of any Person involved in the

conception, design, development, or initial implementation of the subject matter of any claim of

any Asserted Patent or Related Patent.

## REQUEST FOR PRODUCTION NO. 15

All Documents and Things relating to any equipment, materials, tools, and facilities used

by any inventor named in any Asserted Patent or Related Patent for any work including or

leading to the conception or reduction to practice of any invention claimed in any Asserted

Patent or Related Patent.

## REQUEST FOR PRODUCTION NO. 16

All Documents and Things relating to any contractual or other Agreement relating to any

work including or leading to the conception or reduction to practice of any invention claimed in

any Asserted Patent or Related Patent

## REQUEST FOR PRODUCTION NO. 17

All engineering notebooks, laboratory notebooks, records, logs, and files (including not

limited to those generated at or by the direction of any Named Inventor) relating to the subject

matter of any Asserted Patent or Related Patent.

## REQUEST FOR PRODUCTION NO. 18

All engineering notebooks, laboratory notebooks, records, logs, and files (including those

from non-Complainant sources) relating to the research, design, development, manufacture,

assembly, testing, or operation of any Covered Product.

Exhibit 13
-291-

**REQUEST FOR PRODUCTION NO. 121**

All Documents and Things relating to any the marketing, use, sale, or offer for sale by any third party or non-party of any Covered Product.

**REQUEST FOR PRODUCTION NO. 122**

All Documents that are or have been included with any Covered Product, including, without limitation, instruction Product manuals, data sheets, installation manuals, retail kits, diagnostic software, installation software, warranties or specifications.

**REQUEST FOR PRODUCTION NO. 123**

Sales catalogs and Product literature for the Products, including but not limited to each Complainant Product and each Product of any Complainant licensee, that Complainants contend embody any of the inventions claimed by any claim of any Asserted Patent or Related Patent that have been distributed in the United States.

**REQUEST FOR PRODUCTION NO. 124**

Two samples of each Covered Product.

**REQUEST FOR PRODUCTION NO. 125**

All Documents and Things relating to U.S.-based research, development, engineering, design, production, manufacture, assembly, packaging, testing, service, warranty, repair, quality control, technical marketing, and/or technical support of any Covered Product.  This includes, without limitation, engineering notebooks, lab notebooks, blueprints, design reports, illustrations, diagrams, test specifications, data sheets, flow charts, drawings, specifications, control drawings, engineering Documents, schematic diagrams, process schematics, design Documents, project books, project files, manufacturing Documents, procurement Documents (including all invoices), requests for proposals, requests for quotations, and correspondence for all versions of any prototype, prototypes, engineering models, or other physical models.

Exhibit 13
-292-

and development, investment in licensing, and/or investment in testing relating to Covered Product, from the commencement of research or development of such Product to the present.

**REQUEST FOR PRODUCTION NO. 131**

All Documents and Things related to the costs or expenses associated with the design, research, development, manufacture, sale, or distribution of each Covered Product.

**REQUEST FOR PRODUCTION NO. 132**

Documents and Things sufficient to identify any work allegedly performed in the United States by Complainants or any third party relating to any Covered Product.

**REQUEST FOR PRODUCTION NO. 133**

Documents and Things sufficient to show Complainants' or any third party's investment in the exploitation of the Asserted Patents or Related Patents through engineering and research and development in the United States.

**REQUEST FOR PRODUCTION NO. 134**

All Documents concerning the capacity of Complainants and/or their licensees to manufacture Covered Products.

**REQUEST FOR PRODUCTION NO. 135**

All Documents concerning any awards or public recognition of Covered Products.

**REQUEST FOR PRODUCTION NO. 136**

All Documents and Things relating to the financial condition of Complainants from 2005 to the present, including but not limited to business plans, financial reports or statements, sales records or reports, auditor's letters, budgets, investor information, and presentations or reports prepared for any investors.

Exhibit 13
-293-

**REQUEST FOR PRODUCTION NO. 137**

All of Complainants' annual and quarterly reports, financial filings, and other financial statements for groups, units, divisions, or departments involved with the use, research, design, development, testing, service, repair, manufacture, operation, distribution, importation, sale, licensing and marketing of any technology, Products, or methods that Complainants claim to embody, fall within the scope of, or practice any subject matter disclosed or claimed in the Asserted Patents. This includes, without limitation, income statements, statements of operations, balance sheets, auditor's reports, statements of changes in retained earnings and notes thereto, whether prepared for internal or external purposes.

**REQUEST FOR PRODUCTION NO. 138**

Documents and Things sufficient to show the accounting methods, accounting software, and chart of accounts Complainants utilize or have utilized in generating financial statements.

**REQUEST FOR PRODUCTION NO. 139**

All Documents and Things relating to any research regarding Respondent, including any information regarding the alleged infringement, revenues, profitability, or market share of Respondent.

**REQUEST FOR PRODUCTION NO. 140**

All Documents and Things that support, rebut, or otherwise relate to Complainants' contention regarding the appropriate remedy that should be imposed pursuant to 19 U.S.C. §§ 1337(d) and (f) in the event that the Commission finds a violation of Section 337 in this Investigation, including the extent to which components of the accused Products or downstream Products containing the accused Products should be covered.

Exhibit 13
-294-

**REQUEST FOR PRODUCTION NO. 155**

All Documents and Things relating to any affidavit or declaration ever given in any proceeding by any Person whom Complainants expect to call as an expert witness at any hearing or at trial in this Investigation.

**REQUEST FOR PRODUCTION NO. 156**

All Documents and Things, not produced in response to another Request, Complainants intend to, or will, seek to introduce in evidence at any hearing or in support of any motion in this Investigation or seek to use at a deposition in this Investigation.

**REQUEST FOR PRODUCTION NO. 157**

All Documents and Things produced to either Complainant in this Investigation, formally or informally, by any third party or non-party in connection with this Investigation.

**REQUEST FOR PRODUCTION NO. 158**

All Documents and Things produced, provided, communicated by or to Complainants related to, in, or as part of this Investigation.

**REQUEST FOR PRODUCTION NO. 159**

All Documents and Things reflecting any expense projections relating to any Covered Product.

**REQUEST FOR PRODUCTION NO. 160**

The "fixed asset registry" referenced in Complaint Exhibit 28, as well as any documentation related to how the "fixed asset registry" was created and is maintained.

**REQUEST FOR PRODUCTION NO. 161**

All Documents and Things reflecting any production, sales, or expense forecasts with respect to any Covered Product.

Exhibit 13
-295-

Dated: August 19, 2021

                         Respectfully submitted,

                         */s/ Sarah R. Frazier*

                         Joseph J. Mueller
                         Richard Goldenberg
                         Sarah R. Frazier
                         WILMER CUTLER PICKERING HALE AND DORR LLP
                         60 State Street
                         Boston, MA 02109
                         Telephone: (617) 526-6000

                         Mark Selwyn
                         WILMER CUTLER PICKERING HALE AND DORR LLP
                         2600 El Camino Real
                         Suite 400
                         Palo Alto, CA 94306
                         Telephone: (650) 858-6031

                         Michael D. Esch
                         David L. Cavanaugh
                         WILMER CUTLER PICKERING HALE AND DORR LLP
                         1875 Pennsylvania Ave., NW
                         Washington, DC 20006
                         Telephone: (202) 663-6000

                         *Counsel for Respondent Apple Inc*

Exhibit 13
-296-

CONTAINS COMPLAINANTS' CONFIDENTIAL BUSINESS
INFORMATION SUBJECT TO PROTECTIVE ORDER

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, DC

**Before the Honorable Monica V. Bhattacharyya**
**Administrative Law Judge**

| |
|---|
| In the Matter of |
| |
| CERTAIN LIGHT-BASED |
| PHYSIOLOGICAL MEASUREMENT |
| DEVICES AND COMPONENTS THEREOF |

Inv. No. 337-TA-1276

**RESPONDENT APPLE INC.'S THIRD SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS AND THINGS
TO COMPLAINANTS MASIMO CORPORATION
AND CERCACOR LABORATORIES, INC. (NOS. 168-170)**

Respondent Apple Inc. ("Respondent"), by counsel, and pursuant to 19 C.F.R. § 210.30, requests that Complainants Masimo Corporation and Cercacor Laboratories, Inc. (together, "Complainants") produce the following Documents and Things for inspection and copying. The inspection shall occur at the offices of Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Ave. NW, Washington, DC 20006, within (10) days of the date of service hereof, or at some other place that is mutually agreeable to the parties.

<u>**DEFINITIONS AND INSTRUCTIONS**</u>

Apple incorporates its Definitions and Instructions from its First Set of Requests for the Production of Documents and Things as if fully set forth herein.

<u>**REQUESTS FOR PRODUCTION**</u>

- 1 -

Exhibit 13
-297-

**CONTAINS COMPLAINANTS' CONFIDENTIAL BUSINESS
INFORMATION SUBJECT TO PROTECTIVE ORDER**

████████████████████████████████████

████

## REQUEST FOR PRODUCTION NO. 169

All source code for the functionality in the Covered Products that Complainants allege practice claims of the Asserted Patents.

████████████████████████

████████████████████████████████

Dated: September 23, 2021

Respectfully submitted,

*/s/ Sarah R. Frazier*
Joseph J. Mueller
Richard Goldenberg
Sarah R. Frazier
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

Mark D. Selwyn
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6031

Michael D. Esch
David L. Cavanaugh
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 663-6000

*Counsel for Respondent Apple Inc.*

Exhibit 13
-298-

# EXHIBIT 14

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

September 2, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write to request a meet and confer pursuant to Paragraph 7 of the Special Master Order (Dkt. 470) regarding a potential motion to modify the Protective Order.

Specifically, Masimo seeks a cross-use provision whereby discovery exchanged in this litigation may be used in *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 (the "ITC Case"), and discovery exchanged in the ITC case may be used in this litigation. Given the overlapping facts in both cases, a cross-use provision would facilitate the efficient exchange of discovery and reduce discovery burdens on both parties. Indeed, Apple itself has previously stipulated to a cross-use provision in district court and ITC cases. *See Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 1232267, at *5 (N.D. Cal. Apr. 12, 2012).

Masimo made a similar proposal in the ITC Case and Apple rejected Masimo's proposal. Thus, Masimo intends to move to modify the protective order in this case to permit the use of discovery exchanged in this litigation in the ITC Case.

Please let us know when you are available to meet and confer. We are available before 2:00 pm today or all day on September 7.

Best regards,

Adam B. Powell

53866034

INTELLECTUAL PROPERTY + TECHNOLOGY LAW  |  knobbe.com

Exhibit 14
-299-

EXHIBIT 15

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian; *** Apple-Masimo |
| **Cc:** | Masimo.Apple |
| **Subject:** | RE: Masimo v. Apple - Discovery cross use |
| **Date:** | Monday, September 13, 2021 8:51:00 AM |

Brian,

Thank you for discussing this matter with me on September 9.  During the call, you indicated that you did not know Apple's position on whether it would accept any cross-use provision, but hoped to have an answer by September 10.  Please provide Apple's position promptly.

During the call, you asked if we were proposing the same cross-use provision in both the district court and ITC cases.  That is correct.  In particular, Masimo proposes that all discovery from this case should be usable in the ITC case and vice versa.

You also asked about the logistics of resolving any dispute the parties may have.  In particular, you indicated that Apple believes any dispute should be decided by Judge Early instead of Judge Guilford.  I explained that Apple's question was premature because we do not yet know whether the parties have a dispute.  We first need to know Apple's position as to whether it agrees to a cross-use provision.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, September 8, 2021 10:52 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Discovery cross use

Thanks Brian.  That should work.  Please use the following dial in:



---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, September 8, 2021 10:50 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-

Exhibit 15
-300-

Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Discovery cross use

I can do it at 1pm PT tomorrow, but will only have 30 minutes (which I think is fine, but wanted to make sure you are aware).

**Brian Andrea**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, September 8, 2021 1:45 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Discovery cross use

[WARNING: External Email]

Hi Brian,

Thanks for getting back to me.  Would 9am, 1pm, or 3pm (pacific) work for you?

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, September 8, 2021 10:24 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Discovery cross use

Hi Adam,

As you know, members of our team and client were unavailable over the weekend and yesterday due to the Monday and Tuesday holidays.  As a result of the holidays, we are still conferring on this

Exhibit 15
-301-

issue, but I anticipate that we will be available to discuss tomorrow.  Does tomorrow (Thursday) at 3:30pm ET / 12:30 PT work for you?  If so, please send a dial in number.

Thanks,
Brian

**Brian Andrea**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, September 7, 2021 8:54 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Discovery cross use

[WARNING: External Email]

Counsel,

We did not receive a response as to whether you were available to meet today on this issue.  We are also available tomorrow before 5pm.  Please let us know when is a convenient time for you.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Friday, September 3, 2021 9:38 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Discovery cross use

Counsel,

Exhibit 15
-302-

Please see the attached and let us know when you are available to meet and confer.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 15
-303-

EXHIBIT 16

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

September 13, 2021

<u>VIA E-MAIL</u>

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real, Suite 100
San Diego, CA 92130
Adam.Powell@Knobbe.com

Re: *Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.*, Case No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal.)

Dear Adam:

We write to memorialize our meet and confer on September 9, as well as respond to Plaintiffs' correspondence dated September 3, 2021 and September 13, 2021.

During the meet and confer, you confirmed that Plaintiffs are seeking modification of the Protective Order entered by Magistrate Judge Early to add a provision that would permit cross-use of all discovery exchanged in this litigation and *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 (the "ITC Case"). You confirmed that Plaintiffs are seeking full cross-use of discovery between the two cases, including *all* documents, depositions, and discovery responses, regardless of relevance.

As an initial matter, your letter was sent "pursuant to Paragraph 7 of the Special Master Order," and thus Apple requested Plaintiffs' legal support for their apparent contention that Special Master Guilford has the authority to modify Magistrate Early's Protective Order. You stated that Plaintiffs did not yet have a position on this issue, but would get back to us upon conferring with your team. Your email dated September 13, 2021 did not provide Plaintiffs' position, but rather took the position that Plaintiffs "first need to know Apple's position as to whether it agrees to a cross-use provision." While we disagree and note that, during the meet and confer, both parties agreed to look into the issues raised by the other party in parallel to avoid further delay, Apple's position regarding Plaintiffs' proposed cross-use provision is set forth below. Now that you have Apple's position, please provide a response to Apple's question. Additionally, please let us know whether it is Plaintiffs' contention that the Special Master has the authority to order that any discovery produced in the ITC Case be used in this litigation regardless of the terms of the Protective Order that is entered by the ALJ in the ITC Case. We look forward to receiving Plaintiffs' response.

With respect to Plaintiffs' cross-use provision, Apple is not willing to agree to the overly-broad cross-use provision Plaintiffs' seek. As we explained during the meet and confer, there is only minimal overlap in the subject matter of the cases, and adding a significant amount of irrelevant

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit 16
-304-

# GIBSON DUNN

Adam Powell
September 13, 2021
Page 2

documents into each proceeding would only cause confusion.  Indeed, during the meet and
confer, you conceded that there were only a limited set of documents that would be relevant in
both cases.

In an effort to provide a more workable solution, Apple suggested the possibility of a limited
cross-use agreement whereby the parties would designate relevant documents from each
proceeding for use in the other proceeding.  You indicated that such an approach would be too
burdensome.  Apple disagrees that such an approach would be burdensome—for example, if
Plaintiffs want to designate all of their discovery from the district court as being produced in
the ITC Case, and vice versa, they would be free to do so.  It is unclear how such an approach
would be burdensome.  Please let us know if you would like to discuss this further, or if you
have an alternative proposal for addressing Apple's concerns.

Sincerely,

Brian K. Andrea

Exhibit 16
-305-

# EXHIBIT 17

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

September 27, 2021

**<u>VIA EMAIL</u>**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

      Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

      We write regarding our meet and confer on September 9 and your letter of September 13.

      We disagree with Apple's attempt to summarize the meet and confer.  Masimo seeks a cross-use agreement whereby discovery designated in this case may be used in *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 (the "ITC Case"), and vice versa.  If Apple does not agree, Masimo will move the Court in this case for an order permitting discovery designated in this case to be used in the ITC Case.  Masimo will move in the ITC Case for an order permitting discovery designated in the ITC Case to be used in this case.  We also disagree with your assertion that we "conceded that there were only a limited set of documents that would be relevant in both cases."  We made no such concession and, to the contrary, argued the opposite.  As we explained, both cases involve the same product (the Apple Watch) and the same technology (light-based physiological monitoring).  We expect significant overlap in discovery.

      Apple argues a cross-use agreement would add "irrelevant documents into each proceeding" and "cause confusion."  We disagree.  If Apple believes a document is not relevant to a proceeding, it can object to the document being introduced as evidence.  Rather than follow that procedure, Apple suggests each side should instead designate documents from its production that are usable in the other proceedings.  Apple argues it would not be burdensome for Masimo to designate all discovery it has produced in both cases, but that does not address Apple's production.  As in the past, we are seeking a reciprocal arrangement.  Based on prior experience, we expect Apple would designate few (if any) documents.  Accordingly, we do not believe Apple has provided any valid argument as to why a cross-use provision is inappropriate.  We understand from your letter that the parties have reached an impasse.

      Apple also argues this dispute should be resolved by Judge Early because he issued the original Protective Order.  The Order Appointing Special Master states:

Pursuant to Rule 53(b)(2)(A), the Special Master's duty is to decide pretrial discovery disputes that were previously referred to Magistrate Judge Early under General Order No. 05-07 (except motions for reconsideration of orders previously issued by Magistrate Judge Early). For the avoidance of doubt, this will include disputes that would normally

**Knobbe Martens**

be addressed under Local Rule 37 and any motions relating to discovery under Fed. R. Civ. P. 26-37. The Special Master shall have the power to decide disputes on an ex parte basis if appropriate.

Dkt. 470 ¶ 4.  Our reading of that order is that Judge Selna referred to the Special Master everything previously referred to Magistrate Judge Early except motions for reconsideration.  Because this is a motion to modify the protective order—not a motion for reconsideration—we do not believe we can present this dispute to Magistrate Judge Early.  If Apple has any authority suggesting that the dispute should be decided by Judge Early, please let us know by September 29.

Best regards,

Adam B. Powell

54185568

Exhibit 17
-307-

EXHIBIT 18

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

September 29, 2021

VIA E-MAIL

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real, Suite 100
San Diego, CA 92130
Adam.Powell@Knobbe.com

Re:    *Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.*, Case No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal.)

Dear Adam:

We write in response to your letter dated September 27, 2021.

Apple continues to disagree that the Protective Order should be modified to allow for cross-use of all discovery in the ITC Case including, as you confirmed during our meet and confer, all documents, depositions, and discovery responses, regardless of relevance to either the litigation or the ITC Case. We were surprised to see that Plaintiffs are now walking back their concession during the meet and confer that only a limited set of documents from this litigation would also be relevant in the ITC Case. Indeed, there should be no dispute that there is only a small amount of overlap between the two proceedings – your argument that there is significant overlap relies on a gross overgeneralization of the accused products and relevant technology in the two proceedings. While it is true that "both cases involve the same product (the Apple Watch)," you fail to acknowledge that only two versions of the Apple Watch (Series 6 and 7) are at issue in the ITC Case, while Series 3-7 and SE are at issue in this litigation. Moreover, your statement that both this litigation and the ITC Case involve "the same technology (light-based physiological monitoring)" is exceedingly overbroad – neither litigation involves all "light-based physiological monitoring," despite Plaintiffs recent attempts to argue otherwise. The fact of the matter is that there are vast differences in the scope of this litigation and the ITC Case. For example, in addition to the differences in accused products noted above, Masimo has asserted different patents in this litigation and the ITC Case, and Plaintiffs' patent infringement allegations in this litigation (and all associated discovery) have been stayed for nearly a year. This litigation also involves allegations of misappropriation of trade secrets and correction of inventorship and ownership, which do not exist in the ITC Case. Moreover, this litigation does not involve issues relating to importation and domestic industry, which do exist in the ITC Case.

Plaintiffs letter makes the unsubstantiated statement that "[b]ased on prior experience, we expect Apple would designate few (if any) documents" for cross-use from this litigation for use in the ITC Case. Please provide the basis for this statement. Additionally, we note that

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit 18
-308-

**GIBSON DUNN**

Adam Powell
September 29, 2021
Page 2

Apple has already produced in the ITC Case a large volume of relevant technical documents for the Series 6 that were previously produced in this litigation. Apple has also re-produced in the ITC Case other product documentation (*e.g.*, user guides, bills of materials) and relevant prior art. Further, in response to specific inquiries from Plaintiffs in the ITC Case regarding Apple's ESI, Apple produced and cross-designated for use the transcript from the recent deposition of Robin Goldberg, Apple's 30(b)(6) designee on issues related to ESI. Pending negotiation of a supplemental Protective Order in the ITC Case, Apple also expects to produce in the ITC Case source code for the Blood Oxygen feature, that has also been produced in this litigation. In short, where material is relevant to both the ITC Case and this litigation, Apple has and will continue to produce and/or designate it for cross use in both matters and remains open to discussing limited cross-use agreements related to specific categories of documents. However, as noted above and in our letter dated September 13, 2021, Apple cannot agree to the overbroad cross-use agreement Plaintiffs seek (*i.e.*, cross-use of all documents, depositions, and discovery responses). Apple maintains, however, that the best approach is for the parties to agree to a limited cross-use agreement whereby the parties can designate relevant documents from each proceeding for use in the other proceeding.

Finally, Plaintiffs misstate Apple's position as to why this dispute should be resolved by Judge Early. Apple does not, as Plaintiffs allege, believe that Judge Early should resolve the dispute "because he issued the original Protective Order." Rather, Apple's position is that it is not appropriate to ask Judge Guilford to take on this issue, given that the Order Appointing the Special Master ("OASM") is limited to **discovery disputes**. Specifically, as Plaintiffs' letter notes, the OASM gives the Special Master authority over disputes "that would normally be addressed under Local Rule 37 and any motions relating to discovery under Fed. R. Civ. P. 26-37"). The OASM did not, as Plaintiffs seem to contend, essentially delegate all matters that Judge Early would normally hear to Judge Guilford. Plaintiffs' request is not a "motion relating to discovery," but rather is a **request to modify a Court Order** (the Protective Order). We are aware of no authority that would permit a Special Master to modify a Court Order if such authority is not explicitly granted to the Special Master by the Court. *See, e.g.*, FRCP 53. If Plaintiffs continue to believe this dispute should be resolved by Judge Guilford, Apple suggests that the parties each submit a one page letter to Judge Guilford at an agreed date and time setting forth their position on this jurisdictional issue, as Judge Guilford suggested during the hearing earlier today. This will avoid the need for the parties to incur the costs of preparing unnecessary briefing in the event Judge Guilford agrees that he does not have jurisdiction to resolve this dispute.

Exhibit 18
-309-

# GIBSON DUNN

Adam Powell
September 29, 2021
Page 3

Finally, please answer the question we posed in our letter dated September 13, 2021, which
Plaintiffs letter failed to address:

> "[P]lease let us know whether it is Plaintiffs' contention that the Special Master
> has the authority to order that any discovery produced in the ITC Case can be
> used in this litigation regardless of the terms of the Protective Order that is
> entered by the ALJ in the ITC Case."

We look forward to receiving Plaintiffs' response.

Thank you, and best regards,

*Brian Andrea*

Brian K. Andrea

Exhibit 18
-310-

EXHIBIT 19

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

October 1, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:   Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your September 29 letter.

We continue to disagree with Apple's characterizations of the meet and confer. Apple incorrectly asserts we are "walking back" our position on the amount of overlap in discovery between the district court and ITC cases. We have consistently stated that we expect significant overlap in discovery. Apple's assertions about what was said are another example of why the parties should record conferences of counsel. Apple repeatedly refused to allow Masimo to make such recordings, which would eliminate such disagreements. We reiterate our request to record conferences of counsel.

Apple asks the "basis" for Masimo's assertion that we "expect Apple would designate few (if any) documents" for cross-use. Among other things, the parties have very different definitions of relevance. For example, your letter explains that Apple believes only a "limited" number of documents are relevant in both cases, whereas Masimo believes a significant number of documents, including many already produced in this case, will be relevant and discoverable in both cases. Moreover, last week Judge Early found Apple's assessment of relevance was too narrow. We have no reason to believe Apple will suddenly agree with Masimo on the scope relevance. As a result, we expect Apple will designate far fewer documents than Masimo believes are relevant in each case. The ultimate determination on relevance should be made with the information in both parties' hands so arguments can be fully presented to the court.

Apple argues Masimo "misstates" Apple's position on whether Judge Early or Judge Guilford should resolve this dispute. That is inconsistent with our notes and recollections, and confirms we should record conferences of counsel. Regardless, we explained after the hearing on September 29 that we have no preference as to whether Judge Early or Judge Guilford decides this issue. We are concerned about delay. As we explained, the Order Appointing Special Master states: "For the avoidance of doubt, this will include disputes that would normally be addressed under Local Rule 37 and any motions relating to discovery under Fed. R. Civ. P. 26-37." We filed the original motion for protective order pursuant to Fed. R. Civ. P. 26(c) and Local Rule 37. Any motion to modify would also be made pursuant to those rules. As a result, we believe it is not clear whether the matter has been referred to Judge Guilford.

INTELLECTUAL PROPERTY + TECHNOLOGY LAW  |  knobbe.com

Exhibit 19
-311-

**Knobbe Martens**                                                       Page 2

---

     We also disagree with your assertion that Judge Guilford suggested "the parties each submit a one-page letter to Judge Guilford at an agreed date and time setting forth their position on this jurisdictional issue."  You did not attend the hearing.  Judge Guilford indicated we should brief the dispute to him and then he would issue a one-page order referring it to Judge Early.  Please let us know if Apple agrees to that procedure.  If Apple disagrees, please confirm it consents to Masimo sending the attached joint email asking Judge Guilford how he would like us to proceed.

     Finally, your letter asks if Masimo contends the "Special Master has the authority to order that any discovery produced in the ITC Case can be used in this litigation . . .."  That question is irrelevant because, as explained in my September 27 letter, we are not requesting such relief.  My letter explained that Masimo will "move the Court in this case for an order permitting discovery designated in this case to be used in the ITC Case" and will *separately* "move in the ITC Case for an order permitting discovery designated in the ITC Case to be used in this case."

                         Best regards,

                         Adam B. Powell

54185568

Exhibit 19
-312-

# EXHIBIT 20

| | |
|---|---|
| **From:** | Andrew Guilford |
| **To:** | Adam.Powell |
| **Cc:** | Heidi Adams; *** Apple-Masimo; Lerner, Joshua H.; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; Rosenthal, Brian A.; nfayad@lewisllewellyn.com; mlewis@lewisllewellyn.com; Andrea, Brian; Masimo.Apple |
| **Subject:** | Re: Masimo v. Apple (A279845-24) - Motion re Cross-Use Provision |
| **Date:** | Thursday, October 7, 2021 4:37:06 PM |

Dear Mr. Powell,

Concerning your issue below, you state that Apple "believes that the Order Appointing Special Master does not provide Your Honor with such authority." On this matter, I seek not to take action that makes my authority an issue in reviewing my rulings. I am out of town right now, but as I recall, I was not given authority to determine my authority.

Here, I will rule on the matter you raise below when a judge properly determines and states that I have such authority.

You may cite this email as a request for such a determination.

Sincerely,

Andrew J. Guilford

**Hon. Andrew J. Guilford, Ret.**
**Mediator | Arbitrator | Private Judge**
andrewguilford@judicatewest.com

> On Oct 7, 2021, at 3:26 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

Re:    *Masimo Corporation v. Apple, Inc.*
        C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE
        JW Case No. A279845-24

Dear Judge Guilford,

The parties write jointly to request clarification as to how they should present their dispute regarding a cross-use provision on discovery between this case and the pending ITC case. I have set forth the parties' respective positions on this matter below.

Masimo's position: At the hearing last week, Masimo recalls indicating it has no preference as to who decides this issue. However, based on the language of the Order Appointing Special Master, we expressed concern that Judge Early may believe he lacks jurisdiction to decide this dispute. We seek clarification to avoid the delay associated with filing a motion before Judge Early only to have him decide that he lacks jurisdiction. Masimo understood you indicated the parties should brief the matter to you and that you would issue a one-page order referring the dispute along with the briefing to Judge Early for a decision on that record.

Exhibit 20
-313-

<u>Apple's position</u>:  Apple does not have a preference who decides this issue but, as stated during the hearing last week, believes that the Order Appointing Special Master does not provide Your Honor with such authority.  Since Plaintiffs have indicated that they consent to Judge Early hearing Plaintiffs' motion for modification of the Protective Order, Apple believes Plaintiffs should file their motion directly with the Court without involving Your Honor.  Nonetheless, to the extent there continues to be a dispute over jurisdiction, Apple understood you indicated the parties should brief the jurisdictional issue alone so that you can issue an Order indicating whether the dispute should be briefed to you or Judge Early.

Please let us know how you would like us to proceed.


Best regards,

Adam


**Adam Powell**
Partner
[Adam.Powell@knobbe.com](mailto:Adam.Powell@knobbe.com)
**858-707-4245 Direct**

# Knobbe Martens
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130
[www.knobbe.com/adam-powell](http://www.knobbe.com/adam-powell)

Exhibit 20
-314-

# EXHIBIT 21

| From: | Adam.Powell |
|---|---|
| To: | Andrea, Brian |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo v. Apple (A279845-24) - Motion re Cross-Use Provision |
| Date: | Monday, October 11, 2021 8:15:54 AM |

Brian,

We have no problem briefing this as a regular motion under LR 7, so we will do it that way.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Sunday, October 10, 2021 7:41 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple (A279845-24) - Motion re Cross-Use Provision

Dear Adam,

 As we have stated many times, Apple believes this should be brought to Judge Early as a regular motion pursuant to Local Rule 7 because it is a motion to modify an order issued by the Court (the Protective Order) and not a discovery motion to which Local Rule 37 would apply. However, in the interest of avoiding this dispute, Apple will not oppose using the joint stipulation procedure pursuant to Local Rule 37 as long as Plaintiffs agree to not use this agreement to argue that Apple has conceded this is a discovery dispute.

Best Regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5509
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

Exhibit 21
-315-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, October 8, 2021 3:59 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** FW: Masimo v. Apple (A279845-24) - Motion re Cross-Use Provision

[WARNING: External Email]

Brian,

Based on Judge Guilford's email below and Apple's assertion that Masimo should brief this dispute to Judge Early, we will pursue a motion before Judge Early.  We will prepare a joint stipulation pursuant to Local Rule 37.  Please let us know today if Apple disagrees with that approach.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrew Guilford <andrewguilford@judicatewest.com>
**Sent:** Thursday, October 7, 2021 4:37 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Heidi Adams <heidi@judicatewest.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; nfayad@lewisllewellyn.com; mlewis@lewisllewellyn.com; Andrea, Brian <BAndrea@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Re: Masimo v. Apple (A279845-24) - Motion re Cross-Use Provision

Dear Mr. Powell,

Concerning your issue below, you state that Apple "believes that the Order Appointing Special Master does not provide Your Honor with such authority." On this matter, I seek not to take action that makes my authority an issue in reviewing my rulings. I am out of town right now, but as I recall, I was not given authority to determine my authority.

Here, I will rule on the matter you raise below when a judge properly determines and states that I have such authority.

Exhibit 21
-316-

You may cite this email as a request for such a determination.


Sincerely,


Andrew J. Guilford


**Hon. Andrew J. Guilford, Ret.**
**Mediator | Arbitrator | Private Judge**
andrewguilford@judicatewest.com

On Oct 7, 2021, at 3:26 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:


Re:   *Masimo Corporation v. Apple, Inc.*
C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE
JW Case No. A279845-24

Dear Judge Guilford,

The parties write jointly to request clarification as to how they should present their dispute regarding a cross-use provision on discovery between this case and the pending ITC case.  I have set forth the parties' respective positions on this matter below.

Masimo's position:  At the hearing last week, Masimo recalls indicating it has no preference as to who decides this issue.  However, based on the language of the Order Appointing Special Master, we expressed concern that Judge Early may believe he lacks jurisdiction to decide this dispute.  We seek clarification to avoid the delay associated with filing a motion before Judge Early only to have him decide that he lacks jurisdiction.  Masimo understood you indicated the parties should brief the matter to you and that you would issue a one-page order referring the dispute along with the briefing to Judge Early for a decision on that record.

Apple's position:  Apple does not have a preference who decides this issue but, as stated during the hearing last week, believes that the Order Appointing Special Master does not provide Your Honor with such authority.  Since Plaintiffs have indicated that they consent to Judge Early hearing Plaintiffs' motion for modification of the Protective Order, Apple believes Plaintiffs should file their motion directly with the Court without involving Your Honor.  Nonetheless, to the extent there continues to be a dispute over jurisdiction, Apple understood you indicated the parties should brief the jurisdictional issue alone so that you can issue an Order indicating whether the dispute should be

Exhibit 21
-317-

briefed to you or Judge Early.

Please let us know how you would like us to proceed.

Best regards,
Adam

**Adam Powell**
Partner
Adam.Powell@knobbe.com
858-707-4245 **Direct**

**Knobbe Martens**
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130
www.knobbe.com/adam-powell

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit 21
-318-