JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

MARK D. SELWYN. SBN 244180
  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: 650.858.6000 / Fax: 650.858.6100

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS-JDE<br><br>**APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE PROTECTIVE ORDER**<br><br>Date: November 18, 2021<br>Time: 10:00 a.m.<br>Ctrm: 6A<br><br>Discovery Cut-Off: 3/7/2022<br>Pre-Trial Conference: 11/21/2022<br>Trial: 12/6/2022 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS .............................................................................. 2

   A.   Masimo's District Court Action ............................................................ 2

   B.   Masimo's ITC Action ............................................................................ 3

III.  ARGUMENT ................................................................................................... 4

   A.   Legal Standard ....................................................................................... 4

   B.   Masimo Fails To Demonstrate Sufficient Relevance Of The Protected Material To The ITC Investigation. .......................................... 5

   C.   Apple Would Suffer Substantial Prejudice From Masimo's Automatic Cross-Use Of Discovery In The ITC ................................. 10

   D.   Apple's "Alternative Proposal" Is Reasonable And Workable ............ 13

IV.  CONCLUSION .............................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

### CASES

*CDN, Inc. v. Capes*,
  197 F.3d 1256 (9th Cir.1999) .................................................................................10

*Cummins-Allison Corp. v. SBM Co.*,
  2013 WL 12250448 (D. Haw. Nov. 8, 2013) .........................................................12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ........................................................................*passim*

*Halo Elecs., Inc. v. XFMRS, Inc.*,
  2012 WL 2238022 (N.D. Cal. June 15, 2012) .......................................................12

*Immunex Corp. v. Sanofi*,
  2018 WL 11211727 (C.D. Cal. Jan. 18, 2018) ................................................11, 12

*Nichia Corp. v. Seoul Semiconductor Co.*,
  2007 WL 2533729 (N.D. Cal. Aug. 31, 2007) .......................................................10

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
  2019 WL 201440 (S.D. Cal. Jan. 15, 2019) .............................................................7

*Qualcomm Inc. v. Apple Inc.*,
  2019 WL 4284531 (S.D. Cal. Mar. 27, 2019) ..........................................................7

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
  2008 WL 2813081 (D. Neb. July 18, 2008) .............................................................5

*Universal Ent. Corp. v. Aruze Gaming Am., Inc.*,
  2020 WL 2308226 (D. Nev. May 8, 2020) ..............................................................5

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
  214 F.R.D. 583 (C.D. Cal. 2003) .............................................................................5

*VLSI Tech. LLC v. Intel Corp.*,
  No. 5:17-cv-5671 (N.D. Cal. Feb. 5, 2021), Dkt. 297...................................... 11, 12

*Wilk v. Am. Med. Ass'n*,
  635 F.2d 1295 (7th Cir. 1980) ..............................................................................4, 5

## I. INTRODUCTION

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (together "Masimo") seek the aid of this Court in executing an end-run around discovery limitations in an unrelated proceeding before the International Trade Commission ("ITC") by requesting a modification of the Protective Order that would enable them to broadly "use discovery from this case" in *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, Inv. No. 337-TA-1276 (USITC). Masimo has not identified what specific documents, discovery responses, or depositions in this case are relevant to the ITC Investigation, which involves different claims from this case. However, Masimo's Requests for Production Nos. 131-133 propounded in the ITC, consistent with its statements during the meet-and-confer process on this motion, reveal Masimo's intention is to use all discovery in this case—all documents produced by Apple, all Apple interrogatory responses, and all Apple depositions—in the ITC Investigation, which is scheduled for hearing in seven months.

There is no basis for subjecting Apple and the ITC Administrative Law Judge ("ALJ") to Masimo's planned deluge of irrelevant discovery in the ITC Investigation. The Court should deny Masimo's requested modification of the Protective Order because (1) the protected material in this case is not sufficiently relevant to the unrelated ITC Investigation, which solely involves patent infringement claims that are not asserted in this case and that have no relation to Masimo's trade secret or correction of inventorship/ownership claims pending in this case; and (2) Masimo's requested modification would eviscerate Apple's reliance interests in the stipulated provisions of the Protective Order, and force Apple to challenge the discoverability and admissibility of thousands of irrelevant documents and discovery materials from this case, including Apple's own documents and materials produced herein, when Masimo produces them in the ITC Investigation.

## II. STATEMENT OF FACTS

### A. Masimo's District Court Action

Masimo filed its original Complaint in this action in January 2020. In its latest, Fourth Amended Complaint, Masimo alleges infringement of 12 patents. *See* Dkt. 296-1 at 9-11 [Fourth Amended Complaint] (First through Twelfth Causes of Action). The products Masimo accuses of infringement include "the Apple Watch Series 3[/4] and later devices." *See, e.g., id*. at 67, 71, 75. Masimo also alleges misappropriation of purported trade secrets under California's Uniform Trade Secret Act. *Id*. at 80 (Thirteenth Cause of Action). Masimo alleges that Apple used Masimo's trade secrets in, *inter alia*, the Apple Watch Series 4, 5, and 6. *See, e.g.*, *id*. at 8-9, 87-88; Dkt. 506 ("Br.") at 2. Lastly, Masimo seeks orders correcting the inventorship of six Apple patents based on their alleged incorporation of Masimo inventions and/or trade secrets, and orders declaring that Masimo is at least a joint owner of those patents. Dkt. 296-1 at 104-130 (Fourteenth through Twenty-Seventh Causes of Action).

Notably, on October 13, 2020, the Court **stayed** Masimo's patent infringement claims, i.e., the first through twelfth causes of action, pending resolution of Apple's petitions for *inter partes* review challenging the patentability of the asserted patent claims. Dkt. 222 at 1. The Court did not stay the trade secret and related correction of inventorship/ownership claims, i.e., the thirteenth through twenty-seventh causes of action. *Id*. at 8. Thus, discovery has proceeded only as to those claims. Apple has produced over 50,000 documents and responded to 22 interrogatories and 524 requests for production—discovery related predominantly to Masimo's trade secret claims.

Many of the documents and responses Apple has provided in discovery have been designated Protected Material under the Court's Protective Order, and are subject to the Protective Order's restrictions on use in other proceedings. Dkt. 67 at 6. Section 5.1 of the Protective Order states: "All Protected Material shall be used

*solely for this case* or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation *any other litigation*, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function." *Id*.[1] Although other provisions of the Protective Order were disputed by the parties, both sides agreed on Section 5.1, including the prohibition on using Protected Material "for any other purpose whatsoever" besides "this case or any related appellate proceeding." *See* Dkt. 61-2 at 91 [Redline Comparing Masimo's and Apple's Proposed Protective Orders].

### B. Masimo's ITC Action

On June 29, 2021, Masimo filed a complaint in the ITC seeking to institute an investigation of Apple's alleged infringement of five Masimo patents. *See* Dkt. 507-1 at 184-185 [Powell Ex. 6; Amended ITC Complaint]. ***None*** of the patents asserted in the ITC is asserted in this case. In the ITC, Masimo has accused the Apple Watch Series 6 and later generations of infringement—and not earlier generations of the Apple Watch that are at issue in this case. *Id*. at 184. Masimo does not assert any claims for trade secret misappropriation or correction of inventorship/ownership in the ITC. There are also no damages at issue in the ITC.

On August 13, 2021, the ITC instituted an Investigation solely limited to the issues of (1) whether Apple infringes the five asserted patents by importing the Apple Watch Series 6 and other "wearable electronic devices with light-based pulse oximetry functionality"; and (2) whether Masimo has established an industry in the United States practicing those asserted patents. Dkt. 507-1 at 226 [Powell Ex. 7; Notice of Institution] (defining the "Scope Of Investigation").

Discovery in the ITC Investigation began two months ago. Masimo has since propounded 149 requests for production, 70 interrogatories, and 42 requests for admission. Notably, although Apple objected to Masimo's Requests for Production Nos. 131-133 in the ITC seeking "[a]ll documents and things produced by Apple,"

---

[1] All emphasis has been added, unless otherwise noted.

"[a]ll transcripts of any depositions taken," and "[a]ll responses to interrogatories or to requests for admission served by Apple" in this district court case, on the grounds that those requests seek irrelevant information and were disproportionate in the context of the ITC Investigation, Masimo has not asked the ALJ to compel Apple's production of such documents and information. *See* Ex. 1 [10/14/21 Apple's Responses to Masimo's Third Set of Requests for Production (Nos. 131-133)].[2] In fact, Masimo's only request to compel discovery in the ITC Investigation to date is regarding its requests for production of information related to importation and inventory, issues that are unique to the ITC (and to which Apple has offered to stipulate in the ITC).

### III.  ARGUMENT

#### A.  Legal Standard

When seeking relief from a protective order to obtain protected materials for use in other litigation, "the collateral litigant must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein. … Such relevance hinges 'on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.'" *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (citation omitted). The protected materials should be "sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided." *Id.* (citing *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1980) (modifying protective order after finding that "much, if not most" of the protected discovery would be eventually discoverable in the collateral suit)). "Requiring a showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding." *Id.* The district court also "must weigh the countervailing reliance

---

[2] All citations to "Ex. __" refer to exhibits to the Declaration of Mark D. Selwyn filed herewith.

interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id*. at 1133.

### B. Masimo Fails To Demonstrate Sufficient Relevance Of The Protected Material To The ITC Investigation.

At the outset, Masimo erroneously argues that the extent of relevancy it needs to show is "minimal" and "not high," and invites the Court to modify the protective order "without making findings on relevance."[3] Br. at 5-6. That suggestion is expressly contradicted by *Foltz*, on which Masimo purports to rely. In *Foltz*, the Ninth Circuit held that the protected discovery must be "sufficiently relevant to the collateral litigation that ***a substantial amount of duplicative discovery*** will be avoided by modifying the protective order." 332 F.3d at 1132. The Ninth Circuit explained that there would be sufficient relevance when "'***much, if not most***,' of the protected discovery would be eventually discoverable in the collateral suit." *Id*. (quoting *Wilk*, 635 F.2d at 1300). For example, in *Foltz* itself, the original litigation

---

[3] Masimo's cases (Br. at 5-6) reinforce, rather than diminish, *Foltz*'s requirement that the movant show "sufficient[] relevan[ce] to the collateral litigation." *Foltz*, 332 F.3d at 1132. For example, *Universal Entertainment Corp. v. Aruze Gaming America, Inc*., 2020 WL 2308226 (D. Nev. May 8, 2020), did not suggest that the required showing of relevance is "not high." Indeed, the district court ***refused to modify*** the protective order to permit discovery to be used in one collateral action because there was insufficient evidence of "overlap of facts and issues between the cases," and the district court only permitted discovery to be used in the second collateral action because the two actions shared common issues of "fraud" or "potentially fraudulent acts" by the defendant. *Universal*, 2020 WL 2308226, at *1, *4. Similarly, in *Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P*., 214 F.R.D. 583 (C.D. Cal. 2003), the district court found that four patent opinions produced by the plaintiff in a declaratory judgment action for non-infringement and invalidity were relevant to the defendant/patent owner's mirror-image infringement action against the plaintiff's parent company. *Id*. at *584, *586. Lastly, contrary to Masimo's argument, *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc*., 2008 WL 2813081 (D. Neb. July 18, 2008), did not modify a protective order "without making findings on relevance." Br. at 6. *Streck* found that a collateral, patent interference proceeding was "related" to the patent infringement action by virtue of sharing the same "patents and subject matter." 2008 WL 2813081, at *1-2.

involved claims that an insurance company conspired with a medical review company to defraud the plaintiffs of personal injury protection; after the original litigation settled, different plaintiffs brought a collateral action based on the ***same claims***: "that [the insurance company] conspired with [the medical review company] to wrongfully deny personal injury coverage … by preparing fraudulent medical reviews." *Id*. at 1128-1129.  Thus, most of the discovery produced by the insurance company in *Foltz* would have been relevant to the intervenors' claims in the collateral litigation.

Under the correct standard, Masimo cannot demonstrate that the discovery it seeks to use in the ITC Investigation is "sufficiently relevant … that a substantial amount of duplicative discovery will be avoided" and that "'much, if not most,' of the protected discovery would be eventually discoverable in the collateral suit." *Foltz*, 332 F.3d at 1132 (citation omitted).

***First***, there is no overlap between claims and legal issues currently pending in this case and those in the ITC Investigation, and only superficial overlap on a small number of factual issues.  The scope of the ITC Investigation is narrowly focused on whether the Apple Watch Series 6 and Series 7 devices infringe five Masimo patents, and whether Masimo has established a domestic industry practicing those patents.  Dkt. 507-1 at 226 [Notice of Institution].  It is undisputed that there is no overlap in patents asserted in this case and those asserted in the ITC Investigation.  There are no corrections of inventorship/ownership or damages available in the ITC Investigation, and there is no "domestic industry" at issue in this case.  *Compare* Dkt. 296-1 [Fourth Amended Complaint] at 130-133, *with* Dkt. 507-1 at 226 [Notice of Institution].  Even if there were any overlapping claims of patent infringement (and there are not), this Court has stayed discovery in this case other than on Masimo's trade secret and correction of inventorship/ownership claims.  Dkt. 222 at 8.  Thus, the discovery ongoing in this action that Masimo now seeks to cross-produce in the ITC is currently, and may remain, ***limited to whether***

*Apple used trade secrets* that Masimo contends are **not publicly-available**—*i.e.*, **not** claimed in patents Masimo asserts in the ITC—and whether Masimo is entitled to correction of inventorship/ownership or damages as a result. But there are no trade secret, inventorship/ownership, or damages claims in the ITC Investigation. *See* Dkt. 507-1 at 226 [Notice of Institution]. The lack of overlap between the claims and legal issues precludes any finding of relevance under *Foltz*.

**Second**, even if certain information or documents produced by Apple in this case will also be produced by Apple in the ITC Investigation, Masimo fails to justify the wholesale cross-use of *all* documentary, written, and deposition discovery of Apple in the ITC investigation that it seeks.[4] *See Foltz*, 331 F.3d at 1132 (noting that cross-use would be appropriate where "substantial amount of duplicative discovery will be avoided," *e.g.*, if "'much, if not most,' of the protected discovery would be eventually discoverable in the collateral suit" (citation omitted)); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2019 WL 201440, at *2 (S.D. Cal. Jan. 15, 2019) (refusing to permit automatic discovery sharing in collateral litigation where court was "not persuaded by Plaintiff's argument that **all discovery** in [the patent infringement] case is necessarily relevant to the other cases," none of which were patent infringement cases); *cf. Qualcomm Inc. v. Apple Inc.*, 2019 WL 4284531, at *2 (S.D. Cal. Mar. 27, 2019) (declining to order "a comprehensive

---

[4] *See, e.g.,* Ex. 2 [10/14/21 Apple's Responses to Masimo's Third Set of Requests for Production (Nos. 131-133)] (Masimo seeking, in the ITC, production of "all documents and things produced by Apple," "[a]ll transcripts of any depositions taken," and "[a]ll responses to interrogatories or to requests for admission served by Apple" in this case); Dkt. 507-1 at 312 [Powell Ex. 15] ("Masimo proposes that all discovery from this case should be usable in the ITC case and vice versa."); Dkt. 507-1 at 317 [Powell Ex. 16] ("You confirmed that Plaintiffs are seeking full cross-use of discovery between the two cases, including all documents, depositions, and discovery responses, regardless of relevance."); Dkt. 507-1 at 323 [Powell Ex. 18] (Apple disagreeing that "the Protective Order should be modified to allow for cross-use of all discovery in the ITC Case including, as you confirmed during our meet and confer, all documents, depositions, and discovery responses, regardless of relevance to either the litigation or the ITC Case.").

-7-
APPLE'S OPPOSITION TO PLAINTIFFS' MOT. TO MODIFY THE PROTECTIVE ORDER  CASE NO. 8:20-CV-00048-JVS-JDE

cross-use agreement" because plaintiff failed to show "[t]he relevance of ***all the discovery*** produced," and "[c]ertainly not every document produced … is relevant"). Masimo does not even attempt to show why "all discovery" in this case—including all depositions and interrogatory responses—would be discoverable in the ITC Investigation. For example, the Apple Watch SE, Series 3, 4, and 5 products; Masimo's 12 patents asserted in the district court case; Masimo's trade secrets; Masimo's correction of inventorship and patent ownership claims; and damages are not at issue in the ITC Investigation.

Masimo offers examples of overlapping "allegations," but they do not demonstrate relevancy of the protected discovery to the ITC Investigation. For example, Masimo argues that both this case and its ITC Complaint "involve Masimo's allegations that Apple hired Masimo employees, including Michael O'Reilly and Marcelo Lamego, to incorporate Masimo's technology into Apple Watch products." Br. at 6. That attempt to manufacture a connection to the Investigation, simply by adding *de minimis* and extraneous allegations to its ITC Complaint that have nothing to do with their patent infringement allegations, should be rejected. Permitting such a loophole would invite every litigant to evade *Foltz*'s relevancy requirement by repeating a handful of superfluous allegations in its collateral pleading or interrogatory responses. Masimo's allegations that Apple hired Mr. O'Reilly and Mr. Lamego to steal Masimo's trade secrets are fundamentally irrelevant to the elements of the patent infringement claims in the ITC—*i.e.*, whether Apple's Series 6 and 7 Watches practice each limitation of a valid, asserted patent claim—or the domestic industry issues in the ITC. Masimo also alleges that "both cases [] involve Apple's use of Masimo's non-invasive monitoring technology" and "light-based physiological monitoring features … are at issue in both cases." *Id*. But Masimo's hand-waving transparently elides the significant differences between the trade secrets identified in its Fourth Amended Complaint, and the specific patent claims asserted in the ITC Investigation—neither

of which encompasses all "non-invasive monitoring" or "light-based physiological monitoring." Finally, Masimo vaguely argues that it accused "overlapping versions of the same Apple product in both cases." *Id*. To be certain, the Apple Watch products at issue in the district court are the SE, Series 3, Series 4, Series 5, Series 6, and Series 7; the Apple Watch products at issue in the ITC Investigation are the Series 6 and Series 7—*i.e.*, only Apple's wearable electronic devices "with light-based pulse oximetry functionality." *See* Dkt. 296-1 at 87; Dkt. 507-1 at 226. At best, Masimo concedes that a large portion of protected discovery it seeks to use— on the SE, Series 3, Series 4, and Series 5 products—would not be relevant in the ITC. Even as to the Apple Watch Series 6 and Series 7, Masimo fails to demonstrate that a "substantial amount" of Apple Watch Series 6 and Series 7 documents would be specifically related to misappropriation of Masimo's alleged trade secrets, and also infringement of the patent claims asserted in the ITC.

Masimo also argues that Masimo and Apple have "served overlapping discovery requests" in the district court and ITC, and therefore "[b]oth parties will produce overlapping documents." Br. at 6. To begin with, Masimo has served a staggering 574 requests for production in the district court, and has identified a mere *eight* that allegedly "overlap" with the 149 requests for production it served in the ITC. Br. at 6; *see, e.g.*, Dkt. 507-1 at 274-276 [Powell Ex. 10]. Moreover, Masimo's superficial comparisons are incorrect; the productions will not substantially overlap because the issues and claims in the district court and ITC actions are very different. To the extent a subset of discovery Apple has produced in this case is also relevant to the ITC Investigation, Apple is producing it in that Investigation. And to the extent Masimo believes there are categories of documents relevant to the ITC Investigation that Apple is not producing, it should raise that to the ALJ through the proper channels, not ask this Court for carte blanche to substitute Masimo's own relevancy judgments for that of the ALJ.

Finally, Masimo argues that "discovery in this case has been contentious and

it appears that discovery in the ITC Investigation will be similarly contentious." Br. at 7. But thus far, Masimo has only raised a single complaint about Apple's document production with the ALJ, related to an ITC-specific issue on which Apple offered to stipulate. *See supra* at 4. Nor does Masimo contend its sole complaint would have been solved by cross-use (it would not have). Masimo's conclusory assertion and speculation that discovery could be "contentious" in a collateral litigation is no basis to justify automatic cross-use of all discovery from this case.

### C. Apple Would Suffer Substantial Prejudice From Masimo's Automatic Cross-Use Of Discovery In The ITC.

Masimo's requested modification of the Protective Order would prejudice Apple in at least two ways: (1) The modification would rock Apple's reliance interests in Masimo's stipulations and the Court's Protective Order, and (2) it would inevitably lead to Masimo dumping Apple written discovery responses, deposition transcripts, and tens of thousands of Apple documents from this case into the ITC record, forcing Apple to move to exclude wide swathes of irrelevant material (including its own material), and causing the ALJ to expend significant resources deciding such motions.

***First***, in the Joint Stipulation Regarding Plaintiffs' Motion for a Protective Order, the parties requested that the Court resolve certain disputed provisions in the protective order, but agreed to the inclusion of most other provisions, including Section 5.1. *See* Dkt. 61-2 at 91. The Court's Protective Order adopted the agreed-upon language for Section 5.1 verbatim. Dkt. 67 at 6. Apple then relied on Masimo's stipulation and the Protective Order in producing documents and discovery responses in this litigation. *See CDN, Inc. v. Capes*, 197 F.3d 1256, 1258 (9th Cir.1999) ("[C]ourts will enforce [stipulations] absent indications of involuntary or uninformed consent."); *Nichia Corp. v. Seoul Semiconductor Co.*, 2007 WL 2533729, at *2 (N.D. Cal. Aug. 31, 2007) (Stipulations are agreements "not only between the parties, but also between them and the court, which the latter

is bound to enforce." (internal quotation marks and citation omitted)). A modification of the stipulated provisions of the Protective Order, in the middle of the parties' litigation, would unfairly undermine Apple's reliance on the understanding that its discovery would not be taken and used, out of context, in collateral litigations involving different claims, different issues, and a different set of products. *See VLSI Tech. LLC v. Intel Corp.*, No. 5:17-cv-5671 (N.D. Cal. Feb. 5, 2021), Dkt. 297 (finding that non-movant "relied on the protective order and it would be unfair to grant the" modification of the protective order to permit cross-use); *Immunex Corp. v. Sanofi*, 2018 WL 11211727, at *2 (C.D. Cal. Jan. 18, 2018) (denying modification of protective order and explaining: "For a company involved in litigation with a direct competitor in [a] highly competitive [] market, such reliance cannot be overstated, and outweighs the possibility that some duplicative discovery may occur.").[5]

*Second*, Masimo has made its intent clear, and the ramifications are equally clear. In the ITC, Masimo demanded that Apple produce "all documents and things produced by Apple," "[a]ll transcripts of any depositions taken," and "[a]ll responses to interrogatories or to requests for admission served by Apple" in this district court case. *See* Ex. 1 [10/14/21 Apple's Responses to Masimo's Third Set of Requests for Production (Nos. 131-133)]. Apple refused because, *inter alia*, the vast majority of discovery in this case is clearly not relevant and proportionate to Masimo's claims in the ITC Investigation, and because Masimo's requests attempted to circumvent the limitations on discovery in the ITC, e.g., on the number of interrogatories and depositions. *Id*. Masimo did ***not*** seek relief from the ALJ. Instead, Masimo has attempted to "subvert limitations on discovery in another proceeding" by seeking the ability to cross-produce all of Apple's discovery from this litigation in the ITC.

---

[5] For its part, Masimo alleges that it "compete[s] with Apple." *See* Dkt. 222 at 6-7 (reciting Plaintiffs' competition allegations and noting that "to the extent that Plaintiffs and Apple are direct competitors in the broad market for consumer pulse oximetry products, they are [] not sole competitors").

*Foltz*, 331 F.3d 1122, 1132. The prejudice to Apple would be manifold. For example, Apple would be forced to prepare its ITC witnesses and experts on tens of thousands of irrelevant documents that never should have been produced. And the Pandora's Box would be incredibly arduous, if not impossible, to restore. Apple could be forced to move to exclude thousands of documents. That practice would not only severely prejudice Apple but unnecessarily burden the ITC ALJ as well. In contrast, Masimo has not shown that it has been prejudiced at all by the normal practice of requesting Apple produce relevant discovery in the ITC Investigation.

Masimo's arguments that Apple will suffer no prejudice are unpersuasive. *First*, Masimo argues that Apple categorically cannot "claim it would suffer any prejudice" because Masimo is party to both this litigation and the ITC Investigation. Br. at 7. But courts routinely find prejudice, for reasons other than disclosure to third-parties, when the collateral litigation involves the same parties. *See, e.g.*, *VLSI*, No. 5:17-cv-5671, Dkt. 297 (denying modification and finding prejudice to non-movant, where collateral litigation involved same parties); *Immunex*, 2018 WL 11211727, at *2 (same). *Second*, Masimo argues that the "ultimate admissibility" of discovery would be decided by the ITC.[6] But forcing Apple to argue the "ultimate admissibility" of thousands of documents, dozens of written discovery requests, and dozens of deposition transcripts before the ITC ALJ, when the vast majority of it is irrelevant to the patent claim in the Investigation, manifestly prejudices Apple ***and***

---

[6] Masimo's cases are readily distinguishable. In *Cummins-Allison Corp. v. SBM Co.*, 2013 WL 12250448 (D. Haw. Nov. 8, 2013), the district court did not address the burden to the producing party, or the court in the collateral action, of litigating thousands of 'admissibility' questions because the cases were intimately related. Indeed, the district court found "disingenuous Defendant's claims of irrelevance given its insistence, in connection with the motion to stay, that this action is **basically identical** to the [collateral] Korean declaratory judgment action." *Id.* at *2. Likewise, *Halo Electronics, Inc. v. XFMRS, Inc.*, 2012 WL 2238022 (N.D. Cal. June 15, 2012), did not address any burden because the movant only sought to cross-use a small handful of discovery materials: one rough deposition transcript and certain email exhibits. *Id.* at *1. Here, in contrast, Masimo seeks to cross-use all discovery.

the ALJ.

### D. Apple's "Alternative Proposal" Is Reasonable And Workable

Apple proposed that each side could determine which documents that it produced in this case are relevant to discovery in the ITC, and designate for use or produce those documents in the ITC. Apple has already done just that. For example, in the ITC investigation, Apple has already (1) produced technical documents for the Apple Watch Series 6 that were previously produced in this case; (2) produced other product documentation (e.g., user guides, bills of materials) produced in this case; (3) produced and cross-designated for use the transcript from the deposition of an Apple witness pertaining to Apple's storage of electronic discovery. *See* Dkt. 507-1 at 324 (Powell Ex. 18). In other words, in the relatively few areas where material in this case is relevant to the ITC Investigation, Apple has produced and will produce it in the ITC Investigation, or cross-designate it for use in the Investigation. Apple expects Masimo to do likewise. And to the extent a party seeks relevant discovery in the ITC Investigation and it is not produced, the appropriate remedy is to seek relief from the ALJ who is best positioned to make that determination. As noted, Masimo has yet to seek the ALJ's assistance in compelling the production of any materials that it alleges overlap with discovery in this case.

Apple's proposal is the normal and presumptively reasonable process of conducting discovery, and Masimo has failed to justify a departure from that process in this case.

## IV. CONCLUSION

For these reasons, Apple respectfully requests that the Court deny Plaintiffs' Motion to Modify the Protective Order.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: October 28, 2021 | Respectfully submitted, |
| 3 | | |
| 4 | | By:    */s/ Mark D. Selwyn*<br>MARK D. SELWYN, SBN 244180 |
| 5 | | mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING |
| 6 | |   HALE AND DORR LLP |
| 7 | | 2600 El Camino Real, Suite 400<br>Palo Alto, California 94306 |
| 8 | | Tel:    (650) 858-6000 |
| 9 | | Fax:   (650) 858-6100 |
| 10 | | JOSHUA H. LERNER, SBN 220755 |
| 11 | | jlerner@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP |
| 12 | | 555 Mission Street Suite 3000 |
| 13 | | San Francisco, CA 94105 |
| 14 | | H. MARK LYON, SBN 162061 |
| 15 | | mlyon@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP |
| 16 | | 1881 Page Mill Road |
| 17 | | Palo Alto, CA 94304-1211 |
| 18 | | BRIAN M. BUROKER, *pro hac vice* |
| 19 | | bburoker@gibsondunn.com<br>BRIAN K. ANDREA, *pro hac vice* |
| 20 | | bandrea@gibsondunn.com |
| 21 | | GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W. |
| 22 | | Washington, D.C. 20036 |
| 23 | | |
| 24 | | BRIAN A. ROSENTHAL, *pro hac vice*<br>brosenthal@gibsondunn.com |
| 25 | | GIBSON, DUNN & CRUTCHER LLP |
| 26 | | 200 Park Avenue<br>New York, NY 10166-0193 |
| 27 | | |
| 28 | | ILISSA SAMPLIN, SBN 314018<br>isamplin@gibsondunn.com |

-14-

APPLE'S OPPOSITION TO PLAINTIFFS' MOT. TO MODIFY THE PROTECTIVE ORDER  CASE NO. 8:20-CV-00048-JVS-JDE

GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue Los Angeles, CA 90071-3197

ANGELIQUE KAOUNIS, SBN 209833
akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067

*Attorneys for Defendant Apple Inc.*