JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING,
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

        Plaintiffs,

    v.

APPLE INC.,
a California corporation,

        Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE THIRTEENTH CAUSE OF ACTION FOR TRADE SECRET MISAPPROPRIATION, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE**

**<u>Hearing</u>**

Date: February 7, 2022
Time: 1:30pm
Courtroom: 10C
Judge: Hon. James V. Selna

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE     CASE NO. 8:20-cv-00048-JVS (JDEX)

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   UNDISPUTED FACTUAL BACKGROUND ..................................................... 2

    A.   Plaintiffs Send A Letter To Apple In January 2014 Indicating That Plaintiffs' Trade Secrets Would "Necessarily" Be Used Or Disclosed If Lamego Or O'Reilly Worked On Apple's Healthcare Technology .................................................................................................. 2

    B.   O'Reilly And Lamego Develop Healthcare Technology And ███████████████ ........... 3

    C.   Plaintiffs File This Lawsuit In January 2020, Accusing Apple of Misappropriating Plaintiffs' Alleged Trade Secrets From O'Reilly And Lamego .................................................................................................. 6

III.  LEGAL STANDARD ........................................................................................... 8

IV.   ARGUMENT ......................................................................................................... 8

    A.   This Court Should Grant Summary Judgment On Plaintiffs' Trade Secret Claim Because Plaintiffs Waited More Than Three Years To File This Suit After Their Own Actions Indicate They Had A Suspicion Of Wrongdoing ................................................................................ 8

        1.   The Undisputed Facts Establish That Plaintiffs Had At Least Constructive Notice Of Their Trade Secret Claim By October 2016 ..................................................................................................... 8

        2.   The Bare Allegations Of The Fourth Amended Complaint Do Not Create A Genuine Dispute Of Material Fact Over Whether Plaintiffs Had Constructive Notice ................................. 12

    B.   Alternatively, The Court Should Bifurcate Trial On Apple's Statute Of Limitations Defense. ............................................................................. 14

        1.   Bifurcating Trial On Apple's Statute Of Limitations Defense Will Promote Judicial Economy And Convenience. ..................... 15

        2.   A Separate Statute Of Limitations Trial Will Avoid Unfairly Prejudicing Apple. ...................................................................... 16

V.    CONCLUSION ................................................................................................... 16

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE                 i                 CASE NO. 8:20-cv-00048-JVS (JDEx)

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
    1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................... 12

*Cypress Semiconductor Corp. v. Superior Court*,
    163 Cal. App. 4th 575 (2008) ........................................................................ 9

*E-Fab, Inc. v. Accts. Inc. Servs.*,
    153 Cal. App. 4th 1308 (2007) ...................................................................... 9

*Ellingson Timber Co. v. Great Northern Ry.*,
    424 F.2d 497 (9th Cir. 1970) ........................................................................ 15

*Foltz v. City of Largo*,
    2011 WL 1690010 (M.D. Fla. May 3, 2011) ................................................. 16

*Fulfillium v. ReShape Med. LLC*,
    2018 WL 11354522 (C.D. Cal. Nov. 6, 2018) ................................................ 9

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
    857 F. Supp.2d 997 (S.D. Cal. 2012) ................................................... 8, 9, 12

*Gomez v. City of Torrance*,
    438 F. App'x 626 (9th Cir. 2011) ................................................................. 14

*Grisham v. Philip Morris, Inc.*,
    2009 WL 9102320 (C.D. Cal. Dec. 3, 2009) ............................................ 8, 14

*Hangarter v. Provident Life & Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ........................................................................ 15

*Heinrich v. Ethicon, Inc.*,
    2021 WL 2801961 (D. Nev. Apr. 15, 2021) ................................................. 16

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO
BIFURCATE TRIAL IN THE ALTERNATIVE    ii    CASE NO. 8:20-cv-00048-JVS (JDEx)

*Herremans v. BMW of N. Am., LLC*,
      2014 WL 5017843 (C.D. Cal. Oct. 23, 2014) ................................................13

*Hirst v. Gertzen*,
      676 F.2d 1252 (9th Cir. 1982) ........................................................................16

*Jem Access. v. JVCKENWOOD USA Corp.*,
      2021 WL 706646 (S.D.N.Y. Feb. 22, 2021) ...................................................15

*Kleinhammer v. City of Paso Robles*,
      2008 WL 11411408 (C.D. Cal. Oct. 10, 2008) ...............................................16

*McBroom v. Ethicon*,
      2021 WL 2661463 (D. Ariz. June 29, 2021)...................................................17

*Memory Corp. v. Kentucky Oil Tech., N.V.*,
      2007 WL 2746736 (N.D. Cal. Sept. 20, 2007)................................................13

*MGA Entertainment, Inc. v. Mattel, Inc.*,
      41 Cal. App. 5th 554 (2019)..............................................................................9

*Mullally v. Jones*,
      2007 WL 1213704 (D. Nev. Apr. 24, 2007) ...................................................15

*Rutledge v. Boston Woven Hose*,
      576 F.2d 248 (9th Cir. 1978).............................................................................13

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
      909 F. Supp. 1353 (C.D. Cal. 1995)................................................................10

*Wang v. Palo Alto Networks, Inc.*,
      2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ..................................................8

*Wolf v. Travolta*,
      167 F. Supp. 3d 1077 (C.D. Cal. 2016).............................................1, 8, 11, 13

**STATUTES, RULES, AND REGULATIONS**

Cal. Civ. Code § 3426.6.......................................................................................1, 7

Federal Rule of Civil Procedure 42(b)........................................................14, 15, 16

Gibson, Dunn &
Crutcher LLP

Memo. iso Apple's Mot. For Partial Summary Judgment On Plaintiffs' CUTSA Claim, Or To Bifurcate Trial In The Alternative          iii          Case No. 8:20-cv-00048-JVS (JDEx)

Wright & Miller *Federal Practice & Procedure* § 2388 (3d ed.) ........................... 14

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO
BIFURCATE TRIAL IN THE ALTERNATIVE                iv                CASE NO. 8:20-cv-00048-JVS (JDEx)

1

## I.   **INTRODUCTION**

2        California law requires a trade secret plaintiff to file suit within three years after

3   it   discovered   or   could   have   reasonably   discovered   the   defendant's   purported

4   misappropriation.   Cal. Civ. Code § 3426.6.   That period starts when "the plaintiff had

5   reason to *at least suspect* that" they had been harmed by the defendant (i.e., constructive

6   notice).   *See Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1102 (C.D. Cal. 2016) (alteration

7   and quotation marks omitted).   In other words, "[o]nce the plaintiff has a suspicion of

8   wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit

9   on her rights."   *Id.*

10        Here, Plaintiffs claim that Apple improperly acquired their alleged trade secrets

11   from two of Plaintiffs' former employees (Dr. Michael O'Reilly and Dr. Marcelo

12   Lamego), whom began working at Apple in July 2013 and January 2014.   Statement of

13   Undisputed Facts ("SUF") Nos. 1-3.   The undisputed factual record confirms that by

14   October 2016, Plaintiffs had repeatedly voiced suspicions that Apple had engaged in

15   misappropriation, but sat on their rights for over three more years before commencing

16   this litigation.   Specifically, (1) Plaintiffs asserted in January 2014 that if Apple

17   employed   O'Reilly   and   Lamego   to   work   on   healthcare   technologies,   both   would

18   "necessarily" need to share Plaintiffs' purported trade secrets with Apple, (2) O'Reilly

19   and Lamego helped develop Apple's healthcare technologies and did so in a public

20   manner that drew media attention and resulted in a published patent application, and (3)

21   Plaintiffs mentioned Lamego's and O'Reilly's role in Apple's work in ██████████

22   ██████████████████████   and in communications from Masimo's ████   and

23   Executive   Vice   President   for   Business   Development.   ████████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████

26   ████████████████████████████████████████████

27   ████████

28

Plaintiffs said nothing to Apple about any such supposed wrongdoing until filing this case in January 2020—when they belatedly alleged, just as they did in October 2016 and before, that O'Reilly and Lamego had improperly used and disclosed Plaintiffs' alleged trade secrets when working for Apple, and that Apple had improperly used those alleged trade secrets in patent filings and its healthcare technologies.

Because Plaintiffs filed their complaint over three years after they at least had reason to suspect Apple's purported misappropriation, this Court should enter summary judgment on the Fourth Amended Complaint's trade secret claim in Apple's favor. At a minimum, Apple's statute of limitations defense should be bifurcated for trial as soon as possible so that Apple can present its statute-of-limitations case to a jury. Doing so would promote judicial economy and avoid the unfair prejudice to Apple and the potential jury confusion that would result if Apple is forced to try the facts relevant to its statute of limitations defense alongside the facts relevant to its merit-based defenses.

## II.   UNDISPUTED FACTUAL BACKGROUND

### A.   Plaintiffs Send A Letter To Apple In January 2014 Indicating That Plaintiffs' Trade Secrets Would "Necessarily" Be Used Or Disclosed If Lamego Or O'Reilly Worked On Apple's Healthcare Technology

In July 2013, O'Reilly left his job with Plaintiffs and began working for Apple, SUF No.2, and in January 2014, Lamego did the same, SUF No. 3. Plaintiffs sent Apple a letter on January 24, 2014, expressing concern that "Apple has been targeting Masimo and Cercacor" employees for its own hiring because Apple was interested in Plaintiffs' healthcare technology but had been unable to acquire Plaintiff Cercacor outright. Andrea Decl. Ex. 1 ("January 2014 Letter") at 1; SUF No. 4. Plaintiffs asserted that Apple had hired Lamego "to design and develop products that are likely the same as the products that he was responsible for developing for [Plaintiff] Cercacor," and that "Lamego learned, and personally conceived, a large number of very valuable trade secrets while he was at [Plaintiff] Masimo, and he continued to use and improve those trade secrets under license from Masimo when Cercacor was spun off from Masimo." January 2014 Letter at 1; SUF Nos. 5-6.

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE    2    CASE NO. 8:20-cv-00048-JVS (JDEx)

Plaintiffs' letter demanded that Apple refrain from employing Lamego in "healthcare technology, including mobile health applications and the measurement of physiological information." January 2014 Letter at 2; SUF No. 7. In making this request, Plaintiffs quoted an employee confidentiality agreement that Lamego had signed, which stated "I agree that [working for a competitor of Plaintiff Cercacor] would *necessarily involve* the use or disclosure of Masimo['s] trade secrets and proprietary … information." January 2014 Letter at 2, 4 (emphasis added); SUF Nos. 9-10. (Although not specifically cited in the January 2014 letter, ██████████████████ ██████████████████     ██████████████████████ Plaintiffs also warned that employing O'Reilly and Lamego to work on "mobile health device[] projects" would be taken as a sign that "Apple is attempting to gain access to, or at least the benefit of, [Plaintiffs'] trade secrets." January 2014 Letter at 2; SUF No. 8.

**B.   O'Reilly And Lamego Develop Healthcare Technology And** ████████ ██████████████████

**1.**     Despite the threats in Plaintiffs' January 2014 letter, Apple continued its efforts to develop and improve its healthcare technologies. SUF No. 13. On March 9, 2015, for example, Apple publicly announced ResearchKit, which it described as "an open source software framework designed for medical and health research, helping doctors and scientists gather data more frequently and more accurately from participants using iPhone® apps." Andrea Decl. Ex. 3; SUF No. 15. Following that announcement, a number of media outlets detailed the operation of ResearchKit and Apple's ongoing expansion into the healthcare space. SUF No. 16.

O'Reilly and Lamego made no effort to hide the fact that they were helping Apple develop this kind of healthcare technology. For example, on January 31, 2014, *The New York Times*, *The Wall Street Journal*, and other major media outlets reported that O'Reilly had attended a December 2013 meeting with the FDA on Apple's behalf regarding "mobile medical applications." SUF No. 17. In September 2014 and February 2015, Masimo employees sent out emails highlighting articles about the Apple Watch's

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO
BIFURCATE TRIAL IN THE ALTERNATIVE          3          CASE NO. 8:20-cv-00048-JVS (JDEx)

healthcare features that mentioned O'Reilly by name.  SUF No. 18.  And on March 3, 2016, the U.S. Patent Office published an Apple patent application (Pub. No. 2016/0061726) for healthcare technology that listed an August 28, 2014 priority date and named Apple Inc. as the applicant and Lamego as a co-inventor.  Andrea Decl. Ex. 15 ("'726 Publication") at 1; SUF Nos. 19-21.

Specifically, the '726 publication describes "optical sensing systems configured to provide functionality such as fitness or health tracking or physiological data collection," and explains how the disclosed system could be used as a "medical diagnostic tool … that can be placed against a patient's skin in order to obtain physiological characteristics of said patient."  '726 Publication ¶ 29; SUF Nos. 22-23. The '726 publication includes a "smart watch" embodiment, which can obtain "certain physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on."  '726 Publication ¶¶ 5-6; SUF No. 24.

**2.**  As Apple was developing the technology at issue in this litigation, Plaintiffs repeatedly asserted that Apple's work relied on Plaintiffs' trade secrets.

For example, on May 6, 2014, the *Chicago Tribune* published an article regarding Apple's presence in the "medical tech" industry that included critical comments from Plaintiffs' CEO, Joseph Kiani, that Apple had "recruited" his former employees with "access to deep wells of [Plaintiffs'] trade secrets and information" and that Apple was "just buying people."  Andrea Decl. Ex. 10 at 6; SUF Nos. 25-26.  Other sections of the article specifically named O'Reilly and Lamego as Apple employees who had been "poached" from Plaintiffs, and reported that O'Reilly had recently met with a "mobile health" expert from the U.S. Food and Drug Administration on Apple's behalf.  Andrea Decl. Ex. 10 at 5; *see also* SUF Nos. 17, 27.

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE          4          CASE NO. 8:20-cv-00048-JVS (JDEx)

1 █████████████████████████████████████████████████████

2 █████████████████████████████████████████████████████

3 █████████████████████████████████████████████████████

4 ██████████████████████████████████ ███████████████████

5 ████████████████████████

6      Plaintiffs also reached out directly to O'Reilly on at least one occasion to insinuate

7 that the Apple Watch drew on proprietary information that O'Reilly had worked on

8 while employed by Plaintiffs.  Paul Jansen, then Masimo's Executive Vice President for

9 Business Development, sent O'Reilly an email on April 28, 2015, highlighting a recent

10 news article entitled "Apple Watch already has 264 health apps, unused pulse ox[imetry]

11 functionality, and a hospital pilot."  Andrea Decl. Ex. 18 at 1 ; SUF No. 29.  Jansen

12 stated "I'm sure these reports are always 100% accurate … :)" and noted the article's

13 reference to potential "pulse oximetry functionality" in the Apple Watch had "caught

14 [his] eye."  Andrea Decl. Ex. 18 at 1; SUF No. 29.

15      Plaintiffs were similarly blunt █████████████████████████████

16 █████████████████████████████████████████████████████

17 █████████████████████████████████████████████████████

18 █████████████████████████████████████████████████████

19 █████████████████████████████████████████████████████

20 █████████████████████████████████████████████████████

21 █████████████████████████████████████████████████████

22 █████████████████████████████████████████████████████

23 █████████████████████████████████████████████████████

24 █████████████████████████████████████████████████████

25 ████████████████████████████████████████████

26    ██████████████████████████████████████████████████

27 █████████████████████████████████████████████████████

28 ████████ ████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE          5          CASE NO. 8:20-cv-00048-JVS (JDEx)

1

2

3

4

5

6

7

8

9

10   **C.    Plaintiffs File This Lawsuit In January 2020, Accusing Apple of Misappropriating Plaintiffs' Alleged Trade Secrets From O'Reilly And Lamego**

11

12    Despite Plaintiffs' repeated suggestions that Apple had misappropriated their

13    trade secrets, they failed to take legal action until January 9, 2020, when they filed this

14    suit.  SUF Nos. 38-39.  The complaint alleges, among other things, that O'Reilly and

15    Lamego had breached their confidentiality agreements by disclosing Plaintiffs' alleged

16    trade secrets to Apple, and that Apple had improperly disclosed and used those alleged

17    trade secrets ███████████████████████████████████████

18    ████████████████████████████████  SUF Nos. 40-41.

19    In support of those allegations, Plaintiffs relied in part on Apple patent filings that

20    overlap with the '726 publication, including U.S. Patent No. 9,952,095.  Andrea Decl.

21    Ex. 21 ("'095 Patent"); SUF No. 42.  For example, the '726 publication and '095 patent

22    both relate to light emitter technology used for health monitoring to increase reliability

23    of biological readings SUF No. 43, and several figures in the '726 publication are

24    identical or nearly identical to those in the '095 patent:

25

26

27

28



| '726 Publication | '095 Patent |
|---|---|

SUF No. 44.   The two documents also share identical or nearly identical written description text that spans multiple pages.   *See* SUF No. 45.

In April 2020, Apple filed a motion to dismiss arguing—among other things— that Plaintiffs' trade secret claim was time-barred because it was filed more than three years after Plaintiffs "discovered or by the exercise of reasonable diligence should have discovered" Apple's purported misappropriation.   *See* Dkt. 38 at 6-14 (quoting Cal. Civ. Code §3426.6).   Specifically, Apple argued that the January 2014 letter and the '726 publication put Plaintiffs on notice of any purported misconduct.   *Id.* at 6-9.   This Court denied the motion, concluding that the January 2014 letter was insufficient standing alone because it was sent a few days before Lamego began his employment with Apple (and thus preceded any actual transfer of information from Lamego to Apple).   Andrea Decl. Ex. 23 ("MTD Order") at 5-6.   The Court also stated that it was premature to determine whether the '726 publication constituted constructive notice, because "construing [Plaintiffs'] allegations as true" that "Apple did not publish Plaintiffs' confidential information in its patent applications until after January 10, 2017," "[i]t [wa]s not apparent on the face of the [complaint] that the claim is time-barred."   MTD Order at 6.   In making this ruling, the Court emphasized that "'[t]he majority of cases relying on the issuance of a patent as constructive notice were either at the summary judgment stage or later in the proceedings.'"   MTD Order at 6.

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE          7          CASE NO. 8:20-cv-00048-JVS (JDEx)

## III.   LEGAL STANDARD

Summary judgment is warranted when, reading the record in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and …the movant is entitled to judgment as a matter of law." *Gabriel Technologies Corp. v. Qualcomm Inc.*, 857 F. Supp.2d 997, 1002 (S.D. Cal. 2012). "While resolution of [a trade secrets] statute of limitations issue is normally a question of fact," courts have granted summary judgment in favor of the defendant when "the uncontradicted facts established through discovery are susceptible of only one legitimate inference." *See Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6-7 (N.D. Cal. Apr. 11, 2014) (granting summary judgment to defendant); *see also Gabriel*, 857 F. Supp. 2d at 1007 (same); *Wolf*, 167 F. Supp. 3d at 1108 (same). Specifically, if the defendant meets its "initial burden … of demonstrating that plaintiffs' claims are time barred[,] … the burden then shifts to … the non-moving party to establish that there is sufficient evidence in the record from which a reasonable trier of fact could conclude that plaintiffs' claims are not time barred" or that "an equitable exception" to the statute of limitations applies. *See Wolf*, 167 F. Supp. 3d at 1091-1092.

The decision whether to bifurcate a civil trial is left to the district court's sound discretion. *Grisham v. Philip Morris, Inc.*, 2009 WL 9102320, at * 3 (C.D. Cal. Dec. 3, 2009). "In exercising th[at] discretion, district courts have routinely … bifurcate[d] trial on statute of limitations issues." *Id.* at *4.

## IV.   ARGUMENT

**A.   This Court Should Grant Summary Judgment On Plaintiffs' Trade Secret Claim Because Plaintiffs Waited More Than Three Years To File This Suit After Their Own Actions Indicate They Had A Suspicion Of Wrongdoing**

**1.   The Undisputed Facts Establish That Plaintiffs Had At Least Constructive Notice Of Their Trade Secret Claim By October 2016**

As discussed, the statute of limitations for Plaintiffs' trade secrets claim began to run when Plaintiffs had constructive notice of the misappropriation—i.e., "by the exercise of reasonable diligence [they] should have discovered [Apple purportedly] engaged in misappropriation." *MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554,

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE       8       CASE NO. 8:20-cv-00048-JVS (JDEx)

564 (2019); *see also E-Fab, Inc. v. Accts. Inc. Servs.*, 153 Cal. App. 4th 1308, 1318-19 (2007) ("A person with actual notice of circumstances sufficient to put a prudent man upon inquiry is deemed to have constructive notice of all facts that a reasonable inquiry would disclose." (quotation marks omitted)).  Importantly, "[t]he standard for accrual of the statute of limitation … is *not* the receipt of documentary evidence of misappropriation." *MGA Entm't,* 41 Cal. App. 5th at 563-564.  "The question, ultimately, is when plaintiff had any reason to suspect that its trade secrets were misappropriated." *Fulfillium v. ReShape Med. LLC*, 2018 WL 11354522, at *5 (C.D. Cal. Nov. 6, 2018); *see also Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 587 (2008) ("The proper focus … is not upon the defendant's actual state of mind but upon the plaintiffs' suspicions.").

Here, the undisputed record evidence, when taken together, establishes that Plaintiffs had actionable "suspicions" of misappropriation more than three years prior to this suit was filed on January 9, 2020.

*First*, Plaintiffs concluded before Lamego even began his employment with Apple that any work that he did in the healthcare technology space would "necessarily" result in the use or disclosure of Masimo's trade secrets.  *See supra* p. 3.  In January 2014, Plaintiffs warned Apple that employing O'Reilly and Lamego to work on "mobile health device[] projects" would be taken as a sign that "Apple is attempting to gain access to, or at least the benefit of, [Plaintiffs'] trade secrets."  *See supra* p. 3; *see also Gabriel Techs. Corp.*, 857 F. Supp. 2d at 1004 (statute of limitations began to run when plaintiff's employee asserted in an email that defendant had committed a "direct rip-off" of technology protected by trade secret).  And despite these threats, Apple proceeded to develop its healthcare technology—including the ResearchKit software discussed above—and relied on O'Reilly's and Lamego's assistance to do so.  *See supra* pp. 3-4.

*Second*, Apple made no attempt to hide either man's involvement in the project in the years after they were hired.  O'Reilly's connection to Apple's healthcare work, for example, was highlighted in several newspaper articles.  *See supra* p. 3; *Stutz Motor*

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE      9      CASE NO. 8:20-cv-00048-JVS (JDEx)

1   *Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1362 (C.D. Cal.
2   1995), *aff'd,* 113 F.3d 1258 (Fed. Cir. 1997) (finding "[b]ased on the advertising, [and]
3   media reporting" of defendant's products that "sufficient widespread publicity existed
4   for plaintiff to be charged with constructive knowledge" of those products "and the
5   potential use of [plaintiff's] trade secrets" in those products).   Lamego's name,
6   moreover, was listed on a published patent application that involved light-emitter
7   technology similar to what appears in the Apple patents that Plaintiffs claim disclose
8   their trade secrets.  *See supra* pp. 4, 6-7; *Alamar Biosciences Inc. v. Difco Labs. Inc.*,
9   1996 WL 648286, at *5-6 (E.D. Cal. Feb. 27, 1996) (finding plaintiff had constructive
10  notice of patent application filed by a competitor in same field where plaintiff suspected
11  competitor was misappropriating its trade secrets).

12      *Third*, ███████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████████████████
16  ████████████████████████████████████████████████████████████████
17  █████████████████████████████  In April 2015, a Masimo executive sent O'Reilly an email
18  flagging the executive's concern about reports that the Apple Watch might have "pulse
19  oximetry functionality."  *See supra* p. 5. ████████████████████████████████████
20  ████████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████████████
22  ████████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████████████
27
28

Gibson, Dunn &
Crutcher LLP

Memo. iso Apple's Mot. For Partial Summary Judgment On Plaintiffs' CUTSA Claim, Or To Bifurcate Trial In The Alternative          10          Case No. 8:20-cv-00048-JVS (JDEx)

1 ███████████████████████████████████████████████████████

2 ████████████████████████████████████████████ [1]

3     In sum, (1) Plaintiffs informed Apple that if it employed O'Reilly and Lamego to

4 work on healthcare technology, the two would necessarily use or disclose Plaintiffs'

5 trade secrets, (2) Apple openly employed O'Reilly and Lamego to work on healthcare

6 technology, and (3) █████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9     Because Plaintiffs waited over three more years to raise their trade secret claim, that

10 claim is barred by the statute of limitations as a matter of law. *See Wolf*, 167 F. Supp.

11 3d at 1103 (finding trade secrets claim barred where "despite her suspicions and her own

12 independent investigation" into defendant's potential misappropriation, plaintiff failed

13 to sue within three years).

14     Importantly, granting Apple summary judgment on statute of limitations grounds

15 does not create a conflict with this Court's prior ruling at the motion to dismiss stage.

16 That decision held that the January 2014 letter *standing alone* did not start the clock for

17 the statute of limitations, MTD Order at 6, and Apple does not seek reconsideration of

18 that ruling here.  Rather, Apple submits that—as this Court recognized—the January

19 2014 letter "suggests that Plaintiffs had a *suspicion* Lamego would be in a position to

20 compete with his former employer by drawing upon Plaintiffs' trade secrets."  MTD

21 Order at 6.  It is Apple's subsequent conduct in employing Lamego and O'Reilly to

22

23 ──────────────────

24 [1] Indeed, Plaintiffs have conceded in parallel litigation against Lamego that they were aware of his purported misappropriation by January 4, 2016, when his company

25 released a press release regarding a new product. *See Masimo Corp. v. True Wearables, Inc.*, No. 18-cv-02001, Dkt. 359 at 19 (C.D. Cal. Oct. 15, 2021).  It would

26 be logical to assume that Lamego's press release would have raised suspicions about all of Lamego's work since he left Plaintiffs—a time period that would sweep in his

27 time at Apple.  Plaintiffs insinuated in ████████████████████████

28 ██████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO
BIFURCATE TRIAL IN THE ALTERNATIVE            11            CASE NO. 8:20-cv-00048-JVS (JDEx)

develop Apple's healthcare technology coupled with ████████████ ████████████████████████████████████████████ that establish what this Court found missing in its prior ruling—i.e., that Plaintiffs "had a reason to suspect that a trade secret had already been misappropriated" prior to January 2017, MTD Order at 6.[2]

### 2. The Bare Allegations Of The Fourth Amended Complaint Do Not Create A Genuine Dispute Of Material Fact Over Whether Plaintiffs Had Constructive Notice

In light of the undisputed evidence detailed above showing that the initial acts giving rise to Plaintiffs' alleged misappropriation claim occurred outside the limitations period, that claim must be dismissed unless Plaintiffs meet their burden to prove facts necessary to toll the statute, such as "the inability to have made earlier discovery despite reasonable diligence." *Gabriel*, 857 F. Supp. 2d at 1003.

The allegations in the Fourth Amended Complaint do not meet that burden. Plaintiffs assert that before the three-year window leading up to the filing of their complaint on January 9, 2020, they "had no reason to suspect or believe that [Apple] had ignored Plaintiffs' [January 2014] letter," and that Apple up to that point had "concealed" the alleged "acquisition, use and disclosure" of Plaintiffs' purported trade secrets. Fourth Am. Compl. ¶¶ 262-263. But that argument fails in view of the undisputed factual record. As discussed above, long before January 10, 2017, Plaintiffs had more than sufficient notice that Apple had employed O'Reilly and Lamego to work on healthcare technology—an act ████████████████████████████████████████

---

[2] This Court's motion to dismiss decision also stated that the '726 publication did not provide Plaintiffs with constructive notice of Apple's purported misappropriation. MTD Order at 6. That ruling, however, expressly rested on the fact that—at the 12(b)(6) stage—this Court had to treat as true Plaintiffs' bald allegation that it did not become aware of Apple's conduct until January 2017. MTD Order at 6. At the summary judgment stage, however, a party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," complaints' allegations receive no weight. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE       12       CASE NO. 8:20-cv-00048-JVS (JDEx)

alone would have constituted a breach of confidentiality and required the disclosure of Plaintiffs' alleged trade secrets.  Moreover, Apple hardly "concealed" its overall work in the healthcare technology field, and instead was very public with its intentions—including as reflected by widely reported meetings between O'Reilly and FDA experts on "mobile health," Apple's public launch and the resulting widespread coverage of its ResearchKit technology in March 2015, and in Apple patent applications published in March 2016 that listed Lamego as an inventor. ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

Moreover, because "'silence or passive conduct [by] the defendant'" is not a defense to the statute of limitations in the absence of a fiduciary duty to the plaintiff, Apple's failure to respond to the January 2014 letter could not as a matter of law toll the limitations period.  *See, e.g.*, *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 23, 2014) (quoting *Rutledge v. Boston Woven Hose*, 576 F.2d 248, 250 (9th Cir. 1978)).  And even if Apple had responded, a letter from a purported misappropriator to the trade secret owner discussing the disputed technology does not toll the statute of limitations where the "letter contains no assurance that [the misappropriator] intends to respect" the owner's trade secret rights.  *See Memory Corp. v. Kentucky Oil Tech., N.V.,* 2007 WL 2746736, at *9 n.5 (N.D. Cal. Sept. 20, 2007); *see also Wolf*, 167 F. Supp. 3d at 1096 (rejecting allegations of "purported inability to discover [copyright] infringement" where plaintiff's investigation involved asking the defendant, his associate, and an employee of the organization with which they were working whether they had infringed, which they denied).

Plaintiffs also claim that they could not have known of Apple's alleged misappropriation before January 10, 2017 because "the first [Apple Watch] product at issue was not announced until 2018." Fourth Am. Compl. ¶ 262.  But the clock started on any potential trade secret misappropriation claim against Apple when Plaintiffs

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE   13   CASE NO. 8:20-cv-00048-JVS (JDEx)

actually suspected (or should have suspected) that misappropriation of their purported secrets had occurred—which, as detailed above, happened no later than October 2016. *See supra* pp. 4-6.  Plaintiffs cannot avoid the consequences of their decision to wait more than three years after that date simply by purporting to ground their claims in a product announced within the limitations period.

Simply put, Plaintiffs have presented no legitimate basis to invoke the delayed discovery rule here.  Thus, because Plaintiffs failed to bring their trade secret misappropriation claim within the requisite three-year statute of limitations period, Apple should be granted summary judgment on that claim as a matter of law.

## B.   Alternatively, The Court Should Bifurcate Trial On Apple's Statute Of Limitations Defense.

At a minimum, this Court should bifurcate trial on Apple's statute of limitations defense pursuant to Federal Rule of Civil Procedure 42(b).  That rule confers broad discretion on a court to bifurcate a trial on separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize [the proceedings]."  Fed. R. Civ. P. 42(b).  A dispute over whether "the statute of limitations [has run] is a prime candidate for a limited trial under Rule 42(b)," both because "the issues may overlap very little with the merits of the case and because the potential savings are greatest when a case is put to death at an early stage."  *Grisham*, 2009 WL 9102320, at *4.  The Ninth Circuit has affirmed the decision to bifurcate a trial into a statute of limitations phase and a liability phase precisely because (as here) "the statute of limitations issue was dispositive."  *See Gomez v. City of Torrance*, 438 F. App'x 626, 628 (9th Cir. 2011); *see also* 9A Wright & Miller *Federal Practice & Procedure* § 2388 (3d ed.) (bifurcation is "desirable" "[i]f a single issue could be dispositive of the case … and resolution of it might make it unnecessary to try the other issues in the litigation").

While "bifurcation requires . . . only one of the … conditions" listed in the rule—judicial economy, convenience, and prejudice—all three are present here, as detailed

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE   14   CASE NO. 8:20-cv-00048-JVS (JDEx)

below.  *Jem Access. v. JVCKENWOOD USA Corp.*, 2021 WL 706646, at *4 n. 2 (S.D.N.Y. Feb. 22, 2021).

### 1. Bifurcating Trial On Apple's Statute Of Limitations Defense Will Promote Judicial Economy And Convenience.

"[J]udicial economy" is served for purposes of Rule 42(b) when "resolution of a single claim or issue could be dispositive of the entire case," *Mullally v. Jones*, 2007 WL 1213704, at *3 (D. Nev. Apr. 24, 2007), or where the evidence presented in the proposed phases of the litigation will be different, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).  Convenience also is served under Rule 42(b) when bifurcation would "permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great Northern Ry.*, 424 F.2d 497, 499 (9th Cir. 1970).

Here, resolution of the statute of limitations issue will likely dispose of Plaintiffs' trade secret misappropriation claim.  If that claim is time-barred, then, at minimum, the parties will not need to litigate a host of complex issues for the dozens of purported trade secrets, including whether Plaintiff has met its burden to establish whether *each* of those trade secrets (1) was not generally known, (2) actually derive economic value from its secrecy, (3) was subject to reasonable measures to preserve its secrecy, (4) was improperly acquired, disclosed, or used by Apple, and (5) merits damages under the facts of this case.  The significant complexity of resolving these issues across numerous alleged trade secrets (along with the likely need to resolve accompanying discovery motions and disputes over expert and evidentiary issues) is far greater than resolving the far simpler, threshold issue of whether the claim is time-barred.  As discussed above, the statute of limitations case turns largely on just a handful of documents, such as the ███████████████████████████████████████████████████████ ████████████ media reports, and Apple's '726 publication.  *See supra* pp. 2-6.

Bifurcating trial thus has the potential to avoid enormous amounts of court, jury, and witness time, and millions of dollars in attorneys' fees and costs that the parties can

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE   15   CASE NO. 8:20-cv-00048-JVS (JDEx)

expect to incur in litigating the merits of the trade secret misappropriation claim in its entirety. *See Heinrich v. Ethicon, Inc.*, 2021 WL 2801961, at \*1 (D. Nev. Apr. 15, 2021) (bifurcating statute of limitations defense because the defense "could be dispositive" and thus "promote judicial economy"); *Kleinhammer v. City of Paso Robles*, 2008 WL 11411408, at \*5 (C.D. Cal. Oct. 10, 2008) (bifurcating statute of limitations defense because it would "best serve the convenience of the parties and the Court, and is the best way to secure the just, speedy and inexpensive determination of the suit").

### 2.   A Separate Statute Of Limitations Trial Will Avoid Unfairly Prejudicing Apple.

Bifurcation is also warranted "to avoid prejudice" to Apple of having to present its statute of limitations defense at the same time it defends the merits of Plaintiffs' trade secret misappropriation claims.  Fed. R. Civ. P. 42(b); *see*, *e.g.*, *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (affirming bifurcation where "there was danger of unnecessary jury confusion"); *Foltz v. City of Largo*, 2011 WL 1690010, at \*2 (M.D. Fla. May 3, 2011) (potential prejudice to a party "alone is sufficient to warrant bifurcation").

Without bifurcation, Apple faces the prospect of having to present two, somewhat conflicting cases to the jury—arguing that Plaintiffs knew or should have known of Apple's (purported) misappropriation, while at the same time contending that Plaintiffs' have not met their burden to show there was misappropriation to begin with.  *See Heinrich*, 2021 WL 2801961 at \*1 (describing a similar dilemma).  "These seemingly conflicting positions could confuse the jury and prejudice" Apple.  *Id.*; *see also McBroom v. Ethicon*, 2021 WL 2661463, at \*3 n.1 (D. Ariz. June 29, 2021) (citing cases granting motions to bifurcate where seemingly contradictory positions Defendants would need to take in a single trial "could confuse the jury and result in prejudice to Defendants," and where "bifurcation will . . . avoid" that result) (citations omitted).

### V.   CONCLUSION

For the reasons above, this Court should grant Apple summary judgment on its

Gibson, Dunn & Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO BIFURCATE TRIAL IN THE ALTERNATIVE   16   CASE NO. 8:20-cv-00048-JVS (JDEx)

statute of limitations defense to Plaintiffs' trade secret misappropriation claim. Alternatively, if the Court decides not to grant summary judgment at this time, it should bifurcate the case and hold an initial trial to resolve Apple's statute of limitations defense.

Dated: December 7, 2021               Respectfully submitted,

                                      JOSHUA H. LERNER
                                      H. MARK LYON
                                      BRIAN M. BUROKER
                                      BRIAN A. ROSENTHAL
                                      ILISSA SAMPLIN
                                      ANGELIQUE KAOUNIS
                                      BRIAN ANDREA
                                      GIBSON, DUNN & CRUTCHER LLP

                                      MARK D. SELWYN
                                      WILMER CUTLER PICKERING HALE &
                                      DORR LLP


                                      By: */s/ Mark D. Selwyn*
                                              Mark D. Selwyn

                                      *Attorneys for Defendant Apple Inc.*

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CUTSA CLAIM, OR TO
BIFURCATE TRIAL IN THE ALTERNATIVE        17        CASE NO. 8:20-cv-00048-JVS (JDEx)