# EXHIBIT 19

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. | | |

| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |
|---|---|

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] <u>Order Regarding Defendants' Motion for Partial Summary Judgment</u> (Sealed)**

Before the Court is a motion for partial summary judgment filed by Defendants True Wearables, Inc. and Marcelo Lamego. Defendants seek summary judgment on Plaintiffs Masimo Corporation and Cercacor Laboratories Inc.'s claims for patent infringement of U.S. Patent Nos. 8,886,271 (the "'271 Patent") and 10,194,848 (the "'848 Patent"); breach of fiduciary duty; and trade secret misappropriation concerning Trade Secrets 1, 6, 9, 12, and 14. See Motion, ECF Nos. 333, 332-2 (sealed); see also Statement of Uncontroverted Facts ("SUF"), ECF Nos. 333-2, 332-3 (sealed). Plaintiffs filed an opposition. See Opp., ECF Nos. 337, 344 (sealed); see also Statement of Genuine Disputes ("SGD"), ECF Nos. 337-1, 344-1 (sealed). Defendants filed a Reply. See Reply, ECF Nos. 351, 350-1 (sealed); see also Response to SGD, ECF Nos. 351-1, 350-9 (sealed).[1]

For the following reasons, the Court DENIES the motion.

---

[1] After the Court granted Defendants' applications to seal, Defendants did not file standalone unredacted sealed versions of the Motion, Reply, and related documents. Rather, at the time of this Tentative Ruling, the unredacted versions of those pleadings appear only as attachments to the sealed declarations filed in support of sealing. Defendants are order to review L.R. 79-5.2.2 in its entirety and comply therewith. See L.R. 79-5.2.2 ("**If the Application is granted, the Filing Party must thereafter file the sealed document pursuant to L.R. 79-5.2.2(c). The Clerk will not convert the PROPOSED sealed document submitted with the Application into a new filing.**") (emphasis in original); compare, e.g., ECF No. 344 (sealed Opposition).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

## I. BACKGROUND

This patent infringement action involves a dispute over pulse oximetry technology. Pulse oximetry refers to monitoring a patient's arterial oxygen saturation ("SpO2") and pulse rate through a sensor attached to the patient in a non-invasive way, such as by placing the sensor over the finger. See FAC, ECF No. 42 at ¶ 11. Historically, factors such as the patient moving around or having low peripheral blood flow (i.e., "low perfusion") made pulse oximetry measurements unreliable. Id. According to Masimo, its "pioneering technology, known as Masimo Signal Extraction Technology ('Masimo SET'), solved this problem and dramatically improved patient safety by accurately monitoring and reporting oxygen saturation and pulse rate even during [patient] motion and low perfusion." Id. Cercacor is a spin-off of Masimo and the two companies collaborate on developing new non-invasive monitoring technologies. Id. at ¶¶ 15-16.

Plaintiffs formerly employed Defendant Lamego as an engineer. Id. at ¶ 3. Lamego became CTO before he left to work for Apple. Now, Lamego is the founder, CEO, and chairman of the board of True Wearables, a company that sells a pulse oximeter that competes with Plaintiffs' products. Id. at ¶ 4. When Lamego worked for Masimo, Masimo allowed its engineers to disclose its top-secret technology algorithms and product and market plans to Lamego with the intent that he would take over for Masimo's then-chief scientist. Id. at ¶¶ 19-20. Lamego was also part of a team developing wearable monitoring technologies with wireless sensors. Id. at ¶ 27. After Lamego left Masimo to work for Apple, he was a named inventor in several Apple-filed patent applications relating to similar technology. Id. at ¶¶ 35-36. After Lamego left Apple, he founded True Wearables and released the Oxxiom pulse oximeter. Id. at ¶¶ 38-40. Upon studying the Oxxiom, Plaintiffs concluded that Lamego stole their technology. Id. at ¶¶ 40-41. Additionally, before Lamego left for Apple, he told Cercacor that he figured out how to measure glucose and other blood factors non-invasively. Id. at ¶ 42. After Lamego's departure, Cercacor attempted to confirm Lamego's feasability studies, but could not confirm the feasability of those measurements. Id. Thus, Plaintiffs conclude that, "either Lamego withheld from Cercacor information critical to the development of the technology for these parameters or misrepresented their feasibility." Id. at ¶ 42.

As a result, Plaintiffs filed this action for (1) breach of contract with Masimo (employment agreements regarding confidentiality); (2) breach of contract with Cercacor (same); (3) trade secret misappropriation (under California law); (4) trade secret

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

misappropriation (under federal law); (5) breach of fiduciary duty; and (5) patent infringement of several patents. See generally FAC; see also Order Granting Stipulated Dismissal of Certain Claims, ECF No. 347.

Defendants' motion for partial summary judgment implicates the '271 Patent and the related '848 Patent, both entitled "Non-Invasive Physiological Sensor Cover." The claimed sensor cover is "capable of being used with a non-invasive physiological sensor, such as a pulse oximetry sensor" for measuring oxygen content in the blood. See '271 Patent at Abstract. Some embodiments "reduce or eliminate false readings from the sensor when the sensor is not in use, for example, by blocking a light detecting component of a pulse oximeter sensor when the pulse oximeter sensor is active but not in use." Id. In certain embodiments, the sensor cover also "prevent[s] damage to the sensor" and can prevent contamination. Id. at 2:24-29.

In relevant part, Claim 1 discloses "a sensor cover comprising: . . . an opaque portion attachable to the sensor and configured to block readings by the sensor," and when "attaching the sensor cover to the sensor, the sensor cover blocking readings by the sensor and removable from the sensor," "wherein the sensor cover is configured to prevent the detector from receiving light when the sensor is active." See '271 Patent at Claim 1. As relevant to this motion, Plaintiffs assert, and Defendants seek judgment of non-infringement of, Claim 1 and dependent Claims 2, 6 (indirect infringement), and 7-9 of the '271 Patent.

The sensor cover claimed in the '848 Patent is related to the '271 Patent. See ''848 Patent at Cover (continuation of Application No. 15/968,393, which is a continuation of Application No. 15/046,954, which is a continuation of Application No. 14/512,945, which is a continuation of Application No. 13/919,692, which is now the '271 Patent).

In relevant part, Claim 1 discloses a "sensor covering system comprising: . . . a sensor cover configured to be adhered to the [claimed] pulse oximeter sensor and removed before use of the pulse oximeter sensor, wherein: the sensor cover is at least partially opaque," and the sensor cover "covers at least one of the sensing components while the pulse oximeter sensor is active and blocks at least a portion of light from the [claimed] one or more emitters from being received by the detector." See '848 Patent at Claim 1. As relevant to this motion, Plaintiffs assert Claim 1-5, 9-15, and 18-26. Claims 2-5 depend directly or indirectly from Claim 1. Claim 9 discloses a similar sensor cover

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

that is removable. Claims 10-15 depend directly or indirectly from Claim 9. Claim 18 discloses a method of providing the sensor cover. Claims 19-26 depend directly or indirectly from Claim 18. As relevant to this motion, Plaintiffs assert, and Defendants seek judgment of non-infringement of, Claims 1-5, 9-15, and 18-26 of the '848 Patent.

In its Claim Construction Order, the Court construed the following relevant claim limitations.

| Claim Term | Construction |
|---|---|
| "detector" ('848 Patent) | Plain and ordinary meaning |
| "sensor" / "pulse oximeter sensor" ('271 Patent) | Plain and ordinary meaning |
| "an opaque portion attachable to the sensor and configured to block readings by the sensor" / "an opaque portion attachable to the sensor and configured to block optical readings by the sensor" ('271 Patent) | "a portion attachable to the sensor designed to block a range of wavelengths of light sufficient to prevent measurements" |

See Claim Construction Order, ECF No. 93 at 16-20.

## II. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the non-movant,[2] shows "no genuine dispute as to any material fact" such

---

[2] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[3]; see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). The moving party bears the initial burden to demonstrate an absence of a genuine issue of material fact. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). If, and only if, the moving party meets its burden, then the non-moving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact. MEMC, 420 F.3d at 1373; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the non-moving party meets this burden, then the motion will be denied. See generally Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001). Where the parties have made cross-motions for summary judgment, each motion "must be independently assessed on its own merit." California v. United States, 271 F.3d 1377, 1380 (Fed. Cir. 2001).

### III. DISCUSSION

Defendants' motion for partial summary judgment seeks a ruling of non-infringement as to the '271 Patent and the '848 Patent. Additionally, Defendants contend that Plaintiffs' breach of fiduciary duty claim is time-barred and preempted; and that Plaintiffs' trade secrets claims fail as to Trade Secrets 1, 6, 9, 12, and 14. The Court addresses each claim below.

### A.     Patent Infringement Claims

Determining utility patent infringement is a two-step process. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998). "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." Id. (citations omitted). "Whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact." Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202,

---

[3] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

1207 (Fed. Cir. 2001). Because the ultimate burden of proving infringement rests with the patentee, an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001). If the moving party meets this initial requirement, the burden shifts to the party asserting infringement to set forth, by declaration or as otherwise permitted under Fed. R. Civ. P. 56, "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.

Defendants seek judgment of non-infringement regarding the '271 Patent and '848 Patent because, Defendants contend, the Oxxiom System (i.e., the device plus the related iOS App):

- Does not take measurements until the Oxxiom device is paired with the iOS App, and thus the alleged cover is not designed to block a range of wavelengths of light sufficient to prevent measurements;
- Does not have the alleged cover in place when the sensor is active;
- Does not have a sensor cover that prevents light from reaching the detector.

See generally Motion.[4] Defendants also argue that Plaintiffs have not shown that True Wearables' customers directly infringe Claim 6 of the '271 Patent, or that True Wearables directly infringes any of the asserted claims. Id.

1.     Opaque Portion of Sensor Configured to Block Readings.

The first infringement-related issue concerns whether the alleged sensor cover in the Oxxiom System (i.e., "Tab 2") is configured to block sensor readings. See '271 Patent at Claims 1, 10.

---

[4]     Defendants' motion addresses literal infringement. It does not address Plaintiffs' infringement theories under the doctrine of equivalents. Therefore, the rulings in this Order relate to literal infringement only.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-2001 JVS (JDEx)                    Date   October 15, 2021

Title   Masimo Corporation et al. v. True Wearables, Inc. et al.

     *a.    Summary of Arguments*

The parties agree that the Court construed "an opaque portion attachable to the sensor and configured to block readings by the sensor" / "an opaque portion attachable to the sensor and configured to block optical readings by the sensor" to mean, "a portion attachable to the sensor designed to block a range of wavelengths of light sufficient to prevent measurements," with the phrase "configured to" requiring some level of intentionality. See SUF ¶ 61; SGD ¶ 61 (admitted); Claim Construction Order at 19-20.

In support of their position of non-infringement, Defendants state that the Oxxiom device has two modes: standby and operation. Motion at 3. When the Oxxiom device is powered on, it remains in standby mode until it is paired with the iOS App, at which time it enters operation mode. Id. Defendants explain that True Wearables instructs the user to remove Tab 2 *before* placing the Oxxiom device onto the patient's measurement site (e.g., the patient's finger). That is, Tab 2 is removed *before* pairing with the iOS App such that, when Tab 2 is removed, the device is still in standby mode. Id. at 4. Only after the device is place on the measurement site do the instructions guide the user to pair the device with the App. Once paired, only then is the system "in operation mode and [] ready and able to take measurements through use of red and infrared light." Id.

Defendants note that it is undisputed that the device cannot take measurements until it is paired with the App. Id. at 5. Moreover, Defendants observe that Plaintiffs' expert agreed that the device cannot provide any physiological measurement readings while in standby mode. Id. Thus, Defendants conclude that, "[b]ecause Tab 2 is only intended to be attached to the Oxxiom® Device while in standby mode and because the Oxxiom® System cannot take measurements while in standby mode, Tab 2 is not designed to block a range of wavelengths of light sufficient to prevent measurements." Id. at 6. To the extent Plaintiffs' expert, Jack Goldberg, operated Oxxiom "contrary to its intended and instructed use," Defendants argue that those findings do not support infringement. Id. (collecting cases). This is particularly true, Defendants assert, where the Court's construction of "designed to" requires "some level of intentionality." Id. at 6-7. To that end, Defendants argue that Lamego "did not identify the blocking of light or prevention of measurement as a reason for his selection of an opaque tape" material for Tab 2. Id. at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

In response, Plaintiffs observe that Defendants do not dispute that Tab 2 *blocks* a range of wavelengths of light sufficient to prevent measurement; rather, Defendants contest only whether Tab 2 was *designed* to do so. Id. at 3-4. Noting the absence of a Lamego declaration in support of Defendants' motion, Plaintiffs rely on ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. at 4 (citing Claassen Decl., Ex. 1, ECF Nos. 337-3 ¶ 2, 344-4 (sealed)) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id.; see also Fletcher Decl., Ex. G, ECF Nos. 333-10, 332-9 (sealed) (hereinafter, "Goldberg Report") at D-12 (manufacturer of optical sensor used in Oxxiom, which is packed in opaque material, cautioned that sensor should be kept away from high levels of ambient light), Ex. O, ECF No. 333-18 (similar warning in Oxxiom user manual). Thus, Plaintiffs conclude that, "[f]rom this evidence, a jury could conclude that Lamego's ▮▮▮▮▮▮▮▮▮▮ for selecting an opaque material for the cover was to block a range of wavelengths of light." Opp. at 4 (i.e., there is a question of fact regarding intent for opacity: blocking light or some other reason, e.g., ability to print text on it).

Further, Plaintiffs contend that, even following the instructions in the user manual, after Tab 1 is removed and the device is turned on, "the photodiode [i.e., the light sensor] begins to measure light." Opp. at 5 (citing Goldberg Report at D-43, D-44). Thus, Tab 2, which is still in place at the time, is blocking the photodiode from measuring light. Id. at 5. Indeed, at his deposition, Lamego agreed that, when Oxxiom is turned on, the photodiode is measuring light. Id. (citing Claassen Decl., Ex. 2, ECF No. 344-5 (sealed) (Lamego Depo. at 781:9-784:21)). Further illustrating their light-blocking point, Plaintiffs note that, after placement at the measurement site and pairing with the App, to "confirm that [Tab 2] blocks readings by the photodiode," Goldberg, reattached the sensor cover (Tab 2), and it again started blocking photodiode readings. Opp. at 5-6 (citing Goldberg Report at D-9; SGD ¶¶ 102, 109). Plaintiffs argue that the ability to measure light is key because, "the claims do not require taking or blocking a physiological measurement," rather, they "require blocking readings by the photodiode." Opp. at 5.

Moreover, even if reattaching the sensor is not a step depicted in the Oxxiom instruction manual, Plaintiffs counter that "'an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.'" Opp. at 6 (quoting John Bean Techs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

Corp. v. Morris & Assocs., Inc., 828 F. App'x 707, 714 (Fed. Cir. 2020) (quoting Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1343 (Fed. Cir. 2001))).

In reply, Defendants argue that "Lamego's intent is not the basis for [their] motion;" rather, the functionality of the Oxxiom System, when used "as designed, instructed, and intended by True Wearables," does not infringe. Reply at 1. Defendants reject Goldberg's initial tests because they were done in standby mode and do not show that the device was taking measurements, i.e., responding to changes in light intensity is not the same as taking physiological measurements. Id. This is because, Defendants argue, the claims turn on "taking or blocking a physiological measurement," not "blocking [light] readings by the photodiode." Id.; see also id. at 2 (Oxxiom does not "measure" in standby mode and is not designed to do so). Defendants also reject Goldberg's observations made after physically reattaching Tab 2, because Defendants argue he altered the device contrary to its intended use. Id. at 2-4; see also id. at 5 ("Plaintiffs cannot succeed based on a single instance of misuse by their expert.").

      *b.*   *Analysis*

      **i.**   **Construction of "readings"**

Resolution of this issue turns on an underlying question of claim construction, which the Court decides as a matter of law. Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). At the Markman stage, the parties disputed the meaning of "opaque" and "configured to." See Claim Construction Order at 18-19. The Court construed "opaque" as "block[ing] a range of wavelengths" of light rather than all wavelengths of light, and "configured to" as "designed to," with an "element of intentionality." Id. at 19-20. Now the parties dispute the meaning of "readings." That is, does the opaque material's claimed characteristic of "blocking readings" turn on blocking *physiological measurements* (Defendants), or simply blocking any *light measurements* by the sensor (Plaintiffs)?

The patent does not give "readings" any special meaning, and thus the Court applies the plain and ordinary meaning that a person skilled in the art would have understood at the relevant time. Because the parties dispute plain and ordinary meaning, to resolve that meaning, the Court determines the construction that is consistent with the overall claim language and "consistent with the specification, of which [the term is] a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | | Date | October 15, 2021 |
|---|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. | | | |

part." <u>Merck & Co.</u> v. <u>Teva Pharms. USA, Inc.</u>, 347 F.3d 1367, 1371 (Fed. Cir. 2003); <u>see also Phillips</u> v. <u>AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (POSA reads claim terms "in the context of the entire patent, including the specification"). The specification is "[u]sually . . . dispositive." <u>Id.</u> at 1315.

The Court construes "readings" as "physiological measurements," which can include actual patient physiological measurements as well as false measurements that may be triggered. First, the claims disclose "blocking readings" or "block[ing] optical readings." <u>See</u> '271 Patent at Claims 1, 10. Second, when considering these terms in light of the specification, it is clear that "readings" refer to the sensor capturing what it senses as some physiological measurement. The specification commonly references "readings" in the context of "false readings," including that reference a total of nine times. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 2:14-16 ("the sensor can generate false readings by detecting ambient light even though the sensor is not in use"); 2:21-23 ("A sensor cover, according to embodiments of the disclosure, prevents or reduces false readings until the sensor is in use."). False readings were a concern because, in clinical settings, especially operating rooms, emergency rooms, or critical care units, sensors were sometimes kept attached to monitors to reduce setup time, but false alarms could result and were distracting to medical personnel. <u>See generally id.</u> at 2:8-23. Therefore, blocking readings refers to blocking light from the sensor so it cannot report perceived physiological measurements, whether actual or false alarms.

Further supporting this construction, the specification references the similar term "readouts" as consistent with physiological measurements. <u>See id.</u> at 3:37-40 ("A display 116 provides readouts of measured parameters, such as oxygen saturation, pulse rate, HbCO, HbMet and Hbt to name a few."); <u>see also id.</u> at 8:51-53 ("In addition, in various embodiments the sensor covers are used with a sensor that can measure any type of physiological parameter."). Accordingly, the Court construes "readings" as "physiological measurements," and clarifies its earlier construction to include the word "physiological:" "a portion attachable to the sensor designed to block a range of wavelengths of light sufficient to prevent [physiological] measurements."[5]

---

[5]     The Court disagrees with Plaintiffs that this limitation relates only to measuring and blocking light. To be sure, the specification teaches that preventing or reducing false readings is achieved by blocking light. <u>See id.</u> at 3:46-49 ("The sensor cover 140 can obstruct the detector and prevent the detector from detecting light, thereby reducing or eliminating false readings."), 3:51-54

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

Resolving this underlying claim construction dispute does not resolve the overall issue presented by the motion, however. Rather, the question is whether Defendants have shown no genuine disputes of material fact concerning whether the Oxxiom's Tab 2 is designed to blocks a range of wavelengths of light sufficient to prevent physiological measurements.

### ii. Disputed material facts concerning non-infringement

The Court concludes that a disputed issue of material fact concerning intent precludes granting summary judgment of non-infringement. Although Defendants argue that intent is immaterial to the question presented in their motion, the Court disagrees.

As stated, "designed to" implies an element of intentionality, or a purpose to "achieve a given objective." See Claim Construction Order at 19 (citing McHugh v. Hillerich & Bradsby Co., 2010 U.S. Dist. LEXIS 16164, *16 (N.D. Cal., 2010); Mount Hamilton Partners, LLC v. Groupon, Inc., 2014 U.S. Dist. LEXIS 34556, *20 (N.D. Cal., 2014)). Because the claimed opaque portion was designed to block light sufficient to prevent physiological measurements, whether accurate measurements or false alarms, Lamego's intent in making Tab 2 opaque remains relevant. The parties genuinely dispute Lamego's intent. On the one hand, Defendants rely on Lamego's deposition testimony to show that selecting opaque material for Tab 2 was not a design choice based on the desire to block light. SUF ¶ 107. On the other hand, Plaintiffs rely on a ██████████████ ██████████████████████████████ for choosing opaque material; the Oxxiom user manual saying exposure to light will cause "malfunction;" and Lamego's prior knowledge of Masimo's opaque sensor covers and Cercacor's patents. See, e.g., SGI ¶¶ 5-6. Plaintiffs are entitled to challenge the veracity of Lamego's testimony with other evidence concerning the intent for selecting opaque material.

---

("The opaque cover 140 can prevent or reduce false readings caused by the emitters or the ambient light, even if the sensor is active, by preventing the sensor from receiving light."). Further, as noted during the Markman proceedings, different embodiments contemplate blocking different amounts of light. See id. at 3:54-61 ("block all wavelengths of light," "block different ranges of wavelengths of light," "prevent the sensor from emitting light receivable by the detector."). But the purpose of the opaque portion is not to block light per se, but rather to reduce or prevent false readings to improve patient monitoring. Light measurements without regard to accompanying physiological measurements are inapposite.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-2001 JVS (JDEx)                    Date    October 15, 2021

Title    Masimo Corporation et al. v. True Wearables, Inc. et al.

A disputed issue of material fact concerning operation of the Oxxiom further demonstrates why intent remains relevant. As an initial matter, the Court observes that the parties agree that the Oxxiom device is not taking physiological measurements when not paired with the iOS App. See SGI ¶ 101 (Goldberg: "It is my opinion that it's not taking physiological measurements when it's not connected to the iOS App."). From this, Defendants conclude that the design intent behind Tab 2 is irrelevant because, although Tab 2 is blocking the sensor *before* the Oxxiom device is paired with the App, there are no physiological measurements to block before pairing when the device enters operation mode. But the Court finds a disputed issue of material fact concerning whether the Oxiomm device may be paired with the App before Tab 2 is removed, and thus at the time of pairing, an intact Tab 2 would block the sensor's ability to take physiological measurements.

Defendants argue that when the device is used as intended, this would never happen. See SUF ¶¶ 92-95 (user manual instructs pulling Tab 1, pressing blue dot to activate device, pulling Tab 2, placing device on finger, taping device to finger, and *then* connecting to the App to start measurements); SGI ¶¶ 92-95 (admitted). But Plaintiffs rely on other evidence suggesting that True Wearables also instructs pairing *before* removal of Tab 2 as an option. Specifically, in an instructional video, the first instruction given is "to activate Oxxiom" by pairing the device with the App; then, after pairing is completed, the video instructs to pull Tab 1, turn the device on, and *then* remove Tab 2. See Claassen Decl., ¶ 4 (Exhibit 3 is a sealed video produced as TRUE004449), ECF No. 337-3; see also ECF No. 338 (Notice of Lodging of Exhibits 3 and 4 (Videos).[6]

If a user follows the instructions presented in the video, then when the device is turned on, since it has already been paired, the sensor would go into operation mode in which physiological measurements are taken. Before Tab 2 is pulled, such measurements would be blocked. Even if Defendants' preferred mode of operation is removing Tab 2 before pairing (i.e., when no physiological measurements are possible), the instructional video raises a disputed question of fact about whether the device may reasonably be used

---

[6]    It is unclear to the Court why the instructional videos at Exhibits 3 and 4 were filed under seal when the similar instructional video at Exhibit 5 is publicly filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

in an infringing mode of operation.[7] The Federal Circuit "ha[s] long held that 'an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.'" Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1343 (Fed. Cir. 2001) (quoting John Bean Techs. Corp. v. Morris & Assocs., Inc., 828 F. App'x 707, 714 (Fed. Cir. 2020)). Accordingly, the Court denies summary judgment of non-infringement as to "blocking readings."

> 2. <u>Sensor Cover Configured to Block Light When Sensor Is Active</u>

The relevant claim limitations disclose a "sensor cover [that] is configured to prevent the detector **from receiving light** when the sensor is **active**," or an "opaque portion [that] is configured to prevent the detector **from receiving light** during sensor **activation**." <u>See</u> '271 Patent at Claims 1, 10 (emphasis added). The detector is the part of the sensor that receives light from an emitter after the light has passed through the patient's tissue site. <u>See id.</u> At the <u>Markman</u> stage, the parties agreed that "active"/"activation" should receive plain and ordinary meaning. <u>See</u> SUF ¶ 62; SOGI ¶ 62 (admitted); <u>see also</u> JCCPS, ECF No. 50 at 1. The parties now dispute that plain and ordinary meaning. Plaintiffs contend that "active"/"activated" means when the sensor is "on," whereas Defendants contend that these limitations mean when the sensor is "able to measure."

> *a. Summary of Arguments*

Defendants argue that the Oxxiom System does not practice this limitation because it "is not active (i.e., able to measure)" until the device is paired with the App, which occurs only *after* Tab 2 is removed, at least when following the instruction manual. Motion at 7. Defendants acknowledge that the Oxxiom user guide uses the word "activated" as synonymous with standby mode, but Defendants contend that this is not the same as the limitation "active," as used in patents. <u>Id.</u> at 8. As used in the patents, Defendants argue that "active" must mean "ready and able to measure," in line with the

---

[7] Because this factual dispute arises from Defendants' own video, the Court need not reach whether Goldberg's test, which showed blocked physiological readings after *re-attaching* Tab 2, constitutes altering the device contrary to its intended use.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

stated purpose of the invention, which is to reduce or eliminate false readings." Id. (citing, e.g., '271 Patent at 4:1-3 (the "cover prevents measurements from being taken until the sensor 120 is generally secure and the medical personnel are ready to take measurements")). And Defendants observe that, "There can be no such false readings if a sensor is not even able to measure in the first place." Id. at 8 (i.e., "active" cannot include when a device is incapable of making readings).

Plaintiffs respond that "active" means "when the sensor is on," and the stated purpose of the invention–to reduce false readings–should not be read into claim construction to arrive at Defendants' narrow construction of "able to measure." Opp. at 7. Plaintiff argues that Goldberg confirmed the sensor is active as soon as the device is turned on, because he opined that the "processor is running," the chip "is being clocked," the "LEDs are being driven," the "photodetector is responsive to light," the "analog-to-digital converter[,] which converts signals from the photodetector[,] is converting," and the "microcontroller is communicating with the [chip]." Id. at 7-8 (quoting Goldberg Report at D-45, ¶¶ 125–31, D-33–D-48).

In any event, even adopting Defendants' proposed construction–able to measure–for the reasons explained regarding measurement above, Plaintiffs maintain that the sensor is able to measure as soon as the Oxxiom is turned on. Id. at 8. Therefore, Plaintiffs conclude that, under either construction, genuine factual disputes preclude summary judgment.

In reply, Defendants argue that "[c]ourts routinely recognize the relevance of the invention's purpose in claim interpretation," and here, "interpreting 'active' consistent with the purpose of the patent is far from a rewriting of the claims." Reply at 5. Defendants argue that the Court should reject a construction that "is inconsistent with the purpose of the invention." Id. (citing KEYnetik, Inc. v. Samsung Elecs. Co., Ltd., 837 F. App'x 786, 792 (Fed. Cir. 2020)). Because the question of literal infringement turns on the legal question of claim construction for "active," Defendants maintain that summary judgment is appropriate. Id. at 6.

      *b.*    *Analysis*

Consistent with the analysis above concerning "configured to block readings by the sensor," the claim language and specification support Defendants' position that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

"active"/"activation" mean "able to measure." Claim 1 discloses "[a] method of blocking readings by a noninvasive optical physiological sensor," and Claim 10 discloses a similar "sensor cover." See '271 Patent at Claims 1, 10. Thus, "active" refers to the sensor taking measurements, or being unable to do so when blocked by the claimed sensor cover.

For the reasons explained above, however, genuine disputes of material fact likewise preclude summary judgment concerning this related limitation. The same factual questions concerning intent as well as reasonable use in an infringing mode (i.e., when the Oxxiom device is paired with the App before Tab 2 is removed) must be resolved to resolve this infringement issue.

> 3. <u>Sensor Cover Configured to Prevent Detector from Receiving Light</u>

The relevant claim language concerning a sensor cover "configured to prevent the detector from receiving light" is set forth in the preceding section. See '271 Patent at Claims 1, 10.

> a. *Summary of Arguments*

Defendants explain that, in operating mode, the Oxxiom works by allowing red and infrared light rays to penetrate the patient's skin, and interact with the patient's heartbeat signal to create red and infrared signals that are captured by the light detector and converted into SpO2 and other readings. Motion at 8. Conversely, in standby mode, Defendants contend that, since Tab 2 is still in place, it causes emitted light to reflect off of the back of Tab 2 and back toward the detector, as depicted below. Id. at 8-9.



Id. at 9. Thus, Defendants conclude that, Tab 2 is not configured to block readings/optical readings by the sensor because Tab 2 causes light from the emitter to reflect back to the detector. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

Plaintiffs respond that the Court's relevant construction relates to "the sensor cover block[ing] a *portion* of light only," and thus Defendants' interpretation is faulty because, even if some of the green light in standby mode will scatter off the back of Tab 2 and reach the sensor, Tab 2 still blocks a range of wavelength of light sufficient to prevent measurements. Opp. at 8 (citing Fletcher Decl., Ex. H, ECF No. 332-10, Goldberg Depo. Tr. at 85:8-19 (under seal)). Relatedly, Goldberg concluded that when Tab 2 is in place, the sensor "measured virtually no light." Id. at 9 (Goldberg Report at D-46-D-48 (under seal)).

In reply, Defendants reject Plaintiffs "blocking a portion of light" argument, and argue that, "Plaintiffs fail to explain how the requisite element of intentionality [i.e., designing Tab 2 to block light from the sensor] can be met when the alleged cover actually causes light from the emitter to scatter back to the detector." Reply at 6. Defendants contend that Goldberg's opinion about blocking light from outside sources is a "red herring" because the claim limitation relates to blocking light "from the one or more emitters from being received by the detector." Id.

> *b.    Analysis*

The Court finds Defendants' arguments with respect to this limitation inconsistent with their arguments presented above. The claims are directed to a method that blocks readings by a sensor by implementing a sensor cover. The question is whether the sensor cover was designed to prevent the detector from receiving light when the sensor is able to measure (i.e., block readings), not whether it blocks all light in standby mode. The same disputed issues of material fact concerning intent, when the device is paired, and when Tab 2 is removed, preclude summary judgment on these related portions of the claim limitations, however.

> 4.    Indirect Infringement of Claim 6

Claim 6 of the '271 Patent discloses the method of blocking readings by a non-invasive optical physiological sensor from Claim 1, further comprising: "activating the light source of the sensor to emit light from the one or more emitters of the sensor; and blocking, with the sensor cover, the light from the one or more emitters from being received by the detector of the sensor." '271 Patent at Claim 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

Defendants note that Plaintiffs' theory of infringement for Claim 6 of the '271 Patent is that Defendants' customers directly infringe Claim 6, and therefore Defendants indirectly infringe the claim. Motion at 9. Defendants argue that Plaintiffs have failed to come forward with evidence of direct infringement by any True Wearables customer, and thus Plaintiffs' indirect infringement theory fails. Id. Defendants note that Goldberg simply "assumed" customers had used the Oxxiom System. Id. at 10.

Plaintiffs respond that "True Wearables cannot seriously contend that its customers have never used the device they purchased." Opp. at 9. Further, Plaintiffs argue that "[t]he Oxxiom User Manual provides at least some evidence that a customer would activate the light source when using the device." Id.

In reply, Defendants argue that Plaintiffs cannot rely on the Oxxiom user manual because Plaintiffs infringement theory relies on a method that is outside of the instruction manual. Reply at 10. That is, Plaintiffs rely on pairing the device with the App so the device becomes capable of measuring when Tab 2 is intact and therefore blocks any measurements.

The Court agrees with Plaintiffs: Defendants cannot seriously contend that its customers have never used the Oxxiom device as instructed in video Exhibit 3 (i.e., pairing before removing Tab 2). Plaintiffs are entitled to present evidence of such use at trial and Defendants may rebut it. Accordingly, the motion is denied as to Claim 6.

5.     Direct Infringement of Other Asserted Claims

Defendants argue they do not infringe asserted Claims 1-2 and 7-9 of the '271 Patent or Claims 1-5, 9-15, and 18-26 of the '848 Patent because these claims require the accused device to perform certain actions (e.g., "sensor cover blocking readings," sensor cover "blocks at least a portion of light," "while the pulse oximeter sensor is active," "activating the one or more emitters). Motion at 10-11. Defendants contend that summary judgment is appropriate because "Plaintiffs have put forth no evidence that True Wearables operates and uses the Oxxiom® System; rather, True Wearables manufactures, offers for sale, and sells the Oxxiom® System." Id. at 11. When made and sold, Defendants explain that the system is not on, has no active sensor, and is not emitting or blocking light. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

Plaintiffs respond that "the claims do not require operation and use of the Oxxiom System." Opp. at 10. Rather, Plaintiffs argue that the claim language is "functional language describing the invention in terms of what it can accomplish." Id. Moreover, Plaintiffs note that Lamego testified that True Wearables operates each unit during manufacturing, and Defendants provided various videos depicting True Wearables employees such as Lamego engaging in infringing use. Id. at 10-11.

In reply, Defendants argue that Plaintiffs may not "now assert that True Wearables directly infringes by using the Oxxiom® System" because "[t]his is a new argument [absent from Plaintiffs' Final Infringement Contentions] that Plaintiffs should not be permitted to assert at this stage." Reply at 8-9.

The Court denies summary judgment on this ground because Defendants' arguments do not make sense in light of the record in this case. For example, Plaintiffs' Final Infringement Contentions assert, with respect to Claim 1 of the '271 Patent, inter alia, "True Wearables performs the method of blocking readings by a noninvasive physiological sensor, at least when it makes, uses, offers for sale, and sells within the United States either the OXXIOM S&A System and the OXXIOM Rx System, as described further below." See Final Infringement Contentions, Ex. A at p. 1 (element 1a), ECF No. 332-11 at p. 19. These contentions are consistent with asserting patent infringement. See 35 U.S.C. 271(a) ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."). Accordingly, Plaintiffs may present its evidence at trial concerning alleged infringement by the Oxxiom System.

### B. *Breach of Fiduciary Duty Claim*

Plaintiffs allege that, "[i]n 2013, Lamego represented to the Cercacor Board of Directors that many non-invasive parameters were feasible and available for license to Masimo." FAC ¶ 106. According to Plaintiffs, "Cercacor revisited the feasibility studies for these parameters after Lamego's unexpected departure, but could not confirm their feasibility. Either Lamego failed to fully disclose information critical to their feasibility, in breach of his fiduciary duty or he did not accurately represent the status, also in breach of his fiduciary duty. To the extent that Lamego did not accurately present to Cercacor and its Board of Directors the status of his research and development into the technology

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

for non-invasively measuring those blood parameters, or failed to fully disclose the developed technology, Lamego breached his duty of undivided loyalty." Id. ¶ 107.

Defendants seek summary judgment on this claim, because they contend that the claim is time-barred by the relevant statute of limitations and preempted by the California Uniform Trade Secrets Act (CUTSA). Motion at 12. First, with respect to the statute of limitations, Defendants argue that Plaintiffs had confirmed "no later than August of 2014" that the claimed technologies were not as presented by Lamego. Id. at 13; see also id. at 14 (some suspicions arose when Lamego left Cercacor around January 2014); id. at 15 (by April/May 2014, Cercacor completed testing and found it did not have the feasability it originally thought); id. at 16 (decision to refund fees paid in connection with the non-workable technology made in August 2014). Defendants contend that a three-year statute of limitations applies (rather than the catch-all four-year statute), because these allegations are grounded in fraud (e.g., Lamego either lied about the technology or took it with him when he left). Id. at 17. Under this theory, Defendants argue that Plaintiffs' claim is time-barred, either by the August 2014 decision to refund fees or the March 2015 actual refund of fees. Id. at 17-18.

Second, Defendants contend that, in any event, this claim is preempted by the CUTSA to the extent it is "premised on an allegation that Dr. Lamego improperly acquired confidential technical information belonging to Cercacor." Id. at 18. Defendants argue that "CUTSA claims supersede any and all claims premised on the wrongful taking of proprietary information, even if that information does not meet the statutory definition of a trade secret." Id.

Plaintiffs respond that they "had no reason to suspect that Lamego may have acted deceptively by withholding information from Cercacor or its Board in his capacity as its CTO until after January 4, 2016," when True Wearables issued a press release about developing a competing wireless pulse oximeter. Opp. at 11; see also id. at 11 (summarizing Lamego's actions suggesting continued loyalty to Cercacor). Therefore, Plaintiffs conclude that neither a three-year nor a four-year statute of limitations bars the claim, which was timely filed on November 8, 2018. Id. Moreover, Plaintiffs counter that the claim is not grounded in fraud, and thus applying a four-year statute of limitations, even if Plaintiffs should have realized their claim by the time of the March 2015 fee refund, it is still not barred. Id. Plaintiffs also argue no preemption because this claim "stems from a different nucleus of facts" than the trade secrets claims. Id.; see also id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

16 (the claim is based on "failure to fully disclose information or not accurately representing the status of Cercacor's research and not on misappropriation of trade secrets").

In reply, Defendants argue that no reasonable juror could conclude that Plaintiffs' claim accrued after August of 2014, based on when Plaintiffs had a reasonable basis for *beginning* an investigation. Reply at 11.

Under California law, "[r]esolution of the statute of limitations issue is normally a question of fact." Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914, 922 (Cal. 2005). Summary judgment concerning when the statute of limitations begins to run is appropriate only where the uncontradicted facts established through discovery are susceptible of only one legitimate inference." Jolly v. Eli Lilly & Co., 751 P.2d 923, 928-29 (Cal. 1988). It is well-settled that "the limitations period begins [to run] once the plaintiff has notice or information of circumstances [that would] put a reasonable person on inquiry" of "suspicion of wrongdoing." Id. at 1110-11 (quotation marks omitted). "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." Id.

The parties present genuine disputes of material fact about when a reasonable person would have become suspicious regarding whether Lamego breached a duty of loyalty to Cercacor such that they should investigate. On the one hand, Lamego left Cercacor a few months after the relevant presentation. On the other hand, Plaintiffs received information that Lamego ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A reasonable jury could conclude that, with Lamego gone, it was reasonable for Cercacor to conduct its own confirmatory feasability study before suspecting wrongful conduct. Therefore, a question of material fact remains concerning when the statute of limitations began to run, and thus whether the claim is timely.

The Court agrees with Plaintiffs that this claim is neither grounded in fraud nor preempted by CUTSA. Therfore, the four-year catchall statute of limitations applies. See, e.g., Robuck v. Dean Witter & Co., 649 F.2d 641, 644 (9th Cir. 1980) ("if one of plaintiff's state law theories was grounded in a claim that [defendant] breached a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

fiduciary duty to [plaintiff], then the four-year period would apply, not the three-year period governing actions based solely on fraud").

If, contrary to their arguments made in opposition to summary judgment, Plaintiffs attempt to prove this claim at trial by proving fraud or in a fashion that demonstrates overlap with Plaintiffs' theft of trade secrets theories, Defendants may bring an appropriate renewed motion.

### C.   *Trade Secret Claims*

Defendants seek partial summary judgment concerning misappropriation of Trade Secrets 1, 6, 9, 12, and 14.

#### 1.   Versions Arguments

Defendants observe that Plaintiffs' expert opined that (1) the Oxxiom App (versions before 1.6.3) uses Trade Secret 1; (2) the Oxxiom App (versions 1.6.3 or later) uses Trade Secret 12; (3) the Oxxiom Systems that use source code version 1.5.0 use Trade Secrets 6 and 9; and (4) the Oxxiom Systems that use source code version 1.6.0 or later use Trade Secret 14 . Motion at 19-21. Because this is the only evidence Plaintiffs presented regarding particular App or source code versions allegedly using particular trade secrets, Defendants seek partial summary judgment as to any other versions of the App or source code.

Plaintiffs agree that they allege misappropriation of: (1) Trade Secret 1 only with respect to App versions before 1.6.3; (2) Trade Secret 12 only with respect to source code versions 1.6.3 and 1.7.0; (3) Trade Secret 14 only with respect to source code versions 1.6.0, 1.6.3, and 1.7.0. Opp. at 17. Plaintiffs disagree about Trade Secrets 6 and 9, because those misappropriation theories are based on Defendants' patent applications, and Lamego likewise testified about the relevant processing without regard to versions. Id. at 18.

First, because Plaintiffs do not allege misappropriation outside of the theories observed by Defendants as to Trade Secrets 1, 12, and 14, there is no dispute over which the Court may grant judgment. If these agreed upon facts are necessary to either party's trial presentation, the parties may submit an appropriate factual stipulation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|----------|-------------------------|------|------------------|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|-------|----------------------------------------------------------|

Second, as to Trade Secrets 6 and 9, Defendants' challenge goes to the weight of Plaintiffs' expert's evidence; it does not demonstrate a lack of evidence concerning the misappropriation theory. Accordingly, summary judgment is denied on this ground.

      2.    Trade Secret 6

Trade Secret 6 relates to ███████████████████████████████████████████████████████████████████ Defendants seek summary judgment on Plaintiffs' trade secret misappropriation claim based on a criticism of Plaintiffs' expert's opinion where the expert calculated ███████████████████ stated in Trade Secret 6. Plaintiffs respond that "[u]se of any substantial portion of the trade secret sufficiently shows misappropriation." Opp. at 19. Moreover, the parties' experts agree that the ██████████████ are "substantially similar in the context of the trade secret." Id.

The Court concludes that Defendants' criticism of Plaintiffs' expert's opinion goes to the weight of the evidence; it does not reflect a complete lack of evidence. Therefore, summary judgment is unwarranted as to Trade Secret 6.

      3.    Trade Secret 12

Trade Secret 12 relates to a ███████████████████████ See Motion at 22. The Court discussed this in detail in its order denying a preliminary injunction. See PI Order, ECF No. 257 (sealed). Defendants seek summary judgment on this trade secret misappropriation claim because Defendants contend that ████████████ underlying the trade secret were disclosed in patent applications. Id. Further, Defendants state that both of the relevant patent applications state that biosensing is a relevant application of each disclosed ██████████ Id. Therefore, Defendants conclude that the ████████ were readily ascertainable in the field of biosensing. Id. Moreover, Defendants argue that the defense of "readily ascertainable" does not require proving that a defendant actually ascertained the trade secret from the public source. Id. at 23.

Plaintiffs respond that Defendants misstate the law on "readily ascertainable" and misstate the facts about Trade Secret 12. Opp. at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |
|---|---|

The Court's analysis of California trade secret law in the PI Order forecloses Defendants' argument concerning "readily ascertainable." Unlike federal law, in California, the legislature expressly declined to include the phrase "readily ascertainable" in the definition of trade secret. See Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments). Thus, the Ninth Circuit has explained that, "whether information is 'readily ascertainable' is not part of the definition of a trade secret in California." Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1168 n.10 (9th Cir. 1998). Instead, under the CUTSA, ready ascertainability is a defense that "will be based upon an absence of misappropriation, rather than the absence of a trade secret." ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21 n.9 (1991). As such, under the CUTSA, ready ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable. See Imax, 152 F.3d at 1168 n.10; Medtronic MiniMed, Inc. v. Nova Biomedical Corp., 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009).

Thus, as the Court explained in the PI Order, to the extent that Trade Secret 12 "is readily ascertainable," for this to be relevant, Defendants "must still show that Defendants made use of that means of ascertainment to have a defense under the CUTSA." ECF No. 257 at 12. Defendants have presented no basis for reconsidering this ruling and the Court declines to disturb it.

Accordingly, summary judgment is unwarranted as to Trade Secret 12.

4.    Trade Secret 14

Defendants seek summary judgment concerning misappropriation of Trade Secret 14, which relates to oxygen saturation, because they contend that Plaintiffs disclosed the entirety of this trade secret in their own patent, making it generally known, readily ascertainable, and not subject to reasonable efforts to maintain secrecy. Motion at 24-25.

Plaintiffs respond that the cited patent does not disclose the full scope of Trade Secret 14, but rather Defendants ignore multiple components of the trade secret, including, e.g., the component relating to Masimo's plans for how to use the information. Opp. at 24-25. Plaintiffs also note that no expert has opined on what the cited patent teaches, leaving open factual questions about what the cited patent discloses. Id. at 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | October 15, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables, Inc. et al. |

The Court concludes that genuine issues of material fact remain about what the cited patent discloses, both in relation to the scope of the disclosure as well as the substance thereof. These factual disputes must be resolved at trial. Thus, summary judgment as to Trade Secret 14 is unwarranted.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.

No request for hearing was received after the Court issued its Tentative Ruling. Therefore, the Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15.

The Court asks the parties to meet and confer and, within 7 days, notify the Court which parts of the order should be redacted from the publicly filed version of the order.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |