FILED
CLERK, U.S. DISTRICT COURT

12/17/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ eva _____ DEPUTY

Hon. Andrew J. Guilford (Ret.)
Judicate West
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340

Special Master

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | Case No. SACV 20-00048 JVS (JDEx) <br><br> (JW Reference No.: A279845) <br><br> **[REDACTED]** <br><br> **ORDER NO. 2 OF SPECIAL MASTER ON DISCOVERY MOTIONS** |

There are numerous discovery motions pending before the Special Master. This Order No. 2 addresses three of them.

First, on October 8, 2021, Masimo Corporation and Cercacor Laboratories, Inc. (together, "Masimo") moved to compel Apple to produce documents responsive to Masimo's Request for Production ("RFP") Nos. 279, 280, 288–292, 298, 315, 396–399, 402–405, 466, 467, 485, and 501–503. ("RFP Mot.") The disputed RFPs fall into three categories that both parties refer to as "survey requests," "valuation requests," and "features requests." Apple opposed the motion on October 15 ("RFP Opp'n") and Masimo filed a reply on October 22 ("RFP Reply").

Second, on October 19, 2021, after a Rule 30(b)(6) deposition of an Apple witness, Masimo moved to compel Apple to designate a new witness prepared to speak on certain noticed topics.

("Rule 30(b)(6) Mot.") Apple opposed the motion on October 26 ("Rule 30(b)(6) Opp'n") and Masimo filed a reply on November 2 ("Rule 30(b)(6) Reply").

Third, on November 12, 2021, Masimo moved to compel Apple to (1) answer questions about its non-email ESI search methodology and (2) make two changes to its searching methodology. ("ESI Mot.") Apple opposed the motion on November 19 ("ESI Opp'n") and Masimo filed a reply on November 29 ("ESI Reply").

The Special Master provides this written Order under the terms of Paragraph 10 of the Order Appointing the Special Master.

After thorough letter-briefing, an oral argument was held on December 3, 2021. Adam B. Powell, Esq., Daniel Hughes, Esq., and Nyja Prior (bar admission pending) of the law firm Knobbe, Martens, Olson & Bear, LLP appeared on behalf of Masimo. Kenneth G. Parker, Esq. of the law firm Gibson, Dunn & Crutcher, LLP and Mark Selwyn, Esq. of the law firm Wilmer Cutler Pickering Hale & Dorr LLP appeared on behalf of Apple. Ryan Moran and Natalie Pous, Apple in-house counsel, also attended the hearing. The hearing was reported by Brooke Ryan, CSR No. 11373.

As explained further in various sections of this Order, the Special Master rules as follows.

- Masimo's RFP Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.
- Masimo's Rule 30(b)(6) Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.
- Masimo's ESI Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## 1.   MASIMO'S OCTOBER 8, 2021 RFP MOTION

### 1.1   Preliminary Considerations

As Judge Early did with one of the parties' earlier motions to compel, it's best to take hammer to nails and review the parties' disputes raised in Masimo's October 8 motion on an RFP-by-RFP basis rather than just category-by-category. But there are a few disagreements raised in the parties' briefs that relate to multiple RFPs at issue, and may impact future disputes to come.

Judge Early has already explained concerns with broad RFPs beginning with the phrase "all documents and things related to . . ." (*See, e.g.*, Dkt. No. 396 (May 20, 2021 Transcript) at 22:24–23:22, 27:14–28:18, 48:25–58:7.) Many of the Special Master's determinations in this ruling are

reached at least in part based on threshold proportionality concerns created by using this phrase in Masimo's RFPs. For the RFPs that include this phrase, the briefing shows that Masimo effectively declined any compromise from Apple to produce documents "sufficient to show" instead, expressing concerns that critical information could be withheld from production under this standard. But as Judge Early observed, there is time for Masimo to start small and, if it obtains unsatisfactory information from Apple, broaden out its requests with a better record supporting such broad requests. (*See, e.g., id.* at 30:4–14.) Apple's counsel also remain Officers of the Court, obligated to satisfy all applicable production obligations even under a "sufficient to show" standard. (*See, e.g., id.* at 14:9–16.) Responding to a "sufficient to show" request by being overly-strategic in withholding information, for example on the basis that it could be damaging to Apple's position in this case, will create more issues for Apple than Masimo down the line. There must be some mutual trust and openness amongst sophisticated counsel and their clients regarding the litigation process.

Some of Masimo's later requests begin instead with the phrase "documents regarding." Masimo suggests that these RFPs intend to seek *all* responsive documents based on a reasonable search, and Masimo further argues that they are distinguishable from RFPs seeking "documents sufficient to show." The requests do not state that they are seeking *all* documents regarding, and thus the Special Master does not interpret them as requiring such. Of course, again, Apple's counsel remain obligated to reasonably and appropriately interpret these requests and respond to them in good faith.

The parties' three other preliminary disputes relate to the scope of relevant and responsive discovery in this case based on the trade secret claims at issue.

First, the parties dispute the appropriate scope of discovery surrounding ███████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ Masimo is

permitted to explore these avenues of inquiry as part of discovery, including in the manner provided by RFP No. 289.

Second, the parties dispute the appropriate scope of discovery surrounding Masimo's marketing trade secrets. Specifically, the parties dispute whether those trade secrets can extend to marketing for products or technology distinct from products or technology associated with the technical trade secrets at issue in this case.

In reply, Masimo cited *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 945 (C.D. Cal. 2011) for the general proposition that "marketing secrets could be protectable in a case with no technical trade secrets." (RFP Reply at 2.) Masimo further cited *Flagship Living Trust for Kittler v. LMA Underwriting Agency, Inc.*, 2004 WL 7331287, at * 53–54 (D. Minn. Aug. 19, 2004), a decision where the Magistrate Judge recommended denial of a motion for summary judgment of no trade secret misappropriation despite (and without directly addressing) an argument that the parties were not competitors and an assertion that the purportedly trade secret customer lists were thus used by the defendant for a "different service." At the hearing, Apple argued that neither *Mattel* nor *Flagship Living* is applicable because (1) the operative complaint in this case "couples," "cabins," or otherwise "tethers" the marketing and technical secrets and (2) the Court in this case has "expressed skepticism" in earlier orders about not holding the marketing and technical secrets to such a relationship.

The Special Master has reviewed the operative Fourth Amended Complaint, and is not persuaded that Masimo's marketing trade secret is limited to require a relationship to Masimo's technical trade secrets like the one that Apple suggests. Although Apple is correct that the marketing trade secrets are in subsection D of Masimo's trade secret listing, appearing after three of Masimo's technical trade secrets, there is no language in subsection D that necessarily "tethers" the marketing trade secrets to the earlier (or later) technical trade secrets. Simply because the marketing trade secret is after three technical trade secrets is not enough to conclude that there is "tethering." Further, subsection D refers to ███████████████████████████████████ ███████████████████████████████████████ (FAC ¶ 43.1.) These phrases limit the scope of the marketing trade secrets. But the Special Master finds that these

phrases fail to support narrowly limiting the scope of the marketing trade secrets to require a specific relationship only to the technology at issue in the technical trade secrets. This is not reflected by Masimo's trade secret listing. Moreover, as a practical matter, the Special Master agrees that trade secret marketing techniques – like the use of customer lists or strategies for naming products – need not be "cabined" to the technology, products, or services where these secrets were first deployed. Apple has not persuasively explained why, in general, a marketing trade secret should lose its status as a trade secret when applied to other technologies or products.

The Special Master has reviewed each of the Court's orders regarding Apple's motions to dismiss Masimo's operative pleadings. In the Court's order regarding Apple's motion to dismiss the third amended complaint, the Court found the pleading's recitation of Masimo's marketing trade secrets was sufficient. (Dkt. No. 264 at 8–9.) In reaching its determination, the Court quoted the same portion of the marketing trade secret that the Special Master quotes here. Specifically, the Court stated: ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.* at 9.) The Special Master does not read this statement as meaning that the Court expected the marketing trade secret to be tethered specifically to the technical trade secrets. Instead, the Court relied on this aspect of the marketing trade secrets in explaining why they included sufficient detail to avoid dismissal.

Moreover, as the Court explained in the same ruling, just a page earlier, "[t]rade secret identification is naturally refined during discovery . . . ." (Dkt. No. 264 at 8.) Even if there was some basis to find "cabining" or "tethering" of the technical and marketing trade secrets (again, the Special Master finds there is not), Masimo would still be permitted conduct discovery beyond the exact boundaries of its current trade secret disclosure in the Fourth Amended Complaint. Judge Early has previously found the same. (Dkt. No. 396 at 10:13–13:4.)

Of course, as Judge Early further observed, "at some point things do get too broad," (*id.*) and proportionality must be considered in terms of individual requests. Apple's expressed concerns about "discovery creep" are noted, as are the comments that the proportionality "line" is not always easy to draw. But after considering all of the arguments raised on this issue including those only

raised during oral argument, to the extent Apple is ordered to respond to requests at issue in this ruling that relate to Masimo's marketing trade secrets, Apple's responses should not be limited based on an assertion that the marketing trade secrets must be tied to any products or technology at issue by the technical trade secrets.

Third, the parties dispute the appropriate scope of discovery surrounding Masimo's technical trade secrets as it relates to products or prototypes beyond the "Apple Watch Products." The Special Master has already ruled that "[a]n employee working for a short time many years ago indeed might have provided trade secrets that have a continuing effect." (Oct. 6, 2021 Discovery Order No. 1 at 2.) Masimo is entitled to seek discovery beyond the Apple Watch Products, particularly in the manner provided by RFP Nos. 402–404. Apple must produce relevant documents, if any, in response to RFP Nos. 402–404 for any product implicated by those requests, not just Apple Watch Products. Otherwise, Apple must affirmatively state in response to those RFPs that no additional documents exist.

With these preliminary considerations in mind, the Special Master will turn to the specific RFPs at issue. For RFPs where the Special Master has granted Masimo's motion, Apple is **ORDERED** to conduct a good-faith and diligent search, and produce by January 7, 2022 all responsive, non-privileged documents and things that it locates.

### 1.2    Survey Requests (RFP Nos. 288–292)

Masimo states that it seeks "documents related to surveys sent to Apple Watch customers, including questions about ███████████████████████████████████████████████ ██████████████" (RFP Mot. at 1.) In reply, Masimo clarifies that it is not seeking the raw data underlying the surveys. (RFP Reply at 1.)

The Special Master has already addressed some of the parties' disputes regarding the appropriate responsive scope of these requests in the Preliminary Considerations section of this ruling. The parties also dispute which Apple or third party applications ("apps"), if any, are relevant for discovery purposes in this case. Apple argues that it already agreed to produce documents concerning an app called ResearchKit, and asserts that "[t]his is the only even arguably relevant

app-related material." (RFP Opp'n at 3.) Masimo replies by listing numerous apps that it asserts are relevant. (RFP Reply at 2.) As provided herein, the Special Master finds that Masimo's motion should be denied as to the RFPs regarding apps, given their overbreadth. If Masimo sought discovery regarding specific apps, it could say so in the request. The Special Master has also already addressed the concerns raised by the phrase "all documents and things related to."

The Special Master rules as follows.

| 288 | All documents and things related to the surveys sent by Apple or third parties employed by Apple to Apple Watch Product users regarding any Apple Watch Product, including but not limited to the questions asked and the users' feedback. | DENIED, at least based on overbreadth and proportionality concerns. |
| --- | --- | --- |
| 289 | All documents and things related to the surveys sent by Apple or third parties employed by Apple to Apple Watch Product users regarding ███████████████████████████ including but not limited to the questions asked and the users' feedback. | GRANTED, with the understanding stated on the record that Masimo is not seeking raw data underlying the surveys. |
| 290 | All documents and things related to the surveys sent by Apple or third parties employed by Apple to Apple Watch Product users regarding ██████████████████ ████████████████████████ ████████████ including but not limited to the questions asked and the users' feedback. | DENIED, at least based on overbreadth and proportionality concerns. |
| 291 | All documents and things related to the surveys sent by Apple or third parties employed by Apple to Apple Watch Product users | DENIED, at least based on |

| | | |
|---|---|---|
| regarding ████████████ ████████████████ ████████████ including but not limited to the questions asked and the users' feedback. | | overbreadth and proportionality concerns. |
| 292 | All documents and things related to the surveys sent by Apple or third parties employed by Apple to Apple Watch Product users regarding ██████████████ ██████████████ ██████████, including but not limited to the questions asked and the users' feedback. | DENIED, at least based on overbreadth and proportionality concerns. |

### 1.2    Valuation Requests (RFP Nos. 396–399, 402–405)

Masimo states that it seeks "information about (i) the value of oxygen saturation or pulse rate, (ii) the impact of including such technologies, and (iii) considerations in purchasing or licensing such technologies." (RFP Mot. at 3.) Apple states that it has already previously agreed to provide documents in response to overlapping requests. (RFP Opp'n at 3.)

The Special Master has already addressed some of the parties' disputes regarding the appropriate responsive scope of these requests in the Preliminary Considerations section of this ruling. The parties additionally dispute whether RFP Nos. 396–399 require production of more than "formal" analyses. The Special Master agrees that these RFPs do require more. As Masimo puts it, it is not seeking "every single responsive document" that Apple has, including "obscure 'one-off' emails." Instead, Masimo requests that Apple conduct a reasonable search for responsive documents, including more "informal" discussions regarding the impact of Apple's incorporation of certain product features on sales price/volume of applicable products. In reaching this determination, it is relevant to the Special Master that the line between a "formal" and "informal" analysis is not entirely clear, and that, as Masimo notes, Apple's search for both formal and informal analyses must simply be reasonable.

Based on the Special Master's review and consistent with the analysis in this ruling, Masimo's motion is GRANTED-IN-PART as to each Valuation Request (repeated below for reference).

| 396 | Documents regarding the impact (including projected impact) of Defendant's incorporation of pulse rate or oxygen saturation in Defendant's Apple Watch Products on the sales price/volume of the Apple Watch Products. |
|---|---|
| 397 | Documents regarding the impact (including projected impact) of Defendant's incorporation of pulse rate or oxygen saturation in Defendant's Apple Watch Products on the sales price/volume of products that compete against the Apple Watch Products. |
| 398 | Documents regarding any competitive analysis of any competitor to the Apple Watch Products with respect to pulse rate or oxygen saturation. |
| 399 | Documents regarding Apple's evaluation of the health care market for the Apple Watch Products, including market size, market importance to Apple's business, evaluation of target customers, and Apple's considerations in entering the health care market. |
| 402 | Documents regarding valuations of pulse rate or oxygen saturation technology or intellectual property. |
| 403 | Documents regarding any internal intellectual property strategy, business strategy, or plan relating to pulse rate or oxygen saturation technology. |
| 404 | Documents sufficient to show any internal intellectual property strategy, business strategy, or plan relating to pulse rate or oxygen saturation technology. |
| 405 | Forecasts, projections, or strategic evaluations regarding Defendant's consideration of a purchase, acquisition, or license of technology from any company concerning pulse rate or oxygen saturation technology. |

**1.3     Features Requests (RFP Nos. 279, 280, 298, 315, 466, 467, 485, and 501–503)**

Masimo states that the Features Requests "seek information regarding (i) features present in some Apple Watch models, (ii) the reasons for including features in particular models, and (iii) Apple's consumer pricing strategies for different models." (RFP Mot. at 4.) Apple states that it has

agreed to produce—for each relevant Apple Watch Product at issue—documents or communications sufficient to show (i) how many Apple Watch customers use the Blood Oxygen app, high/low heart rate, and irregular heart rhythm features listed under the "Quick Look" heading of the website https://www.apple.com/watch/compare (RFPs 279/466), and (ii) the proportion of Apple Watch customers who use those features (RFPs 280/467), to the extent such documents exist.

(RFP Opp'n at 5.) Apple also states that it has agreed to produce documents in response to RFP 315 "tailored to the technology alleged to incorporate Plaintiffs' alleged trade secrets for pulse rate and oxygen saturation." (*Id.*)

The Special Master has already addressed some of the parties' disputes regarding the appropriate responsive scope of these requests in the Preliminary Considerations section of this ruling. The parties additionally raise a dispute regarding whether Apple has improperly interpreted these requests as (i) related only to "surveys or research" and (ii) related only to documents (e.g., surveys) where the ***purpose*** of the document is to value individual features. The Special Master agrees that the RFPs as phrased are not always so limited and need not be, and rules as follows.

| 279 | All documents or communications referring or relating to how many Apple Watch customers use each of the features listed under the "Quick Look" heading of the website https://www.apple.com/watch/compare for each Apple Watch Product, including all Apple Watch Products both listed and not listed on that website that use features listed on that website. | **DENIED**, at least based on overbreadth and proportionality concerns. |
| --- | --- | --- |

| 280 | All documents or communications referring or relating to the proportion of Apple Watch customers use each of the features listed under the "Quick Look" heading of the website https://www.apple.com/watch/compare for each Apple Watch Product, including all Apple Watch Products both listed and not listed on that website that use features listed on that website. | DENIED, at least based on overbreadth and proportionality concerns. |
| --- | --- | --- |
| 298 | All documents that refer or relate to why features were included in the Apple Watch 6, but not included in the Apple Watch SE. | DENIED, at least based on overbreadth and proportionality concerns. |
| 315 | All documents reflecting strategies or decisions on setting consumer prices for Apple Watch Products, including but not limited to strategies or decisions on relative prices between different models, and price adjustments as newer models are released. | DENIED, at least based on overbreadth and proportionality concerns. |
| 466 | Documents regarding how many Apple Watch customers use each of the features listed under the "Quick Look" heading of the website https://www.apple.com/watch/compare for each Apple Watch Product, including all Apple Watch Products both listed and not listed on that website that use features listed on that website. | GRANTED. |
| 467 | Documents regarding the proportion of Apple Watch customers use each of the features listed under the "Quick Look" heading of the website https://www.apple.com/watch/compare for each Apple Watch Product, including all Apple Watch Products both listed and not listed on that website that use features listed on that website. | GRANTED. |
| 485 | Documents regarding why features were included in the Apple Watch 6, but not included in the Apple Watch SE. | GRANTED. |

| 501 | Documents regarding strategies or decisions on setting consumer prices for Apple Watch Products. | GRANTED. |
| 502 | Documents regarding strategies or decisions on setting relative prices between different Apple Watch models. | GRANTED. |
| 503 | Documents regarding strategies or decisions for making price adjustments to Apple Watch models as newer models are released. | GRANTED. |

2.    MASIMO'S OCTOBER 19, 2021 RULE 30(B)(6) MOTION

Masimo's October 19 motion relates to the sufficiency of Apple's Rule 30(b)(6) testimony on what was ordered to be a narrow set of deposition topics, including topics regarding Apple's "removal" of custodial documents for two former Apple employees and its subsequent attempts during this litigation to retrieve at least some of that same data. The Special Master has reviewed the full transcript for Masimo's 7-hour deposition of Apple's Rule 30(b)(6) witness, Ms. Robin Goldberg, as well as the parties' briefing and other exhibits.

Extensive ground was covered over the course of deposition including into areas far beyond the handling of Lamego's and Nazzaro's data after they left Apple in 2014, as well as beyond Apple's current efforts to retrieve data in its custody and control related to these two individuals. Overall, the Special Master found Goldberg's responses to be non-evasive, and further found her to be adequately prepared during the vast majority of her testimony.

Although Goldberg was generally prepared, the Special Master still ultimately finds that Masimo is entitled to more forthcoming answers from Apple on important issues, but only in response to four specific topics raised at Goldberg's deposition. Thus, Apple is ORDERED to identify a person prepared to further testify on its behalf (either Goldberg or someone else) on the following questions only. That testimony must first be provided in the form of a sworn declaration due in fourteen days and submitted to both Masimo *and* the Special Master at the time of service. If necessary, the parties may meet and confer after the declaration is served and if necessary, Masimo is permitted to take a further one-hour deposition solely on these narrow topics.

- Is there any software available at Apple that is capable of searching its employee's various electronic communication streams before their collection for litigation, and that specifically could be used to identify data sent to or from Lamego or Nazzaro in Apple's custody or control? If any such software exists, Apple must identify it with specificity and describe it. This is one topic in particular where more witness preparation was required. (*See, e.g.*, Topic No. 7; Goldberg Tr., 121 ("Q: Did you discuss with anyone whether Apple has software capable of searching its employees' emails, iMessages, and other electronic communication streams for any purpose that is not litigation purposes? [objection] A: I would only be discussing these abilities or capabilities in the context of litigation."), 147.) This question, in particular, presents in the words of Judge Early, "an issue that cries out for, frankly, two – a telephone call with Plaintiffs' tech email recovery person and Apple's tech email recovery person having a conversation about how it works." (Dkt. No. 463 at 21:3–6.) But the Special Master, like Judge Early, will not order such a conversation at this time.

- What locations did Apple search in recently looking for data from Lamego or Nazzaro? This question should be answered with particularity rather than in terms of where Apple "would have" looked, or in reference to "typical standard places." Stating generally that the investigation included talking to co-inventors and colleagues does not specify a "location." Apple's privilege objections are overruled, including on the basis of waiver. (*See, e.g.*, Topic No. 5; Goldberg Tr., 208, 217–229.)

- Who did Apple talk to (e.g., specific co-inventors or colleagues), if anyone, in looking for data from Lamego or Nazzaro in Apple's custody or control? Apple must answer with particularly. Apple's privilege objections are overruled, as Apple has not persuasively demonstrated that the "identify of custodians" in this context is privileged information that reveals the protected substance of custodial interviews themselves. (*See, e.g.*, Topic No. 5; Goldberg Tr., 210–217, 240–241.)

- What steps did the collaboration team take to remove, and confirm removal, of Lamego's and Nazzaro's email data from the IMAP system, including what software was used for the removal? (*See, e.g.*, Topic 3; Goldberg Tr. 232–234.) More specificity about this process is

required. This question, again, presents "an issue that cries out for, frankly, two – a telephone call with Plaintiffs' tech email recovery person and Apple's tech email recovery person having a conversation about how it works." (Dkt. No. 463 at 21:3–6.) But the Special Master, like Judge Early, will not order such a conversation at this time. Although the Special Master finds this relief warranted, Masimo's request that all seven hours of its time spent should be credited back to it in this case is unpersuasive. Judge Early said it best.

> [D]on't have the fact that your nose is under the tent be an example to get the whole camel under there. This is a narrow issue and it's to get to the bottom of these emails or other documents and what was done. It's not to do a full bore investigation of the document production of Apple.

(Dkt. No. 463 at 27:21–1.) Although true that Apple apparently agreed to produce a witness on Masimo's seven noticed topics for almost their full scope, Masimo's time spent, including going far afield in its inquiries, will remain tallied against Masimo. Indeed, Masimo relies on portions of Goldberg's testimony to support arguments made in its unrelated November 12 motion. (ESI Mot., Ex. 3.) The time spent during deposition on the four questions identified in this ruling was just a small fraction (and could have been smaller with less repeated questions), and Apple's witness did testify competently on the vast majority of other issues.

Masimo's Rule 30(b)(6) motion is accordingly **GRANTED-IN-PART** and **DENIED-IN-PART** as stated herein.

3.    MASIMO'S NOVEMBER 12, 2021 ESI MOTION

Masimo's November 12 motion requests information regarding Apple's non-email ESI searching. It also requests that Apple be ordered to "(1) collect and review cell phone communications between each ESI custodian and the other ESI custodians and (2) search company chat programs using ESI search terms." (ESI Reply at 1.)

Masimo's request for more information about Apple's non-email ESI search strategy is **GRANTED** in that Apple's counsel is **ORDERED** to provide a sworn declaration to Masimo and the Special Master **within fourteen days of this Order** stating, for each custodian, (1) the types of non-email communication streams that Apple is searching and (2) whether any such search is limited to that custodian's communications with particular other individuals, and who those other individuals are. As Masimo acknowledged, Apple has otherwise partially addressed this aspect of Masimo's motion by identifying the two custodians it is collecting non-email ESI from. Apple has not otherwise persuasively shown a basis for withholding this basic information about its search methodology.

As to the second aspect of Masimo's request, the Special Master has reviewed the email correspondence between counsel on these issues. (ESI Mot., Ex. 2.) Although there was ultimately two month's delay in Masimo's filing the motion from the date of its last communication with Apple, there was other delay in the meet and confer colloquy on Apple's part that exacerbated issues. (*See generally id.*) In these circumstances, the Special Master won't deny this aspect of the motion based on delay arguments.

In statements made in its papers and at the hearing, Apple stated that copies of certain non-email communications (specifically, iMessages) are only readily-obtainable off of an Apple employee's device itself, and cannot be easily retrieved in a usable format from an Apple server. In addition to privacy considerations, Masimo has not shown that the burden to Apple of collecting large amounts of data directly from the cell phones of each and every one of its 31 ESI custodians is outweighed by the likely benefit to this case. Based on this understanding of the limited access options for retrieving this type of information, the Special Master **DENIES** Masimo's motion requesting iMessages between each ESI custodian and the other ESI custodians.

But in its reply, Masimo has presented some specific examples of ESI custodian cell phone communications that it alleges have not been included in Apple's productions. The parties are **ORDERED** to meet and confer **within fourteen days** regarding the specific examples of ESI custodian cell phone communications identified in Masimo's reply and agree on narrowly-tailored non-email keyword searches of specific ESI custodian's devices in light of those communications. The Special Master agrees that given the limited options presented for obtaining iMessage data

from an ESI custodian, "keyword searches" in this context is not intended to mean the specific, Boolean-style ESI search strings that the parties have implemented in this case for other aspects of discovery, including email searching. The parties must meet and confer to determine appropriate search terms and parameters specifically for searching for relevant iMessages within applicable device apps.

The Special Master **GRANTS** Masimo's motion as to its request that Apple search, using the parties' agreed ESI search terms, for any other non-email ESI where data is saved and accessible in a usable format on Apple servers (for example, Slack communications). Apple has not shown that the same privacy and burden concerns are at issue for these server-stored communications. Apple is **ORDERED** to conduct a good-faith and diligent search, and produce by January 14, 2022 all responsive, non-privileged non-email ESI (including company chats) that it locates on its servers in a usable format.

## 4.   CONCLUSION

Numerous other arguments were presented in the briefs and oral arguments, and all were considered by the Special Master in making this Order. The Special Master has provided detailed rulings in the body of this Order, and does not repeat them here.

As noted, the Special Master provides this written Order under the terms of Paragraph 10 of the Order Appointing the Special Master, which states in part as follows:

The Special Master shall issue rulings by order, except for any contempt findings that shall be issued by report and recommendation. See Fed. R. Civ. P. 53(c)(2). The Special Master shall provide any written order, report, or recommendation to counsel for the parties by email to give them an opportunity to propose redactions before submission to the Court. The parties shall meet and confer and submit any proposed redactions to the Special Master within three court days. If the parties cannot agree on redactions, the parties shall provide their positions by email to the Special Master, including all

proposed redactions, and the Special Master may redact upon a finding that redaction is appropriate in his/her discretion before filing.

THUS IT IS ORDERED.

Dated:  12/9/21

Hon. Andrew J. Guilford (Ret.)
Special Master

**JUDICATE WEST**
Alternative Dispute Resolution

1851 E. First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

*Results Beyond Dispute*℠

*www.judicatewest.com*

## PROOF OF SERVICE

### Masimo Corporation, et al. vs. Apple, Inc.
### A279845

I, the undersigned, an employee of Judicate West, located at 1851 E. First Street, Suite 1600, Santa Ana, CA 92705, declare under penalty of perjury that I am over the age of eighteen (18) and not a party to this matter or proceeding.

On December 10, 2021, I served the foregoing documents, described as:

### ORDER NO. 2 OF SPECIAL MASTER ON DISCOVERY MOTIONS

to the following parties:

### SEE ATTACHED MAILING LIST

(X) **BY E-MAIL** I caused the above-referenced document to be transmitted via electronic mail (e-mail) to the parties as listed on this Proof of Service

( ) **BY ELECTRONIC FILING** I caused such document to be sent via electronic service by submitting an electronic version of the document(s) to One Legal, LLC, through the user interface at www.onelegal.com.

( ) **BY FASCIMILE** I caused the above-referenced document to be transmitted via facsimile to the parties as listed on this Proof of Service. The document was transmitted by facsimile transmission and the transmission was reported as complete and without error.

( ) **BY PERSONAL SERVICE** I personally delivered the documents to the persons at the address (es): by leaving the documents at the person (s) office, in an envelope or package clearly labeled to identify the person(s) being served, with a receptionist or an individual in charge of the office.

( ) **BY UNITED STATES PARCEL SERVICE** I am readily familiar with the business' practice for collection and processing of correspondence and mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit with postage thereon fully prepaid at Santa Ana, California in the ordinary course of business

( ) **STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

( ) **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **December 10, 2021,** at Santa Ana, California

Heidi Adams
Judicate West

Downtown Los Angeles Office • 601 S. Figueroa St., Suite 3400 • Los  Angeles, CA 90017 • (213) 223-1113 • Fax (213) 223-1114
Sacramento Office • 980 9TH Street, Suite 2200 • Sacramento, CA  95814 • (916) 394-8490 • Fax (916) 394-8495
San Diego Office • 402 West Broadway, Suite 2400 • San Diego, CA  92101 • (619) 814-1966 • Fax (619) 814-1967
San Francisco Office • 100 Pine St., Suite 1950 • San Francisco, CA  94111 • (415) 266-1242 • Fax (415) 266-1243
West Los Angeles Office • 11601 Wilshire Blvd., Suite 2040 • Los  Angeles, CA 90025 • (310) 442-2100 • Fax (310) 442-2125



**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

**www.judicatewest.com**

## Case Contact List

as of Thursday, December 9, 2021

**JW Case #: A279845**

*Case Caption: Masimo Corporation, et al. vs. Apple, Inc.*

Daniel P. Hughes, Esq.
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
San Diego, CA 92130
Phone: (858) 707-4000   Fax: (858) 707-4001
Email: daniel.hughes@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Stephen C. Jensen, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: steve.jensen@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Mark D. Kachner, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: mark.kachner@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Benjamin A. Katzenellenbogen, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: ben.katzenellenbogen@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Stephen W. Larson, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: stephen.larson@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495

**JUDICATE WEST**
Alternative Dispute Resolution

**Results Beyond Dispute℠**

**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

www.judicatewest.com

Perry D. Oldham, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: perry.oldman@kmob.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Adam B. Powell, Esq.
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
San Diego, CA 92130
Phone: (858) 707-4000   Fax: (858) 707-4001
Email: adam.powell@knobbe.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Joseph R. Re, Esq.
Knobbe, Martens, Olson & Bear, LLP
2040 Main St.
14th Floor
Irvine, CA 92614
Phone: (949) 760-0404   Fax: (949) 760-9502
Email: jre@kmob.com
Representing Masimo Corporation; Cercacor Laboratories, Inc.

Ryan J. Moran, Esq.
Apple, Inc.
1 Infinite Loop
MS 169-2NYJ
Cupertino, CA 95014
Phone: (408) 974-0756   Fax:
Email: rmoran@apple.com
Representing Apple, Inc.

Natalie Pous, Esq.
Apple, Inc.
1 Infinite Loop
MS 169-2NYJ
Cupertino, CA 95014
Phone: (408) 974-0756   Fax:
Email: npous@apple.com
Representing Apple, Inc.

Brian K. Andrea, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500   Fax: (202) 530-4238
Email: bandrea@gibsondunn.com
Representing Apple, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495

**JUDICATE WEST**
Alternative Dispute Resolution

*Results Beyond Dispute℠*

**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

www.judicatewest.com

Brian M. Buroker, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500   Fax: (202) 530-4238
Email: bburoker@gibsondunn.com
Representing Apple, Inc.

Angelique Kaounis, Esq.
Gibson, Dunn & Crutcher, LLP
2029 Century Park E.
Suite 4000
Los Angeles, CA 90067
Phone: (310) 552-8500   Fax:
Email: akaounis@gibsondunn.com
Representing Apple, Inc.

Joshua H. Lerner, Esq.
Gibson, Dunn & Crutcher, LLP
555 Mission St.
Suite 3000
San Francisco, CA 94105
Phone: (415) 393-8200   Fax: (415) 393-8306
Email: jlerner@gibsondunn.com
Representing Apple, Inc.

Jason C. Lo, Esq.
Gibson, Dunn & Crutcher, LLP
333 S. Grand Ave.
49th Floor
Los Angeles, CA 90071
Phone: (213) 229-7000   Fax: (213) 229-6635
Email: jlo@gibsondunn.com
Representing Apple, Inc.

H. Mark Lyon, Esq.
Gibson, Dunn & Crutcher, LLP
1881 Page Mill Rd.
Palo Alto, CA 94304
Phone: (650) 849-5300   Fax: (650) 849-5333
Email: mlyon@gibsondunn.com
Representing Apple, Inc.

Kenneth G. Parker, Esq.
Gibson, Dunn & Crutcher, LLP
3161 Michelson Dr.
Irvine, CA 92612
Phone: (949) 451-3800   Fax: (949) 451-4220
Email: kparker@gibsondunn.com
Representing Apple, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495

**JUDICATE WEST**
Alternative Dispute Resolution

*Results Beyond Dispute*℠

**Santa Ana Office**
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340
Fax: (714) 834-1344

www.judicatewest.com

Brian Rosenthal, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500   Fax: (202) 530-4238
Email: barosenthal@gibsondunn.com
Representing Apple, Inc.

Ilissa S. Samplin, Esq.
Gibson, Dunn & Crutcher, LLP
333 S. Grand Ave.
49th Floor
Los Angeles, CA 90071
Phone: (213) 229-7000   Fax: (213) 229-6635
Email: isamplin@gibsondunn.com
Representing Apple, Inc.

Marc R. Lewis, Esq.
Lewis & Llewellyn, LLP
601 Montgomery St.
Suite 2000
San Francisco, CA 94111
Phone: (415) 800-0590   Fax: (415) 390-2127
Email: mlewis@lewisllewellyn.com
Representing Apple, Inc.

Tobias G. Snyder, Esq.
Lewis & Llewellyn, LLP
601 Montgomery St.
Suite 2000
San Francisco, CA 94111
Phone: (415) 800-0590   Fax: (415) 390-2127
Email: tsnyder@lewisllewellyn.com
Representing Apple, Inc.

Mark D. Selwyn, Esq.
Wilmer Cutler Pickering Hale & Dorr, LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Phone: (650) 858-6031   Fax:
Email: mark.selwyn@wilmerhale.com
Representing Apple, Inc.

Downtown Los Angeles Office ● 601 S. Figueroa Street Suite 4000 ● Los Angeles, CA 90017 ● (213) 223-1113 ● Fax (213) 223-1114
San Diego Office ● 402 W. Broadway Suite 2400 ● San Diego, CA 92101 ● (619) 814-1966 ● Fax (619) 814-1967
San Francisco Office ● 100 Pine Street Suite 1950 ● San Francisco, CA 94111 ● (415) 266-1242 ● Fax (415) 266-1243
West Los Angeles Office ● 11601 Wilshire Blvd Suite 2040 ● Los Angeles, CA 90025 ● (310) 442-2100 ● Fax (310) 442-2125
Sacramento Office ● 980 9th Street Suite 2200 ● Sacramento, CA 95814 ● (916) 394-8490 ● Fax (916) 394-8495