Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **APPLE INC.'S MOTION FOR**<br>) **PARTIAL SUMMARY JUDGMENT**<br>)<br>) Date:      February 7, 2022<br>) Time:      1:30 p.m.<br>) Location:  Courtroom 10C<br>)<br>)<br>)<br>)<br>) |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ........................................................................... 1

II.    STATEMENT OF FACTS .............................................................. 2

    A.    ███████████████████ ...................................... 2

    B.    After The Meetings, Apple Recruited Dozens of Masimo Employees ..................................................................................... 3

    C.    Lamego ████████████████████ .................. 4

    D.    O'Reilly Also ████████████████ ████ .................................................................................................... 5

    E.    Apple Concealed Its Misappropriation Until 2017 And Later ............ 6

III.   PROCEDURAL HISTORY ............................................................ 7

    A.    The Court Rejected Apple's Defense At The Pleading Stage ............. 7

    B.    Apple Repeatedly Claimed Masimo Had No Basis To Bring Suit ...................................................................................................... 8

    C.    Apple Files This Motion When Significant Fact Discovery Remains ................................................................................................ 9

IV.    THE COURT SHOULD DENY SUMMARY JUDGMENT ...................... 10

    A.    Apple Advocates For An Incorrect Legal Standard ........................... 10

    B.    Apple Has Not Shown As a Matter of Law That Masimo Had Reason to Suspect Misappropriation Had Actually Occurred ............ 12

        1.    The January 2014 Letter ........................................................... 12

        2.    Apple and Third-Party Publications ......................................... 13

        3.    Apple's '726 Patent Publication ............................................... 14

        4.    Masimo's Internal Communications About Apple ..................... 15

        5.    Masimo's Communications ████████ ..................... 16

        6.    At Most, Factual Disputes Exist As To Whether Masimo Had Reason To Believe Misappropriation Actually Occurred ........................................................................................... 18

**TABLE OF CONTENTS**
(*Cont'd*)

**Page No.**

C.   Apple Again Ignores That It Must Show Masimo Could Have Learned Facts Sufficient To Justify Bringing Suit ............................ 19

V.   THE COURT SHOULD DENY BIFURCATION ....................................... 21

A.   Bifurcation Will Not Promote Judicial Economy and Convenience ................................................................................... 21

B.   Apple's Concerns About Presenting "Conflicting Cases" Do Not Justify Bifurcating Trial ................................................................ 23

VI.   CONCLUSION .......................................................................... 24

# TABLE OF AUTHORITIES

**Page No(s).**

*Alamar Biosciences, Inc. v. Difco Labs, Inc.*,
   1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ....................................8, 11, 19

*Anderson v. Liberty Lobby*, Inc.,
   477 U.S. 242, 250 (1986) .......................................................................10

*Bose Corp. v. JBL, Inc.*,
   274 F.3d 1358 (Fed. Cir. 2001) ...............................................................10

*Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*,
   873 F. Supp. 2d 1192 (N.D. Cal. 2012)..............................................13, 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................10

*Cypress Semiconductor Corp. v. Superior Ct.*,
   163 Cal. App. 4th 575 (2008) ............................................................8, 19

*E-Fab, Inc. v. Accts., Inc. Servs.*,
   153 Cal. App. 4th 1308 (2007) ...............................................................19

*Ellingson Timber Co. v. Great N. Ry. Co.*,
   424 F.2d 497 (9th Cir. 1970) ..................................................................23

*Foltz v. City of Largo*,
   2011 WL 1690010 (M.D. Fla. May 3, 2011) ............................................24

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ......................................................................11, 18

*Fulfillium v. ReShape Med. LLC*,
   2018 WL 11354522 (C.D. Cal. Nov. 6, 2018) .....................................19, 20

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) .................................................8, 19

*Gomez v. City of Torrance*,
   438 F. App'x 626 (9th Cir. 2011)............................................................23

*Grisham v. Philip Morris, Inc.*,
   2009 WL 9102320 (C.D. Cal. Dec. 3, 2009).............................................22

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ..................................................................23

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Hays v. VDF Futureceuticals, Inc.*,
   2016 WL 5660395 (D. Haw. Sept. 28, 2016)................................10, 12, 19, 20

*Heatherman v. Ethicon, Inc.*,
   2021 WL 2138543 (D. Col. Jan. 22, 2021) .....................................................23

*Heinrich v. Ethicon, Inc.*,
   2021 WL 2801961 (D. Nev. Apr. 15, 2012) .............................................22, 24

*Highmark Digital, Inc. v Casablanca Design Centers, Inc.*,
   2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) .................................................18

*Hirst v. Gertzen*,
   676 F.2d 1252 (9th Cir. 1982) ........................................................................24

*Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*,
   2021 WL 706646 (S.D.N.Y. Feb. 22, 2021) ...................................................23

*Klang v. Pflueger*,
   2014 WL 4922401 (C.D. Cal. July 10, 2014) .................................................10

*Kleinhammer v. City of Paso Robles*,
   2008 WL 11411408 (C.D. Cal. Oct. 10, 2008) ...............................................22

*Mason v. Ethicon, Inc.*,
   2021 WL 2580113 (M.D. Fla. May, 10 2021) .................................................22

*McBroom v. Ethicon, Inc.*,
   2021 WL 2661463 (D. Ariz. June 29, 2021).....................................................24

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ...........................................................10, 17, 20

*Memry Corp. v. Kentucky Oil Techs. N.V.*,
   2005 WL 8162558 (N.D. Cal. Apr. 8, 2005).....................................................17

*MGA Entm't, Inc. v. Mattell*
   41 Cal. App. 5th 554 (2019) ...................................................................8, 11, 19

*Mullally v. Jones*,
   2007 WL 1213704 (D. Nev. Apr. 24, 2007) .............................................21, 23

*Ovando v. Cnty. of Los Angeles*,
   159 Cal. App. 4th 42 (2008) ............................................................................11

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Paris v. Union Pac. R.R., Co.,*
  2006 WL 5186517 (E.D. Ark. Aug. 11, 2006)...................................................22

*Wang v. Palo Alto Networks, Inc.,*
  2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)...............................................8, 15

*Ward v. Westinghouse Canada, Inc.,*
  32 F.3d 1405 (9th Cir. 1994) ..........................................................................11

*Zahedi v. Miramax, LLC,*
  2021 WL 3260603 (C.D. Cal. Mar. 24, 2021) ................................................24

# OTHER AUTHORITIES

Cal. Civ. Code § 3426.1.....................................................................................10, 13

Fed. R. Civ. P. 56..................................................................................................10

Wright & Miller, *Federal Practice & Procedure* § 2388 (3d ed.) .......................23

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") oppose Apple's Motion for Summary Judgment.

## I. **INTRODUCTION**

Apple's Motion is deeply flawed.  Apple previously moved to dismiss Masimo's trade-secret claim by raising many of the same arguments that Apple raises here.  The Court rejected those arguments and found the statute of limitations was not a basis for dismissing Masimo's claim.  The Court also set forth the correct legal standard for evaluating a statute of limitations defense, which Apple ignored in its motion to dismiss and now ignores again in this Motion.  In particular, the Court explained that Apple must show (1) Masimo had reason to believe misappropriation had actually occurred and (2) a reasonable investigation would have revealed a sufficient factual basis to bring suit. Apple's Motion again fails to establish either requirement.

First, Apple points to no evidence suggesting Masimo had reason to believe misappropriation had actually occurred before 2017.  At most, Apple cites evidence showing Masimo knew Apple recruited some of its employees and was "watching" to see if Apple took Masimo's intellectual property.  No evidence shows Masimo knew or had reason to believe misappropriation had already *occurred*.  Apple's argument that Masimo should have simply *assumed* misappropriation relies on the doctrine of inevitable disclosure—a legal theory that Masimo does not and cannot pursue because it is contrary to California law.

Second, Apple makes no attempt to show a reasonable investigation in 2014 or 2016 would have revealed facts sufficient to bring suit.  Indeed, as with its failed motion to dismiss, Apple completely ignores this requirement.  This is presumably because the facts show Masimo could *not* have learned about Apple's misappropriation until 2017 or later.  In fact, Apple has vehemently argued throughout this case that Masimo did not have sufficient facts to bring suit *even in 2020*.

Apple's bifurcation request likewise makes no sense.  Apple argues as though a trial on its statute-of-limitations defense would resolve this entire lawsuit and would

present unique documents and testimony.  Neither is true.  Apple seeks to bifurcate only **one** of its **fourteen** defenses that—even if successful—would resolve only **one** of Masimo's **twenty-six** claims.  Moreover, the relevant evidence—including the specific evidence Apple outlines as purportedly unique—would need to be presented with the other claims and defenses.  Thus, bifurcation would cause needless duplication and waste.  The Court should deny Apple's motion in its entirety.

## II.  STATEMENT OF FACTS

**A.** ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████  Apple is the world's largest public company and frequently captures new markets by identifying the technology leader and adopting their leading technology.  That is what Masimo alleges happened here.

███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████

/ / /

---

1  Lettered exhibits are attached to the Declaration of Adam B. Powell, submitted herewith.  Numbered exhibits are attached to Apple's Declaration of Brian Andrea (Dkt. 521-4 & 522-3).  All emphasis is added unless noted otherwise.

1    The documents produced in this case expose for the first time that Apple was

2    indeed looking to replicate Masimo's technology.  Unknown to Masimo to this day,

3    ███████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████

11   Apple designated the above cited documents "Attorneys Eyes Only," thereby preventing

12   Masimo from knowing these facts even today.

13   **B.**     **After The Meetings, Apple Recruited Dozens of Masimo Employees**

14   ████████████████████████████████████████████

15   ██████████████   One of those employees was   ██████████████████

16   ███████████████████████████████████████████████████████

17   ███████████████████████   O'Reilly joined Apple,   ██████

18   ███████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████

20   ████████████████████████████████████████████

21   But Apple did not stop.  Instead, Apple hired Cercacor's Chief Technical Officer,

22   Marcelo Lamego.  Unbeknownst to Masimo at the time, Apple first reached out to

23   Lamego in early 2013.  In October 2013—a few months after Perica and Cook discussed

24   Kiani and Masimo—Lamego confidentially wrote to Cook at 1:00 am.  Ex. C at -520.

25   Lamego told Cook he believed Apple could solve two aspects of patient monitoring on

26   its own, but needed him to solve the "patient equation."  *Id.*  Lamego explained that was

27   the "deceptive part" because it is "easy to develop" medical products for most users, but

28   "extremely more complex" to do so for all users.  *Id.*  In exchange for a "senior technical

-3-

executive position," Lamego claimed he could solve the deceptive patient equation for Apple, referencing his "10 years" at Masimo and Cercacor. *Id.* at -520, -521. By 10:30 a.m. that same morning, Apple's Director of Recruiting responded: "I saw your note to Tim Cook" and immediately referred Lamego to Apple's executive recruiting team. *Id.* at -522. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Apple hired Lamego anyway.

**C.** **Lamego** ██████████████████████████████████████████████

Masimo had no knowledge of the Lamego-Cook email until the Court in *Masimo v. True Wearables* ordered it to be filed publicly in 2021.[2] ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

Masimo also sent a standard letter to Apple to try to ensure that Apple was not seeking any trade-secrets from Lamego. Ex. 1. The letter attached a copy of Lamego's employment agreement and asked Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple." *Id.* at 2. Masimo asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers." *Id.* Based on Lamego's assurances and the letter, Masimo hoped Apple would not induce or allow Lamego to use Masimo's trade secrets. *Id.*

Lamego left Apple in 2014 and founded his own company, True Wearables. Ex. E at 2. ██████████████████████████████████████████████████████

---

[2] Apple had moved to quash a subpoena Masimo issued in *True Wearables*. Masimo's brief discussed the Lamego-Cook email, which Lamego designated as "confidential," thereby preventing Masimo from using it here. The Court in *True Wearables* found the email was not confidential and ordered Apple to file it publicly. *See* Dkt. 472 at 3-4.

In a letter that Apple completely ***omits*** from its Motion, █████████████

█████████████ Masimo would only much later learn that Lamego's representation was demonstrably false. █████████████

**D.    O'Reilly Also** █████████████

█████████████ Masimo trusted O'Reilly's representations and remained on good terms with him for years, demonstrating that Masimo had no reason to believe O'Reilly had stolen its trade secrets. █████████████

**E.  Apple Concealed Its Misappropriation Until 2017 And Later**

For years, Apple took steps to prevent Masimo from learning it had misappropriated trade secrets.  While Apple and Lamego included Masimo's trade secrets in patent applications filed in 2014, Apple requested the Patent Office refrain from publishing those applications as would normally occur absent such a request.  Ex. R at 2, 4, 6.  Thus, Masimo could not have learned of the contents of those patent applications until they published or issued in 2017 and later.  *See id.* at 1, 3, 5.  Apple allowed other Lamego patent applications to publish in the ordinary course, which neither Masimo nor Apple has alleged contain Masimo's trade secrets.  Ex. 15.  Apple thus selectively requested non-publication of the applications containing Masimo's trade secrets to prevent Masimo from learning of its misappropriation.  *See* Ex. R; FAC ¶ 231.

Apple also did not publish details on its healthcare initiatives until 2017 and later.  Apple launched its "Healthcare" website in March of 2017.  Ex. N.  Apple published its first "Health" press release in January 2018.  Ex. O at 3.  In December 2018, Apple announced that it received its first FDA clearance for an application on the Apple Watch.

Ex. P at 1-2.  The announcement stated: "the ECG app on Apple Watch Series 4 marks the first direct-to-consumer product that enables customers to take electrocardiogram right from their wrist" to "provide critical data to physicians." *Id.* at 1.  Before 2018, Apple had not received FDA clearance for any aspect of the Apple Watch.  The Apple Watch website also did not focus on healthcare features until later.  *Compare* Ex. Q at 2, 3 (initial 2014 Apple Watch "overview" website focusing on other features like the ability to keep time and measure "the number of steps you take"), *with* Ex. AA at 1-4 (2020 Apple Watch Series 6 website beginning with blood oxygen and the tagline "The future of health is on your wrist").

Apple presumably did not focus on the watch's health features because early versions of the non-invasive physiological measurement features had performance issues.  In 2018, however, Apple released an updated Series 4 watch that solved some of the earlier performance issues.  Apple itself touts these performance improvements by referring to the Series 1-3 watches as having an "[o]ptical heart sensor" (Ex. Z at 3) while the Series 4 and later devices have a "second-generation optical heart sensor" (*id.* at 1-2).  Apple built on those technologies with later versions of the watch, including the Series 6 in 2020 that purports to measure oxygen saturation.  *Id.*

## III.  <u>PROCEDURAL HISTORY</u>

### A.    <u>The Court Rejected Apple's Defense At The Pleading Stage</u>

Masimo filed this lawsuit in January 2020.  Dkt. 1.  Apple moved to dismiss by raising many of the same arguments it raises here.  *See* Dkt. 38-1.  As in this Motion, Apple argued Masimo's 2014 letter showed Masimo was "suspicious" and thought Apple's employment of Lamego "necessarily [would] involve the use or disclosure of [Cercacor's] trade secrets." *Id.* at 3-4.  As in this Motion, Apple argued Masimo "did nothing" even "after it became public that Lamego did work for Apple on the same technology to which Plaintiffs' alleged trade secrets supposedly relate." *Id.* at 4.  As in this Motion, Apple argued U.S. Patent Publication No. 2016/0061726 ("the '726 publication") "relates to the same category of information—physiological

measurement—as Plaintiffs' allege trade secrets." *Id.* at 8.  Apple also cited many of the same cases on which it now relies.  *See id.* at 6-10 (citing *Alamar*, *Cypress*, *Gabriel*, *MGA Entertainment*, *Wang*, and *Wolf*).

The Court denied the statute-of-limitations portion of Apple's motion to dismiss. Dkt. 60.  The Court set out the applicable legal standards, which Apple largely ignored in both its prior motion and this Motion.  *Id.* at 5.  The Court rejected Apple's reliance on Masimo's 2014 letter because "Plaintiffs would not have reason to suspect that a trade secret had ***already been misappropriated, as is required***."  *Id.* at 6.  The Court also rejected Apple's reliance on the '726 publication by crediting Masimo's allegations that the application did ***not*** contain Masimo's trade secrets.  *Id.*  Notably, Apple has never contended the '726 publication discloses Masimo's trade secrets.  Instead, Apple merely argues the publication is in the same field as later publications.

## B.   **Apple Repeatedly Claimed Masimo Had No Basis To Bring Suit**

Throughout this case, Apple has repeatedly argued that—even in 2020 and 2021—Masimo lacked facts sufficient to bring suit.  For example, Apple argued the Second Amended Complaint "confirms that Plaintiffs do not have a valid trade secret claim against Apple."  Dkt. 121 at 1; *see also id.* at 2 ("Plaintiffs cannot plead a valid trade secret claim").  Apple also argued Masimo must be relying on "inevitable disclosure" because it did not have enough facts to bring suit.  *Id.* at 16-17.  Apple argued the complaint should be dismissed with prejudice because Masimo had no factual basis for filing suit.  *Id.* at 18 ("If Plaintiffs have a basis to plead that Apple misappropriated any of their trade secrets, Plaintiffs would have done so by now—allowing further amendment would be futile").

In December 2020, Apple again argued Masimo had insufficient facts to bring suit and must be improperly relying on the doctrine of inevitable disclosure.  *See* Dkt. 241 at 24.  Apple argued that, if Masimo had a "valid" claim, it would have "specified the alleged [trade] secrets long ago and alleged a colorable misappropriation theory— / / /

-8-

they have not." *Id.* at 2; *see also id.* at 25 (arguing Masimo filed "serial baseless complaints").

In March 2021, Apple again argued that Masimo lacked facts sufficient to bring suit. *See* Dkt. 312; Dkt. 329 at 1 ("At this point it is apparent that these amended trade secrets claims are not viable"). Apple once again claimed Masimo must be relying on inevitable disclosure. Dkt. 312 at 17 n.8. The Court largely denied Apple's final motion but granted a portion of the motion. Dkt. 361 at 11 (explaining "[t]he vast majority of Plaintiffs' claims have survived dismissal").

Apple made similar arguments in opposing Masimo's motion for a preliminary injunction. Apple argued that was "the latest in a series of allegations premised on rank speculation that flout California law." Dkt. 150 at 2. Apple asserted Masimo did not even have enough facts to "state a claim" and again argued Masimo must be improperly relying on inevitable disclosure. *Id.* at 14, 16. The Court found Masimo had demonstrated a likelihood of success on the merits, but denied the motion because Masimo had not shown Apple was likely to publish additional Masimo trade secrets in any unpublished patent application. Dkt. 206 at 10-11.

**C.** **Apple Files This Motion When Significant Fact Discovery Remains**

While Apple had produced about 400,000 pages of discovery from June 2020 through October 2021, Apple produced 1.4 million pages of discovery in November 2021 (more than 70% of its production). Powell Decl. ¶ 30. Apple then contacted Masimo about this Motion on November 23—just two business days after Apple's productions. Apple did so while the parties are in the midst of producing additional documents and reviewing each other's productions, and before the parties have taken any substantive depositions. *Id.* For example, Masimo has not had an opportunity to depose Lamego, O'Reilly, Cook, Perica, and others discussed above. *Id.* Apple thus forces Masimo to oppose summary judgment when the parties should be focused on conducting discovery.

/ / /

## IV.  <u>THE COURT SHOULD DENY SUMMARY JUDGMENT</u>

Summary judgment is not appropriate where the record, read in the light most favorable to the non-movant, shows a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); *see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1373 (Fed. Cir. 2005).  The moving party bears the initial burden to demonstrate an absence of a genuine issue of material fact.  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  Only if the moving party meets its burden, then the nonmoving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact.  *MEMC*, 420 F.3d at 1373; *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986).  If the non-moving party meets this burden, then the motion will be denied.  *See generally Bose Corp. v. JBL, Inc.*, 274 F.3d 1358, 1360 (Fed. Cir. 2001).

### A.  <u>Apple Advocates For An Incorrect Legal Standard</u>

Apple suggests the statute of limitations begins to run when the plaintiff is merely "suspicious" of the defendant in general.  Mot. at 8-9.  This Court has explained that is not the law.  This Court previously set forth the correct legal standard: "An action for misappropriation must be brought within three years after the ***misappropriation*** is discovered or by the exercise of reasonable diligence should have been discovered.'"  Dkt. 60 at 5 (quoting Cal. Civ. Code § 3426.6).  "'Under the 'discovery rule,' the statute of limitations begins to run when a plaintiff discovers, or has reason to discover, the ***cause of action***.'"  *Id.* (quoting *Klang v. Pflueger*, 2014 WL 4922401, at *6 (C.D. Cal. July 10, 2014)).

"'[W]hen [1] there is reason to suspect that a trade secret ***has been misappropriated***, and [2] a reasonable investigation would produce facts sufficient to confirm this suspicion (***and justify bringing suit***), the limitations period begins, even though the plaintiff has not conducted such an investigation.'"  *Id.* (quoting *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016)).  "[I]f certain facts necessary to the claim are unavailable even to a reasonably diligent plaintiff, the

-10-

limitations period is tolled until the facts do become available."  *Alamar Biosciences, Inc. v. Difco Labs, Inc.,* 1996 WL 648286, at *3 (E.D. Cal. Feb. 27, 1996).  That inquiry is a "question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008); *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir. 1994).

Apple argues the "standard for accrual" is "*not* the receipt of documentary evidence of misappropriation."  Mot. at 9 (quoting *MGA Entm't, Inc. v. Mattell*, 41 Cal. App. 5th 554, 563 (2019)).  But Apple omits the next sentence of *MGA Entm't*, where the court explained a plaintiff need not have specific facts "necessary to **establish** the claim" because "that is a process contemplated by pretrial discovery."  41 Cal. App. 5th at 563.  Thus, the plaintiff need not have "smoking gun" evidence to prevail at trial before the statute begins to run.  However, the plaintiff must be able to learn facts that would justify bringing suit.  *See Alamar*, 1996 WL 648286 at *3.

Apple cites no case to support its suggestion that the statute begins to run before the plaintiff could discover facts sufficient to have a good faith basis for bringing suit. As the California Court of Appeal explained, "[i]t would be contrary to public policy to require plaintiffs to file a lawsuit at a time when the evidence available to them failed to indicate a cause of action."  *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005).  That would expose plaintiffs to "sanctions for filing a cause of action without any factual support" and subject them to challenges "for failure to specify supporting facts."  *Id*. (rejecting defense where inquiry would not have revealed a basis for suit).

Accordingly, Apple has the burden of proving as a matter of law that (1) Masimo suspected misappropriation had already occurred and (2) "a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit)."  Dkt. 60 at 5.  Apple fails to establish either element.

/ / /

**B.** **Apple Has Not Shown As a Matter of Law That Masimo Had Reason to Suspect Misappropriation Had Actually Occurred**

Apple claims Masimo had a reason to be "suspicious" of Apple. Mot. at 8-14. Apple relies on various events in 2014-2016, but fails to show as a matter of law that Masimo had reason to suspect a trade secret had actually "been misappropriated." *See* Dkt. 60 at 5 (quoting *Hays*, 2016 WL 5660395 at *3). Masimo addresses each event below and then addresses Apple's cited cases.

**1.** **The January 2014 Letter**

Apple begins by arguing Masimo's January 2014 letter demonstrates that Masimo thought Lamego **would** use Masimo's trade secrets at Apple. Mot. at 9. After devoting pages of its Motion to the letter, Apple admits the Court found the statute of limitations was **not** triggered by that letter and Apple "does not seek reconsideration" of that decision. Mot. at 11 (citing Dkt. 60 at 6). Apple argues the Court found Masimo had a suspicion that Lamego "would be in a position to compete with his former employer by drawing upon Plaintiffs' trade secrets." Mot. at 11 (quoting Dkt. 60 at 6). But Apple omits the next sentence of the Court's order: "Thus, Plaintiffs would not have reason to suspect that a trade secret had already been misappropriated, as is required." Dkt. 60 at 6.

The Court's analysis is well supported. Masimo sent the letter on January 24, 2014—just **three days** after Lamego left Cercacor and **before** Lamego began working at Apple. Ex. 1. The letter begins by saying Masimo sent it because Apple "offered employment" to Lamego. *Id.* Because Lamego had not even begun his employment at Apple, Masimo could not have suspected that misappropriation had already occurred.

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

/ / /

1  ███████████████████████████████████████████████████████████

2  █████████████████████████████████████████████████

3       Thus, far from showing Masimo had a basis to suspect actual misappropriation,

4  the 2014 letter shows Masimo was making "reasonable efforts" to maintain the secrecy

5  of its trade secrets and reduce the chance of *future* misappropriation. *See* Cal. Civ. Code

6  § 3426.1(d)(2).   Apple cites no authority holding such letters trigger the statute of

7  limitations or that an employer must investigate every time an employee leaves.  Such

8  "general concerns" do not trigger the statute of limitations. *See Brocade Comms. Sys.,*

9  *Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1217 (N.D. Cal. 2012) (denying

10  summary judgment because departure of employees and "general concern" defendant

11  had "used [plaintiff's] confidential information to develop its product" merely created

12  factual dispute as to whether plaintiff had reason to believe misappropriation occurred).

13       **2.**    **Apple and Third-Party Publications**

14       Apple next states that it "publicly announced ResearchKit" in March 2015 and

15  that third parties discussed ResearchKit.  Mot. at 3 (citing Exs. 3-8).  But Apple makes

16  no attempt to show Masimo even knew about those articles, much less that they would

17  have made Masimo suspicious that Apple had already misappropriated any particular

18  trade secret.  Apple cites nothing tying Lamego or O'Reilly to ResearchKit, and does

19  not attempt to show the publications demonstrated that Apple took any of Masimo's

20  identified trade secrets.  Notably, Masimo's complaint does not mention ResearchKit.

21  ███████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████████████

23  ████████████████████████████████████████

24  / / /

25  ─────────────────────────────

26  [3] ███████████████████████████████████████████████████████

27  ███████████████████████████████████████████ As Apple admits,

28  an "inevitable disclosure" theory is not enough to justify bringing suit in California. *See,*
*e.g.*, Dkt. 121 at 16-17.  Thus, Masimo is not and could not rely on inevitable disclosure.

1   Apple argues it "made no attempt to hide" O'Reilly and Lamego's involvement

2   in Apple's health initiatives.  Mot. at 9.  Not so.  ████████████████████

3   ██████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████

11  ████████████   Apple then selectively requested non-publication of patent applications

12  containing Masimo's trade secrets.  Dkt. 296-1 ¶ 263; Ex. R.

13  Apple also relies on some published stories that O'Reilly met with the FDA on

14  Apple's behalf.  Mot. at 9-10.  Once again, however, Apple does not attempt to argue—

15  much less demonstrate as a matter of law—that such a fact should have made Masimo

16  suspect actual trade secret misappropriation, or provide a sufficient basis to bring suit.

17  Indeed, Apple does not show that meeting demonstrates Apple misappropriated any of

18  Masimo's trade secrets.  To the contrary, Apple previously argued that meeting was *not*

19  enough to state a claim for relief.  *See* Dkt. 312 at 19.  As discussed, a plaintiff's "general

20  concern" about employees leaving to work for the defendant at most creates a factual

21  dispute on summary judgment.  *See Brocade*, 873 F. Supp. 2d at 1217.  Apple has not

22  shown the Apple or third-party publications triggered the statute of limitations.

23  **3.      Apple's '726 Patent Publication**

24  Apple next argues its '726 publication should have made Masimo suspicious.

25  Mot. at 10.  But Masimo does *not* allege that publication discloses its trade secrets.  To

26  the contrary, Masimo alleges Apple did *not* publish Masimo's trade secrets in any patent

27  applications until 2017 and later.  Dkt. 296-1 ¶ 262.

28  / / /

-14-

1   Apple makes no contrary showing, much less one sufficient to prevail on

2   summary judgment.  Apple merely asserts the '726 publication should have made

3   Masimo suspicious because it describes "optical sensing systems" and a "smart watch"

4   that can collect "physiological data about the user such as heart rate, respiration rate,

5   blood oxygenation, blood pressure, and so on." Mot. at 4 (citing Ex. 15).  Apple makes

6   no attempt to show such generic descriptions disclosed Masimo's trade secrets or made

7   Masimo believe misappropriation had occurred.  Indeed, Apple does not allege the '726

8   patent actually discloses any of Masimo's trade secrets.

9   Apple instead asserts the '726 publication should have made Masimo suspicious

10   because it is supposedly similar to later Apple patents that actually contained Masimo's

11   trade secrets.  Mot. at 6-7.  Apple points out that the '726 publication and '095 patent

12   both have the same generic picture of a watch and text describing that picture.  *See id.*

13   at 7.  But Apple makes no attempt to show such overlapping material contained

14   Masimo's trade secrets or made Masimo believe misappropriation had occurred.  At

15   most, Apple showed the two publications contained overlapping material that did ***not***

16   include Masimo's trade secrets.  Such a fact does not evidence—much less establish as

17   a matter of law—that Masimo had reason to suspect misappropriation had occurred.

18   Indeed, Apple has identified no "overlapping" material disclosing the Masimo trade

19   secrets that were included in Apple's publications in 2017 and later.

20   Apple cites *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *4 (N.D.

21   Cal. Apr. 11, 2014), but the patent application at issue there was the ***very patent***

22   ***application*** that contained the plaintiff's trade secrets.  *Id.* at *3.  Apple cites no authority

23   holding that a ***different*** patent application that does ***not*** contain a plaintiff's trade secrets

24   can trigger the statute of limitations.  The '726 publication does not support Apple's

25   Motion.

26   **4.   <u>Masimo's Internal Communications About Apple</u>**

27   Apple next argues a 2014 Chicago Tribune article shows that Kiani was

28   suspicious of Apple recruiting Masimo employees.  Mot. at 4.  But Apple's own citation

1    merely shows Kiani thought Lamego and O'Reilly had "**access** to deep wells of trade

2    secrets" and Kiani "**hope[d]** Apple is **not** doing what [Masimo was] doing." Ex. 10 at 6.

3    ███████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████

5    ████████████████████

6          Neither article shows Masimo thought Apple had already misappropriated trade

7    secrets.  In fact, they demonstrate the opposite: Masimo "hoped" Apple had **not** taken

8    trade secrets and was "watching" to make sure Apple had not done so.  As the Court

9    found with the 2014 letter, these articles at most show Masimo was concerned that

10   former employees may be "in a position" to use trade secrets—not that misappropriation

11   already occurred.  *See* Dkt. 60 at 6.

12         Apple also cites an email exchange between Paul Jansen and Michael O'Reilly.

13   Mot. at 5.  But Apple leaves out critical context: Jansen is a personal friend of O'Reilly's

14   and wrote to O'Reilly's personal **gmail** account—not his Apple email.  *See* Ex. 18.

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████    Regardless, Apple fails to show that the mere

17   development of pulse oximetry would put Masimo on notice that Apple stole Masimo's

18   trade secrets.  To the contrary, Apple argued that commercializing pulse oximetry alone

19   was **not** enough to state a claim for misappropriation.  Dkt. 312 at 11.  Apple has not

20   shown that Masimo's communications about Apple triggered the statute of limitations.

21         **5.     Masimo's Communications** ████████████████████

22   ███████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████

25   ███████████████████████████████████

26   / / /

27

28

-16-

1

2

3

4

5

6

7

8    ████████████████████    Moreover, Apple identifies nothing that it

9    claims Masimo could have discovered that would have showed misappropriation had

10   occurred.  The letter at most raises a factual dispute as to whether Masimo had reason to

11   believe misappropriation actually occurred.  *See Memry Corp. v. Kentucky Oil Techs.*

12   *N.V.*, 2005 WL 8162558, at *6 (N.D. Cal. Apr. 8, 2005) (denying motion to dismiss

13   because plaintiff's "previous relationship" with, and "assurances" from, defendant's

14   employee "could have reasonably precluded [plaintiff] from becoming suspicious").

15          Apple argues that because Masimo thought True Wearables misappropriated trade

16   secrets in 2016, it would be "logical to assume" that Lamego had misappropriated

17   Masimo's trade secrets at Apple.  Mot. at 11, n.1.  But Apple cites nothing to support its

18   assertion that such an assumption would be "logical."  Nor would such a logical leap be

19   sufficient to support summary judgment.  On summary judgment, the Court must draw

20   all reasonable inferences in Masimo's favor.  *See MEMC*, 420 F.3d at 1373.  Indeed, if

21   the complaint alleged it was "logical" to believe Lamego disclosed trade secrets to Apple

22   merely because he used them at True Wearables, Apple would have undoubtedly argued

23   such an allegation was insufficient to state a claim.

24          Apple  also  argues  the  ████████████████

25   ████████████████████████████████

26   ████████████████████████████████

27   ████████████████████████████████

28   ████████████████████████████████



Apple also completely ignores and fails to attach

create a factual dispute that precludes summary judgment.

### 6.   At Most, Factual Disputes Exist As To Whether Masimo Had Reason To Believe Misappropriation Actually Occurred

As shown above, none of Apple's evidence supports—much less proves as a matter of law—that Masimo had reason to believe misappropriation had actually occurred in 2014 or 2016.  To establish summary judgment, Apple would have to show—as a matter of law—that Masimo believed by 2016 that Apple, O'Reilly, and Lamego had (1)                                    , (2) ignored Masimo's warnings, (3)                                    and (4) unlawfully misappropriated specific Masimo trade secrets.  At most, Apple merely points to a "general distrust of [defendant] . . . rather than suspicion of the factual basis of the claims asserted in this case."  *See Highmark Digital, Inc. v Casablanca Design Centers, Inc.*, 2020 WL 2114940, at *13 (C.D. Cal. Mar. 26, 2020).  That is not enough to prevail on summary judgment. *See id.* (denying motion for summary judgment).  Indeed, holding otherwise would be contrary to public policy by "requir[ing] plaintiffs to file a lawsuit 'at a time when the evidence available to them failed to indicate a cause of action.'" *See Fox*, 35 Cal. 4th at 815.

Apple cites no case granting summary judgment in similar circumstances. Instead, Apple relies heavily on cases with undisputed evidence that the plaintiff knew

or should have known misappropriation had actually occurred.  *See MGA*, 41 Cal. App. 5th at 563 (finding plaintiff had reason to believe misappropriation occurred "when it had enough facts" to assert an affirmative defense of "unclean hands" based on the misappropriation); *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1004 (S.D. Cal. 2012) (plaintiff's co-founder emailed employees that the defendant's technology was a "direct rip-off" of plaintiff's trade secret but did nothing because he "didn't think it was important"); *Alamar Biosciences*, 1996 WL 648286 at *4 (plaintiff had examined "two technical posters and three abstracts, which contained specific technical information describing the major aspects of [plaintiff's] technology").

Apple also cites several cases that found factual disputes existed on this issue.  For example, *Fulfillium* denied a motion to dismiss where the plaintiff knew defendant "was developing an important product," but there was a factual dispute as to whether "it was impossible to discern the nature of that product" until the product received pre-market approval.  *Fulfillium v. ReShape Med. LLC*, 2018 WL 11354522, at *6 (C.D. Cal. Nov. 6, 2018).  Similarly, *Cypress* found a factual dispute as to when the plaintiff had reason to know misappropriation actually occurred.  *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 588 (2008).  Apple cites one other case that is also irrelevant.  *See E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007) (reversing demurrer based on statute of limitations of embezzlement claim).  Apple thus fails to show that, before 2017, Masimo knew or had reason to know that misappropriation had actually occurred.

## C.   Apple Again Ignores That It Must Show Masimo Could Have Learned Facts Sufficient To Justify Bringing Suit

Apple's Motion also fails because Apple entirely ignores the second requirement: that "a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit) . . .."  Dkt. 60 at 5 (quoting *Hays*, 2016 WL 5660395 at *3).  Apple similarly overlooked this requirement in its motion to dismiss.  As Masimo explained, Apple had used an ellipsis to omit the words "and justify bringing suit" when

quoting *Hays*. *Id.* (citing Dkt. 38-1 at 6).  The Court's Order quoted the "and justify bringing suit" requirement in its order rejecting Apple's statute-of-limitations defense on the pleadings.  Dkt. 60 at 5 (quoting *Hays*, 2016 WL 5660395 at *3).

Apple ignores this prior case history and controlling law, presumably because Apple cannot satisfy this requirement.  Apple does not attempt to show that public information in 2014-2016 would have showed Apple misappropriated any of Masimo's identified trade secrets.  Apple makes no attempt to show, much less establish as a matter of law, that Masimo in 2014-2016 could have somehow learned (1) what Apple's 2017 publications containing Masimo's trade secrets would say or (2) how Apple's 2018 products practicing Masimo's trade secrets would function.  Indeed, Apple actively took steps to prevent Masimo and others from learning of its publications and unreleased products.  *See* Ex. R. ███████████████████████ ██████████████████████████████████████████ ██████████████████████████████████  Apple's own cited authority also found factual disputes existed where, as here, the plaintiff claimed it was "impossible to discern the nature of [defendant's] product" until it received pre-market approval.  *See Fulfillium*, 2018 WL 11354522 at *6.

Apple has also emphatically argued a party can ***never*** have a Rule 11 basis to assert a claim against an unreleased product.  *See* Dkt. 130-1 at 2 n.1 (arguing Masimo could not accuse unreleased versions of the watch "when they do not know how the product is structured or how it operates" because that "would clearly violate Rule 11"); Dkt. 137-1 at 4 n.3 ("Such a claim would run afoul of Rule 11, since Plaintiffs would have no idea how an unreleased product is structured or how it operates.").  Apple has identified no facts Masimo could have learned prior to 2017 that would "justify bringing suit."  *See Hays*, 2016 WL 5660395 at *3.  Accordingly, Apple has not met its burden on summary judgment.  *See MEMC*, 420 F.3d at 1373 (Fed. Cir. 2005) (moving party bears initial burden to demonstrate absence of genuine issue of material fact).

## V.  THE COURT SHOULD DENY BIFURCATION

### A.    Bifurcation Will Not Promote Judicial Economy and Convenience

In seeking bifurcation, Apple argues that judicial economy will be served when "'resolution of a single claim or issue could be dispositive of the entire case.'"  Mot. at 15 (quoting *Mullally v. Jones*, 2007 WL 1213704, at *3 (D. Nev. Apr. 24, 2007).  But bifurcating Apple's statute of limitations defense will not be dispositive of the "entire case."  At most, Apple's defense might resolve ***one*** of Masimo's twenty-six claims. Dkt. 233 at 95-122.  Masimo asserts twenty-five other claims, including thirteen claims seeking correction of ownership and inventorship of Apple patents.  *Id.* at 95-122. Masimo also asserts twelve claims for patent infringement that, while presently stayed, have not been bifurcated.[4]  *Id.*  A favorable decision for Apple on its statute-of-limitations defense would resolve ***none*** of these claims.

Apple also incorrectly argues the evidence presented in Apple's proposed phases will be different.  Mot. at 15.  As discussed, Apple's statute-of-limitations defense turns on a complex factual history between the parties that will entail numerous documents and witness testimony.  Indeed, Apple acknowledges its "statute of limitation case turns" on at least "███████████████████████████████████ █████████████ media reports, and Apple's '726 publication."  Mot. at 15. Much of that same evidence will be presented in connection with a trial on the merits of Masimo's trade secret misappropriation claim.  For example, the parties' history will be relevant to at least (1) Apple's knowledge that it was using Masimo's trade secrets, (2) Masimo's allegations of willful misappropriation, and (3) Apple's sixth defense asserting it did not willfully misappropriate Masimo's trade secrets.  Dkt. 296-1 ¶ 267; Dkt. 370 ¶ 384.

Much of the same evidence will also be presented in connection with Masimo patent ownership claims, which will need to be resolved regardless of Apple's statute-

---

[4] Masimo expects the first *inter partes* review decision by March 2, 2022.

of-limitations defense.  Masimo's patent ownership claims are based on Apple's filing of patent applications naming Lamego as an inventor.  Much of the same evidence will also need to be presented in connection with Apple's other defenses, such as laches, failure to mitigate damages, and unclean hands.  Dkt. 370 ¶¶ 379-383 (laches), ¶ 420 (failure to mitigate), ¶¶ 421-27 (unclean hands).  Indeed, Apple's laches defenses includes a near word-for-word recitation of the *entirety* of Apple's statute-of-limitations defense, including heavy reliance on Masimo's purported knowledge of Apple's '726 publication and other facts outlined above.  *Compare id.* ¶¶ 379-383 (laches), *with id.* ¶¶ 385-388 (statute of limitations).  Apple's failure to mitigate and unclean hands defenses likewise rely on the facts and evidence outlined above, including Masimo's alleged failure to take action in view of Apple's '726 publication.  *Id.* ¶ 420 (failure to mitigate), ¶¶ 421-27 (unclean hands).  Given such extensive overlap, bifurcation into separate trials would lead to "unnecessary *repetition* rather than expedition and economy." *Paris v. Union Pac. R.R., Co.*, 2006 WL 5186517, at *5 (E.D. Ark. Aug. 11, 2006).

Moreover, Apple's argument "assumes Defendant[] *prevails* on the statute of limitations issue.  If Plaintiff prevails, a separate trial will not save time.  Just the opposite." *See Mason v. Ethicon, Inc.*, 2021 WL 2580113 (M.D. Fla. May, 10 2021).  Apple further argues bifurcation is appropriate where bifurcation would "permit deferral of costly and possibly unnecessary discovery proceedings . . . ."  Mot. at 15.  But discovery is proceeding and Apple is not seeking bifurcation of such discovery.  Thus, avoidance of discovery proceedings does *not* support Apple's bifurcation request.

Apple cites several cases, but none support its request.  Three cases bifurcated statute of limitations defenses that, if successful, would have resolved the *entire* case. *See Grisham v. Philip Morris, Inc.*, 2009 WL 9102320, at *4 (C.D. Cal. Dec. 3, 2009); *Heinrich v. Ethicon, Inc.*, 2021 WL 2801961, at *1 (D. Nev. Apr. 15, 2012); *Kleinhammer v. City of Paso Robles*, 2008 WL 11411408, at *5 (C.D. Cal. Oct. 10, 2008).  Similarly, the Ninth Circuit in one case held the district court did not abuse its

/ / /

-22-

discretion in bifurcating a statute of limitations defense that, if successful, would have been *dispositive*.  *See Gomez v. City of Torrance*, 438 F. App'x 626, 628 (9th Cir. 2011).

Apple also cites a case where the Ninth Circuit affirmed the district court's **denial** of a motion to bifurcate where, as here, there was overlapping evidence.  *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).  Apple also quotes 9A Wright & Miller, *Federal Practice & Procedure* § 2388 (3d ed.), as supporting bifurcation "[i]f a single issue could be dispositive of the case … and resolution of it might make it unnecessary to try the other issues in the litigation."  That again supports *Masimo*'s position because Apple's defense will **not** be dispositive of this case.[5]

## B.   Apple's Concerns About Presenting "Conflicting Cases" Do Not Justify Bifurcating Trial

Apple argues it will be prejudiced in having to "present two, somewhat conflicting cases to the jury…."  Mot. at 16.  But "statute of limitations are frequently tried together with the other claims and defenses."  *Heatherman v. Ethicon, Inc.*, 2021 WL 2138543, *4 (D. Colo. Jan. 22, 2021).  "Indeed, the concept of any affirmative defense is that the defendant is telling the jury that the plaintiffs' claims are not true, but if they were true, then the case nevertheless fails for a separate reason, such as untimeliness."  *Id*.  Apple fails to explain why such routine tension justifies bifurcation here.  "The verdict form can be structured" to avoid confusion and Apple's "legal team, aided by explanatory instructions, can determine an effective way to present the 'inconsistent' defenses."  *Id*.  Moreover, any such potential prejudice is outweighed by the "potential prejudice faced by the plaintiffs of having to present their merits evidence twice in separate trials."  *Id*. / / /

---

[5]  Apple's other cases are entirely inapposite.  *See Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, 2021 WL 706646, at *3 (S.D.N.Y. Feb. 22, 2021) (court did not address a motion for bifurcation); *Mullally v. Jones*, 2007 WL 1213704, at *4 (D. Nev. Apr. 24, 2007) (granting "unopposed motion to bifurcate" ownership issue from liability and damages); *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) (limiting discovery to segregated issues).

Apple cites several cases, but none bifurcated a statute of limitations defense in similar circumstances. *See Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (dispute was "not primarily with the court's bifurcation order; it is with the court's evidentiary ruling barring testimony"); *Foltz v. City of Largo*, 2011 WL 1690010, at *2 (M.D. Fla. May 3, 2011) (bifurcating claim against police officer from claim against city to avoid introducing evidence of officer's "prior wrongful acts"); *Heinrich*, 2021 WL 2801961 at *1 (bifurcating statute-of-limitations in product liability case); *McBroom v. Ethicon, Inc.*, 2021 WL 2661463, at *2 n.1 (D. Ariz. June 29, 2021) (same).[6]

## VI.  CONCLUSION

For the reasons above, the Court should deny Apple's motion for summary judgment and bifurcation.


Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: January 4, 2022          By: */s/ Adam B. Powell*
                                      Joseph R. Re
                                      Stephen C. Jensen
                                      Benjamin A. Katzenellenbogen
                                      Perry D. Oldham
                                      Stephen W. Larson
                                      Mark D. Kachner
                                      Adam B. Powell
                                      Daniel P. Hughes

                                      Attorneys for Plaintiffs
                                      MASIMO CORPORATION and
                                      CERCACOR LABORATORIES, INC.

34965764

---

[6] Because Apple does not seek to bifurcate discovery, the Court could address any bifurcation requests at the pretrial conference. *See Zahedi v. Miramax, LLC*, 2021 WL 3260603, at *2 (C.D. Cal. Mar. 24, 2021) (denying motion to bifurcate without prejudice to renew at pretrial conference).

-24-