Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO APPLE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:       February 7, 2022<br>Time:       1:30 p.m.<br>Location:   Courtroom 10C |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively "Masimo") submit this Statement of Genuine Disputes of Material Fact pursuant to Local Rule 56-2, in opposition to Apple's Motion for Partial Summary Judgment and its Statement of Uncontroverted Facts and Conclusions of Law.

## I. MASIMO'S RESPONSE TO APPLE'S STATEMENT OF UNDISPUTED FACTS

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| 1 | Dr. Michael O'Reilly is Plaintiff Masimo Corporation's ("Masimo") former employee and Dr. Marcelo Lamego is Plaintiff Cercacor Laboratories, Inc.'s ("Cercacor") former employee. | Undisputed that O'Reilly was previously an employee of Masimo, and Lamego was previously an employee of Cercacor. |
| 2 | O'Reilly began working at Apple in July 2013. | Undisputed that Apple provided discovery purportedly showing that Apple officially employed O'Reilly beginning in July 2013. |
| 3 | Lamego began working at Apple in January 2014. | Undisputed that Apple provided discovery purportedly showing that Apple officially employed Lamego beginning in January 2014. |
| 4 | Plaintiff Cercacor sent Apple a letter on January 24, 2014 stating that "Apple had been targeting Masimo and Cercacor" employees for hiring, including after "Cercacor's owners" | Disputed. Apple misquotes the letter. Cercacor sent Apple a letter dated January 24, 2014. Among other things, that letter stated: "Apple has been targeting Masimo and Cercacor |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | indicated "they had no current desire to sell." | personnel for some time."  Ex. 1 at 1. The letter also included the words "The CEO responded that Cercacor's owners had no current desire to sell the company."  *Id.*  The letter also stated: "In view of Mr. Lamego's obligations arising from the Agreement, we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information."  *Id.* at 2.  The letter also stated: "We also ask that Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple and that Apple will direct Mr. Lamego to honor his obligations to all of his prior employers."  *Id.* |
| 5 | The January 24, 2014 letter stated that Apple hired Lamego "to design and develop products that are likely the same as the products that he was responsible for developing for | Disputed.  Cercacor sent Apple a letter dated January 24, 2014.  Among other things, that letter stated: "We believe that Apple has hired Mr. Lamego to design and develop products that are |

-2-

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | [Plaintiff] Cercacor." | likely the same as the products that he was responsible for developing for Cercacor."  Ex. 1 at 1.  See also response to Fact No. 4 above for additional context. |
| 6 | The January 24, 2014 letter stated "Lamego learned, and personally conceived, a large number of very valuable trade secrets while he was at [Plaintiff] Masimo, and he continued touse and improve those trade secrets under license from Masimo when Cercacor was spunoff from Masimo." | Undisputed that Cercacor sent Apple a letter dated January 24, 2014.  Among other things, that letter stated: "Mr. Lamego learned, and personally conceived, a large number of very valuable trade secrets while he was at Masimo, and he continued touse and improve those trade secrets under license from Masimo when Cercacor was spunoff from Masimo."  Ex. 1 at 1.  See also response to Fact No. 4 above for additional context. |
| 7 | The January 24, 2014 letter stated Apple should refrain from assigning Lamego to work on "healthcare technology, including mobile health applications and the measurement of physiological information." | Disputed.  Cercacor sent Apple a letter dated January 24, 2014.  Among other things, that letter stated: "In view of Mr. Lamego's obligations arising from the Agreement, we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | applications and the measurement of physiological information." Ex. 1 at 2. The letter also stated: "We also ask that Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple and that Apple will direct Mr. Lamego to honor his obligations to all of his prior employers." *Id*. See also response to Fact No. 4 above for additional context. |
| 8 | The January 24, 2014 letter stated that employing either O'Reilly or Lamego to work on "mobile health device[] projects" would betaken as a sign that "Apple is attempting to gain access to, or at least the benefit of, [Plaintiffs'] trade secrets." | Disputed. Apple misquotes the letter. Cercacor sent Apple a letter dated January 24, 2014. Among other things, that letter stated: "In his capacity as Cercacor's CTO, Mr. Lamego was responsible for *all* of Cercacor's research and development and *all* projects that are underway, or even contemplated, at Cercacor. These projects include mobile health devices and applications and physiological measurements." Ex. 1 at 1 (emphasis in original). The letter also stated: |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | "We note that Apple expressed great interest in the Masimo technology on which Mr. Lamego was trained—the same technology that Mr. Lamego applied at Cercacor. Apple has been targeting Masimo and Cercacor personnel for some time. Apple hired Masimo's Chief Medical Officer, Michael O'Reilly. Thereafter, Apple expressed to Masimo and Cercacor's CEO that Apple had even greater interest in Cercacor. The CEO responded that Cercacor's owners had no current desire to sell the company. Shortly thereafter, we understand that Apple increased its efforts to recruit Mr. Lamego. It is difficult to imagine any reason for this sequence of events other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets. Ex. 1 at 1. See also response to Fact No. 4 above for additional context. |
| 9 | The January 24, 2014 letter attached a confidentiality agreement that Lamego | Undisputed that Cercacor sent Apple a letter dated January 24, 2014. Among |

| No. | Apple's<br>Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
|  | had signed when he was an employee of Plaintiff Cercacor. | other things, that letter enclosed a copy of a "Masimo Labs Employee Confidentiality Agreement" that Lamego executed.  Ex. 1 at 1. |
| 10 | The confidentiality agreement attached to the January 24, 2014 letter stated: "I agree that [working for a competitor of Plaintiff Cercacor] would necessarily involve the use ordisclosure of Masimo['s] … trade secrets and proprietary … information." | Disputed.  Cercacor sent Apple a letter dated January 24, 2014.  Among other things, that letter enclosed a copy of a "Masimo Labs Employee Confidentiality Agreement" that Lamego executed.  Ex. 1 at 1.  Paragraph 15 of the Agreement states: "I agree that the activities forbidden in paragraphs 13 and 14 above would necessarily involve the use or disclosure of Masimo Labs' trade secrets and proprietary and confidential information and are necessary to protection of Masimo Labs' trade secrets and proprietary and confidential information.  I understand that none of my activities will be prohibited under paragraphs 13 and 14 to the extent that I can prove that the action was taken without the use or disclosure of Masimo Labs' trade |

-6-

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|-----|-------------------------------------|----------------------|
|     |                                     | secrets or proprietary or confidential information." Ex. 1 at 4. |
| 11  | ███████████████ ████████████ ████████████████ ████ | Disputed. It is unclear what Apple means by "substantially similar." ████████████ ██████████████████ ██████ |
| 12  | ███████████████ ████████████████ ██████████████████ ████████████ ██████████ ██████ | Disputed. ██████████ ████████████ ████████████████ ████████████ ████████████ ████████████ ██████████ ████████████████ ████████████ ████████████ ██████████ ████████████ ██████████ ████████████ ████████████ ██████████ ██████████████ |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
|  |  | ████████████████████ ████████████████ |
| 13 | Apple continued to develop and improve its healthcare technologies after receiving the January 24, 2014 letter. | Disputed.  The evidence Apple cites does not support this alleged fact. Apple cites to the Fourth Amended Complaint, which states that Apple announced the first version of the Apple Watch in September 2014. FAC ¶ 25.  Apple also cites its own March 9, 2015 press release entitled "Apple Introduces ResearchKit, Giving Medical Researchers the Tools to Revolutionize Medical Studies." Ex. 3.  Neither citation supports Apple's broad statement regarding developing and improving healthcare technologies. |
| 14 | On March 9, 2015, Apple publicly announced ResearchKit. | Undisputed that Apple issued a press release on March 9, 2015 entitled "Apple Introduces ResearchKit, Giving Medical Researchers the Tools to Revolutionize Medical Studies." Ex. 3. |
| 15 | Apple's announcement of ResearchKit described it as "an open source | Undisputed that Apple's March 9, 2015 press release included the words |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | software framework designed for medical and health research, helping doctors and scientists gather data more frequently and more accurately from participants using iPhone® apps." | "Apple today announced ResearchKit, an open source software framework designed for medical and health research, helping doctors and scientists gather data more frequently and more accurately from participants using iPhone apps."  Ex. 3. |
| 16 | Numerous media outlets covered Apple's ResearchKit announcement. | Disputed.  Apple cites articles purportedly from "The Health Care Blog," "The Verge," "Vox," "fortune.com," and "techcrunch.com" that reference ResearchKit.  Exs. 4–8.  Apple's citations do not support Apple's broad assertion that "numerous media outlets covered Apple's ResearchKit announcement." |
| 17 | Numerous media outlets, including *USA Today*, the *Chicago Tribune*, *The New York Times*, and *The Wall Street Journal*, reported that O'Reilly had attended a December 2013 meeting with the FDA on Apple's behalf regarding "mobile medical applications." | Disputed.  Apple cited articles purportedly from the online pages of USA Today, Chicago Tribune, New York Times, and Wall Street Journal referencing a meeting with the FDA.  Exs. 9–12.  Apple's citations do not support Apple's broad assertion that "numerous media outlets . . . reported that O'Reilly had attended a December |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | 2013 meeting with the FDA on Apple's behalf regarding 'mobile medical applications.'" |
| 18 | ███████████████████ ████████████ ████████████ ████████████████ ██████████████ | Disputed. ████████ ██████████████████ ████████████████ ██████████████████ █████████████ ███████████████████ ████████████████ ██████████ |
| 19 | On March 3, 2016, the U.S. Patent Office published a patent application ████████████████ that listed an August 28, 2014 priority date. | Disputed.  Apple cites U.S. Patent Application Publication No. 2016/0061726, which is entitled "Reflective Surface Treatments for Optical Sensors."  Ex. 15.  Apple's citation does not support its assertion that the patent application is ████ ████████████████ |
| 20 | The March 3, 2016 Patent Application's identifier is Pub. No. 2016/0061726. | Undisputed. |
| 21 | The '726 publication names Apple as the applicant and Lamego as a co-inventor. | Undisputed.  The '726 publication also names Trevor J. Ness, Chin San Han, David I. Nazzaro, Naoto Matsuyuki, |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|-----|-------------------------------------|----------------------|
|     |                                     | and Wolf Oetting as co-inventors. Ex. 15. |
| 22  | The '726 publication describes "optical sensing systems configured to provide functionality such as fitness or health tracking or physiological date collection." | Disputed. Apple appears to have misquoted words from the middle of a sentence in a lengthy paragraph in the middle of the '726 publication. Paragraph 29 of the '726 publication states in part: "Moreover, although many embodiments described herein reference optical sensing systems configured to provide functionality such as fitness or health tracking or physiological data collection to a wearable electronic device, one may appreciate that the various systems and methods described herein are not limited to use of optical sensing systems in this manner." Ex. 15 ¶ 29. |
| 23  | The '726 publication also explains how the disclosed system could be used as a "medical diagnostic tool … that can be placed against a patient's skin in order to obtain physiological characteristics of said patient." | Disputed. Apple appears to have quoted words from the middle of a sentence in a lengthy paragraph in the middle of the '726 publication. Paragraph 29 of the '726 publication states in part: "For example, an optical sensing system can be used to detect |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | subsurface characteristics of a material during a manufacturing process to determine whether the material should be rejected or accepted.  In another example, an optical sensing system can be disposed onto or into a veterinary or medical diagnostic tool (e.g., wand, pen, etc.) that can be placed against a patient's skin in order to obtain physiological characteristics of said patient."  Ex. 15 ¶ 29. |
| 24 | The '726 publication includes a "smart watch" embodiment, which can obtain "certain physiological data about the user such as heartrate, respiration rate, blood oxygenation, blood pressure, and so on." | Disputed.  Apple appears to have quoted words from two different paragraphs in the middle of the '726 publication as though they form one sentence.  Paragraph 5 of the '726 publication states in part: "For example, an electronic device such as a wearable fitness device can be positioned against the skin of a user's wrist (hereinafter the 'measurement site') and can obtain therefrom certain physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | on." Ex. 15 ¶ 5.  Paragraph 6 of the '726 publication states in part: "In many embodiments, an electronic device (such as a smart watch, fitness device, cellular phone, tablet computer, other computing device, exercise equipment, exercise monitor, physiology monitor, and so on) can include an optical sensing system positioned behind or within one or more apertures defined within a bottom surface of the electronic device."  *Id.* ¶ 6. |
| 25 | On May 6, 2014, the *Chicago Tribune* published an article entitled "Apple on medical tech hiring spree, a possible hint of iWatch plans." | Undisputed. |
| 26 | The *Chicago Tribune* article quoted Plaintiffs' CEO Joseph Kiani as stating that Apple had "recruited" his former employees "with access to deep wells of [Plaintiffs'] trade secrets and information" and that Apple was "just buying people." | Disputed.  The Chicago Tribune article quotes Mr. Kiani as saying "Some of the talent (Apple recruited) has access to deep wells of trade secrets and information."  Ex. 10 at 6.  The article also quotes Mr. Kiani as saying "They are just buying people," and "I just hope Apple is not doing what we're |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | doing." *Id.* The article does not support the alleged fact. |
| 27 | The *Chicago Tribune* article specifically named O'Reilly and Lamego as employees who had been "poached" from Plaintiffs. | Disputed. The Chicago Tribune article states: "Apple has poached biomedical engineers from companies including Vital Connect, Masimo Corp, Sano Intelligence and O2 MedTech." Ex. 10 at 5. The article also states: "A LinkedIn search shows Masimo chief medical officer Michael O'Reilly; Cercacor chief technology officer Marcelo Lamego; and Vital Connect's Ravi Narasimhan, vice president of biosensor technology, and Nima Ferdosi, an embedded sensors expert, are among those who have moved over to the Cupertino company." *Id.* |
| 28 | ████████████████████████ ██████████████ ██████████████ ████████████████████ ████████████████████ ████████████████ ████████████████████ ████████████████ | Disputed. ███████████████ ██████████████████████ ██████████████████████ █████████████████ The documents Apple cites do not support the alleged fact. |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | ███████████████████ ██████ | |
| 29 | In April 2015, Paul Jansen—a Masimo executive—sent O'Reilly an email highlighting a recent news article about the Apple Watch. | Disputed.  Apple cites an email from Paul Jansen to Michael O'Reilly's personal gmail account with a website link.  Ex. 18.  Apple's citation to this document does not support its alleged fact. |
| 30 | Jansen's April 2015 email stated that the article's reference to potential "pulse oximetry functionality" in the Apple Watch has "caught [his] eye" and that "I'm sure these reports are always 100% accurate :)" | Undisputed that the email from Paul Jansen to Dr. O'Reilly's personal gmail account contains the words "I'm sure these reports are always 100% accurate…" and "This caught my eye."  Ex. 18.  Disputed as to any suggestion that Mr. Jansen was confirming or endorsing the accuracy of the information on the website link. |
| 31 | Lamego ultimately left Apple to form his own company, named True Wearables. | Disputed.  Lamego's employment at Apple was terminated.  Apple cites a court order from the *Masimo v. True Wearables* case that does not support its alleged fact. |
| 32 | ███████████████████ ███████████████████ ██████████████ | Disputed.  ███████████ ███████████████████ ███████████████████ |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|-----|-------------------------------------|----------------------|
|     | ██████████████ | ███████████████ |
|     | ████████████████ | ███████████████ |
|     | ███████████████ | ████████████████ |
|     |     | ███████████████ |
|     |     | █████████████ |
|     |     | ██████████████ |
|     |     | ██████████████ |
|     |     | ███████████████ |
|     |     | ███████████████ |
|     |     | █████████████ |
|     |     | ██████████████ |
| 33  | █████████████████ | Undisputed ██████████ |
|     | ████████████████ | ██████████████ |
|     | ████████████████ | ██████████████ |
|     | █████████████████ | █████████████ |
|     | ██████████████ | ███████████████ |
|     | ███████████ | ███████████████ |
|     |     | █████████████ |
|     |     | ██████████████ |
|     |     | ███████████████ |
|     |     | █████████████ |
|     |     | █████████████ |
|     |     | ██████████████ |
|     |     | ██████████████ |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|-----|-------------------------------------|----------------------|
| | | ███████████████████████ |
| | | ███████████████████████ |
| 34 | ██████████████████ | Disputed.  Apple misquotes the letter |
| | ███████████████████████ | and omits key context. ██████████ |
| | ████████████████ | ████████████████████ |
| | █████████████████ | █████████████████████████ |
| | ██████████████████████ | ████████████████████ |
| | █████████████████████ | █████████████████████ |
| | ██████████████ | █████████████████████████ |
| | ███████████████ | █████████████████████████ |
| | ████ | ███████████████████ |
| | | █████████████████████ |
| | | ██████████████████████ |
| | | ██████████████████████ |
| | | █████████████████████████ |
| | | █████████████████████████ |
| | | ████████████████████ |
| | | ████████████████ |
| | | ████████████████ |
| | | ████████████████████████ |
| | | ███████████████████████ |
| | | ██████████████████ |
| | | ████████████████████ |
| | | ████████████████████ |
| | | ████████████████████ |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|-----|-------------------------------------|----------------------|
|     |                                     | ███████████████████ |
|     |                                     | ████████████████████ |
|     |                                     | ██████████████████ |
|     |                                     | ███████████████ |
|     |                                     | ██████████████████ |
|     |                                     | ██████████████ |
|     |                                     | ███████████████████ |
|     |                                     | ████████████████ |
|     |                                     | ████████████████ |
|     |                                     | ███████████████ |
|     |                                     | ████████████████████ |
|     |                                     | ████████████████████ |
|     |                                     | █████████████████████ |
|     |                                     | ████████████████████ |
|     |                                     | ██████████████████ |
|     |                                     | ████████████████ |
|     |                                     | ███████████████████ |
|     |                                     | █████████████████ |
|     |                                     | █████████████████ |
|     |                                     | ██████████████████ |
|     |                                     | ██████████████████ |
|     |                                     | ████████████████ |
|     |                                     | ████████████████████ |
|     |                                     | █████████████████████ |
|     |                                     | █████████████████ |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | ██████████████ ██ |
| 35 | ████████████ ████████ | Undisputed. ████████ ████████ ████████████ |
| 36 | ████████████ ████████████ ███████ ████████ ██████████████ ██████████ ██ | Disputed. ████████ ████████████ ██████████ ████████████ ██████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ██████████ ████████████ ████████████ ████████████ ██████████ ████████████ ████████████ |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|-----|--------------------------------------|----------------------|
|     |                                      | ████████████████████████████ ██████ |
| 37  | ████████████████████ ███████████████ ███████████ ███████████ ██████████████ ████████ | Disputed. ████████████ ██████████████ ███████████████ ███████████████ ████████████████ ██████████ ██████████ ████████ ███████████████ ███████████ ██████████████ ██████████████ ██████████ ███████████ ███████ |
| 38  | Plaintiffs filed suit against Apple for trade secret misappropriation on January 9, 2020. | Undisputed that Plaintiffs filed suit that included a claim for trade secret misappropriation.  The complaint also included claims for patent infringement, patent ownership, and correction of inventorship. |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| 39 | Plaintiffs did not take any legal action against Apple prior to January 9, 2020. | Undisputed that Masimo first sued Apple for trade secret misappropriation on January 9, 2020. |
| 40 | Plaintiffs allege that O'Reilly and Lamego breached their confidentiality agreements by disclosing Plaintiffs' alleged trade secrets to Apple. | Undisputed. |
| 41 | ██████████████████████ ████████████████ █████████████████████ ██████████████████ ████████████████████████ ████████████████ ██████████ | Disputed.  Apple's citations do not support its alleged fact.  The Fourth Amended Complaint does not mention ████████  *See* FAC.  The complaint as a whole alleges facts sufficient to state a claim for misappropriation of trade secrets.  *Id.* |
| 42 | Plaintiffs' complaint relies in part on Apple patent filings, including U.S. Patent No. 9,952,095 ('095 patent). | Undisputed that Masimo seeks correction of inventorship and declaratory judgment of ownership of the '095 patent.  Masimo alleges that Apple requested non-publication of the application that led to the '095 patent.  FAC ¶ 263. |
| 43 | The '095 patent and the '726 publication both relate to light emitter technology used for health monitoring to increase reliability of biological | Disputed.  The '726 publication is entitled "Reflective Surface Treatments for Optical Sensors." Ex. 15 at 1.  The '095 patent is entitled |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | readings. | "Methods and Systems for Modulation and Demodulation of Optical Signals." Ex. 22 at 1. Among other things, the '726 publication states: "This disclosure relates generally to sensor devices, and more particularly to electronic devices incorporating one or more optical sensing systems." Ex. 15 ¶ 2. Among other things, the '095 patent states: "The present invention relates generally to health monitoring systems, and more particularly to health monitoring devices that include one or more optical sensors." Ex. 22 at 1:17–19. Apple has identified no "overlapping" material disclosing the Masimo trade secrets that were included in Apple's publications in 2017 and later. |
| 44 | Several figures in the '726 publication are identical or nearly identical to the figures in the '095 patent. | Undisputed that Fig. 1a of the '726 publication is similar to Fig. 1a of '095 patent. Undisputed that Fig. 1b of the '726 publication is similar to Fig. 1b of '095 patent. Undisputed that Fig. 2b of the '726 publication is similar to |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
| | | Fig. 2b of '095 patent. Apple has identified no "overlapping" material disclosing the Masimo trade secrets that were included in Apple's publications in 2017 and later. |
| 45 | The '726 publication and '095 share identical or nearly identical written description text. | Disputed. Substantial differences exist between the '726 publication and the '095 patent. Apple highlighted purportedly similar passages in the exhibit copies, leaving large swaths of text that is not highlighted. *Compare, e.g.*, Ex. 15 ¶¶ 29–50 to Ex. 22 at 4:16–5:46. The passages Apple cites do not support its alleged fact. Apple has identified no "overlapping" material disclosing the Masimo trade secrets that were include in Apple's publications in 2017 and later. |
| 46 | Plaintiffs were aware of Lamego's purported misappropriation by January 4, 2016. | Disputed. Masimo's was not aware of Lamego's misappropriation by January 2016. Apple's citations do not support its alleged fact. Apple fails to show that Masimo had reason to believe Apple had actually misappropriated a trade secret prior to 2017. Apple |

| No. | Apple's Alleged Uncontroverted Fact | Plaintiffs' Response |
|---|---|---|
|  |  | likewise fails to show that a reasonable investigation in 2014-2016 would have produced facts sufficient to justify bringing suit for misappropriation of trade secrets. Masimo could not have learned of Apple's misappropriation prior to 2017. *See* Exs. F, H, N, O, P, Q, R, S, T, AA, BB; Exs. 1, 15, 20; FAC ¶ 231. |

## II. ADDITIONAL MATERIAL FACTS WHICH MAY BE DISPUTED

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 1 | ███████████████████████ ████████████████████ ██████ | Kiani Decl. ¶ 3. |
| 2 | ████████████████████ █████████████████████ █████████████████████ ███████████████ | Kiani Decl. ¶ 3. |
| 3 | █████████████████████ ████████████████████ ██████████████████████ ████████████████ ████████████████████ ████████████████ | Ex. A |

| No. | Additional Material Facts | Supporting Evidence |
|-----|---------------------------|---------------------|
|     | ███████████████ | |
| 4 | █████████████████████ | Ex. B. at -107. |
|   | ████████████████ | |
|   | ██████████████████████ | |
|   | █████████████████████ | |
|   | ███████████████████ | |
|   | ████████████████████ | |
|   | █████████████████ | |
|   | ████████████████ | |
| 5 | ████████████████████ | Exs. U, V, W |
|   | ████████████ | |
| 6 | █████████████████████ | Ex. U. |
|   | ██████████████████████ | |
|   | ██████████████████████ | |
|   | ████ | |
| 7 | █████████████████████ | Ex. V at -707. |
|   | ██████████████████ | |
|   | ███████████████████ | |
|   | ███████████████████ | |
|   | ████████████████████ | |
|   | ███████████████████ | |
|   | ████████████████ | |
|   | █████ | |
| 8 | ██████████████████ | Ex. W. |
|   | ████████████████████ | |
|   | █████ | |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 9 | Apple designated the documents in Exhibits U, V, and W "Attorneys Eyes Only," thereby preventing Masimo from knowing the facts therein. | Exs. U, V, W |
| 10 | ██████████████ ████████████████ ████████████ | Ex. Y. |
| 11 | ████████████████ ██████████████ ██████████████ ██████████████ ██████████████ █████████████ █████████████ ████████████ ██████████ ████ | Ex. Y; Kiani Decl. ¶ 4. |
| 12 | ██████████ ████████████ ██████████████ ██████████████ █████████ | Ex. Y; Kiani Decl. ¶ 4. |
| 13 | Apple first reached out to Lamego in early 2013. | Ex. C at -520. |
| 14 | In October 2013, Lamego wrote an email to Cook at 1:00 am. | Ex. C at -520. |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 15 | Lamego told Cook he believed Apple could solve two aspects of patient monitoring on its own, but needed him to solve the "patient equation." Lamego explained that was the "deceptive part" because it is "easy to develop" medical products for most users, but "extremely more complex" to do so for all users.  In exchange for a "senior technical executive position," Lamego claimed he could solve the deceptive patient equation for Apple, referencing his "10 years" at Masimo and Cercacor. | Ex. C at -520. |
| 16 | By 10:30 a.m. the same morning that Lamego wrote to Cook, Apple's Director of Recruiting responded: "I saw your note to Tim Cook" and referred Lamego to Apple's executive recruiting team. | Ex. C at -520. |
| 17 | ███████████████████████ ████████████████ ███████████████ ███████████████████████ ██████████████████ █████ | Ex. D at -235. |

-27-

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 18 | ██████████████ ██████████ ██████████ ██████████ ██████ | Ex. T. |
| 19 | Masimo had no knowledge that Lamego wrote to Cook in October 2013 until the Court in *Masimo v. True Wearables* ordered it to be filed publicly in 2021. | Ex. C. |
| 20 | ██████████████ ██████████ ██████████ ████████ ██████ | Kiani Decl. ¶ 9; Ex. 20 at -209. |
| 21 | █████████████ █████████████ ████████ █████████ █████████ ███████ | Kiani Decl. ¶ 9; *see also* Ex. 20 at -209. |
| 22 | Based on Lamego's assurances and Masimo's letter to Apple, Masimo hoped Apple would not induce or allow Lamego to use Masimo's trade secrets. | Ex. 1. |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 23 | Masimo also sent a standard letter to Apple to try to ensure that Apple was not seeking any trade secrets from Lamego.  The letter attached a copy of Lamego's employment agreement and asked Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple."  Masimo asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers." | Ex. 1. |
| 24 | ███████████████ | Ex. F. |
| 25 | ███████████████ | Ex. F. |
| 26 | ███████████████ | Ex. F. |

-29-

| No. | Additional Material Facts | Supporting Evidence |
|-----|---------------------------|---------------------|
|     | ████████████████ ██████ | |
| 27  | █████████████ | Ex. F. |
|     | ████████████████ | |
|     | ████████████ | |
|     | ███████████████ | |
|     | ██████████████ | |
|     | ███████████████ | |
|     | ███████ | |
| 28  | ███████████████ | Ex. F. |
|     | ████████████████ | |
|     | ████████████ | |
|     | █████████████ | |
|     | ███████████████ | |
|     | ██████████████ | |
|     | █████████████ | |
|     | ███████ | |
| 29  | █████████████ | Kiani Decl. ¶¶ 6-7. |
|     | ██████████████ | |
|     | ████████████ | |
| 30  | ███████████ | Exs. G, I, J, K, L, M. |
|     | ████████████████ | |
|     | ███████████ | |
| 31  | ██████████████ | Ex. G. |
|     | ████████████████ | |
|     | ███████████████ | |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
|  | ▅ |  |
| 32 | ▅▅▅▅▅ ▅▅▅ | Ex. I. |
| 33 | ▅▅▅▅▅ ▅▅▅▅▅ ▅▅▅▅ | Exs. J, K, L. |
| 34 | ▅▅▅▅▅ ▅▅▅▅ ▅▅▅▅▅▅ ▅▅▅ | Ex. M. |
| 35 | ▅▅▅▅▅ ▅▅▅ ▅▅▅▅ ▅ | Kiani Decl. ¶¶ 7, 9. |
| 36 | Apple concealed its misappropriation of Masimo's trade secrets until 2017 and later. | Exs. H, N, O, P, Q, R, S, T, AA, BB; Ex. 15; FAC ¶ 231. |
| 37 | ▅▅▅ ▅▅▅▅ ▅▅▅▅▅ | Ex. S. |
| 38 | ▅▅▅▅ ▅▅▅ ▅▅▅▅ ▅▅▅ ▅▅▅▅ ▅ | Ex. S. |

| No. | Additional Material Facts | Supporting Evidence |
|-----|---------------------------|---------------------|
| 39 | ████████████████████ ████████████ ██████████████████ █████████████████ ███ | Ex. BB. |
| 40 | █████████████████████ █████████████ | Ex. H. |
| 41 | Apple requested the Patent Office refrain from publishing the patent applications that Masimo alleges contain Masimo's trade secrets. | Ex. R. |
| 42 | Apple selectively requested the Patent Office refrain from publishing the patent applications discussed in the proceeding fact to prevent Masimo from learning of its misappropriation. | Ex. R. |
| 43 | Apple allowed other Lamego patent applications to publish in the ordinary course, which neither Masimo nor Apple has alleged contain Masimo's trade secrets. | *See, e.g.*, Ex. 15. |
| 44 | Apple did not publish details on its healthcare initiatives until 2017 and later. | Exs. N, O, P, Q, AA. |
| 45 | Apple launched its "Healthcare" website in March of 2017. | Ex. N. |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 46 | Apple published its first "Health" press release in January 2018. | Ex. O. |
| 47 | In December 2018, Apple announced that it received its first FDA clearance for an application on the Apple Watch. The announcement stated: "the ECG app on Apple Watch Series 4 marks the first direct-to-consumer product that enables customers to take electrocardiogram right from their wrist" to "provide critical data to physicians." | Ex. P. |
| 48 | Before 2018, Apple had not received FDA clearance for any aspect of the Apple Watch. | Ex. P. |
| 49 | The initial Apple Watch website did not focus on healthcare features. | Exs. Q, AA. |
| 50 | Prior to the Series 4, the pulse rate feature of the Apple Watch had significant performance issues. | Ex. Z. |
| 51 | Apple did not focus on the Apple Watch's health features before 2018 because the non-invasive physiological measurement features had significant performance issues. | Ex. Z. |
| 52 | In 2018, Apple released an updated | Ex. Z. |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| | Series 4 watch that solved some of the earlier performance issues. | |
| 53 | Apple touted performance improvements by referring to the Series 1-3 watches as having an "optical heart sensor" while the Series 4 and later devices have a "second-generation optical heart sensor." | Ex. Z. |
| 54 | Apple built on those technologies with later versions of the watch, including the Series 6 in 2020 that purports to measure oxygen saturation. | Ex. Z. |
| 55 | Apple argued the Second Amended Complaint "confirms that Plaintiffs do not have a valid trade secret claim against Apple." | Dkt. 121 at 1, 2 |
| 56 | Apple argued Masimo must be relying on "inevitable disclosure" because it did not have enough facts to bring suit. | Dkt. 121 at 16-17. |
| 57 | Apple argued the complaint should be dismissed with prejudice because Masimo had no factual basis for filing suit. | Dkt. 121 at 18 ("If Plaintiffs have a basis to plead that Apple misappropriated any of their trade secrets, Plaintiffs would have done so by now—allowing further amendment would be futile"). |

| No. | Additional Material Facts | Supporting Evidence |
|---|---|---|
| 58 | In December 2020, Apple again argued Masimo had insufficient facts to bring suit and must be improperly relying on the doctrine of inevitable disclosure. | *See* Dkt. 241 at 24. |
| 59 | Apple argued that, if Masimo had a "valid" claim, it would have "specified the alleged trade secrets long ago and alleged a colorable misappropriation theory—they have not." | Dkt. 241 at 2, 25. |
| 60 | In March 2021, Apple again argued that Masimo lacked facts sufficient to bring suit. | Dkt. 312; Dkt. 329 at 1 ("At this point it is apparent that these amended trade secrets claims are not viable"). |
| 61 | Apple claimed Masimo had no basis for bringing suit and must be relying on inevitable disclosure. | Dkt. 312 at 17 n.8. |
| 62 | The Court largely denied Apple's final motion but granted a portion of the motion. | Dkt. 361 at 11 (explaining "[t]he vast majority of Plaintiffs' claims have survived dismissal"). |
| 63 | Apple's Opposition to Masimo's Motion for Preliminary Injunction argued that Motion was "the latest in a series of allegations premised on rank speculation that flout California law." | Dkt. 150 at 2. |

/ / /

/ / /

/ / /

/ / /

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 4, 2022          By: /s/ Adam B. Powell
                                    Joseph R. Re
                                    Stephen C. Jensen
                                    Benjamin A. Katzenellenbogen
                                    Perry D. Oldham
                                    Stephen W. Larson
                                    Mark D. Kachner
                                    Adam B. Powell
                                    Daniel P. Hughes

                                    Attorneys for Plaintiffs,
                                    Masimo Corporation and
                                    Cercacor Laboratories

54855558