# EXHIBIT 28

```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)



MASIMO CORPORATION, ET AL,    ) CASE NO: 8:20-CV-00048-JVS-JDEx
                              )
              Plaintiffs,     )            CIVIL
                              )
     vs.                      )        Santa Ana, California
                              )
APPLE, INC,                   )       Thursday, June 10, 2021
                              )
              Defendant.      )    (10:01 a.m. to 10:19 a.m.)


        HEARING RE: PLAINTIFFS' MOTION TO COMPEL [DKT.NO.377]
                   AND ORDER DENYING THE MOTION


            BEFORE THE HONORABLE JOHN D. EARLY,
               UNITED STATES MAGISTRATE JUDGE



APPEARANCES:             SEE PAGE 2


Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Maria Barr

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

2

**APPEARANCES:**


For Plaintiffs:                JOSEPH R. RE, ESQ.
                              Knobbe Martens Olson & Bear, LLP
                              2040 Main Street
                              14th Floor
                              Irvine, CA 92614

                              ADAM POWELL, ESQ.
                              Knobbe Martens Olson & Bear, LLP
                              12790 El Camino Real
                              San Diego, CA 92130


For Defendant:                JOSHUA H. LERNER, ESQ.
                              Gibson Dunn & Crutcher, LLP
                              555 Mission Street
                              Suite 3000
                              San Francisco, CA 94105

                              ANGELIQUE KAOUNIS, ESQ.
                              Gibson Dunn & Crutcher, LLP
                              2029 Century Park East
                              Suite 4000
                              Los Angeles, CA 90067

1        **Santa Ana, California; Thursday, June 10, 2021; 10:01 a.m.**

2                            **(Call to Order)**

3              **THE COURT:**  Good morning, everyone.

4          **(Attorneys greet the Court)**

5                  We're calling the case of *Masimo Corporation, et al.*

6    *versus Apple, Inc.*; Central District of California Case Number

7    8:20-cv-48-JVS-JDEx.  We're here on Plaintiffs' Motion to

8    Compel which is Docket Number 377.

9                  And we'll take appearances of counsel, starting with

10   counsel for Plaintiffs.

11             **MR. RE:**  Good morning, Your Honor.  Joseph Re from

12   Knobbe Martens.  With me is my partner, Adam Powell.

13             **THE COURT:**  Good morning.

14             And on behalf of Defendant?

15             **MR. LERNER:**  Good morning, Your Honor.  Joshua Lerner

16   and Angelique Kaounis from Gibson Dunn on behalf of Apple.  And

17   with us today is Ryan Moran, in-house counsel at Apple.

18             **THE COURT:**  All right.  Good morning.

19             All right.  We're here on the Motion to Compel.  I've

20   reviewed the motion; I've reviewed the joint stipulation; I've

21   reviewed declarations and exhibits offered in support and

22   opposition to the requested relief and Plaintiffs' supplemental

23   memorandum and related information.

24             We're going to get started.

25             I have a tentative.  I'm going to give you the short

4

1   version.

2           The tentative is I'm tentatively inclined to deny the

3   motion.

4           I'm going to assume, without deciding, that it was

5   Apple's burden here, based on both the case law and the

6   existing order previously entered by me in this case, that

7   Apple had the burden here to oppose the relief Plaintiffs seek

8   with respect to Mr. Cook's -- a search of Mr. Cook's -- or

9   designating Mr. Cook as an ESI custodian.

10          And although the apex doctrine relating to

11  depositions and 30(b) -- or depositions doesn't apply directly

12  here; some, but not all, of the considerations that underly

13  that doctrine apply; and that is that it is more burdensome.

14  And I don't need a declaration to know this; that it is more

15  burdensome to search the CEO of a multi-billion dollar, maybe

16  multi-trillion dollar international corporation for records.

17  But the burden is not the same as having that person appear for

18  an apex depositions but there is some burden, there is some

19  burden and that's facially apparent.

20          And the proffer made by Plaintiffs, I'm going to

21  characterize as relatively weak in connection with the

22  relevance of Mr. Cook's email and other electronically stored

23  information sources as it relates to the claim in this case --

24  claims in this case -- claims and defenses in this case.

25          Gonna have a big bright light proviso now.  Counsel

1   have heard me say this at least once, maybe twice.

2          I'm going on what's in front of me; and in

3   particular, I would take counsel at their word.  We've got

4   excellent counsel in this case.  And I've got a representation

5   by counsel for Apple -- and although only -- it's

6   electronically signed by one person, there are (one, two,

7   three, four, five, six) seven attorneys underneath that

8   signature so I'm attributing this to all those counsel and the

9   firm representing Apple and Apple itself.

10          Quote, page -- this is from page 9 of the Joint

11   Stipulation, (quote):

12          "Tim Cook (comma), Apple's CEO (comma), is not likely

13          to have discoverable information relevant to any

14          parties' claims or defenses." (period, close/quote).

15          It's a conclusory statement but it's made by an

16   Officer of the Court and Officers of the Court, to this Court

17   in connection with this motion.  And I want Apple and its

18   counsel to understand that's the basis for my tentative and

19   potentially the basis for my ruling.

20          The world's a funny place.  We talked about it

21   before.  Sometimes there are acquisitions.  Sometimes things

22   come out that no one knew were going to come out and no one

23   understood were going to come out that can change how things

24   are looked at later.

25          I'm accepting that representation, that counsel's

6

1    done an inquiry and based on their inquiry, Tim Cook is not

2    likely to have discoverable information relevant to any

3    parties' claims or defenses.  And I've read -- there's dueling

4    declarations here.  Frankly, the issues at depth in those

5    dueling declarations are sort of tersely.  They're not to the

6    heart of the case.

7             But that statement, I'm relying on.  If that turns

8    out to not be true, through some other source, there will be

9    severe repercussions because I'm relying on it.  So I want to

10   make sure Apple understands that.

11            Regardless of my ruling here, Apple can still agree

12   to conduct a search of Mr. Cook's email as an ESI custodian.

13   I'm not -- my tentative is not to order it but be on notice.

14   You have put yourself out there and I'm relying on it.  If it

15   turns out not to be true, the consequences, we will be back

16   here and there will be an evidentiary hearing.

17            All right.  So let me hear -- Plaintiff, it's your

18   motion.  You've heard my tentative is to rule against you.  Let

19   me hear from you.

20            **MR. RE:**  Thank you, Your Honor.

21            I think --

22            **THE COURT:**  And this is Mr. Re speaking for our

23   recording.

24            **MR. RE:**  Thank you.  Mr. Re, R-e, is the last name.

25            I don't see any record evidence at all about burden.

7

1   This is simply an ESI search.  It is minimal effort.

2            **THE COURT:**  And if you heard what I said, there are

3   -- you haven't been here for all the discovery motions in here

4   and I've talked about that issue, that there are some -- some

5   cases where the burden is facially apparent.  And I'm not

6   saying it rises to the level of what the burden would be for an

7   apex deposition but I am saying it's facially apparent that

8   there is a burden to -- and we've also talked about pipes in

9   this case a lot -- that discovery requests are going through

10  pipes.  The pipes here are expanded in terms of the number of

11  potential custodians.  But we're trying to do things that make

12  economic sense under Rule 1 of the Federal Rules of Civil

13  Procedure but also get you what you're looking for.

14            Your showing to me, Plaintiffs showing to me is

15  minimal at best.  The fact that the CEO of Apple indicated he's

16  very interested in health care technology, it has very little

17  weight in terms of making that person's email subject to

18  search.

19            The issues regarding Dr. O'Riley, the fact that

20  regardless of how you characterize it, I don't see evidence.

21  We have Dr. O'Riley's first person attestation that his

22  interaction with Mr. Kirk at his interviews was essentially a

23  windup; they did not discuss substance of any Masimo

24  technology.  And the fact that the CEO met with someone at the

25  end of a day's worth of interviews, even taking into account

8

```
 1   all the information, is not to me sufficient to overcome that

 2   limited burden that's facially apparent from the request.

 3          MR. RE:  Okay.  You say "facially apparent."  I do

 4   want to address the basis for the tentative.

 5          The representation made that you're relying upon is

 6   made without any representation as to how they could possibly

 7   know this.  What's the basis for the representation?  I don't

 8   even see them even suggesting that they've done any ESI

 9   searching to even have a basis for the representation.

10          THE COURT:  And again, it gets back to they're -- I

11   think I quoted Bob Dylan at one of our earlier hearings.  I

12   don't need a weatherman to know which way the wind blows.

13          I can -- you don't have to have 15 declarations to

14   say doing an ESI search for the President and CEO of Apple,

15   Inc. from 2013 to the present -- where, again, talking

16   generally about whatever the time period is going to be -- the

17   number of devices, the number of avenues of communication that

18   need to be searched and the heightened -- the heightened need

19   for review when you're looking at a CEO's search is different

20   from the type of review, an attorney review that you're doing

21   for an engineer's -- search of an engineer's email.  These are

22   all things that I don't need a declaration to tell me.  They're

23   independently knowable.

24          That said, I'm not saying it's a massive showing or a

25   massive, per se, burden demonstrated, but that's the whole
```

9

1   purpose of the apex doctrine in depositions is it goes without

2   saying that that's a burden.

3          Now I'm not saying the apex doctrine applies here but

4   the aspects of it are equally available.  And I'm going to ask

5   you, Mr. Re, if you can if you can keep your mask on.

6          Aspects of it, aspects of it, the theory of it is the

7   same but I'm being very clear and I'm repeating that

8   representation that I mentioned and that you mentioned.

9          Implicit in every discovery response is an

10  affirmation and attestation by the attorney that it's made in

11  good faith; that it's made not to conceal or not to

12  unnecessarily delay the case.  Ramp it up when it's made in a

13  brief to the court.

14         I don't believe that Apple's lawyers would make that

15  willy-nilly without some foundation and I'm accepting it.  But

16  I am letting everyone know if it turns out from some other

17  source that Mr. Cook actually does have discoverable

18  information relevant to any parties' claims or defenses in his

19  ESI streams, we will be having a hearing and it may involve a

20  hearing of Mr. Cook testifying in this court, in person, if

21  that turns out to be a representation that was made to me that

22  I'm relying on for purposes of making this order.  And it may

23  also require testimony from counsel who made this

24  representation but that's only if it turns out to potentially

25  not be true.

10

1          All right.  Please continue, Mr. Re.

2          **MR. RE:**  Well, it sounds like you made up your mind

3  and --

4          **THE COURT:**  I mean I have thought about it and -- but

5  I want to make sure you have a full and fair opportunity to be

6  heard.

7          **MR. RE:**  Well, my only point is that there's no basis

8  for the statement.  You're just relying on the good-faith

9  Officer of the Court; I assume it's true.  If that's the

10  analysis, I have nothing further to add.

11          **THE COURT:**  Well let me just say, combined with what

12  doesn't require evidence; and that is, there is a burden on the

13  CEO of one of the largest corporations in the world to have me

14  have that person designated as an ESI custodian beyond what it

15  would be for, say, an engineer or a lesser person who's not

16  dealing with lawyers on a regular basis, who's not probably got

17  a the same level of communications.

18          So I don't need an expert, I don't need a declaration

19  to understand that that's where the apex doctrine comes from.

20          **MR. RE:**  But the apex doctrine is based on the burden

21  and oppression to the witness.  We have no evidence or

22  suggestion by anybody that the witness is even involved --

23          **THE COURT:**  So I'm going to disagree with you.  The

24  apex doctrine is not just the burden on the witness; it's the

25  burden on the entity to have --

1          We talked about the *Mattel versus Bratx* case, right?

2     We were here -- I know you were here, Mr. Lerner, when you had

3     the CEO of Mattel International sitting up in Judge Carter's

4     courtroom in the back row for a week.  That was a burden on him

5     but it was also a burden on Mattel.  And what we're talking

6     about with respect to the apex doctrine is a burden on the

7     witness but also a burden on the company itself to have the CEO

8     pulled out for eight hours or four hours or whatnot.  So it's a

9     burden on both.

10          **MR. RE:**  I agree with what you just said but we have

11     no evidence that Mr. Cook will be pulled to do anything.

12     That's the difference between a personal appearance and a ESI.

13     You can check my ESI and I don't even know it's happening so

14     there's no participation --

15          **THE COURT:**  Well so again I'm going to stop you.

16          I expect more from counsel when checking ESI.  If

17     Mr. Cook or any custodian uses devices, uses a communications

18     stream other than company email, it's up to the lawyers to

19     investigate that and find out.  What's the simplest way?  Ask

20     the person.  And he may say well that takes three seconds to

21     ask.

22          Easier said than done when presumably the primary

23     time period you're talking about is 2013 and 2014, to ask the

24     CEO where and what communication streams he or she used during

25     that time period is not an easy task.

1           **MR. RE:**  I can't debate non-existent evidence.  You

2     tell me this.  I've been doing this for 35 years.  If you say

3     so, okay.  I can't convince you but I can't rebut non-existent

4     evidence.

5           **THE COURT:**  Well again, I'm doing a balancing, and

6     one of the things I'm balancing is what's the relevance.  And

7     what I'm telling you is what's been presented is not compelling

8     in terms of even if it's just a limited burden, what's been

9     presented is not compelling.  Most of it relates to, again, the

10    idea of Mr. Cook was interested in health care products.  All

11    right.  Mr. Cook spoke with Dr. Riley after his interviews.

12    Okay.

13          And the rest of it is primarily Mr. Cook's, as it's

14    characterized -- and I'm doing air quotes -- "right-hand man,"

15    (close/quote), also had interactions that you want to know

16    about.  But my understanding is that right-hand man is one of

17    the custodians.  And so to the extent Mr. Cook was

18    communicating with the right-hand man, presumably you're going

19    to get that.

20          So I don't find the showing by Plaintiffs

21    particularly compelling.

22          And from the defense standpoint, it's by operation of

23    law and commonsense that there is a burden and I don't find --

24    I find that you haven't overcome it.

25          But again, I'm going to reiterate what I said before

13

1    about none of this prevents Defendant from going forward with

2    the ESI search of Mr. Cook and agreeing to do so.  And if they

3    don't, they do it at their own risk.

4            All right.  Anything else, Mr. Re?

5            **MR. RE:**  Nothing further.

6            **THE COURT:**  All right.  Mr. Lerner, unless there's

7    something you want to add or clarify or find out about, the

8    tentative will be the order of the court and the motion will be

9    denied for the reasons stated on the record.

10           **MR. LERNER:**  No, Your Honor.  We agree with both the

11   reasoning as to relevance on the issues raised in the

12   plaintiffs' papers like health care and with respect to the

13   burden.

14           **THE COURT:**  All right.  And do you hear and

15   understand what I said about the representation made at page 9

16   of the Joint Stipulation?

17           **MR. LERNER:**  Yes, Your Honor.

18           **THE COURT:**  All right.  Could you make sure.  And I

19   know we have a representative from Apple's in-house counsel.

20   Could you make sure that that is passed on.  And nothing

21   prevents you and Apple from going forward with Mr. Cook, doing

22   a search of Mr. Cook's ESI.  This order merely denies the

23   motion.  And I'm letting plaintiffs know if they get further

24   information that bears on -- that causes me to question this

25   linchpin of what I'm relying on, this is without prejudice to

14

1  re-raising this motion and I would expect that there would be a

2  hearing.  But it depends on what the showing is; I'm not going

3  to prejudge anything but I expect that there would be a hearing

4  where live testimony would be taken if that's the case and a

5  sufficient showing is made and there will be likely -- well

6  I'll leave it at that.

7            All right?

8            **MR. LERNER:**  Thank you.

9            **MR. RE:**  Thank you.

10           **THE COURT:**  Thank you.  We're adjourned.

11           **MS. KAOUNIS:**  Thank you, Your Honor.

12       **(Proceeding adjourned at 10:19 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

15

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 12, 2021
        Signed                                   Dated


*TONI HUDSON, TRANSCRIBER*

# EXHIBIT 29

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com Irfan
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON
 & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON
 & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067 Telephone:
(310) 551-3450 Facsimile: (310)
601-1263

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

MASIMO CORPORATION, a
Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

     Plaintiffs/Counterdefendants,

     v.

TRUE WEARABLES, INC., a
Delaware corporation; and
MARCELO LAMEGO, an individual,

     Defendants/Counterclaimants.

Case No. 8:18-CV-02001-JVS-JDE

**PLAINTIFFS' EXHIBITS 3-5, 8,
AND 10 TO THE
DECLARATION OF MARK D.
KACHNER IN SUPPORT OF
OPPOSITION TO APPLE INC.'S
MOTION TO QUASH AND FOR
A PROTECTIVE ORDER**

**Hon. James V. Selna
Hon. Magistrate John D. Early**

**[Discovery Document: Referred to
Magistrate Judge John D. Early]**

**Hearing: June 24, 2021
Time: 10:00 a.m.
Court: Room: 6A**

UNREDACTED VERSION OF DOCUMENTS FILED PURSUANT TO ORDER OF THE
COURT DATED JUNE 24, 2021 (DKT. NO. 311)

# EXHIBIT 4

**[TRUE016520-522]**



ALUMNI

Marcelo Lamego <mmlamego@alumni.stanford.edu>

# The three equations

**Marcelo Lamego** <mmlamego@stanfordalumni.org>
To: tcook@apple.com

Wed, Oct 2, 2013 at 12:54 AM

Dear Tim Cook,

I was approached by Apple in the beginning of this year (by David Affourtit and James Foster) and was asked if I would like to join the executive technical team. Because I did not want to sign the Apple's NDA for an onsite interview, the process came to a halt. I felt that it was not appropriate to receive confidential information from or disclose confidential information to Apple given my fiduciary responsibilities as the Chief Technical Officer of Cercacor.

I have developed several medical devices in the last 10 years and I am positively sure I could add a significant value to the Apple team, if I was given the chance of becoming part of it in a senior technical executive position and without conflicting with the large IP I have developed for Masimo and Cercacor during the same period.

What I am sure Apple soon will realize is that medical, wellness and fitness technologies are very deceptive in the sense that they are easy to develop for products that work in most (~80%) the users. Getting the same technology to work in almost the entire population is a problem extremely more complex . This is the very reason most medical device startups become insolvent. Knowing Apple's reputation, I am sure you would not settle for even 99%, imagine then, 80%.

As you probably know, regulatory barriers are another important consideration when dealing with medical technologies in general. If the FDA or any other regulatory agency worldwide (i.e., Canada, Japan, Korea, Europe, etc.) believe your product should be regulated by their standards then, the choice of intended use combined with the technology realization strategy can make the development shorten or longer by several years.

The reason I feel attracted by Apple as a company is not related to the things most people are interested in, i.e., brand recognition, great culture, great products, great people. It has to do with the fact that, as an engineer, I realized that there are three important equations to be solved in order to create a competitive global medical, wellness and fitness product portfolio:

(i) The user equation - Apple has solved it and created the industry standard. With a brand recognition similar to the ones from luxury products, everybody is interested in understanding and using Apple's intuitive interfaces.

(ii) The patient equation - This is the deceptive part.

(iii) The connectivity equation - This can only be solved with scale and brand recognition, which e synonymous for Apple. Reliable wireless technology and device interoperability will become a must in the medical device segment.

**EXHIBIT 4**

CONFIDENTIAL

-36-

TRUE016520

I believe Apple has solved (i) and has enough resources to solve (iii). I can help you to solve (ii).

I would appreciate if the content of this letter could be kept confidential, since it can jeopardize the outcome of my career at Cercacor.

I strongly believe that we can develop the  new wave of technology that will make Apple the number one brand in the medical, fitness and wellness device market. If you agree, feel free to contact me anytime.

All the best,

Marcelo Malini Lamego

18 Lyra Way

Coto de Caza CA 92679

Home phone: (949) 216-9294

My resume is available at http://www.linkedin.com/pub/marcelo-lamego/54/644/725

Confidentiality notice: This e-mail may contain information confidential and/or privileged from disclosure. If the reader is not the intended recipient, copying, dissemination or continued possession of this communication is strictly prohibited.

**EXHIBIT 4**



**ALUMNI**

## Apple

**David Affourtit** <affourtit@apple.com>
To: Marcelo Lamego <mmlamego@stanfordalumni.org>
Cc: Denby Frazier <denby@apple.com>

Wed, Oct 2, 2013 at 10:25 AM

Hello Marcelo,

Thank you for your voicemail and follow up. I saw your note to Tim Cook. I'm glad you remain enthusiastic about Apple.

As I've transitioned out of the Exec Recruiting team into a management role, I've asked my associate from the Exec Recruiting team to reach out to you directly. Her name is Denby Frazier, cc'd.

Denby, meet Marcelo, Marcelo, Denby.

All the best and thanks again!

Cheers,
Dave

**EXHIBIT 4**

CONFIDENTIAL

-38-

TRUE016522

# EXHIBIT 30

```
                     UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
                     (SOUTHERN DIVISION - SANTA ANA)



MASIMO CORPORATION, ET AL,    ) CASE NO: 8:20-CV-00048-JVS-JDEx
                              )
              Plaintiffs,     )             CIVIL
                              )
     vs.                      )        Santa Ana, California
                              )
APPLE, INC,                   )   Thursday, September 23, 2021
                              )
              Defendant.      )


   IN-PERSON HEARING RE: PLAINTIFFS' MOTION FOR RECONSIDERATION

             BEFORE THE HONORABLE JOHN D. EARLY,
               UNITED STATES MAGISTRATE JUDGE



APPEARANCES:             SEE PAGE 2


Court Reporter:          Recorded; Digital wave file


Courtroom Deputy:        Maria Barr


Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988
```

**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

2

**APPEARANCES:**

For Plaintiffs:              JOSEPH R. RE, ESQ.
                             Knobbe Martens Olson & Bear, LLP
                             2040 Main Street
                             14th Floor
                             Irvine, CA 92614

                             ADAM POWELL, ESQ.
                             Knobbe Martens Olson & Bear, LLP
                             12790 El Camino Real
                             San Diego, CA 92130


For Defendant:               JOSHUA H. LERNER, ESQ.
                             Gibson Dunn & Crutcher, LLP
                             555 Mission Street
                             Suite 3000
                             San Francisco, CA 94105

                             NATALIE POUS, ESQ.
                             Apple In-House Counsel

1          **Santa Ana, California; Thursday, September 23, 2021**

2                          **(Call to Order)**

3              **THE COURT:**  Good morning, everyone.

4              **MR. RE:**  Good morning.

5              **MR. LERNER:**  Good morning, Your Honor.

6              **THE COURT:**  One item on calendar today.  Calling Case

7     Number Central District of California 8:20-cv-48-JVS-JDE,

8     *Masimo Corporation, et al., versus Apple, Inc.*

9              Appearances for this in-person hearing, Counsel,

10    starting with counsel for plaintiff.

11             **MR. RE:**  For Masimo and Cercacor, Joseph Re from

12    Knobbe Martens Olson and Bear.  With me is my partner, Adam

13    Powell.

14             **THE COURT:**  Good morning.  Thank you.

15             And on behalf of defendant?

16             **MR. LERNER:**  Good morning, Your Honor.  Joshua

17    Lerner, Gibson Dunn, on behalf of Apple, and with me today is

18    Natalie Pous, legal counsel, litigation, from Apple.

19             **THE COURT:**  I'm sorry; what was the last name?

20             **MR. LERNER:**  P-O-U-S, Your Honor.

21             **THE COURT:**  All right.  And that's in-house counsel

22    at Apple?

23             **MR. LERNER:**  Yes.

24             **THE COURT:**  All right.  All right.  We're here for

25    a -- what's been styled as a motion for reconsideration of my

4

1   June 10th ruling regarding Mr. Cook's being designated as an

2   ESI custodian, a motion that I denied on June 10th.  I'll tell

3   you what I've reviewed.  Then I'm going to give you my

4   tentative thoughts.

5          I have reviewed the motion, which, let's see, is

6   Docket Number 471, and memorandum and exhibits and

7   declarations, some of which were filed under seal.  I've

8   reviewed Apple's opposition, which is at 479, along also with

9   two declarations and exhibits.  I don't think any of that was

10  filed -- oh, no, some of it was filed under seal; and a reply

11  from plaintiffs filed on August 5th, also with exhibits and a

12  declaration, some of which was filed under seal.

13         I'm going to now first ask, on plaintiffs' behalf, is

14  there anything that I should have reviewed that I haven't

15  referenced, from your perspective?

16         **MR. RE:**  Nothing, Your Honor.

17         **THE COURT:**  And on behalf of defendant?

18         **MR. LERNER:**  No, Your Honor.

19         **THE COURT:**  All right.  Here is my tentative.  My

20  tentative is to grant the motion for reconsideration, finding

21  that plaintiff under Local Rule 7-18 did act appropriately and

22  in a timely fashion and there is good cause for the motion not

23  being filed within 14 days after the hearing because -- for the

24  reasons stated in the papers, but the -- I don't want to

25  characterize one piece of evidence more important than another,

5

1   but certainly the public filing on July 2nd by Apple of an

2   October 2nd, 2013, email from Mr. Marcelo Lamego to Mr. Tim

3   Cook, and I think there was a follow-up email back to

4   Mr. Lamego from a representative at Apple later that same

5   morning, that was publicly filed on July 2nd.  There was a

6   meet-and-confer session requested, I think the next business

7   day, which was July 6th, and a meet-and-confer took place on

8   July 9th, and then per Local Rule 7-8 the motion couldn't have

9   been filed until July 16th, and it was filed on the next

10  business day thereafter, on July 19th, which I, based on all

11  the circumstances -- and I've summarized it; I haven't included

12  everything -- find was -- that plaintiffs acted diligently and

13  had good cause to not file the motion within 14 days after the

14  prior ruling.

15          And I'll also note that, from the bench, the last --

16  at the hearing on the July 10th original motion, I had invited

17  plaintiffs' counsel that should there be new information they

18  could refile the motion.  So, although it's styled as a motion

19  for reconsideration, they could have just filed a brand-new

20  motion.  I offered that up as an option, and that, obviously,

21  would not have been subject to the Local Rule 7-18, 14-day plus

22  good cause requirement.  Now, I may be speaking too much.  Had

23  that happened, it might have been heard by Judge Guilford

24  instead of me under the special master reference, but be that

25  as it may, I find good cause for the filing of motion.

6

1          Turning to the substance, I think it was the same

2   counsel who were here on July -- on June 10th.  I expressed

3   that it was a -- and I may not have used these words, but the

4   essence of it was it was a close call.  I found that the -- the

5   factual evidentiary showing relatively weak by plaintiff in

6   connection with their request to show that there was some

7   reasonable likelihood that Mr. Cook might have relevant

8   information in his emails or other streams.  The flip side was

9   I noted that defendants offered no evidence of the burden.

10  And, so, essentially, on that close call, I relied on two

11  people.  One of them was Bob Dylan, and one of them was

12  Mr. Lerner and four or five other attorneys from Gibson Dunn

13  and Crutcher who represented -- and I'm going to paraphrase --

14  that it was unlikely that Mr. Cook would have any relevant

15  discoverable information in his ESI.

16          That statement was confirmed at the hearing, and I

17  gave Mr. Lerner an opportunity to recognize that that was an

18  important basis for my ruling and that should that at some

19  future date turn out not to be true, there could be -- and I

20  used the word "severe" -- there could be severe repercussions.

21  I'm not inclined right now to get into repercussions.  I think

22  I'd need to gather some more information.  We can do that if

23  the parties wish.  Right now I'm inclined to move forward with

24  your case, help you each move forward with your respective

25  cases, and rule on the substance of the motion, but we can get

7

1   into a more deep dive into some other issues that may be

2   lurking out there.

3              And I'll note, in terms of the good cause, moving

4   back in time, that I have considered Apple's arguments that

5   plaintiffs' counsel, at least the firm, had possession of the

6   October 2nd, 2013, email as long ago as last year, and there is

7   a declaration from a paralegal from another firm regarding

8   production in another case.  I'm happy to get into a deep dive

9   on that.

10             I actually -- I don't think you were here,

11   Mr. Lerner, on that other case -- had some thoughts about what

12   was happening, and I used a term from my days visiting New York

13   City when I was a kid in the 1970s where you'd pop out of Penn

14   Station or Grand Central Station and there would be guys with

15   little tables set up playing Three Card Monte.  And I want to

16   explain what that is.  It's a game where you're trying to pick

17   the queen out of three cards.  And the queen is there, and the

18   person dealing the cards isn't cheating; and by dealing, he

19   just throws three cards around, but is being somewhat opaque.

20   And sometimes it involves having a third party who appears to

21   be an independent third party who's actually working with the

22   dealer out on this little table outside the station looking for

23   tourists coming into town to have the third party, who looks to

24   be independent, win a couple times, and then when the tourist

25   puts their money down, suddenly the card is much harder to

1   find.  The card exists; it's just being obscured.

2               I'm happy to hear from Apple about anything that they

3   want to talk about.  But one of the things we might get into

4   and have to get into if we're going to do a deep dive is the

5   relationship between Apple and True Wearables, the defendant in

6   the other case; how it came to pass that the October 2nd email

7   was designated as confidential in that case; maybe we need to

8   get into communications between the parties.  I don't know, and

9   I certainly am not going to issue any orders on the fly on

10  that, but maybe we need to, to find out how it came to pass.

11  And there is an argument from Apple that plaintiff --

12  plaintiffs could have just moved to de-designate that October

13  2nd, 2013, email in the True Wearables case.  I'm not sure what

14  the basis for that argument is.  There is no basis in the

15  protective order in that case to simply say:  I want to use

16  something that was designated as confidential in another case.

17  You can move to de-designate by saying something isn't

18  confidential.  And here at least it was represented at the last

19  hearing that -- I think it was by Mr. Re -- that during the

20  course of the True Wearables case Mr. Lamego said that that

21  email, he designated that as confidential at the request of --

22  and I'm not sure if it was expressed or in his mind

23  interpreted -- at the request of Apple.  And you each have

24  heard me talk about my views of protective orders and that

25  they're not to be willy-nilly disregarded, and that protective

1   order limited the use of that email once it was designated as

2   confidential to the prosecution or defense of that case only.

3   So, plaintiffs could not have simply thrown it in front of me.

4          Now, the timing here, perhaps it was a genius move by

5   plaintiffs to serve a third-party subpoena on Apple, have Apple

6   file a motion to quash, and then have that document be brought

7   to my attention in connection with that motion to quash, but be

8   that as it may, that was -- they didn't have an ability to

9   bring it to my attention in this court in this hearing on June

10  10th.  And I'm a little troubled by the suggestion that it was

11  that simple or that plaintiffs here were at fault.  And, so, if

12  we want to go down that road, we will, but we're probably at

13  that point going to have to have some evidentiary issues if we

14  really want to push it.  But I'm comfortable right now with

15  what I see to say they did not have authorization from me or

16  Mr. Lamego.  And I saw the emails from Mr. Lamego's counsel

17  essentially telling plaintiff they couldn't even disclose this

18  to in-house counsel at Apple; it could only be an attorneys'-

19  eyes-only presentation of the email from plaintiff to Apple's

20  counsel before plaintiffs' counsel would be authorized to file

21  it in connection with the motion to quash in the True Wearables

22  case.

23          So, I'm riffing a little bit.  I've given you the

24  short version of my tentative.  I guess I'll start with you,

25  Mr. Re, or Mr. Powell.  It's plaintiffs' motion.  At the risk

10

1   of potentially snatching defeat from the jaws of victory,

2   you're welcome to offer any additional argument, since you have

3   the burden here, but -- or give me any new information, since I

4   think the last filing was your reply over a month ago, if

5   there's any new information that you want to impart to me.

6          Mr. Re, the floor is yours.

7          **MR. RE:**  Thank you, Your Honor.  I only have one

8   statement to make, and that is, we, in an abundance of caution,

9   had the same interpretation of the protective order that you

10  just gave.  And that is, even if I were to show it to

11  Mr. Lerner, for example, for a meet-and-confer to get a court

12  order to approve it after the fact, that might even be deemed a

13  use.  So, we have an ambiguity on the word "use," and we took

14  the broadest interpretation, just like you just did in your

15  explanation.

16         **THE COURT:**  Anything further?

17         **MR. RE:**  Nothing further.

18         **THE COURT:**  All right.  Subject to your ability to

19  respond, any arguments from Mr. Lerner?  Mr. Lerner, you've

20  heard my tentative and my thoughts.  Let me hear what you want

21  to argue.

22         **MR. LERNER:**  Thank you, Your Honor.  I will not spend

23  time on your point about the procedure here.  I want to get to

24  the substance, which is that there's new information that

25  changes the basis for the Court's prior ruling.

1          **THE COURT:**  Could I ask you a favor?  Just pull the

2   microphone a little closer to you so I make sure that if there

3   is a transcript that the transcriber can hear the recording.

4          **MR. LERNER:**  Yeah.  Is that better, Your Honor?

5          **THE COURT:**  Yes.

6          **MR. LERNER:**  Okay.  So, the argument that you heard

7   and, obviously, what Your Honor has focused on is the email

8   from Mr. Lamego to Mr. Cook.

9          **THE COURT:**  And there's multiple facts, but that's

10  the one that I focused on in giving my tentative.  It's not the

11  only reason.

12         **MR. LERNER:**  Understood.  And I'll quickly address

13  the others, as well.  But that unsolicited email to Mr. Cook

14  notes that Apple -- to other people, not Mr. Cook, and not --

15  is suggested in the email that Mr. Cook's suggestion or

16  anything else had already approached Mr. Lamego.

17         **THE COURT:**  Okay.

18         **MR. LERNER:**  And --

19         **THE COURT:**  Let me slow everything down.  Okay.  The

20  question is whether Mr. Cook has relevant information, and

21  they're not going to prove their case by this email.  I want

22  you to -- tell you I don't view this as the smoking gun that

23  declares victory for plaintiffs in this case.  But the question

24  is, does -- have they shown enough to show that Mr. Cook has

25  potentially relevant information in his electronic streams,

12

1   email, or whatnot.  And I mentioned I relied heavily on what

2   you told me, in writing and affirmed at the hearing, that there

3   is -- it's unlikely that there is relevant, discoverable

4   information in his email streams.

5           I have a question for you:  Is the email, from your

6   perspective, from Mr. Lamego to Mr. Cook on August -- I'm

7   sorry -- on October 2nd, 2013, relevant?

8           **MR. LERNER:**  We have been consistent on the point

9   that not only is the answer to that no, it should not be and

10  cannot be to bring Mr. Cook into a dispute --

11          **THE COURT:**  Okay.  You say the answer is no.  We're

12  going to do a little bit more of a deep dive now.  So, let's --

13  so that we're -- all know what we're talking about, let's pull

14  up -- well, first of all, let's talk about some of the claims

15  in the case.  Theft of trade secrets is a claim in the case,

16  right?

17          **MR. LERNER:**  Yes, sir.

18          **THE COURT:**  My days as a prosecutor, whenever you

19  file a -- whenever you investigate a charge, file a charge, get

20  ready for trial, you pull up the elements, right?  What are

21  some of the elements of a claim for theft of trade secret?

22          **MR. LERNER:**  You need a trade secret, and you need

23  misappropriation.

24          **THE COURT:**  Okay.  And in order for there to be

25  misappropriation, if a third party doesn't have any idea that

13

1   something is a trade secret, and some third party who just

2   walks in and without any knowledge or notice that it's

3   potentially a confidential trade secret, the company uses it,

4   would that company have a defense in that situation of lack of

5   knowledge and intent?

6           **MR. LERNER:**  Yes, Your Honor.

7           **THE COURT:**  Okay.  So, knowledge and intent of the

8   receiving party matters.  Is that true?

9           **MR. LERNER:**  Yes, it is, Your Honor.

10          **THE COURT:**  And tell me, in the grand scheme of

11  things, does knowledge and intent by the third person, who

12  allegedly walks out with a trade secret, does that matter?  Is

13  that something that -- under the broad definition of relevance

14  of Rule 401 under the evidence code, is that something that

15  matters?

16          **MR. LERNER:**  Could be, in that --

17          **THE COURT:**  Okay.  Could be.

18          **MR. LERNER:**  -- hypothetical; I don't know.

19          **THE COURT:**  All right.  We're at a stage where we

20  don't know; there's going to be -- you've got more than a year

21  until trial.

22          All right.  So, let's talk about -- those are some of

23  the issues, what Mr. Lamego, who's the person we're talking

24  about here, knew; what Apple knew when Mr. Lamego came on

25  board; and I think from your papers you concede that you hired

14

1  him effective to start January, 2014.  There is a dispute about

2  whether he was -- he was recruited or -- was recruited as part

3  of a grander scheme, but that that's part of the case.

4          So, let's turn to that email, because that's going to

5  be what we're focusing on.  The very first paragraph -- and I'm

6  looking at -- I'm going to go -- because some of this is

7  sealed, some of it isn't.  I don't think this -- I know this

8  was unsealed, and I'm just going to tell you where in the

9  record I'm finding it.  It is in a few places in connection

10  with the motion, but this is at Document Number 321-1, page 37

11  of 94, and this is -- it has the little Stanford alumni

12  insignia on top of it.  It's an email entitled:  The Three

13  Equations.  It's from, at least facially, from Mr. Lamego to T.

14  Cook at Apple.com dated Wednesday, October 2nd, 2013, at

15  12:54 a.m.  The first paragraph:

16          "I was approached by Apple in the beginning of this

17          year and was asked if I would like to join the

18          executive team."

19          Leaving aside where it was found, do you think that

20  that's -- that statement has any bearing on Mr. Lamego's state

21  of mind in connection with the issues in this case?

22          **MR. LERNER:**  Saying that he was approached by two

23  other people, to me, Your Honor, does not reflect on his state

24  of mind.

25          **THE COURT:**  Okay.  How about Apple's state of mind?

15

```
 1   Does it have any bearing?  Remembering that Rule 401 means,

 2   does the evidence at issue or the fact at issue have any

 3   tendency to make a fact of consequence at issue in the case

 4   more or less likely, does an assertion by Mr. Lamego that he

 5   was approached by Apple in the beginning of 2013 and asked if

 6   he would like to join the executive team, does that have any

 7   bearing on any issue in this case?  That statement.

 8            MR. LERNER:  Yes, and that's --

 9            THE COURT:  Okay.

10            MR. LERNER:  -- actually where I was starting.  If I

11   can --

12            THE COURT:  Perfect.

13            MR. LERNER:  -- just get a word in --

14            THE COURT:  No, no.

15            MR. LERNER:  -- edgewise, Your Honor --

16            THE COURT:  No, no, no.  No, no, no, no.  I've read

17   your papers.  So, that fact is material.  Where did that fact

18   originate?  Where did Mr. Lamego send that email with that fact

19   in it?

20            MR. LERNER:  It originated with two other gentlemen,

21   David Affourtit and James Foster, who were the people who

22   approached him.

23            THE COURT:  I'm asking you.  The statement that --

24   leaving that aside, may or may not be true -- I don't know if

25   it's true or not -- but I know that from this record, on its
```

16

1    face, Mr. Lamego says it's true.  So, where did Mr. Lamego send

2    that?

3              **MR. LERNER:**  He sent it to Mr. Cook.

4              **THE COURT:**  And, so, it existed at least at one time

5    in Mr. Cook's email stream.

6              **MR. LERNER:**  Yes.  And --

7              **THE COURT:**  All right.  Let's turn to the next thing

8    I want to ask you about.

9              **MR. LERNER:**  May I offer a point on that, Your Honor?

10             **THE COURT:**  No.  "Because I did not" -- I'm reading

11   from the email again.

12             "Because I did not want to sign the Apple's NDA for

13             onsite review, the process came to a halt."

14             Period.  Next sentence:

15             "I felt that it was not appropriate to receive

16             confidential information from or disclose

17             confidential information to Apple given my fiduciary

18             responsibilities as technical officer of Cercacor."

19             Period.  Close quote.

20             Do you think that a statement by Mr. Lamego in an

21   email directed to Mr. Cook stating, one, earlier in the year he

22   didn't want to sign an NDA, in part because he felt it was,

23   quote, "not appropriate," close quote, to, quote, "disclose

24   confidential information to Apple," and, two, that described he

25   had and owed, quote, "fiduciary responsibilities as technical

17

1   officer of Cercacor."  Period, close quote.

2          Are those two facts that are contained in this email

3   in any way relevant to any issue in this case?

4          **MR. LERNER:**  They could be.  The point which we've

5   been consistent on throughout, Your Honor, is that --

6          **THE COURT:**  Thank you.  They could be.

7          **MR. LERNER:**  -- is that --

8          **THE COURT:**  Let's talk about --

9          **MR. LERNER:**  Your Honor, may I please --

10         **THE COURT:**  Let's talk about one more --

11         **MR. LERNER:**  -- answer your question?

12         **THE COURT:**  -- clause from this email.  Let's talk

13  about one more clause from this email.  Next page.  We're now

14  at page 38 of Docket Number 321-1, second to last substantive

15  paragraph.  Quote:

16          "I would appreciate if the content of this letter

17          could be kept confidential since it can jeopardize

18          the outcome of my career at Cercacor."

19          Period.  Close quote.

20          Do you think that that expression of concern about

21  his career at Cercacor, based on this letter that he sent to

22  Mr. Cook, that that has any bearing on any fact of consequence

23  in this case?

24         **MR. LERNER:**  In this case?  It sounds like it was a

25  big deal in the other case where he was very concerned.

18

```
1            THE COURT:  I'm asking about this case.

2            MR. LERNER:  I --

3            THE COURT:  Do you think that Apple being placed on

4   notice that the person who, in your words, unsolicitedly sent

5   an email to Tim Cook, asked Mr. Cook to keep this email

6   confidential, a potential -- I don't know if you were

7   competing, if the companies were competitors at that point --

8   but asked to have this communication confidential, do you think

9   that that has any bearing on -- for instance, we talked about

10  knowledge of the receiving party in a trade secret case knowing

11  that the potential information is a trade secret or is

12  confidential -- does this have any bearing on any issue of

13  consequence in this case?

14            MR. LERNER:  It could, and we're addressing --

15            THE COURT:  Okay.  It could.

16            MR. LERNER:  -- two separate --

17            THE COURT:  It could.  Thank you.

18            MR. LERNER:  -- issues.  We're addressing --

19            THE COURT:  So, now let's turn to -- let's get --

20  let's really get into the weeds now.  I really want to get into

21  this.

22            MR. LERNER:  Your Honor --

23            THE COURT:  Let's talk about -- no, no.  I've read

24  your papers.

25            MR. LERNER:  I'm not commenting on my papers.  I just
```

19

1    would like to be heard.

2            **THE COURT:**  We're going to turn now to the -- what I

3    think is the operative pleading, which is the fourth

4    amendment -- fourth amended complaint.  Paragraph 21 of the

5    fourth amended complaint reads, in part:

6                    "Apple systematically recruited other key Masimo

7                    personnel, such as Marcello Lamego, who was the

8                    former chief technical officer at Cercacor and a

9                    former research scientist at Masimo."

10           The remainder of paragraph 21 describes dates that

11   Mr. Lamego worked at Masimo or Cercacor.

12           Here is -- and that's -- that's the fourth amended

13   complaint.  Here is defendant's, Apple's, amended answer to the

14   fourth amended complaint with respect to paragraph 21:

15                   "To the extent it implicates a legal conclusion, no

16                   response is required.  To the extent that a response

17                   is required, Apple admits that it hired Marcelo

18                   Lamego in 2014.  Apple denies that it systematically

19                   recruited other key Masimo personnel, such as Marcelo

20                   Lamego.  Apple lacks information sufficient to form a

21                   belief about the truth of the remaining allegations

22                   and characterizations in paragraph 21 of the fourth

23                   amended complaint, and, therefore, Apple denies

24                   them."

25                   End of quotation.

1          So, Apple, in responding to paragraph 21, did not

2    admit and, in fact, denied, based on lack of information, that

3    Marcelo Lamego was the former chief technical officer of

4    Cercacor.  So, apparently, that Apple's taking is challenging

5    that based on lack of information or belief.

6          Does the -- Mr. Lerner, does the first line of -- or

7    not the first line, but the -- Mr. Lamego's letter, does that

8    have any bearing on whether he was the former chief technical

9    officer of Cercacor?

10          **MR. LERNER:**  It doesn't say he was former.  It says

11    as the chief, at this time.

12          **THE COURT:**  Okay.

13          **MR. LERNER:**  He held multiple positions.

14          **THE COURT:**  We're talking about relevance.  You're

15    not proving your case.  Does it have any bearing on the issue

16    of whether he was, at one time, the chief technical officer at

17    Cercacor?

18          **MR. LERNER:**  He says:  "My responsibilities as the

19    chief technical officer of Cercacor."

20          **THE COURT:**  So, could you answer my question?  Does

21    it have any bearing on the issue of a fact that apparently

22    Apple contests, due to lack of information or belief, whether

23    Mr. Lamego was the chief technical officer at Cercacor?

24          **MR. LERNER:**  He held multiple positions, and we're

25    talking about different times, but, yes, this does say he was

21

1  the --

2          **THE COURT:**  All right.  Yes.  Let's go on --

3          **MR. LERNER:**  -- chief technical officer.

4          **THE COURT:**  -- to paragraph 22.  All right.

5  Paragraph 22 of the fourth amended complaint.  Just read the

6  first sentence for now:

7              "Lamego had unfettered access to plaintiffs' highly

8              confidential, technical information."

9              Here is reading now from Apple's answer to the fourth

10  amended complaint:

11             "To the extent paragraph" -- 22 -- although it says,

12  "To the extent paragraph 23," I believe that's a typo, because

13  it's numbered 22.

14             "To the extent" -- the paragraph -- "implicates legal

15             conclusions, no response is required.  To the extent

16             that a response is required, Apple lacks knowledge or

17             information sufficient to form a belief about the

18             truth of the allegations and characterizations of

19             paragraph 22 of the fourth amended complaint, and

20             therefore Apple denies them."

21             So, that puts -- that statement whether or not

22  Mr. Lamego had unfettered access to plaintiffs' highly

23  confidential technical information, do you think, since that's

24  now at issue and plaintiff has to prove it since it's been

25  denied by Apple, that that letter has any bearing on that

22

1    issue?

2             **MR. LERNER:**  Whether or not he had unfettered access?

3             **THE COURT:**  Yeah.

4             **MR. LERNER:**  He says:  "I developed several medical

5    devices in the last 10 years."

6             **THE COURT:**  He also said that he didn't want to sign

7    an NDA because of -- that would require him -- by which he

8    would have shared confidential information, he wasn't

9    comfortable, given his fiduciary duties.  So --

10            **MR. LERNER:**  No, no, that's --

11            **THE COURT:**  -- does that letter have any bearing on

12   this?

13            **MR. LERNER:**  This is important.  That is not what

14   that says.

15            **THE COURT:**  All right.  Fine.  Your --

16            **MR. LERNER:**  It does not say he would have --

17            **THE COURT:**  Is it your contention -- yes or no, is it

18   your contention that that letter has any bearing on plaintiffs'

19   now requirement to prove its contentions in paragraph 22 of its

20   answer, this contention that Apple denies?

21            **MR. LERNER:**  Mr. Lamego sent this --

22            **THE COURT:**  Yes or no?  Just give me a yes or no.

23   Does it have any bearing?

24            **MR. LERNER:**  As to Apple, he sent this email.  The

25   whole point of our argument and what I've been trying to

23

 1   explain is that it cannot be the test that sending an email to

 2   Mr. Cook, where he effectively says, by forwarding it without

 3   comment, this is not on my plate; I'm not --

 4           **THE COURT:**  He doesn't say that.  He doesn't say that

 5   at all.  We're moving on now.

 6           **MR. LERNER:**  He --

 7           **THE COURT:**  Since you didn't answer my question,

 8   we're going to keep going.  Paragraph 228 of the fourth amended

 9   complaint.

10           **MR. LERNER:**  I apologize.

11           **THE COURT:**  I'm going to --

12           **MR. LERNER:**  How did I not answer your question?

13           **THE COURT:**  I'm going to -- I asked you for a yes or

14   no question of whether it had any bearing on the issue of the

15   case, and you didn't answer that.

16           **MR. LERNER:**  That's --

17           **THE COURT:**  So, we're moving forward to paragraph 228

18   of the fourth amended complaint.  I'm reading a portion of it.

19           "At the time of the disclosure, O'Reilly and Lamego

20           knew, or had reason to know, that their knowledge of

21           plaintiffs' confidential information was acquired by

22           an employer-employee relationship, fiduciary

23           relationship, and employment agreements, which

24           created a duty for them to keep plaintiffs'

25           confidential information secret."

1            That's the allegation of paragraph 228.  In response,

2    in its answer to paragraph 228, leaving aside the legal

3    conclusion statement previously read, this is the entirety of

4    the answer:

5            "To the extent that a response is required, Apple

6             denies the allegations and characterizations in

7             paragraph 228 of the fourth amended complaint and

8             specifically denies that it has committed any active

9             trade secret misappropriation."

10           So, Apple is affirmatively denying all the

11   allegations contained in paragraph 28, including the allegation

12   that Mr. Lamego knew, or had reason to know, that their

13   knowledge of confidential information was required by, among

14   other -- was acquired by, among other things, a fiduciary

15   relationship.

16           Does the October 2nd, 2013, from Mr. Lamego have any

17   bearing on what plaintiff now has to prove -- because Apple has

18   denied it -- that Mr. Lamego knew that he had knowledge of

19   plaintiffs' confidential information acquired as a result of a

20   fiduciary obligation?

21           **MR. LERNER:**  It well could, and I will not contest

22   any of the further points, Your Honor.  I don't think I can get

23   out my point, but I take Your Honor's questions, understand

24   your point.  I don't need to keep arguing it.

25           **THE COURT:**  Well, we're going to go a little more;

25

1    because I want to make sure that -- you know, you had some

2    pushback there.  Let's go to paragraph 229, the next paragraph

3    of the fourth amended complaint:

4              "Plaintiffs allege at the time of the acquisition

5              defendant also knew, or had reason to know, that its

6              employees obtained plaintiffs' confidential

7              information pursuant to a duty to keep plaintiffs'

8              confidential information secret."

9              And, then, skipping down:

10             "Defendants also knew Lamego was the chief technical

11             officer of Cercacor and a research scientist at

12             Masimo.  Defendant knew Lamego and O'Reilly were each

13             under a duty to maintain the secrecy of the

14             information they obtained from plaintiffs.  Defendant

15             knew plaintiffs considered the information

16             confidential by virtue of its prior relationship of

17             plaintiffs."

18             And we talked earlier about in a trade secret case

19   the state of mind of the defendant matters, right?

20             **MR. LERNER:**  Yes, Your Honor.

21             **THE COURT:**  And this allegation is that the

22   defendant, Apple, a corporation, knew that, among other things,

23   Lamego was the chief technical officer of Cercacor and was

24   under a duty to maintain the secrecy of information --

25   confidential information contained, and that defendant knew

26

1    that plaintiffs considered information confidential by virtue

2    of that relationship.  Apple in its answer to paragraph 229

3    admits that it received a letter from plaintiffs on or around

4    January 24th, 2014, containing the language quoted in paragraph

5    229, but denied the remaining allegations and characterizations

6    of paragraph 229.

7            Do you think that Mr. Lamego's October 2nd, 2013,

8    letter bears in any way on Apple's denial -- other than

9    referencing the January 24th, 2014, letter -- has any bearing

10   on the issue of Apple's state of mind with respect to the trade

11   secret case?

12           MR. LERNER:  Not as we understood the accusations

13   there, Your Honor.  They were based on, as we understood them,

14   on that letter.

15           THE COURT:  So, you say it has no bearing whatsoever.

16   That letter has no bearing whatsoever about whether defendant

17   knew Lamego was the chief technical officer and that he was

18   under a duty to maintain secrecy of confidential information.

19   You're saying that that letter is irrelevant to plaintiffs'

20   obligation to prove those allegations.

21           MR. LERNER:  No, Your Honor.  The point we've been

22   trying to make -- and I accept your point, and I don't want to

23   keep arguing it, because I understand you don't --

24           THE COURT:  Yeah, and I can go on for --

25           MR. LERNER:  -- accept my argument.  So, I --

27

1          **THE COURT:**  -- for quite a long time.  But we'll stop

2    now on the fourth amended complaint.

3          And, now, before you get to what you want to tell

4    me --

5          **MR. LERNER:**  No, I --

6          **THE COURT:**  -- I want to ask you:  What did you know

7    at the time you wrote and affirmed in court when you said that

8    Mr. Cook's email is unlikely to contain relevant, discoverable

9    information?  Were you aware of the October 2nd, 2013, from

10   Mr. Lamego that you have now repeatedly confirmed contains

11   relevant information?  Were you aware of it at the time you

12   wrote your brief in connection with the June 10th, 2021, motion

13   or opposi- -- motion, and were you aware of it at the time you

14   sat here in court on June 10th and said you understood that I

15   was relying on that representation?  Were you aware of that

16   email at that time?

17         **MR. LERNER:**  Yes, Your Honor.  We had talked about it

18   with the Court a week earlier.

19         **THE COURT:**  You hadn't talked about it to me.

20         **MR. LERNER:**  I'm sorry.

21         **THE COURT:**  When did you talk about it to me a week

22   earlier?

23         **MR. LERNER:**  We --

24         **THE COURT:**  Tell me what day you spoke to me about

25   that email.

28

1          **MR. LERNER:**  I apologize if I got that incorrect in

2   terms of my characterization.  On June 3rd, at set forth in the

3   papers here, we had communicated with the plaintiffs about this

4   email.  They gave us a brief that was redacted and didn't have

5   the information, and we said, "What's redacted?"  And they went

6   to True Wearables and got approval to show it to us, and it was

7   this email.

8          **THE COURT:**  Are you saying that's the first you've

9   ever seen that email?

10          **MR. LERNER:**  No, Your Honor.

11          **THE COURT:**  Okay.

12          **MR. LERNER:**  So, at that point --

13          **THE COURT:**  So, when did you -- when did you -- you

14   said you told me about it a week before June 10th.  When did

15   you tell me about it?

16          **MR. LERNER:**  We -- I apologize.  We filed the brief

17   that day, June 3rd, with Your Honor.  As described there, we

18   didn't tell you about it; we filed the paper.  So, obviously,

19   we were aware of it.

20          **THE COURT:**  But you didn't tell me about it, and I --

21          **MR. LERNER:**  No, that's correct.

22          **THE COURT:**  Do you want to take a look at what I get

23   every morning?  It's a list of every document filed in every

24   case that I'm on.  Do you think, as I'm getting ready for

25   hearings, I open up and analyze every filing, in every other

29

```
1    case, on the off chance that there's something in there that
2    might have relevance?  Do you think that I do that?
3              MR. LERNER:  No, Your Honor.
4              THE COURT:  Of course not.  What do I do?  I rely on
5    the candor of counsel at times, like I did on June 10th, when
6    you told me Mr. Cook is unlikely to have any relevant,
7    discoverable material in his email, and you just confirmed to
8    me -- we could talk about the issue of ESI custodian in a
9    moment -- but you just confirmed to me that this email is
10   relevant on so many issues that you -- you don't even want to
11   talk about it anymore.  Did you lie to me?
12             MR. LERNER:  Certainly it was not my intent, Your
13   Honor, and I apologize that you feel that way.
14             The -- very quickly, the point that I have been
15   trying to make to explain why I don't want you to feel that way
16   is that we have been very consistent in pointing out that
17   sending an email to Mr. Cook --
18             THE COURT:  I'm not -- we'll get to that.
19             MR. LERNER:  Okay.
20             THE COURT:  The question isn't -- look, there's all
21   sorts of things that you can argue.  You could have argued on
22   June 10th to say:  You know what, Your Honor?  I wrote in the
23   brief that there is -- his email is unlikely to have relevant,
24   discoverable information; you know, there is this email,
25   unsolicited from Mr. Lamego, that, you know, came in, I guess
```

30

1    that's relevant, but here's the reasons why that doesn't make

2    him and Mr. Cook a proper ESI custodian.  You didn't say that.

3    And to the extent you think that I'm scouring files --

4         **MR. LERNER:**  No.

5         **THE COURT:**  -- for -- for --

6         **MR. LERNER:**  I do not.

7         **THE COURT:**  -- when you tell me --

8         **MR. LERNER:**  I do not.

9         **THE COURT:**  -- there is unlikely to have relevant,

10   discoverable information, and this email is in there, separate

11   and apart from whether he's an appropriate discussion, and you

12   knew about it, and you told me:  No, nothing relevant or

13   discoverable; unlikely to have anything relevant and

14   discoverable in his email.  You sat there when I said --

15   because I'm relying on you and your four or five colleagues

16   that signed that brief -- that this is a close call.  But I'm

17   relying on that statement to deny the motion, and you didn't

18   say:  By the way, there is this other thing out there.  And

19   they couldn't tell me.  Because they heard me, and they heard

20   me when I talked about protective orders and what they mean.

21   They knew about it from a protective order.  They couldn't tell

22   me in the context of this case.  And you sat there and let it

23   all go by like it didn't exist.

24        So, before we get to the appropriateness of the

25   custodian, I want to get -- since we've now gone down this

31

 1  road, I want to get to the bottom of this.  Do you still

 2  contend -- and I noticed from your papers you no longer say his

 3  email is unlikely to contain discoverable, relevant

 4  information.  It now says it's unlikely to contain discoverable

 5  non-duplicative information.  So, that tells me that you

 6  recognized that you were not completely candid with me on June

 7  10th.  And we can get to your other arguments, but how am I

 8  supposed to trust anything you say now?

 9          **MR. LERNER:**  I apologize, Your Honor.  As I said

10  earlier, the way that we understood the argument here and the

11  issues is, did he have information that made him a proper

12  custodian.

13          **THE COURT:**  Okay.  That's not what you wrote, and I

14  was at the hearing --

15          **MR. LERNER:**  I --

16          **THE COURT:**  -- and you were at the hearing, and I

17  made it very clear that there was a careful balancing going on

18  here, and that the plaintiffs' showing was not particularly

19  strong about specific contacts.  There was references to public

20  statements about Mr. Cook saying he wanted the future of Apple

21  to be and the health -- the health monitoring field, and the

22  statements around the timing and conversations and meetings

23  with Mr. O'Reilly, but that that didn't really show a lot of

24  relevance to our dispute here and in connection to it.

25          And on your side, you didn't show me any burden, and

32

```
1   so it was a close call, but I'm going to take you at your word

2   when you tell me as an officer of the Court it's not likely to

3   have any relevant discoverable information.  And to hear that

4   you knew about this October 2nd, 2013, letter at the time you

5   made that representation, and assured me that you understood

6   that that's what I was relying on, and to hear as we sat here

7   today the various myriad ways in ways that letter is relevant

8   to the issues in this case, I'm not sure what to do with that.

9            But let's move on.  You want to tell me something.

10  Do you now concede that that representation was, let's just say

11  not entirely accurate, and that there is reason to believe --

12  in fact, there is -- you've now conceded that there was at

13  least at one time relevant information in Mr. Cook's email?

14           MR. LERNER:  I understand your point, Your Honor, and

15  I apologize --

16           THE COURT:  I'm not making a point.  I'm asking a

17  question.  Can we move past that?

18           MR. LERNER:  Yes.

19           THE COURT:  Is it now the state of play that we can

20  start from this spot, where we couldn't start from last time.

21  I now have evidence in front of me that at least at one time

22  Mr. Cook had relevant information in his email strings.

23           MR. LERNER:  Yes.

24           THE COURT:  All right.  Make whatever further

25  argument you want to make.
```

33

1          **MR. LERNER:**  Two very quick points.

2          **THE COURT:**  I don't want you to be rushed.  Take as

3     much time as you want.

4          **MR. LERNER:**  I understand Your Honor's point so far.

5     When we briefed this throughout, and Your Honor just raised,

6     for example, the meeting with Mr. O'Reilly, that was a meeting.

7     We didn't say they didn't meet.  To the contrary.  We went and

8     got a declaration from Mr. O'Reilly about the meeting with

9     Mr. Cook.

10         **THE COURT:**  And as you heard, I'm not talking about

11    that.  I found that insufficient before.

12         **MR. LERNER:**  And what we had when we looked at this

13    email isn't even a meeting.  We have an email that comes in.

14    He forwards it, and as far as we can tell, has nothing else to

15    do with it.  And then, in order to make sure, and give the

16    Plaintiffs every opportunity we can to test this theory that

17    Mr. Cook knew anything about this, we said, on each of these

18    documents actually, we'll make the people involved custodians.

19    So, this was forwarded to Jeff Williams.

20         **THE COURT:**  What day did you offer Jeff Williams as

21    an ESI custodian?

22         **MR. LERNER:**  I think as they pointed out, it was

23    right before one of our briefs.

24         **THE COURT:**  Maybe the day before your opposition?

25         **MR. LERNER:**  I think that's what -- that's what was

34

1  said in the papers, and if that's so, that's accurate.

2          **THE COURT:**  And why should they take your word that

3  that's going to, in your words, "put the matter to bed"?

4          **MR. LERNER:**  That was one of many people who -- to

5  whom we said, let's make them a custodian so you can test this

6  theory.  That is who Tim Cook in the first instance forwarded

7  this to.

8          And by the way, when we -- when we went and looked,

9  and provided information about his emails, there was not, as

10 far as we can tell, not follow-ups until November.  And not to

11 involve Mr. Cook as we saw.

12         Now, on the second point where they say --

13         **THE COURT:**  When you say you investigated the email

14 chain, did you ask Mr. Cook?

15         **MR. LERNER:**  We have not asked Mr. Cook.

16         **THE COURT:**  Okay.

17         **MR. LERNER:**  And again, that goes, I think, to the

18 point I was trying to make.  And I understand Your Honor's

19 response to it which is, if in every instance where somebody

20 sends Mr. Cook an unsolicited email, and he forwards it to

21 other people to deal with, we have to go talk to him or review

22 his emails, that's not a workable standard.

23         **THE COURT:**  Well, when you make a representation that

24 an email account is not likely to have relevant information at

25 a time you know and knew that it did, I'd suggest, if you're

35

1    going to come back and say, "Oh, well, never mind, this was

2    never followed up on".

3           In that situation, when your credibility is now at

4    issue, maybe you should ask, or ask someone, and say, and this

5    is what you stated in your declaration at Paragraph 7 in

6    connection with the opposition, "I attest that a reasonably

7    diligent search did not yield any indication that Tim Cook ever

8    responded to or substantively commented on this email chain".

9    That doesn't mean that there isn't other information in his

10   email or that there isn't other potential information in the

11   question as -- well.

12          That's a very narrow statement.  "Oh, well, we

13   couldn't find that Mr. Cook further commented on this email

14   chain".

15          What about other email chains?  Did you ask him?

16   Apparently not.

17          **MR. LERNER:**  We --

18          **THE COURT:**  And we're starting from a kernel that

19   didn't exist at the last hearing that now exists, and you have

20   said a couple of times "unsolicited email".  Well, fine.

21   Unsolicited as to Mr. Cook, but at least according to the

22   email, Mr. Lamego had been contacted by two people from Apple.

23          So, it's not, as you put in your opposition, a

24   statement from customers that email Tim Cook, and he didn't

25   respond to.  It's unsolicited in the sense that Mr. Cook didn't

36

1   ask for it, but people from Apple contacted Mr. Lamego, and he

2   dealt directly with Mr. Cook.  Why did he deal directly with

3   Mr. Cook?  Well, maybe there's a -- we're now getting into

4   Mr. Lamego's head, but maybe there's a bit of an inkling in

5   that last second to last paragraph.  "Please keep this

6   confidential".  He's going to the top.

7          And you indicated, and your papers indicated, that

8   Mr. Cook, "Oh, he just forwarded it on for other people,

9   without any comment".

10         I'm going to tell you, just like I said, and I quoted

11  Bob Dylan last time, that I don't need a weather man to know

12  which way the wind blows.

13         I'm going to go out on a limb, and we do have an

14  Apple representative in court.  I'm going to go out on a limb

15  that if Mr. Cook got an email at 12:53 a.m. and forwarded it to

16  the head of HR and the head of the, what is it, the Health

17  Sciences Division, at what was it, like 7:00 a.m.  I mean, we

18  don't even have a minute of 9:00 to 5:00 business time before

19  that was sent out.

20         Now, obviously, Apple doesn't necessarily work on a

21  9:00 to 5:00 business, but you're talking about that's an

22  immediate turn around, and it's not just going to an assistant

23  or going to someone.  It's going to the head of HR and the head

24  of the relevant department.  So, he did put thought into it.

25  He didn't just slough it off.  He picked two critical people

37

1    that bear directly on what Plaintiffs are alleging, and he did

2    it almost instantaneously considering the time it came in.

3          And one of those people almost instantaneously

4    reached back out to Mr. Lamego within a couple of hours.  I am

5    very curious about whether there was any other communication

6    with Mr. Cook about this issue.  I'm sure the Plaintiffs are

7    interested were there emails to other people.

8          So, to say, "Well, we didn't find him commenting on

9    this email thread", doesn't answer the question and doesn't

10   really get to it other than it -- the fact that it's there

11   makes one of the legs that underpinned my prior ruling go away.

12   And it's more than just a customer sending an email that he has

13   his assistant look at.

14         And I'll say something else.  Again, this comes from

15   my time as a prosecutor.  The metadata on this is going to be

16   important because your client may say, "You know what, Tim Cook

17   doesn't even monitor his email account, the general email

18   account.  He's got an assistant that does that.  An assistant

19   made this decision".  Maybe so.  I don't know.  But I'd be

20   interested to know what came in before, what came in after.

21   And I'm not saying that's discoverable, but what I'm saying is

22   potentially where this goes, if there's an argument that

23   Mr. Cook didn't forward it, someone else did, well, they may

24   have the ability and be approved to make an ability to test

25   that.

38

1           But this is an important email.  What happened to it

2    is important, and it suggests to me, reasonable cause to

3    believe that there -- that first of all, Mr. Cook is

4    knowledgeable about the facts, because he didn't just send it

5    to his assistant and say, "I don't know what this is, deal with

6    it".  And sometimes saying nothing is saying a lot.  What is

7    it, Cool Hand Luke?  Sometimes nothing is a pretty cool hand?

8           Sometimes when the CEO of the world's largest company

9    forwards, without comment, an email about an unsolicited email

10   from the chief technology officer from a competitor or

11   potential competitor to the head of HR and the head of the

12   Health Sciences Division, that speaks loudly, even if there

13   isn't anything written in text in the email.

14           So, please continue.

15           **MR. LERNER:**  I do not need to continue to test your

16   patience, Your Honor.  As I can tell, so only --

17           **THE COURT:**  I have -- listen, you're not testing my

18   patience.

19           **MR. LERNER:**  -- the only two points I would clarify

20   is that I tend to read my email sometimes around 8:00 or 9:00

21   in the morning.  That's what Mr. Cook did based on the

22   documents we saw here.  I just want to clarify that point.

23           **THE COURT:**  Can I get the exact time?  When was the

24   exact time --

25           **MR. LERNER:**  8:50 a.m.

1       **THE COURT:**  -- because again, it might be important

2  for the metadata to see when it was opened; how quickly it was

3  sent out.

4       What was the exact time he forwarded it to

5  Mr. Williams and --

6       **MR. LERNER:**  8:50 and 57 seconds Pacific time.

7       **THE COURT:**  All right.  And it was sent at 1:50 a.m.

8       **MR. LERNER:**  Right.  So --

9       **THE COURT:**  So, we're -- we didn't even get to

10 business hours.  You're right.  Maybe he does it first thing in

11 the morning, but again it shows you something.

12      **MR. LERNER:**  I just --

13      **THE COURT:**  You check your email in the morning.  I

14 check my Court docket in the morning.  Important things, I send

15 something to Maria right away.  Oh, we've got to deal with

16 this.  We've got an ex parte from -- well, leave it at that.

17 We've got to deal with this right away.

18      Less important things, they kind of filter out

19 through the day.  Maria is nodding her head.  We deal with them

20 when we deal with them, but important things, boy, we send them

21 out right away, and we make sure we get it to the right person

22 right away.

23      So, when Judge Carter or Judge Selna sends me an

24 email, even without comment, I'm getting back to him, or Judge

25 Staton right away because, boy, that's important.

40

1          So, go ahead.

2          **MR. LERNER:**  I, like I said, I do not have more to

3    take your time with this other than that the two people you

4    mentioned, Mr. Cook tends to interact with other senior people.

5    So, he forwarded it to senior people, and as you can tell from

6    the follow-up, some of those people, it sounds like already

7    knew about the discussions and there were discussions in place.

8    So, there was -- there was follow-up.

9          These are all factual issues.  I understand Your

10   Honor's point that you would like to know more about them.  We

11   understand your tentative.

12         I think I've made my point about the standard for

13   making him a custodian.  I understand that's not carrying

14   water, and I understand your other points.

15         **THE COURT:**  Well, do you have anything you want to

16   add from a legal standpoint?  Have I said anything wrong from a

17   legal standpoint about what the right standard is?

18         **MR. LERNER:**  For making him a custodian?

19         **THE COURT:**  Yeah, what's -- what do you contend the

20   standard is?

21         **MR. LERNER:**  I contend the standard should not and

22   cannot, and I don't have a case specific to these facts because

23   we have not seen one, but it should not be enough to make the

24   CEO of a company a custodian because he receives and forwards

25   an email.

41

1          **THE COURT:**  All right.  You cited two cases in your

2     opposition that dealt with the ESI custodian issue.  All the

3     other cases --

4          **MR. LERNER:**  Yep.

5          **THE COURT:**  -- deal with the issue of the timing and

6     appropriateness of the requests for -- of the motion for

7     reconsideration under the rules.  Is there anything you want to

8     tell me about those cases that you think should guide my

9     analysis here?

10         **MR. LERNER:**  No, Your Honor.  I'm sure you've already

11    reviewed them and read the papers, as you've said.  So I,

12    again, don't need to take more of your time.

13         **THE COURT:**  Well, I want -- listen.  Tell me if

14    there's anything, and I'm going to point out from my reading.

15    You're right.  I did read them, the *BlackBerry* case, and that

16    was Judge Stevenson in L.A. from 2019, and the citation is 2019

17    WL 4544425.

18         I don't know that that helps your cause because

19    although Judge Stevenson denied a motion, and it relates to

20    Mr. Mark Zuckerberg from Facebook, denied a motion to require

21    that he search -- or that Facebook search his email strings as

22    to four categories or four search issues.

23         She had earlier had required Facebook to conduct a

24    search of Mr. Zuckerberg's email for a particular issue that

25    she found relevant, and then because -- it was largely because

42

1    it was a patent case, patent infringement case, there was no

2    showing that Mr. Zuckerberg knew anything about the patents at

3    issue, those other patent-related ESI terms were not required

4    to be searched, but he was required -- Facebook was required to

5    search as to an issue which he did have knowledge.

6         MR. LERNER:  And we cited that case, to be clear,

7    Your Honor, because the proposed order here that you've been

8    asked, is not just to run the terms that the parties have

9    negotiated on Mr. Cook --

10        THE COURT:  But what I'm -- but this is a very

11   different situation.  And if this were just a patent case,

12   we're not dealing with just a patent case.  We're dealing with

13   the very issue that that letter goes -- that email goes to the

14   heart of as it relates to the trade secret case.

15        MR. LERNER:  And --

16        THE COURT:  So, the relevant information that at

17   least at one time was in his email string, and that again, by

18   not speaking, he spoke loudly; by how quickly he forwarded it

19   and to whom he forwarded it to shows that he did have some

20   knowledge and did -- and there is reason to believe that

21   there'd be more information in his emails.

22        And then the other case is the _Lauris versus Novartis_

23   from 2016.  That's Stan Boone's case in the Eastern District.

24   And he also denied an ESI request for four senior executives of

25   Novartis, but first of all said, and I'm quoting from Star

43

1   Three of the Opinion, "That the Court is not persuaded that the

2   Apex Doctrine applies to discovery at issue", and then found

3   that the discovery sought was not proportionate to the needs of

4   the case noting that it would double the costs of the discovery

5   that had taken place thus far.

6          So, he had information from the Defense about what

7   the costs would be to do these four, and I'm using the term

8   loosely, Apex ESI searches, whereas I have none.  And I do find

9   that it is relevant, and there is reason to believe that

10  material information would be contained in the email thread,

11  and I'll note Judge Stevenson also did not apply, and expressly

12  said she was not applying an Apex Doctrine approach to the

13  issue, but was instead just relying on relevance and

14  proportionality.

15         And based on the information that I have, I find that

16  there is reason to believe that there's relevant information

17  and that I, having no countervailing facts, and the only thing

18  that I relied on last time, which was counsel's representation,

19  which turned out not to be true, from a proportionality

20  analysis, I find that -- or I am tentatively finding that the

21  -- Mr. Cook being designated as an ESI custodian is

22  proportional to the needs of the case, as Defendant has not

23  shown me any evidence otherwise.

24         Anything else, Mr. Lerner?

25         **MR. LERNER:**  No, Your Honor.

EXCEPTIONAL REPORTING SERVICES, INC

44

1          **THE COURT:**  Mr. Re or Mr. Powell, any rebuttal or

2    response?

3          **MR. RE:**  Nothing, Your Honor.

4          **THE COURT:**  So, I'm going to ask this.  I'm going to

5    hold off on issuing a ruling.  I'm not sure that -- I'm not

6    saying he isn't, I'm not saying he is.  I'm not sure that the

7    same search terms that might apply to the head of R and D or

8    the head of some of the other issues, would necessarily apply

9    to Mr. Cook in a search of his email, as I know there's this

10   issue of efficient infringement.

11         I'm not making a ruling on it, but I want there to be

12   some discussion among the parties about whether this -- whether

13   the search terms can be agreed to or whether I need to make a

14   finding.  I'll hear from you on that, Mr. Re.

15         **MR. RE:**  We did propose a very, very, very few terms

16   for Mr. Cook.

17         **THE COURT:**  Is this in the proposed order?

18         **MR. RE:**  It is in, actually in a letter to Mr. Brian

19   Andrea at Gibson Dunn.  And it's at Exhibit 22.  Oh, it's

20   Document 475-2, filed July 19th this year, and its Page 46 of

21   47; otherwise Exhibit 22 at 190.

22         And you'll see at the very, very bottom of that page

23   just how limited the terms are for Mr. Cook compared to

24   everybody else.  And so, you're right.  We have already had

25   correspondence setting forth a very, very targeted number of

45

1    search terms for Mr. Cook.

2         THE COURT:  All right.  So, for the record, those

3    search terms are, "Masimo, or Cercacor, or Kiani, or Diab" is

4    one Boolean search.  A second one is, "Lamego, or Marcelo, or

5    O'Reilly, or O'Riley", spelled alternatively.  The third one is

6    the phrase, "efficient infringement".  And the last is,

7    "healthcare, or embedded patient or medical closed in bed

8    (phonetic) within five of monitor, with an end Boolean change

9    allotment".  Those are the four terms.

10        Tell me what you think about those terms, Mr. Lerner.

11        MR. LERNER:  We think, as we briefed, that "efficient

12   infringement" has nothing to do with this case.  It feels like

13   it's plucked out of the media.

14        The last one on its face is not as described.  Asking

15   us to look through all of Tim Cook's emails for healthcare

16   is --

17        THE COURT:  All right.  Mr. Re.

18        It sounds like the main objection is to the final

19   two, so let's focus on those two.  Is there any connection that

20   you found in discovery thus far to the phrase "efficient

21   infringement" as it relates to this case?

22        MR. RE:  I will defer to Mr. Powell, who is the

23   author of that letter.

24        MR. POWELL:  Thank you, Your Honor.  I'm not aware of

25   any documents in discovery using that phrase that we've

46

1    received yet.  The phrase came out, and you'll see this in our

2    reply brief, is the issue is that there's been statements,

3    public statements about this is a practice at Apple known as

4    efficient infringement --

5           THE COURT:  I've seen it, and there was back and

6    forth about whether the person who made the allegation actually

7    was who, in terms of his position at Apple, was who he claimed

8    to be.  And my memory is whoever wrote the response to that

9    said something to the effect of Apple doesn't do that and

10   doesn't believe in that.

11          MR. POWELL:  Right, Your Honor.  So, Mr. Cook

12   indicated that he does not think Apple does that and so, our

13   point is this is just a search term.  If Apple doesn't do that,

14   then it shouldn't have any hits.  And if it does have hits, it

15   might be Mr. Cook saying, "Yeah, we definitely don't do

16   efficient infringement, that's not our practice".  You would

17   think that Apple would want to produce such documents.

18          THE COURT:  All right.  And tell me about the other

19   category that seems like it has the potential in using the

20   phrase "patient within five of monitor or monitoring"

21   considering the nature of some of Apple's products that that

22   conceivably could result in a large number of documents that

23   have nothing to do with the claims in this case.

24          MR. POWELL:  Yeah, I don't know how many documents it

25   would result on.  I think the issue here is to at least run the

47

1    search terms and get hit counts.  If the search terms don't

2    result in many documents, then there's no burden.  If the

3    search terms result in, you know, a million documents or

4    something, just for Mr. Cook, then of course we can -- I'm

5    happy to have that conversation with Mr. Lerner.

6          THE COURT:  All right.  Anything further on this

7    issue, Mr. Lerner?

8          MR. LERNER:  The only other thing that I'll add is,

9    particularly for Mr. O'Reilly obviously, you're talking about

10   an Apple employee.  So, just the name doesn't limit it to this

11   case.  You're talking about every communication with a

12   gentleman who was -- whose title at one point was chief medical

13   officer.  So, there's no limit there.

14         THE COURT:  Let me ask you, if I give you guys -- and

15   I understand you object and you don't agree with my ruling, but

16   if I give you guys 10 minutes, do you think you can narrow

17   this, or at least narrow some of it, because I am cognizant to

18   the potential -- because we're talking about -- what's the

19   timeframe we're talking about?

20         MR. POWELL:  We're talking roughly 2013 to present.

21         THE COURT:  Yeah, I'd like to see whether it's

22   something that you folks can narrow a little bit, but I'm not

23   making a ruling on whether that's inappropriate as stated, but

24   it might be worthwhile to, you know, any email for an eight-

25   year period -- is Mr. O'Reilly still at Apple?

48

```
 1          MR. LERNER:  Yes, Your Honor.  And --

 2          THE COURT:  Any email that comes up with the name

 3   "O'Reilly", which seems to be what Bullet Point 2 would

 4   authorize, seems likely to, even though we don't have the

 5   testing, seems likely to pull up an untoward and unnecessary

 6   number of documents.

 7          MR. POWELL:  Well, Your Honor, I would be happy to

 8   have that conversation.  I would just only note that what we've

 9   done before is we run the search terms and get hit counts --

10          THE COURT:  I hear you.

11          MR. POWELL:  -- okay.

12          THE COURT:  And the problem with that here is, we're

13   trying -- I'm cognizant of a lot of issues, and to the extent

14   you can try to narrow things a little bit now and see whether

15   there's a way that you won't have to run it again, that way you

16   can get to -- hey, nothing is going to be perfect.  You're not

17   necessarily going to capture everything you want, and you're

18   probably going to capture some things that they don't want

19   captured that are going to be produced.  And I don't mean that

20   in a nefarious way.

21          Let's try to work it out.  Let's take five minutes.

22   Just give me five minutes to talk and see if the parties can

23   first talk amongst themselves, and then talk with each other to

24   see if there's a way to narrow these in a way that is less

25   objectionable.  And I'm not saying, again, that I'm not
```

49

1    ultimately going to order it.

2            And I'm just going to -- just going to sit here for

3    five minutes, and if you folks want to step outside, you may.

4        **(A five-minute recess was taken)**

5            **THE COURT:**  All right.  Counsel have returned.  Do

6    you need a minute?

7            **MR. POWELL:**  No.  You may not like what we're going

8    to say, but --

9            **THE COURT:**  Okay.  I don't --

10           **MR. POWELL:**  -- I think we both thought we needed to

11   have consultation with the rest of the people on our teams.  We

12   didn't feel that we could do the kind of job on the fly here at

13   the courthouse because we all rely on other people, and we

14   would kindly request if we could have additional time to --

15           **THE COURT:**  What's going -- obviously, we used to

16   meet regularly, and we don't anymore.  What's going on in your

17   case?  Are there any deadlines or any reasons that this needs

18   to be expedited?

19           **MR. POWELL:**  No, and in fact, we even postponed this

20   hearing a few weeks so that we both could be here.  So, there

21   -- the answer is no.

22           **THE COURT:**  How much time do you think you need to

23   talk?  And again, I'm not expecting Apple to agree with the

24   ruling, but to the extent there are things that are less

25   objectionable that can be worked out, I want to provide that

50

1    opportunity.

2            How much time to you think you need from Plaintiffs'

3    standpoint just to consult with your team and make a

4    presentation to Apple?

5            **MR. POWELL:**  A day or two.

6            **THE COURT:**  So, by Monday.

7            **MR. POWELL:**  Monday.

8            **THE COURT:**  Okay.  Monday, the 20th -- I'm sorry, the

9    27th.

10           And Mr. Lerner, assuming you get a proposal from

11   Apple by Monday, the 20th, is that something you can respond to

12   -- I'm sorry, the 27th.

13           **MR. LERNER:**  Proposal on the 27th.

14           **THE COURT:**  Monday the 27th.

15           **MR. LERNER:**  Yes, Your Honor.

16           **THE COURT:**  All right.  So, what I'll do is I'm going

17   to hold off on a written ruling at least until Monday, the

18   27th, and I'll direct Plaintiffs' counsel to file just a status

19   report if there's any change to the request by nature of search

20   terms for Mr. Cook's email, but my tentative will be the order

21   that the motion will be granted.

22           And in terms of the timing, Mr. Lerner, Plaintiffs

23   ask for this to be done within -- to be completed, including

24   production, within 14 days.  What's an appropriate time from

25   your perspective?

51

1          **MR. LERNER:**  It will obviously depend a little bit on

2     -- not a little bit, a lot on the search terms, just in terms

3     of volume and review.  And as Your Honor has noted before,

4     which should surprise nobody, it takes additional review of

5     Mr. Cook's emails, just given the importance.

6          If we could get 30 days at the very least, that is

7     much more workable for us.  It may, as I said, we may need more

8     time just given the volume, if it turns out to be a lot more.

9          **THE COURT:**  All right.  Is there any reason why 30

10    days -- why a faster time period is required, Mr. Re or

11    Mr. Powell?

12         **MR. POWELL:**  No, Your Honor.

13         **THE COURT:**  All right.  So, here's what we're going

14    to do.  The order is going to be, the parties are directed to

15    meet and confer, file a -- Plaintiff is directed to file a

16    status report as of September 27th regarding requested terms

17    following that meet and confer for the ESI search.  And the

18    production will be ordered to be made by October 27th.  And if

19    more time is needed, the parties can agree among themselves.

20    An if the parties can't agree, they can return this one issue

21    back to me on that.

22         Is there anything further with respect to this motion

23    on behalf of Plaintiffs?

24         **MR. POWELL:**  Nothing further, Your Honor.

25         **THE COURT:**  And on behalf of Defendants?

52

1          **MR. LERNER:**  No, Your Honor.

2          **THE COURT:**  All right.  Thank you.  We're adjourned.

3      **(Proceeding adjourned)**

53

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    September 29, 2021

Signed                                              Dated


*TONI HUDSON, TRANSCRIBER*

# EXHIBIT 31

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Parker, Kenneth G. |
| **Cc:** | Andrea, Brian; *** Apple-Masimo; Masimo.Apple; Selwyn, Mark; Passamaneck, Nora Q.E. |
| **Subject:** | RE: Masimo v. Apple - SM Order No. 2 |
| **Date:** | Friday, December 24, 2021 4:17:58 PM |

Ken,

We are in receipt of your email extension request that you sent at 7:53pm on December 23.  You are correct that we had not had an opportunity to consider your request.  We are surprised that you decided to reach out to Judge Guilford directly on Christmas Eve without giving us any opportunity to respond.

Apple's repeated lengthy requests for extensions have already made the existing schedule untenable.  We filed these motions more than two months ago on October 12 and October 19.  After a delay in the hearing, Judge Guilford issued a tentative order on December 2 for a December 3 hearing, which would have required Apple to respond within 7 days (by December 10).  Apple requested 14 days to respond and stated "if that were December 20th, that's fine with us.  I mean, I don't know when your Honor would finish the order, but if it's – you know, if it came out on Monday, that would be December 20th."  12/3/2021 Tr. at 67-68.  Judge Guilford granted Apple's request over Masimo's objection, issued his order on December 10, and gave Apple 14 days to respond.  With the December 24 holiday, that gave Apple until December 27 to respond—already 7 days longer than Apple requested.

Apple now requests an additional three-week extension until January 18—more than four weeks after Apple's own requested deadline.  That would make Apple's deadline more than three months after Masimo filed its motion.  Apple has also sought and successfully obtained other lengthy extensions, including seven weeks to produce documents that Judge Guilford ordered Apple to produce.

We have accommodated many of Apple's requested extensions in the past and wish we could continue to accommodate such requests in the future as a professional courtesy.  However, because you made clear at the last hearing with Judge Guilford that Apple would not agree to extend the case schedule, you leave us with no option but to decline this request.  If Apple has changed its position regarding the overall case schedule, we would be happy to discuss a reasonable extension for this request.

Best regards,
Adam


**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Parker, Kenneth G. <KParker@gibsondunn.com>

**Sent:** Thursday, December 23, 2021 7:53 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Selwyn, Mark <Mark.Selwyn@wilmerhale.com>; Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Subject:** Re: Masimo v. Apple - SM Order No. 2

Adam,

We are requesting an extension of time to serve the declaration on the subjects described on pages 12, lines 24 to page 14, line 4 and page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021.  Apple needs more time to collect additional information.  In light of the holidays, the extension we are seeking is to January 18, 2022, which is eleven business days from Apple's return from its holiday shutdown. Please let us know whether Masimo opposes.

**Ken Parker**
Partner

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
Kparker@gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

EXHIBIT 32

| From: | Parker, Kenneth G. |
| --- | --- |
| To: | Andrew Guilford |
| Cc: | Heidi Adams (heidi@judicatewest.com); Masimo,Apple; *** Apple-Masimo |
| Subject: | Masimo v. Apple; Joint Communication; Case No. 8:20-cv-00048-JVS-JDE (C.D. Cal.) |
| Date: | Tuesday, November 9, 2021 6:42:42 PM |

Dear Judge Guilford,

Following up on your comments and requests during the October 26, 2021 call, the parties have the following response and thoughts.  This email is a joint email reviewed and approved by counsel for all parties.

1. **Assistance of Ms. Kelleher**.  The parties consent to Your Honor's use of Ms. Kelleher as you normally would to assist you with respect to all aspects of, and tasks in, this matter.

2. **Waiver of Appeal**.  While both parties can envision circumstances in which they might jointly notify you of a waiver of appeal, the parties prefer to approach that issue on a motion by motion basis, and have no proposal for a set rule.

3. **Length of Orders**.  The parties have no specific feedback or opinion on the length of Your Honor's orders.

4. **Informal Conferences.**
   - **Apple's Position**: While Apple could envision scenarios in which an informal conference could be useful on discrete issues, Apple does not wish to adopt an informal conference procedure as a matter of right for either party at this time.
   - **Masimo's Position**: Masimo believes the moving party should have the right to request an informal conference if they believe it would be helpful.

5. **Hearing Dates**.  There are currently two matters fully briefed before Your Honor: (a) Plaintiffs' October 19, 2021 Motion to Compel regarding Ms. Goldberg's Rule 30(b)(6) Deposition; and (b) Plaintiff's October 8, 2021 Motion to Compel regarding Valuation, Feature and Survey Documents.

   1. **Apple's Position**: Apple respectfully requests a hearing on those motions on November 11, between 10 a.m. and noon and 4 p.m. and after; November 16, 2021 between 3 p.m. and 5 p.m. or November 18, 2021 between 2 p.m. and 4:30 p.m.

   2. **Masimo's Position**: Masimo does not believe a hearing is necessary on either of these motions and would consent to you exercising your discretion to decide these disputes without hearings.  *See* Dkt. 470 (Order Appointing Special Master) at 2.  If you believe a hearing would be helpful, Masimo is available at all of the times suggested by Apple.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to

advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

EXHIBIT 33

| | |
|---|---|
| **From:** | Parker, Kenneth G. |
| **To:** | Adam.Powell |
| **Cc:** | Andrea, Brian; *** Apple-Masimo; Masimo.Apple; Selwyn, Mark; Passamaneck, Nora Q.E. |
| **Subject:** | Re: Masimo v. Apple - SM Order No. 2 |
| **Date:** | Thursday, December 23, 2021 7:53:53 PM |

Adam,

We are requesting an extension of time to serve the declaration on the subjects described on pages 12, lines 24 to page 14, line 4 and page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021.  Apple needs more time to collect additional information.  In light of the holidays, the extension we are seeking is to January 18, 2022, which is eleven business days from Apple's return from its holiday shutdown. Please let us know whether Masimo opposes.

**Ken Parker**
Partner

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
Kparker@gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

EXHIBIT 34

| From: | Parker, Kenneth G. |
|---|---|
| To: | Heidi Adams; Hon. Andrew Guilford |
| Cc: | Adam.Powell; Andrea, Brian; Bridges, Jonathan C; Brzozowski, David; Buroker, Brian M.; Cornillie, Henry H.; Do, Kim; Earnest, Tyler; Evanson, Blaine H.; Kaounis, Angelique; Lam, David; Lerner, Joshua H.; Lo, Jason; Lyon, H. Mark; McDermott, Shannon C.; Powell, Nathan; Rosenthal, Brian A.; Samplin, Ilissa; Satanove, Doran J.; Schuemann, Susanna G.; Semendyai, Vladimir J.; Shapiro, Russell O; Vaden, Olivia L.; Masimo.Apple; Daniel.Hughes; Joe.Re; Steve.Jensen; Ben.Katzenellenbogen; Perry.Oldham; Stephen.Larson; Mark.Kachner; mlewis@lewisllewellyn.com; WH Apple-Masimo Service List; Peter.Toller |
| Subject: | Request for Extension re Order No. 2 |
| Date: | Friday, December 24, 2021 12:02:49 PM |
| Attachments: | 2012-12-09 A279845 FINAL Discovery Order No. 2 (002).pdf |

Dear Judge Guilford,

We write on behalf of Apple to request an extension of time to January 18, 2022 to serve the declaration on the subjects described on pages 12, lines 24 to page 14, line 4 and required on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order"). The declaration is currently due December 27, 2021 because Friday, December 24, 2021 (14 days after service of the Order) is a legal holiday. (See F.R.Civ.Proc. 6(a).) The Order is attached for your convenience. Apple personnel have been working diligently to address the issues identified in the Order, but have not yet completed that work. Apple believes that the extension to a date that is 11 business days after the Apple business shutdown that occurs December 24 to January 2 will ensure a more productive disclosure of information.

In light of the holidays, we wanted to get this request to you as soon as we knew it was needed, and are happy to provide more information if requested or discuss via telephone or videoconference if and as you desire. In addition, I did advise Mr. Powell and colleagues last night of our request, but they haven't yet had the chance to provide their position on this request.

Thank you for considering Apple's request.

**Ken Parker**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT 35

| From: | Andrew Guilford |
|---|---|
| To: | Parker, Kenneth G. |
| Cc: | Heidi Adams; Andrea, Brian; Bridges, Jonathan C; Brzozowski, David; Buroker, Brian M.; Cornillie, Henry H.; Do, Kim; Earnest, Tyler; Evanson, Blaine H.; Kaounis, Angelique; Lam, David; Lerner, Joshua H.; Lo, Jason; Lyon, H. Mark; McDermott, Shannon C.; Powell, Nathan; Rosenthal, Brian A.; Samplin, Ilissa; Satanove, Doran J.; Schuemann, Susanna G.; Semendyai, Vladimir J.; Shapiro, Russell O; Vaden, Olivia L.; Masimo.Apple; Daniel.Hughes; Joe.Re; Steve.Jensen; Ben.Katzenellenbogen; Perry.Oldham; Stephen.Larson; Mark.Kachner; mlewis@lewisllewellyn.com; WH Apple-Masimo Service List; Peter.Toller; Jenna Kelleher; Adam.Powell |
| Subject: | Re: Apple's Request for Extension re Order No. 2 (Amended) >>> MASIMO |
| Date: | Sunday, December 26, 2021 9:13:29 AM |

On receiving the Sunday, 12/26 10:41 am CST email below, I ORDER that Apple do what it says it is able to do in this passage:

<< Apple is able to meet tomorrow's deadline to provide information on the subjects described on pages 12, lines 24 to page 14, line 4 of Order No. 2. >>

I understand that this now leaves only the following unresolved issue needing immediate resolution.

<< Apple requests an extension of time to respond **only** as to the two topics raised on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order"). >>

A three day extension is GRANTED on this unresolved issue only pending resolution. Mindful that it is Sunday, 12/26, I would welcome a very brief response, if any, by the end of business on Monday, December 27 about whether more than a three day extension on this unresolved issue is warranted.

The parties are urged to do what is necessary to avoid these types of disputes.

AJG

> On Dec 26, 2021, at 10:41 AM, Parker, Kenneth G. <KParker@gibsondunn.com> wrote:
>
>
> Dear Judge Guilford,
>
> Thank you for your response on December 24, 2021 regarding Apple's request for an extension and setting a time frame for opposing counsel to respond.  I am modifying Apple's request.  Apple requests an extension of time to respond **only** as to the two topics raised on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order"). Apple requests that it be permitted to provide a declaration as to those two topics (on page 15, lines 1-6 of Order No. 2) on January 18, 2021 instead of Monday.  Apple is able to meet tomorrow's deadline to provide information on the subjects described on pages 12, lines 24 to page 14, line 4 of Order No. 2.  For your honor's convenience, the two topics as to which Apple seeks more time are here:

> 1    Masimo's request for more information about Apple's non-email ESI search strategy is
>
> 2    GRANTED in that Apple's counsel is ORDERED to provide a sworn declaration to Masimo and the
>
> 3    Special Master within fourteen days of this Order stating, for each custodian, (1) the types of non-
>
> 4    email communication streams that Apple is searching and (2) whether any such search is limited to
>
> 5    that custodian's communications with particular other individuals, and who those other individuals
>
> 6    are. As Masimo acknowledged, Apple has otherwise partially addressed this aspect of Masimo's

Thank you in advance for considering Apple's request.

**Ken Parker**
Partner

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

On Dec 24, 2021, at 4:21 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

**[WARNING: External Email]**

Judge Guilford,

Mr. Parker emailed us to request this extension at 7:53pm last night (December 23). He is correct that we did not have a chance to consider or discuss his request internally before he made the request to you. While we would normally accommodate reasonable extensions (especially in view of the holidays), given Apple's stated position on the overall case schedule we cannot agree to this request. We filed these motions more than two months ago on October 12 and October 19. The December 2 Tentative Order originally imposed a seven-day deadline to respond (about December 10 depending on when the final Order issued). At the December 3 hearing, Mr. Parker asked for an extension of time to respond until December 20. See Tr. at 67-68. The final order issued on December 10 and gave Apple 14 days to respond. Because of the holidays, Apple's current deadline is December 27—seven days longer than Apple requested at the hearing.

Apple now asks for an additional three-week extension, which would make Apple's deadline more than 4 weeks after the December 20 deadline that Apple requested at the hearing. At the same time, Apple stated on the record that it would not agree to extend the schedule to accommodate its many lengthy extension requests. See Tr. at 65. Because of Apple's stated position that it will not agree to extend the case schedule, Apple leaves no practical option other than for Masimo to oppose this extension.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe** Martens

**From:** Andrew Guilford <andrewguilford@judicatewest.com>
**Sent:** Friday, December 24, 2021 12:55 PM
**To:** Parker, Kenneth G. <KParker@gibsondunn.com>
**Cc:** Heidi Adams <heidi@judicatewest.com>; Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Bridges, Jonathan C <JBridges@gibsondunn.com>; Brzozowski, David <DBrzozowski@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Cornillie, Henry H. <HCornillie@gibsondunn.com>; Do, Kim <KDo@gibsondunn.com>; Earnest, Tyler <TEarnest@gibsondunn.com>; Evanson, Blaine H. <BEvanson@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Lam, David <DLam@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; McDermott, Shannon C. <SMcDermott@gibsondunn.com>; Powell, Nathan <NPowell@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Satanove, Doran J. <DSatanove@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Shapiro, Russell O <RShapiro@gibsondunn.com>; Vaden, Olivia L. <OVaden@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Daniel.Hughes <Daniel.Hughes@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Ben.Katzenellenbogen <Ben.Katzenellenbogen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; mlewis@lewisllewellyn.com; WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>; Peter.Toller <Peter.Toller@knobbe.com>; Jenna Kelleher <jennak@judicatewest.com>; andrewguilford@judicarewest.com
**Subject:** Re: Request for Extension re Order No. 2 >>> MASIMO

Counsel,

I have received the email below that states:

<< I did advise Mr. Powell and colleagues last night of our request, but they haven't yet had the chance to provide their position on this request. >>


Mindful that it is Christmas Eve, I would welcome a very brief response, if any, by the end of business on Monday, December 27.


AJG


On Dec 24, 2021, at 2:03 PM, Parker, Kenneth G. <KParker@gibsondunn.com> wrote:

Dear Judge Guilford,

We write on behalf of Apple to request an extension of time to January 18, 2022 to serve the declaration on the subjects described on pages 12, lines 24 to page 14, line 4 and required on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order").  The declaration is currently due December 27, 2021 because Friday, December 24, 2021 (14 days after service of the Order) is a legal holiday. (See F.R.Civ.Proc. 6(a).)  The Order is attached for your convenience.  Apple personnel have been working diligently to address the issues identified in the Order, but have not yet completed that work.  Apple believes that the extension to a date that is 11 business days after the Apple business shutdown that occurs December 24 to January 2 will ensure a more productive disclosure of information.

In light of the holidays, we wanted to get this request to you as soon as we knew it was needed, and are happy to provide more information if requested or discuss via telephone or videoconference if and as you desire. In addition, I did advise Mr. Powell and colleagues last night of our request, but they haven't yet had the chance to provide their position on this request.

Thank you for considering Apple's request.

**Ken Parker**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT 36

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,   ) CASE NO: 8:18-CV-02001-JVS-JDE
                            )
            Plaintiffs,   )           CIVIL
                            )
    vs.                  )      Santa Ana, California
                            )
TRUE WEARABLES, INC, ET AL,   )    Thursday, June 24, 2021
                            )
            Defendants.   )


HEARING RE: NON-PARTY APPLE, INC'S MOTION TO QUASH SUBPOENA
[DKT.NO.282];

AND SEALING APPLICATIONS [DKT.NOS.280,289,291]


BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE



<u>APPEARANCES</u>:           SEE PAGE 2


Court Reporter:         Recorded; Digital

Courtroom Deputy:       Maria Barr

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 8365
                       Corpus Christi, TX 78468
                       361 949-2988



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**<u>APPEARANCES</u>:**


For Plaintiffs:            JOSEPH R. RE, ESQ.
                          Knobbe Martens Olson & Bear, LLP
                          2040 Main Street
                          14th Floor
                          Irvine, CA 92614

                          MARK D. KACHNER, ESQ.
                          Knobbe Martens Olson & Bear, LLP
                          1925 Century Park East
                          Suite 600
                          Los Angeles, CA 90067


For Moving Party:          ILISSA S. SAMPLIN, ESQ.
                          Gibson Dunn & Crutcher, LLP
                          2029 Century Park East
                          Suite 4000
                          Los Angeles, CA 90067

3

1          <u>Santa Ana, California; Thursday, June 24, 2021</u>

2                     <u>(Remote appearances)</u>

3                        <u>(Call to Order)</u>

4          **THE CLERK:**  Please remain seated, and come to order.

5   This United States District Court is now in session.  The

6   Honorable John D. Early, United States Magistrate Judge,

7   presiding.

8          **THE COURT:**  Good morning everyone.  We're calling the

9   case of Masimo Corporation, et al, versus True Wearables, Inc.,

10  et al; Case Number 8:18-cv-2001-JVS-JDE.

11         Let's have appearances from Counsel, starting with

12  Counsel for the Plaintiffs.

13         **MR. RE:**  Thank you, Your Honor.  For the Plaintiff

14  Masimo Corporation and Cercacor Laboratories, my name is Joseph

15  Re from the law firm of Knobbe Martens.  And to my left is my

16  partner, Mark Kachner.

17         **THE COURT:**  All right.  And on behalf of Debtor -- or

18  I'm sorry -- on behalf of moving party Apple Inc.

19         **MS. SAMPLIN:**  Yes.  Good morning, Your Honor.  On

20  behalf of a non-party, but moving party in this case, on the

21  Motion to Quash, Apple Inc., Ilissa Samplin from Gibson, Dunn &

22  Crutcher.

23         **THE COURT:**  All right.  Is there any appearance or

24  person here on behalf of any of the Defendants; True Wearables,

25  or the other Defendant, Mr. Lamego?

4

1          Seeing or hearing nothing.  It was noticed for today.

2  They are not required to be here if they don't find an interest

3  in it.

4          All right.  We're here for one substantive motion,

5  and that's Docket Number 282, non-party Apple's Motion to Quash

6  and/or for a protective order regarding a subpoena.

7          In connection with that motion, there's a joint

8  stipulation supporting and opposing evidence.  There are

9  supplemental memoranda filed by each Plaintiff and moving party

10  Apple, at least one of which is supported by additional

11  evidence.  And then there are three applications to seal

12  documents in connection with the initial motion and joint

13  stipulation in evidence, and then in connection with each

14  supplemental memorandum.

15          We're going to start with the Motions to Seal -- or

16  the Requests to Seal.  We're going to go through these item by

17  item.  And we're going to start -- and I know it was a

18  different case, but at least some of the same Counsel were here

19  last week, or two weeks ago, where we talked about Local Rule

20  79-5.2.2, governs sealing.

21          Our protected order in this case also requires

22  parties, if they seek to seal documents, to proceed under Local

23  Rule 79.

24          And I'm just going to read, so that we all are on the

25  same footing.

5

1          This is Subsection B.

2          The heading is, "Documents designated by another as

3          confidential pursuant to a protective order."

4   And now I'll quote.  And this is a long quote:

5          "At least three days before seeking to file under

6          seal a document containing information previously

7          designated as confidential by another pursuant to a

8          protected order, the filing party must confer with

9          the person that designated the material confidential,

10         open paren, (the, (quote), 'designating party')

11         (close quote, close paren), "in an attempt to

12         eliminate or minimize the need for filing under

13         sealing by means of redaction. (period).

14         "If the document cannot be suitably redacted by

15         agreement, comma, the filing party may file an

16         application pursuant to Subsection A, comma, but the

17         supporting declaration must identify the material

18         previously identified as confidential, (comma), as

19         well as the designating party, (comma), and must

20         describe in detail the efforts made to resolve the

21         issue. (period).

22         I'm going to skip a sentence.  And then:

23         "Subsequently: (colon) --

24   Again, we're just going to talk about little i:

25         "Within four days of the filing of the application,

EXCEPTIONAL REPORTING SERVICES, INC

6

1          comma, the designating party must file a declaration

2          establishing that all or part of the designated

3          material is sealable by showing good cause or

4          demonstrating compelling reasons why the strong

5          presumption of public access in civil cases should be

6          overcome, (comma), with citations to the applicable

7          legal author -- legal standard. (period).

8          I'm going to end it there.  There's discussions about

9   if the designating party maintains that only a portion of the

10  material is sealable, the designated party should file, with

11  that declaration, a copy of what the proposed portion to be

12  sealed should be highlighted.

13          The last sentence of Subsection (i) provides,

14  (quote):

15          "Failure to file a declaration or other required

16          document may be deemed sufficient grounds for denying

17          the application."  (period, close quote).

18  Then little i-2 -- so little ii.

19          "If the application is denied, the filing party may

20          file the document in the public case file, i.e.,

21          unsealed, no earlier than four days and no later than

22          ten days after the application is denied unless the

23          Court orders otherwise." (period).

24          All right.  So with that standard in mind, let's turn

25  to Docket Number 289.  And that is an application to seal --

7

1    I'm sorry -- Docket Number 280.  That is an application to file

2    certain documents under seal along with redacted versions, and

3    then, in conjunction with that Docket 281, which is sealed.

4              And I won't, at this moment, get into anything that

5    appears to be confidential or had been designated as

6    confidential in those documents, but I will momentarily.

7              The declaration in support of the sealing request --

8    and this all relates to the original motion, which is Docket

9    282.  So we're in Docket 281.  It's by Mr. Lerner, Counsel for

10   moving party Apple.  And it cites to the appropriate Local Rule

11   79-5.2.2.  And it says it seeks to seal portions of the joint

12   stipulation.  And there is a sealed version, which is

13   unredacted and then separately filed at Docket 280; 281 is a

14   redacted version, along with Exhibits H and N to the

15   declaration of Ilissa Samplin, and Exhibits 3 through 8 and 10

16   through 11, to the declaration of Mark Kachner -- I'm sorry, I

17   butchered that.  Is it --

18             **MR. RE:**  Kachner.

19             **MR. KACHNER:**  Kachner, thank you.

20             **THE COURT:**  Kat --

21             **MR. KACHNER:**  Kack --

22             **THE COURT:**  Kachner -- which are all submitted in

23   connection with the motion.

24             So I'll tell you, I preliminarily looked at the

25   Documents H and N; they're Exhibits H and N to Ms. Samplin's

8

1    declaration.  And I find, based on what's in front of me and

2    the reference to the Case 8:20-cv-48-JVS that a sufficient

3    showing has been made to seal those documents.

4            As to the exhibits to Mr. Kachner's declaration, let

5    me start by asking.  I didn't see it on the docket.  And I'll

6    start with you, Ms. Samplin, because it's Mr. Lerner's

7    declaration that seeks sealing.

8            Turning -- and I'm going to go in a quick aside,

9    turning to paragraph 7 of that declaration, at Docket 281, it

10   indicates that Exhibits 3 through 8, 10 through 11, to the

11   Kachner declaration, contain material designated as

12   confidential or confidential attorney eyes' only, "AEO," by

13   Plaintiff and/or Defendants True Wearables and Marcelo Lamego

14   under the protected order in this case.

15           And I'm going to start with you, Ms. Samplin.  To

16   your knowledge, has anyone filed a declaration, either from

17   Plaintiffs or Defendants, as required under Local Rule

18   79-5.2.2(b), as I previously read from?

19           **MS. SAMPLIN:**  Your Honor, I don't have knowledge of

20   that off the top of my head.  But it --

21           **THE COURT:**  All right.

22           **MS. SAMPLIN:**  -- doesn't mean it's going to happen.

23           **THE COURT:**  Okay.  I'll ask Plaintiffs.

24           Are you aware of anyone having filed a declaration as

25   required to maintain a request to seal an evidentiary showing

9

1    under -- or just right now, it's a yes or no question, okay --

2    under Local Rule 79.5.2.2(b), to support sealing of the

3    documents attached -- that are sought to be sealed, attached to

4    your declaration?

5         **MR. RE:**  No, Your Honor.

6         **THE COURT:**  All right.  So with that being the lay of

7    the land, tentatively, under the Local Rules, I could, based on

8    that alone, order the request for sealing denied.

9         But let's do this:  Let's go through these, because I

10   don't want to do anything that's going to create unnecessary

11   heartburn due to maybe an oversight by someone.  So let's pull

12   up -- and, unfortunately, my computer right now is really slow.

13   But let's go through Exhibits 3 through 8, comma, 10 through

14   11, from Mr. Kachner's declaration.

15        And the only -- you're the only person here between

16   Plaintiffs and Defendants, who I can hear from, about the --

17   any basis to grant the sealing request.

18        So let's start with Exhibit 3.  Which I think I'm

19   safe to say is -- let's characterize it as a portion of a

20   transcript of a deposition taken on May 20, 2021.  I don't know

21   if we want me to get more specific than that.

22        But from Plaintiffs' standpoint, is this transcript

23   something that needs to remain under seal?  Is there

24   appropriate evidentiary showing?  And if there hasn't, do you

25   want to try to make one now?

10

1           **MR. RE:**  Thank you, Your Honor.  This is a deposition

2   transcript of the Defendant in the litigation that Defendant's

3   Counsel designated confidential.

4           **THE COURT:**  All right.  Are you requesting

5   confidential or attorneys' eyes only treatment for it?

6           **MR. RE:**  Yes, Your Honor.

7           **THE COURT:**  You are?  I want to be clear.  The way it

8   works is, they had an opportunity -- the Defendants did -- had

9   an opportunity to support the sealing request that was made

10  here under the Local Rules.

11          They did not make an evidentiary showing.  But if we

12  have a kind of situation where someone made a mistake, they're

13  not here today -- I wish they were -- they're not here today.

14          And if there's something in here that maybe you, as

15  an officer of the Court, are going to tell me, "Well, you know,

16  Judge, there's something in here that I think that they've

17  expressed separately or in some other circumstance."

18          And if you want to take a few moments to review it, I

19  encourage you to.  But my tentative is to find that the sealing

20  requirements have not been met, and order that this be filed in

21  the public docket within four days, and that we're going to

22  talk about these things today.

23          So let me start with -- it was a bit of a litany of

24  questions.  It's not your -- you never requested attorneys'

25  eyes only or confidential treatment of this portion of the

11

1    transcript, correct?

2              **MR. RE:**  Correct.

3              **THE COURT:**  And by you, I mean your clients.

4              Defendants did.  Is there anything in there that --

5    and, again, I'm putting you in an awkward spot, and I'm just

6    asking if you can tell me anything that you see in there that I

7    should independently verify.

8              Because I'll tell you, I don't see anything in there

9    that looks some -- looks like something that rises to the level

10   of attorneys' eyes only substantively or even to the level of

11   confidential.  I largely see objections and colloquies between

12   Counsel here.

13             So tell me if you see anything.  And when you're

14   done, after you've had enough time to look at it, tell me if

15   there's anything in here that you think I should be concerned

16   with.

17             **MR. RE:**  I attended the deposition.  And I know

18   exactly what the situation is.  The deposition --

19             **THE COURT:**  This is Mr. Re?

20             **MR. RE:**  This is Mr. Re.  Under the protected order,

21   the parties are given 30 days in which to make the redactions.

22             At the time of this filing, the entirety of the

23   transcript has to be treated as confidential or AEO under the

24   protected order until a certain amount of time -- I believe

25   it's 30 days -- passes for the witness to then designate the

12

 1    portions they want to make AEO or confidential.

 2              The trouble was, at the time this was filed, the

 3    30-day --

 4              **THE COURT:**  Understood.

 5              **MR. RE:**  -- time passed.

 6              **THE COURT:**  So has there been any specific

 7    designation of any of this portion to your knowledge?

 8              **MR. RE:**  To my knowledge, no.

 9              **THE COURT:**  And do you see anything independently in

10    there that would -- that I should really look closely at,

11    because I'm inclined to deny the sealing request as to this

12    transcript?

13              You're not representing them.  I'm just asking you,

14    as an officer of the Court, sometimes things come up in

15    litigation where the parties know, "Hey, this is a very

16    sensitive topic for the other side."

17              **MR. RE:**  I believe that the Defendant has

18    over-designated.  I'm with the Court.  I think much has been

19    over-designated.

20              **THE COURT:**  Is there anything in here that is not

21    over-designated, from your view?  We're just talking about

22    Exhibit 3.

23              **MR. RE:**  In my opinion, nothing should be

24    designated --

25              **THE COURT:**  I don't even want you to give your

13

 1    opinion.  It's more, has anything come to you from the

 2    Defendants?

 3              **MR. RE:**  Yes.  The Defendant has previously

 4    designated documents that are inferentially referred to --

 5              **THE COURT:**  We're going to be getting to those, I

 6    believe.

 7              **MR. RE:**  -- into the --

 8              **THE COURT:**  We're going to be --

 9              **MR. RE:**  -- deposition.

10              **THE COURT:**  -- getting to those.

11              **MR. RE:**  Particularly the deposition on page 327; the

12    email in question, which has been designated as confidential,

13    is --

14              **THE COURT:**  All right.  And I'll tell you --

15              **MR. RE:**  -- is discussed.

16              **THE COURT:**  -- that I've looked at that, and I don't

17    think that's confidential.

18              **MR. RE:**  I agree with you.

19              **THE COURT:**  All right.  So other than -- thank you

20    for relaying that information that's come from the Defendants

21    who were -- had notice of this hearing and are not appearing,

22    had an opportunity to file the required declaration, under

23    Local Rule 79.5.2.2(b), and did not.

24              So other than that, anything else you should -- that

25    I should look at closely that you're aware of?

14

1          **MR. RE:**  Nothing from the Plaintiff.

2          **THE COURT:**  All right.  So I'm going to deny the

3    motion -- the Request to Seal Exhibit 3 to the Kachner

4    declaration.

5          Let's move on to Exhibit 4.

6          And I should say that Exhibit 3, actually it's

7    several sessions of a deposition transcript of Mr. Lamego, just

8    to be clear for the record.

9          All right.  Exhibit 4 is, I believe, two emails.  I'm

10   not going to say the substance yet.  But the header -- I'll

11   put -- I'll say the date and time -- is an email dated

12   Wednesday, October 2, 2013, at 12:54 a.m.  It's a three-page

13   email followed by -- it's part of the same exhibit -- a

14   separate email, dated Wednesday, October 2, 2013, at 10:25 a.m.

15         I'll start with you, Ms. Samplin.  Are you aware of

16   any filing by Defendants seeking to support -- it's

17   Mr. Lerner's declaration -- seeking to support an evidentiary

18   finding to keep this document -- or to file this document under

19   seal?

20         **MS. SAMPLIN:**  I am not, Your Honor.

21         **THE COURT:**  All right.  On behalf of Plaintiffs,

22   either Mr. Re or Mr. Kachner, are you aware of any information

23   in the record -- let's just start with on the docket -- of an

24   evidentiary showing to support the continued sealing of

25   Exhibit 4?

1              **MR. RE:**  No, Your Honor.

2              **THE COURT:**  And is there anything in there -- and

3    I've reviewed it.  And it tentatively appears to me to not

4    contain anything that would rise to the level of -- and we're

5    looking at good cause here as opposed to compelling reasons --

6    but good cause to overcome the general presumption of public

7    access.

8              But tell me if you, first of all, on behalf of your

9    client, do you see anything in there that you think requires

10   sealing?

11             **MR. RE:**  No, Your Honor.

12             **THE COURT:**  And is there anything that you know of

13   from your dealings with Mr. Lamego or his Counsel -- Mr. Re had

14   mentioned that this is something that they had taken the

15   position, was -- is it attorneys' eyes only?  Is that how they

16   designated it, or just confidential?

17             **MR. RE:**  Just confidential.

18             **MR. KACHNER:**  Just confidential.

19             **THE COURT:**  All right.  That they find this document

20   confidential, other than generally attesting to that and

21   stating that in other portions of the litigation?

22             **MR. RE:**  We only know, having attended the Lamego

23   deposition, that he believes he kept it confidential because he

24   feels he has an obligation to Apple.

25             **THE COURT:**  Okay.  And just to be clear, Mr. Lerner's

16

1   declaration, the only basis for sealing the Request to Seal

2   anything in Mr. Kachner's declaration is the assertion that the

3   material had been designated confidential or AEO by Plaintiffs

4   and/or Defendants, correct?

5           MR. RE:   There's one item, Your Honor.  We requested

6   to True Wearables' Counsel that we could disclose this to

7   Apple.  And they put conditions on that.

8           THE COURT:   I recall that.  And I saw that there's

9   references in the briefing to that.  But here's my -- stepping

10  back, there's only one basis that's -- now it's in front of me.

11  There's a request to seal it.  The only basis for the request

12  to seal it is Mr. Lerner's statement that this document has

13  been designated confidential or confidential attorneys' eyes

14  only by Plaintiffs and/or Defendant.  Is that correct?

15          MR. RE:   It's misleading.  We only designated it --

16          THE COURT:   No, no, no.  I guess -- is there anybody

17  else?  Did Apple?  Has Apple attempted to designate this email

18  in connection with this motion?

19          MR. KACHNER:   No, Your Honor.

20          THE COURT:   Okay.  So we're just focusing on

21  Plaintiffs and/or Defendants.  I wish we knew who it was.  My

22  understanding is that you advised him that Defendants -- you

23  advised Apple that the Defendants had designated this as

24  confidential.  And then as pursuant to the protective order

25  would need to be filed under the procedures of Local Rule

17

1    79-5.2.  But no one has filed any evidentiary showing with

2    respect to this email; is that correct?

3              **MR. KACHNER:**  Correct.

4              **THE COURT:**  All right.  And other than the general

5    history of the litigation where they have stated they consider

6    it confidential, is there anything before today's hearing or

7    anything that you've been advised, recognizing that they didn't

8    initially want to share it with Apple.  Anything other than

9    that that contains information in here that's been relayed to

10   you as somehow particularly sensitive in this eight-year-old,

11   nearly eight-year-old email involving being approached for

12   potentially joining an executive team?

13             **MR. RE:**  No, Your Honor.

14             **THE COURT:**  All right.  I find that I'm going to deny

15   the request to seal Exhibit 4.  And as with all the exhibits I

16   decline, we're going to follow the procedure in Local Rule

17   79-5.2 that that's ordered to be filed in the public docket

18   between four 10 days from today.

19             Let's move on to Exhibit 5, looks like a meet-and-

20   confer correspondence.  And I think this was at least generally

21   what Mr. Kachner was talking about, that there was

22   communications with between counsel for Plaintiffs and

23   Defendants regarding certain records and this motion.

24             Then I'll ask Ms. Samplin, are you aware of anything

25   that's been submitted by Defendants that would support an

18

1    evidentiary showing to continue to seal Exhibit 5?

2              MS. SAMPLIN:  No, Your Honor.

3              THE COURT:  All right.  And on behalf of Plaintiffs,

4    do Plaintiffs contend that Exhibit 5 contains confidential or

5    attorneys'-eyes-only information under the protective order?

6              MR. KACHNER:  No, Your Honor.

7              THE COURT:  All right.  Having independently reviewed

8    it, I don't see anything in Exhibit 5 that would warrant or

9    justify any finding of confidentiality or other basis to

10   overcome the general presumption of public access.  And there's

11   been no evidentiary showing as required under Local Rule

12   79-5.2.2(b), so I'm going to deny the motion to seal Exhibit 5.

13             Exhibit 6 is another deposition transcript.  This is

14   a deposition, I won't say of whom, but of a representative of

15   Plaintiffs that was designated attorneys' eyes only.  And

16   again, it does not appear that there's been an evidentiary

17   showing with respect to Exhibit 6.

18             Ms. Samplin, are you aware of any that I have missed?

19             MS. SAMPLIN:  I am not, Your Honor.

20             THE COURT:  All right.  On behalf of Plaintiffs,

21   since I can't tell from Mr. Lerner's declaration because it

22   says "and/or," I can't tell who designated this.  Do you know

23   who designated this for purposes of our hearing here today,

24   designated it as attorneys' eyes only?

25             MR. KACHNER:  Understood, Your Honor.

19

1          **THE COURT:**  Okay.  And what is your view about

2    whether it should continue to be attorneys' eyes only or

3    confidential; or maybe more generally, should it be filed under

4    seal or not?

5          **MR. KACHNER:**  There are some materials in here, Your

6    Honor, that we would like to maintain under seal.

7          **THE COURT:**  All right.  Even though the showing is

8    late, I'm going to allow you, counsel for Plaintiffs, to file a

9    supplemental declaration setting forth, as required under Local

10   Rule 79-5.2.2(b), with highlighting what portions of Exhibit 6

11   you believe are -- should be maintained under seal, with an

12   evidentiary showing as to why.  And that filing may itself be

13   under seal.  And then we'll make a ruling on Exhibit 6.

14          All right.  Let's turn to Exhibit 7.  It looks like a

15   series of a family of email chain.

16          Ms. Samplin, do you have any -- is there anything in

17   the docket that suggests that any party made an evidentiary

18   showing to continue sealing Exhibit 7?

19          **MS. SAMPLIN:**  No, Your Honor.

20          **THE COURT:**  And on behalf of Plaintiffs, did you

21   designate this confidential or attorneys' eyes only or did

22   Defendants designate that?

23          **MR. KACHNER:**  Plaintiffs designated Exhibit 7.

24          **THE COURT:**  All right.  They had an opportunity and

25   did not submit any follow up and did not appear at the hearing

20

1    -- have not appeared at the hearing this morning.

2            Is there anything that you'd like to offer?  And

3    Mr. Kachner, you raised your hand.

4            **MR. KACHNER:**  I just want to be clear.  Plaintiffs

5    designated this document.

6            **THE COURT:**  Oh you said "Plaintiffs".  All right.

7    Well what's the basis for it?

8        **(Pause)**

9            **MR. KACHNER:**  We withdraw the confidentiality

10   designation, Your Honor.

11           **THE COURT:**  I don't want to rush you.  Here's what I

12   really don't want to do.  I don't want to have someone come

13   rushing back and say, whoops, we forgot this, so take as much

14   time as you need.  And if you withdraw it then it will be

15   withdrawn and the request to seal as to Exhibit 7 will be

16   denied but take your time.

17       **(Pause; Counsel confer).**

18           **THE COURT:**  Mr. Re, you want to speak.

19           **MR. RE:**  Yes.  I wonder if we can include this with

20   Exhibit 6 and go back to see our clients.  We're a little

21   concerned that there's individual names and their immigration

22   status --

23           **THE COURT:**  All right.

24           **MR. RE:**  -- that's mentioned on the document.

25           **THE COURT:**  The same order for Exhibit 7 as to

21

1   Exhibit 6 that to the extent continued sealing is requested, I

2   need a basis for it and I need an evidentiary showing to

3   support it.  And if not all of the document needs to be sealed,

4   I need a redacted version and then a version highlighting -- a

5   clean and unredacted version but has the portions to be

6   redacted highlighted.  And that submission may be made under

7   seal.

8           Exhibit 8, this is a letter dated July 23rd, 2016.

9   On its face, it indicates that there may be a basis to maintain

10  it confidential although the basis is an evidentiary basis as

11  opposed to meaning the basis to treat it as restricted that's

12  on the face of it is as an evidentiary privilege, not as a

13  public privilege.

14          So I'll ask you again, Ms. Samplin, any information

15  that you're aware of in the docket that I've missed about an

16  evidentiary showing to keep Exhibit 7 confidential or under

17  seal?

18          **MS. SAMPLIN:**  Are we on Exhibit 7 or Exhibit 8?

19          **THE COURT:**  You're right, Exhibit 8.

20          **MS. SAMPLIN:**  No, Your Honor.

21          **THE COURT:**  All right.  And on behalf of Plaintiffs,

22  who designated Exhibit 8?

23          **MR. KACHNER:**  This was designated by Defendants.

24          **THE COURT:**  All right.  Anything in there that you're

25  aware of that -- bearing in mind if it's filed in the public

22

1   docket, it doesn't alter any -- for lack of a better term --

2   "mediation privilege" or "settlement communication privilege"

3   but that's the one that caused me a little bit of pause.

4           MR. KACHNER:  We do not maintain confidentiality --

5           THE COURT:  All right.  Exhibit -- I'm going to deny

6   the motion as to Exhibit 8.

7           And then we turn to Exhibit 10.

8           So Exhibit 8 I actually left off.  There are

9   attachments to Exhibit 8 that have photos.

10          I just want to make sure, none of that is an issue

11  for Plaintiffs, correct?

12          MR. KACHNER:  None of that's an issue for Plaintiffs.

13          THE COURT:  All right.  Turning to exhibit -- well

14  there's more even beyond that but it looks like some emails but

15  since there's been no evidentiary showing I'm going to deny the

16  application.

17          Exhibit 10 is additional transcript of a different

18  witness' deposition in this case.

19          Ms. Samplin, any information that you're aware of

20  that's on the record that any party made an evidentiary showing

21  to support a sealing request?

22          MS. SAMPLIN:  No, Your Honor.

23          THE COURT:  On behalf of Plaintiffs, who requested

24  this transcript to be treated confidential?

25          MR. KACHNER:  Defendants, Your Honor.

23

1          **THE COURT:**  All right.  And it looks like it's dated

2   back in December of 2020 so the earlier situation seems less at

3   issue.

4          Is there anything in this transcript that you appear

5   cause -- would cause -- would support just facially a continued

6   sealing of Exhibit 10?

7          **MR. KACHNER:**  No, Your Honor.  I would qualify that,

8   that this also falls in the category of documents that we

9   requested True Wearables' permission to disclose to Apple, and

10  even right before the filing they conditioned that disclosure.

11         **THE COURT:**  All right.  And there's a reference to an

12  investigation, a government investigation.  Is there anything

13  that you're aware of that that -- this wasn't sealed based on

14  some governmental request or agency request that something be

15  kept confidential.  Is that correct?  From your perspective?

16         **MR. KACHNER:**  I don't believe so, Your Honor.

17         **THE COURT:**  Okay. All right.  The motion will be

18  denied for lacking and evidentiary support as to Exhibit 10.

19         And lastly, Exhibit 11 is another email chain with

20  counsel.

21         Ms. Samplin, are you aware of any evidentiary basis

22  on the docket to support the continued or the request to seal

23  beyond Mr. Lerner's declaration for Exhibit 11?

24         **MS. SAMPLIN:**  No, Your Honor.

25         **THE COURT:**  Oh behalf of Plaintiffs, do you know who

24

1   designated Exhibit 11 to be treated as confidential?  It's not

2   facially stamped confidential.

3            **MR. KACHNER:**  Plaintiffs designated this document,

4   Your Honor.

5            **THE COURT:**  Plaintiffs did.

6            **MR. KACHNER:**  Yes, Your Honor.

7            **THE COURT:**  All right.  What's the basis?

8            **MR. KACHNER:**  There is material in here discussing

9   confidential development work that was going on at Masimo and

10  Cercacor.

11           **THE COURT:**  All right.  Other than that, is there

12  anything that Plaintiff based its designation on?

13           **MR. KACHNER:**  No, Your Honor.

14           **THE COURT:**  All right.  As with Exhibit 6 and 7

15  authorized Plaintiff to make a filing with respect to

16  Exhibit 11 that sets forth what the legal basis for the

17  sealing, what an evidentiary foundation would be for sealing.

18  And take proposed redacted (indisc. papers shuffling) if

19  anything can be publicly disclosed to propose redacted and a

20  unredacted version with the proposed redactions highlighted in

21  the unredacted version.

22           So that's with respect to just the motion.  As I

23  noted, I don't see a problem with Exhibits H and N to

24  Ms. Samplin's declaration based on what's in the record and

25  what's in the record in the other case being under seal, but

25

1   everything else will be unsealed with an unredacted copy to be

2   filed within four days, except for Exhibits 6, 7 and 11 and

3   we'll await further ruling on that based on a further showing

4   by Plaintiffs.

5           In terms of the two supplemental memoranda, I think

6   that Apple's supplemental memoranda was only -- sought an

7   under-seal filing because argument portions in the supplemental

8   memoranda referred to other materials that were provisionally

9   sought sealing, so we're going to take that up after everything

10  gets final.  And we'll direct that with respect to Apple's

11  supplement -- and also the joint stipulation -- anything that

12  is ordered unsealed will no longer be a basis to redact from

13  the joint stipulation.  Anything that remains sealed will

14  remain.  And so since it's a joint submission, we're going to

15  have to have the parties work together to submit a redacted

16  joint -- a newly redacted joint stipulation with everything

17  that's been ordered not sealed to be included in that new

18  redacted joint stipulation to be filed.  Everybody understand

19  that?

20          And the same applies to the supplemental memoranda.

21          There are some exhibits to Plaintiffs' supplemental

22  memoranda.  I think it's Exhibit 16 which Plaintiff seeks

23  sealing.  And let's pull that up.  And while I'm doing that

24  I'll ask since this is at Plaintiffs' request -- well let me

25  take a look.

1          (Pause)

2              **MR. RE:**  Your Honor, I might be able to make this one

3     easy for you.

4              **THE COURT:**  All right.

5              **MR. RE:**  The Exhibit 16 is a continuation of an email

6     chain that was previously filed at Exhibit 5.  And there's

7     nothing new in the additional discussion that would warrant

8     sealing.  So the same treatment applies to Exhibit 5 which was

9     unsealed, I believe.

10             **THE COURT:**  All right.  I guess -- let me ask you.

11             Who -- although you did the declaration, did you do

12    the declaration seeking sealing of Exhibit 16 because

13    Defendants had designated Exhibit 16 confidential?

14             **MR. RE:**  That's right, Your Honor.

15             **THE COURT:**  All right.  And you're not aware of any

16    filing by Defendants providing an evidentiary basis to keep

17    that document under seal since you filed your request to seal?

18             **MR. RE:**  No, Your Honor.

19             **THE COURT:**  And do you independently see anything

20    from your perspective that would require sealing with respect

21    to Exhibit 16?

22             **MR. RE:**  No, Your Honor.

23             **THE COURT:**  All right.  Exhibit 16 -- the request to

24    seal Exhibit 16 is denied.  And it will be ordered to be filed

25    on the public docket four days after today.

27

1          And your joint -- I don't actually recall any

2   redactions from your joint or your supplemental memoranda --

3   Oh, there are, okay.

4          **MS. SAMPLIN:**  For Apple, Your Honor?

5          **THE COURT:**  Pardon?

6          **MS. SAMPLIN:**  Apple you mean?

7          **THE COURT:**  I was talking about for Plaintiffs but I

8   see that there are.

9          So you're each going to go through -- for your

10  supplemental memoranda, you're going to file a new one.  And

11  it's going to be redacted, only the materials that have been

12  approved for redaction which as of right now is only the two

13  exhibits to Ms. Samplin's declaration, and may also include the

14  three exhibits, Exhibits 6, 7 and 11 from Mr. Kachner's

15  declaration.  Anything that's in the joint stipulation or

16  either supplemental memoranda that's maintained as redacted

17  will be -- as deemed confidential will be maintained as

18  redacted.  Anything else that's redacted based on one of the

19  other things that the application had been denied, you're going

20  to be filing a new one but we're going to wait four days so

21  we're going to get new -- what did I say, the rule say it's

22  either four to 10 days you're going to be filing all this stuff

23  and so I do -- actually, you know what?  For your supplemental

24  memoranda and your joint stipulations, you're going to have to

25  wait to file that until I've ruled on the new submissions by

28

1    Plaintiffs with respect to Exhibits 6, 7 and 11.  So we'll hold

2    off on that and there'll be a separate order regarding those.

3              All right.  So that's the sealing.

4              **MS. SAMPLIN:**  Your Honor, I just have one question.

5              **THE COURT:**  Yeah.

6              **MS. SAMPLIN:**  Our supplemental memorandum only quotes

7    from Exhibit 8 which you just denied the motion so should we

8    just go ahead and file that and not wait --

9              **THE COURT:**  Wait --

10             **MS. SAMPLIN:**  -- or --

11             **THE COURT:**  Wait four days because that's what the

12   local rules provide.  It says "Unless by order of the court".

13   If we had Defendants here I would just do it now but we're

14   going to wait.  It doesn't mean that they have -- having had

15   both an ability to comply with the rule as required and appear

16   here today that -- well I'm just going to leave it at that but

17   we'll have  it --

18             **MS. SAMPLIN:**  But we don't need to wait for your

19   further order on the other exhibit.

20             **THE COURT:**  Correct.  On that one once four days have

21   passed, you can go ahead and file it unless you hear otherwise

22   from the Court.

23             Okay.  Let's now turn to the substance.

24             And I'm going to speak about everything that's been

25   unsealed.  And in the event that anything changes on that,

29

1    we'll go back and have to perhaps designate from here on

2    forward this transcript confidential but for now it's not and

3    we're proceeding in a public fashion.

4          My tentative is to deny the motion in its entirety

5    with the possible exception -- I haven't decided -- as to

6    Request for Production Number 1 which is the entire human

7    resources employee file for Mr. Lamego and we can talk further

8    about that.  And I'm going to tell you that I'm using the

9    amended categories for document productions proffered by

10   Plaintiff in their portion of the joint stipulation as opposed

11   to what's in the original subpoena.

12          I find that, tentatively, that both the requested

13   categories of records and the topics for testimony are relevant

14   -- again, with a little proviso on the employee file -- are

15   relevant and are proportional to the needs to the case, taking

16   into account the somewhat heightened review under Rule 45

17   because Apple is a nonparty.  But I do find that the material

18   sought is relevant; it's narrowly crafted to go to those

19   issues; again, bearing in mind that even with the heightened

20   relevance standard of Rule 45, relevance is still broadly

21   construed.

22          To the extent Apple argues that confidential

23   information is sought, I find that the protective order in this

24   case is sufficient to protect any such interests and does not

25   overcome the need and proportionality for the information.

30

1    There's an argument that these requests duplicate requests for

2    documents in what Apple designated as a related case in Masimo,

3    et al. v. Apple, Inc; Case Number 8:20-cv-48-JVS.  And I think

4    that argument is somewhat related but not identical to Apple's

5    last argument that the subpoena is -- and they used the phrase

6    "and around" various limitations and discovery that were either

7    agreed to or imposed in that other case.  And on each of those

8    grounds I deny the motion and find that this is an appropriate

9    effort to obtain legitimate discovery.

10          And I'm not going to at this point make any findings

11   about Apple and counsel but I'm going to say that there is a

12   whiff of Three-card Monte going on here about getting documents

13   and finding documents and doing a shell game about where

14   Plaintiffs are supposed to go and the procedural mechanisms.

15          And we have -- it's actually referenced in one of the

16   exhibits that we were just discussing that's been unsealed --

17   an assertion of a common interest privilege.  And there's been

18   fingers pointing that you can't disclose this or you can't use

19   something disclosed in this case in another case -- and that's

20   what the protective orders do say that parties are limited.

21   And so to the extent a party is -- demands that a party obtain

22   discovery through another case because that party is not

23   allowed to obtain it or use it under the protective order in

24   that case, then that's a perfectly appropriate situation.

25          And when defendants who are apparently in a common

1    interest privilege with nonparty Apple assert that they're not

2    going to answer questions or provide information because they

3    deem it to be confidential and that confidentiality is alleged

4    to be held by Apple, these are all the factors that go into why

5    those final two arguments raised by Apple, that it's Plaintiffs

6    that are doing an end-around or -- and this may be my words,

7    not theirs -- playing games that I do not agree.  And I'm not

8    going to make a finding, at least not at this juncture, about

9    good faith or bad faith but I'll certainly be willing to hear.

10           So having heard my tentative, Apple -- Ms. Samplin,

11   it's Apple's motion.  I'll hear from you.

12           **MS. SAMPLIN:**  Thank you, Your Honor.  I just want to

13   clarify.

14           Our end run argument was about the fact that we

15   appeared before Your Honor a few weeks ago, on request in the

16   Apple case that related to Marcelo Lamego's duties at Apple or

17   job responsibilities and hiring and whatnot, and Your Honor

18   denied all but one of those requests.  And so the end run that

19   we are arguing is that they are trying to get documents of the

20   type that were deemed overbroad and irrelevant to the Apple

21   case.  They're now trying to get it in the True Wearables case

22   which has nothing to do with Apple or Marcelo Lamego's time at

23   Apple.  That's the argument we were trying to make.

24           I hear Your Honor on your other point but

25   respectfully, we believe if the discovery is not relevant in

1    the Apple case where Apple is a party, and the issues in the

2    case are tied to Lamego's work at Apple, we don't see how those

3    documents are relevant in this case where all of the causes of

4    action are about Lamego's time at True Wearables.

5            And then when you look at the supplemental memorandum

6    from Plaintiffs, their justification is basically an email from

7    Lamego, that was Exhibit 16, and then all they point to at the

8    end is that it's relevant to their breach of fiduciary duty

9    claim.  But that claim in the complaint is that Lamego breached

10   his fiduciary duty to Cercacor by, one, failing to disclose

11   facts that showed some noninvasive measurement technology was

12   not feasible, causing Cercacor to license this technology to

13   Masimo even though it did not work; and, two, failing to file

14   patents on subject matter he was instructed to include.  That

15   has nothing to do with Apple; that has nothing to do with the

16   email to Tim Cook; that has nothing to do with Apple hiring

17   Lamego or Lamego choosing to work at Apple.  So I'm just

18   struggling to see the relevance of the breach of fiduciary duty

19   claim which is the only purported basis set forth in the

20   supplemental memorandum for the discovery at issue.

21           **THE COURT:**  Where did Mr. Lamego work between the

22   time he worked at Cercacor and True Wearables?

23           **MS. SAMPLIN:**  He worked at Apple, Your Honor, but the

24   claims in this case are not based on his time at Apple.

25           **THE COURT:**  He's alleged to have taken trade secrets

33

1    and used them at his new business, correct?

2              MS. SAMPLIN:  His new business meaning True

3    Wearables?

4              THE COURT:  Yes.

5              MS. SAMPLIN:  Yes, correct.

6              THE COURT:  And that was roughly six, seven, eight

7    months after he left Cercacor, correct?

8              MS. SAMPLIN:  That is correct.

9              THE COURT:  And in that intervening six, seven, eight

10   months he was at Apple, correct?

11             MS. SAMPLIN:  That is correct.

12             THE COURT:  And I have in front of me an email that

13   he sent to Apple's CEO.  Let's just say it speaks for itself as

14   to what Mr. Lamego was saying.  And then the timing is that

15   email was sent at what?  12:00 a.m.?  1:00 a.m.?  And then at

16   10:00 a.m. -- I'm sorry, even earlier than that.  What is it?

17   10:30 a.m. an Apple recruiter responds to that email that was

18   sent to Mr. Cook by Mr. Lamego, correct?

19             MS. SAMPLIN:  That's correct.

20             THE COURT:  Well, I'm going to tell you that in my

21   view, under the broad definition of relevance, even as somewhat

22   constricted by the Rule 45 requirements that we have tried to

23   avoid an undue burden on a party or on a nonparty that a

24   sufficient showing of relevance as to why the hiring and

25   potential grounds for termination, grounds which apparently --

34

1    it's unrebutted -- Mr. Lamego has refused to answer, stating

2    that it's because he owes a duty of confidentiality to Apple

3    that I think rise to the level of relevance, that rise to the

4    level of proportional to the needs of the case.

5              And again, I don't really want to but maybe I should

6    get into some other issues that this email disclosure raises.

7    I'm not going to but if we want to go talk about it more, let's

8    do that.  I'll leave it up to you, Ms. Samplin.

9              **MS. SAMPLIN:**  I defer to Your Honor as to what you --

10             **THE COURT:**  Well I guess what I'm saying is, argue as

11   much if you want.  If we really want to get into -- when you

12   say there's no connection or no relevance to this case for

13   information about Mr. Lamego's short stint at Apple, why he was

14   hired, why he was terminated, this email sheds a lot of light

15   on some issues.  It's not in and of itself going to be a case

16   dispositive but it's certainly --

17             I've done a lot of trials and you want to tell a

18   story.  And part of -- and I don't mean like a fairy tale.  I

19   mean there's a beginning, middle and end.  And Mr. Lamego's

20   time at Apple is fairly -- I'm not going to overstate it -- but

21   fairly described as part of the middle of this story.  And to

22   excise it would not meet with what a trial is for, what a jury

23   is for.  Again, I'm not going to do the trial; that's going to

24   be up to Judge Selna to see what comes in and what doesn't but

25   I'm not going to, at this stage, excise what I believe -- and

1    this email seems to confirm -- there's a significant,

2    potentially significant information in that six, seven or

3    eight-month period that are part of the story.  And maybe

4    there's nothing, maybe there's nothing to it but there's enough

5    here to fall within the definition of relevance and

6    proportionality to tell a story.

7              And the email, the follow-up email from a recruiter,

8    the whole history of the allegations in the case, and we'll see

9    what happens.  It may be -- again, it may be nothing; there may

10   be nothing to it but it appears relevant and it appears

11   proportional.

12             And in terms of the end-run language -- well, I think

13   that there's more going on here than -- I'm going to leave it

14   at that.  There's more going on here.  And I have some concerns

15   about some of the things that are going on but I'm just going

16   to leave it at that and give you an opportunity, Ms. Samplin,

17   to argue anything else that you want on anything in my

18   tentative or anything else.

19             **MS. SAMPLIN:**  Well, Your Honor, can we talk about --

20   or did you want to do it separately, the personnel file?

21             **THE COURT:**  Sure, let's talk about the personnel

22   file.  I'll tell you my concerns are it's -- somebody's

23   personnel file could contain a lot of things that I don't think

24   are necessarily relevant, things like medical leave, things

25   like reasonable accommodations.  I don't know if any of these

1    things exist; I don't have a factual basis.  Mr. Lamego who I

2    kind of would have thought would have filed something to the

3    extent my concerns are based on his right to privacy, he didn't

4    and he's not here.  It's kind of why I'm surprise -- one of the

5    reasons I'm surprised his counsel isn't here.  But that said, I

6    do still have to take everything into account.

7           We have a protective order but we have Rule 45.  I

8    don't know how burdensome it would be to produce the personnel

9    file but maybe we can get some clarification on why the

10   entirety of the personnel file is relevant and proportional.

11          But first of all, it's your motion, Ms. Samplin.  And

12   having heard my thoughts, you tell me what you think.

13          **MS. SAMPLIN:**  I believe that the request for the full

14   personnel file is overbroad and not proportional.  And if we're

15   going based on Your Honor's articulation of relevance and why

16   you believe certain of these requests fit in the relevance

17   standard, then I would argue that the requests that they're

18   going to get, if you're going to deny our motion, elsewhere

19   between Requests for Production 2 to 5, as modified -- because

20   I understand we're going by their modified requests for

21   production -- they're getting the information that you've

22   articulated as relevant.  I don't see why they need to open up

23   an entire personnel file which Your Honor already said did need

24   to be produced in the Apple case.

25          **THE COURT:**  well let's -- to some extent the Apple

37

1    case had different issues.  There where what?  Ten or 12 former

2    employees governed by the request at issue in that case,

3    although there were one or two that related to Mr. Lamego and

4    the issues are somewhat subtly different.  And in the Apple

5    case, Mr. Lamego wasn't a party whereas here, I'm just -- again

6    I'm surprised he's not here to assert a right to privacy

7    because that would be the primary basis.

8           I don't really see -- I don't know how big his

9    personnel file is, considering the number of motions, both in

10   this case and the related case.  From a comparison standpoint,

11   I don't imagine the photocopying costs of a personnel file are

12   unduly burdensome or expensive under Rule 45 but that's the

13   only one that I'm unsure about and particularly considering.

14   I'm tentatively going to grant it as to all those other

15   categories.

16          So anything else, Ms. Samplin?

17          **MS. SAMPLIN:**  Yes.  So Your Honor I just want to

18   point you to page 1 in our Supplemental Memorandum because you

19   are correct that requests in the Apple case did have that

20   definition of former employees that was broader and went beyond

21   Lamego.

22          But then we specifically spoke about the personnel

23   file as it related to Lamego.  And on page 64 of the transcript

24   you reiterated that you weren't compelling Apple to produce the

25   entire HR files of Lamego.  I hear you that Lamego is a party

38

```
1   here and he's not here to assert privacy interests but we still

2   think it's overbroad and not proportional to the needs of the

3   case, particularly if you are going to grant the other requests

4   for production.

5              THE COURT:  All right.  Anything further?

6              MS. SAMPLIN:  I guess I would just ask for

7   clarification.

8              Your tentative on Requests 2 through 5, that's for

9   all modified versions of those requests.

10             THE COURT:  Yes.

11             MS. SAMPLIN:  Right?  Okay.

12         (Pause)

13             I guess I would still argue that I think Request

14  Number 2, for example, is too broad because weren't limited by

15  Plaintiffs to "documents sufficient to show".  They were just

16  enlarged to "documents and communications".  So we're now

17  requesting documents and communications related to the hiring

18  of Lamego.  I understand they dropped the word "all" but the

19  fact that they've used documents sufficient to show elsewhere

20  shows that their request for documents, as opposed to all

21  documents is really just the same thing.  And so I think the

22  request is still broad -- is still overbroad.

23             THE COURT:  Anything further?

24             MS. SAMPLIN:  Are we going to deal with the

25  deposition topic separately?
```

39

1          **THE COURT:**  No.  It's your motion.  Anything else you

2    want to raise with respect to the motion?

3          **MS. SAMPLIN:**  Yes.  So I would say that I think the

4    deposition topics are unnecessary if Your Honor is granting the

5    request -- sorry -- is denying the motion with respect to

6    Requests 2 through 5.  The deposition topics get at largely the

7    same material.  And I would suggest at a minimum the Plaintiff

8    should get the documents -- if we're being ordered to produce

9    the documents -- see what's in the documents and then decide.

10   And maybe we can work together and meet and confer as to

11   whether a deposition is actually necessary from a nonparty in

12   this case on the same exact topics that they're seeking

13   documents about.

14         **THE COURT:**  Well the good news is that will be my

15   order with one little proviso.  Apple will be ordered to

16   produce the documents first.  And then once the documents are

17   received, the 30(b)(6) or the Rule 45 deposition will proceed.

18   And if for whatever reason Plaintiff doesn't need it any

19   further or doesn't want it any further, they can cancel it but

20   it will be ordered and it will be ordered to take place after

21   the documents are received.

22         Anything further?

23         **MS. SAMPLIN:**  The deposition topics, Your Honor.

24     **(Pause)**

25         I would also just add, I think the deposition topics

40

```
 1   were not revised and they still go beyond the revised requests

 2   for production.  And so again, I think the deposition is not

 3   necessary here on these broad topics, getting at all

 4   communications that were had between Apple and Marcelo Lamego

 5   related to hiring or termination.  And I think the documents

 6   are sufficient in that regard.  And if they're not, if the

 7   Court deemed them not, the deposition should be tailored to the

 8   revised topics.

 9               THE COURT:  Anything further?

10               MS. SAMPLIN:  No, Your Honor.

11               THE COURT:  All right.  On behalf of Plaintiffs, I'm

12   telling you, I'm inclined at this point to stick with my

13   tentative, including the tentative to deny the request for the

14   entirety of Mr. Lamego's personnel file.

15               If there's something specific, other than what's

16   already been granted, that there's a proffer of relevance, I'll

17   hear it.  But I'm, at this point, inclined to stick with my

18   tentative.  But you can argue anything you wish.

19               MR. RE:  Well, I agree with the tentative.  And we

20   have no interest in trying to invade his right to privacy on

21   the medical.  And those types of issues are obviously not of

22   interest to us at all.

23               And I haven't seen any evidence of burden.  And I

24   think the Court's correct.  And I agree with tentative.

25               I just want to correct one thing on the record.
```

41

```
 1    Ms. Samplin repeatedly has stated as if this Court has denied
 2    the Apple Motion to Compel.  And I agree with you, it's
 3    slightly different circumstances.
 4         But just so the record is clear, we submitted the
 5    order from that Apple hearing.  And the reason why 236, 237,
 6    and 239 were denied, they were denied as moot.  Because Apple
 7    agreed to produce the documents with respect to Lamego and
 8    O'Reilly.
 9         So it's not correct that these motions were just
10    denied outright.  They were denied as moot, as unnecessary
11    because they did agree to produce, even in the Apple case, the
12    Lamego-related documents.  So I wanted that to be clear.
13         And with regard to this discussion we're having now
14    about the Cook email and all of that, they had the Cook email,
15    they had all the evidence, and their supplemental memorandum
16    ignored the notice of related cases, ignored the confidential
17    agreement, ignored the Tim Cook email, and, as you noted, they
18    didn't even contest that Lamego is not giving us the
19    information, because he's saying, "Go to Apple."
20         And I attended that Lamego deposition.  And his --
21    he's not even taking the view that this stuff is irrelevant.
22    He's just taking, you know, "Go to Apple.  I don't want to be
23    sued by Apple."
24         So you're right.  Lamego himself is not even
25    contesting the relevance of this information.  He's just not
```

42

```
1    comfortable with us seeing it because he's afraid of Apple.
2              I have nothing further, and I agree with the
3    tentative.
4              THE COURT:  All right.  The tentative order, with
5    respect to the motion itself, Docket 282, will be the order of
6    the Court.  There will be a written order to follow.  The
7    motion will be denied with the exception of Category I, the
8    entirety of the personnel file.  I'm not going to order that.
9    I didn't hear anything about some sub-information other than
10   what's contained in Request Numbers 2 through 5.
11             So that will be the order of the Court.  And in terms
12   of the sealing applications, the three sealing applications we
13   mentioned, the request to seal the two exhibits to
14   Ms. Samplin's declaration, Exhibits H and N, those -- that
15   request will be granted as to those, and it will be denied as
16   to Exhibits 3, 4, 5, 9, and 10 to the declaration of
17   Mr. Kachner, with respect -- and that's the initial declaration
18   of Mr. Kachner -- with respect to Exhibit 6, 7, and 11.
19             Apple is -- or Plaintiffs are ordered to file a
20   supplemental declaration under seal that provides their grounds
21   for continued sealing as to those exhibits, and an evidentiary
22   showing in support of those grounds, and newly redacted and
23   highlighted versions of those exhibits, to only seek to redact
24   those portions as to which confidentiality or attorneys' eyes
25   only or whatever the legal basis for sealing is made.
```

43

```
1            And as to the, I think it was Exhibit -- what did we
2    say Exhibit 12 in -- filed by -- in Mr. Kachner's declaration,
3    in support of Plaintiffs' supplemental memorandum, that request
4    to seal is denied.
5            MS. SAMPLIN:  I think it's Exhibit 16, Your Honor.
6            THE COURT:  Oh, 16.  I'm sorry.  Thank you.
7            Exhibit 16, that request is denied.  All those
8    documents as to which requests to seal have been denied are to
9    be filed within four to ten days from today, on the public
10   record.
11           And Apple's showing -- how much time do you think you
12   need to make your showing with respect to Exhibits 6, 7, and
13   11?
14           MR. SPEAKER:  Maybe by Monday.
15           THE COURT:  All right.
16           MR. SPEAKER:  Monday is fine, Your Honor.
17           THE COURT:  By Monday, June 28th.  Apple will file
18   that request.
19           And then I know this is a lot.  Apple's supplemental
20   memoranda should be refiled without any item under seal, let's
21   say, by Tuesday, June 29th -- and I may have said, "July 28th"
22   earlier -- June 28th -- by Tuesday, June 29th.
23           And then the joint stipulation, the parties are to
24   meet and confer and determine, after this hearing and the
25   rulings, what still needs to be redacted, and then to file a
```

44

```
 1   redacted version of the joint stipulation with only the

 2   provisions that remain under seal redacted.

 3           And Plaintiffs' supplemental memorandum, same with

 4   that, because there were some provisions in the supplemental

 5   memorandum that are redacted -- or that were redacted because

 6   of earlier filings.

 7           Does that all make sense?

 8           MR. SPEAKER:  Yes, Your Honor.

 9           THE COURT:  Any questions?

10           In terms of the timing of the production, I guess,

11   since I'm denying the motion, I don't necessarily want to get

12   into timing.  It's not really before me.  It was a Motion to

13   Quash.  So the subpoena goes forward.  Obviously, the return

14   date has passed.

15           I'd be inclined to say ten days, produce documents.

16   And when is our discovery cutoff in this case?  It's already

17   passed, right?

18           MR. RE:  No.

19           MR. KACHNER:  Yes, Your Honor.  True Wearables,

20   (audio glitch).

21           THE COURT:  Okay.  And it was in May, right?

22           MR. RE:  Yes.  We're now in expert discovery.

23           THE COURT:  Okay.  So let's --

24           MS. SAMPLIN:  Your Honor, I would just ask, with the

25   July 4th holiday, I'm just -- it's just going to be a little
```

45

1    tough for -- our client shuts down the arm of production.

2           **THE COURT:**  Well, how much -- can I ask you -- of the

3    requested documents, how much is different from what I assume

4    your clients are already gathering in the 20-48 case?

5           **MS. SAMPLIN:**  Your Honor, honestly, most of these

6    requests were denied in that case, so -- or they were narrowed.

7    I mean, I just do want to want to say --

8           **THE COURT:**  All right.  We don't need to hear

9    anymore.  We've got trial dates, Selma has trial dates.

10   They've got expert discovery cutoffs; they've got motion

11   deadlines coming up.

12          There was no expedited request for a hearing on this

13   motion, so I won't make an unreasonably short response.  But

14   for June 24th, I'm not really sure why Friday, July 2nd

15   wouldn't be a reasonable deadline to get what, to me, for a guy

16   that worked at Apple for seven months, we're not talking

17   about -- I don't think.

18          I don't see anything in front of me that would

19   suggest that we're talking about a substantial amount of

20   documents.  There may be work to locate them.

21          **MS. SAMPLIN:**  I'm just saying the client is closed on

22   July 2nd.  And I believe July 1st.  So that's my hesitation.

23   I'm not sure about July 1st, but I know July 2nd.  So that's my

24   hesitation.

25          **THE COURT:**  Apple, as a company, company-wide is

46

1    closed?

2            **MS. SAMPLIN:**  Production.  The production team that

3    does the productions for us.

4            **THE COURT:**  When is your expert discovery cutoff?

5            **MR. SPEAKER:**  August.

6            **MR. SPEAKER:**  Opening reports have already been

7    served.  August is --

8            **MR. SPEAKER:**  Yeah.  We're in the middle of rebuttal

9    reports.  So we probably have about six weeks.

10           **THE COURT:**  All right.  Well, I'm not sure that this

11   has -- I don't know you case well enough to know how much this

12   has to do with expert reports.

13           But I'll tell you what, I'll give Apple until July

14   7th, which is 13 days.  And the parties are to schedule the

15   deposition testimony to take place expeditiously after the

16   production and the full production of documents.

17           All right.  Is there anything further that I need to

18   take up this morning with request to the motions, the sealing

19   applications, or any other matter?

20           On that general question, I'll start with Plaintiff.

21           **MR. RE:**  Nothing further from the Plaintiff.

22           **THE COURT:**  All right.  From Apple?

23           **MS. SAMPLIN:**  I do just want to state on the record

24   that I think Mr. -- just to the extent there was a suggestion

25   by Mr. Re that we have somehow mislead the Court as to what was

47

1    ordered or agreed to in the Apple case, our supplemental

2    memorandum is clear.  On page 2, we said Apple voluntarily

3    agreed to produced.  And we referred to RFP 236.

4            So I just want to correct the record before the

5    Court.  I don't think there was any effort.  I know there

6    wasn't an effort to mislead the Court as to what Apple

7    voluntarily agreed to do in the Apple case.

8            **THE COURT:**  We'll leave it at that.  I'm not making

9    any findings one way or another right now.

10           I'll tell Apple I almost did.  And I'm not going to,

11   based on what seems to be going on, on some of these issues.

12   But we're just going to leave it -- we're going to leave it at

13   that.

14           All right.  So we are adjourned.

15       **(Proceeding Concluded)**

16

17

18

19

20

21

22

23

24

25

48

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>June 26, 2021</u>

            Signed                                          Dated


                        *TONI HUDSON, TRANSCRIBER*

**From:** noreply@courtdrive.com <noreply@courtdrive.com>
**Sent:** Tuesday, June 29, 2021 10:13 PM
**To:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Mark Blake <mark.blake@masimo.com>
**Subject:** Activity in Case 8:18-cv-02001-JVS-JDE Masimo Corporation et al v. True Wearables, Inc. et al Transcript (CV)

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

<div align="center">

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

</div>

## Notice of Electronic Filing

The following transaction was entered on 6/29/2021 at 10:12 PM PDT and filed on 6/28/2021
**Case Name:**          Masimo Corporation et al v. True Wearables, Inc. et al
**Case Number:**        8:18-cv-02001-JVS-JDE
**Filer:**
**Document Number:** 316

**Docket Text:**
<span style="color:blue">**TRANSCRIPT for proceedings held on 6/24/2021. Court Reporter/Electronic Court Recorder: EXCEPTIONAL REPORTING SERVICES, INC., phone number (361) 949-2988. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 7/19/2021. Redacted Transcript Deadline set for 7/29/2021. Release of Transcript Restriction set for 9/27/2021. (ls)**</span>

**8:18-cv-02001-JVS-JDE Notice has been electronically mailed to:**

Adam Powell     adam.powell@knobbe.com, 2abp@knobbe.com, litigation@knobbe.com

Amanda Rose Washton     a.washton@conklelaw.com, awashton@hotmail.com, support@conklelaw.com

Brian Christopher Claassen     brian.claassen@knobbe.com, KnobbeAdmin@ecf.courtdrive.com

Eric R. Chad     echad@merchantgould.com

Irfan A Lateef     irfan.lateef@knobbe.com, ial@kmob.com, litigation@kmob.com

James Eugene Youngblood     jamie.youngblood@knobbe.com

Joseph R. Re     litigation@kmob.com, joe.re@knobbe.com, jre@kmob.com, KnobbeAdmin@ecf.courtdrive.com

Joshua Hawkes Lerner     jlerner@gibsondunn.com, amoser@gibsondunn.com

Mark D Kachner     mark.kachner@knobbe.com, doreen.buluran@kmob.com, litigation@knobbe.com

Paige S Stradley     pstradley@merchantgould.com

Perry D Oldham     perry.oldham@knobbe.com, 2pdo@kmob.com, litigation@kmob.com

Peter A Gergely     pgergely@merchantgould.com

Ryan J Fletcher     rfletcher@merchantgould.com, KDrieman@merchantgould.com, smaney@merchantgould.com

Scott P Shaw     sshaw@merchantgould.com, kholst@merchantgould.com, smaney@merchantgould.com

Sherron L Wiggins     s.wiggins@conklelaw.com, Support@conklelaw.com

Stephen C Jensen     steve.jensen@knobbe.com, sjensen@kmob.com

Zach Kachmer     ZKachmer@merchantgould.com

**8:18-cv-02001-JVS-JDE Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

Andrew T Pouzeshi
Merchant and Gould PC
1801 California Street Suite 3300
Denver, CO 80202


The following document(s) are associated with this transaction:


**Document description:**Main Document
**Original filename:**C:\fakepath\TR Masimo v True Wearables_062421.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=6/29/2021] [FileNumber=32197652-0
] [0e063645cebd11e488481a319652ba782307d45ae1d4f306b6d94a431adaa749e1c
cc04df24b098d69147031d2671b3a015fe5effbca6837d2387086b14c35f1]]

EXHIBIT 37

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | *** Apple-Masimo |
| **Cc:** | Masimo.Apple; Selwyn, Mark |
| **Subject:** | RE: Masimo v. Apple - Meet/confer re Privilege Logs |
| **Date:** | Monday, November 29, 2021 6:05:22 PM |

Counsel,

We have not received a response to this email.  Please let us if Apple is available to meet and confer tomorrow at 4pm pacific.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Adam.Powell
**Sent:** Monday, November 22, 2021 5:04 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Selwyn, Mark <Mark.Selwyn@wilmerhale.com>
**Subject:** Masimo v. Apple - Meet/confer re Privilege Logs

Counsel,

We write to request a meet and confer on supplemental privilege and other redaction logs.

In August, we asked Apple to set dates to exchange privilege logs on a rolling basis as the parties proceeded with document production.  Apple eventually agreed to provide initial logs of (1) redacted documents by September 3 and (2) withheld documents by October 1.  However, Apple declined to provide a date by which it would supplement its logs for future productions.  Apple stated that the parties should set those dates after the deadline for substantial completion of ESI search term discovery.  That deadline was last Friday, but Apple has still not agreed to a deadline to supplement its logs.

Please let us know when you are available to meet and confer to discuss (a) the deadline for the parties to supplement their privilege and other redactions logs based on documents produced as of November 19 and (b) the deadline for supplementing those logs after future productions.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

EXHIBIT 38

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Passamaneck, Nora Q.E.; *** Apple-Masimo; Masimo.Apple |
| **Cc:** | WH Apple-Masimo Service List |
| **Subject:** | RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel |
| **Date:** | Tuesday, January 4, 2022 6:28:00 PM |

Nora,

We have not received a response despite requesting a meet and confer more than a week ago. Please let us know when you are available.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Monday, January 3, 2022 3:00 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Nora,

Thanks for your email.  We disagree with Apple's position on this issue, as well as its reference to Logan's email.  Logan was responding to ***Apple's*** request to defer Masimo's meet and confer on privilege logs until the week of January 3.  In agreeing to Apple's request, Logan suggested the parties also discuss Apple's similar request to meet and confer on privilege logs at the same time.

Regardless, we understand Apple is representing it is unable to discuss this issue with us before Tuesday.  Please let us know a date and time when you are available.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Thursday, December 30, 2021 2:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-

[Masimo@gibsondunn.com](mailto:Masimo@gibsondunn.com)>; Masimo.Apple <[Masimo.Apple@knobbe.com](mailto:Masimo.Apple@knobbe.com)>
**Cc:** WH Apple-Masimo Service List <[WHApple-MasimoServiceList@wilmerhale.com](mailto:WHApple-MasimoServiceList@wilmerhale.com)>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

You have now made conflicting demands for a meet-and-confer.   You previously asserted that Plaintiffs required Apple's position "at least 24 hours in advance of the meeting" so that the parties "can have a productive meet and confer."   Yet you now demand that we meet-and-confer on January 3, even though we have previously told you that Apple is shutdown through January 3, returning January 4.  That Apple is not available this week should come as little surprise – Plaintiffs have put off a meet-and-confer on privilege logs until next week when members of your team will be back from the holidays.  *See* Logan Young December 30 email.  We will confer with our client as soon as reasonably possible in light of the holidays and will propose a time to meet-and-confer next week.

Regards,
Nora

---

**From:** Adam.Powell <[Adam.Powell@knobbe.com](mailto:Adam.Powell@knobbe.com)>
**Sent:** Thursday, December 30, 2021 11:25 AM
**To:** Passamaneck, Nora Q.E. <[Nora.Passamaneck@wilmerhale.com](mailto:Nora.Passamaneck@wilmerhale.com)>; *** Apple-Masimo <[Apple-Masimo@gibsondunn.com](mailto:Apple-Masimo@gibsondunn.com)>; [Masimo.Apple](mailto:Masimo.Apple) <[Masimo.Apple@knobbe.com](mailto:Masimo.Apple@knobbe.com)>
**Cc:** WH Apple-Masimo Service List <[WHApple-MasimoServiceList@wilmerhale.com](mailto:WHApple-MasimoServiceList@wilmerhale.com)>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

Apple requested that Masimo provide its position on the schedule on December 27.  We did so that same day.  Apple now states it cannot respond or meet with us for at least a week.  Since Apple is unwilling to meet with us this week, please confirm a time that you are available to meet with us on January 3 so that any necessary motion practice can proceed expeditiously.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Wednesday, December 29, 2021 4:17 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

Thank you for providing Plaintiffs' proposal.  Due to the holidays and Apple's week-long shutdown, we will not be able to respond "by the close of business today."  We expect to be in a position to meet and confer with you next week.

Best regards,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, December 29, 2021 12:03 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

We disagree with Apple's perspective, but note that Apple seeks further document discovery and claims there are numerous remaining disputes to be resolved.

My prior email proposed "a five-month extension of time."  Below is a chart applying that timing with potential dates.  Masimo reserves the right to request different dates in any motion practice on the schedule.

| Event | Current Schedule | Proposed Schedule |
|---|---|---|
| Non-Expert Discovery Cut-Off | 3/7/2022 | 8/8/2022 |
| Opening Expert Reports | 5/9/2022 | 10/10/2022 |
| Rebuttal Expert Reports | 6/20/2022 | 11/21/2022 |
| Expert Discovery Cut-Off | 8/8/2022 | 1/9/2022 |
| Law and Motion – | | 2/13/2022 |

| | | |
|---|---|---|
| Motions Filed No Later Than | 9/12/2022 | |
| Law and Motion Cut-Off | 10/11/2022 | 3/13/2023 |
| Deadline To File Motions In Limine | 10/17/2022 | 3/20/2023 |
| Deadline To File Pretrial Documents | 11/7/2022 | 4/10/2023 |
| Final Pretrial Conference | 11/21/2022 | 4/24/2023 |
| Jury Trial | 12/6/2022 | 5/9/2023 |

Please provide Apple's position by the close of business today and let us know when you are available to meet and confer tomorrow.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Passameck, Nora Q.E. <Nora.Passameck@wilmerhale.com>
**Sent:** Wednesday, December 29, 2021 8:01 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

Plaintiffs complain that Apple has somehow caused delay and produced only recently almost 2 million pages of documents, yet Plaintiffs have produced well over 2.9 million pages, and inexplicably have delayed in producing the simplest of collections (e.g., we received Mr. Lamego's deposition transcripts just last week, after numerous requests).  Further, as described in Apple's most recent motions to compel, Plaintiffs have failed to provide Apple crucial discovery regarding the purported trade secrets at issue and damages Plaintiffs seek.  Moreover, certain of the deadlines (such as that for non-email ESI) are the result of Plaintiff raising issues very late in discovery and then, even after raising them, inexplicably delaying filing motions.

Please provide Plaintiffs' proposed changes to the schedule up to and including trial so that we can evaluate precisely what Plaintiffs are proposing.

Thank you,

Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, December 27, 2021 5:28 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; \*\*\* Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

EXTERNAL SENDER

Nora,

Thank you for confirming the parties agreement on the schedule for briefing Masimo's 12/22 motion to compel and Apple's 12/23 motion to compel.

As for the overall schedule, we never expressed a "desire" to extend the schedule.  Instead, we explained that the numerous and lengthy extensions obtained by Apple had a cumulative effect of making the current schedule untenable, and that Apple's position on the overall schedule left us with no choice but to decline further extensions that we would normally provide.  The current fact discovery cutoff is March 7, 2022.  Dkt. 468 at 5.  Apple recently produced almost 2 million pages of documents that Masimo needs to review in order to complete depositions.  Apple has also successfully obtained numerous extensions of time to provide discovery ordered by the Special Master, including lengthy extensions to produce documents not until January.  After the parties finish reviewing each other's productions, the parties intend to take more than 20 depositions each.  Based on prior experience in this case, we also expect the parties will continue having a significant number of disputes that all take time to resolve.

Accordingly, we do not believe the current schedule is feasible.  We suggest that a five-month extension of time would hopefully be sufficient to complete fact discovery in an orderly fashion.  Please let us know when Apple is available this week for a conference of counsel to discuss the schedule and, if necessary, a motion to adjust the schedule.  So that we can have a productive meet and confer, please provide Apple's position on our request at least 24 hours in advance of the meeting.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Monday, December 27, 2021 2:20 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

We understand that Plaintiffs agree to a reciprocal extension for both motions submitted last week so long as the extension is not used against Plaintiffs on any motion to modify the case schedule. We agree.  Further, Plaintiffs have now mentioned several times their desire for an extension of the schedule, but have never made any proposal for Apple to consider.  If Plaintiffs have a proposal, please make one.

Thank you,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, December 27, 2021 11:24 AM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

EXTERNAL SENDER

Nora,

Masimo did not refuse Apple's extension "in order to disrupt the personal obligations of [its] own team and [Apple's]."  We have explained many times that one extension alone may not be prejudicial, but the cumulative effect of Apple's many extensions has made the current schedule untenable.

We continue to believe Apple should not be asking for extensions given Apple's position that the schedule cannot change.  However, we will grant this particular request as a professional courtesy in view of the holidays if Apple agrees it will not use this extension against us on any motion to modify the case schedule.  Please let us know by close of business today if Apple agrees.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Sunday, December 26, 2021 7:26 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam:

We filed our motion because Masimo has refused to provide adequate responses to the interrogatories at issue and to comply with its Rule 26(a)(1) obligations.  Apple's motion obviously has nothing to do with seeking "leverage on a requested extension on a separate issue."

We fail to see how either side would be prejudiced in any way by a reciprocal one-week extension.  Contrary to your e-mail, you obviously do have a choice: you could act professionally and accommodate a reasonable request for a reciprocal extension, or you could refuse in order to disrupt the personal obligations of your own team and ours.  You have chosen the latter.

Regards,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, December 24, 2021 5:23 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

We are in receipt of your extension request that you sent at 7:53pm on December 23 demanding a response on Christmas Eve.  Your request seeks an extension for Apple to respond to our December 22 motion in exchange for an extension for Masimo to respond to your December 23 motion.  We disagree with what appears to us to be Apple's tactic of filing a premature motion the evening before Christmas Eve to seek leverage on a requested extension on a separate issue.

As we separately explained to Mr. Parker, Apple has requested many lengthy extensions while simultaneously stating that it will not agree to extend the schedule.  While we would ordinarily grant your request as a professional courtesy in view of the holidays, Apple has left us no choice but to

decline the request at this time.  If Apple changes its position regarding extending the overall case schedule, then we are happy to discuss a reasonable extension on this issue.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

# Knobbe Martens

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Thursday, December 23, 2021 7:53 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Counsel,

Apple's opposition to Plaintiffs' Motion to Compel Apple to produce documents responsive to Masimo's Request for Production Nos. 377, 388-395, 413-416, 418, 420-421, 425, 480, 536-537, and 548-553 is currently due December 29, and Plaintiffs' opposition to Apple's Motion to Compel supplementation of Plaintiffs' responses to Apple Interrogatory Nos. 13, 17, and 28 and their initial disclosure regarding computation of damages under FRCP 26 is due December 30.  In light of the holidays, we propose that the parties agree on reciprocal one-week extensions of the deadlines for oppositions.  Please let us know if you agree, and we can notify Judge Guilford.  If we do not hear from you by tomorrow, we will proceed with the default briefing schedule for both motions.

Regards,
Nora

**Nora Q.E. Passamaneck | WilmerHale**
1225 Seventeenth St.
Suite 2600
Denver, CO 80202 USA
+1 720 274 3152 (t)
+1 720 274 3133 (f)
nora.passamaneck@wilmerhale.com

**Please consider the environment before printing this email.**

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

EXHIBIT 39

| From: | Andrew Guilford |
|---|---|
| To: | Parker, Kenneth G. |
| Cc: | Heidi Adams; Andrea, Brian; Bridges, Jonathan C; Brzozowski, David; Buroker, Brian M.; Cornillie, Henry H.; Do, Kim; Earnest, Tyler; Evanson, Blaine H.; Kaounis, Angelique; Lam, David; Lerner, Joshua H.; Lo, Jason; Lyon, H. Mark; McDermott, Shannon C.; Powell, Nathan; Rosenthal, Brian A.; Samplin, Ilissa; Satanove, Doran J.; Schuemann, Susanna G.; Semendyai, Vladimir J.; Shapiro, Russell O; Vaden, Olivia L.; Masimo.Apple; Daniel.Hughes; Joe.Re; Steve.Jensen; Ben.Katzenellenbogen; Perry.Oldham; Stephen.Larson; Mark.Kachner; mlewis@lewisllewellyn.com; WH Apple-Masimo Service List; Peter.Toller; Jenna Kelleher; Adam.Powell |
| Subject: | Re: Apple's Request for Extension re Order No. 2 (Amended) >>> MASIMO |
| Date: | Sunday, December 26, 2021 12:13:29 PM |

On receiving the Sunday, 12/26 10:41 am CST email below, I ORDER that Apple do what it says it is able to do in this passage:

<< Apple is able to meet tomorrow's deadline to provide information on the subjects described on pages 12, lines 24 to page 14, line 4 of Order No. 2. >>

I understand that this now leaves only the following unresolved issue needing immediate resolution.

<< Apple requests an extension of time to respond *only* as to the two topics raised on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order"). >>

A three day extension is GRANTED on this unresolved issue only pending resolution. Mindful that it is Sunday, 12/26, I would welcome a very brief response, if any, by the end of business on Monday, December 27 about whether more than a three day extension on this unresolved issue is warranted.

The parties are urged to do what is necessary to avoid these types of disputes.

AJG

> On Dec 26, 2021, at 10:41 AM, Parker, Kenneth G. <KParker@gibsondunn.com> wrote:
>
>
> Dear Judge Guilford,
>
> Thank you for your response on December 24, 2021 regarding Apple's request for an extension and setting a time frame for opposing counsel to respond.  I am modifying Apple's request.  Apple requests an extension of time to respond *only* as to the two topics raised on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order"). Apple requests that it be permitted to provide a declaration as to those two topics (on page 15, lines 1-6 of Order No. 2) on January 18, 2021 instead of Monday.  Apple is able to meet tomorrow's deadline to provide information on the subjects described on pages 12, lines 24 to page 14, line 4 of Order No. 2.  For your honor's convenience, the two topics as to which Apple seeks more time are here:

> 1    Masimo's request for more information about Apple's non-email ESI search strategy is
> 2    GRANTED in that Apple's counsel is ORDERED to provide a sworn declaration to Masimo and the
> 3    Special Master within fourteen days of this Order stating, for each custodian, (1) the types of non-
> 4    email communication streams that Apple is searching and (2) whether any such search is limited to
> 5    that custodian's communications with particular other individuals, and who those other individuals
> 6    are. As Masimo acknowledged, Apple has otherwise partially addressed this aspect of Masimo's

Thank you in advance for considering Apple's request.

**Ken Parker**
Partner

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

On Dec 24, 2021, at 4:21 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:


**[WARNING: External Email]**
Judge Guilford,

Mr. Parker emailed us to request this extension at 7:53pm last night (December 23). He is correct that we did not have a chance to consider or discuss his request internally before he made the request to you. While we would normally accommodate reasonable extensions (especially in view of the holidays), given Apple's stated position on the overall case schedule we cannot agree to this request. We filed these motions more than two months ago on October 12 and October 19. The December 2 Tentative Order originally imposed a seven-day deadline to respond (about December 10 depending on when the final Order issued). At the December 3 hearing, Mr. Parker asked for an extension of time to respond until December 20. See Tr. at 67-68. The final order issued on December 10 and gave Apple 14 days to respond. Because of the holidays, Apple's current deadline is December 27—seven days longer than Apple requested at the hearing.

Apple now asks for an additional three-week extension, which would make Apple's deadline more than 4 weeks after the December 20 deadline that Apple requested at the hearing. At the same time, Apple stated on the record that it would not agree to extend the schedule to accommodate its many lengthy extension requests. See Tr. at 65. Because of Apple's stated position that it will not agree to extend the case schedule, Apple leaves no practical option other than for Masimo to oppose this extension.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

## Knobbe Martens

**From:** Andrew Guilford <andrewguilford@judicatewest.com>
**Sent:** Friday, December 24, 2021 12:55 PM
**To:** Parker, Kenneth G. <KParker@gibsondunn.com>
**Cc:** Heidi Adams <heidi@judicatewest.com>; Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Bridges, Jonathan C <JBridges@gibsondunn.com>; Brzozowski, David <DBrzozowski@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Cornillie, Henry H. <HCornillie@gibsondunn.com>; Do, Kim <KDo@gibsondunn.com>; Earnest, Tyler <TEarnest@gibsondunn.com>; Evanson, Blaine H. <BEvanson@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Lam, David <DLam@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; McDermott, Shannon C. <SMcDermott@gibsondunn.com>; Powell, Nathan <NPowell@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Satanove, Doran J. <DSatanove@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Shapiro, Russell O <RShapiro@gibsondunn.com>; Vaden, Olivia L. <OVaden@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Daniel.Hughes <Daniel.Hughes@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Ben.Katzenellenbogen <Ben.Katzenellenbogen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; mlewis@lewisllewellyn.com; WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>; Peter.Toller <Peter.Toller@knobbe.com>; Jenna Kelleher <jennak@judicatewest.com>; andrewguilford@judicarewest.com
**Subject:** Re: Request for Extension re Order No. 2 >>> MASIMO

Counsel,

I have received the email below that states:

<< I did advise Mr. Powell and colleagues last night of our request, but they haven't yet had the chance to provide their position on this request. >>

Mindful that it is Christmas Eve, I would welcome a very brief response, if any, by the end of business on Monday, December 27.

AJG

On Dec 24, 2021, at 2:03 PM, Parker, Kenneth G. <KParker@gibsondunn.com> wrote:

Dear Judge Guilford,

We write on behalf of Apple to request an extension of time to January 18, 2022 to serve the declaration on the subjects described on pages 12, lines 24 to page 14, line 4 and required on page 15, lines 1-6 of Order No. 2 of Special Master on Discovery Motion served December 10, 2021 (the "Order").  The declaration is currently due December 27, 2021 because Friday, December 24, 2021 (14 days after service of the Order) is a legal holiday. (See F.R.Civ.Proc. 6(a).)  The Order is attached for your convenience.  Apple personnel have been working diligently to address the issues identified in the Order, but have not yet completed that work.  Apple believes that the extension to a date that is 11 business days after the Apple business shutdown that occurs December 24 to January 2 will ensure a more productive disclosure of information.

In light of the holidays, we wanted to get this request to you as soon as we knew it was needed, and are happy to provide more information if requested or discuss via telephone or videoconference if and as you desire. In addition, I did advise Mr. Powell and colleagues last night of our request, but they haven't yet had the chance to provide their position on this request.

Thank you for considering Apple's request.

**Ken Parker**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT 40

| | |
|---|---|
| **From:** | Selwyn, Mark |
| **To:** | Masimo.Apple |
| **Cc:** | *** Apple-Masimo; WH Apple-Masimo Service List |
| **Subject:** | Masimo v. Apple, C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE -- Request for M&C Pursuant to LR 7-3 |
| **Date:** | Tuesday, November 23, 2021 6:38:14 PM |

Counsel:

Apple plans to file a motion seeking summary judgment on Plaintiffs' claims for trade secret misappropriation on the basis that they are time-barred.  In the alternative, Apple seeks bifurcation of this statute of limitations issue.  Please let us know your availability tomorrow or Monday to meet and confer pursuant to L.R. 7-3.

Mark

EXHIBIT 41

| | |
|---|---|
| **From:** | Andrea, Brian |
| **To:** | Masimo.Apple |
| **Cc:** | *** Apple-Masimo; WH Apple-Masimo Service List |
| **Subject:** | Masimo v. Apple (C.A. 8:20-cv-48-JVS) - Plaintiffs" document production |
| **Date:** | Thursday, December 2, 2021 9:00:14 PM |

Counsel,

While we are still reviewing Plaintiffs' document production, and will reach out regarding any further issues we identified, we have already identified multiple issues that require correction.  Specifically, there are a number of documents in Plaintiffs' production that appear to have been produced as single consecutive pages rather than as a single document (many of which were produced in reverse order, so that the last page from the document is the first Bates number in the consecutive page range).  For example, Bates numbers MASA00294308-MASA00294309 are consecutive pages that appear to be a part of a single document, but rather than produce the single document, Plaintiffs have instead produced each page as its own document.  Moreover,  MASA00294309 appears to be the first page of the document, but was produced after MASA00294308, which is the second page of the document.  There are also other examples of documents with these issues in Plaintiffs' production. *See, e.g.*, MASA00294303-MASA00294305; MASA00294306-MASA00294307.  Please confirm Plaintiffs will immediately review their production to identify all instances where these issues exist and provide a load file or replacement production that corrects the issues.

Additionally, Plaintiffs produced nearly 17,000 documents for which the custodian is listed as simply "Masimo" (and for which no additional metadata has been provided), but no files for which the custodian is "Cercacor."  ***First***, please confirm that you have performed a reasonable search of both Masimo and Cercacor's files for documents and ESI responsive to Apple's RFPs and the parties' agreed search terms.  ***Second***, please identify the custodian (whether an individual, database, or something else) for each of the "Masimo" files and provide the metadata for those documents.  ***Third***, Plaintiffs use the same Bates prefix for all of the documents that have been produced, so it is unclear which documents were in the possession, custody, or control of Masimo and which documents were in the possession, custody, or control of Cercacor.  Please let us know how we can identify which documents came from  Cercacor and which documents came from Masimo or provide a production overlay that provides this information.

Please confirm Plaintiffs will provide the information requested herein.  If Plaintiffs are unwilling to do so, Apple requests a meet and confer pursuant to the Order Appointing Special Master.

Thanks,
Brian

**Brian Andrea**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

EXHIBIT 42

| From: | Satanove, Doran J. |
|---|---|
| To: | Fong, Oliver; Cheryl.Burgess; Masimo.Apple; WHApple-MasimoServiceList@wilmerhale.com |
| Cc: | *** Apple-Masimo; Andrea, Brian |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence |
| Date: | Thursday, December 16, 2021 3:08:12 PM |

Cheryl,

Per the below correspondence, Plaintiffs agreed to provide their position on Apple's RFPs 276 and 277 following the parties' May 27 meet and confer.  We do not believe Plaintiffs ever did so.  If Plaintiffs contend we are mistaken, please direct us to the relevant communication.  Otherwise, please promptly provide Plaintiffs' position as to these RFPs.

Best,
Doran

**Doran J. Satanove**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.4098 • Fax +1 212.817.9598
DSatanove@gibsondunn.com • www.gibsondunn.com

---

**From:** Fong, Oliver
**Sent:** Friday, May 28, 2021 10:28 AM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl,

I write to memorialize the parties' May 27 meet and confer teleconference about the issues raised in Apple's May 17 letter and Plaintiffs' May 27 response.

The parties agreed to discuss RFPs 268, 269, and 278 at a later time, in connection with the other RFPs discussed in your letter dated May 27.  As we noted during our call, we will let you know when we have had a chance to review your letter and are available to discuss.

Regarding RFPs 276 and 277, Apple explained the relevance of these RFPs and indicated that the RFPs seek documents related to the involvement and relevance of Messrs. Lamego and O'Reilly to the investigation of Plaintiffs' Pronto products.   You agreed to discuss Plaintiffs' response with your team and get back to us with your position.  We look forward to hearing from you.

Regards,
**Oliver Fong**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

---

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Thursday, May 27, 2021 11:44 AM
**To:** Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]
Oliver,

We are available to meet and confer regarding the issues in your letter dated May 17, 2021 today between 12 AM and 2 PM or after 4:00 PM.  Please let us know if that works for you, and if so please circulate a dial in number.

Thanks,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Fong, Oliver <OFong@gibsondunn.com>
**Sent:** Monday, May 17, 2021 4:19 PM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl,

Please see the attached correspondence.  Thanks.

Regards,
Oliver
**Oliver Fong**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT 43

| From: | Adam.Powell |
|---|---|
| To: | Passamaneck, Nora Q.E. |
| Cc: | WH Apple-Masimo Service List; *** Apple-Masimo; Masimo.Apple |
| Subject: | RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel |
| Date: | Friday, January 7, 2022 11:43:17 AM |

Nora,

We still have not received Apple's position or even a time that Apple is available to meet despite Apple telling us it would meet and confer with us this week.  If we do not hear from you soon, we will apply *ex parte* for relief from Local Rule 7-3.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, January 6, 2022 10:52 AM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Nora,

We disagree with Apple's position that it may decline to respond to Masimo emails because of its "shutdown," while simultaneously pushing Masimo on other issues.  It has now been almost two weeks since Apple requested (and we provided) Masimo's position on this issue.  Apple told us that it would meet and confer with us this week.  We expect Apple to respond today with its position in writing along with the times that it is available to meet and confer tomorrow.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Wednesday, January 5, 2022 3:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>

**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

As we have told you, Apple's holiday shutdown lasted through and including Monday, January 3.  We expect to be in a position to meet and confer with you this week, and will follow up with specific suggested times.

Regards,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, January 4, 2022 4:29 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

We have not received a response despite requesting a meet and confer more than a week ago. Please let us know when you are available.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Monday, January 3, 2022 3:00 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Nora,

Thanks for your email.  We disagree with Apple's position on this issue, as well as its reference to Logan's email.  Logan was responding to **Apple's** request to defer Masimo's meet and confer on privilege logs until the week of January 3.  In agreeing to Apple's request, Logan suggested the parties also discuss Apple's similar request to meet and confer on privilege logs at the same time.

Regardless, we understand Apple is representing it is unable to discuss this issue with us before Tuesday.  Please let us know a date and time when you are available.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Thursday, December 30, 2021 2:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

You have now made conflicting demands for a meet-and-confer.   You previously asserted that Plaintiffs required Apple's position "at least 24 hours in advance of the meeting" so that the parties "can have a productive meet and confer."   Yet you now demand that we meet-and-confer on January 3, even though we have previously told you that Apple is shutdown through January 3, returning January 4.  That Apple is not available this week should come as little surprise – Plaintiffs have put off a meet-and-confer on privilege logs until next week when members of your team will be back from the holidays.  *See* Logan Young December 30 email.  We will confer with our client as soon as reasonably possible in light of the holidays and will propose a time to meet-and-confer next week.

Regards,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, December 30, 2021 11:25 AM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

Apple requested that Masimo provide its position on the schedule on December 27.  We did so that
same day.  Apple now states it cannot respond or meet with us for at least a week.  Since Apple is
unwilling to meet with us this week, please confirm a time that you are available to meet with us on
January 3 so that any necessary motion practice can proceed expeditiously.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Wednesday, December 29, 2021 4:17 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

Thank you for providing Plaintiffs' proposal.  Due to the holidays and Apple's week-long shutdown,
we will not be able to respond "by the close of business today."  We expect to be in a position to
meet and confer with you next week.

Best regards,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, December 29, 2021 12:03 PM
**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

We disagree with Apple's perspective, but note that Apple seeks further document discovery and claims there are numerous remaining disputes to be resolved.

My prior email proposed "a five-month extension of time."  Below is a chart applying that timing with potential dates.  Masimo reserves the right to request different dates in any motion practice on the schedule.

| Event | Current Schedule | Proposed Schedule |
|---|---|---|
| Non-Expert Discovery Cut-Off | 3/7/2022 | 8/8/2022 |
| Opening Expert Reports | 5/9/2022 | 10/10/2022 |
| Rebuttal Expert Reports | 6/20/2022 | 11/21/2022 |
| Expert Discovery Cut-Off | 8/8/2022 | 1/9/2022 |
| Law and Motion – Motions Filed No Later Than | 9/12/2022 | 2/13/2022 |
| Law and Motion Cut-Off | 10/11/2022 | 3/13/2023 |
| Deadline To File Motions In Limine | 10/17/2022 | 3/20/2023 |
| Deadline To File Pretrial Documents | 11/7/2022 | 4/10/2023 |
| Final Pretrial Conference | 11/21/2022 | 4/24/2023 |
| Jury Trial | 12/6/2022 | 5/9/2023 |

Please provide Apple's position by the close of business today and let us know when you are available to meet and confer tomorrow.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245** Direct
**Knobbe Martens**

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Wednesday, December 29, 2021 8:01 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-

[Masimo@gibsondunn.com](mailto:Masimo@gibsondunn.com)>; Masimo.Apple <[Masimo.Apple@knobbe.com](mailto:Masimo.Apple@knobbe.com)>
**Cc:** WH Apple-Masimo Service List <[WHApple-MasimoServiceList@wilmerhale.com](mailto:WHApple-MasimoServiceList@wilmerhale.com)>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

Plaintiffs complain that Apple has somehow caused delay and produced only recently almost 2 million pages of documents, yet Plaintiffs have produced well over 2.9 million pages, and inexplicably have delayed in producing the simplest of collections (e.g., we received Mr. Lamego's deposition transcripts just last week, after numerous requests).  Further, as described in Apple's most recent motions to compel, Plaintiffs have failed to provide Apple crucial discovery regarding the purported trade secrets at issue and damages Plaintiffs seek.  Moreover, certain of the deadlines (such as that for non-email ESI) are the result of Plaintiff raising issues very late in discovery and then, even after raising them, inexplicably delaying filing motions.

Please provide Plaintiffs' proposed changes to the schedule up to and including trial so that we can evaluate precisely what Plaintiffs are proposing.

Thank you,
Nora

---

**From:** Adam.Powell <[Adam.Powell@knobbe.com](mailto:Adam.Powell@knobbe.com)>
**Sent:** Monday, December 27, 2021 5:28 PM
**To:** Passamaneck, Nora Q.E. <[Nora.Passamaneck@wilmerhale.com](mailto:Nora.Passamaneck@wilmerhale.com)>; *** Apple-Masimo <[Apple-Masimo@gibsondunn.com](mailto:Apple-Masimo@gibsondunn.com)>; Masimo.Apple <[Masimo.Apple@knobbe.com](mailto:Masimo.Apple@knobbe.com)>
**Cc:** WH Apple-Masimo Service List <[WHApple-MasimoServiceList@wilmerhale.com](mailto:WHApple-MasimoServiceList@wilmerhale.com)>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

**EXTERNAL SENDER**

Nora,

Thank you for confirming the parties agreement on the schedule for briefing Masimo's 12/22 motion to compel and Apple's 12/23 motion to compel.

As for the overall schedule, we never expressed a "desire" to extend the schedule.  Instead, we explained that the numerous and lengthy extensions obtained by Apple had a cumulative effect of making the current schedule untenable, and that Apple's position on the overall schedule left us with no choice but to decline further extensions that we would normally provide.  The current fact discovery cutoff is March 7, 2022.  Dkt. 468 at 5.  Apple recently produced almost 2 million pages of documents that Masimo needs to review in order to complete depositions.  Apple has also successfully obtained numerous extensions of time to provide discovery ordered by the Special Master, including lengthy extensions to produce documents not until January.  After the parties

finish reviewing each other's productions, the parties intend to take more than 20 depositions each. Based on prior experience in this case, we also expect the parties will continue having a significant number of disputes that all take time to resolve.

Accordingly, we do not believe the current schedule is feasible.  We suggest that a five-month extension of time would hopefully be sufficient to complete fact discovery in an orderly fashion. Please let us know when Apple is available this week for a conference of counsel to discuss the schedule and, if necessary, a motion to adjust the schedule.  So that we can have a productive meet and confer, please provide Apple's position on our request at least 24 hours in advance of the meeting.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Passameneck, Nora Q.E. <Nora.Passaneneck@wilmerhale.com>
**Sent:** Monday, December 27, 2021 2:20 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam,

We understand that Plaintiffs agree to a reciprocal extension for both motions submitted last week so long as the extension is not used against Plaintiffs on any motion to modify the case schedule. We agree.  Further, Plaintiffs have now mentioned several times their desire for an extension of the schedule, but have never made any proposal for Apple to consider.  If Plaintiffs have a proposal, please make one.

Thank you,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, December 27, 2021 11:24 AM
**To:** Passameneck, Nora Q.E. <Nora.Passameneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

EXTERNAL SENDER

Nora,

Masimo did not refuse Apple's extension "in order to disrupt the personal obligations of [its] own
team and [Apple's]."  We have explained many times that one extension alone may not be
prejudicial, but the cumulative effect of Apple's many extensions has made the current schedule
untenable.

We continue to believe Apple should not be asking for extensions given Apple's position that the
schedule cannot change.  However, we will grant this particular request as a professional courtesy in
view of the holidays if Apple agrees it will not use this extension against us on any motion to modify
the case schedule.  Please let us know by close of business today if Apple agrees.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Sunday, December 26, 2021 7:26 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Adam:

We filed our motion because Masimo has refused to provide adequate responses to the
interrogatories at issue and to comply with its Rule 26(a)(1) obligations.  Apple's motion obviously
has nothing to do with seeking "leverage on a requested extension on a separate issue."

We fail to see how either side would be prejudiced in any way by a reciprocal one-week extension.
Contrary to your e-mail, you obviously do have a choice: you could act professionally and
accommodate a reasonable request for a reciprocal extension, or you could refuse in order to
disrupt the personal obligations of your own team and ours.  You have chosen the latter.

Regards,
Nora

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, December 24, 2021 5:23 PM

**To:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** RE: Masimo v. Apple DCT: deadlines for oppositions on motions to compel

EXTERNAL SENDER

Nora,

We are in receipt of your extension request that you sent at 7:53pm on December 23 demanding a response on Christmas Eve.  Your request seeks an extension for Apple to respond to our December 22 motion in exchange for an extension for Masimo to respond to your December 23 motion.  We disagree with what appears to us to be Apple's tactic of filing a premature motion the evening before Christmas Eve to seek leverage on a requested extension on a separate issue.

As we separately explained to Mr. Parker, Apple has requested many lengthy extensions while simultaneously stating that it will not agree to extend the schedule.  While we would ordinarily grant your request as a professional courtesy in view of the holidays, Apple has left us no choice but to decline the request at this time.  If Apple changes its position regarding extending the overall case schedule, then we are happy to discuss a reasonable extension on this issue.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Passamaneck, Nora Q.E. <Nora.Passamaneck@wilmerhale.com>
**Sent:** Thursday, December 23, 2021 7:53 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>
**Subject:** Masimo v. Apple DCT: deadlines for oppositions on motions to compel

Counsel,

Apple's opposition to Plaintiffs' Motion to Compel Apple to produce documents responsive to Masimo's Request for Production Nos. 377, 388-395, 413-416, 418, 420-421, 425, 480, 536-537, and 548-553 is currently due December 29, and Plaintiffs' opposition to Apple's Motion to Compel supplementation of Plaintiffs' responses to Apple Interrogatory Nos. 13, 17, and 28 and their initial disclosure regarding computation of damages under FRCP 26 is due December 30.  In light of the holidays, we propose that the parties agree on reciprocal one-week extensions of the deadlines for

oppositions.  Please let us know if you agree, and we can notify Judge Guilford.  If we do not hear from you by tomorrow, we will proceed with the default briefing schedule for both motions.

Regards,
Nora


**Nora Q.E. Passamaneck | WilmerHale**
1225 Seventeenth St.
Suite 2600
Denver, CO 80202 USA
+1 720 274 3152 (t)
+1 720 274 3133 (f)
nora.passamaneck@wilmerhale.com

**Please consider the environment before printing this email.**

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original

message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

EXHIBIT 44

| | |
|---|---|
| **From:** | Daniel.Hughes |
| **To:** | Parker, Kenneth G.; Joe.Re; Ben.Katzenellenbogen |
| **Cc:** | Masimo.Apple; Mark Selwyn; Lerner, Joshua H. |
| **Subject:** | RE: Masimo v. Apple, C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE -- Request for M&C Pursuant to LR 7-3 |
| **Date:** | Monday, November 29, 2021 5:29:57 PM |

Ken,

We asked reasonable questions so that we could be prepared to meet and confer.  We have provided such information at Apple's request in the past, so we assumed Apple would return the courtesy.  We disagree with Apple's unwillingness to do so.

Apple claims Local Rule 7-3 does not require Apple to explain its position in advance, but it also does not require Masimo to drop everything to meet on just two business days' notice, particularly when Apple has not identified any urgency in this request.  Apple previously represented it was unavailable to prepare briefs or meet and confer with us last week due to the holiday.  Apple further claimed it needed an extension on a simple discovery dispute because of the holiday.  Apple also used the holiday to wait eleven days to meet with us on our November 18 letter and has still not responded to multiple emails we sent on November 22.  Yet Apple demands we meet in just two business days on an email Apple sent on November 23.  We plan to discuss the matter internally today so that we are prepared to meet and confer as early as 4pm pacific tomorrow.  We hope you will provide the requested information to us in advance of the meeting.

Thanks,
Daniel

**Daniel Hughes**
Partner

858-707-4208 **Direct**

**Knobbe Martens**

---

**From:** Parker, Kenneth G. <KParker@gibsondunn.com>
**Sent:** Monday, November 29, 2021 1:15 PM
**To:** Daniel.Hughes <Daniel.Hughes@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Ben.Katzenellenbogen <Ben.Katzenellenbogen@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Mark Selwyn <Mark.Selwyn@wilmerhale.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>
**Subject:** RE: Masimo v. Apple, C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE -- Request for M&C Pursuant to LR 7-3

Joe, Ben, and Daniel,

Daniel, I am pleased to meet you by email. Can you let us know your or your team's availability to get on the phone today, or whether Masimo's counsel is simply refusing to get on the phone today and meet and confer pursuant to L.R. 7-3?  Nothing in L. R. 7-3 or any case applying it requires what you

ask for below.  We can certainly discuss your request for more details in our L.R. 7-3 meet and confer itself.  Please let us know your availability, or someone on your team's availability, this afternoon.  This is now our fourth request to meet and confer pursuant to L.R. 7-3.

Best regards,

**Ken Parker**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

---

**From:** Daniel.Hughes <Daniel.Hughes@knobbe.com>
**Sent:** Monday, November 29, 2021 12:05 PM
**To:** Parker, Kenneth G. <KParker@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Ben.Katzenellenbogen <Ben.Katzenellenbogen@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Mark Selwyn <Mark.Selwyn@wilmerhale.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>
**Subject:** RE: Masimo v. Apple, C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE -- Request for M&C Pursuant to LR 7-3

[WARNING: External Email]

Hi Ken,

So that we can be prepared to meaningfully meet and confer, please briefly describe Apple's argument and identify the evidence on which Apple plans to rely.  Please also explain the type of bifurcation that Apple plans to seek in the alternative.  During the meet and confer, we would also like to discuss a briefing schedule in view of the upcoming holidays.

Please provide the requested information 24 hours in advanced of the meet and confer.  Assuming Apple provides the information by the same time today, we are available to meet at 4pm pacific tomorrow.

Thanks,
Daniel

**Daniel Hughes**
Partner
858-707-4208 **Direct**
**Knobbe Martens**

---

**From:** Parker, Kenneth G. <KParker@gibsondunn.com>
**Sent:** Monday, November 29, 2021 10:20 AM
**To:** Joe.Re <Joe.Re@knobbe.com>; Ben.Katzenellenbogen <Ben.Katzenellenbogen@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Mark Selwyn <Mark.Selwyn@wilmerhale.com>;
Lerner, Joshua H. <JLerner@gibsondunn.com>
**Subject:** Fwd: Masimo v. Apple, C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE -- Request for M&C
Pursuant to LR 7-3

Joe, Ben, and others,

Please let us know when someone on your team can talk today. Thanks.

**Ken Parker**
Partner

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4336 • Cell +1 949.433.4890
KParker@gibsondunn.com • www.gibsondunn.com

Begin forwarded message:

**From:** "Selwyn, Mark" <Mark.Selwyn@wilmerhale.com>
**Date:** November 23, 2021 at 3:38:14 PM PST
**To:** "Masimo.Apple" <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>, WH Apple-Masimo Service List
<WHApple-MasimoServiceList@wilmerhale.com>
**Subject: Masimo v. Apple, C.D. Cal. Case No. 8:20-cv-00048-JVS-JDE -- Request for M&C Pursuant
to LR 7-3**

  **[WARNING: External Email]**
Counsel:

Apple plans to file a motion seeking summary judgment on Plaintiffs' claims for trade secret
misappropriation on the basis that they are time-barred.  In the alternative, Apple seeks bifurcation
of this statute of limitations issue.  Please let us know your availability tomorrow or Monday to meet
and confer pursuant to L.R. 7-3.

Mark

---

This message may contain confidential and privileged information for the sole use of the
intended recipient. Any review, disclosure, distribution by others or forwarding without

express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

EXHIBIT 45

DISCOVERY-CJB,MEDIATION-MPT,PATENT

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:19-cv-00097-CFC-CJB

Magnolia Medical Technologies, Inc. v. Kurin, Inc.        Date Filed: 01/16/2019
Assigned to: Judge Colm F. Connolly                        Jury Demand: Plaintiff
Referred to: Judge Christopher J. Burke                    Nature of Suit: 830 Patent
Cause: 35:271 Patent Infringement                          Jurisdiction: Federal Question

**Plaintiff**

**Magnolia Medical Technologies, Inc.**        represented by   **Douglas Edward McCann**
                                                               Fish & Richardson, P.C.
                                                               222 Delaware Avenue, 17th Floor
                                                               P.O. Box 1114
                                                               Wilmington, DE 19899-1114
                                                               302- 652-5070
                                                               Fax: 302-652-0607
                                                               Email: dmccann@fr.com
                                                               *TERMINATED: 03/15/2021*
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Rodger Dallery Smith , II**
                                                               Morris, Nichols, Arsht & Tunnell LLP
                                                               1201 North Market Street
                                                               P.O. Box 1347
                                                               Wilmington, DE 19899
                                                               (302) 351-9205
                                                               Email: rdsefiling@mnat.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Anthony David Raucci**
                                                               Morris, Nichols, Arsht & Tunnell LLP
                                                               1201 North Market Street
                                                               P.O. Box 1347
                                                               Wilmington, DE 19899
                                                               302-351-9392
                                                               Email: araucci@mnat.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Ashok Ramani**
                                                               Email: ashok.ramani@davispolk.com
                                                               *PRO HAC VICE*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Corrin N. Drakulich**
                                                               Email: drakulich@fr.com
                                                               *TERMINATED: 03/15/2021*
                                                               *PRO HAC VICE*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **David J. Lisson**
                                                               Email: david.lisson@davispolk.com
                                                               *PRO HAC VICE*
                                                               *ATTORNEY TO BE NOTICED*

**Katherine D. Prescott**
Pro Hac Vice
Email: prescott@fr.com
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathryn B. Bi**
Email: kathryn.bi@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Elena Stiteler**
Email: stiteler@fr.com
*TERMINATED: 12/06/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mathias Samuel**
Email: samuel@fr.com
*TERMINATED: 01/29/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Micah G. Block**
Email: micah.block@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip T. Sheng**
Email: philip.sheng@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M. Oakes**
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
302-778-8477
Email: Oakes@fr.com
*TERMINATED: 03/15/2021*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kurin, Inc.**                    represented by **Cyndi Claxton**
Email: claxton@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Zweig**
Email: zweig@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Seraphine**
Email: seraphine@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Hangartner**

Email: jon@x-patents.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen I. Boyd**
Email: boyd@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Laurence Dorsney**
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888- 6855
Fax: (302) 571-1750
Email: kdorsney@morrisjames.com
*ATTORNEY TO BE NOTICED*

**Louis L. Wai**
Email: wai@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kurin, Inc.**                                        represented by   **Kenneth Laurence Dorsney**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Magnolia Medical Technologies, Inc.**                represented by   **Douglas Edward McCann**
(See above for address)
*TERMINATED: 03/15/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine D. Prescott**
(See above for address)
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M. Oakes**
(See above for address)
*TERMINATED: 03/15/2021*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kurin, Inc.**                                        represented by   **Jacob Zweig**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karen I. Boyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Laurence Dorsney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Louis L. Wai**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

Magnolia Medical Technologies, Inc.                    represented by **Douglas Edward McCann**
(See above for address)
*TERMINATED: 03/15/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine D. Prescott**
(See above for address)
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M. Oakes**
(See above for address)
*TERMINATED: 03/15/2021*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/16/2019 | 1 | COMPLAINT for PATENT INFRINGEMENT filed with Jury Demand against Kurin, Inc. - Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number 0311-2546273.) - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Civil Cover Sheet)(nmg) (Entered: 01/17/2019) |
| 01/16/2019 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (nmg) (Entered: 01/17/2019) |
| 01/17/2019 | | No Summons Issued. (nmg) (Entered: 01/17/2019) |
| 01/17/2019 | 3 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) US 9,855,001 ;US 10,028,689 . (McCann, Douglas) (Entered: 01/17/2019) |
| 01/17/2019 | 4 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/17/2019) |
| 01/23/2019 | | Case Assigned to Judge Colm F. Connolly. Please include the initials of the Judge (CFC) after the case number on all documents filed. (rjb) (Entered: 01/23/2019) |
| 03/07/2019 | 5 | First AMENDED COMPLAINT against Kurin, Inc.- filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T) (McCann, Douglas) (Attachment 4 replaced on 3/11/2019) (fms). (Entered: 03/07/2019) |
| 03/08/2019 | | Summons Issued with Magistrate Consent Notice attached as to Kurin, Inc. on 3/8/2019. (lak) (Entered: 03/08/2019) |
| 03/11/2019 | | PATENT REPORT NOTICE: Please note that if patents are being added to this case (D.I. 5 ), the filing party should complete the Report to Commissioner of Patents & Trademarks, and enter it on the docket using the PATENT/TRADEMARK REPORT event in the OTHER DOCUMENT list. The patent report form can be found at www.ded.uscourts.gov under the Clerk's Office FORMS button. (fms) (Entered: 03/11/2019) |
| 03/11/2019 | 6 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) US 9,855,001 ;US 10,028,689 ;US 10,039,483 ;US 10,220,139 . (McCann, Douglas) (Entered: 03/11/2019) |
| 03/11/2019 | 7 | SUMMONS Returned Executed by Magnolia Medical Technologies, Inc.. Kurin, Inc. served on 3/8/2019, answer due 3/29/2019. (McCann, Douglas) (Entered: 03/11/2019) |
| 03/11/2019 | | CORRECTING ENTRY: Per request of filer, Exhibit D to D.I. 5 has been removed and replaced with the full version of the exhibit. (fms) (Entered: 03/11/2019) |

| 03/19/2019 | 8 | STIPULATION TO EXTEND TIME for Defendant Kurin, Inc. to answer, move or otherwise respond to the First Amended Complaint to April 29, 2019 - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 03/19/2019) |
|---|---|---|
| 03/20/2019 | | SO ORDERED, re 8 STIPULATION TO EXTEND TIME for Defendant Kurin, Inc. to answer, move or otherwise respond to the First Amended Complaint to April 29, 2019 filed by Kurin, Inc. Set/Reset Answer Deadlines: Kurin, Inc. answer due 4/29/2019. Signed by Judge Colm F. Connolly on 3/20/2019. (fms) (Entered: 03/20/2019) |
| 04/29/2019 | 9 | ANSWER to Amended Complaint, re: 5 Amended Complaint,, with Jury Demand , COUNTERCLAIM against All Plaintiffs by Kurin, Inc..(Dorsney, Kenneth) (Entered: 04/29/2019) |
| 04/29/2019 | 10 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 04/29/2019) |
| 04/30/2019 | 11 | MOTION for Pro Hac Vice Appearance of Attorney Karen I. Boyd, Louis Wai and Jacob S. Zweig - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 04/30/2019) |
| 05/01/2019 | | SO ORDERED, re 11 MOTION for Pro Hac Vice Appearance of Attorney Karen I. Boyd, Louis Wai and Jacob S. Zweig filed by Kurin, Inc. Signed by Judge Colm F. Connolly on 5/1/2019. (fms) (Entered: 05/01/2019) |
| 05/03/2019 | | Pro Hac Vice Attorneys Jacob Zweig, Louis Wai, and Karen I. Boyd for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (ddp) (Entered: 05/03/2019) |
| 05/09/2019 | 12 | Order Setting Scheduling Conference: A Scheduling Conference is set for 6/17/2019 at 03:30 PM in Chambers before Judge Colm F. Connolly. Signed by Judge Colm F. Connolly on 5/9/2019. (nmf) (Entered: 05/09/2019) |
| 05/09/2019 | 13 | FIRST AMENDED ANSWER and COUNTERCLAIMS against Magnolia Medical Technologies, Inc. by Kurin, Inc.(fms) (Entered: 05/10/2019) |
| 05/10/2019 | | D.I. 13 has been re-docketed using the answer docket event. (fms) (Entered: 05/10/2019) |
| 05/10/2019 | 14 | ANSWER to 13 Answer to Complaint, Counterclaim by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 05/10/2019) |
| 05/23/2019 | 15 | MOTION for Pro Hac Vice Appearance of Attorney Mathias Samuel, Juanita Brooks, Corrin Drakulich, Bethany Mihalik and Maria Elena Stiteler - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 05/23/2019) |
| 05/23/2019 | | SO ORDERED, re 15 MOTION for Pro Hac Vice Appearance of Attorney Mathias Samuel, Juanita Brooks, Corrin Drakulich, Bethany Mihalik and Maria Elena Stiteler filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 5/23/2019. (fms) (Entered: 05/23/2019) |
| 05/30/2019 | 16 | NOTICE OF SERVICE of (1) First set of requests for production and (2) First set of interrogatories filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 05/30/2019) |
| 05/31/2019 | 17 | MOTION for Pro Hac Vice Appearance of Attorney Jennifer Seraphine - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 05/31/2019) |
| 06/04/2019 | | SO ORDERED, re 17 MOTION for Pro Hac Vice Appearance of Attorney Jennifer Seraphine filed by Kurin, Inc. Signed by Judge Colm F. Connolly on 6/4/2019. (fms) (Entered: 06/04/2019) |
| 06/05/2019 | 18 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s First Set of Requests for Production to Defendant Kurin, Inc. (Nos. 1-59) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 06/05/2019) |
| 06/14/2019 | 19 | NOTICE of Appearance by Robert M. Oakes on behalf of Magnolia Medical Technologies, Inc. (Oakes, Robert) (Entered: 06/14/2019) |
| 06/14/2019 | 20 | PROPOSED ORDER Proposed Scheduling Order by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Letter to Judge Connolly from Robert M. Oakes)(Oakes, Robert) (Entered: 06/14/2019) |
| 06/17/2019 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Scheduling Conference held on 6/17/2019. (Court Reporter V. Gunning.) Counsel to submit the final revised proposed scheduling order to the Court. (nmf) (Entered: 06/17/2019) |
| 06/20/2019 | 21 | PROPOSED ORDER Proposed Scheduling Order by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 06/20/2019) |

| 06/20/2019 | 22 | PROPOSED ORDER Protective Order by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 06/20/2019) |
|---|---|---|
| 06/21/2019 | 23 | SO ORDERED, re 22 STIPULATED PROTECTIVE ORDER. Signed by Judge Colm F. Connolly on 6/20/2019. (nmf) (Entered: 06/21/2019) |
| 06/21/2019 | 24 | SCHEDULING ORDER: Case referred to the Magistrate Judge for the purpose of exploring ADR. Joinder of Parties due by 12/16/2019. Amended Pleadings due by 12/16/2019. Discovery due by 7/17/2020. Dispositive Motions due by 2/5/2021. Joint Claim Construction Brief due by 2/11/2020. A Markman Hearing is set for 3/19/2020 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. A Final Pretrial Conference is set for 6/30/2021 at 04:00 PM in Courtroom 4B before Judge Colm F. Connolly. A Jury Trial is set for 7/12/2021 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. Signed by Judge Colm F. Connolly on 6/20/2019. (nmf) (Entered: 06/21/2019) |
| 06/21/2019 | | CASE REFERRED to Chief Magistrate Judge Mary Pat Thynge for Mediation. Please see Standing Order dated January 20, 2016, regarding disclosure of confidential ADR communications. A link to the standing order is provided here for your convenience at http://www.ded.uscourts.gov/general-orders/magistrate-judges-standing-order-adr-mediation (cak) Modified on 6/21/2019 (cak). (Entered: 06/21/2019) |
| 06/21/2019 | | CORRECTING ENTRY: This matter has been referred to Chief Magistrate Judge Mary Pat Thynge, not Judge Fallon (cak) (Entered: 06/21/2019) |
| 06/24/2019 | 25 | NOTICE OF SERVICE of Defendant Kurin, Inc.'s Rule 26(a)(1) Initial Disclosures filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 06/24/2019) |
| 06/25/2019 | 26 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Initial Disclosures filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 06/25/2019) |
| 06/27/2019 | | CORRECTING ENTRY: The order previously filed as D.I. 27 setting an ADR teleconference before Judge Fallon has been deleted per the correcting entry issued on 6/21/2019. (lih) (Entered: 06/27/2019) |
| 07/01/2019 | 27 | NOTICE OF SERVICE of Responses to First Set of Requests for Production filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/01/2019) |
| 07/08/2019 | 28 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s First Set of Requests for Production of Documents and Things (Nos. 1-38) and Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (Nos. 1-8) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 07/08/2019) |
| 07/08/2019 | 29 | NOTICE of Subpoena to Produce Documents to Richard G. Patton by Kurin, Inc. (Dorsney, Kenneth) (Entered: 07/08/2019) |
| 07/10/2019 | 30 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/10/2019) |
| 07/17/2019 | | Pro Hac Vice Attorney Maria Elena Stiteler,Corrin N. Drakulich,Mathias Samuel for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (lak) (Entered: 07/17/2019) |
| 07/24/2019 | 31 | NOTICE OF SERVICE of Third Party Pathway, LLC's objections to Plaintiff's Subpoena to Produce Documents filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/24/2019) |
| 07/24/2019 | | Set Hearings: A Discovery Conference is set per request of counsel for 10/2/2019 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. (nmf) (Entered: 07/24/2019) |
| 07/25/2019 | 32 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Disclosure of Asserted Claims and Infringement Contentions filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 07/25/2019) |
| 08/29/2019 | 33 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s First Set of Interrogatories to Defendant Kurin, Inc. (Nos. 1-9) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/29/2019) |
| 09/03/2019 | 34 | NOTICE OF SERVICE of Defendant Kurin, Inc.'s Invalidity Contentions filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 09/03/2019) |
| 09/26/2019 | | The 10/2/2019 Discovery Conference is cancelled per counsel as it is no longer needed. (nmf) (Entered: 09/26/2019) |

| 09/27/2019 | 35 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding Parties request to Amend Section G of the Protective Order - re 23 SO ORDERED, Protective Order. (Attachments: # 1 Proposed Stipulated Amended Protective Order)(McCann, Douglas) (Entered: 09/27/2019) |
|---|---|---|
| 10/01/2019 | 36 | NOTICE OF SERVICE of (1) Kurin's response to Magnolia's First Set of Interrogatories (Nos. 1-8); and (2) Kurin's Disclosure of Claim Terms for Construction filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 10/01/2019) |
| 10/01/2019 | 37 | STIPULATED AMENDED PROTECTIVE ORDER. Signed by Judge Colm F. Connolly on 10/1/2019. (fms) (Entered: 10/01/2019) |
| 10/02/2019 | 38 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Proposed Terms for Construction filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 10/02/2019) |
| 10/07/2019 | 39 | ORDER REFERRING CASE to Magistrate Judge Christopher J. Burke for all disputes relating to discovery and the protective order. Signed by Judge Colm F. Connolly on 10/7/2019. (nmf) (Entered: 10/07/2019) |
| 10/07/2019 | 40 | STIPULATION TO EXTEND TIME of Proposed Claim Construction Dates to Various - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 10/07/2019) |
| 10/08/2019 | 41 | ORAL ORDER: The Court, having reviewed the case history in light of the October 7, 2019 referral, hereby ORDERS that the procedures for resolving a dispute relating to discovery or the protective order set out in the Scheduling Order, (D.I. 24 at 9-10), will be modified as follows: Should counsel find, after good faith efforts including verbal communication among Delaware and Lead Counsel for all parties to the dispute, that they are unable to resolve a discovery or protective order matter, the parties involved in the dispute shall submit a joint letter with the text set out in the Court's standard Rule 16 Scheduling Order for Patent cases, which can be found in the "Forms" tab of Magistrate Judge Burke's page on the District Court's website. For disputes relating to discovery, the moving party (i.e., the party seeking relief from the Court) should also file a Motion For Teleconference To Resolve Discovery Dispute, and for disputes relating to protective orders, the parties shall file a Joint Motion for Teleconference to Resolve Protective Order Dispute. The suggested text for these motions can be found in the same Forms tab. The Court will thereafter set a discovery or protective order dispute telephone conference. Ordered by Judge Christopher J. Burke on 10/8/2019. (mlc) (Entered: 10/08/2019) |
| 10/08/2019 | | SO ORDERED, re 40 STIPULATION TO EXTEND TIME of Proposed Claim Construction Dates to Various filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 10/8/2019. (fms) (Entered: 10/08/2019) |
| 10/10/2019 | 42 | NOTICE OF SERVICE of proposed constructions for claim terms filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 10/10/2019) |
| 10/11/2019 | 43 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Proposed Claim Constructions filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 10/11/2019) |
| 10/21/2019 | 44 | STIPULATION TO EXTEND TIME for Parties to File Joint Claim Construction Chart to October 23, 2019 - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 10/21/2019) |
| 10/22/2019 | | SO ORDERED, re 44 STIPULATION TO EXTEND TIME for Parties to File Joint Claim Construction Chart to October 23, 2019 filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 10/22/2019. (fms) (Entered: 10/22/2019) |
| 10/23/2019 | 46 | MOTION for Claim Construction - filed by Magnolia Medical Technologies, Inc.(Oakes, Robert) (Entered: 10/23/2019) |
| 10/23/2019 | 47 | MOTION Claim Construction - filed by Kurin, Inc. (nmf) (Entered: 10/24/2019) |
| 10/23/2019 | 48 | CLAIM Construction Chart by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Disputed Terms, # 2 Exhibit B - Agreed-Upon Terms, # 3 Exhibit C - '001 patent, # 4 Exhibit D - '689 patent, # 5 Exhibit E - '483 patent, # 6 Exhibit F - '139 patent, # 7 Exhibit G - App. No. 15457082 re '001 patent, # 8 Exhibit H - App. No. 15832087 re '689 patent, # 9 Exhibit I - App. No. 15832091 re '483 patent, # 10 Exhibit J - App. No. 15899856 re '139 patent, # 11 Exhibit K - App. No. 60870599, # 12 Exhibit L - App. No. 11955635, # 13 Exhibit M - App. No. 13954528, # 14 Exhibit N - App. No. 14049326, # 15 Exhibit O - App. No. 14498102, # 16 Exhibit P - App. No. 14088842, # 17 Exhibit Q - App. No. 15432310, # 18 Exhibit R - App. No. 15435684, # 19 Exhibit S - App. No. 15448891)(Oakes, Robert) Modified on 10/24/2019 (fms). (Entered: 10/24/2019) |
| 10/24/2019 | | CORRECTING ENTRY: Kurin Inc.'s Motion for Claim Construction has been refiled correctly with the correct pdf per request of filer. (nmf) (Entered: 10/24/2019) |
| 10/24/2019 | | Remark re: D.I. 45 Claim Construction Chart (Exhibits C-S). The parties are to submit with the Joint Claim |

| | | |
|---|---|---|
| | | Construction Chart separate text-searchable pdfs for each asserted patent(s). Parties shall file the separate pdfs electronically using CM/ECF. Each separate pdf shall be labeled using the last three digits of the number of the patent in question so that it is possible to determine from looking at the docket sheet the patent in a particular exhibit. (fms) (Entered: 10/24/2019) |
| 10/24/2019 | | Remark: The claim construction chart filed at D.I. 45 has been removed from the docket as it has been refiled at D.I. 48 in accordance with Judge Connolly's filing requirements. The file date of D.I. 48 has been adjusted to 10/23/2019. (fms) (Entered: 10/24/2019) |
| 11/08/2019 | 49 | NOTICE OF SERVICE of Kurin's Second Set of Interrogatories to Plaintiff (No. 9) filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 11/08/2019) |
| 11/26/2019 | 50 | NOTICE OF SERVICE of Plaintiff's Opening Claim Construction Brief filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 11/26/2019) |
| 12/06/2019 | 51 | NOTICE of Withdrawal of Maria Elena Stiteler as Counsel by Magnolia Medical Technologies, Inc. (McCann, Douglas) (Entered: 12/06/2019) |
| 12/09/2019 | 52 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Second Set of Interrogatories (No. 9) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 12/09/2019) |
| 01/07/2020 | 53 | NOTICE OF SERVICE of (1) Kurin's Answering Claim Construction Brief; (2) Declaration of Warren P. Heim in support filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 01/07/2020) |
| 01/15/2020 | | ORAL ORDER: Due to a conflict in the Court's schedule, the Markman Hearing is rescheduled for 4/15/2020 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. Ordered by Judge Colm F. Connolly on 1/15/2020. (nmf) (Entered: 01/15/2020) |
| 01/22/2020 | 54 | NOTICE OF SERVICE of Plaintiff's Reply Claim Construction Brief filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 01/22/2020) |
| 01/22/2020 | 55 | ORAL ORDER: This matter has been referred to Chief Magistrate Judge Mary Pat Thynge for ADR. Counsel are to advise on or before Wednesday, February 11, 2020, by email to Judge Thynge, with a copy to her Judicial Administrator, Ms. Kennedy, as well as opposing counsel, their clients interest in mediation and the timing when mediation is preferred with a very brief explanation why. Ordered by Chief Magistrate Judge Mary Pat Thynge on 1/22/20. (cak) (Entered: 01/22/2020) |
| 01/27/2020 | 56 | MOTION for Pro Hac Vice Appearance of Attorney Sabrina D. Wilson - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/27/2020) |
| 01/27/2020 | | SO ORDERED, re 56 MOTION for Pro Hac Vice Appearance of Attorney Sabrina D. Wilson filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 1/27/2020. (nmf) (Entered: 01/27/2020) |
| 02/03/2020 | 57 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Second Set of Requests for Production to Defendant Kurin, Inc. (Nos. 60-66) and Second Set of Interrogatories to Defendant Kurin, Inc. (Nos. 9-12) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 02/03/2020) |
| 02/05/2020 | 58 | NOTICE OF SERVICE of Sur-reply claim construction brief filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 02/05/2020) |
| 02/11/2020 | 59 | JOINT CLAIM CONSTRUCTION BRIEF filed by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 02/11/2020) |
| 02/11/2020 | 60 | Joint APPENDIX re 59 Joint Claim Construction Brief by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Appendix JA0001-JA0199, # 2 Appendix JA0200-JA0350)(Oakes, Robert) (Entered: 02/11/2020) |
| 02/19/2020 | 61 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Third Set of Interrogatories to Defendant Kurin, Inc. (Nos. 13-14) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 02/19/2020) |
| 03/02/2020 | 62 | NOTICE OF SERVICE of (1) Kurin's response to Magnolia's Second Set of Interrogatories (Nos. 9-12); (2) Kurin's response to Magnolia's Second Set of Requests for Production (Nos. 60-66); and (3) Kurin's Third Set of Interrogatories to Magnolia (No. 10) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 03/02/2020) |
| 03/05/2020 | 63 | MOTION for Pro Hac Vice Appearance of Attorney Jon Hangartner - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 03/05/2020) |
| 03/05/2020 | | SO ORDERED, re 63 MOTION for Pro Hac Vice Appearance of Attorney Jon Hangartner filed by Kurin, |

| | | Inc. Signed by Judge Colm F. Connolly on 5/5/2020. (fms) (Entered: 03/05/2020) |
|---|---|---|
| 03/09/2020 | 64 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Amended Initial Disclosures filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 03/09/2020) |
| 03/16/2020 | 65 | NOTICE OF SERVICE of Kurin's response to Magnolia's Third Set of Interrogatories (Nos. 13-14) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 03/16/2020) |
| 03/27/2020 | 66 | CLAIM Construction Chart by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Disputed Constructions, # 2 Exhibit B - Agreed-Upon Constructions)(McCann, Douglas) (Entered: 03/27/2020) |
| 03/27/2020 | 67 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding Claim Construction Hearing. (McCann, Douglas) (Entered: 03/27/2020) |
| 04/02/2020 | 68 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Third Set of Interrogatories (No. 10) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 04/02/2020) |
| 04/02/2020 | | ORAL ORDER: The Court has reviewed Plaintiff's letter dated March 27, 2020 (D.I. 67 ). In light of Defendant's objection to the use of a shared software presentation, the Court will convene the hearing by telephone at 9:15 a.m. on April 15, 2020. Defendant shall be responsible for arranging the teleconference. If a party wishes to rely on slides during the telephone hearing, it must submit the slides by email to the Court no later than 24 hours before the telephone hearing. Ordered by Judge Colm F. Connolly on 4/2/2020. (nmf) (Entered: 04/02/2020) |
| 04/14/2020 | | ORAL ORDER: The Court has reviewed carefully the parties' claim construction briefing. Defendant is hereby reminded that it is the practice of this judge not to entertain invalidity and unenforceability contentions made directly or indirectly through claim construction briefing and argument. The Court would like to know at the outset of tomorrow's argument whether the parties would agree to construe "diverter" to mean "a component that changes the direction of the flow of the fluid." Defendant shall be prepared to explain to the Court how "sequester" is different from "isolate." Plaintiff shall be prepared to explain to the Court how a housing can exist without housing anything and how an enclosure can exist without enclosing anything. The Court expects that the argument tomorrow should last no more than 60 minutes. Ordered by Judge Colm F. Connolly on 4/14/2020. (nmf) (Entered: 04/14/2020) |
| 04/15/2020 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Markman Hearing held on 4/15/2020. (Court Reporter V. Gunning.) (nmf) (Entered: 04/15/2020) |
| 04/15/2020 | 69 | STIPULATION Regarding Extension of Discovery Deadlines by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 04/15/2020) |
| 04/15/2020 | 70 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding the reduction in claim terms. (McCann, Douglas) (Entered: 04/15/2020) |
| 04/16/2020 | | SO ORDERED, re 69 Stipulation filed by Magnolia Medical Technologies, Inc., Set/Reset Scheduling Order Deadlines: Fact Discovery completed by 9/18/2020., Opening Expert Reports due by 10/16/2020., Rebuttal Expert Reports due by 11/6/2020. Signed by Judge Colm F. Connolly on 4/16/2020. (fms) (Entered: 04/16/2020) |
| 04/22/2020 | 71 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding Proposed Structure for "Diverter". (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCann, Douglas) (Entered: 04/22/2020) |
| 04/24/2020 | 72 | PROPOSED ORDER re Claim Construction by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 04/24/2020) |
| 04/29/2020 | 73 | Letter to The Honorable Colm F. Connolly from Kenneth L. Dorsney regarding response to Magnolia's supplemental claim construction letter regarding the structure for "diverter". (Dorsney, Kenneth) (Entered: 04/29/2020) |
| 05/20/2020 | 74 | MEMORANDUM OPINION Signed by Judge Colm F. Connolly on 5/20/2020. (nmf) (Entered: 05/20/2020) |
| 05/20/2020 | 75 | CLAIM CONSTRUCTION ORDER Signed by Judge Colm F. Connolly on 5/20/2020. (nmf) (Entered: 05/20/2020) |
| 06/11/2020 | 76 | Letter to Magistrate Judge Christopher J. Burke from Robert M. Oakes and Kenneth L. Dorsney regarding Request for Scheduling a Discovery Teleconference. (Oakes, Robert) (Entered: 06/11/2020) |
| 06/12/2020 | 77 | ORAL ORDER: Setting Teleconference: The Court has reviewed the parties' June 11, 2020 letter requesting a discovery teleconference regarding two discovery disputes. (D.I. 76) It hereby ORDERS as follows with |

| | | |
|---|---|---|
| | | regard to these disputes: (1) A discovery dispute teleconference is set for June 29, 2020 at 1:00 p.m. before Judge Christopher J. Burke.; (2) By no later than June 17, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than June 22, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The moving party shall file the Motion For Teleconference To Resolve Discovery Dispute discussed in the Courts October 8, 2019 Oral Order. (D.I. 41); (5) By no later than June 26, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via e-mail to use for the call.; and (6) It is possible that the Court may choose to resolve some or all of these disputes prior to the telephone conference and may, in that event, cancel the conference. Ordered by Judge Christopher J. Burke on 6/12/2020. (dlb) (Entered: 06/12/2020) |
| 06/12/2020 | 78 | Letter to The Honorable Colm F. Connolly from Kenneth L. Dorsney regarding Kurin's request for leave to file a motion for summary judgment of noninfringement of asserted patent 9,855,001. (Dorsney, Kenneth) (Entered: 06/12/2020) |
| 06/15/2020 | 79 | Letter to The Honorable Colm F. Connolly from Robert M. Oakes regarding Response to Defendant's request for leave to file an early summary judgment motion - re 78 Letter. (Oakes, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | 80 | NOTICE OF SERVICE of Magnolia Medical Technologies, Inc.'s Subpoena to Testify at a Deposition and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 06/15/2020) |
| 06/16/2020 | 81 | NOTICE OF SERVICE of Kurin's Privilege Log filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 06/16/2020) |
| 06/17/2020 | 82 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Privilege Log filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 06/17/2020) |
| 06/17/2020 | 83 | [SEALED] Letter to Magistrate Judge Christopher J. Burke from Robert M. Oakes regarding Discovery Dispute - re 76 Letter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Oakes, Robert) (Entered: 06/17/2020) |
| 06/17/2020 | 84 | MOTION for Discovery *Teleconference to Resolve Discovery Dispute* - filed by Magnolia Medical Technologies, Inc.. Motions referred to Christopher J. Burke.(Oakes, Robert) (Entered: 06/17/2020) |
| 06/19/2020 | 85 | [SEALED] Letter to The Honorable Colm F. Connolly from Robert M. Oakes regarding Plaintiff's opposition to Defendant's letter seeking leave to file an early motion for summary judgment of non-infringement of asserted patent 9,855,001 - re 78 Letter. (Oakes, Robert) (Entered: 06/19/2020) |
| 06/22/2020 | 86 | Letter to The Honorable Colm F. Connolly from Kenneth L. Dorsney regarding Kurin's request for leave to file an early motion for summary judgment of non-infringement. (Dorsney, Kenneth) (Entered: 06/22/2020) |
| 06/22/2020 | 87 | NOTICE OF SERVICE of Kurin's supplemental response to Magnolia's Interrogatories (No. 4) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 06/22/2020) |
| 06/22/2020 | 88 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter - re 77 Order Setting Teleconference,,,,,. (Dorsney, Kenneth) (Entered: 06/22/2020) |
| 06/23/2020 | 89 | REDACTED VERSION of 83 Letter, *regarding Discovery Dispute* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Oakes, Robert) (Entered: 06/23/2020) |
| 06/23/2020 | 90 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Revised Privilege Log filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 06/23/2020) |
| 06/24/2020 | 91 | REDACTED VERSION of 85 Letter, *regarding Plaintiff's opposition to Defendant's letter seeking leave to file an early motion for summary judgment of non-infringement of asserted patent 9,855,001* by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 06/24/2020) |
| 06/24/2020 | | ORAL ORDER: A telephone conference will be held on July 1, 2020 at 1:00 p.m. to address Defendant's request for leave to file a motion for summary judgment of noninfringement of the #001 patent. The Court notes that stopping a flow is not the same thing as diverting a flow. The parties shall be prepared to explain to the Court during the telephone conference whether the porous plug and umbrella valve depicted in the engineering drawings on page 3 of Plaintiff's letter (1) stop, (2) divert, or (3) can both stop and divert the "first flow path (U-shaped sequestration reservoir)" depicted in the image on page 2 of Plaintiff's letter. If either party thinks it would be helpful to the Court, it is invited to provide (either jointly or individually) the Court with a sample of the accused product before the telephone conference. ORDER Setting Teleconference: |

| | | |
|---|---|---|
| | | Counsel for Defendant to coordinate the call and email the dial-in information to chambers. A Telephone Conference is set for 7/1/2020 at 01:00 PM before Judge Colm F. Connolly. Ordered by Judge Colm F. Connolly on 6/24/2020. (nmf) (Entered: 06/24/2020) |
| 06/29/2020 | 92 | NOTICE OF SERVICE of Objections to Plaintiff's Third Party Subpoena of David Stroup filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 06/29/2020) |
| 06/29/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery dispute teleconference held on 6/29/2020. The Court heard argument from the parties regarding Plaintiff's discovery dispute. The Court took the matter under advisement and will issue an order. (Court Reporter Valerie Gunning. Clerk: M. Crawford) Appearances: R. Oakes, C. Drakulich, M. Samuel for Plaintiff; B. Townsend, K. Boyd, J. Zweig for Defendant. (mlc) (Entered: 06/29/2020) |
| 06/30/2020 | 93 | MOTION for Pro Hac Vice Appearance of Attorney Cyndi Claxton - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 06/30/2020) |
| 06/30/2020 | | Pro Hac Vice Attorney Jennifer Seraphine for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 06/30/2020) |
| 06/30/2020 | 94 | DECLARATION re Oral Order,,,,, Order Setting Teleconference,,,, *executed by Jonathan Hangartner in support of Kurin's Samples of the Accused Product* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 06/30/2020) |
| 06/30/2020 | | SO ORDERED, re 93 MOTION for Pro Hac Vice Appearance of Attorney Cyndi Claxton filed by Kurin, Inc. Signed by Judge Colm F. Connolly on 6/30/2020. (fms) (Entered: 06/30/2020) |
| 07/01/2020 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Telephone Conference held on 7/1/2020. (Court Reporter V. Gunning.) (nmf) (Entered: 07/01/2020) |
| 07/01/2020 | 95 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/01/2020) |
| 07/01/2020 | 96 | ORAL ORDER: The Court, having considered Plaintiff Magnolia Medical Technologies, Inc.'s ("Magnolia") discovery dispute motion ("Motion"), (D.I. 84), in which it asks the Court to order Defendant Kurin, Inc. ("Kurin") to provide complete written responses to Magnolia"s Interrogatory Nos. 4 and 10, (D.I. 83 at 1), the parties' letter briefs relating thereto, (D.I. 83; D.I. 88), and having heard argument on June 29, 2020, hereby ORDERS that the Motion is GRANTED-IN-PART as follows: (1) With respect to Interrogatory No. 4, the parties have agreed that Magnolia's request is now MOOT. (2) With respect to Interrogatory No. 10, Magnolia's request is GRANTED to the extent that by no later than July 31, 2020, Kurin shall serve a written limitation-by-limitation response describing why it believes each prior art reference or combination of prior art references invalidates the asserted claims of the 001, 483, and 139 patents, including the alleged motivation to combine each combination, and why it believes each asserted claim of the '001, '483, and '139 patents is invalid under 35 U.S.C. § 112. Magnolia served Interrogatory No. 10 on January 31, 2020, and Kurin has not yet substantively responded. (D.I. 83 at 1-2) The Federal Rules, however, require a party to serve its answers and any objections within 30 days after being served with an interrogatory (absent the parties' agreement or a court order setting forth a different deadline). Fed. R. Civ. P. 33(b)(2). Rule 33 does not permit a party to unilaterally set its own deadline to respond to an interrogatory, and there is no good reason why Kurin should not respond to this interrogatory during the discovery period in this case. Moreover, in light of the lack of explanation in Kurin's invalidity contentions (and in its supplemental letter) with respect to Kurin's obviousness contentions (e.g., why certain references read on certain claim language, or why a POSITA would have been motivated to combine certain references for obviousness purposes) and in its Section 112 defenses, the Court can certainly understand why Magnolia served Interrogatory No. 10 in the first place. (See D.I. 83, exs. C, D) The Court is mindful of Kurin's argument that Kurin may have to amend its invalidity contentions (which would likely impact any response to Interrogatory No. 10) if Magnolia amends its infringement contentions (as Magnolia hopes to do by mid-July); thus, if Kurin were required to respond to Interrogatory No. 10 right now, and then have to supplement that response after receipt of any properly amended infringement contentions, it would cause Kurin some extra work. (D.I. 88 at 3) However, the Court is also mindful that Interrogatory No. 10 has now been pending for six months. The Court's Order is meant to account both for Kurins extra work concern, but also for Magnolias need to get a long-overdue answer to this interrogatory. Thus, if Magnolia serves amended infringement contentions by July 17, 2020 (as it says it plans to do), and Kurin does not object to such contentions on "good cause" grounds, then Kurin's interrogatory response on July 31 will be able to account for those amended contentions. But if such amended infringement contentions are not in the case by then (e.g., because Kurin has objected on "good cause" grounds to Magnolia's proposed amended infringement contentions, and there has been no resolution to that "good cause" dispute), Kurin shall nevertheless still be required serve a response to Interrogatory No. 10 by July 31, absent further order of the Court. (3) With respect to Magnolia's request during the teleconference that the Court require Kurin to narrow its invalidity contentions to three primary references for each asserted |

| | | |
|---|---|---|
| | | claim, the Court DENIES the request. That dispute is not yet ripe and therefore has not been properly teed up before the Court. To extent the parties seek further relief regarding case narrowing after further meeting and conferring, they may bring that issue to the Courts attention in the future. Ordered by Judge Christopher J. Burke on 7/1/2020. (dlb) (Entered: 07/01/2020) |
| 07/15/2020 | 97 | [SEALED] NOTICE of 30(b)(6) Deposition Notice of Magnolia Medical Technologies, Inc. by Kurin, Inc. (Dorsney, Kenneth) (Entered: 07/15/2020) |
| 07/16/2020 | 98 | NOTICE of Rule 30(b)(6) Deposition of Kurin, Inc. by Magnolia Medical Technologies, Inc. (Oakes, Robert) (Entered: 07/16/2020) |
| 07/16/2020 | 99 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Second Amended Initial Disclosures and Plaintiff Magnolia Medical Technologies, Inc.'s First Supplemental Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (Nos. 1, 3, 4, 7, 8) filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/16/2020) |
| 07/20/2020 | 100 | NOTICE OF SERVICE of Magnolia's First Amended Disclosure of Asserted Claims and Infringement Contentions filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/20/2020) |
| 07/21/2020 | 101 | REDACTED VERSION of 97 Notice (Other) *of 30(b)(6) Deposition to Plaintiff* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 07/21/2020) |
| 07/28/2020 | 102 | NOTICE OF SERVICE of (1) Kurin's subpoena to testify at deposition to Kathryn Beal; (2) Kurin's subpoena to testify at deposition to Shan Gaw; (3) Kurin's subpoena to testify at deposition to Jay Miazga; (4) Kurin's subpoena to produce documents to Kathryn Beal; (5) Kurin's subpoena to produce documents to Shan Gaw; and (6) Kurin's subpoena to produce documents to Jay Miazga filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/28/2020) |
| 07/30/2020 | 103 | NOTICE OF SERVICE of Objections to 30(b)(6) notice of deposition filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/30/2020) |
| 07/31/2020 | 104 | NOTICE OF SERVICE of Kurin's Supplemental Response to Magnolia's Interrogatory No. 10 filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/31/2020) |
| 08/04/2020 | 105 | [SEALED] MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order)(McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 106 | [SEALED] OPENING BRIEF in Support re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* filed by Magnolia Medical Technologies, Inc..Answering Brief/Response due date per Local Rules is 8/18/2020. (McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 107 | [SEALED] DECLARATION re 106 Opening Brief in Support, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Volume 1)(McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 108 | [SEALED] EXHIBIT re 107 Declaration *Exhibit B - Volume 2* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 109 | [SEALED] EXHIBIT re 107 Declaration *Exhibit C-R - Volume 3* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/04/2020) |
| 08/05/2020 | 110 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Notice of Subpoena on Ward Sparacio, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 08/05/2020) |
| 08/05/2020 | 111 | MOTION for Pro Hac Vice Appearance of Attorney James Huguenin-Love - filed by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 08/05/2020) |
| 08/06/2020 | | SO ORDERED, re 111 MOTION for Pro Hac Vice Appearance of Attorney James Huguenin-Love filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 8/6/2020. (fms) (Entered: 08/06/2020) |
| 08/10/2020 | 112 | MOTION for Pro Hac Vice Appearance of Attorney Katherine D. Prescott and Charles N. Reese, Jr. - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/10/2020) |
| 08/10/2020 | 113 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding request for the scheduling of a discovery teleconference. (Dorsney, Kenneth) (Entered: 08/10/2020) |
| 08/11/2020 | | SO ORDERED, re 112 MOTION for Pro Hac Vice Appearance of Attorney Katherine D. Prescott and |

| | | |
|---|---|---|
| | | Charles N. Reese, Jr. filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 8/11/2020. (fms) (Entered: 08/11/2020) |
| 08/11/2020 | 114 | NOTICE OF SERVICE of (1) Kurin's notice of deposition of Greg Bullington; (2) Kurin's notice of deposition of Bob Gerberich; (3) Kurin's notice of deposition of Tamara Johnson; (4) Kurin's notice of deposition of Richard Patton; and (5) Kurin's notice of deposition of Matthew Stuckert filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/11/2020) |
| 08/11/2020 | 115 | NOTICE OF SERVICE of Second supplemental privilege log filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/11/2020) |
| 08/11/2020 | 116 | REDACTED VERSION of 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order)(McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 117 | REDACTED VERSION of 106 Opening Brief in Support, by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 118 | REDACTED VERSION of 107 Declaration *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Volume 1)(McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 119 | REDACTED VERSION of 108 Exhibit to a Document *Exhibit B - Volume 2* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 120 | REDACTED VERSION of 109 Exhibit to a Document *Exhibit C-R - Volume 3* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/11/2020) |
| 08/12/2020 | 121 | NOTICE to Take Deposition of Bob Rogers on August 17, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 122 | NOTICE to Take Deposition of Chuck Covington on August 19, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 123 | NOTICE to Take Deposition of Matt Heindel on August 21, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 124 | NOTICE to Take Deposition of Kevin Nason on August 20, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 125 | NOTICE to Take Deposition of Abby Norfleet on September 2, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 126 | NOTICE OF SERVICE of Kathryn Beal, M.D.'s Objections and Responses to Kurin, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; Shan E. Gaw's Objections and Responses to Kurin, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Jay M. Miazga's Objections and Responses to Kurin, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 127 | NOTICE OF SERVICE of (1) Kurin's First Set of Requests for Admission to Plaintiff (Nos. 1-29); (2) Kurin's Second Set of Requests for Production to Plaintiff (Nos. 39-52); and (3) Kurin's Fourth Set of Interrogatories to Plaintiff (Nos. 11-23) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/12/2020) |
| 08/14/2020 | 128 | NOTICE to Take Deposition of David Lloyd on September 18, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/14/2020) |
| 08/17/2020 | 129 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' August 10, 2020 letter requesting a discovery teleconference regarding two discovery disputes. (D.I. 113) It hereby ORDERS as follows with regard to these disputes: (1) A discovery dispute teleconference is set for August 31, 2020 at 1:00 p.m. before Judge Christopher J. Burke.; (2) By no later than August 20, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than August 26, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The moving party shall file the Motion For Teleconference To Resolve Discovery Dispute discussed in the Courts October 8, 2019 Oral Order. (D.I. 41); (5) By no later than August 27, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via e-mail to use for the call.; and (6) It is possible that the Court may choose to resolve some or all of these disputes prior to the telephone conference and may, in that event, cancel the conference.. Signed by Judge Christopher J. Burke on 8/17/2020. (dlb) (Entered: 08/17/2020) |

| 08/17/2020 | 130 | NOTICE OF SERVICE of - supplemental response to third interrogatory and verification. filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/17/2020) |
|---|---|---|
| 08/18/2020 | | Pro Hac Vice Attorney Katherine D. Prescott for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 08/18/2020) |
| 08/18/2020 | 131 | NOTICE OF SERVICE of Plaintiff's Responses and Objections to Kurin, Inc.'s Notice of Deposition of Magnolia Medical Techologies, Inc. Pursuant to Rule 30(b)(6) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/18/2020) |
| 08/18/2020 | 132 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Notice of Subpoena on Jamie Kelly, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/18/2020) |
| 08/18/2020 | 133 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s First Supplemental Objections and Responses to Defendant Kurin, Inc.'s Third Set of Interrogatories (No. 10) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/18/2020) |
| 08/18/2020 | 134 | NOTICE OF SERVICE of Kurin's Fifth Set of Interrogatories to Plaintiff filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/18/2020) |
| 08/18/2020 | 135 | [SEALED] ANSWERING BRIEF in Opposition re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* filed by Kurin, Inc..Reply Brief due date per Local Rules is 8/25/2020. (Dorsney, Kenneth) (Entered: 08/18/2020) |
| 08/18/2020 | 136 | [SEALED] DECLARATION re 135 Answering Brief in Opposition, - *executed by Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/18/2020) |
| 08/20/2020 | 137 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Fourth Set of Interrogatories to Defendant Kurin, Inc. (Nos. 15-24); Plaintiff Magnolia Medical Technologies, Inc.'s Third Set of Requests for Production to Defendant Kurin, Inc. (No. 67); and Plaintiff Magnolia Medical Technologies, Inc.'s First Set of Requests for Admission to Defendant Kurin, Inc. (No.1) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/20/2020) |
| 08/20/2020 | 138 | [SEALED] Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's initial discovery dispute letter - re 129 Order Setting Teleconference,,,,, 113 Letter. (Dorsney, Kenneth) (Entered: 08/20/2020) |
| 08/20/2020 | 139 | MOTION for Teleconference to Resolve Discovery Dispute re 138 Letter - filed by Kurin, Inc.. Motions referred to Christopher J. Burke.(Dorsney, Kenneth) (Entered: 08/20/2020) |
| 08/20/2020 | | Pro Hac Vice Attorney Cyndi Claxton for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 08/20/2020) |
| 08/24/2020 | 140 | REDACTED VERSION of 135 Answering Brief in Opposition, *to Plaintiff's Motion for Leave to Amend its Infringement and Willfulness Contentions* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/24/2020) |
| 08/24/2020 | 141 | REDACTED VERSION of 136 Declaration *of Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/24/2020) |
| 08/25/2020 | 142 | [SEALED] REPLY BRIEF re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U, # 4 Exhibit V, # 5 Exhibit W, # 6 Exhibit X, # 7 Exhibit Y, # 8 Exhibit Z, # 9 Exhibit AA, # 10 Exhibit BB, # 11 Exhibit CC, # 12 Exhibit DD, # 13 Exhibit EE, # 14 Exhibit FF)(McCann, Douglas) (Entered: 08/25/2020) |
| 08/25/2020 | 143 | [SEALED] DECLARATION re 142 Reply Brief,, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U, # 4 Exhibit V, # 5 Exhibit W, # 6 Exhibit X, # 7 Exhibit Y, # 8 Exhibit Z, # 9 Exhibit AA, # 10 Exhibit BB, # 11 Exhibit CC, # 12 Exhibit DD, # 13 Exhibit EE, # 14 Exhibit FF)(McCann, Douglas) (Entered: 08/25/2020) |
| 08/26/2020 | 144 | REDACTED VERSION of 138 Letter *to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's initial discovery dispute letter* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/26/2020) |
| 08/26/2020 | 145 | NOTICE OF SERVICE of Kurin's supplemental response to Plaintiff's Interrogatories (Nos. 2, 11, 12 and 14) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/26/2020) |

| 08/26/2020 | 146 | NOTICE OF SERVICE of notice of subpoena to Bradley Nelson for documents and to testify filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/26/2020) |
|---|---|---|
| 08/26/2020 | 147 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Discovery Dispute - re 113 Letter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCann, Douglas) (Entered: 08/26/2020) |
| 08/27/2020 | 148 | NOTICE OF SERVICE of Objections and Responses to Plaintiff's Third Party Subpoena of Jamie Kelly filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/27/2020) |
| 08/27/2020 | 149 | NOTICE OF SERVICE of Second Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/27/2020) |
| 08/31/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery dispute teleconference held on 8/31/2020. The Court heard argument from the parties regarding Defendant's discovery dispute motion, (D.I. 139). The Court took the matter under advisement and will issue an order. (Court Reporter Valerie Gunning. Clerk: M. Crawford) Appearances: D. McCann and C. Drakulich for Plaintiff; K. Dorsney and K. Boyd for Defendant. (mlc) (Entered: 08/31/2020) |
| 08/31/2020 | 150 | [SEALED] MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* - filed by Kurin, Inc.. (Attachments: # 1 Exhibit Attachment A - Sur-reply, # 2 Exhibit Attachment B - Declaration, # 3 Exhibit Certificate of service)(Dorsney, Kenneth) (Entered: 08/31/2020) |
| 08/31/2020 | 151 | REQUEST for Oral Argument by Kurin, Inc. re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions*. (Dorsney, Kenneth) (Entered: 08/31/2020) |
| 08/31/2020 | 152 | NOTICE OF WITHDRAWAL OF COUNSEL - Sabrina D. Wilson to Withdraw as Attorney - filed by Magnolia Medical Technologies, Inc. (McCann, Douglas) Modified on 9/1/2020 (nmf). (Entered: 08/31/2020) |
| 09/01/2020 | 153 | ORAL ORDER: The Court, having reviewed Defendant's motion regarding a discovery dispute ("Motion"), (D.I. 139), in which Defendant requests that Plaintiff "be ordered to search and produce the electronic documents of [Plaintiff's] now-former V.P. of Marketing Brad Nelson[,]" (D.I. 138 at 1), the letter briefing related thereto, (D.I. 138; D.I. 147), and having heard oral argument on August 31, 2020, ("Tr."), hereby ORDERS that Defendant's Motion is GRANTED. Defendant has demonstrated good cause to justify this deviation from the Scheduling Order's terms (which had required the parties to only produce documents from seven custodians, absent a showing of good cause"). (D.I. 24, ex. B at 2(a)) First, Defendant must demonstrate its own diligence in seeking the information, see GlaxoSmithKline LLC v. Glenmark Pharms. Inc., Civil Action No. 14-877-LPS-CJB, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016), and on that front, Defendant has done enough. It identified Mr. Nelson to Plaintiff months ago as someone it believed might have relevant information. (D.I. 138 at 1) After Mr. Nelson was not included in the group of seven Plaintiff custodians whose documents were searched, Defendant raised the instant dispute with Plaintiff in a reasonable time framei.e., about six weeks after Plaintiff provided the bulk of its 110,000 documents to Defendant (which Defendant had to first take time to review and process). (Tr. at 8, 16; see also id. at 29) Though Defendant did not thereafter bring the dispute to the Court's attention until August 10, 2020, (D.I. 113), the Court does not have the record before it to hold this further one-and-a-half month gap against Defendant, given the back-and-forth typically needed to meet and confer on an issue like this, (Tr. at 17). From there, Defendant has established that Mr. Nelson is likely to have a good number of relevant documents pursuant to Federal Rule of Civil Procedure 26(b)(1) (and even Plaintiff does not contest this), in that: (1) Mr. Nelson's position and his time of service with Plaintiff likely means that his documents will contain information regarding, inter alia, objective indicia of non-obviousness and damages; and (2) Mr. Nelson appears on thousands of Plaintiff-produced e-mails. (D.I. 138 at 1-3; D.I. 147 at 1, 3 (Plaintiff noting that Mr. Nelson's name is "all over" a number of documents already produced); Tr. at 35) Moreover, the Court is not convinced that Mr. Nelson's responsive documents will be unreasonably cumulative or duplicative of others already produced, pursuant to Rule 26(b)(2)(C)(i), in that his role as V.P. of Marketing suggests that he likely would have had various communications with company employees and with third parties about relevant subject matter that would not have included other custodians (like Plaintiff's CEO or CCO, who had higher-level positions with the company). (D.I. 138 at 3; Tr. at 12-13) Moreover, Plaintiff has not demonstrated, pursuant to Rule 26(b)(1), that the burden or expense of this discovery outweighs its likely benefit, or that such discovery would not be proportional to the needs of the case. The Court understands that the parties are not large companies, and that cost and burden were a factor in the parties' agreement to the seven-custodian limit in the first place. (D.I. 147 at 2) But Plaintiff could have provided the Court with a record (i.e., by way of submission of a declaration or affidavit, or via some other similar means) to help the Court conclude that the collection, search, review and production of Mr. Nelson's documents would be unduly burdensome or costly, or that it would be disproportionate to either the amount in controversy or the parties' resources or some other relevant metric. If Plaintiff had, the decision may have gone the other way here. But though Plaintiff called such an effort an "incredible burden" in its letter brief, (D.I. 147 at 3), it made no record in |

| | | |
|---|---|---|
| | | support of that claim; thus, the Court cannot rule in its favor on these grounds, (see also Tr. at 39-40). Lastly, and in part because of Plaintiff's failing in this regard, the Court does not know how long it would reasonably take Plaintiff to produce Mr. Nelson's documents (though it guesses that doing so by September 4, as Defendant requests, is likely too quick of a timeframe). (D.I. 138 at 3) So the parties should meet and confer regarding a production date.". Ordered by Judge Christopher J. Burke on 9/1/2020. (dlb) (Entered: 09/01/2020) |
| 09/01/2020 | 154 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s Second Set of Interrogatories (No. 9) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/01/2020) |
| 09/01/2020 | | CORRECTING ENTRY: D.I. 152 has been corrected per request of filer to reflect that it is a Notice of Withdrawal of Counsel and not a Motion to Withdraw. (nmf) (Entered: 09/01/2020) |
| 09/01/2020 | 155 | REQUEST for Oral Argument by Magnolia Medical Technologies, Inc. re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions*. (McCann, Douglas) (Entered: 09/01/2020) |
| 09/01/2020 | 156 | REDACTED VERSION of 143 Declaration, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U, # 4 Exhibit V, # 5 Exhibit W, # 6 Exhibit X, # 7 Exhibit Y, # 8 Exhibit Z, # 9 Exhibit AA, # 10 Exhibit BB, # 11 Exhibit CC, # 12 Exhibit DD, # 13 Exhibit EE, # 14 Exhibit FF)(McCann, Douglas) (Entered: 09/01/2020) |
| 09/01/2020 | 157 | REDACTED VERSION of 142 Reply Brief,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U, # 4 Exhibit V, # 5 Exhibit W, # 6 Exhibit X, # 7 Exhibit Y, # 8 Exhibit Z, # 9 Exhibit AA, # 10 Exhibit BB, # 11 Exhibit CC, # 12 Exhibit DD, # 13 Exhibit EE, # 14 Exhibit FF) (McCann, Douglas) (Entered: 09/01/2020) |
| 09/02/2020 | 158 | REDACTED VERSION of 147 Letter by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCann, Douglas) (Entered: 09/02/2020) |
| 09/02/2020 | 159 | [SEALED] ANSWERING BRIEF in Opposition re 150 MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit GG)(McCann, Douglas) (Entered: 09/02/2020) |
| 09/02/2020 | 160 | [SEALED] DECLARATION re 159 Answering Brief in Opposition, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit GG)(McCann, Douglas) (Entered: 09/02/2020) |
| 09/03/2020 | 161 | NOTICE OF SERVICE of Kurin's Supplemental Responses to Magnolia's Interrogatory Nos. 10, 12 and 14 filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 09/03/2020) |
| 09/08/2020 | 162 | REDACTED VERSION of 150 MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 163 | [SEALED] REPLY BRIEF re 150 MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 164 | [SEALED] DECLARATION re 163 Reply Brief -- *executed by Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 165 | Letter to Judge Burke from K. Dorsney regarding Requesting Discovery Teleconference. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 166 | [SEALED] MOTION to Amend/Correct *THE COMPLAINT* - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 Second Amended Complaint, # 3 Ex A to Second Amended Complaint, # 4 Ex B to Second Amended Complaint, # 5 Ex C to Second Amended Complaint, # 6 Ex D to Second Amended Complaint, # 7 Ex E to Second Amended Complaint, # 8 Ex F to Second Amended Complaint, # 9 Ex G to Second Amended Complaint, # 10 Ex H to Second Amended Complaint, # 11 Ex I to Second Amended Complaint, # 12 Ex J to Second Amended Complaint, # 13 Ex K to Second Amended Complaint, # 14 Ex L to Second Amended Complaint, # 15 Ex M to Second Amended Complaint, # 16 Ex N to Second Amended Complaint, # 17 Ex O to Second Amended Complaint, # 18 Ex P to Second Amended Complaint, # 19 Ex Q to Second Amended Complaint, # 20 Ex R to Second Amended Complaint, # 21 Ex S to Second Amended Complaint, # 22 Ex T to Second Amended Complaint, # 23 Ex U to Second Amended Complaint, # 24 Ex V to Second Amended Complaint, # 25 Ex W to Second Amended Complaint, # 26 Ex X to Second Amended Complaint, # 27 Ex Y to Second Amended Complaint, # 28 Ex Z to Second Amended Complaint, # 29 Ex AA to Second Amended Complaint, # 30 Ex BB to Second Amended Complaint, # 31 Ex CC to Second Amended Complaint, # 32 Ex DD to Second Amended Complaint, # 33 Ex EE to Second Amended Complaint, # 34 Ex FF to Second Amended Complaint, # 35 Ex GG to Second Amended Complaint, # 36 Ex HH to Second Amended Complaint, # 37 Ex II to Second Amended Complaint, # 38 Ex |

| | | |
|---|---|---|
| | | JJ to Second Amended Complaint, # 39 Ex KK to Second Amended Complaint, # 40 Ex LL to Second Amended Complaint, # 41 Exhibit 2 Redline Second Amended Complaint)(McCann, Douglas) (Entered: 09/08/2020) |
| 09/08/2020 | 167 | [SEALED] OPENING BRIEF in Support re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc..Answering Brief/Response due date per Local Rules is 9/22/2020. (McCann, Douglas) (Entered: 09/08/2020) |
| 09/09/2020 | 168 | REDACTED VERSION of 159 Answering Brief in Opposition, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit GG)(McCann, Douglas) (Entered: 09/09/2020) |
| 09/09/2020 | 169 | REDACTED VERSION of 160 Declaration *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit GG)(McCann, Douglas) (Entered: 09/09/2020) |
| 09/09/2020 | 170 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' September 8, 2020 letter requesting a discovery teleconference regarding one discovery dispute. (D.I. 165) It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for October 5, 2020 at 11:00 a.m. before Judge Christopher J. Burke.; (2) By no later than September 16, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than September 23, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The moving party shall file the Motion For Teleconference To Resolve Discovery Dispute discussed in the Courts October 8, 2019 Oral Order. (D.I. 41); (5) By no later than October 1, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via e-mail to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference. Ordered by Judge Christopher J. Burke on 9/9/2020. (dlb) (Entered: 09/09/2020) |
| 09/09/2020 | 171 | NOTICE OF SERVICE of (1) Plaintiff Magnolia Medical Technologies, Inc.'s Notice of Subpoena on Pipeline Design & Engineering, LLC, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action, and (2) Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (Nos. 1, 3, 8) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/09/2020) |
| 09/09/2020 | 172 | NOTICE OF SERVICE of Bradley Nelson's Objections and Responses to Kurin, Inc.'s Subpoena to Testify at a Deposition and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/09/2020) |
| 09/11/2020 | 173 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (No. 6) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/11/2020) |
| 09/14/2020 | 174 | REDACTED VERSION of 163 Reply Brief *in support of motion for leave to file sur-reply* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/14/2020) |
| 09/14/2020 | 175 | REDACTED VERSION of 164 Declaration *of Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/14/2020) |
| 09/14/2020 | 176 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s First Set of Requests for Admission (Nos. 1-29), Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Second Set of Requests for Production (Nos. 39-52) and Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (Nos. 11-23) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/14/2020) |
| 09/16/2020 | 177 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Discovery Dispute - re 170 Order Setting Teleconference,,,,,, (Dorsney, Kenneth) (Entered: 09/16/2020) |
| 09/16/2020 | 178 | MOTION for Hearing re 177 Letter *motion for teleconference to resolve discovery dispute* - filed by Kurin, Inc.. Motions referred to Christopher J. Burke.(Dorsney, Kenneth) (Entered: 09/16/2020) |
| 09/16/2020 | 179 | REDACTED VERSION of 166 MOTION to Amend/Correct *THE COMPLAINT* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 Second Amended Complaint, # 3 Exhibit A to Second Amended Complaint, # 4 Exhibit B to Second Amended Complaint, # 5 Exhibit C to Second Amended Complaint, # 6 Exhibit D to Second Amended Complaint, # 7 Exhibit E to Second Amended Complaint, # 8 Exhibit F to Second Amended Complaint, # 9 Exhibit G to Second Amended Complaint, # 10 Exhibit H to Second Amended Complaint, # 11 Exhibit I to Second Amended Complaint, # |

| | | |
|---|---|---|
| | | [12](#) Exhibit J to Second Amended Complaint, # [13](#) Exhibit K to Second Amended Complaint, # [14](#) Exhibit L to Second Amended Complaint, # [15](#) Exhibit M to Second Amended Complaint, # [16](#) Exhibit N to Second Amended Complaint, # [17](#) Exhibit O to Second Amended Complaint, # [18](#) Exhibit P to Second Amended Complaint, # [19](#) Exhibit Q to Second Amended Complaint, # [20](#) Exhibit R to Second Amended Complaint, # [21](#) Exhibit S to Second Amended Complaint, # [22](#) Exhibit T to Second Amended Complaint, # [23](#) Exhibit U to Second Amended Complaint, # [24](#) Exhibit V to Second Amended Complaint, # [25](#) Exhibit W to Second Amended Complaint, # [26](#) Exhibit X to Second Amended Complaint, # [27](#) Exhibit Y to Second Amended Complaint, # [28](#) Exhibit Z to Second Amended Complaint, # [29](#) Exhibit AA to Second Amended Complaint, # [30](#) Exhibit BB to Second Amended Complaint, # [31](#) Exhibit CC to Second Amended Complaint, # [32](#) Exhibit DD to Second Amended Complaint, # [33](#) Exhibit EE to Second Amended Complaint, # [34](#) Exhibit FF to Second Amended Complaint, # [35](#) Exhibit GG to Second Amended Complaint, # [36](#) Exhibit HH to Second Amended Complaint, # [37](#) Exhibit II to Second Amended Complaint, # [38](#) Exhibit JJ to Second Amended Complaint, # [39](#) Exhibit KK to Second Amended Complaint, # [40](#) Exhibit LL to Second Amended Complaint, # [41](#) Exhibit 2 Redline Second Amended Complaint)(McCann, Douglas) (Entered: 09/16/2020) |
| 09/16/2020 | [180](#) | REDACTED VERSION of [167](#) Opening Brief in Support by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 09/16/2020) |
| 09/17/2020 | [181](#) | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Fifth Set of Interrogatories (Nos. 24-25) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/17/2020) |
| 09/18/2020 | [182](#) | NOTICE OF SERVICE of (1)Kurin's responses to fourth set of interrogatories (Nos. 15-24); (2) Kurin's responses to first set of requests for admission (No. 1); (3) Kurin's Supplemental response to Interrogatory (Nos.7); (4) Kurin's responses to third set of requests for production (Nos. 67) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 09/18/2020) |
| 09/21/2020 | [183](#) | NOTICE OF SERVICE of (1) Confidential Plaintiff Magnolia Medical Technologies, Inc.'s Second Supplemental Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (No. 6), (2) Plaintiff Magnolia Medical Technologies, Inc.'s Second Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s Second Set of Interrogatories (No. 9), (3) Plaintiff Magnolia Medical Technologies, Inc.'s Second Supplemental Objections and Responses to Defendant Kurin, Inc.'s Third Set of Interrogatories (No. 10) and (4) Confidential Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (Nos. 13-16, 19-22) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/21/2020) |
| 09/22/2020 | [184](#) | [SEALED] ANSWERING BRIEF in Opposition re [166](#) MOTION to Amend/Correct *THE COMPLAINT* filed by Kurin, Inc..Reply Brief due date per Local Rules is 9/29/2020. (Dorsney, Kenneth) (Entered: 09/22/2020) |
| 09/22/2020 | [185](#) | [SEALED] DECLARATION re [184](#) Answering Brief in Opposition *to Magnolia's Motion for Leave to Amend Complaint, executed by Jacob S. Zweig* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/22/2020) |
| 09/23/2020 | [186](#) | NOTICE OF SERVICE of (1) Confidential Plaintiff Magnolia Medical Technologies, Inc.'s Third Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories, (2) Plaintiff Magnolia Medical Technologies, Inc.'s First Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s Fifth Set of Interrogatories (Nos. 24) and (3) Interrogatory Verification filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/23/2020) |
| 09/23/2020 | [187](#) | Letter to Magistrate Judge Christopher J. Burke from Douglas E. McCann regarding Plaintiff's Responsive Letter Regarding Discovery Dispute - re [165](#) Letter. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2)(McCann, Douglas) (Entered: 09/23/2020) |
| 09/29/2020 | [188](#) | REDACTED VERSION of [184](#) Answering Brief in Opposition *to Motion for Leave to Amend Complaint* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/29/2020) |
| 09/29/2020 | [189](#) | REDACTED VERSION of [185](#) Declaration *of Jacob Zweig* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/29/2020) |
| 09/29/2020 | [190](#) | [SEALED] REPLY BRIEF re [166](#) MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 09/29/2020) |
| 09/29/2020 | [191](#) | [SEALED] DECLARATION re [190](#) Reply Brief *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # [1](#) Exhibit MM, # [2](#) NN, # [3](#) OO)(McCann, Douglas) (Entered: 09/29/2020) |
| 10/01/2020 | [192](#) | REQUEST for Oral Argument by Magnolia Medical Technologies, Inc. re [166](#) MOTION to Amend/Correct *THE COMPLAINT*. (McCann, Douglas) (Entered: 10/01/2020) |
| 10/02/2020 | [193](#) | REQUEST for Oral Argument by Kurin, Inc. re [166](#) MOTION to Amend/Correct *THE COMPLAINT*. |

| | | (Dorsey, Kenneth) (Entered: 10/02/2020) |
|---|---|---|
| 10/05/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery dispute teleconference held on 10/5/2020. The Court heard the parties' arguments regarding Defendant's discovery dispute motion, D.I. 178. The Court took the matter under advisement and will issue an order. (Court Reporter Valerie Gunning. Clerk: M. Crawford) Appearances: D. McCann, J. Brooks for Plaintiff; C. Hitch, K. Boyd for Defendant. (mlc) (Entered: 10/05/2020) |
| 10/06/2020 | 194 | ORAL ORDER: The Court, having reviewed Defendant Kurin, Inc.'s ("Kurin") motion regarding a discovery dispute ("Motion"), (D.I. 178), in which Kurin requests an accommodation to the case schedule to account for Plaintiff Magnolia Medical Technologies, Inc.'s ("Magnolia") late production of post-complaint documents, (D.I. 177 at 2), the letter briefing related thereto, (D.I. 177; D.I. 187), and having heard oral argument on October 5, 2020, ORDERS that Defendant's Motion is GRANTED. The Court finds good cause to amend the Scheduling Order, pursuant to Federal Rule of Civil Procedure 16(b)(4), to be established as follows: (1) Although the parties' deadline for substantial completion of document production was May 15, 2020 (extended from April 15, 2020), (D.I. 69), Magnolia has produced nearly one-third of its total document production (approximately 57,000 documents) in the past month (a time during which fact discovery was set to close and the expert discovery process to get underway). (D.I. 177 at 2; D.I. 187 at 2); (2) Magnolia's late production flows from an interpretation of the Scheduling Order that, in the Court's view, was not a reasonable one, and thus it amounts to a clear discovery violation. (D.I. 177 at 1; see also D.I. 24, ex. B at para. (1)(d)(ii) & (3)(b)); (3) Kurin is entitled to a reasonable window of time to digest Magnolia's substantial recent production prior to taking its fact depositions and serving opening expert reports. Currently, however, there remain many depositions to be taken, followed by the expert discovery process and the preparation and service of expert reports, all currently scheduled to be completed by December 18, 2020 (with opening summary judgment and Daubert briefs to be filed on February 5, 2021 and trial scheduled to begin on July 12, 2021). (See D.I. 177 at 3) While Magnolia proposes an extension of the fact discovery deadline and the deadlines for expert reports, leaving the remainder of the current case schedule intact, (D.I. 187 at 3), going Magnolia's way here would necessarily require compressing the case schedule in a manner that would prejudice Kurin for a mistake that was not Kurin's fault.; (4) Therefore, the parties shall meet and confer regarding extension of the remaining case deadlines and events and submit a joint proposed amended scheduling order by no later than October 9, 2020 that: (a) schedules summary judgment and Daubert briefs to be filed on April 30, 2021; (b) schedules the pretrial conference for September 23, 2021 at 4:00 p.m.; (c) schedules the jury trial for October 4, 2021; and (d) fills in the remainder of the case deadlines accordingly. Expert report deadlines should all be uniform between the parties. Ordered by Judge Christopher J. Burke on 10/6/2020. (dlb) Modified on 10/6/2020 (dlb). (Entered: 10/06/2020) |
| 10/06/2020 | 195 | REDACTED VERSION of 190 Reply Brief by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 10/06/2020) |
| 10/06/2020 | 196 | REDACTED VERSION of 191 Declaration of Douglas E. McCann by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit MM, # 2 Exhibit OO, # 3 Exhibit PP)(McCann, Douglas) (Entered: 10/06/2020) |
| 10/07/2020 | | Pro Hac Vice Attorney Jonathan Hangartner for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 10/07/2020) |
| 10/09/2020 | 197 | PROPOSED ORDER - Proposed Amended Scheduling Order by Kurin, Inc.. (Dorsey, Kenneth) (Entered: 10/09/2020) |
| 10/16/2020 | 198 | AMENDED SCHEDULING ORDER: The Final Pretrial Conference is rescheduled for 9/23/2021 at 04:00 PM in Courtroom 4B before Judge Colm F. Connolly. The Jury Trial is rescheduled for 10/4/2021 at 08:30 AM in Courtroom 4B before Judge Colm F. Connolly. Signed by Judge Colm F. Connolly on 10/16/2020. (nmf) (Entered: 10/16/2020) |
| 10/16/2020 | 199 | NOTICE OF SERVICE of Kurin's Request for Statement of Damages under Local Rule 9.4(b) filed by Kurin, Inc..(Dorsey, Kenneth) (Entered: 10/16/2020) |
| 10/30/2020 | 200 | ORDER REFERRING MOTION: 150 MOTION for Leave to File sur-reply to motion for leave to amend infringement contentions filed by Kurin, Inc., 105 MOTION for Leave to File Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions filed by Magnolia Medical Technologies, Inc., 166 MOTION to Amend/Correct THE COMPLAINT filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 10/30/2020. Motions referred to Magistrate Judge Jennifer L. Hall. (nmf) (Entered: 10/30/2020) |
| 11/02/2020 | 201 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Statement of Damages filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 11/02/2020) |
| 11/09/2020 | 202 | ORAL ORDER Setting Hearing on Motions: A telephonic hearing on the pending Motion for Leave to |

| | | |
|---|---|---|
| | | Amend Disclosure of Infringement and Willfulness Contentions (D.I. 105 ) and Motion to Amend the Complaint (D.I. 166 ) is scheduled for December 10, 2020 at 3:00 PM before Judge Jennifer L. Hall. The parties shall send a joint email to Cailah_Garfinkel@ded.uscourts.gov containing the following information regarding oral argument on or before December 7, 2020: (1) dial-in information; and (2) a list of attendees for each party, specifying who will be presenting argument. Any slide presentations or demonstratives that the parties wish to use during the hearing shall be emailed to Cailah_Garfinkel@ded.uscourts.gov no later than 24 hours prior to the hearing. Once the dial-in information is received by the Court, members of the public may obtain it by contacting Chambers at Cailah_Garfinkel@ded.uscourts.gov. All participants (including any media and members of the public) are reminded that recording or broadcasting proceedings is STRICTLY PROHIBITED. All participants shall be present on the teleconference no later than 10 minutes prior to the start of the hearing. ORDERED by Judge Jennifer L. Hall on 11/9/2020. (ceg) (Entered: 11/09/2020) |
| 11/11/2020 | 203 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (No. 11) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 11/11/2020) |
| 11/13/2020 | 204 | Joint Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Discovery Dispute. (McCann, Douglas) (Entered: 11/13/2020) |
| 11/16/2020 | 205 | ORDER Setting Teleconference: The Court has reviewed the parties' November 13, 2020 letter requesting a discovery teleconference regarding 1 discovery dispute. (D.I. 204) It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for 12/14/2020 at 01:00 PM before Judge Christopher J. Burke.; (2) By no later than November 25, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than December 4, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The parties shall jointly file a Motion For Teleconference To Resolve Discovery Dispute.; (5) By no later than December 10, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via email to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference.Ordered by Judge Christopher J. Burke on 11/16/2020. (mlc) (Entered: 11/16/2020) |
| 11/23/2020 | 206 | NOTICE OF SERVICE of Magnolia Medical Technologies, Inc.'s Privilege Log and First-Seventh Supplemental Privilege Logs; Kathryn Beal's Privilege Log and Supplemental Priviledge Log; and Jay Miazga's Privilege Log and Supplemental Privilege Logs filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 11/23/2020) |
| 11/25/2020 | 207 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Experts Dispute - re 37 Protective Order. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(McCann, Douglas) (Entered: 11/25/2020) |
| 11/25/2020 | | CORRECTING ENTRY: DI 208 filed in error to incorrect case number. (apk) (Entered: 11/25/2020) |
| 12/02/2020 | 208 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Amended Supplemental Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (No. 11) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/02/2020) |
| 12/02/2020 | 209 | REDACTED VERSION of 207 Letter, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(McCann, Douglas) (Entered: 12/02/2020) |
| 12/04/2020 | 210 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter - re 207 Letter,. (Dorsney, Kenneth) (Entered: 12/04/2020) |
| 12/04/2020 | 211 | Joint MOTION for Teleconference to Resolve Discovery Dispute - filed by Magnolia Medical Technologies, Inc.. Motions referred to Christopher J. Burke.(McCann, Douglas) (Entered: 12/04/2020) |
| 12/08/2020 | 212 | NOTICE OF SERVICE of (1) Magnolia's 6th Supplemental Privilege Log, (2) Magnolia's 8th Supplemental Redacted Privilege Log, (3) Kathryn Beal's 2nd Supplemental Privilege Log, and (4) Jay Miazga's 2nd Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/08/2020) |
| 12/10/2020 | | Minute Entry for proceedings held before Judge Jennifer L. Hall - Telephonic Motion Hearing held on 12/10/2020 re 105 Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions filed by Magnolia Medical Technologies, Inc., 166 Motion to Amend/Correct the Complaint filed by Magnolia Medical Technologies, Inc. (*Court Reporter Jennifer Guy.) (ceg) (Entered: 12/11/2020) |
| 12/11/2020 | 213 | ORAL ORDER: It is ORDERED that, for the reasons discussed at the hearing on December 10, 2020, |

| | | |
|---|---|---|
| | | Magnolia's Motion for Leave to Amend its Infringement and Willfulness Contentions (D.I. 105 ) is GRANTED-IN-PART. As stated at the hearing, it is FURTHER ORDERED that the parties shall meet and confer regarding the remainder of Magnolia's proposed amendments and shall file a stipulation regarding any agreement on those proposed amendments within 14 days. If the parties cannot reach agreement on the remainder of Magnolia's proposed amendments, they are directed to file a joint motion for a teleconference in accordance with Judge Hall's discovery dispute procedures. ORDERED by Judge Jennifer L. Hall on 12/10/2020. (ceg) (Entered: 12/11/2020) |
| 12/11/2020 | 214 | ORAL ORDER: IT IS HEREBY ORDERED that the transcript of the December 10, 2020 motion hearing on Magnolia's Motion for Leave to Amend its Complaint (D.I. 166 ) shall serve as the Report and Recommendation of the Court. Any objections shall be filed within 14 days from the date the Court issues the written version of its Report and Recommendation. ORDERED by Judge Jennifer L. Hall on 12/10/2020. (ceg) (Entered: 12/11/2020) |
| 12/14/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery Dispute Teleconference held on 12/14/2020. After hearing from the parties regarding the dispute, for the reasons stated on the record the Court grant's Plaintiff's Motion. The Transcript will serve as the substance of the Court's decision in this matter. (Clerk, Benyo) APPEARANCES: D. McCann for Plaintiff; C. Hitch, K. Boyd, J. Hangartner for Defendant. (Court Reporter Jennifer Guy) (dlb) (Entered: 12/14/2020) |
| 12/15/2020 | 215 | NOTICE OF SERVICE of Magnolia Medical Technologies, Inc.'s 9th Supplemental Redacted Privilege Log filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/15/2020) |
| 12/23/2020 | 216 | ORAL ORDER: As previously set forth in D.I. 213, Magnolia's Motion for Leave to Amend its Infringement and Willfulness Contentions (D.I. 105 ) is GRANTED-IN-PART. Kurin's Motion for Leave to File a Sur-Reply (D.I. 150 ) is GRANTED. ORDERED by Judge Jennifer L. Hall on 12/23/2020. (ceg) (Entered: 12/23/2020) |
| 12/28/2020 | 217 | Official Transcript of Telephonic Motion Hearing held on December 10, 2020 before Judge Jennifer L. Hall. Court Reporter Jennifer Guy, email: jenniferguyrpr@gmail.com. Transcript may be viewed at the court public terminal or ordered/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 1/19/2021. Redacted Transcript Deadline set for 1/28/2021. Release of Transcript Restriction set for 3/29/2021. (bpg) (Entered: 12/28/2020) |
| 12/28/2020 | 218 | REPORT AND RECOMMENDATIONS re 166 Motion to Amend/Correct the Complaint filed by Magnolia Medical Technologies, Inc. Please note that when filing Objections pursuant to Federal Rule of Civil Procedure 72(b)(2), briefing consists solely of the Objections (no longer than ten (10) pages) and the Response to the Objections (no longer than ten (10) pages). No further briefing shall be permitted with respect to objections without leave of the Court. Objections to R&R due by 1/11/2021. This order has been emailed to local counsel. Signed by Judge Jennifer L. Hall on 12/28/2020.(ceg) ***Unsealed per the Court's 1/29/2021 Order (ceg). (Entered: 12/28/2020) |
| 12/28/2020 | 219 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding request for the scheduling of a discovery teleconference. (Dorsney, Kenneth) (Entered: 12/28/2020) |
| 12/28/2020 | 220 | STIPULATION TO EXTEND TIME for Parties to File a Stipulation regarding Amended Infringement Contentions to December 30, 2020 - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 12/28/2020) |
| 12/30/2020 | 221 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' December 28, 2020 letter requesting a discovery teleconference regarding 1 discovery dispute. (D.I. 219) It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for 1/25/2021 at 1:00 PM before Judge Christopher J. Burke.; (2) By no later than January 8, 2021, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than January 19, 2021, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The parties shall jointly file a Motion For Teleconference To Resolve Discovery Dispute.; (5) By no later than January 19, 2021, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via email to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference. Ordered by Judge Christopher J. Burke on 12/30/2020. (mlc) (Entered: 12/30/2020) |
| 12/30/2020 | 222 | NOTICE OF SERVICE of Magnolia's 7th Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/30/2020) |
| 12/30/2020 | 223 | Joint MOTION Teleconference to Resolve Discovery Dispute - filed by Magnolia Medical Technologies, Inc. (McCann, Douglas) Modified on 1/27/2021 - Motion referred to Judge Jennifer L. Hall (ceg). (Entered: |

| 12/30/2020 | | 12/30/2020) |
|---|---|---|
| 12/30/2020 | 224 | [SEALED] STIPULATION regarding Amended Infringement Contentions re 213 Order,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A)(McCann, Douglas) (Entered: 12/30/2020) |
| 12/31/2020 | 225 | NOTICE of Intent to Request Redaction by Kenneth Laurence Dorsney re 217 Transcript,, (Dorsney, Kenneth) (Entered: 12/31/2020) |
| 01/06/2021 | 226 | REDACTED VERSION of 224 Stipulation by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A)(McCann, Douglas) (Entered: 01/06/2021) |
| 01/07/2021 | 227 | [SEALED] MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal Rule of Civil Procedure 72(b)(2), briefing consists solel - filed by Kurin, Inc.(Dorsney, Kenneth) Modified on 1/8/2021 (nmf). (Entered: 01/07/2021) |
| 01/07/2021 | 228 | [SEALED] DECLARATION re 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal *(executed by Bob Rogers)* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/07/2021) |
| 01/08/2021 | 229 | [SEALED] Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Discovery Dispute - re 221 Order Setting Teleconference,,,,,, (Dorsney, Kenneth) (Entered: 01/08/2021) |
| 01/08/2021 | 230 | Joint MOTION for Hearing re 221 Order Setting Teleconference,,,,, *to resolve discovery dispute* - filed by Kurin, Inc.. Motions referred to Christopher J. Burke.(Dorsney, Kenneth) (Entered: 01/08/2021) |
| 01/13/2021 | 231 | REDACTED VERSION of 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/13/2021) |
| 01/13/2021 | 232 | REDACTED VERSION of 228 Declaration, *of Bob Rogers* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/13/2021) |
| 01/13/2021 | 233 | ORDER ADOPTING 218 REPORT AND RECOMMENDATIONS ; denying 166 Motion to Amend/Correct. Signed by Judge Colm F. Connolly on 1/13/2021. (nmf) (Entered: 01/13/2021) |
| 01/14/2021 | 234 | Joint Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Request to Schedule Discovery Teleconference. (McCann, Douglas) (Entered: 01/14/2021) |
| 01/14/2021 | 235 | Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Request to Set Matter for Hearing and to Seal Proceeding in Advance. (McCann, Douglas) (Entered: 01/14/2021) |
| 01/14/2021 | 236 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Request for Protective Order regarding Witness Dispute. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(McCann, Douglas) (Entered: 01/14/2021) |
| 01/14/2021 | 237 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' January 14, 2021 letter requesting a discovery teleconference regarding 1 discovery dispute, (D.I. 234), as well as Plaintiff's January 14, 2021 letter regarding further requests with respect to this dispute, (D.I. 235). It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for 2/1/2021 at 10:00 AM before Judge Christopher J. Burke.; (2) The proceeding shall be sealed, and in addition to the Court, the Courts law clerk and the Court reporter, only attorneys who have entered an appearance in the case shall participate in the proceeding.; (3) By no later than January 21, 2021, Defendant shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining its reasons for its opposition.; (4) The parties shall jointly file a Motion For Teleconference To Resolve Discovery Dispute.; (5) By no later than January 21, 2021, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via email to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference.Ordered by Judge Christopher J. Burke on 1/14/2021. (mlc) (Entered: 01/14/2021) |
| 01/19/2021 | 238 | NOTICE of Service of OPENING EXPERT REPORT OF ERIK K. ANTONSSON, PH.D., P.E. filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 01/19/2021) |
| 01/19/2021 | 239 | [SEALED] MOTION to Redact 217 Transcript - filed by Kurin, Inc.(Dorsney, Kenneth) Modified on 1/19/2021 (nmf). (Entered: 01/19/2021) |
| 01/19/2021 | | Motions No Longer Referred: 239 MOTION to Redact 217 Transcript. The automatic referral to Judge Burke |

| | | |
|---|---|---|
| | | generated by the system has been removed for this motion. (nmf) (Entered: 01/19/2021) |
| 01/19/2021 | 240 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Plaintiff's Letter Brief Regarding Discovery Dispute - re 221 Order Setting Teleconference,,,,,, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(McCann, Douglas) (Entered: 01/19/2021) |
| 01/20/2021 | 241 | Joint MOTION for Teleconference to Resolve Discovery Dispute re 235 Letter, 234 Letter - filed by Magnolia Medical Technologies, Inc.. Motions referred to Christopher J. Burke.(McCann, Douglas) (Entered: 01/20/2021) |
| 01/20/2021 | 242 | NOTICE OF SERVICE of (1) Opening Expert Report of Peter, A. McCullough, MD, MPH; (2) Opening Expert Report of Prof. Erika Lietzan; (3) Opening Expert Report of Dr. Juan G. Santiago regarding Infringement of U.S. Patent Nos. 9,855,001 and 10,039,483; and (4) Expert Report of Elizabeth Dean filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 01/20/2021) |
| 01/20/2021 | 243 | REDACTED VERSION of 239 MOTION to Redact 217 Transcript,, by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/20/2021) |
| 01/21/2021 | 244 | REDACTED VERSION of 236 Letter, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(McCann, Douglas) (Entered: 01/21/2021) |
| 01/21/2021 | 245 | [SEALED] Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter regarding protective order issue - re 236 Letter,. (Dorsney, Kenneth) (Entered: 01/21/2021) |
| 01/21/2021 | 246 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding upcoming discovery hearings. (Dorsney, Kenneth) (Entered: 01/21/2021) |
| 01/21/2021 | 247 | [SEALED] ANSWERING BRIEF in Opposition re 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal, 239 MOTION to Redact 217 Transcript,, *Plaintiff's Consolidated Brief in Opposition to Defendant's Motions to Redact Report and Recommendation (D.I. 218) and to Redact December 10, 2020 Hearing Transcript (D.I. 217)* filed by Magnolia Medical Technologies, Inc..Reply Brief due date per Local Rules is 1/28/2021. (McCann, Douglas) (Entered: 01/21/2021) |
| 01/21/2021 | 248 | [SEALED] DECLARATION re 247 Answering Brief in Opposition,, *of Douglas E. McCann in Support of Plaintiff's Consolidated Brief in Opposition to Defendant's Motions to Redact Report and Recommendation (D.I. 218) and to Redact December 10, 2020 Hearing Transcript (D.I. 217)* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(McCann, Douglas) (Entered: 01/21/2021) |
| 01/25/2021 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery Conference held on 1/25/2021. The Court heard argument regarding Defendant's discovery dispute, (D.I. 230). The Court denied Defendant's request without prejudice to Defendant re-raising in the future. The transcript of today's call shall serve as the substance of the Court's order. (Clerk, M. Crawford) Appearances: D. McCann, J. Brooks, C. Drakulich for Plaintiff; C. Hitch, K. Boyd, J. Seraphine for Defendant. (Court Reporter Valerie Gunning) (dlb) (Entered: 01/25/2021) |
| 01/26/2021 | 249 | REDACTED VERSION of 240 Letter,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(McCann, Douglas) (Entered: 01/26/2021) |
| 01/27/2021 | | SO ORDERED, 220 Stipulation to Extend Time for Parties to File a Stipulation regarding Amended Infringement Contentions to December 30, 2020 filed by Magnolia Medical Technologies, Inc.. ORDERED by Judge Jennifer L. Hall on 1/27/2021. (ceg) (Entered: 01/27/2021) |
| 01/28/2021 | 250 | REDACTED VERSION of 245 Letter *to The Honorable Christopher J. Burke regarding Kurin's responsive discovery dispute letter pertaining to protective order issue* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/28/2021) |
| 01/28/2021 | 251 | [SEALED] REPLY BRIEF re 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical |

| | | |
|---|---|---|
| | | Technologies, Inc.. Please note that when filing Objections pursuant to Federal, 239 MOTION to Redact 217 Transcript,, filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/28/2021) |
| 01/28/2021 | 252 | [SEALED] DECLARATION re 251 Reply Brief, *in support of Motion to Redact Report and Recommendation and December 10, 2020 Hearing Transcript (executed by Jacob Zweig)* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/28/2021) |
| 01/28/2021 | 253 | REDACTED VERSION of 247 Answering Brief in Opposition,, by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/28/2021) |
| 01/28/2021 | 254 | REDACTED VERSION of 248 Declaration,, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(McCann, Douglas) (Entered: 01/28/2021) |
| 01/28/2021 | 255 | Joint STIPULATION and [Proposed] Order Dismissing all Claims and Counterclaims regarding the '689 and '139 Patents by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/28/2021) |
| 01/29/2021 | 256 | SO ORDERED, re 255 Stipulation and [Proposed] Order Dismissing all Claims and Counterclaims regarding the '689 and '139 Patents filed by Magnolia Medical Technologies, Inc. Ordered by Judge Colm F. Connolly on 1/29/2021. (fms) (Entered: 01/29/2021) |
| 01/29/2021 | 257 | NOTICE of Withdrawal of Attorney Mathias W. Samuel by Magnolia Medical Technologies, Inc. (McCann, Douglas) (Entered: 01/29/2021) |
| 01/29/2021 | 258 | ORAL ORDER Setting Teleconference: The Court has reviewed the Joint Motion for Teleconference to Resolve Discovery Disputes (D.I. 223 ). A discovery dispute teleconference is scheduled for February 10, 2021 at 3:00 PM Eastern Time before Judge Jennifer L. Hall. By no later than February 3, 2021 the party(ies) seeking relief shall file with the Court a letter, not to exceed three pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues. By no later than February 8, 2021 any party(ies) opposing the application for relief may file a letter, not to exceed three pages, in no less than 12-point font, outlining that party's reasons for its opposition. Counsel is reminded to provide courtesy copies. Counsel shall send dial-in information directly to the Court, no later than 24 hours prior to the hearing, using the following e-mail address: Cailah_Garfinkel@ded.uscourts.gov. The Court may choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference. ORDERED by Judge Jennifer L. Hall on 1/29/2021. (ceg) (Entered: 01/29/2021) |
| 01/29/2021 | 259 | ORDER: Having considered Defendant's Motion to Redact Report and Recommendation (D.I. 227 ) and its Motion to Redact December 10, 2020 Hearing Transcript (D.I. 239 ), the Court DENIES both motions. (*See Order for details). Signed by Judge Jennifer L. Hall on 1/29/2021. (ceg) (Entered: 01/29/2021) |
| 02/01/2021 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery teleconference held on 2/1/2021. The hearing was sealed and the parties should follow the Court's procedures regarding the public availability of transcripts and redactions to transcripts. The Court heard argument regarding Plaintiff's discovery dispute, (D.I. 241). The Court resolved the motion and the transcript of today's call shall serve as the substance of the Court's order. (Court Reporter Jennifer Guy. Clerk: M. Crawford) Appearances: D. McCann, J. Brooks for Plaintiff; K. Dorsney, K. Boyd, J. Seraphine for Defendant (mlc) (Entered: 02/01/2021) |
| 02/03/2021 | 260 | [SEALED] Letter to Magistrate Judge Hall from Douglas E. McCann regarding Plaintiff's Remaining Disputes Related to the Motion to Amend Infringement Contentions (D.I. 105) - re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions*. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(McCann, Douglas) (Entered: 02/03/2021) |
| 02/04/2021 | 261 | REDACTED VERSION of 251 Reply Brief, *in support of Motion to Redact Report and Recommendation and December 10, 2020 Hearing Transcript* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/04/2021) |
| 02/04/2021 | 262 | REDACTED VERSION of 252 Declaration *of Jacob Zweig* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/04/2021) |
| 02/08/2021 | 263 | [SEALED] Letter to The Honorable Jennifer L. Hall from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter related to Amended Infringement Contentions issue - re 260 Letter,,. (Dorsney, Kenneth) (Entered: 02/08/2021) |
| 02/09/2021 | 264 | ORAL ORDER: Before the Court is the parties' Joint Motion for Teleconference to Resolve Discovery Dispute (D.I. 223 ) by which the parties seek to resolve outstanding disputes related to Magnolia's Motion for Leave to Amend its Infringement and Willfulness Contentions (D.I. 105). Having reviewed the briefing and exhibits submitted in connection with the original motion (D.I. 105, 106, 107, 108, 109, 135, 136, 142, 143, 150) and the supplemental letter briefs and exhibits submitted in connection with the pending motion (D.I. |

| | | |
|---|---|---|
| | | 260, 263), IT IS HEREBY ORDERED that Magnolia's request for leave to amend is GRANTED with respect to the remaining disputed amendments. Those amendments (D.I. 224, Ex. A) relate generally to the "operating mode[s]"/"transition" and "seal" limitations. Magnolia has demonstrated good cause for the proposed amendments, particularly since the amendments rely on documents produced after the cut-off date for amending infringement contentions set by the Court's scheduling order and do not represent new infringement theories. I also agree with Magnolia that Kurin's current objections largely boil down to an assertion that Magnolia's initial contentions were insufficiently detailed; I agree with Magnolia that it's too late for Kurin to make that argument for the first time now (i.e., in Court-ordered supplemental briefing after a fully-briefed motion to amend to which Kurin was granted leave to file a sur-reply). As an independent basis for my ruling, I also conclude that Kurin waived the arguments that it failed to raise in its briefing on Magnolia's Motion for Leave to Amend. The discovery dispute teleconference scheduled for February 10, 2021 is CANCELLED. ORDERED by Judge Jennifer L. Hall on 2/9/2021. (ceg) (Entered: 02/09/2021) |
| 02/10/2021 | 265 | REDACTED VERSION of 260 Letter,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(McCann, Douglas) (Entered: 02/10/2021) |
| 02/11/2021 | 266 | [SEALED] MOTION for Leave to File *an Early Motion in Limine* - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A)(McCann, Douglas) (Entered: 02/11/2021) |
| 02/12/2021 | 267 | STIPULATION TO EXTEND TIME for the parties to serve Rebuttal Expert Reports to February 17, 2021 - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/12/2021) |
| 02/15/2021 | 268 | REDACTED VERSION of 263 Letter *to The Honorable Jennifer L. Hall from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter regarding amended infringement contentions* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/15/2021) |
| 02/16/2021 | | SO ORDERED, re 267 STIPULATION TO EXTEND TIME for the parties to serve Rebuttal Expert Reports to February 17, 2021 filed by Kurin, Inc. Setting Scheduling Order Deadlines ( Rebuttal Expert Reports due by 2/17/2021.). Signed by Judge Colm F. Connolly on 2/16/2021. (fms) (Entered: 02/16/2021) |
| 02/16/2021 | 269 | STIPULATION TO EXTEND TIME for Parties to Serve Rebuttal Expert Reports to February 18, 2021 - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 02/16/2021) |
| 02/17/2021 | | SO ORDERED, re 269 STIPULATION TO EXTEND TIME for Parties to Serve Rebuttal Expert Reports to February 18, 2021 filed by Magnolia Medical Technologies, Inc. Setting Scheduling Order Deadlines ( Rebuttal Expert Reports due by 2/18/2021.). Signed by Judge Colm F. Connolly on 2/17/2021. (fms) (Entered: 02/17/2021) |
| 02/18/2021 | 270 | REDACTED VERSION of 266 MOTION for Leave to File *an Early Motion in Limine* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Ex. A)(McCann, Douglas) (Entered: 02/18/2021) |
| 02/19/2021 | 271 | NOTICE OF SERVICE of (1) EXPERT REPORT OF ERIK K. ANTONSSON, PH.D., P.E. (2)EXPERT REPORT OF PATRICK F. KENNEDY, PH.D. filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 02/19/2021) |
| 02/19/2021 | 272 | NOTICE OF SERVICE of Rebuttal Expert Report of Dr. Juan Santiago; Rebuttal Expert Report of Peter A. McCullough, MD, MPH; and Supplement to Opening Expert Report of Peter A. McCullough, MD, MPH filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 02/19/2021) |
| 02/25/2021 | 273 | [SEALED] ANSWERING BRIEF in Opposition re 266 MOTION for Leave to File *an Early Motion in Limine* filed by Kurin, Inc..Reply Brief due date per Local Rules is 3/4/2021. (Dorsney, Kenneth) (Entered: 02/25/2021) |
| 03/03/2021 | 274 | REDACTED VERSION of 273 Answering Brief in Opposition *to Magnolia's Motion for Leave to file early Motion In Limine* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 03/03/2021) |
| 03/03/2021 | 275 | [SEALED] REPLY BRIEF re 266 MOTION for Leave to File *an Early Motion in Limine* filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 03/03/2021) |
| 03/08/2021 | 276 | REQUEST for Oral Argument by Magnolia Medical Technologies, Inc. re 266 MOTION for Leave to File *an Early Motion in Limine*. (McCann, Douglas) (Entered: 03/08/2021) |
| 03/10/2021 | 277 | REDACTED VERSION of 275 Reply Brief by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 03/10/2021) |
| 03/15/2021 | 278 | NOTICE OF SUBSTITUTION OF COUNSEL re Magnolia Medical Technologies, Inc.: Entry of appearance of attorney Rodger Dallery Smith, II. Attorney Douglas E. McCann, Robert M. Oakes, Juanita Brooks, Corrin Drakulich, Bethany Mihalik, James Huguenin-Love, Katherine D. Prescott and Charles N. Reese, Jr. of FISH & RICHARDSON, P.C. terminated. (Smith, Rodger) (Entered: 03/15/2021) |

| 03/15/2021 | 279 | MOTION for Pro Hac Vice Appearance of Attorney Ashok Ramani - filed by Magnolia Medical Technologies, Inc.. (Smith, Rodger) (Entered: 03/15/2021) |
| 03/15/2021 | 280 | MOTION for Pro Hac Vice Appearance of Attorney David J. Lisson, Micah G. Block, Philip T. Sheng, Kathryn Bi, and Ian Hogg - filed by Magnolia Medical Technologies, Inc.. (Smith, Rodger) (Entered: 03/15/2021) |
| 03/15/2021 | | SO ORDERED, re 279 MOTION for Pro Hac Vice Appearance of Attorney Ashok Ramani filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 3/15/2021. (fms) (Entered: 03/15/2021) |
| 03/15/2021 | | SO ORDERED, re 280 MOTION for Pro Hac Vice Appearance of Attorney David J. Lisson, Micah G. Block, Philip T. Sheng, Kathryn Bi, and Ian Hogg filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 3/15/2021. (fms) (Entered: 03/15/2021) |
| 03/16/2021 | 281 | STIPULATION and [Proposed] Order to Amend Scheduling Order - by Magnolia Medical Technologies, Inc.. (Smith, Rodger) (Entered: 03/16/2021) |
| 03/17/2021 | 282 | SO ORDERED, re 281 Stipulation filed by Magnolia Medical Technologies, Inc. Dispositive Motions due by 5/27/2021. Per the Court's stated policy on its website, a new trial date will be set once dispositive motions have been decided. Signed by Judge Colm F. Connolly on 3/17/2021. (fms) (Entered: 03/17/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney Philip T. Sheng for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 03/18/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney Ashok Ramani for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 03/18/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney David J. Lisson for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 03/18/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney Micah G. Block for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 03/18/2021) |
| 03/19/2021 | | Pro Hac Vice Attorney Kathryn B. Bi for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 03/19/2021) |
| 04/07/2021 | | ORAL ORDER: The Court will hear brief oral argument on Plaintiff's motion for leave to file an early motion in limine (D.I. 266 ) on April 16, 2021 at 3:00 p.m. Plaintiff shall submit ex parte and under seal to the Court no later than April 14, 2021 the email referenced on page 1 of its motion and the documents that were inadvertently produced to and then clawed back from Defendant. Plaintiff shall be prepared to identify PRECISELY at oral argument what evidence or line of questioning it would seek to preclude in the motion in limine it wishes to file. "[T]his information" and "the information" (see page 2 of Plaintiff's motion) are not sufficient. Counsel for Plaintiff shall coordinate the call and email the dial-in information to chambers. Ordered by Judge Colm F. Connolly on 4/7/2021. (nmf) (Entered: 04/07/2021) |
| 04/08/2021 | | ORAL ORDER re 4/7/2021 Oral Order. ORDER: Due to a conflict in the Court's schedule, the Telephonic Oral Argument originally scheduled for 4/16/2021 is rescheduled for 4/19/2021 at 3:00 p.m. ( A Telephonic Oral Argument is set for 4/19/2021 at 03:00 PM before Judge Colm F. Connolly.) Counsel for the Plaintiff shall coordinate the call and email the dial-in information to chambers. Ordered by Judge Colm F. Connolly on 4/8/2021. (nmf) (Entered: 04/08/2021) |
| 04/14/2021 | 283 | [SEALED] Letter to The Honorable Colm F. Connolly from Rodger D. Smith II regarding the Court's April 7, 2021 Oral Order - re Oral Order,,,, Set Hearings,,,. (Attachments: # 1 Attachment 1, # 2 Attachment 2)(Smith, Rodger) (Entered: 04/14/2021) |
| 04/19/2021 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Oral Argument held on 4/19/2021. (Court Reporter V. Gunning.) (nmf) (Entered: 04/19/2021) |
| 04/19/2021 | | ORAL ORDER: For the reasons stated during today's telephone call, Plaintiff's motion for leave to file an early motion in limine (D.I. 266 ) is DENIED AS MOOT. Ordered by Judge Colm F. Connolly on 4/19/2021. (nmf) (Entered: 04/19/2021) |
| 04/21/2021 | 284 | NOTICE of Intent to Redact Teleconference Transcript of 4/19/21 by Magnolia Medical Technologies, Inc. (Raucci, Anthony) (Entered: 04/21/2021) |

| 05/04/2021 | 285 | [SEALED] MOTION Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Raucci, Anthony) Modified on 5/4/2021 (nmf). (Entered: 05/04/2021) |
| 05/04/2021 | | Motions No Longer Referred: 285 MOTION Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument . The automatic referral generated by the system has been removed for this motion. (nmf) (Entered: 05/04/2021) |
| 05/05/2021 | 286 | ORDER granting 285 Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument . Any public version of the transcript of the April 19, 2021 hearing in this matter to be docketed shall contain the redactions as applied in Exhibit B to Plaintiffs May 4, 2021 Unopposed Motion to Redact. Signed by Judge Colm F. Connolly on 5/5/2021. (fms) (Entered: 05/05/2021) |
| 05/11/2021 | 287 | REDACTED VERSION of 285 MOTION Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument - by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exs. A-B, # 2 Proposed Order)(Raucci, Anthony) (Entered: 05/11/2021) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/23/2021 14:21:45 | | | |
| **PACER Login:** | knobbapacer | **Client Code:** | MASIMOL.1214L |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-00097-CFC-CJB Start date: 1/1/1972 End date: 5/24/2021 |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

EXHIBIT 46

1

2

3

4 UNITED STATES DISTRICT COURT

5 SOUTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 WHITEWATER WEST INDUSTRIES, LTD., | Case No.: 17CV1118-BEN(BLM) |
| 8                       Plaintiff, | **ORDER GRANTING IN PART** |
| 9 v. | **DEFENDANTS' MOTION TO CONTINUE EXPERT REPORT DEADLINE** |
| 10 PACIFIC SURF DESIGNS, INC. AND FLOW SERVICES, INC., | **[ECF No. 121]** |
| 11 | |
| 12                      Defendants. | |
| 13 | |
| 14 AND RELATED COUNTERCLAIMS | |

15

16       On May 8, 2018, Defendants filed an *Ex Parte* Application to Extend Expert Report

17 Deadline. See ECF No. 121 ("Mot."). Defendants seek an order continuing the remaining

18 pretrial deadlines. Mot. at 2. Defendants are seeking *ex parte* relief because the current

19 deadline for expert reports is May 18, 2018. Id. In support, Defendants argue that Plaintiff still

20 has at least 7500 documents to produce that are responsive to Defendants' January 2018 ESI

21 requests and which Defendants need prior to conducting various depositions and discussions

22 with their experts. Id. Defendants note that while Plaintiff originally agreed to produce the

23 documents the week of April 23, 2018, it has not done so and instead promised to produce them

24 on May 8, 2018. Id. In further support, Defendants argue that because the only dates provided

25 by Plaintiff for the deposition of Plaintiff's president, Mr. Geoff Chutter, are May 16-18, 2018,

26 Defendants are unable to have their expert use Mr. Chutter's testimony in his or her opening

27 report with the current deadline. Id. at 2-3, 5. Finally, Defendants argue that if its pending

28 motion to compel is granted, Plaintiff will be required to produce additional documents and

1

witnesses for deposition.  Id. at 3, 5-6.  Defendants note that having their expert produce a report now and simply supplement it later after discovery is produced is inefficient and "not practicable" without a continuance of the deadlines.  Id. at 7.

On May 9, 2018, Plaintiff filed an opposition to the motion.  See ECF No. 122 ("Oppo.").  Plaintiff contends that the motion was filed in violation of the Local Rules and Chambers Rules because Defendants failed to inform Plaintiff of their plan to file the instant *ex parte* motion and failed to meet and confer regarding the motion.[1]  Oppo. at 2-4.  Plaintiff also contends that Defendants were aware of the "purportedly new reasons" to continue the deadlines in this matter when they submitted the joint motion to continue the fact discovery deadline on April 26, 2018.  Id. at 5.  Plaintiff states that there is no good cause for the requested relief because Defendants' failure to timely retain their expert is the motivation behind the request, not Plaintiff's failure to comply with discovery.  Id. at 5-6.  Plaintiff notes that Defendants failed to provide any details regarding how the pending discovery relates to their expert reports and that one of Defendants' experts has already submitted a report while the other expert is solely a rebuttal expert to Plaintiff's damages expert.[2]  Id. at 6.  Plaintiff contends that the requested relief is due in part to Defendants' belated May 1, 2018 disclosure of expert James Carmichael, which is not good cause for continuing the case deadlines.  Id. at 7. Plaintiff further contends that Defendants were aware of the pending ESI requests, but did not claim they were relevant to expert discovery until after they retained Mr. Carmichael.  Id.  Additionally, Plaintiff notes that the fact that Defendants were aware of Mr. Chutter and chose to wait to notice his deposition for April 27, 2018, the end of fact discovery at that time, does not demonstrate diligence, and that Defendants' pending motion to compel [see ECF No. 105] does not reference expert discovery and only seeks an extension of the fact discovery deadline.  Id. at 9-10.  Finally, Plaintiff contends

---

[1] Plaintiff notes that Defendants' failure to comply with the Local Rules constitutes a sanctionable act and requests that at the very least, the Court "remind Defendants of their professional responsibilities to the Court and counsel."  Id. at 5, n.1.

[2] Plaintiff notes that none of the pending discovery requests relate to damages.  Oppo. at 6.

17CV1118-BEN(BLM)

that Defendants have not shown good cause to continue all dates and requests that if the Court is inclined to grant Defendants' request, that the continuance be limited to two weeks and apply to Plaintiff and Defendants equally.  Id. at 11-12.

On May 11, 2018, Defendants filed Supplemental Evidence in Support of *Ex Parte* Application to Extend Expert Report Deadline.  See ECF No. 123 ("Mot. Supp.").  Defendants dispute Plaintiff's contention that it made a full and complete production on May 8, 2018.  Id. at 3.  In support, Defendants argue that Plaintiff produced 13,123 documents which was "well beyond the 7,500 documents that Plaintiff had represented" and that the documents were delivered on 9:44 p.m. on May 8, 2018 with a URL to download a zip file that was too cumbersome to download, requiring Plaintiff to send a flash drive with the load file to Defendants' office on May 9, 2018.  Defendants further argue that this large late production provides additional good cause for the requested extension.  Id.

On May 11, 2018, Plaintiff filed a Response to Defendants' Notice of Supplemental Authority.  ECF No. 124.  Plaintiff contends that Defendants' Supplemental Evidence amounts to "an unauthorized reply brief" and compels Plaintiff to respond to Defendants' "deliberate mischaracterization of Plaintiff's ESI production."  Id. at 2.  Plaintiff notes that (1) the Supplemental Evidence does not actually present any new evidence, (2) it produced fewer documents than anticipated, not more, and (3) Defendants did not try to access the file transfer link until after the flash drive was delivered.  Id. at 2-5.  Plaintiff further contends that Defendants should be sanctioned.  Id. at 5-6.

Once a Rule 16 scheduling order is issued, dates set forth therein may be modified only "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); see also ECF No. 82 at 8 (stating that dates and times "will not be modified except for good cause shown").  The Rule 16 good cause standard focuses on the "reasonable diligence" of the moving party.  Noyes v. Kelly Servs., 488 F.3d 1163, 1174 n.6 (9th  Cir. 2007) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294-95 (9th Cir. 2000) (stating Rule 16(b) scheduling order may be modified for "good cause" based primarily on diligence of moving party).  Essentially, "the focus of the inquiry is upon the moving

17CV1118-BEN(BLM)

party's reasons for seeking modification." <u>Johnson</u>, 975 F.2d at 609.  However, a court also may consider the "existence or degree of prejudice to the party opposing the modification. . . ." <u>Id.</u>

In light of the Court's discovery order [<u>see</u> ECF No. 133], the Court finds good cause and **CONTINUES** all remaining dates for <u>all</u> parties as follows:

| Description | Current Date | New Date |
|---|---|---|
| Rule 26(a)(2)(A) and (B) Disclosures | May 18, 2018 | August 17, 2018 |
| Rule 26(a)(2)(D) Supp. Disclosures | June 8, 2018 | September 7, 2018 |
| Expert Discovery Completion | July 6, 2018 | October 5, 2018 |
| Pretrial Motion Filing Deadline | July 20, 2018 | October 19, 2018 |
| Confidential Settlement Statement | August 3, 2018 | October 26, 2018 |
| Mandatory Settlement Conference | August 13, 2018 at 9:30 a.m. | November 5, 2018 at 9:30 a.m. |
| Pretrial Disclosures | September 17, 2018 | January 14, 2019 |
| L.R. 16.1(f)(4) Meeting of Counsel | September 24, 2018 | January 21, 2019 |
| Plaintiff's Proposed Pretrial Order due to Defendants | October 1, 2018 | January 28, 2019 |
| Proposed Final Pretrial Conference Order | October 8, 2018 | February 4, 2019 |
| Final Pretrial Conference | October 15, 2018 at 10:30 a.m. | February 11, 2019 at 10:30 a.m. |

**IT IS SO ORDERED**.

Dated:  6/12/2018

Hon. Barbara L. Major
United States Magistrate Judge

4

17CV1118-BEN(BLM)

EXHIBIT 47

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| EMBLAZE LTD., | ) | Case No.: 5:11-cv-01079-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER RE: DISCOVERY MOTIONS** |
| v. | ) | |
| | ) | **(Re: Docket No. 216, 231)** |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

     In this patent infringement suit, Defendant Apple Inc. ("Apple") moves to amend its invalidity contentions. Plaintiff Emblaze Ltd. ("Emblaze") opposes. Apple separately seeks sanctions that would include not only leave to amend its contentions but also an order unilaterally extending the fact discovery cutoff and compelling a further deposition of Sharon Carmel to occur in the United States, at Emblaze's expense. If Emblaze cannot produce Mr. Carmel to be re-deposed, Apple asks that Mr. Carmel be precluded from testifying at trial in any manner. Having reviewed the papers and considered the arguments of counsel at a hearing on the motions, the court is persuaded that Apple's requests for leave and a further deposition of Mr. Caramel are warranted but that Apple's further requests are not.

     The standards for amending invalidity contentions in this district are well-known. Patent Local Rule 3-6 allows a party to amend its invalidity contentions "only by order of the Court upon

<div align="center">1</div>

<div style="writing-mode: vertical-rl; text-align:center">**United States District Court**
For the Northern District of California</div>

a timely showing of good cause."  The Patent Local Rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."[1]  The Patent Local Rules balance "the right to develop new information in discovery with the need for certainty as to the legal theories."[2]  They do so by requiring a party to "proceed with diligence in amending its contentions when new information comes to light in the course of discovery."[3]  "Only if the moving party is able to show diligence may the court consider the prejudice to the non-moving party."[4]  The party seeking to amend its contentions, here Apple, bears the burden of establishing diligence.[5]

Apple offers two justifications for its proposed leave.  The first is the court's April 19, 2013, claim construction order, which by Apple's count rejected 15 of 16 constructions Apple had proposed.  The second is the timing of Emblaze's production of certain prior art materials.  As a third justification for not only the leave it seeks, but also the unilateral extension and further deposition, Apple cites Fed. R. Civ. P. 37 and highlights what it characterizes as Emblaze's discovery misconduct.

The court begins with the leave issue.

With respect to the first argument, Emblaze does not quibble with Apple's characterization of its success, or lack thereof, at claim construction.  Emblaze instead argues that because Apple knew about Emblaze's proposed constructions as early as March 5, 2012, when Emblaze proposed

---

[1] *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n. 12 (Fed. Cir. 2006) (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

[2] *Id.* at 1365-66.

[3] *Id.*

[4] *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 5:11-CV-01846-LHK, 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012); *see also Acer, Inc. v. Tech. Properties Ltd.*, Case No. 5:08-CV-00877 JF/HRL, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) ("if [the moving party] was not diligent, the inquiry should end.").

[5] *02 Micro*, 467 F.3d at 1366-67.

2

Case No.: Case No.: 5:11-cv-01079-PSG
ORDER

them, Apple could have conducted its "new" prior art search long ago.  While Emblaze may be

right that Apple knew of certain constructions when Emblaze proposed them the March before last,

that argument does not address the variety of constructions adopted by the court that neither party

proposed.  Even as to those constructions urged by Emblaze, Patent L.R. 3-6(a) provides good

cause to amend invalidity contentions when the Court issues any claim construction "different from

that proposed by the party seeking amendment."[6]  In contrast perhaps to the standards of other

districts,[7] this rule imposes no different standard when the different claim construction was first

proposed by the opposing party.[8]

　　　　With respect to the second argument, Emblaze initially notes that at least some of the

Emblaze products at issue were known to Apple at least as early as April 26, 2013, when Apple

filed a pleading with the Court[9] that referenced an Emblaze offering document that included nearly

four pages of discussion about Emblaze Creator.  Emblaze may be right that Apple knew about the

products, or at least some of them, a few months before its brought its motion, but the papers

indicate that the vast majority of Emblaze's production about these products was made in late June.

Even if that April production might be otherwise be sufficient, it did not identify the Emblaze

products by name or with substantial detail in the document and was dated many months after the

priority date of the patent-in-suit.  Emblaze made further productions in late July that included

---

[6] (emphasis added).

[7] *See, e.g. Mass Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286 (N.D. Tex. 2008)
(where Court adopted patentee's proposed constructions without major modifications, alleged
infringer "was on notice of the possibility of the Court's constructions from at least the time [that
the alleged infringer] proposed its constructions")

[8] Emblaze does cite one opinion from this district, *Sunpower Corp. Sys. v. Sunlink Corp.*
(Case No. 4:08-2807 SBA (EMC), 2009 WL 1657987 (N.D. Cal. June 12, 2009)), in which the
court found insufficient cause where the "risk of the construction rendered by the presiding judge
was well known and anticipated by Defendant."  But Apple is right that the court in *Sunpower* only
found that the construction provided insufficient cause because good cause to amend only because
the defendant had already served "[p]rior art and claim charts anticipating" the ordered
construction.  *Id.* at *1.

[9] *See* Docket No. 179.

3

Case No.: Case No.: 5:11-cv-01079-PSG
ORDER

**United States District Court**
For the Northern District of California

three Emblaze Creator manuals and a copy of the actual Emblaze Creator software, which would appear to be the most significant materials for any invalidity analysis.  On this record, the court finds that Apple was diligent in seeking relief that same month.

With respect to the third argument, the crux of the disagreement is the timing and manner of Emblaze's document production.  Apple claims that on July 30, 2013, a week after the lead inventor of the patent-in-suit Sharon Carmel's deposition, Emblaze produced over 300 pages of documents from the personal files of Carmel even though all of these documents had been made available to Emblaze's counsel before the Carmel deposition.  Emblaze similarly surprised Apple – according to Apple anyway – in the middle of inventor depositions with documents and a software program (in original form) from the personal files of Ziv Eliraz, a co-inventor of the patent-in-suit and a former Emblaze employee. Apple also argues that many of the these documents should have been captured during Emblaze's initial document searches or were given to outside counsel who then failed to produce them for over a year.

Emblaze responds that, at bottom, Emblaze did not have possession, custody or control over the documents produced by certain witnesses until the witnesses produced those documents at their depositions in Israel.  Emblaze also urges that whatever shortcomings there were in its document production, its efforts were taken in good faith.

The court is troubled by what it has come to learn of Emblaze's processes for collecting and producing documents.  In particular, the testimony of Ms. Gal describes a history of delayed production of documents and documents turned up in ESI searches that were not, but should have been, located in earlier productions of documents.  Nonetheless on the record presented, the court cannot say that Emblaze's conduct is sanctionable under Rule 37.

Apple has, however, demonstrated the requisite diligence required to secure the leave it seeks.  The court therefore considers the prejudice Emblaze might face by granting Apple leave.

4

Emblaze highlights the fact that fact discovery in this case closed on August 30, 2013.  Emblaze
also claims that, at least as of the date it filed its opposition, none of the publicly available articles
and patents that Apple now seeks to add have been produced to Emblaze.  Apple disputes this with
a sworn declaration, but even if Emblaze's claim is accurate, the court finds that it can mitigate the
burden on Emblaze by adjusting the schedule, as follows:

Fact Discovery Cutoff (mutual)................................................................... October 15, 2013

Designation of Opening Experts with Reports ............................................October 31, 2013

Designation of Rebuttal Experts with Reports .........................................November 15 2013

Expert Discovery Cutoff .........................................................................December 20, 2013

Deadline(s) for Filing Discovery Motions .....................................*See* Civil Local Rule 37-3

Last Day for Dispositive Motion Hearing .............................10:00 a.m. on January 28, 2014

Final Pretrial Conference .......................................................10:00 a.m. on March 11, 2014

Trial ........................................................................................9:30 a.m. on March 24, 2014

The court also will permit a further deposition of Mr. Caramel, with each party bearing its
own expenses.  If Mr. Caramel does not appear in the United States for such a deposition, the court
will entertain a renewed motion by Apple to preclude his testimony.

**IT IS SO ORDERED.**

Dated: September 12, 2013

PAUL S. GREWAL
United States Magistrate Judge

Case No.: Case No.: 5:11-cv-01079-PSG
ORDER

5

EXHIBIT 48

Case 8:20-cv-00048-JVS-JDE   Document 550-1   Filed 01/10/22   Page 227 of 248   Page ID
#:41094
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 1 of 7

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                               ----oo0oo----

11

12  TECHNOLOGY LICENSING                  NO. CIV. 2:03-1329 WBS EFB
    CORPORATION,

13
                                          MEMORANDUM AND ORDER RE:
14          Plaintiff,                    MOTIONS TO AMEND SCHEDULING
                                          ORDER AND DEFENDANT'S MOTION
15      v.                                TO PROHIBIT PLAINTIFF FROM
                                          INTRODUCING CERTAIN EVIDENCE
16  TECHNICOLOR USA, INC.,

17          Defendant.
    _____/

18

19                               ----oo0oo----

20

21          Plaintiff Technology Licensing Corporation ("TLC")

22  brought this action against defendant Technicolor USA, Inc.,

23  ("Technicolor")[1] for patent infringement.  Before the court are

24  plaintiff's motion to amend the scheduling order, defendant's

25  motion to amend the scheduling order, and defendant's motion to

26  _____

27      [1]   The caption was recently changed to reflect defendant's
    name change from Thomson, Inc., to Technicolor USA, Inc.  (Docket
28  No. 296.)

                                      1

Case 8:20-cv-00048-JVS-JDE   Document 550-1   Filed 01/10/22   Page 228 of 248   Page ID
#:41095
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 2 of 7

1  prohibit plaintiff from introducing facts or evidence requested
2  but not identified in plaintiff's interrogatory responses
3  pursuant to Federal Rule of Civil Procedure 37.

4  I.   <u>Factual and Procedural Background</u>

5       Plaintiff owns U.S. Patent Nos. RE40,411 E (the "'411
6  patent") and RE40,412 E (the "'412 patent"), which are July 1,
7  2008 reissues of U.S. Patent Nos. 5,754,250 (the "'250 patent")
8  and 5,486,869 (the "'869 patent"), respectively.  (Pl.'s Second
9  Am. Compl. ("SAC") ¶¶ 6-8, Exs. A-D.)  Plaintiff alleges that
10 defendant infringed the '411 and '412 patents.  (<u>Id.</u> ¶¶ 9-11.)

11      Pursuant to the court's Status (Pretrial Scheduling)
12 Order of November 13, 2009, all discovery was to be completed by
13 August 30, 2010, and all pretrial motions were to be filed by
14 September 20, 2010; the matter was set for a pretrial conference
15 on November 29, 2010, and trial on February 1, 2011.  (Docket No.
16 229.)  On April 13, 2010, pursuant to a joint stipulation of the
17 parties, the court appointed Gale R. Peterson as a Special Master
18 for purposes of claim construction.  (Docket No. 273.)  No
19 recommendation has yet been issued by the Special Master.

20      Plaintiff and defendant now move separately to amend
21 the scheduling order.  Defendant also moves to prohibit plaintiff
22 from introducing facts or evidence requested but not identified
23 in plaintiff's interrogatory responses.  The court granted
24 defendant's motion for judgment on the pleadings on plaintiff's
25 claims of inducing and contributory infringement on October 18,
26 2010, with leave to amend the complaint; the deadline for
27 submitting an amended complaint is also before the court.

28 II.  <u>Discussion</u>

2

A.   <u>Motions to Amend</u>

A court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992). Given that the Special Master has not yet issued his recommendation, it is proper to extend the discovery deadline so that the parties may conduct depositions after claim construction has been resolved. In the interest of retaining the structure provided by the November 13, 2009 Scheduling Order, the other deadlines will be similarly extended.

B.   <u>Motion to Exclude Certain Evidence</u>

Defendant moves pursuant to Federal Rule of Civil Procedure 37(c)(1) for an order sanctioning plaintiff for its purported failure to respond appropriately to discovery requests. Defendant seeks an order excluding any evidence offered by plaintiff regarding 1) alleged infringing devices beyond the three devices plaintiff identified in response to Interrogatory No. 1; 2) the doctrine of equivalents, which plaintiff did not address in answering Interrogatory No. 2.; and 3) licensing of the '411 and '412 patents or their predecessor patents, for which plaintiff did not provide information in answering Interrogatory No. 3.

Federal Rule of Civil Procedure 26(e)(1) requires that a party "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . ." Rule

3

Case 8:20-cv-00048-JVS-JDE   Document 550-1   Filed 01/10/22   Page 230 of 248   Page ID
#:41097
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 4 of 7

37(c)(1) prohibits the introduction of evidence that should have been disclosed and was not disclosed pursuant to Rule 26(e)(1) if the failure to disclose was not harmless and was not substantially justified.

Defendant's first interrogatory asked for a claim chart for each allegedly infringing product.  In response, plaintiff identified three of defendant's products and provided claim charts based on the allegedly infringing chips in those products. Defendant argues that plaintiff's failure to identify any other products should preclude plaintiff from introducing evidence regarding other products.  However, plaintiff has thus far been substantially justified in failing to supplement its response. Discovery is not yet complete, and plaintiff may still discover other products that contain the allegedly infringing chips. Indeed, plaintiff has requested information regarding which of defendant's products incorporate the chips at issue, and defendant has apparently responded by providing a "long string of numbers (as opposed to an identifiable product name or number), which incorporate those chips." (Pl.'s Opp'n at 6.)  Plaintiff states that it intends to determine which products incorporate the GS 4882 chip[2] during technical depositions (id.), which presumably will not take place until after claim construction is completed.  Plaintiff cannot be expected to name all of defendant's products at issue until it knows which products incorporate the relevant chip.

Further, any failure to supplement is harmless.

---

[2]    The parties have apparently settled claims regarding the other two chips.  (Pl.'s Opp'n at 2 n.2.)

Case 8:20-cv-00048-JVS-JDE   Document 550-1   Filed 01/10/22   Page 231 of 248   Page ID
#:41988
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 5 of 7

1   Defendant knows that the GS 4882 chip is at issue and is in a
2   better position than plaintiff to know which of its products
3   incorporate the chip.  Defendant has also acknowledged at least
4   the possibility that the litigation could involve all of its
5   products containing the relevant chips.  (<u>See, e.g.</u>, Def.'s Mem.
6   in Supp. of its Mot. for Partial Summ. J. (Docket No. 270) at 16
7   ("Accordingly, <u>res judicata</u> bars all [cause of action] Claims
8   asserted by TLC for infringement of the '411 or '412 Patent by
9   any Thomson product containing a Gennum GS4882 chip."); <u>id.</u> at 12
10  ("Accordingly, <u>res judicata</u> bars all of TLC's [cause of action]
11  Claims consisting of assertions of infringement of any timely
12  asserted Patent Claims of the '411 or '412 Patents, based on
13  Thomson products that contain Elantec EL4583 chips."); Def.'s
14  Opening <u>Markman</u> Br. (Docket No. 248) at 9 ("In the present case,
15  TLC's infringement allegations are based, in part, upon Thomson's
16  use of chips produced by Gennum Corp.").)  Thus, any failure to
17  disclose other products is harmless at this point.
18       Defendant's second interrogatory asked plaintiff for a
19  doctrine of equivalents analysis of the allegedly infringed
20  claims.  Plaintiff responded that its claims were based on
21  literal infringement, but that "[a]ny element of any asserted
22  claim of the '411 and '412 patents which is not found to be
23  literally present in the accused products (as will be dictated by
24  the Court's claim construction) is nonetheless present under the
25  doctrine of equivalents." (Def.'s Mot. Ex. A at 7.)  Plaintiff
26  was substantially justified in failing to amend its response to
27  include both literal infringement and doctrine of equivalents
28  analyses for the more than 50 claims that are in dispute, and a

5

Case 8:20-cv-00048-JVS-JDE   Document 550-1   Filed 01/10/22   Page 232 of 248   Page ID
#:41090
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 6 of 7

1   Rule 37 exclusion would be premature at this point.

2          In response to defendant's request for information

3   about the licensing of the patents-in-suit, plaintiff agreed to

4   produce "all settlement and/or license agreements" relating to

5   the patents by "afford[ing] Technicolor's counsel a reasonable

6   opportunity to audit, inspect and copy such records or provide

7   categorized copies of such records . . . ." (Def.'s Mot. Ex. B

8   at 3-4.)  When an "answer to an interrogatory may be determined

9   by examining, auditing, compiling, abstracting, or summarizing a

10  party's business records . . . and if the burden of deriving or

11  ascertaining the answer will be substantially the same for either

12  party," Rule 33(d) gives a responding party the option of

13  answering by:

> (1) specifying the records that must be reviewed, in
> sufficient detail to enable the interrogating party to
> locate and identify them as readily as the responding
> party could; and (2) giving the interrogating party a
> reasonable opportunity to examine and audit the records
> and to make copies, compilations, abstracts, or
> summaries.

18  Fed. R. Civ. P. 33(d).  Plaintiff's use of the Rule 33(d) option

19  was appropriate.  Accordingly, the court finds no reason to

20  impose sanctions on plaintiff.

21          IT IS THEREFORE ORDERED that defendant's motion to

22  prohibit plaintiff from introducing certain evidence be, and the

23  same hereby is, DENIED.

24          Plaintiffs have thirty days from the date of this Order

25  to file an amended complaint, if they can do so consistent with

26  the court's October 18, 2010, Order (Docket No. 312.).

27          The court's November 13, 2009, scheduling order is

28  hereby amended as follows: The parties shall disclose experts and

6

Case 8:20-cv-00048-JVS-JDE   Document 550-1   Filed 01/10/22   Page 233 of 248   Page ID
#:41100
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 7 of 7

1   produce reports in accordance with Federal Rule of Civil

2   Procedure 26(a)(2) by no later than February 1, 2011.  With

3   regard to expert testimony intended solely for rebuttal, those

4   experts shall be disclosed and reports produced in accordance

5   with Federal Rule of Civil Procedure 26(a)(2) on or before March

6   1, 2011.  All discovery shall be completed by April 6, 2011.  All

7   pretrial motions shall be filed by May 6, 2011.  The Final

8   Pretrial Conference is reset for July 11, 2011, at 2:00 p.m. in

9   Courtroom 5.  The jury trial is reset for September 20, 2011, at

10  9:00 a.m. in Courtroom 5.

11          IT IS SO ORDERED.

12  DATED:  October 25, 2010

13

14  _____
                WILLIAM B. SHUBB
15              UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 49

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                    Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANTS' NOTICE OF MOTION AND MOTION TO MODIFY AND CONTINUE SCHEDULING ORDER (Dkt. [ 96 ], filed April 22, 2020)

The Court finds this motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. The Court therefore **VACATES** the hearing date of June 1, 2020.

Plaintiff Hope Medical Enterprises, Inc., d/b/a/ Hope Pharmaceuticals ("Hope") filed this action against defendants Fagron Compounding Services, LLC, JCB Laboratories, LLC, AnazoaHealth Corporation, and Coast Quality Pharmacy, LLC (collectively, "defendants") on September 6, 2019. Dkt. 1. The gravamen of Hope's claims is that defendants' drug compounding practices constitute unfair competition.

The Court held a scheduling conference and entered a scheduling order on December 9, 2019. Dkt. 53. On April 22, 2020, defendants filed a motion to modify the Court's scheduling order, seeking extensions of various deadlines in light of the ongoing COVID-19 pandemic. Dkt. 96 ("Mot."). Defendants contend that shelter-in-place orders in effect in Arizona, California, Colorado, Florida, Kansas, Tennessee, and Washington, D.C. inhibit defendants' ability to complete pre-trial preparations and conduct discovery, in accordance with the Court's scheduling order, given that witnesses, attorneys, and legal support staff in this case reside in these states. See generally id.

Hope filed an opposition on May 11, 2020. Dkt. 101 ("Opp."). Hope avers that, in light of the ongoing pandemic, "the situation is fluid, with some states and counties having lifted 'safer-at-home' restrictions, and others maintaining them." Id. Hope maintains that, "[a]t this point, however, the current circumstances establishes [sic] good cause only for minor modifications to the existing case management schedule, with no continuance of the trial date necessary at this time due to the lengthy period (over four months) between the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

discovery cut-off and the trial date in the Court's existing scheduling order." Id. Hope further asserts that "[t]he COVID-19 pandemic should not materially affect any aspect of the case other than deposition discovery (which . . . may be conducted by remote means)" and that "[t]he completion of all other discovery and the preparation of expert reports, dispositive motions, a mediation, and motions in limine and other pretrial preparations should be largely unhindered by the public health situation." Opp. at 2.

The dates in the Court's scheduling order and in the parties' competing proposals are as follows:

| Case Event | Scheduling Order | Hope's Proposal | Defendants' Proposal |
|---|---|---|---|
| Fact Discovery Cut-Off | July 31, 2020 | Aug. 21, 2020 | Oct. 30, 2020 |
| Exchange of Expert Reports | None | June 22, 2020 | Sept. 18, 2020 |
| Exchange of Rebuttal Expert Reports | None | July 15, 2020 | Oct. 9, 2020 |
| Expert Discovery Cut-Off | June 15, 2020 | Aug. 21, 2020 | Nov. 13, 2020 |
| Last Day to File Motions | Aug. 24, 2020 | Sept. 4, 2020 | Nov. 24, 2020 |
| Settlement Completion Cut-Off | Aug. 7, 2020 | Aug. 7, 2020 | Nov. 6, 2020 |
| Status Conference re: Settlement | Aug. 24, 2020 | Aug. 24, 2020 | Nov. 24, 2020 |
| Pretrial Conference and Hearing on Motions in Limine | Oct. 26, 2020 | Oct. 26, 2020 | Jan. 25, 2021 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

| Jury Trial | Dec. 8, 2020 | Dec. 8, 2020 | Mar. 9, 2021 |
|---|---|---|---|
| | | | |

Pursuant to Rule 16(b)(4), once the Court has entered a scheduling order, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order will not be disturbed unless they evidence a clear abuse of discretion." Morgal v. Maricopa Cty. Bd. of Sup'rs, 284 F.R.D. 452, 459 (D. Ariz. 2012) (citing C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 984 (9th Cir.2011)) (internal alterations omitted).

Other courts have determined that the ongoing COVID-19 pandemic presents "good cause" warranting modification of a previously entered scheduling order. See, e.g., Wilkens v. ValueHealth, LLC, No. 19-1193-EFM-KGG, 2020 WL 2496001, at *2 (D. Kan. May 14, 2020) (denying blanket request to continue all dates by 120 days since "[v]ideo or teleconference deposition and preparation are the 'new normal' and most likely will be for some time" but determining that COVID-19 pandemic presents "good cause" that warrants "extending all unexpired deadlines 90 days and setting a new Pretrial Conference and Dispositive Motion deadline about 90 dates from the current dates."); Sung Gon Kang v. Credit Bureau Connection, Inc., No. 1:18-cv-01359-AWI-SKO, 2020 WL 1689708, at *8 (E.D. Cal. Apr. 7, 2020) ("Good cause appearing, and to allow the parties sufficient time to complete class certification discovery, particularly in light of the national, regional and local public health emergency posed by the coronavirus (COVID-19) outbreak, the case schedule will be modified to continue the class certification discovery and briefing deadlines by 180 days to allow for Defendant to produce the information.") (internal citations omitted); See also Macias v. KDF Foxdale, L.P., No. 5:18-cv-07712-EJD, 2020 WL 2097607, at *2 (N.D. Cal. May 1, 2020) (determining, with regards to motion for leave to file amended pleading pursuant to Rule 15, that "in light of the ongoing COVID-19 pandemic . . . the Court will continue the discovery deadlines in the Scheduling Order by 60 days."). Accordingly, the Court concludes that defendants have demonstrated "good cause," warranting modification of the Court's scheduling order.

In accordance with the foregoing, the Court **GRANTS** defendants' motion to modify the scheduling order. The Court modifies the scheduling order as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

| | |
|---|---|
| Fact Discovery Cut-Off: | Oct. 30, 2020 |
| Exchange of Expert Reports: | Sept. 18, 2020 |
| Exchange of Rebuttal Reports: | Oct. 9, 2020 |
| Expert Discovery Cut-Off: | Nov. 13, 2020 |
| Dispositive Motions Cut-Off: | Nov. 23, 2020 |
| Settlement Cut-Off: | Nov. 6, 2020 |
| Settlement Status Conference: | Nov. 23, 2020, at 11:00 A.M. |
| Pretrial Conference and Motions in Limine Hearing: | Jan. 25, 2021, at 11:00 A.M. |
| Jury Trial: | Mar. 9, 2021, at 9:30 A.M. |

Whether or not the current COVID-19 pandemic continues, the parties shall act diligently and cooperatively to complete discovery and other pre-trial preparations. Absent further order by the Court, the Court declines to grant further extensions of time.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

EXHIBIT 50

Case 8:20-cv-00048-JVS-JDE    Document 550-1    Filed 01/10/22    Page 240 of 248    Page ID
#:41107

The New York Times | https://nyti.ms/2X0DtZd

| U.S.A. | World | Health |
|--------|-------|--------|

# Tracking Coronavirus in California: Latest Map and Case Count

Updated Jan. 10, 2022

## New reported cases

| **All time** | Last 90 days |
|--------------|--------------|



7-day
average

60,000 cases

40,000

20,000

Feb. 2020        Jun.        Oct.        Feb. 2021        Jun.        Oct.



**Tests**

Feb. 2020        Jan. 2022

**Hospitalized**

Feb. 2020        Jan. 2022

**Deaths**

Feb. 2020        Jan. 2022

|               | DAILY AVG. ON JAN. 9 | 14-DAY CHANGE | TOTAL REPORTED |
|---------------|----------------------|---------------|----------------|
| Cases         | 74,709               | +405%         | 6,260,766      |
| Tests         | 378,766              | +72%          | —              |
| Hospitalized  | 9,813                | +139%         | —              |
| Deaths        | 78                   | +35%          | 77,385         |

About this data

# Daily new hospital admissions by age in California

This chart shows for each age group the number of people per 100,000 that were newly admitted to a hospital with Covid-19 each day, according to data from the U.S. Department of Health and Human Services. Dips and spikes could be due to inconsistent reporting by hospitals.



| All time | Last 90 days |

UNDER 18    18-29    30-49    50-59    60-69    70+    ALL AGES

About this data

## Hot spots

AVERAGE DAILY CASES PER 100,000 PEOPLE IN PAST WEEK



© Mapbox © OpenStreetMap

| **Hot spots** | Vaccinations | Risk levels | Total cases | Deaths | Per capita |
|---|---|---|---|---|---|

About this data

---

# Vaccinations

|  | AT LEAST ONE DOSE | FULLY VACCINATED |
|---|---|---|
| **All ages** | 84% | 67% |
| **12 and up** | 95% | 76% |
| **65 and up** | 95% | 87% |

See more details ›

About this data

---

# Mask mandates and guidance

As of Jan. 5, 2022

The New York Times is tracking mask policies at the state level, including current federal guidance by county and where leaders are rejecting such guidance or mandates. Read more here ›

- Masks are mandated indoors by state officials.
- Masks are mandated in schools for all students by state officials.

# Reported cases, deaths and other trends by county

This table is sorted by places with the most cases per 100,000 residents in the last seven days. Charts show change in daily averages and are each on their own scale. Select a table header to sort by another metric.

**Recent trends**  |  All time      Search counties

**Cases**  Hospitalizations  Deaths  Vaccinated

|  | CASES DAILY AVG. | PER 100,000 ▼ | 14-DAY CHANGE |
|---|---|---|---|
| California | 74,709 | 189 | +405% |
| Los Angeles › | 32,307 | 322 | +334% |
| Inyo › | 44 | 244 | +894% |
| San Diego › | 6,766 | 203 | +381% |
| San Mateo › | 1,341 | 175 | +597% |
| Orange › | 5,517 | 174 | +827% |
| San Bernardino › | 3,728 | 171 | +475% |
| San Benito › | 106 | 168 | +632% |
| San Francisco › | 1,461 | 166 | +263% |
| Santa Barbara › | 739 | 166 | +545% |
| Santa Clara › | 3,157 | 164 | +720% |

Show all        About this data

# How trends have changed in California

**All time**  |  Last 90 days

**New reported cases by day**

60,000 cases

7–day average

40,000





## Tests by day



## Hospitalizations



## New reported deaths by day





About this data

---

## Outbreak clusters

In the first year of the pandemic, The Times tracked cases in the types of places with some of the worst outbreaks, like nursing homes, food processing plants and correctional facilities.

| **Nursing homes** | Prisons | Colleges | Food processing plants | Other clusters |
| --- | --- | --- | --- | --- |

| CASES CONNECTED TO | LOCATION | CASES |
| --- | --- | --- |
| Windsor Palms Care Center nursing home | Artesia, Calif. | 403 |
| Sunnyside Nursing Center | Torrance, Calif. | 377 |
| Kei-Ai Los Angeles Healthcare Center | Los Angeles, Calif. | 354 |
| Glendora Grand skilled nursing | Glendora, Calif. | 330 |
| Huntington Valley Healthcare Center nursing home | Huntington Beach, Calif. | 303 |
| Upland Rehabilitation and Care Center | Upland, Calif. | 301 |
| Pacific Gardens Nursing and Rehabilitation Center | Fresno, Calif. | 288 |
| Terracina Post Acute nursing home | Redlands, Calif. | 287 |
| Valley House Rehabilitation Center | Santa Clara, Calif. | 280 |
| Anaheim Healthcare Center | Anaheim, Calif. | 275 |

Show all          About this data

---

## About the data

In data for California, The Times primarily relies on reports from the state, as well as health districts or county governments that often report ahead of the state. California typically releases new data each day. Weekend counts may be lower because fewer sources report to the state. The state reports cases and deaths based on a person's permanent or usual residence.

Case 8:20-cv-00048-JVS-JDE    Document 550-1    Filed 01/10/22    Page 246 of 248    Page ID
#:41113

The Times has identified reporting anomalies or methodology changes in the data.

**More about reporting anomalies or changes**

The tallies on this page include probable and confirmed cases and deaths in some counties.

**Confirmed cases and deaths**, which are widely considered to be an undercount of the true toll, are counts of individuals whose coronavirus infections were confirmed by a molecular laboratory test. **Probable cases and deaths** count individuals who meet criteria for other types of testing, symptoms and exposure, as developed by national and local governments.

Governments often revise data or report a single-day large increase in cases or deaths from unspecified days without historical revisions, which can cause an irregular pattern in the daily reported figures. The Times is excluding these anomalies from seven-day averages when possible. For agencies that do not report data every day, variation in the schedule on which cases or deaths are reported, such as around holidays, can also cause an irregular pattern in averages. The Times uses an adjustment method to vary the number of days included in an average to remove these irregularities.

# Tracking the Coronavirus

## United States

### Latest Maps and Data
Cases and deaths for every county

### Your Places
Build your own dashboard to track cases

### Your County's Risk
See guidance for your local area

### Vaccinations
How many have been vaccinated, and who's eligible

### Mask Mandates
See state mask guidance for schools and indoors

### Hospitals Near You
How many I.C.U. beds are occupied

## World

### Latest Maps and Data
Cases and deaths for every country

### Global Vaccinations
How many have been vaccinated, by country

## Health

**Vaccines**
Track their development

**Treatments**
Rated by effectiveness and safety

## Previous Projects

**Nursing Homes**
The hardest-hit states and facilities

**Colleges and Universities**
Cases at more than 1,800 schools

**Deaths Above Normal**
The true toll of the pandemic in the U.S.

**Deaths Above Normal**
The true toll of coronavirus around the world

## Countries

| | | |
|---|---|---|
| Australia | India | Spain |
| Brazil | Italy | U.K. |
| Canada | Japan | United States |
| France | Mexico | |
| Germany | South Africa | |

## States, Territories and Cities

| | | |
|---|---|---|
| Alabama | Idaho | Mississippi |
| Alaska | Illinois | Missouri |
| Arizona | Indiana | Montana |
| Arkansas | Iowa | Nebraska |
| California | Kansas | Nevada |
| Colorado | Kentucky | New Hampshire |
| Connecticut | Louisiana | New Jersey |
| Delaware | Maine | New Mexico |
| Florida | Maryland | New York |
| Georgia | Massachusetts | North Carolina |
| Guam | Michigan | North Dakota |
| Hawaii | Minnesota | Northern Mariana Islands |

| | | |
|---|---|---|
| Ohio | South Dakota | Washington |
| Oklahoma | Tennessee | Washington, D.C. |
| Oregon | Texas | West Virginia |
| Pennsylvania | U.S. Virgin Islands | Wisconsin |
| Puerto Rico | Utah | Wyoming |
| Rhode Island | Vermont | |
| South Carolina | Virginia | |

## Data

Frequently Asked Questions About the Covid Data

Access the Open Source Covid Data

## Credits

By Jordan Allen, Sarah Almukhtar, Aliza Aufrichtig, Anne Barnard, Matthew Bloch, Sarah Cahalan, Weiyi Cai, Julia Calderone, Keith Collins, Matthew Conlen, Lindsey Cook, Gabriel Gianordoli, Amy Harmon, Rich Harris, Adeel Hassan, Jon Huang, Danya Issawi, Danielle Ivory, K.K. Rebecca Lai, Alex Lemonides, Eleanor Lutz, Allison McCann, Richard A. Oppel Jr., Jugal K. Patel, Alison Saldanha, Kirk Semple, Shelly Seroussi, Julie Walton Shaver, Amy Schoenfeld Walker, Anjali Singhvi, Charlie Smart, Mitch Smith, Albert Sun, Rumsey Taylor, Lisa Waananen Jones, Derek Watkins, Timothy Williams, Jin Wu and Karen Yourish.  ·  Reporting was contributed by Jeff Arnold, Ian Austen, Mike Baker, Brillian Bao, Ellen Barry, Shashank Bengali, Samone Blair, Nicholas Bogel-Burroughs, Aurelien Breeden, Elisha Brown, Emma Bubola, Maddie Burakoff, Alyssa Burr, Christopher Calabrese, Julia Carmel, Zak Cassel, Robert Chiarito, Izzy Colón, Matt Craig, Yves De Jesus, Brendon Derr, Brandon Dupré, Melissa Eddy, John Eligon, Timmy Facciola, Bianca Fortis, Jake Frankenfield, Matt Furber, Robert Gebeloff, Thomas Gibbons-Neff, Matthew Goldstein, Grace Gorenflo, Rebecca Griesbach, Benjamin Guggenheim, Barbara Harvey, Lauryn Higgins, Josh Holder, Jake Holland, Anna Joyce, John Keefe, Ann Hinga Klein, Jacob LaGesse, Alex Lim, Alex Matthews, Patricia Mazzei, Jesse McKinley, Miles McKinley, K.B. Mensah, Sarah Mervosh, Jacob Meschke, Lauren Messman, Andrea Michelson, Jaylynn Moffat-Mowatt, Steven Moity, Paul Moon, Derek M. Norman, Anahad O'Connor, Ashlyn O'Hara, Azi Paybarah, Elian Peltier, Richard Pérez-Peña, Sean Plambeck, Laney Pope, Elisabetta Povoledo, Cierra S. Queen, Savannah Redl, Scott Reinhard, Chloe Reynolds, Thomas Rivas, Frances Robles, Natasha Rodriguez, Jess Ruderman, Kai Schultz, Alex Schwartz, Emily Schwing, Libby Seline, Rachel Sherman, Sarena Snider, Brandon Thorp, Alex Traub, Maura Turcotte, Tracey Tully, Jeremy White, Kristine White, Bonnie G. Wong, Tiffany Wong, Sameer Yasir and John Yoon.  ·  Data acquisition and additional work contributed by Will Houp, Andrew Chavez, Michael Strickland, Tiff Fehr, Miles Watkins, Josh Williams, Nina Pavlich, Carmen Cincotti, Ben Smithgall, Andrew Fischer, Rachel Shorey, Blacki Migliozzi, Alastair Coote, Jaymin Patel, John-Michael Murphy, Isaac White, Steven Speicher, Hugh Mandeville, Robin Berjon, Thu Trinh, Carolyn Price, James G. Robinson, Phil Wells, Yanxing Yang, Michael Beswetherick, Michael Robles, Nikhil Baradwaj, Ariana Giorgi, Bella Virgilio, Dylan Momplaisir, Avery Dews, Bea Malsky, Ilana Marcus and Jason Kao.

Additional contributions to Covid-19 risk assessments and guidance by Eleanor Peters Bergquist, Aaron Bochner, Shama Cash-Goldwasser, Sydney Jones and Sheri Kardooni of Resolve to Save Lives.