# EXHIBIT U

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

December 17, 2021

VIA E-MAIL (ADAM.POWELL@KNOBBE.COM)

Adam Powell
Knobbe Martens
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130

Re:     Masimo Corp. et al. v. Apple (C.D. Cal.)

Dear Adam:

I write to memorialize the parties' meet and confer on December 13, 2021 regarding your letter dated December 7, 2021 as well as your email regarding Plaintiffs' RFPs 257-258 on December 6, 2021, and in response to your letter dated December 15, 2021.

## Plaintiffs' RFPs 257-258
(Communications with True Wearables)

During our meet and confer, and in response to Apple's assertion of privilege, you confirmed that Plaintiffs would like the information regarding the common interest agreement between Apple and True Wearables that we offered to provide in our letter dated August 20, 2021 (specifically, "the parties to any common interest agreement, the subject matter of any such agreement, and the date any such agreement was entered").  Consistent with our original offer, Apple confirms that Apple, True Wearables, and Marcelo Lamego formalized a common interest agreement in writing with an effective date of March 2, 2021 (although the parties agreed that a common interest existed between them before the agreement was formalized in writing).  The parties agreed that the common interest arose from the common interest in defeating claims asserted by Plaintiffs.  Both *Masimo et al. v. Apple* and *Masimo et al. v. True Wearables et al.* involve the same Plaintiffs and overlapping factual and legal issues, including allegations regarding use of Plaintiffs' alleged trade secrets that were provided by Dr. Lamego.  Thus, communications between counsel for Apple and True Wearables are privileged such that Apple will not produce them.

You also requested a privilege log detailing all communications that fall within the scope of Plaintiffs' RFPs.  While we are still considering Plaintiffs' request and will let you know if we are willing to provide such a log, before we respond, please confirm that Plaintiffs also requested such a log in the *True Wearables* litigation and provide Apple with a copy of any log that was provided.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

Adam Powell
December 17, 2021
Page 2

### Plaintiffs' RFP 228
("All computers, Computer Media, networks, or databases that were used or acquired by any Former Employee while they worked for Masimo or Cercacor.")

We confirmed during our meet and confer that Apple has performed a reasonable search pursuant to this RFP and has not located any "computers, Computer Media, networks, or databases that were used or acquired by any Former Employee while they worked for Masimo or Cercacor."

### Plaintiffs' RFPs 365-366
("use effectiveness, capabilities, and functionality of the pulse rate and pulse oximetry features of the Apple Watch Products")

We confirmed during our meet and confer that, despite Plaintiffs' previous articulation of what it seeks via these RFPs—and Apple's confirmation that it would provide such documents, to the extent they exist—Apple is willing to agree to provide non-privileged documents responsive to Plaintiffs' latest articulation of these RFPs, set forth below, to the extent such documents exist and can be located via a reasonable search:

> RFP No. 365 (narrowed by Plaintiffs): Documents sufficient to show the use, effectiveness, capabilities, and functionality, of the pulse rate and pulse oximetry features of the Apple Watch Products <u>with respect to accuracy and performance in general or for specific user or environmental conditions</u>.

> RFP No. 365 (narrowed by Plaintiffs): Communications with Lamego regarding the use, effectiveness, capabilities, and functionality, of the pulse rate and pulse oximetry features of the Apple Watch Products <u>with respect to accuracy and performance in general or for specific user or environmental conditions</u>.

### Plaintiffs' RFP 401
("Documents regarding Apple's understanding of any differences, similarities, or comparisons between the consumer market and the health care market for Apple Watch Products.")

We explained during our meet and confer that Apple had already agreed to produce documents responsive to other RFPs (e.g., RFPs 102 and 103) that fully encompass the information sought by RFP 401. Apple therefore has already agreed that it will produce non-privileged documents responsive to these RFPs, to the extent such documents exist and can be located following a reasonable and diligent search.

**GIBSON DUNN**

Adam Powell
December 17, 2021
Page 3

**Plaintiffs' RFP 445**
("Documents regarding Apple's Kona, Mars, P1 Stealth, ProtoN-34, ProtoN, Proto2, Proto2B, Platinum, Lisa, Citrine, Jasper, Scandium, Emerald, Ruby, Amethyst or Opal prototypes or projects.")

We explained during our meet and confer that Apple was willing to provide—and has already provided—documents regarding some of the codenames cited in Plaintiffs' RFP 445 (specifically, ProtoN, Proto2, Proto2B, ProtoN-34, Platinum, Citrine, and Scandium), and that it does not believe the other codenames recited in RFP 445 are relevant to any of the allegations in this case. You agreed to get back to us with Plaintiffs' position regarding the alleged relevance of each of the additional codenames recited in RFP 445 (specifically, Kona, Mars, Lisa, Jasper, Emerald, Ruby, Amethyst, Opal).

With respect to the Kona, Mars, Emerald, Ruby, P1-stealth, Amethyst, Opal, and Jasper codenames, your letter dated December 15, 2021 alleges only that these codenames are relevant because they "refer to Apple pulse rate chip prototypes," citing only a single document (APL-MAS_00078066). As an initial matter, the '066 document you cite is a 75 page presentation entitled "Platinum chipset development." As you are likely aware, the "Platinum chipset" performs many functions besides those that are subject of the allegations in this case. In any event, Apple is not withholding documents related to these codenames, and any documents that refer or relate to these codenames that were collected as part of our efforts to collect documents related to the development of Apple's pulse rate algorithm in response to Plaintiffs' multitude of prior RFPs were produced. To the extent Plaintiffs seek additional documents related to these codenames beyond those that have already been produced, please identify the types of documents you seek and we would be more than willing to discuss.

With respect to the Lisa codename, your December 15, 2021 letter alleges that it is relevant because it is "a module of the Apple Watch that can cause crosstalk with the Platinum Optical chipset." As we explained during the meet and confer, "Lisa" refers to the crown of the Apple Watch, which is wholly irrelevant to the allegations in this litigation. To the extent the module causes optical crosstalk with the sensor modules that are relevant to the allegations in this litigation, any documents related to such crosstalk will have been produced pursuant to Plaintiffs' other RFPs (which is why the sole document cited in your letter—APL-MAS_00068501) was produced. Your general statement that it "can cause crosstalk" is insufficient to justify going back to Apple's custodians to collect documents regarding the Apple Watch crown; such additional searching is not proportional to the needs of the case.

**GIBSON DUNN**

Adam Powell
December 17, 2021
Page 4

### Plaintiffs' RFP 554
("Communications regarding the collection and sharing of clinical data, between any hospital or healthcare provider and Michael O'Reilly or Marcelo Lamego in the first twelve months that Mr. O'Reilly or Mr. Lamego worked at Apple.")

As an initial matter, we explained that we do not understand the relevance of any communications Lamego may have had with "any hospital or healthcare provider" during his time at Apple. Indeed, Plaintiffs' letter dated December 7, 2021 argues that the communications requested by this RFP are relevant to Plaintiffs "hospital interaction trade secrets," and Plaintiffs' interrogatory responses indicate that only Mr. O'Reilly and Mr. Kiani—not Mr. Lamego—had access to those secrets.

In any event, and as explained, this RFP seeks "communications" and Apple has already produced email communications for both Mr. O'Reilly and Mr. Lamego pursuant to the parties' ESI stipulation. Apple also already agreed to provide any non-email communications it can locate after a reasonable search, to the extent any such communications exist. In response, you stated that in order to respond to RFPs requesting "communications", Plaintiffs expect Apple to go back to each custodian, interview them, and search custodians' emails using search terms other than those Plaintiffs provided as part of the parties' extensive ESI discussions. We reject this request as overly burdensome and contrary to the parties' ESI Stipulation. Indeed, the entire point of having an ESI stipulation and an agreed process for searching emails is to avoid this exact situation—continued requests for additional searching.

### Plaintiffs' RFP 558
("Documents regarding the "Rover" project or product that also relate to Masimo, Cercacor, Michael O'Reilly, Marcelo Lamego, or products that include pulse rate or pulse oximetry features.")

As we indicated during the meet and confer, Apple is willing to provide (and has already provided) "documents regarding the 'Rover' project or product that also relate to Masimo, Cercacor, Michael O'Reilly, [or] Marcelo Lamego." Apple also explained that it cannot agree to provide documents regarding third-party "products that include pulse rate or pulse oximetry features" because, in addition to not being relevant to the allegations in this litigation, such documents could implicate confidential information from third parties. However, Apple also noted that the documents regarding Rover it has already produced provide information regarding companies/products that were part of the "Rover" project, and that such information should be sufficient to provide Plaintiffs with the information they seek pursuant to this RFP. You agreed to review Apple's document production and let us know if you disagree.

Adam Powell
December 17, 2021
Page 5

### Plaintiffs' RFPs 559-563
(functionality pre-dating Lamego and O'Reilly's employment by Apple)

During the meet and confer, we indicated that Apple would agree to provide documents in response to RFP 563, to the extent such documents exist and can be located after a reasonable search.

With respect to the other RFPs in this set, we explained that Apple maintains its objections that these RFPs are overbroad at least because they are not limited by product or time. Indeed, the RFPs as written would require Apple to search its files going back decades to the beginning of the company. Any efforts by Apple to develop techniques prior to Lamego and O'Reilly joining Apple have limited relevance if they were not implemented in a product and/or allegedly used by Lamego and/or O'Reilly during their work at Apple. As a result, such a search is not proportional to the needs of the case, particularly given that work on the Apple Watch did not begin until around 2012 and given that Apple has already agreed (at least by agreeing to produce documents in response to RFP 563) to provide documents regarding any changes Messrs. Lamego and O'Reilly proposed to the Apple Watch. Given that Plaintiffs' allegations in this case are directed to the physiological monitoring by the Apple Watch, Apple thus proposes that RFPs 559-562 be limited to documents related to the development of the Apple Watch, which would include any technology that was considered for the Apple Watch from the outset of its development. Your proposal that Apple search across all product groups within Apple going back to 2010 is not proportional to the needs of the case. If you are unwilling to agree, please explain how discovery of development efforts by Apple that were never incorporated into the product that is alleged to incorporate Plaintiffs' trade secrets and were not touched by Lamego and/or O'Reilly are relevant and proportional to the needs of this case.

### RFP 568
("An inspection of the reflection-based wrist pulse oximeter that Marcelo Lamego made and gave to Michael O'Reilly.")

We confirmed during the meet and confer that Apple has conducted a reasonable search and has been unable to locate the "reflection-based wrist pulse oximeter that Marcelo Lamego made and gave to Michael O'Reilly." We did note, however, that Apple has produced the video file Lamego created demonstrating the oximeter referenced in this RFP.

### RFPs 575-583
(technical documentation)

Apple is willing to provide the requested documents for RFPs 576, 577, 579, 580, 582, and 583, to the extent they exist and can be located after a reasonable search.

**GIBSON DUNN**

Adam Powell
December 17, 2021
Page 6

With respect to RFPs 575, 578, and 581, these RFPs broadly seek "all" technical documentation ("engineering project files," "new product development documentation," and "project files") that "refer or relate to light based physiological monitoring." As an initial matter, the Court has already held that RFPs seeking "all" documents are overbroad. As we explained during the meet and confer, these RFPs would require Apple to comb all of its product groups for any such documentation that may exist, regardless of whether those products have anything to do with the allegations in this case. As we also explained, Apple is willing to consider a narrowed scope for these RFPs—such as limiting to documents related to the Apple Watch—but cannot agree to the breadth of these RFPs as written. Such breadth is not proportional to the needs of this case. Please let us know if you have a narrowing proposal you would like us to consider.

### RFPs 584 and 586-588
(documents regarding studies)

Apple is willing to provide the requested documents for RFPs 587 and 588, to the extent they exist and can be located after a reasonable search.

With respect to RFPs 584 and 586, Apple has already responded to these RFPs and thus does not believe any further response is warranted. As explained during the meet and confer, and as acknowledged in your letter dated December 15, 2021, Apple expressly indicated in its responses that it does not consider the use of a "reference device" to be an "analysis, evaluation, or test" of that device.

### RFPs 589-592
(availability of Apple Watch pulse oximetry feature)

As we indicated during the meet and confer, Apple does not understand these RFPs because they incorrectly assume that the Apple Watch pulse oximetry feature is not available in all of the regions where the Apple Watch is sold. As we further explained, we have performed a reasonable investigation in response to Plaintiffs' RFPs and it is our understanding that the pulse oximetry feature is available in all regions where the Apple Watch is sold. Thus, we are unaware of any documents responsive to these RFPs.

GIBSON DUNN

Adam Powell
December 17, 2021
Page 7

Sincerely,

Brian K. Andrea