# EXHIBIT W

# GIBSON DUNN

**HEARING REQUESTED**

October 26, 2021

Kenneth G. Parker
Direct: +1 949.451.4336
Fax: +1 949.475.4726
KParker@gibsondunn.com

Hon. Andrew J. Guilford (Ret.)
Judicate West
1851 East First Street, Ste 1600
Santa Ana, CA

Re:  *Masimo Corp. et al. v. Apple Inc.*, Case No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal.)

Dear Judge Guilford:

Apple respectfully opposes Masimo and Cercacor's (jointly "Masimo") motion to compel Apple to provide a new 30(b)(6) witness on the narrow issue of document retention/destruction for two witnesses, and to replenish Masimo's bank of deposition time. Apple provided a well-prepared witness who testified on these topics for almost seven hours, explaining consistently that these documents have been deleted and cannot be recovered. Masimo's complaints that the witness was unable to answer some specific questions does not change that Apple provided a corporate representative who gave detailed testimony on the noticed topics.

**I.   Background**

This dispute stems from the fact that Apple has been unable to recover a number of files from two former employees who left Apple more than five years before Masimo brought his action, including: (1) Dr. Lamego, who worked at Apple for six months in 2014, and (2) Mr. Nazzarro, who worked at Apple for less than a year and half and also left in 2014. Masimo rejected Apple's explanations that the files were not recoverable, and ultimately moved to compel information to determine for itself whether the files could be recovered. Dkt. 400, 403. Judge Early denied Masimo's motion, Dkt. 452, explaining that the declaration Apple submitted in opposition to the motion by Discovery Manager Robin Goldberg was "very helpful" and "as clearly as could be, resolved the universe about (quote/unquote) 'email data.'" Pls.' Ex. 9, 16:9-17:7; *see also* Def.'s Ex. 1 (declaration). Judge Early nonetheless granted Masimo leave to take a "30(b)(6) deposition on ***narrow topics relating to document retention (slash) destruction for these two witnesses***." Pls.' Ex. 9, 29:5-10 (emphasis added). Throughout his ruling, Judge Early emphasized that this deposition would be "very narrow." *Id.* 28:12 ("[W]hat I'm authorizing is very narrow."); *id.* 27:23-28:1 ("This is a narrow issue and it's to get to the bottom of these emails or other documents and what was done. It's not to do a full bore investigation of the document production of Apple."). Masimo therefore served a 30(b)(6) notice reciting seven topics on this narrow issue, and in response Apple provided objections and the parties met-and-conferred. *See* Pls.' Exs. 10-11; Def.'s Ex. 2 (July 28 email).

Apple designated Ms. Goldberg as its corporate representative. She testified that in addition to working in a job that gives her firsthand knowledge of many of the topics, she prepared by (1) meeting with counsel, (2) reviewing the deposition notice and topics, (3) reviewing her declaration, (4) reviewing other documents, and (5) speaking to no fewer than eight people across at least five departments (including all the individuals whom at any time supervised either Dr. Lamego or Mr. Nazzaro) about the topics at issue. Pls.' Ex. 12, 12:6-21:6. Despite what was supposed to be a "very narrow" deposition and Ms. Goldberg's preparation, Masimo spent almost ***seven hours*** on the record.

GIBSON DUNN

Hon. Andrew J. Guilford (Ret.)
October 26, 2021
Page 2

Apple also did not try to block Masimo from straying beyond the seven noticed topics, which Masimo did extensively, with over 200 of the approximately 950 questions outside the scope of the deposition.

**II.     Apple Provided a Well-Prepared Witness on Masimo's 30(b)(6) Notice**

Consistent with its obligations, Apple made "a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought" and "prepare[d] the designee *to the extent matters are reasonably available*." *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 219857, at *1 (N.D. Cal. Jan. 29, 2007) (emphasis added); *see also Pongsai v. Am. Express Co.*, 2020 WL 5356711, at *2 (C.D. Cal. June 29, 2020) (witness must be "capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, *provided that the information is reasonably available to the corporation*.") (emphasis added). Ms. Goldberg had personal knowledge regarding the topics, and took significant efforts to gather additional information. Pls.' Ex. 12, 12:6-21:6. That Ms. Goldberg could not answer every question posed during what was supposed to be a "narrow" deposition does not change that she testified competently on these topics – "the fact that [a]corporate designee cannot answer every question posed during the deposition does not mean that the corporation failed to satisfy its Rule 30(b)(6) obligation to prepare the witness." *United States v. J-M Mfg. Co.*, 2017 WL 9511730, at *4 (C.D. Cal. Aug. 7, 2017). Indeed, "it is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." *DarbeeVision, Inc. v. C&A Mktg., Inc.*, 2019 WL 2902697, at *8 (C.D. Cal. Jan. 28, 2019). As to each topic raised by Masimo, Ms. Goldberg provided detailed testimony as follows:

**Topic 3: Facts and Circumstances Surrounding Apple's Handling of Dr. Lamego's and Mr. Nazzaro's Files**

Ms. Goldberg provided clear testimony on Topic 3, directed to "Apple's handling of the relevant files, including any steps taken by Apple that resulted in the files no longer being available many years after Lamego and Nazzaro left Apple." *See* Def.'s Ex. 2 (email outlining scope of topic). Ms. Goldberg testified that she prepared for this topic by speaking with three members of Apple's collaboration platform services team, who are responsible for overseeing the process of removing employee files following their departure (and to the extent not subject to a document retention notice). Pls.' Ex. 12, 12:6-13:15. She further testified that based on these conversations and her own knowledge: (1) the collaboration platform services team removes former employee data from Apple's email server by manually running a script "within four to six weeks" following an initial four week hold period after an employee's departure, *id.* 83:16-88:17; (2) members of the collaboration services team verified that e-mail data from Dr. Lamego and Mr. Nazzaro was deleted from the server that stored email in 2014 (the "IMAP" server), *id.* 232:8-234:20, 249:16-21; (3) Apple no longer has backup snapshots of the IMAP server, *id.* 93:2-95:16; and (4) all backup servers from 2014 have been destroyed and replaced with new architecture. *Id.* 94:16-95:16, 97:19-98:9.

Each of Masimo's arguments that this testimony is insufficient should be rejected. **First**, Masimo argues that Ms. Goldberg was unable to identify the specific files that Apple collected and/or searched for. But none of the topics asks for information about the files that Apple collected, such

Hon. Andrew J. Guilford (Ret.)
October 26, 2021
Page 3

that these questions are outside the scope of the 30(b)(6). *See ChriMar Sys. v. Cisco Sys.*, 312 F.R.D. 560, 563 (N.D. Cal. 2016) ("[I]f the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem."). Nor can Ms. Goldberg be faulted for not knowing whether Apple had searched for or located any specific engineering files, new product development documentation, or project files for these witnesses. *See* Mot. 2. Ms. Goldberg testified that Apple searched for and collected data by looking for custodial and team files, not by document type, and that Apple's search uncovered documents from and/or by Dr. Lamego. Pls.' Ex. 12, 284:5-14, 285:2-21, 286:5-287:1.

***Second***, Masimo complains that Ms. Goldberg could not testify regarding the "'steps' or 'specific tool or process to delete' the removed files," or precisely how the IMAP server and backup server from 2014 was deleted. Mot. 3. Again, nothing in Topic 3 required Ms. Goldberg to know technical details at this level of specificity. While Masimo asserts that the purpose of this deposition was to "understand the technical details of Apple's document storage and removal practices so Masimo can determine if the data is recoverable," Mot. 3, any additional "technical details" are unnecessary where Ms. Goldberg testified that the custodial data was ***deleted*** following standard procedure and the servers were ***replaced***. *See* Pls.' Ex. 12, 90:17-91:14, 232:8-233:11. She further testified as to the steps that Apple took to ascertain whether any data from Dr. Lamego and Mr. Nazzaro may still be accessible or recoverable (Topic 5, addressed below). In other words, Apple took a reasonable inquiry to determine if these files may exist in a location where they could be recovered, and determined that they do not because the files are deleted and servers destroyed. This testimony should end the inquiry.

**Topic 5: Efforts to Search For, Locate, and Recover Files**

Ms. Goldberg thoroughly—and repeatedly—described the reasonable steps Apple took to ascertain whether any data from Dr. Lamego and Mr. Nazzaro may still be accessible or recoverable. She testified that Apple "looked in our eDiscovery platform to see if there were prior collections from Mr. Lamego and Mr. Nazzaro." Pls.' Ex. 12, 236:9-17. After determining no prior collections or active litigation holds existed at the time of their departures, Apple "started looking at less obvious or less typical or standard places, including talking to the co-inventors of the patents and talking to their colleagues, supervisors." *Id.* 236:17-237:2; *see also id.* 220:15-227:5 (counsel repeatedly asking for these steps, and Ms. Goldberg providing answer). Ms. Goldberg further explained that Apple interviewed numerous employees who previously worked with Dr. Lamego and/or Mr. Nazzaro on projects related to the Apple Watch, searched any locations identified from these interviews including project servers, and ultimately located and collected data. *Id.* 253:15-254:8, 257:5-259:19, 262:19-264:21.

Beyond Masimo's amorphous assertions that this testimony was somehow "evasive" or "insufficient" (and the above shows that it was not), Masimo's specific complaints are unfounded. For example, Masimo argues that Ms. Goldberg was unaware whether Apple searched prior litigation collections for Mr. Nazzaro or Dr. Lamego. Mot. at 3. Not true. Ms. Goldberg testified that Apple determined that their custodial data had not been collected in any prior litigation. Masimo then asked

**GIBSON DUNN**

Hon. Andrew J. Guilford (Ret.)
October 26, 2021
Page 4

the broad question whether Apple had searched **all** its litigation collections for any email involving these individuals regardless of the custodian.  Pls.' Ex. 12, 228:16-229:14.  Ms. Goldberg did not know the answer to this expansive question, and Masimo does not assert that Apple has any obligation to conduct such a scorched-earth search.  Masimo also argues that Ms. Goldberg did not know where to search for these witnesses' data.  Again, not true. Ms. Goldberg outlined the steps taken to identify email data in places other than the IMAP server.  *Id.* 208:3-210:16, 220:5-222:14.  Ms. Goldberg further explained that "to the extent the ESI custodians that we have interviewed have identified any servers or locations within the sensing group…we would have looked at that location and collected any data that could be relevant for this matter."  *Id.* 257:11-16; *see also* 253:17-254:8, 257:5-259:19, 262:19-264:21. Although Masimo complains that Ms. Goldberg did not know the precise groups in which Dr. Lamego worked, Mot. 3, such information was unnecessary to this topic or to explain all the steps Apple took to locate documents.

Finally, Masimo complains that during the parties' meet-and-confer, Apple improperly claimed privilege over its efforts to find data. But disagreement about privilege is not grounds for calling a witness "unprepared," and Masimo did not identify any questions seeking non-privileged information and within the scope of this topic that Ms. Goldberg did not answer based on privilege.  *See* Mot. 4.  In any event, the cases Masimo cites finding that things like "search terms" and "identity of custodians" were not privileged does not undermine Apple's claim that the substance of interviews conducted by the Apple legal team for purposes of e-discovery are privileged.  *Compare Via Vadis, LLC v. Blizzard Ent., Inc.*, 2021 WL 3081310, at *6 (W.D. Tex. July 21, 2021) (finding the custodians and network locations searched by a party was not privileged); *with AMCO Ins. Co. v. Madera Quality Nut LLC*, 2006 WL 931437, at *19 (E.D. Cal. Apr. 11, 2006) ("Plaintiff may not by deposition reach the substance of privileged communications made between employees and agents of Defendant MQN and counsel in the course of the investigation, or reach protected work product materials; Plaintiff may question witnesses regarding the underlying facts known by the witnesses.").

**Topic 6: Policies, Procedures, Practices, and Time Frame for Removing Custodial Files**

Ms. Goldberg testified thoroughly on Topic 6 regarding Apple's policies, procedures, and practices for removing an employee's custodial files.  As described in detail above as to Topic 3, Ms. Goldberg described those procedures in explaining the circumstances regarding the removal of Dr. Lamego's and Mr. Nazzaro's files.  The purported deficiencies identified by Masimo rely on misstatements of both Ms. Goldberg's testimony and the record.  Masimo asserts that Ms. Goldberg was unable to provide any information regarding a records policy document that purportedly describes Apple's procedures for removing an employee's custodial files. Mot. 4. But Ms. Goldberg testified that this document ***does not*** describe Apple's policies, procedures, and practices for removing an employee's ***custodial*** files.  Pls.' Ex. 12, 275:12-17.  Where Topic 5 was limited to policies for removing ***custodial*** files, these questions were outside the scope of the Topic.  Masimo also complains that Ms. Goldberg could not explain details of the records information management "RIM" policy, but it was not in effect at the time of Dr. Lamego's and Mr. Nazzaro's employment and is therefore outside the scope of this Topic.  *Id.* 291:17-292:11 (explaining that RIM policy was adopted after 2014); *see also* Ex. 11 (objecting to Topic 6 to the extent it "goes beyond the directive

Hon. Andrew J. Guilford (Ret.)
October 26, 2021
Page 5

set forth by Judge Early" limiting the topics to document retention/destruction for Dr. Lamego and Mr. Nazzaro). Finally, Masimo argues that "Apple did not even attempt to defend Goldberg's testimony on this topic during the meet and confer process," Mot. 4, ignoring that during the meet-and-confer process Masimo never identified any specific deficiencies with Ms. Goldberg's testimony on this Topic, despite Apple's requests for such support. *See* Pls.' Ex. 13 (October 8 email).

**Topic 7: Software Capable of Searching Employees' Emails, iMessages, and Other Electronic Communication Streams**

Ms. Goldberg provided extensive testimony on Apple's processes for collecting and searching employee data, including the software used to do so. *See, e.g.*, Pls.' Ex. 12, 122:2-134:10 (explaining the capabilities of Apple's "proprietary eDiscovery platform that enables us to search e-mail…using keyword search, Boolean searches, data restriction," to "search the metadata," or to "search by inbox, sent box, the specific folder, or any one of those combinations."); *id.* 261:1-7 (identifying the software used to search Apple's eDiscovery platform). She also repeatedly explained that her job responsibilities and her meetings with other Apple employees in preparation for the deposition equipped her to speak on Apple's behalf as to Apple's capabilities to search employees' emails, iMessages, and other communication streams. *E.g.*, *id.* 120:5-20.

Masimo asserts that this testimony was deficient because while she described specific search capabilities for litigation purposes, she was "unaware" if Apple's IT department had search capabilities for non-litigation purposes. Mot. 4. To the extent Masimo seeks such broad testimony, it goes directly against Judge Early's order that this deposition should *not* be a "full bore investigation" of Apple's document productions (let alone Apple's capabilities *outside* of the discovery context). In any event, and separate from this vague question regarding "Apple's IT department," Ms. Goldberg testified that there is "Apple software that an employee could use to search his own e-mail." Pls.' Ex. 12, 115:18-116:7. She further testified that, in her role, her "responsibility is to understand our capabilities to collect and to search these data sources," and she is "not aware of any capability that we have to search these sources prior to collection." *Id.* 118:22-119:4; *see also id.* 146:16-148:6. Providing another witness to testify on every way that an Apple employee may search email will not change that Dr. Lamego's and Mr. Nazzaro's files have been deleted in the ordinary course and cannot be recovered.

**III.   CONCLUSION**

Consistent with its legal obligations, Apple "identif[ied] and prepare[d] its witness[] 'so that they may give complete, knowledgeable and binding answers on behalf of the corporation.'" *Pongsai*, 2020 WL 5356711, at *2. Accordingly, no further testimony should be compelled, and all time spent on the record with Ms. Goldberg should count against Plaintiffs' allotted time.

Sincerely,

/s/ Ken Parker
Kenneth G. Parker