Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO MODIFY THE PROTECTIVE ORDER (DKT. 67)**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date:  February 17, 2022<br>Time:  10:00 a.m.<br>Ctrm:  6A<br><br>Discovery Cut-Off:  3/7/2022<br>Pre-Trial Conference:  11/21/2022<br>Trial:  12/6/2022 |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

      A.    Masimo's Allegations In This Case .................................................. 2

      B.    Masimo Expended Significant Resources Obtaining Discovery
            From Apple ........................................................................................ 4

      C.    The ITC Investigation ....................................................................... 5

      D.    Procedural History Of This Dispute .................................................. 5

III.  ARGUMENT .................................................................................................. 6

      A.    Legal Standards .................................................................................. 6

      B.    Masimo Identified Six Document Categories Relevant To The
            ITC Investigation ............................................................................... 8

            1.    Technical Documents About Portions Of The Apple
                  Watch ...................................................................................... 8

            2.    Testing Documents About Portions Of The Apple Watch ........... 10

            3.    Documents About The Accuracy Of The Apple Watch ................ 11

            4.    FDA Communications About Portions Of The Apple
                  Watch ...................................................................................... 12

            5.    Internal Communications About Masimo And Its
                  Technology .............................................................................. 13

            6.    Locations and Results of Engineering Validation Testing
                  for Apple's Watch Products ..................................................... 15

      C.    The Discovery At Issue Is Also Relevant Under *Foltz* ............................ 16

      D.    Apple Cannot Show Substantial Prejudice ............................................. 17

      E.    Apple's Proposal For A Document-By-Document
            Identification Is Unworkable ............................................................ 19

      F.    In The Alternative, The Court Should Allow Masimo To Show
            the ALJ Documents From This Case ................................................. 20

      G.    The Parties Agree The Court May Resolve This Dispute ........................ 21

IV.   CONCLUSION .............................................................................................. 21

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*In re Agent Orange Prod. Liab. Litig.*,

5

    821 F.2d 139 (2d Cir. 1987) ................................................................ 18

6

*Beckman Indus., Inc. v. Int'l Ins. Co.*,

7

    966 F.2d 470 (9th Cir. 1992) ......................................................... 17, 18

8

*Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.*,

9

    712 F.3d 1349 (9th Cir. 2013) ............................................................. 7

10

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*,

    625 F.3d 724 (Fed. Cir. 2010) ........................................................... 14

11

*In re Certain Light-Based Physiological Measurement Devices*

12

*and Components Thereof*,

13

    ITC Inv. No. 337-TA-1276 ........................................................*passim*

14

*Cummins-Allison Corp. v. SBM Co.*,

15

    2013 WL 12250448 (D. Haw. Nov. 8, 2013) ............................. 7, 18, 19

16

*Foltz v. State Farm Mut. Auto. Ins. Co.*,

17

    331 F.3d 1122 (9th Cir. 2003) ....................................................*passim*

18

*Halo Elecs., Inc. v. XFMRS, Inc.*,

    2012 WL 2238022 (N.D. Cal. June 15, 2012) .................................... 18

19

*Iron Grip Barbell Co. v. USA Sports*,

20

    392 F.3d 1317 (Fed. Cir. 2004) .................................................. 11, 13

21

*Jepson, Inc. v. Makita Elec. Works, Ltd.*,

22

    30 F.3d 854 (7th Cir. 1994) .......................................................... 8, 17

23

*KSR Int'l Co. v. Teleflex Inc.*,

24

    550 U.S. 398, 399 (2007) ................................................................. 11

25

*In re Roman Catholic Archbishop of Portland in Oregon*,

26

    661 F.3d 417 (9th Cir. 2011) ............................................................ 17

27

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,

    2008 WL 2813081 (D. Neb. July 18, 2008) ........................................ 7

28

# TABLE OF CONTENTS
## (*cont'd*)

**Page No.**

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
   699 F.3d 1340, 1351 (Fed. Cir. 2012) ....................................................... 13

*Universal Entm't Corp. v. Aruze Gaming Am., Inc.*,
   2020 WL 2308226 (D. Nev. May 8, 2020) ................................. 7, 18, 19, 20

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing L.P.*,
   214 F.R.D. 583 (C.D. Cal. 2003) .......................................................... 7, 18

# OTHER AUTHORITIES

19 U.S.C. § 1337 ......................................................................................... 12, 15

19 CFR § 210.27 ................................................................................................ 17

Fed. R. Civ. P. 26 .............................................................................................. 17

Local Rule 7 ........................................................................................................ 21

Local Rule 37 ...................................................................................................... 21

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (jointly, "Masimo") respectfully move to modify the Protective Order (Dkt. 67).

# I. __INTRODUCTION__

Masimo seeks to modify the Protective Order to allow the parties to use certain discovery from this case in an ITC investigation between the same parties, *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 (the "ITC Investigation"). The ITC Investigation involves the same parties (Masimo, Cercacor, and Apple), common products (the Apple Watch), and overlapping technology (light-based physiological monitoring). Thus, significant discovery in this case will also need to be produced in the ITC Investigation.

Masimo previously moved to modify the Protective Order to permit all discovery in this case to be used in the ITC Investigation. The Court denied that motion and instructed Masimo to identify specific categories of documents. Thus, this Motion identifies six such categories: (1) technical documents about relevant features of the Apple Watch, (2) testing documents about relevant features of the Apple Watch, (3) documents regarding the accuracy of relevant features of the Apple Watch, (4) FDA communications about relevant features of the Apple Watch, (5) internal Apple communications about Masimo and its technology, and (6) documents about the locations Apple conducts its engineering validation testing. As with the prior Motion, Masimo does not ask this Court to decide whether any document from this case is ultimately admissible in the ITC. That decision is for the ITC. Rather, Masimo merely seeks to make specific categories of documents from this case available in the ITC Investigation as if they had been produced there.

Apple agrees that many of the identified categories include documents that are relevant in the ITC Investigation. However, Apple refuses to agree to ***any*** category and instead insists that Masimo identify documents by bates number. But this Court rejected that position and explained that Masimo may properly designate documents by category. Apple's approach also makes no sense because Apple only recently produced 1.4 million

-1-

1   pages of documents, the vast majority of which Masimo still needs to review.  Masimo

2   cannot reasonably be expected to identify every single document now that might be

3   relevant in the ITC Investigation.  Masimo thus identifies categories and exemplary

4   documents within each category.  The Court should grant Masimo's Motion.

## II.  STATEMENT OF FACTS

**A.   Masimo's Allegations In This Case**

Masimo revolutionized non-invasive patient monitoring, including pulse rate, arterial oxygen saturation, and more.  Dkt. 296-1 ¶¶ 9, 15.  Apple is the world's largest public company and often captures new markets by identifying the technology leader and adopting their leading technology.  That is what Masimo alleges happened here.

In 2013, Apple identified Masimo's patient monitoring technology and reached out to Masimo to discuss a potential collaboration.  *Id.* ¶ 19.

---

[1] Unless noted otherwise, exhibits are attached to the Declaration of Adam B. Powell submitted herewith and all emphasis is added.

-2-

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██ But Apple did not stop. Instead, Apple hired Cercacor's Chief Technical Officer, Marcelo Lamego. Unbeknownst to Masimo at the time, Apple first reached out to Lamego in early 2013. In October 2013—a few months after Perica and Cook discussed Kiani and Masimo—Lamego confidentially wrote to Cook at 1:00 am. Ex. 6 at -520. Lamego told Cook he believed Apple could solve two aspects of patient monitoring on its own, but needed him to solve the "patient equation." *Id.* at -521. Lamego explained that was the "deceptive part" because it is "easy to develop" medical products for most users, but "extremely more complex" to do so for all users. *Id.* at -520. In exchange for a "senior technical executive position," Lamego claimed he could solve the deceptive patient equation for Apple, referencing his "10 years" at Masimo and Cercacor. *Id.* at -520, -521. By 10:30 a.m. that same morning, Apple's Director of Recruiting responded: "I saw your note to Tim Cook" and immediately referred Lamego to Apple's executive recruiting team. *Id.* at -522. ████████████████████████████

██████████████████████████████████████████

████████████████████████████████████ Apple hired Lamego anyway.

Masimo alleges Apple gained access to Masimo's technology through former employees. Dkt. 296-1 ¶¶ 228-232. Apple filed patent applications on Masimo's technology and incorporated Masimo technology into various versions of the Apple Watch. *Id.* ¶¶ 233-257. While Apple's original heart rate measurement feature had performance issues, Apple addressed some problems in the Series 4 and 5 watches by using Masimo's technology. *Id.* ¶¶ 25, 238-239. In 2020, Apple added a pulse oximeter in the Series 6 watch using Masimo's technology. *Id.* ¶¶ 25, 238, 240, 254-255. Masimo filed this action in January 2020, alleging claims for patent infringement, correction of inventorship/ownership of Apple patents, and misappropriation of trade secrets. Dkt. 1.

**B.**     **Masimo Expended Significant Resources Obtaining Discovery From Apple**

As explained in Masimo's first motion to modify the scheduling order (Dkt. 384) and pending second motion to modify the scheduling order (Dkt. 549), discovery has been a long and arduous task.   For example, to obtain Apple's "core technical documents" that Apple was required to produce under the scheduling order, Masimo wrote to Apple eighteen times, met with Apple twice, moved the Court three times, and responded to three Apple motions.   Dkt. 384 at 2-3.   To obtain an order requiring Apple to search a reasonable number of ESI custodians, Masimo wrote to Apple over thirty times, met with Apple numerous times, and briefed three motions.   *Id.* at 3-5.

Masimo also spent months compelling Apple to search a single ESI custodian (Apple CEO Tim Cook).   On June 10, this Court denied Masimo's initial request that Apple search Cook's ESI based on Apple's representation that Cook was "not likely" to have discoverable information.   Ex. 8 at 5:12-19.   However, an email Lamego sent to Cook, filed in the related *True Wearables* case,[2] called that representation into question. *See* Ex. 6 (the "Lamego-Cook Email").   During a hearing in the *True Wearables* case, the Court found: "there is a whiff of Three-card Monte going on here about getting documents and finding documents and doing a shell game about where Plaintiffs are supposed to go and the procedural mechanisms."   Ex. 10 at 30:1-14.   Masimo then moved for reconsideration in this case based, in part, on the Lamego-Cook Email.   Apple initially argued the email was not relevant, but eventually conceded it was relevant after extensive questioning by the Court.   Ex. 11 at 12:5-32:23.   The Court granted Masimo's motion and ordered Apple to produce Cook's ESI.   Dkt. 502.

---

[2] In *True Wearables*, Masimo sued Lamego and True Wearables (the company Lamego founded after leaving Apple).   Apple moved to quash a subpoena Masimo issued on Apple in that case.   Ex. 9.   The joint stipulation discussed the Lamego-Cook Email, which Lamego designated as "confidential" in that case, thereby preventing Masimo from using it in this case.   *See id.* at 26-27.   This Court found the email was not confidential and ordered Apple to file it publicly.   Ex. 10 at 17:14-18.

1    Masimo has engaged in similar efforts on countless other disputes.  In total,
2    Masimo has written to Apple hundreds of times, met with Apple dozens of times, and
3    moved to compel fourteen times.  *See generally* Dkt. 549.  Masimo's efforts have taken
4    tens-of-thousands of attorney hours and cost millions of dollars.  *See id.*

5    **C.    The ITC Investigation**

6        Masimo filed the ITC Investigation in June 2021.  Similar to this case, part of the
7    ITC Investigation involves light-based physiological monitoring technologies, including
8    pulse rate and oxygen saturation.  Ex. 12 ¶¶ 24, 31, 46, 53, 60, 67, 74.  As in this case,
9    Masimo alleges Apple copied Masimo's technology after meeting with Masimo in 2013
10   to discuss a potential collaboration.  *Id.* ¶¶ 32-38.  Masimo also alleges Apple gained
11   access to Masimo's technology through O'Reilly, Lamego, and others.  *Id.*  Masimo
12   alleges the Apple Watch infringes several Masimo patents related to hardware designs
13   and physiological monitoring methods relating to light.  *Id.* ¶¶ 31 & 38.  The ITC
14   instituted a formal investigation in August 2021 (Ex. 13) and issued a protective order
15   with confidentiality obligations similar to the "Attorneys Eyes Only" tier in this case
16   (Ex. 14 ¶ 3).  Trial in the ITC Investigation is set for June 2022.  Ex. 15.

17   **D.    Procedural History Of This Dispute**

18       Masimo previously moved to modify the protective order to allow the parties to
19   use all discovery from this case in the ITC Investigation as if it had been produced there.
20   At the hearing, this Court asked whether it had to adopt an "all-or-nothing" approach to
21   what discovery was usable in the ITC Investigation.  Ex. 16 at 17:16-19, 18:8-20.  Both
22   parties agreed that was not necessary, but Masimo expressed its concern that analyzing
23   the specific documents from this case that are relevant to the ITC Investigation may be
24   a violation of the protective order.  *Id.* at 20:5-21:16.  The Court explained that Masimo
25   could perform such an analysis without violating the Protective Order, and told the
26   parties to meet and confer on specific types or categories of documents.  *Id.* at 19:13-17
27   ("It seems to me you could go in a room and at least say, 'Here's what I'm talking about.'
28   You don't have to go document by document, but 'Here's the types of documents that I

think are relevant that you, Apple, have designated as confidential.'); *Id.* at 25:23-24:1 ("what I am also telling you is you can discuss categories, you can discuss what you're looking at").

Shortly after the hearing, on November 24, Masimo asked Apple to identify the documents it already produced in both cases to facilitate the parties' discussion.  Ex. 17.  Masimo followed up with Apple several times until Apple eventually provided the requested information a month later on December 23.  Ex. 18.  Masimo then promptly wrote to Apple identifying the categories of documents that it believed were relevant to the ITC.  Ex. 19.  Apple refused to allow cross use of any of the requested categories.  Ex. 20.  Instead, Apple demanded that Masimo identify all documents it wished to use by Bates number and then Apple would consider cross-use.  *Id.*  Apple's approach is unworkable for the reasons discussed below.

### III.  <u>ARGUMENT</u>

#### A.  <u>Legal Standards</u>

The Ninth Circuit "***strongly favors*** access to discovery materials to meet the needs of parties engaged in collateral litigation."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (addressing motion filed by third-party intervenors).  "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery."  *Id.* at 1131.  "Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material ***should generally be granted***."  *Id.* at 1132.  Under *Foltz*, courts addressing discovery cross-use weigh two factors.

***First***, the moving party must "demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein."  *Id.*  The Ninth Circuit requires only a threshold showing that at least some documents may be relevant.  *Id.* at 1133-34.  The required showing of relevance is not high.  *See, e.g.*,

*Universal Entm't Corp. v. Aruze Gaming Am., Inc.*, 2020 WL 2308226, at \*4 (D. Nev. May 8, 2020) (finding the discovery is "relevant enough" that "a substantial amount of discovery could be avoided therein by modifying the protective order"); *Verizon California Inc. v. Ronald A. Katz Tech. Licensing L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003) (modifying protective order over plaintiff's relevance objections); *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 2008 WL 2813081, at \*4 (D. Neb. July 18, 2008) (modifying protective order without making findings on relevance).

**Second**, the court "must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Foltz*, 331 F.3d at 1133.  The reliance interest is diminished in cases involving a protective order that, like the order in this case, applies to any document a party decides to designate. *Id.* (explaining such orders are "by nature overinclusive")*; see also Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 712 F.3d 1349, 1351 n.1 (9th Cir. 2013) (citing *Foltz*, 331 F.3d at 1138).  Courts are less likely to find prejudice where the parties in both cases are the same because "no concerns exist regarding unfettered dissemination to unknown third parties." *See Cummins-Allison Corp. v. SBM Co.*, 2013 WL 12250448, at \*2, \*3 (D. Haw. Nov. 8, 2013).

In *Foltz*, the Ninth Circuit quoted with approval the standard expressed by the Seventh and Tenth Circuits that, "where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Foltz*, 331 F.3d at 1132 (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) and *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)).  The Seventh Circuit has also held it was an abuse of discretion to refuse to modify a protective order to allow use of a deposition in a collateral ITC action where refusal "forces [the moving party] and the ITC to duplicate discovery that has already been made" and the opposing party "made no showing that its substantial rights will be

1  prejudiced" by modification. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 860-
2  61 (7th Cir. 1994).

3  **B.    Masimo Identified Six Document Categories Relevant To The ITC**
4  **Investigation**

5      Pursuant to the Court's November 18 Order, Masimo identified specific
6  categories of documents that are relevant in the ITC Investigation and that have not been
7  fully produced in the ITC Investigation.  Those categories are discussed below.  Masimo
8  excludes source code from its request pursuant to the Court's suggestion that source
9  code may raise unique issues with the current Protective Order.  *See* Ex. 16 at 29:1-14.

10     **1.    Technical Documents About Portions Of The Apple Watch**

11     This category recites: "Documents regarding the structure, including hardware,
12  software and firmware, and function of the accused products in the ITC Investigation
13  and components thereof," including two subparts: (i) "technical documents (e.g.,
14  specifications, architecture, algorithms, process diagrams, flowcharts, whole or
15  exploded assemblies, circuit board layouts, etc.) regarding the Blood Oxygen feature,
16  temperature sensor, and thermistor" and (ii) "technical documents regarding the optical
17  components (e.g., LEDs, photodiodes, lenses, back crystal assembly, and related
18  components like ink, coatings, and paint), including documents relating to cone angle,
19  diffusion, diffusivity, diffusers, emission profile, beam shaping, and/or beam shape."
20  Proposed Order at 1.  Masimo requested such documents in the ITC Investigation,
21  including through at least ITC Request For Production ("RFP") Nos. 32-41, 43-45, and
22  47.  Ex. 21.  Such documents are also relevant to ITC Interrogatory Nos. 2, 4, 5, 55-57,
23  62.  *See* Exs. 22–24.

24     The documents are relevant to the ITC Investigation.  First, subcategory (i) is
25  relevant to at least infringement of the five asserted patents in the ITC Investigation:
26  U.S. Patent Nos. 10,912,501 ("the '501 patent"), 10,912,502 ("the '502 patent"),
27  10,945,648 ("the '648 patent"), 10,687,745 ("the '745 patent"), and 7,761,127 ("the '127
28  patent").  The asserted claims of these patents recite systems to determine one or more

physiological parameters of a user, including blood oxygen saturation.  *See, e.g.*, Ex. 60 ('648 Patent) at Claim 12 ("The user-worn device of claim 8, wherein the physiological parameter comprises oxygen or oxygen saturation"); *see also* Ex. 61 ('745 Patent) at Claim 1, Claim 20.  Many claims recite the use of a temperature sensor or thermistor. Ex. 62 ('501 Patent) at Claim 9 ("thermistor configured to output a temperature signal"); Ex. 63 ('502 Patent) at Claim 20 ("thermistor"); Ex. 60 ('648 Patent) at Claim 15 ("thermistor"); Ex. 64 ('127 Patent) at Claim 7 ("a temperature sensor . . . capable of determining a bulk temperature for the thermal mass").  The claims also recite various other electrical components that are typically identified and discussed in the type of technical documents at issue.  Thus, the technical documents listed in subcategory (i) are relevant to showing Apple infringes the asserted patents in the ITC Investigation.

Second, subcategory (ii) of these documents are relevant to several issues in the ITC Investigation, including at least infringement of four of the asserted patents: the '501, '502, '648, and '745 Patents.  These patents recite optical components and features such as light-emitting diodes (LEDs), photodiodes, coverings such as lenses or windows, and related features such as opaque surfaces, dark-colored coatings, and diffusers or diffusing components.  *See, e.g.,* Ex. 62 ('501 Patent) at Claim 19 (reciting "LEDs," "photodiodes," "an opaque material lining a lateral surface," and "windows"); Ex. 63 ('502 Patent) at Claim 19 (reciting "LEDs," "photodiodes," "openings . . . lined with opaque material," and "optically transparent material within each of the openings"); Ex. 60 ('648 Patent) at Claim 6 (reciting "LEDs," "photodiodes," and "windows"), Claim 7 ("opaque material"); Ex. 61 ('745 Patent) at Claim 1 (reciting "light-emitting diodes configured to emit light in a first shape," "a material configured to be positioned between the [ ] light-emitting diodes and tissue on a wrist," "photodiodes," and "a surface comprising a dark-colored coating"), Claim 15 (reciting "light-emitting diodes," "a light diffusing material," "a light block," and "photodiodes").  The '745 Patent also claims "light diffusing material" and features configured to change the shape of light emitted by the LEDs.  *See, e.g.*, Ex. 61 ('745 Patent) at Claims 1, 15, 20.  Accordingly,

the technical documents listed in subcategory (ii) are also relevant to showing Apple infringes the asserted patents in the ITC Investigation.

During the meet and confer, Masimo identified exemplary documents within this category that Apple has not yet produced in the ITC Investigation. ████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████ These are just some of the technical documents within this category that Masimo should be allowed to use in the ITC Investigation.  Apple agreed to cross-produce some technical documents in the ITC investigation.   Ex. 20 at 2. Accordingly, Apple appears to acknowledge the relevance of at least some technical documents.  Masimo hopes Apple will now produce the documents within this category. If Apple fails to do so, Masimo should be permitted to use the documents from this case in the ITC Investigation.

**2.    Testing Documents About Portions Of The Apple Watch**

This category recites: "Documents regarding testing of the components described in Number 1 above, including specifications, test procedures, test results, and comparisons with products made by Masimo, Cercacor, or others."  Proposed Order at 1. Masimo requested such documents in the ITC Investigation, including through at least ITC RFP Nos. 26, 31, 37, 59.   Ex. 21.   Such documents are also relevant to ITC Interrogatory Nos. 4, 16, 28, and 31.   Exs. 22, 39.

These documents are relevant to several issues in the ITC Investigation.   As discussed above, the operation of the accused devices is relevant to infringement in the ITC Investigation.   Specifications, test procedures, and test results are thus relevant because they will show the operation of accused products.   Documents showing

comparisons of the accused products to Masimo's products are also relevant to several issues discussed in more detail below.  *See infra,* Section III.B.5.  For example, such documents are relevant to secondary considerations of non-obviousness, such as failure of others and copying.  *See, e.g.*, *Iron Grip Barbell Co. v. USA Sports*, Inc., 392 F.3d 1317, 1325 (Fed. Cir. 2004) (explaining that "copying by a competitor may be a relevant consideration in the secondary [consideration] analysis.").

During the meet and confer, Masimo identified exemplary documents within this category that Apple has not yet produced in the ITC Investigation.  ███████████

███████████████████████████████████████████████

████████████████████████████████ These are just some of the documents within this category that Masimo should be allowed to use in the ITC Investigation.  Indeed, Apple "agreed to produce certain specific testing documents" in the ITC investigation.  Ex. 20 at 3.  Accordingly, appears to acknowledge the relevance of this category of documents.  Masimo hopes Apple will now produce the documents within this category.  If Apple fails to do so, Masimo should be permitted to use the documents from this case in the ITC Investigation.

### 3.    Documents About The Accuracy Of The Apple Watch

This category recites: "Documents regarding any problems with the accuracy of SpO2 measurements of Series 6 or Series 7."  Proposed Order at 1.  Masimo requested such documents in the ITC Investigation, including through at least ITC RFP Nos. 26, 30-39, 85, and 129-130.  Ex. 21.  Such documents are also relevant to ITC Interrogatory Nos. 2, 4, 39, and 44.  Exs. 22, 39, 72.

These documents are relevant to several issues in the ITC Investigation.  For example, these documents are relevant to secondary considerations of nonobviousness, including failure of others.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007) (secondary considerations include "commercial success, long felt but unsolved needs, failure of others, etc.").  These documents are also relevant to a bond determination.  If Apple is found to infringe Masimo's patents in the ITC, Masimo will request that the

1   ITC issue an exclusion order preventing Apple from further importation or sale of its

2   infringing products.  Such an order is subject to a 60-day review period, during which

3   the ITC may permit importation of infringing products under bond posted by Apple.  *See*

4   19 U.S.C. § 1337(j)(3).  The requested documents are relevant to the bond determination

5   because Masimo alleges that Apple's accuracy problems harm the public trust in the

6   accuracy of $SpO_2$ measurements generally, thereby injuring Masimo's domestic industry

7   and the sales of its domestic industry products.

8   During the meet and confer, Masimo identified exemplary documents within this

9   category that Apple has not yet produced. ███████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ██████████████████████████████  These are just some of the documents within

14  this category that Masimo should be allowed to use in the ITC Investigation.

### 4.    FDA Communications About Portions Of The Apple Watch

16  This category recites: "Apple's communications with the FDA relating to the

17  blood oxygen and/or pulse rate features of its Apple Watch products."  Proposed Order

18  at 1.  Masimo requested such documents in the ITC Investigation, including through at

19  least ITC RFP No. 107.  Ex. 21.  Such documents are also relevant to ITC Interrogatory

20  No. 71.  Ex. 50.

21  These documents are relevant to at least infringement and importation in the ITC

22  Investigation.  Apple's discussion of the blood oxygen and/or pulse rate features of its

23  products with the FDA is relevant to structure, function, and operation of such features—

24  features that are recited in the patent claims asserted by Masimo in the ITC investigation.

25  *See, e.g.* Ex. 62 ('501 Patent) at Claims 1, 19, 26; Ex. 63 ('502 Patent) at Claims 1, 19,

26  28; Ex. 60 ('648 Patent) at Claims 1, 6, 8, 20; Ex. 61 ('745 Patent) at Claims 1, 15, 20.

27  Apple's communications with the FDA are also relevant to show that Apple is seeking

28  regulatory approval for products it intends to import.

-12-

During the meet and confer, Masimo identified exemplary documents within this category that Apple has not yet produced in the ITC Investigation.  *See, e.g.*, Ex. 54. Such documents are just some of the documents within this category that Masimo should be allowed to use in the ITC Investigation.  In the ITC Investigation, Masimo recently moved to compel Apple to produce communications with the FDA regarding the Apple Watch Series 6 or 7.  Ex. 51.  Apple then agreed to provide the FDA-related discovery sought by Masimo.  Ex. 52.  Thus, Apple essentially conceded the relevance of its FDA communications.  Masimo hopes Apple will now produce the documents within this category.  If Apple fails to do so, Masimo should be permitted to use the documents from this case in the ITC Investigation.

### 5.   **Internal Communications About Masimo And Its Technology**

This category recites: "Internal Apple communications regarding Masimo, its employees, its technology, and its patents."  Proposed Order at 2.  Masimo requested such documents in the ITC Investigation, including through at least ITC RFP Nos. 1-3, 5, and 64.  Ex. 21.  Such documents are also relevant to ITC Interrogatory No. 26, 27, and 64.  Exs. 24, 39.

These documents are relevant to several issues in the ITC Investigation.  First,

██████████████████████████████████████████████████

███████████████████████ is relevant to considerations of non-obviousness, including commercial success, and industry praise.  *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1351 (Fed. Cir. 2012).  ██████████

████████████████████████████████████████████ which is relevant to secondary considerations of non-obviousness.  *See, e.g.*, *Iron Grip*, 392 F.3d at 1325 (explaining that "copying by a competitor may be a relevant consideration in the secondary [consideration] analysis.").

Second, in the ITC Investigation, Apple argues that Masimo's domestic industry was somehow "contrived" for the ITC Investigation.  In the ITC Investigation, Apple told the ALJ "In seeking an exclusion order against the Apple Watch Series 6,

-13-

1   Complainants are acting as non-practicing entities, asserting patents not to protect

2   competing products (as they offer no smartwatch products), but rather to monetize their

3   patents by attempting to eliminate Apple's product from the market."  Ex. 73 at 1.

4

5

6

7

8

9

10

11

12                                                                                      which

13   is obviously inconsistent with Apple telling the ALJ that Masimo is a "non-practicing

14   entity" or "patent troll."  Similar to the recent hearings regarding Lamego and Tim Cook,

15   the Protective Order prohibited Masimo from being able to show the ALJ the true facts

16   on this issue.   The Court should not permit Apple to continue using the Court's

17   Protective Order to prevent Masimo from fully rebutting Apple's aggressive allegations.

18         Third, the requested documents are relevant to rebutting Apple's prosecution

19   laches defense in the ITC investigation.  In the ITC, Apple argues Masimo's claims are

20   barred because Masimo waited too long to obtain issuance of the patents in suit (a

21   doctrine referred to as "prosecution laches").  Apple's correspondence about Masimo

22   and its patents would show Apple was aware of Masimo's patents and thus could not be

23   prejudiced by the time Masimo spent prosecuting its patents.  This would undermine any

24   patent prosecution laches defense.  *See, e.g., Cancer Research Tech. Ltd. v. Barr Labs.,*

25

26   3

27

28

*Inc.*, 625 F.3d 724, 732 (Fed. Cir. 2010) (rejecting prosecution laches defense "where no one suffered prejudice").

During the meet and confer, Masimo identified exemplary documents within this category that Apple has not yet produced. Those documents include the emails discussed above in Section II.A of the background. *See* Exs. 2-4, 7. ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Such documents are just some of the documents within this category that Masimo should be allowed to use in the ITC Investigation.

**6.      Locations and Results of Engineering Validation Testing for Apple's Watch Products**

This category recites: "Documents about the locations where Apple conducts its engineering validation testing ('EVT') for its Apple Watch products and the results of such testing." Proposed Order at 2. Masimo requested such documents in the ITC Investigation, including through at least ITC RFP Nos. 145-146 and 149. Ex. 58. Such documents are also relevant to ITC Interrogatory Nos. 7, and 65-68. Exs. 22, 24.

These documents are relevant to several issues in the ITC Investigation. Documents regarding the results of Apple's EVT testing show the features and characteristics of Apple's products, and thus are relevant to whether those products infringe any of the patents asserted in the ITC investigation. The documents are also relevant to importation, which Masimo is required to prove as part of the ITC Investigation. 19 U.S.C. § 1337(a). Documents concerning the locations where Apple conducts its EVT testing of its Watch products are relevant to showing that Apple is importing its Watch products into the United States.

During the meet and confer, Masimo identified exemplary documents within this category that Apple has not yet produced. ████████████████████████████ ████████████████████████████ Such documents are just some of the documents within this category that Masimo should be allowed to use in the ITC Investigation.

-15-

## C.   <u>The Discovery At Issue Is Also Relevant Under *Foltz*</u>

Under *Foltz,* courts determine that discovery is relevant to a collateral suit "based upon a comparison of the complaints in the [present] litigation and the collateral suits, the contents of the protected discovery, the general rules on the scope of discovery in the collateral jurisdictions, and any other relevant factors that are in conformity with this opinion." *Foltz*, 331 F.3d at 1134.  All factors weigh in favor of granting this Motion at least with regard to the categories of documents Masimo identified above.

First, the allegations in this case and the ITC Investigation overlap such that discovery in this case is likely to be relevant in the ITC Investigation.  In general, both cases involve Masimo's allegations that Apple hired former Masimo employees, including Michael O'Reilly and Marcelo Lamego, to incorporate Masimo's technology into Apple Watch products.  *Compare* Dkt. 296-1 (4th Amended Complaint) at ¶¶ 19-25 *with* Ex. 12 (ITC Complaint) at ¶¶ 32-38.  Both cases also involve Apple's use of Masimo's non-invasive monitoring technology.  *Compare* Dkt. 296-1 at ¶¶ 9-17 *with* Ex. 12 at ¶¶ 9-20.  Masimo accuses overlapping versions of the same Apple product in both cases.  *Compare* Dkt. 296-1 at ¶¶ 238, 240, 255 *with* Ex. 12 at ¶ 39.  Light-based physiological monitoring features, including pulse oximetry and pulse rate, are at issue in both cases.  *Compare* Dkt. 296-1 at ¶¶ 10-12, 25, 234-244, 254-256 *with* Ex. 12 at ¶¶ 24-25, 31, 46, 53, 60, 67, 74.

As a result of the overlapping allegations, both parties served overlapping discovery requests.  For example, Masimo requested Apple's product guides, lab notebooks, and other development documents in both cases.  *Compare* Ex. 68 at Nos. 6, 14, 71, 78 *with* Ex. 21 at Nos. 19, 26, 42, 43.  Masimo also requested an inspection of Apple prototypes, documents about reverse engineering Masimo products, and communications with the FDA.  *Compare* Ex. 68 at Nos. 96, 226, 285, 442 *with* Ex. 21 at Nos. 27, 51, 107, 126.  Apple similarly requested Masimo's lab notebooks, other development documents, marketing documents, and financial documents in both cases.

/ / /

*Compare* Ex. 69 at Nos. 68, 79, 144, 194, 198, *with* Ex. 70 at Nos. 13, 121, 136, 137, 161. Both parties will produce overlapping documents.

Second, as discussed in detail above, the contents of the protected discovery at issue here is directly relevant to the ITC Investigation. *See supra*, Section 3B.

Third, the discovery standards are also similar in the ITC and this Court. *Compare* 19 CFR § 210.27(b)(1) (permitting discovery of "any matter, not privileged, that is relevant to . . . [t]he claim or defense of the party seeking discovery or to the claim or defense of any other party") *with* Fed. R. Civ. P. 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *see also Jepson*, 30 F.3d at 861 (finding the broad discovery rules in the ITC indicated the information at issue was discoverable in the ITC). As a result, Masimo has more than satisfied the relevance prong of *Foltz*.

## D.   <u>Apple Cannot Show Substantial Prejudice</u>

A party seeking continued protection under a protective order bears the burden to "allege specific prejudice or harm." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not suffice. *Id.*

In the prior briefing, Apple argued that it would be prejudiced based on its "reliance interest" in the protective order. Dkt. 511 at 10. The Court credited that argument because the parties spent significant time contesting various provisions in the protective order, particularly the source code provisions. Ex. 16 at 9:2-11, 29:8-17. To eliminate the issue, Masimo excludes source code from its request. *See* Proposed Order.

Apple has not identified any specific provision of the protective order in the ITC Investigation that it contends is inadequate to protects its confidential information. If anything, the protective order in the ITC Investigation is ***more stringent*** than the protective order here. For example, outside counsel in this case need not sign anything to obtain protected material, whereas each lawyer in the ITC Investigation must sign and

file a letter with the Commission. *Compare* Dkt. 67 ¶ 9.2 (a) *with* Ex. 14 ¶¶ 3(i) and 4. The protective order here also allows confidential information to be provided to party representatives whereas the ITC Investigation contains no such provision. Dkt. 67 ¶ 9.2 (b) *with* Ex. 14 ¶¶ 3. The protective orders in both cases also contain similar provisions on several issues, including clearing expert witnesses (*compare* Dkt. 67 ¶ 9.2(c) *with* Ex. 14 ¶ 11), unauthorized disclosure to unauthorized individuals (*compare* Dkt. 67 ¶ 14 *with* Ex. 14 ¶ 12), and a prosecution bar (*compare* Dkt. 67 ¶ 10 *with* Ex. 14 ¶ 19). Apple cannot show the protective order in the ITC Investigation is inadequate to protect its confidential information.

The case law is also clear that a party has little or no reliance interest in protective orders that, like the order in this case, apply to any document that a party designates. *See Foltz*, 331 F.3d at 1133 (reliance interest is diminished because such orders are "by nature overinclusive"). As the Ninth Circuit explained, reliance on such an order without more would "not justify a refusal to modify" the protective order. *Id.*; *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992). District court decisions are in accord. *See, e.g.*, *Universal Entm't*, 2020 WL 2308226, at *1; *Verizon California*, 214 F.R.D. at 586; *Cummins-Allison*, 2013 WL 12250448, at *3; *Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 2238022, at *2 (N.D. Cal. June 15, 2012). Even the Second Circuit—which applies a far higher "extraordinary circumstances" standard for using discover in other cases—rejected reliance on such non-specific protective orders. *See In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 148 (2d Cir. 1987).

Moreover, most cases addressing prejudice and cross-use disputes involve disclosure to ***others*** not involved in the original case. *See, e.g.*, *Foltz*, 331 F.3d at 1138 (addressing motion filed by third-party intervenors). Courts are even less likely to find prejudice where the parties are the same. As one court explained, "Plaintiff wishes to use confidential information and discovery in the pending actions involving it and Defendant" so "no concerns exist regarding unfettered dissemination to unknown third parties." *Cummins*, 2013 WL 12250448, at *2, *3. The court stated:

-18-

> Thus, Defendant cannot legitimately raise concerns about disclosure to
> unknown collateral litigants.  Neither can Defendant reasonably contend
> that Plaintiff should have access in this litigation, but not in other pending
> litigation involving these same parties, particularly given the relatedness of
> the cases.  Plaintiff's obligation to maintain confidence is the same in any
> action, so it is unclear why access would be permissible here, but not in
> [the collateral litigation].

*Id.*  Here, the parties are the same and the parties are each represented by the same law firms.  Thus, all of the lawyers in the ITC Investigation already have access to the discovery at issue in this Motion.  *See* Dkt. 67 ¶ 9.2 (a).  Granting this motion will not require Apple to disclose its information to any party or lawyer who does not already have access to the same information in this case.

Another district court in the Ninth Circuit recently addressed a similar request to modify the "use" restriction in a protective order to allow use in other cases.  *Universal Entm't*, 2020 WL 2308226, at *1.  The court denied the request with respect to a criminal case involving different parties where the moving party failed to identify "any overlap of facts and issues between the cases."  *Id.* at *3-*4.  However, the court granted the request with respect to a case involving the same parties and overlapping discovery.  *Id.* at *4.  The court concluded the "protected discovery is relevant enough" and found no prejudice because the existing parties "are the only parties that would have access to the protected discovery."  *Id.* at *4.  The same analysis applies here.

## E.     Apple's Proposal For A Document-By-Document Identification Is Unworkable

During the meet and confer, Apple refused to consider any identification of documents by category.  Ex. 20 at 6.  Instead, Apple demanded that Masimo identify any documents that it wishes to use in the ITC by Bates number and explain their relevance to the ITC investigation before Apple would even consider Masimo's request.  *Id.*  Apple's approach is contrary to the Court's guidance and unworkable.

The Court explained that Masimo did not "have to go document by document" when proposing documents for cross use.  Ex. 16 at 19:13-17, 24:4-26:9; *see also*

*Universal Entm't*, 2020 WL 2308226, at *4 ("Defendants need not identify specific documents they want to share."). Instead, the Court explained that Masimo should identify documents by "type" or "category" or could even identify documents that Masimo did not want to use in the ITC and request cross use of the remaining documents. Ex. 16 at 19:13-17, 25:23-24:1, 29:23-30:9. Masimo has followed the Courts' guidance.

Apple also only recently produced 1.4 million pages of documents, the vast majority of which Masimo still needs to review before it can possibly identify all the relevant documents by Bates number. At the current review rate, Masimo estimates that the documents will not be fully reviewed until April. *See* Dkt. 557 at 10. Additionally, Apple is still producing documents in this case and will continue to produce documents in the coming weeks. *Id.* at 11. Masimo cannot identify documents by Bates number that it does not yet have.

Apple's proposal is also not feasible because of the time required by the Local Rules to brief a dispute. This Motion will be heard on February 17—just one week before the close of fact discovery in the ITC Investigation. If Masimo identifies new documents even one week from now, it will be impossible to have any dispute heard by the Court before the close of fact discovery in the ITC Investigation.[4]

## F.   In The Alternative, The Court Should Allow Masimo To Show the ALJ Documents From This Case

At the hearing, the Court indicated Masimo may seek alternative relief allowing it to show the ALJ documents from this case even if Masimo were not permitted to otherwise use them at depositions or trial. Ex. 16 at 39:9-40:10. Masimo's Proposed Order contains such alternative relief in the event the Court disagrees with Masimo's primary requested relief above. Granting such alternative relief would at least allow

---

[4] Masimo tried to file this Motion as quickly as possible, but Apple did not produce the information necessary to make this Motion until four weeks after Masimo asked for it. *See* Exs. 17 and 18. Masimo then asked Apple to agree to an expedited briefing schedule, but Apple declined. Ex. 20.

1  Masimo to use documents from this case to rebut Apple's arguments and demonstrate

2  to the ALJ that Apple withheld responsive documents.

3  **G.  The Parties Agree The Court May Resolve This Dispute**

4  Masimo files the Motion, in this particular forum, at Apple's request.  In

5  connection with Masimo's first motion to modify the protective order, Apple argued the

6  motion should be decided by the Court under Local Rule 7 instead of Local Rule 37.

7  Ex. 71.  Masimo agreed to avoid any further dispute or delay. *Id.*  Masimo thus filed

8  both its prior motion to modify and this Motion under Local Rule 7.

9  **IV.  CONCLUSION**

10  Masimo respectfully requests the Court modify the Protective Order as set forth

11  in the Proposed Order.

12

13  Respectfully submitted,

14  KNOBBE, MARTENS, OLSON & BEAR, LLP

15

16  Dated:  January 20, 2022          By: */s/ Adam B. Powell*

17  Joseph R. Re
   Stephen C. Jensen

18  Benjamin A. Katzenellenbogen
   Perry D. Oldham

19  Stephen W. Larson
   Mark D. Kachner

20  Adam B. Powell
   Daniel P. Hughes

21

22  Attorneys for Plaintiffs
   MASIMO CORPORATION and

23  CERCACOR LABORATORIES, INC.

24

25  54939318

26

27

28