JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE PROTECTIVE ORDER (DKT. 67)** <br><br> [Discovery Document: Referred to Magistrate Judge John D. Early] <br><br> Date: February 17, 2022 <br> Time: 10:00 am <br> Courtroom: 6C |

**<u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>**

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

APPLE'S OPPOSITION TO PLAINTIFFS' MOT. TO MODIFY THE PROTECTIVE ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS ...................................................................... 2

    A. Plaintiffs File This Suit, Which Raises Trade Secret, Patent Infringement, And Patent Ownership Claims ................................... 2

    B. Plaintiffs File Suit In The ITC Over Five Patents Not At Issue In This Action ..................................................................................... 4

    C. This Court Denies Plaintiffs' First Cross-Use Motion ................... 5

    D. Plaintiffs Wait Two More Months Before Filing This Motion ....... 6

III. LEGAL STANDARD ............................................................................. 7

IV. ARGUMENT .......................................................................................... 8

    A. Plaintiffs Have Failed To Show That The Six Broad Categories Of Documents Requested Are Relevant To The ITC Investigation ...... 8

        1. Plaintiffs Rely On A Legal Standard That This Court Has Already Rejected ................................................................... 8

        2. Plaintiffs Have Not Established Relevance Under The Proper Legal Standard .................................................................... 10

    B. Apple Would Suffer Significant Prejudice From Either Of Plaintiffs' Requests For Relief ..................................................... 17

        1. This Court Should Not Modify The Protective Order To Permit Cross-Use ................................................................ 17

        2. This Court Should Not Modify The Protective Order To Permit The ITC ALJ To See *All* Documents ...................... 19

    C. Plaintiffs Should Not Be Rewarded For Their Delay .................... 20

V. CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005) ................................................................8

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020) ............................................................11

*Classco Inc. v. Apple, Inc.*,
  838 F.3d 1214, 1220 (Fed. Cir. 2016) ...............................................16

*Foltz v. State Farm Mutual Auto. Insurance Co.*,
  331 F.3d 1122 (9th Cir. 2003) ....................................................*passim*

*Immunex Corp. v. Sanofi*,
  2018 WL 11211727 (C.D. Cal. Jan. 18, 2018) ....................................8

*Spansion, Inc. v. ITC*,
  629 F.3d 1331 (Fed. Cir. 2010) .........................................................14

*Streck Inc. v. Research & Diagnostic Sys., Inc.*,
  2008 WL 2813081 (D. Neb. July 18, 2008) ......................................10

*Stutz Motor Car of Am., Inc. v. Reebok Int'l*,
  909 F. Supp. 1353 (C.D. Cal. 1995) ..................................................11

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.,* 699 F.3d 1340 (Fed. Cir. 2012) ................................................16

*Universal Entertainment Corp. v. Aruze Gaming America, Inc.*
  2020 WL 2308226 (D. Nev. May 8, 2020) ..........................................9

*Verizon California, Inc. v. Ronald A. Katz Technology Licensing, L.P*
  214 F.R.D. 583 (C.D. Cal. 2003) ...................................................9, 10

**Statutes**

19 U.S.C. § 1337(d)(1) ...........................................................................14

19 U.S.C § 1337(j)(3) .............................................................................14

**Other Authorities**

8A Wright & Miller, *Federal Practice & Procedure Civ.* § 2044.1 (3d
    ed.) ...................................................................................................................8

## I.   **INTRODUCTION**

Plaintiffs' opening brief largely repeats the points made in their first cross-use motion, which this Court rejected on the grounds that Plaintiffs were not entitled to create a gaping exception to the Protective Order—a document that the parties had heavily litigated and that Apple subsequently relied upon.  After two months of delay, Plaintiffs have returned with a slightly different ask that raises the same basic problems—and places the same burden on the ITC ALJ—as their prior motion.  Specifically, they have changed their request from (1) being permitted to use all documents (regardless of relevancy) in the ITC to (2) being permitted to use six broad categories of documents (still essentially regardless of relevancy).

Plaintiffs identify no authority that permits such an approach.  While they rely heavily on this Court's prior statement that identifying "categories" or "types" of documents would be an improvement over Plaintiffs' request to use all documents produced in this litigation, this Court never suggested that any category would do.  Rather, it acknowledged that the Protective Order in this case was "heavily litigated" because "the technology underlying the trade secret claims is highly … sensitive, proprietary." Ex. 16 at 9.  Further, the Court emphasized that it was reluctant to rewrite the Order simply because there is "any overlap in the issues or the discovery at issue" in another case. Ex. 16 at 7-8.

Plaintiffs also largely ignore Apple's January 19, 2022 letter, which both agrees to produce numerous *specific* documents Plaintiffs have requested and lays out in detail why each of the categories of documents that Plaintiffs have identified is so broad as to be irrelevant or otherwise objectionable.  That Plaintiffs have no answer whatsoever to these points—or at least no answer that they believe would stand up to the scrutiny of adversarial briefing if raised in an opening brief—is telling.

In rejecting Plaintiffs' prior cross-use motion, this Court urged Plaintiffs to act quickly to identify the documents from this litigation that they wanted to use in the ITC

Wilmer Cutler
Pickering Hale
and Dorr LLP

litigation and to negotiate an agreement with Apple regarding those documents—even suggesting that the parties meet that very day. Ex. 16 at 36-38. As Apple made clear at the hearing on Plaintiffs' prior motion, Apple stood ready to consider Plaintiffs' proposals at any time, and Plaintiffs do not suggest otherwise. Instead, Plaintiffs dragged their feet for months and then filed this motion the day after receiving a detailed list of Apple's objections and proposed compromises. Now, by the time this motion is heard, only six days of ITC fact discovery will remain. Plaintiffs' lack of diligence underscores that the discovery they seek is irrelevant to the ITC action. Granting Plaintiffs' request, moreover, will foist a significant burden on Apple (i.e., moving to exclude broad swathes of irrelevant evidence) at a time when the parties have a tremendous amount of other fact discovery to complete by the ITC deadline. Plaintiffs' motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Plaintiffs File This Suit, Which Raises Trade Secret, Patent Infringement, And Patent Ownership Claims

Plaintiffs filed suit in this case in January 2020. *See* Dkt. 1. The current, fourth Amended Complaint raises three types of claims: (1) misappropriation of trade secrets under California's Uniform Trade Secret Act, (2) correction of inventorship and/or ownership of Apple patents and patent applications based on their purported incorporation of Plaintiffs' inventions and trade secrets, and (3) infringement of a dozen patents by Apple products including "the Apple Watch Series 3[/4] and later devices." *See* Dkt. 296-1 at ¶¶ 67, 71, 75.

On October 13, 2020, this Court stayed all twelve of Plaintiffs' patent infringement claims pending Patent Office resolution of Apple's petitions for *inter partes* review. Dkt. 222 at 1. This Court did not stay the trade secret and correction of inventorship/ownership claims, and thus discovery has proceeded only as to those claims. To date, Apple has produced more than 200,000 documents, amounting to more

than 1.8 million pages of material, *see* Dkt. 565-1 ¶ 30, and responded to 22 interrogatories and 592 requests for production.

Many of the documents and responses Apple has provided in discovery have been designated Protected Material under the Court's Protective Order.  As relevant here, Section 5.1 of the Protective Order states: "All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation."  Dkt. 67 at 6.

As this Court has explained, "this protective order is unique."  Ex. 16 at 10-11. While many protective orders are just a few pages of boilerplate language, the order in this case is "very detailed, very comprehensive."  *Id.*  The reason for "the very specific, heavily litigated, and otherwise carefully crafted terms of this protective order … is that the technology underlying the trade secret claims is highly, highly, highly sensitive" to Apple and Plaintiffs.  *Id.* at 9; *see also* Dkt. 72-1 at 3 (Apple explaining that because "this litigation will involve some of Apple's most valuable and highly confidential information," the parties negotiated for "three months" over the protective order's terms).  Notably, however, there was no dispute over the quoted passage from Section 5.1.  Rather, "the parties agreed and it was stipulated … that … any documents designated under the protective order were only to be used in the context of this litigation."  Ex. 16 at 8; *see also* Dkt. 61-2 at 91 (redline comparing Plaintiffs' and Apple's proposed protective orders).[1]

---

[1] Plaintiffs' motion devotes three pages to a self-serving summary of their allegations and  another page to complaints about Apple's discovery conduct.  Mot. 2-5.  Plaintiffs have been unable to substantiate many of their allegations, Dkt. 560-1 at 7-15, and their expansive discovery requests amount to an extended fishing expedition that is largely untethered to their live claims, Dkt. 565 at 3-6.

Wilmer Cutler
Pickering Hale
and Dorr LLP

**B.      Plaintiffs File Suit In The ITC Over Five Patents Not At Issue In This Action**

In June 2021—roughly one year after the protective order was entered—Plaintiffs filed a complaint in the ITC alleging that Apple had infringed five of their patents.  Dkt. 570 ¶ 3; Ex. 12 at 14-28.

The ITC action differs from the district court action in a number of respects.  First, the patents are different:  None of the patents asserted in the ITC matter is asserted in this case.  Second, the legal claims are different:  The ITC matter does not involve any trade secret or correction of ownership/invention claims.  Third, the accused products are different:  The ITC matter targets just Apple Watch Series 6 and 7, while this case also includes Series 3-5 and SE.  Finally, the requested remedies are different:  The ITC matter seeks only injunctive relief, while this case also asks for damages.

The ITC instituted its Investigation focused on two issues: (1) whether Apple infringes the five asserted patents by importing the Apple Watch Series 6 and other "wearable electronic devices with light-based pulse oximetry functionality" and (2) whether Plaintiffs have established an industry in the United State practicing those patents.  *See* Ex. 13 at 2.  Discovery began five months ago and closes on February 23, 2022.  To date, Plaintiffs have served 240 requests for production, 105 interrogatories, and 42 requests for admission, resulting in Apple producing over 64,000 pages of overlapping material.  Ex. 16 at 18.  Although Apple objected to Plaintiffs' RFP Nos. 131-133—which seek "all documents and things produced by Apple," "[a]ll transcripts of any depositions taken," and "[a]ll responses to interrogatories or to requests for admission served by Apple," in the district court action—on relevancy and proportionality grounds over three months ago, Dkt. 512-1 at 3-4, Plaintiffs have not moved to compel with respect to those RFPs.

Plaintiffs have filed only two motions to compel in the ITC action, both of which implicate categories of documents requested in this motion.  Specifically, Plaintiffs moved to compel production related to (1) certain of Apple's communications with the

Wilmer Cutler
Pickering Hale
and Dorr LLP

FDA, and (2) Apple's future products.  The former dispute—which mirrors the fourth category of documents Plaintiffs seek here—has since been resolved, as the parties were able to come to an agreement on a narrower scope of production.  *See* Ex. 20 at 4.  The latter dispute, which overlaps with the sixth category of documents Plaintiffs seek here, remains pending before the ALJ.  *Id.* at 5-6.

## C.    This Court Denies Plaintiffs' First Cross-Use Motion

On October 19, 2021, Plaintiffs asked this Court to modify the Protective Order to permit all material produced in this case to be used in the ITC action.  *See* Dkt. 506 at 1.

This Court rejected Plaintiffs' request during a nearly one-hour hearing on November 18, 2021.  The Court explained that under *Foltz v. State Farm Mutual Auto. Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003), the mere fact that "there's any overlap in the issues or the discovery at issue between … two cases" does not establish that material covered under a Protective Order in one case is relevant to the other.  Ex. 16 at 7.  The Court also noted that the "very specific, heavily litigated, and otherwise carefully crafted terms of this protective order" was very different from the "three-page long and … for lack of a better term, pro forma" protective order at issue in *Foltz*.  *Id.* at 9-10.  Based on these "unique" aspects of the Protective Order, this Court concluded that Apple's "reliance on it … is real" and noted that it was taking the reliance "element of the *Foltz* balancing … very seriously."  *Id.* at 11.

At the conclusion of the hearing, this Court explained that it was "deny[ing] the motion without prejudice" in order to give Plaintiffs the opportunity to (1) "figure out what you think might be relevant [in the ITC action]" and then (2) meet and confer with Apple regarding a narrower request to modify the protective order—e.g., "a ***particular*** document or a ***particular*** category of documents."  Ex. 16 at 32-35, 38, 41 (emphases added).  This Court acknowledged that Plaintiffs' motion was "time sensitive" but explained that the ruling he would otherwise issue was "probably not going to be the

Wilmer Cutler
Pickering Hale
and Dorr LLP

ruling that [Plaintiffs] want anyway." *Id.* at 35.  Plaintiffs' counsel declined the Court's suggestion to hold the meet-and-confer the same day as the hearing.  *Id.* at 36.  Rather, Plaintiffs' counsel explained that "we will need to identify the [relevant] documents first" before Plaintiffs would be ready to meet and confer—a process that they "guess[ed]" they could complete within 10 days.  *Id.*

## D.     Plaintiffs Wait Two More Months Before Filing This Motion

Plaintiffs took no action for six days.  Then, on the day before Thanksgiving, they sent a letter asking Apple "to identify [all] the documents from the district court litigation" that had been produced in the ITC action.  Ex. 17 at 1.  Plaintiffs neither cited any authority supporting this request nor provided any explanation for why they could not prepare this information themselves.  *Id.*  When pressed by Apple on both points, Plaintiffs had no answer.  *See* Ex. 18 at 2-4.

Ultimately, although Apple "disagree[d] that Plaintiffs are entitled to an overlay to determine what documents Masimo contends are relevant to the ITC"—particularly because "Judge Early made clear that [Plaintiffs] could review the district court production for purposes of meeting and conferring with Apple"—Apple agreed to produce the requested information as an accommodation.  *See* Ex. 18 at 2.  Apple made its offer on Monday, December 20.  *Id.* at 1.  Plaintiffs did not respond to confirm agreement until Thursday, December 23; Apple provided the requested information the same day.  *Id.*

After receiving the overlay document, Plaintiffs inexplicably took no action for three weeks.  On January 13, Plaintiffs sent Apple a list of six broad categories of documents they proposed for cross-use, including, for example, ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

█████████████ Plaintiffs' only explanation of relevance for those two categories was that the documents were █████████████████████████████████████████████████████████████████████

Apple agreed to meet and confer on January 18, two business days after receiving Plaintiffs' letter. Ex. 20 at 1. On January 19, Apple sent Plaintiffs a detailed, six-page letter explaining their objections to each category and offering to agree to cross-use of many of the specific documents cited in Plaintiffs' letter. Ex. 20 at 1-6. On January 20, Plaintiffs filed the instant motion, which does not substantively respond to—or even acknowledge—the arguments raised in the January 19 letter.

### III.   LEGAL STANDARD

A litigant that moves to modify a protective order in order to obtain protected materials for use in another case must satisfy a two-step test. *First*, it "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Foltz*, 331 F.3d at 1132. Relevance "hinges 'on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.'" *Id.* As this Court has noted, that "there's any overlap in the issues or the discovery at issue between … two cases" does not establish relevance. *See supra* p. 5. Rather, the protected materials must be "sufficiently relevant to the collateral litigation that a ***substantial amount*** of duplicative discovery ***will be avoided***," such that the litigant cannot use a motion to modify the protective order as a tool to "subvert limitations on discovery in another proceeding." *Foltz*, 331 F.3d at 1132 (emphases added). If a "limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification." 8A Wright & Miller, *Federal Practice & Procedure Civ.* § 2044.1 (3d ed.); *see also AT&T v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (affirming denial of motion to modify protective order in federal

litigation where motion "appear[ed] to be an attempt to circumvent the close of discovery" in parallel state litigation).

*Second*, "before deciding to modify the protective order, the court that issued it must consider other factors in addition to … relevance." *Foltz*, 331 F.3d at 1133. Specifically, it "must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.*; 8A Wright & Miller, *Federal Practice* § 2044.1 (protecting producing party's "reliance on the protective order" is a "central concern"). As this Court and another decision from this District have noted, reliance interests are particularly strong where (1) the "Protective Order *specifically prohibits* the use of confidential discovery produced in this action for any purpose other than this litigation," *Immunex Corp. v. Sanofi*, 2018 WL 11211727, at *2 (C.D. Cal. Jan. 18, 2018), *accord* Ex. 16 at 8, 31, and (2) the party opposing modification is "involved in litigation with" an opposing party that considers itself to be a direct competitor, *Immunex*, 2018 WL 11211727, at *2; *accord* Ex. 16 at 9. "[S]uch reliance cannot be overstated, and outweighs the possibility that some duplicative discovery may occur." *Immunex*, 2018 WL 11211727, at *2.

## IV.   ARGUMENT

**A.   Plaintiffs Have Failed To Show That The Six Broad Categories Of Documents Requested Are Relevant To The ITC Investigation**

**1.   Plaintiffs Rely On A Legal Standard That This Court Has Already Rejected**

Plaintiffs contend (without directly quoting *Foltz*) that the Ninth Circuit merely requires "a threshold showing that at least some documents may be relevant" and that "[t]he required showing of relevance is not high." Mot. 6-7. This Court, however, has already rejected a reading of the case law under which "any overlap" in the issues or discovery between two proceedings satisfies the relevancy requirement. *See supra* p. 5.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  Indeed, *Foltz* itself makes clear that "a court should not grant a collateral litigant's

2  request for … modification automatically."  331 F.3d at 1132.

3  Plaintiffs' cited authority—which is identical to the case law they cited in their

4  first, unsuccessful cross-use motion, *compare, e.g.*, Dkt. 506 at 5-6 *with* Mot. 6-7—is

5  not to the contrary.  As summarized above, for example, *Foltz* itself explained that the

6  overlap between the parties, facts, and issues between the two proceedings must be

7  sufficiently close as to avoid a *substantial* amount of duplicative discovery.  *See supra*

8  p. 7.[2]

9  Other cases Plaintiffs cite also support a reasonably robust relevancy inquiry.  For

10  example, *Universal Entertainment Corp. v. Aruze Gaming America, Inc.*, applied the

11  *Foltz* rule—i.e., that relevancy is satisfied only when "a substantial amount of discovery

12  will be avoided by modifying the protective order"—in declining to modify a protective

13  order where there was insufficient evidence of "overlap of facts and issues between the

14  two cases."  *See* 2020 WL 2308226, at *3-4 (D. Nev. May 8, 2020).  And while *Verizon*

15  *California, Inc. v. Ronald A. Katz Technology Licensing, L.P.* predated *Foltz*, it still

16  noted that the moving party had shown that the four documents at issue were "relevant

17  to the [collateral] action, which concerns claims or issues similar to those raised in the

18  instant action."  214 F.R.D. 583, 586 (C.D. Cal. 2003).  Plaintiffs have previously tried

19  to downplay this language because the *Verizon* district court also stated that "it is not

20  this Court's province to determine whether" the information is relevant to the trial and

21  appellate courts in the collateral action, *see id.*; Dkt. 513 at 4, but this statement is

22  entirely consistent with *Foltz*—i.e., that the court deciding to modify the protective order

23  determines whether the collateral proceeding is sufficiently similar and not whether the

24

25

26

27

28

[2] Plaintiffs have previously tried to dismiss the "substantial amount" requirement because the *Foltz* panel explained this rule is what "[t]he case law suggests."  *See* Dkt. 513 at 2.  In context, however, *Foltz* was not expressing uncertainty.  To the contrary, it relied on the rules from other jurisdictions in order to "clarify the mechanics of [the Ninth Circuit's] relevance inquiry."  331 F.3d at 1132.

Wilmer Cutler
Pickering Hale
and Dorr LLP

underlying evidence would actually be obtainable in that proceeding.  *See Foltz*, 331 F.3d at 1133 ("Even if the issuing court modifies the protective order, it does not decide whether the litigants will ultimately obtain the discovery materials.").[3]

## 2.      Plaintiffs Have Not Established Relevance Under The Proper Legal Standard

Plaintiffs raise two distinct relevancy arguments, neither of which is persuasive. *First*, they appear to argue that—even beyond the six broad categories of information they have now identified—this case is so similar to the ITC action that any discovery produced in the former is necessarily relevant to the latter.  Mot. 16-17.[4]  As discussed above, this Court has already rejected this argument.  *See supra* pp. 5-6.  This is for good reason.  It is undisputed that Plaintiffs have asserted different patents in this case than in the ITC action.  And even if Plaintiffs had asserted identical patents in both proceedings, this Court has stayed discovery on Plaintiffs' patent infringement claims, meaning that the discovery that Plaintiffs seek to port over to the ITC proceeding is limited to (A) whether Apple misappropriated Plaintiffs' purported trade secrets (e.g., in Apple Watch SE and Series 3-7) and (B) whether Plaintiffs are entitled to correction-of-inventorship or damages.  In contrast, the ITC action is narrowly focused on two entirely different issues—whether two specific Apple products (the Apple Watch Series 6 and 7) infringe five of Plaintiffs' patents and whether Plaintiffs have established a domestic industry practicing those patents.  *See supra* p. 4.

---

[3] Plaintiffs also rely on a cursory and unpublished district court decision from the Eighth Circuit, which is not governed by the *Foltz* test and thus says nothing about the state of Ninth Circuit law.  *See Streck Inc. v. Research & Diagnostic Sys., Inc.*, 2008 WL 2813081 (D. Neb. July 18, 2008).  In any event, *Streck* found that the collateral proceeding at issue was "related by virtue of the patents and subject matter."  *Id.* at *2.

[4] This argument is copied almost word-for-word from Plaintiffs' prior, losing motion. *Compare* Mot. 16-17 ("[T]he allegations in this case and the ITC Investigation overlap such that discovery in this case is likely to be relevant in the ITC Investigation."), *with* Dkt. 506 at 6-7 ("The allegations in this case and the ITC Investigation overlap such that discovery in this case is likely to be relevant in the ITC Investigation.").

Wilmer Cutler Pickering Hale and Dorr LLP

Plaintiffs' citation of a handful of overlapping allegations between the district court and ITC actions (Mot. 16) does not establish that a substantial amount of duplicative discovery could be *avoided* by modifying the protective order—particularly given that Apple has *already* produced 64,000 overlapping pages in the ITC. *See supra* p. 4. Plaintiffs' (false) accusations that O'Reilly and Lamego stole their unpatented technology are irrelevant to whether Apple infringed the specific claim limitations of the five published patents at issue in the ITC. If Plaintiffs truly believed that their trade secret claims involved the same technology covered by the ITC patents, they would not have a viable misappropriation claim. *See Stutz Motor Car of Am., Inc. v. Reebok Int'l*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995) ("It is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain."); *see also Attia v. Google LLC*, 983 F.3d 420, 425-426 (9th Cir. 2020) (same rule for "publication of information in a patent application"). And while the ITC and district court cases happen to involve two of the same accused products, that means that most of the product information that Apple has produced in this case (i.e., for Apple Watch SE and Series 3-5) is not relevant to the ITC matter.

Plaintiffs also argue that there have been overlapping duplicative requests across the two cases. Mot. 16-17. But out of the 592 requests for production that Plaintiffs have filed in the district court, they have identified just *8* that overlap with the requests filed in ITC matter. *See id.*; *supra* pp. 2-4. This Court has already held that mere fact that there is "any" overlap in discovery does not resolve the relevancy inquiry, *see supra* p. 5, and Plaintiffs make no attempt to respond to this ruling.

*Second*, Plaintiffs argue that "at least" six expansive categories of discovery satisfy *Foltz's* relevancy test. Mot. 16. Plaintiffs' broad requests do not comply with this Court's prior instruction to identify particular documents and particular categories.

Category 1:  Plaintiffs seek "[d]ocuments regarding the structure, including hardware, software, and firmware, and function of the accused product(s) in the ITC

1   Investigation and components thereof." Mot. 8-10; Ex. 19 at 1. While Plaintiffs argue

2   that this category is relevant to the ITC infringement case, Mot. 8-9, many of the specific

3   documents that Plaintiffs have cited as examples that should be produced either fall

4   outside of this category (because they involve products, like Apple Watch Series 4-5,

5   that are not at issue in the ITC action) or are not relevant to whether the accused products

6   infringe (because they do not reflect a technical description of Apple Watch Series 6 or

7   7). *See* Ex. 20 at 2. Plaintiffs have also requested several documents that reflect

8   potential future Apple Watch products. *Id.* As such documents are currently the subject

9   of a motion to compel in the ITC, this request appears to be an improper attempt to

10  "subvert limitations on discovery in another proceeding." *Foltz*, 331 F.3d at 1132; *see*

11  *supra* pp. 7-8.

12       Plaintiffs have no response to these objections. Nor have they attempted to reach

13  a compromise with Apple on a narrower request that satisfies *Foltz*, even though Apple

14  has already agreed to produce more than a dozen of the documents Plaintiffs have

15  identified as falling into this category. Ex. 20 at 2.[5] Despite Plaintiffs' representations

16  to the contrary, Apple's January 19 letter *agreed* to produce all nine of the specific

17  exhibits discussed in Plaintiffs' motion. *Compare* Mot. 10 (citing Exhibits 25, 26, 27,

18  28, 30, 31, 34, 35, and 37) *with* Ex. 20 at 2. In short, Apple reviewed the specific

19  documents Plaintiffs identified as purportedly within this category and agreed to produce

20  those relevant to the ITC matter. It makes little sense to modify the Protective Order to

21  include a broad category of additional—and irrelevant—documents, where Plaintiffs

22  could simply file a motion to compel with the ALJ to seek the same materials.

23       Category 2:  Plaintiffs seek "[d]ocuments regarding testing of the components

24

25  _____

26  [5] Plaintiffs here and elsewhere suggest that Apple's willingness to compromise should
    be viewed as a concession that *all* documents Plaintiffs seek are relevant. *E.g.*, Mot.
26  10. Apple's letter, however, expressly stated that it was not "conced[ing] relevance"
    but was simply attempting to resolve the dispute without involving this Court. Ex. 20
27  at 2.

28

described in [category] Number 1 …, including specifications, test, procedures, test results, and comparisons with products made by Masimo, Cercacor or others." Ex. 19 at 2; Mot. 10-11. While Plaintiffs vaguely contend that this category is relevant to patent infringement, Mot. 10, Apple has already agreed to produce—and is producing—the technical design documents for Apple Watch Series 6 and 7 in the ITC action, including specifications and testing documents relevant to Plaintiffs' infringement allegations, Ex. 20 at 3. Plaintiffs have not explained why Apple's production has been insufficient or why this Court should amend the Protective Order to supersede the parties' agreement regarding what documents will be produced——i.e., a limitation on discovery in the collateral proceeding.

Moreover, Plaintiffs' bald assertion that all documents that fall into this broad category are relevant to "secondary considerations of non-obviousness, such as failure of others and copying," Mot. 11, makes little sense. Apple has already agreed to produce documents that refer to either the patents asserted in the ITC or any publicly available Apple products Plaintiffs assert practice those patents (to the extent that any exist). Ex. 20 at 5. To the extent that Plaintiffs believe that documents related to *earlier* Apple Watch products not at issue in the ITC are relevant to the "failure of others" obviousness consideration, (1) they have not explained why that is so and (2) the discovery material produced to date regarding the trade secret claims necessarily involves *different* technology than what's at issue in the ITC matter. *See supra* p. 11.

Again, Plaintiffs have no response to these objections. While Plaintiffs highlight two documents they believe are particularly relevant, Mot. 11 (citing Exs. 30, 40), they ignore that Apple has already to agree to produce Ex. 30, *see supra* p. 12. To the extent Plaintiffs believe Exhibit 40 should also be produced in the ITC action, their motion does not explain why that is so, beyond the fact that (in Plaintiffs' subjective view) it falls within category 2. *See* Mot. 11. Regardless, that a single document could be

Wilmer Cutler
Pickering Hale
and Dorr LLP

relevant is not a reason for this Court to conclude that every document that could fall within category 2 is relevant.

Category 3: Plaintiffs seek "[d]ocuments regarding any problems with the accuracy of SpO2 measurements of Series 6 or Series 7." Mot. 11-12; Ex. 19 at 2.

While Plaintiffs contend that this information is relevant to the ITC's bond determination, Mot. 11-12, the purpose of such a bond is to protect Plaintiffs "from any injury" from continued importation during the President's 60-day period to review an ITC finding of infringement, *see* 19 U.S.C § 1337(j)(3). Plaintiffs cannot and do not identify any injury they will suffer that would make the short-term bond contemplated under (j)(3) appropriate. Plaintiffs relatedly assert that the importation of Apple's products will "harm the public trust in the accuracy of SpO$_2$ measurements generally," but that generalized concern goes to a different question—whether the public interest favors excluding the accused products from the United States. *See Spansion, Inc. v. ITC*, 629 F.3d 1331, 1358 (Fed. Cir. 2010) ("By statute, the Commission is required to issue an exclusion order upon the finding of a Section 337 violation absent a finding that the effects of one of the statutorily-enumerated public interest factors counsel otherwise.); *see also* 19 U.S.C. § 1337(d)(1) (listing factors). As Apple has explained (and Plaintiffs do not dispute), the ALJ in the ITC action was (at Plaintiffs' urging) not delegated the authority to take evidence on the public interest factors. Ex. 20 at 3-4. Accordingly, any argument about the public interest factors is irrelevant to the current proceedings in front of the ALJ and accordingly beyond the scope of discovery.

Plaintiffs also assert for the first time that this category is relevant to "secondary considerations of nonobviousness, including failure of others." *Compare* Mot. 11 *with* Ex. 19 at 2 ███████████████████ But Plaintiffs have not met their burden to explain why that is, particularly given that the majority of the patents were filed in 2020 and *after* Apple Watch Series 6 was launched. Ex. 20 at 3. Moreover, given that Plaintiffs allege that Apple Watch Series 6 and 7 use the patents asserted in the ITC,

---

under Plaintiffs' own logic any accuracy problems with those products would reflect a failure of *Plaintiffs'* patents—not a failure of other inventors.

Category 4:  Plaintiffs seek "Apple's communications with the FDA relating to the blood oxygen and/or pulse rate features of its Apple Watch products."  Mot. 12-13; Ex. 19 at 2.  But as Plaintiffs themselves acknowledge, the parties have—after extensive discussion—*already* reached an agreement on what FDA-related documents should be produced in the ITC.  Mot. 13; *see also* Ex. 20 at 4.  Accordingly, to the extent Plaintiffs' request parallels the ITC agreement, it is moot.  And to the extent that Plaintiffs seek a broader range of documents, that request should be rejected as an attempt to "subvert limitations on discovery in [the ITC] proceeding."  *Foltz*, 331 F.3d at 1132; *see supra* pp. 7-8.

Category 5:  Plaintiffs seek "[i]nternal Apple communications regarding Masimo, its employees, its technology, and its patents."  Mot. 13-15; Ex. 19 at 2.  Plaintiffs, however, have not identified any specific exemplar document that overlaps with the narrow issues in the ITC matter (and thus would establish that modifying the protective order with regards to this category would avoid a substantial amount of duplicative discovery).  Rather, 13 of the 14 documents Plaintiffs raised during the meet and confer involved Apple's employee hiring practices and the 14th involved a potential business collaboration between Plaintiffs and Apple.  *See* Ex. 20 at 4-5.

Plaintiffs have no persuasive response.  They argue that this category of documents is relevant to show that the five patents asserted in the ITC were the subject of "commercial success and industry praise."  Mot. 13.  But the *subjective* views of one—or even a small handful—of Apple employees is hardly "objective evidence" regarding the thinking of an entire industry and says nothing about how commercially successful a concept has been.  *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA*, *Inc.* 699 F.3d 1340, 1350 (Fed. Cir. 2012) (considering sales data and customer feedback to determine commercial success and formal statements—in a

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   position paper and magazine articles—to determine industry praise).  Moreover, for such

2   evidence to be entitled to any weight, Plaintiffs would have to establish the high-level

3   statements in the hiring documents have a nexus to the ITC patents—i.e., the purported

4   praise or success is "'reasonably commensurate with the scope of the claims.'"  *See*

5   *Classco Inc. v. Apple, Inc.*, 838 F.3d 1214, 1220 (Fed. Cir. 2016).  They have not even

6   attempted to make that showing, nor could they.

7       Plaintiffs also argue that these documents could show an intent to copy and that

8   Apple was aware of their patented technology well before the patents at issue in the ITC

9   were filed.  Mot. 13-14.  But since the documents produced in district court discovery to

10  date necessarily involve different technology from the patents asserted in the ITC (or

11  else Plaintiffs would lack a viable trade secret claim, *see supra* p. 11), they provide no

12  insight into Apple's purported awareness of or intent to copy the ITC patents.  And in

13  any event, Apple has already agreed to produce any documents that reference the ITC

14  patents (again, if any exist).  *See supra* p. 13.

15      Plaintiffs also contend that documents in this category are relevant because they

16  can be used to rebut Apple's argument in the ITC that Plaintiffs are "acting as non-

17  practicing entities" that do not market "competing products" to Apple Watch.  Mot. 13-

18  14.  But as Apple has explained, whether Plaintiffs market smartwatch products is

19  information that would be in *Plaintiffs'* control, not Apple's.  Ex. 20 at 5.  Even the three

20  cherry-picked examples quoted in Plaintiffs' motion—all of which are from internal

21  hiring emails that predate the launch of Apple Watch Series 6 by six years—say nothing

22  about whether Plaintiffs actually manufacture a competitive product.

23      Category 6:   Plaintiffs seek "[d]ocuments about the locations where Apple

24  conducts its engineering validation testing ('EVT') for its Apple Watch products and the

25  results of such testing."  Mot. 15; Ex. 19 at 3.  Plaintiffs argue that documents in this

26  category are relevant because they could help show that Apple is importing its Apple

27  Watch products into the United States.  Mot. 15.  But Apple has admitted importation in

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

its response to the complaint in the ITC investigation and further stipulated to the importation of the products at issue—Apple Watch Series 6 and 7. *See* Ex. 20 at 5-6. Plaintiffs have not responded to this point, which is not surprising because Plaintiffs need no documents to prove a point to which Apple has admitted.

Plaintiffs also appear to contend that this category of documents is relevant because it could be used to identify Apple products *beyond* Apple Watch Series 6 and 7 that allegedly practice the ITC patents. Mot. 15. That information, however, is the subject of a pending motion to compel in the ITC that Plaintiffs should not be permitted to circumvent via a modification of the Protective Order. *See supra* pp. 4-5, 12.

**B.      Apple Would Suffer Significant Prejudice From Either Of Plaintiffs' Requests For Relief**

**1.      This Court Should Not Modify The Protective Order To Permit Cross-Use**

As Apple has explained in the prior motion, it would suffer significant prejudice if the Protective Order is modified because Apple has relied on Section 5.1 in producing documents and discovery responses in this litigation. *See* Dkt. 511 at 10-11. Changing course now undermines Apple's reliance on the understanding that its discovery would not be taken and used—out of context—in collateral litigation involving different claims, different issues, and a different set of products. Dkt. 511 at 10-11 (collecting cases); *see also supra* p. 8.

This Court previously credited these objections, explaining that (1) Apple's "reliance on" the protective order "is real" and (2) the protective order in the ITC is not "coextensive with the protective order in this case" and is a "lesser protective order." Ex. 16 at 10-11, 16-17, 29; *see also supra* pp. 5-6. In the months since Plaintiffs' first cross-use motion was filed, moreover, the potential for Apple's confidential information to be exposed has only increased. Apple has now produced 1.8 million pages of material in reliance on Section 5.1 limiting the use of those documents to this case. *See supra*

Wilmer Cutler
Pickering Hale
and Dorr LLP

pp. 2-3.  And although Plaintiffs have tweaked the terms of their request to modify the Protective Order, the switch from requesting use of *all* Apple documents in the ITC matter to requesting all Apple documents in six incredibly broad and largely irrelevant categories is a difference in degree, not kind.

Plaintiffs barely acknowledge this past history or this Court's specific findings that (1) Apple relied on Section 5.1 and (2) the ITC order is different in scope.  Mot. 17. Their recitation of the relevant case law is lifted nearly verbatim from their prior briefing, which this Court rejected.  *Compare* Mot. 18 ("The case law is also clear that a party has little or no reliance interest in protective orders that, like the order in this case, apply to any document that a party designates.") *and id.* 18-19 ("[M]ost cases addressing prejudice and cross-use disputes involve disclosure to *others* not involved in the original case."), *with* Dkt. 513 at 9 ("But the case law is clear that a party has little or no reliance interest in blanket protective orders.") *and* Dkt. 506 at 7-8 ("Most cases addressing prejudice and cross-use disputes involve disclosure to *others* not involved in the original case.").

Plaintiffs only appear to make two new arguments for why this Court should overturn its prior findings.  Plaintiffs first contend that they have resolved this Court's concerns about Apple's reliance interests by removing any request for Apple's source code.  Mot. 17.  That is hardly a significant concession by Plaintiffs.  As Plaintiffs well know, Apple has produced source code for Apple Watch Series 6 and 7 in the ITC action, as it has in the district court action.  In any event, while the exposure of Apple's highly sensitive source code would be *one* type of confidential information threatened by Plaintiffs' motion, nothing in Apple's prior briefing or this Court's ruling suggested it was the *only* kind.  Even one of the transcript passages that Plaintiffs rely on for this point shows that the parties disputed "scores" of the Protective Order's provisions, including (1) which in-house counsel, vendors, and outside counsel could view protected

Wilmer Cutler
Pickering Hale
and Dorr LLP

information and (2) the scope of the prosecution bar.  *See* Ex. 16 at 8:16-9:11; *see also* Mot. 17 (citing Ex. 16 at 9:2-11).

Plaintiffs also argue that the ITC Protective Order is more stringent than the Order in this case.  Mot. 17-18.  However, they do not address this Court's key concern—that the ITC Order does not include the same protections for disclosure of Apple's confidential information to vendors, government technical experts, and the other government personnel who have access to the ITC materials.  *See* Ex. 16 at 16 ("I can't order an ALJ to follow my protective order or other vendors who get access to it.").

## 2. This Court Should Not Modify The Protective Order To Permit The ITC ALJ To See *All* Documents

Plaintiffs argue in passing that this Court should at least permit them to show the ALJ any document that Plaintiffs choose, even if it falls outside one of the six categories discussed above.  Mot. 20-21; *see also* Dkt. 568 at 2 (proposing Order be amended to allow parties to "file and show Protected Material to the" ALJ).  Plaintiffs are simply wrong when they say that this Court suggested this approach as a form of "alternative relief."  Mot. 20.  This Court expressly stated that it was "concerned about [Plaintiffs] putting … in a filing to the ALJ that says '[t]hey produced this document in this other case.  They haven't produced it here.  We want it in this case.'"  Ex. 16 at 40.  This concern is well-founded.  As Apple has previously explained, permitting Plaintiffs to simply dump thousands of documents into the ITC record will force Apple to address wide swathes of irrelevant material (including its own material), and cause the ALJ to expend significant resources reviewing those documents.  Dkt. 511 at 10, 11-12.  And as Apple's counsel explained during the prior hearing, it would also violate the terms of the Protective Order as currently written.  Ex. 16 at 41.

At most, this Court suggested that it would "consider" authorizing Plaintiffs to use their knowledge of documents in the district court case to make targeted requests in the ITC matter *if* Plaintiffs provided it with more "data" on issues like "how many

Wilmer Cutler
Pickering Hale
and Dorr LLP

confidential documents there are" and "generally speaking how many [Plaintiffs] think" are going to be relevant to the ITC matter." Ex. 16 at 41-42.  Plaintiffs have failed to come forward with that information and instead are asking for yet another blanket exception to the Protective Order that raises the same basic concerns as Plaintiffs' prior motion.

## C.      Plaintiffs Should Not Be Rewarded For Their Delay

Near the end of their brief, Plaintiffs suggest that it would be inequitable to require them to make cross-use requests on a document-by-document basis. Mot. 19-20. Setting aside that Apple has followed this approach for months without issue, *see* Dkt. 511 at 13, Plaintiffs have another remedy that they have already employed in several instances: filing targeted motions to compel in the ITC, *see supra* pp. 4-5, 12.

To be clear, Plaintiffs could have avoided this rushed motion by taking this Court's advice and meeting and conferring with Apple immediately or within days following the November 2021 cross-use hearing.  Instead, (1) Plaintiffs waited a month for a document that was fully within their ability to prepare, (2) waited three weeks more to send Apple an initial letter about the cross-use issue, and (3) filed this motion within one day of receiving Apple's initial response and without attempting to negotiate a more narrowly targeted request.  If Plaintiffs are dissatisfied with their current situation, they have only themselves to blame.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, Apple respectfully requests that this Court deny Plaintiffs' motion to modify the Protective Order.

Dated:  January 27, 2021

Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN ANDREA
GIBSON, DUNN & CRUTCHER LLP

MARK D. SELWYN
WILMER CUTLER PICKERING
  HALE AND DORR LLP


By:  */s/* Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*