1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Benjamin A. Katzenellenbogen (Bar No. 208527)
   ben.katzenellenbogen@knobbe.com
4  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
5  Stephen W. Larson (Bar No. 240844)
   stephen.larson@knobbe.com
6  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   2040 Main Street, Fourteenth Floor
7  Irvine, CA 92614
   Telephone: (949) 760-0404; Facsimile: (949) 760-9502
8
   Adam B. Powell (Bar. No. 272725)
9  adam.powell@knobbe.com
   Daniel P. Hughes (Bar No. 299695)
10 Daniel.hughes@knobbe.com
   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
11 3579 Valley Centre Drive
   San Diego, CA 92130
12 Telephone: (858) 707-4000; Facsimile: (858) 707-4001

13 [Counsel appearance continues on next page]

14 Attorneys for Plaintiffs,
   MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

15          IN THE UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                    SOUTHERN DIVISION

18

19 MASIMO CORPORATION,                    ) Case No. 8:20-cv-00048-JVS-JDE
   a Delaware corporation; and            )
20 CERCACOR LABORATORIES, INC.,           ) **REPLY MEMORANDUM IN**
   a Delaware corporation                 ) **SUPPORT OF MOTION TO**
21                                         ) **MODIFY THE PROTECTIVE**
            Plaintiffs,                    ) **ORDER (DKT. 67)**
22                                         )
       v.                                  ) [Discovery Document: Referred to
23                                         ) Magistrate Judge John D. Early]
   APPLE INC., a California corporation    )
24                                         ) Date:    February 17, 2022
            Defendant.                     ) Time:    10:00 a.m.
25                                         ) Ctrm:    6A
                                           )
26                                         ) Discovery Cut-Off:     3/7/2022
                                           ) Pre-Trial Conference:  11/21/2022
27                                         ) Trial:                 12/6/2022

28 REDACTED VERSION OF DOCUMENT
   PROPOSED TO BE FILED UNDER SEAL

1  Mark D. Kachner (Bar No. 234,192)
   mark.kachner@knobbe.com
2  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   1925 Century Park East, Suite 600
3  Los Angeles, CA 90067
   Telephone: (310) 551-3450
4  Facsimile: (310) 551-3458

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ............................................................................................ 1

II.   ARGUMENT .................................................................................................. 2

    A.    Masimo Has Shown The Requested Discovery Is Relevant ..................... 2

        1.    Apple's Proposed Legal Standard Is Incorrect ................................. 2

        2.    The Six Categories Of Documents Masimo Identified Are Relevant ........................................................................................ 4

            a.    Category 1 – Technical Documents ....................................... 4

            b.    Category 2 – Testing Documents ........................................... 5

            c.    Category 3 – Documents About $SpO_2$ Accuracy ................. 7

            d.    Category 4 – FDA Documents ............................................... 8

            e.    Category 5 – Documents About Masimo ............................... 8

            f.    Category 6 – Engineering Validation Testing Documents .............................................................................. 11

        3.    The *Foltz* Requirements Support Granting the Motion ................. 12

    B.    Apple Has Not Shown Any Prejudice ...................................................... 14

        1.    Apple Fails To Identify Any Deficiency In The ITC Protective Order ............................................................................. 14

        2.    Apple's Other Prejudice Arguments Lack Merit ........................... 16

    C.    The Court Should At Least Grant Masimo's Alternative Request ...................................................................................................... 18

    D.    Apple's Document-By-Document Proposal Lacks Merit ........................ 18

    E.    Apple's Other Arguments Lack Merit ..................................................... 19

III.  CONCLUSION ............................................................................................. 20

1

## TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*Apple Inc. v. Samsung Elecs. Co.,*
5
    839 F.3d 1034 (Fed. Cir. 2016) ....................................................... 6, 8, 10

6

*AT&T Corp. v. Sprint Corp.,*
    407 F.3d 560 (2d Cir. 2005) .............................................................. 3, 4
7

*Attia v. Google LLC,*
8
    983 F.3d 420 (9th Cir. 2020) ................................................................ 12

9

*In the Matter of Certain Hybrid Electric Vehicles and Components Thereof,*
10
    2017 WL 2303742 (USITC May 23, 2017) ............................................ 6

11

*In the Matter of Certain Hybrid Electric Vehicles and Components Thereof,*
12
    2017 WL 4350335 (USITC Sept. 15, 2017)............................................ 6

13

*In re Certain Light-Based Physiological Measurement Devices and Components*
14
    *Thereof,*
    ITC Inv. No. 337-TA-1276...............................................................*passim*
15

*ClassCo, Inc. v. Apple, Inc.,*
16
    838 F.3d 1214 (Fed. Cir. 2016) ....................................................... 9, 10

17

*Cummins-Allison Corp. v. SBM Co.,*
18
    2013 WL 12250448 (D. Haw. Nov. 8, 2013)........................................ 15

19

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,*
20
    255 F.R.D. 308 (D. Conn. 2009) ........................................................... 4

21

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
22
    331 F.3d 1122 (9th Cir. 2003) .........................................................*passim*

23

*Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.,*
24
    674 F.2d 1336 (9th Cir. 1982) ....................................................... 12, 13

25

*Immunex Corp. v. Sanofi,*
26
    2018 WL 11211727 (C.D. Cal. Jan. 18, 2018)...................................... 14

27

*Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino,*
    738 F.3d 1337 (Fed. Cir. 2013) .......................................................... 10
28

1

## TABLE OF AUTHORITIES
### (*cont'd*)

2

3

**Page No(s).**

4
5

*Jepson, Inc. v. Makita Elec. Works, Ltd.*,
    30 F.3d 854 (7th Cir. 1994) ................................................................ 14, 16

6
7

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
    941 F.3d 1133 (Fed. Cir. 2019) ................................................................ 10

8
9

*Masimo Corp. v. True Wearables Inc.*,
    2021 WL 2548690 (C.D. Cal. Apr. 28, 2021) ........................................... 12

10

*Masimo Corp. v. True Wearables, Inc.*,
    2022 WL 205485 (Fed. Cir. Jan. 24, 2022) ............................................... 12

11
12

*Millennium Labs., Inc. v. Allied World Assurance Co., Inc.*,
    2017 WL 4810181 (S.D. Cal. Oct. 24, 2017) ............................................ 12

13
14

*Old Chief v. U.S.*,
    519 U.S. 172 (1997) ..................................................................................... 11

15
16

*Qualcomm Inc. v. Apple Inc.*,
    2019 WL 4284531 (S.D. Cal. Mar. 27, 2019) ............................................ 16

17
18

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
    2008 WL 2813081 (D. Neb. July 18, 2008) .................................................. 3

19
20

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012) .................................................................... 9

21
22

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) .................................................................... 5

23

*Universal Ent. Corp. v. Aruze Gaming Am., Inc.*,
    2020 WL 2308226 (D. Nev. May 8, 2020) ...................................... 3, 18, 19

24
25

*Vanda Pharms., Inc. v. Food & Drug Admin.*,
    539 F. Supp. 3d 44 (D.D.C. 2021) ................................................................ 4

26
27

*Verizon California Inc. v. Ronald A. Katz Tech. Licensing L.P.*,
    214 F.R.D. 583, 586 (C.D. Cal. 2003) .......................................................... 3

28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Wilk v. Am. Med. Ass'n,*
635 F.2d 1295 (7th Cir. 1980) .................................................................... 5

## OTHER AUTHORITIES

19 CFR § 210.27 ........................................................................................ 14

Fed. R. Civ. P. 26 ...................................................................................... 14

Fed. R. Evid. 401 ............................................................................. 6, 9, 10

8A Wright & Miller, *Federal Practice & Procedure Civ.* (3d ed.) ........................ 3, 15

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (jointly, "Masimo") submit this reply in support of their Motion to Modify the Protective Order.

## I. <u>INTRODUCTION</u>

Apple does not dispute many key facts. Apple agrees discovery here will overlap with discovery in *In re Certain Light-Based Physiological Measurement Devices and Components Thereof*, ITC Inv. No. 337-TA-1276 (the "ITC Investigation"). Apple agrees the categories of documents discussed in the Motion will also overlap. Apple does not contest that both cases involve the same parties, the same lawyers, the same general technology, and overlapping accused products. Rather, Apple argues Masimo must show "all" documents in each category are relevant to the ITC Investigation. Apple cites no authority supporting such a requirement and this Court already rejected the same argument. As the Ninth Circuit explained, the Court makes a "rough estimate" of relevance because the ultimate relevance determination will be made by the Administrative Law Judge ("ALJ") in the ITC Investigation.

Apple's factual arguments fare no better. Apple argues it agreed to produce some documents in the ITC Investigation, but Apple cannot defeat the Motion with vague promises to produce some documents. More importantly, Apple's argument shows it will suffer no prejudice because it *agrees* the ITC protective order is sufficient to protect the type of information at issue in this Motion. Indeed, Apple has never identified *any* alleged deficiency in the ITC protective order. Apple argues some documents should be entitled to little weight at trial, but Apple's opinions of relevance are not a basis to deny this Motion. The Court should grant the Motion so the ALJ can determine if the documents are admissible and their weight at trial.

Apple also raises several other arguments in an apparent attempt to divert from the merits. For example, Apple argues Masimo both unduly delayed the Motion *and* filed it too quickly. Apple also faults Masimo for not responding to all of Apple's assertions in a meet-and-confer letter. Such arguments are not relevant, but Masimo addresses them at the end of this brief for completeness.

## II.  ARGUMENT

### A.   Masimo Has Shown The Requested Discovery Is Relevant

Apple argues Masimo applied the incorrect legal standard and has not shown relevance under the "proper" standard.  Opp. at 10.  Apple is wrong on both points.

#### 1.   Apple's Proposed Legal Standard Is Incorrect

Apple argues Masimo relied on the incorrect legal standard because the Court "rejected a reading of the case law under which '*any overlap*' in the issues or discovery between two proceedings satisfies the relevancy requirement."  Opp. at 8.[1]  Masimo did *not* argue "any overlap" was enough.  Masimo correctly argued it must "demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein."  Mot. at 6 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)).  Apple—not Masimo—advocates for a standard the Court rejected.  Specifically, Apple argues Masimo must show "all documents" or "every document" in a category is relevant to the ITC Investigation.  *See* Opp. at 12-14. The Court rejected Apple's argument that "there needs to be complete or near-complete overlap between the issues and discovery" in the two cases.  Ex. 16 at 7:12-19.

Apple also claims *Foltz* held "protected materials *must be* 'sufficiently relevant to the collateral litigation that a *substantial amount* of duplicative discovery will be avoided.'"  Opp. at 7 (quoting *Foltz*, 331 F.3d at 1132).  *Foltz* did not hold the movant "must" make such a showing.  Indeed, Apple elsewhere points to cases granting cross-use motions when most of the discovery did *not* overlap.  *See* Opp. at 9 (Apple arguing *Verizon* granted a motion where only "four" documents overlapped).  The sentence from *Foltz* that Apple partially quotes begins with the phrase "the case law suggests" and then cites cases from other circuits addressing *sufficient* showings of relevance.  *Foltz*, 331 F.3d at 1132.  *Foltz* never *required* such showings.  Instead, *Foltz* explained this Court makes a "rough estimate" of relevance because the collateral court decides the issue.  *Id.*

---

[1] Unless noted otherwise, emphasis is added and exhibits are attached to the Powell Declaration (Dkt. 507) and Supplemental Powell Declaration (submitted herewith).

Apple is likewise incorrect in arguing Masimo's cited authorities support a "robust" relevance inquiry.  *See* Opp. at 9.  Apple crops a quote from *Universal* in arguing that case declined to modify a protective order "where there was insufficient evidence of 'overlap of facts and issues between the two cases.'"  Opp. at 9.  *Universal* actually denied the motion on one collateral case because "***Defendants*** fail[ed] to discuss ***any*** overlap of facts and issues between the cases."  *Universal Ent. Corp. v. Aruze Gaming Am., Inc.*, 2020 WL 2308226, at *4 (D. Nev. May 8, 2020).   The court ***granted*** the motion for a second collateral case by conducting a "rough estimate" and finding discovery was "relevant enough."   *Id.* at *4.  Apple claims *Verizon* held the discovery was "relevant to the [collateral] action, which concerns claims or issues similar to those raised in the instant action."  Opp. at 9.  Apple does not explain how that quote supports its proposed "robust" standard.  *Verizon* estimated relevance and found the "claims or issues" in both cases were "similar."  214 F.R.D. 583, 586 (C.D. Cal. 2003).[2]

Apple next denigrates *Streck* as "cursory" and "from the Eighth Circuit."  Opp. at 10, n.3.  That case actually contained a detailed discussion of legal authorities from various circuits and found the plaintiff should prevail "regardless of the standard."  *See Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 2008 WL 2813081, at *3 (D. Neb. July 18, 2008) (finding plaintiff demonstrated a sufficient need for the documents and "defendants have shown no recognizable interest in preventing the disclosure").

Finally, Apple cites a Second Circuit case and argues cross-use should be denied if discovery in the collateral case would be "subverted" by the motion.  Mot. at 7 (citing *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005)).  But Apple's other cited authority explained the Second Circuit applies a "***very restrictive***" standard and the "prevailing approach" is "more receptive" to modification.  *See* 8A Wright & Miller, *Federal Practice & Procedure Civ.* § 2044.1 (3d ed.).  Apple also ignores that *AT&T*

---

[2] Apple argues Masimo tried to "downplay" Apple's quotation from *Verizon*.  Opp. at 9. The brief Apple cites addressed a ***different*** argument Apple had made, that *Verizon* supposedly addressed a "mirror image" collateral case.  *See* Dkt. 513 at 4.

1    found the movant was trying to "circumvent the *close of discovery*."  407 F.3d at 562.

2    *AT&T* does not support Apple's argument that cross-use motions should be denied if

3    parties can move to compel in the collateral case.  *See* Opp. at 4, 12.  Indeed, other courts

4    have distinguished *AT&T* and rejected the same argument Apple advances.  *See Vanda*

5    *Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 51 (D.D.C. 2021); *In re*

6    *Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 316 (D.

7    Conn. 2009).  That makes sense because a motion to compel is almost always available

8    in a collateral case, so Apple's argument would defeat cross-use in almost *all* cases even

9    though the Ninth Circuit "strongly favors" cross-use.  *See Foltz*, 331 F.3d at 1131-32.

10            Accordingly, Apple's proposed legal standards are incorrect.  As *Foltz* explained,

11    courts make only a "rough estimate" of relevance because the collateral court (here, the

12    ITC) is the ultimate arbiter of relevance.[3]  Masimo more than satisfied that standard.

13            **2.      The Six Categories Of Documents Masimo Identified Are Relevant**

14            Apple complains Masimo identified "no authority" for its category-by-category

15    approach.  Opp. at 1.  The Court suggested that approach.  *See* Ex. 16 at 19:13-17, 24:4-

16    26:9.  Apple claims the Court "never suggested that any category would do" (Opp. at 1),

17    but Masimo did not identify just "any category."  As discussed below, Masimo identified

18    specific categories of relevant documents.  Apple's arguments lack merit.

19            **a.      Category 1 – Technical Documents**

20            Category 1 seeks technical documents about the accused products in the ITC

21    Investigation.  Proposed Order at 1.  Apple quotes only part of this category and ignores

22    substantial detail.  *See id.*  Regardless, Apple does not dispute the relevance of this

23    category.  In fact, Apple *agreed* to produce some documents in this category.   Opp. at

24    12.  Apple argues the Motion should be denied because Apple will produce documents

25

26    _____

      [3] *Foltz* explained the collateral court would resolve the third-party intervenor's request.
27    331 F.3d at 1132.  As explained below, that is not necessary in cases like this one that
      involve the same parties who already have the discovery.  *See infra* Section II.B.1.  The
28    ITC will address relevance in deciding admissibility.

it believes are "relevant to the ITC matter." *Id.* The ALJ—not Apple—should determine relevance. The ALJ should also be permitted to make that determination when viewing the documents, just as this Court did with the Lamego-Cook email. *See* Ex. 5 at 12-32.

Apple argues Masimo should move to compel in the ITC if Apple fails to produce all "relevant" documents in this category. Opp. at 12. As discussed, Apple cites no authority supporting that proposition. *See supra*, Section II.A.1. Indeed, forcing Masimo to move to compel on documents it already has would waste court resources and burden the parties. *See Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1301 (7th Cir. 1980) (rejecting attempt to "erect gratuitous roadblocks" to prevent discovery from one case from being used in another case); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) ("Defendants' desire to make it more burdensome for Intervenors to pursue their collateral litigation is not legitimate prejudice.").

Having failed to show the category as a whole is irrelevant, Apple implies the Motion should be denied unless Masimo can show ***all*** the documents in this category are relevant. *See* Opp. at 12, n.5 (arguing it did not concede "all documents Plaintiffs seek are relevant"). As discussed, that is not required. Apple also argues some examples cited in Masimo's meet-and-confer letter—not the Motion—do not fit within the category. Opp. at 12. That letter was based on a preliminary analysis of Apple's 1.8-million-page production. Regardless, showing that a few documents are ***not*** part of this category does not address the key issue: whether this category is relevant.

Apple argues some exemplary documents concern future products and the ALJ has not yet decided if those products are at issue. Opp. at 12. The issue is self-correcting because the category is limited to "accused products in the ITC Investigation." Proposed Order at 1. As a result, the ALJ's decision as to whether future products are at issue will define the scope of this category. The Court should grant the Motion on Category 1.

### b.   Category 2 – Testing Documents

Category 2 seeks "[d]ocuments regarding testing of the components described in Number 1 above, including specifications, test procedures, test results, and comparisons

with products made by Masimo, Cercacor, or others." Proposed Order at 1. Because this category is restricted to the "components described in Number 1 above," it again includes only documents regarding "accused products in the ITC Investigation."

Apple argues the Motion is unnecessary because Apple agreed to produce "technical design documents" for Apple Watch Series 6 and 7. Opp. at 13. Just because Apple produced **some** documents does not mean **others** are irrelevant. Apple also incorrectly claims Masimo is attempting to "supersede the parties' agreement" on producing documents (*id.*), but cites nothing to suggest the parties had such an agreement. As Masimo explained—and Apple does not contest—test documents are relevant to infringement because they describe the operation of the accused products. That alone is sufficient to show Category 2 is relevant.

Rather than address infringement, Apple focuses on secondary considerations of non-obviousness. On that issue, Apple suggests documents must specifically refer to "the patents asserted in the ITC or any publicly available Apple products Plaintiffs assert practice those patents (to the extent that any exist)." Opp. at 13. But Apple does not explain why this category should be so limited. Documents need not mention the asserted patents. *See Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1053-54 (Fed. Cir. 2016) (Apple successfully arguing documents about a technology that did not appear to mention patents were relevant to secondary considerations). Likewise, documents about the patentee and its products are also relevant. *See, e.g.*, *In the Matter of Certain Hybrid Electric Vehicles and Components Thereof*, 2017 WL 2303742, at *2 (USITC May 23, 2017) (respondent's "involvement" with complainant was relevant to "secondary considerations of non-obviousness (*e.g.*, copying)"); *In the Matter of Certain Hybrid Electric Vehicles and Components Thereof*, 2017 WL 4350335, at *8 (USITC Sept. 15, 2017) (respondent's decision to adopt complainants' technology was relevant).

As the Court explained, the standard for relevance at trial is broad and the standard for relevance in discovery is even broader. Ex. 74 at 11:11-14 ("Rule 401 is 'any fact that has any tendency to make another fact of consequence more or less likely is

relevant.'  And the definition of discovery is even greater than the definition of relevance for trial").  Documents comparing Apple's products to Masimo's products are relevant because they show copying and industry success is more probable than without them.

Rather than seriously contest relevance, Apple again argues Masimo has not shown "**all** documents" or "**every** document that could fall within category 2 is relevant." Opp. at 13, 14.  Again, that is not required.  Apple also argues one specific example document (Exhibit 40) is irrelevant.  *See* Opp. at 13.  While Masimo need not show "every" document is relevant, ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████

*See, e.g.*, Ex. 62 ('501 patent) at Claim 1 ("A user-worn device configured to non-invasively measure a physiological parameter of a user. . . ."); *id.* at Claim 6 ("wherein the physiological parameter comprises oxygen or oxygen saturation."). ████████████ ███████████████████████████████████████████████████████████████████████████

████████████████    The Court should grant the Motion on Category 2.

c.  **Category 3 – Documents About SpO₂ Accuracy**

Category 3 seeks "[d]ocuments regarding any problems with the accuracy of SpO$_2$ measurements of Series 6 or Series 7."  Proposed Order at 1.  Apple argues the ALJ is not considering "public interest factors" (Opp. at 14), but Masimo did not rely on public interest factors to argue relevance.  As Masimo explained, these documents are relevant at least to the bond determination and secondary consideration of non-obviousness.  Mot. at 11-12.  Apple's arguments on those two issues are not persuasive.

First, Apple argues—without citation or explanation—Plaintiffs "do not identify any injury" that would make a bond "appropriate."  Opp. at 14.  That ignores the Motion, which explained Apple's accuracy problems harm the public trust in SpO$_2$, thereby injuring Masimo's domestic industry and the sales of its domestic industry products. Mot. at 12.  Apple's disagreement on the merits is no basis to deny this Motion.

Second, Apple argues this category is not relevant to secondary considerations because some patents were filed after the launch of the Apple Watch Series 6.  Opp. at

14.  But the patents were continuations of applications Masimo filed long before the launch of the Series 6.  *See, e.g.*, Ex. 62 (claiming priority to 2008).  Apple cites no case suggesting that secondary considerations are irrelevant to continuation applications filed after the launch of the accused product.  Regardless, as Apple admits, other asserted patents were filed before Apple launched the Series 6 watch.  *See* Ex. 64 (filed in 2006).

Apple also argues accuracy problems with the accused products "reflect a failure of Plaintiffs' patents—not a failure of other inventors."  Opp. at 14.  But Apple itself has successfully argued a defendant's failure to "solve the same problem" was evidence of secondary considerations.  *Apple*, 839 F.3d at 1057.  Regardless, such merits arguments fail to show this category is irrelevant.  The ALJ should be able to see the documents and determine relevance.  The Court should grant the Motion on Category 3.

### d.    Category 4 – FDA Documents

Category 4 seeks "Apple's communications with the FDA relating to the blood oxygen and/or pulse rate features of its Apple Watch products."  Proposed Order at 1.  Apple again does not attempt to argue this category of documents is irrelevant.  Instead, Apple argues the Motion is unnecessary because it agreed to produce FDA documents in the ITC Investigation.  Opp. at 15.  While Masimo hopes Apple produces documents in this category, Masimo should be permitted to use anything that Apple omits.  Apple also implies Masimo might be secretly pursuing a broader category of documents.  Opp. at 15.  Apple offers no support for such speculation, and the scope of this category is clear.  The Court should grant the Motion on Category 4.

### e.    Category 5 – Documents About Masimo

Category 5 seeks "[i]nternal Apple communications regarding Masimo, its employees, its technology, and its patents."  Proposed Order at 2.  Apple does not even respond to Masimo's argument that these documents rebut Apple's prosecution laches defense.  That alone is sufficient to show Category 5 is relevant.

Apple claims this category is irrelevant to secondary considerations because the technology in the two cases is "necessarily . . . different."  Opp. at 16; *see also* Opp. at

-8-

1   11 (arguing technology cannot be subject to both patent and trade secret protection).  But

2   Apple admits both cases involve pulse oximetry.  As described below, Masimo has

3   patents and trade secrets on different parts of that technology.  *See infra* Section II.A.3.

4            Apple also claims this category is not relevant to industry praise and commercial

5   success.  Opp. at 16.  ███████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████████

11  █████████████████████████████████████████████████████   These statements

12  are undoubtedly relevant.  *See* Fed. R. Evid. 401(a) (relevant evidence "has **any**

13  **tendency** to make a fact [of consequence] more or less probable that it would be without

14  the evidence").  The ALJ should be allowed to see the documents to assess relevance.

15           Apple argues the ████████████████████████████████████   are not

16  "objective evidence" of the thinking of industry.  Apple appears to be confusing the

17  concepts of subjective / objective evidence with "objective indicia of non-obviousness."

18  Indeed, Apple's own cited authority **reversed** a district court for failing to consider the

19  **subjective** views of competitors and an inventor when considering obviousness.  *See*

20  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d

21  1340, 1351 (Fed. Cir. 2012).  ███████████████████████████████████████

22  ███████████████████████████████████████████████████████████

23           Apple also argues Masimo must demonstrate a "nexus" between each document

24  and the asserted patents before they are entitled to "any weight" at trial.  Opp. at 16.  But

25  Apple cites no authority suggesting each document must demonstrate a "nexus" to be

26  **discoverable** or subject to **cross-use**.  Apple cites one case that analyzed the evidence in

27  detail before holding the PTAB "erred in dismissing some of [patentee's] evidence" and

28  "properly discounted" other evidence.  *See ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214,

1220 (Fed. Cir. 2016).  Apple's argument and cited authority thus go to the **weight of evidence at trial**, which is a decision for the ALJ.  The Court should not allow Apple to prevent the ALJ from seeing this evidence merely because Apple believes it should be given little weight.

Apple next argues documents are not relevant to Apple's "intent to copy" because the documents do not mention the asserted patents.  Opp. at 16.  That is not required.  *See Apple*, 839 F.3d at 1053-54; *Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino*, 738 F.3d 1337, 1347-48 (Fed. Cir. 2013) (crediting general evidence of copying even though the patentee failed to connect that evidence to the claimed invention).  Indeed, the Federal Circuit held the PTAB erred in failing to consider evidence similar to the documents here.  *See Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1139 (Fed. Cir. 2019) (non-disclosure agreement, meeting between the parties, and "loss of interest in purchasing [patentee's] technology").  ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

The documents also include an early morning email from Marcelo Lamego telling Tim Cook he could solve the "patient equation" for Apple based on his "10 years" at Masimo in exchange for an executive position.  Ex. 6 at -520-21.  The offer was so tempting that Apple's Director of Recruiting quickly reached out that same morning.  *Id.* at -522.  ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████  Apple hired Lamego anyway.  At a minimum, such documents are relevant because they make it more probable that Apple intended to copy Masimo's technology.  *See* Fed. R. Evid. 401(a).  They also rebut Apple's attempts to argue it did not want Masimo's technology.  The ALJ should determine whether the documents are admissible and how much weight to give them.

/ / /

These documents also rebut Apple's assertion that Masimo's domestic industry was "contrived" and that Masimo is a "non-practicing entity." Ex. 73 at 1. Apple argues its documents are unnecessary because Masimo's own documents rebut Apple's assertion. Opp. at 6. Merely because Masimo has some relevant evidence does not mean Apple's evidence is irrelevant. Masimo should be permitted to rely on Apple's documents, which provide a more complete and powerful rebuttal. *See Old Chief v. U.S.*, 519 U.S. 172, 189 (1997) ("A syllogism is not a story, and a naked presumption in a courtroom may be no match for the robust evidence that would be used to prove it.").

Apple claims the documents are irrelevant because they do not each show Masimo manufactures a "competitive product." Opp. at 16. Apple does not explain why each document must show Masimo makes what Apple believes is a "competitive product." For months, Apple has been pressing a narrative in the ITC that Apple is the innovator and Masimo is a patent troll. Apple should not be permitted to use this Court's Protective Order to withhold documents showing that story is fiction. The ALJ has a right to know what Apple truly thinks about Masimo and its technology—not just the narrative Apple's lawyers want her to hear. The Court should grant the Motion on Category 5.

### f.    **Category 6 – Engineering Validation Testing Documents**

Category 6 seeks "Documents about the locations where Apple conducts its engineering validation testing ('EVT') for its Apple Watch products and the results of such testing." Proposed Order at 2. Apple again does not dispute that these documents are relevant to infringement because they show the operation of the Apple Watch Series 6 and 7 devices. *See* Opp. at 16. That alone is sufficient to show Category 6 is relevant.

These documents are also relevant to importation. Apple claims it admitted to importation for the Series 6 and 7. *Id.* at 16-17. However, despite having a draft stipulation since October 2021 and Masimo following up many times, Apple has not signed the stipulation. Apple also has not admitted to importing future versions of the watch. Apple argues the ALJ is currently considering that issue (Opp. at 17), but this evidence is directly relevant to that dispute. Masimo should be allowed to show the ALJ

-11-

1  relevant documents so that the ALJ can make an informed decision.  The Court should

2  grant the Motion on Category 6.

3          **3.**        **The _Foltz_ Requirements Support Granting the Motion**

4          Masimo's opening brief explained why the *Foltz* factors support granting the

5  Motion.  *See* Mot. at 16.  Rather than directly address those factors, Apple tries to knock

6  down another strawman by claiming Masimo "First" argued that "***any*** discovery" in this

7  case is relevant to the ITC Investigation.  Opp. at 10.  Masimo did no such thing.

8  Masimo first showed the six categories are relevant. Mot. at 8-15.  Masimo then showed

9  the *Foltz* factors support Masimo's motion **on those categories**.  *Id.* at 16-17 (arguing

10  the factors support the motion on "the categories" discussed above and those categories

11  in Section III.B were the "contents of the protected discovery" at issue).

12          Apple does not even contest some *Foltz* factors.  *See* Opp. at 11 (admitting the

13  two cases "involve two of the same accused products" and "overlapping allegations").

14  Apple instead argues the legal claims differ.  Opp. at 4, 10.  But the issue is whether

15  discovery—not the legal claims—will overlap.  *See Millennium Labs., Inc. v. Allied*

16  *World Assurance Co., Inc.*, 2017 WL 4810181, at *4-5 (S.D. Cal. Oct. 24, 2017)

17  (allowing use of discovery from employer's insurance policy dispute in employee's false

18  claims case).  As discussed, the discovery at issue is relevant to the ITC Investigation.

19          Apple also argues the cases "necessarily" involve "different technology" because

20  "[i]t is well established that the disclosure of a trade secret in a patent places the

21  information comprising the secret in the public domain."  Opp. at 11, 13, 16 (citing *Stutz*

22  and *Attia*).  But Judge Selna held publication alone does ***not*** destroy a trade secret, and

23  the Federal Circuit recently affirmed that holding.  *Masimo Corp. v. True Wearables*

24  *Inc.*, 2021 WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021); *Masimo Corp. v. True*

25  *Wearables, Inc.*, 2022 WL 205485, at *4 (Fed. Cir. Jan. 24, 2022).  Apple's cited

26  authority explained a plaintiff can have a "trade secret claim" on "implementation details

27  and techniques beyond what was disclosed in his patent."  *Attia v. Google LLC*, 983 F.3d

28  420, 425-26 (9th Cir. 2020); *see also Henry Hope X–Ray Prods., Inc. v. Marron Carrel,*

*Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) (patent disclosed "only a general depiction of a gearing system" and did not disclose the details of the trade secret). Here, Masimo has trade secrets and patents on different parts of its pulse oximetry technology. As a result, Apple's pulse oximetry documents are relevant to the trade secret and patent claims.

Apple argues it already produced "64,000 overlapping pages" so Masimo has not shown a "substantial amount" of discovery could be avoided by granting this Motion. Opp. at 11. But that is only **3.5%** of Apple's 1.8-million-page production. Apple claims "most of the product information" it produced is not relevant to products accused in the ITC. *Id.* Apple cites nothing to support such generalities but, as discussed, the categories already exclude products at issue only in this case.

Apple next complains that Masimo served 592 requests for production and identified only eight overlapping requests. Opp. at 11. About 200 of the requests merely updated prior requests to remove a phrase based on this Court's guidance. *See* Ex. 74 at 49:2-6 ("it's the refer or relate [phrase] and any ruling would be without prejudice to you or your client serving a follow-up request for production. And I'm going to throw this out there. I don't mind seeing request for production number 850"). Moreover, the eight requests that Masimo identified were merely examples of the many overlapping requests.[4] Regardless, the issue is whether the requested ***categories*** are relevant—not whether the cases involve a large number of overlapping requests.

Apple faults Masimo for not yet moving to compel on document requests in the ITC Investigation that seek discovery from this case. Opp. at 4. As discussed, that is not required. *See supra* Section II.A.1. Apple also argues Masimo filed only two motions to compel in the ITC Investigation. Opp. at 4. That is highly misleading. The ALJ has a process whereby the parties submit short letter briefs prior to filing formal

---

[4] *See, e.g., compare* Ex. 75 at Nos. 90-95, 97, 100, 370-374, 534 *with* Ex. 76 at Nos. 49-50 (copying); *compare* Ex. 75 at Nos. 266-267, 271-273, 452-453, 457-458, 460, 463-464 *with* Ex. 76 at Nos. 135, 136 (oxygen saturation); *compare* Ex. 75 at Nos. 13, 88, 131, 169, 170, 249-250, 266, 271, 273, 351, 439-441 *with* Ex. 76 at Nos. 20, 24, 28-30, 53, 85 (other R&D).

1   discovery motions.  Suppl. Powell Decl. ¶ 2.  Using this process, the ALJ has ruled on
2   many disputes without a formal "motion."  *Id.*  Masimo has submitted three such letter
3   briefs discussing at least ten disputes.  *Id.*  The parties are discussing many other
4   disputes.  Masimo cannot be faulted for trying to resolve disputes without motion
5   practice.  Regardless, the parties and the ALJ would benefit from avoiding disputes when
6   Masimo's counsel already has the documents from this case.

7   **B.  <u>Apple Has Not Shown Any Prejudice</u>**

8          Apple broadly argues granting this Motion will cause prejudice because the
9   documents are "highly" sensitive and "proprietary."  Opp. at 17-19.  But Apple
10  repeatedly admits it ***agreed*** to produce the same type of information in the ITC
11  Investigation.  *See* Opp. at 1, 11-12.  Such admissions alone demonstrate Apple's claims
12  of prejudice are contrived.  Regardless, Apple's specific arguments lack merit.

13         **1.  <u>Apple Fails To Identify Any Deficiency In The ITC Protective Order</u>**

14         Apple argues it produced documents in this case in reliance on Section 5.1 of the
15  Protective Order, which requires the parties use protected material only for this case.
16  Opp. at 17; Dkt. 67 ¶ 5.1.  Apple argues one case held reliance is "particularly strong"
17  in such circumstances.  Opp. at 8 (citing *Immunex Corp. v. Sanofi*, 2018 WL 11211727,
18  at *2 (C.D. Cal. Jan. 18, 2018)).  *Immunex* found reliance because the movants stipulated
19  to a protective order excluding "patent office proceedings" from the use provision even
20  though it ***already filed*** petitions for *inter partes* review ("IPR").  2018 WL 11211727,
21  at *2.  *Immunex* also relied on discovery in IPRs being "far narrower" than district court
22  discovery.  *Id.*  Neither is true here.  The Court entered the protective order ***before*** the
23  ITC Investigation began and the discovery standard in the ITC is similar to the District
24  Court.  *See* 19 CFR § 210.27(b)(1); Fed. R. Civ. P. 26(b)(1); *Jepson, Inc. v. Makita Elec.*
25  *Works, Ltd.*, 30 F.3d 854, 861 (7th Cir. 1994)).

26         Apple's own cited authority also explains "courts need to be alert to the possibility
27  that knowledgeable litigants may lard the record with routine claims of reliance . . . ."
28  8A Wright & Miller, *Federal Practice & Procedure Civ.* § 2044.1 (3d ed.).  This case

1    exemplifies such a fact pattern.  Apple cites no evidence, such as a client or even attorney
2    declaration, showing it ***actually*** relied on Section 5.1.  Nor could it.  Section 5.1 is a
3    standard provision that is presumably present in all protective orders that have not yet
4    allowed cross-use.  Rejecting cross-use based on such a generic argument—which would
5    apply to ***any*** case—would be inconsistent with *Foltz*'s holding that cross-use motions
6    should "generally be granted" because the Ninth Circuit "strongly favors" access to
7    discovery in collateral cases.  *See* 331 F.3d at 1131-32.

8        Apple's arguments are particularly unfounded because the cases here involve the
9    same parties ***and*** the same lawyers.  Thus, granting cross-use would not require Apple
10   to produce its documents to anyone who does not already have them.  While *Foltz* found
11   the collateral court should resolve discoverability separately (331 F.3d at 1132), that was
12   necessary because the case involved third-party intervenors who did not already have
13   the discovery (*id.* at 1127).  As Masimo explained, concerns about discoverability by
14   third parties do not apply where the parties are the same and both sides already have
15   access to the discovery at issue.  *See Cummins-Allison Corp. v. SBM Co.*, 2013 WL
16   12250448, at *2, *3 (D. Haw. Nov. 8, 2013).  Masimo argued this in its opening brief
17   and cited *Cummins*.  Mot. at 18-19.  Apple did not respond.

18       Masimo argued Apple never identified any provision in the ITC Protective order
19   that Apple contends is inadequate.  Mot. at 17.  Again, Apple did not respond.  If Apple
20   truly relied on the Protective Order here, it presumably would have been able to identify
21   some deficiency in the ITC protective order.  Rather than do so, Apple points to several
22   provisions the Court mentioned at the prior hearing.  Opp. at 18-19.  Apple does not
23   claim it relied on such provisions or that the equivalent provisions in the ITC protective
24   order are inadequate.  Nevertheless, Masimo addresses each provision below.

25       First, Apple cites the Court's assertion about which "in-house counsel" could have
26   access.  Opp. at 18.  The ITC Protective Order is more restrictive because it precludes
27   access by ***all*** in-house counsel.  *See* Ex. 14 ¶ 3.

28   / / /

-15-

1
2
3

Second, Apple cites the Court's assertion about which "outside counsel" could have access.  Opp. at 18.  The two cases contain similar outside counsel provisions.  *Compare* Ex. 14 ¶ 3(i) *with* Dkt. 67 ¶ 9.2(a).

4
5
6
7
8

Third, Apple cites the Court's assertion about which "vendors" could have access.  Opp. at 18.  Because Apple successfully *opposed* Masimo's request for a vendor disclosure requirement in this case, both cases have comparable vendor provisions.  *Compare* Ex. 14 ¶ 3(ii) *with* Dkt. 67 ¶ (e).  In fact, the Protective Order here is less restrictive because it provides access to trial consultants and mock jurors.  Dkt. 67 ¶ (f).

9
10
11

Fourth, Apple cites the Court's assertion about the prosecution bar.  Opp. at 19.  After the hearing, the parties in the ITC *stipulated* to a prosecution bar similar to the prosecution bar here.  *Compare* Ex. 14 ¶ 19 *with* Dkt. 67 ¶ 10.

12
13
14
15
16
17
18
19
20

Fifth, Apple argues Masimo did not address the Court's "key concern" about disclosure to government experts and personnel.  Opp. at 19.  Masimo will not presume to know the Court's "key concern," but those provisions are analogous to provisions in the Protective Order here allowing Court staff access.  *See* Dkt. 67 ¶ 9.2(d).  Moreover, crediting Apple's argument would apply equally to all ITC cases even though the Court found the *Foltz* rule *can* apply to ITC litigations.  *See* Ex. 16 at 17.  That is consistent with other court decisions involving collateral ITC investigations *and Apple's own agreement* to allow cross-use for other collateral ITC investigations.  *Jepson*, 30 F.3d at 861; *Qualcomm Inc. v. Apple Inc.*, 2019 WL 4284531, at *1 (S.D. Cal. Mar. 27, 2019).

21
22

Accordingly, Apple has not argued—much less shown—that the ITC Protective Order is insufficient.  That should end the prejudice inquiry.

23

**2.     Apple's Other Prejudice Arguments Lack Merit**

24
25
26
27
28

Apple also raises other meritless arguments.  First, Apple claims it understood its documents would not be used in "collateral litigation involving different claims, different issues, and a different set of products."  Opp. at 17.  As discussed, *all* products at issue in the ITC Investigation are at issue here.  That this case also involves earlier versions does not mean the ITC Investigation involves a "different set of products."

-16-

1    Second, Apple argues its reliance has increased because it has now produced 1.8
2  million pages.  Opp. at 17.  Apple produced over 1.4 million pages while Masimo's first
3  cross-use motion was pending or within days of the hearing.  Thus, Apple cannot claim
4  it produced those documents without knowing they may be subject to cross-use.

5    Third, Apple criticizes Masimo for "lifting" its discussion of legal authorities
6  from prior briefing.  Opp. at 18.  The Court's order did not render everything in the prior
7  motion irrelevant.  Masimo properly cited the Ninth Circuit's holding that "reliance on
8  a blanket protective order in granting discovery and settling a case, without more, ***will***
9  ***not justify a refusal to modify*."  *See Foltz*, 331 F.3d at 1133.  While the Protective Order
10  here has unique provisions, it still fits within *Foltz*'s definition of a "blanket" protective
11  order because it permits parties to designate documents without showing "good cause"
12  with respect to "any particular document."  *See id.*

13    Fourth, Apple denigrates Masimo's attempt to narrow its request to specific
14  categories as "a difference in degree, not kind."  Opp. at 18.  Masimo did so pursuant to
15  the Court's instructions.  *See* Ex. 16 at 37:1-7.  In fact, Masimo's approach of excluding
16  source code ***and*** identifying categories is even narrower than what the Court suggested.
17  *Id.* (explaining Masimo could identify categories to exclude ***or*** categories to include).

18    Fifth, Apple argues excluding source code is not "a significant concession."  Opp.
19  at 18.   Again, Masimo excluded source code because the Court seemed most concerned
20  about source code.  *See, e.g.*, Ex. 16 at 10 (the Protective Order addressed "minutiae of
21  the handling of source code . . . who could look at it, how it could be viewed, how many
22  lines of it could be printed"); *id.* at 30 ("you guys were fighting over how many -- the
23  number of lines of source code that could be printed off by an expert in a clean room").

24    Sixth, Apple argues Masimo will "dump thousands of documents into the ITC
25  record" and "foist a significant burden on Apple" to "exclude broad swaths of irrelevant
26  evidence."  Opp. at 2, 19.  Apple cites nothing to support such hyperbole.  It would be
27  impossible—and terrible strategy—to demand the ALJ review "thousands" of
28  documents.  Masimo should be permitted to use the six specific categories of documents.

**C.**    <u>The Court Should At Least Grant Masimo's Alternative Request</u>

Masimo alternatively requested the Court allow Masimo to show the ALJ documents even if it could not broadly "use" them (*i.e.*, at a deposition or trial) without Apple first producing them in the ITC Investigation.  Proposed Order at 2.  Masimo did so based on its understanding that the Court denied such relief at the time but found Masimo may make such a request in this Motion.  *See* Ex. 16 at 41-43.

Apple argues Masimo is "wrong" to believe the Court suggested such relief and that the Court actually rejected this proposal.  Opp. at 19-20 (quoting Ex. 16 at 40).  That is not how Masimo reads the transcript, but Masimo will not attempt to put words in the Court's mouth.  Masimo instead focuses on the merits.  Masimo originally argued it would be most efficient to grant cross-use on all documents.  The Court disagreed, so Masimo has now identified specific categories.  In the alternative, Masimo asks that the Court at least allow it to show the ALJ documents even if it cannot "use" them at depositions or trial until they are produced.  That alternative is far less efficient, but it would at least allow the ALJ to determine relevance for disputed documents.

Apple also argues the alternative request is too broad because it applies to all documents instead of just the six categories in the primary request.  Opp. at 19.  Given how restrictive the alternate request is on use, Masimo believed category limitations were unnecessary.  However, Masimo would consent to the Court adding such a requirement if necessary.  In the end, Masimo simply asks for equitable relief that allows the ALJ to determine relevance when the parties disagree.

**D.**    <u>Apple's Document-By-Document Proposal Lacks Merit</u>

Apple rejects all of Masimo's proposals for cross-use and, instead, insists the parties discuss the issue on a document-by-document basis.  But Apple does not even respond to Masimo's arguments on the issue.  *See* Mot. at 19-20.  For example, Apple does not address the Court's prior statements on this topic.  Ex. 16 at 19:13-17, 24:4-26:9, 29:23-30:9.  Apple also does not address that *Universal* similarly held the movant "need not identify specific documents they want to share."  2020 WL 2308226, at *4.

-18-

Apple likewise does not address that Masimo cannot identify every document because it has not finished reviewing Apple's recent 1.4-million-page productions. Finally, Apple does not address that the procedure in the Local Rules takes too much time to address documents individually and would put an enormous burden on the parties and the Court. Accordingly, Apple has not justified its document-by-document approach.

## E.   <u>Apple's Other Arguments Lack Merit</u>

Apple raises several other issues that are largely irrelevant. Masimo addresses them here for completeness. First, Apple argues Masimo should not be "rewarded" for allegedly delaying the Motion. Opp. at 20. Masimo asked Apple—just days after the prior hearing—for an "overlay"[5] showing the documents Apple produced in both cases. Ex. 17 at 1. Masimo explained the information was available to Apple and would help identify relevant documents from this case that Apple had not produced in the ITC Investigation. Ex. 18. After Masimo followed up many times, Apple provided an overlay on December 23—the day before Christmas Eve and four weeks after Masimo asked for it. Exs. 17 & 18. Masimo identified categories and missing exemplary documents in just three weeks—less time than Apple took to provide the simple overlay.

Second, Apple inconsistently faults Masimo for moving too quickly. Opp. at 2. But Apple omits that the parties had already met and conferred extensively and agreed they had reached an impasse after Apple declined to agree on any category. Suppl. Powell Decl. ¶ 8. Apple's follow up letter merely confirmed what Apple said during the meeting. *See* Ex. 20. Apple also ignores that it ***agreed*** Masimo should file this Motion on January 20 instead of waiting seven days. Ex. 77. Having agreed Masimo should file on January 20, Apple should not now argue that was improper.

---

[5] An overlay is a file that updates document review databases with additional metadata or other information about produced documents. Without explanation, Apple suggests Masimo could have somehow prepared the overlay. Opp. at 20. Only Apple could prepare the overlay because only Apple had data identifying the documents it produced in both cases. It takes about 30 minutes for the producing party to prepare an overlay if, like Apple, it has the information in its review database. Suppl. Powell Decl. ¶ 3.

Third, Apple claims Masimo failed to respond to certain assertions in Apple's meet-and-confer letter.  Opp. at 2.  Apple cites no authority requiring the moving party to address every issue in a meet-and-confer letter.  Masimo addressed the key disputes and adjusted its requested relief in view of Apple's letter.  *See* Proposed Order.

Fourth, Apple claims Masimo falsely "represent[ed]" that Apple refused to produce certain documents.  Opp. at 12.  Masimo accurately explained it identified documents "Apple has not yet produced in the ITC Investigation."  *See* Mot. at 10.

Fifth, Apple claims Masimo was "unable to substantiate" its allegations and Masimo served "expansive discovery."  Opp. at 3, n.1.  For support, Apple cites its motion for summary judgment and its opposition to Masimo's motion to modify the schedule.  Dkt. 560-1; Dkt. 565.  Masimo explained why Apple's arguments lack merit.  Dkt. 556; Dkt. 577-1.  Apple also does not explain how its motion for summary judgment on an ***affirmative defense*** somehow shows that Masimo failed to "substantiate" its affirmative claim.  Apple's additional arguments do not justify denying the Motion.

### III. <u>CONCLUSION</u>

Masimo respectfully requests the Court modify the Protective Order as set forth in the Proposed Order.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  February 3, 2022          By: */s/ Adam B. Powell*
                                       Joseph R. Re
                                       Stephen C. Jensen
                                       Benjamin A. Katzenellenbogen
                                       Perry D. Oldham
                                       Stephen W. Larson
                                       Mark D. Kachner
                                       Adam B. Powell
                                       Daniel P. Hughes

                                       Attorneys for Plaintiffs
                                       MASIMO CORPORATION and
                                       CERCACOR LABORATORIES, INC.