JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**DEFENDANT APPLE INC.'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 4**<br><br>Date: March 28, 2022<br>Time: 1:30 p.m.<br><br>Discovery Cut-Off: 3/7/2022<br>Pre-Trial Conference: 11/21/2022<br>Trial: 12/6/2022 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Wilmer Cutler
Pickering Hale
and Dorr LLP

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

DEFENDANT APPLE INC.'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 4

CASE NO. 8:20-cv-00048-JVS (JDEx)

# TABLE OF CONTENTS

I.     Introduction ................................................................................................. 1

II.    Background.................................................................................................. 2

    A.    Apple's Interrogatory Nos. 26 and 28........................................... 2

    B.    Apple's Motion to Compel A Complete Response To Interrogatory No. 28 ............................................................................. 4

III.   Legal standard............................................................................................ 5

IV.   Argument ................................................................................................... 6

    A.    Whether, How, And *When* Plaintiffs' Products Purportedly Incorporate The Alleged Trade Secrets Is Relevant And Discoverable. ................................................................................ 6

    B.    The Information Sought In Interrogatory No. 28 Is Proportional To The Needs Of The Case. ...................................................... 9

V.    Conclusion ............................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ActiveRain Corp. v. Move, Inc.*,
   2008 WL 11337643 (C.D. Cal. Dec. 16, 2008) ..........................................7, 9

*Attia v. Google LLC*,
   2018 WL 4202151 (N.D. Cal. Sept. 4, 2018).............................................6

*Dura Glob. Technologies, Inc. v. Magna Donnelly, Corp.*,
   2007 WL 4303294 (E.D. Mich. Dec. 6, 2007)..............................................9

*Hope Med. Enterprises, Inc. v. Fagron Compounding Services, LLC*,
   2020 WL 2771233 (C.D. Cal. Mar. 31, 2020) ...........................................5, 9

*LivePerson, Inc. v. [24]7.ai, Inc.*,
   2019 WL 3254226 (N.D. Cal. July 19, 2019) .................................................8

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   2011 WL 836418 (C.D. Cal. Mar. 4, 2011) ...................................................8

*MSC Software Corp. v. Altair Engineering, Inc.*,
   2015 WL 13273227 (E.D. Mich. Nov. 9, 2015) ........................................7, 8

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) .............................................................................5

*Phase Four Industries, Inc. v. Marathon Coach, Inc.*,
   2006 WL 1465313 (N.D. Cal. May 24, 2006) .................................................9

*Radware, Ltd. v. F5 Networks, Inc.*,
   147 F. Supp. 3d 974 (N.D. Cal. 2015)..........................................................7

*Yoe v. Crescent Sock Co.*,
   2017 WL 11479993 (E.D. Tenn. Mar. 24, 2017)..........................................7

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 26(b)(1) ......................................................................5

Fed. R. Civ. P. 53(f)(3) ......................................................................5

Fed. R. Civ. P. 53(f)(4) ......................................................................5

1

Federal Rule of Civil Procedure 26 ........................................................................5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

Nearly a year ago in March 2021, Apple served Plaintiffs with Interrogatory No. 28 to obtain facts commonly provided in all trade secret cases regarding Plaintiffs' own products purportedly incorporating Plaintiffs' alleged trade secrets.  It has taken months and two motions to compel for Apple to receive Plaintiffs' identification of which of their products purportedly incorporate the alleged trade secrets at issue in this case and how those alleged trade secrets are incorporated into those products.  But even now, Plaintiffs' responses omit key information that is squarely relevant to damages: the earliest date on which Plaintiffs offered the products incorporating the alleged trade secrets for sale.  The requested information is directly relevant to Plaintiffs' damages claim for lost profits and any lost value in the alleged trade secrets that Plaintiffs claim to have suffered.  How and when Plaintiffs' alleged trade secrets were used in their products are clearly relevant to the value (if any) of the alleged trade secrets.  In addition, to the extent Plaintiffs have disclosed the alleged trade secrets in a publicly available product and in an inspectable manner, that fact directly implicates whether the disclosed information remained a trade secret at all and when it lost its trade secret status due to Plaintiffs' own disclosure.

There is simply no justification for Plaintiffs to continue withholding this relevant information at this late date in discovery.  This case has been pending for more than two years, the interrogatory has been pending for nearly a year, the parties have substantially completed their ESI document production, and importantly, the requested information is ***solely within Plaintiffs' possession***.  Accordingly, Apple respectfully requests that the Court order Plaintiffs to fully respond to Apple's Interrogatory No. 28, including by identifying the dates on which each product incorporating an alleged trade secret was first offered for sale and sold.

## II.   BACKGROUND

### A.   Apple's Interrogatory Nos. 26 and 28

Apple's Interrogatory No. 28 seeks "an identification of every product sold or offered for sale" by Plaintiffs that practices or has ever practiced Plaintiffs' alleged trade secrets, including "the functionality in each product that allegedly meets" each alleged trade secret and "the earliest date on which each product was first offered for sale and sold." *See* Ex. 1 at 7 (Plaintiffs' Resp. to Interrog. No. 28).  Specifically, Interrogatory No. 28 requests, among other things, that Plaintiffs identify the "earliest date offered" for each product containing each alleged trade secret.  *Id*.[1]

Plaintiffs responded to Interrogatory No. 28 largely by incorporating their response to Apple's Interrogatory No. 26, which requests that Plaintiffs identify how they "have used, are using, or plan to use [each] alleged Trade Secret." *See id.* at 9-11; *see also* Ex. 2 at 58 (Plaintiffs' Resp. to Interrog. No. 26).  However, neither Plaintiffs' response to Interrogatory No. 26 nor Plaintiffs' response to Interrogatory No. 28 identified "the functionality in each product that allegedly meets" each alleged trade secret or the ***date on which each product purportedly incorporating the alleged trade secrets was first sold***.  Instead, Plaintiffs' response to Interrogatory No. 26 merely referred to broad categories of products and functionality.  *See* Ex. 2 at 58-72 (Plaintiffs' Resp. to Interrog. No. 26); *see also* Ex. 3 at 8 (Nov. 29, 2021 Motion).  And Plaintiffs' response to Interrogatory No. 28 merely incorporated its response to Interrogatory No. 26, and failed to provide any information about what specific functionalities incorporated the alleged trade secrets or when the products incorporating those

---

[1] Interrogatory No. 28 also seeks this information for each Apple patent and patent application that Plaintiffs contend incorporate their alleged trade secrets.  However, Apple only seeks to compel Plaintiffs to provide the requested information with respect to Plaintiffs' alleged trade secrets at this time.

functionalities were first offered for sale.  *See* Ex. 1 at 7 (Plaintiffs' Resp. to Interrog. No. 28). [2]

On November 29, 2021, Apple moved to compel Plaintiffs to provide a complete response to Interrogatory No. 26.  Ex. 3 at 7-8 (Nov. 29, 2021 Motion).  Apple explained that while Plaintiffs' response to Interrogatory No. 26 identified certain products that have purportedly incorporated the alleged trade secrets, the response failed to identify whether that list was exhaustive or explain which alleged trade secrets were incorporated into which products.  *Id.*  On January 13, 2022, the Special Master issued an Order granting-in-part Apple's motion to compel a complete response to Interrogatory No. 26. Dkt. 580 at 10-11. Specifically, the Special Master ordered Plaintiffs to explain "[f]or the technical trade secrets" "'the functionality that allegedly incorporates each alleged Trade Secret,'" including "disclos[ing] to Apple the functionality (e.g., software algorithm) itself that actually tracks each technical trade secret, and which products the functionality is actually present in." *Id.* at 11.

On February 10, 2022, Plaintiffs supplemented their response to Interrogatory No. 26, pursuant to the Special Master's Order.  Ex. 2 at 58, 72-75 (Plaintiffs' Resp. to Interrog. No. 26).  While Plaintiffs' supplemental response to Interrogatory No. 26 provided some information regarding which of Plaintiffs' products incorporated which of the alleged trade secrets, the supplemental response failed to identify ***when*** those products were first offered for sale as requested in Apple's Interrogatory No. 28.  *See id.*[3]

---

[2] Although Interrogatory No. 28 requests some information that overlaps with Interrogatory No. 26, Interrogatory No. 28 also requires additional detail, including "the earliest date on which each product was first offered for sale and sold."  *Compare* Ex. 2 at 58 (Plaintiffs' Resp. to Interrog. No. 26), *with* Ex. 1 at 7 (Plaintiffs' Resp. to Interrog. No. 28).

[3] Plaintiffs' February 10, 2022 supplemental response to Interrogatory No. 26 remains deficient for several reasons, including because it fails to identify the date products containing technical trade secrets were first offered and when they were discontinued.

*(Cont'd on next page)*

**B.     Apple's Motion to Compel A Complete Response To Interrogatory No. 28**

On December 23, 2021, while Apple's motion to compel regarding Interrogatory No. 26 was pending, Apple separately moved to compel Plaintiffs to provide a complete response to Interrogatory No. 28.   Apple explained that Plaintiffs' response to Interrogatory No. 28 "failed to identity the functionalities in each product that purportedly use the alleged trade secrets, or ***the date on which each product purportedly incorporating the alleged trade secrets was first sold***." Ex. 4 at 5 (Dec. 23, 2021 Motion (emphasis added)).   Apple further explained that "[i]nformation regarding the specific functionalities in Plaintiffs' products that purportedly practice the alleged trade secrets, and the first incorporation and sale thereof, is plainly relevant to damages, including demand, valuation, apportionment, and lost profits." *Id.*; *see also* Ex. 5 at 3 (Jan. 28, 2022 Reply) (Apple arguing in reply that the additional Information requested in Interrogatory No. 28 was "relevant to damages and inventorship").   Apple also explained that while Plaintiffs' response to Interrogatory No. 28 incorporated their response to Interrogatory No. 26, Plaintiffs' response to Interrogatory No. 26 was also deficient, as it failed to identify the specific functionalities in Plaintiffs' products that purportedly use each alleged trade secret or the date on which each such product was offered for sale or sold.  Ex. 4 at 5 (Dec. 23, 2021 Motion).

On February 7, 2022, the Special Master issued an Order denying Apple's motion to compel a complete response to Interrogatory No. 28.  Ex. 6 at 7-8 (Special Master Order No. 4).   In doing so, the Special Master acknowledged Apple's argument that Interrogatory No. 28 sought information that was "clearly relevant to damages and inventorship," but nonetheless concluded that Apple's position was "unpersuasive." *Id.* at 8.   The Special Master stated that "[p]roportionality, relevance, undue burden, and other considerations do not support compelling the additional information sought by Interrogatory No. 28," but provided no explanation for that conclusion. *Id.*

---

Apple reserves all rights to seek appropriate relief with respect to the remaining deficiencies in Plaintiffs' supplemental response to Interrogatory No. 26.

1

### III.   LEGAL STANDARD

2  In considering objections to a special master's order, "[t]he court must decide de

3  novo all objections to findings of fact made or recommended by a master." Fed. R. Civ.

4  P. 53(f)(3); *see also* Dkt. 470 at 4 ("The Court must decide de novo all objections to

5  findings of fact.").   Similarly, "[t]he court must decide de novo all objections to

6  conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4); *see*

7  *also* Dkt. 470 at 4 ("The Court must decide de novo all objections to conclusions of

8  law.").

9  Under Federal Rule of Civil Procedure 26, a party may obtain discovery

10  "regarding any nonprivileged matter that is relevant to any party's claim or defense and

11  proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "Relevance 'has been

12  construed broadly to encompass any matter that bears on, or that reasonably could lead

13  to other matter that could bear on, any issue that is or may be in the case.'"  *Hope Med.*

14  *Enters., Inc. v. Fagron Compounding Servs., LLC*, 2020 WL 2771233, at *2 (C.D. Cal.

15  Mar. 31, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

16  "The party seeking to compel discovery 'has the initial burden of demonstrating

17  relevance' under Rule 26.  Thereafter, '[t]he party who resists discovery has the burden

18  to show discovery should not be allowed, and has the burden of clarifying, explaining,

19  and supporting its objections.'"  *Hope Med. Enters.*, 2020 WL 2771233, at *2.  A court

20  may consider "the importance of the issues at stake in the action, the amount in

21  controversy, the parties' relative access to relevant information, the parties' resources,

22  the importance of the discovery in resolving the issues, and whether the burden or

23  expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P.

24  26(b)(1).  In balancing burden, the Court should also consider how the information is

25  "important to resolve the issues" in the case.  *See* Fed. R. Civ. Proc. 26(b)(1) (2015

26  Notes).

27

28

## IV.   ARGUMENT

Interrogatory No. 28 seeks identification of "the functionality in each [of Plaintiffs'] product[s] that allegedly meets" each alleged trade secret and "the earliest date on which each product was first offered for sale and sold." Ex. 1 at 7 (Plaintiffs' Resp. to Interrog. No. 28).   Although Plaintiffs have now identified at least some functionality that Plaintiffs contend incorporate the alleged trade secrets, Plaintiffs have still not identified key information requested in Interrogatory No. 28, including "the earliest date on which each product was first offered for sale and sold."  That information is plainly relevant to damages, including the value of the alleged trade secrets and apportionment of that value relevant to other, non-trade secret features and functionalities.  In addition, to the extent Plaintiffs have disclosed the alleged trade secret information in a publicly available product and in an inspectable manner, that fact directly implicates whether that information remained a trade secret at all and when it lost its alleged trade secret status due to Plaintiffs' own disclosure.   Accordingly, Apple's motion to compel a complete response to Interrogatory No. 28 should be granted.

### A.   Whether, How, And *When* Plaintiffs' Products Purportedly Incorporate The Alleged Trade Secrets Is Relevant And Discoverable.

Plaintiffs have asserted entitlement to various categories of damages, including

██████████████████████████████████████████████████

████   Ex. 7 at 7 (Plaintiffs' Resp. to Interrog. No. 17).  Thus, at least the following issues are relevant to damages: (1) whether Plaintiffs' products incorporate the alleged trade secrets, (2) which functionality in any given product includes the alleged trade secrets, and (3) *when* the products containing that functionality were first offered for sale.  If Plaintiffs delayed incorporating their alleged trade secrets into their products— or failed to incorporate the alleged trade secrets at all—that would indicate that the alleged trade secrets lack value and/or are not the basis for demand for Plaintiffs'

1    products.  *See Attia v. Google LLC*, 2018 WL 4202151, at *2 (N.D. Cal. Sept. 4, 2018)

2    (defendant in a trade secret misappropriation case is "certainly entitled to discovery

3    relating to the value or lack of value of the alleged trade secrets and plaintiffs' other

4    allegations of harm, including plaintiffs' prior unsuccessful efforts to commercialize the

5    alleged trade secrets and the financial benefits (or lack thereof) that plaintiffs obtained

6    from the alleged trade secrets"); *ActiveRain Corp. v. Move, Inc.*, 2008 WL 11337643, at

7    *3 (C.D. Cal. Dec. 16, 2008) (ordering discovery related to changes to plaintiff's alleged

8    trade secrets because "evidence of changes to plaintiff's trade secrets could show that

9    the original information is no longer a valuable trade secret whose use may legitimately

10   be enjoined"); *see also Yoe v. Crescent Sock Co.*, 2017 WL 11479993, at *4 (E.D. Tenn.

11   Mar. 24, 2017) (granting defendant's motion to compel discovery related to plaintiff's

12   products because "the information is relevant and necessary to whether the alleged trade

13   secret at issue has been rendered obsolete and deemed to no longer possess any economic

14   value").

15       Moreover, the earliest date by which Plaintiffs purport to have incorporated their

16   alleged trade secrets into any given product is relevant to measuring what—if any—

17   actual losses Plaintiffs suffered from the alleged misappropriation.  For example,

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ██████████████████████████████████  Ex. 1 at 10 (Plaintiffs' Resp. to

21   Interrog. No. 28).  When Plaintiffs first offered a product ████████████████

22   ████████████████████████████████████████████

23   and whether Plaintiffs' alleged trade secrets were the basis for, or drove, customer

24   demand.  *See Radware, Ltd. v. F5 Networks, Inc.*, 147 F. Supp. 3d 974, 1014-15 (N.D.

25   Cal. 2015) (explaining in patent context that "whether demand exists for the [protected]

26   feature is" relevant to "the existence of non-infringing alternatives" and to whether lost

27   profits are appropriate); *see also MSC Software Corp. v. Altair Eng'g, Inc.*, 2015 WL

28

13273227, at *18 (E.D. Mich. Nov. 9, 2015) (noting whether there is an "identifiable feature that is the basis for customer demand" is relevant to trade secret damages). When Plaintiffs purport to have incorporated their alleged trade secrets into any given product is also relevant to whether the alleged trade secret remained secret, and when it lost its alleged trade secret status.

Whether and when Plaintiffs' products first contained functionality embodying the alleged trade secrets is also relevant to apportionment for damages, particularly where Plaintiffs have offered other products including similar functionality **without** incorporating the alleged trade secrets. *See, e.g.*, *LivePerson, Inc. v. [24]7.ai, Inc.*, 2019 WL 3254226, at *2 (N.D. Cal. July 19, 2019) (noting that court had excluded expert opinion that did "not apportion trade secret misappropriation damages among particular alleged trade secrets" but approving opinion that "allocates damages between individual trade secrets within the same category" of trade secrets); *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 836418, at *3 (C.D. Cal. Mar. 4, 2011) (explaining that apportionment requires knowing "the actual value added by each claimed trade secret"); *MSC Software Corp.*, 2015 WL 13273227, at *18 (finding relevant to damages the "relative contribution and value of the three trade secrets to specific features or functionalities of the overall [] product"). As the Special Master has acknowledged in the past, "Apple is entitled to fully explore its potential competing damages theories, including theories relying on apportionment of plaintiff's products." Dkt. 580 at 11.

Finally, in this case, the timing of Plaintiffs' purported incorporation of the alleged trade secrets is important in light of the number of years that passed between the conception of Plaintiffs' alleged trade secrets and Plaintiffs' actual use of them. The passage of time between conception and incorporation demonstrates lack of value and also indicates that the alleged trade secrets required further development or inclusion of other non-trade secret functionality before the alleged trade secrets could be used in any commercial way.

There is thus no real dispute that the information sought in Interrogatory No. 28, including "the earliest date on which each product [incorporating the alleged trade secret] was first offered for sale and sold," is relevant and discoverable.   Ex. 1 at 7 (Plaintiffs' Resp. to Interrog. No. 28).

**B.   The Information Sought In Interrogatory No. 28 Is Proportional To The Needs Of The Case.**

Apple has demonstrated the relevance and importance of discovery related to the earliest date on which products incorporating the alleged trade secrets were first sold. Plaintiffs thus have the burden to show that relevant discovery is unduly burdensome and thus not proportional to the needs of the case. *See Hope Med. Enterprises*, 2020 WL 2771233, at *2.  Plaintiffs cannot meet that burden here.

Interrogatory No. 28 seeks specific and tailored information—including the dates on which Plaintiffs first offered for sale and sold any product incorporating Plaintiffs' alleged trade secrets.  That information is readily within Plaintiffs' possession and likely could be drawn from Plaintiffs' financial or other business records, such that there would be no burden associated with its production. *See Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 2006 WL 1465313, at *11 (N.D. Cal. May 24, 2006) (ordering plaintiff to respond to interrogatory requesting information on the plaintiff's products, including the date each product was sold); *see also Dura Glob. Techs., Inc. v. Magna Donnelly, Corp.*, 2007 WL 4303294, at *2 (E.D. Mich. Dec. 6, 2007) ("Determining whether a trade secret has been misappropriated usually involves examining things that the other party considers its own trade secrets." (citation omitted)).

Moreover, this case has been pending more than two years, the parties have substantially completed their document production, and Apple served Plaintiffs with Interrogatory No. 28 nearly a year ago, on March 5, 2021.  *See* Ex. 8 at 9-10, 11 (Apple's Interrog. No. 28).  There is no basis for Plaintiffs to continue to withhold this relevant discovery at this late stage of the case.  *See, e.g.*, *ActiveRain Corp. v. Move, Inc.*, 2008

WL 11337643, at *3 (C.D. Cal. Dec. 16, 2008) (ordering plaintiff to provide factual information in response interrogatory related to damages, explaining "[t]o the extent [plaintiff] possesses relevant information, it must respond to this interrogatory").

## V.   CONCLUSION

Apple respectfully requests that the Court order Plaintiffs to supplement their response to Apple's Interrogatory No. 28 to identify for each alleged trade secret, each product and the functionality within each product that Plaintiffs claim incorporate each alleged trade secret, and the earliest date on which each product incorporating any alleged trade secret was first offered for sale and sold.

Dated: February 22, 2022

Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN ANDREA
GIBSON, DUNN & CRUTCHER LLP

MARK D. SELWYN
WILMER CUTLER PICKERING HALE AND DORR LLP

By:  */s/ Mark D. Selwyn*
Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*