# EXHIBIT 4

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive
Irvine, CA 92612-4412
Tel 949.451.3800
www.gibsondunn.com

Kenneth G. Parker
Direct: +1 949.451.4336
Fax: +1 949.475.4726
KParker@gibsondunn.com

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**
**Hearing Requested**

December 23, 2021

Hon. Andrew J. Guilford (Ret.)
Judicate West
1851 East First Street, Suite 1600
Santa Ana, CA 92705

Re:   _Masimo Corp. et al. v. Apple Inc._, Case No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal.)

Dear Judge Guilford:

Apple respectfully moves to compel supplementation of Plaintiffs' responses to Interrogatory Nos. 13, 17, and 28 and their initial disclosure regarding computation of damages under FRCP 26(a)(1)(A)(iii).  Although this case was filed nearly two years ago and discovery closes in roughly three months, Plaintiffs have failed to provide any information regarding their damages case outside of the vaguest generalities (_e.g._, that they may—or may not—seek compensatory damages, lost profits, restitution, unjust enrichment and/or a reasonable royalty).  Despite repeated inquiries, Plaintiffs have offered scant justification for this delay beyond their unexplained assertion that they need more information from _Apple_ before they can supplement their responses _in any way_.  But not only did Apple provide Plaintiffs with detailed financial information about Apple Watch sales well over a year ago, the basic facts of Plaintiffs' damages case—including the harm that they believe themselves to have suffered—are indisputably in their hands.

Apple has a right to greater detail regarding Plaintiffs' alleged damages before fact depositions begin.  It has a right to question Plaintiffs' witnesses about the particular types of damages and harm Plaintiffs claim they have suffered and why.  Plaintiffs' position that they can wait until expert discovery to be more specific about damages is undermining Apple's ability to take adequate discovery, and the Special Master should grant this motion.

**I.     Rule 26 – Plaintiffs' Computation of Damages**

**Background.**   FRCP 26 requires Plaintiffs to disclose at the outset of their case "a computation of each category of damages claimed by the disclosing party" as well as "the documents or other evidentiary material … on which each computation is based[.]"  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Plaintiffs' April 14, 2020 disclosure stated that "Plaintiffs seek monetary relief for all damages sustained by Plaintiffs by virtue of Defendant's acts," including "compensatory damages, lost profits, restitution, unjust enrichment, reasonable royalties, punitive damages, and/or exemplary damages" and "reasonable attorneys' fees."  _See_ Ex. 1 at 6.  Plaintiffs gave no indication of the specific basis or amount of their damages claims, purportedly because "Plaintiffs require discovery from Defendant to do so" and because they planned to "produce such information and supporting documentation through an expert witness and report at the appropriate time."  _Id._  Plaintiffs have not supplemented this disclosure in the 20 months since.

**Argument.**   FRCP 26(a)(1)(A)(iii) requires a party to "'provide its assessment of damages in light of the information currently available to it in sufficient detail so as to enable [the other party] to understand the contours of its potential exposure and make informed decisions as to settlement _and discovery_.'"  _Frontline Med. Assoc., Inc. v. Coventry Health Care_, 263 F.R.D. 567, 569 (C.D. Cal. 2009) (emphasis added).  In other words, Rule 26 contemplates that a party must identify more than "'merely the broad types of damages'" sought; "'[t]o make the disclosure obligation meaningful, a

Exhibit 4
Page 1

**GIBSON DUNN**

Hon. Andrew J. Guilford (Ret.)              HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY
December 23, 2021
Page 2

more detailed specification of damages is apparently required.'" *City & Cty. of S.F. v. Tutor-Sabila Corp.* 218 F.R.D 219, 221 (N.D. Cal. 2003).

In the two years since this case was filed, Plaintiffs have failed to offer any meaningful articulation of their damages claim, much less identify the underlying facts and documents on which they rely. Not having that basic information prejudices Apple. Among other things, its absence impedes Apple from conducting targeted discovery and preparing its damages defense.

Plaintiffs have provided two excuses for their failure to comply with Rule 26, neither of which is persuasive. First, Plaintiffs have suggested that they need more information from Apple before they can provide any further response. Apple, however, disclosed Apple Watch sales information by at least September 9, 2020. *See* Ex. 2 at 58. Regardless, Plaintiffs cannot "evade the duty to lay out [their] damages contentions at the outset of the case merely because [they] hope [they] can frame more handsome contentions after discovery." *Brandywine Commc'ns Techs. v. Cisco Sys.*, 2012 WL 5504036, at *3 (N.D. Cal. Nov. 13, 2012); *accord Vincent v. Classic Party Rentals, Inc.*, 2009 WL 10674768, at *4 (C.D. Cal. Oct. 27, 2009). Here, for example, for their lost profits theory, Plaintiffs "should now be in a position to state the extent of loss of [their] own sales of [their] own products in an approximate dollar amount and state how that amount was calculated." *Brandywine*, 2012 WL 5504036 at *1; *see also Frontline*, 263 F.R.D. at 569-570. As another example, for the reasonable royalty "as to each accused product," Plaintiffs "should already be in a position to state the claimed royalty rate and state the claimed royalty base, and then multiply the two for a total, specifying the information by year." *Brandywine*, 2012 WL 5504036 at *2.

Second, Plaintiffs have argued that they can delay in providing basic damages information until the expert witness stage. Courts have repeatedly rejected that argument, as "the fact that a damages … model will be the subject of future expert analysis does not relieve a party of its obligation to provide information that is reasonably available to it." *Boswell v. Costco Wholesale Corp.*, 2017 WL 2727769, at *1-2 (C.D. Cal. Jan. 19, 2017); *accord Agena v. Cleaver-Brooks, Inc.*, 2020 WL 6888725, at *2 (D. Haw. July 31, 2020) ("The fact that expert testimony will be required as this litigation proceeds does not excuse Plaintiffs from complying with their initial disclosure obligations."); *Frontline*, 263 F.R.D. 567 at 570 ("Future expert analysis [on damages] does not relieve Plaintiff of its obligation to provide information reasonably available to it[.]").

## II.    Interrogatory No. 13 – Plaintiffs' Alleged Harm

**Background.** Apple's Interrogatory No. 13 asks Plaintiffs to identify and describe, for each alleged trade secret, "how [they] were harmed by the alleged misappropriation." Ex. 3 at 41. Plaintiffs' initial response merely lists generic categories of harm suffered, with the promise that they "intend[ed] to supplement … after a protective order has been entered in this case." *Id.* at 41-42. For example, Plaintiffs baldly state that "Apple's misappropriation has deprived Plaintiffs of [] actual and potential value*"* in their trade secrets and "deprived [Plaintiffs] of the business advantage Plaintiffs have over others." *Id.* at 42. Plaintiffs similarly assert (again, without explanation) that they have been harmed by "having to compete against products" and suffered "lost sales, lost conveyed sales, and other lost revenue*,*" "lost licensing revenue*,*" "lost research and collaboration opportunities*,*" and "lost investment value and lost business value." *Id.* Plaintiffs ultimately supplemented their response once, on August 14, 2020—over 16 months ago—and only added a single, essentially empty

Exhibit 4
Page 2

**GIBSON DUNN**

Hon. Andrew J. Guilford (Ret.)                    HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY
December 23, 2021
Page 3

sentence: "Plaintiffs incorporate their response to Interrogatory No. 6, including any supplements, in
full by reference." *Id.* at 43.[1]

On February 17, 2021, Magistrate Judge Early denied Apple's motion to compel a
supplemental response to Interrogatory No. 13. Ex. 5 at 8. Judge Early relied on Plaintiffs'
representation that "'[d]iscovery in this matter has only recently begun…, and Plaintiffs are
continuing to investigate the subject matter of this interrogatory'" in determining that their answer
was "sufficient[]." *Id.*

<u>Argument</u>. Now that the deadline for fact discovery is less than three months away and the
deadline for substantial completion of ESI discovery has passed, Plaintiffs should be required to
describe the specific harms they claim to have suffered, including, *e.g.*, (1) specific sales, customers,
or projects lost; (2) specific lost revenues, profits, or price erosion on specific products; and (3)
specific lost opportunities or lost value.

Plaintiffs notably have not contested that Interrogatory No. 13 is relevant to the claims and
defenses in this case, and for good reason—California law requires them to show they "suffered harm
as a direct and proximate result of the [] use or disclosure of the trade secret, or the defendant
benefitted from such use or disclosure." *Cal. Police Activities League v. Cal. Police Youth Charities,
Inc*., 2009 WL 537091, at *3 (N.D. Cal. Mar. 3, 2009) (citing Cal. Civ. Code § 3426). Without this
information, Apple is left at a significant, prejudicial disadvantage in preparing its defensive case.

Plaintiffs have objected to this interrogatory on the grounds that it is premature—i.e., that it
was propounded "at an early stage of the proceedings [before] … meaningful discovery" and that
trade secret discovery had been "stayed … until Plaintiffs provide their 2019.210 statement" (which
was served on October 9, 2020). Ex. 3 at 41.[2] Whatever force those arguments had when they were
made in May 2020, nothing now prevents Plaintiffs from supplementing their response with the
specific detail and the factual information accrued after months of discovery.

This is particularly so because the majority of factual information relevant to this interrogatory
has been in Plaintiffs' control since the outset of the case. For example, Plaintiffs' alleged lost sales,
lost conveyed sales, lost licensing revenue, lost opportunities, lost investment value, and lost business
value are information readily and uniquely available to them. And Plaintiffs have admitted in the
context of a different interrogatory that six of their employees "have factual *information regarding
Plaintiffs' harm caused by Defendants' misappropriation* of trade secrets." Ex. 6 at 8-9 (emphasis
added). In any event, courts routinely require plaintiffs to provide information about their purported
harm prior to the close of fact discovery. *See, e.g., AMEC Env't & Infrastructure, Inc. v. Geosyntec
Consultants Inc*., 2013 WL 3923459 at *5 (N.D. Cal. July 26, 2013) (ordering, three months prior to
close of fact discovery, that trade secret plaintiff respond to interrogatory with "the particular harms
that [plaintiff] suffered such as the loss of a client or project"); *see also Shaw Grp., Inc. v. Zurich Am.*

---

[1] Interrogatory No. 6—which is one of the subjects of Apple's November 29, 2021 motion to compel—is entirely
inapposite to the information requested in this motion. It asks Plaintiffs to "describe in detail how [they] allegedly
developed" each of their purported trade secrets. Ex. 4 at 5.

[2] Plaintiffs have also objected on the grounds that they intend to present this information in the context of an expert
report. Ex. 3 at 41-43. But as discussed above, it is well-established that the possibility of future expert analysis does
not absolve a party from responding to an interrogatory with the information they have now. *Supra* p. 2.

Exhibit 4
Page 3

**GIBSON DUNN**

Hon. Andrew J. Guilford (Ret.)            HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY
December 23, 2021
Page 4

*Ins. Co.*, 2014 WL 1816494, at *7 (M.D. La. May 7, 2014) (in breach of duty action, requiring plaintiff to "explicitly detail [the] alleged harms" in response to interrogatories and "identify any factual bases on which it alleges it was harmed").

**III.    Interrogatory No. 17 – Plaintiffs' Damages Theories**

<u>Background.</u>   Apple's Interrogatory No. 17 asks Plaintiffs to detail the bases for their assertion that they are "entitled to any relief in this case, including … monetary damages and injunctive relief." Ex. 6 at 5.  Like their Rule 26 disclosure, Plaintiffs' response provides a laundry list of abstract legal theories of damages and remedies, with little more.  *Id.* at 6-9.  For example, Plaintiffs' articulation of its reasonable royalty theory is that they intend to seek one "for Apple's use and disclosure of Plaintiffs' trade secrets and for Apple's sales of infringing products," but Plaintiffs "have not yet determined what a reasonable royalty rate would have been." *Id.* at 7.  Plaintiffs added a brief supplement in August 2020, noting only (1) they mark their patented products, (2) they have identified a cross-licensing agreement (one that is between the two Plaintiffs), and (3) they may rely on "Purchasing & Licensing Agreements ('PLAs') with third parties" (but cannot identify those agreements or otherwise describe them for confidentiality reasons).  *See id.* at 8.  Finally, in April 2021, Plaintiffs supplemented to identify six employees who have "factual information" relevant to damages, without providing any hint as to what that information is.  *Id.* at 8-9.

<u>Argument.</u>   The Special Master should order Plaintiffs to provide the basic facts supporting their damages theories.  *See* Ex. 7 at 2-3 (highlighting specific information requested for each theory).

During the parties' meet and confer, Plaintiffs did not offer any concrete explanation for why they had failed to provide information that they have undoubtedly gathered for their affirmative case. Rather, they asserted they were still reviewing Apple's document productions.  However, much of the information requested—*e.g.*, Plaintiffs' alleged lost profits, price erosion, reasonable royalty, diminution in value, and restitution—is undeniably within Plaintiffs' "current possession, custody, or control," to the extent it exists, and Plaintiffs have a duty to produce it.  *See Kraft Am., LP v. Oldcastle Precast, Inc.*, 2013 WL 12125759, at *5 (C.D. Cal. Dec. 18, 2013); *see also* Ex. 7 at 2-3; *supra* p. 3. Indeed, Plaintiffs have admitted six of their employees have relevant "factual information" regarding damages and have provided no explanation for why they have failed to disclose that information to Apple. Ex. 6 at 8-9.  To the extent that Plaintiffs are waiting on information from Apple for some aspects of their response, they have not articulated what that is—a particularly glaring omission given that they received Apple Watch sales data well over a year ago.  *Supra* p. 2.

Plaintiffs have also suggested (once again) that supplementation is premature.  But as discussed above, this case is nearing the end of fact discovery.  Other California courts have ordered plaintiffs to supplement their damages responses along a similar timeline.  In *Corning v. Solid, Inc.*, for example, the court issued an order prior to the close of fact discovery that required the plaintiff to describe: (1) "[t]he amount of damages Plaintiff seeks under each of its asserted damages theories (including lost profits, reasonable royalty, interest and any other asserted theory)"; (2) "Plaintiff's apportionment of damages"; (3) "the time period of which Plaintiff seeks damages"; (4) "documents on which Plaintiff intends to rely to support its damages claim"; and (5) "[t]o the extent Plaintiff claims that it lost profits as a result of the alleged infringement, the facts on which Plaintiff bases its claim," 306 F.R.D. 276, 279 (N.D. Cal. 2015).  Similarly, in *Mobile Storage v. Fujitsu Ltd.*, the court found insufficient the plaintiff's response to a comparable interrogatory which listed only the high-

Exhibit 4
Page 4

**GIBSON DUNN**

Hon. Andrew J. Guilford (Ret.)                **HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**
December 23, 2021
Page 5

level damages theories plaintiff intended to pursue, and ordered plaintiff to "provide the factual basis
for its damages claim [and] the identification of all facts to support its damages theories," 2010 WL
1292545, at *1 (N.D. Cal. Mar. 31, 2010).  The Special Master should enter a similar order here.

## IV.    Interrogatory No. 28 – Plaintiffs' Products That Practice The Trade Secrets

   **Background**.  Apple's Interrogatory No. 28 asks Plaintiffs to identify (1) "every product sold
or offered for sale by [Plaintiffs] that practices, or has ever practiced . . . [each alleged] Trade Secret,"
and (2) "explain … the functionality in each product that allegedly [practices each] Trade Secret, the
identity of all documents that support [Plaintiffs'] assertion, and the earliest date on which each
product was first offered for sale and sold." Ex. 8 at 5-6.  Plaintiffs' response merely identifies broad
categories of alleged trade secrets—*e.g.*, "demodulation and multiplexing techniques," and "light
propagation and light piping management trade secrets." *Id*. at 6-11.  Plaintiffs also failed to identity
the functionalities in each product that purportedly use the alleged trade secrets, or the date on which
each product purportedly incorporating the alleged trade secrets was first sold.

   **Argument**.  Plaintiffs should be required to supplement their responses to provide the
requested detail, factual information, and evidence supporting their damages claims, including an
identification of Plaintiffs' products and the features therein that purportedly practice each of the
alleged trade secrets.  Information regarding the specific functionalities in Plaintiffs' products that
purportedly practice the alleged trade secrets, and the first incorporation and sale thereof, is plainly
relevant to damages, including demand, valuation, apportionment, and lost profits.  *See, e.g.,
LivePerson, Inc. v. [24]7.ai, Inc.,* 2019 WL 3254226, at *4 (N.D. Cal. July 19, 2019) (explaining
trade secret damages require "'apportion[ment] for the features that relate to trade secrets'");
*Radware, Ltd. v. F5 Networks, Inc*., 147 F. Supp. 3d 974, 1014-1015 (N.D. Cal. 2015) (explaining
"whether demand exists for the [protected] feature is" relevant to "the existence of non-infringing
alternatives," and to "the entire market value rule to recover lost profits").  Moreover, there can be no
claim that a full response would be premature, given that the deadline for substantial completion of
ESI discovery has passed and only a few months remain for fact discovery.

   Faced with these points, Plaintiffs' primary response has been that they provided this
information in responding to Apple's Interrogatory No. 26.  *E.g.*, Ex. 7 at 3-4.  In reality, Plaintiffs'
response to Interrogatory No. 26 is itself deficient and is subject to Apple's November 29, 2021
motion to compel, which is scheduled to be heard by the Special Master on January 5, 2022.  *See*
Apple 11/29/21 Mot. to Compel at 6-7; Apple 12/20/21 Reply at 4.  Notably, the responses to
Interrogatory No. 26 and 28 fail to identify (1) each product sold or offered for sale for *each* alleged
trade secret (as opposed to categories of trade secrets), (2) the specific functionalities in those products
that use the specified trade secrets, or (3) the date on which each product incorporating the alleged
trade secrets was offered for sale or sold.  In addition, Interrogatory No. 28 requests different
information (*e.g.*, it asks for information related to Apple patents and patent applications), and calls
for the requested information to be formatted in a particular way (a chart).  *See* Ex. 8 at 5-6.

   Sincerely,

   /s/ Kenneth G. Parker

   Kenneth G. Parker

Exhibit 4
Page 5