UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SA CV 20-00048 JVS (JDEx)                              Date  March 21, 2022

Title  Masimo Corporation, et al. v. Apple Inc.

Present: The Honorable  **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] Order Regarding Apple's Objections to Special Master Order No. 4**

Before the Court is Apple's Objections to the Special Master's Order No. 4. See Obj., ECF Nos. 614, 616 (sealed); see also ECF No. 617 (Special Master Order No. 4). Plaintiffs filed an opposition. See Opp., ECF Nos. 621-2[1], 625 (sealed). Apple filed a reply. See Reply, ECF Nos. 631, 634 (sealed).

A review of the briefing demonstrates that this matter may be decided without the need for oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Therefore, the Court **VACATES** the hearing. For the following reasons, the Court **SUSTAINS** the objections.

## I. BACKGROUND

The parties are familiar with the facts of this case so the Court recites them here only as necessary to resolve this dispute.

This dispute relates to Apple's Interrogatory No. 28, which requests information about *when* Plaintiffs' products incorporated the asserted trade secrets. Apple states that it "receive[d] Plaintiffs' identification of *which* of their products purportedly incorporate the alleged trade secrets at issue in this case and how those alleged trade secrets are incorporated into those products." Obj. at 1 (emphasis added). But, Apple argues, the

---

[1]  The redacted version should have also been filed as a standalone document. *See, e.g.*, ECF Nos. 614, 631. Counsel are ordered to review Local Rule 79-5.

response is insufficient because it omits "the earliest date on which Plaintiffs offered the products incorporating the alleged trade secrets for sale," which Apple contends is "directly relevant to Plaintiffs' damages claim for lost profits and any lost value in the alleged trade secrets that Plaintiffs claim to have suffered." Id. Further, Apple argues that if trade secrets were disclosed in a publicly available product in an inspectible way, the information is no longer protected. Id. Apple seeks an order requiring Plaintiffs to "identify[] the dates on which each product incorporating an alleged trade secret was first offered for sale and sold." Id.

First, following an earlier motion to compel by Apple on related Interrogatory No. 26, the Special Master "ordered Plaintiffs to explain '[f]or the technical trade secrets' 'the functionality that allegedly incorporates each alleged Trade Secret,' including 'disclos[ing] to Apple the functionality (e.g., software algorithm) itself that actually tracks each technical trade secret, and which products the functionality is actually present in.'" Id. at 3 (quoting ECF No. 580 at 10-11).

Second, in the underlying motion to compel, Apple argued that Plaintiffs' response to Interrogatory No. 28 was deficient because it "'failed to identity the functionalities in each product that purportedly use the alleged trade secrets, or the date on which each product purportedly incorporating the alleged trade secrets was first sold.'" Id. at 4 (quoting ECF No. 614-6 at 5). Apple argued this was "'relevant to damages, including demand, valuation, apportionment, and lost profits.'" Id. (quoting ECF No. 614-6 at 3). The Special Master denied Apple's motion, finding its arguments "unpersuasive," explaining that "[p]roportionality, relevance, undue burden, and other considerations do not support compelling the additional information sought by Interrogatory No. 28." See ECF No. 617 at 7-8.

Apple seeks review of this portion of Order No. 4 because it contends this information is relevant to Plaintiffs' "lost profits" and "loss of business value" damages theories. See Obj. at 6. Further, Apple argues this information is relevant to show whether the trade secrets have value (e.g., delay in incorporation may undermine value, time of incorporation may have effected demand) as well as overall damages and damages apportionment related to the trade secret-related features. Id. at 6-8. Apple concludes there is "no real dispute" that this information is relevant to damages. Id. at 9.

Further, Apple argues that proportionality favors disclosure because the requested "information is readily within Plaintiffs' possession and likely could be drawn from Plaintiffs' financial or other business records, such that there would be no burden associated with its production." Id.

Plaintiffs oppose Apple's request because the "Objection[s] seek[] to compel production of information than [Apple] did not seek from the Special Master," and in any event, "Masimo already provided discovery showing 'when' Masimo sold various products incorporating Masimo's trade secrets by producing detailed sales data" from

which Apple can ascertain the requested information. Opp. at 1. Further, Plaintiffs state that when the Special Master denied Apple's request for the same information as it relates to Interrogatory No. 26, Apple did not challenge that portion of Order No. 3. Id. at 1-2. Plaintiffs aver that, "[a]fter the Special Master entered Order No. 3, Apple narrowed its motion to two pieces of 'different information' that were not part of Interrogatory No. 26." Id. at 8. Plaintiffs note that its opposition and Apple's reply focused on those two issues, thus "[t]he Special Master's tentative order addressed only those two issues." Id. Likewise, "[t]he Special Master's [final] Order No. 4 addressed those two issues" only and "reject[ed] Apple's arguments and den[ied] Apple's motion on both issues." Id. Plaintiffs argue that Apple should not be allowed to use its present Objections to collaterally attack Order No. 3 on Interrogatory No. 26 when the deadline to do so has long passed. Id. at 9.

Plaintiffs also argue that Apple's request lacks merit because, as "Masimo previously explained[,] [] the law does not require the trade secret owner to identify when it first began using its trade secrets." Id. (citing MSC Software Corp. v. Altair Eng'g, Inc., 2015 WL 13273227, at *18 (E.D. Mich. Nov. 9, 2015)). In any event, Plaintiffs explain that "Masimo told Apple what products incorporate Masimo's trade secrets and produced extensive sales data for those products;" therefore, "the information that Apple seeks regarding 'when' Masimo sold these products may be determined by Apple as easily as by Masimo by examining the sales data that Masimo produced as it is kept it in the ordinary course of business." Id. at 11. To the extent Apple seeks more information regarding trade secret functionality, Plaintiffs argue that information has been provided in the supplemental response to Interrogatory No. 26, which is also incorporated for Interrogatory No. 28.[2] Id. at 11-12.

In reply, Apple observes that Plaintiffs' opposition did *not* dispute "the relevance and discoverability" of the requested sales information, or argue "any burden" with providing the requested information. Reply at 1. Further, Apple explains that its reply on the motion to compel focused on the arguments raised in Plaintiffs' opposition (patent-related arguments and the request for information in chart form), but this did not waive the arguments raised in Apple's moving papers and reiterated at the hearing. Id. at 4. Specifically, Apple notes that, at the hearing, it continued to argue that "when" Plaintiffs' products incorporated the trade secrets is important to damages. Id. at 5. Moreover, Apple contends that the Special Master's Order No. 3 concerning Interrogatory No. 26 is inapposite because it does not address the crux of what Apple seeks with respect to Order No. 4, that is, "information about *when* each product incorporating the alleged trade secrets was first offered for sale or sold" (as opposed to when each trade secret may have been incorporated into a product during design and development, i.e., Interrogatory No. 26). Id. at 6 (emphasis added). Further, although Plaintiffs state that it has already provided to Apple information that would allow it to discern "when," Apple argues this is

---

[2] Plaintiffs note that the parties are meeting and conferring on this supplemental response and any further dispute will be presented to the Special Master in the first instance. Id. at 12.

insufficient because "Plaintiffs have not identified what specific records contain the information requested (either in response to Interrogatory No. 28 or in their response to Apple's objections)." Id. at 7.

## II. LEGAL STANDARD

"The court must decide de novo all objections to findings of fact made or recommended by a master." Fed. R. Civ. P. 53(f)(3). "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53 (f)(5); see also ECF No. 470, Order Appointing Special Master at ¶¶ 15-17 ("Standards of review for objections to the Special Master's rulings shall be as follows per Rule 53(f)(3)-(5): The Court must decide de novo all objections to findings of fact. The Court must decide de novo all objections to conclusions of law."). "The Special Master's discovery rulings and recommendations are inextricably intertwined with conclusions of fact and law and so are reviewed de novo." Hernandez v. Lynch, No. ED CV 16-620 JGB(KKx), 2019 WL 6998774, at *2 (C.D. Cal. June 18, 2019). But a party "cannot raise entirely new arguments for the first time on an objection to a Special Master's Report." World Triathalon Corp. v. Dunbar, 539 F. Supp. 2d 1270, 1278, n.13 (D. Haw. 2008), aff'd in part, appeal dismissed in part sub nom. World Triathlon Corp. v. Hapai, 320 F. App'x 778 (9th Cir. 2009).

Discovery requests must be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Once the party seeking discovery has demonstrated relevance under Rule 26(b)(1), "the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." Heredia v. Sunrise Senior Living LLC, Case No. 8:18-cv-01974-JLS (JDEx), 2020 WL 3108699, at *2 (C.D. Cal. Jan. 31, 2020) (internal citation omitted).

## III. DISCUSSION

The Court has conducted a de novo review of the record relating to this discovery dispute, including the Special Master's legal conclusions and factual findings. Based upon that review, for the reasons explained below, the Court **SUSTAINS** Apple's objections.

In Order No. 4, the Special Master stated that "Regarding Interrogatory No. 28, the parties dispute whether Masimo (1) should be required to identify every product it has sold or offered for sale that practices an Apple Patent or Apple Application and (2) should be required to provide its response to the interrogatory in chart form." ECF No. 617 at 7. In resolving the disputes as framed, Order No. 4 explains that, "The Special Master has considered all of the arguments presented, and finds Apple's position on *both*

*issues* unpersuasive. Proportionality, relevance, undue burden, and other considerations do not support compelling the additional information sought by Interrogatory No. 28." Id. at 8 (emphasis added). To the extent the ruling on "both issues" relates to issues (1) and (2) as framed by the Special Master, the ruling appears supported by the record. Apple, however, is not challenging the Special Master's ruling as it relates to "both issues" as framed in Order No. 4 (i.e., (1) identifying every patent-relevant product Plaintiffs have sold or (2) providing the information in chart form). Instead, in essence, Apple argues that the Special Master erred by denying the portion of its motion that sought information concerning *when* Plaintiffs' trade secret-bearing products were sold.[3]

A de novo review of the record demonstrates that Apple has met the required baseline relevance showing under Rule 26(b)(1). In connection with the trade secret misappropriation claims, Plaintiffs seek damages for, inter alia, lost profits and loss of business value. Accordingly, the Court agrees with Apple that *when* products embodying the asserted trade secrets were sold is relevant to Plaintiffs' damages. *Accord* Special Master Order No. 3, ECF No. 580 at 11 ("Apple is entitled to fully explore its potential competing damages theories, including theories relying on apportionment of plaintiff's products.").

For example, if adding trade secrets-based features to existing products increased product demand, Plaintiffs may argue that those trade secrets added value and therefore misappropriation caused more damages. Conversely, Apple may attempt to show that trade secrets-based components had no effect on consumer demand or that applying proper apportionment results in little to no trade secrets-related damages. See, e.g., Attia v. Google LLC, 2018 WL 4202151, at *2 (N.D. Cal. Sept. 4, 2018) (defendant in a trade secret misappropriation case is "certainly entitled to discovery relating to the value or lack of value of the alleged trade secrets and plaintiffs' other allegations of harm, including plaintiffs' prior unsuccessful efforts to commercialize the alleged trade secrets and the financial benefits (or lack thereof) that plaintiffs obtained from the alleged trade secrets"). Therefore, the Court finds the information relevant, a conclusion Plaintiffs do not attempt to undermine in their opposition.

Because Apple has demonstrated relevance, the burden shifts to Plaintiffs to show disproportionality. In their opposition, Plaintiffs do not dispute proportionality or argue undue burden. Instead, Plaintiffs state that they have already provided sufficient sales information, which Apple may "examin[e]" and from which Apple can "determine[]" when the relevant products were sold. Opp. at 11. Plaintiffs' suggestion that this information is easily discernable undermines any argument that the burden of providing this information would be disproportionate to the needs of the case. Since Plaintiffs admit

---

[3] As Plaintiffs note, Apple barely mentions Order No. 4. Although the Court conducts de novo review, as the party challenging the Special Master's order, Apple would have been well served to frame its challenge in direct reference to the order rather than relying on the Court to glean the discrepancy between the arguments raised and the order from its de novo review of the entire record.

that this information is readily available, the Court rules that it must be provided to Apple in a discernable form. For example, at a minimum, Plaintiffs must direct Apple to where and how in the existing the production Apple may find and "determine" this information. If complete responsive information has not been provided, Plaintiffs must provide it in an understandable form, which does not necessarily mean a table form.[4]

      The Court rejects Plaintiffs' arguments that *their* choice to narrow the issues in response to Apple's motion to compel, and Apple's reply thereto, somehow waived issues that Apple raised in its moving letter to the Special Master and at the hearing. Apple's request for "when" was presented and preserved. See, e.g., Andrea Decl, Ex. 4 ECF No. 614-6 at 5 (Moving letter: "Plaintiffs also failed to identity [sic] the functionalities in each product that purportedly use the alleged trade secrets, or the date on which each product purportedly incorporating the alleged trade secrets was first sold. . . . Information regarding the specific functionalities in Plaintiffs' products that purportedly practice the alleged trade secrets, and the first incorporation and sale thereof, is plainly relevant to damages, including demand, valuation, apportionment, and lost profits."); ECF No. 634-1, Ex. 13 at 5-6, Feb. 4, 2022 Hearing Tr. at 58:25-59:4 ("If it's being practiced in a product, we're entitled to know what that product is, where it is in the product, and when it was put in there, when the product was sold, and so forth. It is -- that is a key ingredient in the value of trade secret."); id. at 59:5 (THE SPECIAL MASTER: "What, where, when."); id. at 60:6-12 ("[T]hat also reflects a lack of value of the trade secret. So this all does relate to specificity of damages. . . . [S]ome trade secrets are being practiced. Others are not being practiced. And it is a reflection of value."); id. at 65:2-3 ("And so when they sold that product that incorporates that trade secret is really important. . . . That reflects value. It also potentially reflects, with respect to some trade secrets, that they were not secret after the product was sold."); id. at 65:22-25 ("So they reflect on the value of the trade secrets, and we think that's very important. We think an expert is going to want to know that. That's why we're asking for it."); see also id. at 66:15-21, 67:1-5 (same).

---

[4] The Court observes that Plaintiffs will likely need to provide this information to their own damages expert in support of proving trade secret damages, including calculating any relevant apportionment. Accordingly, the Court suggests that Plaintiffs consider providing the information to Apple in the same user-friendly format in which it will provide the same information to their own damages expert. If both parties are examining the same damages information, this will streamline expert discovery and potentially avoid unnecessary Daubert challenges. Moreover, as the Court stated in a recent order concerning scheduling, "[g]iven the talent and experience of counsel on both sides, the current situation is at a minimum perplexing," see ECF No. 586 at 1, and the Court expects the parties to work together to adhere to the recently modified Scheduling Order and complete discovery in a timely and efficient manner.

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the objections. Consistent with the Special Master's practice, additional discovery responses required by the ruling on Apple's objections shall be served within 28 days of this order.

Because the briefing contained sealed material, when the Court docketed the sealed version of this order, the Court asked the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk whether any parts of the sealed order should be redacted from the publicly filed version of the order. The parties did not request that any portion of the order remain sealed. Thus, the entire order is now published on the public docket.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
|  | Initials of Preparer | lmb |