JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
   bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
   bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br>a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 7**<br><br>Date: May 16, 2022<br>Time: 1:30 p.m.<br><br>Discovery Cut-Off: Aug. 12, 2022<br>Pre-Trial Conference: Mar. 13, 2023<br>Trial: Mar. 28, 2023 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth St., Suite 2600
Denver, CO 80202
Tel: 720.274.3152 / Fax: 720.273.3133

# TABLE OF CONTENTS

I.    Introduction.................................................................................................. 1

II.   Background.................................................................................................. 1

    A.   Judge Early Grants Plaintiffs' Motion to Include Tim Cook On The List Of Apple's ESI Custodians ............................................ 1

    B.   Apple Reviews Mr. Cook's ESI And Produces Responsive, Non-Privileged Documents.................................................................. 3

    C.   The Special Master Grants Plaintiffs' Motion Requiring Apple To Produce *All* Of Mr. Cook's Non-Privileged ESI That Hit On Plaintiffs' Broad Search Terms ......................................................... 4

    D.   Plaintiffs Reject Apple's Compromise Offer To Produce All Documents Except For Those That Are Highly Sensitive And/Or Have Nothing To Do With The Issues In This Case .............................. 6

III.  Legal standard ............................................................................................ 7

IV.  Argument..................................................................................................... 8

    A.   Judge Early's September 29 Ruling Only Covers Documents That Are *Responsive* To Plaintiffs' Requests For Production ........................ 9

    B.   To The Extent Responsiveness And Relevance Are Distinct Concepts, Judge Early's September 29 Ruling Did Not Preclude Apple From Reviewing Documents For Relevance............................. 11

    C.   If This Court Concludes the Special Master's Reading Of Judge Early's Ruling Is Correct, That Ruling Should Be Reversed................ 14

V.   Conclusion ................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Sybase, Inc.*,
468 F.3d 642 (10th Cir. 2006)............................................................... 7

*BancPass, Inc. v. Highway Toll Admin., LLC*,
2016 WL 4031417 (W.D. Tex. July 26, 2016).......................................11

*Cabrales v. Aerotek, Inc.*,
2018 WL 2121829 (C.D. Cal. May 8, 2018) ................................... 13, 14

*FlowRider Surf Ltd. v. Pacific Surf Designs, Inc.*,
2016 WL 6522807 (S.D. Cal. Nov. 3, 2016) ........................................ 8

*In re Lithium Ion Batteries Antitrust Litig.*,
2015 WL 833681 (N.D. Cal. Feb. 24, 2015)..........................................11

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
2012 WL 7783405 (C.D. Cal. Apr. 23, 2012)................................. 13, 14

*NFIB v. Sebelius*,
567 U.S. 519 (2012) ............................................................................ 9

*O'Donnell/Salvatori Inc. v. Microsoft Corp.*,
339 F.R.D. 275 (W.D. Wash. 2021)................................................7, 14

*Palmer v. Cognizant Tech. Sols. Corp.*,
2021 WL 3145982 (C.D. Cal. July 9, 2021)...................................8, 11

*Phillips v. Raymond Corp.*,
213 F.R.D. 521 (N.D. Ill. 2003).............................................................14

*Schur v. L.A. Weight Loss Centers, Inc.*,
577 F.3d 752 (7th Cir. 2009).............................................................. 7

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
2002 WL 818061 (D. Del. Apr. 30, 2002)..............................................10

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
2007 WL 2758571 (C.D. Cal. Sept. 18, 2007)......................................10

*Youngevity Int'l Corp. v. Smith,*
   2017 WL 6541106 (S.D. Cal. Dec. 21, 2017) ........................................... 8

## STATUTES, RULES, AND REGULATIONS

Federal Rule of Civil Procedure 26 ................................................................ 5, 7

Federal Rule of Civil Procedure 53 ................................................................. 7

## OTHER AUTHORITIES

Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary: Rule 34* (Feb. 2022 update) ........................ 8

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 7
iii
CASE NO. 8:20-cv-00048-JVS (JDEx)

## I.   INTRODUCTION

Apple objects to the Special Master's Order Number 7, which requires Apple to produce *all* its CEO's non-privileged ESI documents that hit on broad search terms proposed by Plaintiffs, including ███████████████████████████████.  The Special Master granted this sweeping relief based on his unexplained belief that "Judge Early intended … that Apple be required to produce all documents uncovered by the search terms identified."  Dkt. 641 at 3.  But Judge Early merely held that Mr. Cook should be included as one of Apple's ESI custodians and that Apple should produce "all *responsive*, non-privileged documents" from Mr. Cook that hit on Plaintiffs' search terms, Dkt. 502 at 2 (emphasis added)—the same filter that both parties have applied to the ESI from each of the dozens of custodians in this case.

The Special Master's order is impossible to square with either the plain text of Judge Early's ruling or with the normal safeguards of the Federal Rules that a party need only produce documents that are relevant and proportional to the litigation.  This Court should sustain Apple's objections and reverse the Special Master's order requiring Apple to produce *all* of Mr. Cook's non-privileged documents that hit on Plaintiffs' expansive search terms, regardless of responsiveness, relevance, or proportionality.

## II.   BACKGROUND

### A.   Judge Early Grants Plaintiffs' Motion to Include Tim Cook On The List Of Apple's ESI Custodians

In May 2021, Plaintiffs filed a motion to compel Apple to "collect[] ESI from Apple's CEO, Tim Cook" as part of the broader efforts to collect ESI from designated Apple custodians.  *See* Dkt. 378-2 at 1.  Among other things, Plaintiffs argued that the burden imposed on Mr. Cook and Apple would be "minimal" because "[t]his is simply an ESI search."  Ex. 14 at 7.  Apple opposed on the grounds that it was already searching the files of 28 other custodians (including Apple's COO, Jeff Williams, and other Apple executives), and Mr. Cook was highly unlikely to have relevant documents that Plaintiffs

1   could not obtain through other ESI custodians.  Dkt. 378-2 at 11-13.  Judge Early denied

2   Plaintiffs' motion, explaining that he was relying on Apple's representation that Mr.

3   Cook was "not likely to have [relevant] discoverable information."  Ex. 14 at 5.

4        Plaintiffs subsequently filed a motion for reconsideration, primarily relying on an

5   email Marcelo Lamego sent Mr. Cook that had been produced in the *Masimo v. True*

6   *Wearables* case.  *See* Dkt. 474-2 at 1.  Plaintiffs argued this email showed that Mr. Cook

7   possessed at least some documents relevant to this litigation and justified "searching

8   Cook's ESI."  *Id.* at 7-11.  Judge Early agreed—notwithstanding ███████████████

9   ██████████████████████████████████████████████████████████████████

10  ████████████████████████████████—and ultimately concluded that "I now have

11  evidence in front of me that at least one time Mr. Cook had relevant information in his

12  email strings."  Ex. 16 at 32.  Accordingly, Judge Early found that "Mr. Cook being

13  designated as an ESI custodian is proportional to the needs of this case."  *Id.* at 43.

14  Rather than simply adopt Plaintiffs' proposed broad search terms, however, Judge Early

15  asked the parties to meet and confer to "narrow [the terms] a little bit."  *Id.* at 44-48; *see*

16  *also id.* at 50-51.

17       Following the hearing, the parties exchanged a flurry of emails regarding what

18  search terms to use and what documents to produce.  *See*, *e.g.*, Ex. 6 at 1-4.  Ultimately,

19  the parties reached an agreement on five sets of search terms:

20  • Masimo OR Cercacor OR Kiani OR Diab (including searching for misspellings

21    Massimo and Ceracor)

22  • Lamego OR Marcelo OR O'Reilly OR O'Reily (including searching for the

23    misspelling ORielly);

24  • "efficient infringement"

25  • (patient OR medical) NEAR/5 monitor*

26  • Healthcare AND ("pulse rate" OR "heart rate OR "blood oxygen" OR SpO2 OR

27    "pulse oximeter" OR "pulse oximetry" OR "oxygen saturation" OR "remote

28

1  monitoring" OR "care plans" OR "data analytics" OR healthkit OR researchkit

2  OR precision OR tailor OR custom).

3  Dkt. 502 at 1-2.  This agreement came with an important caveat.  Apple stated that ████

4  ███████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████

7  ████████████████████  Ex. 6 at 1 (emphasis in original).

8  Judge Early adopted the parties' agreed-upon search terms in a brief order issued

9  on September 29, 2021.  *Compare* Dkts. 494 (Plaintiffs' first status report) *and* 499

10  (Plaintiffs' second status report) *with* Dkt. 502 at 1-2 (order).  The order stated that Apple

11  was required to "search Tim Cook's electronically stored information using the

12  following search terms … and produce all ***responsive***, non-privileged documents." Dkt.

13  502 at 2 (emphasis added).

14  **B.     Apple Reviews Mr. Cook's ESI And Produces Responsive, Non-**

15  **Privileged Documents**

16  Following the September 29 Order, Apple ran Plaintiffs' broad search terms,

17  ████████████████████████████.  Ex. 2 at 1-2.  Apple reviewed the results of the

18  searches and produced ████████████████████████ in October 2021.  Ex. 1

19  at 2.  ███████████████████████████.  Ex. 2 at 1-2.

20  Apple did not produce several categories of non-responsive documents,

21  including—for example—███████████████████████████████████████

22  ███████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████

24  ██████████████████████████████████.  *See* Ex. 2 at 1-3.

25  Apple subsequently provided Plaintiffs with additional, detailed information to

26  show that Plaintiffs' search terms were generating false hits.  Exs. 3, 5.  Apple

27  explained, for example, that the vast majority of terms hit on ████████████████

28



When Plaintiffs continued to object to the scope of Apple's production, Apple conducted a secondary review of the documents hitting on the search terms raised by Plaintiffs as further diligence. *See* Ex. 5 at 1-2.  Apple produced an additional document as a result of this review, but otherwise confirmed the results of its initial responsiveness assessment.  Ex. 5 at 2.

**C.    The Special Master Grants Plaintiffs' Motion Requiring Apple To Produce *All* Of Mr. Cook's Non-Privileged ESI That Hit On Plaintiffs' Broad Search Terms**

On February 25, 2022, Plaintiffs filed the motion at issue here.  Although the very first sentence of Plaintiffs' motion purported to seek "*compl[iance]* with Judge Early's [September 29] order," which required Apple to produce responsive, non-privileged documents from Mr. Cook, Plaintiffs openly acknowledged that they were seeking "*all documents* that hit on the Court-ordered search terms without withholding documents for any reason other than privilege.*" Ex. 19 at 1, 5 (emphases added).  Plaintiffs argued that this remedy was necessary because Apple had purportedly "proven unwilling to discharge its duty to produce 'all responsive, non-privileged documents'" that hit on the agreed-upon search terms.  *Id.* at 5.

The Special Master initially rejected Plaintiffs' arguments. In his tentative ruling, the Special Master recognized that Federal Rule of Civil Procedure 26(b) limits discovery to matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Ex. 22 at 3. Plaintiffs' position, the Special Master observed, boiled down to the assertion that "in a case with millions of pages already produced[,] each side should not be filtering for threshold relevance but instead moving ahead in producing every single non-privileged document that hits on a search term, even where it was a document hit based on 'references to people with the first or last name Massimo, a street name in Rome, a clothing brand, [or] a restaurant.'" *Id.* The Special Master concluded that this approach was untenable, explaining that "[s]ome basic trust is required to engage in the litigation process" and "[t]he Special Master can only order so many sworn declarations and play out so many scenarios where trial tactics could address the discovery disputes now being raised pre-trial." *Id.*

At the hearing, Plaintiffs contested the tentative ruling. They argued that "the context of this motion is really enforcing what Judge Early has done" and that "[t]he question here, from Judge Early's perspective, is what's responsive." Ex. 23 at 8-9; *accord id.* at 15 (Plaintiffs' counsel stating that "I wish the literal language of Judge Early's order would be enforced"). Plaintiffs also (contradictorily) argued both that (1) Judge Early's September 29 ruling "said nothing about relevance," and (2) "Judge Early disagreed with Apple's view of relevance" and "under the unique procedural posture we're in[, Apple] already argued about relevance to Judge Early and Judge Early didn't believe them." *Id.* at 10-11.

The Special Master changed course following oral argument and held that Apple was required to "produce *all* [of Mr. Cook's] ESI identified using the search terms stated in Judge Early's September 29, 2021 Order." Dkt. 641 at 1-3 (emphasis added). The final order "emphasize[d the Special Master's] concerns … regarding ESI data dumps and notions of basic trust in complex litigations," and acknowledged Judge Early's

1   September 29 ruling (1) sprung from the finding that Mr. Cook possessed a single
2   relevant document and (2) referenced the production of "*responsive*, non-privileged
3   documents." *Id.* at 2 (emphasis added). Still, the Special Master concluded that he had
4   been "persuaded that in the specific circumstances of this dispute," Judge Early had
5   intended "that Apple be required to produce *all documents* uncovered by the search
6   terms identified, without any determinations made by Apple regarding their perceived
7   relevance to this case." *Id.* (emphasis added).

8       **D.    Plaintiffs Reject Apple's Compromise Offer To Produce All**
9           **Documents Except For Those That Are Highly Sensitive And/Or**
10          **Have Nothing To Do With The Issues In This Case**

11      Following the Special Master's ruling, Apple reached out to Plaintiffs on April 12
12  with a compromise: to avoid further burdening the Court and delaying resolution, Apple
13  would agree not to object to the order if Plaintiffs would agree to exclude from
14  production a narrow list of categories of information that could not reasonably be
15  understood to be within the scope of Judge Early's order. *See* Ex. 24 at 1-2. Specifically,
16  Apple offered to produce every document that hit the search terms except for:



1 ▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

2 *Id.* at 2.   Under this agreement, Apple would still have gone far beyond the bounds of

3 Judge Early's order by producing non-responsive documents identified using the parties'

4 search terms.   For example, Apple would have ▆▆▆▆▆▆▆▆▆▆▆▆

5 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

6 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

7 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

8       Plaintiffs waited until 10:18am on April 15—i.e., the last day for Apple to object

9 to the Special Master's order—and then declined to accept the compromise without

10 substantive explanation.   *See* Ex. 25 at 1.   Apple accordingly filed these objections.

11                          **III.   LEGAL STANDARD**

12       Under this Court's order appointing the Special Master, this Court reviews *de*

13 *novo* all objections to findings of fact and conclusions of law.   *See* Dkt. 470 at 4; *accord*

14 Fed. R. Civ. P. 53(f)(3)-(4).   This Court also has the authority to review and reverse a

15 magistrate judge's order, even if no party objected to that order in the first instance.   *See*

16 *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 (7th Cir. 2009); *Allen v.*

17 *Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006).

18       As the Special Master's tentative ruling noted, Federal Rule of Civil Procedure

19 26(b)(1) "states that 'unless otherwise *limited* by court order, the scope of discovery is

20 as follows: Parties may obtain discovery regarding any nonprivileged matter that is

21 relevant to any party's claims or defense and proportional to the needs of the case." Ex.

22 22 at 3 (emphasis in original).   "While there is little case law" as to whether the

23 "relevance standard from the civil rules … appl[ies] to document productions that are

24 the result of the execution of search terms under [an] ESI Order," "the courts that have

25 addressed it have almost uniformly held that a relevance review, and the withholding of

26 irrelevant documents, is appropriate."   *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339

27 F.R.D. 275, 276-278 (W.D. Wash. 2021) (collecting cases).

28

1    More broadly, courts have rejected the position that any document hitting on an

2    agreed-upon ESI search term is "presumptively relevant and responsive." *See*

3    *FlowRider Surf Ltd. v. Pacific Surf Designs, Inc.*, 2016 WL 6522807, at \*7 (S.D. Cal.

4    Nov. 3, 2016); *accord Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at \*10 (S.D.

5    Cal. Dec. 21, 2017) (noting that documents are not responsive "solely because they hit

6    on a search term the parties' agreed upon"). Put slightly differently, ordering a party to

7    "produce all documents that contain [a] search term without a responsiveness review"

8    cannot be squared with Rule 26(b)(1)'s relevancy and proportionality requirements.

9    *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at \*9 (C.D. Cal. July 9, 2021)

10   (refusing to "compel defendants to produce any document simply because it contains a

11   search term whether or not it is responsive…, or, by extension, whether or not it is

12   relevant and proportional"); *see also* 1 Gensler & Mulligan, *Federal Rules of Civil*

13   *Procedure, Rules and Commentary: Rule 34* (Feb. 2022 update) ("The fact that a

14   document contains one or more search terms does not mean that the document must be

15   produced [and u]nless the parties agree otherwise, the producing party still reviews the

16   'hit' set for relevance and responsiveness").

## IV.   ARGUMENT

18   The sole basis for the Special Master's order was his belief that Judge Early's

19   "intent[]" for his September 29 ruling was for Apple to "produce *all* documents

20   uncovered by the search terms identified." Dkt. 641 at 3. It was not.

21   Plaintiffs never asked Judge Early for the relief the Special Master granted—the

22   underlying motion was merely a request to add Mr. Cook to Apple's list of ESI

23   custodians. Indeed, the plain text of Judge Early's ruling requires the production of

24   "***responsive***, non-privileged documents," Dkt. 502 at 2 (emphasis added), and Plaintiffs

25   have failed to identify requests for production that would cover information about such

26   things ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In any event, nothing in

27   Judge Early's September 29 ruling (or the oral argument that preceded it) displaced the

28

fundamental legal principle that a document is not presumptively relevant simply because it includes an agreed-upon search term.  Finally, even if Judge Early's ruling could be read as expansively as the Special Master believed, this Court should exercise its authority to reverse that ruling—because it is in serious tension with the Federal Rules, the idea that Apple should produce *all* non-privileged documents was not briefed, and it would obviate a number of carefully tailored and more specific discovery rulings on issues like Mr. O'Reilly's compensation.

### A.    Judge Early's September 29 Ruling Only Covers Documents That Are *Responsive* To Plaintiffs' Requests For Production

Judge Early's September 29 ruling is clear:  It required Apple to produce only those documents that (1) hit on the agreed-upon search terms and (2) are "responsive *and* non-privileged."  Dkt. 502 at 2 (emphasis added).  The Special Master's order quoted this language in passing, Dkt. 641 at 2, but gave it no effect.

The Special Master provided no explanation for this aspect of his ruling beyond his vague statement that Judge Early did not "intend[]" to restrict Apple's production to responsive documents.  Dkt. 641 at 3.  The text of Judge Early's order, however, is the best indication of his intent, *cf. NFIB v. Sebelius*, 567 U.S. 519, 544 (2012) ("[T]he best evidence of Congress's intent is the statutory text."), and even Plaintiffs' counsel merely urged the Special Master to enforce "the literal language of Judge Early's order," Ex. 23 at 15.  In any event, Judge Early clearly contemplated that Apple would perform some kind of review of the documents swept up in the search.  During oral argument, Judge Early raised no concerns when Apple noted that it would need extra time for production to allow for "additional review of Mr. Cook's emails, just given the importance"—indeed, Judge Early encouraged the parties to meet and confer on the precise timing of production.  *See* Ex. 16 at 51.

The Special Master's failure to adhere to the responsiveness limitation in Judge Early's September 29 ruling was significant.  Plaintiffs identified only a handful of

1    requests for production that were implicated by the requested search terms, all of

2    which fell into two buckets: ████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████████████████

5    ████    Had the Special Master enforced even the narrowest possible version of the

6    responsiveness requirement, Apple would not be required to produce documents

7    ranging from █████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████. *See supra* pp. 6-

9    7.

10        Tellingly, Plaintiffs' motion did not go so far as to try to read words out of

11   Judge Early's ruling. Rather, Plaintiffs argued that Apple should be required to

12   produce all non-privileged documents regardless of responsiveness as a remedy for

13   failing to produce what Plaintiffs viewed as a sufficient number of the documents that

14   hit on the search terms. *See* Ex. 19 at 1, 5; *see also* Ex. 23 at 10 (Plaintiffs' counsel

15   stating that if Apple had "gave us a lot" of documents that contained the search terms,

16   that would have been "fine"). But the Special Master did not adopt this theory and for

17   good reason—the only two authorities Plaintiffs cited that would justify such a harsh

18   result dealt with situations where a party failed to produce *any* responsive documents

19   at all and were sanctioned as a result. *See Wingnut Films, Ltd. v. Katja Motion*

20   *Pictures Corp.*, 2007 WL 2758571, at \*17 (C.D. Cal. Sept. 18, 2007) (defendant

21   "fail[ed] to perform any structured search for emails and other electronic documents");

22   *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 WL 818061, at \*4, \*7 (D.

23   Del. Apr. 30, 2002) (defendant "refused to produce email or electronic documents for

24   any senior Dell executive" and "could not represent to the court that it has thoroughly

25   searched … for responsive information").

26        Here, in contrast to *Wingnut* and *Tulip*, Plaintiffs have acknowledged both that

27   Apple did conduct a search for responsive information and in fact produced documents

28

1    that were responsive to its requests for production.  Ex. 19 at 3.  Courts across the

2    country have recognized that there is nothing inherently wrong with a party producing

3    a relatively low proportion of documents compared to the number of documents that

4    hit on the search terms.  To the contrary, search terms are by their very nature

5    "overinclusive," *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 833681, at *3

6    (N.D. Cal. Feb. 24, 2015), and "overly broad" terms will generate "numerous results

7    that were not responsive."  *Palmer*, 2021 WL 3145982, at *8-9; *see also BancPass,*

8    *Inc. v. Highway Toll Admin.*, *LLC*, 2016 WL 4031417, at *3 (W.D. Tex. July 26, 2016)

9    (denying motion to compel when defendant "de-duplicated [20,000] search

10   results…exclude[d] irrelevant documents, such as spam or newsletters, and then

11   independently reviewed the remaining 3,489 documents for responsiveness and

12   privilege, ultimately producing 34 documents").  As in *Palmer, Lithium*, and

13   *BancPass*, Plaintiffs ignored the detailed explanations Apple provided to contextualize

14   the scope of its production, including warnings the terms were overly broad and likely

15   to generate false hits.  *See*, *e.g.,* Ex. 2 at 1 ███████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ███████████████ ; *supra* pp. 3-4.  They cannot now claim unfair surprise.

18           **B.     To The Extent Responsiveness And Relevance Are Distinct Concepts,**

19                   **Judge Early's September 29 Ruling Did Not Preclude Apple From**

20                   **Reviewing Documents For Relevance**

21           The Federal Rules and the relevant case law establish that a party is generally

22   required to only produce *relevant* material—particularly when the party is using broad

23   terms to search ESI that may sweep in chaff.  *See supra* pp. 7-8.  While the Special

24   Master's tentative ruling adhered to this principle, *supra* p. 5, his final order (wrongly)

25   rejected it on the grounds that Judge Early had not "intended" Apple to screen its

26   production for relevance, Dkt. 641 at 3.

27

28

Nothing in Judge Early's September 29 ruling addresses the relevance question. This makes sense because the question was not directly in front of the court. Plaintiffs' original motion merely requested that Apple include Mr. Cook on the list of ESI custodians. *See supra* pp. 1-2. While Judge Early initially denied this request because he concluded Mr. Cook did not have *any* relevant documents, Judge Early reversed course on reconsideration based on his finding that Mr. Cook had relevant information in his email account "at least one time." *Supra* pp. 1-3; *see also* Dkt. 641 at 2 (Special Master's ruling noting that "*a* [relevant] document was … unearthed" (emphasis added)). Judge Early did not state that *all* of Mr. Cook's ESI was *per se* relevant. He had no occasion to do so. Judge Early simply held that the new document Plaintiffs flagged showed Mr. Cook's email account *could* contain relevant information and that therefore Mr. Cook was an appropriate custodian. *Supra* pp. 1-3.

The Special Master wrongly relied on this fairly narrow ruling to craft a form of relief that is unique to Mr. Cook's ESI. As a result of the ruling under review, Mr. Cook is the *only* custodian for which Apple must produce *all* documents that hit on Plaintiffs' search terms—no matter how private or irrelevant. That cannot be what Judge Early meant to do on the basis of one email.

The Special Master's order erroneously relies on Plaintiffs' assertion that "certain colloquies that … took place" during the motion for reconsideration hearing that showed that Judge Early did not intend to permit Apple to review the search term hits for relevance. Dkt. 641 at 3. The only oral argument passages cited in Plaintiffs' briefing, however, involved whether the specific email at issue in the reconsideration motion was relevant. *See* Ex. 21 at 1 (citing Ex. 16 at 12-26, 29, 31). Plaintiffs' counsel relied on the same passages during the oral argument in front of the Special Master, making the sweeping assertion that Judge Early "disagreed with Apple's view of relevance" as a general matter because Apple's counsel had tried to convince "Judge Early that a document was not relevant and Judge Early wasn't having any of it." Ex.

1    23 at 9-10; *accord id.* at 11 (citing the same incident to argue that this case is in a

2    "unique procedural posture in which … [Apple] already argued about relevance to

3    Judge Early and Judge Early didn't believe them"); *id.* at 29-31 (citing the same

4    incident to argue that Judge Early "disagreed with Apple on their view of relevance").

5    But this line of argument makes no sense.  As Apple's counsel explained at oral

6    argument, Judge Early assessed only whether Mr. Cook was likely to have *any* relevant

7    ESI; Judge Early did not purport to hold that *every* document in Mr. Cook's possession

8    was necessarily relevant.  *See* Ex. 23 at 25 ("[T]he issue in front of Judge Early was

9    not whether to deviate from the standard ESI search and production practice but,

10   rather, whether a search and production was going to be done of Mr. Cook's ESI.").

11   And as evidence of the cumulative nature of Mr. Cook's ESI, ██████████████

12   ███████████████████████████████████████████████████████████████

13   ██████████████████████████████.  *See supra* p. 2.

14        Plaintiffs have also argued that—regardless of Judge Early's intent—there are a

15   "half-dozen cases specifically stating that a party like Apple" does not have the

16   authority to screen an ESI production for relevance.  Ex. 23 at 10; *id.* at 16 (Plaintiffs'

17   counsel arguing that "I have six, seven cases that I'm more than happy to discuss); *id.*

18   at 31 ("many cases").  Plaintiffs did not mention any specific authority at oral

19   argument, and their briefing cited just two inapposite cases for that proposition.  *See*

20   Ex. 21 at 1 (citing *Cabrales v. Aerotek, Inc.*, 2018 WL 2121829, at *4 (C.D. Cal. May

21   8, 2018) and *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 2012 WL 7783405, at *1

22   (C.D. Cal. Apr. 23, 2012)).  To the extent the Special Master credited Plaintiffs'

23   assurances as to specific authority, that was error.

24        Neither *Cabrales* nor *InTouch* dealt with the special circumstances of this

25   case—i.e., "document productions that are the result of … search terms under [an] ESI

26   order"—and neither decision challenges the "almost uniform[]" holding from courts

27   across the country that under those circumstances, "a relevance review, and the

28

1   withholding of irrelevant documents, is appropriate." *O'Donnell*, 339 F.R.D. at 276-

2   277; *see supra* pp. 7-8.  Rather, *Cabrales* merely stated (without analysis) that a

3   wrongful termination plaintiff who did not dispute the relevance of a request for

4   production was required to turn over "all responsive documents, not merely those she

5   believes are relevant."  2018 WL 2121829, at *4.

6       *Intouch* is even further afield, as it dealt with a situation where the defendant

7   failed to provide a "complete copy of its source code."  2012 WL 7783405 at *1.  The

8   *Intouch* court rejected this approach, noting that *inter alia* the plaintiff's ability "to

9   properly understand the directly relevant portions of the source code may depend on

10  their ability to review other portions … to place the directly relevant portions of the

11  source code in context."  *Id.*  The same concerns do not apply here.

C.   **If This Court Concludes the Special Master's Reading Of Judge**

13       **Early's Ruling Is Correct, That Ruling Should Be Reversed**

14      To the extent that the Special Master's reading of Judge Early's ruling is plausible,

15  this Court should reverse the magistrate judge's decision.

16      It is well-established that this Court retains the authority to reconsider such a

17  ruling at any point.  *See supra* p. 7.  Indeed, because this Court "'is free at any time to

18  reexamine such interlocutory discovery … rulings of his or her own … it would turn the

19  jurisprudential system on its head to ascribe irrevocabl[e] finality … to any unreviewed

20  discovery … rulings by a Magistrate Judge.'"  12 Wright & Miller, *Federal Practice &*

21  *Procedure* § 3069 (3d ed.) (quoting with approval *Phillips v. Raymond Corp.*, 213

22  F.R.D. 521, 525 (N.D. Ill. 2003)).  For all the reasons discussed above, Judge Early's

23  ruling (as interpreted by the Special Master) cannot be squared with the principles of

24  relevance and proportionality that undergird the Federal Rules.  *Supra* pp. 7-14.

25      Moreover, the Special Master's reading of Judge Early's ruling is troubling for

26  two additional reasons.  First, if left in place, the Special Master's order would *sub*

27  *silentio* overrule at least two more specific discovery decisions the Special Master has

28

1    already made.  For example, the Special Master previously held Apple is *not* required to
2    turn over all human resources information on Mr. Michael O'Reilly (e.g., Mr. O'Reilly's
3    compensation).  Dkt. 617 at 4.  But because one of Plaintiffs' search terms is just the
4    word "O'Reilly," the order at issue here would require Apple to produce whatever ESI
5    Mr. Cook had on Mr. O'Reilly's compensation.  Similarly, the Special Master previously
6    rejected Plaintiffs' argument that Apple must produce every single document that
7    mentions the phrase "efficient infringement."  *See* Dkt. 637 at 3-4.[1]  But because another
8    one of Plaintiffs' search terms is "efficient infringement," the order at issue here would
9    require Apple to produce all documents in Mr. Cook's possession that use the phrase—
10   regardless of whether they have any connection to this litigation.

11           Second, Mr. Cook is not just any custodian; he is the CEO.  Requiring Apple to
12   produce *all* his non-privileged documents that hit on Plaintiffs' search terms—no matter
13   how sensitive or far-removed from the purposes of this case—serves no legitimate
14   purpose and would set a dangerous precedent in this and future litigation.  Plaintiffs have
15   neither identified any reason why viewing ███████████████████████
16   ██████████████████████████████  would advance their trade secret misappropriation
17   case in any way, nor have they identified any case where a court has required the
18   production of such documents from a company's chief executive.  This Court should not
19   be the first to do so.

20                                    **V.    CONCLUSION**

21           Apple respectfully requests that the Court sustain Apple's objections to the
22   Special Master's Discovery Order No. 7.

23

24

25

26   ───────────────────

27   [1] The Special Master ordered Apple to submit a sworn declaration regarding Apple's
     process for searching for and producing "[d]ocuments regarding the practice of
28   efficient infringement," but did not order unfiltered production. Dkt. 637 at 3-4.

Dated: April 15, 2022                    Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN ANDREA
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

MARK D. SELWYN
NORA Q.E. PASSAMANECK
WILMER CUTLER PICKERING HALE AND
DORR LLP


By: */s/ Mark D. Selwyn*
        Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*