# EXHIBIT 14

```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)
```

| | | |
|---|---|---|
| MASIMO CORPORATION, ET AL, | ) | CASE NO: 8:20-CV-00048-JVS-JDEx |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Santa Ana, California |
| | ) | |
| APPLE, INC, | ) | Thursday, June 10, 2021 |
| | ) | |
| Defendant. | ) | (10:01 a.m. to 10:19 a.m.) |

```
        HEARING RE: PLAINTIFFS' MOTION TO COMPEL [DKT.NO.377]
                    AND ORDER DENYING THE MOTION


                  BEFORE THE HONORABLE JOHN D. EARLY,
                     UNITED STATES MAGISTRATE JUDGE
```

**APPEARANCES:**                SEE PAGE 2


Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:          Maria Barr

Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

2

**APPEARANCES:**

For Plaintiffs:        JOSEPH R. RE, ESQ.
                       Knobbe Martens Olson & Bear, LLP
                       2040 Main Street
                       14th Floor
                       Irvine, CA 92614

                       ADAM POWELL, ESQ.
                       Knobbe Martens Olson & Bear, LLP
                       12790 El Camino Real
                       San Diego, CA 92130


For Defendant:         JOSHUA H. LERNER, ESQ.
                       Gibson Dunn & Crutcher, LLP
                       555 Mission Street
                       Suite 3000
                       San Francisco, CA 94105

                       ANGELIQUE KAOUNIS, ESQ.
                       Gibson Dunn & Crutcher, LLP
                       2029 Century Park East
                       Suite 4000
                       Los Angeles, CA 90067

1      **Santa Ana, California; Thursday, June 10, 2021; 10:01 a.m.**

2                          **(Call to Order)**

3          **THE COURT:** Good morning, everyone.

4      **(Attorneys greet the Court)**

5          We're calling the case of *Masimo Corporation, et al.*
6   *versus Apple, Inc.*; Central District of California Case Number
7   8:20-cv-48-JVS-JDEx. We're here on Plaintiffs' Motion to
8   Compel which is Docket Number 377.

9          And we'll take appearances of counsel, starting with
10  counsel for Plaintiffs.

11         **MR. RE:** Good morning, Your Honor. Joseph Re from
12  Knobbe Martens. With me is my partner, Adam Powell.

13         **THE COURT:** Good morning.

14         And on behalf of Defendant?

15         **MR. LERNER:** Good morning, Your Honor. Joshua Lerner
16  and Angelique Kaounis from Gibson Dunn on behalf of Apple. And
17  with us today is Ryan Moran, in-house counsel at Apple.

18         **THE COURT:** All right. Good morning.

19         All right. We're here on the Motion to Compel. I've
20  reviewed the motion; I've reviewed the joint stipulation; I've
21  reviewed declarations and exhibits offered in support and
22  opposition to the requested relief and Plaintiffs' supplemental
23  memorandum and related information.

24         We're going to get started.

25         I have a tentative. I'm going to give you the short

1  version.
2          The tentative is I'm tentatively inclined to deny the
3  motion.
4          I'm going to assume, without deciding, that it was
5  Apple's burden here, based on both the case law and the
6  existing order previously entered by me in this case, that
7  Apple had the burden here to oppose the relief Plaintiffs seek
8  with respect to Mr. Cook's -- a search of Mr. Cook's -- or
9  designating Mr. Cook as an ESI custodian.
10         And although the apex doctrine relating to
11 depositions and 30(b) -- or depositions doesn't apply directly
12 here; some, but not all, of the considerations that underly
13 that doctrine apply; and that is that it is more burdensome.
14 And I don't need a declaration to know this; that it is more
15 burdensome to search the CEO of a multi-billion dollar, maybe
16 multi-trillion dollar international corporation for records.
17 But the burden is not the same as having that person appear for
18 an apex depositions but there is some burden, there is some
19 burden and that's facially apparent.
20         And the proffer made by Plaintiffs, I'm going to
21 characterize as relatively weak in connection with the
22 relevance of Mr. Cook's email and other electronically stored
23 information sources as it relates to the claim in this case --
24 claims in this case -- claims and defenses in this case.
25         Gonna have a big bright light proviso now.  Counsel

1  have heard me say this at least once, maybe twice.

2          I'm going on what's in front of me; and in

3  particular, I would take counsel at their word.  We've got

4  excellent counsel in this case.  And I've got a representation

5  by counsel for Apple -- and although only -- it's

6  electronically signed by one person, there are (one, two,

7  three, four, five, six) seven attorneys underneath that

8  signature so I'm attributing this to all those counsel and the

9  firm representing Apple and Apple itself.

10         Quote, page -- this is from page 9 of the Joint

11 Stipulation, (quote):

12         "Tim Cook (comma), Apple's CEO (comma), is not likely

13            to have discoverable information relevant to any

14            parties' claims or defenses." (period, close/quote).

15         It's a conclusory statement but it's made by an

16 Officer of the Court and Officers of the Court, to this Court

17 in connection with this motion.  And I want Apple and its

18 counsel to understand that's the basis for my tentative and

19 potentially the basis for my ruling.

20         The world's a funny place.  We talked about it

21 before.  Sometimes there are acquisitions.  Sometimes things

22 come out that no one knew were going to come out and no one

23 understood were going to come out that can change how things

24 are looked at later.

25         I'm accepting that representation, that counsel's

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 14
Page 5

1  done an inquiry and based on their inquiry, Tim Cook is not
2  likely to have discoverable information relevant to any
3  parties' claims or defenses.  And I've read -- there's dueling
4  declarations here.  Frankly, the issues at depth in those
5  dueling declarations are sort of tersely.  They're not to the
6  heart of the case.
7       But that statement, I'm relying on.  If that turns
8  out to not be true, through some other source, there will be
9  severe repercussions because I'm relying on it.  So I want to
10 make sure Apple understands that.
11      Regardless of my ruling here, Apple can still agree
12 to conduct a search of Mr. Cook's email as an ESI custodian.
13 I'm not -- my tentative is not to order it but be on notice.
14 You have put yourself out there and I'm relying on it.  If it
15 turns out not to be true, the consequences, we will be back
16 here and there will be an evidentiary hearing.
17      All right.  So let me hear -- Plaintiff, it's your
18 motion.  You've heard my tentative is to rule against you.  Let
19 me hear from you.
20      **MR. RE:**  Thank you, Your Honor.
21      I think --
22      **THE COURT:**  And this is Mr. Re speaking for our
23 recording.
24      **MR. RE:**  Thank you.  Mr. Re, R-e, is the last name.
25      I don't see any record evidence at all about burden.

1 This is simply an ESI search. It is minimal effort.

2 **THE COURT:** And if you heard what I said, there are

3 -- you haven't been here for all the discovery motions in here

4 and I've talked about that issue, that there are some -- some

5 cases where the burden is facially apparent. And I'm not

6 saying it rises to the level of what the burden would be for an

7 apex deposition but I am saying it's facially apparent that

8 there is a burden to -- and we've also talked about pipes in

9 this case a lot -- that discovery requests are going through

10 pipes. The pipes here are expanded in terms of the number of

11 potential custodians. But we're trying to do things that make

12 economic sense under Rule 1 of the Federal Rules of Civil

13 Procedure but also get you what you're looking for.

14 Your showing to me, Plaintiffs showing to me is

15 minimal at best. The fact that the CEO of Apple indicated he's

16 very interested in health care technology, it has very little

17 weight in terms of making that person's email subject to

18 search.

19 The issues regarding Dr. O'Riley, the fact that

20 regardless of how you characterize it, I don't see evidence.

21 We have Dr. O'Riley's first person attestation that his

22 interaction with Mr. Kirk at his interviews was essentially a

23 windup; they did not discuss substance of any Masimo

24 technology. And the fact that the CEO met with someone at the

25 end of a day's worth of interviews, even taking into account

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 14
Page 7

8

1 all the information, is not to me sufficient to overcome that

2 limited burden that's facially apparent from the request.

3       **MR. RE:** Okay. You say "facially apparent." I do

4 want to address the basis for the tentative.

5       The representation made that you're relying upon is

6 made without any representation as to how they could possibly

7 know this. What's the basis for the representation? I don't

8 even see them even suggesting that they've done any ESI

9 searching to even have a basis for the representation.

10       **THE COURT:** And again, it gets back to they're -- I

11 think I quoted Bob Dylan at one of our earlier hearings. I

12 don't need a weatherman to know which way the wind blows.

13       I can -- you don't have to have 15 declarations to

14 say doing an ESI search for the President and CEO of Apple,

15 Inc. from 2013 to the present -- where, again, talking

16 generally about whatever the time period is going to be -- the

17 number of devices, the number of avenues of communication that

18 need to be searched and the heightened -- the heightened need

19 for review when you're looking at a CEO's search is different

20 from the type of review, an attorney review that you're doing

21 for an engineer's -- search of an engineer's email. These are

22 all things that I don't need a declaration to tell me. They're

23 independently knowable.

24       That said, I'm not saying it's a massive showing or a

25 massive, per se, burden demonstrated, but that's the whole

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 14
Page 8

1  purpose of the apex doctrine in depositions is it goes without
2  saying that that's a burden.
3          Now I'm not saying the apex doctrine applies here but
4  the aspects of it are equally available.  And I'm going to ask
5  you, Mr. Re, if you can if you can keep your mask on.
6          Aspects of it, aspects of it, the theory of it is the
7  same but I'm being very clear and I'm repeating that
8  representation that I mentioned and that you mentioned.
9           Implicit in every discovery response is an
10 affirmation and attestation by the attorney that it's made in
11 good faith; that it's made not to conceal or not to
12 unnecessarily delay the case.  Ramp it up when it's made in a
13 brief to the court.
14          I don't believe that Apple's lawyers would make that
15 willy-nilly without some foundation and I'm accepting it.  But
16 I am letting everyone know if it turns out from some other
17 source that Mr. Cook actually does have discoverable
18 information relevant to any parties' claims or defenses in his
19 ESI streams, we will be having a hearing and it may involve a
20 hearing of Mr. Cook testifying in this court, in person, if
21 that turns out to be a representation that was made to me that
22 I'm relying on for purposes of making this order.  And it may
23 also require testimony from counsel who made this
24 representation but that's only if it turns out to potentially
25 not be true.

1           All right.  Please continue, Mr. Re.

2           **MR. RE:**  Well, it sounds like you made up your mind and --

4           **THE COURT:**  I mean I have thought about it and -- but I want to make sure you have a full and fair opportunity to be heard.

7           **MR. RE:**  Well, my only point is that there's no basis for the statement.  You're just relying on the good-faith Officer of the Court; I assume it's true.  If that's the analysis, I have nothing further to add.

11          **THE COURT:**  Well let me just say, combined with what doesn't require evidence; and that is, there is a burden on the CEO of one of the largest corporations in the world to have me have that person designated as an ESI custodian beyond what it would be for, say, an engineer or a lesser person who's not dealing with lawyers on a regular basis, who's not probably got a the same level of communications.

18          So I don't need an expert, I don't need a declaration to understand that that's where the apex doctrine comes from.

20          **MR. RE:**  But the apex doctrine is based on the burden and oppression to the witness.  We have no evidence or suggestion by anybody that the witness is even involved --

23          **THE COURT:**  So I'm going to disagree with you.  The apex doctrine is not just the burden on the witness; it's the burden on the entity to have --

1          We talked about the *Mattel versus Bratx* case, right?
2    We were here -- I know you were here, Mr. Lerner, when you had
3    the CEO of Mattel International sitting up in Judge Carter's
4    courtroom in the back row for a week.  That was a burden on him
5    but it was also a burden on Mattel.  And what we're talking
6    about with respect to the apex doctrine is a burden on the
7    witness but also a burden on the company itself to have the CEO
8    pulled out for eight hours or four hours or whatnot.  So it's a
9    burden on both.
10         **MR. RE:**  I agree with what you just said but we have
11   no evidence that Mr. Cook will be pulled to do anything.
12   That's the difference between a personal appearance and a ESI.
13   You can check my ESI and I don't even know it's happening so
14   there's no participation --
15         **THE COURT:**  Well so again I'm going to stop you.
16         I expect more from counsel when checking ESI.  If
17   Mr. Cook or any custodian uses devices, uses a communications
18   stream other than company email, it's up to the lawyers to
19   investigate that and find out.  What's the simplest way?  Ask
20   the person.  And he may say well that takes three seconds to
21   ask.
22         Easier said than done when presumably the primary
23   time period you're talking about is 2013 and 2014, to ask the
24   CEO where and what communication streams he or she used during
25   that time period is not an easy task.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 14
Page 11

1          **MR. RE:**  I can't debate non-existent evidence.  You
2    tell me this.  I've been doing this for 35 years.  If you say
3    so, okay.  I can't convince you but I can't rebut non-existent
4    evidence.
5          **THE COURT:**  Well again, I'm doing a balancing, and
6    one of the things I'm balancing is what's the relevance.  And
7    what I'm telling you is what's been presented is not compelling
8    in terms of even if it's just a limited burden, what's been
9    presented is not compelling.  Most of it relates to, again, the
10   idea of Mr. Cook was interested in health care products.  All
11   right.  Mr. Cook spoke with Dr. Riley after his interviews.
12   Okay.
13           And the rest of it is primarily Mr. Cook's, as it's
14   characterized -- and I'm doing air quotes -- "right-hand man,"
15   (close/quote), also had interactions that you want to know
16   about.  But my understanding is that right-hand man is one of
17   the custodians.  And so to the extent Mr. Cook was
18   communicating with the right-hand man, presumably you're going
19   to get that.
20           So I don't find the showing by Plaintiffs
21   particularly compelling.
22           And from the defense standpoint, it's by operation of
23   law and commonsense that there is a burden and I don't find --
24   I find that you haven't overcome it.
25           But again, I'm going to reiterate what I said before

1  about none of this prevents Defendant from going forward with
2  the ESI search of Mr. Cook and agreeing to do so.  And if they
3  don't, they do it at their own risk.
4          All right.  Anything else, Mr. Re?
5          **MR. RE:**  Nothing further.
6          **THE COURT:**  All right.  Mr. Lerner, unless there's
7  something you want to add or clarify or find out about, the
8  tentative will be the order of the court and the motion will be
9  denied for the reasons stated on the record.
10         **MR. LERNER:**  No, Your Honor.  We agree with both the
11 reasoning as to relevance on the issues raised in the
12 plaintiffs' papers like health care and with respect to the
13 burden.
14         **THE COURT:**  All right.  And do you hear and
15 understand what I said about the representation made at page 9
16 of the Joint Stipulation?
17         **MR. LERNER:**  Yes, Your Honor.
18         **THE COURT:**  All right.  Could you make sure.  And I
19 know we have a representative from Apple's in-house counsel.
20 Could you make sure that that is passed on.  And nothing
21 prevents you and Apple from going forward with Mr. Cook, doing
22 a search of Mr. Cook's ESI.  This order merely denies the
23 motion.  And I'm letting plaintiffs know if they get further
24 information that bears on -- that causes me to question this
25 linchpin of what I'm relying on, this is without prejudice to

14

1 re-raising this motion and I would expect that there would be a
2 hearing. But it depends on what the showing is; I'm not going
3 to prejudge anything but I expect that there would be a hearing
4 where live testimony would be taken if that's the case and a
5 sufficient showing is made and there will be likely -- well
6 I'll leave it at that.
7      All right?
8      **MR. LERNER:** Thank you.
9      **MR. RE:** Thank you.
10      **THE COURT:** Thank you. We're adjourned.
11      **MS. KAOUNIS:** Thank you, Your Honor.
12 **(Proceeding adjourned at 10:19 a.m.)**

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 14
Page 14

15

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____  June 12, 2021
Signed                      Dated

*TONI HUDSON, TRANSCRIBER*