# EXHIBIT A

1  Joseph R. Re (Bar No. 134479)
     joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
     stephen.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
     perry.oldham@knobbe.com
4  Irfan A. Lateef (Bar No. 204004)
     irfan.lateef@knobbe.com
5  Brian C. Claassen (Bar No. 253627)
     brian.claassen@knobbe.com
6  James E. Youngblood (Bar No. 325993)
     jamie.youngblood@knobbe.com
7  KNOBBE, MARTENS, OLSON &
   BEAR, LLP
8  2040 Main Street, Fourteenth Floor
   Irvine, CA 92614
9  Telephone: (949)-760-0404
   Facsimile: (949)-760-9502
10
11 Adam B. Powell (Bar. No. 272725)
     adam.powell@knobbe.com
   KNOBBE, MARTENS, OLSON &
12 BEAR, LLP
   3579 Valley Centre Drive
13 San Diego, CA 92130
   Telephone: (858) 707-4000;
14 Facsimile: (858) 707-4001

   JOSHUA H. LERNER, SBN 220755
     jlerner@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street Suite 3000
   San Francisco, CA 94105
   Tel.: 415.393.8200 / Fax: 415.393.8306

   H. MARK LYON, SBN 162061
     mlyon@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
   Palo Alto, CA 94304-1211
   Tel.: 650.849.5300 / Fax: 650.849.5333

15 *Attorneys for Plaintiffs Masimo Corp. and*
   *Cercacor Laboratories, Inc.*
16 *[Additional counsel listed on next page]*

   *Attorneys for Non-Party Apple Inc.*
   *[Additional counsel listed on next page]*

17 **UNITED STATES DISTRICT COURT**

18 **CENTRAL DISTRICT OF CALIFORNIA**

19 **SOUTHERN DIVISION**

| | |
|---|---|
| 20 MASIMO CORPORATION, a Delaware corporation; and | CASE NO. 8:18-cv-02001-JVS (JDEx) |
| 21 CERCACOR LABORATORIES, INC., a Delaware corporation, | **JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER** |
| 22 | |
| 23 Plaintiffs, | |
| 24 v. | **Hearing:** |
| 25 TRUE WEARABLES, INC., a Delaware corporation; and | Date:  June 24, 2021 |
| MARCELO LAMEGO, an individual, | Time:  10:00 a.m. |
| 26 | Place:  Courtroom 6A |
| 27 Defendants. | Judge:  Hon. John D. Early |
| | [Discovery Document Referred to Hon. Magistrate John D. Early] |

28 UNREDACTED VERSION OF DOCUMENT FILED PURSUANT TO ORDER OF THE
   COURT DATED JUNE 24, 2021 (DKT. NO. 311)

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-3-

Mark D. Kachner (Bar No. 234192)
  mark.kachner@knobbe.com
KNOBBE MARTENS OLSON &
BEAR LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 601-1263

*Attorney for Plaintiffs Masimo Corp. and
Cercacor Laboratories, Inc.*

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520
*Attorney for Non-Party Apple Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-4-

1

# TABLE OF CONTENTS

2

Page

3 I. INTRODUCTORY STATEMENTS ................................................................. 1

4     A.    Apple's Introductory Statement .............................................. 1

5     B.    Masimo's Introductory Statement ........................................... 3

6 II. DISCOVERY AT ISSUE ............................................................................ 6

7     A.    Deposition Topics ................................................................ 6

8     B.    Requests for Production ........................................................ 6

9 III. APPLE'S POSITION ................................................................................ 8

10     A.    Factual Background .............................................................. 8

11

12        1.    Plaintiffs Filed The True Wearables Case Against Mr. Lamego And True Wearables ........................................... 8

13

14        2.    Plaintiffs First Served Apple With A Subpoena In The True Wearables Case One Day Before Filing The Apple Case .............................................................................. 8

15

16        3.    A Dispute Concerning The Same Discovery Plaintiffs Seek Via Their Subpoena In This Case Is Before This Court In The Apple Case .............................................. 10

17

18        4.    Apple's Counsel Met And Conferred With Plaintiffs' Counsel About The Pending Apple Subpoena ................... 11

19

20     B.    Legal Standard ................................................................. 12

21     C.    Argument ........................................................................ 14

22        1.    The Information Sought By The Subpoena Is Neither Relevant Nor Proportionate To This Case ...................... 14

23

24           a.    Plaintiffs Seek Discovery For The Apple Case ................. 15

25           b.    The Documents And Testimony Requested From Apple Are Not Relevant To This Case ............................. 16

26           c.    The Discovery Sought Is Unduly Burdensome And Not Proportionate To The Needs Of This Case ................. 18

27

28

i

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-5-

**TABLE OF CONTENTS**
*(Cont'd)*

Page

2. Plaintiffs Have Not Demonstrated A Substantial Need For Seeking Confidential Discovery From Apple In This Case ........ 19

3. Plaintiffs' Subpoena Improperly Seeks To Duplicate Discovery Work In The Apple Case ............................................... 21

4. Plaintiffs' Subpoena Is An End Run Around The Discovery Limits Imposed By The Court In The Apple Case ........................................................................................... 25

D. Conclusion .......................................................................................... 26

IV. MASIMO'S POSITION ............................................................................. 26

    A. Factual Background ............................................................................ 26

        1. Lamego Pursued An Executive Position At Apple While Still Serving as Cercacor's Chief Technology Officer ................. 26

        2. Lamego Put His Apple Job Duties at Issue in This Case ............ 27

        3. Lamego Put His Termination From Apple at Issue In This Case ........................................................................................... 28

        4. Apple's Actions Show That Facts About Apple Are Relevant to This Case ...................................................................... 29

    B. Legal Standard .................................................................................... 30

    C. Argument ............................................................................................. 30

        1. Masimo Seeks Limited Discovery that is Relevant and Proportionate to This Case ............................................................... 30

            a. Apple's recruitment of Lamego while still at Cercacor is highly relevant to this case .............................. 31

            b. Limited discovery about Lamego's job duties at Apple is highly relevant in this case ................................... 32

            c. Apple terminating Mr. Lamego is highly relevant in this case .................................................................................. 33

ii

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-6-

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**
(*Cont'd*)

Page

2.    Masimo Has a Substantial Need For the Requested
      Discovery ........................................................... 35

3.    Masimo's Subpoena Does Not Impose an Undue Burden
      on Apple ............................................................ 35

4.    Apple's Remaining Arguments Do Not Justify Quashing
      The Subpoena ....................................................... 36

      a.   Masimo timely served its subpoena .................... 36

      b.   Masimo is not seeking to avoid discovery limits in
           the Apple case ..................................... 37

      c.   Masimo's first subpoena is irrelevant ............... 37

      d.   Masimo properly focused the subpoena ................ 38

      e.   Any overlap in discovery between this case and the
           Apple Case is not a basis to quash ................. 39

D.    Conclusion ............................................................ 40

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-7-

Pursuant to Federal Rules of Civil Procedure 37 and 45, and Local Rules 37-2 and 45-1, Non-Party Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as respondents, respectfully submit the following Joint Stipulation regarding Apple's Motion to Quash Subpoena and for a Protective Order. The parties met and conferred on May 19, 2021, but were unable to resolve the disputes presented in this Joint Stipulation. *See* Declaration of Ilissa Samplin ("Samplin Decl.") ¶ 5.

# I. INTRODUCTORY STATEMENTS

## A. Apple's Introductory Statement

This is the second time Plaintiffs Masimo and Cercacor have served an improper subpoena on Apple to obtain evidence that has nothing to do with this case. After Apple went through the burden and expense of challenging their last such subpoena, Plaintiffs withdrew it. Apple asks the Court to quash Plaintiffs' second subpoena (the "Subpoena"), which is even more improper than the first. This time Plaintiffs seek evidence concerning Mr. Lamego's employment history with Apple that is not only irrelevant to this case but also is the subject of a fully briefed motion to compel in Plaintiffs' separate case against Apple. Apparently aware of the weakness of their pending motion in their case against Apple, Plaintiffs are using the subpoena process in this case to improperly take a second shot at the same evidence. The Court should grant Apple's motion and quash the Subpoena for four reasons:

*First*, Plaintiffs' Subpoena for information related to Marcelo Lamego's connections to Apple violates Federal Rule of Procedure 26 because none of the discovery sought is relevant to, or proportionate to the needs of, *this* case (the "True Wearables Case"). In this case, Plaintiffs' claims are based on Mr. Lamego's conduct while employed by Cercacor and in connection with the company he founded, True Wearables. The claims are not based on Mr. Lamego's conduct at Apple, for Apple, or on behalf of Apple—Apple is not even mentioned in any of Plaintiffs' eleven causes of action in this case. *See generally* Samplin Decl. Ex. A, at 43–95 (Subpoena Addendum

1

2, True Wearables Case, Dkt. No. 42, First Am. Compl.) ("True Wearables FAC"). Accordingly, Plaintiffs' Subpoena is not designed to elicit discovery relevant to Plaintiffs' claims in, and proportional to the needs of, this case. Rather, the Subpoena on its face pertains to Plaintiffs' claims against Apple in Plaintiffs' separate case against Apple, *Masimo Corp. et al. v. Apple Inc.*, 8:20-cv-00048-JVS (JDEx) (C.D. Cal.) (the "Apple Case").

*Second*, the information Plaintiffs seek is not only irrelevant to this case, it is Apple's confidential information—including, to give a few examples, documents relating to Apple's patent applications and communications, including with Apple attorneys, relating to hiring and termination decisions. Plaintiffs have made no showing of a "substantial need" for this confidential information in the True Wearables Case that cannot be otherwise met without undue hardship. Indeed, the information Plaintiffs seek here is the same discovery they seek in the Apple Case (where Plaintiffs also lack a basis for the discovery, as explained in Section III.A.3 below). Plaintiffs' lack of substantial need for Apple's confidential information responsive to the Subpoena provides the Court with further good cause to quash the Subpoena and enter a protective order.

*Third*, it is inappropriate and inefficient for Plaintiffs to propound discovery in this case that has nothing to do with this case and requires both Apple and the Court to duplicate work that already is being done in the Apple Case. The deposition topics and document requests in Plaintiffs' Subpoena are identical in subject matter to several of Plaintiffs' requests at issue in a pending motion to compel in the Apple Case. Plaintiffs' attempt to use this case to duplicate discovery is highly improper; it is nothing more than an attempted end run around the relevance and proportionality requirements of Federal Rule of Civil Procedure 26.

*Fourth*, Plaintiffs' Subpoena also is an end run around the Scheduling Order in the Apple Case (Samplin Decl. Ex. M (Dkt. No. 37)) because Plaintiffs are attempting to take the equivalent of an additional Rule 30(b)(6) deposition of Apple's corporate witness that will not count against the 100-hour deposition limit set by the Court in the

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-9-

Apple case. Plaintiffs' attempt to obtain additional deposition time is even more troubling given their steadfast refusal to serve on Apple in the Apple Case their Rule 30(b)(6) notice or deposition topics, despite Apple's repeated requests for such a notice since the middle of May.

Plaintiffs should not be permitted to use the existence of the True Wearables Case to circumvent discovery rules and the Court's Scheduling Order in the Apple Case. Apple respectfully requests that this Court quash the Subpoena in full and enter a protective order prohibiting the deposition and document production sought.

**B.     Masimo's Introductory Statement**

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") served the subpoena at issue to discover discrete facts from Apple that are at issue in this case. Masimo seeks a very narrow set of documents related to (1) Apple's recruitment of Lamego while he worked at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. These limited topics are highly relevant in this case. Also, Lamego put all three topics directly at issue in this case.

As part of the meet-and-confer process, Masimo focused the document requests to make clear these were the only topics on which Masimo sought discovery. Apple still refused discovery. Apple mischaracterizes the subpoena as broadly seeking information concerning "Mr. Lamego's employment history with Apple." To the contrary, the subpoena is limited to three discrete topics, which are highly relevant in this case.

Apple's recruitment of Lamego is highly relevant. In October 2013, while serving as the Chief Technical Office of Cercacor, Lamego emailed Apple's CEO, Tim Cook, to seek an executive position at Apple. At that same time, Lamego was telling Cercacor's Board of Directors that he had made a significant breakthrough, and Cercacor engineers were very excited about the company's future. Lamego's alleged breakthrough included the feasibility of measuring blood glucose non-invasively. Yet, Lamego was secretly seeking employment from Apple. Lamego told Mr. Cook that, with his 10 years of exposure to Masimo and Cercacor's technology, he "could add a

3

Exhibit A
-10-

significant value to the Apple team" to help solve "the patient problem." Lamego offered that, as a senior executive at Apple, he could solve that very difficult problem for Apple. Lamego then interviewed with Apple. Lamego's email and interview occurred months *before* he left Cercacor, while still under a fiduciary duty to Cercacor. Apple's recruitment of Lamego while he was still at Cercacor is highly relevant to the claims in this case. For example, Masimo is entitled to discover the specifics of what Lamego offered Apple in exchange for an executive position. This information is directly relevant to at least the breach-of-fiduciary-duty claims in this case.

Lamego's title and duties at Apple are also highly relevant. In response to Masimo's accusations *in this case*, Lamego initially denied that his work at Apple had any connection to Masimo or Cercacor. But Lamego now admits he worked on noninvasive physiological measurements for the Apple Watch. Masimo must be allowed some modest discovery on Lamego's activities at Apple to test the veracity of Lamego's seemingly contradictory statements. Further, Lamego specifically requested an executive level position at Apple. Masimo's modest request for information about Lamego's title and duties is not burdensome and highly relevant to paint a complete picture of Lamego's motivation for leaving Cercacor, his intent to commit the misconduct at issue here, and his intent to harm Masimo. This information is relevant to at least the breach-of-fiduciary-duty claims, the breach-of-contract claims, and Lamego's willful and malicious misappropriation of trade secrets.

Apple's basis for terminating Lamego is also highly relevant. Lamego and True Wearables have put Apple's firing of Lamego directly at issue. Lamego contends that Masimo "repeatedly tried to disrupt Dr. Lamego's career and business efforts." Lamego and his family blame Masimo for causing Apple to terminate Lamego's employment. Yet, Lamego refuses to provide any information about his termination by claiming he owes a duty of confidentiality to Apple. Because Defendants have put Lamego's termination at issue *in this case*, Masimo is entitled to discover the basis for the termination. This discovery is also relevant to Lamego's motive to harm Masimo.

4

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-11-

Apple cannot genuinely contend that all facts about Lamego's employment with Apple are irrelevant to this case. Apple filed a notice of related cases identifying *this case* as related to the Apple Case. Moreover, Apple and the Defendants in this case recently entered into a common-interest agreement. To support that agreement, Defendants contend they have a common interest with Apple based on overlapping facts between this case and the Apple Case. But they steadfastly refuse to identify those alleged overlapping facts. They also refuse to provide any discovery about Apple. Apple's agreement with Defendants and their reliance on overlapping facts to support a common-interest agreement, and the notice of related case, show some facts from Apple are relevant in this case.

Rather than address the relevant facts, Apple accuses Masimo of engaging in "gamesmanship with respect to basic discovery rules." Apple speculates about the timing of Masimo's original subpoena to Apple, but that was dictated by the then-rapidly approaching deadline for the close of fact discovery in this case. Once the Court extended the fact discovery deadline, Masimo promptly withdrew the subpoena to continue obtaining as much discovery as possible from Defendants. Masimo cannot be faulted for trying to avoid unnecessarily burdening the Court. Indeed, Masimo committed to narrow that subpoena before Apple unexpectedly cut off the parties' communications and suddenly filed a motion to quash. Apple's accusations contradict the simple facts surrounding the original subpoena.

Apple speculates that Masimo is seeking discovery in this case to use in the Apple case. But the protective orders in both cases preclude a party from using protected material in connection with any other case, absent agreement or further court order. The email between Tim Cook and Marcelo Lamego, that Defendants produced under the protective order in this case, is a perfect example. While that email is directly relevant to the Apple case, Masimo cannot present it in the Apple case until it is produced in that case. In this case, Apple is not a party and thus Masimo must subpoena Apple for information that is relevant to this case even if the information is also relevant and will

5

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-12-

be produced in the Apple case. Thus, Apple cannot support its argument that Masimo is seeking discovery for the Apple case.

Masimo seeks a very narrow and targeted set of information from Apple that is directly relevant to the issues in this case. The discovery would not be burdensome for Apple to produce. Apple fails to meet its burden to preclude this discovery.

## II. DISCOVERY AT ISSUE

Consistent with Local Rule 37-2, this section contains the full text of the deposition topics and documents requests contained in Plaintiffs' Subpoena. A copy of the Subpoena is also attached as Exhibit A to the Samplin Declaration.

**A.** **Deposition Topics**

**TOPIC NO. 1:**

Apple's reasons for hiring Marcelo Lamego.

**TOPIC NO. 2:**

Reasons for termination of Marcelo Lamego's employment relationship with Apple.

**TOPIC NO. 3:**

Apple's communications with Marcelo Lamego concerning Apple recruiting Marcelo Lamego.

**TOPIC NO. 4:**

Apple's communications with Marcelo Lamego concerning termination of Marcelo Lamego's employment relationship with Apple.

**B.** **Requests for Production**

**REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REQUEST FOR PRODUCTION NO. 2:**

All documents related to Apple hiring Marcelo Lamego.

**REQUEST FOR PRODUCTION NO. 3:**

All documents related to the termination of Marcelo Lamego's employment

6

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-13-

relationship with Apple.

**REQUEST FOR PRODUCTION NO. 4:**

All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination.

**REQUEST FOR PRODUCTION NO. 5:**

All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications.

After Apple served its portion of the Joint Stipulation on Masimo, Masimo proposed to revise the Subpoena's Document Requests Nos. 2-5, as reflected in the parties' correspondence in Exhibits 1 and 2 to the Kachner Declaration, as follows:

**ORIGINAL REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REVISED REQUEST FOR PRODUCTION NO. 2:**

Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014.

**REVISED REQUEST FOR PRODUCTION NO. 3:**

Apple's communications with Marcelo Lamego regarding the end of his employment.

**REVISED REQUEST FOR PRODUCTION NO. 4:**

Apple's communications with Marcelo Lamego regarding his hiring by Apple.

**REVISED REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show Marcelo Lamego's job duties and title at Apple.

/ / /

/ / /

/ / /

7

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-14-

### III. APPLE'S POSITION

**A.  Factual Background**

**1.  Plaintiffs Filed The True Wearables Case Against Mr. Lamego And True Wearables.**

Plaintiffs filed suit against Mr. Lamego and his company, True Wearables, on November 8, 2018, alleging breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement.

In their Complaint in the True Wearables Case, Plaintiffs allege that, following his roles at Masimo and Cercacor, Mr. Lamego worked at Apple for seven months before he founded True Wearables.  Samplin Decl. Ex. A, at 57–58 (Subpoena Addendum 2, Dkt. No. 42, First Am. Compl. ¶¶ 35, 37, 38) ("True Wearables FAC").  Plaintiffs do not allege any claims against Mr. Lamego or True Wearables based on Mr. Lamego's seven months at Apple.  The claims in the True Wearables Case do not concern Mr. Lamego's conduct for, on behalf of, or during his seven-month tenure at, Apple. Nor do they concern the circumstances of Mr. Lamego's departure from Apple.  While Plaintiffs allege in the True Wearables Case that Apple recruited Mr. Lamego, *see id.* at 57 (¶ 35), there are no claims asserted in this case based on that alleged conduct by Apple.  Indeed, Apple is not a party to the case.

The same Plaintiffs separately sued Apple in this Court on January 1, 2020.  The parties are actively litigating the Apple Case and are in the middle of negotiating and litigating numerous discovery-related issues, including a dispute pertaining to the same discovery Plaintiffs seek in their Subpoena in this case.

**2.  Plaintiffs First Served Apple With A Subpoena In The True Wearables Case One Day Before Filing The Apple Case.**

Again, this is not the first time Plaintiffs have tried to use this case to seek discovery that they know they are unlikely to obtain in the Apple case.  On January 8, 2020, Plaintiffs served a subpoena on Apple in connection with this case, noticing a deposition and requesting the production of documents.  Samplin Decl. Ex. C, at 318.

8

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-15-

The subpoena noticed seven topics for deposition concerning Mr. Lamego's alleged "disclosures to Apple" about physiological parameter monitoring, Mr. Lamego's "contributions to Apple's marketing strategies" for the same, and Apple's communications with Mr. Lamego regarding his employment with Apple and his termination thereof. *Id.* at 323 (January 8, 2020 Subpoena Ex. A, at 2). The eleven requests for production in that prior subpoena covered similar topics, including documents concerning Mr. Lamego's "disclosures to Apple" and "involvement in" and "contributions to" work for Apple. *Id.* at 329–331 (January 8, 2020 Subpoena Ex. B, at 7–9). Indeed, Plaintiffs' RFP No. 4 in this latest Subpoena is identical to RFP No. 10 in their prior improper subpoena—both request "All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination." *Compare id.* at 330 (January 8 Subpoena Ex. B, at 8), *with id.* Ex. A, at 19 (May 11, 2021 Subpoena Ex. B. at 6).

On January 9, 2020, one day after serving their prior subpoena on Apple in connection with this case, Plaintiffs filed the Apple Case—alleging claims against Apple for patent infringement and trade secret misappropriation relating to physiological parameter monitoring in the Apple Watch. Plaintiffs allege, among other things, that Apple recruited Mr. Lamego, who had been "taught about the keys to effective non-invasive monitoring" by Plaintiffs, which he then disclosed to Apple. *Id.* Ex. N, at 568–70 (Apple Case, Dkt. No. 296-1, Fourth Am. Compl. ¶¶ 22, 24–35). On February 28, 2020, Apple filed a notice of related cases pursuant to Local Rule 83-1.3.1, identifying this case as related to the Apple Case. Apple Case, Dkt. No. 14. On March 4, 2020, the Central District transferred the Apple Case to Judge James V. Selna, who is presiding over this action.

On March 10, 2020, Apple filed a Motion to Quash and for a Protective Order in the Northern District of California, directed at Plaintiffs' first subpoena to Apple in the True Wearables Case. Samplin Decl. Ex. D (March 10, 2020 N.D. Cal. Motion to Quash). Faced with that motion, which underscored Plaintiffs' gamesmanship with

9

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-16-

respect to basic discovery rules, Plaintiffs voluntarily withdrew their subpoena on March 18, 2020, and Apple voluntarily dismissed the miscellaneous action it was forced to file in the Northern District in connection with its motion to quash. *Id.* Ex. E (March 20, 2020 N.D. Cal. Notice of Voluntary Dismissal).

### 3. A Dispute Concerning The Same Discovery Plaintiffs Seek Via Their Subpoena In This Case Is Before This Court In The Apple Case.

Plaintiffs filed a Motion to Compel in the Apple Case on April 28, 2021, laying out the parties' respective positions on, *inter alia*, discovery requests that seek the same information requested in the Subpoena in this case. *Compare id.* Ex. A, at 19 (Subpoena Request No. 1) (seeking "[t]he personnel file for Marcelo Lamego"), *with id.* Ex. G, at 390 (Apple Case Request for Production No. 240) (requesting "[a] full and complete copy of Apple's human resources file for each of the Former Employees," which includes Mr. Lamego); *compare id.* Ex. A, at 19 (Subpoena Request Nos. 2–3) (requesting "all documents related to Apple hiring Marcelo Lamego" and "all documents related to the termination of Marcelo Lamego's employment relationship with Apple"), *with id.* Ex. G, at 391 (Apple Case Request for Production No. 248) (seeking "[d]ocuments sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending"); *see also id.* Ex. G, at 390 (Apple Case Request for Production No. 239, 241) (requesting documents "relat[ing] to any efforts by Apple or any Former Employee to . . . recruit . . . any employee or consultant of Masimo or Cercacor" and "concerning Apple's hiring or termination of any of the Former Employees"). As Apple explained in its portion of that Motion to Compel briefing, Plaintiffs seek information that is not even relevant to the Apple Case—in which Mr. Lamego's work for Apple actually is at issue (unlike in this case, where it is not).

For example, Plaintiffs failed to demonstrate that their request for documents showing the reason for Mr. Lamego's employment at Apple ending was relevant to the Apple Case. In support of their motion to compel such documents, Plaintiffs merely put forth a speculative theory that Mr. Lamego's employment at Apple ended because he

10

stole Plaintiffs' alleged trade secrets (which is not true). Plaintiffs did not provide *any* basis to suggest that their alleged secrets had anything to do with Mr. Lamego's termination.

Plaintiffs also failed to demonstrate that their request for the full personnel file of Mr. Lamego (or any other former employee of Masimo or Cercacor) was relevant to the Apple Case. Plaintiffs' asserted justification for full personnel files in the Apple Case amounted to nothing more than speculation. For example, Plaintiffs argued that "individuals *may have* gotten a promotion shortly after providing Plaintiffs' trade secrets to Apple or Apple *may have* reprimanded an employee for sharing Plaintiffs' trade secrets." *Id.* Ex. H, at 493 (Dkt. 359-1 at 96) (emphasis added). Plaintiffs further argue that the documents "*could show* Apple's knowledge that it was using Plaintiffs' technology." *Id.* at 491 (Dkt. 359-1 at 95) (emphasis added). And with respect to Mr. Lamego's personnel file in particular, Plaintiffs put forth no compelling need for the entirety of his personnel file. Indeed, when Apple served an RFP on Plaintiffs in the Apple Case for Plaintiffs' full personnel file for Mr. Lamego, *Plaintiffs* objected on the basis of relevance and overbreadth—and Apple greatly narrowed its request in response. *Id.* at 497 (Dkt. 359-1 at 100).

The Court continued the hearing on Plaintiffs' Motion to Compel in the Apple Case from May 20, 2021, to June 3, 2021, to give the parties another opportunity to meet and confer in an effort to resolve or narrow their disputes. *Id.* ¶ 15. Unwilling to wait or to abide by the rules governing discovery in the Apple Case, Plaintiffs resorted to burdening Apple and the Court by seeking much of the same information that is the subject of that Motion to Compel through non-party discovery in this case.

### 4. Apple's Counsel Met And Conferred With Plaintiffs' Counsel About The Pending Apple Subpoena.

Plaintiffs served the Subpoena late in the day on May 11, 2021, demanding production of documents less than 10 days later, on May 20, 2021—the same day the Court in the Apple Case was at the time scheduled to hear Plaintiffs' Motion to Compel

11

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-18-

the same documents in the Apple case. Plaintiffs also noticed a deposition of Apple for May 21, 2021. Samplin Decl. ¶ 4 & Ex. A, at 7 (Subpoena at 1).

On May 18, 2021, Apple asked Plaintiffs to meet and confer to discuss the Subpoena, and Plaintiffs agreed to discuss via telephone the following day. *Id.* ¶ 5. In advance of the call, Apple requested that Plaintiffs consent to a reasonable extension of time to respond to the Subpoena, noting that Plaintiffs provided less than 14 days' notice, which was unreasonable and insufficient to allow any dispute about the Subpoena to be briefed before this Court according to the joint stipulation process called for by the Local Rules. *Id.* Apple also requested that Plaintiffs provide a similar reasonable extension of time for Apple to serve its objections to this Subpoena. *Id.*

The parties met and conferred on May 18, 2021. *Id.* Plaintiffs agreed to an extension that would permit the parties to brief this dispute in accordance with the procedures set by Local Rule 37 (as required by Local Rule 45). *Id.* With respect to Apple's objections to the Subpoena, Plaintiffs conditioned any extension on Apple waiving all objections except for those that form the basis for this Motion. *Id.* & Ex. B, at 304. Apple declined to accept Plaintiffs' conditions and served its objections to the Subpoena on May 20, 2021. *Id.* Ex. B, at 304.

## B. Legal Standard

The scope of civil discovery is not unlimited. A party may obtain discovery only insofar as it relates to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of permissible nonparty discovery under Rule 45 mirrors that of party discovery under Rule 26. *See* Fed. R. Civ. P. 45 advisory committee note (1970 amendment) ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules."). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006) (citation omitted).

/ / /

Gibson, Dunn &
Crutcher LLP

Exhibit A
-19-

"'While discovery is a valuable right and should not be unnecessarily restricted . . . the "necessary" restriction may be broader when a nonparty is the target of discovery.'" *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *mot. for relief from judgment denied*, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). The party issuing a subpoena must take "reasonable steps to avoid imposing undue burden or expense" on the subject. Fed. R. Civ. P. 45(d)(1).

If a subpoena "fails to allow a reasonable time to comply," seeks "disclosure of privileged or other protected matter," or "subjects a person to undue burden," the Court shall quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(i), (iii)–(iv). A court may also quash or modify a subpoena if it "requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Once it is shown that a subpoena requests such confidential information, "the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship; and [to] ensure[ ] that the subpoenaed person will be reasonably compensated." *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 2582097, at *2 (N.D. Cal. June 9, 2014) (quoting *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014), and Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii)).

"[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citation omitted). However, "if the sought-after [information is] not relevant . . . then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Williams v. Cty. of San Diego*, 2019 WL 5963969, at *3 (S.D. Cal. Nov. 13, 2019) (quoting *Compaq Comput. Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)) (emphasis in original). "[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations

13

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-20-

and claims at issue in the proceedings." *Unsworth v. Musk*, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019) (citation omitted).

"A non-party moving to quash a subpoena may also seek a protective order under Federal Rule of Civil Procedure 26." *Williams*, 2019 WL 5963969, at *4; *see also* Fed. R. Civ. P. 26(c) (providing that "[a] party or any person from whom discovery is sought may move for a protective order"). "The court may, for good cause, issue an order to protect a party or a person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c). The court may also issue a protective order to prevent discovery that is irrelevant to any of the claims at issue. *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 2019 WL 7489108, at *5 n.9 (D. Nev. Dec. 20, 2019) ("[C]ourts may enter protective orders preventing irrelevant questioning at deposition."); *Nguyen v. LVNV Funding, LLC*, 2017 WL 951026, at *11 (S.D. Cal. Mar. 10, 2017) (declining to compel deposition testimony that was irrelevant and instead issuing a protective order); *United States v. Capriotti*, 2012 WL 2994244, at *2 (E.D. Cal. July 20, 2012) (finding "good cause" for a protective order when "the proposed subject matter of the depositions is irrelevant to [the] proceeding").

## C. Argument

The Subpoena is improper because (1) it is not relevant or proportionate to the claims in this action, but rather is designed for Plaintiffs' separate lawsuit against Apple; (2) it requires Apple to disclose confidential information without the requisite showing of substantial need; (3) it duplicates discovery efforts in the Apple Case, including those covered by a pending Motion to Compel in the Apple Case; and (4) it attempts an end run around the Scheduling Order in the Apple Case by demanding a Rule 30(b)(6)-equivalent deposition outside the 100-hour limit on depositions imposed by that Order. This Court should quash Plaintiffs' improper Subpoena and enter a protective order.

### 1. The Information Sought By The Subpoena Is Neither Relevant Nor Proportionate To This Case.

Discovery must be "relevant" to a "party's claim or defense." Fed. R. Civ. P.

14

Joint Stipulation Regarding Non-Party Apple Inc.'s Motion to Quash Subpoena and for a Protective Order
Case No. 8:18-cv-02001-JVS (JDEx)

Exhibit A
-21-

Gibson, Dunn & Crutcher LLP

26(b)(1). Courts routinely reject requests for discovery that "bear no indication of any nexus to the disputes" in the case. *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016). In addition to relevance, Rule 26 imposes a proportionality requirement—which creates a "collective responsibility" for "[t]he parties and the court . . . to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing committee notes requiring that "parties . . . tailor their efforts to the needs of this case"). Thus, any discovery propounded by Plaintiffs in the True Wearables Case must be relevant and proportionate to the needs of *that* case. Plaintiffs cannot satisfy these relevance or proportionality requirements, which is fatal to their Subpoena.

### a. Plaintiffs Seek Discovery For The Apple Case.

The Subpoena Plaintiffs propounded on Apple in this case plainly was drafted based on Plaintiffs' claims in the Apple Case. Every one of the Subpoena's requests on its face is directed to Mr. Lamego's employment *at Apple*, which is one of two asserted bases for all allegations concerning Plaintiffs' trade secret misappropriation, correction of inventorship, and patent ownership claims in the Apple Case. *See generally* Samplin Ex. N, at 568–70 (Apple Case Fourth Am. Compl. ¶¶ 20–25, 228–263) (alleging improper disclosure of purported confidential information to Apple by Mr. Lamego and Mr. O'Reilly); *id.* at 582–83, 665–691 (¶¶ 47–50, 268–371) (alleging that the subject matter of certain patents that Mr. Lamego assigned to Apple was invented by Masimo and/or Cercacor). Specifically:

- Subpoena Deposition Topic Nos. 1–2 seek information about *Apple's* reasons for hiring or terminating Mr. Lamego, and Deposition Topic Nos. 3–4 seek information about *Apple's* communications with Mr. Lamego concerning the same, Samplin Decl. Ex. A, at 12 (Subpoena Ex. A, at 2);

- Subpoena Request for Production No. 1 seeks a copy of *Apple's* personnel file for Mr. Lamego, *id.* at 19 (Subpoena Ex. B, at 6) (emphasis added);

15

- Subpoena Request for Production Nos. 2–4 seek documents and communications related to *Apple's* hiring and termination of Mr. Lamego, including all communications "*regarding his employment at Apple*," *id.* (Subpoena Ex. B, at 6) (emphasis added);

- Subpoena Request for Production No. 5 seeks documents concerning details of Mr. Lamego's position, duties, and compensation while *employed by Apple*, *id.* (Subpoena Ex. B, at 6) (emphasis added); and

- Subpoena Request for Production No. 5 seeks Apple's documents concerning Mr. Lamego's "patent applications," which go directly to Plaintiffs' correction of inventorship and patent ownership claims in the Apple Case, *id.*[1]

*None* of these Subpoena requests have anything to do with Plaintiffs' claims in this case.

### b. The Documents And Testimony Requested From Apple Are Not Relevant To This Case.

While Mr. Lamego's employment at Apple is one of two asserted bases for Plaintiffs' claims in the Apple Case, Mr. Lamego's employment at Apple is *not* an asserted basis for any of Plaintiffs' claims in the True Wearables Case. *None* of Plaintiffs' claims in this case are based on Mr. Lamego's employment at Apple, or his conduct at, for, or on behalf of, Apple. Rather, this case concerns solely Mr. Lamego's conduct while still employed by Cercacor, as well as his conduct at, and disclosures to, True Wearables—the company he founded *after* he left Apple.

For example, the first two of Plaintiffs' causes of action in this case are for breach of contract, in which Plaintiffs allege that Mr. Lamego breached his contracts with Masimo and Cercacor "by taking and using Masimo's [and Cercacor's] confidential information for his own benefit and for the benefit of True Wearables." Samplin Decl. Ex. A, at 60–61 (Subpoena Addendum 2, True Wearables FAC ¶¶ 49, 63). These causes of action do not implicate Apple in any way. Plaintiffs also accuse Mr. Lamego of

---

[1] Moreover, the Subpoena's Request for Production No. 5 is identical to Request for Production No. 293 that Plaintiffs just served in the Apple Case on May 19, 2021. *Compare* Samplin Decl. Ex. A, at 19, *with id.* Ex. J, at 548.

16

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-23-

"failing to pursue the patenting of certain subject matter" on *their behalf*, *id.* at 60, 62 (¶¶ 51, 66), which has nothing to do with any patent applications for which Mr. Lamego was responsible while at Apple.

Plaintiffs' other causes of action in this case likewise have no relation to Mr. Lamego's employment at Apple. Plaintiffs' third and fourth causes of action, which concern trade secret misappropriation, allege that Mr. Lamego disclosed Plaintiffs' supposed confidential information to True Wearables and used that information "in deciding to form True Wearables" and "during [his] employment at True Wearables" to "improperly develop [True Wearables'] Oxxiom product." *Id.* at 64–66, 68–69 (¶¶ 80–83, 94–97). Plaintiffs' fifth cause of action is for breach of fiduciary duty based on Mr. Lamego's alleged failure "to pursue patent subject matter he was instructed to pursue" while at Cercacor and his alleged failure "to disclose sufficient information to Cercacor regarding feasibility of [certain] technology." *Id.* at 70–71 (¶¶ 104–110). Plaintiffs' remaining causes of action in this case concern True Wearables' alleged infringement of Plaintiffs' patents. Nothing in these causes of action implicates Apple or its employment of Mr. Lamego in any way—Apple is not mentioned once in *any* of Plaintiffs' causes of action in this case.

Thus, Apple's hiring of Mr. Lamego, the details of his position and compensation, his involvement in Apple programs or projects during his seven-month tenure at Apple, including his work on Apple's patent applications and Apple's termination of his employment—the focus of the Subpoena—are not bases for any of Plaintiffs' claims against Mr. Lamego and True Wearables in this case. Plaintiffs admit as much by alleging in their True Wearables FAC that Mr. Lamego engaged in pulse oximetry work "on his own *after leaving Apple*" and basing their claims on that pulse oximetry work. *See id.* at 57 (¶ 36) (emphasis added). The claims here are based on Mr. Lamego's conduct while at Cercacor and his conduct at and on behalf of True Wearables. Plaintiffs cannot satisfy the threshold relevance requirement for pursuit of their Subpoena on these facts, which demonstrate that Plaintiffs' Subpoena is actually directed, if anywhere, at

17

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-24-

their Apple Case. *See In re REMEC, Inc. Secs. Litig.*, 2008 WL 2282647, at *2 (S.D. Cal. May 30, 2008) ("Parties have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings.").

Because there is no connection between the Subpoena's deposition topics or discovery requests and Plaintiffs' claims in the True Wearables Case, the Subpoena should be quashed. *See Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) ("Enforcing a discovery request for *irrelevant* information is a per se abuse of discretion." (emphasis in original)); *see also Williams*, 2019 WL 5963969, at *8–10 (granting motion to quash deposition subpoena and for a protective order because discovery sought was not relevant); *see also* Fed. R. Civ. P. 26(b)(1) (a party is only entitled to discovery "regarding any nonprivileged matter that is *relevant* to any party's claim or defense") (emphasis added); Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

### c.     The Discovery Sought Is Unduly Burdensome And Not Proportionate To The Needs Of This Case.

Rule 26's proportionality requirement considers, among other things, "the needs of the case, . . . the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). The "needs" of this case do not support Plaintiffs' Subpoena to Apple because the case does not involve any claims of breach, misappropriation, or infringement, based on or relating to Apple. *See* Section III.C.1.b, *supra*. Nor do any of Rule 26's other proportionality considerations favor Plaintiffs.

Indeed, because the discovery the Subpoena seeks is not relevant to this case (*see* Section III.C.1.b, *supra*), it is "inherently unduly burdensome." *P&P Imports LLC v. Johnson Enters. LLC*, 2020 WL 4258817, at *1 (C.D. Cal. Apr. 16, 2020) (Early, J.) (citing *Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018)). The Federal Rules require the Court to "quash or modify" a

18

Gibson, Dunn & Crutcher LLP

subpoena in such circumstances where, as here, the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also In re Glumetza Antitrust Litig.*, 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020) ("[C]ourts are required to limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit; such is 'the essence of proportionality,' an all-too-often ignored discovery principle." (citing Fed. R. Civ. P. 26(b)(1) and *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013))).

The discovery Plaintiffs seek from Apple is not relevant or proportionate to the needs of this case, but rather is on its face designed to elicit discovery Plaintiffs seek for the Apple Case. This is confirmed by the fact that the subject matter of this discovery is identical to that of several of Plaintiffs' requests for production served in the Apple Case—which are the subject of a dispute that has already been briefed for the Court in the Apple Case, in a Motion to Compel scheduled to be heard on June 3, 2021. Samplin Decl. ¶¶ 12, 15 & Ex. A, at 7 (Subpoena at 1). Thus, while this Court is currently dealing with the parties' dispute concerning the same requests in the Apple Case, Plaintiffs are blatantly seeking to misuse the nonparty subpoena process in this case to short-circuit requirements attendant to discovery in the Apple Case.[2] The discovery sought by the Subpoena is not relevant or proportionate to the needs of this case—and thus, the Subpoena should be quashed.

### 2. Plaintiffs Have Not Demonstrated A Substantial Need For Seeking Confidential Discovery From Apple In This Case.

In circumstances where confidential information is at issue, Federal Rule of Procedure 45(d)(3) permits the Court to quash the Subpoena unless the requesting party demonstrates a "substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Verinata Health*, 2014 WL 2582097, at *2; *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 n.1 (Fed. Cir. 1993); *In*

---

[2] Further underscoring the impropriety of Plaintiffs' attempt to circumvent the discovery rules here is the fact that the *same* attorneys from the *same* law firm represent Plaintiffs in both the True Wearables Case and the Apple Case.

Gibson, Dunn & Crutcher LLP

Exhibit A
-26-

*re Subpoena of DJO*, 295 F.R.D. at 497. This showing must be particularly strong "when confidential information from a non-party is sought." *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (requiring moving party to show "substantial need" before compelling "disclosure of trade secrets or other confidential research, development or commercial information"). Plaintiffs have not, and cannot, make any such "strong showing of need" here. *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("The subpoena calls for confidential technology . . . . While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff . . . . [The non-party] should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need.").

Plaintiffs' Subpoena improperly seeks production of Apple's privileged and confidential documents, such as Apple's confidential documents relating to its patent applications and its hiring practices, and privileged communications with Apple's attorneys relating to hiring and termination decisions. Yet Plaintiffs have not demonstrated any need—much less a *substantial* need—for the documents because they cannot: the discovery requests in Plaintiffs' Subpoena have already been propounded on Apple in the Apple Case, and a dispute concerning that discovery is presently before the Court in that case. And in that case, where Mr. Lamego's work at Apple actually is at issue (in this case, it is not), the requests are still irrelevant and overbroad—because they seek entire personnel files and communications that have nothing to do with the conduct or claims alleged. If the Court denies Plaintiffs' Motion to Compel that discovery in the Apple Case, then Plaintiffs *ipso facto* have no need for such discovery in either case, much less a substantial need. For this additional and independent reason, Plaintiffs' Subpoena should be quashed and a protective order entered.

/ / /

/ / /

/ / /

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-27-

### 3. Plaintiffs' Subpoena Improperly Seeks To Duplicate Discovery Work In The Apple Case.

The Subpoena Plaintiffs propounded on Apple in the True Wearables Case unnecessarily duplicates work that is already being done in the Apple Case, including Plaintiffs' pending Motion to Compel in the Apple Case. *See* Apple Case Dkt. Nos. 357–359; Samplin Decl. Ex. H. The deposition topics and document requests in Plaintiffs' Subpoena are identical in subject matter to several of Plaintiffs' requests at issue in that Motion to Compel (*see* Samplin Decl. Ex. F, at 370, *id.* Ex. H, at 487–91; *id.* Ex. I, at 533–34; *id.* J, at 548), as shown in the following table:

| Document Requests in Plaintiffs' Subpoena | Related Document Requests in the Apple Case |
|---|---|
| **SUBPOENA REQUEST NO. 1:** The personnel file for Marcelo Lamego. | **RFP NO. 240:** A full and complete copy of Apple's human resources file for each of the Former Employees.[3] |
| **SUBPOENA REQUEST NO. 2:** All documents related to Apple hiring Marcelo Lamego. | **RFP NO. 239:** All documents and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor.  <br><br>**RFP NO. 241:** All documents concerning Apple's hiring or termination of any of the Former Employees. |
| **SUBPOENA REQUEST NO. 3:** All documents related to the termination of Marcelo Lamego's employment relationship with Apple. | **RFP NO. 241:** All documents concerning Apple's hiring or termination of any of the Former Employees. |

---

[3] Plaintiffs defined the term "Former Employee" to "mean and refer to any current or former Apple employee who worked at Masimo or Cercacor before being employed by Apple." Samplin Decl. Ex. G, at 378 (Plaintiffs' Fifth Set of Requests of Production to Apple). Plaintiffs' definition of "Former Employee" covers Mr. Lamego, who is a former employee of Apple and worked for Plaintiffs prior to his employment at Apple.

21

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-28-

| | **RFP NO. 248:** Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending. |
|---|---|
| **SUBPOENA REQUEST NO. 4:** All communications with Marcelo Lamego regarding his employment at Apple, including his recruitment and termination. | **RFP NO. 236:** All communications between Apple and any Former Employee while the Former Employee was working for Masimo or Cercacor.<br><br>**RFP NO. 237:** All communications between Apple and any Former Employee before the Former Employee began working for Apple.<br><br>**RFP NO. 239:** All documents[4] and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor.<br><br>**RFP NO. 241:** All documents concerning Apple's hiring or termination of any of the Former Employees.<br><br>**RFP NO. 248:** Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending.<br><br>**RFP NO. 258:** All communications between (1) Marcelo Lamego or other individuals associated with True Wearables, Inc. including employees of Merchant & Gould, P.C., and (2) any |

---

[4] Plaintiffs' definition of "documents" is broad enough to include "communications." *See* Samplin Decl. Ex. G, at 378–79 (Plaintiffs' Fifth Set of Requests of Production to Apple) (defining "documents" to "include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, *including, but not limited to . . .video recordings, emails, voice mails, handwritten notes, [and] phone messages*" (emphasis added)).

22

Gibson, Dunn & Crutcher LLP

Exhibit A
-29-

| | Apple employee or other individuals associated with Apple, including Apple in-house council or employees of Gibson, Dunn & Crutcher LLP, regarding this case or the allegations in [the Apple Case].[5] |
|---|---|
| **SUBPOENA REQUEST NO. 5:** All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications. | **RFP NO. 129:** All communications between [Apple] and any individual who previously worked for Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.[6]<br><br>**RFP NO. 239:** All documents and things that refer or relate to any efforts by Apple or any Former Employee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor. |

---

[5] Plaintiffs' RFP No. 258 in the Apple Case was served on April 28, 2021, less than 30 days ago, and so is not part of Plaintiffs' pending Motion to Compel. Nonetheless, it also seeks documents that would be responsive to Plaintiffs' Subpoena Request No. 4. *Compare* Samplin Decl. Ex. I, at 533–34, *with id.* Ex. A, at 19.

[6] Plaintiffs have defined the term "Disputed Patents" to mean "the patents Plaintiffs assert should have their inventorship and/or ownership corrected" in the Apple Case. Samplin Decl. Ex. G, at 378 (Plaintiffs' Fifth Set of Requests of Production to Apple). Accordingly, communications "referring or relating to subject matter disclosed or claimed in the Disputed Patents" include communications concerning the patent applications from which the Disputed Patents issued. To the extent Plaintiffs are seeking communications concerning patent applications other than those from which issued the Disputed Patents in the Apple Case, such discovery is irrelevant to *both* the True Wearables Case *and* the Apple Case, because it is not related to any claim or defense in either case. Indeed, on May 20, 2021, Judge Early denied Plaintiffs' Motion to Compel with respect to RFP 129 and RFPs 242 and 243 (which sought *all* patent applications from Apple). Samplin Decl. ¶ 15 & Ex. G, at 390.

*(Cont'd on next page)*

23

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-30-

Gibson, Dunn & Crutcher LLP

| | **RFP NO. 240:** A full and complete copy of Apple's human resources file for each of the Former Employees.[7] <br><br> **RFP NO. 293:** All documents reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, severance, and communications regarding patent applications.[8] |
|---|---|

Plaintiffs' Subpoena deposition topics—which seek testimony concerning Mr. Lamego's termination by Apple—also will likely be duplicative of Plaintiffs' Rule 30(b)(6) topics in the Apple Case.[9]

Plaintiffs' Subpoena clearly has but one purpose—to seek the same irrelevant discovery from Apple in this case that is at issue in Plaintiffs' pending Motion to Compel in the Apple Case  The abridged timing of Plaintiffs' Subpoena and its substance—which tracks Plaintiffs' claims in the Apple Case and seeks documents that are the subject of a discovery dispute in that case—confirms its improper purpose.  Such a thinly-veiled end run around Federal Rule of Civil Procedure 26 and this Court's discovery procedures is improper.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1236054, at *2 (N.D. Cal. Mar. 18, 2019) (quashing a

---

[7] Documents "reflecting Marcelo Lamego's job duties and title, who he reported to, group he was assigned to, compensation, [and] severance" would be located in his human resource file at Apple.

[8] Plaintiffs' RFP No. 293 in the Apple Case was served on May 19, 2021, just one day before Apple's production in response to this Subpoena was initially due, and is therefore not part of Plaintiffs' pending Motion to Compel.  *See* Samplin Decl. Ex. J. RFP 293 in the Apple Case is *identical* to Plaintiffs' Subpoena Request No. 5. *Compare id.* Ex. A, at 19, *with id.* Ex. J, at 548.

[9] Plaintiffs have refused to propound their Rule 30(b)(6) topics in the Apple Case, despite Apple having served its Rule 30(b)(6) notice and topics on May 10, 2021, and despite Apple's repeated requests that Plaintiffs do the same.  Samplin Decl. ¶ 17. Nonetheless, given that the majority of Plaintiffs' allegations in the Apple Case center on Mr. Lamego's employment by Apple, it is very likely that Plaintiffs will seek to depose an Apple corporate witness about such topics.

Gibson, Dunn & Crutcher LLP

subpoena that "amounts to an improper end run around the court's prior orders" because defendant "is not entitled to discovery from third parties that the court has already ruled out-of-bounds"); *see also Thogus Prod. Co. v. Bleep, LLC*, 2021 WL 827003, at *5 (N.D. Ohio Mar. 4, 2021) (quashing subpoenas that "improperly attempt to circumvent this Court's . . . Order denying expedited discovery" because "in large measure, [the subpoenas] seek production of the same universe of documents and information"). Plaintiffs should not be permitted to bypass the Federal Rules through a third-party subpoena directed at discovery that has no relevance to this case and to which they will not even be entitled in the Apple Case.

Plaintiffs' attempt to use this case to obtain discovery that is irrelevant here and duplicative to that being challenged by Apple in the Apple Case is highly improper. The parties fully briefed Plaintiffs' Motion to Compel on these topics in the Apple case (in a motion totaling over 130 pages and approximately 960 pages of exhibits, *see* Samplin Decl. ¶ 12 & Ex. H). The Court has already expended significant time and resources reviewing the briefing and scheduled a hearing on June 3 to resolve the motion. Plaintiffs should not be permitted to waste the Court's time by bypassing the Court's discovery procedures with this Subpoena. This attempt to obtain the same discovery here that is being actively litigated in the Apple Case is an improper end run around Federal Rule of Civil Procedure 26, and should be denied.

### 4. Plaintiffs' Subpoena Is An End Run Around The Discovery Limits Imposed By The Court In The Apple Case.

The Subpoena is also improper because it attempts to circumvent the deposition time limits imposed by the Court in the Apple Case Scheduling Order. This Court limited each party to 100 hours of depositions in the Apple Case, which includes the parties' Rule 30(b)(6) depositions. Samplin Decl. Ex. M, at 560 (Apple Case, Dkt. No. 37 at 1). Yet Plaintiffs seek a deposition from Apple in this case that is equivalent to a Rule 30(b)(6) deposition—and concerns topics related solely to the Apple Case—but would not count against Plaintiffs' 100-hour limit in the Apple Case. Such an end run

25

around the Court's Scheduling Order in the Apple Case is improper.

Plaintiffs' attempt to circumvent the Scheduling Order in the Apple Case is particularly egregious given their refusal to even provide to Apple their Rule 30(b)(6) notice and topics in the Apple Case, despite Apple's repeated requests for such information. *See* Samplin Decl. ¶¶ 16–17 & Exs. K–L. By seeking to take a Rule 30(b)(6)-equivalent deposition in this case, Plaintiffs plainly hope to obtain additional testimony from Apple beyond that which the Court has permitted in the Apple Case. Plaintiffs should not be permitted to evade the Apple Case Scheduling Order in this manner.

## D.    Conclusion

For all of the foregoing reasons, Apple respectfully requests that the Court grant its motion to quash the Subpoena in its entirety and enter a protective order prohibiting the deposition testimony and document discovery Plaintiffs seek from Apple in this case.

# IV. MASIMO'S POSITION

## A.    Factual Background

### 1.    Lamego Pursued An Executive Position At Apple While Still Serving as Cercacor's Chief Technology Officer

Apple began recruiting Lamego from Cercacor in early 2013. Kachner Decl. Ex. 3, at 250:14-251:20. Lamego later touted his exposure to developing noninvasive patient monitors in an email to Apple's CEO, Mr. Cook. Kachner Decl. Ex. 4.[10] Lamego told Mr. Cook that he had developed intellectual property for Masimo and Cercacor over a ten-year period and he was "sure [he] could add a significant value to the Apple team." *Id*. Lamego also told Mr. Cook that, while it is easy to develop medical products that work well for most users, "[g]etting the same technology to work in almost the entire population is extremely more complex." *Id*. Lamego referred to this complexity as the

---

[10] Defendants produced the Lamego email as confidential under the protective order. Defendants refuse to allow Masimo to disclose to Apple's counsel all information in this brief that Defendants designated as confidential, including the Lamego email. Kachner Decl. Ex. 5.

"patient equation." *Id*. Lamego went on to explain to Mr. Cook that he could "solve" this "patient equation" for Apple "without conflicting with the large IP I have developed for Masimo and Cercacor." *Id*. Lamego asked Mr. Cook for an executive position in exchange for providing the solution. *Id*. When Lamego wrote to Mr. Cook, he was still the Chief Technical Officer at Cercacor, with a fiduciary duty.

At that time, Lamego was preparing to reveal a supposed breakthrough to the Board of Directors at Cercacor. Kachner Decl. Ex. 7 at 164:19-25. He "enthusiastically" claimed that he had proven the feasibility of measuring glucose and several other parameters non-invasively. *Id.* at 166:20-23; Dkt. 42, ¶¶ 42, 67. This would have been a major technological and commercial accomplishment for Masimo and Lamego. Lamego understood that these breakthroughs were very significant to Cercacor and would have made him wealthy. Kachner Decl. 8 at MASM0205492.

Apple hired Lamego in January 2014. After Lamego left Cercacor, Cercacor was unable to replicate the feasibility Lamego claimed to have achieved. *See* Kachner Decl. Ex. 7 at 182:25-184:8.

### 2. Lamego Put His Apple Job Duties at Issue in This Case

Before departing Cercacor for Apple, Lamego told Masimo's CEO, Joe Kiani, that he would not work on technologies that compete with Masimo and Cercacor. Dkt. 152-4 ¶ 6; Kachner Decl. Ex. 7 at 69:16-70:19, 88:10-15. After Lamego left Apple but before Masimo filed this suit, Masimo confronted Lamego. In response, Lamego denied any wrongdoing and accused Masimo of attempting to "disrupt Dr. Lamego's career and business efforts" since January 2014, before he started at Apple. Kachner Decl. 8 at TRUE16532 ¶ 16. Lamego represented Apple hired him "to work in (sic.) a project that had **no connection** with any products developed by Masimo or Cercacor." *Id*. (emphasis added).

Masimo is entitled to test the veracity of Lamego's denials, representations, and bases for his accusations. Lamego's representations appear to conflict with his recent public statements about his actual role at Apple. *See* Kachner Decl. Ex. 9. According

to Lamego's current Linkedin profile, his work at Apple included developing "bio-sensing functionalities" and designing "hardware and algorithm architectures." *Id.* Such activities appear to compete with Masimo. Masimo is also entitled to explore from Apple precisely what Lamego was offering when he emailed Mr. Cook. Masimo should also be entitled to explore what Apple understood by Lamego's statement that Apple could leverage value from his Masimo and Cercacor experience. But Lamego has refused to answer any questions about Apple, citing a confidentiality obligation to Apple. *See* Kachner Decl. Ex. 3 10:13-12:18. Masimo should be allowed to explore the apparent contradictions in Mr. Lamego's statements and testimony.

### 3. Lamego Put His Termination From Apple at Issue In This Case

Shortly after leaving Apple, Lamego's friend and then-Cercacor employee Cristiano Dalvi told Masimo's CEO that Lamego left Apple because Apple asked Lamego to compete with Masimo and Cercacor. Kachner Decl. Ex. 6 at 69:16-70:19, 88:16-20. This explanation was consistent with Lamego's prior statements that he would not work on competing technologies while at Apple. Dkt. 152-4 (Kiani Decl.) ¶ 6; Kachner Decl. Ex. 6 at 69:16-70:19, 88:10-15. Much later, it became clear that Lamego worked in exactly the same technical area at Apple as he had at Masimo and Cercacor. Kachner Decl. Ex. 9.

Now, Lamego contends that Apple terminated his employment because of Masimo. Lamego contends that Masimo "repeatedly tried to disrupt Dr. Lamego's career and business efforts" while he was at Apple. Kachner Decl. Ex. 8 at TRUE165232 ¶ 16. Lamego further testified that Masimo's CEO threatened his employment with Apple. Kachner Decl. Ex. 3 at 423:11-424:12. Lamego and his family blame Masimo for disrupting his employment with Apple. *See also* Kachner Decl. Ex. 10 at 49:15-18; 56:9-14.

But Lamego refuses to provide any discovery about why Apple terminated him. Kachner Decl. Ex. 3 at 10:13-12:18. Lamego refused to answer direct questions about why he was fired, again citing his confidentiality obligations to Apple. *Id.* at 231:14-

28

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-35-

233:16.  Masimo is entitled to discover why Apple fired Lamego to rebut Lamego's accusations that Masimo is supposedly the cause for all of his unfortunate circumstances. Masimo is also entitled to discover why Lamego intended to harm Masimo, especially in response to Apple firing him.  Such discovery is relevant to Lamego's willful and malicious misappropriation of Masimo's trade secrets.  *See* Cal. Civ. Code § 3426.3(c); 18 U.S.C. § 1836(b)(3)(C).

### 4.     Apple's Actions Show That Facts About Apple Are Relevant to This Case

At the outset of the Apple Case, Apple filed a notice of related cases.  *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.) (Dkt. 14).  Apple represented the Apple Case "arises from the same or a closely related ***transaction, happening, or event*** as the 20-00048 case presently before this Court, [and] calls for determination of the same or substantially related or similar questions of law and fact." *Id*. (emphasis added).  Having filed that notice—and obtaining a transfer to Judge Selna based on that notice—Apple cannot now genuinely argue the cases are unrelated and that information about Apple is irrelevant.

Apple also recently entered into a common-interest agreement with Defendants in this case.  *See* Kachner Decl. Ex. 11.  Attempting to justify that common-interest agreement, Defendants contend that the Apple Case and this case involve "overlapping facts and legal issues."  *Id*. at p.3.[11]  Presumably Apple must also believe that some overlap in the two cases justify entering into this common-interest agreement.  That overlap pertains to Lamego and his involvement with Apple.  Apple's common-interest agreement and representations to this Court that the two cases are legally and factually

---

[11] Defendants refused to identify those overlapping facts, claiming that would reveal work product.  Kachner Decl. Ex. 11.  A common-interest privilege does not shield the overlapping facts from discovery. *Eli Lilly and Co. v. Arch Ins. Co.*, 2016 WL 5394402, \*6 (S.D. Ind. Sept. 27, 2016) (common interest privilege shields only documents that "advance a shared legal interest and seek an attorney's advice to advance that interest").

Joint Stipulation Regarding Non-Party Apple Inc.'s Motion to Quash
Subpoena and for a Protective Order
CASE NO. 8:18-cv-02001-JVS (JDEx)

Gibson, Dunn & Crutcher LLP

related contradict Apple's argument that the cases are unrelated and that Lamego's recruitment, employment, and termination by Apple are irrelevant.

## B.  Legal Standard

The party who moves to quash a subpoena has the "burden of persuasion" under Rule 45(c)(3).  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).  A party "claiming undue burden as a basis for a motion to quash is held to a high burden of proof which requires the party to demonstrate the actual 'manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.'" *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, 2012 WL 112325, at *2 (N.D. W.Va. Jan.12, 2012), *quoting* 9A C. Wright and A. Miller, M. Kane, *Federal Practice and Procedure*, Civ.3d § 2463.1.

"In deciding whether to quash or modify a subpoena to a third party, a court must balance the relevance of the discovery sought and the burden to the party seeking the subpoena against the potential hardship to the deponent, keeping in mind Rule 26's broad policy favoring full discovery." *Apple, Inc. v. Samsung Elecs. Co.*, No. SACV122176AGJPRX, 2013 WL 12324184, at *1 (C.D. Cal. Jan. 3, 2013) (citing Fed. R. Civ. P. 26(b)(1); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)) (denying motion to quash).

## C.  Argument

The Court should deny Apple's attempt to quash Masimo's subpoena because (1) the subpoena is narrowly drawn to relevant discovery in this case; (2) Masimo has a substantial need for the requested discovery; and (3) Masimo's subpoena does not require Apple to duplicate any effort, much less incur a substantial burden.

### 1.  Masimo Seeks Limited Discovery that is Relevant and Proportionate to This Case

Masimo narrowly tailored the Apple subpoena to seek discovery on just three topics that are at issue in this case: (1) Apple's recruitment of Lamego while he worked

30

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-37-

at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. These topics are highly relevant to Masimo's breach-of-fiduciary-duty claim and misappropriation-of-trade-secret claims. These topics are also highly relevant to show Lamego's intentions when he departed Cercacor and when he later departed Apple to form True Wearables. Lamego and True Wearables have also put all three topics at issue in this case.

### a. Apple's recruitment of Lamego while still at Cercacor is highly relevant to this case

As Apple acknowledges, this case concerns "Mr. Lamego's conduct while employed by Cercacor." Br. at 1. But Apple must not appreciate that Lamego was communicating directly with Apple and its CEO Tim Cook while he was still a fiduciary at Cercacor. *See* Kachner Decl. Ex. 4. Lamego was claiming to Cercacor that he had made a major technology breakthrough and, at the same time, he was seeking executive employment from Apple. In seeking that employment, Lamego offered what he had learned at Cercacor and Masimo. Those interactions are highly relevant to Masimo's breach-of-fiduciary-duty and trade-secret claims in this case.

Lamego's interactions with Apple are also relevant to whether he believed in the breakthrough he was presenting to Cercacor. Those communications with Apple to secure employment show the gravity of Lamego's breach of his fiduciary duty and his intent to harm Masimo and Cercacor upon his departure.

Based on the foregoing, Masimo should be permitted to depose Apple regarding:

**TOPIC NO. 1:**

Apple's reasons for hiring Marcelo Lamego.

**TOPIC NO. 3:**

Apple's communications with Marcelo Lamego concerning Apple recruiting Marcelo Lamego.

Before any deposition, Masimo should also receive documents pertaining to Apple's recruiting and hiring of Lamego. Presumably those documents would be inside

31

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-38-

Lamego's personnel file maintained at Apple (RFP No. 1). If those documents are maintained elsewhere, Masimo has specified that Apple produce any documents concerning Apple's recruiting and hiring of Lamego. (Revised RFP Nos. 2 and 4). Accordingly, Masimo should be permitted to discover the following Apple documents, as Masimo clarified as part of the meet and confer with Apple:

### REQUEST FOR PRODUCTION NO. 1:

The personnel file for Marcelo Lamego.

### REVISED REQUEST FOR PRODUCTION NO. 2:

Documents and Communications about Apple's consideration and hiring of Marcelo Lamego, prior to January 21, 2014.

### REVISED REQUEST FOR PRODUCTION NO. 4:

Apple's communications with Marcelo Lamego regarding his hiring by Apple.

### b.    Limited discovery about Lamego's job duties at Apple is highly relevant in this case

Lamego's title and job duties at Apple will show the nature of the position which enticed Lamego to leave Cercacor. That position is also part of the exchange between Lamego and Apple for which Apple was to obtain help to solve their "patient problem." The title and job duties complete the story pertaining to Lamego's email to Mr. Cook.

Specifically, Lamego told Apple's CEO Tim Cook that he had developed intellectual property for Masimo and Cercacor over a ten year period and he was "sure [he] could add a significant value to the Apple team." Kachner Decl. Ex. 4. Lamego also told Mr. Cook that he could "solve" Apple's issues with non-invasive measurement technologies. *Id*. In exchange, Lamego sought an executive position at Apple. Information about Lamego's duties and title at Apple are relevant to understand how Lamego planned to execute on his proposal to help Apple and how Apple enticed Lamego to leave Cercacor. This information is also highly relevant to Lamego's state of mind upon departing Cercacor, his intent to harm Masimo, and his breach of his

32

fiduciary duty to Cercacor.

Moreover, the title and duties Lamego had at Apple will also allow Masimo to test Lamego's credibility. Specifically, Lamego told Masimo's CEO he would not work on technologies that compete with Masimo and Cercacor. Dkt. 152-4 (Kiani Decl.) ¶ 6; Kachner Decl. Ex. 6 at 69:16-70:19, 88:10-15. After Lamego left Apple he represented to Masimo that Apple hired him "to work in (sic.) a project that had **no connection** with any products developed by Masimo or Cercacor." Kachner Decl. Ex. 8 at TRUE165232 ¶ 16. (emphasis added). Lamego's representations appear to conflict with his own recent public statements about his actual role at Apple. *See* Kachner Decl. Ex. 9. Masimo should be allowed to explore the apparent contradictions in Mr. Lamego's statements.

Based on the foregoing, Masimo should be permitted to discover Lamego's personnel file maintained at Apple (RFP No. 1), which presumably contains documents showing Lamego's duties and title at Apple. If those documents are maintained elsewhere, Masimo has specified that Apple produce documents sufficient to show Lamego's job duties and title. (Revised RFP No. 5). Thus, Masimo should be permitted to discover the following Apple documents:

### REQUEST FOR PRODUCTION NO. 1:

The personnel file for Marcelo Lamego.

### REVISED REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to show Marcelo Lamego's job duties and title at Apple.

### c. Apple terminating Mr. Lamego is highly relevant in this case

In this case, Lamego has blamed Masimo for Apple firing him. Even before Masimo filed this lawsuit, Lamego claimed Masimo caused Apple to fire him, and that he "had no choice other than to return to Orange County and open his own company," True Wearables. Kachner Decl. Ex. 8 at TRUE16532 ¶ 16. Lamego put his termination from Apple directly at issue by blaming Masimo for that termination. Masimo should

33

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-40-

be permitted to ask Apple about the basis for that termination to defend itself from this accusation.

Lamego's termination by Apple is also independently discoverable to show evidence of Lamego's character. *United States v. Shanshan Du*, 570 F. App'x 490, 498 (6th Cir. 2014). Such discovery could help complete the story of Lamego's misconduct that started when he was Cercacor's Chief Technology Officer and continued when he founded True Wearables. *See id*. (defendant's firing by former employer "was admissible character evidence as background information that completed story" of misconduct).

Based on the foregoing, Masimo should be permitted to depose Apple regarding:

**TOPIC NO. 2:**

Reasons for termination of Marcelo Lamego's employment relationship with Apple.

**TOPIC NO. 4:**

Apple's communications with Marcelo Lamego concerning termination of Marcelo Lamego's employment relationship with Apple.

Before any deposition, Masimo should also receive documents pertaining to Apple's termination of Lamego. Presumably those documents would also be inside Lamego's personnel file maintained at Apple (RFP No. 1). If those documents are maintained elsewhere, Masimo has specified that Apple produce any documents concerning Apple's termination of Lamego. (Revised RFP No. 3). Accordingly, Masimo should be permitted to discover the following Apple documents, as Masimo clarified as part of the meet and confer with Apple:

**REQUEST FOR PRODUCTION NO. 1:**

The personnel file for Marcelo Lamego.

**REVISED REQUEST FOR PRODUCTION NO. 3:**

Apple's communications with Marcelo Lamego regarding the end of his employment.

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-41-

Gibson, Dunn &
Crutcher LLP

### 2. Masimo Has a Substantial Need For the Requested Discovery

The parties agree that a Court should not quash a subpoena if the need for the discovery "cannot be otherwise met without undue hardship." *See* Br. at 1, 19. Apple is the only source of the documents Masimo seeks, and therefore, Masimo has no other options for the discovery. Lamego confirmed that he has incomplete copies of his communications with Apple. Kachner Decl. Ex. 3 at 327:17-328:14. And in the final days of fact discovery in this case, Lamego refused to provide any meaningful testimony about Apple, citing his confidentiality obligations to Apple. Id. at 10:13-12:18. Thus, Apple is the only source of this relevant discovery.

Apple's cases do not support quashing Masimo's subpoena. Apple cites two cases, but both are inapposite because both cases concern confidential research and technology. *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (discussing a subpoena that sought "trade secrets or other confidential research, development or commercial information"); *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (discussing a subpoena that sought "confidential technology"). Masimo seeks no such information here. Rather, Masimo seeks limited discovery on: (1) Apple's recruitment of Lamego while he worked at Cercacor, (2) Lamego's title and duties at Apple, and (3) Apple's basis for terminating Lamego. All three topics are directly relevant in this case, and Defendants have also put all three topics at issue.

### 3. Masimo's Subpoena Does Not Impose an Undue Burden on Apple

Apple contends that Masimo's subpoena "unnecessarily duplicates work that is already being done in the Apple Case." Br. 21. This argument is not a basis to deny discovery, and Apple provides no evidence to support its position. It also falls well short of showing an undue burden.

For the subpoenaed documents, Apple merely identifies similarities between the subpoena and certain document requests that Masimo served in the Apple case. Br. at 21-24. But Apple identifies no extra effort or cost to produce the same document in two

35

Gibson, Dunn &
Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-42-

different cases.  Moreover, Apple has not committed to producing all of the documents at issue in the Apple case.

For the deposition topics, Apple contends Masimo seeks testimony that will "also will likely be duplicative of Plaintiffs' Rule 30(b)(6) topics in the Apple Case."  Br. at 24.  But any duplication does not show an undue burden.  Rather, any duplication is merely the result of the protective orders governing each case.  Those protective orders prohibit use of confidential discovery in another case without authorization or further court order.  Kachner Decl. Ex. 12 at ¶ 5.1; Dkt. 260 ¶ 5.  Masimo is merely complying with the protective orders by seeking relevant information by subpoena so that the information can be used in this case.  Masimo did not serve the subpoena for "gamesmanship" or for an "improper purpose" as Apple alleges. *See* Br. at 9.

Masimo has no desire to take the same deposition or duplicate Apple's documents in both cases.  Similarly, it appears Apple would prefer not to duplicate its discovery efforts.  The parties could avoid any duplicate effort if Apple simply allows confidential discovery to be used in both cases, and Masimo is perfectly willing to enter into such a stipulation.  If Apple refuses, any duplicate discovery efforts would be of Apple's own making.  Moreover, Apple is of course presuming that it has already produced all of the information sought by the subpoena in the Apple Case.  But Apple is fighting that discovery in the Apple Case as well.

**4.** **Apple's Remaining Arguments Do Not Justify Quashing The Subpoena**

**a.** **Masimo timely served its subpoena**

Apple argues that Masimo timed this subpoena to disrupt or conflict with the timing of discovery hearings in the Apple case.  Br. at 24.  Apple argues "the abridged timing of Plaintiffs' Subpoena … confirms its improper purpose." *Id*.  This argument is baseless.  The timing is actually very simple.  The timing of the subpoena was due to the case schedule in this case, and Masimo's attempts to obtain all discovery possible from True Wearables and Lamego before pursuing the discovery from Apple.  Indeed,

36

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-43-

Masimo just recently completed Lamego's deposition where he refused to provide information about his employment at Apple. Masimo timely served the subpoena near the close of fact discovery. Any overlap with proceedings in the Apple Case was merely the result of the deadline for discovery in this case. Apple's attempt to attribute improper motive to Masimo is baseless. And because the protective order prohibits the use of protected material in another case, Apple's claims of improper purposes is not plausible.

Apple's legal citations are also misplaced. In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1236054, at *2 (N.D. Cal. Mar. 18, 2019), the court quashed a subpoena seeking discovery from a third party that the court had already ruled was "out-of-bounds." But here, this Court has not yet considered, much less ruled on, the relevance of the requested discovery in either this case or the Apple Case. *Thogus Prod. Co. v. Bleep, LLC*, 2021 WL 827003, at *5 (N.D. Ohio Mar. 4, 2021), is also inapposite. There the court denied Plaintiff's attempt to take expedited discovery from the Defendant. Plaintiff then served fifteen subpoenas on Defendant's customers, seeking the very same expedited discovery the court had already denied. Masimo is not seeking to bypass any court order. Masimo merely seeks very focused and limited discovery from Apple that is relevant to this case and is available from no other source.

### b. Masimo is not seeking to avoid discovery limits in the Apple case

Apple also argues Masimo's subpoena is an attempt to avoid the 100-hour deposition limit in the Apple case.[12] Br. at 2, 14, 25. This argument is pure conjecture. Masimo has not yet used a single hour of deposition time in the Apple case, and does not currently expect to be short on hours. Apple should not be able to rely on the deposition clock in the Apple Case (which has not started to run) to avoid a deposition in this case.

### c. Masimo's first subpoena is irrelevant

As Apple acknowledges, Masimo voluntarily withdrew a prior subpoena to Apple

---

[12] This argument is irrelevant to Masimo's subpoena for documents.

Gibson, Dunn &
Crutcher LLP

more than a year ago. Br. at 10. Apple argues that Masimo's withdrawn subpoena and the current subpoena are merely attempts to "use this case to seek discovery that [Plaintiffs] know they are unlikely to obtain in the Apple case." *Id*. at 8. Apple further accuses Masimo of engaging in "gamesmanship with respect to basic discovery rules." *Id*. at 9. Apple's argument and accusations are unsupported.

Masimo's withdrawn subpoena is not before this Court. Apple's discussion of that subpoena distracts from the narrowly focused subpoena at issue. Masimo served the withdrawn subpoena when it was facing a discovery deadline, before Defendants sat for a single deposition or produced significant discovery. That discovery deadline was subsequently moved. *See* Dkt. 79. With the additional time, Masimo withdrew the subpoena to first pursue as much discovery as possible from Defendants in this case before serving Apple with the subpoena at issue. That is entirely proper.

The discovery Masimo obtained has allowed Masimo to narrowly focus the current subpoena on discovery that is directly at issue in this case that Masimo cannot receive from Lamego. Apple understood that Masimo reserved the right to re-serve a new subpoena at a later stage in the case. For that reason, Apple dismissed its motion to quash without prejudice, "reserving the right to refile both should Plaintiffs at any time decide to re-issue the subpoena to Apple in connection with the True Wearables Case." Samplin Decl. Ex. E.

### d. Masimo properly focused the subpoena

After meeting and conferring on Apple's motion, Masimo further focused the subpoena in response to Apple's objections. Kachner Decl. Ex. 1. Despite Masimo's clarification, Apple still refused to respond. Kachner Decl. Ex. 2.

Apple contends that Masimo is not permitted to clarify and narrow the scope of its subpoena. *Id*. Apple's argument lacks support. Nothing precludes an issuing party from focusing a subpoena to resolve objections. Indeed, that is what the meet and confer process is supposed to facilitate. Apple cites no authority, and Masimo is aware of none, holding that a party may not narrow a subpoena after it is served. Apple's own cited

Gibson, Dunn & Crutcher LLP

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-45-

authority recognizes that a subpoena may be narrowed by agreement. *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *3 (S.D.N.Y. Sept. 6, 2019). Courts have denied motions to quash when the moving party refuses efforts to narrow the subpoena. *See, e.g., In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 2764260, at *2 (N.D. Ill. May 6, 2019).

Instead, Apple argues Masimo must withdraw its subpoena and issue a new subpoena if Masimo seeks to clarify the subpoena's scope. Kachner Decl. Ex. 2. This is unnecessary for four reasons. First, Masimo's subpoena as served is already directed to the three relevant issues identified above. Second, Masimo is permitted to further focus its subpoena. Third, Apple's suggestion is not available here because discovery has now closed in this case. By serving this subpoena near the end of fact discovery, Masimo was able to focus the subpoena on narrow issues for which discovery from Apple was still needed. Fourth, Apple's suggestion would not resolve the matter because Apple objects to the narrowed topics based on the same objections raised here. *Id.*

### e.   Any overlap in discovery between this Case and the Apple Case is not a basis to quash

The facts in this case overlap to some degree with the Apple Case. Indeed, True Wearables and Apple entered a common-interest agreement based on purported overlapping factual issues. Kachner Decl. Ex. 11 at p.3. Their reliance on overlapping facts to support a common-interest agreement shows some facts from Apple are relevant in this case. Apple also relied on the overlap in its notice of related case when Masimo sued Apple. *Masimo Corp. et al. v. Apple Inc.*, Case no. 8:20-cv-00048-JVS-JDE (C.D. Cal.) (Dkt. 14). There appears to be no genuine dispute that some discovery will be relevant to both cases. Masimo should be entitled to relevant discovery from Apple in this case, even though that discovery is also relevant in the Apple case.

Based on discovery in this case, Masimo learned that Apple is the unique source for some discovery. For example, when Masimo questioned Lamego about Apple, he

39

Gibson, Dunn & Crutcher LLP

Exhibit A
-46-

refused to respond and explained that some discovery was available only from Apple. *See* Kachner Decl. Ex. 3 10:13-12:18, 327:17-328:14. Apple should provide Masimo with this relevant discovery.

Apple's argument that Masimo is seeking discovery for use in the Apple Case is also baseless. Masimo needs, and is entitled to, discovery from Apple ***in this case***. Even if Apple were to produce the requested discovery in the Apple Case, the protective order there would preclude Masimo from using that discovery outside that case, unless Masimo obtained relief from the protective order. Kachner Decl. Ex. 12 at ¶ 5.1. Similarly, the protective order in this case precludes Masimo from using any discovery in any other case, including the Apple case, absent relief from the protective order. Dkt. 260 ¶ 5. Masimo's subpoena is necessary for Masimo to secure discovery from Apple for use in this case.

**D. Conclusion**

Because Masimo's subpoena is focused on relevant issues in this case, and because the discovery is available only from Apple, Masimo respectfully requests that the Court deny Apple's motion to quash.

Dated: June 3, 2021          GIBSON, DUNN & CRUTCHER LLP

                    By:    */s/ Joshua H. Lerner*
                            Joshua H. Lerner
                            H. Mark Lyon
                            Ilissa Samplin

                            *Attorneys for Non-Party Apple Inc.*

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEx)

Exhibit A
-47-

Gibson, Dunn &
Crutcher LLP

Dated: June 3, 2021

KNOBBE, MARTENS, OLSON & BEAR LLP

By: /s/ Mark D. Kachner
Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Irfan A. Lateef
Brian C. Claassen
James E. Youngblood
Adam B. Powell
Mark D. Kachner

*Attorneys for Plaintiffs,*
*Masimo Corporation and Cercacor*
*Laboratories, Inc.*

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

By: /s/ Joshua H. Lerner
Joshua H. Lerner

41

JOINT STIPULATION REGARDING NON-PARTY APPLE INC.'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER
CASE NO. 8:18-CV-02001-JVS (JDEX)

Exhibit A
-48-

Gibson, Dunn &
Crutcher LLP