# EXHIBIT I

**Page 1**

```
 1
 2
 3
 4              UNITED STATES DISTRICT COURT
 5             CENTRAL DISTRICT OF CALIFORNIA
 6                  SOUTHERN DIVISION
 7                       - - -
 8   THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING
 9
10   MASIMO CORPORATION, et al.,  )
         Plaintiffs, )
11              vs.              )
                                 ) SACV-20-00048-JVS
12   APPLE, INC.,                )
         Defendant.  )
13   ------------------------------)
14
15         REPORTER'S TRANSCRIPT OF PROCEEDINGS
16              Santa Ana, California
17              July 10, 2020
18
19            SHARON A. SEFFENS, RPR
                United States Courthouse
20           411 West 4th Street, Suite 1-1053
              Santa Ana, CA  92701
21              (714) 543-0870
22
23
24
25                                          11:46
```

**Page 2**

```
 1   APPEARANCES OF COUNSEL:
 2   For the Plaintiffs:
 3   JOSEPH R. RE
     STEPHEN JENSEN
 4   KNOBBE MARTENS
     2040 Main Street, 14th Floor
 5   Irvine, CA  92614
     (949) 760-0404
 6
     For the Defendant:
 7
     H. MARK LYON
 8   JOSHUA LERNER
     BRIAN ROSENTHAL
 9   GIBSON DUNN & CRUTCHER, LLP
     1881 Page Mill Road
10   Palo Alto, CA  93403-1211
     (650) 849-5307
11
     JOSHUA LERNER
12   GIBSON DUNN & CRUTCHER, LLP
     555 Mission Street, Suite 3000
13   San Francisco, CA  94105-0921
     (415) 393-8254
14
     BRIAN ROSENTHAL
15   GIBSON DUNN & CRUTCHER, LLP
     200 Park Avenue
16   New York, NY  10166-0193
     (212) 351-2339
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1        SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.   02:59
 2            (Per telephonic conference)                          02:59
 3            THE CLERK:  Calling Item No. 1, SACV-20-00048-JVS,    03:00
 4   Masimo Corporation versus Apple, Inc.                         03:00
 5        Appearances on behalf of the plaintiff, please.          03:00
 6        MR. RE:   Thank you.  Good afternoon, Your Honor,         03:00
 7   this is Joseph Re of Knobbe Martens on behalf of Masimo       03:00
 8   Corporation, and with me is my partner Stephen Jensen.         03:00
 9        THE CLERK:   And on behalf of the defendants,             03:00
10   please.                                                       03:00
11        MR. LYON:    Good afternoon, Your Honor.  It's Mark       03:00
12   Lyon on behalf of Apple, and with me is Joshua Lerner, and    03:00
13   Brian Rosenthal.                                              03:00
14        THE COURT:   Good afternoon.                             02:58
15        Thank you for your joint report that you filed           03:01
16   last week.  Let me share my thoughts with you, and then I'd   03:01
17   be happy to hear you.                                         03:01
18        I believe it's fundamentally unfair to the parties       03:01
19   and inefficient to require reduction of the number of claims  03:01
20   for prior art references prior to the full disclosure of the  03:01
21   infringement contentions and the invalidity contentions.     03:01
22   Let me give you an example of the poker world.  Suppose       03:01
23   Masimo has a claim that it would evaluate as a for basis,     03:01
24   but when Apple makes its invalidity disclosures, it comes up  03:01
25   with prior art that would amount to Royal Fresh.  It's        03:01
```

**Page 4**

```
 1   better for Masimo to designate a claim in light of prior art
 2   demonstrating it wasn't viable.
 3        So my thought is that the initial round of
 4   disclosures ought to come after the parties have made their
 5   invalidity disclosures and their prior art disclosures.  The
 6   date for invalidity contentions is 9/7.  What I would
 7   propose is that within two weeks of that date, the parties
 8   present me with a proposal for an initial reduction of
 9   claims and prior art references that would contemplate
10   actual disclosure of those reductions within 30 days of the
11   Court adopting a specific proposal.  I would then
12   contemplate that there would be a further reduction after
13   the Markman hearing, and I would leave to your discretion
14   the time for final disclosure as to what we go to trial on.
15        I think that may require some adjustments to
16   events leading to the Markman hearing.  If the invalidity
17   contentions come in 9/7, the parties' exchange of
18   proposed claim terms is 9/21.  I don't think that gives you
19   enough time to reflect on both sides' disclosures, come up
20   with your proposal, and then for narrowing selections of
21   claims and prior art references.
22        So I think that the dates between the exchange of
23   claim terms and the Markman hearing need to be adjusted to
24   accommodate the disclosures pursuant to whatever proposal I
25   adopt for the disclosures following the invalidity and the
```

Exhibit I
-112-

5

1 infringement contentions and the Markman hearing. I'm not
2 adverse to slipping the Markman hearing a month or six weeks
3 if that makes sense. That's in February, and we don't have
4 a trial date in 2021.
5 So those are my general thoughts. I'll be happy
6 to hear you.
7 Let's begin with you, Mr. Re.
8 MR. RE: Thank you, Your Honor.
9 I think we're in complete agreement with
10 everything you said. I do think there needs to be an
11 exchange of information. I do want to alert the Court that
12 we are planning on amending our pleading that's set forth in
13 the Court's order regarding the Motion to Dismiss. In fact,
14 we will be substituting out some patents, so there needs to
15 be some more time for the parties to fully evaluate the
16 claims.
17 And, yes, we have not yet received the other
18 party's technical documents which were due back in June, and
19 that we of course need before we do our contentions. But we
20 agree with everything you said, and I think the parties will
21 work it out and will come up with a proposal for this by
22 September 21 as you indicated.
23 THE COURT: Mr. Lyon.
24 MR. LYON: Thank you, Your Honor.
25 Just a couple points. Let me just raise a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

6

1 concern, and you may have already considered this, but let
2 me at least just throw it out there so that we can have a
3 discussion if it's helpful. The one thing I would say with
4 not putting in some kind of target limits at this point is
5 that you end up with potentially hundreds of claims that
6 both parties are going to be charting, that they're going to
7 be discussing and potentially arguing over as far as what
8 claim terms might be involved.
9 That is not a trivial aspect. I mean, that's
10 something when some of these -- I'm sure you've seen them.
11 Some of these claim charts can wind up being hundreds or
12 thousands of pages long, which is a very significant effort
13 to create, even if it is copying and pasting some of the
14 information because these claims are so related, which still
15 winds up that somebody has to sit down and analyze each
16 individual claim to decide whether or not you can simply
17 copy a paragraph from a different claim or not. You have to
18 do that, and then that has to go through whatever levels of
19 review with the client and with the firm to make sure that
20 that's okay.
21 Then to the extent for there's any dispute about
22 that, instead of a single claim that the Court is
23 worrying about, it may end up having 15 or 16 claims, which
24 the Court would then have to do a similar review to make
25 sure it all makes sense, and the same argument applies

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

7

1 equally to each of those 15 or 16 claims.
2 So our view of this would be if we set some
3 number, and it could be -- we don't think the numbers we
4 picked are terrible, but if there's a higher number, we
5 could talk about that. But pick some target numbers now so
6 that we can get a bit more reign in on the case before we
7 get into charting everything with the idea that if there's
8 reasons to change these things down the road, that's
9 something that can always be done in good cause.
10 But it really needs to be done at the stage of
11 preparing it for Markman, and then have that kind of a
12 target, sort of like page limits in the brief in a lot of
13 ways. If you put these claims and limits on people, they'll
14 make some hard choices that they otherwise wouldn't make or
15 -- and that they probably should make, but because of the
16 fact that they don't have to, everything just gets thrown in
17 with the kitchen sink.
18 That's why we were suggesting trying to do
19 something now. Then if we need to have some discussions
20 about whether, you know, it's 50, 40, claims, whatever it is
21 we pick -- maybe the plaintiffs need a little bit more than
22 that, maybe another ten or so -- we could have those kinds
23 of discussions and maybe stipulate to that at the beginning.
24 This is the first we've heard that they're
25 planning on changing the patents again, so that's a little

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

8

1 troubling because we are already very far into the case, and
2 we're already trying to start gearing up for discovery on
3 the patents that we have. But that may also throw a monkey
4 wrench into not just this but to more parts of the case
5 schedule if it changes substantially.
6 THE COURT: I appreciate the fact that at some
7 point the parties will have to make hard choices. I believe
8 they ought to be able to make fair hard choices. But if you
9 want to have further discussions among yourselves and come
10 to a consensus as to how to do some limits at this time,
11 that's fine, but I'm not going to impose it.
12 What I'm going to order is that no later than 9/21
13 the parties will submit a joint proposal for the initial
14 round of productions and the number of infringement
15 contentions and prior art references, and a final proposal
16 as to what we ought to do following the Markman hearing, and
17 then what we ought to do as a final third stage in terms of
18 what we're actually going to go to trial on.
19 MR. RE: T?hank you, Your Honor.
20 May I ask one more question about this, though,
21 Your Honor? If we have currently set up infringement
22 contentions due on July 27, which then triggers our
23 invalidity contentions on September 7 to trigger off of
24 those -- if the patents are going to be changing because of
25 the new pleading, I guess I would want to know when is that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit I
-113-

9

1 going to happen, and are those target changes going to be
2 reflected in the infringement contentions we are going to
3 see in July, or is that going to be a completely separate
4 ball of wax that we have to deal with?
5      THE COURT:   Well, if Masimo changes the line of
6 both patents, I would reevaluate the dates for infringement
7 and invalidity contentions in light of that on a fairly
8 short ex-parte basis.
9      Let me circle back to one thing Mr. Re said. I
10 don't think that Masimo should be required to make its
11 infringement contentions until you produce the core
12 technical information. I understand that there is presently
13 in place a protective order to permit that, but to the
14 extent that production is made, these dates are just going
15 to drift out there and out there and out there. And I would
16 be likely to entertain a motion made to me, not the
17 magistrate judge, with regard to patent production on the
18 core confidential information.
19      MR. LYON:   Your Honor, on that point -- this is
20 Mark Lyon again, Your Honor. On that point, we did produce
21 nonconfidential technical documentation as part of the
22 schedule, and we're waiting on the protective order which
23 now is in place. But as you may know, we filed an objection
24 to certain orders of Magistrate Early on the staging of
25 that, which we do hope to have -- because the issue, as you

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10

1 may know, is that there needs to be a 2019 trade secret
2 statement in place before we can proceed on the trade secret
3 discovery.
4      The whole basis for that rule is to really avoid
5 the situation where plaintiffs get ahold of all these
6 technical documents and then can hunt and peck and kind of
7 try to come up with a list of trade secrets that they
8 otherwise really don't have but that they are trying to
9 create that way. That is the whole purpose of being able to
10 have those trade secrets in before all that technical
11 information is out.
12      If that information is provided ahead of getting
13 those trade secrets, that bell can't be unrung. That's one
14 concern, and we actually have that motion in place. We
15 understood from yesterday that Masimo was asking us to
16 produce that information. The first that they had come back
17 and talked to us was in an email yesterday asking for that
18 information immediately, knowing that we had these
19 objections out there. We may need to actually file some
20 type of an ex-parte application, if necessary, to seek
21 relief on that so we can get that issue decided first, if
22 possible.
23      I don't know, Mr. Lerner, if you want to say
24 anything more on that. Please feel free.
25      MR. LERNER:   First of all, thank you for having

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11

1 this hearing by telephone, Your Honor. We know during these
2 times it's busy, and we appreciate the opportunity to be
3 heard.
4      Second, I do not believe that anybody can dispute
5 the point that once these documents are out there you have
6 the issue that is raised by every case on point, which is,
7 one can make vague trade secret allegations and then claim
8 Apple's valuable confidential information based on years of
9 hard work on this product as their own. That simply cannot
10 be undone once these documents are produced, and it leads to
11 all kinds of issues.
12      I think the two most relevant here are that what,
13 for example, do you do with these documents -- we need to go
14 work on the trade secret disclosure when first Your Honor
15 did order compliance with Section 2019.210 many months ago?
16 What do you do with the lawyers who have seen our
17 confidential information, but also might want to work on
18 that disclosure, which does at some point obviously need to
19 be provided? Our view, as we briefed, is that it should
20 have been provided a long time ago.
21      The other key policy matter here, I think, is that
22 we would not be having these discussions or these problems
23 if that disclosure had been provided, because I think the
24 most basic policy guidance behind the rule is it enables the
25 Court to determine the proper scope of discovery and whether

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12

1 or not discovery requests fall within it. That just can't
2 be done until they provide this document, which the parties
3 briefed before the scheduling order, which Your Honor then
4 ruled on.
5      So as Mr. Lyon says, if necessary -- in fact,
6 we're planning on it if necessary to raise it as quickly as
7 possible now, so that we don't run into this waterfall of
8 problems that will follow if there's not compliance with
9 this basic rule.
10      THE COURT:   I guess I analyze things differently.
11 If core confidential documents are relevant to the patents,
12 they should be disclosed now, notwithstanding the fact that
13 they may overlap the trade secrets case. We need to go
14 forward with the patent case. And if and when there is
15 adequate disclosure for trade secrets, all other materials
16 should be produced. But to the extent the core confidential
17 technical documents are relevant to the patent case, they
18 should be disclosed now and in advance of Masimo having to
19 identify which claims it wants to proceed on.
20      MR. LERNER:   If I may just very briefly respond to
21 that, Your Honor. I understand that Masimo has raised that
22 argument, but it does render the statute a nullity.
23 2019.210 expressly states: "Discovery related to the trade
24 secrets" -- indeed, in cases before Judge Early before, he
25 said just because discovery relates to a non-trade secret

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit I
-114-

13

1   claim it doesn't mean it also doesn't relate to the trade
2   secret.  Here, there's no dispute -- there can't be any
3   dispute that discovery on the patent side relates to the
4   trade secrets.
5            So if we're going to do that, it does render the
6   statute in this instance a nullity, and we will have, I
7   think, all the problems that follow and are the very basis
8   for the rule there.  So I think that it is important to
9   consider both the express language of that statute and then
10   what's behind it.
11           The only other thing I will mention is that every
12   case that Masimo has cited on this point that involved
13   parallel claims -- every single one there was a prior trade
14   secret disclosure.  It's possible that it could have been
15   amended at some later time, but there was at the very least
16   some disclosure.
17           The only exception I can think of was one where
18   there was a date certain order, and the plaintiff would have
19   had to show good cause if they ever wanted to change it
20   later.  Because without either the disclosure or that date
21   certain and an order that it can't be changed without good
22   cause, then we have the very real situation that Masimo can
23   just look through our confidential information in a case
24   with a patent thicket and use our confidential information
25   to try and craft their purported secrets in a way that (a)

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

14

1   is allegedly theirs, even though it's based on our
2   confidential information, but (b) tries to weave around
3   their many patents so they don't run into the problem that
4   it's been disclosed.
5            For those reasons, I think it's in some ways of
6   critical importance here that we do it.  It's even more
7   important than I would say in a normal case where there
8   might not be quite so many patents in the space or so many
9   allegations that the secrets were allegedly disclosed in the
10   patents.
11           THE COURT:   Let's assume Masimo never asserted a
12   trade secret claim.  The confidential information which
13   involves the patent claims would be subject to production
14   whether it was a trade secret or not.  That's what
15   protective orders are for.
16           MR. LERNER:   We completely agree with that, Your
17   Honor.  If there were no trade secret claims in this case,
18   this would not be a problem.  But every case where there is
19   a trade secret, given the express language of the statute,
20   has found that you can't avoid that language.  I'm not aware
21   of any finding that ignores the language on point.
22           That's why in all of the cases there was a trade
23   secret disclosure before you had a ruling that patent
24   discovery could go forward, or at least as I said, an order
25   that the trade secret disclosure be produced by a date

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

1   certain along with admonition that the list couldn't change
2   without good cause.
3            So, yes, if there were no trade secret claim, then
4   2019.210 by and large would not come into play.  There are
5   some cases holding that if it's kind of, you know, a wolf in
6   sheep's clothing and it's obvious it's coming, then the
7   Court would say you still have to do the 2019.210
8   disclosure.
9            But here we don't have that situation.  This is a
10   case where they've suggested they have a serious trade
11   secret claim.  They've never described it with any
12   specificity whatsoever, even though they allege it has been
13   disclosed in public patent filings.  One could just say
14   here's the page and line number.
15           Not withstanding all of those things, there's no
16   description in a case that's, you know, roughly seven months
17   old, and they want this confidential information.  Again,
18   once that's done, we just cannot undo it, and we'll have I
19   think unfortunately not just of unnecessary disputes both about
20   the scope of discovery, but also what to do about the fact
21   that you then have lawyers who have seen our secrets
22   drafting what their alleged secrets are.
23           THE COURT:   Mr. Re.
24           MR. RE:   Well, Your Honor, this is at least the
25   second or third time they've made this argument.  You are

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

16

1   correct.  Our patent case is independent of the trade secret
2   case.  The case law that we already cited and briefed to
3   Judge Early on these other motions were breach of contract
4   cases that were factually dependent on the trade secret
5   claims.  Our case is not dependent on our trade secret case.
6   And currently the trade secret case has been dismissed on
7   their Motion to Dismiss.  It's not even pending before the
8   Court, and obviously the patent case gets to go forward.
9            I've never seen such strenuous objections to
10   producing just the core technical documents in a case.  They
11   are fighting tooth and nail, and they will keep fighting and
12   fighting no matter what.  They're going to file more motions
13   I understand today to prevent the disclosures that were due
14   back in June.  I think the time has come we move forward now
15   as the Court has indicated.
16           THE COURT:   Are you going to replead your trade
17   secret claim?
18           MR. RE:   Yes, we are.  We plan on complying with
19   the 30-day leave to amend date at the end of the month.
20           THE COURT:   Okay.  Well, I think you have my
21   general views.  Let's see what motion practice that results
22   in.
23           Anything else we should take up today?
24           MR. RE:   No.  Thank you, Your Honor.
25           MR. LYON:   Thank you, Your Honor.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit I
-115-

17

18

03:20  1     MR. LERNER:    Thank you very much, Your Honor.

03:20  2     THE COURT:    Okay.  Thank you very much.

03:20  3     (Whereupon, the proceedings were concluded.)

03:20  4                        *    *    *

5

6                        CERTIFICATE

7     I hereby certify that pursuant to Section 753,

8     Title 28, United States Code, the foregoing is a true and

9     correct transcript of the stenographically reported

10    proceedings held in the above-entitled matter and that the

11    transcript page format is in conformance with the

12    regulations of the Judicial Conference of the United States.

13    Date:  July 20, 2020

14

15           /s/   Sharon A. Seffens  7/20/20

16    SHARON A. SEFFENS, U.S. COURT REPORTER

17

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit I
-116-

/s [1]  18/15

# 0

0193 [1]  2/16
0404 [1]  2/5
0870 [1]  1/21
0921 [1]  2/13

# 1

1-1053 [1]  1/20
10 [2]  1/17 3/1
10166-0193 [1]  2/16
1053 [1]  1/20
1211 [1]  2/10
14th [1]  2/4
15 [2]  6/23 7/1
16 [2]  4/4 4/12
1881 [1]  2/9

# 2

20 [2]  18/13 18/15
200 [1]  2/15
2019 [1]  10/1
2019.210 [4]  11/15 12/23 15/4 15/7
2020 [3]  1/17 3/1 18/13
2021 [1]  5/4
2040 [1]  2/4
21 [3]  4/18 5/22 8/12
212 [1]  2/16
2339 [1]  2/16
27 [1]  8/22
28 [1]  18/7
2:58 [1]  3/1

# 3

30 [1]  4/10
30-day [1]  16/19
3000 [1]  2/12
351-2339 [1]  2/16
393-8254 [1]  2/13

# 4

40 [1]  7/20
411 [1]  1/20
415 [1]  2/13
4th [1]  1/20

# 5

50 [1]  7/20
5307 [1]  2/10
543-0870 [1]  1/21
555 [1]  2/12

# 6

650 [1]  2/10

# 7

7/20/20 [1]  18/15
714 [1]  1/21
753 [1]  18/6
760-0404 [1]  2/5

# 8

8254 [1]  2/13
849-5307 [1]  2/10

# 9

9/21 [2]  4/18 8/12
9/7 [2]  4/6 4/17
92614 [1]  2/5
92701 [1]  2/10
93403-1211 [1]  2/10
94105-0921 [1]  2/13
949 [1]  2/5

# A

able [2]  8/1 19/8
about [7]  6/21 6/23 7/5 7/20 8/20 15/19
 15/20
above [1]  18/9
above-entitled [1]  18/9
accommodate [1]  4/24
actual [1]  4/10
actually [3]  8/18 10/14 10/19
adequate [1]  12/15
adjusted [1]  4/23
adjustments [1]  4/15
admonition [1]  15/1
adopt [1]  4/25
adopting [1]  4/11
advance [1]  12/18
adverse [1]  5/2
after [2]  4/4 4/12
afternoon [3]  3/6 3/11 3/14
again [3]  7/25 9/20 15/17
ago [2]  11/15 11/20
agree [2]  5/20 14/16
agreement [1]  5/9
ahead [1]  10/12
ahold [1]  10/5
al [1]  1/9
alert [1]  5/11
all [9]  6/25 10/5 10/10 10/25 11/11
 12/15 13/7 14/22 15/15
allegations [2]  11/7 14/9
allege [1]  15/12
alleged [1]  15/22
allegedly [2]  14/1 14/9
along [1]  15/1
already [4]  6/1 8/1 8/2 16/2
also [4]  8/3 11/17 13/1 15/20
Alto [1]  2/10
always [1]  7/9
amend [1]  16/19
amended [1]  13/15
amending [1]  5/12
among [1]  8/9
amount [1]  3/25
Ana [3]  1/16 1/20 3/1
analyze [2]  6/15 12/10
another [1]  7/22
any [4]  6/21 13/2 14/21 15/11
anybody [1]  11/4
anything [2]  10/24 16/23
APPEARANCES [2]  2/1 3/5
APPLE [4]  1/11 3/4 3/12 3/24
Apple's [1]  11/8
application [1]  10/20
applies [1]  6/25
appreciate [2]  8/6 11/2
are [25]
arguing [1]  6/7
argument [3]  6/25 12/22 15/25
around [1]  14/2
art [7]  3/20 3/25 4/1 4/5 4/9 4/21 8/15
as [18]  3/23 4/14 5/22 6/7 8/10 8/16
 8/17 9/21 9/23 9/25 11/9 11/19 12/5
 12/6 12/6 14/24 16/15
ask [1]  8/20
asking [2]  10/15 10/17
aspect [1]  6/9
asserted [1]  14/11
assume [1]  14/11
Avenue [1]  2/15
avoid [1]  14/20
aware [1]  14/20

# B

back [4]  5/18 9/9 10/16 16/14
ball [1]  9/4

based [2]  11/8 14/1
basis [4]  3/23 9/8 10/4 13/7
be [36]
because [8]  6/14 7/15 8/1 8/24 9/25
 11/23 12/25 13/20
been [6]  11/20 11/23 13/14 14/4 15/12
 16/6
before [9]  5/19 7/6 10/2 10/10 12/3
 12/24 12/24 14/23 16/7
begin [1]  5/7
beginning [1]  7/23
behalf [4]  3/5 3/7 3/9 3/12
behind [2]  11/24 13/10
being [3]  6/11 6/23 10/9
believe [3]  3/18 8/7 11/4
bell [1]  10/13
better [1]  4/1
between [1]  4/22
bit [2]  7/6 7/21
both [5]  4/19 6/9 6/16 9/6 13/9 15/19
breach [1]  16/3
BRIAN [3]  2/8 2/14 3/13
brief [1]  7/12
briefed [3]  11/19 12/3 16/2
briefly [1]  12/20
busy [1]  11/2

# C

CA [4]  1/20 2/5 2/10 2/13
CALIFORNIA [3]  1/5 1/16 3/1
Calling [1]  3/3
can [12]  6/2 6/11 6/16 7/6 7/9 10/2 10/6
 10/21 11/4 11/7 13/17 13/22
can't [5]  10/13 12/1 13/2 13/21 14/20
cannot [2]  11/9 15/18
case [22]
cases [4]  12/24 14/22 15/5 16/4
cause [4]  7/9 13/19 13/22 15/2
CENTRAL [1]  1/5
certain [4]  9/24 13/18 13/21 15/1
CERTIFICATE [1]  18/4
certify [1]  18/6
change [3]  7/8 13/19 15/1
changed [1]  13/21
changes [3]  8/5 9/1 9/5
changing [2]  7/25 8/24
charting [2]  6/6 7/7
charts [1]  6/11
choices [3]  7/14 8/7 8/8
circle [1]  9/9
cited [2]  13/12 16/2
claim [15]  3/23 4/1 4/18 4/23 6/8 6/11
 6/16 6/17 6/22 11/7 13/1 14/12 15/3
 15/11 16/17
claims [15]  3/19 4/9 4/21 5/16 6/5 6/14
 6/23 7/1 7/13 7/20 12/19 13/13 14/13
 14/17 16/5
client [1]  6/19
clothing [1]  15/6
Code [1]  18/7
come [4]  4/4 4/17 4/19 5/21 8/9 10/7
 10/16 15/4 16/14
comes [1]  3/24
coming [1]  15/6
complete [1]  5/9
completely [2]  9/3 14/16
compliance [2]  11/15 12/8
complying [1]  16/18
concern [2]  6/1 10/14
concluded [1]  17/3
conference [2]  3/2 18/11
confidential [10]  9/18 11/8 11/17 12/11
 12/16 13/23 13/24 14/2 14/12 15/17
conformance [1]  18/10
consensus [1]  8/10

**C**

consider [1]  13/9
considered [1]  6/1
contemplate [2]  4/9 4/12
contentions [12]  3/21 3/21 4/6 4/17 5/1
 5/19 8/15 8/22 8/23 9/2 9/7 9/11
contract [1]  16/3
copy [1]  6/17
copying [1]  6/13
CORPORATION [3]  1/9 3/4 3/8
correct [2]  16/1 18/8
could [6]  7/3 7/5 7/22 13/14 14/24 15/13
couldn't [1]  15/1
COUNSEL [1]  2/1
couple [1]  5/25
course [1]  5/19
COURT [10]  1/4 4/11 5/11 6/22 6/24
 11/25 15/7 16/8 16/15 18/16
Court's [1]  5/13
Courthouse [1]  1/19
craft [1]  13/25
create [2]  6/13 10/9
critical [1]  14/6
CRUTCHER [3]  2/9 2/12 2/15
currently [2]  8/21 16/6

**D**

date [8]  4/6 4/7 5/4 13/18 13/20 14/25
 16/19 18/13
dates [3]  4/22 9/6 9/14
day [1]  16/19
days [1]  4/10
deal [1]  9/4
decide [1]  6/16
decided [1]  10/21
Defendant [1]  1/12 2/6
defendants [1]  3/9
demonstrating [1]  4/2
dependent [2]  16/4 16/5
described [1]  15/11
description [1]  15/16
designate [1]  4/1
determine [1]  11/25
did [2]  9/20 11/15
different [1]  6/17
differently [1]  12/10
disclosed [5]  12/12 12/18 14/4 14/9
 15/13
disclosure [13]  3/20 4/10 4/14 11/14
 11/18 11/23 12/15 13/14 13/16 13/20
 14/23 14/25 15/8
disclosures [8]  3/24 4/4 4/5 4/5 4/19
 4/24 4/25 16/13
discovery [9]  8/2 10/3 11/25 12/1 12/23
 12/25 13/3 14/24 15/20
discretion [1]  4/13
discussing [1]  6/7
discussion [1]  6/3
discussions [4]  7/19 7/23 8/9 11/22
Dismiss [2]  5/13 16/7
dismissed [1]  16/6
dispute [4]  6/21 11/4 13/2 13/3
disputes [1]  15/19
DISTRICT [2]  1/4 1/5
DIVISION [1]  1/6
do [19]
document [1]  12/2
documentation [1]  9/21
documents [7]  5/18 10/6 11/5 11/10
 12/11 12/17 16/10
does [3]  11/18 12/22 13/5
doesn't [2]  13/1 13/1
don't [10]  4/18 5/3 7/3 7/16 9/10 10/8
 10/23 12/7 14/3 15/9

done [4]  7/9 7/10 12/2 15/18
down [1]  6/11
drafting [1]  13/22
drift [1]  9/15
due [3]  5/18 8/22 16/13
DUNN [2]  2/9 2/12 2/15
during [1]  11/1

**E**

each [2]  6/15 7/1
Early [3]  9/24 12/24 16/3
effort [1]  6/12
either [1]  13/20
else [1]  16/23
email [1]  10/17
enables [1]  11/24
end [3]  6/5 6/23 16/19
enough [1]  4/19
entertain [1]  6/16
entitled [1]  18/9
equally [1]  7/1
et [1]  1/9
evaluate [2]  3/23 5/15
even [5]  6/13 14/1 14/6 15/12 16/7
events [1]  13/19
ever [1]  13/19
every [4]  11/6 13/11 13/13 14/18
everything [4]  5/10 5/20 7/7 7/16
ex [2]  9/8 10/20
ex-parte [1]  9/8 10/20
example [2]  3/22 11/13
exception [1]  13/17
exchange [3]  4/17 4/22 5/11
express [2]  13/9 14/19
expressly [1]  12/23
extent [3]  6/21 9/14 12/16

**F**

fact [6]  5/13 7/16 8/6 12/5 12/12 15/20
factually [1]  16/4
fair [1]  8/8
fairly [1]  9/7
fall [1]  12/1
far [2]  6/7 8/1
February [1]  5/3
feel [1]  10/24
fighting [3]  16/11 16/11 16/12
file [2]  10/19 16/12
filed [2]  3/15 9/23
filings [1]  15/13
final [3]  4/14 8/15 8/17
finding [1]  14/21
fine [1]  8/11
firm [1]  6/19
first [5]  7/24 10/16 10/21 10/25 11/14
Floor [1]  2/4
follow [2]  12/8 13/7
following [4]  4/25 8/16
foregoing [1]  18/7
format [1]  18/10
forth [1]  5/12
forward [4]  12/14 14/24 16/8 16/14
found [1]  14/20
Francisco [2]  2/13
free [1]  10/24
Fresh [1]  3/25
FRIDAY [1]  3/1
full [1]  3/20
fully [1]  5/15
fundamentally [1]  3/18
further [2]  4/12 8/9

**G**

gearing [1]  8/2
general [2]  5/5 16/21
get [4]  7/6 7/7 10/5 10/21

gets [2]  7/16 16/8
getting [1]  8/6
GIBSON [3]  2/9 2/12 2/15
give [1]  3/22
given [1]  14/19
gives [1]  4/18
go [6]  4/14 6/18 8/18 12/13 14/24 16/8
going [15]  6/6 6/8 8/11 8/12 8/18 8/24
 9/1 9/1 9/2 9/3 9/14 11/13 13/5 16/12
 16/16
good [7]  3/6 3/11 3/14 7/9 13/19 13/21
 15/2
guess [2]  8/25 12/10
guidance [1]  11/24

**H**

had [5]  10/16 10/18 11/23 13/19 14/23
hank [1]  8/19
happen [1]  9/1
happy [2]  3/17 5/5
hard [4]  7/14 8/7 8/8 11/9
has [10]  3/23 6/15 6/18 12/21 13/12
 14/20 15/12 16/6 16/14 16/15
have [34]
having [4]  6/22 10/25 11/22 12/18
he [1]  12/24
hear [2]  3/17 5/6
heard [2]  7/24 11/3
hearing [7]  4/13 4/16 4/23 5/1 5/2 8/16
 11/1
held [1]  18/9
helpful [1]  6/3
here [5]  11/12 11/21 13/2 14/6 15/9
here's [1]  15/14
hereby [1]  18/6
higher [1]  7/4
holding [1]  15/5
Honor [17]  3/6 3/11 5/8 5/24 8/19 8/21
 9/19 9/20 11/1 11/14 12/3 12/21 14/17
 15/24 16/24 16/25 17/1
HONORABLE [1]  1/8
hope [1]  9/25
how [1]  8/10
hundreds [2]  6/5 6/11
hunt [1]  10/6

**I**

I'd [1]  3/16
I'll [1]  5/5
I'm [5]  5/1 6/10 8/11 8/12 14/20
I've [1]  16/9
idea [1]  7/7
identify [1]  12/19
ignores [1]  14/21
immediately [1]  10/18
importance [1]  14/6
important [2]  13/8 14/7
impose [1]  8/11
INC [2]  1/11 3/4
indeed [1]  12/24
independent [1]  16/1
indicated [2]  5/22 16/15
individual [1]  6/16
inefficient [1]  3/19
information [15]  5/11 6/14 9/12 9/18
 10/11 10/12 10/16 10/18 11/8 11/17
 13/23 13/24 14/2 14/12 15/17
infringement [7]  3/21 5/1 8/14 8/21 9/2
 9/6 9/11
initial [3]  4/3 4/8 8/13
instance [1]  13/6
instead [1]  6/22
invalidity [8]  3/21 3/24 4/5 4/6 4/16 4/25
 8/23 9/7
involved [2]  6/8 13/12
involves [1]  14/13

Exhibit I
-118-

## I

**Irvine** [1]  2/5
**is** [42]
**issue** [3]  9/25 10/21 11/6
**issues** [1]  11/11
**it** [35]
**it's** [15]  3/11 3/18 3/25 6/3 7/20 11/2
13/14 14/1 14/4 14/5 14/6 15/5 15/6
15/6 16/7
**Item** [1]  3/3
**its** [2]  3/24 9/10

## J

**JAMES** [1]  1/8
**JENSEN** [2]  2/3 3/8
**joint** [2]  3/15 8/13
**JOSEPH** [2]  2/3 3/7
**JOSHUA** [3]  2/8 2/11 3/12
**judge** [4]  1/8 9/17 12/24 16/3
**Judicial** [1]  18/11
**July** [5]  1/17 3/1 8/22 9/3 18/13
**July 27** [1]  8/22
**June** [2]  5/18 16/14
**just** [13]  5/25 5/25 6/2 7/16 8/4 9/14
12/1 12/20 12/25 13/23 15/13 15/18
16/10
**JVS** [2]  1/11 3/3

## K

**keep** [1]  16/11
**key** [1]  11/21
**kind** [4]  6/4 7/11 10/6 15/5
**kinds** [2]  7/22 11/11
**kitchen** [1]  7/17
**KNOBBE** [2]  2/4 3/7
**know** [8]  7/20 8/25 9/23 10/1 10/23 11/1
15/5 15/16
**knowing** [1]  10/18

## L

**language** [4]  13/9 14/19 14/20 14/21
**large** [1]  15/4
**last** [1]  3/16
**later** [3]  2/16 13/15 13/20
**law** [1]  16/2
**lawyers** [2]  11/16 15/21
**leading** [1]  4/16
**leads** [1]  11/10
**least** [4]  6/2 13/15 14/24 15/24
**leave** [2]  4/13 16/19
**LERNER** [4]  2/8 2/11 3/12 10/23
**let** [5]  3/16 3/22 5/25 6/1 9/9
**Let's** [3]  5/7 14/11 16/21
**levels** [1]  6/18
**light** [2]  4/1 9/7
**like** [1]  7/12
**likely** [1]  9/16
**limits** [4]  6/4 7/12 7/13 8/10
**line** [2]  9/5 15/14
**list** [2]  10/7 15/1
**little** [2]  7/21 7/25
**LLP** [3]  2/9 2/12 2/15
**long** [2]  6/12 11/20
**look** [1]  13/23
**lot** [2]  7/12 15/19
**LYON** [5]  2/7 3/12 5/23 9/20 12/5

## M

**made** [4]  4/4 9/14 9/16 15/25
**magistrate** [1]  9/17 9/24
**Main** [1]  2/4
**make** [9]  6/19 6/24 7/14 7/14 7/15 8/7
8/8 9/10 11/7
**makes** [3]  3/24 5/3 6/25
**many** [4]  11/15 14/3 14/8 14/8

## MARK

**MARK** [3]  2/7 3/11 9/20
**Markman** [7] 6/5 6/6 7/23 8/4 8/7 8/16
8/16
**MARTENS** [2]  2/4 3/7
**MASIMO** [13]  1/9 3/4 3/7 3/23 4/1 9/5
9/10 10/15 12/18 12/21 13/12 13/22
14/11
**materials** [1]  12/15
**matter** [3]  11/21 16/12 18/9
**may** [4]  4/15 6/1 6/23 8/3 8/20 9/23
10/1 10/19 12/13 12/20
**maybe** [3]  7/21 7/22 7/24
**me** [9]  3/8 3/12 3/16 3/22 4/8 5/25 6/2
9/9 9/16
**mean** [2]  6/9 13/1
**mention** [1]  13/11
**might** [3]  6/8 11/17 14/8
**Mill** [1]  2/9
**Mission** [1]  2/12
**monkey** [1]  8/3
**month** [2]  5/2 16/19
**months** [2]  11/15 15/16
**more** [8]  5/15 7/6 7/21 8/4 8/20 10/24
14/6 16/12
**most** [2]  11/12 11/24
**motion** [5]  5/13 9/16 10/14 16/7 16/21
**motions** [2]  16/3 16/12
**move** [1]  16/14
**Mr** [1]  12/5
**Mr.** [5]  5/7 5/23 9/9 10/23 15/23
**Mr. Lerner** [1]  10/23
**Mr. Lyon** [1]  5/23
**Mr. Re** [3]  5/7 9/9 15/23
**much** [2]  17/1 17/2
**my** [5]  3/8 3/16 4/3 5/5 16/20

## N

**nail** [1]  16/11
**narrowing** [1]  4/20
**necessary** [3]  10/20 12/5 12/6
**need** [7]  4/23 5/19 7/19 7/21 10/19
11/18 12/13
**needs** [3]  5/10 5/14 7/10 10/1
**never** [3]  14/11 15/11 16/9
**new** [2]  2/16 8/25
**no** [8]  3/3 8/12 13/2 14/17 15/3 15/15
16/12 16/24
**non** [2]  12/25
**non-trade** [1]  12/25
**nonconfidential** [1]  9/21
**normal** [1]  14/7
**not** [21]
**notwithstanding** [1]  12/12
**now** [7]  7/5 7/19 9/23 12/7 12/12 12/18
16/14
**nullity** [2]  12/22 13/6
**number** [5]  3/19 7/3 7/4 8/14 15/14
**numbers** [2]  7/3 7/5
**NY** [1]  2/16

## O

**objection** [1]  9/23
**objections** [2]  10/19 16/9
**obvious** [1]  15/6
**obviously** [2]  11/18 16/8
**off** [1]  8/23
**okay** [3]  6/20 16/20 17/2
**old** [1]  15/17
**once** [3]  11/5 11/10 15/18
**one** [8]  6/3 8/20 9/9 10/13 11/7 13/13
13/17 15/13
**only** [2]  13/11 13/17
**opportunity** [1]  7/11
**order** [9]  5/13 8/12 9/13 9/22 11/15 12/3
13/18 13/21 14/24
**orders** [1]  9/24 14/15

## other

**other** [5]  5/17 11/21 12/15 13/11 18/8
**otherwise** [2]  9/11 10/8
**ought** [4]  4/4 8/8 8/16 8/17
**our** [13]  5/12 5/19 7/2 8/22 11/16 11/19
13/23 13/24 14/1 15/21 16/1 16/5 16/5
**out** [9]  5/14 5/21 6/2 9/15 9/15 9/15
10/11 10/19 11/5
**over** [1]  6/7
**overlap** [1]  12/13
**own** [1]  11/9

## P

**P.M** [1]  3/1
**page** [4]  2/9 7/12 15/14 18/10
**pages** [1]  6/12
**Palo** [1]  2/10
**paragraph** [1]  6/17
**parallel** [1]  13/13
**Park** [1]  2/15
**part** [1]  9/21
**parte** [2]  9/8 10/20
**parties** [9]  3/18 4/4 4/7 5/15 5/20 6/6 8/7
8/13 12/2
**parties'** [1]  4/17
**partner** [1]  3/8
**parts** [1]  8/4
**party's** [1]  5/18
**pasting** [1]  6/13
**patent** [10]  9/17 12/14 12/17 13/3 13/24
14/13 14/23 15/13 16/1 16/8
**patents** [9]  5/14 7/25 8/3 8/24 9/6 12/11
14/3 14/8 14/10
**peck** [1]  10/6
**pending** [1]  16/7
**people** [2]  7/13 11/13
**Per** [1]  3/2
**permit** [1]  9/13
**pick** [2]  7/5 7/21
**picked** [1]  7/4
**place** [4]  9/13 9/23 10/2 10/14
**plaintiff** [2]  3/5 13/18
**plaintiffs** [4]  1/10 2/2 7/21 10/5
**plan** [1]  16/18
**planning** [3]  5/12 7/25 12/6
**play** [1]  15/4
**pleading** [2]  5/12 8/25
**please** [3]  3/5 3/10 10/24
**point** [9]  6/4 8/7 9/19 9/20 11/5 11/6
11/18 13/12 14/21
**points** [1]  5/25
**poker** [1]  3/22
**policy** [2]  11/21 11/24
**possible** [3]  10/22 12/7 13/14
**potentially** [2]  6/5 6/7
**practice** [1]  16/21
**preparing** [1]  7/11
**present** [1]  4/8
**presently** [1]  9/12
**PRESIDING** [1]  1/8
**prevent** [1]  16/13
**prior** [9]  3/20 3/20 3/25 4/1 4/5 4/9 4/21
8/15 13/13
**probably** [1]  7/15
**problem** [2]  14/3 14/18
**problems** [3]  11/22 12/8 13/7
**proceed** [2]  10/2 12/19
**proceedings** [3]  1/15 17/3 18/9
**produce** [3]  9/11 9/20 10/16
**produced** [3]  11/10 12/16 14/25
**producing** [1]  16/10
**product** [1]  11/9
**production** [3]  9/14 9/17 14/13
**productions** [1]  8/14
**proper** [1]  11/25
**proposal** [7]  4/8 4/11 4/20 4/24 5/21
8/13 8/15

Exhibit I
-119-

**P**
propose [1]  4/7
proposed [1]  4/18
protective [3]  9/13 9/22 14/15
provide [1]  12/2
provided [4]  10/12 11/19 11/20 11/23
public [1]  15/13
purported [1]  13/25
purpose [1]  10/9
pursuant [2]  4/24 18/6
put [1]  7/13
putting [1]  6/4

**Q**
question [1]  8/20
quickly [1]  12/6
quite [1]  14/8

**R**
raise [2]  5/25 12/6
raised [2]  11/6 12/21
RE [5]  2/3 3/7 5/7 9/9 15/23
real [1]  13/22
really [1]  7/10 10/4 10/8
reasons [2]  7/8 14/5
received [1]  5/17
reduction [3]  3/19 4/8 4/12
reductions [1]  4/10
reevaluate [1]  9/6
references [4]  3/20 4/9 4/21 8/15
reflect [1]  4/19
reflected [1]  9/2
regard [1]  9/17
regarding [1]  5/13
regulations [1]  18/11
reign [1]  7/6
relate [1]  13/1
related [2]  6/14 12/23
relates [2]  12/25 13/3
relevant [3]  11/12 12/11 12/17
relief [1]  10/21
render [2]  12/22 13/5
replead [1]  16/16
report [1]  3/15
reported [1]  18/8
REPORTER [1]  18/16
REPORTER'S [1]  1/15
requests [1]  12/1
require [2]  3/19 4/1
required [1]  9/10
respond [1]  12/20
results [1]  16/1
review [2]  6/19 6/24
road [2]  2/9 7/8
ROSENTHAL [3]  2/8 2/14 3/13
roughly [1]  15/16
round [2]  4/3 8/14
Royal [1]  3/25
RPR [1]  1/19
rule [4]  10/4 11/24 12/9 13/8
ruled [1]  12/4
ruling [1]  14/23
run [2]  12/7 14/3

**S**
SACV [1]  1/11 3/3
SACV-20-00048-JVS [2]  1/11 3/3
said [5]  5/10 5/20 9/9 12/25 14/24
same [1]  6/25
San [1]  2/13
Santa [3]  1/16 1/20 3/1
say [5]  6/3 10/23 14/7 15/7 15/13
says [1]  12/5
schedule [2]  8/5 9/22
scheduling [1]  12/3

scope [2]  11/25 15/20
Recent [2]  6/25 6/25
secret [20]  ...
secrets [11]  10/7 10/10 10/13 12/13
 12/15 12/24 13/4 13/25 14/9 15/21
 15/22
Section [2]  11/15 18/6
see [2]  9/3 16/21
seek [1]  10/20
seen [4]  6/10 11/16 15/21 16/9
SEFFENS [3]  1/19 18/15 18/16
selections [1]  4/20
SELNA [1]  1/8
sense [2]  5/3 6/25
separate [1]  9/3
September [2]  5/22 8/23
September 21 [1]  5/22
serious [1]  15/10
set [3]  5/12 7/2 8/21
seven [1]  15/16
share [1]  11/9
SHARON [3]  1/19 18/15 18/16
sheep's [1]  15/6
short [1]  9/8
should [7]  7/15 9/10 11/19 12/12 12/16
 12/18 16/23
show [1]  13/19
side [1]  13/3
sides' [1]  4/19
significant [1]  6/12
similar [1]  6/24
simply [2]  6/16 11/9
single [2]  6/22 13/13
sink [1]  7/17
sit [1]  6/15
situation [3]  10/5 13/22 15/9
six [1]  5/2
slipping [1]  5/2
so [19]
some [19]
somebody [1]  6/15
something [3]  6/10 7/9 7/19
sort [1]  7/12
SOUTHERN [1]  1/6
space [1]  3/15
specific [1]  4/11
specificity [1]  15/12
stage [2]  7/10 8/17
staging [1]  16/16
start [1]  8/2
statement [1]  10/2
states [5]  1/4 1/19 12/23 18/7 18/11
statute [4]  12/22 13/6 13/9 14/19
stenographically [1]  18/8
STEPHEN [2]  2/3 3/8
still [2]  14/5 15/7
stipulate [1]  7/23
Street [3]  1/20 2/4 2/12
strenuous [1]  16/9
subject [1]  14/13
submit [1]  8/13
substantially [1]  8/5
substituting [1]  5/14
such [1]  16/9
suggested [1]  15/10
suggesting [1]  7/18
Suite [2]  1/20 2/12
Suppose [1]  3/22
sure [3]  6/10 6/19 6/25

**T**
take [1]  16/23
talk [1]  7/5
talked [1]  10/17
target [4]  6/4 7/5 7/12 9/1
technical [7]  5/18 9/12 9/21 10/6 10/10

 12/17 16/10
telephone [1]  16/17
telephonic [1]  3/2
ten [1]  7/22
terms [4]  4/18 4/23 6/8 8/17
terrible [1]  7/4
than [3]  7/21 8/12 14/7
thank [3]  3/6 3/15 5/8 5/24 10/25 16/24
 16/25 17/1 17/2
that [119]
that's [13]  5/3 5/12 6/9 6/20 7/8 7/18
 7/25 8/11 10/13 14/14 14/22 15/16
 15/18
their [7]  4/4 4/5 11/9 13/25 14/3 15/22
 16/7
theirs [1]  14/1
them [1]  6/10
then [19]
there [22]
there's [6]  6/21 7/4 7/7 12/8 13/2 15/15
these [14]  6/10 6/11 6/4 7/8 7/13 9/14
 10/5 10/18 11/1 11/5 11/10 11/22 11/22
 16/3
they [18]  7/14 7/15 7/16 8/8 10/7 10/8
 10/16 12/2 12/12 12/13 12/17 13/19
 14/3 15/10 15/12 15/17 16/10 16/11
they'll [1]  7/13
they're [3]  6/6 7/24 16/12
they've [3]  15/10 15/11 15/25
thicket [1]  13/24
thing [3]  6/3 9/9 13/11
things [3]  7/8 12/10 15/15
think [18]  4/15 4/18 4/22 5/9 5/10 5/20
 7/3 9/10 11/12 11/21 11/23 13/7 13/8
 13/17 14/5 15/19 16/14 16/20
third [2]  8/17 15/25
this [23]
those [10]  4/10 5/5 7/1 7/22 8/24 9/1
 10/10 10/13 14/5 15/15
though [3]  8/20 14/1 15/12
thought [2]  4/3
thoughts [2]  3/16 5/5
thousands [1]  6/12
through [2]  6/18 13/23
throw [2]  6/2 8/3
thrown [2]  7/16
time [8]  4/14 4/19 5/15 8/10 11/20 13/15
 15/25 16/14
times [1]  11/2
Title [1]  18/7
today [2]  16/13 16/23
tooth [1]  16/11
trade [27]
transcript [3]  1/15 18/8 18/10
trial [3]  4/14 5/4 8/18
tries [1]  14/2
trigger [1]  8/23
triggers [1]  8/22
trivial [1]  6/9
troubling [1]  8/1
true [1]  18/7
try [2]  10/7 13/25
trying [3]  7/18 8/2 10/8
two [2]  4/7 11/12
type [1]  10/20

12/17 16/10

**U**
U.S [1]  18/16
understand [3]  9/12 12/21 16/13
understood [1]  10/15
undo [1]  15/18
undone [1]  11/10
unfair [1]  3/18
unfortunately [1]  15/19
UNITED [4]  1/4 1/19 18/7 18/11
unnecessary [1]  15/19

Exhibit I
-120-

## U

**unrung [1]** 10/13
**until [2]** 9/11 12/2
**up [11]** 3/24 4/19 5/21 6/5 6/11 6/15
 6/23 8/2 8/21 10/7 16/23
**us [2]** 10/15 10/17
**use [1]** 13/24

## V

**vague [1]** 11/7
**valuable [1]** 11/8
**versus [1]** 3/4
**very [8]** 6/12 8/1 12/20 13/7 13/15 13/22
 17/1 17/2
**viable [1]** 4/2
**view [2]** 7/2 11/19
**views [1]** 16/21

## W

**waiting [1]** 9/22
**want [6]** 5/11 8/9 8/25 10/23 11/17
 15/17
**wanted [1]** 13/19
**wants [1]** 12/19
**was [8]** 10/15 10/17 13/13 13/15 13/17
 13/18 14/14 14/22
**wasn't [1]** 4/2
**waterfall [1]** 12/7
**wax [1]** 9/4
**way [2]** 10/9 13/25
**ways [2]** 7/13 14/5
**we [52]**
**we'll [1]** 15/18
**we're [6]** 5/9 8/2 8/18 9/22 12/6 13/5
**we've [1]** 7/24
**weave [1]** 14/2
**week [1]** 3/16
**weeks [2]** 4/7 5/2
**Well [3]** 9/5 15/24 16/20
**were [9]** 5/18 7/18 14/9 14/17 15/3 16/3
 16/4 16/13 17/3
**West [1]** 1/20
**what [14]** 4/6 4/14 6/7 8/12 8/16 8/17
 8/18 11/12 11/16 14/14 15/20 15/22
 16/12 16/21
**what's [1]** 13/10
**whatever [3]** 4/24 6/18 7/20
**whatsoever [1]** 15/12
**when [4]** 3/24 8/25 11/14 12/14
**where [6]** 6/10 10/5 13/17 14/7 14/18
 15/10
**Whereupon [1]** 17/3
**whether [4]** 6/16 7/20 11/25 14/14
**which [13]** 5/18 6/12 6/14 6/23 8/22 9/22
 9/25 11/6 11/18 12/2 12/3 12/19 14/12
**who [2]** 11/16 15/21
**whole [2]** 10/4 10/9
**why [2]** 7/18 14/22
**will [9]** 5/14 5/20 5/21 8/7 8/13 12/8 13/6
 13/11 16/11
**wind [1]** 6/11
**winds [1]** 6/15
**within [3]** 4/7 4/10 12/1
**without [3]** 13/20 13/21 15/2
**withstanding [1]** 15/15
**wolf [1]** 15/5
**work [4]** 5/21 11/9 11/14 11/17
**world [1]** 3/22
**worrying [1]** 6/23
**would [20]**
**wouldn't [1]** 7/14
**wrench [1]** 8/4

## Y

**years [1]** 11/8

**yes [3]** 5/17 15/3 16/18
**yesterday [2]** 15/9 16/10
**yet [1]** 5/17
**York [1]** 2/16
**you [43]**
**you've [1]** 6/10
**your [21]**
**yourselves [1]** 8/9

Exhibit I
-121-