# EXHIBIT 14

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS]** <u>Order</u> <u>Regarding</u> <u>Revived</u> <u>Motion</u> <u>for</u> <u>Preliminary</u> <u>Injunction</u>

Before the Court is Plaintiffs Masimo Corporation ("Masimo") and Cercacor Inc.'s ("Cercacor") (collectively – "Plaintiffs") motion for preliminary injunction. Mot., ECF No. 153. Defendants Marcelo Lamego ("Lamego") and True Wearables, Inc. ("True Wearables") (collectively – "Defendants") filed an opposition. Opp'n, ECF No. 171-1. Plaintiffs responded. Reply, ECF No. 184-1. Defendants also filed a request for oral argument. ROA, ECF No. 254.

For the following reasons, the Court **GRANTS** the motion.

### I. BACKGROUND

#### A.    *The Technology at Issue*

Plaintiffs are two companies that confidentially collaborate to develop technology that is used in medical devices. FAC, ECF No. 42, ¶ 18. Notably, Plaintiffs specialize in the development of devices used for the noninvasive detection of a variety of features of a user's blood, such as blood oxygen content. <u>Id.</u> ¶ 11. Among the blood parameters that Plaintiffs' devices detect is total hemoglobin – abbreviated as "SpHb." <u>Id.</u> ¶ 16. Plaintiffs' devices that can detect SpHb contain ████████████ that are used to collect information about ███████████ wavelengths of light that the devices' LEDs emit through the user's fingertip. Chen Decl., ECF No. 152-2, ¶¶ 9-10. The devices process the data that the photodetectors collect to calculate SpHb. <u>Id.</u>

At issue in this motion are the signal processing techniques that are used to

Exhibit 14
Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

calculate SpHb. SpHb can be calculated using ███████████████ ██████████████████████████████████████████████████ and thereby calculate SpHb. Id. ¶ 15. Relying on a complicated equation is undesirable, however, because such an equation requires a significant amount of computational power, storage, and battery life, among other costs. McNames Dec., ECF No. 152-3, ¶ 21. Ideally, such a complex equation would be simplified ███████████████████. Id. ¶ 22. It is computationally difficult, however, to determine the the SpHb equation without losing accuracy; ████████████████████████████ Id. ¶¶ 38-41.

Plaintiffs' claimed trade secret – called the ███████████████, or "TSS" – determines the value ███████████████ in less than a minute. Id. ¶ 26. In essence, the TSS uses a process somewhat ████████████████ necessary to calculate SpHb given a predeteremined measure of accuracy. McNames Decl. ¶ 58; Chen Decl., ECF No. 152-2, at 12-13 (TSS presentation). Before introducing ███████████████, it is necessary to take a tour of some relevant mathematical concepts.

*1. Mathematical Background*

Since the TSS relies on matrix manipulation, linear algebra is essential to understanding the TSS. "Matrices" are rectangular, two-dimensional arrays of numbers, in which the numbers are arranged in row and columns. "Vectors" are merely one-dimensional matrices. Using matrices and vectors, one can concisely write systems of equations where each equation involves the adding together of various terms that themselves are the products of the multiplication of numbers. For example, a 2x2 matrix (with elements *a*, *b*, *c*, and *d*) and a 1x2 vertex (with elements *x* and *y*) can be multiplied to get a system of two equations:

$$\begin{bmatrix} a & b \\ c & d \end{bmatrix} \bullet \begin{bmatrix} x \\ y \end{bmatrix} = \begin{bmatrix} ax+by \\ cx+dy \end{bmatrix}$$

What is particularly relevant here is the calculation of vectors' "norms," which is a term for the vectors' size. The TSS derivation involves two norms: a 1-norm and a squared 2-norm. A 1-norm for a vector *x* is denoted by $\|x\|_1$ and is calculated as the sum

Exhibit 14
Page 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

of each of the elements in vector $x$:

$$||x||_1 = \sum_i |x_i|.$$

Goldstein Decl., ECF No. 171-2, ¶ 21. A squared 2-norm is denoted $||x||_2^2$ and is calculated as the sum of each of the squares in vector $x$:

$$||x||_2^2 = \sum_i x_i^2.$$

Id. ¶ 20.

Finally, a key technique used in mathematical optimization involves what are known as "Lagrange multipliers." When trying to find the maximum or minimum of a given function $f(x)$, one might sometimes also want to account for certain external constraints, such as $g(x) = 0$. To do so, one can use Lagrange multipliers – represented by lower case lambdas ($\lambda$) – to construct an equation:

$$L(x, \lambda) = f(x) - \lambda g(x).$$

Partial derivatives can then be taken of the equation with respect to each variable – in this case x and $\lambda$ – which are then set equal to 0 and solved. The resulting solutions are where the given function $f(x)$ has maxima or minima given the external constraint $g(x)$.

2.



Exhibit 14
Page 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-2001 JVS (JDEx)                    Date   April 28, 2021

Title      Masimo Corporation et al. v. True Wearables Inc. et al.



---

[1] While this Order cites to the McNames declaration, the analysis described is originally from Section 13 of the ███████████ presentation, ECF No. 156-5.

Exhibit 14
Page 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |



Exhibit 14
Page 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| --- | --- | --- | --- |

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
| --- | --- |



Exhibit 14
Page 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|----------|--------------------------|------|----------------|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|-------|---------------------------------------------------------|



Exhibit 14
Page 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|



*B.    Factual Background*

Plaintiffs specialize in the development and sale of noninvasive technology that monitors physiological parameters. Amended Complaint, ECF No. 42, ¶ 11. Plaintiffs' most notable technological innovation has been the development of more accurate means of measuring blood oxygen saturation through a technique called pulse oximetry. Id. Lamego worked at Cercacor – which used to be a division of Masimo – until January 2014, at which time he was the Chief Technology Officer of Cercacor. Id. ¶¶ 34, 35. That month, Lamego began working at Apple, Inc. ("Apple") as an engineer on the "development of non-invasive physiological measurements, including pulse oximetry, for Apple for wearable products." Id. ¶ 37 After working at Apple for seven months, Lamego founded True Wearables. Id. ¶ 38. True Wearables recently began selling a product called Oxxiom, a pulse oximeter. Id. ¶ 4.

On November 8, 2018, Plaintiffs filed their complaint with this Court. Compl.,

Exhibit 14
Page 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |

ECF No. 1. The FAC alleges the following causes of action: (1) breach of contract with Masimo by Lamego, id. ¶¶ 45-57; (2) breach of contract with Cercacor by Lamego, id. ¶¶ 59-73; (3) trade secret misappropriation in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 et seq., id. ¶¶ 75-87; (4) trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 et seq., id. ¶¶ 89-101; (5) breach of fiduciary duty of undivided loyalty by Lamego, id. ¶¶ 103-11; and (6) six separate patent infringement claims. Id. ¶¶ 118-90.

On January 11, 2021, the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance for the Patent Application No. 16/198,335 (the "'335 Patent Application"). Notice of Allowance, ECF No. 152-20, at TRUE052980. The '335 Patent Application claims priority to Provisional Patent Application No. 62/591,158 (the "'158 Patent Application"). Opp'n at 27 n.10. After this Notice of Allowance was produced to Plaintiffs on February 9, 2021, the instant motion was filed. Plaintiffs seek an injunction ordering Defendants to 1) take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS.

## II. LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the

Exhibit 14
Page 9

Case 8:20-cv-00048-JVS-JDE   Document 664-16   Filed 04/25/22   Page 11 of 22   Page ID
#:48929
Case 8:18-cv-02001-JVS-JDE   Document 262   Filed 04/28/21   Page 10 of 19   Page ID
#:14674

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Moreover, in the Ninth Circuit, the plaintiff may meet this burden if it "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1429 (9th Cir. 1995) (internal quotations and citation omitted). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

### III. DISCUSSION

The Court proceeds to address each of the Winter factors in turn.

*A.    Success on the Merits*

To prove a prima facie case of trade secret appropriation, the CUTSA "requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc., 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2008) (citing Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003)). See also Cal. Civ. Code § 3426.1. The Court addresses the first two of these elements in turn, and combines the analysis of damage to Plaintiffs in the irreparable harm analysis.

*1.    The Existence of a Trade Secret*

The CUTSA defines a trade secret as:

Exhibit 14
Page 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

The definition of a trade secret under the DTSA is similar. See 18 U.S.C. § 1839(3) (definition of a trade secret); Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc., 2019 WL 2177262, at *5 (C.D. Cal. May 20, 2019) (noting similarity of the two definitions); Sun Distributing Co., LLC v. Corbett, 2018 WL 4951966, at *3 (C.D. Cal. Oct. 12, 2018) (same). At the same time, there is one key difference between the CUTSA and the DTSA: whether a trade secret can be "readily ascertainable." Compare 18 U.S.C. § 1839(3) (requiring that information "not be[] readily ascertainable through proper means" to qualify as a trade secret) with West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) (noting that the California legislature expressly declined to include the phrase "readily ascertainable" in the definition of trade secret). The Ninth Circuit therefore has written that "whether information is 'readily ascertainable' is not part of the definition of a trade secret in California." Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1168 n.10 (9th Cir. 1998). Instead, under the CUTSA, ready ascertainability is a defense that "will be based upon an absence of misappropriation, rather than the absence of a trade secret." ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21 n.9 (1991). As such, under the CUTSA, ready ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable. See Imax, 152 F.3d at 1168 n.10; Medtronic MiniMed, Inc. v. Nova Biomedical Corp., 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009).

Plaintiffs argue that the TSS is a trade secret that gives Plaintiffs an advantage over competitors by virtue of not being known. Mot. at 11-13. Specifically, "Plaintiffs' development of its SpHb technology ███████████, and Plaintiffs remain

Exhibit 14
Page 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

essentially the only supplier of SpHb" detection technology. Id. at 12 (citing Kiani Decl., ECF No. 152-4, ¶¶ 9-10; Chen Decl., ECF No. 152-2, ¶¶ 23-26). Plaintiffs further argue that they took reasonable steps to maintain secrecy, such as requiring that employees sign confidentiality agreements and preventing publication of documents that would reveal the TSS. Id. at 13.

Defendants' arguments to the contrary are unavailing. Defendants argue that the TSS ▮▮▮▮▮▮▮▮▮ are "generally known and readily ascertainable," meaning that they cannot be protected as trade secrets. Opp'n at 15-19. Defendants make this argument without reference to the law, however. As Plaintiffs point out, for the Court to conclude that the TSS is not a trade secret under either the DTSA or the CUTSA, the Court must determine that the TSS is not "generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1); see Reply at 6. As discussed above, to the extent that the TSS is readily ascertainable, Defendants have a defense to the existence of a trade secret under the DTSA, but must still show that Defendants made use of that means of ascertainment to have a defense under the CUTSA.

Defendants fail to argue that the TSS was "generally known" by people who could obtain economic value from its use. Rather, Defendants argue that the TSS was publicly available in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at 15-19. While both of these articles are published as conference papers, meaning that they are not obscure, this does not mean that the particular techniques described in them were "generally known" to people who could obtain economic value from developing noninvasive blood content detectors. At best, the articles could be a basis for determining that the TSS was "readily ascertainable." See West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials."). These papers were both found by Defendants'

Exhibit 14
Page 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

expert and not shown to be the origin of the invention embodied in the '158 Patent Application. Goldstein Decl., ECF No. 171-2, ¶ 29. The Court therefore concludes that the TSS can be a trade secret under the CUTSA because it was not publicly known.

Defendants next argue that the TSS is not a source of independent economic value because there have been other publicly available ▮▮▮▮ that are faster than the TSS. Opp'n at 21-23. Namely, Defendants point to ▮▮▮▮ given in ▮▮▮▮ and a ▮▮▮▮ by Defendants' expert, Tom Goldstein, that has been publicly available since 2014. Id. But these arguments are similarly unavailing. Defendants' argument is, in essence, that the TSS cannot be a trade secret because other, more efficient ▮▮▮ are readily ascertainable. If the Court were to accept this argument, then the Court would be undercutting the policy decision made by the California Legislature to not permit the ready ascertainability of information to be a defense to the existence of a trade secret. While in this case what is readily ascertainable is information related to, but not the same as, the TSS, the same moral hazard is created. Namely, if the Court were to accept Defendants' argument, a competitor who wishes to copy a particular trade secret is incentivized to engage in misappropriation of the competitor's trade secret instead of acquiring the readily ascertainable information through other legitimate means. Even if the Defendants did engage in misappropriation, they could always claim that it was unnecessary to use the legitimate means since the mere existence of the other means undermines the protection of the trade secret. The California Legislature expressly chose to eliminate such an incentive for misappropriation by allowing for ready ascertainability to be a defense to misappropriation, even if it does not serve as a defense to the existence of a trade secret in the first place. Competitors are encouraged to take advantage of publicly available means of obtaining the trade secret they are interested in.

This understanding of the requirements of Cal. Civ. Code § 3426.1 is consistent with case law that "[t]he standard to show that trade secrets derive economic value is not a high standard." Cisco Systems, Inc. v. Chung, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. May 26, 2020) (citing Calendar Research LLC v. Stubhub, Inc., 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017)). To determine that readily ascertainable information is

Exhibit 14
Page 13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

"better" than the asserted trade secret and deprives the trade secret of its economic value, the trade secret and the other readily ascertainable information must be closely scrutinized to determine which is indeed "better." This would create a high standard for any plaintiff to meet, for the plaintiff would have to show not only that the asserted trade secret derives "independent economic value," but that it derives more value than any possible alternative. Indeed, by pointing to an alternative ███████ than the TSS, Defendants here are not arguing that the TSS <u>does</u> <u>not</u> derive independent economic value, but that it <u>would</u> <u>not</u> derive that economic value <u>if</u> a competitor were to employ ████████████.

        The Court therefore rejects Defendants' argument that the TSS does not derive independent economic value. Defendants' argument runs contrary to California legislative policy and does not deny that the TSS does provide economic value to Plaintiffs now. It is undisputed that the TSS's economic value derived from how it made ██████████████████████████████████████ so that development of SpHb-measuring devices was practical. <u>See</u> Reply at 16; Chen Decl. ¶¶ 22-26. Thus, the Court finds that Plaintiffs are likely to show that the TSS does derive independent economic value by virtue of not being publicly known and are therefore likely to show the existence of a trade secret.

        *2.    Misappropriation*

        The main disagreement between the Parties about whether Defendants misappropriated the TSS is about whether the '158 Application discloses the TSS. <u>See</u> Opp'n at 23-24; Reply at 18-19. Specifically, Defendants argue that ██████████ ████████ in the '158 Application are actually not disclosed in the 2010 Workshop Presentation and are ███████████ the TSS ████████████." Opp'n at 23. But, this argument is unavailing, even if the Court were to accept Defendants' argument that "the only aspect of the TSS alleged to have any value is the TSS update formulas." <u>Id.</u> at 20. This is because the ████████████████ is in ¶ 79 of the '158 Patent Application, just using different variables. Specifically, the '158 Patent Application recommends the user ██████████████████████████████████████████████

Exhibit 14
Page 14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

'158 Patent Application, ECF No. 152-6, ¶ 79.  As McNames indicates in his declaration, this expression is the same as the constrained update formula, which is:

McNames Decl. ¶¶ 57, 58.



Exhibit 14
Page 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |

Id. ¶ 80. After replacing the variables with the map above, the expressions can be rearranged to demonstrate that the two equations are identical. See id. ¶¶ 78-86.

Defendants do not argue otherwise. Indeed, they seem to word their opposition in such a way as to implicitly acknowledge that McNames' analysis is correct. Opp'n at 23 ("However, for two of the three examples Dr. Names's analysis takes liberties.") (emphasis added). The disclosure of this ███████████████ is sufficient for the Court to conclude that the '158 Patent Application discloses the TSS.

Having concluded that the '158 Patent Application discloses the TSS, the Court can also determine that Plaintiffs are likely to show misappropriation by Defendants. See Mot. at 13-14 (arguing that Defendants misappropriated the TSS). A defendant can misappropriate a trade secret in one of three ways: acquisition, disclosure, or use. Cal. Civ. Code § 3426.1. At the minimum, Plaintiffs are likely to show improper acquisition of the TSS. A defendant misappropriates trade secrets by acquisition if it "knew or had reason to know that the trade secret was acquired by improper means," which includes "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code §§ 3426.1(a) & (b)(1). Plaintiffs have demonstrated that Lamego knew that the TSS was Plaintiffs' trade secret. Ex. 12, ECF No. 152-11, at MASM0113836. Lamego also signed several Confidentiality Agreements in which he stated that he would keep Plaintiffs' trade secrets confidential. Exhibits 3-5, 8, ECF Nos. 153-8, 153-9, 153-10, 153-13. Defendants do not provide any response to Plaintiffs' contention that Lamego brought the TSS with him after he left his job with Plaintiffs.

Thus, the Court concludes that Plaintiffs are likely to succeed on the merits.

*B.    Irreparable Harm*

The Court next turns to whether Plaintiffs have demonstrated irreparable harm if the Court does not grant this motion. Plaintiffs argue that without a preliminary injunction, their trade secret will be disclosed and will no longer be secret. Mot. at 14-15. At that point, Plaintiffs contend, they will lose any competitive advantage that they

Exhibit 14
Page 16

Case 8:20-cv-00048-JVS-JDE   Document 664-16   Filed 04/25/22   Page 18 of 22   Page ID
#:48936
Case 8:18-cv-02001-JVS-JDE   Document 262   Filed 04/28/21   Page 17 of 19   Page ID
#:14681

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |

might receive from their trade secret. Id.

The Court agrees. Defendants respond that Plaintiffs have "waited nearly 17 months to seek this preliminary injunction," and this delay indicates that there is no exigent need for a preliminary injunction. Opp'n at 24-26. But the Court does not believe that Plaintiffs have unreasonably delayed their motion for a preliminary injunction. Plaintiffs only filed this motion for preliminary injunction once they learned that Defendants had received a Notice of Allowance indicating that publication of the '158 Patent Application was imminent. Mot. at 1 (noting that Plaintiffs filed the motion for preliminary injunction one week after Defendants produced the Notice of Allowance). Insofar as Plaintiffs are seeking to prevent the imminent harm that would accrue through publication of the TSS, it is only natural this motion would follow soon after Plaintiffs receive notice that such publication is imminent. This factor weighs in favor of a preliminary injunction.

C.     *Balance of the Equities*

Plaintiffs next argue that the balance of the equities weighs heavily in their favor because the hardship of Defendants publishing Plaintiffs' trade secrets would outweigh Defendants being required to request nonpublication of the relevant applications and delaying issuance until after trial. The Court agrees. Publication of the '158 Patent Application risks Plaintiffs' trade secret becoming public, making it so Plaintiffs lose any value that the TSS accrues by virtue of not being publicly known. By contrast, Defendants will not lose protection for the inventions in the patent applications that rely on the '158 Patent Application for priority if the preliminary injunction is granted. Plaintiffs can continue to maintain these inventions as trade secrets and prosecute any patent applications confidentially. In short, without the preliminary injunction, Plaintiffs would lose protection for one of their inventions while Defendants would still have a way to protect their inventions regardless of if the preliminary injunction issues. This factor weighs in favor of granting the motion.

Exhibit 14
Page 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

### D.    *Public Interest*

Finally, the Court turns to whether issuing Plaintiffs' proposed preliminary injunction would be in the public interest. "If . . . the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). "Protection of trade secrets benefits the public interest." Chartwell Staffing, 2019 WL 2177262, at *11.

Defendants contend that issuing the preliminary injunction would cut against the public interest by sanctioning "harass[ment of] former employees" and by preventing medical devices from being available to the public. Opp'n at 27-28. The Court disagrees. First, this case does not involve "harassment" of a former employee since the Court has concluded that Plaintiffs are likely to succeed in their claim for trade secret misappropriation. Second, the preliminary injunction that Plaintiffs seek would not prevent True Wearables from bringing new devices to market. Rather, True Wearables would merely be prevented from allowing patents that rely on the '158 Patent Application for priority to publish. Thus, the Court concludes that this factor weighs in favor of granting the preliminary injunction.

### E.    *Conclusion*

Having concluded that all the Winter factors weigh in favor a preliminary injunction, the Court **GRANTS** the motion.

The Court therefore **ORDERS** Defendants to: 1) take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS.

Exhibit 14
Page 18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

     As Defendants have not attempted to argue that a bond is necessary in this case, the Court does not impose one.

**IV. CONCLUSION**

     For the foregoing reasons, the Court **GRANTS** the motion. Having considered Defendants' request for oral argument, the Court finds that arguments were adequately presented in the briefing papers and **DENIES** the request. The Court asks the parties to meet and confer and notify the Court which parts of the order should be redacted within 7 days.

     **IT IS SO ORDERED.**

_____ : ____0____

Initials of Preparer      lmb

Exhibit 14
Page 19

**From:** noreply@courtdrive.com <noreply@courtdrive.com>
**Sent:** Thursday, May 6, 2021 8:34 AM
**To:** Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Mark Blake <mark.blake@masimo.com>
**Subject:** Activity in Case 8:18-cv-02001-JVS-JDE Masimo Corporation et al v. True Wearables, Inc. et al Minutes of In Chambers Order/Directive - no proceeding held

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered on 5/6/2021 at 8:32 AM PDT and filed on 4/28/2021

| | |
|---|---|
| **Case Name:** | Masimo Corporation et al v. True Wearables, Inc. et al |
| **Case Number:** | 8:18-cv-02001-JVS-JDE |
| **Filer:** | |
| **Document Number:** | 262 |

**Docket Text:**
**REDACTED MINUTES [IN CHAMBERS] Order Regarding Revived Motion for PreliminaryInjunction by Judge James V. Selna: For the following reasons, the Court GRANTS the motion. [See document for details.] (es)**

**8:18-cv-02001-JVS-JDE Notice has been electronically mailed to:**

Sherron L Wiggins    support@conklelaw.com, s.wiggins@conklelaw.com

Adam Powell    litigation@knobbe.com, adam.powell@knobbe.com, 2abp@knobbe.com

Eric R. Chad    echad@merchantgould.com

Brian Christopher Claassen    brian.claassen@knobbe.com, knobbeadmin@ecf.courtdrive.com

Amanda Rose Washton    a.washton@conklelaw.com, support@conklelaw.com, awashton@hotmail.com

Peter A Gergely    pgergely@merchantgould.com

Mark D Kachner    litigation@knobbe.com, mark.kachner@knobbe.com, doreen.buluran@kmob.com

Exhibit 14
Page 20

James Eugene Youngblood    jamie.youngblood@knobbe.com

Irfan A Lateef    litigation@kmob.com, irfan.lateef@knobbe.com, ial@kmob.com

Stephen C Jensen    sjensen@kmob.com, steve.jensen@knobbe.com

Zach Kachmer    zkachmer@merchantgould.com

Ryan J Fletcher    kdrieman@merchantgould.com, rfletcher@merchantgould.com, smaney@merchantgould.com

Joseph R. Re    joe.re@knobbe.com, litigation@kmob.com, knobbeadmin@ecf.courtdrive.com, jre@kmob.com

Paige S Stradley    pstradley@merchantgould.com

Scott P Shaw    sshaw@calljensen.com, sshaw@merchantgould.com, smaney@merchantgould.com, kholst@merchantgould.com

Perry D Oldham    2pdo@kmob.com, litigation@kmob.com, perry.oldham@knobbe.com

**8:18-cv-02001-JVS-JDE Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**
Andrew T Pouzeshi
Merchant and Gould PC
1801 California Street Suite 3300
Denver CO 80202

Exhibit 14
Page 21