# EXHIBIT 22

```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                   (SOUTHERN DIVISION - SANTA ANA)




MASIMO CORPORATION, ET AL,    ) CASE NO: 8:20-CV-00048-JVS-JDEx
                              )
            Plaintiffs,       )              CIVIL
                              )
     vs.                      )      Santa Ana, California
                              )
APPLE, INC,                   )   Thursday, September 23, 2021
                              )
            Defendant.        )


   IN-PERSON HEARING RE: PLAINTIFFS' MOTION FOR RECONSIDERATION

               BEFORE THE HONORABLE JOHN D. EARLY,
                  UNITED STATES MAGISTRATE JUDGE




APPEARANCES:               SEE PAGE 2


Court Reporter:            Recorded; Digital wave file


Courtroom Deputy:          Maria Barr


Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 22
Page 1

2

**APPEARANCES:**

For Plaintiffs:        JOSEPH R. RE, ESQ.
                       Knobbe Martens Olson & Bear, LLP
                       2040 Main Street
                       14th Floor
                       Irvine, CA 92614

                       ADAM POWELL, ESQ.
                       Knobbe Martens Olson & Bear, LLP
                       12790 El Camino Real
                       San Diego, CA 92130


For Defendant:         JOSHUA H. LERNER, ESQ.
                       Gibson Dunn & Crutcher, LLP
                       555 Mission Street
                       Suite 3000
                       San Francisco, CA 94105

                       NATALIE POUS, ESQ.
                       Apple In-House Counsel

1       **Santa Ana, California; Thursday, September 23, 2021**

2                        **(Call to Order)**

3          **THE COURT:** Good morning, everyone.

4          **MR. RE:** Good morning.

5          **MR. LERNER:** Good morning, Your Honor.

6          **THE COURT:** One item on calendar today. Calling Case

7    Number Central District of California 8:20-cv-48-JVS-JDE,

8    *Masimo Corporation, et al., versus Apple, Inc.*

9          Appearances for this in-person hearing, Counsel,

10   starting with counsel for plaintiff.

11         **MR. RE:** For Masimo and Cercacor, Joseph Re from

12   Knobbe Martens Olson and Bear. With me is my partner, Adam

13   Powell.

14         **THE COURT:** Good morning. Thank you.

15         And on behalf of defendant?

16         **MR. LERNER:** Good morning, Your Honor. Joshua

17   Lerner, Gibson Dunn, on behalf of Apple, and with me today is

18   Natalie Pous, legal counsel, litigation, from Apple.

19         **THE COURT:** I'm sorry; what was the last name?

20         **MR. LERNER:** P-O-U-S, Your Honor.

21         **THE COURT:** All right. And that's in-house counsel

22   at Apple?

23         **MR. LERNER:** Yes.

24         **THE COURT:** All right. All right. We're here for

25   a -- what's been styled as a motion for reconsideration of my

1  into a more deep dive into some other issues that may be
2  lurking out there.
3        And I'll note, in terms of the good cause, moving
4  back in time, that I have considered Apple's arguments that
5  plaintiffs' counsel, at least the firm, had possession of the
6  October 2nd, 2013, email as long ago as last year, and there is
7  a declaration from a paralegal from another firm regarding
8  production in another case.  I'm happy to get into a deep dive
9  on that.
10       I actually -- I don't think you were here,
11 Mr. Lerner, on that other case -- had some thoughts about what
12 was happening, and I used a term from my days visiting New York
13 City when I was a kid in the 1970s where you'd pop out of Penn
14 Station or Grand Central Station and there would be guys with
15 little tables set up playing Three Card Monte.  And I want to
16 explain what that is.  It's a game where you're trying to pick
17 the queen out of three cards.  And the queen is there, and the
18 person dealing the cards isn't cheating; and by dealing, he
19 just throws three cards around, but is being somewhat opaque.
20 And sometimes it involves having a third party who appears to
21 be an independent third party who's actually working with the
22 dealer out on this little table outside the station looking for
23 tourists coming into town to have the third party, who looks to
24 be independent, win a couple times, and then when the tourist
25 puts their money down, suddenly the card is much harder to

1  find.  The card exists; it's just being obscured.

2          I'm happy to hear from Apple about anything that they
3  want to talk about.  But one of the things we might get into
4  and have to get into if we're going to do a deep dive is the
5  relationship between Apple and True Wearables, the defendant in
6  the other case; how it came to pass that the October 2nd email
7  was designated as confidential in that case; maybe we need to
8  get into communications between the parties.  I don't know, and
9  I certainly am not going to issue any orders on the fly on
10 that, but maybe we need to, to find out how it came to pass.
11 And there is an argument from Apple that plaintiff --
12 plaintiffs could have just moved to de-designate that October
13 2nd, 2013, email in the True Wearables case.  I'm not sure what
14 the basis for that argument is.  There is no basis in the
15 protective order in that case to simply say:  I want to use
16 something that was designated as confidential in another case.
17 You can move to de-designate by saying something isn't
18 confidential.  And here at least it was represented at the last
19 hearing that -- I think it was by Mr. Re -- that during the
20 course of the True Wearables case Mr. Lamego said that that
21 email, he designated that as confidential at the request of --
22 and I'm not sure if it was expressed or in his mind
23 interpreted -- at the request of Apple.  And you each have
24 heard me talk about my views of protective orders and that
25 they're not to be willy-nilly disregarded, and that protective

9

1 order limited the use of that email once it was designated as
2 confidential to the prosecution or defense of that case only.
3 So, plaintiffs could not have simply thrown it in front of me.
4 　　　　　Now, the timing here, perhaps it was a genius move by
5 plaintiffs to serve a third-party subpoena on Apple, have Apple
6 file a motion to quash, and then have that document be brought
7 to my attention in connection with that motion to quash, but be
8 that as it may, that was -- they didn't have an ability to
9 bring it to my attention in this court in this hearing on June
10 10th.  And I'm a little troubled by the suggestion that it was
11 that simple or that plaintiffs here were at fault.  And, so, if
12 we want to go down that road, we will, but we're probably at
13 that point going to have to have some evidentiary issues if we
14 really want to push it.  But I'm comfortable right now with
15 what I see to say they did not have authorization from me or
16 Mr. Lamego.  And I saw the emails from Mr. Lamego's counsel
17 essentially telling plaintiff they couldn't even disclose this
18 to in-house counsel at Apple; it could only be an attorneys'-
19 eyes-only presentation of the email from plaintiff to Apple's
20 counsel before plaintiffs' counsel would be authorized to file
21 it in connection with the motion to quash in the True Wearables
22 case.
23 　　　　　So, I'm riffing a little bit.  I've given you the
24 short version of my tentative.  I guess I'll start with you,
25 Mr. Re, or Mr. Powell.  It's plaintiffs' motion.  At the risk

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 22
Page 6

1  of potentially snatching defeat from the jaws of victory,

2  you're welcome to offer any additional argument, since you have

3  the burden here, but -- or give me any new information, since I

4  think the last filing was your reply over a month ago, if

5  there's any new information that you want to impart to me.

6  　　　　　Mr. Re, the floor is yours.

7  　　　　　**MR. RE:**  Thank you, Your Honor.  I only have one

8  statement to make, and that is, we, in an abundance of caution,

9  had the same interpretation of the protective order that you

10 just gave.  And that is, even if I were to show it to

11 Mr. Lerner, for example, for a meet-and-confer to get a court

12 order to approve it after the fact, that might even be deemed a

13 use.  So, we have an ambiguity on the word "use," and we took

14 the broadest interpretation, just like you just did in your

15 explanation.

16 　　　　　**THE COURT:**  Anything further?

17 　　　　　**MR. RE:**  Nothing further.

18 　　　　　**THE COURT:**  All right. Subject to your ability to

19 respond, any arguments from Mr. Lerner?  Mr. Lerner, you've

20 heard my tentative and my thoughts.  Let me hear what you want

21 to argue.

22 　　　　　**MR. LERNER:**  Thank you, Your Honor.  I will not spend

23 time on your point about the procedure here.  I want to get to

24 the substance, which is that there's new information that

25 changes the basis for the Court's prior ruling.

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____        <u>September 29, 2021</u>
        Signed                              Dated


*TONI HUDSON, TRANSCRIBER*