Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF STEPHEN W. LARSON IN SUPPORT OF OPPOSITION TO DEFENDANT APPLE INC.'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 8**<br><br>Date:   May 23, 2022<br>Time:   1:30 p.m.<br>Ctrm:   10C |

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

I, Stephen W. Larson, hereby declare as follows:

1.      I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.  I submit this Declaration in Support of Masimo's Opposition to Apple Inc's Objection to Special Master Order No. 8.

2.      Attached hereto as **Exhibit A** is a true and correct copy of excerpts from Apple's website, https://www.apple.com/newsroom/2019/08/apples-us-job-footprint-grows-to-two-point-four-million/, downloaded on May 1, 2022.

3.      Attached hereto as **Exhibit B** is a true and correct copy of excerpts from a transcript of a hearing before Magistrate Judge Early that took place in this action on May 20, 2021.

4.      Attached hereto as **Exhibit C [Filed Under Seal]** is a true and correct copy of a chart showing the hit counts for a first round of search terms that Apple provided in 2021 to search Masimo's ESI from Michael O'Reilly pursuant to the parties' agreement on ESI searching.

5.      Attached hereto as **Exhibit D [Filed Under Seal]** is a true and correct copy of email correspondence between my colleague, Adam Powell, and Nora Passamaneck, counsel for Apple.

6.      Attached hereto as **Exhibit E [Filed Under Seal]** is a true and correct copy of email correspondence between my colleague, Ben Katzenellenbogen, and Brian Andrea, counsel for Apple.

7.      Attached hereto as **Exhibit F** is a true and correct copy of email correspondence between my colleague, Cheryl Burgess, and Ilissa Samplin, counsel for Apple.

/ / /

/ / /

-1-

8.      Attached hereto as **Exhibit G [Filed Under Seal]** is a true and correct copy of a document Masimo produced in this case bearing production number MASA00972937.

9.      Attached hereto as **Exhibit H [Filed Under Seal]** is a true and correct copy of a document Masimo produced in this case bearing production number MASA01255872.

10.      Masimo performed ESI searching for numerous custodians pursuant to the parties' agreement on ESI.  Masimo produced thousands of documents relating to its FDA submissions and FDA approval for Masimo products.

11.      Masimo has also provided Apple with over 36,000 pages of discovery from the *True Wearables* case.

12.      Masimo issued a subpoena to Apple in connection with the *True Wearables* case.  I am informed that Apple produced only 250 documents in response to that subpoena.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on May 2, 2022, at Irvine, California.


　　　　　　　　　　*/s/ Stephen W. Larson*　　　　　　　　
　　　　　　　　　　　Stephen W. Larson

55516318

# EXHIBIT A



https://www.apple.com/newsroom/2019/08/apples-us-job-footprint-grows-to-two-point-four-million/ 05/01/2022

| Store | Mac | iPad | iPhone | Watch | AirPods | TV & Home | Only on Apple | Accessories | Support |

Newsroom

Q Search Newsroom     Popular Topics ∨

**UPDATE**
August 15, 2019

# Apple's US job footprint grows to 2.4 million

   





Maccor is one of 9,000 American suppliers that Apple spent a collective $60 billion with in 2018, which supports 450,000 jobs. 

Thirty-three years ago, five friends sat down at a kitchen table in Tulsa, Oklahoma and decided to start a company. Among them: president of Maccor Andy MacKay and his wife Helen, who runs personnel. Today, less than a mile from that spot, Maccor now occupies 80,000 square feet of space and has earned itself a reputation as the top manufacturer of battery testing systems in the world.

Maccor is one of 9,000 American suppliers that Apple spent a collective $60 billion with in 2018, which supports 450,000 jobs. Altogether, Apple is responsible for creating and supporting 2.4 million US jobs across all 50 states, four times the number of American jobs attributable to the company eight years ago. Apple is on pace to directly contribute $350 billion to the US economy by 2023, which the

company announced in January of 2018.

"The relationship with Apple has been tremendous and company-changing for us," says Andy. "We want to build the absolute best equipment we can build — we don't want to cut corners. Apple is a company where quality is paramount and they push us constantly to see if we can make improvements in our commercial product."



Maccor, the top manufacturer of battery testing systems in the world, employs more than 130 people in Tulsa, Oklahoma and its new facility in San Jose, California.



· · · ·

Maccor designs and manufactures high-accuracy hardware and software to test the performance of batteries. The rigorous quality and performance testing helps ensure the batteries found in Apple products are safe and durable.

When Maccor started working with Apple 15 years ago, the company was 60 employees strong. That number has doubled to more than 130 and includes a new facility in San Jose, California. In the last year alone, Maccor's staff has increased by a third and the company is in the process of hiring more skilled workers.

Every year, Apple looks for new opportunities to expand its existing supplier relationships — in June, Apple entered into an agreement with Broadcom Limited, a California company with a manufacturing facility in Fort Collins, Colorado, to purchase high performance radio frequency modules and components. Since Apple awarded Finisar $390 million as part of the Advanced Manufacturing Fund in December, 2017, the manufacturer is on track to fill 500 full-time positions in Sherman, Texas, in addition to creating nearly 1,000 construction jobs. Finisar is expected to begin shipping lasers called VCSELs, used to power FaceID in the latest iPhones and iPads, in the coming months.



Since Apple awarded Finisar $390 million as part of the Advanced Manufacturing Fund in December, 2017, the manufacturer is on track to fill 500 full-time positions in Sherman, Texas. 

A significant amount of the jobs Apple supports in the US are found in the booming app economy, which is currently responsible for 1.9 million American jobs — an increase of 325,000 in the last two and a half years. Several states saw double-digit growth during that period,

including a 43 percent increase in North Carolina, representing almost 15,000 new jobs, and a 50 percent increase in Florida, which added almost 30,000 new jobs. Pennsylvania saw a 64 percent increase in growth, going from 40,800 jobs in 2016 to more than 67,000 today.

Apple also directly employs 90,000 employees in all 50 states, putting the company on track to create 20,000 new jobs across the US by 2023. Earlier this year in San Diego, Apple announced an expansion that will include 1,200 direct jobs and a new campus featuring hundreds of thousands of square feet of office, lab and research space. In Seattle, Apple will add 2,000 new employees in highly skilled engineering positions.





Apple directly employs 90,000 employees in all 50 states, putting the company on track to create 20,000 new jobs across the US by 2023. 

At the heart of all of this growth are companies like Maccor and people like the MacKays, who take pride in investing back into their community. Over the last decade, they have helped almost 50 students go to college through scholarships they fund through the University of Tulsa.

"There wasn't any money in [our] family to put me through college and I was fortunate to get a full-ride scholarship from the company my mom worked for," says Andy. "I always remembered that because it changed the trajectory of my life completely, so when the time came that we had the means, we wanted to see if we could help other people in the same way."

When Andy looks back on his journey, he's still amazed at where it has led.

"None of us who started this company would have believed that we would ever get to be anything like we are now," says Andy. "We stand out on the production floor and just look at each other and say 'Would you ever have thought when we were sitting at the kitchen table at that

house a mile away from here that I'd ever be standing in the middle of a building like this?' We had no idea what was in store for us."

# EXHIBIT B

1

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(SOUTHERN DIVISION - SANTA ANA)**


| | | |
|---|---|---|
| MASIMO CORPORATION, ET AL, | ) | CASE NO: 8:20-CV-00048-JVS-JDEx |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Santa Ana, California |
| | ) | |
| APPLE, INC, | ) | Thursday, May 20, 2021 |
| | ) | |
| Defendant. | ) | |


**PARTIAL TRANSCRIPT RE:**

**MOTION TO COMPEL [DKT.NOS.351,357]**


**BEFORE THE HONORABLE JOHN D. EARLY,**
**UNITED STATES MAGISTRATE JUDGE**

**(SEALED PORTIONS OMITTED)**


<u>**APPEARANCES**</u>**:**          **SEE PAGE 2**


**Court Reporter:          Recorded; REMOTE; Wave**

**Courtroom Deputy:          Maria Barr**

**Transcribed by:          Exceptional Reporting Services, Inc.**
**P.O. Box 8365**
**Corpus Christi, TX 78468**
**361 949-2988**


**Proceedings recorded by electronic sound recording;**
**transcript produced by transcription service.**

2

**APPEARANCES:**

For Plaintiffs:            BENJAMIN A. KATZENELLENBOGEN, ESQ.
                           Knobbe Martens Olson & Bear, LLP
                           2040 Main Street
                           14th Floor
                           Irvine, CA 92614

                           ADAM POWELL, ESQ.
                           Knobbe Martens Olson & Bear, LLP
                           12790 El Camino Real
                           San Diego, CA 92130


For Defendant:             JOSHUA H. LERNER, ESQ.
                           Gibson Dunn & Crutcher, LLP
                           555 Mission Street
                           Suite 3000
                           San Francisco, CA 94105

                           ILISSA S. SAMPLIN, ESQ.
                           Gibson Dunn & Crutcher, LLP
                           2029 Century Park East
                           Suite 4000
                           Los Angeles, CA 90067

Exhibit B
-12-

1          **Santa Ana, California; Thursday, May 20, 2021**

2                    **(Remote Appearances)**

3                     **Call to Order**

4          **THE CLERK:**  Please come to order.  This United States

5    District Court is now in session, the Honorable John D. Early,

6    United States Magistrate Judge presiding.

7          **THE COURT:**  Good morning, everyone, please be seated.

8      **(All respond good morning)**

9          **THE COURT:**  All right, calling the case of *Masimo*

10   *Corporation, et al versus Apple Inc.*, Central District of

11   California Case Number 8:20-00048-JVS.

12         We are here on two Motions.  We'll take appearances

13   with Counsel and then we'll describe the Motion.  We'll start

14   with Counsel for Plaintiff.

15         **MR. POWELL:**  Thank you, Your Honor, Adam Powell for

16   the Plaintiff Masimo Corporation and Cercacor.

17         With me is my partner Ben Katzenellenbogen.

18         **THE COURT:**  All right, thank you, good morning.

19         And for Defendants -- for Defendant?

20         **MR. LERNER:**  Good morning, Your Honor, Joshua Lerner

21   of Gibson Dunn on behalf of Apple, and with me is my partner,

22   Ilissa Samplin.

23         **THE COURT:**  All right, good morning and welcome, as

24   well.

25         We are proceeding and everyone is wearing a mask.

10

1   that you're going to hear repeatedly, but I don't think it

2   matters what lens you view it through, whether or not it's

3   relevance or 2019.210, or the claims as they have been set

4   forth.

5           Any heart rate algorithms used in any Apple Watch

6   product is unequivocally overbroad, it captures heart rate

7   algorithms that do not relate to any issue in this case.

8           **THE COURT:**  How do I know that?  What's the evidence

9   that I have that I can cite to for that?

10          **MR. LERNER:**  The only two secrets that they point to

11  in this argument, and there's two of them, and we've set them

12  out and it's hard to do this without saying the words --

13          **THE COURT:**  Well, I guess what I'm asking -- let me

14  talk a little bit and then I'll have you respond, the 2019.210

15  argument is going to keep coming up so let me talk to you about

16  it.  I think both sides have gone to their respective corners

17  on what this all means, and you used the phrase "tethered to"

18  and I love language, all language is to some extent analogy and

19  metaphor, right, words are metaphors for things.  I'm not going

20  to go too deep into Plato's cave, but "tethered" is a great

21  analogy.

22          What is a tether?

23          There is a fixed point that a rope is connected to,

24  and then whatever is at the end of that rope, a boat, a dog,

25  whatever, roams around, but there is a fixed point to which

Exhibit B
-14-

11

1   something is tethered and then there's a penumbra, to use a

2   Supreme Court word, around which the attachment moves, and I

3   think that is a great analogy for the 2019 concept, it's a

4   great analogy for discovery relevance in general, just like the

5   pleadings frame or tether the allegations for purposes of

6   discovery.

7            What is relevant to those allegations is not just the

8   specific words used in the 2019.210 designation, or the

9   specific words used in a Complaint, discovery is broader than

10  that.  Federal Rule of Evidence 401 is broader than that.

11           Rule 401 is "any fact that has any tendency to make

12  another fact of consequence more or less likely is relevant."

13           And the definition of discovery is even greater than

14  the definition of relevance for trial.

15           So what is the 2019 or what is the pleadings -- where

16  does that fit in there?

17           That determines under Rule 401 what is "of

18  consequence."

19           So Rule 401 doesn't say any fact of consequence is

20  relevant and any fact not of consequence is not relevant, it's

21  merely any fact that makes such other fact more or has any

22  tendency to make it more or less likely.

23           So how do we deal with that?

24           Every single discovery request has to deal with that.

25  We can't just say "I want every fact tied to just the

1   allegations in the Complaint."  So it's a matter of balancing.

2          To some extent every discovery request has built into

3   it a proportionality, a Rule 26(b) proportionality analysis.

4          Here's my difficulty from Apple's standpoint:

5          I don't have any evidence.  I don't know why this

6   would be disproportionate.  I don't know how difficult it would

7   be for Apple to produce this.

8          Facially it looks relevant.  Facially you're saying

9   "Well, maybe aspects of it are tied to this trade secret

10  designation, but that's very narrow compared to the world and

11  universe of documents that we would be required to search for."

12  And that's where I'm going to refocus this to the language and

13  we'll talk to Plaintiffs about it.

14         But Apple is taking too restrictive of a view of what

15  2019.210 does; what the definition of relevance is for

16  discovery.  But let me tell you, I'm sympathetic and I want to

17  listen to you because at some point things do get too broad.

18         But what I need, what Rule 26 tells me, is I've got

19  to do that proportionality balancing based on certain factors,

20  and one of them is the cost, the burden, the expense, and I

21  don't have any of that from Apple here.

22         Now, again, I'm talking more and we're going way over

23  our five-minute target, but there's sometimes, and this --

24  you'll see different District Courts, usually Central District,

25  most Magistrate Judges and District Judges, they go by the

1   propounding party demonstrates relevance, then all objections,

2   the burden's on the Defense, and within that is

3   proportionality, et cetera because there's a de facto balancing

4   that requires analysis.

5            Other Districts say "Well, no, the propounding party

6   has to make an initial showing of proportionality."  And I

7   think they're both saying the same thing, and here's my

8   example:

9            If somebody propounds on Coca Cola "produce all

10  documents that relate to Coca Cola period," I don't need

11  evidence from Coca Cola to know, all right, that's

12  disproportionate without even knowing what the issue is in the

13  case, but let's say it's a relatively narrow issue.  I don't

14  need evidence for that.

15           But if somebody says "give me all documents that

16  mention RC Cola for the year 2014 produced in the country of

17  Portugal," all right, you come and tell me that that's

18  disproportionate, now I've got something that I'm going to need

19  evidence if you're going to come and tell me that's

20  disproportionate, so there is a common sense aspect to this.

21           I can't tell from looking at Request for Production

22  Number 63 "Documents" -- and I really want to focus on the

23  language, "sufficient to show" and I'm going to talk to

24  Plaintiff about this, "sufficient to show" does not, to me,

25  mean every single document that mentions heart rate algorithms,

1  okay?  It's "sufficient to show the heart rate algorithms in

2  any of the Apple Watch products."

3          I'm also interested if they want duplicative

4  documents.  Let's say there's 10 million pages, do they want

5  all 10 million pages, or do they want enough that are

6  sufficient to show what heart rate algorithms are used in the

7  different products which could be just enough so that they can

8  proceed.

9          And then Apple, and its counsel, acting in good

10  faith, acting as Officers of the Court, acting under Rule 26(g)

11  when they certify Responses and comply with discovery that

12  they're basically making a certification, subject to sanctions,

13  that they're interpreting it reasonably and appropriately, they

14  come back and say "Okay, here's the universe of documents that

15  are sufficient to show what algorithms are used in these

16  products."

17          That seems like a fairly narrow, and to my mind not

18  particularly burdensome request.

19          The fact that you say "Well, it's not specifically

20  tied to the trade secrets and what heart rate algorithms

21  because there are other aspects of the Apple Watch that uses

22  heart rate algorithms for different things."

23          You didn't give me anything to tell me how burdensome

24  that is, how difficult it is for you to just say "Whatever, I'm

25  just going to give you all documents that are just sufficient

Case 8:20-cv-00048-JVS-JDE   Document 678-1   Filed 05/02/22   Page 23 of 68   Page ID #:49691

15

1   to show, not 10 million, but documents sufficient to show how

2   the heart rate algorithm is calculated."

3         I'm not a technical person, I can't make a

4   determination, again, without evidence, that Plaintiff's

5   argument to some extent, and I may be broadening a little bit

6   as well, the fact that in the Apple Watch, what are we up to, 6

7   now, in the Apple Watch 6 they've come up with a heart rate

8   algorithm for sleep analysis and, again, I'm probably way off

9   base, but they've come up with something that is not tethered

10   to the pulse oximetry that's the main issue here, but Apple has

11   suggested that these different, the originating algorithm that

12   they claim was stolen, has now branched off into other aspects

13   and if it hasn't you're going to want to demonstrate that

14   anyway.

15         But my main point is I don't have information from an

16   evidentiary standpoint from Apple about how burdensome this

17   would be, how difficult it would be.

18         So having heard what I have to say I'm going to turn

19   it back to you, Mr. Lerner.  What are your thoughts on what

20   I've had to say?

21         **MR. LERNER:**  Thank you.  So I think we agree on what

22   you have outlined as a standard, which is let's just call it,

23   not using tethered, relevant to, which as you said means more

24   or less likely to have some bearing on the facts in this case.

25         **THE COURT:**  Any tendency in reason, yes.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit B
-19-

1          **MR. LERNER:**  Right.  And I think we're also on the

2    same page that the claims in this case as it's currently

3    situated, are claims for trade secret misappropriation.

4          And the two alleged types of misappropriation that

5    the Plaintiffs are relying on for this request are -- and I

6    think it's very important, you just said that they're

7    suggesting the algorithm has somehow bled into its request for

8    the heart rate --

9          **THE COURT:**  Well, what I'm saying is from a damages

10   standpoint.  You're telling me that there's no aspect of this,

11   that they're not saying that a trade secret was stolen, and

12   here's the trade secret that was stolen, and now five or six

13   years later it has been used and developed to these other

14   elements.  You're saying they're not alleging that.

15         **MR. LERNER:**  They are not, and I think this is very

16   important.  They already have the source code which they -- and

17   a lot of this starts on Page 35 of our Brief, and I do want to

18   answer all of your questions on this, but they already have the

19   source code that shows them how we do the two trade secrets

20   that they are claiming this Request is relevant to.

21         They are not coming to Your Honor and saying what you

22   just said, which is "We looked at how Apple does it; we have

23   looked at how Apple accomplishes those two secrets, and we

24   found that they're using our secrets and we have a reason to

25   tell you, Judge Early, that having looked at how -- at Apple's

1    code, and certainly not telling you having looked at Apple's

2    code we can tell you that they're using the secrets," but let

3    alone the Request here, which is that having looked at it and

4    somehow figured out that -- looking at that source code and

5    which, to use their own words, they said "will show whether or

6    not Apple is using the secrets."

7              They're not saying "We looked at that and there is

8    some connection to this much broader set of heart rate

9    algorithms."

10             And to Your Honor's question about burden and

11   whatnot, you used the Coca Cola analogy, at a certain point it

12   does get difficult to put that in a Declaration, but we did

13   explain they are talking about secret --

14             **THE COURT:**  You can put anything in a Declaration.

15             **MR. LERNER:**  Correct.

16             **THE COURT:**  I don't have any facts in front of me

17   about burden.  I don't know how hard it is for you to run what,

18   again, looks like a -- to me, a narrow Request, as I interpret

19   it, "documents sufficient to confirm it," does not mean

20   everything, it means relating to any heart rate algorithms, so

21   I don't know.

22             For instance -- wait, let me finish, how many heart

23   rate algorithms are implicated?

24             I don't know, is it two?  Is it 10?  Is it 500?  I

25   don't know.

18

1          And don't you think that that would be the kind of

2   thing that would help me to be able to do a Rule 26(b)

3   proportionality analysis?

4          How hard would it be to obtain documents sufficient

5   to show the -- any heart rate algorithm used in any of the

6   Apple Watch products

7          **MR. LERNER:**  And the answer, Your Honor, is it is

8   actually -- and I hope it's clear that we do want to tell you

9   information that we think would be helpful.

10         They're asking about algorithms that we are all, I

11  think, acknowledging sitting here, go far beyond the two

12  secrets they tie it to and (indisc.) --

13         **THE COURT:**  How do I know that?  You say "we're all

14  acknowledging."  How do I know that?  I mean, I created some --

15         **MR. LERNER:**  The Plaintiffs will not, I don't think,

16  be able to stand up and tell you that they can claim here, to

17  Your Honor's point, as members of the Court, that every Apple

18  heart rate algorithm has any chance --

19         **THE COURT:**  Okay --

20         **MR. LERNER:**  -- of making it more or less likely that

21  we misappropriated a secret, or even bearing on that --

22         **THE COURT:**  Well, doesn't it -- if they get it and it

23  doesn't bear on it, doesn't that make it less likely?

24         Therefore, isn't that going to be something that

25  they're going to be able to say "Well, if I see that it's not

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit B
-22-

19

1   then it's -- that it's not related to the allegedly stolen

2   algorithm" then that fact is more or less likely, and it helps

3   narrow the issues for trial that okay, we don't have to worry

4   about that one.

5          But getting back to my main point, all right, let me

6   focus you on the main point, how do I know how many heart rate

7   algorithms are implicated by Request Number 63?

8          **MR. LERNER:**  And the reason it is not -- I don't even

9   know, if possible, to answer that question, is we are talking

10  about, and we did set this out, six generations of Apple

11  Watches over eight years that involved thousands of people.

12         The idea that we could tell you, again to your point,

13  in good faith, that we know precisely what it is or how many,

14  that's not something that we can easily capture, but I think it

15  is very important that the standard cannot be that we should

16  produce documents, and if there's nothing there that makes it

17  more or less likely that it's relevant.

18         **THE COURT:**  Well, the standard is you need -- if you

19  want to make a proportionality or a burdensomeness objection

20  you need to give me something, and this is a facially relevant

21  request.  You're saying it's too broad, and what I'm saying is

22  how do I know it's too broad?

23         In essence that's what you're telling me, is it's too

24  broad, it implicates other heart rate algorithms that are not

25  tethered to the trade secret -- trade secrets.  How do I know

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit B
-23-

1    that?

2            MR. LERNER:  As I said, there's -- there are -- as we

3    have said here in our papers as members of the Court, there are

4    -- it's very difficult to put a number on it.  Heart rate

5    algorithms are numerous.  There are many and I don't think

6    there can be a dispute about this, that are not connected,

7    tethered, have anything to do with the two secrets that they

8    are trying to point to to get this information.

9            THE COURT:  All right.  Now let me turn to Plaintiffs

10   since I had some questions for them.

11           First of all, is my interpretation of Request Number

12   63 correct, that Plaintiffs are not seeking any single -- every

13   single, and I use the term "document" to include ESI, any

14   single document that makes any reference to heart rate

15   algorithms used in any Apple Watch products, but you are

16   seeking documents sufficient to show heart rate algorithms used

17   in any Apple Watches, meaning once Apple produces such a

18   document sufficient to show they don't have to produce every

19   single document that is also sufficient to show the same heart

20   rate algorithm used in the same product, correct or incorrect?

21           MR. POWELL:  That is correct, Your Honor.

22           THE COURT:  All right.  What, if anything, do you

23   want to offer in support relating to any argument that's been

24   made so far this morning with respect to Request for Production

25   Number 63?

1          **MR. POWELL:**  Thank you, Your Honor.  I'll be very

2    brief here unless you have any specific questions.

3          But I think the Court is correct that the

4    interpretation and the scope of 2019 is at issue, and

5    Mr. Lerner is interpreting 2019 too narrowly, and that I think

6    you're correct in your analogy of a tether that not just these

7    specific words are relevant.  And the reason is we have both

8    the *PMC* case and the -- I'm sorry.

9          Both the *PMC* case and the *SkinMedica* case made clear

10   that you can use a trade secret in a lot of different ways, and

11   I think Your Honor was correct when you said that a trade

12   secret can be incorporated in an initial product and then it

13   can be tweaked, it can be modified, it can be changed, and

14   those products still misappropriate a trade secret.

15         So that's why I think, again, we don't know how many

16   heart rate algorithms are even at issue.  We don't know how

17   many they have because we haven't been told how many they have

18   for the same reason as the Court, we don't have that evidence.

19   It could be two, it could be 20, I have no idea.

20         **THE COURT:**  Right.

21         **MR. POWELL:**  And that's why we think that it's just

22   not that burdensome to --

23         **THE COURT:**  So I'm going to cut you off because -- to

24   keep things moving, a part of the reason I'm going to cut you

25   off is I think Mr. Lerner might more appreciate some thoughts I

1  have on the very next one, Request Number 64, and this is why

2  we're tying these to the specific Request, it's great to have

3  global discussions.

4        Request Number 64:

5        "All documents and things that refer or relate to

6        selection between any heart rate algorithm used in

7        any of the Apple Watch products."

8        I read that as a much, much, much, much, much, much,

9  much, much broader Request than Number 63 'cause here we get

10  into "refer or relate to documents and things."

11        Now we get into it's slightly narrowed as it relates

12  to "selection," but now we get to the exact thing I said that I

13  don't interpret 63 to call for, and you have confirmed, we're

14  now opening the proverbial Pandora's Box where I think on this

15  one I can say, without a showing of burdensome from Apple, of

16  burdensomeness without evidence, that I can read this just like

17  that Coca Cola example, wow, that's pretty broad.

18        Am I wrong?

19        **MR. POWELL:**  Your Honor, I would respectfully

20  disagree, and I'll tell you why.

21        Number 1, we're not asking for every single document

22  in the company, we're asking for a reasonable search pursuant

23  to Rule 26, so what --

24        **THE COURT:**  Well -- so you've got your custodians,

25  there was a big fight over custodians, you got how many, 39

23

1   custodians?  Okay.

2          So you're right that there are limitations, but

3   "refer or relate to," the only thing that might save you here

4   is the modifier "selection between."  That does narrow it,

5   okay?

6          But whatever you got through that narrowing I'm

7   imagining piping, I did some plumbing, you've got a narrowing

8   and then all of a sudden you've got an explosion.  So the

9   narrowing helps, right?  The flow of water is going to be

10  slowed, but that "refer or relate to" I wish you had written

11  this one the way -- I shouldn't say "I wish," you know, I get

12  things as they come; had you written this that said "all

13  documents sufficient to show how heart rate algorithms were

14  selected in any Apple Watch product" I would view it much more

15  like 63, but this is not worded that way, so I'm inclined to

16  say that this one is too broad.  I can see it on the face of

17  the Request even without evidence, Apple, and as I mentioned to

18  you I'm not going to be in the business with 92 Requests to

19  start narrowing on the fly, it's either going to be granted or

20  denied.

21         My inclination is to grant the Motion as indicated,

22  as interpreted as to 63 and deny it as to 64.

23         So let me hear from you.

24         **MR. LERNER:**  Thank you, Your Honor.  I'll be very

25  brief.

24

1          I think the selection between heart rate algorithms

2     does sufficiently narrow this Request and I'll tell you why.

3          One of the trade secrets at issue here, I'll try to

4     be broad, but perhaps we'll need to seal this portion of the

5     transcript if I get too detailed, would that be okay?

6          **THE COURT:**  So this is ultimately your information,

7     you don't need to ask my permission, but you need to let me

8     know when you think something is confidential, and then I'll

9     ask Plaintiff whether they have any objection to sealing a

10    portion of the transcript.  It's going to complicate any effort

11    to obtain a copy of the transcript, but I defer to you, if you

12    need to do it; otherwise you can point to particular pages on

13    the sealed exhibit and I can review it silently, you are free

14    to do any mechanism you wish.

15         **MR. LERNER:**  Thank you, Your Honor.  So I will refer

16    you to -- then I will refer to Exhibit 28 of my Declaration,

17    and specifically Page --

18         **THE COURT:**  (indisc.)

19         **MR. LERNER:**  I'm sorry, Your Honor, do you need the

20    Docket Number?

21         **THE COURT:**  Help me, it would be helpful and, again,

22    it gets back to something that gets very complicated when we

23    have some sealed and some unsealed, and I can't tell by Exhibit

24    Number whether it's in a sealed portion of a Declaration, which

25    is filed differently so, yes, a Docket Number would be helpful.

Exhibit B
-28-

1          MR. LERNER:  Okay, it is Docket 353-2, and this is

2     Page 13, Lines 4 through 7.

3          THE COURT:  It's loading so give me a moment.

4          MR. LERNER:  I apologize.

5        (Pause)

6          THE COURT:  All right, 4 through 7 you said.  I may

7     be looking at the wrong document.  You said 353-2?

8          MR. LERNER:  Correct, Your Honor.

9          THE COURT:  Page 15?

10         MR. LERNER:  Page 13.

11         THE COURT:  13, all right.  So just to be clear are

12    you talking about the document pagination or the CM pagination?

13         MR. LERNER:  I am sorry, Your Honor, I was talking

14    about the document pagination, so this is on the document --

15    the Docket Number is Page 315.

16         THE COURT:  All right.

17       (Pause)

18         THE COURT:  All right, I'm at Page 315, Docket

19    pagination of Docket Number 353-2, and I'm looking at Lines 4

20    through 7.

21         MR. LERNER:  Okay, it begins with Paragraph 1.

22         THE COURT:  You don't have to read it if it's -- I'm

23    -- it's F1.

24         MR. LERNER:  Thank you, Your Honor.  So if you look

25    specifically at Lines 6 through 7, the last portion of that

26

1    recitation, that's what we're dealing with here is the idea of

2    the selecting between heart rate algorithms in the Apple Watch

3    product.

4            And, again, this goes back to Counsel, in their

5    papers, argued for this one that the word "the" or "a"

6    singular, refers to a single algorithm and, again, this goes

7    back to the *PMC* and *SkinMedica* case, by using the trade secret

8    you can modify it and use only a portion of the trade secret,

9    so it's not limited to just a single algorithm.

10           And I think it's -- the difference between

11   "sufficient to show" and "documents that refer or relate" in

12   this particular circumstance is "documents sufficient to show a

13   selection" would not show documents about the discussion of how

14   important it is, who presented that idea to Apple.

15           So, for example, if Lamego presented that idea that

16   is a highly relevant document that would be important showing

17   misappropriation; whereas, if somebody else presented the idea

18   it may be exculpatory.  And so that's why I think "refer or

19   relate" is more specific, or more important when we're talking

20   about a specific request.  Whereas, Request 63, like you said,

21   was trying to figure out the universe so we could try to refer

22   to the specific algorithms at issue.

23           64 is more directed towards specific trade secrets

24   and trying to get documents to figure out where that idea came

25   from.

27

1          And with that I'll conclude if Your Honor doesn't

2  have any other questions.

3          **THE COURT:**  Well, why -- when is your discovery

4  cutoff?  I know we've got half the case stayed, but you still

5  have a discovery -- you still have an Operating Scheduling

6  Order.  Is it July -- July 5th, is that what my memory is?

7          **MR. LERNER:**  Correct, Your Honor.

8          **THE COURT:**  You're nodding heads, but I want to --

9  okay.  So we are now -- and I want to get you guys a ruling as

10  quickly as possible, we're now May -- what are we?

11          **MR. POWELL:**  20th.

12          **THE COURT:**  20th.  So it would be tight, but you have

13  time to propound a more narrowed Request.

14          All of these rulings would be without leave to filing

15  or serving Supplemental Requests, but I have heard the

16  argument.  I'm still of the view that when we're dealing with a

17  situation covering a massive amount of both -- I did this once

18  before, of time -- I say "physical time," which, of course, is

19  an oxymoron, but a massive amount of time, and 39 custodians,

20  and I'm taking that into account.  I know that's not what Apple

21  wanted, they wanted it, what, 12 or 13 and it's 39.

22          So any baseball fans here?  Yeah.

23          I grew up a Yankees fan, never liked the Red Sox,

24  hated the Red Sox, this expression they used to have about the

25  Green Monster in Boston was "The Green Monster giveth and the

28

1    Green Monster taketh away."  Sometimes it's (indisc.), a fly

2    ball is a home run, sometimes a line drive that would be out in

3    any other ballpark as a single.

4          You've got most of what you wanted on your number of

5    custodians, but that also educates me and is part of my

6    analysis here for how difficult it would be to search for some

7    of these things, and this one, it's that "refer or relate"

8    language with 39 custodians, especially considering you're

9    getting and are going to be ordered to get documents sufficient

10   to show the heart rate algorithms.

11         My hope is that can be done quickly and I'm going to

12   have some pretty quick turnarounds on these, and if you want to

13   serve a follow-up Request when you see some algorithms that

14   look like something you're interested in and you want to get

15   information about how that algorithm was selected you can do a

16   targeted follow-up request rather than a scatter shot request

17   like this that has that.  There is a narrowing, but then it

18   expands so that's my thinking.

19         I'll let Mr. Lerner, who has been sitting as I have

20   been discussing, and you can talk about 63 or 64, but I hope

21   this gives you some insight into where we're going to be going

22   on a lot of these individual requests.

23         **MR. LERNER:**  I think I understand Your Honor's points

24   given the amount of time Your Honor has devoted to this

25   already.  I don't have more on these two unless, for some

Exhibit B
-32-

29

1  reason, you were inclined to revisit your inclination on 64,

2  I'm fine keeping going.

3          **THE COURT:**  All right.  So let's turn to 65, and

4  these are kind of a group because they are similar.

5          "All documents and things that refer or relate to

6          power consumption by any heart rate algorithm used in

7          any of the Apple Watch products."

8          We've got the same issue here.  There's a narrowing,

9  okay, power consumption and, again, if it were "sufficient to

10  show power consumption," "sufficient to show how the selection

11  of power consumption for the heart rate algorithm," much more

12  narrow, I think.  But with 39 custodians covering how many

13  years?

14          When did Mr. Lamego -- was it 2013 or 2014 that he

15  arrived at Apple?

16          **MR. LERNER:**  I believe he arrived in early 2014.

17          **THE COURT:**  Okay.  And, again, you're -- we're going

18  up through the current IPhone 6, that's a lot of time, that's

19  eight years, that's a lot of records, 39 custodians over,

20  again, what I would consider --

21          And don't take it as a critique that I'm saying it's

22  a scatter shot, that's a loaded term, I don't want to see that

23  referenced in some future filing that I accused Plaintiffs of

24  scatter shot --

25          **MR. LERNER:**  (indisc.)  I won't do it.

47

1   separate special master appointed to handle those issues.

2           **MR. LERNER:**  Then I apologize I didn't answer your

3   question then.  We --

4           **THE COURT:**  Well, you did answer it.  You said you

5   don't know, and I respect that.  I didn't push Mr. Powell on

6   it.  And if you want to tell me your thoughts, you're welcome

7   to.

8           **MR. LERNER:**  I had thought perhaps cutting down the

9   size of what's being submitted would help.  If Your Honor's

10  direction is go work it out to get a special master, we'll talk

11  with them again about who we'd agree on and try and get it

12  sorted out for you.

13          **THE COURT:**  Well, I can't appoint a special master.

14  I see that --

15          **MR. LERNER:**  Understood.

16          **THE COURT:**  -- you did agree to -- at least the two

17  judges you agreed to, retired judges, Judge Segal and

18  Judge Guilford, I had Judge Guilford appointed as a special

19  master in another case from Judge Staton, and Judge Segal I

20  think would be a great person with all kinds of experience to

21  help you work through a lot of the issues here.  I don't know

22  what her availability is.

23          But I'm at a bit of a loss after putting in as much

24  time as I did on these two motions to hear that I've got two

25  more coming.  And the fact that something is six or eight pages

Exhibit B
-34-

1   on one side, I don't know what's coming from the other side.

2   And I had a 240-page joint stipulation not too long ago that

3   was not difficult at all to rule on.  Sometimes I have six-page

4   apex-type depositions that are incredibly complex and require a

5   great deal of thought.

6         And -- again you're getting too inside baseball here.

7   Law clerks are great.  Law clerks who have never practiced I

8   don't think are able to handle a lot of the discovery disputes

9   as easily as someone who has practiced.  So -- I don't want to

10   waste any more time.  You don't have positions on it.  We're

11   going to proceed, but it can't go on like this and I don't know

12   what to do.

13         I think we had -- and maybe it was that same phone

14   call or maybe it was on a subsequent Order, but I on one issue

15   offered to have an informal, made myself available to have an

16   informal telephone call about whatever the issue was, and my

17   mind is forgetting what that was, and I wasn't taken up on it.

18         I don't know if that's going to help, but things like

19   spoliation or spolation, that's not one I can rule on on the

20   fly and that's not one anyone can.  But if we -- if this is the

21   reality of what we have, we're going to have to come up with

22   another way or a better way to handle it that takes into

23   account that this is a public office that serves all sorts of

24   people, not just one case.

25         So, let's proceed on with -- we left off at Request

1   Number 65.  I read it into the record.  I gave some tentative

2   thoughts to you, Mr. Powell.  It's the refer or relate and any

3   ruling would be without prejudice to you or your client serving

4   a follow-up request for production.

5           And I'm going to throw this out there.  I don't mind

6   seeing request for production number 850.  That in and of

7   itself tells me nothing, because 850 carefully crafted requests

8   for production are much better than ten, you know, give me

9   every single document referring, relating, concerning, having

10  anything to do with some general topic.  So, I don't mind if

11  the numbers get up there high.

12          What I mind is trying to figure out how on an eight-

13  year time period with I understand there's still a dispute on

14  up to 39 custodians, and possibly more if a showing is made

15  that it's warranted, how refer or relate to documents are

16  needed.  You know, I don't -- the difficulty is I don't have on

17  the flip side the evidence of the burden.  But on this one,

18  when I see refer or relate to it causes me concern and we'll

19  continue to hear that as we go through this.

20          But let me hear from you, Mr. Powell.  I don't

21  actually recall if you had an opportunity to be heard on 65.

22          **MR. POWELL:**  Sure, Your Honor.

23          So, just a few things.  And I recognize what you're

24  saying about it being -- this language being a bit broad.  And

25  part of that is because we're in a situation where we don't

1   have discovery yet and we've gotten very little in response.

2          And so, there is one option that I wanted to mention

3   and it's something that we are discussing about the schedule

4   with the other side.  If the schedule was extended to allow

5   sufficient time to get some discovery and then propound more

6   requests that are narrower, then that would be something that

7   we would certainly be interested in.

8          The problem is we've been -- on this particular

9   request we've been negotiating for about four months now and

10  we're six weeks out from the close of fact discovery.  So, I

11  apologize, and I really did not want to bring this sort of

12  motion to you.  I just did not think that we had any other

13  choice because we'd already gone four months of negotiations,

14  multiple meet and confers.  I think there were two dozen

15  letters on these requests alone back and forth.

16         And so that's why we felt like we had no choice.  If

17  there was more time in the schedule, I would be happy to get

18  some discovery and try to propound narrower requests to try to

19  alleviate some of the burden on the Court.  But that's -- it's

20  this crunch in the schedule that is part of the problem here.

21         And so that I think would also alleviate some of the

22  problem on some of these motions.  Again, there is a crunch in

23  the schedule and that's why some of these motions are getting

24  filed now, because we have frankly no other choice with the

25  schedule.

Exhibit B
-37-

1         THE COURT:  I am not casting any aspersion on filing

2    motions.  All right?  Let's get back to Number 65.

3         MR. POWELL:  Okay.  So, on Number 65 specifically,

4    power consumption is an advantage of the trade secret

5    specifically mentioned.  It's in our interrogatory responses

6    and that's why this is a topic.  Again, it's the final decision

7    of how a product is implemented that's sufficient to show and

8    that certainly gets you a starting point, and that's Number 63.

9    But that's not going to show you who suggested a given change

10   to help power consumption.  It's not going to show you why

11   power consumption is so important.  All of those things are

12   directly relevant to damages and to misappropriation in the

13   case.

14        This is a critical issue directed towards an

15   advantage of a trade secret and frankly if all we get is

16   discovery that's sufficient to show --

17        THE COURT:  Tell me a little bit about power

18   consumption.  How -- what's the nature of it?  How -- I walk

19   into this, again is why I think a special master is going to be

20   great for you, I don't know anything about the Apple Watch, I

21   don't know anything about pulse oximetry, I don't know anything

22   about heart rate algorithms, and I don't know anything about

23   how a heart rate algorithm is beneficial to power consumption.

24   Okay?  This is a different language.

25        So -- but what I do know is all documents and things

Exhibit B
-38-

1    that refer or relate to.  That I understand.  Well, those words

2    I've seen before.  When you have that massive amount of

3    opening, an opening salvo, using the piping example, you start

4    out here.  I don't know how narrow power consumption by heart

5    rate algorithms, but it gets back to, and I'm telling this to

6    Apple, using 39 custodians, if those aren't being searched I

7    may have to rethink some of this stuff about whether it is more

8    reasonable to, if we're only looking at 12 custodians, that

9    maybe I'm misreading this.  So, maybe we need to wait for

10   whatever further issues might be coming up on this custodian

11   issue to rule on some of these things.

12          What do you think about that, Mr. Powell?

13          **MR. POWELL:**  Well, I completely understand, Your

14   Honor.  I don't think -- it's not going to be 12.  Right?  I

15   think the parties have agreed to roughly 28 or 29.  Mr. Lerner

16   can correct me if I'm wrong.

17          But on the power consumption, I could direct Your

18   Honor, if you have the trade secret statement up on your screen

19   I could direct you.  On that same page, if we look down at

20   Number 3 on that same page, Page 315 of Docket 353-2, and I'm

21   looking at the second line after the first "and."  You can see

22   that phrase there.

23          **THE COURT:**  I'm sorry, say that again.

24          **MR. POWELL:**  The second line of Paragraph 3.

25          **THE COURT:**  Paragraph 3, second -- so what -- on the

53

1    litigation line, what --

2           **MR. POWELL:**  Oh, I'm sorry.  I'm sorry.  Line 12 of

3    the pleading.

4           **THE COURT:**  All right.

5           **MR. POWELL:**  I'm sorry, Line 13 of the pleading.  And

6    if you look after the word "and," that's what I would be

7    referring to here.  And so that's a critical aspect of this

8    trade secret.

9           And again, I recognize what Your Honor is saying

10   about refer or relate and that language is language both

11   parties have used and both parties have agreed to produce on,

12   and I think the understanding is the reason --

13          **THE COURT:**  The issue is when you come to court and

14   want on 89, or what did I say, 92 requests -- I'm holding

15   Apple's feet to the fire for not giving the evidence when

16   they're saying undue burden or lack of proportionality.  But

17   I'm holding your feet to the fire that -- I'm hammering nails.

18   I look at the words.  You may have reached an agreement on

19   other ones that you're going to use your best efforts for refer

20   and relate to, but if I make an order, it's an order of the

21   Court that Apple has to produce every -- all documents and

22   things that refer or relate to power consumption.  To me, my

23   gut instinct on that is that's a pretty big task.

24          Now again, now we're at 28 or 29, I thought we were

25   at 39, maybe we were at 12, we have 28 or 29 record custodians,

Exhibit B
-40-

54

1  refer or relate to power consumption by any heart rate, and

2  it's any heart rate algorithm used in any Apple Watch.  You get

3  some more information, you tie it to some specific algorithms

4  and/or specific products that those algorithms are used in,

5  much easier for me to say, okay, you've got to produce that

6  unless you give me some evidentiary showing that it's going to

7  take you 25 years because our search parameters came up with

8  50 million documents.  Okay?

9       I don't have any of that.  What's what I usually see.

10  And that's why I'm surprised.  All right?  If I'm going to get

11  something where people -- the parties have put in this much

12  time, money, and effort, that's what I usually see.  Instead,

13  I'm left -- you're left with poor old government major, me,

14  trying to figure out how burdensome, how proportionate to the

15  needs of the case these things are.  And you get -- that's what

16  you get.

17       So, I'm reading it.  This one looks pretty broad to

18  me.

19       **MR. POWELL:**  Can I say one other thing, Your Honor?

20  And then I will stop.

21       I fully understand and the only reason why I'm

22  engaging so much on this one is I think it will be an issue

23  throughout the day.  There are a lot of requests that say refer

24  or relate.

25       **THE COURT:**  Right.  There sure are.

1          **MR. POWELL:**  Yes.  And part of the reason is, like I

2     said, that's been the parties' practice and we've never

3     expected every single document, just a reasonable search.  And

4     all I wanted to say is if there is something -- I know you

5     don't want to compromise and try to narrow individual requests

6     and I'm not asking that --

7          **THE COURT:**  You know, what, that's what the meet and

8     confer process is for.  As a matter of fact, it's in Local

9     Rule 37.  That's one of the things that's supposed to go in the

10    joint stipulation, is, hey, how did you propose to resolve

11    this?  Just -- I'm glad you're here.  I think you were on the

12    phone last time.  Not the door Maria's been walking in, the one

13    over there with the giant lock on it, okay, that's what

14    happens, that's the logical endpoint of someone -- when I say

15    you're ordered, Apple, to produce all documents and things that

16    refer or relate to power consumption by any heart rate

17    algorithm used in any of the Apple Watch Products, okay, there

18    could be lots of steps along the way.  Well, you could have --

19    you don't produce it, you could have issue sanctions, you know,

20    but ultimately it's a Court order.  And I have had people walk

21    in through that door and be led out through that door.

22          You're asking, so what you do amongst yourselves is

23    great.  I encourage it.  Keep doing it.  But when you walk into

24    court I can pull down your proposed order that you submitted to

25    me.  It's we want an order that Apple produce all responsive

56

1    documents without objection to Request Number 65 within

2    whatever days you asked for.  If you want that order, you'd

3    better come in with something that's sufficiently narrowly

4    crafted, and that's what Rule 34 requires, with reasonable

5    particularity for me to feel comfortable in what I see is the

6    logical endpoint of that order.  All right?

7            So, I appreciate that you folks are working together

8    on refer or relate to.  I wish you weren't -- you know, however

9    many meet and confers later, sometimes the answer to a problem

10   with the meet and confers, you look at your own request and

11   say, hmmm, all right, they're fighting me on this, you know

12   what I'm going to need to do, I'm going to need to serve a more

13   narrowly crafted one, knowing that this is going to wind up in

14   a motion before the judge, so I'd better make sure that it's

15   with reasonable particularity, as required by Rule 34.

16           So, I am not unmoved.  I love the -- what's the Latin

17   phrase for that?  There's a Latin phrase for the double

18   negative.  I'm not unmoved and I'm not unsympathetic to your

19   plight, but, you're right, we're going to come up on this a

20   lot.  That's why I kind of wanted to move off of 63, because I

21   knew Mr. Lerner might change his view of some of the things

22   that I'm going to have to say as we go forward.

23           And if you get your extension, all the better.

24   Because ultimately if Apple doesn't do what they're going to

25   need to do on 63, there's going to be a reckoning for them on

```
 1   all these other ones when you serve your follow-up discovery
 2   requests and you come back and say, hey, we did what you asked,
 3   Judge Early, but we got garbage from Apple, so we narrowed it a
 4   little, we got rid of refer or relate to, but we can't be any
 5   more specific about what heart rate algorithms we're talking
 6   about because we got garbage from Apple in response to
 7   Number 63.  I'm going to be very sympathetic to that.
 8          Understood?
 9          MR. POWELL:  I understand, Your Honor, and I don't
10   want to overstay my welcome, I just wanted to point out one
11   thing and then I'll --
12          THE COURT:  You've got as much time as you want.
13          MR. POWELL:  Okay.  And I apologize, Your Honor, I
14   just wanted to point out that our proposed order did not ask
15   for all documents, it asked -- it did say that we wanted them
16   to conduct a reasonable and good faith search.  That's all
17   we're asking for.  And I would be willing to agree right now
18   for all of these refer or relate requests that we're going to
19   see today that this is not about every single document and we
20   just want a reasonable search.
21          THE COURT:  You put that in front of me and you're
22   asking to compel those responses.  So, yeah, of course every
23   single Rule 34 response, complicit in it is a reasonable and
24   good faith search.  But a reasonable and good faith search is,
25   in the context of 28 or 29 custodians when you factor in refer
```

Exhibit B
-44-

58

1   or relate to is not narrowly tailored, not specified with

2   reasonable particularity, and I can look at that and see that

3   it's not proportional to the needs of the case without the

4   evidentiary showing.

5           Not always going to be true here, but -- and it's --

6   you know, you'd be better -- well, I'll leave it at that.

7   Anything further?

8           **MR. POWELL:**  Understood, Your Honor.

9           **THE COURT:**  Anything further, Mr. Powell, on 65?

10          **MR. POWELL:**  No, Your Honor.

11          **THE COURT:**  All right.  Mr. Lerner, anything you want

12  to say on Number 65?

13          **MR. LERNER:**  No, Your Honor, we don't need to spend

14  more time on it.

15          **THE COURT:**  All right, Number 66.  This is -- long

16  isn't necessarily bad -- quote,

17              "All documents and things that refer or relate to any

18              testing and/or analysis of the properties and/or

19              characteristics of any of the Apple Watch Products or

20              any component of any of the Apple Watch Products that

21              relate to pulse rate detection, pulse rate

22              measurement, power consumption by pulse rate

23              detection, or power consumption by pulse rate

24              measurement, including, without limitation, testing

25              protocols, reports, results, notes, and summaries."

1          Looks pretty broad to me. Mr. Powell.  I'll hear from

2   you, though.

3          **MR. POWELL:**  Your Honor, I don't want to again

4   overstay my welcome and keep arguing the same thing on --

5          **THE COURT:**  You've got as much time as you want.

6   We're only at 11:25.

7          **MR. POWELL:**  Again, I do think that this one is

8   reasonable here and again there are very similar requests being

9   served on the other side here.

10          The issue of testing and analysis of the properties,

11   we've limited it to specific properties that are directly at

12   issue in this case.  So, we have that relate to pulse rate

13   detection, pulse rate measurement, power consumption by pulse

14   rate, or power consumption by pulse rate measurement, so we

15   have those things are specifically limited.  And then we gave

16   some examples of the types of documents we're looking for.

17          **THE COURT:**  Nothing wrong with examples.

18          **MR. POWELL:**  Right.

19          **THE COURT:**  Examples can be helpful.  I'm not holding

20   that against you.  But I am noting we've got two refer or

21   relate to.  We've got a refer or relate to and then a separate

22   relate to.  We've got multiple conjunctive/disjunctive.  You

23   know, we've got testing and/or analysis and/or characteristics,

24   and then we get back to the of any Apple Watch Products or any

25   component of any Apple Watch Products, and then that relate to

Exhibit B
-46-

172

1   the parties are putting everyone thorough and what the lawyers

2   are doing.  It's all going to be part of the future findings on

3   these things.  All right?  So forewarned is forearmed.

4           Bring me whatever disputes you can't resolve but this

5   case has taken up an awful lot of this whole chamber's time and

6   I'm really hoping not to see you as much.

7           All right?

8           **MS. SAMPLIN:**  Understood, Your Honor, thank you.

9           **THE COURT:**  All right?  Is there anything further?

10  So we'll see you back on June 3rd at 10:00 o'clock.

11          And if there's anything in the interim, let me do

12  this.  Let me ask you to file it by -- any further results of

13  any further meet and confer by a week from today, May 27th.

14  All right?

15          **MR. LERNER:**  Thank you.

16          **THE COURT:**  All right.  We are adjourned.

17      **(Proceeding adjourned)**

18

19

20

21

22

23

24

25

Exhibit B
-47-

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **May 26, 2021**

              **Signed**                                                    **Dated**

*TONI HUDSON, TRANSCRIBER*

# EXHIBIT C

DOCUMENT FILED UNDER SEAL

# EXHIBIT D

DOCUMENT FILED UNDER SEAL

# EXHIBIT E

DOCUMENT FILED UNDER SEAL

EXHIBIT F

| | |
|---|---|
| **From:** | Cheryl.Burgess |
| **To:** | Samplin, Ilissa; Fong, Oliver; Masimo.Apple |
| **Cc:** | *** Apple-Masimo; Andrea, Brian |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence |
| **Date:** | Friday, July 2, 2021 7:50:02 AM |

Ilissa,

(1) We understand that Apple will produce all trial and deposition transcripts for the named inventors on the patents that are the subject to Plaintiffs' inventorship and ownership claims (including Trevor J. Ness, Chin San Han, David I. Nazzaro, Marcelo M. Lamego, Naoto Matsuyuki, Wolf Oetting, and Steven P. Hotelling) and Plaintiffs will produce all trial and deposition transcripts for Ammar Al-Ali, Mohamed Diab, Walter Weber, and Greg Olsen.  Based on this understanding, we agree issue (1) below is resolved.

(2) We agree that, in addition to the trial and deposition transcripts covered in paragraph (1) above, each side will produce all trial and deposition transcripts for up to five additional fact witnesses related to the issues in the case.  In exchange both sides agree not to pursue further discovery on any RFPs seeking trial and deposition testimony of any fact witnesses.  Trial and deposition transcripts of expert witnesses are addressed in paragraph (3) below.  We are working on our list of 5 fact witnesses, but do not think the parties need to agree to a mutual exchange.  If Apple has already identified its 5 fact witnesses, feel free to provide your list.

(3) I understand that during the meet and confer, Apple clarified that it is not seeking expert reports or depositions that may merely discuss the Masimo Radius 7 monitor or the Masimo Radius PPG monitor in passing.  Rather, Apple seeks expert reports or depositions where the expert is providing opinions related to those products.  We will perform a reasonable search for, and produce, any non-privileged responsive documents.

(4) Your attempt to clarify Apple's RFPs 266 and 267 does not resolve the issue.  Defining the relevant product market for the Masimo Radius 7 monitor or the Masimo Radius PPG monitor is the subject of expert testimony.  If Apple would like to revise RFPs 266 and 267 to more specifically identify which expert reports or depositions it is seeking, we are willing to consider the revised requests.

Regards,
Cheryl

**Cheryl Burgess**
Partner

949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Cheryl.Burgess
**Sent:** Thursday, July 1, 2021 6:11 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>

**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Ilissa,

We will provide a response tomorrow or on Monday.

Regards,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Thursday, July 1, 2021 1:23 PM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl- I'm following up on the below, as I have not received a response.  Please confirm that you will respond before the holiday weekend.  Thank you.

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Sunday, June 27, 2021 10:59 PM
**To:** 'Cheryl.Burgess' <Cheryl.Burgess@knobbe.com>; Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl,

I write in follow-up to our meet and confer held on June 21, 2021.

(1) Apple agreed to produce all trial and deposition transcripts for the named inventors subject to Plaintiffs' inventorship claims if Plaintiffs agree to produce all trial and deposition transcripts for the alleged inventors as well.  As discussed on our meet-and-confer call, Plaintiffs have agreed, and therefore this issue is resolved.

(2) Apple proposed that each side obtain production of all trial and deposition transcripts for up to three fact witnesses related to the issues in the case (in exchange for both sides dropping their RFPs for trial and deposition testimony—with the exception of the RFPs for the inventors covered by (1) and the experts covered by (3), which would not be dropped).  On our call, you expressed Plaintiffs' desire to expand this proposal to seven witnesses per side, and then we proceeded to discuss a possible compromise at 5 witnesses per side.  In an effort to compromise and resolve this dispute, Apple will agree to each side producing all trial and deposition transcripts for up to five witnesses related to the issues in the case (in exchange for both sides dropping their RFPs for trial and deposition testimony—with the exception of the RFPs for the inventors covered by (1) and the experts covered by (3), which would not be dropped).  Please confirm by Tuesday, June 29 that we have an agreement.  We can then set a date for the mutual exchange of lists of 5.

(3) We discussed Apple's RFPs for expert testimony and materials.  You raised concerns about how Plaintiffs would search for expert witness testimony related to particular topics if those topics were only raised in passing in a certain deposition or at trial.  As I explained, we expect the parties to perform reasonable and diligent searches to identify responsive documents.  As such, we are not asking Plaintiffs to review every transcript of every expert witness that ever testified in a trade secret or patent case for Plaintiffs on the off chance that a relevant topic was raised in passing in a deposition or at trial.  I believe we came to an understanding during the call, but please let me know if we should discuss this further.

(4) Finally, you asked for clarification about Apple's RFPs 266 and 267.  In response to these RFPs, Apple is looking for testimony about the market of which the products are a part—as opposed to testimony about the markets that specifically includes testimony about the products.  I believe that addresses the question you raised on our call, but let me know if we should discuss further.

Best regards,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Monday, June 21, 2021 7:58 AM

Exhibit F
-82-

**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>;
Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian
<BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]
Ilissa,

That works.  You can use the same number I just sent.

Regards,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, June 21, 2021 7:56 AM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Fong, Oliver <OFong@gibsondunn.com>;
Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian
<BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Apologies, Cheryl, but I had something else scheduled for that time in the interim.  How about 3:30
pm PT?

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Monday, June 21, 2021 7:55 AM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>;
Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian
<BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]

Ilissa,

That time works.  We can use the following number.

Dial by your location:
+1 213 338 8477 US (Los Angeles)
+1 646 518 9805 US (New York)
Meeting ID: 910 6024 6055

Regards,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, June 18, 2021 5:40 PM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

I can be available at 1:30.  If that works, please send a dial-in.

Thank you,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Friday, June 18, 2021 4:41 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Exhibit F
-84-

[External Email]
Ilissa,

I think it would be helpful to have a call to discuss why Apple thinks producing trial and deposition transcripts for three specific fact deponents is sufficient.  Are you free Monday afternoon around 1:00 PM?

Regards,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, June 18, 2021 8:54 AM
**To:** Fong, Oliver <OFong@gibsondunn.com>; Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Hi Cheryl,

I'm following up on the attached letter.  Can we please receive a response today?

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Fong, Oliver
**Sent:** Thursday, June 3, 2021 9:52 AM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl,

Please see the attached correspondence.

Best,
Oliver
**Oliver Fong**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

---

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Thursday, May 27, 2021 2:43 PM
**To:** Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian
<BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]
Oliver,

Please see the attached correspondence.

Best,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Fong, Oliver <OFong@gibsondunn.com>
**Sent:** Thursday, May 27, 2021 9:21 AM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian
<BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl,

We are available to meet and confer at 1:00pm PDT and can use the following call-in:

Conference call-in: 866-747-5969

Room number: 2123516373

Thanks,

**Oliver Fong**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

---

**From:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>
**Sent:** Thursday, May 27, 2021 11:44 AM
**To:** Fong, Oliver <OFong@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]
Oliver,

We are available to meet and confer regarding the issues in your letter dated May 17, 2021 today between 12 AM and 2 PM or after 4:00 PM.  Please let us know if that works for you, and if so please circulate a dial in number.

Thanks,
Cheryl

**Cheryl Burgess**
Partner
949-721-2935 **Direct**
**Knobbe Martens**

---

**From:** Fong, Oliver <OFong@gibsondunn.com>
**Sent:** Monday, May 17, 2021 4:19 PM
**To:** Cheryl.Burgess <Cheryl.Burgess@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Cheryl,

Please see the attached correspondence.  Thanks.

Regards,
Oliver

Exhibit F
-87-

**Oliver Fong**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and

privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# EXHIBIT G

## DOCUMENT FILED UNDER SEAL

# EXHIBIT H

DOCUMENT FILED UNDER SEAL