JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1 Front Street, Ste. 3500
San Francisco, CA 94111
Tel.: 628.235.1124 / Fax: 628.235.1001

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION TO MODIFY THE PROTECTIVE ORDER**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>No Hearing Noticed |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  BRIAN A. ROSENTHAL, *pro hac vice*
    brosenthal@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
3  New York, NY 10166-0193
   Tel.: 212.351.2339 / Fax: 212.817.9539
4
   ILISSA SAMPLIN, SBN 314018
5    isamplin@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
6  333 South Grand Avenue
   Los Angeles, CA 90071-3197
7  Tel.: 213.229.7000 / Fax: 213.229.7520

8  ANGELIQUE KAOUNIS, SBN 209833
    akaounis@gibsondunn.com
9  GIBSON, DUNN & CRUTCHER LLP
   2029 Century Park East Suite 4000
10 Los Angeles, CA 90067
   Tel.: 310.552.8546 / Fax: 310.552.7026
11
   KENNETH G. PARKER, SBN 182911
12   Ken.parker@haynesboone.com
   HAYNES AND BOONE, LLP
13 660 Anton Boulevard Suite 700
   Costa Mesa, CA 92626
14 Tel. 650.949.3014 / Fax: 949.202.3001

15 MARK D. SELWYN, SBN 244180
    mark.selwyn@wilmerhale.com
16 WILMER CUTLER PICKERING
     HALE AND DORR LLP
17 2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
18 Tel.: 650.858.6000 / Fax: 650.858.6100

19 NORA Q.E. PASSAMANECK, *pro hac vice*
    nora.passamaneck@wilmerhale.com
20 WILMER CUTLER PICKERING
     HALE AND DORR LLP
21 1225 Seventeenth St., Suite 2600
   Denver, CO 80202
22 Tel: 720.274.3152 / Fax: 720.273.3133

23
24
25
26
27
28

**TABLE OF CONTENTS**

I.  Introduction ...................................................................................................... 1

II. Background ........................................................................................................ 2

    A. Plaintiffs File This Suit, Which Raises Trade Secret, Patent Infringement, And Patent Ownership Claims ............................................ 2

    B. Plaintiffs File Suit In The ITC Over Five Patents Not At Issue In This Action .................................................................................................. 4

    C. This Court Denies Plaintiffs' First Cross-Use Motion ............................. 4

    D. Plaintiffs Wait Two More Months Before Filing A Second Cross-Use Motion, Which Is Not Granted .............................................................. 6

III. Legal Standard ................................................................................................... 8

IV. Argument ............................................................................................................ 9

    A. Plaintiffs Have Not Shown That They Were "Without Fault" In Creating The Need For *Ex Parte* Relief ......................................................... 9

    B. Plaintiffs Have Not Shown (Or Even Argued) That They Will Suffer Severe, Irreparable Prejudice If Relief Is Not Granted ................. 11

    C. Plaintiffs Have Not Shown That They Are Entitled To A Modification Of The Protective Order ...................................................... 12

V.  Conclusion ....................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AT&T v. Sprint Corp.*,
   407 F.3d 560 (2d Cir. 2005) ................................................................................ 13

*Doe 1 v. Manhattan Beach Unified School District*,
   2020 WL 7222809 (C.D. Cal. 2020) ..................................................................... 9

*Foltz v. State Farm Mutual Automobile Insurance Co.*,
   331 F.3d 1122 (9th Cir. 2003) ..................................................................... 2, 5, 9, 12

*Immunex Corp. v. Sanofi*,
   2018 WL 11211727 (C.D. Cal. Jan. 18, 2018) ...................................................... 9

*Malch v. Dolan*,
   2018 WL 6017000 (C.D. Cal. Apr. 12, 2018) ...................................................... 10

*Mission Power Engineering Co. v. Continental Casualty Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ....................................................................... 8

*Security and Exhange Commission v. Private Equity Management Group, LLC*,
   2009 WL 10676179 (C.D. Cal. June 1, 2009) ..................................................... 10

*Shepherd v. U.S. Bank National Association*,
   2009 WL 3514550 (C.D. Cal. Oct. 26, 2009) ........................................................ 2

*Spansion, Inc. v. International Trade Commision*,
   629 F.3d 1331 (Fed. Cir. 2010) ............................................................................ 14

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ............................................................................ 13

*White v. Baca*,
   2014 WL 12696910 (C.D. Cal. 2014) .............................................................. 8, 10

**STATUTES, RULES, AND REGULATIONS**

19 U.S.C. § 1337(d)(1) .............................................................................................. 14

## I. INTRODUCTION

Plaintiffs' eleventh-hour *ex parte* application for permission to use 18 documents in the parallel ITC action—where fact discovery closed on February 23, exhibit lists were due on April 22, prehearing briefs are due on May 13, and the hearing begins on June 6—should be denied.

Plaintiffs themselves created the purported emergency that they use to justify their *ex parte* application by sitting on their hands since November 2021, when this Court instructed them to meet and confer to determine whether the parties could agree to a "***particular document*** or a particular category of documents" from this action that could also be used in the ITC action. Dkt. 570-1 (Ex. 16 at 32-35, 38, 41) (emphasis added). Although Plaintiffs filed a motion on January 20, 2022 seeking permission to use six broad categories of (irrelevant) documents, Dkt. 569, they did not ask Apple to agree to this particular list of documents until the evening of May 2, 2022 in conjunction with notice of the instant application. Had they raised this issue with Apple months—or even weeks—earlier, there would have been sufficient time for a noticed motion to be briefed and resolved by this Court prior to the date that Plaintiffs now claim (falsely) is the deadline to produce new documents in the ITC. In other words, Plaintiffs' effort to cast blame on this Court for their own last second *ex parte* application is unfair and incorrect. Plaintiffs could—and should—have acted sooner, especially since all but one of the 18 documents were produced by November 2021 (the other produced on January 7, 2022).

In any event, Plaintiffs cannot show any prejudice if this Court declines to grant their application because it is too late to use any of the 18 documents in the ITC action. The cut-off for fact discovery in the ITC case was February 23. The deadline for the parties to bring motions to compel fact discovery in the ITC was March 4. Furthermore, the last day for the parties to exchange exhibit lists was April 22, and trial is now just weeks away. No procedural mechanism exists in the ITC schedule for Plaintiffs to insert brand new materials into the case at this late stage.

Finally, Plaintiffs cannot show that they have any real chance of succeeding on the merits. The documents that they seek—internal Apple communications regarding hiring and business acquisitions, and documents regarding the technology at issue in this case—are not relevant to the ITC action and their use would accordingly not ensure that "a substantial amount of duplicative discovery will be avoided." *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). Indeed, their use would eliminate ***no*** otherwise duplicative discovery, as discovery in the ITC is long over. And if the 18 documents were even considered marginally relevant, "the policy of avoiding duplicative discovery" would be substantially outbalanced by "the countervailing reliance interests" of Apple in the current Protective Order, *id.* at 1133, which this Court has already found to be weighty, Dkt. 570-1 (Ex. 16 at 11) (noting that Protective Order in this case is "unique" and "Apple's reliance interest on it … is real").

In sum, to justify the extraordinary remedy of *ex parte* relief, applicants must "demonstrate why they should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *See Shepherd v. U.S. Bank Nat'l Assoc.*, 2009 WL 3514550, at *2 (C.D. Cal. Oct. 26, 2009). Because Plaintiffs have not met their burden—and instead are improperly attempting to use the *ex parte* mechanism "to save the day [since] they have failed to present requests when they should," *id.*—their *ex parte* application should be denied.

## II. BACKGROUND

### A. Plaintiffs File This Suit, Which Raises Trade Secret, Patent Infringement, And Patent Ownership Claims

Plaintiffs filed suit in this case in January 2020. *See* Dkt. 1. The current, Fourth Amended Complaint raises three types of claims: (1) misappropriation of trade secrets under California's Uniform Trade Secret Act, (2) correction of inventorship and/or ownership of Apple patents and patent applications based on their purported incorporation of Plaintiffs' inventions and trade secrets, and (3) infringement of a dozen

patents by Apple products including "the Apple Watch Series 3[/4] and later devices." *See* Dkt. 296-1 at 67, 71, 75.

On October 13, 2020, Judge Selna stayed all twelve of Plaintiffs' patent infringement claims pending Patent Office resolution of Apple's petitions for *inter partes* review. Dkt. 222 at 1. Judge Selna did not stay the trade secret and correction of inventorship/ownership claims, and thus discovery has proceeded only as to those claims. To date, Apple has produced more than 225,000 documents, amounting to 2.4 million pages of material.

Many of the documents and responses Apple has provided in discovery have been designated Protected Material under the Court's Protective Order. As relevant here, Section 5.1 of the Protective Order states: "All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation." Dkt. 67 at 6.

As this Court has explained, "this protective order is unique." Dkt. 570-1 (Ex. 16 at 10-11). While many protective orders are just a few pages of boilerplate language, the order in this case is "very detailed, very comprehensive." *Id.* The reason for "the very specific, heavily litigated, and otherwise carefully crafted terms of this protective order … is that the technology underlying the trade secret claims is highly, highly, highly sensitive" to Apple and Plaintiffs. *Id.* at 9; *see also* Dkt. 72-1 at 3 (Apple explaining that because "this litigation will involve some of Apple's most valuable and highly confidential information," the parties negotiated for "three months" over the protective order's terms). Notably, however, there was no dispute over the quoted passage from Section 5.1. Rather, "the parties agreed and it was stipulated that … any documents designated under the protective order were only to be used in the context of this litigation." Dkt. 570-1 (Ex. 16 at 8); *see also* Dkt. 61-2 at 91 (redline comparing Plaintiffs' and Apple's proposed protective orders).

### B. Plaintiffs File Suit In The ITC Over Five Patents Not At Issue In This Action

In June 2021—roughly one year after the protective order was entered—Plaintiffs filed a complaint in the ITC alleging that Apple had infringed five of their patents. Dkt. 570 ¶ 3; Dkt. 570-1 (Ex. 12 at 14-28).

The ITC action differs from the district court action in a number of important respects. First, the patents are different: None of the patents asserted in the ITC matter is asserted in this case. Second, the legal claims are different: The ITC matter does not involve any trade secret or correction of ownership/invention claims. Third, the accused products are different: The ITC matter targets Apple Watch Series 6 and 7, while this case also includes Series 3-5 and SE. Finally, the requested remedies are different: The ITC matter seeks only injunctive relief, while this case also asks for damages.

The ITC's Investigation focuses on two issues: (1) whether Apple infringes the five asserted patents by importing the Apple Watch Series 6 and other "wearable electronic devices with light-based pulse oximetry functionality" and (2) whether Plaintiffs have established an industry in the United State practicing those patents. *See* Dkt. 570-1 (Ex. 13 at 2). The Investigation was instituted on August 13, 2021, *id.* at 3, and fact discovery closed on February 23, 2022.

As part of its production in the ITC, Apple reviewed documents produced in this case and identified approximately 64,000 pages from the district court production that it re-produced in the ITC action, such as, for example, technical documents about aspects of Apple Watch 6 and 7 design. Dkt. 570-1 (Ex. 16 at 18-19). As Apple's counsel explained to this Court at the November 18, 2021 hearing, this production demonstrates that Apple is "not trying to prevent relevant documents and information from being accessed in the ITC … we ourselves have produced them." *Id.*

### C. This Court Denies Plaintiffs' First Cross-Use Motion

On October 19, 2021, Plaintiffs asked this Court to modify the Protective Order to permit *all* material produced in this case to be used in the ITC action. *See* Dkt. 506 at 1.

This Court rejected Plaintiffs' request during a nearly one-hour hearing on November 18, 2021. The Court explained that under *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003), the mere fact that "there's any overlap in the issues or the discovery at issue between … two cases" does not establish that material covered under a Protective Order in one case is relevant to the other. Dkt. 570-1 (Ex. 16 at 7). The Court also noted that the "very specific, heavily litigated, and otherwise carefully crafted terms of this protective order" was very different from the "three-pages long and … for lack of a better term, pro forma" protective order at issue in *Foltz*. *Id.* at 9-10. Based on these "unique" aspects of the Protective Order, this Court concluded that Apple's "reliance on it … is real" and noted that it was taking the reliance "element of the *Foltz* balancing … very seriously." *Id.* at 11.

At the conclusion of the hearing, this Court explained that it was "deny[ing] the motion without prejudice" in order to give Plaintiffs the opportunity to (1) "figure out what you think might be relevant [in the ITC action]" and then (2) meet and confer with Apple regarding a narrower request to modify the protective order—e.g., "a particular document or a particular category of documents." Dkt. 570-1 (Ex. 16 at 32-35, 38, 41). Apple agreed that if Plaintiffs "want to come to us and say, 'Hey, we have identified—these 20, these 50, these 100—documents [and w]e think they're relevant to the ITC case,'" Apple stood ready to meet and confer in good faith. *Id.* at 35.

Plaintiffs' counsel declined the Court's suggestion to hold the meet-and-confer the same day as the hearing, which Apple had been willing to do. Dkt. 570-1 (Ex. 16 at 36). Rather, Plaintiffs' counsel explained that "we will need to identify the [relevant]

1 documents first" before Plaintiffs would be ready to meet and confer—a process that
2 they "guess[ed]" they could complete within 10 days. *Id.*

### D. Plaintiffs Wait Two More Months Before Filing A Second Cross-Use Motion, Which Is Not Granted

Plaintiffs took no action for six days. Then, on the day before Thanksgiving, they sent a letter asking Apple to "identify [all] the documents from the district court litigation" that had been produced in the ITC action. Dkt. 570-1 (Ex. 17 at 1). That was not what this Court had urged Plaintiffs to seek, and Plaintiffs neither cited any authority supporting this request nor provided any explanation for why they could not prepare this information themselves. *Id.* When pressed by Apple on both points, Plaintiffs had no answer. *See* Dkt. 570-1 (Ex. 18 at 2-4).

In any event, although Apple "disagree[d] that Plaintiffs are entitled to an overlay to determine what documents Masimo contends are relevant to the ITC"—particularly because "Judge Early made clear that [Plaintiffs] could review the district court production for purposes of meeting and conferring with Apple"—Apple agreed to produce the requested information as an accommodation. *See* Dkt. 570-1 (Ex. 18 at 2). Apple made its offer on Monday, December 20. *Id.* at 1. Plaintiffs did not respond to confirm agreement until Thursday, December 23; Apple provided the requested information the same day. *Id.*

After receiving the overlay document, Plaintiffs inexplicably took no action for three weeks. On January 13, Plaintiffs sent Apple a list of six broad categories of documents they proposed for cross-use, including, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As examples of what fell into these categories, Plaintiffs listed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████████████████████
2 ████████████████
3    Apple agreed to meet and confer on January 18, two business days after receiving
4 Plaintiffs' letter. Dkt. 572-2 (Ex. 20 at 1). On January 19, Apple sent Plaintiffs a
5 detailed, six-page letter explaining its objections to each category and offering to agree
6 to cross-use of many of the specific documents cited in Plaintiffs' letter. *Id.* at 1-6.
7 ████████████████████████████████████████████████████████
8 ████████████████████████████████████████████████████████
9 ██████████████████████████████
10    On January 20, Plaintiffs filed its second cross-use motion. Apple's opposition
11 pointed out that Plaintiffs' motion both (1) largely repeated the points raised in the first
12 cross-use motion, which this Court had rejected and (2) was filed at what even then was
13 the last minute, as the motion was scheduled to be heard just *six days* prior to the close
14 of fact discovery in the ITC matter. Dkt. 583-1 at 1-2. Apple also emphasized that it
15 had stood ready to consider Plaintiffs' cross-use proposals regarding specific documents
16 since the original November 18, 2021, hearing and that Plaintiffs had failed to make
17 requests on a document-by-document basis during that time. *Id.* at 1-2, 20.
18    This Court vacated the hearing on Plaintiffs' motion, which had been scheduled
19 for February 17. Dkt. 603. In the intervening time, the deadline for ITC discovery
20 passed, as did the deadlines for motions to compel and to exchange exhibit lists in the
21 ITC. The ALJ's Ground Rules make clear that the parties' exhibit lists are required to
22 include *all* material a party intends to use for any purpose, including impeachment. Ex.
23 B.
24    Plaintiffs did not reach out to Apple on the cross-use issue again until 6:58pm PT
25 on Monday this week, when they stated that they intended to file the instant motion if
26 "Apple refuses to allow cross-use" of 18 documents. Ex. A. All but one of the 18
27
28

documents Plaintiffs requested were produced by November 2021; the remaining document (APL-MAS_01853759) was produced on January 7, 2022.

### III. LEGAL STANDARD

Because "*[e]x parte* motions are rarely justified," a party moving for *ex parte* relief must show both that (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) it is "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490, 492 (C.D. Cal. 1995). Put differently, "filing an *ex parte* motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Id.* at 492.

Irreparable prejudice is judged on a sliding scale, meaning that a party must either show that "the threatened prejudice would … be severe" or that "the underlying motion has a high likelihood of success on the merits." *Mission Power Eng'g*, 883 F. Supp. at 492.

"To show that the moving party is without fault … requires [an] explanation" for why there is a crisis. *Mission Power Eng'g*, 883 F. Supp. at 493. As particularly relevant here, "merely showing that trial is fast approaching and that the opposing party still has not" produced "crucial" discovery "is insufficient to justify *ex parte* relief." *Id.* Rather, "[t]he moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id.*; *accord White v. Baca*, 2014 WL 12696910, at *2 (C.D. Cal. 2014) ("[A] party seeking the extraordinary remedy of *ex parte* relief must show that it used the entire discovery period efficiently and could not have obtained the sought-after discovery earlier.").

On the merits, a litigant that moves to modify a protective order to obtain protected materials for use in another case must satisfy a two-step test. *First*, it "must

demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). This means that the protected materials must be "sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided." *Id*. *Second*, "before deciding to modify the protective order, the court that issued it must consider other factors in addition to … relevance,"—i.e., weighing "the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133. Reliance interests are particularly strong where (1) the "Protective Order specifically prohibits the use of confidential discovery produced in this action for any purpose other than this litigation," and (2) the party opposing modification is "involved in litigation with" an opposing party that considers itself to be a direct competitor. *Immunex Corp. v. Sanofi*, 2018 WL 11211727, at *2 (C.D. Cal. Jan. 18, 2018).[1]

## IV. ARGUMENT

### A. Plaintiffs Have Not Shown That They Were "Without Fault" In Creating The Need For *Ex Parte* Relief

Plaintiffs cannot satisfy the threshold requirement to show that they did not create the purported "crisis" that necessitated filing their *ex parte* application. Plaintiffs have been seeking permission to use documents from this case in the ITC matter for nearly six months. They could have asked Apple for the 18 specific documents at issue here at least by early January 2022 and then filed a properly noticed motion if Apple did not agree to cross-use. Indeed, had Plaintiffs noticed a motion "even a week earlier," this issue could have been heard and resolved on May 26, 2022—eleven days before the ITC deadline they cite in their motion. *See Doe 1 v. Manhattan Beach Unified Sch. Dist.*,

---

[1] Apple has previously refuted Plaintiffs' suggestion (at 3) that "[t]he required showing [of relevance] is not high." *See* Dkt. 583-1 at 8-10. Indeed, this Court has already rejected a reading of the case law under which "any overlap" in the issues on discovery between two proceedings satisfies the relevancy requirement. *See* Ex. 570-1 (Ex. 16 at 7).

2020 WL 7222809, at *2 (C.D. Cal. Oct. 30, 2020) (denying application where "had Plaintiff [made its discovery request] even a week earlier, it may have been possible for the parties to meet and confer … without an *ex parte* application"); *see also SEC v. Private Equity Mgmt.*, 2009 WL 10676179, at *2 (C.D. Cal. June 1, 2009) (finding *ex parte* application "improper[]" where the moving party delayed just twelve days before filing).

Plaintiffs' primary explanation for the delay is that their second cross-use motion remains pending before this Court. App. 9. But that motion was fully briefed three months ago, and this Court's order vacating the argument date made no promises as to when a written opinion would issue. To suggest as they have that this Court is somehow the reason for the Plaintiffs' *ex parte* application is both unfair and incorrect. Plaintiffs identify no reason why they felt it necessary to wait months before acting or why they could not have raised precisely the same cross-use request with Apple months and months ago—if not at least weeks ago. *See White*, 2014 WL 12696910, at *3 (denying application where seeking to compel attendance at deposition where moving party scheduled the deposition too close to the discovery cut-off to allow adequate time for motion practice).[2]

Plaintiffs' suggestion (at 9) that the second cross-use motion *was* their attempt to raise the issue in this motion through normal channels is—to put it charitably—false. The second motion raised an entirely separate issue from the current, more limited request: Whether Plaintiffs could use a wide array of documents that fell into six broad categories (categories whose metes and bounds were to be set by Plaintiffs). Regardless of whether this Court entered a ruling approving the use of those categories, this Court previously made clear that Plaintiffs could ask Apple for specific documents at any time.

---

[2] This distinguishes *Malch v. Dolan*, 2018 WL 6017000 (C.D. Cal. Apr. 12, 2018), Plaintiffs sole authority on this point. There, the precipitating act for the application (service of a notice of deposition) occurred three weeks before the close of discovery, making it impossible for the moving party to bring a normal motion. *Id.* at *2. Here, Plaintiffs could have filed a properly-noticed motion at any time after February 16.

*See* Dkt. 570-1 (Ex. 16 at 37) (suggesting it would be permissible for Plaintiffs to say "'Here's the documents we want'" as part of subsequent meet-and-confer process). Or, as this Court also pointed out, Plaintiffs could have moved for the production of documents in the ITC action itself. *Id.* Plaintiffs did neither, and thus have no one to blame but themselves for their current situation.

### B. Plaintiffs Have Not Shown (Or Even Argued) That They Will Suffer Severe, Irreparable Prejudice If Relief Is Not Granted

Remarkably, Plaintiffs fail to even address the prejudice requirement.[3] This is probably because Plaintiffs will not suffer *any* prejudice—much less severe prejudice justifying *ex parte* relief—if they do not receive permission to use the 18 specified documents in the ITC action for a simple reason: It is too late for them to make any use of the documents in that proceeding. The fact discovery cut-off in the ITC action was February 23, 2022, and the parties exchanged their final exhibit lists nearly two weeks ago, on April 22. *See* Ex. C. The ITC scheduling order includes no procedural mechanism that would allow them to put the 18 documents in front of the Administrative Law Judge.[4] Plaintiffs themselves acknowledged as early as mid-November last year that "we [] have a very short time line in the ITC" and sought to "expedite the meet-and-confer process" because even a delay of a few days in resolving cross-use disputes would create difficulties in the ITC proceeding. Dkt. 570-1 (Ex. 16 at 35-36). Their new

---

[3] This silence is particularly glaring because Plaintiffs filed an *ex parte* application in front of Judge Selna two days ago that expressly addressed why they would be prejudiced if relief was not granted. *See* Dkt. 685 at 2.

[4] While the ITC schedule lists May 23, 2022 as the date by which the parties must "[s]ubmit proposed exhibits to the Administrative Law Judge," Ex. C, that is merely the deadline to transmit the exhibit lists to the ALJ. The parties are not generally permitted to meaningfully edit their exhibit list after the April 22 deadline.

position—that they can insert 18 irrelevant documents into the ITC proceedings at any time before trial, App. 8—is not credible.[5]

Regardless, as explained in more detail below, even if there was some way for Plaintiffs to make use of the 18 documents in the ITC action, Plaintiffs' inability to do so is hardly prejudicial because the documents are not relevant to that proceeding. See *infra* pp. 12-14.

### C. Plaintiffs Have Not Shown That They Are Entitled To A Modification Of The Protective Order

Plaintiffs have failed to establish either that (1) the documents they seek are relevant to the ITC action within the meaning of *Foltz* or (2) the prejudice to Apple is from modifying the protective order is outweighed by avoiding duplicative discovery.

**1. Relevance.** None of the 18 documents that Plaintiffs seek overlaps with the issues in the ITC matter (and thus would establish that modifying the protective order with regards to these documents would avoid a substantial amount of duplicative discovery). Rather, the documents Plaintiffs have asked for involve (1) Apple's employee hiring practices, (2) a potential business collaboration between Plaintiffs and Apple, and (3) the technology that is at issue in this case, but not accused in the ITC action.

In any event, to the extent that Plaintiffs believed that the 18 documents are relevant to the ITC action, they should have sought them at the proper time during those proceedings. As *Foltz* itself explained, it is a "correct … legal principle[]" that "'a collateral litigant has no right to obtain discovery materials that are … immune from *eventual discovery* in the collateral litigation.'" 331 F.3d at 1134 (emphasis added). Because discovery has closed in the ITC action, and the deadline for motions to compel

---

[5] Plaintiffs' assertion (at 1) that they have "no way of knowing exactly what Apple will argue at trial" is also incorrect. The parties have served extensive contentions, voluminous expert reports, conducted dozens of depositions, and next week will serve prehearing briefs hundreds of pages in length.

has long passed, the possibility that the 18 documents at issue here would eventually be produced in that case has vanished. This "attempt to circumvent the close of discovery" in parallel litigation weighs in favor of denying the application. *See AT&T v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005); *see also* 8A Wright & Miller, *Federal Practice & Procedure Civ.* § 2044.1 (3d ed.) (noting that if a "limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification").

Plaintiffs' relevance arguments are not persuasive. They first contend that Exhibits 1-3 are relevant to patent infringement because they show ██████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████; *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1335 (Fed. Cir. 2016) ("skepticism" consideration looks to "doubt or disbelief … regarding *the likely success* of a combination or solution" (emphasis added)).

Plaintiffs next argue that Exhibits 4-14 are relevant to three of Apple's argument—i.e., that (1) Plaintiffs are "acting as a non-practicing entity … by asserting patents [that do] not protect competing products (as they offer no smartwatch products)," (2) Masimo copied aspects of Apple Watch, and (3) Plaintiffs are barred by prosecution laches, since Apple was unaware of Plaintiffs and its patents. App. 4-6. But none of the 11 documents responds to Apple's prior argument that Plaintiffs do not offer any smartwatch products (and for good reason—Plaintiffs just announced their first

smartwatch in January 2022, at an event in the United Arab Emirates[6]). And although Plaintiffs cherry-pick quotes from numerous documents to string together a narrative about Apple's interest in their business in 2013, App. 5-6, they identify nothing that establishes actual copying. Indeed, four of the five patents asserted in the ITC did not issue until years after 2013. Finally, Plaintiffs mischaracterize Apple's prosecution laches argument. Apple has never argued that "it was unaware of *Masimo* and its patents"—only that it was unaware of the patents asserted in the ITC. Nothing in the 11 exhibits suggests otherwise.

Finally, Plaintiffs argue that Exhibits 15-18 rebut what they describe as Apple's argument that the pulse oximetry feature of Apple Watch is accurate and important. App. 6-7. But the only specific issue that they identify that this argument affects is whether the public interest favors excluding Apple Watch 6 and 7 from the United States. *See* Ex. 24 at 1-5; *see also Spansion, Inc. v. ITC,* 629 F.3d 1331, 1358 (Fed. Cir. 2010) ("By statute, the Commission is required to issue an exclusion order upon the finding of a Section 337 violation absent a finding that the effects of one of the statutorily-enumerated public interest factors counsel otherwise."); *see also* 19 U.S.C. § 1337(d)(1) (listing factors).[7] As Apple has explained (and Plaintiffs do not dispute), the ALJ in the ITC action was (at Plaintiffs' urging) not delegated the authority to take evidence on the public interest factors. Dkt. 572-2 (Ex. 20 at 3-4). Accordingly, any argument about the public interest factors is irrelevant to the current proceedings in front of the ALJ and beyond the scope of discovery.

**2.** **Prejudice to Apple.** Apple would suffer substantial prejudice if Plaintiffs' *ex parte* motion is granted. Plaintiffs' assertion (at 8) that Apple "cannot claim any

---

[6] *See, e.g., Emirates Health Services Debuts Masimo W1 At Arab Health 2022,* https://www.iotonlinestore.com/emirates-health-services-debuts-masimo-w1-at-arab-health-2022/ (Jan. 27, 2022).

[7] The only other two documents that Plaintiffs cite in summarizing Apple's argument merely involve rhetorical references to the "hard work and innovation" of Apple engineers. *See* Ex. 25 at 2; Ex. 26 at 62.

burden" because they have followed "Apple's own [six-month old] proposal" in identifying specific documents for cross-use and are adding "just 18 documents" ignores the hardship caused by Plaintiffs' months of delay. To the extent that the irrelevant 18 documents that Plaintiffs seek can be used in the ITC action, their introduction at this late stage—just days before the prehearing brief is due on May 13, weeks before the start of trial on June 6, and well after the deadline for each party to provide its list of the evidence it intends to use—would cause significant disruption in those proceedings.

More broadly, Apple has relied on the current terms of the protective order in producing documents and discovery responses in this litigation. Changing course now undermines reliance on the understanding that its discovery would not be taken and used out of context in collateral litigation involving different claims, different issues and a different set of products. *See* Dkt. 511 at 10-11 (Apple's opposition to first cross-use motion). This Court previously credited these concerns, explaining that (1) Apple's "reliance on" the protective order "is real" and (2) the protective order in the ITC is not "coextensive with the protective order in this case" and is a "lesser protective order." Dkt. 570-1 (Ex. 16 at 10-11, 16-17, 29). Plaintiffs' response is simply to parrot the same arguments that they made in their second cross-use motion (e.g., that they resolved this Court's concerns by excluding references to source code). *Compare* Dkt. 569 at 17-19 *with* App. 8. Apple has already responded to these arguments at length, many of which were rejected by this Court during the first cross-use motion briefing. *See* Dkt. 583-1 at 17-19.[8]

## V. CONCLUSION

Apple respectfully requests that the Court deny Plaintiffs' *ex parte* application.

---

[8] Plaintiffs claim (at 8) to have "rebutted" Apple's arguments about the nature of the protective order in their second cross-use reply brief. But even that brief failed to grapple with this Court's reasoning for why the protective order in this case is special. *See* Dkt. 591 at 19 (declining to respond directly to this Court's explanation for why it believed Apple had a reliance interest in the protective order).

| | |
|---|---|
| Dated: May 6, 2022 | Respectfully submitted, |
| | H. MARK LYON |
| | BRIAN M. BUROKER |
| | BRIAN A. ROSENTHAL |
| | ILISSA SAMPLIN |
| | ANGELIQUE KAOUNIS |
| | BRIAN ANDREA |
| | GIBSON, DUNN & CRUTCHER LLP |
| | |
| | KENNETH G. PARKER |
| | HAYNES AND BOONE, LLP |
| | |
| | MARK D. SELWYN |
| | JOSHUA H. LERNER |
| | NORA Q.E. PASSAMANECK |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | |
| | By: */s/ Mark D. Selwyn* |
| |     Mark D. Selwyn |
| | |
| | *Attorneys for Defendant Apple Inc.* |