# EXHIBIT 1

US008457703B2

## (12) United States Patent
### Al-Ali

| | | |
|---|---|---|
| (10) | **Patent No.:** | **US 8,457,703 B2** |
| (45) | **Date of Patent:** | **Jun. 4, 2013** |

(54) **LOW POWER PULSE OXIMETER**

(75) Inventor: **Ammar Al-Ali**, Tustin, CA (US)

(73) Assignee: **Masimo Corporation**, Irvine, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1603 days.

(21) Appl. No.: **11/939,519**

(22) Filed: **Nov. 13, 2007**

(65) **Prior Publication Data**

US 2008/0064936 A1    Mar. 13, 2008

### Related U.S. Application Data

(63) Continuation of application No. 10/785,573, filed on Feb. 24, 2004, now Pat. No. 7,295,866, which is a continuation of application No. 10/184,028, filed on Jun. 26, 2002, now Pat. No. 6,697,658.

(60) Provisional application No. 60/302,564, filed on Jul. 2, 2001.

(51) **Int. Cl.**
*A61B 5/1455* (2006.01)

(52) **U.S. Cl.**
USPC ........................... 600/323; 600/310; 600/322

(58) **Field of Classification Search**
USPC ................. 600/309, 310, 322, 323, 324, 333, 600/473, 476; 356/41
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,960,128 | A | 10/1990 | Gordon et al. |
| 4,964,408 | A | 10/1990 | Hink et al. |
| 5,041,187 | A | 8/1991 | Hink et al. |
| 5,069,213 | A | 12/1991 | Polczynski |
| 5,163,438 | A | 11/1992 | Gordon et al. |
| 5,337,744 | A | 8/1994 | Branigan |
| 5,341,805 | A | 8/1994 | Stavridi et al. |
| D353,195 | S | 12/1994 | Savage et al. |
| D353,196 | S | 12/1994 | Savage et al. |
| 5,377,676 | A | 1/1995 | Vari et al. |
| D359,546 | S | 6/1995 | Savage et al. |
| 5,431,170 | A | 7/1995 | Mathews |
| D361,840 | S | 8/1995 | Savage et al. |
| D362,063 | S | 9/1995 | Savage et al. |
| 5,452,717 | A | 9/1995 | Branigan et al. |
| D363,120 | S | 10/1995 | Savage et al. |
| 5,456,252 | A | 10/1995 | Vari et al. |
| 5,482,036 | A | 1/1996 | Diab et al. |
| 5,490,505 | A | 2/1996 | Diab et al. |
| 5,494,043 | A | 2/1996 | O'Sullivan et al. |

(Continued)

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 872 210 A1 | 10/1998 |
| WO | WO 99/63883 | 12/1999 |

#### OTHER PUBLICATIONS

PCT International Search Report, App. No. PCT/US02/20675, App. Date: Jun. 28, 2002, 4 pages.

*Primary Examiner* — Eric Winakur
*Assistant Examiner* — Chu Chuan (JJ) Liu
(74) *Attorney, Agent, or Firm* — Knobbe, Martens, Olson & Bear LLP

(57)                        **ABSTRACT**

A pulse oximeter may reduce power consumption in the absence of overriding conditions. Various sampling mechanisms may be used individually or in combination. Various parameters may be monitored to trigger or override a reduced power consumption state. In this manner, a pulse oximeter can lower power consumption without sacrificing performance during, for example, high noise conditions or oxygen desaturations.

**24 Claims, 11 Drawing Sheets**



Exhibit 1
-3-

US 8,457,703 B2

**11**

ments described above. In relatively simple embodiments of the control engine **440** (FIG. **4**), only a single sampling mechanism is used, such as the sampling mechanism used to vary the duty cycle of the emitter drivers. The single sampling mechanism may be based only upon internal parameters, such as signal quality, only upon output parameters, such as those that indicate the occurrence of physiological events, or upon a combination of internal and output parameters, with or without a power target.

In relatively more complex embodiments of the control engine **440** (FIG. **4**), sampling mechanisms are used in combination. These sampling mechanisms may be based only upon internal parameters, only upon output parameters, or upon a combination of internal and output parameters, with or without a power target. In a particular embodiment, the emitter duty-cycle, front-end duty-cycle and data block overlap sampling mechanisms described above are combined. A "reduced overlap" state relating to the post-processing of data blocks is added to the diagram of FIG. **9** between the "low duty cycle" state and the "data off" state. That is, sampling is varied between a high duty cycle state, a low duty cycle state, a reduced overlap state and a data off state in response to signal quality and physiological events, with or without a power target.

The low power pulse oximeter has been disclosed in detail in connection with various embodiments. These embodiments are disclosed by way of examples only and are not to limit the scope of the claims that follow. One of ordinary skill in the art will appreciate many variations and modifications.

What is claimed is:

**1**. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:

    driving one or more light sources configured to emit light into tissue of a monitored patient;

    receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;

    continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;

    comparing processing characteristics to a predetermined threshold; and

    when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level, wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue.

**2**. The method of claim **1**, wherein said reducing activation comprises reducing a duty cycle of said sensor.

**3**. The method of claim **1**, wherein during said operating at said higher power consumption level, monitoring when said processing characteristics recedes from said threshold; and when receded, transitioning to continuously operating said patient monitor at said lower power consumption level.

**4**. The method of claim **1**, wherein said processing characteristics comprise signal characteristics from one or more light sensitive detectors.

**5**. The method of claim **4**, wherein said signal characteristics comprise signal strength.

**6**. The method of claim **4**, wherein said signal characteristics comprise a presence of noise.

**7**. The method of claim **4**, wherein said signal characteristics comprise a presence of motion induced noise.

**12**

**8**. The method of claim **1**, wherein said processing characteristics include determining an estimate of current power consumption and comparing said estimate with a target power consumption.

**9**. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:

    driving one or more light sources configured to emit light into tissue of a monitored patient;

    receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;

    continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;

    comparing processing characteristics to a predetermined threshold; and

    when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level, wherein said continuously operating at said lower power consumption level comprises reducing an amount of processing by a signal processor.

**10**. The method of claim **9**, wherein said reducing comprises processing less data.

**11**. The method of claim **10**, wherein said processing less data comprises reducing an overlap in data blocks being processed.

**12**. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:

    driving one or more light sources configured to emit light into tissue of a monitored patient;

    receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;

    continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;

    comparing processing characteristics to a predetermined threshold; and

    when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level, wherein said processing characteristics include an override condition.

**13**. The method of claim **12**, wherein said override condition comprises measurements during a critical care environment.

**14**. The method of claim **12**, wherein said override condition comprises one or more monitored parameters exhibiting predefined behavior.

**15**. A patient monitor configured to manage power consumption during continuous patient monitoring, the monitor comprising:

    an input configured to receive at least one signal responsive to light detected after attenuation by body tissue of a patient by a noninvasive sensor; and

    one or more processors continuously operating at a lower power consumption level to determine measurement values for one or more physiological parameters of said patient, said processors comparing processing characteristics to a predetermined threshold, and when said processing characteristics pass said threshold, said processors transitioning to continuously operating at a higher power consumption level, wherein processors reduce activation of an attached sensor.

Exhibit 1

-4-

# EXHIBIT 2

US010433776B2

## (12) United States Patent
### Al-Ali

(10) Patent No.: **US 10,433,776 B2**

(45) Date of Patent: ***Oct. 8, 2019**

(54) **LOW POWER PULSE OXIMETER**

(71) Applicant: **Masimo Corporation**, Irvine, CA (US)

(72) Inventor: **Ammar Al-Ali**, Tustin, CA (US)

(73) Assignee: **MASIMO CORPORATION**, Irvine, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/174,144**

(22) Filed: **Oct. 29, 2018**

(65) **Prior Publication Data**

US 2019/0069814 A1    Mar. 7, 2019

### Related U.S. Application Data

(63) Continuation of application No. 15/820,082, filed on Nov. 21, 2017, which is a continuation of application No. 13/908,957, filed on Jun. 3, 2013, now Pat. No. 9,848,806, which is a continuation of application No. 11/939,519, filed on Nov. 13, 2007, now Pat. No. 8,457,703, which is a continuation of application No. 10/785,573, filed on Feb. 24, 2004, now Pat. No. 7,295,866, which is a continuation of application No.

(Continued)

(51) **Int. Cl.**
*A61B 5/1455*    (2006.01)

(52) **U.S. Cl.**
CPC ........ *A61B 5/1455* (2013.01); *A61B 5/14551* (2013.01); *A61B 2560/0209* (2013.01)

(58) **Field of Classification Search**
CPC .. A61B 5/00; A61B 5/02; A61B 5/021; A61B 5/0205; A61B 5/03; A61B 5/04; A61B 5/0059; A61B 5/08; A61B 5/103; A61B 5/0093; A61B 5/68; A61B 5/145; A61B 5/1455; A61B 5/14551

See application file for complete search history.

(56)    **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,907,183 A | * | 3/1990 | Tanaka ..................... G06F 1/30 |
| | | | 365/229 |
| 4,960,128 A | | 10/1990 | Gordon et al. |
| 4,964,408 A | | 10/1990 | Hink et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 872 210 A1 | 10/1998 |
| WO | WO 99/63883 | 12/1999 |

OTHER PUBLICATIONS

US 8,845,543 B2, 09/2014, Diab et al. (withdrawn)

(Continued)

*Primary Examiner* — Eric F Winakur
*Assistant Examiner* — Chu Chuan Liu
(74) *Attorney, Agent, or Firm* — Knobbe, Martens, Olson & Bear, LLP

(57)    **ABSTRACT**

A pulse oximeter may reduce power consumption in the absence of overriding conditions. Various sampling mechanisms may be used individually or in combination. Various parameters may be monitored to trigger or override a reduced power consumption state. In this manner, a pulse oximeter can lower power consumption without sacrificing performance during, for example, high noise conditions or oxygen desaturations.

**16 Claims, 11 Drawing Sheets**



Exhibit 2
-5-

US 10,433,776 B2

**11**

342 (FIG. 3) to reduce power consumption except during, say, periods of low signal quality and physiological events.

One of ordinary skill in the art will recognize that various state diagrams are possible representing control of the emitter drivers, the detector front-end and the post-processor. Such state diagrams may have fewer or greater states with differing transitional characteristics and with differing relationships between sampling mechanisms than the particular embodiments described above. In relatively simple embodiments of the control engine **440** (FIG. 4), only a single sampling mechanism is used, such as the sampling mechanism used to vary the duty cycle of the emitter drivers. The single sampling mechanism may be based only upon internal parameters, such as signal quality, only upon output parameters, such as those that indicate the occurrence of physiological events, or upon a combination of internal and output parameters, with or without a power target.

In relatively more complex embodiments of the control engine **440** (FIG. 4), sampling mechanisms are used in combination. These sampling mechanisms may be based only upon internal parameters, only upon output parameters, or upon a combination of internal and output parameters, with or without a power target. In a particular embodiment, the emitter duty-cycle, front-end duty-cycle and data block overlap sampling mechanisms described above are combined. A "reduced overlap" state relating to the post-processing of data blocks is added to the diagram of FIG. 9 between the "low duty cycle" state and the "data off" state. That is, sampling is varied between a high duty cycle state, a low duty cycle state, a reduced overlap state and a data off state in response to signal quality and physiological events, with or without a power target.

The low power pulse oximeter has been disclosed in detail in connection with various embodiments. These embodiments are disclosed by way of examples only and are not to limit the scope of the claims that follow. One of ordinary skill in the art will appreciate many variations and modifications.

What is claimed is:

**1**. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method comprising:

operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources;

when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor;

generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;

in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control

**12**

protocol, the second control protocol light source including one or more of the plurality of light sources; and

when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor,

wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.

**2**. The method of claim **1**, wherein the first control protocol light source operates on the first duty cycle having an active time and an inactive time according to the first control protocol, wherein the second control protocol light source operates on the second duty cycle having an active time and an inactive time according to the second control protocol, the active time of the first duty cycle having a first duration and the active time of the second duty cycle having a second duration, wherein the first duration and the second duration are different.

**3**. The method of claim **2**, wherein the second duration is longer than the first duration.

**4**. The method of claim **1**, wherein power consumption during said operating at the second control protocol is greater than power consumption during said operating at the first control protocol.

**5**. The method of claim **1**, wherein said operating the patient monitor according to the first control protocol consumes a relatively small amount of power, and wherein said operating the patient monitor according to the second control protocol consumes a relatively large amount of power.

**6**. The method of claim **1**, wherein said operating the patient monitor in accordance with the first control protocol comprises operating the first control protocol light source in a data off state.

**7**. The method of claim **1**, wherein said signals received from the detector are responsive to the detected light of the first control protocol light source or the second control protocol light source.

**8**. The method of claim **7**, wherein the signal quality characteristics includes at least one of signal strength, a presence of noise, or a presence of motion induced noise.

**9**. The method of claim **1**, wherein the physiological event includes at least one of oxygen desaturation, an abnormal pulse rate, or an abnormal plethysmograph waveform.

**10**. The method of claim **9**, wherein the physiological event includes the abnormal pulse rate and wherein the abnormal pulse rate includes an elevated pulse rate.

**11**. A patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the patient monitor comprising:

a plurality of light sources;

at least one detector of an optical sensor configured to receive light after attenuation by body tissue of the patient using the patient monitor; and

# EXHIBIT 3

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 4

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 5

1    JOSHUA H. LERNER, SBN 220755
        jlerner@gibsondunn.com
2    GIBSON, DUNN & CRUTCHER LLP
     555 Mission Street Suite 3000
3    San Francisco, CA 94105
     Tel.:  415.393.8200 / Fax: 415.393.8306
4
5    H. MARK LYON, SBN 162061
        mlyon@gibsondunn.com
6    GIBSON, DUNN & CRUTCHER LLP
     1881 Page Mill Road
7    Palo Alto, CA 94304-1211
     Tel.:  650.849.5300 / Fax: 650.849.5333
8
     BRIAN M. BUROKER, *pro hac vice*
9       bburoker@gibsondunn.com
     BRIAN K. ANDREA, *pro hac vice*              ILISSA SAMPLIN, SBN 314018
10      bandrea@gibsondunn.com                       isamplin@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP                  GIBSON, DUNN & CRUTCHER LLP
11   1050 Connecticut Avenue, N.W.                333 South Grand Avenue
     Washington, DC 20036                         Los Angeles, CA 90071-3197
12   Tel.: 202.955.8541 / Fax: 202.467.0539       Tel.: 213.229.7000 / Fax: 213.229.7520

13   BRIAN A. ROSENTHAL, *pro hac vice*           ANGELIQUE KAOUNIS, SBN 209833
        brosenthal@gibsondunn.com                    akaounis@gibsondunn.com
14   GIBSON, DUNN & CRUTCHER LLP                  GIBSON, DUNN & CRUTCHER LLP
     200 Park Avenue                              2029 Century Park East Suite 4000
15   New York, NY 10166-0193                      Los Angeles, CA 90067
     Tel.: 212.351.2339 / Fax: 212.817.9539       Tel.: 310.552.8546 / Fax: 310.552.7026

16   *Attorneys for Defendant Apple Inc.*

17                 **UNITED STATES DISTRICT COURT**
18   **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

19   MASIMO CORPORATION,
     a Delaware corporation; and
20   CERCACOR LABORATORIES, INC.,          CASE NO. 8:20-cv-00048-JVS (JDEx)
     a Delaware corporation,
21                                          **DEFENDANT APPLE INC.'S FIFTH
                         Plaintiffs,        SET OF REQUESTS FOR
22                                          PRODUCTION OF DOCUMENTS
                                            AND THINGS TO PLAINTIFFS
23          v.                              MASIMO CORPORATION AND
                                            CERCACOR LABORATORIES, INC.
24   APPLE INC.,                            (NOS. 104-109)**
     a California corporation,
                                            Hon. James V. Selna
25                       Defendant.
                                            Magistrate Judge John D. Early
26

27

28

Gibson, Dunn &
Crutcher LLP

Exhibit 5
-82-

1   further supplemental production if You obtain additional responsive information.

2   19.   Apple serves these Requests without prejudice to its right to serve

3   additional requests for production in this Action.

4   20.   Each of the foregoing Definitions and Instructions is hereby

5   incorporated by reference into, and shall be deemed a part of, each Request.

6   ## III.   REQUESTS FOR PRODUCTION

7   **REQUEST FOR PRODUCTION NO. 104:**

8   All documents and things relating to the research, design, and/or

9   development of Plaintiffs' alleged wrist worn monitor that performs pulse

10   oximetry and/or any component of Plaintiffs' alleged wrist worn monitor that

11   performs pulse oximetry, including, without limitation, laboratory notebooks,

12   invention disclosures, memoranda, product specifications, conceptual or technical

13   drawings, schematics, diagrams, technical specifications, meeting minutes,

14   presentations, and prototypes.

15   **REQUEST FOR PRODUCTION NO. 105:**

16   All documents and things related to the decisions to research, design, and/or

17   develop Plaintiffs' alleged wrist worn monitor that performs pulse oximetry and/or

18   any component of Plaintiffs' alleged wrist worn monitor that performs pulse

19   oximetry.

20   **REQUEST FOR PRODUCTION NO. 106:**

21   All documents and things relating to the function of Plaintiffs' alleged wrist

22   worn monitor that performs pulse oximetry and/or any component of Plaintiffs'

23   alleged wrist worn monitor that performs pulse oximetry.

24   **REQUEST FOR PRODUCTION NO. 107:**

25   An inspection of Plaintiffs' alleged wrist worn monitor that performs pulse

26   oximetry, including without limitation, prior versions and prototypes.

27   **REQUEST FOR PRODUCTION NO. 108:**

28

10

Gibson, Dunn &
Crutcher LLP

Exhibit 5
-83-

1    All documents and things relating to all efforts to market Plaintiffs' alleged

2    wrist worn monitor that performs pulse oximetry to consumers.  For avoidance of

3    doubt, this includes documents and things related to efforts to advertise and sell

4    said wrist worn monitor that performs pulse oximetry to consumers.

5    **REQUEST FOR PRODUCTION NO. 109:**

6    All documents and things relating to sales projections for Plaintiffs' alleged

7    wrist worn monitor that performs pulse oximetry.

8

9    Dated: November 12, 2020          Respectfully submitted,

10                                     JOSHUA H. LERNER
                                       H. MARK LYON
11                                     BRIAN M. BUROKER
                                       BRIAN A. ROSENTHAL
12                                     ILISSA SAMPLIN
                                       ANGELIQUE KAOUNIS
13                                     BRIAN K. ANDREA
                                       GIBSON, DUNN & CRUTCHER LLP
14

15

16                                     By: */s/Joshua H. Lerner*
                                           Joshua H. Lerner
17
                                       *Attorneys for Defendant Apple Inc.*
18

19

20

21

22

23

24

25

26

27

28

APPLE INC.'S FIFTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 5
-84-

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action.

On November 12, 2020, I served a true and correct copy of the foregoing **DEFENDANT APPLE INC.'S FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 104-109)** on the parties or their counsel shown at the email addresses shown below:

KNOBBE, MARTENS, OLSON & BEAR, LLP
Joseph R. Re
joseph.re@knobbe.com
Stephen C. Jensen
steve.jensen@knobbe.com
Perry D. Oldham
perry.oldham@knobbe.com
Stephen W. Larson
stephen.larson@knobbe.com
Adam B. Powell
adam.powell@knobbe.com
Mark Kachner
mark.kachner@knobbe.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on November 12, 2020, at Irvine, California.

By: */s/ Tracy Morgan*
Tracy Morgan

APPLE INC.'S FIFTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn & Crutcher LLP

Exhibit 5
-85-

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DEFENDANT APPLE INC.'S SEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 122-127)** <br><br> Hon. James V. Selna <br><br> Magistrate Judge John D. Early |

Gibson, Dunn & Crutcher LLP

APPLE INC.'S SEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 5
-86-

19.     Apple serves these Requests without prejudice to its right to serve additional requests for production in this Action.

20.     Each of the foregoing Definitions and Instructions is hereby incorporated by reference into, and shall be deemed a part of, each Request.

## III.   REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 122:**

All documents and things relating to the research, design, and/or development of each and every wrist worn monitor that performs pulse oximetry that You intend to rely on to argue that You compete with Apple or otherwise compare to the Apple Watch and/or any component of each and every wrist worn monitor that performs pulse oximetry that You intend to rely on to argue that You compete with Apple or otherwise compare to the Apple Watch, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 123:**

All documents and things related to the decisions to research, design, and/or develop each and every wrist worn monitor that performs pulse oximetry that You intend to rely on to argue that You compete with Apple or otherwise compare to the Apple Watch and/or any component of each and every wrist worn monitor that performs pulse oximetry that You intend to rely on to argue that You compete with Apple or otherwise compare to the Apple Watch.

**REQUEST FOR PRODUCTION NO. 124:**

All documents and things relating to the function of each and every wrist worn monitor that performs pulse oximetry that You intend to rely on to argue that You compete with Apple or otherwise compare to the Apple Watch and/or any component of each and every wrist worn monitor that performs pulse oximetry that

APPLE INC.'S SEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 5
-87-

1  You intend to rely on to argue that You compete with Apple or otherwise compare

2  to the Apple Watch.

3  **REQUEST FOR PRODUCTION NO. 125:**

4      An inspection of each and every wrist worn monitor that performs pulse

5  oximetry that You intend to rely on to argue that You compete with Apple or

6  otherwise compare to the Apple Watch, including without limitation, prior versions

7  and prototypes.

8  **REQUEST FOR PRODUCTION NO. 126:**

9      All documents and things relating to all efforts to market each and every

10  wrist worn monitor that performs pulse oximetry that You intend to rely on to

11  argue that You compete with Apple or otherwise compare to the Apple Watch to

12  consumers.  For avoidance of doubt, this includes documents and things related to

13  efforts to advertise and sell said wrist worn monitor that performs pulse oximetry

14  to consumers.

15  **REQUEST FOR PRODUCTION NO. 127:**

16      All documents and things relating to sales projections for each and every wrist

17  worn monitor that performs pulse oximetry that You intend to rely on to argue that

18  You compete with Apple or otherwise compare to the Apple Watch.

19

20

21

22

23

24

25

26

27

28

11

APPLE INC.'S SEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 5
-88-

1   Dated: January 25, 2021          Respectfully submitted,

2                                    JOSHUA H. LERNER
                                     H. MARK LYON
3                                    BRIAN M. BUROKER
                                     BRIAN A. ROSENTHAL
4                                    ILISSA SAMPLIN
                                     ANGELIQUE KAOUNIS
5                                    BRIAN K. ANDREA
                                     GIBSON, DUNN & CRUTCHER LLP
6

7

8                                    By: */s/Joshua H. Lerner*
                                         Joshua H. Lerner
9
                                     *Attorneys for Defendant Apple Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

12

Exhibit 5
-89-

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action.

On January 25, 2021, I served a true and correct copy of the foregoing **DEFENDANT APPLE INC.'S SEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 122-127)** on the parties or their counsel shown at the email addresses shown below:

KNOBBE, MARTENS, OLSON & BEAR, LLP
Joseph R. Re
joseph.re@knobbe.com
Stephen C. Jensen
steve.jensen@knobbe.com
Perry D. Oldham
perry.oldham@knobbe.com
Stephen W. Larson
stephen.larson@knobbe.com
Adam B. Powell
adam.powell@knobbe.com
Mark Kachner
mark.kachner@knobbe.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on January 25, 2021, at Irvine, California.

By: */s/ Tracy Morgan*
Tracy Morgan

Gibson, Dunn &
Crutcher LLP

13

APPLE INC.'S SEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 5
-90-

1 | JOSHUA H. LERNER, SBN 220755
jlerner@gibsondunn.com
2 | GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
3 | San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306
4 |
H. MARK LYON, SBN 162061
5 | mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
6 | 1881 Page Mill Road
Palo Alto, CA 94304-1211
7 | Tel.: 650.849.5300 / Fax: 650.849.5333

8 | BRIAN M. BUROKER, *pro hac vice*
bburoker@gibsondunn.com
9 | BRIAN K. ANDREA, *pro hac vice*              ILISSA SAMPLIN, SBN 314018
bandrea@gibsondunn.com                        isamplin@gibsondunn.com
10 | GIBSON, DUNN & CRUTCHER LLP               GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.                 333 South Grand Avenue
11 | Washington, DC 20036                       Los Angeles, CA 90071-3197
Tel.: 202.955.8541 / Fax: 202.467.0539        Tel.: 213.229.7000 / Fax: 213.229.7520
12 |
BRIAN A. ROSENTHAL, *pro hac vice*            ANGELIQUE KAOUNIS, SBN 209833
13 | brosenthal@gibsondunn.com                  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP                   GIBSON, DUNN & CRUTCHER LLP
14 | 200 Park Avenue                            2029 Century Park East Suite 4000
New York, NY 10166-0193                       Los Angeles, CA 90067
15 | Tel.: 212.351.2339 / Fax: 212.817.9539     Tel.: 310.552.8546 / Fax: 310.552.7026

16 | *Attorneys for Defendant Apple Inc.*

17 | **UNITED STATES DISTRICT COURT**
18 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

19 | MASIMO CORPORATION,
a Delaware corporation; and
20 | CERCACOR LABORATORIES, INC.,          CASE NO. 8:20-cv-00048-JVS (JDEx)
a Delaware corporation,
21 |                                        **DEFENDANT APPLE INC.'S**
**EIGHTH SET OF REQUESTS FOR**
22 |              Plaintiffs,               **PRODUCTION OF DOCUMENTS**
**AND THINGS TO PLAINTIFFS**
23 |        v.                              **MASIMO CORPORATION AND**
**CERCACOR LABORATORIES, INC.**
24 | APPLE INC.,                            **(NOS. 128-253)**
a California corporation,
25 |                                        Hon. James V. Selna
             Defendant.
26 |                                        Magistrate Judge John D. Early

27 |

28 |

Gibson, Dunn &
Crutcher LLP

---

APPLE INC.'S EIGHTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 5
-91-

1  **REQUEST FOR PRODUCTION NO. 141:**

2     All Communications between You and Marcelo Lamego related to the subject

3  matter of this litigation, including the Trade Secrets and the subject matter that is

4  contained in the Apple Patents and Apple Applications.

5  **REQUEST FOR PRODUCTION NO. 142:**

6     All Communications between You and Michael O'Reilly related to the subject

7  matter of this litigation, including the Trade Secrets and the subject matter that is

8  contained in the Apple Patents and Apple Applications.

9  **REQUEST FOR PRODUCTION NO. 143:**

10    All Documents, Communications, and Things relating to Your products that

11  are compatible with any Apple products.

12  **REQUEST FOR PRODUCTION NO. 144:**

13    All Documents, Communications, and Things relating to the marketing

14  materials for all of Your products that are referenced in the Complaint.

15  **REQUEST FOR PRODUCTION NO. 145:**

16    Documents sufficient to show the date that each reflectance-based pulse

17  oximetry product sold by You, including but not limited to the Masimo M-LNCS

18  TF-I and LNCS-TFA-1 products, was offered for sale and sold anywhere in the

19  world.

20  **REQUEST FOR PRODUCTION NO. 146:**

21    All Documents, Communications, and Things regarding the Apple Watch.

22  **REQUEST FOR PRODUCTION NO. 147:**

23    All Documents, Communications, and Things that relate to the ownership of

24  the Trade Secrets, including but not limited to Documents, Communications, and

25  Things that relate to any changes in ownership of each of the Trade Secrets since the

26  conception of the Trade Secret.

27

28

Gibson, Dunn &
Crutcher LLP

12

Exhibit 5
-92-

**REQUEST FOR PRODUCTION NO. 252:**

All Documents and Communications relating to any "inability to generate sufficient return on Plaintiffs' significant investment in research and development" experienced by You and caused by Apple's alleged trade secret misappropriation in accordance with Your assertion in Your response to Apple's Interrogatory No. 27.

**REQUEST FOR PRODUCTION NO. 253:**

All Documents and Communications relating to any harm to "Plaintiffs' competitive advantage" experienced by You and caused by Apple's alleged trade secret misappropriation in accordance with Your assertion in Your response to Apple's Interrogatory No. 27.

Dated: March 5, 2021              Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP


By:  */s/Joshua H. Lerner*
Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*

Gibson, Dunn &
Crutcher LLP

31

APPLE INC.'S EIGHTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 5
-93-

## <u>CERTIFICATE OF SERVICE</u>

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action.

On March 5, 2021, I served a true and correct copy of the foregoing **DEFENDANT APPLE INC.'S EIGHTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 128-253)** on the parties or their counsel shown at the email addresses shown below:

KNOBBE, MARTENS, OLSON & BEAR, LLP
Joseph R. Re
joseph.re@knobbe.com
Stephen C. Jensen
steve.jensen@knobbe.com
Perry D. Oldham
perry.oldham@knobbe.com
Stephen W. Larson
stephen.larson@knobbe.com
Adam B. Powell
adam.powell@knobbe.com
Mark Kachner
mark.kachner@knobbe.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on March 5, 2021, at Irvine, California.

By:  */s/ Tracy Morgan*
Tracy Morgan

APPLE INC.'S EIGHTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn & Crutcher LLP

Exhibit 5
-94-

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

                    Plaintiffs,

        v.

APPLE INC.,
a California corporation,

                    Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**DEFENDANT APPLE INC.'S
ELEVENTH SET OF REQUESTS
FOR PRODUCTION OF
DOCUMENTS AND THINGS TO
PLAINTIFFS MASIMO
CORPORATION AND CERCACOR
LABORATORIES, INC. (NOS. 279-
282)**

Hon. James V. Selna

Magistrate Judge John D. Early

Gibson, Dunn &
Crutcher LLP

Exhibit 5
-95-

19.     Apple serves these Requests without prejudice to its right to serve additional requests for production in this Action.

20.     Each of the foregoing Definitions and Instructions is hereby incorporated by reference into, and shall be deemed a part of, each Request.

### III.     REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 279:**

All documents and things that show the operation and structure of each and every reflectance-based pulse oximetry product sold by You prior to 2014 including, without limitation, data sheets, bills of material, CAD drawings, photographs, component lists, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, and manufacturing documents.

**REQUEST FOR PRODUCTION NO. 280:**

Documents sufficient to show the sales of each and every reflectance-based pulse oximetry product sold by You prior to 2014.

**REQUEST FOR PRODUCTION NO. 281:**

Documents sufficient to show the date for first sale of each and every reflectance-based pulse oximetry product sold by You prior to 2014.

**REQUEST FOR PRODUCTION NO. 282:**

Five samples of each and every reflectance-based pulse oximetry product sold by You prior to 2014.

APPLE INC.'S ELEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn & Crutcher LLP

Exhibit 5
-96-

1

2

3

Dated: April 16, 2021                    Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP

By: */s/Joshua H. Lerner*
Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

APPLE INC.'S ELEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO AND CERCACOR
CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 5
-97-

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action.

On April 16, 2021, I served a true and correct copy of the foregoing **DEFENDANT APPLE INC.'S ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC. (NOS. 279-282)** on the parties or their counsel shown at the email addresses shown below:

KNOBBE, MARTENS, OLSON & BEAR, LLP
Joseph R. Re
joseph.re@knobbe.com
Stephen C. Jensen
steve.jensen@knobbe.com
Perry D. Oldham
perry.oldham@knobbe.com
Stephen W. Larson
stephen.larson@knobbe.com
Adam B. Powell
adam.powell@knobbe.com
Mark Kachner
mark.kachner@knobbe.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on April 16, 2021, at Los Angeles, California.

By: */s/ David Lam*
     David Lam

12

Gibson, Dunn & Crutcher LLP

Exhibit 5
-98-

EXHIBIT 6

**Page 1**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, et al., )
Plaintiffs, )
vs. )  SACV-20-00048-JVS
APPLE, INC., )
Defendant. )
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 10, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

11:46

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 2**

APPEARANCES OF COUNSEL:

For the Plaintiffs:

JOSEPH R. RE
STEPHEN JENSEN
KNOBBE MARTENS
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404

For the Defendant:

H. MARK LYON
JOSHUA LERNER
BRIAN ROSENTHAL
GIBSON DUNN & CRUTCHER, LLP
1881 Page Mill Road
Palo Alto, CA 93403-1211
(650) 849-5307

JOSHUA LERNER
GIBSON DUNN & CRUTCHER, LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
(415) 393-8254

BRIAN ROSENTHAL
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-2339

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 3**

1    SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.
2         (Per telephonic conference)
3         THE CLERK:   Calling Item No. 1, SACV-20-00048-JVS,
4    Masimo Corporation versus Apple, Inc.
5         Appearances on behalf of the plaintiff, please.
6         MR. RE:   Thank you.  Good afternoon, Your Honor,
7    this is Joseph Re of Knobbe Martens on behalf of Masimo
8    Corporation, and with me is my partner Stephen Jensen.
9         THE CLERK:   And on behalf of the defendants,
10   please.
11        MR. LYON:   Good afternoon, Your Honor.  It's Mark
12   Lyon on behalf of Apple, and with me is Joshua Lerner, and
13   Brian Rosenthal.
14        THE COURT:   Good afternoon.
15        Thank you for your joint report that you filed
16   last week.  Let me share my thoughts with you, and then I'd
17   be happy to hear you.
18        I believe it's fundamentally unfair to the parties
19   and inefficient to require reduction of the number of claims
20   for prior art references prior to the full disclosure of the
21   infringement contentions and the invalidity contentions.
22   Let me give you an example of the poker world.  Suppose
23   Masimo has a claim that it would evaluate as a far basis,
24   but when Apple makes its invalidity disclosures, it comes up
25   with prior art that would amount to Royal Fresh.  It's

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 4**

1    better for Masimo to designate a claim in light of prior art
2    demonstrating it wasn't viable.
3         So my thought is that the initial round of
4    disclosures ought to come after the parties have made their
5    invalidity disclosures and their prior art disclosures.  The
6    date for invalidity contentions is 9/7.  What I would
7    propose is that within two weeks of that date, the parties
8    present me with a proposal for an initial reduction of
9    claims and prior art references that would contemplate
10   actual disclosure of those reductions within 30 days of the
11   Court adopting a specific proposal.  I would then
12   contemplate that there would be a further reduction after
13   the Markman hearing, and I would leave to your discretion
14   the time for final disclosure as to what we go to trial on.
15        I think that may require some adjustments to
16   events leading to the Markman hearing.  If the invalidity
17   contentions come in on 9/7, the parties' exchange of
18   proposed claim terms is 9/21.  I don't think that gives you
19   enough time to reflect on both sides' disclosures, come up
20   with your proposal, and then for narrowing selections of
21   claims and prior art references.
22        So I think that the dates between the exchange of
23   claim terms and the Markman hearing need to be adjusted to
24   accommodate the disclosures pursuant to whatever proposal I
25   adopt for the disclosures following the invalidity and the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 6
-99-

**5**

1  infringement contentions and the Markman hearing.  I'm not
2  adverse to slipping the Markman hearing a month or six weeks
3  if that makes sense.  That's in February, and we don't have
4  a trial date in 2021.
5          So those are my general thoughts.  I'll be happy
6  to hear you.
7          Let's begin with you, Mr. Re.
8          MR. RE:   Thank you, Your Honor.
9          I think we're in complete agreement with
10  everything you said.  I do think there needs to be an
11  exchange of information.  I do want to alert the Court that
12  we are planning on amending our pleading that's set forth in
13  the Court's order regarding the Motion to Dismiss.  In fact,
14  we will be substituting out some patents, so there needs to
15  be some more time for the parties to fully evaluate the
16  claims.
17          And, yes, we have not yet received the other
18  party's technical documents which were due back in June, and
19  that we of course need before we do our contentions.  But we
20  agree with everything you said, and I think the parties will
21  work it out and will come up with a proposal for this by
22  September 21 as you indicated.
23          THE COURT:   Mr. Lyon.
24          MR. LYON:   Thank you, Your Honor.
25          Just a couple points.  Let me just raise a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**6**

1  concern, and you may have already considered this, but let
2  me at least just throw it out there so that we can have a
3  discussion if it's helpful.  The one thing I would say with
4  not putting in some kind of target limits at this point is
5  that you end up with potentially hundreds of claims that
6  both parties are going to be charting, that they're going to
7  be discussing and potentially arguing over as far as what
8  claim terms might be involved.
9          That is not a trivial aspect.  I mean, that's
10  something where some of these -- I'm sure you've seen them.
11  Some of these claim charts can wind up being hundreds or
12  thousands of pages long, which is a very significant effort
13  to create, even if it is copying and pasting some of the
14  information because these claims are so related, which still
15  winds up that somebody has to sit down and analyze each
16  individual claim to decide whether or not you can simply
17  copy a paragraph from a different claim or not.  You have to
18  do that, and then that has to go through whatever levels of
19  review with the client and with the firm to make sure that
20  that's okay.
21          Then to the extent that there's any dispute about
22  that, instead of having a single claim that the Court is
23  worrying about, it may end up being 15 or 16 claims, which
24  the Court would then have to do a similar review to make
25  sure it all makes sense, and the same argument applies

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**7**

1  equally to each of those 15 or 16 claims.
2          So our view of the issue is if we set some
3  number, and it could be -- we don't think the numbers we
4  picked are terrible, but if there's a higher number, we
5  could talk about that.  But pick some target numbers now so
6  that we can get a bit more reign in on the case before we
7  get into charting everything with the idea that if there's
8  reasons to change these things down the road, that's
9  something that can always be done in good cause.
10          But it really needs to be done at the stage of
11  preparing it for Markman, and then have that kind of a
12  target, sort of like page limits in the brief in a lot of
13  ways.  If you put these claims and limits on people, they'll
14  make some hard choices that they otherwise wouldn't make or
15  -- and that they probably should make, but because of the
16  fact that they don't have to, everything just gets thrown in
17  with the kitchen sink.
18          That's why we were suggesting trying to do
19  something now.  Then if we need to have some discussions
20  about whether, you know, it's 50, 40, claims, whatever it is
21  we pick -- maybe the plaintiffs need a little bit more than
22  that, maybe another ten or so -- we could have those kinds
23  of discussions and maybe stipulate to that at the beginning.
24          This is the first we've heard that they're
25  planning on changing the patents again, so that's a little

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**8**

1  troubling because we are already very far into the case, and
2  we're already trying to start gearing up for discovery on
3  the patents that we have.  But that may also throw a monkey
4  wrench into not just this but to more parts of the case
5  schedule if it changes substantially.
6          THE COURT:   I appreciate the fact that at some
7  point the parties will have to make hard choices.  I believe
8  they ought to be able to make fair hard choices.  But if you
9  want to have further discussions among yourselves and come
10  to a consensus as to how to do some limits at this time,
11  that's fine, but I'm not going to impose it.
12          What I'm going to order is that no later than 9/21
13  the parties will submit a joint proposal for the initial
14  round of productions and the number of infringement
15  contentions and prior art references, and a final proposal
16  as to what we ought to do following the Markman hearing, and
17  then what we ought to do as a final third stage in terms of
18  what we're actually going to go to trial on.
19          MR. RE:   T?hank you, Your Honor.
20          May I ask one more question about this, though,
21  Your Honor?  If we have currently set up infringement
22  contentions due on July 27, which then triggers our
23  invalidity contentions on September 7 to trigger off of
24  those -- if the patents are going to be changing because of
25  the new pleading, I guess I would want to know when is that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 6
-100-

**9**

```
03:07  1   going to happen, and are those target changes going to be
03:07  2   reflected in the infringement contentions we are going to
03:07  3   see in July, or is that going to be a completely separate
03:07  4   ball of wax that we have to deal with?
03:07  5          THE COURT:   Well, if Masimo changes the line of
03:07  6   both patents, I would reevaluate the dates for infringement
03:07  7   and invalidity contentions in light of that on a fairly
03:07  8   short ex-parte basis.
03:07  9          Let me circle back to one thing Mr. Re said.  I
03:07  10  don't think that Masimo should be required to make its
03:07  11  infringement contentions until you produce the core
03:08  12  technical information.  I understand that there is presently
03:08  13  in place a protective order to permit that, but to the
03:08  14  extent that production is made, these dates are just going
03:08  15  to drift out there and out there and out there.  And I would
03:08  16  be likely to entertain a motion made to me, not the
03:08  17  magistrate judge, with regard to patent production on the
03:08  18  core confidential information.
03:08  19         MR. LYON:   On that point -- this is
03:08  20  Mark Lyon again, Your Honor.  On that point, we did produce
03:08  21  nonconfidential technical documentation as part of the
03:08  22  schedule, and we're waiting on the protective order which
03:08  23  now is in place.  But as you may know, we filed an objection
03:08  24  to certain orders of Magistrate Early on the staging of
03:08  25  that, which we do hope to have -- because the issue, as you
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**10**

```
03:08  1   may know, is that there needs to be a 2019 trade secret
03:08  2   statement in place before we can proceed on the trade secret
03:09  3   discovery.
03:09  4          The whole basis for that rule is to really avoid
03:09  5   the situation where plaintiffs get ahold of all these
03:09  6   technical documents and then can hunt and peck and kind of
03:09  7   try to come up with a list of trade secrets that they
03:09  8   otherwise really don't have but that they are trying to
03:09  9   create that way.  That is the whole purpose of being able to
03:09  10  have those trade secrets in before all that technical
03:09  11  information is out.
03:09  12         If that information is provided ahead of getting
03:09  13  those trade secrets, that bell can't be unrung.  That's one
03:09  14  concern, and we actually have that motion in place.  We
03:09  15  understood from yesterday that Masimo was asking us to
03:09  16  produce that information.  The first that they had come back
03:09  17  and talked to us was in an email yesterday asking for that
03:09  18  information immediately, knowing that we had these
03:09  19  objections out there.  We may need to actually file some
03:09  20  type of an ex-parte application, if necessary, to seek
03:09  21  relief on that so we can get that issue decided first, if
03:09  22  possible.
03:09  23         I don't know, Mr. Lerner, if you want to say
03:10  24  anything more on that.  Please feel free.
03:10  25         MR. LERNER:   First of all, thank you for having
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**11**

```
03:10  1   this hearing by telephone, Your Honor.  We know during these
03:11  2   times it's busy, and we appreciate the opportunity to be
03:11  3   heard.
03:11  4          Second, I do not believe that anybody can dispute
03:12  5   the point that once these documents are out then you have
03:12  6   the issue that is raised by every case on point, which is,
03:12  7   one can make vague trade secret allegations and then claim
03:12  8   Apple's valuable confidential information based on years of
03:12  9   hard work on this product as their own.  That simply cannot
03:12  10  be undone once these documents are produced, and it leads to
03:12  11  all kinds of issues.
03:12  12         I think the two most relevant here are that what,
03:12  13  for example, do you do with the people that are going to
03:12  14  work on the trade secret disclosure when first Your Honor
03:12  15  did order compliance with Section 2019.210 many months ago?
03:12  16  What do you do with the lawyers who have seen our
03:12  17  confidential information, but also might want to work on
03:12  18  that disclosure, which does at some point obviously need to
03:12  19  be produced?  Our view, as we briefed, is that it should
03:12  20  have been provided a long time ago.
03:13  21         The other key policy matter here, I think, is that
03:13  22  we would not be having these discussions or these problems
03:13  23  if that disclosure had been provided, because I think the
03:13  24  most basic policy guidance behind the rule is it enables the
03:13  25  Court to determine the proper scope of discovery and whether
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**12**

```
03:11  1   or not discovery requests fall within it.  That just can't
03:11  2   be done until they provide this document, which the parties
03:11  3   briefed before the scheduling order, which Your Honor then
03:11  4   ruled on.
03:12  5          So as Mr. Lyon says, if necessary -- in fact,
03:12  6   we're planning on it if necessary to raise it as quickly as
03:12  7   possible now, so that we don't run into this waterfall of
03:12  8   problems that will follow if there's not compliance with
03:12  9   this basic rule.
03:12  10         THE COURT:   I guess I analyze things differently.
03:12  11  If core confidential documents are relevant to the patents,
03:12  12  they should be disclosed now, notwithstanding the fact that
03:12  13  they may overlap the trade secrets case.  We need to go
03:12  14  forward with the patent case.  And if and when there is
03:12  15  adequate disclosure for trade secrets, all other materials
03:12  16  should be produced.  But to the extent the core confidential
03:12  17  technical documents are relevant to the patent case, they
03:12  18  should be disclosed now and in advance of Masimo having to
03:12  19  identify which claims it wants to proceed on.
03:12  20         MR. LERNER:   If I may just very briefly respond to
03:12  21  that, Your Honor.  I understand that Masimo has raised that
03:13  22  argument, but it does render the statute a nullity.
03:13  23  2019.210 expressly states:  "Discovery related to the trade
03:13  24  secrets" -- indeed, in cases before Judge Early before, he
03:13  25  said just because discovery relates to a non-trade secret
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 6 -101-

13

03:13 1   claim it doesn't mean it also doesn't relate to the trade
03:13 2   secret.  Here, there's no dispute -- there can't be any
03:13 3   dispute that discovery on the patent side relates to the
03:13 4   trade secrets.
03:13 5         So if we're going to do that, it does render the
03:13 6   statute in this instance a nullity, and we will have, I
03:13 7   think, all the problems that follow and are the very basis
03:14 8   for the rule there.  So I think that it is important to
03:14 9   consider both the express language of that statute and then
03:14 10  what's behind it.
03:14 11        The only other thing I will mention is that every
03:14 12  case that Masimo has cited on this point that involved
03:14 13  parallel claims -- every single one there was a prior trade
03:14 14  secret disclosure.  It's possible that it could have been
03:14 15  amended at some later time, but there was at the very least
03:14 16  some disclosure.
03:14 17        The only exception I can think of was one where
03:14 18  there was a date certain order, and the plaintiff would have
03:14 19  had to show good cause if they ever wanted to change it
03:14 20  later.  Because without either the disclosure or that date
03:14 21  certain and an order that it can't be changed without good
03:14 22  cause, then we have the very real situation that Masimo can
03:15 23  just look through our confidential information in a case
03:15 24  with a patent thicket and use our confidential information
03:15 25  to try and craft their purported secrets in a way that (a)

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

14

03:15 1   is allegedly theirs, even though it's based on our
03:15 2   confidential information, but (b) tries to weave around
03:15 3   their many patents so they don't run into the problem that
03:15 4   it's been disclosed.
03:15 5         For those reasons, I think it's in some ways of
03:15 6   critical importance here that we do it.  It's even more
03:15 7   important than I would say in a normal case where there
03:15 8   might be not quite so many patents in the space or so many
03:15 9   allegations that the secrets were allegedly disclosed in
03:15 10  patents.
03:15 11        THE COURT:   Let's assume Masimo never asserted a
03:15 12  trade secret claim.  The confidential information which
03:15 13  involves the patent claims would be subject to production
03:15 14  whether it was a trade secret or not.  That's what
03:15 15  protective orders are for.
03:16 16        MR. LERNER:   We completely agree with that, Your
03:16 17  Honor.  If there were no trade secret claims in this case,
03:16 18  this would not be a problem.  But every case where there is
03:16 19  a trade secret, given the express language of the statute,
03:16 20  has found that you can't avoid that language.  I'm not aware
03:16 21  of any finding that ignores the language on point.
03:16 22        That's why in all of the cases there was a trade
03:16 23  secret disclosure before you had a ruling that patent
03:16 24  discovery could go forward, or at least as I said, an order
03:16 25  that the trade secret disclosure be produced by a date

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

03:16 1   certain along with admonition that the list couldn't change
03:16 2   without good cause.
03:17 3         So, yes, if there were no trade secret claim, then
03:17 4   2019.210 by and large would not come into play.  There are
03:17 5   some cases holding that if it's kind of, you know, a wolf in
03:17 6   sheep's clothing and it's obvious it's coming, then the
03:17 7   Court would say you still have to do the 2019.210
03:17 8   disclosure.
03:17 9         But here we don't have that situation.  This is a
03:17 10  case where they've suggested they have a serious trade
03:17 11  secret claim.  They've never described it with any
03:17 12  specificity whatsoever, even though they allege it has been
03:17 13  disclosed in public patent filings.  One could just say
03:17 14  here's the page and line number.
03:17 15        Not withstanding all of those things, there's no
03:17 16  description in a case that's, you know, roughly seven months
03:17 17  old, and they want this confidential information.  Again,
03:18 18  once that's done, we just cannot undo it, and we'll have I
03:18 19  think unfortunately a lot of unnecessary disputes about both
03:18 20  the scope of discovery, but also what to do about the fact
03:18 21  that you then have lawyers who have seen our secrets
03:18 22  drafting what their alleged secrets are.
03:18 23        THE COURT:   Mr. Re.
03:18 24        MR. RE:   Well, Your Honor, this is at least the
03:18 25  second or third time they've made this argument.  You are

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

16

03:18 1   correct.  Our patent case is independent of the trade secret
03:18 2   case.  The case law that we already cited and briefed to
03:18 3   Judge Early on these other motions were breach of contract
03:18 4   cases that were factually dependent on the trade secret
03:18 5   claims.  Our case is not dependent on our trade secret case.
03:18 6   And currently the trade secret case has been dismissed on
03:18 7   their Motion to Dismiss.  It's not even pending before the
03:18 8   Court, and obviously the patent case gets to go forward.
03:19 9         I've never seen such strenuous objections to
03:19 10  producing just the core technical documents in a case.  They
03:19 11  are fighting tooth and nail, and they will keep fighting and
03:19 12  fighting no matter what.  They're going to file more motions
03:19 13  I understand today to prevent the disclosures that were due
03:19 14  back in June.  I think the time has come we move forward now
03:19 15  as the Court has indicated.
03:19 16        THE COURT:   Are you going to replead your trade
03:19 17  secret claim?
03:19 18        MR. RE:   Yes, we are.  We plan on complying with
03:19 19  the 30-day leave to amend date at the end of the month.
03:19 20        THE COURT:   Okay.  Well, I think you have my
03:19 21  general views.  Let's see what motion practice results
03:19 22  in.
03:19 23        Anything else we should take up today?
03:19 24        MR. RE:   No.  Thank you, Your Honor.
03:20 25        MR. LYON:   Thank you, Your Honor.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 6
-102-



17

```
03:20   1          MR. LERNER:    Thank you very much, Your Honor.
03:20   2          THE COURT:    Okay.  Thank you very much.
03:20   3          (Whereupon, the proceedings were concluded.)
03:20   4                         *   *   *
        5
        6
        7
        8
        9
       10
       11
       12
       13
       14
       15
       16
       17
       18
       19
       20
       21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

18

```
        1
        2
        3
        4                         CERTIFICATE
        5
        6          I hereby certify that pursuant to Section 753,
        7   Title 28, United States Code, the foregoing is a true and
        8   correct transcript of the stenographically reported
        9   proceedings held in the above-entitled matter and that the
       10   transcript page format is in conformance with the
       11   regulations of the Judicial Conference of the United States.
       12
       13   Date:  July 20, 2020
       14
       15              /s/  Sharon A. Seffens  7/20/20
       16         SHARON A. SEFFENS, U.S. COURT REPORTER
       17
       18
       19
       20
       21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 6
-103-

**/**

/s [1]  18/15

**0**

0193 [1]  2/16
0404 [1]  2/5
0870 [1]  1/21
0921 [1]  2/13

**1**

1-1053 [1]  1/20
10 [2]  1/17 3/1
10166-0193 [1]  2/16
1053 [1]  1/20
1211 [1]  2/10
14th [1]  2/4
15 [2]  6/23 7/1
16 [2]  6/23 7/1
1881 [1]  2/9

**2**

20 [2]  18/13 18/15
200 [1]  2/15
2019 [1]  10/1
2019.210 [4]  11/15 12/23 15/4 15/7
2020 [3]  1/17 3/1 18/13
2021 [1]  5/4
2040 [1]  2/4
21 [3]  4/18 5/22 8/12
212 [1]  2/16
2339 [1]  2/16
27 [1]  8/22
28 [1]  18/7
2:58 [1]  3/1

**3**

30 [1]  4/10
30-day [1]  16/19
3000 [1]  2/12
351-2339 [1]  2/16
393-8254 [1]  2/13

**4**

40 [1]  7/20
411 [1]  2/13
415 [1]  2/13
4th [1]  1/20

**5**

50 [1]  7/20
5307 [1]  2/10
543-0870 [1]  1/21
555 [1]  2/12

**6**

650 [1]  2/10

**7**

7/20/20 [1]  18/15
714 [1]  1/21
753 [1]  18/6
760-0404 [1]  2/5

**8**

8254 [1]  2/13
849-5307 [1]  2/10

**9**

9/21 [2]  4/18 8/12
9/7 [2]  4/6 4/17
92614 [1]  2/5
92701 [1]  1/20
93403-1211 [1]  2/10
94105-0921 [1]  2/13
949 [1]  2/5

**A**

able [2]  8/8 10/9
about [7]  6/21 6/23 7/5 7/20 8/20 15/19 15/20
above [1]  18/9
above-entitled [1]  18/9
accommodate [1]  4/24
actual [1]  4/10
actually [3]  8/18 10/14 10/19
adequate [1]  12/15
adjusted [1]  4/23
adjustments [1]  4/15
admonition [1]  15/1
adopt [1]  4/25
adopting [1]  4/11
advance [1]  12/18
adverse [1]  5/2
after [2]  4/4 4/12
afternoon [3]  3/6 3/11 3/14
again [3]  7/25 9/20 15/17
ago [2]  11/15 11/20
agree [2]  5/20 14/16
agreement [1]  5/9
ahead [1]  10/12
ahold [1]  10/5
al [1]  1/9
alert [1]  5/11
all [9]  6/25 10/5 10/10 10/25 11/11 12/15 13/7 14/22 15/15
allegations [2]  11/7 14/9
allege [1]  15/12
alleged [1]  15/22
allegedly [2]  14/1 14/9
along [1]  15/1
already [4]  6/1 8/1 8/2 16/2
also [4]  8/3 11/17 13/1 15/20
Alto [1]  2/10
always [1]  7/9
amend [1]  16/19
amended [1]  13/15
amending [1]  5/12
among [1]  8/9
amount [1]  3/25
Ana [3]  1/16 1/20 3/1
analyze [2]  6/15 12/10
another [1]  7/22
any [4]  6/21 13/2 14/21 15/11
anybody [1]  11/4
anything [2]  10/24 16/23
APPEARANCES [2]  2/1 3/5
APPLE [4]  1/11 3/4 3/12 3/24
Apple's [1]  11/8
application [1]  10/20
applies [1]  6/25
appreciate [2]  8/6 11/2
are [25]
arguing [1]  6/7
argument [3]  6/25 12/22 15/25
around [1]  14/2
art [7]  3/20 3/25 4/1 4/5 4/9 4/21 8/15
as [18]  3/23 4/14 5/22 6/7 6/7 8/10 8/16 8/17 9/21 9/23 9/25 11/9 11/19 12/5 12/6 12/6 14/24 16/15
ask [1]  8/20
asking [2]  10/15 10/17
aspect [1]  6/9
asserted [1]  14/11
assume [1]  14/11
Avenue [1]  2/15
avoid [2]  10/4 14/20
aware [1]  14/20

**B**

back [4]  5/18 9/9 10/16 16/14
ball [1]  9/4

**based [2]**  11/8 14/1
basic [2]  11/24 12/9
basis [4]  3/23 9/8 10/4 13/7
be [36]
because [8]  6/14 7/15 8/1 8/24 9/25 11/23 12/25 13/20
been [6]  11/20 11/23 13/14 14/4 15/12 16/6
before [9]  5/19 7/6 10/2 10/10 12/3 12/24 12/24 14/23 16/7
begin [1]  5/7
beginning [1]  7/23
behalf [3]  3/5 3/7 3/12
behind [2]  11/24 13/10
being [3]  6/11 6/23 10/9
believe [3]  3/18 8/7 11/4
bell [1]  10/13
better [1]  4/1
between [2]  4/22
bit [2]  7/6 7/21
both [5]  4/19 6/6 9/6 13/9 15/19
breach [1]  16/3
BRIAN [3]  2/8 2/14 3/13
brief [1]  7/12
briefed [3]  11/19 12/3 16/2
briefly [1]  12/20
busy [1]  11/2

**C**

CA [4]  1/20 2/5 2/10 2/13
CALIFORNIA [3]  1/5 1/16 3/1
Calling [1]  3/3
can [12]  6/2 6/11 6/16 7/6 7/9 10/2 10/6 10/21 11/4 11/7 13/17 13/22
can't [5]  10/13 12/1 13/2 13/21 14/20
cannot [2]  11/9 15/18
case [22]
cases [4]  12/24 14/22 15/5 16/4
cause [4]  7/9 13/19 13/22 15/2
CENTRAL [1]  1/5
certain [4]  9/24 13/18 13/21 15/1
CERTIFICATE [1]  18/4
certify [1]  18/6
change [3]  7/8 13/19 15/1
changed [1]  13/21
changes [3]  8/5 9/1 9/5
changing [2]  7/25 8/24
charting [2]  6/6 7/7
charts [1]  6/11
choices [3]  7/14 8/7 8/8
circle [1]  9/9
cited [2]  13/12 16/2
claim [15]  3/23 4/1 4/18 4/23 6/8 6/11 6/16 6/17 6/22 11/7 13/1 14/12 15/3 15/11 16/17
claims [15]  3/19 4/9 4/21 5/16 6/5 6/14 6/23 7/1 7/13 7/20 12/19 13/13 14/13 14/17 16/5
client [1]  6/19
clothing [1]  15/6
Code [1]  18/7
come [9]  4/4 4/17 4/19 5/21 8/9 10/7 10/16 15/4 16/14
comes [1]  3/24
coming [1]  15/6
complete [1]  5/9
completely [2]  9/3 14/16
compliance [2]  11/15 12/8
complying [1]  16/18
concern [2]  6/1 10/14
concluded [1]  17/3
conference [2]  3/2 18/11
confidential [10]  9/18 11/8 11/17 12/11 12/16 13/23 13/24 14/2 14/12 15/17
conformance [1]  18/10
consensus [1]  8/10

Exhibit 6
-104-

## C

**consider** [1]  13/9
**considered** [1]  6/1
**contemplate** [2]  4/9 4/12
**contentions** [12]  3/21 3/21 4/6 4/17 5/1 5/19 8/15 8/22 8/23 9/2 9/7 9/11
**contract** [1]  16/3
**copy** [1]  6/17
**copying** [1]  6/13
**core** [5]  9/11 9/18 12/11 12/16 16/10
**CORPORATION** [3]  1/9 3/4 3/8
**correct** [2]  16/1 18/8
**could** [6]  7/3 7/5 7/22 13/14 14/24 15/13
**couldn't** [1]  15/1
**COUNSEL** [1]  2/1
**couple** [1]  5/25
**course** [1]  5/19
**COURT** [10]  1/4 4/11 5/11 6/22 6/24 11/25 15/7 16/8 16/15 18/16
**Court's** [1]  5/13
**Courthouse** [1]  1/19
**craft** [1]  13/25
**create** [2]  6/13 10/9
**critical** [1]  14/6
**CRUTCHER** [3]  2/9 2/12 2/15
**currently** [2]  8/21 16/6

## D

**date** [8]  4/6 4/7 5/4 13/18 13/20 14/25 16/19 18/13
**dates** [3]  4/22 9/6 9/14
**day** [1]  16/19
**days** [1]  4/10
**deal** [1]  9/4
**decide** [1]  6/16
**decided** [1]  10/21
**Defendant** [2]  1/12 2/6
**defendants** [1]  3/9
**demonstrating** [1]  4/2
**dependent** [2]  16/4 16/5
**described** [1]  15/11
**description** [1]  15/16
**designate** [1]  4/1
**determine** [1]  11/25
**did** [2]  9/20 11/15
**different** [1]  6/17
**differently** [1]  12/10
**disclosed** [5]  12/12 12/18 14/4 14/9 15/13
**disclosure** [13]  3/20 4/10 4/14 11/14 11/18 11/23 12/15 13/14 13/16 13/20 14/23 14/25 15/8
**disclosures** [8]  3/24 4/4 4/5 4/5 4/19 4/24 4/25 16/13
**discovery** [9]  8/2 10/3 11/25 12/1 12/23 12/25 13/3 14/24 15/20
**discretion** [1]  4/13
**discussing** [1]  6/7
**discussion** [1]  6/3
**discussions** [4]  7/19 7/23 8/9 11/22
**Dismiss** [2]  5/13 16/7
**dismissed** [1]  16/6
**dispute** [4]  6/21 11/4 13/2 13/3
**disputes** [1]  15/19
**DISTRICT** [2]  1/4 1/5
**DIVISION** [1]  1/6
**do** [19]
**document** [1]  12/2
**documentation** [1]  9/21
**documents** [7]  5/18 10/6 11/5 11/10 12/11 12/17 16/10
**does** [3]  11/18 12/22 13/5
**doesn't** [2]  13/1 13/11
**don't** [10]  4/18 5/3 7/3 7/16 9/10 10/8 10/23 12/7 14/3 15/9

**done** [4]  7/9 7/10 12/2 15/18
**down** [2]  6/15 7/8
**drafting** [1]  15/22
**drift** [1]  9/15
**due** [3]  5/18 8/22 16/13
**DUNN** [3]  2/9 2/12 2/15
**during** [1]  11/1

## E

**each** [2]  6/15 7/1
**Early** [3]  9/24 12/24 16/3
**effort** [1]  6/12
**either** [1]  13/20
**else** [1]  16/23
**email** [1]  10/17
**enables** [1]  11/24
**end** [3]  6/5 6/23 16/19
**enough** [1]  4/19
**entertain** [1]  9/16
**entitled** [1]  18/9
**equally** [1]  7/1
**et** [1]  1/9
**evaluate** [2]  3/23 5/15
**even** [5]  6/13 14/1 14/6 15/12 16/7
**events** [1]  4/16
**ever** [1]  13/19
**every** [4]  11/6 13/11 13/13 14/18
**everything** [4]  5/10 5/20 7/7 7/16
**ex** [2]  9/8 10/20
**ex-parte** [2]  9/8 10/20
**example** [2]  3/22 11/13
**exception** [1]  13/17
**exchange** [3]  4/17 4/22 5/11
**express** [2]  13/9 14/19
**expressly** [1]  12/23
**extent** [3]  6/21 9/14 12/16

## F

**fact** [6]  5/13 7/16 8/6 12/5 12/12 15/20
**factually** [1]  16/4
**fair** [1]  8/8
**fairly** [1]  9/7
**fall** [1]  12/1
**far** [2]  6/7 8/1
**February** [1]  5/3
**feel** [1]  10/24
**fighting** [3]  16/11 16/11 16/12
**file** [2]  10/19 16/12
**filed** [2]  3/15 9/23
**filings** [1]  15/13
**final** [3]  4/14 8/15 8/17
**finding** [1]  14/21
**fine** [1]  8/11
**firm** [1]  6/19
**first** [5]  7/24 10/16 10/21 10/25 11/14
**Floor** [1]  2/4
**follow** [2]  12/8 13/7
**following** [2]  4/25 8/16
**foregoing** [1]  18/7
**format** [1]  18/10
**forth** [1]  5/12
**forward** [4]  12/14 14/24 16/8 16/14
**found** [1]  14/20
**Francisco** [2]  2/13
**free** [1]  10/24
**Fresh** [1]  3/25
**FRIDAY** [1]  3/1
**full** [1]  3/20
**fully** [1]  5/15
**fundamentally** [1]  3/18
**further** [2]  4/12 8/9

## G

**gearing** [1]  8/2
**general** [2]  5/5 16/21
**get** [4]  7/6 7/7 10/5 10/21

**gets** [2]  7/16 16/8
**getting** [1]  10/12
**GIBSON** [3]  2/9 2/12 2/15
**give** [1]  3/22
**given** [1]  14/19
**gives** [1]  4/18
**go** [6]  4/14 6/18 8/18 12/13 14/24 16/8 9/1 9/1 9/2 9/3 9/14 11/13 13/5 16/12 16/16
**good** [2]  3/6 3/11 3/14 7/9 13/19 13/21 15/2
**guess** [2]  8/25 12/10
**guidance** [1]  11/24

## H

**had** [5]  10/16 10/18 11/23 13/19 14/23
**hank** [1]  8/19
**happen** [1]  9/1
**happy** [2]  3/17 5/5
**hard** [4]  7/14 8/7 8/8 11/9
**has** [10]  3/23 6/15 6/18 12/21 13/12 14/20 15/12 16/6 16/14 16/15
**have** [34]
**having** [4]  6/22 10/25 11/22 12/18
**he** [1]  12/24
**hear** [2]  3/17 5/6
**heard** [2]  7/24 11/3
**hearing** [7]  4/13 4/16 4/23 5/1 5/2 8/16 11/1
**held** [1]  18/9
**helpful** [1]  6/3
**here** [5]  11/12 11/21 13/2 14/6 15/9
**here's** [1]  15/14
**hereby** [1]  18/6
**higher** [1]  7/4
**holding** [1]  15/5
**Honor** [7]  3/6 3/11 5/8 5/24 8/19 8/21 9/19 9/20 11/1 11/14 12/3 12/21 14/17 15/24 16/24 16/25 17/1
**HONORABLE** [1]  1/8
**hope** [1]  9/25
**how** [1]  8/10
**hundreds** [2]  6/5 6/11
**hunt** [1]  10/6

## I

**I'd** [1]  3/16
**I'll** [1]  5/5
**I'm** [5]  5/1 6/10 8/11 8/12 14/20
**I've** [1]  16/9
**idea** [1]  7/7
**identify** [1]  12/19
**ignores** [1]  14/21
**immediately** [1]  10/18
**importance** [1]  14/6
**important** [2]  13/8 14/7
**impose** [1]  8/11
**INC** [2]  1/11 3/4
**indeed** [1]  12/24
**independent** [1]  16/1
**indicated** [2]  5/22 16/15
**individual** [1]  6/16
**inefficient** [1]  3/19
**information** [15]  5/11 6/14 9/12 9/18 10/11 10/12 10/16 10/18 11/8 11/17 13/23 13/24 14/2 14/12 15/17
**infringement** [7]  3/21 5/1 8/14 8/21 9/2 9/6 9/11
**initial** [3]  4/3 4/8 8/13
**instance** [1]  13/6
**instead** [1]  6/22
**invalidity** [8]  3/21 3/24 4/5 4/6 4/16 4/25 8/23 9/7
**involved** [2]  6/8 13/12
**involves** [1]  14/13

Exhibit 6
-105-

## I

Irvine [1]  2/5
is [42]
issue [3]  9/25 10/21 11/6
issues [1]  11/11
it [35]
it's [15]  3/11 3/18 3/25 6/3 7/20 11/2
 13/14 14/1 14/4 14/5 14/6 15/5 15/6
 15/6 16/7
Item [1]  3/3
its [2]  3/24 9/10

## J

JAMES [1]  1/8
JENSEN [2]  2/3 3/8
joint [2]  3/15 8/13
JOSEPH [2]  2/3 3/7
JOSHUA [3]  2/8 2/11 3/12
judge [4]  1/8 9/17 12/24 16/3
Judicial [1]  18/11
July [5]  1/17 3/1 8/22 9/3 18/13
July 27 [1]  8/22
June [2]  5/18 16/14
just [13]  5/25 5/25 6/2 7/16 8/4 9/14
 12/1 12/20 12/25 13/23 15/13 15/18
 16/10
JVS [1]  1/11 3/3

## K

keep [1]  16/11
key [1]  11/21
kind [4]  6/4 7/11 10/6 15/5
kinds [2]  7/22 11/11
kitchen [1]  7/17
KNOBBE [2]  2/4 3/7
know [8]  7/20 8/25 9/23 10/1 10/23 11/1
 15/5 15/16
knowing [1]  10/18

## L

language [4]  13/9 14/19 14/20 14/21
large [1]  15/4
last [1]  3/16
later [3]  8/12 13/15 13/20
law [1]  16/2
lawyers [2]  11/16 15/21
leading [1]  4/16
leads [1]  11/10
least [4]  6/2 13/15 14/24 15/24
leave [2]  4/13 16/19
LERNER [4]  2/8 2/11 3/12 10/23
let [5]  3/16 3/22 5/25 6/1 9/9
Let's [3]  5/7 14/11 16/21
levels [1]  6/18
light [2]  4/1 9/7
like [1]  7/12
likely [1]  9/16
limits [4]  6/4 7/12 7/13 8/10
line [2]  9/5 15/14
list [2]  10/7 15/1
little [2]  7/21 7/25
LLP [3]  2/9 2/12 2/15
long [2]  6/12 11/20
look [1]  13/23
lot [2]  7/12 15/19
LYON [5]  2/7 3/12 5/23 9/20 12/5

## M

made [4]  4/4 9/14 9/16 15/25
magistrate [2]  9/17 9/24
Main [1]  2/4
make [9]  6/19 6/24 7/14 7/14 7/15 8/7
 8/8 9/10 11/7
makes [3]  3/24 5/3 6/25
many [4]  11/15 14/3 14/8 14/8

## MARK [3]  2/7 3/11 9/20

Markman [7]  4/13 4/16 4/23 5/1 5/2 7/11
 8/16
MARTENS [2]  2/4 3/7
MASIMO [14]  1/9 3/4 3/7 3/23 4/1 9/5
 9/10 10/15 12/18 12/21 13/12 13/22
 14/11
materials [1]  12/15
matter [1]  11/21 16/12 18/9
may [10]  4/15 6/1 6/23 8/3 8/20 9/23
 10/1 10/19 12/13 12/20
maybe [3]  7/21 7/22 7/23
me [9]  3/8 3/12 3/16 3/22 4/8 5/25 6/2
 9/9 9/16
mean [2]  6/9 13/1
mention [1]  13/11
might [2]  6/8 11/17 14/8
Mill [1]  2/9
Mission [1]  2/12
monkey [1]  8/3
month [2]  5/2 16/19
months [2]  11/15 15/16
more [8]  5/15 7/6 7/21 8/4 8/20 10/24
 14/6 16/12
most [2]  11/12 11/24
motion [5]  5/13 9/16 10/14 16/7 16/21
motions [2]  16/3 16/12
move [1]  16/14
Mr [1]  12/5
Mr. [5]  5/7 5/23 9/9 10/23 15/23
Mr. Lerner [1]  10/23
Mr. Lyon [1]  5/23
Mr. Re [3]  5/7 9/9 15/23
much [2]  17/1 17/2
my [5]  3/8 3/16 4/3 5/5 16/20

## N

nail [1]  16/11
narrowing [1]  4/20
necessary [1]  10/20 12/5 12/6
need [7]  4/23 5/19 7/19 7/21 10/19
 11/18 12/13
needs [4]  5/10 5/14 7/10 10/1
never [3]  14/11 15/11 16/9
new [2]  2/16 8/25
no [8]  3/3 8/12 13/2 14/17 15/3 15/15
 16/12 16/24
non [1]  12/25
non-trade [1]  12/25
nonconfidential [1]  9/21
normal [1]  14/7
not [21]
notwithstanding [1]  12/12
now [7]  7/5 7/19 9/23 12/7 12/12 12/18
 16/14
nullity [2]  12/22 13/6
number [5]  3/19 7/3 7/4 8/14 15/14
numbers [2]  7/3 7/5
NY [1]  2/16

## O

objection [1]  9/23
objections [2]  10/19 16/9
obvious [1]  15/6
obviously [2]  11/18 16/8
off [1]  8/23
okay [3]  6/20 16/20 17/2
old [1]  15/17
once [3]  11/5 11/10 15/18
one [8]  6/3 8/20 9/9 10/13 11/7 13/13
 13/17 15/13
only [2]  13/11 13/17
opportunity [1]  11/2
order [5]  5/13 8/12 9/13 9/22 11/15 12/3
 13/18 13/21 14/24
orders [2]  9/24 14/15

## other [5]  5/17 11/21 12/15 13/11 16/3

otherwise [2]  7/14 10/8
ought [4]  4/4 8/8 8/16 8/17
our [13]  5/12 5/19 7/2 8/22 11/16 11/19
 13/23 13/24 14/1 15/21 16/1 16/5 16/5
out [9]  5/14 5/21 6/2 9/15 9/15 9/15
 10/11 10/19 11/5
over [1]  6/7
overlap [1]  12/13
own [1]  11/9

## P

P.M [1]  3/1
page [4]  2/9 7/12 15/14 18/10
pages [1]  6/12
Palo [1]  2/10
paragraph [1]  6/17
parallel [1]  13/13
Park [1]  2/15
part [1]  9/21
parte [2]  9/8 10/20
parties [9]  3/18 4/4 4/7 5/15 5/20 6/6 8/7
 8/13 12/2
parties' [1]  4/17
partner [1]  3/8
parts [1]  8/4
party's [1]  5/18
pasting [1]  6/13
patent [10]  9/17 12/14 12/17 13/3 13/24
 14/13 14/23 15/13 15/13 16/1 16/8
patents [9]  5/14 7/25 8/3 8/24 9/6 12/11
 14/3 14/8 14/10
peck [1]  10/6
pending [1]  16/7
people [2]  7/13 11/13
Per [1]  3/2
permit [1]  9/13
pick [2]  7/5 7/21
picked [1]  7/4
place [4]  9/13 9/23 10/2 10/14
plaintiff [2]  3/5 13/18
plaintiffs [4]  1/10 2/2 7/21 10/5
plan [1]  16/18
planning [2]  5/12 7/25 12/6
play [1]  15/4
pleading [2]  5/12 8/25
please [3]  3/5 3/10 10/24
point [9]  6/4 8/7 9/19 9/20 11/5 11/6
 11/18 13/12 14/21
points [1]  5/25
poker [1]  3/22
policy [2]  11/21 11/24
possible [3]  10/22 12/7 13/14
potentially [2]  6/5 6/7
practice [1]  16/21
preparing [1]  7/11
present [1]  4/8
presently [1]  9/12
PRESIDING [1]  1/8
prevent [1]  16/13
prior [9]  3/20 3/20 3/25 4/1 4/5 4/9 4/21
 8/15 13/13
probably [1]  7/15
problem [2]  14/3 14/18
problems [3]  11/22 12/8 13/7
proceed [2]  10/2 12/19
proceedings [3]  1/15 17/3 18/9
produce [3]  9/11 9/20 10/16
produced [3]  11/10 12/16 14/25
producing [1]  16/10
product [1]  11/9
production [3]  9/14 9/17 14/13
productions [1]  8/14
proper [1]  11/25
proposal [7]  4/8 4/11 4/20 4/24 5/21
 8/13 8/15

Exhibit 6
-106-

**P**

propose [1] 4/7
proposed [1] 4/18
protective [3] 9/13 9/22 14/15
provide [1] 12/2
provided [4] 10/12 11/19 11/20 11/23
public [1] 15/13
purported [1] 13/25
purpose [1] 10/9
pursuant [2] 4/24 18/6
put [1] 7/13
putting [1] 6/4

**Q**

question [1] 8/20
quickly [1] 12/6
quite [1] 14/8

**R**

raise [2] 5/25 12/6
raised [2] 11/6 12/21
RE [5] 2/3 3/7 5/7 9/9 15/23
real [1] 13/22
really [3] 7/10 10/4 10/8
reasons [2] 7/8 14/5
received [1] 5/17
reduction [3] 3/19 4/8 4/12
reductions [1] 4/10
reevaluate [1] 9/6
references [4] 3/20 4/9 4/21 8/15
reflect [1] 4/19
reflected [1] 9/2
regard [1] 9/17
regarding [1] 5/13
regulations [1] 18/11
reign [1] 7/6
relate [1] 13/1
related [2] 6/14 12/23
relates [2] 12/25 13/3
relevant [3] 11/12 12/11 12/17
relief [1] 10/21
render [2] 12/22 13/5
replead [1] 16/16
report [1] 3/15
reported [1] 18/8
REPORTER [1] 18/16
REPORTER'S [1] 1/15
requests [1] 12/1
require [2] 3/19 4/15
required [1] 9/10
respond [1] 12/20
results [1] 16/21
review [2] 6/19 6/24
road [2] 2/9 7/8
ROSENTHAL [3] 2/8 2/14 3/13
roughly [1] 15/16
round [2] 4/3 8/14
Royal [1] 3/25
RPR [1] 1/19
rule [4] 10/4 11/24 12/9 13/8
ruled [1] 12/4
ruling [1] 14/23
run [2] 12/7 14/3

**S**

SACV [2] 1/11 3/3
SACV-20-00048-JVS [2] 1/11 3/3
said [5] 5/10 5/20 9/9 12/25 14/24
same [1] 6/25
San [1] 2/13
Santa [3] 1/16 1/20 3/1
say [5] 6/3 10/23 14/7 15/7 15/13
says [1] 12/5
schedule [2] 8/5 9/22
scheduling [1] 12/3

scope [2] 11/25 15/20
second [2] 11/4 15/25
secret [20]
secrets [11] 10/7 10/10 10/13 12/13
12/15 12/24 13/4 13/25 14/9 15/21
15/22
Section [2] 11/15 18/6
see [2] 9/3 16/21
seek [1] 10/20
seen [4] 6/10 11/16 15/21 16/9
SEFFENS [3] 1/19 18/15 18/16
selections [1] 4/20
SELNA [1] 1/8
sense [2] 5/3 6/25
separate [1] 9/3
September [2] 5/22 8/23
September 21 [1] 5/22
serious [1] 15/10
set [3] 5/12 7/2 8/21
seven [1] 15/16
share [1] 3/16
SHARON [3] 1/19 18/15 18/16
sheep's [1] 15/6
short [1] 9/8
should [7] 7/15 9/10 11/19 12/12 12/16
12/18 16/23
show [1] 13/19
side [1] 13/3
sides' [1] 4/19
significant [1] 6/12
similar [1] 6/24
simply [2] 6/16 11/9
single [2] 6/22 13/13
sink [1] 7/17
sit [1] 6/15
situation [3] 10/5 13/22 15/9
six [1] 5/2
slipping [1] 5/2
so [19]
some [19]
somebody [1] 6/15
something [3] 6/10 7/9 7/19
sort [1] 7/12
SOUTHERN [1] 1/6
space [1] 14/8
specific [1] 4/11
specificity [1] 15/12
stage [2] 7/10 8/17
staging [1] 9/24
start [1] 8/2
statement [1] 10/2
states [5] 1/4 1/19 12/23 18/7 18/11
statute [4] 12/22 13/6 13/9 14/19
stenographically [1] 18/8
STEPHEN [2] 2/3 3/8
still [2] 6/14 15/7
stipulate [1] 7/23
Street [1] 1/20 2/4 2/12
strenuous [1] 16/9
subject [1] 14/13
submit [1] 8/13
substantially [1] 8/5
substituting [1] 5/14
such [1] 16/9
suggested [1] 15/10
suggesting [1] 7/18
Suite [2] 1/20 2/12
Suppose [1] 3/22
sure [3] 6/10 6/19 6/25

**T**

take [1] 16/23
talk [1] 7/5
talked [1] 10/17
target [4] 6/4 7/5 7/12 9/1
technical [7] 5/18 9/12 9/21 10/6 10/10

12/17 16/10
telephone [1] 11/1
telephonic [1] 3/2
ten [1] 7/22
terms [4] 4/18 4/23 6/8 8/17
terrible [1] 7/4
than [3] 7/21 8/12 14/7
thank [9] 3/6 3/15 5/8 5/24 10/25 16/24
16/25 17/1 17/2
that [119]
that's [13] 5/3 5/12 6/9 6/20 7/8 7/18
7/25 8/11 10/13 14/14 14/22 15/16
15/18
their [7] 4/4 4/5 11/9 13/25 14/3 15/22
16/7
theirs [1] 14/1
them [6] 6/10
then [19]
there [22]
there's [6] 6/21 7/4 7/7 12/8 13/2 15/15
these [14] 6/10 6/11 6/14 7/8 7/13 9/14
10/5 10/18 11/1 11/5 11/10 11/22 11/22
16/3
they [18] 7/14 7/15 7/16 8/8 10/7 10/8
10/16 12/2 12/12 12/13 12/17 13/19
14/3 15/10 15/12 15/17 16/10 16/11
they'll [1] 7/13
they're [3] 6/6 7/24 16/12
they've [3] 15/10 15/11 15/25
thicket [1] 13/24
thing [3] 6/3 9/9 13/11
things [3] 7/8 12/10 15/15
think [18] 4/15 4/18 4/22 5/9 5/10 5/20
7/3 9/10 11/12 11/21 11/23 13/7 13/8
13/17 14/5 15/19 16/14 16/20
third [2] 8/17 15/25
this [23]
those [10] 4/10 5/5 7/1 7/22 8/24 9/1
10/10 10/13 14/5 15/15
though [3] 8/20 14/1 15/12
thought [1] 4/3
thoughts [2] 3/16 5/5
thousands [1] 6/12
through [2] 6/18 13/23
throw [2] 6/2 8/3
thrown [1] 7/16
time [8] 4/14 4/19 5/15 8/10 11/20 13/15
15/25 16/14
times [1] 11/2
Title [1] 18/7
today [2] 16/13 16/23
tooth [1] 16/11
trade [27]
transcript [3] 1/15 18/8 18/10
trial [3] 4/14 5/4 8/18
tries [1] 14/2
trigger [1] 8/23
triggers [1] 8/22
trivial [1] 6/9
troubling [1] 8/1
true [1] 18/7
try [2] 10/7 13/25
trying [3] 7/18 8/2 10/8
two [2] 4/7 11/12
type [1] 10/20

**U**

U.S [1] 18/16
understand [3] 9/12 12/21 16/13
understood [1] 10/15
undo [1] 15/18
undone [1] 11/10
unfair [1] 3/18
unfortunately [1] 15/19
UNITED [4] 1/4 1/19 18/7 18/11
unnecessary [1] 15/19

Exhibit 6
-107-

**U**

**unrung [1]** 10/13
**until [2]** 9/11 12/2
**up [11]** 3/24 4/19 5/21 6/5 6/11 6/15
6/23 8/2 8/21 10/7 16/23
**us [2]** 10/15 10/17
**use [1]** 13/24

**V**

**vague [1]** 11/7
**valuable [1]** 11/8
**versus [1]** 3/4
**very [8]** 6/12 8/1 12/20 13/7 13/15 13/22
17/1 17/2
**viable [1]** 4/2
**view [2]** 7/2 11/19
**views [1]** 16/21

**W**

**waiting [1]** 9/22
**want [6]** 5/11 8/9 8/25 10/23 11/17
15/17
**wanted [1]** 13/19
**wants [1]** 12/19
**was [8]** 10/15 10/17 13/13 13/15 13/17
13/18 14/14 14/22
**wasn't [1]** 4/2
**waterfall [1]** 12/7
**wax [1]** 9/4
**way [2]** 10/9 13/25
**ways [2]** 7/13 14/5
**we [52]**
**we'll [1]** 15/18
**we're [6]** 5/9 8/2 8/18 9/22 12/6 13/5
**we've [1]** 7/24
**weave [1]** 14/2
**week [1]** 3/16
**weeks [2]** 4/7 5/2
**Well [3]** 9/5 15/24 16/20
**were [9]** 5/18 7/18 14/9 14/17 15/3 16/3
16/4 16/13 17/3
**West [1]** 1/20
**what [14]** 4/6 4/14 6/7 8/12 8/16 8/17
8/18 11/12 11/16 14/14 15/20 15/22
16/12 16/21
**what's [1]** 13/10
**whatever [3]** 4/24 6/18 7/20
**whatsoever [1]** 15/12
**when [4]** 3/24 8/25 11/14 12/14
**where [6]** 6/10 10/5 13/17 14/7 14/18
15/10
**Whereupon [1]** 17/3
**whether [4]** 6/16 7/20 11/25 14/14
**which [13]** 5/18 6/12 6/14 6/23 8/22 9/22
9/25 11/6 11/18 12/2 12/3 12/19 14/12
**who [2]** 11/16 15/21
**whole [2]** 10/4 10/9
**why [2]** 7/18 14/22
**will [9]** 5/14 5/20 5/21 8/7 8/13 12/8 13/6
13/11 16/11
**wind [1]** 6/11
**winds [1]** 6/15
**within [3]** 4/7 4/10 12/1
**without [3]** 13/20 13/21 15/2
**withstanding [1]** 15/15
**wolf [1]** 15/5
**work [4]** 5/21 11/9 11/14 11/17
**world [1]** 3/22
**worrying [1]** 6/23
**would [20]**
**wouldn't [1]** 7/14
**wrench [1]** 8/4

**Y**

**years [1]** 11/8

**yes [3]** 5/17 15/3 16/18
**yesterday [2]** 10/15 10/17
**yet [1]** 5/17
**York [1]** 2/16
**you [43]**
**you've [1]** 6/10
**your [21]**
**yourselves [1]** 8/9

Exhibit 6
-108-