# EXHIBIT 22

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

| | | |
|---|---|---|
| MASIMO CORPORATION, ET AL, | ) | CASE NO: 8:20-CV-00048-JVS-JDEx |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Santa Ana, California |
| | ) | |
| APPLE, INC, | ) | Thursday, May 20, 2021 |
| | ) | |
| Defendant. | ) | |

PARTIAL TRANSCRIPT RE:

MOTION TO COMPEL [DKT.NOS.351,357]


BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE

(SEALED PORTIONS OMITTED)


**APPEARANCES:**                    SEE PAGE 2


Court Reporter:          Recorded; REMOTE; Wave

Courtroom Deputy:        Maria Barr

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988


**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

**APPEARANCES**:


For Plaintiffs:              BENJAMIN A. KATZENELLENBOGEN, ESQ.
                             Knobbe Martens Olson & Bear, LLP
                             2040 Main Street
                             14th Floor
                             Irvine, CA 92614

                             ADAM POWELL, ESQ.
                             Knobbe Martens Olson & Bear, LLP
                             12790 El Camino Real
                             San Diego, CA 92130


For Defendant:               JOSHUA H. LERNER, ESQ.
                             Gibson Dunn & Crutcher, LLP
                             555 Mission Street
                             Suite 3000
                             San Francisco, CA 94105

                             ILISSA S. SAMPLIN, ESQ.
                             Gibson Dunn & Crutcher, LLP
                             2029 Century Park East
                             Suite 4000
                             Los Angeles, CA 90067

Exhibit 22
Page 2

3

1              **Santa Ana, California; Thursday, May 20, 2021**

2                     **(Remote Appearances)**

3                        **Call to Order**

4          **THE CLERK:**  Please come to order.  This United States

5    District Court is now in session, the Honorable John D. Early,

6    United States Magistrate Judge presiding.

7          **THE COURT:**  Good morning, everyone, please be seated.

8      **(All respond good morning)**

9          **THE COURT:**  All right, calling the case of *Masimo*

10   *Corporation, et al versus Apple Inc.*, Central District of

11   California Case Number 8:20-00048-JVS.

12         We are here on two Motions.  We'll take appearances

13   with Counsel and then we'll describe the Motion.  We'll start

14   with Counsel for Plaintiff.

15         **MR. POWELL:**  Thank you, Your Honor, Adam Powell for

16   the Plaintiff Masimo Corporation and Cercacor.

17         With me is my partner Ben Katzenellenbogen.

18         **THE COURT:**  All right, thank you, good morning.

19         And for Defendants -- for Defendant?

20         **MR. LERNER:**  Good morning, Your Honor, Joshua Lerner

21   of Gibson Dunn on behalf of Apple, and with me is my partner,

22   Ilissa Samplin.

23         **THE COURT:**  All right, good morning and welcome, as

24   well.

25         We are proceeding and everyone is wearing a mask.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 22
Page 3

1        **MR. POWELL:**  Thank you, Your Honor.  I'll be very

2   brief here unless you have any specific questions.

3        But I think the Court is correct that the

4   interpretation and the scope of 2019 is at issue, and

5   Mr. Lerner is interpreting 2019 too narrowly, and that I think

6   you're correct in your analogy of a tether that not just these

7   specific words are relevant.  And the reason is we have both

8   the *PMC* case and the -- I'm sorry.

9        Both the *PMC* case and the *SkinMedica* case made clear

10  that you can use a trade secret in a lot of different ways, and

11  I think Your Honor was correct when you said that a trade

12  secret can be incorporated in an initial product and then it

13  can be tweaked, it can be modified, it can be changed, and

14  those products still misappropriate a trade secret.

15        So that's why I think, again, we don't know how many

16  heart rate algorithms are even at issue.  We don't know how

17  many they have because we haven't been told how many they have

18  for the same reason as the Court, we don't have that evidence.

19  It could be two, it could be 20, I have no idea.

20        **THE COURT:**  Right.

21        **MR. POWELL:**  And that's why we think that it's just

22  not that burdensome to --

23        **THE COURT:**  So I'm going to cut you off because -- to

24  keep things moving, a part of the reason I'm going to cut you

25  off is I think Mr. Lerner might more appreciate some thoughts I

Exhibit 22
Page 4

22

1    have on the very next one, Request Number 64, and this is why

2    we're tying these to the specific Request, it's great to have

3    global discussions.

4           Request Number 64:

5           "All documents and things that refer or relate to

6           selection between any heart rate algorithm used in

7           any of the Apple Watch products."

8           I read that as a much, much, much, much, much, much,

9    much, much broader Request than Number 63 'cause here we get

10   into "refer or relate to documents and things."

11          Now we get into it's slightly narrowed as it relates

12   to "selection," but now we get to the exact thing I said that I

13   don't interpret 63 to call for, and you have confirmed, we're

14   now opening the proverbial Pandora's Box where I think on this

15   one I can say, without a showing of burdensome from Apple, of

16   burdensomeness without evidence, that I can read this just like

17   that Coca Cola example, wow, that's pretty broad.

18          Am I wrong?

19          **MR. POWELL:**  Your Honor, I would respectfully

20   disagree, and I'll tell you why.

21          Number 1, we're not asking for every single document

22   in the company, we're asking for a reasonable search pursuant

23   to Rule 26, so what --

24          **THE COURT:**  Well -- so you've got your custodians,

25   there was a big fight over custodians, you got how many, 39

23

1   custodians?  Okay.

2          So you're right that there are limitations, but

3   "refer or relate to," the only thing that might save you here

4   is the modifier "selection between."  That does narrow it,

5   okay?

6          But whatever you got through that narrowing I'm

7   imagining piping, I did some plumbing, you've got a narrowing

8   and then all of a sudden you've got an explosion.  So the

9   narrowing helps, right?  The flow of water is going to be

10  slowed, but that "refer or relate to" I wish you had written

11  this one the way -- I shouldn't say "I wish," you know, I get

12  things as they come; had you written this that said "all

13  documents sufficient to show how heart rate algorithms were

14  selected in any Apple Watch product" I would view it much more

15  like 63, but this is not worded that way, so I'm inclined to

16  say that this one is too broad.  I can see it on the face of

17  the Request even without evidence, Apple, and as I mentioned to

18  you I'm not going to be in the business with 92 Requests to

19  start narrowing on the fly, it's either going to be granted or

20  denied.

21         My inclination is to grant the Motion as indicated,

22  as interpreted as to 63 and deny it as to 64.

23         So let me hear from you.

24         **MR. LERNER:**  Thank you, Your Honor.  I'll be very

25  brief.

Exhibit 22
Page 6

24

1          I think the selection between heart rate algorithms

2   does sufficiently narrow this Request and I'll tell you why.

3          One of the trade secrets at issue here, I'll try to

4   be broad, but perhaps we'll need to seal this portion of the

5   transcript if I get too detailed, would that be okay?

6          **THE COURT:**  So this is ultimately your information,

7   you don't need to ask my permission, but you need to let me

8   know when you think something is confidential, and then I'll

9   ask Plaintiff whether they have any objection to sealing a

10  portion of the transcript.  It's going to complicate any effort

11  to obtain a copy of the transcript, but I defer to you, if you

12  need to do it; otherwise you can point to particular pages on

13  the sealed exhibit and I can review it silently, you are free

14  to do any mechanism you wish.

15         **MR. LERNER:**  Thank you, Your Honor.  So I will refer

16  you to -- then I will refer to Exhibit 28 of my Declaration,

17  and specifically Page --

18         **THE COURT:**  (indisc.)

19         **MR. LERNER:**  I'm sorry, Your Honor, do you need the

20  Docket Number?

21         **THE COURT:**  Help me, it would be helpful and, again,

22  it gets back to something that gets very complicated when we

23  have some sealed and some unsealed, and I can't tell by Exhibit

24  Number whether it's in a sealed portion of a Declaration, which

25  is filed differently so, yes, a Docket Number would be helpful.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 22
Page 7

25

1          MR. LERNER:  Okay, it is Docket 353-2, and this is

2   Page 13, Lines 4 through 7.

3          THE COURT:  It's loading so give me a moment.

4          MR. LERNER:  I apologize.

5      (Pause)

6          THE COURT:  All right, 4 through 7 you said.  I may

7   be looking at the wrong document.  You said 353-2?

8          MR. LERNER:  Correct, Your Honor.

9          THE COURT:  Page 15?

10          MR. LERNER:  Page 13.

11          THE COURT:  13, all right.  So just to be clear are

12   you talking about the document pagination or the CM pagination?

13          MR. LERNER:  I am sorry, Your Honor, I was talking

14   about the document pagination, so this is on the document --

15   the Docket Number is Page 315.

16          THE COURT:  All right.

17      (Pause)

18          THE COURT:  All right, I'm at Page 315, Docket

19   pagination of Docket Number 353-2, and I'm looking at Lines 4

20   through 7.

21          MR. LERNER:  Okay, it begins with Paragraph 1.

22          THE COURT:  You don't have to read it if it's -- I'm

23   -- it's F1.

24          MR. LERNER:  Thank you, Your Honor.  So if you look

25   specifically at Lines 6 through 7, the last portion of that

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 22
Page 8

26

1    recitation, that's what we're dealing with here is the idea of

2    the selecting between heart rate algorithms in the Apple Watch

3    product.

4              And, again, this goes back to Counsel, in their

5    papers, argued for this one that the word "the" or "a"

6    singular, refers to a single algorithm and, again, this goes

7    back to the *PMC* and *SkinMedica* case, by using the trade secret

8    you can modify it and use only a portion of the trade secret,

9    so it's not limited to just a single algorithm.

10             And I think it's -- the difference between

11   "sufficient to show" and "documents that refer or relate" in

12   this particular circumstance is "documents sufficient to show a

13   selection" would not show documents about the discussion of how

14   important it is, who presented that idea to Apple.

15             So, for example, if Lamego presented that idea that

16   is a highly relevant document that would be important showing

17   misappropriation; whereas, if somebody else presented the idea

18   it may be exculpatory.  And so that's why I think "refer or

19   relate" is more specific, or more important when we're talking

20   about a specific request.  Whereas, Request 63, like you said,

21   was trying to figure out the universe so we could try to refer

22   to the specific algorithms at issue.

23             64 is more directed towards specific trade secrets

24   and trying to get documents to figure out where that idea came

25   from.

1          And with that I'll conclude if Your Honor doesn't

2     have any other questions.

3          **THE COURT:**  Well, why -- when is your discovery

4     cutoff?  I know we've got half the case stayed, but you still

5     have a discovery -- you still have an Operating Scheduling

6     Order.  Is it July -- July 5th, is that what my memory is?

7          **MR. LERNER:**  Correct, Your Honor.

8          **THE COURT:**  You're nodding heads, but I want to --

9     okay.  So we are now -- and I want to get you guys a ruling as

10    quickly as possible, we're now May -- what are we?

11         **MR. POWELL:**  20th.

12         **THE COURT:**  20th.  So it would be tight, but you have

13    time to propound a more narrowed Request.

14         All of these rulings would be without leave to filing

15    or serving Supplemental Requests, but I have heard the

16    argument.  I'm still of the view that when we're dealing with a

17    situation covering a massive amount of both -- I did this once

18    before, of time -- I say "physical time," which, of course, is

19    an oxymoron, but a massive amount of time, and 39 custodians,

20    and I'm taking that into account.  I know that's not what Apple

21    wanted, they wanted it, what, 12 or 13 and it's 39.

22         So any baseball fans here?  Yeah.

23         I grew up a Yankees fan, never liked the Red Sox,

24    hated the Red Sox, this expression they used to have about the

25    Green Monster in Boston was "The Green Monster giveth and the

28

1    Green Monster taketh away."  Sometimes it's (indisc.), a fly

2    ball is a home run, sometimes a line drive that would be out in

3    any other ballpark as a single.

4            You've got most of what you wanted on your number of

5    custodians, but that also educates me and is part of my

6    analysis here for how difficult it would be to search for some

7    of these things, and this one, it's that "refer or relate"

8    language with 39 custodians, especially considering you're

9    getting and are going to be ordered to get documents sufficient

10   to show the heart rate algorithms.

11           My hope is that can be done quickly and I'm going to

12   have some pretty quick turnarounds on these, and if you want to

13   serve a follow-up Request when you see some algorithms that

14   look like something you're interested in and you want to get

15   information about how that algorithm was selected you can do a

16   targeted follow-up request rather than a scatter shot request

17   like this that has that.  There is a narrowing, but then it

18   expands so that's my thinking.

19           I'll let Mr. Lerner, who has been sitting as I have

20   been discussing, and you can talk about 63 or 64, but I hope

21   this gives you some insight into where we're going to be going

22   on a lot of these individual requests.

23           **MR. LERNER:**  I think I understand Your Honor's points

24   given the amount of time Your Honor has devoted to this

25   already.  I don't have more on these two unless, for some

Exhibit 22
Page 11

29

1   reason, you were inclined to revisit your inclination on 64,

2   I'm fine keeping going.

3           **THE COURT:**  All right.  So let's turn to 65, and

4   these are kind of a group because they are similar.

5               "All documents and things that refer or relate to

6               power consumption by any heart rate algorithm used in

7               any of the Apple Watch products."

8           We've got the same issue here.  There's a narrowing,

9   okay, power consumption and, again, if it were "sufficient to

10  show power consumption," "sufficient to show how the selection

11  of power consumption for the heart rate algorithm," much more

12  narrow, I think.  But with 39 custodians covering how many

13  years?

14          When did Mr. Lamego -- was it 2013 or 2014 that he

15  arrived at Apple?

16          **MR. LERNER:**  I believe he arrived in early 2014.

17          **THE COURT:**  Okay.  And, again, you're -- we're going

18  up through the current IPhone 6, that's a lot of time, that's

19  eight years, that's a lot of records, 39 custodians over,

20  again, what I would consider --

21          And don't take it as a critique that I'm saying it's

22  a scatter shot, that's a loaded term, I don't want to see that

23  referenced in some future filing that I accused Plaintiffs of

24  scatter shot --

25          **MR. LERNER:**  (indisc.)  I won't do it.

Exhibit 22
Page 12

46

1    appointment of a special master?

2          **MR. LERNER:**  I'm sure they do.  I always come with

3    the belief that I should answer your questions and I will sort

4    that out and not avoid it.  My first thought at least is I

5    think we still prefer working with Your Honor.  We would

6    certainly I think stipulate to a limit on what is being

7    submitted to you.

8          I agree, this is -- this is a process that I have

9    never -- I've never seen.  It's incredibly long.  It doesn't

10   have limits.  And if you want to do five pages per side and

11   then, like you said, Your Honor does thumbs up or thumbs down,

12   we will work with you on limits that make it possible.

13         **THE COURT:**  So, I don't want to get into the details.

14   Because they're going to say the reason why there are so many

15   is because you're an obstructionist.  Okay?

16         **MR. LERNER:**  Understood.

17         **THE COURT:**  So, I'm not going to be -- I hammer

18   nails.  All right?  But right now I'm getting bags of nails

19   thrown at me, all right, and I can't hammer them all.  And I

20   want to do it right.  And I think you would want these things

21   done right.  I think you would want someone who has the time

22   and the ability to dedicate, particularly once I hear there's

23   now going to be crossover with the True Wearables case and we

24   have law firms being subpoenaed in connection presumably with

25   the representation of their client and there may have to be a

Exhibit 22
Page 13

47

1    separate special master appointed to handle those issues.

2         **MR. LERNER:**  Then I apologize I didn't answer your

3    question then.  We --

4         **THE COURT:**  Well, you did answer it.  You said you

5    don't know, and I respect that.  I didn't push Mr. Powell on

6    it.  And if you want to tell me your thoughts, you're welcome

7    to.

8         **MR. LERNER:**  I had thought perhaps cutting down the

9    size of what's being submitted would help.  If Your Honor's

10   direction is go work it out to get a special master, we'll talk

11   with them again about who we'd agree on and try and get it

12   sorted out for you.

13        **THE COURT:**  Well, I can't appoint a special master.

14   I see that --

15        **MR. LERNER:**  Understood.

16        **THE COURT:**  -- you did agree to -- at least the two

17   judges you agreed to, retired judges, Judge Segal and

18   Judge Guilford, I had Judge Guilford appointed as a special

19   master in another case from Judge Staton, and Judge Segal I

20   think would be a great person with all kinds of experience to

21   help you work through a lot of the issues here.  I don't know

22   what her availability is.

23        But I'm at a bit of a loss after putting in as much

24   time as I did on these two motions to hear that I've got two

25   more coming.  And the fact that something is six or eight pages

Exhibit 22
Page 14

48

1   on one side, I don't know what's coming from the other side.

2   And I had a 240-page joint stipulation not too long ago that

3   was not difficult at all to rule on.  Sometimes I have six-page

4   apex-type depositions that are incredibly complex and require a

5   great deal of thought.

6          And -- again you're getting too inside baseball here.

7   Law clerks are great.  Law clerks who have never practiced I

8   don't think are able to handle a lot of the discovery disputes

9   as easily as someone who has practiced.  So -- I don't want to

10  waste any more time.  You don't have positions on it.  We're

11  going to proceed, but it can't go on like this and I don't know

12  what to do.

13         I think we had -- and maybe it was that same phone

14  call or maybe it was on a subsequent Order, but I on one issue

15  offered to have an informal, made myself available to have an

16  informal telephone call about whatever the issue was, and my

17  mind is forgetting what that was, and I wasn't taken up on it.

18         I don't know if that's going to help, but things like

19  spoliation or spolation, that's not one I can rule on on the

20  fly and that's not one anyone can.  But if we -- if this is the

21  reality of what we have, we're going to have to come up with

22  another way or a better way to handle it that takes into

23  account that this is a public office that serves all sorts of

24  people, not just one case.

25         So, let's proceed on with -- we left off at Request

49

1    Number 65.  I read it into the record.  I gave some tentative

2    thoughts to you, Mr. Powell.  It's the refer or relate and any

3    ruling would be without prejudice to you or your client serving

4    a follow-up request for production.

5           And I'm going to throw this out there.  I don't mind

6    seeing request for production number 850.  That in and of

7    itself tells me nothing, because 850 carefully crafted requests

8    for production are much better than ten, you know, give me

9    every single document referring, relating, concerning, having

10   anything to do with some general topic.  So, I don't mind if

11   the numbers get up there high.

12          What I mind is trying to figure out how on an eight-

13   year time period with I understand there's still a dispute on

14   up to 39 custodians, and possibly more if a showing is made

15   that it's warranted, how refer or relate to documents are

16   needed.  You know, I don't -- the difficulty is I don't have on

17   the flip side the evidence of the burden.  But on this one,

18   when I see refer or relate to it causes me concern and we'll

19   continue to hear that as we go through this.

20          But let me hear from you, Mr. Powell.  I don't

21   actually recall if you had an opportunity to be heard on 65.

22          **MR. POWELL:**  Sure, Your Honor.

23          So, just a few things.  And I recognize what you're

24   saying about it being -- this language being a bit broad.  And

25   part of that is because we're in a situation where we don't

```
 1    have discovery yet and we've gotten very little in response.

 2              And so, there is one option that I wanted to mention

 3    and it's something that we are discussing about the schedule

 4    with the other side.  If the schedule was extended to allow

 5    sufficient time to get some discovery and then propound more

 6    requests that are narrower, then that would be something that

 7    we would certainly be interested in.

 8              The problem is we've been -- on this particular

 9    request we've been negotiating for about four months now and

10    we're six weeks out from the close of fact discovery.  So, I

11    apologize, and I really did not want to bring this sort of

12    motion to you.  I just did not think that we had any other

13    choice because we'd already gone four months of negotiations,

14    multiple meet and confers.  I think there were two dozen

15    letters on these requests alone back and forth.

16              And so that's why we felt like we had no choice.  If

17    there was more time in the schedule, I would be happy to get

18    some discovery and try to propound narrower requests to try to

19    alleviate some of the burden on the Court.  But that's -- it's

20    this crunch in the schedule that is part of the problem here.

21              And so that I think would also alleviate some of the

22    problem on some of these motions.  Again, there is a crunch in

23    the schedule and that's why some of these motions are getting

24    filed now, because we have frankly no other choice with the

25    schedule.
```

1          **THE COURT:**  I am not casting any aspersion on filing

2    motions.  All right?  Let's get back to Number 65.

3          **MR. POWELL:**  Okay.  So, on Number 65 specifically,

4    power consumption is an advantage of the trade secret

5    specifically mentioned.  It's in our interrogatory responses

6    and that's why this is a topic.  Again, it's the final decision

7    of how a product is implemented that's sufficient to show and

8    that certainly gets you a starting point, and that's Number 63.

9    But that's not going to show you who suggested a given change

10   to help power consumption.  It's not going to show you why

11   power consumption is so important.  All of those things are

12   directly relevant to damages and to misappropriation in the

13   case.

14          This is a critical issue directed towards an

15   advantage of a trade secret and frankly if all we get is

16   discovery that's sufficient to show --

17          **THE COURT:**  Tell me a little bit about power

18   consumption.  How -- what's the nature of it?  How -- I walk

19   into this, again is why I think a special master is going to be

20   great for you, I don't know anything about the Apple Watch, I

21   don't know anything about pulse oximetry, I don't know anything

22   about heart rate algorithms, and I don't know anything about

23   how a heart rate algorithm is beneficial to power consumption.

24   Okay?  This is a different language.

25          So -- but what I do know is all documents and things

52

```
1   that refer or relate to.  That I understand.  Well, those words
2   I've seen before.  When you have that massive amount of
3   opening, an opening salvo, using the piping example, you start
4   out here.  I don't know how narrow power consumption by heart
5   rate algorithms, but it gets back to, and I'm telling this to
6   Apple, using 39 custodians, if those aren't being searched I
7   may have to rethink some of this stuff about whether it is more
8   reasonable to, if we're only looking at 12 custodians, that
9   maybe I'm misreading this.  So, maybe we need to wait for
10  whatever further issues might be coming up on this custodian
11  issue to rule on some of these things.
12          What do you think about that, Mr. Powell?
13          MR. POWELL:  Well, I completely understand, Your
14  Honor.  I don't think -- it's not going to be 12.  Right?  I
15  think the parties have agreed to roughly 28 or 29.  Mr. Lerner
16  can correct me if I'm wrong.
17          But on the power consumption, I could direct Your
18  Honor, if you have the trade secret statement up on your screen
19  I could direct you.  On that same page, if we look down at
20  Number 3 on that same page, Page 315 of Docket 353-2, and I'm
21  looking at the second line after the first "and."  You can see
22  that phrase there.
23          THE COURT:  I'm sorry, say that again.
24          MR. POWELL:  The second line of Paragraph 3.
25          THE COURT:  Paragraph 3, second -- so what -- on the
```

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 22
Page 19

53

1    litigation line, what --

2          **MR. POWELL:**  Oh, I'm sorry.  I'm sorry.  Line 12 of

3    the pleading.

4          **THE COURT:**  All right.

5          **MR. POWELL:**  I'm sorry, Line 13 of the pleading.  And

6    if you look after the word "and," that's what I would be

7    referring to here.  And so that's a critical aspect of this

8    trade secret.

9          And again, I recognize what Your Honor is saying

10   about refer or relate and that language is language both

11   parties have used and both parties have agreed to produce on,

12   and I think the understanding is the reason --

13         **THE COURT:**  The issue is when you come to court and

14   want on 89, or what did I say, 92 requests -- I'm holding

15   Apple's feet to the fire for not giving the evidence when

16   they're saying undue burden or lack of proportionality.  But

17   I'm holding your feet to the fire that -- I'm hammering nails.

18   I look at the words.  You may have reached an agreement on

19   other ones that you're going to use your best efforts for refer

20   and relate to, but if I make an order, it's an order of the

21   Court that Apple has to produce every -- all documents and

22   things that refer or relate to power consumption.  To me, my

23   gut instinct on that is that's a pretty big task.

24         Now again, now we're at 28 or 29, I thought we were

25   at 39, maybe we were at 12, we have 28 or 29 record custodians,

Exhibit 22
Page 20

54

1   refer or relate to power consumption by any heart rate, and

2   it's any heart rate algorithm used in any Apple Watch.  You get

3   some more information, you tie it to some specific algorithms

4   and/or specific products that those algorithms are used in,

5   much easier for me to say, okay, you've got to produce that

6   unless you give me some evidentiary showing that it's going to

7   take you 25 years because our search parameters came up with

8   50 million documents.  Okay?

9           I don't have any of that.  What's what I usually see.

10  And that's why I'm surprised.  All right?  If I'm going to get

11  something where people -- the parties have put in this much

12  time, money, and effort, that's what I usually see.  Instead,

13  I'm left -- you're left with poor old government major, me,

14  trying to figure out how burdensome, how proportionate to the

15  needs of the case these things are.  And you get -- that's what

16  you get.

17          So, I'm reading it.  This one looks pretty broad to

18  me.

19          **MR. POWELL:**  Can I say one other thing, Your Honor?

20  And then I will stop.

21          I fully understand and the only reason why I'm

22  engaging so much on this one is I think it will be an issue

23  throughout the day.  There are a lot of requests that say refer

24  or relate.

25          **THE COURT:**  Right.  There sure are.

Exhibit 22
Page 21

1    **MR. POWELL:**  Yes.  And part of the reason is, like I

2    said, that's been the parties' practice and we've never

3    expected every single document, just a reasonable search.  And

4    all I wanted to say is if there is something -- I know you

5    don't want to compromise and try to narrow individual requests

6    and I'm not asking that --

7            **THE COURT:**  You know, what, that's what the meet and

8    confer process is for.  As a matter of fact, it's in Local

9    Rule 37.  That's one of the things that's supposed to go in the

10   joint stipulation, is, hey, how did you propose to resolve

11   this?  Just -- I'm glad you're here.  I think you were on the

12   phone last time.  Not the door Maria's been walking in, the one

13   over there with the giant lock on it, okay, that's what

14   happens, that's the logical endpoint of someone -- when I say

15   you're ordered, Apple, to produce all documents and things that

16   refer or relate to power consumption by any heart rate

17   algorithm used in any of the Apple Watch Products, okay, there

18   could be lots of steps along the way.  Well, you could have --

19   you don't produce it, you could have issue sanctions, you know,

20   but ultimately it's a Court order.  And I have had people walk

21   in through that door and be led out through that door.

22           You're asking, so what you do amongst yourselves is

23   great.  I encourage it.  Keep doing it.  But when you walk into

24   court I can pull down your proposed order that you submitted to

25   me.  It's we want an order that Apple produce all responsive

56

1   documents without objection to Request Number 65 within

2   whatever days you asked for.  If you want that order, you'd

3   better come in with something that's sufficiently narrowly

4   crafted, and that's what Rule 34 requires, with reasonable

5   particularity for me to feel comfortable in what I see is the

6   logical endpoint of that order.  All right?

7               So, I appreciate that you folks are working together

8   on refer or relate to.  I wish you weren't -- you know, however

9   many meet and confers later, sometimes the answer to a problem

10  with the meet and confers, you look at your own request and

11  say, hmmm, all right, they're fighting me on this, you know

12  what I'm going to need to do, I'm going to need to serve a more

13  narrowly crafted one, knowing that this is going to wind up in

14  a motion before the judge, so I'd better make sure that it's

15  with reasonable particularity, as required by Rule 34.

16              So, I am not unmoved.  I love the -- what's the Latin

17  phrase for that?  There's a Latin phrase for the double

18  negative.  I'm not unmoved and I'm not unsympathetic to your

19  plight, but, you're right, we're going to come up on this a

20  lot.  That's why I kind of wanted to move off of 63, because I

21  knew Mr. Lerner might change his view of some of the things

22  that I'm going to have to say as we go forward.

23              And if you get your extension, all the better.

24  Because ultimately if Apple doesn't do what they're going to

25  need to do on 63, there's going to be a reckoning for them on

Exhibit 22
Page 23

1   all these other ones when you serve your follow-up discovery

2   requests and you come back and say, hey, we did what you asked,

3   Judge Early, but we got garbage from Apple, so we narrowed it a

4   little, we got rid of refer or relate to, but we can't be any

5   more specific about what heart rate algorithms we're talking

6   about because we got garbage from Apple in response to

7   Number 63.  I'm going to be very sympathetic to that.

8           Understood?

9           **MR. POWELL:**  I understand, Your Honor, and I don't

10  want to overstay my welcome, I just wanted to point out one

11  thing and then I'll --

12          **THE COURT:**  You've got as much time as you want.

13          **MR. POWELL:**  Okay.  And I apologize, Your Honor, I

14  just wanted to point out that our proposed order did not ask

15  for all documents, it asked -- it did say that we wanted them

16  to conduct a reasonable and good faith search.  That's all

17  we're asking for.  And I would be willing to agree right now

18  for all of these refer or relate requests that we're going to

19  see today that this is not about every single document and we

20  just want a reasonable search.

21          **THE COURT:**  You put that in front of me and you're

22  asking to compel those responses.  So, yeah, of course every

23  single Rule 34 response, complicit in it is a reasonable and

24  good faith search.  But a reasonable and good faith search is,

25  in the context of 28 or 29 custodians when you factor in refer

58

1   or relate to is not narrowly tailored, not specified with

2   reasonable particularity, and I can look at that and see that

3   it's not proportional to the needs of the case without the

4   evidentiary showing.

5            Not always going to be true here, but -- and it's --

6   you know, you'd be better -- well, I'll leave it at that.

7   Anything further?

8            **MR. POWELL:**  Understood, Your Honor.

9            **THE COURT:**  Anything further, Mr. Powell, on 65?

10           **MR. POWELL:**  No, Your Honor.

11           **THE COURT:**  All right.  Mr. Lerner, anything you want

12  to say on Number 65?

13           **MR. LERNER:**  No, Your Honor, we don't need to spend

14  more time on it.

15           **THE COURT:**  All right, Number 66.  This is -- long

16  isn't necessarily bad -- quote,

17           "All documents and things that refer or relate to any

18           testing and/or analysis of the properties and/or

19           characteristics of any of the Apple Watch Products or

20           any component of any of the Apple Watch Products that

21           relate to pulse rate detection, pulse rate

22           measurement, power consumption by pulse rate

23           detection, or power consumption by pulse rate

24           measurement, including, without limitation, testing

25           protocols, reports, results, notes, and summaries."

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 22
Page 25

1          Looks pretty broad to me. Mr. Powell.  I'll hear from

2     you, though.

3          **MR. POWELL:**  Your Honor, I don't want to again

4     overstay my welcome and keep arguing the same thing on --

5          **THE COURT:**  You've got as much time as you want.

6     We're only at 11:25.

7          **MR. POWELL:**  Again, I do think that this one is

8     reasonable here and again there are very similar requests being

9     served on the other side here.

10          The issue of testing and analysis of the properties,

11     we've limited it to specific properties that are directly at

12     issue in this case.  So, we have that relate to pulse rate

13     detection, pulse rate measurement, power consumption by pulse

14     rate, or power consumption by pulse rate measurement, so we

15     have those things are specifically limited.  And then we gave

16     some examples of the types of documents we're looking for.

17          **THE COURT:**  Nothing wrong with examples.

18          **MR. POWELL:**  Right.

19          **THE COURT:**  Examples can be helpful.  I'm not holding

20     that against you.  But I am noting we've got two refer or

21     relate to.  We've got a refer or relate to and then a separate

22     relate to.  We've got multiple conjunctive/disjunctive.  You

23     know, we've got testing and/or analysis and/or characteristics,

24     and then we get back to the of any Apple Watch Products or any

25     component of any Apple Watch Products, and then that relate to

## CERTIFICATION

       **I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

_____           **May 26, 2021**

         **Signed**                                     **Dated**

                       *TONI HUDSON, TRANSCRIBER*