# EXHIBIT 27

```
 1                      UNITED STATES DISTRICT COURT
                        CENTRAL DISTRICT OF CALIFORNIA
 2                      SOUTHERN DIVISION - SANTA ANA

 3

 4   MASIMO CORPORATION, et al. )   Case No. SACV 20-48-JVS (JDEx)
                                )
 5        Plaintiffs,           )   Santa Ana, California
                                )   Thursday, November 18, 2021
 6            v.                )   10:06 A.M. to 11:02 A.M.
                                )
 7   APPLE INC.,                )
                                )
 8        Defendant.            )
                                )
 9   _____)

10

11

12                      TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE JOHN D. EARLY
13                  UNITED STATES MAGISTRATE JUDGE

14

15

16   Appearances:              See Page 2

17   Deputy Clerk:             Maria Barr

18   Court Reporter:           Recorded; CourtSmart

19   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
20                             Encino, California  91436
                               (661) 609-4528
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

Exhibit 27
Page 1

```
 1  APPEARANCES:

 2

 3  For the Plaintiffs:      Knobbe Martens
                             By:  ADAM POWELL
 4                           3579 Valley Centre Drive
                             San Diego, California  92130
 5                           (858) 707-4000
                             adam.powell@knobbe.com
 6

 7

 8  For the Defendant:       Wilmer Cutler Pickering Hale & Dorr
                             LLP
                             By:  MARK D. SELWYN
 9                           2600 El Camino Real, Suite 400
                             Palo Alto, California  94306
10                           (650) 858-6031
                             mark.selwyn@wilmerhale.com
11
                             Gibson Dunn & Crutcher LLP
12                           By:  ILISSA S. SAMPLIN
                             333 South Grand Avenue
13                           Los Angeles, California  90071-3197
                             (213) 229-7000
14                           isamplin@gibsondunn.com

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 27
Page 2

3

```
 1   SANTA ANA, CALIFORNIA, THURSDAY, NOVEMBER 18, 2021, 10:06 A.M.

 2            THE COURT:  All right.  We have two matters on

 3   calendar for law and motion this morning.  We're going to

 4   start with the Masimo v. Apple case.  The reason we're doing

 5   that -- I'll call it in just a moment -- is I think your

 6   matter will be quicker but two things: I've been wrong

 7   before; and, second, I said, "quicker," not "quick."  So

 8   everyone else just get comfortable, and we'll get started.

 9            So we're calling Masimo Corporation, et al. v.

10   Apple Inc., Case No. 8:20-CV-48-JVS-JDE, and we will take

11   appearances from -- I believe everyone is here in person --

12   starting with counsel for plaintiff.

13            ADAM POWELL:  Thank you, Your Honor.  I forget.

14   Would you like me top stand at the podium?

15            THE COURT:  You can -- because we're staying

16   distant, you can stay seated, but make sure everyone keeps

17   the microphone close enough so that I can hear you.

18            MR. POWELL:  Thank you, Your Honor.  This is

19   Adam Powell for Plaintiffs Masimo Corporation and Cercacor

20   Laboratories, Inc.  With me is my partner Sheila Swaroop.

21            THE COURT:  And my understanding -- Mr. -- or,

22   Ms. Swaroop has not made an appearance on the docket yet?

23            MR. POWELL:  I believe that's correct, Your Honor.

24            THE COURT:  Okay.

25            MR. POWELL:  Ms. Swaroop is ITC counsel.
```

Exhibit 27
Page 3

4

1          THE COURT:  Okay.  Is she planning on offering
2    argument this morning?
3          MR. POWELL:  Not unless there are any questions
4    about the ITC specifically.
5          THE COURT:  All right.  Thank you.
6          And on behalf of Apple?
7          MARK D. SELWYN:  Good morning, Your Honor.  For
8    Apple, Mark Selwyn, Ilissa Samplin, and with us from in-house
9    at Apple is Natalie Pous, senior litigation counsel.
10          THE COURT:  All right.  Good morning, counsel.  And
11    it's Ms. "Post"?
12          MR. SELWYN:  Pous, P-o-u-s.
13          THE COURT:  Oh, okay.  Good morning.
14          All right.  We are here for a motion to modify --
15    plaintiffs' motion to modify the protective order.  I'll tell
16    you what I've looked at, and we'll first start if there's
17    anything I've missed, and then I'll ask whether there's
18    anything I should be aware of before we jump into it.
19          What I have reviewed and considered is Docket
20    No. 505; 506; 507, which is the notice of motion, the motion,
21    the memorandum in support of the motion, and a declaration
22    with one -- it says one exhibit but multiple exhibits that
23    just have one docket entry.  Then I have reviewed Docket
24    No. 511; and 512, which is a memorandum in opposition and a
25    declaration of counsel with -- and a series of at least one

Exhibit 27
Page 4

5

1  exhibit; and a reply, Docket 513, with another declaration

2  from Mr. Powell.

3          So, Mr. Powell, is there anything that I should

4  have reviewed that I didn't just read?

5          MR. POWELL:  No, Your Honor, not from my

6  perspective.

7          THE COURT:  And Mr. Selwyn?

8          MR. SELWYN:  No, Your Honor.  That's the complete

9  set of papers.

10          THE COURT:  All right.

11          Mr. Powell, is there anything factually or any new

12  legal developments that I should be aware of before we jump

13  into things, from your perspective?  Just a "yes" or "no" to

14  start.

15          MR. POWELL:  Nothing major, Your Honor.  A couple

16  small things.

17          THE COURT:  All right.

18          Mr. Selwyn, anything --

19          MR. SELWYN:  No.  I don't believe so.

20          THE COURT:  All right.

21          Mr. Powell, what are the small things that I should

22  be aware of that have changed since the reply briefing on

23  November 4th?

24          MR. POWELL:  Is just an update, Your Honor -- is

25  last night counsel for Apple suggested that -- or requested

Exhibit 27
Page 5

6

1    that we copy ITC counsel on all discovery correspondence in

2    this case moving forward.

3              MR. SELWYN:  Your Honor, one clarification.

4              THE COURT:  Okay.  Give me one -- just give me one

5    second.

6              All right.  Mr. Selwyn, your clarification?

7              MR. SELWYN:  The clarification is I am counsel in

8    both cases.  I asked to be served with copies of the papers

9    that they were sending to the special master.  I didn't think

10   it was anything of particular significance, but I wanted to

11   clarify that.

12             THE COURT:  All right.  So I'm actually going to --

13   I'm not going to give you a tentative.  I have a tentative in

14   my head, but I wanted to talk to you about some thoughts

15   because I know I probably am living in a fantasy world

16   because I've asked before to see if you folks can informally

17   resolve things, and it usually doesn't end -- well, I should

18   say that.  Sometimes it does end well.  But I think you folks

19   should be able to come to a reasonable accommodation on the

20   issues that are raised in the motion, and you've each taken,

21   as good lawyers do, strong positions on *Foltz* and on what the

22   Ninth Circuit said and how district courts have interpreted

23   motions to modify protective orders.

24             And you're all correct and incorrect insofar as

25   each of you argue, and I guess what I'll say is I could

Exhibit 27
Page 6

7

```
 1  cherry-pick lines from each of your briefing that I think
 2  overstate your respective positions.  On the one hand,
 3  plaintiffs have, at least by negative implication, suggested
 4  that if there's any overlap in the issues or the discovery at
 5  issue between the two cases that that's sufficient relevance
 6  or connectivity requirement under the first prong for
 7  modifying a protective order to collateral proceedings, and I
 8  don't believe that's a fair statement of law, and I'm sure
 9  plaintiff would tell me, "Well, there's more nuance to what
10  we're saying, and we're not actually saying it," and that's
11  fine.
12          And from the defense's standpoint,  the suggestion
13  that there -- or implication that there needs to be complete
14  or near-complete overlap between the issues and discovery in
15  the two cases, and you're going to tell me, "Well, that's not
16  quite our position," but I could cherry-pick things from your
17  briefing that suggest that maybe that's what your saying
18  isn't really -- it's somewhere in the middle, like everything
19  else.
20          Mr. Selwyn, I don't recall how many of the hearings
21  you've been at.  I know Ms. Samplin has been in some lengthy
22  hearings that we have here, and I know Mr. Powell has.
23  Everything is a balancing.  All the -- everything I make is a
24  balancing, and this is a balancing, keeping in mind, the
25  Ninth Circuit has said they strongly favor, for various good
```

Exhibit 27
Page 7

8

1  policy reasons, sharing information, making discovery
2  available in collateral proceedings.  It's not automatic, and
3  I still need to look at the unique facts of the case, and
4  here's what our tell you:

5       There are some very unique facts here.  One of them
6  -- and maybe the most -- well, I'm not going to characterize
7  it, but one of the unique and important facts is the
8  protective order here.  It was heavily litigated as to many,
9  many, many issues.  There was no litigation -- the parties
10  agreed and it was stipulated that it was to contain a
11  provision that it was any documents designated under the
12  protective order were only to be used in the context of this
13  litigation, and that's what this motion is to amend or
14  change, but that was submitted as a stipulation and
15  agreement.

16       But there were scores of other provisions that,
17  frankly, were, at least to me, unique in terms of the
18  hundreds of protective orders that I look -- have looked at
19  over the years and were the subject of substantial briefing
20  and, frankly, compromise, in some respects, by the parties
21  and then the Court picking and choosing and sometimes
22  charting a middle course on things like access to in-house
23  counsel -- who those in-house counsel could be, how many
24  there could be.  Vendors -- which vendors could be used,
25  whether they needed to be preapproved before vendors could be

Exhibit 27
Page 8

9

1  shown various levels of information.

2          Outside counsel -- we had disputes and litigation

3  over what outside counsel could be -- have access to the

4  information.  The prosecution bar was something that you

5  folks had disagreements on.  And a great deal of, I'll say,

6  getting into the minutiae of the handling of source code --

7  confidential source code -- who could look at it, how it

8  could be viewed, how many lines of it could be printed.  I

9  think -- how many pages?  I actually printed -- it was

10  something like 27 pages was our protective order.  So this is

11  a unique protective order.

12          And the second factor in *Foltz* and in the other

13  cases -- the reliance by the designating party here --

14  because they're opposing it -- Apple -- I just want to say

15  that because of the very specific, heavily litigated, and

16  otherwise carefully crafted terms of this protective order --

17  and the reason why it was so heavily litigated is -- and it's

18  in the record -- Apple's view, at least -- and I think to

19  some extent it's shared by Masimo -- is that the technology

20  underlying the trade secret claims is highly, highly, highly

21  sensitive, proprietary.  I don't know how you would put a

22  value on it, but it's been represented to me that various

23  aspects of the discovery in this case is of great financial

24  import and there would be severe consequences were it to --

25  through advertence or inadvertence -- be disclosed.

Exhibit 27
Page 9

10

1        And in light of that, I've also had conversations

2   with counsel about how I view protective orders, and I don't

3   know if anybody is going to look over to the marshals' door

4   with the big lock, but that's where -- what I tell people is

5   the logical end point of someone's failure to comply with a

6   protective order, as with any order, is a potential contempt

7   and the logical end point of a potential contempt -- it's not

8   the starting point, but it's a potential end point -- is

9   being taken out from the courtroom through that door with the

10  big heavy lock by marshals.  And so I've told counsel that in

11  this case -- I've referenced it in other cases -- I take this

12  protective order and any order of the court very seriously

13  and expect counsel to abide by it.

14        And so that is a very long way of letting you know,

15  unlike in *Foltz*, where the protective order is attached as an

16  appendix to the opinion and it's about three-pages long and

17  is almost, for lack of a better term, pro forma, this is a

18  very detailed, very comprehensive protective order that I do

19  believe Apple relied on.  It's been called a "blanket"

20  protective order, and as that term is used, there's one sense

21  in which it was blanket, and that's done for everybody's

22  interest because, if you folks were going to be coming to me

23  for every document in this case that someone said was

24  confidential, let's just say you wouldn't be coming to me;

25  you'd be going to Judge Guilford and an army of other special

Exhibit 27
Page 10

11

1   masters.  So this case needs it, this case is unique, and

2   this protective order is unique, and reliance on it, I

3   believe, is real regardless of whether it's categorized as a

4   "blanket" protective order or not.  That element of the *Foltz*

5   balancing is one that I'm taking very seriously.

6           The other aspect of *Foltz* -- and it's important to

7   remember, in *Foltz* -- God bless whoever the district judge

8   was who entered the order -- I've never seen one in all my

9   years of practice -- the protective order in *Foltz* was an

10  order -- a case was settled, and the judge entered the

11  confidentiality protective order that allowed either party to

12  designate documents as confidential without judicial review

13  and then ordered those documents that were in the court files

14  sealed and ordered the parties -- both parties not to

15  disclose those documents to anyone outside of the contours of

16  the protective order.

17          So the protective order in *Foltz* was not like our

18  standard protective order and not like the protective order

19  in this case.  It covered both sides.  So the third parties

20  -- the intervenors in *Foltz* -- were folks who hadn't seen the

21  documents that were subject to the protective order, and they

22  were trying to get them from -- was it Allstate? -- trying to

23  get them from Allstate for a similar case because they

24  couldn't get them from plaintiff, because Allstate had

25  designated them confidential, but Allstate refused to give

Exhibit 27
Page 11

12

1  them to them because they -- Allstate argued, "The judge in

2  this other case told us we can't release them.  They're

3  subject to a protective order."  Even though they're

4  Allstate's own documents, right.  So bear that in mind.  That

5  was the state of play in *Foltz*.

6          Now, that's not to say that anything in *Foltz* that

7  changes the outcome or that other subsequent cases that have

8  interpreted *Foltz* make that a distinction that changes the

9  Ninth Circuit general rule that we're to liberally share

10  collateral discovery, but it's just important to note that

11  that was what the Ninth Circuit was ruling on, and that's not

12  our situation here.

13          Here, plaintiff can get this -- these records --

14  first of all, plaintiff knows what the records are, right,

15  what's -- it's not a situation like in *Foltz* where the

16  intervenor didn't know what the records were, hadn't seen

17  them; and, secondly, it's a situation where plaintiff can get

18  the records from Apple.  They know what they are.  They can

19  get them.  It's just a matter of are we wasting everyone's

20  time, money, and effort by saying, "Well, you have to ask for

21  them in the ITC matter," or can we just lift the veil of the

22  protective order and make everything that Apple produced in

23  this case usable in that other case?

24          The last thing I want to -- just general topic I

25  want to talk about is all of the cases -- *Foltz* and all of

Exhibit 27
Page 12

13

1   the cases, in discussing the first element, the relevance,

2   the test isn't the general connectivity, relevance connection

3   between the issues in the cases or the discovery in the cases

4   alone.  What *Foltz* talks about and what the other district

5   court cases relying on *Foltz* talk about is the connection

6   between the documents that are subject to the protective

7   order that are being sought, and the language that is

8   repeatedly used is -- and this is from *Foltz* at 1132 -- the

9   party seeking to amend the protective order in that case --

10  must demonstrate the relevance of the "protected discovery"

11  to the collateral proceedings.  And I could go on.  That

12  phrase is used over and over again in *Foltz* and over and over

13  again in the district cases.  So what we're looking at is the

14  connection to the "protected discovery."

15          In this case, plaintiff is free to use anything

16  Apple has produced that's not subject to the protective

17  order.  The only thing we're talking about are documents that

18  are subject to the protective order, and here's where, in my

19  view -- I've told you my views about the second prong -- the

20  motion is -- I don't want to say "weak" or "lacking," but

21  it's a little weak and a little lacking in pointing to me

22  what is the "protected discovery" that Apple thinks is

23  relevant to the ITC proceeding?

24          And I -- based on the record that's in front of me

25  -- there's nothing in the motion -- there's a lot of cross --

Exhibit 27
Page 13

14

1   there's a lot of reference to "Well, here's the crossover of

2   issues" -- I shouldn't say "a lot."  There's some references

3   "Here's the crossover of issues," and then some relevance and

4   some references to "Here's some discovery that we sought in

5   this case, and here's some discovery that's being sought in

6   the ITC case," but I don't see anything that tells me what is

7   the confidential or "attorneys' eyes only" or source code

8   that's being sought to be introduced or used in the ITC case?

9   and that's the relevant inquiry.  That's what *Foltz* says, and

10  that's what these other cases say.  It's what is the

11  relevance of the protected discovery"

12          And so I'll let counsel be heard on all this, but

13  this is not a case that it's just going to be a knee-jerk

14  "Yes, we're going to share it," because here's some of the

15  things I don't know: I don't know how much protected

16  discovery there's been.  Is it in -- if it's in the record,

17  I'll ask you to point me to it.  How many documents have been

18  produced that were designated confidential or "attorneys'

19  eyes only"?  How much source code?  And then -- I don't know

20  that.  How much is it as a percentage of the overall

21  production?  I think -- tell me if I'm wrong -- that

22  somewhere in the record Apple told me that they've produced

23  50,000 pages of records or something along those lines.

24  Frankly, it seemed low.  I would have thought it was much

25  higher.

Exhibit 27
Page 14

15

1          But be that as it may, tell me: What do I have that

2   tells me the protected discovery -- what's the overreach?

3   How is that going to be used in the ITC case?  Again, what

4   Apple's telling -- or, what -- yeah -- what Apple's telling

5   me is "It's just a patent case, and this confidential

6   information isn't really going to be a part of that case."

7   Maybe they're right, and maybe they're wrong, but what do I

8   have to assess that one way or another?

9          So on both the relevance and on the prejudice,

10  reliance issues, this is not *Foltz,* and it's not a lot of the

11  other cases that we're looking at.

12          And one thing I'll agree with plaintiffs is that --

13  obviously, we have the same parties here, right, and so to

14  the extent there's a concern that some third party that Apple

15  didn't foresee having access to the confidential information

16  isn't a part of this, but I don't know enough about ITC

17  proceedings, about whether some other intervenor can join.

18          I went through the materials and noted that it

19  looked like the -- a -- the secretary Lisa Barton sent

20  letters out to Dale Berkley at that National Institute of

21  Health; to Elizabeth Kraus, who is the deputy director for

22  International Antitrust in the Office of International

23  Affairs of the FTC; Dax Terrill, who's the chief exclusion

24  officer of the enforcement branch for the United States

25  Customs and Border Patrol; and Lynda Marshall, the

Exhibit 27
Page 15

16

1   International Division of the Antitrust Division of the

2   Department of Justice all got notice of this case.  I don't

3   know -- they're all -- sounds like all government officials,

4   and maybe that doesn't -- shouldn't be something I would

5   factor in, but I don't know who is going to have access to

6   this.

7            I did look at the protective order that the ALJ in

8   the FTC case issued.  I'll say it is not coextensive with the

9   protective order in this case, and it does make reference to,

10  for instance, vendors, who presumably may have access

11  different than what's the access level permitted under the

12  current protective order; and then the protective order

13  expressly does not cover government technical experts or the

14  commission -- the ALJ, the commission staff, personnel of any

15  government agency.  Now, I'm a former prosecutor.  I know

16  that all of those folks are ethically bound, but it wasn't

17  something that was part of the negotiation or part of the

18  hearing we had here that -- when Apple was subject to the

19  protective order that these materials would be shared.

20           And again, one of the lines in *Foltz* and in some

21  other cases is this ready promotion of sharing information

22  should be done -- or is properly done when it can be subject

23  to -- and in some cases say -- the "same level of protection"

24  in the other case.  Well, I can't order an ALJ to follow my

25  protective order or other vendors who get access to it.  So

Exhibit 27
Page 16

17

1   there are differences here.

2          And it's not to say that the *Foltz* rule doesn't

3   apply to collateral litigation involving the ITC.  It does --

4   or it can, but what I'm saying here is this is a unique

5   protective order, this is a unique case, and my thought is --

6   with all those thoughts -- we'll certainly hear about it --

7   maybe this is something that plaintiff can simply -- and I

8   know the proposal from Apple was "Well, we'll designate our

9   own documents that we want to use, and you designate your own

10  documents that you want to use, and that should be good

11  enough."  Well, no, that's not good enough.  I think there's

12  -- we should try to work something out that's better, but it

13  seems to me I need more information, and I don't have it in

14  what's in front of me to make the relevant -- the first part

15  of the *Foltz* inquiry appropriate.

16         So why don't I start with this, Mr. Powell: Why

17  don't you tell me: Do you think there's any other approach

18  that we could take, or is it just going to be an all-or-

19  nothing ruling on me -- motion granted or motion denied?

20         MR. POWELL:  Your Honor, I don't think it has to be

21  all or nothing.  We're never -- that's never our position

22  that something has to be all or nothing, up or down.  I'm

23  happy to discuss and try to reach a resolution.

24         The issue is -- I think what you pointed out was

25  Apple's position has been that each party gets to pick what

Exhibit 27
Page 17

18

1  it believes is relevant and -- or what it believes will be

2  relevant in the ITC case.  And I'll go to your point about

3  how we haven't explained what documents we think in this case

4  are --

5          THE COURT:  All right.  So before you get to that

6  --

7          MR. POWELL:  Okay.

8          THE COURT:  -- let me turn to Apple and say: Do you

9  think, on behalf of Apple, that this is just a motion I have

10 to rule -- I have to hit the nail or not hit the nail --

11 grant or deny -- or is there is something, maybe, that either

12 the parties can come to a resolution that serves their

13 interests -- for instance, if you're concerned about turning

14 over everything, if that's -- if the motion is granted,

15 that's what the proposed order says -- and by "turning over

16 everything," it doesn't' mean turn over everything.  They

17 already have it.  It's just be able to use it without

18 restriction other than the protective order in that case --

19 or it is something that the parties can, maybe, work out?

20 What do you think?

21         MR. SELWYN:  Apple is not trying to keep relevant

22 documents and information from the ITC.  And to answer one of

23 your questions, we have in fact already produced 64,000 pages

24 that were first produced in this case in the ITC.  So we're

25 not trying to prevent relevant documents and information

Exhibit 27
Page 18

19

1  being accessed in the ITC, and we ourselves have produced

2  them, but what we are trying to prevent is irrelevant

3  documents and irrelevant information from this case being

4  used in the ITC --

5          THE COURT:  All right.  So here's -- I appreciate

6  that.  Let's get -- let's hit that one right now.  I have no

7  control and make no ruling -- and I'm not going to make a

8  ruling -- on what's relevant in the ITC case.  The only thing

9  I can do here is either lift or carve out the -- portions of

10 the protective order or not.

11         But you've really hit on, I think, a critical,

12 critical issue.  I don't know what's relevant in the ITC,

13 right.  You do, and they do.  It seems to me you could go in

14 a room and at least say, "Here's what I'm talking about."

15 You don't have to go document by document, but "Here's the

16 types of documents that I think are relevant that you, Apple,

17 have designated as confidential."

18         And then you can say, "Okay.  I can see A, B, C,

19 but, boy, I disagree with D."  All right.

20         Then I get a much better sense of -- and then you

21 folks brief that -- and obviously it'll be under seal, but

22 you folks brief that, and I get a much better sense of where

23 things fall in the universe: What are we talking about?  Is

24 it a large overlap?  Is it a small overlap?  I'm not going to

25 rule on relevance in the ITC case, but then I get some sense

Exhibit 27
Page 19

20

1   of what we're talking about.  Right now I don't have that

2   sense.  All right.

3           So that's just me talking.  It sounds like it's

4   something you would be willing to talk about.

5           And I'll go back to you, Mr. Powell, but is there

6   any sort of -- your discovery cutoff in the ITC case is

7   February.  Your trial is June.  There's -- it's a patent

8   case.  There aren't a lot of secrets, I would imagine, in

9   terms of, at least, what the case is going to be.  There may

10  be secrets in terms of -- from third parties, but between you

11  two, you folks pretty much know where this is going.  Is

12  there any reason why you can't just put in a letter to Apple,

13  "All right.  Here are" -- by Bates numbers or by whatever you

14  want -- "the documents that I believe" -- "that we believe

15  are relevant and need to be considered in the ITC case"?

16          MR. POWELL:  Well, there's a couple issues with

17  that, Your Honor, and I'll explain our hesitation.

18          Number one is our great respect for the protective

19  order in this case and Your Honor's statements about that

20  door, frankly.

21          THE COURT:  Okay.  And so let me be clear.  What I

22  just described is within the confines of this case, you

23  sending it to them in terms of this case saying, "Do you have

24  any opposition to us being able to use these in another

25  case?"  That's not outside the scope of the protective order.

Exhibit 27
Page 20

21

1  So you can do that, and if there's any doubt, I'm telling you

2  right now, I interpret the protective order for you to be

3  able to meet and confer with Apple to say, "I would like to

4  use these documents in another case.  What's your position?"

5          MR. POWELL:  I would definitely appreciate that,

6  Your Honor, and thank you.  The issue is that we were

7  concerned that by analyzing the ITC claims using the

8  documents from this case that it would be a violation of the

9  protective order.  That's number one.

10          THE COURT:  And what I'm telling is that step one,

11  which is to ask Apple, "Do you have an objection to these

12  being considered and used in the ITC case?" is not part of

13  that.

14          MR. POWELL:  Okay.  So as long as --

15          THE COURT:  So that's not a violation of the order.

16          MR. POWELL:  Okay.

17          The second issue, then, is -- you have issues of

18  work product, right.  So the work product doctrine --

19          THE COURT:  I hear you, but at this point you're

20  going to trial in eight months.  What's the work product to

21  simply saying, "Here are documents that we think are

22  relevant."  That's not work product.  That's just -- Rule 26

23  requires you to identify documents that are relevant to your

24  -- to the claims or defenses.  That's just basic trial law.

25          MR. POWELL:  Well, the selection of documents, I

Exhibit 27
Page 21

22

1  would argue, is --

2       THE COURT:  Rule 26 requires you to make a

3  selection of documents.  So -- you're not selecting documents

4  to, say, show to a witness because you think it's important

5  to this witness or to this particular issue.  You're saying,

6  "These are relevant documents to the issues in this case."

7  That's not work product.

8       MR. POWELL:  I guess what I'm thinking is the

9  explanation -- where that will go is "Okay.  Why is this

10 document relevant?  What part of this case is it relevant

11 to?" and explaining all of that and parsing out "These 10

12 documents are relevant to this element and these," you know,

13 "2,000 documents" --

14      THE COURT:  Well, we're not there yet.

15      MR. POWELL:  -- "are relevant to that one."

16      THE COURT:  We're not there yet, but maybe it will

17 because you do that every day in a discovery motion: "What is

18 this discovery request relevant to?  Oh, it's relevant to

19 this issue."  This happens every day in lawyers' offices all

20 over the country -- one side wants something, and the other

21 side says, "I don't think it's relevant.  What's your

22 proffer?"

23           "It's relevant to this."

24      MR. POWELL:  Well, and, frankly, the -- the other

25 issue, then, is simply a matter of logistics, right.  The

Exhibit 27
Page 22

23

1    exhibit list in the ITC, I believe, are due in February?  And

2    so that's an analysis that, frankly, neither party, I think,

3    has determined and looked at every document and said, "Which

4    one" -- "Which are all of the documents that we plan to rely

5    on in the ITC?"  We certainly haven't done that because, up

6    until today, I thought that would be a violation of the

7    protective order and so we -- that is something that I

8    suppose could be done, but that's a large process because we

9    are talking about a huge number of documents.  It's not

10   50,000 pages.  There's a -- the parties are producing quite a

11   few documents this week, actually.  Our deadline that we've

12   negotiated amongst ourselves to complete ESI email discovery

13   -- or substantially complete -- is tomorrow.  So there's been

14   a lot of documents produced in the last few days.

15          And I would note on the number of documents

16   produced, counsel indicated that they have produced

17   64,000 pages of documents from this case in the ITC case.  If

18   anything, I believe that reduces the reliance interest

19   because that shows that counsel does not have a problem

20   producing Apple confidential information in the ITC case, the

21   same type of information that's produced here.  The issue is

22   that we have very different definitions of "relevance" in

23   this case.

24          THE COURT:  Well, let me just cut to one thing.

25   For instance, source code -- I mean, there's huge swaths of

Exhibit 27
Page 23

24

1    information that you could either say you want or just say,

2    "Listen, I'm not talking about source code" or "I'm not

3    talking about Mr. Marcelo's development of this line of

4    product."  You could do this by category, by substance, and

5    see whether they agree or not.

6            Right now it's all or nothing, and I just don't

7    have a sense of how much of -- what "all" is.  I don't --

8    tell me if I missed it.  Is there something in the pleadings

9    that tells me what's the overall number of documents produced

10   by Apple? what's the number of documents that were produced

11   that were confidential? what's the number of documents that

12   were produced that were "attorneys' eyes only"? what were the

13   number of documents that were produced that was sensitive

14   source code? and then, with -- if I had all that information,

15   what's your general sense about how much of that needs to be

16   used in the ITC case?

17           And if you're telling me that you don't know

18   because you haven't done the assessment and you think it

19   would be work product for you to disclose that, I guess I'm

20   telling you that I'm not sure you've made a showing for me to

21   make the blanket exclusion to the protective order to just

22   say, "Okay.  You can have it all and use whatever you want in

23   the other case."

24           MR. POWELL:  Sure, Your Honor, and I completely

25   understand the concern.  I would note I think there's another

Exhibit 27
Page 24

25

1    one other unique fact here, and this is why there is not a

2    lot of case law in situations where you have the same parties

3    and the same lawyers on both sides.

4           Most of the case law, as you noted -- *Foltz* and

5    most of the decisions deal with third-party intervenors, and

6    I think the reason is that most of the times, when it's the

7    same parties and the same lawyers, they just stipulate.  And

8    in fact, Apple did stipulate in the *Apple-Samsung* case, which

9    we cited in our reply brief at page 6 -- they did stipulate

10   to a cross-use agreement with the district court and the ITC.

11   Parties routinely do this, and I think that's why there's not

12   a lot of case law.

13          And the issue on third-party intervenors -- that's

14   a situation, as you noted, where the third-party intervenor

15   does not have access to any of the documents, and so that's

16   why the district courts and the rule set out in *Foltz* and

17   other decisions is to compare the allegations in the

18   pleadings -- what people from the outside can see, rather

19   than the specific documents.  And we actually cited the

20   *Universal* case -- this is *Universal*, 220WL2308226 -- which

21   explains the movant, quote, "need not identify specific

22   documents they want to share."

23          THE COURT:  And I told you, you don't have to, but

24   what I am also telling you is you can discuss categories, you

25   can discuss what you're looking at, and of course in

Exhibit 27
Page 25

26

 1  *Universal*, there were two rulings.  One, it involved a

 2  criminal case where the protective order was not modified to

 3  allow sharing.  Now, there are lots of factual reasons for

 4  that, and I think one of them was there was no evidence that

 5  the criminal case was ongoing at that time.  And then there

 6  was a separate civil case where the protective order was

 7  modified to allow the information to be shared in the

 8  *Universal* case but -- I will note there are some similarities

 9  -- well, I'm going to leave it at that.

10          The point being, the existence of third parties

11  does -- is a different way of looking at it, but I don't

12  think that helps you, because the third party can't say, "I

13  don't know exactly what the information is.  So I can't tell

14  you, Judge, how it would be crossed over and used in the

15  other case because I don't know what it is."  You do know

16  here.  You know exactly what it is.  You know what documents

17  you're talking about.  They apparently don't because you

18  haven't told them, and I don't because you haven't told me,

19  and so whereas a third party can't do what you could do, you

20  can do it.  You just haven't.  Does that make sense?

21          MR. POWELL:  I understand your point, Your Honor.

22  And the issue, though, is I do think there is a significant

23  difference with third-party intervenor cases, and I think it

24  does significantly support our position, and the reason is on

25  prejudice.  A third-party-intervenor case forces a party to

Exhibit 27
Page 26

27

1   disclose their information to someone else, to new lawyers,

2   different parties in the -- in a totally different case when

3   they relied on the protective order for disclosing the

4   information to only one -- or group of parties and they have

5   to suddenly disclose it to someone entirely different.

6   That's very different here, and that's why we have the -- the

7   cases have explained -- and I'll get the citation for you in

8   just a moment here.

9           THE COURT:  So I know the cases, I read your

10  papers, but let me ask you: Did the cases also say that --

11  and maybe we should pull up *Foltz* and read from it -- that

12  the protected discovery in the original case, when it's

13  shared in the collateral case, should be done under the "same

14  terms" that it was shared in the original case?  So yes, it's

15  a different party, but the protective order is supposed to be

16  the "same terms."

17          MR. POWELL:  And, Your Honor, we are trying our

18  best to make the protective order in the ITC case coextensive

19  in the --

20          THE COURT:  Good luck.

21          MR. POWELL:  I know.  We are working on it as best

22  we can, and we have gotten some pushback from Apple.  I

23  understand we're still talking about that and trying to

24  adjust that protective order.  We are happy to treat the

25  documents as designated under both protective orders.

Exhibit 27
Page 27

28

1          And to your point on source code, I do think that

2   that is a narrow issue that we could carve out and further

3   discuss if there's a specific issue on source code, but the

4   reality is the vast, vast, vast majority of Apple's

5   production has been designated as confidential or "attorneys'

6   eyes only."  I think both parties have produced most of the

7   documents in this case in that manner.  So it isn't an issue

8   of a few documents here or there.  It's virtually everything

9   in the case.

10          The main issue here -- and I'd just ask that we

11  would like to avoid -- is the situation that occurred with

12  the *True Wearables* case, where we were -- we had dealt with a

13  position that counsel had taken, which we believed was

14  inconsistent with the record, and we were prevented and

15  hamstrung from being able to tell the court about that.  I

16  would, at least, ask that both parties be able to use

17  discovery if they -- in the ITC when we're talking about

18  discovery disputes in that case.

19          So that goes both ways.  If they think that we've

20  made a representation in the ITC that's inconsistent with

21  something we've produced here, I think they should have the

22  right to show that to us, hopefully resolve the dispute

23  between the parties, and if not, take it to the ITC judge,

24  and I think both parties should have that right because,

25  otherwise --

Exhibit 27
Page 28

29

1           THE COURT:  Okay.  So I'm happy to listen to that.
2    That's not what you're asking for, and that's kind of where
3    -- to circle back where I started, there's lots of ways to
4    handle this.  Ultimately, I'm probably just going to rule
5    thumbs' up or thumbs' down, and I don't know that that's
6    really what you all -- would serve you best.  Because I can't
7    get into things like does it -- should source code be part of
8    what's -- where the gate's lifted and source code can be used
9    in the ITC hearing?  I don't know.  Is it an issue?  I have
10   no idea.  But that seemed like, based on the amount of
11   litigation of it in the protective order, is a very important
12   thing.  You guys were fighting over how many -- the number of
13   lines of source code that could be printed off by an expert
14   in a clean room.  Am I remembering that correctly?

15          MR. SELWYN:  That's right.

16          THE COURT:  I mean, this is the level of importance
17   that was put on this issue.  That's not in the current ALJ
18   protective order, and maybe it's irrelevant, but I don't know
19   that.  What you're asking is -- lift it.  Whatever you want
20   to do, do it in the -- with the ITC with this lesser
21   protective order, and I'm telling you I'm uncomfortable with
22   that.  I would be much more comfortable with it targeted.

23          And by the way, there's two ways to do -- we just a
24   solar eclipse -- or a lunar eclipse, right.  There's two ways
25   to do it.  You could say, "Here's what I want," or you could

Exhibit 27
Page 29

30

1  say, "Listen, here's what I don't want.  I don't need source

2  code, I don't need material relating to issue X, Y, and Z,

3  but everything else I want to have the ability to use in the

4  ITC."  That's a more reasonable -- you just told me there's

5  "vast amounts" of confidential information covered in the --

6  by the protective order in this case.  I wish I had a better

7  understanding of what that was and how much of that you

8  anticipate wanting to have the ability to use before the ITC.

9  I don't have that.

10          MR. SELWYN:  And --

11          MR. POWELL:  And --

12          THE COURT:  So, Mr. -- and we're going to shout out

13  names just so that whoever does the ultimate transcript here

14  --

15          MR. SELWYN:  Mark Selwyn, Your Honor.

16          THE COURT:  Mr. Selwyn?

17          MR. SELWYN:  And, Your Honor, the motion that we

18  have been confronted with asks that the protective order be

19  modified such that they can take all of the documents that

20  Apple has produced in this case, use and produce them

21  themselves in the ITC, and we'd respectfully suggest that's

22  quite inconsistent with both the language and what the

23  parties contemplated in the protective order.  And from our

24  perspective, the key here is that the claims and the issues

25  in the ITC investigation are different from those in --

Exhibit 27
Page 30

31

1          THE COURT:  I understand.  I'll read -- just to

2    back you up on that, here's the proposed order, paragraph 5.1

3    of the protective order is to be changed and -- to use solely

4    -- "All Protected Materials shall be used solely for this

5    case," comma -- and this is the addition -- "the ITC

6    investigation captioned as" -- and I don't -- won't read that

7    into the record -- and then also added, "Nothing in this

8    Protective Order shall prevent or restrict a Party from

9    producing"..."Material in the ITC" investigated --

10   "Investigation, provided that the material is

11   designated"..."'CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO

12   PROTECTIVE ORDER,' or with a comparable notice, under

13   Paragraph 2(a) of the Protective Order in the ITC

14   investigation."

15          So what you're asking me to do is all these

16   restrictions that you fought about and that I stayed up late

17   working through one night in my back office in here -- throw

18   it all out for -- I don't know how much information -- and

19   "Here, you can do whatever you want with the ITC

20   investigation."  There's great reasons -- the Ninth Circuit

21   is right, and there's lots of good reasons for saving

22   resources to make information readily available in collateral

23   cases, but this is a unique case, a unique situation, and I

24   don't have a lot of information to tell: Are we talking about

25   50 documents? are we talking about source code? are we

Exhibit 27
Page 31

32

1  talking about the crown jewels? or are we talking about

2  something that relates to the actual publicly filed -- I

3  assume they're publicly filed -- patents in the ITC

4  litigation?  I don't know any of that.

5          MR. POWELL:  So --

6          THE COURT:  And that's where, again, the third-

7  party issue -- you're right, you don't -- we're not sharing

8  it with a third party, but you know this, and you didn't tell

9  me, and so I'm fighting with dragons in the dark trying to

10 figure out where I go with this.

11         MR. SELWYN:  And I --

12         MR. POWELL:  Your Honor, if I may?

13         THE COURT:  Let -- I was talking to Mr. Powell.  So

14 let me let Mr. Powell speak.

15         MR. SELWYN:  All right.

16         MR. POWELL:  Your Honor, and I want to try to

17 dispel you of something.  It's not that I know this and I'm

18 not telling you.  I did not analyze the ITC claims using the

19 documents in this --

20         THE COURT:  All right.  Fair enough.  Fair enough.

21 You were being overprotective --

22         MR. POWELL:  -- because I thought that would

23 violate --

24         THE COURT:  -- and I appreciate that.  Maybe the

25 right answer here is to deny the motion without prejudice to

Exhibit 27
Page 32

33

```
 1   re-bringing it after you've now heard me say you are allowed
 2   to analyze -- you're one person -- and Mr. Selwyn's working
 3   on both cases.  You're one person.  You cannot divide your
 4   brain in making an assessment, and we have requirements for
 5   good-faith meet-and-confer, and that's what you're doing, and
 6   this is solely in the context of this case, 20 -- 8:20-CV-48
 7   -- you are going to figure out what you think might be
 8   relevant in the other case without doing anything with it,
 9   and then you're going to talk to Mr. Selwyn.  Just like he
10   can do the same to you to the extent there's Masimo
11   confidential information that he thinks is going to be
12   relevant in the FTC case.  He's allowed to talk to you about
13   it and see what your position would be for purposes of your
14   professional responsibility and your responsibilities to the
15   Court to meet and confer.
16           So, if that was the issue for why that's not in
17   here, I'm telling you it can be, and maybe the answer is go
18   forth, meet and confer, and then come back to me if you can't
19   reach a resolution, and if you do come back to me, give me
20   much more specifics so I know what we're talking about but I
21   -- and I'm telling you, I don't really put much weight in the
22   work product suggestion that telling someone, "Here's the
23   potential evidence," that is relevant in a case -- that's
24   what lawyers do all the time.  That's what Rule 26(a) initial
25   disclosure are all about.  So --
```

Exhibit 27
Page 33

34

1       MR. POWELL:  I think -- yeah, and I appreciate

2   that.  And I just think it probably depends on the level of

3   specificity, but I understand what Your Honor is saying, and

4   we can certainly take another look at the documents.

5       With that in mind, I want to clarify -- hopefully

6   that order is not just for me personally but for my law firm.

7   I do not -- I'm not heavily involved in the ITC case.  That's

8   why I have Ms. Swaroop with me today.  So just to be clear, I

9   want to make sure that the people that are cleared under the

10  protective order in this case would be allowed to view the

11  information in this case and use it to analyze whether it's

12  relevant in the ITC case.

13      THE COURT:  For purposes -- I'll hear from

14  Mr. Selwyn if he disagrees, but for purposes of meeting your

15  professional obligations and my direction that -- and the

16  Court's direction and the Local Rules and Rule 37's

17  requirement to meet and confer before bringing discovery

18  disputes -- and this is a discovery dispute -- yes.

19      Mr. Selwyn, do you disagree?

20      MR. SELWYN:  I don't disagree, Your Honor.  I think

21  that's, actually, a suggestion that we had made of them, but

22  in the event -- that is what we see in some of the cases that

23  have been presented in the briefing where parties identify in

24  the case -- the *Katz* case, for example -- four opinions --

25  four documents, and they come to the court, and they say, "We

Exhibit 27
Page 34

35

1   want to modify the protective order with respect to these

2   specific documents."  That's not this situation.  They're

3   asking to modify it to use all.  But if they want to come to

4   us and say, "Hey, we have identified" -- these 20, these 50,

5   these 100 -- "documents.  We think they're relevant to the

6   ITC case," we'll hear them.  We'll meet and confer in good

7   faith.

8           THE COURT:  All right.  Well, I told you I have a

9   tentative in my head.  You may have guessed what it is, but

10  I'll see whether you think -- you each told me you thought,

11  maybe, there's stuff that could be worked out.

12          Mr. Powell, I'll circle back to that.  Would you

13  like -- and what I would probably do in this situation is

14  deny the motion without prejudice following further meet and

15  confer in light of the clarification that I've given to the

16  parties that it can be brought back.  I know you've got --

17  you're time sensitive here, but let's just say, where things

18  are going, it's probably not going to be the ruling that you

19  want anyway.  So is that something that you can live with --

20  denial without prejudice -- and you can meet and confer

21  subject to what I described in terms of the -- use of the

22  documents -- to meet and confer -- under the protective

23  order?

24          MR. POWELL:  Yes, Your Honor, although I would ask

25  that we can expedite the meet-and-confer process because we

Exhibit 27
Page 35

36

1   do have a very short time line in the ITC.

2           THE COURT:  Why can't you do it today?

3           MR. POWELL:  Well, we will need to identify the

4   documents first, which we haven't done yet because we were

5   afraid it would violate the protective order.

6           THE COURT:  Okay.  How much time do you need to

7   identify the documents?

8           MR. POWELL:  May I confer for a moment?

9           THE COURT:  Yes.

10          And while they're conferring, Mr. Selwyn, assuming

11  that I do what I've just tentatively said I'm going to do,

12  which is deny the motion without prejudice to it being re-

13  brought following further meet-and-confer on -- subject to

14  the clarification of the protective order, is there any

15  objection from Apple to that?

16          MR. SELWYN:  There's no objection to Apple --

17          THE COURT:  And is Apple going to agree to work

18  quickly to try to reach resolution or determine there is no

19  resolution that can be agreed to?

20          MR. SELWYN:  We will.  But let me just say one

21  thing: My expectation would be that it would be a fairly

22  small amount of documents that they would be identifying, and

23  if that's the case, we'll be able to get through them very

24  rapidly.  If they come back to us and say, "It's all the

25  documents," that's going to be a different story.

Exhibit 27
Page 36

37

1          THE COURT:  In terms of time, understood.  What I'm

2     -- I'm not going to pre-direct how this could go.  Like I

3     told you, it could be "Here's the documents we want" or "Here

4     are huge of swaths of documents you can exclude that we're

5     not going to include," but something that tells me more

6     specifically -- maybe not 4 documents but something more

7     specifically what we're talking about because, again, you

8     know what your -- you may not have done the analysis yet, but

9     you can, and you may not have to be document-by-document

10    specific but -- you know, the other option is you can just

11    ask for it in the FTC case.  This is all about trying to

12    preserve resources, but it's -- a denial doesn't leave you

13    without recourse, right.

14          So, Mr. Powell, after your conference, how much

15    time?

16          MR. POWELL:  So it will take probably a little bit

17    of time for us to identify the documents.  I'm guessing we

18    can do so within the typical 10-day time under the meet-and-

19    confer, but I'd like to, hopefully, when we identify them,

20    meet with Apple promptly --

21          THE COURT:  Well, the Local Rule 37 meet-and-confer

22    is only 10 days from the date the moving party sends a

23    letter.  So there's no limit to how long you can take to

24    figure out what documents or information you're looking for,

25    but what I'm trying to is if you were worried about this

Exhibit 27
Page 37

38

1  slipping, I'll set a schedule right now, and I'll shorten the

2  10-day response time, but if you tell me it's going to take

3  you 20 days to come up with the list and that the list

4  conceivably could be a million pages, then I'm probably not

5  going to shorten the 10-day-response time period.

6          MR. POWELL:  Okay.  Thank you, Your Honor.  It's

7  difficult for me to know.  So why don't we stick with the

8  same -- the standard schedule because I don't know yet.  We

9  haven't looked at the documents --

10         THE COURT:  All right.

11         MR. POWELL:  -- with that in mind.

12         THE COURT:  So I'm going to deny the motion for the

13 reasons stated on the record here, that recognizing the

14 Ninth Circuit and *Foltz*'s rulings, that based on what's in

15 front of me, under the *Foltz* factors, I'm not going to order

16 a modification of the protective order, but that's without

17 prejudice to, upon further meet and confer by -- between the

18 parties with the understanding that they are able to review

19 the documents for purposes of assessing a desire to use them

20 in the FTC case without violating the protective order, that

21 this motion may be re-brought, or Apple might bring the

22 motion if they want to have some of Masimo's documents carved

23 out, or it could be a joint stipulated request.

24         But however it's done procedurally, the motion is

25 going to be denied without prejudice to it being re-brought

Exhibit 27
Page 38

39

1    following further meet-and-confer.  All right?

2            Mr. Powell, anything further?

3            MR. POWELL:  Yes.  May I ask one clarification?

4            THE COURT:  Yes.

5            MR. POWELL:  Your Honor mentioned that in the ITC

6    case we may seek these documents from Apple in the ITC case.

7    Are we allowed to identify documents from this case in the

8    ITC and say, "Apple, this is what we want"?

9            THE COURT:  Let me say -- here's what you can do --

10   we'll -- I'm not going to call it a "wall," but as part of

11   your meet-and-confer, you can simply say, "I'm going to" --

12   "If I don't" -- "If you don't agree to this, I'm going to ask

13   for them in the ITC case," and it seems to me -- unless Apple

14   -- I won't characterize it but -- there's nothing that would

15   prevent you -- actually, let me put this way: You can do an

16   alternative request that "Here's what I want, and if I can't

17   get it, I want the ability to use my knowledge from this case

18   to ask specific requests in the ITC case."  And the benefit

19   to that is it lets the ALJ decide the relevance of the

20   information if that's what Apple's objection is, and that

21   seems, maybe, like a fair way of resolving it.  It puts -- it

22   essentially punts it to the ITC judge to determine whether

23   it's relevant if that's what Apple's objection is.

24           MR. SELWYN:  Can I be heard on that, Your Honor?

25           THE COURT:  Well, I haven't made a decision on it.

Exhibit 27
Page 39

40

1          But is that what you're asking, Mr. Powell?

2          MR. POWELL:  Yes.  But I believe Apple would need

3    to agree to that in -- for --

4          THE COURT:  Well, what I'm saying is you -- if you

5    can't agree to lift the veil as to some certain number of

6    documents, then you can come forward and say, "I want to lift

7    the veil as to" this, "but alternatively, Judge Early, I want

8    you to authorize me, if you're not going to lift the veil, to

9    use my knowledge of this case to ask for specific documents

10   from Apple in the ITC case," and --

11         MR. POWELL:  Right, and I do think that would be

12   very supported by *Foltz* and that would address the problem we

13   had with *True Wearables*.  The issue is we don't know -- and I

14   don't -- I don't mean this in a negative light.  It might be

15   that counsel doesn't know about a particular document and we

16   do, and I'd love to be able to say, if it comes up in the ITC

17   where they're saying, you know, "X document doesn't exist,"

18   I'd love to be able to tell them, "No.  Here it is.  You

19   produced it in the district court.  I'd like you to produce

20   it here."

21         THE COURT:  Well, I'm not concerned about you

22   telling Apple's counsel that.  I am concerned about putting

23   it in a filing to the ALJ that says, "They produced this

24   document in this other case.  They haven't produced it here.

25   We want it in this case."  Talking to counsel about it is

Exhibit 27
Page 40

41

1   within, I think, a fair reading of the protective order.

2   Once you throw it out into the ITC proceeding world and now

3   it -- whatever you've just filed in the ITC to say, "I want

4   this document.  They haven't given it to me" -- this is the

5   *True Wearables* paradigm -- I'm a little concerned about that.

6   But you can certainly raise it with Apple.  If they say no,

7   come and see me.  But that's what we're talking about here is

8   -- then we're talking about a particular document or a

9   particular category of documents -- something smaller than

10  "everything."  All right?

11          And, Apple, you wanted to chime in on that?

12          MR. SELWYN:  I think you struck the right line.  I

13  thought the suggestion was being made that they should be

14  able to use the documents from this case without going first

15  to you and going to the ALJ and saying, "Something was

16  produced in the district court.  We want you to order it in

17  the ITC."  That we would view as a violation of the

18  protective order.  They have to come back to you first.

19          THE COURT:  So at this point I tend to agree with

20  that, but what I'm saying is if, after you've tried to

21  resolve this informally and it's not made and you come back

22  and say, "Okay.  I'm back here, Judge Early, and now I've got

23  the stuff that you said you didn't have" in front of me.

24  "Here's the data on how many confidential documents there

25  are, generally speaking how many we think they're going to be

Exhibit 27
Page 41

42

1    relevant to the ITC, and you either lift the veil entirely,

2    or maybe we exclude some things and then lift the veil as to

3    everything else," or "Here's seven categories that we want

4    the veil lifted, and oh, by the way, if you don't want to do

5    any of that, just authorize us to ask the ALJ" -- or -- I'm

6    sorry -- to propound -- and forgive me.  I don't how it works

7    on the -- in the ITC.  I saw you have a discovery cutoff of

8    February -- to propound Apple, "Hey, produce to me" -- and

9    you can identify them by Bates number from this case --

10   "produce me these documents in that case."  You can't do that

11   now, but if you come to me as that being an alternative way

12   of handling it, I'll consider it.  I'm not making a ruling

13   right now on it, though.

14           What I'm saying is you folks need to talk about it

15   because you didn't -- you don't -- they don't know what

16   you're talking about, I don't know what you're talking about,

17   and I don't even know the orders of magnitude of what you're

18   talking about and how it fits in with this case and how it

19   fits in with the ITC action.  So share a little information;

20   it's going to go a long way.  And maybe it won't work out and

21   you'll be back, and I'll be happy to take it up again.

22           MR. POWELL:  Understood, Your Honor.  I guess the

23   only thing that I would note is what we just heard, that --

24   this idea of compartmentalizing and "if you use it here, it's

25   a violation; if you use it in that way, it's a violation."  I

Exhibit 27
Page 42

43

```
1   think the only thing that serves to do is slow things down
2   and cost a lot of money between the parties.  And I do think
3   that it would make sense for both parties if we were -- if
4   neither of us were trying to hide anything, it would make
5   sense that both of us would allow the other one to look at
6   information and show it to the ALJ if we think there's a
7   representation that's correct.
8           THE COURT:  Lots of things would make sense, and
9   you argued earlier that the reason why there's no law in this
10  case is -- according to your inference -- is that the parties
11  typically agree to share and cross-designate materials.  It's
12  not happened here.  So the fact that people didn't agree -- I
13  can't force people to agree, I can only issue rulings, and
14  what I can suggest is you're in the best position to know
15  what serves you; Apple's in the best position to know what
16  serves them; see if you can reach an agreement.  If -- I
17  quoted Bob Dylan last time.  I'll quote Mick Jagger this
18  time: You can't always get what you want, but if you try some
19  time, you just might find you get what you need.
20          All right.  So that's going to be the ruling of the
21  Court.  The motion is denied without prejudice.
22          MR. SELWYN:  Thank you, Your Honor.
23          THE COURT:  Thank you.
24          MR. POWELL:  Thank you, Your Honor.
25      (Proceedings adjourned at 11:03 a.m.)
```

Exhibit 27
Page 43

44

1

2

3

4                              CERTIFICATE

5             I certify that the foregoing is a correct

6    transcript from the electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9    /s/ Julie Messa                November 20, 2021
     Julie Messa, CET**D-403       Date
10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 27
Page 44