# EXHIBIT 7



## Expert Analysis

# Fed. Circ. Patent Decisions In 2021: An Empirical Review

By Dan Bagatell ·  Listen to article

Law360 (January 6, 2022, 1:32 PM EST) -- This fifth annual article provides an empirical review of the U.S. Court of Appeals for the Federal Circuit's decisions in patent cases during calendar year 2021.[1]


Dan Bagatell

Overall, the Federal Circuit decided fewer patent cases in 2021, with much of the decline reflecting the COVID-19-related slowdown in district courts in 2020. The court also issued fewer precedential opinions and summary affirmances and more nonprecedential decisions.

Patent owners and applicants continued to have less success than patent challengers, and their results as appellants were especially dismal. Dissents were rare, and the court invalidated claims in 39 of 41 patent eligibility cases.

### Methodology and Scope

This year's study covers all patent cases decided by the Federal Circuit in 2021, whether by precedential opinion, nonprecedential opinion or summary affirmance. It includes merits decisions, rulings on writ petitions, and dismissals for unappealable subject matter or lack of constitutional standing.

But it excludes denials of leave to appeal, stipulated dismissals and remands, cases remanded to the Patent Trial and Appeal Board based on the U.S. Supreme Court's U.S. v. Arthrex Inc. decision last year,[2] and appeals and cross-appeals that were dismissed as moot in view of other decisions.

The study includes appeals and writ petitions from judgments and orders by district courts, the PTAB, the U.S. International Trade Commission and the U.S. Court of Federal Claims, but only cases in which the Federal Circuit decided at least one patent law issue.

The study takes decisions as the Federal Circuit decides them: If the court resolves companion cases separately, the decisions are counted separately, and if the court decides multiple appeals in a single opinion, all are counted as one decision, regardless of whether the matters were formally consolidated. When the Federal Circuit reissues an opinion after granting a petition for rehearing, the study counts the reissued opinion and disregards the retracted opinion.[3]

### Caseload and Case Origins

The Federal Circuit decided 391 patent cases in 2021, down sharply from the 430 to 450 decisions in recent years.

Moreover, although in 2020 the court issued more decisions in appeals from district courts than decisions in appeals from the PTAB, that trend reversed in 2021: Decisions in PTAB appeals predominated in 2021 because they declined only slightly (from 207 to 198), whereas decisions in district court appeals declined substantially (from 211 to 181). The most likely explanation is a delayed effect of the slowdown in district court dispositions in 2020 due to the pandemic.

The 163 appeals from inter partes reviews accounted for 42% of all Federal Circuit patent decisions, more than in the past several years. The other PTAB appeals were a mix of 19 original prosecutions, six ex parte reexaminations, six post-grant reviews — one of which was a covered-business-method review — three inter partes reexaminations and one interference.

The Federal Circuit also issued eight decisions in patent cases from the ITC and four decisions in patent cases from the Court of Federal Claims.

### Case Origins



Exhibit 7 -3-





## Outcomes, District Court Appeals



Affirmed/Writ Denied — Reversed/Vacated/Writ Granted — Mixed Results

**Affirmance Rates**

The Federal Circuit fully upheld the lower tribunal, i.e., affirmed outright, dismissed entire appeals or denied all relief in mandamus cases, in 78% of its patent decisions in 2021, down slightly from 2020. Appellants and mandamus petitioners prevailed outright only 13% of the time, and the remaining 9% produced mixed results with each side prevailing in part.

The Federal Circuit's affirmance rate in PTAB appeals fell to 81% in 2021, down from nearly 86% in 2020.

The PTAB actually fared quite well — comparable to or better than in 2020 — in three of the four quarters of 2021, but a rough third quarter with an affirmance rate of barely above 60% pulled down the average. The PTAB's affirmance rate in IPR appeals was 80% for the year, with a similar quarterly pattern. Appellants prevailed outright in 10% of PTAB appeals and 9% of IPR appeals, up a bit from 2020.

The Federal Circuit fully upheld district court decisions 75% of the time in 2020 and fully reversed or vacated 17% of the time. The ITC prevailed in seven of its eight appeals; the eighth produced a mixed result.



Affirmed — Reversed or Vacated — Mixed Results

Exhibit 7
-4-

Among the district courts with at least 10 reviewed decisions, the U.S. District Court for the Eastern District of Texas fared best, with affirmances or writ denials in all 10 cases. Notably, patentees fully prevailed in only three of the 10 affirmed decisions.

The U.S. District Court for the Northern District of California enjoyed an 86% affirmance rate, and the U.S. District Court for the District of Delaware was above average at 78%. The U.S. District Court for the Central District of California was fully affirmed in just 69% of its cases.

The U.S. District Court for the Western District of Texas was upheld only 49% of the time, but that figure includes 18 writ grants on venue issues. In appeals from final judgments by that court, the Federal Circuit affirmed twice and issued one mixed decision.



Success Rates for Patent Owners or Applicants Versus Patent Challengers

Patent owners and patent applicants prevailed outright in 25% of all patent appeals in 2021, down slightly from 2020. They lost outright 62% of the time, and the remaining cases produced mixed results.

In a change from 2020, patent owners and applicants fared slightly better in PTAB appeals than in district court appeals, fully prevailing 26% of the time in the former and 23% of the time in the latter.

The outright loss rate for patentees and patent applicants was markedly higher in district court appeals than in PTAB cases: 66% versus 59%. In IPR appeals, patent owners won outright 28% of the time, lost outright 55% of the time and achieved mixed results the rest of the time.



Patent applicants or owners were appellants in 266 cases decided in 2021. In those cases, they

Exhibit 7 -5-

prevailed outright only 7% of the time and lost outright 79% of the time. Those results were even worse than the poor results in 2020.

By contrast, patent challengers were appellants in 160 cases.[4] Challenger appellants enjoyed greater success than patentees and patent applicants, prevailing outright 25% of the time and losing outright just 51% of the time. Challenger appellants achieved mixed results 24% of the time, whereas applicant and patentee appellants achieved mixed results 14% of the time.



### Types of Opinions

The Federal Circuit issued precedential opinions in 20% of its patent decisions in 2021, down from 25% in 2020. The rate of nonprecedential opinions rose from 42% in 2020 to 49% in 2021, while the rate of summary dispositions fell even further, to 30% — well below historical norms of over 40%.[5]

Again, the most likely explanation is COVID-19, which caused the court to cancel in-person arguments for much of the year and consider many appeals on the papers. The court usually, although not always, issues written opinions rather than summary affirmances in nonargued cases.

Among the active judges, U.S. Circuit Judge Pauline Newman, former Chief U.S. Circuit Judge Sharon Prost, and current Chief U.S. Circuit Judge Kimberly Moore were most likely to issue summary affirmances, while U.S. Circuit Judge Kara Farnandez Stoll was least likely to affirm summarily.[6]





Exhibit 7
-6-



## Productivity

With the benefit of a lighter docket, the Federal Circuit continued to dispose of patent cases rather promptly in 2021. For true appeals, as opposed to writ petitions, the median time from docketing to date of decision dropped to 12.7 months in 2021 — quick by historical standards. The median lag time from ready date — in most cases, submission of a compliant joint appendix — to oral argument or submission was just three months.

Many cases are now being slotted into the next issued oral argument calendar. The time from oral argument or submission to decision rose slightly from last year, with precedential opinions taking a median of three months and nonprecedential opinions taking a median of only 0.7 months.

Among the active judges, U.S. Circuit Judge Richard Taranto was again the speediest author, taking a median of 1.6 months after argument or submission to produce precedential panel opinions and a median of half a month after argument or submission to issue nonprecedential decisions. Judge Moore was close behind. Judge Newman took the longest to issue both precedential decisions (a median of 10.4 months) and nonprecedential decisions (a median of 5.8 months).

Judge Taranto also led the court in the number of patent decisions at 106, followed closely by U.S. Circuit Judge Jimmie Reyna. Among the judges who were active for the entire year, Judge Newman participated in the fewest patent decisions, 67. The senior judges who participated in the most patent decisions were U.S. Circuit Judges Raymond Clevenger and William Bryson with 34 and 32, respectivly.

Judge Prost authored the most precedential majority opinions in patent cases in 2021, with 12. Judge Moore, Judge Reyna and Judge Stoll were close behind at 11. Judge Taranto authored the most nonprecedential decisions, with 19, followed by U.S. Circuit Judge Alan Lourie, with 17. Judge Newman authored the fewest patent decisions, with three.[7]

## En Banc Cases and Dissents

It was not a fractious year at the Federal Circuit. Once again, the court did not hear or decide any patent cases en banc in 2021. Even at the panel level, dissents were rare, occurring in less than 5% of patent cases. Judge Newman was again the court's most frequent dissenter with seven, followed by Judges Prost and Kathleen O'Malley at three. Most of the judges wrote either one dissent or none, and many of the dissents were only in part.



## Section 101 Cases

In previous years, patent eligibility cases have spawned many heated debates, and critics of the Federal Circuit have posited that the court's decisions in this area are unpredictable and panel-dependent. The data from 2021 do not bear out those criticisms, however.

Including both written decisions and summary affirmances, the court decided 41 cases involving Patent Act Section 101 issues in 2021. The court declared all challenged claims patent ineligible in 39 of those 41 cases.[8] And only one of the 41 decisions sparked a dissent.[9]

Of course, the Supreme Court's test derived from the 2012 Mayo Collaborative Services v. Prometheus Laboratories Inc. and 2014 Alice Corp. v. CLS Bank International decisions

Exhibit 7
-7-

and the Federal Circuit's precedent applying that test remain controversial, but the Federal Circuit was fairly predictable and almost always unanimous in applying it in 2021.



Section 101 Appeals

**Patent Friendliness**

As in past years, I have calculated a patent friendliness index, or PFI, for both the court as a whole and each judge. The PFI is calculated as 100 plus the percentage of decisions entirely favoring the patent owner or patent applicant less the percentage of decisions entirely against the patent owner or patent applicant.

The index disregards mixed decisions and dissents from denials of rehearing en banc. It is only a rough measure due to the random distribution of cases among the judges, its exclusion of cases with mixed outcomes, and its equal weighting of all cases regardless of their significance and the issues raised. But it is instructive nonetheless.

The PFI for the Federal Circuit as a whole was 62.7 in 2021, similar to 2019 and down from 65.3 in 2020. Judge Newman again had the highest PFI among the active judges with 92.5, followed by Judge Stoll at 73.4 and Judge O'Malley at 73.0.

Unusually, Judge Taranto, who is usually considered a centrist, had the lowest PFI with 50.9, followed by Judge Lourie at 54.0 and Judge Prost at 56.4. The judges closest to the court average were U.S. Circuit Judges Timothy Dyk and Todd Hughes, both at 62.4. These results may surprise some readers, but they highlight the variability of the court's docket and the folly of stereotyping.

All but one of the 11 judges who were active all year voted against the patent owner or applicant more than half the time. The exception was Judge Newman, who also led the court in pro-patent votes. The judge most likely to cast mixed votes was Judge Dyk. Judge O'Malley, who was most likely to cast mixed votes last year, was the least likely to cast mixed votes this year.




Patent Friendliness Index

In 2022, we will have at least two new judges on the court. It will be interesting to see how those changes in the court's composition will affect its decisions.

*Dan Bagatell is a partner and chair of the patent appellate practice at Perkins Coie LLP.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its*

Exhibit 7
-8-

clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice..

[1] For the four previous articles, see Dan Bagatell, Fed Circ. Patent Decisions in 2020: An Empirical Review, Law 360 (Jan. 11, 2020); Dan Bagatell, Fed. Circ. Patent Decisions in 2019: An Empirical Review, Law 360 (Jan. 9, 2020); DanBagatell, Fed. Circ. Patent Decisions in 2018: An Empirical Review, Law360 (Jan. 3, 2019); Dan Bagatell, Fed.Circ.'s 2017 Patent Decisions: A Statistical Analysis, Law360 (Jan. 5, 2018).

[2] See United States v. Arthrex, Inc., 141 S. Ct. 1970 (2021).

[3] In one case, a panel vacated a decision issued in 2020 and issued a new decision in 2021. See GlaxoSmithKline LLC v. Teva Pharms. USA, Inc., 7 F.4th 1320 (Fed. Cir. 2021). The analysis counts the 2021 decision and disregards the original 2020 decision. As a result, 2020 data reported here may differ slightly from those in last year's article.

[4] In some cases, both sides appealed.

[5] Summary dispositions include both one-line affirmances under Federal Circuit Rule 36 and single-page decisions with minimal analysis (e.g., rulings based on dispositions of previous or companion appeals).

[6] This article does not report statistics for recently appointed Judge Tiffany Cunningham, who participated in just one decision issued in 2021.

[7] The statistics in this paragraph do not include rulings on writ petitions or unsigned per curiam decisions.

[8] The two exceptions were CosmoKey Solutions GmbH v. Duo Security LLC, 15 F.4th 1091 (Fed. Cir. 2021), and Mentone Solutions LLC v. Digi International Inc., 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) (non-precedential).

[9] Judge Newman dissented in Yu v. Apple Inc., 1 F.4th 1040 (Fed. Cir. 2021).

For a reprint of this article, please contact reprints@law360.com.

0 Comments

**Sign In To Comment**

### Related Articles

Fed. Circ. Patent Decisions In 2020: An Empirical Review

Fed. Circ. Patent Decisions In 2019: An Empirical Review

Fed. Circ. Patent Decisions In 2018: An Empirical Review

Fed. Circ.'s 2017 Patent Decisions: A Statistical Analysis

EDTX Judges' Love Of Patent Trials Fuels High Reversal Rate

### Here's What You Missed

What Litigation Funding Disclosure In Delaware May Look Like

Justices Told 'Cramped' Warhol Copyright Ruling Hurts Artists

Panasonic Scores $17.5M Verdict In Calif. Laptop Patent Trial

Investment Pro Accused Of WSJ, Barron's Article Thievery

Sens. Urge Vidal To Block Drug Patent 'Thickets' Early

Adidas Claims Nike Stole Run Tracking, Shoe Technology

Key Privacy Issues To Consider Before Launching An NFT

Exhibit 7
-9-

Fed. Circ. Mulls If Jury Trial Justified In Inventorship Row

Coffee Biz Loses TM Appeal Over Italian City's Name

Brand Battles: Frito-Lay Sees Red Over 'Flamin' Fruits' TM

9th Circ. Mulls If Valid Patents Moot FCA Suit Against Bausch

Fed. Circ. Eyes Eligibility Of Stanford's Transplant Testing IP

Albright Sends Google Voip-Pal Row To Calif., Keeps Amazon

UK Litigation Roundup: Here's What You Missed In London

Judge Deals Setback To Philips In Fitness Tracker IP Suit

Considering The USPTO Pilot Program For Deferred Response

US Taking Long View On Reshaping WTO As Summit Opens

Ex-Bousquet Holstein Litigator Joins Barclay Damon In NY

Adidas Settles Ex-Tennis Coach's 'Inner Game' TM Suit

Apple Loses Appeal To Invalidate Optis' UK Wireless Patents

LexisNexis © 2022, Portfolio Media, Inc. | About | Contact Us | Legal Jobs | Advertise with Law360 | Careers at Law360 | Terms | Privacy Policy | Cookie Settings | Help | Site Map RELX

Exhibit 7 -10-

# EXHIBIT 8

Be among the first to participate.



On May 2, 1989 a garage startup solved the "unsolvable" problem of inaccurate and unreliable pulse oximetry measurements during real-life conditions such as movement. That startup was Masimo, the inventor of Measure-through Motion and Low Perfusion™ SET® pulse oximetry.

As the first of its kind, the W1 continues Masimo's legacy of innovation with accurate, continuous monitoring of multiple health parameters – including oxygen saturation (SpO2), pulse rate, perfusion index, PVi®, and respiration rate, alongside step count and fall detection. This personal, discreet, and lifestyle-friendly wearable is designed to offer actionable insight into your health.

Additional measurements, features, and insights will be activated throughout the program.

Masimo will provide a limited number of W1s on a first-come, first-served basis, at a 50% discount, to users ' ' agree to the program details and to provide feedback and data to Masimo.

MASA03225774

Exhibit 8
-11-

Program Details:

> To apply, you must be over 18 years of age and a resident of the U.S.

> You will need to provide weekly feedback on your experience with the watch, in the form of questionnaire answers and feedback sessions, and to submit the personal health data collected by the W1 for our engineering team to analyze.

> You will be asked to sign a Non-Disclosure Agreement (NDA).

> To operate, the W1 will need to be paired with a smartphone running Android or iOS, onto which you will need to download the Masimo Personal Health app.

> As firmware, software, security, and other technical updates are released, you will be expected to download and install them as soon as possible in order to ensure your W1 is kept up to date.

> At Masimo's discretion, you agree to return W1 to Masimo for a full refund or an exchange for a new W1.

> Not all requests to join will be able to be honored.

First Name*

Last Name*

Email*

Masimo will contact you at the email address you submit above. We will let you know whether you have been chosen to participate in the W1 Limited Market Release and details about your participation.

For more information about your privacy rights, please see Masimo's General Privacy Notice (/company/masimo/privacy/). For California residents, please see our CA Privacy Notice (/company/masimo/privacy/ccpa/).

**SUBMIT**

Masimo W1 is not FDA cleared.

PLCO-005923/PLM-13977A-0522

MASA03225775

Exhibit 8
-12-

(/)

**Improving patient outcomes, reducing the cost of care, and taking noninvasive monitoring to new sites and applications.™**

# Follow Us

   

(https://twitter.com/Masimo)      (https://www.linkedin.com/company/masimo- (https://www.youtube.com/c/masimo) (https://www.facebook.com/Masimo)
                                   corporation)

---

**ABOUT US**

(/company/masimo/about/)
Contact Us (/company/contact/contact-us/)

Guiding Principles (/company/masimo/guiding-principles/)

Annual Report 2020 (https://www.masimo.com/ar_2020/)

Sustainability Report (/siteassets/us/documents/pdf/plm-12996b-brochure-masimo-sustainability-report.pdf)

Company Evolution (/company/masimo/evolution/)

Investor Relations (https://investor.masimo.com/overview/default.aspx)

Press Room (/company/news/news-media/)

Media Room (/company/news/media-room/)

Careers (/company/opportunities/careers/)

**FOR HEALTHCARE**

Technology (/technology/co-oximetry/set/)

Product (/products/continuous/root/)

Solutions (/hospital-automation/)

Clinical Evidence (/evidence/featured-studies/feature/)

OEM Solutions (/oem/solutions/)

Sensors and Cannulas (/sensors/)

Support (/company/global-services/technical-services/)

Resources (http://techdocs.masimo.com/)

**FOR CONSUMERS**

(https://www.masimopersonalhealth.com/)
Products (https://www.masimopersonalhealth.com/)

MASA03225776

Exhibit 8
-13-

Newsletter sign-up (/company/news/livewire-registration-form/)

Experience (https://www.masimopersonalhealth.com/blogs/ambassadors)

Education (https://www.masimopersonalhealth.com/pages/what-is-a-pulse-oximeter)

Support (https://www.masimopersonalhealth.com/pages/troubleshooting)

**LEGAL**

Compliance (/company/masimo/codes-of-conduct/declaration/)

Codes of Conduct (/company/masimo/codes-of-conduct/)

Patents (/company/masimo/patents/)

Terms (/company/terms-of-use/)

**PRIVACY**

Privacy Notice (/company/masimo/privacy/)

CA Privacy (/company/masimo/privacy/ccpa/)

Cookie Notice (/company/cookie-notice/)

**SITEMAP (/SITEMAP/)**

© 2022 Masimo. All Rights Reserved.

MASA03225777
Exhibit 8
-14-

# EXHIBIT 9

DOCUMENT FILED UNDER SEAL

# EXHIBIT 10

DOCUMENT FILED UNDER SEAL

# EXHIBIT 11

DOCUMENT FILED UNDER SEAL

# EXHIBIT 12

DOCUMENT FILED UNDER SEAL