# EXHIBIT A

1                    CENTRAL DISTRICT OF CALIFORNIA
                     SOUTHERN DIVISION - SANTA ANA
2


3

    MASIMO CORPORATION, et al. )  Case No. SACV 20-48-JVS (JDEx)
4
                               )
         Plaintiffs,           )  Santa Ana, California
5
                               )  Thursday, November 18, 2021
             v.                )  10:06 A.M. to 11:02 A.M.
6
                               )
    APPLE INC.,                )
7
                               )
         Defendant.            )
8
                               )

9


10


11
                       TRANSCRIPT OF PROCEEDINGS
12
             BEFORE THE HONORABLE JOHN D. EARLY
                  UNITED STATES MAGISTRATE JUDGE
13


14


15

    Appearances:               See Page 2
16

    Deputy Clerk:              Maria Barr
17

    Court Reporter:            Recorded; CourtSmart
18

    Transcription Service:     JAMS Certified Transcription
19

**This Page Intentionally Left Blank**

Masimo Corporation, et al. v
Apple Inc.

November 18, 2021

Page 3

1
2
3   For the Plaintiffs:      Knobbe Martens
4                           By: ADAM POWELL
                            3579 Valley Centre Drive
                            San Diego, California 92130
5                           (858) 707-4000
                            adam.powell@knobbe.com
6
7   For the Defendant:      Wilmer Cutler Pickering Hale & Dorr
                            LLP
8                           By: MARK D. SELWYN
                            2600 El Camino Real, Suite 400
9                           Palo Alto, California 94306
                            (650) 858-6031
10                          mark.selwyn@wilmerhale.com
11                          Gibson Dunn & Crutcher LLP
12                          By: ILISSA S. SAMPLIN
                            333 South Grand Avenue
13                          Los Angeles, California 90071-3197
                            (213) 229-7000
14                          isamplin@gibsondunn.com
15
16
17
18
19
20
21
22
23
24
25

Page 5

1       THE COURT: Okay. Is she planning on offering
2   argument this morning?
3       MR. POWELL: Not unless there are any questions
4   about the ITC specifically.
5       THE COURT: All right. Thank you.
6       And on behalf of Apple?
7       MARK D. SELWYN: Good morning, Your Honor. For
8   Apple, Mark Selwyn, Ilissa Samplin, and with us from in-house
9   at Apple is Natalie Pous, senior litigation counsel.
10      THE COURT: All right. Good morning, counsel. And
11  it's Ms. "Post"?
12      MR. SELWYN: Pous, P-o-u-s.
13      THE COURT: Oh, okay. Good morning.
14      All right. We are here for a motion to modify --
15  plaintiffs' motion to modify the protective order. I'll tell
16  you what I've looked at, and we'll first start if there's
17  anything I've missed, and then I'll ask whether there's
18  anything I should be aware of before we jump into it.
19      What I have reviewed and considered is Docket
20  No. 505; 506; 507, which is the notice of motion, the motion,
21  the memorandum in support of the motion, and a declaration
22  with one -- it says one exhibit but multiple exhibits that
23  just have one docket entry. Then I have reviewed Docket
24  No. 511; and 512, which is a memorandum in opposition and a
25  declaration of counsel with -- and a series of at least one

Page 4

1   SANTA ANA, CALIFORNIA, THURSDAY, NOVEMBER 18, 2021, 10:06 A.M.
2       THE COURT: All right. We have two matters on
3   calendar for law and motion this morning. We're going to
4   start with the Masimo v. Apple case. The reason we're doing
5   that -- I'll call it in just a moment -- is I think your
6   matter will be quicker but two things: I've been wrong
7   before; and, second, I said, "quicker," not "quick." So
8   everyone else just get comfortable, and we'll get started.
9       So we're calling Masimo Corporation, et al. v.
10  Apple Inc., Case No. 8:20-CV-48-JVS-JDE, and we will take
11  appearances from -- I believe everyone is here in person --
12  starting with counsel for plaintiff.
13      ADAM POWELL: Thank you, Your Honor. I forget.
14  Would you like me top stand at the podium?
15      THE COURT: You can -- because we're staying
16  distant, you can stay seated, but make sure everyone keeps
17  the microphone close enough so that I can hear you.
18      MR. POWELL: Thank you, Your Honor. This is
19  Adam Powell for Plaintiffs Masimo Corporation and Cercacor
20  Laboratories, Inc. With me is my partner Sheila Swaroop.
21      THE COURT: And my understanding -- Mr. -- or,
22  Ms. Swaroop has not made an appearance on the docket yet?
23      MR. POWELL: I believe that's correct, Your Honor.
24      THE COURT: Okay.
25      MR. POWELL: Ms. Swaroop is ITC counsel.

Page 6

1   exhibit; and a reply, Docket 513, with another declaration
2   from Mr. Powell.
3       So, Mr. Powell, is there anything that I should
4   have reviewed that I didn't just read?
5       MR. POWELL: No, Your Honor, not from my
6   perspective.
7       THE COURT: And Mr. Selwyn?
8       MR. SELWYN: No, Your Honor. That's the complete
9   set of papers.
10      THE COURT: All right.
11      Mr. Powell, is there anything factually or any new
12  legal developments that I should be aware of before we jump
13  into things, from your perspective? Just a "yes" or "no" to
14  start.
15      MR. POWELL: Nothing major, Your Honor. A couple
16  small things.
17      THE COURT: All right.
18      Mr. Selwyn, anything --
19      MR. SELWYN: No. I don't believe so.
20      THE COURT: All right.
21      Mr. Powell, what are the small things that I should
22  be aware of that have changed since the reply briefing on
23  November 4th?
24      MR. POWELL: Is just an update, Your Honor -- is
25  last night counsel for Apple suggested that -- or requested

Exhibit A
-8-

Masimo Corporation, et al. v
Apple Inc.

---

Page 7

1 that we copy ITC counsel on all discovery correspondence in
2 this case moving forward.
3     MR. SELWYN: Your Honor, one clarification.
4     THE COURT: Okay.  Give me one -- just give me one
5 second.
6     All right.  Mr. Selwyn, your clarification?
7     MR. SELWYN: The clarification is I am counsel in
8 both cases.  I asked to be served with copies of the papers
9 that they were sending to the special master.  I didn't think
10 it was anything of particular significance, but I wanted to
11 clarify that.
12     THE COURT: All right.  So I'm actually going to --
13 I'm not going to give you a tentative.  I have a tentative in
14 my head, but I wanted to talk to you about some thoughts
15 because I know I probably am living in a fantasy world
16 because I've asked before to see if you folks can informally
17 resolve things, and it usually doesn't end -- well, I should
18 say that.  Sometimes it does end well.  But I think you folks
19 should be able to come to a reasonable accommodation on the
20 issues that are raised in the motion, and you've each taken,
21 as good lawyers do, strong positions on Foltz and on what the
22 Ninth Circuit said and how district courts have interpreted
23 motions to modify protective orders.
24     And you're all correct and incorrect insofar as
25 each of you argue, and I guess what I'll say is I could

Page 8

1 cherry-pick lines from each of your briefing that I think
2 overstate your respective positions.  On the one hand,
3 plaintiffs have, at least by negative implication, suggested
4 that if there's any overlap in the issues or the discovery at
5 issue between the two cases that that's sufficient relevance
6 or connectivity requirement under the first prong for
7 modifying a protective order to collateral proceedings, and I
8 don't believe that's a fair statement of law, and I'm sure
9 plaintiff would tell me, "Well, there's more nuance to what
10 we're saying, and we're not actually saying it," and that's
11 fine.
12     And from the defense's standpoint,  the suggestion
13 that there -- or implication that there needs to be complete
14 or near-complete overlap between the issues and discovery in
15 the two cases, and you're going to tell me, "Well, that's not
16 quite our position," but I could cherry-pick things from your
17 briefing that suggest that maybe that's what your saying
18 isn't really -- it's somewhere in the middle, like everything
19 else.
20     Mr. Selwyn, I don't recall how many of the hearings
21 you've been at.  I know Ms. Samplin has been in some lengthy
22 hearings that we have here, and I know Mr. Powell has.
23 Everything is a balancing.  All the -- everything I make is a
24 balancing, and this is a balancing, keeping in mind, the
25 Ninth Circuit has said they strongly favor, for various good

Page 9

1 policy reasons, sharing information, making discovery
2 available in collateral proceedings.  It's not automatic, and
3 I still need to look at the unique facts of the case, and
4 here's what our tell you:
5     There are some very unique facts here.  One of them
6 -- and maybe the most -- well, I'm not going to characterize
7 it, but one of the unique and important facts is the
8 protective order here.  It was heavily litigated as to many,
9 many, many issues.  There was no litigation -- the parties
10 agreed and it was stipulated that it was to contain a
11 provision that it was any documents designated under the
12 protective order were only to be used in the context of this
13 litigation, and that's what this motion is to amend or
14 change, but that was submitted as a stipulation and
15 agreement.
16     But there were scores of other provisions that,
17 frankly, were, at least to me, unique in terms of the
18 hundreds of protective orders that I look -- have looked at
19 over the years and were the subject of substantial briefing
20 and, frankly, compromise, in some respects, by the parties
21 and then the Court picking and choosing and sometimes
22 charting a middle course on things like access to in-house
23 counsel -- who those in-house counsel could be, how many
24 there could be.  Vendors -- which vendors could be used,
25 whether they needed to be preapproved before vendors could be

Page 10

1 shown various levels of information.
2     Outside counsel -- we had disputes and litigation
3 over what outside counsel could be -- have access to the
4 information.  The prosecution bar was something that you
5 folks had disagreements on.  And a great deal of, I'll say,
6 getting into the minutiae of the handling of source code --
7 confidential source code -- who could look at it, how it
8 could be viewed, how many lines of it could be printed.  I
9 think -- how many pages?  I actually printed -- it was
10 something like 27 pages was our protective order.  So this is
11 a unique protective order.
12     And the second factor in Foltz and in the other
13 cases -- the reliance by the designating party here --
14 because they're opposing it -- Apple -- I just want to say
15 that because of the very specific, heavily litigated, and
16 otherwise carefully crafted terms of this protective order --
17 and the reason why it was so heavily litigated is -- and it's
18 in the record -- Apple's view, at least -- and I think to
19 some extent it's shared by Masimo -- is that the technology
20 underlying the trade secret claims is highly, highly, highly
21 sensitive, proprietary.  I don't know how you would put a
22 value on it, but it's been represented to me that various
23 aspects of the discovery in this case is of great financial
24 import and there would be severe consequences were it to --
25 through advertence or inadvertence -- be disclosed.

---

JAMS Certfied Transcription

Min-U-Script®

Exhibit A
-9-

Masimo Corporation, et al. v
Apple Inc.

November 18, 2021

Page 11

1    And in light of that, I've also had conversations
2 with counsel about how I view protective orders, and I don't
3 know if anybody is going to look over to the marshals' door
4 with the big lock, but that's where -- what I tell people is
5 the logical end point of someone's failure to comply with a
6 protective order, as with any order, is a potential contempt
7 and the logical end point of a potential contempt -- it's not
8 the starting point, but it's a potential end point -- is
9 being taken out from the courtroom through that door with the
10 big heavy lock by marshals.  And so I've told counsel that in
11 this case -- I've referenced it in other cases -- I take this
12 protective order and any order of the court very seriously
13 and expect counsel to abide by it.
14    And so that is a very long way of letting you know,
15 unlike in Foltz, where the protective order is attached as an
16 appendix to the opinion and it's about three-pages long and
17 is almost, for lack of a better term, pro forma, this is a
18 very detailed, very comprehensive protective order that I do
19 believe Apple relied on.  It's been called a "blanket"
20 protective order, and as that term is used, there's one sense
21 in which it was blanket, and that's done for everybody's
22 interest because, if you folks were going to be coming to me
23 for every document in this case that someone said was
24 confidential, let's just say you wouldn't be coming to me;
25 you'd be going to Judge Guilford and an army of other special

Page 12

1 masters.  So this case needs it, this case is unique, and
2 this protective order is unique, and reliance on it, I
3 believe, is real regardless of whether it's categorized as a
4 "blanket" protective order or not.  That element of the Foltz
5 balancing is one that I'm taking very seriously.
6    The other aspect of Foltz -- and it's important to
7 remember, in Foltz -- God bless whoever the district judge
8 was who entered the order -- I've never seen one in all my
9 years of practice -- the protective order in Foltz was an
10 order -- a case was settled, and the judge entered the
11 confidentiality protective order that allowed either party to
12 designate documents as confidential without judicial review
13 and then ordered those documents that were in the court files
14 sealed and ordered the parties -- both parties not to
15 disclose those documents to anyone outside of the contours of
16 the protective order.
17    So the protective order in Foltz was not like our
18 standard protective order and not like the protective order
19 in this case.  It covered both sides.  So the third parties
20 -- the intervenors in Foltz -- were folks who hadn't seen the
21 documents that were subject to the protective order, and they
22 were trying to get them from -- was it Allstate? -- trying to
23 get them from Allstate for a similar case because they
24 couldn't get them from plaintiff, because Allstate had
25 designated them confidential, but Allstate refused to give

Page 13

1 them to them because they -- Allstate argued, "The judge in
2 this other case told us we can't release them.  They're
3 subject to a protective order."  Even though they're
4 Allstate's own documents, right.  So bear that in mind.  That
5 was the state of play in Foltz.
6    Now, that's not to say that anything in Foltz that
7 changes the outcome or that other subsequent cases that have
8 interpreted Foltz make that a distinction that changes the
9 Ninth Circuit general rule that we're to liberally share
10 collateral discovery, but it's just important to note that
11 that was what the Ninth Circuit was ruling on, and that's not
12 our situation here.
13    Here, plaintiff can get this -- these records --
14 first of all, plaintiff knows what the records are, right,
15 what's -- it's not a situation like in Foltz where the
16 intervenor didn't know what the records were, hadn't seen
17 them; and, secondly, it's a situation where plaintiff can get
18 the records from Apple.  They know what they are.  They can
19 get them.  It's just a matter of are we wasting everyone's
20 time, money, and effort by saying, "Well, you have to ask for
21 them in the ITC matter," or can we just lift the veil of the
22 protective order and make everything that Apple produced in
23 this case usable in that other case?
24    The last thing I want to -- just general topic I
25 want to talk about is all of the cases -- Foltz and all of

Page 14

1 the cases, in discussing the first element, the relevance,
2 the test isn't the general connectivity, relevance connection
3 between the issues in the cases or the discovery in the cases
4 alone.  What Foltz talks about and what the other district
5 court cases relying on Foltz talk about is the connection
6 between the documents that are subject to the protective
7 order that are being sought, and the language that is
8 repeatedly used is -- and this is from Foltz at 1132 -- the
9 party seeking to amend the protective order in that case --
10 must demonstrate the relevance of the "protected discovery"
11 to the collateral proceedings.  And I could go on.  That
12 phrase is used over and over again in Foltz and over and over
13 again in the district cases.  So what we're looking at is the
14 connection to the "protected discovery."
15    In this case, plaintiff is free to use anything
16 Apple has produced that's not subject to the protective
17 order.  The only thing we're talking about are documents that
18 are subject to the protective order, and here's where, in my
19 view -- I've told you my views about the second prong -- the
20 motion is -- I don't want to say "weak" or "lacking," but
21 it's a little weak and a little lacking in pointing to me
22 what is the "protected discovery" that Apple thinks is
23 relevant to the ITC proceeding?
24    And I -- based on the record that's in front of me
25 -- there's nothing in the motion -- there's a lot of cross --

Exhibit A
-10-

Page 15

1 there's a lot of reference to "Well, here's the crossover of
2 issues" -- I shouldn't say "a lot." There's some references
3 "Here's the crossover of issues," and then some relevance and
4 some references to "Here's some discovery that we sought in
5 this case, and here's some discovery that's being sought in
6 the ITC case," but I don't see anything that tells me what is
7 the confidential or "attorneys' eyes only" or source code
8 that's being sought to be introduced or used in the ITC case?
9 and that's the relevant inquiry. That's what Foltz says, and
10 that's what these other cases say. It's what is the
11 relevance of the protected discovery"
12       And so I'll let counsel be heard on all this, but
13 this is not a case that it's just going to be a knee-jerk
14 "Yes, we're going to share it," because here's some of the
15 things I don't know: I don't know how much protected
16 discovery there's been. Is it in -- if it's in the record,
17 I'll ask you to point me to it. How many documents have been
18 produced that were designated confidential or "attorneys'
19 eyes only"? How much source code? And then -- I don't know
20 that. How much is it as a percentage of the overall
21 production? I think -- tell me if I'm wrong -- that
22 somewhere in the record Apple told me that they've produced
23 50,000 pages of records or something along those lines.
24 Frankly, it seemed low. I would have thought it was much
25 higher.

Page 16

1       But be that as it may, tell me: What do I have that
2 tells me the protected discovery -- what's the overreach?
3 How is that going to be used in the ITC case? Again, what
4 Apple's telling -- or, what -- yeah -- what Apple's telling
5 me is "It's just a patent case, and this confidential
6 information isn't really going to be a part of that case."
7 Maybe they're right, and maybe they're wrong, but what do I
8 have to assess that one way or another?
9       So on both the relevance and on the prejudice,
10 reliance issues, this is not Foltz, and it's not a lot of the
11 other cases that we're looking at.
12       And one thing I'll agree with plaintiffs is that --
13 obviously, we have the same parties here, right, and so to
14 the extent there's a concern that some third party that Apple
15 didn't foresee having access to the confidential information
16 isn't a part of this, but I don't know enough about ITC
17 proceedings, about whether some other intervenor can join.
18       I went through the materials and noted that it
19 looked like the -- a -- the secretary Lisa Barton sent
20 letters out to Dale Berkley at that National Institute of
21 Health; to Elizabeth Kraus, who is the deputy director for
22 International Antitrust in the Office of International
23 Affairs of the FTC; Dax Terrill, who's the chief exclusion
24 officer of the enforcement branch for the United States
25 Customs and Border Patrol; and Lynda Marshall, the

Page 17

1 International Division of the Antitrust Division of the
2 Department of Justice all got notice of this case. I don't
3 know -- they're all -- sounds like all government officials,
4 and maybe that doesn't -- shouldn't be something I would
5 factor in, but I don't know who is going to have access to
6 this.
7       I did look at the protective order that the ALJ in
8 the FTC case issued. I'll say it is not coextensive with the
9 protective order in this case, and it does make reference to,
10 for instance, vendors, who presumably may have access
11 different than what's the access level permitted under the
12 current protective order; and then the protective order
13 expressly does not cover government technical experts or the
14 commission -- the ALJ, the commission staff, personnel of any
15 government agency. Now, I'm a former prosecutor. I know
16 that all of those folks are ethically bound, but it wasn't
17 something that was part of the negotiation or part of the
18 hearing we had here that -- when Apple was subject to the
19 protective order that these materials would be shared.
20       And again, one of the lines in Foltz and in some
21 other cases is this ready promotion of sharing information
22 should be done -- or is properly done when it can be subject
23 to -- and in some cases say -- the "same level of protection"
24 in the other case. Well, I can't order an ALJ to follow my
25 protective order or other vendors who get access to it. So

Page 18

1 there are differences here.
2       And it's not to say that the Foltz rule doesn't
3 apply to collateral litigation involving the ITC. It does --
4 or it can, but what I'm saying here is this is a unique
5 protective order, this is a unique case, and my thought is --
6 with all those thoughts -- we'll certainly hear about it --
7 maybe this is something that plaintiff can simply -- and I
8 know the proposal from Apple was "Well, we'll designate our
9 own documents that we want to use, and you designate your own
10 documents that you want to use, and that should be good
11 enough." Well, no, that's not good enough. I think there's
12 -- we should try to work something out that's better, but it
13 seems to me I need more information, and I don't have it in
14 what's in front of me to make the relevant -- the first part
15 of the Foltz inquiry appropriate.
16       So why don't I start with this, Mr. Powell: Why
17 don't you tell me: Do you think there's any other approach
18 that we could take, or is it just going to be an all-or-
19 nothing ruling on me -- motion granted or motion denied?
20       MR. POWELL: Your Honor, I don't think it has to be
21 all or nothing. We're never -- that's never our position
22 that something has to be all or nothing, up or down. I'm
23 happy to discuss and try to reach a resolution.
24       The issue is -- I think what you pointed out was
25 Apple's position has been that each party gets to pick what

**Masimo Corporation, et al. v**
**Apple Inc.**

**November 18, 2021**

Page 19

1 it believes is relevant and -- or what it believes will be
2 relevant in the ITC case. And I'll go to your point about
3 how we haven't explained what documents we think in this case
4 are --
5       THE COURT: All right. So before you get to that
6 --
7       MR. POWELL: Okay.
8       THE COURT: -- let me turn to Apple and say: Do you
9 think, on behalf of Apple, that this is just a motion I have
10 to rule -- I have to hit the nail or not hit the nail --
11 grant or deny -- or is there something, maybe, that either
12 the parties can come to a resolution that serves their
13 interests -- for instance, if you're concerned about turning
14 over everything, if that's -- if the motion is granted,
15 that's what the proposed order says -- and by "turning over
16 everything," it doesn't mean turn over everything. They
17 already have it. It's just be able to use it without
18 restriction other than the protective order in that case --
19 or it is something that the parties can, maybe, work out?
20 What do you think?
21       MR. SELWYN: Apple is not trying to keep relevant
22 documents and information from the ITC. And to answer one of
23 your questions, we have in fact already produced 64,000 pages
24 that were first produced in this case in the ITC. So we're
25 not trying to prevent relevant documents and information

Page 20

1 being accessed in the ITC, and we ourselves have produced
2 them, but what we are trying to prevent is irrelevant
3 documents and irrelevant information from this case being
4 used in the ITC --
5       THE COURT: All right. So here's -- I appreciate
6 that. Let's get -- let's hit that one right now. I have no
7 control and make no ruling -- and I'm not going to make a
8 ruling -- on what's relevant in the ITC case. The only thing
9 I can do here is either lift or carve out the -- portions of
10 the protective order or not.
11       But you've really hit on, I think, a critical,
12 critical issue. I don't know what's relevant in the ITC,
13 right. You do, and they do. It seems to me you could go in
14 a room and at least say, "Here's what I'm talking about."
15 You don't have to go document by document, but "Here's the
16 types of documents that I think are relevant that you, Apple,
17 have designated as confidential."
18       And then you can say, "Okay. I can see A, B, C,
19 but, boy, I disagree with D." All right.
20       Then I get a much better sense of -- and then you
21 folks brief that -- and obviously it'll be under seal, but
22 you folks brief that, and I get a much better sense of where
23 things fall in the universe: What are we talking about? Is
24 it a large overlap? Is it a small overlap? I'm not going to
25 rule on relevance in the ITC case, but then I get some sense

Page 21

1 of what we're talking about. Right now I don't have that
2 sense. All right.
3       So that's just me talking. It sounds like it's
4 something you would be willing to talk about.
5       And I'll go back to you, Mr. Powell, but is there
6 any sort of -- your discovery cutoff in the ITC case is
7 February. Your trial is June. There's -- it's a patent
8 case. There aren't a lot of secrets, I would imagine, in
9 terms of, at least, what the case is going to be. There may
10 be secrets in terms of -- from third parties, but between you
11 two, you folks pretty much know where this is going. Is
12 there any reason why you can't just put in a letter to Apple,
13 "All right. Here are" -- by Bates numbers or by whatever you
14 want -- "the documents that I believe" -- "that we believe
15 are relevant and need to be considered in the ITC case"?
16       MR. POWELL: Well, there's a couple issues with
17 that, Your Honor, and I'll explain our hesitation.
18       Number one is our great respect for the protective
19 order in this case and Your Honor's statements about that
20 door, frankly.
21       THE COURT: Okay. And so let me be clear. What I
22 just described is within the confines of this case, you
23 sending it to them in terms of this case saying, "Do you have
24 any opposition to us being able to use these in another
25 case?" That's not outside the scope of the protective order.

Page 22

1 So you can do that, and if there's any doubt, I'm telling you
2 right now, I interpret the protective order for you to be
3 able to meet and confer with Apple to say, "I would like to
4 use these documents in another case. What's your position?"
5       MR. POWELL: I would definitely appreciate that,
6 Your Honor, and thank you. The issue is that we were
7 concerned that by analyzing the ITC claims using the
8 documents from this case that it would be a violation of the
9 protective order. That's number one.
10       THE COURT: And what I'm telling is that step one,
11 which is to ask Apple, "Do you have an objection to these
12 being considered and used in the ITC case?" is not part of
13 that.
14       MR. POWELL: Okay. So as long as --
15       THE COURT: So that's not a violation of the order.
16       MR. POWELL: Okay.
17       The second issue, then, is -- you have issues of
18 work product, right. So the work product doctrine --
19       THE COURT: I hear you, but at this point you're
20 going to trial in eight months. What's the work product to
21 simply saying, "Here are documents that we think are
22 relevant." That's not work product. That's just -- Rule 26
23 requires you to identify documents that are relevant to your
24 -- to the claims or defenses. That's just basic trial law.
25       MR. POWELL: Well, the selection of documents, I

Exhibit A
-12-

**Masimo Corporation, et al. v Apple Inc.**

---

Page 23

1  would argue, is --
2      THE COURT: Rule 26 requires you to make a
3  selection of documents.  So -- you're not selecting documents
4  to, say, show to a witness because you think it's important
5  to this witness or to this particular issue.  You're saying,
6  "These are relevant documents to the issues in this case."
7  That's not work product.
8      MR. POWELL: I guess what I'm thinking is the
9  explanation -- where that will go is "Okay.  Why is this
10  document relevant?  What part of this case is it relevant
11  to?" and explaining all of that and parsing out "These 10
12  documents are relevant to this element and these," you know,
13  "2,000 documents" --
14      THE COURT: Well, we're not there yet.
15      MR. POWELL: -- "are relevant to that one."
16      THE COURT: We're not there yet, but maybe it will
17  because you do that every day in a discovery motion: "What is
18  this discovery request relevant to?  Oh, it's relevant to
19  this issue."  This happens every day in lawyers' offices all
20  over the country -- one side wants something, and the other
21  side says, "I don't think it's relevant.  What's your
22  proffer?"
23      "It's relevant to this."
24      MR. POWELL: Well, and, frankly, the -- the other
25  issue, then, is simply a matter of logistics, right.  The

Page 24

1  exhibit list in the ITC, I believe, are due in February?  And
2  so that's an analysis that, frankly, neither party, I think,
3  has determined and looked at every document and said, "Which
4  one" -- "Which are all of the documents that we plan to rely
5  on in the ITC?"  We certainly haven't done that because, up
6  until today, I thought that would be a violation of the
7  protective order and so we -- that is something that I
8  suppose could be done, but that's a large process because we
9  are talking about a huge number of documents.  It's not
10  50,000 pages.  There's a -- the parties are producing quite a
11  few documents this week, actually.  Our deadline that we've
12  negotiated amongst ourselves to complete ESI email discovery
13  -- or substantially complete -- is tomorrow.  So there's been
14  a lot of documents produced in the last few days.
15      And I would note on the number of documents
16  produced, counsel indicated that they have produced
17  64,000 pages of documents from this case in the ITC case.  If
18  anything, I believe that reduces the reliance interest
19  because that shows that counsel does not have a problem
20  producing Apple confidential information in the ITC case, the
21  same type of information that's produced here.  The issue is
22  that we have very different definitions of "relevance" in
23  this case.
24      THE COURT: Well, let me just cut to one thing.
25  For instance, source code -- I mean, there's huge swaths of

Page 25

1  information that you could either say you want or just say,
2  "Listen, I'm not talking about source code" or "I'm not
3  talking about Mr. Marcelo's development of this line of
4  product."  You could do this by category, by substance, and
5  see whether they agree or not.
6      Right now it's all or nothing, and I just don't
7  have a sense of how much of -- what "all" is.  I don't --
8  tell me if I missed it.  Is there something in the pleadings
9  that tells me what's the overall number of documents produced
10  by Apple? what's the number of documents that were produced
11  that were confidential? what's the number of documents that
12  were produced that were "attorneys' eyes only"? what were the
13  number of documents that were produced that was sensitive
14  source code? and then, with -- if I had all that information,
15  what's your general sense about how much of that needs to be
16  used in the ITC case?
17      And if you're telling me that you don't know
18  because you haven't done the assessment and you think it
19  would be work product for you to disclose that, I guess I'm
20  telling you that I'm not sure you've made a showing for me to
21  make the blanket exclusion to the protective order to just
22  say, "Okay.  You can have it all and use whatever you want in
23  the other case."
24      MR. POWELL: Sure, Your Honor, and I completely
25  understand the concern.  I would note I think there's another

Page 26

1  one other unique fact here, and this is why there is not a
2  lot of case law in situations where you have the same parties
3  and the same lawyers on both sides.
4      Most of the case law, as you noted -- Foltz and
5  most of the decisions deal with third-party intervenors, and
6  I think the reason is that most of the times, when it's the
7  same parties and the same lawyers, they just stipulate.  And
8  in fact, Apple did stipulate in the Apple-Samsung case, which
9  we cited in our reply brief at page 6 -- they did stipulate
10  to a cross-use agreement with the district court and the ITC.
11  Parties routinely do this, and I think that's why there's not
12  a lot of case law.
13      And the issue on third-party intervenors -- that's
14  a situation, as you noted, where the third-party intervenor
15  does not have access to any of the documents, and so that's
16  why the district courts and the rule set out in Foltz and
17  other decisions is to compare the allegations in the
18  pleadings -- what people from the outside can see, rather
19  than the specific documents.  And we actually cited the
20  Universal case -- this is Universal, 220WL2308226 -- which
21  explains the movant, quote, "need not identify specific
22  documents they want to share."
23      THE COURT: And I told you, you don't have to, but
24  what I am also telling you is you can discuss categories, you
25  can discuss what you're looking at, and of course in

---

Exhibit A
-13-

Masimo Corporation, et al. v
Apple Inc.

November 18, 2021

Page 27

1 Universal, there were two rulings.  One, it involved a
2 criminal case where the protective order was not modified to
3 allow sharing.  Now, there are lots of factual reasons for
4 that, and I think one of them was there was no evidence that
5 the criminal case was ongoing at that time.  And then there
6 was a separate civil case where the protective order was
7 modified to allow the information to be shared in the
8 Universal case but -- I will note there are some similarities
9 -- well, I'm going to leave it at that.
10       The point being, the existence of third parties
11 does -- is a different way of looking at it, but I don't
12 think that helps you, because the third party can't say, "I
13 don't know exactly what the information is.  So I can't tell
14 you, Judge, how it would be crossed over and used in the
15 other case because I don't know what it is."  You do know
16 here.  You know exactly what it is.  You know what documents
17 you're talking about.  They apparently don't because you
18 haven't told them, and I don't because you haven't told me,
19 and so whereas a third party can't do what you could do, you
20 can do it.  You just haven't.  Does that make sense?
21       MR. POWELL: I understand your point, Your Honor.
22 And the issue, though, is I do think there is a significant
23 difference with third-party intervenor cases, and I think it
24 does significantly support our position, and the reason is on
25 prejudice.  A third-party-intervenor case forces a party to

Page 28

1 disclose their information to someone else, to new lawyers,
2 different parties in the -- in a totally different case when
3 they relied on the protective order for disclosing the
4 information to only one -- or group of parties and they have
5 to suddenly disclose it to someone entirely different.
6 That's very different here, and that's why we have the --
7 cases have explained -- and I'll get the citation for you in
8 just a moment here.
9       THE COURT: So I know the cases, I read your
10 papers, but let me ask you: Did the cases also say that --
11 and maybe we should pull up Foltz and read from it -- that
12 the protected discovery in the original case, when it's
13 shared in the collateral case, should be done under the "same
14 terms" that it was shared in the original case?  So yes, it's
15 a different party, but the protective order is supposed to be
16 the "same terms."
17       MR. POWELL: And, Your Honor, we are trying our
18 best to make the protective order in the ITC case coextensive
19 in the --
20       THE COURT: Good luck.
21       MR. POWELL: I know.  We are working on it as best
22 we can, and we have gotten some pushback from Apple.  I
23 understand we're still talking about that and trying to
24 adjust that protective order.  We are happy to treat the
25 documents as designated under both protective orders.

Page 29

1       And to your point on source code, I do think that
2 that is a narrow issue that we could carve out and further
3 discuss if there's a specific issue on source code, but the
4 reality is the vast, vast, vast majority of Apple's
5 production has been designated as confidential or "attorneys'
6 eyes only."  I think both parties have produced most of the
7 documents in this case in that manner.  So it isn't an issue
8 of a few documents here or there.  It's virtually everything
9 in the case.
10       The main issue here -- and I'd just ask that we
11 would like to avoid -- is the situation that occurred with
12 the True Wearables case, where we were -- we had dealt with a
13 position that counsel had taken, which we believed was
14 inconsistent with the record, and we were prevented and
15 hamstrung from being able to tell the court about that.  I
16 would, at least, ask that both parties be able to use
17 discovery if they -- in the ITC when we're talking about
18 discovery disputes in that case.
19       So that goes both ways.  If they think that we've
20 made a representation in the ITC that's inconsistent with
21 something we've produced here, I think they should have the
22 right to show that to us, hopefully resolve the dispute
23 between the parties, and if not, take it to the ITC judge,
24 and I think both parties should have that right because,
25 otherwise --

Page 30

1       THE COURT: Okay.  So I'm happy to listen to that.
2 That's not what you're asking for, and that's kind of where
3 -- to circle back where I started, there's lots of ways to
4 handle this.  Ultimately, I'm probably just going to rule
5 thumbs' up or thumbs' down, and I don't know that that's
6 really what you all -- would serve you best.  Because I can't
7 get into things like does it -- should source code be part of
8 what's -- where the gate's lifted and source code can be used
9 in the ITC hearing?  I don't know.  Is it an issue?  I have
10 no idea.  But that seemed like, based on the amount of
11 litigation of it in the protective order, is a very important
12 thing.  You guys were fighting over how many -- the number of
13 lines of source code that could be printed off by an expert
14 in a clean room.  Am I remembering that correctly?
15       MR. SELWYN: That's right.
16       THE COURT: I mean, this is the level of importance
17 that was put on this issue.  That's not in the current ALJ
18 protective order, and maybe it's irrelevant, but I don't know
19 that.  What you're asking is -- lift it.  Whatever you want
20 to do, do it in the -- with the ITC with this lesser
21 protective order, and I'm telling you I'm uncomfortable with
22 that.  I would be much more comfortable with it targeted.
23       And by the way, there's two ways to do -- we just a
24 solar eclipse -- or a lunar eclipse, right.  There's two ways
25 to do it.  You could say, "Here's what I want," or you could

Exhibit A
-14-

Page 31

1 say, "Listen, here's what I don't want.  I don't need source
2 code, I don't need material relating to issue X, Y, and Z,
3 but everything else I want to have the ability to use in the
4 ITC."  That's a more reasonable -- you just told me there's
5 "vast amounts" of confidential information covered in the --
6 by the protective order in this case.  I wish I had a better
7 understanding of what that was and how much of that you
8 anticipate wanting to have the ability to use before the ITC.
9 I don't have that.
10        MR. SELWYN: And --
11        MR. POWELL: And --
12        THE COURT: So, Mr. -- and we're going to shout out
13 names just so that whoever does the ultimate transcript here
14 --
15        MR. SELWYN: Mark Selwyn, Your Honor.
16        THE COURT: Mr. Selwyn?
17        MR. SELWYN: And, Your Honor, the motion that we
18 have been confronted with asks that the protective order be
19 modified such that they can take all of the documents that
20 Apple has produced in this case, use and produce them
21 themselves in the ITC, and we'd respectfully suggest that's
22 quite inconsistent with both the language and what the
23 parties contemplated in the protective order.  And from our
24 perspective, the key here is that the claims and the issues
25 in the ITC investigation are different from those in --

Page 32

1        THE COURT: I understand.  I'll read -- just to
2 back you up on that, here's the proposed order, paragraph 5.1
3 of the protective order is to be changed and -- to use solely
4 -- "All Protected Materials shall be used solely for this
5 case," comma -- and this is the addition -- "the ITC
6 investigation captioned as" -- and I don't -- won't read that
7 into the record -- and then also added, "Nothing in this
8 Protective Order shall prevent or restrict a Party from
9 producing"..."Material in the ITC" investigated --
10 "Investigation, provided that the material is
11 designated"..."CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO
12 PROTECTIVE ORDER,' or with a comparable notice, under
13 Paragraph 2(a) of the Protective Order in the ITC
14 investigation."
15        So what you're asking me to do is all these
16 restrictions that you fought about and that I stayed up late
17 working through one night in my back office in here -- throw
18 it all out for -- I don't know how much information -- and
19 "Here, you can do whatever you want with the ITC
20 investigation."  There's great reasons -- the Ninth Circuit
21 is right, and there's lots of good reasons for saving
22 resources to make information readily available in collateral
23 cases, but this is a unique case, a unique situation, and I
24 don't have a lot of information to tell: Are we talking about
25 50 documents? are we talking about source code? are we

Page 33

1 talking about the crown jewels? or are we talking about
2 something that relates to the actual publicly filed -- I
3 assume they're publicly filed -- patents in the ITC
4 litigation?  I don't know any of that.
5        MR. POWELL: So --
6        THE COURT: And that's where, again, the third-
7 party issue -- you're right, you don't -- we're not sharing
8 it with a third party, but you know this, and you didn't tell
9 me, and so I'm fighting with dragons in the dark trying to
10 figure out where I go with this.
11        MR. SELWYN: And I --
12        MR. POWELL: Your Honor, if I may?
13        THE COURT: Let -- I was talking to Mr. Powell.  So
14 let me let Mr. Powell speak.
15        MR. SELWYN: All right.
16        MR. POWELL: Your Honor, and I want to try to
17 dispel you of something.  It's not that I know this and I'm
18 not telling you.  I did not analyze the ITC claims using the
19 documents in this --
20        THE COURT: All right.  Fair enough.  Fair enough.
21 You were being overprotective --
22        MR. POWELL: -- because I thought that would
23 violate --
24        THE COURT: -- and I appreciate that.  Maybe the
25 right answer here is to deny the motion without prejudice to

Page 34

1 re-bringing it after you've now heard me say you are allowed
2 to analyze -- you're one person -- and Mr. Selwyn's working
3 on both cases.  You're one person.  You cannot divide your
4 brain in making an assessment, and we have requirements for
5 good-faith meet-and-confer, and that's what you're doing, and
6 this is solely in the context of this case, 20 -- 8:20-CV-48
7 -- you are going to figure out what you think might be
8 relevant in the other case without doing anything with it,
9 and then you're going to talk to Mr. Selwyn.  Just like he
10 can do the same to you to the extent there's Masimo
11 confidential information that he thinks is going to be
12 relevant in the FTC case.  He's allowed to talk to you about
13 it and see what your position will be for purposes of your
14 professional responsibility and your responsibilities to the
15 Court to meet and confer.
16        So, if that was the issue for why that's not in
17 here, I'm telling you it can be, and maybe the answer is go
18 forth, meet and confer, and then come back to me if you can't
19 reach a resolution, and if you do come back to me, give me
20 much more specifics so I know what we're talking about but I
21 -- and I'm telling you, I don't really put much weight in the
22 work product suggestion that telling someone, "Here's the
23 potential evidence," that is relevant in a case -- that's
24 what lawyers do all the time.  That's what Rule 26(a) initial
25 disclosure are all about.  So --

1    MR. POWELL: I think -- yeah, and I appreciate
2  that. And I just think it probably depends on the level of
3  specificity, but I understand what Your Honor is saying, and
4  we can certainly take another look at the documents.
5    With that in mind, I want to clarify -- hopefully
6  that order is not just for me personally but for my law firm.
7  I do not -- I'm not heavily involved in the ITC case. That's
8  why I have Ms. Swaroop with me today. So just to be clear, I
9  want to make sure that the people that are cleared under the
10  protective order in this case would be allowed to view the
11  information in this case and use it to analyze whether it's
12  relevant in the ITC case.
13    THE COURT: For purposes -- I'll hear from
14  Mr. Selwyn if he disagrees, but for purposes of meeting your
15  professional obligations and my direction that -- and the
16  Court's direction and the Local Rules and Rule 37's
17  requirement to meet and confer before bringing discovery
18  disputes -- and this is a discovery dispute -- yes.
19    Mr. Selwyn, do you disagree?
20    MR. SELWYN: I don't disagree, Your Honor. I think
21  that's, actually, a suggestion that we had made of them, but
22  in the event -- that is what we see in some of the cases that
23  have been presented in the briefing where parties identify in
24  the case -- the Katz case, for example -- four opinions --
25  four documents, and they come to the court, and they say, "We

1  want to modify the protective order with respect to these
2  specific documents." That's not this situation. They're
3  asking to modify it to use all. But if they want to come to
4  us and say, "Hey, we have identified" -- these 20, these 50,
5  these 100 -- "documents. We think they're relevant to the
6  ITC case," we'll hear them. We'll meet and confer in good
7  faith.
8    THE COURT: All right. Well, I told you I have a
9  tentative in my head. You may have guessed what it is, but
10  I'll see whether you think -- you each told me you thought,
11  maybe, there's stuff that could be worked out.
12    Mr. Powell, I'll circle back to that. Would you
13  like -- and what I would probably do in this situation is
14  deny the motion without prejudice following further meet and
15  confer in light of the clarification that I've given to the
16  parties that it can be brought back. I know you've got --
17  you're time sensitive here, but let's just say, where things
18  are going, it's probably not going to be the ruling that you
19  want anyway. So is that something that you can live with --
20  denial without prejudice -- and you can meet and confer
21  subject to what I described in terms of the -- use of the
22  documents -- to meet and confer -- under the protective
23  order?
24    MR. POWELL: Yes, Your Honor, although I would ask
25  that we can expedite the meet-and-confer process because we

1  do have a very short time line in the ITC.
2    THE COURT: Why can't you do it today?
3    MR. POWELL: Well, we will need to identify the
4  documents first, which we haven't done yet because we were
5  afraid it would violate the protective order.
6    THE COURT: Okay. How much time do you need to
7  identify the documents?
8    MR. POWELL: May I confer for a moment?
9    THE COURT: Yes.
10    And while they're conferring, Mr. Selwyn, assuming
11  that I do what I've just tentatively said I'm going to do,
12  which is deny the motion without prejudice to it being re-
13  brought following further meet-and-confer on -- subject to
14  the clarification of the protective order, is there any
15  objection from Apple to that?
16    MR. SELWYN: There's no objection to Apple --
17    THE COURT: And is Apple going to agree to work
18  quickly to try to reach resolution or determine there is no
19  resolution that can be agreed to?
20    MR. SELWYN: We will. But let me just say one
21  thing: My expectation would be that it would be a fairly
22  small amount of documents that they would be identifying, and
23  if that's the case, we'll be able to get through them very
24  rapidly. If they come back to us and say, "It's all the
25  documents," that's going to be a different story.

1    THE COURT: In terms of time, understood. What I'm
2  -- I'm not going to pre-direct how this could go. Like I
3  told you, it could be "Here's the documents we want" or "Here
4  are huge of swaths of documents you can exclude that we're
5  not going to include," but something that tells me more
6  specifically -- maybe not 4 documents but something more
7  specifically what we're talking about because, again, you
8  know what your -- you may not have done the analysis yet, but
9  you can, and you may not have to be document-by-document
10  specific but -- you know, the other option is you can just
11  ask for it in the FTC case. This is all about trying to
12  preserve resources, but it's -- a denial doesn't leave you
13  without recourse, right.
14    So, Mr. Powell, after your conference, how much
15  time?
16    MR. POWELL: So it will take probably a little bit
17  of time for us to identify the documents. I'm guessing we
18  can do so within the typical 10-day time under the meet-and-
19  confer, but I'd like to, hopefully, when we identify them,
20  meet with Apple promptly --
21    THE COURT: Well, the Local Rule 37 meet-and-confer
22  is only 10 days from the date the moving party sends a
23  letter. So there's no limit to how long you can take to
24  figure out what documents or information you're looking for,
25  but what I'm trying to is if you were worried about this

Page 39

1 slipping, I'll set a schedule right now, and I'll shorten the
2 10-day response time, but if you tell me it's going to take
3 you 20 days to come up with the list and that the list
4 conceivably could be a million pages, then I'm probably not
5 going to shorten the 10-day-response time period.
6     MR. POWELL: Okay. Thank you, Your Honor. It's
7 difficult for me to know. So why don't you stick with the
8 same -- the standard schedule because I don't know yet. We
9 haven't looked at the documents --
10     THE COURT: All right.
11     MR. POWELL: -- with that in mind.
12     THE COURT: So I'm going to deny the motion for the
13 reasons stated on the record here, that recognizing the
14 Ninth Circuit and Foltz's rulings, that based on what's in
15 front of me, under the Foltz factors, I'm not going to order
16 a modification of the protective order, but that's without
17 prejudice to, upon further meet and confer by -- between the
18 parties with the understanding that they are able to review
19 the documents for purposes of assessing a desire to use them
20 in the FTC case without violating the protective order, that
21 this motion may be re-brought, or Apple might bring the
22 motion if they want to have some of Masimo's documents carved
23 out, or it could be a joint stipulated request.
24     But however it's done procedurally, the motion is
25 going to be denied without prejudice to it being re-brought

Page 40

1 following further meet-and-confer. All right?
2     Mr. Powell, anything further?
3     MR. POWELL: Yes. May I ask one clarification?
4     THE COURT: Yes.
5     MR. POWELL: Your Honor mentioned that in the ITC
6 case we may seek these documents from Apple in the ITC case.
7 Are we allowed to identify documents from this case in the
8 ITC and say, "Apple, this is what we want"?
9     THE COURT: Let me say -- here's what you can do --
10 we'll -- I'm not going to call it a "wall," but as part of
11 your meet-and-confer, you can simply say, "I'm going to" --
12 "If I don't" -- "If you don't agree to this, I'm going to ask
13 for them in the ITC case," and it seems to me -- unless Apple
14 -- I won't characterize it but -- there's nothing that would
15 prevent you -- actually, let me put this way: You can do an
16 alternative request that "Here's what I want, and if I can't
17 get it, I want the ability to use my knowledge from this case
18 to ask specific requests in the ITC case." And the benefit
19 to that is it lets the ALJ decide the relevance of the
20 information if that's what Apple's objection is, and that
21 seems, maybe, like a fair way of resolving it. It puts -- it
22 essentially punts it to the ITC judge to determine whether
23 it's relevant if that's what Apple's objection is.
24     MR. SELWYN: Can I be heard on that, Your Honor?
25     THE COURT: Well, I haven't made a decision on it.

Page 41

1     But is that what you're asking, Mr. Powell?
2     MR. POWELL: Yes. But I believe Apple would need
3 to agree to that in -- for --
4     THE COURT: Well, what I'm saying is you -- if you
5 can't agree to lift the veil as to some certain number of
6 documents, then you can come forward and say, "I want to lift
7 the veil as to" this, "but alternatively, Judge Early, I want
8 you to authorize me, if you're not going to lift the veil, to
9 use my knowledge of this case to ask for specific documents
10 from Apple in the ITC case," and --
11     MR. POWELL: Right, and I do think that would be
12 very supported by Foltz and would address the problem we
13 had with True Wearables. The issue is we don't know -- and I
14 don't -- I don't mean this in a negative light. It might be
15 that counsel doesn't know about a particular document and we
16 do, and I'd love to be able to say, if it comes up in the ITC
17 where they're saying, you know, "X document doesn't exist,"
18 I'd love to be able to tell them, "No. Here it is. You
19 produced it in the district court. I'd like you to produce
20 it here."
21     THE COURT: Well, I'm not concerned about you
22 telling Apple's counsel that. I am concerned about putting
23 it in a filing to the ALJ that says, "They produced this
24 document in this other case. They haven't produced it here.
25 We want it in this case." Talking to counsel about it is

Page 42

1 within, I think, a fair reading of the protective order.
2 Once you throw it out into the ITC proceeding world and now
3 it -- whatever you've just filed in the ITC to say, "I want
4 this document. They haven't given it to me" -- this is the
5 True Wearables paradigm -- I'm a little concerned about that.
6 But you can certainly raise it with Apple. If they say no,
7 come and see me. But that's what we're talking about here is
8 -- then we're talking about a particular document or a
9 particular category of documents -- something smaller than
10 "everything." All right?
11     And, Apple, you wanted to chime in on that?
12     MR. SELWYN: I think you struck the right line. I
13 thought the suggestion was being made that they should be
14 able to use the documents from this case without going first
15 to you and going to the ALJ and saying, "Something was
16 produced in the district court. We want you to order it in
17 the ITC." That we would view as a violation of the
18 protective order. They have to come back to you first.
19     THE COURT: So at this point I tend to agree with
20 that, but what I'm saying is if, after you've tried to
21 resolve this informally and it's not made and you come back
22 and say, "Okay. I'm back here, Judge Early, and now I've got
23 the stuff that you said you didn't have" in front of me.
24 "Here's the data on how many confidential documents there
25 are, generally speaking how many we think they're going to be

     Min-U-Script®

Exhibit A
-17-

**Masimo Corporation, et al. v**
**Apple Inc.**

**November 18, 2021**

Page 43

1 relevant to the ITC, and you either lift the veil entirely,
2 or maybe we exclude some things and then lift the veil as to
3 everything else," or "Here's seven categories that we want
4 the veil lifted, and oh, by the way, if you don't want to do
5 any of that, just authorize us to ask the ALJ" -- or -- I'm
6 sorry -- to propound -- and forgive me.  I don't how it works
7 on the -- in the ITC.  I saw you have a discovery cutoff of
8 February -- to propound Apple, "Hey, produce to me" -- and
9 you can identify them by Bates number from this case --
10 "produce me these documents in that case."  You can't do that
11 now, but if you come to me as that being an alternative way
12 of handling it, I'll consider it.  I'm not making a ruling
13 right now on it, though.
14      What I'm saying is you folks need to talk about it
15 because you don't -- you don't -- they don't know what
16 you're talking about, I don't know what you're talking about,
17 and I don't even know the orders of magnitude of what you're
18 talking about and how it fits in with this case and how it
19 fits in with the ITC action.  So share a little information;
20 it's going to go a long way.  And maybe it won't work out and
21 you'll be back, and I'll be happy to take it up again.
22      MR. POWELL: Understood, Your Honor.  I guess the
23 only thing that I would note is what we just heard, that --
24 this idea of compartmentalizing and "if you use it here, it's
25 a violation; if you use it in that way, it's a violation."  I

Page 44

1 think the only thing that serves to do is slow things down
2 and cost a lot of money between the parties.  And I do think
3 that it would make sense for both parties if we were -- if
4 neither of us were trying to hide anything, it would make
5 sense that both of us would allow the other one to look at
6 information and show it to the ALJ if we think there's a
7 representation that's correct.
8      THE COURT: Lots of things would make sense, and
9 you argued earlier that the reason why there's no law in this
10 case is -- according to your inference -- is that the parties
11 typically agree to share and cross-designate materials.  It's
12 not happened here.  So the fact that people didn't agree -- I
13 can't force people to agree, I can only issue rulings, and
14 what I can suggest is you're in the best position to know
15 what serves you; Apple's in the best position to know what
16 serves them; see if you can reach an agreement.  If -- I
17 quoted Bob Dylan last time.  I'll quote Mick Jagger this
18 time: You can't always get what you want, but if you try some
19 time, you just might find you get what you need.
20      All right.  So that's going to be the ruling of the
21 Court.  The motion is denied without prejudice.
22      MR. SELWYN: Thank you, Your Honor.
23      THE COURT: Thank you.
24      MR. POWELL: Thank you, Your Honor.
25      (Proceedings adjourned at 11:03 a.m.)

Page 44

1
2
3
4                   CERTIFICATE
5       I certify that the foregoing is a correct
6 transcript from the electronic sound recording of the
7 proceedings in the above-entitled matter.

/s/ Julie Messa                    November 20, 2021

Julie Messa, CET**D-403        Date
Transcriber
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit A
-18-

# EXHIBIT B

## DOCUMENT PROPOSED TO BE FILED UNDER SEAL

EXHIBIT C

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | *** Apple-Masimo; WH Apple-Masimo Service List; Ken.Parker@haynesboone.com |
| **Cc:** | Masimo.Apple |
| **Subject:** | Masimo v. Apple - Document Production |
| **Date:** | Thursday, May 26, 2022 12:22:40 PM |

Counsel,

Masimo is reproducing its production from the ITC Investigation in this case.  Due to its size, the production will take about two weeks of machine time before it is ready.

In the meantime, Masimo hereby confirms that the documents labeled MASITC_00000001 - MASITC_01402319, excluding documents that were clawed back, are available to Apple and all of its counsel in this case, under the Protective Order in this case, as if they had been produced here. Documents designated as "Confidential Business Information" in the ITC Investigation are here designated as "Highly Confidential – Attorneys Eyes Only" pursuant to the Protective Order.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

Exhibit C
-47-

# EXHIBIT D

DOCUMENT PROPOSED TO BE FILED UNDER SEAL

EXHIBIT E

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Attorneys for Plaintiffs,
**Masimo Corporation and Cercacor Laboratories, Inc.**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S RESPONSES TO APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-78)**<br><br>Hon. James V. Selna |

Plaintiffs' responses to Request Nos. 14, 15, 27, 29, Plaintiffs will produce responsive, non-privileged non-litigation related communications responsive to this request and located after a reasonable search, between Plaintiffs on the one hand and third-parties on the other hand, that are within their possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents that support, refute, or relate to Your contention that You are entitled to recover any damages from Apple as a result of Apple's purported conduct as described in the Complaint, including without limitation, damages claimed on the basis of lost profits, unjust enrichment, established royalties, reasonable royalties, price erosion, convoyed sales, or any other basis; and method(s) used by You to compute the amount of damages and the figures used in the computation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Plaintiffs incorporate their General Statement and Objections. Plaintiffs object to this request to the extent that it seeks the production of documents protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Plaintiffs further object to this request as over broad and unduly burdensome as it seeks "all documents" relating to the specified topic, and thereby seeks documents neither relevant to any claim or defense in this litigation nor proportional to the needs of the case. Plaintiffs further object to this request to the extent that it seeks documents outside Plaintiffs' possession, custody, or control. Plaintiffs further object to this request as premature to the extent that it calls for expert opinions in advance of the deadlines set forth in the Court's scheduling order.

Subject to and without waiving the foregoing objections, and subject to entry of a protective order and an ESI stipulation in this action, Plaintiffs will produce responsive, non-privileged documents located after a reasonable search

1     that are within their possession, custody, or control.

2     **REQUEST FOR PRODUCTION NO. 36:**

3     All Documents that support, refute, or relate to Your contention that You

4 are entitled to recover an ongoing royalty from Apple; and method(s) used by

5 You to compute the amount of an ongoing royalty.

6     **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

7     Plaintiffs incorporate their General Statement and Objections. Plaintiffs

8 object to this request to the extent that it seeks the production of documents

9 protected by the attorney-client privilege, work product immunity, or any other

10 privilege or immunity. Plaintiffs further object to this request as over broad and

11 unduly burdensome as it seeks "all documents" relating to the specified topic,

12 and thereby seeks documents neither relevant to any claim or defense in this

13 litigation nor proportional to the needs of the case. Plaintiffs further object to

14 this request to the extent that it seeks documents outside Plaintiffs' possession,

15 custody, or control. Plaintiffs further object to this request as premature to the

16 extent that it calls for expert opinions in advance of the deadlines set forth in the

17 Court's scheduling order.

18     Subject to and without waiving the foregoing objections, and subject to

19 entry of a protective order and an ESI stipulation in this action, Plaintiffs will

20 produce responsive, non-privileged documents located after a reasonable search

21 that are within their possession, custody, or control.

22     **REQUEST FOR PRODUCTION NO. 37:**

23     All Documents that support, refute, or relate to any contention by You

24 that any of the alleged inventions claimed in the Asserted Patents are the basis

25 for the customer demand for any Accused Products.

26     **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

27     Plaintiffs incorporate their General Statement and Objections. Plaintiffs

28 object to this request to the extent that it seeks the production of documents

secret claims because, pursuant to Apple's request, the Court has stayed all such discovery.

Subject to and without waiving the foregoing objections, and subject to entry of a protective order and an ESI stipulation in this action, Plaintiffs will produce responsive, non-privileged documents located after a reasonable search that are within their possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 78:**

To the extent not already requested or required, all Documents, Communications, and Things that You may use to support any of Your allegations or contentions in Your Complaint or otherwise made in this Action, including, but not limited to, any Documents, Communications, and/or Things that You intend to introduce at trial.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Plaintiffs incorporate their General Statement and Objections. Plaintiffs object to this request to the extent that it seeks the production of documents protected by the attorney-client privilege, work product immunity, or any other privilege or immunity. Plaintiffs further object to this request to the extent that it seeks documents that are equally available to Apple. Plaintiffs further object to this request as overly broad and unduly burdensome as it seeks documents that are not relevant to any claim or defense in the above-captioned litigation or are not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, and subject to entry of a protective order and an ESI stipulation in this action, Plaintiffs will produce responsive, non-privileged documents located after a reasonable search that are within their possession, custody, or control.

-66-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 4, 2020          By: */s/*  Perry D. Oldham
                                  Joseph R. Re
                                  Stephen C. Jensen
                                  Perry D. Oldham
                                  Stephen W. Larson

                                  Attorneys for Plaintiffs,
                                  Masimo Corporation and
                                  Cercacor Laboratories, Inc.

Exhibit E
-57-

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.

On May 4, 2020, I served the within **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S RESPONSES TO APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-78)** on the parties or their counsel shown at the email addresses shown below:

GIBSON, DUNN & CRUTCHER LLP

Joshua H. Lerner
JLerner@gibsondunn.com

H. Mark Lyon,
MLyon@gibsondunn.com

Brian M. Buroker
BBuroker@gibsondunn.com

Ilissa Samplin
ISamplin@gibsondunn.com

Angelique Kaounis
AKaounis@gibsondunn.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on May 4, 2020, at Irvine, California.

/s/  Perry D. Oldham
Perry D. Oldham

32610021

-68-

# EXHIBIT F

DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT G

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,   ) CASE NO: 8:20-CV-00048-JVS-JDEx
                             )
            Plaintiffs,      )           CIVIL
                             )
      vs.                    )      Santa Ana, California
                             )
APPLE, INC,                  )      Thursday, May 20, 2021
                             )
            Defendant.       )
_____)


PARTIAL TRANSCRIPT RE:

MOTION TO COMPEL [DKT.NOS.351,357]


BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE

(SEALED PORTIONS OMITTED)


<u>APPEARANCES</u>:            SEE PAGE 2


Court Reporter:         Recorded; REMOTE; Wave

Courtroom Deputy:       Maria Barr

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES**:


For Plaintiffs:           BENJAMIN A. KATZENELLENBOGEN, ESQ.
                          Knobbe Martens Olson & Bear, LLP
                          2040 Main Street
                          14th Floor
                          Irvine, CA 92614

                          ADAM POWELL, ESQ.
                          Knobbe Martens Olson & Bear, LLP
                          12790 El Camino Real
                          San Diego, CA 92130


For Defendant:            JOSHUA H. LERNER, ESQ.
                          Gibson Dunn & Crutcher, LLP
                          555 Mission Street
                          Suite 3000
                          San Francisco, CA 94105

                          ILISSA S. SAMPLIN, ESQ.
                          Gibson Dunn & Crutcher, LLP
                          2029 Century Park East
                          Suite 4000
                          Los Angeles, CA 90067

Exhibit G
-85-

1          <u>**Santa Ana, California; Thursday, May 20, 2021**</u>

2                    <u>**(Remote Appearances)**</u>

3                       <u>**Call to Order**</u>

4          **THE CLERK:**  Please come to order.  This United States

5     District Court is now in session, the Honorable John D. Early,

6     United States Magistrate Judge presiding.

7          **THE COURT:**  Good morning, everyone, please be seated.

8     **(All respond good morning)**

9          **THE COURT:**  All right, calling the case of *Masimo*

10    *Corporation, et al versus Apple Inc.*, Central District of

11    California Case Number 8:20-00048-JVS.

12         We are here on two Motions.  We'll take appearances

13    with Counsel and then we'll describe the Motion.  We'll start

14    with Counsel for Plaintiff.

15         **MR. POWELL:**  Thank you, Your Honor, Adam Powell for

16    the Plaintiff Masimo Corporation and Cercacor.

17         With me is my partner Ben Katzenellenbogen.

18         **THE COURT:**  All right, thank you, good morning.

19         And for Defendants -- for Defendant?

20         **MR. LERNER:**  Good morning, Your Honor, Joshua Lerner

21    of Gibson Dunn on behalf of Apple, and with me is my partner,

22    Ilissa Samplin.

23         **THE COURT:**  All right, good morning and welcome, as

24    well.

25         We are proceeding and everyone is wearing a mask.

4

1  I'm going to ask you to do me a favor, when you argue just stay

2  at counsel table, no need to go to the lectern, but pull the

3  microphones that are in front of you, whoever is going to be

4  speaking, a little bit closer because we are proceeding with an

5  audio recording and unless you're -- if you're not going to be

6  going back and forth in terms of who's arguing you only need to

7  state your appearance the first time you argue, but if there is

8  going to be different people arguing different points please

9  announce yourselves.

10         All right, so we're here for two Motions, it is both

11  Motions by Plaintiff to Compel Further Discovery Responses from

12  Defendant.

13         The Motion Docket Numbers are Docket Number 351,

14  which I'll refer to as the first Motion, and Docket Number 357,

15  which I'll refer to as the second Motion.

16         Each Motion is supported by a Joint Stipulation.  I

17  think the first Motion is a 109-page Joint Stipulation, and the

18  second Motion is a 130-page Joint Stipulation, as well as

19  Declarations from counsel, I believe it's counsel only, and

20  exhibits and, ballpark, I think the total number of pages,

21  including sealing applications, et cetera of both Motions in

22  total was 2,497 pages.

23         The Court has reviewed that material.

24         There is also two Supplemental Memoranda and a

25  Supplemental Declaration with an exhibit submitted by

Exhibit G
-87-

124

1          **THE COURT:**  All right.  I'm going to just go jump

2    ahead and say that all of the RFPs in Section III in the first

3    motion all appear to me to be not narrowly tailored, not

4    described with reasonable particularity.  And even though I

5    don't have evidence to show the burden, I have enough to tell

6    me I'm going to deny the motion and the basis is that

7    noninvasive physiological parameters or measurements or

8    monitoring.  And some of these are even more broad than that.

9    Some of them just simply refer to physiological parameters

10   which arguably is broader than noninvasive.

11          And I think 72 -- is it 72 or 70 -- yeah, 73 refers

12   to changes, any changes to any -- not tied to any particular

13   issue.  It's changes to firmware, software or comments thereto

14   between the Apple Watch Series 3 and Series 4 is not described

15   with reasonable particularity and in any way tied to the issues

16   currently existing not stayed in the case.

17          And I'm going to deny the motion as to RFP Number 71

18   through 77 and 83 through 86.

19          But, Mr. Powell, I'll give you an opportunity to let

20   me know if there's generally or if there's anything in

21   particular with respect to that grouping that you want to be

22   heard further on.

23          **MR. POWELL:**  Thank you, Your Honor.  I have one

24   comment generally and then a couple specific RFPs, if I may.

25          **THE COURT:**  All right.

**EXCEPTIONAL REPORTING SERVICES, INC**

1      **MR. POWELL:**  Generally, physiological monitoring,

2  right, Mr. Lerner just mentioned ECG, an accelerometer or VO2

3  max and said those are all completely irrelevant.  Well, VO2

4  max is related to oxygen saturation.  We've explained that an

5  accelerometer is often used and --

6      **THE COURT:**  VO2 max is -- takes oxygen saturation but

7  adds a bunch more processes to it.  So if you get the VO2 max,

8  that's what's in your -- well, okay, keep going.

9      **MR. POWELL:**  No, you are correct, Your Honor, but the

10  point is that these are all interrelated and particularly 71.

11  All we're asking is the people who were involved and we have no

12  indication whether that's ten people or a hundred people.

13      **THE COURT:**  I don't -- what's the Bob Dylan line?  I

14  don't need a weatherman to know which way the wind blows.  On

15  that one, I don't need a declaration to know that there are a

16  lot of people involved in the development of every single

17  version of the Apple Watch as it relates to physiological

18  monitoring over eight-plus years and it includes research

19  design and development, design being if -- the design of the

20  watch implicates physiological monitoring because it has to be

21  -- have a mechanism to record pulse, et cetera.  So -- anyway,

22  keep going.

23      **MR. POWELL:**  Okay.  I mean, I guess, Your Honor, it's

24  design of any physiological monitoring capability, not design

25  of the watch as a whole.  But I understand Your Honor's ruling

126

1    on that point.

2         The issue we have here is -- I'm going to fast-

3    forward a little bit to Request 76 and 77 here.  So we're

4    talking about changes in the performance of noninvasive

5    physiological monitoring or measurements between the Apple

6    Watch 3 to 4 and then 4 to 5.  Right?

7         And I'll direct you to our complaint.  This is

8    directly at issue.  It's a key issue in the case.  The

9    complaint at Exhibit 26 -- so this is Document 353-2, Fourth

10   Amended Complaint and I'll direct Your Honor to Paragraph 25.

11   This is on Page 101 of the docket entry.

12         And we're dealing with, "Upon information and belief,

13         Apple announced the first version of its watch in

14         September 2014 and began shipping its watch in April

15         2015.  The Apple Watch Series 3 was released on

16         September 22nd, 2017 and upon information believed

17         had significant performance issues with the

18         noninvasive physiological measurements.  Apple

19         announced the Series 4 on September 12th, 2018 and

20         upon information believed that watch includes

21         technology that tracks Plaintiffs' technologies to

22         solve some of the performance issues.  The Apple

23         Watch Series 5 was announced on September 10th, 2019,

24         released on September 20th.  Upon information

25         believed the Apple Watch Series 5 also included

Exhibit G
-90-

1        Plaintiffs' technologies to solve some of the prior

2        performance issues including technology as to which

3        Lamego was an inventor while at Plaintiffs."

4        And the other issue, I'll refer to the 13th cause of

5   action.  This is the trade secret cause of action.  And at

6   Paragraph 238 -- and I won't read this portion because it's

7   sealed, Your Honor.  But Paragraph 238 specifically discusses

8   the changes that were made between the 3 to the 4 to the 5 to

9   the 6.  The changes that were made are critical to this case

10  and show why those products are performing more accurately.

11       So that's why I think these particular ones, 76 and

12  77, do call for absolutely relevant information.  When we're

13  talking about changes just between -- what did they change on

14  physiological monitoring between Series 3 and 4?  What did they

15  change between 4 and 5?  That's directly key at issue in the

16  case.

17            **THE COURT:**  Any further?

18            **MR. POWELL:**  Not on those.  I have one other issue on

19  some other RFPs.

20            **THE COURT:**  Go ahead.

21            **MR. POWELL:**  The last one, I would say, is Numbers 85

22  and 86, particularly 86.  Your Honor mentioned earlier when we

23  were talking about performance that the issue was less about

24  Apple's internal evaluation and more about what customers

25  thought.  Well, 86 is all documents and things referring or

172

1   the parties are putting everyone thorough and what the lawyers

2   are doing.  It's all going to be part of the future findings on

3   these things.  All right?  So forewarned is forearmed.

4        Bring me whatever disputes you can't resolve but this

5   case has taken up an awful lot of this whole chamber's time and

6   I'm really hoping not to see you as much.

7        All right?

8        **MS. SAMPLIN:**  Understood, Your Honor, thank you.

9        **THE COURT:**  All right?  Is there anything further?

10  So we'll see you back on June 3rd at 10:00 o'clock.

11       And if there's anything in the interim, let me do

12  this.  Let me ask you to file it by -- any further results of

13  any further meet and confer by a week from today, May 27th.

14  All right?

15       **MR. LERNER:**  Thank you.

16       **THE COURT:**  All right.  We are adjourned.

17       **(Proceeding adjourned)**

18

19

20

21

22

23

24

25

Exhibit G
-92-

173

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>May 26, 2021</u>

            Signed                                         Dated


*TONI HUDSON, TRANSCRIBER*

Exhibit G
-93-

# EXHIBIT H

| | |
|---|---|
| **From:** | Parker, Kenneth G. |
| **To:** | Andrew Guilford |
| **Cc:** | Heidi Adams (heidi@judicatewest.com); Masimo.Apple; *** Apple-Masimo |
| **Subject:** | Masimo v. Apple; Joint Communication; Case No. 8:20-cv-00048-JVS-JDE (C.D. Cal.) |
| **Date:** | Tuesday, November 9, 2021 6:42:42 PM |

Dear Judge Guilford,

Following up on your comments and requests during the October 26, 2021 call, the parties have the following response and thoughts.  This email is a joint email reviewed and approved by counsel for all parties.

1. **Assistance of Ms. Kelleher**.  The parties consent to Your Honor's use of Ms. Kelleher as you normally would to assist you with respect to all aspects of, and tasks in, this matter.

2. **Waiver of Appeal**.  While both parties can envision circumstances in which they might jointly notify you of a waiver of appeal, the parties prefer to approach that issue on a motion by motion basis, and have no proposal for a set rule.

3. **Length of Orders**.  The parties have no specific feedback or opinion on the length of Your Honor's orders.

4. **Informal Conferences.**
   - **Apple's Position**: While Apple could envision scenarios in which an informal conference could be useful on discrete issues, Apple does not wish to adopt an informal conference procedure as a matter of right for either party at this time.
   - **Masimo's Position**: Masimo believes the moving party should have the right to request an informal conference if they believe it would be helpful.

5. **Hearing Dates**.  There are currently two matters fully briefed before Your Honor: (a) Plaintiffs' October 19, 2021 Motion to Compel regarding Ms. Goldberg's Rule 30(b)(6) Deposition; and (b) Plaintiff's October 8, 2021 Motion to Compel regarding Valuation, Feature and Survey Documents.
   1. **Apple's Position**: Apple respectfully requests a hearing on those motions on November 11, between 10 a.m. and noon and 4 p.m. and after; November 16, 2021 between 3 p.m. and 5 p.m. or November 18, 2021 between 2 p.m. and 4:30 p.m.
   2. **Masimo's Position**: Masimo does not believe a hearing is necessary on either of these motions and would consent to you exercising your discretion to decide these disputes without hearings.  *See* Dkt. 470 (Order Appointing Special Master) at 2.  If you believe a hearing would be helpful, Masimo is available at all of the times suggested by Apple.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to

advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.