JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1 Front Street, Ste. 3500
San Francisco, CA 94111
Tel.: 628.235.1124 / Fax: 628.235.1001

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR REVIEW OF MAGISTRATE JUDGE EARLY'S JULY 22, 2022 ORDER DENYING MASIMO'S MOTION TO INCREASE DEPOSITION HOURS (DKT. 849)**<br><br>No Hearing Noticed |

1  BRIAN A. ROSENTHAL, *pro hac vice*
     brosenthal@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
3  New York, NY 10166-0193
   Tel.: 212.351.2339 / Fax: 212.817.9539
4
   ILISSA SAMPLIN, SBN 314018
5    isamplin@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
6  333 South Grand Avenue
   Los Angeles, CA 90071-3197
7  Tel.: 213.229.7000 / Fax: 213.229.7520

8  ANGELIQUE KAOUNIS, SBN 209833
     akaounis@gibsondunn.com
9  GIBSON, DUNN & CRUTCHER LLP
   2029 Century Park East Suite 4000
10 Los Angeles, CA 90067
   Tel.: 310.552.8546 / Fax: 310.552.7026
11
   KENNETH G. PARKER, SBN 182911
12   Ken.parker@haynesboone.com
   HAYNES AND BOONE, LLP
13 660 Anton Boulevard Suite 700
   Costa Mesa, CA 92626
14 Tel. 650.949.3014 / Fax: 949.202.3001

15 MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
16 WILMER CUTLER PICKERING
     HALE AND DORR LLP
17 2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
18 Tel.: 650.858.6000 / Fax: 650.858.6100

19 NORA Q.E. PASSAMANECK, *pro hac vice*
     nora.passamaneck@wilmerhale.com
20 WILMER CUTLER PICKERING
     HALE AND DORR LLP
21 1225 Seventeenth St., Suite 2600
   Denver, CO 80202
22 Tel: 720.274.3152 / Fax: 720.273.3133

23
24
25
26
27
28

APPLE'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION

CASE NO. 8:20-cv-00048-JVS (JDEx)

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................1

II. Background .......................................................................................................2

    A. The Court Limits Depositions To 100 Hours For Plaintiffs' Trade Secret, Patent Infringement, And Patent Ownership Claims. .....................2

    B. Plaintiffs Plan For A Long List Of Depositions Starting in May 2022, Yet Squander Hours Of Deposition Time. ........................................3

    C. Magistrate Judge Early Finds No Basis For Plaintiffs' Request, Which Plaintiffs Could Have Anticipated Long Ago. ...............................5

III. Legal Standards ................................................................................................6

    A. *Ex Parte* Applications ..........................................................................6

    B. Review Of A Non-Dispositive Magistrate Judge Order ...........................6

    C. Modification Of Deposition Limits.............................................................7

IV. Argument ..........................................................................................................7

    A. Plaintiffs Have Not Shown That They Were "Without Fault" In Creating The Need For *Ex Parte* Relief. .........................................7

    B. Plaintiffs Have Not Shown That They Will Suffer Severe, Irreparable Prejudice If Relief Is Not Granted. ............................................9

    C. Plaintiffs Have Not Shown That They Are Entitled To A Modification Of The 100-Hour Deposition Limit. .................................10

V. Conclusion ......................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adams v. United States*,
   2009 WL 3444486 (D. Idaho Oct. 22, 2009) ................................................. 13

*Doe 1 v. Manhattan Beach Unified Sch. Dist.*,
   2020 WL 7222809 (C.D. Cal. Oct. 30, 2020) ................................................. 8

*Malch v. Dolan*,
   2018 WL 6017000 (C.D. Cal. Apr. 12, 2018) ................................................. 8

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ................................................................. 6

*Monster Energy Co. v. Vital Pharms., Inc.*,
   2021 WL 4895216 (C.D. Cal. Oct. 12, 2021) ................................................. 6

*PAX Water Techs., Inc. v. Medora Corp.*,
   2019 WL 8301182 (C.D. Cal. July 9, 2019) ............................................. 7, 11

*SEC v. Private Equity Mgmt. Grp., LLC*,
   2009 WL 10676179 (C.D. Cal. June 1, 2009) ................................................ 8

*Shepherd v. U.S. Bank Nat'l Ass'n*,
   2009 WL 3514550 (C.D. Cal. Oct. 26, 2009) ................................................. 2

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   2021 WL 681127 (C.D. Cal. Feb. 5, 2021) ..................................................... 7

*United States v. Bazaarvoice, Inc.*,
   2013 WL 2627724 (N.D. Cal. June 11, 2013) .............................................. 13

*Vision Autodynamics, Inc. v. KASA Cap. LLC*,
   2014 WL 12607707 (C.D. Cal. June 6, 2014) ................................................ 8

*White v. Baca*,
   2014 WL 12696910 (C.D. Cal. Jan. 30, 2014) ............................................... 6

## STATUTES, RULES, AND REGULATIONS

California's Uniform Trade Secret Act (2) ............................................................ 2

Fed. R. Civ. P. 26 ............................................................................................... passim

Fed. R. Civ. P. 72(a) ............................................................................................ 6, 10

Rule 30(a)(2) ....................................................................................................... passim

**OTHER AUTHORITIES**

Federal Judicial Center, *Patent Case Management Judicial Guide* ........................ 13

## I.  INTRODUCTION

Plaintiffs' *ex parte* application for review of Magistrate Judge Early's Order reaffirming this Court's 100-hour deposition limit should be denied.

Plaintiffs themselves created the purported crisis that they use to justify their *ex parte* application by sitting on their hands since at least as early as May 2022, when Plaintiffs identified 38 Apple witnesses whom they intended to depose in this case and noticed over 80 broadly-framed Rule 30(b)(6) topics on which they intended to seek a witness.  Using Plaintiffs' own self-serving estimate that each deposition would last an average of five hours (*see* Dkt. 876 at 1), it should have been abundantly clear at least by that point that Plaintiffs would need to promptly seek more deposition time than the existing 100-hour limit allows or narrow their deposition requests.  Plaintiffs did neither, and instead delayed raising the issue until a mere three weeks before the August 12, 2022 close of fact discovery.  Had Plaintiffs raised this issue months—or even weeks—earlier, there would have been sufficient time for a noticed motion to be briefed and resolved by this Court prior to the close of fact discovery.  Plaintiffs make no real attempt to defend their delay and that alone warrants denial of their last-minute *ex parte* application.

In any event, Plaintiffs cannot show any prejudice if this Court declines to grant their application because they have failed to identify any concrete—let alone irreparable—prejudice that they would suffer should the Court uphold the 100-hour deposition limit.  There are less than two weeks left in fact discovery.  Plaintiffs have nearly half of their deposition time remaining.  The time has come for Plaintiffs to take a hard look at the remaining depositions and topics they have demanded, narrow their deposition requests (as Apple has repeatedly done), and use their remaining deposition time efficiently.  And while Plaintiffs face no irreparable prejudice if their *ex parte* application is denied, Apple will be significantly prejudiced if it is granted, as Apple would be forced to prepare and defend numerous additional witnesses for deposition,

despite having carefully planned to keep its own deposition time under the Court's 100-hour limit, which was set more than two years ago.

Finally, Plaintiffs do not come remotely close to establishing that they are entitled to the relief they are seeking—relief that both this Court and Magistrate Judge Early have already rejected. Magistrate Judge Early's decision is fully consistent with both the law and the facts, particularly in view of the fact that Plaintiffs have squandered a significant amount of the 51 hours of depositions they have already used on witnesses whom they previously deposed or whom Apple has not designated for any purpose.

In sum, to justify the extraordinary remedy of *ex parte* relief, applicants must "demonstrate why they should be allowed to 'go to the head of the line in front of all other litigants and receive special treatment.'" *Shepherd v. U.S. Bank Nat'l Ass'n*, 2009 WL 3514550, at *2 (C.D. Cal. Oct. 26, 2009). Because Plaintiffs have not met their burden—and instead are improperly attempting to use the *ex parte* mechanism "to save the day [since they] have failed to present requests when they should," *id.*—their *ex parte* application should be denied.

**II.    BACKGROUND**

    **A.    The Court Limits Depositions To 100 Hours For Plaintiffs' Trade Secret, Patent Infringement, And Patent Ownership Claims.**

Plaintiffs filed suit in this case in January 2020. *See* Dkt. 1. The current, Fourth Amended Complaint raised three types of claims: (1) misappropriation of trade secrets under California's Uniform Trade Secret Act, (2) correction of inventorship and/or ownership of Apple patents and patent applications based on their purported incorporation of Plaintiffs' inventions and trade secrets, and (3) infringement of a dozen patents by Apple products including "the Apple Watch Series 3[/4] and later devices." *See* Dkt. 296-1 at 67, 71, 75; Dkt. 750 at 3.

On April 14, 2020, the parties filed a Joint Rule 26(f) statement. Dkt. 33. In the joint statement, Plaintiffs claimed that "the issues and claims in this case justify 140

hours of fact depositions per side," while Apple argued that "depositions should be limited to 80 hours of party fact depositions per side." *Id.* at 11.[1]  On April 17, 2020, the Court issued an order limiting depositions to 100 hours per side. Dkt. 37.  Six months later, on October 13, 2020, the Court stayed all twelve of Plaintiffs' patent infringement claims pending Patent Office resolution of Apple's petitions for *inter partes* review, but allowed Plaintiffs' trade secret and correction of inventorship/ownership claims to proceed. Dkt. 222 at 1, 8.

### B. Plaintiffs Plan For A Long List Of Depositions Starting in May 2022, Yet Squander Hours Of Deposition Time.

On May 3, 2022, Plaintiffs sent Apple a list of 38 witnesses whom they intended to depose (Dkt. 831-2), amounting (under Plaintiffs' 5-hours-per-witness estimate) to 190 hours of deposition time.[2]  Plaintiffs also served Apple with over 80 Rule 30(b)(6) deposition topics, which ranged from what they called "efficient infringement" to requests for information about irrelevant Apple employees like Kornelius Raths—a former Masimo employee who was hired by Apple years after Lamego left and works on an aspect of Apple Watch not at issue in this case (the sleep/wake function). *See* Dkt. 831-1 (Passamaneck Decl.) ¶ 7.

On May 26, in an attempt to narrow the parties' dispute and conserve deposition time, Apple proposed that both sides (1) identify 14 witnesses whom they intend to take to trial or designate for 30(b)(6) testimony and 12 witnesses whom they do *not* intend to use at trial/designate and—one business day later—(2) use that information to identify the 20 witnesses from the other side whom they wished to depose. Dkt. 831-3 at 3.

---

[1] While both parties proposed that each deposition count as having a duration of at least 3.5 hours (Dkt. 33 at 11), Judge Early found that "there is no minimum time for any deposition in terms of counting against the 100-hour limit" (Dkt. 849 at 4).

[2] Apple originally listed a similar number of witnesses, but quickly narrowed its list by taking off 20 witnesses who were tangential to the issues and/or will not be presented by Plaintiffs at trial. Dkt. 831-1 (Passamaneck Decl.) ¶ 6.

Plaintiffs used this information to identify a list of **22 witnesses** (*id.* at 1), amounting (under Plaintiffs' five-hours-per-witness estimate) to 110 hours of deposition time and not including Plaintiffs' already-requested deposition of Marcelo Lamego or the 7 hours of deposition time that Plaintiffs already used.

      Well aware of the deposition limits set by the Court and the number of witnesses likely to be deposed in this case, Plaintiffs nonetheless squandered a significant amount of the deposition time spent leading up to Plaintiffs' motion to increase the number of deposition hours. Plaintiffs had used 40 hours deposing 8 witnesses in the time leading up to Plaintiffs' motion. Dkt. 823 (Powell Decl.) ¶ 9. Plaintiffs devoted 7 hours to questioning two witnesses (Louis Bokma and Jack Fu), even though Apple had informed Plaintiffs weeks earlier that it did not intend to use either individual at trial or as a 30(b)(6) designee. Dkt. 831-1 (Passamaneck Decl.) ¶ 8. Plaintiffs also spent roughly 4 hours deposing Denby Sellers, even though they had already deposed her for 7 hours in the *True Wearables* case as Apple's corporate representative on similar issues. *Id.* ¶ 10. Plaintiffs managed to spend 7 hours deposing an Apple 30(b)(6) witness (Robin Goldberg) regarding the limited subject of document retention for Lamego and one other Apple employee. *See* Dkt. 539 at 12. Plaintiffs were subsequently admonished by the Special Master for "cover[ing]" "[e]xtensive ground" and "going far afield" in their questioning of Ms. Goldberg, notwithstanding that Magistrate Judge Early had limited them to a "narrow set of deposition topics." Dkt. 539 at 12.

      Undeterred, Plaintiffs have continued to squander deposition time since Magistrate Judge Early's denial of their request for additional deposition time. Indeed, on the same day that they filed this *ex parte* application, Plaintiffs deposed Apple engineer Brian Land for five hours rehashing much of the same subject matter covered with Mr. Land in the ITC action between the parties—transcripts of which the parties have agreed may be used in this case. *See* Dkt. 876-2 (Powell Decl.) ¶ 6; *see also* Dkt. 831-1 (Passamaneck Decl.) ¶ 12 (noting that Mr. Land testified in the ITC hearing). And

Plaintiffs similarly re-deposed Apple engineer Ueyn Block (a member of Mr. Land's team) for five hours, despite having also deposed him in the ITC action. *See* Dkt. 876-2 (Powell Decl.) ¶ 6; *see also* Dkt. 831-1 (Passamaneck Decl.).

### C. Magistrate Judge Early Finds No Basis For Plaintiffs' Request, Which Plaintiffs Could Have Anticipated Long Ago.

Having been aware of the number of potential witnesses since at least as early as May 2022, Plaintiffs delayed filing their motion to increase the number of deposition hours until July 18, 2022. Dkt. 821. In their motion, Plaintiffs claimed that increasing the deposition hours limit to 140 hours was appropriate given the volume of discovery provided, the amount at stake, and because the "depositions are important to resolving issues at stake." Dkt. 876 at 4-5. Apple opposed, explaining that 100 hours of deposition time was more than adequate. Dkt. 831 at 3-5.

On July 22, 2022, Magistrate Judge Early issued an order denying Plaintiffs' request for additional deposition time. Dkt. 849. Addressing each of Plaintiffs' arguments, Judge Early explained that the purported "new" facts that Plaintiffs identified in support of their motion were not, in fact, new. As Judge Early noted, Plaintiffs had not explained "why its revised trade secret allegations or the release of the new Apple Watch with pulse oximetry materially altered the time needed for depositions in the case." *Id.* at 2-3. Nor had Plaintiffs shown that the number of witnesses was "unforeseeable in April 2020 when the 100-hour deposition limit was set." *Id.* Judge Early further noted that Plaintiffs had not disputed that "with the stay of the patent issues, the case is narrower than it was at the time the 100-hour limitation was set." *Id.* at 3. Judge Early further directed that "having had more than two years since the 100-hour limit was set," the parties should "use their collective time, resources, and expertise to focus their respective deposition questioning to both comply with the 100 hour limit and still adequately prepare for trial." *Id.* at 4.

## III. LEGAL STANDARDS

### A. *Ex Parte* Applications

Because "*[e]x parte* motions are rarely justified,*"* a party moving for *ex parte* relief must show both that (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) it is "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490, 492 (C.D. Cal. 1995). Put differently, "filing an *ex parte* motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Id.* at 492.

Irreparable prejudice is judged on a sliding scale, meaning that a party must either show that "the threatened prejudice would … be severe" or that "the underlying motion has a high likelihood of success on the merits." *Mission Power Eng'g*, 883 F. Supp. at 492. "To show that the moving party is without fault … requires [an] explanation" for why there is a crisis. *Id.* at 493. As particularly relevant here, "[t]he moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id.*; *accord White v. Baca*, 2014 WL 12696910, at *2 (C.D. Cal. Jan. 30, 2014) ("[A] party seeking the extraordinary remedy of *ex parte* relief must show that it used the entire discovery period efficiently and could not have obtained the sought-after discovery earlier.").

### B. Review Of A Non-Dispositive Magistrate Judge Order

A magistrate judge's order on a matter "not dispositive of a party's claim or defense" should be set aside only where it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The 'contrary to law' standard governs a district judge's review of a magistrate judge's determinations that are purely legal in nature. The 'clearly erroneous' standard governs a district court's review of a magistrate judge's factual determinations." *Monster Energy Co. v. Vital Pharms., Inc.*, 2021 WL 4895216, at *2

1  (C.D. Cal. Oct. 12, 2021) (citations omitted). "A factual finding is clearly erroneous
2  where the court has 'a definite and firm conviction that a mistake has been committed.'
3  An order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case
4  law, or rules of procedure." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL
5  681127, at *1 (C.D. Cal. Feb. 5, 2021) (internal citations and quotation marks omitted).

### C. Modification Of Deposition Limits

A party seeking "leave to take more depositions must make a 'particularized showing'" as to why the additional discovery is necessary." *PAX Water Techs., Inc. v. Medora Corp.*, 2019 WL 8301182, at *1 (C.D. Cal. July 9, 2019). In considering such a motion, courts consider, *inter alia*, whether "'the party seeking discovery has had ample opportunity to obtain the information by discovery in the action'" and whether the discovery is "'outside the scope permitted by Rule 26(b)(1).'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)).

## IV. ARGUMENT

### A. Plaintiffs Have Not Shown That They Were "Without Fault" In Creating The Need For *Ex Parte* Relief.

Plaintiffs cannot satisfy the threshold requirement to show that they did not create the purported "crisis" that necessitated filing their *ex parte* application. Plaintiffs make a halfhearted attempt to explain their unjustifiable delay, vaguely claiming that "Apple added more witnesses." Dkt. 876 at 8. But Plaintiffs wholly ignore the facts and Judge Early's admonition that, based on Plaintiffs' "own prior representations," the number of depositions "could have been anticipated from the earliest stages of the litigation." Dkt. 849 at 3.

As Judge Early observed, as early as April 2020 when this Court set the deposition hours limit, Plaintiffs stated that they would direct discovery to at least the following topics:

> the structure, function, and operation of Apple's products accused of infringing Plaintiffs' asserted patents; Apple's misappropriation of Plaintiffs' trade secrets; the correct inventorship and ownership of the

> Apple patents at issue; Apple's affirmative defenses; and Apple's revenue, costs, profits pricing, margins, marketing, revenues and profits relating to the accused products. Plaintiffs also anticipate third-party discovery may be necessary for some or all of the above topics.

*Id.* (quoting Dkt. 33 at 8-9). "From that broad list of discovery topics, the potential for 21 Rule 30(b)(6) witnesses and trial witnesses" was entirely foreseeable even at that early stage. *Id.* As foreshadowed, on May 3, 2022, Plaintiffs then served Apple with over 80 broad Rule 30(b)(6) deposition topics, which ranged from what Plaintiffs called "efficient infringement" to requests for information about irrelevant Apple employees. *See supra* p. 3. Moreover, on that same date, Plaintiffs also identified 38 Apple witnesses whom they intended to depose, which under Plaintiffs' 5-hours-per-witness estimate would amount to 190 hours of deposition time. *See* Dkt. 831-2. Yet Plaintiffs sought no relief from the deposition hours limit at that time. Instead, Plaintiffs waited until July 18, 2022—just three weeks shy of the close of fact discovery—to seek to modify deposition limit.

Had Plaintiffs requested the relief they now seek back in May when they identified 38 witnesses for deposition, this issue could have been heard and resolved long before the August 12, 2022 close of fact discovery, obviating the need for *ex parte* relief. *See Doe 1 v. Manhattan Beach Unified Sch. Dist.*, 2020 WL 7222809, at *2 (C.D. Cal. Oct. 30, 2020) (denying application where "[h]ad Plaintiff [made its discovery request] even a week earlier, it may have been possible for the parties to meet and confer … without an *ex parte* application"); *see also SEC v. Private Equity Mgmt. Grp., LLC*, 2009 WL 10676179, at *2 (C.D. Cal. June 1, 2009) (finding *ex parte* application "improp[er]" where the moving party delayed just twelve days before filing).[3]

---

[3] This distinguishes *Malch v. Dolan*, 2018 WL 6017000 (C.D. Cal. Apr. 12, 2018). There, the precipitating act for the application (service of a notice of deposition) occurred three weeks before the close of discovery, making it impossible for the moving party to bring a normal motion. *Id.* at *2. Here, Plaintiffs could have filed a properly-noticed motion at least as early as May 2022. Plaintiffs' reliance on *Vision Autodynamics, Inc. v. KASA Cap. LLC*, 2014 WL 12607707, at *1 & n.1 (C.D. Cal. June
*(Cont'd on next page)*

Plaintiffs' suggestion that Apple recently and unfairly "added more witnesses" is misleading to say the least. Dkt. 876 at 8. Apple's 30(b)(6) designations included just four additional witnesses—two of whom were added as an accommodation to Plaintiffs to cover a single request (or closely related requests) for testimony on matters such as what Plaintiffs call "efficient infringement" and Apple's document collection efforts in this case. Dkt. 831-2 (Passamaneck Decl.) ¶ 13. If Plaintiffs withdraw those topics, then they will have two fewer witnesses to depose. Moreover, as Judge Early observed, nothing supports Plaintiffs' assumption that "it will take 5 hours for each deposition of the 21 witnesses designated by Apple …. Some depositions might take 5 hours. Some might take 30 minutes." Dkt. 849 at 4. That is particularly true given that numerous Apple witnesses are designated on a small number of particular 30(b)(6) topics noticed by Plaintiffs and are not expected to appear at trial. *See* Dkt. 831-1 (Passamaneck Decl.) ¶¶ 8, 9.

Plaintiffs' failure to seek timely relief from this Court's 100-hour limit or manage their existing deposition time efficiently are problems of Plaintiffs' own making, not a basis for *ex parte* relief.

### B. Plaintiffs Have Not Shown That They Will Suffer Severe, Irreparable Prejudice If Relief Is Not Granted.

Plaintiffs' only assertion of "prejudice" is that "discovery would close before Masimo can take important depositions." Dkt. 876 at 8. But Plaintiffs fail to describe what "important depositions" they will lose out on as a result of the 100-hour deposition limit or why Plaintiffs are unable to manage their time to effectively complete any such depositions within the 100-hour limit. Plaintiffs' vague claims do not show that they will not suffer **any** prejudice—much less the severe prejudice necessary to justify *ex parte* relief—if they do not receive 140 hours of deposition time.

---

6, 2014), is similarly misplaced, as the act giving rise to the ex parte application occurred just two weeks before the application was filed.

And in any event, any prejudice Plaintiffs claim they will suffer is at their own hands. Plaintiffs have squandered many of the 51 hours they have already used, including on witnesses whom they previously deposed or whom Apple has not designated for any purpose, some of whom Plaintiffs deposed or insisted on deposing *after* Judge Early's ruling. *See* Dkt. 831-1 (Passamaneck Decl.) ¶¶ 8-10, 12. They have also refused to narrow their deposition requests (as Apple has repeatedly done) in order to ensure that they will have sufficient time for all witnesses they view as important. *Id.*

Regardless, as explained in more detail below, even if Plaintiffs could meet their threshold burden to show that *ex parte* relief is warranted (they cannot), there is no basis for disturbing Judge Early's sound decision denying Plaintiffs' request for 140 deposition hours. *See infra* pp. 10-14.

### C. Plaintiffs Have Not Shown That They Are Entitled To A Modification Of The 100-Hour Deposition Limit.

Plaintiffs cannot show that Judge Early's order is either "clearly erroneous" or is "contrary to law." Fed. R. Civ. P. 72(a).

*First*, contrary to Plaintiffs' assertions (Dkt. 876 at 3), Judge Early did not "plac[e] the burden on Masimo to show … [that] new facts were 'unforeseeable.'" As Judge Early pointed out, it was **Plaintiffs** that introduced alleged "new facts" as the purported justification for their request for 140 deposition hours. *See* Dkt. 822 at 2-3 (arguing that Apple's identification of additional witnesses "necessitated" Plaintiffs' motion); *see also* Dkt. 849 at 2-3 (noting that "[t]he conclusion of **Masimo's** Reply brings the essential question raised by the Motion into stark relief"); *id.* ("Masimo identifies three new facts"). Judge Early thus properly addressed (and rejected) each of Plaintiffs' arguments as they were framed and argued by Plaintiffs. Moreover, Judge Early's Order is fully consistent with the applicable precedent.

"Under Rule 26(b)(2), courts consider whether '(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" *PAX Water Techs.*, 2019 WL 8301182, at *1. Judge Early's opinion is wholly consistent with that standard, as he concluded (based on the arguments presented by both sides) that "having had more than two years since the 100-hour limit was set," the parties should "use their collective time, resources, and expertise to focus their respective deposition questioning to both comply with the 100 hour limit and still adequately prepare for trial." Dkt. 849 at 4. Judge Early further noted that it is undisputed that "with the stay of the patent issues, the case is narrower than it was at the time the 100-hour limitation was set." *Id.* at 3. There is nothing "contrary to law" in those findings.[4]

*Second*, Judge Early's factual determination that Apple's designation of 21 witnesses to address Plaintiffs' broad Rule 30(b)(6) topics does not justify an increase in deposition hours is fully supported by the record. As Judge Early explained, based on the broad scope of discovery that Plaintiffs intended to take and their own identification of Apple witnesses whom they intended to depose, there is no justifiable basis for increasing the number of deposition hours at this late stage. Dkt. 849 at 3. Nor has Apple engaged in any purported "maneuvering." Dkt. 876 at 4. As explained above, Apple's 30(b)(6) designations included just four additional witnesses—which was made necessary by the breadth and tangentiality of Plaintiffs' noticed topics. Indeed, two of Apple's designees were added as an accommodation to Plaintiffs to cover a single request (or closely related requests) for testimony on matters such as what they call

---

[4] Despite their protestations (Dkt. 876 at 4), Plaintiffs do not deny that the case is significantly narrowed as a result of the stay of Plaintiffs' patent infringement claims. And as Judge Early noted, Plaintiffs' assertion that Apple's introduction of "a new version of the watch" had "significantly increased the amount of necessary discovery" (id.), is wholly unsupported. *See* Dkt. 849 at 3 ("Masimo does not explain why its revised trade secret allegations or the release of the new Apple Watch with pulse oximetry materially altered the time needed for depositions in the case.").

"efficient infringement" (despite the fact that all patent infringement claims have been stayed) and Apple's document collection efforts. Dkt. 831-1 (Passamaneck Decl.) ¶ 13. Should Plaintiffs wish to narrow the number of witnesses, they should drop such wholly irrelevant topics, or at a minimum, significantly narrow the amount of time spent addressing them. Plaintiffs' suggestion that they need five hours of deposition time for each of these witnesses is both unsupported and incredible, just as Judge Early found.[5]

*Third*, Plaintiffs' plea that proportionality justifies disturbing Judge Early's Order is an empty one. In order to assist Plaintiffs in managing their time, Apple has identified a dozen witnesses whom Apple does not intend to use at trial or in 30(b)(6) depositions. *Supra* pp. 3-4. Despite this advance warning, Plaintiffs have already deposed three witnesses on that list and are still planning to depose two others whom Apple has indicated it does not plan to offer for affirmative testimony. Dkt. 831-1 (Passamaenck Decl.) ¶¶ 8-9; *see also* Dkt. 876-2 (Powell Decl.) ¶ 6 (explaining that Plaintiffs deposed Wolf Oetting for one hour after Plaintiffs original motion). In addition, and at Plaintiffs' request, Apple has agreed that Plaintiffs can use prior deposition and hearing transcripts from the parties' ITC action for any purpose in this case. Dkt. 831-1 (Passamaneck Decl.) ¶ 11. Notwithstanding this agreement, Plaintiffs have already re-deposed three witnesses who testified in the ITC action and seek to re-depose one more. *Id.* ¶ 12; *see also* Dkt. 876-2 (Powell Decl.) ¶ 6 (explaining that Plaintiffs deposed Brian Land and Ueyn Block for five hours each—after having deposed both in the ITC—after Plaintiffs original motion).

Moreover, contrary to Plaintiffs' suggestions (Dkt. 876 at 6), Apple would be significantly prejudiced should Plaintiffs be permitted to take an additional 40 hours of deposition at this late stage. Only ten business days remain before the close of fact discovery. Permitting Plaintiffs to take an additional 40 hours of depositions would

---

[5] While Plaintiffs point to the fact that they have designated only nine Rule 30(b)(6) witnesses, that merely confirms the reasonable scope of Apple's topics.

force Apple to prepare for and present witnesses for nearly **90 hours** of depositions—18 witnesses under Plaintiffs' five-hour-per-witness estimate—in that short time. Moreover, following this Court's original decision to set a limit of 100 hours for depositions, Apple carefully planned to keep its own deposition time under that limit. Because Apple has already selected whom it will depose and for how long—and indeed has already conducted a number of depositions—based on the rules that have been in place for over two years, expanding the number of deposition hours at this point would punish Apple for its planning and diligence, while rewarding Plaintiffs for their inexcusable ability to comply with the limits previously set by the Court.[6]

*Fourth*, as they did before Judge Early, Plaintiffs point to the default Federal Rules, under which they claim to have been permitted to take "up to 182 hours of depositions." Dkt. 876 at 6-7. But as Judge Early recognized, Plaintiffs "could have requested the parties abide by Rule 30's dictates but did not do so in the Rule 26 Joint Report more than two years ago." Dkt. 849 at 4. Indeed, had Plaintiffs had wanted to rely on the default 10-deposition-limit put in place by Rule 30(a)(2) and its attendant pros-and-cons, they should have raised that concern at the outset of this case.

*Finally*, Plaintiffs argue that the total number of deposition hours should be expanded because this case involves 16 legal claims, a damages claim purportedly "exceeding $1 billion," and significant expenditures in time and resources of both

---

[6] Contrary to Plaintiffs' assertion (Dkt. 876 at 6 n.1), Judge Early correctly distinguished Plaintiffs' cited cases as "either factually distinguishable" or as not containing "sufficient facts to provide an apt comparison to a case such as this." Dkt. 849 at 4. For example, one of the cases Plaintiffs cited permitted 1,600 deposition hours where there were **440 plaintiffs**—i.e., roughly 4 hours per plaintiff. *See Adams v. United States*, 2009 WL 3444486, at *1 (D. Idaho Oct. 22, 2009). In another, each side was allotted a total of 190 hours where defendants preliminarily listed 130 witnesses for trial—i.e., less than an hour per witness. *See United States v. Bazaarvoice, Inc.*, 2013 WL 2627724, at *1-3 (N.D. Cal. June 11, 2013). And in any event, several courts have found deposition limits of 100 hours or less more than adequate. *See, e.g.*, Federal Judicial Center, *Patent Case Management Judicial Guide*, 2009 WL 1740199 ("A limit of fifteen to twenty depositions per side, or about 100 hours, typically provides the parties with plenty of opportunity to cover the major issues in a case.").

parties. Dkt. 876 at 6. But, as before Judge Early, Plaintiffs have not explained why the issues in this case cannot be addressed under the existing 100-hour deposition limit set by this Court and reaffirmed by Judge Early. The number of claims now at issue in the case actually favors *keeping* the existing limits, as the number of live claims is now *lower* than it was when the limit was set in April 2020, given that the patent infringement claims have been stayed. Plaintiffs are not entitled to more deposition time for use in a smaller case.

## V. CONCLUSION

Apple respectfully requests that the Court deny Plaintiffs' *ex parte* application.

Dated: July 29, 2022

Respectfully submitted,

H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN ANDREA
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

MARK D. SELWYN
JOSHUA H. LERNER
NORA Q.E. PASSAMANECK
WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Mark D. Selwyn*
　　　Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*