UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | August 9, 2022 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] <u>Order Re Offensive Collateral Estoppel (Redacted)</u>**

Before the Court are the parties' parallel motions concerning whether Masimo may seek discovery relating to its new offensive collateral estoppel theory in support of trade secret misappropriation. The dispute arose before the Special Master in the context of Masimo's motions to compel, and the Special Master suggested the parties obtain guidance from the Court on threshold issues before the Special Master should resolve the discovery dispute.

The Court entered an order implementing the Special Master's recommendation, which provided for simultaneous, expedited briefing. The matter was deemed submitted on July 29, 2022. <u>See</u> ECF No. 844; <u>see also</u> Masimo's Motion for Guidance, ECF Nos. 855, 868 (sealed); Apple's Opposition, ECF Nos. 881, 887 (sealed); Apple's Motion to Bar Offensive Collateral Estoppel, ECF Nos. 852, 864 (sealed); Masimo's Opposition, ECF No. 883.

Consistent with the Special Master's request, the Court provides the following guidance.

**I. BACKGROUND**

Masimo served Interrogatory No. 25 on Apple concerning the nature and extent of Apple's involvement in the <u>Masimo v. True Wearables</u> litigation. The interrogatory asked Apple to "[d]escribe in detail Apple's relationship with True Wearables and/or Marcelo Lamego, regarding [the True Wearables litigation], including appeals [] and/or this case."

See ECF No. 864-4, Ex. 5 at 8. Masimo states it needs this information in support of its offensive non-party issue preclusion theory, which it argues supports its trade secrets misappropriation claim. In sum, Masimo wants to show that Apple exerted control over the True Wearables litigation (either directly or through a proxy, ▌▌▌▌▌▌▌▌) such that it is in privity with the defendants in that case. Therefore, Apple should be bound by any adverse rulings arising in that case. After Apple responded in part that,



Apple has no legal right to be involved in that litigation. See ECF No. 864-1, Ex. 2 at 4.

Masimo moved to compel a further response addressing whether Apple has "the practical ability" to be involved or "has previously been involved" in the case. The Special Mater ruled that, "before the motion can be resolved, Judge Selna's guidance must first be sought on the following threshold question: whether Plaintiffs will be permitted to seek discovery in this case regarding their offensive non-party issue preclusion theory." ECF No. 869, Ex. 1 at 4 (p. 2 of Order).

## II. LEGAL STANDARDS

1. Preclusion Based on Party Control

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." Montana v. United States, 440 U.S. 147, 153 (1979) (citation and quotation marks omitted). Enforcing these doctrines "protects [party] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. at 153-54.

"These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved." Id. at 154. "[T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be strangers to the cause. . . . [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record." Id. (citation and quotation marks omitted). Where a party "plainly had a sufficient 'laboring oar' in the conduct of the [prior] litigation," it warrants "actuat[ing] principles of estoppel." Id. (government stipulated to control over contractor's suit where government required suit to be filed; reviewed and approved complaint; paid attorney's fees and costs; directed the appeals; and appeared as amicus).

Once control is established, the Court must conduct three further inquiries: "first, whether the issues presented by this litigation are in substance the same as those resolved" in a prior litigation; "second, whether controlling facts or legal principles have changed significantly since the [earlier] judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion." Id. at 155.

2.   Discovery Principles

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If new legal theories are raised after the close of discovery, they may not be allowed at later stages of the case such as summary judgment or trial. See, e.g., Amini Innovation Corp. v. Anthony California Inc., No. CV 03-8749, 2006 WL 6855371, at *9 (C.D. Cal. Sept. 21, 2006) (granting motion in limine to preclude evidence supporting undisclosed legal theory in copyright case) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291–1294 (9th Cir. 2000) (precluding alternate, undisclosed legal theory at summary judgment)). Likewise, this may also be true shortly before discovery has closed because, if a plaintiff raises a new theory supporting one of its claims on the eve of the close of discovery, the defendant may be prejudiced where it lacks time to "formulate the discovery it need[s] on the[] new theor[y] and then to serve written discovery requests." Corus Realty Holdings, Inc. v. Zillow Grp., Inc., No. C18-0847-JLR, 2020 WL 488545, at *9 (W.D. Wash. Jan. 30, 2020), aff'd, 860 F. App'x 728 (Fed. Cir. 2021).

### III. DISCUSSION

The Special Master asked the Court to decide the threshold issue of whether Masimo will be permitted to seek discovery regarding its offensive non-party issue preclusion theory. The Court finds that Masimo may not do so for at least two reasons.

First, Masimo has not demonstrated that discovery on this theory is relevant to the case, as required under Rule 26(b)(1). In an earlier order concerning the discoverability of materials from the True Wearables litigation, the Court assumed relevancy for the purposes of that order, but ruled that Apple was not entitled to obtain essentially the entire True Wearables case in this case. The Court left open the possibility that Apple could make a narrowed request for relevant materials, and advised Masimo that, "Plaintiffs are in the best position to advise whether the requested material is relevant and proportional to the needs of this case (e.g., Plaintiffs know whether they are asserting any of the same trade secrets against Apple as they asserted against the True Wearables defendants, so Plaintiffs are in the best position to gauge the potential manual-review burden associated with any future narrowed request from Apple; if there is little to no overlap between the asserted trade secrets, for example, there may be little for Plaintiffs to review and the burden may be low)." ECF No. 748 (Order Re: Obj. to Special Master Order No. 8).

After that order issued, Apple apparently submitted a new, narrowed request to Masimo and Masimo responded that it "maintain[s] that Apple ha[s] not shown that any of the requested documents relate to any of the asserted trade secrets, and that Apple's request for irrelevant documents was not proportional to the needs of the case." See ECF No. 864-12, Ex. 13 at 2 n.1. If Masimo is taking the position on the one hand that the True Wearables trade secrets litigation is not relevant to this trade secrets litigation because, for example, different trade secrets have been asserted so Apple is not entitled to discovery from the other litigation, then Masimo may not, on the other hand, take the position that the True Wearables litigation is relevant for the purpose of demonstrating offensive collateral estoppel to bolster the trade secrets claim in this case. Therefore, because Masimo has not demonstrated baseline relevance, the Court rules that it is not entitled to discovery on this theory.[1]

Second, it is too late for Masimo to inject into this case offensive collateral estoppel as a component of the trade secrets claim. The parties disagree regarding when Masimo should have been required to raise this sub-claim. Apple states that no court in this District or the Ninth Circuit has addressed when offensive collateral estoppel must be raised, but "the better reading of the available case law is that a plaintiff must put the defendant on notice at an early stage in the case so that the defendant has ample time to prepare a defense." ECF No. 864 at 1. Masimo suggests that because it is raising the doctrine offensively, it is not an affirmative defense and nothing in the Federal Rules of Civil Procedure requires it to be raised at any particular time. See generally ECF No. 868. Masimo argues that its request via Interrogatory No. 25 was timely because neither the Special Master nor Apple pointed to "any disclosure, discovery response, or brief that should have but allegedly failed to identify Masimo's theory" earlier. Id. at 7.

The Court agrees with Apple that no controlling precedent sets forth when offensive collateral estoppel must be raised. More particularly, neither party submitted and the Court has found no analogous authority involving the particular species of offensive collateral estoppel Masimo wishes to raise. That is, at first glance it is non-party estoppel in the sense that Apple was not a party to True Wearables, but Masimo theorizes that Apple was in privity with those defendants because it controlled the litigation and therefore should effectively be treated as a party because Apple stands in their shoes. And although Masimo does not raise it as an affirmative defense, it would essentially operate as a defense or bar to one of Apple's own arguments or defenses (e.g., if Apple argued a particular overlapping trade secret was not kept confidential, and a contrary finding existed in True Wearables, Masimo would seek to hold that finding against Apple here).

---

[1] Having presided over the bench trial in the True Wearables litigation, it is not clear to the Court that Masimo is asserting any of the same trade secrets in this case as it asserted against the True Wearables defendants. Again, Masimo is in the best position to understand whether there is overlap and demonstrate any overlap for relevancy purposes, but a brief review of both sets of trade secrets does not suggest obvious overlap. Compare ECF No. 650-1, Ex. 2 (Masimo's § 2019.210 Statement detailing the asserted trade secrets in this case) with Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Appendix A in the True Wearables case.

Although no specific authority suggests that Masimo was required to present this theory as part of its trade secrets claim in the operative Complaint pursuant to Rule 8(a), like any claim or defense, it should be brought to light reasonably soon enough in the litigation to provide notice and an opportunity to investigate and respond. See, e.g., Georgia Pac. Consumer Prod., LP v. Von Drehle Corp., 710 F.3d 527, 533 (4th Cir. 2013) (party waived preclusion by failing to raise it at the "first reasonable opportunity") (citing Arizona v. California, 530 U.S. 392 (2000)); cf. Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (upholding denial of leave to amend based on dilatoriness and prejudice where Morongo Indians introduced new legal theory well into the litigation).

To resolve this dispute, the Court need not resolve this legal ambiguity because the facts of this case provide a clear answer: Masimo introduced this theory too late under any standard. Specifically, Masimo served Interrogatory No. 25 on February 15, 2022. Apple timely responded. The last day to serve interrogatories and requests for production was May 13, 2022. See ECF No. 627. Following the written-discovery cut-off, Masimo argued before the Special Master for the first time that Apple should be subject to the rulings in True Wearables. In that briefing, Masimo did not argue that it had put Apple on notice of this theory before the written-discovery cut-off; rather, it argued that "Masimo's issue-preclusion arguments support Masimo's [existing] claim for trade secret misappropriation as pleaded in the complaint." ECF No. 864-10, Ex. 11 at 1 (citing ECF No. 296-1 at 80 (Thirteenth Cause of Action)).

Because Masimo waited until after the written-discovery cut-off, when the fact-discovery cut-off was rapidly approaching, Apple argues it has been prejudiced because it cannot "serve[] written discovery seeking information about (1) documents Plaintiffs have connecting Apple to True Wearables (or Apple to ▮▮▮▮ to True Wearables) or (2) which of Plaintiffs' former employees went to work at True Wearables or ▮▮▮▮." ECF No. 864 at 5. In the alternative, Apple argues that it "could have served a contention interrogatory asking Plaintiffs to lay out the precise identical issues between this case and True Wearables—information that they are uniquely suited to provide as the only common party in both suits." Id.; see also ECF No. 748 (Order on Special Master Order No. 8 noting that Plaintiffs are in the best position to provide this type of information).

Pursuing this strategy after the written-discovery cut-off is not acceptable. The Court will not endorse Masimo's strategy of introducing offensive collateral estoppel at this late hour when Apple effectively has no opportunity to take its own discovery potentially demonstrating that the theory cannot apply here. This is especially true where Masimo has sought repeatedly to preclude Apple from obtaining documents from True Wearables.

The Court is not persuaded by Masimo's argument that it put Apple on notice of this theory one year ago by requesting "communications between Apple and True Wearables or Lamego regarding True Wearables" (Request No. 257), or a few months

ago by requesting "[d]ocuments sufficient to show any ability by Apple and/or its legal counsel has to be involved in, provide input on, influence, or affect any litigation strategy by True Wearables, Inc. and/or Marcelo Lamego in <u>Masimo Corp. v. True Wearables Inc.</u>, Case No. 8:18-CV-02001 (including appeals)." ECF No. 883 at 2. Although Masimo may have intended to gather information relating to its undisclosed theory, it never presented this theory as part of its existing trade secrets claim until it asked the Special Master to intervene on its behalf after the written-discovery cut-off. The Court declines to "requir[e] the parties to scramble" this close to the close of discovery (and after the written-discovery cut-off), especially where allowing Masimo to "advance different legal theories and require proof of different facts at this stage in the litigation would have prejudiced [Apple]" as described above. <u>AmerisourceBergen Corp. v. Dialysist W., Inc.</u>, 465 F.3d 946, 953 (9th Cir. 2006) (affirming denial of leave to amend to add new theory eight months before close of discovery); <u>see also</u> <u>Corus Realty Holdings</u>, 2020 WL 488545 at *9.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Apple's motion to bar discovery regarding offensive collateral estoppel and by implication bars the addition of that theory. The Court **GRANTS-IN-PART** Masimo's motion to the extent the motion requests guidance, but otherwise denies the motion.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of the sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |