REDACTED

Hon. Andrew J. Guilford (Ret.)
Judicate West
1851 East First Street
Suite 1600
Santa Ana, CA 92705
Phone: (714) 834-1340

Special Master

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. SACV 20-00048 JVS (JDEx)<br><br>(JW Reference No.: A279845)<br><br>**ORDER NO. 14 OF SPECIAL MASTER REGARDING TWO PREVIOUSLY-DEFERRED DISCOVERY MOTIONS AND A NEW DISCOVERY MOTION** |

## 1. INTRODUCTION

This Discovery Order No. 14 of the Special Master addresses three pending discovery disputes.

First, in Discovery Order No. 11, the Special Master deferred ruling on Plaintiffs' June 1, 2022 motion to compel Apple to respond to Plaintiffs' Interrogatory No. 25. (*See generally* Discovery Order No. 11, §§ 1, 4.1 (summarizing nature of motion, including briefs filed, and nicknaming briefs based on the phrase "Plf. Rog 25 [Mot.]").)

Second, in Discovery Order No. 13, the Special Master deferred ruling on Apple's July 1, 2022 motion to compel production of a subset of documents from the *True Wearables* case. (*See generally* Discovery Order No. 13, §§ 1, 4.3 (summarizing nature of motion, including briefs filed,

1

and nicknaming briefs based on the phrase "TW [Mot.]").) As directed in Discovery Order No. 13, on August 3, 2022 the parties submitted a joint status report with more information relating to their dispute over the *True Wearables* documents sought. ("TW Jt. Rpt.")

Third, on July 1, 2022, Plaintiffs moved to compel Apple "to produce 92 documents that Apple is improperly withholding under the common interest doctrine," or alternatively for Apple "to produce the documents for *in camera* inspection by the Special Master and supplement its privilege log to address various deficiencies." ("Common Interest Mot." at 1.) As agreed by the parties, Apple filed an opposition on July 15, 2022 ("Opp'n re Common Interest"), and Plaintiffs filed a reply on July 22, 2022 ("Reply re Common Interest").

After letter-briefing, an oral argument was held on August 17, 2022. Before the hearing, the parties were provided with a tentative ruling relating to the three disputes. The hearing was reported by Crystal Hereford, CSR No. 14416.

The Special Master provides this written Order under the terms of Paragraph 10 of the Order Appointing the Special Master.

As explained further in various sections of this Order, the Special Master now rules as follows.

- Plaintiffs' June 1, 2022 Motion to Compel re Interrogatory No. 25 is DENIED.
- Apple's July 1, 2022 Motion to Compel *True Wearables* documents is GRANTED-IN-PART and DENIED-IN-PART.
- Plaintiffs' July 1, 2022 Motion to Compel Documents Withheld Under the Common Interest Privilege is DENIED.

2.  BACKGROUND

As Judge Selna has noted in recent rulings, "[t]he parties are familiar with the facts of this case." (Dkt. No. 732 at 2.)

But some of the recent procedural history is worth repeating here, as it is relevant to all three of the motions considered in this Discovery Order No. 14.

The Special Master has recently considered multiple discovery disputes between the parties involving a non-party issue preclusion theory recently proposed by Plaintiffs. Under that theory,

2

Plaintiffs argued information from various sources should be deemed relevant and discoverable in this case because that information could show that Apple had exerted sufficient control over defendants in the *True Wearables* case for Apple to be bound by certain findings in that case. (*See, e.g.*, Discovery Order No. 11, § 4.1; Dkt. No. 896 at 1–2.)

In Discovery Order No. 11, the Special Master found that the question of whether Plaintiffs should be permitted to seek discovery on their non-party issue preclusion theory was more appropriately decided by Judge Selna in the first instance, before resolution of Plaintiffs' June 1, 2022 motion to compel.

After expedited briefing was submitted to Judge Selna (and after the Special Master had in Discovery Order No. 13 also deferred ruling on Apple's July 1, 2022 motion to compel), Judge Selna issued an Order Re Offensive Collateral Estoppel, dated August 6, 2022. (Dkt. No. 896 (Sealed).) In that Order, Judge Selna ruled that Plaintiffs may not seek discovery regarding their offensive non-party issue preclusion theory for "at least" two reasons.

First, Judge Selna observed that Plaintiffs themselves have maintained arguments that Apple's requests for documents from the *True Wearables* case should be denied because Apple had not shown that the requested documents are relevant to this case. Judge Selna found that Plaintiffs cannot be permitted to take an inconsistent position to support their offensive collateral estoppel argument. He concluded that given Plaintiffs' position regarding the *True Wearables* documents sought by Apple, "Masimo has not demonstrated baseline relevance." (*Id.* at 4.) In a footnote, Judge Selna added the following.

> Having presided over the bench trial in the True Wearables litigation, it is not clear to the Court that Masimo is asserting any of the same trade secrets in this case as it asserted against the True Wearables defendants. Again, Masimo is in the best position to understand whether there is overlap and demonstrate any overlap for relevancy purposes, but a brief review of both sets of trade secrets does not suggest obvious overlap.

(*Id.* at 4 n.1.)

Second, Judge Selna found it "too late for Masimo to inject into this case offensive collateral estoppel as a component of the trade secrets claim." (*Id.*)

3

The Special Master saves any other facts necessary to resolve the parties' current disputes for the corresponding analysis subsections of this Order. (*See also* Discovery Order No. 11, § 4.1; Discovery Order No. 13, § 4.3.)

3. LEGAL STANDARD

3.1 Discovery Under Rule 26(b)(1)

Judge Selna has explained,

> [d]iscovery requests must be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Once the party seeking discovery has demonstrated relevance under Rule 26(b)(1), "the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Heredia v. Sunrise Senior Living LLC*, Case No. 8:18-cv-01974-JLS (JDEx), 2020 WL 3108699, at *2 (C.D. Cal. Jan. 31, 2020) (internal citation omitted). In analyzing the scope of discovery, the general rule is that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

(Dkt. No. 732 at 3.)

3.2 Work Product Doctrine

In another matter, Judge Selna has also explained,

> "[t]he work-product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks and citation omitted); Fed. R. Civ. P. 26(b)(3). To qualify for protection against discovery under the work-product doctrine, documents must have two characteristics: (1) they must be "prepared in anticipation of litigation or for trial"; and (2) they must be prepared "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3); *see also In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2003). Rule 26(b)(3) distinguishes between ordinary work product and opinion work product. Ordinary work product is discoverable if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). However, courts are obligated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Thus, "[a] party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product." *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SA CV 15-02034 JVS (JCGx), 2019 WL 11743217, at *2 (C.D. Cal. Mar. 1, 2019).

"The party asserting a privilege bears the burden of making a prima facie showing that the privilege protects the information the party intends to withhold." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

### 3.3   Common Interest Exception

"Rather than a separate privilege, the "common interest" or "joint defense" rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (*Hunydee v. United States,* 355 F.2d 183, 185 (9th Cir. 1965); *see also In re Grand Jury Subpoenas,* 902 F.2d 244, 249 (4th Cir. 1990) (collecting cases)).

Some district courts in this Circuit have characterized the exception as applying when three conditions are met "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Thunder Studios, Inc. v. Kazal*, No. CV 17-0871 AB (SSx), 2018 WL 11346848, at *5 (C.D. Cal. Oct. 23, 2018) (Segal, J.) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)); *see also Crosby v. California Physicians' Serv.*, No. 8:17-CV-01970 CJC (JDEx), 2020 WL 2510651, at *3 (C.D. Cal. Feb. 26, 2020) (Early, J.) (same, quoting *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 WL 3062294, at *6 (N.D. Cal. July 26, 2012)), *Kandypens Inc v. Puff Corp.*, No. CV 20-0358-GW-KS, 2020 WL 7978226, at *6 (C.D. Cal. Dec. 7, 2020) (Stevenson, J.) ("(1) communications [were] made 'in pursuit of a joint strategy in accordance with some form of agreement' that, in turn, was founded on a common legal interest and (2) communications [were] designed to 'further that legal effort.'").

Of note, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (citations omitted). But "[t]he

5

separate parties 'need not have identical interests and may even have some adverse motives.'" *Thunder Studios, Inc.*, 2018 WL 11346848, at *5 (citations omitted).

In the context of the work product doctrine, because of the nature of the work product doctrine compared to the attorney-client privilege, some courts have said that the common interest doctrine is construed "more lenient[ly]." *United States v. Am. Tel. and Tel. Co.,* 642 F.2d 1285, 1298–99 (D.C. Cir. 1980); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-CV-2182 KJM KJN, 2014 WL 1366252, at *5 (E.D. Cal. Apr. 7, 2014); *McMorgan & Co. v. First California Mortg. Co.,* 931 F.Supp. 703, 709 (N.D. Cal. 1996). As one district court put it,

> [u]nlike attorney-client privilege, attorney work-product protection is not automatically waived upon disclosure to third parties. This is so because "the purpose of the work-product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." Wright, Miller, Kane & Marcus, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.). Accordingly, such disclosure generally "does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." *Id.* "Disclosure to person with interest common to that of attorney or client is not inconsistent with intent to invoke work product doctrine's protection and would not amount to waiver." *In re Doe,* 662 F.2d 1073, 1081 (4th Cir. 1981). If a document otherwise protected by work-product immunity is disclosed to others with an actual intention, or reasonable probability, that an opposing party may see the document, the party who made the disclosure cannot subsequently claim work-product immunity. *In re Imperial Corp. of Am.,* 167 F.R.D. 447, 456 (S.D. Cal. 1995) aff'd, 92 F.3d 1503 (9th Cir. 1996).

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 645–46 (E.D. Cal. 2014); *see also Thunder Studios*, 2018 WL 11346848, at *6.

4. ANALYSIS

   4.1   **Plaintiffs' Deferred June 1, 2022 Motion to Compel re Interrogatory No. 25**

As explained in Discovery Order No. 11,

> Plaintiffs argue that Interrogatory No. 25 seeks information "relevant to whether Apple exercised sufficient control over the *True Wearables* litigation that Apple may be bound by adverse rulings." (Plf. Rog 25 Mot. at 2.) Plaintiffs do not provide any other relevance arguments in support of this motion.

(Discovery Order No. 11, at 4.)

6

At the hearing, Plaintiffs argued that they adequately and timely raised Lamego's and Apple's credibility as an alternative basis to support the relevance of the information sought. The issue was not actually raised in Plaintiffs' original June 1, 2022 motion or June 15, 2022 reply seeking to compel a further response to Interrogatory No. 25. Instead, it was raised for the first time at the June 24, 2022 hearing and soon after in Plaintiffs' June 30, 2022 supplemental brief (under a different heading related to a different motion). Of note, the Special Master had specifically requested supplemental briefs from the parties to address other issues: 1) the question of whether non-party offensive issue preclusion must be pled and 2) Apple's response, if any, to Plaintiffs' Exhibit 5 in support of its June 15, 2022 reply brief regarding Interrogatory No. 25. Although Plaintiffs insist that they did not waive this alternative relevance argument under these facts, their arguments on this point are not particularly persuasive.

But even assuming Plaintiffs have shown threshold relevance as to the information sought by Interrogatory No. 25, Plaintiffs do not adequately refute Apple's assertion that the information constitutes attorney work product protected by the common interest exception. As Apple's June 30, 2022 brief explains:

> [The subparts of Interrogatory No. 25] use broad, nebulous terms that cannot satisfactorily be answered via a yes or a no without going into privileged material. For example, Apple cannot simply answer "yes" or "no" to the question "was Apple involved in any litigation strategy?" without providing context and qualifications for any involvement it may have had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (for example, that Apple's only involvement was a single, 5-minute phone call) . . . . [footnote 4: Nor can Apple reasonably provide a yes/no answer to questions that involve speculation about True Wearables' subjective state of mind (e.g., "did Apple influence whether to appeal?").]

(Def. June 30, 2022 Suppl. Br. re Issue Preclusion, at 3.) Although Plaintiffs insist that "Apple can answer 'yes' without revealing any privileged information" (Plf. July 7, 2022 Suppl. Br. re Issue Preclusion, at 3), Plaintiffs do not adequately address these shortcomings with the language of Interrogatory No. 25. Nor have Plaintiffs shown even a substantial need for the information sought. Indeed, at the hearing, the Special Master specifically inquired about the need to obtain information regarding Lamego's and Apple's credibility through Interrogatory No. 25. Plaintiffs did not adequately address this inquiry at the hearing or in their briefs.

7

1         The June 30, 2022 motion is thus DENIED.

2         4.2    **Apple's Deferred July 1, 2022 Motion to Compel Production of *True Wearables***

3              **Documents**

Plaintiffs' portion of the parties' August 3, 2022 joint report regarding this motion states: "If True Wearables agrees to Apple's requested access [to *True Wearables* documents], Masimo will produce the unredacted documents as it offered to do long ago. If True Wearables does not agree, Masimo should not be required to 'guess at what redactions might be required by' True Wearables." (TW Jt. Rpt. at 1–2 (citation omitted).)

On August 10, 2022, counsel for Apple sent an email to the Special Master and Plaintiffs' counsel stating that "True Wearables consents to Plaintiffs providing the case materials requested in Apple's July 1, 2022 motion" so long as certain conditions are met.

At the hearing, Plaintiffs attempted to walk back their statement from the August 3, 2022 joint report, arguing that now that Judge Selna has declined to permit Plaintiffs to pursue a non-party issue preclusion theory, circumstances have changed such that they still continue to oppose producing the *True Wearables* documents.

Plaintiffs will not be permitted to take such an approach to this litigation. They must produce the documents as they previously agreed.

But Apple will not be permitted to walk back from its earlier agreements, either. The parties previously agreed to exchange "trial and deposition transcripts" for only a subset of the witnesses involved in the *True Wearables* matter. (Ex. D to TW Opp'n, at 9–10.) Apple's request in its July 1, 2022 motion for all "trial transcripts including written testimony" from the *True Wearables* case is thus rejected, and Apple has not provided an adequate reason for seeking to undercut this earlier agreement between counsel.

Considering all the circumstances related to the parties' dispute, including the various agreements between the parties discussed in this section, Apple's July 1, 2022 Motion to Compel is DENIED as to Apple's request for "trial transcripts including written testimony" from the *True Wearables* case, and otherwise GRANTED for all other documents Apple seeks by its motion from

the *True Wearables* case, with the understanding that Apple will also comply with its agreement with True Wearables about how the produced documents must be handled.

### 4.3 Plaintiffs' July 1, 2022 Motion to Compel Apple to Produce Documents Withheld Under the Common Interest Doctrine

Plaintiffs seek "92 documents that Apple is improperly withholding under the common interest doctrine," or alternatively, for Apple "to produce the documents for *in camera* inspection by the Special Master and supplement its privilege log to address various deficiencies." (Common Interest Mot. at 1.)

Plaintiffs argue that the documents sought by their July 1, 2022 motion are relevant to this case "regardless of whether they are also relevant to issue preclusion." (Reply re Common Interest at 1.) Plaintiffs state, "Apple describes each withheld communication as regarding Masimo's trade secret claim. (*See* Ex. F.) There is more than 'a possibility' that communications regarding Masimo's trade secret claim 'may be' relevant to Masimo's trade secret claim or to Apple's defenses." (*Id.*) Plaintiffs also argue that "Apple's communications with True Wearables and Lamego regarding or evidencing the extent of a common interest among them are also relevant to Lamego's credibility and bias in favor of Apple." (*Id.*)

Even assuming a threshold showing of relevance, Apple has submitted sufficient information to show that the communications constitute attorney work product and were otherwise made in furtherance of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

First, there is no reasonable dispute that Apple and True Wearables ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In addition to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, during meet and confer, Apple's counsel also provided eight alleged examples of "shared legal and factual issues" between Apple and True Wearables to support that they have common interests. (Ex. 9 to Common Interest Mot., at 3; *see also* Common Interest Opp'n at 2.) Both in briefing and at the hearing, Plaintiffs challenged whether Apple's eight listed examples indeed constituted "common" interests. For many of the examples, Plaintiffs argued that because this case and the *True Wearables* case do not involve the same trade secrets, stated issues like failing to adequately protect alleged trade secrets or showing that Marcelo Lamego did

1  not have access to trade secrets while working for Plaintiffs were not actually common between
2  Apple and True Wearables. Plaintiffs also strongly disputed whether "developing related affirmative
3  defenses, including failure to mitigate, laches, and statute of limitations" created a common
4  interest. (*See also* Common Interest Reply at 3.) But whether evaluated more ▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or by review of
6  Apple's eight examples of "shared legal and factual issues," given the nature of this matter
7  compared to the *True Wearables* case, Apple has shown that it previously shared one or more
8  common interests with True Wearables. Specifically, an individual who worked for Plaintiffs –
9  Lamego – left and worked briefly for Apple before leaving to found his own company -- True
10 Wearables. With this same individual at the heart of Plaintiffs' trade secret misappropriation claims
11 in both cases and specializing on similar types of technologies, Apple has sufficiently shown a
12 commonality of interests between itself and True Wearables as they defend against Plaintiffs' two
13 trade secret misappropriation lawsuits.
14         Second, through its supplemental privilege log, Apple has sufficiently shown that the 92
15 documents sought were communications in furtherance of Apple and True Wearables' common
16 interests. In the "Privilege Type ('Basis')" column of Apple's supplemental privilege log, Apple writes
17 for each entry: "Attorney Work Product. Attorney work product communicated and exchanged
18 pursuant to a common interest understanding and in furtherance of developing Apple and True
19 Wearables' defenses to Masimo's claims that it owns valid, non-readily ascertainable, and
20 adequately protected trade secrets that Mr. Lamego obtained and later disclosed." (Ex. F to
21 Common Interest Opp'n at 1.) In the "Privilege Description ('Subject Matter')" column, the
22 description provided for each document varies. For example, some entries state, "Joint defense
23 email communication between counsel for Apple and counsel for True Wearables prepared in
24 anticipation of litigation *that may include overlapping discovery (and confidentiality of that*
25 *discovery)* related to whether Masimo had any valid, non-readily ascertainable, and adequately
26 protected trade secrets of which Mr. Lamego learned and later disclosed." (*See, e.g., id.* at 4
27 (emphasis added).) The Special Master has reviewed each and every one of the entries listed and
28 finds based on the information in all of the privilege log's columns, including these two columns,

1  that Apple has met its burden of showing that the communications were attorney work product
2  where Apple reasonably believed the information, including opinions and theories of counsel made
3  in anticipation of trial, would not be seen by Plaintiffs by reason of that information's disclosure to
4  True Wearables.
5      Plaintiffs also argued that they were unable to evaluate whether Apple's withheld
6  communications were made in furtherance of Apple and True Wearables' common interests
7  because Apple's supplemental privilege log does not track the language of Apple's eight listed
8  examples of "shared legal and factual issues." The Special Master disagrees that the exact tracking
9  Plaintiffs demand is required to ascertain whether a particular communication was made in
10 furtherance of a common interest, and finds sufficient information provided in Apple's
11 supplemental privilege log as written.
12     At the hearing and in their papers, Plaintiffs specifically argued that Apple's privilege log
13 submissions for OC0020 raised concerns. Plaintiffs compared and contrasted the language of
14 Apple's original privilege log entry for this document compared to the supplemental privilege log.
15 Plaintiffs also identified the final version of the declaration discussed in OC0020 (based on Apple's
16 description of OC0020 in its original privilege log), and made arguments based on that final
17 declaration. Plaintiffs also reiterated that Apple's privilege log for OC0020 failed to tie OC0020
18 specifically to one of Apple's eight example common interests. But again, the Special Master's
19 review supports that Apple has shown it made the communication in furtherance of its common
20 interests with True Wearables, particularly when considering the final version of the declaration
21 attached to OC0020.
22     Finally, there has not been any showing sufficient to find that the work product doctrine was
23 otherwise waived by Plaintiffs as to the documents at issue.
24     Plaintiffs' July 1, 2022 Motion to Compel Documents Withheld Under the Common Interest
25 Privilege is thus DENIED. Plaintiffs' alternative request for *in camera* review has also been
26 considered, but Plaintiffs have not shown that such a review is warranted on the current record.
27 5.  CONCLUSION
28     The parties have submitted their disputes to the Special Master consistent with the

11

restricted letter-briefing and page limit procedures specified by the Order Appointing in this case. After presenting the parties with a full opportunity to present oral argument related to their disputes, the Special Master considered all the numerous arguments presented in the briefs and at associated hearings in making this Order.

As explained further in various sections of this Order, the Special Master now rules as follows.

- Plaintiffs' June 1, 2022 Motion to Compel re Interrogatory No. 25 is DENIED.
- Apple's July 1, 2022 Motion to Compel *True Wearables* documents is GRANTED-IN-PART and DENIED-IN-PART.
- Plaintiffs' July 1, 2022 Motion to Compel Documents Withheld Under the Common Interest Privilege is DENIED.

As noted, the Special Master provides this written Order under the terms of Paragraph 10 of the Order Appointing the Special Master, which states in part as follows.

> The Special Master shall issue rulings by order, except for any contempt findings that shall be issued by report and recommendation. See Fed. R. Civ. P. 53(c)(2). The Special Master shall provide any written order, report, or recommendation to counsel for the parties by email to give them an opportunity to propose redactions before submission to the Court. The parties shall meet and confer and submit any proposed redactions to the Special Master within three court days. If the parties cannot agree on redactions, the parties shall provide their positions by email to the Special Master, including all proposed redactions, and the Special Master may redact upon a finding that redaction is appropriate in his/her discretion before filing.

If the parties do not email the Special Master's Case Manager within the three court days specified by the Order Appointing, the Special Master assumes that the parties do not have any proposed redactions (or that any request for such redactions has been waived) and will promptly submit this written Order to the Court for public filing.

THUS IT IS ORDERED.

Dated: August 26, 2022                  *Andrew J. Guilford*
                                         Hon. Andrew J. Guilford (Ret.)
                                         Special Master