# EXHIBIT A

1

1

2

3

4              UNITED STATES DISTRICT COURT

5            CENTRAL DISTRICT OF CALIFORNIA

6                   SOUTHERN DIVISION

7                        - - -

8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

        MASIMO CORPORATION, et al.,   )CERTIFIED TRANSCRIPT
10                      Plaintiffs, )
            vs.                      )
11                                   )  SACV-18-02001-JVS
        TRUE WEARABLES, INC., et al., )
12                      Defendants. )  TRIAL DAY 4
        -----------------------------)
13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Santa Ana, California

17               March 18, 2022

18

19              SHARON A. SEFFENS, RPR
                United States Courthouse
20              411 West 4th Street, Suite 1-1053
                Santa Ana, CA  92701
21              (714) 543-0870

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

98

| | | |
|---|---|---|
| 11:49 | 1 | THE WITNESS:  Cristiano Dalvi. |
| 11:49 | 2 | THE CLERK:  And the spelling? |
| 11:49 | 3 | THE WITNESS:  C-r-i-s-t-i-a-n-o, D-a-l-v-i. |
| 11:49 | 4 | THE CLERK:  Thank you. |
| 11:49 | 5 | DIRECT EXAMINATION |
| 11:49 | 6 | BY MR. GERGELY: |
| 11:50 | 7 | Q    Good morning, Mr. Dalvi.  How are you? |
| 11:50 | 8 | A    I'm doing good.  Thank you. |
| 11:50 | 9 | Q    I handed you a notebook.  Is this a copy of the |
| 11:50 | 10 | declaration that you signed and submitted in this case? |
| 11:50 | 11 | A    That's the last document that you sent me? |
| 11:50 | 12 | Q    Yes. |
| 11:50 | 13 | A    Okay. |
| 11:50 | 14 | Q    You have to answer yes or no.  Is this a copy of the |
| 11:50 | 15 | declaration that you signed and submitted in this case? |
| 11:50 | 16 | A    Yes. |
| 11:50 | 17 | Q    Sir, is it true and accurate? |
| 11:50 | 18 | A    Yes. |
| 11:50 | 19 | Q    And do you adopt the statements in the declaration as |
| 11:50 | 20 | if you were testifying live in the court today? |
| 11:50 | 21 | A    Yes. |
| 11:50 | 22 | MR. GERGELY:  I pass the witness. |
| 11:51 | 23 | THE COURT:  Mr. Lateef. |
| 11:51 | 24 | CROSS-EXAMINATION |
| 11:51 | 25 | BY MR. LATEEF: |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-3-

99

| | | | |
|---|---|---|---|
| 11:51 | 1 | Q | Good morning, Mr. Dalvi. |
| 11:51 | 2 | A | Good morning. |
| 11:51 | 3 | Q | My name is Irfan Lateef.  We have met before? |
| 11:51 | 4 | A | Sorry.  Your name? |
| 11:51 | 5 | Q | Irfan Lateef. |
| 11:51 | 6 | A | Okay. |
| 11:51 | 7 | Q | You left Cercacor in 2020; is that correct? |
| 11:51 | 8 | A | Yes. |
| 11:51 | 9 | Q | Okay.  Are you currently employed? |
| 11:51 | 10 | A | Yes. |
| 11:51 | 11 | Q | Where do you currently work? |
| 11:51 | 12 | A | Can you repeat that? |
| 11:51 | 13 | Q | Where do you currently work? |
| 11:51 | 14 | A | The company is called Rockley Photonics. |
| 11:51 | 15 | Q | Now, does Rockley Photonics make products for wearable |
| 11:51 | 16 | | noninvasive monitoring? |
| 11:52 | 17 | A | I believe this is confidential information. |
| 11:52 | 18 | Q | You believe that's confidential information? |
| 11:52 | 19 | A | I believe so.  I believe you are guessing. |
| 11:52 | 20 | | THE COURT:  Sir, I will seal the courtroom and |
| 11:52 | 21 | | declare that your testimony is subject to the protective |
| 11:52 | 22 | | order in this case. |
| 11:52 | 23 | | THE WITNESS:  Sorry.  I can't hear you that well. |
| 11:52 | 24 | | THE COURT:  I'm going to close the courtroom.  We |
| 11:52 | 25 | | have a protective order in this case that restricts the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-4-

11:52  1    highly confidential information from dissemination.  I'm

11:52  2    going to put your testimony under that, so your testimony

11:52  3    will be screened from the public.

11:52  4             So you need to answer the questions.  Your company

11:52  5    is having all the protection that anybody else's

11:52  6    confidential information has.  So you need to answer the

11:52  7    question.

11:52  8             THE WITNESS:  Thank you, sir.  So I answer now?

11:52  9             THE COURT:  Yes, please.

11:52  10            (The following portion was under seal:)

11:52  11            (The entirety of Mr. Dalvi's testimony

11:52  12             was unsealed on page 111, line 22.)

11:52  13            THE WITNESS:  The device that is made over there

11:52  14   is possible to be used in a wearable device.

11:52  15   BY MR. LATEEF:

11:52  16   Q    Okay.  That would include the calculation of pulse

11:53  17   oximetry?

11:53  18   A    I don't know.

11:53  19   Q    So you don't work on any pulse oximetry products at

11:53  20   Rockley Photonics?

11:53  21   A    No.

11:53  22   Q    Do you do any research with LEDs and detecting

11:53  23   noninvasive blood parameters?

11:53  24   A    Can you repeat the question?

11:53  25   Q    Yes.  Do you work on sensors that noninvasively detect

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:53 | 1 | blood parameters? |
| 11:53 | 2 | A    It's a wearable device, and it has optical devices that |
| 11:53 | 3 | measures tissue parameters, yes. |
| 11:53 | 4 | Q    Okay.  And what are some of those tissue parameters? |
| 11:54 | 5 | A    Temperature and hydration. |
| 11:54 | 6 | Q    Any others? |
| 11:54 | 7 | A    I don't know. |
| 11:54 | 8 | Q    Now, during your deposition that took place in 2020, |
| 11:54 | 9 | you didn't -- sorry.  I'll speak louder. |
| 11:54 | 10 |           THE COURT:  Sir, we have an assisted-hearing |
| 11:54 | 11 | device.  Do you think that would help you? |
| 11:54 | 12 |           THE WITNESS:  Yeah. |
| 11:54 | 13 |           (Witness provided with assisted-hearing device) |
| 11:55 | 14 |           THE COURT:  Is that better? |
| 11:55 | 15 |           THE WITNESS:  It's better. |
| 11:55 | 16 |           THE COURT:  Okay.  Good. |
| 11:55 | 17 | BY MR. LATEEF: |
| 11:55 | 18 | Q    Very good. |
| 11:55 | 19 | A    Would you please repeat the last question, please. |
| 11:56 | 20 | Q    I actually don't remember what my last question was, |
| 11:56 | 21 | but it's okay.  I will go off my notes. |
| 11:56 | 22 |           Do you recall your deposition in 2020? |
| 11:56 | 23 | A    I recall some stuff, yeah. |
| 11:56 | 24 | Q    Do you recall that Masimo took your deposition in 2020? |
| 11:56 | 25 | A    Yes. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

102

| 11:56 | 1 | Q    Okay.  And at that deposition do you recall that you |

11:56    1    Q    Okay.  And at that deposition do you recall that you
11:56    2    would not disclose to us where you worked?
11:56    3    A    I did.
11:56    4    Q    Do you recall that?
11:56    5    A    I recall that.
11:56    6    Q    Okay.  Now, do you understand that Rockley Photonics is
11:57    7    a supplier to Apple?
11:57    8    A    I don't know.  If I understand that?  What is the
11:57    9    question?
11:57   10    Q    Do you know that Rockley Photonics is a supplier to
11:57   11    Apple?
11:57   12    A    I don't know.  I know they're our customers, but they
11:57   13    are not under my team.  I don't know all the customers.
11:58   14    Q    But do you know that Apple is a customer?
11:58   15    A    I cannot tell you.  I have no idea.
11:58   16    Q    Do you know who purchases the products that you help
11:58   17    create?
11:58   18    A    There is a new release on the company website, and they
11:58   19    publish who is buying.
11:58   20    Q    Okay.  And have you read that press release?
11:58   21    A    I have.
11:58   22    Q    Okay.  And who are some of the customers listed in that
11:58   23    press release?
11:58   24    A    Medtronics.
11:58   25    Q    Okay.  Are there others that you recall?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-7-

103

| | | |
|---|---|---|
| 11:58 | 1 | A    Not on that press release. |
| 11:58 | 2 | Q    And you don't recall seeing Apple mentioned in any |
| 11:59 | 3 | press release? |
| 11:59 | 4 | A    In press release I don't remember.  I never saw.  If |
| 11:59 | 5 | somebody mention, I have a hard time to hear.  I don't know. |
| 11:59 | 6 | Q    You have been a friend to Marcelo for a very long time; |
| 11:59 | 7 | is that correct -- Dr. Lamego? |
| 11:59 | 8 | A    Yes. |
| 11:59 | 9 | Q    About how long would you say? |
| 11:59 | 10 | A    Let me calculate.  Thirty or 40 years.  I don't know |
| 11:59 | 11 | exactly.  Maybe 1980, so it is 40 years. |
| 12:00 | 12 | Q    And you first met Marcelo, Dr. Lamego, in Brazil? |
| 12:00 | 13 | A    Yes. |
| 12:00 | 14 | Q    And you worked with him at some companies in Brazil? |
| 12:00 | 15 | A    Yes. |
| 12:00 | 16 | Q    Can you name some of those companies that you worked at |
| 12:00 | 17 | with him? |
| 12:00 | 18 | A    We co-founded a company called Hard Systèmes. |
| 12:00 | 19 | Q    And what did that company make? |
| 12:00 | 20 | A    We had many projects that we worked for the university. |
| 12:00 | 21 | We worked for a steel company.  We worked with hospital to |
| 12:00 | 22 | help with their service -- ECGs and treadmills and devices |
| 12:00 | 23 | that are used for clinical tasks.  We worked with a company |
| 12:01 | 24 | that deal with photography.  Might have some other projects, |
| 12:01 | 25 | and that was so long time ago. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-8-

104

| | | |
|---|---|---|
| 12:01 | 1 | Q    Okay.  And at that time you did not work on any pulse |
| 12:01 | 2 | oximeters, right? |
| 12:01 | 3 | A    No, not that I remember. |
| 12:01 | 4 | MR. LATEEF:  Your Honor, it's noon. |
| 12:01 | 5 | THE COURT:  Then we shall take the noon break. |
| 12:01 | 6 | MR. LATEEF:  Thank you, Your Honor. |
| 12:01 | 7 | THE COURT:  We will be in recess until 1:30. |
| 12:01 | 8 | Thank you. |
| 12:01 | 9 | (Recess taken at 12:01 p.m.; |
| 12:01 | 10 | proceedings resumed at 1:30 p.m.) |
| 01:30 | 11 | THE COURT:  Good afternoon. |
| 01:30 | 12 | Mr. Lateef. |
| 01:30 | 13 | BY MR. LATEEF: |
| 01:30 | 14 | Q    Mr. Dalvi, can you hear me okay? |
| 01:30 | 15 | A    Yes. |
| 01:30 | 16 | Q    Are you represented by counsel here today? |
| 01:30 | 17 | A    Yes. |
| 01:30 | 18 | Q    And who is your counsel? |
| 01:30 | 19 | A    Mr. Mike. |
| 01:30 | 20 | Q    Mike Denison; is that correct? |
| 01:30 | 21 | A    Yes. |
| 01:30 | 22 | Q    And does he have any relationship with Rockley |
| 01:31 | 23 | Photonics? |
| 01:31 | 24 | A    Can you repeat the question? |
| 01:31 | 25 | Q    Does he have any relationship with Rockley Photonics? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-9-

| | | |
|--|--|--|
| 01:31 | 1 | A    Not that I know. |
| 01:31 | 2 | Q    Earlier we were discussing your 2020 deposition.  Do |
| 01:31 | 3 | you remember that? |
| 01:31 | 4 | A    Please repeat the question. |
| 01:31 | 5 | Q    Yes.  Earlier before lunch we were discussing your 2020 |
| 01:31 | 6 | deposition in this case? |
| 01:31 | 7 | A    Yes. |
| 01:31 | 8 | Q    Okay.  And during that deposition you would not reveal |
| 01:31 | 9 | the name of your employer, correct? |
| 01:31 | 10 | A    Correct. |
| 01:31 | 11 | Q    And you also would not reveal what field you were |
| 01:31 | 12 | working in, correct? |
| 01:31 | 13 | A    Correct. |
| 01:31 | 14 | Q    Okay.  And you only told us that you work for a company |
| 01:31 | 15 | that makes components? |
| 01:31 | 16 | A    That's correct. |
| 01:32 | 17 | Q    So, Mr. Dalvi, I just wanted to clarify something that |
| 01:32 | 18 | occurred earlier today in court.  Do you remember when we |
| 01:32 | 19 | had to clear the courtroom because you believed you were |
| 01:32 | 20 | going to speak about confidential information of your |
| 01:33 | 21 | employer? |
| 01:33 | 22 | A    Today? |
| 01:33 | 23 | Q    Yes, earlier. |
| 01:33 | 24 | A    Yes. |
| 01:33 | 25 | Q    Okay.  Could you turn to a tab in your black binder. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-10-

| | | |
|---|---|---|
| 01:33 | 1 | A    Yes. |
| 01:33 | 2 | Q    In that binder the tab that starts with letters WO, the |
| 01:33 | 3 | third tab.  Could you turn to the third tab in that binder. |
| 01:33 | 4 | A    What is the third tab?  This one? |
| 01:33 | 5 | Q    It should be an international patent application. |
| 01:34 | 6 | THE CLERK:  There's only two here. |
| 01:34 | 7 | MR. LATEEF:  It should be the tab before that. |
| 01:34 | 8 | BY MR. LATEEF: |
| 01:34 | 9 | Q    Do you have a document in front of you that's an |
| 01:34 | 10 | international PCT patent application? |
| 01:34 | 11 | A    Yes. |
| 01:34 | 12 | Q    And that is international patent number WO2021116766A1, |
| 01:34 | 13 | correct? |
| 01:34 | 14 | A    Correct. |
| 01:34 | 15 | Q    And if you look in the right-hand column at the top, it |
| 01:34 | 16 | lists inventors; is that correct? |
| 01:34 | 17 | A    Yes. |
| 01:34 | 18 | Q    And your name is one of the listed inventors; is that |
| 01:35 | 19 | correct? |
| 01:35 | 20 | A    Yes. |
| 01:35 | 21 | Q    And right above the inventors, it lists the applicant. |
| 01:35 | 22 | Do you see that? |
| 01:35 | 23 | A    Yes. |
| 01:35 | 24 | Q    And the applicant is Rockley Photonics, Ltd., correct? |
| 01:35 | 25 | A    Correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|--|--|--|
| 01:35 | 1 | Q    And you work for that company, correct? |
| 01:35 | 2 | A    Yes. |
| 01:35 | 3 | Q    And you were involved in the invention of this patent |
| 01:35 | 4 | application? |
| 01:35 | 5 | A    Yes. |
| 01:35 | 6 | Q    Okay.  Could you turn the page, and you will see page 1 |
| 01:35 | 7 | on the right-hand side? |
| 01:35 | 8 | A    Yes. |
| 01:35 | 9 | Q    And in paragraph one at the top, it states that the |
| 01:35 | 10 | present invention relates to a sensing module for wearable |
| 01:35 | 11 | devices, correct? |
| 01:35 | 12 | A    Can you repeat that, please? |
| 01:35 | 13 | Q    Yes.  In paragraph 0001, there is a statement that the |
| 01:36 | 14 | present invention relates to a sensing module for wearable |
| 01:36 | 15 | devices.  Do you see that? |
| 01:36 | 16 | A    Yes. |
| 01:36 | 17 | Q    And that invention is something that you were involved |
| 01:36 | 18 | in, correct? |
| 01:36 | 19 | A    Yes. |
| 01:36 | 20 | Q    Could you turn two pages in this document, and then on |
| 01:36 | 21 | the bottom right page you should see paragraph 23.  Do you |
| 01:36 | 22 | see that? |
| 01:36 | 23 | A    Yes. |
| 01:36 | 24 | Q    In this paragraph, it talks about embodiments of the |
| 01:36 | 25 | invention; is that correct? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:36  1    A    Yes.

01:36  2    Q    And it lists that the sensing module is a single module

01:36  3    capable of noninvasive measurements of heart rate, heart

01:36  4    rate variability, blood flow -- and then it continues to the

01:37  5    next page -- local and core body temperature, cuffless

01:37  6    measurement of blood pressure, pulse oximetry, breath rate,

01:37  7    total body hydration, skin hydration, blood alcohol/ethanol,

01:37  8    blood lactate contents, carboxyhemoglobin and methyl

01:37  9    hemoglobin, and glucose.  Do you see that?

01:37  10   A    Yes.

01:37  11   Q    And you're involved in working on those parameters as

01:37  12   part of this invention?

01:37  13   A    Not on the parameters.

01:37  14   Q    Which parameters are you involved in?

01:37  15   A    No parameters.  I'm a hardware engineer.

01:37  16   Q    And the hardware you are working on enables the

01:37  17   noninvasive measurement of these parameters?

01:37  18   A    According to the description, yes.

01:37  19   Q    Okay.  And this is a public document, correct?

01:38  20   A    Yes.

01:38  21   Q    Okay.  So it's not a secret that you work for Rockley

01:38  22   Photonics?

01:38  23   A    Sorry.  I didn't understand your question.

01:38  24   Q    Let me start over.  This patent application is a public

01:38  25   document?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | | |
|---|---|---|---|
| 01:38 | 1 | A | Yes. |
| 01:38 | 2 | Q | And it lists you as an inventor publicly? |
| 01:38 | 3 | A | Yes. |
| 01:38 | 4 | Q | And it publicly is assigned to Rockley Photonics? |
| 01:38 | 5 | A | Yes. |
| 01:38 | 6 | Q | So it's public knowledge that you work for Rockley |
| 01:38 | 7 | | Photonics? |
| 01:38 | 8 | A | Yes. |
| 01:38 | 9 | Q | But you wouldn't tell us that during your deposition in |
| 01:38 | 10 | | 2020, correct? |
| 01:38 | 11 | A | I was told not to disclose at that time the nature of |
| 01:38 | 12 | | the company. |
| 01:38 | 13 | Q | And who told you that? |
| 01:38 | 14 | A | The lawyers. |
| 01:38 | 15 | Q | The lawyers for -- |
| 01:38 | 16 | A | Company lawyers, yes. |
| 01:38 | 17 | Q | -- Rockley Photonics? |
| 01:38 | 18 | A | For Rockley Photonics, yes. |
| 01:39 | 19 | Q | You are not aware of the algorithms that are used in |
| 01:39 | 20 | | the Oxxiom, right? |
| 01:39 | 21 | A | Repeat the question, please. |
| 01:39 | 22 | Q | Yes.  You are not aware of the algorithms that are used |
| 01:39 | 23 | | in the Oxxiom product, correct? |
| 01:39 | 24 | A | In which product? |
| 01:39 | 25 | Q | The True Wearables Oxxiom. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-14-

110

| | | |
|---|---|---|
| 01:39 | 1 | A    No. |
| 01:39 | 2 | Q    Okay.  And you are not aware of the software used in |
| 01:39 | 3 | that product, correct? |
| 01:39 | 4 | A    No.  Sorry.  Correct, I'm not aware. |
| 01:39 | 5 | Q    And you're not aware -- |
| 01:39 | 6 | A    Please don't make questions that can confuse me. |
| 01:39 | 7 | Q    Okay.  I will try not to.  Are you aware of the trade |
| 01:39 | 8 | secrets at issue in this case? |
| 01:39 | 9 | A    I received a subpoena for discussing these trade |
| 01:39 | 10 | secrets. |
| 01:39 | 11 | Q    Okay, but do you recall any of the trade secrets that |
| 01:40 | 12 | have been listed by Masimo and Cercacor in this case? |
| 01:40 | 13 | A    No, I don't recall it. |
| 01:40 | 14 | Q    Okay.  Thank you. |
| 01:40 | 15 |     Now, you mentioned earlier that you have a hearing |
| 01:40 | 16 | problem; is that correct? |
| 01:40 | 17 | A    Yes. |
| 01:40 | 18 | Q    And has Dr. Lamego ever asked you to record a |
| 01:40 | 19 | conversation? |
| 01:40 | 20 | A    No. |
| 01:40 | 21 | Q    Okay.  And he has never asked you to record any |
| 01:40 | 22 | conversations with Mr. Jensen? |
| 01:40 | 23 | A    No. |
| 01:40 | 24 | Q    Have you ever recorded a conversation with Mr. Jensen? |
| 01:40 | 25 |     MR. DENISON:  I object to the question.  I |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-15-

| | | |
|---|---|---|
| 01:40 | 1 | instruct him not to answer and to assert his Fifth Amendment |
| 01:41 | 2 | right. |
| 01:41 | 3 | THE COURT:  Your counsel has told you not to |
| 01:41 | 4 | answer the question and to assert the Fifth Amendment. |
| 01:41 | 5 | Do you assert the Fifth Amendment here? |
| 01:41 | 6 | THE WITNESS:  Sorry? |
| 01:41 | 7 | THE COURT:  Your counsel has told you to assert |
| 01:41 | 8 | the Fifth Amendment.  It's your privilege against |
| 01:41 | 9 | self-incrimination. |
| 01:41 | 10 | In response to that question, do you assert the |
| 01:41 | 11 | Fifth Amendment? |
| 01:41 | 12 | THE WITNESS:  I will follow his recommendation. |
| 01:41 | 13 | THE COURT:  So you do.  Okay. |
| 01:41 | 14 | MR. LATEEF:  I have no further questions. |
| 01:41 | 15 | THE COURT:  Mr. Gergely. |
| 01:41 | 16 | MR. GERGELY:  No questions, Your Honor. |
| 01:41 | 17 | MR. LATEEF:  Your Honor, could we unseal the |
| 01:41 | 18 | entirety of his testimony given that everything is public? |
| 01:41 | 19 | THE COURT:  Any objection? |
| 01:41 | 20 | His testimony will be unsealed. |
| 01:41 | 21 | MR. LATEEF:  Thank you, Your Honor. |
| 01:41 | 22 | (The entirety of Christopher Dalvi's |
| 01:41 | 23 | testimony was unsealed.) |
| 01:41 | 24 | THE COURT:  May the witness be excused? |
| 01:41 | 25 | THE COURT:  Sir, you may be excused.  Thank you. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 01:41 | 1 | THE WITNESS:  Sorry.  I didn't hear that. |
| 01:42 | 2 | THE COURT:  You get to go home. |
| 01:42 | 3 | THE WITNESS:  Okay.  Thank you so much.  I |
| 01:42 | 4 | apologize. |
| 01:42 | 5 | THE COURT:  No, no.  Thank you for coming. |
| 01:42 | 6 | THE WITNESS:  Thank you so much. |
| 01:42 | 7 | THE COURT:  Ms. Stradley. |
| 01:42 | 8 | MS. STRADLEY:  Defendants call Sean Merritt. |
| 01:43 | 9 | SEAN MERRITT, DEFENSE WITNESS, SWORN |
| 01:43 | 10 | THE COURT:  Please be seated. |
| 01:43 | 11 | Would you state your name and spell your last |
| 01:43 | 12 | name. |
| 01:43 | 13 | THE WITNESS:  Sean Merritt.  Last name, |
| 01:43 | 14 | M-e-r-r-i-t-t. |
| 01:43 | 15 | THE COURT:  Okay. |
| 01:43 | 16 | DIRECT EXAMINATION |
| 01:43 | 17 | BY MS. STRADLEY: |
| 01:43 | 18 | Q    Mr. Merritt, did you prepare a declaration for this |
| 01:43 | 19 | case? |
| 01:43 | 20 | A    Yes, I did. |
| 01:43 | 21 | Q    And the declaration that you prepared is in the binder |
| 01:43 | 22 | in front of you? |
| 01:43 | 23 | A    Yes, it is. |
| 01:43 | 24 | Q    And have you had an opportunity to review that |
| 01:43 | 25 | declaration? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit A**
-17-

113

| | | |
|---|---|---|
| 01:43 | 1 | A    Yes, I have. |
| 01:44 | 2 | Q    Are there any changes or corrections you would like to |
| 01:44 | 3 | make? |
| 01:44 | 4 | A    No. |
| 01:44 | 5 | Q    Do you adopt this declaration as your direct testimony |
| 01:44 | 6 | today? |
| 01:44 | 7 | A    Yes. |
| 01:44 | 8 | MS. STRADLEY:  Pass the witness. |
| 01:44 | 9 | THE COURT:  Mr. Jensen. |
| 01:44 | 10 | MR. JENSEN:  Thank you, Your Honor. |
| 01:44 | 11 | We have some books to pass out. |
| 01:44 | 12 | CROSS-EXAMINATION |
| 01:44 | 13 | BY MR. JENSEN: |
| 01:44 | 14 | Q    Good afternoon, Dr. Merritt.  How are you doing today? |
| 01:44 | 15 | A    I'm doing fine.  How are you? |
| 01:44 | 16 | Q    I think you know who I am.  I'm Steve Jensen, and I |
| 01:44 | 17 | will be conducting your cross-examination.  And you know me |
| 01:44 | 18 | from your years at Cercacor, right? |
| 01:44 | 19 | A    That's right. |
| 01:44 | 20 | Q    In fact, we had quite a few meetings while you were |
| 01:45 | 21 | there, right? |
| 01:45 | 22 | A    That's right. |
| 01:45 | 23 | Q    And, in fact, we even had meetings regarding this |
| 01:45 | 24 | litigation while you were still there; isn't that true? |
| 01:45 | 25 | A    That's correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit A**
**-18-**

114

| | | |
|---|---|---|
| 01:45 | 1 | Q    And you also knew John Grover from my firm and had |
| 01:45 | 2 | meetings with him while you were at Cercacor, right? |
| 01:45 | 3 | A    That's correct. |
| 01:45 | 4 | Q    And those meetings were principally about patent |
| 01:45 | 5 | filings, correct? |
| 01:45 | 6 | A    That's correct. |
| 01:45 | 7 | Q    Immediately after earning your degree in physics in |
| 01:45 | 8 | 2005 after your Ph.D., as I recall, you started working at |
| 01:45 | 9 | Masimo Corporation, correct? |
| 01:45 | 10 | A    That's correct. |
| 01:45 | 11 | Q    And prior to that, you did not have any experience with |
| 01:45 | 12 | analyzing PPG signals, correct? |
| 01:45 | 13 | A    That's correct. |
| 01:45 | 14 | Q    And you worked for Masimo for a year and a half to two |
| 01:45 | 15 | years, correct? |
| 01:45 | 16 | A    That's correct. |
| 01:45 | 17 | Q    And at Masimo you were supporting Mohamed Diab and |
| 01:45 | 18 | Dr. Lamego on the development of the Rainbow technology; is |
| 01:45 | 19 | that correct? |
| 01:45 | 20 | A    That's correct. |
| 01:45 | 21 | Q    At Masimo you had a lot of freedom to come up with the |
| 01:46 | 22 | things you thought might be useful and try them out, |
| 01:46 | 23 | correct? |
| 01:46 | 24 | A    That's correct. |
| 01:46 | 25 | Q    And Dr. Lamego spoke to you about an opportunity of |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit A**
-19-

01:46  1    leaving Masimo and going with him to Cercacor, correct?

01:46  2    A    That's correct.

01:46  3    Q    And you perceived that Dr. Lamego was excited about

01:46  4    that opportunity at Cercacor, is that true?

01:46  5    A    That's true.

01:46  6    Q    And once you moved from Masimo to Cercacor, you went

01:46  7    from supporting side projects to directly developing

01:46  8    prototype devices, correct?

01:46  9    A    That's correct.

01:46  10   Q    And you reported directly to the chief technical

01:46  11   officer, Dr. Lamego, correct?

01:46  12   A    That's correct.

01:46  13   Q    And Dr. Lamego served as a mentor to you?

01:46  14   A    That's correct.

01:46  15   Q    And you would agree, would you not, that you shared

01:46  16   information regarding the projects you were working on with

01:46  17   him as you worked on them, correct?

01:46  18   A    That's correct.

01:46  19   Q    Indeed he was guiding you in those projects, correct?

01:46  20   A    Correct.

01:47  21   Q    And after Cercacor, you worked for a company named

01:47  22   CardieX; is that correct?

01:47  23   A    That's correct.

01:47  24   Q    And what did you do for CardieX?

01:47  25   A    Just general product development.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 01:47 | 1 | Q    What kind of products? |
| 01:47 | 2 | A    Cuffless blood pressure. |
| 01:47 | 3 | Q    And when did you leave CardieX? |
| 01:47 | 4 | A    In March of 2020. |
| 01:47 | 5 | Q    And several other employees from Masimo or Cercacor |
| 01:47 | 6 | also work at the same company you work for now, correct? |
| 01:47 | 7 | A    That's correct. |
| 01:47 | 8 | Q    And that includes at least Cristiano Dalvi, who just |
| 01:47 | 9 | testified, Phillip Perea, Maria Javier, and Ferdyan Lesmana, |
| 01:47 | 10 | correct? |
| 01:47 | 11 | A    That's correct. |
| 01:47 | 12 | Q    And all of those were people from Cercacor, correct? |
| 01:48 | 13 | A    Not Phillip Perea. |
| 01:48 | 14 | Q    He came from Masimo? |
| 01:48 | 15 | A    That's correct. |
| 01:48 | 16 | Q    Could you turn to your witness statement.  It should be |
| 01:48 | 17 | in the binder that your lawyer gave you.  And look at your |
| 01:48 | 18 | testimony.  It's at page 1 under background. |
| 01:48 | 19 | A    I see. |
| 01:48 | 20 | Q    And you gave several paragraphs, paragraphs 5 through |
| 01:48 | 21 | 12 on your background, correct? |
| 01:48 | 22 | A    That's correct. |
| 01:48 | 23 | Q    And in those paragraphs you did not identify your |
| 01:48 | 24 | current employer, correct? |
| 01:48 | 25 | A    That's correct. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:48  1   Q    And over two years since you left CardieX, your

01:48  2   LinkedIn profile still says you work for CardieX, correct

01:49  3   A    That's correct.

01:49  4   Q    And during your deposition you refused to identify your

01:49  5   employer, correct?

01:49  6   A    That's correct.

01:49  7   Q    And who is your current employer?

01:49  8   A    Rockley Photonics.

01:49  9   Q    And what is your position there?

01:49  10   A    Senior principal sensing engineer.

01:49  11   Q    So if my memory serves me properly, then, that brings

01:49  12   us to you, Cristiano Dalvi, Ferdyan Lesmana, Maria Javier,

01:49  13   Phillip Perea, and Matthew Paul, all former Cercacor or

01:49  14   Masimo employees that now work for Rockley Photonics,

01:49  15   correct?

01:49  16   A    That's correct.

01:49  17   Q    Did I miss anyone else from Cercacor or Masimo that

01:49  18   works for Rockley Photonics?

01:49  19   A    Howard Chen.

01:49  20   Q    Anybody else?

01:49  21   A    And maybe another person.  Ping Lei.

01:50  22   Q    Anybody else?

01:50  23   A    There is another person.  I don't know the name.

01:50  24   Q    Okay.  And that's all the names you can remember today?

01:50  25   A    That's right.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

118

| | | |
|---|---|---|
| 01:50 | 1 | Q    And you have filed some patents while at Rockley that |
| 01:50 | 2 | include you and Cristiano Dalvi and Phillip Perea as |
| 01:50 | 3 | inventors, correct? |
| 01:50 | 4 | A    That's correct. |
| 01:50 | 5 | Q    Could you look in your binder.  There should be a tab |
| 01:50 | 6 | labeled WO2022029486. |
| 01:50 | 7 | A    Could you repeat that? |
| 01:50 | 8 | Q    Yes.  There is a tab.  It's really the only one that |
| 01:51 | 9 | starts with WO.  Did you find that? |
| 01:51 | 10 | A    I see. |
| 01:51 | 11 | Q    Okay.  And that patent lists you as one of the |
| 01:51 | 12 | inventors, correct? |
| 01:51 | 13 | A    That is correct. |
| 01:51 | 14 | Q    So you have seen this document before, correct? |
| 01:51 | 15 | A    That's correct. |
| 01:51 | 16 | Q    If you could turn to the abstract, it says there -- do |
| 01:51 | 17 | you see the abstract, still on that first page?  I'm going |
| 01:51 | 18 | to read to you and then ask a question:  "A sensor system |
| 01:51 | 19 | for diffuse reflectance tissue monitoring, the sensor system |
| 01:51 | 20 | comprising one or more integrated photonic silicon or with |
| 01:51 | 21 | silicon nitride broadband transceiver circuits for |
| 01:51 | 22 | multi-wavelength diffuse reflectance tissue monitoring." |
| 01:51 | 23 |      Do you see that language? |
| 01:51 | 24 | A    Yes. |
| 01:51 | 25 | Q    And are you working on that technology at Rockley |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-23-

172

| | | |
|---|---|---|
| 03:20 | 1 | (Courtroom cleared) |
| 03:20 | 2 | (The following portion was under seal:) |
| 04:28 | 3 | (End of sealed portion) |
| 04:28 | 4 | THE COURT:  I count that True Wearables has about |
| 04:29 | 5 | five more witnesses.  You're down roughly to between 30 and |
| 04:29 | 6 | 40 minutes.  In all events, you'll have time to at least put |
| 04:29 | 7 | your witnesses on. |
| 04:29 | 8 | Masimo is down to about six hours.  I will give |
| 04:29 | 9 | you the precise numbers.  We'll e-mail them out. |
| 04:29 | 10 | Anything else we ought to take up before we |
| 04:29 | 11 | adjourn for the weekend? |
| 04:29 | 12 | MR. RE:  Nothing from the plaintiff, Your Honor. |
| 04:29 | 13 | THE COURT:  Mr. Gergely. |
| 04:29 | 14 | MR. GERGELY:  No, Your Honor. |
| 04:29 | 15 | THE COURT:  Okay.  I trust you will have a good |
| 04:29 | 16 | weekend. |
| 04:29 | 17 | (Proceedings adjourned at 4:29 p.m.) |
| 04:29 | 18 | *   *   * |
| 04:29 | 19 | |
| 04:29 | 20 | |
| 04:29 | 21 | |
| 04:29 | 22 | |
| 04:29 | 23 | |
| 04:29 | 24 | |
| 04:29 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-24-

173

04:29   1

04:29   2

04:29   3

04:29   4

04:29   5                        CERTIFICATE

04:29   6

04:29   7          I hereby certify that pursuant to Section 753,

04:29   8    Title 28, United States Code, the foregoing is a true and

04:29   9    correct transcript of the stenographically reported

04:29   10   proceedings held in the above-entitled matter and that the

04:29   11   transcript page format is in conformance with the

04:29   12   regulations of the Judicial Conference of the United States.

04:29   13

04:29   14   Date:   March 19, 2022

04:29   15

04:29   16
04:29                        /s/   Sharon A. Seffens  3/19/22
04:29   17                   _____
04:29                        SHARON A. SEFFENS, U.S. COURT REPORTER
04:29   18

        19

        20

        21

        22

        23

        24

        25

              SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
-25-

# EXHIBIT B

1
2
3
4
5
6
7

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, | Case No. 8:18-CV-02001-JVS-JDE |
| Plaintiffs/Counterdefendants, | **ORDER GRANTING LEAVE TO FILE CORRECTIONS TO SEAL PORTIONS OF TRIAL TRANSCRIPTS** |
| v. | |
| TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, | **Hon. James V. Selna Magistrate Judge John D. Early** |
| Defendants/Counterclaimants. | **Trial Held: 03/15/2022** |

Having considered the parties' Joint Stipulation for Leave to file corrections to seal portions of the Trial Transcripts, this Court finds good cause. The Court hereby grants the following:

The following testimony currently under seal shall be unsealed:

On March, 15, 2022:
- Page 4 line 4 – Page 6 line 11 (3:21pm – 3:24pm) (Diab)
- Page 17 line 13 - Page 27 line 9 (3:42pm – 3:56pm) (Diab)
- Page 37 line 12 - Page 40 line 25 (4:16pm – 4:24pm) (Diab)

On March 16, 2022:
- Page 13 line 6 - Page 15 line 5 (9:18am – 9:21am) (Diab)
- Page 18 line 23 - Page 19 line 6 (9:27am) (Diab)

On March 17, 2022:
- Page 8 line 8 - Page 39 line 3 (2:52pm – 4:00pm) (M. Lamego)
- Page 58 line 1 - Page 63 line 25 (4:28pm - 4:35pm) (M. Lamego)

On March 18, 2022:
- Page 6 line 24 – Page 43 line 8 (9:08am – 10:04am) (M. Lamego)
- Page 47 line 19 – Page 72 line 22 (10:11am – 11:03am) (M. Lamego)
- Page 74 line 14 – Page 91 line 25 (11:06am – 11:30am) (M. Lamego)
- Page 95 line 7 – Page 120 line 25 (2:21pm - 2:50pm) (Merritt)

On March 22, 2022:
- Page 79 line 12 - Page 107 line 19 (2:22pm – 3:02pm) (Kiani)

The following testimony currently not under seal, shall be placed under seal:

On March 16, 2022
- Page 136 line 13 - Page 144 line 10 (4:19pm – 4:32pm) (McNames)

-1-

On March 17, 2022

- Page 9 line 13 - Page 73 line 25 (9:10am – 11:19am) (McNames)

On March 17, 2022:

- Page 87 line 10 – Page 100 line 2 (11:42am – 12:01pm) (Pinsonneault)
- Page 113 line 17 – Page 116 line 10 (1:49pm – 1:52pm) (M. Lamego)

On March 22, 2022:

- Page 49 line 24 – Page 50 line 3 (1:46pm) (McNames)
- Page 69 lines 3-13 (2:19pm – 2:20pm) (Kiani)

**IT IS SO ORDERED.**

Dated: March 30, 2022

_____

Honorable James V. Selna

EXHIBIT C
FILED UNDER SEAL

# EXHIBIT D
# FILED UNDER SEAL

# EXHIBIT E

```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)



MASIMO CORPORATION, ET AL,    ) CASE NO: 8:20-CV-00048-JVS-JDEx
                              )
              Plaintiffs,     )            CIVIL
                              )
     vs.                      )       Santa Ana, California
                              )
APPLE, INC,                   )    Thursday, September 23, 2021
                              )
                Defendant.    )
_____
```

     IN-PERSON HEARING RE: PLAINTIFFS' MOTION FOR RECONSIDERATION

              BEFORE THE HONORABLE JOHN D. EARLY,
                 UNITED STATES MAGISTRATE JUDGE



<u>APPEARANCES</u>:            SEE PAGE 2


Court Reporter:           Recorded; Digital wave file


Courtroom Deputy:         Maria Barr


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>**APPEARANCES**</u>:


For Plaintiffs:            JOSEPH R. RE, ESQ.
                           Knobbe Martens Olson & Bear, LLP
                           2040 Main Street
                           14th Floor
                           Irvine, CA 92614

                           ADAM POWELL, ESQ.
                           Knobbe Martens Olson & Bear, LLP
                           12790 El Camino Real
                           San Diego, CA 92130


For Defendant:             JOSHUA H. LERNER, ESQ.
                           Gibson Dunn & Crutcher, LLP
                           555 Mission Street
                           Suite 3000
                           San Francisco, CA 94105

                           NATALIE POUS, ESQ.
                           Apple In-House Counsel

Exhibit E
-46-

1          **Santa Ana, California; Thursday, September 23, 2021**

2                        **(Call to Order)**

3          **THE COURT:**  Good morning, everyone.

4          **MR. RE:**  Good morning.

5          **MR. LERNER:**  Good morning, Your Honor.

6          **THE COURT:**  One item on calendar today.  Calling Case

7     Number Central District of California 8:20-cv-48-JVS-JDE,

8     *Masimo Corporation, et al., versus Apple, Inc.*

9          Appearances for this in-person hearing, Counsel,

10    starting with counsel for plaintiff.

11         **MR. RE:**  For Masimo and Cercacor, Joseph Re from

12    Knobbe Martens Olson and Bear.  With me is my partner, Adam

13    Powell.

14         **THE COURT:**  Good morning.  Thank you.

15         And on behalf of defendant?

16         **MR. LERNER:**  Good morning, Your Honor.  Joshua

17    Lerner, Gibson Dunn, on behalf of Apple, and with me today is

18    Natalie Pous, legal counsel, litigation, from Apple.

19         **THE COURT:**  I'm sorry; what was the last name?

20         **MR. LERNER:**  P-O-U-S, Your Honor.

21         **THE COURT:**  All right.  And that's in-house counsel

22    at Apple?

23         **MR. LERNER:**  Yes.

24         **THE COURT:**  All right.  All right.  We're here for

25    a -- what's been styled as a motion for reconsideration of my

4

1   June 10th ruling regarding Mr. Cook's being designated as an

2   ESI custodian, a motion that I denied on June 10th.  I'll tell

3   you what I've reviewed.  Then I'm going to give you my

4   tentative thoughts.

5           I have reviewed the motion, which, let's see, is

6   Docket Number 471, and memorandum and exhibits and

7   declarations, some of which were filed under seal.  I've

8   reviewed Apple's opposition, which is at 479, along also with

9   two declarations and exhibits.  I don't think any of that was

10  filed -- oh, no, some of it was filed under seal; and a reply

11  from plaintiffs filed on August 5th, also with exhibits and a

12  declaration, some of which was filed under seal.

13          I'm going to now first ask, on plaintiffs' behalf, is

14  there anything that I should have reviewed that I haven't

15  referenced, from your perspective?

16          **MR. RE:**  Nothing, Your Honor.

17          **THE COURT:**  And on behalf of defendant?

18          **MR. LERNER:**  No, Your Honor.

19          **THE COURT:**  All right.  Here is my tentative.  My

20  tentative is to grant the motion for reconsideration, finding

21  that plaintiff under Local Rule 7-18 did act appropriately and

22  in a timely fashion and there is good cause for the motion not

23  being filed within 14 days after the hearing because -- for the

24  reasons stated in the papers, but the -- I don't want to

25  characterize one piece of evidence more important than another,

5

1  but certainly the public filing on July 2nd by Apple of an

2  October 2nd, 2013, email from Mr. Marcelo Lamego to Mr. Tim

3  Cook, and I think there was a follow-up email back to

4  Mr. Lamego from a representative at Apple later that same

5  morning, that was publicly filed on July 2nd.  There was a

6  meet-and-confer session requested, I think the next business

7  day, which was July 6th, and a meet-and-confer took place on

8  July 9th, and then per Local Rule 7-8 the motion couldn't have

9  been filed until July 16th, and it was filed on the next

10 business day thereafter, on July 19th, which I, based on all

11 the circumstances -- and I've summarized it; I haven't included

12 everything -- find was -- that plaintiffs acted diligently and

13 had good cause to not file the motion within 14 days after the

14 prior ruling.

15        And I'll also note that, from the bench, the last --

16 at the hearing on the July 10th original motion, I had invited

17 plaintiffs' counsel that should there be new information they

18 could refile the motion.  So, although it's styled as a motion

19 for reconsideration, they could have just filed a brand-new

20 motion.  I offered that up as an option, and that, obviously,

21 would not have been subject to the Local Rule 7-18, 14-day plus

22 good cause requirement.  Now, I may be speaking too much.  Had

23 that happened, it might have been heard by Judge Guilford

24 instead of me under the special master reference, but be that

25 as it may, I find good cause for the filing of motion.

6

```
 1              Turning to the substance, I think it was the same
 2    counsel who were here on July -- on June 10th.  I expressed
 3    that it was a -- and I may not have used these words, but the
 4    essence of it was it was a close call.  I found that the -- the
 5    factual evidentiary showing relatively weak by plaintiff in
 6    connection with their request to show that there was some
 7    reasonable likelihood that Mr. Cook might have relevant
 8    information in his emails or other streams.  The flip side was
 9    I noted that defendants offered no evidence of the burden.
10    And, so, essentially, on that close call, I relied on two
11    people.  One of them was Bob Dylan, and one of them was
12    Mr. Lerner and four or five other attorneys from Gibson Dunn
13    and Crutcher who represented -- and I'm going to paraphrase --
14    that it was unlikely that Mr. Cook would have any relevant
15    discoverable information in his ESI.
16              That statement was confirmed at the hearing, and I
17    gave Mr. Lerner an opportunity to recognize that that was an
18    important basis for my ruling and that should that at some
19    future date turn out not to be true, there could be -- and I
20    used the word "severe" -- there could be severe repercussions.
21    I'm not inclined right now to get into repercussions.  I think
22    I'd need to gather some more information.  We can do that if
23    the parties wish.  Right now I'm inclined to move forward with
24    your case, help you each move forward with your respective
25    cases, and rule on the substance of the motion, but we can get
```

7

1   into a more deep dive into some other issues that may be

2   lurking out there.

3            And I'll note, in terms of the good cause, moving

4   back in time, that I have considered Apple's arguments that

5   plaintiffs' counsel, at least the firm, had possession of the

6   October 2nd, 2013, email as long ago as last year, and there is

7   a declaration from a paralegal from another firm regarding

8   production in another case.  I'm happy to get into a deep dive

9   on that.

10           I actually -- I don't think you were here,

11  Mr. Lerner, on that other case -- had some thoughts about what

12  was happening, and I used a term from my days visiting New York

13  City when I was a kid in the 1970s where you'd pop out of Penn

14  Station or Grand Central Station and there would be guys with

15  little tables set up playing Three Card Monte.  And I want to

16  explain what that is.  It's a game where you're trying to pick

17  the queen out of three cards.  And the queen is there, and the

18  person dealing the cards isn't cheating; and by dealing, he

19  just throws three cards around, but is being somewhat opaque.

20  And sometimes it involves having a third party who appears to

21  be an independent third party who's actually working with the

22  dealer out on this little table outside the station looking for

23  tourists coming into town to have the third party, who looks to

24  be independent, win a couple times, and then when the tourist

25  puts their money down, suddenly the card is much harder to

8

1    find.  The card exists; it's just being obscured.

2             I'm happy to hear from Apple about anything that they

3    want to talk about.  But one of the things we might get into

4    and have to get into if we're going to do a deep dive is the

5    relationship between Apple and True Wearables, the defendant in

6    the other case; how it came to pass that the October 2nd email

7    was designated as confidential in that case; maybe we need to

8    get into communications between the parties.  I don't know, and

9    I certainly am not going to issue any orders on the fly on

10   that, but maybe we need to, to find out how it came to pass.

11   And there is an argument from Apple that plaintiff --

12   plaintiffs could have just moved to de-designate that October

13   2nd, 2013, email in the True Wearables case.  I'm not sure what

14   the basis for that argument is.  There is no basis in the

15   protective order in that case to simply say:  I want to use

16   something that was designated as confidential in another case.

17   You can move to de-designate by saying something isn't

18   confidential.  And here at least it was represented at the last

19   hearing that -- I think it was by Mr. Re -- that during the

20   course of the True Wearables case Mr. Lamego said that that

21   email, he designated that as confidential at the request of --

22   and I'm not sure if it was expressed or in his mind

23   interpreted -- at the request of Apple.  And you each have

24   heard me talk about my views of protective orders and that

25   they're not to be willy-nilly disregarded, and that protective

Exhibit E
-52-

9

1    order limited the use of that email once it was designated as

2    confidential to the prosecution or defense of that case only.

3    So, plaintiffs could not have simply thrown it in front of me.

4            Now, the timing here, perhaps it was a genius move by

5    plaintiffs to serve a third-party subpoena on Apple, have Apple

6    file a motion to quash, and then have that document be brought

7    to my attention in connection with that motion to quash, but be

8    that as it may, that was -- they didn't have an ability to

9    bring it to my attention in this court in this hearing on June

10   10th.  And I'm a little troubled by the suggestion that it was

11   that simple or that plaintiffs here were at fault.  And, so, if

12   we want to go down that road, we will, but we're probably at

13   that point going to have to have some evidentiary issues if we

14   really want to push it.  But I'm comfortable right now with

15   what I see to say they did not have authorization from me or

16   Mr. Lamego.  And I saw the emails from Mr. Lamego's counsel

17   essentially telling plaintiff they couldn't even disclose this

18   to in-house counsel at Apple; it could only be an attorneys'-

19   eyes-only presentation of the email from plaintiff to Apple's

20   counsel before plaintiffs' counsel would be authorized to file

21   it in connection with the motion to quash in the True Wearables

22   case.

23           So, I'm riffing a little bit.  I've given you the

24   short version of my tentative.  I guess I'll start with you,

25   Mr. Re, or Mr. Powell.  It's plaintiffs' motion.  At the risk

Exhibit E
-53-

10

1   of potentially snatching defeat from the jaws of victory,

2   you're welcome to offer any additional argument, since you have

3   the burden here, but -- or give me any new information, since I

4   think the last filing was your reply over a month ago, if

5   there's any new information that you want to impart to me.

6           Mr. Re, the floor is yours.

7           **MR. RE:**  Thank you, Your Honor.  I only have one

8   statement to make, and that is, we, in an abundance of caution,

9   had the same interpretation of the protective order that you

10  just gave.  And that is, even if I were to show it to

11  Mr. Lerner, for example, for a meet-and-confer to get a court

12  order to approve it after the fact, that might even be deemed a

13  use.  So, we have an ambiguity on the word "use," and we took

14  the broadest interpretation, just like you just did in your

15  explanation.

16          **THE COURT:**  Anything further?

17          **MR. RE:**  Nothing further.

18          **THE COURT:**  All right.  Subject to your ability to

19  respond, any arguments from Mr. Lerner?  Mr. Lerner, you've

20  heard my tentative and my thoughts.  Let me hear what you want

21  to argue.

22          **MR. LERNER:**  Thank you, Your Honor.  I will not spend

23  time on your point about the procedure here.  I want to get to

24  the substance, which is that there's new information that

25  changes the basis for the Court's prior ruling.

Exhibit E
-54-

52

1          **MR. LERNER:**  No, Your Honor.

2          **THE COURT:**  All right.  Thank you.  We're adjourned.

3     **(Proceeding adjourned)**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>September 29, 2021</u>

          Signed                                                                    Dated

*TONI HUDSON, TRANSCRIBER*

# EXHIBIT F
# FILED UNDER SEAL