JOSHUA H. LERNER, SBN 220755
  Joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1 Front, Ste 3500, San Francisco, CA 94111
Tel: 628.235.1000 / Fax: 628.235.1001

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 15** <br><br> Date: October 17, 2022 <br> Time: 1:30 p.m. <br><br> Non-Expert Discovery Cut-Off: Aug. 12, 2022 <br> Pre-Trial Conference: Mar. 13, 2023 <br> Trial: Mar. 27, 2023 |

REDACTED VERSION OF
DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   BRIAN A. ROSENTHAL, *pro hac vice*
        brosenthal@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
3   New York, NY 10166-0193
    Tel.: 212.351.2339 / Fax: 212.817.9539
4
    ILISSA SAMPLIN, SBN 314018
5     isamplin@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
6   333 South Grand Avenue
    Los Angeles, CA 90071-3197
7   Tel.: 213.229.7000 / Fax: 213.229.7520
8   ANGELIQUE KAOUNIS, SBN 209833
      akaounis@gibsondunn.com
9   GIBSON, DUNN & CRUTCHER LLP
    2029 Century Park East Suite 4000
10  Los Angeles, CA 90067
    Tel.: 310.552.8546 / Fax: 310.552.7026
11
    KENNETH G. PARKER, SBN 182911
12    Ken.parker@haynesboone.com
    HAYNES AND BOONE, LLP
13  660 Anton Boulevard Suite 700
    Costa Mesa, CA 92626
14  Tel. 650.949.3014 / Fax: 949.202.3001
15  MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
16  WILMER CUTLER PICKERING
      HALE AND DORR LLP
17  2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
18  Tel.: 650.858.6000 / Fax: 650.858.6100
19  NORA Q.E. PASSAMANECK, *pro hac vice*
      nora.passamaneck@wilmerhale.com
20  WILMER CUTLER PICKERING
      HALE AND DORR LLP
21  1225 Seventeenth St., Suite 2600
    Denver, CO 80202
22  Tel: 720.274.3152 / Fax: 720.273.3133

23

24

25

26

27

28

APPLE'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 15

CASE NO. 8:20-cv-00048-JVS (JDEx)

**TABLE OF CONTENTS**

I.     Introduction ...................................................................................................... 1

II.    Background........................................................................................................ 2

    A.    Plaintiffs Move To Subpoena Rockley In Early April, Without Also Seeking Parallel Discovery From Apple...................................................... 2

    B.    Plaintiffs Serve Discovery Requests On Apple On The Deadline For Written Discovery That Mirror Those In The Rockley Subpoena ............................................................................................................ 4

    C.    The Special Master Issues Order No. 12 On The Rockley Subpoena, Which Expressly Disclaims Any Reliance On Apple's Arguments ........................................................................................................... 4

    D.    The Special Master Grants Plaintiffs' Motion Requiring Apple To Produce A Sweeping Range Of Rockley-Related Information ................. 6

III.    Legal standard.................................................................................................. 8

IV.    Argument ......................................................................................................... 9

    A.    This Court's August 9 Order Precludes Plaintiffs From Raising New Legal Theories About Rockley At This Late Stage ......................... 9

    B.    None Of The Rockley Discovery Requests Is Relevant ......................... 11

    C.    At Minimum, The Rockley Discovery Is Not Proportional To The Needs Of This Case........................................................................................ 14

V.    Conclusion ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
 465 F.3d 946 (9th Cir. 2006) ..............................................................................9

*Bouissey v. Swift Transportation. Co.*,
 2022 WL 3013070 (C.D. Cal. June 21, 2022)................................................. 12

*Corus Realty Holdings v. Zillow Group, Inc.*,
 2020 WL 488545 (W.D. Wash. Jan. 30, 2020)................................................ 9

*Franklin v. United States*,
 2013 WL 11336865 (D.N.M. Aug. 28, 2013) ................................................. 8

*Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*,
 2020 WL 5913898 (C.D. Cal. July 10, 2020) ............................................... 13

*Monte H. Greenawalt Revocable Trust v. Brown*,
 2013 WL 6844760 (D. Nev. Dec. 19, 2013) ................................................... 8

*Motorola Solutions, Inc. v. Hytera Communications Corp.*,
 495 F. Supp. 3d 687 (N.D. Ill. Oct. 19, 2020)............................................... 12

*Rivera v. NIBCO, Inc.*,
 364 F.3d 1057 (9th Cir. 2004) ........................................................................ 13

*Shuckett v. Dialamerica Marketing, Inc.*,
 2018 WL 4350123 (S.D. Cal. Sept. 10, 2018) .............................................. 15

*Vantage Mobility International, LLC v. Kersey Mobility, LLC*,
 2020 WL 3103945 (D. Ariz. June 11, 2020)................................................... 8

*Zakikhani v. Hyundai Motor Co.*,
 2022 WL 2189539 (C.D. Cal. May 12, 2022)................................................ 15

*Zamani v. Carnes*,
 491 F.3d 990 (9th Cir. 2007) ......................................................................... 10

## STATUTES, RULES, AND REGULATIONS

Federal Rule of Civil Procedure 53(f) ....................................................................... 8

Federal Rule of Civil Procedure 26(b)(1) ..................................................................8

APPLE'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 15
iii
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

# I.    INTRODUCTION

Apple objects to Special Master Order No. 15, which requires Apple to produce a wide range of documents and information related to non-party Rockley Photonics ("Rockley").[1]

Last month, this Court rejected Plaintiffs' attempt to introduce, after the deadline for written discovery, a new legal theory regarding Rockley's alleged involvement in this case—i.e., that Apple "exerted control over the *True Wearables* litigation … through a proxy, Rockley Photonics."  *See* Dkt. 896 at 2, 4-6.  This Court explained that by raising this theory for the first time in a motion to enforce a subpoena against Rockley— which was filed "[f]ollowing the written discovery cut-off"—Plaintiffs "introduced this theory too late under any standard."  *Id.* at 5.  And yet, three days after this Court's ruling and three hours before the cut-off for fact discovery, Plaintiffs filed a motion to compel discovery into Rockley, primarily on an alternate legal theory that was also already raised for the first time in Plaintiffs' motion to enforce the subpoena against Rockley: Rockley was collaborating with Apple to jointly misappropriate Plaintiffs' trade secrets. Dkt. 908-3 at 3-4.  Plaintiffs' motion to compel to the Special Master did not so much as mention this Court's ruling.

The Special Master's ruling granting Plaintiffs' eleventh-hour motion was error for three reasons.  *First*, it was barred by this Court's August 9, 2022 ruling.  While that ruling specifically addressed collateral estoppel, its reasoning applies with equal force here, given Plaintiffs are making the same attempt to "advance different legal theories and require proof of different facts" "after the written-discovery cut-off."  Dkt. 896 at 6. The Special Master's alternative theory of relevance—namely, that the requested information is "at least marginally relevant" because the technology in this case "relates" in some unspecified way to what Rockley supplied to Apple—suffers from the same

---

[1] This brief does not redact Rockley's name in light of this Court's ruling granting Apple's *ex parte* application for a stay, which expressly mentions Rockley by name. *See* Dkt. 914.

Wilmer Cutler
Pickering Hale
and Dorr LLP

problem in that Rockley was not mentioned in any way in any briefing in this case before the written-discovery cut-off.

*Second*, even if the August 9 order does not control, the Special Master's theory of "relate[dness]" and "marginal[] relevan[ce]" is flawed.  This theory could support invasive, expansive discovery into numerous Apple vendors where no basis exists to support a misappropriation claim.  That is the circumstance here.  Not one of the twenty-four Apple witnesses deposed by Plaintiffs have identified any connection between Rockley's technology and this litigation, and an Apple executive and 30(b)(6) witness testified that the technology █████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

*Third*, at a minimum, Plaintiffs' discovery requests are not proportional to the needs of the case.  Plaintiffs are attempting to begin litigating a new case within a case, but not only have Plaintiffs failed to provide any credible explanation for why they could not have moved for this discovery at an earlier stage, but Apple has already produced voluminous discovery on its technology, and Rockley has confirmed that it has no documents responsive to all but one of Plaintiffs' parallel requests.  Plaintiffs' broad requests, including Plaintiffs' request for a detailed description of "Apple's relationship or collaboration with Rockley related to noninvasive physiological measurements" (not even tailored to the type of *light-based* noninvasive physiological measurements that have been at the heart of this case), go far beyond Plaintiffs' needs in this case, and should be rejected.

## II.    BACKGROUND

### A.    Plaintiffs Move To Subpoena Rockley In Early April, Without Also Seeking Parallel Discovery From Apple

On April 7, 2022, Plaintiffs served a subpoena on Rockley that included 37 requests for documents (later narrowed to 22).  Ex. 9; *see also* Ex. 3 at 2-3.  On May 24,

2022—nearly two weeks after the close of written discovery—Plaintiffs filed a motion with the Special Master seeking to compel compliance with the subpoena.  In explaining relevance, Plaintiffs' motion raised two new legal theories for the first time in this case: (1) Apple was using Rockley as a proxy to control the defendant in the *True Wearables* trade secret litigation and (2) Apple was acquiring Plaintiffs' trade secrets via Rockley. Ex. 3 at 2-3.

On May 25, Rockley moved to quash the subpoena, but did not challenge the relevance of the subset of requests that it characterized as "regarding Rockley's business and communications with Apple."   Ex. 11 at 3-4.   Rockley later submitted a supplemental brief stating that "[i]n an effort to bring Masimo's abusive behavior to an end," it had "searched its files and confirm[ed] that it does not have documents responsive to Masimo's subpoena, except for Request No. 4." Ex. 12 at 2.[2]

As Plaintiffs and Rockley were briefing their competing motions regarding the subpoena, Apple submitted a one-page letter on June 6, 2022 that, as relevant here, brought two points to the Special Master's attention. Ex. 13 at 1.  First, the operative complaint does not mention Rockley, much less suggest that Rockley's technology is relevant or that Rockley and Apple were working together to defraud Plaintiffs.  *Id.* Second, Plaintiffs' briefing (again, filed after the close of written discovery) identified nothing suggesting that Apple and Rockley have any connection beyond Rockley serving as one of Apple's (many) vendors.  *Id.*  When Plaintiffs filed an opposition to Apple's letter, Apple lodged a one-page reply, observing that Plaintiffs were leveling "outrageous accusations" against Apple's vendor "that had previously been wholly uninvolved in this litigation—apparently in an effort to lay the groundwork for future motion practice on their related discovery requests to Apple." Ex. 14 at 1.

---

[2] Request No. 4, as narrowed, calls for "documents sufficient to show the technology, hardware, software, or components provided by Rockley to Apple (or vice versa) related to non-invasive physiological monitoring using light," including various physiological parameters.  Ex. 20.

**B.     Plaintiffs Serve Discovery Requests On Apple On The Deadline For Written Discovery That Mirror Those In The Rockley Subpoena**

On May 13, 2022—the deadline to serve written discovery—Plaintiffs served fifteen RFPs and two interrogatories on Apple relating to Rockley, including the four at issue here.  Ex. 4 at 9-12; Ex. 6 at 8-9.[3]  Many of those discovery requests, including each of those discovery requests that Plaintiffs raised in the briefing below Plaintiffs later compelled—mirror one of the original 37 requests in the Rockley subpoena.  Ex. 8.

Apple timely responded on June 15, 2022, lodging objections on the grounds that, *inter alia*, the discovery requests were irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case.  *See* Ex. 15 at 28-41; Ex. 16 at 15-17.  In a letter sent on June 27, Apple further explained the basis for its objections: "[W]e are not aware of any connection between Rockley and any allegations that Plaintiffs have made in this action, and Plaintiffs have identified none."   Ex. 5 at 1; *accord* Ex. 7 at 1 ("Plaintiffs have failed to tie Rockley to any allegations in this action.").  Accordingly, the discovery requests "appear to be simply a fishing expedition by Plaintiffs, and in no way proportional to the needs of the case."  Ex. 5 at 1; *accord* Ex. 7 at 1.  Plaintiffs never responded.

**C.     The Special Master Issues Order No. 12 On The Rockley Subpoena, Which Expressly Disclaims Any Reliance On Apple's Arguments**

On July 15, 2022, the Special Master issued Order No. 12, which resolved Plaintiffs' and Rockley's cross-motions on the subpoena.  The Special Master held that 19 out of the 22 requests were at best relevant to Plaintiffs' "offensive, non-party issue preclusion theory," which "turns on an issue that is best decided by Judge Selna in the first instance."  Dkt. 893 at 8; *see also infra* p. 9.

---

[3] Plaintiffs served a total of 113 RFPs and 10 interrogatories on Apple that same day. Passamaneck Decl. ¶ 7.

As to the remaining three requests—Nos. 4, 15, and 17 (i.e., those that turned on Plaintiffs' joint misappropriation theory)—the Special Master concluded that Rockley "*has not*—and could not reasonably have argued that the information sought … is irrelevant to the issues in dispute in this case." Dkt. 893 at 11 (emphasis added). Although the Special Master observed that "undue burden, overbreadth, and lack of proportionality permeate many of the requests," the Special Master ordered Rockley to submit declarations attesting that it had no documents that satisfied Requests Nos. 15 and 17 in light of its "stated willingness at the hearing to submit such declarations." *Id.* at 10, 11.  Rockley complied with the order and submitted a sworn declaration to that effect.  Ex. 23.[4]  The Special Master also ordered Rockley to produce documents responsive to Request No. 4 because Rockley "has not otherwise argued any specific burden that would be caused by being asked to identify and produce these documents," albeit "with the understanding that Rockley need not produce documents and things that Rockley reasonably believes Apple also has access to."  Dkt. 893 at 11-12.

Because Plaintiffs belatedly objected to Apple's two one-page letters, the Special Master stated that "the determinations reached in this ruling do not rely on the arguments presented by Apple, making any … objection moot." Dkt. 893 at 6.[5]  However, the Special Master "question[ed] why Plaintiffs are currently seeking discovery from non-party Rockley rather than beginning with discovery requests on these topics to Defendant Apple."  *Id.* at 8.  In particular, "Plaintiffs did not specifically explain the

---

[4] Request No. 15 asks for "[d]ocuments regarding Apple that refer or relate to any instruction to any Rockley employee not to disclose that they work for Rockley in connection with testimony given in any action relating to" Plaintiffs, True Wearables, or Lamego.  Ex. 9.  Request No. 17 asks for documents regarding Apple that involve efforts by Apple/Rockley to recruit/hire Plaintiffs' former employees.  *Id.*

[5] Plaintiffs' suggestion that Apple could have appealed Order No. 12, Dkt. 912-1 at 4, is thus false.  Plaintiffs' objection to even Apple's very limited participation (two one-page letters) and their strategic decision to wait months before moving to compel Apple's production of similar discovery deprived Apple of the opportunity to do so.

reason for the delay in serving discovery on Apple compared to serving the subpoena on Rockley." *Id.*

### D. The Special Master Grants Plaintiffs' Motion Requiring Apple To Produce A Sweeping Range Of Rockley-Related Information

On August 12, 2022, three hours before the close of fact discovery, Plaintiffs moved to compel production of documents and information related to nine Rockley-related discovery requests served on Apple. Dkt. 909-4. Plaintiffs' motion made no mention of this Court's order issued just three days earlier, which had refused to "endorse Masimo's strategy" of introducing a new argument regarding Rockley "at this late hour when Apple effectively has not opportunity to take its own discovery potentially demonstrating that the theory cannot apply here." Dkt. 896 at 5.

The Special Master denied Plaintiffs' motion to compel in part and granted in part as to four requests. *See* Dkt. 915. The Special Master ordered Apple to produce:

- "All agreements or contracts between Rockley and Apple" (RFP No. 682);
- "Documents regarding technology hardware, software, or components provided by Rockley to Apple (or vice versa) related to non-invasive physiological monitoring using light, including pulse rate, oxygen saturation, perfusion index, total hemoglobin, oxygen content, pleth variability index, methemoglobin, carboxyhemoglobin, respiration rate from the pleth, or blood glucose" (RFP No. 683);
- "Documents regarding, or communications with, Rockley that refer or relate to any effort (by Apple or Rockley) to recruit or hire individuals who at any time worked for Masimo or Cercacor" (RFP No. 691); and
- Information "[d]escrib[ing] in detail Apple's relationship or collaboration with Rockley related to noninvasive physiological measurements, including: Rockley's technology, hardware, software, or components provided or used by Apple; Apple's technology, hardware, software, or components provided or

used by Rockley; joint efforts to develop, modify, change, or test technology, hardware, software, or components; agreements or suggestions to share technology, hardware, software, or components; actual or contemplated payments or conveyances of other things or services of value" (Interrogatory No. 28).

While the Special Master "defer[red] to [this Court] to determine whether Plaintiffs can maintain" a theory that Rockley was a joint-misappropriator in light of the August 9 ruling, the Special Master stated that "the information sought in [the four live requests] relates to the technology at issue in Plaintiffs' trade secret misappropriation claims, and is at least marginally relevant for that reason." Dkt. 915 at 11.  Specifically:

- RFP No. 682 (which seeks "all agreements or contracts between Rockley and Apple") was granted "because of the possible relevance of the information sought to damages in this case." *Id.* at 8.

- RFP No. 683 (which seeks documents regarding certain technology "provided by Rockley to Apple (or vice versa)") was granted because "sufficient basis supports the relevance of the information sought to Plaintiffs' trade secret misappropriation claims in this case, including as to Apple Watch prototypes." *Id.*

- RFP No. 691 (which seeks documents or communications with Rockley that refer to any Apple/Rockley efforts to recruit or hire Masimo or Cercacor employees) was granted without explanation.  *Id.* at 9.

- Interrogatory No. 28 (which asks for a detailed description of "Apple's relationship or collaboration with Rockley related to non-invasive physiological measurements") was granted on the basis that "Interrogatory No. 28 is sufficiently tailored and proportional to the needs of this case."  *Id.* at 10. The Special Master rejected Apple's proposal to limit the interrogatory to "light-based non-invasive physiological measurements."  *Id.*

Beyond the Special Master's passing statement that Interrogatory No. 28 was "proportional" to the needs of the case, the Special Master did not directly address Apple's proportionality arguments.  *See, e.g.*, Dkt. 915 at 10-11 (dismissing fact that Apple had produced voluminous discovery regarding its technology because this argument failed to address Plaintiffs' "relevance" arguments).

The Special Master's order set a seven-day deadline for the production of the Rockley discovery materials.  Dkt. 915 at 11.  Apple filed a timely stay request with the Special Master on Friday, September 9 (the day after the order issued), and an *ex parte* request for a stay with this Court on Monday, September 12 after learning that the Special Master was unavailable.  *See* Dkt. 909 at 4.  This Court granted the request on September 15.  Dkt. 914.

### III.   LEGAL STANDARD

Under this Court's order appointing the Special Master, this Court reviews *de novo* all objections to findings of fact and conclusions of law.  *See* Dkt. 470 at 4; *accord* Fed. R. Civ. P. 53(f)(3)-(4).

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  The "claim or defense" language was added in 2000 in order to ensure that "discovery would no longer be used to troll for new claims or causes of action, but that the requested discovery was relevant to the specific claims and defenses before the court."  *Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, 2020 WL 3103945, at *3 (D. Ariz. June 11, 2020) (quoting *Franklin v. United States*, 2013 WL 11336865, at *2 (D.N.M. Aug. 28, 2013)); *see also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, at *3 (D. Nev. Dec. 19, 2013) ("This prevents litigants from engaging in 'fishing expeditions' that may expose the defendant to claims not previously asserted in the plaintiff's complaint.").  Moreover, as this Court has explained, the parties should not be permitted to "introduce different legal theories and

require proof of different facts at this stage in the litigation," "especially" when doing so would prejudice the non-moving party by depriving it of the opportunity to seek reciprocal discovery.  Dkt. 896 at 6.

In determining proportionality, courts "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

## IV.   ARGUMENT

### A.   This Court's August 9 Order Precludes Plaintiffs From Raising New Legal Theories About Rockley At This Late Stage

Although this Court's August 9 Order addressed only Plaintiffs' collateral estoppel theory of relevance in seeking Rockley-related discovery, its reasoning was not limited to that context.  Rather, this Court relied on the general principle that a party should not be permitted to "advance different legal theories and require proof of different facts" at a late stage, where the non-moving party would be prejudiced.  Dkt. 896 at 6; *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *accord Corus Realty Holdings v. Zillow Grp. Inc.*, 2020 WL 488545, at *9 (W.D. Wash. Jan. 30, 2020) (excluding new infringement arguments where patentee "deprived [defendant] of any realistic ability to conduct discovery on [patentee's] new theories").

Since Plaintiffs first sought discovery from Rockley—more than 26 months after this case was filed—they primarily relied on two theories of relevance:  the collateral estoppel theory that is explicitly barred by the August 9 Order and the joint misappropriation theory.  *Supra* pp. 3-4.  As with their collateral estoppel theory, Plaintiffs did not present their joint-misappropriation theory "until [they] asked the Special Master to intervene on its behalf after the written-discovery cut-off." Dkt. 896 at 5-6.  And likewise, this delay prejudiced Apple by preventing it from seeking

reciprocal discovery (e.g., "documents Plaintiffs have connecting … Apple to Rockley" or "which of Plaintiffs' former employees went to work at … Rockley"), *see id.*  All the Rockley-related discovery should therefore be barred.

The Special Master's ruling adopted a new theory of "marginal[] relevan[ce]"— i.e., that Rockley supplied Apple with unspecified "similar technology" that "relates to" that at issue in this case.  Dkt. 915 at 11.  Plaintiffs did not properly preserve this argument, which was first raised in their August 26, 2022 reply brief with regards to a single discovery request at issue here (RFP No. 682).  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *see also* Ex. 21 at 3.  In any event, if anything, the "similar technology" argument creates even greater problems under this Court's August 9 order than the "joint misappropriator" argument, as it was raised for the first time two weeks after the *close* of fact discovery (as opposed to after the deadline for written discovery).

Plaintiffs have also argued that ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Dkt. 911-3 at 55:12-56:8; *see also* Dkt. 911 at 1.  But Rockley's purported connection to True Wearables says nothing about its ties to Apple except under the collateral estoppel theory that this Court has already held Plaintiffs cannot pursue.  *See* Dkt. 896 at 2, 6 (holding that Rockley could not raise a theory under which "Apple exerted control over the *True Wearables* litigation … through a proxy, Rockley Photonics").  And Plaintiffs were aware of Rockley's status as a supplier of technology to Apple months ago, as Apple subpoenaed several Rockley employees and deposed one of them in the parallel ITC proceeding.  *See* Ex. 12 at 2.  In any event, the Rockley employees testified at the *True Wearables* trial on March 19, 2022.  *See* Dkt. 912-2 at 25 (dated transcript).  Plaintiffs provide no clear reason why they waited nearly two months *after* the relevant testimony to serve their discovery

requests on Apple, much less why they waited three months more to file their motion to compel.

Finally, Plaintiffs have baselessly argued that Apple and Rockley "coordinated" and "orchestrated" a delay in the production of discovery, Dkt. 911-1 at 7, relying solely on the fact that Rockley argued that Plaintiffs should seek documents directly from Apple, *id.*; *see also id.* 1, 5. This is both misleading and entirely a problem of Plaintiffs' own making. As to the former, Rockley informed the Special Master that it did not have 21 of 22 categories of documents that Plaintiffs sought. Ex. 12 at 4. As to the latter, Plaintiffs created the delay by seeking discovery from Rockley long before they sought discovery from Apple. Had they served their discovery on Apple on the same day as— or even before—they sought discovery from Rockley, all these disputes could have been resolved together. Instead, Plaintiffs strategically chose to wait.

**B.    None Of The Rockley Discovery Requests Is Relevant**

The Special Master also erred in finding the four discovery requests to be relevant (or, more precisely, "marginally relevant"). Specifically, the Special Master found relevance because Rockley produces "similar technology" to that at issue in this litigation. Dkt. 915 at 10-11. Plaintiffs have identified nothing in the record that supports this theory. To the contrary, they elicited testimony from Apple's Vice President of Hardware Technologies that ██████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Ex. 17 at 196-197, 199.[6]

---

[6] Plaintiffs' *ex parte* opposition accused Apple of "cit[ing] its own brief as support" for this point. Dkt. 911-1 at 4. To be clear, Apple's brief in front of the Special Master quoted the testimony above. Dkt. 909-5 at 4. To remove any doubt, Apple cites directly to the deposition testimony that Plaintiffs' counsel elicited.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Tellingly, Plaintiffs' only support for the "similar technology" point was 

4    Dkt. 911-3 at 35:1-14; Ex. 21 at 3 (citing only Apple

5    witness's testimony that

9    *See* Dkt. 911-3 at 36:18-38:13, 39:1-17.   But that gets the analysis precisely

10   backwards.   The moving party has the burden to show relevance, *Bouissey v. Swift*

11   *Transp. Co.*, 2022 WL 3013070, at *2 (C.D. Cal. June 21, 2022), and Plaintiffs have had

12   myriad opportunities to establish that Rockley's technology is connected to this case.

13   That they have failed to do so—even after taking 24 depositions of Apple employees—

14   is ample proof that they cannot.

15   Indeed, if Plaintiffs are permitted to rely solely on attorney speculation to establish

16   Rockley's relevance, a trade secret case plaintiff would be free to seek invasive

17   discovery into any supplier of the defendant, regardless of how attenuated the supplied

18   component is from the technology at issue.   That cannot be right.   *See Motorola Sols.,*

19   *Inc. v. Hytera Comms. Corp.*, 495 F. Supp. 3d 687, 703 (N.D. Ill. Oct. 19, 2020)

20   ("whether other companies implemented similar technologies [to plaintiff's] was not

21   relevant to whether [defendant] stole and implemented [plaintiff]'s [trade secrets]").

22   In opposing Apple's *ex parte* request for a stay, Plaintiffs raised a number of

23   meritless relevance arguments.   *See* Dkt. 911-1 at 3-4.   *First*, Plaintiffs contend that "the

24   specifics of Apple's agreement to license or purchase Rockley" technology is relevant

25   to the reasonable royalty in this case.   *Id.* at 3.   But as explained, Plaintiffs have not

26   pointed to evidence that the Rockley technology is similar to what is at issue in this

27   lawsuit and the evidence that does exist suggests it is not.   *Supra* pp. 11-12.   In any event,

28

this rationale would only clearly apply to one of the discovery requests at issue (RFP No. 682).

*Second*, Plaintiffs argue that the requested discovery could show that Apple conspired with Rockley to misappropriate Plaintiffs' trade secrets (or to recruit Plaintiffs' former employees to do so). Dkt. 911-1 at 3. But even the Special Master declined to adopt this joint-misappropriation theory, and for good reason—it was raised at the same time as the collateral estoppel theory and thus is barred under the August 9 ruling. *See supra* pp. 7, 9-10. And again, Plaintiffs do not identify even the thinnest factual basis for this assertion. Indeed, Rockley has stated that it has *no* documents on, *inter alia*, "any effort (by Apple or Rockley) to recruit or hire individuals who at any time worked for Masimo or Cercacor" (narrowed Request No. 17) or "Rockley's relationship, collaboration, or coordination with Apple relating to … Masimo[] or Cercacor" (narrowed Request No. 1), *supra* p. 11, strongly indicating that such documents do not exist. This Court need not—and should not—"condone the use of discovery to engage in [a] fishing expedition[]." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004); *see also Hope Med. Enterprises, Inc. v. Fagron Compounding Servs., LLC*, 2020 WL 5913898, at *6 (C.D. Cal. July 10, 2020) (declining to compel response where moving party's relevance argument was "purely speculative and not relevant to any claim or defense").

*Finally*, Plaintiffs argue that the requested information must not be "wholly irrelevant" because Apple would otherwise have simply produced it. Dkt. 911-1 at 4. If taken seriously, that logic would mean that by opposing a motion to compel, the non-moving party would be conceding relevance. It ignores that litigants have no obligation to produce irrelevant documents and may have numerous legitimate reasons not to do so. Here, for example, Apple has no desire to unnecessarily hand over to Plaintiffs' counsel, or anyone else, sensitive information about Apple's business and technology that have no connection to this case. That Plaintiffs consider themselves to be a

competitor of Apple's only compounds the concern.  In addition, Apple has important reputational interests at stake—it does not want to even implicitly credit Plaintiffs' outrageous accusations that Apple and its supplier conspired to manipulate the *True Wearables* trial and/or steal Plaintiffs' trade secrets.

### C.     At Minimum, The Rockley Discovery Is Not Proportional To The Needs Of This Case

Even assuming that the Special Master was right that the requested discovery is "marginally relevant," Dkt. 915 at 11, it should be rejected because it is not proportional to the needs of the case for three reasons.

*First*, Plaintiffs have already received substantial discovery on the same basic issues.   For example, Apple has produced technical documents (and related communications) in response to multiple RFPs previously served by Plaintiffs, some of which concern various physiological parameters listed in RFP No. 683, including RFP Nos. 56, 66, 82, 234, 331, 351, 355, 368, 403-406, 417-419, and 532.   Rockley has searched its files and found no documents to 21 out of the 22 topics covered by Plaintiffs' subpoena.  *Supra* p. 11.[7]  And Apple has responded to Plaintiffs' discovery requests about Apple's communications with Rockley regarding this case, explaining that ███████  ████████████████████████████████████████████████████████████ *See* Ex. 16 at 17.

*Second*, Plaintiffs' requests are overbroad.   Perhaps the best example is Interrogatory No. 28, which requests "detail[ed]" information about "Apple's relationship or collaboration with Rockley related to non-invasive physiological measurements." Dkt. 915 at 10.  As Apple explained to the Special Master, ████████ ████████████████████████████████████████████████████████████

---

[7] Notably, Rockley submitted a sworn declaration that it had no responsive documents to Topic No. 17, which mirrors (and indeed appears to be even broader than) RFP No. 691 (i.e., documents "regarding" Apple's efforts to hire Plaintiffs' employees).  *See* Ex. 23 at 2; Ex. 4 at 9.  Plaintiffs have identified no real-world scenario where Rockley would have *no* documents on that topic but Apple would.

1  █████████████████████████████████████████████████████

2  ████████████   Dkt. 911-3 at 49:8-15 (emphasis added).  This distinction matters

3  because the term "noninvasive physiological measurements" standing alone is

4  incredibly broad, and could—for example—include ████████████████████

5  ████████████████████████████████████████████████ *Id.* at

6  49:16-20.  Because Interrogatory No. 28 is written using such a broad and vague term,

7  its "overbreadth [and] lack of proportionality [is] apparent from the face of" the request.

8  *Zakikhani v. Hyundai Motor Co.*, 2022 WL 2189539, at *3 (C.D. Cal. May 12, 2022).[8]

9    *Finally*, it is simply too late in the day for Plaintiffs to add yet another legal

10  theory—which amounts to an allegation of misappropriation by a non-party—into this

11  complex and long-running litigation.  Even after taking 24 depositions of Apple

12  witnesses and receiving discovery on related topics, *see supra* pp. 11-14, Plaintiffs are

13  still unable to identify anything more than a contrived, conspiratorial relationship

14  between Apple and Rockley.  Such a speculative, "eve of the close of discovery"

15  motion should not be permitted to derail the case's "firm track to trial."  Dkt. 816 at 10

16  n.6.  In short, as this Court instructed in the August 9 ruling, Apple should not be

17  required "to scramble" to prepare new arguments and defenses months after the close

18  of written discovery and with trial looming.  Dkt. 896 at 6.

## V.  CONCLUSION

20    For the foregoing reasons, Apple respectfully requests that the Court sustain

21  Apple's objections to the Special Master's Discovery Order No. 15.

---

27  [8] Similarly, RFP No. 682 seeks "all agreements or contracts" without any "temporal or other reasonable limitation." *Shuckett v. Dialamerica Mktg., Inc.*, 2018 WL 4350123, at *5 (S.D. Cal. Sept. 10, 2018).

1   Dated: September 19, 2022          Respectfully submitted,

2

3                                      H. MARK LYON
                                       BRIAN M. BUROKER
4                                      BRIAN A. ROSENTHAL
                                       ILISSA SAMPLIN
5                                      ANGELIQUE KAOUNIS
                                       GIBSON, DUNN & CRUTCHER LLP
6

7                                      KENNETH G. PARKER
                                       HAYNES AND BOONE, LLP
8

9                                      MARK D. SELWYN
                                       JOSHUA H. LERNER
10                                     NORA Q.E. PASSAMANECK
                                       WILMER CUTLER PICKERING HALE AND
11                                     DORR LLP

12

13

14                                     By:  */s/ Mark D. Selwyn*
                                            Mark D. Selwyn
15

16                                     *Attorneys for Defendant Apple Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S OBJECTIONS TO SPECIAL MASTER ORDER NO. 15

16                                     CASE NO. 8:20-cv-00048-JVS (JDEx)