JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1 Front Street, Ste. 3500
San Francisco, CA 94111
Tel.: 628.235.1124 / Fax: 628.235.1001

H. MARK LYON, SBN 162061
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF ITS OBJECTIONS TO SPECIAL MASTER ORDER NO. 15**<br><br>Date: October 17, 2022<br>Time: 1:30 p.m.<br><br>Non-Expert Discovery Cut-Off: Aug. 12, 2022<br>Pre-Trial Conference: Mar. 13, 2023<br>Trial: Mar. 27, 2023 |

REDACTED VERSION OF
DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 1
II. ARGUMENT ............................................................................................... 2
    A. The Rockley Discovery Is Barred By The August 9 Order ....................... 2
    B. The Rockley Discovery Is Irrelevant ......................................................... 4
    C. The Rockley Discovery Is Not Proportional .............................................. 9
III. CONCLUSION .......................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
    465 F.3d 946 (9th Cir. 2006) ............................................................................. 4

*Bryant v. Mattel, Inc.*,
    2007 WL 5432959 (C.D. Cal. Apr. 19, 2007) .................................................... 5

*Corus Realty Holdings, Inc. v. Zillow Group Inc.*,
    2020 WL 488545 (W.D. Wash. Jan. 30, 2020) .................................................. 4

*Utah Med. Prods, Inc. v. Graphic Controls Corp.*,
    350 F.3d 1376 (Fed. Cir. 2003) .......................................................................... 8

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) ........................................................................ 5, 9

*Zakikhani v. Hyundai Motor Co.*,
    2022 WL 2189539 (C.D. Cal. May 12, 2022) ................................................... 9

I.  **INTRODUCTION**

Plaintiffs' opposition brief misstates the facts and mischaracterizes Apple's position.

As to the facts, Plaintiffs' allegation (Opp. 10) that Apple " ███████████ ███████████████████████████████████████████████ is untrue. Plaintiffs' only evidence for this assertion is a single slideshow depicting ████████ ███████████████████████████████████████████████████████████ ██████████████████████████████ *See* Dkt. 919 at 30, 35. As explained in a sworn declaration, ███████████████████████████████████████ ███████████████████████████████████████████████████████ Dkt. 922-19 at 1. Indeed, despite deposing 25 Apple employees (including on the same slideshow cited in the opposition), Plaintiffs have not identified a single connection between Rockley and this case. *See, e.g.*, Dkt. 932-15 at 122-124, 134-135 ████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████

As to Apple's position, Plaintiffs are incorrect (Opp. 1) that Apple's position depends on this Court finding that the Special Master "overlooked" this Court's August 9 Order barring Plaintiffs from raising new legal theories after the close of written discovery. The Special Master rightly declined to adopt Plaintiffs' new joint-misappropriation theory of relevance in light of that order. *See* Mot. 13. The problem is that the Special Master did not go far enough, as he still compelled discovery on a different (but also new) theory of relevance—i.e., that Rockley allegedly produces "similar technology" to what is at issue in this litigation.

In sum, Plaintiffs' requested discovery is barred by the August 9 Order (because it seeks evidence to support a new legal theory), does not seek relevant evidence (because Plaintiffs have not met their burden to link Rockley to this case), and is not proportional to needs of the litigation (because of the eleventh-hour nature of Plaintiffs'

requests and the fact that Apple has already produced overlapping discovery). Rather, Plaintiffs' requests appear to be yet another last-ditch effort to expand their already far-fetched allegations, presumably because they have failed to uncover evidence supporting their original theory of the case.

## II. ARGUMENT

### A. The Rockley Discovery Is Barred By The August 9 Order

As explained, this Court's August 9 Order rested on the principle that a party should not be permitted to "advance different legal theories and require proof of different facts" after the close of written discovery. Mot. 9. Plaintiffs do not dispute that both the Special Master's theory of relevance (that the Rockley technology is "similar" to that at issue in this case) and Plaintiffs' theory (that Rockley employees are covertly passing Plaintiffs' trade secrets to Apple) were raised for the first time after the close of written discovery.[1] Accordingly, the Special Master erred by granting their motion to compel. Plaintiffs' arguments to the contrary are meritless.

*First*, Plaintiffs contend that the August 9 Order only bars them from seeking further discovery related to a collateral estoppel theory. Opp. 1, 11. To the contrary, this Court declined to rely on a collateral-estoppel specific rule of law; it held that the collateral estoppel theory was raised too late "under any standard." Dkt. 896 at 5; *see also* Mot. 9 (making this point).

*Second*, Plaintiffs quibble (Opp. 11) with Apple's use of the term "joint misappropriation" as a shorthand to describe their theory that "former Masimo employees at Rockley … discussed and implemented the trade secrets at issue in this case" and/or that "Apple and Rockley coordinated on recruiting Masimo employees to obtain Masimo's trade secrets." *See* Dkt. 911-1 at 3, *cited in* Mot. 13; *see also* Opp. 9 (raising the same basic theory). Regardless of the precise language used to describe this

---

[1] Plaintiffs also do not seriously dispute that they failed to mention the August 9 Order in their motion to compel. While their motion included a single reference to the "non-party issue preclusion" theory, it was quoting Special Master Order No. 12, which issued on July 15, 2022. *Compare* Opp. 5 *with* Dkt. 909-4 at 1.

theory, however, Plaintiffs do not dispute that they did not disclose it in a brief prior to the close of written discovery.

*Third*, Plaintiffs argue (for the first time) that their Rockley theories need not have been raised at an earlier stage because they are subsumed within Plaintiffs' general allegation that "Apple obtained access to [Plaintiffs'] trade secrets through [Plaintiffs'] former employees and should pay damages." Opp. 1. But this Court rejected precisely this type of argument in the August 9 Order, when it turned down Plaintiffs' suggestion that they were not required to put Apple on notice about their collateral estoppel theory because it merely "support[ed] Masimo's [existing] claim for trade secret misappropriation." Dkt. 896 at 5-6; *see also* Dkt. 868 at 6 (Plaintiffs' collateral estoppel brief arguing that because "Masimo pled a claim for trade secret misappropriation … Masimo properly seeks discovery regarding facts that may support its misappropriation claims").[2]

Importantly, this Court refused to accept Plaintiffs' no-notice "strategy" because it meant that Apple "effectively has no opportunity to take its own discovery potentially demonstrating that the theory cannot apply here." Dkt. 896 at 5. The same problem exists with Plaintiffs' new Rockley theories: Apple has had no opportunity to seek discovery on any documents that Plaintiffs have that, for example, (1) connect Apple to Rockley or (2) identify which of Plaintiffs' former employees went to work at Rockley. Mot. 9-10.

Plaintiffs' primary response (Opp. 12-13)—that Apple should be able to figure out this information on its own without the opportunity for discovery—is both wrong and misses the point. If Plaintiffs are sitting on information that they believe shows Rockley has a bona fide connection to this suit, Apple should have had the opportunity

---

[2] Tellingly, Plaintiffs did not limit the discovery requests at issue here to work done by former Masimo employees while working at Rockley. Rather, they seek agreements "between Rockley and Apple," information/documents regarding technology "provided by Rockley to Apple (or vice versa)" and documents/communications regarding certain "Apple or Rockley" hiring decisions. *See* Mot. 6-7.

to review that information to prepare its defense (and, if necessary, gather information to rebut it). And if Plaintiffs are aware of specific ex-employees who now work at Rockley and could have supplied Apple with those names, Apple could have used that information to review its own communications with Rockley and establish that none of those employees communicated directly with Apple.

Plaintiffs' related argument (Opp. 12-13) that they have already voluntarily provided some information about Rockley to Apple is a red herring. That Plaintiffs attached a handful of documents as exhibits to their motion to enforce the Rockley subpoena—all of which appear to be publicly available—is hardly a substitute for the information (or confirmation regarding the lack of information) that Apple could have received in discovery.[3] In any event, these documents and the motion to enforce the Rockley subpoena were filed after the close of written fact discovery, leaving Apple without the ability to investigate further through targeted interrogatories or RFPs.

*Finally*, Plaintiffs attempt to distinguish *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006), and *Corus Realty Holdings, Inc. v. Zillow Group Inc.*, 2020 WL 488545, at *5-9 (W.D. Wash. Jan. 30, 2020), on their facts. Opp. 12. But this misses the point—the Court cited both cases for the basic legal proposition that a party should not be permitted to "advance different legal theories and require proof of different facts" at a late stage in the litigation. Dkt. 896 at 6. Indeed, Plaintiffs do not seem to take issue with that statement of law. *See* Opp. 12 (agreeing that *Amerisource* and *Corus* would be on-point if Plaintiffs' motion to compel raised a "new legal theory").

### B.  The Rockley Discovery Is Irrelevant

As explained, even if the Rockley discovery was not barred by the August 9 Order, Plaintiffs have not met their burden to show that any request is relevant. Mot. 11-14.

---

[3] In particular, Plaintiffs' assertion (Opp. 13) that Apple should be able to identify all of Plaintiffs' former employees who now work at Rockley (because (1) a small handful of Rockley employees testified at the *True Wearables* trial and (2) Apple has previously been in communications with True Wearables) fails the straight face test.

The only theory of relevance that the Special Master adopted was that Rockley manufactures "similar technology" to the Apple Watch models at issue in this suit. Mot. 11-12. But this theory is based solely on attorney argument and lacks any basis in the record or reality.

*First*, Plaintiffs contend that they cannot be faulted for failing to provide evidence to support their conspiracy theory that Apple has lied to them and this Court regarding whether it uses Rockley's technology in Apple Watch. Opp. 10. Of course they can. The Ninth Circuit has instructed that courts should not "condone the use of discovery to engage in fishing expeditions where … it is obvious that [the moving party] has no basis other than gross speculation to claim that the" other side is "misrepresenting" information. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (quotation marks and citation omitted); *see also Bryant v. Mattel, Inc.*, 2007 WL 5432959, at *3 (C.D. Cal. Apr. 19, 2007) (noting, where moving party sought discovery on a line of toys not mentioned in the complaint, that courts should not allow "[f]ishing expeditions to discover new claims").

*Second*, Plaintiffs wrongly claim that they have "presented evidence" that the technology Rockley provides Apple is similar to—and is in fact used in—Apple Watch. Opp. 10. After nearly three years of litigation and 25 depositions, Plaintiffs rely on just five documents, none of which shows anything more than that Rockley is an Apple vendor and also happens to sell wearable monitoring devices (albeit to hospitals and in partnership with a company other than Apple).[4] Specifically:

- SEC Form: Plaintiffs cite (Opp. 2-3, 7) Rockley's 2021 SEC Form 10-K, which speaks generally about Rockley's business without tying any specific products to any specific company. *See* Dkt. 930-2 at 10; *see also* Rockley

---

[4] Although Plaintiffs complain that the Pattabhiraman declaration is new evidence on appeal, *see infra* p. 8, three of the five documents that they rely on were not exhibits to their motion to compel and were not discussed below. Rather, they were exhibits to Plaintiffs' motion to enforce the Rockley subpoena—a proceeding that Plaintiffs' ensured Apple was not permitted to participate in. *See* Mot. 5 & n.5.

2021 SEC Form 10-K at 51, *available at* tinyurl.com/37evxer5 (noting Rockley has relationships "with six of the world's top-ten largest manufacturers of smart watches and wristbands"). The 10-K form also acknowledges that Rockley does "not currently have any products in commercial production." Dkt. 930-2 at 10.

- <u>"Fast Company" Article</u>: Plaintiffs cite (Opp. 3) an article from a website called "Fast Company" that claims—without explanation—that Rockley's "sensors help power the Apple Watch." Dkt. 930-2 at 15-16. That is untrue, as explained in the ▌ deposition, *see* Mot. 11 (citing Dkt. 922-14), and the Pattabhiraman declaration, *see* Dkt. 922-19. It is also contradicted by a statement later on in the same article. Dkt. 930-2 at 18 ("Maybe the suits in Cupertino [i.e., Apple] are waiting to bring Rockley's tech to their Apple Watch—though they'll need to fix their battery-life issues first."). Notably, moreover, the rest of the article undermines Plaintiffs' supposition that the wearable devices discussed in Rockley's 10-K must relate to Apple products, as it states that Rockley is partnering with *Medtronic*—not Apple—to sell Rockley's *own wearable* to "health systems" as opposed to the "consumer market." Dkt. 930-2 at 18; *accord id.* at 31 (witness at *True Wearables* trial agreeing that "Rockley announced a partnership to develop wearables for Medtronic" which is "Masimo's much larger competitor" in the "medical space").

- *True Wearables* <u>Transcript</u>: Plaintiffs next cite (Opp. 3-4, 7) a transcript from the *True Wearables* case where several Rockley employees testified. Dkt. 930-2 at 21-34. While Apple was discussed briefly (at the behest of Plaintiffs' attorneys), neither of the two employees whom Plaintiffs identify as having worked on wearable technology indicated that they worked with Apple. Mr. Dalvi testified that he knew Apple was a Rockley customer but that his "team" did not work for them. *Id.* at 26. Similarly, Dr. Merritt testified that while the

products Rockley makes "as a company" "could" theoretically be incorporated into Apple products, "the products that I am working on" would "not" be. *Id.* at 30.

- The ▮▮▮▮ Deposition: Plaintiffs reference (Opp. 6, 8) the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" But as Apple explained, the same witness testified that Rockley "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Mot. 11 (quoting Ex. 17 at 196-197, 199)).

- The ▮▮▮▮ Slideshow: Plaintiffs repeatedly cite (Opp. 4, 6, 8, 10) a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiffs relatedly criticize Apple for providing this Court with a brief declaration laying out ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. 10. Plaintiffs first state that the declaration is an impermissible "new argument[]." *Id.* Not so. The declaration merely provides sworn support for the argument that Apple has consistently made throughout this litigation—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] This slideshow is the same "▮▮▮▮▮▮▮▮" that Plaintiffs obliquely reference showing to the Special Master ▮▮▮▮ Opp. 6.

1  ████████████████████████ Plaintiffs also misquote the declaration (and Apple's
2  argument) by asserting that it speaks only to ███████████████████. Opp. 10.
3  To the contrary, the declaration is clear: ████████████████████████████
4  ██████████████████████████████████ Finally, Plaintiffs complain
5  that the declaration does not address Apple's ████████████████████████
6  ████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████
8  ████  In any event, to the extent that a supplemental declaration that addresses the
9  points above in more detail would be useful to this Court, Apple stands ready to provide
10 it.

11      *Third*, Plaintiffs argue that RFP Nos. 682, 683, and Interrogatory No. 28 are all
12 relevant to determining an appropriate reasonable royalty because they could show how
13 Apple values Rockley's technology. But the Special Master indicated that these requests
14 were "marginally relevant" only because of the Special Master's (erroneous) conclusion
15 Rockley supplied Apple with similar technology "to the technology at issue in Plaintiffs'
16 trade secret misappropriation claims." Dkt. 915 at 10-11. Under *Georgia-Pacific*, only
17 licenses for "*comparable*" technology can be considered. *See* 318 F. Supp. 1116, 1120
18 (S.D.N.Y. 1970) (emphasis added); *cf.* Dkt. 915 at 8 (Special Master noting that RFP
19 No. 682, which seeks "all agreements or contracts between Rockley and Apple" had
20 only "possible relevance … to damages"). Even accepting Plaintiffs' premise (taken
21 from a patent law case) that a license "need not [be] perfectly analogous" (Opp. 8), it is
22 common sense that the technology must be relatively similar to be of any real use, *see*
23 *Utah Med. Prods, Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1378, 1385 (Fed. Cir.
24 2003) (district court did not abuse discretion by excluding expert testimony that relied
25 on licenses that were not comparable to the patent-in-suit). Here, Plaintiffs have failed
26 to establish that the technology that Rockley supplied Apple is comparable to the
27 technology at issue in this case. *See supra* pp. 5-8.
28

*Fourth*, Plaintiffs argue that RFP No. 691, RFP No. 683, and Interrogatory No. 28 are relevant to Plaintiffs' misappropriation claim because they might theoretically show Apple conspired with Rockley to steal Plaintiffs' technology (and/or poach Plaintiffs' employees). Opp. at 9-10. But Plaintiffs' allegations that Apple engaged in wrongdoing are entirely speculative and thus cannot establish relevance. *See Webb*, 999 F.3d at 1205; *see also* Mot. 12. The only evidence that Plaintiffs cite in support of this conspiracy theory is that *Rockley* has hired some of their former employees (*see* Opp. 9), which is hardly wrongdoing on its face and in any event says nothing about Apple's conduct. Moreover, as Apple pointed out, Rockley has already stated that it has *no* documents regarding any effort by Apple or Rockley to recruit Plaintiffs' former employees or any other collaboration/coordination between Apple and Rockley relating to Plaintiffs. Mot. 13. Plaintiffs have no answer.

### C. The Rockley Discovery Is Not Proportional

As explained, Plaintiffs' discovery requests should be denied because Plaintiffs have already received substantial overlapping discovery, Plaintiffs' requests are overbroad, and Plaintiffs simply waited too long to press the issue. Mot. 14-15. Notably, Plaintiffs do not dispute that they have already received a significant amount of discovery on the same basic issues. *Compare* Mot. 14 *with* Opp. 14-15.

Plaintiffs do argue that their discovery requests are not overbroad even though three of the four are not limited to the "light-based" non-invasive physiological measurements that are at the heart of this case. Opp. 14. Tellingly, however, Plaintiffs make no attempt to justify their decision to use such wide-ranging language. They simply contend that the information they expect to receive will not go beyond light-based physiological measurements. Plaintiffs identify no authority blessing such an approach and at least one court in this District has rejected discovery requests where—as here—"overbreadth [and] lack of proportionality [is] apparent from the[ir] face." *Zakikhani v. Hyundai Motor Co.*, 2022 WL 2189539, at *3 (C.D. Cal. May 12, 2022).

*Second*, Plaintiffs accuse Apple and Rockley of working together to delay Plaintiffs' efforts to seek discovery and to file a motion to compel. Opp. 13. To be very clear, Apple did no such thing; the only relevant examples of delay that Plaintiffs point to were caused by Rockley.[6] Plaintiffs' assertion (Opp. 13) that "Apple and Rockley obtained an order denying discovery from Rockley" is particularly rich. Not only did Plaintiffs successfully object to Apple's participation in those proceedings, Mot. 5 & n.5, but Plaintiffs created the problem by not simultaneously seeking discovery from Apple and Rockley.[7]

## III.  CONCLUSION

Apple respectfully requests that the Court sustain Apple's objections to Special Master Order No. 15 and reverse the portion of that order granting Plaintiffs' motion to compel as to Plaintiffs' RFP Nos. 682, 683, 691, and Interrogatory No. 28.

---

[6] While this Court did grant Apple a brief stay of Special Master Order No. 15 in order to file the instant objections, that is irrelevant to the question of whether Plaintiffs unduly delayed by filing their motion to compel three hours before the close of fact discovery.

[7] Plaintiffs' related assertion (Opp. 13)—that the fact that Apple filed four motions to compel after the motion at issue here shows that Plaintiffs' motion was not untimely— is a red herring. None of the motions presented a new legal theory on which Apple could prevail, and all were timely considering the underlying factual circumstances.

| | |
|---|---|
| Dated: October 3, 2022 | Respectfully submitted, |
| | H. MARK LYON<br>BRIAN M. BUROKER<br>BRIAN A. ROSENTHAL<br>ILISSA SAMPLIN<br>ANGELIQUE KAOUNIS<br>GIBSON, DUNN & CRUTCHER LLP |
| | KENNETH G. PARKER<br>HAYNES AND BOONE, LLP |
| | MARK D. SELWYN<br>JOSHUA H. LERNER<br>NORA Q.E. PASSAMANECK<br>WILMER CUTLER PICKERING HALE AND DORR LLP |
| | By: */s/ Mark D. Selwyn*<br>    Mark D. Selwyn |
| | *Attorneys for Defendant Apple Inc.* |