1   JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
2   WILMER CUTLER PICKERING
      HALE AND DORR LLP
3   One Front Street, Suite 3500, San Francisco,
    CA 94111
4   Tel.: 628.235.1000 / Fax: 628.235.1001

5   H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
7   Palo Alto, CA 94304-1211
    Tel.: 650.849.5300 / Fax: 650.849.5333

8
    BRIAN M. BUROKER, *pro hac vice*
9     bburoker@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
10  1050 Connecticut Avenue, N.W.
    Washington, D.C. 20036
11  Tel.: 202.955.8500 / Fax: 202.467.0539

12  [Counsel appearance continues on next page]

13  *Attorneys for Defendant Apple Inc.*

14
# UNITED STATES DISTRICT COURT
15
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

16

17  MASIMO CORPORATION,
    a Delaware corporation; and
    CERCACOR LABORATORIES, INC.,
18  a Delaware corporation,

19                          Plaintiffs,

20              v.

21  APPLE INC.,
    a California corporation,

22                          Defendant.

23

24

CASE NO. 8:20-cv-00048-JVS (JDEx)

**APPLE INC.'S REPLY IN SUPPORT OF OBJECTIONS TO SPECIAL MASTER ORDER NO. 16**

Date: November 21, 2022
Time: 1:30 p.m.

Non-Expert Discovery Cut-Off: Aug. 12, 2022
Pre-Trial Conference: Mar. 13, 2023
Trial: Mar. 27, 2023

25              REDACTED VERSION OF
26  DOCUMENT PROPOSED TO BE FILED UNDER SEAL

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  BRIAN A. ROSENTHAL, *pro hac vice*
     brosenthal@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
3  New York, NY 10166-0193
   Tel.: 212.351.2339 / Fax: 212.817.9539
4
   ILISSA SAMPLIN, SBN 314018
5    isamplin@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
6  333 South Grand Avenue
   Los Angeles, CA 90071-3197
7  Tel.: 213.229.7000 / Fax: 213.229.7520

8  ANGELIQUE KAOUNIS, SBN 209833
     akaounis@gibsondunn.com
9  GIBSON, DUNN & CRUTCHER LLP
   2029 Century Park East Suite 4000
10 Los Angeles, CA 90067
   Tel.: 310.552.8546 / Fax: 310.552.7026
11
   KENNETH G. PARKER, SBN 182911
12   Ken.parker@haynesboone.com
   HAYNES AND BOONE, LLP
13 660 Anton Boulevard Suite 700
   Costa Mesa, CA 92626
14 Tel.: 650.949.3014 / Fax: 949.202.3001

15 MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
16 WILMER CUTLER PICKERING
     HALE AND DORR LLP
17 2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
18 Tel.: 650.858.6000 / Fax: 650.858.6100

19 NORA Q.E. PASSAMANECK, *pro hac vice*
     nora.passamaneck@wilmerhale.com
20 WILMER CUTLER PICKERING
     HALE AND DORR LLP
21 1225 Seventeenth St., Suite 2600
   Denver, CO 80202
22 Tel.: 720.274.3152 / Fax: 720.273.3133

23

24

25

26

27

28

APPLE'S REPLY IN SUPPORT OF OBJECTIONS TO SPECIAL MASTER ORDER NO. 16

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2

## TABLE OF CONTENTS

I.      Introduction ..................................................................................................... 1

II.     Argument ......................................................................................................... 1

    A.     Plaintiffs Do Not Show That Mr. Cook Has Unique Information Regarding "Apple-Masimo Interactions." .................................................. 3

    B.     Plaintiffs Do Not Show That Mr. Cook Has Unique Information Regarding Apple's Alleged "Recruiting" Of Plaintiffs' Employees. ........ 5

    C.     Plaintiffs Do Not Show That Mr. Cook Has Unique Information Regarding Apple's "Health Strategies." .................................................... 9

    D.     Plaintiffs' Other Attempts To Justify Mr. Cook's Deposition Fail. ........ 10

    E.     Mr. Cook's Deposition Is Not Proportional To The Needs Of The Case. ........................................................................................................ 13

III.    Conclusion ..................................................................................................... 15

Wilmer Cutler
Pickering Hale
and Dorr LLP

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abarca v. Merck & Co.*,
   2009 WL 2390583 (E.D. Cal. Aug. 3, 2009) ........................................................2

*Affinity Labs of Texas v. Apple, Inc.*,
   2011 WL 1753982 (N.D. Cal. May 9, 2011) ................................4, 5, 12, 13

*Alves v. Riverside County*,
   2021 WL 3598728 (C.D. Cal. Apr. 9, 2021)........................................................5

*Apple Inc. v. Samsung Elecs. Co., Ltd*,
   282 F.R.D. 259 (N.D. Cal. 2012) ............................................................3, 14

*Bicek v. C & S Wholesale Grocers, Inc.*,
   2013 WL 5425345 (E.D. Cal. Sept. 27, 2013) ......................................13, 14

*Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*,
   2014 WL 5685463 (D. Minn. Sept. 4, 2014) ......................................2, 3, 11

*Celorio v. Google Inc.*,
   2012 WL 12861605 (N.D. Fla. Nov. 19, 2012) ................................................1

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2014 WL 1340674 (N.D. Cal. Apr. 3, 2014) ................................................13

*Friedman v. Old Republic Home Prot. Co.*,
   2014 WL 12845131 (C.D. Cal. June 24, 2014)................................................2

*In re Apple iPhone Antitrust Litigation*,
   2021 WL 485709 (N.D. Cal. Jan. 26, 2021) ......................................14, 15

*K.C.R. v. Cnty. of Los Angeles*,
   2014 WL 3434257 (C.D. Cal. July 11, 2014) ................................................1

*Sale v. Merrill Lynch*,
   2017 WL 10562586 (C.D. Cal. Nov. 29, 2017)............................................14

*WebSideStory, Inc. v. NetRatings, Inc.*,
   2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ......................................13, 14

Wilmer Cutler
Pickering Hale
and Dorr LLP

ii

# I.   INTRODUCTION

Attempting to distract from the issue at hand, Plaintiffs rehash stale disputes relating to document production that have long been resolved.  At this point in the case, the bottom line is that Apple produced documents collected from Mr. Cook's files using the broad search terms that Plaintiffs requested, which resulted in production of nearly 5,000 documents.  Yet despite that production (along with other extensive discovery Plaintiffs have received in this case), Plaintiffs fail to identify a ***single document*** on which Mr. Cook is the only source of relevant information.  Indeed, each document to which Plaintiffs point was either authored by others whom Plaintiffs have already deposed, or has marginal, if any, relevance to the claims in this case.  Plaintiffs' assertion that Mr. Cook was directly involved in the "key documents" that Plaintiffs will use at trial is thus misleading at best.  The best document that Plaintiffs have been able to muster in their unrelenting pursuit of Mr. Cook's deposition is the single unsolicited email sent by Dr. Lamego (on which Dr. Lamego himself was deposed) that Plaintiffs used to justify an expansive search of Mr. Cook's files in the first place.  But nothing in Mr. Cook's files or the rest of the voluminous discovery record suggests that Plaintiffs should be permitted an apex deposition of Apple's CEO.

Accordingly, Apple respectfully requests that its objections to Special Master Order No. 16 be sustained, and Plaintiffs prohibited from proceeding with Mr. Cook's deposition under the apex doctrine.

# II.   ARGUMENT

As Apple explained (Dkt. 968 ("Obj.") at 6-15), Mr. Cook has no relevant, unique information that would justify his deposition in this case.  *See K.C.R. v. Cnty. of Los Angeles*, 2014 WL 3434257, at *7 (C.D. Cal. July 11, 2014) (noting that courts require the requesting party to make a "solid, detailed showing" that the apex witness "has unique and non-repetitive *relevant* knowledge that cannot be obtained from other sources." (emphasis in original)); *see also Celorio v. Google Inc.*, 2012 WL 12861605,

1    at *2 (N.D. Fla. Nov. 19, 2012) ("Even assuming that [CEO has] *some* knowledge

2    concerning [relevant facts], this does not demonstrate that [CEO] has *unique*

3    *knowledge*.").[1]   Nonetheless, Plaintiffs seek to turn the apex doctrine on its head by

4    arguing that *any* "personal knowledge" is sufficient to justify the deposition of the

5    highest-ranking executive of a company with more than 150,000 employees.  *See* Dkt.

6    974-1 ("Opp.") at 6.  That is plainly incorrect.  An apex deposition is appropriate only

7    where the high-ranking executive has "*unique* personal knowledge" that cannot be

8    "obtained through less intrusive discovery methods."  *Friedman v. Old Republic Home*

9    *Prot. Co.*, 2014 WL 12845131, at *3 (C.D. Cal. June 24, 2014).

10       Plaintiffs claim that "Apple cites no case from anywhere in the country" denying

11   a deposition in circumstances similar to those here.  Opp. 1.  That is flat wrong.  Apple

12   cited cases in which the deposition was denied even though the high-ranking executive

13   had far *more* knowledge of the relevant facts than the sparse evidence Plaintiffs have

14   been able to muster in this case.  For example, in *Abarca v. Merck & Co.*, a case

15   involving an environmental contamination at a manufacturing facility, the court granted

16   a protective order barring the deposition of Merck's CEO even though the CEO had

17   signed a memorandum regarding "remediation" of the environmental contamination and

18   a contract for treatment of the contamination was prepared for the CEO's signature.

19   2009 WL 2390583, at *1, 4-5 (E.D. Cal. Aug. 3, 2009) (concluding that "there is no

20   indication that [CEO] has unique, non-cumulative knowledge simply because his name

21   appears on three documents").  Similarly, in *Bombardier Recreational Products, Inc. v.*

22   *Arctic Cat, Inc.*, the court granted a protective order barring the deposition of the

23   plaintiff's President and CEO in a patent infringement action, even though the CEO

24   completed an evaluation form for the product embodying the patented technology and

25   compared it to the defendant's competing product, attended meetings on the

26

27   _____

28   [1] All emphasis added unless otherwise noted.  Numbered exhibits are those attached to
the October 24, 2022 Declaration of Nora Passamaneck (Dkt. 966-2) or the Declaration
of Nora Passamaneck filed contemporaneously with this Reply.  Lettered exhibits are
those attached to the October 31, 2022 Declaration of Adam Powell (Dkt. 974).

1   development of that product, and appeared on "over 1,400 documents."  2014 WL

2   5685463, at *3 (D. Minn. Sept. 4, 2014).

3         Plaintiffs, on the other hand, heavily rely on Apple's briefing in its 2012 litigation

4   with Samsung as support for their (erroneous) view of the law.  *See* Opp. 5, 7, 11, 15.

5   But the facts there are readily distinguishable.  In that case, Apple offered numerous

6   documents showing that Samsung's CEO had specifically overseen Samsung's "strategy

7   of considering Apple's products when creating new Samsung products," including

8   emails and meeting minutes indicating that Samsung's CEO presided over meetings

9   assessing the features of Samsung's products against Apple's products.  *See Apple Inc.*

10  *v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 264-265 (N.D. Cal. 2012) (noting that

11  evidence showed Samsung's CEO "engaged in 'the type of hands-on action which

12  demonstrates the unique personal knowledge required to compel a deposition of a

13  CEO'").  As discussed in further detail below, there is no evidence that is even remotely

14  similar here.  Plaintiffs have not pointed to a single document or witness testimony

15  suggesting that Mr. Cook oversaw or was at all involved with any purported

16  misappropriation of Plaintiffs' alleged trade secrets.  Because Plaintiffs can point to no

17  evidence indicating that Mr. Cook has unique knowledge of relevant facts that Plaintiffs

18  could not have obtained (or have not already obtained) through other less burdensome

19  sources, a protective order is warranted.

20      **A.**    **Plaintiffs Do Not Show That Mr. Cook Has Unique Information**

21                  **Regarding "Apple-Masimo Interactions."**

22        Apple's purported "interactions" with Plaintiffs nearly a decade ago provide no

23  basis for Mr. Cook's deposition.  Plaintiffs first point to an email authored by Adrian

24  Perica (Apple's Vice President, Corporate Development) stating that ████████

25  ████████████████████████████████████████████ (Ex. 28 at 2;

26  *see* Opp. 8), but Plaintiffs notably do not deny that ████████████████

27  ████████████████████████.  *See* Obj. 7.  Thus, while Plaintiffs suggest

28  that Mr. Cook's deposition is warranted because Plaintiffs were ████████████

1  ███████████████████████████████████████████  Mr. Cook is not the

2  deponent to fill that alleged gap.  And Plaintiffs already deposed *Mr. Perica* (himself a

3  member of Apple's Executive Team and an apex witness)—█████████████████

4  █████—extensively on that subject.  *See* Obj. 7-9.

5         Nor does Mr. Perica's testimony ████████████████████████████

6  Opp. 8.  As an initial matter, Plaintiffs point to no witness whose testimony is

7  purportedly "inconsistent" with Mr. Perica's testimony.  Nor is Mr. Perica's testimony

8  "inconsistent" with the sole email Plaintiffs cite.  ████████████████████████

9  ███████████████████████████████████████████████████

10  ███████████████████████████████████████████████████

11  ██████████████████████████████  Ex. 27 at 1.  As Mr. Perica explained at

12  length in his deposition—just after the passage to which Plaintiffs point—███████

13  ███████████████████████████████████████████████████

14  ███████████████████████████████████████████████████

15  ███████████████████████████████████████████████████

16  ███████████████████████████████████████████████████

17  ███████████████████████████████████████████████████

18  ███████████████████████████████████████████████████

19  █████████████  Mr. Perica further explained that ██████████████████

20  ███████████████████████████████████████████████████

21  ███████████████████████████████████████████████████

22  ████████████  *Id.* at 141:3-11; *see also* Obj. 7-8 (noting Mr. Perica's testimony that

23  ████████████████████████████████

24         Plaintiffs conveniently ignore this testimony and instead argue that they should

25  be permitted to depose Mr. Cook regarding alleged "inconsistency" between Mr.

26  Perica's testimony and Mr. Perica's own email.  That is not the law.  Plaintiffs are right

27  that *Affinity Labs of Texas v. Apple, Inc.* is distinguishable, but not for the reasons

28  Plaintiffs suggest.  In *Affinity Labs*, the plaintiff sought to depose Apple CEO Steve Jobs

1  regarding alleged "inconsistencies" between other witnesses' testimony and statements

2  *made by Mr. Jobs*.  2011 WL 1753982, at *7-9 (N.D. Cal. May 9, 2011).  Even then,

3  the court found an apex deposition not warranted, explaining that "quibbling over

4  manufactured differences does not justify deposing Mr. Jobs."  *Id.* at *8.  That is even

5  more true here, where Plaintiffs have not even pointed to a single statement *by Mr. Cook*

6  that evidences the alleged "inconsistencies" on which Plaintiffs' argument depends.

7          Apart from Mr. Perica's email discussed above, Plaintiffs have pointed to *no*

8  *document*—and certainly no document authored by Mr. Cook—that indicates that ███

9  ███████████████████████████████████████, as Plaintiffs allege.  Opp.

10  9.  Mr. Cook should not be forced to sit for a deposition to account for alleged

11  inconsistencies between the testimony of another witness and a document that witness

12  authored.  Plaintiffs point to *Alves v. Riverside County*, 2021 WL 3598728 (C.D. Cal.

13  Apr. 9, 2021) (Opp. 8), which considered whether to order the sheriff's deposition in a

14  wrongful death suit involving an individual in police custody.  But unlike in *Alves*, where

15  a witness testified that the decedent's cause of death "in this particular case [was]

16  actually done by the sheriff himself," *no witness* testified that Mr. Cook ████████

17  ████████████████████████  *Cf.* 2021 WL 3598728, at *5 (ordering sheriff's

18  deposition where he had "direct involvement determining that Decedent's death was a

19  homicide, which would appear to be an important and central aspect of this case").

20          In short, Plaintiffs' pursuit of Mr. Cook's deposition on Apple's "interactions"

21  with Plaintiffs boils down to a single email that Mr. Cook did not author or receive and

22  about which Plaintiffs deposed the author—himself a high-ranking executive—at

23  length.  That email provides no basis for Mr. Cook's deposition.

24          **B.      Plaintiffs Do Not Show That Mr. Cook Has Unique Information**

25                    **Regarding Apple's Alleged "Recruiting" Of Plaintiffs' Employees.**

26          Plaintiffs' attempt to string together disparate facts in an effort to paint Mr. Cook

27  as having unique knowledge regarding Apple's alleged recruitment of Plaintiffs'

28  employees also fails.  *See* Opp. 9.  Plaintiffs do not deny that their basis for alleging Mr.

Wilmer Cutler
Pickering Hale
and Dorr LLP

5

1    Cook has "unique" information on this topic is a ████████████████████████████

2    ███████████████████████████████████████████████████████████████ —

3    both of which occurred nearly a decade ago.  *See* Obj. 10.  Nor do Plaintiffs dispute that

4    they have already received extensive discovery on both points through several other

5    witnesses, including Dr. O'Reilly and Dr. Lamego themselves.  *See id.* 10-12.  Nothing

6    in Plaintiffs' opposition suggests any basis for Mr. Cook's deposition on this topic.

7            Plaintiffs first point to a generic email in which Mr. Cook ██████████████

8    ████████████████████████████████████████████████████ Apple's hiring of

9    Plaintiffs' former employees Dr. O'Reilly and Dr. Lamego.  Not so.  ████████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████ That email

21   thus has no bearing on Apple's alleged "recruiting" of Plaintiffs' employees.

22           With  respect  to  Dr.  O'Reilly,  Plaintiffs  primarily  quibble  with  Apple's

23   characterization of ████████████████████████████████████████████

24   █████████████████████████.  Opp. 9.  But whether ████████████████████

25   ████████████████████████████████████████████████████████████████

26   Critically, Plaintiffs have not alleged—and there is no evidence to suggest—that Apple

27   misappropriated Plaintiffs' alleged trade secrets ████████████████████████

28   ██████████████  The relevance of ████████ to Plaintiffs' claims is thus specious at

1    best.  Moreover, to the extent it has any marginal relevance to this case—Plaintiffs have

2    identified none—Plaintiffs undisputedly inquired about it extensively when they

3    deposed Dr. O'Reilly.  *See* Obj. 11.  Moreover, as Apple explained (Obj. 10-11)—and

4    Plaintiffs do not deny—Mr. Cook is hardly uniquely situated to address Apple's overall

5    *recruitment* of Dr. O'Reilly.  As Dr. O'Reilly stated in a contemporaneous email, ████

6    ████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████[2]

10       Plaintiffs again attempt to conjure purported inconsistencies between Dr.

11   O'Reilly's testimony and emails either he or individuals other than Mr. Cook authored.

12   Opp. 10.  But once again, the documentary record is perfectly consistent with Dr.

13   O'Reilly's testimony.  ███████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████

16   █████████████████████████████████████████████████  Ex. 38 at 1.  Dr.

17   O'Reilly, in turn, testified—consistently—that ███████████████████████████

18   █████████████████████████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████████  Ex. 62 at

21   293:3-20.[3]  At bottom, ██████████████████████████████████████████████

---

[2] Plaintiffs complain that Apple's executive recruiter Denby Sellers ███████████
████████ (Opp. 10 n.4), but do not deny that Ms. Sellers was Apple's Rule 30(b)(6)
designee on Apple's overall recruitment and hiring of Dr. O'Reilly or that Plaintiffs were
free to (and did) question her extensively on that subject during their *two* separate
depositions (in this case and the *True Wearables* case) of Ms. Sellers on those topics.

[3] Contrary to Plaintiffs' assertion (Opp. 10), Dr. O'Reilly later characterized ██████
█████████████████████████████████████████████████  Ex. 40 at 1; Ex. 41 at
1.  Those were Dr. O'Reilly's words, not Mr. Cook's, and any questions about them are
more properly addressed—and indeed were addressed—to Dr. O'Reilly.

1  ██████████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████████████

3  ████████████████████████████—is a plainly insufficient basis on which to order an apex

4  deposition of Mr. Cook.  Were it otherwise, a CEO could be subject to deposition merely

5  because he or she met with individuals who may have relevant information.

6        Plaintiffs' assertions regarding Dr. Lamego are even more remote.  Plaintiffs

7  identify a single document relating to Dr. Lamego's alleged recruitment to Apple that

8  actually included Mr. Cook: an unsolicited email from Dr. Lamego to Mr. Cook, ████

9  ████████████████████████████  *See* Ex. 12.  Plaintiffs seek to leverage Judge

10  Early's earlier ruling regarding production of Mr. Cook's documents to suggest that

11  there is a basis for Mr. Cook's deposition after full and expansive discovery.[4]  But

12  Plaintiffs ignore that Judge Early's prior order resulted in an exhaustive and expansive

13  search of Mr. Cook's documents.  That search and resulting production of nearly 5,000

14  documents—which included documents hitting on Plaintiffs' search terms regardless of

15  responsiveness—revealed no further involvement by Mr. Cook in Dr. Lamego's hiring

16  or recruitment.  This fact was also confirmed by multiple witnesses (including Dr.

17  Lamego himself) under oath, in testimony Plaintiffs have not challenged (and have no

18  basis to do so).  *See* Obj. 12.  Given the complete dearth of any evidence that Mr. Cook

19  had any involvement in Dr. Lamego's hiring beyond ████████████████████████

20  ██████████████████████████, there is simply no basis for his deposition.  Jeff

21  Williams—Apple's COO reporting directly to Mr. Cook and another apex witness who

22  Plaintiffs deposed—testified that ██████████████████████████████████████

23  ██████████████████████████████████████████████████████████████

24  ██████████████████████  Ex. 5 at 54:9-15.  That is precisely what the record shows

25  happened here—██████████████████████████████████████████████████

26

27

        ————————————————

[4] Plaintiffs also suggest that ██████████████████████████████████████████  Opp.

28  9.  But notably, Mr. Cook was not even a recipient of ████████████████████████████
               Ex. 33 at 1-2.

1 ███████████████████████████████

2      Grasping at straws, Plaintiffs baldly assert that ████████████████

3 ███████████ Opp. 10.  But Plaintiffs fail to mention that ***none*** of the cited emails

4 has anything to do with Plaintiffs' alleged trade secrets.  *See* Exs. 34, 44, 45.  Plaintiffs

5 make no effort whatsoever to explain how those emails have any relevance to any issue

6 in this case.  And in the only email containing any content authored by Mr. Cook (Ex.

7 44), Mr. Cook ████████████████████████████████

8 ████████████████████████████ *See also* Obj. 12 n.4.  Plaintiffs

9 also vaguely point to emails Dr. Lamego sent after leaving Apple as justifying Mr.

10 Cook's deposition.  Opp. 9.  But Plaintiffs fail to mention that those emails were

11 quarantined as spam and transferred to Mr. Cook's Executive Support Engineer.  *See*

12 Ex. 4 at 1.  As Apple explained (Obj. 15) and Plaintiffs do not dispute, the vast majority

13 of those documents are indeed spam and have nothing to do with this case.  The only

14 emails Plaintiffs identify from among those spam emails are three unsolicited emails

15 regarding an unrelated product (Oxxium) that have nothing to do with Plaintiffs' alleged

16 trade secrets and that Dr. Lamego sent (unsolicited) to Mr. Cook ***years*** after he left

17 Apple.  *See* Exs. 35-37.  Simply put, Mr. Cook has no facts relevant to Dr. Lamego's

18 recruitment or hiring that would justify his deposition.[5]

19      **C.    Plaintiffs Do Not Show That Mr. Cook Has Unique Information**

20      **Regarding Apple's "Health Strategies."**

21      Apparently recognizing that apex depositions are routinely denied to explore a

22 CEO's knowledge regarding overall product strategy, Plaintiffs argue—for the first time

23 in their opposition—that Mr. Cook's deposition is warranted on the subject of Apple's

24 "health strategies" because ████████████████████████

[5] Plaintiffs criticize Apple's characterization of the Special Master's identified topic as "overbroad" (Opp. 12), yet do not deny that they have ***only*** asserted alleged misappropriation based on Apple's hiring of Dr. O'Reilly and Dr. Lamego.  Nor are "Apple's recruiting efforts in general are relevant" (*id.*), as the law does not prohibit hiring (or recruiting) another company's employees.

1       █████████████████████████████████████████████ Opp.

2 12. But Plaintiffs have once again failed to point to any particular ***relevant***, unique

3 information in Mr. Cook's possession that Plaintiffs cannot obtain (or have not already

4 obtained) from other sources.  Plaintiffs make no attempt whatsoever to tie any such

5 ████████████ to any purported misappropriation of Plaintiffs' alleged trade secrets.

6       Moreover, contrary to Plaintiffs' suggestions, Mr. Mansfield—a third party

7 witness who retired from Apple years ago—was not the only source of information on

8 Apple's "health strategies."  As Apple explained (Obj. 13)—and Plaintiffs do not

9 dispute—Plaintiffs have deposed over two dozen witnesses, the vast majority of whose

10 depositions addressed Apple's "health strategies." Those depositions include that of

11 Apple's Rule 30(b)(6) witness Afshad Mistri on that very topic, "Apple's business and

12 marketing plans and strategies for non-invasive parameter monitoring features of the

13 Apple Watch." Ex. 6 at 3.  While Mr. Mistri testified that ███████████████████

14 ██████████████████████████ (Ex. 53 at 275:15-20), Plaintiffs make no effort

15 to explain ███████████████████████████████████████████████████

16 ██████ Plaintiffs also vaguely point to Mr. Williams' statement that ██████

17 █████████████████████████████████████████████████████████████

18 ████████████████████████████ has any bearing on Plaintiffs'

19 misappropriation claims.  In short, Plaintiffs have failed to identify any relevant, unique

20 information related to "health strategies" that would justify Mr. Cook's deposition.

21       **D.    Plaintiffs' Other Attempts To Justify Mr. Cook's Deposition Fail.**

22       Lacking any evidence that Mr. Cook has unique, relevant knowledge, Plaintiffs

23 misleadingly cobble together disparate and irrelevant portions of the record in an attempt

24 to justify Mr. Cook's deposition.  Notably stopping short of arguing that it presents a

25 basis for Mr. Cook's deposition, Plaintiffs generically point to testimony of other

26 witnesses who were purportedly "unable to provide the knowledge that Cook clearly

27 has." Opp. 3.  But apart from the specific issues addressed above, Plaintiffs make no

28 effort to explain the relevance of the testimony they identify.  That is unsurprising, as

1   that testimony provides no basis for Mr. Cook's deposition.

2       Plaintiffs first point to Mr. Williams' testimony that he did not know ▐

3   ██████████████████████████████████████████████████████████████

4   ████████  Opp. 3 (citing Ex. 46 at 31:19-32:1, 33:19-22, 34:11-14, 36:10-12). But,

5   setting aside Plaintiffs' failure to explain why this testimony is relevant, in the passage

6   *immediately preceding* the one Plaintiffs cite, Mr. Williams explained in detail what

7   work was necessary:

8   ████████████████████████████████

9

10  ████████████████████████████████████

11

12

13

14

15

16

17

18  Ex. 46 at 30:21-31:18. And while Mr. Williams testified that ████████████

19

20

21

22

23

24  ████████  *Id.* at 32:12-22. Plaintiffs thus obtained substantive answers to the questions

25  they posed; Mr. Cook's unspoken "beliefs" are irrelevant. *See Bombardier*

26  *Recreational*, 2014 WL 5685463, at *3-4 ("[W]hat little of [CEO's] subjective thoughts

27  were left unsaid, if any, … is hardly so unique or significant to the present suit as to

28  outweigh the burden of subjecting [him] to a deposition.").

1    Plaintiffs similarly point to Mr. Perica's testimony that █████████████

2    ██████████████████████████████████████████████████████████ Opp.

3    3 (quoting Ex. 29 at 106:18-107:16, 110:18-111:4); *see supra* p. 6.  However, once

4    again, in the ***very next passage***, Mr. Perica explained that ██████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ████████████████  Ex. 29 at 107:18-108:15.  Similarly, while Plaintiffs point to third

8    party Bob Mansfield's testimony regarding ████████████████████████

9    ██████  (Opp. 4), as Apple explained (Obj. 7-9; *supra* pp. 3-5), Plaintiffs deposed Mr.

10   Perica (and others) extensively regarding that subject.

11   Plaintiffs' reference to David Tom's testimony is similarly misplaced.  *See* Opp.

12   4 (citing Ex. 69 at 24:12-19).  As Plaintiffs acknowledge, Mr. Tom is ████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████  Mr. Tom further testified that

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████

21   ██████████████████████████  Whether  Mr.  Cook  was  ████████████

22   ████████████████  is  wholly  irrelevant  to  Plaintiffs'  claims.  ████████

23   ████████████████████████████████  Moreover, Apple

24   produced documents from Mr. Cook's files using Plaintiffs' search terms (which

25   included ████████████████████████████████████████████████████

26   ████████████████  An apex deposition is not warranted to ask whether Mr. Cook was

27   aware of a specific presentation.  Plaintiffs could have easily posed that sole question

28   via interrogatory.  *See Affinity Labs*, 2011 WL 1753982, at *10 (noting plaintiff "could

1    have served interrogatories seeking the reasons why Mr. Jobs made the statements").

2         Finally, Plaintiffs point to Eugene Kim's testimony regarding ███████████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████        Opp. 4.   However, noticeably absent from Plaintiffs'

5    submission is ████████████████████████████.   That is unsurprising since neither

6    ████████████████        has anything to do with the claims in this case.   Plaintiffs make

7    no effort to show otherwise.   Plaintiffs' identification of Mr. Kim's testimony as

8    justifying Mr. Cook's deposition is a prime example of the overbreadth of the Special

9    Master's Order permitting Plaintiffs to depose Mr. Cook on the broad subject of

10   "Apple's involvement in healthcare initiatives."   Ex. 68 at 10.   That scope captures

11   subject matter that has no relevance even to Plaintiffs' trade secret claims, much less to

12   something on which Mr. Cook has unique, relevant knowledge.

13        **E.    Mr. Cook's Deposition Is Not Proportional To The Needs Of The**

14             **Case.**

15        Pointing to *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567 (S.D. Cal.

16   Apr. 6, 2007), Plaintiffs suggest that Mr. Cook's deposition is proportional to the needs

17   of the case because he should be able to "spend a few hours" preparing for and attending

18   a deposition. Opp. 13-14.   However, in view of Mr. Cook's minimal involvement in the

19   relevant facts and the extensive discovery Plaintiffs have taken in this case, including

20   Apple's production of over 280,000 documents and the depositions of more than 20

21   Apple witnesses (including two high-ranking executives who report directly to Mr.

22   Cook), Mr. Cook's deposition is plainly not proportional to the needs of the case.

23   Indeed, courts routinely find that apex depositions of a CEO pose an undue burden,

24   rendering them disproportional to the needs of the case. *See, e.g.*, *Circle Click Media*

25   *LLC v. Regus Mgmt. Grp. LLC*, 2014 WL 1340674, at *1-3 (N.D. Cal. Apr. 3, 2014)

26   (granting protective order because "burden and expense associated with [apex]

27   deposition far outweighs the relevance of this limited issue" that could be probed by

28   other means); *Bicek v. C & S Wholesale Grocers, Inc.*, 2013 WL 5425345, at *5-6 (E.D.

Wilmer Cutler
Pickering Hale
and Dorr LLP

13

1   Cal. Sept. 27, 2013) (where plaintiff failed "to make at least some preliminary showing

2   that the deponent has unique, non-repetitive, first-hand knowledge of facts at issue in

3   the case[,] … the burdens imposed on [apex witnesses] outweigh the benefits"); *see also*

4   *Sale v. Merrill Lynch*, 2017 WL 10562586, at *2 (C.D. Cal. Nov. 29, 2017) ("Time spent

5   preparing for and giving a deposition (***even if limited to a three-hour period*** as Plaintiff

6   proposes) can obviously present a burden …."). That is particularly true for a CEO of a

7   company the size of Apple. *See* Ex. 3 (describing Mr. Cook's duties as CEO).

8      *WebSideStory* is distinguishable on a number of bases. The plaintiff's executive

9   in that case was "one of the few remaining company representatives that [had] been with

10  the company for any period of time," the plaintiff had identified the executive in its

11  initial disclosures, "many of the upper level employees … [were] no longer with the

12  company," and the executive had been expressly identified by another witness "as being

13  one of only two people … to have performed a market share analysis" relevant to the

14  plaintiff's claims. *WebSideStory*, 2007 WL 1120567, at *3-4. The facts in that case

15  bear no resemblance to the facts here. As the court noted in *Apple Inc. v. Samsung

16  Electronics Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012), on which Plaintiffs heavily rely

17  (*see* Opp. 5, 7, 11, 13 (citing Ex. C (Apple's Motion to Compel, *Apple Inc. v. Samsung

18  Elecs. Co.*, No. 11-cv-1846 (N.D. Cal.)))), "the court must assess not only the materiality

19  of the proposed deponent's knowledge of pertinent facts and the availability of other

20  means for the party to access that knowledge, but—with apologies—the person's degree

21  of 'apex-ness' in relation to these factors." There is no question that as Apple's CEO,

22  Mr. Cook's deposition on the issues that Plaintiffs have identified—which have

23  marginal, if any, relevance to the claims at issue here—would impose a significant

24  burden.

25     *In re Apple iPhone Antitrust Litigation*, 2021 WL 485709 (N.D. Cal. Jan. 26,

26  2021), on which Plaintiffs rely (Opp. 14), is also readily distinguishable. There, Apple

27  ***agreed*** to present Mr. Cook for deposition; the dispute was not ***whether*** Mr. Cook would

28  be deposed, but the ***length*** of the deposition. *Id.* at *3. Moreover, the court found that

Wilmer Cutler
Pickering Hale
and Dorr LLP

14

1   because the case "challenge[d] an important aspect of Apple's business model," the case
2   did not "involve the traditional apex inquiry into the witness's participation in or
3   knowledge about this or that historical decision." *Id.*  In contrast, here, this case concerns
4   Plaintiffs' specific trade secret allegations, not Apple's overall business model.

5          Finally, Plaintiffs' suggestion that they are entitled to depose Mr. Cook because
6   Apple deposed Plaintiffs' CEO Joe Kiani is similarly misplaced.  There is an obvious
7   and key distinction between Mr. Kiani and Mr. Cook.  ███████████████████████
8   ████████████████████████████████████████  *See* Ex. 23 at 3-4.  In
9   fact, Plaintiffs apparently intend to make Mr. Kiani one of their central witnesses.  ███
10  ████████████████████████████████████████████████████
11  █████████████████████████  Ex. 70 at 1-10.  In very stark contrast, Apple has
12  made abundantly clear that Mr. Cook has no relevant information.

### III.   CONCLUSION

14         For the foregoing reasons, Apple respectfully requests that the Court sustain
15  Apple's objections to the Special Master's Discovery Order No. 16.

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

15

Dated:  November 7, 2022

Respectfully submitted,

H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

MARK D. SELWYN
JOSHUA H. LERNER
NORA Q.E. PASSAMANECK
WILMER CUTLER PICKERING HALE AND
DORR LLP

By:  */s/ Mark D. Selwyn*
      Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*