# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | October 11, 2022 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:** **[IN CHAMBERS] Order Regarding Apple's Motion for Review of Special Master Order No. 15 (Redacted & Revised Per Dkt. 986)**

Before the Court is Apple's Motion for Review of Special Master Order No. 15. See Mot., ECF Nos. 923, 932 (sealed); see also ECF Nos. 915, 917 (sealed) (Special Master Order No. 15). Plaintiffs filed an opposition. See Opp., ECF Nos. 930, 936 (sealed). Apple filed a reply. See Reply, ECF Nos. 942, 944 (sealed).

A review of the briefing demonstrates that this matter may be decided without the need for oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Therefore, the Court **VACATES** the October 17, 2022 hearing.

For the following reasons, the Court **SUSTAINS** Apple's objections.

## I. BACKGROUND

The parties are familiar with the facts of this case so the Court recites them here only as necessary to resolve this dispute.

Apple objects to the Special Master's Order No. 15, which orders Apple to produce documents and information relating to non-party Rockley Photonics. Apple argues that the information relates to Plaintiffs' untimely theory that Rockley was collaborating with Apple to jointly misappropriate Plaintiffs' trade secrets. See Mot. at 1. Apple contends the Special Master erred by ordering Apple to produce this information because (1) Order

No. 15 conflicts with the Court's August 9, 2022 Order barring new legal theories after the close of discovery, Mot. at 9-11; (2) the information is not related or margianlly relevant to this case because there is nothing connecting Rockley's technology with the claims in this case, id. at 11-14; and (3) Plaintiffs' belated discovery requests are not proportional to the needs of the case because they seek to litigate "a new case within a case," id. at 14-15.

Plaintiffs respond that the Special Master correctly ordered discovery on one interrogatory and three requests for production--the Court's August 9 Order notwithstanding--because the Rockley-related discovery is relevant to Apple's alleged trade secret misappropriation, including damages for misappropriation. Opp. at 1; see also id. at 6 ("it's highly relevant to see what they paid to license or buy similar technology from others"), 7-8 (similar). Plaintiffs explains their belief that the discovery is relevant because it relates to Plaintiffs' long-standing theory that Apple obtained access to Masimo's trade secrets through Masimo's former employees. Further, Plaintiffs contend the Rockley-related information is connected to this litigation because Rockley supplies chips to Apple that are used for light-based, noninvasive measurements of physiological parameters. Id. at 1-4. Plaintiffs counter that the requested discovery is not barred by the Court's August 9 Order because Plaintiffs are not asserting a new "joint misappropriation" theory, but rather seek the information to help prove misappropriation by Apple and the proper reasonable royalty. Id. at 11-12. Plaintiffs also argue the discovery is proportional to the needs of the case because the Special Master found relevance and Apple did not make any showing concerning undue burden. Id. at 14.

In reply, Apple clarifies that "[t]he Special Master rightly declined to adopt Plaintiffs' new joint-misappropriation theory of relevance in light of th[e] [Court's August 9] order," but the Special Master's order "compel[s] discovery on a different (but also new) theory of relevance—i.e., that Rockley allegedly produces 'similar technology' to what is at issue in this litigation." Reply at 1. Apple observes that Plaintiffs do not dispute that they failed to disclose before the close of written discovery their new theory, i.e., that "former Masimo employees at Rockley … discussed and implemented the trade secrets at issue in this case" and/or that "Apple and Rockley coordinated on recruiting Masimo employees to obtain Masimo's trade secrets." Id. at 2-3. Apple argues this is the same "no notice" strategy Plaintiffs attempted with respect to their new collateral estoppel theory, which the Court rejected in the August 9 Order. Further, Apple alleges it would be prejudiced by this belated discovery because, "[i]f Plaintiffs are sitting on information that they believe shows Rockley has a bona fide connection to this suit, Apple should have had the opportunity to review that information to prepare its defense (and, if necessary, gather information to rebut it)." Id. at 3-4.

## II. Legal Standards

1. Special Master Review

"The court must decide de novo all objections to findings of fact made or recommended by a master." Fed. R. Civ. P. 53(f)(3). "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53 (f)(5); see also ECF No. 470, Order Appointing Special Master at ¶¶ 15-17 ("Standards of review for objections to the Special Master's rulings shall be as follows per Rule 53(f)(3)-(5)"). "The Court must decide de novo all objections to conclusions of law." Id. "The Special Master's discovery rulings and recommendations are inextricably intertwined with conclusions of fact and law and so are reviewed de novo." Hernandez v. Lynch, No. ED CV 16-620 JGB(KKx), 2019 WL 6998774, at *2 (C.D. Cal. June 18, 2019). But a party "cannot raise entirely new arguments for the first time on an objection to a Special Master's Report." World Triathalon Corp. v. Dunbar, 539 F. Supp. 2d 1270, 1278, n.13 (D. Haw. 2008), aff'd in part, appeal dismissed in part sub nom. World Triathlon Corp. v. Hapai, 320 F. App'x 778 (9th Cir. 2009).

2. Discovery Principles

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). But discovery requests may be denied if they are overbroad on their face. See, e.g., MCC Controls v. Hal Hays Constr., ED CV 19-1655-AB (KKx), 2020 WL 6034321, at *5 (C.D. Cal. July 23, 2020) ("as Primex was only contracted by HHC to provide parts and services for a portion of the Project, the request for all documents related to the State Contract . . . is overbroad on its face"). For timely requests, once the party seeking discovery has demonstrated relevance under Rule 26(b)(1), "the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." Heredia v. Sunrise Senior Living LLC, Case No. 8:18-cv-01974-JLS (JDEx), 2020 WL 3108699, at *2 (C.D. Cal. Jan. 31, 2020) (internal citation omitted).

If new legal theories are raised after the close of discovery, they may not be allowed at later stages of the case such as summary judgment or trial. See, e.g., Amini Innovation Corp. v. Anthony California Inc., No. CV 03-8749, 2006 WL 6855371, at *9 (C.D. Cal. Sept. 21, 2006) (granting motion in limine to preclude evidence supporting undisclosed legal theory in copyright case) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291–1294 (9th Cir. 2000) (precluding alternate, undisclosed legal theory at summary judgment)). Likewise, this may also be true shortly before discovery has closed because, if a plaintiff raises a new theory supporting one of its claims on the eve of the close of discovery, the defendant may be prejudiced where it lacks time to "formulate the discovery it need[s] on the[] new theor[y] and then to serve written discovery requests."

Corus Realty Holdings, Inc. v. Zillow Grp., Inc., No. C18-0847-JLR, 2020 WL 488545, at *9 (W.D. Wash. Jan. 30, 2020), aff'd, 860 F. App'x 728 (Fed. Cir. 2021).

### III. DISCUSSION

The Court has conducted de novo review relating to Apple's objections to the Special Master's Order No. 15. Based on that review, for the reasons explained below, the Court **SUSTAINS** the objections.

1. <u>Summary of Special Master Order No. 15</u>

In Order No. 15, the Special Master considered Plaintiffs' August 12, 2022 motion to compel discovery responses from Apple relating to documents and communications involving Rockley Photonics. Dkt. 917 at 7. In relevant part, the Special Master granted Plaintiffs' motion for the following categories of information.

| Request | Ruling |
|---|---|
| All agreements or contracts between Rockley and Apple. | The Special Master granted the motion for this information "because of the possible relevance of the information sought to damages in this case and the lack of undue burden shown to comply with this request." |
| Documents regarding technology, hardware, software, or components provided by Rockley to Apple (or vice versa) related to non-invasive physiological monitoring using light, including pulse rate, oxygen saturation, perfusion index, total hemoglobin, oxygen content, pleth variability index, methemoglobin, carboxyhemoglobin, respiration rate from the pleth, or blood glucose. | The Special Master granted the motion for this information because "sufficient basis supports the relevance of the information sought to Plaintiffs' trade secret misappropriation claims in this case, including as to Apple Watch prototypes, and Apple has not argued or otherwise shown that it would face any undue burden by being compelled to respond to the request." |
| Documents regarding, or communications with, Rockley that refer or relate to any effort (by Apple or Rockley) to recruit or hire individuals who at any time worked for Masimo or Cercacor. | The Special Master granted the motion for this information without explanation, but "with the understanding that this RFP is limited as referring or relating to any Apple or Rockley efforts to recruit or hire individuals ***because*** those individuals worked at Masimo or Cercacor." |

| Request | | Ruling |
|---|---|---|
| | Describe in detail Apple's relationship or collaboration with Rockley related to noninvasive physiological measurements, including: Rockley's technology, hardware, software, or components provided or used by Apple; Apple's technology, hardware, software, or components provided or used by Rockley; joint efforts to develop, modify, change, or test technology, hardware, software, or components; agreements or suggestions to share technology, hardware, software, or components; actual or contemplated payments or conveyances of other things or services of value. Your response should identify and describe all Documents and Communications relating to, and the people involved in, this topic. | The Special Master granted Plaintiffs' motion with respect to this interrogatory request without explanation, stating only that Apple's request to limit this to "light-based non-invasive physiological measurement" was denied. |

Id. at 7-10.

In conclusion, citing this Court's August 9 Order, the Special Master declined to reach Plaintiffs' new "joint misappropriation theory," but explained that the requests relating to RFP Nos. 682, 683, and 691 and Interrogatory No. 28 were granted because they "relate[] to the technology at issue in Plaintiffs' trade secret misappropriation claims, and [are] at least marginally relevant for that reason." Id. at 11. The Special Master explained that the "ongoing [relevance] debates [concerning the nature of the technology Rockley supplies to Apple] ultimately further support permitting Plaintiffs to explore the requests that have been granted by this Order." Id.

The Court will sustain Apple's objections because it finds that (1) Plaintiffs' requests are untimely; (2) the record does not support the conclusion that the requests relate to the technology at issue in Plaintiffs' claims; and (3) since relevance has not been shown, discovery is not warranted.

    2.    <u>Analysis of Objections</u>

        a.    <u>Timeliness</u>

The crux of Apple's motion is that Plaintiffs are again trying to inject a new theory of liability into this case at the eleventh hour, i.e., that Rockley allegedly produces "similar technology" to what is at issue in this litigation, thereby making the requested

Rockley-related discovery relevant to show Apple's misappropriation and damages. Similar to the arguments Plaintiffs made to support their new collateral estoppel theory, which the Court rejected, Plaintiffs argue that this information is fair game because it relates to their longstanding trade secrets misappropriation claim and prayer for relief against Apple.

The Court concludes that Plaintiffs' "similar-technology" theory as to Rockley, which it says will show liability for Apple, is new and cannot be introduced at this late stage of the case.

First, Plaintiffs waited at least until after the close of written discovery to disclose this theory. Indeed, Plaintiffs did not disclose it until May 24, 2022, when they raised a species of it in the same brief in which they raised the now-rejected equitable estoppel theory.[1] See Dkt. 932-2 at 1 (motion filed before the Special Master arguing "Rockley's business is focused on non-invasive optical monitoring of physiological parameters, including pulse oximetry, the very technology at issue here"); see also id. ("Rockley admittedly has a close relationship with Apple, and had every reason to advance Apple's interests in True Wearables.") (citation and quotations omitted); id. at 2 ("Masimo's subpoena seeks to shed light on Apple's access to Masimo's trade secrets through Rockley."). As stated, in the August 9 Order, it is too late to raise new theories at this time.

Plaintiffs suggest that the theory relates back to a third-party subpoena issued to Rockely on March 30, 2022, and any subsequent delay was caused by Apple and Rockley's gamesmanship as to quashing that subpoena. But Plaintiffs ignore the fact that they strenuously objected to Apple participating in the motion-to-quash litigation and convinced the Special Master to disregard Apple's statements. See Dkt. 893 at 6 (Special Master Order No. 12) (clarifying that, based on Plaintiffs' objections to Apple filing two one-page letters in the motion-to-quash litigation, "the determinations reached in this ruling do not rely on the arguments presented by Apple, making any … objection moot"). Plaintiffs also do not explain why they did not seek the same information from Apple on March 30, or earlier, especially where Apple is the defendant in this case against whom Plaintiffs have long alleged willful trade secret misappropriation and damages. There is no reason Plaintiffs could not have disclosed their new "similar technology" theory to Apple at least as early as March 30, 2022, when they issued the Rockley subpoena, i.e., before the close of written discovery on May 13, 2022.

Issuing a subpoena or a Request for Production on specific topics is not the same as disclosing the theory of liability behind the request, which matters here because

---

[1] Apple argues that Plaintiffs did not raise the theory as it relates directly to Apple's liability (as opposed to Rockley's involvement) until their August 26, 2022 reply brief before the Special Master. Mot. at 10. If this date is used, it provides an addition reason to deny the requests because this disclosure came after the close of all fact discovery, not just written discovery.

Plaintiffs had never hinted at this Rockley "related technology" theory during the long course of this litigation so Apple never sought reciprocal discovery on it.

Second, to the extent the Rockley subpoena and Plaintiff's last minute Request for Production No. 15 (Dkt. 932-3) hinted at the new theory, Plaintiffs do not explain why they waited until March 30, 2022 to serve the subpoena and May 13, 2022 to serve the RFP. In their Opposition, Plaintiffs suggest that they could not have explored the Rockley "related technology" theory before March 2022 because they could not have known the relevant facts until the True Wearables bench trial. Specifically, Plaintiffs assert that, "During the March 2022 trial in Masimo v. True Wearables, No. 8:18-cv-02001-JVS-JDE (C.D. Cal.), Masimo *learned* that Rockley hired many former employees of Masimo and Cercacor." Opp. at 3 (emphasis added); see also id. at 13 ("But Masimo itself did not know those employees went to Rockley *until* the True Wearables trial.") (emphasis added). But this is not what the trial record reflects.

Even crediting counsel's representations that they learned for the first time during the True Wearables trial that certain of their former employees now work at Rockley, Plaintiffs do not explain why they could not have uncovered this information earlier. For example, while cross-examining Cristiano Dalvi, Plaintiffs asked Dalvi to "turn to a tab in [the] black binder" with the international PCT patent application for international patent number WO2021116766A1, published on June 17, 2021. 3/18/22 Trial Tr. at 114:22-115:10. Plaintiffs confirmed that Dalvi was one of the listed inventors on the application, and Rockley is the listed applicant. *Id.* at 115:12-116:116:2; see also id. 117:18-118:5 (Q: "So it's public knowledge that you work for Rockley Photonics?" A: "Yes.").[2]

The fact that Plaintiffs had this publicly filed patent application at the ready during trial suggests that it could have learned in a timely fashion that Dalvi worked for Rockley. Indeed, Dalvi admitted it was public knowledge. Similarly, when cross-examining Rockley employee Sean Merritt, Plaintiffs confirmed that several other former Masimo or Cercacor employees also work for Rockley. See id. at 125:2-12 (Q: "And several other employees from Masimo or Cercacor also work at the same company you work for now, correct?" A: "Yes." Q: "And that includes at least Cristiano Dalvi, who just testified, Phillip Perea, Maria Javier, and Ferdyan Lesmana, correct?" A: "That's correct."); see also id. at 126:4-5 (Q: "And who is your current employer?" A: "Rockley Photonics."), 126:23-127:10 (confirming that Dalvi and Merrit are both listed on another patent application, WO2022029486, published on February 10, 2022, which was also in the prepared binder). Plaintiffs asked Merritt, "So it's not actually secret that you're working for Rockley Photonics, correct?" *Id.* 132:10-12; see also id. at 135:3-4 (same). Merritt confirmed it was not a secret. *Id.* Plaintiffs also clarified that "it's not actually secret that you're working on wearable wireless sensing

---

[2] This testimony was sealed intermittently at the time it was given and immediately unsealed upon Plaintiffs' request. See id. at 120:14-20 ("[Plaintiffs]: Your Honor, could we unseal the entirety of his testimony given that everything is public? THE COURT: Any objection? His testimony will be unsealed. [Plaintiffs]: Thank you, Your Honor. (The entirety of Christopher Dalvi's testimony was unsealed.)").

for physiological parameters at Rockley Photonics, correct?" Id. 132:13-16. Merritt confirmed that was not secret. Id.

Given that none of this was secret, Plaintiffs' professed ignorance concerning Rockley until the March 2022 True Wearables bench trial cannot justify their delay in raising the Rockley "related technology" theory until post-written discovery cutoff motion practice concerning the Rockely subpoena.

### b. Whether a New Theory Has Been Presented

As they argued with respect to the untimely collateral estoppel theory, Plaintiffs contend that the Rockley "related technology" theory is not new because it support their longstanding trade secret misappropriation and damages allegations against Apple. Specifically, Plaintiffs argue that the operative complaint pleaded damages and misappropriation, the topics to which the information is allegedly relevant. Opp. 11-12 (citing 4AC, Dkt. No. 296-1 ¶ 228-261 (alleging Apple's misappropriation, including knowledge and intent), ¶¶ 264-266 (alleging damages, including a "reasonable royalty"); ¶ 267 (alleging "willful and malicious" misappropriation)).

But like the collateral estoppel theory, Plaintiffs never alleged that Apple committed these acts through a third party, i.e., by obtaining Masimo trade secrets from Rockley employees. Cf. Stapleton v. Barrett Crane Design & Eng'g, 725 F. App'x 28, 32 (2d Cir. 2018) (district court did not abuse discretion for refusing to consider late third-party beneficiary theory of liability). All of Plaintiffs' disclosed allegations relate to the theory that Plaintiffs' former employees went to work for Apple and shared trade secrets with Apple. For example, Plaintiffs allege that, on information and belief, "Defendant misappropriated Plaintiffs' Confidential Information by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant." 4AC ¶ 228; see also id. at ¶¶ 229-232 (referencing Lamego and O'Reilly working at Apple). The Court is not prepared to allow the words "at least" to be a placeholder for a new theory that Apple obtained Plaintiffs' trade secrets through some other scheme involving Rockley employees. At this late stage of the case, allowing exploration of a case-within-a-case would derail the case's "firm track to trial." Dkt. 816 at 10 n.6.

Plaintiffs also did not timely raise the argument that Apple-Rockley agreements could serve as comparable licenses, or show that the technology was related because this was raised for the first time during the Rockley motion-to-quash litigation. See Dkt. 932-2 at 3 (May 24, 2022 letter brief stating: "The requests could also be relevant to damages because Apple's license or purchase of Rockley technology for physiological monitoring may inform the reasonable royalty for technology at issue in this case."). Even setting aside the fact that Plaintiffs precluded Apple from participating in the motion-to-quash litigation, Plaintiffs do not explain why they could not have raised this damages-related contention at least before the close of written discovery so Apple could seek reciprocal

discovery from Plaintiffs and/or Rockley to seek to undermine this new damages argument.

        c.      Relevance

Even if the Court deemed the discovery requests timely, the Court finds that Plaintiffs have made an insufficient showing of relevance as to *this* case. Plaintiffs' opposition hinges on the proposition that "Rockley's relevance is undeniable." Opp. at 11. But the Special Master's ruling rested on "ongoing relevance debates" to find that the information was at least marginally relevant. This is insufficient. First, ongoing relevance debates do not support relevance. The party requesting discovery must demonstrate relevance before the burden shifts to the party resisting discovery to show undue burden and lack of proportionality. Second, even setting aside that observation, the record does not support relevance because the record does not support Plaintiffs' "similar technology" argument.

For the Rockley-related discovery to be relevant to Apple's misappropriation of Plaintiffs' trade secrets and the reasonable royalty in this case, Plaintiff must make a baseline showing that Rockley's technology at least has some similarity to the asserted trade secrets at issue here, such that the requested information could support Plaintiffs' theory that Rockley employees (who used to work for Plaintiffs) supplied trade secret information to Apple, and/or that the similarity between the technology makes the Apple-Rockley agreements relevant to demonstrating a reasonable royalty based on comparable licenses.

Plaintiffs' RFP No. 683 provides an illustration of the problem. Plaintiffs argue this RFP seeks *relevant* documents where it requests "documents describing the technology Rockley provided to Apple for 'non-invasive physiological monitoring using light,'" because it will show whether "that technology is 'comparable to' the Masimo trade secrets that Apple misappropriated." Opp. at 8. But this requests puts the cart before the horse. Through RFP 683, Plaintiffs want to see whether the technology Rockley provides to Apple is similar to the technology underlying the trade secrets asserted against Apple so it could support some type of reasonable royalty argument. This circular logic does not demonstrate relevance.[3]

---

[3]     By Plaintiffs' own admission, Interrogatory 28 and RFP No. 682 share similar problems in that they want Apple to describe the Rockley technology. See Opp. at 8-9. Rockley technology is relevant to Georgia-Pacific factors 2 and 3 if it is similar. Plaintiffs need to show some similarity before this triggers relevance. If a baseline relevance showing were not required, Plaintiffs could simply issue discovery requests relating to all Apple vendors hoping to find some sort of similarity. Rule 26 does not provide for such fishing expeditions.

The information on which Plaintiffs rely to assert relevance includes "Rockely's admissions, Apple's 30(b)(6) deposition testimony, and at least one Apple document." Opp. at 8.

First, Plaintiffs aver that Rockley's most recent 10-K states that Rockley aspires to provide "consumer wearables" and "medical devices" for "pulse oximetry," including a wrist-worn device. See Opp. at 2. But Rockley's disclosures do not demonstrate relevance to this case, i.e., they say nothing about Apple's potential liability.

For example, in the 10-K dated 12/32/21, Rockley "expect[s] that our immediate focus over the next two years will be on developing and commercializing our products for incorporation in consumer wearables, medical devices, and dedicated osluations for the healthcare market. . . . [W]e have captured the attention of several consumer electronicas companies" and have non-binding MOUs with different companies that currently account for 60% of the market of wearable devices. Dkt. 930-2 at p. A-8. Rockley explains that its technology and manufacturing expertise encompasses "photonic integrated circuits" as well as "application-specific electronic integrated circuits," and "photonic and electronic co-packaging, which are all supported by and coupled with biosensing algorithms, AI, cloud analytics, firmware/software, system architecture, and hardware design." Id. Rockley "ha[s] shipped early engineering samples to some of [its] customers to support research and development efforts." Id. Specifically, Rockley hopes to improve various biomarkers for consumer healthcare based on improved laser technology that will "support[] up to 1,000,000 times higher resolution, 1,000 times higher accuracy, and 100 times broader range in wavelength than existing LED offerings in wearable solutions." Id. at A-9. Rockley states this is based on comparing its own "photonics-based spectrometer chip[s] to existing solutions." Id.

Setting aside the fact that this publicly available document further demonstrates the untimeliness of Plaintiffs' requests, relevance is not established simply because Plaintiffs believe that Rockley's forward-looking statements mean that Rockley facilitated trade secret misappropriation by Apple. None of the disclosures implicates Plaintiffs' asserted trade secrets or supports the contention that such trade secrets were shared with Apple. Compare Dkt. 650-1 (Plaintiffs' § 2019.210 Statement).

For example, Plaintiffs do not aver that Plaintiffs have ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ the technology for which has been misappropriated. Indeed, Plaintiffs have never mentioned or asserted such technology. Compare id. Plaintiffs also point to nothing in the Rockley 10-K suggesting that the referenced MOUs or development/supply agreements cover similar technology such that discovery would be warranted to try to establish comparability. Allowing the requested discovery without more would open the door to far-reaching third-party subpoenas any time a trade secret

plaintiff has a hunch that certain vendor technology might have some overlap with the asserted trade secrets. This is insufficient.[4]

Second, although Plaintiffs' opposition contends in passing that Apple's 30(b)(6) witness testimony supports relevance, the cross-referenced sections, II. A-D, do not mention that deposition or testimony.

Third, Plaintiffs argue that ███████████████████████████████ ███████████ Opp. at 4 (citing Dkt. 919). Plaintiffs argue this shows relevance because ███████████████████████████████████████████ ████████████████████████████████ like the 10-K, the Court finds nothing to establish baseline relevance to this case.

Finally, to the extent Plaintiffs insinuate that the Court should infer relevance because they believe Apple and/or Rockley are hiding something, as stated, the Court "will not order expansive discovery on the speculative theory that [a party] may be hiding certain information." Dkt. 816 at 10.

Because the Court finds no relevance, it does not reach proportionality.

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Apple's objections to the Special Master's Order No. 15.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of the sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

**IT IS SO ORDERED.**

_____ : ___0___

Initials of Preparer     lmb

---

[4] The "Fast Company" article cited by Plaintiffs also does not establish relevance because it does not link Rockley technology to the allegations against Apple in this case. Further, the article is internally inconsistent, suggesting that Rockley sensors are in the Apple Watch, yet Apple is waiting to bring the Rockley technology to its Apple Watch until battery life improves. See Dkt. 930-2 at 15-16, 18.