Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO STRIKE PLAINTIFFS' REASONABLE ROYALTY THEORY**<br><br>Date:     December 12, 2022<br>Time:     1:30 p.m.<br>Location:  Courtroom 10C |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................ 2

    A.    Masimo Disclosed The Relevance Of Its OEM Agreements Long Ago ............................................................................................ 2

    B.    Apple Did Not Seek More Information On Masimo's OEM Agreements ................................................................................... 4

    C.    Kinrich Analyzed Which Agreements Were Most Relevant ............... 5

    D.    Apple Recognized That Reasonable Royalties Are Analyzed By Experts ....................................................................................... 6

III. ARGUMENT .............................................................................................. 7

    A.    Masimo Complied With Rule 26 .......................................................... 7

        1.    Masimo Properly Disclosed Its Reliance on the ████ ████████ ......................................................................... 7

        2.    Apple's Cited Cases Do Not Show Masimo Violated Rule 26 ....................................................................................... 10

    B.    The Court Should Deny Apple's Motion To Strike Under Rule 37 ......................................................................................... 11

        1.    Apple Was Not Surprised or Prejudiced .................................. 12

        2.    Any Alleged Prejudice Can Be Cured ..................................... 14

        3.    Trial Will Not Be Disrupted .................................................... 15

        4.    Masimo Has Not Engaged in Bad Faith or Willfulness .......... 17

        5.    Apple's Cases Do Not Support Exclusion ............................... 17

IV. CONCLUSION ........................................................................................ 18

# TABLE OF AUTHORITIES

**Page No(s).**

*A.C.T. 898 Prod., Inc. v. W.S. Indus., Inc.,*
2017 WL 2992741 (C.D. Cal. Apr. 11, 2017) .................................................. 12

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,*
694 F.3d 1312 (Fed. Cir. 2012) ........................................................................ 8

*Ajaxo Inc. v. E*Trade Financial Corp.,*
187 Cal. App. 4th, 1295, 1299-1300 (2010) ................................................... 16

*Amos v. Makita U.S.A., Inc.,*
2011 WL 43092 (D. Nev. Jan. 6, 2011) ......................................................... 11

*Armenian Assembly of Am., Inc. v. Cafesjian,*
746 F. Supp. 2d 55 (D.D.C. 2010) ................................................................. 17

*Asia Vital Components Co., Ltd. v. Asetek Danmark A/S,*
377 F. Supp. 3d 990 (N.D. Cal. 2019) ............................................................ 10

*Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of California, Inc.,*
2014 WL 4180955 (C.D. Cal. Aug. 18, 2014) .................................... 2, 14, 16, 17

*Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of California, Inc.,*
545 Fed. Appx. 600 (9th Cir. 2013) ........................................................... 2, 16

*Becerra v. J.C. Penney Corp., Inc.,*
2017 WL 1479410 (C.D. Cal. Apr. 24, 2017) ................................................ 12

*Beecham v. Roseville City Sch. Dist.,*
2017 WL 4038360 (E.D. Cal. Sept. 13, 2017) ............................................... 12

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.,*
967 F.3d 1353 (Fed. Cir. 2020) ...................................................................... 8

*E.& J. Gallo Winery v. Strategic Materials, Inc.,*
2019 WL 3729811 (E.D. Cal. Aug. 8, 2019) ................................................. 11

*F.D.I.C. v. Anderson,*
2012 WL 3728160 (E.D. Cal. Aug. 27, 2012) ...................................... 11, 14, 18

*F.D.I.C. v. First Heights Bank, F.B.,*
1998 WL 34363723 (E.D. Mich. Apr. 13, 1998) ............................................ 9

*FAS Techs., Ltd. v. Dainippon Screene Mfg., Co.,*
2001 WL 1159776 (N.D. Cal. Sept. 21, 2001) ............................................... 16

*Finjan, Inc. v. Cisco Sys. Inc.,*
2020 WL 13180008 (N.D. Cal. June 5, 2020) ................................................. 8

1
2
3

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

4
5
*Fjelstad v. American Honda Motor Co., Inc.*,
   762 F.2d 1334 (9th Cir. 1985) ...................................................................17

6
*Frontline Med. Assoc., Inc. v. Coventry Health Care*,
   263 F.R.D. 567 (C.D. Cal. 2009)..................................................................4

7
8
*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale - Phase II LLC*,
   2021 WL 9597885 (D. Ariz. Feb. 22, 2021) ..............................................12

9
10
*Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*,
   No. 13-CV-11544, 2015 WL 4771096 (E.D. Mich. Aug. 13, 2015) ..................9

11
12
*Guzik Tech. Enters., Inc. v. W. Digital Corp.*,
   2013 WL 6070414 (N.D. Cal. Nov. 18, 2013) ..............................................11

13
*Hebrew Univ. of Jerusalem v. Gen. Motors LLC*,
   2012 WL 12507522 (C.D. Cal. May 31, 2012)..............................................8

14
15
*Homeland Housewares, LLC v. Sharkninja Operating LLC*,
   2016 WL 1698254 (C.D. Cal. Apr. 27, 2016) ..............................................11

16
*Jones v. Travelers Cas. Ins. Co. of Am.*,
   304 F.R.D. 677 (N.D. Cal. 2015) ...............................................................15

17
18
*Lanard Toys, Ltd. v. Novelty, Inc.*,
   375 Fed. App'x 705 (9th Cir. 2010) ...........................................................12

19
20
*Liberty Insurance Corp. v. Brodeur*,
   41 F4th 1185 (9th Cir. 2022) ...............................................................11, 12

21
*O'Connell v. Chapman Univ.*,
   245 F.R.D. 652 (C.D. Cal. 2007)................................................................12

22
23
*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ....................................................................10

24
*Polaris PowerLED Techs. v. VIZIO, Inc.*,
   2020 WL 4258663 (C.D. Cal. May 14, 2020)..............................................17

25
26
*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
   280 F.R.D. 147 (S.D.N.Y. 2012) ...............................................................15

27
28
*Silvers v. Sony Pictures Entm't*,
   402 F.3d 881 (9th Cir. 2005) ....................................................................10

**TABLE OF AUTHORITIES**
(***cont'd***)

**Page No(s).**

*Sommerfield v. City of Chicago,*
254 F.R.D. 317 (N.D. Ill. 2008) ...........................................................9

*Stone Brewing Co., LLC v. MillerCoors LLC,*
2020 WL 907060 (S.D. Cal. Feb. 25, 2020)........................................4

*Stonefire Grill, Inc. v. FGF Brands, Inc.,*
2013 WL 12126773 (C.D. Cal. June 27, 2013)..................................12

*Undiscovered Corp. v. Heist Studios,*
2019 WL 8219489 (C.D. Cal. Oct. 1, 2019) ........................................4

*Waymo LLC v. Uber Techs., Inc.,*
No. C 17-00939 WHA, 2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) .............9

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
259 F.3d 1101 (9th Cir. 2001) ..........................................................11

**OTHER AUTHORITIES**

California Civil Code Section 3426.3........................................................16

Fed. R. Civ. P. 45.....................................................................................15

Rule 26..............................................................................................*passim*

Rule 37 ..................................................................................11, 16, 18

# I. **INTRODUCTION**

There is no dispute that Masimo disclosed in its interrogatory responses that it may rely on its agreements with Original Equipment Manufacturer ("OEM") in calculating remedies. There is also no dispute that Masimo timely produced those agreements, as well as documents about the agreements, including source code and revenue data. There is also no dispute that Apple recognized the relevance of those agreements and received discovery on them in response to Apple's demands.

Apple largely ignores these facts and argues Masimo violated Rule 26(e) because its interrogatory responses did not identify by name its OEM agreement with ███████ ███████. But Masimo had no reason to differentiate among the OEM agreements during fact discovery. As Apple acknowledges, ████████████████████████ ██████. Apple complains that Masimo identified some other third parties by name. Masimo did so because the other third-party agreements were not OEM agreements.

Thus, Masimo disclosed potentially relevant agreements during fact discovery and then designated an independent expert to analyze which agreements are most economically comparable to a hypothetical negotiation between the parties. That is precisely what parties are supposed to do. Indeed, Apple also produced agreements during discovery and then designated experts to opine on which agreements, and which patents within those agreements, were most relevant. Courts do not require parties to predict and disclose during fact discovery the precise evidence that an expert will later find most relevant. Doing so would usurp the expert's independence and force experts to improperly act as the lawyer's mouthpiece. Masimo did not violate Rule 26(e).

Moreover, nothing justifies Apple's requested severe sanction of striking Masimo's reasonable royalty theory. Apple was not surprised and did not suffer any prejudice. Masimo identified the OEM Agreements and Apple acknowledged they were relevant. Apple then sought and received discovery on them. Apple now claims it would have sought more discovery if it had known Masimo's expert would rely on the ██ ███████ in particular. But Apple does not identify any other specific discovery it

-1-

would have sought.  Apple also ignores that it did **not** seek discovery from nearly all third parties that Masimo identified in its interrogatory response.

If this Court were to determine additional discovery is appropriate, such discovery would not interfere with trial.  California trade secret law provides that reasonable royalties are equitable and determined by the Court **after** trial if the plaintiff is unable to prove actual damages or unjust enrichment at trial.  The Ninth Circuit held that "tardiness" in presenting a reasonable royalty theory does not prejudice the defendant because any additional discovery can be conducted, even after trial.  *Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of California, Inc.*, 545 Fed. Appx. 600, 601 (9th Cir. 2013) (reversing and remanding).  On remand, this Court then denied a motion to strike a reasonable royalty theory based on an agreement never produced in discovery.  *Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of California, Inc.*, 2014 WL 4180955, at *2 (C.D. Cal. Aug. 18, 2014).  Here, Masimo produced the ███████████ and Apple obtained discovery on it.  The Court should deny Apple's Motion.

## II.  BACKGROUND

### A.  Masimo Disclosed The Relevance Of Its OEM Agreements Long Ago

Apple's Interrogatory No. 17 sought Masimo's contentions on all financial relief. Ex. 1 at 7.[1]  In August 2020, Masimo supplemented its response to explain:

> Plaintiffs may rely on Purchasing & Licensing Agreements with third parties. Masimo's Purchasing & Licensing Agreements ("PLAs") with third parties are subject to confidentiality provisions that prevent Masimo from disclosing such PLAs in litigation without the consent of the corresponding third party.  Masimo has not yet received consent to produce any of its PLAs in this action.  To the extent Masimo intends to rely on any of its PLAs in this action, Masimo will endeavor to obtain the consent of the third party and produce the corresponding PLA as soon as reasonably possible.

*Id.* at 10.  Masimo's CEO, Joe Kiani, explained during his deposition that these PLAs

---

[1] Numbered exhibits are attached to the Passamaneck Declaration (Dkt. 1013) and lettered exhibits are attached to the Kachner Declaration (submitted herewith).

1  set forth the terms and conditions by which Masimo authorizes its OEM partners to use

2  its technology.  Ex. 7 at 55 (Kiani Depo. 218:13-17).  As a result, both parties have

3  referred to the PLAs as "OEM Agreements."  *See e.g.*, Ex. A.  During discovery, Apple

4  argued that "Masimo's OEM agreements are especially relevant to Plaintiffs' claims."

5  *Id.* at 1 (1/18/2022 email).  Apple had also acknowledged Masimo "may rely on

6  'Purchasing & Licensing Agreements ('PLAs') with third parties'".  Ex. 5 at 4.

7        During discovery, it took Masimo several months to resolve third-party

8  confidentiality obligations with its OEM partners so that it could produce its OEM

9  Agreements to Apple.  *See* Ex. A at 1-3.  Masimo ultimately obtained consent and Apple

10 admits that Masimo timely produced those agreements (including the ████████████

11 ███ at issue here) during discovery.  *See* Br. at 9; Passamaneck Decl. ¶ 8.

12       As Apple recognizes, Masimo also produced substantial information about the

13 OEM Agreements pursuant to Apple's document requests.  Masimo produced numerous

14 documents about its OEM relationships, ███████████.  Br. at 9.  Masimo timely

15 produced all sales data and financial information ████████████.  Kachner Decl. ¶ 8.

16 Masimo also timely produced the source code that is the subject of the ███████████.

17 *See* Ex. 3 at 5 (MDK October 25, 2022 email).

18       Apple understood the relevance of the OEM Agreements and questioned several

19 current and former Masimo executives on those agreements.  Kiani testified about

20 Masimo's agreements with its OEM partners.  Ex. 7 at 55 (218:13-17).  Apple also

21 deposed Masimo's former President of Worldwide OEM Business, Rick Fishel.  Fishel

22 was responsible for managing Masimo's relationship with OEMs around the world.  Ex.

23 11 at 6 (21:13-23:13).  Apple questioned Fishel about Masimo's OEM business.  Fishel

24 testified about Masimo's OEM Agreements and how Masimo authorizes OEM partners

25 to integrate Masimo technology in their monitors.  *Id.* at 4-6 (16:17-17:21, 22:6-23:13).

26 Fishel specifically identified several OEM partners by name, ███████████  *Id.* at 5

27 (17:5-21).  Apple did not ask follow-up questions or explore any differences between

28 Masimo's OEM Agreements.

**B.** <u>**Apple Did Not Seek More Information On Masimo's OEM Agreements**</u>

In December 2021, Apple moved to compel a computation of damages under Rule 26 and for supplemental responses to Interrogatory Nos. 13 and 17, which concern Masimo's harm and damages.  Ex. 5.  Apple argued Masimo should be required to identify its full contentions with exacting specificity.  *See id.* at 3-4.  Apple argued Masimo should identify the "royalty rate" and "royalty base," but did not argue it needed more information about Masimo's OEM Agreements.  *See id.* at 2.

Masimo offered to provide the "factual information it currently knows" but explained it "cannot provide full damages calculations and theories because that information depends on discovery from Apple and expert testimony."  Ex. B at 1.  Masimo also cited extensive authority explaining that, especially in sophisticated intellectual property cases like this one, courts recognize that damages analysis is typically performed by experts at a later stage.  *Id.* at 1-3; *see, e.g.*, *Stone Brewing Co., LLC v. MillerCoors LLC*, 2020 WL 907060, at *8 (S.D. Cal. Feb. 25, 2020); *Undiscovered Corp. v. Heist Studios*, 2019 WL 8219489, at *1 (C.D. Cal. Oct. 1, 2019); *Frontline Med. Assoc., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009); Fed. R. Civ. P. 26 Advisory Committee Notes.

The Special Master "did not order the particulars that Apple demands at this time."  Dkt. 617 at 6.  However, the Special Master explained that disclosing "what a case is worth" is important so that parties know what resources it should dedicate to the case.  *Id.* at 5.  Thus, the Special Master ordered Masimo to provide information "on whether this is a $1 case or a case worth billions."  *Id.* at 6. The Special Master encouraged the parties to find a "middle ground" on damages contentions.  *Id.*  The Special Master stated he "will be available to consider any further disputes relating to these items after Masimo has supplemented these responses."  *Id.*

Masimo complied with the Special Master's order by supplementing its Rule 26 disclosures to provide approximate ranges of damages.  Ex. 6 at 8-9.  Masimo also supplemented its response to Interrogatory No. 17 with more details about Masimo's

damages theories. Ex. 1 at 11-15. Among other things, Masimo recited the facts and legal theories supporting its contentions concerning Masimo's actual losses and Apple's unjust enrichment. Masimo also added more facts that it may rely on to determine a reasonable royalty. *Id*. Masimo also identified individuals with knowledge and supporting documents. *See e.g., id.* at 11, 16-22. With each interrogatory supplement, Masimo incorporated its prior response disclosing its reliance on its OEM Agreements. *Id*. at 9, 10, 11, 16, 22, 29, 30.

In May 2022, Apple again moved to compel. Ex. C. Again, Apple did ***not*** seek any further information about Masimo's OEM Agreements. *Id*. In fact, Apple did not seek any information about Masimo's reasonable royalty theory. *Id*. Rather, Apple moved on five specific categories of information unrelated to reasonable royalties: █

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ *Id*. at 3-4.

The Special Master granted-in-part Apple's motion on portions of Apple's five specific requests. Dkt. 891 at 10. Because Apple's motion did not address Masimo's reasonable royalty theory or reliance on OEM Agreements, the Special Master's order did not order a supplement on these subjects. *See id*. Masimo complied with the Special Master's order by supplementing its responses to provide further details on its other damages theories. Ex. 1 at 22-29.

In total, Masimo served seven supplemental responses to Apple's Interrogatory No. 17. *See* Ex. 1. Masimo served those supplements to respond to specific requests by Apple and to thoroughly disclose Masimo's theories of recovery.

## C. Kinrich Analyzed Which Agreements Were Most Relevant

Masimo's damages expert, Jeff Kinrich, timely served his expert report. Kinrich reviewed the agreements that Masimo identified during discovery and conducted an

independent expert economic analysis to determine which agreements were economically comparable.  Ex. 2 at 97-111.  Kinrich explained that he reviewed "approximately 20 Masimo agreements, as well as additional amendments to certain agreements."  Kinrich at 97 (¶ 194).  Kinrich explained his understanding that, "Masimo's OEM agreements including their agreement with ███████████ include the Masimo Trade Secrets and / or comparable technology." *Id.* ¶ 195.  Kinrich went on to specifically address three Masimo agreements, one of which was Masimo's OEM ████████████.  *Id.* ¶¶ 196-215.  Kinrich's report discussed the details of such agreements and explained why he believed the ███████████ was economically comparable for purposes of a reasonable royalty rate. *Id.* ¶ 218.[2]

**D.**   **Apple Recognized That Reasonable Royalties Are Analyzed By Experts**

Early in the case, the parties served nearly identical damages interrogatories. *Compare* Ex. 1 at 7 (Apple Interrogatory No. 17) *with* Ex. D at 113 (Masimo Interrogatory No. 16).  In May 2022, Apple █████████████████████████ ██████████████████████████████████████████████████████████ ████  *Id.* at 128.  Apple then stated that █████████████████████████ █████████████████████████  *Id.* at 128-129.  ██████████████████ ██████████████████  Ex. E (Sarrafzadeh at 382-403).  ███████████████ ████████████  *Id.* at 406 (¶ 810).  In August 2022, Apple █████████████ ██████████████████████████  Ex. D at 132.  In September 2022, Apple identified ██████████████████████████████████████.  Ex. D at 156-157.

In November 2022, Apple served its rebuttal damages report from Shirley Webster.  Ex. F.  Webster extensively analyzed and opined on █████████████ ████████████████████████  *Id.* at 117-118, 122-125, 133-136.  Webster also provided her

---

[2] Apple contends that "Plaintiffs served an 'updated' report on October 17, 2022 with numerous changes."  Mot. at n. 2.  Kinrich provided an errata eleven days after his original report that corrected some clerical errors and calculations.  The corrections did not concern the ██████████.

own affirmative opinions on Apple's license agreements.  *Id.* at 138-156.  Webster identified documents that she found most relevant, one which Apple had not disclosed.  *Id.*  Webster also relies on Apple's technical expert, Dr. Sarrafzadeh, to provide a technical analysis of particular patents in particular licenses.  *See* Ex. F at 138-156.

## III.  ARGUMENT

### A.  Masimo Complied With Rule 26

#### 1.  Masimo Properly Disclosed Its Reliance on ███████████

Apple acknowledges Masimo's interrogatory response disclosed that Masimo may rely on its OEM Agreements.  Mot. at 3.  Masimo repeatedly incorporated that response into each supplement throughout the case.  Ex. 1 at 9, 10, 11, 16, 22, 29, 30.  As a result, Apple has long recognized that "Masimo's OEM agreements are especially relevant to Plaintiffs' claims" and that Masimo "may rely on 'Purchasing & Licensing Agreements ('PLAs')'" with others.  Ex A at 1 (1/18/2022 email); Ex. 5 at 4.  Apple also took discovery on those agreements.  Masimo produced many documents on the agreements and its OEM ███████████.  Apple also deposed Masimo witnesses about its OEM relationships.  *See* Exs. 7 and 11.

Despite the extensive discovery Masimo provided, Apple contends Masimo violated Rule 26(e) by not identifying the ███████████ by name in its interrogatory responses.  Mot. at 8.  But Apple admits that ████████████████████ ██████████████ Mot. at 9.  ████████████████████ ████████████████████████████████████████ ████████████████████████████████████ Kachner Dec. ¶ 9.  For these reasons, Masimo disclosed in fact discovery that it may later rely on one or more of its OEM Agreements during the expert discovery phase.  Kinrich analyzed the OEM Agreements and determined which agreements he thought were most economically comparable to the hypothetical negotiation between the parties.

Kinrich performed the tasks properly assigned to experts.  As the Federal Circuit has explained, "[a]ssessing the comparability of licenses requires a consideration of

whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372-73 (Fed. Cir. 2020). Experts properly perform such analyses to select the most comparable licenses. *Id.* (expert properly relied on three particular licenses "that he deemed comparable"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (parties' experts properly analyzed and disagreed as to the "degree of comparability" of the licenses); *Finjan, Inc. v. Cisco Sys. Inc.*, 2020 WL 13180008, at *10 (N.D. Cal. June 5, 2020) ("Both parties' damages experts rely on a selection of Finjan's license agreements to support their opinions."); *Hebrew Univ. of Jerusalem v. Gen. Motors LLC*, 2012 WL 12507522, at *3 (C.D. Cal. May 31, 2012) (allowing parties to introduce "any licensing agreement that either party's experts deemed comparable" from a group of "60" agreements, some of which were not timely produced).

Not surprisingly, Apple's experts performed the same type of analysis. In May 2022, Apple disclosed █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Apple suggests Masimo buried the ████████████████████████████████████████████████████████████████ Mot. at 9. But Apple deposed Fishel on Masimo's OEM partners and Fishel specifically ████████████ Ex. 11 at 5 (17:5-21). And Apple acknowledges the vast majority of ████████████ it references are not OEM

-8-

Agreements.  Rather, they reflect the extensive information Masimo produced about OEM Agreements.  Indeed, Apple admits Masimo produced ███████████████.  Mot. at 9.

Apple further argues Masimo's disclosure that "it *may* rely on PLAs generally must be read in light of its subsequent decision to identify a handful of specific ████████ ███ licensing agreements/discussions." Mot. at 9.  But the "specific" agreements and negotiations that Apple references were ***not*** OEM Agreements.  Masimo disclosed it ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████.  Thus, Masimo disclosed that it may rely on its OEM Agreements and that it may rely on non-OEM agreements and negotiations.

Apple suggests Masimo's lawyers should have picked the precise OEM Agreement on which its expert must rely.  Apple's suggestion would improperly usurp the expert's independence.  Courts demand that experts conduct independent analysis and do ***not*** serve as mere mouthpieces for attorneys.  *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 2015 WL 4771096, at *9 (E.D. Mich. Aug. 13, 2015) ("The key is making sure [the expert's] testimony is not a mouthpiece of [the party]—"a party's lawyer's avatar"—because he would then "contribute[ ] nothing useful to the decisional process."); *see also Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017) (same); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 n.5 (N.D. Ill. 2008) (same); *F.D.I.C. v. First Heights Bank, F.B.*, 1998 WL 34363723, at *4 (E.D. Mich. Apr. 13, 1998) ("Justice will be best served if the opinion set forth by the expert is truly an independent opinion developed through the expert's own knowledge, skills and investigation rather than the regurgitated opinion of the attorney.").

Masimo properly notified Apple of the agreements that it believed were relevant to damages and allowed its expert to conduct an analysis of which agreements were most comparable.  Masimo provided that analysis through expert reports, just as required by

Rule 26 and cases interpreting that rule.

### 2.   Apple's Cited Cases Do Not Show Masimo Violated Rule 26

None of Apple's cited cases show Masimo violated Rule 26.   In *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861-64 (9th Cir. 2014), the defendant identified 38 new fact witnesses 15 months after the close of fact discovery.  *Id*. at 862.  The Court determined that reopening discovery for 38 witnesses would have been costly and disruptive to trial preparations.  *Id*. at 863.  Thus, the Court found the failure to disclose was neither substantially justified nor harmless.  *Id*. at 863.  The facts here are nothing like *Ollier*.

Moreover, Apple cites *Ollier* for the proposition that parties should "try cases on the merits, not by surprise, and not by ambush."  But Apple has not been ambushed. Masimo produced its OEM Agreements, Masimo disclosed they were relevant, and Apple conducted extensive fact discovery on them.   Apple also recognized that "Masimo's OEM agreements are especially relevant to Plaintiffs' claims."  Ex A at 1. It could come as no surprise that Masimo's expert conducted an economic analysis of Masimo's OEM Agreements to select which agreements were most comparable. Apple's efforts to strike ███████████ are contrary to *Ollier's* principle that parties should "try cases on the merits."

Apple's reliance on *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 885 (9th Cir. 2005), is also misplaced.  *Silvers* concerned a principle of statutory interpretation, namely when the statute lists "certain persons, things, or manners of operation, all omissions should be understood as exclusions."  *Id.* (quoting *Silvers*).  *Silvers* says nothing about whether a party may disclose a category of relevant agreements and then have experts independently analyze and select those they find most comparable.

Apple cites *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1004 (N.D. Cal. 2019).  Br. at 9.  *Asia Vital* precluded a rebuttal expert from giving an undisclosed noninfringement opinion.  The court determined the proffering party did not satisfy its disclosure obligation by merely producing a document it would later rely

-10-

on without ever identifying the noninfringement theory.  No such facts exist here.

Apple's reliance on *E. & J. Gallo Winery v. Strategic Materials, Inc.*, 2019 WL 3729811, at \*6 (E.D. Cal. Aug. 8, 2019), is also misplaced.  That case involved two theories of recovery.  Though the plaintiff failed to disclose both theories, the Court declined to strike one theory because the defendant questioned witnesses about it during depositions.  *Id.* at \*5.  The Court explained the defendant understood the theory enough to question witnesses about it during depositions.  *Id.*  Similarly, Apple recognized Masimo's OEM Agreements were especially relevant to remedies and sought discovery on them.  Apple questioned witnesses, including Masimo's CEO and Masimo's former President of Worldwide OEM Business, about Masimo's OEM business.  Thus, *E. & J. Gallo* supports Masimo.

## B.    The Court Should Deny Apple's Motion To Strike Under Rule 37

Courts impose sanctions only if a party failed to disclose information and that failure was not "substantially justified or harmless."  *See Liberty Insurance Corp. v. Brodeur*, 41 F4th 1185, 1191-92 (9th Cir. 2022); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Courts prefer "deciding matters on the merits, rather than on procedural missteps."  *F.D.I.C. v. Anderson*, 2012 WL 3728160, at \*3–4 (E.D. Cal. Aug. 27, 2012) ("incomplete disclosure" of a non-retained expert did not justify exclusion).  Even where a party fails to timely disclose evidence cited in expert reports, "the court's goal always is to resolve the case on the merits so long as undue prejudice can be avoided."  *See also Guzik Tech. Enters., Inc. v. W. Digital Corp.*, 2013 WL 6070414, at \*7 (N.D. Cal. Nov. 18, 2013).

"Excluding expert testimony is not proper when there are other, less severe sanctions available."  *Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, at \*4 (D. Nev. Jan. 6, 2011); *Homeland Housewares, LLC v. Sharkninja Operating LLC*, 2016 WL 1698254, at \*5 (C.D. Cal. Apr. 27, 2016) ("trial is still far enough away to allow the document in and also allow Plaintiffs to conduct discovery").  Courts typically do not exclude evidence where additional discovery can cure the alleged prejudice.  *See*

-11-

*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale - Phase II LLC*, 2021 WL 9597885, at *5 (D. Ariz. Feb. 22, 2021) (declining to exclude expert who relied on improperly withheld documents); *O'Connell v. Chapman Univ.*, 245 F.R.D. 652, 655-56 (C.D. Cal. 2007) ("any prejudice suffered by defendant from the tardiness [of a late expert report] can be addressed by various remedies other than the extremely harsh remedy of the exclusion"); *Beecham v. Roseville City Sch. Dist.*, 2017 WL 4038360, at *3 (E.D. Cal. Sept. 13, 2017) (untimely disclosure cured by extending expert discovery for the limited purpose of allowing defendants to fully depose the expert).

The ability to depose a witness weighs against excluding testimony. *See Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010) (failure to comply with Rule 26(a) harmless where party served a preliminary expert declaration prior to the deadline, produced a "supplemental" expert declaration seven months before trial, and the moving party did not attempt to depose the expert); *Amos*, 2011 WL 43092, at *4 (no harm where "party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert."); *Becerra v. J.C. Penney Corp.*, 2017 WL 1479410, at *3 (C.D. Cal. Apr. 24, 2017); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 2013 WL 12126773, at *5–6 (C.D. Cal. June 27, 2013); *A.C.T. 898 Prod., Inc. v. W.S. Indus., Inc.*, 2017 WL 2992741, at *2 (C.D. Cal. Apr. 11, 2017).

Courts often consider four factors in evaluating harmlessness and justification: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Insurance Corp.*, 41 F.4th at 1191-92.  Apple fails to acknowledge those factors.  As explained in detail below, all four factors confirm exclusion would be inappropriate.

### 1.   **Apple Was Not Surprised or Prejudiced**

As discussed, Apple has long known that Masimo's OEM Agreements were relevant to damages. *See* Ex. 1 at 10 (Masimo interrogatory response disclosing Masimo may rely on OEM Agreements); Ex. Ex. 5 at 4 (Apple admitting Masimo "may rely on

'Purchasing & Licensing Agreements ('PLAs') with third parties'"); Ex. A at 1 (Apple admitting "Masimo's OEM agreements are especially relevant"). Apple also recognized that ███████████████████████ Mot. at 9. Kinrich properly performed the tasks assigned to experts by analyzing those ████████████. He then relied on the agreements that he believes are the most relevant to a hypothetical negotiation between the parties. Such an analysis comes as no surprise. Indeed, Apple's experts ████████████████████████████████████████████████████ ███████████████████████████████████████████

Apple claims it was "misleading" for Masimo to "list licensing agreements or discussions with specific companies like ██████████████████████ ████████████ Br. at 11. As discussed, those agreements are not OEM Agreements.

Apple also claims Masimo "caused Apple to devote resources to investigating companies that were ultimately wholly irrelevant to Mr. Kinrich's royalty analysis ████ ██████████████ Id. But Apple's argument contradicts the record. Apple took no third-party discovery of ████████████████████. Apple served a subpoena on ████████████████████████████████████████████████████ ██████████████████████████. Thus, nothing supports Apple's argument that it devoted significant resources on such matters.

Apple similarly argues that, if Masimo had identified ████████████ by name, "Apple would have sought discovery ████████████████████████████ ██████████████████████████ Br. at 11. As discussed, pursuant to Apple's discovery requests, Masimo produced and information about Masimo's ████████████ ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████

Apple's argument that it would have sought ████████████████████ (Br. at 11) is also contrary to the facts. Indeed, Apple did not take ██████████████████

-13-

1 ███████████████████████████████████████████████

2 ██████████████████████████████████████ Apple deposed none of them.

3     Accordingly, nothing suggests that Apple suffered any surprise or prejudice.

4 Apple's arguments contradict the record.

5         **2.     Any Alleged Prejudice Can Be Cured**

6     Exclusion is further disfavored where any harm can be cured by additional

7 discovery. *Atl. Inertial Sys. Inc.*, 2014 WL 4180955, at *2.  As discussed, Apple does

8 not need any more discovery.  If the Court has any concerns, however, ample time exists

9 for Apple to pursue additional discovery.  As discussed in Section III.B.3 below, any

10 such discovery could occur before or after trial because reasonable royalties are decided

11 after trial by the Court if Masimo is unable to prove lost profits or unjust enrichment.

12     Masimo offered to facilitate any additional discovery on an expedited basis.  Ex.

13 3 at 1-3.  Masimo asked if Apple wanted any particular ████████████████████████

14 *Id.*  Despite Masimo's offers, Apple refused to even discuss the matter with Masimo.

15 While Masimo has the ultimate burden to show substantial justification or harmlessness,

16 Apple should not be rewarded for its refusal to even engage with Masimo.  Apple has

17 apparently decided that it would benefit by refusing Masimo's offer and instead moving

18 to exclude important aspects of Masimo's case.  Such tactics are inconsistent with

19 courts' strong preference for "deciding matters on the merits, rather than on procedural

20 missteps." *See F.D.I.C.*, 2012 WL 3728160 at *3–4.

21     Rather than address the alleged prejudice, Apple uses Masimo's good-faith efforts

22 against Masimo.  Apple argues Masimo's offer to facilitate discovery somehow shows

23 Masimo admits it failed "to provide adequate notice" of its theory.  Br. at 12.  Not so.

24 Masimo's offer demonstrates that Masimo was genuinely trying to address Apple's

25 alleged prejudice (even though Masimo disagreed) in hopes of avoiding further motion

26 practice.  Apple's refusal to engage with Masimo demonstrates that Apple needs no

27 additional discovery.

28     Apple argues it does not have time for discovery because fact discovery closed

1  nearly two months before Kinrich's report.  Br. at 12.  But Masimo already produced

2  the only discovery Apple claims it would have requested ████████████████

3  Apple makes no attempt to identify any other specific discovery it would have sought

4  from Masimo.  Nor has Apple identified any other specific discovery it would have

5  ████████████████  And, if Apple actually needed ████████████, it could have served

6  a subpoena and received a response long before serving its rebuttal report.  *See* Fed. R.

7  Civ. P. 45(d)(2) (fourteen-day return period for subpoenas).[3]

8      Apple cites *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 681-682

9  (N.D. Cal. 2015).  There, plaintiffs requested specific data more than a year before the

10  close of fact discovery.  *Id.* at 680.  The defendant asserted it did not track the requested

11  data and represented that, to the extent such data exists, the defendant would not rely on

12  it.  *Id.* at 680-81.  When the defendant reversed course and produced the data after

13  discovery, the court precluded the defendant from relying on it.  *Id.*  The facts here are

14  nothing like *Jones*.  Masimo disclosed that it may rely on the OEM Agreements and

15  produced them long ago.

16      Apple also omits that its quote from *Jones* came from another case that actually

17  supports Masimo.  *See id.* (quoting *Ritchie Risk-Linked Strategies Trading (Ireland),*

18  *Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012)).  In *Ritchie*, the court

19  found a year-long failure to disclose was not harmless.  However, the court declined to

20  preclude evidence because doing so would prevent Plaintiffs from pursuing its damages

21  claim.  Here, Masimo disclosed its theory and the relevant facts long ago.  If the Court

22  disagrees, *Ritchie* shows that preclusion would not be warranted.

23      **3.    Trial Will Not Be Disrupted**

24      Reasonable royalties are ***not*** an issue at the upcoming jury trial in March 2023.  A

25

26  _____

27  [3] Apple delayed the Kinrich report by two weeks.  ████████████████████████████

28  ████████████████████████  As a result, the parties agreed to delay some opening
    reports (including damages) until two weeks after that deposition.  *Id.*

reasonable royalty applies as an equitable remedy if Masimo is unable to prove at trial actual damages or Apple's unjust enrichment. *See* California Civil Code Section 3426.3; *Ajaxo Inc. v. E*Trade Financial Corp.*, 187 Cal. App. 4th, 1295, 1299-1300 (2010). Under California law, reasonable royalties are set by the Court—not the jury. *FAS Techs., Ltd. v. Dainippon Screene Mfg., Co.*, 2001 WL 1159776, at *3 (N.D. Cal. Sept. 21, 2001) (quoting California Civil Code Section 3426.3); *Ajaxo Inc.*, 187 Cal. App. 4th at 1308 ("A reasonable royalty is a court-determined fee imposed upon a defendant for his or her use of a misappropriated trade secret.").

Courts typically consider reasonable royalty evidence ***after*** the jury trial if the plaintiff is unable to show actual damages or unjust enrichment. The Ninth Circuit reversed a decision refusing to consider a reasonable royalty theory that the plaintiff presented after the jury declined to award damages. *Atl. Inertial Sys.*, 545 Fed. Appx. at 601. The Ninth Circuit explained that "[b]ecause the court, not the jury, determines whether to award a reasonable royalty, Cal. Civ. Code § 3426.3(b), Plaintiff's tardiness in presenting evidence on the issue did not prejudice Defendants." *Id.*

On remand, the defendant moved to strike an undisclosed royalty theory because it was based on a license agreement that the plaintiff had not timely produced. *Atl. Inertial Sys., Inc.*, 2014 WL 4180955, at *2. The plaintiff argued it did not need to disclose the agreement earlier because it was not relevant until the jury found the plaintiff was not entitled to damages. *Id.* The Court declined to strike the agreement because doing so "would be the type of preclusive sanction that is disfavored by Rule 37(c)." *Id.* at *3. Even though the case had already proceeded to trial and appeal, the Court found any alleged harm could be cured by limited discovery. *Id.* Here, Masimo has been more forthcoming by disclosing the relevance of its OEM Agreements during discovery and having its expert opine on a reasonable royalty before trial.

Accordingly, Apple's motion will be moot if Masimo is able to show damages or unjust enrichment at trial. If Masimo is unable to do so, the Court will then determine if a reasonable royalty is appropriate. That would occur after trial. As in *Atl. Intertial*,

the Court could allow additional discovery (before or even after trial) without impacting the March 2023 jury trial.

### 4.     Masimo Has Not Engaged in Bad Faith or Willfulness

Apple seeks a severe sanction reserved for the most egregious cases of willful misconduct.  *See Atl. Inertial Sys., Inc.*, 2014 WL 4180955, at *2 (exclusion of a royalty theory inappropriate where plaintiff argued it "would be tantamount to a dismissal of this action"); *see also Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) ("Due process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which the deception relates to 'the matters in controversy' and prevents their imposition 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'")

Here, Apple does not allege Masimo engaged in any bad faith or willfulness. Apple asserts Masimo made a "strategic" decision not to mention ███████████ by name in an interrogatory.  Br. at 2.  Apple cites nothing to support that speculation and it is not true.  As discussed, Apple acknowledges █████████████████.  Mot. at 9.  Masimo did not know the particular OEM Agreements its expert would find most comparable.   As discussed above, both parties recognized that analysis is properly performed by an expert.

Masimo also attempted to resolve this dispute in good faith by offering to facilitate any discovery that Apple believes it needs on an expedited basis.  Nothing suggests that Masimo acted in bad faith or willfully.

### 5.     Apple's Cases Do Not Support Exclusion

The cases that Apple cites on exclusion do not support its position.  For example, Apple cites *Polaris PowerLED Techs. v. VIZIO, Inc.,* 2020 WL 4258663, at *3 (C.D. Cal. May 14, 2020).   There, the plaintiff's expert revealed a new "price premium" damages theory for the first time in his report.  *Id*. at *3.  The defendant identified specific examples of "how, if it had notice of this theory earlier, it would have conducted discovery to challenge it."  *Id*.  Apple also cites *Armenian Assembly of Am., Inc. v.*

-17-

*Cafesjian*, 746 F. Supp. 2d 55, 73-74 (D.D.C. 2010), but the plaintiff there also never disclosed its damages theory.  The facts here are nothing like *Polaris* or *Armenian*.  Masimo disclosed its damages theories and the OEM Agreements.

Apple cites no authority to support its position that the facts here justify the severe sanction of striking Masimo's reasonable royalty theory.  Granting any sanction here would contradict numerous cases explaining the strong policy of "deciding matters on the merits, rather than on procedural missteps."  *F.D.I.C.*, 2012 WL 3728160, at *3–4; *Atl. Inertial*, 2014 WL 4180955, at *2 (declining to strike a royalty theory because doing so "would be the type of preclusive sanction that is disfavored by Rule 37(c)").

## IV.  **CONCLUSION**

For the reasons discussed above, the Court should deny Apple's motion.


Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  November 21, 2022         By: */s/ Mark D. Kachner*
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Benjamin A. Katzenellenbogen
                                     Perry D. Oldham
                                     Stephen W. Larson
                                     Mark D. Kachner
                                     Baraa Kahf
                                     Adam B. Powell
                                     Daniel P. Hughes
                                     Justin J. Gillett

                                     Attorneys for Plaintiffs
                                     MASIMO CORPORATION and
                                     CERCACOR LABORATORIES, INC.

56639133

-18-