JOSHUA H. LERNER, SBN 220755
 joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

H. MARK LYON, SBN 162061
 mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
 bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **REPLY IN SUPPORT OF APPLE'S MOTION TO STRIKE PLAINTIFFS' UNTIMELY REASONABLE ROYALTY THEORY** <br><br> Date: December 12, 2022 <br> Time: 1:30pm <br> Expert Discovery Cut-Off: Dec. 12, 2022 <br> Pre-Trial Conference: Mar. 13, 2023 <br> Trial: Mar. 27, 2023 |

REDACTED VERSION OF
DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Wilmer Cutler
Pickering Hale
and Dorr LLP

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

# TABLE OF CONTENTS

I.  Introduction ................................................................................................ 1

II.  Argument .................................................................................................... 3

    A.  Plaintiffs' Background Section Is Misleading ........................................ 3

    B.  Plaintiffs Violated FRCP 26(e) By Failing To Disclose The ███ ████████████ In Response To An Interrogatory That Asked Them To Identify "All Documents" Related To Their Damages Claim .................. 6

    C.  Plaintiffs Have Not Met Their Burden To Show That The Failure To Identify The ████████████ Was Substantially Justified Or Harmless ................................................................................................ 11

III.  Conclusion ............................................................................................... 16

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Active Video Networks, Inc. v. Verizon Communications, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ...................................................................8

*Atlantic Inertial Systems, Inc. v. Condor Pacific Industries of California, Inc.*, 2014 WL 4180955 (C.D. Cal. Aug. 18, 2014) .....................................15

*Atlantic Inertial Systems, Inc. v. Condor Pacific Industries of California, Inc.*, 545 F. App'x 600 (9th Cir. 2013).......................................................14, 15

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020) ...................................................................8

*E. & J. Gallo Winery v. Strategic Materials, Inc.*,
    2019 WL 3729811 (E.D. Cal. Aug. 8, 2019) ...........................................9, 10

*F.D.I.C. v. First Heights Bank, F.B.*,
    1998 WL 34363723 (E.D. Mich. Apr. 13, 1998) ..........................................9

*Finjan, Inc. v. Cisco Systems Inc.*,
    2020 WL 13180008 (N.D. Cal. June 5, 2020) ..............................................8

*Fjelstad v. American Honda Motor Co.*,
    762 F.2d 1334 (9th Cir. 1985) ...................................................................16

*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale-Phase II LLC*, 2021 WL 9597885 (D. Ariz. Feb. 22, 2021) .........................11

*Gonzalez Production Systems, Inc. v. Martinrea International Inc.*,
    2015 WL 4771096 (E.D. Mich. Aug. 13, 2015) ...........................................8

*Hebrew University of Jerusalem v. General Motors LLC*,
    2012 WL 12507522 (C.D. Cal. May 31, 2012)..............................................9

*Hoffman v. Construction Protective Services*, Inc.,
    541 F.3d 1175 (9th Cir. 2008) ...................................................................16

*Homeland Housewares, LLC v. Sharkninja Operating LLC*,
    2016 WL 1698254 (C.D. Cal. Apr. 27, 2016)................................................11

*Jones v. Travelers Casualty Insurance Co. of America*,
    304 F.R.D. 677 (N.D. Cal. 2015) ....................................................................1

*Polaris PowerLED Technologies, LLC* v. *VIZIO, Inc.*,
    2020 WL 4258663 (C.D. Cal. May 14, 2020) (Selna, J.) ...........................10

*R&R Sails, Inc v. Insurance Co. of Pennsylvania*,
    673 F.3d 1240 (9th Cir. 2012) ..............................................................15, 16

*Sommerfield v. City of Chicago*,
    254 F.R.D. 317 (N.D. Ill. 2008) ....................................................................9

*Waymo LLC v. Uber Technologies, Inc.*,
    2017 WL 6887043 (N.D. Cal. Nov. 14, 2017)................................................8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ....................................................................15

**STATUTES, RULES, AND REGULATIONS**

FRCP 26(e) ...............................................................1, 6, 10, 11, 14, 15

FRCP 37(c) ......................................................................11, 14, 16

## I.    INTRODUCTION

Two-and-a-half years ago, Apple served Interrogatory No. 17, which asks Plaintiffs to "identify[] and describe[] in detail all [d]ocuments … relating to" the "factual and legal bases" for their damages claim.  Ex. 1 at 7.  After the Special Master ordered Plaintiffs to provide a more detailed response to Apple's interrogatory, they served a supplement in March 2022 that identified five specific agreements and/or discussions "that may be used to determine a reasonable royalty in this matter."  *Id.* at 14-15.  Plaintiffs did not identify the ██████████ in that response or any of their subsequent four supplements.  Then, in October 2022, Plaintiffs served an expert report that relies on the ██████████ to justify a royalty as high as ██████.

Plaintiffs do not dispute any of this.  Instead, they primarily argue that they did not violate FRCP 26(e) by failing to list the ██████████ because they noted in an early supplemental response (from August 2020) that they "*may* rely" on Product and Licensing Agreements ("PLAs") to prove their reasonable royalty case.  Opp. 1.  But this statement—that Plaintiffs (1) might (2) at some point in the future (3) use an unknown number of documents from (4) a broad category that admittedly includes dozens of agreements—does not come remotely close to a complete answer to Apple's request for the specific documents that Plaintiffs will rely upon to support their damages case.  *See Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 678-679 (N.D. Cal. 2015); *see also* Dkt. 1031 at 3.  Indeed, this statement was part of the earlier response that the Special Master concluded was insufficient and that failed to provide Apple with adequate notice regarding Plaintiffs' damages claim.  Mot. 4.  Plaintiffs' related assertion that it had "no reason to differentiate among the [PLA] agreements," Opp. 1, similarly does not pass the straight-face test.[1]  The reason such differentiation was

---

[1] Plaintiffs' opposition uses the terms "Product and Licensing Agreement" and "Original Equipment Manufacturer Agreement" as synonyms, apparently in a post-hoc attempt to make their witnesses' deposition testimony (which often used the latter) align with their interrogatory response (which used the former).

Wilmer Cutler
Pickering Hale
and Dorr LLP

required is simple: Apple's interrogatory request asked for Plaintiffs to be specific and identify "all documents" that were related to their damages claim.

Nor are Plaintiffs right that listing out the specific licenses upon which Plaintiffs' expert might rely in their supplemental response would have somehow destroyed their expert's independence or have otherwise been infeasible. It is common practice for parties to disclose the licenses on which they will rely in response to interrogatories served during fact discovery. Plaintiffs themselves identified *other* specific agreements that their expert analyzed (i.e., ███████████████████████); there is no reason they could not similarly have identified the PLAs they believed pertinent. In fact, Plaintiffs apparently did develop such a list for their expert's use, as his report indicates he reviewed "███████████████████ Ex. 2 at ¶ 194; Opp. 6, even though there are at least ██████ similar to the ████████. Although Apple does not have the burden to prove damages, Apple identified each of the Apple licenses that its damages expert now relies upon prior to the close of fact discovery in response to Plaintiffs' interrogatory seeking Apple's "contentions concerning Plaintiffs' damages in this case" including the "identifying and describing in detail all Documents and Communications relating to such contentions." *See* Ex. D at 38, 53-54, 57; *infra* pp. 5-6.

Plaintiffs accordingly retreat to arguing that Apple could not have suffered prejudice because Apple knew, as a general matter, that Plaintiffs might rely on some PLAs and that the PLAs were thus important to their damages theories. But Plaintiffs cannot reasonably fault Apple for failing to pick the right PLA needle out of the discovery haystack, particularly when Plaintiffs' interrogatory responses expressly listed licensing agreements/discussions with other companies (e.g., ██████) as relevant. Contrary to Plaintiffs' representation that Apple did little with this information, Apple focused discovery efforts specifically on Plaintiffs' licensing discussions with ████. For example, Apple inquired about these discussions during depositions with Mr. Kiani

and Mr. Muhsin, *see* Ex. 7 at 40-42, Ex. 10 at 74-79, and subpoenaed ██████ for eight different categories of documents—only to learn that ████████████████████ ██████████████████████████████ *See* Exs. 14, 15. Plaintiffs contend that the late disclosure of the ██████████ will cause no harm to the trial schedule because the royalty will not be decided until after trial, but Plaintiffs' reasoning would (1) provide blanket amnesty for even the most blatant discovery violations related to the reasonable royalty analysis, and (2) ignore the effect of Plaintiffs' late disclosure on earlier deadlines (e.g., expert discovery).

This Court cautioned Plaintiffs months ago—and again, just a few weeks ago—that their failure ████████████████████████████ ████████████████████ Dkt. 1031 at 11; Dkt. 816 at 10-11. ████████████████████████████████ ████████████████████████████████ ██████████████ Dkt. 1031 at 10. Accordingly, Apple's motion to strike should be granted.

## II.     ARGUMENT

### A.     Plaintiffs' Background Section Is Misleading

Plaintiffs' background section includes three misleading assertions that taint their substantive arguments.

*First*, Plaintiffs imply that Apple has known that Plaintiffs would rely on a PLA agreement to support their reasonable royalty case since at least January 2022. *See* Opp. 2-3; *see also id.* at 7, 12-13 (making same point). But Plaintiffs cite only two documents for this point, neither of which supports it. The first is an email exchange from January 2022 regarding whether Plaintiffs would produce documents showing the ████████████████████████████████████ Ex. A at 4. While those RFPs happened to implicate PLAs, the email exchange makes no reference to any intention of Plaintiffs to rely on these PLAs for damages purposes.

To the contrary, the only statements related to damages in that email chain are statements by ***Apple's counsel*** that ███████████████████████ ███████████████████████████████████████.  *See* Ex. A at 6; *see also id.* at 7.

The second document is Apple's successful December 2021 motion to compel additional information regarding damages, which summarized Plaintiffs' then-existing response to Interrogatory No. 17—including Plaintiffs' vague statement from August 2020 that they "may rely" on PLAs.  *See* Ex. 5 at 4.  Plaintiffs tellingly omit the full quotation from Apple's brief, which criticized Plaintiffs' failure to identify specific agreements.  *Compare, e.g.*, Opp. 12-13 (describing relevant passage as "Apple admitting Masimo 'may rely on "Purchasing & Licensing Agreements ('PLAs') with third parties'"") *with* Ex. 5 at 4 ("Plaintiffs added a brief supplement in August 2020, noting only … (3) they may rely on 'Purchasing & Licensing Agreements ("PLAs") with third parties' (but cannot identify those agreements or otherwise describe them for confidentiality reasons).").

Plaintiffs relatedly criticize Apple for failing to move to compel further information regarding their reasonable royalty theory in Apple's May 2022 motion.  Opp. 5.  But Plaintiffs supplemented their response two months prior to list a number of specific licensing agreements and discussions following Apple's earlier motion to compel.  Mot. 4-5.  Apple had no basis to doubt that Plaintiffs at that time had in fact listed "all documents" relevant to their royalty theory.

*Second*, Plaintiffs assert that they have "timely produced all sales data and financial information ███████████████," as well as "the source code that is the subject of the ███████████ Opp. 3; *see also id.* at 7, 13, 15 (making same point).  Again, the two sources that Plaintiffs cite for these points do not bear them out.  As to the former (sales and financial data), Plaintiffs rely on a single sentence in an attorney declaration, which states merely that Plaintiffs have produced ███████████████████████

1    ███████████████████████████████ Kachner Decl. ¶ 8.  Neither

2    Plaintiffs' response to Interrogatory No. 17 nor Mr. Kachner's declaration identifies

3    these documents—the Kachner Declaration does not provide Bates numbers for ████

4    ████████, much less state that the ████████ constitute "*all* sales data and

5    financial information" that Plaintiffs possess.

6         As to the source code, the very email chain that Plaintiffs rely upon shows that

7    they have refused to identify what source code that is or where it was produced.  *See*

8    Ex. 3 at 2-5.  Specifically, in response to an October 24, 2022, inquiry from Apple

9    about the location of ████████████████ that is referenced in the ████████████,

10   Plaintiffs' counsel stated that they had ████████████████████████████████

11   ██████████████████████████ *Id.* at 5 (Kachner 10/25/22 email).

12   When Apple asked Plaintiffs to "identify … when you contend the relevant source

13   code was" produced, Plaintiffs' counsel did not substantively respond beyond

14   suggesting a time for the parties to meet and confer.  *Id.* at 3-4 (Kachner 10/28/22

15   email).  At the meet and confer itself, Plaintiffs asserted merely that the parties had

16   reached an impasse and did not "suggest that the parties had anything further to

17   discuss." *Id.* at 2 (Garcia 11/1/22 email).  Apple cannot verify Plaintiffs' assertions

18   about whether relevant underlying source code was produced because Plaintiffs neither

19   identified the "████████████ as practicing any asserted trade secrets, nor offered

20   any contentions—during fact or expert discovery—about what portions of that ████

21   ██████████████████████████ are alleged to practice the

22   alleged trade secrets.

23        *Third*, Plaintiffs imply that Apple identified so many potentially relevant

24   licenses in Apple's interrogatory response that it was difficult for Plaintiffs to

25   adequately investigate them.  Opp. 6; *see also id.* at 8 (similar).  To be clear, Apple

26   identified a total of nine licenses—seven in May 2022 and two in August 2022—and

27   its damages expert did not rely on any other Apple agreements in laying out Apple's

28

1    damages defense.[2]  While Plaintiffs vaguely assert that one of the documents that

2    Apple's expert identified as "most relevant" had not been disclosed by Apple, they do

3    not provide any details about what that document allegedly is that would allow Apple

4    to squarely rebut this charge.[3]

5       **B.      Plaintiffs Violated FRCP 26(e) By Failing To Disclose The ▮▮▮**

6              **▮▮▮▮▮▮ In Response To An Interrogatory That Asked Them To**

7              **Identify "All Documents" Related To Their Damages Claim**

8         As explained, FRCP 26(e) required Plaintiffs to disclose the ▮▮▮▮▮▮ in

9    their response to Interrogatory No. 17.  Mot. 8-10.  Plaintiffs' failure to do so was

10   particularly remarkable because (1) Apple had moved to compel on this very

11   interrogatory, and the Special Master had ordered them to provide more information in

12   response, (2) Plaintiffs listed five other specific licensing agreements/discussions, and

13   (3) Plaintiffs produced a total of ▮▮▮ involving similar technology, but their

14   expert relied solely on the ▮▮▮▮▮▮ .  *Id.*  Plaintiffs' responses are unpersuasive.

15        *First*, Plaintiffs point to a mismash of record citations to show that Apple was

16   on notice that Plaintiffs *might* rely on PLAs in general to support their reasonable

17   royalty theory.  Opp. 7.  But as Apple pointed out, this generic assertion was

18   insufficient to put Apple on notice that Plaintiffs *would* rely specifically on the ▮

19   ▮▮▮▮▮ .  Mot. 7.  In any event, Plaintiffs identify only one place in the record

20   where they made even this general connection—the statement in the August 2020

21   interrogatory response.  The remainder of Plaintiffs' citations either paraphrase the

22   August 2020 statement, *see* Ex. 5 at 4; *supra* p. 4, or refer to PLAs with no mention of

23   _____

24   [2] Plaintiffs twice incorrectly assert that Apple identified ten Apple license agreements.
     Opp. 6, 8.  Even their own expert report refutes that statement.  *See* Ex. 2 at ¶ 173
25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26   [3] In preparing this brief, Apple noticed its interrogatory response's citation to one
     agreement ▮▮▮▮▮▮▮▮ identified it by the Bates number of the last page of the
27   agreement rather than the first.  *See* Ex. D at 132.  Plaintiffs were still able to locate the
     license, as Mr. Kinrich's report listed ▮▮▮▮▮▮ as a relevant agreement Apple
28   had produced before seeing Apple's o▮▮▮▮▮▮s report.  Ex. 2 at ¶ 173.

their relevance to Plaintiffs' current reasonable royalty argument, *see* Exs., A, 7, 11—which is unsurprising, since PLAs are relevant to many aspects of Plaintiffs' case, including whether third parties practice their alleged trade secrets, Ex. A at 6.[4]

Plaintiffs relatedly contend that it was not misleading for them to list some specific licensing agreements/discussions in their interrogatory response because none of them was a PLA. Opp. 9. But if anything, Plaintiffs' August 2020 statement that they *might* rely on PLAs followed by their (1) March 2022 supplement listing specific non-PLAs that were purportedly relevant to the royalty analysis and (2) failure to make a more definitive statement about whether they were using PLAs, suggested that they had decided not to rely on PLAs. At the very least, Plaintiffs' response suggested that they had not found any relevant PLAs as of their March 2022 supplement, even though the ▮▮▮▮▮▮▮ had all been produced by that time. Mot. 10 n.5.

*Second*, Plaintiffs argue that there was no need for them to identify which of the approximately ▮▮▮ they believed to be relevant to their damages case because the agreements are so similar as to be interchangeable. Opp. 7. But Plaintiffs' own actions suggest the contrary. They winnowed the field by presenting their damages expert with "▮▮▮▮▮▮▮▮▮▮▮▮▮▮" of which only a small handful were PLAs. Ex. 2 at ¶ 194, Ex. 15.B. They fail to explain why they could not have provided Apple with the same list in their interrogatory response, particularly given that the response does expressly mention some of those agreements. *See* Ex. 2, Ex. 15.B. at 1-3, 5-6, 10-11 (referencing ▮▮▮▮▮▮▮▮▮ and Plaintiffs' arrangements with ▮▮▮▮▮▮). In any event, the list of agreements Mr. Kinrich reviewed included PLAs with several third parties, *see* Ex. 2 at Ex. 15.B, but

---

[4] Of Exhibits A, 7, and 11, only Exhibit 7 mentions the word "royalty" and does so just three times. Two of the references relate to Plaintiffs' discussions with ▮▮▮▮. *See* Ex. 7 at 41, 42. The third acknowledges Plaintiffs have "royalty deals" with OEMs, but *denied* Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* 55, even though that is what Mr. Kinrich claims the ▮▮▮▮▮ do, Mot. 6.

Wilmer Cutler
Pickering Hale
and Dorr LLP

he relied on only the ███████ for his reasonable royalty, which further rebuts Plaintiffs' suggestion that the PLAs are fungible.

*Third*, Plaintiffs argue that it would be "improper[]" for them to "pick[] the precise Agreement on which [their] expert must rely." Opp. 9; *see also* Opp. 7 (making similar argument that an expert should assess license comparability). This is a red herring. Apple has never argued that Plaintiffs were required to identify only the licensing agreement that their expert would ultimately rely upon, or that they were required to pick agreements for their expert. Rather, the interrogatory asked Plaintiffs to identify "all documents" that related to their damages contentions—here, that would at least include the ████████████████ Plaintiffs thought sufficiently similar to this case to provide to their expert.

Because Plaintiffs' underlying argument about the role of an expert is a red herring, the eight cases Plaintiffs rely upon to support that argument are inapposite. Not one of them addresses the situation in this case, where an interrogatory asked a party to identify all documents relevant to its damages case and that party listed some licensing agreements but not the agreements it ultimately relied upon.

Three of those cases stand merely for the non-controversial proposition that it is appropriate for an expert to provide an opinion on which of a finite number of licenses is most comparable to the hypothetical negotiation in the underlying litigation. *See Bio-Rad Labs., Inc., v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020); *Active Video Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Finjan, Inc., v. Cisco Sys. Inc.*, 2020 WL 13180008, at *10 (N.D. Cal. June 5, 2020).

Another four (largely out-of-circuit) cases state only that an expert should conduct an independent analysis based on his or her own knowledge—a basic concept that is both uncontested and not at issue here. *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 2015 WL 4771096, at *9 (E.D. Mich. Aug. 13, 2015); *Waymo*

*LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 n.5 (N.D. Ill. 2008); *F.D.I.C. v. First Heights Bank, F.B.*, 1998 WL 34363723, at *4 (E.D. Mich. Apr. 13, 1998).  In fact, Plaintiffs' own authority emphasizes that a party should provide "[d]iscovery of all materials provided to the expert by the attorney," *First Heights*, 1998 WL 34363723, at *4, something that Plaintiffs' interrogatory response failed to do.

Plaintiffs' last case involved a motion *in limine* to exclude "irrelevant or unduly prejudic[ial]" licenses, where the moving party stated that it "would not object to [the non-moving party] introducing licensing agreements that the parties' experts have identified as comparable."  *Hebrew Univ. of Jerusalem v. General Motors LLC*, 2012 WL 12507522, at *3 (C.D. Cal. May 31, 2012).  Apple has made no such concession here.

*Fourth*, Plaintiffs appear to argue that Apple should have been able to identify the ███████████ as uniquely relevant to this case because one of Plaintiffs' employees (Fishel) mentioned ██ as an OEM partner once during a deposition.  Opp. 8-9.  But as Apple has already explained, (1) Mr. Fishel was unable to answer follow-up questions regarding whether the ████████████████████████████ ███████ at issue in this case and, in any event, (2) a fleeting reference to a licensing agreement in a deposition does not constitute notice of a damages theory based on that agreement.  Mot. 9 (citing *E. & J. Gallo Winery v. Strategic Materials, Inc.*, 2019 WL 3729811, at *6 (E.D. Cal. Aug. 8, 2019)).  Plaintiffs have no answer, beyond baldly asserting that Apple "did not ask follow-up questions" after ██ was named.  Opp. 3.  Even a brief glance at the deposition transcript shows that this too is false.  *See* Ex. 11 at 5 (Q: "And do those [████████████] licenses cover any of the trade secret technology at issue in this case?  … A: "I—I don't believe that I'm the right person to speak to the –the trade secrets that are … at stake in this … matter."); *id.* (Q: "So sitting here today, you can't testify one way or another whether the licenses relate to

Masimo's trade secrets, the licenses we just discussed?" A: "Yes.  No.  I--I believe your question is more broad than I can respond to.").  Moreover, Mr. Fishel stated that Mr. Kiani would be best situated to answer Apple's questions.  *Id*.  Yet when Apple asked Mr. Kiani, he flatly denied ████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████.

  *Finally*, Plaintiffs attempt (but fail) to distinguish the cases Apple relied upon to show a violation of FRCP 26(e) in its opening brief.  For the most part, Plaintiffs argue that Apple's cases can be distinguished because Apple was on notice that Plaintiffs would rely solely on the ████████████ to justify a royalty award of up to ████ ████.  Opp. 10-11.  As the rest of this section demonstrates, this is false.  *See supra* pp. 6-10.[5]

  Most tellingly, Plaintiffs do not even address the merits ruling of the most on-point case that Apple cited:  *Polaris PowerLED Technologies, LLC* v. *VIZIO, Inc.*, 2020 WL 4258663, at *2-3 (C.D. Cal. May 14, 2020) (Selna, J.), *cited in* Mot. 8.  There, as here, the plaintiff presented a new damages theory for the first time in an expert report, even though it "ha[d] all of the necessary information to disclose this theory … in the course of fact discovery."  *Id*.  And there, this Court held that plaintiffs' failure to identify this theory in its initial disclosures or supplemental interrogatory responses violated Rule 26.  *Id*.  That is the same result that should apply in this case.

---

[5] Plaintiffs' attempt to distinguish *Gallo* is egregious.  Plaintiffs imply *Gallo* found the non-moving party did not violate Rule 26 by failing to disclose a particular damages theory, as "the defendant questioned witnesses about it during depositions."  Opp. 11.  In fact, *Gallo* held this "deposition testimony is still far short of a Rule-26 compliant disclosure" and "sanctions under Rule 37 apply here."  2019 WL 3729811, at *5.

**C.**   **Plaintiffs Have Not Met Their Burden To Show That The Failure To Identify The ▮▮▮▮▮▮▮▮ Was Substantially Justified Or Harmless**

    *1.*   *Plaintiffs' Statements About The FRCP 37(c)(1) Legal Standard Are Misleading Or Irrelevant*

This Court's recent ruling on Apple's Motion to Strike Plaintiffs' Rule 26(a)(2)(C) Disclosures sets forth the proper standard under FRCP 37(c)(1)—i.e., it is a "self-executing and automatic" sanction that prohibits the "use of … information" that was not properly identified under Rule 26(e) "unless the failure was substantially justified or is harmless." *See* Dkt. 1031 at 3; *accord* Mot. 10-11.

Plaintiffs brush by this straightforward articulation of the law and instead have simply copied and pasted the same, lengthy legal standard section that they used in their opposition to Apple's prior Motion to Strike. *Compare* Dkt. 980-1 at 12-14 *with* Dkt. 1029-1 at 11-12. Apple has already explained why these arguments are misleading: (1) they fail to acknowledge that Plaintiffs—not Apple—have the burden to establish substantial justification/harmlessness, (2) they rely on a four-factor test that is not mandatory, and (3) they do not identify a single case with comparable facts where a court declined to exclude late-identified evidence. *See* Dkt. 1003 at 10-12. Indeed, because Plaintiffs have simply re-used their legal standard section, nearly all their cases involve questions about whether a witness can permissibly testify. The only two decisions that involve whether late-identified information should be excluded both deal with a failure to timely produce updated documents related to sales/costs. *See Homeland Housewares, LLC v. Sharkninja Operating LLC*, 2016 WL 1698254, at *3-*5 (C.D. Cal. Apr. 27, 2016); *Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale – Phase II LLC*, 2021 WL 9597885, at *3-*4 (D. Ariz. Feb. 22, 2021). Plaintiffs do not even try to argue that the failure to provide updated information that could affect damages is comparable with the situation in this case—

the failure to properly identify the sole set of licenses that their expert relies upon to recommend a multi-billion-dollar royalty.

### 2. Plaintiffs Have Not Met Their Burden To Show Substantial Justification Or Harmlessness

This Court is not required to apply the four-factor test that Plaintiffs rely upon in discussing substantial justification/harmlessness (and, in fact, has declined to do so twice, *see* Dkt. 899 at 4-5; Dkt. 1031 at 10-12).  However, because Plaintiffs have grouped their arguments on a factor-by-factor basis, Apple follows that structure for this Court's convenience.

**a.  Surprise/Prejudice**.  Plaintiffs primarily repeat the same arguments that they made on the merits—e.g., that Apple was on notice that they would rely on the ███ ████████ because of the "may rely" language in their interrogatory response from August 2020 and that it was not misleading for Plaintiffs to list other specific licensing agreements/discussions in their response.  Mot. 12-13.  Apple has already refuted these points.  *See supra* pp. 3-10.[6]

Plaintiffs also argue that Apple was not prejudiced because they have already produced sales and source code information related to the ████████████.  Mot. 13.  But neither Plaintiffs' opposition nor any other document that Plaintiffs have served in this case (e.g., Mr. Kinrich's report) identifies those documents.  *Supra* pp. 4-5.  Without knowing what Plaintiffs have produced, it is difficult for Apple to be more specific in stating what further discovery it would have sought.  At a minimum, if Plaintiffs had identified the █████████████████████ covered by those agreements as relevant, Apple would have sought additional discovery into, *inter alia*, (1) which of the purported trade secrets are actually practiced in the source code

---

[6] Plaintiffs' attempts to distinguish Apple's case law regarding the exclusion of late-identified damages theories rely on the same already-trodden ground and fail for the same reasons.  *See* Opp. 17-18 (discussing *Polaris* and *Armenian*).  Plaintiffs also try to distinguish *Polaris* because the moving party identified specific discovery it would have sought but, as discussed, so has Apple.  *Infra* pp. 12-13.

1  licensed by the ███████████, (2) how those trade secrets are practiced, (3) what

2  products sold to ██ incorporate the source code and what other technologies those

3  products incorporate, and (4) the sale price, sale quantities, and the time periods in

4  which those products were sold.

5      Finally, Plaintiffs assert that Apple was not prejudiced by its inability to take

6  discovery directly from ███ because Apple has not taken third-party discovery in other

7  instances. Mot. 13-14. To the contrary, Apple sought discovery from ██████ the

8  party that received the most prominent billing in Plaintiffs' interrogatory response. *See*

9  Ex. 1 at 20 (noting that "based on … discussions" with ████████████

10 ████████████████████████████████████████████████

11 ███████████████████████████████████████████

12 ██████████████████████████████. Specifically, Apple subpoenaed

13 ████████, seeking eight different categories of documents and communications that

14 would have allowed Apple to test Plaintiffs' claims. Ex. 14 at 11-12. ████████

15 ultimately identified only one responsive document. Apple also raised the ████████

16 discussions during depositions with Mr. Kiani and Mr. Muhsin, *see* Ex. 7 at 40-42, Ex.

17 10 at 74-79, but learned that they had not progressed past a mutual assurance between

18 Plaintiffs and █████████████████████████████████████████

19 ████████ Ex. 7 at 40-41. Plaintiffs' claim (Opp. 14) that Apple sought "limited

20 discovery" is thus misleading—Apple diligently pursued discovery, only to learn that

21 there was virtually nothing to back up Plaintiffs' royalty argument.

22      **b. Ability to Seek Discovery Now.** Plaintiffs argue that they should not be

23 sanctioned because they offered to provide Apple with additional discovery into the

24 ████████████. To be clear, Plaintiffs first made this (vague) offer on November 11,

25 2022—i.e., 13 weeks after the close of fact discovery and one business day before the

26 date Apple had informed them it would file this motion. Mot. 11; *see also* Mot. 7-8

27 (discussing parties' prior correspondence). In any event, Plaintiffs do not dispute that

28

(1) this Court's schedule does not permit the parties to serve fact discovery at this point or (2) Apple did not have the necessary time to serve requests, receive and process new information about the ███████████ under the existing deadlines.  Mot. 12. Accordingly, ██████████████████████████████████████████████ Dkt. 1031 at 11, as all opening and rebuttal expert reports have been served and Apple is in the process of preparing for trial.[7]

  **c. Trial Timing.**  Plaintiffs contend that their FRCP 26(e) violation can be remedied without disrupting the case schedule because reasonable royalty awards are not set until after trial.  Opp. 15-16.  Apple accepts Plaintiffs' representation that they will not present a reasonable royalty case to the jury.  But a party is not immune from FRCP 37(c)'s "automatic" sanction simply because the information at issue will come into play shortly after trial rather than during it.  Again, forcing Apple to juggle additional fact and expert discovery long after the relevant deadlines have passed and while it is preparing for the issues that Plaintiffs will raise at trial is highly prejudicial.

  Plaintiffs also (Opp. 14, 16-17) rely heavily on a pair of decisions from the *Atlantic Inertial Systems* litigation, neither of which is on point.  The Ninth Circuit's unpublished decision appears to have permitted the trade secret plaintiff to go forward with a late-identified reasonable royalty theory because the defendant did not raise a timeliness objection in front of the district court but instead "responded to the [royalty] request on the merits."  *Atlantic Inertial Sys., Inc. v. Condor Pacific Indus. Of Calif., Inc.*, 545 F. App'x 600, 601 (9th Cir. 2013); *see also* Appellant's Reply Br., *Atlantic Inertial Sys., Inc. v. Condor Pacific Indus. of Calif., Inc.*,, 2012 WL 3105379, at *18 (9th Cir. July 6, 2012) (arguing that defendant "waive[d] any arguable error with respect to [plaintiff's] purported late filing, with [defendant's] own responsive filing

---

[7] Plaintiffs' suggestion (Opp. 15) that Apple could have served a subpoena on ███ after receiving Mr. Kinrich's report is not credible.  Doing so would have clearly vi███ed this Court's scheduling order, which sets the deadline for all non-expert discovery as August 12, 2022.  Regardless, ████ may not have been willing to produce any documents without a court order and Apple would not have had time to depose ███

(and [defendant's] failure to move to strike such evidentiary submission)").  In contrast, Apple has moved promptly to prevent Plaintiffs from relying on their late-disclosed royalty theory.

The *Atlantic Inertial Systems* remand decision is no more helpful to Plaintiffs.  There, the district court refused to exclude a late-produced license agreement because doing so would have "effectively result[ed] in dismissal of" Atlantic Imperial's damages case, particularly because a jury had already rejected the plaintiff's lost profits and unfair enrichment theories.  *See Atlantic Inertial Sys, Inc. v. Condor Pacific Indus. of Calif., Inc.,* 2014 WL 4180955, at *2-*3 (C.D. Cal. Aug. 18, 2014); *see also Atlantic Inertial Sys.,* 545 F. App'x at 601 (noting that reasonable royalty theory was available only because "neither damages nor unjust enrichment" were available).  Rule 26(e) motions decided in that posture are subject to a higher standard of review—i.e., a court must consider whether "the claimed noncompliance involved willfulness, fault, or bad faith."  *R&R Sails, Inc v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).  Here, even if Apple's motion is successful, Plaintiffs still have at least a live claim for monetary relief under an unjust enrichment theory.[8]  Moreover, even without the ██ █████████ and Mr. Kinrich's accompanying analysis, Plaintiffs could at least attempt to put on a reasonable royalty case based on the timely-produced evidence in the record.  In other words, by excluding Mr. Kinrich's belated royalty theory, this Court would "ma[k]e it much more difficult, perhaps almost impossible," for Plaintiffs to seek a royalty, but that does not mean that the exclusion is the equivalent of "dismissing a cause of action outright as a discovery sanction."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

---

[8] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**d. Bad Faith or Willfulness.** Plaintiffs are wrong that this Court must find that they acted in bad faith or willfully in order to grant Apple's requested relief. Opp. 17. That requirement only applies when the exclusion would result in the dismissal of a claim. *R&R Sails*, 673 F.3d at 1247 n.1; *see also Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1180 (9th Cir. 2008) ("[W]e reject the notion that the district court was required to make a finding of willfulness or bad faith to exclude the damages evidence."). As discussed, that is not the situation here. *See supra* p. 15.[9]

In any event, as this Court recently explained, Plaintiffs have long been on notice that the Court expects them to be ████████████████████ ██████████████████████ Dkt. 1031 at 11-12 (quoting Dkt. 816 at 10 n.6, 11). By failing to be ████████████████████████ ██████████████████ ████████████████ Dkt. 1031 at 11-12 (quoting Dkt. 816 at 10-11). On this record, it is hard to see how Plaintiffs' conduct demonstrates anything other than bad faith or willfulness.

## III. CONCLUSION

Apple respectfully requests that the Court strike Plaintiffs' previously undisclosed damages theory based on the ███████████ contained in Kinrich Report Paragraphs 8, 195, 209-224, 236-237, and 242-245, and Exhibits 7.A-B and 15.B. Apple's proposed strikes are set forth in highlights in Exhibit 2.

---

[9] Plaintiffs' reliance (Opp. 17) on *Fjelstad v. American Honda Motor*, 762 F.2d 1334, 1338 (9th Cir. 1985), is misplaced. *Fjelstad* dealt with a wholly different doctrine than the exclusion of evidence under Rule 37(c). It involved a court's "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.*

1

Dated:  November 28, 2022          Respectfully submitted,

2

3                                 H. MARK LYON
                                  BRIAN M. BUROKER
4                                 BRIAN A. ROSENTHAL
                                  ILISSA SAMPLIN
5                                 ANGELIQUE KAOUNIS
                                  GIBSON, DUNN & CRUTCHER LLP
6

7                                 KENNETH G. PARKER
                                  HAYNES AND BOONE, LLP
8

9                                 MARK D. SELWYN
                                  JOSHUA H. LERNER
10                                NORA Q.E. PASSAMANECK
                                  WILMER CUTLER PICKERING HALE AND
11                                DORR LLP
12

13

14                                By:  /s/ Mark D. Selwyn
                                       Mark D. Selwyn
15

16                                *Attorneys for Defendant Apple Inc.*

17

18

19

20

21

22

23

24

25

26

27

28