UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | December 9, 2022 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS] <u>Order Regarding Motion to Strike Plaintiffs' Untimely Reasonable Royalty Theory (Redacted)</u>**

Before the Court is Apple's Motion to Strike Plaintiffs' Untimely Reasonable Royalty Theory. <u>See</u> Mot., ECF Nos. 1014, 1020 (sealed). Plaintiffs filed an opposition. <u>See</u> Opp., ECF Nos. 1030, 1041 (sealed). Apple filed a reply. <u>See</u> Reply, ECF Nos. 1046, 1048 (sealed).

A review of the briefing demonstrates that this matter may be decided without the need for oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  Therefore, the Court **VACATES** the December 12, 2022 hearing.

For the following reasons, the Court **GRANTS-IN-PART** and **DEFERS-IN-PART** Apple's motion.

## I. BACKGROUND

Apple's motion arises from Plaintiffs' damages expert's reliance on licensing agreements between Masimo and ████████████ (hereinafter "Disputed Agreements"). The expert uses the Disputed Agreements to calculate a reasonable royalty rate for the hypothetical trade secret licensing negotiation between Plaintiffs and Apple. Apple argues that, although one of Plaintiffs' updated responses to Interrogatory No. 17 (relating to damages contentions) lists "five agreements and/or licensing discussions with other companies that 'may be used to determine a reasonable royalty in this matter,'" the list was never updated to include the Disputed Agreements. Mot. at 1 (noting the Special

Master ordered Plaintiffs to provide a more fulsome response about damages contentions) (quoting Dkt. 1020-2, Ex. 1 at 14); see also Ex. 1 at 18-20. Apple avers it learned about Plaintiffs' reliance on the Disputed Agreements only upon receiving Plaintiffs' opening expert report on damages. Id. In that report, the expert relied on the Disputed Agreements as the centerpiece of his comparability analysis to conclude that Apple would owe upwards of ▮▮▮▮▮▮▮ for using Plaintiffs' trade secrets. Id. at 1-2; see also Dkt. 1020-3, Ex. 2, ¶¶ 210-218 (comparability opinion). Apple argues that Plaintiffs' earlier response to Interrogatory No. 17, that "Plaintiffs '*may* rely on Purchasing & Licensing Agreements with third parties,'" is insufficient to put Apple on notice of the importance of the Disputed Agreements, which were never identified. Id. at 2 (quoting Dkt. 1020-4, Ex. 3) (emphasis added). Likewise, Apple contends that passing references to licensing agreements generally or ▮▮▮▮▮▮▮ during depositions did not put it on notice of this reasonable royalty theory. Id.

Apple argues that Plaintiffs' non-disclosure concerning the Disputed Agreements is particularly problematic where the Special Master ordered Plaintiffs to provide more information about their damages theories, and when Plaintiffs did so, they listed other agreements and negotiations, but not the Disputed Agreements. Id. Apple argues this disclosure misleadingly suggested that Plaintiffs viewed other agreements produced in discovery but not listed in the updated damages contention as irrelevant. Apple argues that with at least 1,200 licensing agreement documents produced, including 85 agreements, Apple could not be expected to guess which agreements would form the basis of Plaintiffs' reasonable royalty analysis. Id. at 9.

Based on this non-disclosure, Apple argues that the portions of the expert report relying on the Disputed Agreements should be stricken under Rule 37(c)(1), because the late disclosures violate Rule 26(e)(1), and Plaintiffs cannot show that it was substantially justified or harmless. To the contrary, Apple argues that, had it known of this theory before the close of fact discovery, it "could have sought discovery from both Plaintiffs ▮▮▮▮▮ regarding the agreements and the products, code, and sales implicated by them," and it still has to "file a rebuttal expert report and prepare for trial with virtually no knowledge regarding those purportedly pivotal agreements."[1] Id. at 2; see also id. at 11-12 (additional discovery could have helped Apple "explore relevant ways in which the [Disputed] Agreements could be distinguished on their facts," and "Apple would also have pressed the three deposition witnesses" to testify about the Disputed Agreements).

Plaintiffs respond that there has been no discovery violation because their interrogatory response was sufficient where it advised Apple that it may rely on

---

[1]      Further, Apple notes that neither Plaintiffs nor their witnesses identified the Disputed Agreements (or any other agreement) as examples of Plaintiffs licensing their trade secrets to a third party (they said they were not licensed), or disclosed that Masimo Object Code incorporates the asserted trade secrets (they did not include this as a trade secret embodiment), both of which the damages expert now states as fact. Mot. at 7 & n.4.

agreements with Original Equipment Manufacturers (OEM); it produced the Disputed Agreements; and it produced other related discovery.[2] Opp. at 1; see also id. at 3 (Plaintiffs aver that they produced "all sales data and financial information concerning ▮▮▮▮▮▮ "the source code that is the subject of the ▮▮▮▮▮▮ "); id. at 13 ("detailed revenue reports going back nearly 20 years showing all sales" have been produced). Plaintiffs explain they identified the non-OEM agreements by name because they were different than the general category of OEM agreements on which Plaintiffs may rely. Id.; see also id. at 9 ("Masimo disclosed that it may rely on its OEM Agreements and that it may rely on [specified] non-OEM agreements and negotiations.").

Thus, Plaintiffs argue they did "precisely what parties are supposed to do" by producing relevant documents and then engaging an independent expert to assess which documents were most relevant to damages. Id.; see also id. at 5-6 ("Kinrich reviewed the agreements that Masimo identified during discovery and conducted an independent expert economic analysis to determine which agreements were economically comparable.").[3] Plaintiffs reject the suggestion that their lawyers "should have picked the precise OEM Agreement on which [their] expert must rely." Id. at 9. Further, Plaintiffs note that Apple never requested more information on the OEM agreements. Id. at 4-5.

Even if there were a rules violation, Plaintiffs argue "Apple was not surprised and did not suffer any prejudice." Id.; see also id. at 12-13. Plaintiffs question whether Apple would have sought additional discovery and if so, what type of discovery. Id. at 4-5. And even if the Court determines additional discovery is warranted, Plaintiffs contend that, since "California trade secret law provides that reasonable royalties are equitable and determined by the Court after trial if the plaintiff is unable to prove actual damages or unjust enrichment at trial," such discovery would not interfere with the jury trial schedule. Id. at 2; see also id. at 14-15 (arguing any prejudice can be cured).

In its Reply, Apple asks that Plaintiffs not be given leniency based on the fact that reasonable royalty is an equitable issue decided by the Court, if necessary, after the jury trial. Reply at 3. Apple argues that granting leeway on this basis would "provide blanket amnesty for even the most blatant discovery violations related to the reasonable royalty analysis," and it would "ignore the effect of Plaintiffs' late disclosure on earlier deadlines (e.g., expert discovery)." Id. Further, Apple argues it cannot verify whether Plaintiffs have produced all sales data and other information relating to the Disputed Agreements

---

[2]     In the interrogatory response, Plaintiffs referred to these agreements as "Purchasing & Licensing Agreements." Plaintiffs aver that PLAs are synonymous with OEM Agreements. See Opp. at 2-3.

[3]     Apple notes that, of the 85 agreements produced in discovery, Plaintiffs apparently selected a subset of twenty agreements to provide their damages expert for review, showing that Plaintiffs conducted at least some level of relevance review. Reply at 2. Apple queries why Plaintiffs "could not have provided Apple with the same list in their interrogatory response, particularly given that the response does expressly mention some of those agreements." Id. at 7.

because neither "Plaintiffs' response to Interrogatory No. 17 nor Mr. Kachner's declaration identifies these documents," and the declaration "does not provide Bates numbers for those spreadsheets, much less state that the spreadsheets constitute 'all sales data and financial information' that Plaintiffs possess," and Plaintiffs have refused to identify the relevant licensed source code. Id. at 4-5.

Apple argues that Plaintiffs have not met their burden to show the violation was substantially justified or harmless. Id. at 11-15. In addition to the additional discovery discussed in the Motion, Apple elaborates that it would have also sought to discover "(1) which of the purported trade secrets are actually practiced in the source code licensed by the ███████████, (2) how those trade secrets are practiced, (3) what products sold to ███████████ the source code and what other technologies those products incorporate, and (4) the sale price, sale quantities, and the time periods in which those products were sold." Id. at 13.

## II. LEGAL STANDARDS

"Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or correct, among other things, responses to discovery requests 'in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" Jones v. Travelers Cas. Ins. Co. of Am., 304 F.R.D. 677, 678–79 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "The parties are expected to supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel or an order from the Court." Id.

"In addition, Rule 37 mandates that a party's failure to comply with the obligations under Rule 26(e)(1) results in that party being precluded from 'use [of] that information ... to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless.'" Id. (quoting Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1) is 'self-executing' and 'automatic.'" Id. (quoting Yeti by Molly Ltd v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)).

Although appellate courts "review every discovery sanction for an abuse of discretion," those courts "give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti by Molly, 259 F.3d at 1106; see also Hoffman v. Constr. Prot. Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming district court's order excluding undisclosed damages evidence).

### III. DISCUSSION

For the reasons explained below, the Court **GRANTS-IN-PART** and **DEFERS-IN-PART** the Motion.

The Court Grants-In-Part the Motion because the Court finds that Plaintiffs violated Rule 26(e)(1) as a result of inadequate damages disclosures. Although Plaintiffs have been on notice regarding the importance of being forthcoming regarding their damages theories and contentions–through the Special Master's Order on Apple's related motion to compel and in multiple Orders issued by this Court[4]–the Court finds that, once again, Plaintiffs now attempt to explain away deficient disclosures. To the extent Plaintiffs' arguments suggest Apple should have been better at combing through voluminous discovery on licensing agreements, the Court disagrees. Although Plaintiffs were not required to guess which agreements their expert would find relevant, at a minimum they had to share with Apple the same factual framework provided to the expert (e.g., the list of twenty relevant agreements for the expert's consideration), while there was still time to act on this information. Thus, the Court concludes that, through their piecemeal damages contention responses and failure to identify relevant documents, Plaintiffs have violated Rule 26(e)(1) regarding the reasonable royalty theory based on the Disputed Agreements.

For example, Plaintiffs have not explained why they identified a subset of twenty relevant licensing agreements for their expert's review but they did not disclose this list to Apple, instead relying on the broad and vague statement that Plaintiffs "may rely" on the broad category of PLAs–which Plaintiffs now aver also means OEM Agreements such as the Disputed Agreements–and specified non-PLA agreements and negotiations. Additionally, Plaintiffs have not demonstrated that they timely provided all necessary discovery on the Disputed Agreements, e.g., by identifying the relevant sales history documents by Bates number, and by being forthcoming about the relevant source code implicated by the Disputed Agreements. Further, Plaintiffs have not explained the discrepancy between their discovery responses and witness testimony averring that the trade secrets have never been licensed, as compared with the expert's reliance on the contrary contention that the Disputed Agreements comprise licensing the trade secrets. These questions must be answered.

On the current record, Plaintiffs have not carried their burden to demonstrate that the late disclosure was substantially justified or harmless. See MLC Intell. Prop., LLC v. Micron Tech., Inc., No. 14-CV-03657-SI, 2019 WL 2863585, at *12 (N.D. Cal. July 2, 2019), aff'd, 10 F.4th 1358 (Fed. Cir. 2021). One solution to this ongoing issue would be to grant the motion based on the fact that the Scheduling Order does not allow for time to cure Apple's prejudice. Given the unique procedural posture of reasonable royalties

---

[4]      See, e.g., Dkt. 617 at 5-6; Dkt. 816 at 11; Dkt. 1050 at 11-12.

under California trade secret law, however, another solution is to allow an opportunity to cure.

Specifically, the Ninth Circuit has recognized that, under California law, "the court, not the jury, determines whether to award a reasonable royalty." Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of California, Inc., 545 F. App'x 600, 601 (9th Cir. 2013) (citing Cal. Civ. Code § 3426.3(b) (awarding a reasonable royalty is an option if "[i]f neither damages nor unjust enrichment caused by misappropriation are provable" at trial)). In Atlantic Inertial Systems, the court recognized that "Plaintiff's tardiness in presenting evidence on the issue did not prejudice Defendants." Id. at 601 (holding that "Plaintiff did not waive its request for a reasonable royalty," rather, "[i]t sought that form of relief in the district court and Defendants responded to the request on the merits").

California law notwithstanding, the Court is not inclined to grant "blanket amnesty" anytime bifurcation applies. Rather, given that Plaintiffs produced the Disputed Agreements and some related documents, in this limited circumstance, an opportunity to cure is warranted. Even though this procedural posture could allow for some scheduling flexibility to try to cure the prejudice created by Plaintiffs' late disclosure, however, the Court agrees with Apple that it should not have to rush under the current schedule to serve discovery requests, receive responsive information, review that information, and incorporate it into updated expert reports as necessary. This is especially true where Apple has identified significant discovery it needs, including additional discovery from Plaintiffs and ███████ the Disputed Agreements, to include (1) which of the purported trade secrets are actually practiced in the source code licensed by the Disputed Agreements, (2) how those trade secrets are practiced, (3) what products licensed therein incorporate the source code and what other technologies those products incorporate, and (4) the sale price, sale quantities, and the time periods in which those products were sold.

Because this issue will be bifurcated to the Court, like Apple, the Court "accepts Plaintiffs' representation that they will not present a reasonable royalty case to the jury." See Reply at 14. Since the prejudicial late disclosures will not impact the jury trial, and since the Disputed Agreements were timely produced, the Court is inclined to allow an opportunity to cure. Plaintiffs should be forthcoming during this process and Apple should be receptive to it. After the relevant discovery has been provided, the Court will consider whether, on that updated record, Plaintiffs can carry their burden to demonstrate a lack of prejudice such that exclusion is unwarranted under Rule 37(c)(1).

Thus, the Court orders the parties to meet and confer regarding Apple's requested discovery to determine when and how this issue might be resolved such that Apple will not be prejudiced by the late disclosure, as it would be on the current discovery record. The parties should consider how much time is needed and how this will be done without upsetting the current summary judgment deadlines and remaining pretrial and trial schedule. If some of the tasks are better saved for after the jury trial–which will not consider reasonable royalty–the parties may propose that to the Court. Within fourteen

days of this order, the parties shall file a Joint Report setting forth their proposal for further addressing these issues.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DEFERS-IN-PART** Apple's Motion.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of the sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

The Court orders the parties to submit the required Joint Report within fourteen days of receipt of this order.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |