MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>     v.<br><br>APPLE INC., a California corporation,<br><br>        Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' TRADE SECRET CLAIM AND PLAINTIFFS' LOST PROFITS DAMAGES THEORY**<br><br>Date: February 6, 2023<br>Time: 1:30pm<br><br>Pre-Trial Conference: Mar. 13, 2023<br>Trial: Mar. 27, 2023 |

REDACTED VERSION OF THE DOCUMENT PROPOSED TO BE FILED UNDER SEAL

APPLE'S MEM. ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2   SARAH R. FRAZIER, *pro hac vice*
      sarah.frazier@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   60 State Street
    Boston, MA 02109
5   Tel.: 617.526.6000 / Fax: 617.526.5000

6   NORA Q.E. PASSAMANECK, *pro hac vice*
      nora.passamaneck@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   1225 Seventeenth Street, Suite 2600
    Denver, CO 80202
9   Tel.: 720.274.3152 / Fax: 720.273.3133

10  BRIAN A. ROSENTHAL, *pro hac vice*
      brosenthal@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
12  New York, NY 10166-0193
    Tel.: 212.351.2339 / Fax: 212.817.9539

13  KENNETH G. PARKER, SBN 182911
      Ken.parker@haynesboone.com
14  HAYNES AND BOONE, LLP
    660 Anton Boulevard, Suite 700
15  Costa Mesa, CA 92626
    Tel. 650.949.3014 / Fax: 949.202.3001

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION & UNDISPUTED FACTUAL BACKGROUND ........................... 1

ARGUMENT ....................................................................................................... 3

I.    Plaintiffs Have Not Established That They Possessed Or Owned Any Of The Alleged Trade Secrets ........................................................................ 3

    A.    Plaintiffs Have Not Established That Either Masimo Or Cercacor Possessed The Purported Trade Secrets ...................................... 3

    B.    Plaintiffs Have Not Established Which Entity Had Possession Of Each Alleged Trade Secret ......................................................... 13

    C.    Plaintiffs Have Not Established Ownership Of The Purported Secrets ............................................................................................ 14

II.   Plaintiffs' Purported Trade Secrets Claim General Ideas ..................... 16

    A.    Plaintiffs' ████████████ Secrets Nos. 5 and 7-8 ........................... 16

    B.    Plaintiffs' "Value, Importance, And Appropriateness" Trade Secrets ............................................................................................ 22

III.  Apple Should Be Granted Summary Judgment On Plaintiffs' Lost Profits Theory If Mr. Kinrich's Lost Profits Opinions Are Excluded .......................... 25

CONCLUSION .................................................................................................. 25

Wilmer Cutler Pickering Hale and Dorr LLP

1

# **TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

4

*Advanced Fluid Sys., Inc. v. Huber*,

5

    958 F.3d 168 (3d Cir. 2020) ..............................................................................4

6

*Agency Solutions.Com, LLC, v. TriZetto Grp., Inc.*,

7

    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ...................................................20, 21

8

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,

9

    28 Cal. App. 5th 923 (2018) ......................................................................2, 14

10

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,

    219 F. Supp. 3d 984 (N.D. Cal. 2017)..............................................................3

11

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,

12

    2011 WL 2116989 (D. Haw. May 25, 2011) ...................................................4

13

*Burchett v. Bromps*,

14

    466 Fed. App'x 605 (9th Cir. 2012) ...............................................................14

15

*Calendar Rsch. LLC v. StubHub, Inc.*,

16

    2020 WL 4390391 (C.D. Cal. May 13, 2020)................................................16

17

*ChromaDex, Inc. v. Elysium Heath, Inc.*,

18

    2020 WL 1379236 (C.D. Cal. Jan. 16, 2020)................................................25

19

*DTM Research, L.L.C. v. AT&T Corp.*,

20

    245 F.3d 327 (4th Cir. 2001) .........................................................................14

21

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*,

    2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ..............................................18

22

*Goodness Films, LLC v. TV One, LLC*,

23

    2014 WL 12594201 (C.D. Cal. Aug. 28, 2014) ............................................25

24

*Humphreys & Assocs., Inc. v. Cressman*,

25

    2015 WL 12698428 (C.D. Cal. Aug. 31, 2015) ............................................14

26

*Imax Corp. v. Cinema Techs., Inc.*,

27

    152 F.3d 1161 (9th Cir. 1998)..................................................................18, 22

28

*Inteliclear, LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ...................................................................18, 22

*Jasmine Networks, Inc. v. Superior Court*,
    180 Cal. App. 4th 980 (2009)...................................................................13, 15

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011)......................................................14, 16

*Nomadix v. Second Rule LLC*,
    2009 WL 10668158 (C.D. Cal. Jan. 16, 2009)............................................19

*nSight, Inc. v. PeopleSoft, Inc.*,
    296 F. App'x 555 (9th Cir. 2008).................................................................18

*Olaplex Inc. v. Loreal USA Inc.*,
    855 F. App'x. 701 (Fed. Cir. 2021)..............................................................18

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
    884 F.3d 812 (9th Cir. 2018).......................................................................15

*Sargent Fletcher, Inc. v. Able Corp.*,
    110 Cal. App. 4th 1658 (2003)....................................................................14

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010)......................................................................15

*Tang v. E. Virginia Med. Sch.*,
    2022 WL 981942 (E.D. Va. Mar. 30, 2022) ..................................................4

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
    966 F.3d 46 (1st Cir. 2020) .........................................................................17

*Tracer Research Corp. v. National Environmental Serv. Co.*,
    843 F. Supp. 568 (D. Ariz. 1993)................................................................20

*TrueBeginnings, LLC v. Spark Network Servs., Inc.*,
    631 F. Supp. 2d 849 (N.D. Tex. 2009).........................................................14

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ..............................................17

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Winston Rsch. Corp. v. Minnesota Min. & Mfg. Co.*,
    350 F.2d 134 (9th Cir. 1965) ............................................................................20

*X6D Limited v. Li-Tek Corps. Co.*,
    2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) ...........................................22

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    2013 WL 867640 (D. Del. Mar. 8, 2013) ...............................................16, 20

## STATUTES, RULES, AND REGULATIONS

Cal. Civ. Code § 3426.1(d)(1) ...................................................................................16

FRCP 26(a)(2)(C) ........................................................................................................2

FRCP 37(c)(1).............................................................................................................2

Wilmer Cutler
Pickering Hale
and Dorr LLP

## INTRODUCTION & UNDISPUTED FACTUAL BACKGROUND

After three years, more than a hundred hours of depositions, and millions of pages of discovery, Plaintiffs have failed to put forth meaningful evidence to support numerous aspects of their affirmative trade secret case.

*First*, although Plaintiffs have conceded that they must show possession of the alleged trade secrets to prevail, Plaintiffs have not presented evidence that the alleged trade secrets were actually in their hands at the time of Apple's purported misappropriation.  *See* SUF 1-11 (no evidence of possession ███████████ ████████████ Trade Secret Nos. 1, 3, 8-16); SUF 12-16 (██████████ Trade Secret Nos. 4-5, 7-8, 10); SUF 17-21 (█████████████ Trade Secret Nos. 4-6); SUF 22-33 (██████████████ Trade Secret Nos. 1-4, 6-8); SUF 34-38 (█████████████████ Trade Secret Nos. 5-7).[1]  For example, Plaintiffs have not identified a single pre-litigation document that clearly describes any of the purported trade secrets as Plaintiffs have defined them.  SUF 1-38.  And Plaintiffs' own witnesses have been unable to describe the alleged trade secrets without first reviewing documents prepared by Plaintiffs' attorneys.  *Infra* p. 3.  If anything, it appears that Plaintiffs copied a number of the ████████████████████ and ████████████ Trade Secrets from Apple's patents—rather than the other way around.  ██████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████

*Second*, beyond an untimely supplemental interrogatory response served months after the close of fact discovery and after submission of all expert reports, Plaintiffs have made no attempt to (1) identify *which* entity possessed *which* purported trade

---

[1] This Court dismissed four alleged secrets and Plaintiffs have abandoned fourteen more, including two after the parties met and conferred on this motion.  SUF 123-128. This list reflects all remaining alleged secrets.

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
CASE NO. 8:20-cv-00048-JVS (JDEx)
1

secret or (2) establish that Plaintiffs *owned* (as opposed to possessed) the trade secrets

at issue, even though California state law requires Plaintiffs to prove they "owned the

trade secret," *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th

923, 942 (2018); *see* SUF 39-96.  Even if the woefully untimely supplemental response

is not struck under FRCP 37(c)(1) (as Apple has requested in a simultaneously filed

motion), it cites nothing more than attorney argument and a trio of broadly worded

licensing agreements that do not apply to this case.  *Infra* pp. 13-16.

    *Third*, at a minimum, Plaintiffs have not met their burden to describe with

reasonable particularity either (1) ███████ Trade Secret Nos. 5 and 7-8 or (2) five

purported trade secrets that claim the "value, importance, and appropriateness" of other

alleged trade secrets.  SUF 97-117.  As this Court recently instructed in the *True

Wearables* litigation, "'[i]deas or concepts are not, in and of themselves, trade

secrets.'"  *Masimo Corp. v. True Wearables, Inc.*, 8:18-cv-02001-JVS-JDE (C.D. Cal.

Nov. 7, 2022), Dkt. No. 600, ¶ 99 ("True Wearables Op.").  ████████ Trade Secret

Nos. 5 and 7-8 all claim general ideas, ███████████████████████████████████

███████████████████████████████ SUF 97-102.  And the "value, importance,

and appropriateness" trade secrets are nebulous.  Plaintiffs' experts do not discuss

them in detail, and Plaintiffs have presented no evidence shedding light on what kind

of "value," "importance," or "appropriateness" is claimed.  SUF 103-117.

    *Finally*, Plaintiffs should be barred from pursuing their claim for lost profits

damages.  Now that this Court has barred two of Plaintiffs' purported FRCP

26(a)(2)(C) experts from offering opinions ███████████████████████████████

████████████████████████████████████████████████████████████████████

███████████, Dkt. 1031, Plaintiffs' lost profits case turns exclusively on the

testimony of their expert Mr. Kinrich, SUF 122.  But as Apple will explain in its

forthcoming *Daubert*/FRCP 37(c)(1) motion to exclude, the lost profits portions of Mr.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Kinrich's opinions are based on the same untimely disclosed analyses this Court already struck.  Apple is thus entitled to judgment as a matter of law on that issue.

## ARGUMENT

I.   **PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY POSSESSED OR OWNED ANY OF THE ALLEGED TRADE SECRETS**

A.   **Plaintiffs Have Not Established That Either Masimo Or Cercacor Possessed The Purported Trade Secrets**

Throughout this litigation, Plaintiffs have labored to identify something that Apple purportedly misappropriated.  Even during fact depositions, for example, the 30(b)(6) witnesses whom Plaintiffs designated to speak on the scope of their purported trade secrets could not █████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████

There is a simple reason for Plaintiffs' evasion:  They have no evidence showing that they actually possessed the purported trade secrets they asserted in this litigation.  This failure of proof dooms their case, as Plaintiffs themselves have conceded that they must at least demonstrate possession of the purported trade secrets to meet their burden to establish a trade secret claim.  *See* Ex. 1 at 1 (Plaintiffs arguing to Special Master that "CUTSA Requires Possession—Not Ownership—of a Trade Secret"); *see also* Ex. 6 at 6 (Plaintiffs asserting that "'[P]ossession by the plaintiff of a trade secret' is the first element of a CUTSA claim").  As Plaintiffs' cited case law explains, establishing possession is a necessary component of a trade secret claim "because the 'proprietary aspect' of a trade secret flows … from its secrecy," *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017), and a party that does not possess

Wilmer Cutler
Pickering Hale
and Dorr LLP

information lacks the "right to enjoy the value of the information's secrecy" giving rise to a claim, *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020), *see also* Ex. 6 at 6 (citing both cases).  In short, a plaintiff must have an interest in the alleged trade secret to be harmed by the misappropriation; without at least possession, no such interest exists.  *Advanced Fluid Sys.*, 958 F.3d at 177.[2]

Here, the undisputed facts show that Plaintiffs did not possess the trade secrets they claim Apple misappropriated.  Indeed, Plaintiffs have not identified a single instance where any one of the purported trade secrets was in its entirety identified or written down prior to this litigation.  Rather, Plaintiffs have at best offered evidence that they at times possessed certain scattered aspects of some of the claimed trade secrets.  And if Plaintiffs cannot establish possession of their alleged trade secrets, they lack the kind of protectable interest that can give rise to liability.  *Tang v. E. Virginia Med. Sch.*, 2022 WL 981942, at *10 (E.D. Va. Mar. 30, 2022); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 2011 WL 2116989, at *21 (D. Haw. May 25, 2011).

██ ████████████████████

Plaintiffs assert that Apple misappropriated eleven purported trade secrets connected to the ████████████████████████████████████ ████████████████████████████████████ ████" Dkt. 296-1 ¶¶ 9-10 (Plaintiffs' Fourth Amended Complaint).  As Apple's expert explained, however, Plaintiffs have failed to identify any document, testimony, or other evidence supporting their possession of the trade secrets they group under this category.  *See, e.g.*, Ex. 17 ¶¶ 23-25.

Take ██ Trade Secret No. 1, which is described as "[███████████ ████████████████████████████████████████████████

_____

[2] To be clear, Apple believes that binding California case law requires Plaintiffs to show ownership. *Infra* pp. 14-16.  However, this Court need not reach that issue if it concludes that Apple is entitled to summary judgment on possession.

Wilmer Cutler
Pickering Hale
and Dorr LLP



████████████████████████████████████████████████████

██████████████████████████████████████████████ Dkt.

296-1 ¶ 40.1.  Plaintiffs' expert opines that they ████████████████████

████████████████████████████████████████ Ex. 15 ¶¶ 94, 128,

138.  But he ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ Ex. 17 ¶¶ 66, 68.  For example, although the purported

trade secret speaks to ████████████████████████████████████

████████████████████████████████████ the documents

Plaintiffs' expert relies on never combine those features.  *Id.* ¶ 71 (emphases added).

So too for the source code Plaintiffs cite, which contains "████████████████

████████████████████████████████████████████████████

████████████████ " *Id.* ¶ 72 (emphases added).

As another example, ████ Trade Secret No. 10 (which appears to be copied

from ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

The same deficiencies infect Plaintiffs remaining ████ trade secrets.  For each,

their expert ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████  Nor could Plaintiffs' witnesses identify or describe the supposed ████ trade

4 secrets (or any others), instead stating they first saw the alleged secrets in documents

5 prepared by Plaintiffs' lawyers for this litigation.  *See* Ex. 10 at 33:25-34:22 (Kiani);

6 Ex. 14 at 17:17-18:5, 18:11-19:7, 23:13-24:15, 24:23-25:12, 25:21-26:18, 27:16-28:20,

7 96:6-24, 97:6-99:8 (Diab); Ex. 12 at 41:9-19, 47:4-51:22 (Muhsin); Ex. 13 at 42:20-25

8 (W. Weber); Ex. 11 at 35:17-36:2, 38:2-41:18 (Smith); Ex. 28 at 81:18-87:4

9 (Madisetti); *see also* Ex17 ¶ 68.  Such a bare record does not create the dispute of

10 material fact necessary for these claims to proceed to trial.

11 ████  ███████████████████████████████

12   Plaintiffs allege that they possessed five purported trade secrets related ████

13 █████████████████████—i.e., the long-known phenomenon of ████████████

14 ███████████████████████████████ Ex. 4

15 at 49; *see also* Dkt. 296-1 ¶ 41.  Plaintiffs primarily rely on internal documents

16 showing that they ████████████████████████████

17 ███████████████████████████████████

18 ██████████████████████████████████████

19 ████  Ex. 4 at 49-55; *see also, e.g.*, Ex. 15 ¶ 443 (as to ████ Trade Secret No. 4).

20   Plaintiffs have failed to identify any pre-litigation materials that describe the

21 claimed secrets in their entirety.  For example, ████████ Trade Secret No. 4 claims

22 █████████████████████████████████

23 ████████████████████████████

24 ████████████████████████████████

25 ████  Dkt. 296-1 ¶ 41.4.  But again, Plaintiffs' employees were unable "████████

26 █████████████████████████████████████

27 █████████████████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   ▮▮▮▮ Ex. 19 ¶ 56.  For example, ▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮ Ex. 14 at 28:13-20, 96:6-15; *see*

7   *also id.* at 17:17-18:5, 18:11-19:7, 23:13-24:15, 24:23-25:12, 26:3-18, 27:16-28:12,

8   96:16-24, 97:6-99:8.  Similarly, Mr. Muhsin conceded that ▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮ *See* Ex. 12 at 48:1-6; *see also id.* at 41:9-19, 47:4-25, 48:7-51:22.

12      Similarly, Plaintiffs' expert—who presumably has access to Plaintiffs' strongest

13  documents supporting their position—has not "▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮ Ex. 19 ¶ 56.  As Apple's expert Dr. Steve Warren summarized, the documents

16  Plaintiffs were able to identify ▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*  In

19  particular, Plaintiffs have pointed to no evidence that they possessed or developed

20  information relating to ▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮

22      Plaintiffs' showing on the remaining ▮▮▮▮ trade secrets is similarly

23  deficient.  They have not identified pre-litigation documents reciting those secrets,

24  their witnesses could not identify or describe the secrets, and employees had not seen

25  them in writing until materials were prepared by counsel for this litigation.  *See, e.g.*,

26  Ex. 19 ¶¶ 138, 141-149 (No. 5); *id.* ¶¶ 233-243 (No. 7); *id.* ¶¶ 272-283 (No. 8); *id.*

27  ¶¶ 320-325 (No. 10).  Their attempts at identifying contemporaneous evidence of these

28



APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
7
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    secrets instead turn on sleight of hand.  For example, ████████ Trade Secret No. 5

2    involves "██████████████████████████████████████████████████████████

3    Ex. 19 at 70.  Plaintiffs, however, ████████████████████████████████████

4    ████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████

6    ████████████████████████████████████████████

7    ██████████████████████████████████████████████████████

8    ████████; *see also infra* pp. 16-22 (arguing that most of the purported ███████

9    ████████████ claim only general ideas).  That Plaintiffs ██████████████████

10   ████████████████████████ hardly shows that Plaintiffs possessed

11   any trade secret, to say nothing of the specific secrets they say were misappropriated.

12   ██ ████████████

13        Plaintiffs assert they possessed three ████████████████ trade secrets,

14   which they allege contain ██████████████████████████████████████

15   ██████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████████

17   ████████████████████████████████ Ex. 3 at 26.   Plaintiffs

18   have at best shown they possessed *parts* of the purported trade secrets prior to trial.

19        For example, Plaintiffs have defined ████████████████ Trade Secret No. 4 ██

20   ██████████████████████████████████████████ Dkt. 296-1

21   ¶ 42.4.  As Apple's expert Dr. Warren explained, however, Plaintiffs fail to identify

22   evidence even arguably showing possession of the full trade secret ██████████

23   ██████████████████████████████████████████

24   ██████████████████████████████████████ Ex. 19

25   ¶¶ 360-362.  Nor have Plaintiffs demonstrated the subparts of this trade secret ████

26   ██████████████████████████████████████████████

27   ████████████████████████████ were ever combined

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

by Plaintiffs in the form now claimed to be a protectable secret.  *See* Ex. 19 ¶¶ 343-346.  The documents they rely on instead omit either (1) █████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████

Plaintiffs also fail to create a triable issue on their possession of the other alleged ██████████████ trade secrets.  ██████████████ Trade Secret No. 5 incorporates ████████████ Trade Secret No. 4 and the same documents are used to show Plaintiffs possessed it, meaning the same deficiencies preclude a claim premised on that information.  Ex. 19 ¶¶ 405, 408.  And ██████████████ Trade Secret No. 6 is the ███████████████████████████████████████████████████████████████ ████████████████ ███████████████████████████████████

Plaintiffs also allege that Apple misappropriated seven ███████████████ trade secrets, which Plaintiffs define ████████████████████████████ ███████████████████████████████████████████████████ ██████████████████ Ex. 4 at 11.  Again, Plaintiffs have failed to provide sufficient evidence to raise a genuine question of material fact regarding whether they actually possessed the complete alleged trade secrets prior to this litigation.

For example, according to Plaintiffs' interrogatory responses, █████████ ██████████ Trade Secret No. 1 describes ███████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ Ex. 4 at 56-57.  To support possession of this trade secret, Plaintiffs primarily rely on a ████

Wilmer Cutler
Pickering Hale
and Dorr LLP



Ex. 20 ¶ 65.  But as Apple's expert has explained, the plan

Plaintiffs' expert also relies on general statements made during Mr. Kiani's deposition—e.g., that Plaintiffs sought to create a

but this hardly provides evidence that Plaintiffs were practicing the full ▮ Trade Secret No. 1.  *See* Ex. 21 ¶¶ 34-35.  Among other things, both statements

The remaining materials cited by Plaintiffs

Wilmer Cutler
Pickering Hale
and Dorr LLP



1  ███████████████████████████████████████████████████

2  ████████████████   *See id.* ¶¶ 36-38; Ex. 20 ¶¶ 73-79.

3  ████   Trade Secret No. 6 fares no better.  It concerns a plan for █████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████   Ex. 4 at 57.  Again, Plaintiffs have not presented any documents

8  claiming the trade secret in full, despite Apple's expert stating that contemporaneous

9  documentation would typically accompany the ████████████████████████████

10  described in the secret.  Ex. 21  ¶ 235.  Possession of ████  Trade Secret No. 6 is

11  instead primarily premised on conversations and deposition testimony.  *Id.*  And even

12  the testimony that Plaintiffs rely upon to show possession does not reference the

13  specific █████████████████████████████████████████████████████

14  █████████████████████████████████████████

15  ██████████████████████████████████   *Id.* ¶¶ 236-238.  The

16  remaining purported trade secrets either incorporate ████  Trade Secret No. 1 (i.e.,

17  ████  Trade Secret Nos. 2-4) or incorporate both Trade Secret Nos. 1 and 6 (i.e., ████

18  Trade Secret Nos. 6-7).  Dkt. 296-1 ¶ 43.  Because Plaintiffs have not raised a genuine

19  question of material fact regarding their possession of ████  Trade Secret Nos. 1 and

20  6, summary judgment should also be granted on the five remaining trade secrets.

21  ███  ██████████████████████████████

22  Plaintiffs have three purported trade secrets regarding their ████████████

23  ███████████████████████████████  that have survived dismissal in this

24  case.  *See* Dkt. 350 at 4-6.  Plaintiffs have not created a triable issue as to their

25  possession of these alleged secrets.  Plaintiffs' ████  Trade Secret No. 5, for example,

26  claims a purportedly secret strategy for "████████████████████████████████

27  █████████████████████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

[REDACTED] Ex. 4 at 63-64.  Conducting such research [REDACTED] [REDACTED] [REDACTED] Ex. 21 ¶ 265.

Plaintiffs have identified nothing of the sort, *id.*—and certainly nothing that shows possession at the time of the purported misappropriation in 2013 and 2014.  Plaintiffs instead rely on their employees' post-litigation statements about concepts that have [REDACTED] [REDACTED] [REDACTED] Moreover, Plaintiffs have not shown [REDACTED] [REDACTED] *Id.* ¶ 266. And the documents Plaintiffs do assert support possession concern [REDACTED] [REDACTED] [REDACTED]

The two remaining trade secrets are not independently addressed by Plaintiffs' expert, and in any event incorporate ▮ Trade Secret No. 5.  Ex. 21 ¶ 296.  Because Plaintiffs did not possess ▮ Trade Secret No. 5, they could not have possessed trade secrets that build upon it.  *Id.* ¶ 297.

***

While Apple believes that summary judgment is warranted on each of the purported trade secrets for the reasons explained above, it anticipates that Plaintiffs will follow their experts' lead in trying to establish possession of individual alleged trade secrets by cobbling together a number of different sources.  If Plaintiffs take this approach—and to the extent this Court credits their arguments—Apple respectfully suggests that Apple should be permitted to take the same tack at trial in rebutting

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
12                              CASE NO. 8:20-cv-00048-JVS (JDEx)

Plaintiffs' arguments that their alleged trade secrets were not "generally known."  As Apple will explain at trial, each of Plaintiffs' claimed trade secrets (or at minimum, all its component parts) was generally known in the relevant industry.

**B.**      **Plaintiffs Have Not Established Which Entity Had Possession Of Each Alleged Trade Secret**

At a minimum, Plaintiffs' CUTSA claim should be rejected because they have not shown *which* entity possessed *which* alleged trade secret.  As discussed in Apple's simultaneously filed motion to strike, prior to November 23, 2022, Plaintiffs refused to provide this key piece of information.  Accordingly, if Apple's motion is granted, Apple is entitled to summary judgment on possession (and thus on liability).[3]



To be sure, Plaintiffs timely asserted that both Masimo and Cercacor

. Ex. 1 at 1, 3.  But that agreement does not reference any specific trade secret.  To the contrary, it deals only with                         and thus on its face does not sweep in the alleged

Moreover, to the extent Plaintiffs claim this agreement shows Masimo or Cercacor *could have* accessed any alleged technical trade secret, Plaintiffs have presented no evidence that Masimo or Cercacor actually did so and thus possessed that alleged secret at the time of the alleged misappropriation.  *See Jasmine Networks, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 993, 997 (2009).

---

[3] At the motion to dismiss stage, this Court stated that "Apple has cited to no law requiring that plaintiffs suing together specify which of them owns a particular trade secret." Dkt. 264 at 9-10.  This requirement necessarily springs from CUTSA's undisputed requirement to show possession.  If Plaintiffs fail to establish which entity has possession, they have not met their burden to establish that either did.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Even if the November 23 supplemental response stands, it cites no factual support other than ██████████████ agreement and two other wholly irrelevant agreements. *See generally* Ex. 6. One was ████████████████████ ████████████████ *see* Ex. 9, Ex. 2 § 18.9. It therefore cannot show possession at the time of the purported misappropriation, which occurred years after 2007. Dkt. 296-1 at 80. The other is a ████████████████████████ that does not mention trade secrets at all. Ex. 8. While Plaintiffs also cross-reference their responses to Interrogatories Nos. 6 and 7, nothing in those responses identifies which Plaintiff possessed which alleged trade secret. *See generally* Ex. 4; Ex. 5.

Without factual support, Plaintiffs' November 23 response boils down to attorney argument. Such "conclusory allegations unsupported by factual data will not create a triable issue of fact" on any issue, *Burchett v. Bromps*, 466 Fed. App'x 605, 606-607 (9th Cir. 2012); *see also TrueBeginnings, LLC v. Spark Network Servs., Inc.*, 631 F. Supp. 2d 849, 858 & n.5 (N.D. Tex. 2009), and they certainly do not meet Plaintiffs' burden of showing which entity has possession of which trade secret.

### C.     Plaintiffs Have Not Established Ownership Of The Purported Secrets

Even if Plaintiffs could show possession, the law requires more. California appellate courts and courts in this District have held that CUTSA plaintiffs must "show [they] owned the trade secret." *See, e.g.*, *AMN Healthcare* 28 Cal. App. 5th at 942; *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003) (same); *Humphreys & Assocs., Inc. v. Cressman*, 2015 WL 12698428, at *3 (C.D. Cal. Aug. 31, 2015) (same); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 960 (C.D. Cal. 2011) (same). This Court has stated in this very litigation that a trade secret plaintiff must "demonstrate: (1) the plaintiff owned a trade secret." *E.g.*, Dkt. 264 at 4. Plaintiffs have made no such showing.

Plaintiffs have chiefly relied on out-of-circuit cases following the Fourth Circuit's interpretation of Maryland trade secret law in *DTM Research, L.L.C. v. AT&T*

*Corp.*, 245 F.3d 327, 332 (4th Cir. 2001).  Ex. 6 at 6.  But because Plaintiffs chose to bring their suit under the CUTSA and in federal court, the *Erie* doctrine binds them to the California state courts' interpretation of that statue.  *See PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018).  Here, Plaintiffs identify no California case that adopts the *DTM* standard.  The case they have cited that uses the term "possession" rather than "ownership" is a classic outlier—it does not cite *DTM* or provide reasoning for choosing one word over the other.  *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010).  The law applies the "ownership" framework for a good reason—"[i]t is the owner at the time of the injury who will ordinarily suffer the loss of value or cost of replacement or repair, and who will thus need the compensatory remedy that the law offers." *Jasmine Networks*, 180 Cal. App. 4th at 993.  Adopting the "possession" framework, on the other hand, could result in a windfall for someone who did not actually suffer any loss—e.g., an employee who developed a trade secret for the employer under an assignment agreement.

Under the proper legal standard, Plaintiffs have failed to present any evidence—much less raise a genuine question of material fact—regarding which entity owned which trade secret.  If the November 23 supplemental response is excluded (as it should be), Plaintiffs have argued only that the trade secrets are owned by ███████ ████████████████  Ex. 6 at 5.  That is plainly insufficient to show even joint ownership; if the purported trade secrets were jointly owned, presumably Plaintiffs could have stated ██████████████████████  Moreover, the only evidence Plaintiffs have cited for this proposition is the ████████████████████, which at most speaks to *possession* (and even then, does not speak clearly, *see supra* pp. 13-14).  With regard to *ownership*, the agreement ██████████████████████████ ██████████████████████████████████████  Ex. 2 §§ 11.1, 11.2 (emphasis added).

Wilmer Cutler
Pickering Hale
and Dorr LLP

Finally, even if the belated supplemental response is permitted to stand, Plaintiffs still have not raised a triable issue of fact with respect to ownership.  Just as with the possession issue, the two additional █████████ cited in that response are not even remotely relevant to ownership at the time of the purported misappropriation.

## II.   PLAINTIFFS' PURPORTED TRADE SECRETS CLAIM GENERAL IDEAS

As this Court recently observed, "'[i]deas or concepts are not, in and of themselves, trade secrets.'" *True Wearables* Op. ¶ 99.  Rather, the CUTSA protects information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure."  Cal. Civ. Code § 3426.1(d)(1).  In light of these underlying requirements, the CUTSA requires a trade secret to be "actual, not theoretical" and "specific, not general."  *XpertUniverse, Inc. v. Cisco Sys., Inc*., 2013 WL 867640, at *3 (D. Del. Mar. 8, 2013) (applying California law).

This delineation—between "ideas and broad conceptualizations" on the one hand and valuable information about how those ideas and conceptualizations can be used on the other—serves the functions of "prevent[ing] employers from using trade secret law as a weapon against employee mobility [and] … permit[ing] defendant to ascertain at least the boundaries within which the secret lies.'"  *Mattel,* 782 F. Supp. 2d at 967.  The "no ideas" principle has particular force "in trade secrets cases involving technical or scientific information" where Plaintiffs are trying to "distinguish the alleged trade secrets from information already known in the field."  *Calendar Rsch. LLC v. StubHub, Inc*., 2020 WL 4390391, at *5 (C.D. Cal. May 13, 2020).  In that circumstance, "a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field."  *Id.*

### A.   Plaintiffs' ███████ Trade Secrets Nos. 5 and 7-8

#### 1.   ███████ *Trade Secret No. 5*

This purported trade secret recites ████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP



In other words, the alleged trade secret boils down to identifying a general problem (X can cause errors) and coupling it with a general solution (avoid X). Providing such a "general description" is "insufficient to establish a trade secret." *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020) (finding no trade secret where company claimed it "would conduct a 'salary analysis,' consider fringe benefits,' look at the client's 'retirement plan,' and use 'captive insurance company' techniques … and that its recommendations would result in tax savings").  Among other things, permitting a trade secret claim to proceed at a high level of generality would grant companies an impermissible and unearned "monopoly over broad swaths of other solutions … merely because they all fall on the side of generally favoring a particular consideration over others." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017); *see True Wearables* Op. ¶ 143 (no liability where claimed trade secret "is so broad that it would cover standard mathematical tools … that are used extensively in every scientific sub-field").

Plaintiffs apparently made no effort to articulate ████████ Trade Secret No. 5 with particularity (or Nos. 7-8, for that matter) because they believed that once their allegations had survived a motion to dismiss, they did not need to present actual evidence delineating the secrets' metes and bounds.  Dr. Madisetti, for example,

Wilmer Cutler
Pickering Hale
and Dorr LLP

asserts "that reasonable particularity is evaluated by the trial court 'before commencing discovery' in the case."  Ex. 16 ¶¶ 642, 794, 809.  While this Court has explained that "trade secrets do not have to be described in minute detail ***to survive a motion to dismiss***" because "[t]rade secret identification is naturally refined during discovery," Dkt. 264 at 8 (emphasis added), discovery is now complete and Plaintiffs' alleged trade secrets still lack particularity.  Courts in the Ninth Circuit have granted summary judgment under comparable circumstances.  *See Imax Corp. v. Cinema Techs., Inc*., 152 F.3d 1161, 1167 (9th Cir. 1998) (affirming summary judgment order where alleged trade secrets were not stated with reasonable particularity); *nSight, Inc. v. PeopleSoft, Inc.*, 296 F. App'x 555, 560-561 (9th Cir. 2008) (same); *see also Freeman Inv. Mgmt. Co. v. Frank Russell Co*., 2016 WL 5719819, at *12 (S.D. Cal. Sept. 30, 2016) (collecting cases granting summary judgment on reasonable particularity).  Indeed, a trade secret plaintiffs' failure to adequately describe its trade secrets with reasonable particularity can be a basis for finding insufficient evidence to support a jury's verdict.  *See Olaplex Inc. v. Loreal USA Inc.*, 855 F. App'x. 701, 712 (Fed. Cir. 2021).  This is because "[c]ourts and juries … require precision … especially where a trade secrets claim involves a sophisticated and highly complex system," since "the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract."  *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020).[4]

More broadly, Plaintiffs' failure to articulate their asserted trade secrets with sufficient particularity is an error of their own making.  ██████████████████ ████████████████████████████████████████████████████

---

[4] *Inteliclear* ultimately reversed a grant of summary judgment, but it emphasized that it was reaching its decision when "no discovery whatsoever had occurred" and the plaintiff would have "the possibility of expanding its identifications later."  978 F.3d at 659.  Here, the discovery deadlines have long since passed, and this Court has held that no further changes to Plaintiffs' trade secrets are permitted.  *See, e.g.*, Dkt. 899 at 4-5.

Wilmer Cutler
Pickering Hale
and Dorr LLP



1

2

3

4

5

6            Yet Plaintiffs failed to recite any of these

7 specific methods as their particular trade secret, instead choosing to articulate the trade

8 secret as finding an undefined solution for a general problem.  Plaintiffs cannot rewrite

9 it now, *see True Wearables* Op. ¶ 98 (rejecting attempt to narrow definition of alleged

10 trade secret to avoid finding that it was generally known), nor should Plaintiffs be

11 permitted to claim a trade secret broader than what they claim to have possessed.[5]

12    *2.*       ***Trade Secret No. 7***

13     Plaintiffs' seventh alleged ▮▮▮▮ secret recites ▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 19 at 156.

16 There is no dispute that ▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮ are broad mathematical concepts well-documented in the literature.  *See*

18 Ex. 18 ¶¶ 242-246 (▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮).  Even Dr. Madisetti has not argued that

20 there is anything secret regarding these concepts.  To the contrary, he expressly

21 acknowledges ▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23

24

25 _____

[5] Plaintiffs cannot avoid summary judgment by citing Dr. Madisetti's conclusory

26 assertions that, for example, ▮▮▮▮▮▮▮▮▮▮ Ex. 16 ¶ 644; *Nomadix v. Second Rule*

27 ▮▮▮▮▮▮▮ Jan. 16, 2009) ("Conclusory expert opinions, of course, … [do not] create a genuine issue of material fact[.]").

28

Wilmer Cutler
Pickering Hale
and Dorr LLP



3    Instead, Plaintiffs assert that

7                                                    But simply applying known concepts

8    and/or knowing their utility in                        monitoring amounts to

9    "[g]eneral knowledge in the trade or ... special knowledge of those persons who are

10   skilled in the trade," which still are insufficient to qualify as trade secrets.  *See Agency*

11   *Solutions.Com*, *LLC*, *v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1019 (E.D. Cal.

12   2011).  Missing is any "specific implementation involving a particular combination of

13   general concepts" that may constitute a trade secret.  *See Tracer Research Corp. v.*

14   *National Environmental Serv. Co.*, 843 F. Supp. 568, 582 (D. Ariz. 1993) (citing case

15   interpreting California law); *see also Winston Rsch. Corp. v. Minnesota Min. & Mfg.*

16   *Co.*, 350 F.2d 134, 144 (9th Cir. 1965) (rejecting asserted trade secrets directed to the

17   "general approach and basic mechanical elements of the Mincom machine" because if

18   enforced they would "prohibit former Mincom employees from engaging in any

19   development work in this area at all").  These alleged secrets appear similar to one

20   recently rejected by this Court as describing "tool[s] in biological sensing at large,"

21   which is insufficient to receive trade secret protection.  *True Wearables* Op. ¶ 148.

22        In sum, with no recited advantages of using

24   Trade Secrets No. 7 is theoretical, general, and does not qualify as a trade secret.  *See*

25   *XpertUniverse, Inc.*, 2013 WL 867640, at *3.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    **3.** █████████ ***Trade Secret No. 8***

2    Plaintiffs' eighth purported trade secret recites ███████████████

3    ██████████████████████████████████████████████

4    ████████████████████ Ex. 19 at 174.  Like the other purported

5    trade secrets discussed above, ██████████ Trade Secret No. 8 is a general,

6    commonsense concept—████████████████████████████████

7    ███████—with no description of any steps explaining how ███████████████

8    █████████ *See* Ex. 18 ¶ 249 ████████████████████████

9    ██████████████████████████████

10   ████████████████████████████████

11   ██████████████████████████████████ This

12   secret thus amounts to nothing more than "[g]eneral knowledge in the trade," and does

13   not qualify as a trade secret as a matter of law.  *See Agency*, 819 F. Supp. 2d at 1019.

14   Given the breadth of the purported trade secret, it should come as little surprise

15   that this basic notion is described throughout the literature and even appears in

16   physical devices that existed for decades prior to any alleged misappropriation.  *Cf.*

17   *True Wearables* Op. ¶¶ 142-148 (finding Plaintiffs had not described a viable trade

18   secret where it covered "commonplace" and "standard mathematical tools"); *see also*

19   Ex. 18 ¶¶ 251-259.  For example, █████████████████████████████

20   ███████████████████ The only difference is that, unlike the alleged trade secret

21   at issue here, it provides details on ███████████████████████████

22   ██████████████████████████████████

23   ██████████████████████████████████

24   ██████████████████████████████████

25   ████████████████████████████████████

26   ██████████████████████████████████

27   ███████████████████████████ *See* Ex. 7 at 1; *see also* Ex. 18 ¶¶ 251-

28



APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
21                                                   CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

252.  Other articles likewise 

Dr. Madisetti's attempts to distinguish these references reinforces the impermissible breadth of the purported trade secret.  For example, Dr. Madisetti points

Plaintiffs cannot reasonably distinguish references based on concepts absent from the alleged trade secret.

**B.    Plaintiffs' "Value, Importance, And Appropriateness" Trade Secrets**

Just as a trade secret must be actual and specific rather than theoretical and general, a trade secret plaintiff may "not simply rely upon 'catchall' phrases" when describing their trade secrets.  *See InteliClear,* 978 F.3d at 658; *accord* Dkt. 264 at 4.  Thus, for example, the Ninth Circuit has affirmed the grant of summary judgment where a purported trade secret claimed the "'dimensions and tolerances'" of a movie projector system.  *See Imax*, 152 F.3d at 1167.  The Ninth Circuit reasoned that this language did not "clearly refer to tangible trade secret material" because it "failed to indicate precisely which dimensions and tolerances were trade secrets"—a particularly problematic omission because the purported secrets involved a "sophisticated and highly complex projector system."  *Id.*; *see X6D Limited v. Li-Tek Corps. Co.*, 2012

1   WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012) (granting summary judgment on trade

2   secret claiming the "Ornamental Appearance, Color and Material" for pair of glasses).

3         Here, Plaintiffs originally asserted five purported trade secrets—one for each

4   remaining category—that claim the "value, importance, and appropriateness" of the

5   remainder of the trade secrets were originally in that category (some of which have

6   since been dismissed or otherwise dropped but are still incorporated within the secret).

7   *See* Dkt. 296-1 ¶ 40.16 (███ No. 16); *id.* ¶ 42.6 (███ No. 6); *id.* ¶ 43.8 (███ No. 8);

8   *id.* ¶ 44.7 (███ No. 7); *see also* Ex. 15 at 167-168 n.2 (███ No. 10).  Despite years of

9   discovery, however, Plaintiffs have failed to provide any additional details clarifying

10  what those general terms mean.  Even their experts—who spend dozens of pages

11  defending the other purported trade secrets—provide no guidance for how to

12  understand these words.  *E.g.*, Ex. 15 ¶ 168 ███████████████████████████

13  █████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████   For example, does "value" refer to the purported trade secrets' economic

16  value or their usefulness?  If the former, this is clear double-counting, as it overlaps

17  with the requirement for establishing that information is a trade secret in the first place

18  (a tactic akin to claiming the "secrecy" of a particular trade secret).  And if the latter,

19  what kind of usefulness (e.g., usefulness that comes from using the purported trade

20  secrets all together, individually, or in some specific combination)?  The purported

21  trade secrets provide no answer.  The same types of questions arise when considering

22  the meaning of "importance" (important in what sense?) and "appropriateness" (when

23  compared to what?).

24        This Court's prior motion to dismiss ruling regarding the "value, importance,

25  and appropriateness" trade secrets does not answer whether Plaintiffs have met their

26  burden to define their purported secrets with sufficient particularity at the summary

27  judgment stage.  *See* Dkt. 264 at 5.  There, the question was whether Plaintiffs were

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

using the phrase to smuggle in new trade secrets "about which Apple does not have notice" at a later date. *Id.* Here, the issue is whether Plaintiffs have provided enough evidence to allow a trier-of-fact to understand the scope of those five specific alleged trade secrets.

Since this Court's prior ruling, moreover, the scope of those five trade secrets has only grown murkier. This is because each incorporates purported trade secrets that are no longer in this litigation—e.g., because Plaintiffs have abandoned them. For example, ████████ Trade Secret No. 10 recites the ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *See* Ex. 19 at 198. While the fact that the "value, importance, and appropriateness" trade secrets were "circumscribed by the preceding list of trade secrets" may have provided some clarity at the motion to dismiss stage, (Dkt. 264 at 5), today the references to secrets that are no longer at issue will only make it exceedingly difficult for the jury to understand the precise scope of the catch-all secrets. Adding to the confusion, Plaintiffs' experts have read the five catch-all secrets to claim the "value, importance, and appropriateness" of *each* of the live secrets—essentially doubling the number of purported trade secrets in this litigation without leave of this Court. For example, Dr. Madisetti describes ████ ████ Trade Secret No. 10 as "[t]he value, importance and appropriateness of ████ █████████████████████████████████████████████████████ ████████████████████ " (Ex. 15 at 167-168), "the value, importance, and appropriateness of ████████████████████████████████████████████ ████████████████████████████ ," (*id.* at 219); *see id.* at 283 (same for No. 7); *id.* at 297 (same for No. 8). This type of slicing and dicing means that Plaintiffs are receiving an unjustified second bite at the apple for each purported trade secret—both for the trade secret as alleged and for the nebulous concept of its value, importance, and appropriateness.

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
24                                CASE NO. 8:20-cv-00048-JVS (JDEx)

**III.   APPLE SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' LOST PROFITS THEORY IF MR. KINRICH'S LOST PROFITS OPINIONS ARE EXCLUDED**

Per this Court's instructions, Apple intended to file a combined *Daubert*/Rule 37(c) motion to strike portions of Plaintiffs' damages expert report simultaneously with this motion.  *See* Dkt. 1068 at 3; *see also* Dkt. 898 (parties' stipulation to file summary judgment motions on December 19).  However, the night before Mr. Kinrich's scheduled deposition on Monday, December 12, Plaintiffs informed Apple that Mr. Kinrich would not be available for the immediate future because ███████ ██████████████████████.  Ex. 26.  Because Plaintiffs refused to stipulate to push back the filing deadline for summary judgment to January 9, 2023—i.e., the general deadline that this Court set for law and motion matters—Apple has been forced to file this motion first and will file its combined *Daubert*/Rule 37 motion on January 9 and to notice it for the same hearing date as this motion (February 6).

As will be explained fully in Apple's January 9 motion, both Mr. Kinrich's October 2022 report and his November 30, 2022 "Supplemental" Report are deficient at least because his lost profits analysis relies on factual information and ██████ ████████████ that this Court has already held were not timely disclosed.  *See generally* Dkt. 1031.  If Mr. Kinrich is barred from offering his lost profits opinions (as he should be), Plaintiffs cannot establish a genuine question of material fact remains regarding their entitlement to that relief.  *See ChromaDex, Inc. v. Elysium Heath, Inc.*, 2020 WL 1379236, at *8 (C.D. Cal. Jan. 16, 2020); *Goodness Films, LLC v. TV One, LLC*, 2014 WL 12594201, at *2-4 (C.D. Cal. Aug. 28, 2014) (similar).

**CONCLUSION**

This Court should grant Apple summary judgment of no liability on Plaintiffs' trade secret claim.  At a minimum, this Court should grant summary judgment on Plaintiffs' ████████ Trade Secret Nos. 5 and 7-8, the "value, importance, and appropriateness" trade secrets, and/or Plaintiffs' lost profits damages theory.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Dated:  December 19, 2022

Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  */s/Mark D. Selwyn*
     Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

Wilmer Cutler
Pickering Hale
and Dorr LLP