Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearances continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        February 6, 2023<br>Time:        1:30 p.m.<br>Location:    Courtroom 10C<br><br>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 2

    A.   Masimo Developed Industry-Leading Proprietary Technology ........... 2

    B.   Lamego Learns Masimo's ▮▮▮ Trade Secrets ................................... 3

    C.   Apple Sought to Obtain Masimo's Technology ................................... 4

    D.   Lamego Disclosed Masimo's ▮▮▮ Trade Secrets To Apple ............... 6

    E.   Apple Filed Patents On Masimo's ▮▮▮ Trade Secrets ...................... 6

    F.   Masimo's Motion For A Preliminary Injunction on Its ▮▮▮ Trade Secrets ......................................................................................... 6

III.   LEGAL STANDARD ................................................................................ 7

    A.   Motions for Summary Judgment ........................................................ 7

    B.   Trade Secret Misappropriation ........................................................... 7

IV.    ARGUMENT ............................................................................................. 8

    A.   Masimo's ▮▮▮ Techniques Are Trade Secrets ................................. 8

        1.   Masimo Developed the ▮▮▮ Techniques .................................. 8

            a.   Trade Secrets D-9, D-10, and D-13 ................................. 8

            b.   Trade Secret D-11 ........................................................ 12

            c.   Trade Secret D-12 ........................................................ 12

            d.   Trade Secret D-14 ........................................................ 13

            e.   Trade Secret D-15 ........................................................ 13

        2.   The Trade Secrets Derive Value From Not Being Generally Known ............................................................... 13

        3.   Masimo Took Reasonable Steps to Maintain the Secrecy of its Trade Secrets ............................................... 16

    B.   Apple Misappropriated Masimo's Trade Secrets ............................. 17

# TABLE OF CONTENTS
## (cont'd)

Page No.

      1.    Apple Misappropriated Masimo's Trade Secrets by Acquisition ................................................................. 17

      2.    Apple Used and Disclosed Masimo's Trade Secrets by Filing and Obtaining ███████ ............................. 22

  C.    Apple's Misappropriation Harmed Masimo ..................... 24

V.    CONCLUSION ............................................................. 25

# TABLE OF AUTHORITIES

**Page No(s).**

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*,
   226 Cal. App. 4th 26 (2014) ................................................................ 15

*Am. Can Co. v. Mansukhani*,
   728 F.2d 818 (7th Cir. 1982) ............................................................... 16

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. C 10-3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ............... 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................. 7

*Cisco Sys., Inc. v. Chung*,
   462 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................ 13

*Imi-Tech Corp. v. Gagliani*,
   691 F. Supp. 214 (S.D. Cal. 1986) ....................................................... 15

*Kittrich Corp. v. Chilewich Sultan, LLC*,
   No. CV 12-10079-GHK-ARGx, 2013 WL 12131376
   (C.D. Cal. Feb. 20, 2013) ................................................................... 13

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
   2010 WL 2764714 (N.D. Cal. July 13, 2010) ........................................ 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................. 7

*Morlife, Inc. v. Perry*,
   56 Cal. App. 4th 1514 (1997) ....................................................... 13, 16

*Pyro Spectaculars N., Inc. v. Souza*,
   861 F. Supp. 2d 1079 (E.D. Cal. 2012) ................................................ 16

*Sargent Fletcher, Inc. v. Able Corp.*,
   110 Cal. App. 4th 1658 (2003) ............................................................. 7

*U.S. v. Chung*,
   659 F.3d 815 (9th Cir. 2011) ............................................................... 16

*Yield Dynamics, Inc. v. TEA Systems Corp.*,
   154 Cal. App. 4th 547 (2007) ............................................................. 14

## OTHER AUTHORITIES

Cal. Civ. Code § 3426.1 .......................................................... 7, 17, 22

Fed. R. Civ. P. 56 ............................................................................... 7

# I. __INTRODUCTION__

Masimo Corp. and Cercacor Laboratories, Inc. (collectively, "Masimo") seek summary judgment against Apple for misappropriating Masimo's Trade Secrets D-9 through D-15 under the California Uniform Trade Secrets Act ("CUTSA"). Those trade secrets, concerning ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████       █████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ At all times, Masimo maintained the secrecy of those ██████ techniques.

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████ Instead, Apple decided to hire Masimo employees. Apple hired Michael O'Reilly (Masimo Corp.'s Chief Medical Officer), Lamego, and ███████████ other Masimo employees. ██████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ By improperly acquiring, using, and then disclosing the trade secrets, Apple misappropriated them.

Apple argues Masimo's ██████ techniques were generally known. Apple's expert breaks down the trade secrets "bit by bit" and attempts to show each bit was published. But finding aspects of the trade secret across various publications and applying a

patent-like obviousness analysis does not show the trade secret is generally known under CUTSA.  Apple's expert never addresses the trade secrets as a whole, much less how the trade secrets are generally known under any proper legal standard.  Moreover, Apple's argument is inconsistent with Apple's actions.  Apple hired Lamego and then sought a patent claiming for itself exclusive rights to the ███ techniques.  Apple and Lamego represented to the Patent Office that the ███ techniques were novel and nonobvious.  Thus, as a matter of law, Apple cannot establish that trade secrets D-9 through D-15 were generally known.

## II.  FACTUAL BACKGROUND

### A.  Masimo Developed Industry-Leading Proprietary Technology

In 1989, Joe Kiani started Masimo Corp. in his condominium.  Today, Kiani serves as CEO of Masimo, the technology leader in noninvasive physiological monitoring.  Masimo Corp. is a publicly traded company that employs 6,300 people and has annual healthcare revenues exceeding one billion dollars.  This growth followed Masimo's development of a range of technologies that revolutionized noninvasive physiological monitoring.  Masimo's innovative technology allows more accurate noninvasive measurement of physiological parameters such as pulse rate, arterial oxygen saturation, and many others.  Kiani Decl. ¶4; Diab Decl. ¶¶2, 31.  In 1998, Masimo Corp. spun off certain technologies into Cercacor.  Kiani Decl. ¶3.  Cercacor and Masimo Corp. cross-license technologies to each other and confidentially collaborate on development.  Kiani Decl. ¶3; Hammarth Decl. ¶6; Ex. 12.[1]

Hospitals recognize Masimo's noninvasive physiological monitoring technology as industry leading.  Masimo estimates its technology is used to monitor more than 200 million patients worldwide annually.  Kiani Decl. ¶5.  For some noninvasive parameters, Masimo is the only provider of such technology.  *Id*.  Masimo owns patents on some of its technology and maintains other technology as trade secrets.

---

[1] All exhibits referenced herein are attached to the Loebbaka Declaration.

-2-

1   Kiani Decl. ¶4.

2   **B.**   **Lamego Learns Masimo's** ███ **Trade Secrets**

3        In 2000, Lamego joined Masimo Corp. as an algorithm development engineer.

4   Loebbaka Decl., Ex. 17 at 29:13-16.  Before he worked at Masimo, Lamego had no

5   experience developing patient monitoring technology.  Kiani Decl. ¶9. ████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10   ██████████████████████████████████████████

11        Lamego and Diab worked on rainbow® technology.  Diab Decl. ¶32.  Masimo's

12   rainbow® sensors have multiple LEDs ██████████████████████████

13   ████████████████████████████ *Id.*  That light passes

14   through patient tissue and then to a detector.  *Id.* ¶¶2, 4-6.  The detector outputs a

15   signal based on the amount of light that reaches it.  *Id.* ¶5.  The signal may also include

16   unwanted information from other sources such as ambient light.  *Id.* ¶7. ████████

17   ████████████████████████████████████████████████████████

18   ██████████████████████████

19        ██████████████████ creating multiple signals from the detector signal.  *Id.*

20   ¶¶10, 13-18.  Each ████████ signal has information from all of the LEDs.  *Id.* ¶18.

21   ██████████ the process of extracting the content corresponding to a particular

22   LED from the multiple demodulated signals.  *Id.* ¶18-19.  Ideally, a ██████████

23   signal for a particular LED does not include data from the other LEDs.  *Id.* ¶7.

24   ██████████ refers to a ██████████ signal for a particular LED that undesirably

25   includes data from other LEDs.  *Id.* ██████████████████████████

26   ████████████████████████████████████████████████████████

27   *Id.* ¶30-31; Kiani Decl. ¶7.  Those techniques are described in Section IV.A.1, below.

28

1    Lamego was part of the team working on those techniques.  Diab Decl. ¶32.  In

2   presenting aspects of the ███ trade secrets to Kiani, Lamego explained why the

3   improvement ████████  Ex. 1 at -690.  Lamego rose through the ranks and

4   ultimately became the CTO of Cercacor.  Kiani Decl. ¶9.  Contrary to Apple's

5   arguments, Lamego emphasized these aspects of the ███ trade secrets are ███

6   ████  Ex. 1 at -690.

7   **C.   <u>Apple Sought to Obtain Masimo's Technology</u>**

8   ████  Apple began its physiological monitoring technology development

9   efforts.  Ex. 21 ████████  Apple's goal was to ████████████

10  ████████████  Ex. 19, Hotelling Dep. Tr. at 36:19-37:6; Ex. 20.  Apple

11  identified Masimo as a ████████  Ex. 21 at -191.

12   By January 2013, Apple refined its plans to ████████████.  Apple

13  now sought to identify ████████████████████████

14  ████████████████████  Ex. 22 at -106.  Apple planned to ███

15  ████████████████████████████  *Id.*  Apple

16  identified Masimo Corp. and Cercacor as ████████████████.

17  Ex. 20 at -774; Ex. 22 at -109 ████████████████████████

18  ████████████

19   Apple decided to reach out to Masimo.  Adrian Perica (Apple's VP for corporate

20  acquisitions) told Masimo that ████████████████████████

21  ████████████  Ex. 23 at -627.  Perica indicated Apple wanted to ███

22  ████████████████████  *Id.*  Apple then met with

23  Masimo in May 2013.  Kiani Decl. ¶18.

24   In June 2013, Tim Cook, Apple CEO, asked Perica ████████████

25  ████████████████████████  Ex. 24 at -708.  Cook

26  told Perica that ████████████████████████████

27  ████████  *Id.*  Perica responded that ████████████████████

28

-4-

1  [REDACTED] *Id.* at -707.  Perica told Cook that [REDACTED]

2  [REDACTED] *Id.; see also*

3  Ex. 25 [REDACTED]

4  [REDACTED]   Perica  said  [REDACTED]

5  [REDACTED] Ex. 24 at -707.

6  [REDACTED] Ex. 26 at -808.  Apple instead hired

7  Masimo employees.

8      Later that June, Apple hired O'Reilly.  Ex. 27, O'Reilly Dep. Tr. at 286:17-

9  287:6.  O'Reilly told Kiani that [REDACTED]

10  Kiani Decl. ¶20.

11      Unbeknownst to Masimo at the time, [REDACTED]

12  [REDACTED]   Ex. 28 at 1.  Lamego [REDACTED] *Id.*  However, Lamego

13  reconsidered after [REDACTED]

14  *See* Ex. 2; Kiani Decl. ¶¶13-17.  Lamego wrote to Cook on October 2, 2013.  Ex. 28.

15  Lamego offered to help solve Apple's patient monitoring problems in exchange for a

16  senior executive position at Apple.  *Id.*  Lamego referenced his "10 years" at Masimo

17  and explained the "patient equation" was the "deceptive part" that only Lamego could

18  help solve.  *Id.*  Lamego invited Cook to respond if he agreed with Lamego's offer.  *Id.*

19      Early that same morning, [REDACTED]

20  [REDACTED] Ex. 29 at

21  -008.  When Apple sought O'Reilly's input, [REDACTED]

22  [REDACTED]

23  [REDACTED] *Id.* at -007.  [REDACTED]

24  [REDACTED] Ex. 30  at  -760 [REDACTED]

25  [REDACTED] *Id.* at -776.  Apple

26  ultimately hired Lamego, despite [REDACTED].  Ex. 33 at 27.  [REDACTED]

27  [REDACTED] Ex. 31 at -986 [REDACTED]

28

1    ████████████████████████████████████████████████████ Kiani

2    Decl. ¶20.

3        Apple then continued recruiting Masimo employees, including ████████

4    ██████████   Ex. 32.   ████████████████████████████████████

5    ██████████       Ex. 33 at 16-18, 27.

6    **D.    Lamego Disclosed Masimo's ███ Trade Secrets To Apple**

7        After Lamego joined Apple, Masimo wrote to Apple explaining that Lamego

8    possessed Masimo's trade secrets and that Apple should refrain from obtaining them

9    through Lamego.  Ex. 34.  Notwithstanding warnings from Masimo ███████,

10   Apple quickly used Lamego to learn about Masimo's trade secrets.

11       By June 30, 2014, Lamego had already ████████████████████████

12   ████████████   Ex. 35 at -531.  ████████████████████████████

13   ███████████████████████████████████████████████████████

14   ████████████████████████████████████████  *Id.*  ████████

15   ██████████████████████████████████████████████  *Id.*

16   On July 11, 2014, Lamego left Apple.  Ex. 33 at 18.

17   **E.    Apple Filed Patents On Masimo's ███ Trade Secrets**

18       In September 2014, Apple confidentially filed one of the twelve applications

19   with the Patent Office.  ████████████████████████████████████

20   ████    The application named Lamego as the sole inventor.  *Id.* at -794.  Apple then

21   requested the Patent Office refrain from publishing the patent application before

22   issuance.  Ex. 37 at -839.  Thus, the Patent Office did not publish the application until

23   ██████████████████████████████████████████████████  As

24   explained in greater detail below, ████████████████████████.

25   Madisetti Decl. ¶100–09, 154, 173, 182, 190–91, 198, 204.

26   **F.    Masimo's Motion For A Preliminary Injunction on Its ███ Trade Secrets**

27       In August 2020, Masimo moved for a preliminary injunction, arguing that Apple

28                                          -6-

had misappropriated Masimo's ▮▮▮ trade secrets based on the ▮▮▮▮▮ and should be prevented from publishing Masimo trade secrets.  Dkt. 116.  The Court denied the motion because, without access to Apple's unpublished applications, Masimo was unable to show that Apple was likely to publish trade secrets in the future.  Dkt. 198 at 11-12.  However, the Court did find that Masimo is likely to show that Apple misappropriated its trade secrets ▮▮▮▮▮▮.  *Id*. at 9.

## III.  LEGAL STANDARD

### A.    Motions for Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of ... [the record that] demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with admissible evidence that genuine issues of material fact remain to preclude summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

### B.    Trade Secret Misappropriation under CUTSA

Under CUTSA, Masimo must show by a preponderance of the evidence (1) the existence and possession of a trade secret, (2) misappropriation of the trade secret, and (3) defendant's misappropriation caused or threatened harm to plaintiff.  Cal. Civ. Code § 3426.1; *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1668 (2003).  CUTSA defines a trade secret as information that:

> (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  A trade secret is misappropriated by its acquisition, use,

-7-

or disclosure.  Cal. Civ. Code § 3426.1(b).

## IV.  ARGUMENT

**A.      Masimo's ████ Techniques Are Trade Secrets**

### 1.      Masimo Developed the ████ Techniques

Masimo created and developed the ████ techniques recited in Trade Secrets D-9 through D-15.[2]  Masimo Corp. conceived of the techniques and Cercacor refined them.  Masimo exposed Lamego to its ████ trade secrets during Lamego's many years of employment.   Masimo laboratory notebooks, correspondence, and source code document these development efforts.

#### a.      Trade Secrets D-9, D-10, and D-13

Masimo developed and possessed Trade Secrets D-9, D-10, and D-13.  *See* Ex. 67 (quoting trade secrets).  Masimo began working on ████ techniques before 2000.   In the early 2000s, ████████████████████████████████

---

[2] Ex. 67 lists the text of Trade Secrets D-9 through D-15.  The Madisetti declaration sets forth detailed analysis of Masimo Corp.'s and Cercacor's possession and Apple's misappropriation of Trade Secrets D-9 through D-15.



In 2007, Lamego became the Cercacor CTO (Ex. 40) and worked with an engineer, Jeroen Poeze, to develop the Pronto-7 product.  Poeze Decl. ¶3, 8, 16.  In 2008, Lamego directed Poeze to implement and refine Masimo's ███ techniques.  *Id.*





### b.   Trade Secret D-11

Masimo developed and possessed Trade Secret D-11.  *See* Ex. 67.  █████

██████████████████████████████████████████████████████████

█

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████

### c.   Trade Secret D-12

Masimo developed and possessed Trade Secret D-12.  *See* Ex. 67.  █████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

1    ███████████████████████████████████

2        **d.**    **Trade Secret D-14**

3        Masimo developed and possessed Trade Secret D-14.  *See* Ex. 67.  ████████

4    ████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ████████████████████████████████████████████████

7    ██████████████████████████████

8        **e.**    **Trade Secret D-15**

9        Masimo developed and possessed Trade Secret D-15.  *See* Ex. 67.  Pronto-7

10   used infrared LEDs ████████████ and visible light LEDs ████████████

11   ████████████████████████████████████████████████

12   ████████████████████████

13       **2.**    **The Trade Secrets Derive Value From Not Being Generally Known**

14       "The standard to show that trade secrets derive [independent] economic value is

15   not a high standard." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal.

16   2020).  "To have independent economic value, a trade secret must be sufficiently

17   valuable and secret to afford an actual or potential economic advantage over others."

18   *Id*.  "The [generally known] inquiry is not whether the alleged trade secret has been

19   publicly disclosed at all, but whether it has become 'generally known to the relevant

20   people, i.e., potential competitors or other persons to whom the information would

21   have some economic value[.]'" *Kittrich Corp. v. Chilewich Sultan, LLC*, No. CV 12-

22   10079-GHK-ARGx, 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013) (quoting

23   *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. 4th 241, 251 (2004)).  A trade

24   secret has independent economic value when it provides a business advantage over a

25   competitor by being not generally known to the competition.  *Morlife, Inc. v. Perry*, 56

26   Cal. App. 4th 1514, 1521–22 (1997).  The core inquiry is whether the owner of the

27   information derives value in keeping the information secret from persons who could

28

exploit it to the relative disadvantage of the original owner.  *Yield Dynamics, Inc. v. TEA Systems Corp.*, 154 Cal. App. 4th 547, 568 (2007).

Masimo invested significant resources over many years to develop this confidential technology.  *See* Diab Decl. ¶31; Kiani Decl. ¶7.  Masimo's ███ trade secrets are valuable because they enabled Masimo to provide many of its blood constituent parameters.  Diab Decl. ¶31.  These trade secrets made Masimo's technology possible by ████████████████████████████████████ ████ and improved the accuracy of Masimo's physiological monitoring, which gives Masimo an advantage over its competitors.  *Id.*; Kiani Decl. ¶7.

Masimo's ████ trade secrets are also valuable because they were not generally known to others.  Masimo's witnesses and technical expert confirm that Trade Secrets D-9 through D-15 were not generally known.  Diab Decl. ¶30-31; Madisetti Decl. ¶¶130-153, 175-187, 194-197, 203-206, 211-214, 218-220, 224-226.

Moreover, Lamego's statements at the time of development and at the time of misappropriation show he believed this information was not generally known.  For example, while at Masimo, Lamego ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████  Lamego's acts show that the ████ techniques were true breakthroughs and not generally known.

Apple's conduct also supports that Masimo's trade secrets were not generally known.  ████████  Apple filed the U.S. provisional patent application that led to the ████████████████████  During prosecution, Apple emphasized the importance and novelty of the Masimo ████ techniques that Apple misappropriated.  After the Patent Office initially rejected the claims ████████████████████████████████

-14-

1    ▮    Apple argued the following claim features were not obvious:



*Id.* at -729.   Because Apple represented to the Patent Office that Masimo's trade secrets were novel and non-obvious (and obtained a patent on that basis), those representations also show that the trade secrets were not generally known.   *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 63 (2014).

Apple's expert, Sarrafzadeh, fails to provide any legally cognizable basis to show that Trade Secrets D-9 through D-15 lacked independent economic value for being generally known.   First, Sarrafzadeh ignores Lamego's and Apple's efforts to patent the trade secrets.

Second, Sarrafzadeh's opinion on this point is legally irrelevant.   Sarrafzadeh did not assert that any reference discloses the entirety of any of Masimo's ▮ trade secrets.   Rather, Sarrafzadeh asserts that aspects of the ▮ trade secrets were separately disclosed in individual references.   He then attempts to cobble together multiple documents to argue that pieces of the trade secrets were generally known. Sarrafzadeh applies a legally deficient framework.   Trade secrets should not be "examined bit by bit," but rather should be examined as a whole.   *Altavion,* 226 Cal. App. 4th at 47-48.   Thus, Sarrafzadeh's analysis is legally flawed and cannot raise a genuine issue of material fact on the independent economic value of the ▮ trade secrets.

Sarrafzadeh appears to be opining that the trade secrets would have been obvious using patent-law principles.   But such a patent-law analysis has no relevance to whether a trade secret would have been generally known.   Finding aspects of the

trade secret across various publications and applying a patent-like obviousness analysis does not show the trade secret is generally known under CUTSA. *See Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986) ("The defendants' attempts to show that Imi-Tech's alleged trade secrets were known in the prior art also fail to provide a defense for the defendants, since it is not required that a trade secret be patentably nonobvious or novel."). This is because "'obviousness' is not the benchmark" in trade secret actions. *Am. Can Co. v. Mansukhani*, 728 F.2d 818, 819 (7th Cir. 1982). Thus, Apple's reliance on Sarrafzadeh fails to raise a genuine issue of material fact.

### 3. <u>Masimo Took Reasonable Steps to Maintain the Secrecy of its Trade Secrets</u>

"[A] business is not required to turn itself into an 'impenetrable fortress' to protect its trade secrets." *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1091 (E.D. Cal. 2012) (quoting *E.I. duPont deNemours & Co. v. Christopher,* 431 F.2d 1012, 1017 (5th Cir.1970)). Reasonable efforts to maintain secrecy "may include advising employees of the existence of a trade secret, limiting access to the trade secrets on a need to know basis, requiring employees to sign confidentiality agreements, and keeping secret documents sequestered under lock and key." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *18 (N.D. Cal. Jan. 10, 2013); *see also Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1091 (E.D. Cal. 2012); *U.S. v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011); *Morlife*, 56 Cal. App. 4th at 1523.

Masimo maintains the confidentiality of its ███ trade secrets. Diab Decl. ¶30-31. For example, Masimo requires that employees, including Lamego, sign agreements requiring them to preserve the secrecy of Masimo's confidential information. Ex. 41, Miller Dep. Tr. at 16:10-17:8, 23:2-11, 25:24-27:19, 29:5-8; Ex. 42, Hammarth Dep. Tr. at 125:21-126:14; Kiani Decl. ¶6; Hammarth Decl. ¶9-14;

Miller Decl. ¶¶5, 7-8, 12-16; Exs. 9-11, 13.   Masimo also restricts access to its electronically stored information to employees whose responsibilities require access to such information.   Hammarth Decl. ¶¶19-24; Muhsin Decl. ¶6, 10.   Masimo also has written policies and employee handbooks instructing employees how to handle computer resources to ensure that its systems remain secure and its information stays protected.   Exs. 3-7, 14, 15; Hammarth Decl. ¶¶15-18; Muhsin Decl. ¶¶7-12. Moreover, Masimo physically restricts its facilities by requiring key-card access to restricted areas and logging visitors.   Hammarth Decl. ¶¶26-28; Muhsin Decl. ¶¶4-5. When employees depart, Masimo conducts exit interviews where it reminds them of their confidentiality obligations.   Hammarth Decl. ¶¶29-31; Miller Decl. ¶9-10; Ex. 16.

Moreover, when Lamego transferred the Pronto-7 source code files to Masimo, he instructed that ███████████████████████████████████████ ████████   Ex. 43 at -037.   Masimo also alerted Apple that Lamego possessed Masimo's trade secrets and warned Apple to respect its trade secrets.   Ex. 34. Masimo's measures were more than reasonable under CUTSA.

**B.   <u>Apple Misappropriated Masimo's Trade Secrets</u>**

Apple misappropriated Masimo's trade secrets under all three grounds: acquisition, use, or disclosure.

**1.   <u>Apple Misappropriated Masimo's Trade Secrets by Acquisition</u>**

Misappropriation by acquisition occurs when a party acquires a trade secret of another when the party "knows or has reason to know that the trade secret was acquired by improper means."   Cal. Civ. Code § 3426.1(b)(1).   "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy . . . ." *Id.*

Even before Apple hired Lamego, ███████████████████████ ████████████████████████████   Ex. 29 at -007.   In January 2014, Masimo sent a letter also warning Apple that Lamego possessed Masimo's trade secrets and was obligated to maintain their secrecy.   Ex. 34.   Despite those warnings,

-17-

1   Apple assigned Lamego to develop Apple's noninvasive monitoring technology,
2   knowing that he possessed Masimo's trade secrets.[3]

3          Soon after hiring Lamego, Apple began acquiring the very ███ techniques that
4   Lamego had developed with Masimo. *See, e.g.*, Ex. 44. Lamego repeatedly discussed
5   Masimo's ███ trade secrets with Apple engineers and disclosed the techniques to
6   ████████. That these discussions and disclosures occurred immediately
7   after Apple hired Lamego confirms that Lamego brought the technology with him
8   from Cercacor as discussed below.

9   ████████████████████████
10  ████████████████████████
11  ████████████████████████
12  ████████████
13  ███████████████████████
14  ████████████████████████
15  ████████████████████████
16  ████████████████████████
17  ████████████████████████
18  ████████████████████████
19  ██████████████████
20  ████████████████████
21  █████████
22  ████████████████████████
23  ████████████████████████
24  ████████████████████████
25  ████████████████████████

26  [3] Apple recognized the explicit nature of Masimo's warning letter, arguing that it
27  showed Masimo must have suspected Lamego misappropriated trade secrets when he
    started working at Apple. Dkt. 16-1 at 3, 7.
28

-18-







But Lamego testified merely that he was listed as a sole inventor, that no one was a coinventor, and that his work that led to the patent occurred in his fourth or fifth month at Apple.  Ex. 17, Lamego Dep. Tr. at 162:4-24, 164:22-165:2.  Lamego's deposition testimony provided no details about him conceiving the ▮▮▮ technologies at Apple.

Apple also relies on documents showing Lamego's disclosure of the techniques, including documents dated after March 2014.  But those disclosures cannot rebut the showing that Lamego knew of the ▮▮▮ trade secrets before he started working at Apple.

As discussed above, while at Masimo, Lamego explained to Kiani ▮▮▮

There is no genuine issue of material fact that Lamego possessed or knew of Masimo's ▮▮▮ trade secrets long before starting at Apple.

-21-

Apple knew or had reason to know Lamego was improperly providing Masimo's trade secrets to Apple. As discussed above, Apple went to great lengths to obtain Masimo's technology. *See supra*, Section II.C. ████████████ ████████████████████████████ Masimo ████████████ raised concerns to Apple that Lamego possessed Masimo's trade secrets and had continuing obligations to Masimo to preserve them. Ex. 34; Ex. 29 at -007. ████████████ ████████████████████████████████████ Accordingly, Apple knew or at least should have known that it acquired Masimo's confidential information from Lamego through the improper means of Lamego violating his contractual obligations to Masimo.[4]

2. **Apple Used and Disclosed Masimo's Trade Secrets by Filing and Obtaining** ████████████

Misappropriation also occurs when a party discloses or uses a trade secret without express or implied consent. Cal. Civ. Code § 3426.1(b)(2)(B)(iii). Apple used Masimo's ████ trade secrets when applying for ████████████. Madisetti Decl. ¶¶118-129, 174, 193, 202, 210, 217, 223. Apple also disclosed those trade secrets when ████████████. Apple included Masimo's trade secrets in both ██ ████████████████████ demonstrates Apple's misappropriation. ████████████ ████████████████████████████████████████████ ██████████████████████████

_____

[4] Apple is also liable under the doctrine of respondeat superior. *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010). Lamego used Masimo's trade secrets in the course of his employment and disclosed those trade secrets to Apple in technical discussions, documents, and invention disclosures.



Lamego worked on the same process at Masimo.  Madisetti Decl. ¶¶72-82.  The following diagram from Poeze's notebook in 2008 shows the same process.

disclosed the process Lamego helped develop at Masimo.

Dr. Madisetti carefully compared those claims to Masimo's development and explains

-23-

that Apple used and disclosed D-10 through D-15 in those claims.  Madisetti Decl. ¶6.

Apple named Lamego as the sole inventor ████████████.  Thus, Apple cannot genuinely dispute that Lamego was the source of the information in ██ ████████.  Apple also cannot assert it had express or implied consent to use or disclose the ████ trade secrets.

## C.   <u>Apple's Misappropriation Harmed Masimo</u>

Masimo faces an ongoing threat that Apple will further use, disclose, and destroy Masimo's trade secrets.  Apple claimed Masimo's trade secrets as its own.  Apple exacerbated the harm by maintaining those patent rights and failing to transfer them to Masimo.  Thus, Apple eventually could try to prevent Masimo from practicing its own trade secrets.  Indeed, Apple recently filed two suits in Delaware alleging that Masimo infringes other Apple patents.

Apple's patent publication also puts Masimo's trade secret at risk of discovery by others.  Many in Masimo's industry know that Lamego was at Masimo and became the CTO of Cercacor.  Kiani Decl. ¶8.  Given Masimo's status as the undisputed industry leader, disclosures of patient monitoring technology by Cercacor's former CTO would be of particular interest to competitors.

Apple's misappropriation of trade secrets also caused a chilling effect on the free sharing of ideas within Masimo.  *Id.*  This will negatively affect innovation in the whole industry, given Masimo's reputation as the innovator in the field.  *Id.*

Protecting Masimo's intellectual property is essential for Masimo's survival.  *Id.*  Masimo places significant value on the trade secrets in this case because they provide a competitive advantage.  *Id.*   Thus, Apple harmed Masimo by misappropriating Masimo's ████ trade secrets.

## V. <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant partial summary judgment that Apple misappropriated Masimo's ████████████ trade secrets as set forth in Trade Secrets D-9 through D-15.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>December 19, 2022</u>      By: <u>*/s/ Kendall M. Loebbaka*</u>
        Joseph R. Re
        Stephen C. Jensen
        Benjamin A. Katzenellenbogen
        Perry D. Oldham
        Stephen W. Larson
        Mark D. Kachner
        Baraa Kahf
        Adam B. Powell
        Kendall M. Loebbaka
        Daniel P. Hughes
        Justin J. Gillett
        Attorneys for Plaintiffs
        MASIMO CORPORATION and
        CERCACOR LABORATORIES, INC.

-25-

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,914 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated:  December 19, 2022          By: _/s/ Kendall M. Loebbaka_
                                           Joseph R. Re
                                           Stephen C. Jensen
                                           Benjamin A. Katzenellenbogen
                                           Perry D. Oldham
                                           Stephen W. Larson
                                           Mark D. Kachner
                                           Baraa Kahf
                                           Adam B. Powell
                                           Kendall M. Loebbaka
                                           Daniel P. Hughes
                                           Justin J. Gillett

                                           Attorneys for Plaintiffs
                                           MASIMO CORPORATION and
                                           CERCACOR LABORATORIES, INC.

56730983

-26-