Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearances continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      February 6, 2022<br>Time:      1:30 p.m.<br>Location:  Courtroom 10C |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  Mark D. Kachner (Bar No. 234,192)
   mark.kachner@knobbe.com
2  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   1925 Century Park East, Suite 600
3  Los Angeles, CA 90067
   Telephone: (310) 551-3450
4  Facsimile: (310) 551-3458

Plaintiffs Masimo Corporation ("Masimo Corp.") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Masimo") submit the following statement of uncontroverted facts and conclusions of law in support of Masimo's Motion For Partial Summary Judgment. The uncontroverted facts listed herein include material facts under Local Rule 56-1 as well as additional facts that further support Masimo's Motion. The cited exhibits are attached to the Declaration of Kendall Loebbaka In Support Of Masimo's Motion For Partial Summary Judgment unless otherwise indicated.

## I. UNCONTROVERTED FACTS

| No. | Undisputed Fact | Evidence |
|---|---|---|
| 1. | Cercacor and Masimo Corp. collaborate on technology developments under a cross-license agreement. | Kiani Decl. ¶ 3; Hammarth Decl. ¶ 6; Ex. 12 (Cross-license agreement). |
| 2. | Over many years, Masimo dedicated a significant amount of financial resources and personnel to developing ▇▇▇ ▇▇▇ | Kiani Decl. ¶ 7; Diab Decl. ¶¶ 20, 31. |
| 3. | Masimo developed ▇▇▇ ▇▇▇ ▇▇▇ | Kiani Decl. ¶¶ 7-8; Diab Decl. ¶¶ 20, 31. |
| 4. | ▇▇▇ ▇▇▇ ▇▇▇ | Kiani Decl. ¶ 7; Diab Decl. ¶ 31. |
| 5. | Masimo maintains the confidentiality of ▇ ▇▇▇ | Kiani Decl. ¶ 7; Diab Decl. ¶¶ 30-31. |

-1-

| | | |
|---|---|---|
| 6. | Masimo maintains the confidentiality of ███ ███████████ by restricting physical and electronic access to employees whose responsibilities require access to such information. | Hammarth Decl. ¶¶ 22-28; Muhsin Decl. ¶¶ 4-6. |
| 7. | Masimo's physical access controls include individually coded employee key cards that limit access to controlled areas, as well as requiring visitors to check-in, provide identification information that is recorded in a visitor log, and be escorted by employees. | Hammarth Decl. ¶¶ 26-28; Muhsin Decl. ¶¶ 4-5. |
| 8. | Masimo has written policies instructing employees how to handle computer resources to ensure that systems remain secure and information stays protected. | Exs. 3-7 (Masimo Policies and Procedures), 9-11 (Masimo Confidentiality Agreements), 13 (Cercacor Confidentiality Agreement), 14-16 (Cercacor Policies); Muhsin Decl. ¶¶7-12. |
| 9. | Masimo provides ongoing training to ensure employees understand and adhere to company policies about protecting confidential information. | Muhsin Decl. ¶ 12; Hammarth Decl. ¶29; Ex. 4 (Masimo Information Technology Training Policy & Procedure). |

| | | |
|---|---|---|
| **10.** | Masimo provides information about Masimo's policies and procedures to new employees and requires employees sign confidentiality agreements to preserve the secrecy of Masimo's confidential information. | Ex. 41 (Miller Depo.) at 16:10-17:8, 23:2-11, 25:24-27:19, 29:5-8; Miller Decl. ¶¶ 7-8; Ex. 42 (Hammarth Depo.) at 125:21-126:14; Kiani Decl. ¶ 6; Exs. 9-11 (Masimo Confidentiality Agreements), 13 (Cercacor Confidentiality Agreement), 14-16 (Cercacor Policies). |
| **11.** | Masimo's electronic controls include hardware and software security measures that limit access to electronically stored confidential information to specific employees. | Hammarth Decl. ¶¶ 22-25; Muhsin Decl. ¶6. |
| **12.** | When a Masimo employee leaves, the employee completes an exit process that include an exit interview, providing the employee with a copy of the employee's confidential agreements, reminding the employee of ongoing confidentiality obligations, and recovering all company information and equipment, including any documents, computers, phones, and keycards. | Miller Decl. ¶¶ 9-10; Hammarth Decl. ¶¶ 29-30. |

| | | |
|---|---|---|
| 13. | In 2000, as part of his initial onboarding process, Lamego signed an employee confidentiality agreement with Masimo Corp. | Ex. 9 (2000 Confidentiality Agreement); Miller Decl. ¶12. |
| 14. | Before working at Masimo, Lamego had no experience developing patient monitoring technology. | Ex. 17 (Lamego 7/12 Depo.) at 29:13-16; Kiani Decl. ¶ 9. |
| 15. | In 2003, Lamego signed a confidentiality agreement with Masimo Corp. | Exs. 10 (2003 Confidentiality Agreement), 17 (Lamego 7/12 Depo.) at 35:11-15; Miller Decl. ¶12. |
| 16. | On January 31, 2005, Lamego signed another confidentiality agreement with Masimo Corp. | Ex. 11 (2005 Confidentiality Agreement); Miller Decl. ¶12. |
| 17. | While working at Masimo, Lamego shared an office with Mohamed Diab, Masimo's then Chief Technical Officer. | Ex. 17 (Lamego 7/12 Depo.) at 38:13-15; Kiani Decl. ¶ 9; Diab Decl. ¶ 32. |
| 18. | Diab taught Masimo's technology to Lamego. | Kiani Decl. ¶ 9; Diab Decl. ¶32. |
| 19. | Lamego worked at Masimo Corp. until 2006, at which time Lamego began working at Cercacor, then known as Masimo Labs. | Ex. 17 (Lamego 7/12 Depo.) at 42:15-25; Kiani Decl. ¶9. |

| | | |
|---|---|---|
| 20. | From February 2007 to January 2014, Lamego was Cercacor's CTO. | Exs. 13 (2007 Confidentiality Agreement), 40 (Email); Hammarth Decl. ¶¶ 10, 35; Kiani Decl. ¶9. |
| 21. | Lamego signed a confidentiality agreement with Cercacor. | Ex. 13 (Confidentiality Agreement); Hammarth Decl. ¶ 10. |
| 22. | Jeroen Poeze was a Cercacor engineer from 2007 to March 2021, and reported to Lamego from 2007 to 2014. | Poeze Decl. ¶¶ 1-2 |
| 23. | Poeze worked with Lamego to develop ███████████████ | Poeze Decl. ¶¶ 5-22; Ex. 8 (Poeze Notebook) at -907, -933-936, . |
| 24. | Lamego worked on Masimo's rainbow® technology. | Diab Decl. ¶ 32. |
| 25. | Including through his work on Masimo's rainbow® products, Lamego learned of ███████████████ | Diab Decl. ¶¶ 2, 6-7, 13, 15, 19, 25, 28, 32; Kiani Decl. ¶ 4. Madisetti Decl. ¶¶ 47-59; Hammarth Decl. ¶¶ 33, 34; Ex. 39 (Walt Weber Depo.) at 59:18-61:12. |
| 26. | Lamego worked on Masimo's Pronto-7 product. | Poeze Decl. ¶¶ 2-22; Hammarth Decl. ¶ 34; Exhibit 8 (Poeze Notebook). |

| | | |
|---|---|---|
| 27. | Including through his work with Poeze and his work on Masimo's Pronto-7 project, Lamego learned of █████████ ████████. | Poeze Decl. ¶¶ 2-22; Hammarth Decl. ¶ 34; Madisetti Decl. ¶¶ 60-88; Ex. 74 (Pronto-7 Operator's Manual) at -687, -699, -701; Ex. 71 at -97; Ex. 72 (emails); Ex. 43 (email) at -37; Ex. 8 (Poeze Notebook) at -907, -933 to -937; |
| 28. | ████████████████████████ ████████████████████ ████████████. | Ex. 19 (Hotelling Depo.) at 36:19-37:6; Exs. 20-21 (Apple emails). |
| 29. | ████████████████████████ ████████████████████ ████████████████████ | Ex. 21 (Apple email) at -191; Ex. 22 (Apple email) at 106, -109. |
| 30. | ████████████████████ ████████████████ ██████████████ ████████████████████ ██████████ | Ex. 23 (Apple emails with Masimo) at -627; Kiani Decl. ¶ 18. |
| 31. | ████████████████ ████████████████ ██████████. | Ex. 24 ████████████ ████████████ Kiani Decl. ¶ 21. |

-6-

| | | |
|---|---|---|
| 32. | In July 2013, Apple hired Dr. Michael O'Reilly, Masimo Corp.'s then Chief Medical Officer. | Kiani Decl. ¶¶ 19-20; Ex. 27 (O'Reilly Depo.) at 286:17-287:6; Ex. 33 (Apple Rog Responses) at 27. |
| 33. | ██████████ | Kiani Decl. ¶¶ 13-14; Ex. 2 (Lamego email to Kiani). |
| 34. | ██████████ | Kiani Decl. ¶¶ 16-17. |
| 35. | On October 2, 2013, around 1 a.m., Lamego emailed Tim Cook, offering to use his ten years of knowledge from working at Masimo to help Apple in exchange for a "senior technical executive position." | Ex. 28 (Lamego email to Cook). |
| 36. | ██████████ | Ex. 29 (Apple emails) at -008. |
| 37. | ██████████ | Ex. 29 ██████████ |

-7-

| | | |
|---|---|---|
| 38. | In January 21, 2014, as part of his separation process, Lamego signed an employee acknowledgement form, certifying, among other things, that he received a copy of his signed confidentiality agreement and, during Lamego's exit interview, Hammarth reminded Lamego about the importance of his confidentiality agreement and his obligation to maintain that confidentiality of trade secrets and confidential business information. | Ex. 16 (Employee Acknowledgment form); Hammarth Decl. ¶¶ 35-36. |
| 39. | ███████████████████████ | Ex. 33 (Apple Rog Responses) at 27. |
| 40. | In January 2014, Masimo warned Apple that Lamego possessed Masimo's trade secrets. | Ex. 34 (Masimo letter to Apple). |
| 41. | Apple continued to recruit Masimo employees after hiring Lamego ███ ████████████████████ Apple has since hired at least 20 people who worked for Masimo. | Exs. 32 ████████ ██████████████ 33 (Apple Rog Responses) at 16-18, 27. |
| 42. | ████████████████████ ████████████████████ ██████████████████ ████████████████████ ████████ | Exs. 35, 47, 52, 53. |

-8-

| | | |
|---|---|---|
| 43. | At least by February and March 2014, Lamego disclosed Masimo's ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ | Ex. 44 ▮▮▮▮▮▮▮ ▮▮▮▮ Ex. 48 ▮▮▮▮▮▮ ▮▮ Ex. 49 ▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮ Ex. 50 ▮▮▮▮ ▮ Ex. 51 ▮▮ Ex. 59 ▮▮▮▮ ▮ Ex. 54; Ex. 55; Ex. 56; Ex. 57; Ex. 58 ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮ ; Ex. 60 ▮▮▮ ▮ |
| 44. | ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮ ▮▮▮ | Ex. 35 ▮▮▮▮ ▮ |

| | | |
|---|---|---|
| 45. | ███ | Ex. 33 (Apple Rog Responses) at 27. |
| 46. | ███ | ███ |
| 47. | ███ | ███ |
| 48. | ███ | |
| 49. | ███ | ███ |

## II. CONCLUSIONS OF LAW

### 1. Legal Standard

1. The elements of a claim for misappropriation under the California Uniform Trade Secret Act are (1) the existence and possession of a trade secret, and (2) misappropriation of the trade secret. Cal. Civ. Code § 3426.1.

2. Under the California Uniform Trade Secret Act a trade secret is information that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d).

3. "The standard to show that trade secrets derive [independent] economic value is not a high standard." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020), quoting *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017). "To have independent economic value, a trade secret must be sufficiently valuable and secret to afford an actual or potential economic advantage over others." *Id.*

4. "The [generally known] inquiry is not whether the alleged trade secret has been publicly disclosed at all, but whether it has become 'generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value[.]'" *Kittrich Corp. v. Chilewich Sultan, LLC*, No. CV1210079GHKARGX, 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013), quoting *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. 4th 241, 251 (2004)).

5. The core inquiry is whether the owner of the information derives value in keeping the information secret from persons who could exploit it to the relative disadvantage of the original owner. *Yield Dynamics, Inc. v. TEA Systems Corp.*, 154 Cal. App. 4th 547, 568 (2007). Information is protectable as a trade secret if it continues to provide a business advantage over a competitor. *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521–22 (1997).

6. Finding aspects of the trade secret across various publications and applying a patent-like obviousness analysis does not render the trade secret generally known under CUTSA. *See Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986) ("The defendants' attempts to show that Imi-Tech's alleged trade secrets were known in the prior art also fail to provide a defense for the defendants, since it is not required that

-11-

a trade secret be patentably nonobvious or novel."). "'[O]bviousness' is not the benchmark" in trade secrets action. *Am. Can Co. v. Mansukhani*, 728 F.2d 818, 819 (7th Cir. 1982).

7. A defendant is liable for trade secret misappropriation by acquisition if, at the time of acquisition, they knew or had reason to know that the trade secret was acquired by improper means. Cal. Civ. Code § 3426.1(b)(1).

8. "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy . . . ." Cal. Civ. Code § 3426.1(b)(1).

9. A defendant is liable for trade secret misappropriation by disclosure or use if, at the time of disclosure or use, they knew or had reason to know that Apple's knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. Cal. Civ. Code § 3426.1(b)(2).

10. A plaintiff bears the burden of proving trade secret misappropriation by a preponderance of the evidence. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1667 (2003).

### 2. Apple Misappropriated The Asserted Trade Secrets Under The California Uniform Trade Secrets Act

#### a. Masimo's Trade Secrets Are Protectable

11. There is no genuine dispute of material fact that Masimo's Trade Secrets D-9 through D-15 meet the requirements of Cal. Civ. Code § 3426.1(d)(1), because they derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their use particularly to those in the field of noninvasive blood content estimators.

12. There is no genuine dispute of material fact that Masimo's Trade Secrets D-9 through D-15 meet the requirements of Cal. Civ. Code § 3426.1(d)(2), because Masimo made reasonable efforts to maintain their secrecy.

    **b.**   **Apple Misappropriated The Trade Secrets D-9 Through D-15**

13. There is no genuine dispute of material fact that Apple acquired Trade Secrets D-9 through D-15 while knowing, or having reason to know, that the trade secrets were acquired by improper means. Cal. Civ. Code § 3426.1(b)(1).

14. There is no genuine dispute of material fact that Apple disclosed and used Trade Secrets D-9 through D-15 while knowing, or having reason to know, that it acquired Trade Secrets D-9 through D-15 through improper means. Cal. Civ. Code § 3426.1(b)(2)(B)(i).

15. There is no genuine dispute of material fact that Apple disclosed and used Trade Secrets D-9 through D-15 while knowing, or having reason to know, that it acquired Trade Secrets D-9 through D-15 under circumstances giving rise to a duty to maintain their secrecy or limit their use. Cal. Civ. Code § 3426.1(b)(2)(B)(ii).

16. There is no genuine dispute of material fact that Apple disclosed and used Trade Secrets D-9 through D-15 while knowing, or having reason to know, that Trade Secrets D-9 through D-15 were derived from Lamego who owed a duty to Masimo to maintain their secrecy or limit their use. Cal. Civ. Code § 3426.1(b)(2)(B)(iii).

17. ***D-9***: There is no genuine dispute of material fact that Apple misappropriated Trade Secret D-9 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

18. ***D-10***: There is no genuine dispute of material fact that Apple misappropriated Trade Secret D-10 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

19. ***D-11***: There is no genuine dispute of material fact that Apple misappropriated Trade Secret D-11 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

20. **D-12**: There is no genuine dispute of material fact that Apple misappropriated Trade Secret D-12 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

21. **D-13**: There is no genuine dispute of material fact that Apple misappropriated Trade Secret D-13 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

22. **D-14**: There is no genuine dispute of material fact that Apple misappropriated Trade Secret D-14 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

23. **D-15**: There is no genuine dispute of material fact that misappropriated Trade Secret D-15 by improperly acquiring, using, and disclosing the trade secret. Cal. Civ. Code §§ 3426.1(b)(1), (b)(2)(B)(i-iii).

3. **Apple's Use and Disclosure of Masimo's Trade Secrets Harms Masimo**

24. There is no genuine dispute of material fact that Apple improperly acquired, used, and disclosed Masimo's trade secrets.

25. There is no genuine dispute of material fact that Apple obtained a patent claiming Masimo's trade secrets.

26. There is no genuine dispute of material fact that Apple improperly claimed ownership of Masimo's trade secrets and the right to exclude Masimo from practicing its own trade secrets.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 19, 2022

By: */s/ Kendall M. Loebbaka*
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

56730990

-15-