# EXHIBIT 37
# Part 2

Attorney Docket No. P22879US1

## REMARKS

If the Examiner should require any additional information or amendment, please contact the undersigned attorney.

Dated: August 23, 2017

Respectfully submitted,

/Stuart K. Wagner/
Stuart K. Wagner, Registration No. 74,548
Attorney for Assignee
USPTO Customer No. 62579

Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, Colorado 80202
Phone: 303-223-1100
Fax: 303-223-1111

2

-809-
MASA00086752

PTO/SB/30 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Request for Continued Examination (RCE) Transmittal | | |
|---|---|---|
| Address to: Mail Stop RCE Commissioner for Patents P.O. Box 1450 Alexandria, VA 22313-1450 | Application Number | 14/621,268 |
| | Filing Date | February 12, 2015 |
| | First Named Inventor | Marcelo M. Lamego |
| | Art Unit | 3777 |
| | Examiner Name | Nguyen, Hien Ngoc |
| | Attorney Docket Number | P22879US1 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. <u>Submission required under 37 CFR 1.114</u> Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

      ii. ☐ Other _____

   b. ☑ Enclosed

      i. ☑ Amendment/Reply          iii. ☐ Information Disclosure Statement (IDS)

      ii. ☐ Affidavit(s)/ Declaration(s)          iv. ☐ Other _____

2. Miscellaneous

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. Fees    The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☑ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. 504621 .

      i. ☑ RCE fee required under 37 CFR 1.17(e)

      ii. ☑ Extension of time fee (37 CFR 1.136 and 1.17)

      iii. ☐ Other _____

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☐ Payment by credit card (Form PTO-2038 enclosed)

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED | | | |
|---|---|---|---|
| Signature | /Stuart K. Wagner/ | Date | July 10, 2017 |
| Name (Print/Type) | Stuart K. Wagner | Registration No. | 74,548 |

| CERTIFICATE OF MAILING OR TRANSMISSION | |
|---|---|
| I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below. | |
| Signature | |
| Name (Print/Type) | Date |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MASA00086753

Attorney Docket No. P22879US1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | |
|---|---|---|---|
| Inventor(s): | Marcelo M. Lamego | | |
| App. No.: | 14/621,268 | Con. No.: | 6317 |
| Filed: | February 12, 2015 | Art Unit: | 3777 |
| Title: | MODULATION AND DEMODULATION TECHNIQUES FOR A HEALTH MONITORING SYSTEM | Examiner: | Nguyen, Hien Ngoc |

## AMENDMENT AND RESPONSE TO FINAL OFFICE ACTION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

In response to the final Office action dated February 9, 2017, please consider the following remarks and amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 8 of this paper.

Attorney Docket No. P22879US1

**Amendments to the Claims:**

1.     (Withdrawn – Currently Amended)  An electronic device, comprising:

two or more light sources for emitting light toward a body part of a user;

an optical sensor for obtaining light and dark samples and converting the samples into a signal;

a processing device operably connected to the optical sensor for demodulating the signal received from the optical sensor into a demodulated signal associated with each light source;

at least one decimation stage for processing each demodulated signal, wherein each decimation stage comprises a low pass filter for receiving the demodulated signals and a decimation circuit operably connected to an output of the low pass filter; and

a demultiplexer and multiplier circuit operably connected to an output of a last decimation stage, wherein the demultiplexer separates the signals by each associated light source and the multiplier multiplies each separated signal by one or more respective weighted values; wherein

the one or more respective weighted values are dynamically determined to adjust each separated signal for changes over time in at least one of the optical sensor, an operational amplifier associated with the light sensor, or a filter.

2.     (Canceled)

3.     (Withdrawn)  The electronic device as in claim 1, wherein the electronic device is a wearable communication device.

4.     (Currently Amended)  A method for processing a signal obtained when modulated light from ~~one or more~~ multiple light sources is emitted toward a body part of a user, the method comprising:

capturing, by a light sensor, a first set of ~~multiple~~ light samples in response to a first of the multiple ~~while each~~ light source~~s~~ ~~emits~~ emitting modulated light toward the body part of the user;

capturing, by the light sensor, a second set of light samples in response to a second of the multiple light sources emitting modulated light toward the body part of the user;

2

MASA00086755

[[and]] converting the <u>first set of light samples and the second set of</u> ~~multiple~~ light samples into the signal;

demodulating the signal to produce multiple demodulated signals<u>, each associated with one of the multiple light sources</u>;

filtering and decimating each demodulated signal at least once; and

demultiplexing ~~each~~ <u>the</u> demodulated signal<u>s</u>; and

multiplying each of the <u>demultiplexed and</u> demodulated signals by a respective <u>dynamically determined</u> value ~~of a matrix of values~~ to produce a signal associated with each light source<u>; wherein</u>

      <u>the dynamically determined value adjusts each signal associated with each light source for changes over time in at least one of the light sensor, an operational amplifier associated with the light sensor, or a filter.</u>

5.     (Original)  The method as in claim 4, further comprising analyzing each signal associated with each light source to estimate a physiological parameter of the user.

6.     (Currently Amended)  The method as in claim 4, <u>further comprising</u> ~~wherein capturing multiple light samples while each light source emits light toward the body part of the user comprises:~~

~~capturing multiple light samples when a respective light source is turned on and the other light sources are turned off; and~~

capturing multiple dark samples after all ~~four~~ <u>of the multiple</u> light sources have been turned on and turned off.

7.     (Currently Amended)  The method as in claim 6, wherein capturing <u>the first set of</u> ~~multiple~~ light samples <u>in response to the first of the multiple</u> ~~when a respective~~ light source<u>s</u> <u>emitting light toward the body part of the user</u> ~~is turned on and the other light sources are turned off~~ comprises capturing five light samples when <u>the first of the multiple</u> ~~a respective~~ light source<u>s</u> is turned on and ~~the~~ other light sources are turned off.

8.     (Currently Amended)  The method as in claim 7, wherein capturing multiple dark samples after all of the <u>multiple</u> light sources have been turned on and turned off comprises capturing ten dark samples after all of the <u>multiple</u> light sources have been turned on and turned off.

3

MASA00086756

Attorney Docket No. P22879US1

9.      (Currently Amended)  The method as in claim 6, further comprising capturing one or more dark samples after ~~one~~ the first of the multiple light source~~s~~ is turned off and before the ~~next~~ first of the multiple light source~~s~~ is turned on.

10.      (Currently Amended)  The method as in claim 9, wherein capturing one or more dark samples after ~~one~~ the first of the multiple light source~~s~~ is turned off and before the ~~next~~ first of the multiple light source~~s~~ is turned on comprises capturing one dark sample after ~~one~~ the first of the multiple light source~~s~~ is turned off and before the ~~next~~ first of the multiple light source~~s~~ is turned on.

11.      (Currently Amended)  The method as in claim 10, wherein capturing the first set of ~~multiple~~ light samples in response to the first of the multiple ~~when a respective~~ light source~~s~~ emitting light toward the body part of the user ~~is turned on and the other light sources are turned off~~ comprises capturing five light samples in response to the first of the multiple ~~when a respective~~ light source~~s~~ emitting light toward the body part of the user ~~is turned on~~ and [[the]] other light sources are turned off.

12.      (Original)  The method as in claim 11, wherein capturing multiple dark samples after all of the light sources have been turned on and turned off comprises capturing seven dark samples after all of the light sources have been turned on and turned off.

13.      (Original)  The method as in claim 4, wherein demodulating the signal to produce multiple demodulated signals comprises applying a first demodulation operation of $\sin 2\pi \frac{kt}{N}$ to the signal and applying a second demodulation operation of $\cos 2\pi \frac{kt}{N}$ to the signal, where k is defined by $1 \leq k \leq n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.

14.      (Original)  The method as in claim 4, wherein filtering and decimating each demodulated signal at least once to produce a signal associated with each light source comprises inputting each demodulated signal into one or more low pass filter and decimation stages, wherein each low pass filter and decimation stage comprises a low pass filter for

4

MASA00086757

Attorney Docket No. P22879US1

receiving a demodulated signal and a decimation circuit operably connected to an output of the low pass filter.

15.    (Canceled)

16.    (Canceled)

17.    (Canceled)

18.    (Canceled)

19.    (Canceled)

20.    (Canceled)

21.    (Currently Amended)  The method as in claim 4, wherein the dynamically determined value matrix of values is determined by:

turning on a first respective light source;

capturing a light sample in response to the first respective light source and converting the light sample into an initial signal;

demodulating the initial signal to produce multiple initial demodulated signals;

filtering and decimating each initial demodulated signal at least once to determine the dynamically determined value at least a portion of the matrix of values.

22.    (Currently Amended)  A method for processing a signal obtained when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising:

determining a first multiplier value by:

turning on the first light source;

generating a first initial signal in response to capturing a light sample corresponding to the first light source;

demodulating the initial signal to produce first initial demodulated signals;

filtering and decimating the first initial demodulated signals; and

5

MASA00086758

Attorney Docket No. P22879US1

determining the first multiplier value based on the filtered and decimated first initial demodulated signals;

determining a second multiplier value by:

turning on the second light source;

generating a second initial signal in response to capturing a light sample corresponding to the second light source;

demodulating the initial signal to produce second initial demodulated signals;

filtering and decimating the second initial demodulated signals; and

determining the second multiplier value based on the filtered and decimated second initial demodulated signals;

capturing multiple light samples while the first each light source and the second light source emit[[s]] modulated light toward the body part of the user and converting the multiple light samples into the signal;

demodulating the signal to produce multiple demodulated signals;

performing a first decimation stage by:

low pass filtering each demodulated signal; and

decimating each demodulated signal;

performing a second decimation stage after the first decimation stage by:

low pass filtering each demodulated signal; and

decimating each demodulated signal;

demultiplexing each demodulated signal after the second stage to produce a first signal associated with the first light source and a second signal associated with the second light source;

multiplying the first signal by [[a]] the first predetermined value to obtain a first conditioned signal;

multiplying the second signal by [[a]] the second predetermined value to obtain a second conditioned signal; and

analyzing the first conditioned signal and the second conditioned signal to estimate a physiological parameter of a user.

23.    (Previously Presented)  The method as in claim 22, wherein capturing multiple light samples while each light source emits light toward the body part of the user comprises:

capturing multiple light samples while each light source is turned on and the other light sources are turned off; and

-816-
MASA00086759

Attorney Docket No. P22879US1

capturing multiple dark samples after all four light sources have been turned on and turned off.

24.     (Previously Presented)  The method as in claim 23, further comprising capturing one or more dark samples after one light source is turned off and before the next light source is turned on.

25.     (Previously Presented)  The method as in claim 23, wherein demodulating the digital signal to produce multiple demodulated signals comprises applying a first demodulation operation of $\sin 2\pi \frac{kt}{N}$ to the digital signal and applying a second demodulation operation of $\cos 2\pi \frac{kt}{N}$ to the digital signal, where $k$ is defined by $1 \leq k \leq n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.

26.     (New)  The method as in claim 4, wherein the dynamically determined value is calculated each time a user activates the health monitoring system.

27.     (New)  The method as in claim 22, wherein:
the first predetermined value is stored in a multiplier circuit; and
the first signal is multiplied by the first predetermined value using the multiplier circuit.

-817-
MASA00086760

Attorney Docket No. P22879US1

**REMARKS**

This paper is submitted in response to the final Office action mailed on February 9, 2017. This paper amends claims 4, 6-11, 21, and 22; and adds claims 26 and 27. Accordingly, after entry of this Amendment and Response, claims 4-14 and 21-25 will be pending.

### II.  Claim Rejections Under 35 U.S.C. § 101

The Examiner rejected claims 4-14 and 22-25 under 35 U.S.C. § 101 asserting that the claimed invention is directed to a judicial exception.

First, the Examiner states that the "method involve [sic] mathematical concepts such as mathematical relationships, mathematical formulas, and calculation (demodulation and decimating involve mathematical algorithm and processing), collecting and processing known information, comparing information regarding a sample or test subject to a control or target data which correspond to concepts identified as abstract ideas by the courts" to bolster the idea that the pending claims are drawn to an abstract idea (see Office Action, 2-3). However, this is an irrelevant argument. The Supreme Court has not ruled that patent-ineligible concepts include any form of "mathematical relationships, mathematical formulas, and calculation . . ., collecting and processing known information, comparing information regarding a sample or test subject to a control or target data." Rather, to the extent that such concepts are not patent-eligible under § 101 it is because they are "laws of nature, natural phenomena, and abstract ideas" (*Alice Corp, Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012)). The Examiner is applying a test that does not exist to reach a tautological conclusion.

Further, the Assignee respectfully submits that the Examiner's assertion that "the claims are directed to a method for processing light signal" (Office Action, 2) runs counter to the Federal Circuit's and the Patent Office's cautions against "describing a claim at a high level of abstraction untethered from the language of the claim when determining the focus of the claimed invention" (Memorandum from Robert W. Bahr, Deputy Comm'r for Patent Examination Policy 1 (May 19, 2016) (citing *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, slip. op. (Fed. Cir. May 12, 2016), hereinafter "Memorandum"). The Examiner's broad and general description of the claims ignores the claim language. Additionally, the general description of the claims inaccurately describes the claims as being "directed to" "processing light signal."

The claims are not accurately described at this exceptionally high level. For example, independent claim 4 requires at least the following elements and limitations:

-818-
MASA00086761

Attorney Docket No. P22879US1

1.  capturing a first and second sets of light samples by a light sensor while light sources emit modulated light toward the body part of a user;

2.  converting the multiple light samples into a signal;

3.  demodulating the signal to produce multiple demodulated signals, each assicated with one of the light sources;

4.  filtering and decimating each demodulated signal at least once;

5.  demultiplexing each demodulated signal; and

6.  multiplying each of the demultiplexed and demodulated signals by a respective dynamically determined values, the dynamically determined values adjusting each signal for changes over time in at least one of the light sensor, an operational amplifier associated with the light sensor, or a filter.

Thus claim 4 cannot be accurately described as being "directed to" "processing light signal." The claimed device includes multiple electronic components in order to capture, convert, demodulate, filter, decimate, demultiplex, and multiply signals received by an electronic device. Independent claim 22 contains similar limitations.

In addition, the Patent Office has emphasized that "a claim directed to an improvement to computer-related technology (e.g., computer functionality) is likely not similar to claims that have previously been identified as abstract by the courts" (Memorandum, p. 2). Here, the claims are directed to such an improvement in computer functionality as they provide for an electronic device (or method) which is better able to process light samples into electrical signals through the particular methods and structures claimed. For example, each of the claims employs steps of capturing light samples, converting the light samples into a signal, demodulating the signal, and filtering and decimating each demodulated signal. The claims include multiplying each demultiplexed and demodulated signal by a respective value. This improves functionality by, for example, adjusting for changes over time in at least one of the light sensor, an operational amplifier, or a filter to better estimate a physiological parameter of a user (see, e.g., para. [0018]).

This is entirely in accord with the Supreme Court's test in Alice to determine whether or not a claim is directed to patentable subject matter. With respect to an abstract idea, the United States Supreme Court stated in Alice that a court must determine (1) whether the claim at issue is directed to a patent-ineligible concept, and then (2) determine whether the balance of the claim adds 'significantly more.'" *Alice* at 2355 (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. __ (2012)).

-819-
MASA00086762

With respect to the first step, the Supreme Court has held that 35 U.S.C. § 101 contains an implicit exception; that laws of nature, natural phenomena, and abstract ideas are not patentable. The concern that drives this implicit exception is pre-emption. The question is whether upholding a patent would pre-empt the use of the abstract idea in all fields, and would effectively grant a monopoly over an abstract idea. See *Alice* at 2354. "Laws of nature, natural phenomena, and abstract ideas are 'the basic tools of scientific and technological work.'" *Id.* (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. __, __ (2013) (slip op., at 11). Here, it is clear that the specific limitations in the claims at issue would not grant any monopoly over any abstract idea.

Further, the Court noted that it must be careful when construing the exception or the exception will swallow all of patent law. The Court stated that "[a]t some level, all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice* at 2354. Accordingly, in applying the § 101 exception, it is important to distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming it into a patent-eligible invention. See *Mayo* at 1303. The Assignee respectfully submits that the Examiner has read the claim so broadly, and so far beyond its actual limits, that the Examiner has done exactly what the Supreme Court warned against in *Alice*.

With respect to the second step of the *Alice* test, the elements of each claim must be considered both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Alice* at 2355. Here, even if the claims were directed to a patent-ineligible concept, several additional limitations transform the nature of the claims. For example, claim 4 recites "capturing, by a light sensor, a first set of light samples in response to a first of the multiple light sources emitting modulated light toward the body part of the user," "capturing, by the light sensor, a second set of light samples in response to a second of the multiple light sources emitting modulated light toward the body part of the user," "converting the multiple light samples into the signal," "demodulating the signal to produce multiple demodulated signals, each associated with one of the multiple light sources," "filtering and decimating each demodulated signal at least once," "demultiplexing the demodulated signals," and "multiplying each of the demultiplexed and demodulated signals by a respective dynamically determined value."

In *Alice*, the Court stated that "the relevant question is whether the claims do more than simply instruct the practitioner to implement the abstract idea of intermediate settlement on a

MASA00086763

generic computer." *Alice* at 2359. The above listed limitations, among others, do considerably more than implement an abstract idea on a generic computer.

The Assignee respectfully submits, therefore, that none of the claims in the present application are directed to non-statutory subject matter under 35 U.S.C. § 101. Accordingly, the Assignee respectfully requests that the Examiner withdraw the rejections of claims 4-14, and 22-25 under § 101.

## *II. Claim Rejections Under 35 U.S.C. § 112*

The Examiner rejected claims 4-14 and 22-25 under 35 U.S.C. § 112(a) as failing to comply with the enablement requirement. For at least the following reasons, the Assignee respectfully traverses these rejections.

The Examiner asserts in the rejection that "[d]etermine [sic] the matrix value is critical or essential to the practice of the invention, but not included in the claim(s) is not enabled by the disclosure."

Claim 4, as amended, recites, among other features, "multiplying each of the demultiplexed and demodulated signals by a respective dynamically determined value to produce a signal associated with each light source" wherein "the dynamically determined value adjusts each signal associated with each light source for changes over time in at least one of the light sensor, an operational amplifier associated with the light sensor, or a filter." The dynamically determined value is adequately described and enabled in the specification, for example in FIGs. 7 – 10 and paras. [0057] – [0065].

Claim 22, as amended, recites, among other features, operations for "determining a first multiplier value" and "determining a second multiplier value." The process of obtaining first and second multiplier values is adequately supported by the specification, for example in FIGs. 7 – 10 and paras. [0057] – [0065].

## *III. Claim Rejections Under 35 U.S.C. § 103*

The Examiner rejected claims 4-14 and 21-25 under 35 U.S.C. § 103(a) as being obvious over Diab et al. (U.S. Patent Publication No. 2012/0253155; hereinafter "Diab") in view of McCarthy et al. (U.S. Patent No. 5,349,952; hereinafter "McCarthy").

The Examiner rejected claims 6-13 and 23-25 under 35 U.S.C. § 103(a) as being obvious over Diab in view of McCarthy.  For at least the following reasons, the Assignee respectfully traverses these rejections.

11

MASA00086764

Claim 4 recites, among other features, "multiplying each of the demultiplexed and demodulated signals by a respective dynamically determined value to produce a signal associated with each light source" wherein "the dynamically determined value adjusts each signal associated with each light source for changes over time in at least one of the light sensor, an operational amplifier associated with the light sensor, or a filter." These features are not taught or suggested by the combination of Diab and McCarthy.

Diab describes a method and an apparatus to measure blood oxygenation including two light sources and a detector to detect a composite signal from the two light sources (Diab, Abstract). Diab does not teach or suggest multiplying each of multiple demultiplexed and demodulated signals by a respective dynamically determined value to produce a signal associated with each light source, wherein the dynamically determined value adjusts for changes over time.

McCarthy describes filtering a modulated signal that includes to carrier signals to recover underlying signals. McCarthy does not make up for any of the deficiencies of Diab. In particular, neither reference is concerned with dynamically adjusting for changes over time in the light sensor, an operational amplifier, a filter, or other processing components.

Accordingly, independent claim 4 is nonobvious in view of Diab and McCarthy and in condition for allowance.

Claim 22 recites, among other features, "determining a first multiplier value by:" "turning on the first light source," "generating a first initial signal in response to capturing a light sample corresponding to the first light source," "demodulating the initial signal to produce first initial demodulated signals," "filtering and decimating the first initial demodulated signals," and "determining the first multiplier value based on the filtered and decimated first initial demodulated signals." A second multiplier value is similarly determined. These features are not taught or suggested by the combination of Diab and McCarthy.

Neither Diab nor McCarthy includes operations of multiplying a first signal and a second signal by respective values, nor of the above operations of determining those respective values. Accordingly, independent claim 22 is nonobvious in view of Diab and McCarthy and in condition for allowance.

The remaining claims depend from independent claims 1 or 22 and are believed to be allowable at least insofar as the claims depend from patentably distinct base claims. Accordingly, the Assignee submits that dependent claims 5-14, 21, and 23-25 are in condition for allowance. The Assignee makes this statement without waiving and without reference to any

MASA00056765

independent bases of patentability within the claims and thus reserves the right to argue such bases in a future paper if necessary.

### IV.  Rejoinder

Assignee hereby requests rejoinder of the previously withdrawn claims 1 and 3. Per MPEP 821.04, should the elected claim be in condition for allowance, the withdrawn claim should be considered for rejoinder. Assignee submits that in accordance with MPEP 821.04, the withdrawn independent claim 1, as amended, recites the allowable limitations of independent claim 4, as amended, which are believed to be in condition for allowance. Accordingly, Assignee respectfully requests that the restriction on withdrawn claims 1 and 3 be withdrawn and that the claims be rejoined and allowed.

### V.  Conclusion

The Assignee thanks the Examiner for the thorough review of the application. The Assignee respectfully submits the present application, as amended, is in condition for allowance and respectfully requests the issuance of a Notice of Allowability as soon as practicable.

This Amendment and Response is submitted contemporaneously with a Request for Continued Examination (RCE), a petition for a two-month extension of time, and a request to charge Deposit Account No. 504621 for the requisite fees.  The Assignee believes no further fees or petitions are required.  However, if any such petitions or fees are necessary, please consider this a request therefor and authorization to charge Deposit Account No. 504621 accordingly.

-823-

MASA00086766

If the Examiner should require any additional information or amendment, please contact the undersigned attorney.

Dated:  <u>July 10, 2017</u>.

Respectfully submitted,


<u>        /Stuart K. Wagner/                    </u>
Stuart K. Wagner, Registration No. 74,548
Attorney for Assignee
USPTO Customer No. 62579

Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, Colorado  80202
Phone:  303-223-1100
Fax:  303-223-1111

-824-

MASA00086767

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14621268 |
| **Filing Date:** | 12-Feb-2015 |
| **Title of Invention:** | Modulation and Demodulation Techniques for a Health Monitoring System |
| **First Named Inventor/Applicant Name:** | Marcelo M. Lamego |
| **Filer:** | Stuart K. Wagner/Valerie Brown |
| **Attorney Docket Number:** | P22879US1 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

MASA00086768

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 1252 | 1 | 600 | 600 |
| **Miscellaneous:** | | | | |
| RCE- 1st Request | 1801 | 1 | 1200 | 1200 |
| **Total in USD ($)** | | | | **1800** |

MASA00086769

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29740650 |
| **Application Number:** | 14621268 |
| **International Application Number:** | |
| **Confirmation Number:** | 6317 |
| **Title of Invention:** | Modulation and Demodulation Techniques for a Health Monitoring System |
| **First Named Inventor/Applicant Name:** | Marcelo M. Lamego |
| **Customer Number:** | 62579 |
| **Filer:** | Stuart K. Wagner/Valerie Brown |
| **Filer Authorized By:** | Stuart K. Wagner |
| **Attorney Docket Number:** | P22879US1 |
| **Receipt Date:** | 10-JUL-2017 |
| **Filing Date:** | 12-FEB-2015 |
| **Time Stamp:** | 21:57:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $1800 |
| RAM confirmation Number | 071117INTEFSW00008260504621 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

MASA00086770

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | P22879US1RCE.pdf | 147166 <br><br> 8c6a7789fba8856a5cf1b64a6f4ea391d7c856f94 | no | 1 |

**Warnings:**

This is not a USPTO supplied RCE SB30 form.

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Amendment Submitted/Entered with Filing of CPA/RCE | P22879US1Amendment.pdf | 79947 <br><br> 8c93e03a7b10a9c11cd687abd8e7e90ea76b56c2 | no | 14 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 32517 <br><br> e08a9115426a5a29aa642bc9a07bb9f72a982a536 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 259630 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MASA00086771

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/621,268 | Filing Date<br>02/12/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☒ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| AMENDMENT | **07/10/2017** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 18 | Minus ** 20 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | LIE<br>STELLA LITTLE |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MASA00086772

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/621,268 | 02/12/2015 | Marcelo M. Lamego | P22879US1 | 6317 |

62579          7590          02/09/2017

APPLE INC.
c/o Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, CO 80202

| EXAMINER |
|---|
| NGUYEN, HIEN NGOC |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3777 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/09/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@bhfs.com

PTOL-90A (Rev. 04/07)

MASA00086773

| | **Application No.** 14/621,268 | **Applicant(s)** LAMEGO, MARCELO M. |
|---|---|---|
| **Office Action Summary** | **Examiner** HIEN NGUYEN | **Art Unit** 3777 | **AIA (First Inventor to File) Status** Yes |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>12/14/16</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☒ This action is **FINAL**.   2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) <u>1,3-14 and 21-25</u> is/are pending in the application.
   5a) Of the above claim(s) <u>1 and 3</u> is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) <u>4-14 and 21-25</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All   b) ☐ Some**   c) ☐ None of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____.
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 14/621,268                                        Page 2

Art Unit: 3777

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.


**DETAILED ACTION**


***Claim Rejections - 35 USC § 101***


35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Claims 4-14 and 22-25 are rejected under 35 U.S.C. 101 because the claimed

invention is directed to a judicial exception (i.e., a law of nature, a natural phenomenon,

or an abstract idea) without significantly more.  Claims 4-14 are directed to a method for

processing light signal.  The claim(s) does/do not include additional elements that are

sufficient to amount to significantly more than the judicial exception because the

additional device elements, which are recited at a high level of generality, provide

conventional device functions that do not add meaningful limits to practicing the abstract

idea.


Claims 4 and 22 recites, in part, a method for processing light signal. The method

involve mathematical concepts such as mathematical relationships, mathematical

formulas, and calculation (demodulation and decimating involve mathematical algorithm

MASA00086775

Application/Control Number: 14/621,268                                    Page 3
Art Unit: 3777

and processing), collecting and processing known information, comparing information regarding a sample or test subject to a control or target data which correspond to concepts identified as abstract ideas by the courts. The claims involve processing signal, but do not claim how this is being performed and it's significant over the current technology.


    The claim does not include additional elements that are sufficient to amount to significantly more than the judicial exception because the additional elements when considered both individually and as an ordered combination do not amount to significantly more than the abstract idea. The claim recites the additional limitations of a "capturing light sample", a "filtering" and a "light source". These additional elements are recited at a high level of generality and are recited as performing generic computer functions routinely used in computer applications. Generic computer components recited as performing generic computer functions that are well-understood, routine and conventional activities amount to no more than implementing the abstract idea with a computerized system. Thus, taken alone, these additional elements do not amount to significantly more than the above-identified judicial exception (the abstract idea). Looking at the limitations as an ordered combination adds nothing that is not already present when looking at the elements taken individually. There is no indication that the combination of elements improves the functioning of a computer or improves any other technology. Their collective functions merely provide conventional computer implementation.

MASA00086776

Application/Control Number: 14/621,268                                          Page 4
Art Unit: 3777

Claims 5-14 and 23-25 are dependent on claims 4 and 22 that includes all the limitations of claims 4 and 22. Therefore, claims 5-14 and 23-25 recites the same abstract idea of "mathematical relationship", "collecting and processing known information" and comparing information regarding a sample or test subject to a control or target data. The claim recites the additional limitations (perform demodulation using sin and cos equations; turn on and off light source and perform detection; filtering and decimation) that also mathematical relationship and collecting and comparing known information. Thus, taken alone, these additional elements do not amount to significantly more than the above-identified judicial exception (the abstract idea). Looking at the limitations as an ordered combination adds nothing that is not already present when looking at the elements taken individually. There is no indication that the combination of elements improves the functioning of a computer or improves any other technology. Their collective functions merely provide conventional computer implementation.

Claims 5-14 and 23-25 are therefore not drawn to eligible subject matter as they are directed to an abstract idea without significantly more.

### *Claim Rejections - 35 USC § 112*

Claims 4-14 and 22-25 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as based on a disclosure which is not enabling. Determine

MASA00086777

Application/Control Number: 14/621,268                                      Page 5
Art Unit: 3777

the matrix value is critical or essential to the practice of the invention, but not included in

the claim(s) is not enabled by the disclosure.  See *In re Mayhew*, 527 F.2d 1229, 188

USPQ 356 (CCPA 1976). Without knowing which value to multiply the signal one of

ordinary skill in the art can not provide an accurate estimate of a physiological

parameter. Examiner suggests amend claim 21 to independent claims 4 and 22 to

overcome the rejection.


### *Claim Rejections - 35 USC § 103*


1.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102 of this title, if the differences
> between the claimed invention and the prior art are such that the claimed invention as a whole
> would have been obvious before the effective filing date of the claimed invention to a person
> having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not
> be negated by the manner in which the invention was made.


2.      Claims 4-14 and 21-25 are rejected under 35 U.S.C. 103 as being

unpatentable over Diab et al. (US 2012/0253155) and in view of McCarthy et al. (US

5,349,952).


3.      Addressing claims 4 and 22, Diab discloses a method for processing a

signal obtained when light from one or more light sources is emitted toward a body part

of a user, the method comprising: capturing multiple light samples while each light

source emits light toward the body part of the user and converting the multiple light

MASA00086778

Application/Control Number: 14/621,268                                    Page 6
Art Unit: 3777

samples into the signal (see abstract and [0007]); demodulating the signal to produce

multiple demodulated signals (see abstract); low-pass filtering and decimating each

demodulated signal at least in two stages (see Fig. 17, [0006], [0008], [0075] and

[0137]; elements 1620 and 1622 is the first stage; elements 1630 and 1632 is the

second stage) and analyzing the first signal and the conditioned signal to estimate a

physiological parameter of the user (see [0002], [0147] and claim 1). However, Diab

does not disclose demultiplexing each demodulated signal and multiplying each of the

demodulated signals by a respective value of a matrix of values to produce a signal

associated with each light source. In the same field of endeavor, McCarthy discloses

demultiplexing each demodulated signal and multiplying each of the

demodulated signals by a respective value of a matrix of values to produce a signal

associated with each light source (see col. 4, lines 15-45). It would have been obvious

to one of ordinary skill in the art before the effective filing date of the claimed invention

to modify Diab to demultiplexing each demodulated signal and multiplying each of the

demodulated signals by a respective value of a matrix of values to produce a signal

associated with each light source as taught by McCarthy because this allow separation

of signal components (see col. 4, lines 35-40).


        4.      Addressing claims 5, 14 and 21, Diab discloses analyzing each signal

associated with each light source to estimate a physiological parameter of the user (see

[0002], [0147] and claim 1); wherein filtering and decimating each demodulated signal at

least once to produce a signal associated with each light source comprises inputting

MASA00086779

Application/Control Number: 14/621,268                                        Page 7
Art Unit: 3777

each demodulated signal into one or more low pass filter and decimation stages,

wherein each low pass filter and decimation stage comprises a low pass filter for

receiving a demodulated signal and a decimation circuit operably connected to an

output of the low pass filter (see Figs. 16 and [0099-0106]); wherein the matrix of values

is determined by: turning on a first light source (see abstract and [0007]); capturing a

light sample in response to the first light source and converting the light sample into an

initial signal (see abstract and [0007]); demodulating the initial signal to produce multiple

initial demodulated signals (see abstract and [0007]) and filtering and decimating each

initial demodulated signal at least once to determine at least a portion of the matrix of

values (see [0006], [0008] and [0137]).

5.      Claims 6-13 and 23-25 are rejected under 35 U.S.C. 103 as being

unpatentable over Diab et al. (US 2012/0253155) and in view of McCarthy et al. (US

5,349,952).

6.      Addressing claims 6-12, examiner interprets according to applicant

specification. Basically, applicant turns on and off each light source. When applicant

turns on a specific light source and other light sources are off and detector capture

signal applicant calls this capture light sample. When all the light sources are off and

detector capture signal applicant calls this capture dark sample. For claims 6-12,

applicant turns on and off multiple light sources and capture light and dark signal. Diab

discloses turns on and off multiple light sources and capture light and dark signal (see

[0002], [0004], [0042] and Fig. 12). Diab does not disclose capture four, five, ten light or

MASA00086780

Application/Control Number: 14/621,268                                    Page 8
Art Unit: 3777

dark sample. However, the amount of light or dark sample is a designer choice and only requires routine skill in the art. The amount of light or dark sample capture is conventional, not novelty and does not show any improvement over prior art.


7.      Addressing claims 13 and 25, it would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention that using sin and cos equation to demodulate signal only require routine skill in the art. Using sin and cos to demodulate signal is convention and well-known to those skill in the art (see Diab's paragraph [0056-0059]).


### *Response to Arguments*


Applicant's arguments filed 12/14/16 have been fully considered but they are not persuasive. Applicant argues the claims involve specific electronic components performing specific functions that can only be implemented on an electronic device therefore the claims is not an abstract idea and 101 rejection should be withdrawn. Applicant argues the claims are directed to such an improvement in computer functionally as they provide for an electronic device or method which is better able to process light samples into electrical signals through the particular methods and structure claimed. Applicant's argument is not persuasive because the electronic device and components are well-known and conventional. Further, demodulation, multiplying

MASA00086781

Application/Control Number: 14/621,268                                           Page 9
Art Unit: 3777

and demultiplexing are discloses by prior art therefore they are not an improvement in

the technological field.

Applicant's arguments with respect to claims 4-14 and 21 have been considered

but are moot because the arguments do not apply to any of the references being used

in the current rejection.


### *Conclusion*


Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

MASA00086782

Application/Control Number: 14/621,268                                    Page 10
Art Unit: 3777

Any inquiry concerning this communication or earlier communications from the examiner should be directed to HIEN NGUYEN whose telephone number is (571)270-7031.  The examiner can normally be reached on 7:30-5:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Robert Chen can be reached on (571) 272-3672.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/H. N./
Examiner, Art Unit 3777

/ELMER CHAO/
Primary Examiner, Art Unit 3777

MASA00086783

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14/621,268 | LAMEGO, MARCELO  M. |
| | Examiner | Art Unit | Page 1 of 1 |
| | HIEN NGUYEN | 3777 | |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-5,349,952 A | 09-1994 | McCarthy; Rex | A61B5/0059 | 356/41 |
| | B | US- | | | | |
| | C | US- | | | | |
| | D | US- | | | | |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

### FOREIGN  PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                        **Notice of References Cited**                        Part of Paper No. 20170124

MASA00086784

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14621268 | LAMEGO, MARCELO M. |
| | **Examiner** | **Art Unit** |
| | HIEN NGUYEN | 3777 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| (A61B5/0059 or A61B5/0084).cpc. | 1/24/2017 | HN |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| East Search (inventor search) | 1/24/2017 | HN |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14621268 | LAMEGO, MARCELO M. |
| | **Examiner** | **Art Unit** |
| | HIEN NGUYEN | 3777 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/02/2016 | 01/24/2017 | | | | | | | |
| | 1 | N | N | | | | | | | |
| | 2 | N | - | | | | | | | |
| | 3 | N | N | | | | | | | |
| | 4 | ✓ | ✓ | | | | | | | |
| | 5 | ✓ | ✓ | | | | | | | |
| | 6 | ✓ | ✓ | | | | | | | |
| | 7 | ✓ | ✓ | | | | | | | |
| | 8 | ✓ | ✓ | | | | | | | |
| | 9 | ✓ | ✓ | | | | | | | |
| | 10 | ✓ | ✓ | | | | | | | |
| | 11 | ✓ | ✓ | | | | | | | |
| | 12 | ✓ | ✓ | | | | | | | |
| | 13 | ✓ | ✓ | | | | | | | |
| | 14 | ✓ | ✓ | | | | | | | |
| | 15 | N | - | | | | | | | |
| | 16 | N | - | | | | | | | |
| | 17 | N | - | | | | | | | |
| | 18 | N | - | | | | | | | |
| | 19 | N | - | | | | | | | |
| | 20 | N | - | | | | | | | |
| | 21 | | ✓ | | | | | | | |
| | 22 | | ✓ | | | | | | | |
| | 23 | | ✓ | | | | | | | |
| | 24 | | ✓ | | | | | | | |
| | 25 | | ✓ | | | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 130 | ((Marcelo) near2 (Lamego)).INV. | US-PGPUB; USPAT; USOCR | OR | OFF | 2016/08/02 11:48 |
| S2 | 0 | S1 (light dark demodulat$3).clm. | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 11:49 |
| S3 | 0 | "14621268" | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 11:49 |
| S4 | 0 | demodulat$3 fitler$3 decimat$3 light (tissue or sample or skin) physiological | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:00 |
| S5 | 296 | demodulat$3 filter$3 decimat$3 light (tissue or sample or skin) physiological | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:01 |
| S6 | 15 | (demodulat$3 same filter$3 same decimat$3 same light same (tissue or sample or skin)) physiological | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:01 |
| S7 | 0 | (demodulat$3 same filter$3 same decimat$3 same light same (tissue or sample or skin)) physiological wear$4 | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:09 |
| S8 | 1 | (demodulat$3 same filter$3 same decimat$3 same light same (tissue or sample or skin)) wear$4 | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:10 |
| S9 | 7455 | (A61B5/0059 or A61B5/0084).cpc. | US-PGPUB; USPAT | AND | OFF | 2016/08/02 16:38 |
| S10 | 0 | "14621268" | US-PGPUB; USPAT | OR | OFF | 2017/01/24 10:10 |
| S11 | 0 | 14/621268 | US-PGPUB; USPAT | AND | OFF | 2017/01/24 10:11 |
| S12 | 136 | (("LAMEGO") near3 ("Marcelo")).INV. | US-PGPUB; USPAT; USOCR | OR | OFF | 2017/01/24 10:11 |
| S13 | 0 | ("2012/0253155").URPN. | USPAT | OR | OFF | 2017/01/24 11:24 |
| S14 | 484 | physiological (demultiplex$3 with multipl$4) | US- | AND | OFF | 2017/01/24 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 11:25 |
| S15 | 235 | physiological (demultiplex$3 with multipl$4) demodulat$3 | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:26 |
| S16 | 90 | physiological (demultiplex$3 with multipl$4) demodulat$3 decimat$3 | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:26 |
| S17 | 1 | physiological (demultiplex$3 with multipl$4 with demodulat$3) decimat$3 | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:26 |
| S18 | 22 | physiological (demultiplex$3 with multipl$4 with demodulat$3) | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:27 |
| S19 | 4 | (physiological or analyte or blood or (heart adj rate)) (demultiplex$3 with (multiplying or multiply or multiplier) with demodulat$3) | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:47 |
| S20 | 4 | (physiological or analyte or blood or (heart adj rate) or health) (demultiplex$3 with (multiplying or multiply or multiplier) with demodulat$3) | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:48 |
| S21 | 5 | (physiological or analyte or blood or (heart adj rate) or health) (demultiplex$3 with (multiplying or multiply or multiplier) same demodulat$3) | US-PGPUB; USPAT | AND | OFF | 2017/01/24 11:49 |
| S22 | 10 | (physiological or analyte or blood or (heart adj rate) or health) (demultiplex$3 with (multiplying or multiply or multiplier) demodulat$3) | US-PGPUB; USPAT | AND | OFF | 2017/01/24 12:05 |
| S23 | 9 | (medical or medicine) (demultiplex$3 with (multiplying or multiply or multiplier) demodulat$3) | US-PGPUB; USPAT | AND | OFF | 2017/01/24 12:26 |
| S24 | 7904 | (A61B5/0059 or A61B5/0084).cpc. | US-PGPUB; USPAT | AND | OFF | 2017/01/24 12:30 |

**1/24/2017 4:32:20 PM**
**C:\Users\hnguyen55\Documents\EAST\Workspaces\14621268.wsp**

Attorney Docket No. P22879US1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | | |
|---|---|---|---|
| Inventor(s): | Marcelo M. Lamego | | |
| App. No.: | 14/621,268 | Con. No.: | 6317 |
| Filed: | February 12, 2015 | Art Unit: | 3777 |
| Title: | MODULATION AND DEMODULATION TECHNIQUES FOR A HEALTH MONITORING SYSTEM | Examiner: | Nguyen, Hien Ngoc |

**AMENDMENT AND RESPONSE TO OFFICE ACTION**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

In response to the Office action dated September 14, 2016, please consider the following remarks and amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 7 of this paper.

1

Attorney Docket No. P22879US1

**Amendments to the Claims:**

1.      (Withdrawn – Currently Amended)  An electronic device, comprising:

two or more light sources for emitting light toward a body part of a user;

an optical sensor for obtaining light and dark samples and converting the samples into a signal;

a processing device operably connected to the optical sensor for demodulating the signal received from the optical sensor into a demodulated signal associated with each light source; [[and]]

at least one decimation stage for processing each demodulated signal, wherein each decimation stage comprises a low pass filter for receiving the demodulated signals and a decimation circuit operably connected to an output of the low pass filter; and

a demultiplexer and multiplier circuit operably connected to an output of a last decimation stage, wherein the demultiplexer separates the signals by each associated light source and the multiplier multiplies each separated signal by one or more respective weighted values.

2.      (Canceled)

3.      (Withdrawn)  The electronic device as in claim 1, wherein the electronic device is a wearable communication device.

4.      (Currently Amended)  A method for processing a signal obtained when light from one or more light sources is emitted toward a body part of a user, the method comprising:

capturing multiple light samples while each light source emits light toward the body part of the user and converting the multiple light samples into the signal;

demodulating the signal to produce multiple demodulated signals;

filtering and decimating each demodulated signal at least once; and

demultiplexing each demodulated signal and multiplying each of the demodulated signals by a respective value of a matrix of values to produce a signal associated with each light source.

5.      (Original)  The method as in claim 4, further comprising analyzing each signal associated with each light source to estimate a physiological parameter of the user.

2

MASA00086790

6.    (Currently Amended)  The method as in claim 4, wherein capturing multiple light samples while each light source emits light toward the body part of the user comprises:

[[a)]] capturing multiple light samples when a respective ~~each~~ light source is turned on and the other light sources are turned off; and

capturing multiple dark samples after all four light sources have been turned on and turned off.

7.    (Currently Amended)  The method as in claim 6 [[5]], wherein capturing multiple light samples when a respective light source is turned on and the other light sources are turned off comprises capturing five light samples when a respective light source is turned on and the other light sources are turned off.

8.    (Original)  The method as in claim 7, wherein capturing multiple dark samples after all of the light sources have been turned on and turned off comprises capturing ten dark samples after all of the light sources have been turned on and turned off.

9.    (Original)  The method as in claim 6, further comprising capturing one or more dark samples after one light source is turned off and before the next light source is turned on.

10.    (Original)  The method as in claim 9, wherein capturing one or more dark samples after one light source is turned off and before the next light source is turned on comprises capturing one dark sample after one light source is turned off and before the next light source is turned on.

11.    (Original)  The method as in claim 10, wherein capturing multiple light samples when a respective light source is turned on and the other light sources are turned off comprises capturing five light samples when a respective light source is turned on and the other light sources are turned off.

12.    (Original)  The method as in claim 11, wherein capturing multiple dark samples after all of the light sources have been turned on and turned off comprises capturing seven dark samples after all of the light sources have been turned on and turned off.

3

MASA00086791

Attorney Docket No. P22879US1

13.      (Original)  The method as in claim 4, wherein demodulating the signal to produce multiple demodulated signals comprises applying a first demodulation operation of $\sin 2\pi \frac{kt}{N}$ to the signal and applying a second demodulation operation of $\cos 2\pi \frac{kt}{N}$ to the signal, where k is defined by $1 \leq k \leq n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.

14.      (Original)  The method as in claim 4, wherein filtering and decimating each demodulated signal at least once to produce a signal associated with each light source comprises inputting each demodulated signal into one or more low pass filter and decimation stages, wherein each low pass filter and decimation stage comprises a low pass filter for receiving a demodulated signal and a decimation circuit operably connected to an output of the low pass filter.

15.      (Canceled)

16.      (Canceled)

17.      (Canceled)

18.      (Canceled)

19.      (Canceled)

20.      (Canceled)

21.      (New)  The method as in claim 4, wherein the matrix of values is determined by:
turning on a first light source;
capturing a light sample in response to the first light source and converting the light sample into an initial signal;
demodulating the initial signal to produce multiple initial demodulated signals;
filtering and decimating each initial demodulated signal at least once to determine at least a portion of the matrix of values.

4

MASA00086792

22.     (New)  A method for processing a signal obtained when light from a first light source and a second light source is emitted toward a body part of a user, the method comprising:

capturing multiple light samples while each light source emits light toward the body part of the user and converting the multiple light samples into the signal;

demodulating the signal to produce multiple demodulated signals;

performing a first decimation stage by:

        low pass filtering each demodulated signal; and

        decimating each demodulated signal;

performing a second decimation stage after the first decimation stage by:

        low pass filtering each demodulated signal; and

        decimating each demodulated signal;

demultiplexing each demodulated signal after the second stage to produce a first signal associated with the first light source and a second signal associated with the second light source;

multiplying the first signal by a first predetermined value to obtain a first conditioned signal;

multiplying the second signal by a second predetermine value to obtain a second conditioned signal; and

analyzing the first conditioned signal and the second conditioned signal to estimate a physiological parameter of a user.

23.     (New)  The method as in claim 22, wherein capturing multiple light samples while each light source emits light toward the body part of the user comprises:

capturing multiple light samples while each light source is turned on and the other light sources are turned off; and

capturing multiple dark samples after all four light sources have been turned on and turned off.

24.     (New)  The method as in claim 23, further comprising capturing one or more dark samples after one light source is turned off and before the next light source is turned on.

-850-
MASA00086793

Attorney Docket No. P22879US1

25.    (New)  The method as in claim 23, wherein demodulating the digital signal to produce multiple demodulated signals comprises applying a first demodulation operation of $\sin 2\pi \frac{kt}{N}$ to the digital signal and applying a second demodulation operation of $\cos 2\pi \frac{kt}{N}$ to the digital signal, where k is defined by $1 \leq k \leq n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.

6

MASA00086794

## REMARKS

This paper is submitted in response to the Office action mailed on September 14, 2016. This paper amends claims 4, 6, and 7; withdraws claims 1 and 3; cancels claims 2 and 15-20; and adds claims 21-25. Accordingly, after entry of this Amendment and Response, claims 4-14 and 21-25 will be pending.

### I.  Restriction Requirement

In the Restriction Requirement, the Examiner alleges three distinct inventions:

I.        Claims 1-3, drawn to an electronic device, classified in 600/476;

II.       Claims 4-14, drawn to a method for processing a signal obtained when light from one or more light sources is emitted toward body part of a user, classified in 600/476; and

III.      Claims 15-20, drawn to a method for operating an electronic device that includes multiple light sources, classified in 600/476.

The Examiner requires restriction to one of the aforementioned inventions under 35 U.S.C. § 1.21. In response to the Restriction Requirement, Assignee elects Group II, claims 4-14, without traverse. Accordingly, claims 1 and 3 are hereby withdrawn and claims 2 and 15-20 are hereby canceled.

This paper adds new claims 21-25. Claim 21 depends from claim 4, and is therefore included in the elected group II. Claims 22-25 are directed to the elected subject matter of group II.

### II.  Claim Rejections Under 35 U.S.C. § 112

The Examiner rejected claims 4, 6, 8-10 and 12 under 35 U.S.C. § 112(a) as failing to comply with the written description requirement.

The Examiner rejected claims 4, 6, 8-10 and 12 under 35 U.S.C. § 112(a) as failing to comply with the enablement requirement. For at least the following reasons, the Assignee respectfully traverses these rejections.

The Examiner asserts that "[t]he written description does not disclose how applicant performs decimating in the decimation stage" (Office Action, 9). However, the decimation stage is adequately described at least in paragraphs [0018], [0056], [0057], and [0060].

-852-
MASA00086795

Attorney Docket No. P22879US1

Further, the Examiner asserts that "the written description does not disclose how to capture dark sample [sic] when all light are off" (Office Action, 9). As described in the specification, an electronic device may include "one or more optical sensors . . . for capturing dark samples while the light source(s) are turned off" (para. [0005]) and "A light sample obtained when all of the light sources are turned off is known as a dark sample" (para. [0049]). One of ordinary skill of the art would understand that a "dark sample," as described in the specification, may include ambient light, noise, or other artifacts which may be captured by an optical sensor. Accordingly, capturing dark samples is adequately described and enabled in the specification. The Assignee respectfully requests the Examiner withdraw these rejections under 35 U.S.C. § 112.

### III  Claim Rejections Under 35 U.S.C. § 101

The Examiner rejected claims 4-14 under 35 U.S.C. § 101 because the claimed invention is directed to a judicial exception. For at least the following reasons, the Assignee respectfully traverses these rejections.

First, the Examiner states that the "method involve [sic] mathematical concepts such as mathematical relationships, mathematical formulas, and calculation (demodulation and decimating involve mathematical algorithm and processing), collecting and processing known information, comparing information regarding a sample or test subject to a control or target data which correspond to concepts identified as abstract ideas by the courts" to bolster the idea that the pending claims are drawn to an abstract idea (see Office Action, 7). However, this is an irrelevant argument. The Supreme Court has not ruled that patent-ineligible concepts include any form of "mathematical relationships, mathematical formulas, and calculation . . ., collecting and processing known information, comparing information regarding a sample or test subject to a control or target data." Rather, to the extent that such concepts are not patent-eligible under § 101 it is because they are "laws of nature, natural phenomena, and abstract ideas" (*Alice Corp, Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012)). The Examiner is applying a test that does not exist to reach a tautological conclusion.

Further, the Assignee respectfully submits that the Examiner's assertion that "the claims are directed to a method for processing light signal" (Office Action, 6) runs counter to the Federal Circuit's and the Patent Office's cautions against "describing a claim at a high level of abstraction untethered from the language of the claim when determining the focus of the

-853-
MASA00086796

claimed invention" (Memorandum from Robert W. Bahr, Deputy Comm'r for Patent Examination Policy 1 (May 19, 2016) (citing *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, slip. op. (Fed. Cir. May 12, 2016), hereinafter "Memorandum"). The Examiner's broad and general description of the claims ignores the claim language. Additionally, the general description of the claims inaccurately describes the claims as being "directed to" "processing light signal."

The claims are not accurately described at this exceptionally high level. For example, independent claim 4 requires at least the following elements and limitations:

1. capturing multiple light samples while one or more light sources emit light toward the body part of a user

2. converting the multiple light samples into a signal;

3. demodulating the signal to produce multiple demodulated signals;

4. filtering and decimating each demodulated signal at least once;

5. demultiplexing each demodulated signal; and

6. multiplying each of the demodulated signals by a respective value of a matrix of values.

Thus claim 4 cannot be accurately described as being "directed to" "processing light signal." The claimed device includes multiple electronic components in order to emit light toward a body part of a user, capture multiple light samples, convert, demodulate, filter, decimate, demultiplex, and multiply signals. Independent claim 22 contains similar limitations. As stated in MPEP § 2106 (II), "[i]n addition to the terms 'laws of nature,' 'natural phenomena,' and 'abstract ideas,' judicially recognized exceptions have been described using various other terms, including 'physical phenomena,' 'scientific principles,' 'systems that depend on human intelligence alone,' 'disembodied concepts,' 'mental processes' and 'disembodied mathematical algorithms and formulas,' for example. The exceptions reflect the courts' view that the basic tools of scientific and technological work are not patentable." As noted above, such basic tools of scientific and technological work, mental processes, or disembodied mathematical algorithms and formulas are not here claimed. Instead the claims involve specific electronic components performing specific functions that can only be implemented on an electronic device.

In addition, the Patent Office has emphasized that "a claim directed to an improvement to computer-related technology (e.g., computer functionality) is likely not similar to claims that have previously been identified as abstract by the courts" (Memorandum, p. 2). Here, the claims are directed to such an improvement in computer functionality as they provide for an electronic device (or method) which is better able to process light samples into electrical signals through the particular methods and structures claimed. For example, each of the claims employs steps

9

MASA00086797

of capturing light samples, converting the light samples into a signal, demodulating the signal, filtering and decimating each demodulated signal, and multiplying each of the demodulated signals by a respective value of a matrix of values. This improves functionality by, for example, reducing or eliminating undesired interferences and producing demodulated signals that can be analyzed to estimate a physiological parameter of a user (see, e.g., para. [0018]).

This is entirely in accord with the Supreme Court's test in *Alice* to determine whether or not a claim is directed to patentable subject matter. With respect to an abstract idea, the United States Supreme Court stated in *Alice* that a court must determine (1) whether the claim at issue is directed to a patent-ineligible concept, and then (2) determine whether the balance of the claim adds 'significantly more.'" *Alice* at 2355 (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. __ (2012)).

With respect to the first step, the Supreme Court has held that 35 U.S.C. § 101 contains an implicit exception; that laws of nature, natural phenomena, and abstract ideas are not patentable. The concern that drives this implicit exception is pre-emption. The question is whether upholding a patent would pre-empt the use of the abstract idea in all fields, and would effectively grant a monopoly over an abstract idea. *See Alice* at 2354. "Laws of nature, natural phenomena, and abstract ideas are 'the basic tools of scientific and technological work.'" Id. (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. __, __ (2013) (slip op., at 11). Here, it is clear that the specific limitations in the claims at issue would not grant any monopoly over any abstract idea.

Further, the Court noted that it must be careful when construing the exception or the exception will swallow all of patent law. The Court stated that "[a]t some level, all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice* at 2354. Accordingly, in applying the § 101 exception, it is important to distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming it into a patent-eligible invention. *See Mayo* at 1303. The Assignee respectfully submits that the Examiner has read the claim so broadly, and so far beyond its actual limits, that the Examiner has done exactly what the Supreme Court warned against in *Alice*.

With respect to the second step of the *Alice* test, the elements of each claim must be considered both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Alice* at 2355. Here, even if the claims were directed to a patent-ineligible concept, several additional

10

MASA00086798

limitations transform the nature of the claims. For example, claim 4 recites "capturing multiple light samples while each light source emits light toward the body part of the user," "converting the multiple light samples into the signal," "demodulating the signal to produce multiple demodulated signals," "filtering and decimating each demodulated signal at least once," "demultiplexing each demodulated signal," and "multiplying each of the demodulated signals by a respective value of a matrix of values."

In *Alice*, the Court stated that "the relevant question is whether the claims do more than simply instruct the practitioner to implement the abstract idea of intermediate settlement on a generic computer." *Alice* at 2359. The above listed limitations, among others, do considerably more than implement an abstract idea on a generic computer.

The Assignee respectfully submits, therefore, that none of the claims in the present application are directed to non-statutory subject matter under 35 U.S.C. § 101. Accordingly, the Assignee respectfully requests that the Examiner withdraw the rejections of claims 4-10, 12-14, and 16-20 under § 101.

### IV.  Claim Rejections Under 35 U.S.C. § 102

The Examiner rejected claims 4-5 and 14 under 35 U.S.C. § 102(a)(1) as being anticipated by Diab et al. (U.S. Patent Publication No. 2012/0253155; hereinafter "Diab"). For at least the following reasons, the Assignee respectfully traverses these rejections.

Claim 4 recites, among other features, "demultiplexing each demodulated signal and multiplying each of the demodulated signals by a respective value of a matrix of values to produce a signal associated with each light source." These features are not taught or suggested by Diab.

Diab describes a method and an apparatus to measure blood oxygenation including two light sources and a detector to detect a composite signal from the two light sources (Diab, Abstract). Diab does not teach or suggest demultiplexing demodulated signals and multiplying each of the demodulated signals by a respective value of a matrix of values to produce a signal associated with each light source.

Accordingly, independent claim 4 is novel and nonobvious over Diab and in condition for allowance. Claims 5 and 14 depend from claim 4 and are allowable at least as depending from an allowable base claim.

-856-

MASA00086799

### V.  Claim Rejections Under 35 U.S.C. § 103

The Examiner rejected claims 6-13 under 35 U.S.C. § 103(a) as being obvious over Diab. For at least the following reasons, the Assignee respectfully traverses these rejections.

"If an independent claim is not rendered obvious by prior art, then any claim depending from the independent claim is not obvious." *In re Fine*, 5 USPQ2d 1596 (Fed. Cir. 1988)(see also MPEP § 2143.03). Each of claims 6-13 depends from independent claim 4. Accordingly, the Assignee submits that dependent claims 2-4, 6, 8, 9, 15-25, 27, 28, 30, and 32 are in condition for allowance.

### VII.  Conclusion

The Assignee thanks the Examiner for the thorough review of the application. The Assignee respectfully submits the present application, as amended, is in condition for allowance and respectfully requests the issuance of a Notice of Allowability as soon as practicable.

The Assignee believes no fees or petitions are due with this filing. However, should any such fees or petitions be required, please consider this a request therefor and authorization to charge Deposit Account No. 504621 as necessary.

If the Examiner should require any additional information or amendment, please contact the undersigned attorney.

Dated:     December 14, 2016

Respectfully submitted,

        /Stuart K. Wagner/
Stuart K. Wagner, Registration No. 74,548
Attorney for Assignee
USPTO Customer No. 62579

Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street
Suite 2200
Denver, Colorado  80202
Phone:  303-223-1100
Fax:  303-223-1111

-857-
MASA00086800

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27799585 |
| **Application Number:** | 14621268 |
| **International Application Number:** | |
| **Confirmation Number:** | 6317 |
| **Title of Invention:** | Modulation and Demodulation Techniques for a Health Monitoring System |
| **First Named Inventor/Applicant Name:** | Marcelo M. Lamego |
| **Customer Number:** | 62579 |
| **Filer:** | Stuart K. Wagner/Valerie Brown |
| **Filer Authorized By:** | Stuart K. Wagner |
| **Attorney Docket Number:** | P22879US1 |
| **Receipt Date:** | 14-DEC-2016 |
| **Filing Date:** | 12-FEB-2015 |
| **Time Stamp:** | 22:21:04 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | P22879US1Amendment.pdf | 72256<br>2243eb693befd322dba98e10aded335f2b0ed6a4 | no | 12 |

**Warnings:**

MASA00086801

| Information: | | |
|---|---|---|
| | **Total Files Size (in bytes):** | 72256 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MASA00086802

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/621,268 | Filing Date<br>02/12/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☒ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| AMENDMENT | **12/14/2016** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
SHAREILL COLES

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/621,268 | 02/12/2015 | Marcelo M. Lamego | P22879US1 | 6317 |

62579          7590          09/14/2016
APPLE INC. (Brownstein)
c/o Brownstein Hyatt Farber Schreck LLP
410 17th St.
Suite 2200
DENVER, CO 80202

| EXAMINER |
|---|
| NGUYEN, HIEN NGOC |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3777 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/14/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@bhfs.com

PTOL-90A (Rev. 04/07)

MASA00086804

| **Office Action Summary** | Application No. 14/621,268 | Applicant(s) LAMEGO, MARCELO M. |
|---|---|---|
| | Examiner HIEN NGUYEN | Art Unit 3777 | AIA (First Inventor to File) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

    A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>02/12/15</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>1-20</u> is/are pending in the application.
    5a) Of the above claim(s) <u>1-3 and 15-20</u> is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>4-14</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>02/12/15</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
      a)☐ All  b)☐ Some**  c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4)☐ Other: _____.

Application/Control Number: 14/621,268                                    Page 2
Art Unit: 3777

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.


## DETAILED ACTION


### *Election/Restrictions*


Restriction to one of the following inventions is required under 35 U.S.C. 121:

I. Claims 1-3, drawn to an electronic device, classified in 600/476.

II. Claims 4-14, drawn to a method for processing a signal obtained when light

from one or more light sources is emitted toward body part of a user, classified in

600/476.

III. Claims 15-20, drawn to a method for operating an electronic device that

includes multiple light sources, classified in 600/476.

The inventions are distinct, each from the other because of the following reasons:


Inventions I and II are related as process and apparatus for its practice.  The

inventions are distinct if it can be shown that either: (1) the process as claimed can be

practiced by another and materially different apparatus or by hand, or (2) the apparatus

as claimed can be used to practice another and materially different process.  (MPEP §

806.05(e)). In this case the apparatus as claimed can be used to practice another and

Application/Control Number: 14/621,268                                        Page 3
Art Unit: 3777

materially different process. The apparatus could use a different step and equation of demodulate the signals.

Inventions I and III are related as process and apparatus for its practice.  The inventions are distinct if it can be shown that either: (1) the process as claimed can be practiced by another and materially different apparatus or by hand, or (2) the apparatus as claimed can be used to practice another and materially different process.  (MPEP § 806.05(e)). In this case the apparatus as claimed can be used to practice another and materially different process. The apparatus could use a different step and equation of demodulate the signals and capture signal.

Inventions II and III are directed to related processes. The related inventions are distinct if: (1) the inventions as claimed are either not capable of use together or can have a materially different design, mode of operation, function, or effect; (2) the inventions do not overlap in scope, i.e., are mutually exclusive; and (3) the inventions as claimed are not obvious variants.  See MPEP § 806.05(j). In the instant case, the inventions as claimed have a materially different mode of operation. For example: invention II performs step capturing seven dark samples after all of the light sources have been turned on and turned off and capturing one or more dark samples after one light source is turned off and before the next light source is turned on. Invention III does not perform these steps.

MASA00086807

Application/Control Number: 14/621,268                                      Page 4
Art Unit: 3777

Restriction for examination purposes as indicated is proper because all these inventions listed in this action are independent or distinct for the reasons given above <u>and</u> there would be a serious search and/or examination burden if restriction were not required because one or more of the following reasons apply:

The inventions require different search queries and field of search.

**Applicant is advised that the reply to this requirement to be complete <u>must</u> include (i) an election of an invention to be examined** even though the requirement may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing the elected invention**.

The election of an invention may be made with or without traverse. To reserve a right to petition, the election must be made with traverse. If the reply does not distinctly and specifically point out supposed errors in the restriction requirement, the election shall be treated as an election without traverse. Traversal must be presented at the time of election in order to be considered timely. Failure to timely traverse the requirement will result in the loss of right to petition under 37 CFR 1.144. If claims are added after the election, applicant must indicate which of these claims are readable upon the elected invention.

Should applicant traverse on the ground that the inventions are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the inventions to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable

MASA00086808

Application/Control Number: 14/621,268                                          Page 5
Art Unit: 3777

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103 or pre-AIA 35 U.S.C. 103(a) of the other invention.

During a telephone conversation with Nancy Simon on 08/01/16 a provisional

election was made without traverse to prosecute the invention of group II, claims 4-14.

Affirmation of this election must be made by applicant in replying to this Office action.

Claims 1-3 and 15-20 are withdrawn from further consideration by the examiner, 37

CFR 1.142(b), as being drawn to a non-elected invention.

The examiner has required restriction between product or apparatus claims and

process claims. Where applicant elects claims directed to the product/apparatus, and all

product/apparatus claims are subsequently found allowable, withdrawn process claims

that include all the limitations of the allowable product/apparatus claims should be

considered for rejoinder. All claims directed to a nonelected process invention must

include all the limitations of an allowable product/apparatus claim for that process

invention to be rejoined.

In the event of rejoinder, the requirement for restriction between the

product/apparatus claims and the rejoined process claims will be withdrawn, and the

rejoined process claims will be fully examined for patentability in accordance with 37

CFR 1.104. Thus, to be allowable, the rejoined claims must meet all criteria for

patentability including the requirements of 35 U.S.C. 101, 102, 103 and 112. Until all

claims to the elected product/apparatus are found allowable, an otherwise proper

restriction requirement between product/apparatus claims and process claims may be

maintained. Withdrawn process claims that are not commensurate in scope with an

MASA00086809

Application/Control Number: 14/621,268                                         Page 6
Art Unit: 3777

allowable product/apparatus claim will not be rejoined. See MPEP § 821.04.

Additionally, in order for rejoinder to occur, applicant is advised that the process claims

should be amended during prosecution to require the limitations of the

product/apparatus claims. **Failure to do so may result in no rejoinder.** Further, note

that the prohibition against double patenting rejections of 35 U.S.C. 121 does not apply

where the restriction requirement is withdrawn by the examiner before the patent

issues. See MPEP § 804.01.

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or
composition of matter, or any new and useful improvement thereof, may obtain a patent
therefor, subject to the conditions and requirements of this title.

Claims 4-14 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to a judicial exception (i.e., a law of nature, a natural phenomenon, or an

abstract idea) without significantly more.  Claims 4-14 are directed to a method for

processing light signal.  The claim(s) does/do not include additional elements that are

sufficient to amount to significantly more than the judicial exception because the

additional device elements, which are recited at a high level of generality, provide

conventional device functions that do not add meaningful limits to practicing the abstract

idea.

MASA00086810

Claim 4 recites, in part, a method for processing light signal. The method involve mathematical concepts such as mathematical relationships, mathematical formulas, and calculation (demodulation and decimating involve mathematical algorithm and processing), collecting and processing known information, comparing information regarding a sample or test subject to a control or target data which correspond to concepts identified as abstract ideas by the courts. The claims involve processing signal, but do not claim how this is being performed and it's significant over the current technology.

The claim does not include additional elements that are sufficient to amount to significantly more than the judicial exception because the additional elements when considered both individually and as an ordered combination do not amount to significantly more than the abstract idea. The claim recites the additional limitations of a "capturing light sample", a "filtering" and a "light source". These additional elements are recited at a high level of generality and are recited as performing generic computer functions routinely used in computer applications. Generic computer components recited as performing generic computer functions that are well-understood, routine and conventional activities amount to no more than implementing the abstract idea with a computerized system. Thus, taken alone, these additional elements do not amount to significantly more than the above-identified judicial exception (the abstract idea). Looking at the limitations as an ordered combination adds nothing that is not already present when looking at the elements taken individually. There is no indication that the

MASA00086811

Application/Control Number: 14/621,268                                                 Page 8
Art Unit: 3777

combination of elements improves the functioning of a computer or improves any other

technology. Their collective functions merely provide conventional computer

implementation.


Claims 2-14 are dependent on claim 4 that includes all the limitations of

claim 4. Therefore, claims 2-14 recites the same abstract idea of "mathematical

relationship", "collecting and processing known information" and comparing information

regarding a sample or test subject to a control or target data. The claim recites the

additional limitations (perform demodulation using sin and cos equations; turn on and off

light source and perform detection; filtering and decimation) that also mathematical

relationship and collecting and comparing known information. Thus, taken alone, these

additional elements do not amount to significantly more than the above-identified judicial

exception (the abstract idea). Looking at the limitations as an ordered combination adds

nothing that is not already present when looking at the elements taken individually.

There is no indication that the combination of elements improves the functioning of a

computer or improves any other technology. Their collective functions merely provide

conventional computer implementation.


Claims 4-14 are therefore not drawn to eligible subject matter as they are

directed to an abstract idea without significantly more.


*Claim Rejections - 35 USC § 112*

MASA00086812

Application/Control Number: 14/621,268                                    Page 9
Art Unit: 3777

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a)  IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same,  and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 4, 6, 8-10 and 12 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.  The written description does not disclose how applicant performs decimating in the decimation stage. The written description discloses capturing dark samples when all light are off. However, the written description does not disclose how to capture dark sample when all light are off. How can detector detect anything when there are no light? Is the dark sample just a black image? Examiner interprets dark sample as black image.

MASA00086813

Application/Control Number: 14/621,268                                         Page 10
Art Unit: 3777

Claims 4, 6, 8-10 and 12 rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-

AIA), first paragraph, as failing to comply with the enablement requirement.  The

claim(s) contains subject matter which was not described in the specification in such a

way as to enable one skilled in the art to which it pertains, or with which it is most nearly

connected, to make and/or use the invention. Without knowing how to perform

decimation and capture dark sample one of ordinary skill in the art can not make and

use the invention.


### *Claim Rejections - 35 USC § 102*


1.      The following is a quotation of the appropriate paragraphs of 35 U.S.C.

102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

2.      Claims 4-5 and 14 are rejected under 35 U.S.C. 102(a)(1) as being

anticipated by Diab et al. (US 2012/0253155).


3.      Addressing claim 4, Diab discloses a method for processing a signal

obtained when light from one or more light sources is emitted toward a body part of a

user, the method comprising: capturing multiple light samples while each light source

emits light toward the body part of the user and converting the multiple light samples

into the signal (see abstract and [0007]); demodulating the signal to produce multiple

MASA00086814

Application/Control Number: 14/621,268                                    Page 11
Art Unit: 3777

demodulated signals (see abstract); filtering and decimating each demodulated signal at

least once to produce a signal associated with each light source (see [0006], [0008] and

[0137]).


4.      Addressing claims 5 and 14, Diab discloses analyzing each signal

associated with each light source to estimate a physiological parameter of the user (see

[0002], [0147] and claim 1); wherein filtering and decimating each demodulated signal at

least once to produce a signal associated with each light source comprises inputting

each demodulated signal into one or more low pass filter and decimation stages,

wherein each low pass filter and decimation stage comprises a low pass filter for

receiving a demodulated signal and a decimation circuit operably connected to an

output of the low pass filter (see Figs. 16 and [0099-0106]).


### *Claim Rejections - 35 USC § 103*


5.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102 of this title, if the differences
> between the claimed invention and the prior art are such that the claimed invention as a whole
> would have been obvious before the effective filing date of the claimed invention to a person
> having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not
> be negated by the manner in which the invention was made.

6.      Claims 6-13 are rejected under 35 U.S.C. 103 as being unpatentable over

Diab et al. (US 2012/0253155).

MASA00086815

Application/Control Number: 14/621,268                                    Page 12
Art Unit: 3777

7.      Addressing claims 6-12, examiner interprets according to applicant specification. Basically, applicant turns on and off each light source. When applicant turns on a specific light source and other light sources are off and detector capture signal applicant calls this capture light sample. When all the light sources are off and detector capture signal applicant calls this capture dark sample. For claims 6-12, applicant turns on and off multiple light sources and capture light and dark signal. Diab discloses turns on and off multiple light sources and capture light and dark signal (see [0002], [0004], [0042] and Fig. 12). Diab does not disclose capture four, five, ten light or dark sample. However, the amount of light or dark sample is a designer choice and only requires routine skill in the art. The amount of light or dark sample capture is conventional, not novelty and does not show any improvement over prior art.

8.      Addressing claim 13, it would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention that using sin and cos equation to demodulate signal only require routine skill in the art. Using sin and cos to demodulate signal is convention and well-known to those skill in the art (see Diab's paragraph [0056-0059]).

Application/Control Number: 14/621,268                                          Page 13
Art Unit: 3777

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to HIEN NGUYEN whose telephone number is (571)270-7031. The examiner can normally be reached on 7:30-5:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Robert Chen can be reached on (571) 272-3672. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/H. N./
Examiner, Art Unit 3777

/ELMER CHAO/
Primary Examiner, Art Unit 3777

MASA00086817

| *Notice of References Cited* | Application/Control No. 14/621,268 | Applicant(s)/Patent Under Reexamination LAMEGO, MARCELO M. | |
|---|---|---|---|
| | Examiner HIEN NGUYEN | Art Unit 3777 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2012/0253155 A1 | 10-2012 | Diab; Mohamed K. | A61B5/14551 | 600/324 |
| | B | US- | | | | |
| | C | US- | | | | |
| | D | US- | | | | |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14621268 | LAMEGO, MARCELO M. |
| | Examiner | Art Unit |
| | HIEN NGUYEN | 3777 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/02/2016 | | | | | | | |
| | 1 | N | | | | | | | |
| | 2 | N | | | | | | | |
| | 3 | N | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | N | | | | | | | |
| | 16 | N | | | | | | | |
| | 17 | N | | | | | | | |
| | 18 | N | | | | | | | |
| | 19 | N | | | | | | | |
| | 20 | N | | | | | | | |

U.S. Patent and Trademark Office

Part of Paper No. : 20160802

MASA00086819

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7455 | (A61B5/0059 or A61B5/0084).cpc. | US-PGPUB; USPAT | AND | OFF | 2016/08/02 16:38 |
| S1 | 130 | ((Marcelo) near2 (Lamego)).INV. | US-PGPUB; USPAT; USOCR | OR | OFF | 2016/08/02 11:48 |
| S2 | 0 | S1 (light dark demodulat$3).clm. | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 11:49 |
| S3 | 0 | "14621268" | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 11:49 |
| S4 | 0 | demodulat$3 fitler$3 decimat$3 light (tissue or sample or skin) physiological | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:00 |
| S5 | 296 | demodulat$3 filter$3 decimat$3 light (tissue or sample or skin) physiological | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:01 |
| S6 | 15 | (demodulat$3 same filter$3 same decimat$3 same light same (tissue or sample or skin)) physiological | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:01 |
| S7 | 0 | (demodulat$3 same filter$3 same decimat$3 same light same (tissue or sample or skin)) physiological wear$4 | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:09 |
| S8 | 1 | (demodulat$3 same filter$3 same decimat$3 same light same (tissue or sample or skin)) wear$4 | US-PGPUB; USPAT; USOCR | AND | OFF | 2016/08/02 12:10 |

**8/2/2016 5:26:57 PM**
**C:\Users\hnguyen55\Documents\EAST\Workspaces\14621268.wsp**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14621268 | LAMEGO, MARCELO M. |
| | **Examiner** | **Art Unit** |
| | HIEN NGUYEN | 3777 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| (A61B5/0059 or A61B5/0084).cpc. | 8/2/2016 | HN |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| East Search (inventor search) | 8/2/2016 | HN |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

MASA00086821

### PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 14/621,268 |

#### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE($) | FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 280 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 600 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 720 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 | minus 20 = * | | | OR | x 80 = | 0.00 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = * | | | | x 420 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1600 |

#### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

MASA00086822



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/621,268 | 02/12/2015 | 2875 | 1600 | P22879US1 | 20 | 3 |

**CONFIRMATION NO. 6317**

62579
APPLE INC.
c/o Brownstein Hyatt Farber Schreck
410 17th St.
Suite 2200
DENVER, CO 80202

**FILING RECEIPT**

|||||||||||||||||||||||||||||||||||||
*OC000000073615663*

Date Mailed: 03/11/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**
Marcelo M. Lamego, Cupertino, CA;

**Applicant(s)**
Apple Inc., Cupertino, CA

**Power of Attorney:** The patent practitioners associated with Customer Number 62579

**Domestic Priority data as claimed by applicant**
This appln claims benefit of 62/047,818 09/09/2014

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**If Required, Foreign Filing License Granted:** 02/25/2015

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/621,268**

**Projected Publication Date:** Request for Non-Publication Acknowledged

**Non-Publication Request:** Yes

**Early Publication Request:** No

**Title**

    Modulation and Demodulation Techniques for a Health Monitoring System

**Preliminary Class**

    362

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

MASA00086824

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

MASA00086825

PTO/AIA/15 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | **P22879US1** |
| First Named Inventor | **Marcelo M. Lamego** |
| Title | Modulation and Demodulation Techniques... |
| Express Mail Label No. | **Electronic Filing** |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:**  **Commissioner for Patents**
P.O. Box 1450
Alexandria, VA  22313-1450

1. ☐ **Fee Transmittal Form**
   (PTO/SB/17 or equivalent)
2. ☐ **Applicant asserts small entity status.**
   See 37 CFR 1.27
3. ☐ **Applicant certifies micro entity status.** See 37 CFR 1.29.
   Applicant must attach form PTO/SB/15A or B or equivalent.
4. ☑ **Specification**   *[Total Pages* 25 *]*
   Both the claims and abstract must start on a new page.
   *(See MPEP § 608.01(a) for information on the preferred arrangement)*
5. ☑ **Drawing(s)** (35 U.S.C. 113)   *[Total Sheets* 9 *]*
6. **Inventor's Oath or Declaration**   *[Total Pages _____]*
   *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*
   a. ☐ Newly executed (original or copy)
   b. ☐ A copy from a prior application (37 CFR 1.63(d))
7. ☑ **Application Data Sheet**   *See note below.*
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. ☐ **CD-ROM or CD-R**
   in duplicate, large table, or Computer Program *(Appendix)*
   ☐ Landscape Table on CD
9. **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. ☐ Computer Readable Form (CRF)
   b. ☐ Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

## ACCOMPANYING APPLICATION PAPERS

10. ☐ **Assignment Papers**
    (cover sheet & document(s))
    Name of Assignee _____
    _____
11. ☑ **37 CFR 3.73(c) Statement**   ☑ **Power of Attorney**
    *(when there is an assignee)*
12. ☐ **English Translation Document**
    *(if applicable)*
13. ☐ **Information Disclosure Statement**
    (PTO/SB/08 or PTO-1449)
    ☐ Copies of citations attached
14. ☐ **Preliminary Amendment**
15. ☐ **Return Receipt Postcard**
    *(MPEP § 503) (Should be specifically itemized)*
16. ☐ **Certified Copy of Priority Document(s)**
    *(if foreign priority is claimed)*
17. ☑ **Nonpublication Request**
    Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.
18. ☑ **Other:** Substitute Statement in Lieu of Declaration
    _____
    _____
    _____
    _____

**\*Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 19. CORRESPONDENCE ADDRESS

☑ The address associated with Customer Number: 62579   OR   ☐ Correspondence address below

| Name | |
|---|---|
| Address | |

| City | | State | | Zip Code | |
|---|---|---|---|---|---|

| Country | | Telephone | | Email | |
|---|---|---|---|---|---|

| Signature | /Nancy R. Simon/ | Date | February 12, 2015 |
|---|---|---|---|
| Name (Print/Type) | Nancy R. Simon | Registration No. (Attorney/Agent) | 36,930 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MASA00086826

PTO/AIA/14 (12-13)
Approved for use through 11/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | P22879US1 |
|---|---|---|
| | Application Number | |

| Title of Invention | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | Remove |
|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Marcelo | M. | Lamego | |

| **Residence Information (Select One)** | ⦿ US Residency | ◯ Non US Residency | ◯ Active US Military Service |
|---|---|---|---|

| City | Cupertino | State/Province | CA | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 10292 Orange Avenue |
|---|---|
| Address 2 | |

| City | Cupertino | State/Province | CA |
|---|---|---|---|
| Postal Code | 95014 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the Add button.    | Add |

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 62579 |
|---|---|
| Email Address | | Add Email | Remove Email |

## Application Information:

| Title of the Invention | Modulation and Demodulation Techniques for a Health Monitoring System | | |
|---|---|---|---|
| Attorney Docket Number | P22879US1 | Small Entity Status Claimed | ☐ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | 9 | Suggested Figure for Publication (if any) | 4 |

## Filing By Reference :

PTO/AIA/14 (12-13)
Approved for use through 03/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | P22879US1 |
|---|---|---|
| | Application Number | |

| Title of Invention | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|

| ☒ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |
|---|---|

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ◉ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 62579 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | Claims benefit of provisional | 62/047818 | 2014-09-09 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

PTO/AIA/14 (12-13)
Approved for use through 11/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | P22879US1 |
|---|---|---|
| | Application Number | |

| Title of Invention | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☐ Authorization to Permit Access to the Instant Application by the Participating Offices

PTO/AIA/14 (12-13)
Approved for use through 03/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | P22879US1 |
|---|---|---|
| | **Application Number** | |

| **Title of Invention** | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO),
the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO),
and any other intellectual property offices in which a foreign application claiming priority to the instant patent application
is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant
does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority
to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect
to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application
claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of
37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is
sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date o f filing this Authorization.

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR
to have an assignment recorded by the Office.

## Applicant   1

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed.
The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR
1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person
who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an
applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient
proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be
identified in this section.

[ Clear ]

| ◉ Assignee | ○ Legal Representative under  35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|
| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here.   ☒

| Organization Name | Apple Inc. |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | One Infinite Loop | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Cupertino | **State/Province** | CA |
| **Country** | US | Postal Code | 95014 |
| Phone Number | | Fax Number | |

MASA00086830

PTO/AIA/14 (12-13)
Approved for use through 03/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | P22879US1 |
|---|---|---|
| | Application Number | |

| Title of Invention | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|

| Email Address | |
|---|---|

Additional Applicant Data may be generated within this form by selecting the Add button.

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Assignee   1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☐ |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

# Signature:

NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications.

| Signature | /Nancy R. Simon/ | | | Date  (YYYY-MM-DD) | 2015-02-12 |
|---|---|---|---|---|---|
| First Name | Nancy R. | Last Name | Simon | Registration Number | 36930 |

Additional Signature may be generated within this form by selecting the Add button.

MASA00086831

PTO/AIA/14 (12-13)
Approved for use through 04/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | P22879US1 |
|---|---|---|
| | Application Number | |

| Title of Invention | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

MASA00086832

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent C o o p eration Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MASA00086833

Doc code: Oath
Document Description: Oath or declaration filed

PTO/AIA/02 (07-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## SUBSTITUTE STATEMENT IN LIEU OF AN OATH OR DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION (35 U.S.C. 115(d) AND 37 CFR 1.64)

| Title of Invention | Modulation and Demodulation Techniques for a Health Monitoring System |
|---|---|
| | Attorney Docket No. P22879US1 |

This statement is directed to:

☑ The attached application,

OR

☐ United States application or PCT international application number _____ filed on _____.

**LEGAL NAME of inventor to whom this substitute statement applies:**

(*E.g.*, Given Name (first and middle (if any)) and Family Name or Surname)

## Marcelo M. Lamego

Residence (except for a deceased or legally incapacitated inventor):

| City Cupertino | State CA | Country US |
|---|---|---|

Mailing Address (except for a deceased or legally incapacitated inventor):

10292 Orange Avenue

| City Cupertino | State CA | Zip 95014 | Country US |
|---|---|---|---|

I believe the above-named inventor or joint inventor to be the original inventor or an original joint inventor of a claimed invention in the application.

The above-identified application was made or authorized to be made by me.

I hereby acknowledge that any willful false statement made in this statement is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

Relationship to the inventor to whom this substitute statement applies:

☐ Legal Representative (for deceased or legally incapacitated inventor only),

☑ Assignee,

☐ Person to whom the inventor is under an obligation to assign,

☐ Person who otherwise shows a sufficient proprietary interest in the matter (petition under 37 CFR 1.46 is required), or

☐ Joint Inventor.

[Page 1 of 2]

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/AIA02 (07-13)
Approved for use through 01/31/2014.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# SUBSTITUTE STATEMENT

Circumstances permitting execution of this substitute statement:

- ☐ Inventor is deceased,
- ☐ Inventor is under legal incapacity,
- ☐ Inventor cannot be found or reached after diligent effort, or
- ☑ Inventor has refused to execute the oath or declaration under 37 CFR 1.63.

If there are joint inventors, please check the appropriate box below:

- ☑ An application data sheet under 37 CFR 1.76 (PTO/AIA/14 or equivalent) naming the entire inventive entity has been or is currently submitted.

OR

- ☐ An application data sheet under 37 CFR 1.76 (PTO/AIA/14 or equivalent) has not been submitted. Thus, a Substitute Statement Supplemental Sheet (PTO/AIA/11 or equivalent) naming the entire inventive entity and providing inventor information is attached. See 37 CFR 1.64(b).

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft.  Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application.  If this type of personal information is included in documents submitted to the  USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them  to the USPTO.  Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent.  Furthermore, the record from an abandoned application may also be available to the public if the  application is referenced in a published application or an issued patent (see 37 CFR 1.14).  Checks and credit card  authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not  publicly available.

**PERSON EXECUTING THIS SUBSTITUTE STATEMENT:**

| Name: | Nancy R. Simon | Date (Optional): | 2015-02-12 |
|---|---|---|---|

Signature: **/Nancy R. Simon/**

**APPLICANT NAME AND TITLE OF PERSON EXECUTING THIS SUBSTITUTE STATEMENT:**

If the applicant is a juristic entity, list the applicant name and the title of the signer:

Applicant Name: Apple Inc.

Title of Person Executing This Substitute Statement: **Attorney for Applicant, Registration No. 36,930**

The signer, whose title is supplied above, is authorized to act on behalf of the applicant.

**Residence of the signer (unless provided in an application data sheet, PTO/AIA/14 or equivalent):**

| City | Denver | State | CO | Country | US |
|---|---|---|---|---|---|

**Mailing Address of the signer (unless provided in an application data sheet, PTO/AIA/14 or equivalent)**

410 Seventeenth Street
Suite 2200

| City | Denver | State | CO | Zip | 80202 | Country | US |
|---|---|---|---|---|---|---|---|

Note: Use an additional PTO/AIA/02 form for each inventor who is deceased, legally incapacitated, cannot be found or reached after diligent effort, or has refused to execute the oath or declaration under 37 CFR 1.63.

[Page 2 of 2]

MASA00086835

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( *i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MASA00086836

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | **Not Yet Assigned** |
| Filing Date | **Herewith** |
| First Named Inventor | Marcelo M. Lamego |
| Title | Modulation and Demodulation Techniques for a Health Monitoring System |
| Art Unit | **Not Yet Assigned** |
| Examiner Name | **Not Yet Assigned** |
| Attorney Docket Number | P22879US1 |

### SIGNATURE of Applicant or Patent Practitioner

| | | | |
|---|---|---|---|
| Signature | **/Nancy R. Simon/** | Date (Optional) | **February 12, 2015** |
| Name | Nancy R. Simon | Registration Number | 36,930 |
| Title (if Applicant is a juristic entity) | Attorney for Applicant | | |
| Applicant Name (if Applicant is a juristic entity) | **Apple Inc.** | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] *Total of  1  forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/82B(07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in the attached transmittal letter.

☒ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A or equivalent):

| 62579 |

OR

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A or equivalent):

| Name | Registration Number | Name | Registration Number |
|------|---------------------|------|---------------------|
|      |                     |      |                     |
|      |                     |      |                     |
|      |                     |      |                     |
|      |                     |      |                     |

Please recognize or change the correspondence address for the application identified in the attached transmittal letter to:

☒ The address associated with the above-mentioned Customer Number.

OR

☐ The address associated with Customer Number:

OR

| ☐ Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant:

☐ Inventor or Joint Inventor

☐ Legal Representative of a Deceased or Legally Incapacitated Inventor

☒ Assignee or Person to Whom the Inventor is Under an Obligation to Assign

☐ Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document)

SIGNATURE of Applicant for Patent

| Signature | | Date | 9/27/12 |
|-----------|--|------|---------|
| Name | BJ Watrous, | Telephone | 408 974-0015 |
| Title and Company | Vice President and Chief IP Counsel, Apple Inc. | | |

NOTE: Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms for more than one signature, see below *.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MASA00086838

PTO/SB/35 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U. S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| | | |
|---|---|---|
| **NONPUBLICATION REQUEST UNDER 35 U.S.C. 122(b)(2)(B)(i)** | First Named Inventor | Marcelo M. Lamego |
| | Title | Modulation and Demodulation Techniques... |
| | Attorney Docket Number | P22879US1 |

I hereby certify that the invention disclosed in the attached application **has not and will not be** the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

I hereby request that the attached application not be published under 35 U.S.C. 122(b).

/Nancy R. Simon/                                        February 12, 2015
_____                    _____
                Signature                                                   Date

Nancy R. Simon                                        36,930
_____                    _____
         Typed or printed name                          Registration Number, if applicable

303-223-1100
_____
          Telephone Number

This request must be signed in compliance with 37 CFR 1.33(b) and submitted with the application **upon filing.**

Applicant may rescind this nonpublication request at any time. If applicant rescinds a request that an application not be published under 35 U.S.C. 122(b), the application will be scheduled for publication at eighteen months from the earliest claimed filing date for which a benefit is claimed.

If applicant subsequently files an application directed to the invention disclosed in the attached application in another country, or under a multilateral international agreement, that requires publication of applications eighteen months after filing, the applicant **must** notify the United States Patent and Trademark Office of such filing within forty-five (45) days after the date of the filing of such foreign or international application. **Failure to do so will result in abandonment of this application (35 U.S.C. 122(b)(2)(B)(iii)).**

This collection of information is required by 37 CFR 1.213(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

Attorney Docket No. P22879US1

# MODULATION AND DEMODULATION TECHNIQUES FOR A HEALTH MONITORING SYSTEM

Cross-Reference to Related Application

[0001] This application claims the benefit under 35 U.S.C. § 119(e) of U.S. Provisional Patent Application No. 62/047,818, filed September 9, 2014, entitled "Modulation and Demodulation Techniques for a Health Monitoring System," the entirety of which is incorporated herein by reference.

1

MASA00086840

Attorney Docket No. P22879US1

Technical Field

[0002] The present invention relates generally to health monitoring systems, and more particularly to modulation and demodulation techniques for a health monitoring system that includes one or more optical sensors.

2

MASA00086841

Attorney Docket No. P22879US1

Background

[0003] Health monitoring devices, such as fitness and wellness devices, are capable of measuring a variety of physiological parameters and waveforms non-invasively via optical sensing. Light is applied to a measurement site, such as a user's wrist, finger, and ear, and the light is absorbed and scattered throughout the skin. An optical sensor in the health monitoring device captures the light that is reflected from or transmitted through the skin. The optical sensor, however, is subject to interferences caused by fluorescent bulbs, sun light, the electricity grid or network, and motion artifacts that are caused by the relative motion between the optical sensor and the user's measurement site. Thus, the light collected by the light sensor contains a component from the measurement site and component from one or more interferences. To estimate the physiological parameter and waveform, the optical sensor coverts the collected light into electrical signals, and the signal that represents the interference component is typically subtracted from the signal representing the measurement site component. After subtraction, only the component from the measurement site should remain, which is the component that is used to estimate the physiological parameter. However, subtraction cannot be performed instantaneously. A time delay exists between sampling the light and subtracting the interference component. The time delay can result in the creation of aliases in the signal, and the aliases produce errors in the estimation of the physiological parameter.

3

MASA00086842

Attorney Docket No. P22879US1

## Summary

**[0005]** In one aspect, an electronic device includes one or more light sources for emitting light toward a body part of a user and one or more optical sensors for capturing light samples while each light source is turned on and for capturing dark samples while the light source(s) are turned off. A signal produced by the one or more optical sensors is demodulated produce multiple demodulated signals. Each demodulated signal is received by one or more decimation stages to produce a signal associated with each light source. A demultiplexer and multiplier circuit operably can be connected to an output of the decimation stage. The demultiplexer separates the signals by each associated light source and the multiplier multiplies each signal by one or more respective weights. The weights adjust the signals for variations in temperature and operating parameters of various components in the electronic device. Each signal associated with the light source(s) is analyzed to estimate or determine a physiological parameter of the user.

**[0006]** In another aspect, a method for processing the signal received from the light sensor can include capturing multiple light samples while each light source emits light toward the body part of the user and converting the multiple light samples into the signal. The light sources can be modulated (e.g., turned on and off) according to a particular modulation pattern. The signal produced by the optical sensor is then demodulated to produce multiple demodulated signals. Each demodulated signal is associated with a particular light source. Each demodulated signal is then be processed by at least one decimation stage. In one embodiment, each decimation stage includes a low pass filter that receives a demodulated signal and a decimation circuit operably connected to an output of the low pass filter. A demultiplexer and multiplier circuit may then process the signals. Each signal associated with the light source(s) is analyzed to estimate or determine a physiological parameter of the user.

**[0007]** In yet another aspect, a method for operating an electronic device that includes multiple light sources, an optical sensor, and a processing device operably connected to the optical sensor can include turning on each light source one at a time and emitting light toward a body part of a user and capturing multiple light samples while each light source emits light toward the body part of the user and converting the multiple light samples into a signal. The

4

MASA00086843

Attorney Docket No. P22879US1

signal is converted into a digital signal, and the digital signal is demodulated to produce multiple demodulated signals.  Each demodulated signal is then processed by at least one decimation stage.  In one embodiment, each decimation stage includes a low pass filter that receives a demodulated signal and a decimation circuit operably connected to an output of the low pass filter.  Each signal associated with the light source(s) is analyzed to estimate or determine a physiological parameter of the user.

5

Brief Description of the Drawings

[0008]     Embodiments of the invention are better understood with reference to the following drawings. The elements of the drawings are not necessarily to scale relative to each other.  Identical reference numerals have been used, where possible, to designate identical features that are common to the figures.

[0009]     FIG. 1 a perspective front view of one example of an electronic device that provides health-related information;

[0010]     FIG. 2 depicts a back view of the electronic device 100 shown in FIG. 1;

[0011]     FIG. 3 is an illustrative block diagram of the electronic device 100 shown in FIGS. 1 and 2;

[0012]     FIG. 4 is a flowchart of one example method of operating the health monitoring system 312 in FIG. 3;

[0013]     FIGS. 5-6 depict example modulation patterns suitable for use in blocks 400 and 402 in FIG. 4;

[0014]     FIG. 7 is a data flow diagram of a processing channel that performs blocks 408, 410, and 412 in FIG. 4;

[0015]     FIG. 8 is a flowchart of one example method of determining a matrix used in block 718 of FIG. 7;

[0016]     FIG. 9 is a flowchart of one example method of performing block 800 in FIG. 8; and

[0017]     FIG. 10 is a flowchart of one example method of performing block 802 in FIG. 8.

6

MASA00086845

Attorney Docket No. P22879US1

Detailed Description

[0018] Embodiments described herein provide modulation and demodulation techniques that reduce or eliminate undesired interferences and produce demodulated signals that can be analyzed to estimate a physiological parameter of a user.  A time multiplexed modulation pattern is used to turn the light sources on and off and to cause the optical sensor to capture multiple light and dark samples.  Demodulation operations are applied to the signal produced by the optical sensor to produce a signal associated with each light source.  In general, the demodulation operation can be $\sin 2\pi \frac{kt}{N}$ or $\cos 2\pi \frac{kt}{N}$.  The demodulated signals may then be processed by one or more decimation stages.  Each decimation stage can include a low pass filter and a decimation circuit.

[0019] Any suitable type of electronic device can include a health monitoring system. Example electronic devices include, but are not limited to, a smart telephone, a headset, a pulse oximeter, a digital media player, a tablet computing device, and a wearable electronic device.  A wearable electronic device can include any type of electronic device that can be worn on a limb of a user.  The wearable electronic device can be affixed to a limb or body part of a user, such as a wrist, an arm, a finger, a leg, an ear, or a chest.  In some embodiments, the wearable electronic device is worn on a limb of a user with a band that attaches to the body and includes a holder or case to detachably or removably hold the electronic device, such as an armband, an ankle bracelet, a leg band, and/or a wristband.  In other embodiments, the wearable electronic device is permanently affixed or attached to a band, and the band attaches to the body of the user.

[0020] As one example, a wearable electronic device can be implemented as a wearable health assistant that provides health-related information (whether real-time or not) to the user, authorized third parties, and/or an associated monitoring device.  The wearable health assistant may be configured to provide health-related information or data such as, but not limited to, heart rate data, blood pressure data, temperature data, blood oxygen saturation level data, diet/nutrition information, medical reminders, health-related tips or information, or other health-related data. The associated monitoring device may be, for example, a tablet computing device, phone, personal digital assistant, computer, and so on.

7

MASA00086846

[0021] As another example, the electronic device can be configured in the form of a wearable communications device. The wearable communications device may include a processor coupled with or in communication with a memory, one or more sensors, one or more communication interfaces, output devices such as displays and speakers, one or more input devices, and a health monitoring system. The communication interface(s) can provide electronic communications between the communications device and any external communication network, device or platform, such as but not limited to wireless interfaces, Bluetooth interfaces, USB interfaces, Wi-Fi interfaces, TCP/IP interfaces, network communications interfaces, or any conventional communication interfaces. The wearable communications device may provide information regarding time, health, statuses or externally connected or communicating devices and/or software executing on such devices, messages, video, operating commands, and so forth (and may receive any of the foregoing from an external device), in addition to communications.

[0022] Referring now to FIG. 1, there is shown a perspective view of one example of an electronic device that provides health-related information. In the illustrated embodiment, the electronic device 100 is implemented as a wearable communication device. Other embodiments can implement the electronic device differently. As described earlier, the electronic device can be a smart telephone, a gaming device, a digital music player, a device that provides time, a health assistant, and other types of electronic devices that provide health-related information.

[0023] The electronic device 100 includes an enclosure 102 at least partially surrounding a display 104 and one or more buttons 106 or input devices. The enclosure 102 can form an outer surface or partial outer surface and protective case for the internal components of the electronic device 100, and may at least partially surround the display 104. The enclosure 102 can be formed of one or more components operably connected together, such as a front piece and a back piece. Alternatively, the enclosure 102 can be formed of a single piece operably connected to the display 104.

[0024] The display 104 can be implemented with any suitable technology, including, but not limited to, a multi-touch sensing touchscreen that uses liquid crystal display (LCD) technology, light emitting diode (LED) technology, organic light-emitting display (OLED) technology, organic electroluminescence (OEL) technology, or another type of display

8

MASA00086847

technology.  A button 106 can take the form of a home button, which may be a mechanical button, a soft button (e.g., a button that does not physically move but still accepts inputs), an icon or image on a display or on an input region, and so on.  Other buttons or mechanisms can be used as input/output devices, such as a speaker, a microphone, an on/off button, a mute button, or a sleep button.  In some embodiments, the button or buttons 106 can be integrated as part of a cover glass of the electronic device.

[0025]  The electronic device 100 can be permanently or removably attached to a band 108.  The band 108 can be made of any suitable material, including, but not limited to, leather, metal, rubber or silicon, fabric, and ceramic.  In the illustrated embodiment, the band is a wristband that wraps around the user's wrist.  The wristband can include an attachment mechanism (not shown), such as a bracelet clasp, Velcro, and magnetic connectors.  In other embodiments, the band can be elastic or stretchy such that it fits over the hand of the user and does not include an attachment mechanism.

[0026]  FIG. 2 depicts a back view of the electronic device 100 shown in FIG. 1.  As described earlier, the electronic device can include one or more sensors, and at least one of these sensors may provide health-related information.  As one example, the wearable communication device can include an optical sensor, such as a photoplethysmography (PPG) sensor.  A PPG sensor uses light to measure changes in the volume of a part of a user's body.  As the light passes through the user's skin and into the underlying tissue, some light is reflected, some is scattered, and some is absorbed, depending on what the light encounters.  Blood can absorb light more than surrounding tissue, so less reflected light will be sensed by the PPG sensor when more blood is present.  The user's blood volume increases and decreases with each heartbeat.  A PPG sensor detects changes in blood volume based on the reflected light, and one or more physiological parameters of the user can be determined by analyzing the reflected light.  Example physiological parameters include, but are not limited to, heart rate and respiration.

[0027]  The electronic device 100 includes one or more apertures 200 in the enclosure 102.  Each aperture is associated with a light source 202.  In one embodiment, each light source is implemented as a light-emitting diode (LED).  Four apertures 200 and four light sources 202

9

are used in the illustrated embodiment.  Other embodiments can include any number of light
sources 200.  For example, two light sources can be used in some embodiments.

[0028]  The light sources 202 can operate at the same light wavelength range, or the light
sources can operate at different light wavelength ranges.  As one example, with two light sources
one light source may transmit light in the visible wavelength range while the other light source
can emit light in the infrared wavelength range.  With four light sources, two light sources may
transmit light in the visible wavelength range while the other two light sources can emit light in
the infrared wavelength range.  For example, in one embodiment, at least one light source can
emit light in the wavelength range associated with the color green while another light source
transmits light in the infrared wavelength range.  When a physiological parameter of the user will
be determined, the light sources emit light toward the user's skin and the optical sensor 204
senses an amount of reflected light.  The optical sensor 204 may sense the reflected light through
an aperture (not shown) that is formed in the electronic device.  As will be described in more
detail later, a modulation pattern can be used to turn the light sources on and off and sample or
sense the reflected light.

[0029]  FIG. 3 is an illustrative block diagram of the electronic device 100 shown in
FIG. 1.  The electronic device 100 can include the display 104, one or more processing devices
300, memory 302, one or more input/output (I/O) devices 304, one or more sensors 306, a power
source 308, a network communications interface 310, and a health monitoring system 312.  The
display 104 may provide an image or video output for the electronic device 100. The display may
also provide an input surface for one or more input devices, such as, for example, a touch sensing
device and/or a fingerprint sensor.  The display 104 may be substantially any size and may be
positioned substantially anywhere on the electronic device 100.

[0030]  The processing device 300 can control some or all of the operations of the
electronic device 100.  The processing device 300 can communicate, either directly or indirectly
with substantially all of the components of the electronic device 100.  For example, a system bus
or signal line 314 or other communication mechanisms can provide communication between the
processing device(s) 300, the memory 302, the I/O device(s) 304, the sensor(s) 306, the power
source 308, the network communications interface 310, and/or the health monitoring system 312.

10

MASA00086849

Attorney Docket No. P22879US1

The one or more processing devices 300 can be implemented as any electronic device capable of processing, receiving, or transmitting data or instructions.  For example, the processing device(s) 200 can each be a microprocessor, a central processing unit (CPU), an application-specific integrated circuit (ASIC), a digital signal processor (DSP), or combinations of such devices.  As described herein, the term "processing device" is meant to encompass a single processor or processing unit, multiple processors, multiple processing units, or other suitably configured computing element or elements.

[0031]   The memory 302 can store electronic data that can be used by the electronic device 100.  For example, a memory can store electrical data or content such as, for example, audio and video files, documents and applications, device settings and user preferences, timing and control signals or data for the health monitoring system 312, data structures or databases, and so on.  The memory 302 can be configured as any type of memory.  By way of example only, the memory can be implemented as random access memory, read-only memory, Flash memory, removable memory, or other types of storage elements, or combinations of such devices.

[0032]   The one or more I/O devices 304 can transmit and/or receive data to and from a user or another electronic device.  One example of an I/O device is button 106 in FIG. 1.  The I/O device(s) 304 can include a display, a touch sensing input surface such as a track pad, one or more buttons, one or more microphones or speakers, one or more ports such as a microphone port, and/or a keyboard.

[0033]   The electronic device 100 may also include one or more sensors 306 positioned substantially anywhere on the electronic device 100.  The sensor or sensors 306 may be configured to sense substantially any type of characteristic, such as but not limited to, images, pressure, light, touch, heat, position, motion, and so on.  For example, the sensor(s) 308 may be an image sensor, a heat sensor, a light or optical sensor, a pressure transducer, a magnet, a gyroscope, an accelerometer, and so on.

[0034]   The power source 308 can be implemented with any device capable of providing energy to the electronic device 100.  For example, the power source 308 can be one or more

11

MASA00086850

Attorney Docket No. P22879US1

batteries or rechargeable batteries, or a connection cable that connects the remote control device
to another power source such as a wall outlet.

[0035]  The network communication interface 310 can facilitate transmission of data to or
from other electronic devices.  For example, a network communication interface can transmit
electronic signals via a wireless and/or wired network connection.  Examples of wireless and
wired network connections include, but are not limited to, cellular, Wi-Fi, Bluetooth, IR, and
Ethernet.

[0036]  The health monitoring system 312 can include the light sources 202, one or more
optical sensors 204, and a processing device 316.  The processing device 316 may be any
suitable type of processing device.  In one embodiment, the processing device 316 is a digital
signal processor.  The processing device 316 may receive signals from the optical sensor(s) 204
and processes the signals to correlate the signal values with a physiological parameter of the
user.  As one example, the processing device can apply one or more demodulation operations to
the signals received from the optical sensor.  Additionally, the processing device may control the
modulation (e.g., turning on and off) of the light sources 202 according to a given modulation
pattern.  In one embodiment, one or more modulation patterns may be stored in memory 302 and
accessed by the processing device 316 to modulate the light sources 202.

[0037]  As discussed earlier, the light sources can emit light in the visible and/or infrared
wavelength ranges.  The optical sensor or sensors 204 is implemented as a photodetector that
senses light and converts the light into an electrical signal that represents the amount of light
sensed by the photodetector.  In one embodiment, the photodetector can be a photodiode.  Other
embodiments can use a different type of photodetector, such as a phototube or photoresistor.

[0038]  In another embodiment, the processing device 316 is not included in the health
monitoring system 312 and the processing device 300 receives signals from the optical sensor(s)
204 and processes the signals to correlate the signal values with a physiological parameter of the
user.  Additionally or alternatively, the processing device 300 can control the operations of the
light sources (e.g., turn on and off).  One or more modulation patterns may be stored in memory
302 and accessed by the processing device 300 to modulate the light sources 202.

-908-
MASA00086851

                                                                      Attorney Docket No. P22879US1

[0039] It should be noted that FIGS. 1-3 are illustrative only. In other examples, an electronic device may include fewer or more components than those shown in FIG. 3. Additionally or alternatively, the electronic device can be included in a system and one or more components shown in FIG. 3 are separate from the electronic device but in communication with the electronic device. For example, an electronic device may be operatively connected to, or in communication with a separate display. As another example, one or more applications or data can be stored in a memory separate from the electronic device. As another example, a processing device in communication with the electronic device can control various functions in the electronic device and/or process data received from the electronic device. In some embodiments, the separate memory and/or processing device can be in a cloud-based system or in an associated monitoring device.

[0040] Referring now to FIG. 4, there is shown a flowchart of one example method of operating the health monitoring system 312 in FIG. 3. Initially, a light source is turned on to illuminate the user's skin and the optical sensor senses an amount of reflected or transmitted light (blocks 400, 402). A determination can then be made at block 404 as to whether or not another light source is to be turned on. For example, in one embodiment, the light sources are turned on sequentially and the optical sensor senses the light multiple times while each light source is turned on.

[0041] If another light source is to be turned on, the process passes to block 406 where the light source that is currently turned on is turned off. The method then returns to block 400 and repeats until all of the light sources have been turned on and the optical sensor has obtained light samples.

[0042] When a determination is made at block 404 that all of the light sources have been turned on, the process continues at block 408 where the signal received from the optical sensor is digitized by inputting the signal into an analog-to-digital converter. The digitized signal is then demodulated at block 410. Demodulating the signal produces multiple demodulated signals, with a demodulated signal associated with each light source. Each demodulated signal is then received and processed by a low pass filter and a decimation circuit (block 412).

13

MASA00086852

[0043] The signals may then be analyzed at block 414 to determine or estimate a physiological parameter of the user.  As described earlier, in one embodiment the signals can be analyzed to determine a heart rate of the user.  As one example, the processing device 316 can analyze the signals to estimate a physiological parameter of the user.  In another example, the processing device 300 can analyze the signals to determine a physiological parameter of the user.  And in yet another example, both processing devices 300, 316 can perform various steps in the analysis to estimate a physiological parameter of the user.

[0044] In other embodiments, the light source need not be turned off or on entirely.  Instead, certain embodiments may modulate the brightness of the light source in place of or in addition to the turning of lights on and off. In some embodiments, certain light sources may be turned on and off while other light sources are alternately dimmed and brightened.

[0045] FIGS. 5-6 depict example modulation patterns suitable for use in blocks 400 and 402 in FIG. 4.  FIGS. 5 and 6 are described with reference to a health monitoring system that includes four light sources. As described earlier, other embodiments can include fewer or more light sources.  The embodiments described hereinafter are described with reference to a thirty sample modulation cycle operating at 4096 hertz.  This is provided by way of example and is not required.  Other modulation cycle frequencies and/or sampling frequencies may be selected.  For example, the modulation cycle frequencies may range, as a non-limiting example, from one hundred hertz to several hundred kilohertz.

[0046] In many examples, the modulation cycle frequency and the sampling frequency may be interrelated.  For example, certain embodiments may be limited by hardware or software to a particular maximum sampling frequency.  In such an example, the modulation cycle frequency may be selected such that the transmitted signal can be adequately reconstructed.  In some cases, the modulation cycle may be less than half the sampling rate.  Stated another way, if a certain embodiment requires a particular bandwidth, the sampling frequency may be at least twice the selected maximum frequency of the selected bandwidth.

[0047] Other embodiments can obtain a different number of samples and/or operate at a different frequency.  The frequency may be determined based on a number of factors, one of

14

MASA00086853

Attorney Docket No. P22879US1

which is the harmonics of the electrical network or grid.  For example, when an electrical network produces a signal at 60 Hz, the harmonics are multiples of 60 (e.g., 120 Hz, 180 Hz, 240 Hz, etc.).  Also, some electrical networks produce a signal at 50 Hz, and the harmonics of multiples of 50 Hz (e.g., 100 Hz, 150 Hz, 200 Hz, etc.).

[0048]  Additionally, some electrical networks can be less reliable at generating a signal with a specific frequency, and the frequency may vary by a certain amount or deviation (e.g., a frequency of 60 Hz may operate at 60+/- 1% Hz).  And the deviation increases with each harmonic.  Thus, in one embodiment, the frequency of the modulation cycle is selected to be in a harmonic gap that exists between the various harmonics and harmonic deviations of at least one electrical network.

[0049]  The illustrated modulation patterns are time-multiplexed modulation patterns that drive the light sources.  The time periods when the light sources are turned on and off are multiplexed in time.  In FIG. 5, the first light source is turned on for the time period 500.  The other three light sources are turned off during the time period 500.  An optical sensor captures a light sample multiple times 502 during the time period 500.  In the illustrated embodiment, the optical sensor obtains five light samples 502.  The first light source is then turned off and the optical sensor captures the light at time 504.  A light sample obtained when all of the light sources are turned off is known as a dark sample.

[0050]  The second light source is then turned on for the time period 506.  Again, the other three light sources are turned off during the time period 506.  The optical sensor captures multiple light samples 508 during the time period 506.  In the illustrated embodiment, the optical sensor obtains five samples 508.  The second light source is then turned off and the optical sensor captures a dark sample at time 510.

[0051]  Similarly, only the third light source is turned on for the time period 512, and the optical sensor senses an amount of light multiple times 514 (e.g., five times) during the time period 512.  The third light source is then turned off and the optical sensor captures a dark sample at time 516.

15

MASA00086854

Attorney Docket No. P22879US1

[0052]  The fourth light source is then turned on for the time period 518, and the optical sensor obtains multiple light samples 520 (e.g., five times) during the time period 518.  The fourth light source is then turned off and the optical sensor captures multiple dark samples 522.  In the illustrated embodiment, the optical sensor obtains seven dark samples 522.  Thus, the optical sensor captures thirty samples during one modulation cycle 524.  The modulation cycles can repeat a given number of times when estimating a physiological parameter.   As described earlier, the modulation cycle can have a frequency of 4096 Hz in one embodiment.

[0053]  The modulation pattern in FIG. 6 is similar to the modulation pattern in FIG. 5 except that the optical sensor does not capture dark samples in between the time periods when a light source is turned on.  In other words, the optical sensor does not sense dark samples at times 504, 510, and 516.  The light sensor obtains multiple dark samples 600 after the time period 518 has ended (after the fourth light source is turned off).   In the illustrated embodiment, the light sensor captures ten dark samples 600.  Like the FIG. 5 embodiment, the optical sensor obtains thirty samples during one modulation cycle 602.

[0054]  The analog signal produced by the optical sensor includes information associated with all four light sources.  Thus, in one embodiment, the analog signal is demodulated by a single optical sensor to produce four signals.  In some cases, each signal is associated with a specific light source. In other examples, two optical sensors may be used to generate eight signals associated with the four light sources. In some cases, the two optical sensors may be physically separated so as to measure light associated with the four light sources from different points along the user's skin.  In other embodiments, more than two optical sensors may be used.

[0055]  FIG. 7 is a data flow diagram of an illustrative processing channel that performs blocks 408, 410, and 412 in FIG. 4.  The analog signal received from the optical sensor on signal line 700 is converted to a digital signal by analog-to-digital converter 702 in the processing channel 704.  The digital signal is then received by the mixer circuit 706.  The mixer circuit 706 also receives one or more demodulation operations 708.  In general, the demodulation operation can be $\sin 2\pi \frac{kt}{N}$ or $\cos 2\pi \frac{kt}{N}$, where k is defined by $1 \le k \le n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.  The number of demodulation operations input into the mixer circuit 704 may be based on the number of light sources.  In one

16

MASA00086855

Attorney Docket No. P22879US1

embodiment, each harmonic of the signal received from the optical sensor has two orthogonal components. Thus, in some cases, the number of harmonics may depend upon the number of channels multiplexed and de-multiplexed. As one example, when the health monitoring system includes two light sources, the demodulation operations can be $\sin 2\pi/N$ or $\cos 2\pi/N$ for the first harmonic frequency. Two signals will be produced after both demodulation operations have been applied to the digital signal by mixer circuit 706. When the health monitoring system has four light sources, the demodulation operation can be $\sin 2\pi/N$ or $\cos 2\pi/N$ for the first harmonic frequency, and $\sin 4\pi/N$ or $\cos 4\pi/N$ for the second harmonic frequency. Four signals will be produced after the four demodulation operations have been applied to the digital signal by mixer circuit 706.

[0056] The signal output by the mixer circuit 706 is received by a low pass filter 710 and a decimation circuit 712. The low pass filter 710 and the decimation circuit 712 form a first decimation stage. Embodiments can include any number of decimation stages K. The number of decimation stages K can be based on the frequency of the sampling cycle of the optical sensor and the frequency of the physiological parameter. For example, in the embodiments shown in FIGS. 5 and 6, thirty samples are obtained by the optical sensor. When the frequency of the physiological parameter is approximately ten hertz and the frequency of the thirty sample cycle is 4096 hertz, six decimation stages are used with each stage reducing the frequency of the signal by two.

[0057] After the signal is processed by the low pass filter 714 and decimation circuit 716 in the last decimation stage K, each signal is received by a demultiplexer and multiplier circuit 718. The demultiplexer separates the signals by associated light source. Thus, the signal associated with the first light source is separated from the signals associated with the other light sources, and so on for each signal. The multiplier circuit then multiplies each signal by respective weights or values. As one example, the values can be stored in a matrix, and each signal is multiplied by the values in a respective row in the matrix.

[0058] The values in the matrix are a function of the dynamics and components of the health monitoring system. The operations of the components such as the optical sensor, the filters (e.g., high pass filters, low pass filters), the operational amplifiers, and the like, change

17

MASA00086856

Attorney Docket No. P22879US1

over time due to temperature and other factors.  The values in the matrix adjust the signals for these changes.  One method for determining the values in the matrix is described in conjunction with FIG. 8.

[0059]  The signals output on signal line 720 represent the signals received from the user's tissue, and these signals can be analyzed to determine or measure the physiological parameter.  As one example, these signals can be analyzed to determine the heart rate of the user.

[0060]  FIG. 8 is a flowchart of one example method of determining the values in a matrix used in block 718 of FIG. 7.  Initially, the values in the matrix are determined at block 800.  FIG. 9 is a flowchart of one example method of performing block 800.  In block 900, a single light source is turned on for a given period of time.  The signal produced by the optical sensor is then processed to obtain some of the matrix values.  For example, when the health monitoring system includes four light sources, s signal value or amplitude associated with each light source will be output by the decimation circuit 716.  Thus, four signal values will be output by the decimation circuit 716 based on the single light source emitting light toward the user's skin.  These four signal values are included in one row in the matrix.

[0061]  Returning to FIG. 9, a determination is then made at block 904 as to whether or not all of the light sources have been individually turned on.  If not, the process passes to block 906 where the light source that is currently turned on is turned off.  The method then returns to block 900 where another single light source is turned on and the signal produced by the optical sensor processed to obtain matrix values for another row in the matrix.  The method in FIG. 9 repeats until all of the light sources have been turned on and all of the values determined for the matrix.  For four light sources, the values in the matrix are as follows:

[0062]  Returning to FIG. 8, after the matrix values are determined at block 800 the matrix values can be verified at block 802.  FIG. 10 is a flowchart of one example method of performing block 802.  Initially, all of the light sources except one are turned on for a given period of time (block 1000).  The signal produced by the optical sensor is then processed based on the data flow diagram shown in FIG. 7.  As described earlier, the demultiplexer and multiplier circuit 718 outputs signals that are associated with each light source in the health monitoring

18

MASA00086857

system.  The signal value associated with the light source that is turned off should have a value that is substantially zero, while the signal values associated with the light sources that are turned on should be greater than zero.

[0063]  Returning to FIG. 10, a determination is made at block 1004 as to whether or not the signal value associated with the light source that is turned off equals zero.  If not, the method passes to block 1006 where the matrix values in the matrix are recalculated.  Thus, the method shown in FIG. 9 may be repeated and the method shown in FIG. 10 repeated until it is determined at block 1004 that the signal value associated with each light source equals zero when the respective light source is turned off and the other light sources are turned on.

[0064]  If the signal value equals zero, the process continues at block 1008 where a determination is made as to whether or not all of the light sources have been turned off while the other light sources are turned on.  If not, the method passes to block 1010 where the light sources that are currently turned on are turned off.  The method then returns to block 1000 where all light sources except another single light source is turned on.  The method in FIG. 10 repeats until all of the light sources have been turned off while the other light sources are turned on and the signal value output from the demultiplexer and multiplier circuit 718 associated with each light source equals zero when the respective light source is turned off and the other light sources are turned on.

[0065]  Returning to FIG. 8, if the matrix values are not verified at block 804, the method returns to block 800 as described earlier.  If the matrix values are verified at block 804, the process continues at block 806 where the matrix is applied in the demultiplexer and multiplier circuit 718 in FIG. 7.  A determination may then be made at block 808 as to whether or not the matrix values are to be recalculated.  As one example, the matrix values can be recalculated after a given period of time has passed.  Additionally or alternatively, the matrix values may be recalculated each time a user activates the heath monitoring system.  The process waits at block 808 if the matrix values are not recalculated.  If the matrix values are to be recalculated, the method returns to block 800.

-915-
MASA00086858

Attorney Docket No. P22879US1

[0066] Various embodiments have been described in detail with particular reference to certain features thereof, but it will be understood that variations and modifications can be effected within the spirit and scope of the disclosure.  For example, as described earlier, a health monitoring system can include a different number of light sources (e.g., two or six). Additionally or alternatively, a health monitoring system can be included in, or connected to a different type of electronic device.

[0067] Even though specific embodiments have been described herein, it should be noted that the application is not limited to these embodiments. In particular, any features described with respect to one embodiment may also be used in other embodiments, where compatible. Likewise, the features of the different embodiments may be exchanged, where compatible.

-916-
MASA00086859

Attorney Docket No. P22879US1

## CLAIMS

What is claimed is:

1.      An electronic device, comprising:

two or more light sources for emitting light toward a body part of a user;

an optical sensor for obtaining light and dark samples and converting the samples into a signal;

a processing device operably connected to the optical sensor for demodulating the signal received from the optical sensor into a demodulated signal associated with each light source; and

at least one decimation stage for processing each demodulated signal, wherein each decimation stage comprises a low pass filter for receiving the demodulated signals and a decimation circuit operably connected to an output of the low pass filter.

2.      The electronic device as in claim 1, further comprising a demultiplexer and multiplier circuit operably connected to an output of the last decimation stage, wherein the demultiplexer separates the signals by each associated light source and the multiplier multiplies each signal by one or more respective weights.

3.      The electronic device as in claim 1, wherein the electronic device is a wearable communication device.

4.      A method for processing a signal obtained when light from one or more light sources is emitted toward a body part of a user, the method comprising:

capturing multiple light samples while each light source emits light toward the body part of the user and converting the multiple light samples into the signal;

demodulating the signal to produce multiple demodulated signals;

filtering and decimating each demodulated signal at least once to produce a signal associated with each light source.

5.      The method as in claim 4, further comprising analyzing each signal associated with each light source to estimate a physiological parameter of the user.

21

MASA00086860

6.      The method as in claim 4, wherein capturing multiple light samples while each light source emits light toward the body part of the user comprises:

a) capturing multiple light samples when each light source is turned on and the other light sources are turned off; and

capturing multiple dark samples after all four light sources have been turned on and turned off.

7.      The method as in claim 5, wherein capturing multiple light samples when a respective light source is turned on and the other light sources are turned off comprises capturing five light samples when a respective light source is turned on and the other light sources are turned off.

8.      The method as in claim 7, wherein capturing multiple dark samples after all of the light sources have been turned on and turned off comprises capturing ten dark samples after all of the light sources have been turned on and turned off.

9.      The method as in claim 6, further comprising capturing one or more dark samples after one light source is turned off and before the next light source is turned on.

10.      The method as in claim 9, wherein capturing one or more dark samples after one light source is turned off and before the next light source is turned on comprises capturing one dark sample after one light source is turned off and before the next light source is turned on.

11.      The method as in claim 10, wherein capturing multiple light samples when a respective light source is turned on and the other light sources are turned off comprises capturing five light samples when a respective light source is turned on and the other light sources are turned off.

12.      The method as in claim 11, wherein capturing multiple dark samples after all of the light sources have been turned on and turned off comprises capturing seven dark samples after all of the light sources have been turned on and turned off.

22

MASA00086861

Attorney Docket No. P22879US1

13.     The method as in claim 4, wherein demodulating the signal to produce multiple demodulated signals comprises applying a first demodulation operation of $\sin 2\pi \frac{kt}{N}$ to the signal and applying a second demodulation operation of $\cos 2\pi \frac{kt}{N}$ to the signal, where k is defined by $1 \leq k \leq n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.

14.     The method as in claim 4, wherein filtering and decimating each demodulated signal at least once to produce a signal associated with each light source comprises inputting each demodulated signal into one or more low pass filter and decimation stages, wherein each low pass filter and decimation stage comprises a low pass filter for receiving a demodulated signal and a decimation circuit operably connected to an output of the low pass filter.

15.     A method for operating an electronic device that includes multiple light sources, an optical sensor, and a processing device operably connected to the optical sensor, the method comprising:

    turning on each light source one at a time and emitting light toward a body part of a user;

    capturing multiple light samples while each light source emits light toward the body part of the user and converting the multiple light samples into a signal;

    converting the signal into a digital signal;

    demodulating the digital signal to produce multiple demodulated signals; and

    filtering and decimating each demodulated signal at least once to produce a signal associated with each light source.

16.     The method as in claim 15, further comprising analyzing each signal associated with each light source to estimate a physiological parameter of the user.

17.     The method as in claim 15, wherein capturing multiple light samples while each light source emits light toward the body part of the user comprises:

23

MASA00086862

Attorney Docket No. P22879US1

capturing multiple light samples while each light source is turned on and the other light sources are turned off; and

capturing multiple dark samples after all four light sources have been turned on and turned off.

18.    The method as in claim 17, further comprising capturing one or more dark samples after one light source is turned off and before the next light source is turned on.

19.    The method as in claim 17, wherein demodulating the digital signal to produce multiple demodulated signals comprises applying a first demodulation operation of $\sin 2\pi \frac{kt}{N}$ to the digital signal and applying a second demodulation operation of $\cos 2\pi \frac{kt}{N}$ to the digital signal, where k is defined by $1 \leq k \leq n/2$, N represents the number of samples obtained by the optical sensor, and t = 0, 1, …, N-1.

20.    The method as in claim 17, wherein filtering and decimating each demodulated signal at least once to produce a signal associated with each light source comprises inputting each demodulated signal into one or more low pass filter and decimation stages, wherein each low pass filter and decimation stage comprises a low pass filter for receiving a demodulated signal and a decimation circuit operably connected to an output of the low pass filter.

-920-

MASA00086863

Attorney Docket No. P22879US1

# ABSTRACT

An electronic device includes one or more light sources for emitting light toward a body part of a user and one or more optical sensors for capturing light samples while each light source is turned on and for capturing dark samples while the light source(s) are turned off.  A signal produced by the one or more optical sensors is demodulated produce multiple demodulated signals.  Each demodulated signal is received by one or more decimation stages to produce a signal associated with each light source.  Each signal associated with the light source(s) is analyzed to estimate or determine a physiological parameter of the user.

25

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*1/9*



**FIG. 1**

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*2/9*



*FIG. 2*

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*3/9*



*FIG. 3*

MASA00086867

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*4/9*



*FIG. 4*

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*5/9*



*FIG. 5*



*FIG. 6*

MASA00086869

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

6/9



FIG. 7

MASA00086870

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*7/9*



*FIG. 8*

MASA00086871

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

*8/9*



*FIG. 9*

MASA00086872

Title: Modulation And Demodulation Techniques For A Health Monitoring System
Application No. Not Yet Assigned; Filed: Herewith
Inventor(s): Lamego
Docket No. P22879US1

## 9/9



**FIG. 10**

MASA00086873

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | Modulation and Demodulation Techniques for a Health Monitoring System |
| **First Named Inventor/Applicant Name:** | Marcelo M. Lamego |
| **Filer:** | Stephen C. Hemenway/Valerie Brown |
| **Attorney Docket Number:** | P22879US1 |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility application filing | 1011 | 1 | 280 | 280 |
| Utility Search Fee | 1111 | 1 | 600 | 600 |
| Utility Examination Fee | 1311 | 1 | 720 | 720 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

MASA00086874

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1600** |

MASA00086875

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21490561 |
| **Application Number:** | 14621268 |
| **International Application Number:** | |
| **Confirmation Number:** | 6317 |
| **Title of Invention:** | Modulation and Demodulation Techniques for a Health Monitoring System |
| **First Named Inventor/Applicant Name:** | Marcelo M. Lamego |
| **Customer Number:** | 62579 |
| **Filer:** | Stephen C. Hemenway/Valerie Brown |
| **Filer Authorized By:** | Stephen C. Hemenway |
| **Attorney Docket Number:** | P22879US1 |
| **Receipt Date:** | 12-FEB-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 19:45:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1600 |
| RAM confirmation Number | 5895 |
| Deposit Account | 504621 |
| Authorized User | BROWN, VALERIE |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

MASA00086876

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | P22879US1ApplicationTransmittal.pdf | 173231 697c9757ff79dd2b419203f6da8b791e041cf566 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Application Data Sheet | P22879US1ApplicationDataSheet.pdf | 95973 7398d6c170192c1f102ffc8b3e74e51c4a788f73 | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied ADS fillable form | | | | | |
| 3 | Oath or Declaration filed | P22879US1SubstituteStatement.pdf | 232827 5149ed05f87086d11689d6f98422dfdd12cfc58f | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Power of Attorney | P22879US1TransmittalOfPower.pdf | 99488 38e9de489b3e69a00dfb277ce1c23fa299c08a6b1 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Power of Attorney | P22879US1PowerOfAttorney.pdf | 321013 656db9578932f46dcbfe95cac91a2248a1dae82e | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Nonpublication request from applicant. | P22879US1NonpublicationRequest.pdf | 124082 c42d8609b8acd3cd61ad836352609cf8018f162 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 7 | | P22879US1Specification.pdf | 117248 338ec18c1c2cb7b6eeab68565cbc340256b09187 | yes | 25 |
| | **Multipart Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | | **End** |

MASA00086877

| | | | | 1 | 20 |
| --- | --- | --- | --- | --- | --- |
| | Specification | | | 1 | 20 |
| | Claims | | | 21 | 24 |
| | Abstract | | | 25 | 25 |

| **Warnings:** | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Information:** | | | | | |
| 8 | Drawings-only black and white line drawings | P22879US1Drawings.pdf | 94390 f6020e8da87981a2db0c832ac78c3395a72 a07d0 | no | 9 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Fee Worksheet (SB06) | fee-info.pdf | 34885 b275a91090f027fd7c7a7a1225c4619502b9 c410 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 1293137 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MASA00086878

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21490561 |
| **Application Number:** | 14621268 |
| **International Application Number:** | |
| **Confirmation Number:** | 6317 |
| **Title of Invention:** | Modulation and Demodulation Techniques for a Health Monitoring System |
| **First Named Inventor/Applicant Name:** | Marcelo M. Lamego |
| **Customer Number:** | 62579 |
| **Filer:** | Stephen C. Hemenway/Valerie Brown |
| **Filer Authorized By:** | Stephen C. Hemenway |
| **Attorney Docket Number:** | P22879US1 |
| **Receipt Date:** | 12-FEB-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 19:45:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 1600 |
| RAM confirmation Number | 5895 |
| Deposit Account | 504621 |
| Authorized User | BROWN, VALERIE |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

MASA00086879

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | P22879US1ApplicationTransmittal.pdf | 173231<br>697c9757ff79dd2b41920 3f6da8b791e041c f566 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Application Data Sheet | P22879US1ApplicationDataSheet.pdf | 95973<br>7398d6c170192c1f102ffc8b3e74e51c4a78 8f73 | no | 7 |
| Warnings: | | | | | |
| Information: | | | | | |
| This is not an USPTO supplied ADS fillable form | | | | | |
| 3 | Oath or Declaration filed | P22879US1SubstituteStatement.pdf | 232827<br>5149ed05f87086d11689d6f9842dfdd12cf c58f | no | 3 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | Power of Attorney | P22879US1TransmittalOfPower.pdf | 99488<br>38e9de489b3e69a00dfb277ce1c23fa299c0 8a6b1 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 5 | Power of Attorney | P22879US1PowerOfAttorney.pdf | 321013<br>656db9578932f46cdbfe95cac91a2248a1da e82e | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 6 | Nonpublication request from applicant. | P22879US1NonpublicationRequest.pdf | 124082<br>c42d8609b8ac0d3cd61ad836352609cf801 8f162 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 7 | | P22879US1Specification.pdf | 117248<br>338ec18c1c2cb7b6eeab68565cbc340256b 09187 | yes | 25 |
| Multipart Description/PDF files in .zip description | | | | | |
| Document Description | | | Start | | End |

MASA00086880

| | | | | |
|---|---|---|---|---|
| | Specification | | 1 | 20 |
| | Claims | | 21 | 24 |
| | Abstract | | 25 | 25 |

**Warnings:**

**Information:**

| 8 | Drawings-only black and white line drawings | P22879US1Drawings.pdf | 94390<br><br>f6020e8da87981a2db0c832ac78c3395a72a07d0 | no | 9 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 9 | Fee Worksheet (SB06) | fee-info.pdf | 34885<br><br>b275a91090f027fd7c7a7a1225c4619502b9c410 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 1293137 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MASA00086881