1   MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2   THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5   Tel.: 650.858.6000 / Fax: 650.858.6100

6   JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   One Front Street, Suite 3500
    San Francisco, CA 94111
9   Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
      HALE AND DORR LLP
12  1875 Pennsylvania Ave NW
    Washington, DC 20006
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16          **UNITED STATES DISTRICT COURT**
17   **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18  MASIMO CORPORATION,                      CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
19  CERCACOR LABORATORIES, INC.,             **APPLE'S CORRECTED**
20  a Delaware corporation,                  **MEMORANDUM IN SUPPORT OF**
                                             **ITS MOTION FOR PARTIAL**
21              Plaintiffs,                  **SUMMARY JUDGMENT ON**
                                             **PLAINTIFFS' TRADE SECRET**
22          v.                               **CLAIM AND PLAINTIFFS' LOST**
                                             **PROFITS DAMAGES THEORY**
23  APPLE INC.,
    a California corporation,                Date: February 6, 2023
24                                           Time: 1:30pm
                Defendant.
25
                                             Pre-Trial Conference: Mar. 13, 2023
26                                           Trial: Mar. 27, 2023

27  REDACTED VERSION OF THE DOCUMENT PROPOSED TO BE FILED UNDER SEAL

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2

3

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION & UNDISPUTED FACTUAL BACKGROUND ........................... 1

ARGUMENT ...................................................................................................... 3

I.     Plaintiffs Have Not Established That They Possessed Or Owned Any Of The Alleged Trade Secrets ...................................................................... 3

     A.     Plaintiffs Have Not Established That Either Masimo Or Cercacor Possessed The Purported Trade Secrets ......................................... 3

     B.     Plaintiffs Have Not Established Which Entity Had Possession Of Or Owned Each Alleged Trade Secret ....................................... 11

II.    Plaintiffs' Purported Trade Secrets Claim General Ideas ................. 13

     A.     Plaintiffs' ▮▮▮▮▮▮ Trade Secrets Nos. 5 and 7-8 .......................... 14

     B.     Plaintiffs' "Value, Importance, And Appropriateness" Trade Secrets ................................................................................ 18

III.   Apple Should Be Granted Summary Judgment On Plaintiffs' Lost Profits Theory If Mr. Kinrich's Lost Profits Opinions Are Excluded .......................... 21

CONCLUSION .................................................................................................. 21

Wilmer Cutler Pickering Hale and Dorr LLP

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Advanced Fluid Sys., Inc. v. Huber*,
   958 F.3d 168 (3d Cir. 2020) ............................................................................3

*Agency Solutions.Com*, *LLC*, *v. TriZetto Grp., Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011)....................................................16, 17

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   28 Cal. App. 5th 923 (2018)......................................................................2, 12

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
   2011 WL 2116989 (D. Haw. May 25, 2011) ...................................................3

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   2020 WL 1279236 (C.D. Cal. Jan. 16, 2020)................................................21

*DTM Research, L.L.C. v. AT&T Corp.*,
   245 F.3d 327 (4th Cir. 2001) ........................................................................12

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*,
   2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ..............................................15

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998).................................................................15, 19

*Inteliclear, LLC v. ETC Global Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020).................................................................15, 19

*Jasmine Networks, Inc. v. Superior Court*,
   180 Cal. App. 4th 980 (2009).................................................................12, 13

*Mattel, Inc. v. MGA Ent., Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011).........................................................12

*nSight, Inc. v. PeopleSoft, Inc.*,
   296 F. App'x 555 (9th Cir. 2008).................................................................15

*Olaplex Inc. v. Loreal USA Inc.*,
   855 F. App'x. 701 (Fed. Cir. 2021)..............................................................15

Wilmer Cutler
Pickering Hale
and Dorr LLP

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
    884 F.3d 812 (9th Cir. 2018) ........................................................................... 12

*Sargent Fletcher, Inc. v. Able Corp.*,
    110 Cal. App. 4th 1658 (2003) ...................................................................... 12

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) ........................................................................ 13

*Tang v. E. Virginia Med. Sch.*,
    2022 WL 981942 (E.D. Va. Mar. 30, 2022) ................................................... 3

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
    966 F.3d 46 (1st Cir. 2020) ........................................................................... 14

*Tracer Research Corp. v. National Environmental Serv. Co.*,
    843 F. Supp. 568 (D. Ariz. 1993) .................................................................. 17

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ............................................... 14

*Winston Rsch. Corp. v. Minnesota Min. & Mfg. Co.*,
    350 F.2d 134 (9th Cir. 1965) ......................................................................... 17

*X6D Limited v. Li-Tek Corps. Co.*,
    2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) ............................................. 19

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    2013 WL 867640 (D. Del. Mar. 8, 2013) ............................................... 13, 17

## STATUTES, RULES, AND REGULATIONS

Cal. Civ. Code § 3426.1(d)(1) ................................................................................. 13

FRCP 26(a)(2)(C) ....................................................................................................... 2

FRCP 37(c)(1) ............................................................................................................. 2

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

## INTRODUCTION & UNDISPUTED FACTUAL BACKGROUND[1]

2

After three years, more than a hundred hours of depositions, and millions of

3

pages of discovery, Plaintiffs have failed to put forth meaningful evidence to support

4

numerous aspects of their affirmative trade secret case.

5

*First*, although Plaintiffs have conceded that they must show possession of the

6

alleged trade secrets to prevail, Plaintiffs have not presented evidence that the alleged

7

trade secrets were actually in their hands at the time of Apple's purported

8

misappropriation.  *See* SUF 1-11 (no evidence of possession ███████████████

9

███████████  Trade Secret Nos. 1, 3, 8-16); SUF 12-16 (███████  Trade Secret

10

Nos. 4-5, 7-8, 10); SUF 17-21 (███████████  Trade Secret Nos. 4-6); SUF 22-33

11

(███████████  Trade Secret Nos. 1-4, 6-8); SUF 34-38 (██████████████

12

Trade Secret Nos. 5-7).[2]  For example, Plaintiffs have not identified a single pre-

13

litigation document that clearly describes any of the purported trade secrets as

14

Plaintiffs have defined them.  SUF 1-38.  If anything, it appears that Plaintiffs copied a

15

number of the ██████████████ and ██████████  Trade Secrets

16

from Apple's patents—rather than the other way around.  ████████████████

17

████████████████████████████████████

18

████████████████████████████████████

19

████████████████████████

20

*Second*, beyond an untimely supplemental interrogatory response, Plaintiffs

21

have made no attempt to (1) identify *which* entity possessed *which* purported trade

22

secret or (2) establish that Plaintiffs *owned* (as opposed to possessed) the trade secrets

23

at issue, even though California state law requires Plaintiffs to prove they "owned the

24

_____

25

[1] This memorandum has been corrected (i.e., shortened) to comply with the word limit

26

set by new Local Rule 11-6.1.  Nothing of substance has been added.

27

[2] This Court dismissed four alleged secrets and Plaintiffs have abandoned fourteen

more.  SUF 123-128.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

trade secret," *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018); *see* SUF 39-96.  Even if the woefully untimely supplemental response is not struck, it cites nothing more than attorney argument and a trio of broadly worded licensing agreements that do not apply to this case.  *Infra* pp. 11-13.

Third, at a minimum, Plaintiffs have not met their burden to describe with reasonable particularity either (1) ███████ Trade Secret Nos. 5 and 7-8 or (2) five purported trade secrets that claim the "value, importance, and appropriateness" of other alleged trade secrets.  SUF 97-117.  As this Court recently instructed in the *True Wearables* litigation, "'[i]deas or concepts are not, in and of themselves, trade secrets.'"  *Masimo Corp. v. True Wearables, Inc.*, 8:18-cv-02001-JVS-JDE (C.D. Cal. Nov. 7, 2022), Dkt. No. 600, ¶ 99 ("True Wearables Op.").  ████████ Trade Secret Nos. 5 and 7-8 all claim general ideas, ██████████████████████████████ ████████████████████████████ SUF 97-102.  And the "value, importance, and appropriateness" trade secrets are nebulous.  Plaintiffs' experts do not discuss them in detail, and Plaintiffs have presented no evidence shedding light on what kind of "value," "importance," or "appropriateness" is claimed.  SUF 103-117.

*Finally*, Plaintiffs should be barred from pursuing their claim for lost profits damages.  Now that this Court has barred two of Plaintiffs' purported FRCP 26(a)(2)(C) experts from offering opinions ████████████████████ ████████████████████████████████████████ ████████, Dkt. 1031, Plaintiffs' lost profits case turns exclusively on the testimony of their expert Mr. Kinrich, SUF 122.  But as Apple will explain in its forthcoming *Daubert*/FRCP 37(c)(1) motion to exclude, the lost profits portions of Mr. Kinrich's opinions are based on the same untimely disclosed analyses this Court already struck.

Wilmer Cutler
Pickering Hale
and Dorr LLP

# ARGUMENT

**I.   PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY POSSESSED OR OWNED ANY OF THE ALLEGED TRADE SECRETS**

### A.   Plaintiffs Have Not Established That Either Masimo Or Cercacor Possessed The Purported Trade Secrets

Plaintiffs have no evidence showing that they actually possessed the purported trade secrets they asserted in this litigation.  This failure of proof dooms their case, as Plaintiffs themselves have conceded that they must at least demonstrate possession of the purported trade secrets to meet their burden to establish a trade secret claim.  *See* Ex. 1 at 1.  As Plaintiffs' cited case law explains, a plaintiff must have an interest in the alleged trade secret to be harmed by the misappropriation; without at least possession, no such interest exists.  *Advanced Fluid Sys. Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020).  Here, because Plaintiffs cannot establish possession of their alleged trade secrets, they lack the kind of protectable interest that can give rise to liability.  *Tang v. E. Virginia Med. Sch.*, 2022 WL 981942, at *10 (E.D. Va. Mar. 30, 2022); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 2011 WL 2116989, at *21 (D. Haw. May 25, 2011).

██  █████████████████████

Plaintiffs assert that Apple misappropriated eleven purported trade secrets connected to the ███████████████████████████████████ ███████████████████████████████████████   ████████   Dkt. 296-1 ¶¶ 9-10.  As Apple's expert explained, however, Plaintiffs have failed to identify any document, testimony, or other evidence supporting their possession of the trade secrets they group under this category.  *See, e.g.*, Ex. 17 ¶¶ 23-25.

Take ████ Trade Secret No. 1, which is described as ████████████ ████████████████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1 ███████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████ Dkt.

3 296-1 ¶ 40.1.  Plaintiffs' expert opines that they █████████████████

4 ████████████████████████████████████ Ex. 15 ¶¶ 94, 128,

5 138.  But he █████████████████████████████████████████████

6 ███████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ██████████████████ Ex. 17 ¶¶ 66, 68.  For example, although the purported

9 trade secret speaks to █████████████████████████████████████

10 ████████████████████████████████████ the documents

11 Plaintiffs' expert relies on never combine those features.  *Id.* ¶ 71 (emphases added).

12 So too for the source code Plaintiffs cite, which contains ███████████████████

13 ███████████████████████████████████████████████████████████

14 ██████████████████ *Id.* ¶ 72 (emphases added).

15        As another example, ████ Trade Secret No. 10 (which appears to be copied

16 from ██████████████████████████████████████████

17 ███████████████████████████████████████████████████████████

18 █████████████████████████████████████████████████

19 █████████████████████████████████████████████████

20 ██████████████████████████████████████████

21        The same deficiencies infect Plaintiffs remaining ████ trade secrets.  For each,

22 their expert █████████████████████████████████████████████

23 █████████████████████████████████████████████████

24 ███████████████████████████████████████████

25 ███████████████████████████████████████████████████

26 ███████████████████████████████████████████████████

27 ████████████████████████████████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP



Nor could Plaintiffs' witnesses identify or describe the supposed ▮▮▮ trade secrets (or any others), instead stating they first saw the alleged secrets in documents prepared by Plaintiffs' lawyers for this litigation. *See* Ex. 10 at 33:25-34:22 (Kiani); Ex. 14 at 17:17-18:5, 18:11-19:7, 23:13-24:15, 24:23-25:12, 25:21-26:18, 27:16-28:20, 96:6-24, 97:6-99:8 (Diab); Ex. 12 at 41:9-19, 47:4-51:22 (Muhsin); Ex. 13 at 42:20-25 (W. Weber); Ex. 11 at 35:17-36:2, 38:2-41:18 (Smith); Ex. 28 at 81:18-87:4 (Madisetti); *see also* Ex. 17 ¶ 68.

Plaintiffs allege that they possessed five purported trade secrets related ▮▮▮

▮▮▮—*i.e.*, the long-known phenomenon of ▮▮▮

▮▮▮ Ex. 4 at 49; *see also* Dkt. 296-1 ¶ 41.  Plaintiffs primarily rely on internal documents showing that they ▮▮▮

▮▮▮ Ex. 4 at 49-55; *see also, e.g.*, Ex. 15 ¶ 443 (as to ▮ Trade Secret No. 4).

Plaintiffs have failed to identify any pre-litigation materials that describe the claimed secrets in their entirety.  For example, ▮▮▮ Trade Secret No. 4 claims

▮▮▮ Dkt. 296-1 ¶ 41.4.  But again, Plaintiffs' employees were unable ▮▮▮

▮▮▮ Ex. 19 ¶ 56.  For example, ▮▮▮

Wilmer Cutler
Pickering Hale
and Dorr LLP



Ex. 14 at 28:13-20, 96:6-15; *see also id.* at 17:17-18:5, 18:11-19:7, 23:13-24:15, 24:23-25:12, 26:3-18, 27:16-28:12, 96:16-24, 97:6-99:8.  Similarly, Mr. Muhsin conceded that

*See* Ex. 12 at 48:1-6; *see also id.* at 41:9-19, 47:4-25, 48:7-51:22.

Similarly, Plaintiffs' expert—who presumably has access to Plaintiffs' strongest documents supporting their position—has not

Ex. 19 ¶ 56.  As Apple's expert Dr. Steve Warren summarized, the documents Plaintiffs were able to identify

*Id.*  In particular, Plaintiffs have pointed to no evidence that they possessed or developed information relating to

Plaintiffs' showing on the remaining               trade secrets is similarly deficient.  They have not identified pre-litigation documents reciting those secrets, their witnesses could not identify or describe the secrets, and employees had not seen them in writing until materials were prepared by counsel for this litigation.  *See, e.g.*, Ex. 19 ¶¶ 138, 141-149 (No. 5); *id.* ¶¶ 233-243 (No. 7); *id.* ¶¶ 272-283 (No. 8); *id.* ¶¶ 320-325 (No. 10).  Their attempts at identifying contemporaneous evidence of these secrets instead turn on sleight of hand.  For example,                Trade Secret No. 5

Wilmer Cutler
Pickering Hale
and Dorr LLP

involves ███████████████████████████████

Ex. 19 at 70.  Plaintiffs, however, ██████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████ *see also infra* pp. 13-18 (arguing that most of the purported ████

████████████████ claim only general ideas).  That Plaintiffs ████████████████

██████████████████████████████ hardly shows that Plaintiffs possessed

any trade secret, to say nothing of the specific secrets they say were misappropriated.

████ ████████████████

Plaintiffs assert they possessed three ███████████████ trade secrets,

which they allege contain ████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Ex. 3 at 26.  Plaintiffs

have at best shown they possessed *parts* of the purported trade secrets prior to trial.

For example, Plaintiffs have defined ████████████████ Trade Secret No. 4

█████████████████████████████████████ Dkt. 296-1

¶ 42.4.  As Apple's expert Dr. Warren explained, however, Plaintiffs fail to identify

evidence even arguably showing possession of the full trade secret ███████████████

██████████████████████████████████████████████

██████████████████████████████████████ Ex. 19

¶¶ 360-362.  Nor have Plaintiffs demonstrated the subparts of this trade secret ████

██████████████████████████████████████████████████████

█████████████████████████████████████ were ever combined

by Plaintiffs in the form now claimed to be a protectable secret.  *See* Ex. 19 ¶¶ 343-



Wilmer Cutler
Pickering Hale
and Dorr LLP

346.  The documents they rely on instead omit either (1) ███████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████

Plaintiffs also necessarily fail to create a triable issue on their possession of the other two alleged ████████████ trade secrets, both of which incorporate ████████ ████████ Trade Secret No. 4.  *See* Ex. 19 ¶¶ 405, 408; SUF 17-21. ███ ████████████████████

Plaintiffs also allege that Apple misappropriated seven ███████████████ trade secrets, which Plaintiffs define ██████████████████████████████████ ███████████████████████████████████████ ████████████████ Ex. 4 at 11.  Again, Plaintiffs have failed to provide sufficient evidence to raise a genuine question of material fact regarding possession.

For example, ████████████████ Trade Secret No. 1 describes ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████ Ex. 4 at 56-57.  To support possession of this trade secret, Plaintiffs primarily rely on a ██████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 20 ¶ 65.  But the plan ██████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2

3

4

5

6

7

8

9          Plaintiffs' expert also relies on general statements made during Mr. Kiani's

10   deposition—e.g., that Plaintiffs sought to create a ███████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████—but

13   this hardly provides evidence that Plaintiffs were practicing the full ████ Trade Secret

14   No. 1.  *See* Ex. 21 ¶¶ 34-35.  Among other things, both statements ███████████

15   ████████████████████████████████████████████████████

16   ██████████████████████ The remaining materials

17   cited by Plaintiffs ██████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████ *See id*. ¶¶ 36-38; Ex. 20 ¶¶ 73-79.

22          ████   Trade Secret No. 6 fares no better.  It concerns a plan for ████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ██████████████████ Ex. 4 at 57.  Again, Plaintiffs have not presented any documents

27   claiming the trade secret in full, despite Apple's expert stating that contemporaneous

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

documentation would typically accompany the ████████████████████████

described in the secret.  Ex. 21 ¶ 235.  Possession of █████ Trade Secret No. 6 is

instead primarily premised on conversations and deposition testimony.  *Id.*  And even

the testimony that Plaintiffs rely upon to show possession does not reference the

specific ████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  *Id.* ¶¶ 236-238.  The

remaining purported trade secrets either incorporate █████ Trade Secret No. 1 (i.e.,

█████ Trade Secret Nos. 2-4) or incorporate both Trade Secret Nos. 1 and 6 (i.e.,

Trade Secret Nos. 6-7).  Dkt. 296-1 ¶ 43.

████ ████████████████████████████████

        Plaintiffs have three purported trade secrets regarding their █████████

████████████████████████ that have survived dismissal in this

case.  *See* Dkt. 350 at 4-6.  Plaintiffs have not created a triable issue as to their

possession of these alleged secrets.  Plaintiffs' ███ Trade Secret No. 5, for example,

claims a purportedly secret strategy for █████████████████████████████████

████████████████████████████████████

████████████████████████ Ex. 4 at 63-64.  Conducting such research

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████ Ex. 21 ¶ 265.

Plaintiffs have identified nothing of the sort, *id.*—and certainly nothing that shows

possession at the time of the purported misappropriation in 2013 and 2014.  Plaintiffs

instead rely on their employees' post-litigation statements about concepts that have

█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    ███████████████████████████ Moreover, Plaintiffs have not shown ████

2    ████████████████████████████████████████████████████████████████████.

3    *Id.* ¶ 266.  And the documents Plaintiffs do assert support possession concern ████

4    ████████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████

6    ████████████████████

7            The two remaining trade secrets are not independently addressed by Plaintiffs'

8    expert, and in any event incorporate ███ Trade Secret No. 5.  Ex. 21 ¶ 296.

9            **B.     Plaintiffs Have Not Established Which Entity Had Possession Of Or**

10                  **Owned Each Alleged Trade Secret**

11           **1.**     Plaintiffs' CUTSA claim should be rejected because they have not shown

12   *which* entity possessed *which* alleged trade secret.  As discussed in Apple's

13   simultaneously filed motion to strike, prior to November 23, 2022, Plaintiffs refused to

14   provide this key piece of information.  Accordingly, if Apple's motion is granted,

15   Apple is entitled to summary judgment on possession (and thus on liability).[3]

16           To be sure, Plaintiffs timely asserted that both Masimo and Cercacor had ████

17   ███████████████████ Ex. 1 at 1, 3.  But that agreement does not reference any

18   specific trade secret.  To the contrary, it deals only with ████████ and thus on its

19   face does not sweep in the alleged ██████████████████████████

20   ███████████████████████████████████████

21   █████████████████████████ Moreover, to the extent Plaintiffs claim this

22   agreement shows Masimo or Cercacor *could have* accessed any alleged technical trade

23   secret, Plaintiffs have presented no evidence that Masimo or Cercacor actually did so

24

25   _____

26   [3] At the motion to dismiss stage, this Court stated that "Apple has cited to no law
     requiring that plaintiffs suing together specify which of them owns a particular trade
     secret." Dkt. 264 at 9-10.  This requirement necessarily springs from CUTSA's
27   undisputed requirement to show possession.  If Plaintiffs fail to establish which entity
     has possession, they have not met their burden to establish that either did.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   and thus possessed that alleged secret at the time of the alleged misappropriation.  *See*

2   *Jasmine Networks, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 993, 997 (2009).

3        Even if the November 23 supplemental response stands, it cites no factual

4   support other than ████████████ agreement and two other wholly irrelevant

5   agreements.  *See generally* Ex. 6.  One was ████████████████████

6   ████████████, *see* Ex. 9, Ex. 2 § 18.9.  It therefore cannot show possession

7   at the time of the purported misappropriation, which occurred years after 2007.  Dkt.

8   296-1 at 80.  The other is a ████████████████ that does not

9   mention trade secrets at all.  Ex. 8.  While Plaintiffs also cross-reference their

10  responses to Interrogatories Nos. 6 and 7, nothing in those responses identifies which

11  Plaintiff possessed which alleged trade secret.  *See generally* Ex. 4; Ex. 5.

12       **2.**     Even if Plaintiffs could show possession, the law requires more.

13  California appellate courts and courts in this District have held that CUTSA plaintiffs

14  must "show [they] owned the trade secret."  *See, e.g.*, *AMN Healthcare*, 28 Cal. App.

15  5th at 942; *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003)

16  (same); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 960 (C.D. Cal. 2011)

17  (same).  This Court has stated in this very litigation that a trade secret plaintiff must

18  "demonstrate: (1) the plaintiff owned a trade secret."  *E.g.*, Dkt. 264 at 4.  Plaintiffs

19  have made no such showing.

20       Plaintiffs have chiefly relied on out-of-circuit cases following the Fourth

21  Circuit's interpretation of Maryland trade secret law in *DTM Research, L.L.C. v. AT&T*

22  *Corp.*, 245 F.3d 327, 332 (4th Cir. 2001).  Ex. 6 at 6.  But because Plaintiffs chose to

23  bring their suit under the CUTSA and in federal court, the *Erie* doctrine binds them to

24  the California state courts' interpretation of that statue.  *See PSM Holding Corp. v.*

25  *Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018).  Here, Plaintiffs identify no

26  California case that adopts the *DTM* standard.  The case they have cited that uses the

27  term "possession" rather than "ownership" is a classic outlier—it does not cite *DTM* or

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

provide reasoning for choosing one word over the other.  *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010).  The law applies the "ownership" framework for a good reason—"[i]t is the owner at the time of the injury who will ordinarily suffer the loss of value or cost of replacement or repair, and who will thus need the compensatory remedy that the law offers." *Jasmine Networks*, 180 Cal. App. 4th at 993.  Adopting the "possession" framework, on the other hand, could result in a windfall for someone who did not actually suffer any loss—e.g., an employee who developed a trade secret for the employer under an assignment agreement.

Under the proper legal standard, Plaintiffs have failed to present any evidence—much less raise a genuine question of material fact—regarding which entity owned which trade secret.  If the November 23 supplemental response is excluded (as it should be), Plaintiffs have argued only that the trade secrets are owned by ████ ████████████████ Ex. 6 at 5.  That is plainly insufficient to show even joint ownership; if the purported trade secrets were jointly owned, presumably Plaintiffs could have stated ████████████████████  Even if the November 23 supplemental response is permitted to stand, it relies on the same three inapposite licensing agreements and interrogatory responses discussed above.  *See supra* pp. 11-12.

## II.   PLAINTIFFS' PURPORTED TRADE SECRETS CLAIM GENERAL IDEAS

As this Court recently observed, "'[i]deas or concepts are not, in and of themselves, trade secrets.'" *True Wearables* Op. ¶ 99.  Rather, the CUTSA protects information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure."  Cal. Civ. Code § 3426.1(d)(1).  In light of these underlying requirements, the CUTSA requires a trade secret to be "actual, not theoretical" and "specific, not general." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 867640, at *3 (D. Del. Mar. 8, 2013) (applying California law).

Wilmer Cutler
Pickering Hale
and Dorr LLP

**A.** **Plaintiffs' ▇▇▇▇▇ Trade Secrets Nos. 5 and 7-8**

*1.* ▇▇▇▇▇ *Trade Secret No. 5*

This purported trade secret recites ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



.

In other words, the alleged trade secret boils down to identifying a general problem (X can cause errors) and coupling it with a general solution (avoid X). Providing such a "general description" is "insufficient to establish a trade secret." *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020). Among other things, permitting a trade secret claim to proceed at a high level of generality would grant companies an impermissible and unearned "monopoly over broad swaths of other solutions … merely because they all fall on the side of generally favoring a particular consideration over others." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017); *accord True Wearables* Op. ¶ 143.

Plaintiffs apparently made no effort to articulate ▇▇▇▇▇▇ Trade Secret No. 5 with particularity (or Nos. 7-8, for that matter) because they believed that once their allegations had survived a motion to dismiss, they did not need to present actual evidence delineating the secrets' metes and bounds. Dr. Madisetti, for example, asserts "that reasonable particularity is evaluated by the trial court 'before commencing

Wilmer Cutler
Pickering Hale
and Dorr LLP

discovery' in the case." Ex. 16 ¶¶ 642, 794, 809.  While this Court has explained that "trade secrets do not have to be described in minute detail ***to survive a motion to dismiss***" because "[t]rade secret identification is naturally refined during discovery," Dkt. 264 at 8 (emphasis added), discovery is now complete and Plaintiffs' alleged trade secrets still lack particularity.  Courts in the Ninth Circuit have granted summary judgment under comparable circumstances.  *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998); *nSight, Inc. v. PeopleSoft, Inc.*, 296 F. App'x 555, 560-561 (9th Cir. 2008); *see also Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, 2016 WL 5719819, at *12 (S.D. Cal. Sept. 30, 2016) (collecting cases granting summary judgment on reasonable particularity).  Indeed, a trade secret plaintiff's failure to adequately describe its trade secrets with reasonable particularity can be a basis for finding insufficient evidence to support a jury's verdict.  *See Olaplex Inc. v. Loreal USA Inc.*, 855 F. App'x. 701, 712 (Fed. Cir. 2021).  This is because "[c]ourts and juries … require precision … especially where a trade secrets claim involves a sophisticated and highly complex system," since "the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract." *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020).

More broadly, Plaintiffs' failure to articulate their asserted trade secrets with sufficient particularity is an error of their own making.  ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████  Yet Plaintiffs failed to recite any of these specific methods as their particular trade secret, instead choosing to articulate the trade

secret as finding an undefined solution for a general problem.  Plaintiffs cannot rewrite it now, *see True Wearables* Op. ¶ 98 (rejecting attempt to narrow definition of alleged trade secret to avoid finding that it was generally known), nor should Plaintiffs be permitted to claim a trade secret broader than what they claim to have possessed.

### 2.    ██████████ *Trade Secret No. 7*

Plaintiffs' seventh alleged ██████ secret recites ████████████████

████████████████████████████████████████████████████

██████████████████████████████████ Ex. 19 at 156.

There is no dispute that █████████████████████████████████

██████ are broad mathematical concepts well-documented in the literature.  *See* Ex. 18 ¶¶ 242-246 ██████████████████████████████

███████████████████████ Even Dr. Madisetti has not argued that there is anything secret regarding these concepts.  To the contrary, he expressly acknowledges █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

█████████████████████████

Instead, Plaintiffs assert that ██████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████ But simply applying known concepts and/or knowing their utility in ████████████ monitoring amounts to "[g]eneral knowledge in the trade or ... special knowledge of those persons who are skilled in the trade," which still are insufficient to qualify as trade secrets.  *See Agency Solutions.Com*, *LLC*, *v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1019 (E.D. Cal. 2011).  Missing is any "specific implementation involving a particular combination of

general concepts" that may constitute a trade secret.  *See Tracer Research Corp. v. National Environmental Serv. Co.*, 843 F. Supp. 568, 582 (D. Ariz. 1993) (citing case interpreting California law); *see also Winston Rsch. Corp. v. Minnesota Min. & Mfg. Co.*, 350 F.2d 134, 144 (9th Cir. 1965); *True Wearables* Op. ¶ 148.

In sum, with no recited advantages of using ███████████████████ ████████████████████████████████████████████████████████ Trade Secrets No. 7 is theoretical, general, and does not qualify as a trade secret.  *See XpertUniverse, Inc.*, 2013 WL 867640, at *3.

> **3.** ████████████ ***Trade Secret No. 8***

Plaintiffs' eighth purported trade secret recites ██████████████ ████████████████████████████████████████████ ████████████████████████ Ex. 19 at 174.  Like the other purported trade secrets discussed above, ████████████ Trade Secret No. 8 is a general, commonsense concept—████████████████████████████████████ ████████—with no description of any steps explaining how ████████████████ ████████. *See* Ex. 18 ¶ 249 ████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████. This secret thus amounts to nothing more than "[g]eneral knowledge in the trade," and does not qualify as a trade secret as a matter of law.  *See Agency*, 819 F. Supp. 2d at 1019.

Given the breadth of the purported trade secret, it should come as little surprise that this basic notion is described throughout the literature and even appears in physical devices that existed for decades prior to any alleged misappropriation.  *Cf. True Wearables* Op. ¶¶ 142-148 (finding Plaintiffs had not described a viable trade secret where it covered "commonplace" and "standard mathematical tools"); *see also* Ex. 18 ¶¶ 251-259.  For example, ████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   The only difference is that, unlike the alleged trade secret

2  at issue here, it provides details on

3

4

5

6

7

8  *See* Ex. 7 at 1; *see also* Ex. 18 ¶¶ 251-

9  252. Other articles likewise

10

11

12

13  Dr. Madisetti's attempts to distinguish these references reinforces the

14  impermissible breadth of the purported trade secret. For example, Dr. Madisetti points

15

16

17

18

19

20

21

22

23  Plaintiffs cannot reasonably distinguish

24  references based on concepts absent from the alleged trade secret.

25  **B.    Plaintiffs' "Value, Importance, And Appropriateness" Trade Secrets**

26  Just as a trade secret must be actual and specific rather than theoretical and

27  general, a trade secret plaintiff may "not simply rely upon 'catchall' phrases" when

28

APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
18
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

describing their trade secrets.  *See InteliClear,* 978 F.3d at 658; *accord* Dkt. 264 at 4.

Thus, for example, the Ninth Circuit has affirmed the grant of summary judgment

where a purported trade secret claimed the "'dimensions and tolerances'" of a movie

projector system.  *See Imax*, 152 F.3d at 1167; *see also X6D Limited v. Li-Tek Corps.*

*Co.*, 2012 WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012) (granting summary

judgment on trade secret claiming the "Ornamental Appearance, Color and Material"

for pair of glasses).

Here, Plaintiffs originally asserted five purported trade secrets—one for each

remaining category—that claim the "value, importance, and appropriateness" of the

remainder of the trade secrets were originally in that category (some of which have

since been dismissed or otherwise dropped but are still incorporated within the secret).

*See* Dkt. 296-1 ¶ 40.16 (███ No. 16); *id.* ¶ 42.6 (██ No. 6); *id.* ¶ 43.8 (███ No. 8);

*id.* ¶ 44.7 (██ No. 7); *see also* Ex. 15 at 167-168 n.2 (██ No. 10).  Despite years of

discovery, however, Plaintiffs have failed to provide any additional details clarifying

what those general terms mean.  Even their experts—who spend dozens of pages

defending the other purported trade secrets—provide no guidance for how to

understand these words.  *E.g.*, Ex. 15 ¶ 168 ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████  For example, does "value" refer to the purported trade secrets' economic

value or their usefulness?  If the former, this is clear double-counting, as it overlaps

with the requirement for establishing that information is a trade secret in the first place

(a tactic akin to claiming the "secrecy" of a particular trade secret).  And if the latter,

what kind of usefulness (e.g., usefulness that comes from using the purported trade

secrets all together, individually, or in some specific combination)?  The purported

trade secrets provide no answer.  The same types of questions arise when considering

Wilmer Cutler
Pickering Hale
and Dorr LLP

the meaning of "importance" (important in what sense?) and "appropriateness" (when compared to what?).

This Court's prior motion to dismiss ruling regarding the "value, importance, and appropriateness" trade secrets does not answer whether Plaintiffs have met their burden to define their purported secrets with sufficient particularity at the summary judgment stage. *See* Dkt. 264 at 5. There, the question was whether Plaintiffs were using the phrase to smuggle in new trade secrets "about which Apple does not have notice" at a later date. *Id.* Here, the issue is whether Plaintiffs have provided enough evidence to allow a trier-of-fact to understand the scope of those five specific alleged trade secrets.

Since this Court's prior ruling, moreover, the scope of those five trade secrets has only grown murkier. This is because each incorporates purported trade secrets that are no longer in this litigation—e.g., because Plaintiffs have abandoned them. For example, █████████ Trade Secret No. 10 recites the "value, importance, and appropriateness █████████████████████████████████████████████████████████████ ███████████████████████████████ *See* Ex. 19 at 198. While the fact that the "value, importance, and appropriateness" trade secrets were "circumscribed by the preceding list of trade secrets" may have provided some clarity at the motion to dismiss stage, (Dkt. 264 at 5), today the references to secrets that are no longer at issue will only make it exceedingly difficult for the jury to understand the precise scope of the catch-all secrets. Adding to the confusion, Plaintiffs' experts have read the five catch-all secrets to claim the "value, importance, and appropriateness" of *each* of the live secrets—essentially doubling the number of purported trade secrets in this litigation without leave of this Court. For example, Dr. Madisetti describes ████ ████ Trade Secret No. 10 as "[t]he value, importance and appropriateness of █████ ██████████████████████████████████████████████████████ (Ex. 15 at 167-168)—and so on, *id.* at 219 (same for No.

5) *see id.* at 283 (same for No. 7); *id.* at 297 (same for No. 8).  This type of slicing and dicing means that Plaintiffs are receiving an unjustified second bite at the apple for each purported trade secret—both for the trade secret as alleged and for the nebulous concept of its value, importance, and appropriateness.

### III. APPLE SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' LOST PROFITS THEORY IF MR. KINRICH'S LOST PROFITS OPINIONS ARE EXCLUDED

Apple intended to file a combined *Daubert*/Rule 37(c) motion to strike portions of Plaintiffs' damages expert report simultaneously with this motion.  *See* Dkt. 1068 at 3; *see also* Dkt. 898 (parties' stipulation to file summary judgment motions on December 19).  However, the night before Mr. Kinrich's scheduled deposition on Monday, December 12, Plaintiffs informed Apple that Mr. Kinrich ███████████ ████████████████████  Ex. 26.  Because Plaintiffs refused to stipulate to push back the filing deadline for summary judgment to January 9, 2023—i.e., the general deadline that this Court set for law and motion matters—Apple has been forced to file this motion first and will file its combined *Daubert*/Rule 37 motion on January 9 and to notice it for the same hearing date as this motion (February 6).

As will be explained in Apple's January 9 motion, both Mr. Kinrich's October 2022 report and his November 30, 2022 "Supplemental" Report are deficient for reasons that this Court has already articulated.  *See generally* Dkt. 1031.  If Mr. Kinrich is barred from offering his lost profits opinions, Plaintiffs cannot establish a genuine question of material fact remains regarding their entitlement to that relief.  *E.g.*, *ChromaDex v. Elysium Health*, 2020 WL 1279236, at *8 (C.D. Cal. Jan. 16, 2020).

### CONCLUSION

This Court should grant Apple summary judgment of no liability on Plaintiffs' trade secret claim and/or on Plaintiffs' lost profits damages theory.

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
CASE NO. 8:20-cv-00048-JVS (JDEx)
21

Dated:  December 20, 2022                Respectfully submitted,


                                          MARK D. SELWYN
                                          AMY K. WIGMORE
                                          JOSHUA H. LERNER
                                          SARAH R. FRAZIER
                                          NORA Q.E. PASSAMANECK
                                          THOMAS G. SPRANKLING
                                          WILMER CUTLER PICKERING HALE AND
                                          DORR LLP

                                          BRIAN A. ROSENTHAL
                                          GIBSON, DUNN & CRUTCHER LLP

                                          KENNETH G. PARKER
                                          HAYNES AND BOONE, LLP



                                          By:  */s/Mark D. Selwyn*
                                                Mark D. Selwyn


                                          *Attorneys for Defendant Apple Inc.*

Wilmer Cutler
Pickering Hale
and Dorr LLP

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple, Inc., certifies that this brief contains 7,000 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].


Dated: December 20, 2022          Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
       Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S MEMO ISO MOT. FOR PARTIAL S.J. ON PLAINTIFFS' TRADE SECRET CLAIM, LOST PROFITS
CASE NO. 8:20-cv-00048-JVS (JDEx)
23