Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MEMORANDUM IN SUPPPORT OF PLAINTIFFS' DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANT'S EXPERTS**<br><br>Date:       February 6, 2023<br>Time:       1:30 p.m.<br>Location:   Courtroom 10C |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF FACTS........................................................................1

III.  LEGAL STANDARD ...............................................................................2

IV.  ARGUMENT.............................................................................................3

     A.     Apple's Experts' Readily Ascertainable Opinions Are Legally Irrelevant ........................................................................................3

          1.     The Correct "Readily Ascertainable" Legal Standard...............3

          2.     Apple's Experts Apply An Incorrect Legal Standard................6

     B.     Apple's Experts' Generally Known Opinions Are Legally Irrelevant ........................................................................................7

          1.     The Correct "Generally Known" Legal Standard.......................7

          2.     Sarrafzadeh and Warren Contradict the Correct Legal Standard ...............................................................................9

          3.     Perez and Kivetz Contradict the Correct Legal Standard........12

     C.     Perez and Kivetz's Opinions Should Be Excluded For Additional Reasons ......................................................................14

V.   CONCLUSION .......................................................................................16

# TABLE OF AUTHORITIES

**Page No(s).**

*A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*,
   73 F.2d 531 (6th Cir. 1934) ...................................................................... 9

*ABBA Rubber Co. v. Seaquist*,
   235 Cal. App. 3d 1 (1991) ................................................................... 4, 5

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
   226 Cal. App. 4th 26 (2014) ........................................................ *passim*

*Am. Can Co. v. Mansukhani*,
   728 F.2d 818 (7th Cir. 1982) .......................................... 8, 11, 14, 15

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 2571332 (N.D. Cal. June 30, 2012) .................................... 3

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   2018 WL 514923 (N.D. Cal. Jan. 23, 2018) ...................................... 8

*Carroll Shelby Licensing, Inc. v. Halicki*,
   2021 WL 8531241 (C.D. Cal. Dec. 29, 2021) ....................... 3, 7, 12, 14

*Contemp. Servs. Corp. v. Landmark Event Staffing Servs., Inc.*,
   677 F. App'x 314 (9th Cir. 2017) ......................................................... 5

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007) ................................................................ 2

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) (*Daubert I*) ............................................... *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) (*Daubert II*) ........................................ 2

*Glob. Med. Techs., Inc. v. Jackson*,
   2006 WL 3735581 (Cal. Ct. App. Dec. 20, 2006) ............................. 5

*Hebert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996) ......................................................... 2, 3

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................ 3

# TABLE OF AUTHORITIES

## (*cont'd*)

**Page No(s).**

*Imax Corp. v. Cinema Techs., Inc.*,
  152 F.3d 1161 (9th Cir. 1998) ..................................................................3, 4, 5

*Imi-Tech Corp. v. Gagliani*,
  691 F. Supp. 214 (S.D. Cal. 1986) .......................................................5, 8, 10, 12

*Khoros, LLC v. Lenovo (United States), Inc.*,
  2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) ...................................................8, 9

*Kittrich Corp. v. Chilewich Sultan, LLC*,
  2013 WL 12131376 (C.D. Cal. Feb. 20, 2013) ................................................7, 8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...........................................................................................2, 16

*Masimo Corp. v. True Wearables Inc.*,
  2021 WL 2548690 (C.D. Cal. Apr. 28, 2021) (*True Wearables I*) ........3, 4, 7, 10

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) (*True Wearables III*)..........*passim*

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 205485 (Fed. Cir. Jan. 24, 2022) (*True Wearables II*)...................4, 12

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
  2009 WL 10672947 (C.D. Cal. Aug. 14, 2009) ....................................................5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
  420 F. Supp. 2d 1070 (N.D. Cal. 2006)................................................................8

*Sinclair v. Aquarius Elecs., Inc.*,
  42 Cal. App. 3d 216 (1974) .......................................................................8, 10, 12

*Teradata Corp. v. SAP SE*,
  570 F. Supp. 3d 810 (N.D. Cal. 2021).................................................................2

# TABLE OF AUTHORITIES

**(*cont'd*)**

**Page No(s).**

## OTHER AUTHORITIES

Cal. Civ. Code § 3426.1................................................................4, 7

California Uniform Trade Secrets Act................................................*passim*

Fed. R. Evid. 702 ........................................................................2

Fed. R. Evid. 402 ........................................................................2

Senate Comm. On Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. Selected
    Bill Analyses (1984) ...............................................................5, 7

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (jointly, "Masimo") hereby move to exclude certain expert testimony under *Daubert*.

## I. <u>INTRODUCTION</u>

Apple's experts offer two opinions that are not appropriate to present to the jury because they are contrary to law and would confuse the jury. First, Apple's experts opine that Masimo's trade secrets are "readily ascertainable." But neither Apple nor its experts assert that Apple obtained the trade secrets from a readily ascertainable source, as California law requires. Second, Apple's experts opine that Masimo's trade secrets are "generally known." But the experts do not address the relevant question: whether each trade secret lacked independent economic value because it was generally known to the public or to other persons who can obtain economic value from its disclosure or use. Instead, the experts improperly treat the trade secrets as if they were patent claims by breaking them into "elements" and attempting to show each "element" or "aspect" was "disclosed" in the prior art. That analysis is also contrary to California law and should be excluded.

Two of Apple's experts also rewrite the trade secrets and then claim that the rewritten subject matter is "generally known" or "readily ascertainable." Such opinions are especially unreliable and would be particularly confusing to the jury because they do not address the trade secrets as written. The Court should not allow Apple to use its experts to advance irrelevant theories that would confuse the jury.

## II. <u>STATEMENT OF FACTS</u>

Apple designated four experts to address Masimo's trade secrets: Majid Sarrafzadeh, Steve Warren, Marco Perez, and Ran Kivetz ("Apple's Experts"). Sarrafzadeh addressed the ████████████████████████████████████ Exs. 1-2.[1]  Warren addressed the ██████████████████████████████ ████████████████████████████████████████████████  Exs. 3-5.  Perez

---

[1] Unless noted otherwise, all exhibits are attached to the Declaration of Adam B. Powell (submitted herewith) and all emphasis in quotations is added.

and Kivetz addressed the Business and Marketing Plans and Strategies ("B&M") Trade Secrets. Exs. 6-10. Perez also addressed the Strategies For Interacting With Hospitals ("HI") Trade Secrets. Exs. 6-7.

Apple's Experts opined that Masimo's trade secrets were "generally known" or "readily ascertainable" by "interested third parties." They did so by breaking the trade secrets into "elements" and attempting to show each element was "disclosed" in various sources. Ex. 1 ¶¶ 55-93; Ex. 3 ¶¶ 122, 127-230, 263-70, 271-367; Ex. 6 § 5; Ex. 8 §§ D, E.1. But they did not attempt to show even those "elements" were generally known to relevant people, much less address each trade secret as a whole. Nor did they attempt to show Apple actually discovered the trade secret from any "readily ascertainable" source.

### III.  LEGAL STANDARD

Fed. R. Evid. 702 requires that an "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." The proponent of such testimony bears the burden of showing it is admissible. *Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 823 (N.D. Cal. 2021). Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," courts exercise "more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993) (*Daubert I*). Courts have a "gatekeeping" responsibility to ensure expert testimony is both relevant and reliable. *Id.* at 597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

To be relevant, an expert opinion must "assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). This is not "merely a reiteration of the general relevancy requirement of Rule 402." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (*Daubert II*). Rather, testimony must "speak[] ***clearly and directly*** to an issue in dispute in the case" and must "***not mislead*** the jury." *Id.*

Appellate courts "encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but

markedly incorrect law." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). "Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." *Id.* Thus, testimony based on incorrect law is not relevant and should be excluded under *Daubert.* *Carroll Shelby Licensing, Inc. v. Halicki*, 2021 WL 8531241, at *7 (C.D. Cal. Dec. 29, 2021); *see also Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 970 (N.D. Cal. 2018) (excluding expert opinions that "depend on incorrect statements of law" because "they will not help the trier of fact understand the evidence"). Indeed, Apple itself has successfully excluded testimony as "contrary to law" in other cases. *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *6 (N.D. Cal. June 30, 2012).

## IV.  ARGUMENT

Apple's Experts each opine that Masimo's trade secrets are "generally known" or "at a minimum" "readily ascertainable" based on various sources. In doing so, the experts treat those two concepts as interrelated when they are actually distinct concepts with distinct requirements. That alone shows Apple's Experts fail to apply the correct law. As explained below, Apple's Experts' analysis is legally irrelevant to satisfying the distinct requirements of each concept.

### A.  Apple's Experts' Readily Ascertainable Opinions Are Legally Irrelevant

Apple's Experts claim Masimo's Trade Secrets are readily ascertainable based on combining various sources in a patent obviousness-like analysis. But they never claim that Apple actually obtained the trade secrets from those sources. As explained below, such opinions are irrelevant, would confuse the jury, and should be excluded.

#### 1.  The Correct "Readily Ascertainable" Legal Standard

In *Masimo Corp. v. True Wearables, Inc.*, this Court considered the "readily ascertainable" requirement of the California Uniform Trade Secrets Act ("CUTSA"). The Court explained that, unlike most jurisdictions, "'whether information is readily ascertainable is ***not*** part of the definition of a trade secret in California.'" *Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *3 (C.D. Cal. Apr. 28, 2021) ("*True*

1    *Wearables I*") (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1168 n.10

2    (9th Cir. 1998)).  As the Court explained, "the California legislature expressly declined

3    to include the phrase 'readily ascertainable' in the definition of [a] trade secret."  *Id.*

4    (citing West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments)).

5        The Court held "readily ascertainable" is a defense, but only if the defendant

6    actually obtained the information from a readily ascertainable source.    The Court

7    explained:

> [U]nder the CUTSA, ready ascertainability is a defense that "will be based
> upon an absence of misappropriation, rather than the absence of a trade
> secret."  [citation].  As such, under the CUTSA, ready ascertainability is
> only a defense insofar as the defendant actually gained knowledge of the
> trade secret by use of those materials which make the trade secret readily
> ascertainable.

13   *Id.* (citing *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 n.9 (1991); *Imax*, 152

14   F.3d at 1168 n.10)).    The Court granted a preliminary injunction after finding the

15   defendants could not prevail on a "readily ascertainable" defense because they did not

16   assert they actually obtained the information through the readily ascertainable source.

17   *Id.* at *4.

18       The Federal Circuit affirmed, explaining that "ready ascertainability is a defense

19   to a claim of misappropriation of trade secrets, but the defense is available only if the

20   defendant can establish that the alleged trade secret was obtained from sources that made

21   the information ascertainable."  *Masimo Corp. v. True Wearables, Inc.*, 2022 WL

22   205485, at *3 n.1 (Fed. Cir. Jan. 24, 2022) ("*True Wearables II*"); *id.* at *3 (finding "no

23   legal error" in the Court's decision that "TW could not avail itself of a defense based on

24   ready ascertainability because it failed to show that Dr. Lamego obtained his knowledge

25   of the TSS based on the IEEE publication").  This Court then applied that law again at

26   trial.  *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *20 (C.D. Cal.

27   Nov. 7, 2022) ("*True Wearables III*") ("Assuming any asserted trade secret is readily

28

1  ascertainable, for this to be relevant, Defendants must still show that Defendants made
2  use of that means of ascertainment to have a defense under the CUTSA.").

3       The *True Wearables* decisions in this Court and the Federal Circuit were correct.
4  The California Court of Appeal has long held that, "under California law, information
5  can be a trade secret even though it is readily ascertainable, so long as it has not yet been
6  ascertained by others in the industry." *ABBA Rubber*, 235 Cal. App. 3d at 21; *see also*
7  *Glob. Med. Techs., Inc. v. Jackson*, 2006 WL 3735581, at *6 (Cal. Ct. App. Dec. 20,
8  2006); *Imax*, 152 F.3d at 1168 n.10; *Contemp. Servs. Corp. v. Landmark Event Staffing*
9  *Servs., Inc.*, 677 F. App'x 314, 315 (9th Cir. 2017) (the "ease of ascertainability is
10 irrelevant to the definition of a trade secret").

11      As the California Court of Appeal explained, "our Legislature chose to exclude
12 from the definition only that information which the industry already knows, as opposed
13 to that which the industry could easily discover." *ABBA Rubber*, 235 Cal. App. 3d at 21.
14 The legislature was concerned that a "readily ascertainable" requirement could allow a
15 defendant to escape liability by arguing it **could have** discovered the information
16 "through reverse engineering or a literature search." Senate Comm. On Judiciary, Cal.
17 A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984). Rather than focusing
18 on where the defendant actually obtained the information, a "readily ascertainable"
19 requirement would improperly "invite[] the various parties to speculate on the time
20 needed to discover a [trade] secret." *Id.*

21      As a result, courts decline to consider evidence that information **could** be obtained
22 properly where the defendant did not actually obtain it from an allegedly readily
23 ascertainable source. *See, e.g.*, *Imax*, 152 F.3d at 1168 n.10 (district court failed to
24 "endeavor to determine whether CTI actually relied only on the 'public domain sources
25 in creating its own projector"); *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
26 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009) (excluding evidence that
27 information was "readily ascertainable" where defendant did not "actually" obtain the
28 information from such a source). This rule makes sense because "California law

emphasizes punishing the wrongful acquisition of information, even if it could have been obtained legally." *Imi-Tech Corp. v. Gagliani,* 691 F. Supp. 214, 231 (S.D. Cal. 1986).

As addressed below, the Apple Experts disregard these principles. Instead, they do exactly what the California courts have warned is improper. Thus, they offer only legally irrelevant opinions that should be excluded under *Daubert*.

### 2.     Apple's Experts Apply An Incorrect Legal Standard

Apple is well aware of the *True Wearables* case. *See* Dkt. 14 at 2 (Apple requesting transfer by designating *True Wearables* as "related"). Apple's Experts even cite the Court's holding on the requirements for a "readily ascertainable" defense. Ex. 1 ¶ 25; *see also* Ex. 3 ¶ 24; Ex. 6 ¶ 34; Ex. 8 ¶ 20. But Apple's Experts then admit their opinions rely on Apple arguing for a ***different*** view of the law. Indeed, they stated: "Apple may argue that ready ascertainability remains a defense even if Apple never actually ascertained the alleged trade secrets." Ex. 1 ¶¶ 24, 26; Ex. 3 ¶¶ 23, 25; Ex. 6 ¶¶ 33, 35; Ex. 8 ¶¶ 19, 21. They then apply that different view of the law.

In particular, Apple's Experts attempt to show Masimo's trade secrets are "readily ascertainable" based on various sources. But neither Apple nor its experts claim Apple obtained the trade secrets from a readily ascertainable source. As a result, the experts' readily ascertainable opinions are irrelevant and can only serve to confuse the jury. *See True Wearables III*, 2022 WL 17083396, at *20 ("Assuming any asserted trade secret is readily ascertainable, for this to be relevant, Defendants 'must still show that Defendants made use of that means of ascertainment to have a defense under the CUTSA.'").

Apple's Experts engage in the very analysis that courts and the legislature have sought to avoid in California. For example, Sarrafzadeh and Warren ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ██████████████████████████████████ Perez and Kivetz did the same. █████████████

3 ███████████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ██████████████. In *True Wearables I*, this Court rejected the same type of analysis by an

6 expert who conducted his own search to find allegedly "readily ascertainable"

7 information. 2021 WL 2548690, at *4 (papers were "found by Defendants' expert and

8 not shown to be the origin" of the information used by Defendants).

9 ██████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████. But

12 the California legislature specifically rejected a "readily ascertainable" requirement

13 because it would improperly "invite[] the various parties to speculate on the time needed

14 to discover a trade secret." *See* Senate Comm. On Judiciary, Cal. A.B. 501, 1983-84

15 Ref. Sess. 5-6, Selected Bill Analyses (1984).

16 Accordingly, Apple's Experts' readily ascertainable opinions are contrary to law

17 and should be excluded. *Carroll Shelby Licensing*, 2021 WL 8531241, at *7. The Court

18 should not allow Apple to mislead the jury by using its experts to advance legally

19 erroneous theories. *See Daubert I*, 509 U.S. at 595.

20 **B.** **Apple's Experts' Generally Known Opinions Are Legally Irrelevant**

21 Apple's Experts also apply the wrong legal standards in attempting to show the

22 trade secrets lack "independent economic value, actual or potential, from not being

23 generally known to the public or to other persons who can obtain economic value from

24 its disclosure or use." Cal. Civ. Code § 3426.1(d)(1). Their analysis is contrary to law

25 and should be excluded.

26 **1.** **The Correct "Generally Known" Legal Standard**

27 In *True Wearables*, the Court examined the "generally known" requirement in

28 detail. The Court explained: "'The [generally known] inquiry is not whether the alleged

-7-

1    trade secret has been publicly disclosed at all, but whether it has become generally

2    known to the relevant people, i.e., potential competitors or other persons to whom the

3    information would have some economic value[.]'"   *True Wearables III*, 2022 WL

4    17083396, at *9 (quoting *Kittrich Corp. v. Chilewich Sultan, LLC*, 2013 WL 12131376,

5    at *4 (C.D. Cal. Feb. 20, 2013)).   The Court "held, and the Federal Circuit affirmed, that

6    a publication does not mean the subject matter is generally known under CUTSA."   *Id.*

7    at *15.

8         Unlike an invention claimed in a patent, "it is ***not*** required that a trade secret be

9    patently nonobvious or novel."   *Imi-Tech*, 691 F. Supp. at 231 (explaining that

10   "defendants' attempts to show that Imi-Tech's alleged trade secrets were known in the

11   prior art also fail to provide a defense for the defendants"); *see also BladeRoom Grp.*

12   *Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *3-4 (N.D. Cal. Jan. 23, 2018) ("novelty, in

13   the patent law sense, is not required for a trade secret").   Whether "others might have

14   discovered" the information is not relevant because "'obviousness' is not the

15   benchmark" in a trade secret case.   *Am. Can Co. v. Mansukhani*, 728 F.2d 818, 819 (7th

16   Cir. 1982).   Trade secrets can be "clearly anticipated in the prior art" as well as "merely

17   a mechanical improvement on a machine or device."   *Sinclair v. Aquarius Elecs., Inc.*,

18   42 Cal. App. 3d 216, 222 (1974) ("patentability is not a condition precedent to the

19   classification of a trade secret").

20        Courts also err by examining trade secrets "bit by bit with the further requirement

21   that [plaintiff] demonstrate protectability of its elements or some of them rather than the

22   protectability of the [trade secret] as a whole."   *Altavion, Inc. v. Konica Minolta Sys.*

23   *Lab., Inc.*, 226 Cal. App. 4th 26, 47 (2014).   That is because, "even if some or all of the

24   elements of [plaintiff's] design were in the public domain and thus unprotectable, the

25   ***combination*** was a protectable trade secret if it was secret and had independent

26   economic value."   *Id.* (emphasis in original).

27        The "optimal" configuration of known elements can be a trade secret.   *O2 Micro*

28   *Int'l Ltd. v. Monolithic Power Sys. Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006);

-8-

*Khoros, LLC v. Lenovo (United States), Inc.*, 2020 WL 12655516, at *5 (N.D. Cal. Oct. 5, 2020) ("a trade secret may consist of a compilation of data, public sources[,] or a combination of proprietary and public sources").  As the Sixth Circuit explained: "Facts of great value may, like the lost purse upon the highway, lie long unnoticed upon the public commons.  Hundreds pass them by, till one more observant than the rest makes discovery."  *A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 539 (6th Cir. 1934) (affirming trade secret finding).

As addressed below, Apple's experts failed to adhere to these principles.  Instead, they offer legally irrelevant opinions that would only mislead and confuse the jury.

### 2. Sarrafzadeh and Warren Contradict the Correct Legal Standard

Sarrafzadeh and Warren analyzed the trade secrets as if they were claimed in a patent and attempted to show how each "element" is "publicly disclosed."  For example, Sarrafzadeh breaks down ███████████████████ into various "elements" and then attempts to show each "element" was "publicly disclosed."  *See, e.g.*, Ex. 1 ¶¶ 57-92 (████████████).  He then summarily concludes those alleged disclosures together render "every aspect" of the trade secret "generally known."  *See, e.g.*, *id.* ¶ 93; *id.* ¶¶ 94-240 (██████████████████).  His argument that "every aspect" (rather than the trade secret as a whole) is generally known confirms he is offering an irrelevant opinion and justifies exclusion.

Warren conducts a similar analysis.  *See, e.g.*, Ex. 3 ¶¶ 127-219 (███████████ ████████████████████████████ ██████).  Warren then summarily concludes, without any analysis, that the full trade secret was generally known.  *Id.* ¶ 220; *see also* ¶¶ 221-367 ████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████

-9-

█████████████████████████████████████████████████████████████

████████████████████████   The Sarrafzadeh and Warren opinions are legally irrelevant and would confuse the jury for multiple reasons.

**First**, Sarrafzadeh and Warren's patent-like analysis is irrelevant to determining whether a trade secret lacks independent economic value because it is generally known to the relevant people in the industry.  As discussed, "patentability is not a condition precedent to the classification of a trade secret."  *See Sinclair*, 42 Cal. App. 3d at 222.  Thus, courts should not examine a trade secret "bit by bit" while requiring the plaintiff "demonstrate protectability of its elements or some of them" rather than the protectability as a whole.  *Altavion*, 226 Cal. App. 4th at 47.  Moreover, the generally-known inquiry is "not whether the alleged trade secret has been publicly disclosed at all, but whether it has become generally known to the relevant people . . . ."  *See True Wearables III*, 2022 WL 17083396, at *9.  Sarrafzadeh and Warren's "attempts to show that [Masimo's] alleged trade secrets were known in the prior art" are not relevant.  *See Imi-Tech,* 691 F. Supp. at 231.

**Second**, Sarrafzadeh and Warren's analysis fails to show any portion of the industry knows of the sources they cite, much less the specific material cited therein.  As this Court explained, merely because documents are "published" does "not mean that the particular techniques described in them were 'generally known' to people who could obtain economic value from developing noninvasive blood content detectors."  *True Wearables I*, 2021 WL 2548690, at *4.

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

1

2

3

4     Apple's Experts' opinions are

5 irrelevant to whether the trade secrets were generally known to the public or persons

6 who could obtain economic value from the trade secrets' use or disclosure.

7

8

9

10

11

12 Sarrafzadeh and Warren do not attempt to show several trade secrets are even disclosed

13 by a single source, much less that they are generally known to relevant people in the

14 industry.

15

16

17

18

19       The Sarrafzadeh and Warren opinions that are based on combinations of sources

20 are legally irrelevant because cobbling together multiple sources is insufficient to show

21 a trade secret is generally known to relevant people in the industry. *See Altavion*, 226

22 Cal. App. 4th at 47 ("[E]ven if some or all of the elements of [plaintiff's] design were in

23 the public domain and thus unprotectable, the combination was a protectable trade secret

24 if it was secret and had independent economic value."); *Am. Can Co.*, 728 F.2d at 819.

25 Sarrafzadeh and Warren also do not even attempt to show it was generally known to

26 cobble together the sources in the same manner as they did.

27 / / /

28 / / /

Accordingly, Sarrafzadeh and Warren's opinions on the "generally known" requirement are contrary to law and should be excluded. *Carroll Shelby Licensing*, 2021 WL 8531241, at \*7; *Daubert I*, 509 U.S. at 595.

### 3.  <u>Perez and Kivetz Contradict the Correct Legal Standard</u>

Like Sarrafzadeh and Warren, Perez and Kivetz analyze the trade secrets as if they were claimed in a patent and attempt to show they are "publicly disclosed."   For example, Perez compares incomplete aspects of the trade secrets to several sources and then summarily concludes that, "[a]ccordingly," each trade secret was generally known. Ex. 6 ¶¶ 44-121.

Kivetz similarly compares incomplete aspects of the trade secrets to several sources in asserting the trade secrets are "generally known."  Ex. 8 § E.1; *id.* ¶¶ 118-42. Kivetz also attempts to combine disclosures from multiple sources to assert the trade secrets were disclosed by companies marketing certain products.  *Id.* §§ E.2 & E.3. Perez and Kivetz's analyses are legally irrelevant, including for many of the same reasons discussed above with respect to Sarrafzadeh and Warren.

***First***, Perez and Kivetz's patent-like analysis is irrelevant to whether a trade secret is generally known. *See Sinclair*, 42 Cal. App. 3d at 222; *True Wearables II*, 2022 WL 205485, at \*4.  Perez and Kivetz's "attempts to show that [Masimo's] alleged trade secrets were known in the prior art" are irrelevant.  *See Imi-Tech*, 691 F. Supp. at 231.

***Second***, Perez and Kivetz also fail to show any portion of the industry knows of the sources they cite, much less the specific material cited therein or combinations proposed.  Perez and Kivetz did not address how many people in the industry know of the trade secrets. ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

***Third***, Perez and Kivetz impermissibly cobble together multiple sources in an attempt to show trade secrets were generally known.  Perez never identifies any source that allegedly discloses the entirety of any of Masimo's trade secrets.  Instead, he divides each trade secret into aspects and attempts to show different sources disclose each aspect.  Ex. 6 ¶¶ 44-57 (B&M-1 first aspect), 58-59 (B&M-1 second aspect), 61-98 (B&M-2 through B&M-5), 101-04 (B&M-6 first aspect), 105 (B&M-6 second aspect), 115-21 (HI-5).[2]  He completely ignores parts of some trade secrets.  *Id.* ¶¶ 41-59 (████ ███████████████████████████████).  He then summarily concludes that each trade secret is well known.  *Id.* ¶¶ 60 (B&M-1), 70 (B&M-2), 78 (B&M-3), 92 (B&M-4), 98 (B&M-5), 106 (B&M-6), 122 (HI-5).

Kivetz similarly fails to identify any source that allegedly discloses the entirety of any trade secret.  █████████████████████████████████████████████████████████ ████████████████████████████████  Kivetz divides each trade secret into aspects and attempts to show different sources disclose different aspects.  Ex. 8 ¶¶ 119-25 (B&M-1), 126-41 (B&M-2 through B&M-5), 142 (B&M-6).[3]  Like Perez, Kivetz also ignores parts of some trade secrets.  ████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████  In later portions of his report, Kivetz similarly cobbles together multiple sources to claim the trade secrets are "known."  *Id.* ¶¶ 144-86.  Kivetz fails to identify any source that allegedly discloses a complete trade secret, much less show the full trade secret is generally known in the industry.  *See id.*

---

[2] B&M-2 through B&M-5 incorporate all of B&M-1.  Similarly, HI-5 incorporates all of HI-4.  Perez considers the unique material from B&M-2 through B&M-5 and HI-5 in a vacuum without considering the material incorporated from other trade secrets.

[3] Like Perez, Kivetz considers the unique material from B&M-2 through B&M-5 in a vacuum without considering the material incorporated from B&M-1.

The Perez and Kivetz opinions that are based on combinations of sources are legally irrelevant because cobbling together multiple sources is insufficient to show a trade secret is generally known to relevant people in the industry. *See Altavion*, 226 Cal. App. 4th at 47; *Am. Can Co.*, 728 F.2d at 819. Perez and Kivetz also do not even attempt to show it was generally known to cobble together the sources in the same manner as they did.

Accordingly, Perez and Kivetz's generally known opinions are legally irrelevant and should be excluded. *Carroll Shelby Licensing*, 2021 WL 8531241, at *7; *Daubert I*, 509 U.S. at 595.

## C. <u>Perez and Kivetz's Opinions Should Be Excluded For Additional Reasons</u>

Perez and Kivetz's "readily ascertainable" and "generally known" opinions are also irrelevant and unreliable because they do not address the trade secrets as written. Instead, they rewrite the trade secrets and then claim that the rewritten subject matter is generally known or readily ascertainable. ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ That is not the language of B&M-1. *See id.* ¶ 41.
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ Perez also rewrites the other trade secrets. Ex. 6 ¶¶ 61-128.

Kivetz similarly rewrites the trade secrets with different language and analyzes the rewritten trade secret, rather than the trade secret as written. ██████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

1  ███████████████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  ███████████████████████████████████████████████████

4  ███████████████████████████████████████████████████

5  ███████████████████████████████████████████████████

6  ████████████████████████████████████

7  ███████████████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ██████████████████████████████████████

15      That approach is irrelevant because it does not address or inform whether

16 Masimo's actual trade secrets are generally known.  Kivetz's rewriting significantly

17 deviates from the trade secret as articulated and removes large portions of the trade

18 secret.  Far from providing his "understanding" of the trade secret, Kivetz removes

19 substantive details in an attempt to generalize the trade secret so that it matches his

20 opinions.

21          ██████████████████████████████████████████

22 ███████████████████████████████████████████████████

23 ███████████████████████████████████████████████████

24 ████████████████████████████████████████████  As

25 discussed, attempting to show a trade secret could be created from numerous different

26 sources is insufficient to show the trade secret is generally known.  *See Am. Can Co.*,

27 728 F.2d at 819 ("'obviousness' is not the benchmark" in trade secrets action).  That is

28 because "even if some or all of the elements of [plaintiff's] design were in the public

1  domain and thus unprotectable, the combination was a protectable trade secret if it was

2  secret and had independent economic value." *Altavion*, 226 Cal. App. 4th at 47. ███

3  ██████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████████

8  ████████████████████████  Such testimony will be confusing to the jury and

9  should be excluded.

10      Accordingly, Perez and Kivetz's "generally known" and "readily ascertainable"

11  opinions should be excluded as irrelevant and unreliable because they do not address the

12  trade secrets as written. *See Daubert I*, 509 U.S. at 595; *Kumho Tire*, 526 U.S. at 149.

13      **V.  <u>CONCLUSION</u>**

14      Masimo respectfully requests the Court exclude the identified opinions.

15

16      Respectfully submitted,

17      KNOBBE, MARTENS, OLSON & BEAR, LLP

18

19  Dated: <u>January 9, 2023</u>    By: <u>*/s/ Adam B. Powell*</u>

20      Joseph R. Re
    Stephen C. Jensen

21      Benjamin A. Katzenellenbogen
    Perry D. Oldham

22      Stephen W. Larson
    Mark D. Kachner

23      Baraa Kahf
    Adam B. Powell

24      Daniel P. Hughes
    Justin J. Gillett

25      Attorneys for Plaintiffs

26      MASIMO CORPORATION and

27      CERCACOR LABORATORIES, INC.

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 5,348 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].


Dated: January 9, 2023              By: */s/ Adam B. Powell*
                                         Joseph R. Re
                                         Stephen C. Jensen
                                         Benjamin A. Katzenellenbogen
                                         Perry D. Oldham
                                         Stephen W. Larson
                                         Mark D. Kachner
                                         Baraa Kahf
                                         Adam B. Powell
                                         Daniel P. Hughes
                                         Justin J. Gillett

                                         Attorneys for Plaintiffs
                                         MASIMO CORPORATION and
                                         CERCACOR LABORATORIES, INC.