Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MEMORANDUM IN SUPPORT OF MASIMO'S CONTINGENT MOTION TO STRIKE AND REQUEST FOR EVIDENTIARY SANCTIONS**<br><br>Date:       February 6, 2023<br>Time:       1:30 p.m.<br>Location:   Courtroom 10C |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

Page No.

I.  NATURE OF MOTION ..................................................................... 1

II.  INTRODUCTION ............................................................................ 1

III.  LEGAL STANDARD ....................................................................... 2

IV.  ARGUMENT ................................................................................... 3

   A.  Apple's Strict Standard Of Disclosure ................................... 3

   B.  If The Court Were To Adopt Apple's Standard, The Court Should Also Strike Many Of Apple's Expert Opinions and Theories ................................................................................... 4

      1.  Apple's Experts Offer New Opinions and Theories That Apple Did Not Disclose During Fact Discovery ..................... 6

         a)  Limitation-by-Limitation Inventorship Opinions ........... 6

         b)  Generally Known and Readily Ascertainable Opinions ....................................................................... 7

         c)  "Head Start" Advantage Opinions ............................... 8

         d)  Testing of an Apple Watch ............................................ 9

         e)  Apple's Opinion ███████████ ███████████████████████████ ........................... 10

      2.  Apple Holds Masimo to a Standard Apple Violates ............. 11

      3.  Under Apple's Standard, Apple Cannot Meet Its Burden To Show Its Conduct Was Substantially Justified Or Harmless ..................................................................... 12

   C.  If the Court Were To Adopt Apple's Standard, The Court Should Impose Evidentiary Sanctions For Apple Producing ████ ███████████ After Fact Discovery .................................... 14

      1.  Apple Failed to Produce ██████████████ Until After Fact Discovery Closed ................................................ 14

      2.  If the Court Were To Adopt Apple's Standard, Issue Sanctions Would Be Appropriate ....................................... 16

         a)  Apple Cannot Meet Its Burden To Show ████ ████████████ Production Was Substantially Justified Or Harmless ........................................................ 17

# TABLE OF CONTENTS

## (*cont'd*)

Page No.

   b)  Masimo's Proposed Sanction is Just and Tailored.........19

V. CONCLUSION .................................................................................20

# TABLE OF AUTHORITIES

**Page No(s).**

*Amos v. Makita U.S.A., Inc.,*
2011 WL 43092 (D. Nev. Jan. 6, 2011) ...........................................................5, 12

*Estate of Young Through Young v. Holmes,*
134 F.R.D. 291 (D. Nev. 1991) ............................................................................18

*Ethicon, Inc. v. U.S. Surgical Corp.,*
135 F.3d 1456 (Fed. Cir. 1998) ..............................................................................6

*F.D.I.C. v. Anderson,*
2012 WL 3728160 (E.D. Cal. Aug. 27, 2012) ..............................................5, 12

*F.D.I.C. v. First Heights Bank, F.B.,*
1998 WL 34363723 (E.D. Mich. Apr. 13, 1998) .................................................5

*In re Folding Carton Antitrust Litig.,*
76 F.R.D. 420, 423 (N.D. Ill. 1977) ....................................................................17

*Garrison v. Ringgold,*
2020 WL 6537389 (S.D. Cal. Nov. 6, 2020)........................................................3

*Glob. Music Rts., LLC v. Radio Music License Comm., Inc.,*
2020 WL 10692695 (C.D. Cal. Aug. 3, 2020) ....................................................18

*Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.,*
2015 WL 4771096 (E.D. Mich. Aug. 13, 2015)............................................5, 12

*Guzik Tech. Enters., Inc. v. W. Digital Corp.,*
2013 WL 6070414 (N.D. Cal. Nov. 18, 2013) .....................................................5

*Henry v. Gill Indus., Inc.,*
983 F.2d 943 (9th Cir. 1993) ..................................................................................3

*In re Heritage Bond Litig.,*
223 F.R.D. 527 (C.D. Cal. 2004)..........................................................................19

*Homeland Housewares, LLC v. Sharkninja Operating LLC,*
2016 WL 1698254 (C.D. Cal. Apr. 27, 2016) .......................................................5

*Leon v. IDX Sys. Corp.,*
464 F.3d 951 (9th Cir. 2006) ..................................................................................3

*Miniace v. Pac. Martime Ass'n,*
2006 WL 335389 (N.D. Cal. Feb. 13, 2006)........................................................18

*MLC Intell. Prop., LLC v. Micron Tech., Inc.,*
2019 WL 2863585 (N.D. Cal. July 2, 2019), *aff'd*, 10 F.4th 1358
(Fed. Cir. 2021)........................................................................................................3

# TABLE OF AUTHORITIES

## (*cont'd*)

Page No(s).

*Rhea v. Washington Dept. of Corrections*,
  2010 WL 5395009 (W.D. Wash. Dec. 27, 2010) ................................................ 17

*Ruiz v. XPO Last Mile, Inc.*,
  2016 WL 6781521 (S.D. Cal. Feb. 22, 2016) ...................................................... 17

*Sommerfield v. City of Chicago*,
  254 F.R.D. 317 (N.D. Ill. 2008) ............................................................................ 5

*Stern v. Trustees of Columbia Univ.*,
  434 F.3d 1375 (Fed. Cir. 2006) ............................................................................ 6

*Torres v. City of L.A.*,
  548 F.3d 1197 (9th Cir. 2008) ............................................................................ 13

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ............................................... 5, 12

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983) ................................................................................ 3

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 37 ...................................................................... 2, 3

Rule 26 ........................................................................................................... 1, 10, 12

Rule 30 ...................................................................................................................... 4

## I.     <u>NATURE OF MOTION</u>

Masimo Corporation and Cercacor Laboratories, Inc. (jointly, "Masimo") and Apple Inc. ("Apple") fundamentally disagree on the standard for striking evidence.  The Court should deny Apple's motions to strike under either standard.  The Court should also reject Apple's standard.  However, if this Court decides to apply Apple's standard to Masimo, then this Court should apply the same standard to Apple for consistency and fairness.  Doing so would result in striking the Apple expert opinions, theories, and supporting facts Apple failed to disclose during fact discovery.  Under Apple's standard, the Court should also bar Apple from arguing or presenting evidence that Apple did not use or acquire Masimo's Business And Marketing Plans And Strategies ("B&M") and Strategies For Interacting With Hospitals ("HI") Trade Secrets because Apple produced after fact discovery ▮▮▮▮▮▮ highly relevant to showing such use and acquisition.

## II.     <u>INTRODUCTION</u>

Apple asserts the Court should strike expert opinions, theories, or facts not disclosed in the same detail during fact discovery as the experts later explain.  Masimo disagrees and has repeatedly pointed out that Apple's approach would vitiate expert reports and expert discovery, turning the experts into mere mouthpieces for the lawyers' advocacy.  The normal and expected procedure is that the parties exchange anticipated arguments during fact discovery, and the experts form and disclose their opinions during expert discovery.  Indeed, Rule 26(a)(2)(B) would be redundant if parties needed to disclose during fact discovery a complete statement of all opinions that any expert witness might later express, all of the potential bases and reasons for those opinions, and all facts or data that the expert decides to rely upon.  The Federal Rules require such detail in expert reports, not in fact discovery.

If the Court were to adopt Apple's standard for striking probative evidence, the Court should apply the same standard to Apple.  Under Apple's incorrect standard, this Court would have to strike Apple's expert reports that present or rely on opinions,

theories, or facts Apple failed to disclose during fact discovery.

For example, Apple refused to respond to inventorship contention interrogatories on a limitation-by-limitation basis for the Disputed Patents.[1]  When Masimo moved to compel, the Special Master did not require Apple to disclose a limitation-by-limitation analysis *if* Apple did not intend to present such an analysis at trial.  Apple refused to provide such an analysis during fact discovery.   Apple's experts later offered a limitation-by-limitation analysis in their expert reports.  As another example, Apple never identified hundreds of references that its experts now rely on to opine that Masimo's trade secrets are "generally known."  Apple also never disclosed many other of its experts' other opinions, theories, or factual bases during fact discovery.

Apple also failed to produce ███████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████

Masimo has long alleged that Apple misappropriated Masimo's B&M and HI trade secrets through O'Reilly.  Because Masimo, not Apple, intends to rely on the ████████████████████████ to show Apple acquired and used the B&M and HI trade secrets, striking such evidence as late produced makes no sense.  Indeed, that would reward Apple for its late production.  Thus, a proper remedy would be to bar Apple from arguing or presenting evidence that it did not use or acquire Masimo's B&M and HI trade secrets.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides that "a party's failure to disclose or supplement information will result in that party being precluded from using

---

[1] The "Disputed Patents" ar ████████████████████████████████ ████████████████████████████████████████████████████

that information on a motion, at a hearing, or at trial, unless that failure was substantially justified or harmless." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2863585, at *12 (N.D. Cal. July 2, 2019), *aff'd*, 10 F.4th 1358 (Fed. Cir. 2021).

Courts may impose other sanctions under Rule 37, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i) and (ii). Courts also have "the inherent authority to issue sanctions in response to abusive litigation practices." *Garrison v. Ringgold*, 2020 WL 6537389, at *4 (S.D. Cal. Nov. 6, 2020) (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Sanctions must be just and specifically related to the particular claim at issue. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983). The "key factors" when determining whether to grant issue sanctions "are prejudice and the availability of lesser sanctions." *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 948 (9th Cir. 1993) (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   Apple's Strict Standard Of Disclosure

Apple has repeatedly advocated for a standard that requires striking or excluding any opinion, theory, and supporting facts not disclosed during fact discovery. *See, e.g.*, Dkt. 956-1 at 11 (moving to strike information Apple claims was raised for the first time after the close of fact discovery). Apple also applies that same standard to any supplemental discovery. Dkt. 956-1 at 11, 12. Apple even argued that theories disclosed during fact discovery should be excluded if the experts provide additional detail in their reports. *See* Dkt. 1013-1. For example, Apple moved to strike reasonable royalty calculations that relied on agreements, even though (1) Masimo produced the specific agreements during discovery, (2) the relied-upon agreements ███████████████ ██████████████████████████████████████████████ and (3) Masimo informed Apple that Masimo may rely on such agreements. *Id*. at 3, 7. Apple

-3-

complained that Masimo did not identify by name in an interrogatory response the specific documents the experts relied on.  *Id.*

Apple also applied *ex parte* to strike damages expert opinions about the ███████ ███████████ (Dkt. 1053-1), even though Masimo's interrogatory responses disclosed ████████████████████████████████████████████ Ex. 1 at 15-16, 22.[2] Apple also served Rule 30(b)(6) topics ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ Ex. 2 at 4 (Topic Nos. 40 and 41).  Masimo thoroughly prepared its designated witnesses to answer fact questions, but Apple did not ask questions about ██████████████████████ during depositions.  Apple then claimed that Masimo's expert opinions were "barred" because Masimo did not disclose the "fully formed damages theor[ies]" in its interrogatory response.  Dkt. 1053-1 at 4. The Court denied that application without prejudice to Apple filing a regularly noticed motion.  *See* Dkt. 1068.

Apple informed Masimo it planned to file such a regularly noticed motion.  Apple also said that it would move to strike portions of the declarations supporting Masimo's Motion For Partial Summary Judgement because they allegedly contain facts and opinions that are not contained in interrogatory responses and expert reports.  Apple refused to identify the supposedly new information and told Masimo it will file those motions on January 9 (the same day Masimo is filing this Motion).

**B.**   **If The Court Were To Adopt Apple's Standard, The Court Should Also Strike Many Of Apple's Expert Opinions and Theories**

Masimo maintains that expert reports are the appropriate place to disclose the details of an independent expert's opinions.  Experts should be able to review and consider all the information revealed through fact discovery and then refine and explain

---

[2] Unless noted otherwise, all exhibits and appendices are attached to the Declaration of Daniel P. Hughes (submitted herewith).

1   those opinions during expert discovery.  This is consistent with the requirement that
2   experts conduct independent analyses and ***not*** serve as mere mouthpieces for attorneys.
3   *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 2015 WL 4771096, at *9 (E.D.
4   Mich. Aug. 13, 2015) ("The key is making sure [the expert's] testimony is not a
5   mouthpiece of [the party]—'a party's lawyer's avatar'—because he would then
6   'contribute[ ] nothing useful to the decisional process.'"); *see also Waymo LLC v. Uber*
7   *Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017) (same); *Sommerfield*
8   *v. City of Chicago*, 254 F.R.D. 317, 324 n.5 (N.D. Ill. 2008) (same); *F.D.I.C. v. First*
9   *Heights Bank, F.B.*, 1998 WL 34363723, at *4 (E.D. Mich. Apr. 13, 1998) ("Justice will
10  be best served if the opinion set forth by the expert is truly an independent opinion
11  developed through the expert's own knowledge, skills and investigation rather than the
12  regurgitated opinion of the attorney."). It would be difficult, if not impossible, for an
13  expert to conduct an independent review of the evidence received in fact discovery, form
14  her own opinions based on that evidence, and limit her opinions to the analysis
15  performed by the attorneys before and during fact discovery.

16      Further, Apple's approach would strike probative evidence and prevent a trial on
17  the merits.  Courts prefer "deciding matters on the merits, rather than on procedural
18  missteps." *F.D.I.C. v. Anderson*, 2012 WL 3728160, at *3–4 (E.D. Cal. Aug. 27, 2012)
19  ("incomplete disclosure" of a non-retained expert did not justify exclusion). Even where
20  a party fails to timely disclose evidence cited in expert reports, "the court's goal always
21  is to resolve the case on the merits so long as undue prejudice can be avoided." *See also*
22  *Guzik Tech. Enters., Inc. v. W. Digital Corp.*, 2013 WL 6070414, at *7 (N.D. Cal. Nov.
23  18, 2013).  "Excluding expert testimony is not proper when there are other, less severe
24  sanctions available." *Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, at *4 (D. Nev. Jan.
25  6, 2011); *Homeland Housewares, LLC v. Sharkninja Operating LLC*, 2016 WL
26  1698254, at *5 (C.D. Cal. Apr. 27, 2016).  Thus, striking expert opinions and theories is
27  not appropriate where an expert expands on a party's disclosures.

28      Apple, however, has insisted on moving to strike Masimo's opinions, theories,

and supporting facts, arguing that the contention interrogatory responses must contain the same detail as provided by the experts.  As explained below, Apple's expert reports significantly violate its standard in two ways.  First, Apple's experts present numerous opinions and theories that Apple failed to disclose during fact discovery.  Second, they rely on extensive facts that Apple never identified during fact discovery.  If the Court were to adopt Apple's standard, the Court should strike the expert opinions and theories addressed in the following section.

## 1.   Apple's Experts Offer New Opinions and Theories That Apple Did Not Disclose During Fact Discovery

### a)   Limitation-by-Limitation Inventorship Opinions

Masimo served an interrogatory requesting the facts and evidence supporting Apple's position that the named Apple inventors are the true inventors of the Disputed Patents.  Ex. 3 at 14:2–12.  Inventorship of a patent is analyzed on a limitation-by-limitation basis for each claim because contribution of one limitation can make someone a joint inventor.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461-64 (Fed. Cir. 1998) (awarding joint inventorship to contributor of one limitation in each of two claims); *Stern v. Trustees of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) ("[C]ontribution to one claim is sufficient to be a co-inventor.").  Accordingly, Masimo requested that Apple provide a limitation-by-limitation analysis.  Ex. 4 at 2.  Masimo's request mirrored Apple's demand that Masimo provide a limitation-by-limitation analysis in response to Apple's corresponding interrogatory.  Ex. 5 at 1-2; Ex. 6 at 1-2.  Masimo provided the limitation-by-limitation analysis Apple requested.  Ex. 7 at 24:6-289:1.  Apple, however, refused to provide any limitation-by-limitation analysis, asserting that Apple need provide only a patent-by-patent analysis.  Ex. 8 at 2.

Masimo moved to compel a further response, including "a limitation-by-limitation analysis" of the Disputed Patents.  Ex. 9.  Apple conceded that it disclosed only "a patent-by-patent" analysis and argued it need disclose only the "evidence on which it will rely to *rebut* Plaintiffs' contentions on inventorship…."  Ex. 10 at 1, 4

1   (italics in original).

2         The Special Master ruled that Apple's interrogatory response was "insufficient to

3   put Plaintiffs on notice of Apple's factual bases for its rebuttal arguments…."  Dkt. 891

4   at 18:11-12 (the "Order").  However, the Special Master did not require Apple to provide

5   any specific level of detail.  *See id.* at 18:8-13.  Instead, the Special Master left it up to

6   Apple to decide how to present its case.  He gave Apple the following warning if Apple

7   chose not to disclose a limitation-by-limitation analysis:

8         If Apple otherwise decides that it need not prove inventorship of a
      particular limitation or rebut a particular inventorship argument made by
9         Plaintiffs on a limitation-by-limitation basis, that is Apple's prerogative,
      and ***Apple assumes the associated risk of that choice at this stage***.
10

11   *Id.* at 18:5-8 (emphasis added).

12         Apple supplemented its interrogatory response four times after the Special

13   Master's Order, each time exercising its "prerogative" to address inventorship only on a

14   patent-by-patent basis without addressing any individual claims or disclosing any

15   limitation-by-limitation analysis.  *See* Ex. 3 at 33:15-106:18.  Thus, Apple "assume[d]

16   the associated risk of that choice"—namely that Apple would not be able to present a

17   limitation-by-limitation theory through its experts or at trial.

18         On November 4, 2022, Apple served rebuttal reports from Sarrafzadeh and

19   Warren.  Those reports included the limitation-by-limitation opinions and theories that

20   Apple refused to provide during fact discovery.  *See* Ex. 11, ¶¶562–584, 603–687, 706–

21   745; Ex. 12, ¶¶438–449, 456–463, 473–565, 584–689.  This was the first time that Apple

22   ever disclosed a limitation-by-limitation analysis.

23         **b)**      **Generally Known and Readily Ascertainable Opinions**

24         Early in discovery, Masimo served an interrogatory requesting the "complete

25   basis" for Apple's position that Masimo's trade secrets were generally known or readily

26   ascertainable.  Ex. 13 at 33:8-15.  During fact discovery, Apple identified about 60

27   references it would rely upon to support its position.  *See id.* at 36:12-127:3.

28         In their opening and rebuttal reports, however, Apple's experts identified more

1  than 500 references to support their opinions that Masimo's trade secrets were generally

2  known and/or readily ascertainable.   Hughes Decl. ¶43.   Apple identified the vast

3  majority of these references after discovery closed.  Apple identified about 100 of those

4  references three weeks after the close of fact discovery. Ex. 13 at 127:5-290:12; *see also*

5  *id.* at 290:13-455:12; Appendix A.  Apple disclosed over 350 of the references for the

6  first time in its expert reports. *See* Appendix A.  Apple identified during fact discovery

7  only about 60 of the more than 500 references in Apple's expert reports.  Appendix A

8  to this motion lists the new references.

9        Apple's experts, Kivetz and Perez, also relied on other previously undisclosed

10  information.   Kivetz offered a new theory that Masimo's B&M trade secrets were

11  generally known or readily ascertainable based on "Marketing Principle[s]" and the

12  marketing of third-party products.   Ex. 14, Kivetz Rpt., ¶¶88-105 (Sections D.2.3

13  through D.2.4).   Perez similarly offered a new theory that Masimo's B&M trade secrets

14  were generally known or readily ascertainable based on third-party products. *See* Ex. 15,

15  Perez Rpt., ¶¶41-128.   Apple never disclosed these theories during fact discovery.

16  Appendix B identifies the new marketing principles and third-party products.

17        **c)    "Head Start" Advantage Opinions**

18        Masimo served an interrogatory requesting "all factual and legal bases concerning

19  the amount of monetary damages and extent of injunctive or other equitable relief to

20  which Plaintiffs would be entitled upon prevailing on each of Plaintiffs' claims against

21  [Apple]." Ex. 3 at 113:5-12.  Apple responded ████████████████████████████

22  ██████████████████████████████████████████████████████████████

23  ███████████ *Id*. at 126:5-20.

24        During fact discovery, Apple's only explanation ███████████████████

25  ██████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████

27  ███████████████████████  *Id*. at 126:16-20.  After fact discovery closed, Apple

28  supplemented its interrogatory response to add: ████████████████████████████

*Id.* at 152:8-10.  Apple never disclosed ███████████████████

███████████████████████

The rebuttal reports of Sarrafzadeh, Warren, and Kivetz ████████████

███████████████████████████████████████

*See* Ex. 11 at ¶¶148-150, 193-195, 240-242, 281-283, 322-324, 361-363, 397-399, 432-434, 467-469, 503-505, 539-541, 544; Ex. 12 at ¶¶135-137, 187-189, 228-232, 266-271, 313-317, 330, 338, 393-397, 404, 420, 431-433; Ex. 16 at ¶¶42, 43, 502-511.  Indeed, Kivetz relied on documents that were not even produced during fact discovery. Ex. 16 at ¶¶508-511 (relying on three unproduced articles and two documents produced after the close of fact discovery (APL-MAS_03064109 and APL-MAS_03064103)).  If Apple's approach of striking opinions not "fully formed" is adopted, these opinions should also be stricken.

### d) <u>Testing of an Apple Watch</u>

During expert discovery, Apple's expert Warren ████████████████

███████████████████ Ex. 12, Warren Rpt., at ¶719.  Warren then ███████████

███████████████████████████ *Id.* at ¶¶720-26.  Warren claimed ████████████

███████████████████████████ *Id.* at ¶718.

During fact discovery, Masimo requested Apple's "full and complete basis" as to how each "alleged trade secret lacks independent economic value," including the identity of any witnesses supporting its contentions.  Ex. 13 at 33:8-15.  Apple never disclosed ████████████ *See generally id* at 33:17-455:12.  Apple also never identified ████████████████████

███████████████████████████

-9-



1 ████████████████ Apple did not provide a █████ declaration or expert disclosure.

2 ████████████ might be routine under a normal expert discovery approach, but cannot

3 be allowed under the standard Apple proposes in its motions to strike.

   **e)** **Apple's Opinions** ████████████████████

   ████████████████

6 Apple's damages expert, Webster, opines that █████████████████

7 ████████████████████████████████ Ex. 17 at 62-

8 74. Webster bases her opinion on previously undisclosed theories obtained from Apple,

9 including the following:

20 Apple disclosed none of these theories during fact discovery.

21 Further, some of Webster's support for these theories ████████████████

22 ████████████████ *Id.* at 67-70. Apple did not provide a disclosure from

23 ████████ Under Apple's approach in its prior motions to strike, Apple should have

24 provided at least a disclosure of lay opinions under Rule 26(a)(2)(c). *See* Dkt. 956-1.

25 Apple also never disclosed the alleged facts that ████████ conveyed to Webster

26 during fact discovery. Indeed, in response to Masimo's damages contention

27 interrogatory, Apple gave only one reason to support its opinion that ████████████

28 ████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████  Ex. 3 at 143:1-4.

Again, Masimo contends experts routinely interview party employees and obtain specific facts and information from those witnesses during the expert phase.  However, Apple's disclosure standard would prohibit such a practice.

**2.    Apple Holds Masimo to a Standard Apple Violates**

Apple has been asking this Court to impose on Masimo a standard that Apple violates.  On the one hand, Apple's experts offer opinions and theories, and rely on supporting facts, that Apple never disclosed during fact discovery.  On the other hand, Apple insists that Masimo's experts cannot provide any additional analysis beyond what Masimo provided during fact discovery. Apple is applying a double standard.  Indeed, many of Apple's specific arguments apply with far greater force to Apple's own expert opinions.  For example:

- Apple relied on the Court's warnings about discovery disclosures in seeking to strike Masimo's damages theories. Dkt. 1045-1 at 3.  But Apple ignores the far stronger warning the Special Master issued to Apple when Apple refused to provide a limitation-by-limitation analysis.  *See supra*, Section III.B.1.a.

- Apple argued that Masimo "cannot rely on newly disclosed information raised for the first time after the close of fact discovery," including ████████ that were disclosed during fact discovery and then ██████████ ████████████████████  Dkt. 956-1 at 11, 12.  But Apple asserts its experts can rely upon about 450 references not disclosed during fact discovery to opine Masimo's trade secrets were generally known or readily ascertainable.  *See supra*, Section III.B.1.b.

- Apple argued a damages opinion Masimo disclosed during fact discovery should be excluded because it was not "fully formed." Dkt. 1053-1 at 4.  But Apple's "head start" opinions in its expert reports bear no resemblance to the bare-bones head start theory that Apple disclosed in fact discovery.  *See supra*,

-11-

Section III.B.1.c.

- Apple argued a full Rule 26(a)(2)(B) expert report is required for employees who conduct an analysis for the purpose of litigation.  Dkt. 956-1 at 8-10. Apple now argues Masimo's damages expert cannot even rely on such analysis.  Dkt. 1053-1 at 4-5.  But Apple's expert relies on the ███ ███████████████████████ created it solely for purposes of this litigation and never provided any disclosure of his analysis, much less a full Rule 26(a)(2)(B) expert report.  *See supra*, Section III.B.1.d.

- Apple argued the Court should strike Masimo's damages expert opinions that rely on "unrecorded conversation[s]'" with Masimo employees.  Dkt. 1053-1 at 5.  But Apple's damages expert relied on the same sort of "unrecorded 'conversation'" with an Apple employee to support her opinion ██████ ███████████████████████████████████████  *See supra*, Section III.B.1.e.

Further, unlike Masimo, many of the Apple expert opinions discussed above were disclosed in a ***rebuttal*** expert report, where Masimo had no chance to respond.  *See* Section III.B.1.a (Apple's limitation-by-limitation analysis), Section III.B.1.c (Apple's "head start" advantage theories), Section III.B.1.d (Apple's testing of an Apple Watch), and Sections III.B.1.e (Webster's business deal opinions). Because Masimo had no chance to respond, Apple's new opinions are prejudicial to Masimo.  Apple, on the other hand, had a full opportunity to respond to Masimo's reports through its rebuttal reports.

### 3.   Under Apple's Standard, Apple Cannot Meet Its Burden To Show Its Conduct Was Substantially Justified Or Harmless

Apple has repeatedly argued that ***any*** disclosures by Masimo after the close of fact discovery are not substantially justified or harmless.  *See, e.g.*, Dkt. 956-1 at 11. Masimo disagrees and believes expert discovery is the appropriate time to provide expert opinions. *See Gonzalez*, 2015 WL 4771096, at *9; *see also Waymo*, 2017 WL 6887043, at *5; *F.D.I.C.*, 2012 WL 3728160, at *3–4; *Amos*, 2011 WL 43092, at *4.  However, if

the Court were to adopt Apple's standard, Apple would not be able to establish its late disclosures discussed above were justified or harmless.

Apple has argued that expert opinions and theories disclosed after fact discovery should be struck if Masimo "failed to provide any reason" why an expert opinion or theory was not disclosed in an interrogatory. Dkt. 1013-1 at 11.  Here, Apple has yet to explain why the Apple opinions, theories, and facts discussed above were not disclosed until expert reports.

According to Apple, Masimo is "not required to articulate how [it] would be prejudiced" by Apple's violation of its discovery obligations. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).  Moreover, Apple has argued that expert opinions, theories, and facts disclosed after fact discovery are not harmless because Apple could have sought additional discovery from Masimo or third parties.[3]  *See, e.g.*, Dkt. 1013-1 at 11-12.  Here, Masimo could have questioned Apple witnesses, and sought third-party discovery, about Apple's newly disclosed opinions, theories, and facts.  For example, Masimo could have sought discovery on the references and facts that Apple now claims are relevant to inventorship of the Disputed Patents.  Masimo also could have sought discovery about the sources that Apple claims show Masimo's trade secrets were generally known or readily ascertainable, including discovery from the authors of such sources.  Masimo could have done the same for the facts that Apple claims show Masimo's damages would have been less than claimed.

Accordingly, Apple is attempting to impose a double standard.  Apple makes no attempt to explain why Masimo's damages opinions should be struck but Apple's opinions discussed above are proper.  If the Court were to apply Apple's disclosure standard, then the Court should strike the newly disclosed Apple theories, opinions, and

---

[3] Masimo offered additional discovery to Apple and requested that Apple identify the discovery it needs. Ex. 35 at 1; Ex. 36 at 5. But Apple refused to identify any additional discovery. *Id.*

facts discussed above.

**C.**   **If the Court Were To Adopt Apple's Standard, The Court Should Impose Evidentiary Sanctions For Apple Producing** ██████████████ **After Fact Discovery**

Just before the scheduled deposition of O'Reilly, a central figure in this case, Apple postponed the deposition.  Then, weeks after fact discovery closed, Apple produced ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████  If the Court were to adopt Apple's standard, the Court should sanction Apple by barring it from arguing or presenting evidence that it did not use or acquire Masimo's B&M and HI trade secrets.

**1.**   **Apple Failed to Produce** ██████████████ **Until After Fact Discovery Closed**

During discovery, Masimo served targeted requests for O'Reilly's documents. Exs. 18, 19, 20.  For example, Masimo requested O'Reilly's documents referring to Masimo (Ex. 18 at 61 (RFP No. 223); Ex. 19 at 24 (RFP No. 632)) and his contributions to the Apple Watch (Exs. 20 at 48-50 (RFP Nos. 563-565)).  Apple represented that it would search for and provide documents in response to Masimo's requests and ████████ ██████████████████████████████████████████ Exs. 18 at 61-62; Ex. 21 at 2; Ex. 19 at 24-25; Ex. 20 at 48-51; Ex. 22 at 1.

Just before O'Reilly's deposition, Apple postponed the deposition.  Ex. 23. Shortly thereafter, on August 30, 2022—two weeks after the close of fact discovery and almost three years into this case—Apple produced ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

-14-

1

2

3

4          strongly  support  Masimo's  claims  that  Apple

5   misappropriated Masimo's B&M and HI Trade Secrets.  Ex. 32, Palmatier Rpt., at ¶¶64-

6   137, 255-297, 337-372, 429-464, 521-570.  For example, as shown below,

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Yet, Apple did not produce this key evidence of misappropriation until *after* the close of fact discovery, almost three years into this case.

    2.    **If the Court Were To Adopt Apple's Standard, Issue Sanctions Would Be Appropriate**

If the Court were to adopt Apple's standard, the Court should sanction this late production. Striking ▒▒▒▒ or preventing Apple from relying on ▒▒▒▒ would not be an adequate remedy because ▒▒▒▒ strongly support Masimo, the non-producing party. Masimo, not Apple, is seeking to rely on ▒▒▒▒ Instead, the Court should issue a sanction barring Apple from disputing it acquired and used Masimo's B&M and HI trade secrets.

a)   **Apple Cannot Meet Its Burden To Show The** ███████

███████████ **Production Was Substantially Justified Or Harmless**

Apple has argued that facts disclosed after the close of fact discovery should be struck if there is "no [] explanation" as to why the information was not provided earlier. Dkt. 1079-1 at 9.  Apple has yet to explain why it did not ask O'Reilly—a key witness— whether he had Masimo documents for over **two years**.  *See Rhea v. Washington Dept. of Corrections*, 2010 WL 5395009, at *3-5 (W.D. Wash. Dec. 27, 2010) (compelling counsel to be "diligent in ensuring a full and complete search" for responsive documents because counsel previously never asked some witnesses to search for responsive documents and other witnesses only searched for minutes in a few locations).  Indeed, at his deposition, ████████████████████████████████████████████ ██████████████████████████████████ Ex. 38 (O'Reilly) at 188:17-189:19. Apple's failure to produce the ██████████████ is particularly unjustified because, on ████████████████████████████████████████████████████ ████████████████████████████████████████

Moreover, as discussed, Apple argued that Masimo "cannot rely on newly disclosed information raised for the first time after the close of fact discovery."  Dkt. 956-1 at 11, 12.  Yet Apple produced thousands of pages of highly relevant, critical evidence in this case after the close of fact discovery.

After producing the ██████████████ Apple claimed that it had no obligation to produce them because they were outside of Apple's custody or control.  *See* Ex. 37 at 1, 4.  Apple's claim is specious.  First, Apple has insisted on maintaining control of the ████████████████████████████████████████ Ex. 31 at 1.  It is also well- settled that "'a party need not have actual possession of documents to be deemed in control of them.'"  *Ruiz v. XPO Last Mile, Inc.*, 2016 WL 6781521, at *4 (S.D. Cal. Feb. 22, 2016) (quoting *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977)).  Rather, "[a] party may be deemed in control of a document if it has the legal right to obtain it from a third party upon demand."  *Id.*  Such "'control is usually the

-17-

1   result of statute, affiliation or ***employment***.'"   *Id.* (emphasis added) (quoting *Estate of*

2   *Young Through Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991)); *Miniace v. Pac.*

3   *Martime Ass'n*, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006) ("Numerous courts

4   have found that corporations have control over their officers and employees and that

5   corporations may be required to produce documents in their possession."); *Glob. Music*

6   *Rts., LLC v. Radio Music License Comm., Inc.*, 2020 WL 10692695, at *2 (C.D. Cal.

7   Aug. 3, 2020) (same, citing *Miniace*).  Because O'Reilly is a senior level employee of

8   Apple, Apple has control of ████████████████

9   ███████████████████████████████████████████

10  ███████████████████████████████████████████

11  ███████████████████████████████████████████

12  ███████████████████████████████████████████

13  ███████████████████████████████████████████

14  ███████████████████████████████████████████

15  ███████████████████████████████████████████

16  ███████████████████████████████████████████

17  ███████████████████████████████████████████

18  ███████████████████████████████████████████

19  ███████████████████████████████████████████

20  ███████████████████████████████████████████

21  ███████████████████████████████████████████

22  ███████████████████████████████████████████

23  ███████████████████████████████████████████

24  ███████████████████████████████████████████

25  ███████████████████████████████████████████

26  ███████████████████████████████████████████

27  ███████████████████████████████████████████

28  ███████████████████████████████████████████

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ████████████████████████████████

4      Apple has argued it was prejudiced by information produced after fact discovery

5 because Apple's experts were deprived of the opportunity to address the new

6 information. Dkt. 1079-1 at 10. Apple also argued it was prejudiced because it could

7 have sought additional discovery from Masimo during fact discovery. Dkt. 1013-1 at

8 11-12.

9      Apple deprived Masimo of the ability to fully address the new information when

10 Apple produced ████████████████████████ just before expert reports were

11 due. Unlike Apple, Masimo did its best to review and analyze the information in a few

12 short weeks. However, Masimo was prejudiced by Apple's failure to provide this

13 information for years during fact discovery because Masimo would have sought and

14 taken additional discovery. For example, ██████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ██████████████████████████████████████████████ *See, e.g.,*

18 Ex. 38, O'Reilly Tr. at 96-102, 104-05, 108-09, 111-14, 126, 129, 135, 136, 141, 155-

19 58, 160, 162-65, 167-68, 198-200, 202, 209, 220. █████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ██████████████████████████████████ If Apple had produced the

23 notebooks earlier, Masimo could have asked other Apple witnesses about the subject

24 matter of, for example, ████████████████████████

25      **b)**    <u>**Masimo's Proposed Sanction is Just and Tailored**</u>

26      A sanction barring Apple from arguing or presenting evidence that it did not use

27 or acquire Masimo's B&M and HI trade secrets is just and tailored to the trade secrets

28 impacted by Apple's late production of ██████████████████ *See In re Heritage Bond*

*Litig.*, 223 F.R.D. 527, 530, 533 (C.D. Cal. 2004) (issuing evidentiary sanction barring defendant from presenting defense against particular cause of action because defendant failed to produce documents). The ███████████ are critical evidence that show Apple used or acquired the B&M and HI trade secrets. Apple would still be able to present other defenses, such as arguing Masimo's trade secrets were generally known. Thus, Masimo's request is narrowly tailored to affect only those trade secrets and proofs impacted by Apple's late production.

Further, Masimo balanced the requested sanction against lesser sanctions to arrive at the request. A different sanction, such as striking the ██████████ is improper when Masimo, not Apple, seeks to rely on ████████ Indeed, striking ████████ would actually help Apple. A monetary sanction is insufficient because it does nothing to cure the prejudice to Masimo. Moreover, monetary sanctions would not deter Apple—a trillion-dollar company—from advantageously withholding key documents supporting its opponents until late or even after fact discovery closes. Masimo is not requesting the stronger sanction that Apple be conclusively found to have misappropriated certain trade secrets. Masimo must still present evidence Apple used or acquired its trade secrets and respond to Apple's arguments unrelated to Apple's use or acquisition. Thus, this request fairly balances lesser sanctions and deterring future misconduct.

## V.   CONCLUSION

If the Court were to adopt Apple's disclosure standard, Masimo respectfully requests the Court (1) strike Apple's expert opinions disclosed after fact discovery and (2) issue evidentiary sanctions barring Apple from arguing or presenting evidence that it did not use or acquire Masimo's B&M and HI trade secrets.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 9, 2023          By: /s/ Daniel P. Hughes
                                   Joseph R. Re
                                   Stephen C. Jensen
                                   Benjamin A. Katzenellenbogen
                                   Perry D. Oldham
                                   Stephen W. Larson
                                   Mark D. Kachner
                                   Baraa Kahf
                                   Adam B. Powell
                                   Daniel P. Hughes
                                   Justin J. Gillett

                                   Attorneys for Plaintiffs
                                   MASIMO CORPORATION and
                                   CERCACOR LABORATORIES, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,228 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].


Dated: January 9, 2023          By: */s/ Daniel P. Hughes*
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Benjamin A. Katzenellenbogen
                                     Perry D. Oldham
                                     Stephen W. Larson
                                     Mark D. Kachner
                                     Baraa Kahf
                                     Adam B. Powell
                                     Daniel P. Hughes
                                     Justin J. Gillett

                                     Attorneys for Plaintiffs
                                     MASIMO CORPORATION and
                                     CERCACOR LABORATORIES, INC.