MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

    Plaintiffs,

  v.

APPLE INC.,
a California corporation,

    Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT JEFFREY KINRICH UNDER FRCP 37 AND/OR *DAUBERT***

Date: February 6, 2023
Time: 1:30pm

Pre-Trial Conference: Mar. 13, 2023
Trial: Mar. 28, 2023

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2   SARAH R. FRAZIER, *pro hac vice*
      sarah.frazier@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   60 State Street
    Boston, MA 02109
5   Tel.: 617.526.6000 / Fax: 617.526.5000

6   NORA Q.E. PASSAMANECK, *pro hac vice*
      nora.passamaneck@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   1225 Seventeenth Street, Suite 2600
    Denver, CO 80202
9   Tel.: 720.274.3152 / Fax: 720.273.3133

10  BRIAN A. ROSENTHAL, *pro hac vice*
      brosenthal@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
12  New York, NY 10166-0193
    Tel.: 212.351.2339 / Fax: 212.817.9539

13  KENNETH G. PARKER, SBN 182911
      Ken.parker@haynesboone.com
14  HAYNES AND BOONE, LLP
    660 Anton Boulevard, Suite 700
15  Costa Mesa, CA 92626
    Tel.: 650.949.3014 / Fax: 949.202.3001

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

# <u>TABLE OF CONTENTS</u>

**Page**

Introduction ........................................................................................................... 1

Background ............................................................................................................ 2

    A.    Plaintiffs Produce Untimely Cost Analyses And Rule 26(a)(2)(C) Disclosures Containing Undisclosed Damages Theories ........................ 2

    B.    Kinrich's Expert Report Relies On The Untimely Priddell And Muhsin Disclosures ................................................................................ 3

    C.    Kinrich's Opinions Fail To Account For The Number Or Type Of Purported Secrets Misappropriated—Or The Type Of Misappropriation ........................................................................................ 6

    D.    This Court Holds That The Priddell And Muhsin Disclosures Violate FRCP 26 ..................................................................................... 7

    E.    Plaintiffs Serve A "Supplemental" Kinrich Report .................................. 8

Argument .............................................................................................................. 10

I.    Kinrich's Lost Profits Opinions And Unjust Enrichment "Cost Savings" Opinion Should Be Struck ...................................................................... 10

    A.    The Lost Profits And "Cost Savings" Analyses Are Premised On Material That This Court Excluded ....................................................... 10

    B.    Kinrich's Supplemental Report Still Relies On Stricken Opinions And Analyses ...................................................................................... 13

    C.    Kinrich's Supplemental Report Should Also Be Struck As Untimely .............................................................................................. 16

    1.    The November 30, 2022 Report Violates FRCP 26(e) ............................ 16

    2.    The Proper Remedy For Plaintiffs' FRCP 26(e) Violation Is To Strike The Entire Supplemental Report ................................................... 17

II.    This Court Should Exclude All Of Kinrich's Lost Profits and Unjust Enrichment Opinions Because They Lack Any Reliable Connection to Apple's Purported Misappropriation ................................................................. 18

Conclusion .......................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  399 F. Supp. 2d 1064 (N.D. Cal. 2005) ............................................................. 19

*Abarca v. Merck*,
  2010 WL 4643642 (E.D. Cal. Nov. 9, 2010) ...................................................... 10

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
  28 Cal. App. 5th 923 (2018) ............................................................................... 18

*Bladeroom Group Limited v. Emerson Elec. Co.*,
  20 F.4th 1231 (9th Cir. 2021) (Rawlinson, J., concurring) ................................ 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2017 WL 10434367 (N.D. Cal. Jan. 23, 2017).................................................... 10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)....................................................................................... 10, 20

*LivePerson, Inc. v. [24]7.AI, Inc.*,
  2018 WL 6257460 (N.D. Cal. Nov. 30, 2018) .................................................... 19

*Luke v. Fam. Care & Urgent Med. Clinics*,
  323 F. App'x 496 (9th Cir. 2009) ................................................................. 16, 17

*M2M Solutions, LLC v. Motorola Solutions, Inc.*,
  2016 WL 767900 (D. Del. Feb. 25, 2016).................................................... 10, 12

*Merchant v. Corizon Health, Inc.*,
  993 F.3d 733 (9th Cir. 2021) .............................................................................. 17

*Reinsdorf v. Skechers U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. 2013) ................................................................ 17

*Rojas v. Marko Zaninovich, Inc.*,
  2011 WL 4375297 (E.D. Cal. Sept. 19, 2011) ................................................... 17

Wilmer Cutler
Pickering Hale
and Dorr LLP

*San Francisco Baykeeper v. City of Sunnyvale*,
    2022 WL 4133299 (N.D. Cal. Sept. 12, 2022) ................................................... 10

*Shell & Slate Software Corp. v. Adobe Sys. Inc.*,
    2004 WL 5486635 (C.D. Cal. Sept. 17, 2004) .................................................. 19

*In re Toyota Motor Corp. Unintended Acceleration Mkg., Sales Pracs., &*
    *Prod. Liab. Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) ............................................................. 10

*Windeler v. Cambria Community Servs. Dist.*,
    2021 WL 5411887 (C.D. Cal. Oct. 19, 2021) .................................................. 16

**Statutes and Rules**

Cal. Civ. Code § 3426.3(a) ........................................................................................ 18

California Uniform Trade Secrets Act ...................................................................... 18

Fed. R. Evid. 702 ...................................................................................................... 10

Fed. R. Civ. P. 26 ........................................................................... 2, 7, 8, 16, 17

Fed. R. Civ. P. 37 ...................................................................................................... 17

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

This Court should exclude the lost profits and unjust enrichment opinions of Plaintiffs' damages expert Jeffrey Kinrich—both because they rely on information and opinions already excluded by the Court and because they are based on an unreliable methodology that fails to assign damages based on the purported harm caused by Apple's alleged misappropriation.

*First*, Kinrich's lost profits and one of his unjust enrichment theories are predicated on (1) his assumption that but for Apple's alleged misappropriation, Plaintiffs would have developed a hypothetical health module for incorporation into Apple Watch █████ and (2) the cost estimates for that module.  But the Court previously excluded all the sources for Kinrich's assumptions—namely opinions and analyses of Masimo employees Bilal Muhsin and Richard Priddell—as untimely disclosed.  Dkt. 1031 at 10.  Following this Court's ruling, Plaintiffs served a woefully untimely "Supplemental" Report from Kinrich that attempts to end-run this Court's order by citing to "conversations" with Muhsin and Priddell and the cost estimates they generated rather than the disclosures themselves.  These changes in attribution do not alter the fact that Kinrich's opinions are still premised on the same hypothetical opinions and made-for-litigation analyses this Court struck.

*Second*, this Court should exclude all of Kinrich's lost profits and unjust enrichment theories because they fail to differentiate among the twenty-nine currently-asserted secrets.  Kinrich opines that the amount of lost profits or disgorgement Apple owes is the same regardless of whether Apple is found to have misappropriated one purported secret or all of them, and regardless of what use or benefit, if any, Plaintiffs allege Apple received from the alleged secret(s).  By definition, this methodology is unreliable as it ignores the requirement that any harm or unjust enrichment must be substantially caused by the alleged misappropriation.

Wilmer Cutler
Pickering Hale
and Dorr LLP

# BACKGROUND

**A.    Plaintiffs Produce Untimely Cost Analyses And Rule 26(a)(2)(C) Disclosures Containing Undisclosed Damages Theories**

On August 18, 2022, six days after the close of fact discovery, Plaintiffs produced fifteen documents, including fourteen spreadsheets, bearing the Bates numbers MASA03583610 through MAS03583633.  Ex. 1 at 3.  Apple immediately inquired as to the justification for Plaintiffs' late production.  *Id.* at 1-2.  Plaintiffs' counsel responded: "The documents produced [on August 18] were an update to an analysis that Masimo previously conducted and produced.   This is not an analysis that Masimo performs in the ordinary course of business, nor are the documents produced kept in the ordinary course of business.  Rather this analysis was done for this litigation as part of expert discovery." *Id.* at 1.

On September 23, 2022, Plaintiffs served FRCP 26(a)(2)(C) disclosures for Richard Priddell and Bilal Muhsin.  Dkt. 959 at 5.  Priddell's and Muhsin's disclosures both discuss a nonexistent, hypothetical future product that they called the "Masimo Health Module."

Muhsin hypothesized that, had Masimo ███████████████████, Masimo could have manufactured the hypothetical module ██████████ the schedule on which it actually manufactured its W1 smartwatch, Masimo's first (and only) product with a wrist-based sensor. *See* Dkt. 959 at 12. ████████████████████ ████████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████ ██████████████████████████ *Id.* ¶¶16-17.  As part of his analysis, Muhsin identified thirteen of the spreadsheets produced on August 18 and indicated that they were updates to earlier versions of a costs analysis. *Id.* ¶¶18-26.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Priddell's disclosure likewise describes the analyses he was asked to conduct related to the hypothetical module.  *See* Dkt. 959 at 8.  ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ █ ██████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

███

On September 30, 2022, Apple sent Plaintiffs a letter detailing its objections to the Priddell and Muhsin disclosures.  Dkt. 959-7.  As discussed below, Apple later successfully moved to strike these disclosures.  *See infra* pp. 7-8.

**B.     Kinrich's Expert Report Relies On The Untimely Priddell And Muhsin Disclosures**

On October 6, 2022, Plaintiffs served Kinrich's report regarding purported lost profits, unjust enrichment, and reasonable royalty damages.[2]  As to lost profits, Kinrich opined that Plaintiffs are entitled to either $2.1 billion or $3.7 billion (depending on whether the award is U.S. or worldwide) resulting from Masimo's purported lost sales of the non-existent, hypothetical sensor module that Muhsin and Priddell assumed

---

[1] MASA03583619 was produced on August 18.  *See* Ex. 1 at 3.

[2] Plaintiffs served an "Updated Report" from Kinrich on October 17, 2022.  Although the "Updated Report" made numerous changes to Kinrich's calculations, it suffers from the same problems as the October 6, 2022 report that are described in this motion.  For clarity, Apple cites to the October 17, 2022 report.

---

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs would have offered to Apple, and Apple would have agreed to purchase, for incorporation into Apple Watch.  Ex. 4 ¶8; Ex. 5.  To reach this high dollar range, Kinrich was "asked to assume that, but for the misappropriation, Apple would have engaged Masimo to supply components and software embodying the Trade Secrets[.]"  Ex. 4 ¶62; *see also id.* ¶¶61, 63.  Kinrich's but-for analysis then relied entirely on Muhsin's hypothetical opinion that Plaintiffs were █████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████  More specifically, Kinrich relied on the opinions in Muhsin's disclosure that Masimo ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████ ██████████████████████.[3]

        Having assumed—based on Muhsin's hypothetical opinions—that Masimo *could* have manufactured a sensor module for Apple and on what timeline it would have done so, Kinrich then ████████████████████████████████████████████ ████████████████████████████████.  Ex. 4 ¶88.  Kinrich's approach to

───────────────────────

[3] All emphases added unless otherwise noted.

Wilmer Cutler
Pickering Hale
and Dorr LLP

estimating development costs also relies on the opinions from Muhsin's disclosure (*id.* ¶¶90-91 & nn.231-232), and his



Finally, Kinrich applied a mark-up to the estimated per unit costs to opine on the price at which he believes Apple would have purchased the hypothetical module (Ex. 4 ¶¶102-109) and, ultimately, Masimo's alleged lost profits from those purchases (*id.* ¶¶122-123).

As to unjust enrichment, Kinrich provided two theories, the first of which attempts to estimate Apple's alleged cost savings from developing its own sensor module instead of purchasing the hypothetical Masimo Health Module. Ex. 4 ¶143. This theory of unjust enrichment relies on the same "but for" assumptions as Kinrich's lost profits opinion. *See* Ex. 6 at 209:17-211:8; *supra* pp. 3-4. It also relies on the same costs of the hypothetical Masimo module as his lost profits opinion—i.e., the analyses described in Muhsin's and Priddell's disclosures. Ex. 4 ¶¶143-145; *supra* pp. 2-3.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1 ███████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████.  Building on

3 Priddell's and Muhsin's (now stricken) analyses, Kinrich opines that Apple's cost

4 savings resulted in unjust enrichment of between $3.2 and $6.8 billion.  Ex. 4 ¶145;

5 Ex. 5.

6       Kinrich's alternative measure of unjust enrichment (which does not rely on the

7 stricken disclosures) purports to calculate the profit attributable to the Blood Oxygen

8 feature and the ECG feature in Apple Watch Series 6 and Series 7.  Kinrich opines all

9 such profits—between $1.4 billion in the U.S. and $3.1 billion worldwide—constitute

10 Apple's unjust enrichment.  *Id.* ¶163.

11     **C.**     **Kinrich's Opinions Fail To Account For The Number Or Type Of**

12               **Purported Secrets Misappropriated—Or The Type Of**

13               **Misappropriation**

14       None of Kinrich's lost profits or unjust enrichment opinions vary based on the

15 extent of alleged misappropriation; he opines that Plaintiffs' purported lost profits and

16 Apple's alleged unjust enrichment would be identical whether Apple is found to have

17 misappropriated one trade secret or all asserted secrets.  Ex. 6 at 73:22-74:5 ████████

18 █████████████████████████████████████████████████████████████

19 ████████████████████████████████; *see also* Ex. 4 ¶¶64, 141.

20       Throwing causality out the window, Kinrich's opinions similarly do not vary

21 based on *which* alleged secrets the jury may find misappropriated (e.g., whether the

22 purported secret involves a ████████████████████████) or how—if at

23 all—Apple is alleged to have used the secret.  Ex. 6  at 76:14-17 ████████████

24 █████████████████████████████████████████████████████████

25 ██████████████████████.  Despite Plaintiffs' accusation that Apple

26 misappropriated over two dozen secrets, Kinrich acknowledged that Plaintiffs'

27 technical expert alleged that Apple used at most three of the alleged secrets and only

28

1   one *in Apple Watch*.  Ex. 4 ¶¶17-22; Ex. 6 at 89:16-20 ████████████████████

2   ███████████████████████████████████████████████████████████████

3   ████████████████████████████████████████ And he formed his damages

4   opinions without even identifying any specific non-technical trade secrets, let alone

5   any alleged use of those secrets.  *Id.* at 93:22-94:4.

6       Finally, Kinrich has acknowledged that his damages opinions would not change

7   depending on the type of misappropriation.  Ex. 6 at 76:18-22 ██████████████

8   ███████████████████████████████████████████████████████████████

9   ████████████████████████████████████); *see also id.* 96:8-11, 97:14-19

10  (Kinrich agreeing that he had not offered any damages opinions specific to "█████

11  ██████████████████████████" of the purported secrets).

### D.    This Court Holds That The Priddell And Muhsin Disclosures Violate FRCP 26

14      On November 22, 2022, this Court struck the Muhsin and Priddell disclosures—

15  both because (per FRCP 26(a)(2)) they exceeded the scope of the witnesses' percipient

16  knowledge and because (per FRCP 26(e)) they relied on facts not disclosed in

17  discovery.  Dkt. 1031 at 5-6, 8-9.  In doing so, this Court rejected Plaintiffs' attempt to

18  "backdoor their damages case through piecemeal written disclosures …, especially

19  where those disclosures contain previously undisclosed, fully-formed damages theories

20  … [and] rely on newly disclosed factual information."  *Id.* at 10.

21      As to FRCP 26(a)(2), this Court held that Muhsin's opinions regarding "the

22  hypothetical scenario" wherein ██████████████████████████████████

23  ███████████████████████████████████████████████████████████

24  ████████████ exceeded his percipient knowledge.  Dkt. 1031 at 6.  The Court

25  further held that "the cost-estimate opinions in Muhsin's disclosure were clearly

26  prepared in connection with this litigation and in preparation for trial," and those too

27  "go far beyond 'historical opinions' of a percipient employee witness[.]"  *Id.*  The

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Court excluded Muhsin's opinions regarding ███████████████████

2    ████████████████████████████████████████ under FRCP 26(e)

3    because they "provide new factual information in the form of a fully formed damages

4    theory that should have been disclosed before the close of fact discovery." *Id.* at 9.

5         This Court similarly found that the "vast majority" of Priddell's disclosure

6    "exceeds his percipient knowledge as a design engineer at Masimo" in violation of

7    FRCP 26(a)(2).  Dkt. 1031 at 5-6.  The Court excluded Priddell's "litigation-driven

8    opinions" regarding: ████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ███████████████████████████████████████

12   ███████████████████████████ *Id.*  The Court also excluded

13   Priddell's "analysis of the Apple Watch 'teardown'" under FRCP 26(e) because it was

14   new factual information that should have been disclosed before the close of fact

15   discovery.  *Id.* at 8.  The Court also noted that Plaintiffs never identified Priddell as

16   knowledgeable about Plaintiffs' damages claims.  *Id.*

17        **E.    Plaintiffs Serve A "Supplemental" Kinrich Report**

18        On November 30, 2022, Plaintiffs served a document labeled "Supplemental

19   Expert Report of Jeffrey H. Kinrich," which purports to "apply [Kinrich's]

20   methodology and analysis as set forth in [his] October 2022 Report without relying on

21   one or more portions of the disclosures of Richard Priddell and/or Bilal Muhsin."  Ex.

22   7 ¶1.  Plaintiffs neither asked this Court for leave to serve such a report nor informed

23   Apple that they planned to do so ahead of time.  And Kinrich admitted during his

24   deposition that the "supplemental report was in response to the court's order regarding

25   the disclosures of Mr. Priddell and Mr. Muhsin."  Ex. 6 at 15:3-20.

26        Although purportedly trying to circumvent the Court's order, Kinrich's damages

27   theories in the "Supplemental Report" are still predicated on Muhsin's stricken

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

opinions regarding the hypothetical scenario in which Masimo ████████

████████████████████████████████████████████████████████████████

███████████████████████████ Ex. 7 ¶6.  Kinrich relies on a conversation with

Muhsin—instead of the Muhsin disclosure—wherein Muhsin provided the same

hypothetical opinions as in his disclosure.  *Id.*  As for his lost profits analysis, to

calculate development costs of the hypothetical module in the Supplemental Report

Kinrich continues to rely on documents Muhsin identified as part of his disclosure.



As to his unjust enrichment analysis, the Supplemental Report introduces a new

opinion that Kinrich "████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████

On December 2, 2022, Apple filed an *ex parte* application to strike Kinrich's

Supplemental Report.  Dkt. 1053-1.  The Court denied Apple's application without

prejudice, finding "the issues raised are more properly addressed in a motion to strike

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   and/or excluded filed in conjunction with Apple's summary judgment motion."  Dkt.

2   1068 at 1.

ARGUMENT

I.   **KINRICH'S LOST PROFITS OPINIONS AND UNJUST ENRICHMENT "COST SAVINGS" OPINION SHOULD BE STRUCK**

   A.   **The Lost Profits And "Cost Savings" Analyses Are Premised On Material That This Court Excluded**

Because Kinrich's lost profits and "cost savings" unjust enrichment opinions are predicated on excluded opinions and analyses performed by Muhsin and Priddell, they lack the basis in sufficient facts, data, and reliability necessary to survive a *Daubert* challenge.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702; *see also Abarca v. Merck & Co.*, 2010 WL 4643642, at *4 (E.D. Cal. Nov. 9, 2010) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record").

 "[A]n expert whose proffered testimony relies on another expert's theories that have been or may be excluded as unreliable should also be excluded" under *Daubert* and FRE 702.  *San Francisco Baykeeper v. City of Sunnyvale*, 2022 WL 4133299, at *10 (N.D. Cal. Sept. 12, 2022); *accord In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017) (similar); *M2M Solutions, LLC v. Motorola Solutions, Inc.*, 2016 WL 767900, at *7 (D. Del. Feb. 25, 2016) (excluding damages experts opinion because it was "based solely upon the unsupported opinion" of an excluded expert and "[w]ithout [the excluded] conclusions, that foundation crumbles").  This is because when the "soundness of the underlying expert judgment is in issue, the testifying expert cannot merely act as a conduit for the underlying expert's opinion."  *In re Toyota Motor Corp. Unintended Acceleration Mkg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013).

This Court excluded the following opinions offered by Muhsin and Priddell:

Plaintiffs cannot seriously dispute that Kinrich's October report relies on each of the stricken points mentioned above to estimate Plaintiffs' lost profits and Apple's alleged "cost savings."  The *predicate* for both theories is Muhsin's opinion regarding what Masimo supposedly would have done ███████████████████ and when it would have done so.  *See supra* pp. 3-6.  Kinrich prefaces his lost profits analysis by stating he understands ██████████████████████ Kinrich then relies on Muhsin's opinions that



. *Id.* ¶¶90-94; *see also* Ex. 8.  Next, Kinrich takes from Priddell's disclosure the

Kinrich also uses Priddell's disclosure to identify

In his cost savings analysis, Kinrich again begins with Muhsin's opinion that

*accord* Ex. 6 at 205:1-17.  Kinrich then uses Priddell's analysis of

Ex. 4 ¶¶144-45.  Combining these assumptions, and again using the same cost estimates provided by Muhsin and Priddell as in his lost profits calculation, Kinrich then calculates Apple's alleged cost savings.  *See supra* pp. 5-6.

Muhsin's and Priddell's untimely disclosed opinions "provide[d] the foundation" for Kinrich's lost profits and cost savings analyses; without those opinions, the "foundation crumbles" and Kinrich's "damages testimony must be excluded as well."  *See M2M Solutions*, 2016 WL 767900, at *7; *see also*

Wilmer Cutler
Pickering Hale
and Dorr LLP

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

### B.  Kinrich's Supplemental Report Still Relies On Stricken Opinions And Analyses

Despite this Court's ruling striking the Priddell and Muhsin disclosures, the Supplemental Report relies on theories taken from the stricken disclosures with only the slightest of tweaks.

**1.** As to Muhsin, the Supplemental Report's discussion of the time it would have taken Masimo to develop the hypothetical module is perhaps the most blatant example:  Kinrich merely states that his opinions on the time to develop the hypothetical module are "the same as in my October Report," citing to an unrecorded "conversation" with Muhsin rather than his disclosure. *See* Ex. 7 ¶6; ███████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Kinrich confirmed that he has no independent opinion as to Masimo's timing for developing the hypothetical sensor (Ex. 6 at 188:4-8), and that the opinion he relies on from his conversation with Muhsin is identical to the one Muhsin expressed in his disclosure. *Id.* at 188:9-20.  This timeline is foundational to the "but for" world that underlies both Kinrich's lost profits and cost savings analyses in the Report, and both analyses should be stricken for this reason alone.

Kinrich's continued reliance on the stricken information does not stop there. When discussing development costs, the Supplemental Report cites a "conversation

with Bilal Muhsin" to justify concluding that 

Ex. 7 ¶¶7-8.  The development cost calculations in the Supplemental Report continue to rely on the analyses supervised by Muhsin.  *See supra* pp. 4-5.

**2.** As to Priddell, Kinrich continues to depend on the same

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  ██████████████.[4]  Kinrich's approach is impossible to square with this Court's ruling

2  that Priddell could not permissibly testify on ████████████████████████████████

3  ████████████████████████████████████  Dkt. 1031 at 5-6.

4      **3.**     Plaintiffs have suggested that Kinrich's Supplemental Report is

5  unaffected by this Court's FRCP 26 decision because the Report does not depend on

6  "Muhsin and Priddell testifying as experts."  Dkt. 1059-2 at 6.  Even if that were true,

7  it would not permit Kinrich to rely on the same late-disclosed information at issue in

8  those disclosures—a point that Apple raised in its *ex parte* application.  *See supra* p. 9.

9  Plaintiffs had no answer.

10     Plaintiffs further argue that Kinrich is permitted to "rely on facts not admitted

11  into evidence" and that he "formed his own opinions based on facts on which experts

12  regularly rely."  Dkt. 1059-2 at 6.  But Plaintiffs do not identify the permissible "facts"

13  on which Kinrich purportedly relies.  ████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████  Indeed, Plaintiffs have explicitly

19  represented that these cost reports (and other cost analyses described in Muhsin's

20  disclosure) were "*not* an analysis that Masimo performs in the ordinary course of

21  business, nor are the documents produced kept in the ordinary course of business" but

22  rather part of an analysis "was done for this litigation as part of expert discovery."  Ex.

23  1 at 1.  Kinrich should not be permitted to circumvent the Court's Order simply by

24

25  ───────────────────
   [4] Other aspects of the Supplemental Report also acknowledge that Kinrich considered
26  the stricken Priddell disclosure in forming his damages calculations.  *See* Ex. 7 at
   Exhibit 1.A1-B1 (lost profits); *id.* at Exhibit 3.A1 ("████████████████████████
27  ████████████").

28
   ──────────────────────────────────────────────────────────

Wilmer Cutler
Pickering Hale
and Dorr LLP

recasting Priddell's stricken analysis as "ordinary course of business" documents, particularly where the record refutes that description.

### C.     Kinrich's Supplemental Report Should Also Be Struck As Untimely

#### 1.     The November 30, 2022 Report Violates FRCP 26(e)

The lost profits and cost savings opinions in Kinrich's Supplemental Report should be struck not only because they rely on information that has been excluded as untimely disclosed but because those opinions themselves were untimely.  FRCP 26(e) "creates a 'duty to supplement,' not a right" and does not "create a loophole through which a party who … wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009); *accord Windeler v. Cambria Community Servs. Dist.*, 2021 WL 5411887, at *5 (C.D. Cal. Oct. 19, 2021) (same).

The parties agreed that expert reports on damages would be served on October 6, 2022 and rebuttal reports by November 17, 2022.  Dkt. 1029-3 at 900.  Plaintiffs sought neither to reach agreement with Apple nor permission from this Court before serving the Supplemental Report.  But Kinrich's opinions in the Supplemental Report could have been included in the original October report—particularly given that Plaintiffs were on notice of Apple's objections to the Priddell and Muhsin disclosures six days before the original report was served.  *See supra* p. 3.  Indeed, Kinrich repeatedly states that the Supplemental Report is "based on" or "relie[s] on" information referenced in the October 2022 Report.  *See, e.g.*, Ex. 7 ¶¶2-4, 6, 7; *see also* Dkt. 1059-2 at 2 ███████████████████████████████

████████████████████████

Plaintiffs have previously argued that courts "routinely" permit an expert to supplement his or her report in light of new information.  *See* Dkt. 1059-2 at 3.  But it is well-established that supplementation is not a permissible "way to remedy a

deficient expert report." *Rojas v. Marko Zaninovich, Inc.*, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011).  "Supplementation … means correcting inaccuracies, or filling the intersties of an incomplete report based on information that was *not available* at the time of the initial disclosure."  *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013) (internal quotations and citation omitted).  To interpret FRCP 26(e) to cover "'failures of omission because the expert did an inadequate or incomplete preparation'" would "essentially allow for unlimited bolstering of expert opinions," *id.*, which in turn would "'interfere with the Court's ability to set case management deadlines'" and "'hinder … final disposition of the case,'" *Rojas*, 2011 WL 4375297, at *6; *accord Reinsdorf*, 922 F. Supp. 2d at 880 (duty to supplement does "not give license to sandbag one's opponents").

### 2.   The Proper Remedy For Plaintiffs' FRCP 26(e) Violation Is To Strike The Entire Supplemental Report

FRCP 37(c)(1) requires "automatic exclusion" of material that was not timely disclosed under FRCP 26 unless the non-moving party can show that "the failure to disclose was either substantially justified or harmless."  *E.g.*, *Luke*, 323 F. App'x at 498-499; *see also Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021). Plaintiffs cannot meet their burden.

As to substantial justification, Plaintiffs have previously argued that they were permitted to serve the Supplemental Report because they had no way of knowing that Apple intended to challenge the Priddell and Muhsin disclosures.  Dkt. 1059-2 at 4, 5. Again, this is false:  Apple sent Plaintiffs a letter detailing its objections to those disclosures nearly a week prior to the service of Kinrich's October 6, 2022 report.  *See supra* p. 3.

As to harmlessness, the Supplemental Report is highly prejudicial to Apple because it attempts to resurrect several damages theories that appear in the October Kinrich report that rely on Rule 26(a)(2)(C) disclosures that this Court has held were

improper and should be excluded—and as discussed above, continues to rely on the same "fully formed damages theories" on which Apple was deprived of full and fair discovery.  *See* Dkt. 1031 at 10-11; *see also supra* pp. 7-8.

## II.  THIS COURT SHOULD EXCLUDE ALL OF KINRICH'S LOST PROFITS AND UNJUST ENRICHMENT OPINIONS BECAUSE THEY LACK ANY RELIABLE CONNECTION TO APPLE'S PURPORTED MISAPPROPRIATION

Under the California Uniform Trade Secrets Act, Plaintiffs may only recover unjust enrichment or lost profits damages for harm "*caused by*" the misappropriation. Cal. Civ. Code § 3426.3(a).  Accordingly, Plaintiffs must show that Apple's "acquisition, use, or disclosure of the trade secret[s] was a substantial factor in causing the plaintiff harm."  *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923, 842 (2018).

Kinrich has failed to comply with that legal standard.  *First*, he does not distinguish between the damages that would be awarded if Apple is found to misappropriate one trade secret, five secrets, or all twenty-nine that remain.  Ex. 6 at 74:2-5.  Instead, he opines that Plaintiffs are entitled to the same amount of lost profits and unjust enrichment awards regardless of "whether Apple is found liable for misappropriating one or more the Trade Secrets."  Ex. 4 ¶¶ 64, 141.[5]



Kinrich's damages

---

[5] Kinrich's reasonable royalty analysis is not addressed in this motion, as the Court has ordered that the reasonable royalty can be determined, if necessary, after the upcoming trial, and discovery regarding that analysis is ongoing.  Dkt. 1071.  Apple reserves the right to challenge Kinrich's reasonable royalty opinions after discovery on those opinions is completed.

Wilmer Cutler
Pickering Hale
and Dorr LLP

analysis is thus fundamentally unreliable because it does not evaluate—or give the jury any way to evaluate—the supposed harm caused by Apple's alleged misappropriation if Apple is found to misappropriate fewer than all purported trade secrets. *See Shell & Slate Software Corp. v. Adobe Sys. Inc.*, 2004 WL 5486635, at *1 (C.D. Cal. Sept. 17, 2004) (excluding similar unjust enrichment opinion in trade secret case as "inherently unreliable and speculative").

The court's decision in *LivePerson, Inc. v. [24]7.AI, Inc.*, 2018 WL 6257460 (N.D. Cal. Nov. 30, 2018), is instructive.  There, the plaintiff's damages expert predicated his opinions on the assumption that defendant misappropriated all 28 alleged trade secrets. *See id.* at *2.  The defendant moved to exclude the expert's opinion because the plaintiff only planned on presenting 15 of the 28 secrets in the upcoming trial. *Id.*  The expert attempted to work around this fact by awarding damages *pro rata* based on the number of secrets misappropriated. *Id.*  The court excluded his opinions because he failed to "apportion trade secret misappropriation damages among particular alleged trade secrets, and offer[ed] no methodology for the jury to calculate trade secret misappropriation damages on fewer than all of the 28 alleged trade secrets in this case." *Id.*; *see also 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005) (granting JMOL in defendant's favor where Plaintiffs' damages expert provided damages calculations assuming all trade secrets were misappropriated and jury found only one resulted in defendant's enrichment).

*Second*, Kinrich does not distinguish between or among the alleged harms from disclosure, use, or acquisition.  As a preliminary matter, Kinrich does not offer *any* opinion that Plaintiffs suffered from Apple's purported disclosure of any alleged secrets. Ex. 6 at 96:8-11.  Putting disclosure aside, Kinrich fails to consider any alleged *use* of the purported trade secrets. *See* Ex. 6 at 73-77 (admitting he did not consider "███████████████████████████████████████████").  This

Wilmer Cutler
Pickering Hale
and Dorr LLP

approach is unreliable because it assumes that the form of misappropriation is irrelevant, even though Kinrich assessed damages on a per *use* basis.  Each of Kinrich's lost profits and unjust enrichment calculations vary based on the number of Apple Watches sold.  But according to Kinrich ███████████████████████ ██████████████████████████████" his calculations remain the same.  Ex. 6 at 76:23-77:2.  This opinion ignores legal requirements of causation and defies common sense.  *See, e.g.*, *Bladeroom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1250 (9th Cir. 2021) (Rawlinson, J., concurring) ("It is not sufficient for the damages expert to attribute the entire value of the sale of [the defendant's] division to the misappropriation of Bladeroom's trade secrets" because the "division had business and value that did not involve use of the misappropriated trade secrets").

As just one example, Kinrich's alternative theory of unjust enrichment estimates profits attributable to the Blood Oxygen and ECG features in Apple Watch Series 6 and Series 7.  Ex. 4 ¶¶146-165.  Under Kinrich's approach, if *any* alleged technical secret is found to be misappropriated, Plaintiffs are entitled to all profits attributable to the Blood Oxygen feature, even if there is no allegation of Apple using the purported secret in connection with that feature or otherwise.  *Id.* ¶164; Ex. 6 at 234:3-236:15.  Kinrich similarly opines that profits attributable to the ECG feature are owed if Apple is found to have misappropriated *any* purported non-technical trade secret—again, regardless of whether Apple used the secret in connection with the marketing of the ECG feature or otherwise.  Ex. 4 ¶164; Ex. 6 at 245:9-246:13.

Kinrich's lost profits and "cost savings" unjust enrichment opinions fare no better.  As discussed above, both are premised on a "but for" world in which Apple purchases sensing modules from Masimo in lieu of the one it actually developed.  But according to Kinrich, the same opinions would apply even if the secrets found to be misappropriated are used neither by Apple nor in Masimo's hypothetical module.

Because these opinions fail to consider the requisite for a causal link between the alleged misappropriation and the harm or unjust enrichment calculations, they cannot pass muster under *Daubert*.

## CONCLUSION

For the foregoing reasons, the Court should grant Apple's motion to exclude Kinrich's (1) lost profits and unjust enrichment "cost savings" opinions because they rely on previously stricken materials and were untimely; and (2) lost profits and both unjust enrichment opinions because they are unreliable.

Dated: January 9, 2023

Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP



By:  /s/ Mark D. Selwyn
          Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendant Apple, Inc., certifies that this

3   brief contains 6,468 words, which [choose one]:

4       X  complies with the word limit of L.R. 11-6.1

5       ___ complies with the word limit set by court order dated [date].

6

7   Dated: January 9, 2023            Respectfully submitted,

8

9                                     MARK D. SELWYN

10                                    AMY K. WIGMORE
                                      JOSHUA H. LERNER

11                                    SARAH R. FRAZIER
                                      NORA Q.E. PASSAMANECK

12                                    THOMAS G. SPRANKLING

13                                    WILMER CUTLER PICKERING HALE AND
                                      DORR LLP

14

15                                    BRIAN A. ROSENTHAL
                                      GIBSON, DUNN & CRUTCHER LLP

16

17                                    KENNETH G. PARKER
                                      HAYNES AND BOONE, LLP

18

19

20                                    By:  /s/ Mark D. Selwyn

21                                         Mark D. Selwyn

22

23                                    *Attorneys for Defendant Apple Inc.*

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP