Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' TRADE SECRET CLAIM AND PLAINTIFFS' LOST PROFITS DAMAGES THEORY**<br>)<br>) Date:        February 6, 2023<br>) Time:        1:30 p.m.<br>) Location:    Courtroom 10C<br>) |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................... 1

    A.    Fact Issues Preclude Summary Judgment On Possession/Ownership ................................................................... 1

        1.    Apple Advocates Incorrect Legal Standards ................................. 1

            a.    Plaintiffs Need Not Show Their Trade Secrets Are Contained In A Single Document ..................... 1

            b.    Plaintiffs Need Not Show Which Of Them Owns Each Trade Secret .......................................... 2

            c.    Possession Often Shows Ownership ................................... 4

            d.    Fact Witnesses Need Not Testify On Legal Contentions ...................................................... 5

        2.    Plaintiffs Presented More Than Sufficient Evidence For A Jury To Find Possession/Ownership .................................. 6

            a.    ███████████████████████████ ................... 6

            b.    ██████████████████████████████ ................... 8

            c.    ████████████████ ................... 10

            d.    Business and Marketing Strategies ................................. 11

            e.    Strategies for Interacting With Hospitals ...................... 13

    B.    Fact Issues Preclude Summary Judgment On Trade Secret Protectability ........................................................................ 14

        1.    Even General Ideas Can Be Protectable ....................................... 14

        1.    LP-5 Is Protectable .......................................................................... 15

        2.    LP-7 Is Protectable .......................................................................... 17

        3.    LP-8 Is Protectable .......................................................................... 18

        4.    ██████████████████████████████ ................... 19

# TABLE OF CONTENTS
### (*cont'd*)

Page No.

    C.     Fact Issues Preclude Summary Judgment On Lost Profits ...................... 20

III.    CONCLUSION ................................................................. 21

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*Advanced Fluid Sys. Inc. v. Huber*,

5
    958 F.3d 168 (3d Cir. 2020) .................................................................4, 5

6

*Advanced Modular Sputtering, Inc. v. Superior Court*,

7
    132 Cal. App. 4th 826 (2005) ...............................................................17

8

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,

9
    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................15

10

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,

11
    2021 WL 2792433 (C.D. Cal. Apr. 27, 2021) ......................................21

12

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*,
    226 Cal. App. 4th 26 (2014) ............................................................14, 15

13

*Bank One Tex., N.A. v. Leaseway Transp. Corp.*,

14
    137 F.R.D. 631 (D. Mass. 1991) .............................................................3

15

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,

16
    2017 WL 2224838 (N.D. Cal. May 22, 2017).......................................15

17

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,

18
    219 F. Supp. 3d 984 (N.D. Cal. 2017).............................................3, 4, 5

19

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,

20
    2011 WL 2116989 (D. Haw. May 25, 2011) ..........................................4

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,

21
    2019 WL 12521480 (C.D. Cal. Aug. 9, 2019) ........................................5

22

*ChromaDex, Inc. v. Elysium Health, Inc.*,

23
    2020 WL 1279236 (C.D. Cal. Jan. 16, 2020)........................................22

24

*DSPT Int'l, Inc. v. Nahum*,

25
    624 F.3d 1213 (9th Cir. 2010) ..............................................................21

26

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*,

27
    2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ......................................17

28

1

**TABLE OF AUTHORITIES**
(*cont'd*)

2

3

**Page No(s).**

4

*Goodness Films, LLC v. TV One, LLC*,
    2014 WL 12594201 (C.D. Cal. Aug. 28, 2014) ......................................22

5

6

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ......................................17

7

8

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ......................................17

9

10

*Jasmine Network, Inc. v. Superior Court*,
    180 Cal. App. 4th 980 (2010) ......................................3

11

12

*Masimo Corp. v. True Wearables, Inc.*,
    2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ...........................15, 17, 19

13

14

*Masimo Corp. v. True Wearables, Inc.*,
    2022 WL 205485 (Fed. Cir. Jan. 24, 2022) ......................................18

15

16

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ......................................5

17

18

*Morlife, Inc. v. Perry*,
    56 Cal. App. 4th 1514 (1997) ......................................2

19

20

*nSight, Inc. v. PeopleSoft, Inc.*,
    296 F. App'x 555 (9th Cir. 2008) ......................................17

21

22

*Olaplex Inc. v. L'oreal USA Inc.*,
    855 F. App'x. 701 (Fed. Cir. 2021) ......................................15

23

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
    2014 WL 2527148 (N.D. Cal. June 4, 2014) ......................................17

24

25

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) ......................................5, 15

26

27

*Strikepoint Trading, LLC v. Sabolyk*,
    2008 WL 11334084 (C.D. Cal. Dec. 22, 2008) ......................................4

28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Tang v. E. Va. Med. Sch.*,
    2022 WL 981942 (E.D. Va. Mar. 30, 2022)......................................................4

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
    966 F.3d 46 (1st Cir. 2020).......................................................................17

*Toyrrific, LLC v. Karapetian*,
    2019 WL 7188572 (C.D. Cal. Sept. 10, 2019)......................................21

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
    617 F. Supp. 2d 938 (N.D. Cal. 2007)..................................................2

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017)......................................15

*Williams-Sonoma Direct, Inc. v. Arhaus, LLC*,
    304 F.R.D. 520 (W.D. Tenn. Jan. 30, 2015) ........................................3

*Winston Rsch. Corp. v. Minn. Min. & Mfg. Co.*,
    350 F.2d 134 (9th Cir. 1965) ...............................................................16

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    2013 WL 867640 (D. Del. Mar. 8, 2013)............................................15

# OTHER AUTHORITIES

*Trade Secrets Practice in California*
    (2d Ed. Nov. 2018) .................................................................................4

# I.   **INTRODUCTION**

Apple's Motion misrepresents the law and seeks to impose requirements on trade secret plaintiffs that simply do not exist.  Nothing requires a trade secret plaintiff establish possession/ownership by identifying the trade secret in a single document.  Likewise, nothing requires trade secret co-plaintiffs allocate legal title between them, especially here where the Plaintiffs collaboratively developed the trade secrets.  Apple likewise argues for a categorical rule that "ideas" cannot be trade secrets, a notion the California Court of Appeal has rejected.  Apple also ignores settled law that expert testimony is not required to establish lost profits.

Apple then rests its case on its experts' opinions while ignoring contrary evidence.  Apple ignores many documents corroborating Plaintiffs' possession/ownership.  Apple even ignores that some trade secrets are shown in a single document or used in a product.  The evidence shows Apple itself recognized the trade secrets are far from "general" ideas.  Indeed, Apple did not recognize any of the trade secrets before Plaintiffs' former employees revealed them to Apple.  Finally, the evidence Plaintiffs will present at trial will allow the jury to calculate lost profits with simple arithmetic.

# II.   **ARGUMENT**

## A.   **Fact Issues Preclude Summary Judgment On Possession/Ownership**

Apple's Motion is based on incorrect legal standards.  Even under Apple's proposed standards, fact issues exist on possession/ownership.

### 1.   **Apple Advocates Incorrect Legal Standards**

#### a.   **Plaintiffs Need Not Show Their Trade Secrets Are Contained In A Single Document**

Apple repeatedly argues Plaintiffs did not identify "a single pre-litigation document that clearly describes" the text of any trade secret. Mot. 1, 5-6. Apple cites no authority requiring such a document.  Nor can it.  The California Uniform Trade Secrets Act ("CUTSA") broadly defines a trade secret as "information."  Cal. Civ. Code § 3416.1(d).  The statute does not require a single document contain the information.  In

*Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1518, 1521 (1997), the court affirmed misappropriation of a trade secret, which included both a "collection" of business cards and "knowledge" about customers. *Id.* The court explained, "to afford protection to the employer, the information need not be in writing but may be in the employee's memory." *Id.* (quoting *Greenly v. Cooper*, 77 Cal. App. 3d 382, 392 (1978)).

In *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, the defendant moved for summary judgment because "not a single document UniRAM relies on to support disclosure of its alleged trade secrets recites all of the features for a given combination secret." 617 F. Supp. 2d 938, 941 (N.D. Cal. 2007). The court denied the motion, holding "a unified description in a single integrated document . . . is unnecessary." *Id.* at 943.

### b.    Plaintiffs Need Not Show Which Of Them Owns Each Trade Secret

Apple argues Plaintiffs have not established "which entity owned which trade secret." Mot. 13. Apple claims it is "plainly insufficient" to contend the trade secrets are owned by "Masimo and/or Cercacor." *Id*. at 15. But Apple gives no reason why co-plaintiffs would need to allocate legal title as an element of their claim. And this Court rejected the same argument in ruling on Apple's motion to dismiss. Dkt. 264 at 9. The Court observed, Apple "cited to no law requiring that plaintiffs suing together specify which of them owns a particular trade secret." Dkt. 264 at 9. Apple still cites no such law.

Lacking legal authority, Apple asserts the purported obligation to identify "which" plaintiff "owns" each trade secret "springs from CUTSA's undisputed requirement to show ***possession***." Mot. 11 n.3.[1] Apple cites nothing in CUTSA

---

[1] Emphasis is added unless noted otherwise. Numbered exhibits are attached to the Passamaneck Declaration and lettered exhibits are attached to the Hughes Declaration.

requiring co-plaintiffs to identify which one "owns" or "possesses" a trade secret. Regardless, as discussed in §II.A.2 below, Plaintiffs show possession and ownership.

Moreover, Apple has not argued any unnamed party has rights in the trade secrets. Plaintiffs can each assert trade secret misappropriation, whether as owner or licensee. *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990-91 (N.D. Cal. 2017). Apple's liability does not depend on whether Masimo or Cercacor's interest is as a sole owner, co-owner, or licensee. Allocation is irrelevant because all potential owners are before the Court.[2]

Even if some ownership dispute existed between Plaintiffs, it would affect only how to allocate any recovery; it would not be a failure of proof or a defense. *See Bank One Tex., N.A. v. Leaseway Transp. Corp.*, 137 F.R.D. 631, 633-34 (D. Mass. 1991) (whether plaintiff would have to share recovery with others "does not affect liability" but only "how to divide the spoils of litigation"). The *Bank One* logic applies even more forcefully here because Apple does not contend a third party may be entitled to a portion of Plaintiffs' recovery. *Cf. Jasmine Network, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 1009-10 (2010) (defendants can use joinder to avoid inconsistent judgments).

Multiple plaintiffs can assert misappropriation of the same trade secret because "[m]ultiple entities [] can possess the same trade secret, so long as the knowledge is not 'generally known.'" *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 528 (W.D. Tenn. Jan. 30, 2015). Where, as here, multiple plaintiffs "possess trade secrets that they have alleged were misappropriated[,]" both plaintiffs have "the substantive right to pursue their trade secrets claims[.]" *Id.* (analyzing Tennessee statute); *see also Strikepoint Trading, LLC v. Sabolyk*, 2008 WL 11334084, at *6 n.2 (C.D. Cal. Dec. 22,

---

[2] Plaintiffs' employees assigned the trade secrets to their respective employers, and agreed to safeguard Plaintiffs' confidential information. *See, e.g.*, Ex. OOO; *see also* Ex. QQQ at 25:24-26:15; Ex. ZZZZ; Ex. AAAAA at 125:21-126:14. Apple has never disputed that Plaintiffs' employees assigned any trade secret rights to Plaintiffs.

2008) (suggesting that naming both potential owners as plaintiffs would moot argument as to which one was the owner).

[REDACTED]

Apple argues Plaintiffs presented no evidence that either Plaintiff accessed trade secrets under the agreement.  Mot. 11-12.  That is irrelevant and inconsistent with *BladeRoom*, which held a licensee with an obligation to maintain confidentiality has possession and can sue.  219 F. Supp. 3d at 990-91.

Apple cites three cases that all support Plaintiffs.  Mot. 3.  One explained a "license for [plaintiff's] benefit" would have avoided "any dispute about lawful possession" of the trade secret.  *Advanced Fluid Sys. Inc. v. Huber*, 958 F.3d 168, 178 (3d Cir. 2020).  The others found that where, as here, individuals created the trade secret and assigned their rights, the assignee is the proper plaintiff.  *Tang v. E. Va. Med. Sch.*, 2022 WL 981942, at *10 (E.D. Va. Mar. 30, 2022); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.,* 2011 WL 2116989, at *21 (D. Haw. May 25, 2011).

### c.   <u>Possession Often Shows Ownership</u>

"As a starting point for analysis of ownership, the general principle is that one who discovers, develops, or compiles a trade secret is the owner of the trade secret." *Trade Secrets Practice in California* § 2.1 (2d Ed. Nov. 2018).  Because Plaintiffs created and lawfully possess the trade secrets, they are the owners.

Apple incorrectly argues "the law requires more" than possession.  Mot. 12.  But Apple never addresses what it means to "own" a trade secret.  Trade secrets are not "owned" in the same way as other property.  Even the "owner" of a trade secret cannot

exclude others from independently creating the same information.  Rather, trade secrets "protect[] only the right to control the dissemination of information." *Silvaco Data Sys. v. Intel Corp.,* 184 Cal. App. 4th 210, 221 (2010).

Thus, "possession" is the first element of a CUTSA claim.  *Id.* at 220; *see Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2019 WL 12521480, at *5 (C.D. Cal. Aug. 9, 2019) (agreeing "possession is sufficient as long as secrecy is maintained").  Apple's own cited authority explained the reasons why a "per se ownership requirement" is "flawed" and "not the sole kind of interest that is relevant and subject to protection." *AFS*, 958 F.3d at 177-78.  *Cedars* explained that other cases' discussion of "ownership" (and the CACI jury instruction mentioning ownership) as an element is shorthand for possessing the trade secret and having the right to prevent dissemination.  2020 WL 10460620 at *4-5; *BladeRoom*, 219 F. Supp. 3d at 990 ("the first element of a prima facie misappropriation claim under CUTSA" is "traditionally and perhaps over-simplistically phrased in terms of 'ownership.'").

Apple cites two cases referring to "ownership" as an element as shorthand, just as explained in *BladeRoom*.  Mot. 12 (*AMN Healthcare* and *Sargent Fletcher*).  Apple also cites *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 960 (C.D. Cal. 2011), but that decision expressly declined to decide if a distinction exists between "ownership" and "possession." *Id.* at 960-61.  The dispute concerned whether the employee assigned the trade secret to the employer, such that the employer had possession or ownership. *Id.* at 960-61, n.13.  The court referred that question to the jury. *Id.* at 945-47.

### d.    <u>Fact Witnesses Need Not Testify On Legal Contentions</u>

Apple argues Plaintiffs' witnesses could not "identify or describe" the trade secrets. Mot. 5-6.  But Apple's questions called for legal contentions about trade secrets. Ex. 11 at 35:17-36:2; Ex. 14 at 18:11-19:7, 23:13-25:12, 96:6-24.  Plaintiffs' witnesses explained they were prepared to answer facts about Plaintiffs' confidential information but did not feel comfortable providing legal contentions. *See, e.g.*, Ex. 11 at 39:21-40:11; Ex. 14 at 18:6-19:25, 23:13-24:15, 24:23-25:12, 96:6-97:5.  Apple chose to ask

only about contentions even though the Special Master told Apple such questions are inappropriate.  Dkt. 894 at 5 (citing this Court's instruction in another case "to refrain from asking 'improper-contention questions'").  Apple thus confuses the witnesses' lack of knowledge about ***legal*** contentions with lack of knowledge about underlying ***facts***. ▮ Ex. 10 at 33:25-34:22; Ex. 12 at 41:9-19; Ex. 13 at 42:20-25; Ex. 11 at 38:2-6; Ex. 14 at 17:17-18:5, 25:21-26:8, 28:3-20; Ex. 28 at 81:18-87:4.  As discussed, CUTSA does not require writing down trade secrets, much less maintaining a list.  Apple's other citations do not support its argument.  Ex. 12 at 47:4-51:22 (memorizing trade secret definitions); Ex. 11 at 38:20-39:19 (discussing trade secrets in the course of business); *id.* at 38:6-19 (procedures to maintain confidentiality); Ex. 14 at 27:16-28:2 (memorizing whether Plaintiffs filed for patents); *id.* at 97:6-99:8 (policies to track trade secrets).

## 2. <u>Plaintiffs Presented More Than Sufficient Evidence For A Jury To Find Possession/Ownership</u>

Apple incorrectly suggests Plaintiffs crafted their trade secrets based on Apple's confidential documents.  Plaintiffs identified their trade secrets before receiving Apple's confidential information.[3]  Apple refused to produce any documents until Plaintiffs identified the trade secrets.  Dkt. 123-1 at 2-4 (describing history of dispute and Court's warnings to Apple).  Evidence showing possession/ownership is discussed below.



---

[3] The Court later allowed Masimo to add LP-5, 7, and 8.  Dkt. 668 at 6-9.  Masimo made some other amendments, including in response to the Court's direction.  Dkt. 219.

████████████████████████████████████████████████████████████

███████████████████████████

Apple raises several arguments that lack merit. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

Second, Apple claims Sarrafzadeh opined that Plaintiffs failed to demonstrate possession.  Mot. 3 (citing Ex. 17 ¶¶23-25).  But the paragraphs Apple cites do not address possession.  Rather, they address whether trade secrets were "generally known" (¶23), criticize evidence of Plaintiffs' investments (¶24), and ███████████████████ ████████████████████████████████████ (¶25).

Third, Apple argues Plaintiffs improperly relied on "isolated emails, code snippets, or notebook entries."  Mot. 4.  As explained in Plaintiffs' co-pending summary judgment motion, the documents are part of the development process for the Pronto-7.  Ex. L at 3, 8-13.  Madisetti explained how the evidence shows Plaintiffs' employees developed each trade secret.  Ex. 15 ¶¶106-46, 185-91, 212-28, 251-54, 278-90, 311-13, 334-35, 357-58, 379-80, 403-04, 428-29.

Fourth, Apple relies on Sarrafzadeh's flawed analysis of D-1.  Mot. 3-4.  Contrary to Apple's argument, trade secrets need not be in a single document.  *See supra* §II.A.1.a.  Regardless, ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11    ███████████████████████████████ Apple presents no contrary evidence.

12

13        Much of Apple's arguments suffer from the same errors discussed above, such as

14    asserting Plaintiffs must show possession based on one document.  Mot. 5-7.  Apple also

15    does not address the significant evidence Madisetti identified showing the development

16    of each LP trade secret.  Ex. 15 ¶¶441-42, 451-58, 513-20, 597, 629.

17        **Trade Secret LP-4**. ███████████████████████████████

18

19

20

21

22

23

24

25

26

27

28



14                                              Madisetti opined that Masimo possessed

15 LP-4.  Ex. 15 ¶¶452, 456.

16       **Trade Secret LP-5**.

26 [4] Regardless, the Court need not reach this issue because LP-4 recites

1

2

Apple argues only that Plaintiffs supposedly engaged in a "sleight of hand" by claiming possession based on one LP-5 solution but misappropriation based on another. Mot. at 6-7. Apple relies on its expert's opinion that Masimo documents "show a single, specific way of performing this task." *Id.* at 7. As discussed above,

**Trade Secrets LP-7, 8, 10**. Lamego presented workshops at Cercacor showing the entirety of these trade secrets. Ex. O; Ex. 15 ¶¶597 (LP-7 and 10), 629 (LP-8 and 10). Apple argues its expert opined the workshops recited generally known principles and, therefore, Plaintiffs did not "possess any trade secret." Mot. 7. That argument concerns whether the information is a trade secret—not whether Plaintiffs possessed it. They are two different inquiries. *See infra* §II.B (addressing generally known arguments). Apple does not dispute the presentations show the information Plaintiffs recite in LP-7, 8, and 10. Thus, Plaintiffs possessed it.

Apple argues Plaintiffs failed to show possession before Lamego left Cercacor in January 2014. Mot. 7-8. But Madisetti explained the evidence shows Plaintiffs possessed SP-4 before Lamego left Cercacor. Ex. 15 ¶¶651, 665, 680, 696, 740, Ex. 29 at 408:10-15.

5

1

2

3

4

5

6

7

8

9

10

11

12

13    Apple argues Plaintiffs failed to show SP-5 and SP-6 for the same reasons as SP-

14  4.  Mot. 8.  That argument fails for the same reasons as SP-4.

15              **d.**    **Business and Marketing Strategies**

16    Apple argues Masimo has no evidence it "practic[ed]" its business and marketing

17  ("B&M") trade secrets.  Mot. 9.  But Apple's expert, Ran Kivetz,

18

19

20

21

22

23

24

25

26

27  And Apple identified no evidence Masimo obtained its trade secrets from anyone else.

28

Plaintiffs' expert, Robert Palmatier, explained in detail the evidence showing Masimo developed and used the B&M trade secrets.  Ex. 20 ¶¶64-91, 255-68, 337-47, 429-37, 521-28; *see also* Ex. X.  Rather than identify contrary evidence, Apple's experts criticized Masimo's showing.  *See, e.g.*, Ex. Y at 179 ████████████████████████████ ████████████████████████████████████████████  The jury is free to reject Apple's criticisms and accept Masimo's opinion and evidence.

Apple argues Masimo's documents do not establish possession.  Mot. 8-10. Again, documents are not required.  Indeed, ████████████████████████ ██████████████████████████████████████████████████████████ ████████████████  Ex. AA at 31:16-32:4, 34:8-11.  Regardless, Masimo relied on many contemporaneous documents substantiating Masimo's development and possession of the B&M trade secrets.  Ex. 20 ¶¶64-91, 255-68, 337-47, 429-37, 521-28; Exs. EE-FF; Ex. GG at 16-28, 33-35, 37-39, 44-45, 60, 65-67, 71-73, 76, 86-89, 373-76; Ex. HH at -482-86; Ex. II at -252, -254; Ex. JJ at -758-59; Ex. KK; Ex. LL; Ex. MM at -697; Ex. NN at -525; Ex. OO; Ex. PP; Ex. QQ at -311; Ex. RR at -915-16; Ex. SS at -298; Ex. TT at -234; Ex. UU; Ex. VV; Ex. WW at -559, -583-584; Ex. XX at -434.

Kiani also explained in detail how Masimo developed its trade secrets.  Ex. 10 at 156-57, 199-200, 260, 276-77, 310-12, 313-18, 321, 323-25.  ████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████  Ex. 20 ¶¶64-68; Ex. JJ; Ex. 10 at 260, 276.  ████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████  Ex. 20 ¶72; Ex. YY at 49-52.

Apple further argues Masimo's "own products" "of course, do not identify a particular business strategy."  Mot. 9.  ████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████  Apple cannot maintain Masimo purportedly disclosed its trade secrets through its sale of products, but never possessed them.

### e. **Strategies for Interacting With Hospitals**

Palmatier identified extensive evidence of Masimo's development and use of its hospital interaction trade secrets.  Ex. 20 ¶¶592-617; Ex. ZZ at -668, -670, -672-673; Ex. AAA at -007; Ex. BBB at -900; Ex. CCC; Ex. DDD; Ex. EEE; Ex. FFF at -583; Ex. GGG at -935; Ex. HHH at -221, -225; Ex. III at -008; Ex. 10 at 326-29, 333-35; Ex. GG at 16-18; Ex. YY at 62-65, 71-73, 76-77, 79.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Ex. ZZ at -668, -670, -672-73; Ex. AAA at -007; Ex. BBB at -900; Ex. CCC; *see* Ex. 20 ¶¶604-09.  Apple cites no contrary evidence.  Instead, Apple again merely criticizes Masimo's showing.  Each of Apple's criticisms are unfounded.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

1

2

3

4                                                    *Id.* Masimo identified evidence

satisfying this requirement. *See* Ex. 20 ¶¶596, 598, 607, 610, 615-16; Ex. YY at 63-64, 79; Ex. ZZ at -673; Ex. BBB; Ex. EEE at 181-82, 187-89; Ex. DDD at -456.

**B.**   **Fact Issues Preclude Summary Judgment On Trade Secret Protectability**

      **1.**   **Even General Ideas Can Be Protectable**

Apple argues trade secrets can never be "general ideas." Mot. 13-16. The California Court of Appeal explained that "protectable 'information'" under CUTSA can include a "general idea." *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 56 (2014) (but finding "general idea" there not protectable because it was "disclosed to other companies without the benefit of an NDA"). Thus, "trade secrets fall into a continuum, from something as high level as a general idea, down to mid-level concepts for developing and implementing the general idea, and finally ending at the granular information such as source code and algorithms that would consummate what had started as a general idea." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2017 WL 2224838, at *2 (N.D. Cal. May 22, 2017) (citing *Altavion*, 226 Cal. App. 4th at 56). "Even an 'idea,' if not known to the public, protected from disclosure, having economic value, etc., might be adjudged a trade secret." *BladeRoom*, 2017 WL 2224838, at *2.

Apple cites *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 867640, at *3 (D. Del. Mar. 8, 2013), but that case relies on imprecise language from another case (*Silvaco*) in asserting "ideas" are not protectable. The California Court of Appeal has since explained that language from *Silvaco* "is easily misunderstood." *Altavion*, 226 Cal. App. 4th at 54. *Altavion* clarified, "*Silvaco* plainly does ***not*** hold that secret ideas are not protectable under trade secret law…" *Id.* If an idea is kept secret, the idea itself can constitute information protectable by trade secret law. *Id.* at 55.

28

Apple also claims "this Court recently observed, '[i]deas or concepts are not, ***in and of themselves***, trade secrets.'" Mot. 2, 13 (citing True Wearables Op. ¶99). Apple omits that this Court was quoting from *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1016 (E.D. Cal. 2011). *Agency* also relied on the same imprecise language from *Silvaco* that *Altavion* has since clarified. *Id.* Moreover, this Court did not hold that "ideas" are per se unprotectable in *True Wearables*. Rather, it addressed a particular trade secret as a factual matter after trial.

Apple cites inapposite cases that addressed whether a particular trade secret was generally known on the facts of each case. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) (information "known outside of Waymo"); *Olaplex Inc. v. L'oreal USA Inc.*, 855 F. App'x. 701, 710 (Fed. Cir. 2021) (alleged trade secrets reciting "testing and know how" and "dead ends and trials and errors" were widely known); *Winston Rsch. Corp. v. Minn. Min. & Mfg. Co.*, 350 F.2d 134, 139 (9th Cir. 1965) (information was "not secret").

Accordingly, Apple's approach is legally erroneous and would sidestep the fact-intensive "generally known" inquiry.

### 1. LP-5 Is Protectable

███████████████████████████████████████████████

███████████████████████████████████████████ Ex. 15 ¶¶513-517; Ex. H at 133-36; Ex. I at -787; Ex. MMM ¶¶42-47; Ex. 16 ¶¶643-778.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ██████████████████████████████

5     Apple argues LP-5 would create a "monopoly over broad swaths of other

6 solutions." Mot. 14. By its nature, trade secret law creates no monopoly. Rather, it

7 protects against the unauthorized acquisition, use, or disclosure of proprietary

8 information. Apple would have been free to recognize the problem on its own. But

9 Apple did not. ███████████████████████████████████████

10 Ex. LLL; Ex. N at -581.

11     ████████████████████████████████████████████████

12 ██████████████████████ Mot. 14-16. As discussed, ideas can be protectable. Apple

13 relatedly argues a "general description" is insufficient to establish a trade secret. *Id.* at

14 14. But the cases Apple cites found the plaintiff could not describe the trade secret. *See*

15 *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2020)

16 (counsel could not articulate trade secret but generally referred to the record); *Freeman*

17 *Inv. Mgmt. Co. v. Frank Russell Co.*, 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30,

18 2016) (plaintiff unable to explain "what its trade secrets are"); *Imax Corp. v. Cinema*

19 *Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (trade secret on "every dimension and

20 tolerance that defines or reflects [the projector] design" not particular); *nSight, Inc. v.*

21 *PeopleSoft, Inc.*, 296 F. App'x 555, 560-61 (9th Cir. 2008) (two-sentence trade secret

22 discussion with no analysis); *see also Masimo Corp. v. True Wearables, Inc.*, 2022 WL

23 17083396, at *16 (C.D. Cal. Nov. 7, 2022) (trade secret was "used extensively in every

24 scientific sub-field").

25     Here, Plaintiffs' expert explained how Plaintiffs described LP-5 with reasonable

26 particularity. Ex. 15 ¶¶502-58. Apple did not argue Plaintiffs failed to describe LP-5

27 with sufficient particularity when Plaintiffs added it to the case. *See* Dkt. 650. Nor does

28 Apple attempt to make such a showing here. Instead, it merely proclaims that LP-5 is

not particular.  But Apple does not explain that assertion.  A trade secret plaintiff is not required "to describe [the trade secret] with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate."  *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005).

Indeed, "the fact that [Apple was] able to craft detailed arguments for why [Masimo's] information does not constitute trade secrets means that [Apple] has sufficiently identified that information to [Apple] so that it may investigate the merits of [Masimo's] claim."  *See Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014).  Moreover, as Apple's cited authority explained, whether a trade secret is defined with reasonable particularity may raise a question of fact for the jury.  *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).  Here, Apple failed to show the absence of a genuine dispute of fact, particularly in view of Madisetti's testimony.  Ex. 15 ¶¶502-58; *see also* Ex. NNN at 310-51, 463-66.

Finally, Apple argues Plaintiffs should not "be permitted to claim a trade secret broader than [it] possessed" and implies Plaintiffs needs to narrow LP-5 but cannot.  Mot. 16.  LP-5 accurately reflects both how Masimo implemented it and Apple used it.  Ex. 15 ¶¶513-33; Ex. 16 ¶¶643, 645.  Apple identified no evidence showing LP-5 is generally known.  Plaintiffs have no need to narrow LP-5.

**2. LP-7 Is Protectable**

███████████████████████████████████████

███████████████████████████████████████

███████  Mot. 16-17.  This argument fails for multiple reasons.  First, Apple mischaracterizes LP-7.  ██████████████████████████

███████████████████████████████████████

████████████████████████

Second, applying this advantage to a particular field can be a trade secret.  *See Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *4 (Fed. Cir. Jan. 24, 2022)

(solver known by statisticians does not make trade secret generally known in relevant field).

Apple argues LP-7 cannot be a trade secret because it does not recite particular "advantages." Mot. 17.  Apple cites no authority supporting its position.  As discussed, a trade secret is available for "information" that is not generally known.

### 3.  LP-8 Is Protectable

Mot. 17.  That is not Plaintiffs' trade secret.

Exs. XXX-YYY; Ex. 15 ¶629.

1    Apple relies on its expert, Warren, to argue LP-8 recites "general knowledge in

2  the trade."  Mot. 17-18 (citing Ex. 18 ¶249).  ████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ███████████████████████████████████  Moreover, merely locating a

7  published document fails to show it is generally known in the industry. *True Wearables*,

8  2022 WL 17083396, at *9).

9    ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████

14 ████████████

15    Lamego teaching this concept to Apple shows LP-8 is not "general knowledge."

16 Apple does not allege its engineers had such knowledge before Lamego.

17    ██████████████████████████████████████████████████████████

18    ████████████

19    Apple argues Plaintiffs' ██████████████████████████████  trade

20 secrets use impermissible "catchall" language.  Mot. 18-21.  Apple previously made,

21 and the Court rejected, this same argument.  The Court explained Plaintiffs defined the

22 ████  trade secrets sufficiently because  ████████████████████████████████

23 ████████████████████████████  Dkt. 273 at 5.  The Court further explained

24 "[t]he scope of this phrase is necessary circumscribed by the preceding lists of trade

25 secrets, meaning that it cannot be later used as a means for claiming trade secrets about

26 which Apple does not have notice."  *Id.*  Apple urges the Court to reach a different

27 conclusion based on two incorrect arguments.

28

First, Apple asserts Plaintiffs' experts "provide no guidance for how to understand these words." Mot. 19. Apple tries to distinguish the Court's prior ruling by asserting that, on summary judgment, the issue is whether Plaintiffs "provided enough ***evidence*** to allow a trier-of-fact to understand the scope of those five specific alleged trade secrets." Mot. 20. Apple does not explain why the jury would need evidence to understand these three plain English words. Nor does Apple offer any reason why Plaintiffs' experts should have defined those words.

Second, Apple tries to distinguish the Court's ruling by incorrectly asserting the scope of the ███ trade secrets has "grown murkier" since the Court's ruling. Mot. 19-21. Plaintiffs narrowed their case during discovery by informing Apple they did not intend to present some trade secrets at trial. Ex. BBBB. Apple asked if Plaintiffs would assert the ███ of those trade secrets. *Id.* Plaintiffs responded they would not. *Id.*

Apple also claims Plaintiffs are trying to expand their case by asserting the ███ of "***each***" trade secret in a category instead of all trade secrets in the category. Mot. 20 (emphasis in original). But Apple recognized that was Plaintiffs' position all along and even made the same argument in its motion to dismiss, which this Court denied. Dkt. 237-1 at 3 (Apple arguing Plaintiffs asserted the ██████████ ████████████████████████████

## C.   <u>Fact Issues Preclude Summary Judgment On Lost Profits</u>

Apple's Motion assumes the Court will grant its *Daubert* motion to exclude Kinrich's damages opinions. Mot. 21; Dkt. 1114. As Plaintiffs will explain in opposition, the Court should deny Apple's *Daubert* motion.

Even if the Court were to grant Apple's *Daubert* motion, the Court should still deny summary judgment. Expert testimony is not required for a jury to award damages. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1223 (9th Cir. 2010); *Alpha GRP, Inc. v. Subaru of Am., Inc.*, 2021 WL 2792433, *1 (C.D. Cal. Apr. 27, 2021) (denying summary judgment because testimony from plaintiffs' executives may establish

damages); *Toyrrific, LLC v. Karapetian*, 2019 WL 7188572, *5 (C.D. Cal. Sept. 10, 2019) (damages based on personal experience creates genuine dispute of fact).

Here, percipient witness testimony and contemporaneous documents show damages. ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ Expert testimony is unnecessary.

Apple's cases do not compel summary judgment because, in both cases, the plaintiff's only evidence of damages was excluded expert testimony. *See ChromaDex, Inc. v. Elysium Health, Inc.*, 2020 WL 1279236 *8 (C.D. Cal. Jan. 16, 2020); *Goodness Films, LLC v. TV One, LLC*, 2014 WL 12594201, *4 (C.D. Cal. Aug. 28, 2014). Plaintiffs have sufficient evidence even if the Court were to exclude Kinrich.

### III.   <u>CONCLUSION</u>

For the reasons above, the Court should deny summary judgment.

/ / /

-21-

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 12, 2023

By: /s/ Daniel P. Hughes
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

-22-

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,985 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].


Dated:_ January 12, 2023 _____            By: _/s/ Daniel P. Hughes_ _____
                                                 Joseph R. Re
                                                 Stephen C. Jensen
                                                 Benjamin A. Katzenellenbogen
                                                 Perry D. Oldham
                                                 Stephen W. Larson
                                                 Mark D. Kachner
                                                 Baraa Kahf
                                                 Adam B. Powell
                                                 Daniel P. Hughes
                                                 Justin J. Gillett

                                                 Attorneys for Plaintiffs
                                                 MASIMO CORPORATION and
                                                 CERCACOR LABORATORIES, INC.

56840698