MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: Feb. 6, 2023 <br> Time: 1:30pm <br><br> Pre-Trial Conference: Mar. 13, 2023 <br> Trial: Mar. 28, 2023 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

1

## **TABLE OF CONTENTS**

2

**Page**

3 INTRODUCTION ...................................................................................................... 1

4 ARGUMENT ............................................................................................................. 3

5 I. Plaintiffs Have Not Established Ownership Or Even Possession ........................ 3

6 A. Plaintiffs Have Not Even Attempted To Show Ownership Of The
Purported Secrets .................................................................................. 3

7
B. Plaintiffs Have Not Shown They Possessed The Purported Secrets ........ 4

8
1. ███ Trade Secrets Nos. 10-15 ...................................... 6

9
2. ███ Trade Secret No. 9 ............................................... 8

10
II. Plaintiffs Have Not Established The Purported Secrets Have Independent
11 Economic Value From Not Being Generally Known ......................................... 10

12 A. Generally Known .................................................................................. 10

13 B. Independent Economic Value ............................................................... 14

14 III. Plaintiffs Have Not Established Reasonable Efforts ......................................... 15

15 IV. Plaintiffs Have Not Established Misappropriation ............................................ 17

16 A. Plaintiffs' Acquisition Theory .............................................................. 17

17 B. Plaintiffs' Use/Disclosure Theory ........................................................ 20

18 V. Plaintiffs Have Not Established Harm ............................................................... 20

19 CONCLUSION ......................................................................................................... 21

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
  226 Cal. App. 4th 26 (2014) ....................................................................11, 14

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
  28 Cal. App. 5th 923 (2018) ..................................................................3

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  189 F.R.D. 410 (N.D. Cal. 1999) ...........................................................12

*Autotel v. Nevada Bell Tel. Co.*,
  697 F.3d 846 (9th Cir. 2012) .............................................................6, 10

*Balboa Capital Corp. v. Shaya Med. P.C. Inc.*,
  2022 WL 16894837 (C.D. Cal. Aug. 25, 2022) ....................................3

*Braxton-Secret v. A.H. Robins Co.*,
  769 F.2d 528 (9th Cir. 1985) ...................................................................19

*Brocade Communications Sys., Inc. v. A10 Networks, Inc.*,
  873 F. Supp. 2d 1192 (N.D. Cal. 2012)................................................10

*Carl Zeiss A.G. v. Nikon Corp.*,
  2018 WL 11342771 (C.D. Cal. Nov. 14, 2018) ...............................8, 9

*City of L.A. v. Travelers Indemnity Co.*,
  2022 WL 16841704 (C.D. Cal. Nov. 2, 2022) ......................................3

*CytoDyn of New Mexico, Inc., v. Amerimmune Pharms., Inc.*,
  160 Cal. App. 4th 288 (2008) ...............................................................20

*DMF Inc. v. AMP Plus, Inc.*,
  2020 WL 4194099 (C.D. Cal. July 17, 2020) ......................................6

*HiRel Connectors, Inc. v. United States*,
  2005 WL 4958547 (C.D. Cal. Jan. 4, 2005)......................................15

Wilmer Cutler
Pickering Hale
and Dorr LLP

*International Med. Devices, Inc. v. Cornell*,
  2022 WL 17082090 (C.D. Cal. Sept. 26, 2022) ...................................................14

*Jasmine Networks Inc. v. Superior Court*,
  180 Cal. App. 4th 980 (2009) ...............................................................................4

*Kaur v. City of Lodi*,
  263 F.Supp.3d 947 (E.D. Cal. 2017) ....................................................................7

*Kittrich Corp. v. Chilewich Sultan, LLC*,
  2013 WL 12131376 (C.D. Cal. Feb. 20, 2013) ...................................................12

*Language Line Servs., Inc. v. Language Servs. Assoc.*,
  2010 WL 2764714 (N.D. Cal. 2010) ...................................................................19

*Lushe v. Verengo, Inc.*,
  2014 WL 5794627 (C.D. Cal. Oct. 22, 2014) ........................................................5

*Mattel, Inc. v. MGA Ent., Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) .........................................................*passim*

*Palantir Techs. Inc. v. Abramowitz*,
  2022 WL 2952578 (N.D. Cal. July 26, 2022) .....................................................15

*Payan v. Los Angeles Cmty. Coll. Dist.*,
  2018 WL 6164269 (C.D. Cal. Oct. 16, 2018) ........................................................7

*FTC v. Publishing Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ..........................................................................5, 21

*San Jose Construction, Inc. v. SBCC, Inc.*,
  155 Cal. App. 4th 1528 (2007) ............................................................................14

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (2003) ..........................................................................4, 21

*Shakur v. Schriro*,
  514 F.3d 878 (9th Cir. 2008) .................................................................................4

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
  2021 WL 5785264 (C.D. Cal. Sept. 3, 2021) ......................................................17

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Thomas Petroleum, LLC v. Lloyd*,
   2012 WL 4511369 (E.D. Cal. Oct. 2, 2012)......................................................21

*Wilborn v. CarMax Auto Superstores*,
   2017 WL 6940653 (C.D. Cal. Dec. 11, 2017)......................................................7

*Yeager v. Bowlin*,
   693 F.3d 1076 (9th Cir. 2012) ..............................................................................7

**Statutes and Rules**

Cal. Civ. Code § 3426.1..........................................................................1, 2, 19, 20

Fed. R. Civ. P. 30(b)(6) ......................................................................................1, 5

Fed. R. Civ. P. 37(c)(1)......................................................................................7, 20

Fed. R. Civ. P. 56(c)(1)..........................................................................................3

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

Plaintiffs ask this Court to grant summary judgment on a trade secret claim that Plaintiffs have asserted is worth billions of dollars without providing admissible evidence sufficient to support their claim—much less the kind of evidence so powerful that no reasonable jury would be free to disbelieve it.  The motion should be rejected for numerous reasons.

As to possession, Plaintiffs fail to quote or even summarize their purported secrets, leaving this Court to sift through their "detailed analysis" of their supposed secrets in a nearly 100-page expert declaration, Dkt. 1098 ("Mot.") 8 n.2.  In addition to improperly requiring this Court to sort through a mountain of information, that declaration improperly includes new opinions and arguments not disclosed during expert discovery.  *See generally* Dkt. 1124 (Apple's motion to strike portions of Madisetti declaration).  Even if Madisetti's declaration is not struck, he necessarily lacks personal knowledge to establish that Plaintiffs possessed the purported secrets at the time of Apple's alleged misappropriation, and Plaintiffs have otherwise failed to provide the requisite evidence of possession.  For example, Plaintiffs' FRCP 30(b)(6) witness on the purported secrets at issue here took the position during his deposition that he could not identify a "███████████████████████████████████████████ ████████████████████████"  *See* Ex. H at 23:21-24:3; *see also, e.g.*, Dkt. 959 at 4-5 (collecting examples where Diab refused to discuss any aspect of Plaintiffs' alleged trade secrets).

At a minimum, genuine disputes of material fact remain for all other aspects of Plaintiffs' trade secrets claim.  *First*, the purported secrets do not "derive independent economic value from not being [generally] known," Cal. Civ. Code § 3426.1(d), as they are nothing more than wordy recitations of well-known concepts that are valueless to both Plaintiffs and Apple.  It is undisputed, for example, that Apple does not sell any product that uses the purported secrets, and Plaintiffs' own employee has

1  conceded that ideas like "███████████████████████████████

2  ████████████████████████████████████████

3  █████████████████████████████████████████████

4  █████████████████████████" are publicly-known concepts.  *See* Ex.

5  F at 83.

6       *Second*, Plaintiffs have not established that they took "efforts that are reasonable

7  under the circumstances," Cal. Civ. Code § 3426.1(d)(2), to safeguard the secrecy of

8  the specific purported secrets at issue here.  While Plaintiffs identify *general* measures

9  they claim to use to keep their confidential information secret, they have failed to

10  identify specific measures that they took to protect ███ Nos. 9-15.  Moreover,

11  Plaintiffs' suggestion that █████████████████████████████

12  ████████████████████████████████████████████

13  ██████████████████████████████████████

14  █████████████████████████████████

15  ████████████████████

16       *Finally*, Plaintiffs have not established that Apple misappropriated the purported

17  secrets or that they were harmed by that supposed misappropriation.  As to

18  misappropriation, for example, Plaintiffs stake their case for ████ Secrets Nos. 10-15

19  on the theory that U.S. Patent No. ████████████████████ verbatim.

20  But, as noted, Plaintiffs have presented no evidence that any of the purported secrets

21  were in their possession before this litigation and Plaintiffs' CEO conceded under oath

22  that Plaintiffs' outside counsel had "████████████████████████

23  ████████████████████████."  Ex. D at 98:10-14.  In other

24  words, Plaintiffs could have easily ██████████████████████

25  ██████ rather than the other way around.  And as to harm, Plaintiffs have offered no

26  concrete explanation for why they have been harmed by the disclosure of information

27  that Apple does not use—particularly given that Madisetti has opined that, even to this

28

---

day, none of the purported secrets disclosed in the ████████ are generally known. Ex. J at 135-137.

## ARGUMENT

To prevail at summary judgment, a moving party "who also bears the burden of persuasion on the issue in question must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *City of L.A. v. Travelers Indemnity Co.*, 2022 WL 16841704, at *2 (C.D. Cal. Nov. 2, 2022). The non-moving party may prevail either by "support[ing] the assertion [that genuine issues of material fact remain] by citing to particular parts of materials in the record" or "show[ing] that the materials cited [by the moving party] do not establish the absence … of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1); *accord Balboa Capital Corp. v. Shaya Med. P.C. Inc.*, 2022 WL 16894837, at *3 (C.D. Cal. Aug. 25, 2022).[1]

## I.   PLAINTIFFS HAVE NOT ESTABLISHED OWNERSHIP OR EVEN POSSESSION

### A.   Plaintiffs Have Not Even Attempted To Show Ownership Of The Purported Secrets

CUTSA plaintiffs must "show [they] ***owned*** the trade secret." *See, e.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018) (emphasis added); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 960 (C.D. Cal. 2011) (same). This Court has stated in this very litigation that a trade secret plaintiff must "demonstrate: (1) the plaintiff owned a trade secret." *E.g.*, Dkt. 264 at 4. Because Plaintiffs have not provided any evidence of ownership, summary judgment should be denied.

---

[1] Plaintiffs are wrong to assert that Apple must "demonstrate with admissible evidence that issues of material fact remain." Mot. 7 (citing *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 4785 U.S. 574, 585-586 (1986)). That test applies when the non-moving party would have the burden of proof at trial.

Wilmer Cutler
Pickering Hale
and Dorr LLP

While Plaintiffs assert (without explanation) that it is sufficient to show "possession," they do not identify any authority supporting that proposition.  Mot. 7-8.  To the contrary, the sole case they cite for the proper legal standard states that "a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret."  *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003), *cited in* Mot. 7.  Moreover, the law applies the "ownership" framework for a good reason—"[i]t is the owner at the time of the injury who will ordinarily suffer the loss of value or cost of replacement or repair, and who will thus need the compensatory remedy that the law offers."  *Jasmine Networks Inc. v. Superior Court*, 180 Cal. App. 4th 980, 993 (2009).  Adopting the "possession" framework that Plaintiffs urge, on the other hand, could result in a windfall for someone who incurred no loss—e.g., an employee who developed a trade secret for the employer under an assignment agreement.[2]

**B.    Plaintiffs Have Not Shown They Possessed The Purported Secrets**

In any event—and as Apple's cross-motion for summary judgment explains— Plaintiffs cannot demonstrate that they possessed any of the purported ▮▮▮ secrets.  *See, e.g.*, Dkt. 1101 at 3-5.  The arguments raised in Plaintiffs' motion do not change this calculus, much less show that the evidence of possession "is so powerful that no reasonable jury would be free to disbelieve it," such that summary judgment in their favor is warranted.  *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).

As an initial matter, the only support that Plaintiffs' "Statement of Uncontroverted Facts" proffers for the broad assertion that Plaintiffs "▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" is two paragraphs apiece from the Kiani and Diab declarations.  *See* Dkt. 1098-1 at 1 (SUF

---

[2] Plaintiffs cannot reasonably claim that they lacked notice of the ownership requirement such that they should be able to address the issue in the first instance in their reply, as Apple raised the issue months ago.  *See* Dkt. 1097 at 2-5.

Wilmer Cutler
Pickering Hale
and Dorr LLP

No. 3).[3]  Neither declaration even uses the term "trade secret" or provides anything more than conclusory and/or high-level assertions about Plaintiffs' purported secrets— even though the secrets as drafted ███████████████. *Compare* Dkt. 1098-12 ("Kiani Decl.") ¶¶ 7-8 *and* Dkt. 1098-13 ("Diab Decl.") ¶¶ 20, 31 *with* Ex. 67 at 1334-1336.

For example, Kiani states merely that Plaintiffs "█████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████." Kiani Decl. ¶ 7.  Diab similarly describes a high-level "technique" (i.e., "██████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████"), Diab Decl. ¶ 20, without explaining how each step of the purported secrets at issue here were created.  Such "conclusory, self-serving" statements in a declaration are "insufficient to create a genuine issue of material fact," *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), much less show Plaintiffs are entitled to judgment as a matter of law.  Indeed, despite being designated as Plaintiffs' FRCP 30(b)(6) witness on the topic of Plaintiffs' "██████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████, Ex. H at 209-216.[4]

Plaintiffs fare no better even if this Court chooses to look beyond Plaintiffs' SUF to the materials cited only in Plaintiffs' brief.

---

[3] "Presenting all material facts in the []SUF is important: it safeguards against obfuscation and overreaching by the moving party … and ensures that the facts are parsed out reasonably and presented in a format the opposing party and the Court can easily examine."  *Lushe v. Verengo, Inc.*, 2014 WL 5794627, at *3 & n.2 (C.D. Cal. Oct. 22, 2014).

[4] While paragraph 29 of Diab's declaration ██████████████████████████████ █████ without specifying (1) when each element was developed or (2) whether Plaintiffs possessed that purported secret before this litigation.

1        **1.** ▮▮▮ **Trade Secrets Nos. 10-15**

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Ex. 67 at 1335.  ▮▮▮ Nos. 11-15 are all

5   variations of No. 10.  *Id.* at 1336.  For example, ▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮

10      Plaintiffs makes no real attempt to meet their burden to show that they possessed

11   ▮▮▮ No. 10 (and thus necessarily does not show that they possessed Nos. 11-15,

12   which depend on it).  Mot. 11.  Plaintiffs' only argument is their passing comment that

13   the Madisetti declaration establishes that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  *Id.*

15   This assertion is triply flawed.

16      *First*, "[a]rguments made in passing and inadequately briefed are waived."

17   *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 857 n.9 (9th Cir. 2012); *see also DMF*

18   *Inc. v. AMP Plus, Inc.*, 2020 WL 4194099, at *2 n.1 (C.D. Cal. July 17, 2020)

19   (argument pressed "in seven paragraphs of its expert report" filed with summary

20   judgment motion not "adequately raised").

21      *Second*, while ▮▮▮ No. 9 and ▮▮▮ No. 10 involve the same basic type of

22   technology, Plaintiffs are incorrect that Madisetti's declaration suggests that

23   possession of one is possession of the other.  The alleged secrets are substantively

24   different ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 67 at 1334-1335, and

26   Madisetti's declaration does not assert that possession of ▮▮▮ No. 9 constitutes

27   possession of No. 10, *see* Dkt. 1098-8 ("Madisetti Decl.") ¶¶ 154-173.

28



---

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Third*, and most notably, Madisetti's declaration is not proper evidence at the summary judgment stage for a multitude of reasons.  For example, Madisetti's declaration improperly includes new opinions and relies on new evidence absent from his reports served before the expert discovery cut-off—apparently in an attempt to provide an improper sur-rebuttal to Apple's expert's rebuttal.  *See* Dkt. 1124-1 at 13-17 (motion to strike under FRCP 37(c)(1); *see also* Dkt. 1124-10 (document identifying new opinions and evidence in Madisetti declaration).  Even setting aside FRCP 37(c)(1), Madisetti's new arguments should be excluded under the sham affidavit doctrine, which bars the use of declarations that contradict deposition testimony at the summary judgment stage.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  Here, Madisetti testified that his reports ██████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████  Ex. J at 10:17-11:7.  This "clear and ambiguous" statement, *Yeager*, 693 F.3d at 1080, cannot be squared with Madisetti's subsequent decision to expand his opinions—particularly where he offered no explanation for his shift in position, *see Payan v. Los Angeles Cmty. Coll. Dist.*, 2018 WL 6164269, at *8 n.5 (C.D. Cal. Oct. 16, 2018) (declaration inadmissible where expert testified at deposition that she had no disagreements with other side's expert report, but "state[d] the exact opposite" in her declaration).

Madisetti's declaration is infirm for another reason:  Plaintiffs cannot rely on the declaration of an expert who has "no personal knowledge of the events" (here, whether Plaintiffs possessed the purported secrets at the time of supposed misappropriation) "for the proposition that th[o]se facts occurred."  *Kaur v. City of Lodi*, 263 F.Supp.3d 947, 977 (E.D. Cal. 2017) (collecting cases); *accord Wilborn v. CarMax Auto Superstores*, 2017 WL 6940653, at *7 (C.D. Cal. Dec. 11, 2017) (similar).  Here, there is no reasonable argument that Madisetti has personal knowledge regarding

1   development or possession.  He testified that he was ██████████████████

2   ███████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ██████████████████████████████████████████ Ex. J at

5   81:22-82:10.  He could not answer whether the purported secrets were ever recorded or

6   otherwise captured in a single place before this litigation.  *Id.* at 81-87.  And although

7   his declaration asserts ████████████████████ in its entirety, *e.g.*,

8   Madisetti Decl. ¶ 154, he has admittedly never seen the device or tested it to determine

9   its functionality,  Ex. J at 110-113.  Finally, while Madisetti relies on snippets of what

10  he describes as ████████████████ to show use of █████ No. 10, *e.g.*, Madisetti

11  Decl. ¶¶ 156-173, he lacks personal knowledge regarding the origin of the source code

12  he relies upon—nor have Plaintiffs put an authenticated version of the source code for

13  the ██████ into the summary judgment record.

14          Finally, many of Madisetti's assertions regarding how the ████████ practices the

15  various steps of █████ No. 10 are nothing more than "broad conclusory statements"

16  that do not constitute "evidence."  *Carl Zeiss A.G. v. Nikon Corp.*, 2018 WL

17  11342771, at *2-3 (C.D. Cal. Nov. 14, 2018).  For example, in stating that ████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████—all without

20  explanation.  Madisetti Decl. ¶¶ 169-170, 172.  Moreover, while Madisetti broadly

21  asserts that █████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████ Ex. P at ¶ 333.

24          **2.      ██████   Trade Secret No. 9**

25          Plaintiffs' possession analysis for █████ No. 9 also depends on the Madisetti

26  declaration.  Specifically, while Plaintiffs reference preliminary work done by Walt

27  Weber, Marcelo Lamego, and Jeroen Poeze, they do not identify any contemporaneous

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    statement or document from those three individuals that recites the full, █████████

2    alleged secret.  *See* Mot. 8-11.[5]  Instead, even Plaintiffs concede that they can only

3    show possession by ███████████████████████████████████████████

4    ███████████████████████████████████████████████████████████

5    ████████████████████████████████  Moreover, while

6    Plaintiffs baldly assert that ███████████████████████████████████

7    ██████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11   Dkt. 1098-11 ("Poeze Decl.") ¶¶ 3, 6; *see also* Ex. P at ¶ 291 (Apple expert report).

12           Plaintiffs must accordingly rely on Madisetti to show they are entitled to

13   judgment as a matter of law, and his declaration suffers from the flaws described

14   above.  It includes new opinions in contravention of Madisetti's deposition testimony

15   that his reports contain all his opinions—most notably, the assertion that ████ No. 9

16   was ████████████████████████████████████████████████

17   ████████████████.  *See* Madisetti Decl. ¶ 85; *see also* Dkt. 1124-10 (identifying

18   paragraphs 62-65, 67, 70, and 72-87 as containing new opinions/evidence).  The

19   declaration goes beyond Madisetti's personal knowledge, for example by laying out a

20   "[d]evelopment [t]imeline" for the purported ████ secrets.  *See* Madisetti Decl. ¶¶ 41-

21   46, 49.  And the declaration relies on conclusory statements, such as Madisetti's

22   suggestion that the ███████████████████████████████████ (an

23   assertion that contains no explanation and does not even recite the full step).  *Compare*

24   Ex. 67 *with* Madisetti Decl. ¶ 70.

25   _____

26   [5] Plaintiffs place emphasis on a 2006 email from Lamego.  Mot. 4, 9, 14, 21 (citing Ex.
     1).  That email, however, references only a single █████████████████████████

27   ████████████████████████████████████████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1
2

**II.     PLAINTIFFS HAVE NOT ESTABLISHED THE PURPORTED SECRETS HAVE INDEPENDENT ECONOMIC VALUE FROM NOT BEING GENERALLY KNOWN**

3          For each purported secret, Plaintiffs must show both that the secret (1) was not

4   generally known and (2) derived independent economic value as a result.  *See Mattel*,

5   782 F. Supp. at 959 ("considering the evidence as to each trade secret" in assessing

6   whether summary judgment should be granted on these questions); *see also Brocade*

7   *Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal.

8   2012) (damages expert's analysis "of the value of Trade Secrets 1-19" and "summar[y

9   of] the benefit conferred by each of these trade secrets" created a genuine issue of

10  material fact).  Because Plaintiffs have failed to brief whether each purported ███

11  secret at issue has independent economic value or is generally known—and instead

12  simply refer to the "███ trade secrets" in the aggregate, *e.g.*, Mot. 14—they have

13  waived the right to present such an argument, *see Autotel*, 697 F.3d at 857 n.9, and

14  thus cannot carry their burden.[6]  Regardless, the arguments Plaintiffs do make are

15  unavailing.

16          **A.     Generally Known**

17          Plaintiffs provide just three arguments for why the purported ███ secrets are

18  not generally known, all of which fail.

19          *First*, Plaintiffs cite two emails from Lamego.  Mot. 14 (citing Exs. 1, 35).  But

20  neither describes any purported trade secret.  Exhibit 1 mentions a single ███

21  technique that Plaintiffs have not claimed as a secret.  *See supra* n.5.  Exhibit 35

22  merely shows that Lamego submitted a single patent application on the general topic of

23  "████████████████████████████████" while working at Apple.

24  Ex. 35.  Plaintiffs' own witness has acknowledged that the basic idea ████████

25  ████████ is a well-known concept, *supra* pp. 1-2, and Plaintiffs themselves

26

27  ───────────────
[6] Madisetti's *declaration* includes assertions regarding whether each trade secret was generally known, but that is insufficient for preservation.  *See supra* p. 6.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

have several patents on that technology that issued years before the alleged misappropriation, *see*, *e.g.*, Ex. Y at 10:14-23 (Plaintiffs' patent springing from application published in 2011 describing "demodulation module" that reduces "crosstalk"); Ex. CC (Plaintiffs' 2001 patent entitled "Method and Apparatus for Demodulating Signals In A Pulse Oximetry System").

*Second*, Plaintiffs argue that Apple has previously conceded that all purported ███ secrets were non-obvious in a filing with the Patent Office. Mot. 14-15. The passage Plaintiffs cite, however, refers to ████████████████████. *Compare* Ex. 37 at 786 *with* Ex. 67 at 1335. Moreover, Plaintiffs misrepresent Apple's position, which was that the examiner had erred by finding that two specific references (Diab and McCarthy) rendered the claimed invention obvious. Here, Apple has put forth evidence that a *different* reference—i.e., ██████████████████████████ ████████—established that the first step was generally known. *See* Ex. O ¶ 180. Finally, even if Plaintiffs were right on the facts, they are wrong on the law; the sole case they cite states only that a representation to the Patent Office of non-obviousness provided "some evidence" to support the jury's verdict that the secret was not generally known. *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 63 (2014). That is a far cry from Plaintiffs' burden to provide evidence so compelling that no jury—reading the facts in the light most favorable to Apple—could rule in Apple's favor.

*Third*, Plaintiffs suggest in passing (and without analysis) that Diab's and Madisetti's declarations show the purported secrets were not generally known. Such a conclusory argument is insufficient to preserve the issue. *See supra* p. 6. But even if it was, Diab's declaration states only that he ██████████████████████████ ████████████████████████████████. Diab Decl. ¶¶ 29-30. Plaintiffs' own case law provides that the test is whether the trade secret has become generally known to "potential competitors or other persons to whom the information

1   would have some economic value," *Kittrich Corp. v. Chilewich Sultan, LLC*, 2013 WL

2   12131376, at *4 (C.D. Cal. Feb. 20, 2013), and Diab notably conceded during his

3   deposition that ███████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7        Madisetti's declaration fares no better.  Like Diab, he admitted during his

8   deposition that he had not spoken to anyone (or reviewed written materials) from any

9   of Plaintiffs' ████████████████████████████████████████████

10  ████████████████████████████████████████ And although *Plaintiffs*

11  have the burden on the issue, his only explanation for why ██████ Nos. 11-15 are not

12  generally known is that *Apple's expert* has not identified references that show the

13  secrets were generally known.  *See* Madisetti Decl. ¶¶ 197, 206, 214, 220, 226.  This

14  was improper and deprives his testimony of any weight.  *See Atmel Corp. v. Info.*

15  *Storage Devices, Inc.*, 189 F.R.D. 410, 416-417 (N.D. Cal. 1999) (excluding proposed

16  expert testimony on "generally known" where plaintiffs' expert failed to perform "a

17  survey of literature or other research" and instead relied on his "unrefreshed

18  recollection of his individual experience in the industry").

19        For ██████ Nos. 9 and 10, Madisetti relies on two additional points.  He first

20  repeats Plaintiffs' assertion that the fact that Apple ████████████████████████████

21  ██████████ is proof that the purported secrets were not generally known.  Madisetti

22  Decl. ¶¶ 153, 185.  But as explained, the existence of a related patent is not dispositive

23  proof that a secret is not generally known, *see supra* p. 11, and in any event, the patent

24  validity analysis is different from the "generally known" analysis, Ex. M at 476-477.

25  Madisetti also relies on the Kiani and Diab declarations to opine that Plaintiffs' ████████

26  ██████████████████████████████████████████ and they would not have gone to

27  that trouble if the ██████ secrets were generally known.  Madisetti Decl. ¶¶ 152, 186;

28

*see also* Ex. K at 341-342 (Madisetti testifying that his understanding regarding Plaintiffs' spending on their technology was "███████████████████████████████████ ███████████████).  Madisetti does not cite any specific paragraph from either declaration for this point, likely because neither supports his assertion.  Both state only that Plaintiffs have devoted "████████████████████████████████████████ ████████████████████████████████████."  Diab Decl. ¶ 31 (emphasis added); *accord* Kiani Decl. ¶ 7 (similar).  This distinction between "███████████████████ ██████" is important because the former is broad enough to encompass technology that was subsequently patented, as well as purported secrets not at issue in this motion.  In fact, Madisetti conceded during his deposition that the ██████████████ estimate that appeared in his prior reports did *not* mean that ████████████████████ ██████████████████████████████████████ Ex. J at 129-133.  Rather, the number included ████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████ *Id.*[7]

In any event, even if Plaintiffs had provided sufficient evidence to meet their initial burden, whether the purported secrets are generally known is a hotly disputed issue of fact.  As Apple's expert has explained, ████████████████████████████ ████████████████████████████████████████████████████.  *See* Ex. O at ¶¶ 132-240; Ex. P at ¶¶ 95-120, 300-308, 341-347, 376-383, 412-418, 447-453, 482-489, 518-525; *see also* Exs. T-FF (key documents relied upon in expert's

---

[7]   Madisetti also urges this Court to place weight on the fact that Apple supposedly ████ █████████████████████████████████████.  Madisetti Decl. ¶¶ 152, 18 ██████ However, he provides no support for this assertion nor is there any in the record—Apple hired Lamego for his general technical expertise, not for any specific technology.  *See also infra* p. 19 (discussing terms of Lamego's offer).

"generally known" analysis).[8]  Plaintiffs preemptively argue that Apple's expert's approach to determining what is "generally known" is flawed because his analysis for each trade secret relies on multiple references.  Mot. 15-16.  But Plaintiffs are once again wrong on the law, as their sole authority dealt with the narrow situation of "combination" trade secrets—i.e., "'where the elements are in the public domain, but there has been accomplished an effective, successful, and valuable integration of the public domain elements'" that give the claimant "a competitive advantage."  *Altavion*, 226 Cal. App. 4th at 47 (quoting *Rivendell Forest Prods. v. Georgia-Pacific*, 28 F.3d 1042, 1043 (10th Cir. 1994)).  To the extent Plaintiffs are pressing combination secrets, they have not attempted to make that requisite showing here.[9]

### B.    Independent Economic Value

At summary judgment, courts have explained that "[i]nformation derives independent economic value from not being generally known when its secrecy provides a business with a 'substantial business advantage.'"  *Mattel*, 792 F. Supp. 2d at 959; *accord International Med. Devices*, *Inc. v. Cornell*, 2022 WL 17082090, at *7 (C.D. Cal. Sept. 26, 2022) (a "secret must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others'").

Plaintiffs have not met their burden.  They again assert the purported secrets must be valuable because Plaintiffs spent ███████████████████████ ███████████████████████████, Mot. 14, but it is not clear what, if any, portion of that spending went to the alleged secrets at issue here, *supra* pp. 12-13.

---

[8] This same evidence also supports Apple's affirmative defense that the purported secrets are readily ascertainable because Apple "could have" relied on publicly available documents to replicate Plaintiffs' purported secrets.  *See San Jose Construction, Inc. v. SBCC, Inc.*, 155 Cal. App. 4th 1528, 1543 (2007).

[9] Plaintiffs also cite two decades-old cases that the patent-law concept of obviousness does not apply in trade secret litigation.  Mot. 15-16.  Neither Apple nor its expert has argued that it does.

---

Plaintiffs also cite conclusory statements in the Diab and Kiani declarations for the proposition that the purported secrets have improved Plaintiffs' technology (e.g., ███████████████████████████████████ Mot. 14. Again, however, neither Kiani nor Diab attributes those benefits to the supposed secrets at issue in this motion or even this litigation; they just assert Plaintiffs' ███ techniques—many of which are patented and thus public knowledge—convey those benefits.  *See* Kiani Decl. ¶ 7, Diab Decl. ¶ 30; *see supra* p. 11 (citing exemplar patents).  The declarations do not even explain why Plaintiffs' ████ techniques are important to the lone Plaintiffs' product that their expert asserts ████████████ ███████████████ *Id.*  To the contrary, during his deposition, Kiani could not ████████████████████████████████████████.  Ex. D at 229-230.

Finally, Plaintiffs argue the purported secrets are "valuable" simply because they are secret.  Mot. 14.  That is not the test.  Rather, Plaintiffs must show the supposed secrets provide a business advantage from being kept secret.  *Supra* p. 14.

## III.    PLAINTIFFS HAVE NOT ESTABLISHED REASONABLE EFFORTS

"The determination of whether information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy is fact specific," and a plaintiff must tie its efforts to the particular information claimed to be a trade secret. *Mattel*, 782 F. Supp. 2d at 959.  Accordingly, "[w]hether a company has taken reasonable efforts to protect its trade secrets is a 'quintessentially fact-specific' inquiry" that can only be resolved on summary judgment "'in an extreme case.'" *Palantir Techs. Inc. v. Abramowitz*, 2022 WL 2952578, at *4 (N.D. Cal. July 26, 2022); *see HiRel Connectors, Inc. v. United States*, 2005 WL 4958547, at *4 (C.D. Cal. Jan. 4, 2005) (similar).

Plaintiffs have not carried their burden.  They point to a number of general workplace policies regarding information security, but fail to tie those efforts to the

1   seven purported secrets at issue in this motion. ████████████████████████

2   ████████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████ (Mot. at 16-

6   17) can all be "relevant" to the reasonableness of Plaintiffs' efforts to maintain the

7   secrecy of their information *generally*.  *Mattel*, 782 F. Supp. 2d at 959.  But that is not

8   the question before the Court—what Plaintiffs must demonstrate for liability is the

9   reasonableness of their efforts to protect the *claimed trade secrets*.  *Id.*[10]

10          This distinction between general and specific measures is particularly important

11   in this case, where ██████████████████████████████████████████████

12   ███████████████████████████████████████████

13   ██████████████████████████████████████████ *See* Ex. G at 56-57

14   █████████████████████████████████████████████████████

15   █████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████

17   ██████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████

19   █████████████████████████████████████████████

20   █████████████████████████████████████████████████

21   ████████[11]  Even the Masimo employee whom Plaintiffs have identified as the most

22   _____

23   [10] Plaintiffs note in passing that Lamego ██████████████████████████████Mot.

24   17; Ex. 43.  That a single email is the best evidence they can muster to show they kept
     the purported ██████ secrets confidential is a telling indication that they did not
     undertake broader efforts.

25

26   [11] Plaintiffs are flat wrong that paragraphs 30-31 of the Diab declaration show

27   ██████████████████████████████████████████████ *(Cont'd on next page)*

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

knowledgeable about their security policies (Bilal Muhsin) failed to identify any

███████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. F at 106-

107; *id.* at 103 (████████████████████████████████████

████).  As Plaintiffs' CEO summarized: "████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

        This lack of guidance regarding what information constitutes a trade secret

renders Plaintiffs' more general security measures (e.g., ████████████████

████████) "largely meaningless."  *Mattel*, 782 F. Supp. 2d at 959; *see also SPS*

*Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 5785264, at *9 (C.D. Cal. Sept. 3,

2021) (at summary judgment, that Plaintiffs had "rules and policies protecting all

confidential information" did not resolve whether they had employed reasonable

efforts).

**IV.    PLAINTIFFS HAVE NOT ESTABLISHED MISAPPROPRIATION**

    **A.    Plaintiffs' Acquisition Theory**

        Plaintiffs argue that Lamego's research and refinement of ████████████

█████████ technology while at Apple shows improper acquisition, Mot. 17-20, but

they fail to connect the work he did to the seven specific secrets at issue here.  Instead,

they fall back once again on the sleight of hand of treating any reference to

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    ██████ ).  As discussed above, the basic idea of ████████████████████ was

2    well known prior to this litigation—in part because of Plaintiffs' own patents and in

3    part due to well-known concepts originally developed by others.  *See supra* pp. 10-14.

4         Plaintiffs' only attempt to link Lamego's work to the purported secrets once

5    again comes through citations to the Madisetti declaration, which they claim verifies

6    that ████████████████████████████████████████████████████████

7    ████████████████████████████ .  Mot. 20-21.  As an initial matter,

8    Madisetti's declaration does not even attempt to ████████████████████████

9    ████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████  And even as for ███ No. 9,

12   Madisetti fails to point to any single document that lists the purported secret or

13   explains his position beyond the conclusory assertion that it is his "opinion" that Apple

14   possessed ████ No. 9 "based on my review of the evidence and testimony."  Madisetti

15   Decl. ¶ 113.[12]  In any event, Madisetti's declaration at best raises a question of

16   disputed fact, as (1) Apple's expert has surveyed the evidence and concluded Apple

17   uses a *different* technique ████████████████████████████

18   ████████████████████████ No. 9 is supposed to mitigate, *see* Ex. P ¶ 317

19   (collecting citations), and (2) Lamego has testified ████████████████████████

20   ████████████████████████████████████████████ , *see* Ex.

21   17 at 161-165.  While Plaintiffs complain Lamego did not speak as clearly as they

22   would have preferred, Mot. 21, the testimony read in the light most favorable to Apple

23   is evidence that Lamego performed the relevant work as an Apple employee and

24   without the assistance of, for example, Diab, Weber, or Poeze.

25   _____

26   [12]  Madisetti's subsequent suggestion at paragraph 115 that Exhibit 55 includes ████████

27   ████████████████████████████████████████████ *see* Dkt. 1124-10 at 15

     *see also supra* p. 7 (discussing sham affidavit rule).

28

1    Finally, even if Plaintiffs could demonstrate Apple acquired the purported

2    secrets, there remains a genuine dispute of material fact over whether Apple knew or

3    had reason to know Lamego had acquired those secrets through improper means.  Cal.

4    Civ. Code § 3426.1(b)(1).  "Questions involving … whether a party knew or should

5    have known of a particular condition[] are generally … inappropriate for resolution by

6    summary judgment." *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.

7    1985).  Lamego, like all new hires, was required to sign both an ██████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ██████

13   While Plaintiffs point to the fact that Apple was warned (at a high level) that

14   Lamego was aware of Plaintiffs' alleged secrets, Mot. 22, the most natural inference is

15   that Apple assumed that Lamego would ████████████████████████████████

16   ████████████  *Braxton-Secret*, 769 F.3d at 531 (summary judgment inappropriate

17   where "contradictory inferences may be drawn from" even undisputed facts).  And

18   Plaintiffs' assertion that Apple supposedly paid Lamego ████████████████████

19   ████████████████████████████████, Mot. 22, is both speculative

20   and misleading.  As Plaintiffs' own evidence shows, Lamego received an offer that

21   was roughly ████████████████████████████████, Ex. 31—a miniscule

22   fraction of the billions of dollars Plaintiffs claim *each* of their secrets is worth.

23

24   _____

25   [13] This answers Plaintiffs' suggestion that Apple can be held liable under respondeat

26   superior.  Mot. 22 n.4.  That applies when an employee's improper act was at least "in

     a general way, foreseeable from his duties." *Language Line Servs., Inc. v. Language*

27   *Servs. Assoc.*, 2010 WL 2764714, at *3 (N.D. Cal. 2010).  Here, ██████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

### B.    Plaintiffs' Use/Disclosure Theory

Plaintiffs claim that Apple used and disclosed the alleged trade secrets by filing and obtaining ███████████ .  Mot. 22-24 (citing Cal. Civ. Code §3426.1(b)(2)(B)(iii)).  But this theory of misappropriation, too, requires Plaintiffs to show Apple "knew or had reason to know" that Lamego had an obligation to keep the purported ████ secrets confidential, Cal. Civ. Code §3426.1(b)(2)(B), and Apple's state of mind is at best a disputed fact.  *Supra* p. 19.

Regardless, Plaintiffs have not established the requisite overwhelming evidence of use/disclosure needed to prevail at summary judgment.  While ████████ ██████████████████████████████, the most natural inference to draw from that overlap is *Plaintiffs* copied the patent in drafting their purported trade secrets for this litigation.  As noted, Plaintiffs have not presented any evidence that ████ Nos. 10-15 were written down in a single place prior to this case.  *See supra* pp. 4-8.  And Plaintiffs' CEO had admitted both that ████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████ Ex. D at 42, 97-98; *see also, e.g.*, Ex. J at  209-210 (Madisetti conceding he does not ████████████████████ ████████████████████████████

Finally, while Plaintiffs argue ███████████████████████ ████, their only support for this position comes from passages from the Madisetti and Poeze declarations that should be struck under FRCP 37(c)(1).  Dkt. 1124 (Apple's motion to strike).  At a minimum, because Madisetti's opinion on this issue goes beyond the bounds of his report, it should be ignored, struck, or both under the sham affidavit doctrine.  *See supra* p. 7.

### V.    PLAINTIFFS HAVE NOT ESTABLISHED HARM

Finally, Plaintiffs have failed to establish Apple's "actions damaged" Plaintiffs.  *CytoDyn, Inc.*, *v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (2008);

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Sargent*, 110 Cal. App. 4th at 1668.  Plaintiffs first assert they have been harmed simply because Apple purportedly possesses their secrets and might assert them against Plaintiffs in the future.  Mot. 24.  But Apple's "possession alone is insufficient to entitle Plaintiff[s] to summary judgment," *Thomas Petroleum, LLC v. Lloyd,* 2012 WL 4511369, at *11 (E.D. Cal. Oct. 2, 2012), and even Plaintiffs' own case law (*Sargent*) requires a showing of *past* harm—not speculative harm that might occur in the future.

Plaintiffs relatedly assert that their competitors *might* ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮.  Mot. 24.  But even Madisetti has conceded he does not know whether anyone other than Apple or Plaintiffs has, to date, acquired any knowledge of Plaintiffs' purported secrets.  Ex. J at 135-137.

Finally, Plaintiffs rely on a paragraph from Kiani's declaration to argue that they have been harmed because (1) Apple's purported misappropriation has had a ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮.  The assertions do not even attempt to tie Plaintiffs' harm to the specific purported ▮▮ secrets at issue in this motion and, in any event, are too "conclusory [and] self-serving" to move the needle at the summary judgment stage.  *See Publishing Clearing House*, 104 F.3d at 1171.

## CONCLUSION

The Court should deny Plaintiffs' motion in its entirety.

Dated:  January 12, 2023            Respectfully submitted,


                                    MARK D. SELWYN
                                    AMY K. WIGMORE
                                    JOSHUA H. LERNER
                                    SARAH R. FRAZIER
                                    NORA Q.E. PASSAMANECK
                                    THOMAS G. SPRANKLING
                                    WILMER CUTLER PICKERING HALE AND
                                    DORR LLP

                                    BRIAN A. ROSENTHAL
                                    GIBSON, DUNN & CRUTCHER LLP

                                    KENNETH G. PARKER
                                    HAYNES AND BOONE, LLP



                                    By:  */s/Mark D. Selwyn*
                                         Mark D. Selwyn


                                    *Attorneys for Defendant Apple Inc.*

1  ## CERTIFICATE OF COMPLIANCE

2  The undersigned, counsel of record for Defendant Apple, Inc., certifies that this

3  brief contains 6,983 words, which [choose one]:

4  _X_ complies with the word limit of L.R. 11-6.1.

5  ___ complies with the word limit set by court order dated [date].

6

7  Dated:  January 12, 2023          Respectfully submitted,

8
9          MARK D. SELWYN
           AMY K. WIGMORE
10         JOSHUA H. LERNER
           SARAH R. FRAZIER
11         NORA Q.E. PASSAMANECK
           THOMAS G. SPRANKLING
12         WILMER CUTLER PICKERING HALE AND
           DORR LLP
13
14
           BRIAN A. ROSENTHAL
15         GIBSON, DUNN & CRUTCHER LLP
16
           KENNETH G. PARKER
17         HAYNES AND BOONE, LLP
18
19         By: _/s/ Mark D. Selwyn_____
20              Mark D. Selwyn
21
           _Attorneys for Defendant Apple Inc._
22
23
24
25
26
27
28

Wilmer Cutler
Pickering Hale
and Dorr LLP