Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO STRIKE PLAINTIFFS' SUPPLEMENT TO APPLE'S INTERROGATORY NO. 33**<br>)<br>) Date:        February 6, 2023<br>) Time:        1:30 p.m.<br>) Location:   Courtroom 10C<br>) |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

III.  LEGAL STANDARD ............................................................................. 4

IV.   ARGUMENT........................................................................................... 5

    A.    Plaintiffs' Voluntary Supplement Was Timely..................................... 5

        1.    Plaintiffs' Original Response Was Complete And Correct........ 5

        2.    Apple Has Not Shown Plaintiffs Had Any Duty To Supplement ................................................................................. 7

        3.    Plaintiffs' Showing Of Possession Satisfies Any Possible Ownership Requirement .......................................................... 8

        4.    Even If Plaintiffs Had Any Duty To Supplement, Their Supplement Was Timely........................................................ 10

    B.    Any "Delay" Was Substantially Justified and Harmless ................... 12

        1.    Plaintiffs Genuinely Disputed Apple's Demands For A Supplemental Response ........................................................... 12

        2.    The Timing Of Plaintiffs' Supplement Did Not Harm Apple ...................................................................................... 13

    C.    The Court Should Not Exclude The Supplement ............................... 16

        1.    Apple Ignores The Five-Factor Test For Excluding Evidence.................................................................................. 16

        2.    Apple Does Not Demonstrate Willfulness, Fault, Or Bad Faith ....................................................................................... 17

V.    CONCLUSION ..................................................................................... 18

CERTIFICATE OF COMPLIANCE.............................................................. 20

# TABLE OF AUTHORITIES

Page No(s).

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) ...................................................................... 17

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
  219 F. Supp. 3d 984 (N.D. Cal. 2017) ............................................... 10, 12

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
  2019 WL 12521480 (C.D. Cal. Aug. 9, 2019) ......................................... 9

*Cervantes v. Zimmerman*,
  2019 WL 1598219 (S.D. Cal. Apr. 15, 2019) ......................................... 12

*Coulter v. Baca*,
  2014 WL 12589652 (C.D. Cal. May 23, 2014) ....................................... 18

*Jackson v. United Artists Theatre Circuit, Inc.*,
  278 F.R.D. 586 (D. Nev. 2011) ................................................................. 5

*L.A. Terminals, Inc. v. United Nat'l Ins. Co.*,
  340 F.R.D. 390 (C.D. Cal. 2022) ......................................................... 4, 6

*LD v. United Behav. Health*,
  2022 WL 4372075 (N.D. Cal. Sept. 21, 2022) ......................................... 5

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) .................................................................. 17

*Liberty Ins. Co. v. Brodeur*,
  41 F.4th 1185 (9th Cir. 2022) ................................................................... 5

*Liew v. Breen*,
  640 F.2d 1046 (9th Cir. 1981) ................................................................ 12

*Mattel, Inc. v. MGA Ent., Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) .................................................. 8, 9

*NW Pipe Co. v. DeWolff, Boberg & Assoc., Inc.*,
  2012 WL 137585 (C.D. Cal. Jan. 17, 2012) ........................................... 16

*In re Outlaw Labs., LP Litigation*,
  2021 WL 124308 (S.D. Cal. Jan. 13, 2021) ........................................... 12

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ................................................................................ 12

*R&R Sails, Inc. v. Ins. Co. of Penn.*,
  673 F.3d 1240 (9th Cir. 2012) ............................................................ 5, 17

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Rojas v. Marko Zaninovich, Inc.*,
2011 WL 4375297 (E.D. Cal. Sept. 19, 2011) ...................................................... 11

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) ................................................................................. 9

*Silvagni v. Wal-Mart Stores, Inc.*,
320 F.R.D. 237 (D. Nev. 2017) .............................................................................. 5

*Vogel v. Tulaphorn, Inc.*,
2013 WL 12166212 (C.D. Cal. Nov. 5, 2013) ...................................................... 17

*Wendt v. Host Int'l, Inc.*,
125 F.3d 806 (9th Cir. 1997) ................................................................................ 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 .............................................................................................*passim*

Fed. R. Civ. P. 37 ................................................................................................... 5

Sprankling, *Understanding Trade Secret Law* § 1.06 ....................................... 9, 13

*Trade Secrets Practice in California* § 2.1 (2d ed. Cal CEB, Nov. 2018) ............... 9

5 Witkin, Summary 11th Torts § 833 (2022) ........................................................... 9

13 Witkin, Summary 11th Equity § 83 (2022) ......................................................... 9

## I.   <u>INTRODUCTION</u>

Plaintiffs' original response provided a full and complete answer to Apple's Interrogatory No. 33, which Apple served on the last possible day to serve discovery. The interrogatory sought Plaintiffs' legal conclusion as to the identity of the owners of the asserted trade secrets from creation through the present.  Plaintiffs explained that employees of "Masimo and/or Cercacor" conceived of the trade secrets, were obligated to assign to their employers, and thus Masimo and/or Cercacor owned the trade secrets since their creation.

Apple argues Plaintiffs' response was inadequate, claiming Plaintiffs cannot establish trade secret misappropriation if they do not specify which plaintiff "owns" each trade secret.  This Court rejected the same argument two years ago, observing "Apple has cited to no law requiring that plaintiffs suing together specify which of them owns a particular trade secret." Dkt. 264 at 9-10.  Nothing has changed.  Apple still offers no authority requiring that co-plaintiffs specify which plaintiff owns each trade secret.

Despite the Court's holding, Apple moved to compel anyway.  Plaintiffs maintained they had no obligation to supplement.  The Special Master denied Apple's motion in October.  To avoid further dispute, however, Plaintiffs volunteered during the hearing to supplement.  Plaintiffs then conducted a lengthy legal analysis and provided their resulting legal conclusions in November.  Apple's contention that Plaintiffs delayed by "six-and-a-half months" is baseless.

Apple also suffered no prejudice from the supplement.  The supplement provided only legal conclusions (irrelevant, based on the Court's prior holding).  These legal conclusions were based on facts Plaintiffs provided to Apple long ago.  Apple had those facts well before it took fact depositions and could have asked any questions it wanted about the facts.  Apple did not even move to compel until after fact discovery closed. Thus, nothing supports Apple's claim that it would have asked witnesses different questions had it received the supplement earlier.  The Court should deny Apple's Motion.

## II.   **FACTUAL BACKGROUND**

On May 13, 2022—the last day to serve written discovery—Apple requested Plaintiffs identify, for each trade secret, "each and every owner of the alleged Trade Secret, from conception of the alleged Trade Secret to date, including the specific time period each and every owner owned the alleged Trade Secret, and the circumstances regarding the change in ownership." Kahf Decl. ¶ 2; Ex. 1 at 7.[1] Plaintiffs timely objected to the interrogatory because it is irrelevant and unduly burdensome. Kahf Decl. ¶ 3; Ex. 1 at 7. Subject to those objections, Plaintiffs responded:



Ex. 1 at 7.

Two weeks later, on June 28, Apple demanded Plaintiffs supplement their response to specify "which entity owns each alleged trade secret, and the period of time of ownership (i.e., when each trade secret was conceived)." Ex. 2 at 6. On July 5, the parties met and conferred regarding numerous discovery disputes. Ex. 3 at 1. Apple maintained that "[o]wnership is an element of a trade secret claim . . . ." *Id.* Plaintiffs responded that none of the cases Apple cited established ownership as an element of a trade secret claim. Ex. 5 at 1. Plaintiffs also cited authority holding that a plaintiff need only establish possession—not ownership. *Id.* Plaintiffs also explained they had already provided Apple with the underlying facts regarding possession/ownership of each trade secret. *Id.* (including by referring to ███████████████████).

Apple waited more than a month, until August 22—the last day to file motions to compel—before moving to compel. *See* Ex. 6. Plaintiffs opposed, arguing the law does

---

[1] Numbered exhibits refer to Apple's exhibits. Lettered exhibits are attached to the Declaration of Baraa Kahf, filed concurrently herewith.

1  not require plaintiffs to identify which entity "owned" each trade secret, and Plaintiffs

2  fully responded by ████████████████████████████████████████████████

3  ██████ Ex. 7 at 1.  Plaintiffs explained ████████████████████████████

4  ████████████████████████████████████████████.  *Id.* (████████████████

5  ████████████████████████████████████████████).  Plaintiffs

6  explained they ████████████████████████████████████████████

7  ████████████████████████████████████████████ *Id.*

On October 2, the Special Master issued a tentative order denying Apple's motion.

9  *See* Ex. 9 at 7-8.  The Special Master declined to address the legal standard regarding

10 ownership.  *Id.*  The Special Master explained that he "will not compel the information

11 sought by Apple, but Plaintiffs' decision to proceed forward in discovery without

12 attempting to determine specific trade secret ownership information or disclosing that

13 information to Apple comes at Plaintiffs' own potential peril."  *Id.* at 8.  At the hearing,

14 Plaintiffs voluntarily agreed to conduct an analysis and supplement in case this Court

15 changed its view of the law to require co-plaintiffs to specify which plaintiff owns each

16 trade secret.  Dkt. 965-9 at 232-33 (Oct. 3, 2022 Hr'g Tr. at 39:2-40:6).  Apple never

17 asked Plaintiffs to supplement by any specific date.  Kahf Decl. ¶ 5; Ex. 10 at 2.

On October 14, the Special Master issued an order denying Apple's motion.

19 Dkt. 970 at 11.  The Special Master found Apple's arguments on relevance unavailing.

20 *Id.*  The Special Master denied Apple's motion based on (1) Plaintiffs' explanation that

21 ████████████████████████████████████████████████████████ and

22 (2) because "some of the information Apple apparently seeks should already have been

23 obtained through Plaintiffs' responses to other discovery," specifically referencing

24 Interrogatory No. 6.  *Id.*  The Special Master further found "it appears that Apple will

25 get from Plaintiffs at least some of what it had been asking for on an issue the Special

26 Master ***had otherwise resolved against it***, ultimately rendering the issue ***fully moot***."  *Id.*

27 (emphases added).  After the ruling, Apple again did not request a supplement by any

28 specific date.  Kahf Decl. ¶ 6.

On November 23, after conducting an extensive legal analysis, Plaintiffs supplemented.   Plaintiffs formally incorporated information they had previously provided to Apple in other discovery responses.   *See* Ex. 1 at 8-12.   Plaintiffs incorporated their responses to Apple's Interrogatory Nos. 6 and 7, Plaintiffs' expert reports, the Rule 26(a)(2)(c) disclosures of Kiani and Diab, and the Masimo-Cercacor cross-license agreements.   *Id.*   This previously disclosed information included details on Plaintiffs' development and possession of each trade secret, their employees' agreements to assign and safeguard Plaintiffs' confidential information, and the cross-license agreement between Plaintiffs.   *Id.*; *see, e.g.*, Ex. 12; Ex. C; Ex. E at 25:24-28:3; Ex. F.   Based on their legal analysis, Plaintiffs set forth their legal conclusions as to whether Masimo, Cercacor, or both, own or have an ownership interest in each trade secret.   Ex. 1 at 8-10.   Thus, Plaintiffs provided the legally irrelevant conclusions that Apple asserted it wanted.

On November 28, Apple complained that Plaintiffs provided the very supplement that Apple had moved to compel.   Ex. 10 at 3.   Apple argued the supplement was untimely.   *Id.*   Apple demanded Plaintiffs withdraw that supplement, or Apple would move to exclude it.   *Id.* at 1-3.

### III.   <u>LEGAL STANDARD</u>

The Federal Rules provide:

> A party . . . who has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A).   "Information is incomplete or incorrect in some material respect if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation."   *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D.

Cal. 2022) (cleaned up).

Under Rule 37, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party requesting sanctions under Rule 37 "bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements established in Rule 26." *LD v. United Behav. Health*, 2022 WL 4372075, at *5 (N.D. Cal. Sept. 21, 2022) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241-242 (D. Nev. 2017)). If a party violated Rule 26(a) or (e), then the party facing exclusion bears the burden of proving its delay was substantially justified or is harmless. *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

However, "Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless." *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011). Instead, Rule 37(c) provides that "[i]n addition to or instead of" exclusionary sanctions, the court may impose other sanctions. Fed. R. Civ. P. 37(c)(1).

Moreover, when an exclusion sanction is tantamount to dismissal of a claim, the court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith . . . and also to consider the availability of lesser sanctions." *R&R Sails*, 673 F.3d at 1247; *see also Liberty Ins. Co. v. Brodeur*, 41 F.4th 1185, 1192-93 (9th Cir. 2022) (district court abused discretion in imposing exclusionary sanction without analyzing whether defects involved willfulness, fault, or bad faith).

## IV.   ARGUMENT

### A.   Plaintiffs' Voluntary Supplement Was Timely

#### 1.   Plaintiffs' Original Response Was Complete And Correct

Plaintiffs never had a duty to supplement the response to Interrogatory No. 33. The interrogatory asked for "each and every owner of the alleged Trade Secret, from conception of the alleged Trade Secret to date, including the specific time period each

1   and every owner owned the alleged Trade Secret, and the circumstances regarding the

2   change in ownership." Ex. 1 at 7.  Plaintiffs responded that ███████████████████

3   ██████████████████████████████████████████████████████████████████████████

4   ████████████████   *Id*.  ███████████████████████████████████████████████████

5   ████████████   *Id*.

6         Plaintiffs' original response was (and still is) complete and correct.   The

7   interrogatory did not request any evidence supporting ownership—it merely sought the

8   identity of the owners.  Ex. 1 at 7.  As discussed, Plaintiff had long ago provided all the

9   facts about ████████████████████████████████████████████████████████████████

10  ████████   Plaintiffs' response also provided their legal conclusions as to the owner(s)

11  of each trade secret.  Plaintiffs also explained ███████████████████████████████████

12  ████████████████████████████████.  No further response was necessary.[2]  Because

13  Plaintiffs fully complied with Rules 26 and 33, they had no duty to supplement.  *See*

14  Fed. R. Civ. P. 26(e)(1)(A).

15        Apple failed to convince the Special Master that Plaintiffs' response omitted

16  relevant information.  The Special Master denied Apple's motion to compel (without

17  resolving whether CUTSA requires establishing which plaintiff owns each trade secret).

18  Dkt. 970 at 11.  The Special Master found:

19          Apple's other stated bases for arguing that the information sought is

20          relevant and must be produced are unavailing, particularly given

        (1) Plaintiffs' assertions that ████████████████████████████████████

21          ████████████████████████ and (2) it seems at least some of the information

22          Apple apparently seeks should already have been obtained through

23          Plaintiffs' responses to other discovery.

24  *Id*. (referencing Apple's Interrogatory No. 6).   Because Apple sought irrelevant

25  information, Plaintiffs had no duty to supplement.  *See L.A. Terminals*, 340 F.R.D. at 397

26

27  _____

28  [2] Plaintiffs also had no obligation to supplement because Apple already had any "additional or corrective information" in writing.  Fed. R. Civ. P. 26(e)(1)(A).

n.2 (no duty to supplement where party seeking discovery has "not clearly explained why these documents are 'material' to the prosecution of their case").

### 2. Apple Has Not Shown Plaintiffs Had Any Duty To Supplement

Apple suggests that, because Plaintiffs offered to supplement at the hearing, Plaintiffs must have recognized the inadequacy of their original response.  Mot. at 4.  Not so.  Nothing suggests Plaintiffs "learn[ed] that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).  Indeed, at the time Plaintiffs offered to supplement, the Special Master had tentatively denied Apple's motion, and Plaintiffs maintained that their original response was complete.  Ex. 9 at 8; Dkt. 965-9 at 232-33.

Plaintiffs did not offer to supplement because they learned of any relevant or responsive information.  Rather, because the Special Master declined to rule on the legal question of ownership, Plaintiffs offered to supplement to eliminate any future dispute on that question.  Dkt. 965-9 at 232-33.  Plaintiffs also sought to avoid burdening this Court with Apple's objections, which Apple often files after losing before the Special Master.  Showing Plaintiffs cannot alter Apple's behavior, Apple created a dispute anyway by filing this motion.

Apple argues Plaintiffs had a duty to supplement by compiling and disclosing the "ownership information within their control" in the supplemental response.  Mot. at 6.  But Apple never explains what additional information was allegedly in Plaintiffs' control that Plaintiffs withheld.  Indeed, Plaintiffs had already disclosed all the information they had.  Apple argues that additional "ownership information" was in Plaintiffs' control because the original response said ███████████████████ ███████████████████████████. *Id.* at 7.  As Plaintiffs explained, ███████████████████████████████████████ ███████████████████ Ex. 7 at 1-3. ███████████████ ███████████████████████████████ Thus, Plaintiffs' original response gave Apple all the information that Plaintiffs had.

-7-

### 3. Plaintiffs' Showing Of Possession Satisfies Any Possible Ownership Requirement

Apple argues "ownership information" is relevant because "Plaintiffs have the burden to show that they owned each purported trade secret that they alleged Apple misappropriated." Mot. at 6. Specifically, Apple has been demanding information about "**which entity** owns each alleged trade secret." *Id.* at 3 (emphasis added).

This Court previously rejected Apple's view of the law. This Court found that "Apple has cited to no law requiring that plaintiffs suing together specify which of them owns a particular trade secret." Dkt. 264 at 9-10. Even now, Apple cites no authority (and Plaintiffs have found none) that would require co-plaintiffs to identify which plaintiff owns each trade secret. Apple has never suggested that persons other than Plaintiffs' employees created any of the alleged trade secrets. Moreover, Apple has never disputed that Plaintiffs' employees assigned any trade secret rights to their respective employers. ███████████████████████████████████████ ███████████████████████████

Rather than argue about the only relevant question here—the lack of any obligation of co-plaintiffs to allocate ownership between them—Apple argues more generally that "the better reading of California case law is that ownership is an element of a trade secret claim." Mot. at 6. Apple cites only *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2011). *Mattel* does not support Apple's view of the law and, more importantly, says nothing about the obligations of co-plaintiffs.

In *Mattel*, the plaintiff asserted misappropriation of trade secret concepts a former employee created. *Id*. at 960. The dispute concerned whether Mattel or its former employee owned the trade secrets at issue and whether the employee had agreed to assign his creations to Mattel. The court referred that question to the trier of fact. *Id.* at 945-947. The court did not decide whether any distinction exists between "ownership" and "possession" of a trade secret. It noted that "[o]ther jurisdictions have concluded that possession of a trade secret is all that is required," and that Mattel's

1  "possession of [the trade secret] is likewise conditioned on the assignment . . . ." *Id.*

2  at 960-961 & n.13.  Thus, *Mattel* stands for the simple proposition that employers must

3  obtain an assignment before asserting trade secrets their employees created.

4      Plaintiffs' evidence of creation and lawful possession of the trade secrets satisfies

5  the ownership requirement referenced in *Mattel*.  One treatise observes that, "[a]s a

6  starting point for analysis of ownership, the general principle is that one who discovers,

7  develops, or compiles a trade secret is the owner of the trade secret." *Trade Secrets*

8  *Practice in California* § 2.1 (2d ed. Cal CEB, Nov. 2018); *see also* Sprankling,

9  *Understanding Trade Secret Law* § 1.06[B] (2020) ("Most commonly, a person obtains

10  ownership of a trade secret by creating it").  Because Plaintiffs' employees created and

11  assigned the trade secrets to Plaintiffs, Plaintiffs are the owners.

12      Moreover, neither Apple nor its cases address what it means to "own" a trade

13  secret.  Trade secrets are not "owned" in the same way as other forms of property.  Even

14  the "owner" of a trade secret cannot exclude others from independently creating the

15  same information.  *See* Sprankling, *supra*, § 1.06[B].  Rather, as the California Court of

16  Appeal explained, the "[t]rade secret law, in short, protects only the right to control the

17  dissemination of information*.*" *Silvaco Data Sys. v. Intel Corp.,* 184 Cal. App. 4th 210,

18  221 (2010); *see also* 5 Witkin, Summary 11th Torts § 833 (2022); 13 Witkin, Summary

19  11th Equity § 83 (2022).

20      *Silvaco* explained that "possession by the plaintiff of a trade secret" is the first

21  element of a CUTSA claim.  *Silvaco*, 184 Cal. App. 4th at 220; *see Cedars Sinai Med.*

22  *Ctr. v. Quest Diagnostic Inc.*, 2019 WL 12521480, at *5 (C.D. Cal. Aug. 9, 2019)

23  (agreeing that "possession is sufficient as long as secrecy is maintained").  The cases

24  explain that any discussion of "ownership" of trade secrets in other cases is simply

25  shorthand for possessing the trade secret and having the right to prevent dissemination.

26

27

28

*See id.*; *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017).[3]

The multiple authorities cited above establish co-plaintiffs are not obliged to specify which one owns each trade secret. Plaintiffs, whose employees created the trade secrets and assigned them to Plaintiffs, need only show that they possessed the trade secrets and maintained their secrecy. Such showing satisfies the first element of Plaintiffs' misappropriation claim under CUTSA.

### 4. Even If Plaintiffs Had Any Duty To Supplement, Their Supplement Was Timely

Plaintiffs had no obligation to supplement their response to provide irrelevant legal conclusions. Plaintiffs decided to supplement after the Special Master issued a tentative ruling declining to confirm Plaintiffs need not form and disclose legal conclusions on which of them owns each trade secret. Dkt. 965-9 at 232-33. ███████

███████████████████████████████████████████████

███████████████████████████████████████████████. Ex. 7 at 1, 3-4. As a result, to supplement the response, Plaintiffs ███████████

███████████████████████████ *Id.* Indeed, Plaintiffs objected to Interrogatory No. 33 as unduly burdensome for these very reasons. Ex. 1 at 7.

Apple's timeliness argument is based on the false premise that Plaintiffs had the requested ownership information and failed to disclose it. Plaintiffs supplemented as soon as they ███████████████████████ legal ownership conclusions that Apple had been demanding. Plaintiffs acted reasonably and diligently ██ ████████████████████████, which Plaintiffs still maintain are irrelevant.

---

[3] *BladeRoom* explains that statements in cases suggesting "ownership" is required are "merely recognition of the first element of a prima facie misappropriation claim under CUTSA, which is traditionally and perhaps over-simplistically phrased in terms of 'ownership.'" *Id.*; *see also* CACI No. 4401 (using similar shorthand "owned").

Apple argues Plaintiffs "should have been aware of the information that is the subject of the supplementation" because "[t]hat information was solely in Plaintiffs' control." Mot. at 7. Apple also suggests Plaintiffs' counsel controlled responsive information about which Plaintiff owns each trade secret, and decided to "parse out only what they choose." *See* Mot. at 8 (citing *Rojas v. Marko Zaninovich, Inc.*, 2011 WL 4375297 (E.D. Cal. Sept. 19, 2011)). These allegations are false and unsupported. Plaintiffs repeatedly explained that ████████████████████████████████████ ████████████████████████████████████████████. Ex. 7 at 1-3. Plaintiffs and their counsel were not "aware of the information" until ████████████████████████ ████████████████████████████████████████.

Apple argues Plaintiffs never explain the timing of their supplemental response. Mot. at 7-8. Apple asserts that the "delay" was over a period of six months starting when the interrogatory was served. *Id.* at 7. That is false. Apple ignores what occurred during those six months: Plaintiffs objected and responded; Apple waited weeks before complaining and months before moving to compel; the Special Master tentatively denied Apple's motion; ██████████████████████████████████████; and Plaintiffs supplemented as soon as they ████████████████████████. Plaintiffs diligently supplemented just five weeks after the Special Master's order and seven weeks after the hearing. Kahf Decl. ¶¶ 5-7. Because the interrogatory sought information Plaintiffs did not have, and █████████████████████████████, Plaintiffs' supplement to provide those legal conclusions was very prompt.

Moreover, even if the Special Master had granted Apple's motion and ordered Plaintiffs to supplement, he likely would have given Plaintiffs four weeks to do so—as he has given both parties in prior orders. *See, e.g.*, Dkt. 539 at 6, 16 (29 and 36 days); Dkt. 579 at 13 (28 days). Plaintiffs supplemented just one week after they would have had to supplement even if the Special Master had granted the motion. But here, the Special Master denied the motion so he did not set a deadline for Plaintiffs' supplement. Apple also did not request the supplement by a specific date. Apple cannot reasonably

-11-

complain about the timing of Plaintiffs' supplement.

**B.   Any "Delay" Was Substantially Justified and Harmless**

To the extent the Court finds a violation of Rule 26, the Court should not strike the supplement because any delay was substantially justified and harmless.

**1.   Plaintiffs Genuinely Disputed Apple's Demands For A Supplemental Response**

"Discovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Cervantes v. Zimmerman*, 2019 WL 1598219, at *7 (S.D. Cal. Apr. 15, 2019) (internal quotations omitted); *In re Outlaw Labs., LP Litigation*, 2021 WL 124308, at *12 (S.D. Cal. Jan. 13, 2021) (same) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "[A] good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification.'" *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981).

Plaintiffs were justified in objecting to Apple's irrelevant discovery. Plaintiffs have always objected to Apple's demand that Plaintiffs supplement their interrogatory response to identify "which entity owns each alleged trade secret." Ex. 2 at 6; Ex. 7 at 1-4. Plaintiffs provided Apple with authority that trade secret licensees can assert misappropriation. *See* Ex. 7 at 2 (citing *BladeRoom*, 219 F. Supp. 3d at 990). The Masimo-Cercacor cross-license and the cited authority rendered irrelevant any issue as to whether Masimo or Cercacor or both is the owner of each trade secret. Plaintiffs cited numerous cases supporting their interpretation of the law and this Court previously rejected Apple's argument because Apple failed to cite any authority. Dkt. 264 at 9-10.

If the Court were to now change its prior holding, Plaintiffs' conduct was "substantially justified" because the parties had at least a "genuine dispute" and "reasonable people could differ" on the law. *See Cervantes*, 2019 WL 1598219, at *7. Indeed, Apple's position is that ownership is ***not*** settled law. Mot. at 6 (arguing its position was "the better reading of California case law").

Apple questions why the ownership information could not have been provided

-12-

before the close of discovery or more quickly after the motion to compel hearing. Mot. at 9. But Apple waited two years to serve Interrogatory No. 33 and then moved to compel after the close of fact discovery. Had Apple pursued this dispute earlier, the Court would have resolved the dispute before the close of fact discovery.

Apple accuses Plaintiffs of "point[ing] the finger at Apple" and arguing Apple's interrogatory or motion were "untimely." Mot. at 8. Not so. The timing simply shows that Apple would have received the information during fact discovery if it had not waited until the deadlines to serve interrogatories and move to compel. The timing also suggests Apple did not consider the information time-sensitive and did not need it for follow-up discovery.

### 2. The Timing Of Plaintiffs' Supplement Did Not Harm Apple

Plaintiffs' supplemental response could not have harmed Apple because it presented only Plaintiffs' legal conclusions based on facts already in Apple's possession. Plaintiffs' supplemental response pointed out that Plaintiffs had already disclosed the underlying facts to Apple, including in Plaintiffs prior responses to Interrogatories Nos. 6 and 7 (███████████████████████████████████████████████████████████████

███████), Plaintiffs' expert reports, and the Masimo-Cercacor cross-license. Ex. 1 at 8-12. Apple had ample opportunity to take discovery on those underlying facts in both fact and expert discovery. Apple may disagree with Plaintiffs' legal conclusions based on these facts, but such a factual dispute is a question for the jury.

Apple argues Plaintiffs' prior interrogatory responses were insufficient, superficially criticizing them as not using the words "own" or "ownership." Mot. at 9. But plaintiffs typically "own" trade secrets by virtue of creating them. *See* Sprankling, *supra*, § 1.06[B]. Those are the facts here. Plaintiffs' original response to Interrogatory No. 33 explained that ████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. Ex. 1 at 7. Plaintiffs described their development of the trade secrets and their efforts to

-13-

maintain secrecy, including their employees' agreements to safeguard Plaintiffs' confidential information. *See, e.g.*, Ex. 12; Ex. C; Ex. E at 25:24-28:3; Ex. F.  Thus, Apple had all it needed to take any discovery, to question Plaintiffs' witnesses on those facts, and to have its experts consider those facts in forming their opinions.  Apple deliberately chose not to ask Plaintiffs' witnesses about the facts.

Apple also claims it was prejudiced because the timing of the supplement deprived Apple of the opportunity to ask deposition witnesses about the supplemental response.  Mot. at 10.  That is nonsense.  Plaintiffs produced three Rule 30(b)(6) designees to testify to the development of the trade secrets.  Kahf Decl. ¶ 8.  Apple moved to compel the supplemental response *after* fact discovery already closed.  All of the Rule 30(b)(6) depositions occurred before the Special Master ruled on Apple's motion to compel.  Kahf Decl. ¶¶ 5-6, 8.  Even if the Court had granted Apple's motion, Apple could not have used the supplement because the depositions already occurred.

Apple also does not explain why it would expect any witnesses to be able to testify as to the legal conclusions in Plaintiffs' supplement.  Even Rule 30(b)(6) fact witnesses are not expected to answer questions about legal conclusions.  Indeed, as the Special Master explained, "[c]ontention questions are more appropriately raised via interrogatory, and it is unfair to make a single Rule 30(b)(6) witness, the representative of the party, attempt a response to questions about the position of the party that usually require entire teams of lawyers and experts to adequately answer."  Dkt. 894 at 5 (quoting this Court in another case).

Apple also already questioned Plaintiffs' witnesses about trade secret ownership. For example, Apple questioned Diab, ███████████████████████████████████████████ ████████████████ Ex. A at 115:23-116:4.  Apple also questioned Olsen, ███████████ ███████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. B at 74:15-22.  There

-14-

1    is no reason to expect any witness would give different answers if presented with the
2    supplemental response.  Rather than asking fact witnesses to answer *legal* questions,
3    Apple should have questioned them about the underlying ***facts*** regarding their
4    development of the confidential information.  Apple chose not to do so.

5        Apple also argues the supplement "deprived Apple's experts of the opportunity to
6    address the new ownership information."  Mot. at 10.  But Apple's experts were free to
7    analyze the facts already in Apple's possession.  Indeed, Apple's experts opined that

8    ██████████████████████████████████████████████████████████████

9    *See, e.g.*, Ex. D ¶ 67 ██████████████████████████████████████

10   ██████████████████████████████████  Apple makes little attempt to explain
11   what its experts supposedly would have done differently.

12       Finally, Plaintiffs' supplement does not prejudice Apple's trial or summary
13   judgment strategy.  Apple complains that it intended to argue Plaintiffs had no "***evidence***
14   regarding ownership (and the surrounding dispute over the legal standard)" at the
15   summary judgment stage and trial.  Mot. at 7 (emphasis added).  Apple claims the
16   supplement "requires Apple to reformulate that aspect of its litigation strategy . . . ." *Id.*
17   But Apple's interrogatory did ***not*** request ***any evidence*** supporting ownership—it sought
18   merely the identity of the owners.  Ex. 1 at 7.  Moreover, Plaintiffs supplemented nearly
19   four weeks before the December 19 summary judgment deadline.  Apple did not appear
20   to "reformulate" its "long intended" plan in light of Plaintiffs' supplement.  Apple
21   moved for summary judgment on Plaintiffs' CUTSA claim and argued that Plaintiffs
22   failed to show "*which* entity possessed *which* alleged trade secret."  Dkt. 1094-1 at 11.
23   Apple also argued that, regardless of whether the supplement is stricken, Apple is
24   entitled to summary judgment.  *See* Dkt. 1094-1 at 11-13.  The supplement did not
25   impact Apple's strategy or arguments.

26       Accordingly, Plaintiffs' supplement was both substantially justified and harmless.
27
28

**C.**     **The Court Should Not Exclude The Supplement**

    **1.**     **Apple Ignores The Five-Factor Test For Excluding Evidence**

The Court should not exclude the supplemental response even if the Court finds that Plaintiffs violated a discovery obligation and that violation was not substantially justified or harmless.  *See, e.g., NW Pipe Co. v. DeWolff, Boberg & Assoc., Inc.*, 2012 WL 137585, at *3 (C.D. Cal. Jan. 17, 2012) (declining to exclude evidence despite finding violation was not substantially justified or harmless).

The Ninth Circuit employs a five-factor test in determining whether a sanction is proper: "1) the public's interest in expeditious resolution of the litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the [party seeking to exclude evidence]; 4) the public policy favoring disposition of cases on their merits;  and 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  Apple neither acknowledges nor addresses these factors.

Factors 1, 2, and 3 weigh against exclusion because the supplement does not impact trial dates or the court's docket.  The supplement provided only irrelevant legal conclusions based on facts already in Apple's possession.  Nor does the supplement impact summary judgment motions.  Apple argued in its concurrent motion that it is entitled to summary judgment regardless of whether the Court strikes the supplement. *See* Dkt. 1094-1 at 11-13.

Factor 4 also weighs against exclusion.  As discussed, the relevant facts were disclosed long ago.  Identifying which co-plaintiff owns which trade secret is legally irrelevant and immaterial to the outcome of this case.  If this Court were to change its view by determining Plaintiffs' legal conclusions were somehow relevant, this Court should allow Plaintiffs to present their evidence on that issue so the trier of fact can decide the case on the merits.

Factor 5 also weighs against exclusion because less drastic sanctions are available.  For example, the Court could allow Apple to take additional discovery—though Apple has not identified any such discovery.

1    Thus, all factors weigh against excluding the supplement.

2        **2.    Apple Does Not Demonstrate Willfulness, Fault, Or Bad Faith**

3        Apple argued in its concurrent summary judgment motion that "if Apple's motion

4    [to exclude the supplemental response] is granted, Apple is entitled to summary

5    judgment on possession (and thus on liability)."  Dkt. 1094-1 at 11.  Plaintiffs disagree.

6    As discussed, Interrogatory No. 33 did not seek facts and Plaintiffs disclosed the relevant

7    facts long ago.  Apple does not explain how any legal opinion formed for purposes of

8    this litigation is somehow decisive.  The supplement should have no impact on the facts

9    presented to the jury, who will need to draw their own conclusions based on the facts

10   presented at trial.

11       Regardless, Apple fails to acknowledge the legal requirements for its requested

12   case-dispositive sanction. As Apple recently acknowledged in a different motion,

13   "Rule 26(e) motions decided in that posture are subject to a higher standard of review—

14   i.e., a court must consider whether 'the claimed noncompliance involved willfulness,

15   fault, or bad faith.'"  Dkt. 1045-1 at 15 (quoting *R&R Sails*, 673 F.3d at 1247).  Yet,

16   Apple makes no attempt whatsoever to satisfy that standard.  Apple should not be

17   allowed to present such argument for the first time on reply, especially where Apple

18   seeks a sanction that it claims would grant judgment in its favor.

19       Terminating sanctions are reserved for only the most egregious willful

20   misconduct.  *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)

21   (plaintiff "intentionally deleted many files and then wrote a program to write over

22   deleted documents" that went to "the heart" of the case); *Anheuser-Busch, Inc. v. Nat.*

23   *Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) (counterclaimant's

24   "concealment of the documents for three years, her continuous denials under oath that

25   she knew the documents existed and were legible, her repeated violations of the court's

26   Publicity Order, and her violations of the court's *in limine* rulings"); *Vogel v. Tulaphorn,*

27   *Inc.*, 2013 WL 12166212, at *12 (C.D. Cal. Nov. 5, 2013) ("Plaintiff perjured himself

28   at a deposition" and "lied not just once under oath, but repeatedly").

Courts also deny such sanctions even for egregious circumstances. *See, e.g.*, *Coulter v. Baca*, 2014 WL 12589652, at *5 (C.D. Cal. May 23, 2014) ("Plaintiff's counsel has, at best, lied about her client's deposition testimony and, at worst, defrauded this Court with a doctored Complaint").

Apple's allegations at most reflect a difference of opinion on relevance of legal conclusions. Apple's allegations do not remotely approach the allegations in cases governing case-dispositive sanctions, including cases that denied such sanctions. As discussed, Plaintiffs disclosed the relevant facts to Apple long ago. Plaintiffs always understood their original response was complete and correct and they had no duty to supplement. That understanding was confirmed by Plaintiffs' cited cases, this Court's prior rejection of the same ownership theory (Dkt. 264 at 9-10), and the Special Master's denial of the motion to compel (Dkt. 970 at 10-11). Plaintiffs' view of the law is correct or, at a minimum, reasonable. Even if Plaintiffs' view of the law was not reasonable, that would still not demonstrate that Plaintiffs acted willfully or in bad faith. Further, the supplement was "delayed" by a few weeks at most. And, Apple suffered no prejudice. Apple's requested sanction is grossly disproportionate and unsupported by law.

## V.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Apple's Motion to Strike.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 12, 2023          By: /s/ Baraa Kahf
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Benjamin A. Katzenellenbogen
                                     Perry D. Oldham
                                     Stephen W. Larson
                                     Mark D. Kachner
                                     Baraa Kahf
                                     Adam B. Powell
                                     Daniel P. Hughes
                                     Justin J. Gillett

                                     Attorneys for Plaintiffs
                                     MASIMO CORPORATION and
                                     CERCACOR LABORATORIES, INC.

-19-

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor

3  Laboratories, Inc., certifies that this brief contains 5,948 words, which [choose one]:

4   X  complies with the word limit of L.R. 11-6.1.

5   __ complies with the word limit set by court order dated [date].

6

7  Dated: January 12, 2023                    By: /s/ Baraa Kahf
                                                   Joseph R. Re
8                                                  Stephen C. Jensen
                                                   Benjamin A. Katzenellenbogen
9                                                  Perry D. Oldham
                                                   Stephen W. Larson
10                                                 Mark D. Kachner
                                                   Baraa Kahf
11                                                 Adam B. Powell
                                                   Daniel P. Hughes
12                                                 Justin J. Gillett

13                                                 Attorneys for Plaintiffs
                                                   MASIMO CORPORATION and
14                                                 CERCACOR LABORATORIES, INC.

15

16  56840651

17

18

19

20

21

22

23

24

25

26

27

28