Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | Case No. 8:20-cv-00048-JVS-JDE <br><br> **PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO EXCLUDE OPINION AND TESTIMONY OF PLAINTIFFS' EXPERT ROBERT PALMATIER** <br><br> Date: Feb. 6, 2023 <br> Time: 1:30 pm <br> Place: Courtroom 10C |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 2

    A.  Palmatier Explained the Scope of the Trade Secrets ................................. 2

        1.  Palmatier's Opening Report Explains and Applies the Trade Secrets ............................................................................. 2

            a.  Palmatier Explains the Trade Secrets ................................. 2

            b.  Palmatier Applies the Trade Secrets to Masimo Evidence ...................................................................... 3

            c.  Palmatier Applies the Trade Secrets to Apple Evidence ...................................................................... 4

            d.  Palmatier Distinguishes the Trade Secrets from Apple's Alleged "Generally Known" References ............. 5

        2.  Palmatier's Rebuttal Report Explains How Apple's Experts Depart From the Written Trade Secrets ..................... 5

    B.  Neither Side's Experts Adopt Definitions of Trade Secret Terms In Their Reports .................................................................. 6

    C.  Neither Side's Marketing Experts Distinguish Between The Two Plaintiffs In Their Expert Reports ......................................... 8

III.  LEGAL STANDARD ......................................................................... 9

IV.  ARGUMENT ..................................................................................... 9

    A.  Palmatier's Opinions Need Not Distinguish Between Masimo and Cercacor .................................................................. 9

    B.  Palmatier Need Not Define Specific Words of the Trade Secrets ............................................................................. 11

V.  CONCLUSION ................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page No.**

*Arevalo v. Coloplast Corp.*,
  2020 WL 3958505 (N.D. Fla. July 7, 2020)................................................11

*Burrows v. BMW of N. Amer., LLC*,
  2018 WL 6314187 (C.D. Cal. Sept. 24, 2018).........................................11

*Castaic Lake Water Agency v. Whittaker Corp.*,
  2002 WL 34700741 (C.D. Cal. Oct. 25, 2002) ......................................11

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
  2020 WL 10460620 (C.D. Cal. Mar. 5, 2020) .......................................10

*Comet Technologies USA Inc. v. XP Power LLC*
  2022 WL 2442810 (N.D. Cal. Mar. 2, 2022) ..........................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..........................................................................................9

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)........................................................................................15

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
  2019 WL 12074086 (C.D. Cal. July 1, 2019) .........................................11

*Kovary v. Honeywell Int'l, Inc.*,
  2014 WL 12564090 (C.D. Cal. Mar. 17, 2014) ....................................15

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)..........................................................................................9

*Lopez v. I-Flow Inc.*,
  2011 WL 1897548 (D. Ariz. Jan. 26, 2011) ...........................................11

*In re Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016) .......................................................15

*Morlife, Inc. v. Perry*,
  56 Cal. App. 4th 1514 (1997) .......................................................................14

*Mukhtar v. Cal. State Univ.*,
  299 F.3d 1053 (9th Cir. 2002) ....................................................................9

*Pacific Fuel Co. v. Shell Oil Co.*,
  2008 WL 11336467 (C.D. Cal. Jan. 24, 2008) .....................................15

1
2

# TABLE OF AUTHORITIES
## (*cont'd*)

3

**Page No.**

4

*Perez v. State Farm Mut. Auto. Ins. Co.*,
    2012 WL 3116355 (N.D. Cal. July 31, 2012) ......................................................... 15

5
6

*Planned Parenthood Federation of Amer. Inc. v. Center for Medical Progress*,
    402 F. Supp. 3d 615 (N.D. Cal. 2019) ..................................................................... 12

7
8

*Stirick v. Dreamworks, LLC*,
    2006 WL 6116641 (C.D. Cal. July 20, 2006) ......................................................... 11

9
10

*Strategic Partners Inc. v. Figs, Inc.*,
    2022 WL 4596594 (C.D. Cal. Aug. 18, 2022) ....................................................... 14

11
12

*Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*,
    2018 WL 11352632 (C.D. Cal. Apr. 24, 2018) ..................................................... 11

13

*Threet v. Corr. Health Care Mgmt. of Oklahoma*,
    2009 WL 3335596 (W.D. Okla. Oct. 15, 2009) ..................................................... 11

14
15

*United States v. Adams*,
    444 F. Supp. 3d 1248 (D. Or. 2020) ......................................................................... 15

16

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
    796 F. Supp. 2d 1025 (N.D. Cal. 2011) ................................................................. 14

17
18

## OTHER AUTHORITIES

19

Fed. R. Evid. 702 ............................................................................................................. 9

20
21
22
23
24
25
26
27
28

-iii-

# I.  <u>INTRODUCTION</u>

Apple brings two challenges to Dr. Robert Palmatier's October 6 Opening Report. Neither has merit.  Palmatier is an expert in business and marketing.  His report offers opinions on the development, use, and misappropriation of Masimo's business and marketing and hospital interaction trade secrets (the "Trade Secrets").

Apple first challenges Palmatier's opinion that Masimo and/or Cercacor developed and used the Trade Secrets.  But Apple identifies no actual flaw in ***that*** opinion.  Instead, Apple criticizes Palmatier for not providing a ***different*** opinion distinguishing between Masimo and Cercacor regarding the development and use of the Trade Secrets.  Nothing requires Masimo or Palmatier to present expert testimony on that issue.  This Court previously found "Apple has cited to no law requiring that plaintiffs suing together specify which of them owns a particular trade secret." Dkt. 264 at 9–10.

Even if Apple's view of the law were correct, nothing would require Masimo to address that issue with expert testimony.  Masimo can present such evidence with documents and fact testimony.  Palmatier's testimony is independently reliable, relevant, and helpful.  Palmatier applies his considerable expertise to explain the strategies described by Masimo's Trade Secrets and how Plaintiffs' documents establish the use and development of those Trade Secrets.  That Palmatier did not provide an expert opinion distinguishing between Masimo and Cercacor is no basis to exclude the opinions that Palmatier did provide.

Apple's second challenge is based on the incorrect premise that Palmatier did not explain the scope of the Trade Secrets.  Palmatier explained (i) the Trade Secrets, (ii) why Masimo's evidence demonstrates Masimo's development and use of the Trade Secrets, (iii) how Apple misappropriated the Trade Secrets, and (iv) why Apple's analysis does not show the Trade Secrets were "generally known."  Apple focuses on Palmatier's declining to "define" certain words for the first time at his deposition.  But Apple never explains why those specific words—among the hundreds of words in

Masimo's Trade Secrets—required definitions.  Indeed, Apple's own marketing expert reports provide no such definitions.  Apple's motion also presents no material dispute about the meaning of those terms nor any authority that the experts must resolve any such dispute with opinion testimony.  The parties will each have the chance to present facts to the jury, rather than rely solely on expert opinions.  Regardless, any purported dispute about particular terms would go to the weight of Masimo's expert testimony and is subject to cross-examination.  Palmatier's opinions should not be excluded.

## II.  BACKGROUND

**A.**   **Palmatier Explained the Scope of the Trade Secrets**

Palmatier has extensive marketing experience in both industry and academia.  Ex. 1 ¶¶ 4-13.  Apple's own expert ███████████████████████████████████████████████████████████████████████████████  Palmatier's opening and rebuttal reports extensively explain his analysis of the Trade Secrets.

**1.**   **Palmatier's Opening Report Explains and Applies the Trade Secrets**

**a.**   **Palmatier Explains the Trade Secrets**

Palmatier begins with the language of the Trade Secrets.  *See, e.g.*, Ex. 1 at 19. He then relies on the factual evidence to explain the Trade Secrets.  For example, Palmatier quotes testimony from Masimo CEO Joe Kiani explaining trade secret B-1 and Masimo's development of that trade secret.  Ex. 1 ¶¶64-68 (citing Ex. B at 260, 276).



---

[1] Emphasis is added unless noted otherwise.  Numbered exhibits are attached to the Selwyn Declaration (Dkt. 1112) and lettered exhibits are attached to the Gillett Declaration.



   **b.**  <u>**Palmatier Applies the Trade Secrets to Masimo Evidence**</u>

  Palmatier next explains how the factual evidence demonstrates that Masimo developed and used the trade secrets.  For example,

1

2

### c. **Palmatier Applies the Trade Secrets to Apple Evidence**

Palmatier next addresses Apple's acquisition and use of the Trade Secrets.

Palmatier next traces Apple's business and marketing strategies from Apple's initial misappropriation to later Apple products, applications, and marketing. *Id.* ¶¶147-

74. ████████████████████████████████████████

████████████████████████████████████████

███████████████████████

       **d.**    **Palmatier Distinguishes the Trade Secrets from Apple's Alleged "Generally Known" References**

Palmatier further demonstrates the scope of the Trade Secrets in addressing Apple's arguments that the Trade Secrets were "generally known." *Id.* ¶¶198-253, 308-35, 384-427, 474-520, 587-90, 668-96. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

       **2.**    **Palmatier's Rebuttal Report Explains How Apple's Experts Depart From the Written Trade Secrets**

Palmatier further demonstrates the scope of the Trade Secrets in his rebuttal report by explaining how Apple's expert improperly rewrote and misapplied the Trade Secrets. Palmatier disagrees with ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

[REDACTED]

### B.   Neither Side's Experts Adopt Definitions of Trade Secret Terms In Their Reports

During the Palmatier deposition, Apple repeatedly demanded that Palmatier offer dictionary-like definitions of specific words of Apple's choosing on the fly. *See, e.g.,* Ex. 3 at 92:14-98:19, 222:25-226:16; 226:17-227:11; 231:23-233:4; 246:5-7. Palmatier responded by explaining the concepts encompassed by the terms. *See, e.g.*, *id.* at 94:12-95:1. He declined to provide formal definitions, however, explaining that he applied "the plain, ordinary language of the words," to address "the [trade secret], as it's written." Ex. 3 at 232:7-17, 244:23-245:14; 232:9-233:4.

Palmatier explained that "to define something that I haven't defined in one of my reports, I would like more time to think through that and really spell that out." *Id.* at 96:22-97:4. Palmatier explained that he may not have provided "definitions" but he did offer "insights into these, the points, the aspects [of] the trade secret[s]." *Id.* at 226:17-227:11. If Apple had a question about how he was "using [the trade secret] or describing it, [he] would be happy to speak to what [he] was meaning…." *Id.* at 226:17-227:11. If he used a word that Apple asserted is "confusing, [he] would be very happy to go turn to that section and provide more clarification." *Id.* at 232:7-20. Apple declined, instead continuing to demand definitions in the abstract. *See, e.g., id.* at 232:18-20.

Apple omits Palmatier's explanation of ***why*** he applied the plain, ordinary language of the words rather than try to redefine words. [REDACTED]

[REDACTED]

[REDACTED]

Palmatier acknowledged that people could disagree about the definition of a term, when taken outside the context of a specific trade secret. Ex. 4 at 283:3-5; *see also id*. at 283:6-284:11 ("yes, I believe that it's possible for people looking at those words, out of the context of B-1, to be-- to disagree as to their meaning"). But he opined that the trade secret language itself made the terms clear. *See, e.g.*, *id*. ("the advantage we have in Trade Secret B-1, if I evaluate it, is we have the whole-- we have a lot more context that provides information associated with that, in order to make that evaluation").

Neither of Apple's experts on the business and marketing trade secrets provided definitions for trade secret terms in their expert reports. During his deposition, Kivetz

Masimo asked Apple's other expert, Perez, to

The facts of Masimo's

development, use, and implementation of each trade secret, as well as the facts exhibiting Apple's use of the trade secrets, make clear the scope of the trade secrets.

## C.   Neither Side's Marketing Experts Distinguish Between The Two Plaintiffs In Their Expert Reports

Masimo's expert, Palmatier, addressed the development and use of Masimo's Trade Secrets in his opening report.  Ex. 1.  Palmatier defined "Masimo" to refer to "Masimo and/or Cercacor."  Ex. 1 at 1 n.1.  Palmatier explained that he would "endeavor" to refer to "Masimo Corp" or "Cercacor" where "a distinction between Masimo and Cercacor [was] relevant to [his] analysis." *Id*.

Apple's marketing expert, Kivetz likewise did not distinguish between Masimo and Cercacor when opining on the same issues, instead addressing both plaintiffs as "Masimo."

Palmatier explained, however, that if a document made "clear it was specifically only addressing one firm and somehow not the other firm, then that would be a situation

where [he] would call it out." *Id*. at 158:19-159:3.   Palmatier explained ███

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████

## III.  LEGAL STANDARD

Expert testimony is admissible if the party offering such evidence shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).  Federal Rule of Evidence 702 permits expert testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert can be qualified "by knowledge, skill, experience, training, or education." *Id.*  The court has "broad latitude" to decide how to determine the reliability of the testimony and whether the testimony is in fact reliable. *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002); *see Kumho Tire Co.*, 526 U.S. at 141.

## IV.  ARGUMENT

### A.  Palmatier's Opinions Need Not Distinguish Between Masimo and Cercacor

Apple first attempts to exclude Palmatier's opinion that Masimo and/or Cercacor developed and used the Trade Secrets.  Mot. at 9.  But Apple identifies no flaw in ***that*** opinion.  Rather, Apple complains that Palmatier did not provide a ***different*** opinion that distinguished between Masimo and Cercacor regarding development and use of the Trade Secrets.  Apple does not explain why the reliable opinions that Palmatier provided should be excluded merely because he did not provide a different opinion.

Apple also fails to explain why it matters whether Masimo, Cercacor, or both developed or used the Trade Secrets. This Court previously rejected the same argument as wholly unsupported. Dkt. 264 at 9–10. As explained in Masimo's oppositions to Apple's co-pending motions, nothing requires co-plaintiffs prove up a division of ownership for each trade secret. Dkt. 1133-1 at 2-5 (opposition to Apple's motion for summary judgment); Dkt. 1132-1 at 8-10 (opposition to Apple's motion to strike supplemental response to interrogatory no. 33); *see Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2020 WL 10460620, at *4 (C.D. Cal. Mar. 5, 2020) ("possession is sufficient to assert a trade secret claim as long as secrecy is maintained"). ███

████████████████████████████████████████████

████████████████████████████████████████████

██████████████

Even if Apple were correct, however, Palmatier would not need to address this issue. Masimo's documentary evidence and fact testimony alone would allow an ultimate legal conclusion on ownership, without expert testimony. Palmatier's testimony would still be reliable, relevant, and helpful for (i) explaining Plaintiffs' confidential business strategies and (ii) showing Plaintiffs' use and development of the Trade Secrets.

Apple argues Palmatier's opinion will be unhelpful to the jury "where he cannot opine as to whether Masimo Corp. or Cercacor developed and/or used" each trade secret. Mot. at 9. But Palmatier does not have to distinguish between Masimo and Cercacor to provide helpful testimony about the development and use of the Trade Secrets. As discussed above, Apple's marketing expert provided his opinions regarding the same subject matter without distinguishing between Masimo and Cercacor. *See supra* Section II. C. The agreement between Masimo and Cercacor will control ownership, and that division between Masimo and Cercacor is not relevant here.

Apple identifies no cases excluding an expert for failing to distinguish between co-Plaintiffs. Apple's cases address other facts and arguments. Indeed, most of Apple's

cases excluded experts who, unlike Palmatier, did not have the relevant expertise or testified beyond that expertise. *See Grasshopper House, LLC v. Clean & Sober Media LLC*, 2019 WL 12074086 at *3 (C.D. Cal. July 1, 2019) (expert's opinion extended "beyond" his expertise); *Lopez v. I-Flow Inc.*, 2011 WL 1897548 at *10-11 (D. Ariz. Jan. 26, 2011) (same); *Stirick v. Dreamworks, LLC*, 2006 WL 6116641 at *29 (C.D. Cal. July 20, 2006) (expert did not have relevant expertise); *Castaic Lake Water Agency v. Whittaker Corp.*, 2002 WL 34700741 at *5 (C.D. Cal. Oct. 25, 2002) (same); *Burrows v. BMW of N. Amer., LLC*, 2018 WL 6314187 at *2 (C.D. Cal. Sept. 24, 2018) (same); *Threet v. Corr. Health Care Mgmt. of Oklahoma*, 2009 WL 3335596 at *4 (W.D. Okla. Oct. 15, 2009) (same). Here, Apple does not challenge Palmatier's expertise. Indeed,

██████████████████████████████████████████████

████████████████████████████████ *see also Arevalo v. Coloplast Corp.*, 2020 WL 3958505 at *21 (N.D. Fla. July 7, 2020) (Apple cited case in which expert merely "parrot[ed] Defendant's corporate documents").

## B.  <u>Palmatier Need Not Define Specific Words of the Trade Secrets</u>

Apple next attempts to exclude all of Palmatier's opinions based on the assertion that he "offers no explanation as to what the alleged secrets mean," Mot. at 11.  Apple's assertion is incorrect.  Palmatier provided extensive testimony explaining the Trade Secrets and also demonstrated his interpretation of the scope of the trade secrets through his analysis explaining (1) how Masimo's evidence demonstrates Masimo's creation and possession of the Trade Secrets, (2) how Apple acquired and used the Trade Secrets, (3) why Apple's analysis does not show the Trade Secrets were "generally known", and (4) how Apple's experts improperly rewrite and recharacterize the trade secrets.  *See supra* Section II. A.  Apple's marketing expert acknowledged one could evaluate Palmatier's interpretation of the scope of the Trade Secrets by examining Palmatier's analysis of these issues. Ex. E ¶55. Palmatier did not simply present a "narrative" and "leap" to a "conclusion," as Apple argues.  Mot. at 12; *see also Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*, 2018 WL 11352632 at *7 (C.D. Cal. Apr. 24, 2018)

("[E]xperts are permitted to analyze materials and formulate a narrative based on that information. Indeed, this is one of the primary purposes of expert witnesses—to analyze and summarize information" to help the fact finder).

During his deposition, Palmatier offered to discuss and explain how he was applying the trade secrets in various portions of his report.  Ex. 3 at 226:17-227:11. Apple instead demanded that Palmatier formally define particular terms in the abstract, unconnected to the trade secret as a whole.   Ex. 3 at 92:14-98:19, 222:25-226:16; 226:17-227:11; 231:23-233:4; 246:5-7.  Apple cites no authority requiring an expert to define specific words within a trade secret.  Such an approach may improperly enlarge or reduce the scope of the Trade Secrets, inviting error.  Indeed, Palmatier explained in detail how Apple's expert's attempts to rewrite the Trade Secrets eliminated large portions of the Trade Secrets.  *See supra* Section II. A.2.

Moreover, Palmatier properly addressed the ***concepts*** reflected by Apple's cherry-picked words—in the context of the trade secret as a whole—while explaining the Trade Secrets and applying them to this case.  *See, e.g.*, Ex. 1 ¶¶83, 86, 115, 123-24, 174; Ex. 2 at 129 ¶248; Ex. 3 at 248:24-249:15.   To the extent Apple disagrees with Palmatier's opinions, those disagreements should be the subject of cross-examination.  *See Planned Parenthood Federation of Amer. Inc. v. Center for Medical Progress*, 402 F. Supp. 3d 615, 719 (N.D. Cal. 2019) (defendant's challenges to expert's "methodology" and failure to define a term were "in the end, the sorts of issues that are appropriat[e]" for "cross-examination," not exclusion).

Apple claims Palmatier's opinions are of "no use to a finder of fact" because Palmatier did not define Apple's selected words.  But neither of Apple's expert reports on the business and marketing trade secrets identified specific definitions for terms in the Trade Secrets.  Kivetz rejected any suggestion that "particular words" in the trade secret were unclear.  Ex. A at 284:3-11.  Plaintiffs asked Perez to identify terms he thought could "be interpreted in different ways."  Ex. C at 45:22-46:16.  Perez did not identify three of the four terms Apple identifies in its Motion. *Compare id. with* Mot.

11:8-11.

Apple also argues, without support, that the Trade Secrets contain terms having unidentified "specialized meaning[s]" of "terms of art, science, or trade."  Mot. at 11. But Apple's own experts could not even agree on what expertise would supposedly be required to interpret the words. ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████

Regardless, Apple could have argued the Trade Secrets contain specialized terms requiring definitions when it challenged Masimo's 2019.210 statement.  Instead, Apple submitted a 100-page expert declaration that addressed only the technical trade secrets. Dkt. 259-3.  The Court found that Masimo identified its trade secrets—including the trade secrets at issue here—with reasonable particularity.  *See* Dkt. 279; Ex. F at 17:9-12, 41:17-18 (adopting tentative "find[ing] that the disclosures meet the requirements of Section 2019.210 and the cases interpreting it that the trade secrets have been identified with reasonable particularity."); Dkt. 264 at 4, 8-9 (order rejecting Apple's argument that complaint did not describe trade secrets with sufficient particularity).

Apple's arguments also ignore the context in which the Trade Secret terms appear. The Trade Secrets, which Apple describes as "lengthy," explain their scope in detail. Mot. at 11. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████████████

4 █████████████████████████████████████████████

5

6

7

8 ███████████    Other terms are similarly clear in view of the context of the overall

9 trade secret.  In fact, when asked to interpret various terms, Apple's expert, █████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████

13    Apple complains that Palmatier identified no Masimo or Apple document that was

14 not created for this litigation that included the specific language of the Trade Secrets.

15 Mot. 12:3-6.  But that is neither surprising nor necessary.  In fact, Apple's 30(b)(6)

16 witness on "Apple's marketing plans," Caldbeck, admits that █████████████

17 ████████████████████████████████    Dkt. 1133-7, Ex. AA at 31:16-

18 32:4, 34:8-11.  Further, as Masimo explained in detail in opposing Apple's motion for

19 summary judgment, Masimo need not show its trade secrets are contained in a single

20 document. Dkt. 1133-1 at 1:22-2:11; *see Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514,

21 1518, 1521 (1997).  Palmatier analyzed the evidence as a whole, including numerous

22 ██████████████████████    to provide helpful testimony relevant to the issues in this

23 case. *See Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1046

24 (N.D. Cal. 2011) ("Dr. Fair is, indisputably, qualified to express an opinion as to the

25 significance of [inventor] notebook entries and he has done so"); *see also Strategic*

26 *Partners Inc. v. Figs, Inc.*, 2022 WL 4596594 at *7 (C.D. Cal. Aug. 18, 2022) ("In the

27 Ninth Circuit, an expert's own knowledge and experience can be a sufficient basis for

28 inclusion.").

1  Apple presents no authority requiring an expert to define the terms of a trade
2  secret.  Apple cites *Pacific Fuel Co. v. Shell Oil Co.*, 2008 WL 11336467 at *5 (C.D.
3  Cal. Jan. 24, 2008).  But *Pacific Fuel* did not exclude testimony or **require** an expert to
4  provide definitions.  Instead, *Pacific Fuel* permitted a variety of testimony and held an
5  expert's definition of a contract term was **permissible** despite the "general rule that
6  experts **cannot** offer testimony on the meaning of contractual terms…." *Id.* at *5.

7  Apple's remaining cases are likewise inapposite.  *See Perez v. State Farm Mut.*
8  *Auto. Ins. Co.*, 2012 WL 3116355 at *6 (N.D. Cal. July 31, 2012) (expert selected
9  sources without analyzing "contrary" sources); *Kovary v. Honeywell Int'l, Inc.*, 2014
10 WL 12564090 at *4 (C.D. Cal. Mar. 17, 2014) (expert failed to adequately explain
11 conclusion); *General Electric Co. v. Joiner*, 522 U.S. 136, 147 (1997) (expert relied on
12 studies that did not support conclusion); *United States v. Adams*, 444 F. Supp. 3d 1248,
13 1266 (D. Or. 2020) ("[n]othing in Mr. Grover's testimony explains how or why he
14 reached his conclusion"); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396,
15 484 (S.D.N.Y. 2016) (expert did not apply "her expertise" in offering conclusions).

16 Indeed, Apple's only trade secret case, *Comet Technologies USA Inc. v. XP Power*
17 *LLC*, **rejected** a motion to exclude testimony regarding "whether something qualifies as
18 a trade secret, as well as whether trade secrets were misappropriated."  2022 WL
19 2442810 at *3 (N.D. Cal. Mar. 2, 2022).  *Comet* cited previous cases allowing such
20 testimony and observed that the "appropriate mechanism to challenge this testimony
21 [was] cross-examination."  *Id*.  The same is true here.  Apple is free to cross-examine
22 Palmatier at trial if it truly believes that his opinions are flawed merely because he
23 declined to offer dictionary definitions of particular words in a vacuum.

## V.  <u>CONCLUSION</u>

25 For the reasons discussed above, the Court should deny Apple's motion.

26 / / /
27 / / /
28 / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 17, 2023

By: /s/ Stephen W. Larson
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 5,082 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].


Dated: January 17, 2023                     By: */s/ Stephen W. Larson*
                                            Joseph R. Re
                                            Stephen C. Jensen
                                            Benjamin A. Katzenellenbogen
                                            Perry D. Oldham
                                            Stephen W. Larson
                                            Mark D. Kachner
                                            Baraa Kahf
                                            Adam B. Powell
                                            Daniel P. Hughes
                                            Justin J. Gillett

                                            Attorneys for Plaintiffs
                                            MASIMO CORPORATION and
                                            CERCACOR LABORATORIES, INC.

56931779