MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY ON AIRPODS ROYALTIES**<br><br>Date: Feb. 6, 2023<br>Time: 1:30pm<br><br>Pre-Trial Conference: Mar. 13, 2023<br>Trial: Mar. 27, 2023 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    A.    Plaintiffs Do Not Reference AirPods In Any Version Of The Complaint ........................................................................................... 2

    B.    Plaintiffs Do Not Identify AirPods As A Relevant Product During Discovery ............................................................................................. 2

    C.    Plaintiffs Were On Notice Of The AirPods Proximity Sensor Feature During Fact Discovery ........................................................... 4

    D.    Apple Produces ███████████████████ In Mid-September ███████████████████ In October ................................................................................................ 5

    E.    Plaintiffs Wait Eleven Weeks After Mr. Zheng's Deposition To File The Instant Motion ...................................................................... 6

ARGUMENT ........................................................................................................... 7

    A.    Factor 4: Plaintiffs Were Not Diligent In Seeking AirPods-Related Discovery During the Discovery Period ............................. 7

    B.    Factor 5: Even If Plaintiffs Were Diligent, The Purported Need For AirPods Discovery Was Foreseeable During The Discovery Period ...... 10

    C.    Factor 6: Plaintiffs' Proposed Discovery Will Not Lead To Relevant Evidence Because AirPods Do Not Take Physiological Measurements ..................................................................................... 11

    D.    Factors 1-3: Trial Is Imminent, and Plaintiffs' Proposal Will Prejudice Apple ................................................................................. 11

CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*City of Pomona v. SQM North America Corp.*,
    866 F.3d 1060 (9th Cir. 2017) ................................................................ 7, 11

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
    2015 WL 13423891 (C.D. Cal. June 23, 2015) ............................................. 6

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ..................................................................... 7, 9

*Natural-Immunogenics Corp. v. Newport Trial Group*,
    2020 WL 8027978 (C.D. Cal. Aug. 7, 2020) ........................................ 12, 13

*Signal IP, Inc. v. Kia Motors America, Inc.*,
    2016 WL 6775690 (C.D. Cal. Apr. 22, 2016) ....................................... 10, 12

*Strick v. United Retirement Consultants, Inc.*,
    2018 WL 6164261 (C.D. Cal. June 14, 2018) ............................................. 12

*U.S. ex rel. Schumer v. Hughes Aircraft Co.*,
    63 F.3d 1512 (9th Cir. 1995), *vacated on other grounds*, Hughes
    Aircraft Co. v. United States, 520 U.S. 939 (1997) .................................... 10

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 50(b) ............................................................................................ 12

Fed. R. Civ. P. 16 ............................................................................................... 7, 9

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

During the nearly three-year discovery period, Plaintiffs served over 750 requests for production, 50 requests for admission, and 35 interrogatories.  ***None*** mentions AirPods.  Rather, Plaintiffs alleged that Apple misappropriated trade secrets in developing Apple Watch ▉▉▉▉; Plaintiffs defined the term "Accused Products" in their discovery requests to mean different generations of Apple Watch (Ex. 1 at 2); and Plaintiffs' interrogatory responses identified only ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  Plaintiffs even represented ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Now, barely two months before trial, Plaintiffs want a do-over.  They ask this Court to reopen discovery so they can shoehorn AirPods into their damages case.  That request is improper.  For example, a request to reopen discovery requires a showing of relevance, and AirPods ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

A request to reopen discovery also requires a showing of diligence—a standard that Plaintiffs do not even try to satisfy.  Plaintiffs rely extensively upon information produced *during* fact discovery as the basis for reopening fact discovery five months after it closed.  Instead of seeking further AirPods discovery or filing any sort of motion during the discovery period, Plaintiffs sat on their hands until last week.  That is not "diligence" within any reasonable meaning of the word.

The remaining factors for determining whether to reopen discovery all weigh strongly against Plaintiffs' request: trial is imminent; the request is opposed; and Plaintiffs' proposed discovery schedule would unfairly burden Apple with preparing a new damages report directly in the middle of the March jury trial.  For these reasons, Plaintiffs' motion should be denied.

## BACKGROUND

### A. Plaintiffs Do Not Reference AirPods In Any Version Of The Complaint

Plaintiffs filed this case in January 2020, alleging that Apple used and disclosed Plaintiffs' trade secrets in developing and selling Apple Watch. *See* Dkt. 1 ¶¶ 20-28; Mot. 1-2. Although AirPods were first sold in 2016, the complaint did not mention them. Neither did Plaintiffs' First Amended Complaint, Dkt. 28, Second Amended Complaint, Dkt. 89-1, or Third Amended Complaint, Dkt. 231-1. The operative complaint (which was filed in February 2021 and supplemented in June 2022) also makes no mention of AirPods. *See* Dkts. 296-1, 750. This is for good reason: AirPods do not measure ███████████████████████████████████████ AirPods and Apple Watch are different product lines, used for different purposes, and were developed by different engineering teams. They are visually distinct as well:




### B. Plaintiffs Do Not Identify AirPods As A Relevant Product During Discovery

In April 2020, Apple served Interrogatory No. 10, which *inter alia* provided that to the extent that Plaintiffs allege Apple "used, is using, or plans to use the alleged Trade Secret in an Apple Product," their response should "identify and describe how each such product in fact incorporates or uses the Trade Secrets." Ex. B at 12-13. Plaintiffs provided seven supplemental responses to Interrogatory No. 10, the last of which was

served on September 29, 2022. Ex. A; Ex. C.[1] None of Plaintiffs' responses, including Plaintiffs' final response, mentions AirPods. *See generally* Ex. A.

Moreover, not one of the 750 requests for production and thirty-five interrogatories Plaintiffs have served in this case mentions AirPods. To the contrary, most of Plaintiffs' discovery requests expressly define the accused products at issue exclusively as Apple Watch devices and related software. *See, e.g.*, Ex. 1 at 7, 9 (Plaintiffs' RFP No. 22 requesting documents relating to "operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products," defined as "Apple Watch Series 4 or later"); Ex. 3 at 21, 22 (RFP No. 153 requesting documents relating to "operation of any LEDs used to determine oxygen saturation for any Apple Watch Product," defined as "smartwatches produced by Apple").

Plaintiffs have identified two discovery-related disputes where the word "AirPods" was mentioned, but both involve Apple's objections to vaguely worded discovery requests as overbroad and untethered to the alleged trade secrets or products at issue. *E.g.*, Mot. 2-3; Ex. 13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In fact, in one of the documents Plaintiffs cite, they agreed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Consistent with that representation, at no point during fact discovery did Plaintiffs inform Apple that they believed AirPods to be a relevant or accused product, or to involve physiological monitoring, much less move to compel discovery on AirPods.

---

[1] Plaintiffs continued to supplement other interrogatory responses, including their damages contentions, as late as December 23, 2022. *E.g.*, Ex. D.

**C.     Plaintiffs Were On Notice Of The AirPods Proximity Sensor Feature During Fact Discovery**

In November 2021—nine months before the close of fact discovery—Apple produced a batch of documents that included documents ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████

On April 28, 2022, the Court granted Plaintiffs' motion to, among other things, ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

On June 14, 2022, over two months before the close of fact discovery, Plaintiffs deposed Jack Fu, a Senior Director of Human Interface Devices Software at Apple. Ex. 19 at 1, 16. Mr. Fu testified that AirPods ████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████

---

[2] This feature was publicly known as of 2021. *See, e.g.*, Ex. H (Oct. 18, 2021 Apple press release regarding AirPods).

**D. Apple Produces ▮▮▮ In Mid-September And Plaintiffs Depose An Apple Employee In October**

On September 16, 2022, Apple produced ▮▮▮ The document ▮▮▮

Plaintiffs subsequently requested a deposition of Dong Zheng, an Apple engineering manager for whom Plaintiffs had previously withdrawn their deposition notice. *See* Ex. I at 2. During his October deposition, Mr. Zheng testified ▮▮▮ He further testified that ▮▮▮ Later in the deposition, Plaintiffs examined Mr. Zheng— ▮▮▮

---

[3] Plaintiffs suggest (Mot. 4) that Apple produced multiple relevant "documents," but identifies only Exhibit 17. They should not be permitted to identify new documents in their reply.

### E. Plaintiffs Wait Eleven Weeks After Mr. Zheng's Deposition To File The Instant Motion

Opening expert reports were due on September 23, 2022, and rebuttal reports were due on November 4, 2022. Dkt. 627 at 2. On November 2, Plaintiffs belatedly served a "supplement" to Dr. Madisetti's opening expert report in an attempt to address the ▮▮▮▮▮▮▮▮▮▮.

On November 8, 2022, Plaintiffs emailed Apple, requesting that Apple produce a settlement agreement from an unrelated case. Ex. K at 2. The next day, Apple asked for the basis of the untimely request. *Id.* at 1-2. On November 17, 2022, Plaintiffs provided a brief reply, asserting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple responded on November 29, 2022, asking for Plaintiffs' basis for concluding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs never responded.

A month later, on December 29, 2022, Plaintiffs asserted in a separate email chain that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs asked Apple to stipulate to reopening discovery into AirPods. The parties subsequently met and conferred on this issue on January 2, 2023, and Apple reiterated its position that there was no basis for Plaintiffs to seek discovery into AirPods because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs did not provide their explanation for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ until a few hours before filing the instant motion—even then, their email cited only the June 14, 2022 deposition of Jack Fu. *Id.* at 1.

# ARGUMENT

"A party must show 'good cause' for relief from a scheduling order." *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2015 WL 13423891, at *2 (C.D. Cal. June 23, 2015); *accord Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir. 1992). Courts consider a six-factor test when considering a motion to amend an FRCP 16 scheduling order to reopen discovery: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence. *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). FRCP "16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end." *Id.*

Plaintiffs have failed to address or acknowledge the standard laid out in *Pomona* and for good reason. Those factors all weigh decisively against a modification of the Court's Rule 16 scheduling order to reopen discovery.

## A. Factor 4: Plaintiffs Were Not Diligent In Seeking AirPods-Related Discovery During the Discovery Period

Plaintiffs cannot show that they exercised diligence in seeking AirPods discovery. In particular, Plaintiffs' assertions (Mot. 6) that (1) "[d]uring discovery, Apple did not provide information or documents on AirPods," and (2) the alleged evidence relating ▓▓▓▓▓▓▓ only came to light after fact discovery closed are untrue.

Indeed, in their motion and earlier correspondence, Plaintiffs rely on information provided *during fact discovery* as the supposed basis for reopening discovery. For example, Plaintiffs cite Mr. Fu's June 14, 2022 deposition testimony—which occurred months before the close of fact discovery. Mot. 4 ▓▓▓▓▓▓▓



▇▇▇ ; Ex. 19 at 49:7-51:6; *see also* Ex. L at 1 ▇▇▇. Plaintiffs also cite Mr. Zheng's deposition testimony (taken after the close of discovery at Plaintiffs' request) regarding a 2014 email ▇▇▇ that Apple produced *over a year ago* in October 2021. Mot. 4; *supra* p. 5.[4] But that email exchange, according to Plaintiffs' own expert, ▇▇▇ If Mr. Fu's testimony and Mr. Zheng's emails—each of which Plaintiffs had during discovery—reveal ▇▇▇ then Plaintiffs should have sought more discovery *before discovery closed*. Instead, Plaintiffs waited *thirteen months* after Mr. Zheng's email was produced and *six months* after Mr. Fu's deposition to move for further discovery after all relevant deadlines in the scheduling order had passed.

Apple also produced other documents detailing AirPods' proximity sensing technology well before the close of discovery, beginning no later than November 2021. Those documents described ▇▇▇

---

[4] ▇▇▇

Despite obtaining Mr. Fu's testimony and documents on AirPods' proximity sensing technology well before the close of fact discovery, Plaintiffs have identified zero discovery requests that mention AirPods. *See supra* pp. 2-3. Nor—even to this day—did Plaintiffs ever supplement critical contention interrogatory responses to identify AirPods as an accused product. *Supra*, pp. 2-3. Instead, Plaintiffs sat on their hands for over a year and waited until less than three months before trial to try to reopen discovery—even though this Court has previously warned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That is not remotely diligent, so "the inquiry should end." *Johnson*, 975 F.2d at 610 ("The simple fact is that [Plaintiffs'] attorneys … conducted discovery but failed to pay attention to the responses they received. That is precisely the kind of case management that Rule 16 is designed to eliminate.").[5]

Even indulging in Plaintiffs' view that they only learned of AirPods' alleged relevance after Mr. Zheng's October 2022 deposition, they still were not diligent. After Mr. Zheng's deposition, Plaintiffs waited two weeks to broach the issue of additional AirPods discovery. *Supra,* p. 6. When Apple asked for Plaintiffs' basis for the motion on November 29, 2022, Plaintiffs went silent and then waited until December 29 to start a new email thread on the same issue. *Id*. When Apple again requested clarification, Plaintiffs waited until hours before filing the instant motion to provide a cursory explanation. *Id*. Even under Plaintiffs' narrative, they delayed 2.5 months after Mr. Zheng's deposition to move to reopen discovery and failed to engage with Apple on that issue for almost the entire month of December—all just months before trial. Again, nothing about that is remotely diligent.

---

[5] Plaintiffs cite the Powell declaration for the proposition that they "*did not learn* of the Air-Pods-related misappropriation until Apple produced relevant documents on September 16, 2022." Mot. 6 (emphasis added). But the declaration does not go that far—it merely says that on September 16, Apple "produced documents that Masimo contends demonstrate Apple's use of the trade secret." Powell Decl. ¶ 19.

### B. Factor 5: Even If Plaintiffs Were Diligent, The Purported Need For AirPods Discovery Was Foreseeable During The Discovery Period

As to the fifth *Pomona* factor, at least based on Plaintiffs' belated theory of liability for AirPods, the need for discovery was foreseeable well before the fact discovery cutoff. Yet Plaintiffs failed to seek that discovery until now—months after the cutoff.

The facts of *U.S. ex rel. Schumer v. Hughes Aircraft Co.* are instructive. 63 F.3d 1512 (9th Cir. 1995). There, the Ninth Circuit found that even if the movant "only recently learned of" information via a newspaper article post-discovery, that "does not necessarily justify additional time for discovery" because the need for the information was foreseeable during the discovery period. *Id.* at 1526, *vacated on other grounds*, *Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997). While the newspaper article mentioned a relevant employee of the defendant in that case, the Court found that the plaintiff should have sought to depose that employee earlier given the employee's job responsibilities and foreseeable relevance to plaintiffs' *qui tam* claims regarding ethics violations. *See id.* at 1526. This was true even though the movant was "reasonably diligent" in pursuing discovery. *Id.*

Here, even assuming Plaintiffs' incorrect view that they first had notice of AirPods' relevance after the discovery cutoff, the supposed need for AirPods discovery was just as foreseeable during discovery as it is today. AirPods have implemented proximity, skin-sensing technology since 2021—a fact that was publicly known as of Fall 2021 and described in documents Apple produced as early as November 2021. Ex. H at 4; *supra*, p. 4. Yet Plaintiffs cannot identify a single discovery request (out of nearly 800) that refers to AirPods. At minimum, they should have pursued additional AirPods discovery starting no later than the November 2021 document production. Their failure to do so until months after discovery closed weighs heavily against reopening discovery now. *See Signal IP, Inc. v. Kia Motors Am., Inc.*, 2016 WL

6775690, at *9 (C.D. Cal. Apr. 22, 2016) (finding that need for source-code discovery was foreseeable and waiting four months after close of fact discovery weighed against reopening of discovery).

### C. Factor 6: Plaintiffs' Proposed Discovery Will Not Lead To Relevant Evidence Because AirPods Do Not Take Physiological Measurements

As to the sixth *Pomona* factor, Plaintiffs have not explained how further discovery would lead to relevant evidence. Plaintiffs claim that AirPods discovery would inform damages related to ▇▇▇▇ Mot. 3-4, 6. ▇▇▇▇

▇▇▇▇

▇▇▇▇

The discovery requests that Plaintiffs cite in their motion (none of which mentions AirPods) accordingly focus on ▇▇▇▇

▇▇▇▇

▇▇▇▇ AirPods indisputably ▇▇▇▇

▇▇▇▇ Moreover, neither Plaintiffs nor their experts have explained how AirPods ▇▇▇▇

▇▇▇▇ In fact, Plaintiffs' expert claimed that the relevant field for the alleged technical trade secrets, ▇▇▇▇

▇▇▇▇

### D. Factors 1-3: Trial Is Imminent, and Plaintiffs' Proposal Will Prejudice Apple

As to the first three *Pomona* factors, trial is imminent, Apple opposes the requested reopening, and Plaintiffs' proposed discovery schedule would greatly

prejudice Apple. 866 F.3d at 1066. These factors all therefore strongly weigh against reopening discovery as well.

Specifically, trial begins in less than three months; fact discovery closed five months ago; and expert discovery closed a month ago. Dkt. 627 at 2. And while Plaintiffs claim to seek a "limited" reopening, their request is anything but: they request a new round of written discovery of unspecified scope, supplemental expert reports from both sides, and a new round of expert depositions, with much of that schedule falling in the middle of the jury trial set to begin March 28. *See* Mot. 7.

This Court, and others in this District, have denied far less prejudicial requests under similar circumstances—and even when the trial date is further away or not even set. *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020 WL 8027978, at *2 (C.D. Cal. Aug. 7, 2020) (denying motion to reopen discovery even where trial date was stayed due to COVID-19 pandemic); *Strick v. United Ret. Consultants, Inc.*, 2018 WL 6164261, at *2 (C.D. Cal. June 14, 2018) (denying motion to reopen discovery due in part to "work that has been completed in preparation for trial" even though trial date was not set); *see also Signal IP*, 2016 WL 6775690, at *9 (denying motion to reopen discovery filed two months before trial and after two years of discovery).

Plaintiffs wrongly suggest that because the Court (and not the jury) will determine a reasonable royalty after the trial and if necessary, then the proposed reopening of discovery "would not impact trial or prejudice Apple." Mot. at 6-7. Plaintiffs cite no authority supporting such an argument. Moreover, their proposed "discovery schedule" will greatly interfere with the jury trial and preparation for that trial, particularly for Apple. Assuming Plaintiffs' motion were granted on the date of the hearing for this motion, Plaintiffs propose exchanging written discovery on February 13 (the deadline for motions in limine), responding on February 27 (the deadline for replies in support of motions in limine), having Plaintiffs serve a supplemental expert report on March 20, having Apple serve a supplemental expert report on April 10 (i.e., near the end of or

shortly after the jury trial), and finishing with expert depositions within four weeks of a jury verdict (i.e., roughly the same time post-trial motions are due). *Compare* Mot. 7, *with* Dkt. 627 (case schedule), *and* Fed. R. Civ. P. 50(b). This process is disruptive to all parties and the Court, but particularly so for Apple given the imposition of having to prepare a damages expert report mid-trial.

Plaintiffs' final suggestion that "limited discovery would avoid repetitive litigation" is unpersuasive. Mot. 7-8. Plaintiffs have not made any formal allegations against AirPods, so it is impossible for Apple or the Court to evaluate the veracity of that statement. Moreover, Plaintiffs' proposed schedule does not even account for any "further discovery disputes" that may "further delay resolution of this action." *Nat-Immunogenics*, 2020 WL 8027978 at *2. Plaintiffs threaten that, if they do not win this motion, they will have to pursue "another litigation" on damages relating to AirPods. Mot. at 8. Plaintiffs' threat should be given no weight in this context, as the first three *Pomona* factors are concerned with burdening the non-moving party.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Discovery on AirPods Royalties.

| | |
|---|---|
| Dated: January 17, 2023 | Respectfully submitted, |
| | |
| | MARK D. SELWYN |
| | AMY K. WIGMORE |
| | JOSHUA H. LERNER |
| | SARAH R. FRAZIER |
| | NORA Q.E. PASSAMANECK |
| | THOMAS G. SPRANKLING |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | |
| | BRIAN A. ROSENTHAL |
| | GIBSON, DUNN & CRUTCHER LLP |
| | |
| | KENNETH G. PARKER |
| | HAYNES AND BOONE, LLP |
| | |
| | By: */s/ Mark D. Selwyn* |
| |      Mark D. Selwyn |
| | |
| | *Attorneys for Defendant Apple Inc.* |

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc., certifies that this brief contains 3966 words, which:

 X  complies with the word limit of L.R. 11-6.1.

Dated: January 17, 2023          Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
         Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*