1
2
3
4
5

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

6
7
8
9

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

10
11
12
13

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel.: 202.663.6000 / Fax: 202.663.6363

14
15

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

16
17

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

18
19
20
21
22
23
24
25
26

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>                     Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br>a California corporation,<br><br>                     Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY UNDER RULE 702**<br><br>Date: Feb. 6, 2023<br>Time: 1:30pm<br><br>Pre-Trial Conference: Mar. 13, 2023<br>Trial: Mar. 28, 2023 |

27

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

28

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

Wilmer Cutler
Pickering Hale
and Dorr LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.   The Readily Ascertainable Opinions Rest On The Correct Legal Basis ............. 3

  A.   The Test Is Whether Defendant *Could Have* Readily Ascertained The Purported Confidential Information ....................................... 3

  B.   Plaintiffs' Proposed Test Is Unsupported By The Case Law And Contrary To Common Sense ........................................................ 5

II.  The Opinions Of Apple's Experts That The Purported Trade Secrets Were Generally Known Are Relevant And Will Aid The Jury ................................. 10

  A.   The Generally Known Opinions Rest On The Correct Legal Standard ........................................................................................ 10

  B.   The Generally Known Opinions Are Admissible ................................ 13

  C.   The Perez and Kivetz Opinions Should Not Be Excluded For Any Other Reason ......................................................................... 16

CONCLUSION ........................................................................................... 17

Wilmer Cutler
Pickering Hale
and Dorr LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A 1 Elecs., Inc. v. Chang*,
   342 F. App'x 293 (9th Cir. 2009) ........................................................................9

*Abba Rubber Co. v. Seaquist*,
   235 Cal. App. 3d 1 (1991) ......................................................................*passim*

*Advanced Fluid Sys., Inc. v. Huber*,
   2017 WL 2445303 (M.D. Pa. June 6, 2017) .......................................................5

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*,
   226 Cal. App. 4th 26 (2014) ...................................................................*passim*

*American Paper & Packaging Prods., Inc. v. Kirgan*,
   183 Cal. App. 3d 1318 (1986) ..................................................................1, 3

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   28 Cal. App. 5th 923 (2018) ...........................................................................11

*Arevalo v. Coloplast Corp.*,
   2020 WL 3958505 (N.D. Fla. July 7, 2020)....................................................17

*Bimbo Bakeries USA, Inc. v. Sycamore*,
   39 F.4th 1250 (10th Cir. 2022) .........................................................................5

*Buffets Inc. v. Klinke*,
   73 F.3d 965 (9th Cir. 1996) ..............................................................................4

*Contemporary Servs. Corp. v. Landmark Event Staffing*,
   677 F. App'x 314 (9th Cir. 2017).....................................................................8

*Courtesy Temp. Servs., Inc. v. Camacho*,
   222 Cal. App. 3d 1278 (1990) .........................................................................4

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ..........................................................................2

Wilmer Cutler Pickering Hale and Dorr LLP

*Fremont Reorganizing Corp. v. Federal Ins. Co.*,
   2010 WL 444718 (C.D. Cal. Feb. 1, 2010) ............................................ 9

*Global Medical Technologies, Inc. v. Jackson*,
   2006 WL 3735581 (Cal. Ct. App. Dec. 20, 2006) ............................... 6

*Goddard v. Fulton*,
   21 Cal. 430 (1863) ............................................................................... 7

*GSI Tech., Inc. v. United Memories Inc.*,
   2015 WL 5655092 (N.D. Cal. Sept. 25, 2015) ............................... 3, 4

*Harris v. Harris*,
   935 F.3d 670 (9th Cir. 2019) ............................................................ 10

*Harvey Barnett, Inc. v. Shidler*,
   338 F.3d 1125 (10th Cir. 2003) ........................................................ 12

*Herrera v. Zumiez*,
   953 F.3d 1063 (9th Cir. 2020) ............................................................ 6

*Imax Corp. v. Cinema Technologies, Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ........................................................ 8, 9

*Imi-Tech Corp. v. Gagliani*,
   691 F. Supp. 214 (S.D. Cal. 1986) ................................................ 12, 13

*United States v. Johnson*,
   256 F.3d 895 (9th Cir. 2001) (en banc) .......................................... 8, 9

*Khoros, LLC v. Lenovo (United States), Inc.*,
   2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) .................................. 10

*Kovary v. Honeywell Int'l, Inc.*,
   2014 WL 12564090 (C.D. Cal. Mar. 17, 2014) ............................... 17

*United States v. Lange*,
   312 F.3d 263 (7th Cir. 2002) .............................................................. 5

*Masimo Corp. v. True Wearables Inc.*,
   2021 WL 2548690 (C.D. Cal. Apr. 28, 2021) ................................. 5, 7

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ...........................................13, 15

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 205485 (Fed. Cir. Jan. 24, 2022).................................................9

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
  2009 WL 10672947 (C.D. Cal. Aug. 14, 2009) ............................................8, 9

*Morlife, Inc. v. Perry*,
  56 Cal. App. 4th 1514 (1997) ............................................................4, 9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
  420 F. Supp. 2d 1070 (N.D. Cal. 2006)..................................................10

*Pacific Fuel Co. v. Shell Oil Co.*,
  2008 WL 11336467 (C.D. Cal. Jan. 24, 2008)..............................................17

*San Jose Constr., Inc. v. S.B.C.C., Inc.*,
  155 Cal. App. 4th 1528 (2007) ......................................................1, 3, 4, 6, 9

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th 1109 (2013) ................................................................6

*Stutz Motor Car of Am., Inc. v. Reebok Int'l Ltd.*,
  909 F. Supp. 1353 (C.D. Cal. 1995) ....................................................16

*Therasense, Inc. v. Becton Dickinson & Co.*,
  593 F.3d 1325 (Fed. Cir. 2010) ........................................................13

*Thompson v. Impaxx, Inc.*,
  113 Cal. App. 4th 1425 (2003) ..........................................................4

*Wang v. Palo Alto Networks, Inc.*,
  2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)...............................................16

*Wanke, Indus., Com., Residential, Inc. v. Keck*,
  209 Cal. App. 4th 1151 (2012) ..........................................................4

*West v. American Tel. & Tel. Co.*,
  311 U.S. 223 (1940).....................................................................6

Wilmer Cutler Pickering Hale and Dorr LLP

**Statutes and Rules**

Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments)...................3, 10

Cal. R. Ct. 8.1115(a) ..................................................................................................6

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

This Court should reject Plaintiffs' *Daubert* challenge to the testimony from Apple's experts explaining why Plaintiffs' purported trade secrets were either readily ascertainable or generally known. *See* Dkt. 1117-1 ("Mot.").

*First*, Plaintiffs are wrong that the readily *ascertainable* affirmative defense requires the defendant to show that it actually *ascertained* the purported secrets. To the contrary, nearly every precedential decision from the California Court of Appeal—including the most recent—requires merely that the defendant show that it *could have* readily determined the plaintiff's trade secrets prior to the alleged misappropriation to support the defense, i.e., that they were *ascertainable*. *See, e.g.*, *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1542-1543 (2007); *American Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1326 (1986). This is for good reason. Plaintiffs' proposed standard would render the readily ascertainable affirmative defense superfluous, as it would entirely overlap with Plaintiffs' obligation to show that the purported secrets were acquired through improper means. In other words, there would be no reason to invoke the defense when a defendant could simply require a plaintiff to carry its burden of proving misappropriation. While Apple acknowledges that this Court came to a different conclusion in the *True Wearables* litigation, Apple respectfully submits that the reasoning applied in the *True Wearables* decision should not be applied in this case. As outlined below, the briefing in *True Wearables* was incomplete, and the footnote in *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 22 n.9 (1991) upon which Plaintiffs rely is inapposite. Indeed, to the extent that this Court agrees that the language in *Abba* is nonbinding dicta, the *Erie* doctrine requires this Court to follow the rule laid out in precedential decisions like *San Jose Construction* absent persuasive evidence that the California Supreme Court would come out differently—a showing Plaintiffs have not even attempted to make.

*Second*, Plaintiffs are wrong that a purported secret can be generally known only if it is contained in its entirety in a single publicly available document.  Not only is this fundamentally inconsistent with Plaintiffs' own piecemeal approach for showing possession of the purported secrets, but they have not identified a single case that adopts such a test.  Rather, their primary authority addresses the narrow world of "combination trade secret" cases, where a plaintiff seeks to establish that a collection of public-domain elements is combined in a secret and valuable manner.  *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 48-49 (2014).  Plaintiffs have not pursued a combination trade secret case.  As explained in Apple's pending summary judgment motion, they have failed to show that they possess any of the purported secrets in full.  *See* Dkt. 1094-1.  In any event, even if Plaintiffs are advancing a combination trade secret argument for some secrets, expert testimony illustrating how each element of the purported secrets was generally known is relevant to Apple's defenses and useful to the jury unless Plaintiffs both (1) concede that every element of their alleged secrets was in the public domain and (2) present evidence that the elements taken in their totality have sufficient value to qualify as a trade secret.  They have done neither.

## ARGUMENT

When considering an FRE 702 challenge to a proffered expert witness, a district court must "'ensur[e] that [the] expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).  "Accordingly, '[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'"  *Id.*

I.      **THE READILY ASCERTAINABLE OPINIONS REST ON THE CORRECT LEGAL BASIS**

A.      **The Test Is Whether Defendant *Could Have* Readily Ascertained The Purported Confidential Information**

Under CUTSA, the fact that an alleged trade secret "is readily ascertainable by proper means … [is] available as a defense to a claim of misappropriation."  Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments).   "The readily ascertainable test asks whether the information, even if not found in one single published source, nonetheless can easily be gathered together from various sources through a minimum of time and labor."  *GSI Tech., Inc. v. United Memories Inc.*, 2015 WL 5655092, at *12 (N.D. Cal. Sept. 25, 2015) (citing Pooley et al., *Trade Secret Practice In California* § 1.8A (CEB 2012)).  Nearly every published decision by the California Court of Appeal to consider the issue has adopted this approach.  Those authorities ask whether the defendant *could* have realistically discovered the purported secret rather than whether the defendant in fact actually ascertained it.

For example, the California Court of Appeal held shortly after the CUTSA's enactment that a shipping supply company's customer lists were not protectable trade secrets where "they certainly *would be* … readily ascertainable to other persons in the shipping business," because the "compilation process" would be "neither sophisticated nor difficult nor particularly time consuming."  *American Paper & Packaging Prods.*, 183 Cal. App. 3d at 1326 (emphasis added).  The *American Paper* court accordingly affirmed the denial of a preliminary injunction without finding that the respondents actually recreated the customer lists using the methodology set forth in their readily ascertainable defense.  *Id.* at 1325-1326.

Similarly, in *San Jose Construction, Inc. v. S.B.C.C., Inc.*, the court held that a readily ascertainable defense may be available even where the defendant did not actually rely on public materials or reverse engineer the purported trade secrets.  155 Cal. App.

Wilmer Cutler
Pickering Hale
and Dorr LLP

4th at 1542-1543.  Even though *San Jose Construction* reversed the trial court's grant of summary judgment, it emphasized that the proper legal question was "whether the [information] was indeed *readily* ascertainable—that is whether [the respondent] could have replicated [the material] within the short period it claimed to have needed" the data.  *Id.* (emphasis added); *see also id.* ("[c]onsidering the length of time that each proposal [claimed as a trade secret] took to create and finalize and the urgency with which four of the project owners impressed upon the prospective contractors to begin the work" in determining whether the proposals were "readily ascertainable in the circumstances presented").

Even where California Court of Appeal decisions have rejected a readily ascertainable defense—e.g., by holding that the information was "secured … at considerable time, effort and expense to [the plaintiff]"—their analysis has looked to whether the defendant *could have* recreated the alleged secret, not whether it *had* recreated the secret.  *Courtesy Temp. Servs., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1282 (1990); *see also Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997).  Courts applying this test rely on the "general principle" that "the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret."  *Morlife*, 56 Cal. App. 4th at 1522; *see, e.g.*, *GSI Tech.*, 2015 WL 5655092, at *12 (quoting *Morlife*); *Wanke, Indus., Com., Residential, Inc. v. Keck*, 209 Cal. App. 4th 1151, 1175 (2012) (same); *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1432 (2003) (same).  But if having *actually* ascertained the purported secret were a requirement of the defense, then there would be no logical reason for assessing the difficulty and time intensiveness of ascertaining the information from public sources.

Courts across the country have interpreted the term "readily ascertainable" in the same way when interpreting the Uniform Trade Secret Act.  *See, e.g.*, *Buffets Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) (under Washington law, purported secret is

readily ascertainable when "defendant by an expenditure of effort might have collected the same information from sources available to the public"); *Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250, 1262 (10th Cir. 2022) (under Utah law, readily ascertainable means ascertainable "'without much difficulty'"); *United States v. Lange*, 312 F.3d 263, 268 (7th Cir. 2002) (under USTA, readily ascertainable means information is not "easily discoverable"); *Advanced Fluid Sys., Inc. v. Huber*, 2017 WL 2445303, at *12-13 (M.D. Pa. June 6, 2017) (under Pennsylvania law, readily ascertainable considers "the relative difficulty of replicating" the purported secret); *see also* Uniform Trade Secrets Act, § 1 cmt. ("Information is readily ascertainable if it is *available* in trade journals, reference books, or published materials" but not if it the process of acquiring the purported secret would be "lengthy and expensive").

### B. Plaintiffs' Proposed Test Is Unsupported By The Case Law And Contrary To Common Sense

Plaintiffs ignore this case law and instead contend that the readily ascertainable test requires the defendant to prove that it *in fact* discovered the purported secret before the litigation through either reverse engineering or by piecing together publicly available information. Mot. 3-7. Apple recognizes that this Court came to a similar conclusion in the *True Wearables* litigation, where it held that "ready ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable." *Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *3 (C.D. Cal. Apr. 28, 2021) (*True Wearables I*). Respectfully, however, this Court's prior decision departs from the relevant case law and legal principles. This may be because (1) the issue was not thoroughly briefed by the *True Wearables* defendants (who cited zero case law) and (2) Plaintiffs' *True Wearables* reply brief cited *Abba Rubber* without acknowledging contrary precedent. *See Masimo Corp. v. True Wearables, Inc.*, No. 8:18-cv-2001 (C.D. Cal. 2021), Dkt. 172 at 15-16; *id.* Dkt. 182 at 13-17 (hereinafter "TW PI Reply Br.").

Wilmer Cutler Pickering Hale and Dorr LLP

As in *True Wearables I*, Plaintiffs' motion rests on a single published California case from three decades ago (*Abba Rubber Co. v. Seaquist*), which stated in a footnote in dicta that the readily ascertainable defense requires actual reliance. Mot. 4-5 (citing 235 Cal. App. 3d at 22 n.9). *Abba Rubber* had no need to resolve the scope of the readily ascertainable defense because it concluded that the challenged preliminary injunction could not stand because the trial court set the amount of the bond (i.e., undertaking) that the prevailing party was required to pay at too low a sum. 235 Cal. App. 3d at 9; *see also id.* at 22 ("An injunction *cannot remain in effect* without an adequate undertaking." (emphasis added)). Although the Court "*also* address[ed] the defendants' contentions concerning the merits … of the injunction" for "the guidance of the trial court and the parties," *id.* at 9 (emphasis added), that portion of the court's opinion was simply "observations and statements unnecessary to the appellate court's resolution of the case" (i.e., dicta), *see Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1158 (2013). And because the language from *Abba Rubber* is non-binding dicta, this Court is required to adopt the rule articulated in cases like *San Jose Construction*. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces" it should be followed unless there is evidence the "highest court of the state would decide otherwise"); *accord Herrera v. Zumiez*, 953 F.3d 1063, 1066 (9th Cir. 2020).[1]

That said, this Court should follow *San Jose Construction* even if the language that Plaintiffs rely upon from *Abba Rubber* were not dicta. This is because the *Abba Rubber* rule is difficult to square with the California legislature's articulation of the doctrine. The Legislature used the term "readily ascertain*able*," after all, which speaks in terms of a possibility of ascertaining information—not whether the information was

---

[1] Plaintiffs also cite the unpublished decision *Global Medical Technologies, Inc. v. Jackson*, 2006 WL 3735581 (Cal. Ct. App. Dec. 20, 2006). Mot. 5; *see also* TW PI Reply Br. at 15 (citing same case). Such decisions are not even citable in California courts, Cal. R. Ct. 8.1115(a), and are thus logically entitled to no weight in this one.

actually ascertain*ed*.   *See* 1 Milgrim on Trade Secrets § 1.07A (2022) ("'Readily ascertainable' is given its ordinary meaning, i.e., 'without much difficulty.'").[2] Moreover, even *Abba Rubber* acknowledges that while the California legislature "delet[ed]" the provision of the proposed Uniform Trade Secrets Act that would have made "not being readily ascertainable by proper means" a "part of the definition of a trade secret," it left the doctrine "'available as a defense.'"  235 Cal. App. 3d at 21, 22 n.9 (quoting Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments)) (emphasis omitted).  Under basic California civil procedure, however, *Abba Rubber's* formulation of the readily ascertainable test "would not constitute an affirmative defense" at all "but rather would be a denial of the improper-means element of the plaintiff's claim."  Judicial Council of California Civil Jury Instructions ("CACI"), 2-4400 CACI 4420 at 1213 (rejecting *Abba Rubber* and adopting the majority rule described above).   An affirmative defense "admits the truth of all the essential allegations of the complaint which show a cause of action, but sets forth facts from which it results that, notwithstanding the truth of the allegations…, no cause of action existed in the plaintiff."  *Goddard v. Fulton*, 21 Cal. 430, 436 (1863).   By contrast, if the defendant's argument "only show[s] that some essential allegation of the complaint is not true, then such facts are not [an affirmative defense] but only a traverse" (*i.e.*, an element of a pleading denying a factual allegation in an opposing party's pleading).  *Id.* To be sure, the CUTSA does not require *a plaintiff* to prove that certain information is not readily ascertainable in order to establish that their purported secret fits "the definition of a trade secret," *True Wearables I*, 2021 WL 2548690, at *3, but the legislature left open the possibility that the *defendant* might make that showing.  Even the law review article that *Abba Rubber* relied upon for its reading of the relevant

---

[2] A later passage of the Milgrim treatise illustrates the difference between a "readily ascertainable" defense (like the one at issue here) and an "independent development" argument (i.e., where the defendant argues that it actually generated the purported secret prior to the misappropriation).  *See* 4 Milgrim on Trade Secrets § 15.01 & n.399.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  legislative history concluded that the legislature had merely modified the plaintiff's
2  burden. *See* Wong, *The Secrets Out: California's Adoption of the Uniform Trade Secret*
3  *Act*, 20 Loyola L. Rev. 1167, 1214 & n.231 (1987) ("the trade secret owner benefits
4  [from the lack of a readily ascertainable requirement] because *he has one less burden to*
5  *meet* in proving a protectable trade secret" (emphasis added)), *cited in Abba Rubber*, 235
6  Cal. App. at 21.

7      Plaintiffs also rely on the Ninth Circuit's decision in *Imax Corp. v. Cinema*
8  *Technologies, Inc.*; they wrongly suggest that its citation to *Abba Rubber* renders that
9  outlier decision binding on this Court. *See* Mot. 4-5 (citing 152 F.3d 1161, 1168 n. 10
10 (9th Cir. 1998)); *see also* TW PI Reply Br. at 15-16 (same). To be clear, *Imax* expressly
11 declined to "address the issue" of whether "the district court misapplied California trade
12 secret law" by finding that the "80 'attributes'" of Imax's large format projectors that
13 allegedly constituted the trade secrets "were all 'available through public means.'" 152
14 F.3d at 1168, n.10. The *Imax* Court did "note" the *Abba Rubber* decision in a footnote
15 but ultimately declined to make any holding regarding the application of California trade
16 secrets law because, at that point, there were no alleged trade secrets left in the case. *Id.*
17 That is because "Imax … [did] not argue on appeal that the 80 'attributes' … —minus
18 their dimensions and tolerances—qualify as trade secrets" and the Ninth Circuit had
19 already affirmed the district court's conclusion that Imax had failed to identify the
20 "dimensions and tolerances" with sufficient particularity to claim them as trade secrets
21 under California law. *Id.* at 1166-1168. Accordingly, the *Imax* footnote addressing the
22 readily ascertainable test is not entitled to precedential effect, as it was "clear[ly] … a
23 statement … made casually and without analysis." *United States v. Johnson*, 256 F.3d
24 895, 915-916 (9th Cir. 2001) (en banc).[3]

25
26 [3] Plaintiffs also cite *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, 2009 WL
   10672947, at \*1-\*2 (C.D. Cal. Aug. 14, 2009), and *Contemporary Servs. Corp. v.*
27 *Landmark Event Staffing*, 677 F. App'x 314, 315 (9th Cir. 2017), but the cited passages
                                                          *(Cont'd on next page)*
28

Wilmer Cutler
Pickering Hale
and Dorr LLP

As proof that *Imax* did not adopt the *Abba Rubber* minority rule, a subsequent panel relied on the majority rule that Apple espouses, holding that the plaintiff company's "customer list was not entitled to legal protection because [its] customers and their information were readily ascertainable through public sources." *A 1 Elecs., Inc. v. Chang*, 342 F. App'x 293, 295 (9th Cir. 2009) (citing *Morlife*, 56 Cal. App. 4th at 1514). While *Chang* is an unpublished decision that is not binding on this Court, it demonstrates that the Ninth Circuit does not view *Imax* as binding circuit law. *Cf. Johnson*, 256 F.3d at 915-916 ("Where … a majority of the panel has focused on the legal issue presented … and made a deliberate decision to resolve the issue, that ruling becomes the law of the circuit and can only be overturned by an *en banc* court or by the Supreme Court.").

Finally, even if the single footnote in *Imax* is not dicta, the additional guidance provided in the twenty-five years since *Imax* issued (i.e., in *San Jose Construction* and California-focused secondary authorities like CACI and Pooley) "calls into question" whether *Imax* accurately reflects how the California Supreme Court would rule on the readily ascertainable defense. *See, e.g.*, *Fremont Reorganizing Corp. v. Federal Ins. Co.*, 2010 WL 444718, at *3 (C.D. Cal. Feb. 1, 2010). Under the circumstances, this Court is permitted to—and should—"find [*San Jose Construction*] controlling" on the question of whether Apple can prevail by showing that it could have ascertained the purported secrets prior to the misappropriation. *Id.*; *cf. Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 (Fed. Cir. Jan. 24, 2022) (stating that *Imax* applied because there was not "a controlling California court decision to the contrary").

---

rely on the (flawed) reasoning of *Abba Rubber*. Moreover, the quoted statements from *Medtronic* were not necessary to the court's holding. 2009 WL 10672947, at *2.

Wilmer Cutler
Pickering Hale
and Dorr LLP

**II.    THE OPINIONS OF APPLE'S EXPERTS THAT THE PURPORTED TRADE SECRETS WERE GENERALLY KNOWN ARE RELEVANT AND WILL AID THE JURY**

For each purported secret, Plaintiffs must show both that the secret (1) "[d]erives independent economic value … from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d).  Nothing in the text of the CUTSA requires a defendant to challenge the plaintiff's "generally known" evidence in a particular way—e.g., by pointing to one specific document that contains the full text of the purported secret.  *Cf. Harris v. Harris*, 935 F.3d 670, 674 (9th Cir. 2019) ("It is not a judge's job to add to or otherwise re-mold statutory text.").

**A.    The Generally Known Opinions Rest On The Correct Legal Standard**

Plaintiffs (incorrectly) contend that California courts have written in an extratextual requirement that a defendant cannot attack a plaintiff's generally known arguments by relying on multiple documents to show that a single secret was known prior to the misappropriation. Mot. 8-9.  Their argument, however, is based on case law concerning "combination" trade secrets.  *Altavion*, 226 Cal. App. 4th at 48; *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006) (considering "a *combination* of transformer characteristics that was optimal and secret" (emphasis added)); *Khoros, LLC v. Lenovo (United States), Inc.*, 2020 WL 12655516, at *5 (N.D. Cal. Oct. 5, 2020) (citing *Altavion* for the proposition that "compilation" and "combination" secrets must be considered as a whole).[4]   A combination trade secret is one "where the elements are in the public domain, but there

---

[4] None of these cases involve *Daubert* challenges or the admissibility of expert testimony.  *Altavion* and *O2 Micro* addressed post-trial motions, where the question was whether there was sufficient evidence to support the finder of fact's verdict of misappropriation.  *See Altavion*, 226 Cal. App. 4th at 48-50; *O2 Micro*, 420 F. Supp. 2d at 1089-1090.  *Khoros* was decided at the 12(b)(6) stage.  2020 WL 12655516, at *5.

Wilmer Cutler
Pickering Hale
and Dorr LLP

has been accomplished an effective, successful and valuable integration of the public domain elements." *Altavion*, 226 Cal. App. 4th at 48.  In the context of a combination trade secret, therefore, the question is whether that "*combination* was a protectable trade secret [because] it was secret and had independent economic value" that "gave the claimant a competitive advantage." *Id.* at 47-48.

Plaintiffs have not pursued a combination trade secrets case in this litigation, much less argued that they are *only* pursuing such an approach.  To take just one example, the Madisetti declaration supporting their motion for partial summary judgment argues that no step of ▮▮▮ Trade Secret Nos. 9-15 is generally known—it says nothing about whether the various steps of the secret are protectable as a combination. *See* Dkt. 1098-8 at ¶¶130-153, 175-187, 194-197, 203-206, 211-214, 218-220, 224-226.  Nothing in *Altavion* or any other case Plaintiffs cite suggests that a defendant is barred from relying on several references to show that all aspects of a trade secret are generally known where the purported secret does not fall into the combination trade secret doctrine.

More broadly, Plaintiffs' suggestion that the purported trade secrets are valuable only when used together as a whole (and accordingly that a component-level analysis is irrelevant) is irreconcilable with Plaintiffs' position on the ownership/possession element of their trade secret claims. *See AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018) (CUTSA plaintiffs must "show [they] owned the trade secret.").  Because Plaintiffs lack evidence that the purported secrets were ever memorialized in one place prior to this litigation, they have by necessity argued merely that they possessed the purported secrets' constituent elements—not the purported secrets as a whole. *See, e.g.*, Dkt. 1098 at 14-16 (Plaintiffs' motion for partial summary judgment); *see also* Dkt. 1128 at 9 (Apple's opposition brief highlighting this point).  If this *were* a combination trade secret case, they would not have been able to make out their own *prima facie* case, as it would be error to "look[] at the components of the

[purported trade secret] 'in isolation, rather than as a whole, in determining that plaintiff ... possess[ed] a trade secret." *Altavion*, 226 Cal. App. 4th at 48 (quoting *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1130 (10th Cir. 2003)).  In any event, an analysis of whether each element of the purported secrets is generally known could only be irrelevant if Plaintiffs concede that every element of their purported secrets was in the public domain, which they have not done.  Unless Plaintiffs waive the argument that their purported secrets are not generally known because of some non-public element(s), evidence that each element of the purported secrets is generally known remains relevant to the jury and necessary for Apple's defense.  In short, Plaintiffs cannot have it both ways:  either an element-by-element analysis of the purported secrets is relevant to determining whether they were generally known *and* if Plaintiffs possessed them, or an element-by-element analysis is irrelevant to both inquiries.

Plaintiffs try to reframe their objection to considering whether components of a purported secret are generally known by accusing Apple's experts of engaging in a "patent-like analysis." Mot. 10.  But neither Apple nor its experts have suggested that "a trade secret [must] be patentably nonobvious or novel." *Id.* at 8 (quoting *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986)).  To the contrary, Apple agrees that the trade secret law does not incorporate the requirements of patentability, and Plaintiffs identify nothing in Apple's experts' reports that suggests otherwise (beyond their element-by-element analysis of the purported secrets, which is addressed above).  Accordingly, Plaintiffs' case law holding that trade secret law does not incorporate the patent law concepts of nonobviousness and novelty are entirely inapposite. *See* Mot 8 (citing *American Can Co. v. Mansukhani*, 728 F.2d 818, 819 (7th Cir. 1982), *Imi-Tech*, 691 F.Supp. 214, *Sinclair v. Aquarius Elecs., Inc.*, 42 Cal. App.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   3d 216, 222 (1974), and *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at

2   *3-4 (N.D. Cal. Jan. 23, 2018)).[5]

3   **B.      The Generally Known Opinions Are Admissible**

4        Plaintiffs offer several critiques of the analyses performed by Majid Sarrafzadeh,

5   Steve Warren, Marco Perez, and Ran Kivetz, Apple's experts who examined Plaintiffs'

6   purported trade secrets.  Many of these criticisms are factually inaccurate, and none

7   justifies exclusion.

8        **1.**      Plaintiffs argue that all four experts should be excluded because they

9   analyze the purported trade secrets on an element-by-element basis, relying on multiple

10  references.  *See* Mot. 9-10, 12-13.  But as explained, nothing in the CUTSA or any of

11  the case law Plaintiffs have identified bars this approach.  *See supra* pp. 10-12.  To the

12  contrary, this Court's ultimate ruling in *True Wearables* both (1) broke one of Plaintiffs'

13  purported secrets into discrete "elements" when conducting the generally known

14  analysis and (2) concluded that a different purported secret was generally known based

15  on *two* separate references.  *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396,

16  at *10, *12 (C.D. Cal. Nov. 7, 2022) ("*True Wearables III*").

17       Moreover, Plaintiffs are simply wrong when they assert that Perez and Kivetz

18  went element-by-element or relied on multiple references to establish that a single

19  purported secret was generally known.  Mot. 12-13.[6]  Both experts approached the

20  purported secrets in the same, logical way:  (1) They quoted the secret, (2) they explained

21

22  _____

23  [5] In addition, *Sinclair*'s, *Imi-Tech*'s, and *Bladeroom*'s reference to "novel[ty]" and "anticipat[ion]," Mot. 8, are irrelevant to whether a defendant can rely on *multiple* references.  The anticipation (or novelty) doctrine "requires the presence in *a single prior art disclosure* of all elements of the claimed invention."  *Therasense, Inc. v. Becton Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (emphasis added).

24

25  [6] Plaintiffs are also wrong to suggest (1) Warren failed to identify any single reference showing ▇ Nos. 5 and 7 are generally known, *see* Dkt. 1121-2 at 1178-1263 ¶¶145, 150-155; *id*; ¶¶241-248, and (2) Sarrafzadeh failed to identify any single reference establishing that ▇ Nos. 10, 13, and 15 are generally known, Ex. 1 ¶¶179-185, 187-18, 191, 194-195 197-198, 202-204, 206, 223, 226, 236, 238.

26

27

28

what they believed it encompassed, and (3) they provided examples of where publicly available documents described—or publicly available products and marketing campaigns embodied—each purported secret.  While both experts in some cases used multiple documents related to the same product (for example, for an ████████████ ████, Kivetz cited numerous documents that discussed the company's marketing strategy, *infra* pp. 14-15), Plaintiffs have not identified a case that comes close to stating that a purported secret must be listed on a single 8.5x11 piece of paper in order for it to be "generally known."   If that were the standard, they could not possibly establish possession.  *See supra* pp. 11-12.

As an example, for ████ No. 1 █████████████████████████████████ ██████████████████████████████████████████████████, (Ex. 6 ¶42), provided his best understanding as a clinician of what the secret encompasses, (*id.* ¶¶43-44), and then identified specific examples where the secret "has been used in the healthcare industry … before 2013," *id.* ¶¶44-60 (discussing, *inter alia*, ██████████████ ████████████████████████████████████████████████████████████████ Plaintiffs' assertion (at 13) that Perez ██████████████████████████████ and ██████████████████████████████ of ████ No. 1 is particularly unfounded—Perez explained in paragraphs 43-44 of his report what he understood ████ No. 1 to mean (i.e., ████████████████████████████████████████████████████████████████ ████████████████████████████████) and then spent paragraphs 45-60 identifying specific examples that embodied ████ No. 1 as a whole.

Kivetz similarly quoted ████ No. 1 in full, (Ex. 8 ¶26), provided his best understanding as a marketing expert of what the secret encompasses, (*id.* ¶27), and then provided specific examples where the secret had been used before 2013, *e.g.*, *id.* ¶100 (noting that ████ No. 1 is █████████████████████████████████████████████); *see also id.* ¶¶144-153 & n.368 (███████████████████ embodies B&M No. 1 in full); *id.* ¶¶161-162 (same with ███████████████████████████); *id.* ¶¶164-165 (same

with ▇▇▇▇▇▇▇▇▇▇▇).  Plaintiffs' implicit suggestion (at 13) that Kivetz's analysis *only* considers "aspects" of each purported secret fails to credit paragraphs 144-165.  Plaintiffs' argument (at 13) that Kivetz's report ignores the "▇▇▇▇▇▇▇▇" aspect of ▇▇▇ No. 1 overlooks his deposition testimony, where he explained in response to that very assertion that paragraphs 149-152 addressed the issue.  Ex. 10 at 744.

Finally, Plaintiffs' assertion (at 13) that Kivetz could not "identify a single source disclosing any" purported secret is flat wrong.  Kivetz testified that his report provided "*multiple* such examples" (including the ▇▇▇▇▇▇▇ product).  Ex. 10 at 753:18-22 (emphasis added).  Moreover, because Plaintiffs' counsel asked the relevant question with only three minutes left on a 14-hour clock, counsel acknowledged that they had not given Kivetz sufficient time to review his reports and answer their question in full.  *Id.* at 759:5-7.

**2.** Plaintiffs also argue that Apple's experts are unreliable because they have failed to show "any portion of the industry knows of the sources they cite."  Mot. 10-11, 12-13.  That argument is a red herring.  The extent to which a particular publication is sufficiently well known to render the related alleged secret generally known is a question of fact for the jury, and Apple's experts never suggest that information is *necessarily* "'generally known to people who could obtain economic value from [it]'" "merely because" the information is reflected in "documents [that] [we]re 'published.'"  Mot. 10.  Neither the *True Wearables* decisions nor any other authority Plaintiffs cite suggests that a generally known opinion is inadmissible as a matter of law because it considers published materials.  To the contrary, this Court's decision in *True Wearables III* relied on three "publications" in finding that one of Plaintiffs' purported secrets was generally known—apparently without any analysis of the precise reach of those publications.  2022 WL 17083396, at *12-13.

In any event, Sarrafzadeh and Warren primarily rely on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *see, e.g.*, Ex. 1 ¶¶57-246, Ex. 3 ¶¶128, 131, 133-137, 139-140, 144-

154, 157-169, 171-173, 176-182, 189-195, 211-218 (LP-4); *id.* ¶¶227, 273-284, 292-298, 304-315, 323-331, 338 (SP-4); Dkt. 1121-2 at 1133-1135 ¶¶76-79 (LP-4); *id.* at 1175-1189 ¶¶142, 145, 150-155 (LP-5), and "[it] is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain," *Stutz Motor Car of Am., Inc. v. Reebok Int'l Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995); *see also Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014) ("[A]n inventor actively practicing in the field and prosecuting his own patent application must be deemed to be on constructive notice of published patent applications in the same field.").  And Perez and Kivetz cite numerous examples of medical products, articles, and publications discussing medical products to demonstrate that a large body of evidence—all from the relevant field—supports that the alleged trade secrets are generally known to people in the industry.  *See* Ex. 6 ¶¶45-58, 66-68, 74-75, 81-89, 96-97, 102-105, 117-121; Ex. 8 at E.1, E.2.  To the extent Plaintiffs believe any particular examples are too esoteric to show that the purported secrets are generally known, (1) Plaintiffs do not identify them (and should not be permitted to do so for the first time on reply) and (2) that goes to weight and should be raised on cross examination.[7]

### C.   The Perez and Kivetz Opinions Should Not Be Excluded For Any Other Reason

Finally, Plaintiffs contend—without citation to any relevant authority—that the Perez and Kivetz opinions should be excluded because their generally known analysis uses words other than Plaintiffs' verbatim recitation of the purported secrets.  *See* Mot. 14-16.  But as their lone citation to *Altavion* reflects (*see* Mot. 16), this argument is yet another way of repackaging their incorrect position that a purported secret is only

---

[7] Plaintiffs also appear (at 12-13) to fault Kivetz for ███████████████████████████████████████████████████  But there is no bright-line answer to that question—it is ultimately a matter for the jury.

Wilmer Cutler
Pickering Hale
and Dorr LLP

"generally known" if there is a single public domain document containing every aspect of their recitation of the purported secret.  Not only is that not the law, *see supra* pp. 10-12, it makes little sense.  Plaintiffs' purported secrets are long and filled with jargon, and many comprise several steps.  *See, e.g.*, Dkt. 1112-1 at 2-3, 6-8 (Apple's motion to exclude Palmatier).  If Perez and Kivetz did not "adequately define" formless terms like

██████████████████████████████████████████

██████ it would result in testimony that amounts only to an "unhelpful tautology" that would have to be excluded as unhelpful.  *Kovary v. Honeywell Int'l, Inc.*, 2014 WL 12564090, at *4 (C.D. Cal. Mar. 17, 2014).  Indeed, this is one of the key problems with Palmatier's report—it does not provide any explanation linking the language of the purported secrets to the evidence supposedly showing that Plaintiffs used those secrets and Apple misappropriated them.  Dkt. 1121-1 at 10-13.

In short, Plaintiffs criticize Apple's experts for examining these purported secrets in ways calculated to aid a jury—i.e., by separately considering discrete concepts and analyzing jargon with comprehensible language.  *See* Mot. 15.  But such "[e]xpert testimony on terms of art, science, or trade is permissible because the specialized meaning of such terms is typically outside the knowledge and experience of the trier of fact, and expert testimony will be helpful to an understanding of such terms."  *Pacific Fuel Co. v. Shell Oil Co.*, 2008 WL 11336467, at *3 (C.D. Cal. Jan. 24, 2008).  By contrast, Plaintiffs would have experts "simply parrot[] [a party's] … documents," and that would "not be helpful to the jury," because it "offers nothing more than what lawyers for the parties can argue."  *Arevalo v. Coloplast Corp.*, 2020 WL 3958505, at *21 (N.D. Fla. July 7, 2020).

## CONCLUSION

Apple respectfully requests that this Court deny Plaintiffs' motion to exclude Apple's experts under Rule 702.

Dated:  January 17, 2023

Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP



By:  */s/ Mark D. Selwyn*
         Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

Wilmer Cutler
Pickering Hale
and Dorr LLP

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple, Inc., Certifies that this brief contains 5,778 words, which:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].


Dated: January 17, 2023                   Respectfully submitted,


                                          MARK D. SELWYN
                                          AMY K. WIGMORE
                                          JOSHUA H. LERNER
                                          SARAH R. FRAZIER
                                          NORA Q.E. PASSAMANECK
                                          THOMAS G. SPRANKLING
                                          WILMER CUTLER PICKERING HALE AND
                                          DORR LLP

                                          BRIAN A. ROSENTHAL
                                          GIBSON, DUNN & CRUTCHER LLP

                                          KENNETH G. PARKER
                                          HAYNES AND BOONE, LLP


                                          By: */s/ Mark D. Selwyn*
                                              Mark D. Selwyn


                                          *Attorneys for Defendant Apple Inc.*