1  MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
      HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
      HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
       amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
       HALE AND DORR LLP
12  1875 Pennsylvania Ave NW
    Washington, DC 20006
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16          **UNITED STATES DISTRICT COURT**
17  **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18

| | |
|---|---|
| 19  MASIMO CORPORATION, a Delaware corporation; and | CASE NO. 8:20-cv-00048-JVS (JDEx) |
| 20  CERCACOR LABORATORIES, INC., a Delaware corporation, | **APPLE'S OPPOSITION TO PLAINTIFFS' CONTINGENT MOTION TO STRIKE AND REQUEST FOR EVIDENTIARY SANCTIONS** |
| 21                     Plaintiffs, | |
| 22          v. | |
| 23  APPLE INC., a California corporation, | Date: Feb. 6, 2023 Time: 1:30pm |
| 24                     Defendant. | |
| 25 | Pre-Trial Conference: Mar. 13, 2023 Trial: Mar. 28, 2023 |
| 26 | |

27     REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

28

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 3

I.  Plaintiffs Misstate Apple's Position On The Legal Standard For Motions To Strike ........................................................................... 3

II.  Plaintiffs' Request To Strike Should Be Denied ............................ 5

   A.  Plaintiffs' Objections To Points Raised In Apple's Rebuttal Reports Are Meritless ............................................................... 5

      1.  Plaintiffs Did Not Request A "Limitation-By-Limitation" Analysis Of The Contributions Of Plaintiffs' Employees To The Disputed Patents .................................... 5

      2.  Apple's Head Start Opinions Could Not Have Been Provided Earlier And Were Appropriate Expert Testimony ........................... 7

      3.  Warren Acted Properly In Testing Apple Watch To Respond To New Points Raised By Plaintiffs' Experts ................................. 11

      4.  Webster Acted Properly in Providing Opinions Regarding A Potential Apple-Masimo Business Deal To Respond To New Points Raised By Plaintiffs' Expert .................................. 12

   B.  Plaintiffs' Objections To Experts' Use Of Publicly-Available References In Opening Reports Are Meritless ......................... 13

III.  The Court Should Not Impose Sanctions Related To The ▆▆▆▆ ......................... 16

   A.  Apple Did Not Violate The Federal Rules By Failing to Produce The ▆▆▆▆▆▆▆▆▆▆▆▆ ...... 16

   B.  The Late Disclosure Of ▆▆▆▆▆ Was Substantially Justified ................................................. 18

   C.  The Late Disclosure Of ▆▆▆▆▆ Is Harmless .................... 19

   D.  Plaintiffs' Proposed Sanction Would Be Unjust ...................... 21

CONCLUSION .................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

*A. Farber & Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006).........................................................................19

6

7

*Ajaxo, Inc. v. E\*Trade Fin. Corp.*,
  48 Cal. App. 5th 129 (2020) ..................................................................................9

8

9

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
  28 Cal. App. 5th 923 (2018) ..................................................................................8

10

11

*Baker v. SeaWorld Ent., Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. Nov. 18, 2019) ....................................................5

12

13

*C&F Packing Co. v. IBP, Inc.*,
  224 F.3d 1296 (Fed. Cir. 2000) .............................................................................9

14

15

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999) .............................................................................17

16

17

*DataQuill, Ltd. v. Handspring, Inc.*,
  2003 WL 25696445 (N.D. Ill. Dec. 19, 2003) ...................................................14

18

*In re Heritage Bond Litig.*,
  223 F.R.D. 527 (C.D. Cal. 2004).........................................................................21

19

20

*United States v. Int'l Union of Petroleum & Indus. Workers*,
  870 F.2d 1450 (9th Cir. 1989) .............................................................................16

21

22

*Laflamme v. Safeway, Inc.*,
  2010 WL 3522378 (D. Nev. Sept. 2, 2010).........................................................13

23

24

*Lallemand v. Cnty. of Los Angeles*,
  2018 WL 6137135 (C.D. Cal. June 14, 2018)......................................................17

25

26

*Montanez v. Gerber Childrenswear, LLC*,
  2011 WL 13128157 (C.D. Cal. June 6, 2011)......................................................17

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

*NeSmith v. County of San Diego*,
    2022 WL 272011 (S.D. Cal. Jan. 28, 2022) ........................................................13

*Pierce v. Underwood*,
    487 U.S. 552 (1988).......................................................................................10, 18

*R & R Sails*, *Inc. v. Ins. Co. of Penn.*,
    673 F.3d 1240 (9th Cir. 2012) ...............................................................................22

*RMI Ins. Servs., Inc. v. AMCO Ins. Co.*,
    2014 WL 12577123 (C.D. Cal. Aug. 20, 2014) ...........................................16, 17

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
    2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) ...........................................1, 5, 10

*Travelers Indem. Co. of Connecticut v. Walking U Ranch, LLC*,
    2022 WL 1601388 (C.D. Cal. Jan. 11, 2022).....................................................18

*Wolkowitz v. Lerner*,
    2008 WL 1885770 (C.D. Cal. Apr. 21, 2008) ....................................................11

**Statues and Rules**

Fed. R. Civ. P. 26......................................................................................1, 3, 10, 13

Fed. R. Civ. P. 37(c)(1).......................................................................................4, 18

Fed. R. Evid. 702 ..........................................................................................................9

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

# INTRODUCTION

2      Plaintiffs are simply wrong that Apple has argued for an unduly high FRCP 26

3   disclosure requirement—e.g., "that … contention interrogatory responses must contain

4   the same detail as provided by experts."  Dkt. 1121-1 ("Mot.") at 5-6.  As Apple has

5   explained, it is wholly "uncontested" that "an expert should conduct an independent

6   analysis based on his or her own knowledge."  Dkt. 1045-1 at 8.  Apple has

7   successfully moved to strike one basic category of discovery violation:  Plaintiffs'

8   failure to properly disclose new, fully formed damages theories.  *See generally* Dkt.

9   1031 (lost profits/unjust enrichment); Dkt. 1071 (reasonable royalty).[1]  Thus, contrary

10  to Plaintiffs' assertion that they are asking this Court to apply "Apple's approach,"

11  Mot. 1, no aspect of Plaintiffs' omnibus motion to strike resembles Apple's prior

12  motions.

13      Moreover, none of Plaintiffs' requests for sanctions has merit when analyzed

14  under normal FRCP 26 and 37 principles.  The vast majority of Plaintiffs' complaints

15  regarding Apple's purported late disclosure of arguments and facts address points that

16  Apple's experts raised in their *rebuttal* reports in response to points made in Plaintiffs'

17  experts' opening reports.  *See* Mot. 6-11.  But since Plaintiffs' experts have, in

18  Plaintiffs' words, "review[ed] and consider[ed] all the information revealed through

19  fact discovery and then refine[d] and explain[ed] those opinions during expert

20  discovery," *id.* 4-5, this Court's case law provides that "it is proper for [Apple's]

21  experts to utilize their own independent analyses and methodologies to arrive at

22  conclusions that rebut [Plaintiffs'] expert's conclusions."  *TCL Commc'ns Tech.*

23

24

25  _____

[1] Apple has several pending motions on similarly narrow questions.  *See* Dkt. 1079-1

26  (challenging supplemental interrogatory response filed months after close of fact
    discovery); Dkt. 1120-1 (challenging expert report's reliance on materials excluded by

27  this Court); Dkt. 1124-1 (challenging *inter alia* opinions first identified by expert after
    close of expert discovery).

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  *Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *5 (C.D.

2  Cal. Aug. 17, 2016) (Selna, J.).

3       Plaintiffs also criticize Apple's experts (primarily its two non-technical experts)

4  for citing publicly-available documents that were identified for the first time after the

5  close of discovery or in expert reports. Mot. 6-7.  As to the former category of

6  documents, Plaintiffs' statement is highly misleading, as the parties *mutually* agreed to

7  serve final contention interrogatory responses (which include the cited documents)

8  after the formal close of fact discovery—i.e., on September 6, 2022.  *See* Ex. L at 1.

9  And as to the documents first cited in Apple's expert reports, Plaintiffs both

10  dramatically inflate the numbers of new references Apple's experts cited (Plaintiffs

11  admittedly double-count some documents, Dkt. 1122-3 ("Hughes Decl.") ¶43, and

12  count other documents that were offered only to provide background information) and

13  urge a standard that would prevent an expert from conducting independent research—

14  contrary to Plaintiffs' view of the law.

15       Plaintiffs devote the remainder of their brief to an issue that the parties resolved

16  by agreement months ago—█████████████.  During the preparations for his

17  deposition, Apple's counsel learned that █████████████████████

18  ███████████████████████████████████████

19  ███████████████████████████████

20  ███████  Ex. O at 1; Ex. 24; Ex. 38 at 4137-4141.  Promptly after learning this—and

21  approximately two weeks after the close of fact discovery—Apple produced the

22  ███████████.  This production included both ██████████████

23  █████████████████████████████████

24  ████████████████████████████, notwithstanding that Plaintiffs

25  themselves were already aware of those ██████ and had not subpoenaed ███████

26  for their production.  *See* Ex. B at 1 (███████████████████████

27  ██████████████████████████); Ex. 38 at

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

4190.  Apple further agreed to every remedial request Plaintiffs' counsel made in response to the production of the ██████████—including a later deposition date, extra deposition time, and later deadlines for relevant expert reports.  On top of it all, Apple agreed it would not affirmatively rely on the ██████ for any reason.  On September 22, 2022, after extended correspondence, Plaintiffs' counsel "agree[d]" that the relief Apple had provided "resolves the parties' dispute with respect to the ██████████ *See* Ex. N at 1.  Since that agreement was reached approximately four months ago, Plaintiffs have never requested additional relief, never sought additional discovery, and never articulated whether or how they suffer from prejudice.  In short, Apple acted quickly, diligently, and fairly to resolve the ██████ ██████ issue as soon as it arose and did so to Plaintiffs' apparent satisfaction.  Sanctions are not warranted.

## ARGUMENT

### I.   PLAINTIFFS MISSTATE APPLE'S POSITION ON THE LEGAL STANDARD FOR MOTIONS TO STRIKE

Plaintiffs mischaracterize this litigation by trying to draw broad rules from Apple's narrowly-tailored motions. Mot. 3-4, 11-12.  For example, Apple has never argued that "any opinion, theory [or] supporting facts not disclosed during fact discovery" must be struck.  *Id.* 3 (citing Dkt. 956-1).  Rather, Apple successfully moved to exclude specific FRCP 26(a)(2)(C) disclosures by witnesses who testified beyond the bounds of their percipient knowledge and raised (in this Court's words) "previously undisclosed, fully-formed damages theories."  *See* Dkt. 956-1 (brief); Dkt. 1031 at 10-11 (order).[2]

---

[2] This Court has also already rejected Plaintiffs' assertion (Mot. 4) that their interrogatory responses "disclosed that Masimo would rely on the ██████████ to prove damages."  *See* Dkt. 1031 at 9.

Similarly, Apple has never asserted that "theories disclosed during fact discovery should be excluded if experts provide additional detail in their reports." Mot. 3 (citing Dkt. 1013-1). That notion would conflate fact and expert discovery, and confuse their distinct purposes. Instead, Apple successfully challenged Plaintiffs' failure to timely identify █████████████████ on which their expert relied in determining Plaintiffs were entitled to up to ████████ in royalties. Dkt. 1013-1 (brief); Dkt. 1071 at 5 (order). As this Court summarized, Plaintiffs erred by "at a minimum" failing "████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████" Dkt. 1071 at 5 (emphasis added). Apple never suggested that Plaintiffs needed to disclose their expert's opinions about those ████████████ during fact discovery.

In sum, there is no basis for Plaintiffs' (unsupported) assertion that Apple has argued that "contention interrogatory responses must contain the same detail as provided by the experts." Mot. 5-6. To the contrary, Apple has agreed that it is uncontested "that an expert should conduct an independent analysis based on his or her own knowledge" and has made clear that a party is not "required to pick" the materials upon which their expert will rely. Dkt. 1045-1 at 8-9. FRCP 37(c)(1) only has teeth in narrower situations—e.g., where an expert advances a broad new legal theory, *see supra* p. 3, or the party fails to provide "'discovery of all materials provided to the expert by the attorney,'" Dkt. 1045-1 at 9. As explained in the following sections, neither situation is at issue here—nor have Plaintiffs identified a single case granting a comparable motion to strike.[3]

_____

[3] Plaintiffs complain (Mot. 4) that Apple did not provide them with information regarding Apple's January 9, 2023 motion. Apple told Plaintiffs it would be moving to strike the new material first disclosed (i.e., not raised in fact or expert discovery) in the declarations attached to Plaintiffs' December 19, 2022 summary judgment motion. Plaintiffs provided no more explanation regarding the target of this motion.

APPLE'S OPP. TO PLAINTIFFS' CONTINGENT MOT. TO STRIKE
4
CASE NO. 8:20-cv-00048-JVS (JDEx)

1   **II.    PLAINTIFFS' REQUEST TO STRIKE SHOULD BE DENIED**

2        **A.    Plaintiffs' Objections To Points Raised In Apple's Rebuttal Reports**

3          **Are Meritless**

4        While an expert's rebuttal report must "be on the 'same subject matter'" as the

5   initial report, nothing in the Federal Rules "prohibits offering independent opinions or

6   utilizing other methodologies." *TCL*, 2016 WL 7042085, at *4.  For example,

7   "[r]ebuttal expert reports may respond to 'new unforeseen facts brought out in the

8   other side's case'" and "[c]ourts 'have permitted additional data to be used in a rebuttal

9   report so long as it is of the same subject matter.'" *Baker v. SeaWorld Ent., Inc.*, 423

10  F. Supp. 3d 878, 896 (S.D. Cal. Nov. 18, 2019).

11       **1.    Plaintiffs Did Not Request A "Limitation-By-Limitation"**

12         **Analysis Of The Contributions Of *Plaintiffs'* Employees To The**

13         **Disputed Patents**

14       Plaintiffs are wrong that Apple experts Warren's and Sarrafzadeh's rebuttal

15  reports provided a "limitation-by-limitation" analysis on inventorship that Apple

16  purportedly "refused" to provide in response to Plaintiffs' Interrogatory No. 14.  Mot.

17  1-2, 6-7.  In reality, both experts properly responded to Madisetti's opinions on an issue

18  not implicated by that interrogatory (or any other).

19       Specifically, Plaintiffs seek correction of inventorship for several Apple patents

20  on the grounds that certain of their employees should be ***added*** as inventors.  Dkt. 296-

21  1 ¶¶268-309.  Plaintiffs have not alleged that the Apple inventors currently listed were

22  improperly named as inventors. *See, e.g., id.* ¶274 (seeking "to correct the inventorship"

23  "by *adding* [Plaintiffs' employee] as a named inventor").  Plaintiffs nonetheless served

24  Interrogatory No. 14, which (in Plaintiffs' words) asked Apple to identify the facts and

25  evidence to support the "contention that the named Apple inventors are the true inventors

26  of the subject matter of the disputed Apple patents."  Ex. 9 at 576 (Special Master

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   briefing); *see also* Ex. 3 at 68 (interrogatory).[4]  In response to Plaintiffs' subsequent

2   motion to compel a "limitation-by-limitation" response to Interrogatory No. 14, Apple

3   explained that because Plaintiffs have failed to argue that any named inventor is

4   improperly named, it was unnecessary for Apple to present evidence showing the

5   "named inventors' contributions" on such a granular basis.  Ex. 10 at 581, 583-584; *see*

6   *also id.* at 583 (Apple has no "burden" to justify its named inventors in light of case law

7   holding that "[p]atent issuance creates a presumption that the named inventors are the

8   true and only inventors").

9          Madisetti's opening report was consistent with the allegations of the operative

10  Complaint—it argued that some of Plaintiffs' employees should be added as inventors,

11  Ex. G ¶¶848, 856, 880, 926, 965, 1002, 1023, 1060, but offered no opinion that Apple's

12  employees were improperly named, *id.* ¶849 (Madisetti noting he had not "███████

13  ██████" on the issue).  Warren and Sarrafzadeh accordingly offered opinions rebutting

14  Madisetti's position about Plaintiffs' employees.  Ex. 12 ¶¶434-696; Ex. 11 ¶¶547-749.

15         Plaintiffs are thus wrong to assert (Mot. 7) that the Warren and Sarrafzadeh

16  rebuttal reports contain "the limitation-by-limitation opinions and theories that Apple

17  refused to provide during fact discovery" and that Plaintiffs sought in front of the Special

18  Master.  Warren's report, for example, responded to Madisetti's opinion that ***Plaintiffs'***

19  ***employees*** should be named as inventors—information Interrogatory No. 14 did not

20  seek.  *Compare* Ex. 3 at 68 (interrogatory) *with, e.g.*, Ex. 12 ¶440 ("████████████

21  ████████████████████████████████████████████████████████████

22  █████████████████████").  Each of the challenged paragraphs (*see* Ex. 12 ¶¶38-449,

23  456-463, 473-565, 584-689) addresses why Plaintiffs' employees are not inventors;

24  none addresses why the named inventors are.  Where Warren does address the

---

26  [4] In contrast, Apple's Interrogatory No. 4 asked Plaintiffs to identify the factual bases

27  for their claim that ***Plaintiffs' employees*** should be added as named inventors to each
    patent.  Ex. 7 at 242 (interrogatory; Ex. 9 at 576 (Plaintiffs' Special Master briefing).

1    contributions of the named inventors, he does not provide a "limitation-by-limitation"

2    analysis, but instead relies on Apple's response to Interrogatory No. 14. *Compare, e.g.*,

3    Ex. 12 ¶¶449-451 ('052 patent), *with* Ex. 3 at 142-146; *see also* Ex. 12 ¶¶464 ('670

4    Patent); *id.* ¶¶566-575 ('997 patent); *id.* ¶¶690-696 ('671 patent).

5         Sarrafzadeh's report is the same story.  In each challenged paragraph, Sarrafzadeh

6    rebuts Madisetti's opinions that Plaintiffs' employees should be inventors.  *See* Ex. 11

7    ¶¶562-584, 603-687, 706-745.  And in addressing Apple's contributions, Sarrafzadeh

8    provides no "limitation-by-limitation" analysis, but instead cites to Apple's response to

9    Interrogatory No. 14.  Ex. 11 ¶¶585-590 ('754 patent); *id.* ¶¶688-692 ('095 patent); *id.*

10   ¶¶746-749 ('390 patent); *see also* Ex. 3 at 150-154, 156-160 (interrogatory response).

11        At a minimum, Apple's failure to provide a limitation-by-limitation analysis of

12   Plaintiffs' employees' contributions in Interrogatory No. 14 was substantially justified

13   or at least harmless.  Plaintiffs' Interrogatory No. 14 sought information related to the

14   contributions of Apple's employees, and Plaintiffs have identified no other discovery

15   request they claim is relevant.  There was thus no requirement for Apple to respond as

16   to the contributions of Plaintiffs' employees—a question that Plaintiffs did not ask.  By

17   the same token, Plaintiffs cannot reasonably claim to be harmed by Apple's failure to

18   disclose fine-grain information they did not request about the contributions of Plaintiffs'

19   employees.  In any event, that information should be solely within their possession, and

20   to the extent Plaintiffs needed that information, they had the opportunity to question Drs.

21   Warren and Sarrafzadeh regarding their rebuttal opinions during their depositions—they

22   chose not to do so.  Exs. C-F.

## 2.    Apple's Head Start Opinions Could Not Have Been Provided Earlier And Were Appropriate Expert Testimony

25        It was appropriate for Apple's experts to provide further details about Apple's

26   head start damages arguments (i.e., assuming misappropriation, the amount of time it

27   would have taken for Apple to obtain the purported secret through proper means) for

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

the first time in their rebuttal reports.  In fact, based on how Plaintiffs litigated this case, there was no other option.

Plaintiffs have the burden to show damages.  *E.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923, 942 (2018).  Apple's Interrogatory No. 17 accordingly sought "all factual and legal bases for" Plaintiffs' damages contentions.  Ex. 1 at 12.  In response, Plaintiffs stated, *inter alia*, that Apple had

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

Accordingly, when Plaintiffs later sought Apple's "contentions concerning Plaintiffs' damages," Apple noted both that (1) ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████    Ex. 3 at

167-168, 180.  Nevertheless, Apple ████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

*Id.* at 180.[5]

Plaintiffs' strategic decision to provide no information about their head start arguments left Apple unable to provide a more detailed rebuttal in its interrogatory

_____

[5] Plaintiffs' suggestion (Mot. 8) that Apple supplemented its response to add this language *after* the close of fact discovery is misleading at best, given that the parties mutually agreed to a short extension of the deadline.  *See infra* p. 14.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  responses.  The Federal Rules "clearly" do not require "the party answering an
2  interrogatory" to "guess," as Apple would have been required to do here.  *See* 8B
3  Wright & Miller, *Federal Practice and Procedure* § 2167 (Apr. 2022).  And Apple's
4  employees could not have provided a detailed explanation for how long it would take
5  to develop or reverse engineer the purported secrets without more information.
6  Plaintiffs have classified their purported secrets as "Attorneys' Eyes Only" material,
7  meaning that no Apple employee—not even in-house counsel—has been permitted to
8  review them.  *See* Dkt. 93 at 4, 6.  Plaintiffs cannot reasonably deny Apple's
9  employees the opportunity to review their supposed secrets *and* expect those same
10  employees to provide a thorough response on how long it would take Apple to develop
11  them.
12         In any event, even if Plaintiffs had provided some insight into their head start
13  arguments during fact discovery, it was entirely proper for Apple's experts to offer
14  detailed opinions in their reports.  Such positions are routinely introduced through
15  expert testimony.  *See Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 189
16  n.22 (2020) (discussing expert testimony on the head start issue); *C&F Packing Co. v.*
17  *IBP, Inc.*, 224 F.3d 1296, 1304 (Fed. Cir. 2000) (same).  This is for good reason.
18  Explaining how long it would take a defendant to independently develop a purported
19  secret requires a deep knowledge of the underlying subject matter of the secret—
20  precisely the kind of "specialized" opinion that FRE 702 contemplates an expert will
21  provide.  Here, for example, with respect to the ███████████████████████
22  ████████████████████████████████████████████████████
23  ████████████████████████████████████████████
24  █████████████      Ex. G §§VIII.C.1.(b); VIII.C.3.(b); VIII.C.4.(b); VIII.C.5.(b);
25  VIII.C.6.(b); VIII.C.7.(b); VIII.C.8.(b); VIII.C.9.(b); VIII.C.10.(b); VIII.C.11.(b);
26  VIII.D.1.(b); VIII.D.2.(b); VIII.D.4.(b); VIII.D.5.(b); VIII.E.1.(b); VIII.E.2.(b);
27  VIII.E.3.(b).  In the passages Plaintiffs cite, Apple's technical experts Warren and
28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   Sarrafzadeh used Madisetti's development evidence to ██████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ██████. *See* Mot. 9 (collecting the relevant paragraphs from Warren's and

5   Sarrafzadeh's reports); *see TCL*, 2016 WL 7042085, at *4 ("[O]ffering a different,

6   purportedly better methodology is a proper way to rebut the methodology of someone

7   else.").  As for Kivetz, in the passages Plaintiffs cite, he offered his opinions about ███

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10   ██████████████████████████████████  Mot. 9 (collecting the relevant

11   paragraphs from Kivetz's report).

12          Finally, even if Plaintiffs could show that Apple had violated FRCP 26 (it has

13   not), Apple's actions were at least substantially justified or harmless.  As to the former,

14   given that Plaintiffs failed to provide Apple with any head-start-related information

15   during fact discovery, at a minimum, "[r]easonable people could differ" as to whether

16   Apple had an obligation to lay out a response to an argument that Plaintiffs have yet to

17   make. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (defining the term

18   "substantially justified").  That is particularly so given that Plaintiffs have not

19   identified a single case establishing a violation of FRCP 26(e) under similar

20   circumstances.

21          As to the latter (harmlessness), Plaintiffs do not dispute that they had a full

22   opportunity to depose each of Apple's experts on their head-start opinions.  And while

23   Plaintiffs are not required to show prejudice, it is telling that they failed to object to the

24   head-start theories in any way until over 8 weeks after the reports were served—i.e.,

25   during the meet-and-confer for the instant motion.  Had Plaintiffs believed additional

26   discovery was needed, they presumably would have moved more quickly.

27

28

### 3.     Warren Acted Properly In Testing Apple Watch To Respond To New Points Raised By Plaintiffs' Experts

Apple technical expert, Warren, acted properly in directing certain testing on Apple Watch so that he could respond to opinions of Plaintiffs' experts Madisetti and Kinrich.  Specifically, Madisetti opined in his opening report that ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████   Given that this analysis addressed the same "subject matter" as Madisetti and Kinrich's opening reports—specifically, the performance, benefit, and value of ███████—it is an appropriate rebuttal.  *See supra* p. 5.

It was also entirely proper for ████████████████████████████████

██████████████████████████████████████████████████████, *see* Ex. 12 ¶¶718-719, without Apple first disclosing the employee in an interrogatory response, or providing a declaration or expert disclosure.  Apple had no way of knowing until Madisetti's report that the testing would be necessary, and in any event, a party is not required to identify such assistants in an interrogatory response or expert disclosure.  *See, e.g.*, *Wolkowitz v. Lerner,* 2008 WL 1885770, at *4 (C.D. Cal. Apr. 21, 2008) ("[A]n expert may use assistants in performing his work, so long as those assistants do not exercise professional judgment that is beyond the expert's ken.").

Wilmer Cutler
Pickering Hale
and Dorr LLP

At a minimum, Apple's actions were substantially justified or harmless.  As to the former, Plaintiffs concede the testing protocol Warren followed could "be routine under a normal expert discovery approach," Mot. 10, and Plaintiffs have not identified any way that Apple's prior motions have advocated for a standard that deviates from that "normal" approach, *see supra* pp. 3-4.  And as to the latter (harmlessness), Plaintiffs deposed Warren on both ▮▮▮▮▮ assistance and Warren's Apple Watch testing, Ex. E at 17-18, 19-53; Ex. F at 571-608, and Warren's methodology for the testing was fully explained in his report, Ex. 12 ¶¶718-726.  Upon Plaintiffs' request, Apple also promptly provided Plaintiffs with additional information regarding ▮▮▮▮▮▮ ▮▮▮▮  Ex. P at 1.  And again, that Plaintiffs raised not even an inkling of concern about Warren's testing until the meet and confer on January 2—more than 8 weeks after he submitted his report—further vitiates their suggestion that they suffered any prejudice.

### 4.     Webster Acted Properly in Providing Opinions Regarding A Potential Apple-Masimo Business Deal To Respond To New Points Raised By Plaintiffs' Expert

Apple damages expert Webster acted properly when she stated in her rebuttal report—as part of her response to Kinrich's lost profits opinion—that it is not reasonable to assume Apple would have ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮.[6]

*First*, this Court has already held that Plaintiffs' "▮▮▮▮" lost profits theory was not raised until expert discovery.  *See* Dkt. 1031 at 9 ("▮▮▮▮▮▮ ▮▮▮▮▮▮▮ … [is] a fully formed damages theory that should have been disclosed before the close of fact discovery.").

---

[6] While Webster's opinion is applicable to Plaintiffs' lost profits, unjust enrichment, and reasonable royalty theories, Ex. 17 at 2811, Plaintiffs have only asked this Court to strike the opinion as it relates to lost profits, Mot. 10.  They should not be permitted to change positions on reply.

1    Accordingly, Apple could not have provided its positions during fact discovery;

2    Webster's rebuttal report was the first opportunity.  In any event, by going through the

3    various reasons why Plaintiffs' assumptions about ███████████████████████

4    ████████████████████████ ) are flawed, Webster did what a rebuttal expert

5    is supposed to do—"address the initial expert's assertions by questioning their

6    assumptions and methods." *Laflamme v. Safeway, Inc.*, 2010 WL 3522378, at *3 (D.

7    Nev. Sept. 2, 2010).

8            Plaintiffs also complain Webster's opinion relied in part on an interview with an

9    Apple employee who did not file an FRCP 26(a)(2) disclosure.  Mot. 10.  But because

10   ████████ provided the same kind of factual information that a lay witness would offer

11   on the stand—here, regarding Apple's historical "████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████, Ex. 17 at 2816—he was not serving as an expert,

14   *see NeSmith v. County of San Diego*, 2022 WL 272011, at *17 (S.D. Cal. Jan. 28,

15   2022).[7]  In any event, Plaintiffs have made their motion to strike "conditional" on

16   whether this Court grants Apple's pending motions.  Mot. 1.  If this Court grants

17   Apple's motion to strike the requested portions of Kinrich's opening and supplemental

18   reports and prevents Plaintiffs from offering their ████████████, Dkt. 1120-1, this

19   dispute will be moot, and Webster's rebuttal on this issue will thus be unnecessary.

20       **B.    Plaintiffs' Objections To Experts' Use Of Publicly-Available**

21               **References In Opening Reports Are Meritless**

22           As discussed, there is no conflict between (1) Apple's position in prior motions

23   to strike and (2) the case law Plaintiffs cite in their brief for the proposition that

24   _____

25   [7] Plaintiffs once again (Mot. 10) mischaracterize Apple's motion to strike their
     witnesses' FRCP 26(a)(2)(C) disclosures.  Apple's position, which this Court adopted,
26   was merely that a witness who intends to testify beyond the bounds of their percipient
     knowledge must file a full report under FRCP 26(a)(2)(B)—not that every party
27   employee who testifies must do so as an expert.  *See* Dkt. 1031 at 2, 4-5.

28

"experts [should] conduct independent analyses and not serve as mere mouthpieces for attorneys," and provide opinions "developed through the expert's own knowledge, skills, and investigation."  Mot. 5; *supra* pp.  3-4.  Under Plaintiffs' case law, it was entirely proper for Apple's experts to (1) conduct their own analyses as to whether the alleged trade secrets are generally known and/or reasonably ascertainable and (2) cite to new (and publicly available) references the experts discovered along the way.  Mot. 5; *see also, e.g.*, *DataQuill, Ltd. v. Handspring, Inc.*, 2003 WL 25696445, at *1 (N.D. Ill. Dec. 19, 2003) (denying motion to exclude expert report that relied upon several prior art references not identified in contention interrogatory responses).

Plaintiffs' primary complaint is that Apple's experts were *too* independent—i.e., that they cited too many documents Apple did not disclose during fact discovery. Plaintiffs have cited no case law granting a motion to strike under such circumstances and, in any event, Plaintiffs' numbers are artificially inflated.  *First*, Plaintiffs mislead by saying Apple identified ███████████ "three weeks" after the close of fact discovery (i.e., on September 6, 2022).  To be clear, the parties mutually agreed to extend the deadline to supplement interrogatory responses to that day and Plaintiffs themselves ultimately served *17* supplemental responses that day totaling more than 330 pages.  *See* Ex. L at 1 (Knobbe attorney "agree[ing] that both parties can supplement interrogatory responses on September 6 instead of August 26.").

*Second*, Plaintiffs admittedly double (or triple or quadruple) counted references that were cited by Apple's expert whenever the expert applied the reference to more than one purported secret.  *See* Hughes Decl. ¶43; *see also, e.g.*, Dkt. 1121-12 at 5-7 (counting the ████████████████████ four times).  This is a frequent occurrence since many of Plaintiffs' purported secrets build from a common base, *see, e.g.*, Dkt. 1128-1 at 6 (noting ███ Nos. 11-15 are all variations of ███ No. 10); Dkt. 1101 at 10 (all purported ███ secrets encompass ███ No. 1, 6 or both).  Plaintiffs also ignore that dozens of references cited by Apple's experts were simply

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    background.  *See, e.g.*, Ex. 14 (Kivetz Report) ¶59 n.119 (citing to the definition of a

2    "business plan").

3            *Third*, the vast majority of the references that were disclosed for the first time in

4    expert discovery appear in the reports of Apple's experts for the purported ██████

5    █████████████████████████ secrets.  Plaintiffs claim that a little over a dozen

6    references were cited for the first time in the reports issued by Apple's technical

7    experts—and even that short list counts the same documents multiple times.  *See* Dkt.

8    1121-12 at 1-7 (citing ███████████████ four times, ███████████ three times, and

9    a ██████████████████ twice).

10           Plaintiffs also (wrongly) contend that Apple's experts Kivetz and Perez raised

11   "new" theories in their reports.  Mot. 8.  For example, Plaintiffs urge that Kivetz

12   argued for the first time that Plaintiffs' ████████████████████████████████

13   ██████████████████████████████████████████

14   ██████████████████████████████████████████████

15   ██████████████████████████████████████████████

16   ██████████████████████████████████████████████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   █████████████████████████████████████████

20   █████████████████████████████████████████

21   ███████████████████████████████████████████████

22   ██████████████████████████████████

23           At a minimum, that Apple did not anticipatorily disclose every document and

24   specific example cited by its experts is harmless.  Plaintiffs were able to file a rebuttal

25   report totaling 279 pages in response to Kivetz and Perez and had a full opportunity to

26   depose each of Apple's experts (for fourteen hours each) on the substance of their

27   reports.  And, once again, Plaintiffs did not raise these purported issues with Apple's

28

1   expert reports—including Kivetz's and Perez's opening reports, which were filed in

2   September—until earlier this month, strongly undercutting any suggestion of

3   prejudice.

4   **III.    THE COURT SHOULD NOT IMPOSE SANCTIONS RELATED TO THE** ██████

5   ██████

6       **A.    Apple Did Not Violate The Federal Rules By Failing To Produce The**

7   ████████████████████████████████████████

8       Plaintiffs wrongly assert Apple had "possession, custody or control" over all the

9   ██████████████, Mot. 17-18, a question on which they (as the party seeking

10  production) bear the burden of proof, *United States v. Int'l Union of Petroleum & Indus.*

11  *Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

12       While Apple has acknowledged it had constructive control over Apple-related

13  content in the ███████████████ while employed by Apple, *e.g.*, Ex. 36 at

14  4114, Apple did not have any form of control over the ███████████ produced

15  before he became an Apple employee.   The ███████ containing information that

16  exclusively pre-date ██████ employment at Apple were never stored within Apple

17  facilities, they were never accessed or reviewed by anyone at Apple other than ██████

18  himself (or by ██████ for any purpose related to his Apple employment), and they do

19  not contain Apple proprietary information. *See, e.g.*, *id.*; Ex. 38 at 4137; Ex. 31 at 3729.

20       To be sure, Plaintiffs have argued a "party may be deemed in control of a

21  document if it has the legal right to obtain it from a third party upon demand," Mot. at

22  17.  But that rule does not apply to the pre-Apple ██████ which "cannot be described

23  as [Apple's] documents." *RMI Ins. Servs., Inc. v. AMCO Ins. Co.*, 2014 WL 12577123,

24  at *3 (C.D. Cal. Aug. 20, 2014).   To the contrary, ████████████████████

25  ██████████████████████████████████████████

26  ██████████████████████████████████████████

27  ██████████████████████████████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP



, *id.* (398:10-15, 400:2-7); *see also* Ex. B

. Apple collected and provided

At Plaintiffs' request (and again, with              permission), Apple promptly sent them the original copies of those              in mid-September 2022.   Ex. 31 at 3730.   And while Apple's outside counsel has temporarily

, it has done so due to Plaintiffs' express request.   *Compare* Mot. 15, 17

To the extent Plaintiffs are arguing Apple had "theoretical control" over the pre-Apple              because              is a current employee, that is "insufficient" to find that Apple had a discovery obligation. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).  Apple's "mere 'practical' ability to obtain the documents" from a non-party does not establish possession, custody, or control. *Lallemand v. Cnty. of Los Angeles*, 2018 WL 6137135, at *4 (C.D. Cal. June 14, 2018).  Rather, courts in this District have denied motions to compel when "plaintiffs have demonstrated that defendant 'could' obtain [documents] through [a non-party], [but] plaintiffs have failed to demonstrate that defendant has a legal right to obtain such information from the [non-party]." *Montanez v. Gerber Childrenswear, LLC*, 2011 WL 13128157, at *2 (C.D. Cal. June 6, 2011); *see also, e.g.*, *RMI Ins. Servs., Inc.*, 2014 WL 12577123, at *3.  In any event, as discussed below, Apple produced all              promptly after they were identified.

**B.    The Late Disclosure Of ████████████ Was Substantially Justified**

"There is no bright line standard for 'substantial justification,' and courts must use discretion when deciding whether to impose sanctions under Rule 37." *Travelers Indem. Co. of Connecticut v. Walking U Ranch, LLC*, 2022 WL 1601388, at *2 (C.D. Cal. Jan. 11, 2022). However, as noted, the Supreme Court has explained that an action is substantially justified if there is a 'genuine dispute,' … or if reasonable people could differ as to the appropriateness of the contested action." *Pierce*, 487 U.S. at 565.

Here, Apple did not engage in intentional concealment, negligence, or gamesmanship. To the contrary, once Apple's counsel learned about the existence and potential relevance of the ████████ they were collected and produced as quickly as possible. Under the circumstances, Apple was substantially justified in belatedly disclosing the ████████ wrote as an Apple employee.

Plaintiffs accuse Apple of failing to conduct a diligent search once Plaintiffs served the 5 (out of 750) RFPs that they assert implicate ████████████. *See* Mot. 14 (citing Ex. 18 at 61; Ex. 19 at 24; Ex. 20 at 48-50). But the production of ████ ████████████—among hundreds of thousands of documents produced over the course of this case—shortly after the close of fact discovery fails to justify such allegations. Plaintiffs themselves concededly ████████████████████ ████████████████████—and justified the practice by asserting merely that they were "not found during Masimo's previous reasonable searches." Ex. O at 1. The same is true here—Apple responded to the RFPs calling for Apple-related material by agreeing "to produce non-privileged documents responsive to this Request, to the extent such documents exist *and are located after a reasonable search*." Ex. 19 at 3071 (emphasis added); *see also* Ex. 20 at 3098-3099. And Apple did just that: defense counsel conducted a reasonable and diligent search for such documents, which included interviewing custodians like ████████ to identify

18

Wilmer Cutler
Pickering Hale
and Dorr LLP

relevant ESI and hardcopy documents.  Ex. O at 1-3; *see A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006) ("reasonable inquiry" includes "a reasonable procedure to distribute discovery requests to all employees …, and to account for the collection and subsequent production of the information").  As ███████

confirmed at his deposition, Apple "███████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████      *Id.*  Plaintiffs are further wrong to suggest Apple waited to ask

██████  whether he had "Masimo documents."  Mot. 17.  As ██████  confirmed, ███

██████████████████████████████████████████████████████████████████

████████████████████████  Ex. 38 at 4190.  He can hardly be faulted for

this understanding ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

## C.   The Late Disclosure Of ████████████████ Is Harmless

After Apple produced O'Reilly's notebooks in late August, it agreed to *every* form of relief that Plaintiffs requested to address the timing of that production.  As a result, Plaintiffs could use the █████████████████████████, supplement their interrogatories, and allow their experts to fully integrate the ██████ into their reports. Moreover, since Plaintiffs' counsel agreed that Apple's concessions had resolved the issues surrounding ██████ deposition in September 2022, Plaintiffs have not requested *any* further relief from Apple.

*First*, Plaintiffs have already agreed that in light of the relief Apple has already provided, they suffered no prejudice at least with respect to ██████████████.  After the ██████ production, Plaintiffs' counsel asked to ████████████████████████ ████████████████████.  *See* Ex. 37 at 4131.  Apple agreed.  *See id.* at

4130.  Plaintiffs also requested additional deposition time to be used for the ████████ deposition.  *See id.* at 4127.  Apple agreed.  *See id.* at 4121.  In light of Apple's agreement, on September 22, 2022, Plaintiffs' counsel confirmed that "we would agree the proposal … resolves the parties' dispute with respect to the ████████ … deposition." *See* Ex. N at 1.  That same day, ████████ sat for a seven-hour deposition during which Plaintiffs' counsel extensively examined him on ████████.  Ex. 38

  *Second*, Plaintiffs suffered no prejudice with respect to their experts.  Following production of the ████████ Plaintiffs' counsel stated their relevant experts would require additional time to analyze the ████████ and ████████ deposition, so they requested a two-week extension to the deadline for service of their final expert reports. *See* Ex. M at 1.  Apple agreed.  *See id.*  Discussion of the ████████ appears throughout Palmatier's final reports, reflecting that he was able to fully integrate information from them into his analysis of the case.  *See generally* Ex. 32.

  *Finally*, Apple has made other notable concessions that will assist Plaintiffs at trial.  For instance, Apple pledged it would not affirmatively rely on any information in the ████████ Ex. O at 1, something that Plaintiffs themselves refused to do even when producing hundreds of clearly relevant documents after the fact discovery deadline, Ex. I.  And Apple did not object to Plaintiffs' untimely submission of supplemental responses to Apple's interrogatories to account for the ████████ which were served as late as September 29, 2022 (i.e., a week before the relevant expert reports were due). *See* Ex. A.  Although Apple accepts its burden to prove harmlessness, Plaintiffs' inability to articulate in their motion any remaining prejudice is striking.  Plaintiffs have neither identified any "additional discovery" they would have sought related to the ████████ ████████ wrote while employed by Apple nor requested leave from the Court to seek additional discovery, Mot. 19, even though they are asking for precisely that relief in a different, simultaneously filed motion, *see* Dkt. 1108-1.  Nor do they identify what other "Apple witnesses" they would have questioned about these ████████ Mot. 19.  Indeed,

Wilmer Cutler
Pickering Hale
and Dorr LLP

in the approximately four months since Plaintiffs' counsel agreed Apple's concessions "resolve[d] the parties' dispute with respect to the ▮▮▮▮ … deposition," Ex. N at 1, they have never articulated any residual prejudice they suffer from receiving the ▮▮▮▮▮▮▮▮ used after starting work at Apple two weeks late. As Plaintiffs themselves argued after their own late production of an employee's ▮▮▮▮▮ *see supra* p. 18, the opportunity to take "additional discovery" could have "cured" any "supposed prejudice" arising from late disclosure. Ex. J at 2. By the same token, Plaintiffs' "refusal to identify" any additional discovery they would have taken but for the delay in obtaining the ▮▮▮▮ either during the last four months or in their motion, "indicates both that [they] suffered no prejudice and that [they are] unwilling to resolve this issue and [are] interested only in trying to preclude evidence. That is inappropriate." *Id.*

### D.   Plaintiffs' Proposed Sanction Would Be Unjust

Even if sanctions of some kind were appropriate (and they are not), Plaintiffs' proposal, Mot. 19-20, to preclude Apple from mounting *any* defense to Plaintiffs' allegations of use and acquisition of the purported ▮▮▮▮▮ trade secrets is not appropriately tailored. In particular, it would allow Plaintiffs to present an entirely one-sided, and in Apple's view, fictional narrative regarding how Apple began utilizing ▮▮ ▮▮▮▮▮▮▮▮ Plaintiffs claim as secrets. The only case Plaintiffs have identified where a comparable sanction was handed down involved the extreme circumstance where the defendants had (1) "deliberately and willfully failed to produce … documents responsive to multiple discovery requests," (2) "not made any effort at all to obtain documents from all of their past or present agents and employees," and (3) "not substantially complied with [a prior] Court[] Order" mandating disclosure of specific documents. *In re Heritage Bond Litig.*, 223 F.R.D. 527, 533 (C.D. Cal. 2004). Even Plaintiffs do not suggest Apple has behaved in a remotely comparable fashion. To the contrary—far from willfully failing to produce documents—Apple proactively

Wilmer Cutler
Pickering Hale
and Dorr LLP

postponed the ████ deposition and promptly produced the ████ upon learning of their potential relevance.

Moreover, before imposing sanctions of a similar magnitude, the Ninth Circuit has required district courts "to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, … and also to consider the availability of lesser sanctions." *R & R Sails*, *Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (considering whether to dismiss claim).  Here, there is no evidence of willfulness, fault, or bad faith by Apple, which engaged in a disciplined and generally effective document collection effort that initially missed a set of ████████ that, again, were eventually discovered and produced.  There is no need to "deter Apple," because Apple has never "advantageously with[held] key documents."  Mot. 20.  Rather, Apple (like Plaintiffs, *see supra* pp. 18, 21) produced a discrete set of documents after the close of fact discovery and as soon as it became aware of their existence.

## CONCLUSION

Plaintiffs' motion should be denied in its entirety.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Dated:  January 17, 2023            Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP



By:  */s/ Mark D. Selwyn*
       Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple, Inc., Certifies that this brief contains 6,997 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].


Dated:  January 17, 2023                    Respectfully submitted,


                                            MARK D. SELWYN
                                            AMY K. WIGMORE
                                            JOSHUA H. LERNER
                                            SARAH R. FRAZIER
                                            NORA Q.E. PASSAMANECK
                                            THOMAS G. SPRANKLING
                                            WILMER CUTLER PICKERING HALE AND
                                            DORR LLP

                                            BRIAN A. ROSENTHAL
                                            GIBSON, DUNN & CRUTCHER LLP

                                            KENNETH G. PARKER
                                            HAYNES AND BOONE, LLP


                                            By: */s/ Mark D. Selwyn*
                                                Mark D. Selwyn


                                            *Attorneys for Defendant Apple Inc.*