Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT JEFFREY KINRICH**<br><br>Date: Feb. 6, 2023<br>Time: 1:30 pm<br>Place: Courtroom 10C |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION ...................................................................................... 1

II.  BACKGROUND ........................................................................................ 1

A.   Apple ████████████████████ ...................................... 1

B.   Masimo ███████████████████ ...................................... 2

C.   Masimo Disclosed its Theories and Supporting Evidence in Discovery ................................................................................ 4

D.   Kinrich's October Report ............................................................. 6

     1.   Kinrich's Lost Profits Opinion ......................................... 6

     2.   Kinrich's Unjust Enrichment Opinions ........................... 7

E.   The Court's November 22 Order ................................................ 7

F.   Kinrich Supplemented His Report After the Court's Order ................. 8

G.   The Court Denies Apple's *Ex Parte* Application To Strike The Supplement ................................................................................ 9

III. LEGAL STANDARD ................................................................................ 9

IV.  ARGUMENT.............................................................................................. 10

A.   The Court Should Not Strike Kinrich's Opinions............................... 10

     1.   Kinrich's Opinions Are Based on Facts Disclosed to Apple in Discovery—Not Stricken Opinions of Priddell And Muhsin ................................................................. 10

          a.   Masimo's ████████████████████ ████████ .................................................. 11

          b.   Masimo's ██████████ ...................................... 11

          c.   Masimo's ██████████ ...................................... 13

          d.   Apple's ██████████ ...................................... 14

     2.   Apple's Cases Do Not Support Exclusion.............................. 15

     3.   The Court Should Not Strike Kinrich's Supplement................. 15

# TABLE OF CONTENTS
## (*cont'd*)

Page No.

           a.     Courts Routinely Allow Supplements To Respond To Court Orders ............................................................ 15

           b.     The Supplement Was Timely ......................................... 17

           c.     The Supplement Was Substantially Justified And Harmless ........................................................................ 17

    B.     Kinrich's Opinions are Reliably Connected to Apple's Misappropriation ................................................................... 18

V.     CONCLUSION ........................................................................... 22

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*Abarca v. Merck & Co.*,
   2010 WL 4643642 (E.D. Cal. Nov. 9, 2010) ...................................................15

5

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 WL 1322854 (N.D. Cal. Mar. 28, 2014) ..........................................16, 17

6

7

*ATS Prod. Inc. v. Ghiorso*,
   2012 WL 253315 (N.D. Cal. Jan. 26, 2012)...................................................10

8

9

*Becerra v. J.C. Penney Corp., Inc.*,
   2017 WL 1479410 (C.D. Cal. Apr. 24, 2017)...................................................18

10

*BJ Tidwell Industries, Inc. v. Diversified Home Prods., Inc.*,
   2007 WL 3118300 (W.D. Tex., Oct. 19, 2007)...............................................12

11

12

*Bladeroom Grp. Ltd. v. Emerson Elec. Co.*,
   20 F.4th 1231 (9th Cir. 2021) ........................................................................21

13

14

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   2018 WL 1611835 (N.D. Cal. Apr. 3, 2018)...................................................19

15

*Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*,
   2003 WL 23715981 (D. Or. Jan. 21, 2003).....................................................16

16

17

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..............................................................................1, 9, 22

18

*Gaedeke Holdings VII, Ltd. v. Baker*,
   2015 WL 11570978 (W.D. Okla. Nov. 30, 2015)...........................................19

19

20

*International Medical Devices, Inc. v. Cornell*,
   2022 WL 2784806 (C.D. Cal. June 16, 2022).................................................16

21

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)...........................................................................................9

22

23

*Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*,
   1993 WL 317266 (N.D. Cal. Aug. 19, 1993) ..................................................10

24

25

*LivePerson, Inc. v. [24]7.AI, Inc.*,
   2018 WL 6257460 (N.D. Cal. Nov. 30, 2018).................................................21

26

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ................................................19

27

28

1

**TABLE OF AUTHORITIES**
*(cont'd)*

2

3

**Page No(s).**

4

5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   399 F. Supp. 2d 1064 (N.D. Cal. 2005)......................................................20, 21

6

*Orthofix Inc. v. Gordon*,
   2016 WL 1273160 (C.D. Ill. Mar. 1, 2016) .....................................................19

7

8

*R.F.M.A.S., Inc. v. So*,
   748 F.Supp.2d 244 (S.D.N.Y.2010) ...........................................................12, 14

9

*Reinsdorf v. Skechers U.S.A.*,
   922 F. Supp. 2d 866 (C.D. Cal. 2013) ..............................................................17

10

11

*Rojas v. Marko Zainovich, Inc.*,
   2011 WL 4375297 (E.D. Cal. Sept. 19, 2011) .................................................17

12

13

*San Francisco Baykeeper v. City of Sunnyvale*,
   2022 WL 4133299 (N.D. Cal. Sept. 12, 2022)............................................15, 16

14

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ........................................................................14

15

16

*Shell & Slate Software Corp. v. Adobe Sys. Inc.*,
   2004 WL 5486635 (C.D. Cal. Sept. 17, 2004)..................................................21

17

*SolidFX, LLC v. Jeppesen Sanderson, Inc.*,
   2014 WL 983507 (D. Colo. Mar. 13, 2014).......................................................12

18

19

*Spintouch, Inc. v. Outform, Inc.*,
   2022 WL 17363902 (C.D. Cal. Sept. 28, 2022)................................................19

20

21

*Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*,
   2020 WL 7347860 (C.D. Cal. Nov. 18, 2020) ..................................................16

22

23

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   No. CV 18-9536-MWF (ASX), 2021 WL 4913509
   (C.D. Cal. Sept. 8, 2021) ..................................................................................20

24

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   2013 WL 12126773 (C.D. Cal. June 27, 2013).................................................18

25

26

*Tate v. Kaiser Found. Hosps.*,
   2014 WL 176625 (C.D. Cal. Jan. 15, 2014)........................................................9

27

*Tri-Tron Int'l v. Velto*,
   525 F.2d 432 (9th Cir. 1975) .............................................................................10

28

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*United States v. Cazares,*
   788 F.3d 956 (9th Cir. 2015) ................................................9, 14, 15

## OTHER AUTHORITIES

Fed. R. Evid. 702 .................................................................9

Fed. R. Evid. 703 .................................................................9

Rule 26 ........................................................................*passim*

# I.  <u>INTRODUCTION</u>

Apple presumes the Court's Order striking-in-part two Rule 26(a)(2)(C) disclosures prevents Kinrich from relying on underlying ***evidence*** discussed in those disclosures.  But the Court explained it was ***not*** deciding how its Order impacted the opinions of other experts, like Kinrich.  The Court explained the admissibility of such opinions would depend on the "sufficiency of the report and the bases for the opinions."

Kinrich cited to the Rule 26(a)(2)(C) disclosures in his report, but his opinions were not contingent on those witnesses testifying at trial consistent with their disclosure.  Kinrich relied on the evidence discussed in those disclosures.  Kinrich, like any other expert, may rely on evidence even if it is not admitted at trial.  Kinrich's opinions are based on factual evidence on which experts may reasonably rely.  Nevertheless, Kinrich also provided a supplement using the same methodology and analysis as his original report without relying on the underlying evidence that Apple challenged.

Finally, Apple essentially seeks summary judgment on causation through this *Daubert* motion.  But Kinrich does not opine on causation.  Kinrich assumed Masimo will prove liability and causation.  Apple acknowledges Kinrich's assumptions.  Apple presumes, but fails to show, that the only facts supporting Kinrich's assumptions were from excluded portions of other's opinion disclosures.  As explained below, Masimo will present ample factual evidence for the jury to find liability and causation.

# II.  <u>BACKGROUND</u>

**A.**   <u>Apple</u> █████████████████████

In 2013 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Apple wanted to "dig deep" into Masimo's "optical technology and algorithms."   Ex. D at MASA03217800.

By summer 2013, ████████████████████████████████████

1

2

3

4

5 ███████████████████████████████████████████ Apple

6 hired Masimo's Chief Medical Officer, Michael O'Reilly.

7      In September 2013, ████████████████████████████████

8 ██████████████████████████████████████ In October

9 2013, Marcelo Lamego (Cercacor's Chief Technical Officer) emailed Tim Cook.

10 Lamego referenced his 10 years of experience at Masimo and Cercacor and offered to

11 solve Apple's problems in exchange for a senior technical position.  Ex. G.  ████████

12

13

14

15

16

17

18

19

20

21 **B.**    **<u>Masimo</u>** █████████████████████████

22 ███████████████████████████████████████████

23 ███████████████    Masimo developed smaller monitors for hospitals, including Radius

24 7 (left) and the wrist-worn Radius PPG pulse oximeter (right).

25

26

27

28



In 2019, ███████████████████████████████

███████████████████████████ By late 2019, ███████████

█████████████████████████████████████████████████

███████████████████████ Masimo sold the first W1 in December 2021 and

announced a limited-market release in May 2022. *Id*. at 6. Masimo submitted the W1

for FDA clearance and announced the full market release in August 2022. *Id.* at 11.

Below is a picture of the Masimo W1.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

1    ███████████████████████████████████████████████████

2    ███████████████████████████████████████████████████

3    ███████████████████████████████████████████████████

4    ███████████████████████████████████████████████████

5    ███████████████████████████████████████████████████

6    ███████████████████████████████████████████████████

7    ███████████████████████████████████████████████████

8    ███████████████████████████████████████████████████

9    ███████████████████████████████████████████████████

10    ███████████████████████████████████████████████████

11    ███████████████████████████████████████████████████

12    ███████████████████████████████████████████████████

13    ███████████████████████████████████████████████████

14    ███████████████████████████████████████████████████

15    ███████████████████████████████████████████████████

16    ███████████████████████████████████████████████████

17    ███████████████████████████████████████████████████

18    **C.**    <u>**Masimo Disclosed its Theories and Supporting Evidence in Discovery**</u>

19    Masimo contends that, if Apple had not misappropriated Masimo's trade secrets,

20    ███████████████████████████████. Masimo told Apple: ██████████████

21    ███████████████████████████████████████████████████

22    ███████████████████████████████████████████████████

23    ████████████████████████████ Masimo explained that ██████████

24    ███████████████████████████████████████████████████

25    ███████████████████████████████████████████████████

26    █████████████████████████ Masimo also explained that ███████

27    ███████████████████████████████████████████████████

28    Masimo  explained ████████████████████████████████████████

1  Masimo explained

2

3

4  Masimo also disclosed

5

6  Masimo explained

7  Masimo disclosed

8  Masimo offered

9  Masimo also disclosed

10  **Development Costs**. Masimo disclosed are

11  relevant to Masimo's damages.

12  Apple had already taken extensive discovery on

13

14  Masimo produced

15  that discovery in this case and the parties agreed that all ITC discovery is available for

16  use in this case. Ex. P. Masimo then

17

18

19  On August 18, 2022, before the expert report deadline, Masimo

20  Masimo told Apple

21

22

23  Apple                    Masimo

24

25

26  ---

[1] On January 10, 2023, the ALJ in the ITC investigation issued an initial determination, finding Masimo satisfied the economic prong of the domestic industry requirement, based on its development costs for wrist-worn physiological sensors that ultimately led to the W1. Ex. Q ¶¶8, 13.

1       **Manufacturing Costs**.  Masimo identified ███████████████████████

2    ██████████████████████████████████████████████████████████████

3    ████████████    Masimo explained the analysis is "relevant to determining Masimo's

4    lost profits ███████████████████████████████████████ *Id.*

5        In 2022, Priddell ██████████████████████████████████████████

6    ██████████████████████████████ Masimo ████████████████████

7    ██████████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████████████

9    ██████████████████

10        Apple initially objected to the timing of ████████████████████████

11    ████████████████    But then Apple specifically exempted these documents

12    from those it sought to preclude Masimo's experts from relying on.  Ex. R.

13    **D.**    **Kinrich's October Report**

14        **1.**    **Kinrich's Lost Profits Opinion**

15        Kinrich has not opined on whether Apple's misappropriation ***caused*** Apple to

16    ██████████████████████████████████████████████████████████████

17    ██████████████████    Rather, Kinrich assumes ██████████████████████

18    ██████████████████████████████████████████████████████████████

19    ███    Kinrich also assumes that ████████████████████████████████

20    ████████████████████████████████████████████████████████

21        Based on those assumptions, Kinrich calculates the profit Masimo would have

22    made ████████████████████████████    Kinrich first accounts for ██████████

23    ██████████████████████████████████████████████████████████████

24    ██████████████████████████    Kinrich then accounts for ████████████

25    ██████████████████████████████████████████████████████████████

26    ██████████████████████████████    Kinrich then calculated ██████████████

27    ██████████████████████████████████████████████████████████████

28    Kinrich then determined ████████████████████████████████████████

1     ███████████████████████████████

### 2. Kinrich's Unjust Enrichment Opinions

Kinrich also quantified Apple's unjust enrichment due to its misappropriation, using two separate measures.

First, Kinrich calculated Apple's cost savings ████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████ Kinrich initially relied on the information in Priddell's Rule 26(a)(2)(C) disclosure. *Id.* ¶145. He then supplemented to perform the same calculation using Masimo's previously disclosed███████████████████ ██████████████████████████████████████.

Second, Kinrich calculated Apple's profit from ███████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████

### E. The Court's November 22 Order

On November 22, 2022, the Court granted-in-part Apple's motion to strike Muhsin's and Priddell's Rule 26(a)(2)(C) disclosures. Dkt. 1031 at 12. At the hearing, Masimo asked whether the ruling would impact other expert opinions, like Kinrich's damages opinions. The Court explained, "[t]hat issue is not before me today." Ex. S at 24-25. The Court further explained "[e]ither it's in the report and there's a sufficient basis to rely or there isn't. I mean, nothing we do today is going to change the sufficiency of the report and the bases for the opinions." *Id.*

**Muhsin**. The Court determined that part of Muhsin's disclosure "arises from his percipient knowledge" and declined to strike such testimony and opinions. Dkt. 1031 at 6. For example, the Court identified ████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████ The Court struck other opinions that "veer from his percipient knowledge" by involving hypotheticals. *Id.* at 6-7, 9.

**Priddell**. The Court similarly found Priddell "may have percipient knowledge"

1    of some facts like ████████████████████████████████████████████

2    However, the Court found that Priddell ventured beyond his percipient knowledge when

3    he addressed ████████████████████████████████████████████████████

4    ████████████████████████████████████████████

5    **F.    Kinrich Supplemented His Report After the Court's Order**

6            Following the Court's Order, Kinrich prepared a supplement using the same

7    methodology and analysis as his original report.  Ex. 7.  As explained below, Kinrich

8    ran alternate calculations based on data that Masimo had disclosed earlier and Apple has

9    not challenged.

10           For Masimo's development time, Kinrich confirmed his prior assumption about

11   the time it would have taken ████████████████████████████████

12           For Masimo's development costs, Kinrich used ████████████████████

13   ██████████████████████████████████████  As Kinrich explained,

14   this did not materially change his calculations.  ████████████████████████

15   ████████████████  Indeed, he explained that excluding ████████████████

16   ██████████████████████████

17           For Masimo's ████████ manufacturing costs, Kinrich used ████████████

18   ██████████████████████  instead of ██████████████████  He explained that

19   such ██████████ "are among the many types of financial data that I and other damages

20   experts rely on regularly in calculating damages."  *Id*. ¶2.  Using ██████████ rather than

21   ██████████████████████████████

22           For Apple's cost savings, Kinrich ran the same calculations from his original

23   report using ████████████████████████████████████████████

24   ██████████████████████  He explained his estimate was reasonable because ██

25   ████████████████████████████████████████████████████████████

26   Using ████████████████████████████████████████████████

27   ██████████████  while using ████████████████████████████████████

28   ████████████████████████████████

**G.   The Court Denies Apple's *Ex Parte* Application To Strike The Supplement**

On December 2, Apple filed an *ex parte* application to strike Kinrich's supplement. Dkt. 1052.  The Court denied the application without prejudice. Dkt. 1068 at 1.  The Court found the supplement included "slightly revised calculations, which are based on the same methodology as his October 2022 report."  *Id.* at 2.  The Court accepted Masimo's offer to allow Apple to provide a rebuttal report. *Id.* at 3.

On December 13, Apple's damages expert responded to Kinrich's four-page supplement with an eleven-page rebuttal addressing Kinrich's supplement.  Ex. T.  The parties deposed each other's damages experts weeks later.

### III.  LEGAL STANDARD

Expert testimony is admissible if the party offering such evidence shows the testimony is both reliable and relevant. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).  "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.*

"[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "Expert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field."  *United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015); *see also Tate v. Kaiser Found. Hosps.*, 2014 WL 176625, at *5 (C.D. Cal. Jan. 15, 2014) (expert may rely on hearsay records despite deficiencies in declaration related to those records).

"[T]he general law as to the proper measure of damages in trade secret cases is far from uniform."  *Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, 1993 WL 317266, at *1 (N.D. Cal. Aug. 19, 1993) ("courts have considerable leeway in calculating a

1  damage award for trade secrets theft").  Once a trade secret plaintiff establishes the fact

2  of their harm, courts are much more lenient in determining the amount of damages.  *ATS*

3  *Prod. Inc. v. Ghiorso*, 2012 WL 253315, at *1 (N.D. Cal. Jan. 26, 2012) (citing *Tri-Tron*

4  *Int'l v. Velto*, 525 F.2d 432, 436 (9th Cir. 1975).

## IV.  ARGUMENT

### A.    The Court Should Not Strike Kinrich's Opinions

7         Apple argues Kinrich's opinions "are premised on material that this Court

8  excluded."  Br. at 10.  Throughout its brief, Apple asserts the Court's Order struck

9  "information," "analyses," "points," "theories," and more.  Not so.  The Order struck

10 portions of Muhsin's and Priddell's "opinions."  It did not appear to strike the facts

11 themselves.  And the Court explained it was not addressing the sufficiency of other

12 expert opinions.  Ex. S at 24-25.

13        Apple now attempts to radically expand the Court's Order to exclude Masimo's

14 entire lost profits theory because Apple asserts Kinrich relies on stricken aspects of the

15 Muhsin and Priddel disclosures.  Though Kinrich cited to portions of Muhsin's and

16 Priddell's disclosures, his opinions do not depend on their stricken opinions.  Kinrich's

17 opinions are well supported by timely disclosed facts.  Apple does not appear to dispute

18 that Kinrich can reasonably rely on facts, regardless of their admissibility, to support his

19 damages opinions.  Rather, Apple incorrectly asserts that "Plaintiffs do not identify the

20 permissible 'facts' on which Kinrich purportedly relies."  Br. at 15.  As discussed below,

21 Kinrich's original report, and his supplement, identify the "facts" on which he

22 reasonably relies.

### 1.    Kinrich's Opinions Are Based on Facts Disclosed to Apple in Discovery—Not Stricken Opinions of Priddell And Muhsin

25        Apple argues certain Kinrich opinions "are predicated on excluded opinions and

26 analyses performed by Muhsin and Priddell."  Br. at 10.  Apple challenges four aspects

27 of Kinrich's report: (a) ███████████████████████████████████████

28 ███████ (b) ██████████████████████████ (c) ███████████████████ and (d)

-10-

1  Apple's ████████████ Br. at 11.  As explained below, Apple is wrong on all

2  four aspects.

3       **a.**     **Masimo's** █████████████████████

4       Apple argues Kinrich "relies" on Muhsin's opinion on ███████████████

5  ███████████████████████████████████████ Apple

6  also argues Kinrich "relies" on Muhsin's opinion that ███████████████

7  ███████████████████   While Kinrich cited Muhsin's opinions, his

8  analysis does not depend on any such opinions.  Rather, Kinrich assumes ████████

9  ████████████████████████████

10       Masimo will prove Kinrich's assumption at trial without Muhsin providing any

11  stricken opinions.  Masimo will use other evidence, for example, evidence showing

12  ████████████████████████████████████████████

13  ██████████████████████████████

14       Apple argues Kinrich improperly "relies" on a conversation with Muhsin about

15  ██████████████████████ Kinrich cited the

16  conversation, but his opinions do not depend on the conversation because he assumed

17  this fact is true.  Regardless, as Apple recognizes, experts are permitted to rely on such

18  conversations.   As explained in Masimo's co-pending contingent motion to strike,

19  Apple's damages expert opined on numerous issues based on an unrecorded interview

20  with an Apple employee.  Dkt. 1121-1 at 10.  Masimo submits that experts from ***both***

21  sides should be allowed to interview party employees and obtain specific facts from

22  them during the expert phase, as experts often do.

23       **b.**     **Masimo's** ████████████████

24       Apple  argues  Kinrich  "relies"  on  Muhsin's ███████████████████

25  ██████████████   While Kinrich cites Muhsin's disclosure, Kinrich's opinion does

26  not depend on any ████████████████████████.  Rather, Kinrich uses

27  Masimo's spreadsheets showing estimates of the actual costs of ████████████

28  ████████  That is entirely proper.  *See BJ Tidwell Industries, Inc. v. Diversified Home*

-11-

1  *Prods., Inc.*, 2007 WL 3118300, *2 (W.D. Tex., Oct. 19, 2007) (damages expert properly
2  relied on client's summary spreadsheets); *SolidFX, LLC v. Jeppesen Sanderson, Inc.*,
3  2014 WL 983507, *6 (D. Colo. Mar. 13, 2014) (same).

4       Masimo estimated development costs of ███ because ████████████
5  ████████████████████████████████ Kinrich properly relied on
6  Masimo's estimates. *See R.F.M.A.S., Inc. v. So,* 748 F.Supp.2d 244, 269
7  (S.D.N.Y.2010) ("[u]nless the information or assumptions that [a party's] experts relied
8  on were so unrealistic and contradictory as to suggest bad faith, inaccuracies in the
9  underlying assumptions or facts do not generally render an expert's testimony
10  inadmissible.").

11       Masimo disclosed these estimates as relevant to damages.  Ex. L at 15-16, 27.
12  Masimo's interrogatory responses also explained that ███████████████
13  ████████████████████████ is relevant to damages here.[2] *Id.* at
14  14, 27.  The initial determination in the ITC investigation recently found that ████
15  ████████████ satisfied the economic prong of the ITC's domestic industry
16  requirement.  Ex. Q ¶¶8, 13.  This finding supports the reliability of these costs and
17  confirms Apple's familiarity with the documents.

18       Because of Masimo's Rule 26(e)(1)(a) obligations to supplement, Masimo
19  updated ████████████████████████.  Masimo also amended its
20  interrogatory response to identify that data as relevant to damages.  Kinrich's October
21  Report then relied on ████████████████████████ because it
22  was the most up-to-date information available.

23       If the Court were to preclude Kinrich from mentioning the portion of Muhsin's
24  disclosure relating to ████████████ at trial, Kinrich's October report would allow

---

26  [2] The Court previously found Masimo did not show the ITC proceedings put Apple on
27  notice of Masimo's damages theories.  Dkt. 1031 at 11.  Masimo is not arguing the ITC
    proceedings notified Apple of Masimo's damages theories but merely that Apple took
28  extensive discovery on Masimo's ████████████.

1    him to calculate damages using ██████████████████████████████████.

2    Moreover, if the Court were to preclude Kinrich from mentioning Muhsin's disclosure

3    *and* ███████████, Kinrich's supplement would allow him to calculate damages using

4    ███████████████████████ only.  Kinrich explained his calculations based on ████

5    ████████████████ are virtually identical to his original calculations. Ex. 7 ¶¶7-8.

6    In fact, Kinrich showed that his calculations do not materially change even if he does

7    not account for *any* ████████████████████████. *Id*. ¶9.

8         Apple argues Kinrich improperly cites a conversation with Muhsin about

9    █████████████████████████████ While Kinrich cites to that conversation,

10   his opinion does not depend on the conversation.  Instead, Kinrich uses ██████████

11   ████████████████████.  Regardless, as discussed above, experts are permitted to

12   rely on such conversations and Apple's expert did the same.  *See* Dkt. 1121-1 at 10-11.

13        **c.    Masimo's ███████████████████**

14        Apple argues Kinrich "relies" on Priddell's opinion regarding █████████████

15   ████████████████████████ Not so.  Priddell's disclosure referred to

16   ███████████████████████.  But Kinrich cites the portion of Priddell's disclosure

17   ██████████████████████████████████████████████████████████

18   ████ Kinrich assumes █████████████████████████████████████ is a

19   reasonable proxy for ██████████████████████████████████████████.  Apple

20   can cross-examine Kinrich, and any other Masimo witness, on the reasonableness of that

21   assumption.  Apple cites no authority or rationale to strike Kinrich's entire lost-profits

22   analysis under these circumstances. Ex. 4 ¶¶99-101; Ex. 7 ¶2.

23        As with ████████████████ Masimo explained in an interrogatory response that

24   █████████████████ are relevant to damages. Ex. L at 22, 28.  And, again, Apple does

25   not argue the costs are inaccurate or unreliable.  *See R.F.M.A.S., Inc.,* 748 F.Supp.2d at

26   269.  Masimo provided ██████████████████████████████ as required by

27   Rule 26(e)(1)(a). Ex. 1 at 3.  Masimo also amended its interrogatory response to identify

28   those costs as relevant to damages.  Ex. L at 28.  Kinrich's October Report relied on ████

-13-

1  ███████████████████████ as the most up-to-date information available.

2       If the Court were to preclude Kinrich from mentioning Priddell's disclosure at

3  trial, Kinrich's October report would allow him to calculate damages directly from the

4  2022 update.   Moreover, if the Court were to preclude Kinrich from mentioning

5  Priddell's disclosure **and** the 2022 update, Kinrich's supplement would allow him to

6  calculate damages using the 2021 analysis only.  Masimo performed the 2021 analysis

7  in the ordinary course of business, providing additional "indicia of reliability." *Scott v.*

8  *Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 52 (S.D.N.Y. 2016).  Kinrich explained

9  that a manufacturer's estimates of their manufacturing costs are the type of data he and

10 other damages experts regularly rely on.  Ex. 7 ¶2.

11      Accordingly, Kinrich can properly rely on ████████████████████████

12 ███████████████ from 2021, or the 2022 update.

13          d.    **Apple's** ██████████████████████

14      Apple argues Kinrich relies on Priddell's opinion identifying ███████████

15 ████████████████████████████████████████████████████

16 ██  Though the Court struck Priddell's Rule 26(a)(2)(C) disclosure regarding ██████

17 ██████████████████████ the Court did not address the impact of that decision on

18 Kinrich's analysis (Ex. S at 24-25).  Experts are allowed to base their opinions on

19 evidence not admitted at trial "so long as it is of a type reasonably relied upon by experts

20 in their field." *Cazares*, 788 F.3d at 977.

21      As Apple recognizes, experts may base their opinions on analyses performed by

22 party employees for the litigation.  As explained in Masimo's co-pending contingent

23 motion to strike, ████████████████████████████████████████████

24 solely for this litigation, and ███████████████████████ Apple did not

25 disclose any information about this ██████████████ during fact discovery. *Id.*  The

26 Apple engineer served no disclosure and provided no basis to understand his analysis.

27 Thus, although both parties' experts relied on party-employees' analyses created for the

28 litigation, Masimo provided notice of the employee analysis in the form of a Rule

1    26(a)(2)(C) disclosure while Apple did not.  Thus, Masimo was far more forthcoming

2    about its employee analysis than Apple.  Regardless, Masimo contends that experts for

3    both parties should be allowed to base their opinions on such analyses.

4           However, if the Court were to preclude Kinrich from referring to Priddell's cost

5    savings analysis at trial, Kinrich's supplement offers an alternative calculation based on

6    the same methodology and analysis as his original report.   Kinrich's supplement

7    estimated ██████████████         based on ████████████████████████

8    ████████████████           He performed two alternative calculations, one using the data

9    in ████████████████████, and another using ████████████████

10   ██████           As discussed, Masimo's interrogatory responses identified both spreadsheets as

11   relevant to damages.  Kinrich explained that using ████████████████        decreases

12   his calculation while using ████████████████        increases his calculation.  *See*

13   *supra,* Section II.F.

         **2.      Apple's Cases Do Not Support Exclusion**

15          Apple cites several cases for the proposition that experts cannot rely on opinions

16   or theories that have been found unreliable.  *See* Br. 10.  For example, Apple cites

17   *Abarca v. Merck & Co.*, 2010 WL 4643642 (E.D. Cal. Nov. 9, 2010), for the proposition

18   that an expert cannot make "assumptions lacking any factual foundation in the record."

19   *Id.* at *4.  In *Abarca* the expert relied on an assumption that was indisputably false.  *Id.*

20   Apple also cites *San Francisco Baykeeper v. City of Sunnyvale*, 2022 WL 4133299 (N.D.

21   Cal. Sept. 12, 2022), and several other cases for the proposition that an expert cannot

22   rely on "another expert's theories that have been or may be excluded as unreliable."  *Id.*

23   at *10.  These cases are inapposite.  As explained above, Apple does not contest that

24   Kinrich's opinions are based on his own reliable methodology supported by a type of

25   data on which experts regularly rely.

         **3.      The Court Should Not Strike Kinrich's Supplement**

                 **a.      Courts Allow Supplements In Response To Court Orders**

28          Kinrich's supplemental report was timely because courts routinely allow experts

-15-

1  to supplement their opinions to address criticism or court orders.  For example, "Courts
2  in the Central District of California (and elsewhere in the 9th Circuit) have regularly
3  allowed experts to submit supplemental reports to address arguments raised for the first
4  time in a rebuttal expert report."  *International Medical Devices, Inc. v. Cornell*, 2022
5  WL 2784806, *3 (C.D. Cal. June 16, 2022).   This Court also permitted damages
6  supplements to supply a missing link in a cost analysis, where the numbers changed but
7  the conclusions remained the same.  *Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*,
8  2020 WL 7347860 *4 (C.D. Cal. Nov. 18, 2020).

9       Another court permitted a supplement in response to Defendant's critique of the
10  original report. *See Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser
11  Co.*,  2003  WL  23715981  *2  (D.  Or.  Jan.  21,  2003).    The  court  permitted  the
12  supplemental expert report after summary judgment—much later than the supplement
13  here. The court reasoned that striking the supplement would place "undo emphasis on
14  law as a contest of skill between rival lawyers, at the expense of doing justice."  *Id*.  The
15  court explained, "if there is sufficient evidence to support the Plaintiffs' case, I will not
16  exclude that evidence simply because Plaintiffs failed to anticipate the need for it until
17  the defect was pointed out by their opponent."  *Id*.

18       Apple itself has provided damages expert supplements in other cases after the
19  initial report deadline.  *See Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 1322854, at *4
20  (N.D. Cal. Mar. 28, 2014).  Apple justified that supplement because "both sides timely
21  exchanged supplemental reports on a deadline the parties had agreed upon." Dkt. 1063
22  at 2.  The purpose for that exchange was to address "updated sales information." *Apple*,
23  2014 WL 1322854, at *1.  But Apple used the supplement to ***also*** offer a new analysis
24  in response to an order issued three months earlier in a related case.  *Id*. *1-2.  Despite
25  serving a late supplement beyond the purpose of the stipulated exchange, the court
26  permitted Apple's supplement.  *Id*.

27       As discussed below, Kinrich timely served his supplement just days after the
28  Court's Order, consistent with the law.

-16-

### b.     The Supplement Was Timely

Kinrich timely supplemented his report four business days after the Court's Order on the Rule 26(a)(2)(C) disclosures.  If anything, he did so earlier than necessary.  The caselaw discussed above would have supported Kinrich supplementing if the Court were to preclude him from relying on information identified in his original report.  Kinrich supplemented early, which allowed Apple's expert to respond and Apple to question Kinrich about his supplement during his deposition.  Moreover, as the Court found, the supplement included "slightly revised calculations, which are based on the same methodology as his October 2022 report."  Dkt. 1052 at 2.

Apple argues supplementation cannot "remedy a deficient expert report."  Br. at 16-17 (quoting *Rojas v. Marko Zainovich, Inc.*, 2011 WL 4375297, *6 (E.D. Cal. Sept. 19, 2011).  But in *Rojas*, the deficiency was that the expert had not reviewed the documents relied on in his report.  The court determined the expert's "lack of preparation and failure to review documents…is not a proper basis for supplementing." *Id.*  Here, the supplement was not to cure any lack of preparation.  Rather, Kinrich supplemented to provide alternative calculations that do not depend on material Apple is challenging.

Apple's reliance on *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866 (C.D. Cal. 2013), is inapposite.  There the court excluded an expert's supplemental report because it presented a new opinion.  Here, Kinrich's supplement does not include a new opinion.

### c.     The Supplement Was Substantially Justified And Harmless

Apple argues the supplement was not substantially justified because Apple objected to the Muhsin and Priddell disclosures before Masimo served Kinrich's original report.  Br. at 17.  Apple did so in a short letter a few days before Kinrich's expert report was due.  Apple objected to four Rule 26(a)(2)(C) disclosures on various grounds.  Masimo disagreed and the Court struck only some portions of two of the four disclosures Apple challenged.  Kinrich then supplemented four business days after the Order to address any potential impact on his opinions.  The Court's Order substantially justifies

-17-

1    the timing of Kinrich's supplement.

2         The Kinrich supplement was also harmless.  The Court found the supplement

3    included "slightly revised calculations, which are based on the same methodology as his

4    October 2022 report."  Dkt. 1052 at 2.  As discussed, Kinrich provided the supplement

5    earlier than necessary under relevant caselaw.  After receiving Kinrich's four-page

6    supplement, Apple's damages expert prepared an 11-page rebuttal.  Ex. T.  And Apple

7    deposed Kinrich on his supplement.  Apple's opportunity to prepare a supplement and

8    take a deposition cured any alleged harm.  *See Becerra v. J.C. Penney Corp., Inc.,* 2017

9    WL 1479410, at *3 (C.D. Cal. Apr. 24, 2017) (deposition cured alleged harm from

10   untimely disclosure); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 2013 WL 12126773, at

11   *5 (C.D. Cal. June 27, 2013) (same).

12        Apple claims the supplement is "highly prejudicial" because it "attempts to

13   resurrect damages theories" that Apple contends "should be excluded."  Br. at 17-18.

14   The Court has not stricken any damages theory in Kinrich's report.  To the contrary, the

15   Court explained that it has not yet addressed the admissibility of expert opinions and the

16   Court would evaluate them based on "the sufficiency of the report and the bases for the

17   opinions."  Ex. S at 24-25.  Moreover, Apple identifies nothing specific that it would

18   have done differently if Kinrich's October report had included the alternative

19   calculations set forth in the supplement.  Thus, the supplement was harmless.

20   **B.    Kinrich's Opinions are Reliably Connected to Apple's Misappropriation**

21        Apple argues that "Kinrich has failed to comply with" the legal requirement to

22   establish causation.  Br. at 18.  Apple is wrong to suggest that a damages expert must do

23   so.  To the contrary, Kinrich properly assumed that Masimo will establish liability and

24   causation.  *See Spintouch, Inc. v. Outform, Inc.*, 2022 WL 17363902, at *6 (C.D. Cal.

25   Sept. 28, 2022) ("it is well-established that experts on damages can assume causation");

26   *Orthofix Inc. v. Gordon*, 2016 WL 1273160, at *3 (C.D. Ill. Mar. 1, 2016) ("the

27   report *assumes* that Gordon's departure prompted a loss in sales, and sets out to quantify

28   that loss amongst certain doctors over time on the basis of the initial assumption…It is

-18-

entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion. To hold otherwise would be illogical."); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("[A] damages expert does not need to perform her own causation analysis to offer useful expert testimony."); *Gaedeke Holdings VII, Ltd. v. Baker*, 2015 WL 11570978, at *3 (W.D. Okla. Nov. 30, 2015) ("Proof of causation often comes from fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages."); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1611835, at *6 (N.D. Cal. Apr. 3, 2018) ("Nor must a damages expert establish causation before his or her opinion becomes admissible.")

Apple makes two specific arguments. First, Apple argues Kinrich "does not distinguish between the damages that would be awarded" based on the number of trade secrets Apple misappropriated. Br. at 18. Apple's argument ignores Masimo's damages theory. Masimo contends that Apple's misappropriation of one or more trade secrets caused ███████████████████████████ Masimo's lost profits are the same regardless of how many trade secrets Apple misappropriated. Of course, the jury will decide whether Masimo proved that misappropriation of one or more trade secrets caused ███████████████████.

Second, Apple argues "Kinrich does not distinguish between or among the alleged harms from disclosure, use, or acquisition." Br. at 19. Apple further criticizes Kinrich for not analyzing Apple's use of the trade secrets by insinuating Kinrich assessed damages based on the number of times Apple "used" Masimo's trade secrets. *Id.* at 20 ("Kinrich assessed damages on a per *use* basis"). He did not. Rather, as Apple concedes in the next sentence, Kinrich's lost profits and unjust enrichment calculations "vary based on the number of Apple Watches sold"—not the number of times Apple "used" the trade secrets. *Id.* at 19-20. Kinrich's calculation depends on the number of watches sold because Masimo asserts that ████████████████████████████ ███████████████ but for the misappropriation. Thus, Kinrich's calculations do not

depend on the specifics of how Apple misappropriated Masimo's trade secrets.

Moreover, case law does not require Kinrich to assign value to individual trade secrets, or account for different ways of misappropriating them. A trade secret plaintiff need not apportion damages to individual trade secrets. *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASX), 2021 WL 4913509, at *3 (C.D. Cal. Sept. 8, 2021) ("Plaintiff argues that California law does not require apportionment of damages on a trade-secret-by-trade-secret basis. The Court agrees."). *SPS* specifically confirms that Kinrich properly calculated "lost profits in lieu of assigning a value to the trade secrets themselves." *Id*. *SPS* further explained that the defendant's reliance on *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005), which Apple cites in its motion, was "misplaced because the court in [*O2 Micro*] required apportionment where the damages were measured by the ***value of the trade secrets themselves***." *Id*. (emphasis in original).

Apple also wrongly contends that Kinrich's damages model "ignores legal requirements of causation and defies common sense." Br. at 20. Apple appears to argue that no reasonable juror could find that misappropriating only one trade secret could have caused ███████████████████████████████. But Apple provides no authority or analysis to support such an argument. And Apple did not move for summary judgment on this issue. Thus, the jury will decide the issue.

Rather than address Masimo's actual damages theory, Apple cites a string of cases that are inapplicable because they address different damages theories.

For example, Apple cites *Shell & Slate Software Corp. v. Adobe Sys. Inc.,* 2004 WL 5486635 (C.D. Cal. Sept. 17, 2004), as excluding an opinion that was "inherently unreliable and speculative." Br. at 19. *Shell & Slate* is irrelevant because, as discussed above, Kinrich's opinions are neither inherently unreliable nor speculative.

In *LivePerson, Inc. v. [24]7.AI, Inc.*, 2018 WL 6257460 (N.D. Cal. Nov. 30, 2018), the damages expert assumed that the plaintiff would establish liability on all 28 of its trade secrets. He had no opinion on damages if the jury found liability for less

-20-

than all trade secrets.  *Id*. at *2.  The plaintiff, however, did not even plan to assert all trade secrets at trial.  *Id*.  Here, Kinrich's opinion does not depend on establishing liability for all asserted trade secrets.

In *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005), as explained above, the expert modeled damages based on the value of the trade secrets themselves rather than the plaintiff's lost profits.  Kinrich's model does not rely on the value of any trade secret.

Finally, Apple cites the concurring opinion in *Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021).  That concurrence argued that the damages expert could not attribute the entire value of the sale of a division of a company to a trade secret because the expert conceded the division had value unrelated to the trade secret.  *Id*. at 1250.  Kinirich's damages are based on ███████████████, not based on the sale of any entity.

Apple's attacks on Kinrich's unjust enrichment calculations fail for similar reasons.  Apple contends that Masimo seeks unjust enrichment "even if there is no allegation of Apple using the purported secret in connection with" the blood-oxygen or ECG features.  Br. at 20.  Masimo will present evidence from which a reasonable jury could conclude that ███████████████████████████ and ████████████████████████ ████████████████████  *See e.g.*, Dkt. 1082-16; 1082-21; 1117-4.  Kinrich calculated Apple's unjust enrichment by assuming Masimo will prove its case and apportioning Apple's profit ████████████████ ████████  If Apple believes the jury's liability verdict is inconsistent with its damages verdict, Apple can present such arguments on JMOL after trial.  They present no basis for *Daubert*.

Finally, Apple argues Kinrich's lost profits and "cost savings" unjust enrichment opinions are flawed because they would apply even if the trade secrets were used neither by ████████████████████  As discussed above, Kinrich properly

assumed Masimo will prove Apple misappropriated Masimo's trade secrets.  He also
properly assumed that, but for Apple's misappropriation, ████████████████████
████████████████████████   Apple does not explain why the ██████████████████   must
use Masimo's trade secrets.  But Madisetti provided such an opinion anyway.  Dkt.
1082-16 ¶90 (opining ███████████████████████████████████   uses certain trade
secrets).   Therefore, Kinrich's opinions are properly premised on Masimo's but-for
world.

## V. **CONCLUSION**

For the foregoing reasons, the Court should deny Apple's motion.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 17, 2023            By: */s/ Mark D. Kachner*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,802 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 17, 2023                    By: /s/ Mark D. Kachner
                                           Joseph R. Re
                                           Stephen C. Jensen
                                           Benjamin A. Katzenellenbogen
                                           Perry D. Oldham
                                           Stephen W. Larson
                                           Mark D. Kachner
                                           Baraa Kahf
                                           Adam B. Powell
                                           Daniel P. Hughes
                                           Justin J. Gillett

                                           Attorneys for Plaintiffs
                                           MASIMO CORPORATION and
                                           CERCACOR LABORATORIES, INC.

56931595

-23-