# EXHIBIT S

1

1

2

3

4          UNITED STATES DISTRICT COURT

5          CENTRAL DISTRICT OF CALIFORNIA

6                SOUTHERN DIVISION

7                    - - -

8     THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10   MASIMO CORPORATION, et al.,   )CERTIFIED TRANSCRIPT
                     Plaintiffs, )
11       vs.                       )
                                   )  SACV-20-00048-JVS
12   APPLE, INC.,                  )
                     Defendant.  )
13   ------------------------------)

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16           Santa Ana, California

17            December 3, 2022

18

19              SHARON A. SEFFENS, RPR
                United States Courthouse
20              411 West 4th Street, Suite 1-1053
                Santa Ana, CA  92701
21              (612) 804-8655

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

2

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiffs:

 3   BENJAMIN A. KATZENELLENBOGEN
     KENDALL MARIE LOEBBAKA
 4   KNOBBE MARTENS OLSON & BEAR, LLP
     2040 Main Street, 14th Floor
 5   Irvine, CA  92614
     (949) 760-0404
 6
     MARK D. KACHNER
 7   KNOBBE MARTENS OLSON & BEAR, LLP
     1925 Century Park East, Suite 600
 8   Los Angeles, CA  90067
     (310) 551-3450
 9
     For the Defendant:
10
     SARAH R. FRAZIER
11   WILMER CUTLER PICKERING HALE & DORR, LLP
     60 State Street
12   Boston, MA  02109
     (617) 526-6000
13
     NORA Q.E. PASSAMANECK
14   WILMER CUTLER PICKERING HALE & DORR, LLP
     1225 Seventeenth Street, Suite 2600
15   Denver, CO  80202
     (720) 274-3152
16

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit S
-223-

| | |
|---|---|
| 1 | SANTA ANA, CALIFORNIA; MONDAY, NOVEMBER 21, 2022; 1:44 P.M. |
| 01:44  2 | THE CLERK:  Calling Item No. 5, SACV-20-00048-JVS, |
| 01:44  3 | Masimo Corporation, et al. versus Apple, Inc. |
| 01:44  4 | Counsel, please state your appearances for the |
| 01:44  5 | record. |
| 01:44  6 | MR. KATZENELLENBOGEN:  Good afternoon, Your Honor. |
| 01:44  7 | Ben Katzenellenbogen for Masimo.  With me is Kendall |
| 01:45  8 | Loebbaka and Mark Kachner. |
| 01:45  9 | THE COURT:  Good afternoon. |
| 01:45  10 | MS. FRAZIER:  And good afternoon, Your Honor. |
| 01:45  11 | Sarah Frazier from WilmerHale on behalf of Apple and joined |
| 01:45  12 | by Nora Passamaneck. |
| 01:45  13 | THE COURT:  Good afternoon. |
| 01:45  14 | It's Apple's motion.  Would you like to be heard? |
| 01:45  15 | MS. FRAZIER:  It is, Your Honor.  We have reviewed |
| 01:45  16 | your tentative, Your Honor, and Apple would request that the |
| 01:45  17 | tentative be adopted.  As the tentative recognizes, |
| 01:45  18 | witnesses who intend to offer testimony that exceeds their |
| 01:45  19 | percipient knowledge are required to submit reports subject |
| 01:45  20 | to Rule 26(a)(2)(B), and accordingly, the tentative strikes |
| 01:45  21 | the disclosures of Mr. Priddell and Mr. Muhsin that go |
| 01:45  22 | beyond that. |
| 01:45  23 | With respect, Your Honor, to the disclosures of |
| 01:45  24 | Mr. Kiani and Mr. Diab, we understand from the tentative |
| 01:45  25 | Your Honor has found that those disclosures contained new |

01:45  1   information that was not disclosed during fact discovery and

01:46  2   should have been.  We understand Your Honor is inclined to

01:46  3   allow those opinions to stand.  Apple would request that its

01:46  4   experts be permitted to provide short supplemental reports

01:46  5   to address the new information that would stand under the

01:46  6   tentative, Your Honor.  We can do so in relatively quick

01:46  7   order before any scheduled depositions so as to not disrupt

01:46  8   the remainder of the case schedule.

01:46  9              THE COURT:  Thank you.

01:46  10             Who is going to address this?

01:46  11             Mr. Katzenellenbogen.

01:46  12             MR. KATZENELLENBOGEN:  Yes, Your Honor.

01:46  13             Do you have a preference between -- I usually use

01:46  14  the lectern.

01:46  15             THE COURT:  Yes, the lectern, please.

01:47  16             MR. KATZENELLENBOGEN:  Thank you, Your Honor.

01:47  17             I would like to begin by addressing the last page

01:47  18  of the tentative, page 11, the first full paragraph, in

01:47  19  which Your Honor reiterates an admonition to the parties,

01:47  20  and particularly to Masimo, to be forthcoming with

01:47  21  information in discovery, particularly regarding damages.

01:47  22  We took that admonition very seriously, and that is in part

01:47  23  why we prepared the disclosures that are at issue today.

01:47  24             I want to back up for a moment because the --

01:47  25  Apples' reply began by asserting that we did not dispute

Exhibit S
-225-

01:47    1    that the information in the disclosures was new, and that's

01:47    2    incorrect.  We very much disagree with that.  And I'd like

01:48    3    to take a few moments today to explain and to walk through

01:48    4    the evidence showing that those disclosures were not new,

01:48    5    but also to address the context in which this issue arose,

01:48    6    which is that typically in expert reports, there are issues

01:48    7    that the experts address where an expert has questions that

01:48    8    are not directly answered in an interrogatory response or in

01:48    9    a deposition.

01:48   10         The expert will often have a phone call with a

01:48   11    party employee to ask a question, and you end up with a

01:48   12    footnote in a report saying the basis for my opinion is a

01:48   13    discussion with so and so.  That happens frequently, and in

01:48   14    fact, Apple has done so in this case as well.

01:48   15         In light of the admonition that Your Honor gave

01:48   16    us, we wanted to go above and beyond that.  We wanted to

01:48   17    make sure that where there were those types of discussions

01:48   18    or information that our expert might be relying on that we

01:49   19    provided Apple with that information ahead of time.  So

01:49   20    rather than seeing this for the first time in a damages

01:49   21    expert report, they would be able to see this in a written

01:49   22    disclosure weeks before we served the damages expert report.

01:49   23         In addition, as Your Honor is likely familiar

01:49   24    with, typically the dispute ends up being does the opposing

01:49   25    party get to take a deposition of the person referenced in

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

6

| | |
|---|---|
| 01:49 | 1 | the conversation in the expert's footnote?  And that was |
| 01:49 | 2 | again why we did these disclosures in the form of a |
| 01:49 | 3 | 26(a)(2)(C) report, which was to make it clear that Apple |
| 01:49 | 4 | could take depositions of all four of these employees who |
| 01:49 | 5 | were making these disclosures so we wouldn't have that |
| 01:49 | 6 | issue.  Rather than simply having a black box of a sentence |
| 01:49 | 7 | or a few lines of text in an expert report, we've provided |
| 01:50 | 8 | pages of discussion of what the information was that was |
| 01:50 | 9 | being provided to the expert and the bases for that. |
| 01:50 | 10 | So the first issue I'd like to take on is the |
| 01:50 | 11 | suggestion in a couple of places in the tentative that there |
| 01:50 | 12 | were new legal theories, and then I'd like to address |
| 01:50 | 13 | specifically the support and the evidence that establishes |
| 01:50 | 14 | these were almost entirely percipient facts, and to the |
| 01:50 | 15 | extent that there were any opinions, they were proper |
| 01:50 | 16 | percipient opinions. |
| 01:50 | 17 | If Your Honor has any particular questions, I'd be |
| 01:50 | 18 | happy to address them.  Otherwise, I will proceed. |
| 01:50 | 19 | THE COURT:  Proceed. |
| 01:50 | 20 | MR. KATZENELLENBOGEN:  So big picture, the theory |
| 01:50 | 21 | that particularly Mr. Priddell and Mr. Muhsin were |
| 01:50 | 22 | addressing was Masimo's theory that -- and I will pause for |
| 01:50 | 23 | a moment.  If counsel believes I'm getting into anything |
| 01:51 | 24 | that's confidential or where there's a concern, please |
| 01:51 | 25 | interrupt and let me know so that we don't inadvertently |

Exhibit S
-227-

01:51   1   address anything confidential -- that Masimo's theory is

01:51   2   that when Apple approached Masimo in 2013, if instead of

01:51   3   misappropriating Masimo's trade secrets Apple had pursued a

01:51   4   business collaboration with Masimo, that that would have

01:51   5   resulted in Apple purchasing the Masimo Health Module from

01:51   6   Masimo and that that would have resulted -- and, therefore,

01:51   7   there were both lost profits to Masimo for not making those

01:51   8   sales and unjust enrichment to Apple as a result of stealing

01:51   9   the trade secrets rather than buying the module, as well as

01:51   10   other related theories.

01:51   11          And the pieces of information that are in these

01:51   12   disclosures that are at issue today are very, very small

01:52   13   pieces of that.  And so I wanted to make sure that we didn't

01:52   14   inadvertently give the Court the impression that what

01:52   15   Mr. Priddell and Mr. Muhsin had provided was the extent of

01:52   16   the disclosures and therefore Masimo was asking for billions

01:52   17   of dollars, that there is a detailed, very thorough expert

01:52   18   report addressing all of the damages issues.  And

01:52   19   Mr. Priddell and Mr. Muhsin and -- as well as Mr. Kiani and

01:52   20   Mr. Diab were addressing very narrow parts of that, very

01:52   21   specific parts.

01:52   22          And so with respect to the theory generally, I

01:52   23   have some citations to Exhibit 12 to the -- I believe it was

01:52   24   to the Passamaneck declaration -- that is in our discovery

01:52   25   response regarding damages.  And I don't know if Your Honor

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:52  1   can pull that up.  I can walk through it, or I can provide

01:52  2   the cites and read the text.

01:52  3          THE COURT:  Why don't you do the latter.

01:53  4          MR. KATZENELLENBOGEN:  Okay.  I'll try to go slow.

01:53  5   If at any point it gets to be too much, let me know, and we

01:53  6   can try to take it another way.

01:53  7          So beginning in April 27, 2021, so very early on

01:53  8   in the case, we identified Joe Kiani, Bilal Muhsin, and

01:53  9   Mohamed Diab as people who had information relevant to

01:53  10  damages.  And that's Exhibit 12, page 11 -- and I'm using

01:53  11  the consecutive pagination down at the bottom rather than

01:53  12  the internal pagination from my cites -- lines 2 through 3.

01:53  13         Then in March of 2022, we disclosed that:

01:53  14  "Apple's misappropriation of trade secrets harmed Masimo

01:53  15  because Masimo lost the value of a collaboration or other

01:53  16  business arrangement with Apple in 2013."  The cite for that

01:53  17  is -- this is all Exhibit 12 -- page 13, lines 1 through 3.

01:53  18  So that's where we disclose that this is starting in 2013.

01:54  19         We continued:  "Such a business relationship would

01:54  20  have had significant value to Masimo and its shareholders.

01:54  21  Such a relationship would have allowed Masimo to quickly

01:54  22  realize its goal of bringing medical-grade, noninvasive,

01:54  23  physiological parameter, measurement devices to consumers."

01:54  24         THE COURT:  Slow down.

01:54  25         MR. KATZENELLENBOGEN:  All right.  Would you like

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

9

01:54   1    me to repeat that or --

01:54   2              THE COURT:  Just slow down a little bit.  It'll

01:54   3    help our court reporter.

01:54   4              MR. KATZENELLENBOGEN:  Okay.  Thank you.  I'm

01:54   5    sorry.  I know when reading sometimes I do that.  My

01:54   6    apologies.

01:54   7              So now we have disclosed that we are starting in

01:54   8    2013, and the harm was that but for the misappropriation we

01:54   9    would have been able to offer this technology to the market

01:54   10   via Apple earlier.

01:54   11             Then on April 15, 2022, we again supplemented.

01:54   12   And here we get into some of the details of this specific

01:54   13   theory:  "But for Apple's misappropriation of trade secrets,

01:54   14   Masimo would have earlier developed a pulse oximetry

01:55   15   hardware and software module for use in wearable products

01:55   16   for at least Apple to incorporate into a watch.  But for

01:55   17   Apple's misappropriation, Masimo would have developed its

01:55   18   module that could be incorporated into third-party products

01:55   19   or co-branded with third parties.  But for Apple's

01:55   20   misappropriation, Masimo would have sold hardware to Apple

01:55   21   for incorporation into Apple's products."

01:55   22             And so -- and that is at page 17, lines -- sorry,

01:55   23   page 17, line 20, through page 18, line 4.  And then that

01:55   24   included an identification of people knowledgeable,

01:55   25   including Joe Kiani and, again, Bilal Muhsin.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit S
-230-

01:55  1      And so there we have laid out what the theory is,

01:55  2  which is specifically it was the Masimo -- it was the pulse

01:55  3  oximetry module and that we would have sold it to Apple.

01:56  4  And combining this, we would have started this in 2013, and

01:56  5  we would have gotten it to the market much sooner.

01:56  6      Our disclosures continued.  In July of 2022, we

01:56  7  said:  "Masimo has provided Apple with documents in this

01:56  8  litigation that include facts relevant to determining

01:56  9  Masimo's lost profits for its lost sales of pulse oximetry

01:56  10  hardware modules to Apple at" -- and it provides a Bates

01:56  11  number -- "MASA 10971155 and MASA 11073487."  And that's at

01:56  12  page 23, line 28, through page 24, line 3.

01:56  13      And those particular Bates numbers are important

01:56  14  because the first one is the bill of materials cost analysis

01:57  15  from 2021 that Mr. Priddell relied on, and the second is the

01:57  16  2021 development cost analysis that Mr. Muhsin relied on.

01:57  17  So now we've disclosed the theories, and we've disclosed the

01:57  18  documents on which we're going to rely.

01:57  19      Our disclosure continued:  "In addition, because

01:57  20  of Apple's misappropriation of plaintiffs' trade secrets,

01:57  21  Apple avoided purchasing pulse oximetry hardware modules

01:57  22  from Masimo for incorporation into the accused product."

01:57  23  That's at page 25, lines 10 through 12.  So now we've

01:57  24  explained the benefit Apple got, as well as the harm to

01:57  25  Masimo.

01:57   1          We continued:  "Plaintiffs' expert will determine

01:57   2    the value of this component of Apple's unjust enrichment

01:57   3    taking into account the amount Apple saved by not purchasing

01:57   4    pulse oximetry hardware modules from Masimo and licensing

01:58   5    Masimo's algorithms, technology, and applications used with

01:58   6    Masimo's pulse oximetry hardware modules."  That's page 25,

01:58   7    lines 15 to 18.

01:58   8          There was an additional disclosure on August 12

01:58   9    where we disclosed deposition transcripts of Bilal Muhsin

01:58  10    and Stephen Scruggs, quote, "in relation to Masimo's

01:58  11    development of its pulse oximetry hardware and software

01:58  12    module for use in wearable products."  That was at page 29,

01:58  13    lines 19 to 22.

01:58  14          And then finally, on September 6, 2022, which was

01:58  15    the deadline for completing the fulsome contention

01:58  16    interrogatories, we disclosed -- Masimo discloses -- sorry,

01:58  17    this is not a quote -- we disclosed the updated documents on

01:58  18    which Priddell relies, and that's a Bates number ending in

01:59  19    3619, and all of the updated documents on which Mr. Muhsin

01:59  20    relies, and that's at page 30, lines 6 through 9.

01:59  21          And the reason those were updated was because the

01:59  22    original analysis that we had prepared was through 2021, and

01:59  23    there were some additional costs that could be captured.

01:59  24    And so as part of our obligation to supplement financial

01:59  25    disclosures, sales, those types of information, rather than

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 01:59 | 1 | waiting until the eve of trial, in light of your admonition |
| 01:59 | 2 | that we needed to be affirmatively forthcoming, we said, |
| 01:59 | 3 | okay, discovery is closing.  Let's get it updated through |
| 01:59 | 4 | now.  And so that's what those documents did.  They updated |
| 01:59 | 5 | that. |
| 01:59 | 6 | And I think it's also worth noting that the nature |
| 01:59 | 7 | of those documents were adding additional costs.  And so |
| 02:00 | 8 | what those documents were doing was by increasing Masimo's |
| 02:00 | 9 | costs, both in terms of the price of the module as well as |
| 02:00 | 10 | increasing the expenses that we had to develop it, we're |
| 02:00 | 11 | actually reducing our damages theory. |
| 02:00 | 12 | So this was not something that we added to try to |
| 02:00 | 13 | surprise Apple and get the damages number up.  This was us |
| 02:00 | 14 | trying to be as careful as we could.  And rather than |
| 02:00 | 15 | waiting for Apple's expert to offer some criticism and then |
| 02:00 | 16 | try to address it or try to address it in the deposition, we |
| 02:00 | 17 | said, okay, let's try to address this ahead of time, and |
| 02:00 | 18 | let's try to make this as conservative as possible. |
| 02:00 | 19 | And finally, we said, quote:  "In addition, |
| 02:00 | 20 | changes to Apple's material costs for components associated |
| 02:00 | 21 | with noninvasive physiological monitoring, e.g., back |
| 02:00 | 22 | crystal assembly for Apple Watch, as Apple modifies those |
| 02:00 | 23 | components based on plaintiffs' trade secrets, provide |
| 02:01 | 24 | evidence that Apple determined plaintiffs' trade secrets |
| 02:01 | 25 | provide Apple more value than the increased component |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:01  1  costs."  And so there we were making sure that Apple knew

02:01  2  that one aspect of this was going to be looking at changes

02:01  3  in component costs, and particularly the component costs as

02:01  4  it related to both our lost profits and the unjust

02:01  5  enrichment.

02:01  6          And so I hope that that establishes that to the

02:01  7  extent we're talking about a legal theory the legal theory

02:01  8  was very well disclosed.

02:01  9          Before I move on to specifically addressing the

02:01  10  individual witness disclosures, does Your Honor have any

02:01  11  questions about that?

02:01  12          THE COURT:  No.

02:01  13          MR. KATZENELLENBOGEN:  So I would like to start

02:01  14  with Mr. Priddell.  So Mr. Priddell offered two opinions

02:01  15  that are identified by the Court, and I believe the Court's

02:01  16  characterization of those is at both page 5 and page 8 of

02:02  17  the tentative.

02:02  18          Would you like me to point to specific aspects of

02:02  19  the tentative or address this slightly more broadly?

02:02  20          THE COURT:  More broadly.

02:02  21          MR. KATZENELLENBOGEN:  Okay.  So what Mr. Priddell

02:02  22  was doing was assessing the cost of the actual module

02:02  23  itself.  And so one of the opinions -- it's actually his

02:02  24  second opinion -- was the amount of money that Masimo would

02:02  25  have spent to manufacture its risk module for Apple.  And

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit S
-234-

14

02:02   1    when you use the word "would have," which is in the title,

02:02   2    it starts to sound like it's a hypothetical.

02:02   3          And if you look at what he actually did, what his

02:02   4    analysis was, was to say, okay, what did we actually spend

02:02   5    to develop this module, because that's our theory, which is

02:02   6    we actually built this module, and that either this module

02:02   7    or something very similar to it would have been what we

02:02   8    would have sold to Apple.

02:02   9          And so what he says is, okay, what were the actual

02:02   10   costs?  And he looks at the 2021 documents that we disclosed

02:03   11   to Apple long ago in discovery, and he relies on the 2022

02:03   12   updates to those, which capture additional costs.  But there

02:03   13   was nothing new there.  And then what he says is, based on

02:03   14   my familiarity with having developed this project, I think

02:03   15   these are what the costs would have been if we'd done it in

02:03   16   2013 for Apple.

02:03   17         The second part -- and this might have been where

02:03   18   the Court had a little bit more pause -- which is he offers

02:03   19   an opinion about components that would have been redundant

02:03   20   as a result of Apple buying this module from Masimo.  And

02:03   21   again, here it's important to recognize that this wasn't

02:03   22   done to increase the damages.  This was done to decrease

02:03   23   them to try to be as fair and conservative as possible

02:03   24   because --

02:03   25         THE COURT:  But whether you're increasing or

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

02:03   1   decreasing damages, at the end of the day, the question is

02:03   2   did you disclose the methodology sufficiently whether these

02:04   3   supposedly new calculations, new projections, raise or lower

02:04   4   the cost?  Was the information disclosed?

02:04   5          MR. KATZENELLENBOGEN:  Yes.  And the answer is

02:04   6   yes, and that's because as the declaration says the analysis

02:04   7   of these costs is set forth in the spreadsheets that were

02:04   8   produced.  And the original methodology was produced in the

02:04   9   2021 spreadsheet that was produced at -- sorry, that's the

02:04   10  Bates number ending in 1115.  And so, yes, the methodology

02:04   11  was produced, and then a few days after the close of fact

02:04   12  discovery the updated numbers were produced.

02:04   13         And Apple appears to argue this as if the only

02:04   14  analysis is in the text of Mr. Priddell's disclosure when

02:04   15  really what he's doing is he's authenticating these

02:05   16  analyses.  And the analysis and the details are in the

02:05   17  documents that he's referring to that we produced in

02:05   18  discovery.

02:05   19         And there was also an issue about the ITC case

02:05   20  between the same parties.  And I apologize if we suggested

02:05   21  that we thought Apple was put on notice of these documents

02:05   22  because of something that happened in the ITC.  That was not

02:05   23  what we intended to argue.  Apple was on notice of these

02:05   24  because we disclosed them in our interrogatory responses in

02:05   25  this case and because we produced the documents in this

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:05   1    case.

02:05   2             The reference to the ITC case was that Apple in

02:05   3    the ITC case took extensive discovery and deposition

02:05   4    questions about the 2021 cost documents.  And so the idea

02:05   5    that any of this was a surprise or that we somehow hadn't

02:05   6    fully disclosed the methodology was what that was rebutting

02:05   7    because, of course, those transcripts are fully available in

02:05   8    this case as well.  And so then -- so that was the

02:06   9    methodology on the financial side.

02:06   10            And then what he also did is he said, okay, let me

02:06   11   take a look at all of the components and functionality of

02:06   12   the Masimo module, which the Court acknowledges that's

02:06   13   proper.  That's percipient knowledge.  And then what he did

02:06   14   is he said, okay, well, let me just see which of those

02:06   15   components are in the Apple Watch because, of course, Apple

02:06   16   could take those out, and Apple would be able to save money

02:06   17   by taking those out.

02:06   18            And so at that point, he's just lining up the

02:06   19   components and saying these are redundant, these are

02:06   20   redundant.  And Apple makes a big deal out of the fact that

02:06   21   the specific document he relied on for the list of Apple

02:06   22   parts was not produced in discovery -- it was not produced

02:06   23   during fact discovery.  It was produced after the close of

02:06   24   fact discovery.  And the reason was because Apple produced a

02:06   25   bill of costs.  And we repeatedly in our interrogatory

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:07   1   responses and Apple's interrogatory responses addressed

02:07   2   their bill of materials and their costs.  But it was

02:07   3   "Attorney's Eyes Only," so we couldn't show that to

02:07   4   Mr. Priddell.

02:07   5           So we did the next best thing, which is we said,

02:07   6   okay, hey, look, there's a publically available version.

02:07   7   Just use that to say these are the things that Apple would

02:07   8   have been able to get rid of.  And so there was certainly no

02:07   9   surprise.  And if there's any question as to that being an

02:07   10  inaccurate document or deviating in any material way from

02:07   11  the bill of materials that Apple produced, Apple is

02:07   12  certainly in a good position to be able to cross-examine

02:07   13  them on that.

02:07   14          And so those are the only two opinions that

02:07   15  Mr. Priddell offered, and so I think there was both fair

02:07   16  disclosure of them and that they were based on percipient

02:07   17  information.

02:07   18          THE COURT:  It doesn't follow that if we compared

02:07   19  your bill of costs to Apple's bill of costs that the mere

02:07   20  disclosure of those two documents constitute a disclosure of

02:08   21  an opinion as to redundancy.

02:08   22          MR. KATZENELLENBOGEN:  So it's not -- to be clear,

02:08   23  it wasn't -- it was a bill of materials.  It's listing them.

02:08   24  And that's where I think we did identify in our

02:08   25  interrogatory responses -- and I will go back to my notes

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 02:08 | 1 | here where we talked about changes to Apple's material costs |
| 02:08 | 2 | for components.  I think that was placing them on notice. |
| 02:08 | 3 | And also, when we were addressing -- and this is |
| 02:08 | 4 | on the earlier cite to July, page 25, lines 15 to 18, where |
| 02:08 | 5 | we talked about the amount Apple saved by not purchasing the |
| 02:08 | 6 | pulse oximetry hardware modules from Masimo and licensing |
| 02:08 | 7 | Masimo's technology.  But that was again placing them on |
| 02:08 | 8 | notice that what we were going -- one aspect of this was |
| 02:08 | 9 | going to say, okay, you would have purchased ours for $10 or |
| 02:08 | 10 | $100 or whatever it would have been, and you would have then |
| 02:09 | 11 | saved some amount of money. |
| 02:09 | 12 | And again, is it word for word what the witness |
| 02:09 | 13 | wrote in the disclosure?  It's not.  But I think Apple was |
| 02:09 | 14 | fairly put on notice of what the argument was going to be, |
| 02:09 | 15 | which is, look, this is based on the fact that we would have |
| 02:09 | 16 | produced this earlier, we would have sold this to you |
| 02:09 | 17 | earlier, and that your bill of costs -- your costs are going |
| 02:09 | 18 | to be important. |
| 02:09 | 19 | And so we're not -- to be clear, we're not lining |
| 02:09 | 20 | up how much we paid for it and how much they paid for it. |
| 02:09 | 21 | Let me just make sure I -- I may have bungled this slightly. |
| 02:09 | 22 | It's really the bill of materials.  It says there's an LED, |
| 02:09 | 23 | there's an emitter, there's a sensor, and there's wiring, et |
| 02:09 | 24 | cetera, and saying, okay, well, then you could get rid of |
| 02:09 | 25 | this LED.  You could get rid of this wiring.  You could get |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit S
-239-

02:09  1  rid of this.

02:09  2  And so that opinion is almost -- it's not quite

02:09  3  but it starts to get close to the level of opinion that you

02:10  4  might be able to offer under 701.  But I think they were

02:10  5  fairly put on notice that the issue -- what the issue was

02:10  6  going to be, which is our module and their savings on their

02:10  7  bill of materials.

02:10  8  So then moving on to Mr. Muhsin.  So the first

02:10  9  one, his first opinion, has to do with when Masimo would

02:10  10  have developed this module in the but-for world where they

02:10  11  collaborated with Apple.  And what he did was he said, okay,

02:10  12  how long did it actually take us to do this?  Three years?

02:10  13  Okay.  Based on my -- that's historical percipient

02:10  14  knowledge.  Based on my historical percipient knowledge, was

02:10  15  there any technical reason that we couldn't have started

02:10  16  this earlier, right?  Was there some technology that didn't

02:11  17  exist?  Was there some breakthrough?  And the answer was no.

02:11  18  So if we had started in 2013, it would have taken

02:11  19  us the same three years.  That's all he was saying, was that

02:11  20  there was no reason why it would have taken longer or why we

02:11  21  couldn't have done this in the same three years if we had

02:11  22  started.

02:11  23  And the tentative focused a little bit of

02:11  24  attention on the fact that he also said, well, as a

02:11  25  practical matter, if it had been with Apple and we'd had

Exhibit S
-240-

02:11  1    that amount of resources behind the project, it probably

02:11  2    would have gone faster.  I think that's a fair opinion, but

02:11  3    it's also probably something that's immaterial because our

02:11  4    damages expert ultimately decided to be conservative and

02:11  5    just assumed that it would have taken the same amount of

02:11  6    time.  So whether that particular part of it is in or out

02:11  7    probably doesn't matter.

02:11  8         So that opinion was proper.  It was certainly

02:11  9    disclosed, because as we went through in the interrogatory

02:11  10   response, we said but for their misappropriation, we would

02:12  11   have started in 2013, and we would have done this earlier.

02:12  12   That's all he said.

02:12  13        Then there was the amount of cost Masimo incurred

02:12  14   to develop the Masimo Health Module.  Again, this was simply

02:12  15   based on what our lost profits were.  And so, again, to do

02:12  16   that, as a matter of sort of basic logic, you would take,

02:12  17   okay, what was your costs, and what was your revenue, and

02:12  18   you subtract one from the other.  So I'm not sure we would

02:12  19   have needed to say anything to put Apple on notice that our

02:12  20   costs were relevant to our lost profits, but in fact we did.

02:12  21        And we walked through in the interrogatory

02:12  22   responses but also the analysis again of what those costs

02:12  23   are.  That was in the spreadsheet from 2021 that we

02:12  24   specifically identified in our interrogatory response in

02:12  25   July of 2022 at page 23, line 28, through page 24, line 3,

Exhibit S
-241-

02:13   1    with the Bates number ending in 3487.

02:13   2            And so Your Honor asked about the methodology that

02:13   3    he used.  Yes, the methodology that he used was disclosed

02:13   4    and then we updated those same spreadsheets.  And I think

02:13   5    there were a few additional spreadsheets, because there were

02:13   6    some additional type of costs that simply hadn't been

02:13   7    incurred yet relating to things like certain types of

02:13   8    production tooling that I think was purchased after 2021.

02:13   9            And so again, as part of your admonition to be

02:13   10   forthcoming with this information, we volunteered it.  We

02:13   11   supplemented all of these productions.  And then rather than

02:13   12   have this simply be a footnote in an expert report that said

02:13   13   I confirmed with Mr. Muhsin that Masimo could have started

02:13   14   building this in 2013 and it would have taken the same

02:14   15   amount of time, which is typically what would happen, we put

02:14   16   together a disclosure so that they could read it, review the

02:14   17   bases, and take his deposition.

02:14   18           And I think it's important to note that certainly

02:14   19   in terms of conduct of the parties this is, I think,

02:14   20   probably far less substantive than some of the things that

02:14   21   Apple has done, which I raise not to suggest that we did

02:14   22   something wrong and because they did something worse, you

02:14   23   should let ours go, but because this reflects the parties'

02:14   24   understanding of the rules and the process for how this

02:14   25   works, which is that Apple provided rebuttal expert reports.

02:14  1        And one of their -- their technical expert relied
02:14  2  on a previously undisclosed set of testing of one of our
02:14  3  products done by a third party that wasn't done in -- wasn't
02:14  4  produced in fact discovery.  They never mentioned the third
02:14  5  party.  And so we may end up having a dispute about whether
02:14  6  we get to depose that third party.  But for Apple's
02:15  7  arguments here, we never would have thought that's something
02:15  8  we should move to strike.
02:15  9        Similarly, Apple's damages expert on rebuttal says
02:15  10  that the expert relied --
02:15  11        THE COURT:  We're focusing on your disclosures.
02:15  12        MR. KATZENELLENBOGEN:  Yes.  I understand that.
02:15  13  And in terms of the proprietary of our disclosures, I think
02:15  14  we contrast what we did --
02:15  15        THE COURT:  Well, I don't want to contrast.  I
02:15  16  want to know what you did and why it was appropriate.
02:15  17        MR. KATZENELLENBOGEN:  Okay.  Yes.  And why we did
02:15  18  it and why it was appropriate was because this is the type
02:15  19  of information that would typically simply be a footnote in
02:15  20  an expert's report.  And what we did in response to Your
02:15  21  Honor saying be forthcoming is we put together five, six,
02:15  22  seven-page disclosures laying all of that information out.
02:15  23  And all I meant was that simply we seemed to have been
02:15  24  punished or criticized in the tentative for being more
02:15  25  forthcoming.  And I would hate to think that we would have

02:15  1    been better off if we had simply done what Apple did and

02:16  2    simply add the footnote.  I meant to keep it anchored on

02:16  3    what we did.

02:16  4          So if you have any questions -- that addresses the

02:16  5    26(e) issue.

02:16  6          THE COURT:  We need to move on.

02:16  7          MR. KATZENELLENBOGEN:  Okay.  May I have, like, a

02:16  8    minute to address the expert report rule?

02:16  9          THE COURT:  Fine.

02:16  10         MR. KATZENELLENBOGEN:  I'll try to be super quick,

02:16  11   which is I really -- if we went through the requirements of

02:16  12   (a)(2)(B), because these are such focused opinions, the

02:16  13   complete statement of all opinions and bases therefore, the

02:16  14   facts or data considered by the witness, and any exhibits

02:16  15   that will be used to summarize them, those are all in those

02:16  16   reports, so these would satisfy (a)(2)(B).  The

02:16  17   qualifications, publications, testimony, and statement of

02:16  18   compensation, those formalities weren't in there.  But none

02:16  19   of these witnesses are being compensated for this, and we

02:16  20   set forth that we can certainly provide that ministerial

02:16  21   information.

02:16  22         And finally, on the standard as to whether it's

02:16  23   based on being an employee or whether it's based on being

02:17  24   percipient, I would just say that having gone through the

02:17  25   two cases that the Court cited in the tentative and all of

02:17  1    the cases that Apple cited, that all of those cases cite to

02:17  2    Goodman, and they cite to earlier cases, and they don't

02:17  3    mention the other line of cases.  They don't mention it at

02:17  4    all, and that Goodman, although the opinion did come out in

02:17  5    2011 after the 2010 changes to the rules -- it was submitted

02:17  6    on December 6, 2010, five days after the effective date, and

02:17  7    all of the district court proceedings had occurred under the

02:17  8    prior version of the rule.

02:17  9            And I think if Your Honor takes another look

02:17  10   at it -- and I would just ask Your Honor -- I'm sure you

02:17  11   looked at this already but to take a second look at Doe 1,

02:17  12   Allstate, and the Zofran cases that we've cited, because I

02:17  13   think if Your Honor looks at that, all of the cases that

02:17  14   actually look at the analysis and walk through both lines of

02:18  15   cases, even though they may say prior to 2010, this was

02:18  16   majority, this is minority, they all come out the same way,

02:18  17   which is whatever we may think of the policy, Rule 26 is

02:18  18   very clear.

02:18  19           And then finally, I would just conclude with there

02:18  20   may be an issue as to whether -- if there are aspects of the

02:18  21   tentative that stand, whether we are addressing the issue as

02:18  22   to whether these witnesses can testify in front of the jury

02:18  23   about these facts or these opinions -- I guess particularly

02:18  24   the opinions.  The facts wouldn't be at issue -- or whether

02:18  25   the experts are allowed to rely on them, even if they're not

Exhibit S
-245-

02:18   1   admissible.  And if what we are dealing with is a situation

02:18   2   where it's, okay, of course, like in the footnote -- your

02:18   3   experts can rely on this, but I don't want your employee

02:18   4   witnesses offering independent opinions -- that's one issue.

02:18   5          THE COURT:  That issue is not before me today.

02:19   6          MR. KATZENELLENBOGEN:  Okay.

02:19   7          THE COURT:  Either it's in the report and there's

02:19   8   a sufficient basis to rely or there isn't.  I mean, nothing

02:19   9   we do today is going to change the sufficiency of the report

02:19   10  and the bases for the opinions.

02:19   11         Okay.  Thank you.

02:19   12         MR. KATZENELLENBOGEN:  Thank you, Your Honor.

02:19   13         THE COURT:  Ms. Frazier.

02:19   14         MS. FRAZIER:  Yes, Your Honor.

02:19   15         Your Honor, I'd like to start with where

02:19   16  Mr. Katzenellenbogen left off, which is whether or not

02:19   17  Rule 26(a)(2)(B) reports were required for these witnesses

02:19   18  and what the appropriate standard is for requiring that.

02:19   19  Your Honor, the tentative in its acknowledgement of Goodman

02:19   20  and its progeny is exactly right with respect to the

02:19   21  standard there.

02:19   22         I believe that the descriptions we've heard from

02:19   23  counsel about the disclosures of Priddell and Muhsin prove

02:19   24  our point, Your Honor.  These are hypotheticals about what

02:19   25  would have happened in a world in 2013 if reality had played

Exhibit S
-246-

26

02:20  1    out in a manner other than it actually did.  And

02:20  2    Mr. Priddell then takes that hypothetical reality and does

02:20  3    an analysis of what may or may not have come out of the

02:20  4    Apple Watch under this hypothetical scenario that then tries

02:20  5    to get linked up to various costs.

02:20  6            Certainly, Your Honor, the reports in their

02:20  7    current state do not satisfy 26(a)(2)(B).  As the tentative

02:20  8    recognizes, they fall far short of that standard.  To give

02:20  9    Your Honor just an example, the Priddell disclosure -- and I

02:20  10   will ask counsel to please, as you did with me, if you think

02:20  11   we're in territory that needs to be sealed, please

02:20  12   interject.  That analysis, Your Honor, includes a

02:20  13   spreadsheet with hundreds of components, and the detailed

02:20  14   level of whether it would be placed or not is a yes, no, or

02:20  15   a maybe.  It's just not the level of basis and rationale

02:21  16   that would be required under 26(a)(2)(B).

02:21  17           I think that the nature of these reports -- the

02:21  18   tentative is certainly correct that they go far beyond

02:21  19   percipient experience and into the realm of a retained

02:21  20   expert and therefore should be struck for that reason.

02:21  21           With respect to whether the information in them

02:21  22   was new, while Mr. Katzenellenbogen pointed us to some

02:21  23   disclosures in the interrogatory response that deal

02:21  24   generally with this theory that Apple may have purchased a

02:21  25   pulse oximetry module from Masimo in the but-for world, the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:21  1   specifics of this theory that are then disclosed in the

02:21  2   Priddell and Muhsin disclosures are no where in that

02:21  3   interrogatory response.

02:21  4          And if I could just correct one thing, there were

02:21  5   references to Exhibit 12, and specifically to page 29 of

02:22  6   that exhibit, where there is a reference to Apple's costs,

02:22  7   Your Honor.  I won't read the whole thing out loud.  It does

02:22  8   go into some confidential material.  But what it says is

02:22  9   "changes to Apple's material cost for components associated

02:22  10  with noninvasive physiological monitoring, e.g., back

02:22  11  crystal assembly for Apple Watch, as Apple modifies those

02:22  12  components based on plaintiffs' trade secrets, provide

02:22  13  evidence that Apple determined plaintiffs' trade secrets

02:22  14  provided Apple more value than the increased component cost.

02:22  15         You'll see the next sentence and citation, Your

02:22  16  Honor, goes on to show changes to costs in Apple's back

02:22  17  crystal component between the Series 5 and Series 6.  It's a

02:22  18  completely different theory about Apple's costs in one

02:23  19  version of its watch as compared to another.  It is not the

02:23  20  theory that we see disclosed in the Priddell and Muhsin

02:23  21  disclosures about what the hypothetical price differential

02:23  22  would have been if Masimo had created a module for the Apple

02:23  23  Watch, which it did not.

02:23  24         No where in the disclosures did we hear mention of

02:23  25  Mr. Priddell at all.  He was not disclosed as having any

02:23   1    relevant knowledge with respect to damages.

02:23   2             And finally, Your Honor, with respect to the

02:23   3    spreadsheets, those spreadsheets themselves, the updated

02:23   4    analysis that was referred to, were provided after the close

02:23   5    of fact discovery.  They are not factual documents.

02:23   6    Exhibit 9 to Apple's opening motion, Your Honor, is counsel

02:23   7    for plaintiff stating that those documents are not an

02:24   8    analysis Masimo performs in the ordinary course of business,

02:24   9    nor are the documents produced kept in the ordinary course

02:24   10   of business.  Rather, this analysis was done for this

02:24   11   litigation as part of expert discovery.

02:24   12            So again, the notion that these spreadsheets were

02:24   13   fully disclosed is not accurate.  They were not.  They are

02:24   14   expert analysis.  And if plaintiffs had wanted to rely on

02:24   15   them, they should have been submitted with a full report

02:24   16   under Rule 26(a)(2)(B).

02:24   17            THE COURT:  Thank you.

02:24   18            Two minutes.

02:24   19            MR. KATZENELLENBOGEN:  First, the reference that

02:24   20   counsel makes, I believe, is to the 2022 updates as set

02:24   21   forth in at least Mr. Priddell's disclosure.  The cost basis

02:25   22   is something that was prepared in the ordinary course of

02:25   23   business, the 2021 version of that.  And if there was

02:25   24   anything that was inconsistent with that in an e-mail from

02:25   25   counsel, then that was just mistaken.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 02:25 | 1 | Quickly, I misspoke when I said Goodman was |
| 02:25 | 2 | decided six days after the effective date of the 2010 |
| 02:25 | 3 | amendments.  It was four days before.  It was December 6, |
| 02:25 | 4 | and the amendments were effective in 2010.  And so I think |
| 02:25 | 5 | that's why Goodman isn't addressing -- sorry, effectively it |
| 02:25 | 6 | was December 10, and so that's why Goodman and its progeny |
| 02:25 | 7 | aren't addressing the correct wording of the rule. |
| 02:25 | 8 | Again, I won't belabor that point, but simply if |
| 02:25 | 9 | Your Honor could take a second look at the cases that we |
| 02:25 | 10 | cited, I think you will see that all of the cases that look |
| 02:25 | 11 | at both lines of cases say, well, the line of cases that |
| 02:25 | 12 | follows the wording of the rule, they've got the right of |
| 02:25 | 13 | this. |
| 02:25 | 14 | And then with respect to Priddell, I think we |
| 02:26 | 15 | addressed this in the briefing.  But again, this was simply |
| 02:26 | 16 | an issue of trying to be as forthcoming as we could.  There |
| 02:26 | 17 | were a number of Masimo employees, including Mr. Scruggs, |
| 02:26 | 18 | who had the information, the percipient information, who |
| 02:26 | 19 | could have provided this same type of testimony.  But due to |
| 02:26 | 20 | Mr. Scruggs' personal circumstances, we were concerned that |
| 02:26 | 21 | he wouldn't be available for deposition during expert |
| 02:26 | 22 | discovery, and we didn't want to be in a situation of not |
| 02:26 | 23 | being able to put forth the person in the disclosures for a |
| 02:26 | 24 | deposition.  And so that's why we had Mr. Priddell prepare |
| 02:26 | 25 | this, based on the same information that was disclosed in |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

30

| | | |
|---|---|---|
| 02:26 | 1 | our interrogatory responses.  And so again, I think that's |
| 02:26 | 2 | all part of us trying to be more forthcoming than we needed |
| 02:26 | 3 | to be. |
| 02:26 | 4 | If Your Honor has any questions, I'll answer them. |
| 02:27 | 5 | Otherwise, I appreciate it. |
| 02:27 | 6 | THE COURT:  No.  Thank you.  The matter will stand |
| 02:27 | 7 | submitted.  I want to take another look at this.  Thank you |
| 02:27 | 8 | very much. |
| 02:27 | 9 | (Whereupon, the proceedings were concluded.) |
| 02:27 | 10 | *   *   * |
| 02:27 | 11 | |
| 02:27 | 12 | |
| 02:27 | 13 | |
| 02:27 | 14 | |
| 02:27 | 15 | |
| 02:27 | 16 | |
| 02:27 | 17 | |
| 02:27 | 18 | |
| 02:27 | 19 | |
| 02:27 | 20 | |
| 02:27 | 21 | |
| 02:27 | 22 | |
| 02:27 | 23 | |
| 02:27 | 24 | |
| 02:27 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

31

|       |    |
|-------|----|
| 02:27 | 1  |
| 02:27 | 2  |
| 02:27 | 3  |
| 02:27 | 4  |
| 02:27 | 5  |
| 02:27 | 6  |
| 02:27 | 7  |
| 02:27 | 8  |
| 02:27 | 9  |
| 02:27 | 10 |
| 02:27 | 11 |
| 02:27 | 12 |
| 02:27 | 13 |
| 02:27 | 14 |
| 02:27 | 15 |
| 02:27 | 16 |
| 02:27 | 17 |
|       | 18 |
|       | 19 |
|       | 20 |
|       | 21 |
|       | 22 |
|       | 23 |
|       | 24 |
|       | 25 |

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  December 3, 2022

/s/   Sharon A. Seffens  12/3/22
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

MR. KATZENELLENBOGEN: [18]  3/6 4/12
 4/16 6/20 8/4 8/25 9/4 13/13 13/21 15/5 17/22
 22/12 22/17 23/7 23/10 25/6 25/12 28/19
MS. FRAZIER: [3]  3/10 3/15 25/14
THE CLERK: [1]  3/2
THE COURT: [21]  3/9 3/13 4/9 4/15 6/19 8/3
 8/24 9/2 13/12 13/20 14/25 17/18 22/11 22/15
 23/6 23/9 25/5 25/7 25/13 28/17 30/6

**$**
**$10** [1]  18/9
**$100** [1]  18/10

**/**
**/s** [1]  31/15

**0**
**02109** [1]  2/12
**0404** [1]  2/5

**1**
**1-1053** [1]  1/20
**10** [2]  10/23 29/6
**1053** [1]  1/20
**1097115S** [1]  10/11
**11** [2]  4/18 8/10
**11073487** [1]  10/11
**1115** [1]  15/10
**12** [6]  7/23 8/10 8/17 10/23 11/8 27/5
**12/3/22** [1]  31/15
**1225** [1]  2/14
**13** [1]  8/17
**14th** [1]  2/4
**15** [3]  9/11 11/7 18/4
**17** [2]  9/22 9/23
**18** [3]  9/23 11/7 18/4
**19** [1]  11/13
**1925** [1]  2/7
**1:44** [1]  3/1

**2**
**20** [1]  9/23
**2010** [5]  24/5 24/6 24/15 29/2 29/4
**2011** [1]  24/5
**2013** [10]  7/2 8/16 8/18 9/8 10/4 14/16 19/18
 20/11 21/14 25/25
**2021** [10]  8/7 10/15 10/16 11/22 14/10 15/9
 16/4 20/23 21/8 28/23
**2022** [10]  1/17 3/1 8/13 9/11 10/6 11/14 14/11
 20/25 28/20 31/13
**2040** [1]  2/4
**21** [1]  3/1
**22** [2]  11/13 31/15
**23** [2]  10/12 20/25
**24** [2]  10/12 20/25
**25** [3]  10/23 11/6 18/4
**26** [8]  3/20 6/3 23/5 24/17 25/17 26/7 26/16
 28/16
**2600** [1]  2/14
**27** [1]  8/7
**274-3152** [1]  2/15
**28** [3]  10/12 20/25 31/7
**29** [2]  11/12 27/5

**3**
**30** [1]  11/20
**310** [1]  2/8
**3152** [1]  2/15
**3450** [1]  2/8
**3487** [1]  11/19
**3619** [1]  11/19

**4**
**411** [1]  1/20
**4th** [1]  1/20

**5**
**526-6000** [1]  2/12

**551-3450** [1]  2/8
**6**
**60** [1]  2/11
**600** [1]  2/7
**6000** [1]  2/12
**612** [1]  1/21
**617** [1]  2/12

**7**
**701** [1]  19/4
**720** [1]  2/15
**753** [1]  31/6
**760-0404** [1]  2/5

**8**
**80202** [1]  2/15
**804-8655** [1]  1/21
**8655** [1]  1/21

**9**
**90067** [1]  2/8
**92614** [1]  2/5
**92701** [1]  1/20
**949** [1]  2/5

**A**
**able** [7]  5/21 9/9 16/16 17/8 17/12 19/4 29/23
**about** [13]  13/7 13/11 14/19 15/19 16/4 18/1
 18/5 21/2 22/5 24/23 25/23 25/24 27/18 27/21
**above** [2]  5/16 31/9
**above-entitled** [1]  31/9
**accordingly** [1]  3/20
**account** [1]  11/3
**accurate** [1]  28/13
**accused** [1]  10/22
**acknowledgement** [1]  25/19
**acknowledges** [1]  16/12
**actual** [2]  13/22 14/9
**actually** [8]  12/11 13/23 14/3 14/4 14/6 19/12
 24/14 26/1
**add** [1]  23/2
**added** [1]  12/12
**adding** [1]  12/7
**addition** [3]  5/23 10/19 12/19
**additional** [6]  11/8 11/23 12/7 14/12 21/5 21/6
 12/16 12/16 12/17 13/19 23/8
**addressed** [2]  17/1 29/15
**addresses** [1]  23/4
**addressing** [9]  4/17 6/22 7/18 7/20 13/9 18/3
 24/21 29/5 29/7
**admissible** [1]  25/1
**admonition** [5]  4/19 4/22 5/15 12/1 21/9
**adopted** [1]  3/17
**affirmatively** [1]  12/2
**after** [7]  15/11 16/23 21/8 24/5 24/6 28/4 29/2
**afternoon** [4]  3/6 3/9 3/10 3/13
**again** [14]  6/2 9/11 9/25 14/21 18/7 18/12
 20/14 20/15 20/22 21/9 28/12 29/8 29/15 30/1
**ago** [1]  14/11
**ahead** [2]  5/19 12/17
**al** [2]  1/9 3/3
**algorithms** [1]  24/6
**all** [22]  6/4 7/18 8/17 8/25 11/19 16/11 19/19
 20/12 21/11 22/22 22/23 23/13 23/15 23/25
 24/1 24/4 24/7 24/14 24/7 27/25 29/10 30/2
**allow** [1]  4/3
**allowed** [2]  8/21 24/25
**Allstate** [1]  24/12
**almost** [2]  6/14 19/2
**already** [1]  24/11
**also** [8]  5/5 12/6 15/19 16/10 18/3 19/24 20/3
 20/22
**although** [1]  24/4
**amendments** [2]  29/3 29/4
**amount** [5]  11/3 13/24 18/5 18/11 20/1 20/5
 20/13 21/15
**Ana** [3]  1/16 1/20 3/1

**analyses** [1]  15/16
**analysis** [15]  7/9 14/4 16/16 11/22 14/4 15/6
 15/14 15/16 20/22 24/14 26/3 26/12 28/4 28/8
 28/10 28/14
**anchored** [1]  23/2
**Angeles** [1]  2/8
**another** [4]  8/6 24/9 27/19 30/7
**answer** [3]  15/5 19/17 30/4
**answered** [1]  5/8
**any** [13]  4/7 6/15 6/17 8/5 13/10 16/5 17/9
 17/10 19/15 23/4 23/14 27/25 30/4
**anything** [4]  6/23 7/1 20/19 28/24
**apologies** [1]  9/6
**apologize** [1]  15/20
**appearances** [2]  2/1 3/4
**appears** [1]  15/13
**APPLE** [62]
**Apple's** [20]  3/14 8/14 9/13 9/17 9/19 9/21
 10/21 11/2 12/15 12/20 17/1 17/19 19/1 22/6
 22/9 27/6 27/9 27/16 27/18 28/6
**Apples'** [1]  4/25
**applications** [1]  11/5
**appreciate** [1]  30/5
**approached** [1]  7/2
**appropriate** [3]  22/16 22/18 25/18
**April** [2]  8/7 9/11
**April 15** [1]  9/11
**April 27** [1]  8/7
**are** [34]
**aren't** [1]  29/7
**argue** [2]  15/13 15/23
**argument** [1]  18/14
**arguments** [1]  22/7
**arose** [1]  5/5
**arrangement** [1]  8/16
**as** [45]
**ask** [3]  5/11 24/10 26/10
**asked** [1]  21/2
**asking** [1]  7/16
**aspect** [2]  13/2 18/8
**aspects** [2]  13/18 24/20
**assembly** [1]  12/22 27/11
**asserting** [1]  4/25
**assessing** [1]  13/22
**associated** [2]  12/20 27/9
**assumed** [1]  20/5
**attention** [1]  19/24
**Attorney's** [1]  17/3
**August** [1]  11/8
**August 12** [1]  11/8
**authenticating** [1]  15/15
**available** [1]  16/7 17/6 29/21
**avoided** [1]  10/21

**B**
**back** [5]  4/24 12/21 17/25 27/10 27/16
**based** [11]  12/23 14/13 17/16 18/15 19/13
 19/14 20/15 23/23 23/23 27/12 29/25
**bases** [4]  6/9 21/17 23/13 25/10
**basic** [1]  20/16
**basis** [4]  5/12 25/8 26/15 28/21
**Bates** [5]  10/10 10/13 11/18 15/10 21/1
**be** [40]
**BEAR** [2]  2/4 2/7
**because** [22]  4/24 8/15 10/14 10/19 11/21
 14/5 14/24 15/6 15/22 15/24 15/25 16/7 16/16
 16/24 20/3 20/9 21/5 21/22 21/23 22/18 23/12
 24/12
**been** [14]  4/2 9/9 14/7 14/15 14/17 14/19 17/8
 18/10 19/25 21/6 22/23 23/1 27/22 28/15
**before** [5]  4/7 5/22 13/9 25/5 29/3
**began** [1]  4/25
**begin** [1]  4/17
**beginning** [1]  8/7
**behalf** [1]  3/11
**behind** [1]  20/1
**being** [8]  5/24 6/9 17/9 22/24 23/19 23/23
 23/23 29/23
**belabor** [1]  29/8

**B**
believe **[4]** 7/23 13/15 25/22 28/20
believes **[1]** 6/23
Ben **[1]** 3/7
benefit **[1]** 10/24
BENJAMIN **[1]** 2/3
best **[1]** 17/5
better **[1]** 23/1
between **[3]** 4/13 15/20 27/17
beyond **[3]** 3/22 5/16 26/18
big **[2]** 6/20 16/20
Bilal **[3]** 8/8 9/25 11/9
bill **[10]** 10/14 16/25 17/2 17/11 17/19 17/19 17/23 18/17 18/22 19/7
billions **[1]** 7/16
bit **[3]** 9/2 14/18 19/23
black **[1]** 6/6
Boston **[1]** 2/12
both **[7]** 7/7 12/9 13/4 13/16 17/15 24/14 29/11
bottom **[1]** 8/11
box **[1]** 6/6
branded **[1]** 9/19
breakthrough **[1]** 19/17
briefing **[1]** 29/15
bringing **[1]** 8/22
broadly **[2]** 13/19 13/20
building **[1]** 21/14
built **[1]** 14/6
bungled **[1]** 18/21
business **[6]** 7/4 8/16 8/19 28/8 28/10 28/23
buying **[2]** 7/9 14/20

**C**
CA **[3]** 1/20 2/5 2/8
calculations **[1]** 15/3
CALIFORNIA **[3]** 1/5 1/16 3/1
call **[1]** 5/10
Calling **[1]** 3/2
can **[4]** 4/6 8/1 8/1 8/1 8/6 23/20 24/22 25/3
capture **[1]** 14/12
captured **[1]** 11/23
careful **[1]** 12/14
case **[4]** 4/8 5/14 8/8 15/19 15/25 16/1 16/2 16/3 16/8
cases **[12]** 23/25 24/1 24/1 24/2 24/3 24/12 24/13 24/15 29/9 29/10 29/11 29/11
CENTRAL **[1]** 1/5
Century **[1]** 2/7
certain **[1]** 21/7
certainly **[1]** 17/8 17/12 20/8 21/18 23/20 26/6 26/18
CERTIFICATE **[1]** 31/4
CERTIFIED **[1]** 1/9
certify **[1]** 31/6
cetera **[1]** 18/24
change **[1]** 25/9
changes **[6]** 12/20 13/2 18/1 24/5 27/9 27/16
characterization **[1]** 13/16
circumstances **[1]** 29/20
citation **[1]** 27/15
citations **[1]** 7/23
cite **[4]** 8/16 18/4 24/1 24/2
cited **[4]** 23/25 24/1 24/12 29/10
cites **[2]** 8/2 8/12
clear **[4]** 6/3 17/22 18/19 24/18
close **[4]** 15/11 16/23 19/3 28/4
closing **[1]** 12/3
co **[2]** 2/15 9/19
co-branded **[1]** 9/19
Code **[1]** 31/7
collaborated **[1]** 19/11
collaboration **[2]** 7/4 8/15
combining **[1]** 10/4
come **[3]** 24/4 24/16 26/3
compared **[2]** 17/18 27/19
compensated **[1]** 23/19
compensation **[1]** 23/18
complete **[1]** 23/13

completely **[1]** 27/18
completing **[1]** 19/15
component **[5]** 12/25 13/3 13/3 27/14 27/17
components **[10]** 12/20 12/23 14/19 16/11 16/15 16/19 18/2 26/13 27/9 27/12
concern **[1]** 6/24
concerned **[1]** 29/20
conclude **[1]** 24/19
concluded **[1]** 30/9
conduct **[1]** 21/19
Conference **[1]** 31/11
confidential **[3]** 6/24 7/1 27/8
confirmed **[1]** 21/13
conformance **[1]** 31/10
consecutive **[1]** 8/11
conservative **[3]** 12/18 14/23 20/4
considered **[1]** 23/14
constitute **[1]** 17/20
consumers **[1]** 8/23
contained **[1]** 3/25
contention **[1]** 11/15
context **[1]** 5/5
continued **[4]** 8/19 10/6 10/19 11/1
contrast **[2]** 22/14 22/15
conversation **[1]** 6/1
CORPORATION **[2]** 1/9 3/3
correct **[4]** 26/18 27/4 29/7 31/8
cost **[9]** 10/14 10/16 13/22 15/4 16/4 20/13 27/9 27/14 28/21
costs **[26]** 11/23 12/7 12/9 12/20 13/1 13/3 13/3 14/10 14/12 14/15 15/7 16/25 17/12 17/19 17/19 18/1 18/17 18/17 20/17 20/20 20/22 21/6 26/5 27/6 27/16 27/18
could **[14]** 6/4 9/18 11/23 12/14 16/16 18/24 18/25 18/25 21/13 21/16 24/7 24/9 29/16 29/19
couldn't **[3]** 17/3 19/15 19/21
counsel **[4]** 2/1 3/4 6/23 25/23 26/10 28/6 28/20 28/25
couple **[1]** 6/11
course **[6]** 16/7 16/15 25/2 28/8 28/9 28/22
court **[9]** 1/4 7/14 9/3 13/15 14/18 16/12 22/25 24/7 31/16
Court's **[1]** 13/15
Courthouse **[1]** 1/19
created **[1]** 27/22
criticism **[1]** 12/15
criticized **[1]** 22/24
cross **[1]** 17/12
cross-examine **[1]** 17/12
crystal **[1]** 12/22 27/11 27/17
current **[1]** 26/7
CUTLER **[2]** 2/11 2/14

**D**
damages **[13]** 4/21 5/20 5/22 7/18 7/25 8/10 12/11 12/13 14/22 15/1 20/4 22/9 28/1
data **[1]** 23/14
date **[3]** 24/6 29/2 31/13
day **[1]** 15/1
days **[4]** 15/11 24/6 29/2 29/3
deadline **[1]** 11/15
deal **[2]** 16/20 26/23
dealing **[1]** 25/1
December **[5]** 1/17 24/6 29/3 29/6 31/13
December 10 **[1]** 29/6
December 6 **[2]** 24/6 29/3
decided **[2]** 20/4 29/2
declaration **[2]** 7/24 15/6
decrease **[1]** 14/22
decreasing **[1]** 15/1
Defendant **[1]** 1/12 2/9
Denver **[1]** 2/15
depose **[1]** 22/6
deposition **[8]** 5/9 5/25 11/9 12/16 16/3 21/17 29/21 29/24
depositions **[1]** 4/7 6/4
descriptions **[1]** 25/22

detailed **[2]** 3/17 26/13
details **[2]** 9/12 19/18
determine **[1]** 11/1
determined **[2]** 12/24 27/13
determining **[1]** 10/8
develop **[3]** 12/10 14/5 20/14
developed **[4]** 9/14 9/17 14/14 19/10
development **[2]** 10/16 11/11
deviating **[1]** 17/10
devices **[1]** 8/23
Diab **[3]** 3/24 7/20 8/9
did **[26]** 4/25 6/2 12/4 14/3 14/4 15/2 16/10 16/13 17/5 17/24 19/11 19/12 20/20 21/21 21/22 22/12 22/16 22/17 22/20 23/1 23/3 24/4 26/1 26/10 27/23 27/24
didn't **[3]** 7/13 19/16 29/22
different **[1]** 27/18
differential **[1]** 27/21
directly **[1]** 5/8
disagree **[1]** 5/2
disclose **[2]** 8/18 15/2
disclosed **[20]** 4/1 8/13 9/7 10/17 10/17 11/9 11/16 11/17 13/8 14/10 15/4 15/24 16/6 20/9 21/3 27/1 27/20 27/25 28/13 29/25
discloses **[1]** 11/16
disclosure **[11]** 5/22 10/19 11/8 15/14 17/16 17/20 17/20 18/13 21/16 26/9 28/21
disclosures **[22]** 3/21 3/23 3/25 4/23 5/1 5/4 6/2 6/5 7/12 7/16 10/6 11/25 13/10 22/11 22/13 22/22 25/3 26/23 27/2 27/21 27/24 29/23
discovery **[15]** 4/1 4/21 7/24 12/3 14/11 15/12 15/18 16/3 16/22 16/23 16/24 22/4 28/5 28/11 29/22
discussion **[2]** 5/13 6/8
discussions **[1]** 5/17
dispute **[3]** 4/25 5/24 22/5
disrupt **[1]** 4/7
district **[3]** 1/4 1/5 24/7
DIVISION **[1]** 1/6
do **[9]** 4/6 4/13 8/3 9/5 19/9 19/12 20/15 25/9 26/7
document **[2]** 16/21 17/10
documents **[16]** 10/7 10/18 11/17 11/19 12/4 12/7 12/8 14/10 15/17 15/25 15/25 16/4 17/20 28/5 28/7 28/9
Doe **[1]** 24/11
does **[6]** 5/24 13/10 26/2 27/7
doesn't **[2]** 17/18 20/7
doing **[3]** 12/8 13/22 15/15
dollars **[1]** 7/17
don't **[7]** 6/25 7/25 8/3 22/15 24/2 24/3 25/3 21/21 22/3 22/3 23/3 23/1 28/10
done **[11]** 5/14 14/15 14/22 14/22 19/21 20/11 21/21 22/3 22/3 23/1 28/10
DORR **[2]** 2/11 2/14
down **[3]** 8/11 8/24 9/2
due **[1]** 29/19
during **[3]** 4/1 16/23 29/21

**E**
e-mail **[1]** 28/24
e.g **[2]** 12/21 27/10
earlier **[8]** 9/10 9/14 18/4 18/16 18/17 19/16 20/11 24/2
early **[1]** 8/7
East **[1]** 2/7
effective **[3]** 24/6 29/2 29/4
effectively **[1]** 29/5
either **[2]** 14/6 25/7
emitter **[1]** 18/23
employee **[3]** 5/11 23/23 25/3
employees **[2]** 6/4 29/17
end **[3]** 5/11 15/1 22/5
ending **[3]** 11/18 15/10 21/1
ends **[1]** 5/3
enrichment **[3]** 7/8 11/2 13/5
entirely **[1]** 6/14
entitled **[1]** 31/9
establishes **[2]** 6/13 13/6

**E**

et [3]  1/9 3/3 18/23
eve [1]  12/1
even [2]  24/15 24/25
evidence [4]  5/4 6/13 12/24 27/13
exactly [1]  25/20
examine [1]  17/12
example [1]  26/9
exceeds [1]  3/18
exhibit [6]  7/23 8/10 8/17 27/5 27/6 28/6
Exhibit 12 [2]  7/23 8/17
Exhibit 9 [1]  28/6
exhibits [1]  23/14
exist [1]  19/17
expenses [1]  12/10
experience [1]  26/19
expert [22]  5/6 5/7 5/10 5/18 5/21 5/22 6/7 6/9
 7/17 11/1 12/15 20/4 21/12 21/25 22/1 22/9
 22/10 23/8 26/20 28/11 28/14 29/21
expert's [2]  6/1 22/20
experts [4]  4/4 5/7 24/25 25/3
explain [1]  5/3
explained [1]  10/24
extensive [1]  16/3
extent [3]  6/15 7/15 13/7
Eyes [1]  17/3

**F**

fact [11]  4/1 5/14 15/11 16/20 16/23 16/24
 18/15 19/24 20/20 22/4 28/5
facts [5]  6/14 10/8 23/14 24/23 24/24
factual [1]  28/5
fair [3]  14/23 17/15 20/2
fairly [2]  18/14 19/5
fall [1]  26/8
familiar [1]  5/23
familiarity [1]  14/14
far [3]  21/20 26/8 26/18
faster [1]  20/2
few [4]  5/3 6/7 15/11 21/5
finally [5]  11/14 12/19 23/22 24/19 28/2
financial [2]  11/24 16/9
Fine [1]  23/9
first [7]  4/18 5/20 6/10 10/14 19/8 19/9 28/19
five [2]  22/21 24/6
Floor [1]  2/4
focused [2]  19/23 23/12
focusing [1]  22/11
follow [1]  17/18
follows [1]  27/12
footnote [6]  5/12 6/1 21/12 22/19 23/2 25/2
foregoing [1]  31/7
form [1]  6/2
formalities [1]  23/18
format [1]  31/10
forth [4]  15/7 23/20 28/21 29/23
forthcoming [7]  4/20 12/2 21/10 22/21 22/25
 29/16 30/2
found [1]  3/25
four [2]  6/4 29/3
FRAZIER [3]  2/10 3/11 25/13
frequently [1]  5/13
front [1]  24/22
full [2]  4/18 28/15
fully [3]  16/6 16/7 28/13
fulsome [1]  11/15
functionality [1]  16/11

**G**

gave [1]  5/15
generally [2]  7/22 26/24
get [11]  5/25 9/12 12/3 12/13 17/8 18/24
 18/25 18/25 19/3 22/6 26/5
gets [1]  8/5
getting [1]  6/3
give [2]  7/14 26/8
go [7]  3/21 5/16 8/4 17/25 21/23 26/18 27/8
goal [1]  8/22
goes [1]  27/16

going [9]  4/10 10/18 13/2 18/8 18/9 18/14
 18/16 18/25 24/12
gone [2]  21/17 25/17
good [5]  3/6 3/9 3/10 3/13 17/12
Goodman [6]  24/2 24/4 25/19 29/1 29/5 29/6
got [2]  10/24 29/12
gotten [1]  10/5
grade [1]  8/22
guess [1]  24/23

**H**

had [18]  7/3 7/15 8/9 8/20 11/22 12/10 14/18
 19/18 19/21 19/25 19/25 23/1 24/7 25/25
 27/22 28/14 29/18 29/24
hadn't [2]  16/5 21/6
HALE [2]  2/11 2/14
happen [1]  21/15
happened [2]  15/22 25/25
happens [1]  5/13
happy [1]  6/18
hardware [8]  9/15 9/20 10/10 10/21 11/4 11/6
 11/11 18/6
harm [2]  9/8 10/24
harmed [1]  8/14
has [8]  3/25 5/7 5/14 6/17 10/7 19/9 21/21
 30/4
hate [1]  22/25
have [58]
having [5]  6/6 14/14 22/5 23/24 27/25
he [20]  14/3 14/9 14/10 14/11 14/13 14/18
 16/10 16/10 16/13 16/14 16/16 21 19/11 19/11
 19/19 19/24 20/12 21/3 21/3 27/25 29/21
he's [4]  15/15 15/15 15/17 16/18
Health [2]  7/5 20/14
hear [1]  27/24
heard [2]  3/14 25/22
held [1]  31/9
help [1]  9/3
here [4]  9/12 14/21 18/1 22/7
hereby [1]  31/6
hey [1]  17/6
his [4]  13/23 14/3 19/9 21/17
historical [2]  19/13 19/14
Honor [35]
HONORABLE [1]  1/8
hope [1]  13/6
how [4]  18/20 18/20 19/12 21/24
hundreds [1]  17/14
hypothetical [4]  14/2 26/2 26/4 27/21
hypotheticals [1]  25/24

**I**

I'd [5]  5/2 6/10 6/12 6/17 25/15
I'll [3]  8/4 23/10 30/4
I'm [5]  6/23 8/10 9/24 20/18 24/10
idea [1]  16/4
identification [1]  9/24
identified [3]  8/8 13/15 20/24
identify [1]  17/24
immaterial [1]  20/3
important [4]  10/13 14/21 18/18 21/18
impression [1]  7/14
inaccurate [1]  17/10
inadvertently [1]  6/25 7/14
INC [2]  1/11 3/3
inclined [1]  4/2
include [1]  10/8
included [1]  9/24
includes [1]  26/12
including [2]  9/25 29/17
inconsistent [1]  28/14
incorporate [1]  9/16
incorporated [1]  9/18
incorporation [2]  9/21 10/22
incorrect [1]  5/23
increase [1]  14/22
increased [2]  12/25 27/14
increasing [3]  12/8 12/10 14/25
incurred [2]  20/13 21/7

independent [1]  25/4
individual [1]  13/16
information [20]  4/1 4/5 4/21 5/1 5/18 5/19
 6/8 7/11 8/9 11/25 15/4 17/17 21/10 22/19
 22/22 23/21 26/21 29/18 29/18 29/25
instead [1]  7/2
intend [1]  3/18
intended [1]  15/23
interject [1]  26/12
internal [1]  8/12
interrogatories [1]  11/16
interrogatory [11]  5/8 15/24 16/25 17/1 17/25
 20/9 20/21 20/24 26/23 27/3 30/1
interrupt [1]  6/25
Irvine [1]  2/5
is [70]
isn't [2]  25/8 29/5
issue [15]  4/23 5/5 6/6 6/10 7/12 15/19 19/5
 19/5 23/5 24/20 24/21 24/24 25/4 25/5 29/16
issues [2]  5/6 7/18
it [59]
It'll [1]  9/2
it's [18]  3/14 12/6 13/23 14/2 14/21 17/22
 17/23 18/13 18/22 19/2 20/3 21/18 23/22
 23/23 25/2 27/5 26/15 27/17
ITC [4]  15/19 15/22 16/2 16/3
item [1]  3/12
its [11]  4/3 8/20 8/22 9/17 10/9 11/11 13/25
 25/19 25/20 27/19 29/6
itself [1]  13/23

**J**

JAMES [1]  1/8
Joe [2]  8/8 9/25
joined [1]  3/11
JUDGE [1]  1/8
Judicial [1]  31/11
July [3]  10/6 18/4 20/25
jury [1]  24/22
just [13]  9/2 16/14 16/18 17/7 18/21 20/5
 23/24 24/10 24/19 26/9 26/15 27/4 28/25
JVS [2]  1/11 3/2

**K**

KACHNER [2]  2/6 3/8
KATZENELLENBOGEN [5]  2/3 3/7 4/11
 25/16 26/22
keep [1]  23/2
KENDALL [2]  2/3 3/7
kept [1]  28/9
Kiani [4]  3/24 7/19 8/8 9/25
knew [1]  13/1
KNOBBE [2]  2/4 2/7
know [5]  6/25 7/25 8/5 9/5 22/16
knowledge [3]  3/19 16/13 19/14 19/14 28/1
knowledgeable [1]  9/24

**L**

laid [1]  10/1
last [1]  4/17
latter [1]  8/3
laying [1]  22/22
least [2]  9/16 28/21
lectern [2]  4/14 4/15
LED [2]  18/22 18/25
left [1]  25/16
legal [2]  6/12 13/7 13/7
less [1]  21/20
let [6]  6/25 8/5 16/10 16/14 18/21 21/23
let's [3]  12/3 12/17 12/18
level [2]  19/3 26/14 26/15
licensing [1]  11/4 18/6
light [2]  5/15 12/1
like [13]  3/14 4/17 5/2 6/10 6/12 8/25 13/13
 13/18 14/2 21/7 23/7 25/2 25/15
likely [1]  5/23
line [6]  9/23 9/23 10/12 10/12 20/25 20/25
 24/3 29/11
line 20 [1]  9/23

**L**

line 28 [1] 10/12
line 3 [2] 10/12 20/25
line 4 [1] 9/23
lines [11] 6/7 8/12 8/17 9/22 10/23 11/7 11/13
 11/20 18/4 24/14 29/11
lining [2] 16/18 18/19
linked [1] 26/5
list [1] 16/21
listing [1] 17/23
litigation [2] 10/8 28/11
little [3] 9/2 14/18 19/23
LLP [4] 2/4 2/7 2/11 2/14
LOEBBAKA [2] 2/3 3/8
logic [1] 20/16
long [2] 14/11 19/12
longer [1] 19/20
look [10] 14/3 16/11 17/6 18/15 24/9 24/11
 24/14 29/9 29/10 30/7
looked [1] 24/11
looking [1] 13/2
looks [2] 14/10 24/13
Los [1] 2/8
lost [7] 7/7 8/15 10/9 10/9 13/4 20/15 20/20
loud [1] 27/7
lower [1] 15/3

**M**

MA [1] 2/12
mail [1] 28/24
Main [1] 2/4
majority [1] 24/16
make [5] 5/17 6/3 7/13 12/18 18/21
makes [2] 16/20 28/20
making [3] 6/5 7/7 13/1
manner [1] 26/1
manufacture [1] 13/25
March [1] 8/13
MARIE [1] 2/3
MARK [2] 2/6 3/8
market [2] 9/9 10/5
MARTENS [2] 2/4 2/7
MASA [2] 10/11 10/11
MASIMO [35]
Masimo's [9] 6/22 7/1 7/3 10/9 11/5 11/6
 11/10 12/8 18/7
material [5] 12/20 17/10 18/1 27/8 27/9
materials [6] 10/14 17/2 17/11 17/23 18/22
 19/7
matter [1] 19/25 20/7 20/16 30/6 31/9
may [9] 18/21 22/5 23/7 24/15 24/17 24/20
 26/3 26/3 26/24
maybe [1] 26/15
me [10] 3/7 6/25 8/5 9/1 13/18 16/10 16/14
 18/21 25/5 26/10
mean [1] 25/8
meant [2] 22/23 23/2
measurement [1] 8/23
medical [1] 8/22
medical-grade [1] 8/22
mention [3] 24/3 24/3 27/24
mentioned [1] 22/4
mere [1] 17/19
methodology [7] 15/2 15/8 15/10 16/6 16/9
 21/2 21/3
might [3] 5/18 14/17 19/4
ministerial [1] 23/20
minority [1] 24/16
minute [1] 23/8
minutes [1] 28/18
misappropriating [1] 7/3
misappropriation [7] 8/14 9/8 9/13 9/17 9/20
 10/20 20/10
misspoke [1] 29/1
mistaken [1] 28/25
modifies [2] 12/22 27/11
module [19] 7/5 7/9 9/15 9/18 10/3 11/12 12/9
 13/22 13/25 14/5 14/6 14/6 14/20 16/12 19/6
 19/10 20/14 26/25 27/22

**modules** [5] 10/10 10/21 11/4 11/6 18/6
Mohammed [1] 3/5
moment [2] 7/2 23/1
moments [1] 5/3
MONDAY [1] 3/1
money [3] 13/24 16/16 18/11
monitoring [2] 12/21 27/10
more [7] 12/25 13/19 13/20 14/18 22/24 27/14
 30/2
motion [2] 3/14 28/6
move [2] 13/9 22/8 23/6
moving [1] 18/8
Mr [3] 3/21 3/21 21/13
Mr. [29] 3/24 3/24 4/11 6/21 6/21 7/15 7/15
 7/19 7/19 7/19 7/19 10/15 10/16 11/19 13/14
 13/14 13/21 15/14 17/4 17/15 19/8 25/16 26/2
 26/22 27/25 28/21 29/17 29/20 29/24
Mr. Diab [2] 3/24 7/20
Mr. Katzenellenbogen [3] 4/11 25/16 26/22
Mr. Kiani [2] 3/24 7/19
Mr. Muhsin [6] 6/21 7/15 7/19 10/16 11/19
 19/8
Mr. Priddell [12] 6/21 7/15 7/19 10/15 13/14
 13/14 13/21 17/4 17/15 26/2 27/25 29/24
Mr. Priddell's [2] 15/14 28/21
Mr. Scruggs [1] 29/17
Mr. Scruggs' [1] 29/20
Ms [1] 25/13
much [6] 5/2 8/5 10/5 18/20 18/20 30/8
Muhsin [14] 3/21 6/21 7/15 7/19 8/8 9/25
 10/16 11/9 11/19 19/8 21/13 25/23 27/2 27/20
my [7] 5/12 8/12 9/5 14/14 17/25 19/13 19/14

**N**

narrow [1] 7/20
nature [2] 12/6 26/17
need [1] 23/6
needed [3] 12/2 20/19 30/2
needs [1] 26/11
never [2] 22/4 22/7
new [9] 3/25 4/5 5/1 5/4 6/12 14/13 15/3 15/3
 26/22
next [2] 17/5 27/15
no [9] 3/2 13/12 17/8 19/17 19/20 26/14 27/2
 27/24 30/6
none [1] 23/22
noninvasive [3] 8/22 12/21 27/10
NORA [2] 2/13 3/12
not [35]
note [1] 21/18
notes [1] 17/25
nothing [2] 14/9 22/7
notice [7] 15/21 15/23 18/2 18/8 18/14 19/5
 20/19
noting [1] 12/6
notion [1] 28/12
NOVEMBER [1] 3/1
now [4] 9/7 10/17 10/23 12/4
number [6] 10/11 11/18 12/13 15/10 21/1
 29/17
numbers [2] 10/13 15/12

**O**

obligation [1] 11/24
occurred [1] 24/7
off [2] 23/1 25/16
offer [4] 3/18 9/9 12/15 19/4
offered [2] 13/14 17/15
offering [1] 25/4
offers [1] 14/18
often [1] 5/10
okay [20] 8/4 9/4 12/3 12/17 13/21 14/4 14/9
 16/10 16/14 17/6 18/9 18/24 19/11 19/13
 20/17 22/17 23/7 25/2 25/6 25/11
OLSON [2] 2/4 2/7
one [11] 10/14 13/2 13/23 18/8 19/9 20/18
 22/1 22/22 25/4 27/9 28/11
only [3] 15/13 17/3 17/14
opening [1] 28/6

**opinion** [10] 5/12 13/24 14/19 17/21 19/2 19/3
 19/5 28/23 28/24
opinions [12] 4/3 6/15 6/16 13/14 13/23 17/14
 23/12 23/13 24/23 24/24 25/4 25/10
opposing [1] 5/24
order [1] 4/7
ordinary [3] 28/8 28/9 28/22
original [2] 11/22 15/8
other [5] 7/10 8/15 20/18 24/3 26/1
Otherwise [2] 6/18 30/5
our [22] 5/18 7/24 9/3 10/6 10/19 11/24 12/11
 13/4 14/5 15/24 16/25 17/24 19/6 20/3 20/15
 20/19 20/20 20/24 22/2 22/13 25/24 30/1
ours [2] 18/9 21/23
out [11] 10/1 16/16 16/17 16/20 20/6 22/22
 24/4 24/16 26/1 26/3 27/7
oximetry [9] 9/14 10/3 10/9 10/21 11/4 11/6
 11/11 18/6 26/25

**P**

P.M [1] 3/1
page [21] 4/17 4/18 8/10 8/17 9/22 9/23 9/23
 10/12 10/12 10/23 11/6 11/12 11/20 13/16
 13/16 18/4 20/25 20/25 22/22 27/5 31/10
page 11 [2] 4/18 8/10
page 13 [1] 8/17
page 17 [2] 9/22 9/23
page 18 [1] 9/23
page 23 [2] 10/12 20/25
page 24 [2] 10/12 20/25
page 25 [3] 10/12 11/6 18/4
page 29 [2] 11/12 27/5
page 30 [1] 11/20
page 5 [1] 13/16
page 8 [1] 13/16
pages [1] 6/8
pagination [2] 8/11 8/12
paid [2] 18/20 18/20
paragraph [1] 4/18
parameter [1] 8/23
Park [1] 2/7
part [7] 4/22 11/24 14/17 20/6 21/9 28/11 30/2
particular [3] 6/17 10/13 20/6
particularly [5] 4/20 4/21 6/21 13/3 24/23
parties [4] 4/19 9/19 15/20 21/19
parties' [1] 21/23
parts [3] 7/20 7/21 16/22
party [6] 5/11 5/25 9/18 22/3 22/5 22/6
PASSAMANECK [3] 2/13 3/12 7/24
pause [2] 6/22 14/18
people [2] 8/9 9/24
percipient [10] 3/19 6/14 6/16 16/13 17/16
 19/13 19/14 23/24 26/19 29/18
performs [1] 28/8
permitted [1] 4/4
person [2] 5/25 29/23
personal [1] 29/20
phone [1] 5/10
physiological [3] 8/23 12/21 27/10
PICKERING [2] 2/11 2/14
picture [1] 6/20
pieces [2] 7/11 7/13
placed [1] 26/14
places [1] 6/11
placing [2] 18/2 18/7
plaintiff [1] 28/7
plaintiffs [3] 1/10 2/2 28/14
plaintiffs' [6] 10/20 11/1 12/23 12/24 27/12
 27/13
played [1] 25/25
please [5] 3/4 4/15 6/24 26/10 26/11
point [5] 8/5 13/18 16/18 25/24 29/8
pointed [1] 26/22
policy [1] 24/17
position [1] 17/12
possible [2] 12/18 14/23
practical [1] 19/25
preference [1] 4/13
prepare [1] 29/24

**P**

**prepared [3]**  4/23 11/22 28/22
**PRESIDING [1]**  1/8
**previously [1]**  22/2
**price [2]**  12/9 27/21
**Priddell [19]**  3/21 6/21 7/15 7/19 10/15 11/18
13/14 13/14 13/21 17/14 17/15 25/23 26/2 26/9
27/2 27/20 27/25 29/14 29/24
**Priddell's [2]**  15/14 28/21
**prior [2]**  24/8 24/15
**probably [4]**  20/1 20/3 20/7 21/20
**proceed [2]**  6/18 6/19
**proceedings [4]**  1/15 24/7 30/9 31/9
**process [1]**  21/24
**produced [15]**  15/8 15/8 15/9 15/11 15/12
15/17 15/25 16/22 16/22 16/23 16/24 17/11
18/16 22/4 28/9
**product [1]**  10/22
**production [1]**  21/8
**productions [1]**  21/11
**products [5]**  9/15 9/18 9/21 11/12 22/3
**profits [5]**  7/7 10/9 13/4 20/15 20/20
**progeny [2]**  25/20 29/6
**project [2]**  14/14 20/1
**projections [1]**  15/3
**proper [3]**  6/15 16/13 20/8
**proprietary [1]**  22/13
**prove [1]**  25/23
**provide [6]**  4/4 8/1 12/23 12/25 23/20 27/12
**provided [5]**  5/19 6/7 6/9 7/15 10/7 21/25
27/14 28/4 29/19
**provides [1]**  10/10
**publically [1]**  17/6
**publications [1]**  23/17
**pull [1]**  8/1
**pulse [9]**  9/14 10/2 10/9 10/21 11/4 11/6
11/11 18/6 26/25
**punished [1]**  22/24
**purchased [3]**  18/9 21/8 26/24
**purchasing [4]**  7/5 10/21 11/3 18/5
**pursuant [1]**  31/6
**pursued [1]**  7/3
**put [7]**  15/21 18/14 19/5 20/19 21/15 22/21
29/23

**Q**

**Q.E [1]**  2/13
**qualifications [1]**  23/17
**question [3]**  5/11 15/1 17/9
**questions [6]**  5/7 6/17 13/11 16/4 23/4 30/4
**quick [2]**  4/6 23/10
**quickly [2]**  8/21 29/1
**quite [1]**  19/2
**quote [3]**  11/10 11/17 12/19

**R**

**raise [2]**  15/3 21/21
**rather [8]**  5/20 6/6 7/9 8/11 11/25 12/14 21/11
28/10
**rationale [1]**  26/15
**read [3]**  8/2 21/16 27/7
**reading [1]**  9/5
**reality [2]**  25/25 26/2
**realize [1]**  8/22
**really [3]**  15/15 18/22 23/11
**realm [1]**  26/19
**reason [5]**  11/21 16/24 19/15 19/20 26/20
**rebuttal [2]**  21/25 22/9
**rebutting [1]**  16/6
**recognize [1]**  14/21
**recognizes [2]**  3/17 26/8
**record [1]**  3/5
**reducing [1]**  12/11
**redundancy [1]**  17/21
**redundant [3]**  14/19 16/19 16/20
**reference [3]**  16/2 27/6 28/19
**referenced [1]**  5/25
**references [1]**  27/5
**referred [1]**  28/4

**referring [1]**  15/17
**reflects [1]**  21/23
**regarding [2]**  31/11 22/6
**regulations [1]**  31/11
**reiterates [1]**  4/19
**related [2]**  7/10 13/4
**relating [1]**  21/7
**relation [1]**  11/10
**relationship [2]**  8/19 8/21
**relatively [1]**  4/6
**relevant [4]**  8/9 10/8 20/20 28/1
**relied [5]**  10/15 10/16 16/21 22/1 22/10
**relies [3]**  11/18 11/20 14/11
**rely [5]**  10/18 24/25 25/3 25/8 28/14
**relying [1]**  5/18
**remainder [1]**  4/8
**repeat [1]**  9/1
**repeatedly [1]**  16/25
**reply [1]**  4/25
**report [12]**  5/12 5/21 5/22 6/3 6/7 7/18 21/12
22/20 23/8 25/7 25/9 28/15
**reported [1]**  31/8
**reporter [2]**  9/3 31/16
**REPORTER'S [1]**  1/15
**reports [8]**  3/19 4/4 5/6 21/25 23/16 25/17
26/6 26/17
**request [2]**  3/16 4/3
**required [3]**  3/19 25/17 26/16
**requirements [1]**  23/11
**requiring [1]**  25/18
**resources [1]**  20/2
**respect [7]**  3/23 7/22 25/20 26/21 28/1 28/2
29/14
**response [7]**  5/8 7/25 20/10 20/24 22/20
26/23 27/3
**responses [6]**  15/24 17/1 17/1 17/25 20/22
30/1
**result [2]**  7/8 14/20
**resulted [2]**  7/5 7/6
**retained [1]**  26/19
**revenue [1]**  20/17
**reviewed [1]**  3/15
**rid [4]**  17/8 18/24 18/25 19/1
**right [4]**  8/25 19/16 25/20 29/12
**risk [1]**  13/25
**RPR [1]**  1/19
**rule [8]**  3/20 23/8 24/8 24/17 25/17 28/16 29/7
29/12
**Rule 26 [2]**  25/17 28/16
**rules [2]**  21/24 24/5

**S**

**SACV [2]**  1/11 3/2
**SACV-20-00048-JVS [2]**  1/11 3/2
**said [13]**  10/7 12/2 12/17 12/19 16/10 16/14
17/5 19/11 19/24 20/10 20/12 21/12 29/1
**sales [3]**  7/8 10/9 11/25
**same [9]**  15/20 19/19 19/21 20/5 21/4 21/14
24/16 29/19 29/25
**Santa [1]**  1/16 1/20 3/1
**SARAH [2]**  2/10 3/1
**satisfy [2]**  23/16 26/7
**save [1]**  16/16
**saved [3]**  11/3 18/5 18/11
**savings [1]**  19/6
**say [7]**  14/4 17/7 18/9 20/19 23/24 24/15
29/11
**saying [5]**  5/12 16/19 18/24 19/19 22/21
**says [6]**  14/9 14/13 15/6 18/22 22/9 27/8
**scenario [1]**  26/4
**schedule [1]**  4/8
**scheduled [1]**  4/7
**Scruggs [2]**  11/10 29/17
**Scruggs' [1]**  29/20
**sealed [1]**  26/11
**second [5]**  10/15 13/24 14/17 24/11 29/9
**secrets [9]**  7/3 7/9 8/14 9/13 10/20 12/23
12/24 27/12 27/13

**Section [1]**  31/6
**see [5]**  3/16 4/2 17/5 27/20 29/10
**seeing [1]**  5/20
**seemed [1]**  22/23
**SEFFENS [3]**  1/19 31/15 31/16
**SELNA [1]**  1/8
**sensor [1]**  18/23
**sentence [2]**  6/6 27/15
**September [1]**  11/14
**September 6 [1]**  11/14
**Series [2]**  27/17 27/17
**seriously [1]**  4/22
**served [1]**  5/22
**set [4]**  15/7 22/2 23/20 28/20
**seven [1]**  22/22
**seven-page [1]**  22/22
**Seventeenth [1]**  2/14
**shareholders [1]**  8/20
**SHARON [3]**  1/19 31/15 31/16
**short [1]**  4/4 26/8
**should [5]**  4/2 21/23 22/8 26/20 28/15
**show [2]**  17/3 27/16
**showing [1]**  5/4
**side [1]**  16/9
**significant [1]**  8/20
**similar [1]**  14/7
**Similarly [1]**  22/9
**simply [10]**  6/6 20/14 21/6 21/12 22/19 22/23
23/1 23/2 29/8 29/15
**situation [2]**  25/1 29/22
**six [2]**  22/21 29/2
**slightly [2]**  13/19 18/21
**slow [3]**  8/4 8/24 9/2
**small [1]**  7/12
**so [62]**
**software [2]**  9/15 11/11
**sold [4]**  9/20 10/3 14/8 18/16
**some [11]**  7/23 9/12 11/23 12/15 18/11 19/16
19/17 21/6 21/20 26/22 27/8
**somehow [1]**  16/5
**something [8]**  12/12 14/7 15/22 20/3 21/22
21/22 22/7 28/22
**sometimes [1]**  9/5
**sooner [1]**  10/5
**sorry [5]**  9/5 9/22 11/16 15/9 29/5
**sort [1]**  20/16
**sound [1]**  14/2
**SOUTHERN [1]**  1/6
**specific [4]**  7/21 9/12 13/18 16/21
**specifically [5]**  6/13 10/2 13/9 20/24 27/5
**specifics [1]**  27/1
**spend [1]**  14/4
**spent [1]**  13/25
**spreadsheet [3]**  15/9 20/23 26/13
**spreadsheets [6]**  15/7 21/4 21/5 28/3 28/3
28/12
**stand [4]**  4/3 4/5 24/21 30/6
**standard [4]**  23/22 25/18 25/21 26/8
**start [2]**  13/13 25/15
**started [6]**  10/4 19/15 19/18 19/22 20/11
21/13
**starting [2]**  8/18 9/7
**starts [2]**  14/2 19/3
**state [2]**  2/11 3/4 26/7
**statement [2]**  23/13 23/17
**STATES [4]**  1/4 1/19 31/7 31/11
**stating [1]**  28/7
**stealing [1]**  7/8
**stenographically [1]**  31/8
**Stephen [1]**  11/10
**Street [4]**  1/20 2/4 2/11 2/14
**strike [1]**  22/8
**strikes [1]**  3/2
**struck [1]**  26/20
**subject [1]**  3/19
**submit [1]**  3/19
**submitted [3]**  24/5 28/15 30/7
**substantive [1]**  21/20
**subtract [1]**  20/18

**S**

such [3]  8/19 8/21 23/12
sufficiency [1]  25/9
sufficient [1]  25/8
sufficiently [1]  15/2
suggest [1]  21/21
suggested [1]  15/20
suggestion [1]  6/11
Suite [3]  1/20 2/7 2/14
summarize [1]  23/15
super [1]  23/10
supplement [1]  11/24
supplemental [1]  4/4
supplemented [2]  9/11 21/11
support [1]  6/13
supposedly [1]  15/3
sure [6]  5/17 7/13 13/1 18/21 20/18 24/10
surprise [3]  12/13 16/5 17/9

**T**

take [13]  5/3 5/25 6/4 6/10 8/6 16/11 16/16
 19/12 20/16 21/17 24/11 29/9 30/7
taken [4]  19/18 19/20 20/5 21/14
takes [2]  24/9 26/2
taking [2]  11/3 16/17
talked [2]  18/1 18/5
talking [1]  13/7
technical [2]  19/15 22/1
technology [4]  9/9 11/5 18/7 19/16
tentative [17]  3/16 3/17 3/17 3/20 3/24 4/6
 4/18 6/11 13/17 13/19 19/23 22/24 23/25
 24/21 25/19 26/7 26/18
terms [3]  12/9 21/19 22/13
territory [1]  26/11
testify [1]  24/22
testimony [3]  3/18 23/17 29/19
testing [1]  22/2
text [3]  6/7 8/2 15/14
than [12]  5/20 6/6 7/9 8/11 11/25 12/14 12/25
 21/11 21/20 26/1 27/14 30/2
Thank [8]  4/9 4/16 9/4 25/11 25/12 28/17 30/6
 30/7
that [199]
that's [27]  5/1 6/24 8/10 8/18 10/11 10/23
 11/6 11/18 11/20 12/4 14/5 15/6 15/9 16/12
 16/13 17/24 19/13 19/19 20/2 20/3 20/12 22/7
 25/4 29/5 29/6 29/24 30/1
their [9]  3/18 17/2 17/2 19/6 19/6 20/10 22/1
 22/1 26/6
them [13]  6/18 14/23 15/24 17/13 17/16 17/23
 18/2 18/7 23/15 24/25 26/21 28/15 30/4
themselves [1]  28/3
then [23]  6/12 8/13 9/11 9/23 11/14 12/15
 14/13 15/11 16/8 16/10 16/13 18/10 18/24
 19/8 20/13 21/4 21/11 24/19 26/2 26/4 27/1
 28/25 29/14
theories [3]  6/12 7/10 10/17
theory [14]  6/20 6/22 7/1 7/22 9/13 10/1 12/11
 13/7 13/7 14/5 26/24 27/1 27/18 27/20
there [31]  5/6 5/17 6/11 6/15 7/7 7/17 10/1
 11/8 11/23 13/1 14/12 14/13 15/19 17/8 17/15
 19/15 19/16 19/17 19/20 20/13 21/5 21/5
 23/18 24/19 24/20 25/8 25/21 27/4 27/6 28/23
 29/16
there's [8]  6/24 17/6 17/9 18/22 18/23 18/23
 18/23 25/7
therefore [4]  7/6 7/16 23/13 26/20
these [25]  6/2 6/4 6/5 6/14 7/11 14/15 15/2
 15/7 15/15 15/21 15/23 16/9 16/19 17/7
 21/11 23/12 23/16 23/19 24/22 24/23 24/23
 25/17 25/24 26/17 28/12
they [21]  5/21 6/15 12/4 17/16 18/20 19/4
 19/10 21/16 21/22 22/4 24/24 24/3 24/15
 24/16 26/8 26/18 28/5 28/13 28/13 28/15
they're [1]  24/21
they've [1]  29/12
thing [3]  17/5 27/4 27/7
things [3]  17/7 21/7 21/20
think [23]  12/6 14/14 17/15 17/24 18/2 18/13

19/4 20/2 21/4 21/8 21/18 21/19 22/13 22/25
21/21 21/24 22/6 25/19 26/1 29/14 29/9 29/11
29/14 30/1#:

third [5]  9/18 9/19 22/3 22/4 22/6
third-party [1]  9/18
this [71]
thorough [1]  7/17
those [29]  3/25 4/3 5/4 5/17 7/7 10/13 11/21
 11/25 12/4 12/7 12/8 12/22 13/16 14/12 16/7
 16/14 16/16 16/17 17/14 17/20 20/22 21/4
 23/15 23/15 23/18 24/1 27/11 28/3 28/7
though [1]  24/15
thought [2]  15/21 22/7
three [3]  19/12 19/19 19/21
through [16]  5/3 8/1 8/12 8/17 9/23 10/12
 10/23 11/10 11/20 11/22 12/3 20/9 20/21 20/25
 23/11 23/24 24/14
time [5]  5/19 5/20 12/17 20/6 21/15
title [2]  14/1 31/7
today [5]  4/23 5/3 7/12 25/5 25/9
together [2]  21/16 22/21
too [1]  8/5
took [2]  4/22 16/3
tooling [1]  21/8
trade [9]  7/3 7/9 8/14 9/13 10/20 12/23 12/24
 27/12 27/13
transcript [1]  1/9 1/15 31/8 31/10
transcripts [2]  11/9 16/7
trial [1]  12/1
tries [1]  26/4
true [1]  31/7
try [9]  8/4 8/6 12/12 12/16 12/16 12/17 12/18
 14/23 23/10
trying [2]  12/14 29/16 30/2
two [5]  13/14 17/14 17/20 23/25 28/18
type [3]  21/6 22/18 29/19
types [3]  5/17 11/25 21/7
typically [4]  5/6 5/24 21/15 22/19

**U**

U.S [1]  31/16
ultimately [1]  20/4
under [6]  4/5 19/4 24/7 26/4 26/16 28/16
understand [3]  2/14 4/2 22/12
understanding [1]  21/24
undisclosed [1]  3/24
UNITED [4]  1/4 1/19 31/7 31/11
unjust [2]  7/8 11/2 13/4
until [1]  12/1
up [9]  4/24 5/11 12/4 8/1 12/13 16/18 18/20
 22/5 26/5
updated [8]  11/17 11/19 11/21 12/3 12/4
 15/12 21/4 28/3
updates [2]  14/12 28/20
us [6]  5/16 12/13 19/12 19/19 26/22 30/2
use [5]  4/13 9/15 11/12 14/1 17/7
used [4]  11/5 21/3 21/3 23/15
using [1]  8/10
usually [1]  4/13

**V**

value [5]  8/15 8/20 11/2 12/25 27/14
various [1]  26/5
version [4]  17/6 24/8 27/19 28/23
versus [1]  3/3
very [12]  4/22 5/2 7/12 7/12 7/17 7/20 7/20
 8/7 13/8 14/7 24/18 30/8
via [1]  9/10
volunteered [1]  21/10
vs [1]  1/10

**W**

waiting [2]  12/1 12/15
walk [3]  5/3 8/1 24/14
walked [1]  20/21
want [6]  4/24 22/15 22/16 25/3 29/22 30/7
wanted [5]  5/16 5/16 7/13 28/14
was [94]
wasn't [4]  14/21 17/23 22/3 22/3

watch [7]  9/16 12/22 16/15 26/4 27/11 27/19
 27/23
way [3]  8/6 17/10 24/16
we [115]
we'd [2]  14/15 19/25
we're [7]  10/18 12/10 13/7 18/19 18/19 22/11
 26/11
we've [6]  6/7 10/17 10/17 10/23 24/12 25/22
wearable [2]  9/15 11/12
weeks [1]  5/22
well [12]  5/14 7/9 7/19 10/24 12/9 13/8 16/8
 16/14 18/24 19/24 22/15 29/11
went [2]  20/9 23/11
were [35]
weren't [1]  23/18
West [1]  1/20
what [40]
whatever [2]  18/10 24/17
when [7]  7/2 9/5 14/1 15/14 18/3 19/9 29/1
where [15]  5/7 5/17 6/24 8/18 11/9 14/17
 17/24 18/1 18/4 19/10 25/2 25/15 27/2 27/6
 27/24
Whereupon [1]  30/9
whether [13]  14/25 15/2 20/6 22/5 23/22
 23/23 24/20 24/21 24/22 24/24 25/16 26/14
 26/21
which [25]  4/19 5/5 5/6 6/3 10/2 10/18 11/14
 11/18 11/19 14/1 14/5 14/12 14/18 16/12
 16/14 17/5 18/15 19/6 21/15 21/21 21/25
 23/11 24/17 25/16 27/23
while [1]  20/22
who [6]  3/18 4/10 6/4 8/9 29/18 29/18
whole [1]  27/7
why [11]  4/23 6/2 8/3 19/20 19/20 22/16
 22/17 22/18 29/5 29/6 29/24
will [5]  5/10 6/18 6/22 11/1 17/25 23/15 26/10
 29/10 30/6
WILMER [2]  2/11 2/14
WilmerHale [1]  3/11
wiring [2]  18/23 18/25
witness [3]  13/10 18/12 23/14
witnesses [5]  3/18 23/19 24/22 25/4 25/17
won't [2]  27/7 29/8
word [3]  14/1 18/12 18/12
wording [2]  29/7 29/12
works [1]  21/25
world [3]  19/10 25/25 26/25
worse [1]  21/22
worth [1]  12/6
would [56]
wouldn't [5]  6/5 24/24 29/21
written [1]  5/21
wrong [1]  21/22
wrote [1]  18/13

**Y**

years [3]  19/12 19/19 19/21
yes [10]  4/12 4/15 15/5 15/6 15/10 21/3 22/12
 22/17 25/14 26/14
yet [1]  21/7
you [33]
You'll [1]  27/15
you're [1]  14/25
your [47]

**Z**

Zofran [1]  24/12

Exhibit S
-258-