Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **REPLY IN SUPPPORT OF PLAINTIFFS' DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANT'S EXPERTS**<br>)<br>) Date: February 6, 2023<br>) Time: 1:30 p.m.<br>) Location: Courtroom 10C<br>) |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ....................................................................................... 2

    A.    The Court Should Exclude Apple's "Readily Ascertainable" Opinions .................................................................................. 2

        1.    Apple's Experts Relied On The Wrong Legal Standard ........... 2

            a.    Apple Presents No Reason To Depart From *True Wearables* ............................................................... 2

            b.    Apple's Cited Authorities Do Not Support Its Position ............................................................... 4

            c.    Apple's Critique Of Masimo's Cases Lacks Merit .......... 6

            d.    The California Supreme Court Would Follow *ABBA Rubber* ....................................................... 8

        2.    The Court Should Exclude Apple's Experts' Opinions Because They Apply The Wrong Law And Can Only Confuse The Jury ....................................................................... 9

    B.    The Court Should Exclude Apple's "Generally Known" Opinions .................................................................................. 10

        1.    The Court Should Exclude Sarrafzadeh And Warren's "Generally Known" Opinions ................................................ 10

            a.    Sarrafzadeh And Warren Improperly Broke Apart The Trade Secrets To Show Each Piece Was Separately Known ............................................... 11

                i.    Sarrafzadeh And Warren's Approach Is Legally Erroneous ........................................ 11

                ii.    Apple's Fairness Argument Lacks Merit ............ 12

                iii.    Apple's Other Arguments Lack Merit ................ 13

                iv.    Apple Incorrectly Advocates For A "Generally Known" Standard That Is Even Higher Than Patent Novelty ........................... 14

            b.    Sarrafzadeh And Warren Fail To Show The Trade Secrets Lack Value Because They Are "Generally" Known ................................................................. 15

# TABLE OF CONTENTS
## (cont'd)

**Page No.**

2. The Court Should Exclude Perez And Kivetz's "Generally Known" Opinions ..................................................... 17

    a. Perez and Kivetz Improperly Broke Apart The Trade Secrets And Attempted To Show Each Piece Was Known ............................................................ 18

        i. Perez And Kivetz Did Not Analyze Trade Secrets As A Whole .......................................... 18

        ii. Perez And Kivetz's Analysis Is Legally Irrelevant ............................................................. 19

    b. Perez and Kivetz Fail To Show The Trade Secrets Lack Value Because They Are "Generally" Known In The Industry ....................................................... 20

C. Perez and Kivetz Improperly Rewrite The Trade Secrets ................. 21

III. CONCLUSION ........................................................................... 21

# TABLE OF AUTHORITIES

**Page No(s).**

*ABBA Rubber Co. v. Seaquist,*
   235 Cal. App. 3d 1 (1991) .......................................................................*passim*

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.,*
   226 Cal. App. 4th 26 (2014) ............................................11, 13, 15, 19

*American Paper & Packaging Prods., Inc. v. Kirgan,*
   183 Cal. App. 3d 1318 (1986) ..............................................................*passim*

*Brown v. 3M,*
   265 F.3d 1349 (Fed. Cir. 2001) .........................................................14

*Calendar Rsch. LLC v. StubHub, Inc.,*
   2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ...............................15

*Carroll Shelby Licensing,*
   2021 WL 8531241  ..............................................................................10, 20

*Courtesy Temporary Serv., Inc. v. Camacho,*
   222 Cal. App. 3d 1278 (1990) .............................................................4, 9

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997).............................................................................17, 20

*GSI Tech., Inc. v. United Memories Inc.,*
   2015 WL 5655092 (N.D. Cal. Sept. 25, 2015).................................5, 6

*Imax Corp. v. Cinema Techs., Inc.,*
   152 F.3d 1161 (9th Cir. 1998) ...........................................................8

*Kewanee Oil Co. v. Bicron Corp.,*
   416 U.S. 470 (1974).............................................................................14

*In re Kirkland,*
   915 F.2d 1236 (9th Cir. 1990) ...........................................................8, 9

*Masimo Corp. v. True Wearables Inc.,*
   2021 WL 2548690 (C.D. Cal. Apr. 28, 2021)..................................*passim*

*Masimo Corp. v. True Wearables, Inc.,*
   2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) .................................*passim*

*Masimo Corp. v. True Wearables, Inc.,*
   2022 WL 205485 (Fed. Cir. Jan. 24, 2022).........................2, 6, 8, 17

*Morlife, Inc. v. Perry,*
   56 Cal. App. 4th 1514 (1997) .............................................................5, 6, 12

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
724 F.3d 1268 (9th Cir. 2013) ............................................................. 9

*Pac. Fuel Co. v. Shell Oil Co.*,
2008 WL 11336467 (C.D. Cal. Jan. 24, 2008) .................................... 21

*San Jose Constr., Inc. v. S.B.C.C., Inc.*,
155 Cal. App. 4th 1528 (2007) ............................................................. 5

*Semper/Exeter Paper Co. LLC v. Henderson Specialty Paper LLC*,
2009 WL 10670619 (C.D. Cal. Sept. 21, 2009) ............................... 4, 8

*Sinclair v. Aquarius Elecs., Inc.*,
42 Cal. App. 3d 216 (1974) ............................................................... 14

*Stutz Motor Car of Am. v. Reebok Int'l Ltd.*,
909 F. Supp. 1353 (C.D. Cal. 1995) .................................................. 17

*United States v. Johnson*,
256 F.3d 895 (9th Cir. 2001) ............................................................... 4

*Wang v. Palo Alto Networks, Inc.*,
2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) .................................... 17

## OTHER AUTHORITIES

Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ............... 7

Cal. Civ. Code § 3426.1 ......................................................... 14, 15

L.R. 11-6.1 ........................................................................... 23

Uniform Trade Secrets Act ..................................................... 6, 7

Judicial Council of California Civil Jury Instructions (CACI) ................. 6

Senate Comm. On Judiciary,
Cal. A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984) ..... 6, 8, 10

1 Milgrim on Trade Secrets § 1.07A (2002) .................................... 7

-iv-

# I.  **INTRODUCTION**

Apple does not contest that its experts' "readily ascertainable" opinions would be unhelpful to the jury and should be excluded under this Court's holdings in *True Wearables*.  Instead, Apple argues only that this Court, the California Court of Appeal, the Ninth Circuit, the Federal Circuit, and other district courts all applied the wrong law.

Apple claims this Court and the Federal Circuit wrongly decided *True Wearables* because True Wearables's lawyers failed to brief the issue adequately.  ███████████
████████████████████████████████████████████████████████████████████
████████  Apple argues this Court—and all the other cases that Masimo cited—should have applied a different line of cases.  But the cases Apple cites all trace back to a single passing reference in one case that courts are "reluctant" to protect "readily ascertainable" customer lists.  Those cases did not even mention a readily ascertainable "defense," much less define its scope.  The cases that Masimo cited expressly considered and "rejected" the line of cases that Apple cited as inconsistent with the legislative history.

Apple also admits its experts' "generally known" opinions cobble together multiple sources in an attempt to show each "element" of the trade secret was separately "known."  Apple cites no case approving of such an approach, and the California Court of Appeal rejected it.  Lacking any supporting authority, Apple claims that Masimo failed to satisfy a so-called "combination trade secret doctrine."  But Apple cites no case adopting such a doctrine, much less applying Apple's made-up procedural hurdles.

Finally, Apple's experts assert the trade secrets are not protectable merely because they opine that "aspects" of the trade secrets are "known" in publications.  But Apple's experts provide no analysis of whether the publications they cite caused the information to lose its value by virtue of becoming ***generally*** known in the field.  Thus, they offer only irrelevant opinions that rely on their own "ipse dixit."

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## II. ARGUMENT

**A.** **The Court Should Exclude Apple's "Readily Ascertainable" Opinions**

1. **Apple's Experts Relied On The Wrong Legal Standard**

As this Court explained, "whether information is readily ascertainable is not part of the definition of a trade secret in California." *Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *3 (C.D. Cal. Apr. 28, 2021) ("*True Wearables I*"). "[R]eady ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable." *Id.* The Federal Circuit affirmed. *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 n.1 (Fed. Cir. Jan. 24, 2022) ("*True Wearables II*"). This Court applied the same law after trial. *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *20 (C.D. Cal. Nov. 7, 2022) ("*True Wearables III*").

Apple claims a defendant can absolve itself of liability for stealing trade secrets by showing it "could" have properly learned about the trade secrets. Opp. at 3. Apple is wrong for many reasons described below.

a. **Apple Presents No Reason To Depart From *True Wearables***

Apple argues the Court should disregard its own holding in *True Wearables*—and the Federal Circuit's affirmance—because counsel for *True Wearables* failed to "thoroughly brief[]" the issue. *Id.* at 5. Apple's argument lacks merit for two reasons.

First, Apple had a common interest agreement with True Wearables and

1   ███████████████████████████████████████████████████████

2   ███████████████████████████████████████████  Apple   also

3   successfully   opposed   Masimo's   request   for   discovery   into   the   extent   of   Apple's

4   involvement   and   control   over   True   Wearables's   briefing.    Dkt. 905 at 7-8.    Having

5   avoided discovery, Apple should not be allowed to now suggest it was not involved in

6   *True Wearables*.

7        Second, Apple is wrong that True Wearables "cited zero case law."  Opp. at 5.

8   True Wearables's preliminary injunction brief did not discuss the cases that Apple cites.

9   But True Wearables cited the same law and made the same arguments on appeal and in

10  later filings to this Court (presumably because of its coordination with Apple).  *See* Exs.

11  12-15.  For example, True Wearables and Apple both:

12  - Argued it is irrelevant whether the defendant "in fact ascertained" the trade

13    secret.  *Compare* Ex. 13 at 15, Ex. 14 at 23, Ex. 15 at 22 *with* Opp. at 3.

14  - Argued the defense is titled "readily ascertain***able***," which contemplates

15    whether the information can possibly be obtained.  *Compare* Ex 14 at 23,

16    Ex. 15 at 23 *with* Opp. at 6.

17  - Cited CACI jury instructions in arguing that Masimo's view of the law

18    would transform readily ascertainable from an "affirmative defense" into a

19    "traverse."  *Compare* Ex. 12 at 37, Ex. 13 at 16, Ex 14 at 23, Ex. 15 at 22

20    *with* Opp. at 7.

21  - Argued *ABBA Rubber* is "dicta" in a "footnote."  *Compare* Ex. 13 at 17,

22    Ex. 14 at 23 *with* Opp. at 6.

23  - Relied on the *American Paper* line of cases discussed below.  *Compare* Ex.

24    13 at 39, Ex. 14 at 23, Ex. 15 at 22 *with* Opp. at 3-4.[2]

25  _____

26  [1] Numbered exhibits are attached to the Powell Declaration or Supplemental Powell
    Declaration.  All emphasis in quotations is added unless noted otherwise.

27  [2] Apple complains that Masimo did not cite the *American Paper* line of cases.  Opp. at

28  5.  As explained below, *American Paper* was "rejected" by later courts.

Accordingly, True Wearables extensively briefed this issue and made many of the same arguments that Apple now claims are new.  Nothing supports Apple's suggestion that the Court—and the Federal Circuit—would have ruled differently if only Apple had briefed the issue instead of True Wearables.

### b.    <u>Apple's Cited Authorities Do Not Support Its Position</u>

Apple does not cite any authority that would justify departing from *True Wearables I*, *II*, and *III*.  Apple relies extensively on a line of cases beginning with *American Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1326 (1986), to argue the "readily ascertainable" defense requires only that the defendant "could have" obtained the information properly.  Opp. at 3-4.  Those cases are not relevant.

*American Paper* used the phrase "readily ascertainable" once in observing it was "difficult to find a protectable trade secret" because the customer list at issue "certainly would be known or readily ascertainable to other persons in the shipping business."  183 Cal. App. 3d at 1326.  *American Paper* did not mention any "readily ascertainable" defense or the requirements for prevailing on such a defense.  It also did not mention, much less analyze, the legislative history of CUTSA.  In fact, it did not cite ***any*** authority at all for its passing observation about customer lists.  As Apple itself argues, courts should not rely on assertions in cases "made casually and without analysis."  Opp. at 8 (*quoting United States v. Johnson*, 256 F.3d 895, 915-16 (9th Cir. 2001)).

Apple's own cited authority also found "*American Paper* misconstrued California's trade secret statute and its legislative intent, and [later courts] decline to rely on" it.  *See Courtesy Temporary Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1286 (1990).  The California Court of Appeal "decline[d] to follow *American Paper*" because it was inconsistent with the text and legislative history of CUTSA.  *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 n.9 (1991).  Courts in this district have found *American Paper* was "rejected by later courts."  *Semper/Exeter Paper Co. LLC v. Henderson Specialty Paper LLC*, 2009 WL 10670619, at \*5 (C.D. Cal. Sept. 21, 2009).

1        Apple's other cited cases are similarly irrelevant because they merely cite

2  *American Paper* without any analysis.  For example, *Morlife, Inc. v. Perry*, 56 Cal. App.

3  4th 1514, 1521 (1997), cited *American Paper's* assertion that courts are reluctant to

4  protect "customer lists" if they are "readily ascertainable."  *Morlife* said nothing about a

5  readily ascertainable "defense" or the standards for prevailing on such a defense.  Nor

6  did it address whether *American Paper's* passing observation applies to anything other

7  than customer lists.  Instead, it distinguished *American Paper* because the customer list

8  in *Morlife* was not "readily ascertainable."  *Id.* at 1522.

9        Apple cites *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528 (2007),

10  but that case also cited *Morlife*'s discussion of *American Paper* without any analysis.

11  Apple inaccurately claims *San Jose* "***held*** that a readily ascertainable ***defense*** may be

12  available even where the defendant did not actually rely on public materials or reverse

13  engineer the purported trade secrets."  Opp. at 3.  It did not.  The defendant "***argue[d]***"

14  the trade secrets "were not trade secrets because they could have been reverse-

15  engineered—that is, they were readily ascertainable."  *See San Jose*, 155 Cal. App. 4th

16  at 1542.  The court did not adopt that view of the law.  Nor did it mention a readily

17  ascertainable "defense" or explain the scope of such a defense.  The court vacated

18  summary judgment that the trade secret was not protectable, observing the defendant

19  had not shown information was "readily ascertainable" as a matter of law.  *Id.* at 1543.

20  The court did not decide whether the readily ascertainable defense requires a showing

21  that defendant obtained the information from a readily ascertainable source.

22        Apple also cites three other cases (*Wanke*, *Thompson*, and *A1 Elec.*) that also

23  merely quote *Morlife* in passing without analysis.  Like Apple's other cases, *Wanke*,

24  *Thompson*, and *A1 Elec.* did not address a readily ascertainable "defense" or the

25  standards for prevailing on such a defense.  Nor did they analyze CUTSA's legislative

26  history.

27        The only case Apple cites that actually discussed a readily ascertainable "defense"

28  is *GSI Tech., Inc. v. United Memories Inc.*, 2015 WL 5655092, at *11 (N.D. Cal.

Sept. 25, 2015).  That lone district court decision does not overrule the extensive caselaw that Masimo cited.  *See* Mot. at 3-6.  Nor is *GSI* persuasive.  *GSI* cited no case discussing a readily ascertainable "defense" or the standards for prevailing on such a defense.  It did not address the clear legislative history or cases interpreting that history.  Instead, like Apple's other cases, it cited the same discussion from *Morlife* without analysis.

Finally, Apple cites cases interpreting the "Uniform Trade Secret Act" in other states.  Opp. at 4-5 (citing *Buffets*, *Bimbo*, *Lange*, *Advanced Fluid*).  Those cases are irrelevant.  As this Court explained—and Apple does not contest—the California legislature rejected the "readily ascertainable" language in the Uniform Trade Secrets Act.  *True Wearables I*, 2021 WL 2548690, at *3; *see also* Senate Comm. On Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984).

Failing to find supporting case law, Apple falls back on model jury instructions.  Opp. at 7 (citing CACI 4420).  Apple claims that CACI rejected *ABBA Rubber* because it would convert an "affirmative" defense to a "traverse."  Opp. at 7.  True Wearables repeatedly raised the same argument, citing the same jury instructions, to this Court and the Federal Circuit.  Ex. 12 at 37; Ex. 13 at 16; Ex 14 at 23; Ex. 15 at 22.  This Court and the Federal Circuit both rejected that argument.  *True Wearables II*, 2022 WL 205485, at *3 n.1; *True Wearables III*, 2022 WL 17083396, at *20.  Neither *ABBA Rubber* nor the legislative history referred to "readily ascertainable" as an "affirmative defense."  Rather, they referred to it as an ordinary "defense."  *ABBA Rubber*, 235 Cal. App. 3d at 21 n.9.  And the model instructions themselves explain they are non-binding.  *See* CACI (2019), Guide for Using Judicial Council of California Civil Jury Instructions.  CACI cannot displace the legislative history and extensive case law that Masimo cited.

### c.    Apple's Critique Of Masimo's Cases Lacks Merit

Apple argues Masimo relied on a "single" California case from "three decades ago."  Opp. at 6 (citing *ABBA Rubber*).  Not so.  Masimo cited the clear legislative history and extensive cases from the California Court of Appeal, Ninth Circuit, Federal Circuit, and California district courts.  *See* Mot. at 3-6.

1      Apple appears to suggest Masimo's cases are unpersuasive because they trace

2  back to one decision (*ABBA Rubber*).  But Apple's cited cases also trace back to a single

3  decision (*American Paper*).  The difference is that *American Paper* included a single

4  passing reference to "readily ascertainable" without any substantive analysis.  In

5  contrast, *ABBA Rubber* extensively analyzed the statute and legislative history before

6  "declin[ing] to follow *American Paper*…."  *See* 235 Cal. App. 3d at 21.  As the

7  California Court of Appeal explained, the legislature "deleted" the "readily

8  ascertainable" requirement from the uniform trade secrets act because it would invite the

9  parties to "speculate on the time needed to discover a secret."  *Id.*  After analyzing the

10  legislative history, *ABBA Rubber* explained that the "readily ascertainable" defense was

11  based on an "absence of misappropriation, rather than the absence of a trade secret."  *Id.*,

12  n.9.  Thus, the defense applies only where the defendant shows the information is "easily

13  identifiable" and defendant learned of the information from "that identification process

14  and not from the plaintiff's records…."  *Id.*

15      Apple argues that *ABBA Rubber* was wrongly decided because the legislature used

16  the term "readily ascertain***able***," which "speaks in terms of a possibility of ascertaining

17  information."  Opp. at 6 (emphasis in original).  Apple cites no authority supporting that

18  assertion, which contradicts the legislative history.[3]  The California legislature quoted

19  the term "readily ascertainable" in explaining the exact text that it "removed" from the

20  model act.   West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee

21  Comments).[4]  As the legislature explained, it was concerned that such a requirement

22

---

23  [3] Apple cites only a treatise that referred to ***other*** jurisdictions' requirements that a trade

24  secret not be "readily ascertainable."  *See* 1 Milgrim on Trade Secrets § 1.07A (2002). That discussion is irrelevant to California law.

25  [4] Apple claims *ABBA Rubber* cited an article explaining the legislature "merely"

26  modified the burden of proof.  Opp. at 7-8.  The article explained the plaintiff had "one less burden" but never said that was the ***only*** change.  Wong, *The Secrets Out:*

27  *California's Adoption of the Uniform Trade Secrets Act*, 20 Loyola L. Rev. 1167, 1214

28  (1987).

-7-

would allow a defendant to escape liability by arguing it **could have** discovered the information "through reverse engineering or a literature search."  Senate Comm. On Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984).  Yet that is what would happen if the Court adopted Apple's view of the law.

Unable to show *ABBA Rubber* was wrongly decided, Apple claims it was "dicta" and not "controlling."  Opp. at 6; *see also id.* at 8 (making the same argument for *Imax*, *Medtronic*, and *Contemp. Servs*).  But Apple cites no decision that is more authoritative or more persuasive.  Apple's cited cases merely cite—with no analysis—*American Paper's* passing observation that courts are "reluctant" to protect "readily ascertainable" customer lists.

Thus, contrary to Apple's assertion, there is no "majority" and "minority" rule on the readily ascertainable defense.  *See* Opp. at 9.  There is only one rule: the rule articulated by the legislature and *ABBA Rubber*.

### d.     The California Supreme Court Would Follow *ABBA Rubber*

If a split in authority existed, there would be no doubt the California Supreme Court would side with *ABBA Rubber*, just as the Ninth Circuit did in *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1168 n.10 (9th Cir. 1998).  True Wearables told the Federal Circuit it needed to "predict how the California Supreme Court would decide the issue."  Ex. 13 (appeal reply) at 17.  The Federal Circuit held, "in the absence of a controlling California court decision to the contrary, it was appropriate for [this Court] to follow the Ninth Circuit's interpretation [in *Imax*] of the California statute."  *True Wearables II*, 2022 WL 205485, at *3.

The Ninth Circuit has identified at least three principles of interpretation that demonstrate the California Supreme Court would follow *ABBA Rubber*.  First, the California Supreme Court is unlikely to adopt authority that has been "repudiated" by later cases.  *In re Kirkland*, 915 F.2d 1236, 1240 (9th Cir. 1990) (declining to adopt a California decision "repudiated" by a later decision).  Here, Apple relies on cases that originate from a decision "rejected by later courts."  *See Semper/Exeter*, 2009 WL

1   10670619, at *5; *see also Courtesy Temporary*, 222 Cal. App. 3d at 1286 ("*American*

2   *Paper* misconstrued California's trade secret statute and its legislative intent, and [later

3   courts] decline to rely on" it.).

4          Second, the California Supreme Court is unlikely to place weight on cases that

5   are "readily distinguishable."  *In re Kirkland*, 915 F.2d at 1240.  As discussed above,

6   the *American Paper* line of cases are readily distinguishable because they addressed the

7   likelihood of courts finding a customer list protectable—not the standards for a readily

8   ascertainable defense.

9          Third, the California Supreme Court *is* likely to place weight on "well-reasoned

10  decision[s] from [the] state's intermediate appellate court…."  *In re NCAA Student-*

11  *Athlete Name & Likeness Licensing Litig.,* 724 F.3d 1268, 1278 (9th Cir. 2013).  As

12  discussed, *ABBA* is the only California Court of Appeal decision to engage in a detailed

13  analysis of the statute and legislative intent.  It is the only decision to address the scope

14  of the readily ascertainable *defense*.  *ABBA's* discussion of "readily ascertainable" has

15  been repeatedly confirmed by the California Court of Appeal, Ninth Circuit, Federal

16  Circuit, and California district courts.[5]  The California Supreme Court would place much

17  greater "weight" on *ABBA's* well-reasoned opinion than *American Paper*'s passing

18  observation about customer lists.

19          **2.    The Court Should Exclude Apple's Experts' Opinions Because They**

20                 **Apply The Wrong Law And Can Only Confuse The Jury**

21          Masimo's opening brief showed that neither Apple nor its experts assert Apple

22  obtained the trade secrets from a readily ascertainable source.  Mot. at 5-6.  Instead,

---

[5] Apple argues *Glob. Med.* is entitled to "no weight" because it is unpublished.  Opp. at 6 n.1.  But Apple itself cites unpublished decisions, including as evidence of how later courts would likely rule.  *See* Opp. at 9 (citing *A1 Elecs.*).  At a minimum, *Glob. Med.* is persuasive and relevant to showing how the California Supreme Court would likely rule.

Apple's Experts engaged in the very analysis that courts and the legislature sought to avoid.  For example:

- ████████████████████████████████████████████
████████████████████████████████████████████
██ ██████████████████████  This Court rejected that approach in *True Wearables I*, 2021 WL 2548690, at *4 (papers were "found by Defendants' expert and not shown to be the origin" of the information used by Defendants).

- ████████████████████████████████████████████
████████████████████████████  The legislature rejected that approach.  *See* Senate Comm. On Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984) (rejecting "readily ascertainable" requirement because it would improperly "invite[] the various parties to speculate on the time needed to discover a trade secret").

Apple's opposition completely ignores these arguments.  Thus, Apple effectively concedes that its experts conducted the very type of analysis that courts and the legislature rejected.  Apple's Experts' readily ascertainable opinions are contrary to law and should be excluded as irrelevant and unhelpful.  *Carroll Shelby Licensing*, 2021 WL 8531241, at *7.

## B.     The Court Should Exclude Apple's "Generally Known" Opinions

Apple's opposition confirms the Court should exclude Apple's Experts' "generally known" opinions.

### 1.     The Court Should Exclude Sarrafzadeh And Warren's "Generally Known" Opinions

Sarrafzadeh and Warren's "generally known" opinions should be excluded for two separate reasons.  First, they improperly break apart the trade secrets and attempt to show each piece was "known."  Second, they do not attempt to show the trade secrets lack value by virtue of being *generally* known in the relevant industry.

a.   <u>**Sarrafzadeh And Warren Improperly Broke Apart The Trade**</u>
<u>**Secrets To Show Each Piece Was Separately Known**</u>

i.   <u>**Sarrafzadeh And Warren's Approach Is Legally**</u>
<u>**Erroneous**</u>

Apple effectively concedes that Sarrafzadeh and Warren broke the trade secrets into elements and tried to show each element was separately known.  Opp. at 13-14 (arguing only that Apple's ***other*** experts did not conduct such an analysis).  Instead, Apple argues that defendants should be allowed to "attack a plaintiff's generally known arguments by relying on multiple documents to show that a single secret was known prior to the misappropriation."  *Id.* at 10.  Apple cites no case supporting such an approach.

Apple argues its approach is permissible because no case directly prohibits it.  *Id.*  Not so.  The California Court of Appeal rejected the same sort of analysis.  *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 47 (2014).  The court explained that trade secrets should not be examined "bit by bit with the further requirement that [plaintiff] demonstrate protectability of its elements or some of them rather than the protectability of the [trade secret] as a whole."  *Id.*

Apple's main response is that *Altavion* supposedly applies only to the so-called "combination trade secret doctrine."  Opp. at 11.[6]  Apple claims "an analysis of whether each element of the purported secrets is generally known could ***only*** be irrelevant ***if*** Plaintiffs concede that every element of their purported secrets was in the public domain, which they have not done."  *Id.* at 12.  Apple also claims "[u]nless Plaintiffs ***waive*** the argument that their purported secrets are not generally known because of some non-

---

[6] Apple also argues *Altavion* and other cases Masimo cited are irrelevant because they were not *Daubert* challenges, but does not explain why that matters.  Opp. at 10 n.10.  Expert opinions applying the wrong law are irrelevant and unhelpful to the jury.  Thus, cases setting forth the correct law are relevant to *Daubert* challenges.

1   public element(s), evidence that each element of the purported secrets is generally

2   known remains relevant to the jury and necessary for Apple's defense." *Id.*

3          Apple cites no authority suggesting its so-called "combination trade secret

4   doctrine" even exists.   Apple likewise cites no authority supporting its waiver

5   requirements.   In fact, Apple does not cite anything after those sentences. *See id.* at

6   12:4-12.   Apple simply imagines a "doctrine" and then invents standards for it.   The

7   Court should reject Apple's attempt to create its own law.

8                     ii.     **Apple's Fairness Argument Lacks Merit**

9          Apple also argues that, if a plaintiff relies on multiple documents to show

10  possession, then the defendant should be allowed to break apart the trade secret

11  "element-by-element" and show each "element" is separately known. *Id.* at 11-12.

12  Apple again cites no case adopting such an argument and it makes no sense.   The

13  standards for each concept are distinct.

14         The "possession" standard addresses whether the plaintiff knows of the trade

15  secret—not whether the information lacks value because it is generally known in the

16  industry.   It makes sense that several documents within a company may reflect or

17  corroborate portions of a trade secret developed over time.   For example, lab notebooks

18  from multiple engineers working together may show the company was working on the

19  trade secret.   Masimo cited extensive case law to support this argument in its opposition

20  to Apple's co-pending motion for summary judgment on possession. *See* Dkt. 1133-1

21  at 1-6.   Even Apple's cited authority explains that, "to afford protection to the employer,

22  the information need not be in writing but may be in the employee's memory." *Morlife,*

23  *Inc. v. Perry*, 56 Cal. App. 4th 1514, 1518, 1521 (1997) (quotation omitted).

24         Multiple documents from ***one company*** may show ***that particular company*** knew

25  of the trade secret.   For example, two publications from the same company could show

26  that company knew of the entire trade secret.   Of course, that would not show the trade

27  secret is ***generally*** known in the industry (*see infra* §II.B.2).   But Sarrafzadeh and

28  Warren did not even conduct that sort of analysis.   Instead, they broke the trade secrets

-12-

into "bits" and attempted to show that each "bit" was "disclosed" in different references from unrelated sources.  That is precisely the sort of analysis the California Court of Appeal rejected.  *See Altavion*, 226 Cal. App. 4th at 47.

### iii.   Apple's Other Arguments Lack Merit

Apple claims Madisetti's opinions support Apple's approach because he purportedly said "nothing about whether the various steps of the secret are protectable as a combination."  Opp. at 11.  Apple is wrong.  Madisetti criticized Apple's experts for failing to analyze the trade secrets as a whole.  For example, Madisetti explained:

> Breaking apart a trade secret "bit by bit" into several purported "elements" and then attempting to show that each "element" is disclosed in a document does not show the trade secret as a whole is generally known or "readily ascertainable." Sarrafzadeh fails to show that many [of] its purported "elements" are generally known individually, much less that the combination is generally known.

*See, e.g.*, Ex. 16 (Madisetti rebuttal) ¶43.  Rather than address those opinions, Apple cites to Madisetti's condensed summary judgment declaration.  Opp. at 11 (citing Dkt. 1098-8).  But that summary judgment declaration *responded* to Sarrafzadeh's opinion that "every aspect" of the ███████████ was generally known.  Dkt. 1098-8 at ¶¶150, 184; *see also id.* ¶¶196-97, 205-06, 213-14, 219-20, 225-26.  Merely because Madisetti responded to Sarrafzadeh's "element-by-element" analysis does not mean Madisetti adopted the approach.

Apple also argues that two portions of *True Wearables III* support its position.  Opp. at 13.  Apple argues this Court "(1) broke one of Plaintiffs' purported secrets into discrete 'elements' when conducting the generally known analysis and (2) concluded that a different purported secret was generally known based on *two* separate references."  Opp. at 13 (citing *True Wearables III*, 2022 WL 17083396, at *10, *12).  Apple does not explain which pin cite corresponds to each argument, but Apple's first argument appears to be referring to the Court's discussion of "Trade Secret 1" at page *10.  *See True Wearables III*, 2022 WL 17083396, at *10.  There, the Court found Masimo

-13-

possessed the trade secret for two parameters (pulse rate and oxygen saturation) but not a third (perfusion index). *Id.* That portion of the decision did not break Masimo's trade secret into "elements," mention "generally known," or approve of Apple's "element by element" approach.

Apple's second argument appears to be referring to the Court's discussion of "Trade Secret 5" at page *12. *Id.* at *12. There, the Court held that two separate references each disclosed a wireless and wearable pulse oximeter. *Id.* The Court did not break the trade secret into elements, find each in a separate publication, and then conclude the trade secret lacked value by virtue of being generally known to the relevant people. *See id.*

### iv.   Apple Incorrectly Advocates For A "Generally Known" Standard That Is Even Higher Than Patent Novelty

Apple claims its experts never suggested a trade secret must be "patentably nonobvious or novel." Opp. at 12. But Apple's opposition shows its experts applied a "generally known" standard that is even *higher*—and harder for the plaintiff to establish—than patent novelty. They have the law backwards.

Patent "novelty" or "anticipation" considers whether the claim is "known in the prior art." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001). The trade secret statute considers whether information has value because it is not "***generally*** known" to relevant people. Cal. Civ. Code § 3426.1(d)(1). The trade secret requirement is lower—and easier for the plaintiff to establish—than patent novelty. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974) ("[n]ovelty, in the patent law sense, is not required"); *Sinclair v. Aquarius Elecs., Inc.*, 42 Cal. App. 3d 216, 222 (1974) (a trade secret can be "clearly anticipated in the prior art"). This makes sense because trade secret law protects against misuse of trade secrets through theft or breach of confidence. *See Kewanee Oil*, 416 U.S. at 476. One who meets the more "rigorous statutory test for the issuance of a patent" obtains broader rights, including against "independent creation" by others. *Id.* at 477-78.

Apple's experts violate these basic principles.  Apple's experts assert Masimo's trade secrets are "generally known" by cobbling together multiple sources in an attempt to show each individual aspect of the trade secret is known.  Opp. at 10.  Apple admits that would ***not*** defeat patent novelty.  *Id.* at 13 n.5 (admitting the "anticipation (or novelty) doctrine 'requires the presence in a single prior art disclosure of all elements of the claimed invention'").  Because Apple's experts' analyses would be insufficient to show anticipation, it is insufficient to show the trade secret is "generally" known.  *See Altavion*, 226 Cal. App. 4th at 55 ("If an invention has sufficient novelty to be entitled to patent protection, it may be said *a fortiori* to be entitled to protection as a trade secret.").

**b.**   **Sarrafzadeh And Warren Fail To Show The Trade Secrets Lack Value Because They Are "Generally" Known**

The relevant inquiry addresses whether a trade secret lacks "independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1); *see Calendar Rsch. LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017) (explaining "[t]he standard to show that trade secrets derive [independent] economic value is not a high standard").[7]  This Court explained that the question is "not whether the alleged trade secret has been publicly disclosed at all, but whether it has become generally known to the relevant people…." *True Wearables III*, 2022 WL 17083396, at *9 (quotation omitted).  Thus, at a minimum, the generally known inquiry considers whether information has been published ***and*** whether the publication caused the information to lose value by virtue of being ***generally*** known in the relevant field.  *See id.* at *17 (rejecting reliance on papers that "did not show that the TSS was generally known in the pertinent field").

---

[7] For example, information known to several competitors can have value by virtue of not being generally known in the industry.  Those who do not know the information are at a competitive disadvantage.

Apple reluctantly acknowledges subject matter is not "necessarily generally known merely because the information is reflected in documents that were published." Opp. at 15 (cleaned up).  But Apple does not contend that Sarrafzadeh and Warren performed *any* analysis as to the portion of the relevant field that knew of the publications on which they rely.  Nor did Sarrafzadeh and Warren identify anyone who combined the sources in the way they suggest, much less perform an analysis showing the combination is generally known in the industry.  Instead, Apple argues its experts did not have to conduct such an analysis because it is a question of fact for the jury. Opp. at 15 ("[t]he extent to which a particular publication is sufficiently well known to render the related alleged secret generally known is a question of fact for the jury").

Apple ignores that Sarrafzadeh and Warren did not merely opine that subject matter is present in a certain publication.  Rather, they opined that Masimo's trade secrets were "generally known" to the relevant people.  Ex. 1 ¶¶55, 57, 101-102, 121-122, 131-132, 175-176, 208-209, 216-217, 221-222, 228-229, 234-235, 240-241, 244; Ex. 3 ¶¶122, 124, 128, 220, 222, 230-231, 239, 241, 248, 250, 262, 265, 268, 272, 338, 341, 360, 364-67.  They performed no analysis to reach that conclusion, much less a reliable analysis.  Instead, they applied incorrect law by analyzing whether individual "elements" of the trade secret were "known in the art."  *See, e.g.,* Ex. 1 ¶¶59-92.  Then, they included a stock paragraph asserting "*every aspect* of [the trade secret] was generally known before January 2014, based on [numerous documents]." *See, e.g.*, *id.* ¶93.  They then concluded: "when considered as individual elements or as an aggregation of individual elements, Plaintiffs' trade secret was generally known, or at a minimum, readily ascertainable." *See, e.g.*, *id.*

Sarrafzadeh and Warren conducted no analysis to support their opinions that the trade secrets lack value because they were "generally known" to relevant people.  Nor did they assume other Apple witnesses will present such evidence.  In fact, Apple's opposition makes no proffer of any evidence it could possibly present at trial to establish

1    the particular combinations of publications are "sufficiently well known to render the

2    related alleged secret generally known…." *See* Opp. at 15.[8]

3         Apple argues Sarrafzadeh and Warren "primarily" rely on patents and "disclosure

4    of a trade secret in a patent places the information comprising the secret into the public

5    domain." Opp. at 16. But Apple's cited cases do not support its position. In *Stutz Motor*

6    *Car of Am. v. Reebok Int'l Ltd.*, 909 F. Supp. 1353, 1356, 1359-60 (C.D. Cal. 1995), the

7    plaintiff disclosed the entire trade secret in its own patent. The Federal Circuit

8    distinguished other cases for similar reasons in *True Wearables II*. *See* 2022 WL 205485

9    at *4. The decision in *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D.

10   Cal. Apr. 11, 2014), is even further afield. There, the court considered whether a patent

11   put plaintiff on constructive notice of its claim for statute of limitations purposes. *Id.* at

12   *5-6. It did not even mention the "generally known" issue.

13        Accordingly, the analysis that Sarrafzadeh and Warren performed (asserting

14   aspects of the trade secrets are allegedly disclosed in different publications) is connected

15   to their conclusions (trade secret is generally known) "only by the ipse dixit of the

16   expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). That is precisely the type

17   of opinion that should be excluded under *Daubert* as having "simply too great an

18   analytical gap between the data and the opinion proffered." *Id.*

19        **2.    The Court Should Exclude Perez And Kivetz's "Generally Known"**

20        **Opinions**

21        As discussed below, Perez and Kivetz's "generally known" opinions should be

22   excluded for the same two reasons as Sarrafzadeh and Warren.

23

24

25

26   ---

     [8] Apple argued Masimo's experts should be excluded if they do not address certain

27   issues. *See* Dkt. 1152-1 at 1, 4-5, 10. Unlike Apple, Masimo made a proffer that it will
     present other factual evidence on the issues on which its experts may not opine. *See,*

28   *e.g.*, Dkt. 1164-1 at 4-6, 10-15.

a.   **Perez and Kivetz Improperly Broke Apart The Trade Secrets And Attempted To Show Each Piece Was Known**

i.   **Perez And Kivetz Did Not Analyze Trade Secrets As A Whole**

Apple argues Perez and Kivetz did not perform an element-by-element analysis to establish Masimo's trade secrets are "generally known."  Opp. at 13. ███████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

*See* Opp. at 14.

Perez divides his analysis into two parts. ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ Based on this combination of different references from different companies, Perez concludes B-1 "was well-known" in 2013.  *Id*. ¶60.

Kivetz likewise divides the trade secrets into aspects and attempts to show different sources disclose different aspects. Ex. 8 ¶¶119-25 (B-1), 126-41 (B-2 through B-5), 142 (B-6). █████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 He also analyzes B-2 through B-5 separately without regard to B-1 even though B-2

4 through B-5 incorporate B-1. *Id.* ¶¶119-25 (B-1), 126-42 (B-2 through B-5).

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████ Apple's

10 reliance on paragraph 100 is also misplaced because, as discussed in Section II.B.2.c

11 below, Kivetz improperly rewrites Masimo's trade secrets to remove substantial portions

12 of the trade secret.

13 　　　　Apple points to paragraphs 144-65, but there, Kivetz again cobbles together

14 multiple sources to claim the trade secrets are "known." *Id.* ¶¶144-65. ████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████

25 　　　　　　ii.　　　**Perez And Kivetz's Analysis Is Legally Irrelevant**

26 　　　　As discussed above, the California Court of Appeal specifically rejected the sort

27 of analysis that Perez and Kivetz performed. *See Altavion*, 226 Cal. App. 4th 26, 47

28 (2014) (trade secrets should not be examined "bit by bit with the further requirement

-19-

that [plaintiff] demonstrate protectability of its elements or some of them rather than the protectability of the [trade secret] as a whole"). Apple's arguments to the contrary lack merit. *See supra* §II.B.1.a.

Accordingly, Perez and Kivetz's "generally known" opinions are contrary to law and should be excluded. *Carroll Shelby Licensing*, 2021 WL 8531241, at \*7.

### b. Perez and Kivetz Fail To Show The Trade Secrets Lack Value Because They Are "Generally" Known In The Industry

Perez and Kivetz also fail to provide any reliable analysis that the trade secrets lack value because they are ***generally*** known in the industry. Apple identifies no such analysis in its opposition. Instead, Apple merely argues that Perez and Kivetz cited many documents. Opp. at 16. But Apple fails to identify any expert opinion explaining ***why*** the cited documents establish that the trade secrets are generally known as a whole to the relevant people. *Id.*

Apple argues Kivetz was not required to provide "a specific number of people who would have to be aware of a reference for it to be 'generally known.'" *Id.*, n.7. As with Sarrafzadeh and Warren, Apple argues that is "a matter for the jury." *Id.* But Perez and Kivetz did not stop at merely explaining what documents allegedly disclose. Instead, they opined that the trade secrets are "generally known" with no reliable analysis supporting those opinions.

Accordingly, like Apple's other experts, Perez and Kivetz's opinions (asserting aspects of the trade secrets are allegedly disclosed in different publications) are connected to their conclusions (trade secret is generally known) "only by the ipse dixit of the expert." *Gen. Elec.*, 522 U.S. at 146. As discussed, that is precisely the type of opinion that should be excluded under *Daubert. Id.*

-20-

**C.  Perez and Kivetz Improperly Rewrite The Trade Secrets**

Perez and Kivetz improperly rewrite the trade secrets and then analyze subject matter that is *not* the trade secrets.  Apple argues Perez and Kivetz merely "defined" terms in the trade secret. Opp. at 17.  But neither report identified definitions for specific terms. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  Nowhere do Perez or Kivetz provide the "specialized meaning" of terms of art.  Thus, Apple's cited case is inapposite. *See Pac. Fuel Co. v. Shell Oil Co.*, 2008 WL 11336467 at *5 (C.D. Cal. Jan. 24, 2008).

Apple also fails to substantively defend its experts' rewrite of the trade secrets.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  Apple does not address, much less, defend this rewrite.

As Masimo also explained, Kivetz similarly ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  Ex.  8 ¶¶59-105.  Again, Apple does not address or defend this rewrite.

Accordingly,  Perez  and  Kivetz's  opinions  are  fundamentally  unreliable, irrelevant, and unhelpful because they failed to analyze the trade secrets at issue.

### III.  CONCLUSION

Masimo respectfully requests the Court exclude the identified opinions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 23, 2023          By: /s/ Adam B. Powell

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,988 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: January 23, 2023          By: _/s/ Adam B. Powell_

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

56977602