# EXHIBIT 12

NON-CONFIDENTIAL VERSION

2021-2146

# United States Court of Appeals
# for the Federal Circuit

**MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,**

*Plaintiffs-Appellees*

**v.**

**TRUE WEARABLES, INC., MARCELO LAMEGO,**

*Defendants-Appellants*

---

*Appeal from the United States District Court for the Central District
of California in Case No. 8:18-CV-02001*

---

## CORRECTED OPENING BRIEF OF DEFENDANTS-APPELLANTS
## TRUE WEARABLES, INC., MARCELO LAMEGO

---

Rachel Zimmerman Scobie
Paige S. Stradley
Michael A. Erbele
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
(612) 332-5300

Peter Gergely
MERCHANT & GOULD P.C.
767 Third Avenue, Suite 23C
New York, NY 10017
(212) 223-6520

Ryan James Fletcher
MERCHANT & GOULD P.C.
1801 California Street, Suite 3300
Denver, CO 80202
(303) 357-1670

August 26, 2021

*Attorneys for Defendants-Appellants*

Exhibit 12
-14-

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(3) and 47.4, counsel for Defendants-Appellants True Wearables, Inc. and Marcelo Lamego certifies the following:

1.     The full name of the party represented by me is:

    True Wearables, Inc. and Marcelo Lamego

2.     The name of the Real Party in interest represented by me is:

    N/A

3.     Parent corporations and publicly held companies that own 10% or more of the stock in the party:

    True Wearables, Inc. hereby states that it has no parent corporation and that no publicly held company owns 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

    Amanda R. Washton and Sherron L. Wiggins of CONKLE, KREMER & ENGEL

    Samuel G. Brooks of CALL & JENSEN APC

    Zachary D. Kachmer, Eric R. Chad, and Scott P. Shaw of MERCHANT & GOULD P.C.

Exhibit 12
-15-

Roderick O'Dorisio and Andrew T. Pouzeshi, formerly of
MERCHANT & GOULD P.C.

5.     The title and number of any case known to counsel to be pending in
this or any other court or agency, other than the originating case, that will directly
affect or be directly affected by this court's decision in the pending appeal:

N/A

6.     Organizational Victims and Bankruptcy Cases:

N/A


Dated: August 26, 2021

/s/ Rachel Zimmerman Scobie
Rachel Zimmerman Scobie

*Attorneys for Defendants-Appellants*
*True Wearables, Inc. and Marcelo*
*Lamego*

Exhibit 12
-16-

**CONFIDENTIAL MATERIAL REDACTED**

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES ...................................................................1

JURISDICTIONAL STATEMENT ......................................................................2

STATEMENT OF THE ISSUES...........................................................................3

STATEMENT OF THE CASE ..............................................................................5

I.  Introduction.................................................................................................5

II.  Factual and Procedural Background...........................................................7

    A.  The technology at issue and Masimo's lawsuit ..................................7

    B.  Dr. Lamego's work after leaving Cercacor .......................................12

    C.  Masimo's motion for a preliminary injunction .................................13

        1.  Masimo filed a motion for preliminary injunction seeking to prevent issuance of True Wearables' patents ......................13

        2.  True Wearables presented unrebutted evidence that the ▮adjective▮ TSS ▮equation▮ was generally known...........15

        3.  True Wearables presented unrebutted evidence that Dr. Lamego derived the formulas in the '158 Application, including the accused ▮equation▮ using his general mathematical knowledge and skill...........................................18

III.  The District Court's Preliminary Injunction Order .......................................18

    A.  The district court ignored unrebutted record evidence and applied an erroneous legal standard in concluding Masimo had shown a likelihood of success on the merits ....................................................19

    B.  The district court erroneously determined that the remaining preliminary injunction factors weighed in favor of an injunction. .....21

IV.  The District Court's Denial of True Wearables' Motion for Reconsideration .........................................................................................23

Exhibit 12
-17-

**CONFIDENTIAL MATERIAL REDACTED**

    A.    Discovery confirmed publications like the one that disclosed the ▮adjective▮ TSS ▮equation▮ were regularly read and relied upon by those in Masimo's industry ....................................................23

    B.    Applying an erroneous interpretation of the law, the district court denied True Wearables' motion for reconsideration...........................25

SUMMARY OF THE ARGUMENT ....................................................28

ARGUMENT ...................................................................................31

I.    Standard of Review......................................................................31

II.    The District Court Erred in Granting a Preliminary Injunction Requiring True Wearables to Prevent the '158 Application, and Its Family, from Publishing ................................................................32

    A.    The district court erred in determining Masimo met its burden of proving a likelihood of success on the merits .....................................33

        1.    The district court erred as a matter of law in determining Masimo was likely to succeed in proving the ▮adjective▮ TSS ▮equation▮ is a trade secret; under the proper legal standard, Masimo cannot meet its burden........................34

            a.    The district court applied an incorrect legal standard to its determination of whether the ▮adjective▮ TSS ▮equation▮ was generally known............................36

            b.    Applying the correct legal standard, the record cannot support the district court's determination ..........40

        2.    The district court erred in determining Masimo was likely to succeed in proving misappropriation of the ▮adjective▮ TSS ▮equation▮ ..................................................................44

    B.    The district court erred in determining Masimo met its burden of demonstrating the balance of equities favored entry of the preliminary injunction ........................................................................47

        1.    The district court plainly erred in its determination that the injunction against publication of the '158 Application imposed no hardship on True Wearables.................................47

Exhibit 12
-18-

2.      The district court erred in its determination that Masimo
        would be harmed by the publication of the '158
        Application...........................................................................49

III.    The District Court Abused Its Discretion in Denying True Wearables'
        Motion for Reconsideration.........................................................50

CONCLUSION      ..........................................................................................53

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 25.1, this brief redacts materials that Appellees designated as confidential under the protective order entered by the district court. This material has been redacted at Appellees' request. The material omitted includes the name and description of Appellees' alleged TSS trade secret, descriptions of the mathematical method underlying the same, and the name of a public domain publication disclosing Appellees' alleged TSS trade secret. The redacted material appears on pages iii-iv, 5, 10-11, 14-20, 22-25, 28-31, 34, 36-37, 40-46, 49-51, and 53-54.

Exhibit 12
-19-

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABBA Rubber Co. v. Seaquist,*
235 Cal. App. 3d 1 (Cal. Ct. App. 1991) .............................................39

*Amgen Inc. v. Cal. Corr. Health Care Servs.,*
47 Cal. App. 5th 716 (Cal. Ct. App. 2020) ............................................34, 41, 50

*Attia v. Google LLC,*
983 F.3d 420 (9th Cir. 2020) .......................................................35, 38

*Bladeroom Grp. Ltd. v. Emerson Elec. Co,*
No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 64695 (N.D. Cal.
Apr. 16, 2018) ..................................................................40, 41

*Cascades Projection LLC v. Epson Am., Inc.,*
864 F.3d 1309 (Fed. Cir. 2017) ..................................................47, 48

*Chudik v. Hirshfeld,*
987 F.3d 1033 (Fed. Cir. 2021) ..................................................48

*Convolve, Inc. v. Compaq Comput. Corp.,*
No. 00 Civ. 5141, 2011 U.S. Dist. LEXIS 152762 (S.D.N.Y. Aug.
16, 2011), *aff'd in relevant part,* 527 F. App'x 910 (Fed. Cir. 2013) ....35, 38, 52

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank,*
527 U.S. 627 (1999) ..............................................................47

*Flexible Lifeline Sys., Inc., v. Precision Lift, Inc.,*
654 F.3d 989 (9th Cir. 2011) .........................................................31

*Forcier v. Microsoft Corp.,*
123 F. Supp. 2d 520 (N.D. Cal. 2000) .........................................35, 36

*Garcia v. Google, Inc.,*
786 F.3d 733 (9th Cir. 2015) .........................................................33

Exhibit 12
-20-

*GSI Tech., Inc. v. United Memories, Inc.*,
    No. 5:13-cv-01081-PSG, 2015 U.S. Dist. LEXIS 129568 (N.D. Cal. Sep. 21, 2015)...............................................................45

*Henson v. Corizon Health, Inc.*,
    804 F. App'x 842 (9th Cir. 2020)......................................................32

*Hooked Media Grp., Inc. v. Apple Inc.*,
    55 Cal. App. 5th 323 (Cal. Ct. App. 2020)...........................44, 45, 46

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ....................................................43, 44

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ............................................................33

*Masimo Corp. v. Sotera Wireless, Inc.*,
    591 B.R. 453 (S.D. Cal. 2018), *aff'd*, 794 F. App'x 625 (9th Cir. 2020) .............................................................................................45

*Masimo Corp. v. Sotera Wireless, Inc.*,
    794 F. App'x 625 (9th Cir. 2020) .......................................35, 38, 52

*Morlife, Inc. v. Perry*,
    56 Cal. App. 4th 1514 (Cal. Ct. App. 1997)......................................39

*Munaf v. Geren*,
    553 U.S. 674 (2008).............................................................................32

*Pollara v. Radiant Logistics Inc.*,
    No. CV 12-344 GAF, 2014 U.S. Dist. LEXIS 200944 (C.D. Cal. June 6, 2014)....................................................................................39

*Raytheon Co. v. Indigo Sys. Corp.*,
    895 F.3d 1333 (Fed. Cir. 2018) ....................................................45, 46

*Regents of the Univ. of Mich. v. Genesearch, L.L.C.*,
    81 F. App'x 335 (Fed. Cir. 2003) .....................................................27

*Sargent Fletcher, Inc. v. Able Corp.*,
    110 Cal. App. 4th 1658 (Cal. Ct. App. 2003)...................33, 41, 45, 46

Exhibit 12
-21-

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ......................................................31, 32, 50

*Syngenta Crop Prot., Inc. v. Helliker*,
    138 Cal. App. 4th 1135 (Cal. Ct. App. 2006)......................................34

*Takeda Pharm. U.S.A., Inc. v. Mylan Pharm. Inc.*,
    967 F.3d 1339 (Fed. Cir. 2020) ............................................................31

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ..............................................35, 38, 52

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) (*en banc*)..........................................32

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
    707 F. Supp. 1170 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir.
    1990) ..........................................................................................................44

*Vantage Mobility Int'l Ltd. Liab. Co. v. Kersey Mobility Ltd. Liab. Co.*,
    836 F. App'x 496 (9th Cir. 2020) ........................................................27

*Walsh v. W. Valley Mission Cmty. Coll. Dist.*,
    66 Cal. App. 4th 1532 (Cal. Ct. App. 1998)......................................37

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................32

**Statutes**

18 U.S.C. §§ 1836 *et seq.*...............................................................................8

28 U.S.C. § 1292(c)(1)......................................................................................2

28 U.S.C. § 1295(a)(1)......................................................................................2

28 U.S.C. § 1331 ................................................................................................2

28 U.S.C. § 1367(a) ..........................................................................................2

35 U.S.C. § 154(b) ..........................................................................................48

Cal. Civ. Code §§ 3426 *et seq.*............................................................*passim*

Exhibit 12
-22-

Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments)...............*passim*

Cal. Civ. Code § 3426.1(a) .................................................................44

Cal. Civ. Code § 3426.1(b) .................................................................37

Cal. Civ. Code § 3426.1(d) .................................................................34

**Other Authorities**

37 CFR 1.11(a)...................................................................................14

5 Witkin, Cal. Proc. Plead § 1081 (5th ed. 2020)..................................37

Judicial Council of Cal. Civ. Jury Instructions (CACI) No. 4420
    (2009)..........................................................................................37

Federal Circuit Rule 25.1(d) ...............................................................16

Federal Circuit Rule 47.5 .....................................................................1

Federal Rule of Civil Procedure 59(e)...................................2, 25, 27, 31

Federal Rule of Civil Procedure 60 ......................................2, 25, 27, 31

Federal Rule of Civil Procedure 65(c)..................................................22

Exhibit 12
-23-

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Appellants

True Wearables, Inc. and Marcelo Lamego certifies the following:

    a.    there have been no other appeals in this case; and

    b.    there are no other cases pending in this or any other court that will

directly affect or be directly affected by this Court's decision in No. 2021-2146.

Exhibit 12
-24-

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). This Court has jurisdiction under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1).

The district court issued a decision granting Masimo's motion for a preliminary injunction on April 28, 2021. Appx000001-000019. True Wearables filed a Motion for Relief from the Court's Order Granting Plaintiffs' Motion for Preliminary Injunction under Federal Rules of Civil Procedure 59(e) and 60 on May 26, 2021. Appx005206-005215. The district court denied that motion on June 16, 2021. Appx000039-000044. True Wearables timely filed a notice of appeal to this Court on July 14, 2021.

Exhibit 12
-25-

## STATEMENT OF THE ISSUES

1.     The district court determined Appellees Masimo Corporation ("Masimo Corp.") and Cercacor Inc. ("Cercacor") (collectively "Masimo") were likely to succeed on the merits of their misappropriation claim under the California Uniform Trade Secrets Act ("CUTSA") and issued a preliminary injunction requiring Appellants to prevent their patent applications, which were asserted to contain the alleged trade secret, from publishing. Regarding likelihood of success on the merits:

     a.     Did the district court err as a matter of law in deeming unrebutted evidence that the alleged trade secret was generally known, and appeared in its entirety in a widely distributed and oft-cited IEEE publication, irrelevant to the question of whether the alleged trade secret was protectable under the CUTSA?

     b.     Did the district court abuse its discretion in determining Masimo was likely to meet its burden to prove misappropriation of the alleged trade secret despite the unrebutted evidence that Appellant Dr. Lamego independently derived the accused formula using his knowledge and skill in mathematics, and the absence of any evidence that he took any materials containing the alleged trade secret from Masimo?

3

Exhibit 12
-26-

2.      The portion of the preliminary injunction at issue on appeal requires Appellants True Wearables, Inc. ("True Wearables") and Marcelo Lamego ("Dr. Lamego") (collectively "True Wearables") to "take all necessary steps" to prevent publication of U.S. Patent Application No. 62/591,158 and any patent application that claims priority thereto. Compliance requires True Wearables to delay issuance of already allowed patent applications, thus losing an irretrievable portion of its patent term. Did the district court err in failing to consider this hardship to True Wearables when it determined the balance of equities weighed in Masimo's favor, particularly given that the alleged trade secret has already been published elsewhere?

3.      After the district court issued the preliminary injunction, True Wearables moved for reconsideration based on new evidence, including depositions of Masimo's current and former employees, which provided added confirmation that IEEE publications of the sort containing the alleged trade secret were frequently read, reviewed, and relied upon by engineers in the industry. Did the district court err as a matter of law in determining this evidence had no relevance to whether the alleged trade secret is generally known and, therefore, not a trade secret?

4

Exhibit 12
-27-

**CONFIDENTIAL MATERIAL REDACTED**

## STATEMENT OF THE CASE

### I.    Introduction

This case is remarkable because the district court determined that the alleged

trade secret at issue on appeal, a mathematical formula, was not "generally known"

even though the exact formula was published in an IEEE article in 2008, years before

any alleged misappropriation. Publication of the alleged trade secret by the IEEE

destroyed its secrecy, as evidenced by the fact that the IEEE article in question,

▮Name▮ & ▮Name▮ has since been cited by others more than 1,200 times.

Complementing this documentary record, True Wearables submitted testimony from

its expert witness who testified that the alleged trade secret was generally known and

who identified ▮Name▮ & ▮Name▮ as but one example of its publication by others in

several sources, including textbooks, since the 1960s. The district court's decision

reflects the application of a legally erroneous and overly restrictive test for

determining whether an alleged trade secret is generally known; one that is

seemingly impossible to meet and offers protection over information that in no way

qualifies as secret.

Other problematic errors are evident in the district court's decision. The

district court's assertion that True Wearables did not provide "any response to

Plaintiffs' contention that [Dr.] Lamego brought the [alleged trade secret] with him

after he left his job with Plaintiffs" ignores the evidentiary record. The record

Exhibit 12
-28-

contains substantial evidence of Dr. Lamego's independent development of the material in question over a period of three years after he left Cercacor. In contrast, Masimo never identified any evidence that Dr. Lamego took any documents or files containing the alleged trade secret with him when he left.

The district court's decision also fails to acknowledge the hardship imposed on True Wearables by the injunction. To comply with the first prong of the injunction, which is the only prong challenged on appeal, True Wearables must prevent its patent applications from issuing. At the time of the injunction, the applications had received notices of allowance and would have issued upon payment of the issue fee. Accordingly, compliance causes True Wearables to suffer an irretrievable loss of patent term. Contrasted with the alleged harm to Masimo— additional publication of an alleged trade secret that has long been in the public domain—the district court's determination that the balance of the hardships favors Masimo cannot be supported.

The district court's injunction preventing True Wearables from permitting its patent applications to publish was premised entirely on these errors of law and fact. This decision, made without granting oral argument, holding an evidentiary hearing, or requiring Masimo to post a bond, should be reversed.

The district court's denial of True Wearables' motion for reconsideration also should be reversed. After the district court issued its preliminary injunction order,

Exhibit 12
-29-

deposition testimony of three current and former employees of Masimo provided further evidence that the alleged trade secret was generally known and, therefore, could not be a trade secret. The opinion denying the motion for reconsideration made plain the district court's application of an incorrect legal standard. Specifically, the district court wrongly held that, under California law, evidence that an alleged trade secret appears in a printed publication cannot be considered in connection with determining whether it is generally known. The district court erred in relying on that incorrect bright line rule to justify its improper rejection of any publication-related evidence, even in combination with testimony concerning the same.

The district court erred in granting the injunction preventing publication of True Wearables' patent applications, and in denying True Wearables' motion for reconsideration. Those decisions should be reversed, and the portion of the preliminary injunction applicable to the publication of True Wearables' patent applications should be vacated.

## II.    Factual and Procedural Background

### A.    The technology at issue and Masimo's lawsuit

On November 8, 2018, Masimo Corporation ("Masimo Corp.") and Cercacor Inc. ("Cercacor") (collectively "Masimo") filed a complaint against True Wearables, Inc. ("True Wearables") and Marcelo Lamego ("Dr. Lamego") (collectively "True Wearables"). Appx000108-000159. Dr. Lamego holds a Ph.D. in Electrical and

Exhibit 12
-30-

Electronics Engineering from Stanford University. Appx001377; Appx003988

(21:2-19). He formerly served as Chief Technology Officer of Cercacor, which used

to be a division of Masimo Corp. Appx000112 (¶ 15); Appx000120-000121 (¶¶ 34-

35). Dr. Lamego left Cercacor in 2014. *Id.* After leaving, he first worked for Apple

Inc., and later founded True Wearables. Appx000122 (¶ 38); Appx001377. In the

underlying lawsuit, Masimo alleged that Dr. Lamego and True Wearables

misappropriated certain alleged trade secrets in violation of California's Uniform

Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq.*, Appx000127-000130

(¶¶ 75-87), and the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836

*et seq.*, Appx000131-000134 (¶¶ 89-101). Masimo also asserted several patent

claims. Appx000136-000155 (¶¶ 118-90).

The present appeal concerns one of the alleged Masimo trade secrets. The

alleged trade secret at issue on appeal relates to an algorithm used to solve

optimization problems. Appx000404 (¶ 4); Appx000410-000411 (¶¶ 25-27). One

practical application for such algorithm is in the development of mathematical

models that can be used in connection with pulse co-oximeters or other noninvasive

monitoring devices. *Id.*

Noninvasive monitoring devices are medical devices that make

determinations of certain physiological values, such as the concentration of total

hemoglobin, a measurement that Masimo terms "SpHb." Appx000110-000111

Exhibit 12
-31-

(¶ 11); Appx000112 (¶ 16); Appx000404 (¶ 4). To determine SpHb, a device emits different wavelengths of light from LEDs (light emitting diodes) into a portion of the user's body, most commonly the fingertip. Appx000404-000407 (¶¶ 4-11). When the light emerges from the tissue on the other side, photodetectors in the device measure how much light has been absorbed for each wavelength. *Id*. This data is then converted into an estimated SpHb level using a mathematical equation.

An equation that estimates hemoglobin levels based on light absorption data might take the form of SpHb = Ax + By + Cz . . . , where x, y, and z are light absorption measurements and where A, B, and C are constants (or "coefficients"). Appx000407-000409 (¶¶ 12-16). The equation uses coefficients to weight the importance of different variables from the monitoring device. *Id*.

The proper coefficients to apply to the data from a particular noninvasive monitoring device are determined by analyzing patient data from clinical trials. Appx000409-000410 (¶¶ 19-22). In clinical trials, the device makes light absorption measurements for each subject, and each subject's actual SpHb is also determined through a blood test. Appx000406-000407 (¶ 10); Appx000409-000410 (¶¶ 19-22). The data collected during the clinical trial is then used to determine the coefficients for an equation that calculates estimated SpHb from the device's light absorption measurements. *Id*. The objective is to find the coefficients (*i.e.* the values for A, B, C, etc.) to apply to each variable (*i.e.* x, y, z, etc.) that minimize the discrepancy

Exhibit 12
-32-

**CONFIDENTIAL MATERIAL REDACTED**

between the values of SpHb predicted by the equation and the true values of SpHb measured during the clinical trial. Appx000410 (¶ 22). When this discrepancy is small it can be said that the equation "fits" the clinical data. A model or equation that fits the clinical data is likely to produce accurate estimates of SpHb for future users of the device. Appx000409-000410 (¶¶ 19-22).

Often, equations like this use more than the 3 coefficients represented in the above example. For a measurement like SpHb, there may be hundreds of coefficients for a particular device. Appx000408-000409 (¶ 16). Because an equation with hundreds of coefficients is too complicated to solve by hand or on paper, a computer-implemented ██equation██ may be used. A ██equation██ is an algorithm that finds the optimal values for the coefficients by starting with a guess, and then ██adverb██ updating the guess to achieve a better fit over time until the fit is sufficiently good. *Id*.; Appx000410 (¶ 22). Some solvers find a "fit" more quickly than others. The speed and accuracy of the solver depends on the effectiveness of the solver's ██equation██ which mathematically determines whether, how, and to what extent each coefficient should be adjusted (or ██adjective██) at each ██adjective██ step to improve the correlation between the SpHb equation and the clinical data. Appx000410 (¶ 22); Appx003109-003110 (¶ 33).

In this case, Masimo alleges a ██equation██ it calls the ██equation██ or "TSS," is a trade secret. Appx000386. Prior to 2016, Masimo allegedly used the

**CONFIDENTIAL MATERIAL REDACTED**

TSS to determine the coefficients for SpHb equations for some of its devices. Appx000389-000391. While working for Cercacor, Dr. Lamego mathematically derived the TSS, using his knowledge of linear algebra and optimization methods. Appx000410 (¶ 25). In 2010, he developed an internal Workshop Presentation, which disclosed two different TSS ██equations██ an ██adjective██ ██equation██ ██████ and a ██adjective equation██. Appx000413-000425; Appx000502-000514; Appx003102-003103 (¶¶ 14-15). The two ██equations██ provide two different options for adjusting the SpHb coefficients to "fit" the coefficients to the clinical data for a given device after each ██adjective██ step of the trial-and-error process. The ██adjective equation██ permits the coefficients to have any numerical value, while the ██adjective equation verb██ them within pre-set ranges.[1] While Masimo allegedly at some point in time employed these ██equations██ to determine coefficients for certain of its noninvasive monitoring devices, Appx000411 (¶ 27), the TSS ██equations██ themselves have many other uses and are not unique to determining coefficients for noninvasive monitoring devices. ██Equations██, and their ██equations██, can be used in any data fitting exercise. Appx003103 (¶ 16); Appx003107 (¶ 26); Appx003108 (¶ 28).

---

[1] While Masimo asserts the alleged TSS trade secrets are not limited to these two ██equations██, the district court's decision found only the ██adjective██ TSS ██equation██ ██████ in True Wearables' patent applications. Appx000014-000016. Because this appeal concerns only the injunction against publication of those applications, the ██adjective██ TSS ██equation██ is the sole alleged trade secret at issue here.

11

Exhibit 12
-34-

## B.     Dr. Lamego's work after leaving Cercacor

Dr. Lamego left Cercacor in January 2014. Appx000121 (¶ 35); Appx001377. After first working for Apple for several months, Dr. Lamego founded True Wearables. Appx000122 (¶ 38). At True Wearables, Dr. Lamego worked tirelessly to develop the Oxxiom® device, a revolutionary, new pulse oximeter product, from scratch. Appx001376-001385; *see also* Appx003880 (181:17-182:2 (Dr. Lamego's daughter explaining how hard Dr. Lamego worked to develop the Oxxiom® device and testifying that "he did not sleep . . . [h]e would work all day")). The Oxxiom® device is an inexpensive, lightweight, disposable pulse oximeter that eliminates the need for charging cables and other peripherals and reduces the risk of cross-contamination between users. Appx001377. Over several years, Dr. Lamego designed the hardware and firmware of the Oxxiom® device, as well as an Oxxiom® iOS app to process data collected by the Oxxiom® hardware. Appx001378-001385.

Dr. Lamego also developed a variety of different mathematical formulas while working on his Oxxiom® device. Appx001382-001384. While some aspects of the Oxxiom® device were revolutionary, other aspects, such as the need to develop equations to determine physiological parameters, were well known to be necessary for any such device. In deriving these equations, Dr. Lamego drew upon his extensive experience with complex mathematics, particularly that gained during his academic studies and in his time teaching mathematics and engineering.

Exhibit 12
-35-

Appx001382. According to his Ph.D. thesis advisor at Stanford, Dr. Lamego was "unusual in his mastery of electronics, electronic devices and software." Appx001377; Appx003988-003989 (23:14-25:14). Dr. Lamego's knowledge and experience in complex mathematics predated his work for Cercacor and, regardless of whether he also relied on it when employed by Cercacor, it belongs only to him.

After developing the Oxxiom® device, Dr. Lamego sought to protect some aspects of the device by filing patent applications. One of the first applications filed was Provisional Patent Application No. 62/591,158 (the "'158 Application"). Appx000516-000564. The '158 Application was filed in November of 2017—more than 3½ years after Dr. Lamego left Cercacor. Appx000516. Later, True Wearables filed other patent applications that claim priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550. *E.g.*, Appx001015-001061. On January 11, 2021, the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance for True Wearables' Patent Application No. 16/198,335 (the "'335 Application"), which claims priority to the '158 Application. Appx001018 (¶ 1); Appx001063-001074.

## C.    Masimo's motion for a preliminary injunction

### 1.    Masimo filed a motion for preliminary injunction seeking to prevent issuance of True Wearables' patents.

On February 18, 2021, Masimo filed a motion for preliminary injunction seeking to prevent the '158 Application from becoming public, Appx001387-

Exhibit 12
-36-

**CONFIDENTIAL MATERIAL REDACTED**

001388, which would occur if the '335 Application were allowed to issue as a U.S. Patent. *See* 37 CFR 1.11(a). Citing analysis from its expert, Dr. McNames, Masimo asserted that the specification of the '158 Application disclosed *inter alia* the adjective TSS equation[2] Appx000392-000393; Appx000450-000465 (¶¶ 65-124). Notably, Masimo's expert, Dr. McNames, offered no opinion on whether the adjective TSS equation was generally known. *See* Appx000434-000469. Nor did he offer any opinion as to whether the adjective TSS equation is or is not a trade secret. *See id*. The only declaration that even attempted to address whether the adjective TSS equation was known—the declaration of Cercacor employee Jesse Chen—contained only the conclusory assertion that he personally was not aware of any publications disclosing it. Appx00411 (¶ 29); *see also id*. (¶¶ 27-28).

Masimo sought an injunction ordering True Wearables to (1) take all necessary steps at the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and (2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS (though none

---

[2] Masimo first alleged the adjective TSS equation was a trade secret on October 30, 2020, almost 2 years after it filed this lawsuit and more than 6 months after True Wearables produced a copy of the '158 Application in discovery.

Exhibit 12
-37-

were identified). Appx001491-001492. While not acknowledged by Masimo in its motion, compliance with the first prong of its requested injunction, which is the only prong at issue on this appeal,[3] imposed an affirmative obligation on True Wearables to delay the issuance of or abandon its patent applications.

> 2. True Wearables presented unrebutted evidence that the [adjective] TSS [equation] was generally known.

In opposing Masimo's motion, True Wearables presented unrebutted evidence showing that the [adjective] TSS [equation] is generally known and, therefore, not a trade secret. This evidence included the written testimony of True Wearables' expert, Dr. Goldstein, Appx003100-003127, who explained that the [adjective] TSS [equation] like its [adjective] counterpart, was "widely known and widely used by the statistics community prior to its alleged appearance in the '158 Application." Appx003103 (¶ 16); *see also* Appx003110-003121 (¶¶ 34-68).

More specifically, Dr. Goldstein's unrebutted testimony explained that the TSS [equations] are more commonly referred to as [equation] or [acronym] for short. Appx003103 (¶ 16); Appx003107-003110 (¶¶ 26-33). Dr. Goldstein testified that variants of the [acronym] method have been known since the 1960s, first appearing in a graduate thesis in 1961. Appx003103 (¶ 16);

---

[3] While True Wearables does not concede that the second prong of the injunction is appropriate, it has no plans to publish anything that could fall within its scope. As such, True Wearables has no reason to challenge the second prong on appeal.

Exhibit 12
-38-

**CONFIDENTIAL MATERIAL REDACTED**

Appx003107-003108 (¶ 27). ▮▮▮ was generalized to solve broad classes of statistical problems in the 1970s and has become commonplace since then, appearing "widely in textbooks and papers with thousands of citations each." Appx003103 (¶ 16). Dr. Goldstein identified one well-known publication disclosing ▮▮▮ the textbook McCullagh and Nelder, that has been cited over 39,000 times. Appx003107-003108 (¶ 27); *see also* Appx003125-003126 (¶ 77).

In support of his testimony that the ▮▮▮ TSS ▮▮▮ was generally known, Dr. Goldstein also cited its appearance, in its entirety, in a widely read and oft-cited industry publication. Appx003103 (¶ 16); Appx003117-003131 (¶¶ 57-73). Specifically, Dr. Goldstein explained, the ▮▮▮ TSS ▮▮▮ ▮▮▮ was disclosed in a 2008 IEEE publication by ▮▮▮ & ▮▮▮ (hereinafter "▮▮▮ & ▮▮▮").[4] Appx003126; Appx003149-003152. ▮▮▮ & ▮▮▮ is a well-known paper that has been cited more than 1,200 times. Appx003118 (¶ 59). Dr. Goldstein testified that the ▮▮▮ & ▮▮▮ formula is identical to the ▮▮▮ TSS ▮▮▮ alleged by Masimo to be a trade secret. Appx003121 (¶ 68); *see also* Appx003117-003121 (¶¶ 57-67).

---

[4] To comply with Federal Circuit Rule 25.1(d)(1)(A), the complete citation for this publication is not reproduced in this brief as Masimo has asserted that the identity of the publication is confidential. The title and complete citation can, however, be found at Appx003126, and the publication is at Appx003149-003152.

Exhibit 12
-39-

**CONFIDENTIAL MATERIAL REDACTED**

Dr. Goldstein further testified that the "TSS is generally known to persons who can obtain economic value from its disclosure." Appx003101 (¶ 2). Dr. Goldstein explained, for example, that he himself is both (a) a person to whom the TSS is known and (b) a person who can obtain economic value from its disclosure. *Id*. ("The TSS is commonly known as ██████ or simply ███ Consequently, the TSS is generally known to persons who can obtain economic value from its disclosure . . . I am such a person."); *see also* Appx003130, Appx003138 (listing Dr. Goldstein's work consulting for Masimo's direct competitor, Philips, regarding "algorithms for medical image reconstruction" and listing Dr. Goldstein's presentation titled "What is Compressed Sensing?" at the "Biomedical Imaging Institute.").

Masimo left <u>all</u> this evidence wholly unrebutted in its reply. Neither Dr. McNames nor Mr. Chen submitted a declaration responding to Dr. Goldstein's analysis. Masimo did not deny that ██████ & ███ publicly disclosed the ████████ TSS ███████ Masimo also did not deny that Dr. Goldstein is a person who could obtain economic value from disclosure of the TSS. Nor did Masimo dispute that attendees of an IEEE signal processing conference are persons who could obtain economic value from the disclosure of the TSS. Masimo instead relied solely on attorney argument.

17

Exhibit 12
-40-

**CONFIDENTIAL MATERIAL REDACTED**

    3.    <u>True Wearables presented unrebutted evidence that Dr. Lamego derived the formulas in the '158 Application, including the accused ███████████ using his general mathematical knowledge and skill.</u>

True Wearables also presented evidence that Dr. Lamego independently derived the Oxxiom® formulas, including the formulas disclosed in the '158 Application. Appx001376-001385; *see also* Appx002241-002250. As described above, when developing the Oxxiom® formulas, Dr. Lamego drew upon his extensive experience with complex mathematics earned over the course of his career. Appx001381-001383. Though various formulas, such as the accused ███████ TSS ███████ were well-known in the industry and contained in industry publications, Dr. Lamego relied on his own knowledge of mathematics and derived his formulas anew when developing the Oxxiom® device. *Id*. Masimo also left this evidence of independent derivation unrebutted. No evidence was presented suggesting Dr. Lamego took <u>any</u> documents or files containing the TSS with him when he left Cercacor.

## III.    The District Court's Preliminary Injunction Order

The district court denied True Wearables' request for a hearing and, without either oral argument or an evidentiary hearing, granted Masimo's motion for a preliminary injunction on the papers. Appx000019. The district court's decision reflects misunderstandings of the evidentiary record and the legal standards applicable to Masimo's motion.

Exhibit 12
-41-

CONFIDENTIAL MATERIAL REDACTED

A. **The district court ignored unrebutted record evidence and applied an erroneous legal standard in concluding Masimo had shown a likelihood of success on the merits.**

Concerning Masimo's request that the district court enter an injunction aimed at preventing publication of the '158 Application, the district court found <u>only</u> that the ▮adjective▮ TSS ▮equation▮ was present in the '158 Application. Appx000014-000016. The district court stated: "The disclosure of this ▮adjective▮ ▮equation▮ is sufficient for the Court to conclude that the '158 Patent Application discloses the TSS." Appx000016. The district court made no finding that the ▮adjective▮ ▮equation▮ or any other aspect of the TSS was present in the '158 Application. Appx000014-000016. Because on appeal True Wearables only challenges the injunction against publication of the '158 Application and its family, the discussion herein focuses on the record as it pertains to the ▮adjective▮ TSS ▮equation▮.

In enjoining publication of True Wearables' patent applications, the district court's order ignores the unrebutted testimony of Dr. Goldstein and states that "Defendants fail to argue that the TSS was 'generally known' by people who could obtain economic value from its use." *Compare* Appx000012-000013 *with* Appx003101 (¶ 2). The district court's order further states that ▮Name▮ & ▮Name▮ presented "information related to, <u>but not the same as</u>, the TSS." (*Compare* Appx000013 (emphasis added) *with* Appx003120-003121 (¶ 68). There is no

19

Exhibit 12
-42-

**CONFIDENTIAL MATERIAL REDACTED**

evidentiary support for this finding. Dr. Goldstein, a professor of advanced mathematics, is qualified to testify that the formula in ▉Name▉ & ▉Name▉ is mathematically "equivalent" to the ▉adjective▉ TSS ▉equation▉ Appx003101-003102 (¶¶ 4-13); Appx003120-003121 (¶ 68); Appx003129-003147. His testimony is unrebutted. Absent countervailing testimony from any other qualified person, the district court clearly erred in rejecting, without explanation, Dr. Goldstein's assessment in favor of its own.

The order further reflects the district court's misunderstanding of the relevance of True Wearables' evidence that the ▉adjective▉ TSS ▉equation▉ was published, in its entirety, in a widely read and well-known industry publication. Appx000012-000013. Instead of accepting that publication of an alleged trade secret can serve as evidence that it is generally known, the district court concluded that publication is relevant <u>only</u> to whether an alleged trade secret is readily ascertainable—as if those notions were mutually exclusive and not overlapping. *Id.* Accordingly, although the district court acknowledged that ▉Name▉ & ▉Name▉ was "published as [a] conference paper[]" and was "not obscure," the district court improperly dismissed those facts to as irrelevant to the determination of whether the ▉adjective▉ TSS ▉equation▉ was generally known. Appx000012 ("At best, the article[] could be a basis for determining that the TSS was readily ascertainable."). While the ability to compile information from publicly available sources may

20

Exhibit 12
-43-

indicate that the information is readily ascertainable but not generally known, it is equally true that generally known information often appears in printed publications. Indeed, the publication of an alleged trade secret in its entirety in a well-read, oft-cited industry publication is properly viewed as strong, if not conclusive, evidence that the information is generally known.

The district court's order also makes the unsupported statement that "Defendants do not provide any response to Plaintiffs' contention that [Dr.] Lamego brought the TSS with him after he left his job with Plaintiffs." Appx000016. But no evidence was ever introduced to support any such contention. The only evidence in the record concerning the formulas contained in the True Wearables' patent applications is that Dr. Lamego derived them anew over a 3-year period in connection with his work on new products for True Wearables. *E.g.*, Appx001015; Appx001376-001385.

### B. The district court erroneously determined that the remaining preliminary injunction factors weighed in favor of an injunction.

In determining that the balance of equities weighed in favor of an injunction, the district court also failed to acknowledge the irretrievable loss of patent term the injunction would cause. Appx000016-000017. The district court's assertion that "Defendants will not lose protection for the inventions in the patent applications that rely on the '158 Patent Application for priority" is plainly erroneous. Appx000017. The life of the True Wearables patents is limited to 20 years from the date of filing

Exhibit 12
-44-

**CONFIDENTIAL MATERIAL REDACTED**

of the first non-provisional application to which they claim priority. That priority date is fixed as November 21, 2018. Appx001015; Appx001018 (¶ 1). The claims of the '335 Application were allowed on January 21, 2021, Appx001063-001074, and the patent would have issued months ago absent the district court's injunction. Every day the injunction is in force is another day permanently eliminated from the life of True Wearables' patents that cannot be recovered. In balancing the equities, the district court's order neither acknowledged nor addressed the impact of this permanent and irreversible loss.[5] Appx000017.

Moreover, the district court's balancing analysis failed to account for the fact that the ███████ TSS ████████ was already published in a widely read and oft-cited IEEE article from 2008. *Id*. Despite this unrebutted evidence, the district court asserted Masimo would suffer "hardship" from "Defendants publishing Plaintiffs' trade secrets" and "would lose protection for one of [its] inventions." *Id*.

---

[5] As further evidence that the district court failed to appreciate the impact of its order on True Wearables' patent term, the district court did not even require Masimo to post the bond required by Federal Rule of Civil Procedure 65(c) in connection with the entry of the injunction. Appx000019.

Exhibit 12
-45-

**CONFIDENTIAL MATERIAL REDACTED**

IV. **The District Court's Denial of True Wearables' Motion for Reconsideration**

A. **Discovery confirmed publications like the one that disclosed the** ▉adjective▉ **TSS** ▉equation▉ **were regularly read and relied upon by those in Masimo's industry.**

After the district court granted Masimo's requested preliminary injunction, True Wearables took the depositions of three witnesses—Mohamed Diab, Jesse Chen, and Mathew Paul. These individuals, who are all current or former Masimo Corp. or Cercacor employees, testified that IEEE publications are often read and relied upon by electrical engineers in the noninvasive monitoring field.

Mohamed Diab, Masimo Corp.'s co-founder, has a degree in electrical engineering from Cal State Fullerton. Appx005222 (16:2-7); Appx005227 (21:2-6). Since co-founding Masimo Corp., he has worked in a variety of technical roles, including as Masimo Corp.'s Chief Technology Officer. Appx005222-005226 (16:24-20:3); Appx005231 (25:3-6). Mr. Diab testified that IEEE publications are typically read by electrical engineers. Appx005238-005239 (257:11-258:12 ("Q: So is IEEE a reference for someone like you, Mr. Diab? A: For an electrical engineer, typically they read it.")). Mr. Diab also confirmed that he referenced IEEE publications while developing algorithms at Masimo. Appx005239 (258:16-20).

Jesse Chen, Cercacor's principal algorithm engineer, has a degree in electrical engineering from UCLA, with a specialization in computer engineering. Appx005245 (8:11-18); Appx005247 (10:5-18). Mr. Chen has been employed by

23

Exhibit 12
-46-

**CONFIDENTIAL MATERIAL REDACTED**

Cercacor for almost 12 years. Appx005245 (8:11-14). Mr. Chen testified that he too

has read IEEE papers, and that he has been reading them more often since 2014.

Appx005250 (61:11-24). Mr. Chen further testified that colleagues who are working

on projects together send one another IEEE publications and articles to review.

Appx005251-005252 (62:20-63:9). He confirmed that IEEE publications can be

found and downloaded using Google. Appx005252 (63:14-21).

Mathew Paul has a master's degree in electrical engineering, with

specializations in signal processing and computer engineering. Appx005262 (8:9-

22). Mr. Paul currently works for Apple, Inc., which is Masimo's direct competitor

in the noninvasive monitoring industry.[6] Appx005269 (15:7-11); Appx005296 (¶ 6).

Mr. Paul previously worked as an algorithm engineer at Cercacor. Appx005264-

Appx005265 (10:22-11:8). Mr. Paul testified that IEEE publications are well known

to engineers. Appx005272 (55:17-21 ("Q: Are IEEE publications well known to

engineers? A: Yes.") (objections omitted)). Mr. Paul is very familiar with IEEE

publications, and he would read IEEE publications "pretty actively" during

algorithm development while employed at Cercacor. Appx005272-005273 (55:24-

---

[6] Although the **Name** & Name publication is in the public domain, Masimo has
asserted that even the mere identity of the publication is confidential. Appx005640-
005643. As a result, True Wearables' counsel could not share this publication with
non-party deponents like Mr. Paul. It is therefore impossible, under the Protective
Order applicable in the case, for True Wearables to elicit testimony from Masimo's
competitors about the specific **Name** & Name article.

Exhibit 12
-47-

**CONFIDENTIAL MATERIAL REDACTED**

56:20). Indeed, during Mr. Paul's employment at Cercacor, the algorithm team, which also included Mr. Chen and Dr. Lamego, would refer to IEEE publications to get ideas during algorithm development. Appx005273-005274 (56:22-57:14).

Based on this deposition testimony, True Wearables timely filed a motion for reconsideration under Federal Rules of Civil Procedure 59(e) and 60. Appx005206-005215. True Wearables asked the district court to reconsider its determination that Masimo was likely to meet its burden to prove that the ▮adjective▮ TSS ▮equation▮ ▮▮ was not generally known to those who could obtain economic value from its disclosure or use. *Id*. Mohamed Diab, Jesse Chen, and Mathew Paul all testified that IEEE publications are generally known to electrical engineers and are referenced during research and algorithm development in the noninvasive monitoring industry. Appx005210-005213. In addition to Dr. Goldstein's testimony, this evidence further confirms that disclosure of the ▮adjective▮ TSS ▮equation▮ in an IEEE publication was sufficient to make the formula generally known to persons who could obtain economic value from its disclosure or use. *Id*.

### B. Applying an erroneous interpretation of the law, the district court denied True Wearables' motion for reconsideration.

The district court denied True Wearables' motion for reconsideration on June 16, 2021, again on the papers alone. Appx000043-000044. The district court acknowledged that it was "familiar with how well known the articles at issue were" and that ▮Name▮ & ▮Name▮ had been cited "over 1,200 times." Appx000043. The

25

Exhibit 12
-48-

district court concluded, however, that such evidence had no bearing on whether the

information found therein is generally known under the CUTSA. Appx000042.

The district court's decision on reconsideration further confirmed the error in

its application of the legal standard for what is "generally known" under California

law. *Id*. Specifically, the district court applied a standard in which "generally

known" and "readily ascertainable" are mutually exclusive concepts, such that

evidence of publication of an alleged trade secret formula can be used only to show

that information is readily ascertainable and cannot be considered at all in

determining whether such formula is generally known. *Id*. While the presence of

information in trade journals, reference books, or published materials surely makes

that information readily ascertainable, that does not mean that the information is not

also generally known, either to the public or to those who can obtain economic value

from the same.

In the district court's view, however, evidence of publication is relevant only

to whether an alleged trade secret is "readily ascertainable." *Id*. In purported support

of this notion, district court cited a legislative comment to the CUTSA that

"[i]nformation is readily ascertainable if it is available in trade journals, reference

books, or published materials." Appx000042 (citing Cal. Civ. Code § 3426.1 (1984

Legislative Committee Comments)). Relying exclusively on that comment, and

without citing any supporting cases, the district court concluded that "[s]ince the

Exhibit 12
-49-

California legislature intended for information contained in publications like those produced by IEEE to be readily ascertainable, Defendants' argument fails." Appx000043.

While the district court acknowledged that "readily ascertainable" is an affirmative defense to a trade secret claim under California law, it held that the defense applies only when a defendant can prove that it in fact ascertained the information from the specific publication in question. Appx000042-000043. By characterizing publication-related evidence as relevant only to whether an alleged trade secret is "readily ascertainable," the district court wrongly concluded it did not need to go any further in its analysis than to state that the "readily ascertainable" defense did not apply because Dr. Lamego did not "gain[] knowledge of the TSS through the IEEE articles." *Id*.

True Wearables timely appealed.[7]

---

[7] The district court wrongly stated that Fed. R. Civ. P. 59(e) and 60 are inapplicable to preliminary injunctions. Appx000041. Under Ninth Circuit law, timely filed motions for reconsideration of preliminary injunction decisions are construed as Rule 59(e) motions and toll the time to appeal. *Vantage Mobility Int'l Ltd. Liab. Co. v. Kersey Mobility Ltd. Liab. Co.*, 836 F. App'x 496, 498 n.2 (9th Cir. 2020); *see also Regents of the Univ. of Mich. v. Genesearch, L.L.C.*, 81 F. App'x 335, 337 (Fed. Cir. 2003) (explaining that the law of the regional circuit applies to such procedural questions not unique to patent law).

Exhibit 12
-50-

**CONFIDENTIAL MATERIAL REDACTED**

## SUMMARY OF THE ARGUMENT

In this appeal, True Wearables challenges the district court's entry of an injunction requiring it to "take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550." Appx000018. Though the district court's injunction also included other restrictions on True Wearables' ability to publish alleged Masimo trade secrets, those are not challenged in this appeal because True Wearables has not made, and has no intent to make, any such publications, thus rendering that portion of the injunction of no consequence. Because the district court found only one alleged trade secret present in the specification of the '158 Application—the ████████ TSS ████████████ this appeal focuses on the error in the district court's findings and conclusions as to that alleged trade secret and leaves the debate over any others for the eventual trial in the underlying action. As explained herein, the district court abused its discretion in enjoining publication of True Wearables' '158 Application for at least three reasons.

First, the district court erred in determining Masimo was likely to succeed in proving the ████████ TSS ████████████ is its trade secret under the CUTSA. The burden of proving the ████████ TSS ████████████ is a trade secret, including the burden of proving the formula is not "generally known," rests with

Exhibit 12
-51-

**CONFIDENTIAL MATERIAL REDACTED**

Masimo. To that end, Masimo's only evidence was the declaration of Mr. Chen, who stated only that he was "not aware of any publications" that included or described the alleged trade secret. Appx00411 (¶ 29). In response, True Wearables presented the expert testimony of Dr. Goldstein that the alleged trade secret not only was generally known, but also had been the subject of numerous publications since the 1960s. Appx003103 (¶ 16); Appx003117-003131 (¶¶ 57-73). One such publication, the ██Name██ & ██Name██ IEEE article, which Dr. Goldstein confirmed contained the complete, identical formula to the alleged trade secret formula, has been cited by others more than 1,200 times since 2008. *Id*. The district court erred as a matter of law in deeming this unrebutted evidence irrelevant to the determination of whether the ██adjective██ TSS ██equation██ is a trade secret.

Second, the district court erred in determining Masimo was likely to succeed on the merits of proving Dr. Lamego misappropriated the ██adjective██ TSS ██equation██ ████ The district court based its holding on the clearly erroneous statement that True Wearables did not "provide any response to Plaintiffs' contention that [Dr.] Lamego brought the TSS with him." Appx000016. While Masimo's motion alleged the ██adjective██ TSS ██equation██ was present in the True Wearables '158 Application, it did not present any evidence that Dr. Lamego took the ██adjective██ TSS ██equation██ with him when he left Cercacor. The ██adjective██ TSS ██equation██ ████ is a mathematical equation. The only evidence of record addressing Dr.

29

Exhibit 12
-52-

**CONFIDENTIAL MATERIAL REDACTED**

Lamego's development of the equations contained in the '158 Application is that he independently derived them over a three-year period after leaving Cercacor relying on his own mathematical knowledge and training. The burden of showing misappropriation rested with Masimo. The district court erred in holding Masimo was likely to meet it.

Third, the district court erred in determining the balance of equities weighed in Masimo's favor. As an initial matter, the district court's opinion wholly ignores the impact of its injunction on True Wearables. By being forced to delay issuance of its patents, the claims of which had been allowed by the PTO, to prevent publication of the '158 Application, True Wearables suffers the irretrievable loss of an ever-increasing portion of its patent term. Moreover, in considering Masimo's hardship claims, the district court failed to address how Masimo can be deemed to suffer hardship by the publication of a patent application alleged to contain the adjective TSS equation when that formula is already available in a widely distributed and oft-cited IEEE publication. The district court abused its discretion in concluding the balance of equities weighed in favor of enjoining publication of the '158 Application.

The district court also erred in denying True Wearables' motion for reconsideration. In that motion, True Wearables demonstrated that the district court erred in determining that Masimo was likely to succeed in proving the adjective

Exhibit 12
-53-

**CONFIDENTIAL MATERIAL REDACTED**

TSS ██████ is a trade secret. Combined with the evidence presented in response to Masimo's preliminary injunction motion, the additional evidence that IEEE publications of the sort containing the ███████ TSS ██████ were frequently read, reviewed, and relied upon by engineers in the industry confirmed that the district court abused its discretion in enjoining publication of the '158 Application.

For all the reasons set forth herein, the district court's order granting Masimo's motion for a preliminary injunction against publication of the '158 Application, and the district court's order denying True Wearables' motion for reconsideration of the same, should be reversed.

## ARGUMENT

### I.  Standard of Review

Preliminary injunctions are reviewed under the abuse of discretion standard. *Takeda Pharm. U.S.A., Inc. v. Mylan Pharm. Inc.*, 967 F.3d 1339, 1345 (Fed. Cir. 2020); *Flexible Lifeline Sys., Inc., v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011). Under that standard, the district court's legal rulings are reviewed de novo, and its findings of fact are reviewed for clear error. *Takeda Pharm. U.S.A.*, 967 F.3d at 1345; *Flexible Lifeline Sys.*, 654 F.3d at 994. Decisions on motions for reconsideration under either Rule 59(e) or Rule 60 are also reviewed for an abuse of discretion. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255,

Exhibit 12
-54-

1262 (9th Cir. 1993); *see also Henson v. Corizon Health, Inc.*, 804 F. App'x 842, 842 (9th Cir. 2020).

The abuse of discretion standard employs a two-part test. First, the appellate court must "determine *de novo* whether the trial court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (*en banc*). The court abuses its discretion if it fails to do so. *Id*. Second, the appellate court must "determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id*. (internal quotations omitted).

## II.     The District Court Erred in Granting a Preliminary Injunction Requiring True Wearables to Prevent the '158 Application, and Its Family, from Publishing.

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). To merit the entry of a preliminary injunction, the moving party must make a "clear showing" on each of the following elements: (1) likelihood of success on the merits, (2) likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008).

32

Exhibit 12
-55-

The portion of the preliminary injunction challenged on this appeal requires True Wearables to "take all necessary steps" to prevent publication of the '158 Application and any patent application that claims priority to the '158 Application. Appx000018. As such, it is mandatory, not prohibitory. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). Mandatory injunctions are "particularly disfavored," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015), and "are not granted unless extreme or very serious damage will result," *Marlyn Nutraceuticals*, 571 F.3d at 879.

### A. The district court erred in determining Masimo met its burden of proving a likelihood of success on the merits.

Likelihood of success on the merits is the "most important" factor in considering whether to grant a preliminary injunction. *Garcia*, 786 F.3d at 740. In cases involving mandatory injunctions, such as the one challenged in the present appeal, Masimo's "doubly demanding" burden is to "establish that the law and facts <u>clearly favor</u> [its] position, not simply that [it] is likely to succeed." *Id.* (emphasis in original). To succeed on its CUTSA claim, Masimo has the burden to prove (1) the existence and ownership of a trade secret, (2) misappropriation of the trade secret, and (3) damage resulting from the misappropriation. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003); *see also* Cal. Civ. Code § 3426.1. In this case, the district court abused its discretion in determining Masimo

Exhibit 12
-56-

**CONFIDENTIAL MATERIAL REDACTED**

was likely to succeed in proving (1) that the **adjective** TSS **equation** is a trade secret and (2) that Dr. Lamego misappropriated it.

> 1. <u>The district court erred as a matter of law in determining Masimo was likely to succeed in proving the **adjective** TSS **equation** is a trade secret; under the proper legal standard, Masimo cannot meet its burden.</u>

To prove the **adjective** TSS **equation** is protectable as a trade secret under the CUTSA, Masimo had the burden to prove that it "[d]erives independent economic value . . . from not being <u>generally known</u> to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1) (emphasis added); *Amgen Inc. v. Cal. Corr. Health Care Servs.*, 47 Cal. App. 5th 716, 736 (Cal. Ct. App. 2020) (same). "The language 'not being generally known to the public or to other persons' does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret." Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments); *see also Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1172 (Cal. Ct. App. 2006) (explaining that the CUTSA test is whether the information is generally known "by business competitors or others to whom the information would have <u>some</u> economic value") (emphasis added).

In interpreting the CUTSA, this Court has held that published information is considered "generally known" and is no longer entitled to trade secret protection.

Exhibit 12
-57-

*See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355-56 (Fed. Cir. 2009) (affirming district court's grant of summary judgment of no trade secret misappropriation under the CUTSA where the alleged trade secret was disclosed in a Japanese patent application); *Convolve, Inc. v. Compaq Comput. Corp.*, No. 00 Civ. 5141, 2011 U.S. Dist. LEXIS 152762, at *34 (S.D.N.Y. Aug. 16, 2011) (holding information disclosed in two academic theses was "generally known" under the CUTSA and not entitled to trade secret protection), *aff'd in relevant part*, 527 F. App'x 910, 922 (Fed. Cir. 2013). "Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished." *Ultimax Cement Mfg.*, 587 F.3d at 1355.

Other decisions are in accord, holding that publication of an alleged trade secret renders it "generally known" and, therefore, ineligible for trade secret protection under California law. *See, e.g.*, *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) ("[I]t appears to us to be well-settled that publication of information in a patent application eliminates any trade secrecy."); *Masimo Corp. v. Sotera Wireless, Inc.*, 794 F. App'x 625, 627-28 (9th Cir. 2020) (affirming lower court's finding the alleged trade secret was generally known under the CUTSA because it was published in a white paper and an article in a trade journal); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (granting summary judgment of no misappropriation on CUTSA claim where alleged trade secret was published in

Exhibit 12
-58-

**CONFIDENTIAL MATERIAL REDACTED**

patents and patent applications: "It is undisputed that all of Forcier's alleged trade secrets had been placed in the public domain either in patents or in patent applications . . . .").

> a.    ***The district court applied an incorrect legal standard to its determination of whether the*** ▮adjective▮ ***TSS*** ▮equation▮ ▮ ***was generally known.***

In issuing the preliminary injunction against publication of the '158 Application, the district court rejected the holdings in the aforementioned cases and applied its own, incorrect legal standard for determining whether information is "generally known." Specifically, the district court's decision improperly deemed evidence of publication of the alleged trade secret irrelevant as a matter of law to whether it is "generally known" under the CUTSA. Appx000012-000013. In the district court's view, evidence of publication of an alleged trade secret is relevant only to whether it is "readily ascertainable," and has no bearing on whether it also is generally known:

> While both of these articles [including ▮Name▮ & ▮Name▮] are published as conference papers, meaning that they are not obscure, this does not mean that the particular techniques described in them were "generally known" to people who could obtain economic value from developing noninvasive blood content detectors. At best, the articles could be a basis for determining that the TSS was "readily ascertainable." See West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials.").

36

Exhibit 12
-59-

**CONFIDENTIAL MATERIAL REDACTED**

Appx000012 (emphasis added). While the district court further acknowledged that ready ascertainability remains an affirmative defense to a CUTSA claim, it held that the defense applies only where the defendant proves it acquired the alleged trade secret from a public source.[8] Appx000011.

The district court's conclusion that evidence of publication of the ~~adjective~~ TSS ~~equation~~ is "at best" a basis for determining that the formula was readily ascertainable misconstrues the CUTSA. Specifically, the district court appears to misunderstand the legislative comment to the CUTSA that "[i]nformation is readily ascertainable if it is available in trade journals, reference books, or published materials." *See* Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments). While information contained in such sources certainly is readily ascertainable, that

---

[8] While not central to the present appeal, the district court is also wrong on this point. The Legislative Committee Comments to the CUTSA explain that "the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation." Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments). Under the district court's interpretation, ready ascertainability would not be a defense at all. Instead, the district court's interpretation would do away with an element of the plaintiff's prima facie case of misappropriation, namely the need to prove the defendant's "acquisition [of the trade secret] . . . by improper means." Cal. Civ. Code § 3426.1(b). This is a traverse, not an affirmative defense. *See* 5 Witkin, Cal. Proc. Plead § 1081 (5th ed. 2020); *see also, e.g.*, *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1546 (Cal. Ct. App. 1998) (same); *and* Judicial Council of Cal. Civ. Jury Instructions (CACI) No. 4420 (2009) ("Such a requirement would not constitute an affirmative defense but rather would be a denial of the improper-means element of the plaintiff's claim. Because the advisory committee believes that this is an affirmative defense, no such requirement has been included in this instruction.").

37

Exhibit 12
-60-

does not mean that information that has been published cannot also be generally known. The California legislature eliminated the "readily ascertainable" language from the CUTSA to remove language it deemed ambiguous, not to preclude the use of publications as evidence that a trade secret is generally known. *See* Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ("This change was made because the original language was viewed as ambiguous in the definition of trade secret."). The Legislative Committee Comments never suggested that the mere fact that something is published means that it is not also generally known. New information is often published for the express purpose of disseminating it and making it generally known. And publications often contain within them old information that already is generally known. Indeed, display in <u>a single publication</u> of an alleged trade secret <u>in its entirety</u> is properly viewed as conclusive evidence that it is "generally known." *See Ultimax Cement Mfg.*, 587 F.3d at 1355-56 ("Information disclosed in a patent, even a foreign one, is 'generally known to the public,' especially the relevant public in the cement industry."); *see also Attia*, 983 F.3d at 426; *Masimo*, 794 F. App'x at 627-28; *Convolve*, 2011 U.S. Dist. LEXIS 152762, at *34, *aff'd in relevant part*, 527 F. App'x at 922.

The notion of ready ascertainability, on the other hand, traditionally relates to situations where the alleged trade secret is a compilation of information that a defendant alleges can be re-created by combining multiple publications or by culling

38

Exhibit 12
-61-

information from voluminous public directories. *See, e.g.*, *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521-22 (Cal. Ct. App. 1997); *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (Cal. Ct. App. 1991). Challenges to trade secret protection for customer lists, for example, are often founded on assertions that the information contained in such lists is "readily ascertainable" from public sources. *Morlife*, 56 Cal. App. 4th at 1521-22 ("With respect to the general availability of customer information, courts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories."); *see also Pollara v. Radiant Logistics Inc.*, No. CV 12-344 GAF (JEMx), 2014 U.S. Dist. LEXIS 200944, at *16-17 (C.D. Cal. June 6, 2014). The notion of ready ascertainability need not come into play where the entirety of the alleged trade secret has been published in a single, non-obscure IEEE article, particularly when the audience for that article includes persons who could obtain economic value from its disclosure or use. Such information is properly considered as generally known.

The district court's treatment of evidence concerning publication of the alleged trade secret, and expert testimony concerning the same, as irrelevant to whether the alleged trade secret is "generally known" begs the question of how a defendant in a trade secret case could ever prove the requisite knowledge. Information alleged to be a trade secret is seldom the type of information known to

Exhibit 12
-62-

**CONFIDENTIAL MATERIAL REDACTED**

laypersons or judges. No survey of skilled engineers working in the relevant technical fields can be taken because the Protective Order prevents True Wearables from asking non-parties about their knowledge of anything Masimo alleges to be a trade secret, as the question itself would necessarily disclose the alleged trade secret. Indeed, counsel for True Wearables could not even share the identity of the alleged trade secret or the ███Name███ & ██Name██ publication with Dr. Lamego in defending against Masimo's preliminary injunction motion. Appx005640-005643. Without the ability to refer to public sources of information, and expert testimony concerning the same, the bar set by the district court to establish that an alleged trade secret is generally known is one that is seemingly impossible to meet.

In holding that evidence of publication of an alleged trade secret is "at best" a basis for determining it was readily ascertainable, the district court applied an incorrect legal standard to its determination that Masimo was likely to succeed in proving the ███adjective███ TSS ███equation███ is a trade secret.

> **b.** **Applying the correct legal standard, the record cannot support the district court's determination.**

When the proper legal standard is applied, Masimo cannot meet its burden to prove that the ███adjective███ TSS ███equation███ is not "generally known." A trade secret plaintiff bears the burden to show a protectable trade secret. While the burden of production shifts to the defendant once the plaintiff has made a prima facie case, "[t]he burden of proof (which is synonymous with the burden of persuasion) . . .

40

Exhibit 12
-63-

**CONFIDENTIAL MATERIAL REDACTED**

remains with [the plaintiff] at all times." *Bladeroom Grp. Ltd. v. Emerson Elec. Co*, No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 64695, at *6 (N.D. Cal. Apr. 16, 2018) (citing *Sargent Fletcher*, 110 Cal. App. 4th at 1667). The district court improperly shifted the burden of proof by requiring True Wearables to prove that the ███████ TSS ████████ was generally known. *See Amgen*, 47 Cal. App. 5th at 736. When the correct burden of proof is applied, Masimo cannot show that the ███████ TSS ████████ is not generally known.

Masimo's only evidence that the ███████ TSS ████████ is not generally known is the testimony of a single employee, Mr. Chen, who did not even state that it was not generally known. Mr. Chen stated only that he was "not aware of any publications that include the derivations found in the ████████ or describe an implementation of the ████████" Appx00411 (¶ 29); *see also id*. (¶¶ 27-28). Even assuming such a bare, conclusory assertion about a single employee's personal knowledge could satisfy Masimo's burden of making a prima facie case that the ███████ TSS ████████ is <u>not</u> generally known, Mr. Chen's statements were made before the presentation of True Wearables' evidence.

The evidence presented by True Wearables demonstrated that the ███████ TSS ████████ was generally known to persons who can obtain economic value from its disclosure. Appx003101 (¶¶ 2-3); Appx003103 (¶ 16); Appx003117-003121 (¶¶ 57-68); Appx003149-003152. As an initial matter, it was published in

41

Exhibit 12
-64-

**CONFIDENTIAL MATERIAL REDACTED**

its entirety in an IEEE publication, [Name] & [Name] that has been cited over 1,200 times since its initial publication in 2008. Appx003118 (¶ 59); Appx003120-003121 (¶ 68); Appx003149-003152. While the general public may not frequent the pages of IEEE journals, the same cannot be said of the 400,000 engineers who are members of IEEE, many of whom are likely employed by Masimo or by Masimo's competitors. As the district court acknowledged, this publication was "not obscure." Appx000012.

Moreover, True Wearables' evidence went beyond the [Name] & [Name] publication. As Dr. Goldstein explained, the concept of using [equations] to solve optimization problems has been widely known since the 1960s and has appeared in numerous math textbooks since then. Appx003103 (¶ 16 ("[T]he [equation] is commonly known as [equation] or simply [acronym] for short. Variants of the [acronym] method have been known since the early 1960s, and [acronym] appears widely in textbooks.")); Appx003107-003108 (¶ 27 ("In particular, the method is featured prominently in McCullagh and Nelder's 1983 book on statistical regression models (McCullagh, 1983), which has been cited over 39,000 times according to Google Scholar.")). Based on these publications, and his own knowledge and expertise, Dr. Goldstein testified that the [adjective] TSS [equation] "is generally known to persons who can obtain economic value from its disclosure." Appx003101 (¶ 2); *see also* Appx003118 (¶ 59); Appx003120-

42

Exhibit 12
-65-

**CONFIDENTIAL MATERIAL REDACTED**

003121 (¶ 68). In fact, Dr. Goldstein attested that he himself is such a person and that he knew the information. Appx003101 (¶ 2); Appx003130; Appx003138.

Masimo did not deny that ▮Name▮ & ▮Name▮ publicly disclosed the ▮adjective▮ TSS ▮equation▮ which is the <u>only</u> portion of the TSS that the district court determined was present in True Wearables' '158 Application. Appx000013-000015. Masimo also did not deny that Dr. Goldstein is a person who could obtain economic value from disclosure of the ▮adjective▮ TSS ▮equation▮ Nor did Masimo dispute that attendees of an IEEE signal processing conference are persons who could obtain economic value from the disclosure of the ▮adjective▮ TSS ▮equation▮ Notably, Masimo's expert, Dr. McNames, never offered any opinion regarding whether the TSS ▮equations▮ are generally known. Dr. McNames is himself an active member of IEEE, who has presented at IEEE conferences, and his silence on this issue speaks volumes. Appx000436-000437 (¶¶ 10-15).

Indeed, neither Dr. McNames nor Mr. Chen submitted a declaration responding to Dr. Goldstein's analysis. Masimo offered only attorney argument asserting that True Wearables' evidence was insufficient to demonstrate that the ▮adjective▮ TSS ▮equation▮ is "generally known." In fact, it is this attempted rebuttal that is insufficient. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert

43

Exhibit 12
-66-

**CONFIDENTIAL MATERIAL REDACTED**

testimony."). It was Masimo's burden to establish that the ███████ TSS ████

████ is <u>not</u> generally known, not True Wearables' burden to prove that it is.

The evidence of record, considered under the correct legal standard, cannot support a finding that Masimo is likely to succeed in proving the ███████ TSS ████████ is a trade secret under the CUTSA. The district court's contrary conclusion reflects an abuse of discretion and, on that basis alone, the district court's grant of an injunction requiring True Wearables to prevent publication of the '158 Application and its family should be reversed.

> 2. <u>The district court erred in determining Masimo was likely to succeed in proving misappropriation of the ███████ TSS ████████</u>

A defendant misappropriates a trade secret if it acquires, discloses, or uses a trade secret by improper means. Cal. Civ. Code § 3426.1(a). California law and policy strongly favors employee mobility. Therefore, an employee's knowledge "developed as a result of long employment in the particular trade may be carried over and put to use by the new employer." *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177-78 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990); *see also, e.g.*, *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332-33 (Cal. Ct. App. 2020) ("That evidence does suggest the engineers drew on knowledge and skills they gained from Hooked to develop a

Exhibit 12
-67-

**CONFIDENTIAL MATERIAL REDACTED**

product for their new employer—but California's policy favoring free mobility for employees specifically allows that.").

Similarly, employees may use their knowledge and skills to solve problems they have previously solved for a former employer relying on the same underlying knowledge and skills; this is independent derivation, and it is expressly permitted under the CUTSA. *Sargent Fletcher*, 110 Cal. App. 4th at 1670 ("Evidence of independent derivation . . . directly refutes the element of use through improper means."); *see also* Cal. Civ. Code § 3426.1. "Proof that defendant's use resulted from independent derivation . . . is evidence that there was no improper use on its part." *Sargent Fletcher*, 110 Cal. App. 4th at 1669; *see also Masimo Corp. v. Sotera Wireless, Inc.*, 591 B.R. 453, 461 (S.D. Cal. 2018), *aff'd*, 794 F. App'x 625, 627-28 (9th Cir. 2020) (same); *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2015 U.S. Dist. LEXIS 129568, at *17-19 (N.D. Cal. Sep. 21, 2015) (same); *see also Raytheon Co. v. Indigo Sys. Corp.*, 895 F.3d 1333, 1342 (Fed. Cir. 2018).

The burden of showing misappropriation rests with Masimo. *Sargent Fletcher*, 110 Cal. App. 4th at 1667. Masimo presented no evidence that Dr. Lamego took the TSS with him when he left Cercacor. Rather, Masimo's allegation of misappropriation rests solely on the assertions that (1) Dr. Lamego derived the ▮adjective▮ TSS ▮equation▮ relying on his own knowledge and experience, while employed by Cercacor, and (2) a formula equivalent to the ▮adjective▮ TSS

Exhibit 12
-68-

**CONFIDENTIAL MATERIAL REDACTED**

██████████ allegedly appears in the specification of the '158 Application. But
Dr. Lamego's reliance on his own knowledge and experience to derive the accused
formula while at True Wearables does not constitute misappropriation. *See
Raytheon*, 895 F.3d at 1342; *Sargent Fletcher*, 110 Cal. App. 4th at 1670. Even if
Dr. Lamego had drawn on knowledge and skills gained while working for Cercacor,
California's policy favoring free mobility for employees specifically allows that.
*Hooked Media Grp.*, 55 Cal. App. 5th at 332-33.

Here, the only evidence of record concerning the development of the accused
formula displayed in the '158 Application is that it was the product of independent
derivation by Dr. Lamego over several years of intense research and development.
Appx001382-001384. Dr. Lamego's experience independently solving complex
problems using sophisticated hardware and software solutions dates back at least to
his time as a Stanford Ph.D. student studying electrical and electronics engineering.
Appx001377; *see also* Appx001378-001382. According to Dr. Bernard Widrow, Dr.
Lamego's Ph.D. thesis advisor at Stanford, Dr. Lamego was "unusual in his mastery
of electronics, electronic devices and software." Appx001377; Appx003988-003989
(23:14-25:14). Dr. Lamego utilized this knowledge of electronics and engineering
and designed the hardware and firmware of the Oxxiom® device and an Oxxiom®
iOS app used to process the data collected by the Oxxiom® hardware. Appx001378-
001382. At the same time, Dr. Lamego began developing formulas for determining

Exhibit 12
-69-

standard physiological parameters. Appx001382-001384. For this, Dr. Lamego drew

upon his extensive experience with complex mathematics earned over the course of

his career, including experience as a professor of mathematics and engineering. *Id*.

Despite this evidence of Dr. Lamego's independent derivation of the accused

formula, and the absence of any evidence that Dr. Lamego took the TSS with him

when he left Cercacor, the district court nevertheless stated: "Defendants do not

provide any response to Plaintiffs' contention that [Dr.] Lamego brought the TSS

with him after he left his job with Plaintiffs." Appx000016. The district court then

relied on that statement to support its conclusion that Masimo was likely to succeed

in proving misappropriation. *Id*. But Masimo never presented such evidence

(because there is none), so there was nothing to merit a response from True

Wearables. The district court abused its discretion in drawing that conclusion as it is

contradicted by the record.

## B. The district court erred in determining Masimo met its burden of demonstrating the balance of equities favored entry of the preliminary injunction.

### 1. The district court plainly erred in its determination that the injunction against publication of the '158 Application imposed no hardship on True Wearables.

A patent granted by the United States is a property right. *Fla. Prepaid*

*Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999); *see*

*also Cascades Projection LLC v. Epson Am., Inc.*, 864 F.3d 1309, 1316-17 (Fed.

Exhibit 12
-70-

Cir. 2017) (Reyna, J., dissenting). In finding that the balance of equities favored
Masimo, the district court concluded that "Defendants will not lose protection for
the inventions in the patent applications that rely on the '158 Patent Application for
priority if the preliminary injunction is granted." Appx000017. That statement is
plainly incorrect. While True Wearables may not lose patent <u>scope</u> due to the
injunction, it has lost and will continue to lose patent <u>term</u>, which directly impairs
its property rights. True Wearables' loss of a portion of its patent term due to the
preliminary injunction is a heavy burden for True Wearables to bear. Moreover, in
view of the difficulty in quantifying the value of that lost period of exclusivity and
the fact that the district court did not require Masimo to post a bond, it is unlikely
this hardship is one for which True Wearables can ever be adequately compensated.

The length of a patent's term is 20 years measured from the patent's earliest
effective non-provisional filing date. *Chudik v. Hirshfeld*, 987 F.3d 1033, 1035 (Fed.
Cir. 2021) ("In 1994, Congress changed the length of a patent term from 17 years
(measured from the patent's issue date) to 20 years (measured from the patent's
earliest effective non-provisional-filing date)."). By statute, the PTO may only grant
patent term extensions for three reasons, all of which are tied to the PTO's own delay
during prosecution. *See* 35 U.S.C. § 154(b)(1)(A)-(C). None of these apply here.

The portion of the district court's mandatory injunction at issue on appeal
requires True Wearables to: "take all necessary steps before the PTO to prevent

48

Exhibit 12
-71-

**CONFIDENTIAL MATERIAL REDACTED**

publication of the '158 Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550 . . . ." Appx000018. If it does not wish to completely abandon its patent applications that claim priority to the '158 Application, True Wearables will be required to file serial requests for continuing examination, or repeatedly file continuations and abandon any allowed applications, until the injunction is lifted. The applications have received notices of allowance and, but for the district court's preliminary injunction, would already have issued. *E.g.*, Appx001063-001074. Delaying issuance until after trial deprives True Wearables of an irretrievable portion of its property right in its patents. The district court's finding that the preliminary injunction imposes no hardship on True Wearables is plainly erroneous.

    2.    <u>The district court erred in its determination that Masimo would be harmed by the publication of the '158 Application.</u>

The district court also erred in determining the balance of hardships favors Masimo because "[p]ublication of the '158 Patent Application risks Plaintiffs' trade secret becoming public." Appx000017. The district court acknowledged the ▮adjective▮ TSS ▮equation▮ was already published in a non-obscure IEEE publication. Appx000012. The district court does not explain how allowing the same equation to publish in True Wearables' '158 Application somehow imposes a hardship on Masimo.

Exhibit 12
-72-

**CONFIDENTIAL MATERIAL REDACTED**

This is not a situation where an injunction is needed to preserve the status quo.
Here, the status quo is that the ███████ TSS ███████ was published in
2008 in ███████ & ███████ which itself has since been cited by others more than 1,200
times. Appx003118 (¶ 59); Appx003120-003121 (¶ 68). Allowing True Wearables'
'158 Application, which only discloses the ███████ TSS ███████ to
publish would not cause the ███████ TSS ███████ to become any more a
part of the public domain than it already is. *See Amgen*, 47 Cal. App. 5th at 723, 742-
43 (finding district court abused its discretion in determining the balance of
hardships weighed in favor of the plaintiff where the alleged trade secret was
publicly disclosed: "Given Amgen's failure to show its price increase information
was still a trade secret after disclosure to the registered purchasers, we further
conclude that the trial court abused its discretion in finding that the balance of harms
favored Amgen."). On these facts, the district court's finding that the balance of
equities weighed in favor of Masimo was clearly erroneous.

## III.   The District Court Abused Its Discretion in Denying True Wearables' Motion for Reconsideration.

The district court also erred in denying True Wearables' motion for
reconsideration. "Reconsideration is appropriate if the district court (1) is presented
with newly discovered evidence, (2) committed clear error or the initial decision was
manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch.
Dist. No. 1J*, 5 F.3d at 1263. After the district court granted Masimo its requested

Exhibit 12
-73-

**CONFIDENTIAL MATERIAL REDACTED**

preliminary injunction, newly discovered evidence confirmed that IEEE publications, like the one in which the ██████ TSS ██████ appears, are regularly reviewed and referenced by electrical engineers working in the field of noninvasive monitoring.

In its motion for reconsideration, True Wearables submitted the newly obtained deposition testimony of three current or former Masimo Corp. or Cercacor employees, Mohamed Diab, Jesse Chen, and Mathew Paul, all of whom are or were engineers in the noninvasive monitoring industry. Appx005206-005215. The deposition testimony of Messrs. Diab, Chen, and Paul confirmed that IEEE publications are regularly reviewed by electrical engineers working in that industry. Appx005238-005239 (257:11-258:12); Appx005245 (8:11-18); Appx005247 (10:5-18); Appx005250 (61:11-24); Appx005269 (15:7-11); Appx005272 (55:17-21). Their testimony also confirmed that they actively referred to IEEE publications while developing algorithms for Cercacor. Appx005239 (258:9-20); Appx005251-005252 (62:20-63:9); Appx005272-005274 (55:24-57:14). This evidence further confirmed the error in the original preliminary injunction order, which was premised on the district court's conclusion that the information contained within IEEE publications, such as ██████ & ██ is not generally known to persons who can obtain economic value from the use or disclosure of that information.

Exhibit 12
-74-

Despite this testimony, the district court determined that the motion for reconsideration "d[id] not raise any new material facts that justify reconsideration" and denied the motion. Appx000043. In reaching this conclusion, the district court again applied its problematic and legally erroneous interpretation of the CUTSA— one that creates a strict dichotomy between the notions of "generally known" and "readily ascertainable" and prevents information published in journals from ever being "generally known." Appx000042-000043. Specifically, the district court stated: "Defendants do not account for the CUTSA's legislative comment that '[i]nformation is readily ascertainable if it is available in trade journals, reference books, or published materials'" and that "[s]ince the California legislature intended for information contained in publications like those produced by IEEE to be readily ascertainable, Defendants' argument fails." Appx000042 (citing Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments)); Appx000043. The district court's attempt to eliminate any overlap between information that appears in printed publications and information that is generally known misconstrues the CUTSA.

As explained *supra* at Section II.A.1, an alleged trade secret that is published in its entirety in a single, non-obscure source, such as a patent or an industry publication, is considered "generally known" under the CUTSA. *Ultimax Cement Mfg.*, 587 F.3d at 1355; *see also Masimo*, 794 F. App'x at 627-28; *Convolve*, 2011 U.S. Dist. LEXIS 152762, at *34, *aff'd in relevant part*, 527 F. App'x at 922. Neither

Exhibit 12
-75-

**CONFIDENTIAL MATERIAL REDACTED**

Masimo, nor the district court, has ever identified a single case decided under the CUTSA where a formula that has been printed in its entirety in a non-obscure industry publication was found to be a trade secret; that is because there is none.

Had the district court applied the correct legal standard to the newly discovered testimony from Messrs. Diab, Chen, and Paul, it would have had no basis to conclude that Masimo was likely to succeed in proving the ██adjective██ TSS ██equation██ protectable as a trade secret under the CUTSA. The district court abused its discretion in denying True Wearables' motion for reconsideration.

## CONCLUSION

For the reasons set forth herein, the district court abused its discretion in granting Masimo's motion for a preliminary injunction requiring True Wearables to prevent publication of the '158 Application and its family. Applying the correct legal standards to the determination of whether the ██adjective██ TSS ██equation██ is a trade secret and to whether the ██adjective██ TSS ██equation██ was misappropriated by True Wearables, the record cannot support the district court's determination that Masimo is likely to succeed on the merits of its trade secret misappropriation claim. The district court's determination on the balance of equities likewise reflects an abuse of discretion, not only because it entirely ignores the hardship to True Wearables, but also because it fails to acknowledge the status quo that the ██adjective██ TSS ██equation██ already is in the public domain. Accordingly, the

Exhibit 12
-76-

**CONFIDENTIAL MATERIAL REDACTED**

district court's order granting Masimo's preliminary injunction requiring True Wearables to prevent publication of the '158 Application and its family should be reversed, and the injunction vacated. Moreover, the district court abused its discretion in denying True Wearables' motion for reconsideration. Applying the correct legal standard for determining whether the ▮▮▮▮▮▮▮▮ TSS ▮▮▮▮▮▮▮▮ is "generally known" to the record as supplemented by the testimony of Messrs. Diab, Chen, and Paul, the district court's determination that Masimo was likely to succeed on the merits cannot be supported.

Exhibit 12
-77-

August 26, 2021                    Respectfully submitted,

                                  By: /s/ Rachel Zimmerman Scobie
                                      Rachel Zimmerman Scobie
                                      Paige S. Stradley
                                      Michael A. Erbele
                                      MERCHANT & GOULD P.C.
                                      150 South Fifth Street
                                      Suite 2200
                                      Minneapolis, MN 55402
                                      (612) 332-5300

                                      Peter Gergely
                                      MERCHANT & GOULD P.C.
                                      767 Third Avenue, Suite 23C
                                      New York, NY 10017
                                      (212) 223-6520

                                      Ryan James Fletcher
                                      MERCHANT & GOULD P.C.
                                      1801 California Street
                                      Suite 3300
                                      Denver, CO 80202
                                      (303) 357-1670

                                      *Attorneys for Defendants-Appellants
                                      True Wearables, Inc. and Marcelo
                                      Lamego*

Exhibit 12
-78-

# **ADDENDUM**

Exhibit 12
-79-

**ADDENDUM**

| APPX Begin | APPX End | Docket No. | Date Filed | Document |
|---|---|---|---|---|
| 1 | 19 | 257 (Confidential) | 4/28/21 | Order Regarding Revived Motion for Preliminary Injunction |
| 20 | 38 | 262 | 4/28/21 | Order Regarding Revived Motion for Preliminary Injunction (Publicly filed version – redactions in original) |
| 39 | 44 | 302 (Confidential) | 6/16/21 | Order Regarding Motion for Reconsideration |
| 45 | 50 | 309 | 6/16/21 | Order Regarding Motion for Reconsideration (Publicly filed version – redactions in original) |

**CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Federal Circuit Rule 25.1, the Addendum redacts materials that Appellees designated as confidential under the protective order entered by the district court. The material omitted was originally redacted by the district court in the publicly-filed versions of the documents at issue. The material omitted includes the name and description of Appellees' alleged TSS trade secret, descriptions of the mathematical method underlying the same, and the name of public domain publications disclosing Appellees' alleged TSS trade secret, all of which the district court filed under seal. The redacted material appears on pages Appx000001-000008, Appx000011-000016, Appx000020-000027, Appx000030-000035, Appx000039-000040, Appx000043, Appx000045-000046, and Appx000049.

Exhibit 12
-80-

CONFIDENTIAL MATERIAL REDACTED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Revived Motion for Preliminary Injunction**

Before the Court is Plaintiffs Masimo Corporation ("Masimo") and Cercacor Inc.'s ("Cercacor") (collectively – "Plaintiffs") motion for preliminary injunction. Mot., ECF No. 153. Defendants Marcelo Lamego ("Lamego") and True Wearables, Inc. ("True Wearables") (collectively – "Defendants") filed an opposition. Opp'n, ECF No. 171-1. Plaintiffs responded. Reply, ECF No. 184-1. Defendants also filed a request for oral argument. ROA, ECF No. 254.

For the following reasons, the Court **GRANTS** the motion.

**I. BACKGROUND**

*A.    The Technology at Issue*

Plaintiffs are two companies that confidentially collaborate to develop technology that is used in medical devices. FAC, ECF No. 42, ¶ 18. Notably, Plaintiffs specialize in the development of devices used for the noninvasive detection of a variety of features of a user's blood, such as blood oxygen content. Id. ¶ 11. Among the blood parameters that Plaintiffs' devices detect is total hemoglobin – abbreviated as "SpHb." Id. ¶ 16. Plaintiffs' devices that can detect SpHb contain ▮▮▮▮▮▮▮▮▮ that are used to collect information about ▮▮▮▮▮▮ wavelengths of light that the devices' LEDs emit through the user's fingertip. Chen Decl., ECF No. 152-2, ¶¶ 9-10. The devices process the data that the photodetectors collect to calculate SpHb. Id.

At issue in this motion are the signal processing techniques that are used to

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

calculate SpHb. SpHb can be calculated using ███████████████████
██████████████████████████████████████████████████████████████ and
thereby calculate SpHb. Id. ¶ 15. Relying on a complicated equation is undesirable,
however, because such an equation requires a significant amount of computational
power, storage, and battery life, among other costs. McNames Dec., ECF No. 152-3, ¶
21. Ideally, such a complex equation would be simplified ███████████████████
████████████████ Id. ¶ 22. It is computationally difficult, however, to determine the
██████████████████████████████████ the SpHb equation without losing
accuracy; ████████████████████████████████████████
███████████████ Id. ¶¶ 38-41.

Plaintiffs' claimed trade secret – called the ████████████████, or "TSS" –
determines the value ████████████████ in less than a minute. Id. ¶ 26. In essence, the
TSS uses a process somewhat ████████████████████████
████████████████ necessary to calculate SpHb given a
predetermined measure of accuracy. McNames Decl. ¶ 58; Chen Decl., ECF No. 152-2,
at 12-13 (TSS presentation). Before introducing ████████████████, it is necessary
to take a tour of some relevant mathematical concepts.

*I.   Mathematical Background*

Since the TSS relies on matrix manipulation, linear algebra is essential to
understanding the TSS. "Matrices" are rectangular, two-dimensional arrays of numbers,
in which the numbers are arranged in row and columns. "Vectors" are merely one-
dimensional matrices. Using matrices and vectors, one can concisely write systems of
equations where each equation involves the adding together of various terms that
themselves are the products of the multiplication of numbers. For example, a 2x2 matrix
(with elements *a*, *b*, *c*, and *d*) and a 1x2 vertex (with elements *x* and *y*) can be multiplied
to get a system of two equations:

$$\begin{bmatrix} a & b \\ c & d \end{bmatrix} \cdot \begin{bmatrix} x \\ y \end{bmatrix} = \begin{bmatrix} ax+by \\ cx+dy \end{bmatrix}$$

What is particularly relevant here is the calculation of vectors' "norms," which is a
term for the vectors' size. The TSS derivation involves two norms: a 1-norm and a
squared 2-norm. A 1-norm for a vector *x* is denoted by $\|x\|_1$ and is calculated as the sum

Exhibit 12
-82-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|----------|--------------------------|------|----------------|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|-------|----------------------------------------------------------|

of each of the elements in vector $x$:

$$||x||_1 = \sum_i |x_i|.$$

Goldstein Decl., ECF No. 171-2, ¶ 21. A squared 2-norm is denoted $||x||_2^2$ and is calculated as the sum of each of the squares in vector $x$:

$$||x||_2^2 = \sum_i x_i^2.$$

Id. ¶ 20.

Finally, a key technique used in mathematical optimization involves what are known as "Lagrange multipliers." When trying to find the maximum or minimum of a given function $f(x)$, one might sometimes also want to account for certain external constraints, such as $g(x) = 0$. To do so, one can use Lagrange multipliers – represented by lower case lambdas ($\lambda$) – to construct an equation:

$$L(x, \lambda) = f(x) - \lambda g(x).$$

Partial derivatives can then be taken of the equation with respect to each variable – in this case x and $\lambda$ – which are then set equal to 0 and solved. The resulting solutions are where the given function $f(x)$ has maxima or minima given the external constraint $g(x)$.

2. ███████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

Exhibit 12
-83-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|----------|-------------------------|------|----------------|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|-------|---------------------------------------------------------|



---

[1] While this Order cites to the McNames declaration, the analysis described is originally from Section 13 of the ███████████ presentation, ECF No. 156-5.

| CV 90 (06/04) | CIVIL MINUTES - GENERAL | Page 4 of 19 |
|---------------|-------------------------|--------------|

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |



**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |



**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-2001 JVS (JDEx)                    Date   April 28, 2021

Title      Masimo Corporation et al. v. True Wearables Inc. et al.



Appx000007

Exhibit 12
-87-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | | Date | April 28, 2021 |
|---|---|---|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | | |



### B.    Factual Background

Plaintiffs specialize in the development and sale of noninvasive technology that monitors physiological parameters. Amended Complaint, ECF No. 42, ¶ 11. Plaintiffs' most notable technological innovation has been the development of more accurate means of measuring blood oxygen saturation through a technique called pulse oximetry. Id. Lamego worked at Cercacor – which used to be a division of Masimo – until January 2014, at which time he was the Chief Technology Officer of Cercacor. Id. ¶¶ 34, 35. That month, Lamego began working at Apple, Inc. ("Apple") as an engineer on the "development of non-invasive physiological measurements, including pulse oximetry, for Apple for wearable products." Id. ¶ 37 After working at Apple for seven months, Lamego founded True Wearables. Id. ¶ 38. True Wearables recently began selling a product called Oxxiom, a pulse oximeter. Id. ¶ 4.

On November 8, 2018, Plaintiffs filed their complaint with this Court. Compl.,

Exhibit 12
-88-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

ECF No. 1. The FAC alleges the following causes of action: (1) breach of contract with Masimo by Lamego, id. ¶¶ 45-57; (2) breach of contract with Cercacor by Lamego, id. ¶¶ 59-73; (3) trade secret misappropriation in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 et seq., id. ¶¶ 75-87; (4) trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 et seq., id. ¶¶ 89-101; (5) breach of fiduciary duty of undivided loyalty by Lamego, id. ¶¶ 103-11; and (6) six separate patent infringement claims. Id. ¶¶ 118-90.

On January 11, 2021, the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance for the Patent Application No. 16/198,335 (the "'335 Patent Application"). Notice of Allowance, ECF No. 152-20, at TRUE052980. The '335 Patent Application claims priority to Provisional Patent Application No. 62/591,158 (the "'158 Patent Application"). Opp'n at 27 n.10. After this Notice of Allowance was produced to Plaintiffs on February 9, 2021, the instant motion was filed. Plaintiffs seek an injunction ordering Defendants to 1) take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS.

## II. LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the

Exhibit 12
-89-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Moreover, in the Ninth Circuit, the plaintiff may meet this burden if it "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." <u>Johnson v. California State Bd. of Accountancy</u>, 72 F.3d 1427, 1429 (9th Cir. 1995) (internal quotations and citation omitted). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." <u>Global Horizons, Inc. v. U.S. Dep't of Labor</u>, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing <u>Arcamuzi v. Cont'l Air Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987)).

### III. DISCUSSION

The Court proceeds to address each of the <u>Winter</u> factors in turn.

*A.    Success on the Merits*

To prove a prima facie case of trade secret appropriation, the CUTSA "requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." <u>CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.</u>, 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2008) (citing <u>Sargent Fletcher, Inc. v. Able Corp.</u>, 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003)). <u>See also</u> Cal. Civ. Code § 3426.1. The Court addresses the first two of these elements in turn, and combines the analysis of damage to Plaintiffs in the irreparable harm analysis.

*1.    The Existence of a Trade Secret*

The CUTSA defines a trade secret as:

---

Exhibit 12
-90-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

The definition of a trade secret under the DTSA is similar. See 18 U.S.C. § 1839(3) (definition of a trade secret); Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc., 2019 WL 2177262, at *5 (C.D. Cal. May 20, 2019) (noting similarity of the two definitions); Sun Distributing Co., LLC v. Corbett, 2018 WL 4951966, at *3 (C.D. Cal. Oct. 12, 2018) (same). At the same time, there is one key difference between the CUTSA and the DTSA: whether a trade secret can be "readily ascertainable." Compare 18 U.S.C. § 1839(3) (requiring that information "not be[] readily ascertainable through proper means" to qualify as a trade secret) with West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) (noting that the California legislature expressly declined to include the phrase "readily ascertainable" in the definition of trade secret). The Ninth Circuit therefore has written that "whether information is 'readily ascertainable' is not part of the definition of a trade secret in California." Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1168 n.10 (9th Cir. 1998). Instead, under the CUTSA, ready ascertainability is a defense that "will be based upon an absence of misappropriation, rather than the absence of a trade secret." ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21 n.9 (1991). As such, under the CUTSA, ready ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable. See Imax, 152 F.3d at 1168 n.10; Medtronic MiniMed, Inc. v. Nova Biomedical Corp., 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009).

Plaintiffs argue that the TSS is a trade secret that gives Plaintiffs an advantage over competitors by virtue of not being known. Mot. at 11-13. Specifically, "Plaintiffs' development of its SpHb technology ▮▮▮▮▮▮▮▮, and Plaintiffs remain

| CV 90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 11 of 19 |
|---|---|---|

Exhibit 12
-91-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

essentially the only supplier of SpHb" detection technology. Id. at 12 (citing Kiani Decl., ECF No. 152-4, ¶¶ 9-10; Chen Decl., ECF No. 152-2, ¶¶ 23-26). Plaintiffs further argue that they took reasonable steps to maintain secrecy, such as requiring that employees sign confidentiality agreements and preventing publication of documents that would reveal the TSS. Id. at 13.

Defendants' arguments to the contrary are unavailing. Defendants argue that the TSS ▮▮▮▮▮▮▮▮ are "generally known and readily ascertainable," meaning that they cannot be protected as trade secrets. Opp'n at 15-19. Defendants make this argument without reference to the law, however. As Plaintiffs point out, for the Court to conclude that the TSS is not a trade secret under either the DTSA or the CUTSA, the Court must determine that the TSS is not "generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1); see Reply at 6. As discussed above, to the extent that the TSS is readily ascertainable, Defendants have a defense to the existence of a trade secret under the DTSA, but must still show that Defendants made use of that means of ascertainment to have a defense under the CUTSA.

Defendants fail to argue that the TSS was "generally known" by people who could obtain economic value from its use. Rather, Defendants argue that the TSS was publicly available in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at 15-19. While both of these articles are published as conference papers, meaning that they are not obscure, this does not mean that the particular techniques described in them were "generally known" to people who could obtain economic value from developing noninvasive blood content detectors. At best, the articles could be a basis for determining that the TSS was "readily ascertainable." See West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials."). These papers were both found by Defendants'

| CV 90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 12 of 19 |
|---|---|---|

CONFIDENTIAL MATERIAL REDACTED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | | Date | April 28, 2021 |
|---|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

expert and not shown to be the origin of the invention embodied in the '158 Patent Application. Goldstein Decl., ECF No. 171-2, ¶ 29. The Court therefore concludes that the TSS can be a trade secret under the CUTSA because it was not publicly known.

Defendants next argue that the TSS is not a source of independent economic value because there have been other publicly available ███ that are faster than the TSS. Opp'n at 21-23. Namely, Defendants point to ███████ given in ███████ and a ███████ by Defendants' expert, Tom Goldstein, that has been publicly available since 2014. Id. But these arguments are similarly unavailing. Defendants' argument is, in essence, that the TSS cannot be a trade secret because other, more efficient ███ are readily ascertainable. If the Court were to accept this argument, then the Court would be undercutting the policy decision made by the California Legislature to not permit the ready ascertainability of information to be a defense to the existence of a trade secret. While in this case what is readily ascertainable is information related to, but not the same as, the TSS, the same moral hazard is created. Namely, if the Court were to accept Defendants' argument, a competitor who wishes to copy a particular trade secret is incentivized to engage in misappropriation of the competitor's trade secret instead of acquiring the readily ascertainable information through other legitimate means. Even if the Defendants did engage in misappropriation, they could always claim that it was unnecessary to use the legitimate means since the mere existence of the other means undermines the protection of the trade secret. The California Legislature expressly chose to eliminate such an incentive for misappropriation by allowing for ready ascertainability to be a defense to misappropriation, even if it does not serve as a defense to the existence of a trade secret in the first place. Competitors are encouraged to take advantage of publicly available means of obtaining the trade secret they are interested in.

This understanding of the requirements of Cal. Civ. Code § 3426.1 is consistent with case law that "[t]he standard to show that trade secrets derive economic value is not a high standard." Cisco Systems, Inc. v. Chung, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. May 26, 2020) (citing Calendar Research LLC v. Stubhub, Inc., 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017)). To determine that readily ascertainable information is

Exhibit 12
-93-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | | |

"better" than the asserted trade secret and deprives the trade secret of its economic value, the trade secret and the other readily ascertainable information must be closely scrutinized to determine which is indeed "better." This would create a high standard for any plaintiff to meet, for the plaintiff would have to show not only that the asserted trade secret derives "independent economic value," but that it derives more value than any possible alternative. Indeed, by pointing to an alternative ▓▓▓▓ than the TSS, Defendants here are not arguing that the TSS <u>does</u> not derive independent economic value, but that it <u>would</u> not derive that economic value <u>if</u> a competitor were to employ ▓▓▓▓▓▓▓▓▓.

The Court therefore rejects Defendants' argument that the TSS does not derive independent economic value. Defendants' argument runs contrary to California legislative policy and does not deny that the TSS does provide economic value to Plaintiffs now. It is undisputed that the TSS's economic value derived from how it made ▓▓▓▓▓▓▓▓▓▓ so that development of SpHb-measuring devices was practical. <u>See</u> Reply at 16; Chen Decl. ¶¶ 22-26. Thus, the Court finds that Plaintiffs are likely to show that the TSS does derive independent economic value by virtue of not being publicly known and are therefore likely to show the existence of a trade secret.

2.    *Misappropriation*

The main disagreement between the Parties about whether Defendants misappropriated the TSS is about whether the '158 Application discloses the TSS. <u>See</u> Opp'n at 23-24; Reply at 18-19. Specifically, Defendants argue that the ▓▓▓▓▓ ▓▓▓▓▓ in the '158 Application are actually not disclosed in the 2010 Workshop Presentation and are ▓▓▓▓▓▓ the TSS ▓▓▓▓▓▓." Opp'n at 23. But, this argument is unavailing, even if the Court were to accept Defendants' argument that "the only aspect of the TSS alleged to have any value is the TSS update formulas." <u>Id.</u> at 20. This is because the ▓▓▓▓▓▓▓▓▓▓▓ is in ¶ 79 of the '158 Patent Application, just using different variables. Specifically, the '158 Patent Application recommends the user ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

| | | |
|---|---|---|
| CV 90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 14 of 19 |

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

[REDACTED]

'158 Patent Application, ECF No. 152-6, ¶ 79. As McNames indicates in his declaration, this expression is the same as the constrained update formula, which is:

[REDACTED]

McNames Decl. ¶¶ 57, 58. [REDACTED]

[REDACTED]

[REDACTED]

Exhibit 12
-95-

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

Id. ¶ 80. After replacing the variables with the map above, the expressions can be
rearranged to demonstrate that the two equations are identical. See id. ¶¶ 78-86.

Defendants do not argue otherwise. Indeed, they seem to word their opposition in
such a way as to implicitly acknowledge that McNames' analysis is correct. Opp'n at 23
("However, for two of the three examples Dr. Names's analysis takes liberties.")
(emphasis added). The disclosure of this ▮▮▮▮▮▮▮▮▮▮▮▮ is sufficient for the
Court to conclude that the '158 Patent Application discloses the TSS.

Having concluded that the '158 Patent Application discloses the TSS, the Court
can also determine that Plaintiffs are likely to show misappropriation by Defendants. See
Mot. at 13-14 (arguing that Defendants misappropriated the TSS). A defendant can
misappropriate a trade secret in one of three ways: acquisition, disclosure, or use. Cal.
Civ. Code § 3426.1. At the minimum, Plaintiffs are likely to show improper acquisition
of the TSS. A defendant misappropriates trade secrets by acquisition if it "knew or had
reason to know that the trade secret was acquired by improper means," which includes
"breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code §§
3426.1(a) & (b)(1). Plaintiffs have demonstrated that Lamego knew that the TSS was
Plaintiffs' trade secret. Ex. 12, ECF No. 152-11, at MASM0113836. Lamego also signed
several Confidentiality Agreements in which he stated that he would keep Plaintiffs'
trade secrets confidential. Exhibits 3-5, 8, ECF Nos. 153-8, 153-9, 153-10, 153-13.
Defendants do not provide any response to Plaintiffs' contention that Lamego brought
the TSS with him after he left his job with Plaintiffs.

Thus, the Court concludes that Plaintiffs are likely to succeed on the merits.

B.    *Irreparable Harm*

The Court next turns to whether Plaintiffs have demonstrated irreparable harm if
the Court does not grant this motion. Plaintiffs argue that without a preliminary
injunction, their trade secret will be disclosed and will no longer be secret. Mot. at 14-15.
At that point, Plaintiffs contend, they will lose any competitive advantage that they

Exhibit 12
-96-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

might receive from their trade secret. Id.

The Court agrees. Defendants respond that Plaintiffs have "waited nearly 17 months to seek this preliminary injunction," and this delay indicates that there is no exigent need for a preliminary injunction. Opp'n at 24-26. But the Court does not believe that Plaintiffs have unreasonably delayed their motion for a preliminary injunction. Plaintiffs only filed this motion for preliminary injunction once they learned that Defendants had received a Notice of Allowance indicating that publication of the '158 Patent Application was imminent. Mot. at 1 (noting that Plaintiffs filed the motion for preliminary injunction one week after Defendants produced the Notice of Allowance). Insofar as Plaintiffs are seeking to prevent the imminent harm that would accrue through publication of the TSS, it is only natural this motion would follow soon after Plaintiffs receive notice that such publication is imminent. This factor weighs in favor of a preliminary injunction.

C.    *Balance of the Equities*

Plaintiffs next argue that the balance of the equities weighs heavily in their favor because the hardship of Defendants publishing Plaintiffs' trade secrets would outweigh Defendants being required to request nonpublication of the relevant applications and delaying issuance until after trial. The Court agrees. Publication of the '158 Patent Application risks Plaintiffs' trade secret becoming public, making it so Plaintiffs lose any value that the TSS accrues by virtue of not being publicly known. By contrast, Defendants will not lose protection for the inventions in the patent applications that rely on the '158 Patent Application for priority if the preliminary injunction is granted. Plaintiffs can continue to maintain these inventions as trade secrets and prosecute any patent applications confidentially. In short, without the preliminary injunction, Plaintiffs would lose protection for one of their inventions while Defendants would still have a way to protect their inventions regardless of if the preliminary injunction issues. This factor weighs in favor of granting the motion.

---

Exhibit 12
-97-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

### D.    *Public Interest*

Finally, the Court turns to whether issuing Plaintiffs' proposed preliminary injunction would be in the public interest. "If . . . the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). "Protection of trade secrets benefits the public interest." Chartwell Staffing, 2019 WL 2177262, at *11.

Defendants contend that issuing the preliminary injunction would cut against the public interest by sanctioning "harass[ment of] former employees" and by preventing medical devices from being available to the public. Opp'n at 27-28. The Court disagrees. First, this case does not involve "harassment" of a former employee since the Court has concluded that Plaintiffs are likely to succeed in their claim for trade secret misappropriation. Second, the preliminary injunction that Plaintiffs seek would not prevent True Wearables from bringing new devices to market. Rather, True Wearables would merely be prevented from allowing patents that rely on the '158 Patent Application for priority to publish. Thus, the Court concludes that this factor weighs in favor of granting the preliminary injunction.

### E.    *Conclusion*

Having concluded that all the Winter factors weigh in favor a preliminary injunction, the Court **GRANTS** the motion.

The Court therefore **ORDERS** Defendants to: 1) take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS.

---

Exhibit 12
-98-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-2001 JVS (JDEx)                    Date   April 28, 2021

Title   Masimo Corporation et al. v. True Wearables Inc. et al.

As Defendants have not attempted to argue that a bond is necessary in this case, the Court does not impose one.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion. Having considered Defendants' request for oral argument, the Court finds that arguments were adequately presented in the briefing papers and **DENIES** the request. The Court asks the parties to meet and confer and notify the Court which parts of the order should be redacted within 7 days.

**IT IS SO ORDERED.**

:    0

Initials of Preparer        lmb

Appx000019

Exhibit 12
-99-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Revived Motion for Preliminary Injunction**

Before the Court is Plaintiffs Masimo Corporation ("Masimo") and Cercacor Inc.'s ("Cercacor") (collectively – "Plaintiffs") motion for preliminary injunction. Mot., ECF No. 153. Defendants Marcelo Lamego ("Lamego") and True Wearables, Inc. ("True Wearables") (collectively – "Defendants") filed an opposition. Opp'n, ECF No. 171-1. Plaintiffs responded. Reply, ECF No. 184-1. Defendants also filed a request for oral argument. ROA, ECF No. 254.

For the following reasons, the Court **GRANTS** the motion.

**I. BACKGROUND**

*A.    The Technology at Issue*

Plaintiffs are two companies that confidentially collaborate to develop technology that is used in medical devices. FAC, ECF No. 42, ¶ 18. Notably, Plaintiffs specialize in the development of devices used for the noninvasive detection of a variety of features of a user's blood, such as blood oxygen content. Id. ¶ 11. Among the blood parameters that Plaintiffs' devices detect is total hemoglobin – abbreviated as "SpHb." Id. ¶ 16. Plaintiffs' devices that can detect SpHb contain ▮▮▮▮▮▮▮▮ that are used to collect information about ▮▮▮▮▮ wavelengths of light that the devices' LEDs emit through the user's fingertip. Chen Decl., ECF No. 152-2, ¶¶ 9-10. The devices process the data that the photodetectors collect to calculate SpHb. Id.

At issue in this motion are the signal processing techniques that are used to

---

| | | |
|---|---|---|
| CV 90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 1 of 19 |

**CONFIDENTIAL MATERIAL REDACTED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |

calculate SpHb. SpHb can be calculated using ██████████████████ ████████████████████████████████████████████████████████████ and thereby calculate SpHb. <u>Id.</u> ¶ 15. Relying on a complicated equation is undesirable, however, because such an equation requires a significant amount of computational power, storage, and battery life, among other costs. McNames Dec., ECF No. 152-3, ¶ 21. Ideally, such a complex equation would be simplified ████████████████ ████████. Id. ¶ 22. It is computationally difficult, however, to determine the ████████████████████████████████ the SpHb equation without losing accuracy; ██████████████████████ <u>Id.</u> ¶¶ 38-41.

Plaintiffs' claimed trade secret – called the ████████████████, or "TSS" – determines the value ██████████████ in less than a minute. Id. ¶ 26. In essence, the TSS uses a process somewhat ██████████████████ necessary to calculate SpHb given a predetermined measure of accuracy. McNames Decl. ¶ 58; Chen Decl., ECF No. 152-2, at 12-13 (TSS presentation). Before introducing ████████████████, it is necessary to take a tour of some relevant mathematical concepts.

### 1. Mathematical Background

Since the TSS relies on matrix manipulation, linear algebra is essential to understanding the TSS. "Matrices" are rectangular, two-dimensional arrays of numbers, in which the numbers are arranged in row and columns. "Vectors" are merely one-dimensional matrices. Using matrices and vectors, one can concisely write systems of equations where each equation involves the adding together of various terms that themselves are the products of the multiplication of numbers. For example, a 2x2 matrix (with elements $a$, $b$, $c$, and $d$) and a 1x2 vertex (with elements $x$ and $y$) can be multiplied to get a system of two equations:

$$\begin{bmatrix} a & b \\ c & d \end{bmatrix} \cdot \begin{bmatrix} x \\ y \end{bmatrix} = \begin{bmatrix} ax+by \\ cx+dy \end{bmatrix}$$

What is particularly relevant here is the calculation of vectors' "norms," which is a term for the vectors' size. The TSS derivation involves two norms: a 1-norm and a squared 2-norm. A 1-norm for a vector $x$ is denoted by $\|x\|_1$ and is calculated as the sum

Exhibit 12
-101-

Case 8:20-cv-03345-JVS-JDE Document 1259-2 Filed 08/26/2021 Page 91 of 120 Page ID #:118261
CONFIDENTIAL MATERIAL REDACTED
Case 8:18-cv-02001-JVS-JDE Document 262 Filed 04/28/21 Page 3 of 19 Page ID #:14667

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

of each of the elements in vector $x$:

$$||x||_1 = \sum_i |x_i|.$$

Goldstein Decl., ECF No. 171-2, ¶ 21. A squared 2-norm is denoted $||x||_2^2$ and is calculated as the sum of each of the squares in vector $x$:

$$||x||_2^2 = \sum_i x_i^2.$$

Id. ¶ 20.

Finally, a key technique used in mathematical optimization involves what are known as "Lagrange multipliers." When trying to find the maximum or minimum of a given function $f(x)$, one might sometimes also want to account for certain external constraints, such as $g(x) = 0$. To do so, one can use Lagrange multipliers – represented by lower case lambdas ($\lambda$) – to construct an equation:

$$L(x, \lambda) = f(x) - \lambda g(x).$$

Partial derivatives can then be taken of the equation with respect to each variable – in this case x and $\lambda$ – which are then set equal to 0 and solved. The resulting solutions are where the given function $f(x)$ has maxima or minima given the external constraint $g(x)$.

2.



Exhibit 12
-102-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|



---

<sup>1</sup> While this Order cites to the McNames declaration, the analysis described is originally from Section 13 of the ▮▮▮▮▮▮ presentation, ECF No. 156-5.

Case 8:20-cv-03841-JVS-JDE   Document 269-2   Filed 01/25/23   Page 92 of 120   Page ID #:118263
CONFIDENTIAL MATERIAL REDACTED
Case 8:18-cv-02001-JVS-JDE   Document 262   Filed 04/28/21   Page 5 of 19   Page ID #:14669

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-2001 JVS (JDEx)                          Date   April 28, 2021

Title   Masimo Corporation et al. v. True Wearables Inc. et al.



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 18-2001 JVS (JDEx)          Date   April 28, 2021

Title   Masimo Corporation et al. v. True Wearables Inc. et al.



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | | Date | April 28, 2021 |
|---|---|---|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | | |



### B. Factual Background

Plaintiffs specialize in the development and sale of noninvasive technology that monitors physiological parameters. Amended Complaint, ECF No. 42, ¶ 11. Plaintiffs' most notable technological innovation has been the development of more accurate means of measuring blood oxygen saturation through a technique called pulse oximetry. Id. Lamego worked at Cercacor – which used to be a division of Masimo – until January 2014, at which time he was the Chief Technology Officer of Cercacor. Id. ¶¶ 34, 35. That month, Lamego began working at Apple, Inc. ("Apple") as an engineer on the "development of non-invasive physiological measurements, including pulse oximetry, for Apple for wearable products." Id. ¶ 37 After working at Apple for seven months, Lamego founded True Wearables. Id. ¶ 38. True Wearables recently began selling a product called Oxxiom, a pulse oximeter. Id. ¶ 4.

On November 8, 2018, Plaintiffs filed their complaint with this Court. Compl.,

Exhibit 12
-107-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

ECF No. 1. The FAC alleges the following causes of action: (1) breach of contract with Masimo by Lamego, id. ¶¶ 45-57; (2) breach of contract with Cercacor by Lamego, id. ¶¶ 59-73; (3) trade secret misappropriation in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 et seq., id. ¶¶ 75-87; (4) trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 et seq., id. ¶¶ 89-101; (5) breach of fiduciary duty of undivided loyalty by Lamego, id. ¶¶ 103-11; and (6) six separate patent infringement claims. Id. ¶¶ 118-90.

On January 11, 2021, the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance for the Patent Application No. 16/198,335 (the "'335 Patent Application"). Notice of Allowance, ECF No. 152-20, at TRUE052980. The '335 Patent Application claims priority to Provisional Patent Application No. 62/591,158 (the "'158 Patent Application"). Opp'n at 27 n.10. After this Notice of Allowance was produced to Plaintiffs on February 9, 2021, the instant motion was filed. Plaintiffs seek an injunction ordering Defendants to 1) take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS.

## II. LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the

Exhibit 12
-108-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Moreover, in the Ninth Circuit, the plaintiff may meet this burden if it "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1429 (9th Cir. 1995) (internal quotations and citation omitted). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

### III. DISCUSSION

The Court proceeds to address each of the Winter factors in turn.

*A.    Success on the Merits*

To prove a prima facie case of trade secret appropriation, the CUTSA "requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc., 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2008) (citing Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003)). See also Cal. Civ. Code § 3426.1. The Court addresses the first two of these elements in turn, and combines the analysis of damage to Plaintiffs in the irreparable harm analysis.

*1.    The Existence of a Trade Secret*

The CUTSA defines a trade secret as:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

The definition of a trade secret under the DTSA is similar. See 18 U.S.C. § 1839(3) (definition of a trade secret); Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc., 2019 WL 2177262, at *5 (C.D. Cal. May 20, 2019) (noting similarity of the two definitions); Sun Distributing Co., LLC v. Corbett, 2018 WL 4951966, at *3 (C.D. Cal. Oct. 12, 2018) (same). At the same time, there is one key difference between the CUTSA and the DTSA: whether a trade secret can be "readily ascertainable." Compare 18 U.S.C. § 1839(3) (requiring that information "not be[] readily ascertainable through proper means" to qualify as a trade secret) with West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) (noting that the California legislature expressly declined to include the phrase "readily ascertainable" in the definition of trade secret). The Ninth Circuit therefore has written that "whether information is 'readily ascertainable' is not part of the definition of a trade secret in California." Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1168 n.10 (9th Cir. 1998). Instead, under the CUTSA, ready ascertainability is a defense that "will be based upon an absence of misappropriation, rather than the absence of a trade secret." ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21 n.9 (1991). As such, under the CUTSA, ready ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable. See Imax, 152 F.3d at 1168 n.10; Medtronic MiniMed, Inc. v. Nova Biomedical Corp., 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009).

Plaintiffs argue that the TSS is a trade secret that gives Plaintiffs an advantage over competitors by virtue of not being known. Mot. at 11-13. Specifically, "Plaintiffs' development of its SpHb technology ⬛⬛⬛⬛, and Plaintiffs remain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

essentially the only supplier of SpHb" detection technology. Id. at 12 (citing Kiani Decl., ECF No. 152-4, ¶¶ 9-10; Chen Decl., ECF No. 152-2, ¶¶ 23-26). Plaintiffs further argue that they took reasonable steps to maintain secrecy, such as requiring that employees sign confidentiality agreements and preventing publication of documents that would reveal the TSS. Id. at 13.

    Defendants' arguments to the contrary are unavailing. Defendants argue that the TSS ▮▮▮▮▮▮▮▮ are "generally known and readily ascertainable," meaning that they cannot be protected as trade secrets. Opp'n at 15-19. Defendants make this argument without reference to the law, however. As Plaintiffs point out, for the Court to conclude that the TSS is not a trade secret under either the DTSA or the CUTSA, the Court must determine that the TSS is not "generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1); see Reply at 6. As discussed above, to the extent that the TSS is readily ascertainable, Defendants have a defense to the existence of a trade secret under the DTSA, but must still show that Defendants made use of that means of ascertainment to have a defense under the CUTSA.

    Defendants fail to argue that the TSS was "generally known" by people who could obtain economic value from its use. Rather, Defendants argue that the TSS was publicly available in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at 15-19. While both of these articles are published as conference papers, meaning that they are not obscure, this does not mean that the particular techniques described in them were "generally known" to people who could obtain economic value from developing noninvasive blood content detectors. At best, the articles could be a basis for determining that the TSS was "readily ascertainable." See West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials."). These papers were both found by Defendants'

Exhibit 12
-111-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

expert and not shown to be the origin of the invention embodied in the '158 Patent Application. Goldstein Decl., ECF No. 171-2, ¶ 29. The Court therefore concludes that the TSS can be a trade secret under the CUTSA because it was not publicly known.

Defendants next argue that the TSS is not a source of independent economic value because there have been other publicly available ▉▉▉▉ that are faster than the TSS. Opp'n at 21-23. Namely, Defendants point to ▉▉▉▉ given in ▉▉▉▉ and a ▉▉▉▉ by Defendants' expert, Tom Goldstein, that has been publicly available since 2014. Id. But these arguments are similarly unavailing. Defendants' argument is, in essence, that the TSS cannot be a trade secret because other, more efficient ▉▉▉▉ are readily ascertainable. If the Court were to accept this argument, then the Court would be undercutting the policy decision made by the California Legislature to not permit the ready ascertainability of information to be a defense to the existence of a trade secret. While in this case what is readily ascertainable is information related to, but not the same as, the TSS, the same moral hazard is created. Namely, if the Court were to accept Defendants' argument, a competitor who wishes to copy a particular trade secret is incentivized to engage in misappropriation of the competitor's trade secret instead of acquiring the readily ascertainable information through other legitimate means. Even if the Defendants did engage in misappropriation, they could always claim that it was unnecessary to use the legitimate means since the mere existence of the other means undermines the protection of the trade secret. The California Legislature expressly chose to eliminate such an incentive for misappropriation by allowing for ready ascertainability to be a defense to misappropriation, even if it does not serve as a defense to the existence of a trade secret in the first place. Competitors are encouraged to take advantage of publicly available means of obtaining the trade secret they are interested in.

This understanding of the requirements of Cal. Civ. Code § 3426.1 is consistent with case law that "[t]he standard to show that trade secrets derive economic value is not a high standard." Cisco Systems, Inc. v. Chung, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. May 26, 2020) (citing Calendar Research LLC v. Stubhub, Inc., 2017 WL 10378336, at *3 (C.D. Cal. Aug. 16, 2017)). To determine that readily ascertainable information is

| CV 90 (06/04) | CIVIL MINUTES - GENERAL | Page 13 of 19 |
|---|---|---|

Exhibit 12
-112-

Case 8:20-cv-03841-JVS-JDE Document 269-2 Filed 10/23/... Page 101 of 120 Page ID #:118272
CONFIDENTIAL MATERIAL REDACTED
Case 8:18-cv-02001-JVS-JDE Document 262 Filed 04/28/21 Page 14 of 19 Page ID #:14678

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

"better" than the asserted trade secret and deprives the trade secret of its economic value, the trade secret and the other readily ascertainable information must be closely scrutinized to determine which is indeed "better." This would create a high standard for any plaintiff to meet, for the plaintiff would have to show not only that the asserted trade secret derives "independent economic value," but that it derives more value than any possible alternative. Indeed, by pointing to an alternative ▮▮▮▮ than the TSS, Defendants here are not arguing that the TSS <u>does</u> <u>not</u> derive independent economic value, but that it <u>would</u> <u>not</u> derive that economic value <u>if</u> a competitor were to employ ▮▮▮▮▮▮▮.

The Court therefore rejects Defendants' argument that the TSS does not derive independent economic value. Defendants' argument runs contrary to California legislative policy and does not deny that the TSS does provide economic value to Plaintiffs now. It is undisputed that the TSS's economic value derived from how it made ▮▮▮▮▮▮ so that development of SpHb-measuring devices was practical. <u>See</u> Reply at 16; Chen Decl. ¶¶ 22-26. Thus, the Court finds that Plaintiffs are likely to show that the TSS does derive independent economic value by virtue of not being publicly known and are therefore likely to show the existence of a trade secret.

    2.   *Misappropriation*

The main disagreement between the Parties about whether Defendants misappropriated the TSS is about whether the '158 Application discloses the TSS. <u>See</u> Opp'n at 23-24; Reply at 18-19. Specifically, Defendants argue that ▮▮▮▮▮▮ in the '158 Application are actually not disclosed in the 2010 Workshop Presentation and are ▮▮▮▮▮ the TSS ▮▮▮▮▮▮." Opp'n at 23. But, this argument is unavailing, even if the Court were to accept Defendants' argument that "the only aspect of the TSS alleged to have any value is the TSS update formulas." <u>Id.</u> at 20. This is because the ▮▮▮▮▮▮▮ is in ¶ 79 of the '158 Patent Application, just using different variables. Specifically, the '158 Patent Application recommends the user ▮▮▮▮▮▮▮

Exhibit 12
-113-

Case 8:20-cv-03848-JVS-JDE   Document 269-2   Filed 01/23/23   Page 102 of 120   Page ID #:118273
CONFIDENTIAL MATERIAL REDACTED
Case 8:18-cv-02001-JVS-JDE   Document 262   Filed 04/28/21   Page 15 of 19   Page ID #:14679

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. True Wearables Inc. et al. | | |

'158 Patent Application, ECF No. 152-6, ¶ 79.  As McNames indicates in his declaration, this expression is the same as the constrained update formula, which is:



McNames Decl. ¶¶ 57, 58.

Exhibit 12
-114-

CONFIDENTIAL MATERIAL REDACTED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

Id. ¶ 80. After replacing the variables with the map above, the expressions can be rearranged to demonstrate that the two equations are identical. See id. ¶¶ 78-86.

Defendants do not argue otherwise. Indeed, they seem to word their opposition in such a way as to implicitly acknowledge that McNames' analysis is correct. Opp'n at 23 ("However, for two of the three examples Dr. Names's analysis takes liberties.") (emphasis added). The disclosure of this ▮▮▮▮▮▮▮▮▮ is sufficient for the Court to conclude that the '158 Patent Application discloses the TSS.

Having concluded that the '158 Patent Application discloses the TSS, the Court can also determine that Plaintiffs are likely to show misappropriation by Defendants. See Mot. at 13-14 (arguing that Defendants misappropriated the TSS). A defendant can misappropriate a trade secret in one of three ways: acquisition, disclosure, or use. Cal. Civ. Code § 3426.1. At the minimum, Plaintiffs are likely to show improper acquisition of the TSS. A defendant misappropriates trade secrets by acquisition if it "knew or had reason to know that the trade secret was acquired by improper means," which includes "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code §§ 3426.1(a) & (b)(1). Plaintiffs have demonstrated that Lamego knew that the TSS was Plaintiffs' trade secret. Ex. 12, ECF No. 152-11, at MASM0113836. Lamego also signed several Confidentiality Agreements in which he stated that he would keep Plaintiffs' trade secrets confidential. Exhibits 3-5, 8, ECF Nos. 153-8, 153-9, 153-10, 153-13. Defendants do not provide any response to Plaintiffs' contention that Lamego brought the TSS with him after he left his job with Plaintiffs.

Thus, the Court concludes that Plaintiffs are likely to succeed on the merits.

B.     *Irreparable Harm*

The Court next turns to whether Plaintiffs have demonstrated irreparable harm if the Court does not grant this motion. Plaintiffs argue that without a preliminary injunction, their trade secret will be disclosed and will no longer be secret. Mot. at 14-15. At that point, Plaintiffs contend, they will lose any competitive advantage that they

---

| CV 90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 16 of 19 |
|---|---|---|

Exhibit 12
-115-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

might receive from their trade secret. Id.

The Court agrees. Defendants respond that Plaintiffs have "waited nearly 17 months to seek this preliminary injunction," and this delay indicates that there is no exigent need for a preliminary injunction. Opp'n at 24-26. But the Court does not believe that Plaintiffs have unreasonably delayed their motion for a preliminary injunction. Plaintiffs only filed this motion for preliminary injunction once they learned that Defendants had received a Notice of Allowance indicating that publication of the '158 Patent Application was imminent. Mot. at 1 (noting that Plaintiffs filed the motion for preliminary injunction one week after Defendants produced the Notice of Allowance). Insofar as Plaintiffs are seeking to prevent the imminent harm that would accrue through publication of the TSS, it is only natural this motion would follow soon after Plaintiffs receive notice that such publication is imminent. This factor weighs in favor of a preliminary injunction.

C. *Balance of the Equities*

Plaintiffs next argue that the balance of the equities weighs heavily in their favor because the hardship of Defendants publishing Plaintiffs' trade secrets would outweigh Defendants being required to request nonpublication of the relevant applications and delaying issuance until after trial. The Court agrees. Publication of the '158 Patent Application risks Plaintiffs' trade secret becoming public, making it so Plaintiffs lose any value that the TSS accrues by virtue of not being publicly known. By contrast, Defendants will not lose protection for the inventions in the patent applications that rely on the '158 Patent Application for priority if the preliminary injunction is granted. Plaintiffs can continue to maintain these inventions as trade secrets and prosecute any patent applications confidentially. In short, without the preliminary injunction, Plaintiffs would lose protection for one of their inventions while Defendants would still have a way to protect their inventions regardless of if the preliminary injunction issues. This factor weighs in favor of granting the motion.

Exhibit 12
-116-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
|---|---|

### D.    Public Interest

Finally, the Court turns to whether issuing Plaintiffs' proposed preliminary injunction would be in the public interest. "If . . . the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). "Protection of trade secrets benefits the public interest." Chartwell Staffing, 2019 WL 2177262, at *11.

Defendants contend that issuing the preliminary injunction would cut against the public interest by sanctioning "harass[ment of] former employees" and by preventing medical devices from being available to the public. Opp'n at 27-28. The Court disagrees. First, this case does not involve "harassment" of a former employee since the Court has concluded that Plaintiffs are likely to succeed in their claim for trade secret misappropriation. Second, the preliminary injunction that Plaintiffs seek would not prevent True Wearables from bringing new devices to market. Rather, True Wearables would merely be prevented from allowing patents that rely on the '158 Patent Application for priority to publish. Thus, the Court concludes that this factor weighs in favor of granting the preliminary injunction.

### E.    Conclusion

Having concluded that all the Winter factors weigh in favor a preliminary injunction, the Court **GRANTS** the motion.

The Court therefore **ORDERS** Defendants to: 1) take all necessary steps before the PTO to prevent publication of the '158 Patent Application and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS.

---

| CV 90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 18 of 19 |
|---|---|---|

Exhibit 12
-117-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | April 28, 2021 |
| --- | --- | --- | --- |

| Title | Masimo Corporation et al. v. True Wearables Inc. et al. |
| --- | --- |

As Defendants have not attempted to argue that a bond is necessary in this case,
the Court does not impose one.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion. Having considered
Defendants' request for oral argument, the Court finds that arguments were adequately
presented in the briefing papers and **DENIES** the request. The Court asks the parties to
meet and confer and notify the Court which parts of the order should be redacted within
7 days.

**IT IS SO ORDERED.**

|  |  | : | 0 |
| --- | --- | --- | --- |
| Initials of Preparer | lmb | | |

Exhibit 12
-118-

CONFIDENTIAL MATERIAL REDACTED

## UNDER SEAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. |
|---|---|

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motion for Reconsideration**

Defendants True Wearables, Inc. ("True Wearables") and Marcelo Lamego ("Lamego") (collectively—"Defendants") move for reconsideration of the Court's April 28, 2021 Order granting Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc.'s ("Cercacor") (collectively—"Plaintiffs") motion for a preliminary injunction (the "Order"). Mot., ECF No. 274. Plaintiffs filed an opposition. Opp'n, ECF No. 288-1. Defendants responded. Reply, ECF No. 301.

For the following reasons, the Court **DENIES** the motion.

### I. BACKGROUND

This motion stems from Plaintiffs' attempt to prevent disclosure of a trade secret they call the ▮▮▮▮▮▮▮▮▮▮ ("TSS"). On April 28, the Court directed Defendants to "1) take all necessary steps before the [United States Patent and Trademark Office] to prevent publication of [Provisional Patent Application No. 62/591,158 (the "'158 Application")] and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS." Order, ECF No. 257, at 9.

In relevant part, the Court rejected Defendants' argument that the TSS is not a trade secret. Id. at 12-14. Defendants argued that the TSS was disclosed in two articles published by journals of the Institute of Electrical and Electronics Engineers ("IEEE"):

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit 12
-119-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. |
|---|---|



_____ Id. at 12. Since the two publications disclosed the TSS, Defendants argued that the TSS was "generally known to the public or to other persons who can obtain economic value from its disclosure or use" and therefore did not constitute a trade secret under the California Uniform Trade Secrets Act ("CUTSA"). Id.; see Cal. Civ. Code § 3426.1(d) (definition for a trade secret). The Court rejected this argument, stating:

> While both of these articles are published as conference papers, meaning that they are not obscure, this does not mean that the particular techniques described in them were "generally known" to people who could obtain economic value from developing noninvasive blood content detectors. At best, the articles could be a basis for determining that the TSS was "readily ascertainable." See West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials."). These papers were both found by Defendants' expert and not shown to be the origin of the invention embodied in the '158 Patent Application. Goldstein Decl., ECF No. 171-2, ¶ 29. The Court therefore concludes that the TSS can be a trade secret under the CUTSA because it was not publicly known.

Order at 12-13.

**II. LEGAL STANDARD**

The grounds for reconsideration are set forth in Local Rule 7-18, which provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such

Exhibit 12
-120-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. | | |

decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

L.R. 7-18.[1] The Court has discretion in determining whether to grant a motion for reconsideration. See Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

Defendants also cite to Federal Rule of Civil Procedure 60(b). See Mot. at 3-4. But Rule 60(b) is inapposite since it only applies to a "final judgment, order, or proceeding," a category that does not include preliminary injunctions. Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 880 (9th Cir. 2000). Defendants' citation to Rule 59(e) is similarly inappropriate because it also refers to entry of a judgment. See Reply at 7.

### III. DISCUSSION

The Court first notes that motions for reconsideration under Local Rule 7-18 must "be filed no later than 14 days after entry of the Order that is the subject of the motion or application" absent good cause. Defendants argue that good cause exists because the key evidence on which they rely did not emerge until after the issuance of the Order on April 28. Mot. at 4. The relevant depositions of Mohammed Diab ("Diab") occurred on May 4 and May 6, while Defendants deposed Jesse Chen ("Chen") and Matthew Paul ("Paul") on May 11 and May 13, respectively. Id. at 4 n.3. The Court assumes for purposes of this motion that Defendants have satisfied the good-cause requirement.

---

[1] See also School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (reconsideration appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law).

Exhibit 12
-121-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|
| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. | | |

Defendants argue that Diab, Chen, and Paul—three key employees at Masimo—made statements in their depositions that show "that IEEE publications are generally known to electrical engineers." Id. at 4. This argument fails on multiple grounds.

First, the key issue in the Order is not whether journals including articles disclosing an alleged trade secret are generally known but whether the alleged trade secret itself is generally known. Cal. Civ. Code § 3426.1(d) (defining a trade secret as "information . . . that: (1) [d]erives independent economic value . . . from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"). Thus, showing that IEEE publications are generally known to electrical engineers—a wholly unremarkable assertion considering IEEE is the primary professional association for electrical engineers with hundreds of thousands of members around the world and numerous international conferences annually, see Claassen Decl., ECF No. 286-1, at Ex. C —is insufficient to show that information found in particular articles is generally known.

Second, IEEE publishes about two hundred different transactions, journals, and magazines. Id. Therefore, it is unreasonable to conclude that all information contained in IEEE publications are well known because IEEE publications are themselves well known; IEEE publishes so much research in any given year that not all of it can be "well known." Id. (noting that about 200,000 papers are added annually to IEEE Explore, IEEE's digital library). Moreover, given the number of IEEE publications that exist, the statement that "IEEE . . . is a fairly famous journal," Mot. at 5, is nonsensical.

Third, Defendants do not account for the CUTSA's legislative comment that "[i]nformation is readily ascertainable if it is available in trade journals, reference books, or published materials." West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments); see Order at 12 (citing this comment). As the Court noted in the Order, under the CUTSA, ready ascertainability is only a defense to the existence of a trade secret insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable. Order at 11; see Imax, 152 F.3d at 1168 n.10; Medtronic MiniMed, Inc. v. Nova Biomedical Corp., 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009). Since there is no suggestion that Defendants gained knowledge of the TSS through the IEEE articles,

Exhibit 12
-122-

CONFIDENTIAL MATERIAL REDACTED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. | | |

showing ready ascertainability is insufficient to show that the TSS is not a trade secret. Since the California legislature intended for information contained in publications like those produced by IEEE to be readily ascertainable, Defendants' argument fails.

Fourth, the Court was already familiar with how well known the articles at issue were. <u>See, e.g.</u>, Goldstein Decl., ECF No. 171-2, ¶ 59 (noting that ▮▮▮▮▮▮ has been cited over 1200 times). This motion therefore does not raise any new material facts that justify reconsideration under Local Rule 7-18.[2]

Defendants also attempt to argue that the Court's previous ruling improperly shifted the burden to the Defendants. Mot. at 7-8. This argument fails for two reasons. First, there is no basis under Local Rule 7-18 for raising an argument that the Court improperly interpreted the law as part of a motion for reconsideration. Second, Plaintiffs have indeed met their burden. In the Order, the Court found that Plaintiffs "took reasonable steps to maintain secrecy, such as requiring that employees sign confidentiality agreements and preventing publication of documents that would reveal the TSS." Order at 12. Defendants failed to rebut this showing that the TSS is a trade secret. Defendants' citation to <u>Amgen Inc. v. California Correctional Health Care Services</u>, 47 Cal. App. 5th 716, 736 (2020), is unavailing. <u>See</u> Mot. at 7. In <u>Amgen</u>, the court found that Amgen itself had disclosed the information that it was attempting to argue was a trade secret. 47 Cal. App. 5th at 735 ("Amgen does not dispute that it disclosed its price increase notice to over 170 registered purchasers."). Here, by contrast, Defendants never rebutted Plaintiffs by showing that Plaintiffs disclosed the TSS or, as outlined above, that the TSS was in fact generally known.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion. The Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15. Hearing

---

[2] Much of the evidence that Defendants submit is also irrelevant to the analysis. The fact that three people have read IEEE journals does not show that those journals are "generally known to electrical engineers." The Court therefore has no reason to consider the fact that Chen and his colleagues shared IEEE articles, Paul reads IEEE publications, and Diab once referenced an IEEE publication in one of his notebooks. Mot. at 5-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|
| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. | | |

set for June 28, 2021, is ordered **VACATED**. The Court asks the parties to meet and
confer and notify the Court which parts of the order should be redacted within 7 days.

    **IT IS SO ORDERED.**

|  |  | : | 0 |
|---|---|---|---|
| Initials of Preparer | | lmb | |

Case 8:20-cv-03442-JVS-ADE Document 269-2 Filed 02/23/24 Page 114 of 120 Page ID #:118284
CONFIDENTIAL MATERIAL REDACTED
Case 8:18-cv-02001-JVS-JDE Document 309 Filed 06/16/21 Page 1 of 6 Page ID #:18018

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

***** REDACTED    CIVIL MINUTES - GENERAL

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. |
|---|---|

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] Order Regarding Motion for Reconsideration**

Defendants True Wearables, Inc. ("True Wearables") and Marcelo Lamego ("Lamego") (collectively—"Defendants") move for reconsideration of the Court's April 28, 2021 Order granting Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc.'s ("Cercacor") (collectively—"Plaintiffs") motion for a preliminary injunction (the "Order"). Mot., ECF No. 274. Plaintiffs filed an opposition. Opp'n, ECF No. 288-1. Defendants responded. Reply, ECF No. 301.

For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

This motion stems from Plaintiffs' attempt to prevent disclosure of a trade secret they call the ▇▇▇▇▇▇▇▇▇ ("TSS"). On April 28, the Court directed Defendants to "1) take all necessary steps before the [United States Patent and Trademark Office] to prevent publication of [Provisional Patent Application No. 62/591,158 (the "'158 Application")] and any patent application that claims priority to the '158 Application, including U.S. Application Nos. 16/198,335, 16/198,504, and 16/198,550; and 2) not publish and to take all necessary steps to prevent publication of any other patent, patent application, document, paper, or presentation that discloses the TSS." Order, ECF No. 257, at 9.

In relevant part, the Court rejected Defendants' argument that the TSS is not a trade secret. Id. at 12-14. Defendants argued that the TSS was disclosed in two articles published by journals of the Institute of Electrical and Electronics Engineers ("IEEE"): ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Exhibit 12
-125-

Case 8:20-cv-03841-JLS-JDE Document 209-2 Filed 03/23/23 Page 103 of 120 Page ID #:11828 120 Page ID
CONFIDENTIAL MATERIAL REDACTED

Case 8:18-cv-02001-JVS-JDE Document 309 Filed 06/16/21 Page 2 of 6 Page ID #:18019

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 18-2001 JVS (JDEx) | | Date | June 16, 2021 |
| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. | | | |

████████████████████████████████████████████
████████████████████████████████████████████ Id. at 12. Since the two publications disclosed the
TSS, Defendants argued that the TSS was "generally known to the public or to other
persons who can obtain economic value from its disclosure or use" and therefore did not
constitute a trade secret under the California Uniform Trade Secrets Act ("CUTSA"). Id.;
see Cal. Civ. Code § 3426.1(d) (definition for a trade secret). The Court rejected this
argument, stating:

> While both of these articles are published as conference papers,
> meaning that they are not obscure, this does not mean that the
> particular techniques described in them were "generally known"
> to people who could obtain economic value from developing
> noninvasive blood content detectors. At best, the articles could be
> a basis for determining that the TSS was "readily ascertainable."
> See West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative
> Committee Comments) ("Information is readily ascertainable if
> it is available in trade journals, reference books, or published
> materials."). These papers were both found by Defendants' expert
> and not shown to be the origin of the invention embodied in the
> '158 Patent Application. Goldstein Decl., ECF No. 171-2, ¶ 29.
> The Court therefore concludes that the TSS can be a trade secret
> under the CUTSA because it was not publicly known.

Order at 12-13.

## II. LEGAL STANDARD

The grounds for reconsideration are set forth in Local Rule 7-18, which provides:

> A motion for reconsideration of the decision on any motion may
> be made only on the grounds of (a) a material difference in fact or
> law from that presented to the Court before such decision that in
> the exercise of reasonable diligence could not have been known
> to the party moving for reconsideration at the time of such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. |
|---|---|

decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

L.R. 7-18.[1] The Court has discretion in determining whether to grant a motion for reconsideration. See Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

Defendants also cite to Federal Rule of Civil Procedure 60(b). See Mot. at 3-4. But Rule 60(b) is inapposite since it only applies to a "final judgment, order, or proceeding," a category that does not include preliminary injunctions. Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 880 (9th Cir. 2000). Defendants' citation to Rule 59(e) is similarly inappropriate because it also refers to entry of a judgment. See Reply at 7.

**III. DISCUSSION**

The Court first notes that motions for reconsideration under Local Rule 7-18 must "be filed no later than 14 days after entry of the Order that is the subject of the motion or application" absent good cause. Defendants argue that good cause exists because the key evidence on which they rely did not emerge until after the issuance of the Order on April 28. Mot. at 4. The relevant depositions of Mohammed Diab ("Diab") occurred on May 4 and May 6, while Defendants deposed Jesse Chen ("Chen") and Matthew Paul ("Paul") on May 11 and May 13, respectively. Id. at 4 n.3. The Court assumes for purposes of this motion that Defendants have satisfied the good-cause requirement.

---

[1] See also School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (reconsideration appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law).

Exhibit 12
-127-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. |
|---|---|

Defendants argue that Diab, Chen, and Paul—three key employees at Masimo—made statements in their depositions that show "that IEEE publications are generally known to electrical engineers." Id. at 4. This argument fails on multiple grounds.

First, the key issue in the Order is not whether journals including articles disclosing an alleged trade secret are generally known but whether the alleged trade secret itself is generally known. Cal. Civ. Code § 3426.1(d) (defining a trade secret as "information . . . that: (1) [d]erives independent economic value . . . from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"). Thus, showing that IEEE publications are generally known to electrical engineers—a wholly unremarkable assertion considering IEEE is the primary professional association for electrical engineers with hundreds of thousands of members around the world and numerous international conferences annually, see Claassen Decl., ECF No. 286-1, at Ex. C —is insufficient to show that information found in particular articles is generally known.

Second, IEEE publishes about two hundred different transactions, journals, and magazines. Id. Therefore, it is unreasonable to conclude that all information contained in IEEE publications are well known because IEEE publications are themselves well known; IEEE publishes so much research in any given year that not all of it can be "well known." Id. (noting that about 200,000 papers are added annually to IEEE Explore, IEEE's digital library). Moreover, given the number of IEEE publications that exist, the statement that "IEEE . . . is a fairly famous journal," Mot. at 5, is nonsensical.

Third, Defendants do not account for the CUTSA's legislative comment that "[i]nformation is readily ascertainable if it is available in trade journals, reference books, or published materials." West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments); see Order at 12 (citing this comment). As the Court noted in the Order, under the CUTSA, ready ascertainability is only a defense to the existence of a trade secret insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable. Order at 11; see Imax, 152 F.3d at 1168 n.10; Medtronic MiniMed, Inc. v. Nova Biomedical Corp., 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009). Since there is no suggestion that Defendants gained knowledge of the TSS through the IEEE articles,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-2001 JVS (JDEx) | Date | June 16, 2021 |
|---|---|---|---|

| Title | Masimo Corp. et al. v. True Wearables, Inc. et al. | | |

showing ready ascertainability is insufficient to show that the TSS is not a trade secret. Since the California legislature intended for information contained in publications like those produced by IEEE to be readily ascertainable, Defendants' argument fails.

Fourth, the Court was already familiar with how well known the articles at issue were. See, e.g., Goldstein Decl., ECF No. 171-2, ¶ 59 (noting that ▮▮▮▮▮▮▮ has been cited over 1200 times). This motion therefore does not raise any new material facts that justify reconsideration under Local Rule 7-18.[2]

Defendants also attempt to argue that the Court's previous ruling improperly shifted the burden to the Defendants. Mot. at 7-8. This argument fails for two reasons. First, there is no basis under Local Rule 7-18 for raising an argument that the Court improperly interpreted the law as part of a motion for reconsideration. Second, Plaintiffs have indeed met their burden. In the Order, the Court found that Plaintiffs "took reasonable steps to maintain secrecy, such as requiring that employees sign confidentiality agreements and preventing publication of documents that would reveal the TSS." Order at 12. Defendants failed to rebut this showing that the TSS is a trade secret. Defendants' citation to Amgen Inc. v. California Correctional Health Care Services, 47 Cal. App. 5th 716, 736 (2020), is unavailing. See Mot. at 7. In Amgen, the court found that Amgen itself had disclosed the information that it was attempting to argue was a trade secret. 47 Cal. App. 5th at 735 ("Amgen does not dispute that it disclosed its price increase notice to over 170 registered purchasers."). Here, by contrast, Defendants never rebutted Plaintiffs by showing that Plaintiffs disclosed the TSS or, as outlined above, that the TSS was in fact generally known.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** the motion. The Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15. Hearing

---

[2] Much of the evidence that Defendants submit is also irrelevant to the analysis. The fact that three people have read IEEE journals does not show that those journals are "generally known to electrical engineers." The Court therefore has no reason to consider the fact that Chen and his colleagues shared IEEE articles, Paul reads IEEE publications, and Diab once referenced an IEEE publication in one of his notebooks. Mot. at 5-6.

Exhibit 12
-129-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-2001 JVS (JDEx)                    Date   June 16, 2021

Title   Masimo Corp. et al. v. True Wearables, Inc. et al.

set for June 28, 2021, is ordered **VACATED**. The Court asks the parties to meet and
confer and notify the Court which parts of the order should be redacted within 7 days.

**IT IS SO ORDERED.**

                                                                            :    0

                            Initials of Preparer      lmb

Exhibit 12
-130-

# CERTIFICATE OF CONFIDENTIAL MATERIAL

The foregoing document contains 14 unique words (including numbers) marked confidential.

⊠    This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐    This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐    This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Dated: August 26, 2021

By: /s/ Rachel Zimmerman Scobie
Rachel Zimmerman Scobie

*Attorneys for Defendants-Appellants True Wearables, Inc. and Marcelo Lamego*

Exhibit 12
-131-

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FEDERAL CIRCUIT RULE 32(a)

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   - this brief contains 12,159 words, excluding parts of the brief exempted by Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   - this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14-point Times New Roman font.

Dated: August 26, 2021

By: /s/ Rachel Zimmerman Scobie
Rachel Zimmerman Scobie

*Attorneys for Defendants-Appellants True Wearables, Inc. and Marcelo Lamego*

Exhibit 12
-132-