# EXHIBIT 13

NON-CONFIDENTIAL VERSION

2021-2146

# United States Court of Appeals
# for the Federal Circuit

## MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,

*Plaintiffs-Appellees*

**v.**

## TRUE WEARABLES, INC., MARCELO LAMEGO,

*Defendants-Appellants*

*Appeal from the United States District Court for the Central District of California in Case No. 8:18-CV-02001*

### REPLY BRIEF OF DEFENDANTS-APPELLANTS
### TRUE WEARABLES, INC., MARCELO LAMEGO

Rachel Zimmerman Scobie
Paige S. Stradley
Michael A. Erbele
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
(612) 332-5300

Peter Gergely
MERCHANT & GOULD P.C.
767 Third Avenue, Suite 23C
New York, NY 10017
(212) 223-6520

Ryan James Fletcher
MERCHANT & GOULD P.C.
1801 California Street, Suite 3300
Denver, CO 80202
(303) 357-1651

October 25, 2021

*Attorneys for Defendants-Appellants*

Exhibit 13
-133-

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(3) and 47.4, counsel for Defendants-Appellants True Wearables, Inc. and Marcelo Lamego certifies the following:

1.  The full name of the party represented by me is:

    True Wearables, Inc. and Marcelo Lamego

2.  The name of the Real Party in interest represented by me is:

    N/A

3.  Parent corporations and publicly held companies that own 10% or more of the stock in the party:

    True Wearables, Inc. hereby states that it has no parent corporation and that no publicly held company owns 10% or more of its stock.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

    Amanda R. Washton and Sherron L. Wiggins of CONKLE, KREMER & ENGEL

    Samuel G. Brooks of CALL & JENSEN APC

    Eric R. Chad and Scott P. Shaw of MERCHANT & GOULD P.C.

    Zachary D. Kachmer, Roderick O'Dorisio, and Andrew T. Pouzeshi, formerly of MERCHANT & GOULD P.C.

Exhibit 13
-134-

5.     The title and number of any case known to counsel to be pending in this or any other court or agency, other than the originating case, that will directly affect or be directly affected by this court's decision in the pending appeal:

N/A

6.     Organizational Victims and Bankruptcy Cases:

N/A

Dated: October 25, 2021

/s/ Rachel Zimmerman Scobie
Rachel Zimmerman Scobie

*Attorneys for Defendants-Appellants True Wearables, Inc. and Marcelo Lamego*

Exhibit 13
-135-

CONFIDENTIAL MATERIAL REDACTED

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS.................................................................. iii

ARGUMENT ...............................................................................1

I.    The District Court Erred in Determining Masimo Met Its Burden of Proving a Likelihood of Success on the Merits.................................................3

    A.    The district court erred in determining Masimo was likely to show the ▮adjective▮ TSS ▮equation▮ was not generally known. .................................................................................4

        1.    The district court erred as a matter of law in concluding that publications are not relevant to the determination of whether an alleged trade secret is generally known. .................4

            a.    The legislative history does not support the district court's conclusion...............................................................5

            b.    Case law is in accord; publications may be considered as evidence that a trade secret is generally known...............................................................6

            c.    Masimo's cases are distinguishable.................................8

        2.    Applying the proper legal standard, Masimo failed to meet its burden of proof on this record.....................................10

            a.    Masimo presented no evidence to rebut Dr. Goldstein's showing that the ▮adjective▮ TSS ▮equation▮ was generally known...........................11

            b.    Dr. Lamego's old comments and labels on documents addressing multiple concepts cannot support the district court's determination.......................12

Exhibit 13
-136-

CONFIDENTIAL MATERIAL REDACTED

3.  True Wearables presented evidence that the **[adjective]** TSS **[equation]** was generally known by those who could obtain economic value from its use. ...............................14

4.  While this appeal is focused on the "generally known" portion of the CUTSA, the district court and Masimo are wrong on the issue of when the "readily ascertainable" defense applies. ...........................................................15

B.  The district court erred in determining Masimo was likely to succeed in proving misappropriation. ...................................18

1.  Masimo presented no evidence that Dr. Lamego misappropriated the TSS. ............................................18

a.  The alleged appearance of a **[equation]** similar to the **[adjective]** TSS **[equation]** in lab notebooks and the '158 Application is not evidence of misappropriation. ...........................................18

b.  The only evidence shows Dr. Lamego's independent derivation of the **[equations]** in the '158 Application. .........................................20

2.  California law expressly favors employee mobility; Dr. Lamego is permitted to use his knowledge at his new employer. ...................................................22

3.  True Wearables presented evidence that Dr. Lamego independently derived the **[equations]** in the '158 Application. ...............................................24

II.  The District Court Erred in Determining the Balance of Equities Favored a Preliminary Injunction. ..............................................25

A.  The district court erred in determining that the injunction imposed no hardship on True Wearables. ...........................25

Exhibit 13
-137-

B.    The district court erred in determining that Masimo would be
      harmed by publication of the '158 Application. ..................................26

III.  The District Court Erred in Denying True Wearables' Motion for
      Reconsideration. ...........................................................................................27

      A.    The district court made no threshold determination of
            materiality.............................................................................................27

      B.    The district court's denial of the motion for reconsideration
            was erroneous. ......................................................................................28

CONCLUSION ......................................................................................................29

## **CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Federal Circuit Rule 25.1, this brief redacts materials that Appellees designated as confidential under the protective order entered by the district court. This material has been redacted at Appellees' request. The material omitted includes the name and description of Appellees' alleged TSS trade secret, descriptions of the mathematical method underlying the same, and the name of a public domain publication disclosing Appellees' alleged TSS trade secret. The redacted material appears on pages iii-iv, 1-4, 6-7, 10-12, 14-15, 17-24, 26-27, and 29.

Exhibit 13
-138-

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.O. Smith Corp. v. Petroleum Iron Works Co.*,
  73 F.2d 531 (6th Cir. 1934) ........................................................9

*ABBA Rubber Co. v. Seaquist*,
  235 Cal. App. 3d 1 (Cal. Ct. App. 1991) .............................17

*Altavion, Inc. v. Konica Minolta Sys. Labs., Inc.*,
  226 Cal. App. 4th 26 (Cal. Ct. App. 2014) ...........................9

*Am. Paper & Packaging Prods. v. Kirgan*,
  183 Cal. App. 3d 1318 (Cal. Ct. App. 1986) ......................13

*Amgen Inc. v. Cal. Corr. Health Care Servs.*,
  47 Cal. App. 5th 716 (Cal. Ct. App. 2020) .........................27

*Apple, Inc. v. Samsung Elec. Co., Ltd.*,
  839 F.3d 1034 (Fed. Cir. 2016) ..........................................14

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020) ............................................7, 8

*Brach v. Newson*,
  6 F.4th 904 (9th Cir. 2021) ...........................................15, 25

*Broadcom Corp. v. Emulex Corp.*,
  732 F.3d 1325 (Fed. Cir. 2013) ..........................................14

*Cascades Projection LLC v. Epson Am., Inc.*,
  864 F.3d 1309 (Fed. Cir. 2017) ..........................................25

*Convolve, Inc. v. Compaq Comput. Corp.*,
  No. 00-cv-5141, 2011 U.S. Dist. LEXIS 152762 (S.D.N.Y. Aug. 16, 2011) ..............................................................................6

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
  527 U.S. 627 (1999).............................................................25

Exhibit 13
-139-

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ..................................................8

*Hooked Media Grp., Inc. v. Apple Inc.*,
   55 Cal. App. 5th 323 (Cal. Ct. App. 2020) ........................................23

*Imi-Tech Corp. v. Gagliani*,
   691 F. Supp. 214 (S.D. Cal. 1986) .......................................................9

*Jostens, Inc. v. Nat. Comput. Sys., Inc.*,
   318 N.W.2d 691 (Minn. 1982) ...........................................................24

*Judd v. Weinstein*,
   967 F.3d 952 (9th Cir. 2020) ..............................................................17

*Klamath-Orleans Lumber, Inc. v. Miller*,
   87 Cal. App. 3d 458 (Cal. Ct. App. 1978) ........................................23

*Masimo Corp. v. Sotera Wireless, Inc.*,
   794 F. App'x 625 (9th Cir. 2020) .........................................................8

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2010) ..............................................23

*Mattel, Inc. v. MGA Entm't, Inc.*,
   No. 04-cv-9049, 2011 U.S. Dist. LEXIS 161798 (C.D. Cal. Jan.
   26, 2011) ...........................................................................................13

*Piercy v. Sabin*,
   10 Cal. 22 (Cal. 1858) ........................................................................16

*Sargent Fletcher, Inc. v. Able Corp.*,
   110 Cal. App. 4th 1658 (Cal. Ct. App. 2003) ..............................10, 23

*Sinclair v. Aquarius Elecs., Inc.*,
   42 Cal. App. 3d 216 (Cal. Ct. App. 1974) ..........................................9

*The Retirement Grp. v. Galante*,
   176 Cal. App. 4th 1226 (Cal. Ct. App. 2009) ....................................24

*Thompson v. Impaxx, Inc.*,
   113 Cal. App. 4th 1425 (Cal. Ct. App. 2003) ....................................13

Exhibit 13
-140-

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   587 F.3d 1339 (Fed. Cir. 2009) ............................................................6

*Walsh v. W. Valley Mission Cmty. Coll. Dist.*,
   66 Cal. App. 4th 1532 (Cal. Ct. App. 1998).......................................16

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992)............................................................................15

**Statutes**

18 U.S.C. § 1839 ......................................................................................8

35 U.S.C. § 286......................................................................................25

Cal. Civ. Code § 3426.1 ....................................................................5, 16

**Other Authorities**

5 Witkin, Cal. Proc. Plead § 1081 (5th ed. 2020) ..................................16

Judicial Council of Cal. Civ. Jury Instructions (CACI) No. 4420
   (2009) ..............................................................................................16, 17

Judicial Council of Cal. Administrative Office of the Courts, Report
   (2009) ..............................................................................................16, 17

Senate Comm. on Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. 5-6,
   Selected Bill Analyses (1984)...............................................................6

Exhibit 13
-141-

CONFIDENTIAL MATERIAL REDACTED

## ARGUMENT

In its response brief, Masimo attempts to distract from the district court's error of law by recasting its decision, which applied a bright line legal rule, as one involving the weighing of facts. The district court's own words undermine Masimo's effort. The district court did not weigh the evidence presented by True Wearables concerning publication of the ████ adjective ████ TSS ████ equation ████ in ██ Name ██ & ██ Name ██ or the testimony from Dr. Goldstein concerning the same. The district court, in its own words, held as a matter of law that such evidence "*at best*" had a bearing on whether Masimo's alleged trade secret was readily ascertainable. The district court's failure to consider publication-related evidence, and testimony concerning the same, in connection with its assessment of whether the ████ adjective ████ TSS ████ equation ████ was generally known is an error of law.

Masimo's attempt to support the district court's erroneous determination on misappropriation is similarly flawed. Contrary to Masimo's assertions, there is no evidence that Dr. Lamego took the TSS with him when he left Cercacor. Masimo points only to the appearance of an allegedly equivalent ████ equation ████ in True Wearables' '158 Application, but that fact, even if true, is fully consistent with Dr. Lamego's independent derivation. The accused ████ equation ████ is simply the result of a derivation that produced a mathematical equation for solving optimization problems. Dr. Lamego is a highly experienced mathematician. It is hardly surprising that he would apply

1

Exhibit 13
-142-

**CONFIDENTIAL MATERIAL REDACTED**

his mathematical knowledge and skill to conduct a mathematical derivation the same way later in his career as he had done before. Dr. Lamego's use of his mathematical knowledge to derive an equation is not "improper means."

While blurred in Masimo's response brief, True Wearables is not even using the accused ██equation██ for the same purpose as that for which the alleged trade secret was used at Cercacor. Cercacor used the ██adjective██ TSS ██equation██ in the development of its SpHb monitor, while True Wearables' Oxxiom® device measures SpO2 levels. Appx001378-001383. To the extent the ██adjective██ TSS ██equation██ or similar ██equation██ was used in the development of both devices, it was applied to different data as part of a completely different development process. There is no evidence of "improper means" to support the district court's determination on misappropriation.

Masimo's arguments concerning irreparable harm and the balance of hardships similarly fail to support the district court's preliminary injunction. The district court's failure to appreciate the harm to True Wearables in terms of the irretrievable loss of patent term was plainly erroneous. Masimo's effort to restrict the analysis to whether there was a known infringer fails to account for the full extent of the harm, which includes not only the loss of the right to sue for infringement, but also the loss of the patents as assets that can be exploited for licensing purposes or leveraged in financing negotiations.

Exhibit 13
-143-

**CONFIDENTIAL MATERIAL REDACTED**

Finally, Masimo's arguments cannot support the district court's denial of True Wearables' motion for reconsideration. Masimo's assertion that the district court made some threshold determination that True Wearables failed to appeal is wrong. The evidence presented on reconsideration was indisputably new—the depositions in question were not taken until after the preliminary injunction issued. And the district court's materiality determination was intertwined with, and flowed directly from, its application of an improper legal standard. The district court rejected—as irrelevant to whether the alleged trade secret was "generally known"—all evidence concerning publication. That legal error is precisely what True Wearables challenges on this appeal.

The district court erred in granting the injunction preventing publication of True Wearables' patent applications, and in denying True Wearables' motion for reconsideration. Those decisions should be reversed, and the portion of the preliminary injunction applicable to the publication of True Wearables' patent applications should be vacated.

## I. The District Court Erred in Determining Masimo Met Its Burden of Proving a Likelihood of Success on the Merits.

Masimo's response confirms the district court abused its discretion in determining Masimo was likely to succeed in proving (1) that the ██████████ TSS ████████ is a trade secret and (2) that Dr. Lamego misappropriated it. Masimo presents no argument or evidence capable of supporting this determination.

3

Exhibit 13
-144-

CONFIDENTIAL MATERIAL REDACTED

A.     **The district court erred in determining Masimo was likely to show the** ▉adjective▉ **TSS** ▉equation▉ **was not generally known.**

　　1.　The district court erred as a matter of law in concluding that publications are not relevant to the determination of whether an alleged trade secret is generally known.

The district court committed legal error in determining that appearance of an alleged trade secret in a publication can only be considered in determining whether the alleged secret is "readily ascertainable" and has no bearing on whether the alleged secret is also "generally known." Instead of engaging True Wearables' argument on the merits, Masimo mischaracterizes it and argues against a position True Wearables never asserted. (Br. at 43-46.) True Wearables does not advocate a bright line rule that anything published is *per se* generally known. Rather, True Wearables urges reversal of the district court's application of an erroneous legal standard wherein publication evidence is *per se* irrelevant to whether an alleged trade secret is generally known.

Masimo's response brief suggests the district court did not apply such a rule. But the district court's analysis is clear. The district court expressly stated that, under its interpretation of the CUTSA, a non-obscure article containing the alleged trade secret could "*[a]t best* . . . be a basis for determining the TSS was 'readily ascertainable'":

Exhibit 13
-145-

> While both of these articles are published as conference papers, meaning that they are not obscure, this does not mean that the particular techniques described in them were "generally known" to people who could obtain economic value from developing noninvasive blood content detectors. *At best*, the articles could be a basis for determining that the TSS was "readily ascertainable."

Appx000012 (emphasis added).

### a. The legislative history does not support the district court's conclusion.

The district court applied an erroneous reading of the legislative history comment that "[i]nformation is readily ascertainable if it is available in trade journals, reference books, or published materials." *See* Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments). In noting that these sorts of items are certainly "readily ascertainable," the comment does not suggest that they cannot also constitute evidence an alleged trade secret is generally known. As the California legislature explained, it eliminated the "readily ascertainable" language from the CUTSA to remove language it deemed ambiguous, not to preclude the use of publications as evidence that a trade secret is generally known. *See id.* ("This change was made because the original language was viewed as ambiguous in the definition of a trade secret.").

The legislative history posited that the phrase "not readily ascertainable" was unclear, because it could encompass situations in which the trade secret could be reverse engineered "within six months," explaining "if a scientist [] could discover

Exhibit 13
-146-

**CONFIDENTIAL MATERIAL REDACTED**

within six months [*sic*] time a complex formula through reverse engineering or a literature search, the confidential information could be considered readily ascertainable." *See* Senate Comm. on Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984). Six months of reverse engineering or literature searching is not the same thing as True Wearables' expert, Dr. Goldstein, knowing that the ███████ TSS ████████ was generally known and had been reported in published articles. That Dr. Goldstein did not have the names of the publications memorized is of no moment; he knew they existed and knew how to find them. The district court erred in failing to consider that evidence in connection with determining whether the alleged trade secret was generally known.

> **b.**     ***Case law is in accord; publications may be considered as evidence that a trade secret is generally known.***

Masimo attempts to distinguish True Wearables' case law, which shows that publication ***is*** evidence, and can be conclusive evidence, that an alleged trade secret is generally known. (Br. at 48-49.) But Masimo's arguments are all contradicted by the record or by the plain language of the cases themselves.

Masimo attempts to distinguish *Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing Corp.*, 587 F.3d 1339 (Fed. Cir. 2009), and *Convolve, Inc. v. Compaq Computer Corp.*, No. 00-cv-5141, 2011 U.S. Dist. LEXIS 152762 (S.D.N.Y. Aug. 16, 2011), *aff'd in relevant part*, 527 F. App'x 910, 922 (Fed. Cir. 2013), arguing that in those cases the alleged trade secrets were in publications

Exhibit 13
-147-

**CONFIDENTIAL MATERIAL REDACTED**

directed to the relevant industry. The same facts, however, are present here. True Wearables *did* show that [Name] & [Name] was directed to those in the relevant industry. While [Name] & [Name] did not use the [adjective] TSS [equation] in optimization problems for SpHb, neither does the accused [equation] in the '158 Application. The accused [equation] in the '158 Application is presented as a [equation] for solving optimization problems. That is the same context in which it is presented in [Name] & [Name] Moreover, Dr. Goldstein's testimony confirms that people in the noninvasive monitoring industry would understand the applicability of the [Name] & [Name] [equation] to optimization problems in that field. Appx003197 (¶ 26); Appx003126 ([Name] & [Name] was presented at a signal processing conference); Appx003149 (relevant applications include "sensor networks").

Masimo's attempt to distinguish *Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020), also fails. Masimo asserts that the court in *Attia* applied a "not readily ascertainable" analysis. Not so. The court in *Attia* applied the "not generally known" requirement of the DTSA, and it determined that publication of the alleged trade secret in a patent application destroyed trade secret protection. *Id.* at 426. Notably, and directly contrary to Masimo's assertion, the court in *Attia* did not even mention the "not readily ascertainable" portion of the DTSA and, in fact, omitted the "not readily ascertainable" language when discussing the definition of a "trade secret." *See id.* at 424 (defining a "trade secret" as information that "derives independent

Exhibit 13
-148-

economic value, actual or potential, from not being generally known to . . . another person who can obtain economic value from the disclosure or use of the information") (ellipses in original) (quoting 18 U.S.C. § 1839(3)).

In *Masimo Corp. v. Sotera Wireless, Inc.*, 794 F. App'x 625 (9th Cir. 2020), the Ninth Circuit affirmed the finding that the alleged trade secret was generally known under the CUTSA because it was published in a white paper and in a trade journal article, which shows that evidence of publication may be considered in determining whether a trade secret is generally known. The determination that the alleged trade secret was generally known was not dependent on the fact that the disclosure was made by Masimo itself, as Masimo suggests. *Id.* at 627-28.

Finally, Masimo concedes that in *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000), publication of the alleged trade secrets in patents and patent applications rendered them generally known under the CUTSA. Masimo asserts only that *Forcier* "did not find publications render information generally known as a matter of law." (Br. at 49.) True Wearables has not argued otherwise.

### c.    *Masimo's cases are distinguishable.*

Masimo cites several cases that address the differences between trade secret protection and patent protection. These cases have no bearing on the arguments presented in this appeal; they do not speak to whether the publication of an alleged

Exhibit 13
-149-

trade secret, in its entirety, in a single source, is relevant to whether that alleged

secret is generally known.

*Sinclair v. Aquarius Electronics, Inc.*, 42 Cal. App. 3d 216 (Cal. Ct. App.

1974), did not discuss whether publication of an alleged trade secret rendered it

generally known under the CUTSA. *Sinclair* was decided under the Restatement

view, before the CUTSA was enacted, and it stands only for the unremarkable

proposition that "patentability is not a condition precedent to the classification of a

trade secret." *Id.* at 222.

In *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 230-31 (S.D. Cal. 1986), the

court determined that "it is not required that a trade secret be patentably nonobvious

or novel." *Imi-Tech* also applied the Restatement view and did not address whether

the appearance of an alleged trade secret in its entirety in an oft-cited publication is

relevant to whether it is "generally known" under the CUTSA.

Likewise, the cited portion of *Altavion, Inc. v. Konica Minolta Systems

Laboratory, Inc.*, 226 Cal. App. 4th 26, 55 (Cal. Ct. App. 2014), concerns the

inapposite question of whether general ideas can be granted trade secret protection.

The court in *Altavion* made no determination about whether publication would

render the alleged trade secret generally known.

*A.O. Smith Corp. v. Petroleum Iron Works Co.*, 73 F.2d 531 (6th Cir. 1934),

also pre-dates the Uniform Trade Secrets Act and was decided under the common

Exhibit 13
-150-

**CONFIDENTIAL MATERIAL REDACTED**

law regime. It does not speak to whether a trade secret is "generally known" under the CUTSA, nor does it address whether the publication of an alleged trade secret in a single source is relevant to whether that alleged trade secret is generally known.

To be clear, True Wearables has presented no arguments on this appeal about whether Masimo's alleged trade secret qualifies for patent protection. Rather, as True Wearables has explained, the publication of the <span style="background:black;color:white">adjective</span> TSS <span style="background:black;color:white">equation</span> ██████ in its entirety in <span style="background:black;color:white">Name</span> & <span style="background:black;color:white">Name</span>a well-known IEEE article that has been cited more than 1,200 times—is relevant to whether the <span style="background:black;color:white">adjective</span> TSS <span style="background:black;color:white">equation</span> ███ is generally known under the CUTSA.

In holding that evidence concerning publication of an alleged trade secret is "at best" a basis for determining the alleged trade secret is readily ascertainable, the district court applied an incorrect legal standard to its determination of Masimo's likelihood of success on the merits.

      2.    <u>Applying the proper legal standard, Masimo failed to meet its burden of proof on this record.</u>

When the proper legal standard is applied, Masimo failed to meet its burden to prove that the <span style="background:black;color:white">adjective</span> TSS <span style="background:black;color:white">equation</span> is not "generally known." *See Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1667 (Cal. Ct. App. 2003). True Wearables is not "asking this Court for summary judgment that the TSS is 'generally known,'" as Masimo asserts. (Br. at 29.) Rather, because the record provides no support to determine that Masimo is likely to succeed in meeting its

Exhibit 13
-151-

**CONFIDENTIAL MATERIAL REDACTED**

burden of proof that the ▮▮▮▮▮ TSS ▮▮▮▮▮ is a trade secret, the district court's grant of a preliminary injunction must be reversed.

        *a.*     ***Masimo presented no evidence to rebut Dr. Goldstein's showing that the* ▮▮▮▮▮ *TSS* ▮▮▮▮▮ *was generally known.***

      The evidence presented by True Wearables demonstrated that the ▮▮▮▮▮ TSS ▮▮▮▮▮ was generally known to persons who can obtain economic value from its disclosure. Appx003101 (¶¶ 2-3); Appx003103 (¶ 16); Appx003117-003121 (¶¶ 57-68). It was published in its entirety in an IEEE article, ▮▮▮▮▮ & ▮▮▮▮▮ that has been cited more than 1,200 times since its publication in 2008. Appx003118 (¶ 59); Appx003120-003121 (¶ 68); Appx003149-003152. As Dr. Goldstein explained, the concept of using ▮▮▮▮▮ to solve optimization problems has been widely known since the 1960s and has appeared in numerous textbooks since then. Appx003103 (¶ 16); Appx003107-003108 (¶ 27). Dr. Goldstein testified that the ▮▮▮▮▮ TSS ▮▮▮▮▮ "is generally known to persons who can obtain economic value from its disclosure." Appx003101 (¶ 2). Dr. Goldstein explained that he himself is both (a) a person to whom the TSS is known and (b) a person who can obtain economic value from its disclosure. *Id.*

      "Generally known" does not mean "memorized." For example, the atomic mass of gold (196.967u) is certainly "generally known" to chemists, notwithstanding the fact that most chemists would have to look it up. The fact that Dr. Goldstein

Exhibit 13
-152-

**CONFIDENTIAL MATERIAL REDACTED**

knew the ▮adjective▮ TSS ▮equation▮ existed in publications and was able to

locate one such publication within just a few hours is strong evidence it is generally

known.

The only testimony Masimo cites in support of its assertion that the TSS was

*not* generally known is the Chen declaration, which was submitted before Dr.

Goldstein identified ▮Name▮ & ▮Name▮ Appx000411 (¶ 29). Even then, the only thing

Mr. Chen says is that he is "not aware of any publications" disclosing the TSS. *Id.*

Dr. McNames never offered an opinion on whether the TSS was generally known,

and neither Dr. McNames, nor Mr. Chen, submitted a declaration responding to Dr.

Goldstein's analysis. Dr. Goldstein's unrebutted evidence is sufficient to show the

▮adjective▮ TSS ▮equation▮ is generally known. Contrary to Masimo's

assertion, there is no other evidence for the district court to consider or credit on this

point, and the silence from Masimo's witnesses is deafening.

> **b.** **Dr. Lamego's old comments and labels on documents addressing multiple concepts cannot support the district court's determination.**

Masimo asserts that Dr. Lamego, at some point in the past, asked a graduate

student to remove aspects of the TSS from his graduate thesis and labeled various

documents containing the TSS as "trade secret." (Br. at 21-22, 29-30.) Masimo's

allegations cannot support the district court's determination that Masimo was likely

to prove the ▮adjective▮ TSS ▮equation▮ was not generally known.

Exhibit 13
-153-

First, the treatment of documents alleged to contain a trade secret in the past has no bearing on whether the alleged trade secret is generally known today, which would be the showing required to support an injunction. Second, many companies place labels stating "confidential" or "trade secret" on many things that do not merit such protection. While this labeling may be relevant to the determination of whether a company took reasonable steps to maintain secrecy of its information (another element of trade secret protection), internal company labels do not demonstrate that an alleged trade secret is "not generally known." *See Mattel, Inc. v. MGA Entm't, Inc.*, No. 04-cv-9049, 2011 U.S. Dist. LEXIS 161798, at *46-47 (C.D. Cal. Jan. 26, 2011) (expert opinion that information fails to meet the statutory definition of a trade secret may overshadow a company's treatment of information as a trade secret); *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1430 (Cal. Ct. App. 2003); *Am. Paper & Packaging Prods. v. Kirgan*, 183 Cal. App. 3d 1318, 1325 (Cal. Ct. App. 1986). Third, the documents to which Masimo cites all contain several concepts beyond the alleged trade secret at issue here. Standing alone, and without testimony to explain them, there is no way to determine which portions were considered "confidential," why such portions were so considered, or what efforts were made to verify those beliefs.

Masimo further asserts that True Wearables' statements during patent prosecution show that the TSS was not generally known. (Br. at 22.) Not so. In the

Exhibit 13
-154-

**CONFIDENTIAL MATERIAL REDACTED**

office action in question, True Wearables explained that a pending claim containing four distinct elements was not common knowledge. Appx001095-001096. Masimo asserts, without mathematical analysis, that *one* of those elements discloses some aspect of the TSS. Even if this is true, it does not mean that the TSS itself is not commonly known. A novel combination of known and unknown elements may be patentable. *See Apple, Inc. v. Samsung Elec. Co., Ltd.*, 839 F.3d 1034, 1062 (Fed. Cir. 2016); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334-35 (Fed. Cir. 2013). A statement that a combination is not commonly known says nothing about the individual elements in question.

      3.    True Wearables presented evidence that the ▇adjective▇ TSS ▇equation▇ was generally known by those who could obtain economic value from its use.

Contrary to Masimo's assertion, True Wearables plainly argued to the district court that the ▇adjective▇ TSS ▇equation▇ was generally known due to its disclosure in ▇Name▇ & ▇Name▇ Appx003086 ("the TSS ▇equations▇ are generally known"); Appx003088-003090; Appx003103 (¶ 16); Appx003117-003121 (¶¶ 57-68).

Citing the district court's Order, Masimo asserts that True Wearables failed to "argue that the TSS was 'generally known' by people who could obtain economic value from its use." (Br. at 12.) Both Masimo and the district court are wrong. True Wearables plainly argued the TSS was generally known to those who could obtain

Exhibit 13
-155-

**CONFIDENTIAL MATERIAL REDACTED**

economic value from its use. Appx003086. Indeed, Dr. Goldstein specifically opined that the "TSS is generally known to persons who can obtain economic value from its disclosure." Appx003101 (¶ 2); *see also* Appx003130; Appx003138. True Wearables also asserted in its request for oral argument (which was denied) that the TSS is generally known to persons who can obtain economic value from its use. Appx005129-005132. To the extent the district court believed otherwise, such a belief is contradicted by the record.

Masimo's forfeiture arguments are meritless. *See Brach v. Newson*, 6 F.4th 904, 926 (9th Cir. 2021) (an appellant "can make any argument in support of [its] claim [on appeal]; parties are not limited to the precise arguments they made below") (quoting *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992)).

4. <u>While this appeal is focused on the "generally known" portion of the CUTSA, the district court and Masimo are wrong on the issue of when the "readily ascertainable" defense applies.</u>

Masimo asserts that "ready ascertainability is only a defense insofar as the defendant actually gained knowledge of the trade secret by use of those materials which make the trade secret readily ascertainable." (Br. at 51.) Masimo is wrong. Under California law, it is irrelevant whether Dr. Lamego *in fact ascertained* the accused equation from Name & Name

The legislative comments to the CUTSA explain that "***the assertion*** that a matter is readily ascertainable by proper means ***remains available as a defense*** to a

Exhibit 13
-156-

claim of misappropriation." *See* Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments) (emphasis added). If the comments meant to limit the availability of the defense to those who "actually gained knowledge of the trade secret by use of" the publicly available materials, then they would have said that the "matter was in fact ascertained" from them. Moreover, such an interpretation would do away with the affirmative defense of ready ascertainability in its entirety. It is already the plaintiff's burden in a trade secret action to prove the defendant acquired the trade secret through "improper means." Cal. Civ. Code § 3426.1(b). Disputing this element of the plaintiff's case would be a traverse, not an affirmative defense.[1] *See* 5 Witkin, Cal. Proc. Plead § 1081 (5th ed. 2020); *see also, e.g.*, *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1546 (Cal. Ct. App. 1998).

The Judicial Council of California Jury Instructions explain that ready ascertainability is an affirmative defense and, as a result, expressly reject any requirement that the defendant prove it acquired the alleged trade secret through the identified readily ascertainable means. *See* CACI No. 4420 (2009); *see also* Judicial

---

[1] Masimo's reliance on the absence of the word "affirmative" in the comments describing the "readily ascertainable" defense is misguided. In placing the burden of asserting ready ascertainability on the defendant, the Legislative Committee considered it an affirmative defense to be raised by the defendant, not a traverse to a plaintiff's assertion of misappropriation. *E.g.*, *Piercy v. Sabin*, 10 Cal. 22, 27 (Cal. 1858) ("New matter is that which, under the rules of evidence, the defendant must affirmatively establish. If the onus of proof is thrown upon the defendant, the matter to be proved by him is new matter.").

16

Exhibit 13
-157-

**CONFIDENTIAL MATERIAL REDACTED**

Council of Cal. Administrative Office of the Courts, Report, at 5-6 (2009) (noting the defense is called "readily ascertainable" and not "readily ascertained," indicating that the defense is concerned with what was possible, not what actually happened).

Masimo's legal argument relies on footnote 9 from *ABBA Rubber Co. v. Seaquist*, but *ABBA Rubber* is not a California Supreme Court case, and that footnote is dicta. 235 Cal. App. 3d 1 (Cal. Ct. App. 1991). In the absence of controlling authority, it is the task of this Court to predict how the California Supreme Court would decide the issue. *See Judd v. Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020). Decisions of lower appellate courts are not binding. *Id.* Footnote 9 of *ABBA Rubber* is wrong, and it has been expressly rejected by the Judicial Council of California Jury Instructions. *See* CACI No. 4420 (2009) (distinguishing footnote 9 of *ABBA Rubber*); Judicial Council of Cal. Administrative Office of the Courts, Report, at 6 (2009) (same). Masimo's other cited cases, which rely on *ABBA Rubber*, are unpersuasive for the same reason. (Br. at 51-52.) The legal approach adopted by the Judicial Council of California Civil Jury Instructions is a better indication of how the California Supreme Court would decide the issue.

While resolution of this issue is not necessary in the present appeal, the district court's conclusion that True Wearables could not assert a readily ascertainable defense unless it "in fact ascertained" the accused ▮equation▮ from the identified publications is legal error.

17

Exhibit 13
-158-

**CONFIDENTIAL MATERIAL REDACTED**

**B.** **The district court erred in determining Masimo was likely to succeed in proving misappropriation.**

1. <u>Masimo presented no evidence that Dr. Lamego misappropriated the TSS.</u>

The district court also erred in determining that Masimo was likely to prove misappropriation. Masimo's assertion that "[Dr.] Lamego improperly brought the TSS to TW" is incorrect and unsupported. (Br. at 8.) Masimo presented *no evidence* that Dr. Lamego took the TSS with him when he left, and Masimo cannot meet its burden to prove a likelihood of misappropriation. If there was any record evidence showing that Dr. Lamego took the TSS with him when he left Cercacor, Masimo would have cited it. There is no such evidence.

*a.* *The alleged appearance of a* ▓equation▓ *similar to the* ▓adjective▓ *TSS* ▓equation▓ *in lab notebooks and the '158 Application is not evidence of misappropriation.*

Masimo relies solely on the alleged appearance of a ▓equation▓ it contends is equivalent to the ▓adjective▓ TSS ▓equation▓ in Dr. Lamego's lab notebooks and in the '158 Application. (Br. at 8-9.) But neither of these is evidence of misappropriation as both are equally consistent with independent derivation.

First, there is no evidence the lab notebooks contain the ▓adjective▓ TSS ▓equation▓ which is the only trade secret at issue on appeal. Masimo cites the declaration of its expert, Dr. McNames, in support of its assertion, but Dr. McNames never opined that the lab notebooks contain the ▓adjective▓ TSS ▓equation▓ Instead, he stated that one notebook identifies an optimization problem and solves

18

Exhibit 13
-159-

**CONFIDENTIAL MATERIAL REDACTED**

the problem "using the ▮▮▮▮ approach taught in the [TSS]," and that another notebook identifies problems that were "framed in the same format as the [TSS] method and framework." Appx000468 (¶¶ 130-31). Dr. McNames performed no mathematical analysis to show that the ▮▮▮▮ in the lab notebooks were equivalent to the TSS or disclosed the ▮▮▮▮ TSS ▮▮▮▮ *See id.*

Masimo further asserts the alleged appearance of the ▮▮▮▮ TSS ▮▮▮▮ ▮▮▮▮ in the '158 Application shows that Dr. Lamego brought the TSS with him when he left Cercacor. This argument also fails. Citing the declaration of Dr. McNames, Masimo asserts that the '158 Application "discloses several embodiments that use the TSS." (Br. at 9.) As Dr. Goldstein showed, however, Dr. McNames' analysis was wrong. Two of the alleged embodiments do not disclose the TSS. Appx003105-003106 (¶¶ 18-19). The only embodiment the district court found to be disclosed in the '158 Application was the ▮▮▮▮ TSS ▮▮▮▮ [2] Evidence that the ▮▮▮▮ TSS ▮▮▮▮ appears in the '158 Application years after Dr. Lamego left Cercacor, even if true, is not evidence that Dr. Lamego

---

[2] True Wearables does not concede that the '158 Application contains the ▮▮▮▮ TSS ▮▮▮▮ at least because there are significant notational differences between that ▮▮▮▮ and the ▮▮▮▮ contained in Paragraph 79 of the '158 Application. In support of this alleged concession, Masimo cites to True Wearables' discussion of the result of a hypothetical wherein the '158 Application discloses the ▮▮▮▮ TSS ▮▮▮▮ A hypothetical is not a concession.

Exhibit 13
-160-

**CONFIDENTIAL MATERIAL REDACTED**

*took* the ███████ with him. Masimo has presented no evidence that True Wearables

acquired the accused ███████ by improper means.

> **b.** ***The only evidence shows Dr. Lamego's independent derivation of the*** ███████ ***in the '158 Application.***

The only evidence concerning the development of the accused ███████

displayed in the '158 Application is that it was the product of independent derivation

over several years of intense research and development. Appx001382-001384. Dr.

Lamego's experience independently solving complex problems using sophisticated

hardware and software solutions dates back at least to his time as a Stanford Ph.D.

student studying electrical and electronics engineering. Appx001377-001384. While

developing the Oxxiom® device and iOS app, Dr. Lamego also derived ███████ for

determining standard physiological parameters. In doing so, he drew upon his

extensive experience with complex mathematics earned over the course of his career,

including experience as a professor of mathematics and engineering. *Id.* Dr. Lamego

was entitled to use his knowledge of mathematics in connection with the work of his

new company.

Masimo further asserts that True Wearables "never explained how [Dr.]

Lamego could have independent derived the TSS at [True Wearables], when it is

undisputed that he developed it years earlier at Cercacor." (Br. at 34.) This argument

misses the point. The TSS and its ███████ are mathematical equations and

are well-known to be useful in solving optimization problems. It stands to reason

Exhibit 13
-161-

**CONFIDENTIAL MATERIAL REDACTED**

that Dr. Lamego would use similar methods to solve optimization problems, drawing on his extensive background in mathematics, and derive the ▮▮equations▮▮ in the same way regardless of whether he did so while at Cercacor or at True Wearables. That Dr. Lamego used similar well-known mathematical methods to solve these problems at different times in his career is fully consistent with independent derivation.[3]

Masimo suggests that True Wearables should have submitted a declaration from Dr. Lamego regarding his independent derivation of the ▮▮equations▮▮ in the '158 Application. (Br. at 11.) But True Wearables was unable to share AEO information with Dr. Lamego under the protective order. Appx005763-005764. Masimo asserts it "authorized TW's counsel to share the identity of the TSS with Lamego." (Br. at 53.) But Dr. Lamego was only permitted to learn that Masimo was asserting a trade secret in a "▮▮equation▮▮ He was not permitted to view *any* of the TSS ▮▮equations▮▮ or any other contextual information. Appx005715; Appx005731-005735 (yellow and green highlighting indicating portions that Plaintiffs refused to allow Dr. Lamego to view). Masimo's assertion that Dr. Lamego was not prohibited from viewing ▮▮Name▮▮ & ▮Name▮ is similarly unavailing. Masimo not only never suggested as much until its response brief but has since made clear that any sharing

---

[3] While not expressly stated, Masimo's theory appears to be that if Dr. Lamego uses his mathematical knowledge and skill to solve a math problem while employed by Cercacor, then he can never use his mathematical knowledge to solve a same or similar math problem ever again. That is a result that could never find support in California law, which strongly favors employee mobility.

Exhibit 13
-162-

**CONFIDENTIAL MATERIAL REDACTED**

of Name & Name with Dr. Lamego cannot identify the relevance of the article, which effectively prevents any substantive discussion of the portion disclosing the adjective TSS equation . Appx005760-005762.

Masimo also asserts Dr. Lamego was permitted to "identify the signal processing workshops . . . as context for the TSS." (Br. at 53-54.) But the cited email exchanges do not support this statement. Those communications between counsel relate only to the confidentiality designation of Masimo's interrogatory answer and do not relate to the "workshops" containing the substance of the TSS. While Masimo eventually permitted Dr. Lamego to view the workshop documents, this did not occur until May 3, 2021, well *after* the district court had already granted Masimo's motion for preliminary injunction.

Masimo prevented Dr. Lamego from accessing sufficient information about Masimo's alleged trade secret to allow him to offer a declaration regarding his independent derivation of similar equations after founding True Wearables. Masimo's arguments about lack of a declaration ring hollow.

    2.    <u>California law expressly favors employee mobility; Dr. Lamego is permitted to use his knowledge at his new employer.</u>

Masimo does not contest that employees may rely on their general knowledge in their new employment. As shown above, all the evidence shows that Dr. Lamego used his general knowledge of math to derive the equations in the '158 Application. Dr. Lamego's independent derivation is expressly permitted under California's

Exhibit 13
-163-

**CONFIDENTIAL MATERIAL REDACTED**

robust law favoring employee mobility. *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332-33 (Cal. Ct. App. 2020); *Sargent Fletcher*, 110 Cal. App. 4th at 1670. Masimo fails to meaningfully distinguish True Wearables' cases.

Masimo's cited cases (Br. at 36-37) also support True Wearables' position. In *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2010), the court distinguished between an employee's general knowledge and specific trade secret information. The court recognized that categories of information in an employee's general knowledge could not form the basis for a misappropriation claim. *Id.* at 969-70. Here, Dr. Lamego relied on his general knowledge of mathematics to derive the ▇▇▇▇▇ in the '158 Application. There is no evidence of trade secret misappropriation.

*Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 462 (Cal. Ct. App. 1978), is distinguishable on its facts. There, the defendants did exactly what Dr. Lamego did *not* do: "immediately" after leaving their employment, they "began to write down from memory" the plaintiffs' trade secret customer list. The defendants presented no evidence of independent derivation. *See id.* In contrast, here, the only evidence shows that Dr. Lamego independently derived the ▇▇▇▇▇ in the Oxxiom® device over a period of several years. There is no evidence that he memorized the TSS and wrote it down immediately after leaving Cercacor. In fact,

Exhibit 13
-164-

**CONFIDENTIAL MATERIAL REDACTED**

Dr. Lamego did not even found True Wearables immediately; he worked for Apple Inc. for seven months after leaving Cercacor. Appx001443.

In *The Retirement Group v. Galante*, 176 Cal. App. 4th 1226 (Cal. Ct. App. 2009), the court found that there was *no evidence* of misappropriation and vacated the trial court's preliminary injunction. The plaintiff claimed the defendants must have been using the plaintiff's trade secret customer lists because the defendants were selling to the plaintiff's customers. *Id.* at 1240. The court rejected this argument because there was no evidence that the defendants downloaded the lists, thereby "undermining the factual basis" for the misappropriation claim. *Id.*

Finally, in *Jostens, Inc. v. National Computer Systems, Inc.*, 318 N.W.2d 691, 699 (Minn. 1982), the court determined the employee's knowledge of the alleged trade secret was "part of his own general skill and experience" and, accordingly, there could be no trade secret misappropriation. *Id.* at 702.

3. True Wearables presented evidence that Dr. Lamego independently derived the equations in the '158 Application.

Masimo asserts that True Wearables did not make its independent derivation argument to the district court. Masimo is wrong. True Wearables plainly raised this issue. Appx003077 ("Dr. Lamego independently developed Oxxiom® over many years."); Appx003078-003079 (same). The subject of Masimo's misappropriation claim, and the preliminary injunction on appeal, is the '158 Application, which is directed to aspects of the Oxxiom® device. True Wearables presented evidence and

Exhibit 13
-165-

argument addressing Dr. Lamego's independent development of the technology utilized in that device; there is no forfeiture. *See Brach*, 6 F.4th at 926.

## II. The District Court Erred in Determining the Balance of Equities Favored a Preliminary Injunction.

### A. The district court erred in determining that the injunction imposed no hardship on True Wearables.

U.S. patents are property rights. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999); *see also Cascades Projection LLC v. Epson Am., Inc.*, 864 F.3d 1309, 1316-17 (Fed. Cir. 2017) (Reyna, J., dissenting). Delaying issuance of True Wearables' patents necessarily impairs those rights. Masimo does not address True Wearables' case law. (*See* Br. at 39-41.) Masimo asserts only that True Wearables has not identified a specific infringer at this moment. However, delaying issuance of True Wearables' patents impairs True Wearables' property rights regardless of whether there is an identified infringer. The limitation on damages for patent infringement is six years. 35 U.S.C. § 286. If True Wearables identifies an infringer in the future, the injunction directly impacts its ability to recover damages. Moreover, the delay in issuance of the patents also impairs True Wearables' ability to leverage them in its business; for example, seeking licensing revenue or using them as collateral for financing arrangements.

Contrary to Masimo's assertion, the preliminary injunction *is* a mandatory injunction. (Br. at 42-43.) The portion of the district court's mandatory injunction at

Exhibit 13
-166-

**CONFIDENTIAL MATERIAL REDACTED**

issue on appeal requires True Wearables to: "***take all necessary steps*** before the PTO
to prevent publication of the '158 Application and any patent application that claims
priority to the '158 Application . . . ." Appx000018 (emphasis added). To preserve
its priority date, True Wearables is required to file serial requests for continuing
examination, or repeatedly file continuations and abandon any allowed applications,
until the injunction is lifted.[4] These are affirmative actions necessary to comply with
the injunction. While Masimo discounts these efforts, filing successive continuation
applications places an administrative burden not only on True Wearables, but also
on the USPTO.

> **B.    The district court erred in determining that Masimo would be
> harmed by publication of the '158 Application.**

The district court erred in determining that Masimo would suffer any harm by
the publication of the '158 Application. Masimo asserts the publication of the '158
Application will disclose its trade secret (Br. at 41), but the only portion of the TSS
the district court found to be present in the '158 Application is the ▮adjective▮ TSS
▮equation▮   It is undisputed that the ▮adjective▮ TSS ▮equation▮ was
published in 2008 in ▮Name▮ & ▮Name▮ which itself has since been cited by others
more than 1,200 times. Appx003118 (¶ 59); Appx003120-003121 (¶ 68). Allowing

---

[4] Masimo points out that True Wearables filed a request for continuing examination
after receiving a notice of allowance. (Br. at 27.) This was done to comply with its
obligation to disclose newly discovered prior art to the USPTO, not for the purpose
of delaying issuance of True Wearables' patents. Appx001078.

Exhibit 13
-167-

**CONFIDENTIAL MATERIAL REDACTED**

True Wearables' '158 Application, which only purportedly discloses the [adjective] TSS [equation] to publish would not disclose any unpublished portion of Masimo's trade secret, so there can be no harm to Masimo. *See Amgen Inc. v. Cal. Corr. Health Care Servs.*, 47 Cal. App. 5th 716, 742-43 (Cal. Ct. App. 2020).

Masimo's argument is also logically inconsistent. Masimo asserts the publication of the [adjective] TSS [equation] in [Name] & [Name] is not evidence that it is generally known. (Br. at 28-33, 48-51.) Yet Masimo also asserts that if the '158 Application is permitted to publish, its "trade secret will be disclosed and will no longer be a secret." (*Id.* at 41-42.) Masimo cannot have it both ways. If publication of the '158 Application would disclose Masimo's trade secret, then the publication of that trade secret years before in [Name] & [Name] *also* disclosed it. On these facts, the district court's finding that the balance of equities weighed in favor of Masimo was clearly erroneous.

## III. The District Court Erred in Denying True Wearables' Motion for Reconsideration.

### A. The district court made no threshold determination of materiality.

The evidence submitted on reconsideration shows that the [adjective] TSS [equation] was generally known due to its publication in an IEEE article. (Blue Br. at 50-52.) True Wearables submitted the newly obtained deposition testimony of three current or former Masimo Corp. or Cercacor employees, all of whom are or were engineers in the noninvasive monitoring industry. Appx005206-005215. This

Exhibit 13
-168-

deposition testimony confirmed that IEEE publications are regularly reviewed by electrical engineers working in that industry, and that they referred to them while developing algorithms at Cercacor.

Masimo asserts that the district court made some threshold determination that this newly discovered evidence was not material under Local Rule 7-18, and that True Wearables should also have appealed that alternative finding. (Br. at 54-55.) This argument is wrong. In determining that True Wearables did not present new material facts, the district court rendered a judgment on the merits of how the new facts presented are or are not material to the issue. *See* Appx000043. It is undisputed that the facts True Wearables presented were new—the depositions at issue took place after the district court decided the motion for preliminary injunction. The question of whether these facts were material was necessarily encompassed within the district court's merits determination.

### B. The district court's denial of the motion for reconsideration was erroneous.

The district court committed an error of law when it rejected True Wearables' new, material evidence concerning publication of the alleged trade secret and deemed publication evidence irrelevant to whether an alleged trade secret is generally known. Specifically, the district court acknowledged it was "familiar with how well known the articles at issue were." *Id.* But the district court refused to even consider those articles, or testimony concerning the same, in connection with

Exhibit 13
-169-

**CONFIDENTIAL MATERIAL REDACTED**

determining whether the alleged trade secret was generally known. As purported support for its refusal to consider any publication evidence in connection with determining whether the alleged trade secret was "generally known," the district court stated: "Defendants do not account for the CUTSA's legislative comment that '[i]nformation is readily ascertainable if it is available in trade journals, reference books, or published materials'" and that "[s]ince the California legislature intended for information contained in publications like those produced by IEEE to be readily ascertainable, Defendants' argument fails." Appx000042-000043. The district court plainly relied on its erroneous view of the law to supports its determination that the ▉adjective▉ TSS ▉equation▉ was not generally known. This error of law warrants reversal.

## CONCLUSION

The district court abused its discretion in granting Masimo's motion for a preliminary injunction requiring True Wearables to prevent publication of the '158 Application and its family. This Court should reverse this erroneous determination and vacate the portion of the preliminary injunction applicable to the publication of True Wearables' patent applications.

Exhibit 13
-170-

Dated: October 25, 2021                    Respectfully submitted,

                                By: /s/ Rachel Zimmerman Scobie
                                    Rachel Zimmerman Scobie
                                    Paige S. Stradley
                                    Michael A. Erbele
                                    MERCHANT & GOULD P.C.
                                    150 South Fifth Street
                                    Suite 2200
                                    Minneapolis, MN 55402
                                    (612) 332-5300

                                    Peter Gergely
                                    MERCHANT & GOULD P.C.
                                    767 Third Avenue, Suite 23C
                                    New York, NY 10017
                                    (212) 223-6520

                                    Ryan James Fletcher
                                    MERCHANT & GOULD P.C.
                                    1801 California Street
                                    Suite 3300
                                    Denver, CO 80202
                                    (303) 357-1670

                                    *Attorneys for Defendants-Appellants*
                                    *True Wearables, Inc. and Marcelo*
                                    *Lamego*

Exhibit 13
-171-

# CERTIFICATE OF CONFIDENTIAL MATERIAL

The foregoing document contains 9 unique words (including numbers) marked confidential.

☒      This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐      This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐      This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Dated: October 25, 2021

By: s/Rachel Zimmerman Scobie
    Rachel Zimmerman Scobie

*Attorneys for Defendants-Appellants*
*True Wearables, Inc. and Marcelo*
*Lamego*

Exhibit 13
-172-

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FEDERAL CIRCUIT RULE 32

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) and Fed. Cir. R. 32(b)(1) because:

   - this brief contains 6,989 words, excluding parts of the brief exempted by Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   - this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14-point Times New Roman font.

Dated: October 25, 2021

By: s/Rachel Zimmerman Scobie
Rachel Zimmerman Scobie

*Attorneys for Defendants-Appellants True Wearables, Inc. and Marcelo Lamego*

Exhibit 13
-173-