Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
baraa.Kahf@knobbe.com
Justin J. Gillett (Bar No. 298150)
justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE <br> ) <br> ) **REPLY MEMORANDUM IN** <br> ) **SUPPORT OF MASIMO'S** <br> ) **CONTINGENT MOTION TO** <br> ) **STRIKE AND REQUEST FOR** <br> ) **EVIDENTIARY SANCTIONS** <br> ) <br> ) Date:     February 6, 2023 <br> ) Time:     1:30 p.m. <br> ) Location:  Courtroom 10C <br> ) |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT .......................................................................................................1

    A.     Apple Now Embraces a Standard Under Which Masimo's Evidence Should Not Be Stricken.................................................1

    B.     If The Court Were To Adopt Apple's Prior Standard, Apple's Rebuttal Opinions Should Be Stricken ......................................3

        1.     Apple's Limitation-by-Limitation Inventorship Analysis ..............4

        2.     Apple's "Head Start" Advantage Opinions ...................................6

        3.     Testing Of An Apple Watch .........................................................7

        4.     Apple's Opinions That It Would Not Have ████████ ████████████████████.................................9

    C.     If The Court Were To Adopt Apple's Standards, Apple's Generally Known And Readily Ascertainable Opinions Should Be Stricken ....................................................................................10

        1.     Apple's New Generally Known References.................................10

        2.     Apple's New Business And Marketing Principles And Third-Party Products........................................................................13

        3.     If The Court Adopts Apple's Standard, Apple's Conduct Was Not Harmless ......................................................................13

    D.     If The Court Were To Adopt Apple's Standard, The Court Should Impose Evidentiary Sanctions ......................................14

        1.     Apple Failed To Produce ██████████████ ████████████ Until After Fact Discovery Closed.................14

        2.     If The Court Adopts Apple's Standard, Apple's Production Was Not Substantially Justified .................................15

        3.     Apple's Arguments Show Harm Can Be Cured...........................17

        4.     The Requested Sanction Is Just ...................................................18

III.   CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

**Page No(s).**

*Apple v. Samsung,*
    2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ................................................ 3

*Baker v. SeaWorld Ent., Inc.,*
    423 F. Supp. 3d 878 (S.D. Cal. Nov. 18, 2019) .................................... 3, 4

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
    2020 WL 11273048 (N.D. Cal. July 17, 2020) ........................................ 6

*DataQuill, Ltd. V. Handspring, Inc.,*
    2003 WL 25696445 (N.D. Ill. Dec. 19, 2003) ........................................ 11

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.,*
    233 F.R.D. 338 (S.D.N.Y. 2005) ............................................................ 14

*In re Heritage Bond Litig.,*
    223 F.R.D. 527 (C.D. Cal. 2004) ............................................................ 19

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.,*
    340 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................... 11

*Life Techs. Corp. v. Biosearch Techs., Inc.,*
    2012 WL 4097740 (N.D. Cal. Sept. 17, 2012) ....................................... 12

*Pavo Sols. Llc v. Kingston Tech. Co.,*
    2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) ......................................... 3

*Payne v. Exxon Corp.,*
    121 F.3d 503 (9th Cir.1997) .................................................................. 19

*Rosales v. FitFlop USA LLC,*
    2013 W 12416060 (S.D. Cal. Jan. 4, 2013) ............................................ 14

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson,*
    2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) (Selna, J.) ........................ 3

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

## OTHER AUTHORITIES

FRE 703 ..................................................................................................... 8

Rule 26 ...................................................................................................... 2

Rule 37 .................................................................................................... 17

# I.  INTRODUCTION

Apple attempts to preserve its own expert opinions by embracing a disclosure standard very different from the one it urged, and still urges, the Court apply to Masimo. Apple previously argued that all expert theories must be disclosed "fully formed" during fact discovery.  Dkt. 1053-1 at 4.  Apple also argued that all documents on which an expert relies must be produced during fact discovery and "specifically named" in an interrogatory response.  Dkt. 1013-1 at 2.  Apple does not dispute its challenged expert opinions would fail these extreme requirements.

Instead, Apple now claims it "never argued that any opinion, theory or supporting facts not disclosed during fact discovery must be struck."  Opp'n at 3 (cleaned up).  Apple similarly claims it never argued that "theories disclosed during fact discovery should be excluded if experts provide additional detail in their reports."  *Id*. at 4 (cleaned up).  Regardless of what Apple argued in other briefs, Apple's newly articulated standard in its opposition aligns with the standard Masimo consistently proposed should apply to both sides.  Under the standard that Apple articulates in its opposition, the Court should not strike any of the Masimo material that Apple seeks to strike.

However, if the Court were to apply the standard Apple articulated in its motions to strike, the Court should strike Apple's opinions, theories, and documents discussed herein.  Under that standard, the Court should also bar Apple from arguing or presenting evidence that Apple did not use or acquire Masimo's Business And Marketing Plans And Strategies ("B&M") and Strategies For Interacting With Hospitals ("HI") Trade Secrets.

# II.  ARGUMENT

## A.    Apple Now Embraces a Standard Under Which Masimo's Evidence Should Not Be Stricken

Apple's Opposition repudiates the arguments it asked the Court to apply to Masimo's experts in multiple motions to strike.  Apple now embraces a far more lenient (and correct) standard.  For example, Apple now recognizes that 'an expert should

conduct an independent analysis based on his or her own knowledge.'" Opp'n at 1 (quoting Dkt. 1045-1 at 8). Apple similarly claims that limiting experts to theories and facts disclosed during fact discovery "would prevent an expert from conducting independent research." *Id.*, 2:13-14. Although Masimo agrees, this directly contradicts Apple's argument that Masimo needs to have disclosed all of its damages expert's opinions "fully formed" in Masimo's interrogatory responses during fact discovery.

Apple now argues that it is harmless that Apple "did not anticipatorily disclose every document and specific example cited by its experts." *Id.* at 15:23-24. But this also contradicts its argument concerning Kinrich. Specifically, Apple argued Kinrich cannot rely on certain material Masimo did not anticipatorily disclose before the fact discovery cutoff. Dkt. 956-1 at 11-12; *see also* Dkt. 1116-1 at 17-18 (Apple's motion to exclude under Rule 26(e)).[1]

Apple now argues that any late disclosure is harmless where Masimo "had a full opportunity to depose each of Apple's experts" and Masimo did not identify "any additional discovery they would have sought." *Id.*, 10, 20. But Apple had an opportunity to depose Kinrich. Apple also refused to identify any specific additional discovery Apple would have sought had Kinrich's allegedly late disclosures been provided earlier. Apple also argues that Apple's late disclosure is harmless because Masimo was "able to file a rebuttal report." *Id.* at 15. But Apple similarly filed a rebuttal report to Kinrich and still argued for exclusion of Kinrich.

Apple also now argues that it did not engage in "intentional concealment, negligence, or gamesmanship." *Id.* at 18. But Apple never attempted to show that Masimo engaged in "intentional concealment, negligence, or gamesmanship."

Apple's arguments opposing Masimo's contingent motion to strike show the Court should not grant Apple's motions to strike.

---

[1] Apple's contradictory argument is also based on an improper comparison to Masimo. As explained in Masimo's Opposition to exclude Kinrich's Opinions, his opinions are fully supported based on facts disclosed to Apple in discovery.

**B.** **If The Court Were To Adopt Apple's Prior Standard, Apple's Rebuttal Opinions Should Be Stricken**

Apple attempts to distinguish the material Masimo disclosed in its opening reports from the material Apple disclosed in its rebuttal reports by arguing a far more lenient standard applies to rebuttal reports. According to Apple, rebuttal reports are allowed to "offer[] independent opinions or utiliz[e] other methodologies" without disclosing any information about those opinions or methodologies in discovery. Opp'n at 5. Apple relies on two cases, *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016) (Selna, J.) and *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 896 (S.D. Cal. Nov. 18, 2019). But both cases addressed whether certain opinions should have been disclosed in *opening reports* rather than *rebuttal* reports. *TCL*, 2016 WL 7042085 at *10 ("proper expert rebuttal cannot explore new areas not raised in initial reports"); *Baker*, 423 F. Supp. 3d at 896 ("A rebuttal report is not the time to change methodologies to account for noted deficiencies") (internal quotation marks omitted). Neither case addressed whether rebuttal reports can include opinions that were never disclosed during fact discovery.

Moreover, in another case, Apple successfully moved to strike rebuttal non-infringement opinions because Samsung did not disclose them in response to Apple's contention interrogatories. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 3155474 at *26-27 (N.D. Cal. Aug. 2, 2012); *see also Pavo Sols. Llc v. Kingston Tech. Co.*, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) ("A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of non-infringement for the first time would forfeit the benefits of contention interrogatories.").

As Masimo explained, if anything, new opinions disclosed in rebuttal reports are *more* prejudicial because the schedule does not allow a reply expert report. *See* Mot. at 12. Apple ignores this argument. Apple also compounds that prejudice by simultaneously moving to strike any portion of Masimo's expert's summary judgment declaration that did not copy verbatim the expert's report. *See* Dkt. 1151-1 at 13-14.

According to Apple's arguments, experts can never respond to information disclosed for the first time in rebuttal reports. The Court should reject Apple's claim that Apple has *carte blanche* to introduce new opinions for the first time in rebuttal reports that Apple never disclosed in discovery. Indeed, Apple's claim contradicts Apple prior arguments that all expert theories must be disclosed "fully formed" during fact discovery.

Masimo addresses Apple's specific arguments about each new opinion in turn below.

### 1.   Apple's Limitation-by-Limitation Inventorship Analysis

Apple does not dispute that it disclosed only a patent-by-patent analysis of inventorship during fact discovery. Nor does Apple dispute that its experts provided a limitation-by-limitation analysis of inventorship for the first time in rebuttal expert reports. *See* Opp'n at 6. Apple argues its non-disclosure was permissible because Masimo's contention interrogatory allegedly sought a limitation-by-limitation analysis of only *Apple* employees' contributions. *Id.* at 5. Apple argues Masimo did *not* seek a limitation-by-limitation analysis of *Masimo* employees' contributions. *Id.* Apple is incorrect.

Masimo's interrogatory indeed requested all facts relating to contributions by the named Apple inventors. But Apple ignores that the interrogatory also requested the facts relating to "the contributions of *any other persons* to the conception and reduction to practice of such subject matter, and identifying all evidence allegedly corroborating such conception and reduction to practice." Ex. 3, 14:3-12.[2] Thus, it requested all facts "relating to" (e.g., supporting or rebutting) the contributions of "other persons" (e.g., Masimo employees or third parties).

Apple provided only a patent-by-patent response. *See e.g.*, Ex. 3 at 49-67, 68-106. Apple's patent-by-patent response briefly addressed contributions by the alleged

---

[2] All numbered exhibits are attached to the Declarations of Daniel P. Hughes. All lettered exhibits are attached to the Declaration of Nora Passamaneck. All emphasis is added unless otherwise noted.

1   Apple inventors and asserted Masimo had not established that Masimo employees are
2   inventors of the disputed patents.  *Id.*  Apple provided no limitation-by-limitation
3   analysis.  *Id.*

4        Apple's response confirmed Apple understood the interrogatory sought Apple's
5   contentions regarding the contributions of Masimo employees.  Apple cannot now
6   pretend it did not know the interrogatory sought Apple's contentions about Masimo
7   employees.   The Special Master's order removed any potential doubt that the
8   interrogatory sought a limitation-by-limitation rebuttal to Masimo's contention that
9   Masimo employees invented the Disputed Patents.  Special Master Order No. 10 warned
10  Apple:

11        If Apple otherwise decides that it need not prove inventorship of a
12        particular limitation or rebut a particular inventorship argument made by
          Plaintiffs on a limitation-by-limitation basis, that is Apple's prerogative,
13        and Apple assumes the associated risk of that choice at this stage.

14  Dkt. 891 at 18:5-8.  When Apple failed to provide any limitation-by-limitation rebuttal
15  during discovery, Apple "assume[d] the associated risk of that choice."  Indeed, Apple's
16  own case confirmed that "[r]ebuttal testimony cannot be used to advance new arguments
17  or new evidence."  *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 896 (S.D. Cal.
18  Nov. 18, 2019) (cleaned up).   Thus, Apple's experts offered hundreds of pages of
19  limitation-by-limitation opinions regarding contributions by Masimo employees and
20  third-parties that Apple withheld throughout fact discovery.

21        As for substantial justification, Apple recycles its argument that Masimo's
22  interrogatory related only to "contributions of Apple's employees."  Opp'n at 7. As
23  discussed above, this is incorrect.  Apple also argues its disclosure was harmless because
24  Apple should not have to disclose "fine-grain information" in interrogatory responses
25  and Masimo deposed Apple's experts.  *Id*.  Masimo completely agrees that interrogatory
26  responses should not have to provide "fine-grain information" and that depositions can
27  explore those details.  But Apple has consistently argued the opposite in its motions to
28  strike.  If the Court adopts the standard that Apple seeks to apply against Masimo, then

Apple's limitation-by-limitation analysis must be struck.

### 2.   Apple's "Head Start" Advantage Opinions

Apple argues its head start opinions are not late because it had to disclose only the "factors" on which its experts would later rely.  Opp'n at 8.  Masimo agrees that fact discovery need only put the other party on notice of the theories and facts on which a party intends to rely.  It is then incumbent on the other party to explore the details in further discovery.  But, once again, Apple argues elsewhere that the Court should strike Masimo's damages opinions because Masimo purportedly did not disclose "fully formed" damages opinions during fact discovery.  Dkt. 1116-1 at 17-18.  The Court should not endorse Apple's double standard.  Apple cannot argue it has to disclose only "factors," but Masimo must disclose "fully formed" opinions.

Further, Apple does not even attempt to identify the "factors" that Apple allegedly disclosed in fact discovery.  Opp'n at 8.  That is because Apple did not disclose any such supposed factors. ███████████████████████████████████████████████████ *See, e.g.*, Ex. 12 at 70, ¶¶137, 189, 232, 270, 317.  Apple did not disclose this "factor" in its interrogatory response.  Ex. 3 at 126:5-20.  If Apple is suggesting that disclosing the broad category "head start" was enough, then it has no basis to complain about Masimo's far more detailed damages disclosures.

Apple suggests that Apple's failure to follow its own standard is justified because "Plaintiffs have the burden to show damages."  Opp'n at 8.  But "[t]he Federal Rules 'do not require the party who carries the burden on an issue to make a prima facie case before it is entitled to discover rebuttal information.'"  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 2020 WL 11273048, at *1 (N.D. Cal. July 17, 2020).

Apple argues its late disclosure was justified because Masimo allegedly provided "no information" about Masimo's head start arguments until expert discovery.  Opp'n at 8.  Specifically, Apple complains that Masimo did not provide its trade secret development "timeline" in response to Apple's damages interrogatories.  *Id.* at 9-10.

Those accusations are false.  Masimo explained its development timeline in response to the Apple interrogatory that specifically asked Masimo to explain how it developed its trade secrets.  *See, e.g.*, Ex. 39 (Masimo's interrogatory response providing eighty pages of explanation on how Masimo developed its trade secrets over eight supplements). Indeed, Masimo explained its development of many of its trade secrets as early as ***October 2020***.  Apple's experts relied on this very information, which Masimo disclosed long ago, to calculate head start times.  Ex. 17, Appendix B; Ex. 16 (referencing internal Ex. C at 2).  Regardless, Apple has claimed it does not need to provide "fine-grain information" in fact discovery.  If Apple does not need to provide fine-grain information, neither does Masimo.

Finally, Apple argues its lack of disclosure was harmless because Masimo "had a full opportunity to depose each of Apple's experts."  Opp'n at 10.  Again, Masimo agrees that a deposition should cure any purported prejudice.  Depositions are the appropriate place for the parties to explore expert analysis.  But Apple has repeatedly argued that depositions of Masimo's experts cannot cure Apple's supposed prejudice.  *See, e.g.*, Dkt. 989-1 at 17; Dkt. 1054 at 3-4.  Apple cannot have it both ways.  If the Court adopts Apple's standard, Apple's head start opinions must be struck.[3]

### 3. <u>Testing Of An Apple Watch</u>

Apple admits that its expert Warren directed ███████████████████ ████████████████████████████ for the purposes of this litigation.  Opp'n at 11-12. Apple also admits that Warren discussed ███████ with the employee in an unrecorded conversation.  *Id.*  Apple claims that Warren can rely on an Apple employee's litigation-driven analysis "without Apple first disclosing the employee in an interrogatory response, or providing a declaration or expert disclosure."  Opp'n at 11.  Yet again,

---

[3] Apple repeatedly suggests its discovery failures were harmless because Masimo delayed raising the issue with Apple.  Opp'n at 10, 12.  But Apple recently argued its much longer delay on a different motion was irrelevant because it moved within the time permitted by the Scheduling Order.  Dkt. 1080-1 at 8.  Masimo also properly brought this motion in accordance with the Court's Scheduling Order.

1   Masimo agrees that experts may properly rely on any facts or data on which experts in
2   that field would reasonably rely.  *See* FRE 703.  However, Apple has moved to strike
3   opinions from Masimo's expert Kinrich that rely on a Masimo engineer's ███████
4   ███████████████████   *See* Dkt. 1116-1 at 5-6.  Once again, Apple cannot have it
5   both ways.  Either ***both*** parties' experts can rely on employee analyses and conversations
6   or neither can do so.

7        Apple argues that "Apple had no way of knowing until Madisetti's report that the
8   testing would be necessary."  Opp'n at 11.  Apple suggests that, before Madisetti's
9   expert report, Masimo had never disclosed that ████████████████████████
10  █   *Id.*  Not so.  Masimo disclosed that ██████████████████████████████
11  before the close of fact discovery.  *See* Ex. 40 at 12-14 ███████████████████
12  ██████████████████████████   Thus, Apple knew of Masimo's
13  allegations about ████   during fact discovery and could have provided Apple's
14  explanations as to why ████   was allegedly valueless during fact discovery as well.

15       Finally, Apple argues that its expert's reliance on unrecorded conversations and
16  ████████   prepared for litigation is substantially justified because it is "routine under
17  a normal expert discovery approach."  Opp'n at 12.  Again, Masimo agrees that experts
18  from ***both*** sides should be allowed to rely on such information and that doing so is
19  "routine."  Thus, Kinrich's reliance on the same type of analysis is also routine and
20  should not be struck.  Whatever standard the Court adopts should apply to both sides.

21       Apple further argues that its expert's reliance on unrecorded conversations and
22  ████████   prepared for litigation is harmless because Masimo deposed Warren.  But
23  Apple also deposed Kinrich on conversations Kinrich had with Masimo employees.
24  Unlike Apple, however, Masimo provided declarations from the Masimo employees that
25  Kinrich spoke to ***and*** offered to make them available for depositions.  Thus, Masimo
26  went above and beyond what Apple claims is required.  If Warren's reliance was
27  harmless, Kinrich's reliance must also be harmless.

28

**4.    Apple's Opinions That It Would Not Have** ███████████
███████████

Apple argues that its expert could rely on an unrecorded "interview" with an Apple employee because the employee "provided the same kind of factual information that a lay witness would offer on the stand." Opp'n at 13. As discussed above, Masimo agrees that **both** sides should be able to rely on such interviews or conversations. But Apple moved to strike Masimo's expert Kinrich for relying on employee interviews that provide factual information. Dkt. 1116-1 at 1, 9, 13 (complaining that Kinrich cites "to an unrecorded 'conversation'"). Apple's position on this motion cannot be squared with the positions it took in its motions to strike. The same rule should apply both ways.

Apple claims its disclosure is appropriate because the ███████████
███████████████████████████████████ Opp'n at 12. Not so. The Court found certain "fully-formed" theories were not disclosed. Dkt. 1031 at 10.[4] But the Court acknowledged Masimo disclosed ███████████
███████████
*Id.* at 9. Apple knew during discovery that Masimo contended Masimo ███████
███████ *See* Ex. 1 at 15 ███████████████████████
███████████████████████
███████████████████████
███████████ Further, Masimo's CEO, Joe Kiani, explained this in his deposition. Ex. 41 at 177:22-180:25. Apple had notice of Masimo's contentions.

Additionally, many of Apple's expert's opinions are not limited to the ████
█████ Instead, the opinions are related to whether Apple would have ████
███████████ *See* Ex. 17 at 56 ███████████████
███████████████████████████
████ Apple has been aware of Masimo's allegation regarding ███████████

---

[4] Masimo contends it properly disclosed its theory of harm based on lost module sales. *See* Dkt. 1164-1 at 4-6.

███████████████ Ex. 1 at 11 ████████████

████████████████████████████████████████

███████████ ; *see also* Dkt. 296-1 at 6 █████████████

████████████████████████████████████████

██████

In a footnote, Apple argues Webster's opinions on business deals are "applicable to Plaintiffs' lost profits, unjust enrichment, and reasonable royalty theories," but that Masimo moved to strike only Webster's opinions on lost profits.  Opp'n at 12.  Not so. Masimo moved to strike ████████████████████████████████████████

████████████████ Mot. at 10; *see also* Dkt 1122 (Notice of Motion) (moving to strike the theories and opinions "regarding a business deal with Masimo offered by Apple's expert Webster"); *id.* (Proposed Order) (moving to strike "[t]he theories and opinions in the expert report of Webster regarding a business deal with Masimo).  Masimo's motion applies to Webster's opinions on business deals, regardless of how Webster used those opinions.

C. **If The Court Were To Adopt Apple's Standards, Apple's Generally Known And Readily Ascertainable Opinions Should Be Stricken**

1. **Apple's New Generally Known References**

Apple does not deny that it identified during fact discovery only a small fraction of the generally known references cited by Apple's experts.  Opp'n at 13-15.   Apple claims that it was "entirely proper" for Apple's experts to rely on hundreds of new references because "experts should conduct independent analyses and not serve as mere mouthpieces for attorneys, and provide opinions developed through the expert's own knowledge, skills, and investigation."  Opp'n at 13-14 (cleaned up).  Yet again, Masimo agrees that experts should be able to conduct their own opinions and expand upon what parties disclosed in responses to their interrogatories.  But Apple is taking the opposite position on its motions to strike.  *See, e.g.*, Dkt. 1116-1.  Apple cannot claim Masimo must disclose its theories in exacting detail during fact discovery while Apple's experts

can present entirely new theories that rely on previously undisclosed documents and facts.  Applying Apple's own standard, the Court should strike the myriad portions of Apple's expert reports that rely on these late-disclosed references.

Apple suggests the timing of its disclosure was proper because the references were publicly available and identified by Apple's expert.  Opp'n at 13-14.  But relying on public references does not excuse Apple of its disclosure obligations under the Federal Rules.  *See Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd*., 340 F. Supp. 3d 934, 946 (N.D. Cal. 2018) ("a party may not use an expert report to introduce […] new prior art references not disclosed in the parties' infringement contentions or invalidity contentions.").  If anything, the public availability of the references shows that Apple should have identified and produced them long ago.

Apple cites only one case, but that patent case is easily distinguishable.  Opp'n at 14 (citing *DataQuill, Ltd. V. Handspring, Inc.*, 2003 WL 25696445, at *1 (N.D. Ill. Dec. 19, 2003)).  In *DataQuill*, the court found it harmless for an expert to rely on "several" new prior art references disclosed after fact discovery.  *DataQuill*, 2003 WL 25696445, at *1.  Many of these references appeared on the face of the patent at issue.  *Id.*  Here, Apple is relying on hundreds of new references that were never disclosed or produced in fact discovery.

Next, Apple complains that Masimo misled the Court by arguing Apple identified a hundred new references three weeks after the close of fact discovery.  Opp'n at 14.  But that is exactly what Apple did.  Fact discovery ended on August 12. Dkt. 627.  Apple identified the references on September 6.  The parties did not extend the close of fact discovery.  Instead, they agreed to extend the date to "[s]erve supplements [sic] contention interrogatories with information learned through the close of fact-discovery."  *See* Dkt. 627.  Apple itself argued that information Masimo produced and identified in interrogatories after August 12 but before September 6 was untimely because it was

-11-

1    disclosed "after the close of fact discovery." Dkt. 956-1 at 1.[5]  And Apple's experts
2    identified hundreds of additional references for the first time in their expert reports on
3    September 23.  Masimo maintains that the parties can and should work together to
4    resolve timing disputes and have a fair trial on the merits.  But the Court should not
5    permit Apple to hold Masimo to a standard that Apple does not follow.

6         Next, Apple quibbles over how Masimo counted new references, complaining that
7    a reference should count only once even when Apple uses different portions of the
8    reference for different trade secrets.  *See* Opp'n at 14.  As Apple acknowledges, Masimo
9    explained how it counted references to be transparent.  Dkt. 1122-3, App'x A, B.
10   Masimo counted references by trade secret because that is how Apple's experts used the
11   references in their opinions.  Regardless, Apple does not recalculate the number of
12   references under its proposed counting method.  That is because Apple's method makes
13   little difference.  Apple still "disclosed over 350 of the references for the first time in its
14   expert reports" and identified about 70 new references after the close of fact
15   discovery. Mot. at 8.  No matter how the references are counted, Apple's experts cited
16   hundreds of new references.

17        Apple also contends Masimo ignores that "dozens of references cited by Apple's
18   experts were simply background."  Opp'n at 14-15.  But Apple cites only ***one*** example
19   located in a section titled "Generally Known And Readily Ascertainable Marketing
20   Principles And Strategies That Encompass The Alleged Business And Marketing Trade
21   Secrets[.]"  *See id.*; Ex. 14 at 38.  Thus, Apple's expert relied on this supposedly
22   "background" reference to assert the Business and Marketing Trade Secrets were
23   generally known.  Labelling a reference as "background" does not help Apple.  *See Life*
24   *Techs. Corp. v. Biosearch Techs., Inc*., 2012 WL 4097740, at *2 (N.D. Cal. Sept. 17,
25   2012) (rejecting argument that references could be disclosed late if they were
26   "background").

27
28   _____
     [5] Apple also successfully argued that Masimo improperly disclosed a new theory too late
     even though Masimo disclosed it months before fact discovery closed.  *See* Dkt. 896.

                                        -12-

2.     **Apple's New Business And Marketing Principles And Third-Party Products**

Apple distorts Masimo's arguments about Kivetz's opinions.  Contrary to Apple's assertion, Masimo never argued that Kivetz asserted for the first time that Masimo's "B&M trade secrets were generally known or readily ascertainable based on 'Marketing Principle[s].'"  Opp. at 15.  Masimo argued that Kivetz identified six new *specific* "marketing principles" in his report.  *See* Mot. at 8; Appendix B.  For example, Masimo argued that Kivetz identified the marketing principle of ███████████████ ██████ for the first time.  *See* Mot. at 8-9; Appendix B.  Apple does not claim it disclosed the specific marketing principles on which Kivetz relies.  Instead, it claims only that it disclosed that its experts would rely on marketing principles, generally.

Apple also argues it disclosed "a theory that the B&M secrets were generally known or readily ascertainable based on 'third-party products.'"  Opp'n at 15.  Apple points to its interrogatory responses █████████████████████████ *Id.*  But those are *not* the third-party product opinions that Masimo moved to strike.  *See* Mot. at 8; Appendix B.  Instead, Masimo moves to strike Kivetz's reliance on *other* third-party products that Apple never disclosed in fact discovery, such as ████████████ Mot. at 8; Appendix B; Ex. 14 at 110-21.  Apple does not claim it disclosed products such as ██████████ during fact discovery.

3.     **If The Court Adopts Apple's Standard, Apple's Conduct Was Not Harmless**

Apple argues its failure to "disclose every document and specific example cited by its experts is harmless" because Plaintiffs "were able to file a rebuttal report and could depose Apple's experts."  Opp'n at 15.  Masimo again agrees that parties need not disclose "every document and specific example cited by its experts" in discovery.  But Apple has taken the opposite position in moving to strike Kinrich.  Apple argued the Court should strike Kinrich's entire lost profits theory because Kinrich relied upon updated versions of previously disclosed cost data that Masimo produced a few days

-13-

after the close of fact discovery.  *See* Dkt. 1116-1 at 17-18.  Apple claims it was prejudiced even though Apple deposed a Masimo fact witness about those costs, served a rebuttal report, and deposed Masimo's expert.  Apple's assertion that Masimo suffered no prejudice, but Apple did, is frivolous.

**D.**     **If The Court Were To Adopt Apple's Standard, The Court Should Impose Evidentiary Sanctions**

       **1.**     **Apple Failed To Produce** ██████████████████████ **Until After Fact Discovery Closed**

Apple concedes that it ███████████████████████████████ ███████████████████ Opp'n at 16.  Thus, Apple had an obligation to produce ███ ██████ during fact discovery.  Apple did not do so.  Apple's concession also means that it had control over ████████████████████████████ ███████████████████████████████████████

Apple argues that it did not have sufficient control over ████████████ ██████████████████████████ Opp'n at 16-17.  As explained in Masimo's motion, Apple is wrong.  *See* Mot. at 17-18.  Regardless of whether Apple had possession, custody, or control of ███████████████ Apple had a duty to request such documents from O'Reilly.  *See Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.,* 233 F.R.D. 338, 341-42 (S.D.N.Y. 2005) (at the very least, a corporation must ask former employee for documents before asserting they have no control over documents in the former employee's possession, including personal journals); *see also Rosales v. FitFlop USA LLC,* 2013 W 12416060, at *6 (S.D. Cal. Jan. 4, 2013) (party must use best efforts to obtain cooperation from former employees to produce responsive discovery from personal e-mail).  Indeed, as set forth in Masimo's motion, Apple represented it would seek such information.  Mot. at 14.

Apple attempts to blame Masimo for not subpoenaing O'Reilly to obtain the ████████ Opp'n at 2.  But the parties have not been subpoenaing each other's employees.  Rather, both parties agreed to search for and produce documents from their

-14-

1   employees.   Indeed, Apple represented to Masimo that ███████████████████

2   ████████████████████████████████████████   Ex. 22 at 1.

3       Apple identifies ████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ██████████      Masimo reasonably relied upon Apple's agreement to search for and

8   produce documents.   ████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████   Apple cannot blame Masimo

11  for Apple's failure to investigate.

12       Moreover, by Apple's own logic, ████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████

16       Regardless, Apple's arguments about its control, or lack of control, over the

17  ██████████████████████   are irrelevant.   Apple admits that it had control over ████

18  ██████████████   and therefore should have produced them.

19       2.     **If The Court Adopts Apple's Standard, Apple's Production Was Not**

20               **Substantially Justified**

21       Apple claims it acted "as quickly as possible" to produce ██████████████   after

22  counsel learned of them.   Opp'n at 18.   Apple asks the Court to excuse its two-year delay

23  by asserting Apple did not "engage in intentional concealment, negligence, or

24  gamesmanship" and "conducted a reasonable and diligent search for documents."   Opp'n

25  at 18-19.   In support, Apple first claims it ██████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

1

2

3

4     Apple also points to O'Reilly's deposition to justify its failure to produce the

5

6

7

8

9     Apple also suggests its search efforts did not uncover

10

11

12

13

14

15

16     Apple also argues that its failure to produce

17

18

19

20

21     Apple's remaining justification attempts to shift blame to Masimo.  Apple

22 attempts to justify its failings because Masimo produced ▮▮▮▮ after fact discovery

23 closed.  Opp'n at 18.  But Masimo's production says nothing about whether the timing

24 of Apple's production is substantially justified.

25

26

27

28

1

2

3

4

5                                           Masimo believes that

6 any harm from productions of ▮▮▮▮▮▮▮ after fact discovery can be cured if the

7 parties work cooperatively.  But under Apple's standard, the harm from producing the

8 ▮▮▮▮▮▮▮▮ cannot be cured.

9       **3.**        **Apple's Arguments Show Harm Can Be Cured**

10       Apple argues that its late production is harmless because Apple "agreed to *every*

11 form of relief that Plaintiffs requested."  Opp'n at 19 (emphasis in original).  Apple can

12 make this argument only because Masimo cooperated in good faith to mitigate the harm

13 that Apple caused.  In contrast, Apple steadfastly refused to even consider working with

14 Masimo to try to mitigate any supposed harm that Apple suffered.  Masimo repeatedly

15 requested that Apple identify what discovery it needed to mitigate any harm.  Dkt. 980-3

16 at 613-14.  Apple repeatedly refused to identify any discovery and claimed that its harm

17 could not possibly be cured.  *Id.* at 612-13.  Apple's arguments here demonstrate the

18 opposite—harm can be cured.  The Court should not reward Apple's double standard.

19       Apple also argues Masimo suffered no harm because Apple ▮▮▮▮▮▮

20

21

22

23       Finally, Apple complains that Masimo did not identify with specificity the

24 additional discovery it would have sought.  Opp'n at 20.  But Apple has repeatedly

25 refused to identify what specific discovery it would have sought in its own motions under

26 Rule 37.  And Apple argued the party seeking Rule 37 exclusion does not have to

27 identify additional discovery.  Dkt. 989-1 at 10.  Regardless, Masimo's motion ***did***

28 explain what it would have done differently.  For example, Masimo would have

questioned other Apple witnesses about ████████████████████████

████████████████████████████████ Mot. at 19.

### 4.     The Requested Sanction Is Just

Apple contends that a sanction is not appropriate.  Opp'n at 21.  Under Apple's standard, an evidentiary sanction is appropriate because it is the only remedy that would address Apple's production of key incriminating documents after fact discovery.

Apple argues that the requested sanction is not narrowly tailored because it precludes "Apple from mounting *any* defense" to Masimo's allegations of use and acquisition of the B&M and HI trade secrets.  Opp'n at 21 (arguing it should be able to explain its use of ████████████████████ of the trade secrets).  This is incorrect.  As Masimo explained in its opening brief, the requested sanction would not prevent Apple from raising defenses or disputing elements of Masimo's cause of action other than misappropriation.  Mot. at 19-20.  For example, Apple could attempt to show the trade secrets lack value because they are generally known in the relevant industry or Masimo did not engage in reasonable efforts to maintain secrecy of its trade secrets.

Apple also argues sanctions are inappropriate because Apple has not engaged in willfulness, fault, or bad faith.  Opp'n at 22.  But Apple is at fault for its discovery failures. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██

Moreover, in evaluating willfulness, fault or bad faith, courts consider discovery

1    misconduct throughout the case.  *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th
2    Cir.1997).  Here, Apple has engaged in discovery misconduct.  *See* Dkt. 82 at 2-3
3    (describing Apple's repeated refusal to comply with Court's schedule and orders); Dkt.
4    92 at 2 (admonishing Apple for repeatedly refusing to produce documents); Dkt. 966-3,
5    Ex. 25 at 29:11-13 and 31:7-8 (Judge Early questioning Apple's counsel "Did you lie to
6    me?" and "how am I supposed to trust anything you say now?").

7         Apple argues *In re Heritage Bond Litig.*, 223 F.R.D. 527 (C.D. Cal. 2004), is
8    distinguishable because it involved more severe misconduct.  Opp'n at 21-22.  But Apple
9    argued that merely producing an updated version of a document produced in discovery
10   justifies striking Masimo's entire lost profits theory.  Under that strict standard, Apple's
11   delay in producing O'Reilly's notebook is also sanctionable.

### III.  CONCLUSION

13        Apple's inconsistencies are glaring.  Masimo agrees with the legal standards that
14   Apple now proposes in response to this motion.  Those legal standards allow, for
15   example, experts to expound upon theories disclosed during fact discovery.  Under those
16   correct legal standards, the Court should deny Apple's pending motions to strike.

17        If the Court were to apply Apple's original incorrect standards, however, the
18   Court should (1) strike Apple's expert opinions disclosed after fact discovery and (2)
19   issue evidentiary sanctions barring Apple from arguing or presenting evidence that it did
20   not use or acquire Masimo's B&M and HI trade secrets.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  January 23, 2023                      By: */s/ Daniel P. Hughes*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Justin J. Gillett

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,283 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].


Dated:  January 23, 2023          By: */s/ Daniel P. Hughes*
                                       Joseph R. Re
                                       Stephen C. Jensen
                                       Benjamin A. Katzenellenbogen
                                       Perry D. Oldham
                                       Stephen W. Larson
                                       Mark D. Kachner
                                       Baraa Kahf
                                       Adam B. Powell
                                       Daniel P. Hughes
                                       Justin J. Gillett

                                       Attorneys for Plaintiffs
                                       MASIMO CORPORATION and
                                       CERCACOR LABORATORIES, INC.

56978446