1  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
     thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
     joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
      HALE AND DORR LLP
12  1875 Pennsylvania Ave NW
    Washington, DC 20006
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14

15  [Counsel appearance continues on next page]

    *Attorneys for Defendant Apple Inc.*
16

17  ## UNITED STATES DISTRICT COURT
    ## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

18

19  MASIMO CORPORATION,           |  CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
20  CERCACOR LABORATORIES, INC.,  |  **APPLE'S REPLY IN SUPPORT OF
    a Delaware corporation,        |  ITS MOTION FOR PARTIAL
21                                 |  SUMMARY JUDGMENT ON
                Plaintiffs,        |  PLAINTIFFS' TRADE SECRET
22                                 |  CLAIM AND PLAINTIFFS' LOST
         v.                        |  PROFITS DAMAGES THEORY**
23
    APPLE INC.,                    |
24  a California corporation,      |  Date: Feb. 6, 2023
                                   |  Time: 1:30pm
25              Defendant.         |
26                                 |  Pre-Trial Conference: Mar. 13, 2023
                                   |  Trial: Mar. 28, 2023
27

    REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL
28

APPLE'S REPLY ISO MOT. FOR PARTIAL S.J.

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

APPLE'S REPLY ISO MOT. FOR PARTIAL S.J.

CASE NO. 8:20-cv-00048-JVS (JDEx)

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.      Plaintiffs Have Not Come Forward With Evidence Of Possession Or Ownership ....................................................................................................... 2

    A.      Plaintiffs Have Not Shown That Either Masimo or Cercacor Possessed The Purported Trade Secrets At The Time Of The Supposed Misappropriation ........................................................................ 2

        ██   ████████████████████ .................................. 4

        ██   ██████████████████████████ .............. 7

        ██   ███████████ ................................................... 9

        ██   ██████████████ ................................................ 12

        ██   ██████████ ..................................................... 14

    B.      At A Minimum, Plaintiffs Have Not Shown Ownership .............. 16

II.     Plaintiffs Fail to Rebut That Their Purported Trade Secrets Claim General Ideas ............................................................................................ 18

    A.      The Reasonable Particularity Requirement Bars A Plaintiff From Claiming A General Idea As a Trade Secret.................................. 18

    B.      ███████████ Trade Secrets Nos. 5 and 7-8 Impermissibly Claim s ................................................................................................ 19

        1.      ██████████ Trade Secret No. 5 ........................................ 19

        ██   █████████████████ .................................... 20

        3.      ████████ Trade Secret No. 8 ........................................ 21

    C.      The Value, Importance, and Appropriateness "Secrets" Impermissibly Claim General Ideas.............................................. 21

III.    Plaintiffs Cannot Show Lost Profits If Apple Prevails In Excluding The Relevant Kinrich Testimony................................................................. 22

CONCLUSION.............................................................................................. 22

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

4

*Alabama v. North Carolina*,

5

130 S. Ct. 2295 (2010) ..................................................................21

6

*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*,

7

226 Cal. App. 4th 26, 56 (2014) ................................................19

8

*Autotel v. Nevada Bell Telephone Co.*,

9

697 F.3d 846 (9th Cir. 2012) .........................................................5

10

*BankAmerica Pension Plan v. McMath*,

206 F.3d 821 (9th Cir. 2000) .....................................................13

11

*Bladeroom Group Ltd v. Facebook, Inc.*,

12

2017 WL 2224838 (N.D. Cal. May 22, 2017) ...........................19

13

*Calendar Research LLC v. StubHub, Inc.*,

14

2020 WL 4390391 (C.D. Cal. May 13, 2020)..............................18

15

*Carl Zeiss A.G. v. Nikon Corp.*,

16

2018 WL 11342771 (C.D. Cal. Nov. 14, 2018)........................6, 8

17

*Cellspin Soft, Inc. v. Fitbit, Inc.*,

18

2022 WL 2784467 (N.D. Cal. June 15, 2022) .........................5, 7

19

*DMF Inc. v. AMP Plus, Inc.*,

20

2020 WL 4194099 (C.D. Cal. July 17, 2020) ...............................5

21

*Hammond v. Allstate Indemnity Co.*,

2010 WL 11596112 (C.D. Cal. Oct. 1, 2010) .............................12

22

*Independent Towers of Washington v. Washington*,

23

350 F.3d 925 (9th Cir. 2003).......................................................12

24

*Inteliclear, LLC v. ETC Global Holdings, Inc.*,

25

978 F.3d 653 (9th Cir. 2020)........................................................21

26

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,

27

429 F.3d 1052 (Fed. Cir. 2005).....................................................5

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

*MAI Systems Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ..................................................................17

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. Jan. 5, 2011) ....................................3, 18

*Morlife v. Perry*,
    56 Cal. App. 4th 1514 (1997) .....................................................................2

*Prolifiq Software Inc. v. Veeva Systems, Inc.*,
    2014 WL 2527148 (N.D. Cal. June 4, 2014) ...........................................21

*PSM Holding Corp. v . National Farm Financial Corp.*,
    884 F.3d 812 (9th Cir. 2018) ....................................................................16

*Quigley v. T-Mobile USA, Inc.*,
    2022 WL 17886047 (C.D. Cal. Nov. 8, 2022) .........................................14

*Sargent Fletcher, Inc. v. Able Corp.*,
    110 Cal. App. 4th 1658 (2003) .................................................................14

*Sears v. County of Monterey*,
    2012 WL 368688 (N.D. Cal. Feb. 3, 2012) ................................................4

*UniRAM Technology, Inc. v. Taiwan Semiconductor Manufacturing Co.*,
    617 F. Supp. 2d 938 (N.D. Cal. 2007) ........................................................2

*Waymo LLC v. Uber Technologies, Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ............................................9

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) .................................................................17

**STATUTES, RULES, AND REGULATIONS**

Cal. Civ. Code §3246.1(d)(1) ...............................................................13

Cal. Civ. Code §3426.1(b) .......................................................................8

FRCP 30(b)(6) ....................................................................................1, 3

Wilmer Cutler Pickering Hale and Dorr LLP

# INTRODUCTION

Plaintiffs assert that each of the twenty-nine purported trade secrets that remain in this litigation is worth billions of dollars.  But they have been unable to establish one of the most basic elements of a trade secret claim: possession.  Plaintiffs did not keep a list of these purported billion-dollar ideas or otherwise commit them to paper.  And neither Plaintiffs' CEO nor Plaintiffs' FRCP 30(b)(6) witness on the supposed ██ ██ ██ trade secrets was able to identify *any* of them without first reviewing a list created by Plaintiffs' lawyers.  While a party might be able to show possession of a simple trade secret like a customer list without written documentation, Plaintiffs have not identified a single case upholding a finding of possession where the first time lengthy and largely technical trade secrets were committed to paper was after the complaint was filed.

Beyond the possession/ownership issues, Plaintiffs have not identified evidence showing that ██ Nos. 5 and 7-8—as well as the five "value, importance, and appropriateness" secrets—claim anything more than vague, unprotectable ideas.  To the contrary, even Plaintiffs' expert has admitted that ██ No. 5 "can be accomplished in many ways," Ex. 16, ¶¶642-643, and Plaintiffs improperly rewrite ██ No. 8 rather than attempting to justify the secret as written, Dkt. 1133-1 ("Opp.") at 18-19.  Finally, Plaintiffs are incorrect that they can present a lost profits case through lay testimony by relying on a damages theory and proposed witness testimony that this Court excluded months ago.  *See generally* Dkt. 1031

1

### ARGUMENT

**I.** **PLAINTIFFS HAVE NOT COME FORWARD WITH EVIDENCE OF POSSESSION OR OWNERSHIP**

**A.** **Plaintiffs Have Not Shown That Either Masimo or Cercacor Possessed The Purported Trade Secrets At The Time Of The Supposed Misappropriation**

Plaintiffs do not dispute that they must establish that they possessed each of the purported secrets before Apple's supposed misappropriation.  Dkt. 1101 ("Mot.") at 3; *see also* Opp. 5.  While they argue they can show possession without identifying a pre-litigation document that clearly describes each purported secret, Opp. 1, the only authority Plaintiffs identify where a trade secret claim based on information in an "employee's memory" succeeded is far removed from the facts here, as (1) it involved a much simpler secret (a customer list) and (2) one of the defendants admitted that he had reconstructed that list in part from a set of physical documents he had taken from plaintiffs ("a collection of business cards").  *Morlife v. Perry*, 56 Cal. App. 4th 1514, 1522-1523 (1997).[1]

Here, for many of the purported secrets (particularly ▮ Nos. 5, 7-8), Plaintiffs have done little more than "identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]."  *Mattel v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 967-971 (C.D. Cal. Jan. 5, 2011).  And where Plaintiffs have provided more detail, they have done so by copying and pasting the text from ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ *See* Dkt. 1128-1 at 20.  In other words, Plaintiffs

---

[1] Plaintiffs also cite *UniRAM Technology, Inc. v. Taiwan Semiconductor Manufacturing. Co.*, but the issue there was whether the plaintiff had provided the full trade secrets to the defendant—not whether the plaintiff possessed trade secrets in the first place.  *See* 617 F. Supp. 2d 938, 941-944 (N.D. Cal. 2007) (holding defendant's "knowledge of the alleged trade secrets is a question of fact to be decided at trial").

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  used ███████████████ as a road map to create what they say are their

2  trade secrets.  Plaintiffs' own CEO has admitted as much, testifying both that there was

3  no written list of their purported secrets prior to this litigation and that Plaintiffs "██

4  █████████████████████████████████████████████████████████

5  ████  Ex. 10 at 42, 97-98.  Under the circumstances, the lack of written

6  corroboration—combined with alleged secrets that (in the case of ████ Nos. 10-15)

7  just happen to copy over 550 words of one of Apple's patents nearly verbatim—is

8  damning evidence that Plaintiffs did not possess the supposed secrets before this

9  litigation began.[2]

10      Plaintiffs also ask this Court to disregard the fact that not one of their witnesses

11  could identify or describe the purported secrets during their depositions because (in

12  Plaintiffs' view) whether a party possesses trade secrets is a legal question rather than

13  a factual question.  Opp. 5.  But Plaintiffs should know what they supposedly created

14  and supposedly own.  Their only proffered excuse for the utter ignorance of their

15  witnesses on this key issue is a page from one of the Special Master's rulings rejecting

16  several of *Plaintiffs*' proposed FRCP 30(b)(6) topics because they improperly asked

17  for the "factual bases for [Apple's] contentions" supporting Apple's defense.  Dkt. 894

18  at 5.  In contrast, Plaintiffs *agreed* to present 30(b)(6) witnesses who could speak to

19  topics including "Plaintiffs' alleged development of each alleged Trade Secret."  Ex.

20  30 at 1 (listing, e.g., ████████████████████████████████

21  ████████████████████  Moreover, given that all allegations in a complaint

22  "must have a good faith basis, both in law and fact," *Sears v. County of Monterey*,

23  2012 WL 368688, at *13 (N.D. Cal. Feb. 3, 2012), Plaintiffs should have been able to

24  produce some employee who could testify as to the factual basis for their trade secret

25

26  [2] Plaintiffs are wrong to suggest (Opp. 6) that Apple is arguing the purported secrets
were taken from Apple's discovery productions.  Plaintiffs were even more brazen—
27  they simply copied information that existed in the public domain and have been
scrambling ever since to identify what aspects of their own technology embodies it.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   claims.  That they were unable to put forward any such witness, and that instead their

2   witnesses simply deferred to their lawyers, is strong evidence that they did not actually

3   possess the trade secrets at the time of Apple's purported misappropriation.  *E.g.*, Ex.

4   14 at 24 (Diab noting ████████████████████████████████████████████████

5   ███ ████████████████████████████████

6      **a.**   Plaintiffs have not presented evidence that they possessed each of the

7   eleven purported ████ secrets in full prior to Apple's misappropriation.  Mot. 3-5.

8   Plaintiffs stake their case on pages 42 and 51-57 of Madisetti's report, which they

9   claim "opine[s]" that four of Plaintiffs' products (████████████████████████████

10  ██████████████████████████████.  Opp. 6.  But the cited pages address *only*

11  ████ No. 1 (and do not even show possession of that secret, *infra* pp. 5-6), even

12  though No. 1 covers different ground than any of the other purported ████ secrets.

13  *See, e.g.*, Ex. 15 at 51 (addressing whether ████████████████████████████████

14  *see also* Dkt. 1085-8 at 1333-1336 (Madisetti appendix quoting each of the supposed

15  ████ secrets).[3]  Plaintiffs similarly cite to three pages from a ████████████████

16  █████████████████████████████" Opp. 6, but fail to link those pages to any

17  specific purported secret or secrets.

18     Plaintiffs further assert that the ***arguments*** made in their cross-motion for

19  summary judgment show possession of the purported secrets.  Opp. 7.  But it is well-

20  established that "'[u]nsubstantiated attorney argument regarding the meaning of

21  technical evidence … cannot[] support [the non-moving party's] burden on summary

22  judgment.'"  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 2022 WL 2784467, at *14, *20, *26, *45

23  (N.D. Cal. June 15, 2022); *accord Invitrogen Corp. v. Clontech Lab'ys, Inc.*, 429 F.3d

24  1052, 1068 (Fed. Cir. 2005) (same).  And in any event, (1) Plaintiffs' motion did not

25  _____

26  [3] To the extent Plaintiffs intended to reference *paragraphs* 42 and 51-57, those are
    even further afield—they simply provide high level background on the underlying
27  technology.

28

1    address ███ Nos. 1, 3, 8, or 16, *see generally* Ex. L, and (2) Apple has already

2    explained why the motion fails to show possession for the remaining secrets, *see* Dkt.

3    1128-1 at 4-9.

4         Finally, Plaintiffs vaguely contend that Madisetti's report "explain[s]" how their

5    employees developed each purported secret.  Opp. 7.  But Plaintiffs fail to explain why

6    that is so beyond a bare string cite to over 80 paragraphs in the report, which is

7    insufficient to preserve the issue.  *See Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846,

8    857 n.9 (9th Cir. 2012) ("[a]rguments made in passing and inadequately briefed are

9    waived"); *accord DMF Inc. v. AMP Plus, Inc.*, 2020 WL 4194099, at *2 n.1 (C.D. Cal.

10   July 17, 2020) (similar).

11        **b.**    At a minimum, Plaintiffs have not provided cognizable evidence they had

12   possession of every aspect of ███ Nos. 1 and 10.  Mot. 4.  And because ███ Nos.

13   11-15 all depend on ███ No. 10 (i.e., they include all the same steps but add a

14   variation), *see* Dkt. 1085-8 at 1335-1336, Plaintiffs have not shown possession for

15   them either.

16        As to ███ No. 10 (and, necessarily, Nos. 11-15), Apple explained that

17   Plaintiffs have at least not shown possession of the ████████████████

18   ██████ "  Mot. 4.  In response, Plaintiffs cite to a single page from Madisetti's

19   report, Ex. 15 at 132, but do not identify anything on it that supports their position.

20   Madisetti provides a block quote of the language of the secret on that page, but he

21   makes no attempt to tie it to the source code he cites.  Such "broad conclusory

22   statements" made by an expert are not cognizable evidence at summary judgment.

23   *Carl Zeiss A.G. v. Nikon Corp.*, 2018 WL 11342771, at *2-3 (C.D. Cal. Nov. 14,

24   2018).

25        As to ███ No. 1, Plaintiffs have not established that they combined

26   ████████████████████████████████████████████████████

27   ████████████████████████████ Mot. 4; *see also* Ex. 17 ¶71 █

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

(explaining why twenty-one paragraphs of Madisetti's report fail to make this showing).  Plaintiffs primarily rely on three paragraphs from Madisetti's report, all of which put a gloss on excerpts of ███████. Ex. 15 ¶¶129-131.  But Madisetti does not fully explain which steps of the code match up with which steps of the purported secret.  For example, these paragraphs do not identify any portion of the code that requires ████████████████████████████████████████.”  *See* Ex. 17 ¶¶72, 76.  While Madisetti suggests this can be inferred because *one aspect* of the code snippet he cites does not itself ████████████████, Ex. 15 ¶131, he does not address whether *other aspects* of the code that he does not cite ████████ ████████.  Indeed, Madisetti has no way to know how the ███████ functioned as a whole because he has admittedly never seen the device and thus never tested it to determine its functionality.  Ex. 28 at 148-153.

        Plaintiffs also point to Madisetti's assertion that ██████ source code and related notebook snippets disclose ████ No. 1, Ex. 15 ¶¶138, 141-143, but Madisetti does even not try to show that every aspect of the alleged secret appears in the code (e.g., he again fails to point to any portion that shows ████████████████ ████████████████████ and his bald assertion is not enough to stave off summary judgment.  *Carl Zeiss*, 2018 WL 11342771, at *2-3.  Again, Madisetti has no way to know how the ██████ functioned as a whole because he has neither seen the device nor tested it.  Ex. 28 at 110-113.

        Finally, Plaintiffs rely on their summary judgment motion and one paragraph apiece from two accompanying declarations.  Mot. 8 (citing Ex. L. at 10 (brief), Ex. J ¶9 (Poeze), and Ex. M ¶75 (Madisetti)).  But none of these materials expressly address ████ No. 1, and Plaintiffs cannot permissibly rely on "unsubstantiated" attorney argument to cross-apply the technical analysis for one purported secret to another.  *E.g.*, *Cellspin Soft*, 2022 WL 2784467, at *26.

1   ███████████████████████████████████

2   Plaintiffs fail to dispute that (1) they did not write down any of the purported ██

3   secrets in full prior to this litigation and (2) their employees were unable to identify or

4   describe the purported secrets during their depositions without consulting the attorney-

5   created list.  *Compare* Mot. 5-7 *with* Opp. 8-10.  Moreover, their specific arguments

6   for ███████████ Nos. 4-5 do not establish that Plaintiffs possessed either purported

7   secret in full before the purported misappropriation.

8   As to ██████████ No. 4, Apple explained that Plaintiffs had not shown they

9   possessed information relating to ████████████████████████████

10  ████████████████████████████████████████████

11  ████  Mot. 6.  In response, Plaintiffs rely largely on a snippet of testimony from one

12  of Plaintiffs' employees (Al-Ali) where the employee read the text of the purported

13  secret and explained what he thought it encompassed.  Ex. E at 160-163.  While Al-Ali

14  states he participated in a "group discussion" that developed the supposed secret, he

15  does not state when that discussion occurred or otherwise indicate Plaintiffs had

16  possession of the supposed secret before Lamego left to work for Apple.  Indeed, this

17  portion of Al-Ali's testimony is so vague, Madisetti's report mentions it only as a "see

18  also" cite for the general proposition that Plaintiffs "worked for many years" to

19  develop "various features" ████████████████  Ex. 15 ¶452-458.

20  The remaining materials Plaintiffs cite are no more helpful.  They point to

21  Madisetti's deposition testimony, but (1) he did not cite anything specific to support

22  his conclusion regarding the ████████████████ (beyond a page from one ██████

23  ████████ that even Plaintiffs do not now argue supports their position) and (2)

24  conclusory assertions made by an expert are not evidence, *Carl Zeiss*, 2018 WL

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    11342771, at *2-3; *see also* Ex. NNN at 270-279.[4]  The cited passages of Madisetti's

2    report are even more conclusory than his deposition testimony.  Although the report

3    asserts that Plaintiffs possessed the full purported trade secret, Madisetti makes no

4    reference to the "███████████████████████████████ requirement.  *See* Ex.

5    15 ¶¶452, 456.  Finally, Plaintiffs fall back on attorney argument, contending that the

6    phrase ████████████████████████████████████████████████████

7    ███████████████████████████████████████████

8    ████████████████████████  Opp. 9.  As discussed, attorney argument cannot

9    create a disputed material fact.  *Supra* pp. 4-5.

10            Plaintiffs also argue in a footnote that they need not prove they possessed the

11   full trade secret because they only accuse Apple of misappropriating part of it.  Opp. 9

12   n.4.  The CUTSA does not punish "partial" misappropriation; a defendant can be held

13   liable only for misappropriating "a trade secret."  Cal. Civ. Code §3426.1(b).  And it is

14   far too late in the day for Plaintiffs to reconfigure their purported secret.  *Cf.* Dkt. 899

15   at 4 (barring Plaintiffs from further modifying the scope of their purported secrets

16   "nearly three years into the case and only seven months before trial").  This is

17   particularly so given that the parties have gone through fact and expert discovery on

18   the question of whether ███ No. 4 as currently phrased is generally known and readily

19   ascertainable—issues where it is to Plaintiffs' advantage to frame their purported

20   secrets as with as many elements as possible.

21           As to ████████ No. 5, Plaintiffs have not shown that they possessed the

22   general idea of ████████████████████████████████████████

23   ████████████  as opposed to a specific implementation of that broad concept.  Mot. 7.

24   Plaintiffs miss the point by arguing that they have identified *two* specific examples of

---

26   [4] Plaintiffs likely do not rely on the ████████████████████████████████

27   ████████████████████████████████████████████████████

1  how this concept could be implemented.  *See* Opp. 9-10 (discussing ██████████

2  ██████████████████████).  Even if Plaintiffs are right, they have failed to

3  show that they possessed every possible way of implementing this broad concept and

4  therefore cannot meet their burden.  *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL

5  2123560, at *7 (N.D. Cal. May 15, 2017) (plaintiff cannot permissibly "claim[] broad

6  swaths of solutions to general competing considerations … rather than the single,

7  specific solution adopted by" plaintiff).  Had Plaintiffs wanted to claim the specific

8  techniques they allegedly developed, they should have described their purported secret

9  as *only* those techniques.  Plaintiffs' failure to do so was undoubtedly strategic, as they

10  added ██ No. 5 to this litigation only in April 2022—i.e., after they received

11  voluminous discovery into the inner workings of Apple technology.  *See* Dkt. 650 at 3

12  (motion); Dkt. 669 at 6-7.  Having apparently written the purported secret in sweeping

13  terms in an attempt to capture Apple's technology, they should not be permitted to

14  unilaterally narrow it to overcome a failure of proof.[5]

15  █ ████████████

16  Plaintiffs have not demonstrated that they possessed every aspect of █ No. 4 at

17  the time of the purported misappropriation.  Mot. 7-8.  And because it is undisputed

18  that █ No. 5 and 6 depend upon █ No. 4, Opp. 11, Plaintiffs cannot show possession

19  of those purported secrets either.

20  Plaintiffs first point to five paragraphs from Madisetti's report (and a five-line

21  excerpt from his deposition) that they assert "explained the evidence" in support of

22  possession.  Opp. 10.  To the contrary, each of the cited passages reflects Madisetti's

23

24  _____

25  [5] In any event, Plaintiffs are wrong that the ████████████████concept falls within

26  the bounds of the purported secret—the only document their expert identifies as
    mentioning the concept discusses ████

27  ████████████████████████████████ Ex. 19 ¶¶115, 141-143;

28

1    conclusory, unexplained assertion that Plaintiffs had possession of each aspect of █

2    No. 4.  Ex. 15 ¶¶651, 665, 680, 696, 740; Ex. 29 at 408.[6]

3         Plaintiffs next contend that █ No. 4 was embodied in ███████████



_____

[6] Paragraph 665 of Madisetti's report includes a long list of the documents Madisetti consulted, but it does not link them to the elements of the purported secret.

APPLE'S REPLY ISO MOT. FOR PARTIAL S.J.                    10          CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   Ex. U. ("███████████████████████"

2     Finally, Plaintiffs cite two documents they claim establish possession—a "2007

3   Memorandum of Invention" and a 2010 "Innovative Concept With Patent Potential"

4   ("ICPP").  Opp. 10-11.  But the Memorandum does not mention the requisite

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████.  *See* Ex. EEEE at -

7   1214; *see also* Ex. 15 ¶¶691-695 (Madisetti agreeing that the Memorandum lists only

8   ████████████████████████████████████████████████████████;

9   Ex. 19 ¶350 (Warren noting this gap and observing that Plaintiffs' deponents

10  ████████████████████████████████████████████████████

11  ██████████████  Nor does the Memorandum disclose a ████████████████████

12  ████████  *See generally* Ex. EEEE.  In fact, Madisetti does not even mention the

13  Memorandum when discussing the ████████████████████ element of the supposed

14  secret, Ex. 15 ¶¶718-722, likely because an image of the device shows that it was

15  conceived of as a ████████████████████████████

16–24  ████████████████████████████████████████

25  [7] Plaintiffs also cite deposition testimony from their employees, but the deposed
    engineers conceded they had not seen the text ████████████████████████████

26  ████████████████  before the deposition.  Ex. S at 89-90, 159; Ex. W at 54 (witness could
    ████████ any specific trade secrets related to ████████████████).  They thus

27  necessarily could not opine on whether the ████ satisfied all the elements and were not
    asked to do so.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   Ex. EEEE at -1215.[8]

2      The ICPP suffers from similar flaws—it does not disclose an ██████████

3 ████████████████████████████ Ex. Q at -1483; *see also* Ex. 15 ¶691

4 (Madisetti acknowledging IPCC only referenced a ████████████); Ex. 19 ¶352

5 (Warren noting this gap and observing that Plaintiffs' deponent conceded that

6 ███████████████████████████").  And again, even Madisetti

7 does not expressly argue in his report that the ICPP incorporates the use of a █████

8 ██████████ Ex. 15 ¶719 (quoting ICPP but not referencing the █████

9 ███████████ requirement); *see also* Ex. 19 ¶ 357 (Warren noting this

10 gap).  This is likely because the device contemplated by the ICPP also self-evidently

11 relies on ████████████████████████████

12



19 Ex. Q at -1486.

20 ██ ████████████

21      Plaintiffs have been unable to establish that they possessed either ███ No. 1 or

22 6. Mot. 8-10.  And because all the █████ secrets ultimately depend on one or both of

23 those secrets, Mot. 10, Plaintiffs cannot establish possession of any of them.[9]

24 _____

[8] As Apple's expert noted, Plaintiffs themselves have been careful to distinguish between ████████████████████████████████████████
E

[9] Plaintiffs admit ███████████████████████████████████
████████████████████████████████████

*(Cont'd on next page)*

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Plaintiffs' primary answer is to string cite *all* the evidence that it asserts relate to

2 possession of any of the purported ███ secrets, without (1) differentiating based on

3 the supposed secret or (2) providing any other guiding explanation for why all the

4 materials cited are relevant when Apple has limited its arguments to only ███ Nos. 1

5 and 6.  Opp. 12.  That is improper and should be disregarded.  As this Court has

6 observed, this kind of kitchen-sink approach "makes it nearly impossible for anyone …

7 to determine what [Plaintiffs] relied on for support."  *Hammond v. Allstate Indemnity*

8 *Co.*, 2010 WL 11596112, at *2 n.1 (C.D. Cal. Oct. 1, 2010); *see also Independent*

9 *Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts

10 "'review only issues which are argued specifically and distinctly in a party's … brief'

11 and "cannot manufacture arguments" for a party).

12    As to ███ No. 1, Apple explained that the ███████████ that Plaintiffs

13 primarily rely upon to establish possession does not contain the purported secret.  Mot.

14 8-9.  Plaintiffs do not respond directly to any of Apple's critiques of the ███████

15 and thus concede them.  *See BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826

16 (9th Cir. 2000) ("A party abandons an issue when it has a full and fair opportunity to

17 ventilate its views" but fails to do so).  Apple also explained why the general

18 statements made during Kiani's deposition that Plaintiffs' expert relies upon to

19 establish possession are not on point.  Mot. 9.  Again, Plaintiffs have no real response

20 and have forfeited the right to provide one.[10]  Finally, Plaintiffs argue that their

21 products standing alone can show that they possessed ███ No. 1 because

22 (supposedly) Apple's expert Kivetz conceded this was possible.  Opp. 12.  But

23

24 ██████████████████████████████████████████████

25 [10] Plaintiffs accuse Apple of ignoring a snippet of testimony that ████████████

26 ██████████████████████████████████████████████

27 ██████████████████████████████████████████████

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs misquote the expert, who stated that some of Plaintiffs' "*documents*" (not products) show that the ███ secrets were generally known in the industry.  Ex. Z at 416 (emphasis added).  To the extent that Plaintiffs concede the expert is right, they cannot maintain a viable trade secret claim.  *See* Cal. Civ. Code §3246.1(d)(1).

As to ███ No. 6, Plaintiffs again have no direct response to Apple's specific argument that they have not established possession.  *Compare* Mot. 9 *with* Opp. 11-12.  They have thus forfeited the opportunity to respond.  *BankAmerica*, 206 F.3d at 826.

As a last-ditch effort, Plaintiffs argue that they can establish possession by relying primarily on statements made by Kivetz when discussing whether the purported ███ secrets were generally known or readily ascertainable.  Opp. 11-12.  But Kivetz made clear that he was not providing an opinion on the question of possession.  Ex. Y at 180.  In any event, it is indisputably Plaintiffs' burden to prove *both* that they possessed the purported secrets and that the secrets were not generally known.  *Sargent Fletcher, Inc. v. Able Corp.,* 110 Cal. App. 4th 1658, 1665 (2003).[11]  Plaintiffs must thus accept the bitter with the sweet.  If they can only survive summary judgment on possession by relying on Kivetz's testimony (i.e., to argue that the purported secrets were publicized by Plaintiffs prior to the misappropriation), then they necessarily concede that the ███ secrets were generally known.

██ ████████████

Plaintiffs have not provided any pre-litigation evidence establishing that they possessed █ No. 5 prior to the purported misappropriation—e.g., ████████████ ██████████████████████████████████████████████████████████████ ████████████████████  Mot. 10-11.  And because Plaintiffs admit that █ Nos.

---

[11] Here and elsewhere, Plaintiffs appear to criticize Apple for not presenting affirmative evidence regarding their lack of possession.  Opp. 8, 11, 13.  But "[w]here the non-moving party bears the burden of proof at trial … the moving party need only prove an absence of evidence to support the non-moving party's case."  *See Quigley v. T-Mobile USA, Inc.*, 2022 WL 17886047, at *2 (C.D. Cal. Nov. 8, 2022).

6-7 incorporate No. 5, Dkt. 1133-2 at 16, they cannot show possession of those secrets either.

Once again, Plaintiffs' first response is to cite a laundry list of documents that reference any aspect of the purported ███ secrets, without explaining what each document is meant to show.  Opp. 13.  This kind of kitchen-sink approach is improper and should be disregarded.  *See supra* p. 13.

Plaintiffs also argue that they presented evidence that Plaintiffs *tried* to ████████████████████████████████████████████████ Opp. 13.  But the pre-misappropriation "evidence" Plaintiffs identify consists of ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████

Not one of those documents shows Plaintiffs actually put a ████████████ ██████████████████████████ in place, as the purported secret requires.  Ex. 4 at 63-64.[12]  To the extent that they are offered for their truth (i.e., to show that such an arrangement was contemplated), they are inadmissible hearsay.  Nor do the emails— which, again, were all directed to ██████████—establish that Plaintiffs planned to collect data from ████████████████ as the purported secret also requires.  *Id.*  While Plaintiffs rely on Kiani's recent passing reference to a new Masimo program called ████████████████████████████████████████ they do not cite any evidence that the ████████ program existed before the purported misappropriation, *see* Ex. 10 at 333 (Kiani testifying in

---

[12] ████████████████████████████████████████████████████████ ████████████████████████████████████████████

August 2022 they can "now" collect data with ████████████ Ex. WW (June 18, 2020 document mentioning ██████ .

### B.     At A Minimum, Plaintiffs Have Not Shown Ownership

**a.**     Plaintiffs dispute whether the CUTSA requires a showing of ownership, but they rely almost exclusively on two federal court cases to support their position. Opp. 5.  As Plaintiffs are well aware from the briefing in front of the Special Master on this issue, nearly every California state court decision has required ownership without qualification.  *See* Dkt. 1079-7 at 2 & nn.1-2; Dkt. 1079-8 at 1-2.  As Apple explained (and Plaintiffs do not dispute), the lone exception (*Silvaco*) provides no reasoning for its deviation, suggesting it is simply an outlier.  Mot. 12-13.  Under the *Erie* doctrine, this Court must follow the ownership rule as laid out by California intermediate appellate courts unless this Court is "*convinced* that the California Supreme Court would reject it."  *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018) (emphasis added).  Plaintiffs do not even attempt to meet that burden.

**b.**     Plaintiffs argue that even if ownership is required, they have satisfied their burden because Plaintiffs are either (1) the sole owners or (2) the sole owner and the sole licensee.  Opp. 2.  But they have not presented evidence to support either conclusion for at least some of the purported secrets.

As to whether Plaintiffs are the sole owners, they concede that their ownership claims derive from the assignment agreements with the employees who actually developed the purported secrets.  But Plaintiffs have not identified signed agreements for at least three of the individuals who they claim helped craft the purported secrets. *See* Ex. OOO (collecting signed agreements from only some of Plaintiffs' employees); Ex. QQQ at 22 (Masimo employee stating ██████████████ ██████████████████████████████████████████ Ex. AAAAA at 125-126 (similar from Cercacor); Ex. ZZZZ (unsigned Masimo assignment agreement).  In particular, Plaintiffs have not attached an agreement from at least

1  ██████████████████████████████████████████████████████

2  ████████████████████████████   *Compare* Ex. OOO *with* Ex. 4 at 42-49, 52.  Without

3  establishing that all the relevant employees signed over their rights, Plaintiffs cannot

4  reasonably claim to be the sole owners.  And Plaintiffs have not identified any trade

5  secret case finding the CUTSA ownership requirement satisfied under such

6  circumstances, when purported secrets could have multiple owners with potentially

7  conflicting claims.  *See* Opp. 3-4.

8       Plaintiffs cannot also show that they are both at least licensees for each of the

9  purported secrets.  They concede that Plaintiffs' ████████████ agreement governs

10 that question, Opp. 4, and nothing in that agreement specifically addresses whether it

11 applies to the supposed secrets at issue in this case.  Instead, it is limited to exchanges

12 of ████████████████████████████████████████████████

13 ██████████████████████████████████████████████████

14 ██████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ██████  Most notably, Plaintiffs have not explained why the agreement would

17 encompass the non-technical ██████ and ████ secrets.  While they are right that the

18 agreement ████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ██████████████████████████████████████████████

22 ██████████████████████████████████████████

23

24

25

26

27

28

**II.**   **PLAINTIFFS FAIL TO REBUT THAT THEIR PURPORTED TRADE SECRETS CLAIM GENERAL IDEAS**

    **A.**   **The Reasonable Particularity Requirement Bars A Plaintiff From Claiming A General Idea As a Trade Secret**

While Plaintiffs argue that a general idea can be protected as a trade secret, Opp. 14-15, this ignores the most basic requirement of any trade secret case: a plaintiff must "identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 522 (9th Cir. 1993).  This in turn requires a description of "the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"  *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1453 (2002).  This delineation—between "ideas and broad conceptualizations" on the one hand and valuable information about how those ideas and conceptualizations can be used on the other—serves the functions of "prevent[ing] employers from using trade secret law as a weapon against employee mobility [and] … permit[ing] defendant to ascertain at least the boundaries within which the secret lies.'"  *Mattel*, 782 F. Supp. 2d at 967.  The "no ideas" principle has particular force "in trade secrets cases involving technical or scientific information" like this one, where courts require "a more exacting level of particularity" to "distinguish the alleged trade secrets from information already known in the field."  *Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *5 (C.D. Cal. May 13, 2020).

Plaintiffs are wrong (Opp. 14) that *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc*. departed from the bedrock "no ideas" principle.  The cited passage from *Altavion* simply clarified that information that could theoretically be claimed in a patent may also be protectable under trade secret doctrine.  *See* 226 Cal. App. 4th 26, 55-56 (2014) ("[I]f a *patentable* idea is kept secret, the idea itself can constitute information

protectable by trade secret law." (emphasis added)); *id.* at 53 (noting that the issue on appeal was "whether [defendant's] ideas set forth in the patents and patent applications … disclose any trade secret ideas"). Plaintiffs are also wrong (Opp. 15) that the "no ideas" doctrine conflicts with the principle that information that is not generally known can be a trade secret. Even *Altavion* treated the "sufficient particularity" analysis, 226 Cal. App. 4th at 43-45, as distinct from its discussion regarding the protectability of patentable ideas, *id.* at 56.[13]

**B.        ███████████ Trade Secrets Nos. 5 and 7-8 Impermissibly Claim General Ideas**

**1.        ███████████ *Trade Secret No. 5***

As Apple explained, this purported secret boils down to identifying a purported general problem and coupling it with a purported general solution. Mot. 14-16; *see also supra* pp. 8-9. Plaintiffs do not dispute this basic point. Opp. 16. Rather, their primary response is to summarize their explanation for how Plaintiffs developed this alleged trade secret and how Apple misappropriated it. *See* Opp. 15-16; *see also id.* at 17 (arguing purported secret appropriate because it reflects how it was implemented and used). But those assertions are irrelevant to whether the purported secret is described with sufficient particularity.

Plaintiffs next argue that they have met their burden to describe ██ No. 5 with reasonable particularity because their expert devoted over 56 paragraphs of his report to discussing the purported secret. Opp. 16. Plaintiffs, however, offer no explanation as to *how* these 56 paragraphs explain the alleged secret and for good reason. The cited paragraphs are directed to Plaintiffs' factual assertions of development, use, and misappropriation, not whether the alleged secret is described with particularity. Ex. 15

---

[13] *Bladeroom Group Limited v. Facebook, Inc.* is also inapposite, as the plaintiffs in that case had (following a court order) described their purported secrets in sufficient detail to satisfy the reasonable particularity requirement. 2017 WL 2224838, at *2 (N.D. Cal. May 22, 2017).

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   ¶¶502-558.  As explained, Plaintiffs' expert believed he did not need to address

2   particularity because he wrongly thought that the requirement vanished once discovery

3   begins.  Mot. 14-16.  To the contrary, the particularity issue can be raised at any stage

4   in the litigation.  *Id.*  Here, such a challenge is especially appropriate for the summary

5   judgment stage because ▆ Nos. 5 and 7-8 were added years after the motion-to-

6   dismiss stage and based on abbreviated briefing in front of the special master.  *See*

7   Opp. 6 n.3.[14]

8          Finally, Plaintiffs argue that ▆ No. 5 *must* be sufficiently clearly explained

9   because Apple was able to muster a response to Plaintiffs' allegations.  Opp. 16-17.  If

10  taken seriously, however, Plaintiffs' position would mean that Apple would have to

11  choose between putting Plaintiffs to their burden on reasonable particularity and

12  providing a defense on any other issue.  Plaintiffs identifies no authority that imposes

13  such an absurd result.[15]

14  

15         This purported secret merely asserts that one broad, well-known mathematical

16  concept should be used rather than another.  Plaintiffs contend that it is sufficiently

17  particular because the purported secret claims the ▆▆▆▆▆▆▆▆

18  ▆▆▆▆, Opp. 17-18, but they provide no explanation for—and cite no evidence

19  explaining—what those ▆▆▆ are.  Plaintiffs also assert that the purported secret

20  is protectable because (1) it has been narrowed to a particular field (i.e., ▆▆▆

21  ▆▆▆▆ and (2) Apple has failed to show that it was known in that

22

23  _____

24  [14] Plaintiffs appear to blame Apple for not raising the particularity issue when Plaintiffs sought leave to add ▆ Nos. 5 and 7-8.  But whether Plaintiffs could show the requisite "good cause" to add a purported secret (due, for example, to new information uncovered in discovery), *see* Dkt. 669 at 4, is a separate question from whether Plaintiffs can meet their burden at summary judgment.

26  [15] *Prolifiq Software Inc. v. Veeva Systems, Inc.* is inapposite, as that case involved only whether discovery could commence.  2014 WL 2527148, at *2-3 (N.D. Cal. June 4, 2014).

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

field.  Opp. 17-18.  But Plaintiffs—not Apple—have the burden to show the purported

secrets are sufficiently particular, and they again present no evidence to suggest that

limiting ▮ No. 7 to a specific field meaningfully narrows its scope.  *See supra* p. 20

(noting Madisetti believed he did not have to provide analysis on particularity).

### 3.   ▮▮▮▮▮  *Trade Secret No. 8*

This supposed secret claims the notion that ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ Mot. 17-18.  In response, Plaintiffs contend that ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. 18.  Not so.  While Plaintiffs

argue that Lamego himself performed several specific kinds of ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ Ex. 19 at 174.  Had Plaintiffs wished to

claim the specific technique purportedly used by Lamego, they could and should have

done so *before* the close of fact discovery.  The reasonable particularity requirement

guards against just such last-minute strategic maneuvering.  *See Inteliclear, LLC v. ETC

Global Holdings, Inc*., 978 F.3d 653, 658 (9th Cir. 2020) ("Courts and juries … require

precision … especially where a trade secrets claim involves a sophisticated and highly

complex system[.]").

### C.   The Value, Importance, and Appropriateness "Secrets" Impermissibly Claim General Ideas

Plaintiffs do not dispute that neither they nor their experts have previously

provided any guidance as to what the words "value," importance," and

"appropriateness" mean.  Nor do Plaintiffs attempt to provide even the most cursory

explanation in their brief.  Plaintiffs' only argument is that a jury will naturally

understand what the terms mean.  Opp. 20.[16]  There is no reason to think that is so, as

---

[16] Plaintiffs rightly concede this factual question was not resolved at the 12(b)(6) stage.  Opp. 20.

Wilmer Cutler
Pickering Hale
and Dorr LLP

all three words are relative terms that vary based on the context in which they are used. *See, e.g.*, *Alabama v. North Carolina*, 130 S. Ct. 2295, 2309 (2010) ("whether a particular step is 'appropriate' could depend upon many factors"); Oxford English Dictionary Online (2022) (defining "value" as "[t]he relative worth, usefulness or importance of a thing" and "importance" as "meaning, significance").

## III. PLAINTIFFS CANNOT SHOW LOST PROFITS IF APPLE PREVAILS IN EXCLUDING THE RELEVANT KINRICH TESTIMONY

Plaintiffs' opposition argues for the first time that they can recreate Mr. Kinrich's lost profits calculations by relying solely on lay testimony.  Opp. 20-21. They have not identified a viable theory for doing so.  Their suggestion that they can simply ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ would necessarily require Plaintiffs' fact witnesses to testify to the same hypothetical scenario that Mr. Kinrich has suggested—i.e., that ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ This Court has already (1) held that it is inappropriate for non-FRCP 26(a)(2)(B) witnesses to testify on such issues (because they go beyond the bounds of the witnesses' percipient knowledge) and (2) excluded these "fully formed damages theories" because they were not disclosed during fact discovery.  *See* Dkt. 1031 at 9, 11.

## CONCLUSION

The Court should grant Apple summary judgment on Plaintiffs' trade secret claim and/or on lost profits.

---

[17] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Wilmer Cutler Pickering Hale and Dorr LLP

Dated:  January 23, 2023                    Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  */s/Mark D. Selwyn*
        Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple, Inc., certifies that this brief contains 6971 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].


Dated:  January 23, 2023                    Respectfully submitted,

                                            MARK D. SELWYN
                                            AMY K. WIGMORE
                                            JOSHUA H. LERNER
                                            SARAH R. FRAZIER
                                            NORA Q.E. PASSAMANECK
                                            THOMAS G. SPRANKLING
                                            WILMER CUTLER PICKERING HALE AND
                                            DORR LLP

                                            BRIAN A. ROSENTHAL
                                            GIBSON, DUNN & CRUTCHER LLP

                                            KENNETH G. PARKER
                                            HAYNES AND BOONE, LLP


                                            By: */s/ Mark D. Selwyn*_____
                                                    Mark D. Selwyn


                                            *Attorneys for Defendant Apple Inc.*