1  MARK D. SELWYN, SBN 244180
    mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
    thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
    HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
    joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
    HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
    amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
    HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14
15 [Counsel appearance continues on next page]

   *Attorneys for Defendant Apple Inc.*
16
17        **UNITED STATES DISTRICT COURT**
       **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**
18

19 MASIMO CORPORATION,                    | CASE NO. 8:20-cv-00048-JVS (JDEx)
   a Delaware corporation; and
20 CERCACOR LABORATORIES, INC.,           | **APPLE'S SUPPLEMENTAL BRIEF**
   a Delaware corporation,                | **REGARDING DISCOVERY ON**
21                                         | **AIRPODS ROYALTIES**
                   Plaintiffs,
22                                         |
         v.                               | Date: Feb. 6, 2023
23                                        | Time: 1:30pm
   APPLE INC.,                            |
24 a California corporation,              |
                                          | Pre-Trial Conference: Mar. 13, 2023
25                 Defendant.             | Trial: Mar. 28, 2023
26
27      REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL
28

Wilmer Cutler
Pickering Hale
and Dorr LLP

SARAH R. FRAZIER, *pro hac vice*
sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

1
2

## TABLE OF CONTENTS[1]

3  BACKGROUND ........................................................................................3

4  ARGUMENT .............................................................................................8

5  CONCLUSION.........................................................................................12

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[1] This brief does not include a table of authorities because it relies solely on exhibits and prior rulings in this case that are available on the docket, rather than the "cases, statutes, [and] rules" described in L.R. 11-8.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Apple submits this supplemental brief to provide the Court with further context regarding the problems posed by Plaintiffs' request to expand the case on the eve of trial to include Apple's "AirPods" headphone products.

When Plaintiffs filed their original complaint in January 2020, they relied on publicly available information to allege that Apple had misappropriated their purported secrets in Apple Watch, but made no reference to AirPods.  Not one of the four amended complaints that followed so much as mentioned AirPods.  Indeed, even though Apple served Plaintiffs with an interrogatory in April 2020 asking them how Apple uses each purported trade secret in an Apple product and which products are accused, Ex. B at 12-13, Plaintiffs to this day have not updated that interrogatory response to include AirPods or explain their theory of liability.[2]

This is for good reason: there is not even a remotely colorable theory of liability that would connect AirPods to Plaintiffs' alleged trade secrets.  Of the over two dozen currently asserted trade secrets in this case, Plaintiffs have only referred to one as possibly connected to AirPods.  That alleged secret expressly references taking ███████████████████████████████ and the AirPods do no such thing.

The first time Plaintiffs hinted that they might argue AirPods use any of the purported trade secrets was in a 9-page supplemental expert report served on November 2, 2022.  Even that report only mentioned the term "AirPods" twice and failed to explain how the product used the lone trade secret discussed (██ No. 5).  It was not until an email sent after 6pm on January 9, 2023—the day of the law and motion deadline—that Plaintiffs made any attempt to explain how AirPods satisfied the ███████████████████ limitation.  Even then, Plaintiffs' belated suggestion that AirPods measure a ████████████████████████████████████████████████

_____

[2] Notably, Plaintiffs' response does list a wide range of *other* Apple products that they once alleged were "relevant" to the ██████ trade secrets, including ████████████████████████████████████." Ex. A at 9-10.

1     ████████████ does not make sense under any reasonable meaning of the term—or

2     indeed, under interpretations Plaintiffs themselves have previously offered.

3          Apple respectfully submits that this Court's February 3, 2023 conclusion that the

4     Plaintiffs' motion requests only "modest" damages discovery and that "the trial date

5     would not be affected" if it is granted, Ex. O at 2-3, is inconsistent with this key

6     point—i.e., that Plaintiffs failed to properly disclose any colorable *liability* theory for

7     the AirPods, nor could they have.  Even today, Plaintiffs lack expert opinions that

8     explain how, for example, "proximity sensing" (detecting the distance between a

9     device like an AirPod and another object, like a user) could conceivably qualify as

10    ████████████████████  And in addition to the dearth of disclosures by the

11    Plaintiffs, Apple has had no opportunity to seek or provide discovery into related to

12    this late-disclosed issue—e.g., to demonstrate that proximity sensing is long-known

13    and long-used technology, including by Apple itself in the original iPhone released in

14    2007, or that under Plaintiffs' apparent new interpretation of ████████████

15    ████████████ there would be additional references and classes of individuals to

16    whom the purported secret was generally known.  While Plaintiffs have tried to cast

17    the blame on Apple by suggesting it should have earlier sought to strike mention of

18    AirPods when it first appeared in Dr. Madisetti's supplemental expert report, there was

19    no reason to do so; it did not occur to Apple that Dr. Madisetti's mention of AirPods

20    would be used by Plaintiffs as vehicle to add an entirely product line to the case.

21    Further, the untimely and unexplained allegation of use had no apparent effect on any

22    of Plaintiffs' disclosed damages theories nor did Plaintiffs suggest it would.  But by

23    authorizing Plaintiffs to seek discovery on AirPods damages, this Court appears to

24    have inadvertently opened the door to allowing Plaintiffs to proceed on an

25    insufficiently disclosed and substantively unsupported AirPods *liability* theory.

26          Given this absence of evidence, the simplest course would be to simply deny

27    Plaintiffs' untimely request on the grounds that it implicates a "new legal theor[y]…

28

raised after the close of discovery," denying Apple the "time to 'formulate the discovery it need[s] on the[] new theor[y] and then to serve written discovery requests." Ex. P at 3 (explaining that several of Plaintiffs' FRCP 26(a)(2)(C) disclosures were struck on this ground). But if this Court's order stands, Apple respectfully requests the following:

- Bifurcation of ▉ No. 5—the only alleged secret Plaintiffs have alleged is used in relation to AirPods—with a trial on ▉ No. 5 set for later this year at a date convenient for the Court, and trial on the other alleged secrets proceeding as scheduled next month;

- Reopening of fact and expert discovery with respect to ▉ No. 5 in order to enable, for example, collection and presentation of evidence that proximity sensing is long-known; identification of Apple engineers responsible for incorporating that technology into AirPods; identification of references relevant to the "generally known" theory under Plaintiffs' new expansion; and

- Reopening of summary judgment to allow Apple to move for summary judgment on the AirPods products, given no reasonable factfinder could find those products use ▉ No. 5.

Should the Court not wish to bifurcate, Apple requests that trial be delayed until the above discovery and motion practice can occur.

To be clear, Apple is ready to proceed to trial next month on the trade secret allegations that Plaintiffs have actually pursued over the course of this case. But if the case is going to be expanded at the eleventh hour to include a new product category with respect to ▉ No. 5, Apple respectfully requests a full opportunity to demonstrate the deficiencies in any theory of liability applied to that new product category.

### BACKGROUND

**A.** During fact discovery, Plaintiffs never suggested that AirPods had any relevance to this case. While Plaintiffs served broad discovery requests seeking

Wilmer Cutler
Pickering Hale
and Dorr LLP

information on products beyond Watch, Apple declined to produce on the grounds that non-Watch products were irrelevant.  Opp. 2-3.  Plaintiffs never challenged that response in front of the Special Master.  And when Apple served Interrogatory No. 10, asking Plaintiffs to identify how Apple uses each purported trade secret in an Apple product and which products are accused, Ex. B at 12-13, neither Plaintiffs' initial response nor its seven supplemental responses made any reference to AirPods, Ex. A. Plaintiffs still have not updated that interrogatory response to explain their theory for how AirPods implicate any of the purported trade secrets.

There is a good reason Plaintiffs did not mention AirPods during fact discovery: They have nothing to do with the technology at issue in this case, which generally focuses on ██████████████████████████████████ ████████████████████████████████████████████████ *See, e.g.*, Ex. Q at 3 (Plaintiffs urging that Apple should apply the following definition of ██████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ For example, ███ No. 5—the only alleged trade secret Plaintiffs claim is relevant to AirPods—recites: ████████████████████ ███████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████ Ex. 14 at 3 (emphasis added).

Apple Watch is the one Apple product that takes such measurements of the ██████████████████████████████████████.  AirPods, in contrast, are merely wireless headphones.  Since they were introduced six years ago, AirPods have used a "proximity sensor" to determine if either earpiece is in the user's ear, which allows the AirPods to automatically turn off or on as needed.  The

proximity sensor was prominently featured in the original marketing for the AirPods. *E.g.*, Ex. R (September 2016 press release noting that AirPods can "detect when [they] are in your ear, so they only play when you are ready to listen"); Ex. H at 4-5 (October 2021 press release describing AirPods' "skin-detect sensor"). And the same basic sensing technology has been used in iPhones since the release of the original product in 2007—e.g., to make the phone's screen turn off when it is held close to the face during a phone call. Ex. S at 3 (January 2007 press release noting that "iPhone's built-in proximity sensor detects when you lift iPhone to your ear and immediately turns off the display").

Because AirPods technology is far removed from that at issue in this litigation—and because Plaintiffs gave no indication that their claims covered it—Apple took no written or deposition-based discovery related to AirPods. Nor has Apple identified the engineers or other personnel who could serve as witnesses to explain why any suggestion that the product implicates Plaintiffs' trade secrets is meritless. Instead, Apple structured its case around the allegations that Plaintiffs did make—i.e., that Watch misappropriates the purported secrets.

**B.** On November 2, 2022—nearly 12 weeks after the close of fact discovery and two days before the relevant report from Apple's expert was due—Plaintiffs served a nine-page "supplemental" expert report that for the first time mentioned AirPods when discussing Plaintiffs' theory of misappropriation for ███ No. 5. The focus of the supplemental report was on a type of a chip called the "███████████." Dr. Madisetti stated that it was his opinion that the ████████████████████

████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

1 ██████████████████████████████████████████████████

2 Madisetti refers to AirPods just twice—once when conclusorily asserting that "████

3 ████████████████████," *id.* at 2, and again when mentioning the type of

4 ████████████████████████████████████, *id.* at 5.  He provides no explanation

5 for how AirPods (██████████████████████), actually use the purported secret,

6 given that neither ████████████████████████████████████████████████

7 ███████████████

8      **C.**    On November 17, 2022, Plaintiffs sent a brief email informing Apple that

9 they believed AirPods misappropriated ██ No. 5.  Opp. 6 (citing Ex. K).  Apple

10 responded on November 29, 2022, asking for the basis for that assertion.  *Id.*  Plaintiffs

11 never answered.  *Id.*  A copy of that email exchange is reproduced on the following

12 page:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23    Ex. K at 1.

24          Plaintiffs did not even attempt to fully explain their liability theory until after

25    6:30pm PT on January 9, 2022, Ex. L at 1—three weeks after the deadline to file a

26    summary judgment motion and a few hours before the law and motion deadline, Dkts.

27    627, 898.  A copy of that email exchange is reproduced below:

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

Ex. L. at 1.

**ARGUMENT**

This Court's February 3, 2023 Order appears to suggest that Plaintiffs may

argue at trial that AirPods misappropriated ▮ No. 5.  Ex. O at 5 (declining to address

1    Apple's arguments about liability because Plaintiffs' "motion does not pertain to

2    liability"). This may be because Plaintiffs' briefing repeatedly (and misleading)

3    implied that discovery has yielded sufficient evidence for Plaintiffs to permissibly

4    argue liability in front of the jury. *See* Mot. 1 ("Masimo will … present liability on

5    Apple's AirPods-related misappropriation" to the jury); *see also* Mot. 8 (similar);

6    Reply 2, 8, 12-13 (similar).

7         To be clear, Plaintiffs have only accused AirPods of using ███ No. 5, and ███ No.

8    5 covers only ████████████████████████████████████████████████

9    that have long been at the center of this case. *See supra* p. 4; *see also, e.g.*, Dkt. 815 at

10   3, 5. None of Plaintiffs' allegations on this front are in the complaint and neither

11   Plaintiffs nor their experts have explained ████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████ They merely detect

14   contact with the skin, a function that their own expert has indicated falls outside ███

15   No. 5. *See* Ex. M ¶¶ 511, 554 (███ No. 5 covers the field of "███████████████

16   ████████████████████"). As it has in the past, this Court should refuse to "endorse"

17   Plaintiffs' "strategy of introducing [a new legal theory] at this late hour when Apple

18   effectively has no opportunity" to "demonstrat[e] that the theory cannot apply here."

19   Dkt. 906 at 5.[3]

20        While Plaintiffs have tried to overcome their own expert's statements by arguing

21   that ███ No. 5 is not textually limited ████████████████, the only evidence they

22   have pointed to is a passing comment from one of Apple's engineers, Mr. Jack Fu.

23   Reply 12. But Plaintiffs omit the context of that statement. When they originally

24   asked Mr. Fu to identify "████████████████████████████████████████

25   _____

26   [3] Plaintiffs have faulted Apple for making this point using "attorney argument," Reply
27   12, but this simply underscores that Apple has had no real opportunity to seek fact
     discovery or provide expert discovery on the issue.

28



In other words, Mr. Fu hardly "admitted" (Reply 12) that AirPods measure a ███████████████████ within the meaning of the purported secret.  But even if he had, the fact that AirPods █████████████████████████████████████████ ████████ has been publicized by Apple for years.  *See supra* pp. 4-5.  If that feature was the smoking gun that informed Plaintiffs that AirPods might be relevant to their trade secret case, they could have raised the issue in their original complaint.

Moreover, even if Mr. Fu's statement provided more than a scintilla of evidence regarding whether AirPods measure ███████████████, he made his comment in ***June 2022***, *see* Ex. 19 at 1 (emphasis added)—over two months before the close of fact discovery, five months before Madisetti's November 2022 report, and seven months before Plaintiffs sought additional discovery on damages.  If Plaintiffs truly believe that Mr. Fu's deposition testimony is the linchpin of their liability case, they should have raised the AirPods issue months earlier.  While Plaintiffs assert that Mr. Fu's statement did not provide "sufficient detail" to disclose that AirPods implicate █ No. 5, Reply 5, they provide no reason why that is so, given that █ No. 5 is written in incredibly broad language that would appear to cover any "███████████████████ ████████████████████████████."  *See supra* p. 4.

Plaintiffs have also argued that Apple has somehow "waived" the right to challenge their belated AirPods liability theory by not moving for summary judgment on AirPods or moving to strike Dr. Madisetti's supplemental report.  Reply 1, 12.  But

1    Apple could not write either motion without knowing Plaintiffs' basis for how the

2    "███████████████" limitation was met, which was only provided on the

3    evening of January 9, 2023—weeks after the summary judgment deadline and hours

4    before the law and motion deadline. *See supra* pp. 7-8. Moreover, there was no

5    reason to take such actions since no additional relief was sought based on the theory.

6    Plaintiffs have not, for example, supplemented their damages report—which addresses

7    reasonable royalty damages—to add any theory related to AirPods. The question only

8    became ripe when Plaintiffs made clear with their motion that they intended to pursue

9    a separate AirPods case with an added theory of liability and damages.

10        Apple respectfully submits that the best course under the circumstances would

11   be for this Court to close the evidentiary door it inadvertently opened and deny

12   Plaintiffs' motion for damages discovery outright. Such a ruling would be consistent

13   with this Court's recent statement that "it is well settled that 'a party may not use an

14   expert report to introduce new … theories … not disclosed' in the party's

15   contentions.'" Ex. P at 10-11.

16        The only just alternative is to reopen fact and expert discovery with respect to

17   ██ No. 5 and either bifurcate ██ No. 5 or vacate the current trial date. In particular:

- Plaintiffs still need to articulate their theory that AirPods use any alleged
  secret and supplement their contentions, including their response to Apple's
  Interrogatory No. 10.
- Apple will need to search for and produce documents on AirPods, identify
  relevant witnesses, and update its own discovery responses.
- The parties will need to revisit their expert reports, as Plaintiffs' view of what
  "███████████████" encompasses (as articulated for the first time
  on January 9, 2023) affects the scope of at least the ██████ trade secrets
  and thus necessarily impacts Apple's expert's opinions regarding whether the
  purported secrets are generally known and/or are possessed by Plaintiffs.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

Any other approach would simply reward Plaintiffs for waiting until just a few months before trial to raise a new and dubious theory of liability.

As the parties are poised to go to trial next month, Apple believes ▇ No. 5 could be bifurcated so as not to delay resolution on the remaining 28 purported secrets not implicated by Plaintiffs' new theory.  After the above discovery with respect to ▇ 5 is complete, Apple believes the allegations as to AirPods can be dealt with on summary judgment as no fact finder could conclude they perform "▇▇▇▇▇ ▇▇▇▇▇▇."

## CONCLUSION

Apple respectfully requests that this Court deny Plaintiffs' motion outright or, in the alternative, bifurcate proceedings on ▇ No. 5 or vacate the current trial date in order to allow Apple time to seek discovery into and file a motion for summary judgment on the AirPods issue.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

Dated:  February 8, 2023                    Respectfully submitted,

2

3                                                          MARK D. SELWYN
4                                                          AMY K. WIGMORE
                                                           JOSHUA H. LERNER
5                                                          SARAH R. FRAZIER
                                                           NORA Q.E. PASSAMANECK
6                                                          THOMAS G. SPRANKLING
7                                                          WILMER CUTLER PICKERING HALE AND
                                                           DORR LLP
8

9                                                          BRIAN A. ROSENTHAL
10                                                         GIBSON, DUNN & CRUTCHER LLP

11                                                         KENNETH G. PARKER
12                                                         HAYNES AND BOONE, LLP

13

14                                                         By:  */s/ Mark D. Selwyn*
15                                                              Mark D. Selwyn

16

17                                                         *Attorneys for Defendant Apple Inc.*

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc., certifies that this brief contains 3,697 words (3,074 words in text; 623 in the reproduced emails), which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated: February 8, 2023                    Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  /s/ Mark D. Selwyn
     Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*