# EXHIBIT 24

1

```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

                         SOUTHERN DIVISION

                              - - -

           THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


           MASIMO CORPORATION, et al.,    )CERTIFIED TRANSCRIPT
                           Plaintiffs, )
               vs.                         )
                                           )  SACV-20-00048-JVS
           APPLE, INC.,                    )
                           Defendant.   )
           ------------------------------)



                 REPORTER'S TRANSCRIPT OF PROCEEDINGS

                       Santa Ana, California

                        February 6, 2023



                         SHARON A. SEFFENS, RPR
                         United States Courthouse
                         411 West 4th Street, Suite 1-1053
                         Santa Ana, CA  92701
                         (612) 804-8655
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 24
-3-

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiffs:

 3   JOSEPH R. RE
     BRIAN CHRISTOPHER CLAASEN
 4   BENJAMIN A. KATZENELLENBOGEN
     KNOBBE MARTENS OLSON & BEAR, LLP
 5   2040 Main Street, 14th Floor
     Irvine, CA  92614
 6   (949) 760-0404

 7   MARK D. KACHNER
     KNOBBE MARTENS OLSON & BEAR, LLP
 8   1925 Century Park East, Suite 600
     Los Angeles, CA  90067
 9   (310) 551-3450

10   ADAM POWELL
     DANIEL P. HUGHES
11   KNOBBE MARTENS OLSON & BEAR, LLP
     3579 Valley Centre Drive, Suite 300
12   San Diego, CA  92130
     (858) 707-4000
13

14   For the Defendant:

15   JOSEPH J. MUELLER
     SARAH R. FRAZIER
16   WILMER CUTLER PICKERING HALE & DORR, LLP
     60 State Street
17   Boston, MA  02109
     (617) 526-6000
18
     AMY K. WIGMORE
19   WILMER CUTLER PICKERING HALE & DORR, LLP
     2100 Pennsylvania Avenue, N.W.
20   Washington, DC  20037
     (202) 663-6096
21
     THOMAS GREGORY SPRANKLING
22   MARK D. SELWYN
     WILMER CUTLER PICKERING HALE & DORR, LLP
23   2600 El Camino Real, Suite 400
     Palo Also, CA  94306
24   (650) 858-6031

25
```

```
 1   JOSHUA HAWKES LERNER
     WILMER CUTLER PICKERING HALE & DORR, LLP
 2   One Front Street, Suite 3500
     San Francisco, CA  94111
 3   (628) 235-1124

 4   KENNETH G. PARKER
     HAYNES & BOONE, LLP
 5   600 Anton Boulevard, Suite 700
     Costa Mesa, CA  92626
 6   (949) 202-3014

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 24
-5-

| | | |
|---|---|---|
| 02:57 | 1 | Apple Watch source code.  Only Apple can do that.  So the |
| 02:57 | 2 | suggestion that somehow we could have conducted a test |
| 02:58 | 3 | before Apple did is just impossible. |
| 02:58 | 4 | On the limitation-by-limitation issue, Your Honor, |
| 02:58 | 5 | I think the most important point here is that you did not |
| 02:58 | 6 | hear them dispute that these opinions were not new.  They |
| 02:58 | 7 | never said that.  Instead, again they suggest that this is |
| 02:58 | 8 | some sort of how appropriate because it came in a rebuttal |
| 02:58 | 9 | report. |
| 02:58 | 10 | But, Your Honor, we moved to compel in front of |
| 02:58 | 11 | the special master, and the special master said that if |
| 02:58 | 12 | Apple needed to provide rebuttal on any, quote, "particular |
| 02:58 | 13 | inventorship argument made by plaintiffs on a |
| 02:58 | 14 | limitation-by-limitation basis," then it needed to do so |
| 02:58 | 15 | prior to trial and in response to our interrogatory.  So |
| 02:58 | 16 | these are new opinions, and the special master ordered Apple |
| 02:58 | 17 | to provide them if they intended to prevent these rebuttal |
| 02:58 | 18 | opinions at trial. |
| 02:58 | 19 | Finally, Your Honor, on the O'Reilly issue, I |
| 02:58 | 20 | disagree with what counsel said there, but it sounds like |
| 02:59 | 21 | we're going to meet and confer on that, so we'll defer on |
| 02:59 | 22 | that. |
| 02:59 | 23 | THE COURT:  Okay.  Very good. |
| 02:59 | 24 | Let's move to the next motion, which is -- |
| 02:59 | 25 | MR. POWELL:  Your Honor, if I may, I think the |

```
02:59   1    only motion left is the Motion to Strike Interrogatory 33
02:59   2    that both sides have submitted on.
02:59   3              THE COURT:  Okay.  Have we covered everything
02:59   4    then?
02:59   5              MR. POWELL:  Yes, Your Honor.
02:59   6              MR. MUELLER:  Your Honor, it's correct with
02:59   7    respect to those two motions.  As to the motion on the
02:59   8    supplemental interrogatory responses, which is Docket No.
02:59   9    1080, it is correct that we are submitting on that, Your
02:59  10    Honor.  It's also correct as was represented earlier that
02:59  11    we're submitting on Docket 1125.
02:59  12              We did have two additional issues, Your Honor, if
02:59  13    we could.  I still want to address something in the
02:59  14    tentative.
02:59  15              THE COURT:  Okay.
02:59  16              MR. RE:  I have one point of clarification that my
02:59  17    team noted.  They didn't know if I was clear on something,
02:59  18    and that dealt with my opening subject dealing with
02:59  19    paragraph B, lost profits, on page 12.  In our view because
03:00  20    we can't present a lost profits case without Mr. Kinrich,
03:00  21    this portion should be denied because an expert is not
03:00  22    needed.
03:00  23              THE COURT:  It will be modified, sir -- well,
03:00  24    granted in part and denied in part.
03:00  25              MR. RE:  Well, if you don't agree with me on that
```

```
03:00   1    other issue on Mr. Kinrich.
03:00   2             THE COURT:  Right.  Okay.
03:00   3             Mr. Mueller.
03:00   4             MR. MUELLER:  Yes, Your Honor.  We had one
03:00   5    additional issue with respect to Your Honor's rulings and
03:00   6    then a couple of questions for Your Honor with respect to
03:00   7    trial procedures.  We thought it might be a good time to
03:00   8    ask.
03:00   9             THE COURT:  Sure.
03:00  10             MR. MUELLER:  With respect to Your Honor's
03:00  11    rulings, with Order No. 1109 -- and this is the order
03:00  12    regarding the motion for limited discovery on AirPods
03:01  13    royalties -- Your Honor ruled that that was a final order
03:01  14    and did not want to hear argument, and we certainly want to
03:01  15    be respectful of Your Honor's guidance on that.
03:01  16             That said, we do have concerns with the
03:01  17    implications of this order for the trial, and I can address
03:01  18    those now, Your Honor, or I can submit a brief.  We're happy
03:01  19    to do so by Wednesday laying out in full our concerns,
03:01  20    whatever Your Honor's preference is.  I can briefly preview
03:01  21    what the issues are.
03:01  22             THE COURT:  Why don't you give me a preview and
03:01  23    put in what you want by Wednesday.
03:01  24             MR. MUELLER:  Sure.  Very, very quickly, Your
03:01  25    Honor, the concerns are as follows.  As our briefing -- as
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 24
-8-

| | | |
|---|---|---|
| 03:01 | 1 | we tried to make clear, and we'll try to make this even |
| 03:01 | 2 | clearer in our Wednesday filing, AirPods were not part of |
| 03:01 | 3 | this case during fact discovery and in any way accused of |
| 03:01 | 4 | trade secret misappropriation.  Even as of today, including |
| 03:01 | 5 | based on the most recent flurry of briefing on this subject |
| 03:01 | 6 | that led to Your Honor's order, the only even suggestion of |
| 03:02 | 7 | any trade secret misappropriation has to do with the same |
| 03:02 | 8 | LP 5 secret that we've heard about a few times today. |
| 03:02 | 9 | Now, again, I'm not going to deal with the |
| 03:02 | 10 | specifics of that in open court, but I will say this, Your |
| 03:02 | 11 | Honor.  Part of what is alleged to be a trade secret for |
| 03:02 | 12 | LP 5 is a physiological measurement.  Physiological |
| 03:02 | 13 | measurement is part of LP 5.  AirPods just don't do that |
| 03:02 | 14 | under any colorable theory.  They were not alleged to have |
| 03:02 | 15 | done that up until very, very recently in a short |
| 03:02 | 16 | supplemental expert report by Dr. Madisetti, their technical |
| 03:02 | 17 | expert. |
| 03:02 | 18 | And I will note, Your Honor -- and we'll spell |
| 03:02 | 19 | this out in greater detail in our brief on Wednesday -- even |
| 03:02 | 20 | in that supplemental report, Dr. Madisetti's study does not |
| 03:02 | 21 | crystally and clearly state that the AirPods actually |
| 03:02 | 22 | execute a physiological measurement using the alleged trade |
| 03:02 | 23 | secret nor could he. |
| 03:02 | 24 | As a factual matter, what the AirPods do is they |
| 03:03 | 25 | will turn off if they're not in the ear.  That's not a |

Case 8:20-cv-00048-JVS-JDE   Document 1287-2   Filed 02/10/23   Page 9 of 19   Page ID
#:129582

```
03:03   1   physiological measurement like heart rate or blood oxygen or
03:03   2   anything like that.  It's called proximity sensing, and it's
03:03   3   a very old technology that was used as early as the earliest
03:03   4   iPhone.  Proximity sensing -- again, there's just no
03:03   5   colorable argument that would be a physiological measurement
03:03   6   of the type that's accused of trade secret misappropriation
03:03   7   in this case.
03:03   8            Our concern with the order -- again, we'll spell
03:03   9   this out in detail in our Wednesday filing -- is that what
03:03  10   is being treated by the plaintiffs as just a request for
03:03  11   supplemental discovery on units sold and so on for purposes
03:03  12   of a reasonable royalty is being used to hop over the
03:03  13   threshold question of is there an actual liability theory
03:03  14   being advanced as against the AirPods?
03:03  15            We think that if there were such a theory, which
03:03  16   we don't think there possibly could be, there would be at
03:03  17   least two things that would need to happen, Your Honor.  The
03:03  18   first is that that would require substantial new discovery
03:03  19   and not just on financial issues.  But to give one example,
03:04  20   on these questions of generally known and other -- readily
03:04  21   ascertainable, other issues pertaining to what was known in
03:04  22   the past, there would be a whole new dimension to discovery
03:04  23   needing to be done on proximity sensing which, again, has
03:04  24   been a very old technology.  It goes back to the original
03:04  25   iPhone.  We hadn't understood this to be part of their case,
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 24
-10-

```
03:04   1    so that subject wasn't a subject of fact discovery or expert
03:04   2    discovery for that matter.
03:04   3            The second thing, Your Honor, is that we would
03:04   4    absolutely move for summary judgment on this issue, because
03:04   5    these are not even close to what any reasonable finder of
03:04   6    fact, the jury, could find to be a physiological
03:04   7    measurement.
03:04   8            So we're very concerned that a request for
03:04   9    supplemental damages discovery is being used to hopscotch
03:04  10    over the liability questions by the plaintiff.  And we're
03:04  11    also very, very concerned that this is going to have to
03:04  12    result in our request for more discovery and a
03:04  13    jeopardization of the trial date, which to be very clear,
03:04  14    Your Honor, we don't want to move.  We're ready to try this
03:05  15    case next month.  We are prepared to try the claims that
03:05  16    were actually advanced over the course of fact discovery,
03:05  17    but the AirPods issue would imperil all of that.  And we can
03:05  18    explain this with great specificity in our filing on
03:05  19    Wednesday.
03:05  20            THE COURT:  Okay.  Very good.
03:05  21            MR. MUELLER:  The other issues that we have, Your
03:05  22    Honor, really relate just to administrative questions on the
03:05  23    trial process.  And we defer to Your Honor of course on all
03:05  24    of this, but just to flag a few that will help the parties
03:05  25    in meeting and conferring, I'll start with the deadline for
```

```
03:05  1   submitting the jury instructions to the Court.  There's just
03:05  2   a little bit of confusion on both sides based on Your
03:05  3   Honor's standing orders versus the Rule 26 report.
03:05  4           Your standing trial order states at page 2 that
03:05  5   the jury instructions shall be filed no later than seven
03:05  6   days prior to the trial, which in this case would be
03:05  7   March 21st.  The Rule 26 report had the date as March 13th.
03:05  8   We had understood that that has been superceded by various
03:05  9   orders since then.  Whatever Your Honor prefers, we'll do,
03:06 10   but whether it's the 21st or the 13th, we'd certainly defer
03:06 11   to you.  It would just help us to have some clarity as to
03:06 12   when you'd like them.
03:06 13           THE COURT:  I think the 21st.  Seven days in
03:06 14   advance should be sufficient.
03:06 15           MR. MUELLER:  Thank you, Your Honor.
03:06 16           The next one is, Your Honor, under Local -- Local
03:06 17   Rule 16.3 requires disclosure of trial demonstratives at
03:06 18   least 11 days before trial.  As Your Honor knows, in these
03:06 19   intellectual property cases, there's often a lot of
03:06 20   demonstratives.  We would ask Your Honor's permission to
03:06 21   meet and confer with the plaintiff to set an alternate
03:06 22   process for demonstratives.
03:06 23           THE COURT:  That's fine.
03:06 24           MR. MUELLER:  Then the last couple ones we had,
03:06 25   Your Honor, in terms of -- and this will have implications
```

| | | |
|---|---|---|
| 03:06 | 1 | for the length of trial.  The number of witnesses in the |
| 03:06 | 2 | Masimo witness list -- and we've already met and conferred |
| 03:06 | 3 | on this -- we believe is just way overbroad.  They've |
| 03:06 | 4 | disclosed 49 may call witnesses to us, along with 11 will |
| 03:06 | 5 | call witnesses. |
| 03:06 | 6 | We just don't see any way the trial could be done |
| 03:07 | 7 | in any reasonable timeframe.  Also, we have trouble holding |
| 03:07 | 8 | time on our own employees' calendars with that many |
| 03:07 | 9 | witnesses disclosed.  So we would ask Your Honor to instruct |
| 03:07 | 10 | both sides to make sure their witness lists are truly in |
| 03:07 | 11 | keeping with the spirit of good faith disclosures on who |
| 03:07 | 12 | might truly be called at trial to allow us to work with our |
| 03:07 | 13 | witnesses to be available. |
| 03:07 | 14 | Case narrowing, again, we have begun a |
| 03:07 | 15 | conversation with the plaintiff on narrowing the scope of |
| 03:07 | 16 | their trade secret allegations, and also we would agree to |
| 03:07 | 17 | reciprocally narrow some of our defenses once we have an |
| 03:07 | 18 | understanding of which secrets they intend to proceed to |
| 03:07 | 19 | trial on.  They currently have over two dozen.  We're |
| 03:07 | 20 | skeptical they're going to go forward on all two dozen plus |
| 03:07 | 21 | of those trade secrets.  So we're working with them to try |
| 03:07 | 22 | to effect a narrowing on both sides, and we'll report back |
| 03:07 | 23 | to Your Honor as soon as we can.  But if they're not |
| 03:08 | 24 | narrowed, that will have implications for what we request |
| 03:08 | 25 | for trial time. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 24
-13-

| | | |
|---|---|---|
| 03:08 | 1 | Then the final thing we have on our list, Your |
| 03:08 | 2 | Honor, is we have some concerns -- and this may become ripe |
| 03:08 | 3 | for further discussion a bit later -- with respect to the |
| 03:08 | 4 | extent to which the plaintiffs are treating information as |
| 03:08 | 5 | information that Apple can't see or hear.  This will |
| 03:08 | 6 | certainly come up at trial, but there's one issue that I |
| 03:08 | 7 | wanted to raise right now. |
| 03:08 | 8 | We've asked for permission just to share with |
| 03:08 | 9 | anyone we want at the company, including finance and |
| 03:08 | 10 | accounting folks, the bottom-line damages requests by |
| 03:08 | 11 | Masimo, just the numbers at the bottom line as opposed to |
| 03:08 | 12 | the way they derived those numbers.  We've been told they |
| 03:08 | 13 | will not give us permission to do that, and we just can't |
| 03:08 | 14 | see any reasonable basis for that. |
| 03:08 | 15 | THE COURT:  Well, I assume you'd have some kind of |
| 03:08 | 16 | SEC obligation to disclose major contingent liabilities. |
| 03:08 | 17 | MR. MUELLER:  That's exactly right, Your Honor. |
| 03:08 | 18 | We have to assess things like that, and we can't do it |
| 03:08 | 19 | unless we can disclose just what the amount that they're |
| 03:08 | 20 | seeking is, as distinct from the way in which they derived |
| 03:09 | 21 | the amount.  There's no conceivable way anyone could look at |
| 03:09 | 22 | just the bottom-line numbers and derive anything from that |
| 03:09 | 23 | other than the bottom-line numbers themselves.  So we would |
| 03:09 | 24 | ask for a ruling that we can do that, Your Honor. |
| 03:09 | 25 | THE COURT:  Mr. Re. |

```
03:09   1           MR. POWELL:  I'd like to address that, if I may,
03:09   2    Your Honor.
03:09   3           THE COURT:  Mr. Powell.
03:09   4           MR. POWELL:  Would you like me to start at the end
03:09   5    where counsel left off?
03:09   6           THE COURT:  Well, sure.  Let's take the last --
03:09   7    the disclosure of the number.
03:09   8           MR. POWELL:  Sure, the disclosure of the numbers.
03:09   9    We have offered to allow Apple to treat those numbers as
03:09  10    confidential, and we've asked them why they need to disclose
03:09  11    the information for purposes other than this case.  Apple
03:09  12    has not clearly explained what it is they need to do with
03:09  13    those numbers.
03:09  14           THE COURT:  How about putting them in an SEC
03:09  15    filing?
03:09  16           MR. POWELL:  That's not what they told us yet.
03:09  17    And we have a meet and confer scheduled for this afternoon
03:09  18    on this exact issue.  That's what I plan to ask them is what
03:09  19    do you plan to do with this and see if we can work it out.
03:09  20    I don't think it's ripe or we need to bother you with it at
03:10  21    this time.
03:10  22           THE COURT:  Okay.  Fine.
03:10  23           MR. POWELL:  The second issue I'll deal with is
03:10  24    the witness list.  Counsel is correct that both sides have
03:10  25    rather large witness lists at this point.  What counsel
```

```
03:10   1    didn't mention is that the witness lists say that many
03:10   2    witnesses are may call or by deposition, and we've asked
03:10   3    Apple if the parties would agree to allow witnesses to
03:10   4    appear by deposition if it's a very short deposition, say a
03:10   5    five-minute deposition clip, rather than dragging the
03:10   6    witness into trial.  Apple just responded to us again on
03:10   7    that this morning.
03:10   8              We plan to again meet and confer with them this
03:10   9    afternoon.  I don't think it's ripe or we need to bother you
03:10   10   at this time.  I hope the parties can work it out.  I expect
03:10   11   both parties will be narrowing that list this week after we
03:10   12   have that meet and confer.
03:10   13             THE COURT:  Okay.  I believe we've discussed
03:10   14   previously a ten-day trial, but am I mistaken?
03:10   15             MR. POWELL:  I believe the parties suggested ten
03:10   16   to 15 days, Your Honor.
03:10   17             THE COURT:  And I think my reaction was ten days.
03:11   18             MR. POWELL:  Understood, Your Honor.
03:11   19             THE COURT:  But you understand when I give the
03:11   20   parties a budget that's just evidence.  It's not openings.
03:11   21   It's not voir dire.  It's not closings.  So it's just the
03:11   22   prime cut, so to speak.
03:11   23             MR. POWELL:  Understood.  I will address as well
03:11   24   the narrowing issue.  This is something that we've addressed
03:11   25   with counsel.  The main problem is that Apple currently has
```

```
03:11   1    about 500 generally known references and perhaps tens of
03:11   2    thousands or hundreds of thousands combinations of those
03:11   3    references.  What happened during the 40-day meeting is we
03:11   4    told them what causes of action we were going to pursue.  We
03:11   5    asked them to tell us what defenses they would pursue, not
03:11   6    the generally known references, just the actual defenses in
03:11   7    the answer.
03:11   8             Apple declined at the time.  They told us that we
03:11   9    needed to narrow our trade secret case first.  Again, the
03:11   10   parties are having some disputes here, but we plan to meet
03:11   11   and confer with them.  I don't think it's ripe and that we
03:12   12   need to bother you at this time.
03:12   13            I think the main issue is we've got about, you
03:12   14   know, a few -- a couple dozen trade secrets.  They have 500
03:12   15   generally known references.  So I think there's a lot more
03:12   16   narrowing that needs to happen on their end than our end,
03:12   17   but we're going to work that out and do the best we can.  If
03:12   18   we have any problems, I suggest we talk to you at that time.
03:12   19            THE COURT:  Very good.
03:12   20            MR. POWELL:  Finally, I'll address the AirPods
03:12   21   issue.  Counsel never mentioned that they would raise
03:12   22   AirPods.  The Court had a final order on that, so the person
03:12   23   who is actually primarily responsible for that motion is not
03:12   24   here today because we thought that issue had been resolved.
03:12   25   If counsel had indicated that they planned to raise the
```

57

```
03:12   1    issue, we would of course have brought him, but I'll do my
03:12   2    best.
03:12   3             All of these issues have been briefed in the
03:12   4    briefs already.  Counsel made the same arguments about
03:12   5    physiological measurement, the same arguments on liability.
03:12   6    Most importantly, we identified in the expert report this
03:12   7    theory of liability.  Apple didn't move to strike it.  It
03:12   8    didn't object.  It didn't file for summary judgment.  And it
03:12   9    sounds like what they want now is an untimely motion for
03:13  10    summary judgment after they had their chance to do so.
03:13  11             They've known about this theory for a long time,
03:13  12    and I think the order of the Court is absolutely correct.  I
03:13  13    don't think it should be revisited, particularly on an oral
03:13  14    motion for reconsideration with further briefing.  I don't
03:13  15    see any basis for that.
03:13  16             THE COURT:  I assume you'd like to respond to
03:13  17    their Wednesday filing.
03:13  18             MR. POWELL:  I'm sorry?
03:13  19             THE COURT:  I assume you'd like to respond to
03:13  20    their Wednesday filing.
03:13  21             MR. POWELL:  If they are permitted to file a
03:13  22    Wednesday filing, we would like to respond.  I don't think
03:13  23    it's necessary, but if Your Honor would like them to do
03:13  24    that, then we would like to respond.
03:13  25             THE COURT:  Very good.  Can you do that by the end
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 24
-18-

```
03:13   1    of the day Friday?
03:13   2            MR. POWELL:  Yes, Your Honor.
03:13   3            THE COURT:  Okay.  It seems to me these are pretty
03:13   4    discrete issues.
03:13   5            MR. POWELL:  Yes, we should have no problem
03:13   6    responding.
03:13   7            THE COURT:  Okay.
03:13   8            MR. POWELL:  Anything else, Your Honor?
03:13   9            THE COURT:  No.  I might take a moment just in
03:13   10   advance of the pretrial conference to go over some of the
03:13   11   logistics in this courtroom.
03:13   12           MR. POWELL:  Would you like me to sit down?
03:13   13           THE COURT:  Yes, please.
03:13   14           MR. POWELL:  Okay.  Thank you.
03:13   15           THE COURT:  It's a ten-day trial.  I think
03:14   16   particularly with the COVID pandemic pretty much in the
03:14   17   rearview mirror that eight jurors would do.  If we do that,
03:14   18   the jury box holds 14 people, three peremptories each.  If
03:14   19   you exercise all the peremptories, we're down to our eight.
03:14   20   If you don't exercise them all, then it's the first eight
03:14   21   folks in the box.  The No. 1 seat is the top left, 1 through
03:14   22   7 and then 8 through 14.
03:14   23           In terms of peremptories, you don't lose a
03:14   24   peremptory if you pass.  However, two passes in a row, we
03:14   25   stop.  I'll probably review this all again at the pretrial
```

63

## CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: February 8, 2023

/s/   Sharon A. Seffens  2/8/23
_____
SHARON A. SEFFENS, U.S. COURT REPORTER