UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] REDACTED Order Regarding Plaintiffs' Motion for Partial Summary Judgment [1086]**

Plaintiffs Masimo Corporation (individually, "Masimo Corp.") and Cercacor Laboratories, Inc. (individually, "Cercacor Lab.") (collectively, "Plaintiffs") move for partial summary judgment on the claim of trade secret misappropriation for Trade Secrets D-9 through D-15. (Dkt. Nos. 1086, 1098.) Apple, Inc. ("Apple") opposed. (Dkt. No. 1130, 1173.) Plaintiffs replied. (Dkt. No. 1203, 1251.)

For the following reasons, the Court **DENIES** the motion.

## I. EVIDENTIARY OBJECTIONS

Apple has raised a number of evidentiary objections. (Dkt. No. 1130-2.) Evidence presented at summary judgment must be admissible and have a proper foundation to be considered. Fed. R. Civ. P. 56; Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). The Court need only rule on material evidentiary objections. Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010). The Court has considered the Apple's objections and Masimo's responses. To the extent that the Court relies on the objected-to exhibits and portions of declarations, the Court has overruled the objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |

## II. BACKGROUND

The parties are familiar with the background of this case, which is recited here only to the extent necessary to frame the discussion below. Plaintiffs allege that Apple misappropriated trade secrets relating to ██████████████ techniques, which improve the accuracy and reliability of noninvasive physiological monitoring devices. These techniques extract information about the human body's absorption of light at ████████████████. ████████████████████████████████████████. Plaintiffs designed certain methods to ████████████████ ██████████████████████. Trade Secrets D-9 through D-15 describe techniques using ████████████████████████████████████████  D-9 and D-10 are substantively different, while D-11 through D-15 incorporate the steps described in D-10. (<u>See</u> Ex. 67). Apple purportedly misappropriated these trade secrets by recruiting and employing Plaintiffs' former employee to work on its Apple Watch's health sensory components.

## III. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant,[4] shows "no genuine dispute as to any material fact" such

---

[4] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |

that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). The moving party bears the initial burden to demonstrate an absence of a genuine issue of material fact. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). If, and only if, the moving party meets its burden, then the nonmoving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact. MEMC, 420 F.3d at 1373; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the nonmoving party meets this burden, then the motion will be denied. See generally Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001). Where the parties have made cross-motions for summary judgment, each motion "must be independently assessed on its own merit." California v. United States, 271 F.3d 1377, 1380 (Fed. Cir. 2001).

### IV. DISCUSSION

Plaintiffs contend that, as a matter of law, Apple misappropriated their Trade Secrets D-9 through D-15.  The Court disagrees.

To prove a claim for misappropriation under the California Uniform Trade Secrets Act (CUTSA), Plaintiffs must prove (1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret.  Cal. Civ. Code § 3426.1.

As a threshold matter, the Court rejects Apple's argument that Plaintiffs must show "ownership" and not merely "possession" of the trade secrets.   First, the Court already rejected a similar "ownership" argument.  (See Dkt. No. 264, at 9–10.)  Second, the cases Apple cites impose no such semantic distinction.  See AMN Healthcare Inc. v. Aya Healthcare Servs., Inc., 239 Cal. Rptr. 3d 577, 593 (Ct. App. 2018); Mattel, Inc. v. MGA Ent., Inc., 782 F. Supp. 2d 911, 960 (C.D. Cal. 2011); Sargent Fletcher, Inc. v. Able Corp., 3 Cal. Rptr. 3d 279, 283 (Ct. App. 2003).   And where "ownership" was discussed as a prerequisite to a trade-secret misappropriation claim, standing was disputed—which is not at issue here.  For instance, the party in Jasmine Networks Inc. v. Superior Court, 103 Cal. Rptr. 3d 426, 431 (Ct. App. 2009) sold his intellectual property

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
|---|---|---|---|

| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. |
|---|---|

rights, divesting himself of any present interest in the underlying secret. Id. at 989. The court found that he nonetheless had standing to sue, rejecting any "current ownership rule" under the CUTSA. Id. at 429. Apple does not dispute ownership on an independent basis. For example, it does not claim that someone other than Masimo Corp. or Cercacor Lab. developed the trade secrets. Rather, it argues that what Plaintiffs seek to protect are not actionable "trade secrets." There is no genuine dispute that Plaintiffs owned the purported trade secrets.

The issue here is whether Plaintiffs have established an absence of genuine dispute that their ▮▮▮ techniques constitute "trade secrets." They have not.

    *A.*    *Whether the* ▮▮▮ *Techniques Are Trade Secrets*

Under the CUTSA, a trade secret is information that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d).

    1.    <u>Independent Economic Value from Not Being Generally Known</u>

The standard to show that trade secrets derive independent economic value "is not a high standard." Cisco Sys., Inc. v. Chung, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020). Whether information constitutes a "trade secret" is a question of fact. Thompson v. Impaxx, Inc., 7 Cal. Rptr. 3d 427, 430 (Ct. App. 2003). Information derives independent economic value from being generally unknown when it provides a business with "an actual or potential economic advantage over others." Cisco Sys., 462 F. Supp. 3d at 1052; Morlife, Inc. v. Perry, 66 Cal. Rptr. 2d 731, 736 (Ct. App. 1997) (defined as providing a "substantial business advantage" over others). "The [generally known] inquiry is not whether the alleged trade secret has been publicly disclosed at all, but whether it has become 'generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value[.]'" Kittrich Corp. v. Chilewich Sultan, LLC, No. CV 12-10079, 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013) (quoting DVD Copy Control Ass'n, Inc. v. Bunner, 116 Cal. 4th 241, 251 (2004)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:20-cv-00048-JVS-JDE        Date   February 7, 2023

Title    Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc.

Plaintiffs have not carried their Celotex burden in establishing that their ▓ techniques are trade secrets as a matter of law. 477 U.S. at 322–24. They first point to one email by Lamego, wherein he described the benefits of ▓ ▓ When describing the ▓ ▓ Lamego remarked, ▓ ▓ But the parties dispute whether he was actually referring to the technique as described in D-9. (Opp'n 10; Reply 11.) Thus, the weight and implication of Lamego's statements are disputed.

Nor do the statements made by Plaintiffs' witnesses establish that the techniques were generally unknown at the time. Plaintiffs' scientist, Mohamed Diab, testified that he was not personally aware whether competitors used similar ▓ techniques. (Diab Decl. ¶¶ 29–30; Ex. H, at 270–71, 276:3–11.) Yet the COO, Muhsin, testified that ▓ ▓ was "known outside of Masimo" at the time. (Ex. F, at 83.) And while Lamego stated that the ▓ were "[o]bviously" "confidential information," (Ex. 43), this does not necessarily mean that he also believed the underlying techniques were trade secrets.

Apple's concessions in the ▓ application provide only some evidence showing that the techniques were generally unknown. In its ▓ application, Apple conceded that certain techniques, which mirror Masimo's ▓ techniques, were "non-obvious." (▓ But as Apple correctly points out, the passage reflects only a portion of ▓ ▓ (Compare id., with, Ex. 67, at 1335.) And while the Court agrees that these representations by Apple support that this portion may have been generally unknown, this constitutes only "*some* evidence showing the information was not generally known." Altavion, Inc. v. Konica Minolta Sys. Lab., Inc., 171 Cal. Rptr. 3d 714, 744 (Ct. App. 2014).

More importantly, there is a genuine dispute as to whether the ▓ techniques were generally unknown. Plaintiffs' expert, Madisetti, and Apple's expert, Dr. Sarrafzadeh, disagree as to the method of analysis performed to determine whether the techniques were generally known. Dr. Sarrafzadeh explained that "every aspect" of each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |

of the techniques was generally known before January 2014. (E.g., Ex. O, at 57, 18, 21, 15 (explaining that "" were well-known concepts long before" the misappropriation); Ex. P; Exs. T–FF.) Madisetti argues that this piecemeal analysis is fundamentally flawed. (Madisetti Decl. ¶¶ 132–53.)

That certain aspects of the were generally known does not preclude a finding that Plaintiffs' techniques were nonetheless trade secrets. Trade secret misappropriation may be based on a "combination" of individual concepts, even if "some or all of the elements"—or in this case, certain "aspects"—are unprotectable. Altavion, 171 Cal. Rptr. 3d at 731 (a "concept as a whole" can be a trade secret). Indeed, a trade secret "may be . . . a process which is clearly anticipated in the prior art." Id. at 736. Nevertheless, the Court concludes that Dr. Sarrafzadeh's analysis is relevant to whether a factfinder could conclude the series of techniques was unknown and valuable as a whole.

Apple also points to Plaintiffs' patent as further proof that they themselves concede that the techniques were generally known. The patent describes But this shows only that a portion of the techniques, i.e., , would have been generally known. Whether all of the steps described in the techniques, considered on balance, were generally known is a disputed fact.

Whether the techniques derived value from their secrecy is also disputed. The "appropriate inquiry in assessing economic value" is whether the techniques "conferred a competitive advantage on their owner." United States v. Chung, 659 F.3d 815, 826 (9th Cir. 2011). This burden can be "satisfied through direct evidence of the contents of the information and its impact on business operations" or through "circumstantial evidence of the resources invested by the owner in the production of the information and the precautions taken to protect the secrecy of the information." United States v. Wai Hung Tam Sing, 736 F. App'x 184, 185 (9th Cir. 2018).

Plaintiffs defend these techniques as affording them a competitive advantage by improving the accuracy of their physiological monitoring. They measure this value by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:20-cv-00048-JVS-JDE  Date February 7, 2023

Title  Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc.

pointing to (1) the "significant resources" Masimo Corp. dedicated to develop the ▇ techniques, (Diab Decl. ¶ 31; Kiani Decl. ¶ 7 ("decades of research and development" into a "collection of techniques"; Ex. J, at 130:24–131:1 ("Masimo's Trade Secrets were developed after for [sic] decades of research of hundreds of millions of dollars"), and (2) Apple's willingness to recruit Lamego and O'Reilly for their knowledge and expertise in the area of developing noninvasive, physiological monitoring technologies, (Exs. 19, 27, 28, 29.) Apple derides the ▇ techniques as "well-known concepts that are valueless to both [Masimo] and Apple." (Opp'n 1). Yet Apple implemented Lamego's ▇ schemes, which were purportedly based on Masimo's ▇ techniques, into the Apple Watch series. (Ex. 60, at 415–17; Ex. 61, 12:15–15:10.) Apple still uses these schemes to test its products. (Exs. 62–65). This supports that the ▇ techniques were independently valuable to both parties.

But there is evidence that the techniques may not have afforded Plaintiffs as much of a competitive edge as they contend. For instance, Masimo Corp.'s CEO Kiani identified, with some doubt, only ▇ ▇ nd it is undisputed that Apple does not sell any product that ▇ Plaintiffs also did not parse out the funds spent on these specific ▇ techniques from those spent on research for non-invasive physiological monitoring technology in general, including those that were patented. (Ex. J, at 129–33.)

There is a genuine dispute whether the ▇ techniques were generally unknown and if so, whether they derived value from their secrecy.

2. Reasonable Efforts to Maintain Secrecy

Whether the information was subject to reasonable efforts to maintain its secrecy is "fact-intensive" inquiry. Chung, 659 F.3d at 826; Mattel, Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911, 959–60 (C.D. Cal. 2010). Reasonable efforts to maintain secrecy "may include advising employees of the existence of a trade secret, limiting access to the trade secrets on a need to know basis, requiring employees to sign confidentiality agreements, and keeping secret documents sequestered under lock and key." Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., No. C 10-3428, 2013 WL 831528, at *18 (N.D. Cal. Jan. 10, 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:20-cv-00048-JVS-JDE     Date February 7, 2023

Title    Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc.

     It is undisputed that Plaintiffs implemented numerous workplace policies to preserve the secrecy of their confidential information, such as: requiring employees to sign confidentiality agreements; restricting access to electronically stored information; restricting physical access to restricted areas and logging visitor information; having employee policies and handbooks instructing employees how to logistically protect their systems; and conducting exit interviews to remind employees of their confidentiality obligations. (See, e.g., Exs. 3–7, 14, 15, 41, 42; Kiani Decl.; Miller Decl; Mushin Decl.) Lamego signed multiple confidentiality agreements with Masimo Corp. and Cercacor Lab. (Exs. 10, 11, 13.) When Lamego left, he received a copy of his confidentiality agreement and was reminded about his confidentiality obligations. (Ex. 16; Hammarth Decl. ¶ 36.) And Plaintiffs sent a letter to Apple alerting it to Lamego's confidentiality duties. (Ex. 34.) Such evidence supports that reasonable steps were taken to safeguard confidential information. See, e.g., MAI Sys. Corp. v. Peak Comp., Inc., 991 F.2d 511, 521 (9th Cir.1993).

     But establishing that the evidence is "so powerful that no reasonable jury would be free to disbelieve" that Plaintiffs did enough is a high hurdle to clear. Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008). It is only in "extreme cases" can the determination of what is "reasonable" be resolved at summary judgment. AT&T Commc'ns of Cal., Inc. v. Pac. Bell, No. 99-15736, 2000 U.S. App. LEXIS 23215, at *10 (9th Cir. 2000). The Court is not persuaded that this constitutes such an "extreme case." But cf. id.

     Apple argues that reasonable steps were not taken because Plaintiffs failed to distinguish between "general" and "specific" measures. (Opp'n 16.). It argues that the general workplace policies were worthless because there was no set, written policy of what was a trade secret. (Id.) Apple's arguments are unavailing. First, the evidence does not actually support that vague or confusing instructions were provided. Where there was a question about whether something was a "trade secret" versus something that was disclosed in a patent, Plaintiffs' patent attorneys would be consulted. (See Ex. G, 56:16–58:3; Ex. H, at 102–03, 56; see also Ex. D, at 85:11–17; 124:15–25; Ex. F, at 105:19–22; 106:9–21). Second, there is no evidence any employee failed to keep information secret as a result a lack of clear instruction.

     Third, the Court rejects Apple's argument that Plaintiffs must tie the "reasonableness of [their] efforts" to each of the "*claimed trade secrets*" with direct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |

evidence. (Opp'n 16 (emphasis in original) (citing Mattel, 782 F. Supp. 2d 911).) First, Mattel did not stand for this proposition. 782 F. Supp. 2d at 960. There was evidence in Mattel that as a result of "vague direction" to its employees, employees failed to mark proprietary documents—including those that were at issue—as confidential. Id. No such evidence exists here. For example, there is no evidence that as a result of Plaintiffs' allegedly unclear direction of what was proprietary or not led employees, like Lamego, to disclose the secrets. Second, the Mattel court later rejected this argument. Mattel, Inc. v. MGA Entm't, Inc., No. CV 04-9049, 2011 U.S. Dist. LEXIS 85928, at *32–33 (C.D. Cal. Aug. 4, 2011). It concluded that a factfinder need not "myopically restrict consideration of direct evidence about that particular trade secret." Id. The jury was free to consider "all of the evidence in the record." Id. at 33.

Nevertheless, given the fact-specific inquiry of assessing "reasonableness," the Court concludes that there is a genuine dispute as to whether "reasonable" steps were taken to safeguard the trade secrets.

    C.    *Whether Apple Misappropriated the Trade Secrets*

Misappropriation of a trade secret can occur by either (1) acquisition by another person who "knows or has reason to know" that the trade secret was acquired by "improper means"; or (2) "[d]isclosure or use" of the trade secret without express or implied consent. Cal. Civ. Code. § 3426.1(a)–(b); Alta Devs., Inc. v. LG Elec., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). Plaintiffs invoke all three grounds of misappropriation: acquisition, disclosure, and use.

    1.    By Acquisition

Misappropriation by acquisition occurs when a person acquires the trade secret, knowing (or having had a reason to know) that the trade secret was acquired by improper means, which includes "breach or inducement of a breach of duty to maintain secrecy." Cal. Civ. Code. § 3426.1(a), (b)(1). Plaintiffs contend that Apple acquired the trade secrets, knowing that they were acquired by "improper means," i.e., in breach of Lamego's duty of confidentiality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:20-cv-00048-JVS-JDE                                  Date   February 7, 2023

Title   <u>Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc.</u>

There is no genuine dispute that Apple knew that Lamego had a duty of confidentiality. When considering whether to hire Lamego, Apple received a warning from ▮▮▮▮▮ most of [Lamego's] knowledge ▮▮▮▮▮ may be confidential ▮▮▮▮▮ Apple received a letter from Cercacor Corp., warning Apple that Lamego had possessed a "large number of very valuable trade secrets," with an attachment of Lamego's confidentiality agreement. (Ex. 34). The foregoing evidence establishes Apple knew that Lamego possessed a duty to keep information subject to the confidentiality agreement secret.

But whether Apple knew or should have known that Lamego breached this duty is in material dispute. At the time Apple hired Lamego, it had no reason to know what was subject to Lamego's duty of confidentiality. Apple argues that the "most natural inference" was that it "assumed" Lamego would comply with his promise to not disclose them while at Apple. (Opp'n 10.) And none of the evidence cited by Masimo demonstrates that Apple knew that Lamego's ▮▮▮▮▮ were subject to his confidentiality agreement. (<u>See</u> Exs. 35, 44, 46, 47, 52, 53, 54). The Court reiterates that there is no requirement that Apple had to have known that information that Lamego used was in fact, a specific trade secret of Masimo's. (<u>See</u> Order 11–12, Dkt. 264).

Nevertheless, there was reason to believe that Apple put the pieces together. In other words, the circumstantial evidence supports a finding that Apple had reason to believe Lamego breached his duty. <u>See</u> <u>UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.</u>, 617 F.Supp.2d 938, 944 (N.D. Cal. 2007) ("Circumstantial evidence is particularly appropriate in trade secret cases."). Apple was working on its ▮▮▮ project, a project to improve the ▮▮▮▮▮ by identifying ▮▮▮▮▮ Apple targeted Masimo ▮▮▮▮▮ It met confidentially with Masimo to discuss ▮▮▮▮▮ It knew that Masimo was working on ▮▮▮ which would have been important to Apple's ▮▮▮▮▮ And it was aware that Masimo was working on ▮▮▮▮▮

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
|---|---|---|---|

| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |
|---|---|---|---|

Admitting that it was "clueless" in the field of ▇ Apple decided strategically to recruit Masimo employees ▇ ▇ Within one month, Apple hired Masimo's Chief Medical Officer. (Ex. 33, at 604.) Then, Apple hired Lamego within the year, with knowledge of Lamego's education and experiences in developing medical devices. (Id.; Ex. 28; Ex. 29.) Lamego then consulted with Apple engineers on issues of ▇ ▇ shortly after joining Apple. (See, e.g., Exs. 44, 48, 50, 58.) If Apple had reason to believe that Lamego breached his duty by supplying information to it shortly after being hired, then Apple acquired the trade secret by "improper means."

Drawing all inferences in favor of the nonmoving party, the Court concludes that a reasonable factfinder could conclude that Apple did not have reason to know that Lamego breached his duty of confidentiality by revealing and implementing the ▇ techniques at Apple.

  2. By Disclosure and Use

A person who discloses or uses the trade secret is liable for misappropriation if the person had reason to know that the knowledge was derived from a person who owed a duty to keep it secret. Cal. Civ. Code § 3462.1(b)(2)(B)(iii).

Plaintiffs contend that Apple used the ▇ techniques when it applied for the ▇ application and then disclosed them when the ▇. Apple does not dispute that this constitutes disclosure and use. (See Opp'n 20). Instead, it argues that Plaintiffs cannot show that there is an absence of genuine dispute as to Apple's state of mind. (Id.). For similar reasons as stated above, the Court agrees. There is a genuine dispute whether Apple misappropriated by use and disclosure.

  D. Harm Resulting from Misappropriation

The Court declines to address the issue of "harm" given that Plaintiffs have not established that summary judgment is appropriate on the issues of misappropriation and the existence of a trade secret.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-00048-JVS-JDE | Date | February 7, 2023 |
| Title | Masimo Corp. & Cercacor Lab., Inc. v. Apple, Inc. | | |

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.

**IT IS SO ORDERED.**