UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | February 9, 2023 |
| Title | Masimo Corporation et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Plaintiffs' Contingent Motion to Strike and Request for Sanctions (Redacted)**

Before the Court is Plaintiff's Contingent Motion to Strike and Request for Evidentiary Sanctions. Dkts. 1122, 1176 (sealed) ("Mot."). Plaintiffs argue that if the Court adopts Apple's "strict standard" for disclosure, many of Apple's theories, expert opinions, and related factual disclosures should also be stricken. Apple filed an opposition. Dkts. 1168, 1223 (sealed) ("Opp."). Plaintiffs filed a reply. Dkts. 1212, 1252 (sealed) ("Reply"). The Court held a hearing on this matter on February 6, 2023. For the reasons stated below, the Court denies the motion in part, grants the motion in part, and defers ruling on the motion in part.

## I. BACKGROUND

The parties are familiar with the facts of this case so the Court recites them here only as necessary to resolve Plaintiffs' motion. Plaintiffs argue that the Court should reject Apple's proposed standard for striking information disclosed in expert reports. Plaintiffs contend that using "Apple's approach would vitiate expert reports and expert discovery, turning the experts into mere mouthpieces for the lawyers' advocacy." Mot. at 1.

If the Court applies Apple's proposed standard, then Plaintiffs argue contingently that the Court should apply that standard to Apple's disclosures, which would result in striking at least five opinions or theories for failure to disclose the information during fact discovery. These theories and opinions include: (1) limitation-by-limitation inventorship opinions, (2) generally known and readily ascertainable opinions, (3) "head start" advantage opinions, (4) testing an Apple watch and related opinions, and (5) an opinion

1

that Apple would not have entered a business deal with Masimo. See generally Mot. Plaintiffs argue that Apple cannot show these untimely disclosures were substantially justified or harmless. Id. at 12-13.

Further, Plaintiffs argue that, if the Court adopts Apple's standard, the Court should impose evidentiary sanctions for late disclosure of Michael O'Reilly's notebooks, which contain over 2,000 pages of handwritten notes spanning O'Reilly's time at both Masimo and Apple. Specifically, Plaintiffs argue that the Court should prevent Apple from benefitting from the late disclosure by barring Apple from presenting evidence that Apple did not misappropriate Plaintiffs' business methods and hospital interaction ("BM & HI") trade secrets. Id. at 14-16. Plaintiffs argue that Apple cannot meet its burden to show that the late disclosure was substantially justified or harmless. Id. at 16-19.

Apple responds that it agrees experts should conduct independent analyses, and Plaintiffs misstate the bases for Apple's prior motions to strike. Opp. at 1 (citing Dkt 1045-1 at 8), 4. Apple argues that, because Plaintiffs' experts "refined and explained [their] opinions during expert discovery," Apple is entitled to rebut those opinions through their experts' rebuttal reports. Id. at 1.

Turning to Plaintiffs' arguments regarding purportedly new prior art references, Apple argues that Plaintiffs' claim is misleading because the parties agreed to serve final contention interrogatory responses after the close of fact discovery (i.e., on September 6, 2022). Id. at 2. Apple also argues that Plaintiffs inflate the number of new references through double-counting and counting background references. Id.

Finally, as to the O'Reilly notebooks, Apple argues that the parties resolved this issue before O'Reilly's deposition. Id. at 2. Apple explains that they produced the "personal notebooks" as soon as they learned of them, and emails from Masimo make clear that Plaintiffs knew about the notebooks already. Id. Apple argues the disclosure is harmless because Apple "agreed to every remedial request" from Plaintiffs (e.g., later deposition date, extra deposition time, later expert report deadlines), plus, Apple agreed "it would not affirmatively rely on the notebooks for any reason." Id. at 3.

## II. LEGAL STANDARD

A.  Discovery Principles

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). But discovery requests may be denied if they are overbroad on their face. See, e.g., MCC Controls v. Hal Hays Constr., ED CV 19-1655-AB (KKx), 2020 WL 6034321, at *5 (C.D. Cal. July 23, 2020) ("as Primex was only contracted by HHC to provide parts and services for a portion of the Project, the request for all documents related to the State Contract . . . is overbroad on its face"). For timely requests, once the party seeking

discovery has demonstrated relevance under Rule 26(b)(1), "the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." Heredia v. Sunrise Senior Living LLC, Case No. 8:18-cv-01974-JLS (JDEx), 2020 WL 3108699, at *2 (C.D. Cal. Jan. 31, 2020) (internal citation omitted).

If new legal theories are raised after the close of discovery, they may not be allowed at later stages of the case such as summary judgment or trial. See, e.g., Amini Innovation Corp. v. Anthony California Inc., No. CV 03-8749, 2006 WL 6855371, at *9 (C.D. Cal. Sept. 21, 2006) (granting motion in limine to preclude evidence supporting undisclosed legal theory in copyright case) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291–1294 (9th Cir. 2000) (precluding alternate, undisclosed legal theory at summary judgment)). Likewise, this may also be true shortly before discovery has closed because, if a plaintiff raises a new theory supporting one of its claims on the eve of the close of discovery, the defendant may be prejudiced where it lacks time to "formulate the discovery it need[s] on the[] new theor[y] and then to serve written discovery requests." Corus Realty Holdings, Inc. v. Zillow Grp., Inc., No. C18-0847-JLR, 2020 WL 488545, at *9 (W.D. Wash. Jan. 30, 2020), aff'd, 860 F. App'x 728 (Fed. Cir. 2021).

B.  Rule 26 Disclosures

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. Under that rule, any party who wishes to present an expert witness at trial must disclose the identity of the expert. Fed. R. Civ. P. 26(a)(2)(A). "When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless." Goodman v. Staples The Off. Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (citing Fed. R. Civ. P. 37(c)(1)).

C.  Supplementation and Exclusion

"Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or correct, among other things, responses to discovery requests 'in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" Jones v. Travelers Cas. Ins. Co. of Am., 304 F.R.D. 677, 678–79 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "The parties are expected to supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel or an order from the Court." Id.

"In addition, Rule 37 mandates that a party's failure to comply with the obligations under Rule 26(e)(1) results in that party being precluded from 'use [of] that information ... to supply evidence on a motion, at a hearing or at trial, unless the failure was

3

substantially justified or is harmless.'" Id. (quoting Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1) is 'self-executing' and 'automatic.'" Id. (quoting Yeti by Molly Ltd v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)).

Although appellate courts "review every discovery sanction for an abuse of discretion," those courts "give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti by Molly, 259 F.3d at 1106; see also Hoffman v. Constr. Prot. Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming district court's order excluding undisclosed damages evidence).

### III. DISCUSSION

As it has with prior discovery-related motions, the Court applies the well-settled rules summarized above. Contrary to Plaintiffs' suggestion, the Court has not applied any new standard or applied different standards to each party. Accordingly, applying these uncontested rules, the Court reviews each category of challenged opinions, theories, and factual disclosures and provides its rulings below.

    A.    <u>Limitation-by-Limitation Inventorship Opinions</u>

Plaintiffs served an interrogatory requesting that Apple provide a limitation-by-limitation analysis concerning Apple's inventorship of the asserted patent claims, because the information could be relevant to Plaintiffs' co-inventorship claims. Mot. at 6. Apple refused to provide the limitation-by-limitation analysis, stating that providing a patent-by-patent analysis was sufficient. Id. Plaintiffs moved to compel. The Special Master ruled that Apple's response was insufficient to provide the factual basis for the intended rebuttal, but "Apple assumes the associated risk" of choosing not to provide additional information. Id. (quoting Dkt. 891 at 18). Following this ruling, Plaintiffs explain that, in November 2022, Apple's experts provided limitation-by-limitation opinions and theories, which Plaintiffs contend should be stricken.

Apple responds that Plaintiffs never requested a limitation-by-limitation analysis concerning the alleged contributions of Plaintiffs' employees to the claimed inventions. Opp. at 5. Although Plaintiffs seek correction of inventorship to add certain of Plaintiffs' employees as co-inventors on the Apple patents, Apple observes Plaintiffs do not allege that the named Apple employees are improperly included as inventors. Id. Despite this, Apple explains that Plaintiffs served an interrogatory seeking the bases for Apple's belief that its employees are correctly included as named inventors. Id. Apple responded that, "because Plaintiffs have failed to argue that any named inventor is improperly named, it was unnecessary for Apple to present evidence showing the 'named inventors' contributions' on such a granular basis." Id. at 6. Plaintiffs' opening expert report on this point offered opinions that Plaintiffs' employees should be added as inventors, but not that Apple's employees should be removed. Id. Thus, Apple's experts responded to rebut those opinions. Id. Based on this, Apple argues that its expert reports, which provide

opinions concerning Plaintiffs' employees only, do not provide information that Apple refused to provide in response to an interrogatory. Id.

To frame this dispute, the Court begins by reviewing the Special Master's relevant rulings, which neither party appealed and are therefore final.

| Rog. No. | Motion to Compel | Ruling |
|---|---|---|
| Apple's Rog. Nos. 4 & 5: identify, by column and line number, the bases for alleging that Plaintiffs' employees are co-inventors on the disputed Apple patents, and explain former employee Lamego's involvement (i.e., explain the factual bases for your co-inventorship claim). | Apple moved to compel further responses, arguing the alleged co-inventors are not identified with particularity, the specific dates of invention are missing, the circumstances of invention are missing, and Lamego's role is not sufficiently explained. | The Special Master denied Apple's motion and ruled that, for the time being, Plaintiffs had provided sufficient information; identifying the information by column/line number was not necessary. But the Special Master cautioned that Plaintiffs omitted factual information "at their own peril" and Plaintiffs should avoid "burying the lead." Dkt. 891 at 15-16. |
| Plaintiffs' Rog. No. 14: for the disputed Apple patents, on a limitation-by-limitation basis, identify facts relating to invention by named inventors (i.e., explain the factual bases for claiming that the named inventors are the only true inventors). | Given Apple's Rog Nos. 4 & 5, Plaintiffs reciprocally moved to compel further responses for each patent, requesting "on a limitation-by-limitation basis" that Apple "identify the claimed subject matter that Apple contends the named inventors contributed, and identify" any supporting documents. | The Special Master granted-in-part the motion, requiring sufficient disclosure to "put Plaintiffs on notice of Apple's factual bases for its rebuttal arguments" in response to Plaintiffs' disclosures concerning co-inventorship, but not requiring disclosure on a limitation-by-limitation basis.[1] Dkt. 891 at 18.[2] |

Based on this review, the Court finds that Plaintiffs have not carried their burden to

---

[1] At risk of stating the obvious, the Special Master explained that, if Plaintiffs did not contend that one of their employees was a co-inventor as to a specific limitation, then there was nothing for Apple to rebut and no response was required. Dkt. 891 at 18.

[2] After Apple provided its supplemental responses, Plaintiffs did not file a follow-on motion to compel or a motion to enforce Order No. 10, apparently concluding that Apple's further responses were sufficient. See Mot. at 7 (acknowledging that Apple supplemented its response four times).

demonstrate that Apple's rebuttal responses should be stricken. This is because Plaintiffs' motion does not explain how Apple's responses contain new "factual bases for its rebuttal arguments," Dkt. 891 at 18, which the Special Master required, as opposed to offering the previously disclosed information in a different format (e.g., by organizing that information in a manner that responds to Plaintiffs' expert's limitation-by-limitation analysis). Whether a discovery violation has occurred does not turn on the format in which Apple's rebuttal experts responded, but rather whether the factual information contained in those responses was provided previously in response to Rog No. 14.

The entirety of Plaintiffs' argument on this point is as follows: "[Apple's rebuttal] reports included the limitation-by-limitation opinions and theories that Apple refused to provide during fact discovery. See Ex. 11, ¶¶ 562–584, 603–687, 706–745; Ex. 12, ¶¶ 438–449, 456–463, 473–565, 584–689. This was the first time that Apple ever disclosed a limitation-by-limitation analysis." Mot. at 7.  This conclusory assertion is unhelpful to the Court because it provides no information about the supposed new "opinions" and "theories." For example, Plaintiffs provide no comparison or analysis concerning the information disclosed in the rebuttal reports and the previous interrogatory responses. Plaintiffs' conclusory argument is plainly insufficient to demonstrate a discovery violation. The Court will not comb through the voluminous exhibits in an attempt to carry Plaintiffs' burden for them.

Because the Court construes the Special Master's order as requiring Apple to "put Plaintiffs on notice of Apple's factual bases for its rebuttal arguments" concerning Plaintiffs' co-inventorship claims, Dkt. 891 at 18, the Court need not reach Plaintiffs' reply argument that the catch-all language concerning "the contributions of any other persons" encompasses Apple's contentions concerning the named inventors. See Reply at 4 (citing Dkt. 1121-2, Ex. 3, 14:3-12 (sealed)). Again, the question is whether Apple provided new factual information in the rebuttal reports, not in what format such information was provided.[3]

For the reasons stated, the motion is denied on this ground.

   B.   Generally Known and Readily Ascertainable Opinions

In response to an interrogatory concerning Apple's contention that Plaintiffs' trade secrets were generally known or readily ascertainable, Apple disclosed about 60 publicly available references. Mot. at 7. Apple's expert reports, however, rely on 500 references to support the experts' generally known/readily ascertainable opinions, including about 100

---

[3]   The Court does not reach the question of whether Plaintiffs' expert relied on new factual information, as opposed to offered expert opinions based on previously disclosed factual information because that question is not presented. See Dkt. 1121-2, Ex. 3 at 16:1-3, 6-7 (Apple objected to "Plaintiffs' refusal to present such evidence" supporting co-inventorship to which Apple could respond).

references that were disclosed after the close of fact discovery, and about 350 references that were disclosed for the first time in expert reports. Id. at 8. Plaintiffs object that Apple's experts also disclosed new theories concerning "marketing principles" and marketing third-party products. Id.

Apple responds that "it was entirely proper for Apple's experts to (1) conduct their own analyses as to whether the alleged trade secrets are generally known and/or reasonably ascertainable and (2) cite to new (and publicly available) references the experts discovered along the way." Opp. at 14. Further, Apple avers that the parties agreed to an extension for supplemental interrogatory responses, which covers 100 of the allegedly new references. Id. Apple also contests that Plaintiffs have double-, triple- or quadruple-counted new references by counting them each time they are cited. Id. Apple argues that Plaintiffs fail to acknowledge that the experts use many of these references merely as background material. Id. at 14-15. Further, Apple contends that the allegedly new opinions were provided previously in response to interrogatories. Id. at 15 (e.g., "marketing a product to multiple market segments is generally known" and "is a basic marketing concept").

In any event, Apple argues that the allegedly new disclosures were harmless because Plaintiffs deposed each of Apple's experts for fourteen hours and Plaintiffs' expert provided a 279-page rebuttal report. Id. at 15-16.

In reply, Plaintiffs explain that they challenge Apple's experts' reliance on specific, undisclosed marketing principles, not the concept of marketing principles generally. Reply at 13. Plaintiffs also explain they move to strike as to *un*disclosed third-party products only. Id. Plaintiffs also argue that the Court should strike the disclosures without regard to harmlessness based on the stricken Kinrich information. Id. at 13-14.

As an initial matter, the Court finds that Apple can likely show harmlessness based on the fact that Plaintiffs were able to conduct lengthy depositions of the relevant experts and Plaintiffs' expert produced an extensive rebuttal report. Plaintiffs do not rebut Apple's showing of harmlessness, but rather argue that if Kinrich's updated financial numbers are stricken, then so too must this information be stricken without regard to any curative measures.

This is not the test for harmlessness, however, and Plaintiffs misconstrue the Court's prior order concerning the newly disclosed damages theory on which Kinrich relies. See Dkt. 1050 at 10-12. That issue relates to an expert relying on previously undisclosed factual information that was created for the purposes of this litigation to provide expert opinions for which no written report was provided supporting a revised damages theory, not independent expert opinions that appear for the first time in an expert report but that are based on information disclosed during fact discovery. That is, the litigation-driven fact-based expert disclosures made after the close of fact discovery should not form the basis of newly disclosed case theories. In contrast, the disclosures at

issue here, which are publicly available references to, e.g., marketing principles and third-party products, were not created for the purposes of this litigation and may not state a new theory.

Before ruling on this issue, however, the Court requires more information. As explained below, the parties should meet and confer on this dispute and provide that information to the Court.

Under California law, to qualify as a "trade secret" the information at issue must not be available through public means. See Cal. Civ. Code § 3426.1(d)(1) (trade secret must not be "generally known"). Relatedly, a party accused of misappropriation may raise a defense that the purportedly secret information was "readily ascertainable." See ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21, 286 Cal. Rptr. 518 (1991) (the "readily ascertainable" defense is "based upon an absence of misappropriation, rather than the absence of a trade secret").

In support of the argument that Plaintiffs' alleged trade secrets are not trade secrets, Apple disclosed during discovery numerous publicly available references. To determine whether the newly disclosed references constitute a discovery violation that is not substantially justified or harmless, the Court finds instructive the analogous test for deciding whether to strike expert opinions that disclose new information from infringement or invalidity contention disclosures. That is, the Court considers Apple's new "generally known / readily ascertainable" references in light of Apple's previous contentions on this point (e.g., including interrogatory responses and disclosed references).

Given the purpose behind contention disclosure requirements, it is well settled that "'a party may not use an expert report to introduce new . . . theories . . . not disclosed'" in the party's contentions. Finjan, Inc. v. Sophos, Inc., No. 14-CV-01197-WHO, 2016 WL 2988834, at *5 (N.D. Cal. May 24, 2016) (quoting Verinata Health, Inc. v. Sequenom, Inc., No. 12-cv-00865-SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (internal quotation marks omitted)). "The scope of contentions and expert reports are not, however, coextensive." Golden Bridge Tech. Inc v. Apple, Inc., No. 12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (internal quotation marks omitted). "[E]xpert reports are expected to provide more information than . . . contentions." Digital Reg of Texas, LLC v. Adobe Sys. Inc., No. 12-cv-01971-KAW, 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014). "Thus, '[t]he threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether.'" Finjan, 2016 WL 2988834 at *5 (quoting Digital Reg of Texas, 2014 WL 1653131 at *5).

Setting aside the quarrels over double-counting, etc., neither party addresses the purpose or substance behind the newly disclosed references (i.e., Plaintiffs do not argue that the new references constitute new theories and Apple does not argue that they

8

support existing theories). For example, if Apple disclosed a contention that a trade secret is generally known based on third-party products, and then the expert provides an opinion to that effect citing various third-party products of the same general type that Apple disclosed, this could constitute a specific "application of a disclosed theory" rather than the "impermissibl[e] subtitut[ion] of a new theory altogether." Id. In contrast, if the experts provide wholly new theories, this could constitute a discovery violation.[4]

The Court orders the parties to meet and confer on this category of documents. The parties should determine which references align with previous disclosures and which disclose new theories. If any dispute remains, the parties shall file a joint report within 14 days setting forth their respective positions in no more than five pages each. If necessary, the Court will enter a supplemental order addressing whether a discovery violation has occurred, and if so, whether Apple has shown harmlessness. If no further dispute remains, the motion will be deemed denied as moot on this point.

Accordingly, for the reasons stated, ruling on this ground is deferred.

C.     "Head Start" Advantage Opinions

In response to Plaintiffs' interrogatory concerning damages, Apple responded that any "head start" advantage[5] Apple received from alleged misappropriation was negligible because Apple had the resources to independently develop the relevant technology. Mot. at 8-9. Plaintiffs argue that Apple's rebuttal expert reports disclosed for the first time specific head start periods, stated in days or months, which in some instances are based on articles not produced during fact discovery. Id. at 9.

Apple responds that, based on how Plaintiffs litigated this case, it had no other option but to respond through rebuttal reports. Specifically, in response to Apple's damages-contention interrogatory, Plaintiffs responded that Apple "had unjustly

---

[4]     As to the new purported "background" references, although "courts have rejected [any] attempts to elude [disclosure] rules by defining materials as 'background' or 'context,'" Life Techs. Corp. v. Biosearch Techs., Inc., No. C 12-00852 WHA, 2012 WL 4097740, at *2 (N.D. Cal. Sept. 17, 2012) (collecting cases), if the materials are truly used for background information, they may not violate disclosure requirements. Thus, Plaintiffs' challenge to this subset of documents may be overbroad or unripe, depending on how the experts may seek to use the references at trial (background material versus substantive theory).

[5]     A head start advantage refers to the time period it would have taken the misappropriating party to obtain the trade secret through proper means.

benefitted from the saved cost of development and a head start period based on Apple's misappropriation," but the response provided no further details regarding, e.g., Plaintiffs' costs or development information. Opp. at 8. Apple advised Plaintiffs that they had provided insufficient information to explain their damages theories, but "it would have taken [Apple] negligible time to ascertain [the trade secret] information from other sources." Id. Thus, since Plaintiffs provided insufficient information about their head start arguments, Apple argues it was unable to provide a more detailed rebuttal until after it reviewed Plaintiffs' expert reports. Id. In any event, Apple argues that it is appropriate to offer additional information on this topic through expert testimony because it requires a "specialized" opinion. Id. at 9. After Plaintiffs' expert provided his views on how long it took Plaintiffs to develop the alleged trade secrets, Apple argues it was appropriate for its experts to use that information to form their rebuttal opinions about the head start period. Id. at 9-10.

In reply, Plaintiffs argue that "Apple cannot argue it has to disclose only 'factors,' but Masimo must disclose 'fully formed' opinions." Reply at 6. In any event, Plaintiffs argue that Apple did not disclose any factors. Id. For example, Apple disclosed only that a head start would be negligible, then its expert later opined that this is so because "Apple's development time would be shorter than Masimo's because Apple's team was larger." Id. Plaintiffs argue they provided their trade secret development timeline in discovery, so Apple had sufficient information to respond earlier. Id. at 7 (citing Dkt. 1211-2, Ex. 39).

As to harmlessness, Plaintiffs "agree[] that a deposition should cure any purported prejudice," but contend that cannot be the case here because Apple argued in prior briefs that depositions would not cure its prejudice as to Plaintiffs' undisclosed damages theory. Id.

As stated, expert reports cannot serve as a backdoor to introduce litigation-driven fact-based disclosures to support a revised damages theory after the close of fact discovery. There is a distinction between newly disclosed case theories relying on newly created facts that appear for the first time in an expert report on the one hand, and an expert providing specialized opinions based on previously disclosed factual information on the other. Against this backdrop, the Court is inclined to find no discovery violation because Apple disclosed its theory that any head-start advantage was negligible, and its expert, after examining available facts disclosed in discovery and considering Plaintiffs' expert's opinion, explained why that would be true (e.g., Apple has a larger development team). The Court need not make that specific finding, however, because Plaintiffs agree that the relevant expert depositions rendered harmless any alleged new disclosure

10

concerning head start advantage.

Accordingly, for the reasons stated, the motion is denied on this ground.

D. <u>Testing of Apple Watch</u>

To show that Plaintiffs' ███████████████████████████████ has no value, one of Apple's experts directed an Apple engineer to create software to modify the Apple Watch to remove the relevant feature. Mot. at 9. The expert compared performance between the unmodified and modified watches and provided his opinion. Plaintiffs argue that, in response to the interrogatory regarding independent economic value, Apple never disclosed any modification or testing, and never disclosed the engineer as someone knowledgeable. <u>Id.</u> at 9-10.

Apple responds that its technical expert acted properly by testing the Apple Watch so he could respond to Plaintiffs' experts' opinions. Opp. at 11. Specifically, after one of Plaintiffs' experts opined that a ███████████████████████████████ Apple's expert tested an Apple Watch with that feature disabled to show "no discernable difference" in performance. <u>Id.</u> Apple argues this is appropriate rebuttal concerning the "performance, benefit, and value of ██████████ <u>Id.</u> Apple also argues that it was proper for an Apple employee to work at the expert's direction. <u>Id.</u> Apple contends it had no idea such testing would be necessary until reviewing the opening expert reports, but even so, testing assistants need not be disclosed.

In any event, Apple argues that this disclosure was substantially justified, because Plaintiffs agree it is "routine under a normal expert discovery approach," and harmless because Plaintiffs deposed the expert on this point and Apple provided all additional requested information (<u>e.g.</u>, source code modified for testing). <u>Id.</u> at 12.

Plaintiffs reply that the testing opinions should be excluded because they comprise "litigation-driven analysis." Reply at 7. Plaintiffs "agree[] that experts may properly rely on any facts or data on which experts in that field would reasonably rely," but argues that because Apple argues that Kinrich's opinions that rely on a Masimo engineer's analysis of an Apple Watch must be stricken, so too must these opinions. <u>Id.</u> at 8.

The Court finds that Apple has disclosed a new theory concerning why ██████ lacks independent economic value from being secret. During discovery, Apple stated that this trade secret lacks value because it is generally known. <u>See</u> <u>Dkt. 1121-3</u>, Ex. 13 at 57:18-19 ("Plaintiffs' alleged ███████████████████████████ is generally known and

11

[therefore] lacks economic value.") (collecting references in which Apple alleges this trade secret is disclosed). Through its expert, Apple now argues that ▮▮▮▮ lacks independent economic value for the additional reason that removing it from the Apple Watch has no effect on performance. See Dkt. 1121-2, Ex. 12 at ¶¶ 720-726 ("There was no discernible difference in the performance of ▮▮▮▮ ▮▮▮▮ (that [Plaintiffs' expert] Dr. Madisetti alleges uses Alleged ▮▮▮▮.

Apple argues that it "had no way of knowing until [reviewing] Madisetti's report that the testing would be necessary," so any late disclosure is substantially justified. Opp. at 11. The Court disagrees. During discovery, Plaintiffs disclosed to Apple how it believes Apple incorporates this trade secret in the Apple Watch. See Dkt. 1211-3, Ex. 40 at 12:25-13:28 (Fourth Supp. Response to Rog. No. 10: "Apple uses ▮▮▮▮. Thus, Apple had an opportunity to develop additional factual theories concerning this alleged trade secret's incorporation in the Apple Watch, including whether it provided no value because removing it has no effect.

Because the Court finds this constitutes a late disclosure that was not substantially justified, the Court considers whether the late disclosure was harmless.

To assist in resolution of this issue, the Court asked the parties to address harmlessness at the hearing. Plaintiffs argued the harm arising from Apple's late disclosure cannot be cured in the time remaining before trial. For example, Plaintiffs aver that, to cure the harm, they would have to depose the Apple employee who created the new testing source code, and Plaintiffs' expert would then need an opportunity to conduct his own verification testing, including identifying a lab, testing participants, etc. Plaintiffs further argued that Warren's expert deposition did not cure the prejudice because Plaintiffs have no opportunity to rebut his new testimony.  Apple did not further address harm, but rather argued that since Plaintiffs carry the burden on this element, they could have conducted testing in support of their affirmative expert report.

On balance, the Court finds that Apple has not demonstrated harmlessness in light of the proffered harm raised by Plaintiffs. Accordingly, the Court grants the motion under

Rule 37(c)(1) as to the modification, testing, and opinion based thereon.[6]

### E. Apple's Opinion Re No Masimo Business Deal

In response to an interrogatory, Apple stated that it would not have done business with Masimo because Masimo focuses on providing solutions in the clinical setting whereas Apple focuses on consumer products. Mot. at 10-11. Plaintiffs argue that, through expert reports, Apple now purports to rely on a number of undisclosed facts, such as information provided to an expert via an interview with Apple employee Steve Hotelling, as well as new theories related to Masimo's alleged shortcomings (e.g., inability to meet timing/technical requirements) versus Apple's own capabilities. Id. at 10.

Apple responds that its expert's opinion--that it is not reasonable to assume Apple would have purchases "sensor modules" from Plaintiffs on the timeline suggested by Kinrich--is proper because it responds to new opinions offered by Kinrich. Opp. at 12. Thus, Apple contends that the rebuttal report was the first time it could have offered this information. Id. at 13. Further, Apple argues that the employee witness, Hotelling, offered the type of lay testimony that would be provided at trial (i.e., Apple's historical requirements for working with vendors), so it was proper for the expert to incorporate this information. In any event, Apple notes that, if the Court strikes Kinrich's opinions relating to the "module theory," this issue becomes moot because there is nothing to rebut. Id.

In reply, Plaintiffs argue that experts for both sides should be able to rely on such factual employee interviews. Reply at 9. Plaintiffs argue that Apple was on notice of its general theory that Apple would have purchased sensor modules from Masimo. Id. Further, Plaintiffs contend that many of the opinions they challenge relate to new

---

[6] The Court notes that it strikes this opinion based on its independent analysis, not based on the concept of reciprocity. In any event, The Court may be inclined to strike the opinion, but the Court observes this testing opinion is far different from the derivative Kinrich opinions. In that context, the Court found prejudice from the multi-pronged late disclosures arising from the Priddell and Muhsin disclosures (e.g., lack of written expert reports and undisclosed, litigation-created facts transmitted to damages expert to provide revised theory), because "[i]nsufficient time remain[ed] in expert discovery to allow for compliant written reports, follow-up fact discovery, full depositions concerning new factual and expert disclosures, selecting rebuttal witnesses, and providing reciprocal disclosures. . . . [And] [o]ffering additional fact-question time during the relevant expert depositions would be insufficient at this late hour." Dkt. 1050 at 10-11.

opinions concerning whether Apple would have entered *any* business deal with Apple, not just related to the contested sensor-module deal. Id.

The Court incorporates its Order Regarding Motion to Strike Plaintiffs' Rule 26(a)(2)(C) disclosures and its (Tentative) Order Regarding the Kinrich Daubert Motion. Applying the same legal standards and rulings provided in those orders, the Court denies as moot this portion of Plaintiffs' motion. Assuming Kinrich is precluded from opining on the hypothetical sensor module business deal at trial, then Apple's expert has nothing to rebut and this dispute is moot. Alternatively, the Court would allow the testimony relying on the Hotelling interview because (1) it is based on lay witness testimony that could be introduced at trial and (2) it is based on historical company information that was not newly created for the purposes of this litigation and disclosed after the close of fact discovery. This is starkly different from the proposed undisclosed expert testimony that explained new bases for Plaintiffs' damages theories by purporting to offer hypothetical opinions by employees Priddell and Muhsin based on new facts and data generated for the purposes of this litigation.

Accordingly, for the reasons stated, the Court denies the motion on this ground.

F.  O'Reilly's Notebooks

Plaintiffs argue that because Apple produced over 2,000 pages of O'Reilly's notebooks after the close of fact discovery, Apple should be precluded from relying on the information in the notebooks to argue it did not misappropriate or use the alleged trade secrets. Mot. at 16-19. Plaintiffs argue this sanction is proportional to the prejudice the late disclosure caused, but no greater than necessary to punish the conduct involved (e.g., Plaintiffs should still be allowed to use the notebooks and Plaintiffs are not requesting an affirmative finding for Plaintiffs on misappropriation and use, just that Apple cannot argue no misappropriation or use).

Apple responds that it did not have custody or control over O'Reilly's notebooks from the time he worked for Plaintiffs. Opp. at 16. Apple explains that, at Plaintiffs' request, and with O'Reilly's permission, Apple collected the pre-Apple notebooks and produced them. Id. at 17. Further, Apple argues production of both the pre- and post-Apple notebooks was substantially justified, because as soon as "Apple's counsel learned about the existence and potential relevance of the notebooks, they were collected and produced as quickly as possible." Id. The notebooks did not come up until Apple was preparing O'Reilly for his deposition, apparently because O'Reilly believed the notebooks were his personal property. Id. at 19. Apple argues that O'Reilly "can hardly

be faulted for this understanding when Masimo itself was aware of the notebooks, asked O'Reilly to consult them for Plaintiffs' benefit while he was working at Apple, and yet never sought return of them until after he produced them in connection with this case." Id.

Apple also argues that the late production was harmless because it "agreed to every form of relief that Plaintiffs requested to address the timing of that production." Id. (e.g., Plaintiffs had the notebooks before O'Reilly's deposition and were given extra time before and during the deposition, supplemented their interrogatories based on the notebooks, and the experts were able to incorporate them in their reports). Apple avers that, "since Plaintiffs' counsel agreed that Apple's concessions had resolved the issues surrounding O'Reilly's deposition in September 2022, Plaintiffs have not requested any further relief from Apple." Id. (citing Dkt. 1166-15, Ex. N at 1). Further, "Apple pledged it would not affirmatively rely on any information in the notebooks." Id. at 20. Even if some form of sanctions is warranted, Apple argues that Plaintiffs' proposed sanction (preventing Apple from mounting *any* defense to the alleged use and acquisition of the BM & HI trade secrets) is unjust. Id. at 21.

In reply, Plaintiffs argue that, "[r]egardless of whether Apple had possession, custody, or control of O'Reilly's Masimo notebooks, Apple had a duty to request such documents from O'Reilly." Reply at 14. Plaintiffs also argue that, even though they had knowledge of the notebooks in 2014, they had no reason to believe they still existed, particularly after Apple interviewed its employees and did not produce them. Id. at 15. Further, the same 2014 email, produced by Apple in 2021, should have alerted Apple to the notebooks. Id. Plaintiffs argue there is no evidence that Apple interviewed O'Reilly, demonstrating negligence in document collection. Id. at 16. Plaintiffs argue that "[i]t is incredulous to think that Apple asked O'Reilly to search for physical documents and O'Reilly failed to identify the notebooks." Id.

Further, Plaintiffs argue that Apple's arguments show that harm can be cured, even though Apple refused to work with Plaintiffs to cure the harm related to the sensor module Kinrich opinions and related financial disclosures. Id. at 17. Further, Plaintiffs maintain that they have been harmed notwithstanding the remedial measures to which Apple has agreed because Plaintiffs would have asked other Apple employees about the notebooks to make up for gaps in O'Reilly's memory. Id. at 17-18. Plaintiffs argue the requested "evidentiary sanction is appropriate because it is the only remedy that would address Apple's production of key incriminating documents after fact discovery." Id. at 18. Further, Plaintiffs explain their view that "the requested sanction would not prevent Apple from raising defenses or disputing elements of Masimo's cause of action other than

misappropriation" as to the BM & HI trade secrets. Id. Plaintiffs argue that Apple's discovery misconduct throughout the case further supports the requested sanction. Id. at 19.

The Court finds a discovery violation based on late disclosure of the notebooks. The Court defers its determination regarding whether the disclosure was substantially justified or harmless until the parties meet and confer on the additional information requested by Plaintiffs. It is unclear whether that information can be provided without altering the current case schedule, including the trial date. The parties should address this issue in the forthcoming joint report addressing the publicly available references.

The Court advises the parties that, assuming Apple cannot carry its burden to show harmlessness, the Court is not inclined to impose the sanction suggested by Plaintiffs. Precluding Apple from mounting any defense to misappropriation and use of the BM & HI trade secrets is disproportional to the late disclosures, especially where significant other remedies have already been provided and accepted by Plaintiffs (e.g., delayed deposition, more deposition time). This is especially true where Apple has already agreed not to rely affirmatively on the notebooks. Therefore, in discussing what other information Plaintiffs would like to gather in light of the notebooks, the parties should also meet and confer on other potential remedies if further sanctions are warranted.

The Court is not persuaded by Plaintiffs' global argument that if harm can be cured as to the notebooks then harm can be cured as to the Kinrich disclosures. The issue with the supplemental Kinrich report is not that he provided updated calculations given the passage of time. The issue is that the information on which Kinrich relies arrived in the form of undisclosed expert opinions for which no report was provided based on new facts created for this litigation and disclosed after the close of fact discovery, which occurred at a point when there is no time remaining in the schedule of this 2.5 year old case to conduct the volume of further discovery that would provide a fair rebuttal to Apple.

As stated in this order, the Court applies the same well-settled rules to both parties in the context of specific discover disputes. The Court will not adopt a blanket rule that one discovery violation and remedy results in applying that rule to other alleged discovery violations with no analysis and application of the applicable rules.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** in part, **GRANTS** in part, and **DEFERS** in part the motion.

As described above, the parties shall submit a joint report concerning the publicly available references and O'Reilly notebooks within 14 days.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of the sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | eva | |