1  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
   thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
     joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
   amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
     HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14 [Counsel appearance continues on next page]

15 *Attorneys for Defendant Apple Inc.*

16              **UNITED STATES DISTRICT COURT**
17    **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18 MASIMO CORPORATION,                    CASE NO. 8:20-cv-00048-JVS (JDEx)
   a Delaware corporation; and
19 CERCACOR LABORATORIES, INC.,           **APPLE'S MEMORANDUM OF**
   a Delaware corporation,                **CONTENTIONS OF FACT AND LAW**
20
21              Plaintiffs,                Date: Mar. 13, 2023
                                           Time: 1:30pm
22         v.
                                           Pre-Trial Conference: Mar. 13, 2023
23 APPLE INC.,                             Trial: Mar. 28, 2023
   a California corporation,
24              Defendant.

25
26
27
28        **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    JOSEPH J. MUELLER, *pro hac vice*
2      joseph.mueller@wilmerhale.com
     SARAH R. FRAZIER, *pro hac vice*
3      sarah.frazier@wilmerhale.com
     WILMER CUTLER PICKERING
4        HALE AND DORR LLP
     60 State Street
5    Boston, MA 02109
     Tel.: 617.526.6000 / Fax: 617.526.5000
6
     NORA Q.E. PASSAMANECK, *pro hac vice*
7      nora.passamaneck@wilmerhale.com
     WILMER CUTLER PICKERING
8        HALE AND DORR LLP
     1225 Seventeenth Street, Suite 2600
9    Denver, CO 80202
     Tel.: 720.274.3152 / Fax: 720.273.3133
10
     BRIAN A. ROSENTHAL, *pro hac vice*
11     brosenthal@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
12   200 Park Avenue
     New York, NY 10166-0193
13   Tel.: 212.351.2339 / Fax: 212.817.9539

14   KENNETH G. PARKER, SBN 182911
       Ken.parker@haynesboone.com
15   HAYNES AND BOONE, LLP
     660 Anton Boulevard, Suite 700
16   Costa Mesa, CA 92626
     Tel.: 650.949.3014 / Fax: 949.202.3001

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  I.   CLAIMS AND DEFENSES .................................................................. 1

3      A.   Plaintiffs' Claims ............................................................... 1

4           1.   Summary of Claims Plaintiffs Plan to Pursue ................... 1

5           2.   Elements Required to Establish Plaintiffs' Claims............ 3

6                a.   Trade Secret Misappropriation ............................... 3

7                b.   Damages ................................................................. 4

8                c.   Correction of Inventorship .................................... 5

9                d.   Declaratory Judgment of Patent Ownership ......... 6

10          3.   Key Evidence in Opposition to Plaintiffs' Claims .......... 7

11               a.   Trade Secret Misappropriation (Claim 13) .......... 7

12                    i.    Alleged ████████████████████
                           Trade Se ████                         ........... 7

13                    ii.   Alleged ████████  Trade Secrets ........ 8

14
15                    iii.  Alleged "Business and Marketing Plans and
                           Strategies" Trade Secrets ........................... 10

16                    iv.   Alleged "Strategies for Interacting with
17                         Hospitals" Trade Secrets ............................ 11

18               b.   Damages For Trade Secret Misappropriation (Claim
                      13).......................................................................... 12

19               c.   Correction of Inventorship (Claims 14-19 and 28) ............. 13

20               d.   Declaratory Judgment of Patent Ownership (Claims
21                    20-27)...................................................................... 13

       B.   Apple's Defenses ............................................................... 14
22
23          1.   Summary of Affirmative Defenses Apple Intends to Pursue
                 At Trial.................................................................... 14

24          2.   Elements of Counterclaims and Affirmative Defenses ................. 15

25               a.   Laches ................................................................. 16

26               b.   Lack Of Willful/Malicious Misappropriation .................... 16

27               c.   Statute Of Limitations ........................................... 16

28               d.   Readily Ascertainable.............................................. 17

| | | e. | Independent Development | 17 |
| | | f. | Independent Invention | 17 |
| | | g. | Waiver | 18 |
| | | h. | No Causation | 18 |
| | | i. | Failure to Mitigate | 18 |
| | | j. | Unclean Hands | 18 |
| | 3. | | Key Evidence in Support of Apple's Defenses | 19 |
| | | a. | Laches | 19 |
| | | b. | Lack Of Willful/Malicious Misappropriation | 19 |
| | | c. | Statute Of Limitations | 20 |
| | | d. | Readily Ascertainable | 20 |
| | | e. | Independent Development | 21 |
| | | f. | Independent Invention | 21 |
| | | g. | Waiver | 21 |
| | | h. | No Causation | 21 |
| | | i. | Failure to Mitigate | 22 |
| | | j. | Unclean Hands | 22 |
| II. | | | Anticipated Evidentiary Issues | 23 |
| III. | | | Issues of Law | 24 |
| IV. | | | Bifurcation of Issues | 24 |
| V. | | | Jury Trial | 25 |
| VI. | | | Attorneys' Fees | 25 |
| VII. | | | Abandonment of issues | 25 |

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ajaxo Inc. v. E\*Trade Financial Corp.*,
   187 Cal. App. 4th 1295 (2010) ............................................................ 5

5

6

*Ajaxo Inc. v. E\*Trade Group Inc.*,
   135 Cal. App. 4th 21 (2005) ............................................................. 16

7

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   28 Cal. App. 5th 923 (2018) ............................................................. 18

8

9

*Board of Educ. ex rel. Board of Trustees Florida State Univ. v. Am.
   Bioscience Inc.*, 333 F.3d 1330 (Fed. Cir. 2003)..............................5, 6

10

*Board of Trustees of Leland Stanford Junior University v. Roche
   Molecular Sys., Inc.*, 563 U.S. 776 (2011) ........................................ 7

11

12

*Cedars Sinai Medical Center v. Quest Diagnostic Inc.*,
   2019 WL 12521480 (C.D. Cal. Aug. 9, 2019) .................................. 17

13

*Cent. Valley General Hospital v. Smith*,
   162 Cal. App. 4th 501 (2008) ........................................................... 18

14

15

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   2019 WL 7166056 (C.D. Cal. Oct. 9, 2019) .................................... 18

16

*Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*,
   1999 WL 675446 (C.D. Cal. Aug. 12, 1999) ................................... 18

17

18

*CTC Glob. Corp. v. Huang*,
   2019 WL 4148184 (C.D. Cal. July 29, 2019) .................................... 4

19

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*,
   2011 WL 3809933 (C.D. Cal. Aug. 25, 2011) ................................. 18

20

21

*DTM Rsch., L.L.C. v. AT&T Corp.*,
   245 F.3d 327 (4th Cir. 2001) ............................................................. 3

22

*Eco-Separator Co. v. Shell Canada Ltd.*,
   872 F.2d 427 (9th Cir. 1989) ........................................................... 17

23

24

*Elation Systems, Inc. v. Fenn Bridge LLC*,
   71 Cal. App. 5th 958 (2021) .............................................................. 5

25

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ............................................... 5, 6, 17

26

27

*Enovsys LLC v. Nextel Commc'ns, Inc.*,
   614 F.3d 1333 (Fed. Cir. 2010) ......................................................... 7

28

*Fladeboe v. Am. Isuzu Motors Inc.*,
   150 Cal. App. 4th 42, *as modified* (Apr. 24, 2007) ............................ 19

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) .......................................... 17

*General Electric Co. v. Wilikins*,
   750 F.3d 1324 (Fed. Cir. 2014) ..................................................... 6

*GSI Tech., Inc. v. United Memories*,
   2015 WL 5655092 (N.D. Cal. Sept. 25, 2015) ............................. 17

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ...................................................... 19

*Jasmine Networks, Inc. v. Superior Ct.*,
   180 Cal. App. 4th 980 (2009) ........................................................ 3

*Johnson v. City of Loma Linda*,
   24 Cal. 4th 61 (2000) ................................................................. 16

*Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*,
   973 F.2d 911 (Fed. Cir. 1992) ...................................................... 6

*Masimo Corp. v. True Wearables, Inc.*,
   2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ............................. 16

*Nite Glow Indus. v. Central Garden & Pet Co.*,
   2021 WL 2945556 (Fed. Cir. July 14, 2021) .................................. 4

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945) ................................................................... 19

*Rubin v. Gen. Hosp. Corp.*,
   523 F. App'x 719 (Fed. Cir. 2013) .............................................. 18

*S.C. Anderson, Inc. v. Bank of America*,
   24 Cal. App. 4th 529 (1994) ......................................................... 5

*San Jose Construction, Inc. v. S.B.C.C., Inc.*,
   155 Cal. App. 4th 1528 (2007) ................................................... 17

*Sargent Fletcher, Inc. v. Able Corp.*,
   110 Cal. App. 4th 1658 (2003) ..................................................... 3

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   959 F.3d 1065 (Fed. Cir. 2020) ..................................................... 7

*Shapiro v. Hasbro Inc.*,
   2016 WL 9113998 (C.D. Cal. July 18, 2016) ............................. 17

*Teets v. Chromalloy Gas Turbine Corp.*,
   83 F.3d 403 (Fed. Cir. 1996) ........................................................ 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Urica, Inc. v. Pharmaplast S.A.E.*,
   2013 WL 12123230 (C.D. Cal. May 6, 2013)........................................................4

**Statutes and Rules**

Business and Professions Code § 16600 ..........................................................15, 22

Cal. Civ. Code § 3426.1..................................................................................3, 4

Cal. Civ. Code § 3426.3............................................................................1, 4, 5, 18

California's Uniform Trade Secrets Act ..................................................................1

Local Rule 16-4....................................................................................................1

Pursuant to Local Rule 16-4, Apple Inc. ("Apple") respectfully submits this Memorandum of Contentions of Fact and Law.  Apple reserves the right to amend and/or supplement these contentions based on this Court's rulings on the motions *in limine* and other pre-trial findings and events.

## I.    CLAIMS AND DEFENSES

### A.    Plaintiffs' Claims

Plaintiffs have indicated that they intend to pursue the following claims at trial.

#### 1.    Summary of Claims Plaintiffs Plan to Pursue

**Count XIII:**  Plaintiffs allege that Apple violated California's Uniform Trade Secrets Act ("CUTSA") by misappropriating twenty-six trade secrets that fall into five categories: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ (3) Business and Marketing Plans and Strategies, and (4) Strategies for Interacting with Hospitals.  To the extent the jury finds misappropriation of any alleged trade secret, Plaintiffs seek damages for lost profits, unjust enrichment, or a reasonable royalty pursuant to Cal. Civ. Code § 3426.3.

**COUNT XIV:** Plaintiffs seek correction of inventorship of U.S. Patent No. 10,078,052 ("'052 patent"), alleging that their employees should be added as joint inventors.

**COUNT XV:** Plaintiffs seek correction of inventorship of U.S. Patent No. 10,247,670 ("'670 patent"), alleging that their employees should be added as joint inventors.

**COUNT XVI:** Plaintiffs seek correction of inventorship of U.S. Patent No. 9,952,095 ("'095 patent"), alleging that their employees should be added as joint inventors.

**COUNT XVII:** Plaintiffs seek correction of inventorship of U.S. Patent No. 10,219,754 ("'754 patent"), alleging that their employees should be added as joint inventors.

**COUNT XVIII:** Plaintiffs seek correction of inventorship of U.S. Patent No. 9,723,997 ("'997 patent"), alleging that their employees should be added as joint inventors.

**COUNT XIX:** Plaintiffs seek correction of inventorship of U.S. Patent No. 10,524,671 ("'671 patent"), alleging that their employees should be added as joint inventors.

**COUNT XX:** Plaintiffs claim that their employees made contributions to the '052 patent and were under an obligation to assign any interest in that patent to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '052 patent.

**COUNT XXI:** Plaintiffs claim that their employees made contributions to the '670 patent and were under an obligation to assign any interest in that patent to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '670 patent.

**COUNT XXII:** Plaintiffs claim that their employees made contributions to the '095 patent and were under an obligation to assign any interest in that patent to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '095 patent.

**COUNT XXIII:** Plaintiffs claim that their employees made contributions to the '754 patent and were under an obligation to assign any interest in that patent to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '754 patent.

**COUNT XXIV:** Plaintiffs claim that their employees made contributions to the '997 patent and were under an obligation to assign any interest in that patent to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '997 patent.

**COUNT XXV:** Plaintiffs claim that their employees made contributions to the '671 patent and were under an obligation to assign any interest in that patent to

Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '671 patent.

**COUNT XXVI:** Plaintiffs claim that their employees made contributions to U.S. Patent No. 11,009,390 ("'390 patent") and were under an obligation to assign any interest in that patent to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the '390 patent.

**COUNT XXVII:** Plaintiffs claim that their employees made contributions to U.S. Patent Application No. 16/700,710 ("Disputed Application") and were under an obligation to assign any interest in that application to Plaintiffs.  Plaintiffs thus seek a declaration that Masimo or Cercacor is at least a joint owner of the Disputed Application.

**COUNT XXVIII:** Plaintiffs seek correction of inventorship of the '390 patent, alleging that their employees should be added as joint inventors.

### 2. Elements Required to Establish Plaintiffs' Claims

### a. Trade Secret Misappropriation

To prove misappropriation under the CUTSA, Plaintiffs must prove by a preponderance of the evidence, "(1) the existence and ownership of a trade secret and (2) misappropriation of a trade secret."  Dkt. 1275 at 3 (citing Cal. Civ. Code § 3426.1); *see also* Cal. Civ. Jury Instr. 4400-4401.  Plaintiffs must also establish that Apple's "actions damaged" Plaintiffs.  *See Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003); *see also* Cal. Civ. Jury Instr. 4401.

To establish ownership of a trade secret, Plaintiffs must prove that they developed each alleged secret or were otherwise in lawful possession of it at the time of the alleged misappropriation.  *See Jasmine Networks, Inc. v. Superior Ct.*, 180 Cal. App. 4th 980, 997-1000 (2009); *DTM Rsch., L.L.C. v. AT&T Corp.*, 245 F.3d 327, 331 (4th Cir. 2001).

To establish the existence of a trade secret, Plaintiffs must show that the information at issue "(1) derives independent economic value, actual or potential, from

1   not being generally known to the public or to other persons who can obtain economic

2   value from its disclosure or use; and (2) is the reasonable subject of efforts that are

3   reasonable under the circumstances to maintain its secrecy."  Dkt. 1275 at 4 (citing

4   Cal. Civ. Code § 3426.1(d)); *see also* Cal. Civ. Jury Instr. 4402.

5           To establish misappropriation, Plaintiffs must show that Apple acquired, used,

6   or disclosed each purported secret, knowing or having reason to know that Apple

7   gained access to the purported secret through improper means.  *See* Dkt. 1275 at 9

8   (citing Cal. Civ. Code § 3426.1(a)-(b)); *see also* Cal. Civ. Jury Instr. 4405-4407.  A

9   trade secret is acquired through improper means when, *inter alia*, a party acquires it as

10  a result of "breach or inducement of a breach of duty to maintain secrecy."  Dkt. 1275

11  at 9; *see also* Cal. Civ. Jury Instr. 4408.

12                          **b.    Damages**

13          Under the CUTSA, Plaintiffs may recover damages for the actual loss caused by

14  misappropriation, or the unjust enrichment caused by misappropriation not taken into

15  account in computing actual loss.  Cal. Civ. Code § 3426.3(a).  Actual loss damages

16  "must have a reasonable basis," *CTC Glob. Corp. v. Huang*, 2019 WL 4148184, at *7

17  (C.D. Cal. July 29, 2019), and be capable of determination with "reasonable certainty,"

18  *Urica, Inc. v. Pharmaplast S.A.E.*, 2013 WL 12123230, at *10 (C.D. Cal. May 6,

19  2013).  Damages are limited to the "head start" period—i.e., "the period in which

20  information is entitled to protection as a novel idea, plus the additional period, if any,

21  in which a misappropriator retains an advantage over good faith competitors because

22  of misappropriation."  *Nite Glow Indus. v. Central Garden & Pet Co.*, 2021 WL

23  2945556, at *6 (Fed. Cir. July 14, 2021); *see also* Dkt. 1280 at 9 n.5 ("A head start

24  advantage refers to the time period it would have taken the misappropriating party to

25  obtain the trade secret through proper means.").

26          To recover damages for actual loss, Plaintiffs have "'the burden to produce the

27  best evidence available in the circumstances to attempt to establish a claim for loss of

28  profits'" and "must demonstrate 'a reasonable probability that profits would have been

earned'" absent misappropriation.  *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 964 (2021) (quoting *S.C. Anderson, Inc. v. Bank of America*, 24 Cal. App. 4th 529, 536 (1994)).

Plaintiffs may only recover for unjust enrichment caused by alleged misappropriation that is not taken into account in computing damages for actual loss. Cal. Civ. Code § 3426.3(a).  Plaintiffs must establish a "reasonable basis for the computation" to be awarded unjust enrichment damages.  *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010).  If Apple "has either not utilized the [alleged] stolen secret commercially or has not benefitted in any way that can be measured in monetary terms," there is insufficient "evidence to support a monetary award measured by … unjust enrichment."  *Id.* at 1310.

Where "neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."  Cal. Civ. Code § 3426.3(b); *see also Ajaxo*, 187 Cal. App. 4th at 1310-1311 ("As a general rule, the reasonable royalty measure of damages was 'only appropriate where the defendant has made no actual profits and the plaintiff is unable to prove a specific loss.'" (citation omitted)).

"If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award" made for actual loss, unjust enrichment, or a reasonable royalty.  Cal. Civ. Code § 3426.3(c); *see also infra* Part I.B.3.b.

### c.      Correction of Inventorship

To establish that Plaintiffs' employees should be listed as joint inventors on a patent, Plaintiffs must "meet the heavy burden" of proving by clear and convincing evidence that Plaintiffs' employees made a significant contribution to at least one claim of each patent.  *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-1359 (Fed. Cir. 2004); *Board of Educ. ex rel. Board of Trustees Florida State Univ. v. Am.*

*Bioscience Inc.*, 333 F.3d 1330, 1337 (Fed. Cir. 2003); *see also* Fed. Cir. Bar Assoc., Model Patent Jury Instr. § 4.3d (2020).

Whether the contribution was significant in quality is measured against the scope of the full invention. *Eli Lilly*, 376 F.3d at 1359. Thus, a contribution does not qualify if it (1) "merely explain[s] what was 'then state of the art,'" (2) is "too far removed from the real-word realization of an invention'" (e.g., the purported joint inventor "merely suggests the idea of a result to be accomplished"), or (3) is focused "solely on [real-world] realization" (i.e., the assistance was provided "after conception of the claimed invention"). *Id.* Thus, for example, "[o]ne does not qualify as a joint inventor merely by assisting the actual inventor," *Board of Educ.*, 333 F.3d at 1338, and "evidence of discussions between named inventor and putative co-inventor concerning subject matter of [the] claimed invention [i]s insufficient to establish co-inventorship," *General Elec. Co. v. Wilikins*, 750 F.3d 1324, 1332 (Fed. Cir. 2014).

A joint inventor must also show that his or her work was "conjoined with the efforts of the named inventors"—i.e., that "the inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly*, 376 F.3d at 1359. In other words, to be a joint inventor, "there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). "Individuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts. They cannot be totally independent of each other and be joint inventors." *Id.*

### d.    Declaratory Judgment of Patent Ownership

While "[o]wnership springs from invention[,] . . . contract law allows individuals to . . . consent by contract to assign all rights in inventive ideas to the employer." *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996). Whether a party has ownership rights in a patent is determined by state contract

law.  *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020); *see also Envosys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010) ("Who has legal title to a patent is a question of state law.").

"[A]lthough others may acquire an interest in an invention, any such interest— as a general rule—must trace back to the inventor."  *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 786 (2011). Accordingly, where an alleged joint inventor has failed to "meet the heavy burden" of proving that he or she is indeed a joint inventor, there is no ownership interest to be acquired.  *See supra* Part I.A.2.c.

### 3.  Key Evidence in Opposition to Plaintiffs' Claims

Apple provides the following summary of key evidence it expects to offer at trial in response to Plaintiffs' claims.

### a.  Trade Secret Misappropriation (Claim 13)

#### i.  Alleged ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Trade Secrets

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' alleged ▓▓▓▓▓▓▓▓▓▓▓ ("D&D") trade secrets are not trade secrets and that, in any event, Apple has not misappropriated them:

- Testimony and evidence establishing Apple's independent development of Apple Watch, including the accused features;
- Testimony and evidence establishing that Plaintiffs' purported D&D secrets were generally known prior to any alleged misappropriation, including because of Plaintiffs' publication and/or use of the alleged secrets in their own patents and products;
- Testimony and evidence establishing that the alleged secrets do not have any independent economic value from being a secret;

- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged D&D trade secrets a secret;
- Testimony and evidence demonstrating that Plaintiffs did not possess the alleged D&D trade secrets at the time of the purported misappropriation, including but not limited to, testimony and evidence demonstrating that Marcelo Lamego did not learn of the techniques described in the alleged secrets from Plaintiffs, but instead learned them in school or through other public sources;
- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence establishing that Apple Watch does not use, and has never used, the alleged D&D secrets; and
- Testimony and evidence demonstrating that Apple has not caused any harm to Plaintiffs based on the purported misappropriation.

Apple incorporates by reference all evidence and arguments in (1) its responses to Plaintiffs' Interrogatory Nos. 7-9, 12-13, and 17, and (2) its expert reports, including but not limited to, the technical expert reports of Professor Majid Sarrafzadeh, PhD.

### ii.      Alleged ███████ Trade Secrets

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' alleged ███████ ("LP") trade secrets are not trade secrets and that, in any event, Apple has not misappropriated them:

- Testimony and evidence establishing Apple's independent development of the alleged secrets and accused components;
- Testimony and evidence establishing that Plaintiffs' alleged LP secrets were generally known, including but not limited to because of Plaintiffs' publication of the alleged secrets in their own patents;
- Testimony and evidence establishing that the alleged secrets do not have any independent economic value derived from being kept secret;

1  • Testimony and evidence establishing that Plaintiffs have not taken reasonable
2    measures to keep their alleged LP secrets a secret;
3  • Testimony and evidence demonstrating that Plaintiffs did not develop, possess,
4    or own the alleged LP secrets prior to any alleged misappropriation by Apple,
5    including testimony and evidence demonstrating that Marcelo Lamego did not
6    learn of the technology from Plaintiffs but instead learned them from public
7    sources;
8  • Testimony and evidence demonstrating that Plaintiffs did not develop, possess,
9    or own every method of ███████████████████████████████████
10   ██████████████████ prior to any alleged misappropriation by Apple but at
11   most allegedly developed, possessed, or owned a limited subset of designs
12   associated with solving the alleged problem of █████████████████████
13   (e.g., █████████████████);
14 • Testimony and evidence establishing that Apple did not improperly acquire, use,
15   or disclose the alleged secrets, including testimony and evidence demonstrating
16   that Apple does not use, and has never used, the alleged LP placement trade
17   secrets in an Apple product;
18 • Testimony and evidence establishing that Apple did not improperly acquire, use,
19   or disclose the alleged secrets, including testimony and evidence that Apple
20   solves a generally known problem █████████████ different from
21   ████████████████████████████ and uses generally known
22   circuitry █████████ different from the limited subset of methods of
23   Plaintiffs allegedly developed, possessed, or owned to ████████████
24   ██████████████████████████
25 • Testimony and evidence demonstrating that Apple has not caused any harm to
26   Plaintiffs based on the purported misappropriation.
27 Apple incorporates by reference all evidence and arguments in (1) its responses to
28 Plaintiffs' Interrogatory Nos. 7-9, 12-13, 17, 20, and 26-27, and (2) its expert reports,

including but not limited to, the technical expert reports of Professor Steven Warren, PhD.

### iii. Alleged "Business and Marketing Plans and Strategies" Trade Secrets

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' alleged Business and Marketing Plans ("B&M") secrets are not trade secrets and that, in any event, Apple has not misappropriated them:

- Testimony and evidence establishing Apple's independent development of the alleged B&M secrets;
- Testimony and evidence establishing that Plaintiffs' alleged B&M secrets were generally known, including because they claim nothing more than fundamental marketing principles and strategies;
- Testimony and evidence establishing that the alleged secrets do not have any independent economic value derived from being kept secret;
- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged B&M trade secrets a secret, including but not limited to because Plaintiffs themselves openly practiced the purported secrets prior to the alleged misappropriation;
- Testimony and evidence demonstrating that Plaintiffs did not develop, possess, or own the alleged B&M trade secrets prior to any alleged misappropriation by Apple;
- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence establishing that Apple does not use, and has never used, Plaintiffs' alleged B&M trade secrets in an Apple product; and
- Testimony and evidence demonstrating that Apple has not caused any harm to Plaintiffs based on the purported misappropriation.

Apple incorporates by reference (1) its responses to Plaintiffs' Interrogatory Nos. 12-13 and 17, and (2) all evidence and arguments in its expert reports, including but not limited to, the expert reports of Professor Ran Kivetz, PhD. and Dr. Marco Perez, MD.

### iv.      Alleged "Strategies for Interacting with Hospitals" Trade Secrets

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' alleged Strategies for Interacting with Hospitals ("IH") secrets are not trade secrets and that, in any event, Apple has not misappropriated them:

- Testimony and evidence establishing Apple's independent development of the alleged IH secrets;

- Testimony and evidence establishing that Plaintiffs' alleged IH secrets were generally known, including because they boil down to the idea █████████ ████████████████████████████████;

- Testimony and evidence establishing that the alleged secrets do not have any independent economic value derived from being kept secret;

- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged IH trade secrets a secret, including but not limited to because Plaintiffs themselves openly practiced the purported secrets prior to the alleged misappropriation;

- Testimony and evidence demonstrating that Plaintiffs did not develop, possess, or own the alleged IH trade secrets prior to any alleged misappropriation by Apple;

- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence establishing that Apple does not use, and has never used, the alleged IH trade secrets in an Apple product; and

- Testimony and evidence demonstrating that Apple has not caused any harm to Plaintiffs based on the purported misappropriation.

Apple incorporates by reference (1) its responses to Plaintiffs' Interrogatory Nos. 12-13 and 17, and (2) all evidence and arguments in its expert reports, including but not limited to, the expert reports of Professor Ran Kivetz, PhD. and Dr. Marco Perez, MD.

### b.     Damages For Trade Secret Misappropriation (Claim 13)

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs are not entitled to damages with respect to any of the alleged trade secrets:

- Testimony and evidence establishing Apple's independent development of the alleged trade secrets and accused features;
- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence establishing that Apple does not use, and has never used, the alleged trade secrets in an Apple product;
- Testimony and evidence establishing that Apple was not unjustly enriched by any purported misappropriation;
- Testimony and evidence showing that Plaintiffs did not lose any sales or profits as a result of purported misappropriation;
- Testimony and evidence showing that any head start advantage to Apple from any purported misappropriation was immaterial;
- Testimony and evidence to rebut the damages opinions offered by Plaintiffs' fact and expert witnesses; and
- Testimony and evidence cited above in Part I.A.3.a.

Apple incorporates by reference (1) its responses to Plaintiffs' Interrogatory No. 16 and (2) all evidence and arguments in its expert reports, including but not limited to,

the expert reports of Shirley Webster and Professors Ran Kivetz, PhD, Steven Warren, PhD, and Majid Sarrafzadeh, PhD.

### c.      Correction of Inventorship (Claims 14-19 and 28)

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs are not entitled to correction of inventorship with respect to any of the '052, '670, '095, '754, '997, '671, and '390 patents (collectively, the "Disputed Patents"):

- Testimony and evidence showing that the allegedly omitted inventors did not invent the subject matter claimed in the Disputed Patents;

- Testimony and evidence showing any information the allegedly omitted inventors discussed with Marcelo Lamego was information that was already known in the prior art, including by virtue of Plaintiffs' publication, public use, or sale;

- Testimony and evidence showing that certain information known to the allegedly omitted inventors was not conveyed to Marcelo Lamego;

- Testimony and evidence showing that certain information, including information not known in the prior art, was not possessed by the allegedly omitted inventors and thus could not have been conveyed to Marcelo Lamego;

- Testimony and evidence showing that Apple engineers (including, at the time, Marcelo Lamego) independently conceived of and reduced to practice the inventions described in the Disputed Patents; and

- Testimony and evidence cited above in Part I.A.3.a.

Apple incorporates by reference all evidence and arguments in (1) its response to Plaintiffs' Interrogatory No. 14 and (2) its expert reports, including but not limited to, the expert reports of Professors Steven Warren, PhD and Majid Sarrafzadeh, PhD.

### d.      Declaratory Judgment of Patent Ownership (Claims 20-27)

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs are not entitled to declarations of patent ownership with respect to any of the Disputed Patents or the Disputed Application:

- Testimony and evidence showing that Apple's employees are the correct named inventors of the subject matter claimed in the Disputed Patents and Disputed Application;

- Testimony and evidence rebutting any testimony and evidence offered by Plaintiffs regarding any contractual agreements that purportedly obligate any employee of Plaintiffs to assign any of the Disputed Patents or Disputed Application to Plaintiffs.

- Testimony and evidence cited above in Parts I.A.3.a and I.A.3.c.

Apple incorporates by reference all evidence and arguments in (1) its response to Plaintiffs' Interrogatory No. 14 and (2) its expert reports, including but not limited to, the expert reports of Professors Steven Warren, PhD and Majid Sarrafzadeh, PhD

**B.     Apple's Defenses**

Apple intends to present the following defenses at trial.

**1.     Summary of Affirmative Defenses Apple Intends to Pursue At Trial[1]**

**Affirmative Defense V: Laches.**  Plaintiffs have unjustifiably delayed in asserting their trade secret misappropriation and inventorship/ownership claims.

**Affirmative Defense VI: No Willful or Malicious Misappropriation Of The Alleged Trade Secrets**.  Apple has not engaged in the type of conduct warranting punitive damages or attorney's fees.

---

[1] Apple does not intend to present affirmative defenses that relate solely to the patent infringement claims, which are currently stayed.  These include (1) patent non-infringement, (2) patent invalidity, (3) estoppel – patent, (4) failure to mark; no damages, and (5) no willful infringement.

1      **Affirmative Defense VII: Statute of Limitations.**  Plaintiffs' trade secret

2  misappropriation claim is not timely under the relevant three-year statute of

3  limitations, and Plaintiffs have failed to justify their delay in bringing the case.

4      **Affirmative Defense VIII: Readily Ascertainable.**  Each of Plaintiffs'

5  purported trade secrets is readily ascertainable through proper means, and thus do not

6  constitute a trade secret as a matter of California law.  While this Court has not

7  adopted Apple's interpretation of this affirmative defense, *see* Dkt. 1284, Apple

8  reserves the right to raise this issue on appeal.

9      **Affirmative Defense IX: Independent Development.**  Apple developed its

10  Apple Watch features and business and marketing strategies independently from any

11  alleged trade secrets Plaintiffs contend were misappropriated by Apple.

12      **Affirmative Defense X: Independent Invention.**  Apple independently

13  developed the inventions and technologies disclosed and claimed in the Disputed

14  Patents and the Disputed Application.

15      **Affirmative Defense XI: Waiver.**  Plaintiffs have unjustifiably delayed in

16  asserting their trade secret misappropriation and inventorship/ownership claims.

17      **Affirmative Defense XII: No Causation.**  Apple did not cause any damages or

18  injuries sustained by Plaintiffs.  Rather, Plaintiffs caused or contributed to any such

19  damages or injuries, including by disclosing the alleged trade secrets in their own

20  patents and/or patent applications.

21      **Affirmative Defense XIII: Failure to Mitigate.**  To the extent Plaintiffs have

22  suffered any damages, Plaintiffs failed to mitigate any such damages.

23      **Affirmative Defense XIV: Unclean Hands.**  Plaintiffs' misappropriation

24  claims are barred, in whole or in part, by the doctrine of unclean hands, including

25  because Plaintiffs' conduct violates California Code, Business and Professions Code

26  § 16600 and Unfair Competition Law, § 17200, et seq., and is contrary to public

27  policy.

28      **2.      Elements of Counterclaims and Affirmative Defenses**

Wilmer Cutler
Pickering Hale
and Dorr LLP

### a. Laches

The equitable defense of laches "requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000); *see also Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *20 (C.D. Cal. Nov. 7, 2022) (citing *Johnson* for the proposition that laches requires a showing that "(1) Masimo unreasonably delayed asserting or diligently pursuing a claim for misappropriation of trade secrets and (2) any delay prejudiced Defendants").

### b. Lack Of Willful/Malicious Misappropriation

To establish willful and malicious misappropriation, Plaintiffs must prove by clear and convincing evidence both that Apple acted (1) "with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith" and (2) "with an intent to cause injury" or engaged in despicable conduct and "with a willful and knowing disregard for the rights of others." Cal. Civ. Jury Instr. 4411; *accord Ajaxo Inc. v. E*Trade Group Inc.*, 135 Cal. App. 4th 21, 66 (2005) (similar); *see also Masimo*, 2022 WL 17083396, at *19 (finder of fact must find "existence of willful and malicious misappropriation … by clear and convincing evidence").

"'Despicable conduct' is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.'" Cal. Civ. Jury Instr. 4411; *accord Ajaxo Inc.*, 135 Cal. App. 4th at 66. A party acts with knowing disregard if it "was aware of the probable consequences of [its] conduct and deliberately failed to avoid those consequences." Cal. Civ. Jury Instr. 4411; *accord Ajaxo Inc.*, 135 Cal. App. 4th at 66.

### c. Statute Of Limitations

Under the CUTSA, "an action for [trade secret] misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Dkt. 606 at 3; *see also* Cal.

Civ. Jury Instr. 4421.  "The limitations period begins" "[w]hen there is reason to suspect that a trade secret has been misappropriated and a reasonable investigation would produce facts sufficient confirm this suspicion (and justify bringing suit)."  Dkt. 606 at 3; *see also* Cal. Civ. Jury Instr. 4421.  When "it is undisputed that the alleged misappropriation took place outside the limitations period, Plaintiffs 'have the burden of proving the facts necessary to toll the statute.'"  *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012); *see also* Cal. Civ. Jury Instr. 441`

### d.      Readily Ascertainable

Under Apple's interpretation (which this Court has not adopted, *see* Dkt. 1284), a purported trade secret is readily ascertainable by proper means if the information "can easily be gathered together from various sources through a minimum of time and labor."  *GSI Tech., Inc. v. United Memories*, 2015 WL 5655092, at *12 (N.D. Cal. Sept. 25, 2015); *see also, e.g.*, Cal. Civ. Jury Instr. 4420; *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1542-1544 (2007).

### e.      Independent Development

"A defendant misappropriates a trade secret when they acquire, disclose, or use plaintiff's trade secret via improper means," which excludes "reverse engineering or independent development."  *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2019 WL 12521480, at *9 (C.D. Cal. Aug. 9, 2019); *see also Eco-Separator Co. v. Shell Canada Ltd.*, 872 F.2d 427 (9th Cir. 1989) ("[P]roof of independent development would defeat a trade secret claim even if the two process were identical."); *Shapiro v. Hasbro Inc.*, 2016 WL 9113998, at *3 (C.D. Cal. July 18, 2016) ("[I]ndependent creation is, in fact, a viable defense to a misappropriation of trade secrets claim.").

### f.      Independent Invention

"Joint inventorship … can only arise when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts."  *Eli Lilly*, 376 F.3d at 1359.  Thus, where the named inventors operated "independent" from alleged joint inventors, there

1  can be no joint invention.  *Rubin v. Gen. Hosp. Corp.*, 523 F. App'x 719, 723 (Fed.

2  Cir. 2013); *see also supra* Part I.A.2.c.

### g.    Waiver

4      "To establish waiver, Defendant must show that Plaintiff intentionally

5  relinquished or abandoned a known right."  *Desert European Motorcars, Ltd. v. Desert*

6  *European Motorcars, Inc.*, 2011 WL 3809933, at *2 (C.D. Cal. Aug. 25, 2011).

### h.    No Causation

8      Under the CUTSA, a plaintiff may only recover damages "caused by

9  misappropriation."  Cal. Civ. Code § 3426.3(a); *see also ChromaDex, Inc. v. Elysium*

10  *Health, Inc.*, 2019 WL 7166056, at *1 (C.D. Cal. Oct. 9, 2019) ("Under both

11  California and federal law, a complainant may recover damages for (a) actual loss and

12  (b) unjust enrichment *caused by* misappropriation."); *Computer Scis. Corp. v.*

13  *Computer Assocs. Int'l, Inc.*, 1999 WL 675446, at *13 (C.D. Cal. Aug. 12, 1999) ("[A]

14  defendant's wrongful acts [must] be a 'but for' cause of plaintiff's damage.").

15  "Damages are caused by trade secret theft if the trade secret theft was a 'substantial

16  factor' in causing the damages."  *ChromaDex*, 2019 WL 7166056, at *1; *see AMN*

17  *Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018)

18  (plaintiff must establish that "the defendant's acquisition, use, or disclosure of the

19  trade secret was a substantial factor in causing the plaintiff harm"); Cal. Civ. Jury Instr.

20  4401(5) (misappropriation must have been "a substantial factor in causing" harm or

21  unjust enrichment).

### i.    Failure to Mitigate

23      As a general rule, "a party must mitigate the damages caused by another's

24  wrongful act."  *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 521 (2008);

25  Cal. Civ. Jury Instr. 3931 (plaintiff "is not entitled to recover damages for harm to [its]

26  property that [defendant] proves … could have been avoided with reasonable efforts or

27  expenditures").

### j.    Unclean Hands

Wilmer Cutler
Pickering Hale
and Dorr LLP

1          "The unclean hands doctrine 'closes the doors of a court of equity to one tainted

2   with inequitableness or bad faith relative to the matter in which he seeks relief.'"

3   *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)

4   (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814

5   (1945)).  Under the doctrine, a plaintiff "must come into court with clean hands, and

6   keep them clean, or he will be denied relief, regardless of the merits of his claim."

7   *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 56, *as modified* (Apr. 24,

8   2007).  Unclean hands thus applies where "it would be inequitable to provide the

9   plaintiff any relief, and provides a complete defense to both legal and equitable causes

10  of action."  *Id.*

          **3.**      **Key Evidence in Support of Apple's Defenses**

          **a.**      **Laches**

13         Apple intends to introduce at least the following categories of testimony and

14  evidence establishing that Plaintiffs' suit is barred by laches:

- Testimony and evidence showing that although Plaintiffs have alleged that Apple's purported misappropriation began nearly ten years ago, they were aware or should have been aware of the purported misappropriation at least by the end of 2016 and possibly significantly earlier (based on, among other things, the release of HealthKit in 2014 and ResearchKit in 2015).

- Testimony and evidence showing that Plaintiffs were aware of the Disputed Patents at least as early as December 2018.

- Testimony and evidence showing that Apple has been prejudiced by Plaintiffs' strategic decision to wait nearly seven years before filing this suit.

24  Apple incorporates by reference all evidence and arguments in its responses to

25  Plaintiffs' Interrogatory No. 6.

          **b.**      **Lack Of Willful/Malicious Misappropriation**

27         Apple intends to introduce at least the following categories of testimony and

28  evidence:

- Testimony and evidence establishing that Apple did not purposefully commit misappropriation.

- Testimony and evidence establishing that, even if Apple acted purposely, the conduct was reasonable under the circumstances.

- Testimony and evidence establishing that, even if Apple acted purposely and unreasonably, it acted in good faith.

- Testimony and evidence establishing that Apple did not intend to cause injury to Plaintiffs via the purported misappropriation.

- Testimony and evidence establishing that Apple did not commit the purported misappropriation in a despicable manner.

- Testimony and evidence establishing that Apple was not aware of the probable consequences of the purported misappropriation.

- Testimony and evidence establishing that Apple did not willfully and deliberately fail to avoid the probable consequences of the purported misappropriation.

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory Nos. 6, 11, 16, and 22.

### c.   Statute Of Limitations

Apple intends to introduce at least testimony and evidence establishing that although Plaintiffs have alleged that Apple's purported misappropriation began nearly ten years ago, they were aware or should have been aware of the purported misappropriation at least by the end of 2016 and possibly significantly earlier (based on, among other things, the release of HealthKit in 2014 and ResearchKit in 2015). Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6.

### d.   Readily Ascertainable

Although this Court has not adopted Apple's interpretation of this affirmative defense, *see* Dkt. 1284, Apple would have presented at least testimony and evidence

showing that each of Plaintiffs' purported trade secrets is publicly known or could otherwise be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  Apple incorporates by reference all evidence and arguments in (1) its responses to Plaintiffs' Interrogatory Nos. 6, 12-14 and (2) the expert reports from Professors Steven Warren, PhD, Majid Sarrafzadeh, PhD, and Ran Kivetz, PhD, and Dr. Marco Perez, MD.

### e.      Independent Development

Apple intends to introduce at least testimony and evidence establishing Apple's independent development of Apple Watch, including for the accused features, as well as Apple's independent development of the alleged trade secrets.  Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory Nos. 3, 6, 13, and 14, and Part I.A.3.a, above.

### f.      Independent Invention

Apple intends to introduce at least testimony and evidence establishing that Apple engineers (including, at the time, Marcelo Lamego) independently conceived of and reduced to practice the inventions described in the Disputed Patents and the Disputed Application.  Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 14 and Parts I.A.3.a, I.A.3.b, and I.A.3.c, above.

### g.      Waiver

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6 and Part I.B.3.c, above.

### h.      No Causation

Apple intends to introduce at least the following categories of testimony and evidence:

- Testimony and evidence establishing that any and all of Plaintiffs' alleged injuries and/or damages were the result of one or more intervening or

superseding causes, including the acts of persons and/or entities other than Apple, or caused or contributed to by Plaintiffs' own actions;

- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged trade secrets a secret, including but not limited to Plaintiffs' publication and/or use of the alleged secrets in their own patents, products, and/or publicly available documents.

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory Nos. 6 and 16, and Parts I.A.3.a and I.A.3.b above.

### i.      Failure to Mitigate

Apple intends to introduce at least testimony and evidence establishing that Plaintiffs failed to mitigate any damages purportedly caused by Apple's alleged misappropriation. Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory Nos. 6 and 16, and Parts I.A.3.b, I.B.3.a, I.B.3.c, and I.B.3.h, above.

### j.      Unclean Hands

Apple intends to introduce at least the following categories of testimony and evidence:

- Testimony and evidence establishing that Plaintiffs' actions violate California Code, Business and Professions Code § 16600 and Unfair Competition Law, § 17200, et seq., and are contrary to public policy;
- Testimony and evidence establishing that the confidentiality provisions of the Employee Confidentiality Agreements between Plaintiffs and Marcelo Lamego and Michael O'Reilly are void as a matter of law because they restrain Drs. Lamego and O'Reilly's abilities to practice their profession;

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6, and Parts I.B.3.a and I.B.3.c, above.

## II.   ANTICIPATED EVIDENTIARY ISSUES

The parties have filed motions *in limine* raising certain evidentiary issues that are pending before the Court.

**Plaintiffs' motion *in limine* (Dkt. 1297):** Plaintiffs have filed one motion *in limine* seeking to exclude three categories of evidence and arguments.  *See* Dkt. 1297. Plaintiffs seek to exclude evidence and argument related to (1) the involvement of Plaintiffs' attorneys in creating Plaintiffs' Section 2019.210 trade secret disclosure, (2) similarities between Plaintiffs' interrogatory responses and Plaintiffs' experts' reports, and (3) related to the parties' narrowing of the case.

Apple agrees that the parties will not offer evidence or argument about their respective narrowing of the case, but reserves the right to address abandoned trade secrets incorporated into other asserted trade secrets as noted in Apple's opposition. Apple opposes the remainder of Plaintiffs' motion.

**Apple's motions *in limine* (Dkts. 1296, 1300, 1303, 1306):**  Apple has filed four motions *in limine*.  Apple's MIL No. 1 seeks to preclude references to evidence, arguments, or holdings from other litigations and proceedings.  *See* Dkt. 1296. Apple's MIL No. 2 seeks to exclude evidence regarding irrelevant aspects of Apple's corporate operations (e.g., Apple's foreign operations, Apple's size/corporate structure, and hiring of Plaintiffs' employees that Plaintiffs have not claimed are involved in the alleged misappropriation).  *See* Dkts. 1300 (public), 1316 (sealed).  Apple's MIL No. 3 seeks to exclude evidence regarding irrelevant and potentially inflammatory statements of current or former Apple employees (e.g., Steve Jobs, Dr. Michael O'Reilly).  *See* Dkts. 1303 (public), 1317 (sealed).  Apple's MIL No. 4 seeks to exclude certain unlawful confidentiality provisions of Plaintiffs' employee agreements.  *See* Dkts. 1306 (public), 1318 (sealed).

Plaintiffs have indicated that they generally intend to oppose Apple's motions, with limited exceptions noted within Apple's briefs.

## III.   ISSUES OF LAW

Apple respectfully submits that at least the following legal issues remain to be decided:

- Whether each of the alleged trade secrets existed and was owned by Plaintiffs at the time of Apple's purported misappropriation;

- Whether each of Plaintiffs' alleged trade secrets is readily ascertainable—i.e., could be discovered from various sources through a relatively minimal amount of time and effort.  *See, e.g.*, Dkt. 1225 (Apple's brief raising this issue).  While this Court has not adopted Apple's interpretation of this affirmative defense, *see* Dkt. 1284, Apple reserves the right to raise this question on appeal.

- Whether Apple misappropriated any alleged trade secret;

- Whether Plaintiffs can prove any actual losses or unjust enrichment caused by Apple's alleged misappropriation;

- Whether any omitted inventor is a proper named inventor of any Disputed Patent; and

- Whether Plaintiffs are a joint or exclusive owner of any Disputed Patent or the Disputed Application.

Apple also reserves the right to identify additional legal issues based on arguments made by Plaintiffs in advance of trial (e.g., in connection with the jury instructions).

## IV.   BIFURCATION OF ISSUES

The parties have agreed—and this Court has accepted—that whether Plaintiffs are entitled to a reasonable royalty award is a matter for this Court and not the jury. *See* Dkt. 1106 (parties' stipulation); *see also* Dkt. 1076 at 6 ("The Court 'accepts Plaintiffs' representation that they will not present a reasonable royalty case to the jury.'").   Accordingly, to the extent the jury finds misappropriation of any alleged

trade secret but does not award lost profits or unjust enrichment damages, the amount of any reasonable royalty should be decided by the Court after the jury's verdict.

## V.   JURY TRIAL

In light of the Court's rulings on the parties' motions for summary judgment, Apple believes all issues remaining in Plaintiffs' affirmative case are triable to the jury, except for any award of punitive damages.  In Apple's view, all its affirmative defense are triable to a jury except for laches (Affirmative Defense 4) and waiver (Affirmative Defense 11).

## VI.   ATTORNEYS' FEES

Apple reserves the right to seek attorneys' fees and costs from Plaintiffs.

## VII.   ABANDONMENT OF ISSUES

Plaintiffs have abandoned the following alleged trade secrets:

- ██████████████████ Trade Secret Nos. 2 and 4-7.
- ██████████ Trade Secret Nos. 1-3, 6, and 9.
- ████████████ Trade Secret Nos. 1-6.
- Business & Marketing Trade Secret No. 5.
- ████████████ Trade Secrets Nos. 1-4

In addition, the Court has dismissed Plaintiffs' Hospital Interaction Trade Secret Nos. 1-4.  Dkt. 350 at 5-8.

Dated:  February 21, 2023              Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP



By:  /s/ *Mark D. Selwyn*
        Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Defendant Apple, Inc., Certifies that this

3  brief contains 6963 words, which:

4      _X_ complies with the word limit of L.R. 11-6.1.

5      ___ complies with the word limit set by court order dated [date].

6

7  Dated:_ February 21, 2023 _____          Respectfully submitted,

8
                                      MARK D. SELWYN
9                                     AMY K. WIGMORE
                                      JOSHUA H. LERNER
10                                     SARAH R. FRAZIER
                                      NORA Q.E. PASSAMANECK
11                                     THOMAS G. SPRANKLING
                                      WILMER CUTLER PICKERING HALE AND
12                                     DORR LLP
13
14                                     BRIAN A. ROSENTHAL
                                      GIBSON, DUNN & CRUTCHER LLP
15
16                                     KENNETH G. PARKER
                                      HAYNES AND BOONE, LLP
17
18
19                                     By: _/s/ Mark D. Selwyn_____
                                            Mark D. Selwyn
20
21
22
23
24
25
26
27
28