Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
Justin J. Gillett (Bar No. 298150)
justin.gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.

[Counsel appearances continue on next page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 2: PRECLUDE REFERENCES TO "IRRELEVANT APPLE OPERATIONS, FINANCES, AND RECRUITING"**<br><br>Date:          March 13, 2023<br>Time:          1:30 p.m.<br>Location:     Courtroom 10C |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT ...............................................................................1

       A.    Apple's Motions Violate The Court's "Four MIL" Rule ...............1

       B.    The Court Should Deny Apple's Requests To Exclude Broad And Poorly Defined Categories Of Potential Evidence .............................................................................2

       C.    The Court Should Not Exclude All Evidence of Foreign Operations .......................................................................3

       D.    Apple's Size and Financial Capabilities Are at Issue ....................5

             1.    Masimo Should Be Able to Present Financial Evidence to Respond to Apple's Arguments and Expert Opinions .........................................................5

             2.    Masimo Should Be Able to Show How Easily Apple Could Have Afforded to Acquire Masimo ...............7

             3.    Financial Evidence May Correct Juror Assumptions ............................................................8

       E.    Apple's Systematic Recruiting of Masimo Employees is Relevant to Apple's Misappropriation of Masimo's Trade Secrets..................................................................9

             1.    Recruiting Other Employees Is Highly Relevant ...............9

             2.    Recruiting Other Employees Is Admissible Under Rules 404 and 406 .............................................13

             3.    Apple's Cited Cases Do Not Support Its Position.............14

III.   CONCLUSION ..........................................................................16

# TABLE OF AUTHORITIES

**Page No(s).**

*Albert's Organics, Inc. v. Holzman,*
 445 F. Supp. 3d 463 (N.D. Cal. 2020) ............................................................. 11

*Apple Inc. v. Samsung Elecs. Co.,*
 2016 WL 824711 (N.D. Cal. Mar. 2, 2016) ..................................................... 3

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* 1998 WL 665138,
 (S.D.N.Y. Sept. 25, 1998) ................................................................................. 3

*Carter v. Hewitt,*
 617 F.2d 961 (3d Cir. 1980) ....................................................................... 15, 16

*Cutera, Inc. v. Lutronic Aesthetics, Inc.,*
 444 F. Supp. 3d 1198 (E.D. Cal. 2020) ......................................................... 11

*First American Title Insurance v. Northwest Title*
*Insurance Agency,*
 No. 15-CV-00229, Dkt. 371 (D. Utah Nov. 14, 2016 .................................... 11

*Haeger v. Goodyear Tire & Rubber Co.,*
 2009 WL 10635666 (D. Ariz. Sept. 10, 2009) ................................................ 3

*Harris v. Burlington N. Santa Fe R.R.,*
 2013 WL 12121984 (C.D. Cal. June 19, 2013)................................................ 1

*Lego v. Stratos Int'l, Inc.,*
 2004 WL 5518162 (N.D. Cal. Nov. 4, 2004) ................................................... 3

*Marriner v. California Army Nat. Guard,*
 2006 WL 2402063 (E.D. Cal. Aug. 18, 2006) .............................................. 15

*Maxell, Ltd. v. Apple Inc.,*
 2021 WL 3021253 (E.D. Tex. Feb. 26, 2021) ................................................ 4

*McClure v. State Farm Life Ins. Co.,*
 341 F.R.D. 242 (D. Ariz. 2022)...................................................................... 15

*McCoy v. Kazi,*
 2010 WL 11465179 (C.D. Cal. Aug. 27, 2010) .............................................. 2

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Melaleuca, Inc. v. Max Int'l, LLC*,
    2010 WL 11651949 (D. Idaho Sept. 30, 2010) ............................................. 11

*Optis Wireless Technology, LLC v. Apple Inc.*,
    No. 2:19-cv-66 (E.D. Tex. July 29, 2020), ECF No. 437 ............................. 5

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
    2016 WL 7743510 (E.D. Tex. Sept. 21, 2016) ............................................ 4

*Pinn, Inc. v. Apple Inc.*,
    2021 WL 4777134 (C.D. Cal. July 14, 2021) ............................................... 4

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ............................................................................. 14

*Stars & Bars, LLC v. Travelers Casualty Ins. Co. of Am.*,
    2020 WL 4342250 (C.D. Cal. May 28, 2020)............................................... 3

*Trovata, Inc v. Forever 21, Inc.*,
    2009 WL 10671582 (C.D. Cal. Mar. 4, 2009) ............................................ 2

*U.S. v. Allen*,
    341 F.3d 870 (9th Cir. 2003) .................................................................... 15

## OTHER AUTHORITIES

Cal. Civ. Code § 3426.3 ...................................................................................... 11

Fed. R. Evid. Rule 402 ......................................................................................... 2

Fed. R. Evid. Rule 403 .................................................................................. 2, 15

Fed. R. Evid. 404 ..................................................................................... 1, 13, 14

Fed. R. Evid. Rule 406 ............................................................................. 1, 13, 14

Fed. R. Evid. 2020 .............................................................................................. 14

## I.  **INTRODUCTION**

In a motion *in limine*, the moving party "bears the burden of proof as to each statement she requests to be excluded."  *Harris v. Burlington N. Santa Fe R.R.*, 2013 WL 12121984, at *3 (C.D. Cal. June 19, 2013).  As discussed below, Apple fails to identify most of the evidence it purportedly seeks to exclude.  Rather, Apple identifies unrelated broad categories of evidence, thereby circumventing the Court's limit on the number of motions *in limine*.  As discussed below, courts generally refuse to exclude broad categories of evidence before trial and Apple fails to satisfy its burden to prove that the Court should exclude evidence falling into those various categories.

Apple's categories also encompass relevant evidence.  For example, Apple's finances are relevant to Apple's ███████████████████████  Apple's experts also rely on Apple's financial resources to show that Apple could have developed the trade secrets on its own in a short amount of time.  Therefore, the Court should not categorically exclude evidence regarding Apple's finances.  Similarly, Apple's pattern of systemically recruiting of Masimo employees is directly relevant to Masimo's trade secret misappropriation claim.  Such evidence is also admissible under Rule 404(b)(2) to show Apple's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, and lack of accident in misappropriating Masimo's trade secrets.  Such evidence is further admissible under Rule 406 to show that Apple's hiring of O'Reilly and Lamego was in accordance with Apple's practice of hiring Masimo employees to obtain Masimo's confidential information.

Accordingly, the Court should deny Apple's motion.

## II.  **ARGUMENT**

### A.    **Apple's Motions Violate The Court's "Four MIL" Rule**

Absent certain exceptions or a motion for relief, this Court allows only four motions *in limine* per side.  Dkt. 36 at 4-5.  Apple filed four formal motions, but each motion seeks to exclude numerous broad, and largely unrelated, categories of

-1-

evidence.  Apple should not be allowed to circumvent the four-motion rule by combining multiple motions.  The Court should deny Apple's motions under the four-motion rule.  *See* Dkt. 36.

**B.**     **The Court Should Deny Apple's Requests To Exclude Broad And Poorly Defined Categories Of Potential Evidence**

The Court should deny Apple's Motion as facially overbroad because it seeks to exclude broad and poorly defined categories of evidence.  Apple's conclusion requests relief that is even broader than the evidence Apple substantively discusses in its Motion.  Apple asks the Court to preclude Masimo from:

> [O]ffering evidence, testimony, or argument concerning aspects of Apple's global operations that are ***irrelevant*** to the claims and technologies at issue in this case, ***including*** Apple's foreign operations, its overall financial performance, and any purported systematic recruitment of Plaintiffs' former employees.

MIL-2 at 5:17-21 (emphases added).[1]  The Court should deny this Motion because Apple's use of the word "including" renders the scope of evidence Apple seeks to preclude hopelessly vague and overbroad.  Apple's vague descriptions would not provide any meaningful guidance regarding the evidence or arguments that would be excluded.

Courts routinely deny motions *in limine* such as this seeking to categorically exclude evidence.  As this Court recognized, "[t]he Court ***cannot*** complete its Rule 403 analysis without the specific evidence to be offered." *Trovata, Inc v. Forever 21, Inc.*, 2009 WL 10671582, at *4 (C.D. Cal. Mar. 4, 2009) (emphasis added); *see also McCoy v. Kazi*, 2010 WL 11465179, at *12 (C.D. Cal. Aug. 27,

---

[1] The Court could summarily deny the Motion as moot because Apple's request is limited to "irrelevant" evidence, which is already addressed by Rule 402.

2010) ("A motion in limine may be denied for being vague and overbroad." (citing *Lopez v. Chula Vista Police Dep't*, 2010 WL 685014, at *7 (S.D. Cal. Feb. 18, 2010); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998) ("too sweeping in scope to be decided in limine"))); *Stars & Bars, LLC v. Travelers Casualty Ins. Co. of Am.*, 2020 WL 4342250, at *4 (C.D. Cal. May 28, 2020) ("Motions in limine that seek to exclude categories of evidence, without identifying specific evidence, are rarely appropriate."); *Apple Inc. v. Samsung Elecs. Co.*, 2016 WL 824711, at *1 (N.D. Cal. Mar. 2, 2016) (denying motion because "Apple has not identified what additional specific evidence Samsung seeks to use at trial that Apple wishes to exclude in this motion in limine."); *Lego v. Stratos Int'l, Inc.*, 2004 WL 5518162, at *1 (N.D. Cal. Nov. 4, 2004) (denying motion *in limine* because the "requested relief is vague and overbroad"); *Haeger v. Goodyear Tire & Rubber Co.*, 2009 WL 10635666, at *1 (D. Ariz. Sept. 10, 2009) ("The request regarding inflammatory commentary is too vague and is denied.").

The Court should also deny Apple's request to exclude each of the three sub-categories of evidence Apple addresses in its Motion.

**C.   The Court Should Not Exclude All Evidence of Foreign Operations**

Apple seeks to exclude any "evidence **related to** Apple's foreign operations." MIL-2 at 2 (emphasis added). Apple does not explain what evidence Apple considers "related to" Apple's foreign operations. *Id.* at 2. Apple also fails to identify any specific evidence that Apple asks the Court to exclude. *See id.* Because of that failure, the Court should deny this Motion. *See, supra*, Section II.A.

Apple provides a few examples of **categories** of evidence that it seeks to exclude. *Id.* at 2:6-10. First, Apple asks to exclude "negative press reports about [foreign] working conditions or labor issues[.]" MIL-2 at 2:9-10. This is a profound euphemism for the horrendous working conditions and human rights

abuses at the Chinese factories that Apples uses to manufacture its products. These conditions have been documented in numerous books and articles, including in the 2020 book, "Dying for an iPhone: Apple, Foxconn, and the lives of China's workers." *See* Ex. A. The conditions include high depression rates, suicides, and child labor. Evidence of Apple's role in perpetuating these conditions could rebut any evidence of Apple's supposedly good culture. However, as Apple admits, Masimo confirmed it has no intent to solicit such evidence. MIL-2 at 2, n. 1. Thus, Apple had no reason to burden the Court with this request (unless Apple intends to open the door by presenting evidence of its good culture).

Second, Apple identifies additional categories, including its international corporate structure, corporate tax planning, and the location of Apple's foreign partners. *Id.* at 2. But Apple does not explain why it asserts that ***all*** evidence falling into these categories is necessarily irrelevant or would be unfairly prejudicial. *See id.* Masimo cannot predict the arguments Apple may make or the testimony Apple may elicit at trial. Apple could make arguments or elicit testimony that could place at issue, or make relevant, evidence falling into one or more of these broad categories. The Court should not categorically preclude Masimo from eliciting such evidence.

Apple cites cases where it brought motions to exclude similar evidence. *See* MIL-2 at 12-14. None of those cases supports Apple's motion because none is a trade secret case and none granted the broad categorical exclusion that Apple seeks here. Apple's cases largely excluded the evidence that Masimo does ***not*** intend to seek to introduce (unless Apple opens the door) and ***denied*** on the issues still in dispute here. *See Pinn, Inc. v. Apple Inc.*, 2021 WL 4777134, at *2-3 (C.D. Cal. July 14, 2021) (denying motion as to evidence that Apple manufactures its products abroad and product development occurring abroad); *Maxell, Ltd. v. Apple Inc.*, 2021 WL 3021253, at *10 (E.D. Tex. Feb. 26, 2021) (granting only part of a virtually identical motion); *Parthenon Unified Memory Architecture LLC v. Apple*

*Inc.*, 2016 WL 7743510, at *3 (E.D. Tex. Sept. 21, 2016) (granting motion only as to press concerning foreign suppliers, working conditions, and labor issues); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-66 (E.D. Tex. July 29, 2020), ECF No. 437 at 241:12-242:5 (granting motion as to characterizing parties as "involved in foreign operations or employing foreign citizens" and deferring ruling on other issues).

 Accordingly, the Court should deny Apple's Motion because Apple seeks to preclude a broad category of potentially relevant evidence.

**D.**  **Apple's Size and Financial Capabilities Are at Issue**

 Apple asks the Court to broadly preclude Masimo "from adducing evidence or making arguments about Apple's size, financial resources, alleged market power, market capitalization, or overall financial performance, including Apple's total revenues and profits." MIL-2 at 3. Apple asserts, without explanation or support, that financial information is irrelevant to misappropriation, inventorship, and damages. *Id.* at 3:5-12. Apple is wrong for multiple reasons.

  **1.**  **Masimo Should Be Able to Present Financial Evidence to Respond to Apple's Arguments and Expert Opinions**

 First, Apple has repeatedly placed its financial resources at issue. For example, Apple's expert witnesses repeatedly argue that Masimo is entitled to limited damages. Apple's experts argue that Apple is so large, and has so many resources, that Apple could have developed the trade secrets quickly if it had chosen to do so instead of misappropriating them from Masimo.

 One of Apple's technical experts, Sarrafzadeh, asserts that



Ex. C (Sarrafzadeh Rebuttal Rpt. ¶ 65). Sarrafzadeh argues that

Sarrafzadeh opines that

1  ██████████████████████████████████████████████████

2  ████████████████████████████████████████ *Id.*, ¶¶ 149 (████),

3  194 (██████),  241 (███████),  282 (████████),  323 (████████),  362 (████████),

4  398 (███████),  433 (████████),  468 (████████); 504 (████████),  540 (████████).

5      Apple's other technical expert, Warren, made similar arguments.  He argued

6  that ███████████████████████████████████████

7  ████████ Ex. D ¶ 189 ████████████████████████████████

8  ██████████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10  ██████ *see also id.*, ¶ 396 (████████████████████████████

11  ██████████████████).

12      One of Apple's marketing experts, Kivetz, offered comparable opinions.

13  Ex. E, ¶ 507.  He posed the question: "████████████████████████

14  ██████████████████████████████████████████████████

15  ████████████████████████████████████████████ *Id.*

16  Kivetz argues that Apple could have done so because ██████████████████

17  ████████ *Id.*, ¶ 508 ██████████████████████████████

18  ██████████████████████████████████████████████████

19  ██████████████████████████████████████████

20      Apple's damages expert, Webster, ████████████████████████

21  ████████████████████ Ex. F, pp. 82-84 & nn. 441-445.

22      Some  fact  witnesses  also  offered  testimony  regarding  Apple's  extensive

23  resources and Masimo's resources.  Apple affirmatively designated testimony from

24  Lamego that █████████████████████████████████████████

25  ██████████████████████████████████ when he was there.

26  Ex. G at 127:18-22.  Lamego later testified that ████████████████████

27  ████████████████████ *Id.* at 686:20-687:4.

28      Apple also offered evidence regarding its supposed ***lack*** of resources.  The



evidence will show that, even after misappropriating some Masimo trade secrets, Apple still lacks the technical knowledge and experience to build an accurate pulse oximeter. Masimo questioned Apple's Chief Operating Officer, Jeff Williams, as to why Apple had not sought FDA approval for the oxygen saturation feature. Williams claimed that ███████████████████████████████████████ ████████████████████████████████████████████████████

███████████ Ex. H at 85:19-86:3; *id.* at 202:13-203:12 █████████████ ████████████████████████████████████████████████████

███████████████████████

The Court should allow Masimo to present evidence of Apple's financial resources to rebut Apple's assertions that Apple lacks sufficient resources to do some things but has virtually unlimited resources to do others.

### 2. <u>Masimo Should Be Able to Show How Easily Apple Could Have Afforded to Acquire Masimo</u>

Second, Apple is likely to argue it never seriously considered purchasing Masimo. Apple's documents show otherwise. In July 2013, Tim Cook asked Adrian Perica ████████████████████████████████████████████ ███████████████ Ex. B. Cook added: ██████████████████████ ███████████████████████████████ *Id.* Perica responded by ██████████ ████████████████████████████████████████████████████ *Id.*

Among other information, Perica wrote to Cook:

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████

*Id.*

-7-

This email indicates that Perica knew ███████████████

████████████████████████████████████ Other

discovery has indicated Apple will argue ████████████████████

███████ Without specific information about Apple's finances, the jury may think

████████████████████████████████████████████

███████████████████ For the jury to put those numbers in context, and

evaluate the credibility of the parties' competing arguments, the jury needs to

understand just how big Apple really is. For example, Masimo should be allowed

to present evidence that $1 billion is less than 0.05% of Apple's value. The jury

may be more inclined to accept Masimo's interpretation of the evidence—███

████████████████████████████████████████████

██████████████████████

### 3. Financial Evidence May Correct Juror Assumptions

Third, there is no practical way to prevent the jury from knowing that Apple

is a huge company with significant financial resources. The jury may not know

that Apple is the biggest company in the world, or that its market capitalization is

nearly $2.5 trillion. But the jurors already know that Apple is a very large very

famous company. Without specific information about Apple's finances, the jury

would be forced to make assumptions about Apple's resources that may be wildly

inaccurate. For example, as discussed above, the jury may incorrectly assume that

a $1 billion is a meaningful financial expenditure for Apple. Alternatively, the jury

may incorrectly assume that Apple has unlimited resources and could always

devote more money and more engineers to solve any problem.

Apple is improperly trying to prevent Masimo from presenting evidence of

the facts to address and correct the jurors' unknown assumptions and potential

misconceptions. Unless the Court is going to exclude for cause every juror who

knows anything about how large Apple is, the Court should allow Masimo to

introduce evidence on how Apple's size affects issues in this case.

**E.      Apple's Systematic Recruiting of Masimo Employees is Relevant to Apple's Misappropriation of Masimo's Trade Secrets**

Apple seeks to preclude Masimo from offering "evidence, testimony, or argument" concerning former Masimo employees that Apple hired other than Lamego and O'Reilly.  MIL-2 at 4.  Contrary to Apple's assertions, such evidence is unquestionably relevant to Masimo's claims for trade secret theft.

**1.      Recruiting Other Employees Is Highly Relevant**

In January 2013, Apple ███████████████████████████ ████████████████████████████████████████ Ex. I at -106.  Apple planned to ████████████████████████████ ██████ *Id.* Apple ████████████████████████ *Id.* at -109.  In May 2013, Perica met with Masimo and told Masimo that Apple was considering implementing Masimo technology in Apple products.  Ex. J at -627.

In June 2013, Cook asked Perica ████████████████████████ ██████████████████████████ Ex. B at -708.  Cook told Perica ████████ ███████████████████████████████████████████ *Id.* Perica responded that ████████████████████████████████ ████████████ *Id.* at -707.  Perica told Cook that ████████████████ ██████████████████████████████████ *Id.* Perica said ██████ ███████████████████████████████████████████████████ *Id.* at -707.  ████████████████████████ (Ex. K at -808) and Apple proceeded with ████████████████ Apple's ████████ ██████████████ was not limited to two people.

Apple hired Masimo's Chief Medical Officer, Michael O'Reilly, in June 2013.  ████████████████████████████████████████ ████████████████████████ Ex. L.  In arranging the interview, Apple recruiters concluded that ███████████████████████████████████████ and

-9-

"█████████████████████████." *Id.*  Lamego initially declined and then later reached out to Cook in October 2013.  *See* Ex. M.  Lamego offered to help solve Apple's patient monitoring problems in exchange for a senior executive position at Apple, referencing his experience at Masimo.  *Id.*  ████████████
███████████████████████████████████████████████████████ Ex. N at -007.

   Apple discussed ███████████████████████████████████████████ Ex. O at -776 ███████████████████████ Apple chose the last option of ████████
████████████ Apple hired Lamego and ████████████████████████
███████████████████████████████████████████ Ex. P at -986.  Apple continued its █████████████████████████████████
████████████████████████ Ex. Q.  Apple completed ████████
█████████████████████████████ *Id.*  Apple then hired █
██████████████████████████ over the next several years.  Ex. R at 16-18, 27.

   During interviews of Masimo employees, ███████████████████
██████████████████████ For example, █████████████████████
██████████████████████ Ex. S. █████████████████████████████
██████████████████████ Ex. T at 27:1-18, 23:1-24:14.  Nonetheless,
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████ Ex. S; Ex. T at 21:6-11.

   Apple also recommended ███████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████ Ex. U (Apple explaining █████████
███████████████████████████████████████████████████████████
███████████████████████████

This and other evidence of Apple's efforts to acquire Masimo technology through hiring Masimo employees is relevant to many issues.  It makes it more likely that Apple knew or had reason to know that it was obtaining Masimo's trade secrets—a key disputed element of Masimo's claim.  The Court also recently discussed much of this evidence in addressing Masimo's summary judgment motion.  Dkt. 1275 at 9-10 (" ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████  And, in addressing whether Apple had knowledge that **Lamego** took trade secrets, the Court discussed evidence that Apple hired **O'Reilly**.  *Id.* at 10.  Evidence of Apple hiring other employees is similarly relevant to Apple's knowledge that it was obtaining Masimo's trade secrets.  It is also relevant to show Apple's willful and malicious misappropriation.  *See* Cal. Civ. Code § 3426.3(c).

Masimo's theory is not unique.  Courts often recite allegations of systematic hiring of a competitor's employees in trade secret cases.  *See*, *e.g.*, *Albert's Organics, Inc. v. Holzman,* 445 F. Supp. 3d 463, 470 (N.D. Cal. 2020) (defendants "attempted to enlist other highly experienced [plaintiff's] employees to compete against [plaintiff]."); *Cutera, Inc. v. Lutronic Aesthetics, Inc*., 444 F. Supp. 3d 1198, 1202 (E.D. Cal. 2020) (four of plaintiff's employees involved in marketing and sales suddenly resigned and began working for defendant, followed shortly by nine more); *First Am. Title Ins. v. Nw. Title Ins. Agency*, No. 15-CV-00229, Dkt. 371 (D. Utah Nov. 14, 2016) (denying motion *in limine* to exclude a list of plaintiff's employees taken by the defendant "for reasons stated in [Dkt. 341] Opposition"); *Melaleuca, Inc. v. Max Int'l, LLC*, 2010 WL 11651949, at *1 (D. Idaho Sept. 30, 2010) ("[Defendant] began recruiting [plaintiff's] executives in late 2008. … Eight executives accepted.").

As discussed above, the documentary evidence establishes that Apple's CEO, Tim Cook, suggested that ████████████████████████████████

Ex. B.   Masimo will present evidence that Apple indeed opted ███████ ████████ instead of pursuing a business deal with Masimo, and that ████ ████████ meant hiring Masimo employees who could provide the trade secret information Apple lacked.

Apple asserts that, other than O'Reilly and Lamego, Masimo has "never identified any other former Masimo or Cercacor employee 'recruited' by Apple who is supposedly relevant to the alleged misappropriation, … ."  MIL-2 at 4:16-18.  That is false.  Masimo alleged, from the very beginning of this case, that Apple "systematically recruited" key Masimo employees to obtain access to Masimo's trade secrets.  Dkt. 1, ¶ 21; *see also id.*, ¶ 22 (alleging "a targeted effort to obtain information and expertise from Masimo and Cercacor"); *see also* Dkt. 296-1 ¶ 229 (operative complaint alleging "Apple targeted and recruiting Plaintiffs' employees, ***including*** O'Reilly and Lamego, because of their knowledge of Plaintiffs' Confidential Information").  Masimo's interrogatory responses also relied on the fact that Apple ████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████ Ex. V at 19.

The number and timing of Apple's hiring of Masimo employees makes the hiring of all former Masimo employees relevant.  Apple concedes that evidence is relevant to this case if it makes "misappropriation more or less likely" or has "to do with inventorship[.]"  MIL-3 at 7-8.  The jury could reasonably conclude that evidence Apple systematically hired ████████ Masimo employees between 2012 and 2020 makes it more likely that Apple did so for the purpose of obtaining Masimo's trade secrets.  That is especially true in view of evidence discussed above regarding "smart recruiting" and Apple obtaining confidential information from Masimo employees during interviews.

Apple may argue that its hiring of so many Masimo employees was merely

-12-

a coincidence.  The jury should evaluate the reasonableness of Apple's assertion in light of the facts.  Joe Kiani founded Masimo in 1989.  Apple did ***not*** hire any former Masimo employees before ███████  *See* Ex. 2, pp. 16-18.  Then, ███████ ███████████  Apple suddenly began hiring Masimo employees.  Between ██████ ████████████████  Apple hired more than ███  Masimo employees, including O'Reilly in 2013, Lamego in 2014, and ████████████████████████████ ██████████  *Id.*  The jury should be entitled to consider this evidence and draw its own conclusions.

## 2.   <u>Recruiting Other Employees Is Admissible Under Rules 404 and 406</u>

Evidence of Apple's routine practice of hiring Masimo employees would be admissible under Rules 404 and 406 regardless of whether those employees are directly at issue in the case.  Rule 404(b) addresses the admissibility of "***other*** crimes, wrongs, or ***acts***."  Fed. R. Evid. 404(b) (emphasis added).  Section (b)(2) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Evidence of Apple's pattern of hiring Masimo employees is relevant at least to (i) Apple's motive in hiring O'Reilly and Lamego, (ii) Apple's intent in hiring them, (iii) Apple's preparation and plan to hire them to misappropriate trade secrets, (iv) Apple's knowledge that they possessed Masimo's trade secret, and (v) Apple's lack of mistake or accident in obtaining Masimo's trade secrets from them. *See id.*

Apple argues that Apple's hiring of other former Masimo employees would not make misappropriation any more likely.  MIL-2 at 4.  As discussed above, their hiring does make misappropriation more likely.  But that is not required.  In 2020, the word "other" in Rule 404(b) was "restored to the location it held before restyling in 2011, to confirm that Rule 404(b) applies to crimes, wrongs, and ***acts***

1   ***'other' than those at issue in the case***; and the headings are changed accordingly."

2   Fed. R. Evid. 404, 2020 Advisory Committee Notes (emphasis added).   This

3   confirms that Rule 404(b)(2) makes Apple's other acts of hiring Masimo

4   employees admissible to show motive, opportunity, intent, preparation, plan,

5   knowledge, absence of mistake, and lack of accident—regardless of whether hiring

6   those other employees was a crime, a wrong, or at issue in the case.

7   Evidence of Apple's practice of hiring ▮ Masimo employees over ▮

8   years is also admissible under Rule 406.   "Evidence of … an organization's routine

9   practice may be admitted to prove that on a particular occasion the … organization

10   acted in accordance with the habit or routine practice."   Fed. R. Evid. 406.   Thus,

11   Masimo may present evidence of Apple's pattern to prove that Apple's specific

12   hiring of O'Reilly and Lamego was in accordance with that practice.   It is generally

13   agreed that "habit evidence is highly persuasive as proof of conduct on a particular

14   occasion."   Fed. R. Evid. 406, Advisory Committee Notes.

15   **3.   <u>Apple's Cited Cases Do Not Support Its Position</u>**

16   Apple's reliance on *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1150 (2004), does

17   not suggest otherwise.   In *Reeves*, the Supreme Court of California upheld an award

18   for trade secrets misappropriation and for intentional interference.   *Id.* at 1146

19   ("The evening of their resignations, defendants personally solicited plaintiffs' key

20   employees.   As a result, plaintiffs lost nine employees over the next 60 days, six of

21   them joining defendants' new firm.").   The California Supreme Court rejected the

22   argument that a claim for intentional interference could not be based on hiring at-

23   will employees.   *Id.* at 1156.   Nothing in *Reeves* supports Apple's assertion that

24   systematic hiring of a competitor's employees is irrelevant to allegations of trade

25   secret misappropriation—regardless of whether it is independently actionable.

26   Further, Apple cannot show that evidence it hired more than ▮ Masimo

27   employees in ▮ years would be unfairly prejudicial.   "All relevant evidence is

28   prejudicial, but it is 'unfairly prejudicial' only if it tends to suggest or encourage a

-14-

decision on ***improper reasoning***." *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 258 (D. Ariz. 2022) (emphasis added); *see Carter v. Hewitt*, 617 F.2d 961, 972 at n.14 (3d Cir. 1980) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"). "'Unfair prejudice,' in turn, means 'an undue tendency to suggest decision on an ***improper basis***, commonly, though not necessarily, an emotional one.'" *U.S. v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) (emphasis added) (quoting Fed. R. Evid 403, advisory committee notes); *see also Marriner v. Cal. Army Nat'l Guard*, 2006 WL 2402063, at *15 (E.D. Cal. Aug. 18, 2006) ("Unfair prejudice is characterized as 'the possibility that the evidence will excite the jury to make a decision ***on the basis of a factor unrelated to the issues*** properly before it.'" (emphasis added) (quoting *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1134 (4th Cir. 1988)).

Apple has not shown that presenting evidence of Apple's hiring of nearly ███ Masimo employees would encourage the jury to decide the case on "improper reasoning," and "an improper basis," or "on the basis of a factor unrelated to the issues properly before it." Nor has Apple shown that the probative value of evidence that it systematically identified, targeted, and hired Masimo employees would be substantially outweighed by any unfair prejudice. Apple asserts that it would be prejudiced because it would have to put on evidence to show that only "a handful" of the former Masimo employees (beyond Lamego and O'Reilly) who now work for Apple worked on the Apple watch. Mem. at 5:7-15. That is not "unfair prejudice." That is simply Apple having to present evidence to try to convince the jury that there is an innocent explanation for the damning evidence of Apple's systematic hiring of Masimo employees only after deciding to add health features to its products. Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial." *Carter*, 617 F.2d at 972. Thus, the Court should not exclude evidence of Apple's

-15-

1 | recruiting of other Masimo employees.

2 | ### III.  <u>CONCLUSION</u>

3 |       For the foregoing reasons, Plaintiffs respectfully request this Court deny

4 | Apple's Motion in Limine No. 2.

7 | Respectfully submitted,

8 | **KNOBBE, MARTENS, OLSON & BEAR, LLP**

9 | Dated:  February 21, 2023     By: */s/ Benjamin A. Katzenellenbogen*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Justin J. Gillett
Daniel P. Hughes

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned, counsel of record for Plaintiffs' Masimo Corp. and

3   Cercacor Laboratories, Inc., certifies that this brief contains 4,810 words, which

4   [choose one]:

5    X  complies with the word limit of L.R. 11-6.1.

6   __ complies with the word limit set by court order dated [date].

7

8   Respectfully submitted,

9   **KNOBBE, MARTENS, OLSON & BEAR, LLP**

10

Dated: February 21, 2023   By: */s/ Benjamin A. Katzenellenbogen*

11   Joseph R. Re

12   Stephen C. Jensen

Benjamin A. Katzenellenbogen

13   Perry D. Oldham

Stephen W. Larson

14   Mark D. Kachner

15   Adam B. Powell

Kendall M. Loebbaka

16   Justin J. Gillett

17   Daniel P. Hughes

18

19   Attorneys for Plaintiffs,

Masimo Corporation and

20   Cercacor Laboratories, Inc.

21

22

23

24

25

26

27

28

-17-