MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**JOINT REPORT REGARDING PLAINTIFFS' CONTINGENT MOTION TO STRIKE AND REQUEST FOR SANCTIONS PURSUANT TO DKT. 1280**<br><br>Pre-Trial Conference: Mar. 13, 2023<br>Trial: Mar. 28, 2023 |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.300

I. **PLAINTIFFS' STATEMENT**

A. **Generally Known and Readily Ascertainable Opinions**

The Order instructed the parties to meet and confer on whether references, third-party products, and marketing principles disclosed for the first time in the expert reports constitute impermissible new theories or align with previously disclosed theories. Order at 9. Apple claimed every single undisclosed reference, third-party product, and marketing principle aligned with previously disclosed theories, but refused to provide any explanation. Ex. 1 at 7. Despite Apple's refusal to engage, Masimo considered the Court's guidance and narrowed the parties' dispute. Ex. 2 at 4-5. Only after Masimo identified a narrowed list of references did Apple finally explain its position. *Id.* at 1-4. Based on the Court's guidance, Masimo respectfully submits that at least the below-listed references, third-party products, and marketing principles constitute new theories that should be struck.

The Order cited *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 2988834, at *5 (N.D. Cal. May 24, 2016), for the proposition that "a party may not use an expert report to introduce new . . . ***theories*** . . . not disclosed in the party's contentions." Order at 8 (emphasis added). This Court quoted *Finjan*'s reasoning that certain disclosures could constitute a specific "application of a disclosed theory" rather than the "impermissibl[e] substitut[ion] of a new theory altogether." *Id.* at 9.

In *Finjan*, the court struck new references that a party disclosed for the first time in expert reports and relied on for the first time as obviousness combinations. *Finjan*, 2016 WL 2988834, at *9-*10. In contrast, the *Finjan* court allowed new references that were "examples" or explanations of previously disclosed references, "not as distinct prior art references." *Id.* at *11. The party that failed to disclose the references during discovery bore the burden of establishing they were within the scope of previous theories. *See id.* at *14 (a "single-sentence explanation" was insufficient to show new disclosure was within the scope of "what was previously disclosed").

### 1. References First Identified in Expert Reports

Here, Apple's technical experts relied on two new references constituting new theories never disclosed during discovery: **1)** Signal Processing and Linear Systems, B. P. Lathi, 1998; **2)** U.S. Patent No. 8,358,075. *See* Dkt. 1174-1, Ex. 3 ¶ 128, Ex. 1 ¶ 57. Apple does not assert these references are "examples" or explanations of previously disclosed references. *See Finjan*, 2016 WL 2988834, at *11. Instead, Apple argues only that these references are "analogous" to previously disclosed references. Ex. 2 at 2. But Apple's experts rely on the new distinct references showing Masimo's trade secrets were allegedly generally known. The references are new theories, regardless of whether or not they are "analogous" to previous references. *See Finjan*, 2016 WL 2988834, at *5. The Court should strike the two new references.

### 2. Third-Party Products First Identified in Expert Reports

Apple's business and marketing experts relied on three new products constituting new theories never disclosed during discovery: **1)** Asthmapolis (Propeller Health) Inhaler Sensor; **2)** iHealth Smart Glucometer; and **3)** Scale. *See* Dkt. 1176-1, Ex. 14 ¶¶ 146-160, 164-167; Ex. 15 ¶¶ 47, 54, 66, 96. These products include product types—an inhaler sensor, glucometer, and a scale—that Apple never identified in fact discovery. Ex. 2 at 3. Such high-level generalizations would allow Apple to delay disclosing almost any product relevant to Masimo's business and marketing secrets. Apple has not shown the new products are "examples" or explanations of previously disclosed theories. *See Finjan*, 2016 WL 2988834, at *11. The Court should strike these new products.

### 3. Marketing Principles First Identified in Expert Reports

Apple's expert Kivetz opined that Masimo's business and marketing trade secrets are generally known based on six specific marketing principles:

Wilmer Cutler
Pickering Hale
and Dorr LLP



*See* Dkt. 1176-1, Ex. 14 ¶¶ 88-104. Apple identified none of these principles during discovery.

Apple points only to its interrogatory response, which references "designing and marketing a product to multiple market segments[.]" Ex. 2 at 2. That is not the same as, nor similar to, the marketing principles above. Apple's interrogatory response never disclosed Apple's new theory. Kivetz broke down the trade secrets into elements and then opined each element is "encapsulated" by newly disclosed marketing principles, which Kivetz alleges are "generally known." Dkt. 1176-1, Ex. 14 ¶¶ 36-106. Kivetz's analysis constitutes a new "theory" that is not in Apple's discovery responses. Thus, the Court should strike Apple's marketing principles and the documents Kivetz cites in connection with those principles.

### 4. Apple Cannot Show Harmlessness

Because Apple disclosed the references, third-party products, and marketing principles late, Masimo was unable to take third-party discovery or ask Apple witnesses about them. Such discovery could have shown that the references, third-party products, and marketing principles were not well known. Indeed, the parties deposed Nonin, one of the companies Apple cited to argue the trade secrets are "generally known." That deposition showed Nonin's strategy was different than Masimo's confidential strategies (and, regardless, was kept confidential). Had Apple timely disclosed its theories regarding, for example, Asthmapolis or iHealth, Masimo could have deposed these companies and countered Apple's contentions.

### 5. References Disclosed on September 6, 2022

Masimo's motion identified about 100 references that Apple disclosed for the first

time on September 6, 2022, the date the parties agreed to supplement contention interrogatories. This date was three weeks after the close of fact discovery. Apple has taken conflicting positions on whether documents disclosed by September 6 were disclosed during fact discovery. During the meet and confer, Apple stated "the Court appears to have declined to find a discovery violation based on the references cited in the September 6 responses." Ex. 1 at 4. Based on Apple's position, and the understanding that the rule will apply to both parties, Masimo is not seeking to strike the 100 references Apple disclosed for the first time on September 6.

### B. O'Reilly's Notebooks

The Court found a discovery violation based on Apple's late disclosure of the O'Reilly's notebooks, but the Court deferred ruling on whether that late disclosure was substantially justified or harmless. Order at 16. The Court ordered the parties to meet and confer on Masimo's request for additional information and potential remedies if sanctions are warranted. *Id*.

Apple argues that its late disclosure of the O'Reilly notebooks was justified because Apple was not aware of the notebooks until it was preparing O'Reilly for his deposition. To evaluate Apple's diligence, Masimo requested that Apple allow Masimo to reopen the O'Reilly deposition to learn the circumstances related to Apple's efforts to collect documents from O'Reilly, including the dates people communicated with O'Reilly, what was requested from O'Reilly, who communicated with O'Reilly, and O'Reilly's responses. Ex. 3 at 1. Apple refused. *See* Ex. 1 at 8.

Attempting to compromise, Masimo then asked Apple to provide the information that would normally be disclosed on a privilege log for (a) any discussions with O'Reilly about document collection and (b) any discussion when O'Reilly identified his notebooks. Ex. 1 at 6. Apple again refused, claiming only that Apple "began the document collection process with Dr. O'Reilly in January 2021." *Id*. at 5. Apple's refusal to identify when Apple interviewed O'Reilly or whether it asked him to collect

physical documents must be explored. If Apple asked O'Reilly to collect physical documents and O'Reilly refused to provide the notebooks, that would be relevant to showing O'Reilly knew the notebooks contained Masimo's trade secrets. Masimo should be permitted to explore that during cross-examination at trial. If Apple did not ask O'Reilly to collect physical documents, Apple was not diligent in its document collection efforts. In that case, the appropriate sanction is an adverse inference jury instruction. *See Williams v. City of Long Beach*, 2021 WL 9314952, at *5 (C.D. Cal. Dec. 27, 2021) (granting adverse instruction where party delayed producing evidence).

Apple claims that Masimo's requested discovery is privileged. Ex. 1 at 2, 4-5, 8. But where and how a party searched for documents is not privileged. *See, e.g.*, *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *6 (C.D. Cal. July 9, 2021); *Vasoli v. Yards Brewing Co., LLC*, 2021 WL 5045920, at *1–2 (E.D. Pa. Nov. 1, 2021). Regardless, Apple waived privilege over the information Masimo requests because Apple relied on its document collection efforts to attempt to show diligence. Ex. 1 at 2, 5; Dkt. 1223 at 18-19; *see In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("selective disclosure for tactical purposes waives the privilege").

Apple also objects to Masimo's request to reopen the O'Reilly deposition "in view of prior representations that [Masimo] agreed all issues with respect to that deposition and Dr. O'Reilly's notebooks were resolved[.]" Ex. 1 at 2. But Masimo specifically told Apple it did not agree all O'Reilly notebook issues were resolved. *See* Ex. 4 at 1-2. Moreover, Masimo could not anticipate that Apple would improperly block questioning at the deposition about when O'Reilly first made Apple's attorneys aware of his notebooks. Such facts are not privileged.

If re-opening the deposition is not possible before trial, the Court should issue an adverse inference instruction: the jury can infer from Apple's late production of O'Reilly's notebooks that Apple believed the information in those notebooks was harmful to Apple. *See Williams*, 2021 WL 9314952, at *5.

## II. APPLE'S STATEMENT

### A. Generally Known and Readily Ascertainable Opinions

The Court's Order provided the parties with a framework for analyzing whether the publicly-available references first cited in Apple's experts' reports were proper under FRCP 26: "wholly new theories" are inappropriate, but references that either constitute "a specific 'application of a disclosed theory'" or are "used for background information" are permissible. Dkt. 1280 at 9 & n.4. Apple provided its position to Plaintiffs nine days ago. Ex. A at 6. Plaintiffs waited until two days ago—i.e., and two-and-a-half weeks after receiving the Court's Tentative Order—to identify what they now contend were late disclosed new theories: (1) four references discussed by Apple's technical experts and (2) fifteen marketing principles and third-party products discussed by Apple's non-technical experts. Ex. B at 3-4. Apple promptly responded, agreeing for the sake of compromise that it would not present at trial three of those references and third-party products and explaining why the remainder were proper under the Court's framework and in any event that any late disclosure was harmless. *Id.* at 1-3.[1]

*First*, the remaining references at issue are analogous to other references Apple identified in its interrogatory responses in support of its generally known contentions, and therefore do not constitute new theories. *See* Ex. B at 1-2. Specifically, the concepts described in Signal Processing and Linear Systems, B. P. Lathi, 1998 and U.S. Patent No. 8,358,075 were all disclosed in several other references identified in Apple's interrogatory responses in support of its generally known theories for alleged LP Trade Secret No. 4 and alleged D&D Trade Secret No. 1. *Id.*

*Second*, with respect to the marketing principles identified by Plaintiffs, Apple's expert Dr. Kivetz identified each of these as "core concepts" that underlie basic

---

[1] The night before the joint report was due, Plaintiffs stated for the first time that they were abandoning twelve more of their purported trade secrets, including several B&M secrets. As a result, some of the references flagged in Plaintiffs' February 21 email are no longer relevant and Apple does not intend to raise them at trial.

marketing strategy, Dkt. 1176-2, Ex. 14 at ¶ 60, and thus underlie the alleged B&M trade secrets. Apple disclosed its theory that the alleged B&M trade secrets are basic marketing strategies in its interrogatory responses, explaining—for example—that alleged B&M Trade Secret No. 1 "boil[s] down" to "[t]he notion of designing and marketing a product to multiple market segments," "a basic marketing concept covered in any basic business school marketing course." Dkt. 1176-2, Ex. 13 at 241. Dr. Kivetz expanded on this contention in his opening report, citing references in support of his opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 1176-2, Ex. 14 at D.2. These opinions merely expand upon the theory disclosed in Apple's interrogatory responses. *See* Ex. B at 2. Further, Dr. Kivetz uses these examples of basic marketing principles as context for his analysis of the alleged trade secrets, just as Plaintiffs' expert endeavors to do through his own reports' description of general marketing strategies. *See, e.g.*, Dkt. 1112-2 at ¶¶ 37-42.

*Third*, as to the remaining third-party products at issue, Apple's interrogatory responses identified analogous third-party products, and publications discussing those products. Plaintiffs' list includes several devices that Apple's experts identified as examples of third-party medical devices marketed to and used by consumers prior to any alleged misappropriation. *See* Ex. B at 3; *see also* Dkt. 1176-2, Ex. 14 at E.2; Dkt. 1176-2, Ex. 15. Apple's interrogatory responses identified products in support of this same contention. *See, e.g.*, Dkt. 1176-2, Ex. 13 at 242 (highlighting Omron and Dexcom's development of medical devices for home use).

In any event, as this Court suggested, that each of these references was not disclosed earlier is harmless where "Plaintiffs were able to conduct lengthy depositions of the relevant experts and Plaintiffs' expert produced an extensive rebuttal report." *See* Dkt. 1280 at 7. Indeed, although *Plaintiffs* have the burden to establish that the alleged secrets are not generally known, Apple's experts outlined their opinions that the alleged

secrets are generally known in their opening reports. This gave Plaintiffs' experts a full opportunity to address them in their rebuttal reports. And at no point have Plaintiffs even attempted to make any showing of harm, despite ample opportunities to do so in briefing, oral argument, and discussions with counsel. *See* Dkt. 1223 at 15-16.

### B. Dr. O'Reilly's Notebooks

Since the Court directed "the parties [to] meet and confer on the additional information requested by Plaintiffs," Dkt. 1280 at 16, Plaintiffs have not requested *any* substantive information regarding Dr. O'Reilly's notebooks. The Court should accordingly hold that the late disclosure was harmless and thereby avoid wading into Plaintiffs' request to pierce Apple's attorney-client privilege.

As explained in Apple's opposition brief, following the production of Dr. O'Reilly's notebooks Apple agreed to (1) delay Dr. O'Reilly's deposition, (2) provide Plaintiffs additional time for that deposition, and (3) extend the deadline for relevant expert reports. Plaintiffs agreed Apple's concessions "resolve[d] the parties' dispute with respect to the O'Reilly … deposition[]" (*see* Dkt. 1223-14 at 1) and never sought any further relief. The only claim Plaintiffs have ever provided of remaining prejudice was that they were "unable to question Apple witnesses, other than Dr. O'Reilly, on the notebooks." Dkt. 1176 at 19; *see also* Dkt. 1280 at 15. The day after receiving the Court's tentative, Apple asked Plaintiffs (and have continued to ask Plaintiffs) what other Apple witness they would want to question. Plaintiffs have identified no one. *See, e.g.*, Ex A at 2-3; Ex. C at 1-2. Plaintiffs' proffered excuse—that they "never suggested [they] could take this discovery now, … because … that would jeopardize the trial schedule," Ex. A at 2, is a *non sequitur*. Had Plaintiffs promptly identified specific witnesses (or better yet, had Plaintiffs identified such witnesses at any time since Dr. O'Reilly was deposed in September 2022), additional questioning on this discrete issue

could have been arranged without delaying the trial.[2] Plaintiffs' failure to identify *any* information that they would have sought relevant to the factual disputes at trial is further proof that the notebooks' late disclosure was harmless.

The only information Plaintiffs *have* requested are details of privileged conversations regarding Apple's document collection efforts and preparation for Dr. O'Reilly's deposition. After receiving the Court's tentative, Plaintiffs asked Apple to provide details of those conversations, including "what was requested from O'Reilly … and O'Reilly's responses." Ex. C at 1. Plaintiffs acknowledge that this "requires answers to questions that Apple instructed O'Reilly not to answer on grounds of privilege during his deposition." *Id.* When Apple refused to waive privilege, Plaintiffs sought "information that would normally be disclosed on a privilege log." Ex. A at 4. Although oral discussions are not typically included on privilege logs, and the parties agreed in this case not to log any communications that post-date the Complaint, Apple confirmed privileged conversations with Dr. O'Reilly regarding document collection occurred in early 2021 and reiterated the existence and potential relevance of his notebooks was discovered during preparations for his deposition in the summer of 2022. *Id.* at 3-4. Unsatisfied, Plaintiffs have persisted in seeking "to reopen the deposition of O'Reilly to learn this information,"—now claiming Apple somehow waived privilege. Ex. C at 1. Plaintiffs further informed Apple that absent receipt of the privileged information, Plaintiffs will ask the Court to instruct the jury that it "can infer Apple believed the information [in the notebooks] was harmful" and "withheld" them.

Plaintiffs' request for discovery on discovery and attempt to pierce the privilege are improper. They previously "agree[d]" that their "dispute with respect to the O'Reilly

---

[2] The Court should also reject Plaintiffs' excuse that "it is not [their] burden to show that Apple's late production was prejudicial." Ex. A at 4. Apple has never once disputed that it bears the burden of persuasion on harmlessness. But Plaintiffs' failure to identify any specific witnesses to question or any substantive information they lack is plainly relevant to whether they suffer any residual prejudice.

deposition" was "resolve[d]," *see* Dkt. 1223-14 at 2, and they did not leave the deposition open, even though they were aware at the time of Apple's privilege objections, *see, e.g.*, Ex. A at 4. Moreover, the privileged information Plaintiffs seek is irrelevant to any claims or defenses and unnecessary to resolve this dispute. Plaintiffs never suggested they needed further privileged information until after the Court released its tentative ruling. As Plaintiffs implicitly acknowledge, the details of Apple's discussions are irrelevant to any issue other than possibly whether the delayed disclosure was substantially justified. *See* Ex. A at 2. But Apple has given Plaintiffs sufficient non-privileged information to explain the timing of the notebooks' production. *See, e.g.*, Ex. A at 2-4; Dkt. 1223-15. And in any event, the substantial justification issue is moot, since Rule 37 sanctions are unavailable where, as here, late disclosure was harmless. *See, e.g.*, *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).

Plaintiffs' assertion of a privilege waiver also rings hollow. *See* Ex. A. Apple has only disclosed—in response to Plaintiffs' questions (*see, e.g.*, Dkt. 1223-15 at 1-3; Dkt. 1176-10 at 131)—non-privileged information regarding its document collection process, and has **declined** to disclose the content of any privileged communication.

There is similarly no basis for Plaintiffs' requested sanction. As this Court has recognized, an adverse interest instruction is "too sweeping a remedy" for an untimely disclosure. *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2016 WL 9150622, at *3 (C.D. Cal. June 8, 2016) (Selna, J.). Plaintiffs' new request for relief is disproportional, particularly where significant other remedies have already been provided and accepted by Plaintiffs. Plaintiffs' proposed inference also lacks any evidentiary basis: Apple never resisted disclosure of the notebooks, and Plaintiffs have adduced no evidence of bad faith or intentional delay. To the contrary, Apple promptly produced the notebooks once it learned of their existence and potential relevance, and then extended every one of Plaintiffs' relevant deadlines to ensure they could adequately integrate the evidence into their case. *See*, *e.g.*, Dkt. 1223-12 at 3; Dkt. 1223-13 at 2; Dkt. 1223-14 at 2, 7.

|  |  |
|---|---|
|  | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Dated: February 23, 2023 | By: */s/ Mark D. Selwyn* (with permission)<br>Mark D. Selwyn<br>Joshua H. Lerner<br>Amy K. Wigmore<br>Joseph J. Mueller<br>Sarah R. Frazier<br>Nora Q.E. Passamaneck |
|  | Brian A. Rosenthal |
|  | GIBSON, DUNN & CRUTCHER LLP |
|  | Kenneth G. Parker<br>HAYNES AND BOONE, LLP |
|  | Attorneys for Defendant Apple Inc. |
|  | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| Dated: February 23, 2023 | By: */s/ Daniel P. Hughes*<br>Joseph R. Re<br>Stephen C. Jensen<br>Benjamin A. Katzenellenbogen<br>Perry D. Oldham<br>Stephen W. Larson<br>Mark D. Kachner<br>Adam B. Powell<br>Daniel P. Hughes |
|  | Attorneys for Plaintiffs<br>Masimo Corporation and<br>Cercacor Laboratories, Inc. |

## **ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

Dated:  February 23, 2023              By: */s/ Daniel P. Hughes*