Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Baraa Kahf (Bar No. 261144)
Baraa.Kahf@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
Justin J. Gillett (Bar No. 298150)
Justin.Gillett@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

[Counsel appearances continues on next page]

Attorneys for Masimo,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Masimo,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **MASIMO CORPORATION AND**<br>) **CERCACOR LABORATORIES,**<br>) **INC.'S MEMORANDUM OF**<br>) **CONTENTIONS OF FACT AND**<br>) **LAW**<br>)<br>) Pre-Trial Conf.: 3/13/2023<br>) Trial: 3/27/2023<br>)<br>) Hon. James V. Selna<br>) |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

Pursuant to this Court's Order Re Trial Schedule dated March 14, 2022, (Dkt. 627) and Local Rule 16-4, Masimo Corporation and Cercacor Laboratories, Inc. ("Masimo") respectfully submit the following Memorandum of Contentions of Fact and Law for the trial scheduled to commence the week of March 27, 2023.

# I. SUMMARY OF THE CASE

Masimo alleges that Apple hired former Masimo employees and improperly obtained from them Masimo trade secrets that Apple used to develop and market products, as well as seek patents. Masimo alleges that, if Apple had not done so, Apple would have purchased sensor modules from Masimo. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Apple began trying to develop physiological monitoring technology. To fast track its development, Apple identified and targeted physiological monitoring companies. Apple recognized Masimo as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple decided to reach out to Masimo. Adrian Perica (Apple's VP for corporate acquisitions) told Masimo that Apple was considering ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Perica indicated Apple wanted to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The parties met. But, instead of working with Masimo, Apple proceeded to hire Masimo employees. Apple hired Michael O'Reilly (Masimo Corp.'s Chief Medical Officer), Marcelo Lamego (Cercacor's Chief Technical Officer), and ▮▮▮▮▮▮▮▮▮▮▮ other Masimo employees. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ O'Reilly had a practice of recording information in notebooks. During his time at Masimo, O'Reilly's notebooks recorded his work at Masimo, including documenting Masimo trade secrets. After joining Apple, O'Reilly's notebooks recorded his work at Apple. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ His notebooks show that he disclosed and

1  used Masimo trade secret strategies at Apple.  O'Reilly and Apple also used Masimo's
2  trade secrets in connection with developing the Apple Watch, its features, and its
3  applications.

4      Apple also contacted Lamego ███████████████████████████████
5  ███████████████████████████████████████████████████████████
6  ███████████████████████████████████████████████████████████████
7  ███████████████████████████████████████████████████████████
8  ███████████████████████████████████████████████████████████
9  ███████████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████████
13 ███████████████████████████████████████████████████████████
14 ████████████████████  Nevertheless, Apple hired Lamego in January 2014 and assigned
15 him to work on the Apple Watch.  When Masimo found out about Lamego's hiring,
16 Masimo warned Apple about Lamego's knowledge of Masimo's trade secrets.  Exs. 778,
17 1367.

18     Despite these warnings, Apple did nothing to prevent Lamego from disclosing
19 Masimo's trade secrets.  Instead, Apple immediately sought out Masimo's trade secrets.
20 ███████████████████████████████████████████████████████████
21 █████████████████████████████████  Apple acquired, used, and disclosed Masimo's
22 technical trade secrets during development of the Apple Watch.

23     Apple also filed for patent protection on Masimo's technology, naming Lamego
24 as the sole inventor on some patent applications and a co-inventor on others.  Apple
25 disclosed Masimo's trade secrets in some of those applications, constituting additional
26 misappropriation.  Through those patent applications, Apple asserts exclusive rights to
27 Masimo technology that Masimo employees invented.  Those Masimo employees
28 should be added as named inventors and Masimo should be at least part owner of those

patents.

## II.  MASIMO'S CLAIMS AND DEFENSES (L.R. 16-4.1)

Masimo accuses Apple of patent infringement, trade secret misappropriation, and patenting subject matter invented by Masimo employees.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a).

### A.    Summary of Masimo's Claims (L.R. 16-4.1(a))

Claims 1-12:        Apple infringed Masimo's patents.  The Court stayed these patent infringement claims on October 13, 2020.  Dkt. No. 220.

Claim 13:        Apple violated the California Uniform Trade Secret Act, Cal. Civ. Code § 3246 *et seq.* by misappropriating Masimo's trade secrets.

Claims 14 & 20:      One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 10,078,052.

Claims 15 & 21:      One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 10,247,670.

Claims 16 & 22:      One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 9,952,095.

Claims 17 & 23:      One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 10,219,754.

Claims 18 & 24:      One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 9,723,997.

Claims 19 & 25:      One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 10,524,671.

<u>Claims 26 & 28</u>:    One or more Masimo employees should be named as an inventor of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 11,009,390.

<u>Claim 27</u>:    Masimo is at least a joint owner of U.S. Patent Application No. 16/700,710.

**B.**    **<u>Elements Required to Establish Masimo's Claims (L.R. 16-4.1(b))</u>**

      **1.**    **<u>Claim 13:  Apple's Violation of the California Uniform Trade Secret Act</u>**

Masimo will prove the following elements, by a preponderance of the evidence, for each of Trade Secrets ████████████████████████ ████ ("Asserted Trade Secret(s)"):

    a.    Masimo developed or otherwise lawfully possessed the Asserted Trade Secret;

    b.    At the time of misappropriation, the Asserted Trade Secret derived actual or potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and was the subject of efforts that are reasonable under the circumstances to maintain its secrecy;

    c.    Apple improperly acquired, used, or disclosed the Asserted Trade Secret;

    d.    Masimo was harmed, or Apple was unjustly enriched; and

    e.    Apple's acquisition, use, or disclosure was a substantial factor in causing Masimo's harm, or in causing Apple's unjust enrichment.

Cal. Civ. Code § 3426.1.

Masimo may recover damages for the actual loss caused by Apple misappropriating Masimo's trade secrets.  Cal. Civ. Code § 3426.3.  Masimo may also recover for Apple's unjust enrichment from misappropriating Masimo's trade secrets that is not taken into account in computing Masimo's damages for actual loss.  *Id.*  If neither damages nor unjust enrichment is proven, Masimo may recover a reasonable

royalty.  *Id.*  The amount of any royalty would be decided by the Court after trial. Dkt. 1076 at 6.

The amount of damages need not be calculated with precision.  *Meister v. Mensinger*, 230 Cal. App. 4th 381, 396 (2014) (citing *GHK Assoc. v. Mayer Grp. Inc.*, 224 Cal. App. 3d 856, 873-874 (1990)).  "The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Id.*  "[E]very misappropriation of trade secrets case requires a flexible and imaginative approach to calculating damages and [ ] each case is controlled by its own peculiar facts and circumstances."  *Huawei Techs. Co. Ltd. v. Huang*, 2019 WL 2395276, *4 (E.D. Tex. Jun. 6, 2019) (citing *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974)).

A business owner or officer may establish lost profits based on the projected profits to the business.  Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments ("most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert"); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1177 (3d Cir. 1993); *Alpha GRP, Inc. v. Subaru of Am., Inc.*, 2021 WL 2792433, at *1 (C.D. Cal. Apr. 27, 2021).

Awarding unjust enrichment requires returning the value or benefit the defendant received based on the misappropriation.  *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 56 (2005).  Unjust enrichment may be measured by disgorging defendant's improperly obtained profits.  *Id*. at 37; *Foster Poultry Farms, Inc. v . SunTrust Bank*, 377 Fed. Appx. 665, 668-69 (9th Cir. 2010).  These ill-gotten profits may be measured by comparing sales of products connected to defendant's misappropriation with sales that are not connected to the misappropriation.  *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 623 (9th Cir. 1999) (comparing "sales of modified and unmodified" products to determine unjust enrichment).  When accounting for profits on sales attributable to use of a trade secret, "the plaintiff has the burden of establishing the

defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits."  Restatement (Third) of Unfair Competition § 45 cmt. f (1995).

In order to recover punitive damages, Masimo must prove that Apple acted willfully and maliciously.  "Willfully" means that Apple acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith. CACI 4411.  "Maliciously" means that Apple acted with an intent to cause injury, or that Apple's conduct was despicable and was done with a willful and knowing disregard for the rights of others.  *Id.*  "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  *Id.*  If the jury finds that Apple's trade secret misappropriation was willful or malicious, the Court may award exemplary damages in an amount not exceeding twice the award for actual damages, unjust enrichment, or a reasonable royalty.  Cal. Civ. Code § 3426.3.

**2.** **Claims 14-19, and 28:  Masimo employees are inventors of subject matter claimed in U.S. Patent No. 10,078,052; 10,247,670; 9,952,095; 10,219,754; 9,723,997; 10,524,671; and 11,009,390**

To prove that one or more Masimo employees should be named as inventors of the patents, Masimo must prove by clear and convincing evidence that the omitted inventor(s):

1. Contributed to the conception of at least one limitation in at least one claim; and

2. The contribution was not insignificant in quality when measured against the dimension of the full invention.

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009); *Ruling Meng v. Ching-Wu Paul Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016) (citing *Acromed Corp. v. Sofamor Danek Grp.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)).

**3.**   **Claims 20-27:  Masimo is at least a joint owner of U.S. Patent No. 10,078,052; 10,247,670; 9,952,095; 10,219,754; 9,723,997; 10,524,671; and 11,009,390, and U.S. Patent Application No. 16/700,710**

To prove that Masimo has an ownership interest in the patents and patent application, Masimo must prove, by a preponderance of the evidence, that:

1.   At least one inventor assigned to Masimo an interest in the patent or patent application; or

2.   At least one inventor made an inventive contribution to the patent or patent application at a time and under conditions that created an obligation to assign to Masimo any rights in such inventions.

*See* 13B Fed. Proc. Forms § 52:407.50; 2 Chisum on Patents § 2.04[7][c][ii][A].

**C.**   **Summary of Key Evidence Supporting Masimo's Claims (L.R. 16-4.1(c))**

**1.**   **Claim 13:  Trade Secret Misappropriation Under CUTSA**

**a.**   **Masimo's Trade Secrets Were Subject to Reasonable Efforts to Maintain their Secrecy**

Witnesses, for example, Kiani, Diab, Muhsin, Dalke, Poeze, Miller, Hammarth, and O'Reilly will testify about the steps Masimo has taken to keep trade secrets confidential, proprietary, and secret at Masimo and Cercacor.  Miller and Hammarth will explain Masimo and Cercacor policies surrounding employment and confidentiality agreements. Exs. 769, 1674, 1675, 1676, 2262, 2263, 2266, 2388. Muhsin and Hammarth will explain the IT practices to guard trade secrets and confidential information.  Exs. 828, 2217, 2242, 2394, 2402, 2403, 2404, 2405, 2406, 2561, 2563, 2564.  Kiani will explain the business practices, strategies, and procedures to identify confidential information and protect it.  Dalke, Diab and Poeze will explain that they understood and maintained company information as confidential. The witnesses will further explain how Masimo derives independent economic value from maintaining the secrecy of its trade secrets. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ███████████████████████████████ Ex. 485.  In addition to these witnesses,

2  Dr. Madisetti and Dr. Palmatier will further explain their opinions that the steps Masimo

3  takes to maintain secrecy are reasonable.

4      Masimo will also demonstrate, through Masimo's confidential and employment-

5  related disclosures to Lamego and O'Reilly, that Masimo exposed its trade secrets to

6  them.  The witnesses, for example, Diab, will explain that Lamego had virtually

7  unfettered access to all resources at Masimo while at both Masimo and Cercacor.

8  Exs. 2557, 2560, 2565.  Kiani and Diab will also testify that Masimo exposed Lamego

9  to product development plans and analyses of the market for products.

10      **b.    Trade Secret** ████

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ███████████████████

18      **i.    Masimo Possesses Trade Secret** ████

19      Masimo witnesses, for example Diab and Kiani, will explain Masimo's

20  development of Trade Secret LP-4. Ex. 172. Diab will explain his laboratory notebooks

21  and ███████████████ Ex. 881.  Diab and Kiani will testify about recognizing

22  ████████████████████████████████████████████

23  █████████████████████████████████████ Diab

24  will explain ███████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████. 935, 936, 937, 943.  Diab

27  will explain his years of work on developing procedures, features, and techniques ██

28  ██████████████████████████ Exs. 938, 939, 940, 941.  Diab, Kiani,

-8-

and other Masimo witnesses will also explain Lamego's involvement in that research and development.  Exs. 173, 881-905, 910, 942, 943.

Diab will also explain how Masimo used █████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████ Exs. 940, 941, 1016, 1028, 1040.  Diab will explain Lamego's involvement in the development and use of this trade secret at Masimo.  Dr. Madisetti will explain his analysis of the evidence confirming that Masimo developed and uses Trade Secret ███

**ii.    Apple Improperly Acquired and Used Trade Secret ███**

Madisetti will explain how Apple misappropriated Trade Secret ███ based on his analysis of ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████

**iii.    Trade Secret ███ Derives Independent Economic Value From Not Being Generally Known**

Kiani and Diab will explain the value that Masimo and Cercacor obtained because

of ▇ not being generally known.  Kiani and Diab will explain that Masimo realized the importance of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Kiani and Diab will explain that Masimo invested significant resources, both in dollars and research time, to develop its technologies in this area.  They will also explain the extensive exposure of Lamego to what Masimo had learned and invested in ▇▇▇▇▇▇▇▇▇▇▇.

Dr. Madisetti will explain his opinion that Masimo's decades of research and development ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ Madisetti will also explain his analysis of publications and other documents, particularly those identified by Apple during this litigation.  Madisetti will explain that those publications or other documents fail to show that ▇ was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from their disclosure or use.

**c.    Trade Secret ▇**

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**i.    Masimo Possesses Trade Secret ▇**

David Dalke and Diab will explain Masimo's development of ▇ Exs. 827; 1644.  Dalke and Diab will explain the discovery of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* Dalke and Diab will explain Masimo's investigation ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ *Id.* Dalke will explain how ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Exs. 827, 702, 703, 1927, 1082, 1929.  Diab will explain

his emails and communications with Marcelo Lamego explaining the problem and solutions discovered by Dalke.  Exs. 1082, 704.  Dalke, Muhsin, and Diab will explain that Masimo continues to use and rely upon ███████████████████████ ████████████████████████████████████████████████████ Exs. 1085-1093.  Dr. Madisetti will explain his analysis of the evidence confirming that Masimo developed and uses Trade Secret ███

        **ii.**      **<u>Apple Improperly Acquired, Disclosed and Used Trade Secret ███</u>**

    Dr. Madisetti will explain how Apple misappropriated Trade Secret ███ based on his analysis of Apple testimony and documents ████████████████████ 

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████

3        **iii.**    **<u>Trade Secret</u>** ████ **<u>Derives Independent Economic Value</u>**

4        **<u>From Not Being Generally Known</u>**

5        Kiani, Diab and Dalke will explain the value that Masimo and Cercacor obtained

6 because of ████ not being generally known. Kiani and Diab will explain that Masimo

7 invested ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 ██████████████████████████████ Kiani and Diab will explain that Masimo

10 invested significant resources, both in dollars and research time, to develop its

11 technologies in this area. Madisetti will explain his opinion that Masimo's decades of

12 research and development ████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████ Madisetti also will explain his analysis of

15 publications and other documents, particularly those identified by Apple during this

16 litigation. Madisetti will explain that those publications or other documents fail to show

17 that ████ was generally known at the time of Apple's misappropriation to the public or

18 to other persons who can obtain economic value from their disclosure or use.

19        **d.**    **<u>Trade Secret</u>** ████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████

26        **i.**    **<u>Masimo Possesses Trade Secret</u>** ████

27        The key evidence summarized above for Trade Secrets ██████████████

28 ████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ████████████████

4 ██ **Apple Improperly Acquired and Used Trade Secret**

5 ████

6     In addition to the key evidence summarized above for ██████ Madisetti

7 will explain how Apple misappropriated Trade Secret ████████████

8 ███████████████████████████████████████████

9 ███████████████████████████████████████████

10 ███████████████████████████████████████████

11 ███████████████████████████████████████████

12 ███████████████████████████████████████████

13 ███████████████████████████████████████████

14 ███████████████████████████████████████████

15 ███████████████████████████████████████████

16 ███████████████████████████████████████████

17 ████████████

18     iii.   **Trade Secret** ████ **Derives Independent Economic**

19 **Value From Not Being Generally Known**

20     The key evidence summarized above for Trade Secrets ██████████

21 ███████████████████████████████████████████

22 ███████████████████████████████████████████

23 ████████████████████████████████

24     Masimo's decades of research and development on ██████████

25 ███████████████████████████████████████████

26 ███████████████████████████████████████████

27 █████  Masimo's decades of research and development on ██████████

28 ███████████████████████████████████████████





e.  **Trade Secret** █

i.  **Masimo Possesses Trade Secret** █

Diab, Jeroen Poeze, Dalke, and Madisetti will explain Masimo's development of

████████████████████████  Diab will explain his notebooks ████████████

████████████████  Ex. 798, P-0145.  Diab and Kiani will explain the

██████████████████████████████  Exs. 800, 806.

Diab will explain his work with Lamego in the early 2000s ██████████████

Ex. 796.  Dalke will explain the development of ██████████████████████

█████████████████████  Exs. 811, 827, 1951.  Diab will explain the

development of ████████████████████  Exs. 812, 878.  The witnesses will explain the development of ████████

████████████████████████  Exs. 827, 1951.

Diab and Kiani will explain Lamego's exposure to ██████████████

████████████████████  Exs. 828, 829.

Poeze will explain his work with Lamego at Cercacor on ████████

████████  Exs. 831, 832, 833, 1728.  Poeze will explain his notebooks and

development documents regarding the ████████████  Ex. 832.  Documents,

-14-

1   such as █████████████████████████████████████

2   ████████████████████████ Exs. 831, 832, 833, 1728.  Poeze will

3   explain that these developments ended up ██████████████████ Masimo

4   emails and documents confirm that Lamego's involvement in ██████████

5   ████████████████████████ Exs. 833, 836, 1728, 784, 1913, 2890.

6   Masimo also filed for and obtained a patent, listing Lamego as an inventor, describing

7   performance benefits from computing coefficients as part of system calibration,

8   initialization procedures, and/or at regular intervals.  Ex. 765.  Madisetti will explain

9   that, based on his review of the evidence, Masimo developed and possessed ████

10              ii.   **Apple Improperly Acquired, Disclosed, and Used Trade**

11                    **Secret** ████

12          Madisetti will explain how Apple misappropriated Trade Secret ████. Masimo will

13   also present supporting evidence through Apple testimony and documents such ████

14   █████████████████████████████████████████

15   █████████████████████████████████████████

16   █████████████████████████████████████████

17   █████████████████████████████████████████

18   █████████████████████████████████████████

19   █████████████████████████████████████████

20   █████████████████████████████████████████

21   █████████████████████████████████████████

22   █████████████████████████████████████████

23   █████████████████████████████████████████

24   ██████

25          Apple then filed a patent application that issued as U.S. Patent No. 10,219,754,

26   naming Lamego as the sole inventor.  Exs. 754, 795, 862, 1262. ████████████

27   █████████████████████████████████████████

28   █████████████████████████████████████████

1 █████████████████████████████████████████████████

2 █████████████████████████████████████████████████

3 █████████████████████████████████████████████████

4 █████████████████████████████████████████████████

5 ████████████████████

      **iii.**    **Trade Secret ██ Derives Independent Economic Value From Not Being Generally Known**

Kiani and Diab will explain the value that Masimo and Cercacor obtained because of ██ not being generally known.  Kiani and Diab will explain that Masimo invested in research and development on ████████████████████████████████████████████████████████████████████████.  Kiani and Diab will explain that Masimo invested significant resources, both in dollars and research time, to develop its technologies in this area.

Madisetti will explain his opinion that Masimo's decades of research and development ████████████████████████████████████████████████████████████████████ ██████████████████  Madisetti also will explain his analysis of publications and other documents, particularly those identified by Apple during this litigation.  Madisetti will explain that those publications or other documents fail to show that ██ was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from their disclosure or use.

      **f.**    **Trade Secret ██**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

      **i.**    **Masimo Possesses Trade Secret ██**

Diab, Poeze, and Madisetti will explain Cercacor's development of ████████████ ████████████████████████████████████████████████████████████

█████████████████████████████████████████

████████████ Poeze will explain the development of the █████ at Cercacor and his

work with Lamego on that project.  Exs. 831, 832, 833, 1728.  Poeze will explain his

notebooks and development documents ████████████████████████████████

█████ Ex. 832.  Poeze will also explain that Lamego explained ████████████

█████████████████████████████████████ Poeze's

notebook ██████████████████████████████████████

█████████████████████████████████████████

████████████████████ Ex. 832.  The notebook shows ███████████████

█████████████████ Diab will explain the advantages of ███████████████

█████████████████████████████████████████

███████ Poeze will also explain the █████████████████████████

████████████████████████████████ Madisetti

will explain that, based on his review of the evidence, Masimo developed and possessed

███

        ii.    **Apple Improperly Acquired, Disclosed and Used Trade Secret** ████

      Madisetti will explain how Apple misappropriated Trade Secret ████ Masimo

will present supporting evidence through Apple testimony and documents such █████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████

Apple filed a patent application that issued as U.S. Patent No. 10,219,754, naming Lamego as the sole inventor.  Exs. 754, 795, 862, 1262.  Madisetti will explain ████████.  ████████████████ Madisetti will also explain ████████████████████ ████████████████████████████████ Additional Apple evidence and testimony ████████████████████████████ ████████████████████████████████. Exs. 153, 189, 238, 239, 412, 413, 415, 875.

### iii. <u>Trade Secret ██ Derives Independent Economic Value From Not Being Generally Known</u>

Kiani and Diab will explain the value that Masimo and Cercacor obtained because of ██ not being generally known.  Kiani, Diab and Poeze will explain that Masimo invested in research and development on ████████████████████ ████████████████████████████████████████ ████████  Kiani, Diab and Poeze will explain that Masimo invested significant resources, both in dollars and research time, to develop its technologies in this area.

Madisetti will explain his opinion that Masimo's decades of research and development on ████████████████████████████████ ████████████████████████████████████████ ████████████  Madisetti also will explain his analysis of publications and other documents, particularly those identified by Apple during this litigation.  Madisetti will explain that those publications or other documents fail to show that ██ was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from their disclosure or use.  Madisetti will also explain that none of the evidence suggests that Apple gained knowledge of ██ from any of the identified publications or documents.

g.    **Trade Secret** 



i. **Masimo Possesses Trade Secret** ▮

Diab, Poeze, and Madisetti will explain Cercacor's development of ▮▮▮
▮▮▮ Poeze will explain the development of this ▮▮▮ at Cercacor and his work with Lamego on that project. Exs. 831, 832, 833, 1728. Poeze will explain his notebooks and development documents regarding these ▮▮▮. Ex. 832.   Poeze  will  explain  that  the ▮▮▮
▮▮▮ Ex. 831.  Poeze  will  also explain  that  the ▮▮▮
▮▮▮ Ex. P-0116. ▮▮▮
▮▮▮ *Id.*

Poeze will explain that his notebook (Ex. 832) and the ▮▮▮
▮▮▮
▮▮▮
▮▮▮
▮▮▮

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ███████████████████████████ Poeze and Madisetti will explain that the

5 ██████████████████████████████

6 Poeze and Madisetti will explain that Poeze's notebook and the ████████

7 ████████████████████████████████████████████

8 █████████████████ Ex. 832.  Specifically, the notebook and ██████████

9 ████████████████████████████████████████████

10 ████████████ Ex. 832.  The notebook and source code also ████████

11 ████████████ Ex. 832.  The notebook and ████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████ Ex. 832.

14 ████████████████████████████████████████████

15 ██████████████████████████████████ Madisetti will

16 explain that, based on his review of the evidence, Masimo developed and possessed

17 ████

18    ii.    **Apple Improperly Acquired, Disclosed and Used Trade**

19         **Secret** ████

20 Madisetti will explain that the '754 Patent disclosed Trade Secret ███ Ex. 1262.

21 ████████████████████████████████████████████

22 ██████████████████████████ Additional Apple evidence and

23 testimony from ██████████████████████████████████

24 ███████████████████████ Exs. 153, 189, 238, 239, 412, 413, 415, 875.

25 ████████████████████████████████████████████

26 ██████████████████████████

27

28

-21-

      iii.    **Trade Secret** █████ **Derives Independent Economic Value From Not Being Generally Known**

Kiani and Diab will explain the value that Masimo and Cercacor obtained because of ████ not being generally known.  Kiani and Diab will explain that Masimo invested in research and development on ████████████████████████ ████████████████████████████████████████████████ Kiani and Diab will explain that Masimo invested significant resources, both in dollars and research time, to develop its technologies in this area.  Madisetti will explain his opinion that Masimo's decades of research and development ████████████████ ████████████████████████████████████████████████ ████████████████████████ Madisetti also will explain his analysis of publications and other documents, particularly those identified by Apple during this litigation.  Madisetti will explain that those publications or other documents fail to show that ████ was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from their disclosure or use.

      h.    **Trade Secret** ████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

      i.    **Masimo Possesses Trade Secret** ████

The key evidence summarized above for Trade Secrets ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████

3         **ii.**    **Apple Improperly Acquired and Used Trade Secret** ████

4       In addition to the key evidence summarized above for ██████████

5 Madisetti will explain how Apple misappropriated Trade Secret ███████████

6 ████████████████████████████████████████████ The

7 key evidence summarized above shows Lamego's deep involvement in the confidential

8 research and development efforts directed ████████ at both Masimo and

9 Cercacor. ██████████████████████████████████

10         **iii.**    **Trade Secret** ███ **Derives Independent Economic Value**

11                **From Not Being Generally Known**

12       The key evidence summarized above for Trade Secrets ███████████ will

13 show that Masimo recognized ███████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████ Diab and Kiani will explain that Masimo ██████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 Masimo's decades of research and development on ██████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ███████████████████████

27         **i.**    **Trade Secret** ███

28 ████████████████████████████████████████████



i.   **Masimo Possesses Trade Secret** ▮

Masimo witnesses, including Joe Kiani, will explain the development and use of Trade Secret ▮ at Masimo.  Kiani will explain that Masimo started to develop the trade secret in about 1989.  Exs. 781, 1506.  Masimo witnesses, including Kiani, will explain how Kiani instructed Masimo to consider ▮

▮ Ex. 1503, 1504.  Kiani will also explain that ▮

▮ Exs. 483, 484, 485, 486, 487.  Dr. Robert Palmatier will explain that, based on his review of the evidence, Masimo developed and possessed ▮

-24-

ii.     **Apple Improperly Acquired and Used Trade Secret** █

Palmatier will explain how Apple misappropriated Trade Secret █

### iii.   <u>Trade Secret ▮ Derives Independent Economic Value From Not Being Generally Known</u>

Kiani will explain the value that Masimo obtained because of the secrecy of ▮ Kiani will explain that the trade secret provides great value to Masimo ▮ ▮ Kiani will also explain that the secrecy of this strategy and knowledge of the value of this particular approach provides Masimo a competitive edge.  Kiani will further explain that, due to Masimo's position as industry leader, knowledge that Masimo in particular is pursuing this strategy provides substantial value.  Kiani will also testify that Masimo spent substantial time and resources developing its business & marketing trade secrets and exposed O'Reilly to them, including extensive brainstorming about these strategies that differed from the approach of others. ▮ ▮ Ex. 485.

Dr. Palmatier will explain that Apple recognizes the value of confidential business strategies.  Ex. 375.  Dr. Palmatier will explain his opinion that is unlikely the trade secret would be recreated by another company, especially a company like Apple that does not have Masimo's extensive relevant experience.  Dr. Palmatier will explain his opinion that, when O'Reilly began work at Apple, ▮ ▮ ▮ Exs. 316, 499, 1508, 1510, 1511, 1512.  Dr. Palmatier will also explain his analysis of products, publications and other documents, particularly those Apple identified during this litigation.  Dr. Palmatier will explain that those products, publications or other documents, and Apple's experts' testimony, fail to show that the trade secret was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from their disclosure or use.

-26-

**j.    Trade Secret** 

**i.    Masimo Possesses Trade Secret** █

In addition to the key evidence summarized above for █, Masimo witnesses, including Joe Kiani, will explain the development and use of Trade Secret █ at Masimo.   Kiani will explain that Masimo developed and used the trade secret in connection with ████████. Exs. 1574, 1575, 1576, 1577. Kiani will also explain that O'Reilly was involved with and exposed to Masimo's business and marketing plans. ████████ will support O'Reilly's exposure and connection to the trade secret strategy. Exs. 483, 484, 485, 486, 487, 528, 529.  Dr. Robert Palmatier will explain that, based on his review of the evidence, Masimo developed and possessed █.

**ii.    Apple Improperly Acquired and Used Trade Secret** █

In addition to the key evidence summarized above for █, Palmatier will explain how Apple misappropriated Trade Secret █ based on his analysis of testimony and documents

-27-

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

### iii.   **Trade Secret** ██ **Derives Independent Economic Value From Not Being Generally Known**

In addition to the key evidence summarized above for ██, Kiani will explain the value that Masimo obtained because of ██ not being generally known.  Kiani will explain that the trade secret provides value to Masimo in █████████████ ████████████████████████████████  Kiani will also explain that the secrecy of this strategy and knowledge of the value of this particular approach provides Masimo a competitive edge.  Kiani will further explain that, due to Masimo's position as industry leader, knowledge that Masimo in particular is pursuing this strategy provides substantial value.  Dr. Palmatier will explain his opinion that it is unlikely the trade secret would be recreated by another company, especially a company like Apple that does not have Masimo's extensive relevant experience.  Dr. Palmatier will explain his opinion that, ██████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████  Exs. 316, 499, 1508, 1510, 1511, 1512. Dr. Palmatier will also explain his analysis of products, publications and other documents, particularly those Apple identified during this litigation.  Dr. Palmatier will explain that those products, publications or other documents, and Apple's experts' testimony, fail to show that the trade secret was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from

-28-

their disclosure or use.

  **k.**  **Trade Secret** 

  **i.**  **Masimo Possesses Trade Secret** █

In addition to the key evidence summarized above for █, Masimo witnesses, including Joe Kiani, will explain the development and use of Trade Secret █ at Masimo.  Kiani will explain that Masimo developed and used the trade secret in connection with its █.  Exs. 1586, 1587, 1818.  Kiani will also explain that O'Reilly was involved with and exposed to Masimo's business and marketing plans.  █ Exs. 483, 484, 485, 486, 487.  Dr. Robert Palmatier will explain that, based on his review of the evidence, Masimo developed and possessed █.

  **ii.**  **Apple Improperly Acquired and Used Trade Secret** █

In addition to the key evidence summarized above for █, Palmatier will explain how Apple misappropriated Trade Secret █ based on his analysis of █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

### iii.   <u>Trade Secret ██ Derives Independent Economic Value From Not Being Generally Known</u>

In addition to the key evidence summarized above for ██, Kiani will explain the value that Masimo obtained because of ██ not being generally known.  Kiani will explain that the trade secret provides value to Masimo in directing and informing Masimo's business and marketing efforts.  Kiani will also explain that the secrecy of this strategy and knowledge of the value of this particular approach provides Masimo a competitive edge.  Kiani will further explain that, due to Masimo's position as industry leader, knowledge that Masimo in particular is pursuing this strategy provides substantial value.  Dr. Palmatier will explain his opinion that it is unlikely the trade secret would be recreated by another company, especially a company like Apple that does not have Masimo's extensive relevant experience.  Dr. Palmatier will explain his opinion that, when O'Reilly began work at Apple, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Exs. 316, 499, 1508, 1510, 1511, 1512.  Dr. Palmatier will also explain his analysis of products, publications and other documents, particularly those Apple identified during this litigation.  Dr. Palmatier will explain that those products, publications or other documents, and Apple's experts' testimony, fail to show that the trade secret was generally known at the time of Apple's misappropriation to the public or to other persons who can obtain economic value from their disclosure or use.

### l.   <u>Trade Secret ██</u>

████████████████████████████████████████████████████████

████████████████████████████████



i.      **Masimo Possesses Trade Secret** ▮

The key evidence summarized above for Trade Secrets ▮ and ▮ will show that Masimo possessed the knowledge that Masimo was pursuing ▮ and ▮ above as their business and marketing plans and strategies pursuant to Trade Secret ▮. Dr. Robert Palmatier will explain that, based on his review of the evidence, Masimo developed and possessed ▮

ii.     **Apple Improperly Acquired and Used Trade Secret** ▮

In addition to the key evidence summarized above for ▮ and ▮, Palmatier will explain how Apple misappropriated Trade Secret ▮ based on his analysis of testimony and documents ▮

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████

5     **iii.**    **Trade Secret** ██ **Derives Independent Economic Value**

6           **From Not Being Generally Known**

7       In addition to the key evidence summarized above for ████████████, Kiani

8 will explain the value that Masimo obtained because of ██ not being generally known.

9 Kiani will explain that this trade secret provides Masimo a competitive edge because it

10 is not generally known.  Kiani will further explain that, due to Masimo's position as

11 industry leader, knowledge that Masimo in particular is pursuing this strategy provides

12 substantial value.  Dr. Palmatier will explain his opinion that, when O'Reilly began work

13 at Apple, ████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████  Dr. Palmatier will also explain his analysis of

17 products, publications and other documents, particularly those Apple identified during

18 this litigation.  Dr. Palmatier will explain that those products, publications or other

19 documents, and Apple's experts' testimony, fail to show that the trade secret was

20 generally known at the time of Apple's misappropriation to the public or to other persons

21 who can obtain economic value from their disclosure or use.

22     **m.**    **Trade Secret** ██

23 ████████████████████████████████████████████

24 ████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████

27 ████████████████████████████████████████████

28 ████████████████████████

i.   **Masimo Possesses Trade Secret** █

The key evidence summarized above for Trade Secrets █ and █ will show that Masimo possessed ██████████ ██████████ ██████████ ██████ Dr. Palmatier will explain that, based on his review of the evidence, Masimo developed and possessed █

ii.   **Apple Improperly Acquired and Used Trade Secret** █

In addition to the key evidence summarized above for █ and █ Palmatier will explain how Apple misappropriated Trade Secret █ based on his analysis of testimony and documents ██████. Dr. Palmatier will testify that there are a great many potential business strategies that a firm could potentially adopt, and that identifying the most appropriate strategies to pursue can have tremendous value. Dr. Palmatier will testify that ██ ██████████ ██████████ ██████████ █

Documents and testimony will show that Apple became aware of ██ ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ██████████



   **iii.**    **<u>Trade Secret</u>** ▮ **<u>Derives Independent Economic Value</u>**

                      **<u>From Not Being Generally Known</u>**

In addition to the key evidence summarized above for ▮▮ and ▮, Kiani will explain the value that Masimo obtained because of ▮ not being generally known. Kiani will explain that this trade secret provides Masimo a competitive edge because it is not generally known.  Dr. Palmatier will explain his opinion that, when O'Reilly began work at Apple, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Palmatier will also explain his analysis of products, publications and other documents, particularly those Apple identified during this litigation.   Dr. Palmatier will explain that those products, publications or other documents, and Apple's experts' testimony, fail to show that the trade secret was generally known at the time of Apple's misappropriation to the public

or to other persons who can obtain economic value from their disclosure or use.

**n.**   **Apple Acquired Masimo's Trade Secrets Through Improper Means And Knew or Should Have Known That Lamego and O'Reilly Improperly Provided Masimo's Trade Secrets**

Masimo witnesses, including Kiani, will testify and provide documentary evidence of informing Apple about the confidentiality obligations of Masimo and Cercacor employees.  Apple's witnesses, including O'Reilly and Perica, will testify regarding whether Apple knew or had reason to know Lamego and O'Reilly were improperly providing Masimo's trade secrets to Apple.

Apple's witnesses, including Hotelling, will testify ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Apple's acts regarding Masimo are consistent with Apple's history of efficient infringement and Steve Jobs' statements "good artists copy; great artists steal – and we have always been shameless about stealing great ideas" and "it's better to be a pirate than join the navy."  Exs. 2814-2816.

███████████████████████████████████████████████████████████████████████████████████████████████████████████ Perica and Kiani will also testify that Apple met with Masimo in May 2013. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

O'Reilly will testify that he was employed by Masimo from 2007 to 2013 as Executive Vice President for Medical Affairs and Chief Medical Officer. *See* Ex. 1597.

 Lamego offered to help solve Apple's patient monitoring problems in exchange for a senior executive position at Apple. *Id*. Lamego also informed Cook of his high-level position at Cercacor and his access to Cercacor confidential information. *Id*.

Ex. 566 at -007; Ex. 263 at -760

Kiani will testify regarding correspondence warning Apple about Lamego's knowledge of Masimo's trade secrets. Ex. 778. Despite the warnings, Apple ultimately hired Lamego to work with the

Ex. 1786 at 27.

Immediately after Lamego started at Apple,

Masimo's experts will explain how Apple misappropriated Masimo's trade secrets based on the evidence summarized above for each of the Asserted Trade Secrets.

Lamego used Masimo's trade secrets in the course of his employment and disclosed those trade secrets to Apple in technical discussions, business discussions, documents, and invention disclosures. Thus, Apple is also liable under the doctrine of

1  respondeat superior. *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010

2  WL 2764714, at \*3 (N.D. Cal. July 13, 2010).

3  **o.    Masimo Was Harmed and Apple Was Unjustly Enriched by**

4  **Apple's Misappropriation**

5  Kiani will testify to ██████████████████████████████

6  ████████████████████████████████████████████████████████

7  ██████████████████████████████████████ Kiani will testify

8  that Masimo became the industry leader in the pulse oximetry industry through its

9  revolutionary technology, but that also required more than a decade of hard-fought

10 intellectual property litigation against incumbent pulse oximetry companies that chose

11 to infringe Masimo's patents.   Kiani will testify that after patent litigation against

12 *Nellcor*, nearly the entire pulse oximetry industry included Masimo's gold-standard

13 technology noninvasive monitoring technology in their monitor products by obtaining

14 components that provide Masimo technology directly from Masimo on an OEM basis.

15 Kiani will further testify that Masimo's successful patent litigation against Philips and

16 Mindray helped confirm Masimo as the technology leader for light-based physiological

17 measurements.

18 Apple's witnesses, including ██████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████ Masimo witnesses, including Kiani will explain that in

22 2013, Apple contacted Masimo to explore using Masimo's technology in Apple's

23 products. ████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████



Kiani will explain that in June 2013, after Masimo and Apple had met and while the parties were planning a follow-up meeting, Apple hired Masimo's Chief Medical Officer, Dr. Michael O'Reilly.

In October 2013, Cercacor's Chief Technical Officer, Marcelo Lamego emailed Tim Cook.  Lamego referenced his 10 years of experience at Masimo and Cercacor and offered to solve Apple's problems in exchange for a senior technical position.  Ex. 1719.

But, rather than collaborate, and                    Apple promptly hired Lamego.  After Lamego and O'Reilly began disclosing Masimo's trade secrets to Apple, Apple abandoned the business relationship with Masimo, and decided to not

Kiani will testify that

Kiani will testify that Apple

Masimo witnesses, including Kiani, Muhsin, Al-Ali, and Scruggs will testify

-39-

that Masimo later decided to ██████████████████████ They will further

testify Masimo ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

They will also testify to development and manufacturing process planning for the ████

████ and the Masimo W1 Watch.

Kiani and Muhsin will testify that ████████████████████████

████████████████████████████████████████████████████████

████████ Kiani and Muhsin will testify to ████████████████████

████████████████████████████████████████████████████████

████████████████ Kiani, Muhsin, and Scruggs will testify that no technological

barrier prevented Masimo from designing ████████████████████████

████████ They will further testify that ████████████████████████

████████████████████████████ Kiani, Muhsin and Scruggs

will also testify to the technical capabilities and accuracy of the ██████████████

Kiani will testify to pricing and Masimo's standard margins.  Apple's documents show

the quantities of Apple Watch sales.  Ex. 278.  Kiani will testify that, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

Jeff Kinrich will testify to Apple's unjust enrichment based on trade secret

misappropriation.  Madisetti and Palmatier will testify, as described above, that Apple

used Masimo's technical trade secrets in ██████████████████████

████████████████████████████████████████████████████████

████████████████████ Kinrich will testify to Apple's profit associated with

the ████████████████████████████ in the context of unjust

enrichment.

**p.** **Apple's conduct was willful and malicious**

The evidence discussed above in the above sections also support a finding that Apple's misappropriation was willful and malicious.

**2.** **Claim 14 & 20:  Masimo employees are inventors of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 10,078,052**

Masimo's witnesses, for example, Diab, Kiani, and Poeze, will explain the development of sensors.  Diab will explain his laboratory notebook entries related to sensors, reflectors, and reflective surfaces.  Exs. 1227, 1214, and 1910.  Diab will also describe the design of the TF-I sensor, including its sensors and reflective surfaces. Exs. P-005, 777, 1222, 1223, 1225, and 1226.  Diab will also describe features disclosed in U.S. Patent Application No. 2006/0211924.  Ex. 1206.  Poeze will describe features disclosed in U.S. Patent Publication No. 2010/0030040 and U.S. Patent Application No. 2011/0082711.  Exs. 1207, 1205.  Apple's witnesses, including Ness and Han, will testify that none of the named Inventors other than Lamego contributed the idea of incorporating a reflective surface.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent.

Madisetti will explain his analysis of the evidence confirming that one or more Masimo employees should be named as an inventor and Masimo is at least a joint owner of U.S. Patent No. 10,078,052.  Ex. 1239.

**3.** **Claim 15 & 21:  Masimo employees are inventors of subject matter claimed in, and Masimo is a joint owner of, U.S. Patent No. 10,247,670**

Masimo's witnesses, for example, Diab, Kiani, and Poeze, will explain the development of sensors. ████████████████████████████████████

1    ████████  Exs. 1214, and 1910.  Diab will also describe the design of the TF-I sensor.

2    Exs. P-005, 777, 1222, 1223, 1225, and 1226.  Diab will also describe features disclosed

3    in U.S. Patent Application No. 2006/0211924.  Ex. 1206.  Poeze will describe features

4    disclosed in U.S. Patent Publication No. 2010/0030040 and U.S. Patent Application

5    No. 2011/0082711.  Exs. 1207, 1205.  Lamego will confirm that he received an email

6    from █████████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████████

8    ███████████████████████████████████████  Exs. 700, 701. Apple's witnesses,

9    including Ness and Han, will testify that none of the named Inventors other than Lamego

10   contributed the idea of incorporating a reflective surface.

11        Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo

12   employees, including Lamego, assigned to Masimo any interest in the patent or made an

13   inventive contribution at a time and under conditions that created an obligation to assign

14   to Masimo any rights in the patent.

15        Madisetti will explain his analysis of the evidence confirming that one or more

16   Masimo employees should be named as an inventor and Masimo is at least a joint owner

17   of U.S. Patent No. 10,247,670.  Ex. 1241.

18        **4.      Claim 16 & 22:  Masimo employees are inventors of subject matter**

19        **claimed in, and Masimo is at least a joint owner of, U.S. Patent**

20        **No. 9,952,095**

21        Masimo's witnesses, for example, Diab and Poeze, will explain the development

22   of the sensor technology with filters and analog-to-digital converters.  Diab will describe

23   the design of the TF-I sensor.  Exs. P-005, 777, 1222, 1223, 1225, and 1226.  Diab will

24   also describe the features disclosed in U.S. Patent No. 5,632,272 and U.S. Patent

25   Publication No. 2006/0211924 and his 1992 Notebook.  Exs. P-0139, 1206, 1214, 1267.

26   Third-party witness, Lamego, will confirm that he received an email ██████████

27   ███████████████████████████████████████████████████████████████

28   ██████████████████████████████████  Exs. 700, 701.  Poeze will describe

features disclosed in U.S. Patent Publication No. 2010/0030040 and U.S. Patent Application No. 2011/0082711.  Exs. 1207, 1205.  Apple's witness, Hotelling, will testify that he does not know what he contributed to this patent.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent.

Madisetti will explain his analysis of the evidence confirming that one or more Masimo employees should be named as an inventor and Masimo is at least a joint owner of U.S. Patent No. 9,952,095.  Ex. 1268.

**5.** **Claim 17 & 23:  Masimo employees are inventors of subject matter claimed in, and Masimo is at least a joint owner of, U.S. Patent No. 10,219,754**

Masimo's witnesses, for example Diab and Poeze, will explain the development of the sensor technology ████████████████████████████████████████ ████████████████████████████████ Diab will describe the design of the TF-I sensor.  Exs.  P-005, 777, 1222, 1223, 1225, and 1226.  Diab will also describe the features disclosed in U.S. Patent No. 5,632,272 and U.S. Patent Publication No. 2006/0211924 and his 1992 Notebook.  Exs. P-0139, 1206, 1214, 1267.  In addition, Poeze will describe features disclosed in his lab notebooks and U.S. Patent Publication No. 2010/0030040 and Diab will describe features disclosed in U.S. Patent No. 9,861,305.  Exs. 1207, 765.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent.

Madisetti will explain his analysis of the evidence confirming that Masimo employees should be named as an inventor and Masimo is at least a joint owner of U.S.

Patent No. 10,219,754.  Ex. 1262.

**6.    Claims 18 & 24:   Masimo employees are inventors of subject matter
claimed in, and Masimo is at least a joint owner of, U.S. Patent No.
9,723,997.**

Masimo's witnesses, for example, Diab and Poeze, will explain the development
of wearable devices.  Diab will explain his laboratory notebooks entries related to
sensors.  Exs. 1214.  Diab will also describe the design of the TF-I sensor.  Exs.  P-005,
777, 1222, 1223, 1225, and 1226.  Diab will also describe features disclosed in U.S.
Patent Application No. 2006/0211924. Ex. 1206.  Poeze will describe features disclosed
in  U.S.  Patent  Publication  No.  2010/0030040  and  U.S.  Patent  Application
No. 2011/0082711.  Exs. 1207, 1205.  Third-party witness, ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████  Ex. 700, 701.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo
employees, including Lamego, assigned to Masimo any interest in the patent or made an
inventive contribution at a time and under conditions that created an obligation to assign
to Masimo any rights in the patent.

Madisetti will explain his analysis of the confirming that Masimo employees
should be named as an inventor and Masimo is at least a joint owner of U.S. Patent
No. 9,723,997. Ex. 1218.

**7.    Claim 19 & 25:  Masimo employees are inventors of subject matter
claimed in, and Masimo is at least a joint owner of, U.S. Patent
No. 10,524,671**

Masimo's witnesses, for example, Diab and Poeze, will explain the development
of wearable devices.  Diab will explain his laboratory notebooks entries related to
sensors.  Exs. 1214.  Diab will also describe the design of the TF-I sensor.  Exs.  P-005,
777, 1222, 1223, 1225, and 1226.  Diab will also describe features disclosed in U.S.

Patent Application No. 2006/0211924. Ex. 1206. Poeze will describe features disclosed in U.S. Patent Publication No. 2010/0030040 and U.S. Patent Application No. 2011/0082711. Exs. 1207, 1205. Third-party witness, Lamego, will confirm that he received an email ███████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ Exs. 700, 701.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent.

Madisetti will explain his analysis of the evidence confirming that Masimo employees should be named as an inventor and Masimo is at least a joint owner of U.S. Patent No. 10,524,671. Ex. 1217.

**8.      Claim 26 & 28:  Masimo employees are inventors of subject matter claimed in, and Masimo is at least a joint owner of U.S. Patent No. 11,009,390**

Masimo's witnesses, for example, Diab and Poeze, will explain the development of the sensor technology with filters and analog-to-digital converters. Diab will describe the design of the TF-I sensor. Exs. P-005, 777, 1222, 1223, 1225, and 1226. Diab will also describe the technology disclosed in U.S. Patent No. 5,632,272 and U.S. Patent Publication No. 2006/0211924 as well as his 1992 Notebook. Exs. P-0139, Ex. 1206, 1214. Poeze will describe features disclosed in U.S. Patent Publication No. 2010/0030040 and U.S. Patent Application No. 2011/0082711. Exs. 1207, 1205.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent.

Madisetti will explain his analysis of the evidence confirming that Masimo

employees should be named as an inventor and Masimo is at least a joint owner of U.S. Patent No. 11,009,390.  Ex. 1269.

### 9.    Claim 27:  Masimo is at least a joint owner of U.S. Patent Application No. 16/700,710

Masimo's witnesses, for example, Diab and Poeze, will explain the development of wearable devices.  Diab will explain his laboratory notebooks entries related to sensors.  Exs. 1214.  Diab will also describe the design of the TF-I sensor.  Exs. P-005, 777, 1222, 1223, 1225, and 1226.  Diab will also describe features disclosed in U.S. Patent Application No. 2006/0211924. Ex. 1206.  Poeze will describe features disclosed in U.S. Patent Publication No. 2010/0030040 and U.S. Patent Application No. 2011/0082711.  Exs. 1207, 1205.  Third-party witness, Lamego, will confirm that he received an email ███████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████ Exs. 700, 701.

Witnesses including Kiani, Diab, Lamego, and Madisetti will explain that Masimo employees, including Lamego, assigned to Masimo any interest in the patent application or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent application.

Madisetti will explain his analysis of the evidence confirming that Masimo is a joint owner of U.S. Patent Application No. 16/700,710.

### D.    Summary of Defendant Apple's Affirmative Defenses

**Affirmative Defense V:  Laches.**  Apple alleges that Masimo has unjustifiably delayed in asserting trade secret misappropriation and inventorship/ownership claims.

**Affirmative Defense VII: Statute of Limitations.** Apple alleges that Masimo's trade secret misappropriation claim is not timely under the relevant three-year statute of limitations, and Masimo has failed to justify its delay in bringing the case.

**Affirmative Defense XI: Waiver.** Apple alleges that Masimo has unjustifiably

delayed in asserting their trade secret misappropriation and inventorship/ownership claims.

**Affirmative Defense XIII: Failure to Mitigate.** Apple alleges that, to the extent Masimo has suffered any damages, Masimo failed to mitigate any such damages.

**Affirmative Defense XIV: Unclean Hands.** Apple alleges that Masimo's misappropriation claims are barred, in whole or in part, by the doctrine of unclean hands, including because Masimo's conduct violates California Business and Professions Code § 16600 and Unfair Competition Law, § 17200, et seq., and is contrary to public policy.

**E.     Elements Required to Establish Apple's Affirmative Defenses (L.R. 16-4.1(e))**

**1.     Affirmative Defense V:  Laches**

Apple must prove by a preponderance of the evidence that:

a.   Masimo unreasonably delayed asserting or diligently pursuing a claim for misappropriation of trade secrets; and

b.   any delay prejudiced Apple.

*See Johnson v. City of Loma Lind*a, 24 Cal. 4th 61, 68 (2000); *Masimo Corp. v. True Wearables, Inc*., 2022 WL 17083396, at *20 (C.D. Cal. Nov. 7, 2022).

**2.     Affirmative Defense VII: Statute Of Limitations**

Apple must prove that Masimo, prior to January 9, 2017, either:

a.   discovered the misappropriation, or

b.   should have discovered the misappropriation if it exercised reasonable diligence.

*See* Cal. Civ. Code § 3426.6; Dkt. 606 at 3; *Klang v. Pflueger*, 2014 WL 4922401, at *6 (C.D. Cal. July 10, 2014).

**3.     Affirmative Defense XI: Waiver**

Apple must prove by clear and convincing evidence that:

a.     Masimo intentionally relinquished its right to bring its claims after

knowledge of the facts.

*See Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018) (citing *Waller v. Truck Ins. Exchange, Inc.* 11 Cal.4th 1, 31 (1995) *as modified on denial of reh'g* (Oct. 26, 1995)); *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994).

### 4. <u>Affirmative Defense XIII: Failure to Mitigate</u>

Apple must prove that:

a.  Masimo could have avoided the damages it seeks by reasonable efforts or expenditures.

*See Green v. Smith*, 261 Cal. App. 2d 392, 396, 67 Cal. Rptr. 796 (Ct. App. 1968).

### 5. <u>Affirmative Defense XIV: Unclean Hands</u>

Apple must prove that

a.  Masimo's behavior is tainted by inequity or bad faith, and

b.  that behavior occurred in acquiring the rights Masimo now asserts.

*See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir.1985).

## F. <u>Summary of Key Evidence Relied on in Opposition to Each Affirmative Defense (L.R. 16-4.1(f))</u>

### 1. <u>Affirmative Defense V:  Laches</u>

Masimo witness Kiani will testify regarding Masimo's discovery of Apple's misappropriation.   Kiani will testify regarding correspondence with Apple about a potential collaboration and warning Apple about Lamego's knowledge of Masimo's trade secrets. Exs.  778, 1367.  Kiani will also testify that ███████████████████ ████████████████████████████████████████████████████ ███████████████████████████  Masimo will elicit evidence that Lamego assured  Masimo  in  2016  that  ███████████████████████████ ██████████████  Ex. 2823.  Masimo will elicit evidence showing that O'Reilly remained on good terms with Kiani and others at Masimo for years.  Exs. 2824, 1570, 2825, 2826, 2827, 2828, 2829.  Masimo will also elicit testimony from █████████

███████████████████████████████████████████████████

Ex. 771.  Masimo will elicit evidence showing that Apple hid its misappropriation from Masimo.  Exs. 103-106, 521, 1242, 1723, 2832, 2833, 2834, 2835, 2836, 1520, 1897-1901, 1915, 1262, 1268.  Kiani will also testify that Masimo could not have learned of any actionable misappropriation until 2019 or later.

        **2.**      **Affirmative Defense VII: <u>Statute Of Limitations</u>**

Apple's allegations regarding statute of limitations appear to be the same as its allegations for laches.  The evidence refuting laches also refutes this defense.

        **3.**      **<u>Affirmative Defense XI: Waiver</u>**

Apple's allegations regarding waiver appear to be the same as its allegations for laches.  The evidence refuting laches also refutes this defense.  Kiani will also testify that Masimo never relinquished its right to bring its claims.

        **4.**      **<u>Affirmative Defense XIII: Failure to Mitigate</u>**

Apple's allegations regarding failure to mitigate appear to be the same as its allegations for laches.  The evidence refuting laches also refutes this defense.

        **5.**      **<u>Affirmative Defense XIV: Unclean Hands</u>**

Kiani will testify that Masimo reasonably protected its trade secrets in good faith, in part, by having employees enter confidentiality agreements regardless of any provision therein that may be void as a matter of law in any jurisdiction.

**G.**    **<u>Third party's statements (L.R. 16-4.1 (g))</u>**

N/A.

**H.**    **<u>Anticipated Evidentiary Issues (L.R. 16-4.1 (h))</u>**

The Parties have filed a report on evidentiary issues that the Court deferred when ruling on the Parties' motions to strike.  One issue pertains to references or documents that Apple can rely upon to rebut Masimo's showing that the trade secrets are not generally known to the public or other persons who can obtain economic value from their disclosure or use.  Another issue pertains to the ramifications for the late disclosure of the O'Reilly notebooks.  *See* Dkt. 1356.

The Parties have filed motions *in limine* raising certain evidentiary issues. The motions are pending before the Court.

**Masimo's motion *in limine* (Dkt. 1297):** Masimo filed one motion *in limine* seeking to exclude evidence and argument related to: (1) Masimo's attorneys' involvement in creating Masimo's Section 2019.210 trade secret disclosure, (2) similarities between Masimo's interrogatory responses and Masimo's experts reports, and (3) the Parties' narrowing of the case. *See* Dkt. 1297.

**Apple's motions *in limine* (Dkts. 1296, 1300, 1303, 1306):** Apple filed four motions *in limine*.

Apple's MIL No. 1 seeks to preclude references to evidence, arguments, or holdings from other litigations and proceedings. *See* Dkt. 1296.

Apple's MIL No. 2 seeks to exclude evidence regarding Apple's operations, finances, and █████████████████████████████████ *See* Dkts. 1300 (public), 1316 (sealed).

Apple's MIL No. 3 seeks to exclude evidence regarding Apple's corporate culture and statements of current or former Apple employees. *See* Dkts. 1303 (public), 1317 (sealed).

Apple's MIL No. 4 seeks to exclude certain confidentiality provisions of Masimo's employee agreements. *See* Dkts. 1306 (public), 1318 (sealed).

I.    **Issues of Law (L.R. 16-4.1(i))**

None before trial.

## III.  BIFURCATION (L.R. 16-4.3)

Trial on Masimo's patent infringement claims 1-12 has been bifurcated pending the appeals of Final Written Decisions from *inter partes* review proceedings.

The Parties will present evidence to the jury on all issues with the exception of evidence that would be relevant only to the amount of any reasonable royalty. *See* Dkt. 1106 (Parties' stipulation); *see also* Dkt. 1076 at 6 ("The Court 'accepts Plaintiffs' representation that they will not present a reasonable royalty case to the jury.'").

# IV.  JURY TRIAL (L.R. 16-4.4)

**A.**   **Issues for the Jury to Decide**

The jury will decide all issues with the exceptions of those set forth in Section B which are for the Court.

**B.**   **Issues for the Court to Decide**

The Court will decide:

1) Whether Masimo's claims are barred by the doctrine of unclean hands (Affirmative Defense XIV);

2) Whether Masimo's claims are barred by the doctrine of laches (Affirmative Defense IV);

3) Whether Masimo's claims are barred by waiver (Affirmative Defense XI);

4) If neither damages nor unjust enrichment is provable, whether Masimo is entitled to a reasonable royalty and, if so, in what amount;

5) Whether to award punitive or exemplary damages for misappropriation of trade secrets and, if so, in what amount;

6) Whether to award attorneys' fees for willful and malicious misappropriation of trade secrets and, if so, in what amount;

7) Whether to enjoin Apple from further misappropriation;

8) Whether to direct the U.S. Patent and Trademark Office to correct the inventorship of the '052, '670, '095, '754, '671, '997, and '390 patents;

9) Whether to impose upon Apple, as a constructive trustee, certain responsibilities to maintain the '052, '670, '095, '754, '671, '997, and '390 patents and to continue the prosecution of any pending applications derived from or claiming priority the patent applications that led to those patents;

10) Whether to declare Masimo at least a joint owner of the '052, '670, '095, '754, '671, '997, and '390 patents, and the '710 application, and all applications, patents, continuations, divisionals, and reissues that claim priority to those patents and that patent application, including foreign

-51-

counterparts; and

11)   Whether to award Masimo pre- and/or post-judgment interest.

## V.  ATTORNEYS' FEES (L.R. 16-4.5)

Masimo seeks attorneys' fees and costs from Apple under Cal. Civ. Code § 3426.4 for willful and malicious misappropriation of trade secrets.

## VI.  ABANDONMENT OF ISSUES (L.R. 16-4.6)

Masimo will not present the following trade secrets at trial:

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  February 27, 2023

By: /s/ Kendall M. Loebbaka
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Baraa Kahf
Adam B. Powell
Daniel P. Hughes
Kendall M. Loebbaka
Justin J. Gillett

Attorneys for Masimo
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

56611746

-52-