1  MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
      HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
      HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
      HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14 JOSEPH J. MUELLER, *pro hac vice*
15    joseph.mueller@wilmerhale.com
   SARAH R. FRAZIER, *pro hac vice*
16    sarah.frazier@wilmerhale.com
   WILMER CUTLER PICKERING
17    HALE AND DORR LLP
   60 State Street
18 Boston, MA 02109
   Tel.: 617.526.6000 / Fax: 617.526.5000
19
   NORA Q.E. PASSAMANECK, *pro hac vice*
20    nora.passamaneck@wilmerhale.com
   WILMER CUTLER PICKERING
21    HALE AND DORR LLP
   1225 Seventeenth Street, Suite 2600
22 Denver, CO 80202
   Tel.: 720.274.3152 / Fax: 720.273.3133
23
   BRIAN A. ROSENTHAL, *pro hac vice*
24    brosenthal@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
25 200 Park Avenue
   New York, NY 10166-0193
26 Tel.: 212.351.2339 / Fax: 212.817.9539

27 KENNETH G. PARKER, SBN 182911
      Ken.parker@haynesboone.com
28 HAYNES AND BOONE, LLP

660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

Attorneys for Defendant
APPLE INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, | Case No. 8:20-cv-00048-JVS-JDE |
| Plaintiffs, | **APPLE'S [PROPOSED] PRETRIAL CONFERENCE ORDER** |
| v. | Hon. James V. Selna |
| APPLE INC., a California corporation, | |
| Defendant. | Pre-Trial Conf.: 3/13/23 Trial: 3/28/23 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Apple hereby submits this pretrial order as it was informed by Plaintiffs at 11:44 pm on February 27, 2023 that Plaintiffs would not file the parties' joint pretrial order and would instead be filing a unilateral submission.  While the parties were able to reach agreement on many issues, and note areas of disagreement on others, they were unable to reach agreement on whether the Plaintiffs in this matter should properly be referred to in the joint pretrial order as "Plaintiffs"—instead of as "Masimo."  Because this case was filed by both Masimo Corporation and Cercacor Laboratories, Inc., because both Plaintiffs must satisfy their burdens, and because the distinction between the Plaintiffs matters for certain claims, defenses and other issues to be tried, Apple respectfully requests that the following joint pretrial order, which refers to the Plaintiffs as such, be adopted.

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

1.     The parties are:

Masimo Corporation ("Masimo Corp.") and Cercacor Laboratories, Inc. ("Cercacor") and Defendant Apple Inc. ("Apple").

All parties have been served and have appeared.  No other parties have been named in the pleadings.

The pleadings that raise the issues are:

      a.     Plaintiffs' Fourth Amended Complaint for (1) Patent Infringement[1], (2) Trade Secret Misappropriation, (3) Correction of Inventorship, and (4) Ownership of Patents [Dkt. 296-1, filed on February 5, 2021];

      b.     Apple's Amended Answer to Plaintiffs' Fourth Amended Complaint [Dkt. 370, filed on May 7, 2021];

---

[1] Claims 1-12 (patent infringement claims) are currently stayed pending the appeals of Final Written Decisions from *inter partes* review proceedings.  *See* Dkt. No. 220.

      c.     Plaintiffs' First Supplement to the Fourth Amended Complaint [Dkt. 750, filed on June 6, 2022]; and

      d.     Apple's Answer to Plaintiffs' First Supplement to the Fourth Amended Complaint [Dkt. 790, filed on June 27, 2022].

2.     Federal jurisdiction and venue are invoked upon the following grounds:

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the patent infringement claims arise under federal patent laws, 35 U.S.C. §§ 271 and 281, because the correction of inventorship claims arise under federal patent law, 35 U.S.C. § 256, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

The Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Plaintiffs' state law claims for misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, and for ownership of patent and patent application claims. Plaintiffs' state law claims are related to the patent infringement and correction of inventorship claims such that they form part of the same case or controversy under Article III of the United States Constitution.

This Court has personal jurisdiction over Apple and venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because a substantial part of the events giving rise to the parties' dispute arose in this judicial district. The parties agree that the facts requisite to federal jurisdiction and venue are admitted.

3.     The trial is to be a jury trial. The trial will consist of ten days of evidence, plus additional time for jury selection, opening statements, and closing arguments.

4.     At least seven days prior to the trial date, the parties shall file and serve by e-mail: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5.      The following facts are admitted and require no proof:

a)      Masimo Corporation is organized and exists under the laws of the state of Delaware, and has a principal place of business at 52 Discovery, Irvine, California 92618.

b)      Cercacor Laboratories, Inc., is organized and exists under the laws of the state of Delaware, and has a principal place of business at 15750 Alton Parkway, Irvine, California 92618.

c)      Apple Inc. is organized and exists under the laws of the state of California, and has a principal place of business at One Apple Park Way, Cupertino, California, 95014.

6.      Claims and defenses to be presented at trial:

**Plaintiffs:**

(a)      Plaintiffs plan to pursue the following claims against Apple and to seek monetary relief for Claim 13:

Claim 13: Apple's Violation of the California Uniform Trade Secret Act;

Claim 14: Correction of Inventorship of U.S. Patent No. 10,078,052;

Claim 15: Correction of Inventorship of U.S. Patent No. 10,247,670;

Claim 16: Correction of Inventorship of U.S. Patent No. 9,952,095;

Claim 17: Correction of Inventorship of U.S. Patent No. 10,219,754;

Claim 18: Correction of Inventorship of U.S. Patent No. 9,723,997;

Claim 19: Correction of Inventorship of U.S. Patent No. 10,524,671;

Claim 20: Declaratory Judgment of Ownership of U.S. Patent No. 10,078,052;

Claim 21: Declaratory Judgment of Ownership of U.S. Patent No. 10,247,670;

Claim 22: Declaratory Judgment of Ownership of U.S. Patent No. 9,952,095;

Claim 23: Declaratory Judgment of Ownership of U.S. Patent No. 10,219,754;

Claim 24: Declaratory Judgment of Ownership of U.S. Patent No. 9,723,997;

Claim 25: Declaratory Judgment of Ownership of U.S. Patent No. 10,524,671;

Claim 26: Declaratory Judgment of Ownership of U.S. Patent No. 11,009,390;

Claim 27: Declaratory Judgment of Ownership of U.S. Patent Application No. 16/700,710; and

Claim 28: Correction of Inventorship of U.S. Patent No. 11,009,390.

(b)     The elements of Plaintiffs' claims are:

**Claim 13: Violation of the California Uniform Trade Secret Act**

Plaintiffs must prove by a preponderance of the evidence that, for each asserted trade secret identified in Exhibit A (Plaintiffs' Exhibit) or Exhibit B (Apple's Exhibit)[2] to this Joint Pretrial Order (hereinafter, "Asserted Trade Secrets"):

a.     Plaintiffs developed or otherwise lawfully possessed the Asserted Trade Secret[3];

b.     At the time of the alleged misappropriation, the Asserted Trade Secret derived actual or potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy;

c.     Apple improperly acquired, used, or disclosed the Asserted Trade Secret;[4]

---

[2] Exhibit A provides Plaintiffs' articulation of the asserted trade secrets.  Apple disagrees that Exhibit A accurately presents the trade secrets as written in the pleadings and Plaintiffs' 2019.210 statement, and lists the trade secrets as written in Plaintiffs' 2019.210 statement in Exhibit B.

[3] Apple reserves all rights for appeal with respect to its position that Plaintiffs must show ownership of the trade secrets.  *See, e.g.*, Dkt. 1083.

[4] Apple disputes that the jury should be asked to determine whether Apple improperly

d.      Plaintiffs were harmed or Apple was unjustly enriched; and

e.      Apple's acquisition, use, or disclosure was a substantial factor in causing Plaintiffs to suffer harm (Plaintiffs' position) or lost profits (Apple's position) or causing Apple to be unjustly enriched.[5]

## Claims 14-19, 28: Elements of Plaintiffs' Claims for Correction of Inventorship

Separately for each challenged Apple patent and each allegedly omitted inventor, Plaintiffs must prove by clear and convincing evidence that the alleged inventor:

a.      Contributed to the conception of at least one limitation in at least one claim of the patent; and

b.      This contribution was not insignificant in quality, when that contribution is measured against the dimension of the full invention.

## Claims 20-27: Elements of Plaintiffs' Claims for Declaratory Judgment of Patent Ownership

Separately for each challenged Apple patent, Plaintiffs must prove by a preponderance of the evidence that at least one inventor assigned to Plaintiffs his or her interest in the patent, or made his or her inventive contribution to the patent under an

---

acquired any Asserted Trade Secret as Apple contends Plaintiffs have not set forth any theory of damages or other remedy based on acquisition alone and therefore this question should not go to the jury.

[5] Plaintiffs contend that the elements of trade secret misappropriation do not require damages or unjust enrichment.  Plaintiffs contend that monetary relief differs from harm. Plaintiffs contend that they can seek monetary relief based on acquisition.  Apple objects to Plaintiffs seeking damages based on acquisition only; Apple contends no such damages theory has ever been disclosed.  Apple further objects to Masimo seeking damages for actual harm in any form other than lost profits; Apple contends Plaintiffs have similarly never disclosed any such theory.

1  obligation to assign such rights to Plaintiffs.[6]

2

3      (c)      In brief, the key evidence on which Plaintiffs rely on for each claim is:

4

5  **Claim 13: Apple's Violation of the California Uniform Trade Secret Act**

6

7      **a.      Ownership**

8      For the ██████████████████████ Trade Secrets, one or more witnesses

9  including, e.g., Mohamed Diab, Jeroen Poeze, Joe Kiani, and Vijay Madisetti will

10  explain Plaintiffs' development.  Plaintiffs will present supporting evidence through

11  Plaintiffs' documents, including, for example, notebooks, technical documents, emails,

12  and source code.

13      For the ████████████████████████████ Trade Secrets, one or

14  more witnesses including, e.g., Mohamed Diab, Stephen Scruggs, and Vijay Madisetti

15  will explain Plaintiffs' development.  Plaintiffs will present supporting evidence through

16  Plaintiffs' documents, including, for example, notebooks, technical documents, emails,

17  and source code.

18      For the ██████████████████████ Trade Secrets, one or more

19  witnesses including, e.g., Joe Kiani and Robert Palmatier will explain Plaintiffs'

20  development.  Plaintiffs will present supporting evidence through Plaintiffs' products

21  and documents, including, for example, notebooks, business documents, and emails.

22      One or more witnesses including, e.g., Joe Kiani, Tracy Miller, and Gerry

23  Hammarth will explain employee assignment agreements and the cross-license

24

25  ───────────────

[6] Apple objects to Plaintiffs' suggestion that they need only to prove by a preponderance
26  of evidence that "at least one inventor" assigned his or her interest in the patent.  Apple
disagrees, but will reserve its objections until such time that the Court is prepared to
27  address this question, e.g. through jury instructions.  Plaintiffs state that they cannot
respond to Apple's unstated "objection."
28

agreement between Masimo Corp. and Cercacor.  Plaintiffs will present supporting documentary evidence including, for example, the agreements and any amendments.

> ### b.    **Derive Value From Not Being Generally Known, and Subject To Reasonable Efforts To Keep Secret**

One or more witnesses including, e.g., Mohamed Diab, Joe Kiani, Vijay Madisetti, and Robert Palmatier along with the presentation of documentary evidence, and cross examination of Apple's and third party witnesses, will explain that each of Plaintiffs' trade secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

One or more witnesses including, e.g., Mohamed Diab, Joe Kiani, Tracy Miller, Bilal Muhsin, Gerry Hammarth, Vijay Madisetti, and Robert Palmatier along with the presentation of documentary evidence, and cross examination of Apple's and third party witnesses will explain, along with Plaintiffs' policies, handbooks, training, notebooks, physical and computer access restrictions, exit interview procedures, employment agreements, email exhibits, and communications with Apple, the steps Plaintiffs take to keep the trade secrets confidential, proprietary and secret.

> ### c.    **Apple's Misappropriation via Acquisition, Use, or Disclosure**

One or more witnesses including, e.g., Vijay Madisetti will explain how Apple misappropriated the ███████████████ Trade Secrets, and Plaintiffs will present supporting evidence through Apple testimony and documents, including, for example, notebooks, technical documents, emails, source code, and interrogatory responses.

One or more witnesses including, e.g., Vijay Madisetti will explain how Apple misappropriated the ███████████████ Management Trade Secrets, and Plaintiffs will present supporting evidence through Apple testimony and documents,

including, for example, notebooks, technical documents, emails, source code, and interrogatory responses.

One or more witnesses including, e.g., Robert Palmatier will explain how Apple misappropriated the ████████████████████████ Trade Secrets, and Plaintiffs will present supporting evidence through Apple testimony and documents, including, for example, notebooks, business documents, emails, and interrogatory responses.

### d.    Apple's Misappropriation Caused Plaintiffs To Be Harmed and Apple To Be Unjustly Enriched

One or more Masimo witnesses including, e.g., Joe Kiani and Bilal Muhsin and contemporaneous documents will show that in ████████████████████ ████████████████████████████████████████████ ██████████████ Apple's testimony and documents will show that Apple's misappropriation of Plaintiffs trade secrets caused Apple ████████████ ████████████████████████████████ One or more Masimo witnesses including, e.g., Joe Kiani, Bilal Muhsin, Ammar Al-Ali, and Stephen Scruggs will explain that Masimo ████████████████████████████ ██████████████ One or more witnesses including, e.g., Joe Kiani will explain Masimo's lost profits from lost ████████████ to Apple, caused by Apple's trade secret misappropriation.

One or more witnesses including, e.g., Vijay Madisetti and Robert Palmatier will explain Apple's use of Plaintiffs' trade secrets in developing and promoting certain health features related to the Apple Watch showing how Apple's misappropriation was a substantial factor in causing Plaintiffs' harm and causing Apple to be unjustly enriched.  One or more witnesses including, e.g., Jeffrey Kinrich will explain Apple's unjust enrichment caused by Apple's trade secret misappropriation, as measured by Apple's incremental profit related to the blood-oxygen and ECG features of the Apple

Watch.

**Claims 14-27: Plaintiffs' Claims for Correction of Inventorship**

One or more witnesses including, e.g., Vijay Madisetti will testify that Mohamed Diab should be named as an inventor of U.S. Patent Nos. 10,078,052, 10,247,670, 9,952,095, and 11,009,390; that Jeroen Poeze, Ammar Al-Ali, Mohamed Diab, and Walter Weber should be named as inventors of U.S. Patent No. 10,219,754; that Greg Olsen, Mohamed Diab, and Phil Weber should be named as inventors of U.S. Patent No. 9,723,997; and that Greg Olsen, Mohamed Diab, Joe Kiani, and Phil Weber should be named as inventors of U.S. Patent No. 10,524,671.

One or more witnesses including, e.g., Mohamed Diab, Jeroen Poeze, Ammar Al-Ali, Walter Weber, Greg Olsen, and/or Joe Kiani will testify regarding their knowledge of, contribution to, and teaching to Lamego the subject matter claimed in the disputed Apple patents.

Plaintiffs will present supporting evidence of products and documents, including, for example, notebooks, technical documents, patents and patent filings, emails, source code, employment agreements, and interrogatory responses.

**Claims 20-27: Elements of Plaintiffs' Claims for Declaratory Judgment of Patent Ownership**

Plaintiffs will rely on the evidence that supports its claims for correction of inventorship.  In addition, one or more witnesses including, e.g., Vijay Madisetti will testify that Masimo and/or Cercacor own the disputed Apple patents because any inventive contribution to the disputed Apple patents made by Marcelo Lamego, Mohamed Diab, Jeroen Poeze, Ammar Al-Ali, Walter Weber, Greg Olsen, Joe Kiani, and/or Phil Weber was made while employed by Masimo or Cercacor and they either assigned their rights in the disputed Apple patents to Masimo or were under an obligation to assign such rights to Masimo.

One or more witnesses including, e.g., Mohamed Diab, Jeroen Poeze, Ammar Al-Ali, Walter Weber, Greg Olsen, Joe Kiani, and/or Phil Weber will testify that they and Marcelo Lamego made any inventive contribution to the subject matter claimed in the disputed Apple patents while employed by Masimo or Cercacor and they either assigned their rights in the disputed Apple patents to Masimo or were under an obligation to assign such rights to Masimo.

Plaintiffs will present supporting evidence of products and documents, including, for example, notebooks, technical documents, patents and patent filings, emails, source code, employment agreements, and interrogatory responses.

**Apple:**

(a)      Apple plans to pursue the following affirmative defenses:

Laches;

Statute of limitations;

Waiver;

Plaintiffs failed to take reasonable steps to mitigate damages;

Unclean hands.[7]

(b)      The elements required to establish Apple's affirmative defenses are the following:

---

[7] Pursuant to the Court's *Daubert* Order (Dkt. 1323 at 3-4), Apple understands it may not present its "readily ascertainable" defense at trial.  Apple reserves all appellate rights with respect to the Court's Order.

For the avoidance of doubt, Apple is also pursuing its defenses of no willfulness; independent development of the alleged trade secrets; independent development of the Disputed Patents; and no causation of damages.  Apple asserts that Plaintiffs bear the burden on each of these issues and they are accordingly not listed here.

**Laches**

Apple must prove by the preponderance of the evidence that:

(1) Plaintiffs unreasonably delayed in bringing the action; and

(2) the delay prejudiced Apple.

**Statute of limitations**

Apple must prove by a preponderance of the evidence, for each Asserted Trade Secret, that, to the extent the jury finds misappropriation, misappropriation of the Asserted Trade Secret occurred before January 9, 2017.

Plaintiffs can overcome the defense if they prove by a preponderance of the evidence, for each Asserted Trade Secret, that they did not discover, nor with reasonable diligence should they have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated the Asserted Trade Secrets.

**Waiver**

Apple must prove by a preponderance of the evidence, for each asserted claim, that Plaintiffs intentionally relinquished or abandoned a known right.

**Plaintiffs failed to take reasonable steps to mitigate damages**

Apple must prove by the preponderance of the evidence that Plaintiffs could have avoided the alleged harm with reasonable efforts or expenditures.

**Unclean hands**

Apple must prove by the preponderance of the evidence that, for each asserted claim:

(1) Plaintiffs engaged in misconduct; and

(2) Plaintiffs' misconduct is related to the claim to which the defense is asserted.

(c)     In brief, the key evidence on which Apple relies for each affirmative defense is the following:

**Laches**

Apple witnesses, including, e.g., Steve Hotelling and Deidre Caldbeck, along with the presentation of documentary evidence, and cross examination of Plaintiffs' witnesses will show that Plaintiffs have been aware of Apple's conduct on which they base allegations of trade secret liability since ███████████████, and possibly significantly earlier.

Apple witnesses, including, e.g., Steve Hotelling, Steven Warren, and Majid Sarrafzadeh, along with the presentation of documentary evidence, and cross examination of Plaintiffs' witnesses will show that Plaintiffs have been aware of the Disputed Patents at least as early as December 2018 and possibly significantly earlier.

Apple witnesses, including, e.g., Steve Hotelling and Deidre Caldbeck, along with the presentation of documentary evidence, will show how Apple has been prejudiced by Plaintiffs' strategic decision to wait nearly seven years before filing this suit in January 2020.

**Statute of limitations**

Apple witnesses, including, e.g., Steve Hotelling, Deidre Caldbeck, and Michael O'Reilly, along with the presentation of documentary evidence, and cross examination of Plaintiffs' witnesses will show that Plaintiffs were aware or should have been aware of the purported misappropriation ████████████████████████ ██████.

**Information was readily ascertainable by proper means**

Apple witnesses, including, e.g., Drs. Steven Warren, Majid Sarrafzadeh, Marco Perez, Ran Kivetz, along with the presentation of documentary evidence, and cross examination of Plaintiffs' witnesses will show that Plaintiffs' Asserted Trade Secrets were readily ascertainable by proper means because the information in the Asserted

1  Trade Secrets can be obtained, discovered, developed, or compiled without significant

2  difficulty, effort, or expense.

3  **Waiver**

4  Apple witnesses, including, e.g., Steve Hotelling, Deidre Caldbeck, and Michael

5  O'Reilly, along with the presentation of documentary evidence, and cross examination

6  of Plaintiffs' witnesses will show that Plaintiffs have been aware of Apple's conduct

7  on which they base allegations of trade secret liability since ███████████████

8  ████████████████████

9  Apple witnesses, including, e.g., Steve Hotelling, Steven Warren, and Majid

10  Sarrafzadeh, along with the presentation of documentary evidence, and cross

11  examination of Plaintiffs' witnesses will show that Plaintiffs have been aware of the

12  Disputed Patents at least as early as December 2018 and possibly significantly earlier.

13  Apple witnesses, including, e.g., Steve Hotelling and Deidre Caldbeck, along

14  with the presentation of documentary evidence, will show how Apple has been

15  prejudiced by Plaintiffs' strategic and intentional decision to wait nearly seven years

16  before filing this suit in January 2020.

17  **Plaintiffs failed to take reasonable steps to mitigate damages**

18  Cross examination of Plaintiffs' witnesses, along with the presentation of

19  documentary evidence, will show that Plaintiffs could have avoided the alleged harm

20  through reasonable efforts or expenditures.

21  **Unclean hands**

22  Cross examination of Plaintiffs' and third-party witnesses, along with the

23  presentation of documentary evidence, will show that Plaintiffs engaged in misconduct

24  and that Plaintiffs' misconduct was related to the asserted claims.

25

26  7.      In view of the admitted facts and the elements required to establish the

27  claims, counterclaims, and affirmative defenses, the following issues remain to be

28  tried:

**Issues for the jury include:**

1)    Whether Apple misappropriated Masimo's Asserted Trade Secrets as defined under California Uniform Trade Secret Act (Cal. Civ. Code § 3246.1), including for each Asserted Trade Secret:

    a.  Whether Masimo developed or otherwise lawfully possessed the Asserted Trade Secret[8];

    b.  Whether the Asserted Trade Secret was a trade secret at the time of the alleged misappropriation;

    c.  Whether Apple improperly acquired, used, or disclosed the Asserted Trade Secret;

    d.  Whether Plaintiffs were harmed or Apple was unjustly enriched; and

    e.  Whether Apple's use, or disclosure was a substantial factor in causing Plaintiffs to be harmed (Plaintiffs' position) or suffer lost profits (Apple's position)[9] or Apple to be unjustly enriched.

2)    Whether Apple did not improperly acquire, use, or disclose the Asserted Trade Secrets, but rather independently discovered the information that Plaintiffs allege Apple misappropriated;

3)    Whether Apple's alleged misappropriation of Plaintiffs' Asserted Trade Secrets was willful and malicious (Cal. Civ. Code § 3246.3);

---

[8] As noted above, Apple reserves all rights with respect to its position the Plaintiffs must demonstrate ownership of the Asserted Trade Secrets.

[9] As set forth above, Plaintiffs contends that the elements of trade secret misappropriation do not require damages or unjust enrichment. Plaintiffs contend that monetary relief differs from harm. Plaintiffs contend that it can seek monetary relief based on acquisition. Apple objects to Plaintiffs seeking damages based on acquisition only and contends no such damages theory has ever been disclosed. Apple further objects to Plaintiffs seeking damages for actual harm in any form other than lost profits and contends no such theory has been disclosed.

4)   Whether Plaintiffs' claims are barred by the applicable statute of limitations;

5)   Whether Plaintiffs' employees contributed to the claimed inventions of U.S. Patent Nos. 9,723,997, 10,078,052, 10,247,670, 9,952,095, 11,009,390, 10,219,754, and 10,524,671 (the "Disputed Patents) such that Plaintiffs' employees should have been named as inventors;

6)   Whether Plaintiffs should each be declared at least a joint owner of the Disputed Patents or U.S. Patent Application No. 16/700,710 by virtue of any determination that Plaintiffs' employees should have been named as inventors or that Lamego invented the claimed inventions while employed by Cercacor;

7)   Whether Plaintiffs are entitled to damages (Plaintiffs' position) or lost profits (Apple's position)[10] and/or unjust enrichment from Apple and, if so, in what amount; and

8)   Whether Plaintiffs failed to mitigate damages.

**The Parties Disagree Who Decides the Following Issue:**

9)   Whether Plaintiffs' claims are barred by the doctrine of unclean hands.

**Issues for the Court include:**

10)   Whether Plaintiffs' claims are barred by the doctrine of laches;

11)   Whether Plaintiffs' claims are barred by waiver;

12)   If neither damages (Plaintiffs' position) or lost profits (Apple's position)[11] nor unjust enrichment is provable, whether Plaintiffs are

---

[10] As set forth in footnote five, the Parties dispute whether Plaintiffs may seek monetary relief for Apple's acquisition of the Asserted Trade Secrets.

[11] As set forth in footnote five, the Parties dispute whether Plaintiffs may seek monetary

entitled to a reasonable royalty and, if so, in what amount;

13) Whether to award punitive or exemplary damages for misappropriation of trade secrets and, if so, in what amount;

14) Whether to award attorneys' fees for willful and malicious misappropriation of trade secrets and, if so, in what amount;

15) Whether to enjoin Apple from further misappropriation;

16) Whether to direct the U.S. Patent and Trademark Office to correct the inventorship of the '052, '670, '095, '754, '671, '997, and '390 patents;

17) Whether to impose upon Apple, as a constructive trustee, certain responsibilities to maintain the '052, '670, '095, '754, '671, '997, and '390 patents and to continue the prosecution of any pending applications derived from the patent applications that led to those patents;

18) Whether to declare Masimo at least a joint owner of the '052, '670, '095, '754, '671, '997, and '390 patents, and the '710 application, and all applications, patents, continuations, divisionals, and reissues that claim priority to those patents and that patent application, including foreign counterparts; and

19) Whether to award Plaintiffs pre- and/or post-judgment interest.

8.   Discovery is complete other than discovery related to a reasonable royalty determination and discovery relating to stayed patent claims.

9.   Disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

_____

relief for Apple's alleged acquisition of the Asserted Trade Secrets.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits objected to as follows:

Plaintiffs' objections to exhibits and the grounds for such objections are set forth in Appendix 1 to this Order.

Apple's objections to exhibits and the grounds for such objections are set forth in Appendix 2 to this Order.

10.     Witness lists of the parties have been filed with the Court under separate cover.

Only the witnesses identified in the lists will be permitted to testify (other than for good cause shown[12]).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.[13]  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

- David Amor
- Louis Bokma
- Aditya Dua
- Jack Fu
- Chinsan Han

---

[12] Plaintiffs assert they should also be able to call appropriate witnesses in its rebuttal case in accordance with the Rules.  Apple believes all witnesses should be disclosed absent good cause shown.

[13] The parties have not exchanged deposition designations for witnesses that appear on the other side's lists of witnesses it has represented it will call live.  The parties agree that if any witness is removed from a party's will call live list, the other side may subsequently provide deposition designations, subject to objections and counter-designations.

-17-

- Jackie Harlow
- Michael Jaynes
- Alex Kanaris
- Eugene Kim
- Brian Land
- Paul Mannheimer
- Robert Mansfield
- Afshad Mistri
- Divya Nag
- Trevor Ness
- Nonin (Jill Wroblewski and Aaron Lobbestael)
- Denby Sellers
- Tao Shui
- David Tom
- Vivek Venugopal
- Jeff Williams
- Dong Zheng
- Yassir Abdul-Hafiz
- Ammar Al-Ali
- Anand Sampath
- Robert Smith
- Philip Weber
- Walter Weber
- Micah Young

Plaintiffs object to the presentation of testimony by deposition of Marcelo Lamego unless his subpoena is quashed or he fails to appear.

No deposition testimony not already designated, whether designated as affirmative or counter-designations, may later be added, absent good cause shown.

Pursuant to the procedures set forth below, the parties will identify the portions of designations to be offered and provide transcripts of those portions to the Court closer in time to when a party anticipates calling a witness by deposition so that the Court may rule on any outstanding objections.

11.    The following law and motion matters and motions in limine, and no others, are pending or contemplated:

Plaintiffs have filed the following:

(1)    Motion in Limine No. 1: Exclude Evidence of Plaintiffs' Attorneys' Involvement In This Case

Apple has filed the following:

(1)    Motion In Limine No. 1: Preclude References To Other Litigations And Proceeding

(2)    Motion In Limine No. 2: Preclude References To Irrelevant Apple Operations

(3)    Motion In Limine No. 3: Exclude Irrelevant And/Or Inflammatory Statements Attributed To Apple's Employees

(4)    Motion In Limine No. 4: Exclude Unlawful Confidentiality Provisions Of Employee Agreements


(2)    Bifurcation of the following issues for trial is ordered:  The trial to determine whether Plaintiffs should be awarded a reasonable royalty, and the amount of any such royalty, for Apple's alleged misappropriation of Plaintiffs' Asserted Trade Secrets will be bifurcated and presented to the Court after a jury verdict, if necessary. Additionally, trial on Plaintiffs' patent infringement claims 1-12 has been bifurcated pending the appeals of Final Written Decisions from *inter partes* review proceedings.


(3)    **Stipulations For Trial**: The parties agree on the following stipulations for trial:

a. **Sequestration:**  Pursuant to Federal Rule of Evidence 615(b), each side will designate a representative who is not subject to sequestration.  For the avoidance of doubt, expert witnesses are not excluded from the courtroom for either fact or expert testimony.

b. **Scope of Examinations at Trial** – The parties agree that, for any witnesses on both parties' witness lists who are presenting live testimony, the scope of cross-examination shall not be limited to the scope of direct examination.  Accordingly, when Plaintiffs call their live witnesses during their case-in-chief, Apple may exceed the scope of the direct examination for witnesses on Apple's witness list and Apple will complete its examination so that the witness will not have to return to testify a second time in Apple's case-in-chief.  Similarly, when Apple call its live witnesses in its case-in-chief, Plaintiffs may exceed the scope of the direct examination for witnesses on their own witness list so that Plaintiffs need not have previously called the witness in their case-in-chief.  Thus, Plaintiffs' case-in-chief shall remain open through presentation of all of Apple's live witnesses on Plaintiffs' witness list. Each Party is currently relying on the other Party's identification of "will call live" witnesses, and the understanding that such witness will be presented live at trial, and therefore the parties need not issue trial subpoenas for such witnesses.  If a Party does not call a currently designated "will call live" witness of that Party, the other side will have the right to call that witness as an adverse witness and such witness will be made available at trial unless the Parties agree to proceed by deposition or otherwise.

c. **Witness Availability** – The parties understand the start date of trial may be delayed and that there may be scheduling conflicts that require taking witnesses out of order.  The parties agree to work in good faith to

-20-

navigate witness scheduling issues—including, if necessary, by calling witnesses out of order.

d. **Disclosure of Witnesses Testifying at Trial** – The parties have agreed to the deadlines for disclosure of trial witnesses as follows: During its case-in-chief, each side will identify any witnesses it expects to call by deposition by 6:00 pm three calendar days before the trial day during which the designations will be read or played (for example, by 6:00 pm on Saturday for a witness whose deposition will be played on Tuesday) and any witnesses it expects to call live and the order in which it expects to call them by 6:00 pm two calendar days before the trial day during which the witnesses are called (for example, by 6:00 pm on Sunday for a witness who will be called on Tuesday).

e. **Disclosure of Deposition Designations** – The parties have agreed to the deadlines for disclosure of deposition designations as follows:

   i.   If a party identifies a witness that it intends to call at trial by deposition, then the party shall identify the specific pages and lines of the witness's deposition testimony that the party expects to play by 7:00 pm three calendar days before the trial day during which the deposition is expected to be read or played.

   ii.  For each such witness, the opposing side shall identify objections and counter-designations by 6:00 pm the following day (i.e., two calendar days before the trial day during which the testimony is expected to be played).

   iii. The proffering side shall identify any objections to the counter designations and counter-counter designations by 8:00 pm.

   iv.  The parties will meet and confer by 9:00 pm that night (i.e., two calendar days before the trial day during which the testimony is

expected to be played) in an effort to resolve their objections and any other issues relating to the deposition designations.

v.   The party offering the testimony is responsible for preparing a transcript clip report, including all unresolved objections, for submission to the Court the calendar day before the testimony is expected to be played.

vi.   The party offering the testimony is responsible for preparing video deposition clips and final transcript clip reports of all designated testimony for that witness. A copy of the video deposition clips and clip reports shall be provided to the opposing party no later than 9:30 pm the calendar day before the deposition testimony is expected to be played.

vii.   Each party agrees that correct copies of transcripts and video recordings of depositions taken in this litigation may be used by either party at trial, without respect to whether the copy is certified.  No party shall object to the authenticity of a copy of a deposition transcript or video recording of a deposition absent evidence that the copy is, in fact, inaccurate or inauthentic.  The party challenging the authenticity of a deposition transcript or video recording shall bear the burden of establishing that the transcript or video recording is not authentic.  All other objections to admissibility of deposition testimony are preserved.

viii.   Designations and counter-designations will be presented via video and played in page order.[14]   All objections and colloquies

---

[14] The Parties disagree whether this rule should apply to Marcelo Lamego if he were unavailable to testify live.  Plaintiffs believe it should not.  Apple believes it should.  Dr. Lamego testified at deposition pursuant to subpoenas served by both sides, but was first questioned by Apple.

between counsel will be eliminated when the designated testimony is played.

ix. When deposition testimony is played by video, the time available for each party's presentation of evidence shall be reduced by the length of its designations and counter-designations as played.

x. The parties have agreed that certain witnesses can be called by deposition, regardless of the availability of the witness to testify live.

1. Plaintiffs have agreed that Apple may call the following witnesses via deposition, regardless of whether the witness is within the Court's subpoena power:

a. Yassir Abdul-Hafiz

b. Ammar Al-Ali

c. Alex Kanaris

d. Greg Olsen

e. Anand Sampath

f. Robert Smith

g. Philip Weber

h. Walter Weber

i. Micah Young

2. Apple has agreed that Plaintiffs may call the following witnesses via deposition, regardless of whether the witness is within the Court's subpoena power:

a. David Amor

b. Louis Bokma

c. Aditya Dua

d. Jack Fu

e. Chinsan Han

f.  Jackie Harlow

g.  Michael Jaynes

h.  Alex Kanaris

i.  Eugene Kim

j.  Brian Land

k.  Paul Mannheimer

l.  Robert Mansfield

m. Afshad Mistri

n.  Divya Nag

o.  Trevor Ness

p.  Nonin (Jill Wroblewski and Aaron Lobbestael)

q.  Denby Sellers

r.  Tao Shui

s.  David Tom

t.  Vivek Venugopal

u.  Jeff Williams

v.  Dong Zheng

f.  **Disclosure of Exhibits** – The parties have agreed to the deadlines for disclosure of exhibits and objections thereto as follows:

i.  Each side will identify exhibits that will be shown to the trier of fact during opening statements by noon one calendar day before the date on which opening statements are presented to the jury. The opposing side shall identify any objections to exhibits to be shown during opening statements by 6:00 pm that night.  The parties will meet and confer by 9:00 pm in an effort to resolve any such objections.  Any unresolved objections will be raised with the Court outside the presence of the jury before commencement of opening statements.

-24-

ii.  Each side will identify exhibits that will be offered into evidence during the testimony of a witness called by that side, whether live or via deposition, by 6:00 pm one calendar day before the trial day the witness is called (for example, by 6:00 pm on Monday for a witness who will be called on Tuesday).

iii.  The opposing side shall identify objections by 8:00 pm the same day.[15]

iv.  The parties will meet and confer by 9:00 pm the same day in an effort to resolve their objections and any other issues relating to the disclosed exhibits.

v.  For any unresolved objections to an exhibit, the parties will address those objections with the Court outside the presence of the jury before seeking to introduce the exhibit at trial.

vi.  The parties agree that documents that will be used for impeachment do not need to be identified as part of these disclosures.

vii.  An exhibit, once admitted, may be used equally by each party.

---

[15] The Parties disagree regarding whether a Party need disclose exhibits they will seek to introduce into evidence through an adverse witness.  Because Apple has agreed Masimo may examine witnesses outside the scope of direct in order to avoid calling them adversely, it believes the appropriate course is for all parties to disclose any exhibits they intend to introduce into evidence during examination of any witness pursuant to the above procedures.  For example, if in lieu of calling an Apple employee adversely during their case-in-chief, Plaintiffs defer their examination until that witness testifies during Apple's case-in-chief but seek to exceed the scope of the direct examination to present affirmative evidence through that witness, Apple believes Plaintiffs should identify the exhibits it will seek to admit through that witness pursuant to the procedures set forth herein so that objections can be resolved before the witness testifies.  Plaintiffs disagree and contend that an adverse witness need not be given exhibits the night before testifying.

viii.  The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

ix.  The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

x.  The parties agree that any date listed on the exhibit list is neither evidence of nor an admission of the date of the document, and that failing to list a date is neither evidence of nor an admission of whether the document is dated.

xi.  Each party reserves the right to use documents not set forth in its exhibit list for purposes of impeachment.

g.  **Disclosure of Trial Demonstratives** – In lieu of the deadline set forth in L.R. 16-3, the parties have agreed to the deadline for disclosure of trial demonstratives as follows:

i.  Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during opening statements by noon one calendar day before the date on which opening statements are presented to the jury.  The opposing side shall identify any objections by 6:00 pm that night.  The parties will meet and confer by 9:00 pm in an effort to resolve any such objections.  Any unresolved objections will be raised with the Court outside the presence of the jury before commencement of opening statements.

ii.  Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the testimony of a witness called by that side by 6:00 pm one calendar day

-26-

before the witness is called (for example, by 6:00 pm on Monday for a witness who will be called on Tuesday).

iii.   The opposing side shall identify any objections by 8:00 pm the same day.

iv.   The parties will meet and confer by 9:00 pm the same day in an effort to resolve their objections.

v.   For any unresolved objections to demonstratives, the parties will address those objections with the Court outside the presence of the jury before seeking to show the demonstrative at trial.

vi.   Graphical, illustrative, or demonstrative material that consists solely of an excerpt from an exhibit including highlighting and/or call-outs (without more) need not be disclosed in advance of being shown to the trier of fact provided the exhibit has been disclosed pursuant to the above process.

vii.   The party seeking to use graphical, illustrative, or demonstrative material will provide a color representation of that material to the other side in PDF form.   For video or animations, the party seeking to use the material will provide it to the other side via a USB drive or other agreed-upon means.

viii.   Exhibits or graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the examination of an adverse witness need not be disclosed in advance of such examination.

h.   **Authenticity of Exhibits** – The parties stipulate to the authenticity of each trial exhibit that is a document or thing produced by a party and on its face appears to be generated by the party, including by current or former employees, officers, or agents of the producing party, subject to the right of the party against which such document or thing is offered to

adduce evidence to the contrary.  Notwithstanding this stipulation, each party preserves its right to object to the document or thing on any ground other than authenticity.

i.   **Copies of Documents** – Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.  Legible copies of the patents at issue and the contents of their U.S. Patent and Trademark Office file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

j.   **Rebuttal Case** – The parties currently have a dispute as to the proper scope as to any rebuttal case.

Masimo's position:  Plaintiffs intend to present a rebuttal case, if necessary, on all issues.  Whether Plaintiffs present a rebuttal case does not depend solely on which Party has the burden of proof on any issue.  Further, that the Parties saw the benefit of having witnesses appear once to testify should have no effect on whether Plaintiffs are entitled to present rebuttal witnesses.  The Parties were unable to finally agree on any "one-and-done rule" particularly because Plaintiffs believe Apple maintained that implementing such rule would preclude Plaintiffs from presenting any rebuttal case.

Apple's position:  Plaintiffs should not be permitted to present a rebuttal case except as to issues for which Apple has the burden.  Apple further objects to Plaintiffs re-calling any fact witnesses in rebuttal including

-28-

because (1) Plaintiffs have not identified any issue for which Apple has the burden that fact witness testimony would be appropriate to rebut and (2) the Parties' prior agreement that fact witnesses would be "one and done"—i.e., only testify once—precludes Plaintiffs from re-calling any fact witnesses.

(4)     The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED: _____        _____
                                  The Honorable James V. Selna
                                  United States District Judge

Dated: February 28, 2023          By: /s/ Mark D. Selwyn
                                        ***

                                  Attorneys for Defendant
                                  APPLE INC.