UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 20-00048 JVS (JDEx) | Date | March 1, 2023 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Second Order Regarding Plaintiffs' Contingent Motion to Strike and Request for Sanctions**

On February 6, 2023, among other motions, the Court held a hearing on Plaintiff's Contingent Motion to Strike and Request for Evidentiary Sanctions. Dkts. 1122, 1176 (sealed) ("Mot."). See Dkt. 1274 (minutes). On February 9, 2023, the Court issued an order granting in part and denying in part the Motion. See Dkts. 1280 (sealed), 1324 (redacted) (the "First Order"). The First Order left open two issues and ordered the parties to file a supplemental joint report addressing those issues. See id. The parties have filed their report. See Dkts. 1358 (redacted), 1398 (sealed) ("Joint Report"). The Court rules on the remaining issues as explained herein.

**I. DISCUSSION**

Plaintiffs move to strike certain readily known and ascertainable expert opinions relying on new trade secret references. Plaintiffs also seek relief relating to Apple's late disclosure of the O'Reilly notebooks.

A.   Readily Known & Ascertainable References

Apple's expert reports rely on 500 references to support the experts' generally known/readily ascertainable trade secrets opinions, including about 100 references that were disclosed after the close of fact discovery, and about 350 references that were disclosed for the first time in expert reports. See Mot. at 7. In the First Order, the Court found that "Apple can likely show harmlessness based on the fact that Plaintiffs were able to conduct lengthy depositions of the relevant experts and Plaintiffs' expert produced an extensive rebuttal report." First Order at 7. Because "Plaintiffs do not argue

1

that the new references constitute new [trade secrets readily-ascertainable-or-generally-known] theories and Apple does not argue that they support existing theories," the Court ordered the parties to meet and confer to discuss "whether the newly disclosed references constitute a discovery violation that is not substantially justified or harmless." Id. at 8-9. To that end, the Court asked the parties to "determine which references align with previous disclosures and which disclose new theories." Id. at 9.

Plaintiffs have identified three categories of references they believe are newly disclosed theories that should be stricken. Joint Report at 1. Plaintiffs also argue that, with respect to these late disclosures, Apple cannot show harmlessness because, if Plaintiffs had timely received these references/opinions, they could have taken third-party discovery and asked Apple witnesses about them to show that the references, third-party products, and marketing principles were *not* well known. Id. at 3 (citing examples). Apple responds that there is no harm to Plaintiffs because they were able to depose Apple's expert on these topics and Plaintiffs' experts were able to provide a full written rebuttal. Id. at 7-8.

The Court analyzes each category below.

| Category | Plaintiffs' Position | Apple's Position | Court's Ruling |
|---|---|---|---|
| New references: 1) Signal Processing and Linear Systems, B. P. Lathi, 1998; and 2) U.S. Patent No. 8,358,075. | These references relate to new "generally known" opinions/theories. | The references are analogous to those already disclosed in an interrogatory response and disclosed within some of those references. | The email cited by Apple (Ex. 2) does not demonstrate that the references are analogous. Therefore, they are untimely. |
| New third-party products: 1) Asthmapolis (Propeller Health) Inhaler Sensor; 2) iHealth Smart Glucometer; and 3) Scale | Apple's position (that these are clinical-grade products marketed to the medical field and consumers) is so general that anything could be disclosed belatedly at this level of generalization. | Apple's interrogatory responses identified analogous third-party products, and publications discussing those products. | These third-party products are of the same general type as those disclosed in Apple's discovery responses. Therefore they are timely. |

| | , | , | , |
|---|---|---|---|
| New marketing principles: 1) leveraging synergies from network effects; 2) direct and indirect network effects; 3) two-sided markets; 4) product compatibility; 5) strategic partnerships; and 6) harnessing the power of data. | Designing and marketing a product to multiple market segments is not the same theory as the specific principles identified in the expert report. | Apple disclosed previously its contention that Plaintiffs' B&M trade secrets are basic marketing strategies; the related expert opinions merely expand upon that theory. | These opinions expand upon Apple's previously disclosed theory in its interrogatory responses. Therefore, they are timely. |

Because the Court found an untimely disclosure with respect to the first category above, it considers whether the late disclosure was harmless.[1] Fed. R. Civ. P. 37(c)(1). The Court concludes that the untimely disclosure was not harmless to Plaintiffs because, had Plaintiffs received the disclosure earlier, they could have taken third-party discovery and asked Apple witnesses about whether the references were well known.

Accordingly, the Court **GRANTS** the Motion as to the first category and **DENIES** it as to the second and third categories.

B.   O'Reilly Notebooks

Plaintiffs seek various sanctions relating to the late disclosure of O'Reilly's notebooks. See Mot. at 16-19; Joint Report at 4-5. Apple argues the disclosure was substantially justified and harmless. The Court already found a discovery violation based on the late disclosure, but left open the questions of whether the disclosure was substantially justified or harmless. First Order at 16. The Court ordered the parties to "meet and confer on the additional information requested by Plaintiffs" to determine whether it could be provided "without altering the current case schedule, including the trial date." Id.

Plaintiffs report that, as a compromise, they asked Apple "to provide the information that would normally be disclosed on a privilege log for (a) any discussions

---

[1]    The Court does not consider whether the late disclosure was substantially justified because the parties do not address it.

with O'Reilly about document collection and (b) any discussion when O'Reilly identified his notebooks." Joint Report at 4. Plaintiffs aver that this process must be explored further because "where and how a party searched for documents is not privileged." Id. at 4-5. If reopening O'Reilly's deposition is not possible before trial, Plaintiffs contend an adverse jury instruction is warranted addressing the late disclosure. Id. at 5.

Apple responds that, since the Court ordered the parties to meet and confer about the additional information that was needed, "Plaintiffs have not requested any substantive information regarding Dr. O'Reilly's notebooks." Id. at 8. Regarding Plaintiff's prior argument that they were unable to question other witnesses about the notebooks, Apple notes that it has asked Plaintiffs who they want to question but Plaintiffs have identified noone. Id. Apple argues that "Plaintiffs' failure to identify any information that they would have sought relevant to the factual disputes at trial is further proof that the notebooks' late disclosure was harmless." Id. at 9.

In the First Order the Court "defer[red] its determination regarding whether the [O'Reilly late] disclosure was substantially justified or harmless until the parties meet and confer on the additional information requested by Plaintiffs." First Order at 16. Upon reviewing the Joint Report, it is not evident that the parties met and conferred "on the additional information requested by Plaintiffs." Specifically, it is not clear that Plaintiffs have requested additional information (e.g., speaking to additional witnesses about the notebooks, requesting material referenced in the notebooks). Thus, the existing record supports Apple's contention that the untimely disclosure was harmless.

First, Apple agreed to delay O'Reilly's deposition to allow Plaintiffs more time to prepare, and it agreed to extend the deposition so Plaintiffs could ask more questions. Second, Apple has agreed not to rely affirmatively on the notebooks. Third, Apple has disclosed the relevant time-line of events without revealing any privileged information (e.g., Apple spoke with O'Reilly regarding document collection in early 2021; Apple discovered the existence and relevance of the notebooks during deposition preparation in the summer of 2022). Considering these circumstances, along with the fact that Plaintiffs have not requested any additional substantive information, the Court finds the late disclosure harmless.

This finding notwithstanding, sufficient procedural facts concerning the timing of production have been disclosed to allow Plaintiffs to conduct a focused cross-examination on this point. That is, without seeking privileged information, Plaintiffs may cross-examine O'Reilly concerning the timing of the notebooks' disclosure (e.g., without revealing the substance of any communications with counsel, why didn't you turn over the notebooks with the rest of your documents in early 2021). Plaintiffs may argue what inferences should be drawn from this evidence, but given the finding of harmlessness, for the same reasons explained above, the Court concludes that an adverse inference jury instruction would be disproportional to the late disclosure.

Accordingly, the Court **GRANTS** in part and **DENIES** in part the requested relief.

## IV. CONCLUSION

For the foregoing reasons, the Court further **GRANTS** in part and **DENIES** in part the deferred portions of the Motion.

The Court asked the parties to meet and confer and notify the Court via email to the Courtroom Deputy Clerk whether any parts of the sealed order should be redacted from the publicly filed version of the order. Plaintiffs submitted proposed redactions. The Court has reviewed the proposed redactions, however the Court finds they do not fall within the scope of the prior sealing orders. The proposed redactions related to high-level, general information rather than confidential or trade secret information. Accordingly, this order is published in its entirety without redactions.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | eva | |