1   MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2   THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5   Tel.: 650.858.6000 / Fax: 650.858.6100

6   JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   One Front Street, Suite 3500
    San Francisco, CA 94111
9   Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
      HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16              **UNITED STATES DISTRICT COURT**
17   **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18  MASIMO CORPORATION,                CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
19  CERCACOR LABORATORIES, INC.,       **APPLE'S MEMORANDUM**
    a Delaware corporation,            **REGARDING PLAINTIFFS'**
20                                      **DISCLOSURE OF ALLEGED LOST**
                    Plaintiffs,         **PROFITS**
21
          v.
22
    APPLE INC.,
23  a California corporation,

24                  Defendant.

25

26      REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

27

28

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

APPLE'S MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURE OF ALLEGED LOST PROFITS
CASE NO. 8:20-cv-00048-JVS (JDEx)

1

2

**TABLE OF CONTENTS**

3     INTRODUCTION ................................................................................................ 1

4     ARGUMENT ...................................................................................................... 2

5     I.      PLAINTIFFS' NEW LOST PROFIT DISCLOSURE IS GROSSLY UNTIMELY AND
              PREJUDICIAL. ........................................................................................... 2

6

7             A.      Plaintiffs Have Repeatedly Delayed—And Been Warned About
                      Their Delays—In Disclosing Damages Theories. ................................... 2

8             B.      Plaintiffs' Disclosure Of Their Newest Lost Profits Theory Is
                      Untimely And Prejudicial. ....................................................................... 4

9

10    II.     PLAINTIFFS' NEW LOST PROFIT DISCLOSURE RELIES ON STRICKEN AND
              UNTIMELY DISCLOSED INFORMATION. ...................................................... 7

11    III.    PLAINTIFFS' NEW LOST PROFIT CANNOT BE PRESENTED WITHOUT A FRCP
              26(A)(2)(B) EXPERT WITNESS. ................................................................. 12

12
      CONCLUSION .................................................................................................. 13
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Centricut, LLC v. Esab Grp., Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004) .........................................................................12

5

6

*Chaudhry v. Smith*,
    No. 1:16-CV-01243-SAB, 2020 WL 869115 (E.D. Cal. Feb. 21, 2020).............7

7

8

*Hoffman v. Constr. Prot. Servs., Inc.*,
    541 F.3d 1175 (9th Cir. 2008) ..............................................................................6

9

10

*tagTrends, Inc. v. Nordstrom, Inc.*,
    No. SACV-13-00563-JVS, 2014 WL 12561604 (C.D. Cal. Sept. 30,
    2014) (Selna, J.) ....................................................................................................6

11

12

13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ..............................................................................6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

# INTRODUCTION

2      Following the Court's guidance during the pretrial conference, Apple submits

3  this memorandum to address the severe untimeliness and substantive deficiencies of

4  Plaintiffs' "disclosure" of alleged lost profits damages.  Earlier this week, this Court

5  correctly observed that Apple was entitled to a calculation of lost profits with sufficient

6  time to prepare a defense.  Yet, Plaintiffs' disclosure reveals that they—having had

7  their damages expert's opinions on lost profits stricken—instead intend to proceed on a

8  never-previously-disclosed "fact" theory that would nearly ***double*** the damages

9  amount of their expert's stricken theory.  Undersigned counsel is not aware of any

10  case, in any area of the law, where a party lost a damages theory on *Daubert* and was

11  then permitted to pursue nearly-doubled damages through fact witnesses based on a

12  new calculation.  That Plaintiffs' only unveiled their theory now, on the eve of trial—

13  and only after the Court directed them to disclose it—makes this gambit even more

14  problematic.

15      Plaintiffs' belated disclosure takes the form of a brief e-mail sent to Apple on

16  March 15, 2023 that reveals for the first time Plaintiffs' intent to seek ███████  in

17  purported lost profits.  Not only does this never-before-disclosed calculation nearly

18  double the only lost profits calculations that had been disclosed (the now-stricken

19  opinion of Plaintiffs' expert Jeffrey Kinrich), it is also apparent from Plaintiffs' e-mail

20  and their memorandum of fact and law that the new calculation is facially inadmissible

21  and unreliable.  Indeed, Plaintiffs' new calculation relies on the same untimely

22  disclosed facts and opinions the Court ***already excluded*** in addition to other untimely

23  disclosed and inadmissible facts, including hearsay.

24      Plaintiffs' blatant disregard of their discovery obligations warrants sanctions

25  under Federal Rule of Civil Procedure 37(c)—which, at a minimum, should include

26  preclusion of this new damages request at trial.  Plaintiffs have been repeatedly put on

27  notice by both this Court and the Special Master that they could not withhold their

28

APPLE'S MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURE OF LOST PROFITS

1                          CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   damages claims and theories from Apple.  Plaintiffs ignored those warnings.  Now,

2   Plaintiffs seek more in lost profits than they ever claimed before, without giving Apple

3   the necessary notice to challenge the unreasonable bases for their claim.  And while

4   Apple need not show prejudice, forcing Apple to defend itself against an inflated and

5   untimely-disclosed ▆▆▆▆▆▆ dollar damages demand with just weeks to prepare is

6   manifestly and undeniably prejudicial.

7        Apple therefore respectfully requests a telephone conference with the Court (or,

8   if the Court prefers, an in-person hearing) and submits that Plaintiffs should be

9   precluded from seeking lost profits at trial.

10                                   **ARGUMENT**

11   I.      **PLAINTIFFS' NEW LOST PROFIT DISCLOSURE IS GROSSLY UNTIMELY AND**

12           **PREJUDICIAL.**

13           A.      **Plaintiffs Have Repeatedly Delayed—And Been Warned About Their**

14                   **Delays—In Disclosing Damages Theories.**

15        Both this Court and the Special Master repeatedly cautioned Plaintiffs to clearly

16   and timely disclose their damages theories before the close of fact discovery.  *See, e.g.*,

17   Dkt. 1031 at 11-12 (This Court "is not amenable to a party withholding necessary

18   discovery until the eve of the close of discovery and/or expert reports[.]") (quoting

19   Dkt. 816); Dkt. 617 at 6 (Special Master ordering Plaintiffs to provide damages

20   disclosures under FRCP 26(a) and noting that "Masimo has not provided any

21   information yet about whether 'this is a $1 case or a case worth billions.'").  Plaintiffs

22   were warned that they "must carefully consider" their resistance to damages-related

23   discovery because "Apple should be able to delve into [Plaintiffs'] *specific damages*

24   *theory* while it *still has time remaining in discovery* to do so," and that "resistance

25   will serve only to limit the damages [they] can seek."  Dkt. 816 at 10-11.[1]  Plaintiffs

26

27   ─────────────────

     [1] All emphases added unless otherwise indicated.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

nevertheless withheld their damages theories during fact discovery and attempted

instead to "backdoor their damages case through piecemeal written disclosures

combined with proposed belated declarations" that "contain[ed] previously

undisclosed, fully-formed damages theories."  Dkt. 1031 at 10.  This Court granted

Apple's motion to strike those belated theories, noting even at that time—*four months*

before trial—that allowing Plaintiffs to proceed with them "would prejudice Apple at

this late hour."  *Id.*  Since then, Plaintiffs' pattern of delay and obfuscation has

continued, if not intensified.

During the February 6, 2023 hearing on summary judgment and *Daubert*

motions, this Court observed that "in the abstract [Plaintiffs could] put in a damages

case without [their expert]," but warned that "if [Plaintiffs] go that route, there would

be disclosure issues."  2/6/23 Hr'g Tr. at 5:23-6:9.  Notwithstanding this warning, after

the Court excluded Plaintiffs' expert Mr. Kinrich's lost profits opinion, Plaintiffs

provided no disclosure to Apple of any lost profits they intended to seek or how they

intended to prove it.  Indeed, when Plaintiffs provided their initial jury instructions to

Apple on February 22, 2023, they did not even seek an instruction on lost profits.[2]

On February 27, 2023, Plaintiffs filed their Memorandum of Contentions of Fact

and Law.  Dkt. 1430.  The term "lost profits" is mentioned just once in that

memorandum and only in the legal standards section.  *Id.* at 5.  Instead, Plaintiffs

vaguely claimed that "Masimo [w]as [h]armed" and that Masimo CEO Joe Kiani "will

testify that, ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████,"  and "will testify to

_____

[2] Apple's proposed jury instructions did include the CACI model jury instruction on lost profits in view of the Court's prior observation that Plaintiffs could theoretically pursue lost profits damages.  Of course, Apple's proposal was not with prejudice to its right to challenge the insufficiency of Plaintiffs' disclosures or evidence on the topic.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  pricing and Masimo's standard margins." *Id.* at 38, 40.  Nowhere did Plaintiffs

2  disclose *what* amount of lost profits they were seeking or how they would calculate it.

3      **B.      Plaintiffs' Disclosure Of Their Newest Lost Profits Theory Is**

4              **Untimely And Prejudicial.**

5          On March 15—less than *three weeks* before trial—Plaintiffs provided

6  identification of their new lost profits demand: ██████████ through Q3 2022.[3]  Ex. 1

7  [Lost Profits Disclosure E-mail Thread] at 3.  According to Plaintiffs, "Masimo

8  repeatedly disclosed its contention that, but for Apple's misappropriation, Apple would

9  have purchased sensor modules from Masimo" and "Masimo's contention remains

10 unchanged." *Id.*  But while Masimo's "contention" allegedly remains unchanged, its

11 computation is entirely new and indeed exceeds Mr. Kinrich's now-stricken lost profits

12 calculation by several ██████ dollars.

13         As this Court noted at the Pretrial Conference earlier this week, Federal Rule of

14 Civil Procedure 26 requires a party to disclose "a computation of each category of

15 damages claimed" and the documents and evidence that underpin the computation.

16 Fed. R. Civ. P. 26(a)(1)(A)(iii).

17         Plaintiffs' March 15 "disclosure" confirms that Plaintiffs failed to meet their

18 obligations under FRCP 26.  *First*, Plaintiffs do not cite to any portion of their

19 responses to Apple's interrogatory seeking Plaintiffs' damages contentions or any

20 other disclosure providing their new lost profits demand.  There is none.  Instead,

21 Plaintiffs suggest that their March 7, 2022 supplemental initial disclosures "provided

22 the computation of Masimo's damages."  Ex. 1 at 2.  But Plaintiffs' *most recent*

23 supplemental initial disclosures, served on August 3, 2022, stated that Plaintiffs "ha[d]

24 *not yet made a computation* of any category of damages pursuant to Fed. R. Civ. P.

25 26(a)(1)(A)(iii)."  Ex. 2 [8/3/22 Amended Disclosures] at 10.  In any event, Plaintiffs'

26

27 [3] Plaintiffs indicate they will seek to increase this number when Apple produces updated sales data through its most recent fiscal quarter.  Ex. 1 at 3.

28

Wilmer Cutler Pickering Hale and Dorr LLP

1   March 2022 disclosure says nothing about the alleged sensor module theory Plaintiffs

2   now advance or the computation of lost profits Plaintiffs now seek to introduce at trial;

3   it simply states that ███████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ███████████████████████████████████████████

8   Ex. 3 [3/7/22 Amended Disclosures] at 7.  This disclosure similarly does not identify

9   any evidentiary basis for the ███████████████ it assumes.  In short, Plaintiffs'

10  reliance on their March 2022 initial disclosures is plainly a red herring, especially

11  considering that when Mr. Kinrich later provided his (now-stricken) damages estimate

12  in October 2022, he calculated that lost profits would amount to a maximum of ████

13  ██████ in lost profits—███████ less than the minimum amount computed in that

14  disclosure.

15      ***Second***, Plaintiffs justify their new calculation as based on statements made for

16  the first time in their summary judgment opposition—filed months after discovery

17  closed.  Ex. 1.  But nowhere in that opposition did Plaintiffs indicate the amount of

18  their claimed lost profits, or even the amount of any specific input to such a

19  calculation.  The testimony Plaintiffs cited from Mr. Kiani and Bilal Muhsin in support

20  of the proposed "███████████," Dkt. 1218 at 21, refers to a ***range*** of pricing ████

21  ███████████.  Even under Plaintiffs' own generous interpretation, they at most

22  "██████████████████████████████████████████████████████" Ex. 1

23  at 3.  Plaintiffs provided no information for how that price range—based on ███████

24  ████████████—would translate to the specific price of a hypothetical module sold to

25  Apple years earlier.  The evidence Plaintiffs cited with respect to Masimo's profit

26  margin similarly disclosed a range of margins, also dating from 2021, and also without

27  any explanation of how those overall profit margins would allegedly translate to the

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  margins on a sensor module ███████████████.  *See* Dkt. 1218 at 21; Dkt. 1135-

2  6 (Ex. T).  And Plaintiffs did not identify from which Series of Apple Watch or how

3  many units from those Series they intended to claim lost profits.  As "disclosed,"

4  Apple had no way of determining what Plaintiffs were actually seeking based on their

5  summary judgment briefing.

6         It was not until their March 15 e-mail that Plaintiffs revealed that they are

7  seeking ███ per unit profit for every Apple Watch Series 4 and later, for a total of

8  more than ████████.  This calculation comes too late.  *See tagTrends, Inc. v.*

9  *Nordstrom, Inc.*, 2014 WL 12561604, at \*5 (C.D. Cal. Sept. 30, 2014) (Selna, J.)

10  (finding "[p]laintiffs' failure to disclosure their damages computation prior to the filing

11  of their [summary judgment opposition] was clearly unjustified"); *Hoffman v. Constr.*

12  *Prot. Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming district court's order

13  excluding damages evidence because they were not disclosed as of the time of motions

14  *in limine*).

15         Because Plaintiffs' disclosure of their lost profits theory was untimely, it must

16  be excluded under FRCP 37(c)(1) unless "the failure to disclose was substantially

17  justified or harmless."  *tagTrends, Inc.*, 2014 WL 12561604, at \*5; *see also Yeti by*

18  *Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule

19  37(c)(1) gives teeth to these requirements by forbidding the use at trial of any

20  information required to be disclosed by Rule 26(a) that is not properly disclosed").

21  Plaintiffs cannot reasonably meet their burden to show substantial justification or

22  harmlessness.  Plaintiffs have been on notice throughout this case that they were

23  required to timely disclose their damages demands and theories.  Instead, they waited

24  until the eleventh-hour to inform Apple that they intend to seek █████ more than they

25  had ever previously sought, and only made this disclosure because this Court directed

26  them to do so.  Apple should not be forced to scramble to defend itself against a new

27  damages theory that it has had no real opportunity to prepare for.

28

APPLE'S MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURE OF LOST PROFITS

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

II.    **PLAINTIFFS' NEW LOST PROFIT DISCLOSURE RELIES ON STRICKEN AND UNTIMELY DISCLOSED INFORMATION.**

Even if not excluded as grossly untimely, Plaintiffs' new calculation should be excluded because it continues to be premised on untimely disclosed and already stricken information.

***First***, Plaintiffs' new lost profits calculation relies on precisely the same type of hypothetical fact witness opinion that the Court has already deemed improper absent a full FRCP 26(a)(2)(B) expert report.  In granting Apple's motion to strike the FRCP 26(a)(2)(C) disclosure of Mr. Muhsin, the Court explained that the disclosure "veer[ed] from [Mr. Muhsin's] percipient knowledge … when he opine[d] on the hypothetical scenario of what Masimo ***would have done*** ███████████████████ ████████████████████." Dkt. 1031 at 6 (internal quotation marks omitted); *see also Chaudhry v. Smith*, 2020 WL 869115, at *21 (E.D. Cal. Feb. 21, 2020) ("[O]pinions developed at a later time or upon a hypothetical set of facts … [are] inadmissible opinion testimony" without a FRCP 26(a)(2)(B) report).  In their memorandum of fact and law, Plaintiffs indicate they intend to elicit the same improper opinion testimony simply through a different executive.  Specifically, Plaintiffs now state that "████████████████████ ███████████████████████████████████████" to Apple.  Dkt. 1430 at 39.  Had this intended testimony been disclosed when Mr. Muhsin's was, Apple would have moved to strike it too.  Plaintiffs should not be permitted to simply repackage the same excluded opinion by introducing it through a different witness.

Plaintiffs similarly assert that "Kiani, Muhsin, and Scruggs will testify that no technological barrier prevented Masimo from designing ████████████████ ███████████." Dkt. 1430 at 40.  But once again, such generalized and conclusory testimony necessarily involves hypothetical opinion because Masimo never

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  supplied a sensor module *to Apple*.  This Court already "***expressly excluded*** this

2  portion of the Muhsin disclosure" regarding Masimo's purported ability to "███

3  ████████████████████████████████████████ contemplated by

4  Plaintiffs' lost profits theory "because such opinions went beyond Muhsin's percipient

5  knowledge."  Dkt. 1283 at 7.[4]

6        Plaintiffs also state that to prove damages, "Kiani, Muhsin and Scruggs will also

7  testify to the technical capabilities and accuracy of the ██████████████."  Dkt.

8  1430 at 40.  The alleged accuracy ████████ has never been disclosed as relevant

9  to damages.  *See* Ex. 4 [Pls. Ninth Supp. Resp. to Rog 17] (Plaintiffs' damages

10  contentions, which make no reference to ██████████████).  This Court

11  previously excluded Apple's technical expert's testing showing the accused feature

12  purportedly relating to one alleged trade secret does not affect the accuracy of Apple

13  Watch (including as compared to Masimo's W1 watch) because that theory was not

14  disclosed during fact discovery.  Dkt. 1280 at 10-13.  Plaintiffs should similarly be

15  precluded from introducing undisclosed evidence regarding their alleged ████

16  ████ accuracy.[5]

17        In short, Plaintiffs' new lost profit calculation relies on the same "now-excluded

18  opinion that Masimo would have provided a sensor module to Apple and the estimated

19  timeline on which Masimo would have done so."  Dkt. 1283 at 7.  Because it is built

---

[4] Plaintiffs' March 15 e-mail states that they will be claiming lost profits for "units of Series 4 and later Apple Watches."  Ex. 1 at 3.  But they have no basis for why their purported lost profits begin with Series 4 unless they introduce hypothetical opinion testimony about when the module would be completed, which this Court has excluded. Dkt. 1031 at 6.

[5] To the extent Plaintiffs are permitted to introduce any such evidence regarding accuracy of their W1 Watch or sensor module and suggest any relevance of that evidence to the value of the alleged trade secret or damages, Apple should be permitted to respond with its testing evidence showing that the accused features do not provide any improved accuracy to Apple Watch.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   on the same foundation as Mr. Kinrich's stricken lost profits theory, this new

2   calculation must also fall.

3        ***Second***, the "evidence" on which Plaintiffs now rely to calculate their new

4   alleged per-unit lost profits was not timely disclosed, nor is it admissible for such

5   purpose.  Plaintiffs allege they calculated their new lost profits demand based on (1)

6   deposition testimony of Mr. Kiani allegedly "████████████████████████████████

7   ████████████████████████████████████████████████████████"; and (2)

8   a document showing that Masimo's "profit margin is about 65% depending on the

9   year."  Ex. 1 at 2.  Neither input was sufficiently disclosed.

10        The cited deposition testimony from Mr. Kiani relates specifically to alleged

11   ████████████████████████████████████:



Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2  ███████████████████████████

3

4  Dkt. 1096-10 [Kiani Dep. Tr.] at 166:11-17, 167:4-17.

5      Notably, ███████████████████████████████████████

6  ███████████████████████████  Dkt. 1096-12 [8/19/22 Muhsin Dep. Tr.] at

7  300:2-18 (admitting ████████████████████████████████████

8  ████████████████████████████████████

9  ████████████████████  Dkt. 1096-10 [8/5/22 Kiani Dep Tr.] at 147:7-13

10  (admitting that "█████████████████████████████████████████

11  ████████████████████████████").  In any event, Plaintiffs never identified this

12  alleged ████████████  as relevant to any calculation of lost profits during

13  discovery.  To the contrary, in response to Apple's interrogatory seeking Plaintiffs'

14  damages contention, Plaintiffs identified as "facts that may be used **to determine a**

15  **reasonable royalty** in this matter," that "████████████████████████████

16  ████████████████████████████████████████████████

17  ██████████████████████████████," and that ███████████

18  ████████████████████████████████████████

19  ██████████████████████████████████" Ex. 4 at 12, 18.

20  And in his now-stricken opinion, regarding the "[████████████████████████]" Mr.

21  Kinrich opined that Masimo's ████████████████  would **not** have been the price

22  agreed to by Apple and Masimo in the but-for world.  *See* Dkt. 1171-3 [Kinrich Rpt.]

23  at 54-56.  To allow Plaintiffs to proceed with a ████████-dollar damages theory

24  built on an input that was not only **not** disclosed for that purpose, but that Plaintiffs'

25  own expert assured would **not** be used in such a way is the antithesis of the disclosure

26  requirements of FRCP 26.

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Moreover, Mr. Kiani's testimony about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (and

2    therefore Plaintiffs' lost profits theory built upon it) must be excluded as inadmissible

3    hearsay.  Plaintiffs seek to have Mr. Kiani testify about an out-of-court statement for

4    purposes of its truth—i.e., how much ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮.  Plaintiffs have never identified or produced any document—let alone one that

6    would meet any hearsay exception—to substantiate this ▮▮▮▮▮▮.  Nor have

7    Plaintiffs identified any reason, or witness who could explain, why ▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮ would be an appropriate price for hypothetical module sales to Apple

9    that allegedly would have occurred years before.

10    Plaintiffs' alleged evidence of the profit margin they would have earned on these

11    imagined sales fares no better.  Plaintiffs identify an SEC 10-K filing reporting

12    company-wide gross margins of 65.2% for the year ending January 1, 2022, and 65.0%

13    for the year ending January 2, 2021 as evidence of the applicable profit margin, which

14    they claim is 65.0% for their calculation.  Ex. 1 at 2 (citing Dkt. 1135-6 (Ex. T to

15    Plaintiffs' summary judgment opposition [MASA03357288])).  But at no point during

16    fact discovery did Plaintiffs disclose an intent to rely on Masimo's company-wide

17    profit margins as a basis for any lost profits calculation.  Indeed, the 10-K cited in

18    Plaintiffs' e-mail and summary judgment opposition was never cited in their damages

19    contentions.  *See* Ex. 4.  Moreover, as noted above, Masimo has ▮▮▮▮▮▮▮▮

20    ▮▮▮▮ so there is no basis on which to assume this profit margin would be applicable

21    to that product.  Further, as with Masimo's alleged pricing evidence, this margin post-

22    dates the alleged sensor sales to Apple by many years.[6]

23    Finally, Plaintiffs offer an alternative basis for their new ▮▮▮▮▮▮

24    calculation, by "starting at Masimo's per unit manufacturing costs and applying its

25    _____

26    [6] Plaintiffs argue in their memorandum of fact and law that "[t]he amount of damages need not be calculated with precision."  Dkt. 1430 at 5.  But that principle is irrelevant

27    here, where Plaintiffs have not provided any admissible basis to calculate their alleged lost profits.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    profit margin." Ex. 1 at 3.  Here too Plaintiffs make explicit their intention to continue

2    to rely on information this Court has already stricken, pointing to "a 2021 spreadsheet

3    (MASA 1097115) that documents Masimo's costs to manufacture ████████████████

4    ██████████████████" *Id.*  This Court has now ***twice*** excluded that same spreadsheet,

5    most recently in its ruling granting Apple's *Daubert* motion, observing that:

6    "Plaintiffs proffered the 2021 Manufacturing Cost Data" but "[t]his document is an

7    analysis prepared by Priddell that the Court excluded in a previous order as exceeding

8    Priddell's percipient knowledge and being prepared in anticipation of litigation." Dkt.

9    1283 at 8.

10          In short, the inputs required to calculate Plaintiffs' purported lost profits were

11   not properly disclosed and should be ruled inadmissible.  Because there is no

12   admissible means by which Plaintiffs can present their calculation, Plaintiffs should be

13   precluded from seeking lost profits at trial.

14   **III.    PLAINTIFFS' NEW LOST PROFIT CANNOT BE PRESENTED WITHOUT A FRCP**

15   **         26(A)(2)(B) EXPERT WITNESS.**

16          In addition to suffering from the numerous disclosure and evidentiary issues

17   above, Plaintiffs' new "theory" is unreliable and not proper subject matter to be

18   introduced to a jury absent sponsoring expert opinion.  *See, e.g., Centricut, LLC v.*

19   *Esab Grp., Inc.*, 390 F.3d 1361, 1369, 1369 n.5 (Fed. Cir. 2004) ("[R]elevant expert

20   testimony regarding matters beyond the comprehension of laypersons is sometimes

21   essential[.]" (collecting cases)).  Here, that Plaintiffs' new lost profits calculation is

22   nearly ***double*** Mr. Kinrich's stricken calculations alone casts doubt on the reliability of

23   this new calculation.  But a review of the new number shows that it so much higher

24   than Mr. Kinrich's precisely because it skirts the necessary factors required to proffer a

25   reliable damages number.  In fact, Plaintiffs' new lost profits calculation is at odds

26   with Mr. Kinrich's stricken calculations—making the new calculations even more

27   problematic than Mr. Kinrich's (which were themselves deeply flawed).  As Mr.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  Kinrich's stricken calculations recognized, data from 2021 and later needs to be

2  adjusted to be reliably used to calculate profits allegedly earned years earlier.  For

3  example, Mr. Kinrich acknowledged that even if the alleged 2021 manufacturing cost

4  data was admissible (and it is not), it should not be used as-is but would need to be

5  adjusted (including for the time-value of money) in order to calculate Plaintiffs'

6  purported lost profits.  *See, e.g.*, Dkt. 1171-3 [Kinrich Rpt.] at 53-54 (█████████

7  ████████████████████████████████████████████████████████████████████

8  ██████").  Moreover, as Mr. Kinrich also acknowledged, even a module price of ███

9  (significantly less than the ████ Plaintiffs now proffer, Ex. 1 at 3), would have

10 required Apple to increase its Watch pricing and, accordingly, sell fewer watches.

11 Dkt. 1171-3 [Kinrich Rpt.] at 57-59.  Plaintiffs' new calculation is inconsistent with

12 these basic economic realities, and they should not be permitted to proceed with an

13 undisclosed lost profits calculation that would actually fly in the face of what their

14 expert did disclose.  Such a calculation would not pass muster under *Daubert*.

15 Plaintiffs should not be rewarded with a substantially higher damages demand by

16 proffering a patently unreliable calculation without an expert, particularly where Apple

17 has had insufficient notice or opportunity to respond, including through its own

18 experts.

19                                      **CONCLUSION**

20        Apple respectfully submits that, at this stage and due to the disclosure deficiencies

21 described above, Plaintiffs should be precluded from seeking any lost profits damages

22 at trial and requests a conference with the Court to discuss this issue.

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Dated:  March 17, 2023                    Respectfully submitted,

2

3                                              JOSEPH J. MUELLER

4                                              MARK D. SELWYN
                                               AMY K. WIGMORE
5                                              JOSHUA H. LERNER

6                                              SARAH R. FRAZIER
                                               NORA Q.E. PASSAMANECK
7                                              THOMAS G. SPRANKLING

8                                              WILMER CUTLER PICKERING HALE AND
                                               DORR LLP
9

10                                             BRIAN A. ROSENTHAL
                                               GIBSON, DUNN & CRUTCHER LLP
11

12                                             KENNETH G. PARKER
                                               HAYNES AND BOONE, LLP
13

14

15                                             By:  /s/ *Mark D. Selwyn*

16                                                   Mark D. Selwyn

17

18                                             *Attorneys for Defendant Apple Inc.*

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

## CERTIFICATE OF COMPLIANCE

2     The undersigned, counsel of record for Defendant Apple, Inc., certifies that this

3   brief contains 4077 words, which [choose one]:

4      X  complies with the word limit of L.R. 11-6.1

5     ___  complies with the word limit set by court order dated [date].

6

7   Dated:  March 17, 2023          Respectfully submitted,

8

9                                   MARK D. SELWYN

                                    AMY K. WIGMORE

10                                  JOSHUA H. LERNER

                                    SARAH R. FRAZIER

11                                  NORA Q.E. PASSAMANECK

                                    THOMAS G. SPRANKLING

12                                  WILMER CUTLER PICKERING HALE AND

                                    DORR LLP

13

14

                                    BRIAN A. ROSENTHAL

15                                  GIBSON, DUNN & CRUTCHER LLP

16

                                    KENNETH G. PARKER

17                                  HAYNES AND BOONE, LLP

18

19

20                                  By:  /s/ *Mark D. Selwyn*

                                         Mark D. Selwyn

21

22

                                    *Attorneys for Defendant Apple Inc.*

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP