MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURE OF ALLEGED LOST PROFITS** |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   JOSEPH J. MUELLER, *pro hac vice*
     joseph.mueller@wilmerhale.com
2   SARAH R. FRAZIER, *pro hac vice*
     sarah.frazier@wilmerhale.com
3   WILMER CUTLER PICKERING
     HALE AND DORR LLP
4   60 State Street
   Boston, MA 02109
5   Tel.: 617.526.6000 / Fax: 617.526.5000

6   NORA Q.E. PASSAMANECK, *pro hac vice*
     nora.passamaneck@wilmerhale.com
7   WILMER CUTLER PICKERING
     HALE AND DORR LLP
8   1225 Seventeenth Street, Suite 2600
   Denver, CO 80202
9   Tel.: 720.274.3152 / Fax: 720.273.3133

10  BRIAN A. ROSENTHAL, *pro hac vice*
     brosenthal@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
12  200 Park Avenue
   New York, NY 10166-0193
13  Tel.: 212.351.2339 / Fax: 212.817.9539

14  KENNETH G. PARKER, SBN 182911
     ken.parker@haynesboone.com
15  HAYNES AND BOONE, LLP
   660 Anton Boulevard, Suite 700
16  Costa Mesa, CA 92626
   Tel.: 650.949.3014 / Fax: 949.202.3001

APPLE'S MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURE OF ALLEGED LOST PROFITS
CASE NO. 8:20-cv-00048-JVS (JDEx)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.  PLAINTIFFS' NEW LOST PROFIT DISCLOSURE IS GROSSLY UNTIMELY AND PREJUDICIAL. ............................................................................................. 2

    A.  Plaintiffs Have Repeatedly Delayed—And Been Warned About Their Delays—In Disclosing Damages Theories. ..................................... 2

    B.  Plaintiffs' Disclosure Of Their Newest Lost Profits Theory Is Untimely And Prejudicial. ........................................................................ 4

II. PLAINTIFFS' NEW LOST PROFIT DISCLOSURE RELIES ON STRICKEN AND UNTIMELY DISCLOSED INFORMATION. ................................................. 7

III. PLAINTIFFS' NEW LOST PROFIT CANNOT BE PRESENTED WITHOUT A FRCP 26(A)(2)(B) EXPERT WITNESS. ............................................................. 12

CONCLUSION .................................................................................................... 13

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

*Centricut, LLC v. Esab Grp., Inc.*,
   390 F.3d 1361 (Fed. Cir. 2004) .......................................................................12

6

7

*Chaudhry v. Smith*,
   No. 1:16-CV-01243-SAB, 2020 WL 869115 (E.D. Cal. Feb. 21, 2020).............7

8

9

*Hoffman v. Constr. Prot. Servs., Inc.*,
   541 F.3d 1175 (9th Cir. 2008) ..............................................................................6

10

11

*tagTrends, Inc. v. Nordstrom, Inc.*,
   No. SACV-13-00563-JVS, 2014 WL 12561604 (C.D. Cal. Sept. 30,
   2014) (Selna, J.)....................................................................................................6

12

13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ..............................................................................6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

Following the Court's guidance during the pretrial conference, Apple submits this memorandum to address the severe untimeliness and substantive deficiencies of Plaintiffs' "disclosure" of alleged lost profits damages.  Earlier this week, this Court correctly observed that Apple was entitled to a calculation of lost profits with sufficient time to prepare a defense.  Yet, Plaintiffs' disclosure reveals that they—having had their damages expert's opinions on lost profits stricken—instead intend to proceed on a never-previously-disclosed "fact" theory that would nearly ***double*** the damages amount of their expert's stricken theory.  Undersigned counsel is not aware of any case, in any area of the law, where a party lost a damages theory on *Daubert* and was then permitted to pursue nearly-doubled damages through fact witnesses based on a new calculation.  That Plaintiffs' only unveiled their theory now, on the eve of trial—and only after the Court directed them to disclose it—makes this gambit even more problematic.

Plaintiffs' belated disclosure takes the form of a brief e-mail sent to Apple on March 15, 2023 that reveals for the first time Plaintiffs' intent to seek ██████████ in purported lost profits.  Not only does this never-before-disclosed calculation nearly double the only lost profits calculations that had been disclosed (the now-stricken opinion of Plaintiffs' expert Jeffrey Kinrich), it is also apparent from Plaintiffs' e-mail and their memorandum of fact and law that the new calculation is facially inadmissible and unreliable.  Indeed, Plaintiffs' new calculation relies on the same untimely disclosed facts and opinions the Court ***already excluded*** in addition to other untimely disclosed and inadmissible facts, including hearsay.

Plaintiffs' blatant disregard of their discovery obligations warrants sanctions under Federal Rule of Civil Procedure 37(c)—which, at a minimum, should include preclusion of this new damages request at trial.  Plaintiffs have been repeatedly put on notice by both this Court and the Special Master that they could not withhold their

Wilmer Cutler
Pickering Hale
and Dorr LLP

damages claims and theories from Apple.  Plaintiffs ignored those warnings.  Now, Plaintiffs seek more in lost profits than they ever claimed before, without giving Apple the necessary notice to challenge the unreasonable bases for their claim.  And while Apple need not show prejudice, forcing Apple to defend itself against an inflated and untimely-disclosed ███████ dollar damages demand with just weeks to prepare is manifestly and undeniably prejudicial.

Apple therefore respectfully requests a telephone conference with the Court (or, if the Court prefers, an in-person hearing) and submits that Plaintiffs should be precluded from seeking lost profits at trial.

## ARGUMENT

**I.    PLAINTIFFS' NEW LOST PROFIT DISCLOSURE IS GROSSLY UNTIMELY AND PREJUDICIAL.**

### A.    Plaintiffs Have Repeatedly Delayed—And Been Warned About Their Delays—In Disclosing Damages Theories.

Both this Court and the Special Master repeatedly cautioned Plaintiffs to clearly and timely disclose their damages theories before the close of fact discovery.  *See, e.g.*, Dkt. 1031 at 11-12 (This Court "is not amenable to a party withholding necessary discovery until the eve of the close of discovery and/or expert reports[.]") (quoting Dkt. 816); Dkt. 617 at 6 (Special Master ordering Plaintiffs to provide damages disclosures under FRCP 26(a) and noting that "Masimo has not provided any information yet about whether 'this is a $1 case or a case worth billions.'").  Plaintiffs were warned that they "must carefully consider" their resistance to damages-related discovery because "Apple should be able to delve into [Plaintiffs'] *specific damages theory* while it *still has time remaining in discovery* to do so," and that "resistance will serve only to limit the damages [they] can seek."  Dkt. 816 at 10-11.[1]  Plaintiffs

---

[1] All emphases added unless otherwise indicated.

Wilmer Cutler
Pickering Hale
and Dorr LLP

nevertheless withheld their damages theories during fact discovery and attempted instead to "backdoor their damages case through piecemeal written disclosures combined with proposed belated declarations" that "contain[ed] previously undisclosed, fully-formed damages theories." Dkt. 1031 at 10.  This Court granted Apple's motion to strike those belated theories, noting even at that time—**four months** before trial—that allowing Plaintiffs to proceed with them "would prejudice Apple at this late hour."  *Id.*  Since then, Plaintiffs' pattern of delay and obfuscation has continued, if not intensified.

During the February 6, 2023 hearing on summary judgment and *Daubert* motions, this Court observed that "in the abstract [Plaintiffs could] put in a damages case without [their expert]," but warned that "if [Plaintiffs] go that route, there would be disclosure issues."  2/6/23 Hr'g Tr. at 5:23-6:9.  Notwithstanding this warning, after the Court excluded Plaintiffs' expert Mr. Kinrich's lost profits opinion, Plaintiffs provided no disclosure to Apple of any lost profits they intended to seek or how they intended to prove it.  Indeed, when Plaintiffs provided their initial jury instructions to Apple on February 22, 2023, they did not even seek an instruction on lost profits.[2]

On February 27, 2023, Plaintiffs filed their Memorandum of Contentions of Fact and Law.  Dkt. 1430.  The term "lost profits" is mentioned just once in that memorandum and only in the legal standards section.  *Id.* at 5.  Instead, Plaintiffs vaguely claimed that "Masimo [w]as [h]armed" and that Masimo CEO Joe Kiani "will testify that, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████," and "will testify to

---

[2] Apple's proposed jury instructions did include the CACI model jury instruction on lost profits in view of the Court's prior observation that Plaintiffs could theoretically pursue lost profits damages.  Of course, Apple's proposal was not with prejudice to its right to challenge the insufficiency of Plaintiffs' disclosures or evidence on the topic.

Wilmer Cutler Pickering Hale and Dorr LLP

1    pricing and Masimo's standard margins." *Id.* at 38, 40.  Nowhere did Plaintiffs

2    disclose **what** amount of lost profits they were seeking or how they would calculate it.

3        **B.     Plaintiffs' Disclosure Of Their Newest Lost Profits Theory Is**

4        **Untimely And Prejudicial.**

5        On March 15—less than **three weeks** before trial—Plaintiffs provided

6    identification of their new lost profits demand: ▉▉▉▉ through Q3 2022.[3]  Ex. 1

7    [Lost Profits Disclosure E-mail Thread] at 3.  According to Plaintiffs, "Masimo

8    repeatedly disclosed its contention that, but for Apple's misappropriation, Apple would

9    have purchased sensor modules from Masimo" and "Masimo's contention remains

10   unchanged." *Id.*  But while Masimo's "contention" allegedly remains unchanged, its

11   computation is entirely new and indeed exceeds Mr. Kinrich's now-stricken lost profits

12   calculation by several ▉▉▉▉ dollars.

13       As this Court noted at the Pretrial Conference earlier this week, Federal Rule of

14   Civil Procedure 26 requires a party to disclose "a computation of each category of

15   damages claimed" and the documents and evidence that underpin the computation.

16   Fed. R. Civ. P. 26(a)(1)(A)(iii).

17       Plaintiffs' March 15 "disclosure" confirms that Plaintiffs failed to meet their

18   obligations under FRCP 26.  **First**, Plaintiffs do not cite to any portion of their

19   responses to Apple's interrogatory seeking Plaintiffs' damages contentions or any

20   other disclosure providing their new lost profits demand.  There is none.  Instead,

21   Plaintiffs suggest that their March 7, 2022 supplemental initial disclosures "provided

22   the computation of Masimo's damages."  Ex. 1 at 2.  But Plaintiffs' **most recent**

23   supplemental initial disclosures, served on August 3, 2022, stated that Plaintiffs "ha[d]

24   **not yet made a computation** of any category of damages pursuant to Fed. R. Civ. P.

25   26(a)(1)(A)(iii)."  Ex. 2 [8/3/22 Amended Disclosures] at 10.  In any event, Plaintiffs'

26   _____

27   [3] Plaintiffs indicate they will seek to increase this number when Apple produces
     updated sales data through its most recent fiscal quarter.  Ex. 1 at 3.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

March 2022 disclosure says nothing about the alleged sensor module theory Plaintiffs now advance or the computation of lost profits Plaintiffs now seek to introduce at trial; it simply states that ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Ex. 3 [3/7/22 Amended Disclosures] at 7.  This disclosure similarly does not identify any evidentiary basis for the ██████████████ it assumes.  In short, Plaintiffs' reliance on their March 2022 initial disclosures is plainly a red herring, especially considering that when Mr. Kinrich later provided his (now-stricken) damages estimate in October 2022, he calculated that lost profits would amount to a maximum of ████ ██████ in lost profits—██████████ less than the minimum amount computed in that disclosure.

**Second**, Plaintiffs justify their new calculation as based on statements made for the first time in their summary judgment opposition—filed months after discovery closed.  Ex. 1.  But nowhere in that opposition did Plaintiffs indicate the amount of their claimed lost profits, or even the amount of any specific input to such a calculation.  The testimony Plaintiffs cited from Mr. Kiani and Bilal Muhsin in support of the proposed "██████████," Dkt. 1218 at 21, refers to a **range** of pricing ████████ ███████████████.  Even under Plaintiffs' own generous interpretation, they at most "████████████████████████████████████████████████" Ex. 1 at 3.  Plaintiffs provided no information for how that price range—based on ████████ ██████████████—would translate to the specific price of a hypothetical module sold to Apple years earlier.  The evidence Plaintiffs cited with respect to Masimo's profit margin similarly disclosed a range of margins, also dating from 2021, and also without any explanation of how those overall profit margins would allegedly translate to the

margins on a sensor module ████████████. *See* Dkt. 1218 at 21; Dkt. 1135-6 (Ex. T).  And Plaintiffs did not identify from which Series of Apple Watch or how many units from those Series they intended to claim lost profits.  As "disclosed," Apple had no way of determining what Plaintiffs were actually seeking based on their summary judgment briefing.

It was not until their March 15 e-mail that Plaintiffs revealed that they are seeking ██ per unit profit for every Apple Watch Series 4 and later, for a total of more than ████████.  This calculation comes too late.  *See tagTrends, Inc. v. Nordstrom, Inc.*, 2014 WL 12561604, at *5 (C.D. Cal. Sept. 30, 2014) (Selna, J.) (finding "[p]laintiffs' failure to disclosure their damages computation prior to the filing of their [summary judgment opposition] was clearly unjustified"); *Hoffman v. Constr. Prot. Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming district court's order excluding damages evidence because they were not disclosed as of the time of motions *in limine*).

Because Plaintiffs' disclosure of their lost profits theory was untimely, it must be excluded under FRCP 37(c)(1) unless "the failure to disclose was substantially justified or harmless." *tagTrends, Inc.*, 2014 WL 12561604, at *5; *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed").  Plaintiffs cannot reasonably meet their burden to show substantial justification or harmlessness.  Plaintiffs have been on notice throughout this case that they were required to timely disclose their damages demands and theories.  Instead, they waited until the eleventh-hour to inform Apple that they intend to seek ████ more than they had ever previously sought, and only made this disclosure because this Court directed them to do so.  Apple should not be forced to scramble to defend itself against a new damages theory that it has had no real opportunity to prepare for.

Wilmer Cutler
Pickering Hale
and Dorr LLP

## II. PLAINTIFFS' NEW LOST PROFIT DISCLOSURE RELIES ON STRICKEN AND UNTIMELY DISCLOSED INFORMATION.

Even if not excluded as grossly untimely, Plaintiffs' new calculation should be excluded because it continues to be premised on untimely disclosed and already stricken information.

***First***, Plaintiffs' new lost profits calculation relies on precisely the same type of hypothetical fact witness opinion that the Court has already deemed improper absent a full FRCP 26(a)(2)(B) expert report.  In granting Apple's motion to strike the FRCP 26(a)(2)(C) disclosure of Mr. Muhsin, the Court explained that the disclosure "veer[ed] from [Mr. Muhsin's] percipient knowledge … when he opine[d] on the hypothetical scenario of what Masimo ***would have done*** ███████████████████ ████████████████."  Dkt. 1031 at 6 (internal quotation marks omitted); *see also Chaudhry v. Smith*, 2020 WL 869115, at *21 (E.D. Cal. Feb. 21, 2020) ("[O]pinions developed at a later time or upon a hypothetical set of facts … [are] inadmissible opinion testimony" without a FRCP 26(a)(2)(B) report).  In their memorandum of fact and law, Plaintiffs indicate they intend to elicit the same improper opinion testimony simply through a different executive.  Specifically, Plaintiffs now state that "████████████████████████████ ████████████████████████████████████████" to Apple.  Dkt. 1430 at 39.  Had this intended testimony been disclosed when Mr. Muhsin's was, Apple would have moved to strike it too.  Plaintiffs should not be permitted to simply repackage the same excluded opinion by introducing it through a different witness.

Plaintiffs similarly assert that "Kiani, Muhsin, and Scruggs will testify that no technological barrier prevented Masimo from designing ████████████████ ████████████████."  Dkt. 1430 at 40.  But once again, such generalized and conclusory testimony necessarily involves hypothetical opinion because Masimo never

supplied a sensor module ***to Apple***.  This Court already "***expressly excluded*** this portion of the Muhsin disclosure" regarding Masimo's purported ability to "█ ███████████████████████████████████████████████ contemplated by Plaintiffs' lost profits theory "because such opinions went beyond Muhsin's percipient knowledge."  Dkt. 1283 at 7.[4]

Plaintiffs also state that to prove damages, "Kiani, Muhsin and Scruggs will also testify to the technical capabilities and accuracy of the ████████████████."  Dkt. 1430 at 40.  The alleged accuracy ████████ has never been disclosed as relevant to damages.  *See* Ex. 4 [Pls. Ninth Supp. Resp. to Rog 17] (Plaintiffs' damages contentions, which make no reference to ██████████████).  This Court previously excluded Apple's technical expert's testing showing the accused feature purportedly relating to one alleged trade secret does not affect the accuracy of Apple Watch (including as compared to Masimo's W1 watch) because that theory was not disclosed during fact discovery.  Dkt. 1280 at 10-13.  Plaintiffs should similarly be precluded from introducing undisclosed evidence regarding their alleged ████ ██████ accuracy.[5]

In short, Plaintiffs' new lost profit calculation relies on the same "now-excluded opinion that Masimo would have provided a sensor module to Apple and the estimated timeline on which Masimo would have done so."  Dkt. 1283 at 7.  Because it is built

---

[4] Plaintiffs' March 15 e-mail states that they will be claiming lost profits for "units of Series 4 and later Apple Watches."  Ex. 1 at 3.  But they have no basis for why their purported lost profits begin with Series 4 unless they introduce hypothetical opinion testimony about when the module would be completed, which this Court has excluded. Dkt. 1031 at 6.

[5] To the extent Plaintiffs are permitted to introduce any such evidence regarding accuracy of their W1 Watch or sensor module and suggest any relevance of that evidence to the value of the alleged trade secret or damages, Apple should be permitted to respond with its testing evidence showing that the accused features do not provide any improved accuracy to Apple Watch.

Wilmer Cutler
Pickering Hale
and Dorr LLP

on the same foundation as Mr. Kinrich's stricken lost profits theory, this new calculation must also fall.

**Second**, the "evidence" on which Plaintiffs now rely to calculate their new alleged per-unit lost profits was not timely disclosed, nor is it admissible for such purpose.  Plaintiffs allege they calculated their new lost profits demand based on (1) deposition testimony of Mr. Kiani allegedly "████████████████████████ ████████████████████████████████████████████████████████████"; and (2) a document showing that Masimo's "profit margin is about 65% depending on the year."  Ex. 1 at 2.  Neither input was sufficiently disclosed.

The cited deposition testimony from Mr. Kiani relates specifically to alleged ██████████████████████████████████:



Wilmer Cutler
Pickering Hale
and Dorr LLP

Dkt. 1096-10 [Kiani Dep. Tr.] at 166:11-17, 167:4-17.

Notably, ██████████████████████████████████████████ ████████████████████████████████ Dkt. 1096-12 [8/19/22 Muhsin Dep. Tr.] at 300:2-18 (admitting ████████████████████████████████████████████ ██████████████████████████████████████ Dkt. 1096-10 [8/5/22 Kiani Dep Tr.] at 147:7-13 (admitting that "██████████████████████████████████████████████ ████████████████████████████████").  In any event, Plaintiffs never identified this alleged ████████████████ as relevant to any calculation of lost profits during discovery.  To the contrary, in response to Apple's interrogatory seeking Plaintiffs' damages contention, Plaintiffs identified as "facts that may be used *to determine a reasonable royalty* in this matter," that "██████████████████████████████████ █████████████████████████████████████ ███████████████████████████████████████████," and that ████████████ ██████████████████████████████████████████ ████████████████████████████" Ex. 4 at 12, 18. And in his now-stricken opinion, regarding the "[██████████████████████████" Mr. Kinrich opined that Masimo's ████████████████████ would *not* have been the price agreed to by Apple and Masimo in the but-for world.  *See* Dkt. 1171-3 [Kinrich Rpt.] at 54-56.  To allow Plaintiffs to proceed with a █████████-dollar damages theory built on an input that was not only *not* disclosed for that purpose, but that Plaintiffs' own expert assured would *not* be used in such a way is the antithesis of the disclosure requirements of FRCP 26.

1    Moreover, Mr. Kiani's testimony about ████████████████ (and

2  therefore Plaintiffs' lost profits theory built upon it) must be excluded as inadmissible

3  hearsay.  Plaintiffs seek to have Mr. Kiani testify about an out-of-court statement for

4  purposes of its truth—i.e., how much ██████████████████████████

5  ████.  Plaintiffs have never identified or produced any document—let alone one that

6  would meet any hearsay exception—to substantiate this ██████████.  Nor have

7  Plaintiffs identified any reason, or witness who could explain, why ████████████

8  ██████████████ would be an appropriate price for hypothetical module sales to Apple

9  that allegedly would have occurred years before.

10    Plaintiffs' alleged evidence of the profit margin they would have earned on these

11  imagined sales fares no better.  Plaintiffs identify an SEC 10-K filing reporting

12  company-wide gross margins of 65.2% for the year ending January 1, 2022, and 65.0%

13  for the year ending January 2, 2021 as evidence of the applicable profit margin, which

14  they claim is 65.0% for their calculation.  Ex. 1 at 2 (citing Dkt. 1135-6 (Ex. T to

15  Plaintiffs' summary judgment opposition [MASA03357288])).  But at no point during

16  fact discovery did Plaintiffs disclose an intent to rely on Masimo's company-wide

17  profit margins as a basis for any lost profits calculation.  Indeed, the 10-K cited in

18  Plaintiffs' e-mail and summary judgment opposition was never cited in their damages

19  contentions.  *See* Ex. 4.  Moreover, as noted above, Masimo has ██████████████

20  ██████ so there is no basis on which to assume this profit margin would be applicable

21  to that product.  Further, as with Masimo's alleged pricing evidence, this margin post-

22  dates the alleged sensor sales to Apple by many years.[6]

23    Finally, Plaintiffs offer an alternative basis for their new ██████████

24  calculation, by "starting at Masimo's per unit manufacturing costs and applying its

25  

26  [6] Plaintiffs argue in their memorandum of fact and law that "[t]he amount of damages need not be calculated with precision."  Dkt. 1430 at 5.  But that principle is irrelevant

27  here, where Plaintiffs have not provided any admissible basis to calculate their alleged lost profits.

28

profit margin." Ex. 1 at 3. Here too Plaintiffs make explicit their intention to continue to rely on information this Court has already stricken, pointing to "a 2021 spreadsheet (MASA 1097115) that documents Masimo's costs to manufacture ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* This Court has now ***twice*** excluded that same spreadsheet, most recently in its ruling granting Apple's *Daubert* motion, observing that: "Plaintiffs proffered the 2021 Manufacturing Cost Data" but "[t]his document is an analysis prepared by Priddell that the Court excluded in a previous order as exceeding Priddell's percipient knowledge and being prepared in anticipation of litigation." Dkt. 1283 at 8.

In short, the inputs required to calculate Plaintiffs' purported lost profits were not properly disclosed and should be ruled inadmissible. Because there is no admissible means by which Plaintiffs can present their calculation, Plaintiffs should be precluded from seeking lost profits at trial.

### III. PLAINTIFFS' NEW LOST PROFIT CANNOT BE PRESENTED WITHOUT A FRCP 26(A)(2)(B) EXPERT WITNESS.

In addition to suffering from the numerous disclosure and evidentiary issues above, Plaintiffs' new "theory" is unreliable and not proper subject matter to be introduced to a jury absent sponsoring expert opinion. *See, e.g.*, *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369, 1369 n.5 (Fed. Cir. 2004) ("[R]elevant expert testimony regarding matters beyond the comprehension of laypersons is sometimes essential[.]" (collecting cases)). Here, that Plaintiffs' new lost profits calculation is nearly ***double*** Mr. Kinrich's stricken calculations alone casts doubt on the reliability of this new calculation. But a review of the new number shows that it so much higher than Mr. Kinrich's precisely because it skirts the necessary factors required to proffer a reliable damages number. In fact, Plaintiffs' new lost profits calculation is at odds with Mr. Kinrich's stricken calculations—making the new calculations even more problematic than Mr. Kinrich's (which were themselves deeply flawed). As Mr.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Kinrich's stricken calculations recognized, data from 2021 and later needs to be adjusted to be reliably used to calculate profits allegedly earned years earlier.  For example, Mr. Kinrich acknowledged that even if the alleged 2021 manufacturing cost data was admissible (and it is not), it should not be used as-is but would need to be adjusted (including for the time-value of money) in order to calculate Plaintiffs' purported lost profits.  *See, e.g.*, Dkt. 1171-3 [Kinrich Rpt.] at 53-54 (█████████ ████████████████████████████████████████████████████ ██████").  Moreover, as Mr. Kinrich also acknowledged, even a module price of ██ (significantly less than the ████ Plaintiffs now proffer, Ex. 1 at 3), would have required Apple to increase its Watch pricing and, accordingly, sell fewer watches.  Dkt. 1171-3 [Kinrich Rpt.] at 57-59.  Plaintiffs' new calculation is inconsistent with these basic economic realities, and they should not be permitted to proceed with an undisclosed lost profits calculation that would actually fly in the face of what their expert did disclose.  Such a calculation would not pass muster under *Daubert*.  Plaintiffs should not be rewarded with a substantially higher damages demand by proffering a patently unreliable calculation without an expert, particularly where Apple has had insufficient notice or opportunity to respond, including through its own experts.

## CONCLUSION

Apple respectfully submits that, at this stage and due to the disclosure deficiencies described above, Plaintiffs should be precluded from seeking any lost profits damages at trial and requests a conference with the Court to discuss this issue.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Dated: March 17, 2023                    Respectfully submitted,

2

3                                             JOSEPH J. MUELLER

4                                             MARK D. SELWYN
                                              AMY K. WIGMORE
5                                             JOSHUA H. LERNER

6                                             SARAH R. FRAZIER
                                              NORA Q.E. PASSAMANECK
7                                             THOMAS G. SPRANKLING

8                                             WILMER CUTLER PICKERING HALE AND
                                              DORR LLP
9

10                                            BRIAN A. ROSENTHAL
                                              GIBSON, DUNN & CRUTCHER LLP
11

12                                            KENNETH G. PARKER
                                              HAYNES AND BOONE, LLP
13

14

15                                            By:  /s/ *Mark D. Selwyn*

16                                                   Mark D. Selwyn

17

18                                            *Attorneys for Defendant Apple Inc.*

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

## CERTIFICATE OF COMPLIANCE

2          The undersigned, counsel of record for Defendant Apple, Inc., certifies that this

3   brief contains 4077 words, which [choose one]:

4          X   complies with the word limit of L.R. 11-6.1

5          ___ complies with the word limit set by court order dated [date].

6

7   Dated:  March 17, 2023                    Respectfully submitted,

8

9                                             MARK D. SELWYN
                                              AMY K. WIGMORE
10                                            JOSHUA H. LERNER
                                              SARAH R. FRAZIER
11                                            NORA Q.E. PASSAMANECK
                                              THOMAS G. SPRANKLING
12                                            WILMER CUTLER PICKERING HALE AND
13                                            DORR LLP

14

15                                            BRIAN A. ROSENTHAL
                                              GIBSON, DUNN & CRUTCHER LLP
16

17                                            KENNETH G. PARKER
                                              HAYNES AND BOONE, LLP
18

19

20                                            By:  /s/ *Mark D. Selwyn*
                                                   Mark D. Selwyn
21

22

23                                            *Attorneys for Defendant Apple Inc.*

24

25

26

27

28