# EXHIBIT D

1

| | |
|---|---|
| | SANTA ANA, CALIFORNIA; MONDAY, MARCH 13, 2023; 11:00 A.M. |
| 11:00 | THE CLERK:  Calling Item No. 2, SACV-20-00048-JVS, |
| 11:00 | Masimo Corporation, et al., versus Apple Inc. |
| 11:00 | Counsel, please state your appearance for the |
| 11:00 | record. |
| 11:00 | MR. RE:  Good morning, Your Honor.  For the |
| 11:00 | plaintiffs Masimo and Cercacor, Joseph Re from Knobbe |
| 11:00 | Martens, Irvine California.  With me are three of my |
| 11:00 | partners, Steve Jensen, Brian Claassen, Ben |
| 11:00 | Katzenellenbogen, and Brian Horne. |
| 11:00 | THE COURT:  Good morning. |
| 11:00 | MR. MUELLER:  Good morning, Your Honor.  Joe |
| 11:00 | Mueller, Wilmer Hale, on behalf of Apple.  With me today |
| 11:00 | from Wilmer Hale are a few folks who are going to be arguing |
| 11:00 | today, so I will just identify them.  Amy Wigmore, Mark |
| 11:00 | Selwyn, Sarah Frazier, and Brittany Amadi.  I will also note |
| 11:00 | that Ryan Moran, who is senior in-house counsel at Apple, is |
| 11:00 | here as well. |
| 11:00 | THE COURT:  Good morning. |
| 11:00 | This matter is here for the pretrial conference. |
| 11:00 | Let's take up the in-limine motions first. |
| 11:00 | Apple's first with regard to reference to other |
| 11:01 | litigation. |
| 11:01 | MS. FRAZIER:  Good morning, Your Honor.  Sarah |
| 11:01 | Frazier on behalf of Apple. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:01 | 1 | The parties have agreed to stipulate to Your |
| 11:01 | 2 | Honor's tentative ruling with respect to Apple's first |
| 11:01 | 3 | motion in-limine motion so I don't believe there will be any |
| 11:01 | 4 | argument. |
| 11:01 | 5 | MR. RE:  That's correct. |
| 11:01 | 6 | THE COURT:  Apple's second, reference to certain |
| 11:01 | 7 | operations. |
| 11:01 | 8 | MS. FRAZIER:  My colleague Mark Selwyn will |
| 11:01 | 9 | address that motion. |
| 11:01 | 10 | MR. SELWYN:  Good morning.  Mark Selwyn for Apple. |
| 11:01 | 11 | Your Honor, Apple submits on the tentative but |
| 11:01 | 12 | obviously we will be happy to respond any arguments that |
| 11:01 | 13 | Masimo makes. |
| 11:01 | 14 | THE COURT:  Very good, thank you. |
| 11:01 | 15 | Who is going to address this? |
| 11:01 | 16 | Mr. Katzenellenbogen? |
| 11:01 | 17 | MR. KATZENELLENBOGEN:  Yes, Your Honor, thank you. |
| 11:02 | 18 | Your Honor, with regard to the ruling on motion |
| 11:02 | 19 | in-limine 2, we are largely submitting on the tentative with |
| 11:02 | 20 | one suggestion, which has to do with a statement on page two |
| 11:02 | 21 | of the tentative.  The third paragraph under the heading B. |
| 11:02 | 22 | And specifically the last sentence of that paragraph which |
| 11:02 | 23 | is in the fourth line where the Court notes however, should |
| 11:02 | 24 | Apple, indeed, open the door to such evidence at trial, the |
| 11:02 | 25 | Court may reconsider the ruling. |

| | | |
|---|---|---|
| 11:02 | 1 | We noted that that was mentioned specifically with |
| 11:02 | 2 | regard to that aspect of motion in-limine two. |
| 11:02 | 3 | THE COURT:  Well, it's in fact true with respect |
| 11:02 | 4 | to any motion in-limine.  It just seemed to be a little more |
| 11:02 | 5 | problematic here. |
| 11:02 | 6 | MR. KATZENELLENBOGEN:  That was our understanding |
| 11:03 | 7 | as well.  That was the point we wanted to raise and to |
| 11:03 | 8 | clarify that applies to everything.  I was going to suggest |
| 11:03 | 9 | that the court could include that same statement in the |
| 11:03 | 10 | concluding paragraphs of both two and three.  If the court |
| 11:03 | 11 | thinks that's unnecessary, that's fine. |
| 11:03 | 12 | THE COURT:  I think everybody understands the |
| 11:03 | 13 | ground rules. |
| 11:03 | 14 | MR. KATZENELLENBOGEN:  Thank you, Your Honor, |
| 11:03 | 15 | there were a couple of examples of that where I thought it |
| 11:03 | 16 | was most likely to come up but as long as that's understood |
| 11:03 | 17 | I think I can skip those and if they come up at trial we can |
| 11:03 | 18 | address it then. |
| 11:03 | 19 | THE COURT:  Very good.  Thank you. |
| 11:03 | 20 | Any further comments from the defendants on this |
| 11:03 | 21 | one? |
| 11:03 | 22 | MR. SELWYN:  No, Your Honor. |
| 11:03 | 23 | THE COURT:  Okay.  No. 3, Apple's No. 3. |
| 11:03 | 24 | MS. WIGMORE:  Good morning.  Amy Wigmore for |
| 11:03 | 25 | Apple. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:03 | 1 | Apple submits on Your Honor's tentative ruling on |
| 11:04 | 2 | motion in-limine No. 3 but we would happy to respond. |
| 11:04 | 3 | THE COURT:  Mr. Katzenellenbogen. |
| 11:04 | 4 | MR. KATZENELLENBOGEN:  With regard to Motion |
| 11:04 | 5 | In-Limine 3, we understood the tentative as observing that |
| 11:04 | 6 | on its own there is nothing inherently wrong with Masimo |
| 11:04 | 7 | employees leaving Masimo to go to work for Apple or with |
| 11:04 | 8 | Apple hiring Masimo employees.  Accordingly, I'm not going |
| 11:04 | 9 | to address the part of the tentative that addresses that |
| 11:04 | 10 | issue generally.  As set forth in our papers, we thought the |
| 11:04 | 11 | number of employees who were hired by Apple was relevant. |
| 11:04 | 12 | We understand the arguments and the position in the |
| 11:04 | 13 | tentative. |
| 11:04 | 14 | What I would like to focus on is a specific of the |
| 11:04 | 15 | tentative where I think the tentative may be taking too |
| 11:04 | 16 | narrow of a view of what's going to be relevant here, and |
| 11:04 | 17 | specifically that's a part on page 3 of the tentative and |
| 11:05 | 18 | that's the second full paragraph. |
| 11:05 | 19 | That starts off finally.  The second sentence |
| 11:05 | 20 | which begins in the third line says plaintiff's contend such |
| 11:05 | 21 | evidence is relevant to show intent, motive, knowledge and |
| 11:05 | 22 | plan to misappropriate plaintiffs' trade secret.  That's |
| 11:05 | 23 | exactly right.  I would add that under Rule 404 it's also |
| 11:05 | 24 | relevant to showing preparation, absence of mistake and lack |
| 11:05 | 25 | of accident. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:05    1         What I'd like to address is the sentence after

11:05    2   that in the tentative says: however, plaintiffs have not

11:05    3   alleged that employees other than Drs. O'Reilly and Lamego

11:05    4   misappropriated trade secret and therefore evidence of

11:05    5   Apple's recruitment of other employees is irrelevant.

11:05    6         You know what, Your Honor, I'm sorry.  I

11:06    7   apologize, Your Honor.  This is an argument relating to 2.

11:06    8   I apologize, I had gotten 2 and 3 confused on this one.

11:06    9   With the Court's indulgence, I would like to formally reopen

11:06   10   2 and address this aspect.

11:06   11         THE COURT:  That's fine.  Strange things happen on

11:06   12   Mondays.

11:06   13         MR. KATZENELLENBOGEN:  Thank you, Your Honor.  I

11:06   14   appreciate that.  I'm not sure -- well.  I will continue.

11:06   15         THE COURT:  Okay.

11:06   16         MR. KATZENELLENBOGEN:  That plaintiffs have not

11:06   17   alleged employees other than O'Reilly and Lamego

11:06   18   misappropriated trade secrets, I think there is a little bit

11:06   19   bit of a disconnect in that the tentative is not addressing

11:06   20   the specifics of plaintiffs' arguments which had to do with

11:06   21   that Apple created a plan and a strategy of hiring and

11:07   22   recruiting Masimo employees as an alternative to acquiring

11:07   23   or partnering with Masimo.  And we understand that the

11:07   24   Court's --

11:07   25         THE COURT:  Why can't you make that argument with

11:07   1    respect to the two people who were in contention.

11:07   2          MR. KATZENELLENBOGEN:  I think we can and there

11:07   3    are just a couple of buckets of evidence and I was trying to

11:07   4    get a little bit of clarity as to which ones the tentative

11:07   5    views are in and which ones the tentative views are out to

11:07   6    try to head off arguments during trial and to make sure we

11:07   7    understand what is appropriate during opening statements.

11:07   8    Specifically -- so there are categories of evidence that

11:07   9    specifically relate to the recruiting of O'Reilly and Lamego

11:07  10   and we understand those are in.

11:07  11        There are a number of e-mails and pieces of

11:08  12   evidence in 2013, so prior to Lamego starting in January of

11:08  13   2014 at Apple that relate to Apple's plan to engage in smart

11:08  14   recruiting as an alternative to partnering with Masimo or

11:08  15   acquiring Masimo.  We understand that those are also in and

11:08  16   are fair game.

11:08  17        Where the question came was with respect to

11:08  18   e-mails that maybe after Lamego started in January of 2014

11:08  19   that nonetheless discuss or evidence Apple's plan, Apple's

11:08  20   strategy to recruit Masimo employees for the purpose of

11:08  21   obtaining Masimo's technical information, Masimo trade

11:08  22   secrets as an alternative to entering into a business deal.

11:08  23        And there were two specific examples that I wanted

11:08  24   to address.  And this will -- the first has to do with

11:09  25   Exhibit S to the motion, which related to the recruiting of

| 11:09 | 1 | a person named Andy Gangland.  I have copies of the exhibits |
| 11:09 | 2 | if that would be easier for the Court.. |
| 11:09 | 3 | THE COURT:  Sure. |
| 11:09 | 4 | (Document handed to the Court) |
| 11:09 | 5 | MR. KATZENELLENBOGEN:  May I approach, Your Honor? |
| 11:09 | 6 | THE COURT:  You may. |
| 11:09 | 7 | MR. KATZENELLENBOGEN:  Specifically with regard to |
| 11:09 | 8 | exhibit S, in May 2014, this relates to the interviews of |
| 11:10 | 9 | Andy Gangland and Apple's engineer Block.  Interviewed |
| 11:10 | 10 | Mr. Gangland and asked him specific questions about highly |
| 11:10 | 11 | confidential Masimo trade secrets.  It's internally on |
| 11:10 | 12 | page 525 and 526 under the heading technical under |
| 11:10 | 13 | Mr. Block's evaluation.  It talks about how I asked how one |
| 11:10 | 14 | chooses wavelengths for the Masimo rainbow sensor as a |
| 11:10 | 15 | function of what analyte you are trying to measure so he was |
| 11:10 | 16 | trying to illicit specific technical, confidential |
| 11:10 | 17 | information and -- |
| 11:10 | 18 | THE COURT:  It was specific. |
| 11:10 | 19 | MR. KATZENELLENBOGEN:  Yes, and how Masimo chooses |
| 11:10 | 20 | those wavelengths although it is not specifically the trade |
| 11:10 | 21 | secrets asserted here, in combination with what was asked in |
| 11:10 | 22 | the next paragraph and I think when you juxtapose that to |
| 11:11 | 23 | Exhibit U you will see where I'm going with this and why we |
| 11:11 | 24 | believe it's relevant to this overall plan. |
| 11:11 | 25 | In the next paragraph on the next page, page 526, |

11:11   1   the evaluation says with Masimo's product he seemed to know

11:11   2   that there were specs and he helped drive the product to

11:11   3   meet those specs but he was not able to demonstrate whether

11:11   4   he had much insight of where the specs came from.

11:11   5          As a result, at the end Mr. Block recommended

11:11   6   against hiring Mr. Gangland.  We are going to contrast this

11:11   7   with Exhibit U which is an evaluation of an interview of

11:11   8   Cornelius Raths, another former employee.  The part I would

11:11   9   like to highlight and draw the Court's attention to is on

11:11   10  internally numbered page 585, and it's an evaluation by

11:12   11  someone whose name, I believe, is Shonn.  I apologize that

11:12   12  the formating didn't quite come through here.  But under the

11:12   13  heading "Technical Ability" there are questions about

11:12   14  Masimo's SedLine technology which uses EEG to measure the

11:12   15  depths of anesthesia.  Starting at the end of the third

11:12   16  line, the evaluation says he went through the source of

11:12   17  signal and explained how he developed the algorithm for

11:12   18  detecting depth of propofol anesthesia..

11:12   19         So there we have an example of Apple asking how

11:12   20  the algorithm itself for doing this was created, and

11:12   21  Mr. Raths disclosed that in an interview and as a result the

11:12   22  recommendation was to hire him.

11:12   23         We believe, at least with respect to interviews

11:12   24  and the evaluations of Mr. Gangland and Mr. Raths, those

11:13   25  should be fairly part of the bucket, shall we say, of

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:13  1  evidence that relates to what we assert was part of Apple's

11:13  2  plan for smart recruiting.

11:13  3          So we think that even under the tentative as it

11:13  4  currently states anything prior to, I guess, January 2014

11:13  5  when Dr. Lamego was hired would be in.  But we think that

11:13  6  even though we are not going to attempt to introduce

11:13  7  evidence regarding all 22 people that were hired or all of

11:13  8  that information, at least with respect to these two, we

11:13  9  believe this evidence should be able to come in and we can

11:13  10  present this as part of what we understand and what we are

11:13  11  going to assert was Apple's plan for smart recruiting. Apple

11:13  12  can dispute that.  But we would request that the tentative

11:14  13  be changed and specifically on page 3, the last sentence of

11:14  14  that second paragraph that we were discussing.

11:14  15          I would submit that that should be changed to say

11:14  16  something more like -- that absent allegations that Apple's

11:14  17  recruiting of a particular former employee shows or was part

11:14  18  of Apple's plan or strategy to acquire Masimo's trade

11:14  19  secrets that evidence of his or her hiring may be

11:14  20  irrelevant.  As long as the evidence relates to this plan of

11:14  21  smart recruiting, we think it should come in.

11:14  22          THE COURT:  Okay.  Mr. Selwyn.

11:14  23          MR. SELWYN:  Thank you.

11:14  24          Mark Selwyn for Apple.

11:14  25          I think, Your Honor, that I can be brief because

Exhibit D
-22-

10

11:14  1   the Court already considered and addressed in the tentative

11:14  2   the arguments that were made.  The tentative correctly finds

11:14  3   that evidence of Apple's recruitment of hiring of employees

11:15  4   other than Dr. Lamego and Dr. O'Reilly is irrelevant and

11:15  5   further, to quote Your Honor's tentative, "that employees

11:15  6   are not only permitted but encouraged to move freely from

11:15  7   one company to another under at will employment."

11:15  8        What they are now trying to do is go outside the

11:15  9   alleged trade secrets and essentially create a trial within

11:15  10  a trial as to things that were not alleged.  Plaintiffs are

11:15  11  attempting to justify this under Rule 404 and under Rule

11:15  12  406.  But evidence of actual hiring --

11:15  13       THE COURT:  It's not the evidence of hiring, it's

11:15  14  not the facts of interviewing, the passages which

11:15  15  Mr. Katzenellenbogen drew my attention to are at least

11:15  16  susceptible to the inference that they were probing for

11:15  17  trade secret information.  Wouldn't you agree with at least

11:15  18  that?  That those passages are susceptible of being

11:16  19  interpreted as fishing for confidential information.

11:16  20       MR. SELWYN:  Not at all because the allegation of

11:16  21  trade secret misappropriation pertains to Dr. O'Reilly and

11:16  22  to Dr. Lamego and what they have pointed to is not probative

11:16  23  of all --

11:16  24       THE COURT:  Isn't it potentially probative to a

11:16  25  plan or scheme?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:16 | 1 | MR. SELWYN:  No, because the allegation relates to |
| 11:16 | 2 | Dr. Lamego and Dr. O'Reilly. |
| 11:16 | 3 | THE COURT:  Do they not allege an overall plan to |
| 11:16 | 4 | go beyond Lamego and O'Reilly to gather information? |
| 11:16 | 5 | MR. SELWYN:  No.  They had to recite specific |
| 11:16 | 6 | trade secrets and those alleged trade secrets pertained to |
| 11:16 | 7 | Dr. Lamego and Dr. O'Reilly. |
| 11:16 | 8 | THE COURT:  That's fine but if they are out there |
| 11:16 | 9 | generally fishing for trade secrets, whether it's the same |
| 11:16 | 10 | trade secrets they fished with for Lamego or O'Reilly, it's |
| 11:16 | 11 | relevant if it potentially shows a pattern. |
| 11:17 | 12 | MR. SELWYN:  I don't think so, Your Honor.  It's |
| 11:17 | 13 | well after the time of the allegations that pertain to |
| 11:17 | 14 | Dr. O'Reilly and to Dr. Lamego.  And with respect to those |
| 11:17 | 15 | two gentlemen there are specific alleged secrets that are |
| 11:17 | 16 | recited so it's not probative -- |
| 11:17 | 17 | THE COURT:  Can't patterns be shown by conduct |
| 11:17 | 18 | before and after the relevant event? |
| 11:17 | 19 | MR. SELWYN:  In some instances but not in this |
| 11:17 | 20 | instance. |
| 11:17 | 21 | THE COURT:  Why not in this instance? |
| 11:17 | 22 | MR. SELWYN:  Because in this instance what's |
| 11:17 | 23 | alleged are particular trade secrets with respect to those |
| 11:17 | 24 | two individuals. |
| 11:17 | 25 | THE COURT:  Sir, you are missing the point. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:17  1      If they are out there fishing generally for trade

11:17  2  secrets, why is it excluded because they weren't fishing for

11:17  3  the same trade secrets they were fishing with O'Reilly and

11:17  4  Lamego.

11:17  5      MR. SELWYN:  One, because there is no allegation

11:17  6  that they are, in fact, trade secrets that are at issue in

11:17  7  the e-mail that was just shown to you.  Those aren't

11:17  8  included in any disclosure of any trade secrets that Masimo

11:17  9  has made in this case.

11:18  10      THE COURT:  Okay.

11:18  11      MR. SELWYN:  The other point I would make, Your

11:18  12  Honor, is that California law provides employees with broad

11:18  13  freedom to move between employers and to seek employment

11:18  14  within their given profession.  So the suggestion that Apple

11:18  15  hiring people who once worked else where, is in their words

11:18  16  "damning" shows this is exactly the type of evidence that

11:18  17  should be precluded under Rule 403.

11:18  18      THE COURT:  The Court agrees with you generally on

11:18  19  that but when we get down to specifics the fact of freedom

11:18  20  of movement doesn't trump leaving with a trade secret and

11:18  21  divulging it..

11:18  22      MR. SELWYN:  But the things that they are pointing

11:18  23  to in these other e-mails are not things they have ever

11:18  24  suggested are Masimo trade secrets.  Essentially they are

11:18  25  trying to back door in new alleged trade secrets through

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:18 | 1 | these e-mails.  It's just an inference to apply to |
| 11:18 | 2 | Dr. Lamego and Dr. O'Reilly. |
| 11:18 | 3 | THE COURT:  Thank you. |
| 11:18 | 4 | Mr. Katzenellenbogen. |
| 11:18 | 5 | MR. KATZENELLENBOGEN:  Briefly, Your Honor.  I |
| 11:19 | 6 | think the Court's comments got this exactly right.  Rule |
| 11:19 | 7 | 404, specifically addresses 404(b), other bad acts, and so |
| 11:19 | 8 | inherently they are not -- |
| 11:19 | 9 | THE COURT:  The same bad acts. |
| 11:19 | 10 | MR. KATZENELLENBOGEN:  Exactly.  We are not going |
| 11:19 | 11 | to be litigating whether those specific issues are or are |
| 11:19 | 12 | not trade secrets, exactly as the Court commented, the issue |
| 11:19 | 13 | is the inference that when they are asking for specific |
| 11:19 | 14 | technical information that may or may not be proprietary, |
| 11:19 | 15 | that that supports the allegations that as Apple itself said |
| 11:19 | 16 | they were engaging in smart recruiting as an alternative to |
| 11:19 | 17 | a business deal. |
| 11:19 | 18 | The rest of the packet I handed up had to do with |
| 11:19 | 19 | e-mails that were earlier in the 2013 timeframe regarding |
| 11:19 | 20 | this plan or strategy.  I'm guessing that the Court doesn't |
| 11:19 | 21 | want me to go through those now.  Therefore the Court can |
| 11:20 | 22 | read them. |
| 11:20 | 23 | THE COURT:  Okay.  I want to take one more look at |
| 11:20 | 24 | this one. |
| 11:20 | 25 | So let's move to 3.  Do you still want to address |

14

| | | |
|---|---|---|
| 11:20 | 1 | that? |
| 11:20 | 2 | MR. KATZENELLENBOGEN:  I think that I have my |
| 11:20 | 3 | notes reversed.  Give me one moment. |
| 11:20 | 4 | Yes, with regard to motion in limine 3, my prior |
| 11:20 | 5 | statement that we largely submit on that is correct and the |
| 11:20 | 6 | caveat to that is with the note that to the extent Apple |
| 11:20 | 7 | raises related issues opens the door particularly with |
| 11:20 | 8 | regard to issues of corporate culture or formal policies |
| 11:20 | 9 | regarding the intellectual property rights of others and if |
| 11:21 | 10 | Apple attempts to introduce that type of affirmative |
| 11:21 | 11 | evidence then we should be able to introduce contrary |
| 11:21 | 12 | evidence that Apple has an unwritten policy of encouraging |
| 11:21 | 13 | or at least turning the other way with respect to copying or |
| 11:21 | 14 | stealing the good ideas of others. |
| 11:21 | 15 | THE COURT:  In other words, on the present record, |
| 11:21 | 16 | the Court is correct in granting the motion. |
| 11:21 | 17 | MR. KATZENELLENBOGEN:  Your Honor, I would |
| 11:21 | 18 | probably phrase it as we disagree for the reasons set forth |
| 11:21 | 19 | in our briefing but we understand and I'm not going to waste |
| 11:21 | 20 | the Court's time arguing what I think is an understood |
| 11:21 | 21 | caveat to the order. |
| 11:21 | 22 | THE COURT:  Okay. |
| 11:21 | 23 | MS. WIGMORE:  We do have a concern about the |
| 11:21 | 24 | statement just made about a formal policy.  To the extent |
| 11:21 | 25 | Apple introduces evidence of its formal policy that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:21 | 1 | employees have to sign that make clear that they can't use |
| 11:21 | 2 | confidential information from a prior employer, that would |
| 11:22 | 3 | not be opening the door to the evidence that has been at |
| 11:22 | 4 | issue in this motion.  The evidence at issue, as the Court |
| 11:22 | 5 | recognized, is irrelevant to the claims in this case and |
| 11:22 | 6 | that includes antecdotes from years before this litigation |
| 11:22 | 7 | and the facts relating to it began, statements by Steve Jobs |
| 11:22 | 8 | who admittedly on the plaintiff's side had nothing to do |
| 11:22 | 9 | with any interactions involving this case. |
| 11:22 | 10 | So, to the extent we put in formal statements of |
| 11:22 | 11 | the company about how intellectual property should be |
| 11:22 | 12 | handled, that shouldn't open the door to statements about |
| 11:22 | 13 | flags that flew over the company many years ago, allegedly, |
| 11:22 | 14 | that have not been authenticated or explained by any witness |
| 11:22 | 15 | that has been deposed in the case so we do not agree that |
| 11:22 | 16 | that would open the door to the type of inflammatory, |
| 11:22 | 17 | irrelevant evidence that they seek to introduce. |
| 11:22 | 18 | THE COURT:  We have to see what evidence comes in |
| 11:22 | 19 | and obviously we can raise this issue, if at all, outside |
| 11:23 | 20 | the presence of the jury. |
| 11:23 | 21 | MS. WIGMORE:  That's fine with us, Your Honor.  As |
| 11:23 | 22 | long as it's raised outside the presence and does not |
| 11:23 | 23 | inflame the jury before we have a chance to address it. |
| 11:23 | 24 | THE COURT:  No doors are opened unless the court |
| 11:23 | 25 | says they have been opened.  That determination is made |

16

| | | |
|---|---|---|
| 11:23 | 1 | outside the presence of the jury. |
| 11:23 | 2 | MS. WIGMORE:  Thank you, Your Honor. |
| 11:23 | 3 | THE COURT:  Let's turn to Masimo's motions. |
| 11:23 | 4 | MR. RE:  Your Honor, there is a No. 4. |
| 11:23 | 5 | THE COURT:  Wait a minute. |
| 11:23 | 6 | MR. RE:  Apple had a motion in limine No. 4 |
| 11:23 | 7 | concerning the confidentiality agreements.  Masimo submits, |
| 11:23 | 8 | and will respond. |
| 11:23 | 9 | MS. AMADI:  Good morning.  Brittany Amadi on |
| 11:24 | 10 | behalf of Apple. |
| 11:24 | 11 | There are a few issues we wanted to raise with |
| 11:24 | 12 | respect to the tentative ruling on No. 4. |
| 11:24 | 13 | First, Your Honor suggested in the tentative that |
| 11:24 | 14 | Apple's motion in-limine No. 4, was untimely because it |
| 11:24 | 15 | wasn't raised at the summary judgment stage.  We would |
| 11:24 | 16 | respectfully submit we disagree with the timeliness filing |
| 11:24 | 17 | on three grounds. |
| 11:24 | 18 | First, none of the claims at issue assert a breach |
| 11:24 | 19 | of contract claim against Apple and nor could they because |
| 11:24 | 20 | Apple is not party to the agreements that are at issue with |
| 11:24 | 21 | respect to MIL No. 4.  So there was no reason for Apple to |
| 11:24 | 22 | raise the validity of those agreements at the summary |
| 11:24 | 23 | judgment stage.  They do not address a claim or defense. |
| 11:24 | 24 | This is really an evidentiary issue where the |
| 11:24 | 25 | plaintiffs are seeking to raise these confidentiality |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:24 | 1 | agreements as evidence to support aspects of their case so |
| 11:24 | 2 | we believe it's properly raised at the in-limine stage |
| 11:25 | 3 | because we believe that evidence is unduly prejudical and |
| 11:25 | 4 | not relevant given the invalidity of the provisions at issue |
| 11:25 | 5 | and should be excluded. |
| 11:25 | 6 | Second, there is no requirement for a party to |
| 11:25 | 7 | move for summary judgment on any issue including issues of |
| 11:25 | 8 | law at the summary judgment stage in order to preserve that |
| 11:25 | 9 | issue, so to the extent that, Your Honor, does not address |
| 11:25 | 10 | the validity of the contractual provision of that issue.  At |
| 11:25 | 11 | this stage, we believe that issue is still one that will |
| 11:25 | 12 | have to be addressed by the Court going forward because it's |
| 11:25 | 13 | relevant, as we explained in our papers, to the issues that |
| 11:25 | 14 | the parties have raised in the case. |
| 11:25 | 15 | And then the third point to make here is that the |
| 11:25 | 16 | admissibility of the agreements is properly decided by Your |
| 11:25 | 17 | Honor as an issue of law and we think it's proper to address |
| 11:25 | 18 | that issue at this stage of the case before trial.  We |
| 11:25 | 19 | believe there is a suggestion in the tentative that Your |
| 11:25 | 20 | Honor did not want a mini-trial regarding the validity of |
| 11:26 | 21 | those provisions, the confidentiality provisions, but we do |
| 11:26 | 22 | think it's important to address those issues and to the |
| 11:26 | 23 | extent that the Court allows those agreements to come into |
| 11:26 | 24 | evidence Apple will need to be able to respond and to point |
| 11:26 | 25 | out that those provisions are invalid under California law. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:26   1          So whether it's now or at a later stage as we head

11:26   2   into trial, we believe that will be an issue that the Court

11:26   3   will need to address.

11:26   4          THE COURT:  I agree with that.  But it seems to me

11:26   5   you're asking for a substantive ruling of the law and that's

11:26   6   not what motions in-limine are for.

11:26   7          MS. AMADI:  We think in this case --

11:26   8          THE COURT:  Why is this case the exception in that

11:26   9   regard?

11:26   10         MS. AMADI:  In this case, we are not asking for a

11:26   11  judgment on invalidity on a contractual claim here.  There

11:26   12  is no contractual claim at issue unlike the True Wearables

11:26   13  case where there was a breach of contract asserted.  There

11:26   14  is no breach of contract claim here likely for the reason

11:27   15  that the provisions at issue are invalid under California

11:27   16  law so there was no reason for Apple to seek at the summary

11:27   17  judgment stage invalidation of those provisions.

11:27   18         Instead, the plaintiffs are attempting to use

11:27   19  those agreements as evidence to support the case when the

11:27   20  provisions at issue are invalid and could not be breached.

11:27   21         Your Honor, I think the other issue that we wanted

11:27   22  to raise is some clarification on the scope of Your Honor's

11:27   23  ruling.

11:27   24         While the Court found that the confidentiality

11:27   25  provisions are relevant to the plaintiffs' reasonable

11:27  1   efforts to protect the alleged trade secrets in this case,

11:27  2   we have a concern that the plaintiffs will actually seek to

11:27  3   use those agreements for additional purposes and more

11:27  4   broadly than what Your Honor discussed in the tentative

11:27  5   ruling.

11:27  6          Specifically, we believe that plaintiffs may

11:27  7   suggest that either Dr. O'Reilly or Dr. Lamego breached the

11:28  8   confidentiality provisions at issue in those agreements and

11:28  9   that that breach constitutes an acquisition of the trade

11:28  10  secrets by improper means.  We think that that would be

11:28  11  highly prejudical here because the provisions themselves are

11:28  12  invalid and there has been no allegation of a breach

11:28  13  separate from the trade secret misappropriation allegations

11:28  14  in this case.

11:28  15          So, to the extent that the plaintiffs seek to rely

11:28  16  on the agreements for that purpose, we think it would be

11:28  17  highly prejudicial to allow them to do that without Apple

11:28  18  having an opportunity to address the invalidity of those

11:28  19  provisions.

11:28  20          Second, Your Honor indicated in the tentative

11:28  21  ruling that you may restrict the questions that can be asked

11:28  22  related to the agreement.  We think that if they are

11:28  23  introduced into the record, Apple should have the

11:28  24  opportunity to show that the provisions are not valid under

11:28  25  California law.  That goes directly to whether or not the

11:28  1    plaintiffs took reasonable efforts to protect the alleged
11:29  2    trade secrets but also to the extent the plaintiffs seek to
11:29  3    rely on those provisions to assert improper means, it would
11:29  4    be directly to that issue as well.  So, Apple would need to
11:29  5    address that issue at trial if the agreements are permitted
11:29  6    to come in the before jury.

11:29  7         Relatedly, the tentative mentioned that there may
11:29  8    be cross-examination of Mr. Kiani to address that issue.  We
11:29  9    don't think that that would be sufficient for a couple of
11:29  10   reasons.  First, Mr. Kiani admitted only that the
11:29  11   non-compete provisions of the agreement are invalid and
11:29  12   that's really not disputed.  There's no real dispute that
11:29  13   the non-compete provisions of the agreement are invalid
11:29  14   under California law, under the Edwards case.

11:29  15        THE COURT:  16600.

11:29  16        MS. AMADI:  Exactly.  What the issue is here is
11:29  17   that the confidentiality provisions which are the ones that
11:29  18   plaintiffs are going to try to leverage either for the
11:30  19   reasonable efforts issue or for the improper means issue
11:30  20   those provisions, we believe, are also invalid.  So
11:30  21   cross-examination of a fact witness who is not a lawyer to
11:30  22   get at the invalidity of those provisions, we don't believe
11:30  23   will be sufficient.

11:30  24        So we just wanted to raise those issues because we
11:30  25   think this issue will come back before, Your Honor, as we

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit D
-33-

21

| | | |
|---|---|---|
| 11:30 | 1 | head into trial or during trial and to the extent that those |
| 11:30 | 2 | agreements come in, Apple will need the ability to explain |
| 11:30 | 3 | why they are invalid under California law. |
| 11:30 | 4 | If Your Honor would like me to, I can address the |
| 11:30 | 5 | merits of the invalidity issue, which is addressed in our |
| 11:30 | 6 | papers, but we submit as explained in our papers that under |
| 11:30 | 7 | the Brown decision, the Court of Appeals decision in |
| 11:30 | 8 | California, the agreements are invalid.  In that case, as |
| 11:30 | 9 | explained in our papers, there was a confidentiality |
| 11:30 | 10 | provision at issue, there was a definition of confidential |
| 11:30 | 11 | information that was quite broad.  In fact -- but was |
| 11:31 | 12 | narrower than the confidentiality provision that we have |
| 11:31 | 13 | here and the Court held that that provision was invalid |
| 11:31 | 14 | under 16600. |
| 11:31 | 15 | We think the same should apply here where we have |
| 11:31 | 16 | a confidentiality provision that is not even as narrow as |
| 11:31 | 17 | the one at issue in the Brown case and is much broader.  Any |
| 11:31 | 18 | information that Masimo may consider to be confidential we |
| 11:31 | 19 | think that that violates 16600 under Brown and for that |
| 11:31 | 20 | reason we think that the provisions should not come into |
| 11:31 | 21 | evidence and are, in fact, invalid under California law. |
| 11:31 | 22 | THE COURT:  Thank you. |
| 11:31 | 23 | Mr. Re. |
| 11:31 | 24 | MR. RE:  I don't know where to begin.  First of |
| 11:31 | 25 | all, it sure sounds like summary judgment to me. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:31 | 1 | Second of all, what is confusing about this issue |
| 11:31 | 2 | is Apple maintained in the Pretrial Conference Order that |
| 11:31 | 3 | their unclean hands defense should go to the jury and the |
| 11:32 | 4 | sole basis for the unclean hands defense turns on the |
| 11:32 | 5 | validity of these agreements. |
| 11:32 | 6 | So, it's not true that the agreements, as counsel |
| 11:32 | 7 | said, don't relate to any claim or defense.  It is the sole |
| 11:32 | 8 | basis of Apple's unclean hands defense which they think goes |
| 11:32 | 9 | to the jury which we obviously disagree. |
| 11:32 | 10 | This entire issue has gotten off the rails because |
| 11:32 | 11 | this shouldn't even be a jury issue.  But of course the |
| 11:32 | 12 | agreements are part of Masimos's attempts to implement |
| 11:32 | 13 | reasonable precautions to protect the confidential |
| 11:32 | 14 | information and they are, of course, relevant for that |
| 11:32 | 15 | purpose and that purpose alone which is why they will be |
| 11:32 | 16 | offered. |
| 11:32 | 17 | Your Honor, you are correct, there is no breach of |
| 11:32 | 18 | contract claims in the case, so what I heard is another |
| 11:32 | 19 | reason why this unenforceability issue should be an |
| 11:32 | 20 | equitable issue for the Court, if at all, if they are going |
| 11:32 | 21 | to maintain this unclean hands defense. |
| 11:32 | 22 | I do want to correct the record, there is no Kiani |
| 11:33 | 23 | admission.  I looked at that testimony.  What Mr. Kiani said |
| 11:33 | 24 | is that the agreements cannot can't be judged like that |
| 11:33 | 25 | because they're used around the world and state by state. |

23

| | | |
|---|---|---|
| 11:33 | 1 | So he, obviously, declined to pontificate on what the law is |
| 11:33 | 2 | in any state but this, again, goes to the merits of Apple's |
| 11:33 | 3 | unclean hands defense which shouldn't even go to the jury. |
| 11:33 | 4 | This whole enforceability issue. |
| 11:33 | 5 | We think the tentative is actually correct.  They |
| 11:33 | 6 | should come in for what their probative form -- their |
| 11:33 | 7 | probative to show reasonable precautions to protect trade |
| 11:33 | 8 | secrets.  To the extent they want to preserve this issue, |
| 11:33 | 9 | they can preserve if it didn't require a summary judgment |
| 11:33 | 10 | but it certainly can't be knocked out at this stage as we |
| 11:33 | 11 | are heading into trial. |
| 11:33 | 12 | With that, I have nothing further. |
| 11:33 | 13 | THE COURT:  Ms. Amadi. |
| 11:33 | 14 | MS. AMADI:  I would like to briefly respond on the |
| 11:33 | 15 | unclean hands issue.  Counsel is right that it is the |
| 11:34 | 16 | invalidity of their provisions are at issue in our unclean |
| 11:34 | 17 | hands defense.  I think that further emphasizes why Apple |
| 11:34 | 18 | will need -- if the agreements come into the record before |
| 11:34 | 19 | the jury, Apple would need to be able to explain the |
| 11:34 | 20 | provisions that the plaintiffs are relying on for aspects of |
| 11:34 | 21 | their claims in this case are invalid under California law |
| 11:34 | 22 | and we believe they are under the governing case law. |
| 11:34 | 23 | THE COURT:  Thank you.  I will take one more look |
| 11:34 | 24 | at this. |
| 11:34 | 25 | Let's turn to Masimo's motion. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:34 | 1 | MR. RE:  We would submit other than to clarify |
| 11:34 | 2 | what the court wanted from the parties with regard to the |
| 11:34 | 3 | last sentence on page 11. |
| 11:34 | 4 | THE COURT:  You mean with regard to sealing? |
| 11:35 | 5 | MR. RE:  No.  The dispute with regard to the |
| 11:35 | 6 | narrowing of the issues in Section C, the last sentence of |
| 11:35 | 7 | Section C prior to the astericks where it says to the extent |
| 11:35 | 8 | there is a dispute, the parties must explain the dispute at |
| 11:35 | 9 | today's hearing so the Court can resolve it before trial. |
| 11:35 | 10 | This really goes to an issue that is in the |
| 11:35 | 11 | Pretrial Conference Order and it relates to the differences |
| 11:35 | 12 | between Exhibit A and Exhibit B which are attached to the |
| 11:35 | 13 | Pretrial Conference Order that the parties submitted. |
| 11:35 | 14 | It appears from looking at Exhibit B, which is |
| 11:35 | 15 | Apple's version of the trade secrets, they are maintaining |
| 11:35 | 16 | that the documents should contain withdrawn trade secrets. |
| 11:35 | 17 | And they justify that by saying the value, importance and |
| 11:35 | 18 | appropriateness is a collective aggregation of all of |
| 11:35 | 19 | preceding trade secrets, and therefore the withdrawn trade |
| 11:36 | 20 | secrets need to be shown on the document.  That's the |
| 11:36 | 21 | argument that they have given us. |
| 11:36 | 22 | I disagree with that for many reasons.  First of |
| 11:36 | 23 | all, Apple always knew that the -- let's call it the |
| 11:36 | 24 | dependent claims -- the dependent value, importance and |
| 11:36 | 25 | appropriateness of the preceding trade secrets was with |

Exhibit D
-37-

11:36   1   regard to each and every one individually.  Apple maintained

11:36   2   that position as far as back as 2020.  They even maintained

11:36   3   that position on the summary judgment.  They moved for

11:36   4   summary judgment on the value, importance and

11:36   5   appropriateness trade secret as being vague and undefined

11:36   6   and they lost on that on summary judgment.

11:36   7        But even then when they briefed the issue to the

11:36   8   Court, and I have the briefs, they acknowledged that we were

11:36   9   attempting -- they excoriated us for attempting to double

11:36   10  the number of trade secrets while we would only be doubling

11:36   11  if the value, importance and appropriateness applies to each

11:37   12  one individually.

11:37   13       The other thing I wanted to raise is the fact that

11:37   14  their Exhibit B includes other withdrawn trade secrets that

11:37   15  don't even relate to value, importance and appropriateness.

11:37   16  The last page, the last sentence of their Exhibit B talks

11:37   17  about plaintiffs withdrawing all of the asserted, alleged

11:37   18  oxygen saturation trade secrets and alleged hospital

11:37   19  interaction trade secrets and that doesn't relate to value,

11:37   20  importance or appropriateness at all.

11:37   21       So for some reason they are insisting that the

11:37   22  list of trade secrets, whether it goes to the jury or not,

11:37   23  that whatever list of trade secrets that's going to used at

11:37   24  this trial, they are insisting that it include all of the

11:37   25  withdrawn trade secrets.  I don't see why.  That's the

11:37     1    disagreement we are having.

11:37     2              MR. MUELLER:  Your Honor, just briefly,

11:38     3    Ms. Wigmore will address the particular argument that Mr. Re

11:38     4    just raised.  As Mr. Re just mentioned that is an argument

11:38     5    that is relevant to the joint pretrial order.

11:38     6              We have a couple more things on Motion In-Limine

11:38     7    No. 1, but for purposes of joining issue immediately,

11:38     8    Ms. Wigmore can take those up right now.

11:38     9              THE COURT:  Okay.  Thank you.

11:38    10              MS. WIGMORE:  Your Honor, I believe there is some

11:38    11    confusion as to the purpose of Exhibit A and Exhibit B which

11:38    12    I believe I can clarify.

11:38    13              Apple is not taking the position that the jury

11:38    14    should be made aware of the abandoned trade secrets but we

11:38    15    do have concerns about how Masimo and Cercacor are planning

11:38    16    to present the trade secrets to the jury.

11:38    17              The purpose of Exhibit B was to preserve for the

11:38    18    Court and for appeal the fact that there were these

11:39    19    initially pled trade secrets.

11:39    20              In terms of what the jury should be told, our

11:39    21    position is that the plaintiffs' proposed formulation in

11:39    22    Exhibit A is unfair and inaccurate and the reason for that

11:39    23    is because they have renumbered the trade secrets in a way

11:39    24    that is different from their 2019, 210 statement and have

11:39    25    changed them substantively by taking that set list that was

| | | |
|---|---|---|
| 11:39 | 1 | the subject of our summary judgment and putting it in |
| 11:39 | 2 | different places using A's, B's and C's.  I think if the |
| 11:39 | 3 | Court would like we could look at Exhibit A because what |
| 11:39 | 4 | they have done is they only have a few remaining trade |
| 11:39 | 5 | secrets, alleged secrets, in each category.  The categories |
| 11:39 | 6 | are D&D -- I won't use the terms in open court -- LP, and |
| 11:39 | 7 | BM. |
| 11:39 | 8 | The way that the 2019, 210 statement was written |
| 11:40 | 9 | is there were a number of alleged secrets in those |
| 11:40 | 10 | categories and at the end there was this BIA value, |
| 11:40 | 11 | importance and appropriateness secret which the Court found |
| 11:40 | 12 | in the summary judgment motion that we just argued that that |
| 11:40 | 13 | was applying to a set list.  It was at the end of the list, |
| 11:40 | 14 | there was not an individual VIA secret for each |
| 11:40 | 15 | independently asserted secret.  It was a category at the end |
| 11:40 | 16 | that applied to the set list.  At the beginning, the list |
| 11:40 | 17 | was longer so for the D&D category there were 15 alleged |
| 11:40 | 18 | secrets and then number 16 was this VIA category. |
| 11:40 | 19 | What the plaintiffs now propose to do in their |
| 11:40 | 20 | Exhibit A is to create a list where the remaining alleged |
| 11:40 | 21 | secrets are listed as, for example, 1A and then for 1B they |
| 11:40 | 22 | refer to the value, importance and appropriateness of |
| 11:40 | 23 | alleged secret one. Then for D&D they moved to alleged |
| 11:41 | 24 | secret three, and they have a 3A for what that secret was |
| 11:41 | 25 | and then they add a VIA for category 3B and they do the same |

| | | |
|---|---|---|
| 11:41 | 1 | with alleged secret ten.. |
| 11:41 | 2 | Our position is they can't now take each of their |
| 11:41 | 3 | alleged remaining secrets and add a VIA secret for each |
| 11:41 | 4 | individual one.  That's not how they framed their alleged |
| 11:41 | 5 | secrets in their 2019, 210 statement.  There can be a final |
| 11:41 | 6 | category in each bucket for VIA but it should pertain to the |
| 11:41 | 7 | set list of alleged secrets that remain. |
| 11:41 | 8 | So, if we take D&D as an example, they can allege |
| 11:41 | 9 | -- they have alleged secret one, alleged secret 3, alleged |
| 11:41 | 10 | secret 10 and then they can keep No. 16 which was how it was |
| 11:41 | 11 | originally numbered and say the alleged value, importance |
| 11:41 | 12 | and appropriateness of 1, 3 and 10.  They can't create new |
| 11:42 | 13 | secrets for each one and that was the concern that we had |
| 11:42 | 14 | when we brought this summary judgment motion. |
| 11:42 | 15 | They are trying to get away from the set list, and |
| 11:42 | 16 | we appreciate the set list can shrink because they have |
| 11:42 | 17 | abandoned certain secrets and we don't object to that.  They |
| 11:42 | 18 | can't now create a new VIA secret for each category because |
| 11:42 | 19 | that's not how it was initially pled. |
| 11:42 | 20 | It's duplicative and it creates confusion because |
| 11:42 | 21 | value is something the jury needs to determine for each of |
| 11:42 | 22 | these alleged secrets so to create a 1B for each one that |
| 11:42 | 23 | refers to its value is confusing and it's not how they |
| 11:42 | 24 | initially pled their trade secrets. |
| 11:42 | 25 | So, the way it should work is their Exhibit A |

11:42  1    should have secret 1, 3, 10, whatever the remaining ones are

11:42  2    and then the VIA one at the end that refers to that set list

11:42  3    of secrets that remain.

11:42  4           Another reason for this is that we have taken

11:42  5    discovery with the numbering they initially included in

11:43  6    their statements.  We have experts reports with statements

11:43  7    about, for example, alleged secret 16.  We have testimony

11:43  8    from deponents.  If we start changing the numbers at this

11:43  9    point it's unfairly confusing.

11:43  10          So I don't think the dispute is as was

11:43  11   characterized by Mr. Re.  We are not arguing that we should

11:43  12   be talking to the jury about the abandoned secrets.  We are

11:43  13   talking about using the numbering and the formatting that

11:43  14   they used initially rather create a new VIA secret to

11:43  15   accompany each individual one.

11:43  16          I will just add there is a similar issue with the

11:43  17   BM trade secrets.  There is a knowledge category at the end,

11:43  18   there was alleged BM Secret No. 7.  They have done the same

11:43  19   thing there in their Exhibit A, where they have taken

11:43  20   knowledge of the plaintiffs allegedly practicing this secret

11:43  21   and included it as a category C for each of the remaining

11:43  22   secrets.

11:43  23          So they have alleged BM secret 1 which is A, the

11:43  24   initially pled secret.  They have added 1B which is the

11:44  25   knowledge and number 1C which is the VIA so they are again

11:44   1    multiplying the number of secrets, creating new numbers.

11:44   2    Whatever they do with those final categories should remain

11:44   3    as they initially pled, and it should pertain to the set

11:44   4    list as Your Honor's summary judgment opinion acknowledges

11:44   5    -- it should not be imported into each individual secret..

11:44   6            THE COURT:  Thank you.

11:44   7            MR. RE:  Okay, now I think the issue is more

11:44   8    narrow.  What I am hearing is we should write it the same

11:44   9    way as the 2019. But in the 2019, the list was much longer.

11:44   10   First of all, the 2019 was a discovery tool so we are now

11:44   11   free to negotiate how it should be presented at trial.

11:44   12           What I now hear is it seems, at least, there is

11:44   13   agreement on what the trade secret is.  And what I was

11:44   14   hearing earlier, what I thought the issue was, is there is a

11:44   15   dispute about the or or the and.  And I can't tell from what

11:45   16   was just argued that -- if there is agreement that the

11:45   17   value, importance goes to each trade secret or is it

11:45   18   collective?

11:45   19           If there is agreement that it is individual like

11:45   20   Apple always understood it to be -- now we are not talking

11:45   21   about a miscommunication here.  As I said, Apple has always

11:45   22   maintained that the value, importance and appropriateness

11:45   23   dependent claim, for lack of a better word, applies to each

11:45   24   trade secret in the alternative.  And that's what I thought

11:45   25   the key issue was and I can't tell if Apple is agreeing that

11:45  1  the value, importance and appropriateness trade secret

11:45  2  applies to each trade secret individually or collectively

11:45  3  because they always understood.

11:45  4      To the extent Ms. Wigmore is arguing about value

11:46  5  being unclear and confusing, that was specifically argued on

11:46  6  summary judgment and they lost on the vagueness of that term

11:46  7  on summary judgment.  So I can't tell -- I think maybe we

11:46  8  need to negotiate a little more but I can't tell if they are

11:46  9  in agreement that it's in the alternative that the value,

11:46  10  importance and appropriateness applies to each trade secret

11:46  11  1 or 3 or 10.

11:46  12      I thought they thought it was an and but I can't

11:46  13  tell if we are in the agreement that it was at least in the

11:46  14  alternative.

11:46  15      THE COURT:  Ms. Wigmore.

11:46  16      MS. WIGMORE:  What Apple is seeking is the same

11:46  17  formatting and description that has been part of the case

11:46  18  all along.  So to use D&D as as example.  Initial D&D Secret

11:46  19  16 was phrased the value, importance and appropriateness of

11:47  20  1 through 15 above and it goes on to use some words I won't

11:47  21  read on the public record but that's the relevant portion.

11:47  22      So now 1 to 15 don't all remain in the case so we

11:47  23  would ask that that format remain the same.  That number 16

11:47  24  remain in the case but instead of referring to 1 through 15

11:47  25  above, it refer to 1, 3 and 10 above because those are the

| | | |
|---|---|---|
| 11:47 | 1 | ones that remain. |
| 11:47 | 2 | That's what we're asking for.  We are asking that |
| 11:47 | 3 | they not be permitted to create a new alleged secret for |
| 11:47 | 4 | each of 1, 3 and 10 called value.  They get one at the end |
| 11:47 | 5 | that refers to the set list of 1, 3 and 10 which is exactly |
| 11:47 | 6 | how they phrased it before with the minor exception that we |
| 11:47 | 7 | have taken out from 1 through 15 the ones that are no longer |
| 11:47 | 8 | part of the case.  So it's one alleged secret at the end of |
| 11:47 | 9 | the list, it's not an individual value secret for each of |
| 11:48 | 10 | the claimed secrets. |
| 11:48 | 11 | THE COURT:  You would agree that some or all of |
| 11:48 | 12 | the remaining trade secrets would figure as part of the |
| 11:48 | 13 | value of the trade secret. |
| 11:48 | 14 | MS. WIGMORE:  Yes, but it shouldn't be listed |
| 11:48 | 15 | multiple times for the jury. |
| 11:48 | 16 | THE COURT:  It seems to me we can solve the basic |
| 11:48 | 17 | problem at the time of the instructions. |
| 11:48 | 18 | MS. WIGMORE:  We think it's relevant for opening |
| 11:48 | 19 | statement and for how witnesses are cross-examined. |
| 11:48 | 20 | THE COURT:  In terms of numbering, I think if you |
| 11:48 | 21 | only have 3 or 4 out of the initial 16, it leaves the unfair |
| 11:48 | 22 | implication that some of the matters asserted weren't trade |
| 11:48 | 23 | secrets.  I don't think they need to bear that burden.  I |
| 11:48 | 24 | don't have any trouble just numbering from the top, one, |
| 11:48 | 25 | two, three as long as the secrets are the same.  It may be |

| | | |
|---|---|---|
| 11:48 | 1 | experts refer to them differently in their reports, but it's |
| 11:48 | 2 | not a giant task especially if we are only talking about 3 |
| 11:49 | 3 | or 4 trade secret for them to refer them by the current |
| 11:49 | 4 | number. |
| 11:49 | 5 | MS. WIGMORE:  Even the plaintiffs are not |
| 11:49 | 6 | suggesting a renumbering, they have phrased in Exhibit A, |
| 11:49 | 7 | they have used the numbers 1, 3, and 10, they haven't gone |
| 11:49 | 8 | consecutive.  But what they have done is added another one |
| 11:49 | 9 | after each of 1, 3, and 10 that refers to value.  We think |
| 11:49 | 10 | the value, whatever that is, should be one alleged secret at |
| 11:49 | 11 | the end that refers back to the three that remain. |
| 11:49 | 12 | THE COURT:  Okay.  Thank you. |
| 11:49 | 13 | Mr. Re. |
| 11:49 | 14 | MR. RE:  I beg to differ.  What I hear, she did |
| 11:49 | 15 | not respond to my question, and that is they are sticking us |
| 11:49 | 16 | with the 2019 and they are arguing an ambiguity to |
| 11:49 | 17 | perpetuate that to the trial. |
| 11:49 | 18 | THE COURT:  But if the jury is told as part of |
| 11:49 | 19 | considering the value you may consider each of the |
| 11:49 | 20 | individual ones individually or collectively to determine |
| 11:49 | 21 | whether there is anything to support a value trade secret. |
| 11:49 | 22 | What's the difference? |
| 11:50 | 23 | MR. RE:  Well, if it's individually, in the |
| 11:50 | 24 | alternative. |
| 11:50 | 25 | THE COURT:  Right. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

34

| | | |
|---|---|---|
| 11:50 | 1 | MR. RE:  Ms. Wigmore didn't say that. |
| 11:50 | 2 | THE COURT:  But I'm saying that. |
| 11:50 | 3 | MR. RE:  Then we are in agreement.  We are in the |
| 11:50 | 4 | alternative and it's or, then we're in agreement.  Then it's |
| 11:50 | 5 | easy. |
| 11:50 | 6 | THE COURT:  Some or all. |
| 11:50 | 7 | MR. RE:  Some or all. |
| 11:50 | 8 | THE COURT:  It's only one value trade secret. |
| 11:50 | 9 | MR. RE:  But it applies to each one of the value, |
| 11:50 | 10 | importance -- |
| 11:50 | 11 | THE COURT:  No, no, in determining value you may |
| 11:50 | 12 | consider each of the trade secrets either individually or |
| 11:50 | 13 | collectively in determining whether there is value. |
| 11:50 | 14 | MR. RE:  Correct.  That is correct. |
| 11:50 | 15 | THE COURT:  So I think the concern is that by |
| 11:50 | 16 | listing it for each individual there is some sort of |
| 11:50 | 17 | potential beyond the original contention of a single value |
| 11:50 | 18 | trade secret.  So I think that's the way we are going to go |
| 11:50 | 19 | at it and clarify the trade secret.  I think you are all on |
| 11:50 | 20 | the same page. |
| 11:51 | 21 | MR. RE:  I think we -- I think you and I are, I |
| 11:51 | 22 | will find out tomorrow if we are all. |
| 11:51 | 23 | THE COURT:  Mr. Mueller. |
| 11:51 | 24 | MR. MUELLER:  Masimo's Motion In-Limine No. 1 |
| 11:51 | 25 | refers to a couple different categories of information, and |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 11:51 | 1 | with respect to certain aspects of Your Honor's tentative, |
| 11:51 | 2 | we would submit. |
| 11:51 | 3 | In particular, your Honor's tentative decision |
| 11:51 | 4 | that we may not refer to the lawyers preparing certain |
| 11:51 | 5 | materials, we submit on that point. |
| 11:51 | 6 | We ask for clarification on one issue and there is |
| 11:51 | 7 | one issue where we would request reconsideration. |
| 11:51 | 8 | The clarification point, we understand the |
| 11:51 | 9 | tentative to allow us to still refer to the chronology of |
| 11:51 | 10 | when materials were created or not.  So if there was a lack |
| 11:51 | 11 | of materials, for example, in writing, corroborating the |
| 11:52 | 12 | existence of an alleged trade secret before the litigation, |
| 11:52 | 13 | we understand under Your Honor's tentative, we are allowed |
| 11:52 | 14 | to make that point during cross-examination.  We are not |
| 11:52 | 15 | referring to lawyers at all, just making the point referring |
| 11:52 | 16 | to a timeline matter. |
| 11:52 | 17 | THE COURT:  Correct. |
| 11:52 | 18 | MR. MUELLER:  The second point we would ask for |
| 11:52 | 19 | reconsideration is the Dr. Palmatier expert report.  We |
| 11:52 | 20 | understand Your Honor's tentative to be that we may not |
| 11:52 | 21 | refer to the correspondence between certain language in that |
| 11:52 | 22 | report and discovery responses provided by Masimo and |
| 11:52 | 23 | Cercacor in this case. |
| 11:52 | 24 | But Your Honor did say we may inquire into his |
| 11:52 | 25 | independence or any critic that we may have. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

36

| | | |
|---|---|---|
| 11:52 | 1 | THE COURT:  Right. |
| 11:52 | 2 | MR. MUELLER:  So we would ask that we be permitted |
| 11:52 | 3 | to show Dr. Palmatier the similarities between portions of |
| 11:52 | 4 | his report and material submitted by Masimo and Cercacor |
| 11:52 | 5 | without reference to the lawyers.  So we wouldn't say the |
| 11:53 | 6 | lawyers created these.  We would just say that these are |
| 11:53 | 7 | materials that Masimo and Cercacor provided to us.  Your |
| 11:53 | 8 | report and certain sections is verbatim, the same.  We think |
| 11:53 | 9 | that's go to his independence without any mention of |
| 11:53 | 10 | lawyers. |
| 11:53 | 11 | We would ask respectfully that we be permitted to |
| 11:53 | 12 | make a comparison of his report and the materials submitted |
| 11:53 | 13 | by the plaintiffs in this case without referring to the |
| 11:53 | 14 | lawyers involvement in the creation of either. |
| 11:53 | 15 | THE COURT:  Mr. Re. |
| 11:53 | 16 | MR. RE:  We're back to why I filed the motion. |
| 11:53 | 17 | For me to respond to him I have to tell him exactly what |
| 11:53 | 18 | happened.  He has the who copied from whom in reverse.  For |
| 11:53 | 19 | me to explain and respond to that, I need to tell you what |
| 11:53 | 20 | happened with the lawyers. |
| 11:53 | 21 | I don't think that's fair to confer something that |
| 11:53 | 22 | I know to be absolutely false and does not bear on the |
| 11:53 | 23 | independence of Dr. Palmatier.  It's the reverse.  He helped |
| 11:53 | 24 | the lawyers, not the other way around. |
| 11:54 | 25 | To get into those facts, this is why we filed the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

37

| | | |
|---|---|---|
| 11:54 | 1 | motion.  I want the lawyers out of it.  If he does that, |
| 11:54 | 2 | starts showing documents written by the lawyers, the only |
| 11:54 | 3 | way to bring that to fairness is to start to put the lawyers |
| 11:54 | 4 | into the trial and I'm trying to keep the lawyers out of it. |
| 11:54 | 5 | I think he enjoys showing documents written by the lawyers. |
| 11:54 | 6 | MR. MUELLER:  Dr. Palmatier, at his deposition, |
| 11:54 | 7 | admitted that he did not author those discovery responses. |
| 11:54 | 8 | So what was just represented is exactly the opposite of what |
| 11:54 | 9 | the expert said at his deposition.  So our point is simply |
| 11:54 | 10 | this, we would ask permission to inquire into the similarity |
| 11:54 | 11 | between a document that he concededly did not author, namely |
| 11:54 | 12 | the discovery responses on the one hand and the report on |
| 11:54 | 13 | other.  We think that goes to his independence or lack |
| 11:54 | 14 | thereof.  We can do that without referring to the lawyers at |
| 11:54 | 15 | all. |
| 11:55 | 16 | THE COURT:  I want to take one more look at this. |
| 11:55 | 17 | Let's go to the Pretrial Conference Order. |
| 11:55 | 18 | MR. MUELLER:  We have a number of issues with the |
| 11:55 | 19 | Pretrial Conference Order.  We are happy to let the |
| 11:55 | 20 | plaintiffs go first, whatever Your Honor's preference. |
| 11:55 | 21 | MR. RE:  Yes, I do have some issues with the |
| 11:55 | 22 | Pretrial Conference Order that the parties jointly submitted |
| 11:55 | 23 | on March 1. |
| 11:55 | 24 | The first modification that I believe there will |
| 11:55 | 25 | be no debate about is we did narrow some claims and Masimo |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

38

| | | |
|---|---|---|
| 11:55 | 1 | dropped claims 18, 19, 24, 25, and 27 that are listed on |
| 11:55 | 2 | pages 3 and 4 of the Joint Pretrial Conference Order that |
| 11:55 | 3 | was proposed by the parties on March 1. |
| 11:55 | 4 | So those can be eliminated. |
| 11:55 | 5 | THE COURT:  Give me those again, please. |
| 11:55 | 6 | MR. RE:  On page 3, its claims 18, 19, 24, 25, and |
| 11:56 | 7 | 27. |
| 11:56 | 8 | THE COURT:  Okay. |
| 11:56 | 9 | MR. RE:  The next issue we did deal with was the |
| 11:56 | 10 | dispute on page 4.  I don't know to what extent you want to |
| 11:56 | 11 | go into some of these footnotes, but footnote 4 on page 4 |
| 11:56 | 12 | was the issue we just discussed with regard to Exhibit A |
| 11:56 | 13 | versus Exhibit B.  It sounds like the parties have a little |
| 11:56 | 14 | more work to do to come up with an agreed upon exhibit. |
| 11:56 | 15 | The one issue I did want to call the Court's |
| 11:56 | 16 | attention to which I'm assured you noticed was the issue I |
| 11:56 | 17 | raised earlier.  There seems to be one issue where the |
| 11:56 | 18 | parties disagree what goes to the jury and what does not. |
| 11:56 | 19 | That's on page 16 where Apple is contending that |
| 11:56 | 20 | this unclean hands defense dealing with the uneforceability |
| 11:57 | 21 | of the confidentiality agreements they think goes to the |
| 11:57 | 22 | jury.  I see no support for that whatsoever.  I have studied |
| 11:57 | 23 | this issue and it's very clear this is an issue for you and |
| 11:57 | 24 | not the jury. |
| 11:57 | 25 | The jury shouldn't be deciding an equitable issue |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

39

| | | |
|---|---|---|
| 11:57 | 1 | that's dependent on a legal issue.  It seems like the |
| 11:57 | 2 | parties should agree that the unclean hands doesn't go to |
| 11:57 | 3 | the jury.  I don't know if you want me to keep going or |
| 11:57 | 4 | allow counsel to respond to that. |
| 11:57 | 5 | MR. MUELLER:  Briefly, Your Honor.  Your Honor |
| 11:57 | 6 | does have the discretion to send this to the jury or not. |
| 11:57 | 7 | It's certainly up to Your Honor.  We don't think there's a |
| 11:57 | 8 | categorical rule that it go to the jury or not go to the |
| 11:57 | 9 | jury. |
| 11:57 | 10 | I think what we would say, Your Honor, is to the |
| 11:57 | 11 | extent they -- for all the reasons Ms. Amadi said earlier -- |
| 11:57 | 12 | are allowed to rely on an agreement which we believe is |
| 11:57 | 13 | invalid as a matter of law, it would be unfair to not allow |
| 11:57 | 14 | us to also present a contest on the validity of that same |
| 11:58 | 15 | agreement. |
| 11:58 | 16 | They want to be able to use an agreement that is |
| 11:58 | 17 | subject to the legal dispute that Mr. Re just mentioned with |
| 11:58 | 18 | the jury.  We agree there is legal dispute as to the |
| 11:58 | 19 | validity of those agreements.  We think it's an issue that |
| 11:58 | 20 | is ripe for decision by Your Honor.  But if it is permitted |
| 11:58 | 21 | to go to the jury, we think in the matter of Your Honor's |
| 11:58 | 22 | discretion, the jury should also consider the unclean hands |
| 11:58 | 23 | defense. |
| 11:58 | 24 | We believe it's in the -- |
| 11:58 | 25 | THE COURT:  I guess I want to see what the trial |

40

| | | |
|---|---|---|
| 11:58 | 1 | record looks like at the time we settle the instructions. |
| 11:58 | 2 | MR. RE:  I want to clarify one point by |
| 11:58 | 3 | Mr. Mueller.  He keeps saying the validity of the agreement. |
| 11:58 | 4 | That's not correct under the California law.  Under |
| 11:58 | 5 | California law it's the validity of a provision.  There is |
| 11:58 | 6 | no real debate that only a provision can be invalidated.  I |
| 11:58 | 7 | think we had this very issue in the True Wearables case. |
| 11:59 | 8 | Secondly, Mr. Kiani and what they are relying upon |
| 11:59 | 9 | deals with the noncompete provision.  That's not what's at |
| 11:59 | 10 | issue in this case.  What's at issue in this case is the |
| 11:59 | 11 | preservation of confidentiality.  That's what's really at |
| 11:59 | 12 | issue, showing Masimo's reasonable precautions in |
| 11:59 | 13 | maintaining confidentiality. |
| 11:59 | 14 | So, an unclean hands defense that isn't even |
| 11:59 | 15 | connected to challenge the validity of this agreement that |
| 11:59 | 16 | they are not even a party to, so I think the theory is that |
| 11:59 | 17 | if some parts are invalid then we are not being reasonable |
| 11:59 | 18 | in our precautions.  I don't understand that issue, but it |
| 11:59 | 19 | sounds like there's agreement that it's not for the jury.. |
| 11:59 | 20 | It's for you to decide at the appropriate time. |
| 11:59 | 21 | THE COURT:  Well, let's see what the record looks |
| 11:59 | 22 | like. |
| 11:59 | 23 | The next issue.  I have a couple.  Do you have |
| 11:59 | 24 | anything else? |
| 11:59 | 25 | MR. RE:  Another dispute that I would like |

11:59  1   resolved is on footnote 18, on page 26.  We have a dispute

12:00  2   about disclosure of cross-examination exhibits prior to the

12:00  3   cross-examination.

12:00  4           It's our position that those exhibits that will be

12:00  5   used in cross-examination need not be disclosed to the other

12:00  6   side along with other exhibits.

12:00  7           THE COURT:  Why?

12:00  8           MR. RE:  Well, I think it gives a much more clear

12:00  9   honest cross-exam if the witness is not prepared with regard

12:00  10  to the exhibits that will be used on cross.

12:00  11          And interestingly we have experience dealing with

12:00  12  this trial team.  We just tried a case together at the ITC

12:00  13  and Apple was the side that insisted that there be no

12:00  14  disclosure of cross-examination exhibits and we agreed to

12:00  15  that.

12:00  16          There are many reasons why.  One of them is, in my

12:00  17  experience, if you he require disclosure of

12:00  18  cross-examination exhibits what invariably happens is there

12:00  19  is disclosure of numerous exhibits and in fact, it really

12:01  20  becomes a lot of work to go through exhibits that never get

12:01  21  used.

12:01  22          So I think Apple had it right in the last trial we

12:01  23  had where Apple insisted that the witness open up the list

12:01  24  of cross-examination exhibits on camera for the

12:01  25  administrative law judge to see so that the witness could

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

42

| | | |
|---|---|---|
| 12:01 | 1 | verify that they had not seen the cross-examination exhibits |
| 12:01 | 2 | in advance. |
| 12:01 | 3 | And that was fine.  That's what we did our last |
| 12:01 | 4 | trial. |
| 12:01 | 5 | For reasons that I can't really tell, Apple has |
| 12:01 | 6 | done a 180 and wants full disclosure in advance, a day in |
| 12:01 | 7 | advance of the exhibits you might use on cross-examination |
| 12:01 | 8 | of a witness. |
| 12:01 | 9 | I looked, I did some research.  It seems to be |
| 12:01 | 10 | uniform on the Pretrial Conference Orders, particularly by |
| 12:01 | 11 | Chief Judge Stark in Delaware, he never required disclosure |
| 12:02 | 12 | of the cross-examination exhibits prior to the cross-exam. |
| 12:02 | 13 | I think it should be handed over at the time of |
| 12:02 | 14 | the cross-exam, handed to the witness, and then you can get |
| 12:02 | 15 | a fresh, clear, realistic cross-exam rather than one where |
| 12:02 | 16 | the witness has prepared the night before knowing what the |
| 12:02 | 17 | cross-examination is going to be.  I just want a more |
| 12:02 | 18 | truthful, honest cross-exam. |
| 12:02 | 19 | THE COURT:  Mr. Mueller. |
| 12:02 | 20 | MR. MUELLER:  I have done this both ways many |
| 12:02 | 21 | times.  We defer to Your Honor as to how you want to do |
| 12:02 | 22 | this.  What we had suggested in connection with the pretrial |
| 12:02 | 23 | order was that the parties disclose cross-examination |
| 12:02 | 24 | exhibits that would be admitted as distinct from used for |
| 12:02 | 25 | impeachment only which would not need to be disclosed.  The |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

43

| 12:02 | 1 | idea being that if something was going to be actually |
| 12:02 | 2 | admitted into the record to go back with the jury during |
| 12:02 | 3 | deliberations, it would be good for both sides to assess |
| 12:02 | 4 | whether there is a proper foundation with that witness.  But |
| 12:02 | 5 | if Your Honor's preference is no disclosure, we're of course |
| 12:02 | 6 | fine with that.  Whatever Your Honor would prefer we will of |
| 12:03 | 7 | course abide by. |
| 12:03 | 8 | THE COURT:  Mr. Re. |
| 12:03 | 9 | MR. RE:  I believe that it is faster, better that |
| 12:03 | 10 | it not be disclosed.  They are all on the exhibit list.  I'm |
| 12:03 | 11 | not talking about using exhibits that are not on the exhibit |
| 12:03 | 12 | list.  So the objections are known in advance. These are not |
| 12:03 | 13 | impeachment exhibits.  These are substantive |
| 12:03 | 14 | cross-examination exhibits.  These are already disclosed on |
| 12:03 | 15 | the exhibit list and objections are known in advance. |
| 12:03 | 16 | THE COURT:  We will go with no disclosures. |
| 12:03 | 17 | MR. RE:  Thank you, Your Honor. |
| 12:03 | 18 | The next issue which I think many of these issues |
| 12:03 | 19 | can be deferred.  There is one I wanted to raise on page 30. |
| 12:03 | 20 | There seems to be some debate about the ability to present a |
| 12:03 | 21 | rebuttal case.  I think this is an issue that you obviously |
| 12:03 | 22 | have wide discretion on at that time. |
| 12:03 | 23 | THE COURT:  It seems to me that the scope of |
| 12:03 | 24 | rebuttal is not necessarily eliminated by the fact that we |
| 12:04 | 25 | are going to try to call witnesses once.  If you need to go |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:04  1    beyond the scope you take the person as your witness.  I

12:04  2    don't think that's inconsistent with potential for a

12:04  3    rebuttal case.

12:04  4           MR. RE:  I totally agree.  With that taken care

12:04  5    of, I think that might eliminate counsel's argument.

12:04  6           The parties agreed on the cases-in-chief the we

12:04  7    only call a witness once regardless of which party  it is

12:04  8    and the plaintiffs' case will remain open until all the

12:04  9    cross-exams are done of the Apple witnesses for whom are on

12:04  10   our list.  It makes the trial go a lot more quickly.

12:04  11          MR. MUELLER:  We certainly have no objection to

12:04  12   that.  Our concern is a bit different.  Our concern is that

12:04  13   the scope of rebuttal case, we believe, should be limited to

12:04  14   issues on which Masimo and Cercacor bear the burden of

12:04  15   proof.

12:04  16          The reason for that is we believe that the orderly

12:04  17   practice of evidence would be on the issues for which they

12:05  18   bear the burden of proof.  They put on that evidence.

12:05  19          We have offered that that could be held open

12:05  20   through the Apple case to ensure that if there is a witness

12:05  21   that they wanted to use to help support issues on which

12:05  22   there bear the burden of proof.

12:05  23          THE COURT:  That's a different issue.

12:05  24          MR. MUELLER:  We think a rebuttal case is

12:05  25   different.  The rebuttal case is after we have finished and

| | | |
|---|---|---|
| 12:05 | 1 | if they're unveiling new arguments, new theories, new |
| 12:05 | 2 | witness testimony on issues for which they bear the burden |
| 12:05 | 3 | of proof at the end of the trial, it deprives us of an |
| 12:05 | 4 | opportunity to fully and fairly respond unless we are given |
| 12:05 | 5 | a surrebuttal case. |
| 12:05 | 6 | THE COURT:  The scope is going to be limited by |
| 12:05 | 7 | the scope of your case. |
| 12:05 | 8 | MR. MUELLER:  We would ask not just the scope of |
| 12:05 | 9 | our case but also that they not be allowed to present |
| 12:05 | 10 | rebuttal testimony on issues for which they bear the burden. |
| 12:05 | 11 | THE COURT:  Why is that? |
| 12:05 | 12 | I mean you make an attack on a particular argument |
| 12:05 | 13 | in your case-in-chief on which they have the burden.  Why |
| 12:05 | 14 | can't they come back in rebuttal with evidence saying your |
| 12:06 | 15 | argument isn't valid for X, Y, and Z? |
| 12:06 | 16 | MR. MUELLER:  Because if they raise new points -- |
| 12:06 | 17 | THE COURT:  They are limited by the scope of your |
| 12:06 | 18 | case.  If you bring up new cases, new attacks on an issue |
| 12:06 | 19 | where they have the burden of proof, I think they ought to |
| 12:06 | 20 | be able to come in with a rebuttal witness to address what |
| 12:06 | 21 | new attack you advance.  If they made their prima facie |
| 12:06 | 22 | case, they made their prima facie case.  I don't think they |
| 12:06 | 23 | have to anticipate in their prima facie case all the |
| 12:06 | 24 | arguments that you advance in the defense case. |
| 12:06 | 25 | MR. MUELLER:  Well, to the extent that they raise |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:06    1    new points in their rebuttal case, we would request a

12:06    2    surrebuttal case to address that.

12:06    3          THE COURT:  I can't tell you until we get there.

12:06    4    Indeed it may be such that no rebuttal case is appropriate.

12:06    5          MR. MUELLER:  Understood.

12:06    6          If I take Your Honor's point, to the extent we

12:06    7    make new arguments as part of our opposition case, they

12:07    8    would be permitted a rebuttal case.  If they made new

12:07    9    arguments as part of that case, we could ask Your Honor for

12:07   10    leave to present surrebuttal testimony.

12:07   11          THE COURT:  Right.

12:07   12          MR. MUELLER:  Understood.

12:07   13          MR. RE:  I'm burdened by having done this a little

12:07   14    too long.

12:07   15          The issue now -- what Mr. Mueller, the word he

12:07   16    used was new, that was the weasel word.  You are correct.  I

12:07   17    agree with everything you said.

12:07   18          THE COURT:  You always do that.

12:07   19          MR. RE:  Well, I think you are right.  And you're

12:07   20    absolutely right, and I have had the benefit of being here

12:07   21    before.

12:07   22          I think the issue is this: we don't know what

12:07   23    Apple is going to present.  If you look at their memo of

12:07   24    contentions you have no idea what references they are going

12:07   25    to rely upon.  They just incorporated all their prior

| | | |
|---|---|---|
| 12:07 | 1 | discovery.  It comes down to issues such as the generally |
| 12:08 | 2 | known.  It's generally known to those in the industry.  We |
| 12:08 | 3 | don't even know what references they're going to present so |
| 12:08 | 4 | it's impossible to anticipate in our prima facie case what |
| 12:08 | 5 | Apple might do the following week. |
| 12:08 | 6 | That's why we want the ability to respond to not |
| 12:08 | 7 | what Mr. Mueller called new but to, for example, references |
| 12:08 | 8 | that their experts may rely on to show the trade secret is |
| 12:08 | 9 | in the public domain. |
| 12:08 | 10 | THE COURT:  They are going to be disclosed |
| 12:08 | 11 | references or they won't be able to use them. |
| 12:08 | 12 | MR. RE:  They disclosed hundreds of them.  And I |
| 12:08 | 13 | doubt they are going to present hundreds at this trial. |
| 12:08 | 14 | THE COURT:  That's probably true.  But it seems to |
| 12:08 | 15 | me the parties should have been discussing claims and prior |
| 12:08 | 16 | art reference limitations long ago.  If you think there are |
| 12:08 | 17 | too many out there, it's a little late in the day to solve |
| 12:08 | 18 | that problem. |
| 12:08 | 19 | MR. RE:  Well, we tried and their memo to this day |
| 12:09 | 20 | doesn't reveal any references.  A big long memo but it |
| 12:09 | 21 | doesn't tell me anything about their case.  I learned |
| 12:09 | 22 | nothing from reading their memo.  So the reason this |
| 12:09 | 23 | rebuttal matters is that we can't possibly anticipate what |
| 12:09 | 24 | they will say on certain issues.  That's why the rebuttal |
| 12:09 | 25 | case is important. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:09   1          THE COURT:  Let's see what the record looks like
12:09   2   at the end of the defense case and if there is a rebuttal
12:09   3   case, what the record looks like then.  But I understand the
12:09   4   issues.
12:09   5          MR. RE:  I think everything else in the Pretrial
12:09   6   Conference Order can be resolved through the charge
12:09   7   conference and many of the debates in the footnotes, I
12:09   8   think, are really jury instructions issues unless the Court
12:09   9   wants to hear further on those changes.
12:09   10          I see it's past the noon hour and so all the other
12:09   11   issues that I have do not relate specifically to the
12:09   12   Pretrial Conference Order. I do have a few miscellaneous
12:09   13   issues.
12:09   14          THE COURT:  Mr. Mueller.
12:09   15          MR. MUELLER:  There a couple more on the pretrial
12:09   16   order.  Two in particular.
12:10   17          First, Your Honor, there is a couple of damages
12:10   18   issues that we wanted to raise mainly for the purpose of
12:10   19   putting on the Court's radar some issues that we expect will
12:10   20   require further attention as the trial unfolds.  Ms. Frazier
12:10   21   can address those.
12:10   22          MS. FRAZIER:  Thank you, Your Honor.
12:10   23          Two issues related to damages that have come to
12:10   24   light through the Joint Pretrial Order exchanges and also
12:10   25   plaintiffs' memo of contentions of fact and law.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:10   1          The first issue is the scope of information

12:10   2   plaintiffs will be permitted to present regarding damages

12:10   3   related to any lost profits they have alleged to have

12:10   4   suffered.

12:10   5          The second is whether the jury should be asked to

12:10   6   decide if Apple misappropriated any alleged trade secret

12:10   7   through acquisition alone.

12:10   8          With respect to lost profits, the last time we

12:10   9   were before you plaintiff suggested that they could put on a

12:11   10  loss profit case through fact witness testimony.  Your Honor

12:11   11  observed at the time that in the abstract they could do that

12:11   12  without an expert but if they go that route, there would be

12:11   13  disclosure issues.

12:11   14         We are now three weeks away from trial and Apple

12:11   15  has no disclosure as to what lost profits plaintiffs maybe

12:11   16  seeking or how they are calculating those lost profits.

12:11   17         Rule 26(a), as Your Honor well knows, requires a

12:11   18  disclosure of the computation.  Rule 26(e) required

12:11   19  plaintiffs to supplement anything when they learned it was

12:11   20  incomplete.

12:11   21         Their last, most recent disclosures which were

12:11   22  made on August 3, 2022, said that plaintiffs had not yet

12:11   23  made a computation of any category of damages.

12:11   24         THE COURT:  It's getting awfully late in the day

12:12   25  if that's the case.

12:12  1        MS. FRAZIER:  They have made no supplemental

12:12  2   disclosures since Mr. Kinrich's lost profits opinions were

12:12  3   excluded.  Moreover, the only disclosures we have are vague

12:12  4   statements in their memo of contentions of fact and law that

12:12  5   raise very serious concerns for us.

12:12  6        They appear to be intending, Your Honor, to

12:12  7   introduce through different fact witnesses the same

12:12  8   hypothetical opinions that you already ruled were stricken

12:12  9   when offered through the disclosures in the fall..

12:12  10        The contentions of fact and law also allude to new

12:12  11   evidence of -- since we're on public record, I won't go into

12:12  12   specifics, but new evidence about conversations with third

12:12  13   parties that again, Your Honor, have not been disclosed to

12:12  14   us.

12:12  15        I would like if we could to speak more

12:12  16   specifically about some of the representations in the

12:12  17   contentions of facts and law and our concerns with them but,

12:13  18   Your Honor, needless to say we do not think there should be

12:13  19   a lost profits case at this point.

12:13  20        THE COURT:  Bottom line, you are entitled to the

12:13  21   computation.  You were entitled to the computation the day

12:13  22   the initial disclosures were made.  Bedrock, you are

12:13  23   entitled to computations before you go to trial..

12:13  24        MS. FRAZIER:  Absolutely and you have noted before

12:13  25   the close of fact discovery that there had been continuing

12:13   1   issues with the damages disclosures and warned at that time

12:13   2   we were reaching a late stage to defend ourselves against a

12:13   3   damages theory, the parameters of which are not known..

12:13   4           We now submit, Your Honor, we are way too late.

12:13   5   It's way too close to trial to be interjecting a new theory,

12:13   6   a new lost profits number at this stage.  So we would

12:13   7   request, Your Honor, clarity that plaintiffs are not

12:13   8   permitted to introduce a lost profits demand.

12:13   9           THE COURT:  Well, I'm obviously not going to deal

12:13   10  with that issue on the fly at the pretrial conference, but

12:14   11  where is your computation and what's the number?  Bottom

12:14   12  line when one of you makes the argument to the jury, how

12:14   13  much are you going to tell the jury you should be given.

12:14   14  What is that number?

12:14   15          MR. HORNE:  Your Honor, to your point.

12:14   16          THE COURT:  Do you have that number?

12:14   17          MR. HORNE:  I don't have that number with me.

12:14   18          THE COURT:  Where is it?

12:14   19          MR. HORNE:  I have to check with the team.  This

12:14   20  is forced on me right now.  This hasn't come up in any of

12:14   21  the meetings.  It didn't come up with discussions about the

12:14   22  Pretrial Conference Order.  Didn't come up after we got our

12:14   23  memo of contentions out, so I'm taken back.

12:14   24          THE COURT:  You mean you are being blind-sided?

12:14   25          MR. HORNE:  Yes.

52

| | | |
|---|---|---|
| 12:14 | 1 | I understand the irony, Your Honor. |
| 12:14 | 2 | THE COURT:  Somewhat ironic position. |
| 12:14 | 3 | You are going to need to make your disclosure that |
| 12:14 | 4 | complies with Rule 26(a).  Depending on what it is, and what |
| 12:14 | 5 | the sufficiency is and what the complexity is, we are going |
| 12:14 | 6 | to have a discussion as to whether it's adequate or timely. |
| 12:15 | 7 | MR. HORNE:  Understood, Your Honor. |
| 12:15 | 8 | MS. FRAZIER:  May we have a chance to respond, |
| 12:15 | 9 | once we have received that disclosure, to Your Honor with |
| 12:15 | 10 | respect to sufficiency, how would you like us to approach |
| 12:15 | 11 | that? |
| 12:15 | 12 | THE COURT:  Put in a memo. |
| 12:15 | 13 | MS. FRAZIER:  Your Honor, the second issue is the |
| 12:15 | 14 | question of whether the jury should be asked to decide |
| 12:15 | 15 | whether Apple has misappropriated any alleged trade secret |
| 12:15 | 16 | through acquisition alone. |
| 12:15 | 17 | Our position, Your Honor, is that they should not |
| 12:15 | 18 | be asked that because plaintiffs have never disclosed a |
| 12:15 | 19 | damages theory based on acquisition alone.  The parties |
| 12:15 | 20 | dispute on this issue is reflected on page 5 of the Joint |
| 12:15 | 21 | Pretrial Order at footnote 5 and 6. |
| 12:15 | 22 | Had we known plaintiffs were intending to pursue |
| 12:15 | 23 | this, we could have discussed it earlier at summary judgment |
| 12:15 | 24 | but simply put, Your Honor, plaintiffs have not disclosed |
| 12:15 | 25 | any theory of damages based on acquisition alone. |

53

12:15  1              The CACI jury instructions are explicit that

12:16  2      unless there is such a theory, the jury should not be asked

12:16  3      to determine whether there is misappropriation by

12:16  4      acquisition alone as distinct from misappropriation by use

12:16  5      or disclosure.

12:16  6              We have asked plaintiffs repeatedly over the

12:16  7      course of the last week or two to identify for us if they

12:16  8      disclosed anywhere in the record a theory of damages based

12:16  9      on acquisition alone.  They have not identified one for us.

12:16  10     They have simply pointed to Mr. Kinrich's damage opinions

12:16  11     and claimed that those are not limited to any specific type

12:16  12     of misappropriation.

12:16  13             However, following this Court's Daubert order,

12:16  14     Mr. Kinrich is left with only one viable opinion which

12:16  15     relates to the profits earned that he says are attributable

12:16  16     to the blood oxygen and ECG features in Apple watch.  That

12:17  17     theory necessarily depends on use of those features and, in

12:17  18     fact, we noted that in our Daubert motion that our concern

12:17  19     was he was not differentiating between secrets that were

12:17  20     used versus not used.

12:17  21             And plaintiffs responded in the Daubert briefing

12:17  22     that Mr. Kinrich had assumed causation for purposes of his

12:17  23     opinions and that they would prove causation at trial.  With

12:17  24     respect to his surviving opinion in particular, they

12:17  25     represented that they would present, quote, evidence from

| | | |
|---|---|---|
| 12:17 | 1 | which a reasonable jury could conclude that Apple used |
| 12:17 | 2 | Masimo's technical trade secrets in developing the blood |
| 12:17 | 3 | oxygen feature and Masimo's marketing trade secrets in |
| 12:17 | 4 | marketing both the blood oxygen and ECG features.  That was |
| 12:17 | 5 | at Docket 1164-1. |
| 12:17 | 6 | In short, this is not an acquisition only theory. |
| 12:17 | 7 | It depends on use. |
| 12:18 | 8 | So we ask, Your Honor, that the jury not be asked |
| 12:18 | 9 | to decide misappropriation by acquisition alone.  For |
| 12:18 | 10 | today's purposes, we just wanted to preview it because it |
| 12:18 | 11 | will come up in the context of both the jury instructions |
| 12:18 | 12 | and the verdict form. |
| 12:18 | 13 | Thank you, Your Honor. |
| 12:18 | 14 | THE COURT:  Okay. |
| 12:18 | 15 | MS. FRAZIER:  Thank you, Your Honor. |
| 12:18 | 16 | MR. HORNE:  Brian Horne for Masimo and Cercacor. |
| 12:18 | 17 | First, I wanted to point out that on page 5 of the |
| 12:18 | 18 | Pretrial Conference Order, 4 and 5, these are the elements |
| 12:18 | 19 | of misappropriation.  This part of the Pretrial Conference |
| 12:18 | 20 | Order doesn't relate to damages at all.  And what I think I |
| 12:18 | 21 | hear Apple saying is if you don't have a damages theory on |
| 12:18 | 22 | acquisition, you don't even get a liability question on |
| 12:18 | 23 | acquisition.  We believe that's wrong. |
| 12:19 | 24 | Second, we did disclose that our lost profits |
| 12:19 | 25 | theory is based on acquisition alone.  We disclosed that in |

12:19   1    our interrogatory response.  I won't read through all the

12:19   2    interrogatory disclosures.  We do through our interrogatory

12:19   3    response, our opposition to the summary judgment made this

12:19   4    clear.  Apple's Daubert motion made clear they understood.

12:19   5    We believe made clear they understood that our lost profits

12:19   6    theory is based on acquisition as well as use.

12:19   7              So we agree this is a jury instruction fight.  I

12:19   8    can go into more depth if the Court would like but I don't

12:19   9    think that's necessary right now.

12:19   10             THE COURT:  Mr. Mueller.

12:19   11             MR. MUELLER:  We have one final issue on the Joint

12:19   12   Pretrial Conference order.  Mr. Selwyn will handle that.

12:19   13             MR. SELWYN:  Your Honor, I want to briefly address

12:19   14   the issue of who the plaintiffs say are the unnamed

12:19   15   inventors on certain Apple patents.  That issue has been a

12:19   16   moving target throughout this case and the Joint Pretrial

12:20   17   Conference order shows it continues to be.

12:20   18             To give Your Honor just one example, for the '475,

12:20   19   '754 patent, the plaintiffs now say in the Joint Pretrial

12:20   20   Conference Order that four of plaintiffs' employees should

12:20   21   be named as an inventor.  In their Fourth Amended Complaint

12:20   22   they had identified three.  Plaintiffs' expert only offered

12:20   23   an opinion with respect to one and the one that he

12:20   24   identified is not even one identified in the Fourth Amended

12:20   25   Complaint..

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:20   1          Then on page 9 of the Joint Pretrial Conference

12:20   2   Order, the plaintiffs say that their expert will testify

12:20   3   that four of plaintiffs' employees should be named as an

12:20   4   inventor.  Again, where he identified only one of them in

12:20   5   his report.

12:20   6          So, it appears to us that their expert intends to

12:20   7   dramatically exceed the scope of his report.

12:20   8          THE COURT:  Well, the remedy is obvious, isn't it?

12:21   9          MR. SELWYN:  That he be confined to his report.

12:21   10         THE COURT:  I don't think that's a novel

12:21   11  proposition.  Does that solve your issue?

12:21   12         MR. SELWYN:  That would solve our issue with

12:21   13  respect to the shifting sands of the inventors.

12:21   14         There is one other issue that the Joint Pretrial

12:21   15  Conference Order presents and this is on page 6.  The

12:21   16  plaintiffs are suggesting that they only need proof that at

12:21   17  least one inventor assigned to Masimo his or her interest in

12:21   18  the patent or made an inventive contribution under

12:21   19  obligation to assign..

12:21   20         There are certain patents where they are claiming

12:21   21  that there are multiple unnamed inventors.  We are concerned

12:21   22  that the lack of specificity in the Joint Pretrial

12:21   23  Conference Order is a preview again of plaintiffs intent

12:21   24  both to have a shifting sands approach and also to have

12:21   25  ambiguity in the jury instructions about who is the unnamed

12:21  1    inventor to the extent that the jury finds that.

12:21  2         So this is both an issue of disclosure and also an

12:22  3    issue that we think is likely to come up in the context of

12:22  4    the jury instructions to the extent that they insist on it

12:22  5    saying at least one named inventor without giving the jury

12:22  6    an opportunity, to the extent that they agree on the

12:22  7    allegation, to identify who that is.

12:22  8         THE COURT:  Okay.  Again, I think this is an issue

12:22  9    we will take up at the time of settling or on Rule 50(a)

12:22  10   motions with respect to particular claims and particular

12:22  11   elements.

12:22  12        Thank you.

12:22  13        MR. MUELLER:  That's all we had for the Joint

12:22  14   Pretrial Conference Order.  We also have some miscellaneous

12:22  15   issues.

12:22  16        THE COURT:  Let's take a short break.  Let's not

12:22  17   take a lunch break you, but let's take a short break.

12:22  18        (Recess)

12:31  19        THE COURT:  Mr. Re.

12:31  20        MR. RE:  Thank you, Your Honor.

12:31  21        One issue.  I think the parties agree that the

12:31  22   rules that are going to apply is sequestration of witnesses,

12:31  23   and that would apply to everyone except for one client

12:31  24   representative and the retained experts.

12:31  25        THE COURT:  Okay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

58

| | | |
|---|---|---|
| 12:31 | 1 | MR. MUELLER:  We are fine with that, Your Honor. |
| 12:31 | 2 | THE COURT:  Okay. |
| 12:31 | 3 | MR. RE:  Next, with regard to the closing of the |
| 12:31 | 4 | courtroom, I would like to keep that to a minimum. |
| 12:31 | 5 | THE COURT:  Yes. |
| 12:31 | 6 | MR. RE:  We are trying our best to limit only to |
| 12:31 | 7 | the disclosure of the trade secrets themselves.  I don't |
| 12:31 | 8 | believe there is really much else as far as e-mails and |
| 12:31 | 9 | things like that.  I don't think the courtroom should be |
| 12:31 | 10 | closed.  I don't know if counsel had any problem with that. |
| 12:32 | 11 | MR. MUELLER:  I do have a few things to say about |
| 12:32 | 12 | that. |
| 12:32 | 13 | THE COURT:  Okay. |
| 12:32 | 14 | MR. MUELLER:  Your Honor, I certainly agree with |
| 12:32 | 15 | the general principal that the courtroom should be sealed or |
| 12:32 | 16 | the sealing of the courtroom should be kept to a minimum.  I |
| 12:32 | 17 | very much agree. |
| 12:32 | 18 | There is a particular issue we have, we want to |
| 12:32 | 19 | raise with Your Honor with respect to sealing which will |
| 12:32 | 20 | manifest itself in the proposed jury instructions but there |
| 12:32 | 21 | are a couple connected issues that I would like to also |
| 12:32 | 22 | raise now. |
| 12:32 | 23 | The particular issue we think the jury should be |
| 12:32 | 24 | instructed that when Your Honor seals the courtroom, that is |
| 12:32 | 25 | not Your Honor in any way validating or corroborating the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

59

| | | |
|---|---|---|
| 12:32 | 1 | contention that these are, in fact, trade secrets. |
| 12:32 | 2 | THE COURT:  That's fine.  Remind me of that the |
| 12:32 | 3 | first time we have a sealed section. |
| 12:32 | 4 | MR. MUELLER:  The more fundamental question goes |
| 12:32 | 5 | beyond sealing and it really bears on the complexity of the |
| 12:33 | 6 | issues that the jury is going to be presented with here, |
| 12:33 | 7 | which includes some trade secret allegations, some patent |
| 12:33 | 8 | allegations, various buckets, so what we are trying to do, |
| 12:33 | 9 | Your Honor, and we'd ask Your Honor's consideration of ideas |
| 12:33 | 10 | that we propose with respect to the helping the jury working |
| 12:33 | 11 | through the complexity.  I just want to raise a few right |
| 12:33 | 12 | now.. |
| 12:33 | 13 | One was the proposed jury instructions I just |
| 12:33 | 14 | mentioned but there are a couple of others as well. |
| 12:33 | 15 | I think both sides believe that once Your Honor |
| 12:33 | 16 | has resolved the proper format of the description of the |
| 12:33 | 17 | trade secrets which Ms. Wigmore and Mr. Re discussed |
| 12:33 | 18 | earlier, whatever Your Honor's final ruling is on that |
| 12:33 | 19 | should be part of juror notebooks. |
| 12:33 | 20 | Why we think that is significant, it will give the |
| 12:33 | 21 | jurors a reference point that we can cross-reference during |
| 12:33 | 22 | the course of the trial including to avoid having to seal |
| 12:33 | 23 | the court. |
| 12:34 | 24 | As Your Honor knows, pursuant to Your Honor's |
| 12:34 | 25 | ruling, we can't even tell the Apple folks what the alleged |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:34  1   trade secrets are and one way we can try to navigate around

12:34  2   that is by cross-referencing the description that the jurors

12:34  3   have that the witnesses don't.  I think both parties ask

12:34  4   that that be part of juror notebooks.

12:34  5         And we would also ask if you could give us an

12:34  6   opportunity to make a proposal to you on transition

12:34  7   statements for witnesses to allow us to say to the jury the

12:34  8   next witness we believe is relevant to 4, 7 and 8.

12:34  9         THE COURT:  I think that's appropriate.

12:34  10         MR. MUELLER:  Now, also with respect to the

12:34  11  navigation of issues for the jury, I think our concerns were

12:34  12  only amplified with what we heard this morning with respect

12:34  13  to Motion In-Limine No. 2.  I will explain why that relates

12:34  14  to logistical issues right now.  We heard that there is

12:34  15  going to be an attempt, if Your Honor would permit it, to

12:34  16  use certain e-mails that have utterly nothing to do with the

12:35  17  actual trade secrets in the case to establish a pattern or

12:35  18  practice or plan.

12:35  19         Now we think that's inappropriate for all the

12:35  20  reasons Mr. Selwyn covered but the logistical reason why

12:35  21  it's problematic is that these are things that have never

12:35  22  been listed on their disclosure of alleged trade secrets so

12:35  23  how could it be a pattern or a plan of bad acts when there

12:35  24  has never been an allegation of a bad act at all.

12:35  25         For us to respond to these attempts to draw

61

| | | |
|---|---|---|
| 12:35 | 1 | inferences from things that were never alleged to be trade |
| 12:35 | 2 | secrets would require us to show, for example, that the |
| 12:35 | 3 | information that was quoted this morning was generally |
| 12:35 | 4 | available information.  It simply bore on a candidate's |
| 12:35 | 5 | technical expertise as a general matter, not any attempt to |
| 12:35 | 6 | acquire a trade secret.  We would have to call a witness on |
| 12:35 | 7 | that subject.  We would have to explain to the witness what |
| 12:35 | 8 | the allegation is, none of which we can do under the current |
| 12:35 | 9 | rules. |
| 12:35 | 10 | So we are very concerned that in addition to |
| 12:35 | 11 | having difficulty of navigating the thicket of the actual |
| 12:36 | 12 | trade secret allegations in this case which have been |
| 12:36 | 13 | narrowed down, now we are seeing an 11th hour attempt to |
| 12:36 | 14 | throw in additional material having nothing to do with the |
| 12:36 | 15 | narrow set of trade secrets allegations and we are not going |
| 12:36 | 16 | to have a meaningful way procedurally to rebut that |
| 12:36 | 17 | information. |
| 12:36 | 18 | So, what we would ask, Your Honor, is both Your |
| 12:36 | 19 | Honor's consideration of mechanisms like transition |
| 12:36 | 20 | statements, reference to the jury notebooks to help the |
| 12:36 | 21 | jurors understand what the allegations are and how the |
| 12:36 | 22 | evidence relates to it but also we would very much request |
| 12:36 | 23 | that Your Honor maintain the tentative order on No. 2 and |
| 12:36 | 24 | not allow additional material to come in at the 11th hour |
| 12:36 | 25 | and add to an already complex case. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

62

| 12:36 | 1 | THE COURT:  I'm not sure that's a logistical |
| 12:36 | 2 | issue. |
| 12:36 | 3 | MR. RE:  I raised closing of the courtroom and he |
| 12:36 | 4 | reargues MIL No. 2. |
| 12:36 | 5 | MR. MUELLER:  I was more concerned about the |
| 12:36 | 6 | e-mail traffic.  It seems like everything is designated AEO |
| 12:37 | 7 | but that in no ways suggests the courtroom should be closed |
| 12:37 | 8 | when all this e-mail traffic is shown to the jury.  That's |
| 12:37 | 9 | all my concern was.  I won't reargue the point on MIL No. 2. |
| 12:37 | 10 | Last is I want an agreement on opening statement. |
| 12:37 | 11 | I see the Court's standing order suggests a 75-minute |
| 12:37 | 12 | maximum. |
| 12:37 | 13 | THE COURT:  Tell me what you want in an individual |
| 12:37 | 14 | case and I will get back to you. |
| 12:37 | 15 | I don't have a 75-minute rule that I can recall. |
| 12:37 | 16 | MR. RE:  I think it might be in your standing |
| 12:37 | 17 | orders.  We propose 60 minutes per side for openings. |
| 12:37 | 18 | THE COURT:  That's fine. |
| 12:37 | 19 | MR. RE:  One other issue I want to raise is the |
| 12:37 | 20 | examination of witnesses.  We propose that there be no |
| 12:37 | 21 | recross.  I'm concerned about the time limit in this case. |
| 12:37 | 22 | I propose that each witness come up, direct, cross, |
| 12:37 | 23 | redirect, done.  No fourth rounds.  I ask the Court to |
| 12:38 | 24 | consider that. |
| 12:38 | 25 | THE COURT:  No, it seems to me that it's fair if |

Exhibit D
-75-

63

12:38  1   each side has two opportunities with the witness.

12:38  2            MR. RE:  Understood.

12:38  3            THE COURT:  I'm pretty strong about not going past

12:38  4   that but it seems to to me that's balanced.  You're

12:38  5   concerned for time.  You know what the time is and you get

12:38  6   to spend it the way you want.

12:38  7            MR. RE:  I do have some memory in the last case

12:38  8   where I would raise one or two questions on redirect and

12:38  9   then there is 45 minutes of recross.

12:38  10           THE COURT:  It's that party's time, they can spend

12:38  11  it however they want.  Within reason.

12:38  12           MR. RE:  That seems to be unfair to raise new

12:38  13  issues on recross.

12:38  14           THE COURT:  Well, that may be.

12:38  15           MR. RE:  The last issue I want to notify the Court

12:38  16  that the parties have agreed in view of the fact that the

12:39  17  trial has been postponed one week, that we agreed to move

12:39  18  the jury instructions back one week to March 28.

12:39  19           THE COURT:  That's fine.

12:39  20           MR. RE:  With that, I have nothing further.

12:39  21           THE COURT:  Mr. Mueller.

12:39  22           MR. MUELLER:  Yes, Your Honor just a few other

12:39  23  miscellaneous issues.

12:39  24           Fist, with respect to the rule on sequestration of

12:39  25  witnesses, we understand that would apply after the opening

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

64

| | | |
|---|---|---|
| 12:39 | 1 | statements; is that correct? |
| 12:39 | 2 | THE COURT:  That's fine. |
| 12:39 | 3 | MR. MUELLER:  The additional issues I have, I will |
| 12:39 | 4 | take in no particular order. |
| 12:39 | 5 | For the jury selection we heard Your Honor's |
| 12:39 | 6 | guidance the last time we were before you.  Just a question |
| 12:39 | 7 | on that.  If someone in the pool of 14 that have been seated |
| 12:39 | 8 | in the box is struck for cause, is it Your Honor's practice |
| 12:39 | 9 | to then seat the next numerical witness in pool, i.e. 15. |
| 12:39 | 10 | THE COURT:  I'm not sure what you are asking me. |
| 12:40 | 11 | I and the clerk have a random list, you will get an alpha |
| 12:40 | 12 | list.  If someone is excused for cause we will go to the |
| 12:40 | 13 | next person on the random list and seat them in that seat. |
| 12:40 | 14 | MR. MUELLER:  Do we have that list? |
| 12:40 | 15 | THE COURT:  No. |
| 12:40 | 16 | MR. MUELLER:  So we are not going to know who the |
| 12:40 | 17 | next person would be. |
| 12:40 | 18 | THE COURT:  No. |
| 12:40 | 19 | MR. MUELLER:  Understood. |
| 12:40 | 20 | The next question we have is in regards to trial |
| 12:40 | 21 | time, Your Honor has given us days. |
| 12:40 | 22 | THE COURT:  I have given you hours in a week. |
| 12:40 | 23 | MR. MUELLER:  I don't think we have hours. |
| 12:40 | 24 | THE COURT:  We get five and a quarter net hours on |
| 12:40 | 25 | average with the jury in a day so it's 26-and-a-quarter |

65

| | | |
|---|---|---|
| 12:40 | 1 | hours each. |
| 12:40 | 2 | MR. MUELLER:  Understood.  That's helpful. |
| 12:40 | 3 | THE COURT:  Let me say, I don't care how many days |
| 12:40 | 4 | it takes to get that done.  You will get those hours. |
| 12:40 | 5 | MR. MUELLER:  Thanks you, Your Honor. |
| 12:40 | 6 | In terms of audiovisual resources, is Your Honor |
| 12:40 | 7 | open to the parties meeting and conferring on bringing in |
| 12:41 | 8 | additional TV screens for example. |
| 12:41 | 9 | THE COURT:  Sure. |
| 12:41 | 10 | THE COURT:  One trial we had a 10 by 16 screen up |
| 12:41 | 11 | there.  The parties seemed to find that useful, but I have |
| 12:41 | 12 | no objection to additional audiovisual equipment. |
| 12:41 | 13 | MR. MUELLER:  The last issue I have is you will |
| 12:41 | 14 | recall there was motion practice both before the Special |
| 12:41 | 15 | Master and before Your Honor on Tim Cook and whether there |
| 12:41 | 16 | should be a deposition of Mr. Cook.  Your Honor eventually |
| 12:41 | 17 | overruled our objections ordering that deposition and it, in |
| 12:41 | 18 | fact, occurred. |
| 12:41 | 19 | He was deposed and the parties both had the |
| 12:41 | 20 | opportunity or Masimo and Cercacor had the opportunity to |
| 12:41 | 21 | ask the questions prescribed in the categories that Your |
| 12:41 | 22 | Honor permitted. |
| 12:41 | 23 | We have now been told that they're not going to |
| 12:41 | 24 | play any portion of that deposition which is, of course, |
| 12:42 | 25 | their choice.  We are concerned that they are going to try |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:42   1   to draw some inferences about Mr. Cook.

12:42   2          We are investigating whether he could testify live

12:42   3   at trial.  It's obviously a difficult proposition given the

12:42   4   competing considerations on his time, but I wanted to notify

12:42   5   Your Honor that we may be shortly amending our witness list

12:42   6   if he is available to testify live.

12:42   7          The reason for that is the deposition that he sat

12:42   8   for has not been designated by the plaintiffs and we think

12:42   9   that in the interests of insuring that there are no

12:42   10  inferences to be drawn against Apple on that basis, we are

12:42   11  at least looking into whether he might be able to testify

12:42   12  live.

12:42   13         THE COURT:  Absent a representation, there will be

12:42   14  no reference to Mr. Cook.

12:42   15         MR. RE:  Well, Mr. Cook's name does appear on some

12:42   16  documents, some e-mails chains with some of the other

12:42   17  witnesses so to that extent Mr. Cook's name will appear.

12:42   18         But I don't believe it's fair to put him on the

12:42   19  witness list when we were limited in the topics we could

12:43   20  depose him on.  We are not relying on Mr. Cook, I don't

12:43   21  think they can use him now offensively.

12:43   22         It appeared to me at the deposition what they were

12:43   23  trying to do was get direct testimony of him at the end of

12:43   24  the deposition, it was direct testimony from their own

12:43   25  counsel, I think it was Ms. Frazier, asked Mr. Cook many

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

67

| | | |
|---|---|---|
| 12:43 | 1 | questions and basically did the direct exam of their own |
| 12:43 | 2 | witness.  Now that we are not calling Mr. Cook or |
| 12:43 | 3 | designating his testimony, I don't think it's fair for them |
| 12:43 | 4 | now to bring him live. |
| 12:43 | 5 | THE COURT:  Do you want to waive the |
| 12:43 | 6 | unavailability and let him use the deposition? |
| 12:43 | 7 | MR. RE:  I need to think about that one. |
| 12:43 | 8 | THE COURT:  Well, think about it. |
| 12:43 | 9 | MR. RE:  I don't think it's fair to call him at |
| 12:43 | 10 | all.  Using their own deposition of their own witness?  I |
| 12:43 | 11 | need to look at the transcript and discuss it because he is |
| 12:44 | 12 | available. |
| 12:44 | 13 | THE COURT:  Well, I don't think he is not in the |
| 12:44 | 14 | subpoena power of the Court. |
| 12:44 | 15 | MR. RE:  I don't know that.  I don't know.  We |
| 12:44 | 16 | were limited to very, very specific topics to depose him. |
| 12:44 | 17 | I don't think he should be allowed to come live, I |
| 12:44 | 18 | think that's totally unfair. |
| 12:44 | 19 | MR. MUELLER:  If they would consent to our playing |
| 12:44 | 20 | the deposition, there may be no issue at all. |
| 12:44 | 21 | THE COURT:  Well, talk it through. |
| 12:44 | 22 | MR. RE:  I was a little confused about the list. |
| 12:44 | 23 | So when juror 15 is put in the box, we won't know who juror |
| 12:44 | 24 | 15 is going to be? |
| 12:44 | 25 | THE COURT:  Until juror 15 sits in the box. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

68

| | | |
|---|---|---|
| 12:44 | 1 | MR. RE:  So our list will only show 15, 16, 17, |
| 12:44 | 2 | 18. |
| 12:44 | 3 | THE COURT:  It will.  But they won't be 15, 16, |
| 12:44 | 4 | 17, and 18 on your list.  You will get all the names.  You |
| 12:45 | 5 | won't get the order in which they will be called. |
| 12:45 | 6 | MR. RE:  So they are not in seat order?  Number |
| 12:45 | 7 | order?  Normally 15, 16 -- |
| 12:45 | 8 | THE COURT:  They just come in and sit wherever |
| 12:45 | 9 | they would like to sit.  We call 14 at random and they are |
| 12:45 | 10 | seated.  You learn after the fact, but nobody knows coming |
| 12:45 | 11 | in the door who is first and who is last. |
| 12:45 | 12 | MR. MUELLER:  Will we be sitting on Mondays during |
| 12:45 | 13 | trial? |
| 12:45 | 14 | THE COURT:  No.  Mondays is criminal matters in |
| 12:45 | 15 | the morning, law and motion, and specific things at three. |
| 12:45 | 16 | So absent something usual Monday is never a trial day. |
| 12:45 | 17 | Well, let's talk about that first week, the week |
| 12:45 | 18 | of the Fourth of April.  That's a break week for most kids. |
| 12:46 | 19 | The Fifth is Passover.  The Seventh is Good Friday. |
| 12:46 | 20 | Any thoughts?  I want to start that week, but I |
| 12:46 | 21 | also wants to be sympathetic to people with religious |
| 12:46 | 22 | concerns. |
| 12:46 | 23 | MR. MUELLER:  We are fine to start that week, and |
| 12:46 | 24 | we are happy to cooperate on any witness conflicts that |
| 12:46 | 25 | Masimo and Cercacor might have.  But we are happy to start |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 12:46 | 1 | on that Tuesday. |
| 12:46 | 2 | MR. RE:  We are as well. |
| 12:46 | 3 | THE COURT:  What about Friday? |
| 12:46 | 4 | MR. MUELLER:  It's not an issue for our team, we |
| 12:46 | 5 | can be here to do the trial.  If Your Honor prefers not to |
| 12:46 | 6 | sit that day, we certainly understand. |
| 12:46 | 7 | THE COURT:  People often make plans for Easter. |
| 12:47 | 8 | MR. RE:  I will check, I don't know the answer to |
| 12:47 | 9 | that. |
| 12:47 | 10 | MR. MUELLER:  The lawyers are okay.  I'm just |
| 12:47 | 11 | worried about maybe a witness or two. |
| 12:47 | 12 | THE COURT:  Come back to me.  We don't need an |
| 12:47 | 13 | answer today. |
| 12:47 | 14 | Okay, mechanical things on my list.  Hours 9:00 to |
| 12:47 | 15 | 12:00, 15-minute break about 10:30, 1:30 to 4:30, a |
| 12:47 | 16 | 15-minute break about 3:00.  I try and time the breaks so |
| 12:47 | 17 | they make sense in terms of the flow of witnesses.  If you |
| 12:47 | 18 | or a witness would like to take a break at another point, |
| 12:47 | 19 | let me know or let Ms. Vargas know.  I tell the jurors the |
| 12:47 | 20 | same thing.  I want people to be comfortable. |
| 12:47 | 21 | I will do the initial instructions.  And I will |
| 12:47 | 22 | think about adding in the definition of the relevant trade |
| 12:47 | 23 | secrets here.  My standard instructions are pretty |
| 12:47 | 24 | vanilla/vanilla. |
| 12:48 | 25 | The final instructions, I will remind you the |

70

| | | |
|---|---|---|
| 12:48 | 1 | format that is laid out in the order for a jury trial.  One |
| 12:48 | 2 | joint packet.  Each instruction in the order which they will |
| 12:48 | 3 | be read.  If there's an objection, it's right there.  If |
| 12:48 | 4 | there is a counterproposal, it's right there so I have in |
| 12:48 | 5 | one neat packet for each instruction whatever arguments pro |
| 12:48 | 6 | or con for that or for the alternative. |
| 12:48 | 7 | What volume of depositions do you intend to use |
| 12:48 | 8 | substantively?  I'm concerned about the volume and being |
| 12:48 | 9 | able to rule on the objections in a timely fashion.  I have |
| 12:48 | 10 | learned somewhat painfully of late, I want to make sure I |
| 12:48 | 11 | have time to consider whatever objections are raised.  I |
| 12:48 | 12 | know what you have got laid out in the Pretrial Conference |
| 12:48 | 13 | Order. |
| 12:48 | 14 | MR. RE:  Well, we are willing to submit them |
| 12:49 | 15 | earlier because there are quite a few deposition transcripts |
| 12:49 | 16 | at issue.  We are willing to submit them earlier if you |
| 12:49 | 17 | would like. |
| 12:49 | 18 | THE COURT:  I will modify the order, back |
| 12:49 | 19 | everything up at least a couple days.  It doesn't mean you |
| 12:49 | 20 | are barred from submitting marked-up transcripts earlier so |
| 12:49 | 21 | I don't get deluged. |
| 12:49 | 22 | MR. RE:  We will submit ours early. |
| 12:49 | 23 | THE COURT:  I received a joint statement of the |
| 12:49 | 24 | case.  I will put that in the initial instructions and I |
| 12:49 | 25 | will also read it as context for the voir dire. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12:49  1          Each side will have 45 minutes of voir dire.  I

12:49  2  think that's plenty notwithstanding the complexities of this

12:49  3  case.

12:49  4          I don't cut people off if they were on to

12:49  5  something about prejudice but 45 minutes just to visit with

12:50  6  the jury, the prospective jurors, I think is plenty.

12:50  7          In terms of the peremptories, if we seat a jury of

12:50  8  eight, three peremptories, you exercise all of them, we have

12:50  9  eight.  You don't lose a peremptory if you pass.  Two passes

12:50  10  in a row we stop.  For example, if you accept the panel each

12:50  11  as initially constituted jurors one through eight would be

12:50  12  the jury.

12:50  13          If you have any questions about that now or later

12:50  14  please feel free to raise them.

12:50  15          MR. RE:  Understood, Your Honor.

12:50  16          THE COURT:  At the moment I don't perceive any

12:50  17  other logistical problem.  There is nominally a criminal

12:50  18  case on for the next week but I'm sure that's not going to

12:51  19  go.

12:51  20          Anything else anyone would like to raise?

12:51  21          MR. RE:  No, Your Honor.

12:51  22          MR. MUELLER:  No, Your Honor.

12:51  23          THE COURT:  If we have any need any further

12:51  24  discussions between now and then on any issues, contact

12:51  25  Ms. Vargas and we will set up a telephone conference.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

72

| | | |
|---|---|---|
| 12:51 | 1 | Okay, thank you. |
| 12:51 | 2 | (Whereupon, the proceedings were concluded.) |
| 12:51 | 3 | *   *   * |
| 12:51 | 4 | |
| 12:51 | 5 | |
| | 6 | |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER