# EXHIBIT P

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, et al.,   )CERTIFIED TRANSCRIPT
                  Plaintiffs, )
     vs.                      )
                              )  SACV-20-00048-JVS
APPLE, INC.,                  )
                  Defendant.  )
-----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

March 13, 2023

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

EXHIBIT P
-1012-

```
1   APPEARANCES OF COUNSEL:

2   For the Plaintiffs:

3   JOSEPH R. RE
    STEPHEN C. JENSEN
4   BENJAMIN A. KATZENELLENBOGEN
    BRIAN CHRISTOPHER CLAASSEN
5   KNOBBE MARTENS OLSON & BEAR, LLP
    2040 Main Street, 14th Floor
6   Irvine, CA  92614
    (949) 760-0404
7
    BRIAN C. HORNE
8   KNOBBE MARTENS OLSON & BEAR, LLP
    1925 Century Park East, Suite 600
9   Los Angeles, CA  90067
    (310) 551-3450
10
    For the Defendant:
11
    JOSEPH J. MUELLER
12  SARAH R. FRAZIER
    WILMER CUTLER PICKERING HALE & DORR, LLP
13  60 State Street
    Boston, MA  02109
14  (617) 526-6000

15  MARK D. SELWYN
    WILMER CUTLER PICKERING HALE & DORR, LLP
16  2600 El Camino Real, Suite 400
    Palo Alto, CA  94302
17  (650) 858-6031

18  AMY K. WIGMORE
    BRITTANY B. AMADI
19  WILMER CUTLER PICKERING HALE & DORR, LLP
    2100 Pennsylvania Avenue N.W.
20  Washington, D.C.  20037
    (202) 663-6096

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1013-

3

|   |   |
|---|---|
| | 1 |  SANTA ANA, CALIFORNIA; MONDAY, MARCH 13, 2023; 11:00 A.M. |
| 11:00 | 2 | THE CLERK:  Calling Item No. 2, SACV-20-00048-JVS, |
| 11:00 | 3 | Masimo Corporation, et al., versus Apple Inc. |
| 11:00 | 4 | Counsel, please state your appearance for the |
| 11:00 | 5 | record. |
| 11:00 | 6 | MR. RE:  Good morning, Your Honor.  For the |
| 11:00 | 7 | plaintiffs Masimo and Cercacor, Joseph Re from Knobbe |
| 11:00 | 8 | Martens, Irvine California.  With me are three of my |
| 11:00 | 9 | partners, Steve Jensen, Brian Claassen, Ben |
| 11:00 | 10 | Katzenellenbogen, and Brian Horne. |
| 11:00 | 11 | THE COURT:  Good morning. |
| 11:00 | 12 | MR. MUELLER:  Good morning, Your Honor.  Joe |
| 11:00 | 13 | Mueller, Wilmer Hale, on behalf of Apple.  With me today |
| 11:00 | 14 | from Wilmer Hale are a few folks who are going to be arguing |
| 11:00 | 15 | today, so I will just identify them.  Amy Wigmore, Mark |
| 11:00 | 16 | Selwyn, Sarah Frazier, and Brittany Amadi.  I will also note |
| 11:00 | 17 | that Ryan Moran, who is senior in-house counsel at Apple, is |
| 11:00 | 18 | here as well. |
| 11:00 | 19 | THE COURT:  Good morning. |
| 11:00 | 20 | This matter is here for the pretrial conference. |
| 11:00 | 21 | Let's take up the in-limine motions first. |
| 11:00 | 22 | Apple's first with regard to reference to other |
| 11:01 | 23 | litigation. |
| 11:01 | 24 | MS. FRAZIER:  Good morning, Your Honor.  Sarah |
| 11:01 | 25 | Frazier on behalf of Apple. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1014-

11:01  1          The parties have agreed to stipulate to Your

11:01  2  Honor's tentative ruling with respect to Apple's first

11:01  3  motion in-limine, so I don't believe there will be any

11:01  4  argument.

11:01  5          MR. RE:  That's correct.

11:01  6          THE COURT:  Apple's second, reference to certain

11:01  7  operations.

11:01  8          MS. FRAZIER:  My colleague, Mark Selwyn, will

11:01  9  address that motion.

11:01  10          MR. SELWYN:  Good morning.  Mark Selwyn for Apple.

11:01  11          Your Honor, Apple submits on the tentative, but

11:01  12  obviously we will be happy to respond to any arguments that

11:01  13  Masimo makes.

11:01  14          THE COURT:  Very good.  Thank you.

11:01  15          Who is going to address this?

11:01  16  Mr. Katzenellenbogen?

11:01  17          MR. KATZENELLENBOGEN:  Yes, Your Honor.  Thank

11:01  18  you.

11:02  19          Your Honor, with regard to the ruling on Motion

11:02  20  In-Limine 2, we are largely submitting on the tentative with

11:02  21  one suggestion, which has to do with a statement on page 2

11:02  22  of the tentative, the third paragraph under the heading B.

11:02  23  and specifically the last sentence of that paragraph which

11:02  24  is in the fourth line where the Court notes:  "However,

11:02  25  should Apple, indeed, 'open the door' to such evidence at

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1015-

5

| | | |
|---|---|---|
| 11:02 | 1 | trial, the Court may reconsider its ruling." |
| 11:02 | 2 | We noted that that was mentioned specifically with |
| 11:02 | 3 | regard to that aspect of Motion In-Limine 2. |
| 11:02 | 4 | THE COURT:  Well, it's in fact true with respect |
| 11:02 | 5 | to any motion in-limine.  It just seemed to be a little more |
| 11:02 | 6 | problematic here. |
| 11:02 | 7 | MR. KATZENELLENBOGEN:  That was our understanding |
| 11:03 | 8 | as well.  That was the point we wanted to raise and to |
| 11:03 | 9 | clarify that applies to everything.  I was going to suggest |
| 11:03 | 10 | that the Court could include that same statement in the |
| 11:03 | 11 | concluding paragraphs of both two and three.  If the Court |
| 11:03 | 12 | thinks that's unnecessary, that's fine. |
| 11:03 | 13 | THE COURT:  I think everybody understands the |
| 11:03 | 14 | ground rules. |
| 11:03 | 15 | MR. KATZENELLENBOGEN:  Thank you, Your Honor. |
| 11:03 | 16 | There were a couple of examples of that where I |
| 11:03 | 17 | thought it was most likely to come up, but as long as that's |
| 11:03 | 18 | understood, I think I can skip those, and if they come up at |
| 11:03 | 19 | trial, we can address it then. |
| 11:03 | 20 | THE COURT:  Very good.  Thank you. |
| 11:03 | 21 | Any further comments from the defendants on this |
| 11:03 | 22 | one? |
| 11:03 | 23 | MR. SELWYN:  No, Your Honor. |
| 11:03 | 24 | THE COURT:  Okay.  No. 3, Apple's No. 3. |
| 11:03 | 25 | MS. WIGMORE:  Good morning.  Amy Wigmore for |

EXHIBIT P
-1016-

11:03  1    Apple.

11:03  2             Apple submits on Your Honor's tentative ruling on

11:04  3    Motion In-Limine No. 3, but we would happy to respond.

11:04  4             THE COURT:  Mr. Katzenellenbogen.

11:04  5             MR. KATZENELLENBOGEN:  With regard to Motion

11:04  6    In-Limine 3, we understood the tentative as observing that

11:04  7    on its own there is nothing inherently wrong with Masimo

11:04  8    employees leaving Masimo to go to work for Apple or with

11:04  9    Apple hiring Masimo employees.  Accordingly, I'm not going

11:04  10   to address the part of the tentative that addresses that

11:04  11   issue generally.  As set forth in our papers, we thought the

11:04  12   number of employees who were hired by Apple was relevant.

11:04  13   We understand the arguments and the position in the

11:04  14   tentative.

11:04  15            What I would like to focus on is a specific of the

11:04  16   tentative where I think the tentative may be taking too

11:04  17   narrow of a view of what's going to be relevant here.

11:04  18   Specifically, that's a part on page 3 of the tentative, and

11:05  19   that's the second full paragraph that starts off "Finally."

11:05  20   The second sentence which begins on the third line says:

11:05  21   "Plaintiffs contend such evidence is relevant to show

11:05  22   intent, motive, knowledge and plan to misappropriate

11:05  23   plaintiffs' trade secrets."  That's exactly right.  I would

11:05  24   add that under Rule 404 it's also relevant to showing

11:05  25   preparation, absence of mistake, and lack of accident.

| 11:05 | 1 | What I'd like to address is the sentence after |
|---|---|---|

11:05   1        What I'd like to address is the sentence after

11:05   2   that in the tentative which says:  "However, plaintiffs have

11:05   3   not alleged that employees other than Drs. O'Reilly and

11:05   4   Lamego misappropriated trade secrets, and therefore evidence

11:05   5   of Apple's recruitment of other employees is irrelevant."

11:05   6        You know what, Your Honor, I'm sorry.  I

11:06   7   apologize, Your Honor.  This is an argument relating to 2.

11:06   8   I apologize.  I had gotten 2 and 3 confused on this one.

11:06   9   With the Court's indulgence, I would like to formally reopen

11:06   10   2 and address this aspect.

11:06   11        THE COURT:  That's fine.  Strange things happen on

11:06   12   Mondays.

11:06   13        MR. KATZENELLENBOGEN:  Thank you, Your Honor.  I

11:06   14   appreciate that.  I'm not sure -- well, I will continue.

11:06   15        THE COURT:  Okay.

11:06   16        MR. KATZENELLENBOGEN:  That plaintiffs have not

11:06   17   alleged employees other than O'Reilly and Lamego

11:06   18   misappropriated trade secrets, I think there is a little bit

11:06   19   of a disconnect in that the tentative is not addressing the

11:06   20   specifics of plaintiffs' arguments, which had to do with

11:06   21   that Apple created a plan and a strategy of hiring and

11:07   22   recruiting Masimo employees as an alternative to acquiring

11:07   23   or partnering with Masimo.

11:07   24        We understand that the Court's --

11:07   25        THE COURT:  Why can't you make that argument with

EXHIBIT P
-1018-

8

| | | |
|---|---|---|
| 11:07 | 1 | respect to the two people who are in contention? |
| 11:07 | 2 | MR. KATZENELLENBOGEN:  I think we can.  There are |
| 11:07 | 3 | just a couple of buckets of evidence, and I was trying to |
| 11:07 | 4 | get a little bit of clarity as to which ones the tentative |
| 11:07 | 5 | views are in and which ones the tentative views are out to |
| 11:07 | 6 | try to head off arguments during trial and to make sure we |
| 11:07 | 7 | understand what is appropriate during opening statements. |
| 11:07 | 8 | Specifically -- so there are categories of |
| 11:07 | 9 | evidence that specifically relate to the recruiting of |
| 11:07 | 10 | O'Reilly and Lamego, and we understand those are in. |
| 11:07 | 11 | There are a number of e-mails and pieces of |
| 11:07 | 12 | evidence in 2013 -- so prior to Lamego starting in |
| 11:08 | 13 | January of 2014 at Apple -- that relate to Apple's plan to |
| 11:08 | 14 | engage in smart recruiting as an alternative to partnering |
| 11:08 | 15 | with Masimo or acquiring Masimo.  We understand that those |
| 11:08 | 16 | are also in and are fair game. |
| 11:08 | 17 | Where the question came was with respect to |
| 11:08 | 18 | e-mails that maybe after Lamego started in January of 2014 |
| 11:08 | 19 | that nonetheless discuss or evidence Apple's plan, Apple's |
| 11:08 | 20 | strategy, to recruit Masimo employees for the purpose of |
| 11:08 | 21 | obtaining Masimo's technical information, Masimo trade |
| 11:08 | 22 | secrets, as an alternative to entering into a business deal. |
| 11:08 | 23 | And there were two specific examples that I wanted |
| 11:08 | 24 | to address.  And this will -- the first has to do with |
| 11:09 | 25 | Exhibit S to the motion, which related to the recruiting of |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1019-

9

11:09   1   a person named Andy Gamelin.  I have copies of the exhibits

11:09   2   if that would be easier for the Court.

11:09   3           THE COURT:  Sure.

11:09   4           (Document handed to the Court)

11:09   5           MR. KATZENELLENBOGEN:  May I approach, Your Honor?

11:09   6           THE COURT:  You may.

11:09   7           MR. KATZENELLENBOGEN:  Specifically, with regard

11:09   8   to Exhibit S, in May 2014 -- this relates to the interviews

11:10   9   of Andy Gamelin and Apple's engineer Ueyn Block --

11:10   10   interviewed Mr. Gamelin and asked him specific questions

11:10   11   about highly confidential Masimo trade secrets.  It's

11:10   12   internally on pages 525 and 526 under the heading

11:10   13   "Technical" under Mr. Block's evaluation.  It talks about

11:10   14   how -- "I asked how one chooses wavelengths for the Masimo

11:10   15   rainbow sensor as a function of what analyte you are trying

11:10   16   to measure."  So he was trying to illicit specific

11:10   17   technical, confidential information and --

11:10   18           THE COURT:  It was specific to that?

11:10   19           MR. KATZENELLENBOGEN:  Yes, and how Masimo chooses

11:10   20   those wavelengths, although it is not specifically the trade

11:10   21   secrets asserted here, in combination with what was asked in

11:10   22   the next paragraph.  And I think when you juxtapose that to

11:11   23   Exhibit U you will see where I'm going with this and why we

11:11   24   believe it's relevant to this overall plan.

11:11   25           In the next paragraph on the next page, page 526,

EXHIBIT P
-1020-

11:11   1   the evaluation says:  "With Masimo's product, he seemed to

11:11   2   know that there were specs, and he helped drive the product

11:11   3   to meet those specs, but he was not able to demonstrate

11:11   4   whether he had much insight of where the specs came from."

11:11   5   As a result, at the end, Mr. Block recommended against

11:11   6   hiring Mr. Gamelin.

11:11   7           We are going to contrast this with Exhibit U,

11:11   8   which is an evaluation of an interview of Cornelius Raths,

11:11   9   another former employee.  The part I would like to highlight

11:11   10  and draw the Court's attention to is on internally numbered

11:11   11  page 585, and it's an evaluation by someone whose name I

11:12   12  believe is Shonn.  I apologize that the formating didn't

11:12   13  quite come through here.  But under the heading "Technical

11:12   14  Ability," there are questions about Masimo's SedLine

11:12   15  technology which uses EEG to measure the depths of

11:12   16  anesthesia.

11:12   17          Starting at the end of the third line, the

11:12   18  evaluation says:  "He went through the source of signal and

11:12   19  explained how he developed the algorithm for detecting depth

11:12   20  of propofol anesthesia."  So there we have an example of

11:12   21  Apple asking how the algorithm itself for doing this was

11:12   22  created.  Mr. Raths disclosed that in an interview, and as a

11:12   23  result, the recommendation was to hire him.

11:12   24          We believe at least with respect to interviews and

11:12   25  the evaluations of Mr. Gamelin and Mr. Raths those should be

11:13  1   fairly part of the bucket, shall we say, of evidence that

11:13  2   relates to what we assert was part of Apple's plan for smart

11:13  3   recruiting.

11:13  4          So we think that even under the tentative as it

11:13  5   currently states anything prior to, I guess, January 2014

11:13  6   when Dr. Lamego was hired would be in.  But we think that

11:13  7   even though we are not going to attempt to introduce

11:13  8   evidence regarding all 22 people that were hired or all of

11:13  9   that information, at least with respect to these two, we

11:13 10   believe this evidence should be able to come in.  And we can

11:13 11   present this as part of what we understand and what we are

11:13 12   going to assert was Apple's plan for smart recruiting.

11:13 13   Apple can dispute that.

11:13 14          We would request that the tentative be changed and

11:14 15   specifically on page 3, the last sentence of that second

11:14 16   paragraph that we were discussing.  I would submit that that

11:14 17   should be changed to say something more like:  Absent

11:14 18   allegations that Apple's recruiting of a particular former

11:14 19   employee shows or was part of Apple's plan or strategy to

11:14 20   acquire Masimo's trade secrets, evidence of his or her

11:14 21   hiring may be irrelevant.  As long as the evidence relates

11:14 22   to this plan of smart recruiting, we think it should come

11:14 23   in.

11:14 24          THE COURT:  Okay.  Mr. Selwyn.

11:14 25          MR. SELWYN:  Thank you.  Mark Selwyn for Apple.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:14 | 1 | I think, Your Honor, that I can be brief because |
| 11:14 | 2 | the Court already considered and addressed in the tentative |
| 11:14 | 3 | the arguments that were made.  The tentative correctly finds |
| 11:14 | 4 | that evidence of Apple's recruitment of hiring of employees |
| 11:15 | 5 | other than Dr. Lamego and Dr. O'Reilly is irrelevant, and |
| 11:15 | 6 | further to quote Your Honor's tentative:  "Employees are not |
| 11:15 | 7 | only permitted but encouraged to move freely from one |
| 11:15 | 8 | company to another under at-will employment." |
| 11:15 | 9 | What they are now trying to do is go outside the |
| 11:15 | 10 | alleged trade secrets and essentially create a trial within |
| 11:15 | 11 | a trial as to things that were not alleged.  Plaintiffs are |
| 11:15 | 12 | attempting to justify this under Rule 404 and under Rule |
| 11:15 | 13 | 406.  But evidence of actual hiring -- |
| 11:15 | 14 | THE COURT:  It's not the evidence of hiring.  It's |
| 11:15 | 15 | not the fact of interviewing.  The passages which |
| 11:15 | 16 | Mr. Katzenellenbogen drew my attention to are at least |
| 11:15 | 17 | susceptible to the inference that they were probing for |
| 11:15 | 18 | trade secret information.  Wouldn't you agree with at least |
| 11:15 | 19 | that, that those passages are susceptible of being |
| 11:16 | 20 | interpreted as fishing for confidential information? |
| 11:16 | 21 | MR. SELWYN:  Not at all, because the allegation of |
| 11:16 | 22 | trade secret misappropriation pertains to Dr. O'Reilly and |
| 11:16 | 23 | to Dr. Lamego, and what they have pointed to is not |
| 11:16 | 24 | probative of all -- |
| 11:16 | 25 | THE COURT:  Isn't it potentially probative to a |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1023-

```
11:16    1    plan or scheme?
11:16    2            MR. SELWYN:  No, because the allegation relates to
11:16    3    Dr. Lamego and Dr. O'Reilly.
11:16    4            THE COURT:  Do they not allege an overall plan to
11:16    5    go beyond Lamego and O'Reilly to gather information?
11:16    6            MR. SELWYN:  No.  They had to recite specific
11:16    7    trade secrets, and those alleged trade secrets pertained to
11:16    8    Dr. Lamego and Dr. O'Reilly.
11:16    9            THE COURT:  That's fine, but if they are out there
11:16   10    generally fishing for trade secrets, whether it's the same
11:16   11    trade secrets they fished for with Lamego or O'Reilly, it's
11:16   12    relevant if it potentially shows a pattern.
11:17   13            MR. SELWYN:  I don't think so, Your Honor.  It's
11:17   14    well after the time of the allegations that pertain to
11:17   15    Dr. O'Reilly and to Dr. Lamego.  And with respect to those
11:17   16    two gentlemen, there are specific alleged secrets that are
11:17   17    recited.  So it's not probative --
11:17   18            THE COURT:  Can't patterns be shown by conduct
11:17   19    before and after the relevant event?
11:17   20            MR. SELWYN:  In some instances but not in this
11:17   21    instance.
11:17   22            THE COURT:  Why not in this instance?
11:17   23            MR. SELWYN:  Because in this instance what's
11:17   24    alleged are particular trade secrets with respect to those
11:17   25    two individuals.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1024-**

| | | |
|---|---|---|
| 11:17 | 1 | THE COURT:  Sir, you are missing the point.  If |
| 11:17 | 2 | they are out there fishing generally for trade secrets, why |
| 11:17 | 3 | is it excluded because they weren't fishing for the same |
| 11:17 | 4 | trade secrets they were fishing for with O'Reilly and |
| 11:17 | 5 | Lamego? |
| 11:17 | 6 | MR. SELWYN:  One, because there is no allegation |
| 11:17 | 7 | that they are in fact trade secrets that are at issue in the |
| 11:17 | 8 | e-mail that was just shown to you.  Those aren't included in |
| 11:17 | 9 | any disclosure of any trade secrets that Masimo has made in |
| 11:17 | 10 | this case. |
| 11:18 | 11 | THE COURT:  Okay. |
| 11:18 | 12 | MR. SELWYN:  The other point I would make, Your |
| 11:18 | 13 | Honor, is that California law provides employees with broad |
| 11:18 | 14 | freedom to move between employers and to seek employment |
| 11:18 | 15 | within their given profession.  So the suggestion that Apple |
| 11:18 | 16 | hiring people who once worked elsewhere which is in their |
| 11:18 | 17 | words "damning" shows this is exactly the type of evidence |
| 11:18 | 18 | that should be precluded under Rule 403. |
| 11:18 | 19 | THE COURT:  The Court agrees with you generally on |
| 11:18 | 20 | that, but when we get down to specifics, the fact of freedom |
| 11:18 | 21 | of movement doesn't trump leaving with a trade secret and |
| 11:18 | 22 | divulging it. |
| 11:18 | 23 | MR. SELWYN:  But the things that they are pointing |
| 11:18 | 24 | to in these other e-mails are not things they have ever |
| 11:18 | 25 | suggested are Masimo trade secrets.  Essentially, they are |

EXHIBIT P
-1025-

15

| | | |
|---|---|---|
| 11:18 | 1 | trying to back door in new alleged trade secrets through |
| 11:18 | 2 | these e-mails.  It's just an inference to apply to |
| 11:18 | 3 | Dr. Lamego and Dr. O'Reilly. |
| 11:18 | 4 | THE COURT:  Thank you. |
| 11:18 | 5 | Mr. Katzenellenbogen. |
| 11:18 | 6 | MR. KATZENELLENBOGEN:  Briefly, Your Honor.  I |
| 11:19 | 7 | think the Court's comments got this exactly right.  Rule 404 |
| 11:19 | 8 | specifically addresses 404(b), other bad acts, so inherently |
| 11:19 | 9 | they are not -- |
| 11:19 | 10 | THE COURT:  The same bad acts. |
| 11:19 | 11 | MR. KATZENELLENBOGEN:  Exactly.  We are not going |
| 11:19 | 12 | to be litigating whether those specific issues are or are |
| 11:19 | 13 | not trade secrets exactly as the Court commented.  The issue |
| 11:19 | 14 | is the inference that when they are asking for specific |
| 11:19 | 15 | technical information that may or may not be proprietary, |
| 11:19 | 16 | that that supports the allegations that as Apple itself said |
| 11:19 | 17 | they were engaging in smart recruiting as an alternative to |
| 11:19 | 18 | a business deal. |
| 11:19 | 19 | The rest of the packet I handed up had to do with |
| 11:19 | 20 | e-mails that were earlier in the 2013 timeframe regarding |
| 11:19 | 21 | this plan or strategy.  I'm guessing that the Court doesn't |
| 11:19 | 22 | want me to go through those now.  Therefore, the Court can |
| 11:20 | 23 | read them. |
| 11:20 | 24 | THE COURT:  Okay.  I want to take one more look at |
| 11:20 | 25 | this one. |

EXHIBIT P
-1026-

11:20   1           So let's move to 3.  Do you still want to address

11:20   2   that?

11:20   3           MR. KATZENELLENBOGEN:  I think that I have my

11:20   4   notes reversed.  Give me one moment.

11:20   5           Yes, with regard to Motion In-Limine 3, my prior

11:20   6   statement that we largely submit on that is correct, and the

11:20   7   caveat to that is with the note that to the extent Apple

11:20   8   raises related issues opens the door, particularly with

11:20   9   regard to issues of corporate culture or formal policies

11:20  10   regarding the intellectual property rights of others -- if

11:21  11   Apple attempts to introduce that type of affirmative

11:21  12   evidence, then we should be able to introduce contrary

11:21  13   evidence that Apple has an unwritten policy of encouraging

11:21  14   or at least turning the other way with respect to copying or

11:21  15   stealing the good ideas of others.

11:21  16           THE COURT:  In other words, on the present record,

11:21  17   the Court is correct in granting the motion?

11:21  18           MR. KATZENELLENBOGEN:  Your Honor, I would

11:21  19   probably phrase it as we disagree for the reasons set forth

11:21  20   in our briefing, but we understand, and I'm not going to

11:21  21   waste the Court's time arguing what I think is an understood

11:21  22   caveat to the order.

11:21  23           THE COURT:  Okay.

11:21  24           MS. WIGMORE:  We do have a concern about the

11:21  25   statement just made about a formal policy.  To the extent

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1027-**

| | | |
|---|---|---|
| 11:21 | 1 | Apple introduces evidence of its formal policy that |
| 11:21 | 2 | employees have to sign that make clear that they can't use |
| 11:21 | 3 | confidential information from a prior employer, that would |
| 11:22 | 4 | not be opening the door to the evidence that has been at |
| 11:22 | 5 | issue in this motion. |
| 11:22 | 6 | The evidence at issue, as the Court recognized, is |
| 11:22 | 7 | irrelevant to the claims in this case.  And that includes |
| 11:22 | 8 | antecdotes from years before this litigation and the facts |
| 11:22 | 9 | relating to it that began, statements by Steve Jobs who |
| 11:22 | 10 | admittedly on the plaintiffs' side had nothing to do with |
| 11:22 | 11 | any interactions involving this case. |
| 11:22 | 12 | So to the extent we put in formal statements of |
| 11:22 | 13 | the company about how intellectual property should be |
| 11:22 | 14 | handled, that shouldn't open the door to statements about |
| 11:22 | 15 | flags that flew over the company many years ago allegedly |
| 11:22 | 16 | that have not been authenticated or explained by any witness |
| 11:22 | 17 | that has been deposed in the case.  So we do not agree that |
| 11:22 | 18 | that would open the door to the type of inflammatory |
| 11:22 | 19 | irrelevant evidence that they seek to introduce. |
| 11:22 | 20 | THE COURT:  We have to see what evidence comes in, |
| 11:22 | 21 | and obviously we can raise this issue, if at all, outside |
| 11:23 | 22 | the presence of the jury. |
| 11:23 | 23 | MS. WIGMORE:  That's fine with us, Your Honor, as |
| 11:23 | 24 | long as it's raised outside the presence of the jury and |
| 11:23 | 25 | does not inflame the jury before we have a chance to address |

| | | |
|---|---|---|
| 11:23 | 1 | it. |
| 11:23 | 2 | THE COURT:  No doors are opened unless the Court |
| 11:23 | 3 | says they have been opened.  That determination is made |
| 11:23 | 4 | outside the presence of the jury. |
| 11:23 | 5 | MS. WIGMORE:  Thank you, Your Honor. |
| 11:23 | 6 | THE COURT:  Let's turn to Masimo's motions. |
| 11:23 | 7 | MR. RE:  Your Honor, there is a No. 4.  Apple had |
| 11:23 | 8 | a Motion In-Limine No. 4 concerning the confidentiality |
| 11:23 | 9 | agreements.  Masimo submits and will respond. |
| 11:23 | 10 | MS. AMADI:  Good morning.  Brittany Amadi on |
| 11:24 | 11 | behalf of Apple. |
| 11:24 | 12 | There are a few issues we wanted to raise with |
| 11:24 | 13 | respect to the tentative ruling on No. 4.  First, Your Honor |
| 11:24 | 14 | suggested in the tentative that Apple's Motion In-Limine No. |
| 11:24 | 15 | 4 was untimely because it wasn't raised at the summary |
| 11:24 | 16 | judgment stage.  We would respectfully submit we disagree |
| 11:24 | 17 | with the timeliness filing on three grounds. |
| 11:24 | 18 | First, none of the claims at issue assert a breach |
| 11:24 | 19 | of contract claim against Apple, nor could they because |
| 11:24 | 20 | Apple is not party to the agreements that are at issue with |
| 11:24 | 21 | respect to MIL No. 4.  So there was no reason for Apple to |
| 11:24 | 22 | raise the validity of those agreements at the summary |
| 11:24 | 23 | judgment stage.  They do not address a claim or defense. |
| 11:24 | 24 | This is really an evidentiary issue where the |
| 11:24 | 25 | plaintiffs are seeking to raise these confidentiality |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1029-

| | | |
|---|---|---|
| 11:24 | 1 | agreements as evidence to support aspects of their case.  So |
| 11:24 | 2 | we believe it's properly raised at the in-limine stage |
| 11:25 | 3 | because we believe that evidence is unduly prejudicial and |
| 11:25 | 4 | not relevant given the invalidity of the provisions at issue |
| 11:25 | 5 | and should be excluded. |
| 11:25 | 6 | Second, there is no requirement for a party to |
| 11:25 | 7 | move for summary judgment on any issue, including issues of |
| 11:25 | 8 | law, at the summary judgment stage in order to preserve that |
| 11:25 | 9 | issue.  So to the extent that Your Honor does not address |
| 11:25 | 10 | the validity of the contractual provision of that issue at |
| 11:25 | 11 | this stage, we believe that issue is still one that will |
| 11:25 | 12 | have to be addressed by the Court going forward because it's |
| 11:25 | 13 | relevant, as we explained in our papers, to the issues that |
| 11:25 | 14 | the parties have raised in the case. |
| 11:25 | 15 | And then the third point to make here is that the |
| 11:25 | 16 | admissibility of the agreements is properly decided by Your |
| 11:25 | 17 | Honor as an issue of law, and we think it's proper to |
| 11:25 | 18 | address that issue at this stage of the case before trial. |
| 11:25 | 19 | We believe there is a suggestion in the tentative that Your |
| 11:25 | 20 | Honor did not want a mini-trial regarding the validity of |
| 11:26 | 21 | those provisions, the confidentiality provisions, but we do |
| 11:26 | 22 | think it's important to address those issues.  And to the |
| 11:26 | 23 | extent that the Court allows those agreements to come into |
| 11:26 | 24 | evidence, Apple will need to be able to respond and to point |
| 11:26 | 25 | out that those provisions are invalid under California law. |

| | | |
|---|---|---|
| 11:26 | 1 | So whether it's now or at a later stage as we head into |
| 11:26 | 2 | trial, we believe that will be an issue that the Court will |
| 11:26 | 3 | need to address. |
| 11:26 | 4 | THE COURT:  I agree with that, but it seems to me |
| 11:26 | 5 | you're asking for a substantive ruling of the law, and |
| 11:26 | 6 | that's not what motions in-limine are for. |
| 11:26 | 7 | MS. AMADI:  We think in this case -- |
| 11:26 | 8 | THE COURT:  Why is this case the exception in that |
| 11:26 | 9 | regard? |
| 11:26 | 10 | MS. AMADI:  In this case, we are not asking for a |
| 11:26 | 11 | judgment on invalidity on a contractual claim here.  There |
| 11:26 | 12 | is no contractual claim at issue unlike the True Wearables |
| 11:26 | 13 | case where there was a breach of contract asserted.  There |
| 11:26 | 14 | is no breach of contract claim here likely for the reason |
| 11:27 | 15 | that the provisions at issue are invalid under California |
| 11:27 | 16 | law, so there was no reason for Apple to seek at the summary |
| 11:27 | 17 | judgment stage invalidation of those provisions.  Instead, |
| 11:27 | 18 | the plaintiffs are attempting to use those agreements as |
| 11:27 | 19 | evidence to support the case when the provisions at issue |
| 11:27 | 20 | are invalid and could not be breached. |
| 11:27 | 21 | Your Honor, I think the other issue that we wanted |
| 11:27 | 22 | to raise is some clarification on the scope of Your Honor's |
| 11:27 | 23 | ruling.  While the Court found that the confidentiality |
| 11:27 | 24 | provisions are relevant to the plaintiffs' reasonable |
| 11:27 | 25 | efforts to protect the alleged trade secrets in this case, |

11:27   1    we have a concern that the plaintiffs will actually seek to

11:27   2    use those agreements for additional purposes and more

11:27   3    broadly than what Your Honor discussed in the tentative

11:27   4    ruling.

11:27   5            Specifically, we believe that plaintiffs may

11:27   6    suggest that either Dr. O'Reilly or Dr. Lamego breached the

11:28   7    confidentiality provisions at issue in those agreements, and

11:28   8    that that breach constitutes an acquisition of the trade

11:28   9    secrets by improper means.  We think that that would be

11:28   10   highly prejudicial here because the provisions themselves

11:28   11   are invalid, and there has been no allegation of a breach

11:28   12   separate from the trade secret misappropriation allegations

11:28   13   in this case.

11:28   14           So to the extent that the plaintiffs seek to rely

11:28   15   on the agreements for that purpose, we think it would be

11:28   16   highly prejudicial to allow them to do that without Apple

11:28   17   having an opportunity to address the invalidity of those

11:28   18   provisions.

11:28   19           Second, Your Honor indicated in the tentative

11:28   20   ruling that you may restrict the questions that can be asked

11:28   21   related to the agreement.  We think that if they are

11:28   22   introduced into the record, Apple should have the

11:28   23   opportunity to show that the provisions are not valid under

11:28   24   California law.  That goes directly to whether or not the

11:28   25   plaintiffs took reasonable efforts to protect the alleged

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1032-

| | | |
|---|---|---|
| 11:29 | 1 | trade secrets, but also to the extent the plaintiffs seek to |
| 11:29 | 2 | rely on those provisions to assert improper means, it would |
| 11:29 | 3 | go directly to that issue as well.  So Apple would need to |
| 11:29 | 4 | address that issue at trial if the agreements are permitted |
| 11:29 | 5 | to come in before the jury. |
| 11:29 | 6 | Relatedly, the tentative mentioned that there may |
| 11:29 | 7 | be cross-examination of Mr. Kiani to address that issue.  We |
| 11:29 | 8 | don't think that that would be sufficient for a couple of |
| 11:29 | 9 | reasons.  First, Mr. Kiani admitted only that the |
| 11:29 | 10 | non-compete provisions of the agreement are invalid, and |
| 11:29 | 11 | that's really not disputed.  There's no real dispute that |
| 11:29 | 12 | the non-compete provisions of the agreement are invalid |
| 11:29 | 13 | under California law under the Edwards case. |
| 11:29 | 14 | THE COURT:  16600. |
| 11:29 | 15 | MS. AMADI:  Exactly.  What the issue here is that |
| 11:29 | 16 | the confidentiality provisions, which are the ones that |
| 11:29 | 17 | plaintiffs are going to try to leverage either for the |
| 11:30 | 18 | reasonable efforts issue or for the improper means issue -- |
| 11:30 | 19 | those provisions we believe are also invalid.  So |
| 11:30 | 20 | cross-examination of a fact witness who is not a lawyer to |
| 11:30 | 21 | get at the invalidity of those provisions we don't believe |
| 11:30 | 22 | will be sufficient. |
| 11:30 | 23 | So we just wanted to raise those issues because we |
| 11:30 | 24 | think this issue will come back before, Your Honor, as we |
| 11:30 | 25 | head into trial or during trial, and to the extent that |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1033-

| | | |
|---|---|---|
| 11:30 | 1 | those agreements come in, Apple will need the ability to |
| 11:30 | 2 | explain why they are invalid under California law. |
| 11:30 | 3 | If Your Honor would like me to, I can address the |
| 11:30 | 4 | merits of the invalidity issue, which is addressed in our |
| 11:30 | 5 | papers, but we submit as explained in our papers that under |
| 11:30 | 6 | the Brown decision, the Court of Appeals decision in |
| 11:30 | 7 | California, the agreements are invalid.  In that case, as |
| 11:30 | 8 | explained in our papers, there was a confidentiality |
| 11:30 | 9 | provision at issue.  There was a definition of "confidential |
| 11:30 | 10 | information" that was quite broad but was narrower than the |
| 11:31 | 11 | confidentiality provision that we have here, and the Court |
| 11:31 | 12 | held that that provision was invalid under 16600. |
| 11:31 | 13 | We think the same should apply here where we have |
| 11:31 | 14 | a confidentiality provision that is not even as narrow as |
| 11:31 | 15 | the one at issue in the Brown case and is much broader.  Any |
| 11:31 | 16 | information that Masimo may consider to be confidential we |
| 11:31 | 17 | think violates 16600 under Brown.  For that reason, we think |
| 11:31 | 18 | that the provisions should not come into evidence and are in |
| 11:31 | 19 | fact invalid under California law. |
| 11:31 | 20 | THE COURT:  Thank you. |
| 11:31 | 21 | Mr. Re. |
| 11:31 | 22 | MR. RE:  I don't know where to begin.  First of |
| 11:31 | 23 | all, it sure sounds like summary judgment to me. |
| 11:31 | 24 | Second of all, what is confusing about this issue |
| 11:31 | 25 | is Apple maintained in the Pretrial Conference Order that |

EXHIBIT P
-1034-

24

| | | |
|---|---|---|
| 11:31 | 1 | their unclean hands defense should go to the jury, and the |
| 11:32 | 2 | sole basis for the unclean hands defense turns on the |
| 11:32 | 3 | validity of these agreements. |
| 11:32 | 4 | So it's not true that the agreements, as counsel |
| 11:32 | 5 | said, don't relate to any claim or defense.  It is the sole |
| 11:32 | 6 | basis of Apple's unclean hands defense, which they think |
| 11:32 | 7 | goes to the jury which we obviously disagree. |
| 11:32 | 8 | This entire issue has gotten off the rails because |
| 11:32 | 9 | this shouldn't even be a jury issue.  But of course the |
| 11:32 | 10 | agreements are part of Masimo's attempts to implement |
| 11:32 | 11 | reasonable precautions to protect the confidential |
| 11:32 | 12 | information, and they are of course relevant for that |
| 11:32 | 13 | purpose and that purpose alone, which is why they will be |
| 11:32 | 14 | offered. |
| 11:32 | 15 | Your Honor, you are correct.  There is no breach |
| 11:32 | 16 | of contract claims in the case.  So what I heard is another |
| 11:32 | 17 | reason why this unenforceability issue should be an |
| 11:32 | 18 | equitable issue for the Court, if at all, if they are going |
| 11:32 | 19 | to maintain this unclean hands defense. |
| 11:32 | 20 | I do want to correct the record.  There is no |
| 11:33 | 21 | Kiani admission.  I looked at that testimony.  What Mr. |
| 11:33 | 22 | Kiani said is that the agreements can't be judged like that |
| 11:33 | 23 | because they're used around the world and state by state. |
| 11:33 | 24 | So he obviously declined to pontificate on what the law is |
| 11:33 | 25 | in any state.  But this, again, goes to the merits of |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
11:33    1    Apple's unclean hands defense which shouldn't even go to the
11:33    2    jury, this whole unenforceability issue.
11:33    3            We think the tentative is actually correct.  They
11:33    4    should come in for what their probative for.  There
11:33    5    probative to show reasonable precautions to protect trade
11:33    6    secrets.  To the extent they want to preserve this issue,
11:33    7    they can preserve it if it didn't require a summary
11:33    8    judgment, but it certainly can't be knocked out at this
11:33    9    stage as we are heading into trial.
11:33   10            With that, I have nothing further.
11:33   11            THE COURT:  Ms. Amadi.
11:33   12            MS. AMADI:  I would like to briefly respond on the
11:33   13    unclean hands issue.  Counsel is right that it is the
11:34   14    invalidity of their provisions that are at issue in our
11:34   15    unclean hands defense.  I think that further emphasizes why
11:34   16    Apple will need -- if the agreements come into the record
11:34   17    before the jury, Apple would need to be able to explain the
11:34   18    provisions that the plaintiffs are relying on for aspects of
11:34   19    their claims in this case that are invalid under California
11:34   20    law, and we believe they are under the governing case law.
11:34   21            THE COURT:  Thank you.  I will take one more look
11:34   22    at this.
11:34   23            Let's turn to Masimo's motion.
11:34   24            MR. RE:  We would submit other than to clarify
11:34   25    what the Court wanted from the parties with regard to the
```

EXHIBIT P
-1036-

11:34   1   last sentence on page 11.

11:34   2         THE COURT:  You mean with regard to sealing?

11:35   3         MR. RE:  No.  The dispute with regard to the

11:35   4   narrowing of the issues in Section C, the last sentence of

11:35   5   Section C prior to the astericks where it says:  "To the

11:35   6   extent there is a dispute, the parties must explain the

11:35   7   dispute at today's hearing so the Court can resolve it

11:35   8   before trial."

11:35   9         This really goes to an issue that is in the

11:35   10  Pretrial Conference Order, and it relates to the differences

11:35   11  between Exhibit A and Exhibit B which are attached to the

11:35   12  Pretrial Conference Order that the parties submitted.

11:35   13        It appears from looking at Exhibit B, which is

11:35   14  Apple's version of the trade secrets, they are maintaining

11:35   15  that the documents should contain withdrawn trade secrets.

11:35   16  And they justify that by saying value, importance, and

11:35   17  appropriateness is a collective aggregation of all of the

11:35   18  preceding trade secrets.  Therefore, the withdrawn trade

11:36   19  secrets need to be shown on the document.  That's the

11:36   20  argument that they have given us.

11:36   21        I disagree with that for many reasons.  First of

11:36   22  all, Apple always knew that the -- let's call it the

11:36   23  dependent claims, so to speak -- the dependent value,

11:36   24  importance, and appropriateness of the preceding trade

11:36   25  secrets was with regard to each and every one individually.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1037-

11:36  1    Apple maintained that position as far back as 2020.  They

11:36  2    even maintained that position on summary judgment.  They

11:36  3    moved for summary judgment on the value, importance, and

11:36  4    appropriateness trade secret as being vague and undefined,

11:36  5    and they lost on that on summary judgment.

11:36  6            But even then when they briefed the issue to the

11:36  7    Court -- and I have the briefs -- they acknowledged that we

11:36  8    were attempting -- they excoriated us for attempting to

11:36  9    double the number of trade secrets.  Well, it would only be

11:36  10   doubling if the value, importance, and appropriateness

11:37  11   applies to each one individually.

11:37  12           The other thing I wanted to raise is the fact that

11:37  13   their Exhibit B includes other withdrawn trade secrets that

11:37  14   don't even relate to value, importance, and appropriateness.

11:37  15   The last page, the last sentence, of their Exhibit B talks

11:37  16   about plaintiffs withdrawing all of the asserted, alleged

11:37  17   oxygen saturation trade secrets and alleged hospital

11:37  18   interaction trade secrets, and that doesn't relate to value,

11:37  19   importance, or appropriateness at all.

11:37  20           So for some reason, they are insisting that the

11:37  21   list of trade secrets, whether it goes to the jury or not --

11:37  22   that whatever list of trade secrets that's going to used at

11:37  23   this trial, they are insisting that it include all of the

11:37  24   withdrawn trade secrets.  I don't see why.  That's the

11:37  25   disagreement we are having.

| | | |
|---|---|---|
| 11:37 | 1 | MR. MUELLER:  Your Honor, just briefly, |
| 11:38 | 2 | Ms. Wigmore will address the particular argument that Mr. Re |
| 11:38 | 3 | just raised.  As Mr. Re just mentioned, that is an argument |
| 11:38 | 4 | that is relevant to the joint pretrial order. |
| 11:38 | 5 | We have a couple more things on Motion In-Limine |
| 11:38 | 6 | No. 1, but for purposes of joining issue immediately, |
| 11:38 | 7 | Ms. Wigmore can take those up right now. |
| 11:38 | 8 | THE COURT:  Okay.  Thank you. |
| 11:38 | 9 | MS. WIGMORE:  Your Honor, I believe there is some |
| 11:38 | 10 | confusion as to the purpose of Exhibit A and Exhibit B which |
| 11:38 | 11 | I believe I can clarify.  Apple is not taking the position |
| 11:38 | 12 | that the jury should be made aware of the abandoned trade |
| 11:38 | 13 | secrets, but we do have concerns about how Masimo and |
| 11:38 | 14 | Cercacor are planning to present the trade secrets to the |
| 11:38 | 15 | jury.  The purpose of Exhibit B was to preserve for the |
| 11:38 | 16 | Court and for appeal the fact that there were these |
| 11:39 | 17 | initially pled trade secrets. |
| 11:39 | 18 | In terms of what the jury should be told, our |
| 11:39 | 19 | position is that the plaintiffs' proposed formulation in |
| 11:39 | 20 | Exhibit A is unfair and inaccurate.  The reason for that is |
| 11:39 | 21 | because they have renumbered the trade secrets in a way that |
| 11:39 | 22 | is different from their 2019 210 statement, and they have |
| 11:39 | 23 | changed them substantively by taking that set list that was |
| 11:39 | 24 | the subject of our summary judgment and putting it in |
| 11:39 | 25 | different places using A's, B's and C's. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1039-

11:39   1         I think if the Court would like we could look at

11:39   2   Exhibit A, because what they have done is they only have a

11:39   3   few remaining trade secrets, alleged secrets, in each

11:39   4   category -- the categories are D&D -- I won't use the terms

11:39   5   in open court -- LP and BM.

11:39   6         The way that the 2019, 210 statement was written

11:40   7   is there were a number of alleged secrets in those

11:40   8   categories, and at the end, there was this VIA -- value,

11:40   9   importance, and appropriateness -- secret which the Court

11:40   10   found in the summary judgment motion that we just argued

11:40   11   that that was applying to a set list. It was at the end of

11:40   12   the list. There was not an individual VIA secret for each

11:40   13   independently asserted secret. It was a category at the end

11:40   14   that applied to the set list. At the beginning, the list

11:40   15   was longer. So for the D&D category, there were 15 alleged

11:40   16   secrets, and then No. 16 was this VIA category.

11:40   17         What the plaintiffs now propose to do in their

11:40   18   Exhibit A is to create a list where the remaining alleged

11:40   19   secrets are listed as, for example, 1A, and then for 1B they

11:40   20   refer to the value, importance, and appropriateness of

11:40   21   alleged Secret 1. Then for D&D they moved to alleged Secret

11:41   22   3, and they have a 3A for what that secret was. And then

11:41   23   they add a VIA for category 3B, and they do the same with

11:41   24   alleged Secret 10.

11:41   25         Our position is they can't now take each of their

| | | |
|---|---|---|
| 11:41 | 1 | alleged remaining secrets and add a VIA secret for each |
| 11:41 | 2 | individual one.  That's not how they framed their alleged |
| 11:41 | 3 | secrets in their 2019, 210 statement.  There can be a final |
| 11:41 | 4 | category in each bucket for VIA, but it should pertain to |
| 11:41 | 5 | the set list of alleged secrets that remain. |
| 11:41 | 6 | So if we take D&D as an example, they can allege |
| 11:41 | 7 | -- they have alleged Secret 1, alleged Secret 3, alleged |
| 11:41 | 8 | Secret 10, and then they can keep No. 16 which was how it |
| 11:41 | 9 | was originally numbered and say the alleged value, |
| 11:41 | 10 | importance, and appropriateness of 1, 3, and 10.  They can't |
| 11:42 | 11 | create new secrets for each one.  That was the concern that |
| 11:42 | 12 | we had when we brought this summary judgment motion. |
| 11:42 | 13 | They are trying to get away from the set list.  We |
| 11:42 | 14 | appreciate the set list can shrink because they have |
| 11:42 | 15 | abandoned certain secrets, and we don't object to that. |
| 11:42 | 16 | They can't now create a new VIA secret for each category |
| 11:42 | 17 | because that's not how it was initially pled. |
| 11:42 | 18 | It's duplicative, and it creates confusion because |
| 11:42 | 19 | value is something the jury needs to determine for each of |
| 11:42 | 20 | these alleged secrets.  So to create a 1B for each one that |
| 11:42 | 21 | refers to its value is confusing, and it's not how they |
| 11:42 | 22 | initially pled their trade secrets. |
| 11:42 | 23 | So the way it should work is their Exhibit A |
| 11:42 | 24 | should have Secrets 1, 3, 10, whatever the remaining ones |
| 11:42 | 25 | are, and then the VIA one at the end that refers to that set |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:42 | 1 | list of secrets that remain. |
| 11:42 | 2 | Another reason for this is that we have taken |
| 11:42 | 3 | discovery with the numbering they initially included in |
| 11:43 | 4 | their statements.  We have experts reports with statements |
| 11:43 | 5 | about, for example, alleged Secret 16.  We have testimony |
| 11:43 | 6 | from deponents.  If we start changing the numbers at this |
| 11:43 | 7 | point, it's unfairly confusing. |
| 11:43 | 8 | So I don't think the dispute is as was |
| 11:43 | 9 | characterized by Mr. Re.  We are not arguing that we should |
| 11:43 | 10 | be talking to the jury about the abandoned secrets.  We are |
| 11:43 | 11 | talking about using the numbering and the formatting that |
| 11:43 | 12 | they used initially rather than create a new VIA secret to |
| 11:43 | 13 | accompany each individual one. |
| 11:43 | 14 | I will just add there is a similar issue with the |
| 11:43 | 15 | BM trade secrets.  There is a knowledge category at the end. |
| 11:43 | 16 | There was alleged BM Secret No. 7.  They have done the same |
| 11:43 | 17 | thing there in their Exhibit A, where they have taken |
| 11:43 | 18 | knowledge of the plaintiffs allegedly practicing this secret |
| 11:43 | 19 | and included it as a Category C for each of the remaining |
| 11:43 | 20 | secrets. |
| 11:43 | 21 | So they have alleged BM Secret 1 which is A, the |
| 11:43 | 22 | initially pled secret.  They have added 1B which is the |
| 11:44 | 23 | knowledge, and No. 1C which is the VIA.  So they are again |
| 11:44 | 24 | multiplying the number of secrets, creating new numbers. |
| 11:44 | 25 | Whatever they do with those final categories should remain |

| 11:44 | 1 | as they initially pled, and it should pertain to the set |
| 11:44 | 2 | list as Your Honor's summary judgment opinion acknowledges. |
| 11:44 | 3 | It should not be imported into each individual secret. |
| 11:44 | 4 | THE COURT:  Thank you. |
| 11:44 | 5 | MR. RE:  Okay, now I think the issue is more |
| 11:44 | 6 | narrow.  What I am hearing is we should write it the same |
| 11:44 | 7 | way as the 2019.  But in the 2019, the list was much longer. |
| 11:44 | 8 | First of all, the 2019 was a discovery tool, so we are now |
| 11:44 | 9 | free to negotiate how it should be presented at trial. |
| 11:44 | 10 | What I now hear is it seems at least there is |
| 11:44 | 11 | agreement on what the trade secret is.  And what I was |
| 11:44 | 12 | hearing earlier, what I thought the issue was, is there is a |
| 11:44 | 13 | dispute about the "or" or the "and."  I can't tell from what |
| 11:45 | 14 | was just argued that -- if there is agreement that the |
| 11:45 | 15 | value, importance, goes to each trade secret or is it |
| 11:45 | 16 | collective? |
| 11:45 | 17 | If there is agreement that it is individual like |
| 11:45 | 18 | Apple always understood it to be -- now, we are not talking |
| 11:45 | 19 | about a miscommunication here.  As I said, Apple has always |
| 11:45 | 20 | maintained that the value, importance, and appropriateness |
| 11:45 | 21 | dependent claim for lack of a better word applies to each |
| 11:45 | 22 | trade secret in the alternative.  That's what I thought the |
| 11:45 | 23 | key issue was.  I can't tell if Apple is agreeing that the |
| 11:45 | 24 | value, importance, and appropriateness trade secret applies |
| 11:45 | 25 | to each trade secret individually or collectively because |

11:45    1    they always understood.

11:45    2         To the extent Ms. Wigmore is arguing about value

11:46    3    being unclear and confusing, that was specifically argued on

11:46    4    summary judgment, and they lost on the vagueness of that

11:46    5    term on summary judgment.  So I can't tell -- I think maybe

11:46    6    we need to negotiate a little more, but I can't tell if they

11:46    7    are in agreement that it's in the alternative that the

11:46    8    value, importance, and appropriateness applies to each trade

11:46    9    secret, 1 or 3 or 10.  I thought they thought it was an

11:46   10    "and," but I can't tell if we are in the agreement that it

11:46   11    was at least in the alternative.

11:46   12         THE COURT:  Ms. Wigmore.

11:46   13         MS. WIGMORE:  What Apple is seeking is the same

11:46   14    formatting and description that has been part of the case

11:46   15    all along.  So to use D&D as an example, initial D&D Secret

11:46   16    16 was phrased the value, importance, and appropriateness of

11:47   17    1 through 15 above, and it goes on to use some words I won't

11:47   18    read into the public record, but that's the relevant

11:47   19    portion.

11:47   20         Now 1 to 15 don't all remain in the case.  We

11:47   21    would ask that that format remain the same, that No. 16

11:47   22    remain in the case, but instead of referring to 1 through 15

11:47   23    above, it refer to 1, 3, and 10 above because those are the

11:47   24    ones that remain.  That's what we're asking for.  We are

11:47   25    asking that they not be permitted to create a new alleged

| | | |
|---|---|---|
| 11:47 | 1 | secret for each of 1, 3, and 10 called value.  They get one |
| 11:47 | 2 | at the end that refers to the set list of 1, 3, and 10, |
| 11:47 | 3 | which is exactly how they phrased it before with the minor |
| 11:47 | 4 | exception that we have taken out from 1 through 15 the ones |
| 11:47 | 5 | that are no longer part of the case.  So it's one alleged |
| 11:47 | 6 | secret at the end of the list.  It's not an individual value |
| 11:48 | 7 | secret for each of the claimed secrets. |
| 11:48 | 8 | THE COURT:  You would agree that some or all of |
| 11:48 | 9 | the remaining trade secrets would figure as part of the |
| 11:48 | 10 | value of the trade secret. |
| 11:48 | 11 | MS. WIGMORE:  Yes, but it shouldn't be listed |
| 11:48 | 12 | multiple times for the jury. |
| 11:48 | 13 | THE COURT:  It seems to me we can solve the basic |
| 11:48 | 14 | problem at the time of the instructions. |
| 11:48 | 15 | MS. WIGMORE:  We think it's relevant for opening |
| 11:48 | 16 | statement and for how witnesses are cross-examined. |
| 11:48 | 17 | THE COURT:  In terms of numbering, I think if you |
| 11:48 | 18 | only have 3 or 4 out of the initial 16, it leaves the unfair |
| 11:48 | 19 | implication that some of the matters asserted weren't trade |
| 11:48 | 20 | secrets.  I don't think they need to bear that burden.  I |
| 11:48 | 21 | don't have any trouble just numbering from the top 1, 2, 3, |
| 11:48 | 22 | as long as the secrets are the same.  It may be experts |
| 11:48 | 23 | refer to them differently in their reports, but it's not a |
| 11:48 | 24 | giant task especially if we are only talking about 3 or 4 |
| 11:49 | 25 | trade secrets for them to refer to them by the current |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:49 | 1 | number. |
| 11:49 | 2 | MS. WIGMORE:  Even the plaintiffs are not |
| 11:49 | 3 | suggesting a renumbering.  They have phrased in Exhibit A -- |
| 11:49 | 4 | they have used the numbers 1, 3, and 10.  They haven't gone |
| 11:49 | 5 | consecutive.  But what they have done is added another one |
| 11:49 | 6 | after each of 1, 3, and 10 that refers to value.  We think |
| 11:49 | 7 | the value, whatever that is, should be one alleged secret at |
| 11:49 | 8 | the end that refers back to the three that remain. |
| 11:49 | 9 | THE COURT:  Okay.  Thank you.  I think we're -- |
| 11:49 | 10 | Mr. Re. |
| 11:49 | 11 | MR. RE:  No, we're not.  I beg to differ, Your |
| 11:49 | 12 | Honor.  What I hear is she did not respond to my question. |
| 11:49 | 13 | And, that is, they are sticking us with the 2019, and they |
| 11:49 | 14 | are arguing an ambiguity to perpetuate that to the trial. |
| 11:49 | 15 | THE COURT:  But if the jury is told as part of |
| 11:49 | 16 | considering the value you may consider each of the |
| 11:49 | 17 | individual ones individually or collectively to determine |
| 11:49 | 18 | whether there is anything to support a value trade secret, |
| 11:49 | 19 | what's the difference? |
| 11:50 | 20 | MR. RE:  Well, if it's individually, in the |
| 11:50 | 21 | alternative. |
| 11:50 | 22 | THE COURT:  Right. |
| 11:50 | 23 | MR. RE:  But Ms. Wigmore didn't say that. |
| 11:50 | 24 | THE COURT:  But I'm saying that. |
| 11:50 | 25 | MR. RE:  Then we are in agreement.  We are in the |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1046-

36

| | | |
|---|---|---|
| 11:50 | 1 | alternative and it's "or," then we're in agreement.  Then |
| 11:50 | 2 | it's easy. |
| 11:50 | 3 | THE COURT:  Some or all. |
| 11:50 | 4 | MR. RE:  Some or all. |
| 11:50 | 5 | THE COURT:  It's only one value trade secret. |
| 11:50 | 6 | MR. RE:  But it applies to each one, the value, |
| 11:50 | 7 | importance -- |
| 11:50 | 8 | THE COURT:  No, no.  In determining value, you may |
| 11:50 | 9 | consider each of the trade secrets either individually or |
| 11:50 | 10 | collectively in determining whether there is value. |
| 11:50 | 11 | MR. RE:  Correct.  That is correct. |
| 11:50 | 12 | THE COURT:  So I think the concern is that by |
| 11:50 | 13 | listing it for each individual one, there is some sort of |
| 11:50 | 14 | potential beyond the original contention of a single value |
| 11:50 | 15 | trade secret.  So I think that's the way we are going to go |
| 11:50 | 16 | at it and clarify the trade secret.  I think you are all on |
| 11:51 | 17 | the same page. |
| 11:51 | 18 | MR. RE:  I think we -- I think you and I are.  I |
| 11:51 | 19 | will find out tomorrow if we all are. |
| 11:51 | 20 | THE COURT:  Mr. Mueller. |
| 11:51 | 21 | MR. MUELLER:  Masimo's Motion In-Limine No. 1 |
| 11:51 | 22 | refers to a couple different categories of information, and |
| 11:51 | 23 | with respect to certain aspects of Your Honor's tentative, |
| 11:51 | 24 | we would submit.  In particular, Your Honor's tentative |
| 11:51 | 25 | decision that we may not refer to the lawyers preparing |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:51    1    certain materials, we submit on that point.  We ask for

11:51    2    clarification on one issue, and there is one issue where we

11:51    3    would request reconsideration.

11:51    4         The clarification point -- we understand the

11:51    5    tentative to allow us to still refer to the chronology of

11:51    6    when materials were created or not.  So if there was a lack

11:51    7    of materials, for example, in writing, corroborating the

11:52    8    existence of an alleged trade secret before the litigation,

11:52    9    we understand under Your Honor's tentative we are allowed to

11:52   10    make that point during cross-examination.  We are not

11:52   11    referring to lawyers at all, just making the point referring

11:52   12    to a timeline matter.

11:52   13         THE COURT:  Correct.

11:52   14         MR. MUELLER:  The second point we would ask for

11:52   15    reconsideration on is Dr. Palmatier's expert report.  We

11:52   16    understand Your Honor's tentative to be that we may not

11:52   17    refer to the correspondence between certain language in that

11:52   18    report and discovery responses provided by Masimo and

11:52   19    Cercacor in this case, but Your Honor did say we may inquire

11:52   20    into his independence or any critique that we may have with

11:52   21    the report.

11:52   22         THE COURT:  Right.

11:52   23         MR. MUELLER:  So we would ask that we be permitted

11:52   24    to show Dr. Palmatier the similarities between portions of

11:52   25    his report and material submitted by Masimo and Cercacor

EXHIBIT P
-1048-

38

| 11:52 | 1 | without reference to the lawyers.  We wouldn't say the |
| 11:53 | 2 | lawyers created these.  We would just say that these are |
| 11:53 | 3 | materials that Masimo and Cercacor provided to us.  Your |
| 11:53 | 4 | report and certain sections is verbatim, the same.  We think |
| 11:53 | 5 | that goes to his independence without any mention of |
| 11:53 | 6 | lawyers. |
| 11:53 | 7 | We would ask respectfully that we be permitted to |
| 11:53 | 8 | make a comparison of his report and the materials submitted |
| 11:53 | 9 | by the plaintiffs in this case without referring to the |
| 11:53 | 10 | lawyers' involvement in the creation of either. |
| 11:53 | 11 | THE COURT:  Mr. Re. |
| 11:53 | 12 | MR. RE:  We're back to why I filed the motion. |
| 11:53 | 13 | For me to respond to him, I have to tell him exactly what |
| 11:53 | 14 | happened.  He has the who copied from whom in reverse.  For |
| 11:53 | 15 | me to explain and respond to that, I need to tell you what |
| 11:53 | 16 | happened with the lawyers.  I don't think that's fair to |
| 11:53 | 17 | confer something that I know to be absolutely false and does |
| 11:53 | 18 | not bear on the independence of Dr. Palmatier.  It's the |
| 11:53 | 19 | reverse.  He helped the lawyers, not the other way around. |
| 11:54 | 20 | To get into those facts -- this is why we filed |
| 11:54 | 21 | the motion.  I want the lawyers out of it.  If he does that, |
| 11:54 | 22 | starts showing documents written by the lawyers, the only |
| 11:54 | 23 | way to bring that to fairness is to start to put the lawyers |
| 11:54 | 24 | into the trial, and I'm trying to keep the lawyers out of |
| 11:54 | 25 | it.  I think he enjoys showing documents written by the |

EXHIBIT P
-1049-

39

| 11:54 | 1 | lawyers. |
| 11:54 | 2 | MR. MUELLER:  Dr. Palmatier at his deposition |
| 11:54 | 3 | admitted that he did not author those discovery responses. |
| 11:54 | 4 | So what was just represented is exactly the opposite of what |
| 11:54 | 5 | the expert said at his deposition.  Our point is simply |
| 11:54 | 6 | this.  We would ask permission to inquire into the |
| 11:54 | 7 | similarity between a document that he concededly did not |
| 11:54 | 8 | author, namely, the discovery responses on the one hand and |
| 11:54 | 9 | the report on other.  We think that goes to his independence |
| 11:54 | 10 | or lack thereof.  We can do that without referring to the |
| 11:54 | 11 | lawyers at all. |
| 11:55 | 12 | THE COURT:  I want to take one more look at this. |
| 11:55 | 13 | Let's go to the Pretrial Conference Order. |
| 11:55 | 14 | MR. MUELLER:  We have a number of issues with the |
| 11:55 | 15 | Pretrial Conference Order.  We are happy to let the |
| 11:55 | 16 | plaintiffs go first, whatever Your Honor's preference. |
| 11:55 | 17 | MR. RE:  Yes, I do have some issues with the |
| 11:55 | 18 | Pretrial Conference Order that the parties jointly submitted |
| 11:55 | 19 | on March 1. |
| 11:55 | 20 | The first modification that I believe there will |
| 11:55 | 21 | be no debate about is we did narrow some claims.  Masimo |
| 11:55 | 22 | dropped claims 18, 19, 24, 25, and 27 that are listed on |
| 11:55 | 23 | pages 3 and 4 of the Joint Pretrial Conference Order that |
| 11:55 | 24 | was proposed by the parties on March 1.  So those can be |
| 11:55 | 25 | eliminated. |

**EXHIBIT P**
**-1050-**

40

11:55  1           THE COURT:  Give me those again, please.

11:55  2           MR. RE:  On page 3, it's claims 18, 19, 24, 25,

11:56  3   and 27.

11:56  4           THE COURT:  Okay.

11:56  5           MR. RE:  The next issue we did deal with was the

11:56  6   dispute on page 4.  I don't know to what extent you want to

11:56  7   go into some of these footnotes, but Footnote 4 on page 4

11:56  8   was the issue we just discussed with regard to Exhibit A

11:56  9   versus Exhibit B.  It sounds like the parties have a little

11:56  10  more work to do to come up with an agreed upon exhibit.

11:56  11          The one issue I did want to call the Court's

11:56  12  attention to which I'm sure you noticed was the issue I

11:56  13  raised earlier.  There seems to be one issue where the

11:56  14  parties disagree what goes to the jury and what does not.

11:56  15  That's on page 16 where Apple is contending that this

11:56  16  unclean hands defense dealing with the unenforceability of

11:57  17  the confidentiality agreements they think goes to the jury.

11:57  18  I see no support for that whatsoever.  I have studied this

11:57  19  issue, and it's very clear this is an issue for you and not

11:57  20  the jury.

11:57  21          The jury shouldn't be deciding an equitable issue

11:57  22  that's dependent on a legal issue.  It seems like the

11:57  23  parties should agree that the unclean hands doesn't go to

11:57  24  the jury.  I don't know if you want me to keep going or

11:57  25  allow counsel to respond to that.

EXHIBIT P
-1051-

11:57   1          MR. MUELLER:  Briefly, Your Honor.  Your Honor

11:57   2   does have the discretion to send this to the jury or not.

11:57   3   It's certainly up to Your Honor.  We don't think there's a

11:57   4   categorical rule that it go to the jury or not go to the

11:57   5   jury.

11:57   6          I think what we would say, Your Honor, is to the

11:57   7   extent they -- for all the reasons Ms. Amadi said earlier,

11:57   8   to the extent they are allowed to rely on an agreement which

11:57   9   we believe is invalid as a matter of law, it would be unfair

11:57  10   to not allow us to also present a context on the validity of

11:58  11   that same agreement.

11:58  12          They want to be able to use an agreement that is

11:58  13   subject to the legal dispute that Mr. Re just mentioned with

11:58  14   the jury.  We agree there is a legal dispute as to the

11:58  15   validity of those agreements.  We think it's an issue that

11:58  16   is ripe for decision by Your Honor.  But if it is permitted

11:58  17   to go to the jury, we think in the matter of Your Honor's

11:58  18   discretion the jury should also consider the unclean hands

11:58  19   defense.

11:58  20          We believe it's in the --

11:58  21          THE COURT:  I guess I want to see what the trial

11:58  22   record looks like at the time we settle the instructions.

11:58  23          MR. RE:  I want to clarify one point by

11:58  24   Mr. Mueller.  He keeps saying the validity of the agreement.

11:58  25   That's not correct under California law.  Under California

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:58 | 1 | law, it's the validity of a provision.  There is no real |
| 11:58 | 2 | debate that only a provision can be invalidated.  I think we |
| 11:58 | 3 | had this very issue in the True Wearables case. |
| 11:59 | 4 | Secondly, Mr. Kiani and what they are relying upon |
| 11:59 | 5 | deals with the non-compete provision.  That's not what's at |
| 11:59 | 6 | issue in this case.  What's at issue in this case is the |
| 11:59 | 7 | preservation of confidentiality.  That's what's really at |
| 11:59 | 8 | issue, showing Masimo's reasonable precautions in |
| 11:59 | 9 | maintaining confidentiality. |
| 11:59 | 10 | So an unclean hands defense that isn't even |
| 11:59 | 11 | connected to challenge the validity of this agreement that |
| 11:59 | 12 | they are not even a party to -- I think the theory is that |
| 11:59 | 13 | if some parts are invalid then we are not being reasonable |
| 11:59 | 14 | in our precautions.  I don't understand that issue, but it |
| 11:59 | 15 | sounds like there's agreement that it's not for the jury. |
| 11:59 | 16 | It's for you to decide at the appropriate time. |
| 11:59 | 17 | THE COURT:  Well, let's see what the record looks |
| 11:59 | 18 | like. |
| 11:59 | 19 | The next issue -- I have a couple.  Do you have |
| 11:59 | 20 | anything else? |
| 11:59 | 21 | MR. RE:  Another dispute that I would like |
| 11:59 | 22 | resolved is on Footnote 18 on page 26.  We have a dispute |
| 12:00 | 23 | about disclosure of cross-examination exhibits prior to the |
| 12:00 | 24 | cross-examination.  It's our position that those exhibits |
| 12:00 | 25 | that will be used in cross-examination need not be disclosed |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1053-

12:00   1   to the other side along with other exhibits.

12:00   2           THE COURT:  Why?

12:00   3           MR. RE:  Well, I think it gives a much more clear

12:00   4   honest cross-exam if the witness is not prepared with regard

12:00   5   to the exhibits that will be used on cross.

12:00   6           Interestingly, we have experience dealing with

12:00   7   this trial team.  We just tried a case together at the ITC,

12:00   8   and Apple was the side that insisted that there be no

12:00   9   disclosure of cross-examination exhibits, and we agreed to

12:00   10  that.

12:00   11          There are many reasons why.  One of them is in my

12:00   12  experience if you require disclosure of cross-examination

12:00   13  exhibits, what invariably happens is there is disclosure of

12:00   14  numerous exhibits, and in fact, it really becomes a lot of

12:01   15  work to go through exhibits that never get used.

12:01   16          So I think Apple had it right in the last trial we

12:01   17  had where Apple insisted that the witness open up the list

12:01   18  of cross-examination exhibits on camera for the

12:01   19  administrative law judge to see so that the witness could

12:01   20  verify that they had not seen the cross-examination exhibits

12:01   21  in advance, and that was fine.  That's what we did in our

12:01   22  last trial.

12:01   23          For reasons that I can't really tell, Apple has

12:01   24  done a 180 and wants full disclosure a day in advance of the

12:01   25  exhibits you might use on cross-examination of a witness.  I

| | | |
|---|---|---|
| 12:01 | 1 | looked.  I did some research.  It seems to be uniform on |
| 12:01 | 2 | Pretrial Conference Orders, particularly by Chief Judge |
| 12:01 | 3 | Stark in Delaware -- he never required disclosure of the |
| 12:02 | 4 | cross-examination exhibits prior to the cross-exam. |
| 12:02 | 5 | I think it should be handed over at the time of |
| 12:02 | 6 | the cross-exam, handed to the witness, and then you can get |
| 12:02 | 7 | a fresh, clear, realistic cross-exam rather than one where |
| 12:02 | 8 | the witness has prepared the night before knowing what the |
| 12:02 | 9 | cross-examination is going to be.  I just want a more |
| 12:02 | 10 | truthful, honest cross-exam. |
| 12:02 | 11 | THE COURT:  Mr. Mueller. |
| 12:02 | 12 | MR. MUELLER:  I have done this both ways many |
| 12:02 | 13 | times.  We defer to Your Honor as to how you want to do |
| 12:02 | 14 | this.  What we had suggested in connection with the Pretrial |
| 12:02 | 15 | Order was that the parties disclose cross-examination |
| 12:02 | 16 | exhibits that would be admitted as distinct from used for |
| 12:02 | 17 | impeachment only which would not need to be disclosed, the |
| 12:02 | 18 | idea being that if something was going to be actually |
| 12:02 | 19 | admitted into the record to go back with the jury during |
| 12:02 | 20 | deliberations, it would be good for both sides to assess |
| 12:02 | 21 | whether there is a proper foundation with that witness.  But |
| 12:02 | 22 | if Your Honor's preference is no disclosure, we're of course |
| 12:02 | 23 | fine with that.  Whatever Your Honor would prefer, we will |
| 12:03 | 24 | of course abide by. |
| 12:03 | 25 | THE COURT:  Mr. Re. |

EXHIBIT P
-1055-

| 12:03 | 1 | MR. RE:  I believe that it is faster, better that |
| 12:03 | 2 | it not be disclosed.  They are all on the exhibit list.  I'm |
| 12:03 | 3 | not talking about using exhibits that are not on the exhibit |
| 12:03 | 4 | list, so the objections are known in advance.  These are not |
| 12:03 | 5 | impeachment exhibits.  These are substantive |
| 12:03 | 6 | cross-examination exhibits.  These are already disclosed on |
| 12:03 | 7 | the exhibit list, and objections are known in advance. |
| 12:03 | 8 | THE COURT:  We will go with no disclosures. |
| 12:03 | 9 | MR. RE:  Thank you, Your Honor. |
| 12:03 | 10 | The next issue, which I think many of these issues |
| 12:03 | 11 | can be deferred -- there is one I wanted to raise on |
| 12:03 | 12 | page 30.  There seems to be some debate about the ability to |
| 12:03 | 13 | present a rebuttal case.  I think this is an issue that you |
| 12:03 | 14 | obviously have wide discretion on at that time. |
| 12:03 | 15 | THE COURT:  It seems to me that the scope of |
| 12:03 | 16 | rebuttal is not necessarily eliminated by the fact that we |
| 12:04 | 17 | are going to try to call witnesses once.  If you need to go |
| 12:04 | 18 | beyond the scope, you take the person as your witness.  I |
| 12:04 | 19 | don't think that's inconsistent with the potential for a |
| 12:04 | 20 | rebuttal case. |
| 12:04 | 21 | MR. RE:  I totally agree.  With that taken care |
| 12:04 | 22 | of, I think that might eliminate counsel's argument. |
| 12:04 | 23 | The parties agreed on the cases-in-chief tht we |
| 12:04 | 24 | only call a witness once regardless of which party it is, |
| 12:04 | 25 | and the plaintiffs' case will remain open until all the |

EXHIBIT P
-1056-

| | | |
|---|---|---|
| 12:04 | 1 | cross-exams are done of the Apple witnesses for whom are on |
| 12:04 | 2 | our list.  It makes the trial go a lot more quickly. |
| 12:04 | 3 | MR. MUELLER:  We certainly have no objection to |
| 12:04 | 4 | that.  Our concern is a bit different.  Our concern is that |
| 12:04 | 5 | the scope of rebuttal case we believe should be limited to |
| 12:04 | 6 | issues on which Masimo and Cercacor bear the burden of |
| 12:04 | 7 | proof.  The reason for that is we believe that the orderly |
| 12:04 | 8 | progression of evidence would be on the issues for which |
| 12:05 | 9 | they bear the burden of proof.  They put on that evidence. |
| 12:05 | 10 | We have offered that that could be held open through the |
| 12:05 | 11 | Apple case to ensure if there is a witness that they wanted |
| 12:05 | 12 | to use to help support issues on which they bear the burden |
| 12:05 | 13 | of proof. |
| 12:05 | 14 | THE COURT:  That's a different issue. |
| 12:05 | 15 | MR. MUELLER:  We think a rebuttal case is |
| 12:05 | 16 | different.  The rebuttal case is after we have finished. |
| 12:05 | 17 | And if they're unveiling new arguments, new theories, new |
| 12:05 | 18 | witness testimony on issues for which they bear the burden |
| 12:05 | 19 | of proof at the end of the trial, it deprives us of an |
| 12:05 | 20 | opportunity to fully and fairly respond unless we are given |
| 12:05 | 21 | a surrebuttal case. |
| 12:05 | 22 | THE COURT:  The scope is going to be limited by |
| 12:05 | 23 | the scope of your case. |
| 12:05 | 24 | MR. MUELLER:  We would ask not just the scope of |
| 12:05 | 25 | our case, but also that they not be allowed to present |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1057-

12:05  1  rebuttal testimony on issues for which they bear the burden.

12:05  2          THE COURT:  Why is that?  I mean, you make an

12:05  3  attack on a particular argument in your case-in-chief on

12:05  4  which they have the burden.  Why can't they come back in

12:05  5  rebuttal with evidence saying your argument isn't valid for

12:06  6  X, Y, and Z?

12:06  7          MR. MUELLER:  Because if they raise new points --

12:06  8          THE COURT:  They are limited by the scope of your

12:06  9  case.  If you bring up new attacks on an issue where they

12:06  10  have the burden of proof, I think they ought to be able to

12:06  11  come in with a rebuttal witness to address what new attack

12:06  12  you advance.  If they made their prima facie case, they made

12:06  13  their prima facie case.  I don't think they have to

12:06  14  anticipate in their prima facie case all the arguments that

12:06  15  you advance in the defense case.

12:06  16          MR. MUELLER:  Well, to the extent that they raise

12:06  17  new points in their rebuttal case, we would request a

12:06  18  surrebuttal case to address that.

12:06  19          THE COURT:  I can't tell you until we get there.

12:06  20  Indeed, it may be such that no rebuttal case is appropriate.

12:06  21          MR. MUELLER:  Understood.  I take Your Honor's

12:06  22  point that to the extent we make new arguments as part of

12:07  23  our opposition case they would be permitted a rebuttal case.

12:07  24  If they made new arguments as part of their case, we could

12:07  25  ask Your Honor for leave to present surrebuttal testimony.

48

| | | |
|---|---|---|
| 12:07 | 1 | THE COURT:  Right. |
| 12:07 | 2 | MR. MUELLER:  Understood. |
| 12:07 | 3 | MR. RE:  I'm burdened by having done this a little |
| 12:07 | 4 | too long.  The issue now -- what Mr. Mueller -- the word he |
| 12:07 | 5 | used was "new."  That was the weasel word.  You are correct. |
| 12:07 | 6 | I agree with everything you said. |
| 12:07 | 7 | I think the issue is this.  We don't know what |
| 12:07 | 8 | Apple is going to present.  If you look at their memo of |
| 12:07 | 9 | contentions, we have no idea what references they are going |
| 12:07 | 10 | to rely upon.  They just incorporated all their prior |
| 12:07 | 11 | discovery.  It comes down to issues such as the generally |
| 12:08 | 12 | known.  It's generally known to those in the industry.  We |
| 12:08 | 13 | don't even know what references they're going to present, so |
| 12:08 | 14 | it's impossible to anticipate in our prima facie case what |
| 12:08 | 15 | Apple might do the following week.  That's why we want the |
| 12:08 | 16 | ability to respond to not what Mr. Mueller called new but |
| 12:08 | 17 | to, for example, references that their experts may rely on |
| 12:08 | 18 | to show the trade secret is in the public domain. |
| 12:08 | 19 | THE COURT:  They are going to be disclosed |
| 12:08 | 20 | references, or they won't be able to use them. |
| 12:08 | 21 | MR. RE:  They disclosed hundreds of them, and I |
| 12:08 | 22 | doubt they are going to present hundreds at this trial. |
| 12:08 | 23 | THE COURT:  That's probably true, but it seems to |
| 12:08 | 24 | me the parties should have been discussing claims and prior |
| 12:08 | 25 | art reference limitations long ago.  If you think there are |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 12:08 | 1 | too many out there, it's a little late in the day to solve |
| 12:08 | 2 | that problem. |
| 12:08 | 3 | MR. RE:  Well, we tried, and their memo to this |
| 12:09 | 4 | day doesn't reveal any references.  It's a big long memo, |
| 12:09 | 5 | but it doesn't tell me anything about their case.  I learned |
| 12:09 | 6 | nothing from reading their memo.  So the reason this |
| 12:09 | 7 | rebuttal matters is that we can't possibly anticipate what |
| 12:09 | 8 | they will say on certain issues.  That's why the rebuttal |
| 12:09 | 9 | case is important. |
| 12:09 | 10 | THE COURT:  Let's see what the record looks like |
| 12:09 | 11 | at the end of the defense case, and if there is a rebuttal |
| 12:09 | 12 | case, what the record looks like then, but I understand the |
| 12:09 | 13 | issues. |
| 12:09 | 14 | MR. RE:  I think everything else in the Pretrial |
| 12:09 | 15 | Conference Order can be resolved through the charge |
| 12:09 | 16 | conference.  And many of the debates in the footnotes I |
| 12:09 | 17 | think are really jury instruction issues unless the Court |
| 12:09 | 18 | wants to hear further on those changes. |
| 12:09 | 19 | I see it's past the noon hour, so all the other |
| 12:09 | 20 | issues that I have do not relate specifically to the |
| 12:09 | 21 | Pretrial Conference Order.  I do have a few miscellaneous |
| 12:09 | 22 | issues. |
| 12:09 | 23 | THE COURT:  Mr. Mueller. |
| 12:09 | 24 | MR. MUELLER:  There are a couple more on the |
| 12:09 | 25 | Pretrial Order, two in particular. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1060-

12:10   1           First, Your Honor, there are a couple of damages

12:10   2   issues that we wanted to raise mainly for the purpose of

12:10   3   putting on the Court's radar some issues that we expect will

12:10   4   require further attention as the trial unfolds.  Ms. Frazier

12:10   5   can address those.

12:10   6           MS. FRAZIER:  Thank you, Your Honor.

12:10   7           Two issues related to damages that have come to

12:10   8   light through the Joint Pretrial Order exchanges and also

12:10   9   Plaintiffs' Memo of Contentions of Fact and Law.

12:10   10          The first issue is the scope of information

12:10   11  plaintiffs will be permitted to present regarding damages

12:10   12  related to any lost profits they have alleged to have

12:10   13  suffered.  The second is whether the jury should be asked to

12:10   14  decide if Apple misappropriated any alleged trade secret

12:10   15  through acquisition alone.

12:10   16          With respect to lost profits, the last time we

12:10   17  were before you plaintiff suggested that they could put on a

12:11   18  lost profit case through fact witness testimony.  Your Honor

12:11   19  observed at the time that in the abstract they could do that

12:11   20  without an expert, but if they go that route, there would be

12:11   21  disclosure issues.

12:11   22          We are now three weeks away from trial, and Apple

12:11   23  has no disclosure as to what lost profits plaintiffs may be

12:11   24  seeking or how they are calculating those lost profits.

12:11   25  Rule 26(a), as Your Honor well knows, requires a disclosure

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1061-

| 12:11 | 1 | of the computation.  Rule 26(e) required plaintiffs to |
| 12:11 | 2 | supplement anything when they learned it was incomplete. |
| 12:11 | 3 | Their last most recent disclosures which were made on |
| 12:11 | 4 | August 3, 2022, said that plaintiffs had not yet made a |
| 12:11 | 5 | computation of any category of damages. |
| 12:11 | 6 | THE COURT:  It's getting awfully late in the day |
| 12:12 | 7 | if that's the case. |
| 12:12 | 8 | MS. FRAZIER:  They have made no supplemental |
| 12:12 | 9 | disclosures since Mr. Kinrich's lost profits opinions were |
| 12:12 | 10 | excluded.  Moreover, the only disclosures we have are vague |
| 12:12 | 11 | statements in their Memo of Contentions of Fact and Law that |
| 12:12 | 12 | raise very serious concerns for us.  They appear to be |
| 12:12 | 13 | intending, Your Honor, to introduce through different fact |
| 12:12 | 14 | witnesses the same hypothetical opinions that you already |
| 12:12 | 15 | ruled were stricken when offered through the disclosures in |
| 12:12 | 16 | the fall. |
| 12:12 | 17 | The Contentions of Fact and Law also allude to new |
| 12:12 | 18 | evidence of -- since we're on the public record, I won't go |
| 12:12 | 19 | into specifics but new evidence about conversations with |
| 12:12 | 20 | third parties that again, Your Honor, have not been |
| 12:12 | 21 | disclosed to us. |
| 12:12 | 22 | I would like if we could to speak more |
| 12:12 | 23 | specifically about some of the representations in the |
| 12:12 | 24 | Contentions of Fact and Law and our concerns with them, but, |
| 12:13 | 25 | Your Honor, needless to say, we do not think there should be |

12:13   1   a lost profits case at this point.

12:13   2           THE COURT:  Bottom line, you are entitled to the

12:13   3   computation.  You were entitled to the computation the day

12:13   4   the initial disclosures were made.  Bedrock, you are

12:13   5   entitled to computations before you go to trial.

12:13   6           MS. FRAZIER:  Absolutely, and you have noted

12:13   7   before the close of fact discovery that there had been

12:13   8   continuing issues with the damages disclosures and warned at

12:13   9   that time we were reaching a late stage to defend ourselves

12:13   10  against a damages theory, the parameters of which are not

12:13   11  known.

12:13   12          We now submit, Your Honor, we are way too late.

12:13   13  It's way too close to trial to be interjecting a new theory,

12:13   14  a new lost profits number, at this stage.  So we would

12:13   15  request, Your Honor, clarity that plaintiffs are not

12:13   16  permitted to introduce a lost profits demand.

12:13   17          THE COURT:  Well, I'm obviously not going to deal

12:13   18  with that issue on the fly at the pretrial conference.

12:14   19          But where is your computation and what's the

12:14   20  number?  Bottom line, when one of you makes the argument to

12:14   21  the jury, how much are you going to tell the jury you should

12:14   22  be given.  What is that number?

12:14   23          MR. HORNE:  Your Honor, to your point --

12:14   24          THE COURT:  Do you have that number?

12:14   25          MR. HORNE:  I don't have that number with me.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1063-**

53

| | | |
|---|---|---|
| 12:14 | 1 | THE COURT:  Where is it? |
| 12:14 | 2 | MR. HORNE:  I have to check with the team.  This |
| 12:14 | 3 | is forced on me right now.  This hasn't come up in any of |
| 12:14 | 4 | the meetings.  It didn't come up with discussions about the |
| 12:14 | 5 | Pretrial Conference Order.  It didn't come up after we got |
| 12:14 | 6 | our Memo of Contentions out, so I'm taken back. |
| 12:14 | 7 | THE COURT:  You mean you are being blind-sided? |
| 12:14 | 8 | MR. HORNE:  Yes.  I understand the irony, Your |
| 12:14 | 9 | Honor. |
| 12:14 | 10 | THE COURT:  Somewhat ironic position.  You are |
| 12:14 | 11 | going to need to make your disclosure that complies with |
| 12:14 | 12 | Rule 26(a).  Depending on what it is and what the |
| 12:14 | 13 | sufficiency is and what the complexity is, we are going to |
| 12:14 | 14 | have a discussion as to whether it's adequate or timely. |
| 12:15 | 15 | MR. HORNE:  Understood, Your Honor. |
| 12:15 | 16 | MS. FRAZIER:  May we have a chance to respond once |
| 12:15 | 17 | we have received that disclosure to Your Honor with respect |
| 12:15 | 18 | to sufficiency?  How would you like us to approach that? |
| 12:15 | 19 | THE COURT:  Put in a memo. |
| 12:15 | 20 | MS. FRAZIER:  Your Honor, the second issue is the |
| 12:15 | 21 | question of whether the jury should be asked to decide |
| 12:15 | 22 | whether Apple has misappropriated any alleged trade secret |
| 12:15 | 23 | through acquisition alone.  Our position, Your Honor, is |
| 12:15 | 24 | that they should not be asked that because plaintiffs have |
| 12:15 | 25 | never disclosed a damages theory based on acquisition alone. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1064-

12:15  1   The parties dispute on this issue is reflected on page 5 of

12:15  2   the Joint Pretrial Order at Footnotes 5 and 6.

12:15  3          Had we known plaintiffs were intending to pursue

12:15  4   this, we could have discussed it earlier at summary

12:15  5   judgment.  But simply put, Your Honor, plaintiffs have not

12:15  6   disclosed any theory of damages based on acquisition alone.

12:15  7   The CACI jury instructions are explicit that unless there is

12:16  8   such a theory, the jury should not be asked to determine

12:16  9   whether there is misappropriation by acquisition alone as

12:16  10  distinct from misappropriation by use or disclosure.

12:16  11         We have asked plaintiffs repeatedly over the

12:16  12  course of the last week or two to identify for us if they

12:16  13  disclosed anywhere in the record a theory of damages based

12:16  14  on acquisition alone.  They have not identified one for us.

12:16  15  They have simply pointed to Mr. Kinrich's damages opinions

12:16  16  and claimed that those are not limited to any specific type

12:16  17  of misappropriation.

12:16  18         However, following this Court's Daubert order,

12:16  19  Mr. Kinrich is left with only one viable opinion, which

12:16  20  relates to the profits earned that he says are attributable

12:16  21  to the blood oxygen and ECG features in the Apple Watch.

12:16  22  That theory necessarily depends on use of those features.

12:17  23  And, in fact, we noted that in our Daubert motion, that our

12:17  24  concern was he was not differentiating between secrets that

12:17  25  were used versus not used.  And plaintiffs responded in the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 12:17 | 1 | Daubert briefing that Mr. Kinrich had assumed causation for |
| 12:17 | 2 | purposes of his opinions and that they would prove causation |
| 12:17 | 3 | at trial. |
| 12:17 | 4 | With respect to his surviving opinion in |
| 12:17 | 5 | particular, they represented that they would present, quote: |
| 12:17 | 6 | "Evidence from which a reasonable jury could conclude that |
| 12:17 | 7 | Apple used Masimo's technical trade secrets in developing |
| 12:17 | 8 | the blood oxygen feature and Masimo's marketing trade |
| 12:17 | 9 | secrets in marketing both the blood oxygen and ECG |
| 12:17 | 10 | features."  That was at Docket 1164-1. |
| 12:17 | 11 | In short, this is not an acquisition only theory. |
| 12:17 | 12 | It depends on use.  So we ask, Your Honor, that the jury not |
| 12:18 | 13 | be asked to decide misappropriation by acquisition alone. |
| 12:18 | 14 | For today's purposes, we just wanted to preview it because |
| 12:18 | 15 | it will come up in the context of both the jury instructions |
| 12:18 | 16 | and the verdict form. |
| 12:18 | 17 | Thank you, Your Honor. |
| 12:18 | 18 | THE COURT:  Okay. |
| 12:18 | 19 | MS. FRAZIER:  Thank you, Your Honor. |
| 12:18 | 20 | MR. HORNE:  Brian Horne for Masimo and Cercacor. |
| 12:18 | 21 | First, I want to point out that on page 5 of the |
| 12:18 | 22 | Pretrial Conference Order -- 4 and 5, these are the elements |
| 12:18 | 23 | of misappropriation.  This part of the Pretrial Conference |
| 12:18 | 24 | Order doesn't relate to damages at all.  What I think I hear |
| 12:18 | 25 | Apple saying is if you don't have a damages theory on |

EXHIBIT P
-1066-

12:18  1   acquisition, you don't even get a liability question on

12:18  2   acquisition.  We believe that's wrong.

12:19  3           Second, we did disclose that our lost profits

12:19  4   theory is based on acquisition alone.  We disclosed that in

12:19  5   our interrogatory response.  I won't read through all the

12:19  6   interrogatory disclosures.  We do through our interrogatory

12:19  7   response.  Our opposition to the summary judgment made this

12:19  8   clear.  Apple's Daubert motion made clear they understood --

12:19  9   we believe made clear they understood that our lost profits

12:19  10  theory is based on acquisition as well as use.

12:19  11          So we agree this is a jury instruction fight.  I

12:19  12  can go into more depth if the Court would like, but I don't

12:19  13  think that's necessary right now.

12:19  14          THE COURT:  Mr. Mueller.

12:19  15          MR. MUELLER:  We have one final issue on the Joint

12:19  16  Pretrial Conference order.  Mr. Selwyn will handle that.

12:19  17          MR. SELWYN:  Your Honor, I want to briefly address

12:19  18  the issue of who the plaintiffs say are the unnamed

12:19  19  inventors on certain Apple patents.  That issue has been a

12:19  20  moving target throughout this case, and the Joint Pretrial

12:20  21  Conference order shows it continues to be.

12:20  22          To give Your Honor just one example, for the '475,

12:20  23  '754 patent, the plaintiffs now say in the Joint Pretrial

12:20  24  Conference Order that four of plaintiffs' employees should

12:20  25  be named as an inventor.  In their Fourth Amended Complaint,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1067-

12:20  1   they had identified three.  Plaintiffs' expert only offered

12:20  2   an opinion with respect to one, and the one that he

12:20  3   identified is not even one identified in the Fourth Amended

12:20  4   Complaint.

12:20  5          Then on page 9 of the Joint Pretrial Conference

12:20  6   Order, the plaintiffs say that their expert will testify

12:20  7   that four of plaintiffs' employees should be named as an

12:20  8   inventor, again, where he identified only one of them in his

12:20  9   report.  So it appears to us that their expert intends to

12:20  10  dramatically exceed the scope of his report.

12:20  11         THE COURT:  Well, the remedy is obvious, isn't it?

12:21  12         MR. SELWYN:  That he be confined to his report.

12:21  13         THE COURT:  I don't think that's a novel

12:21  14  proposition.  Does that solve your issue?

12:21  15         MR. SELWYN:  That would solve our issue with

12:21  16  respect to the shifting sands of the inventors.

12:21  17         There is one other issue that the Joint Pretrial

12:21  18  Conference Order presents, and this is on page 6.  The

12:21  19  plaintiffs are suggesting that they only need prove that at

12:21  20  least one inventor assigned to Masimo his or her interest in

12:21  21  the patent or made an inventive contribution under

12:21  22  obligation to assign.

12:21  23         There are certain patents where they are claiming

12:21  24  that there are multiple unnamed inventors.  We are concerned

12:21  25  that the lack of specificity in the Joint Pretrial

| | | |
|---|---|---|
| 12:21 | 1 | Conference Order is a preview again of plaintiffs' intent |
| 12:21 | 2 | both to have a shifting sands approach and also to have |
| 12:21 | 3 | ambiguity in the jury instructions about who is the unnamed |
| 12:21 | 4 | inventor to the extent that the jury finds that. |
| 12:21 | 5 | So this is both an issue of disclosure and also an |
| 12:22 | 6 | issue that we think is likely to come up in the context of |
| 12:22 | 7 | the jury instructions to the extent that they insist on it |
| 12:22 | 8 | saying at least one named inventor without giving the jury |
| 12:22 | 9 | an opportunity to the extent that they agree on the |
| 12:22 | 10 | allegation to identify who that is. |
| 12:22 | 11 | THE COURT:  Okay.  Again, I think this is an issue |
| 12:22 | 12 | we will take up at the time of settling or on a Rule 50(a) |
| 12:22 | 13 | motion with respect to particular claims and particular |
| 12:22 | 14 | elements. |
| 12:22 | 15 | Thank you. |
| 12:22 | 16 | MR. MUELLER:  That's all we had for the Joint |
| 12:22 | 17 | Pretrial Conference Order.  We also have some miscellaneous |
| 12:22 | 18 | issues. |
| 12:22 | 19 | THE COURT:  Let's take a short break.  Let's not |
| 12:22 | 20 | take a lunch break, but let's take a short break. |
| 12:22 | 21 | (Recess) |
| 12:31 | 22 | THE COURT:  Mr. Re. |
| 12:31 | 23 | MR. RE:  Thank you, Your Honor. |
| 12:31 | 24 | One issue.  I think the parties agree that the |
| 12:31 | 25 | rule is going to apply, sequestration of witnesses, and that |

EXHIBIT P
-1069-

| 12:31 | 1 | would apply to everybody with the exception of one client |
| 12:31 | 2 | representative and the retained experts. |
| 12:31 | 3 | THE COURT:  Retained experts? |
| 12:31 | 4 | MR. RE:  Correct. |
| 12:31 | 5 | THE COURT:  Okay. |
| 12:31 | 6 | MR. MUELLER:  We are fine with that, Your Honor. |
| 12:31 | 7 | THE COURT:  Okay. |
| 12:31 | 8 | MR. RE:  Next, with regard to the closing of the |
| 12:31 | 9 | courtroom, I would like to keep that to a minimum. |
| 12:31 | 10 | THE COURT:  Yes. |
| 12:31 | 11 | MR. RE:  We are trying our best to limit only to |
| 12:31 | 12 | the disclosure of the trade secrets themselves.  I don't |
| 12:31 | 13 | believe there is really much else as far as e-mails and |
| 12:31 | 14 | things like that.  I don't think the courtroom should be |
| 12:31 | 15 | closed.  I don't know if counsel has any problem with that. |
| 12:32 | 16 | MR. MUELLER:  I do have a few things to say about |
| 12:32 | 17 | that. |
| 12:32 | 18 | THE COURT:  Okay. |
| 12:32 | 19 | MR. MUELLER:  Your Honor, I certainly agree with |
| 12:32 | 20 | the general principle that the courtroom should be sealed -- |
| 12:32 | 21 | or the sealing of the courtroom should be kept to a minimum. |
| 12:32 | 22 | I very much agree. |
| 12:32 | 23 | There is a particular issue we have that we want |
| 12:32 | 24 | to raise with Your Honor with respect to sealing which will |
| 12:32 | 25 | manifest itself in the proposed jury instructions, but there |

EXHIBIT P
-1070-

| | | |
|---|---|---|
| 12:32 | 1 | are a couple connected issues that I would like to also |
| 12:32 | 2 | raise now.  The particular issue is we think the jury should |
| 12:32 | 3 | be instructed that when Your Honor seals the courtroom that |
| 12:32 | 4 | Your Honor is not in any way validating or corroborating the |
| 12:32 | 5 | contention that these are in fact trade secrets. |
| 12:32 | 6 | THE COURT:  That's fine.  Remind me of that the |
| 12:32 | 7 | first time we have a sealed section. |
| 12:32 | 8 | MR. MUELLER:  The more fundamental question goes |
| 12:32 | 9 | beyond sealing, and it really bears on the complexity of the |
| 12:33 | 10 | issues that the jury is going to be presented with here, |
| 12:33 | 11 | which includes some trade secret allegations, some patent |
| 12:33 | 12 | allegations, various buckets.  So what we are trying to do, |
| 12:33 | 13 | Your Honor -- we'd ask for Your Honor's consideration of |
| 12:33 | 14 | ideas that we propose with respect to helping the jury |
| 12:33 | 15 | working through the complexity.  I just want to raise a few |
| 12:33 | 16 | right now.  One was the proposed jury instruction I just |
| 12:33 | 17 | mentioned, but there are a couple of other ones as well. |
| 12:33 | 18 | I think both sides believe that once Your Honor |
| 12:33 | 19 | has resolved the proper format of the description of the |
| 12:33 | 20 | trade secrets which Ms. Wigmore and Mr. Re discussed |
| 12:33 | 21 | earlier -- whatever Your Honor's final ruling is on that |
| 12:33 | 22 | should be part of the juror notebooks.  Why we think that is |
| 12:33 | 23 | significant is it will give the jurors a reference point |
| 12:33 | 24 | that we can cross-reference over the course of the trial |
| 12:33 | 25 | including to avoid having to seal the court. |

EXHIBIT P
-1071-

12:34   1          As Your Honor knows, pursuant to Your Honor's

12:34   2   ruling, we can't even tell the Apple folks what the alleged

12:34   3   trade secrets are, and one way we can try to navigate around

12:34   4   that is by cross-referencing the description that the jurors

12:34   5   have that the witnesses don't.  I think both parties ask

12:34   6   that that be part of the juror notebooks.

12:34   7          We would also ask if you could give us an

12:34   8   opportunity to make a proposal to you on transition

12:34   9   statements for witnesses to allow us to say to the jury the

12:34  10   next witness we believe is relevant to 4, 7, and 8.

12:34  11          THE COURT:  I think that's appropriate.

12:34  12          MR. MUELLER:  Now, also with respect to the

12:34  13   navigation of issues for the jury, I think our concerns were

12:34  14   only amplified with what we heard this morning with respect

12:34  15   to Motion In-Limine No. 2.  I will explain why that relates

12:34  16   to logistical issues right now.

12:34  17          We heard that there is going to be an attempt, if

12:34  18   Your Honor would permit it, to use certain e-mails that have

12:35  19   utterly nothing to do with the actual trade secrets in the

12:35  20   case to establish a pattern or practice or plan.  Now, we

12:35  21   think that's inappropriate for all the reasons Mr. Selwyn

12:35  22   covered, but the logistical reason why it's problematic is

12:35  23   that these are things that have never been listed on their

12:35  24   disclosure of alleged trade secrets, so how could it be a

12:35  25   pattern or a plan of bad acts when there has never been an

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 12:35 | 1 | allegation of a bad act at all? |
| 12:35 | 2 | For us to respond to these attempts to draw |
| 12:35 | 3 | inferences from things that were never alleged to be trade |
| 12:35 | 4 | secrets would require us to show, for example, that the |
| 12:35 | 5 | information that was quoted this morning was generally |
| 12:35 | 6 | available information that simply bore on a candidate's |
| 12:35 | 7 | technical expertise as a general matter, not any attempt to |
| 12:35 | 8 | acquire a trade secret. We would have to call a witness on |
| 12:35 | 9 | that subject. We would have to explain to the witness what |
| 12:35 | 10 | the allegation is, none of which we can do under the current |
| 12:35 | 11 | rules. |
| 12:35 | 12 | So we are very concerned that in addition to |
| 12:35 | 13 | having difficulty of navigating the thicket of the actual |
| 12:36 | 14 | trade secret allegations in this case which have been |
| 12:36 | 15 | narrowed down, now we are seeing an eleventh hour attempt to |
| 12:36 | 16 | throw in additional material having nothing to do with the |
| 12:36 | 17 | narrow set of trade secrets allegations and we are not going |
| 12:36 | 18 | to have a meaningful way procedurally to rebut that |
| 12:36 | 19 | information. |
| 12:36 | 20 | So what we would ask, Your Honor, is both Your |
| 12:36 | 21 | Honor's consideration of mechanisms like transition |
| 12:36 | 22 | statements, reference to the jury notebooks to help the |
| 12:36 | 23 | jurors understand what the allegations are and how the |
| 12:36 | 24 | evidence relates to it, but also we would very much request |
| 12:36 | 25 | that Your Honor maintain the tentative order on No. 2 and |

EXHIBIT P
-1073-

12:36  1   not allow additional material to come in at the eleventh

12:36  2   hour and add to an already complex case.

12:36  3          THE COURT:  I'm not sure that's a logistical

12:36  4   issue.

12:36  5          MR. RE:  I raised closing of the courtroom, and he

12:36  6   reargues MIL No. 2.  I was more concerned about the e-mail

12:36  7   traffic.  It seems like everything in this case is

12:36  8   designated AEO, but that in no ways suggests the courtroom

12:37  9   should be closed when all this e-mail traffic is shown to

12:37 10   the jury.  That's all my concern was.  I won't reargue the

12:37 11   point on MIL No. 2.

12:37 12          Last is I want an agreement on the opening

12:37 13   statement.  I see the Court's standing order suggests a

12:37 14   75-minute maximum.

12:37 15          THE COURT:  Tell me what you want in your

12:37 16   individual case, and I will get back to you.  I don't have a

12:37 17   75-minute rule that I can recall.

12:37 18          MR. RE:  I think it might be in your standing

12:37 19   order.  We propose 60 minutes per side for openings.

12:37 20          THE COURT:  That's fine.

12:37 21          MR. RE:  One other issue I want to raise is the

12:37 22   examination of witnesses.  We propose that there be no

12:37 23   recross.  I'm concerned about the time limit in this case.

12:37 24   I propose that each witness come up, direct, cross,

12:37 25   redirect, done, no fourth round.  I ask the Court to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

64

12:38   1   consider that.

12:38   2           THE COURT:  It seems to me that it's fair if each

12:38   3   side has two opportunities with the witness.

12:38   4           MR. RE:  Understood.

12:38   5           THE COURT:  I'm pretty strong about not going past

12:38   6   that, but it seems to me that's balanced.  You're concern

12:38   7   for time -- you know what the time is, and you get to spend

12:38   8   it the way you want.

12:38   9           MR. RE:  I do have some memory in the last case

12:38  10   where I would raise one or two questions on redirect, and

12:38  11   then there is 45 minutes of recross.

12:38  12           THE COURT:  It's that party's time.  They can

12:38  13   spend it however they want within reason.

12:38  14           MR. RE:  That seems to be unfair to raise new

12:38  15   issues on recross.

12:38  16           THE COURT:  Well, that may be.

12:38  17           MR. RE:  The last issue I want to notify the Court

12:38  18   about is that the parties have agreed in view of the fact

12:38  19   that the trial has been postponed one week -- that we agreed

12:39  20   to move the jury instructions back one week to March 28.

12:39  21           THE COURT:  That's fine.

12:39  22           MR. RE:  With that, I have nothing further.

12:39  23           THE COURT:  Mr. Mueller.

12:39  24           MR. MUELLER:  Yes, Your Honor, just a few other

12:39  25   miscellaneous issues.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1075-**

| 12:39 | 1 | First, with respect to the rule on sequestration |

12:39   1          First, with respect to the rule on sequestration

12:39   2   of witnesses, we understand that would apply after the

12:39   3   opening statements.  Is that correct?

12:39   4          THE COURT:  That's fine.

12:39   5          MR. MUELLER:  The additional issues I have I will

12:39   6   take in no particular order.

12:39   7          For the jury selection, we heard Your Honor's

12:39   8   guidance the last time we were before you.  Just a question

12:39   9   on that.  If someone in the pool of 14 that have been seated

12:39   10  in the box is struck for cause, is it Your Honor's practice

12:39   11  to then seat the next numerical witness in the pool, i.e.

12:39   12  15?

12:39   13         THE COURT:  I'm not sure what you are asking me.

12:40   14  I and the clerk have a random list.  You will get an alpha

12:40   15  list.  If someone is excused for cause, we will go to the

12:40   16  next person on the random list and seat them in that seat.

12:40   17         MR. MUELLER:  Do we have that list?

12:40   18         THE COURT:  No.

12:40   19         MR. MUELLER:  So we are not going to know who the

12:40   20  next person would be?

12:40   21         THE COURT:  No.

12:40   22         MR. MUELLER:  Understood.

12:40   23         The next question we have is in regards to trial

12:40   24  time.  Your Honor has given us days.

12:40   25         THE COURT:  I have given you hours in a week.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1076-**

12:40   1          MR. MUELLER:  I don't think we have hours.

12:40   2          THE COURT:  We get five-and-a-quarter net hours on

12:40   3  average with the jury in a day, so it's 26-and-a-quarter

12:40   4  hours each.

12:40   5          MR. MUELLER:  Understood.  That's helpful.

12:40   6          THE COURT:  Let me say I don't care how many days

12:40   7  it takes to get that done.  You will get those hours.

12:40   8          MR. MUELLER:  Thank you, Your Honor.

12:40   9          In terms of audiovisual resources, is Your Honor

12:40  10  open to the parties meeting and conferring on bringing in

12:41  11  additional TV screens, for example?

12:41  12          THE COURT:  Sure.  In one trial, we had a 10 by 16

12:41  13  screen up there.  The parties seemed to find that useful,

12:41  14  but I have no objection to additional audiovisual equipment.

12:41  15          MR. MUELLER:  The last issue I have is you will

12:41  16  recall there was motion practice both before the Special

12:41  17  Master and before Your Honor on Tim Cook and whether there

12:41  18  should be a deposition of Mr. Cook.  Your Honor eventually

12:41  19  overruled our objections ordering that deposition and it in

12:41  20  fact occurred.

12:41  21          He was deposed, and the parties both had the

12:41  22  opportunity -- or Masimo and Cercacor had the opportunity to

12:41  23  ask the questions in the categories that Your Honor

12:41  24  permitted.  We have now been told that they're not going to

12:41  25  play any portion of that deposition which is, of course,

EXHIBIT P
-1077-

12:42  1   their choice.  We are concerned that they are going to try

12:42  2   to draw some inferences about Mr. Cook.

12:42  3          We are investigating whether he could testify live

12:42  4   at trial.  It's obviously a difficult proposition given the

12:42  5   competing considerations on his time, but I wanted to notify

12:42  6   Your Honor that we may be shortly amending our witness list

12:42  7   if he is available to testify live.

12:42  8          The reason for that is the deposition that he sat

12:42  9   for has not been designated by the plaintiffs, and we think

12:42  10  that in the interests of ensuring that there are no

12:42  11  inferences to be drawn against Apple on that basis, we are

12:42  12  at least looking into whether he might be able to testify

12:42  13  live.

12:42  14         THE COURT:  Absent a representation, there will be

12:42  15  no reference to Mr. Cook.

12:42  16         MR. RE:  Well, Mr. Cook's name does appear on some

12:42  17  documents, some e-mails chains with some of the other

12:42  18  witnesses, so to that extent, Mr. Cook's name will appear.

12:42  19  But I don't believe it's fair to put him on the witness list

12:42  20  when we were limited in the topics we could depose him on.

12:43  21  We are not relying on Mr. Cook.  I don't think they can use

12:43  22  him now offensively.

12:43  23         It appeared to me at the deposition what they were

12:43  24  trying to do was get direct testimony of him.  At the end of

12:43  25  the deposition, it was direct testimony from their own

EXHIBIT P
-1078-

68

| | | |
|---|---|---|
| 12:43 | 1 | counsel -- I believe it was Ms. Frazier -- asked Mr. Cook |
| 12:43 | 2 | many questions and basically did the direct exam of their |
| 12:43 | 3 | own witness.  Now that we are not calling Mr. Cook or |
| 12:43 | 4 | designating his testimony, I don't think it's fair for them |
| 12:43 | 5 | now to bring him live. |
| 12:43 | 6 | THE COURT:  Do you want to waive the |
| 12:43 | 7 | unavailability and let him use the deposition? |
| 12:43 | 8 | MR. RE:  I need to think about that one. |
| 12:43 | 9 | THE COURT:  Well, think about it. |
| 12:43 | 10 | MR. RE:  I don't think it's fair to call him at |
| 12:43 | 11 | all.  Using their own deposition of their own witness?  I |
| 12:43 | 12 | need to look at the transcript and discuss it because he is |
| 12:44 | 13 | available. |
| 12:44 | 14 | THE COURT:  Well, I don't think he is in the |
| 12:44 | 15 | subpoena power of this Court. |
| 12:44 | 16 | MR. RE:  I don't know that.  I don't know.  We |
| 12:44 | 17 | were limited to very, very specific topics to depose him.  I |
| 12:44 | 18 | don't think he should be allowed to come live.  I think |
| 12:44 | 19 | that's totally unfair. |
| 12:44 | 20 | MR. MUELLER:  If they would consent to our playing |
| 12:44 | 21 | the deposition, there may be no issue at all. |
| 12:44 | 22 | THE COURT:  Well, talk it through. |
| 12:44 | 23 | MR. RE:  I was a little confused about the list. |
| 12:44 | 24 | So when juror 15 is put in the box, we won't know who juror |
| 12:44 | 25 | 15 is going to be? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1079-**

| | | |
|---|---|---|
| 12:44 | 1 | THE COURT:  Until juror 15 sits in the box. |
| 12:44 | 2 | MR. RE:  So our list will only show 15, 16, 17, |
| 12:44 | 3 | 18? |
| 12:44 | 4 | THE COURT:  It will, but they won't be 15, 16, 17, |
| 12:44 | 5 | and 18 on your list.  You will get all the names.  You won't |
| 12:45 | 6 | get the order in which they will be called. |
| 12:45 | 7 | MR. RE:  So they are not in seat order and number |
| 12:45 | 8 | order?  Normally, 15, 16, and 17 -- |
| 12:45 | 9 | THE COURT:  They just come in and sit wherever |
| 12:45 | 10 | they would like to sit.  We call 14 at random, and they are |
| 12:45 | 11 | seated.  You learn after the fact, but nobody knows coming |
| 12:45 | 12 | in the door who is first and who is last. |
| 12:45 | 13 | MR. MUELLER:  Will we be sitting on Mondays during |
| 12:45 | 14 | trial? |
| 12:45 | 15 | THE COURT:  No.  Mondays is criminal matters in |
| 12:45 | 16 | the morning, law and motion, and specific things at 3:00. |
| 12:45 | 17 | So absent something usual, Monday is never a trial day. |
| 12:45 | 18 | Well, let's talk about that first week, the week |
| 12:45 | 19 | of the 4th of April.  That's a break week for most kids. |
| 12:46 | 20 | The 5th is Passover.  The 7th is Good Friday.  Any thoughts? |
| 12:46 | 21 | I want to start that week, but I also want to be sympathetic |
| 12:46 | 22 | to people with religious concerns. |
| 12:46 | 23 | MR. MUELLER:  We are fine to start that week, and |
| 12:46 | 24 | we are happy to cooperate on any witness conflicts that |
| 12:46 | 25 | Masimo and Cercacor might have, but we are happy to start on |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT P
-1080-

70

12:46    1    that Tuesday.

12:46    2              MR. RE:  We are as well.

12:46    3              THE COURT:  What about Friday?

12:46    4              MR. MUELLER:  It's not an issue for our team.  We

12:46    5    can be here to do the trial.  If Your Honor prefers not to

12:46    6    sit that day, we certainly understand.

12:46    7              THE COURT:  People often make plans for Easter.

12:47    8              MR. RE:  I will check.  I don't know the answer to

12:47    9    that.

12:47   10              MR. MUELLER:  The lawyers are okay.  I'm just

12:47   11    worried about maybe a witness or two.

12:47   12              THE COURT:  Come back to me.  We don't need an

12:47   13    answer today.

12:47   14              Okay, mechanical things on my list, hours 9:00 to

12:47   15    12:00, 15-minute break about 10:30, 1:30 to 4:30, a

12:47   16    15-minute break about 3:00.  I try and time the breaks so

12:47   17    they make sense in terms of the flow of witnesses.  If you

12:47   18    or a witness would like to take a break at another point,

12:47   19    let me know or let Ms. Vargas know.  I tell the jurors the

12:47   20    same thing.  I want people to be comfortable.

12:47   21              I will do the initial instructions, and I will

12:47   22    think about adding in the definition of the relevant trade

12:47   23    secrets here.  My standard instructions are pretty

12:47   24    vanilla/vanilla.

12:48   25              The final instructions, I will remind you of the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1081-**

| 12:48 | 1 | format that is laid out in the order for a jury trial.  One |

12:48   1   format that is laid out in the order for a jury trial.  One

12:48   2   joint packet.  Each instruction in the order in which they

12:48   3   will be read.  If there's an objection, it's right there.

12:48   4   If there is a counterproposal, it's right there.  So I have

12:48   5   in one neat packet for each instruction and whatever

12:48   6   arguments, pro or con, for that or for the alternative.

12:48   7        What volume of depositions do you intend to use

12:48   8   substantively?  I'm concerned about the volume and being

12:48   9   able to rule on the objections in a timely fashion.  I have

12:48   10   learned somewhat painfully of late that I want to make sure

12:48   11   I have time to consider whatever objections are raised.  I

12:48   12   know what you have got laid out in the Pretrial Conference

12:48   13   Order.

12:48   14        MR. RE:  Well, we are willing to submit them

12:49   15   earlier because there are quite a few deposition transcripts

12:49   16   at issue.  We are willing to submit them earlier if you

12:49   17   would like.

12:49   18        THE COURT:  I will modify the order, back

12:49   19   everything up at least a couple days.  It doesn't mean you

12:49   20   are barred from submitting marked-up transcripts earlier so

12:49   21   I don't get deluged.

12:49   22        MR. RE:  We will submit ours early.

12:49   23        THE COURT:  I received a joint statement of the

12:49   24   case.  I will put that in the initial instructions, and I

12:49   25   will also read it as context for the voir dire.

EXHIBIT P
-1082-

72

| | | |
|---|---|---|
| 12:49 | 1 | Each side will have 45 minutes of voir dire.  I |
| 12:49 | 2 | think that's plenty notwithstanding the complexities of this |
| 12:49 | 3 | case.  I don't cut people off if they're on to something |
| 12:49 | 4 | about prejudice, but 45 minutes just to visit with the |
| 12:50 | 5 | prospective jurors I think is plenty. |
| 12:50 | 6 | In terms of the peremptories, if we seat a jury of |
| 12:50 | 7 | eight, three peremptories.  If you exercise all of them, we |
| 12:50 | 8 | have eight.  You don't lose a peremptory if you pass.  Two |
| 12:50 | 9 | passes in a row, we stop.  For example, if you accept the |
| 12:50 | 10 | panel each as initially constituted, Jurors 1 through 8 |
| 12:50 | 11 | would be the jury. |
| 12:50 | 12 | If you have any questions about that now or later, |
| 12:50 | 13 | please feel free to raise them. |
| 12:50 | 14 | MR. RE:  Understood, Your Honor. |
| 12:50 | 15 | THE COURT:  At the moment, I don't perceive any |
| 12:50 | 16 | other logistical problem.  There is nominally a criminal |
| 12:50 | 17 | case on for the next week, but I'm sure that's not going to |
| 12:51 | 18 | go. |
| 12:51 | 19 | Anything else anyone would like to raise? |
| 12:51 | 20 | MR. RE:  No, Your Honor. |
| 12:51 | 21 | MR. MUELLER:  No, Your Honor. |
| 12:51 | 22 | THE COURT:  If we have any need any further |
| 12:51 | 23 | discussions between now and then on any issues, contact |
| 12:51 | 24 | Ms. Vargas, and we will set up a telephone conference. |
| 12:51 | 25 | Okay, thank you. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1083-**

73

| 12:51 | 1 | (Whereupon, the proceedings were concluded.) |
| 12:51 | 2 | * * * |
| 12:51 | 3 | |
| 12:51 | 4 | |
| 12:51 | 5 | |
| 12:51 | 6 | |
| 12:51 | 7 | |
| 12:51 | 8 | |
| 12:51 | 9 | |
| 12:51 | 10 | |
| 12:51 | 11 | |
| 12:51 | 12 | |
| 12:51 | 13 | |
| 12:51 | 14 | |
| 12:51 | 15 | |
| 12:51 | 16 | |
| 12:51 | 17 | |
| 12:51 | 18 | |
| 12:51 | 19 | |
| 12:51 | 20 | |
| 12:51 | 21 | |
| 12:51 | 22 | |
| 12:51 | 23 | |
| 12:51 | 24 | |
| 12:51 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1084-**

74

**CERTIFICATE**


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  March 19, 2023



/s/   Sharon A. Seffens  3/19/23
_____
SHARON A. SEFFENS, U.S. COURT REPORTER


SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT P**
**-1085-**