UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 20-00048 JVS (JDEx) | Date | March 15, 2023 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Second Order Regarding Motions *in Limine***

Plaintiffs, Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs") and Defendant, Apple Inc. ("Apple"), move the Court for relief by way of Motions *in Limine*. The Court now enters its rulings.

## I. Apple's Motions *in Limine*

### *A. Motion in Limine No. 1: Reference to Other Litigations and Proceedings*

Apple requests the Court "preclude Plaintiffs from offering any evidence, testimony, or argument about or making any reference before the jury to any other litigation or proceeding." (MIL 1, Dkt. No. 1296, at 6.) Plaintiffs opposed. (Opp'n 1, Dkt. Nos. 1332 (unsealed), 1333 (sealed).) Apple replied. (Reply 1, Dkt. Nos. 1383 (unsealed), 1384 (sealed).)

The Court finds that the evidence, rulings, and dispositions of other cases will shed little, if any, probative value. Fed. R. Evid. 401. Additionally, references to other litigations risks danger of unfair prejudice, confusion of the issues, and

misleading the jury. Fed. R. Evid. 403. Such evidence, regardless if they are patent or trade secret cases, could also lead jurors to "defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves." United States v. Sine, 493 F.3d 1021, 1033 (9th Cir. 2007). To the extent Plaintiffs wish to present to the jury the actual prior rulings, such evidence would be hearsay. Fed. R. Evid. 801.

Plaintiffs, in their opposition, seek to preclude Apple from introducing evidence relating to the International Trade Commission investigation. (Opp'n 1 at 11–12.) The Court will not consider affirmative relief in an opposition to a motion.

The Court directs that if any testimony from a prior case is used for proper purposes (e.g., impeachment), the testimony be described as "sworn testimony given in a prior proceeding" or similarly. See also United States v. Gomez-Gallardo, 915 F.2d 553 (9th Cir. 1990) ("That is, impeachment is not permitted where it is 'employed as a guise for submitting to the jury substantive evidence that is otherwise unavailable.'"). If the parties have concerns that any specific evidence may violate this Order, the parties shall raise the matter with the Court out of the presence of the jury or make an objection in the usual course.

Accordingly, the Court **GRANTS** Apple's first motion *in limine*.

*B. Motion in Limine No. 2: References to Irrelevant Apple Operations*

Apple seeks an order excluding three categories of evidence it asserts are irrelevant and prejudicial. (MIL 2, Dkt. Nos. 1300 (unsealed), 1316 (sealed).) Plaintiffs opposed the motion. (Opp'n 2, Dkt. Nos. 1343 (unsealed), 1363 (sealed).) Apple responded. (Reply 2, Dkt. Nos. 1381 (unsealed), 1409 (sealed).)

First, Apple asks the Court to exclude statements or evidence about Apple's foreign operations, including Apple's international corporate structure, the location of its foreign partners, and negative press reports about poor working conditions in factories that manufacture Apple's products. (MIL 2 at 2.) Plaintiffs present no arguments regarding why such evidence would be relevant, and even state that they not intend to elicit such testimony "unless Apple opens the door." (Opp'n 2 at 4.)

The Court finds that evidence of Apple's foreign operations is irrelevant to the issues of trade secret misappropriation in the United States. Fed. R. Evid. 401. Admitting such evidence would cause undue delay and would likely confuse the jury. Fed. R. Evid. 403. However, should Apple, indeed, "open the door" to such evidence at trial, the Court may reconsider its ruling. See City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1070 (9th Cir. 2017).

Second, Apple seeks exclusion of all statements or evidence about Apple's size and overall financial resources. (MIL 2 at 3-4.) Apple contends such evidence is irrelevant to whether Apple misappropriated Plaintiffs' purported trade secrets, whether Apple, improperly failed to list Plaintiffs' employees as co-inventors on certain patents, and damages. (Id.) Plaintiffs argue that Apple's experts put Apple's overall financial size and resources at issue in their testimonies regarding how long Apple would have been able to discover the alleged trade secrets. (Opp'n 2 at 6-7.) Plaintiffs additionally argue Apple's overall financial resources are relevant to showing how easily Apple could have afforded to acquire Masimo. (Id. at 7-8.)

The Court finds that Apple's overall size and financial resources are largely irrelevant to the issues in this case. Fed. R. Evid. 401. However, Plaintiffs may be permitted to present evidence regarding the size and resources of Apple's teams that worked on or in relation to the alleged misappropriated trade secrets. For example, testimony about the size of the hardware team working on the Apple Watch is relevant to how quickly Apple could have discovered the trade secrets on its own.

Finally, Apple seeks to exclude testimony about Apple's recruitment of Plaintiffs' employees other than those alleged to have conveyed trade secrets to Apple. (MIL 2 at 4–5.) Plaintiffs contend such evidence is relevant to show intent, motive, knowledge, and plan to misappropriate Plaintiffs' trade secrets. (Opp'n 2 at 13.) However, Plaintiffs have not alleged that employees other than Drs. O'Reilly and Lamego misappropriated trade secrets, and therefore evidence of Apple's recruitment of other employees is irrelevant. Fed. R. Evid. 401. Additionally, employees are not only permitted but encouraged to move freely from one company to another under at-will employment. Therefore, absent allegations that these other employees misappropriated trade secrets, evidence of their hiring is largely irrelevant.

Plaintiffs contend evidence Apple's recruitment efforts of other employees is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident in misappropriate Plaintiffs' trade secrets. (Opp'n 2 at 13 (citing Fed. R. Evid. 404(b)(2).) While such evidence could give rise to an inference of plan, intent, etc., its admission would likely result in delay and confusion to the jury. See Fed. R. Evid. 403. Accordingly, the Court finds the prejudicial impact of Apple's recruiting employees Plaintiffs' employees other than O'Reilly and Lamego substantially outweighs its probative value. See id.

Accordingly, the Court **GRANTS** Apple's second motion *in limine*.

*C. Motion in Limine No. 3: Inflammatory Statements Attributed to Apple's Employees*

Apple seeks to exclude: (1) statements suggesting that Apple employs a strategy of "efficient infringement"; (2) statements of copying or stealing technology by the late Steve Jobs; (3) two offensive or derogatory statements by O'Reilly; and (4) "political positions attributed to Apple or its leadership, media reports unrelated to this litigation, and media speculation about Apple." (MIL 3, Dkt. Nos. 1303, 1317).

First, statements of "infringement" or "copying" have no relevance to whether Apple misappropriated trade secrets. Second, courts have routinely excluded the same, often-quoted statements by Steve Jobs, who died before the events at issue, as irrelevant or prejudicial. Pinn v. Apple, No. 19-1805, 2021 WL 4777134, at *2–3 (C.D. Cal. July 14, 2021); Contentguard Holdings, Inc. v. Amazon.com, Inc., Nos. 13-1112 & 14-61, 2015 WL 11089490, at *5 (E.D. Tex. Sept. 4, 2015); Optis Wireless Tech., LLC v. Apple Inc., Dkt. 437, No. 2:19-cv-66 (E.D. Texas July 29, 2020), Core Wireless Licensing S.A.R.L. v. Apple Inc., No. 15-CV-05008, Dkt. 362, slip op. at 3 (N.D. Cal. Nov. 17, 2016); Apple iPod iTunes Antitrust Litig., No. 05-CV-0037, 2014 WL 12719192, at *4 (N.D. Cal. Nov. 18, 2014); Emblaze Ltd. Inc. v. Apple Inc., No. 5:11-CV-01079, Dkt. 519, slip op. at 3 (N.D. Cal. June 18, 2014). Therefore, these statements will be excluded because they are irrelevant and risk confusing the jury. Fed. R. Evid. 402; Fed. R. Evid. 403.

Both parties appear to agree that O'Reilly's two statements, i.e. the use of

the term "tar baby," and the statement joking about Apple's lack of humor, should not be used. (See Opp'n at 16; Reply at 3.) Accordingly, the Court denies Apple's request as moot.

Finally, Apple has not pointed the Court to any specific evidence or testimony about the "political positions attributed to Apple or its leadership, media reports unrelated to this litigation, and media speculation about Apple" that it seeks to exclude. While other courts have excluded "political statement[s]" or media "statement[s] unrelated to the litigation," Optis Wireless Technology, Dkt. No. 437, at 247; Pinn, Dkt. 425-1, at 78–80, they did so under specific facts and with specific statements. While the Court agrees that such testimony is generally irrelevant, Apple's request is too vague to be granted. See Trovata, Inc v. Forever 21, Inc., No. 07-01196, 2009 WL 10671582, at *4 (C.D. Cal. Mar. 4, 2009) ("The Court cannot complete its Rule 403 analysis without the specific evidence to be offered."). Should Apple identify and specific statements which Masimo intends to offer, it is free to renew this portion of the motion.

Accordingly, the Court **GRANTS** Apple's third motion *in limine* with respect to the first two categories, **DENIES** as moot as to the third category, and **DENIES** as to the last category.

*D. Motion in Limine No. 4: Unlawful Confidentiality Provisions of Employee Agreements*

1. Motion Summary

Apple asks the Court to preclude Plaintiffs from "from offering any evidence, testimony, or argument about the confidentiality provisions of the [Masimo/Cercacor Employee Confidentiality] Agreements," because those provisions are so broad to constitute an improper restraint of trade under California Business & Professions Code § 16600; therefore, they are "irrelevant, unfairly prejudicial, and would lead to undue delay." (MIL 4, Dkt. Nos. 1306, 1318 (sealed).) Apple argues that "Plaintiffs should not be permitted to compel employees to sign agreements that are contrary to law, and then use those same agreements to their advantage in affirmative litigation." (Id. at 1.) Apple contends the confidentiality provisions are void because they restrain employee mobility by purporting to "prohibit[] the use of 'Confidential Information' outside of Masimo and define[] that term to include 'any information in any form that

Masimo considers confidential.'" (Id. at 4 (quoting Dkt. No. 1306-6, Ex. 4 at 4).) Apple argues this is especially inappropriate where Plaintiffs admit the provisions are unenforceable in California. (Id. at 5 (citing Dkt. No. 1306-3, Ex. 1, Kiani Dep. at 286:14-18, 287).) Because the provisions are void, Apple argues that Plaintiffs should not be allowed to rely on them at trial. (Id. at 8.)

Plaintiffs respond that this Court already upheld the challenged confidentiality provisions in the related True Wearables litigation, and another court has relied on them. (Opp'n 4, Dkt. Nos. 1375, 1334 (sealed).) Further, Plaintiffs challenge Apple's attempt to use a motion *in limine* to seek summary judgment on the enforceability of the confidentiality provisions. (Id. at 2.) In any event, Plaintiffs argue that California authority explains that agreements designed to protect proprietary information such as trade secrets do not violate section 16600. (Id. at 4–5.) Plaintiffs also argue that the provisions do not restrict trade because the covenant of good faith and fair dealing requires construing them narrowly. (Id. at 7–8.) Moreover, Plaintiffs distinguish provisions that relate to protecting confidential information while still employed and protecting such information generally. (Id. at 9.) Plaintiffs argue that, even if void, the provisions would be relevant to show Plaintiffs' efforts to tell their employees about the company's confidentiality expectations. (Id. at 10.) Finally, Plaintiffs argue that Apple would not be unduly prejudiced by admitting the agreements into evidence. (Id.)

Apple replies that the specific issue concerning facial validity was not presented in True Wearables. (Reply 4, Dkt. Nos. 1375, 1410 (sealed).) Apple contends that if it had been raised, Brown v. TGS Mgmt. Co., 57 Cal. App. 5th 303, 316–17 (2020), would have required this Court to hold the confidentiality provisions invalid." (Id. at 1.) Apple argues that, since the provisions are unenforceable, they are irrelevant under Rule 402 and unfairly prejudicial under Rule 403. (Id. at 8–9.)

2. Analysis

The Court declines to reach Apple's belated facial attack to the confidentiality provisions. The Court's Standing Order makes clear that "Motions in Limine should be used to raise legitimate evidentiary issues, and not as veiled motions for summary adjudication." (Dkt. No. 36 at 4.) Apple argues that "the confidentiality provisions [a]re *facially invalid as a matter of law*." (MIL 4 at 6

(emphasis added).) Indeed, Apple admits that an employee's "facial challenge to the legality of the confidentiality provisions is a legal issue" the Court "decide[s] de novo." Brown v. TGS Mgmt. Co., LLC, 57 Cal. App. 5th 303, 318, 271 Cal. Rptr. 3d 303, 317 (2020), as modified on denial of reh'g (Nov. 12, 2020). (See Reply 4 at 7 (Brown "held that the validity of comparable confidentiality provisions was 'a legal issue' and one that could be resolved without wading into the 'factual details'").) Accordingly, the Court finds that Apple's facial attack comes too late and **DENIES in part** MIL 4 on that basis.[1]

Because it is too late to raise a facial challenge, the Court instead considers whether the confidentiality provisions present any legitimate evidentiary issues, i.e., whether they should be excluded as irrelevant or unduly prejudicial. See Fed. R. Evid. 402, 403. Under the California Uniform Trade Secrets Act ("CUTSA"), a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(2). "[C]onfidentiality procedures, such as confidentiality agreements and document labeling, are often considered reasonable measures." United States v. Chung, 659 F.3d 815, 825 (9th Cir. 2011).

Applying this standard, the Court finds that the confidentiality provisions relevant to show Plaintiffs' alleged efforts to protect their alleged trade secrets.[2] The Court agrees with Apple, however, in one respect. The Court rules that this issue cannot evolve into a mini-trial about the validity of the provisions. Therefore, the Court is prepared to restrict the scope of any examination on this topic as a waste of time and confusing to the jury if not tailored appropriately. See Fed. R. Evid. 403.

The Court orders the parties to meet and confer to reach an agreement on a

---

[1] This is especially true considering the timing of the Court's Findings of Fact and Conclusions of Law issued in Masimo Corp. v. True Wearables, Inc., Case No. 8:18-cv-2001-JVS-JDE, which issued on November 7, 2022, one month before the summary judgment deadline in this case. See Dkt. No. 600 (entered 11/16/22). To the extent Apple was concerned about the confidentiality provisions and the lack of analysis concerning their facial validity, it could have addressed them at the summary judgment stage.

[2] This ruling is narrow and relates only to Plaintiffs' efforts to protect their trade secrets. It does not extend to, e.g., allowing the confidentiality provisions to be used to prove acquisition by improper means by O'Reilly or Lamego.

narrow set of questions and related impeachment concerning the existence of the confidentiality provisions, but unknown legal validity of them because the issue has not been adjudicated. For example, Plaintiffs may wish to examine Kiani about the existence of the provisions without going into detail of each and every provision and each and every signed agreement, whereas Apple may wish to cross-examine Kiani on his concession during deposition that part of the agreements are unenforceable in California.[3] Each party could then argue in closing what it believes the existence of the agreements shows. The Court cautions the party that it will not allow undue time to be wasted on this issue and the parties should not ask the jury to resolve the legal question. If necessary, the Court will consider a limiting instruction. Thus, the Court **GRANTS in part** MIL 4 on this limited basis.

For the reasons stated, the Court **DENIES in part** and **GRANTS in part** Apple's fourth motion in limine.

## II. Plaintiffs' Motion *in Limine*

Plaintiffs asks the Court to exclude "evidence or argument about their attorneys' involvement in this case." (MIL 1, Dkt. No. 1297-2 at 3.) Specifically, Plaintiffs seek to exclude evidence and argument regarding (1) attorney preparation of Plaintiffs' § 2019.210 trade secret disclosure and (2) attorney preparation of discovery responses allegedly sharing similarities with Dr. Palmatier's expert report. (Id.) Apple filed an opposition. (Dkt. Nos. 1337, 1336-1 (unredacted).) Plaintiffs filed a reply. (Dkt. No. 1371.)

### *A. Preparation of the § 2019.210 Trade Secret Disclosure*

Protracted evidence and argument concerning Plaintiffs' attorneys' preparation of the § 2019.210 trade secret disclosure is irrelevant and inadmissible. Fed. R. Evid. 401, 402. The fact that attorneys prepared a trade secret disclosure does not tend to prove or disprove the underlying trade secrets are valid and protectable:

---

[3] To the extent Apple believes it should be able to prove invalidity of the confidentiality provisions in support of its unclean hands defense, it may file an offer of proof of no more than five pages within seven days of this order, including addressing whether unclean hands is a jury question. Plaintiffs may respond in no more than five pages within seven days after receiving Apple's offer of proof.

> [T]hese documents are not relevant to show the "credibility" of any representation by Plaintiffs that they owned trade secrets at the time of any alleged misappropriation or breach of a non-disclosure agreement. Each document was created on a date subsequent to any accused conduct, and as such cannot make Plaintiffs' representations they owned trade secrets years prior—during the relevant period of accused conduct—any more or less probable.

BladeRoom Grp. Ltd. v. Facebook, Inc., No. 5:15-CV-01370-EJD, 2018 WL 1569703, at *1 (N.D. Cal. Mar. 30, 2018). Preparation of the disclosure document has no tendency to prove or disprove that Plaintiffs were in possession of the trade secrets at the time of litigation or that Plaintiffs created the trade secrets at issue. Id. Rather, the trade secret disclosure merely serves as an identification of the trade secrets for litigation purposes. See Advanced Modular Sputtering, Inc. v. Super. Ct., 33 Cal. Rptr. 3d 901, 907 (2005) ("The trade secret designation mandated by section 2019.210 is not itself a pleading but it functions like one in a trade secret case because it limits the scope of discovery in much the same way as the allegations of a complaint limit discovery in other types of civil actions.")

Apple raises two arguments regarding the relevancy of the trade secret disclosure. Neither are persuasive. First, Apple argues that Plaintiffs' witnesses' inability to describe Plaintiffs' trade secrets without referring to the disclosure created during this litigation "goes to the heart of" Plaintiffs' misappropriation claim.[4] (Dkt. No. 1336-1 at 5.) However Apple need not refer to the trade secret disclosure or Plaintiffs' attorneys' preparation of that document to question witnesses regarding pre-suit documentation of the trade secrets. In fact, the trade secret disclosure is, indisputably, not a pre-litigation document. To the extent a witness erroneously identifies the disclosure as a pre-litigation document, jury instructions may resolve the misunderstanding.[5]

---

[4] Apple identifies deposition testimony in which witnesses referred to discovery responses or mentioned their attorneys when asked about documentation for the trade secrets. (Dkt. No. 1336-1 at 4.) Apple may distinguish between pre-litigation and post-litigation documents, as needed, to establish a lack of pre-litigation documentation. Apple may not present protracted evidence or argument regarding Plaintiffs' attorneys' document preparation activities.

[5] Plaintiffs indicate they proposed a jury instruction explaining that Plaintiffs prepared a written description of the trade secrets at the beginning of the case. (Dkt. No. 1337 at

Second, Apple argues it should be able to cross-examine witnesses regarding a lack of written, pre-litigation documentation of the trade secrets, Apple's position that the trade secrets identified in the disclosure were copied from the patent, and Apple's position that Plaintiffs' attorneys defined the trade secrets after litigation began. (Id.) Apple may cross-examine witnesses regarding a lack of pre-litigation documentation without reference to the trade secret disclosure, as discussed above. As to the "copying" argument, Apple may argue the patent discloses the identified trade secrets and that the patent predates any evidence of creation or possession of the trade secrets. Apple need not argue that Plaintiffs' attorneys copied the patent. The "definition" argument is irrelevant. The trade secret disclosure identifies the trade secrets for litigation purposes but has no tendency to prove or disprove creation or possession at the time of the alleged misappropriation, as discussed above.

Accordingly, for the foregoing reasons, Plaintiffs' motion *in limine* is **GRANTED** as to the trade secret disclosure issue. Apple may not suggest that attorney preparation of the disclosure document is probative of creation or possession of the underlying trade secrets.

*B. Purported Similarity between Discovery Responses and Dr. Palmatier's Expert Report*

Plaintiffs seek to exclude testimony and evidence suggesting that their expert, Dr. Palmatier, copied portions of his expert report from Plaintiffs' discovery responses. (Dkt. No. 1297 at 6.) Specifically, Plaintiffs ask the Court to exclude Dr. Kivetz' opinions offered at ¶¶ 211–212 and Table 3 of his report (Dkt. No. 1295-2) and related argument and evidence concerning the discovery responses. Apple contends the similarities between the discovery responses and Dr. Palmatier's report are relevant because they suggest that Dr. Palmatier did not perform an independent analysis and that he is not credible. (Dkt. No. 1336-1 at 7.) Apple asks the Court to permit cross examination of Dr. Palmatier on this topic to test for attorney ghost writing. (Id.)

Plaintiffs respond that the similarity does not support an inference of copying given the timing of the discovery responses and the expert report. (Dkt. No. 1371 at 13.) However, Plaintiffs explain that to rebut Apple's position, they would need to offer attorney testimony to explain the timing issue. (Dkt. No. 1371 at 14.) Plaintiffs

---

9.)

argue this would be prejudicial.

The purported similarity between the discovery responses and Dr. Palmatier's report have little, if any, relevance to Dr. Palmatier's credibility. Apple identifies only these purported similarities, and no other evidence of a lack of independence. By contrast, the cases Apple cites include situations in which the expert admitted to substantial attorney involvement in preparing the report. See Marbled Murrelet (Brachyramphus Marmoratus) v. Pac. Lumber Co., 880 F. Supp. 1343, 1364 (N.D. Cal. 1995), aff'd 83 F.3d 1060 (9th Cir. 1996) ("Kerns faxed his draft report to Pacific Lumber's attorneys and asked them 'How much flesh should be hung on the bones?'"); Howard v. City of Durham, No. 1:17CV477, 2021 WL 5086379, at *9 (M.D.N.C. Nov. 2, 2021) (citing expert testimony recounting a joint drafting effort between the expert and the attorney).

Further, argument and evidence specific to the discovery responses puts Plaintiffs in a potentially prejudicial situation as described above. Plaintiffs could decline to present attorney rebuttal testimony; however, Dr. Palmatier may appear less credible to the jury absent any explanation of the similarity. Moreover, Apple already questioned Dr. Palmatier about the discovery responses at his deposition. (Palmatier Dep. Tr., Docket No. 1336-2 at 318:2-11.) Dr. Palmatier testified that he reviewed the interrogatory responses but did not author them. (Id.) Dr. Palmatier's review likely explains the similarity. Here, the risk of prejudice outweighs the low probative value of the similarity evidence. Fed. R. Evid. 403. The evidence is not admissible.

Accordingly, for the foregoing reasons, Plaintiffs' motion *in limine* is **GRANTED** as to the discovery responses issue. Apple may generally cross examine Dr. Palmatier regarding the independent preparation of his report. Apple may also confirm that Dr. Palmatier reviewed the interrogatory responses, consistent with his deposition testimony. However, Apple may not ask Dr. Palmatier to explain the alleged similarities between the report and the discovery responses or otherwise implicate Plaintiffs' attorneys.

* * * * * * * * * * * * *

The Court asked the parties to meet and confer and notify the Court via email to the Courtroom Deputy Clerk whether any parts of the sealed order should be redacted from the publicly-filed version of the order. Plaintiffs and Apple submitted proposed redactions which the Court reviewed. However, the Court finds they do not fall within the scope of the prior sealing orders. The proposed

redactions related to high-level, general information rather than confidential or trade secret information. Accordingly, this Order is published in its entirety without redactions.

**Counsel are ordered to advise the parties and all witnesses of the Court's rulings so that there are no inadvertent violations of this Order.**

**IT IS SO ORDERED.**