1   MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2   THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5   Tel.: 650.858.6000 / Fax: 650.858.6100

6   JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   One Front Street, Suite 3500
    San Francisco, CA 94111
9   Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
      HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16          **UNITED STATES DISTRICT COURT**
17   **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| 18  MASIMO CORPORATION,<br>a Delaware corporation; and<br>19  CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>20                    Plaintiffs,<br><br>21          v.<br><br>22<br>APPLE INC.,<br>23  a California corporation,<br><br>24                    Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION** |

25

26          REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL
27

28   APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST
       PROFITS CALCULATION

                                    CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   JOSEPH J. MUELLER, *pro hac vice*
      joseph.mueller@wilmerhale.com
2   SARAH R. FRAZIER, *pro hac vice*
      sarah.frazier@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   60 State Street
    Boston, MA 02109
5   Tel.: 617.526.6000 / Fax: 617.526.5000

6   NORA Q.E. PASSAMANECK, *pro hac vice*
      nora.passamaneck@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   1225 Seventeenth Street, Suite 2600
    Denver, CO 80202
9   Tel.: 720.274.3152 / Fax: 720.273.3133

10  BRIAN A. ROSENTHAL, *pro hac vice*
      brosenthal@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
12  New York, NY 10166-0193
    Tel.: 212.351.2339 / Fax: 212.817.9539
13
    KENNETH G. PARKER, SBN 182911
14    ken.parker@haynesboone.com
    HAYNES AND BOONE, LLP
15  660 Anton Boulevard, Suite 700
    Costa Mesa, CA 92626
16  Tel.: 650.949.3014 / Fax: 949.202.3001

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST
PROFITS CALCULATION

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

Plaintiffs do not dispute—and their proffer of alleged building blocks confirms—that their ▮▮▮▮▮▮▮ lost profits calculation was never disclosed to Apple until March 15, 2023.  Throughout discovery, Plaintiffs intended to proffer their damages calculations only through their expert Jeffrey Kinrich.  Plaintiffs repeatedly resisted providing the basic computation of damages and reasonable damages contentions required by FRCP 26, arguing that the "damages theories and calculations in this case are properly the subject of expert testimony."  *See, e.g.*, Dkt. 614-12 at 1-2 (Plaintiffs' January 21, 2022 letter brief opposing Apple's motion to compel a computation of Plaintiffs' damages and their damages contentions); *see also* Dkt. 614-6 [Apple's letter brief moving to compel] at 1-2, 4.

Now that Mr. Kinrich's lost profits opinion has been stricken by this Court, Plaintiffs are brazenly seeking nearly ***double*** the lost profits Mr. Kinrich calculated through fact witness testimony.  To state it another way, Plaintiffs now contend that their damages are ▮▮▮▮▮ more than the highest number their own expert—who had full access to the discovery record and decades of purported experience in analyzing and calculating damages—was willing to sign his name to.  Apple is not aware of, nor have Plaintiffs identified, a single case where a party lost a damages theory on *Daubert* and was then permitted to pursue nearly doubled damages through fact witnesses based on a previously undisclosed calculation.

The dearth of precedent supporting Plaintiffs' approach is for good reason: Plaintiffs' proposal is the opposite of how disclosures should work.  FRCP 26 requires Plaintiffs to provide, "a computation of each category of damages claimed" "***without*** awaiting a discovery request." [1]  It is entirely contrary to both FRCP 26's requirements and common sense to expect Apple to hunt for purported clues, try to predict what

---

[1] All emphases added unless otherwise noted.

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION

1                                                                  CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  Plaintiffs will claim, and then compute Plaintiffs' damages for them.  *See, e.g.*, *Erhart*

2  *v. Bofi Holding*, 2022 WL 129696 at *3 (S.D. Cal. Jan. 13, 2022) ("[A] plaintiff

3  'cannot shift to the defendant the burden of attempting to determine the amount of the

4  plaintiff's alleged damages'") (citation omitted).  It is especially outrageous here

5  where Apple previously moved to compel this very disclosure and, after they

6  continued to obfuscate their damages theories, Plaintiffs were repeatedly warned by

7  the Special Master and this Court that there would be consequences to that resistance.

8  *See, e.g.*, Dkt. 617 at 6; Dkt. 816 at 10-11; Dkt. 1031 at 11-12.

9       The time for those consequences has come.  As discussed below, Plaintiffs' new

10  lost profits calculation and the inputs thereto (units, module price, and profit margin)

11  were not timely disclosed and should be excluded from trial.  As a preliminary matter,

12  Plaintiffs' new damages calculation is predicated on the same type of lay witness

13  opinion testimony this Court has deemed untimely disclosed and inadmissible absent a

14  full expert report.  Moreover, Plaintiffs' proffer confirms that the building blocks they

15  now attempt to stack into a coherent theory were not disclosed for this purpose.  What

16  Plaintiffs now seek to rely on was never disclosed to Apple as evidence of Plaintiffs'

17  purported lost profits damages.  To the contrary, many of the inputs Plaintiffs use were

18  expressly *rejected* as unhelpful to the lost profits disclosure that was made in Mr.

19  Kinrich's now-stricken expert report.

20       While Apple need not show prejudice, given this Court's prior decision

21  excluding Mr. Kinrich's lost profits opinion as fundamentally unreliable, it is

22  manifestly unjust for Apple to have to defend against an even more flawed demand for

23  twice as much money based on undisclosed evidence.  Plaintiffs attempt to categorize

24  their new calculation as nothing more than "simple arithmetic and evidence," Dkt.

25  1475 at 1, but if that were true, it is further confirmation that Plaintiffs should have

26  timely and clearly disclosed those inputs and calculations during discovery.  Moreover,

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  even if the multiplication itself were "simple arithmetic," Plaintiffs would still have to

2  identify why the numbers being multiplied are appropriate and admissible inputs into

3  that mathematical calculation.  On that critical issue, Plaintiffs have no properly

4  disclosed answer.  To the contrary, the information that Plaintiffs did disclose through

5  Mr. Kinrich's opinions runs counter to each input they now seek to rely on.

6       Given that (1) Plaintiffs failed to timely disclose their lost profits calculation or

7  the inputs thereto, (2) crucial foundation for that calculation has been stricken, and (3)

8  at least one of the requisite inputs is facially inadmissible hearsay, Plaintiffs should be

9  precluded from presenting a lost profits theory at trial.

10       **A.     Plaintiffs' Building Blocks Have No Admissible Foundation.**

11       The theory on which Plaintiffs' new calculation is based is the same contention

12  on which their expert Mr. Kinrich's calculation was based—*i.e.*, that "but for Apple's

13  trade secret misappropriation, Apple would have ███████████████████████

14  ███████." Dkt. 1475 at 1.  In other words, Plaintiffs' new calculation requires as its

15  foundation some explanation of what Plaintiffs believe *would* have occurred in the but-

16  for world.  While this foundational testimony is not specified in their proffer,

17  Plaintiffs' memorandum of contentions of fact and law makes clear that Plaintiffs

18  intend to have Masimo's CEO Joe Kiani and other Masimo employees offer an opinion

19  about what *would* have happened in a hypothetical world where █████████████

20  ██████████████████████ and what Masimo *would* have done in that situation.

21  *See, e.g.*, Dkt. 1430 at 38-40 (Mr. Kiani "will testify that, ████████████████

22  ██████████████████████████████████████████████

23  ██████████████████████████████████████████████

24  ████████████████████").

25       This Court previously determined that this exact type of testimony about a

26  hypothetical scenario necessarily exceeds the percipient knowledge of Plaintiffs'

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    employees and, to be used, must be supported by a full FRCP 26(a)(2)(B) report.

2    Because Plaintiffs have provided no such report in this case, testimony about this

3    hypothetical cannot be used to support a damages theory.  *See* Dkt. 1283 at 6-7

4    (striking Kinrich's lost profits opinion because it is based on "excluded opinions

5    regarding what Masimo ***would have*** done ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  Simply put,

7    absent introduction of the type of opinion testimony this Court has already excluded,

8    there is no foundation on which Plaintiffs' new building blocks can be laid.  Plaintiffs'

9    attempt to repackage the same inadmissible testimony with new witnesses should be

10   rejected.

11          **B.      The Building Blocks That Plaintiffs Identify Were Untimely**

12                  **Identified And Are Inadmissible.**

13          Plaintiffs' proffer relies on a handful of bulleted summaries of evidence (labeled

14   "disclosures"), none of which provided notice to Apple that Plaintiffs would seek to

15   rely on the specific building blocks they now use to construct a ▮▮▮▮▮▮ lost

16   profits calculation.  In fact, for each building block identified, Plaintiffs cite to

17   disclosures that pointed ***away*** from what they are now using to calculate their

18   purported lost profits.

19                  *1.      Apple Watch Units*

20          Plaintiffs indicate their new lost profits calculation uses the total units sold of

21   Apple Series 4-7 and SE Watches.  Dkt. 1479-1 at 1.  Plaintiffs should not be permitted

22   to introduce or rely on this data as an input to a lost profits calculation for several

23   reasons.

24          ***First***, nowhere before March 15, 2023 did Plaintiffs identify this set of Apple

25   Watch sales as the relevant input for their lost profits calculation.  Plaintiffs cite their

26   July 20, 2022 response to Apple's Interrogatory No. 17 (regarding damages

27

28   APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST
        PROFITS CALCULATION
                                                    4           CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   contentions) as a source of their disclosure, but that response merely states that

2   "documents identified in Apple's response to Interrogatory No. 5 contain factual

3   information regarding sales of Accused Products that are relevant to determining

4   Masimo's lost profits."  Dkt. 1475-2, Ex. B [Pls. Resps. to Rog 17] at 37.  Apple

5   produced (and identified in Interrogatory No. 5) sales data for *all* Apple Watches sold

6   to that point—starting with the original Apple Watch Series 0.  Nowhere in Plaintiffs'

7   response to Interrogatory No. 17—or anywhere else during fact discovery—did

8   Plaintiffs identify which models of Apple Watch or how many units from each model

9   Plaintiffs would include in a lost profits calculation.

10       ***Second***, Plaintiffs cite to Mr. Kinrich's October 2022 report as "set[ting] forth

11  Apple's sales by model and quarter," Dkt. 1479-1 at 1, but ignore that Mr. Kinrich

12  opined in that report that only a ***subset*** of the total units of Apple Watch Series 4 and

13  later should properly be included in a lost profits calculation based on Masimo's

14  "sensor module" theory.  The reason for Mr. Kinrich's narrowing is that, based on

15  basic economic theory, Apple would have had to raise prices and therefore sell fewer

16  Watches if it had ███████████████████████.  Dkt. 1475-10 [Ex. J (Kinrich

17  Rpt.)] at 497-98 ("████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████").  Plaintiffs' use of the total

20  units sold of Apple Series 4-7 and SE Watches flies in the face of their own expert.

21       This is not a minor discrepancy.  The difference between the number of Apple

22  Watch units in Mr. Kinrich's stricken calculation and Plaintiffs' new calculation is ██

23  ██████████.  *Compare id.* at 498 (Mr. Kinrich considering "█████████████

24  ████████") *with* Dkt. 1475 at 8 (Plaintiffs considering "█████████████████

25  ██████").  It would be both contrary to the purpose of FRCP 26 disclosures and

26  fundamentally unfair to allow Plaintiffs to expand their claim in such an extraordinary

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   fashion at the eleventh hour—particularly as Apple and its expert had no opportunity

2   to respond to (and rebut) Plaintiffs' assertions during discovery.

3     **Finally**, Plaintiffs purport to identify witnesses through whom they could

4   introduce evidence of Apple's overall sales data for Apple Watch Series 4 and later,

5   but Plaintiffs fail to explain who would introduce evidence as to *why* those sales

6   should be included in their lost profits calculation.  That is because, under Plaintiffs'

7   theory, the timing of which Apple Watch models would be implicated depends on

8   hypothetical opinion as to █████████████████████████████████

9   █████ .  This Court "expressly excluded" the lay witness opinion that "Apple could

10   have incorporated Masimo's sensor into its watches ██████████████████

11   ████████████████████████████████████████████████

12   ███████████████████████████ '" when offered through Masimo COO

13   Bilal Muhsin "because such opinions went beyond Muhsin's percipient knowledge."

14   Dkt. 1283 at 7 (citing Dkt. 1031 at 6, 9).  Plaintiffs have identified no admissible

15   source of evidence for this necessary piece of their calculation and for good reason—

16   there is none.  As this Court has recognized, such opinion would have needed to be

17   disclosed and supported by a full Rule 26(a)(2)(B) report.  *See* Dkt. 1031 at 6-7.

18       *2.  Plaintiffs' Hypothetical Module Price*

19     Plaintiffs seek to rely on testimony from Mr. Kiani and Mr. Muhsin regarding a

20   purported offer to sell sensor modules to ████████ to support Plaintiffs' assertion that

21   "Masimo prices its sensor modules for at least $100 per module."  Dkt. 1479-1 at 2.

22   This building block too should be excluded because it was not properly disclosed, is

23   inadmissible hearsay, and utterly speculative.

24     **First**, Plaintiffs never previously disclosed the alleged offer to ████████ as

25   relevant to lost profits, let alone as *the* datapoint that would be used to support their

26   lost profits calculation.  Rather, Plaintiffs disclosed the purported offer to ████████ in

27

28

1    their damages contentions *only* as related to *reasonable royalty* damages.  Dkt. 1475-2

2    at 27, 33 (identifying as "facts that may be used to determine a reasonable royalty in

3    this matter," that "███████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ███████████████████," and that "████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ███████████████████████").  While Plaintiffs argue that their interrogatory

8    response elsewhere cited relevant passages from Mr. Kiani and Mr. Muhsin's

9    depositions, these citations made no reference to the specific testimony Plaintiffs now

10   intend to rely upon—nor did Plaintiffs claim these passages had any relevance to lost

11   profits.  *See id.* at 43 (stating only that "███████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████"); *see also* Dkt. 1071 at 5 (finding a FRCP 26

14   violation where Plaintiffs claimed that their "broad and vague statement that Plaintiffs

15   'may rely' on [a] broad category of PLAs" sufficiently disclosed a particular set of

16   licenses as relevant to reasonable royalties).

17          ***Second***, Plaintiffs again cite to Mr. Kinrich's now-stricken opinion as a source

18   of disclosure of "Masimo's $100/$100 pricing" as relevant to lost profits.  But here too

19   Mr. Kinrich's disclosure contradicts Plaintiffs' new position.  Mr. Kinrich specifically

20   ***rejected*** the $100 per unit price purportedly offered to ██████ as a reliable input to

21   the calculation of lost profits in this case.  Dkt. 1475-10 at 496-97 ("█████████

22   ████████████████████████████████████████████████████████████

23   ███████████████████████").  Plaintiffs should not now be permitted to rely on an

24   input that prior disclosures disavowed for that purpose.  Such reliance is directly

25   counter to the intent of FRCP 26 disclosures and highly prejudicial to Apple, including

26

27

28

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION

7                    CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  because Apple would have no way to elicit Mr. Kinrich's disagreement with the new

2  calculation without opening the door to his stricken opinions.

3    **Third**, Plaintiffs' claim that they identified this purported offer to ████ as a

4  potential input to a lost profits calculation in opposition to Apple's summary judgment

5  motion.  But because Plaintiffs' opposition brief was filed months after the close of

6  discovery, it cannot plausibly be considered a timely disclosure.  *tagTrends, Inc. v.*

7  *Nordstrom, Inc.*, 2014 WL 12561604, at \*5 (C.D. Cal. Sept. 30, 2014) (Selna, J.)

8  (finding "[p]laintiffs' failure to disclose their damages computation prior to the filing

9  of their [summary judgment opposition] was clearly unjustified").

10    **Fourth**, Plaintiffs' reliance on an alleged offer to ████—an offer that

11  ████ did not accept or apparently even show any serious interest in pursuing—as a

12  basis for what Apple would have agreed to pay Plaintiffs is utterly speculative and

13  unsupported.  This is especially true because Plaintiffs' proffer does not identify a

14  single document corroborating this alleged offer.  Self-serving testimony regarding a

15  unilateral offer never accepted by ████ or anyone else does not constitute a

16  reliable input to a damages calculation—as Plaintiffs' expert himself recognized.

17    **Finally**, Plaintiffs' proffer confirms that the testimony of Mr. Kiani and Mr.

18  Muhsin that Plaintiffs seek to introduce is inadmissible hearsay.  Plaintiffs state that

19  "Kiani will testify that ***he offered*** to sell sensor modules ████ ***for $200*** each"

20  and that "***he directed*** Muhsin to refine ████ to a $100 hardware sensor

21  module price and a $100 parameter fee," and that "Muhsin will testify that ***he***

22  ***conveyed*** the $100/$100 offer ████."  Dkt. 1479-1 at 3.  These out-of-court

23  statements made by executives of the Plaintiffs are being offered by the Plaintiffs for

24  their truth—*i.e.*, as evidence that "Masimo prices its sensor modules for at least $100

25  per module."  Dkt. 1479-1 at 2-3.  They are accordingly inadmissible hearsay.  *See* Fed

26  R. Civ. P. 801(c); Fed. R. Evid. 802; *Barela v. Cnty. of Orange*, 2022 WL 17037430,

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  at *7 (C.D. Cal. Aug. 4, 2022) (Selna, J.) ("Hearsay is an out-of-court statement

2  offered to prove the truth of the matter asserted.").

3        Plaintiffs have identified no non-hearsay purpose or applicable exception that

4  would render these statements admissible.  There is none.  In their response to Apple's

5  memorandum regarding lost profits, Plaintiffs argued that Mr. Kiani's and Mr.

6  Muhsin's testimony are "verbal acts."  Dkt. 1475 at 11-12.  But a "verbal act" is a

7  statement "that itself affects the legal rights of the parties" and whose "significance …

8  lies solely in the fact that it was made" such that "no issue is raised as to the truth of

9  anything asserted."  Fed. R. Civ. P 801(c) advisory committee notes.  For example,

10  *U.S. v. Pang*, on which Plaintiffs rely, involved executed checks—legally operative

11  documents.  362 F.3d 1187, 1192 (9th Cir. 2004).  Here, there is no claim that the

12  statements themselves served any legal effect; it is undisputed that there is nothing

13  even close to a contract between Plaintiffs and ▮▮▮▮.  *See* Dkt. 1475 at 11-12.

14  Instead, Plaintiffs are trying to rely on the out-of-court statements for the truth of the

15  assertion that they price their module at $100.  The purported conversations with

16  ▮▮▮▮ are accordingly inadmissible, and without them, Plaintiffs have no lost

17  profits calculation.

18             *3.    Masimo's Profit Margin*

19        Plaintiffs identify as their final building block testimony regarding Masimo's

20  W1 watch and Masimo's company-wide gross profits.  These too should be excluded

21  for purposes of showing lost profits.

22        ***First***, the testimony cited in Plaintiffs' proffer relates generally to Masimo's W1

23  watch, not the sensor module itself or ▮▮▮▮▮▮▮

24  ▮▮▮▮▮.  *See* Dkt. 1475-6 (Ex. F) at 128 (responding to a question

25  about "▮▮▮▮▮▮▮

26  ▮▮▮▮").  Plaintiffs never identified Masimo's margins with respect to

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   the W1 as relevant to lost profits, nor have they produced any evidence of those profit

2   margins.  *See* Dkt. 1475-2 at 43 (citing to the same broad swaths of testimony from

3   Mr. Muhsin discussed, *supra* at 7).

4        ***Second***, Plaintiffs do not cite to a single disclosure made during fact discovery

5   that identifies Masimo's 10-Ks or the company-wide profits margins they now seek to

6   rely on as relevant to a lost profits calculation.  *See* Dkt. 1456 at 11.  Again, there is

7   none.  Plaintiffs did not cite a single Masimo 10-K in their damages contentions—let

8   alone contend that they were relevant to lost profits.  Moreover, Plaintiffs' proffer now

9   expands the scope of evidence they seek to rely on even from their March 15

10  disclosure, by identifying different years of 10-Ks that they contend they will now use

11  to support their claimed gross margins.  *Compare* 1456-1 at 3 (March 15 disclosure

12  stating that "███████████████████████████████████████████

13  ███████████" (citing Masimo's 2021 10-K)) *with* Dkt. 1479-1 at 3 ("Masimo

14  produced during fact discovery numerous 10-K filings that disclose profit margins

15  around 65%, including: Fiscal Year 2021 … Fiscal Year 2019 … [and] Fiscal Year

16  2017.").  This confirms the insufficiency of even Plaintiffs' post-discovery

17  "disclosures"—that even now remain a moving target.

18       ***Third***, Plaintiffs cite Mr. Kinrich's now-stricken opinion as a source of

19  disclosure.  Plaintiffs ignore, however, that Mr. Kinrich did ***not*** rely on Masimo's 10-

20  Ks but instead on its income statements from 2010 through 2020.  In fact, Mr.

21  Kinrich's only citation to Masimo's 10-K in his report is when he discussed the

22  company's background.  *See* Dkt. 1475-10 at 444-446.  In other words, Plaintiffs now

23  wish to rely on an input for their profit margin that even their own expert apparently

24  did not believe sufficiently reliable or relevant for this purpose.

25       ***Finally***, while Plaintiffs could presumably rely on Mr. Kiani and Mr. Muhsin to

26  introduce Masimo's 10-K filings, Plaintiffs cannot rely on them to opine that

27

28  APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST
    PROFITS CALCULATION

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1     ██████████████████████████████ *would have* maintained those same margins.

2     Not only have Plaintiffs identified no information regarding the profit margins for the

3     module—████████████████████████—but opining on ████████████

4     ███████████████████████ *would have* enjoyed necessarily involves the type

5     of opinion testimony this Court has already excluded.  *See supra* pp. 3-4, 6; *see also*

6     Dkt. 1031 at 6 (finding Mr. Muhsin's disclosure "veer[ed] from his percipient

7     knowledge … when he opine[d] on the hypothetical scenario of what Masimo *would*

8     *have* done ████████████████████████████████████████").

9                       4.     *Masimo's Manufacturing Costs*

10          Plaintiffs' proffer attempts *for the third time* to relitigate the origins and

11     admissibility of the 2021 Cost Report that this Court has twice excluded.  *See, e.g.*,

12     Dkt. 1283 at 9 (finding "the 2021 document … was prepared in anticipation of

13     litigation" and "not permit[ting] Plaintiffs to end run [the Court's] order by attempting

14     to utilize facts and opinions the Court previously excluded, just in different

15     packaging.").  As this Court is aware, Plaintiffs' claim that the 2021 Report was

16     prepared in the ordinary course of business is contradicted by Plaintiffs' prior

17     representations.  *See* Dkt. 1171-2 at 7-8 (Priddell disclosure stating "████████

18     ████████████████████████████████████████████████

19     ███████████████████████████" ); Dkt. 1120-3 (Plaintiffs'

20     counsel representing that "[t]he documents produced [on August 18] were an update to

21     an analysis that Masimo previously conducted and produced. ***This is not an analysis***

22     ***that Masimo performs in the ordinary course of business***, nor are the documents

23     produced kept in the ordinary course[.]").  The Court should reject Plaintiffs' latest

24     attempt to rely on a document that was not properly disclosed.

25          In addition, Plaintiffs ignore that their only lost profits disclosure using this

26     document—Mr. Kinrich's stricken lost profits calculation—does *not* use the

27

28     Apple's Response To Plaintiffs' Disclosure Of Alleged Building Blocks For Their Lost Profits Calculation

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   information as Plaintiffs now seek to do so.  Plaintiffs admit that Mr. Kinrich

2   recognized that "████████████████████████████████████████

3   ████"—*i.e.*, ████████████████████████████████████████—as compared

4   to the 2021 cost data Plaintiffs seek to use as an input to their calculation.  Dkt. 1475 at

5   14.  Plaintiffs should not be permitted to proceed with an undisclosed, inflated

6   calculation that again runs counter to the disclosures that were provided.

## CONCLUSION

8       For the reasons above, Plaintiffs should be precluded from seeking lost profits at

9   trial.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST
PROFITS CALCULATION

12   CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Dated:  March 28, 2023          Respectfully submitted,

2

3                                    JOSEPH J. MUELLER

4                                    MARK D. SELWYN
                                     AMY K. WIGMORE
5                                    JOSHUA H. LERNER

6                                    SARAH R. FRAZIER
                                     NORA Q.E. PASSAMANECK
7                                    THOMAS G. SPRANKLING

8                                    WILMER CUTLER PICKERING HALE AND
                                     DORR LLP
9

10                                   BRIAN A. ROSENTHAL
                                     GIBSON, DUNN & CRUTCHER LLP
11

12                                   KENNETH G. PARKER
                                     HAYNES AND BOONE, LLP
13

14

15                                   By:  /s/ *Mark D. Selwyn*

16                                        Mark D. Selwyn

17

18                                   *Attorneys for Defendant Apple Inc.*

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 3612 words, which [choose one]:

 _X_  complies with the word limit of L.R. 11-6.1

 ___  complies with the word limit set by court order dated [date].


Dated:  March 28, 2023                    Respectfully submitted,


                                          MARK D. SELWYN
                                          AMY K. WIGMORE
                                          JOSHUA H. LERNER
                                          SARAH R. FRAZIER
                                          NORA Q.E. PASSAMANECK
                                          THOMAS G. SPRANKLING
                                          WILMER CUTLER PICKERING HALE AND
                                          DORR LLP

                                          BRIAN A. ROSENTHAL
                                          GIBSON, DUNN & CRUTCHER LLP

                                          KENNETH G. PARKER
                                          HAYNES AND BOONE, LLP



                                          By:  /s/ *Mark D. Selwyn*
                                               Mark D. Selwyn


                                          *Attorneys for Defendant Apple Inc.*