| | |
|---|---|
| 1 | MARK D. SELWYN, SBN 244180 |
| | mark.selwyn@wilmerhale.com |
| 2 | THOMAS G. SPRANKLING, SBN 294831 |
| | thomas.sprankling@wilmerhale.com |
| 3 | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| 4 | 2600 El Camino Real, Suite 400 |
| | Palo Alto, CA 94306 |
| 5 | Tel.: 650.858.6000 / Fax: 650.858.6100 |
| 6 | JOSHUA H. LERNER, SBN 220755 |
| | joshua.lerner@wilmerhale.com |
| 7 | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| 8 | One Front Street, Suite 3500 |
| | San Francisco, CA 94111 |
| 9 | Tel.: 628.235.1000 / Fax: 628.235.1001 |
| 10 | AMY K. WIGMORE, *pro hac vice* |
| | amy.wigmore@wilmerhale.com |
| 11 | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| 12 | 2100 Pennsylvania Ave NW |
| | Washington, DC 20037 |
| 13 | Tel.: 202.663.6000 / Fax: 202.663.6363 |

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION** |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

## INTRODUCTION

Plaintiffs do not dispute—and their proffer of alleged building blocks confirms—that their ▮▮▮▮▮ lost profits calculation was never disclosed to Apple until March 15, 2023. Throughout discovery, Plaintiffs intended to proffer their damages calculations only through their expert Jeffrey Kinrich. Plaintiffs repeatedly resisted providing the basic computation of damages and reasonable damages contentions required by FRCP 26, arguing that the "damages theories and calculations in this case are properly the subject of expert testimony." *See, e.g.*, Dkt. 614-12 at 1-2 (Plaintiffs' January 21, 2022 letter brief opposing Apple's motion to compel a computation of Plaintiffs' damages and their damages contentions); *see also* Dkt. 614-6 [Apple's letter brief moving to compel] at 1-2, 4.

Now that Mr. Kinrich's lost profits opinion has been stricken by this Court, Plaintiffs are brazenly seeking nearly ***double*** the lost profits Mr. Kinrich calculated through fact witness testimony. To state it another way, Plaintiffs now contend that their damages are ▮▮▮▮ more than the highest number their own expert—who had full access to the discovery record and decades of purported experience in analyzing and calculating damages—was willing to sign his name to. Apple is not aware of, nor have Plaintiffs identified, a single case where a party lost a damages theory on *Daubert* and was then permitted to pursue nearly doubled damages through fact witnesses based on a previously undisclosed calculation.

The dearth of precedent supporting Plaintiffs' approach is for good reason: Plaintiffs' proposal is the opposite of how disclosures should work. FRCP 26 requires Plaintiffs to provide, "a computation of each category of damages claimed" "***without*** awaiting a discovery request."[1] It is entirely contrary to both FRCP 26's requirements and common sense to expect Apple to hunt for purported clues, try to predict what

---

[1] All emphases added unless otherwise noted.

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
1    CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

Plaintiffs will claim, and then compute Plaintiffs' damages for them. *See, e.g.*, *Erhart v. Bofi Holding*, 2022 WL 129696 at *3 (S.D. Cal. Jan. 13, 2022) ("[A] plaintiff 'cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages'") (citation omitted). It is especially outrageous here where Apple previously moved to compel this very disclosure and, after they continued to obfuscate their damages theories, Plaintiffs were repeatedly warned by the Special Master and this Court that there would be consequences to that resistance. *See, e.g.*, Dkt. 617 at 6; Dkt. 816 at 10-11; Dkt. 1031 at 11-12.

The time for those consequences has come. As discussed below, Plaintiffs' new lost profits calculation and the inputs thereto (units, module price, and profit margin) were not timely disclosed and should be excluded from trial. As a preliminary matter, Plaintiffs' new damages calculation is predicated on the same type of lay witness opinion testimony this Court has deemed untimely disclosed and inadmissible absent a full expert report. Moreover, Plaintiffs' proffer confirms that the building blocks they now attempt to stack into a coherent theory were not disclosed for this purpose. What Plaintiffs now seek to rely on was never disclosed to Apple as evidence of Plaintiffs' purported lost profits damages. To the contrary, many of the inputs Plaintiffs use were expressly *rejected* as unhelpful to the lost profits disclosure that was made in Mr. Kinrich's now-stricken expert report.

While Apple need not show prejudice, given this Court's prior decision excluding Mr. Kinrich's lost profits opinion as fundamentally unreliable, it is manifestly unjust for Apple to have to defend against an even more flawed demand for twice as much money based on undisclosed evidence. Plaintiffs attempt to categorize their new calculation as nothing more than "simple arithmetic and evidence," Dkt. 1475 at 1, but if that were true, it is further confirmation that Plaintiffs should have timely and clearly disclosed those inputs and calculations during discovery. Moreover,

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
2                     CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  even if the multiplication itself were "simple arithmetic," Plaintiffs would still have to
2  identify why the numbers being multiplied are appropriate and admissible inputs into
3  that mathematical calculation.  On that critical issue, Plaintiffs have no properly
4  disclosed answer.  To the contrary, the information that Plaintiffs did disclose through
5  Mr. Kinrich's opinions runs counter to each input they now seek to rely on.

6       Given that (1) Plaintiffs failed to timely disclose their lost profits calculation or
7  the inputs thereto, (2) crucial foundation for that calculation has been stricken, and (3)
8  at least one of the requisite inputs is facially inadmissible hearsay, Plaintiffs should be
9  precluded from presenting a lost profits theory at trial.

10       **A.    Plaintiffs' Building Blocks Have No Admissible Foundation.**

11       The theory on which Plaintiffs' new calculation is based is the same contention
12  on which their expert Mr. Kinrich's calculation was based—*i.e.*, that "but for Apple's
13  trade secret misappropriation, Apple would have ███████████████████████
14  ████████." Dkt. 1475 at 1.  In other words, Plaintiffs' new calculation requires as its
15  foundation some explanation of what Plaintiffs believe *would* have occurred in the but-
16  for world.  While this foundational testimony is not specified in their proffer,
17  Plaintiffs' memorandum of contentions of fact and law makes clear that Plaintiffs
18  intend to have Masimo's CEO Joe Kiani and other Masimo employees offer an opinion
19  about what *would* have happened in a hypothetical world where ██████████████
20  ████████████████████████ and what Masimo *would* have done in that situation.
21  *See, e.g.*, Dkt. 1430 at 38-40 (Mr. Kiani "will testify that, █████████████████████
22  ████████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████████
24  ████████████████████████").

25       This Court previously determined that this exact type of testimony about a
26  hypothetical scenario necessarily exceeds the percipient knowledge of Plaintiffs'

28  APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST
PROFITS CALCULATION
                                                   3         CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

employees and, to be used, must be supported by a full FRCP 26(a)(2)(B) report. Because Plaintiffs have provided no such report in this case, testimony about this hypothetical cannot be used to support a damages theory. *See* Dkt. 1283 at 6-7 (striking Kinrich's lost profits opinion because it is based on "excluded opinions regarding what Masimo ***would have*** done ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). Simply put, absent introduction of the type of opinion testimony this Court has already excluded, there is no foundation on which Plaintiffs' new building blocks can be laid. Plaintiffs' attempt to repackage the same inadmissible testimony with new witnesses should be rejected.

### B. The Building Blocks That Plaintiffs Identify Were Untimely Identified And Are Inadmissible.

Plaintiffs' proffer relies on a handful of bulleted summaries of evidence (labeled "disclosures"), none of which provided notice to Apple that Plaintiffs would seek to rely on the specific building blocks they now use to construct a ▓▓▓▓▓▓▓ lost profits calculation. In fact, for each building block identified, Plaintiffs cite to disclosures that pointed *away* from what they are now using to calculate their purported lost profits.

#### 1. Apple Watch Units

Plaintiffs indicate their new lost profits calculation uses the total units sold of Apple Series 4-7 and SE Watches. Dkt. 1479-1 at 1. Plaintiffs should not be permitted to introduce or rely on this data as an input to a lost profits calculation for several reasons.

***First***, nowhere before March 15, 2023 did Plaintiffs identify this set of Apple Watch sales as the relevant input for their lost profits calculation. Plaintiffs cite their July 20, 2022 response to Apple's Interrogatory No. 17 (regarding damages

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
4    CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

contentions) as a source of their disclosure, but that response merely states that "documents identified in Apple's response to Interrogatory No. 5 contain factual information regarding sales of Accused Products that are relevant to determining Masimo's lost profits."  Dkt. 1475-2, Ex. B [Pls. Resps. to Rog 17] at 37.  Apple produced (and identified in Interrogatory No. 5) sales data for **all** Apple Watches sold to that point—starting with the original Apple Watch Series 0.  Nowhere in Plaintiffs' response to Interrogatory No. 17—or anywhere else during fact discovery—did Plaintiffs identify which models of Apple Watch or how many units from each model Plaintiffs would include in a lost profits calculation.

*Second*, Plaintiffs cite to Mr. Kinrich's October 2022 report as "set[ting] forth Apple's sales by model and quarter," Dkt. 1479-1 at 1, but ignore that Mr. Kinrich opined in that report that only a *subset* of the total units of Apple Watch Series 4 and later should properly be included in a lost profits calculation based on Masimo's "sensor module" theory.  The reason for Mr. Kinrich's narrowing is that, based on basic economic theory, Apple would have had to raise prices and therefore sell fewer Watches if it had ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Dkt. 1475-10 [Ex. J (Kinrich Rpt.)] at 497-98 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓").  Plaintiffs' use of the total units sold of Apple Series 4-7 and SE Watches flies in the face of their own expert.

This is not a minor discrepancy.  The difference between the number of Apple Watch units in Mr. Kinrich's stricken calculation and Plaintiffs' new calculation is ▓▓▓▓▓▓▓▓▓▓▓.  *Compare id.* at 498 (Mr. Kinrich considering "▓▓▓▓▓▓▓▓▓▓▓▓") *with* Dkt. 1475 at 8 (Plaintiffs considering "▓▓▓▓▓▓▓▓▓▓▓▓").  It would be both contrary to the purpose of FRCP 26 disclosures and fundamentally unfair to allow Plaintiffs to expand their claim in such an extraordinary

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
5
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

fashion at the eleventh hour—particularly as Apple and its expert had no opportunity to respond to (and rebut) Plaintiffs' assertions during discovery.

*Finally*, Plaintiffs purport to identify witnesses through whom they could introduce evidence of Apple's overall sales data for Apple Watch Series 4 and later, but Plaintiffs fail to explain who would introduce evidence as to *why* those sales should be included in their lost profits calculation. That is because, under Plaintiffs' theory, the timing of which Apple Watch models would be implicated depends on hypothetical opinion as to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. This Court "expressly excluded" the lay witness opinion that "Apple could have incorporated Masimo's sensor into its watches ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" when offered through Masimo COO Bilal Muhsin "because such opinions went beyond Muhsin's percipient knowledge." Dkt. 1283 at 7 (citing Dkt. 1031 at 6, 9). Plaintiffs have identified no admissible source of evidence for this necessary piece of their calculation and for good reason—there is none. As this Court has recognized, such opinion would have needed to be disclosed and supported by a full Rule 26(a)(2)(B) report. *See* Dkt. 1031 at 6-7.

    2. *Plaintiffs' Hypothetical Module Price*

Plaintiffs seek to rely on testimony from Mr. Kiani and Mr. Muhsin regarding a purported offer to sell sensor modules to ▉▉▉▉▉▉ to support Plaintiffs' assertion that "Masimo prices its sensor modules for at least $100 per module." Dkt. 1479-1 at 2. This building block too should be excluded because it was not properly disclosed, is inadmissible hearsay, and utterly speculative.

*First*, Plaintiffs never previously disclosed the alleged offer to ▉▉▉▉▉▉ as relevant to lost profits, let alone as *the* datapoint that would be used to support their lost profits calculation. Rather, Plaintiffs disclosed the purported offer to ▉▉▉▉▉▉ in

their damages contentions *only* as related to *reasonable royalty* damages.  Dkt. 1475-2 at 27, 33 (identifying as "facts that may be used to determine a reasonable royalty in this matter," that "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████," and that "████████████████████████████████████████████████████████████████████████████████████████").  While Plaintiffs argue that their interrogatory response elsewhere cited relevant passages from Mr. Kiani and Mr. Muhsin's depositions, these citations made no reference to the specific testimony Plaintiffs now intend to rely upon—nor did Plaintiffs claim these passages had any relevance to lost profits.  *See id.* at 43 (stating only that "██████████████████████████████████████████████████████████████████████████████████████████████████████"); *see also* Dkt. 1071 at 5 (finding a FRCP 26 violation where Plaintiffs claimed that their "broad and vague statement that Plaintiffs 'may rely' on [a] broad category of PLAs" sufficiently disclosed a particular set of licenses as relevant to reasonable royalties).

    ***Second***, Plaintiffs again cite to Mr. Kinrich's now-stricken opinion as a source of disclosure of "Masimo's $100/$100 pricing" as relevant to lost profits.  But here too Mr. Kinrich's disclosure contradicts Plaintiffs' new position.  Mr. Kinrich specifically *rejected* the $100 per unit price purportedly offered to ███████ as a reliable input to the calculation of lost profits in this case.  Dkt. 1475-10 at 496-97 ("████████████████████████████████████████████████████████████████████████████████████████").  Plaintiffs should not now be permitted to rely on an input that prior disclosures disavowed for that purpose.  Such reliance is directly counter to the intent of FRCP 26 disclosures and highly prejudicial to Apple, including

because Apple would have no way to elicit Mr. Kinrich's disagreement with the new calculation without opening the door to his stricken opinions.

   **Third**, Plaintiffs' claim that they identified this purported offer to ▮▮▮▮ as a potential input to a lost profits calculation in opposition to Apple's summary judgment motion. But because Plaintiffs' opposition brief was filed months after the close of discovery, it cannot plausibly be considered a timely disclosure. *tagTrends, Inc. v. Nordstrom, Inc.*, 2014 WL 12561604, at *5 (C.D. Cal. Sept. 30, 2014) (Selna, J.) (finding "[p]laintiffs' failure to disclose their damages computation prior to the filing of their [summary judgment opposition] was clearly unjustified").

   **Fourth**, Plaintiffs' reliance on an alleged offer to ▮▮▮▮—an offer that ▮▮▮▮ did not accept or apparently even show any serious interest in pursuing—as a basis for what Apple would have agreed to pay Plaintiffs is utterly speculative and unsupported. This is especially true because Plaintiffs' proffer does not identify a single document corroborating this alleged offer. Self-serving testimony regarding a unilateral offer never accepted by ▮▮▮▮ or anyone else does not constitute a reliable input to a damages calculation—as Plaintiffs' expert himself recognized.

   **Finally**, Plaintiffs' proffer confirms that the testimony of Mr. Kiani and Mr. Muhsin that Plaintiffs seek to introduce is inadmissible hearsay. Plaintiffs state that "Kiani will testify that ***he offered*** to sell sensor modules ▮▮▮▮ ***for $200*** each" and that "***he directed*** Muhsin to refine ▮▮▮▮ to a $100 hardware sensor module price and a $100 parameter fee," and that "Muhsin will testify that ***he conveyed*** the $100/$100 offer ▮▮▮▮." Dkt. 1479-1 at 3. These out-of-court statements made by executives of the Plaintiffs are being offered by the Plaintiffs for their truth—*i.e.*, as evidence that "Masimo prices its sensor modules for at least $100 per module." Dkt. 1479-1 at 2-3. They are accordingly inadmissible hearsay. *See* Fed. R. Civ. P. 801(c); Fed. R. Evid. 802; *Barela v. Cnty. of Orange*, 2022 WL 17037430,

at *7 (C.D. Cal. Aug. 4, 2022) (Selna, J.) ("Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.").

Plaintiffs have identified no non-hearsay purpose or applicable exception that would render these statements admissible. There is none. In their response to Apple's memorandum regarding lost profits, Plaintiffs argued that Mr. Kiani's and Mr. Muhsin's testimony are "verbal acts." Dkt. 1475 at 11-12. But a "verbal act" is a statement "that itself affects the legal rights of the parties" and whose "significance … lies solely in the fact that it was made" such that "no issue is raised as to the truth of anything asserted." Fed. R. Civ. P 801(c) advisory committee notes. For example, *U.S. v. Pang*, on which Plaintiffs rely, involved executed checks—legally operative documents. 362 F.3d 1187, 1192 (9th Cir. 2004). Here, there is no claim that the statements themselves served any legal effect; it is undisputed that there is nothing even close to a contract between Plaintiffs and ▇▇▇. *See* Dkt. 1475 at 11-12. Instead, Plaintiffs are trying to rely on the out-of-court statements for the truth of the assertion that they price their module at $100. The purported conversations with ▇▇▇ are accordingly inadmissible, and without them, Plaintiffs have no lost profits calculation.

### 3. *Masimo's Profit Margin*

Plaintiffs identify as their final building block testimony regarding Masimo's W1 watch and Masimo's company-wide gross profits. These too should be excluded for purposes of showing lost profits.

***First***, the testimony cited in Plaintiffs' proffer relates generally to Masimo's W1 watch, not the sensor module itself or ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 1475-6 (Ex. F) at 128 (responding to a question about "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"). Plaintiffs never identified Masimo's margins with respect to

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
9
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

the W1 as relevant to lost profits, nor have they produced any evidence of those profit margins. *See* Dkt. 1475-2 at 43 (citing to the same broad swaths of testimony from Mr. Muhsin discussed, *supra* at 7).

**Second**, Plaintiffs do not cite to a single disclosure made during fact discovery that identifies Masimo's 10-Ks or the company-wide profits margins they now seek to rely on as relevant to a lost profits calculation. *See* Dkt. 1456 at 11.  Again, there is none.  Plaintiffs did not cite a single Masimo 10-K in their damages contentions—let alone contend that they were relevant to lost profits.  Moreover, Plaintiffs' proffer now expands the scope of evidence they seek to rely on even from their March 15 disclosure, by identifying different years of 10-Ks that they contend they will now use to support their claimed gross margins.  *Compare* 1456-1 at 3 (March 15 disclosure stating that "███████████████████████████████████████████████████████████" (citing Masimo's 2021 10-K)) *with* Dkt. 1479-1 at 3 ("Masimo produced during fact discovery numerous 10-K filings that disclose profit margins around 65%, including: Fiscal Year 2021 … Fiscal Year 2019 … [and] Fiscal Year 2017.").  This confirms the insufficiency of even Plaintiffs' post-discovery "disclosures"—that even now remain a moving target.

**Third**, Plaintiffs cite Mr. Kinrich's now-stricken opinion as a source of disclosure.  Plaintiffs ignore, however, that Mr. Kinrich did ***not*** rely on Masimo's 10-Ks but instead on its income statements from 2010 through 2020.  In fact, Mr. Kinrich's only citation to Masimo's 10-K in his report is when he discussed the company's background.  *See* Dkt. 1475-10 at 444-446.  In other words, Plaintiffs now wish to rely on an input for their profit margin that even their own expert apparently did not believe sufficiently reliable or relevant for this purpose.

**Finally**, while Plaintiffs could presumably rely on Mr. Kiani and Mr. Muhsin to introduce Masimo's 10-K filings, Plaintiffs cannot rely on them to opine that

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *would have* maintained those same margins.
2  Not only have Plaintiffs identified no information regarding the profit margins for the
3  module—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—but opining on ▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *would have* enjoyed necessarily involves the type
5  of opinion testimony this Court has already excluded. *See supra* pp. 3-4, 6; *see also*
6  Dkt. 1031 at 6 (finding Mr. Muhsin's disclosure "veer[ed] from his percipient
7  knowledge … when he opine[d] on the hypothetical scenario of what Masimo *would*
8  *have* done ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓").

### 4. Masimo's Manufacturing Costs

Plaintiffs' proffer attempts *for the third time* to relitigate the origins and admissibility of the 2021 Cost Report that this Court has twice excluded. *See, e.g.*, Dkt. 1283 at 9 (finding "the 2021 document … was prepared in anticipation of litigation" and "not permit[ting] Plaintiffs to end run [the Court's] order by attempting to utilize facts and opinions the Court previously excluded, just in different packaging."). As this Court is aware, Plaintiffs' claim that the 2021 Report was prepared in the ordinary course of business is contradicted by Plaintiffs' prior representations. *See* Dkt. 1171-2 at 7-8 (Priddell disclosure stating "▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"); Dkt. 1120-3 (Plaintiffs' counsel representing that "[t]he documents produced [on August 18] were an update to an analysis that Masimo previously conducted and produced. *This is not an analysis that Masimo performs in the ordinary course of business*, nor are the documents produced kept in the ordinary course[.]"). The Court should reject Plaintiffs' latest attempt to rely on a document that was not properly disclosed.

In addition, Plaintiffs ignore that their only lost profits disclosure using this document—Mr. Kinrich's stricken lost profits calculation—does *not* use the

---

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
11                                    CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

1  information as Plaintiffs now seek to do so.  Plaintiffs admit that Mr. Kinrich
2  recognized that "▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒
3  ▒▒▒"—*i.e.*, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒—as compared
4  to the 2021 cost data Plaintiffs seek to use as an input to their calculation.  Dkt. 1475 at
5  14.  Plaintiffs should not be permitted to proceed with an undisclosed, inflated
6  calculation that again runs counter to the disclosures that were provided.

## CONCLUSION

8      For the reasons above, Plaintiffs should be precluded from seeking lost profits at
9  trial.

Dated: March 28, 2023

Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: /s/ *Mark D. Selwyn*
      Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

APPLE'S RESPONSE TO PLAINTIFFS' DISCLOSURE OF ALLEGED BUILDING BLOCKS FOR THEIR LOST PROFITS CALCULATION
13     CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 3612 words, which [choose one]:

  X  complies with the word limit of L.R. 11-6.1

  __  complies with the word limit set by court order dated [date].

Dated: March 28, 2023                    Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: /s/ *Mark D. Selwyn*
       Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*