1  MARK D. SELWYN, SBN 244180
   mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
   thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
   HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
  Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
   joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
   HALE AND DORR LLP
8  One Front Street, Suite 3500
  San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
   amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
   HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
  Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16  **UNITED STATES DISTRICT COURT**

17  **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18  MASIMO CORPORATION,
  a Delaware corporation; and
19  CERCACOR LABORATORIES, INC.,
  a Delaware corporation,

20         Plaintiffs,

21

22      v.

23  APPLE INC.,
  a California corporation,

24         Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**APPLE'S TRIAL BRIEF**

Trial: Apr. 4, 2023

25

26

27

28

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# TABLE OF CONTENTS

A. Apple's Summary of The Case ................................................................ 1

B. Summary Of Notable And Already-Briefed Disputes Between The Parties ..................................................................................................... 3

  1. Plaintiffs' Failure To Adequately Disclose Their Lost Profits Calculation ...................................................................................... 3

  2. Plaintiffs' Employment Confidentiality Agreement's Validity Under California Law ................................................................... 4

  3. Notable Disputes Regarding The Proposed Jury Instructions and Verdict Form ....................................................................... 6

C. Notable Disputes Relating To Trial Procedures To Minimize Juror Confusion ................................................................................................ 10

Wilmer Cutler
Pickering Hale
and Dorr LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. TGS Mgmt Co.*,
  57 Cal. App. 5th 303 (2020) ..............................................................................5, 6

*DVD Copy Control Assn., Inc. v. Bunner*,
  116 Cal. App. 4th 241 (2004) ...................................................................................7

*GSI Techs., Inc. v. United Memories, Inc.*,
  2016 WL 3035698 (N.D. Cal. May 26, 2016).........................................................9

*Infospan, Inc. v. Emirates NBD Bank PJSC*,
  No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016)....................................................6, 7

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  2011 WL 3420571 (C.D. Cal. Aug. 4, 2011) ..........................................................9

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016) ..................................................................................7

*Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*,
  28 F.3d 1042 (10th Cir. 1994) ..................................................................................7

*The Retirement Group v. Galante*,
  176 Cal. App. 4th 1226 (2009) .................................................................................5

*U.S. Legal Support, Inc. v. Hofioni*,
  2013 WL 6844756 (E.D. Cal. Dec. 20, 2013).........................................................8

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-939 (N.D. Cal. Jan. 18, 2018)..................................................................9

**Statutes**

California Business and Professions Code § 16600 ......................................3, 4, 5, 6

**Other Authorities**

Judicial Council of California Civil Jury Instructions..........................................6, 8

Wilmer Cutler
Pickering Hale
and Dorr LLP

Fed. R. Civ. P. 26 ..................................................................................................... 3

Wilmer Cutler
Pickering Hale
and Dorr LLP

Apple submits the following brief pursuant to Local Rule 16-10 in order to (1) provide a counter summary of the case in response to Plaintiffs' Memorandum of Contentions of Fact and Law, (2) identify the notable disputes that remain between the parties where this Court has ordered briefing, and (3) identify disputes between the parties on certain trial procedures—as to which Apple has made multiple proposals to try to minimize juror confusion, but Plaintiffs have not agreed.

### A.    Apple's Summary of The Case

Introduced in 2015, Apple Watch is an engineering marvel that is the product of years of hard work and innovation by thousands of Apple engineers and other employees.  From its industrial design to its internal workings, every aspect of Apple Watch reflects Apple's dedication to the consumer and to consumer electronics.  Apple Watch offers consumers hundreds and hundreds of features, including numerous health and wellness features.

Plaintiffs, in contrast to Apple, have historically been and remain today focused on medical devices.  For decades, Plaintiffs have marketed and sold large medical devices, engineered for use in hospitals and clinics.  Only recently have they turned any attention to a smartwatch of their own, apparently motivated by a desire to emulate Apple's success with Apple Watch.

Plaintiffs have wrongly tried to use this litigation as a maneuver to clear a path for their smartwatch.  Plaintiffs began this litigation by asserting claims of patent infringement under twelve patents, asserting that Apple infringed at least 245 claims.  But the Patent Office subsequently determined that the vast majority of these claims should never have issued in the first place because Plaintiffs tried to claim as their own what others had already done before.  In total, the Patent Office determined that all but two of those patents were unpatentable.

Left with invalid patents, Plaintiffs pivoted to trying to manufacture a case based on alleged trade secret misappropriation.  For more than a year, Plaintiffs struggled to

Wilmer Cutler
Pickering Hale
and Dorr LLP

state such a claim, eventually amending their complaint four times before the Court permitted them to proceed. And even then, the complete lack of support for Plaintiffs' claims has forced them to drop the overwhelming majority of their alleged trade secrets, including the lone trade secret that Plaintiffs previously used to justify their request for a preliminary injunction.

Apple looks forward to demonstrating at trial that not a shred of Plaintiffs' confidential information was ever used in the design, development, or marketing of Apple Watch, and that much of what Plaintiffs claim as "trade secrets" are ideas long known and used by multiple companies. Plaintiffs tellingly have not come forward with even a single pre-litigation document that records—in full—any of their alleged trade secrets. That is because they have been contrived for this litigation.

Plaintiffs are also relying on certain invalid and anticompetitive provisions of an employee confidentiality agreement to launch meritless claims of misconduct against two of Plaintiffs' former employees—Dr. Michael O'Reilly and Dr. Marcelo Lamego—who did nothing more than choose to work at Apple. As this Court recently observed, the law protects the ability of employees to move freely from company to company—"employees are not only permitted but encouraged" to do so. Dkt. 1439 at 3.

Neither Dr. O'Reilly nor Dr. Lamego conveyed any trade secrets to Apple. Indeed, Apple Watch, including its health sensing features, was well into development when both Dr. O'Reilly and Dr. Lamego joined Apple in 2013 and 2014, respectively. And Dr. Lamego's tenure at Apple was limited to a mere six months. Neither Dr. Lamego nor Dr. O'Reilly did anything wrong at Apple, and Plaintiffs' attempts to besmirch their reputations are both unfounded and unfortunate.

Plaintiffs' case ultimately rests on a series of out-of-context quotes and misdirection. Apple took nothing from Plaintiffs. The responsibility for Plaintiffs' failures to successfully commercialize a smartwatch is theirs alone.

### B.      Summary Of Notable And Already-Briefed Disputes Between The Parties

From Apple's perspective, there are three already-briefed issues related to the trial that need to be resolved: (1) whether Plaintiffs are barred from presenting a lost profits case, (2) whether this Court should hold portions of Plaintiffs' Employee Confidentiality Agreement to be invalid under California Business and Professions Code § 16600, and (3) the final language of the jury instructions and verdict form.

#### 1.      *Plaintiffs' Failure To Adequately Disclose Their Lost Profits Calculation*

At the pretrial conference on March 13, 2023, Apple notified the Court that Plaintiffs had failed to disclose the calculation for their lost profits claim as required under FRCP 26(a).  Plaintiffs finally disclosed their calculation in an email sent to Apple on the evening of March 15.  Apple filed a memorandum with this Court two days later, explaining that the disclosure was improper for three reasons: (1) it was prejudicially untimely under FRCP 26(e) and 37, (2) it relied on information that was either inadmissible or had previously been excluded by this Court, and (3) the underlying theory could not be presented without an FRCP 26(a)(2)(B) expert witness. *See generally* Dkt. 1456.  This Court subsequently ordered Plaintiffs to provide a detailed breakdown of the "building blocks" of their new calculation.  As Apple has explained, however, Plaintiffs' building blocks filing does not justify their new lost profits calculation, as (1) even Plaintiffs admit that their multi-billion dollar calculation was not disclosed until March 15, 2023, (2) the calculation relies on layperson testimony about hypothetical events even though this Court has previously held that such testimony may only be provided by a FRCP 26(a)(2)(B) expert, and (3) the building blocks identified by Plaintiffs rely on evidence that is either inadmissible hearsay or has already been stricken by this Court.  *See* Dkt. 1479-1.

2. *Plaintiffs' Employment Confidentiality Agreement's Validity Under California Law*

Apple's motion *in limine* No. 4 asked this Court to exclude certain provisions of Plaintiffs' Employee Confidentiality Agreement because they are invalid under California Business and Professions Code § 16600. *See* Dkt. 1318 (Apple's opening brief); Dkt. 1410 (Apple's reply brief). While this Court denied Apple's motion, it granted Apple permission to file a five-page offer of proof regarding the Agreement's validity and its connection to Apple's unclean hand defense. *See* Dkt. 1439 at 8 n.3.

Apple's offer of proof makes three basic points. *First*, this Court can and should resolve validity before trial, as California case law provides that a facial challenge to the validity of an Agreement is a question of law that can be answered by a court without any factual development. Dkt. 1476 at 1. *Second*, the Agreement's definition of "confidential information" (i.e., "any information in any form that Masimo … considers confidential") is so broad and subjective as to operate as a de facto noncompete provision that bars Plaintiffs' employees "'in perpetuity from doing any work in the [relevant] field." Dkt. 1476 at 2-3 (quoting *Brown v. TGS Mgmt Co.*, 57 Cal. App. 5th 303, 318-319 (2020)). For example, a provision in one iteration of the Agreement permanently bars former employees from "disclos[ing] or mak[ing] use of any Confidential Information for any purpose." *Id*. *Third*, the Agreement's validity is at least directly relevant to Apple's unclean hands defense (which, though an equitable claim, can (and in this case, should) be resolved by a jury) and whether Plaintiffs employed reasonable efforts to protect their purported trade secrets. *Id.* at 4-5.

Notably, Plaintiffs just last night proposed a jury instruction that would allow the jury to use the Agreement for yet another purpose—establishing improper means. Plaintiffs' proposed instruction provides in relevant part: "A duty to maintain secrecy, or limit use, of trade secret information may arise from a contract or by law. One example from contract is a contract prohibiting use of confidential information."

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs initially failed to explain how this instruction can be squared with Plaintiffs' lead counsel's confirmation at the pre-trial conference that Plaintiffs will *not* rely on a breach of the Agreement to establish improper means.  *See* Ex. 3; *compare* Mar. 13, 2023 Tr. 21 (Apple's counsel noting concern that "Plaintiffs may suggest that … breach [of the Agreement] constitutes an acquisition of the trade secrets by improper means") *with id.* 24 (Plaintiffs' counsel stating that Agreement's confidentiality provisions "are part of Masimo's attempts to implement reasonable precautions to protect the confidential information, and they are of course relevant for that purpose *and that purpose alone*, which is why they will be offered" (emphasis added)).  Nor can this instruction be squared with this Court's statement that its ruling on motion *in limine* No. 4 "does not extend to, e.g., allowing the confidentiality provisions to be used to prove acquisition by improper means by O'Reilly or Lamego."  *See* Dkt. 1439 at 7 n.2.

At noon today, Plaintiffs took the incredible position that their lead counsel's unequivocal statement disclaiming use of the Agreement to establish improper means was "inadvertent."  Plaintiffs also stated for the first time that their "forthcoming response [to Apple's offer of proof] will explain that Apple's theory of unclean hands is not a defense to a claim for trade secret misappropriation."  Plaintiffs offered no explanation for this new argument other than quoting an unrelated passage from *Brown v. TGS Management* that, in context, merely makes clear that there is no "trade secrets" exception to Section 16600's rule barring contractual restraints on trade.  57 Cal. App. 5th 303, 317 (2020) (rejecting argument that Section 16600 should not apply because it "will strip TGS of the ability to protect its … trade secrets" because *inter alia* "TGS can prevent employees from disclosing trade secrets … by pursuing injunctive relief and tort remedies under the Uniform Trade Secrets Act" (citing *The Retirement Group v. Galante*, 176 Cal. App. 4th 1226, 1238 (2009)); *see also Galante*, 176 Cal. App. 4th at 1238 (noting there is no "judicially-created [trade secret] 'exception' to section

Wilmer Cutler
Pickering Hale
and Dorr LLP

16600's ban on contractual nonsolicitation clauses").  The *Brown* court addressed the unclean hands doctrine only in discussing whether it could provide an "alternative ground" for affirming the arbitrator's decision not to invalidate the underlying contract.  57 Cal. App. 5th at 319-320.  The court rejected the unclean hands doctrine's applicability solely because it does not apply where it "would result in permitting an act declared by statute to be void or against public policy"—i.e., there, by letting stand a contract that was invalid under Section 16600.  *Id.* (applying unclean hands "is inconsistent with the protection of Brown's rights under Section 16600").  Here, in contrast, Apple's unclean hands argument is fully consistent with California's policy of discouraging restraints on trade.

> 3.   *Notable Disputes Regarding The Proposed Jury Instructions and Verdict Form*

Today, the parties jointly filed their proposed jury instructions and verdict forms.  While the parties have attempted to reach compromises where possible, there remain significant issues for this Court to resolve.  Notable disputes include:

- Whether Plaintiffs must prove that each alleged trade secret both is not generally known *and* has independent economic value from not being generally known.  Apple has requested that this Court deliver slightly modified versions of CACI 4402 and 4403, which provide that the jury must *inter alia* find that each of Plaintiffs' purported trade secrets were secret (in the sense that the alleged trade secret was not generally known to the public or to people who could obtain value from it).  In response, Plaintiffs have taken the position that "[t]here is no secrecy requirement in trade secret law" and have argued that the jury need *only* conclude that the purported secrets have independent economic value.  As Apple has explained, this approach is inconsistent with CACI, this Court's past practice in trade secret cases, *see, e.g.*, Instruction No. 29, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016)

Wilmer Cutler
Pickering Hale
and Dorr LLP

(Selna, J.), and California case law, *see DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) ("In order to qualify as a trade secret, the information 'must be secret[.]'")

- Whether Plaintiffs are entitled to an instruction on a combination trade secret theory and, if so, the scope of that doctrine. Plaintiffs' proposed instruction on the "independent economic value" element provide an incomplete (and slanted) recitation of the combination trade secrets doctrine—i.e., the rule that permits a plaintiff to advance a trade secret claim even if some or all components of the alleged trade secret are generally known so long as certain special requirements are met. *See* Dkt. 1284 at 5-6; *see also Rivendell Forest Prods. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1046 (10th Cir. 1994) (viable trade secret claim where "the elements are in the public domain, but there has been accomplished an effective, successful, and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage"). Apple objects to this language because Plaintiffs have not previously attempted to put on a combination trade secret case (and, indeed, have refused to acknowledge that the doctrine even exists, *see* Dkt. 1208-1 at 11-12). But to the extent that this Court decides to instruct the jury on the issue, Apple respectfully submits the jury should be informed that Plaintiffs need to establish at least that (1) the particular combination is a novel and/or "unique combination [that] affords a competitive advantage," *e.g.*, *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016), and (2) they owned or possessed the entire purported secret as a combination, *e.g.*, Instruction No. 28, *Infospan*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016).

- Whether Plaintiffs are entitled to an instruction on an overly expansive version of vicarious liability: Plaintiffs seek an instruction that would allow them to establish misappropriation based solely on *respondeat superior*, without meeting

Wilmer Cutler
Pickering Hale
and Dorr LLP

the statutory requirement of establishing that Apple knew or should have known of the purported improper use or disclosure of trade secrets by one of its employees.  This approach would improperly render the CUTSA's "knows or had reason to know" requirement a nullity.  It would also clash with California's longstanding rejection of the inevitable disclosure doctrine—i.e., the notion that a plaintiff can prove a misappropriation claim simply by establishing that the defendant employed its former employee in a position that would "inevitably lead him to rely on the plaintiff's trade secrets." *U.S. Legal Support, Inc. v. Hofioni,* 2013 WL 6844756, at *11 n.8 (E.D. Cal. Dec. 20, 2013).  Apple's counterproposal states the proper rule:  To establish Apple's knowledge, Plaintiffs must prove at least that *another* Apple employee beyond, for example, Marcelo Lamego actually knew the required information.  That second employee's knowledge can permissibly be imputed to the company.

- Whether Plaintiffs are entitled to an instruction on misappropriation by acquisition despite not having properly preserved a theory on that issue:  While Plaintiffs have asked this Court to instruct the jury on a misappropriation by acquisition theory, the Directions for Use throughout CACI's Trade Secrets chapter are clear:  A "misappropriation by acquisition" "instruction should not be given unless there is evidence that the acquisition resulted in damages, other than damages from related disclosure or use."  Directions for Use, CACI 4405; *accord* Directions for Use, CACI 4400 (Misappropriation of Trade Secrets—Introduction); Directions for Use, CACI 4401 (Misappropriation of Trade Secrets—Essential Factual Elements).  To date, just a week before trial, Plaintiffs have been unable to identify any place in the record where they preserved a theory that Plaintiffs suffered harm from acquisition alone.  That Plaintiffs have raised "theories [that] reference acquisition only insofar as it forms a logical prerequisite to use or disclosure" is insufficient to justify an

acquisition instruction. *See* Order Re Jury Instruction on Damages Based Only On Acquisition, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 18, 2018), Dkt. 2495 at 5.

- Whether the verdict form should ask the jury to resolve each element of trade secret liability for each of Plaintiffs' alleged trade secrets, or instead take the form of "black box" questions: Plaintiffs have objected to Apple's proposed verdict form primarily because it asks the jury to indicate its finding for each element of a trade secret claim for all twelve of Plaintiffs' purported trade secrets; Plaintiffs' approach includes "black box" questions that only require bottom-line conclusions by the jury. Apple's contrasting approach provides a clear way for the jury to register its views, creating transparency in the jury's decision-making and facilitating review by this Court in post-trial motion practice and by the court of appeals in any appellate proceedings. Indeed, courts in the Ninth Circuit routinely ask jurors to answer written questions on the verdict form in trade secret cases. *See, e.g.*, *GSI Techs., Inc. v. United Memories, Inc.*, 2016 WL 3035698, at *2 & n.25 (N.D. Cal. May 26, 2016) (verdict form "ask[ed] the jury to answer yes or no, if every element of misappropriation of trade secrets was proven" and "asked the jury to determine [plaintiffs'] damages for each claim"); *Mattel, Inc. v. MGA Entertainment, Inc.*, 2011 WL 3420571, at *2 (C.D. Cal. Aug. 4, 2011) (noting that the verdict form "asked the jury to resolve," for each of the alleged 114 trade secrets, (1) ownership, (2) "whether the claimed trade secret qualified as a trade secret," (3) "whether Mattel misappropriated the claimed trade secret," (4) "whether Mattel used 'improper means' … to acquire the claimed trade secret," and (5) "the damages, if any, to which MGA was entitled").

### C.    Notable Disputes Relating To Trial Procedures To Minimize Juror Confusion

As Apple's counsel previewed during the pre-trial conference, Apple has been considering proposals for trial procedures that would help the jury navigate the complexity of the issues at trial without favoring either side.  Apple has made four proposals to Plaintiffs, but Plaintiffs have not agreed.  *See* Ex. 4 at 2.

*First*, Apple has suggested that juror notebooks include two one-page flow charts (one for trade secret issues, one for patent issues) that lay out the basic elements of Plaintiffs' claims in a form that is easy for the jury to digest.  The charts would give the jury a reference to orient themselves during the trial, to place the evidence into the context of the decisions that the jury will need to make.  The charts are written in neutral language that does not favor either party.  Those drafts are attached hereto as Exhibit 1.

*Second*, Apple has suggested that the party introducing a witness be permitted to give a "transition statement" briefly introducing the witness and his/her proffered relevance to the case.  For example, the attorney might say: "Next, [plaintiffs / defendant] call [name], who is [position at company].  [Plaintiffs / defendant] believes that [name] has information relevant to alleged trade secret [insert category and number(s)]."  Apple has proposed to exchange specific transition statements with Plaintiffs as part of the nightly exchange/objection process, so that any objections may be resolved or presented to the Court before the transition statement is read to the jury.

*Third*, Apple has suggested that during the examination of the witnesses, the parties should be able to flag the issue to which upcoming questions will relate.  For example, "Ladies and gentlemen, we will now get into some questions that [plaintiffs / defendant] believe relate to alleged trade secret [insert category and number(s)]."  This kind of signposting is particularly important for fact witnesses from Apple, as no one at Apple—including Apple's in-house attorneys—has been permitted to see Plaintiffs'

Wilmer Cutler
Pickering Hale
and Dorr LLP

list of purported secrets.  Accordingly, with Apple fact witnesses, it will be impossible to use the common transition question in the form of "can we turn to alleged trade secret __?"  Apple's proposal would give each side the ability to signpost for the jury during examinations of Apple fact witnesses, without revealing the trade secrets to the witnesses themselves.

Each of the three proposals set out above is designed to be neutral on the merits, and simply allow for even-handed mechanisms that ***both parties could equally use*** to assist the jury in navigating the many issues in this trial.  Plaintiffs have complained that flow charts would complicate the trial (which is the opposite of their purpose) and that the transition statements and examination signposts would amount to attorney argument (despite the proposals being worded in the most neutral fashion possible).  Apple respectfully submits that Plaintiffs' objections provide no good reasons for precluding these procedures and their benefits to the jury.

*Fourth,* Apple has proposed that the parties remove—only from the ***trial exhibits for the jury***—the Bates confidentiality stamps added during this litigation, so that the jury will have versions of the exhibits that reflect the pre-litigation form of those materials.  (The only difference would be that Bates page numbers would be kept in the jury's trial exhibits, for ease of reference.)  That would prevent confusion on the part of the jury in trying to understand the implications of the confidentiality legends— which is particularly critical in this case, where the parties will be disputing whether particular information was truly confidential or rather was known to others.  In making the proposal to Plaintiffs, Apple expressly added three notes:

- This would just be for the trial exhibits, and would not affect the confidentiality status of the production set, nor affect the parties' respective obligations under the Protective Order.
- Even for the trial exhibits, both sides would reserve all rights to seek sealing of the courtroom and/or sealing of the documents themselves.

- The removal of the Bates stamps would <u>not</u> be an admission that these are public documents.

*See* Ex. 2 at 1-2(Apple's email exchange with Plaintiffs' counsel).

Plaintiffs rejected the proposal, claiming it would violate the Protective Order, result in improper circulation of sensitive information, and be too difficult to implement. Ex. 2 at 1-2. Not so. As Apple's proposal explicitly stated, it would not change the status of the information under the Protective Order. Even if the Bates confidentiality legends were maintained for the trial exhibits, the parties would still need to request sealing of testimony and/or documents to shield those materials from the public—and Apple's proposal explicitly would not impair the parties' ability to request sealing. Finally, as for the supposed practical challenges, removing the confidentiality legends from the trial exhibits for the jury actually would be quite simple—and Apple has offered to assist Plaintiffs in executing that process. Ex. 2 at 1.

Apple respectfully requests that the Court endorse each of the four procedures described above—i.e., flow charts for juror notebooks, transition statements, signposts during examinations, and removal of Bates confidentiality stamps from trial exhibits for jury. These procedures will help ensure that the jury is appropriately organized and disciplined in its review and analysis of the evidence—rather than confused about the issues in the case and how to decide them.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Dated:  March 28, 2023

Respectfully submitted,


JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP



By:  /s/ *Mark D. Selwyn*
          Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 3,766 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1

___ complies with the word limit set by court order dated [date].

Dated:  March 28, 2023                    Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  /s/ *Mark D. Selwyn*
         Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*