Joseph R. Re (Bar No. 134479)
  joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
  steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
  sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
  irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No.
208527)
  ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
  brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
  stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
  kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiffs Masimo Corp. and
  Cercacor Laboratories, Inc.*

MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN
  294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000
Fax: 650.858.6100

*Attorneys for Defendant Apple Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Trial:            April 4, 2023<br><br>Hon. James V. Selna |

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

Brian C. Horne (Bar No. 205621)
  brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
  mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

Adam B. Powell (Bar. No. 272725)
  adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
  Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000
Facsimile: (858) 707-4001

*Attorneys for Plaintiffs Masimo Corp. and*
*Cercacor Laboratories, Inc.*

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 1**
Duty of the Jury ........................................................................................... 1
Apple's Position: Proposed Instruction No. 1 .......................................... 2
Masimo's Objections to Apple's Proposed Initial Instruction No. 1 .................. 3
**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 2A**
Claims and Defenses .................................................................................... 5
Masimo's Argument: Proposed Initial Instruction No. 2A ................................ 7
**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 2B**
Claims and Defenses .................................................................................... 8
Apple's Position: Proposed Instruction No. 2B ..................................... 10
**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 3A**
Court Procedures Are Not Evidence ...................................................... 11
Masimo's Argument: Proposed Initial Instruction No. 3A .............................. 12
**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 3B**
Court Procedures Are Not Evidence ...................................................... 14
Apple's Position: Proposed Instruction No. 3B ..................................... 16
**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A**
Taking Notes ............................................................................................ 17
Masimo's Argument: Proposed Initial Instruction No. 4A .............................. 18
**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B**
Taking Notes ............................................................................................ 19
Apple's Position: Proposed Instruction No. 4B ..................................... 21
**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 5A**
Trade Secret and Patent Basics ............................................................. 22
Masimo's Argument: Proposed Initial Instruction No. 5A .............................. 24
**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 5B**
Overview of Patent and Trade Secret Law ........................................... 26
Apple's Position: Proposed Instruction No. 5B ..................................... 28
**MASIMO'S PROPOSED INSTRUCTION NO. 1A**
Duty of the Jury ....................................................................................... 31
Masimo's Argument: Proposed Instruction No. 1A ....................................... 32
**Apple's Proposed Instruction No. 1B**
Duty of the Jury ....................................................................................... 34
Apple's Position: Proposed Instruction No. 1B ..................................... 35

**MASIMO'S PROPOSED INSTRUCTION NO. 2A**
   Claims and Defenses .................................................................. 36
   Masimo's Argument: Proposed Instruction No. 2A........................ 37
**APPLE'S PROPOSED INSTRUCTION NO. 2B**
   Claims and Defenses .................................................................. 38
   Apple's Position: Proposed Instruction No. 2B ........................... 40
**JOINTLY PROPOSED INSTRUCTION NO. 3**
   Burden of Proof ......................................................................... 41
**JOINTLY PROPOSED INSTRUCTION NO. 4**
   What Is Evidence? ...................................................................... 42
**JOINTLY PROPOSED INSTRUCTION NO. 5**
   What Is Not Evidence? ................................................................ 43
**MASIMO'S PROPOSED INSTRUCTION NO. 6A**
   Court Procedures Are Not Evidence ............................................ 44
   Masimo's Argument: Proposed Instruction No. 6A........................ 45
**APPLE'S PROPOSED INSTRUCTION NO. 6B**
   Court Procedures Are Not Evidence ............................................ 47
   Apple's Position: Proposed Instruction No. 6B ........................... 48
**JOINTLY PROPOSED INSTRUCTION NO. 7**
   Taking Notes............................................................................... 49
**JOINTLY PROPOSED INSTRUCTION NO. 8**
   Ruling on Objections ................................................................... 50
**JOINTLY PROPOSED INSTRUCTION NO. 9**
   Depositions ................................................................................. 51
**MASIMO'S PROPOSED INSTRUCTION NO. 10A**
   Charts, Summaries, and Demonstratives....................................... 52
   Masimo's Argument: Proposed Instruction No. 10A....................... 53
**APPLE'S PROPOSED INSTRUCTION NO. 10B**
   Charts, Summaries, and Demonstratives Not In Evidence ............. 54
   Apple's Position: Proposed Instruction No. 10B ........................... 55
**APPLE'S PROPOSED INSTRUCTION NO. 11**
   Charts and Summaries In Evidence............................................... 56
   Apple's Position: Proposed Instruction No. 11 ............................. 57
   Masimo's Objections to Apple's Proposed Instruction No. 11........ 58
**JOINTLY PROPOSED INSTRUCTION NO. 12**
   Credibility of Witnesses ............................................................. 59

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINTLY PROPOSED INSTRUCTION NO. 13**
Expert Testimony ......................................................................... 61
**MASIMO'S PROPOSED INSTRUCTION NO. 14A**
Party Having Power to Produce Better Evidence.......................... 62
Masimo's Objections to Apple's Proposed Instruction No. 14B ....................... 63
**APPLE'S PROPOSED INSTRUCTION NO. 14B**
Party Having Power to Produce Better Evidence.......................... 67
Apple's Position: Proposed Instruction No. 14B .......................... 68
**MASIMO'S PROPOSED INSTRUCTION NO. 15A**
Misappropriation of Trade Secrets – Introduction ............................. 71
Masimo's Argument: Proposed Instruction No. 15A.......................... 72
**APPLE'S PROPOSED INSTRUCTION NO. 15B**
Misappropriation of Trade Secrets—Introduction ............................. 75
Apple's Position: Proposed Instruction No. 15B .......................... 76
**MASIMO'S PROPOSED INSTRUCTION NO. 16A**
Misappropriation of Trade Secrets – Essential Factual Elements...................... 78
Masimo's Argument: Proposed Instruction No. 16A.......................... 79
**APPLE'S PROPOSED INSTRUCTION NO. 16B**
Misappropriation of Trade Secrets—Essential Factual Elements...................... 82
Apple's Position: Proposed Instruction No. 16B .......................... 84
**MASIMO'S PROPOSED INSTRUCTION NO. 17A**
No Writing Required ...................................................................... 86
Masimo's Argument: Proposed Instruction No. 17A.......................... 87
**APPLE'S PROPOSED INSTRUCTION NO. 17B**
First Element—Possession ............................................................. 89
Apple's Position: Proposed Instruction No. 17B .......................... 91
**MASIMO'S PROPOSED INSTRUCTION NO. 18A**
"Trade Secret" Defined ................................................................. 93
Masimo's Argument: Proposed Instruction No. 18A.......................... 94
**APPLE'S PROPOSED INSTRUCTION NO. 18B**
Second Element—Trade Secret Defined............................................ 97
Apple's Position: Proposed Instruction No. 18B .......................... 98
**MASIMO'S PROPOSED INSTRUCTION NO. 19A**
"Independent Economic Value" Explained..................................... 100
Masimo's Argument: Proposed Instruction No. 19A.......................... 102
**APPLE'S PROPOSED INSTRUCTION NO. 19B**
Second Element—Independent Economic Value Requirement ..................... 107

Apple's Position: Proposed Instruction No. 19B ............................................ 108

JOINTLY PROPOSED INSTRUCTION NO. 20

"Reasonable Efforts to Maintain Secrecy" (Disputed Language).................. 112

 Masimo's Argument: Proposed Instruction No. 20 ....................................... 114

Apple's Position: Proposed Instruction No. 20 ............................................ 115

MASIMO'S PROPOSED INSTRUCTION NO. 21A

Reasonable Efforts—Nature of Secrecy ...................................................... 117

Masimo's Objections to Apple's Proposed Instruction No. 21B .................. 118

APPLE'S PROPOSED INSTRUCTION NO. 21B

Second Element—Secrecy Requirement ...................................................... 122

Apple's Position: Proposed Instruction No. 21B ......................................... 123

MASIMO'S PROPOSED INSTRUCTION NO. 22A

Trade Secrets Are Evaluated as a Whole .................................................... 126

Masimo's Argument: Proposed Instruction No. 22A.................................... 127

APPLE'S PROPOSED INSTRUCTION NO. 22B

Second Element—Combination Trade Secret............................................... 131

Apple's Position: Instruction No. 22B (Proposed in the Alternative) ........... 132

APPLE'S PROPOSED INSTRUCTION NO. 23

Certain Employment Agreement Provisions Are Void................................... 135

Apple's Position: Proposed Instruction No. 23 ............................................ 136

Masimo's Objections to Apple's Proposed Instruction No. 23..................... 137

MASIMO'S PROPOSED INSTRUCTION NO. 24A

Employer Responsibility for Acts of Employees .......................................... 138

Masimo's Argument: Proposed Instruction No. 24A.................................... 139

APPLE'S PROPOSED INSTRUCTION NO. 24B

Corporations as Parties—Fair Treatment and Knowledge............................ 142

Apple's Position: Proposed Instruction No. 24B ......................................... 144

MASIMO'S PROPOSED INSTRUCTION NO. 25

Trade Secret Misappropriation by Acquisition ............................................. 147

Masimo's Argument: Proposed Instruction No. 25 ...................................... 148

Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 25 .......... 150

MASIMO'S PROPOSED INSTRUCTION NO. 26A

Trade Secret Misappropriation by Use........................................................ 153

Masimo's Argument: Proposed Instruction No. 26A.................................... 154

APPLE'S PROPOSED INSTRUCTION NO. 26B

Third Element—Misappropriation by Use .................................................. 158

Apple's Position: Proposed Instruction No. 26B ......................................... 160

**MASIMO'S PROPOSED INSTRUCTION NO. 27**

    Trade Secret Misappropriation—Derivation ................................................. 163

    Masimo's Argument: Proposed Instruction No. 27 ..................................... 164

    Apple's Position: Objections to Plaintiffs' Proposed Instruction No. 27 ........ 167

**MASIMO'S PROPOSED INSTRUCTION NO. 28A**

    Trade Secret Misappropriation by Disclosure .............................................. 169

    Masimo's Argument: Proposed Instruction No. 28A .................................... 170

**APPLE'S PROPOSED INSTRUCTION NO. 28B**

    Third Element—Misappropriation by Disclosure .......................................... 172

    Apple's Position: Proposed Instruction No. 28B .......................................... 173

**MASIMO'S PROPOSED INSTRUCTION NO. 29A**

    Improper Means of Acquiring Trade Secret .................................................. 174

    Masimo's Argument: Proposed Instruction No. 29A .................................... 175

**APPLE'S PROPOSED INSTRUCTION NO. 29B**

    Third Element—Improper Means of Acquiring Trade Secret ....................... 178

    Apple's Position: Proposed Instruction No. 29B .......................................... 179

**MASIMO'S PROPOSED INSTRUCTION NO. 30**

    Duty to Maintain Secrecy, or Limit Use, of Trade Secret Information .......... 182

    Masimo's Argument: Proposed Instruction No. 30 ..................................... 183

    Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 30 .......... 186

**MASIMO'S PROPOSED INSTRUCTION NO. 31A**

    Corporate Officer Fiduciary Duty ................................................................. 189

    Masimo's Argument: Proposed Instruction No. 31 ..................................... 190

**APPLE'S PROPOSED INSTRUCTION NO. 31B**

    Duties of a Corporate Officer ....................................................................... 193

    Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 31A ....... 195

**MASIMO'S PROPOSED INSTRUCTION NO. 32A**

    Professional Skills, Talents, or Abilities ....................................................... 198

    Masimo's Objections to Apple's Proposed Instruction No. 32B .................... 199

**APPLE'S PROPOSED INSTRUCTION NO. 32B**

    Professional Skills, Talents, or Abilities ....................................................... 202

    Apple's Position: Proposed Instruction No. 32B .......................................... 204

**MASIMO'S PROPOSED INSTRUCTION NO. 33A**

    Causation and Harm .................................................................................... 205

    Masimo's Objections to Apple's Proposed Instruction No. 33B .................... 206

**APPLE'S PROPOSED INSTRUCTION NO. 33B**

    Fourth and Fifth Elements—Causation and Harm ........................................ 207

Apple's Position: Proposed Instruction No. 33B ............................208

**MASIMO'S PROPOSED INSTRUCTION NO. 34A**
Defense—Statute of Limitations .........................................210
Masimo's Argument: Proposed Instruction No. 34A......................211

**APPLE'S PROPOSED INSTRUCTION NO. 34B**
Defense—Statute of Limitations .........................................214
Apple's Position: Proposed Instruction No. 34B ........................215

**MASIMO'S PROPOSED INSTRUCTION NO. 35A**
Defense—Unclean Hands ...............................................217
Masimo's Objections to Apple's Proposed Instruction No. 35B.................218

**APPLE'S PROPOSED INSTRUCTION NO. 35B**
Defense—Unclean Hands ...............................................220
Apple's Position: Proposed Instruction No. 35B ........................222

**APPLE'S PROPOSED INSTRUCTION NO. 36**
Defense—Information Was Readily Ascertainable by Proper Means............224
Apple's Position: Proposed Instruction No. 36 .........................225
Masimo's Objections to Apple's Proposed Instruction No. 36......................226

**MASIMO'S PROPOSED INSTRUCTION NO. 37A**
Remedies For Misappropriation of Trade Secret ........................227
Masimo's Argument: Proposed Instruction No. 37A......................228

**APPLE'S PROPOSED INSTRUCTION NO. 37B**
Remedies for Misappropriation of Trade Secrets ........................230
Apple's Position: Proposed Instruction No. 37B ........................233

**MASIMO'S PROPOSED INSTRUCTION NO. 38**
Lost Profits .........................................................236
Masimo's Argument: Proposed Instruction No. 38 ......................237
Apple's Position: Proposed Instruction No. 38B ........................238

**MASIMO'S PROPOSED INSTRUCTION NO. 39A**
Unjust Enrichment...................................................239
Masimo's Argument: Proposed Instruction No. 39A......................240

**APPLE'S PROPOSED INSTRUCTION NO. 39B**
Unjust Enrichment...................................................242
Apple's Position: Proposed Instruction No. 39B ........................244

**MASIMO'S PROPOSED INSTRUCTION NO. 40A**
Punitive Damages for Willful and Malicious Misappropriation.....................246
Masimo's Argument: Proposed Instruction No. 40A......................247

**APPLE'S PROPOSED INSTRUCTION NO. 40B**
Punitive Damages for Willful and Malicious Misappropriation......................250
Apple's Position: Proposed Instruction No. 40B ..............................251
**MASIMO'S PROPOSED INSTRUCTION NO. 41A**
Overview of Patent Law................................................253
Masimo's Argument: Proposed Instruction No. 41A......................254
**APPLE'S PROPOSED INSTRUCTION NO. 41B**
Overview of Patent Law................................................255
Apple's Position: Proposed Instruction No. 41B ..............................257
**MASIMO'S PROPOSED INSTRUCTION NO. 42A**
Correction of Inventorship .............................................259
Masimo's Argument: Proposed Instruction No. 42A......................260
**APPLE'S PROPOSED INSTRUCTION NO. 42B**
Correction of Inventorship .............................................263
Apple's Position: Proposed Instruction No. 42B ..............................265
**JOINTLY PROPOSED INSTRUCTION NO. 43**
Patent Ownership......................................................268
**JOINTLY PROPOSED INSTRUCTION NO. 44**
Duty to Deliberate ....................................................269
**JOINTLY PROPOSED INSTRUCTION NO. 45**
Consideration of the Evidence—Conduct of the Jury......................270
**JOINTLY PROPOSED INSTRUCTION NO. 46**
Communication With Court .............................................272
**MASIMO'S PROPOSED INSTRUCTION NO. 47A**
Return of Verdict......................................................273
Masimo's Argument: Proposed Instruction No. 47A......................274
**APPLE'S PROPOSED INSTRUCTION NO. 47B**
Return of Verdict......................................................275
Apple's Position: Proposed Instruction No. 47B ..............................276

# APPLE'S PROPOSED INITIAL INSTRUCTION NO. 1[1]

## Duty of the Jury

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with the law or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  Nor may you consider the overall wealth or size of any party, because that is not relevant to any of the issues you must decide.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

---

[1] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.3; Judge Selna's Exemplar Initial Jury Instructions No. 1; CACI 117 (adapted).

**Apple's Position: Proposed Instruction No. 1**

Apple respectfully requests that the Court include in its first initial instruction on the jury's duty of impartiality an adaptation of the CACI 117 model instruction admonishing the jurors not to consider the wealth or size of any party. *See* Proposed Initial Instruction No. 1, lines 12-13. Apple objects to Plaintiffs' counter-proposal because it does not include this important language.

As Plaintiffs argued in opposition to Apple's motion *in limine* No. 2, "there is no practical way to prevent the jury from knowing that Apple is a huge company with significant financial resources" with a "market capitalization" that makes it "the biggest company in the world." Dkt. 1342-1 at 13. Therefore, even though the Court's order granting Apple's motion *in limine* precludes Plaintiffs from affirmatively offering evidence or argument concerning Apple's overall wealth or size, because it would be irrelevant, *see* Dkt. 1439 at 3, the cautionary language in Apple's proposed instruction is necessary to limit any bias that may arise from jurors' knowledge of Apple's overall financial resources and size. Indeed, the Supreme Court has recognized that knowledge of "a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses," and it cautioned that "[v]ague instructions, or those that merely inform the jury to avoid 'passion or prejudice' do little to aid the decisionmaker." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).

Apple properly substituted "size" for CACI 117's reference to the "poverty" of a party. A reference to "poverty" has no applicability here, so using that term could only confuse the jury. By contrast, the Court has already concluded that Apple's overall size is irrelevant, and nothing in Apple's proposed instruction suggests that the jury should disregard the only potentially relevant aspect facts about Apple's resources, i.e., "the size and resources of Apple's teams that worked on or in relation to the alleged misappropriated trade secrets." Dkt. 1439 at 3.

**Masimo's Objections to Apple's Proposed Initial Instruction No. 1**

Masimo defers to the Court's standard preliminary instruction on this issue. Apple's proposal modified the Ninth Circuit model instruction but combined it with part of CACI No. 117 and then modified the latter.  The Court should reject Apple's proposal.

Apple adds the following sentence: "Nor may you consider the overall wealth or size of any party, since that is not relevant to any of the issues that you must decide." Apple's addition would significantly expand the scope of this Court's ruling on Apple's motion *in limine* No. 2.

The Court held that Apple's overall size and financial resources are "largely irrelevant" to the issues in this case.  *See* Dkt. 1439 at 3.  However, the Court specifically held that Masimo may "present evidence regarding the size and resources of Apple's teams that worked on or in relation to the alleged misappropriated trade secrets."  *Id*. The Court found that "testimony about the size of the hardware team working on the Apple Watch is relevant to how quickly Apple could have discovered the trade secrets on its own."  *Id*.  Thus, Apple's additional sentence would instruct the jury to disregard evidence the Court already determined may be relevant.

Moreover, Apple's reference to "the wealth or *size* of any party" differs materially from the model instruction on which Apple relies.  Apple cites an instruction regarding "the wealth or *poverty* of any party."  CACI No. 117 (emphasis added).  This instruction aims to curb "a deliberate attempt by counsel to appeal to social or economic prejudices of the jury, including the wealth or poverty of the litigants."  CACI No. 117 Sources and Authority (citing *Hoffman v. Brandt*, 65 Cal. 2d 549, 552–553 (1966)).  Masimo is a billion-dollar company that is hardly going to curry jury sympathy by claiming poverty. By substituting "size" for "poverty" Apple seeks to misuse an instruction created for a specific purpose to exclude consideration of potentially relevant evidence.

Apple's cited case, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003), does not support its proposed instruction.  *Campbell* does not address jury instructions at all.  Instead, *Campbell* addressed the propriety of a punitive damages

-3-

award against an insurance company in a fraud case brought by individual defendants. *Id.* at 417.   In *dicta*, the Supreme Court noted "the presentation of evidence of defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."   *Id.*   Here, however, Masimo will not be presenting evidence of Apple's net worth.   Further, both parties are large businesses.   Thus, there is little concern the jury will express a bias against big business by favoring one side.

Apple's proposed placement of its added sentence within the instruction would also cause additional confusion.   Apple inserts its sentence immediately before the statement: "You will recall that you took an oath promising to do so at the beginning of the case."   The jury will not have taken an oath to avoid considering the wealth or size of any party.

## MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 2A[2]

### Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiffs in this case are Masimo Corporation and Cercacor Laboratories, Inc.  The Defendant is Apple Inc.  Masimo and Cercacor assert claims for trade secret misappropriation, correction of inventorship on patents, and ownership of patents.

Masimo and Cercacor assert that Apple hired former Masimo and Cercacor employees and improperly obtained Masimo and Cercacor's Asserted Trade Secrets from them.  Specifically, Masimo and Cercacor assert that Apple misappropriated the Asserted Trade Secrets through two former employees that Apple recruited, Marcelo Lamego and Michael O'Reilly.  Masimo and Cercacor assert that Apple used the Asserted Trade Secrets to develop products, market products, and obtain patents.

The Asserted Trade Secrets and patents relate generally to ████████████ ████████████████████████████████████████████ ████████████████████████     █████████████████████ ██████████     The Asserted Trade Secrets also relate to business and marketing strategies for ████████████████████████████████████ ████████████████████████.

Masimo and Cercacor assert that Apple filed patent applications on subject matter that Marcelo Lamego obtained from Masimo and Cercacor employees during his employment at those companies.  Masimo and Cercacor assert that their employees who disclosed this subject matter to Lamego should be added as named inventors to the patent applications that Apple filed.

Masimo and Cercacor assert that their employees who disclosed the patented subject matter to Marcelo Lamego, and Marcelo Lamego himself, contributed to the

---

[2] **Authority**:  Judge Selna's Exemplar Initial Jury Instructions No. 2

-5-

claimed inventions while under an obligation to assign patent rights to Masimo and/or Cercacor.

Masimo and Cercacor have the burden of proof on these claims.

Apple denies all of Plaintiffs' claims.  Apple contends the alleged trade secrets are not trade secrets under California law.  Apple contends it did not misappropriate any of this information, and instead independently discovered the information.  Apple also disputes Masimo and Cercacor's theories of harm, lost profits, and unjust enrichment.

Apple also asserts a defense to the claim for misappropriation of trade secrets. Apple contends that Masimo and Cercacor waited too long to file this lawsuit.  Apple has the burden of proof on this defense.

Apple contends that no Masimo or Cercacor employees are inventors of the disputed patents, and that neither Masimo nor Cercacor is a joint owner of those patents, because Apple employees invented the subject matter claimed in the disputed patents.

**Masimo's Argument: Proposed Initial Instruction No. 2A**

The Court should adopt Masimo's proposed instruction because it recites, in neutral and balanced language, the claims and defenses the jury will be asked to resolve (subject to any revisions as a result of motions for judgment as a matter of law).

The Court should reject Apple's proposed instruction because it presents a one-sided description of the parties' positions.   For example, Apple's instruction misrepresents Masimo's trade secret claim as limited to "that Apple disclosed certain alleged secrets in patents, and that Apple used other alleged secrets."   Masimo alleges that Apple misappropriated trade secrets by acquisition, use, and disclosure.   Masimo also alleges that Apple misused some trade secrets by including them in patents **and** by using the same trade secret.   Apple's proposal also includes burdensome details about its denials that may confuse the jury before the jury has been instructed on the law of trade secrets (e.g. "including because the information was *generally known*," "did not *misappropriate* Plaintiffs' alleged trade secrets including because Apple *independently developed* the information that Plaintiffs allege Apple *misappropriated*," and "Apple further disputes that the alleged *misappropriation* was a *substantial cause* of any *unjust enrichment* to Apple").   Such language does not belong in this instruction, which aims to succinctly recite the claims and defenses of the parties.

Apple's proposed instruction describes a readily ascertainable defense that Apple agrees is no longer available pursuant to the Court's prior ruling.   *See* Dkt. 1284 at 4.   Apple's proposed instruction also describes Apple's unclean hands defense, which may not be presented to the jury.

# APPLE'S PROPOSED INITIAL INSTRUCTION NO. 2B[3]

## Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiffs in this case are Masimo Corporation and Cercacor Laboratories, Inc.  The Defendant is Apple Inc.

Masimo and Cercacor allege that Apple improperly obtained their trade secret information through hiring two of their former employees (Marcelo Lamego and Michael O'Reilly), that Apple disclosed certain alleged secrets in patents, and that used other alleged secrets.

Masimo and Cercacor also assert that Apple filed patents that claim inventions to which Masimo and Cercacor employees contributed, and those employees should be added as named inventors.  Masimo and Cercacor allege they should be part owners of those patents.

Masimo and Cercacor seek monetary damages for Apple's alleged trade secret misappropriation.  Masimo and Cercacor have the burden of proof on all of their claims.

Apple denies all of Plaintiffs' claims.  Apple contends that the alleged trade secrets do not meet the definition of trade secrets under California law, including because the information was generally known to the public and industry participants. Apple contends that it did not misappropriate Plaintiffs' alleged trade secrets, including because Apple independently developed the information that Plaintiffs allege Apple misappropriated.   Apple further disputes that the alleged misappropriation was a substantial cause of any unjust enrichment to Apple.[4]

---

[3] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.5; Judge Selna's Exemplar Initial Jury Instructions No. 2.

[4] As detailed in Apple's March 17, 2023 memorandum, Plaintiffs' untimely disclosure of their lost profits theory on March 15, 2023 is insufficient to support a request for lost

1
2
3
4
5

Apple has also asserted a number of defenses to the claim for misappropriation of trade secrets. Apple contends that Masimo and Cercacor did not file this lawsuit within the time permitted by law, that they are not entitled to obtain relief because they have unclean hands, and that the information alleged to be trade secrets was readily ascertainable by proper means. Apple has the burden of proof on these defenses.

6
7
8

Apple also contends that Plaintiffs' employees should not be added as co-inventors to the disputed patents and that neither Masimo nor Cercacor is a joint owner of those patents.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

on profits. Apple does not believe Plaintiffs have properly disclosed an admissible lost profits theory. To the extent the Court disagrees, and Plaintiffs are permitted to seek lost profits damages, the language "lost profits for Plaintiffs or" should be inserted before the phrase "unjust enrichment to Apple."

**Apple's Position: Proposed Instruction No. 2B**

Apple's instruction provides a brief, neutrally worded introduction to the basic positions of the parties. It is consistent with this Court's exemplar initial jury instructions and other, similar summary instructions that this Court has delivered at the start of recent trials. *See, e.g.*, Instruction No. 2, *B12 Consulting, LLC v. UST Global, Inc.*, No. SACV 2-1773 (C.D. Cal. Aug. 24, 2022) (Selna, J.).

Plaintiffs' counter-proposal has several flaws.

*First*, Apple objects to factual inaccuracies in some of its statements about Plaintiffs' claims. For instance, the paragraph beginning on page 1, line 14 incorrectly suggests that all the alleged trade secrets relate both to ███████████████ ████████████████████ and to business and marketing strategies. However, these are distinct categories of trade secrets without any overlap. Plaintiffs' descriptions of their purported allegations of "use" are similarly vague and inconsistent with the record.

*Second*, Apple objects to Plaintiffs' counter-proposal's vague, incomplete, and inaccurate information about Apple's defenses. For instance, Plaintiffs' counter-proposal fails to mention Apple's unclean hands defense, and it inaccurately portrays Apple's independent development defense as the only grounds on which Apple disputes misappropriation.

If the Court decides not to charge the jury on any specific claim or defense currently listed in the proposed instruction (e.g., Apple's readily ascertainable defense), Apple requests that the Court delete that specific language from the proposed instruction but otherwise use the instruction as is.

## MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 3A[5]

### Court Procedures Are Not Evidence

This action involves allegations that certain information is subject to protection as trade secrets.  To protect this information from public disclosure, the Court has taken certain precautions to prevent public access to the information, for example by removing members of the public from the courtroom and sealing the courtroom.  You are reminded that Masimo and Cercacor bear the burden of proving all elements of their claim for misappropriation of trade secrets, as in instruction number [*insert*].  When evaluating whether Masimo and Cercacor have satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.

---

[5] **Authority:** Guideline No. 8, *The Sedona Conference Commentary on Protecting Trade Secrets in Litigation About Them* at 20 (Mar. 2022), https://tinyurl.com/mvx8m4kn (adapted).

**Masimo's Argument: Proposed Initial Instruction No. 3A**

Masimo's proposed instruction adheres to the exact language of the Sedona Conference Commentary on Protecting Trade Secrets in Litigation About Them, at Guideline No. 8.  Apple's proposal purports to be based on the same source, but bears little resemblance to the model instruction.  The Court should adopt Masimo's proposed instruction.  The model instruction reads as follows:

This action involves allegations that certain materials are subject to protection as trade secrets. To protect this information from public disclosure, the court has [describe protections]. The jury is reminded that [the party asserting the trade secret] bears the burden of proving all elements of its claim for misappropriation of trade secrets, as explained in instruction number [insert]. When evaluating whether [the party asserting the trade secret] has satisfied this burden, the jury is not permitted to take into account, or consider in any way, the fact that the court [describe protections].

*Id.*   The article explains that this instruction "makes the jury aware that the restrictions themselves are not to be considered when determining whether the party asserting the trade secret has satisfied its burden to establish the existence of the trade secrets at issue." *Id.*

Instead of focusing on Court procedures generally, or closing the courtroom specifically, Apple proposes a confusing instruction regarding the jury's role in deciding trade secret protection ("while the issue of whether this information is actually subject to protection as trade secrets is being decided by you").  Apple's proposed language also unfairly suggests trade secret protection does not, or is unlikely to, exist.  For example, "whether this information is *actually subject to protection* as trade secrets," "that any information *actually qualifies* as a trade secret," "whether any information *actually qualifies as a trade secret*," if "the alleged trade secrets *were in fact* trade secrets," and "that any information in the document is *actually confidential*."  Apple's attempt to modify this instruction to bias the jury is inappropriate, particularly when other instructions address those issues.

Apple's proposal also adds misleading language about confidentiality designations on documents ("You also may see documents that include confidentiality stamps at the bottom of the page that the attorneys to this case have added."). This language may mislead the jury because many of the parties' documents include confidentiality designations in the ordinary course of business that were ***not*** added by the attorneys.

Apple's proposal also adds repeated admonitions for the jury not to consider the Court's procedures. Apple's repetitious language is unnecessary and risks biasing the jury against Masimo. A single admonition is sufficient to instruct the jury on this point. The Court should reject Apple's proposal.

# APPLE'S PROPOSED INITIAL INSTRUCTION NO. 3B[6]

## Court Procedures Are Not Evidence

This action involves allegations that certain information is subject to protection as trade secrets.  To protect this information from public disclosure while the issue of whether this information is actually subject to protection as trade secrets is being decided by you, the Court will times seal the courtroom and limit the ability for the attorneys and witnesses to say certain details in front of the public.  You also may see documents that include confidentiality stamps at the bottom of the page that the attorneys to this case have added.

You should make no inference from these measures that any information actually qualifies as a trade secret as Plaintiffs contend.  Nor should you make any inference from my sealing the courtroom or permitting any other measures that the Court has any opinion on whether any information actually qualifies as a trade secret.  These precautions are standard practice in a case such as this and are taken in order to preserve the possibility that the information qualifies as a trade secret, which will be for you to decide.

As I will instruct you at the end of the trial, Masimo and Cercacor bear the burden of proving all elements of their claim for misappropriation of trade secrets, including that the alleged trade secrets were in fact trade secrets.  When evaluating whether Masimo and Cercacor have satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court may occasionally seal the courtroom from the public or take other precautions to prevent public access to certain information.  That is, whether the courtroom is sealed has no relevance to whether the evidence provided during sealing is a trade secret, or not.  And while the attorneys to this case have added confidentiality stamps to the bottom of certain documents, you

---

[6] **Authority:** The Sedona Conference, *Commentary on Protecting Trade Secrets in Litigation About Them*, 23 Sedona Conf. J. 741, 788-789 (2022) (adapted).

should make no inference from that stamp that any information in the document is actually confidential.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Apple's Position: Proposed Instruction No. 3B

This instruction is designed to minimize any risk of unfair prejudice arising from the Court's treatment of Plaintiffs' alleged trade secrets as highly confidential through measures visible to the jury (e.g., sealing the courtroom).  Since such orders will come from the Court, "restrictions like sealing the courtroom could send a message to the jury that the information at issue is a trade secret, even though that determination may be in the jury's hands."  The Sedona Conference, *Commentary on Protecting Trade Secrets in Litigation About Them*, 23 Sedona Conf. J. 741, 787 (2022).  Commentaries on the management of trade secret litigation recognize the risk "that the jury may draw" "improper inferences" from court orders regarding confidentiality.  *Id.* at 788-799.  Apple's Proposed Instruction No. 3B is adapted from the model instruction proposed by the trade secrets working group of the Sedona Conference. *See id.*

Plaintiffs agree that this type of instruction is necessary, but Apple objects to their formulation because it does not go far enough.  It describes only sealing the courtroom and not other measures taken by this Court to ensure confidentiality that may have the unintended effect of priming the jury to think that the Court has made a substantive legal determination about the validity of Plaintiffs' claims.

Plaintiffs provide no clear explanation for why this Court's instruction should be limited to the Sedona Conference's language; even the model instruction itself assumes that the parties will fill in case-specific details.  Apple's proposed instruction, for example, adds several examples of the kinds of confidentiality procedures that the jury may not consider—information that the instruction itself calls for ("[describe protections]").  Apple's proposed instruction also describes more specifically how the jury should understand Plaintiffs' burden of proof in light of the confidentiality procedures.  Plaintiffs do not dispute that Apple's explanation is accurate and covers the same basic topics that are already addressed by the model.

Apple respectfully submits that its proposed instruction is clearer and will be more useful to the jury.

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A[7]**

**Taking Notes**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

You will each be provided with a juror notebook for your individual use.  The notebook includes descriptions of the Asserted Trade Secrets that Masimo and Cercacor claim Apple misappropriated.  The law requires a trade secret plaintiff to provide a written description of the trade secrets being asserted during the litigation so that the defendant knows what it is accused of misappropriating.  Those descriptions appear in your juror notebook.

The juror notebook will also include a list of the patents at issue.

Over the course of the trial, the parties will provide for you pictures of the witnesses before they testify whether live or by video.  You may place these pictures in your juror notebook.

You may take notes in this book as well.  When you leave, your notebook should be left in the courtroom.  No one will read your notebook.  You will be required to return the notebook at the end of the case.  It will be destroyed at the conclusion of the case.

---

[7] **Authority:**  Judge Selna's Exemplar Initial Jury Instructions No. 12 [modified, paragraph on juror notebook added]

-17-

### Masimo's Argument: Proposed Initial Instruction No. 4A

The parties dispute the contents of the juror notebook.  Apple proposes including copies of the patents that are the subject of Masimo's inventorship and ownership claims, as well as a "decision flowchart."  Masimo objects to the inclusion of those two items in the juror notebook.  The juror notebook should not contain an overwhelming amount of information.  Including the patents in the juror notebook would dramatically expand the contents of the notebook and would unnecessarily overwhelm the jury.  The patents will be provided to the jury as part of the evidence in the case.  The juror notebook need only list the patent numbers.

Masimo also objects to Apple's purported flowchart.  Apple's flowchart is inconsistent with Masimo's allegations and the evidence in this case.  It is missing Masimo's claim of misappropriation by acquisition, Masimo's claims of misappropriation by disclosure or use via respondeat superior, and any mention of Apple's willful misappropriation.  Moreover, Apple's flowchart is visually one-sided because it provides a far easier path to mark "No" (for Apple) than it does the "Yes" (for Masimo).  And even where a juror would follow the "Yes" path, they would not end up with an answer favorable to Masimo.  The only two final answers are "This Alleged Trade Secret Fails" or "You Now Need To Consider Apple's Defenses."  Apple's flowchart is misleading and highly prejudicial to Masimo.  Providing this flowchart to the jury will only serve to confuse and bias the jury in favor of Apple throughout the evidence presentation.

# APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B[8]

## Taking Notes

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

You will each be provided with a juror notebook for your individual use.

The notebook contains four tabs.

Behind the first tab is lined paper for you to take any notes you wish.  If you need more paper for notes, please let [name] know and more will be provided.

Behind the second tab the notebook includes the alleged trade secrets that Masimo and Cercacor claim Apple misappropriated.  The law requires a trade secret plaintiff to provide the defendant during the litigation with a written description of the alleged trade secrets being asserted so that the defendant knows what it is accused of misappropriating.  Masimo and Cercacor produced written descriptions of the alleged trade secrets to Apple, and those are the descriptions that appear in your juror notebook behind the second tab.

Behind the third tab are copies of the patents that are the subject of Plaintiffs' claims regarding inventorship and ownership.

Behind the fourth tab is a flow chart that illustrates the decisions you will have to make during your deliberations at the end of the case.

---

[8] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 12 (modified).

Lastly, there is a fifth tab.  Over the course of the trial, the parties will provide for you pictures of the witnesses before they testify whether live or by video.  You may put the witness pictures behind the fourth tab.  You may take notes anywhere you want in this notebook as well.  When you leave, your notebook should be left in the courtroom. No one will read your notebook.  You will be required to return the notebook at the end of the case.  It will be destroyed at the conclusion of the case.

**Apple's Position: Proposed Instruction No. 4B**

The parties' proposed initial instructions on notetaking differ in two ways. *First*, Apple proposes to provide the jury with more information about the content of their juror notebooks. *Second*, Apple proposes to include copies of the disputed patents in the jurors' notebooks, rather than just a list of the patents. Providing the jurors copies of the patents will assist their understanding of the testimony and evidence as it comes in, since the language of those patents is important to the parties' claims and defenses. Plaintiffs' proposed list, by contrast, would have only marginal value to the jurors.

## MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 5A[9]

### Trade Secret and Patent Basics

This case involves intellectual property rights and both trade secret and patent law.  To help you understand the evidence as it is presented, I will now give you a brief overview of aspects of trade secret law and patent law and explain a few ways in which they differ.

Trade secrets can be any type of information that has value from not being generally known to the public or those in a relevant field.  A trade secret can be any information—such as a formula, pattern, compilation, program, device, method, technique, or process—that has independent economic value from not being generally known and is the subject of reasonable efforts to maintain its secrecy.  Trade secrets do not need to be registered with the government or written down.  Information can be a trade secret even if it has been published, including on the internet.  A trade secret plaintiff need not be the only, or even the first, to develop the trade secret if the information is protectable and the defendant misappropriated it from the plaintiff.

By contrast, patents can be only on new inventions that are not obvious to those in the field.  A patent gives the right to prevent others from making, using, offering to sell, selling, or importing the invention without the patent holder's permission.  In return for these exclusive rights, the patent law requires the inventor to disclose the invention to the public.

Protecting trade secrets and patents encourages innovation, but protecting trade secrets also promotes business ethics and integrity.  Trade secret law prohibits misuse of the trade secret only by those who obtained it improperly or in confidence.  Trade

---

[9] **Authority:**  Cal. Civ. Code § 3426.1(d); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476-78 (1974); *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001); *Sinclair v. Aquarius Elecs., Inc.*, 42 Cal. App. 3d 216, 222 (1974); *DVD Copy Control Ass'n., Inc. v. Bunner*, 31 Cal. 4th 864, 881 (2003); *Imi-Tech v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986).

secret law punishes misuse even if the trade secret could have been obtained ethically and honestly.  Whereas trade secret law does not prohibit discovery of the trade secret by fair and honest means, such as by independent invention or by reverse engineering.

During the trial, the parties will familiarize you with the technology and business information at issue.  For your convenience, your Juror Notebooks will include a description of the asserted trade secrets and a list of the patents at issue.

This is a general overview of patent law and trade secret law to provide you some context for the evidence you will hear in this trial.  At the close of the evidence, I will give you more detailed instructions on aspects of trade secret law and patent law that you will need to apply to reach a verdict in this case.

**Masimo's Argument: Proposed Initial Instruction No. 5A**

Neither party bases this instruction on a model.  But both agree some instruction is required to educate the jury on trade secrets and patent law as they relate to this case.  Apple's proposed instruction contains incorrect statements of the law and extraneous detail that risk confusing the jury on legal concepts that are not even at issue in this case.

Apple claims "Once published, the information in a patent cannot be a trade secret—because public information is not secret."  This is contrary to settled law, including this Court's prior holdings.  First, there is no "secrecy" requirement in trade secret law—only that it have independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  Cal. Civ. Code § 3426.1(d).  The statute mentions "secrecy" only as part of the requirement that a trade secret "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code. § 3426.1(d)(2).

Second, this Court previously held that "techniques described in articles published as conference papers does not render the technique 'generally known' to individuals who could obtain value from the techniques."  Dkt. 1284 at 6.  (citing *Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021)).  Indeed, "publication does not mean the subject matter is generally known under CUTSA." *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *15 (C.D. Cal., Nov. 7, 2022).

Apple also describes irrelevant patent prosecution and examination procedures: To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the federal government and employs trained Examiners who review applications for patents.  Among other things, the Examiner reviews certain information about the state of the technology at the time the application was filed to determine whether the invention is truly an advance over the state of the art at the time.

None of these procedures are relevant to this case and should not be included in this instruction.

Apple also claims that "trade secrets are—as their name suggests—secret," "a trade secret must derive independent economic value from being maintained as a secret," and that "information disclosed in a patent is no longer entitled to trade secret protection."  As discussed above, there is no secrecy requirement in trade secret law, and a patent publication does not preclude trade secret protection.

Apple's proposed instruction claims that "patent law provides a patent holder with the exclusive right to make or sell a patented technology."  This is not only irrelevant to the claims of this case, but it is also incorrect.  Patent law provides a patent holder with the *right to exclude others* from making or selling the patented technology.

Apple objects that Masimo's proposal uses "morally weighted terminology, such as 'ethically and honestly,' 'misuse,' and 'fair and honest.'"  But this language will assist the jury in understanding the difference between the purpose of patent law (promoting the progress of science and the useful arts) and the purpose of trade secret law ("the maintenance of standards of commercial ethics and the encouragement of invention are the broadly stated policies behind trade secret law").  *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480–82 (1974) (discussing the objectives of patent and trade secret law).  Such an instruction would provide the jury helpful context when the jury evaluates Masimo's trade secret and patent inventorship/ownership claims.

## APPLE'S PROPOSED INITIAL INSTRUCTION NO. 5B[10]

### Overview of Patent and Trade Secret Law

In this case, you will be hearing about different types of intellectual property rights.  To help you understand the evidence as it is presented, I will now give you a brief overview of patent and trade secret law and explain a few ways in which they differ.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the federal government and employs trained Examiners who review applications for patents.  Among other things, the Examiner reviews certain information about the state of the technology at the time the application was filed to determine whether the invention is truly an advance over the state of the art at the time.  A valid United States patent gives the patent holder the right for a certain period of time to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.  In return for these exclusive rights, the patent law imposes upon the inventor a requirement of public disclosure, so the PTO publishes patents, including a full and clear description of the invention and of the manner and process of making and using it.  Once published, the information in a patent cannot be a trade secret—because public information is not secret.

Unlike patents, which are public, trade secrets are—as their name suggests—secret.  Thus, in contrast to patents, trade secret law provides businesses with a different form of protection for certain secret information.  A trade secret is information—such

---

[10] **Authority:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § A.1 (2020); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-481 (1974); Jury Instruction, *United States v. Roberts*, No. 3:08-cr-175 (E.D. Tenn., Dec. 8, 2010) Dkt. Nos. 147 at 111:13-15; *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (quoting *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir. 2009)); Cal. Civ. Code § 3426.1; Trade Secret, Black's Law Dictionary (11th ed. 2019).

as a formula, pattern, compilation, program, device, method, technique, or process—that
a company keeps confidential to maintain an advantage over competitors.  While a trade
secret need not be a new invention as is required to receive a patent, a trade secret must
derive independent economic value from being maintained as a secret, that is from not
being generally known by others who can obtain economic value from its disclosure or
use.  As I mentioned earlier, information disclosed in a patent is no longer entitled to
trade secret protection, because such information is in the public domain.  Unlike with a
patent, a business does not need to register or publish a trade secret with the government;
instead, the business must use reasonable efforts to maintain the secrecy of the business
information it seeks to protect as a trade secret.  And whereas patent law provides a
patent holder with the exclusive right to make or sell a patented technology—even if a
competitor has independently developed the same technology—trade secret law only
prohibits competitors from misappropriating a company's trade secrets by acquiring
them through improper means, such as through theft or by breaking a nondisclosure
agreement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Apple's Position: Proposed Instruction No. 5B

In order to equip the jury to decide Plaintiffs' inventorship and ownership claims, Apple believes it is important to describe (1) the basic rights and requirements associated with obtaining a patent, (2) the rights and requirements associated with a protectable trade secret under California law, and (3) the differences between these ways that a business can protect its intellectual property rights.  Apple's proposed instruction is adapted from the Federal Circuit Bar Association's model patent overview instruction.

Plaintiffs' legal objections to Apple's proposed instruction are unavailing.  *First*, Plaintiffs object to the statement that "[o]nce published, the information in a patent cannot be a trade secret—because public information is not secret."  But it is the "well settled" rule in the Ninth and Federal Circuits that information published in patents and patent applications is generally known.  *See Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (citing *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir. 2009)).  Indeed, an authority Plaintiffs cite in their own Proposed Final Instruction No. 41A ("Overview of Patent Law") states that if information were published in a patent, "trade secret protection would be extinguished." *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).  And although Plaintiffs rely on this Court's decision in *True Wearables*, the Federal Circuit expressly confirmed on appeal that "information 'disclosed in a patent' is 'generally known to the public' for purposes of the CUTSA." *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 (Fed. Cir. Jan. 24, 2022).

*Second*, Plaintiffs object to Apple's use of the word "secret," arguing that "there is no secrecy requirement in trade secret law."  But Plaintiffs do not cite any decision from any jurisdiction supporting their contention that a trade secret need not be secret.  To the contrary, it is fundamental that "[t]he first element" in the definition of a trade secret "is the crucial one…:  in order to qualify as a trade secret, the information 'must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.'" *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251

(2004).  Indeed, this Court has previously delivered a version of CACI 4403 ("Secrecy Requirement"), which Apple also relies on for its proposed final instruction on the secrecy requirement.  *See, e.g.*, Instruction No. 29, *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.).  Plaintiffs also incorrectly suggest that the "secrecy" requirement refers to the reasonable efforts element.  The case law explains that the two inquiries are distinct.  Under the CUTSA, a plaintiff must prove that there has not been "[p]ublic disclosure, that is the absence of secrecy, [which] is fatal to the existence of a trade secret," *and* an "entity claiming a trade secret *is also required* to make [reasonable efforts]."  *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) (emphasis added); *see also* Apple's Position: Proposed Final Instruction No. 21B.  Plaintiffs' objections should therefore be rejected.

Plaintiffs also object to Apple's proposed description of the role of the Patent and Trademark Office.  But Plaintiffs have previously relied on Apple's statements to the PTO in support of their "generally known" arguments, *see* Dkt. 1098 at 14-15, and have thus directly put the PTO at issue.  In any event, because Plaintiffs' inventorship claims ask the jury to correct statements in patents issued by the PTO, providing a basic overview of the patent issuance process and the PTO's role in it will give the jury necessary context and will prevent juror confusion.

Plaintiffs agree that an overview of patent and trade secret law is appropriate, but their counter-proposal has several problems.

*First*, Apple objects to Plaintiffs' statement that information can constitute a trade secret even if it has been published.  This statement elides the not generally known requirement and will confuse the jury.  While the mere fact of publication is not necessarily fatal to trade secret protection, Plaintiffs' proposed language suggests that publication is irrelevant, which would create a misimpression about the law for jurors.

*Second*, Apple objects to how Plaintiffs' proposed instruction inappropriately moralizes about their allegations and the law of trade secrecy.  CUTSA refers to proper and improper means of obtaining information, but Plaintiffs have instead chosen morally

weighted terminology, such as "ethically and honestly," "misuse," and "fair and honest." Such language is improper and designed to elicit bias against the defendant.

## MASIMO'S PROPOSED INSTRUCTION NO. 1A[11]

### Duty of the Jury

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.

Please do not read into these instructions, or into anything I may have said or done, any suggestion as to what verdict you should return – that is a matter entirely up to you.

---

[11] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4.

1

### Masimo's Argument: Proposed Instruction No. 1A

2        Masimo used the Ninth Circuit model instruction (with minor modifications that
3   are not disputed).  *See* Manual of Model Civil Jury Instructions for the District Courts
4   of the Ninth Circuit ("Ninth Circuit Model Instructions") § 1.4.  Apple also started with
5   the Ninth Circuit model instruction but combined it with part of CACI No. 117 and then
6   modified the latter.

7        Apple adds the following sentence: "Nor may you consider the overall wealth or
8   size of any party, since that is not relevant to any of the issues that you must decide."
9   Apple's addition would significantly expand the scope of this Court's ruling on Apple's
10  motion *in limine* No. 2.

11       The Court held that Apple's overall size and financial resources are "largely
12  irrelevant" to the issues in this case.  *See* Dkt. 1439 at 3.  However, the Court specifically
13  held that Masimo may "present evidence regarding the size and resources of Apple's
14  teams that worked on or in relation to the alleged misappropriated trade secrets."  *Id*.
15  The Court found that "testimony about the size of the hardware team working on the
16  Apple Watch is relevant to how quickly Apple could have discovered the trade secrets
17  on its own."  *Id*.  Thus, Apple's additional sentence would instruct the jury to disregard
18  evidence the Court already determined may be relevant.

19       Moreover, Apple's reference to "the wealth or ***size*** of any party" differs materially
20  from the model instruction on which Apple relies.  Apple cites an instruction regarding
21  "the wealth or ***poverty*** of any party."  CACI No. 117 (emphasis added).  This instruction
22  aims to curb "a deliberate attempt by counsel to appeal to social or economic prejudices
23  of the jury, including the wealth or poverty of the litigants."  CACI No. 117 Sources and
24  Authority (citing *Hoffman v. Brandt*, 65 Cal. 2d 549, 552–553 (1966)).  Masimo is a
25  billion-dollar company that is hardly going to curry jury sympathy by claiming poverty.
26  By substituting "size" for "poverty" Apple seeks to misuse an instruction created for a
27  specific purpose to exclude consideration of potentially relevant evidence.

28

1
2
3
4
5
6
7
8
9

Apple's cited case, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003), does not support its proposed instruction. *Campbell* does not address jury instructions at all. Instead, *Campbell* addressed the propriety of a punitive damages award against an insurance company in a fraud case brought by individual defendants. *Id.* at 417. In *dicta*, the Supreme Court noted "the presentation of evidence of defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses." *Id.* Here, however, Masimo will not be presenting evidence of Apple's net worth. Further, both parties are large businesses. Thus, there is little concern the jury will express a bias against big business by favoring one side.

10
11
12
13
14

Apple's proposed placement of its added sentence within the instruction would also cause additional confusion. Apple inserts its sentence immediately before the statement: "You will recall that you took an oath promising to do so at the beginning of the case." The jury will not have taken an oath to avoid considering the wealth or size of any party.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### APPLE'S PROPOSED INSTRUCTION NO. 1B[12]

### Duty of the Jury

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.  A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not.  You must decide the case solely on the evidence and the law.  Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you.  Nor may you consider the overall wealth or size of any party, since that is not relevant to any of the issues that you must decide.  You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.

Please do not read into these instructions, or into anything I may have said or done, any suggestion as to what verdict you should return – that is a matter entirely up to you.

---

[12] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4; CACI 117 (adapted); Dkt. 1439 at 3 ("The Court finds that Apple's overall size and financial resources are largely irrelevant to the issues in this case.").

-34-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Apple's Position: Proposed Instruction No. 1B

The dispute between the parties is Apple's addition of language from this Court's ruling on Apple's motion *in limine* No. 2 and the CACI 117 model instruction admonishing the jurors not to consider the wealth or size of any party.  Apple objects to Plaintiffs' counter-proposal because it does not include this important language.

As Plaintiffs argued in opposition to Apple's motion *in limine* No. 2, "there is no practical way to prevent the jury from knowing that Apple is a huge company with significant financial resources" with a "market capitalization" that makes it "the biggest company in the world."  Dkt. 1342-1 at 13.  Therefore, even though the Court's order granting Apple's motion *in limine* precludes Plaintiffs from affirmatively offering evidence or argument concerning Apple's overall wealth or size, because it would be irrelevant, *see* Dkt. 1439 at 3, the cautionary language in Apple's Proposed Instruction No. 1A is necessary to limit any bias that may arise from jurors' knowledge of Apple's overall financial resources and size.  Indeed, the Supreme Court has recognized that knowledge of "a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses," and it cautioned that "[v]ague instructions, or those that merely inform the jury to avoid 'passion or prejudice' do little to aid the decisionmaker."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).

Apple properly substituted "size" for CACI 117's reference to the "poverty" of a party.  A reference to "poverty" has no applicability here, so using that term could only confuse the jury.  By contrast, the Court has already concluded that Apple's overall size is irrelevant, and nothing in Apple's proposed instruction suggests that the jury should disregard the only potentially relevant aspect facts about Apple's resources, i.e., "the size and resources of Apple's teams that worked on or in relation to the alleged misappropriated trade secrets."  Dkt. 1439 at 3.

## MASIMO'S PROPOSED INSTRUCTION NO. 2A

### Claims and Defenses

You will be asked to resolve the following claims and defenses:

1. Masimo and Cercacor's claim that Apple misappropriated one or more of the Asserted Trade Secrets.

   a. Masimo and Cercacor seek monetary damages for this claim.

   b. Masimo and Cercacor have the burden to prove this claim by a preponderance of the evidence.

2. Masimo and Cercacor's claim to correct inventorship on the following five patents: U.S. Patent Nos. 10,078,052, 10,247,670, 9,952,095, 11,009,390, and 10,219,754.

   a. Masimo and Cercacor do not seek monetary damages for this claim.

   b. Masimo and Cercacor have the burden to prove this claim by clear and convincing evidence.

3. Masimo and Cercacor's claim of ownership of the following five patents: U.S. Patent Nos. 10,078,052, 10,247,670, 9,952,095, 11,009,390, and 10,219,754.

   a. Masimo and Cercacor do not seek monetary damages for this claim.

   b. Masimo and Cercacor have the burden to prove this claim by a preponderance of the evidence.

4. Apple denies all of Masimo and Cercacor's claims.

5. Apple asserts the following defense to Masimo and Cercacor's claim for misappropriation of trade secrets:

   a. Apple contends that Masimo and Cercacor did not file this lawsuit within the time permitted by law.

   b. Apple has the burden of proof on this defense by a preponderance of the evidence.

-36-

1

## Masimo's Argument: Proposed Instruction No. 2A

2       Masimo's proposed instruction succinctly recites the claims and the one
3  affirmative defense the jury will be asked to resolve.

4       Apple's proposed instruction is inaccurate, overly detailed, and one-sided.  For
5  example, Apple's instruction mischaracterized Masimo's trade secret claim as being
6  "that Apple disclosed certain alleged secrets in patents, and that used other alleged
7  secrets."  Apple omits that Masimo alleges that Apple misappropriated trade secrets by
8  acquisition, as well as by use, and disclosure.  Apple's proposal also includes details
9  about its denials that may confuse the jury before the jury has been instructed on the law
10  of trade secrets (e.g. "including because they do not have *independent economic value*
11  and claim ideas that are was *generally known*," "did not *misappropriate* Plaintiffs'
12  alleged trade secrets including because Apple *independently developed* the information
13  that Plaintiffs allege Apple *misappropriated*," and "Apple further disputes that the
14  alleged *misappropriation* was a *substantial cause* of any *unjust enrichment* to Apple").
15  Such language does not belong in this instruction, which aims to succinctly recite the
16  claims and defenses of the parties before introducing the legal concepts at issue.

17       Apple's proposed instruction describes a readily ascertainable defense that Apple
18  agrees is no longer available pursuant to the Court's prior ruling.  *See* Dkt. 1284 at 4.
19  Apple's proposed instruction also describes Apple's unclean hands defense.  As
20  described in further detail in Masimo's arguments regarding Proposed Instruction
21  No. 35, the jury may not decide unclean hands.

22       If the Court decides to give a post-trial instruction that summarizes the parties'
23  positions, the Court should use the neutral language from the initial instruction or the
24  statement of the case for jury selection.

25
26
27
28

1

2

## APPLE'S PROPOSED INSTRUCTION NO. 2B[13]

### Claims and Defenses

3

4

5

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

6

7

The Plaintiffs in this case are Masimo Corporation and Cercacor Laboratories, Inc.  The Defendant is Apple Inc.

8

9

10

11

Masimo and Cercacor allege that Apple improperly obtained their trade secret information through hiring two of their former employees (Marcelo Lamego and Michael O'Reilly), that Apple disclosed certain alleged secrets in patents, and that Apple used other alleged secrets.

12

13

14

15

Masimo and Cercacor also assert that Apple filed patents that claim inventions to which Masimo and Cercacor employees contributed, and those employees should be added as named inventors.  Masimo and Cercacor allege they should be part owners of those patents.

16

17

Masimo and Cercacor seek monetary damages for Apple's alleged trade secret misappropriation.  Masimo and Cercacor have the burden of proof on all of their claims.

18

19

20

21

22

23

24

Apple denies all of Plaintiffs' claims.  Apple contends that the alleged trade secrets do not meet the definition of trade secrets under California law, including because they do not have independent economic value and claim ideas that are generally known.  Apple contends that it did not misappropriate Plaintiffs' alleged trade secrets, including because Apple independently developed the information that Plaintiffs allege Apple misappropriated.  Apple further disputes that the alleged misappropriation was a substantial cause of any unjust enrichment to Apple.[14]

25

26

27

---

[13] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.5 (adapted).

28

[14] As detailed in Apple's March 17, 2023 memorandum, Plaintiffs' untimely disclosure

1    Apple has also asserted a number of defenses to the claim for misappropriation of

2    trade secrets.  Apple contends that Masimo and Cercacor did not file this lawsuit within

3    the time permitted by law, that they are not entitled to obtain relief because they have

4    unclean hands, and that the information alleged to be trade secrets was readily

5    ascertainable by proper means.  Apple has the burden of proof on these defenses.

6    Apple also contends that Plaintiffs' employees should not be added as co-

7    inventors to the disputed patents and that neither Masimo nor Cercacor is a joint owner

8    of those patents.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    of their lost profits theory on March 15, 2023 is insufficient to support a request for lost

26    on profits.  Apple does not believe Plaintiffs have properly disclosed an admissible lost

27    profits theory.  To the extent the Court disagrees, and Plaintiffs are permitted to seek

lost profits damages, the language "lost profits for Plaintiffs or" should be inserted

28    before the phrase "unjust enrichment to Apple."

-39-

1

## Apple's Position: Proposed Instruction No. 2B

2      Apple's instruction provides a brief, neutrally worded reminder of the basic

3  positions of the parties.  It is consistent with other, similar summary instructions that this

4  Court has delivered at the end of intellectual property trials.  *See, e.g.*, Instruction No. 2,

5  *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10,

6  2016) (Selna, J.), Dkt. 655 at 3; Instruction No. 11, *Broadcom Corp. v. Emulex Corp.*,

7  No. SACV 09-1058 (C.D. Cal. Oct. 12, 2011) (Selna, J.), Dkt. 888 at 15.  Plaintiffs'

8  counter-proposal, in contrast, is duplicative of the information that the jury will receive

9  in the verdict form.  If the Court decides not to charge the jury on any specific claim or

10  defense currently listed in the proposed instruction (e.g., Apple's readily ascertainable

11  defense), Apple requests that the Court delete that language from the proposed

12  instruction but otherwise use the instruction as is.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINTLY PROPOSED INSTRUCTION NO. 3[15]

### Burden of Proof

When a party has the burden of proving any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.  A party's burden of proof is by a preponderance of the evidence unless I instruct you otherwise.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all the evidence, regardless of which party presented it.

---

[15] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.6, 1.7; Instruction No. 2, *Takeya USA Corp. v. Power Play Marketing Grp.*, No. SACV 21-835 (JVS) (C.D. Cal. Oct. 13, 2022).

# JOINTLY PROPOSED INSTRUCTION NO. 4[16]

## What Is Evidence?

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed, which were read to you and placed into evidence; and

4. any facts that I have instructed you to accept as proved.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Some evidence may have been admitted only for a limited purpose. When I instructed you that an item of evidence was admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.

---

[16] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.9, 1.11, 1.12, 2.2; Jury Instructions, *B12 Consulting, LLC v. UST Global, Inc.*, SACV 20-1773-JVS (Aug. 25, 2022).

# JOINTLY PROPOSED INSTRUCTION NO. 5[17]

## What Is Not Evidence?

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the evidence controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may have been received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4. Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[17] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.10.

# MASIMO'S PROPOSED INSTRUCTION NO. 6A[18]

## Court Procedures Are Not Evidence

This action involves allegations that certain information is subject to protection as trade secrets.  To protect this information from public disclosure, the Court has taken certain precautions to prevent public access to the information, for example by removing members of the public from the courtroom and sealing the courtroom. You are reminded that Masimo and Cercacor bear the burden of proving all elements of their claim for misappropriation of trade secrets, as in instruction number [*insert*].  When evaluating whether Masimo and Cercacor have satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.

---

[18] **Authority:** Guideline No. 8, *The Sedona Conference Commentary on Protecting Trade Secrets in Litigation About Them* at 20 (Mar. 2022), https://tinyurl.com/mvx8m4kn (adapted).

**Masimo's Argument: Proposed Instruction No. 6A**

Masimo's proposed instruction adheres to the exact language of the Sedona Conference Commentary on Protecting Trade Secrets in Litigation About Them, at Guideline No. 8. Apple's proposal purports to be based on the same source, but bears little resemblance to the model instruction. The model instruction reads as follows:

> This action involves allegations that certain materials are subject to protection as trade secrets. To protect this information from public disclosure, the court has [describe protections]. The jury is reminded that [the party asserting the trade secret] bears the burden of proving all elements of its claim for misappropriation of trade secrets, as explained in instruction number [insert]. When evaluating whether [the party asserting the trade secret] has satisfied this burden, the jury is not permitted to take into account, or consider in any way, the fact that the court [describe protections].

*Id.* The article explains that this instruction "makes the jury aware that the restrictions themselves are not to be considered when determining whether the party asserting the trade secret has satisfied its burden to establish the existence of the trade secrets at issue." *Id.*

Instead of focusing on Court procedures generally, or closing the courtroom specifically, Apple proposes a confusing instruction regarding the jury's role in deciding trade secret protection ("while the issue of whether this information is actually subject to protection as trade secrets is being decided by you"). Apple's proposed language also unfairly suggests trade secret protection does not, or is unlikely to, exist. For example, "whether this information is *actually subject to protection* as trade secrets," "that any information *actually qualifies* as a trade secret," "whether any information *actually qualifies as a trade secret*," if "the alleged trade secrets *were in fact* trade secrets," and "that any information in the document is *actually confidential*." Apple's attempt to

-45-

1  modify this instruction to bias the jury is inappropriate, particularly when other
2  instructions address those issues.

3      Apple's proposal also adds misleading language about confidentiality
4  designations on documents ("You also may see documents that include confidentiality
5  stamps at the bottom of the page that the attorneys to this case have added.").  This
6  language may mislead the jury because many of the parties' documents include
7  confidentiality designations in the ordinary course of business that were ***not*** added by
8  the attorneys.

9      Apple's proposal also adds repeated admonitions for the jury not to consider the
10  Court's procedures.  Apple's repetitious language is unnecessary and risks biasing the
11  jury against Masimo.  A single admonition is sufficient to instruct the jury on this point.
12  The Court should reject Apple's proposal.

## APPLE'S PROPOSED INSTRUCTION NO. 6B[19]

### Court Procedures Are Not Evidence

This action involves allegations that certain information is subject to protection as trade secrets.  To protect this information from public disclosure while the issue of whether this information is actually subject to protection as trade secrets is being decided by you, the Court has at times, for example, sealed the courtroom and limited the ability for the attorneys and witnesses to say certain details in front of the public.  You also may have seen documents that include confidentiality stamps at the bottom of the page that the attorneys to this case have added.

You should make no inference from these measures that any information actually qualifies as a trade secret as Plaintiffs contend.  Nor should you make any inference from my sealing the courtroom or permitting any other measures that the Court has any opinion on whether any information actually qualifies as a trade secret.  These precautions are standard practice in a case such as this and are taken in order to preserve the possibility that the information qualifies as a trade secret, which will be for you to decide.

As I will instruct you, Masimo and Cercacor bear the burden of proving all elements of their claim for misappropriation of trade secrets, including that the alleged trade secrets were in fact trade secrets.  When evaluating whether Masimo and Cercacor have satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court occasionally sealed the courtroom from the public or took other precautions to prevent public access to certain information.  While the attorneys to this case have added confidentiality stamps to the bottom of certain documents, you should make no inference from that stamp that any information in the document is actually confidential.

---

[19] **Authority:** The Sedona Conference, *Commentary on Protecting Trade Secrets in Litigation About Them*, 23 Sedona Conf. J. 741, 788-789 (2022).

**Apple's Position: Proposed Instruction No. 6B**

This instruction is designed to minimize any risk of unfair prejudice arising from the Court's treatment of Plaintiffs' alleged trade secrets as highly confidential through measures visible to the jury (e.g., sealing the courtroom). Since such orders will come from the Court, "restrictions like sealing the courtroom could send a message to the jury that the information at issue is a trade secret, even though that determination may be in the jury's hands." The Sedona Conference, *Commentary on Protecting Trade Secrets in Litigation About Them*, 23 Sedona Conf. J. 741, 787 (2022). Commentaries on the management of trade secret litigation recognize the risk "that the jury may draw" "improper inferences" from court orders regarding confidentiality. *Id.* at 788-799. Apple's Proposed Instruction No. 6B is adapted from the model instruction proposed by the trade secrets working group of the Sedona Conference. *See id.*

Plaintiffs agree that this type of instruction is necessary, but Apple objects to their formulation because it does not go far enough. It describes only sealing the courtroom and not other measures taken by this Court to ensure confidentiality that may have the unintended effect of priming the jury to think that the Court has made a substantive legal determination about the validity of Plaintiffs' claims. Plaintiffs provide no clear explanation for why this Court's instruction should be limited to the Sedona Conference's language; even the model instruction itself assumes that the parties will fill in case-specific details. Apple's proposed instruction, for example, adds several examples of the kinds of confidentiality procedures that the jury may not consider— information that the instruction itself calls for ("[describe protections]"). Apple's proposed instruction also describes more specifically how the jury should understand Plaintiffs' burden of proof in light of the confidentiality procedures. Plaintiffs do not dispute that Apple's explanation is accurate and covers the same basic topics that are already addressed by the model.

# JOINTLY PROPOSED INSTRUCTION NO. 7[20]

## Taking Notes

You may have taken notes during the trial to help you remember the evidence. Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

When you leave, your notes should be left in the jury room.  No one will read your notes.

---

[20] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.18 (adapted).

# JOINTLY PROPOSED INSTRUCTION NO. 8[21]

## Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. When I overruled the objection, the question may have been answered, or the exhibit received. When I sustained the objection, the question was not answered, and the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

I may have ordered that some evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[21] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.13.

**JOINTLY PROPOSED INSTRUCTION NO. 9**[22]

**Depositions**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and the lawyers for each party may ask questions.  The questions and answers are recorded.  You should not speculate about the reason why a particular witness testified by deposition rather than in court.  Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony in the same way as if the witness had been present to testify.

---

[22] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.4 (adapted).

# MASIMO'S PROPOSED INSTRUCTION NO. 10A[23]

## Charts, Summaries, and Demonstratives

Certain charts, summaries, and other demonstratives have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Some charts and summaries have been admitted into evidence. Others have been shown to you only as demonstratives.

Whether admitted as evidence, or used to illustrate information brought out in the trial, charts and summaries are only as good as the underlying evidence that supports them.

You should, therefore, give them only such weight as you think the underlying evidence deserves. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[23] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 2.14, 2.15 (adapted); Jury Instruction No. 10, *Broadcom Corp. v. Emulex Corp.*, No. SACV 09-1058 (JVS) (C.D. Cal. Oct. 6, 2011).

**Masimo's Argument: Proposed Instruction No. 10A**

Masimo proposes combining two largely duplicative model instructions into one instruction.  *See* Ninth Circuit Model Instructions § 2.14 (Charts and Summaries Not Received in Evidence) and § 2.15 (Charts and Summaries Received in Evidence).  Apple proposes separate instructions with all the duplications.

The model provides very similar instructions on charts and summaries that do not meaningfully differ based on whether they are admitted into evidence.  The parties agreed to amend the model language for charts and summaries not in evidence to state: "If they [the charts or summaries] do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence."  Masimo's proposal will help the jury by reducing the number of instructions and combining two instructions that address the same topic in the same way.

Apple proposes an additional instruction for charts and summaries not received into evidence: "They [the charts or summaries] are not themselves evidence or proof of any facts."  Apple's additional language is unnecessary and potentially confusing.  Any document or exhibit not received into evidence is not evidence.

If the Court believes it would be helpful to have a specific instruction on the difference between demonstrative exhibits (including non-documentary physical exhibits) and evidence, it should not be given in the context of an instruction about charts and summaries, because they are not the only potential type of non-evidentiary demonstrative exhibit.

## APPLE'S PROPOSED INSTRUCTION NO. 10B[24]

### Charts, Summaries, and Demonstratives Not In Evidence

Certain charts, summaries, and other demonstratives not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts, summaries, and other demonstratives are only as good as the underlying evidence that supports them. They are not themselves evidence or proof of any facts. You should, therefore, give them only such weight as you think the underlying evidence deserves. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[24] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 2.14 (adapted); Jury Instruction No. 10, *Broadcom Corp. v. Emulex Corp.*, No. SACV 09-1058 (JVS) (C.D. Cal. Oct. 6, 2011).

1

**Apple's Position: Proposed Instruction No. 10B**

2     The parties agree that the jury should be instructed about how to assess charts,

3 summaries, and demonstratives not in evidence, as well as charts and summaries

4 admitted into evidence under Fed. R. Evid. 1006.   However, Apple believes that

5 combining these two separate points into a single instruction will confuse the jury.

6 Accordingly, Apple objects to Plaintiffs' proposal and asks that the Court deliver two

7 separate instructions, as is contemplated by the Ninth Circuit's model instructions.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPLE'S PROPOSED INSTRUCTION NO. 11[25]

## Charts and Summaries In Evidence

Certain other charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[25] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 2.14.

#:143851

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Apple's Position: Proposed Instruction No. 11**

As noted, Apple believes that delivering a separate instruction on charts and summaries admitted into evidence will be less confusing to the jury than combining this instruction with the instruction on charts, summaries, and demonstratives *not* in evidence. *See supra* Apple's Position: Proposed Instruction No. 10B.

1

**Masimo's Objections to Apple's Proposed Instruction No. 11**

2      The subject matter of Apple's Proposed Instruction No. 11 is fully addressed in

3  Masimo's Proposed Instruction No. 10A.   As discussed above, Masimo's proposal

4  avoids duplication and juror confusion.  If appropriate, the Court can provide a separate

5  instruction regarding the difference between demonstrative exhibits and evidence.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINTLY PROPOSED INSTRUCTION NO. 12[26]

### Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these

---

[26] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.14; Jury Instructions, *B12 Consulting, LLC v. UST Global, Inc.*, SACV 20-1773-JVS (Aug. 25, 2022).

1 | differences, but do not decide that testimony is untrue just because it differs from other
2 | testimony.

3 |     However, if you decide that a witness has deliberately testified untruthfully about
4 | something important, you may choose not to believe anything that witness said.  On the
5 | other hand, if you think the witness testified untruthfully about some things but told the
6 | truth about others, you may accept the part you think is true and ignore the rest.

7 |     The weight of the evidence as to a fact does not necessarily depend on the number
8 | of witnesses who testify.  What is important is how believable the witnesses were, and
9 | how much weight you think their testimony deserves.

## JOINTLY PROPOSED INSTRUCTION NO. 13[27]

### Expert Testimony

You have heard testimony from [*list of experts who testified*] who testified to opinions and the reasons for those opinions.  This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

---

[27] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13.

**MASIMO'S PROPOSED INSTRUCTION NO. 14A**

**(Offered in the Alternative)**

**Party Having Power to Produce Better Evidence**

If a party provided weaker evidence when it actually possessed and could have provided stronger evidence, you may distrust the weaker evidence.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Masimo's Objections to Apple's Proposed Instruction No. 14B

The Court should not provide an instruction on this issue for multiple reasons. Masimo proposed an instruction on this issue in case the Court decides an instruction is necessary.

First, Apple's proposed instruction is based on California procedural law (a California Rule of Evidence), not California substantive law. *See* CACI No. 203 Sources and Authority (citing Cal. Evid. Code § 412). The Federal Rules of Evidence render this instruction irrelevant under *Erie* and its progeny. *See Internet Brands Inc. v. Ultimatecoupons.com, LLC*, 2013 WL 5575042, at *3 (C.D. Cal. Oct. 7, 2013), *amended*, 2013 WL 6076513 (C.D. Cal. Oct. 15, 2013) ("the competence of evidence in diversity cases is controlled by the Federal Rules of Evidence, not California state law").

Second, Apple's proposed instruction would be inappropriate even under California procedural law. The CACI Directions for Use warn that "[a]n instruction on failure to produce evidence ***should not be given*** if there is no evidence that the party producing inferior evidence had the power to produce superior evidence." (emphasis added). Neither side has disclosed or identified any evidence that it intends to introduce at trial that would be "inferior" to evidence it "had the power to produce[.]"

During the meet-and-confer process, Apple asserted that a hypothetical pre-litigation document that used the exact wording in Masimo's 2019.210 disclosure might have constituted stronger evidence of possession of the trade secrets. That is irrelevant because this instruction "relates only to the credibility of the evidence which ***actually has been produced***." *Hansen v. Warco Steel Corp.*, 237 Cal. App. 2d 870, 877 (1965) (emphasis added). Just because a party can imagine stronger evidence does not mean the actual evidence should be distrusted. In theory, it might have been stronger evidence of Apple's misappropriation if Tim Cook had sent Joe Kiani an email admitting to Apple's misappropriation. But hypothetical non-existent evidence is not a basis for giving this instruction. Indeed, CACI confirms this instruction should not be given

where there is "nothing in the record" of the trial "to which that instruction could apply." *Id.* at 876.

Apple argues its instruction is appropriate because Masimo will only present oral testimony to establish its ownership of the trade secrets and that it is "probative that Plaintiffs have not identified any single document showing that they possessed any of the alleged trade secrets." That is false. Masimo *will* corroborate the oral testimony of its employees with numerous documents showing Masimo possessed the trade secrets, including contemporaneous employee laboratory notebooks and emails. Apple never identified any documents that would have provided stronger evidence of Masimo's possession but that Masimo indicated it will not rely on at trial.

Apple's cited cases do not support its position. In *Largey v. Intrastate Radiotelephone, Inc.*, the court provided a best evidence instruction when a party offered oral testimony on the date a stockholder meeting occurred, despite the fact that corporate records documented the actual date of the stockholder meeting. 136 Cal. App. 3d 660, 672 (1982). Similarly, in *Mattei v. Corp. Mgmt. Sols., Inc.*, the court critiqued a party for providing indirect evidence of the terms of a contract without producing the actual contract at issue. 52 Cal. App. 5th 116, 126 n.9 (2020). Here, Apple has not identified any records that *actually exist* on which Masimo is not relying.

Apple further argues that "Apple need not identify documents that Plaintiffs declined to produce *in discovery* for CACI 203 to be appropriate." (Emphasis added.) That argument makes no sense because this instruction is not about alleged discovery violations. As discussed above, this instruction "relates only to the credibility of the evidence which *actually has been produced*." *Hansen*, 237 Cal. App. 2d at 877 (emphasis added). Apple ignores that the CACI 203 instructions for use, and the cases on which it is based (including *Hansen*), use the word "produce" to mean produce at trial. CACI 203 ("[a]n instruction on failure to produce evidence should not be given if there is no evidence that the party producing inferior evidence *had the power to produce*

*superior evidence*.") (emphasis added).  Apple has presented no evidence that Masimo could have produced superior evidence, either in discovery or at trial.

Apple attempts to distract from the CACI instructions for use by pointing to CACI 204, which addresses "willful suppression of evidence."  This observation supports Masimo.  The fact that CACI provides a separate instruction for the willful suppression of evidence confirms that CACI 203 is not addressing alleged discovery violations.

Apple also argues that the CACI instructions for use "do not clearly address the situation here—i.e., where written evidence would be more probative than oral testimony."  They most certainly do and, as set forth above, this instruction does not apply unless there is evidence that Masimo could have, but chose not to, present superior evidence.  Again, Apple has not identified any additional evidence, written or otherwise, that Masimo chose not to introduce.

Finally, Apple tacitly admits CACI 203 is a California procedural rule that does not apply, but argues that the Court should still give this instructions because federal courts recognize a similar doctrine.  In support, Apple cites *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. NLRB*, 459 F.2d 1329, 1338 (D.C. Cir. 1972).  In that case, the court applied the "adverse inference rule" when a party engaged in the "naked, willful suppression of the documents which could conclusively prove its guilt." *Id.* at 1332.  Suppressing evidence of guilt would be the opposite of failing to come forward with superior evidence supporting Masimo's claim.  Moreover, Apple has identified no such behavior by Masimo.  The court should reject any suggestion that Apple could be entitled to an adverse inference based on asserting Masimo could have hypothetically generated other documents. *See Chrysler v. City of West Covina*, 1998 WL 845795, at *4 (9th Cir.1998) (rejecting an adverse inference jury instruction because "[a]n essential condition of the application of the [adverse inference] rule is that the evidence be *under the adverse party's control* and *reasonably available to him*." (emphasis added)).

1    　　　If the Court decides to give an instruction on this issue, Masimo proposes a

2    shorter, more accurate version.  Masimo's proposal clarifies that the party must have

3    "actually possessed and could have provided stronger evidence" before the jury can

4    distrust "weaker evidence."

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPLE'S PROPOSED INSTRUCTION NO. 14B[28]

### Party Having Power to Produce Better Evidence

You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

---

[28]    **Authority:** CACI 203.

1

### Apple's Position: Proposed Instruction No. 14B

2      Apple anticipates that there will be several areas of Plaintiffs' case that would

3   justify this instruction's delivery to the jury.  For example, Apple expects that Plaintiffs

4   will rely largely on the testimony of their employees to establish ownership.  While oral

5   testimony is not insufficient as a matter of law under the possession element, it is

6   nonetheless probative that Plaintiffs have not identified any single document showing

7   that they possessed any of the alleged trade secrets in their entirety.  *See* Dkt. 1439 at 10

8   (permitting Apple to cross examine Plaintiffs' witnesses about whether any pre-

9   litigation documentation exists).  Plaintiffs' failure to identify any such document

10  provides a reason to cast doubt on the testimony of Plaintiffs' witnesses that they

11  possessed the alleged trade secret information at the relevant time.

12      Apple's proposed use of CACI 203 is consistent with the case law CACI cites

13  concerning when this instruction is appropriately delivered.   *Largey v. Intrastate*

14  *Radiotelephone, Inc.* is on point; it holds that it is appropriate to deliver CACI 203 when,

15  as here, an employee's testimony is uncorroborated by corporate records.  136 Cal. App.

16  3d 660, 672 (1982).  In *Largey*, employee testimony standing alone was deemed "weaker

17  and less satisfactory evidence."  *Id.*; *see also, e.g.*, *Mattei v. Corp. Mgmt. Sols., Inc.*, 52

18  Cal. App. 5th 116, 126 n.9 (2020) ("We view [defendant's] failure to produce [a key]

19  contract … or any sample contract from the same time period with skepticism[.]")

20      Contrary to Plaintiffs' suggestion, Apple need not identify documents that

21  Plaintiffs declined to produce in discovery for CACI 203 to be appropriate.  Indeed,

22  CACI's Directions for Use state that CACI 203 is *not* intended for situations involving

23  "willful suppression of evidence," which is addressed by CACI 204.  *See also* Fed. R.

24  Civ. P. 37(c)(1)(B) (authorizing an adverse inference instruction for a party's failure to

25  disclose discoverable information).  And the cases cited in the Directions for Use for the

26  proposition that the instruction is not appropriate if "there is no evidence that the party

27  producing inferior evidence had the power to produce superior evidence" do not clearly

28

1   address the situation here—i.e., where written evidence would be more probative than
2   oral testimony.

3       The only such case Plaintiffs cite, *Hansen v. Warco Steel Corp.*, does not support
4   their position.  237 Cal. App. 2d 870 (1965).  While Plaintiffs rely on a stray sentence
5   from the opinion (i.e., the instruction "relates only to the credibility of the evidence
6   which actually has been produced"), the instruction was clearly inappropriate in *Hansen*
7   primarily because it was "giv[en] … as an abstract statement of law, and unconnected
8   with any [supposedly weaker] evidence in the case."  *Id.* at 877.  Here, Apple has
9   identified at least one piece of "weaker" evidence—Plaintiffs' employees' oral
10  testimony about the alleged trade secrets.

11      Nor could either piece of supposedly stronger evidence in *Hansen* logically
12  support the instruction's inference.  For example, the party opposing the instruction had
13  declined to call a particular doctor as a witness, but either party could have called him;
14  the testimony of the medical experts who *were* called was "not necessarily any weaker
15  or less satisfactory."  *Id.*  Nor was the instruction justified by the opposing party's failure
16  to proffer a document containing that doctor's opinion, since the doctor's written
17  treatment records were already in evidence and the document in question had been
18  excluded as hearsay.  *Id.*

19      The Court should also reject Plaintiffs' argument that, under the *Erie* doctrine,
20  CACI 203 does not apply in federal court.   The principle that Apple's proposed
21  instruction articulates is recognized in multiple jurisdictions and is derived from the
22  "commonsense observation that in most cases a party will introduce his most favorable
23  evidence without being compelled by legal process to do so."  *Int'l Union, United Auto.,*
24  *Aerospace & Agr. Implement Workers of Am. (UAW) v. NLRB*, 459 F.2d 1329, 1338
25  (D.C. Cir. 1972).  Indeed, the invitation to draw an adverse inference from a party's
26  failure to produce relevant evidence within its control "can be traced as far back as
27  1722," has been included in leading evidence treatises, and has been approved by the

28

1
2

U.S. Supreme Court.  *Id.* at 1335-1336 (quoting 2 J. Wigmore, Evidence § 285 (3d ed. 1940) and *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939)).

3
4
5
6
7
8

      Plaintiffs' only case cited in support of its *Erie* argument is inapposite.  *Internet Brands Inc. v. Ultimatecoupons.com, LLC* deals with the narrow issue of whether an attorneys' personal testimony is admissible in support of a motion for fees; it has nothing to do with CACI 203 or the related provision of California evidence law.  2013 WL 5575042, at *3 (C.D. Cal. Oct. 7, 2013).  That this is the best authority Plaintiffs can muster shows how weak their position is.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MASIMO'S PROPOSED INSTRUCTION NO. 15A[29]

### Misappropriation of Trade Secrets – Introduction

Masimo and Cercacor claim that they possessed the Asserted Trade Secrets listed in your Juror Notebooks.

Masimo and Cercacor claim that these Asserted Trade Secrets are protectable and that Apple misappropriated them.  "Misappropriation" means the improper acquisition, use, or disclosure of trade secrets.

Masimo and Cercacor also claim that Apple's misappropriation caused them harm and caused Apple to be unjustly enriched.

Apple denies the trade secret misappropriation claims.  Apple contends that the information is not protectable as trade secrets and that Apple did not misappropriate this information.  Apple further contends that Masimo and Cercacor were not harmed and that Apple was not unjustly enriched.

---

[29] **Authority:**  CACI No. 4400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Masimo's Argument: Proposed Instruction No. 15A**

Masimo's proposed instruction is based on CACI No. 4400.  Masimo modified the instruction to reflect the Court's holding that a trade secret plaintiff need only show possession, not ownership.  Dkt. 1283 at 3–4.  Masimo's proposal succinctly presents the parties' contentions regarding Masimo's claims of trade secret misappropriation, and only those claims.  Other claims and affirmative defenses are addressed in other instructions.

Apple argues that Masimo omits the model instruction's language that Masimo must prove its asserted trade secrets are "trade secrets" and instead stated that Masimo must prove their asserted trade secrets are "protected under California law."  To the extent Apple's objection is to the language "under California law," Masimo removed that language.  Masimo's minor revision to the model language avoids redundantly instructing the jury that Masimo must show its "Asserted **Trade Secrets**" are "**trade secrets.**"  Masimo provided a more helpful instruction that Masimo must show its "Asserted Trade Secrets" are "protectable."

Apple additionally argues that Masimo's proposed instruction provides insufficient information about the scope of Apple's denials to Masimo's claims.  But CACI 4400 contemplates identifying only the claims that the defendant denies.  *See* CACI 4400 ("[Name of defendant] denies [insert denial of any of the above claims]").  It does not suggest the jury instruction should recite all the reasons that Apple denies the elements of Masimo's claims.

Apple also argues that Masimo's instructions fail to list Apple's affirmative defenses.  But as explained further below, the affirmative defenses Apple included in its proposed instructions are addressed elsewhere in the jury instruction or involve affirmative defenses that the Court has already rejected.

Finally, Apple argues that Masimo did not preserve an "acquisition" theory.  Masimo has preserved this theory and an acquisition instruction is appropriate.  *See*

Masimo's argument regarding Proposed Instruction No. 25 (explaining the basis for Masimo's theory).

Apple's proposed instruction omits aspects of Masimo's claim and includes extraneous instructions.

First, Apple's proposed instruction omits that Masimo's claim for trade secret misappropriation includes misappropriation by acquisition. *See* Masimo's argument regarding Proposed Instruction No. 25 (explaining the basis for Masimo's theory).

Second, Apple's proposed instruction deviates from the CACI model and misstates the law on misappropriation by use or disclosure. Apple proposes that "'Misappropriation' means the use or disclosure of a trade secret knowing or with reason to know that ***it was improperly acquired***." (Emphasis added.) But the statute provides that misappropriation by use or disclosure can occur if a person:

> (A)   Used improper means to acquire knowledge of the trade secret; or
>
> (B)   At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>
> > …
> >
> > (ii)   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> >
> > (iii)   Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. … ."

Cal Civ. Code § 3426.1(b)(2). Masimo will present evidence in support of all of the foregoing theories of misappropriation at trial. Thus, Apple's proposed instruction omits statutory provisions applicable to this case.

Third, Apple's proposal repeats affirmative defenses that are addressed in other instructions. This is unhelpful, confusing, and inappropriate in an instruction that introduces the jury to the misappropriation claim. It is more than sufficient to recite Apple's contentions denying the elements of Masimo's claim and then include separate jury instructions to address Apple's defenses (which Masimo denies). It is not

1   appropriate to repeat Apple's defenses here.   Apple's proposal is particularly
2   inappropriate because it includes defenses that Apple recognizes it cannot present at
3   trial.  This Court rejected Apple's "readily ascertainable" defense.  Dkt. 1284 at 4.  And,
4   as addressed in connection with Proposed Instruction No. 35, Apple's unclean hands
5   should not be tried to the jury.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPLE'S PROPOSED INSTRUCTION NO. 15B[30]

## Misappropriation of Trade Secrets—Introduction

Masimo and Cercacor claim that they owned the 12 alleged trade secrets listed on Exhibit A and in your juror notebooks. Masimo and Cercacor claim that the information described in Exhibit A meets the legal definition of trade secrets, and that Apple misappropriated them.

"Misappropriation" means the use or disclosure of a trade secret knowing or with reason to know that it was improperly acquired.

Masimo and Cercacor also claim that Apple's alleged misappropriation caused Apple to be unjustly enriched.[31]

Apple denies that any of the alleged trade secrets were protectable trade secrets because they were generally known to people in the industry, denies that it misappropriated any of them rather than independently developed them, and denies that any alleged misappropriation caused any unjust enrichment.[32]

Apple also claims that the alleged trade secrets were readily ascertainable through proper means, that Masimo and Cercacor waited too long after the alleged misappropriation to file this suit, and that Masimo and Cercacor are not entitled to obtain relief against Apple because they have "unclean hands."

---

[30] **Authority:** CACI 4400 (adapted).

[31] As detailed in Apple's March 17, 2023 memorandum, Plaintiffs' untimely disclosure of their lost profits theory on March 15, 2023 is insufficient to support a request for lost on profits. Apple does not believe Plaintiffs have properly disclosed an admissible lost profits theory. To the extent the Court disagrees, and Plaintiffs are permitted to seek lost profits damages, the language "Masimo and Cercacor to experience lost profits and" should be inserted before the phrase "Apple to be unjustly enriched."

[32] To the extent the Court permits Plaintiffs to seek lost profits damages, the language "lost profits or" should be inserted before the phrase "unjust enrichment."

**Apple's Position: Proposed Instruction No. 15B**

Apple's proposed instruction is a straightforward implementation of CACI 4400's modular "introduc[tion] … to the issues involved in a case involving the [alleged] misappropriation of trade secrets," Directions for Use, CACI 4400, and it should be given in full.  While no model instruction constitutes binding law, the California Rules of Court "strongly encourage[]" CACI's use because it provides "standardized instructions that accurately state the law in a way that is understandable to the average juror." Cal. R. Ct. 2.1050(a), (e).  Apple also proposes attaching an Exhibit A to the jury instructions, providing the jury with the final numbered list of all Plaintiffs' remaining alleged trade secrets.

Plaintiffs fault Apple for defining misappropriation using a layperson-friendly summary of the standard (i.e., "the use or disclosure of a trade secret knowing or with reason to know that it was improperly acquired").  To be clear, this articulation fairly summarizes Plaintiffs' allegations in this case—they contend that Apple improperly acquired the information through Lamego and/or O'Reilly and then used or disclosed it without Masimo or Cercacor's consent.  Plaintiffs have not explained why this summary is inaccurate or otherwise provided an evidentiary foundation for the other theories of misappropriation mentioned in their argument section.  And as discussed above, to the extent this Court concludes that the jury should not be instructed on one or more of Apple's affirmative defenses, it can simply delete the relevant language from Apple's proposed instruction.  *See supra* Apple's Position:  Proposed Instruction 2B.

Plaintiffs' competing instruction is improper for two independent reasons.  First, Plaintiffs fail to provide the information called for in CACI 4400, leaving their proposed instruction too vague to assist the jury.  For example, Plaintiffs omit the model instruction's language explaining that they must prove, in the first instance, that their alleged trade secrets are in fact "trade secrets" and instead simply state generically that they must prove their purported secrets are "protectable."  CACI 4400 also provides that the instruction should list the defendants' denials "of any of the above claims" and

affirmative defenses.  However, Plaintiffs' proposed instruction provides insufficient information about the scope of Apple's denials, and it fails to list any of Apple's affirmative defenses in the space provided by the model.

Second, Plaintiffs' use of "acquisition" in the definition of "misappropriation" improperly previews a theory of liability for which there is neither an evidentiary foundation nor a preserved theory of liability.  *See infra* Apple's Objection to Proposed Instruction No. 25 (misappropriation by acquisition).  CACI 4400's Directions for Use expressly state that the Court should "not select 'acquiring' in the second paragraph unless there is evidence that the acquisition resulted in damages, other than damages from related disclosure or use."

## MASIMO'S PROPOSED INSTRUCTION NO. 16A[33]

### Misappropriation of Trade Secrets – Essential Factual Elements

Masimo and Cercacor claim that Apple has misappropriated the Asserted Trade Secrets.  To succeed on this claim, Masimo and Cercacor must prove all of the following with respect to one or more of the Asserted Trade Secrets:

1. Masimo and Cercacor developed or otherwise were in lawful possession of the Asserted Trade Secret;

2. The Asserted Trade Secret was a trade secret at the time of the misappropriation;

3. Apple improperly acquired, used, or disclosed the Asserted Trade Secret.

---

[33] **Authority:**  Cal. Civ. Code § 3426.1; *see also* Cal. Civ. Code § 3426.3(b) ("If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.").

1

**Masimo's Argument: Proposed Instruction No. 16A**

2      Masimo's proposed instruction deviates from the CACI model instruction

3  because the model instruction is inconsistent with the statute.  Masimo's proposal tracks

4  the statute and reflects the three requirements for establishing trade secret

5  misappropriation liability: possession, protectability, and improper acquisition, use, or

6  disclosure.  Cal. Civ. Code. § 3426.1(a), (b), (d).

7      Apple's proposed instruction (and the CACI instruction) adds two requirements

8  not in the statute—damages and causation.  Causation and damages are not required to

9  prove liability for trade secret misappropriation.  *See* Cal. Civ. Code § 3426.1(a), (b),

10 (d).  The statute refutes any assertion that proving damages (much less causation) is

11 required to establish liability.  CUTSA expressly provides for equitable recovery for

12 misappropriation even where a plaintiff fails to prove it suffered damages and fails to

13 prove the defendant was unjustly enriched:

14      If ***neither damages nor unjust enrichment caused by misappropriation***

15      ***are provable***, the court may order payment of a reasonable royalty for no

16      longer than the period of time the use could have been prohibited.

17 Cal. Civ. Code § 3426.3(b) (emphasis added).  Moreover, the parties' competing

18 proposed instructions regarding remedies for misappropriation fully address the issues

19 of harm and causation.  *See* CACI No. 4409.

20      The Court should depart from CACI because it is inconsistent with the statute.

21 CACI acknowledges it is "not a primary source of the law" but only a "secondary

22 source."  Guide for Using Judicial Council of California Civil Jury Instructions.  The

23 Guide cites the implementing California Rules of Court, which recognize that where, as

24 here, the CACI instructions conflict with the clear language of the statute, the language

25 of the statute controls.  The California Rules of Court state:

26      The Judicial Council endorses these instructions for use and makes every

27      effort to ensure that they accurately state existing law. The articulation and

28

1    interpretation of California law, however, remains within the purview of
2    the Legislature and the courts of review.
3    Rule 2.1050(b).

4        Another district court in the Ninth Circuit recognized that it is appropriate to
5    "modify the CACI instruction in order to better harmonize the facts in this case to the
6    elements of the claim" particularly where the court's modification "mirrors the language
7    of the [statute] itself." *Quinn v. Fresno Cnty. Sheriff*, No. 1:10-CV-01617 LJO, 2012
8    WL 6561562, at *4 (E.D. Cal. Dec. 14, 2012), *on reconsideration,* No. 1:10-CV-01617
9    LJO, 2013 WL 898136 (E.D. Cal. Mar. 8, 2013).

10       The CACI instruction impermissibly introduces elements that are not part of
11   proving trade secret misappropriation.   Masimo recognizes that California courts,
12   including this Court in *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 11-1062, have
13   relied on CACI No. 4401 in reciting five elements for trade secret misappropriation. The
14   parties in those cases may not have disputed using the CACI.   Regardless, these cases
15   do not justify departing from the statute.

16       Apple's proposal repeats subject matter that is fully addressed in other proposed
17   instructions, including regarding the burden of proof and the verdict form.   Moreover,
18   Apple's proposed instruction is one-sided because it uses numerous phrases and terms
19   that favor Apple's position, rather than neutral or balanced terms.  For example, Apple's
20   proposal includes: "If you determine that Masimo and Cercacor have not proved one or
21   more of the essential elements . . . ," "If, and only if, you unanimously determine that
22   Masimo and Cercacor have proved all five of the essential elements . . . ," and "However,
23   if you determine that Masimo and Cercacor have not proved all five elements . . . ."

24       Apple argues that no authority supports instructing the jury "on three of the five
25   elements of CUTSA liability where . . . the reasonable royalty decision will be made . .
26   . by the judge."  First, the statute itself supports instructing the jury that there are only
27   three elements, and Masimo need not prove damages or causation to establish liability.

28

-80-

1    Moreover, Masimo's instruction on lost profits (No. 37) instructs the jury on causation

2    and harm.  Liability requires proving only the three elements Masimo in this instruction.

3            Indeed, Apple does not dispute that the statute expressly provides for a finding of

4    liability and reasonable royalty damages even where causation and harm are unprovable.

5    Thus, the statute expressly allows for a finding of liability based on the three elements

6    in Masimo's instruction.   Apple's proposed instruction, along with its cumbersome

7    verdict form, could mislead the jury into denying liability even where Masimo may be

8    entitled to a reasonable royalty.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPLE'S PROPOSED INSTRUCTION NO. 16B[34]

### Misappropriation of Trade Secrets—Essential Factual Elements

Masimo and Cercacor claim that Apple has misappropriated the alleged trade secrets. To succeed on this claim with respect to any particular alleged trade secret, Masimo and Cercacor must prove all the following essential elements:

1.  That Masimo or Cercacor developed or otherwise were in lawful possession of the alleged trade secret;

2.  That the alleged trade secret was a trade secret at the time of the alleged misappropriation;

3.  That Apple improperly used or disclosed the alleged trade secret;

4.  That Apple was unjustly enriched; and

5.  That Apple's use or disclosure of the alleged trade secret was a substantial factor in causing Apple to be unjustly enriched.[35]

You must consider each one of the 12 alleged trade secrets individually. If you determine that Masimo and Cercacor have not proved one or more of the essential elements with respect to a particular alleged trade secret, you should indicate as much on the verdict form and move on to the next alleged trade secret. If, and only if, you unanimously determine that Masimo and Cercacor have proved all five of the essential elements and that Apple has not proven any of its defenses with respect to at least one

---

[34] **Authority:** CACI 4401 (adapted); Instruction No. 26, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.); *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018); Order Re Jury Instruction on Damages Based Only On Acquisition, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 18, 2018) Dkt. 2495.

[35] As detailed in Apple's March 17, 2023 memorandum, Plaintiffs' untimely disclosure of their lost profits theory on March 15, 2023 is insufficient to support a request for lost on profits. Apple does not believe Plaintiffs have properly disclosed an admissible lost profits theory. To the extent the Court disagrees and Plaintiffs are permitted to seek lost profits damages, reference to Plaintiffs' lost profits should be added to numbers 4 and 5.

of the alleged trade secrets, then you must find Apple liable on this claim and proceed to consider the amount of damages.  However, if you determine that Masimo and Cercacor have not proved all five elements or that Apple has proven at least one of its defenses with respect to any single alleged trade secret, then you must find that Apple is not liable for misappropriation, and you may not include that alleged trade secret in any calculation of damages.

**Apple's Position: Proposed Instruction No. 16B**

Apple's proposed instruction implements CACI 4401 by listing all five required elements to establish liability for misappropriation of trade secrets under CUTSA.  The Court previously used a similar instruction including the same five elements to charge a jury on misappropriation of trade secrets.  *See, e.g.*, Instruction No. 26, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.), Dkt. 655 at 32.  California courts have recited the same five elements for CUTSA liability.  *See, e.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018).

Plaintiffs take the position that this Court should diverge from CACI on this instruction (and any other instruction that happens to be unfavorable to their position) because it purportedly conflicts with the text of the CUTSA.  But again, they do not identify any decision from any California federal or state court that has taken this approach—even though the relevant CUTSA language has been in place for decades. While no model instruction constitutes binding law, the California Rules of Court "strongly encourage[]" CACI's use because they provide "standardized instructions that accurately state the law in a way that is understandable to the average juror."  Cal. R. Ct. 2.1050(a), (e).  Plaintiffs' suggestion that a "statewide, broad-based task force consisting of court of appeal justices, trial judges, attorneys, academics, and lay people," all misread the plain text of the statute is not credible.  *See* Preface, Guide for Using Judicial Council of California Civil Jury Instructions.  Plaintiffs' only citation is to *Quinn v. Fresno Cnty. Sheriff*, a civil rights case that extensively relies on CACI instructions; the quoted sentence merely notes that "the [c]ourt elected to modify the CACI instruction in order to better harmonize the facts in this case to the elements of the claim."  2012 WL 6561562, at *4 (E.D. Cal. Dec. 14, 2012).  *Quinn* says nothing about disregarding the language of CACI because an instruction purportedly diverges from the language of the statute.

1    Plaintiffs' Proposed Instruction No. 15B, on the other hand, diverges from the
2    CACI model by wrongly omitting two of the five essential elements that they must prove
3    to establish liability and to recover damages on their claim for misappropriation of trade
4    secrets.  CUTSA provides that a plaintiff may be entitled to a reasonable royalty if the
5    jury determines that a defendant is liable for trade secret misappropriation but that the
6    misappropriation caused no (as relevant here) unjust enrichment.  Plaintiffs, however,
7    cite no authority suggesting that the jury should only be instructed on three of the five
8    elements of CUTSA liability where—as here—the reasonable royalty decision will be
9    made (if necessary) by the judge in a separate, post-trial proceeding.  As explained
10   further below, Plaintiffs lack *any* case law to support their position, which contradicts
11   numerous California cases.  *See infra* Apple's Position:  Proposed Instruction No. 33B.
12   Plaintiffs' position also rests on a misunderstanding about the purpose and availability
13   of reasonable royalties.  *See id.*; *see also infra* Apple's Position:  Objection to Plaintiffs'
14   Proposed Instruction No. 25.  Plaintiffs are also wrong to suggest that the remedies
15   instruction adequately addresses the elements of harm and causation; indeed, CACI
16   provides for a remedies instruction but still requires proof of causation and harm as
17   elements of liability.  *Compare* CACI 4401 *with* CACI 4409.

18   Notably, Apple's proposed verdict form asks the jury to make an element-by-
19   element determination on each alleged trade secret, meaning that it will be clear if the
20   jury concludes Plaintiffs have prevailed on elements 1-3 and not 4-5.  By contrast,
21   Plaintiffs' proposed verdict form provides no means of discerning for which (if any)
22   alleged trade secrets the jury awarded damages and which (if any) alleged trade secrets
23   should be submitted to a subsequent reasonable royalties proceeding.  *See* Apple's
24   Objections to Plaintiffs' Proposed Verdict Form.

25
26
27
28

## MASIMO'S PROPOSED INSTRUCTION NO. 17A[36]

### No Writing Required

Masimo and Cercacor must prove that they were in lawful possession of the Asserted Trade Secrets at the time of the alleged misappropriation. However, a trade secret plaintiff does not need to have written down the trade secret for the plaintiff to be in possession of that trade secret.

During the litigation, the law requires a trade secret plaintiff to provide the defendant with a written description of the trade secrets being asserted so that the defendant knows what it is accused of misappropriating.

The written description of the Asserted Trade Secrets at issue in this case is in your juror notebook.

---

[36] **Authority:** Dkt. No. 1283 at 3 ("Apple's argument that Masimo must possess a single document showing each trade secret has no basis in the case law."); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 941 (N.D. Cal. 2007) ("a unified description [of trade secrets] in a single integrated document ... is unnecessary"); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1518, 1521 (1997); Cal. Civ. Code § 3426.1(d).

**Masimo's Argument: Proposed Instruction No. 17A**

Neither party bases this instruction on a model.  But both agree some instruction is required concerning documentation of trade secrets.  Masimo's proposed instruction is based on this Court's holding that Masimo need not possess a single document showing each trade secret.  Dkt. No. 1283 at 4 (citing *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 941 (N.D. Cal. 2007) ("a unified description [of trade secrets] in a single integrated document ... is unnecessary")).  Moreover, it is well established that a trade secret need not be in writing.  *See Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1518, 1521 (1997).

Masimo's proposed instruction also informs the jury that the description of the asserted trade secrets in the juror notebook was a legally required document created for this litigation.  This is consistent with the Court's ruling on Masimo's motion *in limine*, which aims to prevent the jury from hearing about attorney involvement in preparing the case.  Dkt. 1439 at 8–10.

During the meet-and-confer process, Masimo modified its proposed instruction to include the possession requirement and state that the descriptions in Exhibit A to the Pretrial Conference Order were created "during" the litigation.

After reciting that Masimo need not have written down the trade secrets, Apple argues that, "[h]owever, in determining whether Masimo and Cercacor possessed the alleged trade secret, you may consider as relevant evidence whether Masimo and Cercacor had *any* written documentation of the trade secrets."  (Emphasis added.)  Apple's use of "however" and "any" written documentation unfairly suggests that Masimo lacks written documentation and that written documentation must be verbatim of the descriptions in Exhibit A.  Moreover, Apple's instruction implies that the absence of written documentation can be evidence only of lack of possession, as opposed to evidence of reasonable efforts to maintain secrecy—such as by eliminating documentation that could be copied or stolen.  This is particularly true because Apple also includes pejorative language regarding whether the "alleged trade secrets were *in*

*fact* trade secrets" (emphasis added).  Moreover, Apple's reference to considering documentation in determining possession further suggests that the absence of written documentation could be relevant only to possession, and not to reasonable efforts or other issues.  If the Court includes an instruction regarding written documents, Masimo suggests using more even-handed language, such as "you may consider as relevant evidence the presence or absence of written documentation of the trade secret information described in Exhibit A."

None of Apple's cases supports its proposed instruction.  *See Jasmine Networks Inc. v. Superior Court*, 180 Cal. App. 4th 980, 989 (2009) (rejecting "current ownership" requirement); *DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) (rejecting notion that "fee simple ownership" is an element of a trade secret misappropriation claim).  Apple's instruction implies the jury should find a lack of a single document using the identical words as the Section 2019.210 disclosure is evidence of lack of possession.

Apple also again proposes including incomplete instructions that refer to subject matter that is fully addressed in other instructions, such as Masimo's burden of proving the Asserted Trade Secrets are protectable.  Apple's repetition would be unhelpful and potentially confusing to the jury.  As discussed throughout, Apple has also repeatedly inserted duplicative, incomplete, and pejorative language on one issue into jury instructions that address entirely separate issues.  The combined effect of Apple's proposed instructions would significantly bias and prejudice the jury.

# APPLE'S PROPOSED INSTRUCTION NO. 17B[37]

## First Element—Possession[38]

The first element of Plaintiffs' misappropriation claim is that Masimo or Cercacor possessed the information described by an alleged trade secret. To prove possession, Masimo and Cercacor must prove either that they developed the alleged trade secret or otherwise were in lawful possession of it at the time of the alleged misappropriation.

Masimo and Cercacor do not need to have written down the alleged trade secret before this lawsuit to prove possession of the information described by an alleged trade secret. However, in determining whether Masimo and Cercacor possessed the alleged trade secret, you may consider as relevant evidence whether Masimo and Cercacor had any written documentation of the trade secrets at the time of the alleged misappropriation.

---

[37] **Authority:** *Jasmine Networks, Inc. v. Superior Ct.*, 180 Cal. App. 4th 980, 997-1000 (2009); *DTM Rsch., L.L.C. v. AT&T Corp.*, 245 F.3d 327, 331 (4th Cir. 2001); Dkt. 1439 at 10; *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018); *CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (2008) ("[A] prima facie claim for misappropriation of trade secrets "requires the plaintiff to demonstrate … [it] owned [the] trade secret.").

[38] **Apple's Position:** Apple acknowledges the Court's prior ruling that Plaintiffs need not prove, in addition to lawful possession, that one specific Plaintiff owned the alleged trade secret. *See, e.g.*, Dkt. 1283 at 4. However, Apple hereby reasserts and further preserves for appeal its legal position that Plaintiffs must prove which party owned each alleged trade secret at the time of the alleged misappropriation. *See, e.g.*, Dkt. 1101 at 17-18. In furtherance of that position, Apple hereby offers the following instruction, adapted from CACI 103 (multiple parties), for the purpose of preservation:

> There are two Plaintiffs in this trial, Masimo and Cercacor. You should decide the case of each plaintiff separately, as it were a separate lawsuit. Each plaintiff is entitled to separate consideration of that plaintiff's own claims, meaning each plaintiff must individually prove each essential element to establish liability on a claim. For instance, Plaintiffs must prove whether a particular alleged trade secret was owned by Masimo or by Cercacor (or both).

The law requires a trade secret plaintiff to provide the defendant during the litigation with a written description of the alleged trade secrets being asserted so that the defendant knows what it is accused of misappropriating. Masimo and Cercacor provided such written descriptions of the alleged trade secrets to Apple, and those descriptions appear in Exhibit A to these instructions. As I will instruct you, Masimo and Cercacor must prove that these alleged trade secrets were in fact trade secrets and that they possessed them at the time of the alleged misappropriation.

**Apple's Position: Proposed Instruction No. 17B**

Apple preserves for appeal the position set forth in the second footnote for Apple's Proposed Instruction 17B that Plaintiffs should be required to prove ownership for both Plaintiffs (rather than that either Plaintiff possessed the alleged trade secrets).

However, acknowledging this Court's prior rulings rejecting this approach, Apple requests that the Court instruct the jury on the required proof for the first element of Plaintiffs' misappropriation claim, using the rule enunciated in the Court's order denying Apple's motion for summary judgment—i.e., Plaintiffs must prove that they developed or otherwise lawfully possessed an alleged trade secret at the time of the alleged misappropriation. *See* Dkt. 1283 at 3-4.

While Apple agrees that theoretically a trade secret need not be written down to be protected under CUTSA, Apple respectfully requests the possession instruction make clear that the jury may consider the absence of written documentation of an alleged trade secret as relevant to whether Plaintiffs possessed the trade secret at the time of the alleged misappropriation—particularly here, where Plaintiffs claim each of their purported secrets are worth billions of dollars. This Court apparently has agreed that the lack of evidence on this point is at least relevant, as it has permitted Apple to cross-examine witnesses on this topic. *See* Dkt. 1439 at 10. Plaintiffs wrongly argue that Apple's proposed language permitting an inference about possession should be rejected because the jury could infer instead that Plaintiffs declined to record information as a means of protecting it from disclosure. Even if there were an evidentiary foundation for suggesting that alternate inference (and Plaintiffs have not identified one), Plaintiffs provide no authority for the notion that an instruction inviting a permissive inference is improper where another inference may conceivably be drawn. Apple's proposed language should be included because it is necessary to balance the proposed instruction and it is rooted in this Court's ruling on Plaintiffs motion *in limine*.

CACI does not provide a model for a standalone instruction on the possession element, but the parties agree that the Court should deliver one. A detailed instruction

is particularly appropriate here because Apple disputes that Plaintiffs can satisfy their burden on this element—making it essential that the jury understands the evidence required to prove possession.

# MASIMO'S PROPOSED INSTRUCTION NO. 18A[39]

## "Trade Secret" Defined

A "Trade Secret" is information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

1. Derived independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Trade secret information can be technical or non-technical, such as business or marketing strategies.

The next two instructions will provide additional information regarding "independent economic value" and "reasonable efforts to maintain secrecy."

---

[39] **Authority:**  Cal. Civ. Code § 3426.1(d); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002); *Duncan v. Stuetzle*, 76 F.3d 1480, 1488 n.11 (9th Cir. 1996).

1

**Masimo's Argument: Proposed Instruction No. 18A**

2       Masimo's proposed instruction tracks the statutory definition of a trade secret

3   because the CACI model instruction inaccurately imposes requirements not found in the

4   statute.  The statute provides:

5       "Trade secret" means information, including a formula, pattern,

6       compilation, program, device, method, technique, or process, that:

7           (1)   Derives independent economic value, actual or potential, from

8       not being generally known to the public or to other persons who can obtain

9       economic value from its disclosure or use; and

10          (2)   Is the subject of efforts that are reasonable under the

11      circumstances to maintain its secrecy.

12   Cal. Civ. Code § 3426.1(d).

13      Masimo's proposed instruction also includes an uncontroversial statement that

14   reflects the caselaw confirming that trade secrets can be technical or non-technical, and

15   can specifically include business and marketing plans.  *See Whyte v. Schlage Lock Co.*,

16   101 Cal. App. 4th 1443, 1456 (2002) ("Schlage's marketing strategy and plans

17   (including its five-year strategic plan) constitute trade secrets under California law.").

18   the Court should instruct the jury on this point because this case involves trade secrets

19   that are technical and non-technical.  Otherwise, lay jurors may incorrectly assume that

20   trade secrets must be technical in nature.

21      Apple's proposed instruction (though consistent with CACI, except for the

22   heading) would require elements that are inconsistent with the statute.

23      First, Apple proposes a freestanding "secrecy" requirement that has no basis in

24   the statute.  The statute does not require the information be "secret," but only that it

25   derive independent economic value "from not being generally known."  *See* Cal. Civ.

26   Code § 3426.1(d)(1).

27      Second, Apple proposes rewriting the independent economic value prong as if it

28   required having "independent economic value ***because it was secret***."  The statute does

1   not require economic value due to "secrecy" but only from "not being generally known."

2   *See* Cal. Civ. Code § 3426.1(d)(1).   The "independent economic value" prong says

3   nothing about the information needing to be "secret."

4      Third, Apple drops the "under the circumstances" qualifying language from

5   statute's reasonable efforts requirement.   A trade secret need only be the "subject of

6   efforts that are reasonable *under the circumstances* to maintain its secrecy."   Cal. Civ.

7   Code § 3426.1(d)(2).   Apple's proposed instruction adds requirements not in the statute

8   and may confuse the jury regarding requirements addressed in other instructions, e.g.,

9   Instruction No. 19 regarding the independent economic value requirement.

10      Masimo recognizes that Apple's proposal is based on a CACI instruction.

11   However, the Court should not follow the CACI instruction on this issue because the

12   CACI recitation of the elements of trade secret misappropriation conflicts with both the

13   statute and the interpreting caselaw.

14      CACI acknowledges it is "not a primary source of the law" but only a "secondary

15   source."   Guide for Using Judicial Council of California Civil Jury Instructions.   The

16   Guide cites the implementing California Rules of Court, which recognize that where, as

17   here, the CACI instructions conflict with the clear language of the statute, the language

18   of the statute controls.   The California Rules of Court state:

19      The Judicial Council endorses these instructions for use and makes every

20      effort to ensure that they accurately state existing law. The articulation and

21      interpretation of California law, however, remains within the purview of

22      the Legislature and the courts of review.

23   Rule 2.1050(b).

24      Another district court in the Ninth Circuit recognized that it is appropriate to

25   "modify the CACI instruction in order to better harmonize the facts in this case to the

26   elements of the claim" particularly where the court's modification "mirrors the language

27   of the [statute] itself."   *Quinn v. Fresno Cnty. Sheriff*, No. 1:10-CV-01617 LJO, 2012

28

WL 6561562, at *4 (E.D. Cal. Dec. 14, 2012), *on reconsideration,* No. 1:10-CV-01617
LJO, 2013 WL 898136 (E.D. Cal. Mar. 8, 2013).

As discussed above, the CACI instruction impermissibly introduces a
freestanding secrecy requirement and introduces the concept of secrecy into the
evaluation of economic value.

Apple complains about the order in which Masimo presents the elements.
Masimo's proposal presents the elements in the same order as the statute.

## APPLE'S PROPOSED INSTRUCTION NO. 18B[4041]

### Second Element—Trade Secret Defined

The second element of the misappropriation claim is that the information described within an alleged trade secret met the legal definition of a trade secret at the time of the alleged misappropriation.  To prove that an alleged trade secret was a trade secret, Masimo and Cercacor must prove each of the following:

1. That the alleged trade secret was secret.

2. That the alleged trade secret had actual or potential economic value because it was secret.

3. That Masimo and Cercacor made reasonable efforts to maintain the secrecy of the alleged trade secret.

I will now describe each of these requirements in more detail.

---

[40] **Authority:** CACI 4402 (adapted); Instruction No. 27, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.).

[41] **Apple's Position on Ordering:**  Apple objects to the order in which Plaintiffs have arranged Proposed Instructions 18-22.  Plaintiffs' proposed ordering departs from the order of the three requirements presented in CACI 4402 and will accordingly confuse the jury.  Apple proposes that these instructions be read in the following order: No. 18B (Trade Secret Defined), No. 21B (Secrecy Requirement), No. 19B (Independent Economic Value), No 22B (Combination Trade Secret, if included), and No. 20 (Reasonable Efforts).

**Apple's Position: Proposed Instruction No. 18B**

Apple's proposed instruction is drawn directly from the CACI 4402 model and comports with this Court's prior trade secret instructions. *See, e.g.*, Instruction No. 27, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.). In contrast, Plaintiffs' proposed instruction is not based on any model instruction and fails to provide the jury with any guidance about the basic secrecy requirement—i.e., that the information not be generally known to the public or other persons who could obtain value from its use or disclosure—beyond the bare language of the statute.

Plaintiffs once again take the position that this Court should diverge from CACI on this instruction (and any other instruction that happens to be unfavorable to their position) because it purportedly conflicts with the text of the CUTSA. But as discussed above, this is improper. *See supra* Apple's Position: Apple's Proposed Instruction No. 16B.

As explained in Apple's position statement on Proposed Instruction No. 21B, the case law uniformly holds that an alleged trade secret must in fact be secret (i.e., not generally known) and that this requirement is distinct from the independent economic value inquiry. *See also, e.g.*, Dkt. 1275 at 7 (this Court concluding that "[t]here is a genuine dispute whether the [alleged trade secret] techniques were generally unknown, *and if so*, whether they derived value from their secrecy" (emphasis added)). Plaintiffs do not cite any decision from any jurisdiction supporting their contention that requiring proof of secrecy is "inconsistent with the statute." To the contrary, it is fundamental that "[i]n order to qualify as a trade secret, the information 'must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.'" *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004)

Apple objects to Plaintiffs' proposed instruction, which fails to highlight the secrecy requirement. Plaintiffs' truncated structure diverges from CACI and blurs two separate elements (i.e., that the underlying information must be secret *and* that

independent economic value can be derived from maintaining its secrecy) into one complicated, multi-factor "independent economic value" test. *See, e.g.*, Proposed Instruction 19A.

## MASIMO'S PROPOSED INSTRUCTION NO. 19A[42]

### *"Independent Economic Value" Explained*

In determining whether an Asserted Trade Secret had actual or potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, you may consider the following:

1. The extent to which Masimo and Cercacor obtained or could obtain economic value from the Asserted Trade Secret in keeping it not generally known to the public or to other persons who can obtain economic value from its disclosure or use;

2. The extent to which others could obtain economic value from the Asserted Trade Secret if it was generally known to the public or to other persons who can obtain economic value from its disclosure or use;

3. The amount of time, money, or labor that Masimo and Cercacor expended in developing the Asserted Trade Secret; and

4. The amount of time, money, or labor that was or would be saved by a competitor if they were to use the Asserted Trade Secret.

The presence or absence of any one or more of these factors is not necessarily determinative. The standard to show that an Asserted Trade Secret derives independent economic value is not a high standard.

Each of the Asserted Trade Secrets must be analyzed as a whole. A trade secret can be protectable even if each individual part or "element" of the trade secret was generally known to the public or to other persons who can obtain economic value from its disclosure or use. The question is whether the trade secret lacks independent

---

[42] **Authority:** Cal. Civ. Code § 3426.1(d); *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521–22 (1997); *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *9, *15 (C.D. Cal. Nov. 7, 2022); Dkt. 1275 at 4; Dkt. 1284 at 6; *see also* CACI No. 4412.

economic value because the trade secret as a whole is generally known to the public or to other persons who can obtain economic value from their disclosure or use.

A publication does not mean that subject matter is generally known. The "generally known" inquiry is not whether the alleged trade secret has been publicly disclosed at all, but whether it has become generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value.

**Masimo's Argument: Proposed Instruction No. 19A**

Masimo's proposed instruction is based on the statute and the current state of the law because the CACI model instruction imposes requirements not found in the statute.

The statute defines a trade secret, in part, as information that "derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1).  Masimo proposes language that tracks this connection between economic value and not being generally known.

Masimo's proposal quotes this Court's statement that "the standard to show that trade secrets derive independent economic value 'is not a high standard.'"  Dkt. 1275 at 4 (citing *Cisco Sys. Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020)).  Apple complains about this language, but Masimo copied it from this Court's prior order.  This instruction would be helpful to the jury because Apple is likely to argue a trade secret is generally known if parts of it appear in separate publications.

Masimo's proposed language regarding analysis of trade secrets (beginning at line 21 on the first page) instructs the jury that trade secrets are protectable even if each "element" is individually known, and that trade secrets must be evaluated as a whole.[43] Masimo's proposal reflects this Court's finding that a trade secret defendant can argue a trade secret is generally known based on "an element by element" analysis "only where the aggregate, not the individual components, is generally known." Dkt. 1284 at 6.

Masimo's proposed language regarding the effect of publications (beginning on line 3 of the second page) tracks this Court's holding that "techniques described in articles published as conference papers does not render the technique 'generally known' to individuals who could obtain value from the techniques." *Id.* (citing *Masimo Corp.*

---

[43] Apple argues that Masimo's proposed language invokes the purported "combination trade secret doctrine."  There is no such thing as a "combination trade secret doctrine." Apple's arguments to the contrary lack merit for the reasons described in Masimo's Arguments regarding Instruction No. 22.

1   *v. True Wearables Inc.*, 2021 WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021)).  Masimo
2   also tracks this Court's holding that "publication does not mean the subject matter is
3   generally known under CUTSA."  *Masimo Corp. v. True Wearables, Inc.*, 2022 WL
4   17083396, at *15 (C.D. Cal., Nov. 7, 2022).

5       Finally, Masimo's proposal quotes this Court's explanation in this case that:
6       The [generally known] inquiry is not whether the alleged trade secret has
7       been publicly disclosed at all, but whether it has become 'generally known
8       to the relevant people, i.e., potential competitors or other persons to whom
9       the information would have some economic value[.]'
10   Dkt. 1284 at 4 (citing *Kittrich Corp. v. Chilewich Sultan, LLC*, No. CV 12-10079, 2013
11   WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013)).

12       Apple's proposal rewrites the statute as if it required having "independent
13   economic value ***because [the information] was secret***."  The independent economic
14   value prong says nothing about the information needing to be "secret."  In rewriting the
15   words of the statute, Apple adds a "secrecy" requirement that is not part of having
16   independent economic value.  The statute does not require economic value due to
17   "secrecy" but only from "not being generally known."  *See* Cal. Civ. Code
18   § 3426.1(d)(1).  The "independent economic value" requirement is inseparable from the
19   trade secret "not being generally known."  *See id*.

20       The parties have the same dispute regarding the first two factors that the jury may
21   consider in evaluating economic value.  Masimo correctly refers to keeping the
22   information from being generally known, while Apple's requires keeping it secret.  Any
23   instruction that separates "independent economic value" from "not being generally
24   known" is legally incorrect.

25       Apple's proposal instructs the jury to consider, in determining whether the trade
26   secrets derive independent economic value from not being generally known, whether
27   any of the parties "actually incorporate" the trade secret in any product or process.  This
28   new factor, however, suggests to the jury that failure to incorporate a trade secret into a

-103-

commercial product is evidence that the trade secret is not protectable.  That is false.  A trade secret need not be incorporated in a product to be protectable.  Apple cites no case that considered this factor in determining independent economic value.  *Cf. Pharm. Care Mgt. Ass'n v. Rowe*, 307 F. Supp. 2d 164, 178 (D. Me. 2004) (listing factors a court may examine to determine whether information derives independent economic value).  Indeed, such a factor would run afoul of the low threshold for showing independent economic value.  Dkt. 1275 at 4 (citing *Cisco Sys. Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020)).

Apple accuses Masimo of blurring the "distinct requirements" that a trade secret "must be both secret (i.e. not generally known)" and derive independent economic value "from that secrecy."  But the statute does not separate "not being generally known" from "independent economic value"—to the contrary the statute requires a trade secret "derive independent economic value, actual or potential, from not being generally known."  *See* Cal. Civ. Code § 3426.1(d)(1).  Masimo's instruction adheres to the statute, and instructs the jury to follow the law, rather than Apple's unsupported dual requirement.

Apple argues that "in some instances—for example, when a trade secret has been disclosed in a published patent—publication necessarily vitiates secrecy."  Apple misstates the law and cites no case that supports this proposition.  Apple cites *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485 (Fed. Cir. Jan. 24, 2022) as purportedly holding that "information disclosed in a patent is generally known."  But that case does not stand for such a blanket declaration, and publication in a patent—particularly if unauthorized by the trade secret holder—does not necessarily vitiate trade secret protection.  The Federal Circuit distinguished a prior case where "relevant public . . . ***would be likely to know*** that the alleged trade secret was disclosed in a Japanese patent." *Id.* at *3.  Indeed, the court distinguished other cases where the trade secret *owner* authorized the publication of the trade secret or placed it in the public domain.  *Id.* at 4.

Masimo proposes deviating from the CACI model instruction on this issue because the model recites elements of trade secret misappropriation that conflict with the statute and the interpreting caselaw. CACI acknowledges it is "not a primary source of the law" but only a "secondary source." Guide for Using Judicial Council of California Civil Jury Instructions. The Guide cites the implementing California Rules of Court, which recognize that where, as here, the CACI instructions conflict with the clear language of the statute, the language of the statute controls. The California Rules of Court state:

> The Judicial Council endorses these instructions for use and makes every effort to ensure that they accurately state existing law. The articulation and interpretation of California law, however, remains within the purview of the Legislature and the courts of review.

Rule 2.1050(b).

Another district court in the Ninth Circuit recognized that it is appropriate to "modify the CACI instruction in order to better harmonize the facts in this case to the elements of the claim" particularly where the court's modification "mirrors the language of the [statute] itself." *Quinn v. Fresno Cnty. Sheriff*, No. 1:10-CV-01617 LJO, 2012 WL 6561562, at *4 (E.D. Cal. Dec. 14, 2012), *on reconsideration,* No. 1:10-CV-01617 LJO, 2013 WL 898136 (E.D. Cal. Mar. 8, 2013).

As discussed above, the CACI model instruction incorrectly introduces the concept of secrecy into the evaluation of economic value.

Apple's proposed instruction also begins by adding the words "Second Element" to the title of the instruction without explanation or support. The CACI model instruction does not include those words in the heading.

Apple's final paragraph of its proposed instruction is confusing and inaccurate. The jury cannot simply disregard the words in the trade secret. If Apple wants to explain to the jury the problem it sees with the words "value" and "importance," Apple is free

1   to do so in closing argument.  Apple cites no authority justifying the last paragraph in

2   its proposed instruction on this issue.

# APPLE'S PROPOSED INSTRUCTION NO. 19B[44]

## Second Element—Independent Economic Value Requirement

An alleged trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know it and who could obtain economic value from its disclosure or use.

In determining whether a particular alleged trade secret had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which Masimo and Cercacor obtained or could obtain economic value from the alleged trade secret if it were not secret;

2. The extent to which others could obtain economic value from the alleged trade secret if it were not secret;

3. The amount of time, money, or labor that Masimo and Cercacor expended in developing the alleged trade secret;

4. The amount of time, money, or labor that would be saved by a competitor that used the alleged trade secret;

5. Whether Apple, Masimo, or Cercacor actually incorporate the purported secret in any product or process.

The presence or absence of any one or more of these factors is not necessarily determinative.

In determining whether Masimo and Cercacor have proven that the alleged trade has independent economic value, the fact that the words "value" or "importance" may appear in the description of the alleged trade secret should make no difference to your analysis. Masimo and Cercacor have the burden of proving that each alleged trade secret has independent economic value regardless of how they named or described their alleged trade secrets.

---

[44] **Authority:** CACI 4412 (adapted); Dkt. 1275 at 7.

-107-

**Apple's Position: Proposed Instruction No. 19B**

Apple's Proposed Instruction No. 19B hews closely to the CACI model for the independent economic value requirement with two minor adjustments. *First*, Apple has accepted the instruction's invitation to list "[an]other applicable factor," CACI 4412, and added a provision that captures a portion of this Court's reasoning in its ruling denying Plaintiffs' motion for summary judgment—i.e., that there was no evidence that Apple used certain purported trade secrets and very limited evidence that even Plaintiffs did so. Dkt. 1275 at 7 (considering "evidence that the techniques may not have afforded Plaintiffs as much of a competitive edge as they contend").

*Second*, Apple has added two closing sentences to address the potential for juror confusion arising from Plaintiffs' decision to assert an Alleged Trade Secret that claims "[t]he value, importance, and appropriateness" of certain categories of information. Since the Court will provide the jurors with a list of the Alleged Trade Secrets, there is a risk that jurors may believe that the Court is indicating that the "value, importance and appropriateness" Alleged Trade Secret in fact has "value" (and thus that Plaintiffs need not prove that element). Apple's proposed language clarifies that this is not so.

Plaintiffs accuse Apple of "rewrit[ing] the statute" to (1) add in the phrase "because it was secret" and (2) treat "generally known" and "independent economic value" as separate inquiries, but—as Plaintiffs concede a few paragraphs later—the former is precisely the language used in CACI 4412 and the latter is the approach taken in CACI 4401. As explained in more detail below, this approach is fully consistent with CUTSA and this Court's past practice in trade secret cases. *See infra* Apple's Position: Proposed Instruction No. 21B (collecting cases). *see also* Dkt. 1275 at 7 (this Court concluding that "[t]here is a genuine dispute whether the [alleged trade secret] techniques were generally unknown *and if so*, whether they derived value from their secrecy" (emphasis added)). Indeed, Plaintiffs do not identify a single case that has modified the CACI instruction in the way they propose.

More broadly, Plaintiffs once again take the position that this Court should diverge from CACI on this instruction (and any other instruction that happens to be unfavorable to their position) because it purportedly conflicts with the text of the CUTSA.  But as discussed above, this is improper.  *See supra* Apple's Position:  Apple Proposed Instruction No. 16B.

Apple objects to Plaintiffs' counter-proposal, which is flawed both because it varies from the CACI instruction without explanation and for at least four specific reasons.

*First*, the second-to-last paragraph of Plaintiffs' proposed instruction provides an incomplete recitation of the combination trade secrets doctrine.  This language should be rejected both because Plaintiffs have not preserved any combination trade secret theory in this case, *see infra* Apple's Position: Instruction No. 22B; Dkt. 1225 at 18, and because—as discussed in more detail in Apple's argument addressing proposed alternative instruction No. 22B—a party asserting a combination trade secret must make certain special showings that Plaintiffs' proposed instruction neglects to mention.  For example, the plaintiff must prove that the combination was both novel and unique and that the alleged combination trade secret's independent economic value arises from the functional interrelation of the public domain elements.  *See, e.g.*, *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 48 (2014); *infra* Apple's Position:  Instruction No. 22B (collecting case law).

Plaintiffs support their position by distorting this Court's *Daubert* ruling.  This Court *rejected* Plaintiffs' argument that—as a general matter—a trade secret "'should not [be] examine[d]'" "'bit by bit'" because the case Plaintiffs were relying on dealt with the special circumstance of combination trade secrets.  *See* Dkt. 1284 at 5-6. Specifically, this Court clarified that Plaintiffs' preferred holistic analysis is "an approach … *valid only* where the aggregate, not the individual components is generally known"—i.e., where an "implementation" of generally known elements "'as a

-109-

combination of characteristics and components … separately qualifie[s] for protection as [a] trade secret[].'" Dkt. 1284 at 6 (*quoting Altavion*, 226 Cal. App. 4th at 48) (emphasis added); *see also* Apple's Position:  Proposed Instruction No. 22B.  Since both the generally known and independent economic value requirements are analyzed differently when a plaintiff proceeds under the combination trade secrets doctrine, *see infra* Apple's Position:  Proposed Instruction No. 22B, Apple objects to introducing any aspect of that doctrine to this general-purpose instruction.

*Second*, the final paragraph of Plaintiffs' proposed instruction blurs the distinct requirements that a purported trade secret must be both secret (i.e., not generally known) and that the plaintiff must derive actual or independent value from that secrecy.  *See infra* Apple's Position:  Proposed Instruction No. 21B.  As written, there is a real danger the jury will be confused as to whether they must make one finding (independent economic value from secrecy) or two (both independent economic value from not being generally known and that the underlying information is in fact not generally known). This Court's prior analysis makes clear that the latter approach is the right one.  Dkt. 1275 at 7 (this Court concluding that "[t]here is a genuine dispute whether the [alleged trade secret] techniques were generally unknown *and if so*, whether they derived value from their secrecy" (emphasis added)).

*Third*, Plaintiffs provide incomplete guidance when they state that "[a] publication does not mean that subject matter is generally known."  In some instances—for example, when a trade secret has been disclosed in a published patent—publication necessarily vitiates secrecy.  *See, e.g.*, *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 (Fed. Cir. Jan. 24, 2022) ("[I]nformation 'disclosed in a patent' is 'generally known to the public' for purposes of the CUTSA"); *accord Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1356 (Fed. Cir. 2009) ("One of the primary purposes of patent systems is to disclose inventions to the public").  Apple's Proposed Instruction No. 19B provides the proper standard.  *See* Dkt. 1284 at 5-6.  Plaintiffs' reliance on this Court's preliminary injunction ruling in the *True Wearables* case is misplaced because

1    (as even Plaintiffs' quotation makes clear), this Court was dealing with the narrow and

2    different question of whether "techniques described in articles published as conference

3    papers" were necessarily generally known. *Masimo Corp. v. True Wearables Inc.*, 2021

4    WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021).

5         *Finally*, Plaintiffs' statement that the independent economic value requirement "is

6    not a high standard" improperly suggests that their burden to show independent

7    economic value is different and lower than the normal preponderance standard.  While

8    this statement may be accurate in the context of a summary judgment ruling—where

9    courts discuss the legal standard rather than the evidentiary standard—it will be highly

10   confusing to the jury.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINTLY PROPOSED INSTRUCTION NO. 20[45]

### "Reasonable Efforts to Maintain Secrecy" (Disputed Language)

To establish that the [[[ATS]]][46] are protectable Masimo and Cercacor must prove that they made reasonable efforts under the circumstances to maintain the secrecy of the [[[ATS]]].  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Masimo and Cercacor, exercising due care to protect important information of the same kind and value.

In determining whether Masimo and Cercacor made reasonable efforts to maintain secrecy, you should consider all the facts and circumstances.  Among the factors you may consider are the following:

1. Whether documents or computer files containing the [[[ATS]]] were marked with confidentiality warnings;

2. Whether Masimo and Cercacor instructed their employees to treat the [[[ATS]]] as confidential;

3. Whether Masimo and Cercacor restricted access to the [[[ATS]]] to persons who had a business reason to know the information;

4. Whether Masimo and Cercacor kept the [[[ATS]]] in a restricted or secured area;

---

[45] **Authority:**  CACI No. 4404; Cal. Civ. Code § 3426.1(d)

[46] The parties dispute whether the jury instructions should use the phrase "Asserted Trade Secrets," which is preferred by Plaintiffs, or "alleged trade secrets," which is preferred by Apple.  The parties jointly submit this proposed instruction using the symbol [[[ATS]]] as a placeholder for whichever terminology the Court selects.

5. Whether Masimo and Cercacor required employees or others with access to the [[[ATS]]]] to sign [[[valid]]][47] confidentiality or nondisclosure agreements;

6. Whether Masimo and Cercacor took any action to protect the specific [[[ATS]]]], or whether it relied on general measures taken to protect its business information or assets;

7. The extent to which any general measures taken by Masimo and Cercacor would prevent the unauthorized disclosure of the [[[ATS]]]]; or

8. Whether there were other reasonable measures available to Masimo and Cercacor that they did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

[[[Apple's efforts to maintain the secrecy of information it considers confidential are irrelevant to this determination.]]][48]

---

[47] The parties dispute whether the jury should consider the validity of the agreement in evaluating the reasonableness of Masimo's efforts, under the circumstances, to maintain secrecy. Masimo's position is that its employee confidentiality agreements are relevant to Masimo's efforts to maintain secrecy regardless of validity. Apple's position is to include "valid," in anticipation of the Section 16600 issues on which it will seek a legal ruling.

[48] The parties dispute whether to include this sentence. Masimo's position is that Apple should not be allowed to use information it withheld in discovery to attack or criticize Masimo's efforts to maintain secrecy. Apple's position is that this addition to the CACI model is irrelevant and will confuse the jury.

**Masimo's Argument: Proposed Instruction No. 20**

The parties would agree to this instruction except for two issues.  First, Apple deviates from CACI by adding the word "valid" in the fifth factor that the jury may consider in determining whether Masimo took reasonable efforts to maintain secrecy. Apple has offered no case law supporting this innovation.  *See* CACI No. 4404.  And, as Masimo argued in opposition to Apple's Motion *in Limine* No. 4, Masimo's employee confidentiality agreements are relevant to Masimo's efforts to maintain secrecy regardless of whether the confidentiality provisions are void.  Dkt. 1334 at 9-10 (citing *Palantir Techs. Inc. v. Abramowitz*, 2022 WL 2952578, at *4-5 (N.D. Cal. July 26, 2022) and *Albert S. Smyth Co. v. Motes*, 2018 WL 3635024, at *3-4 (D. Md. July 31, 2018)). Thus, whether the relevant provisions are valid is of no consequence to the jury's analysis of this issue.

Second, Masimo proposes informing the jury that Apple's efforts to maintain secrecy of Apple's own confidential information is irrelevant to this inquiry.  The focus is on the trade secret holder and whether the holder implemented efforts reasonable for them.  Moreover, Apple refused to produce information on its own efforts during discovery.   Apple argued "Discovery into how Apple protects its confidential information and trade secrets is thus wholly irrelevant to Plaintiffs' claims."  Masimo sought Apple's agreement that Apple would not introduce evidence of Apple's efforts to maintain secrecy.  Apple never responded.  Thus, this instruction is appropriate.

### Apple's Position: Proposed Instruction No. 20

As Plaintiffs acknowledge, the parties agree on nearly every aspect of this instruction.  The most notable disagreement is that Apple proposes that the Court make clear that only "valid" confidentiality agreements are relevant to the reasonable efforts analysis because the only such agreement in this case that Plaintiffs have identified is invalid under California Business & Professions Code § 16600.  *See infra* Apple's Position: Proposed Instruction No. 23.  Neither of Plaintiffs' cited cases suggests that a jury may consider an *invalid* agreement when assessing reasonable efforts.  *See Palantir Techs. v. Abramowitz*, 2022 WL 2952578, at *4 (N.D. Cal. July 26, 2022) (discussing an oral confidentiality agreement); *Albert S. Smyth Co. v. Motes*, 2018 WL 3635024, at *3-4 (D. Md. July 31, 2018)) (discussing policies in an employee handbook).

It is unsurprising that Plaintiffs could not find any support for their position.  The CUTSA requires the trade secret owner to take "efforts that are reasonable under the circumstances to maintain" the secrecy of their information, *see*, *e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011), and it is not reasonable for a trade secret owner to rely on a confidentiality provision that is invalid as a matter of law (and thus useless as an enforcement tool) in order to protect its intellectual property.  This is particularly so given that California courts have warned that they will not construe broad restraints on trade narrowly to avoid invalidation under Section 16600.  *See, e.g.*, *Kolani v. Luska*, 64 Cal. App. 4th 402, 406 (1998) ("Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation"); *D'Sa v. Playhut, Inc.*, 85 Cal. App. 4th 927, 935 (2000) ("If we were to agree to the construction defendants ask for, we would undermine the protection given to employees in section 16600[.]")

Apple also objects to Plaintiffs' proposal to deviate from CACI by including an express statement that Apple's efforts to maintain the secrecy of its confidential information are irrelevant.  Plaintiffs do not identify a single case that has taken this

1  approach, and Plaintiffs failed to press this question in front of the Special Master or this

2  Court.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MASIMO'S PROPOSED INSTRUCTION NO. 21A

### (Offered in the Alternative)

### Reasonable Efforts—Nature of Secrecy

Efforts that are reasonable under the circumstances to maintain secrecy does not require trying to maintain absolute secrecy.  Nor does it require that no one else in the world possesses the information.  The focus is on the reasonableness of the efforts to prevent disseminating the information to those who do not already possess it.

**Masimo's Objections to Apple's Proposed Instruction No. 21B**

The Court should not provide an instruction on "secrecy" because the statute does not require "secrecy."  Masimo proposed an instruction on this issue only in case the Court decides an instruction is necessary.

Apple proposed an instruction that is consistent with CACI, but which is legally incorrect.  There is no "secrecy required to prove that something is a trade secret" (line 3) under CUTSA.  The statute mentions "secrecy" only as part of the requirement that a trade secret "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code. § 3426.1(d)(2).  The focus is on the reasonableness of the efforts, not the nature of the secrecy.  Any issue regarding the nature of secrecy would be addressed as part of Proposed Instruction No. 20 regarding reasonable efforts.

Moreover, Apple's proposed instruction appears directed to the "independent economic value" prong, which is the subject of Proposed Instruction No. 19.  This Court's prior order, cited by Apple, recognizes that:

> Under CUTSA, a trade secret is information that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Dkt. 1284 at 5.

Apple's proposal, and the CACI instruction, are inconsistent with the statute, and not supported by the caselaw.  CACI acknowledges it is "not a primary source of the law" but only a "secondary source."  Guide for Using Judicial Council of California Civil Jury Instructions.  The Guide cites the implementing California Rules of Court, which recognize that where, as here, the CACI instructions conflict with the clear language of the statute, the language of the statute controls.  The California Rules of Court state:

The Judicial Council endorses these instructions for use and makes every effort to ensure that they accurately state existing law. The articulation and interpretation of California law, however, remains within the purview of the Legislature and the courts of review.

Rule 2.1050(b).

Another district court in the Ninth Circuit recognized that it is appropriate to "modify the CACI instruction in order to better harmonize the facts in this case to the elements of the claim" particularly where the court's modification "mirrors the language of the [statute] itself." *Quinn v. Fresno Cnty. Sheriff*, No. 1:10-CV-01617 LJO, 2012 WL 6561562, at *4 (E.D. Cal. Dec. 14, 2012), *on reconsideration,* No. 1:10-CV-01617 LJO, 2013 WL 898136 (E.D. Cal. Mar. 8, 2013).

Apple's proposal is also misleading because it suggests a trade secret is protectable ***only if*** employees and third parties are "instructed to keep the information secret" (lines 4–6).  While such facts are relevant to showing reasonable efforts to maintain secrecy, both parties agree many other facts could also be relevant. *See* Jointly Proposed Instruction No. 20.  Apple's proposal also suggests reasonable efforts need to be directed towards particular information (employees instructed to keep "the" information secret) (lines 4-6).  But the Court already rejected Apple's unsupported argument that reasonable efforts cannot be "general" and must be "specific" to each trade secret.  Dkt. 1275 at 7-8.

Apple also adds instructions not included in the CACI model instruction.  For example, Apple's proposal states: "While the fact that the alleged trade secret has been revealed in some publication somewhere does not necessarily mean that the information is not generally known, you may determine that information is generally known where it appeared in a publication that would generally make people in the relevant industry aware of that information" (lines 13–17).  Apple's lengthy sentence would be confusing for any lay juror.  Apple claims that this sentence "paraphrases the Court's ruling on Plaintiffs' *Daubert* motion concerning the generally known opinions of Apple's

-119-

1  experts."  It does not.   In contrast, Masimo's proposal on "generally known" in

2  Instruction No. 19A uses the exact words of the Court.  Dkt. 1275 at 4.

3      Moreover, the Federal Circuit affirmed this Court's holding in *True Wearables*

4  that the existence of publications that was "not obscure" does "not mean that the

5  particular techniques described in them were 'generally known' to people who could

6  obtain economic value from developing noninvasive blood content detectors." *Masimo*

7  *Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 (Fed. Cir. Jan. 24, 2022).  Apple's

8  proposal improperly focuses on whether the publication was known instead of whether

9  the "particular information" in the publication lacked independent economic value

10  because it was generally known to relevant individuals.  *See id.*

11      Apple's instruction wrongly claims that "publication of information in a patent or

12  a patent application makes it generally known to the public and so eliminates any trade

13  secrecy."   Apple argues that such a rule is "well settled" in the Ninth and Federal

14  Circuits.  But Apple's cited cases stand for no such rule.  In *Attia v. Google LLC*, 983

15  F.3d 420 (9th Cir. 2020), a case involving DTSA not CUTSA, the owner of the alleged

16  trade secret *authorized* another party to publish information disclosing the trade secret

17  in a patent application.  983 F.3d at 425.  And similarly in *Ultimax Cement Mfg. Co.. v.*

18  *CTS Cement Mfg. Co.*, 587 F.3d 1339 (Fed. Cir. 2009), the court emphasized that the

19  "relevant public in the cement industry" would be likely to know that the alleged trade

20  secret was disclosed in a Japanese patent.  587 F.3d at 1355–56.  Indeed, the Federal

21  Circuit in *Masimo Corp. v. True Wearables* distinguished *Ultimax* on that very point.

22  *See True Wearables*, 2022 WL 205485 at *3.   *SkinMedica* suffers from the same

23  problem.  In that case, the court merely observed in dicta that the plaintiff's trade secret

24  would not be entitled to protection if the trade secret were the same as the plaintiff's

25  patents-in-suit.  *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D.

26  Cal. 2012).  No such facts exist here.

27      Apple argues that the purported "secrecy" requirement is a "layman friendly

28  introduction to the concept of whether information is 'generally known to the public or

1    to other persons who can obtain economic value from its disclosure or use.'"  Apple's
2    argument illustrates precisely why such a simplification is error.  Imposing a "secrecy"
3    requirement when the statute requires independent economic value from not being
4    generally known risks confusing the jury about the correct standard for protecting trade
5    secrets.
6           Should the Court provide an instruction on secrecy, Masimo requests the Court
7    give it as part of explaining the types of efforts that are reasonable to maintain secrecy,
8    and use Masimo's proposed alternative instruction.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPLE'S PROPOSED INSTRUCTION NO. 21B[49]

## Second Element—Secrecy Requirement

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  It may be disclosed to employees involved in Masimo's or Cercacor's use of the alleged trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.

However, the alleged trade secret must not have been generally known to the public or to people who could obtain value from knowing it.  Under some circumstances, the publication of an alleged trade secret will be clearly sufficient to indicate that the information is generally known.  For example, publication of information in a patent or a patent application makes it generally known to the public and so eliminates any trade secrecy.   While the fact that the alleged trade secret has been revealed in some publication somewhere does not necessarily mean that the information is not generally known, and you may determine that information is generally known where it appeared in a publication that would generally make people in the relevant industry aware of that information.

---

[49] **Authority:** CACI 4403; Dkt. 1284 at 5-6; Instruction No. 29, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.); *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (citing *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir. 2009)) ("it appears to us to be well-settled that publication of information in a patent application eliminates any trade secrecy."); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012) (same); *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) ("In order to qualify as a trade secret, the information 'must be secret[.]'"); *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) (same); *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *4 (Fed. Cir. Jan. 24, 2022).

**Apple's Position: Proposed Instruction No. 21B**

Apple's proposed instruction largely follows the "Directions for Use" for CACI 4403 ("Secrecy Requirement"), which states that courts should "[r]ead this instruction with CACI No. 4402, *"Trade Secret" Defined*, to give the jury additional guidance on the secrecy requirement of element 1 of that instruction."  CACI at 1220.  This Court has issued a similar instruction in prior cases.  *See, e.g.*, Instruction No. 29, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.).

Specifically, the first paragraph and topic sentence of the second paragraph of Apple's proposed instruction represent the full and unmodified CACI 4403 instruction.  Apple has also added two sentences to assist the jury with determining whether information was generally known.  The last sentence, which leaves to the jury the implication of any particular publication, paraphrases the Court's ruling on Plaintiffs' *Daubert* motion concerning the "generally known" opinions of Apple's experts, *see* Dkt. 1284 at 5-6, and the test applied by the Federal Circuit in *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *4 (Fed. Cir. Jan. 24, 2022).  And the second to last sentence (i.e., that publication in a patent vitiates trade secret protection) is a near-verbatim recitation of the "well settled" rule in the Ninth and Federal Circuits that information published in patents and patent applications is generally known.  *See Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (citing *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir. 2009)).  Indeed, Plaintiffs own authority cited elsewhere in their proposed jury instructions states that if information were published in a patent, "trade secret protection would be extinguished." *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).[50]

---

[50] Plaintiffs complain that *Attia* interprets the DTSA, but CUTSA's definition of what is "generally known" is *broader* than the federal statute.  *Compare* 18 U.S.C. § 1839(3)(B) (information cannot be known by "another person" who can obtain economic value") *with* Cal. Civ. Code §3426.1(d)(2) (information cannot be known "to the public or to

Plaintiffs' objection that the CUTSA does not impose a "secrecy" requirement is a red herring.  CACI uses (and presumably, this Court used) that term to provide a layman friendly introduction to the concept of whether information is "generally known to the public or to other persons who can obtain economic value from its disclosure or use."  California courts have taken the same approach.  *See DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) ("In order to qualify as a trade secret, the information 'must be secret[.]'"); *see also AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 943 & n.8 (2018) (citing CACI's description of the "secrecy" requirement approvingly in describing the elements of trade secret misappropriation).  This instruction then provides guidance on the precise metes and bounds of that secrecy, i.e., what it means for information to not be generally known.  Notably, Plaintiffs do not identify any authority that has rejected CACI's (and this Court's) approach.

Apple also objects to Plaintiffs' incorrect suggestion that the "secrecy" requirement refers only to the reasonable efforts element.  The case law explains that the two inquiries are distinct.  Under the CUTSA, a plaintiff must prove that there has not been "[p]ublic disclosure, that is the absence of secrecy, [which] is fatal to the existence of a trade secret," *and* an "entity claiming a trade secret *is also required* to make [reasonable efforts]."  *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) (emphasis added).  The key premise of Plaintiffs' argument—that the "focus is on the reasonableness of the efforts, not the nature of the secrecy," so the requirement of secrecy can be subsumed in the reasonable efforts requirement—is incompatible with their own position that "reasonable efforts to preserve secrecy need not be successful to support the existence of a trade secret." Dkt. 1334 at 15; *see also* Masimo's Argument: Proposed Instruction No. 24A (same).  Since reasonable efforts need not succeed to

---

other persons who can obtain economic value).

-124-

1   count, proving that a company took reasonable efforts does not necessarily establish that

2   an alleged trade secret is in fact not generally known, i.e., secret.

3           Plaintiffs once again take the position that this Court should diverge from CACI

4   on this instruction (and any other instruction that happens to be unfavorable to their

5   position) because it purportedly conflicts with the text of the CUTSA.  But as discussed

6   above, this is improper.  *See supra* Apple's Position: Apple's Proposed Instruction No.

7   16B.

8           Finally, Plaintiffs are wrong that this Court has treated the "generally known"

9   requirement as part of the broader "independent economic value" inquiry.  While this

10  Court has quoted the statutory language—which includes both the "generally known"

11  and "independent economic value" elements in the same sentence—this Court's analysis

12  has considered the two elements individually.  *See, e.g.*, Dkt. 1275 at 5-7; *id.* at 7 (noting

13  in ruling on Plaintiffs' summary judgment motion that "[t]here is a genuine dispute

14  whether the [alleged trade secret] techniques were generally unknown *and if so*, whether

15  they derived value from their secrecy" (emphasis added)).

16

17

18

19

20

21

22

23

24

25

26

27

28

**MASIMO'S PROPOSED INSTRUCTION NO. 22A**[51]

**(Offered in the Alternative)**

**Trade Secrets Are Evaluated as a Whole**

If some or all of the components of an Asserted Trade Secret were generally known at the time of the alleged misappropriation, Masimo and Cercacor may still have a viable claim if they can establish that the Asserted Trade Secret as a whole was entitled to legal protection.

---

[51] **Authority:** Dkt. 1284 at 5-6.

## Masimo's Argument: Proposed Instruction No. 22A

Neither party relies on a model instruction.  Indeed, both parties argue the Court should not provide an instruction on the "combination trade secret doctrine," albeit for different reasons.  The Court should not provide an instruction on this issue because Apple has not shown that a "combination trade secret doctrine" exists, much less in the form Apple advocates.  And even Apple's purported "combination trade secret doctrine" would not apply to the facts of this case.  Masimo proposed an instruction on this issue only in case the Court decides an instruction is necessary.

Apple argues that "Apple objects to the jury being instructed on the combination trade secrets doctrine because [Masimo has] not previously attempted to put on a combination trade secret case."  Masimo is simply putting on a trade secret case.  Apple's proposed instruction creates a non-existent category of trade secrets called "combination trade secrets," attempts to force a plaintiff into choosing whether it is asserting that or a normal trade secret, and then imposes additional requirements found nowhere in the statute.

Masimo recognizes that this Court provided a type of combination trade secret instruction in *InfoSpan*.  However, this Court's Instruction No. 28 in *InfoSpan* does not support Apple's proposed combination trade secret instruction for multiple reasons.  First, Apple does not use this Court's prior instruction.  In particular, Apple omits the last sentence of this Court's instruction, which provided: "It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known."  *InfoSpan*, No. 11-cv-01062, Dkt. 655 at 34 (C.D. Cal. Aug. 10, 2016).  That instruction is close to and supports Masimo's alternative instruction.

Second, the defendant in *InfoSpan* argued for its combination trade secret instruction (which became numbered elements (1)-(3) of the Court's instruction) based on readily ascertainable arguments that this Court has repudiated.  *See id.*, Dkt. 600 at 52 (C.D. Cal. July 19, 2016) (citing *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App.

1   4th 210, 222 (2010) (for the proposition that "the alleged compilation would not be

2   evident to a customer") and *Am. Paper & Pkg'ing Prods., Inc. v. Kirgan*, 183 Cal. App.

3   3d 1318, 1326 (1986) (for the proposition that "a compilation that is 'known or readily

4   ascertainable to other persons in the [relevant industry]' is not protectable under the

5   CUTSA.")).  Because the court found "readily ascertainable" does not apply in this case,

6   the *InfoSpan* instruction based on "readily ascertainable" arguments also should not

7   apply.

8        Apple's   proposed   instruction   would   impose   special   requirements   on

9   "combination" trade secrets that are not in the statute and not in any caselaw.  Apple

10  does not purport to identify what a "combination trade secret" is, or how it differs from

11  any other kind of trade secret.  Apple's instruction suggests that a "combination trade

12  secret" includes any trade secret where "some … of the components … were generally

13  known at the time of the alleged misappropriation[.]"  That is absurd.  Consider a trade

14  secret that consists of three unknown components and two components that are generally

15  known. The combination of the five elements would necessarily be unknown.  However,

16  under Apple's *sui generis* definition, this unknown combination would have to meet

17  heightened requirements merely because "some" of the components are generally

18  known.  That is not the law, even under the higher standard required for patentability.

19  *See, e.g.*, *In re Wright*, 848 F. 2d 1216, 1220 (Fed. Cir. 1988) (quoting H.T. Markey,

20  *Why Not the Statute?*, 65 J. Pat. Off. Soc'y 331, 333-34 (1983) ("virtually all inventions

21  are 'combinations', and ... every invention is formed of 'old elements'.... Only God

22  works from nothing. Man must work with old elements").

23        Apple argued the same in opposing Masimo's *Daubert* motion.  Dkt. 1225 at 10-

24  12.  The Court did not adopt Apple's position and confirmed that any attempt to show a

25  trade secret is "generally known" must be directed towards showing "the aggregate, not

26  the individual components, is generally known."  Dkt. 1284 at 6.

27        Apple's proposal also contains numerous other incorrect statements of law.  For

28  example, Apple proposes that a trade secret must form a "unique and novel unit and that

1    are functionally interrelated such that they form a single process or design that should

2    [*sic*] properly analyzed as a single trade secret."   Apple similarly proposes the trade

3    secret must provide Masimo with a "competitive advantage" and a trade secret is "not

4    novel and unique just because it makes minor or trivial variations on well-known

5    processes, or if the variations from a generally known combination are only self-

6    evidence or easily reproducible."  No case law supports Apple's proposals.

7        The law does not "require[] that a trade secret be patentably nonobvious ***or novel***."

8    *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986).  The California

9    Court of Appeal has long held that trade secrets can be "clearly anticipated in the prior

10   art" as well as "merely a mechanical improvement on a machine or device."  *Sinclair v.*

11   *Aquarius Elecs., Inc.*, 42 Cal. App. 3d 216, 222 (1974) ("patentability is not a condition

12   precedent to the classification of a trade secret"); *see also BladeRoom Grp. Ltd. V.*

13   *Facebook, Inc.*, 2018 WL 514923, at \*3-4 (N.D. Cal. Jan. 23, 2018) ("novelty, in the

14   patent law sense, is not required for a trade secret").  This Court has also rejected any

15   argument that a trade secret must be "better" than other methods.  *Masimo Corp. v. True*

16   *Wearables Inc.*, 2021 WL 2548690, at \*4 (C.D. Cal. Apr. 28, 2021).

17       Additionally, Apple's proposal that information must not be "self-evident or

18   easily reproducible" merely repackages the "readily ascertainable" defense that this

19   Court already rejected.   *See* Dkt. 1284 at 4.   The Court should reject Apple's

20   unsupported attempt to impose numerous legally erroneous concepts under the guise of

21   a non-existent "combination trade secret doctrine."

22       Apple cites cases interpreting trade secret acts from states other than California,

23   asserting that such authorities are relevant because CUTSA is derived from the national

24   Uniform Trade Secrets Act.  But Apple ignores that, unlike most states and the Federal

25   DTSA, California does not include a "readily ascertainable" requirement.  Apple's cited

26   cases analyzing statutes that include such a requirement are inapposite.

27       Apple asserts that *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) and

28   *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D.

-129-

1   Cal. 2006) support the requirement that Masimo must establish "why the particular
2   combination is a novel and/or 'unique combination [that] affords a competitive
3   advantage[.]'"  Neither case supports Apple's statement.  To the contrary, *Nosal* held
4   that, "[i]t is well recognized that 'it is the secrecy of the claimed trade secret as a whole
5   that is determinative'" and "'[t]he fact that some or all of the components of the trade
6   secret are well-known does not preclude protection for a secret combination,
7   compilation, or integration of the individual elements.'"  *Nosal*, 844 F.3d at 1042
8   (quoting Restatement (Third) of Unfair Competition).  *O2 Micro* held the same.  *O2*
9   *Micro*, 420 F. Supp. 2d at 1089-90 ("It does not matter if a portion of the trade secret is
10  generally known, or even that every individual portion of the trade secret is generally
11  known, as long as the combination of all such information is not generally known."
12  (quoting final jury instructions)).  Apple's other case also reached the same conclusion.
13  *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 47 (2014)
14  ("even if some or all of the elements of Altavion's design were in the public domain and
15  thus unprotectable, the combination was a protectable trade secret if it was secret and
16  had independent economic value").

17      Should the Court provide an instruction concerning trade secrets with multiple
18  components, the Court should adopt Masimo's proposal because it tracks the Court's
19  *Daubert* order and the correct law.  *See* Dkt. 1284 at 6.  Masimo's proposal reflects this
20  Court's finding that a party can argue a trade secret is generally known based on "an
21  element by element" analysis "only where the aggregate, not the individual components,
22  is generally known."  Dkt. 1284 at 6.

23
24
25
26
27
28

# APPLE'S PROPOSED INSTRUCTION NO. 22B[52]

## (Offered in the Alternative)

## Second Element—Combination Trade Secret

If some or all of the components of an alleged trade secret were generally known at the time of the alleged misappropriation, Masimo and Cercacor may still state a viable claim if they can establish that the alleged trade secret was entitled to legal protection as a "combination trade secret."

In addition to meeting the requirements in Instructions 19 and 20, a combination trade secret must be composed of elements that operate together to form a unique and novel unit and that are functionally interrelated such that they form a single process or design that should be properly analyzed as a single trade secret.  Masimo and Cercacor must have possessed and used the whole alleged combination trade secret as part of their business, meaning that the combination was not created just for this litigation.  Finally, the combination must provide Masimo and Cercacor with a competitive advantage.  A combination is not novel and unique just because it makes minor or trivial variations on well-known processes, or if the variations from a generally known combination are only self-evident or easily reproducible.

---

[52] **Authority:** *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *Winston Rsch. Corp. v. Minnesota Min. & Mfg. Co.*, 350 Cal. F.2d 134, 143 (9th Cir. 1965); *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 47-49 (2014); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-90 (N.D. Cal. 2006); *Rivendell Forest Prod., Ltd. v. Georgia-Pac. Corp.*, 28 F.3d 1042, 1045-1046 (10th Cir. 1994); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990); Cal. Civ. Code §3426.1(d)(1); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 899 (Minn. 1983); *Strategic Directions Grp., Inc. v. Bristol-Myers Squibb Co.*, 293 F.3d 1062, 1065 (8th Cir. 2002); Instruction No. 28, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.);  *see also Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 160 n. 9 (2020) ("Because the CUTSA is derived from the national Uniform Trade Secrets Act, California courts consider case law from other jurisdictions applying similar sections of the Uniform Act.").

**Apple's Position: Instruction No. 22B (Proposed in the Alternative)**

Apple objects to the jury being instructed on the combination trade secrets doctrine because Plaintiffs have not previously attempted to put on a combination trade secret case. *See* Dkt. 1225 at 18. When pressed on this issue during the *Daubert* stage, the only place in the record they pointed to where this theory was purportedly disclosed was one expert's brief recitation of a portion of the *legal standard* for analyzing whether alleged trade secrets are generally known; they did not identify any place where Plaintiffs have explained why their specific alleged trade secrets satisfy the demanding requirements of the doctrine. *See* Dkt. 1208-1 at 19. When Apple's counsel identified this disclosure issue during oral argument, Plaintiffs had no answer. *See* Dkt. 1281 at 30-34.

The Court has already rightly rejected Plaintiffs' argument that the combination trade secret doctrine is a "non-existent category." *Compare* Dkt. 1208-1 at 11-12 ("Apple simply imagines a 'doctrine' and then invents standards for it.") *with* Dkt. 1284 at 5-6 (this Court noting that Plaintiffs' own case law discussed a rule under which "a combination of characteristics and components'" is protectable as a trade secret "regardless of whether particular design concepts separately qualified for protection as trade secrets" (quoting *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 48 (2014)). As this Court pointed out, the language from *Altavion* "is simply the court's resuscitation of the Tenth Circuit's holding in another case." Dkt. 1284 at 5. The relevant Tenth Circuit decision expressly explains that "[t]he *doctrine* has been established that a trade secret includes a system where the elements are in the public domain, but there has been accomplished an effective, successful, and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage." *Rivendell Forest Prods. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1046 (10th Cir. 1994) (emphasis added). This doctrine has also been recognized in the leading treatise on trade secrets. *See* 1 *Milgrim on Trade Secrets* § 1.08[5] (2023 update) (discussing trade secret protections for "new combinations of previously known

-132-

matter (capitalization omitted); *see also id.* ("Where a combination of known elements
is claimed as a trade secret, the trade secret owner has the burden of establishing that the
specific combination afforded a competitive advantage and thereby satisfies the
independent economic value requirement."); *id.* (doctrine provides "the availability of
trade protection for new and *valuable* combinations of otherwise generally known
principles").[53]

To the extent this Court permits Plaintiffs to put on a combination trade secret
case, Apple requests that the Court deliver Apple's proposed standalone instruction,
which details the requirements to prove a combination trade secret.  Apple's proposed
instruction No. 21B is consistent with this Court's past practice, which has been to
separately charge the jury on this issue.  *See, e.g.*, Instruction No. 28, *Infospan, Inc. v.
Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.)
("In addition to the other requirements for a trade secret I just listed, InfoSpan must
prove all of the following.") ("*InfoSpan* Instruction").

Specifically, Plaintiffs must at least establish (1) why the particular combination
is a novel and/or "unique combination [that] affords a competitive advantage," *e.g.*,
*United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *O2 Micro Int'l Ltd. v.
Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006), and (2) that
they owned or possessed the entire secret as a combination (as opposed to simply
creating it "just for this litigation"), *Infospan* Instruction; *see also Altavion, Inc. v.
Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 48 (2014) (in determining
possession, court must consider whether plaintiff possessed trade secret as whole rather
than whether it possessed individual components "in isolation").  Plaintiffs' assertion
that "no case law supports" these evidentiary restrictions is wrong.  Before the parties
exchanged arguments Apple provided Plaintiff with nearly a dozen citations in its

_____

[53] This rebuts Plaintiffs' reliance on *Imi-Tech*, *Sinclair*, and *Bladeroom*, none of which
deal with the special context of combination trade secrets.

"Authority" footnote for Proposed Instruction No. 22B, many of which Apple also relied upon in its opposition to Plaintiffs' *Daubert* motion, Dkt. 1225.  Plaintiffs have made no attempt to rebut those cases during the parties' exchanges.  They should not be permitted to do so for the first time in the final version of their arguments, when Apple lacks the opportunity to respond in writing.

Apple objects to Plaintiffs' counter-proposal, which repeats the same basic mistake as the second-to-last paragraph of their Proposed Instruction No. 19A.  It describes the chief benefit of the doctrine (the fact that the plaintiff need not show that every aspect of the purported secret was not generally known) without identifying any of its limitations.  Plaintiffs cite no authority that has taken such an expansive view of the doctrine.

## APPLE'S PROPOSED INSTRUCTION NO. 23[54]

### Certain Employment Agreement Provisions Are Void

Every contract by which anyone is restrained from engaging in a lawful business or profession of any kind is, to that extent, void.  The Court has determined that the language of the confidentiality provisions, non-compete provisions, and non-solicitation provisions contained in the Employee Confidentiality Agreements that Dr. Lamego and Dr. O'Reilly signed with Masimo and Cercacor is void.

---

[54] **Authority:** Cal. Bus. & Prof. Code § 16600; *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 318 (2020); *Steinberg Moorad & Dunn Inc. v. Dunn*, 136 F. App'x 6, 10 (9th Cir. 2005).

### Apple's Position: Proposed Instruction No. 23

Apple will seek a ruling from the Court that the confidentiality, non-compete, and non-solicitation provisions of the employment contracts that Masimo and Cercacor required Dr. O'Reilly and Dr. Lamego to sign are invalid under California Business & Professions Code § 16600.

The Ninth Circuit has held that a "court err[s] in failing to instruct the jury that [a relevant] clause in [an] employment contract was invalid under … Cal. Bus. & Prof. Code section 16600" where that the invalidity of that clause is material to a party's defense. *Steinberg Moorad & Dunn Inc. v. Dunn*, 136 F. App'x 6, 10 (9th Cir. 2005). The invalidity of these provisions is material to Apple's defense at least as to Plaintiffs' argument that they took reasonable efforts to maintain the secrecy of the alleged trade secrets, *see generally* Dkt. 1439 at 7-8 & n.2 (discussing relevance of confidentiality provisions when ruling on Apple's motion *in limine* No. 4), and to Apple's unclean hands defense.  Because invalidity is a question of law for the Court, *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 318 (2020), the only proper way raise validity to the jury is via a targeted instruction.

Plaintiffs offer no reasoning or authority to support their various procedural objections to Apple's proposed instruction.  Motions *in limine* are not mandatory, and there is no provision of the Federal Rules of Civil Procedure or Evidence stating that a party's legal position at trial is limited by the scope of a motion *in limine*.  Nor is there any procedural rule that would preclude Apple from seeking a legal ruling at trial simply because Apple did not move for summary judgment on that same point.  Indeed, the Ninth Circuit's *Steinberg* decision resolved a Section 16600 challenge at the jury instruction stage.

1

**Masimo's Objections to Apple's Proposed Instruction No. 23**

2   Apple's proposed instruction is wholly unsupported.  Apple cites no statute, case,

3   model instruction, or any other authority that supports its proposal.  Nor has the court

4   entered any finding that any provision "is void."  To the contrary, the Court rejected

5   Apple's "belated facial attack on the confidentiality provisions" of Masimo's Employee

6   Confidentiality Agreements in denying Apple's motion *in limine* no. 4.  Dkt. 1469 at 6–

7   7.  Apple is not entitled to a pretrial ruling on the validity of Masimo's contracts.

8   Moreover, Apple seeks to instruct the jury that the "non-compete provisions" and

9   "non-solicitation provisions" are also void even though Apple did not raise either

10  provision in its motion *in limine*.  Apple's motion addressed only the confidentiality

11  provisions of the agreements. Dkt. 1304-2 at 1.  Nor did the Court's order on the motion,

12  or the court's invitation for Apple to file an offer of proof, address any provisions other

13  than the confidentiality provisions.  Dkt. 1469 at 8 n.3.

14  Apple argues that the validity of Masimo's confidentiality provisions is material

15  to rebut Masimo's reasonable efforts to maintain secrecy of the trade secrets.  This Court

16  found those confidentiality provisions valid in *True Wearables*.  Apple also fails to

17  articulate how the validity of these provisions today would bear on Masimo's efforts to

18  maintain secrecy of its trade secrets at the time of the misappropriation.

19  Apple's arguments also lack merit for the reasons recited in Masimo's

20  forthcoming response to Apple's offer of proof on unclean hands.

21

22

23

24

25

26

27

28

## MASIMO'S PROPOSED INSTRUCTION NO. 24A[55]

### Employer Responsibility for Acts of Employees

An employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

Conduct is within the scope of employment if:

a.  It is reasonably related to the kinds of tasks that the employee was employed to performed; or

b.  It is reasonably foreseeable in light of the employer's business or the employee's job responsibilities.

---

[55] **Authority:**  CACI 3700, 3720.

**Masimo's Argument: Proposed Instruction No. 24A**

Masimo's proposed instruction regarding employer responsibility for acts of employes combines the CACI model instructions on (1) vicarious responsibility and (2) scope of employment. *See* CACI Nos. 3700 and 3720. These CACI instructions are appropriate where, as here, a corporate defendant may be responsible for actions of its employees. Apple does not identify any reason why the Court should not adopt this instruction, or identify any aspect that is allegedly inaccurate. Indeed, the first part of Apple's alternative instruction largely tracks Masimo's proposal from the model instructions, including that conduct is within the scope of employment if it is "reasonably related" to or "reasonably foreseeable" from the employee's actual responsibilities. Apple's alternative instruction then incorrectly asserts, without support, that Apple can avoid such liability if it tells its employees not to commit torts. That is not the law.

The Court should also reject Apple's proposed instruction titled "Corporations as Parties—Fair Treatment and Knowledge." There is no reason for such an instruction where all three parties are corporations. Apple's proposed instruction begins by borrowing language from Ninth Circuit's Model Instructions on agency with respect to corporations. *See* Ninth Circuit Model Instructions §§ 4.1, 4.2. But Apple omits the only sentence from those model instructions that actually addresses vicarious liability: "Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority." *Id.* § 4.2. Instead, Apple provides unhelpful examples of how vicarious liability may apply. Apple's instruction is likely to mislead the jury into thinking such a showing is required because the other instructions generally recite required, not optional, elements. Apple's proposal is also incomplete regarding issues that are fully addressed in other instructions on trade secret misappropriation and the purported "secrecy requirement" for trade secret protection, e.g. Instruction Nos. 18, 19. Apple's proposed instruction could only confuse the jury.

Apple's proposal asserts that Masimo must prove Apple "knew or had reason to know that it had improperly acquired the information described by the alleged trade

1    secret through an employee who violated a duty of confidentiality to Masimo or
2    Cercacor." But that is similar to the standard for showing *direct* liability. Apple thus
3    seeks to eliminate Masimo's theory of *vicarious* liability by defining vicarious liability
4    as requiring the same proof as direct liability.

5        Apple argues that "the appropriate imputation question is when *knowledge* can be
6    imputed to the company, not when *liability* can be imputed." Apple asserts, without
7    support, that "indirect misappropriation" under Cal. Civ. Code § 3426.1(b)(2)(B)(iii) is
8    the only claim Masimo has preserved. That is false. As discussed, Masimo alleged
9    direct liability for misappropriation through acquisition, use, and disclosure. *See, e.g.*,
10   Dkt. 296-1 ¶¶ 228-232 (acquisition), 229-257 (use and disclosure). Masimo has also
11   alleged indirect liability through respondeat superior. *Id.* ¶¶ 258-261.

12       Apple cites two cases to support its suggestion that the only valid theory of
13   indirect misappropriation is set forth in Cal. Civ. Code §3426.1(b)(2)(B)(iii). Both cases
14   referred to the statute in referencing "indirect" misappropriation, but neither held that is
15   the only type of indirect misappropriation or that respondeat superior does not apply to
16   misappropriation. *See Steinberg Moorad & Dunn, Inc. v. Dunn*, 2002 WL 31968234, at
17   *23 (C.D. Cal. Dec. 26, 2002), *rev'd in part on other grounds*, 136 Fed. App'x 6, 9 (9th
18   Cir. 2005); *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17,
19   2020).

20       Apple asserts, without explanation, that Masimo's proposed instruction somehow
21   conflicts with the inevitable disclosure doctrine. Apple's argument makes no sense.
22   Inevitable disclosure bars a plaintiff from filing suit based on asserting that working in
23   the field will inevitably lead to trade secret misappropriation. Respondeat superior
24   allocates liability for acts of misappropriation. There is no conflict between the two.

25       Apple argues Masimo did not preserve a theory of liability based on respondeat
26   superior. Apple is wrong. Masimo's complaint specifically alleges that Apple is "liable
27   for its employees' use and disclosure of Plaintiffs' Confidential Information under the

28

1   doctrine of respondeat superior ….” Dkt. 296-1 ¶ 260.  Masimo then included extensive

2   factual allegations explaining its respondeat superior allegations.  *Id.* ¶¶ 258-261

3       Apple claims the Court has “not directly ruled on Plaintiffs' respondeat superior

4   theory…” Not so.  Apple moved to dismiss those allegations.  Both parties agreed

5   respondeat superior is a valid legal theory for trade secrets and both parties agreed that

6   *Brain Injury Ass'n of Cal. v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020)

7   set forth the correct legal standard.  *See* Dkt. 309-1 at 16; Dkt. 323 at 19.  The Court held

8   “Plaintiffs have stated a theory of misappropriation based on respondeat superior as to

9   all relevant trade secrets.” Dkt. 350 at 9.  The Court found Masimo failed to plead

10  sufficient facts to establish respondeat superior for only the “business-, marketing-, and

11  hospital-related trade secrets ….” *Id.* at 10.  Thus, there should be no dispute that

12  Masimo presented a sufficient theory at least for the technical trade secrets.  For the

13  business and marketing trade secrets, discovery revealed such facts and Masimo intends

14  to establish those facts at trial.  *See* Fed. R. Civ. P. 15(b)(2).  Apple also seeks to

15  differentiate between Apple employees that are former Masimo employees and

16  “different” employees that are not former Masimo employees.  As support, Apple cites

17  only *Herman* and a general treatise on agency.  Neither addresses respondeat superior

18  liability for trade secret misappropriation.  Moreover, Apple's own cited authority states

19  that “[k]nowledge acquired by an agent is imputed to the principal even when the

20  knowledge is not actually communicated to the principal.”  2B Cal. Jur. 3d Agency

21  § 177.

22      Finally, Apple seeks to include an instruction that the decision of a Masimo or

23  Cercacor employee to “disclose[] elements” of trade secrets can be “imputed to Masimo

24  or Cercacor.”  Apple cites no authority for such an instruction, which is inconsistent with

25  the law that Masimo need only take “reasonable” efforts to protect its trade secrets.  Such

26  efforts need not be perfect or prevent all potential acts of misappropriation.

27

28

# APPLE'S PROPOSED INSTRUCTION NO. 24B[56]

## Corporations as Parties—Fair Treatment and Knowledge[57]

---

[56] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 4.1, 4.2; Dkt. 1275 at 10-11 (holding that the relevant factual inquiry as to "whether Apple knew or should have known that Lamego breached []his duty" is whether "Apple had reason to believe that Lamego breached his duty by supplying information to it shortly after being hired"); 3 Witkin, Summary 11th Agency § 165 (2022) ("[W]here actual knowledge in the subjective sense is required, imputed knowledge will not suffice."); 2B Cal. Jur. 3d Agency § 177 (Where "the situation specially requires that the principal have actual knowledge, the constructive knowledge with which the principal is charged by reason of the knowledge of the agent" does not suffice.); *Herman v. Los Angeles Cnty. Metro. Transportation Auth.*, 71 Cal. App. 4th 819, 828 n.7 (1999) (holding that uncommunicated knowledge of an agent is not imputed to the principle "where the principal must have actual knowledge" under the applicable standard for liability); *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020) (holding that indirect misappropriation requires the defendant had actual knowledge or had reason to have actual knowledge that information was acquired by improper means).

[57] **Apple's Position:** Should the Court disagree that Apple's preferred instruction is appropriate, Apple offers in the alternative the following instruction on the imputation of knowledge in the case of an employee's unauthorized act:

> Usually, a corporation is charged with the knowledge that its employees obtained within the scope of their employment.  Conduct is within the scope of employment if:
>
> 1. It is reasonably related to the kinds of tasks that the employee was employed to perform; or
>
> 2. It is reasonably foreseeable in light of the employer's business or the employee's job responsibilities.
> However, if you find that Dr. Lamego or Dr. O'Reilly violated a duty of confidentiality to Masimo or Cercacor, and that such a confidentiality violation was prohibited by Apple, then Apple can only be deemed to have known or that it should have known about the confidentiality violation if another Apple employee knew or should have known about the authorized action.

*See* 2B Cal. Jur. 3d Agency § 105 ("[W]here knowledge of an agent's unauthorized act is acquired by another agent while acting within the scope of his or her authority for the

1   The Plaintiffs and Defendant in this case are corporations.  A corporation is

2   entitled to the same fair and conscientious consideration by you as any party.

3   Under the law, a corporation is considered to be a person.  It can only act through

4   its employees, agents, directors, or officers.

5   For Masimo and Cercacor to prove that Apple misappropriated an alleged trade

6   secret by use or by disclosure, they must prove that Apple knew or had reason to know

7   that it had improperly acquired the information described by the alleged trade secret

8   through an employee of Apple who violated a duty of confidentiality to Masimo or

9   Cercacor.  Masimo and Cercacor can prove this if they prove that a different employee

10  of Apple learned facts within the scope of his or her job such that he or she knew or had

11  reason to know that Masimo and Cercacor's former employee had breached his duty of

12  confidentiality.

13  Likewise, to the extent that an employee of Masimo or Cercacor, while acting

14  within the scope of his or her job, disclosed to the public elements of the information

15  that are now alleged to be trade secrets, those actions can be imputed to Masimo or

16  Cercacor.

25  same principal, that knowledge will be imputed to the principal to satisfy the requirement

26  that the principal, to be bound by a ratification, must have full knowledge of the

    circumstances surrounding the unauthorized transaction.  However, the knowledge of

27  the agent who performed the unauthorized act ordinarily is not sufficient for this

28  purpose.").

**Apple's Position: Proposed Instruction No. 24B**

Apple objects to Plaintiffs' proposal to instruct the jury on *respondeat superior*, as allowing Plaintiffs to satisfy their burden to establish misappropriation based on vicarious liability undermines CUTSA's plain text.[58]   In a case where a defendant corporation allegedly obtained a trade secret through an employee, the appropriate imputation question is when *knowledge* can be imputed to the company, not when *liability* can be imputed.   Specifically, where a defendant allegedly obtained a trade secret through a third-party conduit, such as a plaintiff's former employee, CUTSA requires proof that the defendant "knew or had reason to know that [its] knowledge of the trade secret" was "[d]erived from or through a person who owed a duty to the [plaintiff] to maintain its secrecy."   Cal. Civ. Code §3426.1(b)(2)(B)(iii).   This is a so-called "indirect misappropriation" claim, and it is the only one Plaintiffs have preserved. *See Steinberg Moorad & Dunn, Inc. v. Dunn*, 2002 WL 31968234, at *23 (C.D. Cal. Dec. 26, 2002), *rev'd in part on other grounds*, 136 Fed. App'x 6, 9 (9th Cir. 2005); *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020); *infra* Apple's Argument in support of Proposed Instruction No. 26B.

Allowing a verdict to rest on imputation of the alleged conduit employee's liability would render the Legislature's "knew or had reason to know" requirement a nullity.   Under Plaintiffs' Proposed Instruction No. 24A, there would never be a need to show that a defendant employer "knew or had reason to know" about an employee's wrongful acquisition of a trade secret, because the non-party *employee's* knowing use would suffice for the employer's liability.   Plaintiffs' approach would also clash with California's longstanding rejection of the inevitable disclosure doctrine—i.e., the notion that a plaintiff can prove a misappropriation claim simply by establishing that the

---

[58] Plaintiffs' assertion that "Apple has not provided any reason why the Court should not adopt [their proposed] instruction or identify any aspect as allegedly inaccurate" is highly misleading, as it was written *before* Apple served Plaintiffs with its arguments.

1  defendant employed its former employee in a position that would "inevitably lead him
2  to rely on the plaintiff's trade secrets."  *See U.S. Legal Support, Inc. v. Hofioni,* 2013
3  WL 6844756, at *11 n.8 (E.D. Cal. Dec. 20, 2013) (citing *Whyte v. Schlage Lock Co.*,
4  101 Cal. App. 4th 1443, 1458 (2002)).

5       Tellingly, Plaintiffs do not identify any Ninth Circuit case law that applies the
6  *respondeat superior* doctrine to a CUTSA claim—indeed, they do not cite any case law
7  at all.  Although this Court has not directly ruled on Plaintiffs' *respondeat superior*
8  theory, it implicitly rejected that theory at the summary judgment stage where the Court
9  explained that the relevant test is whether "Apple had reason to believe Lamego
10  breached his duty by supplying information to it."  Dkt. 1275 at 11; *see also* Dkt. 1085-
11  1 at 27 n.4 (Plaintiffs' motion for partial summary judgment, arguing for *respondeat*
12  *superior* liability).  In other words, the Court's ruling indicated that the question for trial
13  is whether Apple knew or had reason to believe Lamego and/or O'Reilly breached their
14  duties to Plaintiffs, not whether Lamego and/or O'Reilly themselves knew or had reason
15  to know they breached their obligations.  *See also Cisco Systems, Inc. v. Chung*, 2023
16  WL 2622155, at *12 (N.D. Cal. Mar. 22, 2023) ("[*E*]*ven if*" there were "a triable issue
17  as to" the company's vicarious "disclosure or use, [the plaintiff] must *also* show that any
18  such disclosure/use was made when [the employer] knew or had reason to know that the
19  information was either (1) obtained by improper means, (2) subject to a duty to maintain
20  its secrecy or limit its use."  *Id.* (emphases added)).

21       Apple's proposed instruction, on the other hand, complies with the agency law
22  principle that "where the principal must have actual knowledge" under the applicable
23  standard of liability, the uncommunicated knowledge of an agent is not imputed to the
24  principal.  *See Herman v. Los Angeles Cnty. Metro. Transportation Auth.*, 71 Cal. App.
25  4th 819, 828 n.7 (1999); *see also* 2B Cal. Jur. 3d Agency § 177 (Where "the situation
26  specially requires that the principal have actual knowledge, the constructive knowledge
27  with which the principal is charged by reason of the knowledge of the agent" does not
28  suffice.).  To be liable, Apple must have actual knowledge of, for example, Lamego's

alleged use of Plaintiffs' alleged trade secret information.  But Plaintiffs could not establish Apple's actual knowledge by imputing Lamego's awareness of his own alleged unauthorized action.  To establish that Apple actually knew, Plaintiffs must instead prove that *another* Apple employee actually knew the required information, and that second employee's knowledge can be imputed to company under the standard rule.  *See* 2B Cal. Jur. 3d Agency § 104 ("[W]here knowledge of an agent's unauthorized act is acquired by another agent while acting within the scope of his or her authority for the same principal, that knowledge will be imputed to the principal" but "the knowledge of the agent who performed the unauthorized act ordinarily is not sufficient for this purpose.").

The last paragraph of Plaintiffs' argument demonstrates why their proposed instruction is flawed.  Plaintiffs object to one sentence of Apple's proposed instruction (which provides that a decision of one of Plaintiffs' employees to disclose the purported trade secrets can be imputed to Plaintiffs) because such an approach is inconsistent with CUTSA's requirement that employers need only take reasonable efforts to maintain secrecy.  If that were so, then this Court need not deliver that sentence, but by the same token, Plaintiffs' entire proposed instruction—which is fundamentally inconsistent with CUTSA's knowledge requirement—cannot stand.

**MASIMO'S PROPOSED INSTRUCTION NO. 25[59]**

**Trade Secret Misappropriation by Acquisition**

  Apple misappropriated Asserted Trade Secret by acquisition if Apple acquired the Asserted Trade Secret and knew or had reason to know that Apple used improper means to acquire it.

---

[59] **Authority:** CACI No. 4405.

**Masimo's Argument: Proposed Instruction No. 25**

Masimo's proposed instruction tracks exactly the language of CACI No. 4405. There is no dispute that Masimo accuses Apple of misappropriation by acquisition. Masimo alleged that Apple misappropriated Masimo trade secrets by acquisition. Dkt. 296-1 (Fourth Amended Complaint) ¶¶ 224, 228, 232. Masimo's expert, Dr. Vijay Madisetti, opined that Apple acquired each of Masimo's asserted trade secrets.

Apple argues that the jury should not be instructed on this theory because Masimo purportedly did not disclose a ***damages*** theory that is based ***solely*** on Apple's misappropriation by acquisition. The Court should reject Apple's argument for three reasons.

First, the statute refutes Apple's assertion (and the Directions for Use in CACI) that proving damages is required to establish liability for trade secret misappropriation. CUTSA expressly provides for equitable recovery for misappropriation even where a plaintiff fails to prove it suffered damages and fails to prove the defendant was unjustly enriched:

> If ***neither damages nor unjust enrichment caused by misappropriation are provable***, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

Cal. Civ. Code § 3426.3(b) (emphasis added). Moreover, in *True Wearables*, this Court has also found liability and granted an injunction even though it did not award any monetary relief. *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *36 (C.D. Cal. Nov. 7, 2022). Thus, Apple's argument—that an alleged failure to disclose a theory of damages could prevent Masimo from seeking a jury verdict on liability for trade secret misappropriation via acquisition—is wrong as a matter of law.

Second, Apple's argument is an untimely request for summary judgment. Apple is free to argue to the jury that Masimo failed to present evidence of damages due to misappropriation by acquisition. But Apple cannot eliminate Masimo's claim for misappropriation via acquisition before the trial begins.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     Third, Masimo disclosed damages theories that are not limited to any particular form of misappropriation, and included misappropriation by acquisition, use, or disclosure.   For example, Masimo disclosed that Apple's misappropriation by acquisition harmed Masimo and unjustly enriched Apple, potentially even before Apple used or disclosed the trade secrets.   Masimo disclosed that, "[b]y misappropriating Masimo's trade secrets, Apple concluded it could avoid engaging with Masimo and Cercacor on terms for a business relationship and deprived Masimo and Cercacor of the benefit of that business relationship."   *See* Masimo's April 15, 2022, Supplemental Response to Apple's Interrogatory No. 17 at 11, 16.   Masimo further explained that "Apple unjustly benefited from the saved cost of development and a head start period, which may have been indefinitely long."   *Id.* at 24-25.

     Indeed, before the Court ruled on Apple's *Daubert* motion, Apple moved to exclude Masimo's damages expert because his opinion was based on Apple's acquisition, disclosure, or use.   *See e.g.*, Dkt. 1116-1 at 19-20 (Apple argued "according to Kinrich 'if the jury finds that Apple misappropriated one secret that it never used' his calculations remain the same.'"); Dkt. 1198-1 ("Plaintiffs concede that 'Kinrich's calculations do not depend on the specifics of how Apple misappropriated Masimo's trade secrets.'")   Thus, Apple's prior briefing reveals that even Apple understood Masimo's damages theory included misappropriation by acquisition.

**Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 25**

The Directions for Use throughout CACI's Trade Secrets chapter are clear and consistent: A "misappropriation by acquisition" "instruction should not be given unless there is evidence that the acquisition resulted in damages, other than damages from related disclosure or use." Directions for Use, CACI 4405; *accord* Directions for Use, CACI 4400 (Misappropriation of Trade Secrets—Introduction); Directions for Use, CACI 4401 (Misappropriation of Trade Secrets—Essential Factual Elements). Plaintiffs have not preserved any argument for how mere acquisition (as opposed to use or disclosure) could have caused harm or unjust enrichment. Nor is there any evidentiary basis in the record from which a reasonable juror could find that mere acquisition (without use or disclosure) "caused" "actual loss" or "unjust enrichment." Cal. Civ. Code § 3426.3 (a). Plaintiffs cite no case and provide no explanation for why this Court should simply disregard CACI's Directions for Use.

Apple has repeatedly raised this preservation issue in filings and other communications related to both the Joint Pre-Trial Order and these jury instructions. *See, e.g.*, Dkt. 1411 at 7 n.5 ("Apple objects to Plaintiffs seeking damages based on acquisition only; Apple contends no such damages theory has ever been disclosed."). Despite Apple's repeated requests, Plaintiffs did not address the question until March 9, 2023. Even then, their response lacked pin cites or any specific explanation of how the interrogatory response disclosed an acquisition theory of damages. (Plaintiffs also quoted *Apple's* briefing regarding Plaintiffs' expert damages report, but the cited passage specifically asserted that Mr. Kinrich had "assessed damages on a *per use* basis." Dkt. 1116-1 at 20 (emphasis added).)

On March 23, 2023, Plaintiffs finally provided the supposed basis for their damages claim, but the materials they point to are insufficient. For example, they rely on allegation*s* in the operative complaint, but such unsupported assertions cannot lay the requisite *evidentiary* foundation for a jury instruction. Plaintiffs also reference Dr.

Madisetti's expert report, but Madisetti addressed only whether Apple acquired the purported secrets—he was not asked to provide a damages theory.

Finally, Plaintiffs point to two passages of an interrogatory response, but neither supports a theory that Plaintiffs suffered harm from acquisition alone. For instance, Plaintiffs assert that Apple allegedly avoided entering a "business relationship" with Plaintiffs, "depriv[ing] Masimo and Cercacor of the benefit of that business relationship." Response to Interrogatory No. 17 at 11. But Apple's mere acquisition of the information would not permit Apple to "avoid engaging" with Plaintiffs; for this theory to work, Apple would have had to make *use* of the information in some way. For similar reasons, Plaintiffs' allegation that "Apple unjustly benefited from the saved cost of development and a head start period," *id.* at 16, does not identify a theory of acquisition damages. Apple would not have benefited unless it *used* the alleged trade secret information. In short, both of "[t]hese theories reference acquisition only insofar as it forms a logical prerequisite to use or disclosure." Order Re Jury Instruction on Damages Based Only On Acquisition, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 18, 2018), Dkt. 2495 at 5.

Because Plaintiffs lack any evidentiary foundation to argue that they are entitled to damages for misappropriation by acquisition, Apple objects to their request for an instruction on that front, and it should be rejected. A party is only "entitled to an instruction about his or her theory of the case if it is supported by law *and has foundation in the evidence.*" *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (emphasis added). Because Plaintiffs have not disclosed or preserved any argument that mere acquisition caused either harm or unjust enrichment, they cannot now "fairly raise" the theory that would require the Court to deliver "such an instruction." *United States v. Begay*, 33 F.4th 1081, 1088 (9th Cir. 2022).

Plaintiffs' legal arguments are unavailing. They contend that even if Apple's alleged acquisition caused no harm or unjust enrichment, the jury should be charged on misappropriation by acquisition because Plaintiffs could supposedly obtain reasonable

royalties merely for proving Apple's harmless acquisition.  As an initial matter "[u]nder California trade secret law, [Plaintiffs] must show 'use,' neither 'acquisition' nor 'disclosure' are sufficient for reasonable royalty damages." *Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *7 (N.D. Cal. Mar. 22, 2023).  But even if acquisition alone could support a reasonable royalties award, Plaintiffs' argument misunderstands the purpose of the reasonable royalty remedy.  CUTSA provides for a reasonable royalty only where the court determines there was injury or "unjust enrichment" caused by proven misappropriation but it is "*unprovable*."  *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 623 (9th Cir. 1999); Cal. Civ. Code § 6426.3(b).  The Ninth Circuit has recognized that "[c]ases finding unjust enrichment unprovable under § 3426.3 have involved unusual circumstances," such as an "infringing product never brought to market, just used internally," or "infringing technology [that] was only a tiny part of value of complex software."  *Id.* (citing *Unilogic v. Burroughs*, 10 Cal.App.4th 612, 626-630 (1992) and *Vermont Microsystems v. Autodesk*, 138 F.3d 449 (2d Cir.1998)).  Plaintiffs identify no case granting a reasonable royalty where, as here, there is no theory of how misappropriation by acquisition standing alone caused harm or unjust enrichment.

Second, Plaintiffs argue that Apple is procedurally barred from objecting to charging the jury on misappropriation by acquisition because Apple did not move for summary judgment on this issue.  Plaintiffs cite no authority for this proposition and for good reason—it is *Plaintiffs* that must establish the legal and factual bases for their proposed instructions.  *See Clem*, 566 F.3d at 1181.  Plaintiffs are also wrong to describe objecting to a proposed jury instruction as trying to "eliminate … [a] claim … before the trial has begun," since these arguments will likely not be resolved until the charge conference.

## MASIMO'S PROPOSED INSTRUCTION NO. 26A[60]

### Trade Secret Misappropriation by Use

Apple misappropriated a Masimo and Cercacor trade secret by use if Apple:

1. Used it without Masimo and Cercacor's consent; and

2. Did any of the following:

    a. Acquired knowledge of the Asserted Trade Secrets by improper means; or

    b. At the time of use, knew or had reason to know that Apple's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    c. At the time of use, knew or had reason to know that Apple's knowledge of the trade secret was derived from or through a person who owed a duty to Masimo or Cercacor to maintain its secrecy or limit its use.

---

[60] **Authority:**  CACI No. 4407; Cal. Civ. Code § 3426.1(b)

**Masimo's Argument: Proposed Instruction No. 26A**

Masimo's proposed instruction is based on the language of the statute and the model instruction regarding misappropriation by use.  *See* Cal. Civ. Code § 3426.1(b); CACI No. 4407.

The Court should reject Apple's proposed instruction for multiple reasons.

First, Apple falsely suggests that "use" requires that Apple have incorporated the trade secret "into its own manufacturing technique or product."  Those are examples of use, but Apple's proposed instruction would mislead the jury into thinking those are the only ways to misappropriate a trade secret through use.  Apple provides no support for limiting the jury to finding misappropriation based only on such acts.  Apple's instruction ignores the myriad other ways the jury could find Apple misappropriated Masimo's trade secrets, including by *using* Masimo's trade secrets to develop Apple products and test procedures, or by *using* Masimo's trade secrets to avoid spending time and effort pursuing dead ends.  Indeed, Apple's proposed restrictive language is inconsistent with Apple's acknowledgement later in the same instruction that misappropriation can include using "information in connection with manufacturing, producing, researching and developing, or marketing" Apple's products.

Second, Apple ignores the structure and language of the statute.  As discussed above with regard to Proposed Instruction No. 15A, the statute provides that misappropriation by use can occur if a person:

(A)    Used improper means to acquire knowledge of the trade secret; or

(B)    At the time of … use, knew or had reason to know that his or her knowledge of the trade secret was: …

    (ii)    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    (iii)    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. … ."

Cal Civ. Code § 3426.1(b)(2).  Masimo will present evidence in support of all of the foregoing categories of misappropriation at trial.  Not only does Apple propose an instruction that rewrites the statutory elements, but it also ignores misappropriation by use under (A) and (B)(iii) above.  Thus, Apple's proposed instruction omits statutory provisions applicable to this case.

Third, the errors in Apple's proposed instructions are confirmed by Apple's Proposed Instruction No. 28B regarding misappropriation by disclosure.  The statute addresses misappropriation by disclosure and use together.  *See* Cal. Civ. Code § 3426.1(b) ("At the time of disclosure or use, … .").  The statute identifies the same elements as applying to both categories.  *Id.*  Yet Apple inexplicably proposes far more restrictive language for misappropriation by use.  Apple's internal inconsistencies confirm that Apple is imposing non-existent requirements.

Fourth, Apple's proposed instruction is improperly limited to O'Reilly and Lamego.  Masimo will prove that Apple initially acquired trade secrets via O'Reilly and Lamego.  But Apple seeks to limit the jury to finding knowledge that O'Reilly and Lamego had the required knowledge or duty.  The jury may find that others at Apple had knowledge that the trade secret was acquired under a duty or derived from someone owing a duty without knowing specifically who that person was.

Fifth, Apple's proposed instruction rewrites the statute and confusingly incorporates instructions regarding misappropriation through derivation into the instruction regarding misappropriation through use.  The Court should instruct the jury regarding derivation as part of the separate Proposed Instruction No. 27.

Apple's proposed instruction is also biased and unbalanced.  This is evident from the last three paragraphs of Apple's proposal, which do not appear in the CACI model instruction.  Apple's instruction describes what is "not sufficient" to show Apple had access to the trade secrets or to speculate about inevitable use but does not describe what is sufficient for such a showing.

The second to last paragraph of Apple's proposal risks biasing the jury against Masimo by suggesting a heightened burden before the jury could find for Masimo (e.g., "provided that the information Apple actually used was substantially derived from the alleged trade secret").  The last paragraph inaccurately asserts that Masimo must show that "another person at Apple knew or had reason to know that Apple had improperly obtained an alleged trade secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly."  Apple provides no support for such an instruction.  As discussed above in the context of Proposed Instruction No. 24A, Apple seeks to instruct the jury incorrectly on ways that Apple could avoid liability for misappropriation by its employees.

Apple argues that Masimo has disclosed only a theory that Apple obtained Masimo's trade secrets from Lamego and O'Reilly after Apple hired them.  As explained in Proposed Instruction No. 24A, Masimo disclosed a theory of respondeat superior that would hold Apple liable for the acts of its employees.  Thus, the other statutory acts of improper use and disclosure are applicable and have been disclosed in this case.

Apple argues that its proposal distinguishes between "mere access to a trade secret, which is not actionable, and misappropriation by use."  Apple also argues that it properly included an instruction on the inevitable disclosure doctrine.  But Masimo never argued that "mere access to a trade secret" was sufficient to show misappropriation.  Nor has Masimo ever relied on inevitable disclosure.  Indeed, this Court distinguished Apple's cited authority (*Hooked*) because Masimo is ***not*** relying on the inevitable disclosure doctrine.  *See Masimo Corp. v. Apple Inc.*, 2021 WL 925885, at *8 (C.D. Cal. Jan. 6, 2021).  Allowing Apple to present these instructions to the jury would be confusing because it addresses arguments not at issue.

Apple's proposal also combines separate concepts into a single sentence (access to trade secrets and influencing designs by non-trade secret information).  Taken together, Apple's instruction could cause the jury to believe that accessing Masimo's trade secrets to influence Apple's designs is not actionable.  The opposite is true.  *See*

-156-

1   *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) (improper "use" of a trade

2   secret includes "[e]mploying the confidential information" in almost any way, including

3   in "research or development"); *see also O2 Micro Int'l Ltd. V. Monolithic Power sys.,*

4   *Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005) ("internal experimentation with trade

5   secret information not resulting in a market product can constitute use"), *amended on*

6   *other grounds by* 420 F. Supp. 2d 1070.

7         Apple cites *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332,

8   (2020), but that case addressed the inevitable disclosure doctrine.  It held "evidence that

9   Apple hired engineers with knowledge of Hooked's trade secrets and that the engineers

10  inevitably would have relied on that knowledge in their work for Apple does not support

11  a claim for improper acquisition of a trade secret."  *Id.*  As discussed above, the Court

12  previously distinguished *Hooked* because Masimo is ***not*** relying on the inevitable

13  disclosure doctrine.  *See Masimo Corp. v. Apple Inc.*, 2021 WL 925885, at *8 (C.D. Cal.

14  Jan. 6, 2021).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPLE'S PROPOSED INSTRUCTION NO. 26B[61]

### Third Element—Misappropriation by Use

The third element of Masimo and Cercacor's claim with respect to an alleged trade secret is that Apple misappropriated through improper use or disclosure.  I will now explain what these terms mean.

Masimo and Cercacor can prove that Apple misappropriated by use a particular alleged trade secret if they prove that Apple both:

1. Used the alleged trade secret without Masimo or Cercacor's consent; and

2. At the time of its use, knew or had reason to know that (i) Apple's knowledge of the alleged trade secret came from or through Marcelo Lamego or Michael O'Reilly, and (ii) Dr. Lamego and Dr. O'Reilly had a duty to Masimo and Cercacor to limit use of the alleged trade secret.

To prove "use," it is not sufficient to show either that Apple had access to the alleged trade secret while developing its own products or that Apple's product design or practices were influenced by non-trade secret information obtained from a former employee of Masimo or Cercacor.  Nor is it enough to speculate that a former employee of Masimo or Cercacor would inevitably have used the alleged trade secret in his or her work at Apple.

---

[61] **Authority:** CACI 4407 (adapted); Instruction No. 34, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal.App.4th 210, 224 (2010), *disapproved on other grounds Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011) (One "engages in the 'use' of a secret, in the ordinary sense, when he directly exploits it for his own advantage, e.g., by incorporating it into his own manufacturing technique or product."); *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332 (2020); Court's Penultimate Jury Instruction on Trade Secret Misappropriation No. XV, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 3, 2018) Dkt. 2449 at 7-8; *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1997 (S.D. Cal. 2012) (describing derivative use).

-158-

Masimo and Cercacor may still prove that Apple disclosed or used the alleged trade secret if Apple knew it had acquired the alleged trade secret through improper means and then Apple built upon or modified the alleged trade secret before disclosing or actually using the resulting information in connection with manufacturing, producing, researching and developing, or marketing Apple Watch, provided that the information Apple actually used was substantially derived from the alleged trade secret.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the alleged use, another person at Apple knew or had reason to know that Apple had improperly obtained an alleged trade secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

**Apple's Position: Proposed Instruction No. 26B**

The parties agree that CACI 4407 should serve as the basic model for this instruction. Only Apple's proposal, however, accurately reflects the record in this case, as Plaintiffs' counter-proposal includes two theories of misappropriation that Plaintiffs have not preserved (i.e., (2)(a) and (2)(b)).

Specifically, the Directions for Use accompanying CACI 4407 state that "[i]n element 2, select the applicable statutory act(s) alleged to constitute misappropriation by use," and the only theory Plaintiffs have disclosed is "indirect misappropriation," i.e., that Apple obtained their alleged trade secrets through Plaintiffs' former employees, Marcelo Lamego and Dr. Michael O'Reilly, after Apple hired them. *See CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020) (describing requirements for indirect misappropriation); *see also supra* Apple's Position: Proposed Instruction No. 24B. Plaintiffs have failed to identify an evidentiary basis for presenting the alternate theories of improper use listed in their proposed instruction to the jury. Plaintiffs' assertion that they "will present evidence in support of all of the foregoing categories of misappropriation at trial" is wholly inadequate. If there is no evidentiary basis in the discovery record, then Plaintiffs' proposed instruction should be rejected. And if Plaintiffs have specific evidence in mind and are intentionally sandbagging Apple's ability to propose a responsive instruction and respond to Plaintiffs' proposed instruction in writing, their conduct is improper. Apple would be severely prejudiced if Plaintiffs subsequently identify specific evidence, because Apple would be denied an opportunity to respond in writing. Apple raised all these points in an email to Plaintiffs' counsel on March 24, 2023, but Plaintiffs refused to identify the factual underpinnings of their alternative liability theories—they should not be permitted to do so at a later date.

Plaintiffs mislead when they fault Apple's proposed instruction for "limit[ing] the jury to finding that O'Reilly and Lamego had the required knowledge or duty." Although Plaintiffs assert that "[t]he jury may properly find that others at Apple had the

-160-

required knowledge or duty," they have identified no purported evidentiary basis for this claim, and none is apparent in the discovery record.  Indeed, this Court recently confirmed that "Plaintiffs have not alleged that employees other than Drs. O'Reilly and Lamego misappropriated trade secrets."  Dkt. 1439 at 3.

The remainder of Apple's proposed instruction lays out the metes and bounds of Plaintiffs' theory of indirect misappropriation.  For example, the second-to-last paragraph of Apple's proposed instruction describes the related rule of derivative use, i.e., the various ways in which information could be incorporated into a manufacturing process or product.  Apple's proposed language—that Plaintiffs must that Apple "unlawfully acquired and then built upon or modified" the alleged trade secret—follows the test articulated in *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012), a case Plaintiffs themselves rely upon.

The paragraph beginning at line 13 addresses the evidence required to distinguish between a party's mere access to a trade secret (which is not actionable) and misappropriation by use.  *See Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 333 (2020).  Apple's proposed language in this paragraph adapts language from this Court's instructions in *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.).  It also notes California's rejection of the "inevitable disclosure doctrine."  *See supra* Apple's Position:  Proposed Instruction No. 24B (discussing inevitable disclosure).  While Plaintiffs complain that enunciating these legal rules make the "proposed instruction … biased," Plaintiffs do not assert that Apple's language misstates the law, and they cite no authority suggesting that different standards apply.

The last sentence of the instruction recites the proper standard for imputed knowledge in this context.  *See supra* Apple's Position:  Proposed Instruction No. 24B.

Finally, the Court should reject Plaintiffs' remaining objection—i.e., that Apple's proposed misappropriation-by-disclosure instruction is simpler.  This merely reflects

1   that determining whether information was "used" is more complicated than determining

2   whether it was disclosed.  Apple's proposed instructions reflect these relative challenges.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MASIMO'S PROPOSED INSTRUCTION NO. 27[62]

### Trade Secret Misappropriation—Derivation

Apple misappropriated an Asserted Trade Secret if Apple unlawfully acquired it and then built upon or modified it before using, disclosing, or deriving a benefit from it, including by:

1.   Using, disclosing, or deriving a benefit from a technique or information derived from the Asserted Trade Secret;

2.   Using, disclosing, or deriving a benefit from a technique or information closely resembling the Asserted Trade Secret;

3.   Adding independent improvements or modifications, so long as the product or process is substantially derived from the Asserted Trade Secret; or

4.   Using, disclosing, or deriving a benefit from the Asserted Trade Secret without using all of the elements.

---

[62] **Authority:** *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *9 (N.D. Cal. Jan. 23, 2018); *Speed Tech. Assocs. v. Adaptive Commc'n Sys.*, 1994 WL 449032, at *10 (N.D. Cal. Aug. 16, 1994); *American Can Co. v. Mansukhani*, 742 F.2d 314, 328-29 (7th Cir. 1984) ("If the law were not flexible enough to reach such modifications, trade secret protection would be quite hollow.").

**Masimo's Argument: Proposed Instruction No. 27**

Neither party relies on a model instruction. Masimo's proposed instruction, while not based on a model instruction, is based on caselaw. Apple does not dispute the Court should instruct the jury with regard to some aspects of misappropriation through derivation in the context of Apple's Proposed Instruction No. 26B regarding misappropriation through use.

The Court should address misappropriation through derivation in a separate instruction for two reasons. First, a separate instruction will reduce jury confusion by limiting the number of concepts addressed in each instruction. Second, misappropriation through derivation applies to all of Masimo's misappropriation theories.

Apple criticizes Masimo's proposal as supposedly expanding misappropriation "beyond that recognized by California law" and imposing liability if Apple "derived any benefit whatsoever" from a "single, undisputedly generally known element" of a trade secret. That is false. Masimo's proposal requires that Apple unlawfully acquire the trade secret, then "build upon or modif[y] it" before deriving a benefit from it. Thus, in Apple's example, if the jury found that Apple learned about and decided to implement ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ based on technology such as AM radio, the jury would not find Apple misappropriated D3. However, if the jury found that Apple improperly acquired D3 from Lamego, built upon or modified D3 before using it, and derived a benefit from doing so, the jury could properly find that Apple misappropriated D3.

Apple concedes, as it must, that misappropriation may occur even if Apple's product or process is not identical to Masimo's description of the trade secret. "If the law were not flexible enough to reach such modifications, trade secret protection would be quite hollow." *American Can Co. v. Mansukhani*, 742 F.2d 314, 328-29 (7th Cir. 1984) Masimo's instruction helps elucidate this to the jury.

Apple also does not dispute the accuracy of point (3) of Masimo's instruction. However, Apple accuses Masimo of creating points (1), (2), and (4) in Masimo's

instruction by cherry-picking quotes from the caselaw.  Apple  is wrong, and Masimo's cases support Masimo's proposed instruction.

For example, *SkinMedica* held: "In the context of trade secret misappropriation, information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived." *SkinMedica*, 869 F. Supp. 2d 1176, 1198 (S.D. Cal. 2012).

*BladeRoom* rejected a defendant's arguments "that its design did not incorporate the 'limitations' or 'elements'" of the trade secrets.  *BladeRoom Group Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *9 (N.D. Cal. Jan. 23, 2018).  The court further held that such arguments do not exclude the possibility that a reasonable jury could find the defendant's product or process was "substantially derived" from the trade secrets.  *Id.*

*Speech Tech.* similarly found that "incidental differences" between the trade secret and the "redesigned" defendant product "do not absolve defendants from liability for misappropriation of trade secrets." *Speech Tech. Associates v. Adaptive Commc'n Sys., Inc.*, 1994 WL 449032, at *10 (N.D. Cal. Aug. 16, 1994)

Finally, *American Can* held that "a party may not use another's trade secret, ***even with independent improvements or modifications***, so long as the product or process is substantially derived from the trade secret." *American Can*, 742 F.2d at 328–29.  Each of Masimo's points (1), (2), and (4) are supported by these cases.

Apple argues that derivative use requires that the accused aspect of the defendant's product or process is "attributed principally" to the trade secret as opposed to information acquired through proper means.  This is nothing more than reiterating that the information must have been acquired by improper means and is entirely consistent with Masimo's proposed instruction, which requires unlawfully acquiring the trade secret, and allows for building upon or modifying the trade secret, before using, disclosing, or deriving a benefit from the trade secret.

1    Masimo objects to Apple refusing to propose an instruction on this issue and

2  trying to reserve the right to do so later.  Apple should propose alternative instructions

3  as Masimo has done.

### Apple's Position: Objections to Plaintiffs' Proposed Instruction No. 27

Apple respectfully requests that the Court use Apple's simpler and more accurate construction of the derivative use test as set forth in Apple's proposed Instruction 26B. Apple objects to Plaintiffs' counter-proposal, which unjustifiably expands "use" beyond that recognized by California law, and would permit the jury to impose liability if Apple derived any benefit whatsoever from a single, undisputedly generally known element of Plaintiffs' asserted trade secrets. ███████████████████████████████

████████████████████████████████████████████████████████████

Plaintiffs' proposed instruction could permit finding misappropriation by use based solely on "deriving a benefit from" this element, which Plaintiffs did not invent and that has been used in technologies like AM radio for many decades.

Plaintiffs identify no authority that supports such a broad approach. Rather, their cases boil down to the legal test that appears in Apple's proposed instruction: A plaintiff may prove a claim for misappropriation by use where the defendant's product or process was—even if not identical to the purported trade secret—at least "substantially derived from" it. *SkinMedica*, *Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012); *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *8-9 (N.D. Cal. Jan. 23, 2018); *American Can Co. v. Mansukhani*, 742 F.2d 314, 328-329 (7th Cir. 1984); *Speech Tech. Assocs. v. Adaptive Commc'n Sys., Inc*., 1994 WL 449032, at *10 (N.D. Cal. Aug. 16, 1994). Moreover, Plaintiffs' own case law establishes that "functional or practical similarity" does not establish derivative use; the defendant's product or process must be "attributed principally" to the use of the alleged trade secrets and "not from public information and … general skill, experience and knowledge." *American Can*, 742 F.2d at 331.

Points (1)-(2) and (4) of Plaintiffs' proposed instruction all seem to be drawn from cherry-picked quotes from the cited cases, none of which purports to establish the necessary standard for derivative use. For example, Plaintiffs' Point 2 seems to be taken from *Bladeroom*'s descriptive observation that the defendant's "implemented data

design" had shift to "a model closely resembling Bladeroom's modular technology after [the defendant] acquired Bladeroom's trade secrets." 2018 WL 514923, at *10. Nothing in the decision indicates that Court intended to diverge from the "substantially derived" standard.

Finally, Plaintiffs also cite no authority for their assertion that "misappropriation through derivation applies to all of Masimo's misappropriation theories." It is unclear how a plaintiff could state a viable misappropriation claim for the disclosure or acquisition of information derived from an alleged trade secret. The "derivation" doctrine is therefore best addressed in the misappropriation-by-use instruction.

# MASIMO'S PROPOSED INSTRUCTION NO. 28A[63]

## Trade Secret Misappropriation by Disclosure

Apple misappropriated an Asserted Trade Secret by disclosure if Apple:

1. Disclosed it without Masimo or Cercacor's consent; and

2. Did any of the following:

   a. Acquired knowledge of the Asserted Trade Secrets by improper means; or

   b. At the time of disclosure, knew or had reason to know that Apple's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

   c. At the time of disclosure, knew or had reason to know that Apple's knowledge of the trade secret was derived from or through a person who owed a duty to Masimo or Cercacor to maintain its secrecy or limit its use.

---

[63] **Authority:**  Cal. Civ. Code § 3426.1(b); CACI 4406; *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *9 (N.D. Cal. Jan. 23, 2018); *Speed Tech. Assocs. v. Adaptive Commc'n Sys.*, 1994 WL 449032, at *10 (N.D. Cal. Aug. 16, 1994); *American Can Co. v. Mansukhani*, 742 F.2d 314, 328-29 (7th Cir. 1984) ("If the law were not flexible enough to reach such modifications, trade secret protection would be quite hollow.").

**Masimo's Argument: Proposed Instruction No. 28A**

Masimo's proposed instruction tracks the language of the statute and the model instruction regarding misappropriation by disclosure. *See* Cal. Civ. Code § 3426.1(b); CACI No. 4406.

The Court should reject Apple's proposed instruction for multiple reasons, which are similar to the issues with Apple's Proposed Instruction No. 26B regarding misappropriation by use.

First, Apple ignores the structure and language of the statute. As discussed above with regard to Proposed Instruction No. 15A, the statute provides that misappropriation by disclosure can occur if a person:

    (A)    Used improper means to acquire knowledge of the trade secret; or

    (B)    At the time of disclosure…, knew or had reason to know that his or her knowledge of the trade secret was: …

        (ii)    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (iii)    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. … ."

Cal Civ. Code § 3426.1(b)(2). Masimo will present evidence in support of all of the foregoing categories of misappropriation at trial. Not only does Apple propose an instruction that rewrites the statutory elements, but it also ignores misappropriation by use under (A) and (B)(iii) above. Apple argues that Apple's proposed instruction "lists only the method of misappropriation for which Plaintiffs can lay evidentiary foundation." Apple is incorrect and Masimo can and will present evidence on all of the statutory methods of misappropriation. *See* Proposed Instruction No. 24A. Thus, Apple's proposed instruction omits statutory provisions applicable to this case.

Second, Apple's proposed instruction is improperly limited to O'Reilly and Lamego. Masimo will prove that Apple initially acquired trade secrets via O'Reilly and Lamego. But Apple seeks to limit the jury to finding that O'Reilly and Lamego had the

-170-

required knowledge or duty.  The jury may find that others at Apple had knowledge that the trade secret was acquired under a duty or derived from someone owing a duty without knowing specifically who that person was.

Third, Apple's proposed instruction asserts that Masimo must show that "another person at Apple knew or had reason to know that Apple had improperly obtained an alleged trade secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly."  Apple provides no support for such an instruction.  As discussed above in the context of Proposed Instruction No. 24A, Apple seeks to instruct the jury incorrectly on ways that Apple could avoid liability for misappropriation by its employees.

# APPLE'S PROPOSED INSTRUCTION NO. 28B[64]

## Third Element—Misappropriation by Disclosure

Masimo and Cercacor can prove that Apple misappropriated a particular alleged trade secret by disclosure if they prove that Apple both:

1. Disclosed the alleged trade secret without Masimo's or Cercacor's consent; and

2. At the time of its disclosure, knew or had reason to know (i) that Apple's knowledge of the alleged trade secret came from or through Marcelo Lamego or Michael O'Reilly, and (ii) that Dr. Lamego and Dr. O'Reilly had a duty to Masimo and Cercacor to keep the information secret.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the alleged disclosure, another person at Apple knew or had reason to know that Apple had improperly obtained an alleged trade secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

---

[64] **Authority:** CACI 4406 (adapted).

-172-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Apple's Position: Proposed Instruction No. 28B**

Apple's proposed instruction adheres to CACI 4406's Directions of Use, which states that a court should "select the applicable statutory act(s) alleged to constitute misappropriation by disclosure." It lists the only method of misappropriation for which Plaintiffs can lay an evidentiary foundation—i.e., indirect misappropriation. *See supra* Apple's Position: Proposed Instruction Nos. 24B, 26B.

Just as with the disputed misappropriation-by-use instruction above, Apple objects to points (2)(a) and (2)(b) in Plaintiffs' proposed instruction because Plaintiffs have failed to identify an evidentiary basis for presenting these alternate theories of improper acquisition to the jury. *See* Apple's Position: Proposed Instruction Nos. 26B. Apple objected to Plaintiffs' lack of evidentiary basis in an email to Plaintiffs' counsel on March 24, 2023, but Plaintiffs refused to identify the factual underpinnings of their alternative liability theories—they should not be permitted to do so at a later date.

Plaintiffs mislead in their second objection, where they fault Apple's proposed instruction for "limit[ing] the jury to finding that O'Reilly and Lamego had the required knowledge or duty" for the same reasons discussed above: they never identify who else could have had such a duty or how it could have arisen. *See supra* Apple's Position: Proposed Instruction No. 26B.

The last sentence of the instruction recites the proper standard for imputed knowledge in this context. *See supra* Apple's Position: Proposed Instruction Nos. 24B, 26B. Plaintiffs' objection merely rehashes their objections to Apple's Proposed Instruction No. 24B.

## MASIMO'S PROPOSED INSTRUCTION NO. 29A[65]

### Improper Means of Acquiring Trade Secret

Improper means of acquiring a trade secret or knowledge of a trade secret include theft, bribery, misrepresentation, or breach or inducement of a breach of a duty to maintain secrecy.  Independent derivation alone is not considered improper means.

---

[65] **Authority:**  CACI 4408; Cal. Civ. Code § 3426.1

**Masimo's Argument: Proposed Instruction No. 29A**

Masimo's proposal follows the CACI model instruction and omits optional language that is not supported by the potential evidence in this case. *See* CACI No. 4408. Masimo's proposal also quotes the easily understandable statutory definition of "improper means." Masimo's proposal omits any references to reverse engineering because Apple does not assert it obtained the asserted trade secrets via reverse engineering. The statute states:

> "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means.

Cal. Civ. Code § 3426.1(a).

Apple's proposal omits improper means of acquisition that may apply in this case: "theft, bribery, misrepresentation," or "breach of a duty to maintain secrecy." Masimo alleges that Apple engaged in ███████ to steal Masimo's trade secrets by hiring O'Reilly and Lamego. Apple engaged in bribery because ████████████ ███████████████████████████████████████████████████ Apple also ██████████████████████████████████████████████████████ ███████████████████████████████████. Likewise, Apple is responsible for its employee's breach of their contractual and fiduciary duties to maintain secrecy if Masimo can establish liability under respondeat superior (addressed below). Masimo long alleged such theories. *See, e.g.*, Dkt. 296-1 ¶¶ 259-60 (alleging Lamego and O'Reilly's actions "constituted a breach" of their obligations and Apple was responsible under respondeat superior).

Apple's proposal also provides a list of activities that may not be "improper means," but which are unnecessary and could be confusing in this case because they have no potential basis in evidence. Indeed, Apple conceded that it is not arguing them. Apple has never alleged that it ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████   *See* Apple's Response to Masimo Interrogatory No. 13.  Indeed, none of Apple's experts opined that Apple acquired the trade secrets through any of these means.

Apple's proposal incorrectly instructs the jury that Masimo bears the burden of proving Apple did not independently develop the Asserted Trade Secrets.  Apple's cited case refutes the assertion that Masimo bears any affirmative burden of disproving "independent development" beyond or separate from establishing "improper means."

> During its case-in-chief, a plaintiff ***is not required*** to prove improper use ***by presenting evidence specifically refuting reverse engineering or independent derivation***, but it may choose to do so since ***use and nonuse are opposite sides of the same coin***.  Once credible evidence is presented to establish improper use by the defendant, the burden of producing evidence shifts to the defendant.

*Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1673 (2003).  Apple's case recognizes that Masimo bears no burden to disprove independent development because "improper means" and "independent development" are simply two alternative findings. *Id.*  Apple bears the burden of establishing its traverse to evidence of improper use.  *Id.*

The Court should reject Apple's proposal to further instruct the jury that "recruiting or hiring employees from another company, including from a competitor, does not on its own constitute improper means" without balancing that sentence with an instruction for Masimo's position.  Should the Court adopt this part of Apple's proposal, the Court should include a balancing instruction, such as: "However, hiring employees from another company to extract confidential information may constitute improper means."

Apple argues its proposal is justified because Masimo supposedly "signaled" that it will argue "Apple's hiring of Dr. Lamego and Dr. O'Reilly was inherently

1  wrongful….”  Masimo never "signaled" such a thing and Apple cites no evidence to

2  support its assertion.  Thus, there is no reason for Apple's proposal.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPLE'S PROPOSED INSTRUCTION NO. 29B[66]

## Third Element—Improper Means of Acquiring Trade Secret

Improper means of acquiring a trade secret or knowledge of a trade secret include inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of a trade secret by any of the following:

1. Independent efforts to invent or discover the information;

2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has the right to possess the product;

3. Observing the information in public use or on public display;

4. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

If Apple independently developed the information that Masimo and Cercacor claim is covered by an alleged trade secret, then Apple did not employ improper means to acquire that information. Masimo and Cercacor accordingly bear the burden to prove that Apple did not independently develop the alleged trade secret.

Additionally, recruiting or hiring employees from another company, including from a competitor, does not on its own constitute improper means.

---

[66] **Authority:** CACI 4408; Cal. Civ. § 3426.1(a) ("Reverse engineering or independent derivation alone shall not be considered improper means" of acquiring a trade secret); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1670 (2003) ("Evidence of independent derivation or reverse engineering directly refutes the element of use through improper means."); *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 2018 WL 1794500, at *2 (N.D. Cal. Apr. 16, 2018) ("The burden of proof (which is synonymous with the burden of persuasion) on the elements of trade secret misappropriation does not shift during trial; it remains with Plaintiffs at all times.") (citing *Sargent Fletcher*, 110 Cal. App. 4th at 1667); *Rita Med. Sys., Inc. v. Resect Med., Inc.*, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) ("Plaintiff has the burden of establishing that defendants did not independently derive trade-secret information.") (citing *Sargent Fletcher*, 110 Cal. App. 4th at 1669)); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002); Dkt. 1439 at 3.

## Apple's Position: Proposed Instruction No. 29B

Apple's proposed instruction on improper means tracks the language of CACI 4408, which Plaintiffs also employ.  Apple proposed to limit the list of means that are not improper to independent derivation if Plaintiffs would agree to limit the list of improper means to the only theory disclosed for which Plaintiffs could lay an evidentiary foundation (i.e., breach or inducing a breach of a duty to maintain secrecy).  Plaintiffs refused this compromise.

Apple objects to instructing the jury that "theft, bribery, [and] misrepresentation" are improper means because there is no foundation in the record to charge the jury on those theories.  The Court should disregard Plaintiffs' vague, unsupported assertion that these "improper means of acquisition … *may* apply in this case."  (Emphasis added.)

*First*, Apple objects because Plaintiffs' proposal is procedurally improper. Plaintiffs have never before suggested in any filing that this case involves criminal conduct, nor is it appropriate for them to bring such inflammatory, wholly unsupported theories.  Plaintiffs refused to disclose any legal or factual theory that could provide a foundation for charging the jury on these theories of improper means during the meet and confer process or even after Apple specifically requested such information via email within approximately 24 hours of learning Plaintiffs' position this case "may" involve bribery, theft, and misrepresentation.  Plaintiffs did not disclose their reasoning until noon on the day these instructions were due to be filed with this Court (and two hours after the parties' agreed upon deadline to exchange final instructions/arguments) and still fail to cite to any specific place in the record where they have preserved such a theory.

*Second*, Apple objects because Plaintiffs' proposal has no basis in the record. Plaintiffs' justification for injecting something like "bribery" into this case is frivolous, and is calculated to elicit an improper emotional reaction from the jury.  To establish bribery, Plaintiffs must show that Apple paid one of Plaintiffs' *current* employees to act in a manner that hurts Plaintiffs' interests, as well as establish a number of other

1    elements.  *See, e.g.*, *People v. Riley*, 240 Cal. App. 4th 1152, 1160 (2015) (reversing
2    bribery conviction because defendant was not an employee of the wronged party at the
3    time of the payment); *see also* Cal. Penal Code § 641.3 (commercial bribery offense).
4    So too with "theft" and "misrepresentation," which both require a showing of fraudulent
5    intent (among many other things).  *See, e.g.*, *People v. Miller*, 81 Cal. App. 4th 1427,
6    1440-1441 (2000) (theft); *Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486,
7    1498 (2007) (misrepresentation).  Indeed, it is black letter law in California that a failed
8    business negotiation does not amount to misrepresentation.  *See Tenzer v. Superscope*,
9    39 Cal. 3d 18, 30 (1985) (even "proof of nonperformance on an oral promise" is
10   insufficient to establish misrepresentation).  Plaintiffs' one-sentence summaries of what
11   they "allege[]" do not remotely provide an evidentiary basis for these accusations, much
12   less identify specific admissible evidence that support them.

13        *Third*, Apple objects because Plaintiffs have failed to provide adequate detail in
14   their instruction.  Even if Plaintiffs had any basis in the record to show that the elements
15   for theft, bribery, and misrepresentation are met (and they do not), their barebones
16   instruction entirely fails to provide the jury with any of that information, thus raising the
17   concern that the jury will reach a decision based on its assumptions about what the law
18   requires rather than the law itself.  This alone justifies rejecting their proposal.

19        Apple's proposed instruction also clarifies for the jury that because "the burden
20   of proof to demonstrate use of a trade secret through improper means remain[s] with
21   [Plaintiffs]," Plaintiffs must persuade the jury that Apple did not obtain the alleged trade
22   secret information through proper means, including through independent development.
23   *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1668 (2003).  Plaintiffs'
24   misleadingly quote a portion of *Sargent Fletcher* that refers to "the burden of *producing
25   evidence*."  *Sargent Fletcher* is crystal clear, however, that (1) the "burden of proof and
26   the burden of producing evidence" are two different concepts and (2) "[a]s a matter of
27   law, the burden of proof to demonstrate independent derivation … d[oes] not lie with"
28   the defendant.  *Id.* at 1666-1667, 1675.  This is because "[i]t is the plaintiff's burden to

show improper use as part of its prima facie case" and "[p]roof that defendant's use resulted from independent derivation or reverse engineering is evidence that there was no improper use on its part"—"[t]he defendant does not have a 'burden of proof to make that showing." *Id.* at 1669.

Finally, because Plaintiffs have signaled that they will suggest that Apple's hiring of Dr. Lamego and Dr. O'Reilly was inherently wrongful, Apple respectfully requests an instruction reflecting that under California law, "employees are not only permitted but encouraged to move freely from one company to another." Dkt. 1439 at 3 (granting Apple's motion *in limine* No. 2 and excluding evidence and argument about Apple's alleged recruitment of Plaintiffs' former employees not alleged to have provided Apple with any trade secret information). While Plaintiffs object to this language, they provide no explanation for why that is so, beyond the bald fact that this accurate statement of law is unhelpful to their position. And while Plaintiffs ask this Court to provide a "balancing instruction" about how hiring employees could constitute improper means in some circumstances, they do not identify any decision that has adopted such a view.

**MASIMO'S PROPOSED INSTRUCTION NO. 30[67]**

**Duty to Maintain Secrecy, or Limit Use, of Trade Secret Information**

A duty to maintain secrecy, or limit use, of trade secret information may arise from a contract or by law.  One example from contract would be a contract prohibiting use of confidential information.  One example from law is that an employee owes a duty of loyalty to an employer, which includes a duty to protect confidential information from use outside of the employment.

---

[67] **Authority:** Cal. Lab. Code § 2863; *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 938 (N.D. Cal. 2017)

1

**Masimo's Argument: Proposed Instruction No. 30**

2

Masimo's proposed instruction is not based on a model instruction. Masimo's

3

proposed instruction would benefit the jury by explaining the "duty" to maintain secrecy

4

that is referenced in various provisions of CUTSA. For example, the statute defines

5

"improper means" as including "breach of a ***duty*** to maintain secrecy." Cal. Civ. Code

6

§ 3426.1(a). The statute defines misappropriation via disclosure or use as including

7

where knowledge of the trade secret was "derived from or through a person who owed

8

a ***duty*** to the person seeking relief to maintain its secrecy or limit its use." *Id.*

9

§ 3426.1(b)(2)(B)(iii).

10

Masimo's proposed instruction explains that such a duty may arise from a

11

contract, or by law. For example, *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d

12

934, 938 (N.D. Cal. 2017), confirms that improper means include, but "are not limited

13

to the violation of contractual obligations" and may include claims based on duty of

14

loyalty under California law. California also recognized a statutory duty of loyalty to

15

an employer. *See* Cal. Lab. Code § 2863 ("An employee who has any business to

16

transact on his own account, similar to that intrusted to him by his employer, shall always

17

give the preference to the business of the employer.").

18

Apple argues that Masimo's proposed instruction "improperly suggests to the jury

19

that they could infer duties of confidentiality that are not specified by the Court's

20

instructions." But neither the statute nor Apple's proposed instruction limits the bases

21

for the "duty . . . to maintain [] secrecy or limit [] use" of the trade secret. Cal. Civ.

22

Code § 3426.1(b)(2)(B)(iii). If anything, Masimo's proposal provides more clarity.

23

Contrary to Apple's argument, Masimo's explanation of "duty" does not "insert

24

a host of new theories of liability." Masimo asserted that Lamego and O'Reilly owed a

25

duty of confidentiality arising from their positions as officers of the corporation and by

26

virtue of their employer-employee relationships since the Complaint. Dkt. 296-1 ¶¶ 228,

27

229, 257, 259; Masimo's May 15, 2020 Response to Apple Interrogatory Nos. 11 and

28

12; JTX-1719 (Lamego acknowledging his "fiduciary responsibilities" to Cercacor); *see*

-183-

*also Masimo Corp. v. True Wearables*, 2022 WL 17083396, *5 (C.D. Cal. Nov. 7, 2022) ("Lamego owed Cercacor a fiduciary duty of undivided loyalty").

Apple complains that Masimo's instruction does not explain how a duty may arise by law.  An example of the duty of loyalty mentioned in Masimo's proposal is based on California Labor Code § 2863.  Apple further argues that a duty of confidentiality cannot arise from a contract "because the only relevant contractual provisions . . . are void under Section 16600."  This Court found those confidentiality provisions valid in *True Wearables* and Masimo will address Apple's contract validity argument in Masimo's forthcoming response to Apple's offer of proof on unclean hands.

Moreover, Masimo never disclaimed that O'Reilly and Lamego owed Masimo a duty under the confidentiality provisions.  During the hearing on Apple's motion *in limine* regarding Masimo's employment contracts, Masimo intended to argue that the confidentiality provisions are at least relevant to Masimo's efforts to maintain secrecy, and the relevance of the contracts to that issue alone was sufficient to defeat Apple's motion to exclude the contracts in their entirety.  *See* March 13, 2023, Hrg. Tr. at 24.  Masimo did not intend to assert the agreements were irrelevant to any other issue.  To the extent the transcript suggests Masimo asserts the confidentiality provisions are not relevant to any other purposes, that was inadvertent.

Nor did Masimo interpret the Court's order on Apple's *motion in limine* as precluding use of the agreements for any purpose other than establishing Masimo's reasonable efforts to maintain secrecy.  Masimo understood footnote 2 in the Court's order As declining to rule on the relevance of the agreements for other purposes and reserving such issues for another day.  *See* Dkt. 1469 at 7 n.2.  Masimo's interpretation is consistent with the Court requesting further briefing on the validity of the confidentiality provisions.

Finally, Apple cannot dispute that the duty to maintain confidentiality under CUTSA may be based on obligations not arising under contract.  Indeed, Apple's own proposed instructions on Corporations as Parties (Proposed Instruction No. 24B)

references "an employee of Apple who violated *a duty of confidentiality* to Masimo or Cercacor."   Apple's Proposed Instruction No. 26B similarly references a "duty to Masimo and Cercacor to limit use of the alleged trade secret."

Apple also objects to Masimo's proposal as a standalone instruction.  Should the Court find that a combined instruction is helpful to the jury, Masimo does not object to combining its Proposed Instruction Nos. 30 and 31.

**Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 30**

Apple objects to Plaintiffs' instruction because it improperly attempts to insert a host of new theories of liability into the jury instructions, in particular that Dr. Lamego and/or Dr. O'Reilly breached a duty of loyalty. Plaintiffs waived this theory by failing to raise it in the operative complaint or as an issue for trial in either the joint pre-trial order, Dkt. 1413-1, or in their memorandum of contentions of facts and law, Dkt. 1388-1. Indeed, Plaintiffs did not raise this common-law based "duty" theory in any draft of their proposed jury instructions until *after* this Court ordered Apple to provide an offer of proof on Apple's argument that the Agreement Plaintiffs have relied on for their contractual-based-duty theory is invalid.

But even had Plaintiffs not waived the chance to present a duty of loyalty theory, Apple further objects because their proposed instruction does not adequately present the theory. Whether a duty existed and was breached are questions of fact for the jury. *See, e.g.*, *Risto v. Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, 2021 WL 2416485, at *8 (C.D. Cal. June 14, 2021); *Glenwood Sys., LLC v. Thirugnanam*, 2012 WL 12913792, at *11 (C.D. Cal. May 15, 2012). Plaintiffs' single, passing reference to the duty of loyalty provides no basis for the jury to make those findings. Including such ambiguous language only invites the jury to diverge from the proper legal standard, since no such standard was defined. *See, e.g.*, *People v. Gardner*, 37 Cal. App. 4th 473, 481 (1995) ("urg[ing] the revision of [a pattern criminal instruction] to eliminate [an] ambiguous word," which as "a legal term of art … could only serve … to confuse a lay jury").

Apple further objects to the open-ended nature of Plaintiffs' Proposed Instruction No. 30 because it improperly suggests to the jury that they could infer duties of confidentiality that are not specified by the Court's instructions. For example, the jury should not be instructed that a duty can generally arise "by law" when the only specific common law duties Plaintiffs have identified (both in this instruction and in Proposed

1  Instruction No. 31A) is a corporate officer's fiduciary duty to the corporation and an
2  employees' duty of loyalty.

3    Finally, Apple objects to instructing that a duty can arise from a contract, because
4  the only relevant contractual provisions—from Plaintiffs' Employee Confidentiality
5  Agreement—are void under Section 16600.  *See* Apple's Position, Proposed Instruction
6  No. 23.  Moreover, Plaintiffs' lead trial counsel recently disclaimed that Plaintiffs will
7  rely on a breach of that Agreement to establish improper means in an unequivocal
8  representation to the Court, stating the Agreement's confidentiality provisions are:

9    ***[P]art of Masimo's attempts to implement reasonable precautions to protect the***
10   ***confidential information***, and they are of course ***relevant for that purpose and***
11   ***that purpose alone***, which is why they will be offered.

12  Mar. 13, 2023 Tr. 24 (emphasis added); *see also* Dkt. 1439 at 7 n.2 (Court's ruling on
13  parties' motions *in limine* noting that ruling "***does not extend*** to, e.g., allowing the
14  confidentiality provisions to be used to prove acquisition by improper means by O'Reilly
15  or Lamego" (emphasis added)).

16    Notably, Plaintiffs added the phrase "One example from contract is a contract
17  prohibiting use of confidential information" to their proposed instruction roughly twelve
18  hours before the parties agreed to exchange the file-ready version of these instructions.
19  Although Apple immediately demanded an explanation for how this breach of contract
20  theory could be reconciled with this Court's ruling—or their counsel's representation
21  quoted above—regarding the Agreement, Plaintiffs refused to provide one until noon on
22  the day these instructions were due to be filed with this Court (and two hours after the
23  parties' agreed upon deadline to exchange final instructions/arguments).  Even then, they
24  claim only that their counsel's unambiguous statement was a supposed "inadvertent"
25  concession.  This is simply not credible, given that he was responding to Apple's
26  counsel's argument that Plaintiffs would try to rely on the invalid provisions of the
27  Agreement to show improper means.  *See* March 13, 2023 Tr. 21 (Apple's counsel
28  noting concern that "Plaintiffs may suggest that … breach [of the Agreement] constitutes

-187-

an acquisition of the trade secrets by improper means"). Plaintiffs do not get to withdraw their statement two weeks after the pretrial conference. Indeed, even if Plaintiffs' overly narrow reading of this Court's ruling were correct (and it is not), they prevailed in opposing Apple's motion *in limine* No. 4 only because they convinced this Court that it need not resolve the "improper means" issue because it was not at issue in this case. Since Plaintiffs prevailed on motion *in limine* No. 4 at least in part based on this representation, judicial estoppel bars them from now disavowing it. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Finally, Apple objects to Plaintiffs' proposal to deliver this open-ended proposition as a standalone instruction. The risk of Plaintiffs' proposed language inviting error is heightened because placing it in an instruction of its own—rather than combining it with Plaintiffs' Proposed Instruction No. 31A—wrongly suggests that it provides a separate route to liability.

## MASIMO'S PROPOSED INSTRUCTION NO. 31A[68]

### Corporate Officer Fiduciary Duty

Another type of duty is what is known as a fiduciary duty.  A corporate officer owes a fiduciary duty to the corporation.  A fiduciary duty imposes on a corporate officer a duty to act with the utmost good faith in the best interests of the corporation.  A corporate officer's fiduciary duty to protect confidential information continues even after leaving the corporation.

---

[68] **Authority:** CACI 4100; *Sonoma Pharms., Inc. v. Collidion Inc.*, 2018 WL 3398940, at *7 (N.D. Cal. June 1, 2018); *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2011 WL 13153247, at * 8 (N.D. Cal. Mar. 17, 2011).

**Masimo's Argument: Proposed Instruction No. 31**

Masimo relies on CACI No. 4100.  The first sentence of Masimo's proposal provides a transition from the previous instruction.  The second two sentences track the language of CACI No. 4100.  The final sentence comes from the caselaw that the fiduciary duty to protect confidential information continues after a corporate officer leaves the corporation.  *See Sonoma Pharms., Inc. v. Collidion Inc.*, 2018 WL 3398940, at *7 (N.D. Cal. June 1, 2018); *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2011 WL 13153247, at * 8 (N.D. Cal. Mar. 17, 2011).

Masimo's proposed instruction explaining a corporate officer's fiduciary duty to the corporation will help the jury understand the significance of evidence in this case That Dr. O'Reilly and Dr. Lamego were corporate officers for Masimo Corp. and Cercacor, respectively.

Apple objects to Masimo's proposed instruction as a "new theory of misappropriation."  The theory is not new.  As far back as the complaint, and later in discovery responses, Masimo asserted that Lamego and O'Reilly owed a duty of confidentiality arising from their positions as corporate officers.  Dkt. 296-1 ¶¶ 228, 229, 257, 259; Masimo's May 15, 2020 Response to Apple Interrogatory Nos. 11 and 12; Masimo's January 5, 2022 Response to Interrogatory No. 30; JTX-1719 (Lamego acknowledging his "fiduciary responsibilities" to Cercacor); *see also Masimo Corp. v. True Wearables*, 2022 WL 17083396, *5 (C.D. Cal. Nov. 7, 2022) ("Lamego owed Cercacor a fiduciary duty of undivided loyalty").  Apple never disputed that Lamego and O'Reilly were corporate officers who owed a fiduciary duty.  Masimo proposed an instruction that explains to the jury the meaning of fiduciary duty as it applies in the context of trade secret misappropriation and the facts of this case.

Apple argues that Masimo waived "the issue" by purportedly "failing to raise it" in the joint pre-trial order.  Both parties provided a high-level overview of their claims and defenses in the pre-trial order (and Apple provided far less information than Masimo).  Nonetheless, the parties identified as an issue for trial, "[w]hether Apple

1  improperly acquired, used, or disclosed the Asserted Trade Secrets.".  Dkt. 1413-1 at 4–
2  5, 15; Dkt. 1388-1 at 4 (same).

3       Apple argues that Masimo's proposed instruction does not provide necessary
4  context.  Specifically, Apple demands that the instruction "must include guidance as to
5  Apple's knowledge of breach of the duty."  The appropriate context is provided in other
6  instructions.   For example, Instruction No. 26 describes the elements of
7  misappropriation by use including that, at the time of use, Apple "knew or had reason to
8  know that Apple's knowledge of the trade secret was acquired under circumstances
9  giving rise to a *duty* to maintain its secrecy or limit its use."  Instruction No. 28 provides
10 a similar instruction for  misappropriation by disclosure.  Apple's cited case, *California
11 Police Activities League v. California Police Youth Charities, Inc.*, merely collects
12 similar elements.

13      Apple argues that Masimo's instruction risks confusion as to whether Masimo can
14 seek damages for Apple's use of confidential information without establishing the
15 elements of trade secret misappropriation.  Not so.  Instruction Nos. 26 and 28 provide
16 the elements for misappropriation by use and disclosure, and Instruction No. 16 provides
17 the element for trade secret misappropriation generally.   This instruction merely
18 provides one basis for the "circumstances giving rise to a duty to maintain [] secrecy or
19 limit [] use" or a duty to Masimo or Cercacor "to maintain [] secrecy or limit [] use"
20 under CUTSA.

21      Apple argues that Masimo's proposed instruction fails to require the jury to make
22 factual findings necessary to establish the existence of a corporate officer's fiduciary
23 duty.  But O'Reilly and Lamego were undisputedly officers of Masimo and Cercacor,
24 respectively, as reflected in their job titles.  Indeed, this Court already found that Lamego
25 had fiduciary duty as an officer of Cercacor. *See Masimo Corp. v. True Wearables*, 2022
26 WL 17083396, *5 (C.D. Cal. Nov. 7, 2022).  Thus, the jury need not be instructed on
27 how to determine whether they were corporate officers.

28

-191-

1    Apple's cited cases are consistent with Masimo's proposed instruction. *GAB Bus.*
2  *Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 421 (2000)
3  recognized that a corporate officer owes a fiduciary duty to the corporation by virtue of
4  his or her position.  Whereas *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852
5  (N.D. Cal. 2019), did not involve an officer of the corporation, so the court examined
6  the employee's participation in managing the corporation before finding a fiduciary
7  duty.
8    Apple's proposed instruction based on CACI No. 4103 might be applicable to a
9  claim for a breach of fiduciary duty, but Masimo makes no such claim.  Apple's
10 proposed language would confuse the jury into thinking that a corporate officer does not
11 owe a fiduciary duty unless Masimo proves the elements of a separate cause of action.
12 Apple's proposal introduces extraneous elements that are unnecessary for the jury to
13 find that Lamego and O'Reilly owed a fiduciary duty based on their positions as officers.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPLE'S PROPOSED INSTRUCTION NO. 31B[69]

## (Offered in the Alternative)

## Duties of a Corporate Officer

A corporate officer owes what is known as a fiduciary duty to his or her corporation. A fiduciary duty imposes on the corporate officer a duty to act with the utmost good faith in the best interests of his or her corporation. A fiduciary duty includes the obligation to maintain the secrecy of alleged trade secret information provided to the corporate officer by the corporation in the course of his or her employment.

Masimo and Cercacor can establish that an employee had a fiduciary duty to maintain alleged trade secret information in confidence and breached that duty if they prove:

1. That the employee was Masimo or Cercacor's corporate officer;

2. That the employee obtained the alleged trade secret in his or her capacity as a corporate officer of Masimo or Cercacor;

3. That he or she knew or should have known that this information was a trade secret;

4. That the employee communicated Masimo or Cercacor's alleged trade secret to Apple; and

---

[69] **Authority:** CACI 4100; CACI 4103 (adapted); *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 420-421 (2000), *disapproved of on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) ("[A]n officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation."); 3 Witkin, Summary 11th Agency § 109 (2022); *S.E.C. v. Talbot*, 530 F.3d 1085, 1095 (9th Cir. 2008) ("Unless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency."); Restatement (Third) Of Agency § 8.05 cmt. C (2006) (discussing duty of confidence extending to information to which an agent was "given access by the principal … that the principal would not wish to be revealed or used" and "confidential information about a principal or otherwise [acquired] in the course of an agency relationship").

5. That Masimo or Cercacor did not give informed consent to the employee's conduct.

Masimo and Cercacor can establish that an employee was a corporate officer if they prove that he or she participated in management of the corporation, exercising discretionary authority on behalf of the corporation. This determination depends on the substance of the employee's management authority at the relevant time, if any, not on the employee's title or the scope of his or her prior authority.

**Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 31A**

Apparently recognizing that their Agreement contains invalid provisions, Plaintiffs introduced Instructions 30 and 31A shortly before the parties were due to exchange arguments regarding the proposed instructions and only after this Court ordered Apple to submit an offer of proof on why a different "duty" theory raised by Plaintiffs was invalid.  Apple objects to Plaintiffs inserting a new theory of liability into the jury instructions (i.e., breach of a fiduciary duty), on the grounds that Plaintiffs waived the issue at least by failing to raise it as an issue for trial under the joint pre-trial order, Dkt. 1413-1, or their memorandum of contentions of fact and law, Dkt. 1388-1.  Apple reserves the right to amend its counter-instruction and supplement this objection.

To the extent that the Court permits the jury to be charged on this new theory of misappropriation, Apple objects to Plaintiffs' Proposed Instruction No. 31A, which improperly frames the relevant jury question and invites error by failing to adequately define its terms.  If the Court permits the jury to be charged on this new theory of misappropriation, Apple requests that the Court deliver Instruction 31B, which Apple has proposed in the alternative.

As a threshold matter, Apple objects to Plaintiffs' proposed instruction because it merely informs the jury of a purported duty without providing the necessary context.  As Apple has explained, the elements of a CUTSA claim for indirect trade secret misappropriation are: "(1) the plaintiff is the owner of a valid trade secret; (2) the defendant acquired the trade secret from someone other than the plaintiff and … knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that *the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it*…; (3) the defendant used or disclosed the trade secret without Plaintiff's authorization; and (4) the plaintiff suffered harm as a direct and proximate result of the defendant's use or disclosure of the trade secret, or the defendant benefitted from such use or disclosure." *California Police Activities League v. California Police Youth Charities, Inc.*, 2009 WL

-195-

537091, at *3 (N.D. Cal. Mar. 3, 2009) (emphasis added).  Therefore, any instruction as to Apple's knowledge of a duty must include guidance as to Apple's knowledge of breach of the duty.  *See* Dkt. 1275 at 9-10 (denying Plaintiffs' motion for partial summary judgment because "whether Apple knew or should have known that Lamego breached [a] duty is in material dispute").

Apple also objects to Plaintiffs' proposed instruction insofar as it will sew confusion as to whether Plaintiffs can seek damages for Apple's use or disclosure of any purportedly confidential information (as opposed to information that constitutes a trade secret under CUTSA).  The operative complaint alleges only that O'Reilly and Lamego breached a duty by communicating Plaintiffs' purported trade secrets to Apple; it does not reference any other kind of information.  *See* Dkt. 296-1 at ¶ 46 (complaint uses "Confidential Information" as shorthand to refer to Plaintiffs' purported trade secrets); *see also id.* ¶¶ 228, 229, 257, 259 (alleging O'Reilly and Lamego breached their fiduciary duties by communicating "Confidential Information" to Apple).  Instructing the jury on a common law duty as to "confidential information"—a term that has not been litigated and that even Plaintiffs have defined narrowly—is improper and will lead to juror confusion, particularly when the only other reference to "confidential information" in the record comes from the invalid provisions of Plaintiffs' Employment Confidentiality Agreement.  *See supra* Apple's Proposed Instruction No. 23; Apple's Position: Objection to Plaintiffs' Proposed Instruction No. 30.

Apple also objects to Plaintiffs' proposed instruction because it fails to require the jury to make the factual findings necessary to establish the existence of a corporate officer's fiduciary duty, as CACI 4103 and California case law require.  *See, e.g.*, *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 421 (2000) *and disapproved of on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 95 P.3d 513 (2004); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019).  Apple's proposed instruction correctly sets forth the definition of a corporate officer in this context.

Apple relatedly objects to Plaintiffs' proposed instruction because it does not specify the other findings the jury must make to determine that an employee had a duty to maintain specific information in confidence or that the employee breached that duty. By contrast, Apple's proposed instruction explains these requirements, using CACI 4103 as a model.

**MASIMO'S PROPOSED INSTRUCTION NO. 32A**

**(Offered in the Alternative)**

**Professional Skills, Talents, or Abilities**

As I have told you, a "trade secret" concerns information that meets the requirements I mentioned earlier, in contrast to professional skills, talents, or abilities that are unrelated to trade secrets.

Engineers and other employees cannot use or disclose to others engineering solutions or information developed by their prior employers where such solutions or information qualify as a trade secret, even those developed or discovered by the engineers or other employees themselves. Nor may they memorize or photocopy or download information to take their prior employer's trade secrets with them.

## Masimo's Objections to Apple's Proposed Instruction No. 32B

The Court should not provide an instruction on professional skills, talents, or abilities because such an instruction would be inconsistent with the facts and evidence in the case. Masimo proposed an instruction on this issue only in case the Court decides an instruction is necessary.

Apple's proposed instruction would only confuse the jury because Apple does not assert the former Masimo employees developed the trade secrets at Apple based on "professional skills, talents, or abilities." Nor has Apple asserted that O'Reilly and Lamego used "on-the-job practical lessons" to develop the trade secrets at Apple.

Indeed, Apple asserts in its response to interrogatories that the former Masimo employees did not develop the asserted trade secrets while at Apple, and Apple never possessed the asserted trade secrets at all. Apple's Response to Interrogatory No. 13. Thus, Apple's citation to other cases, which may have involved such disputes, does not support providing this instruction. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 3, 2018); *id.,* Dkt. 2449 at 4.

Apple's instruction is also inappropriate because it suggests that "skills, talents, or abilities" can never be a trade secret (e.g., lines 13-14, "Those lessons *must be deemed* to become part of their professional skills, talents, and abilities"). The statute contains no such limitation. Instead, it broadly defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that meets the statutory definition of a trade secret. Cal. Civ. Code § 3426.1(d). Nothing supports Apple's assertion that "skills, talents, or abilities" that meet the statutory definition of a trade secret are somehow not subject to protection.

Apple's argues "know-how" is not protectable. But courts have rejected that argument. *See, e.g.*, *BladeRoom Grp. Ltd. V. Facebook, Inc.*, 2018 WL 514923, at *5 (N.D. Cal. Jan. 23, 2018) (holding "know-how" can be a trade secret and explaining "know-how" is "the informational and experiential expertise related to practical application of specifics, such as patented or unpatented inventions, formulas or

-199-

1  processes"); *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *19 (N.D. Cal.

2  2019) (recognizing viability of "negative know-how" trade secret because it confers "the

3  benefit of steering clear of fruitless development pathways, thereby saving precious time

4  and resources").  As the California Court of Appeal recognized long ago, "the character

5  of the secrets, if peculiar and important to the business, is not material."  *By-Buk Co. v.*

6  *Printed Cellophane Tape Co.*, 163 Cal. App. 2d 157, 164, 329 P.2d 147, 151 (1958).

7         The Court should not instruct the jury to try to determine irrelevant questions,

8  such as whether information is a "skill" (which Apple says is not protectable") or a

9  "technique" (which the statute identifies specifically can be a trade secret).  Rather, the

10 Court should instruct the jury to focus on the statutory definition of a trade secret.  Any

11 "information" that meets that requirement is protectable—regardless of whether it is

12 characterized as a "skill" or "technique."  Cal. Civ. Code § 3426.1(d).

13        Apple cites *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332,

14 (2020), but that case addressed the inevitable disclosure doctrine.  It held "evidence that

15 Apple hired engineers with knowledge of Hooked's trade secrets and that the engineers

16 inevitably would have relied on that knowledge in their work for Apple does not support

17 a claim for improper acquisition of a trade secret."  *Id.*  Earlier in this case, the Court

18 distinguished *Hooked* because Masimo is **not** relying on the inevitable disclosure

19 doctrine.  *See Masimo Corp. v. Apple Inc.*, 2021 WL 925885, at *8 (C.D. Cal. Jan. 6,

20 2021).

21        Apple's proposal is also one-sided.  Apple explains in detail what trade secrets do

22 not cover, and that employees "cannot be expected to erase" information from memory

23 (lines 3–14).  Apple then purports to explain what employees cannot do with the

24 information using burdensome language that suggests to the jury this is an unlikely

25 scenario.  For example, Apple explains that the employees may not use "information

26 developed by their prior employers where such *specific solutions or information qualify*

27 *as a trade secrets*" (starting on line 15 of the first page).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Should the Court provide an instruction regarding what former employees can and cannot do, Masimo requests the Court use Masimo's proposed balanced alternative version which is consistent with the case law cited by Apple and would be far easier for the jury to understand.

# APPLE'S PROPOSED INSTRUCTION NO. 32B[70]

## Professional Skills, Talents, or Abilities

As I have told you, a "trade secret" concerns information.  By contrast, trade secrets do not cover professional skills, talents, or abilities.  Trade secrets, therefore, do not cover skills, talents, or abilities developed by employees in their employment even though they may be developed at the expense of the employer.  Engineers or other employees will, for example, through trial and error and application of their professional skills on the job, naturally sharpen their skills and accumulate practical lessons that supplement their skills, talents, and abilities.

When they move to new jobs with new employers, they cannot be expected to erase such natural on-the-job practical lessons from memory and will remain free under the law to use them, even though learned while on the payroll of the prior employer.  Those lessons must be deemed to become part of their professional skills, talents, and abilities.

---

[70] **Authority:** Court's Penultimate Jury Instruction on Trade Secret Misappropriation No. VII, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 3, 2018) Dkt. 2449 at 4; *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332, (2020) ("[E]ngineers drew on knowledge and skills they gained from Hooked to develop a product for their new employer—but California's policy favoring free mobility for employees specifically allows that."); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 900 (Minn. 1983) ("The law of trade secrets will not protect talent or expertise, only secret information."); *Strategic Directions Grp., Inc. v. Bristol-Myers Squibb Co.*, 293 F.3d 1062, 1065 (8th Cir. 2002) (same); *Dynamics Rsch. Corp. v. Analytic Scis. Corp.*, 9 Mass. App. Ct. 254, 275 (1980) ("[T]here [i]s no trade secret in the coordinated approach of skilled engineers and scientists to a particular problem, and.… [The former employees] contributed to [plaintiff's] success and also benefited from their experiences with it. When they resigned, they could not reasonably be expected to blot out what they had learnt during their period of employment."); *see also Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 160 n. 9 (2020) ("Because the CUTSA is derived from the national Uniform Trade Secrets Act, California courts consider case law from other jurisdictions applying similar sections of the Uniform Act.").

Engineers and other employees cannot, however, go further in new jobs with new employers to use or disclose to others specific engineering solutions or information developed by their prior employers where such specific solutions or information qualify as a trade secret, even those developed or discovered by the engineers or other employees themselves.  Nor may they memorize or photocopy or download information to take their prior employer's trade secrets with them.

It is for the jury to decide in each case whether the employees have used or disclosed a former employer's trade secret information at their new jobs versus having utilized their professional skills, talents, or abilities.

**Apple's Position: Proposed Instruction No. 32B**

Apple's proposed instruction is drawn from an instruction set forth in the district court's planned instructions of law in *Waymo LLC v. Uber Technologies, Inc.*, No. C 17-939 (N.D. Cal. Jan. 3, 2018), Dkt. 2449 at 4, a case that also concerned allegations of indirect misappropriation of technical trade secrets via the plaintiff's former employee.

Here, Apple's defense rests in part on the argument that two of its employees brought with them to a new job only accumulated experience, professional know-how, and talents honed through practice.   When Plaintiffs suggest otherwise, they misunderstand Apple's position.  For example, Apple is not arguing that the alleged trade secrets are simply "professional skills, talents, or abilities" Dr. Lamego learned from his work for Plaintiffs, but rather that he developed his "professional skills, talents, or abilities" over decades of education and work, and that this professional background supports his testimony that he developed the alleged secrets while at Apple.  Indeed, Dr. Lamego had broad technical expertise even before he joined Masimo.  *See, e.g.*, Dkt. 1098-4, Ex. 17 at 15:23-16:14, 18:3-5 (education); *id.* at 16:15-20; 17:1-4, 17:16-21 (teaching experience); *id.* at 23:8-15 (knowledge about pulse oximetry prior to working for Masimo); *id.* at 21:15-22:5 (general pulse oximetry knowledge shared with Masimo).  It is therefore appropriate for the Court to instruct the jury how the background principles of California employment law interact with trade secret protections.

Apple objects to Plaintiffs' counter-proposal, which notably cites no authority and confusingly suggests to the jury that California law protects the use of only those skills, talents, and abilities that are "unrelated" to trade secrets.  The proper formulation appears in Apple's proposed instruction—an employee's skills, talents, and abilities *cannot* be trade secrets, even if they involve information or subject matter that is similar to a party's purported trade secrets.  *See, e.g.*, *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332, (2020) ("[E]ngineers drew on knowledge and skills they gained from Hooked to develop a product for their new employer—but California's policy favoring free mobility for employees specifically allows that.").

-204-

**MASIMO'S PROPOSED INSTRUCTION NO. 33A**

**(Offered in the Alternative)**

**Causation and Harm**

Masimo and Cercacor are entitled to recover damages for harm caused by Apple's misappropriation if Masimo and Cercacor prove that Apple's misappropriation was the cause of some harm. Specifically, to recover damages Masimo and Cercacor must prove that Apple's misappropriation was a substantial factor in causing them harm.

A "substantial factor" in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

1

**Masimo's Objections to Apple's Proposed Instruction No. 33B**

2
3

The Court should not provide an instruction on this issue.  Masimo proposed an instruction on this issue only in case the Court decides an instruction is necessary.

4
5
6
7
8
9

Apple's proposed instruction purports to require that Masimo must prove damages and causation to establish liability for trade secret misappropriation.  The statute refutes Apple's assertion that proving harm (much less causation) is required to establish liability.  CUTSA expressly provides for equitable recovery for misappropriation even where a plaintiff fails to prove it suffered damages and fails to prove the defendant was unjustly enriched:

10
11
12

> If ***neither damages nor unjust enrichment caused by misappropriation are provable***, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

13
14
15
16
17
18

Cal. Civ. Code § 3426.3(b) (emphasis added).  This Court's use of a similar instruction in another case does not make Apple's proposed instruction any less inconsistent with the statute.  Apple's citation to *AMN Healthcare* is circular because that case is also inconsistent with the statute and relies on CACI instructions that are inconsistent with the statute.  *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018)

19
20
21
22
23
24

Moreover, the parties' competing proposed instructions (No. 37) regarding remedies for misappropriation fully address the issues of harm and causation.  *See* CACI No. 4409.  Apple also repeats subject matter that is fully addressed in other proposed instructions, such as Masimo's possession of the trade secrets and Apple's misappropriation (Nos. 16 and 17).  As such, there is no basis for providing Apple's proposed instruction.

25
26
27

Should the Court provide an instruction on causation and harm, Masimo requests the Court give it as part of, and after, the instruction regarding remedies, and use Masimo's proposed alternative instruction so as to avoid inconsistency with the statute.

28

## APPLE'S PROPOSED INSTRUCTION NO. 33B[71]

### Fourth and Fifth Elements—Causation and Harm

If Masimo and Cercacor prove that they possessed an alleged trade secret and that Apple misappropriated it by use or disclosure, then Masimo and Cercacor must prove that Apple's misappropriation was the cause of some provable harm. Specifically, Masimo and Cercacor must prove that Apple's use or disclosure of a specific alleged trade secret was a substantial factor in causing them harm.

A "substantial factor" in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

---

[71] **Authority:** CACI 430 (adapted); Instruction No. 35, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.).

-207-

**Apple's Position: Proposed Instruction No. 33B**

Apple's proposed instruction is a near-verbatim adaptation of a corresponding instruction that this Court delivered in another trade secrets case. *See* Instruction No. 35, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.). That instruction's definition of "substantial factor" is drawn from CACI's general damages instructions. *See* CACI 430. CACI's inclusion of harm and causation as elements of CUTSA liability comports with California cases that enumerate the elements of a trade secret misappropriation claim. *See, e.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018) ("A cause of action for misappropriation of trade secrets requires a plaintiff to show," *inter alia*, "the plaintiff was harmed; and the defendant's acquisition, use, or disclosure of the trade secret was a substantial factor in causing the plaintiff harm"); *supra* Apple's Position: Proposed Instruction No. 16B.

Plaintiffs contend that they need not prove the harm and causation elements because the alternate remedy of a reasonable royalty "*may*" be available where "neither damages nor unjust enrichment caused by misappropriation *are provable*." Cal. Civ. Code § 3426.3(b). But neither Plaintiffs' instruction nor their argument cites even one case supporting that reading of CUTSA. To the contrary, the California Court of Appeals has affirmed a trial court's grant of non-suit (i.e., JMOL) on CUTSA liability where the plaintiff "did not present evidence of damages specific to the dispute at hand and relevant to the measures of damages." *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 627 (1992). In so doing, the Court of Appeal rejected the defendant's argument that "the [trial] court erred because … even if there was insufficient evidence of unjust enrichment, the trial court should have allowed the jury to determine liability for trade [secret] misappropriation as a precursor to the court's determination of a reasonable royalty under [§ 3426.3(b).]" *Id.* *Unilogic* therefore squarely forecloses Plaintiffs' position.

-208-

As discussed above, Plaintiffs also misunderstand the purpose and availability of a reasonable royalty under CUTSA.  *See supra* Apple's Objection To Plaintiffs' Proposed Instruction No. 25.  CUTSA provides for a reasonable royalty as an alternate remedy where the plaintiff has proven that misappropriation caused some amount of injury or "unjust enrichment" but the measure of that harm or benefit is "*unprovable*." *Cacique, Inc. v. Robert Reiser & Co*., 169 F.3d 619, 623 (9th Cir. 1999); Cal. Civ. Code § 6426.3(b).  The Ninth Circuit recognized in *Cacique* that "[c]ases finding unjust enrichment unprovable under § 3426.3 have involved unusual circumstances," that made it impossible to obtain the evidence necessary to prove the measure of harm or unjust enrichment.  *Id.* (describing *Unilogic v. Burroughs*, 10 Cal. App. 4th 612, 626-630 (1992) as involving an "infringing product never brought to market, just used internally" and *Vermont Microsystems, Inc. v. Autodesk, Inc*., 138 F.3d 449 (2d Cir. 1998) as involving "infringing technology [that] was only a tiny part of value of complex software").

Ultimately, Plaintiffs identify no case in which a reasonable royalty was granted where the measure of harm or unjust enrichment was "eminently provable," but the plaintiff failed to prove that misappropriation had caused *any* harm whatsoever. However, this is exactly what Plaintiffs assert is possible by proposing to omit the causation and harm elements from the requirements for CUTSA liability.

## MASIMO'S PROPOSED INSTRUCTION NO. 34A[72]

### Defense—Statute of Limitations

Apple claims that Masimo and Cercacor's lawsuit was not filed within the time set by law.  To succeed on this defense, Apple must prove that the claimed misappropriation of a trade secret occurred before January 9, 2017.

If Apple succeeds on that portion of the defense, Masimo and Cercacor must prove that they did not know or have reason to know of the misappropriation of trade secrets before January 9, 2017.

Masimo and Cercacor had reason to know of the misappropriation of trade secrets if they:

    (a)    Had reason to suspect that Apple had already misappropriated the alleged trade secrets; and

    (b)    A reasonable investigation would produce facts sufficient to confirm that suspicion and justify bringing a lawsuit.

A mere suspicion that trade secrets could have been misappropriated does not show Masimo and Cercacor knew or had reason to know of the misappropriation of trade secrets.

---

[72] **Authority:** CACI 4421 (adapted); Dkt. 606 at 3 (quoting *Hays v. VDE Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016)); *id.* at 7.

**Masimo's Argument: Proposed Instruction No. 34A**

The parties agree on the first paragraph of this proposed instruction, which tracks the language of CACI No. 4421.  The second paragraph of Masimo's proposal departs from CACI but tracks the correct law and this Court's prior order regarding Apple's motion for partial summary judgment.  The Court explained that, "when there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation."  Dkt. 606 at 3 (quoting *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016)).  Masimo's third paragraph tracks this Court's further explanation that "a suspicion that [trade secrets] theoretically could be shared provides an insufficient basis for filing a trade secret misappropriation claim."  *Id.* at 7 (citing *Cypress Semiconductor Corp.v. Superior Ct.*, 163 Cal. App. 4th 575, 587, (2008)).

Masimo's second and third paragraphs are particularly important in this case.  Apple will argue Masimo's claims are untimely if Masimo suspected some wrongdoing in the abstract.  Apple will argue that this defense applies even if Masimo did not suspect misappropriation had occurred and even if Masimo could not have confirmed the misappropriation through further investigation.  Such arguments are directly contrary to the caselaw Masimo cited above and would invite legal error.  Masimo's proposal is more accurate and would be more helpful to the jury than Apple's in explaining the legal framework for applying the statute of limitations.

Apple argues that Masimo's proposal is inconsistent with the Court's ruling when the proposal recites that the statute of limitations does not apply if Masimo "did not know or have reason to know of the misappropriation."   Apple claims the Court explained the "proper inquiry is different" because it referred to when the "the misappropriation is discovered or by reasonable diligence should have been discovered."  Dkt. 606 at 5.  That language is similar to Masimo's proposal and Masimo would have no objection to using that language.  But Apple ignores the real distinction in the parties'

1  proposals: how to satisfy that standard.  Masimo's proposal tracks the Court's order

2  (Dkt. 606 at 5) by reciting that the standard is satisfied if Masimo:

3          (a)    Had reason to suspect that Apple had already misappropriated the alleged

4          trade secrets; and

5          (b)    A reasonable investigation would produce facts sufficient to confirm that

6          suspicion and justify bringing a lawsuit.

7  Apple's arguments it exchanged with Masimo do not dispute this is the correct standard.

8          Apple argues that, once the statute of limitations begins to run for one trade secret,

9  it begins to run for all trade secrets.  That argument is incorrect for several reasons.

10         First, Apple relies on *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095,

11  1110 (N.D. Cal. 2012), but Apple omits that even *MedioStream* held that the statute of

12  limitations begins to run as to other trade secrets only if "they are related."  *Id.*

13  *MedioStream* also cites cases that reached the same conclusion.  *See Forcier v. Microsoft*

14  *Corp.,* 123 F. Supp. 2d 520, 526 (N. D. Cal. 2000) ("alleged trade secrets at issue all are

15  related"); *HiRel Connectors, Inc. v. U.S.*, 465 F. Supp. 2d 984, 988 (C.D. Cal. 2005)

16  (addressing "separate misappropriations of related trade secrets"); *see also Intermedics*,

17  822 F. Supp. at 654 (statute began to run "at least for all related matters").

18         Here, at least the Business Strategies trade secrets are not related to any of the

19  technical trade secrets (and vice versa), the ███████████ trade secrets are not

20  related to the ████████ trade secrets (and vice versa), and L1 is not related to L2

21  (or vice versa).

22         Second, Apple ignores that awareness of one former employee's misappropriation

23  does not place a company on notice of misappropriation by other former employees.

24  *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1003 (C.D. Cal. 2011) ("'continuing

25  misappropriation' refers to multiple acts by *one* individual and not, as here, many other

26  employees").  Thus, the jury could at least find that trade secrets misappropriated by or

27  via O'Reilly did not put Masimo on notice that trade secrets may have been

28  misappropriated by or via Lamego (and vice versa).

-212-

1    Third, Apple ignores that this Court addressed the legal standards for triggering

2  the statute of limitations when Apple filed its first motion for partial summary judgment

3  in 2021.  This Court explained that, "when there is reason to suspect that a trade secret

4  has been misappropriated, ***and a reasonable investigation would produce facts***

5  ***sufficient to confirm this suspicion*** (and justify bringing suit), the limitations period

6  begins, even though the plaintiff has not conducted such an investigation." Dkt. 606 at 3

7  (emphasis added) (quoting *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3

8  (D. Haw. Sept. 28, 2016)).  This Court further explained that "a suspicion that [trade

9  secrets] theoretically could be shared provides an insufficient basis for filing a trade

10 secret misappropriation claim." *Id.* at 7 (citing *Cypress Semiconductor Corp.v. Superior*

11 *Ct.*, 163 Cal. App. 4th 575, 587, (2008)).

12    Even if Masimo had a reason to suspect misappropriation of one trade secret, if a

13 reasonable investigation would not have produced facts sufficient to justify bringing suit

14 on other trade secrets, then the statute should not begin running as to those other trade

15 secrets.  The jury should evaluate Apple's statute of limitations defense independently

16 for each trade secret.

17

18

19

20

21

22

23

24

25

26

27

28

## APPLE'S PROPOSED INSTRUCTION NO. 34B[73]

### Defense—Statute of Limitations

Apple claims that Masimo and Cercacor's lawsuit was not filed within the time set by law.   To succeed on this defense, Apple must prove that the claimed misappropriation of a trade secret occurred before January 9, 2017.

However, the lawsuit was still filed on time if Masimo and Cercacor prove that before January 9, 2017, they did not discover, nor with reasonable diligence should they have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated at least one of Masimo and Cercacor's alleged trade secrets.

---

[73] **Authority:** CACI 4421 (adapted); Dkt. 606 at 3; *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1110 (N.D. Cal. 2012).

1

**Apple's Position: Proposed Instruction No. 34B**

2        Apple's proposed instruction is nearly identical to CACI 4421, departing only to

3    add a clarification that appears in this Court's prior summary judgment ruling—i.e., that

4    the statute of limitation begins to run as soon as "Plaintiffs discovered or had reason to

5    discover that *a trade secret*" (as opposed to every claimed trade secret) "had been

6    misappropriated." Dkt. 606 at 5 (emphasis added).  Other courts that have addressed the

7    issue have reached the same conclusion, holding that in the context of a misappropriation

8    single claim against a single defendant, the limitations period begins to run at the time

9    the plaintiff knew or should have discovered the first instance of misappropriation.

10   *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1110 (N.D. Cal. 2012)

11   (collecting cases); *see also, e.g., Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634,

12   654 (N.D. Cal. 1993) ("[O]nce a plaintiff knows or should know that a particular

13   defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply

14   to assume that that defendant can be trusted to protect other secrets.").

15        Plaintiffs' counter-proposal rightly does not dispute this basic principle.  But it

16   improperly diverges from the statute, CACI 4421, and this Court's prior ruling when it

17   states that the defense does not apply if Plaintiffs can show they "did not know or have

18   reason to know of the misappropriation."  As this Court has explained, the proper inquiry

19   is different—the statute of limitations runs when "'the misappropriation is discovered or

20   by reasonable diligence should have been discovered.'"  Dkt. 606 at 3 (quoting Cal. Civ.

21   Code § 3426.6); *accord* CACI 4421.

22        If this Court decides to give Plaintiffs' instruction, Apple preserves for appeal its

23   position that the statute of limitations is triggered whenever Plaintiffs first suspected

24   misappropriation of one of the purported trade secrets at issue in this litigation.  *See* Dkt.

25   587 at 1, 3-6; Dkt 595 at 2-3.  In short, "once the plaintiff has a suspicion of wrongdoing,

26   and therefore an incentive to sue, she must decide whether to file suit or sit on her rights."

27   *See, e.g., Gabriel Techs. Corp. v. Qualcomm, Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal.

28   2012).  Plaintiffs' proposed instruction wrongly relies on the test for constructive notice

-215-

under federal law, which is different (and more generous to a slow-moving plaintiff) than the test for constructive notice under state law. *See City of Los Angeles v. San Pedro Boat Works*, 2008 WL 11334051, at \*7-8 (C.D. Cal. Apr. 28, 2008).

# MASIMO'S PROPOSED INSTRUCTION NO. 35A[74]

## (Offered in the Alternative)

## Defense—Unclean Hands

Apple has raised as an affirmative defense the allegation that Masimo has come into court with unclean hands.

A person who has committed an intentional dishonest act in connection with that person's relationship to another is barred by the doctrine of unclean hands from recovering damages from the other person.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation. Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.

---

[74]    **Masimo's Position:** The Court should not provide an instruction on unclean hands because Apple's theory is not a defense to a claim for trade secret misappropriation and unclean hands is typically an equitable issue for the Court.

**Authority:** 2 Cal. Affirmative Def. § 45:18 (2d ed.)

1

**Masimo's Objections to Apple's Proposed Instruction No. 35B**

2    Unclean hands is an equitable issue, typically for the court to decide.  *See Nat.-*
3    *Immunogenics Corp. v. Newport Trial Grp.*, No. SACV 15-2034-JVS-JCGx, 2019 WL
4    3099725, at *6 (C.D. Cal. Apr. 15, 2019) ("unclean hands is an equitable defense tried
5    to the Court, and a litigant is not entitled to have a jury resolve a disputed affirmative
6    defense if the defense is equitable in nature.") (cleaned up); *JIPC Mgmt., Inc. v.*
7    *Incredible Pizza Co.*, No. CV 08-04310 MMM PLAx, 2009 WL 8591607, at *19 (C.D.
8    Cal. July 14, 2009) ("Defendants' unclean hands defense is equitable, however, and
9    committed to the discretion of the court; there is no right to jury trial on this defense.");
10   *Starz Ent., LLC v. Buena Vista Television, Inc.*, No. CV 07-1895-VBF(PJWX), 2008
11   WL 11336466, at *2 (C.D. Cal. Oct. 20, 2008) ("unclean hands and equitable estoppel
12   are issues for resolution by the Court and not the jury."); *see also Safety Dynamics, Inc.*
13   *v. Gen. Star Indem. Co.*, No. CV-09-00695-TUC-CKJ, 2013 WL 11299210, at *3 (D.
14   Ariz. July 26, 2013) (denying request for jury trial on unclean hands).

15   The parties agree that there is no right to trial by jury on this defense.  Apple
16   argues that the Court should discretionarily allow the jury to resolve Apple's unclean
17   hands defense because the facts underlying the defense are intertwined with factual
18   issues already before the jury.  Masimo will address this issue in its forthcoming
19   response to Apple's offer of proof on unclean hands.

20   Among other issues, Masimo's forthcoming response will explain that Apple's
21   theory of unclean hands is not a defense to a claim for trade secret misappropriation.
22   *See Brown v. TGS Mgmt. Co.*, 57 Cal. App. 5th 303, 317 (2020) (even a facially invalid
23   confidentiality provision does not limit the ability to "prevent former employees from
24   disclosing trade secrets and other confidential information by pursuing injunctive relief
25   and tort remedies under the Uniform Trade Secrets Act and the unfair competition law").

26   Apple's proposed instruction is also improper because it would expand Apple's
27   allegations of unclean hands beyond the validity and enforceability of the noncompete
28   and nonsolicitation provisions that Apple disclosed during discovery.  Apple now claims

-218-

that Masimo has unclean hands because it required employees to sign employment agreements that include confidentiality provisions.  Apple cannot expand the scope of its defense via a jury instruction.  Masimo will also address this issue in its forthcoming response.

Should the Court send unclean hands to the jury, and provide an instruction on unclean hands, Masimo requests the Court use Masimo's proposed alternative instruction.  Masimo's instruction is a more concise version of the model instruction on which Apple relies.  *See* 2 Cal. Affirmative Def. § 45:18 (2d ed.).

Masimo's forthcoming response will also address how Apple will open the door on certain *in limine* rulings if the Court allows Apple to argue unclean hands to the jury based on the validity of Masimo's employment contracts.

# APPLE'S PROPOSED INSTRUCTION NO. 35B[75]

## Defense—Unclean Hands

Apple has raised as a defense that Masimo and Cercacor come into court with unclean hands and so should be barred from recovering damages on their claims.  The doctrine of unclean hands is invoked when a litigant seeking damages has violated a duty of good faith or has acted unconscionably in connection with the same subject matter or relationship out of which the litigant claims a right to damages.  If you find such a violation of good faith or conscience, then you should find that the plaintiff or plaintiffs that are guilty of unclean hands are not entitled to recover damages in this action.

A person who has committed an intentional, dishonest act in connection with that person's relationship to another is barred by the doctrine of unclean hands from recovering damages from the other person.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation.  Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.

In this case, Apple alleges that Masimo and Cercacor have unclean hands because they required certain employees, including Dr. O'Reilly and Dr. Lamego, to sign employment agreements that include confidentiality, noncompete, and nonsolicitation

---

[75] **Authority:** 2 Cal. Affirmative Def. § 45:18 (2d ed.); Cal. Bus. & Prof. Code § 16600; *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945-946 (2008); *Brown v. TGS Mgmt Co.*, 57 Cal. App. 5th 303, 316-317 (2020); *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 939-940 (2018); *Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1238 (2009); *Fladboe v. American Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 56 (2007) ("The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy.").

1   provisions.  I have determined that these provisions were void and unenforceable under
2   California law from their inception.

**Apple's Position: Proposed Instruction No. 35B**

Both California and Ninth Circuit law provide that the Court has discretion to present an unclean hands defense to the jury. *See, e.g.*, *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 619-622 (1992) (holding that unclean hands defense is available in a trade secret misappropriation suit for damages and that it may be submitted to jury at court's discretion); *National Life Ins. Co. v. Saks*, 630 F. App'x 703, 704 (9th Cir. 2015) ("The district court did not err in instructing the jury on unclean hands."). This rule makes good sense because in general, "the application of the doctrine of unclean hands is primarily a question of fact, *Ins. Co. of N. Am. v. Liberty Mut. Ins. Co.*, 128 Cal. App. 3d 297, 306 (1982)—i.e., a question the jury is well-suited to answer. Submission of unclean hands to the jury is particularly appropriate where, as here, the "theories in support of the unclean hands defense [a]re intertwined with [Plaintiffs'] legal causes of action and raise[] questions of fact and credibility properly submitted to a jury." *Unilogic*, 10 Cal. App. 4th at 623. The first three paragraphs of the proposed instruction implement the model unclean hands instruction drawn from a treatise on affirmative defenses in California law. *See* 2 Cal. Affirmative Def. § 45:18 (2d ed.). These paragraphs properly state the law of unclean hands; indeed, Plaintiffs' counter-proposal adopts the same substantive standard for establishing an unclean hands defense.

The fourth paragraph of Apple's Proposed Instruction No. 35B instructs the jury on Apple's specific theory of unclean hands: that Plaintiffs required their employees, including Marcelo Lamego and Dr. Michael O'Reilly, to sign an Employee Confidentiality Agreement containing non-disclosure and non-compete provisions that are void and unenforceable in California because they contravene Cal. Bus. & Prof. Code § 16600.

Apple recognizes that the Court's ruling on Apple's motion *in limine* No. 4 directed the parties "not [to] ask the jury to resolve the legal question" of whether the Agreement is void under section 16600. Dkt. 1439 at 7. Apple has accordingly drafted its proposed instruction on the assumption that Apple will successfully move for JMOL

1   at the appropriate time on the issue of the confidentiality and non-compete provisions'
2   validity under section 16600.

3        Plaintiffs' opposition to this instruction rests on the fact that unclean hands is an
4   equitable doctrine, but that argument carries little force in this particular case since the
5   jury will already be resolving another traditionally equitable claim—inventorship of a
6   number of patents.  *See Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007)
7   (holding that Seventh Amendment required equitable inventorship claim to be tried
8   alongside state law claim raising common factual issues).  Indeed, Plaintiffs' own case
9   law recognizes that bifurcation of legal and equitable claims may be inappropriate when
10  there are common underlying factual issues.  *See Danjaq LLC v. Sony Corp.,* 263 F.3d
11  942, 962 (9th Cir. 2001) ("Where equitable and legal claims are joined in the same
12  action, there is a right to jury trial on the legal claims which must not be infringed … by
13  a court trial of a common issue existing between the claims.'"); *Granite State Ins. Co. v.*
14  *Smart Modular Techs.*, 76 F.3d 1023, 1026 (9th Cir. 1996) (affirmative defense of laches
15  may be tried to jury if "any common issues … exist between [plaintiff's] legal claims
16  for breach of contract and negligence and [defendant's] equitable defense").  And while
17  Plaintiffs assert that the validity of Plaintiffs' Agreement does not "relate to any other
18  issue in the case," Plaintiffs have previously represented to this Court that they intend to
19  rely on the Agreement to establish that they took reasonable efforts to preserve the
20  confidentiality of their alleged trade secrets.  Plaintiffs have not identified any case law
21  holding that an invalid Agreement establishes reasonable efforts, nor is Apple aware of
22  any such precedent.  *See supra* Apple's Position:  Proposed Instruction No. 20.

23
24
25
26
27
28

# APPLE'S PROPOSED INSTRUCTION NO. 36[76]

## Defense—Information Was Readily Ascertainable by Proper Means

Apple did not misappropriate an alleged trade secret if Apple proves that the alleged trade secret was readily ascertainable by proper means at the time of the alleged acquisition, use, or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

---

[76] **Authority:** CACI 4420 (adapted).

**Apple's Position: Proposed Instruction No. 36**

Apple acknowledges the Court's ruling on Plaintiffs' *Daubert* motion, construing the scope of the readily ascertainable defense more narrowly than CACI 4420.  *See* Dkt. 1284.  However, Apple offers this instruction to preserve its position for appeal.  Apple further incorporates by reference the arguments made in opposition to Plaintiffs' *Daubert* motion, regarding the scope of the readily ascertainable defense.  *See* Dkt. 1225 at 10-16.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Masimo's Objections to Apple's Proposed Instruction No. 36**

Masimo objects to this instruction because the parties agree there is no basis for providing it in light of the Court's *Daubert* ruling that rejected Apple's "readily ascertainable" defense. *See* Dkt. 1284 at 4. Apple admits that it offers this instruction only to preserve its position for appeal.

## MASIMO'S PROPOSED INSTRUCTION NO. 37A[77]

### Remedies For Misappropriation of Trade Secret

If Masimo and Cercacor prove that Apple misappropriated one or more of the Asserted Trade Secrets, and prove that the misappropriation caused Masimo or Cercacor to suffer an actual loss or Apple to be unjustly enriched, then Masimo and Cercacor are entitled to recover monetary compensation.

---

[77] **Authority:** CACI 4409 (adapted).

**Masimo's Argument: Proposed Instruction No. 37A**

Masimo's proposed instruction is based on CACI No. 4409 and succinctly informs the jury of the monetary recovery Masimo seeks.  Masimo seeks to recover for Masimo's losses and Apple's unjust enrichment due to Apple's misappropriation. Masimo omitted the second paragraph in the CACI model instruction because Masimo is not presenting a reasonable royalty case to the jury.

Apple's proposal is unnecessarily long and risks confusing the jury by referring to issues that are not before the jury, introducing limitations that are inconsistent with the facts of the case, and adding language not supported by the caselaw.

Apple's proposal instructs the jury on reasonable royalty, even though the jury will not address that issue.  Apple then asserts that the award of damages "must be limited solely to the time that the relevant alleged trade secrets would have remained unavailable to Apple in the absence of misappropriation."  Apple's cases on this point are inapposite.  *Lamb-Weston* did not decide the duration of the damages period, but instead the duration of an injunction.  *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  Moreover, the head start period applied because the trade secret became public with the publication of the plaintiff's patent, and the plaintiff presented evidence of its development time.  *Id.* at 975.  Apple's reliance on *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1317–18 (Fed. Cir. 2018) is also misplaced.  In that case, plaintiff's own product made the alleged trade secrets available to the defendant by proper means, and the defendant successfully reverse-engineered plaintiff's product before damages would have started. *Id.*  Apple does not allege Masimo made its trade secrets available by proper means to Apple.  Apple also does not allege any actual reverse engineering.

Other courts considering more analogous facts have declined to limit damages by a head start period.  *See Johns Manville Corp. v. Knauf Insulation, LLC,* No. 15-CV-00531-RBJ-KLM, 2017 WL 4222621, at *9 (D. Colo. Sept. 22, 2017) (under Colorado law, plaintiff is "entitled to damages from any period during which the trade secrets

afforded [defendant] a competitive advantage and for any profits [defendant] derived from its use of [plaintiff's] trade secrets, rather than just those benefits that accrued during a hypothetical 'head start' period."); *RRK Holding Co. v. Sears, Roebuck & Co.,* 563 F. Supp. 2d 832, 836 (N.D. Ill. 2008) (jury instructions were consistent with Illinois law and UTSA that head start period does not limit monetary damages, including actual loss).

Apple's language is based on a portion of the model instruction that applies only to a reasonable royalty. Moreover, the Court will separately instruct the jury on the law of lost profits and unjust enrichment in the next two instructions. Addressing these issues as part of an introductory instruction is unnecessary and potentially confusing.

Apple's proposed instruction, as with many of Apple's proposals, confusingly refers in summary fashion to subject matter that is fully addressed in other proposed instructions, including regarding Masimo's obligation to establish liability, Apple's defenses, and the burden of proof. Apple's incomplete repetition would be unhelpful and confusing to the jury. Apple also repeats its false assertion that liability for trade secret misappropriation requires establishing five elements. As discussed above, establishing liability does not require proof of damages or causation. *See* Cal. Civ. Code. § 3426.3(b).

## APPLE'S PROPOSED INSTRUCTION NO. 37B[78]

### Remedies for Misappropriation of Trade Secrets

If Masimo and Cercacor prove all five essential elements of their misappropriation claim with respect to one or more alleged trade secrets and Apple does not prove any of its defenses, then Masimo and Cercacor are entitled to recover damages if the misappropriation caused Masimo and Cercacor to suffer an actual loss of profits[79] and/or if the misappropriation caused Apple to be unjustly enriched.  However, in determining damages, you may only consider those alleged trade secrets where you have unanimously found Apple liable, i.e., where you have decided that Masimo and Cercacor proved all essential elements and Apple did not prove any of its defenses.

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your

---

[78] **Authority:** CACI 4409 (adapted); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 5.1 (adapted); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir. 1991) (holding that "[t]he appropriate duration for the [relief for trade secret misappropriation] should be the period of time it would have taken the defendant, either by reverse engineering or by independent development, to develop the product legitimately without use of plaintiff's trade secrets."); *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1317–18 (Fed. Cir. 2018) (vacating jury's monetary award for misappropriation of trade secrets because "evidence supporting [the] claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission [could not] be deemed harmless"); *see also Ajaxo, Inc. v. E\*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 160 n. 9 (2020) ("Because the CUTSA is derived from the national Uniform Trade Secrets Act, California courts consider case law from other jurisdictions applying similar sections of the Uniform Act.").

[79] As detailed in Apple's March 17, 2023 motion, Plaintiffs' untimely disclosure of their new lost profits theory on March 15, 2023 is improper.  Dkt. 1443.  Based on this new information, Apple does not believe that Plaintiffs have preserved any lost profits argument.  To the extent the Court agrees, Apple submits that the phrase "if the misappropriation caused Masimo and Cercacor to suffer an actual loss of profits and/or" should be removed from this instruction.

verdict should be rendered.  Masimo and Cercacor have the burden of proving the measure of damages by a preponderance of the evidence.  It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

Your award of damages, whether measured by the loss of profits[80] to Masimo and Cercacor or the unjust enrichment of Apple, must be limited solely to the time that the relevant alleged trade secrets would have remained unavailable to Apple in the absence of misappropriation.  Damages therefore cannot be awarded in connection with losses to Masimo and Cercacor or unjust enrichment of Apple that occurred after Apple could have discovered or obtained the relevant information by proper means.

If Apple's misappropriation did not cause Masimo and Cercacor to suffer an actual loss of profits[81] or Apple to be unjustly enriched, then Masimo and Cercacor may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.  However, I will calculate the amount of any royalty after you deliver your verdict.

In deciding the amount of Masimo and Cercacor's lost profits[82] or Apple's unjust enrichment, if any, you may not consider the outcomes of Plaintiffs' remaining claims for correction of inventorship and declaration of ownership of certain disputed Apple patents.  The issues of lost profits[83] and unjust enrichment are only relevant to Masimo and Cercacor's claim for misappropriation of trade secrets.  The inventorship and

---

[80] As detailed in Apple's March 17, 2023 motion, Plaintiffs' untimely disclosure of its new lost profits theory on March 15, 2023 was improper.  Based on this new information, Apple does not believe that Plaintiffs have preserved any lost profits argument.  To the extent the Court agrees, the phrase "lost profits' should be removed from this instruction.

[81] *See supra* n. 80.

[82] *See supra* n. 80.

[83] *See supra* n. 80.

ownership claims are legally distinct, and it is the Court's duty to determine the appropriate remedy in connection with the inventorship and ownership claims, based on the facts you determine through your deliberations.

**Apple's Position: Proposed Instruction No. 37B**

Apple's Proposed Instruction No. 37B is based on a combination of the standard CACI and Ninth Circuit model instructions for the jury's consideration of compensatory damages in a trade secret misappropriation case, adapted for this situation where Plaintiffs have brought a single claim concerning multiple alleged trade secrets. Specifically, the first and fourth paragraphs of Apple's Proposed Instruction No. 37B are adaptations of CACI 4409, which introduces the three forms of damages potentially available on Plaintiffs' trade secrets misappropriation claim:  lost profits, unjust enrichment, and reasonable royalties.

Apple has made two modifications to tailor the model instruction to the facts of this case.  First, Apple specified in line 6 that the "actual loss" Plaintiffs are entitled to seek is "actual loss of profits," since that is the only theory of harm Plaintiffs have even suggested they are pursuing.  As noted in Apple's Objection to Proposed Instruction No. 38, however, Apple does not believe Plaintiffs have preserved a lost profits theory at this point in the case.  If this Court agrees and grants Apple's March 17, 2023 motion, this reference and all other references to lost profits should be removed.

Second, Apple modified the first sentence and added the last sentence of the first paragraph to clarify for the jury that it is only to consider for damages those alleged trade secrets for which it has unanimously determined that Plaintiffs carried their burden and proved all five essential elements, and for which Apple has failed to prove any of its defenses.  Apple believes that it is critical to be clear on this point given the number and complexity of the alleged trade secrets at issue in this single misappropriation claim.

The second paragraph of Apple's Proposed Instruction No. 37B presents the unmodified Ninth Circuit model instruction explaining how damages must be proved. Apple omitted one sentence that would have been repetitive of information in CACI 4409 (i.e., "If you find for the plaintiff, you must determine the plaintiff's damages."). Apple objects to Plaintiffs' Proposed Final Jury Instruction No. 37A because it fails to instruct the jury as to the burden or standard of proof required to award damages.

The third paragraph of Apple's Proposed Instruction No. 37B directs the jury to follow the head-start rule—i.e., that "[t]he appropriate duration for the [relief for trade secret misappropriation] should be the period of time it would have taken the defendant, either by reverse engineering or by independent development, to develop the product legitimately without use of plaintiff's trade secrets." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). The official comment to section 3 of the Uniform Trade Secrets Act, upon which Cal. Civ. Code §3426.3 is based, states that "a monetary recovery for trade secret misappropriation is appropriate only for the period in which information is entitled to protection as a trade secret, plus the additional period, if any, in which a misappropriator retains an advantage over good faith competitors because of misappropriation." Apple therefore objects to Plaintiffs' omission of an instruction that would limit damages to a "head start" period, since failure to limit damages constitutes reversible error. *See Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1317-1318 (Fed. Cir. 2018) (vacating jury's monetary award for misappropriation of trade secrets because "evidence supporting [the] claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission [could not] be deemed harmless"); *see also Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 160 n.9 (2020) ("Because the CUTSA is derived from the national Uniform Trade Secrets Act, California courts consider case law from other jurisdictions applying similar sections of the Uniform Act.").

Finally, the last paragraph of Apple's Proposed Instruction No. 37B explains to the jury that they should not consider Plaintiffs' inventorship and ownership claims in calculating the amount of any damages award.

Apple objects to Plaintiffs' bare-bones counter-proposal because it omits most of the important principles mentioned above—i.e., that the jury (1) can only award damages on alleged trade secrets where it finds Plaintiffs have made all the required showings and Apple's affirmative defenses are unpersuasive, (2) cannot award damages

on the inventorship/ownership claims, and (3) should limit its damages to Apple's head start period.  The last omission is particularly egregious because, as noted above, failure to limit damages constitutes reversible error.  While Plaintiffs appear to contend that the "head start period" rule is limited to reasonable royalty awards, they cite nothing for their position and have no answer to the contrary authorities Apple cites above.

Plaintiffs' assertion that it is "improper[]" to instruct the jury that this Court may later award a reasonable royalty conflicts with CACI 4409's Directions for Use.  The Directions note that the reasonable royalty language can be used "if the court wants to advise the jury that even if it finds that the plaintiff suffered no actual loss and that the defendant was not unjustly enriched, the plaintiff may still be entitled to some recovery."

## MASIMO'S PROPOSED INSTRUCTION NO. 38[8485]

### Lost Profits

Masimo contends that Apple's misappropriation caused it to suffer actual harm in the form of lost profits.  Masimo contends that, but for Apple's misappropriation, Apple would have purchased sensor modules from Masimo to be used in Apple Watches Series 4 and higher.  Masimo seeks to recover the profits it would have made by selling those sensor modules to Apple.

To recover damages for lost profits, Masimo and Cercacor must prove it is reasonably certain they would have earned profits but for Apple's trade secret misappropriation.

To decide the amount of damages for lost profits, you must determine the gross amount Masimo and Cercacor would have received but for Apple's misappropriation. You may calculate this amount by multiplying Masimo's gross profit per sensor module and the number of sensor modules Masimo would have sold absent Apple's misappropriation.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

_____

[84] **Masimo's Authority:** CACI 3903N.

[85] **Apple's Position:** As detailed in Apple's March 17, 2023 motion, Plaintiffs' untimely disclosure of its new lost profits theory on March 15, 2023 was improper.  Based on this new information, Apple does not believe that Plaintiffs have preserved any lost profits argument.  To the extent the Court agrees, the phrase "lost profits' should be removed from this instruction. To the extent this Court agrees, Apple submits that this instruction should not be given.  To the extent this Court disagrees, Apple reserves the right to present a lost profits instruction promptly after this Court issues its ruling.

**Masimo's Argument: Proposed Instruction No. 38**

Masimo's proposed instruction is consistent with the CACI model instruction and the supporting caselaw.

Masimo objects to Apple refusing to propose an instruction on this issue and trying to reserve the right to do so later.  Masimo proposed numerous alternative instructions regarding issues on which Masimo asserts the Court should not offer any instruction.

Apple concealing the alternative instruction it may offer is particularly problematic because Apple initially proposed an instruction on lost profits.  Indeed, Apple was the first party to assert that the Court should offer an instruction specific to lost profits.  Apple previously asserted the Court should provide such an instruction because lost profits was the only harm for which Masimo sought damages.  It was only after Masimo pointed out that Apple's proposed instruction was inconsistent with Apple's claim that Masimo had not sufficiently disclosed its lost profits theory that Apple withdrew its proposal so that Masimo could not respond in the ordinary course.

1

**Apple's Position: Proposed Instruction No. 38B**

2          As detailed in Apple's March 17, 2023 memorandum, Plaintiffs' untimely

3    disclosure of their new lost profits theory on March 15, 2023 is improper.  *See* Dkt.

4    1442-1.  Based on this new information, Apple does not believe that Plaintiffs have

5    preserved any admissible lost profits argument.  To the extent the Court agrees, Apple

6    submits that this instruction should not be given.  To the extent this Court disagrees,

7    Apple reserves the right to present a lost profits instruction and raise targeted objections

8    to Plaintiffs' Proposed Instruction No. 38 promptly after the Court issues its ruling (for

9    example, the fact that the instruction improperly suggests that this Court has approved

10   Plaintiffs' specific (and flawed) theory for calculating lost profits).

1

2

## MASIMO'S PROPOSED INSTRUCTION NO. 39A[86]

### Unjust Enrichment

3

4

5

Apple was unjustly enriched if its misappropriation of one or more Masimo and Cercacor trade secrets caused Apple to receive a benefit that Apple otherwise would not have achieved.

6

7

8

9

10

In order to prove the amount by which Apple was unjustly enriched, Masimo and Cercacor have the burden to prove the amount of revenue Apple received from selling products that benefitted from Apple's misappropriation.  Once Masimo and Cercacor satisfy that burden, Apple then has the burden of establishing any portion of its revenue not attributable to its misappropriation.

11

12

13

14

When you determine Apple's unjust enrichment, you must consider any lost profits award to Masimo.  If you awarded Masimo profits for a sensor module that Masimo would have sold to be used in a particular Apple Watch, you should not include that watch when calculating Apple's unjust enrichment.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[86] **Masimo's Authority:**  CACI No. 4410; Restatement (Third) of Unfair Competition § 45 cmt. f (1995).

**Masimo's Argument: Proposed Instruction No. 39A**

Both parties propose modified versions of CACI No. 4410.

Masimo's proposed instruction instructs the jury regarding the well-recognized burden-shifting framework that applies in trade secret cases involving unjust enrichment. Masimo, as the plaintiff, has the burden to establish the revenue Apple received from selling products that benefitted from misappropriation. Apple, as the defendant, has the burden to establishing any portion of its revenue not attributable to its misappropriation. *See* Restatement (Third) of Unfair Competition § 45 cmt. f (1995).

The burden-shifting framework discussed in the Restatement applies in determining unjust enrichment in trade secret cases. *BladeRoom Grp. Ltd. V. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 990 (N.D. Cal. 2018) (applying Restatement (Third) of Unfair Competition § 45 cmt. f (1995), holding defendant "is in the better position to show any portion of the sale not attributable to the trade secret, which observation conforms to the purpose of the burden shifting occurring when unjust enrichment damages are at issue"), vacated and remanded on other grounds, 11 F.4th 1010 (9th Cir.2021), and vacated and remanded on other grounds, 20 F.4th 1231 (9th Cir. 2021); *Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, 2018 WL 6818748, at *4 (D. Colo. Dec. 28, 2018); (applying Restatement's burden shifting framework for unjust enrichment); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 467–68 (D. Mass. 2017) (same); *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 103 (D.C. Cir. 1998) (trade secret unjust enrichment "determined through a burden-shifting process largely identical to the one it had set forth for the copyright infringement claim").

Apple's proposed instruction fails to address the parties' respective burdens of proof.

Apple's proposal is also misleading because it gives limited examples of unjust enrichment that are theoretically possible, but which Masimo is not asserting in this case.

1   The Court should not give the jury examples of unjust enrichment that are not consistent

2   with Masimo's theory of the case.

3          Apple does not support its proposal to tell the jury that "[u]njust enrichment does

4   not occur, however, where the benefit would have been realized anyway."   That

5   statement is not in CACI No. 4410 or any cited case.  It is irrelevant whether it may have

6   been an appropriate instruction in *Waymo*, where the plaintiff proceeded on a theory of

7   misappropriation based only on disclosure and the court instructed that "[a]cquisition

8   alone will not be enough to recover damages."  This case is not so limited.

9          Apple's proposed third paragraph is confusing and could cause the jury to double

10  count Apple's costs.  Apple proposes that the Court instruct the jury to determine the

11  value of Apple's misappropriation and then subtract from that amount Apple's

12  reasonable expenses.  Although Masimo does not dispute that the jury can deduct

13  Apple's reasonable expenses, the jury may have already done so to determine the value

14  of Apple's misappropriation.  Moreover, Masimo's proposal allows for provable costs

15  to be deducted when it instructs the jury that Apple then has the burden to establish any

16  portion of its revenue not attributable to its misappropriation.

17         The final paragraph of Apple's proposed instruction is further misleading because

18  it incorrectly asserts there are "five essential elements" for trade secret misappropriation.

19  The elements of trade secret misappropriation are fully addressed in other instructions

20  and, as discussed above, Masimo need not establish harm or causation to establish

21  liability.  *See* Cal. Civ. Code. § 3426.3(b).  Apple also improperly references its

22  defenses, which are addressed in other instructions.

23

24

25

26

27

28

# APPLE'S PROPOSED INSTRUCTION NO. 39B[87]

## Unjust Enrichment

Masimo and Cercacor can prove that Apple was unjustly enriched if they prove that Apple is liable for misappropriation of an alleged trade secret and that the misappropriation caused Apple to receive a benefit that it otherwise would not have achieved.

Unjust enrichment occurs when a defendant reaps an undeserved benefit such as accelerating its own development timeline and/or saving on development costs by taking improper advantage of someone else's trade secrets.  Unjust enrichment does not occur, however, where the benefit would have been realized anyway.

I will now instruct you on how to decide the amount of any unjust enrichment you find.  By giving you this instruction, I am not suggesting you should find one way or the other regarding whether Masimo and Cercacor has proven any unjust enrichment.  To decide the amount of any unjust enrichment, you should first determine the value of Apple's benefit that would not have been achieved except for its alleged misappropriation, and then subtract from that amount Apple's reasonable expenses, including the value of labor, materials, and interest on invested capital.

In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Masimo and Cercacor's lost profits.[88]

---

[87] **Authority:** CACI 4410 (adapted); Court's Penultimate Jury Instruction on Trade Secret Misappropriation No. XVII, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 (N.D. Cal. Jan. 3, 2018) Dkt. 2449 at 8.

[88] **Apple's Position:** As detailed in Apple's March 17, 2023 motion, Plaintiffs' untimely disclosure of their new lost profits theory on March 15, 2023 is improper.  Based on this new information, Apple does not believe that Plaintiffs have preserved any lost profits argument.  To the extent the Court agrees, the phrase "lost profits' should be removed from this instruction.

1    In calculating any unjust enrichment, you may only consider those alleged trade

2 secrets for which Masimo and Cercacor proved all five essential elements and for which

3 Apple did not prove any of its defenses.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Apple's Position: Proposed Instruction No. 39B**

2        The first, third, and fourth paragraphs of Apple's proposed instruction directly
3   implement CACI 4410's model.  While Plaintiffs' counter-proposal also relies on CACI
4   4410, Apple objects to Plaintiffs' omission of the list of reasonable expenses that CACI
5   4410 directs should be subtracted from any benefit the jury determines was unjustly
6   received.  This omission of a portion of the CACI model would have the effect of
7   wrongly inflating any award for unjust enrichment.  By contrast, the list of reasonable
8   expenses set forth in Apple's proposed instruction is a subset of those expense types
9   listed in CACI 4410 and is supported by the evidentiary record.

10       Apple's proposed instruction follows CACI 4410 by not including the burden-
11  shifting language that appears in Plaintiffs' proposed instruction.  The parties' respective
12  burdens are implicit and unnecessary to mention because only Apple is likely to present
13  evidence on offsetting expenses, since Plaintiffs have no incentive to do so.  Introducing
14  burden-shifting language would needlessly complicate the instruction and likely confuse
15  the jury.  Plaintiffs provide only one (out-of-circuit) example where a court included
16  burden shifting language in an unjust enrichment charge, but they fail to mention that
17  the D.C. Circuit took no position on the instruction (because it was not challenged on
18  appeal) and in fact found the jury's damages verdict "perplex[ing]."  *Stenograph L.L.C.*
19  *v. Bossard Assocs., Inc.*, 144 F.3d 96, 103 (D.C. Cir. 1998).  Plaintiffs also cite language
20  from *BladeRoom Group Ltd. v. Emerson Electric Co.* that appeared in Judge Davila's
21  "Order re: Reasoning for Final Jury Instructions and Verdict Form," but the actual jury
22  instructions in that case did not employ any burden-shifting language, so that citation
23  actually undermines their request.  Case No. 5:15-cv-1370 (N.D. Cal. May 9, 2018),
24  Dkt. Nos. 850, 849.  Plaintiffs' other cases concerned evidentiary motions, so they say
25  nothing about how to instruct a jury.  *See also, e.g.*, *Nutritional Biomimetics, LLC v.*
26  *Empirical Labs Inc.*, 2018 WL 6818748, at *4-5 (D. Colo. Dec. 28, 2018) (Rule 37(c)
27  motion); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 467-468 (D. Mass. 2017)
28  (*Daubert* motion).

The second paragraph in Apple's proposed instruction is drawn from Judge Alsup's planned unjust enrichment instruction in *Waymo LLC v. Uber Technologies, Inc.*, No. 3:17-cv-00939-WHA (N.D. Cal. Jan. 3, 2018), Dkt. 2449 at 8. It provides a correct and neutral explanation of "unjust enrichment," legal jargon that should be defined for the jury so that it can fairly calculate any necessary award. While Plaintiffs attempt to distinguish *Waymo* because it involved only a disclosure theory of misappropriation, they provide no explanation for why that should matter. Moreover, Apple intends to rely on a head start argument to limit Plaintiffs' damages claim, and this disputed language from *Waymo* explains how to apply the head start principle to an unjust enrichment calculation.

The fifth paragraph clarifies for the jury that it is only to consider for damages those alleged trade secrets for which it has unanimously determined that Plaintiffs carried their burden and proved all five essential elements, and for which Apple has failed to prove any of its defenses. Apple believes it is critical to be clear on this point given the number and complexity of the trade secrets at issue in this single misappropriation claim. Plaintiffs' objection to this paragraph is illogical even granting *arguendo* its inaccurate premise that CUTSA liability requires only three elements; even Plaintiffs admit that proof of harm and causation is required to render an unjust enrichment award.

Apple objects to Plaintiffs' counter-proposal because, while it also relies on CACI 4410, it fails to define "unjust enrichment" and omits a key passage that directs the jury to subtract reasonable expenses from any benefit the jury determines was unjustly received. And, as discussed above, it improperly references burden-shifting. These omissions from—and addition to—the model CACI instruction would have the effect of confusing the jury and wrongly inflating any award for unjust enrichment.

## MASIMO'S PROPOSED INSTRUCTION NO. 40A[89]

### Punitive Damages for Willful and Malicious Misappropriation

If you decide that Apple's misappropriation caused Masimo and Cercacor harm you must decide whether Apple's conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the harmful conduct, and to discourage similar conduct in the future.

To recover punitive damages, Masimo and Cercacor must prove that Apple acted willfully and maliciously. You must determine whether Apple acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that Apple acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Apple acted with an intent to cause injury, or that Apple's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.

Apple acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

---

[89] **Authority:** CACI No. 4411

## Masimo's Argument: Proposed Instruction No. 40A

The primary difference in parties' proposed instructions is the burden of proof for willful and malicious misappropriation.  Masimo's proposed instruction explains that the burden of proof is by a preponderance of the evidence.  Apple's argument for a heightened standard fails to acknowledge an intervening change in the law.

The default burden of proof is preponderance of the evidence.  *See* Cal. Evid. Code § 115 ("Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.").  CUTSA does not adopt a heightened burden of proof for willful and malicious conduct.  *See* Cal. Civ. Code § 3426.3©; *see also K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 954 (2009).  Thus, there is no basis for suggesting that CUTSA somehow adopted a higher standard of proof for willful and malicious misappropriation.

Apple relies on cases that adopted a heightened burden of proof for willful and malicious trade secret misappropriation without supporting authority or, at best, by analogy to the burden of proving enhanced damages for willful **patent infringement**.  *See, e.g.*, *Ice Corp. v. Hamilton Sundstrand Corp.*, 615 F. Supp. 2d 1266, 1269 (D. Kan. 2009) (noting that UTSA was modeled on federal patent law).

This Court previously cited *Mattel v. MGA*, 801 F. Supp. 2d 950, 952-53 (C.D. Cal. 2011) when it declined to award exemplary damages in *Masimo v. True Wearables*.  *See* 2022 WL 17083396, at *19 (C.D. Cal. Nov. 7, 2022).  However, neither party in *True Wearables* addressed the appropriate burden of proof.  With the benefit of briefing, the Court likely would not have relied on the "clear and convincing evidence" language in *Mattel*.  *Mattel* summarily adopted a heightened burden for willful and malicious trade secret misappropriation based on two inapplicable cases.  *Mattel* cited *02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005), which says nothing about the burden of proof for finding willful misappropriation of trade secrets.  *Id.* at 1078.  Indeed, *02 Micro* acknowledges that the UTSA Commissioners' Comments "do not state that patent decisions and standards apply to exemplary damages under the

UTSA; nor do the comments support following the patent law when there are California cases on point." *Id.* at 1079. *Mattel* also cited *Ice Corp.*, which did not discuss the burden of proof. 615 F. Supp. 2d at 1269. *Ice Corp.* affirmed an award of punitive damages where the jury found by clear and convincing evidence that misappropriation was willful and malicious. *Id.* at 1275. That rendered the standard of proof irrelevant.

Apple fails to acknowledge that the Supreme Court eviscerated the basis for applying a heightened burden in trade secret cases when it rejected a heightened burden for willful patent infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 107 (2016) ("'[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard.' Enhanced damages are no exception." (citations omitted)). Thus, cases that relied on patent law to apply a heightened burden of proof no longer apply. Since 2016, courts can no longer rely on pre-*Halo* analysis or patent law to justify a heightened burden of proof for willful and malicious trade secret misappropriation. Apple cites no case since *Halo* that addressed the change in patent law and still applied a heightened burden of proof in a trade secret case.

*Mattel* acknowledged the Ninth Circuit decision in *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2011), which expressly declined to incorporate the "clear and convincing" standard into Montana's punitive damages provision for trade secret misappropriation.[90] *Yeti*, 259 F.3d at 1111–12. Indeed, *Yeti* found "legal error" in importing the "heightened quantum of proof" for punitive damages. *Id.* at 1111. *Mattel* did not attempt to distinguish *Yeti* or address its reasoning. *See Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 493 n.9 (M.D. Penn. 2018) (criticizing *Mattel* for being inconsistent with *Yeti*).

CACI provides no support for adopting a heightened standard. CACI included "by clear and convincing evidence" in brackets as ***optional*** language. It acknowledges

---

[90] Montana's exemplary damages provision is identical in relevant parts to California's. *Compare* Mont. Code 30-14-404(2) *with* Cal. Civ. Code 3426.3(c).

that "no reported California state court case has addressed whether the jury or the court should decide whether any misappropriation was 'willful and malicious,' and if so, whether the finding must be made by clear and convincing evidence rather than a preponderance of the evidence." CACI No. 4411 Directions for Use. CACI cites *Ajaxo Inc. v. E*Trade Group Inc.*, 135 Cal. App. 4th 21 (2005) as affirming a jury's finding of willful misappropriation. However, *Ajaxo* did not incorporate the "clear and convincing" standard for willful trade secret misappropriation under CUTSA, nor was that question before the court. Moreover, *Ajaxo* was more than ten years before *Halo*.

In addition to advocating for the wrong burden of proof, Apple unnecessarily and without justification departs from the CACI model instruction by removing the phrase "Apple's misappropriation caused Masimo and Cercacor harm" and replacing it with "Masimo and Cercacor proved all five essential elements of their misappropriation claim with respect to an alleged trade secret." Apple's language is incorrect because it asserts there are five elements (*see* Masimo's argument regarding Proposed Instruction No. 16, above) and confusingly repeats subject matter addressed in other instructions. It also continues Apple's approach of importing requirements from one issue into jury instructions that address entirely separate issues. Apple apparently hopes to bias the jury (consciously or unconsciously) by asking the Court to repeat—as many times as possible—that Masimo bears the burden on multiple issues. The combined effect of adopting Apple's proposals risks significantly biasing and prejudicing the jury.

# APPLE'S PROPOSED INSTRUCTION NO. 40B[91]

## Punitive Damages for Willful and Malicious Misappropriation

If you decide that Masimo and Cercacor proved all five essential elements of their misappropriation claim with respect to an alleged trade secret, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the harmful conduct and to discourage similar conduct in the future.

In order to recover punitive damages, Masimo and Cercacor must prove by clear and convincing evidence that Apple acted willfully and maliciously.  You must determine whether Apple acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages.  I will calculate the amount later.

"Willfully" means that Apple acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Apple acted with an intent to cause injury, or that Apple's conduct was despicable and was done with a willful and knowing disregard for the rights of others.  "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  You would have to find that Apple acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

---

[91] **Authority:** CACI 4411; *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *35 (C.D. Cal. Nov. 7, 2022) ("Plaintiffs have not carried their burden to demonstrate by clear and convincing evidence that … misappropriation was willful and malicious."); *Citcon USA, LLC v. RiverPay, Inc.*, 2020 WL 5365980 (N.D. Cal. Sept. 8, 2020), *aff'd*, 2022 WL 287563 (9th Cir. Jan. 31, 2022) (holding that clear and convincing evidence is required); *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 66 (2005) (noting that clear and convincing evidence was required to establish entitlement to punitive damages).

## Apple's Position: Proposed Instruction No. 40B

The chief substantive difference between the parties' proposed punitive damages instructions is that Apple's proposed instruction correctly reflects that Plaintiffs must prove the factual predicate to punitive damages by clear and convincing evidence. *See, e.g.*, *Masimo Corp. v. True Wearables, Inc.*, No. 8:18-CV-02001-JVS-JDE, 2022 WL 17083396, at *35 (C.D. Cal. Nov. 7, 2022) ("Plaintiffs have not carried their burden to demonstrate by clear and convincing evidence that … misappropriation was willful and malicious."); *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 66 (2005) (affirming jury's verdict that "Ajaxo proved by clear and convincing evidence that Everypath acted willfully and maliciously in misappropriating Ajaxo's trade secret."); Instruction No. 49, *Infospan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 (C.D. Cal. Aug. 10, 2016) (Selna, J.), Dkt. 665 at 59 ("InfoSpan must prove by clear and convincing evidence that Emirates Bank acted willfully and maliciously."). Apple objects to Plaintiffs' counter-proposal insofar as it fails to require clear and convincing evidence of willful and malicious conduct as a predicate for punitive damages.

Not one of Plaintiffs' cited authorities holds either that it is error to require clear and convincing evidence of willful or malicious misappropriation to obtain exemplary damages under CUTSA or that the preponderance standard should apply. Plaintiffs rely primarily on *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001), but that case was interpreting Montana law. By contrast, "California courts have incorporated the 'clear and convincing' standard to punitive damages for trade secret misappropriation as set forth in the CUTSA." *CitCon USA, LLC v. RiverPay, Inc.*, No. 18-cv-2585-NC, 2020 WL 5365980, at *4 (N.D. Cal. Sept. 8, 2020) (distinguishing *Yeti* on this basis); *see also Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 953 (C.D. Cal. 2011) (declining to follow *Yeti* and holding that clear and convincing standard applies); *O2Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1079 (N.D. Cal. 2005) (declining to follow *Yeti* when interpreting the scope of CUTSA's punitive damages provision because *Yeti* "involved the Montana UTSA").

1    Plaintiffs' remaining authorities fare no better.  For instance, Plaintiffs extensively

2    discuss *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 107 (2016), a case

3    about punitive damages under the patent law, and suggest that pre-2016 cases analyzing

4    patent law cannot be considered here.  But the only on-point California case that either

5    party has identified construes CUTSA without relying on a patent-law analogy, *Ajaxo*,

6    135 Cal. App. 4th at 66.  Plaintiffs also cite *K.C. Multimedia, Inc. v. Bank of America*

7    *Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009) without explanation;

8    that case does not address any relevant issue, and Plaintiffs' argument provides no

9    indication of what language in the case is relevant to this dispute.

10    Finally, Plaintiffs' argument that it would "bias the jury" for "the Court to

11    repeat … that [Plaintiffs] bear[] the burden" on the elements of their claims should be

12    rejected.  But in a complicated case with affirmative defenses and burden-shifting

13    frameworks at play, reminding the jury which side bears the burden on particular issues

14    is prudent and helpful.

**MASIMO'S PROPOSED INSTRUCTION NO. 41A[92]**

**Overview of Patent Law**

At the beginning of the trial, I gave you some general information about patents. As a reminder, a patent gives the patent holder the right, for a certain period of time, to prevent others from making, using, offering to sell, selling, or importing the patented invention, without the patent holder's permission. In return for these exclusive rights, the patent law imposes upon the inventor a requirement of disclosure, including a full and clear description of the invention and of the manner and process of making and using it.

A patent includes a "specification," which contains a written description of the invention, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." Claims are usually divided into "limitations." For example, a claim that covers a table might recite a tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue would be separate limitations of the claim.

---

[92] **Authority:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § A.1 (2020); Jury Instruction No. 12, *Broadcom Corp. v. Emulex Corp.*, No. SACV 09-1058 (JVS) (C.D. Cal. Oct. 6, 2011); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-481 (1974); Jury Instruction, *United States v. Roberts*, No. 3:08-cr-175 (E.D. Tenn., Dec. 8, 2010) Dkt. Nos. 147 at 111:13-15; *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (quoting *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir. 2009)); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).

**Masimo's Argument: Proposed Instruction No. 41A**

Neither party's proposed instruction closely follows any model instruction. Masimo's proposed instruction provides more than enough information to understand the patent-related issues in this case—inventorship and ownership.

Apple's proposal contains incorrect statements of law and unnecessary information that could only confuse the jury. For example, Apple's proposal states that "information disclosed in a patent is no longer entitled to trade secret protection, because such information is in the public domain." This is not an accurate statement of the law and would contradict this Court's holding that "publication does not mean the subject matter is generally known under CUTSA." *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *15 (C.D. Cal., Nov. 7, 2022).

Apple's instruction also includes unnecessary detail that could only confuse the jury, such as the Patent Office examination procedures. Although Apple asserts that its proposed instruction is "largely" a shortened version of the Federal Circuit Bar Association's model patent overview instruction, combined with instructions this Court has given, those instructions are more appropriate in patent infringement cases and provide a level of background that is not necessary here. There is no reason to burden the jury with extraneous information beyond what they need to evaluate the claims and defenses at issue.

1
2

# APPLE'S PROPOSED INSTRUCTION NO. 41B[93]

## Overview of Patent Law

3
4
5
At the beginning of the trial, I gave you a brief overview of the patent law relevant to this case.  I will now give you more detailed instructions about the patent law that specifically relate to this case.

6
7
8
9
10
11
12
13
14
Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder the right for a certain period of time to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.  In return for these exclusive rights, the patent law imposes upon the inventor a requirement of disclosure, so the PTO publishes patents, including a full and clear description of the invention and of the manner and process of making and using it.  Therefore, information disclosed in a patent is no longer entitled to trade secret protection, because such information is in the public domain.

15
16
17
18
19
20
21
22
To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the federal government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to

23
24
25
26
27
28
---
[93] **Authority:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § A.1 (2020); Jury Instruction No. 12, *Broadcom Corp. v. Emulex Corp.*, No. SACV 09-1058 (C.D. Cal. Oct. 6, 2011) (Selna, J.); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-481 (1974); Jury Instruction, *United States v. Roberts*, No. 3:08-cr-175 (E.D. Tenn., Dec. 8, 2010) Dkt. Nos. 147 at 111:13-15; *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (quoting *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir. 2009)); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).

the public of those boundaries.  Claims are usually divided into components or steps, called "limitations."

For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue are each a separate limitation of the claim.

1

**Apple's Position: Proposed Instruction No. 41B**

2    In order to equip the jury to decide Plaintiffs' inventorship and ownership claims,

3    Apple believes that it is important to describe (1) the process that leads to issuance of a

4    patent and (2) the basic structure of a patent.  Apple's proposed instruction is largely a

5    shortened version of the Federal Circuit Bar Association's model patent overview

6    instruction.  Apple's proposal also draws on a patent law overview instruction that this

7    Court has previously delivered.  *See* Jury Instruction No. 12, *Broadcom Corp. v. Emulex*

8    *Corp.*, No. SACV 8:09-cv-01058 (C.D. Cal. Oct. 12, 2011), Dkt. 888 at 16 (Selna, J.).

9    Apple objects to Plaintiffs' counter-proposal because it is too cursory and strips away

10   important context necessary for the jury to understand Plaintiffs' patent-related claims.

11   While Plaintiffs claim that Apple's proposed instruction contains "incorrect

12   statements" of law, their only specific legal objection is to the statement that

13   "information disclosed in a patent is no longer entitled to trade secret protection, because

14   such information is in the public domain."  It is the "well settled" rule in the Ninth and

15   Federal Circuits that information published in patents and patent applications is

16   generally known.  *See Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (citing

17   *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-1356 (Fed. Cir.

18   2009)).  Indeed, an authority Plaintiffs cite in their own Proposed Instruction No. 41A

19   states that if information were published in a patent, "trade secret protection would be

20   extinguished."  *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal.

21   2012).  And although Plaintiffs rely on this Court's decision in *True Wearables*, the

22   Federal Circuit expressly confirmed on appeal that "information 'disclosed in a patent'

23   is 'generally known to the public' for purposes of the CUTSA."  *Masimo Corp. v. True*

24   *Wearables, Inc.*, No. 8:18-CV-02001-JVS-JDE, 2022 WL 205485, at *3 (Fed. Cir. Jan.

25   24, 2022).

26   Plaintiffs also suggest that it is unnecessary to describe the role of the Patent and

27   Trademark Office.  But Plaintiffs have previously relied on Apple's statements to the

28   PTO in support of their "generally known" arguments, *see* Dkt. 1098 at 14-15 and have

thus directly put the PTO at issue.  In any event, because Plaintiffs' inventorship claims ask the jury to correct statements in patents issued by the PTO, providing a basic overview of the patent issuance process and the PTO's role in it will give the jury necessary context and will prevent juror confusion.

## MASIMO'S PROPOSED INSTRUCTION NO. 42A[94]

### Correction of Inventorship

Masimo and Cercacor contend that one or more of their employees should be named as inventors on the Disputed Patents.  To prove that one of their employees should be added as an inventor to any of the Disputed Patents, Masimo and Cercacor must prove, by clear and convincing evidence, that the person sought to be added:

1.  Contributed to the conception of at least one limitation in at least one claim of one or more Disputed Patent; and

2.  The contribution was not insignificant in quality when measured against the dimension of the full invention.

---

[94] **Authority:**  *Fina Oil & Chem. Co. v. Ewen,* 123 F.3d 1466, 1473 (Fed. Cir. 1997); *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009); *Meng v. Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016) (citing *Acromed Corp. v. Sofamor Danek Grp.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)).

1

### Masimo's Argument: Proposed Instruction No. 42A

2    Neither party closely follows the Federal Circuit Bar Association's inventorship

3    model instruction.  Masimo's proposed instruction recites the two elements of a claim

4    for correction of inventorship directly from Federal Circuit caselaw.  First, Masimo's

5    proposal recites that a person can be an inventor if he or she contributed to the conception

6    of at least one limitation in at least one claim of the patent.  Masimo recognizes that the

7    Federal Circuit Bar Association's model instruction refers to a contribution to the

8    conception of at least one claim, but the Federal Circuit caselaw holds that a contribution

9    to a limitation is a contribution to a claim.  *See* The Federal Circuit has held that, "the

10   law of inventorship does not hinge co-inventor status on whether a person contributed

11   to the conception of all the limitations in any one claim of the patent." *Eli Lilly & Co.*

12   *v. Aradigm Corp.*, 376 F.3d 1352, 1361–62 (Fed. Cir. 2004) ("the law of inventorship

13   does not hinge co-inventor status on whether a person contributed to the conception of

14   all the limitations in any one claim of the patent.").  "Rather, the law requires only that

15   a co-inventor make a contribution to the conception of the subject matter of a claim."

16   *Id.*; *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1462 (Fed. Cir. 1998) (if an

17   omitted inventor conceived of one part of one limitation of a long claim then "he

18   contributed to the subject matter of" the claim and he was properly added as an inventor

19   because the claim "includes the elements that [he] contributed to the invention according

20   to the district court's findings."); *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018),

21   *as amended* (May 7, 2018) (contribution of one limitation in a two-limitation claim

22   sufficient).

23   Second, Masimo's proposal correctly recites that the contribution must be "not

24   insignificant in quality when measured against the dimension of the full invention."  That

25   requirement is taken directly from decades of Federal Circuit case law.  "The case law

26   thus indicates that to be a joint inventor, an individual must make a contribution to the

27   conception of the claimed invention that is ***not insignificant in quality***, when that

28   contribution is measured against the dimension of the full invention." *Fina Oil & Chem.*

*Co. v. Ewen,* 123 F.3d 1466, 1473 (Fed. Cir. 1997) (emphasis added).  The Federal Circuit Bar Association model instruction provides no basis for changing the requirement from "not insignificant" to "significant."

Apple also proposes including various statements regarding the nature of corroboration that are not part of the Federal Circuit Bar Association model instruction.  The Federal Circuit Bar Association does not include model language for evaluating corroboration.  Including instructions regarding corroboration as part of the instruction regarding inventorship would make the instruction too long and confusing for the jury.

If the Court is inclined to include instructions regarding corroboration, the Court should do so in a separate instruction, that explains the broad rule of reason, and includes the following statements:

> "Under the 'rule of reason' standard for corroborating evidence, [you] must consider corroborating evidence in context, make necessary credibility determinations, and assign appropriate probative weight to the evidence to determine whether clear and convincing evidence supports a claim of co-inventorship."

> "Corroborating evidence may take many forms. … Circumstantial evidence about the inventive process may also corroborate. … Additionally, oral testimony of someone other than the alleged inventor may corroborate.

*Ethicon,* 135 F.3d at 1464 & 1461 (internal citations omitted).

> "Such corroborating evidence is taken as a whole; conception of an entire invention need not be reflected in a single source."

> "Evidence need not always expressly show possession of the invention to corroborate conception, and a court may properly weigh evidence that a claimed attribute is merely an obvious property of a greater discovery at issue."

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1298, 1299 (Fed. Cir. 2009).

The Court should also instruct the jury that:

"The inventors need not work physically together or contemporaneously to be joint inventors; nor must each inventor contribute equally or to each claim of the patent."

*Id.* at 1297.

"Rather, each needs to perform only a part of the task which produces the invention."

*Ethicon*, 135 F.3d at 1460.

The Court should further instruct the jury that someone can be a co-inventor even if he "placed his contribution in the prior art more than one year before" making his contribution. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (contrary argument "is mistaken"); *see also Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365, 1372–73 (Fed. Cir. 2020) ("Inventorship of a complex invention may depend on partial contributions to conception over time, and there is no principled reason to discount genuine contributions made by collaborators because portions of that work were published prior to conception for the benefit of the public.").

# APPLE'S PROPOSED INSTRUCTION NO. 42B[95]

## Correction of Inventorship

In this case, Masimo and Cercacor contend that certain of their employees should be listed as joint inventors on five of Apple's patents.  The verdict form specifies for each claim the employees and patents associated with each of Plaintiffs' five claims for correction of inventorship.

To succeed on a correction of inventorship claim, Masimo and Cercacor bear the burden of proving both of the following:

1. the listed employee of Masimo and/or Cercacor contributed to the conception of at least one of the claims of the patent; and
2. the contribution was significant in quality as measured against the scope of the full invention.

Masimo and Cercacor must prove these elements by clear and convincing evidence.  An alleged co-inventor's testimony regarding the facts surrounding his or her alleged contribution cannot, standing alone, rise to the level of clear and convincing proof.  Additional evidence to corroborate that testimony is required, though that

---

[95] **Authority:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § 4.3d (2020); *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008); *Eli Lilly v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004); *Board of Educ. ex rel. Bd. of Trustees of Fla. State Univ. v. Am. Bioscience, Inc.*, 333 F.3d 1330, 1337 (Fed. Cir. 2003) ("Because the issuance of a patent creates a presumption that the named inventors are the true and only inventors, the burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence."); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention."); *see also* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 16 (referencing Federal Circuit Bar Association model instructions for patent-related claims).

evidence may take many forms, including contemporaneous documents, testimony from another witness, or circumstantial evidence about the inventive process.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or approximately at the time of their inventive effort.  Therefore, if Apple independently developed the inventions and technologies disclosed and claimed by a patent without any communication with or contribution from the Masimo and/or Cercacor employees alleged to be joint inventors, then Plaintiffs' employees were not joint inventors.

In deciding whether an alleged co-inventor's contribution was significant in quality, you must measure that contribution against the dimension of the full invention. For instance, if someone only explains to the actual inventors well-known concepts or the current state of the art, then he or she is not a joint inventor.  Similarly, if someone's contribution is too far removed from the real-world realization of the invention, such as by merely suggesting an idea of a result to be accomplished by the invention, then he or she is not an inventor.  Nor is someone an inventor if he or she focused solely on real-world realization of the invention, such as if the assistance was provided after the claim invention was conceived.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some significant contribution to the idea claimed.

**Apple's Position: Proposed Instruction No. 42B**

Apple's proposed instruction for Plaintiffs' inventorship claims is drawn from a Federal Circuit Bar Association model instruction incorporated by the Ninth Circuit's model jury instructions.  *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 16 (referencing Federal Circuit Bar Association model instructions for patent-related claims).

Specifically, Apple's formulation of the two elements of an inventorship claim is derived from the Federal Circuit Bar Association's inventorship model instruction, *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § 4.3d (2020), and it correctly states the requirement that an alleged inventor must make a significant contribution to at least one of the disputed patent's claims.  Plaintiffs' suggestion that Apple has provided "no basis" for using the phrase "significant contribution" rather than "not insignificant" is unfounded—Apple's proposed language comes directly from the model instruction, which in turn relies on Federal Circuit precedent.  Even the lone case that Plaintiffs rely on for the "not insignificant" language uses Apple's phrasing elsewhere in the opinion.  *See Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("[A] joint inventor must contribute in some significant manner to the conception of the invention."); *id.* at 1474 (joint inventor must "at least contribute in some significant way to the ultimate conception").

Apple objects to Plaintiffs' proposed inventorship instruction because it suggests that a contribution to only one limitation in a claim is *necessarily* sufficient to constitute a significant contribution.  None of Plaintiffs' cited authorities create such a bright-line rule.  Rather, in each case, the Federal Circuit concluded that—based on the specific facts presented—the putative co-inventor had made a sufficient contribution (e.g., because the limitation invented was a key part of the overall claim).  *See, e.g.*, *Eli Lilly & Co v. Aradigm Corp.*, 376 F.3d 1352, 1361-1362 (Fed. Cir. 2004) ("If Dr. DiMarchi had in fact conceived of the double-bioavaiability limitation on the method of inhaling lispro," he would be a co-inventor because "the invention … is nothing more than using

lispro in the aerosolizing/inhaling method of claim 5 in a manner that meets the double-bioavailability limitation"). Plaintiffs' suggestion that Apple's language implies that inventorship "requires contribution to conception of an entire claim" is unfounded; Apple's proposal merely states that there must have been a contribution to a claim.

The remaining portions of Apple's instructions state important limitations that the Federal Circuit has established for the inventorship doctrine, including that a plaintiff must provide evidence to corroborate a purported co-inventors' oral testimony, that a purported co-inventor must have been in communication with the listed inventors around the time of the invention, and considerations that must be used in determining whether a particular purported co-inventors' contribution was "significant." Plaintiffs' bare-bones instruction should be rejected because it does not provide these key details—even though most of Apple's proposed language springs directly from Federal Circuit Bar Association's model instruction and/or appears in Plaintiffs' own cited authority. *See, e.g.*, *Ruling Meng v. Ching-Wu Paul Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016) ("[a]n alleged co-inventor's testimony regarding his contribution must be corroborated"); *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) (requiring open line of communication between listed inventor and purported co-inventor). Plaintiffs' own authorities also confirm that "the invention [must have been] conceived" while the alleged co-inventor and the named inventor "were engaged in a collaborative enterprise." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 & n.2 (Fed. Cir. 1998) (noting that "the conception [of the invention] necessarily occurred" when the named inventor met with the putative joint-inventor); *Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365, 1372-1373 (Fed. Cir. 2020) (discussing requirements of a "collaborative enterprise").

Plaintiffs now try to sneak in an additional instruction on the corroboration issue through their argument section, urging the Court to incorporate block quotes from various Federal Circuit decision without actually providing a counter-instruction. This is improper. If Plaintiffs wanted this Court to provide a separate instruction on

corroboration, they were required to propose a cohesive instruction that Apple could assess and, if necessary, object to—not simply refer the Court to a handful of cases that might be relevant.  In any event, none of Plaintiffs' quotations about the corroboration requirement contradicts or supplements Apple's proposed paragraph about what constitutes clear and convincing evidence of inventorship, so the cited cases do not require the Court to change or supplement Apple's proposed instruction.

# JOINTLY PROPOSED INSTRUCTION NO. 43[96]

## Patent Ownership

Masimo and Cercacor also seek a declaration of patent ownership in connection with each of the five Disputed Patents.

The inventor or inventors of a patent are typically the initial owners of that patent. Inventors are permitted to transfer their ownership rights to another person or entity, such as an employer.

To prove that Masimo or Cercacor has an ownership interest in a patent requires proof, by a preponderance of the evidence, that at least one inventor—Marcelo Lamego or someone you have decided by clear and convincing evidence should be added as an inventor—did one or both of the following:

1. Assigned to Masimo or Cercacor his or her interest in the patent; or
2. Made his or her inventive contribution to the patent at a time and under conditions that created an obligation to assign to Masimo or Cercacor his or her rights in such inventions.

---

[96] **Authority:** 13B Fed. Proc. Forms § 52:407.50; 2 CHISUM, *supra* note 72, at § 2.04[7][c][ii][A]; *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248-1249 (Fed. Cir. 1993).

-268-

## JOINTLY PROPOSED INSTRUCTION NO. 44[97]

### Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[97] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.1.

# JOINTLY PROPOSED INSTRUCTION NO. 45[98]

## Consideration of the Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves during the course of your deliberations.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the

---

[98] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.2.

trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [[[and a mistrial could result that would require the entire trial process to start over]]][99].  If any juror is exposed to any outside information, please notify the court immediately.

---

[99] The parties dispute whether to include the bracketed text.  Apple's position is that this phrase from the model instruction is a useful reminder for the jury of the importance of following the rules.  (Apple also objects to Plaintiffs' argument because Plaintiffs failed to provide an explanation for their position prior to the parties' final exchange.)  Masimo's position is that this instruction contains sufficient admonitions that would ensure the jury complies with the rules.  The additional instruction could negatively influence certain jurors.

## JOINTLY PROPOSED INSTRUCTION NO. 46[100]

### Communication With Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

---

[100] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.3.

# MASIMO'S PROPOSED INSTRUCTION NO. 47A[101]

## Return of Verdict

A verdict form has been prepared for you.  [*Explain final verdict form as needed.*] You should follow the instructions in the verdict form as you move through your deliberations.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

---

[101] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.5.

**Masimo's Argument: Proposed Instruction No. 47A**

Both parties proposed instructions based on the Ninth Circuit model.  *See* Ninth Circuit Model Instructions § 3.5.  The model instruction includes an option to "[e]xplain the verdict form as needed."  *See id*.  Masimo's proposal more closely reflects the model language and does not presume how the Court will resolve any disputes regarding the verdict form.  Masimo's proposal will be appropriate if the Court adopt a verdict form that is simple and self-explanatory, such as the one Masimo proposed.  Masimo's proposal would also be appropriate if the Court adopts the long and more complex verdict form that Apple proposed.  Masimo's proposal expressly provides that the Court, in consultation with the parties, will provide any additional explanation necessary to understand the verdict form.

Apple's proposal provides unnecessary information and presumes that the Court will adopt Apple's verdict form that needlessly sets forth the elements of each claim and some—but not all—of the jury instructions.  The jury should apply the law as the Court instructs in the jury instructions, not based on the shortened and incomplete statements in Apple's proposed verdict form.

# APPLE'S PROPOSED INSTRUCTION NO. 47B[102]

## Return of Verdict

A verdict form has been prepared for you.  The verdict form sets forth the elements of each claim and is designed to assist you in your deliberations.  You should follow the instructions in the verdict form as you move through your deliberations.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

---

[102] **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.5.

**Apple's Position: Proposed Instruction No. 47B**

Apple believes it is important for the verdict form to require the jury to consider all essential elements of Plaintiffs' claims, as in Apple's proposed verdict form.  It is appropriate to instruct the jury to use the verdict form as an aid for structuring its deliberations in this complicated case.  Apple objects to Plaintiffs' instruction insofar as it implies that an element-by-element special verdict form is unnecessary.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 28, 2023          By: /s/ Daniel P. Hughes
                                   Daniel P. Hughes

                                   Attorneys for Plaintiffs
                                   MASIMO CORPORATION and
                                   CERCACOR LABORATORIES, INC.


                                   WILMER CUTLER PICKERING HALE AND DORR, LLP

Dated: March 28, 2023          By: /s/ Mark D. Selwyn
                                   Mark D. Selwyn

                                   Attorneys for Defendant
                                   APPLE INC.


## FILER'S ATTESTATION

Pursuant to Local Rule 5-4.3.4 regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all signatories above.

Dated: March 28, 2023          By: /s/ Daniel P. Hughes

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX A

# Masimo's Redlines to Model Instructions

*1*
*2*
*3*
*4*
*5*
*6*
*7*
*8*
*9*
*10*
*11*
*12*
*13*
*14*
*15*
*16*
*17*
*18*
*19*
*20*
*21*
*22*
*23*
*24*
*25*
*26*
*27*
*28*

# TABLE OF CONTENTS

MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 2A...............................1

MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 3A...............................3

MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A...............................4

MASIMO'S PROPOSED INSTRUCTION NO. 1A ...........................................5

JOINTLY PROPOSED INSTRUCTION NO. 3..............................................7

JOINTLY PROPOSED INSTRUCTION NO. 4..............................................8

JOINTLY PROPOSED INSTRUCTION NO. 5..............................................10

MASIMO'S PROPOSED INSTRUCTION NO. 6A..........................................11

JOINTLY PROPOSED INSTRUCTION NO. 7..............................................12

JOINTLY PROPOSED INSTRUCTION NO. 8..............................................13

JOINTLY PROPOSED INSTRUCTION NO. 9..............................................14

MASIMO'S PROPOSED INSTRUCTION NO. 10A ........................................15

JOINTLY PROPOSED INSTRUCTION NO. 12............................................16

JOINTLY PROPOSED INSTRUCTION NO. 13............................................18

MASIMO'S PROPOSED INSTRUCTION NO. 14A ........................................19

MASIMO'S PROPOSED INSTRUCTION NO. 15A ........................................20

JOINTLY PROPOSED INSTRUCTION NO. 20............................................21

MASIMO'S PROPOSED INSTRUCTION NO. 24A ........................................23

MASIMO'S PROPOSED INSTRUCTION NO. 25 .........................................24

MASIMO'S PROPOSED INSTRUCTION NO. 26A ........................................25

MASIMO'S PROPOSED INSTRUCTION NO. 28A ........................................27

MASIMO'S PROPOSED INSTRUCTION NO. 29A ........................................29

MASIMO'S PROPOSED INSTRUCTION NO. 31 .........................................30

MASIMO'S PROPOSED INSTRUCTION NO. 34A ........................................31

MASIMO'S PROPOSED INSTRUCTION NO. 37A ........................................32

MASIMO'S PROPOSED INSTRUCTION NO. 38 .........................................33

MASIMO'S PROPOSED INSTRUCTION NO. 39A ...........................................34

MASIMO'S PROPOSED INSTRUCTION NO. 40A ...........................................35

JOINTLY PROPOSED INSTRUCTION NO. 44 ................................................36

JOINTLY PROPOSED INSTRUCTION NO. 45 ................................................37

JOINTLY PROPOSED INSTRUCTION NO. 46 ................................................39

MASIMO'S PROPOSED INSTRUCTION NO. 47A ...........................................40

**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 2A**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

~~This case involves plaintiff Kelly Buffington's claims against defendants, Nestle USA, Inc. and Gerber Products Company.~~The Plaintiffs in this case are Masimo Corporation and Cercacor Laboratories, Inc.  The Defendant is Apple Inc.  Masimo and Cercacor assert claims for trade secret misappropriation, correction of inventorship on patents, and ownership of patents.

~~Kelly Buffington alleges claims for sex/pregnancy discrimination, disability discrimination, discrimination by association based on her daughter's disability, failure to prevent discrimination, retaliation, CFRA interference, and wrongful termination in violation of public policy against both Nestle USA, Inc. and Gerber Products Company. Plaintiff alleges that she was employed by both Nestle USA, Inc. and Gerber Products Company. Plaintiff alleges that she has suffered nonmonetary damages.~~Masimo and Cercacor assert that Apple hired former Masimo and Cercacor employees and improperly obtained Masimo and Cercacor's Asserted Trade Secrets from them. Specifically, Masimo and Cercacor assert that Apple misappropriated the Asserted Trade Secrets through two former employees that Apple recruited, Marcelo Lamego and Michael O'Reilly.  Masimo and Cercacor assert that Apple used the Asserted Trade Secrets to develop products, market products, and obtain patents.

The Asserted Trade Secrets and patents relate generally to ███████████ ███████████████████████████████████████████████████████████ █████████████████████ ██ ████████████████████████████ ████████    The Asserted Trade Secrets also relate to business and marketing strategies for ████████████████████████████████████████████████ ███████████████████████████████████

Masimo and Cercacor assert that Apple filed patent applications on subject matter that Marcelo Lamego obtained from Masimo and Cercacor employees during his

employment at those companies.  Masimo and Cercacor assert that their employees who disclosed this subject matter to Lamego should be added as named inventors to the patent applications that Apple filed.

Masimo and Cercacor assert that their employees who disclosed the patented subject matter to Marcelo Lamego, and Marcelo Lamego himself, contributed to the claimed inventions while under an obligation to assign patent rights to Masimo and/or Cercacor.

Masimo and Cercacor have the burden of proof on these claims.

~~Defendants deny all of plaintiff's allegations. Defendant Nestle USA, Inc. denies that it ever employed Plaintiff. Both Defendants deny that they engaged in any discrimination or any other unlawful act and deny plaintiff's allegations that her employment was improperly terminated. Defendants also deny that either one caused plaintiff damages, and contest the amount of damages plaintiff is claiming.~~Apple denies all of Plaintiffs' claims.  Apple contends the alleged trade secrets are not trade secrets under California law.  Apple contends it did not misappropriate any of this information, and instead independently discovered the information.  Apple also disputes Masimo and Cercacor's theories of harm, lost profits, and unjust enrichment.

Apple also asserts a defense to the claim for misappropriation of trade secrets.  Apple contends that Masimo and Cercacor waited too long to file this lawsuit.  Apple has the burden of proof on this defense.

Apple contends that no Masimo or Cercacor employees are inventors of the disputed patents, and that neither Masimo nor Cercacor is a joint owner of those patents, because Apple employees invented the subject matter claimed in the disputed patents.

**Model:**  Judge Selna's Exemplar Initial Jury Instructions No. 2

## MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 3A

This action involves allegations that certain materials are subject to protection as trade secrets.  To protect this information from public disclosure, the court has ~~[describe protections]~~taken certain precautions to prevent public access to the information, for example by removing members of the public from the courtroom and sealing the courtroom.  ~~The jury is~~You are reminded that ~~[the party asserting the trade secret]~~Masimo and Cercacor bear~~s~~ the burden of proving all elements of ~~its~~ their claim for misappropriation of trade secrets, as ~~explained~~ in instruction number [*insert*].  When evaluating whether ~~[the party asserting the trade secret]~~ Masimo and Cercacor ~~has~~ have satisfied ~~this~~ their burden, ~~the jury is~~you are not permitted to take into account, or consider in any way, the fact that the ~~court~~ Court took such precautions~~[describe protections]~~.

**Model:**  Guideline No. 8, *The Sedona Conference Commentary on Protecting Trade Secrets in Litigation About Them* at 20 (Mar. 2022), https://tinyurl.com/mvx8m4kn

### MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

You will each be provided with a juror notebook for your individual use. The notebook includes descriptions of the Asserted Trade Secrets that Masimo and Cercacor claim Apple misappropriated. The law requires a trade secret plaintiff to provide a written description of the trade secrets being asserted during the litigation so that the defendant knows what it is accused of misappropriating. Those descriptions appear in your juror notebook.

The juror notebook will also include a list of the patents at issue.

Over the course of the trial, the parties will provide for you pictures of the witnesses before they testify whether live or by video. You may place these pictures in your juror notebook.

You may take notes in this book as well. When you leave, your notebook should be left in the courtroom. No one will read your notebook. You will be required to return the notebook at the end of the case. It will be destroyed at the conclusion of the case.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 12

-4-

## MASIMO'S PROPOSED INSTRUCTION NO. 1A

Members of the ~~Jury: Now~~jury, now that you have heard all ~~of~~ the evidence ~~[and the arguments of the attorneys]~~,, it is my duty to instruct you on the law that applies to this case.

~~[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]~~

*~~or~~*

~~[~~ A copy of these instructions will be sent to the jury room for you to consult during your deliberations.~~]~~

It is your duty to ~~find the facts from~~weigh and to evaluate all the evidence received in the case. ~~To those facts you will~~ and, in that process, to decide the facts.  It is also your duty to apply the law as I give it to you. ~~You must follow~~ to the ~~law~~facts as ~~I give it to~~you find them, whether you agree with ~~it~~the law or not. ~~And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must~~ You must decide the case solely on the evidence ~~before you.~~and the law.  Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you.  You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.

Please do not read into these instructions, or into anything ~~that~~ I may ~~say or do or~~ have said or done ~~that I have an opinion regarding the evidence or~~, any suggestion as to what ~~your~~verdict you should ~~be.~~return – that is a matter entirely up to you.

**Model:**   Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4

## JOINTLY PROPOSED INSTRUCTION NO. 3

When a party has the burden of proving any claim [or ~~affirmative~~ defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or ~~affirmative~~ defense] is more probably true than not true.

~~You should base your decision on all~~ A party's burden of proof is by a preponderance of the evidence, ~~regardless of which party presented it.~~ unless I instruct you otherwise.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all the evidence, regardless of which party presented it.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.6, 1.7

-7-

## JOINTLY PROPOSED INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed, which were read to you and placed into evidence; and

4.  any facts that I [may instruct] [have instructed] you to accept as proved.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Some evidence may be have been admitted only for a limited purpose.

When I instruct instructed you that an item of evidence has been was admitted only for a limited purpose, you must may consider it only for that limited purpose and not for any other purpose.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.9, 1.11, 1.12.

1    [The testimony [you are about to hear] [you have just heard] may be considered

2    only for the limited purpose of [*describe purpose*] and not for any other purpose.]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JOINTLY PROPOSED INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.– I will list them for you:-

1. (1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they ~~[may say]~~ [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of ~~them~~the evidence controls.-

2. (2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.-

3. (3)    Testimony that ~~is~~has been excluded or stricken, or that you ~~[are]~~ [have been] instructed to disregard, is not evidence and must not be considered.– In addition, some evidence ~~[may be] [was]~~have been received only for a limited purpose; when I ~~[instruct] [~~have instructed~~]~~ you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.-

4. (4)    Anything you may ~~[see or hear] [~~have seen or heard~~]~~ when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.-

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.10

-10-

### MASIMO'S PROPOSED INSTRUCTION NO. 6A

This action involves allegations that certain ~~materials are~~ information is subject to protection as trade secrets. To protect this information from public disclosure, the ~~court~~Court has ~~[describe protections]. The jury is~~ taken certain precautions to prevent public access to the information, for example by removing members of the public from the courtroom and sealing the courtroom. You are reminded that ~~[the party asserting the trade secret] bears~~Masimo and Cercacor bear the burden of proving all elements of ~~its~~their claim for misappropriation of trade secrets, as ~~explained~~ in instruction number [*insert*]. When evaluating whether ~~[the party asserting the trade secret] has~~Masimo and Cercacor have satisfied this burden, ~~the jury is~~you are not permitted to take into account, or consider in any way, the fact that the ~~court [describe protections].~~

Court took such precautions.

**Model:** Guideline No. 8, *The Sedona Conference Commentary on Protecting Trade Secrets in Litigation About Them* at 20 (Mar. 2022), https://tinyurl.com/mvx8m4kn

**JOINTLY PROPOSED INSTRUCTION NO. 7**

~~If you wish, you~~ You may ~~take~~have taken notes during the trial to help you remember the evidence. ~~If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.~~

Whether or not you ~~take~~took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

When you leave, your notes should be left in the jury room. No one will read your notes.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.18

**JOINTLY PROPOSED INSTRUCTION NO. 8**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  When~~If~~ I overrul~~ed~~ the objection, the question may have been answered, or the exhibit received.  ~~If~~ When I sustain~~ed~~ the objection, the question was ~~can~~not ~~be~~ answered, and the exhibit was ~~can~~not ~~be~~ received.  Whenever I sustain~~ed~~ an objection to a question, you must ignore the question and must not guess what the answer might have been.

~~Sometimes~~ I may have order~~ed~~ that some evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.13

## JOINTLY PROPOSED INSTRUCTION NO. 9

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and the lawyers for each party may ask questions. The questions and answers are recorded. [When You should not speculate about the reason why a person is unavailable to testify at trial, theparticular witness testified by deposition of that person may be used at the trial.]

        The deposition of [*name of witness*] was taken on [*date*].rather than in court.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]


**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.4

-14-

## MASIMO'S PROPOSED INSTRUCTION NO. 10A

Certain charts ~~and~~, summaries ~~not admitted into evidence [may be] [~~, and other demonstratives have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. ~~Charts~~ Some charts and summaries have been admitted into evidence.  Others have been shown to you only as demonstratives.

Whether admitted as evidence, or used to illustrate information brought out in the trial, charts and summaries are only as good as the underlying evidence that supports them.

You should, therefore, give them only such weight as you think the underlying evidence deserves.~~-~~  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 2.14, 2.15

# JOINTLY PROPOSED INSTRUCTION NO. 12

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. (1) the opportunity and ability of the witness to see or hear or know the things testified to;

2. (2) the witness's memory;

3. (3) the witness's manner while testifying;

4. (4) the witness's interest in the outcome of the case, if any;

5. (5) the witness's bias or prejudice, if any;

6. (6) whether other evidence contradicted the witness's testimony;

7. (7) the reasonableness of the witness's testimony in light of all the evidence; and

8. (8) any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.– What is important is how believable the witnesses were, and how much weight you think their testimony deserves.-

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.14

### JOINTLY PROPOSED INSTRUCTION NO. 13

You [have heard] [are about to hear] testimony from [*name*]*list of experts who testified*] [will testify]who testified to opinions and the reasons for [his] [her]those opinions. This opinion testimony is allowed, because of the education or experience of this witness.these witnesses.

Such opinion testimony should be judged just like any other testimony. You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13

## MASIMO'S PROPOSED INSTRUCTION NO. 14A

### (Offered in the Alternative)

~~You may consider the ability of each party to provide evidence.~~ If a party provided weaker evidence when it <u>actually possessed and</u> could have provided stronger evidence, you may distrust the weaker evidence.

**Model:**  CACI No. 203.

# MASIMO'S PROPOSED INSTRUCTION NO. 15A

~~[Name of plaintiff] claims that [he/she/nonbinary pronoun/it] [is/was] the~~
~~[owner/licensee] of [insert general description of alleged trade secret[s]].~~

~~[Name of plaintiff] claims~~ Masimo and Cercacor claim that they possessed the Asserted Trade Secrets listed in your Juror Notebooks.

Masimo and Cercacor claim that ~~[this/~~these~~] [select short term to describe, e.g., information] [is/~~ Asserted Trade Secrets ~~are] [a] trade secret[s]~~ protectable and that ~~[name of defendant]~~ Apple misappropriated ~~[it/~~them~~].~~.  "Misappropriation" means the improper ~~[~~ acquisition~~,~~ use~~[, or]~~ disclosure~~]~~ of ~~the~~ trade ~~secret[s].~~secrets.

~~[Name of plaintiff]~~Masimo and Cercacor also ~~claims~~claim that ~~[name of defendant]'s~~Apple's misappropriation ~~~~caused ~~[[him/her/nonbinary pronoun/it]~~them harm~~/ [or] [name of defendant] to~~ and caused Apple to be unjustly enriched~~].~~.

~~[Name of defendant] denies [insert denial of any of the above claims].~~
~~[[Name of defendant] also claims [insert affirmative defenses].]~~

Apple denies the trade secret misappropriation claims.  Apple contends that the information is not protectable as trade secrets and that Apple did not misappropriate this information.  Apple further contends that Masimo and Cercacor were not harmed and that Apple was not unjustly enriched.

**Model:**  CACI No. 4400

**JOINTLY PROPOSED INSTRUCTION NO. 20**

To establish that the ~~[select short term to describe, e.g., information]~~ ~~[is/[[[ATS]]]]~~[1] are~~]~~ ~~[a] trade secret[s], [name of plaintiff]~~ protectable Masimo and Cercacor must prove that ~~[he/she/nonbinary pronoun/it]~~they made reasonable efforts under the circumstances to ~~keep it secret.~~maintain the secrecy of the [[[ATS]]]. "Reasonable efforts" are the efforts that would be made by a reasonable ~~[person/~~business] in the same situation and having the same knowledge and resources as ~~[name of plaintiff],~~Masimo and Cercacor, exercising due care to protect important information of the same kind.~~ [This requirement applies separately to each item that [name of plaintiff] claims to be a trade secret.]~~ and value.

In determining whether ~~or not [name of plaintiff]~~Masimo and Cercacor made reasonable efforts to ~~keep the [e.g., information] secret~~maintain secrecy, you should consider all ~~of~~the facts and circumstances. Among the factors you may consider are the following:

1. ~~[a.~~ Whether documents or computer files containing the ~~[e.g., information]~~[[[ATS]]]] were marked with confidentiality warnings~~;];~~

2. ~~[b.~~ Whether ~~[name of plaintiff]~~Masimo and Cercacor instructed ~~[his/her/nonbinary pronoun/its]~~their employees to treat the ~~[e.g., information]~~[[[ATS]]]] as confidential~~;];~~

3. ~~[c.~~ Whether ~~[name of plaintiff]~~Masimo and Cercacor restricted access to the ~~[e.g., information]~~[[[ATS]]]] to persons who had a business reason to know the information~~;];~~

4. ~~[d.~~ Whether ~~[name of plaintiff]~~Masimo and Cercacor kept the ~~[e.g., information]~~[[[ATS]]]] in a restricted or secured area~~;];~~

---

[1] The parties dispute whether the jury instructions should use the phrase "Asserted Trade Secrets," which is preferred by Plaintiffs, or "alleged trade secrets," which is preferred by Apple. The parties jointly submit this proposed instruction using the symbol [[[ATS]]] as a placeholder for whichever terminology the Court selects.

-21-

5. ~~[e.~~ Whether ~~[name of plaintiff]~~Masimo and Cercacor required employees or others with access to the ~~[e.g., information]~~[[[ATS]]]] to sign confidentiality or nondisclosure agreements~~;]~~;

6. ~~[f.~~ Whether ~~[name of plaintiff]~~Masimo and Cercacor took any action to protect the specific ~~[e.g., information]~~[[[ATS]]]], or whether it relied on general measures taken to protect its business information or assets~~;]~~;

7. ~~[g.~~ The extent to which any general measures taken by ~~[name of plaintiff]~~Masimo and Cercacor would prevent the unauthorized disclosure of the ~~[e.g., information];~~[[[ATS]]]]; or

8. ~~[h.~~ Whether there were other reasonable measures available to ~~[name of plaintiff] that [he/she/nonbinary pronoun/it]~~Masimo and Cercacor that they did not take~~;]~~.

~~[i. Specify other factor(s).]~~

The presence or absence of any one or more of these factors is not necessarily determinative.

[[[Apple's efforts to maintain the secrecy of information it considers confidential are irrelevant to this determination.]]]

**Model:** CACI No. 4404.

## MASIMO'S PROPOSED INSTRUCTION NO. 24A

An employer~~/A principal]~~ is responsible for harm caused by the wrongful conduct of ~~[his/her/nonbinary pronoun/~~its] ~~[~~ employees~~/agents]~~ while acting within the scope of their ~~[~~employment~~/authority].~~.

~~[Name of plaintiff] must prove that [name of agent] was acting within the scope of [his/her/nonbinary pronoun] [employment/authorization] when [name of plaintiff] was harmed.~~

Conduct is within the scope of ~~[~~employment~~/authorization]~~ if:

~~(a)~~.__It is reasonably related to the kinds of tasks that the ~~[~~employee~~/agent]~~ was employed to ~~perform~~performed; or

~~(b)~~.__It is reasonably foreseeable in light of the employer's business or the ~~[agent's/~~employee's job~~]~~ responsibilities.

**Model:**  CACI Nos. 3700, 3720

-23-

# MASIMO'S PROPOSED INSTRUCTION NO. 25

~~[Name of defendant]~~Apple misappropriated ~~[name of plaintiff]'s trade secret[s]~~Asserted Trade Secret by acquisition if ~~[name of defendant]~~Apple acquired the ~~trade secret[s]~~Asserted Trade Secret and knew or had reason to know that ~~[he/she/nonbinary pronoun/it/[name of third party]]~~Apple used improper means to acquire ~~[it~~/them].

.

**Model:** CACI No. 4405

**MASIMO'S PROPOSED INSTRUCTION NO. 26A**

~~[Name of defendant]~~Apple misappropriated ~~[name of plaintiff]'s~~a Masimo and Cercacor trade secret~~[s]~~ by use if ~~[name of defendant]~~Apple:

1. ~~1. used~~ [Used it~~/them~~ without ~~[name of plaintiff]'s~~Masimo and Cercacor's consent; and

2. ~~2. [did~~Did any of the following:~~]~~:

~~2. [insert one or more of the following:]~~

   ~~2. [acquired~~a.     Acquired knowledge of the ~~trade secret[s]~~Asserted Trade Secrets by improper means~~][./;~~ or]

   ~~2. [at~~b.     At the time of use, knew or had reason to know that ~~[his/her/nonbinary pronoun/its] knowledge of [name of plaintiff]'s trade secret[s] came from or through [name of third party], and that [name of third party] had previously acquired the trade secret[s] by improper means][./; or]~~Apple's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

   ~~2. [at~~c.     At the time of use, knew or had reason to know that ~~[his/her/nonbinary pronoun/its]~~Apple's knowledge of ~~[name of plaintiff]'s~~the trade secret~~[s]~~ was ~~acquired under circumstances creating a legal obligation to limit use of the [select short term to describe, e.g., information]][./; or]~~

   ~~2. [at the time of use, knew or had reason to know that [his/her/nonbinary pronoun/its] knowledge of [name of plaintiff]'s trade secret[s]~~ came~~derived~~ from or through ~~[name of third party], and that [name of third party] had~~a person who owed a duty to ~~[name of plaintiff] to~~ Masimo or Cercacor to maintain its secrecy or limit ~~use of the [e.g., information]][./; or]~~

2. ~~[before a material change of [his/her/nonbinary pronoun/~~its~~]~~ ~~position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]~~ use.

**Model:**  CACI No. 4407

**MASIMO'S PROPOSED INSTRUCTION NO. 28A**

[Name of defendant]Apple misappropriated [name of plaintiff]'s trade secret[s]

an Asserted Trade Secret by disclosure if [name of defendant]Apple:

    1.  1. disclosed [Disclosed it/them] without [name of plaintiff]'sMasimo or Cercacor's consent; and

    2.  2. [didDid any of the following:].

2. [insert one or more of the following:]

        2. [acquireda.    Acquired knowledge of the trade secret[s]Asserted Trade Secrets by improper means][./;; or]

        2. [atb.    At the time of disclosure, knew or had reason to know that [his/her/nonbinary pronoun/its]Apple's knowledge of [name of plaintiff]'s trade secret[s] came from or through [name of third party], and that [name of third party] had previously acquired the trade secret[s] by improper means][./; or]the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

2. [atc. At the time of disclosure, knew or had reason to know that [his/her/nonbinary pronoun/its]Apple's knowledge of [name of plaintiff]'sthe trade secret[s] was acquired [insert circumstances giving rise to duty to maintain secrecy], which createdderived from or through a person who owed a duty to keep the [select short termMasimo or Cercacor to describe, e.g., information] secret][./; or]

2. [at the time of disclosure, knew or had reason to know that [his/her/nonbinary pronoun/maintain its] knowledge of [name of plaintiff]'s trade secret[s] came from secrecy or through [name of third party], and that [name of third party] had a duty to [name of plaintiff] to keep the [e.g., information] secret][./; or]

2. [before a material change of [his/her/nonbinary pronoun/limit its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]

-27-

1          use.

2

3

4     **Model:**  CACI No. 4406

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MASIMO'S PROPOSED INSTRUCTION NO. 29A

Improper means of acquiring a trade secret or knowledge of a trade secret include~~,~~ ~~but are not limited to, [__~~theft~~/,~~__bribery~~/,~~__misrepresentation~~/, or__~~breach or ~~inducing~~inducement of a breach of a duty to maintain secrecy~~/ [or] wiretapping, electronic eavesdropping, [or] [insert other means of espionage]]~~.

~~[However, it~~.  Independent derivation alone is not considered improper ~~to acquire a trade secret or knowledge of the trade secret by [any of the following]:~~means.

~~[1. Independent efforts to invent or discover the information;]~~

~~[2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;]~~

~~[3. Obtaining the information as a result of a license agreement with the owner of the information;]~~

~~[4. Observing the information in public use or on public display;]~~

~~[or]~~

~~[5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.]]~~

**Model:**  CACI No. 4408

-29-

**MASIMO'S PROPOSED INSTRUCTION NO. 31**

[A/An] [agent/stockbroker/real estate agent/real estate broker/corporate officer/partner/[insert other fiduciary relationship]] owes Another type of duty is what is known as a fiduciary duty. A corporate officer owes a fiduciary duty to [his/her/nonbinary pronoun/its] [principal/client/the corporation/partner/[insert other fiduciary relationship]]. A fiduciary duty imposes on [a/an] [agent/stockbroker/real estate agent/real estate broker/corporate officer/partner/[insert other fiduciary relationship]] a duty to act with the utmost good faith in the best interests of [his/her/nonbinary pronoun/its] [principal/client/the corporation/ partner/[insert other fiduciary relationship]].

. A corporate officer's fiduciary duty to protect confidential information continues even after leaving the corporation.

**Model:**  CACI No. 4100

-30-

## MASIMO'S PROPOSED INSTRUCTION NO. 34A

[Name of defendant]Apple claims that [name of plaintiff]'sMasimo and Cercacor's lawsuit was not filed within the time set by law. To succeed on this defense, [name of defendant]Apple must prove that the claimed misappropriation of [name of plaintiff]'sa trade secretssecret occurred before [insert date three years before date of filing].January 9, 2017.

However, the lawsuit was still filed on time if [name of plaintiff] proves that before [insert date three years before date of filing], [he/she/nonbinary pronoun/it] did not discover, nor with reasonable diligence should have discovered, facts that would have caused a reasonable person to suspect that [name of defendant] had misappropriated [name of plaintiff]'s [select short term to describe, e.g., information].

If Apple succeeds on that portion of the defense, Masimo and Cercacor must prove that they did not know or have reason to know of the misappropriation of trade secrets before January 9, 2017.

Masimo and Cercacor had reason to know of the misappropriation of trade secrets if they:

(a)    Had reason to suspect that Apple had already misappropriated the alleged trade secrets; and

(b)    A reasonable investigation would produce facts sufficient to confirm that suspicion and justify bringing a lawsuit.

A mere suspicion that trade secrets could have been misappropriated does not show Masimo and Cercacor knew or had reason to know of the misappropriation of trade secrets.

**Model:**  CACI No. 4421

-31-

## MASIMO'S PROPOSED INSTRUCTION NO. 37A

If [name of plaintiff] provesMasimo and Cercacor prove that [name of defendant]Apple misappropriated [his/her/nonbinary pronoun/its] trade secret[s], then [name of plaintiff] is entitled to recover damages ifone or more of the Asserted Trade Secrets, and prove that the misappropriation caused [[name of plaintiff]Masimo or Cercacor to suffer an actual loss /[or] [name of defendant] Apple to be unjustly enriched].

[If [name of defendant]'s misappropriation did not cause [[name of plaintiff] to suffer an actual loss/ [or] [name of defendant] to be unjustly enriched], [name of plaintiff] may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited. However, I will calculate the amount of any royalty.], then Masimo and Cercacor are entitled to recover monetary compensation.

**Model:**  CACI No. 4409

-32-

## MASIMO'S PROPOSED INSTRUCTION NO. 38

Masimo contends that Apple's misappropriation caused it to suffer actual harm in the form of lost profits.  Masimo contends that, but for Apple's misappropriation, Apple would have purchased sensor modules from Masimo to be used in Apple Watches Series 4 and higher.  Masimo seeks to recover the profits it would have made by selling those sensor modules to Apple.

To recover damages for lost profits, [name of plaintiff]Masimo and Cercacor must prove it is reasonably certain [he/she/nonbinary pronoun/it]they would have earned profits but for [name of defendant]'s conductApple's trade secret misappropriation.

To decide the amount of damages for lost profits, you must determine the gross amount [name of plaintiff]Masimo and Cercacor would have received but for [name of defendant]'s conduct and then subtract from that Apple's misappropriation. You may calculate this amount the expenses [including the value ofby multiplying Masimo's gross profit per sensor module and the [specify categories of evidence, such as labor/materials/rents/all expenses/interest of the capital employed]] [name of plaintiff] would have had if [name of defendant]'s conduct had not occurrednumber of sensor modules Masimo would have sold absent Apple's misappropriation.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**Model:**  CACI No. 3903N

-33-

## MASIMO'S PROPOSED INSTRUCTION NO. 39A

[Name of defendant]Apple was unjustly enriched if [his/her/nonbinary pronoun/its] misappropriation of [name of plaintiff]'sone or more Masimo and Cercacor trade secret[s]secrets caused [name of defendant]Apple to receive a benefit that [he/she/nonbinary pronoun/it]Apple otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of [name of defendant]'s benefit that would not have been achieved except for [his/her/nonbinary pronoun/its] misappropriation. Then subtract from that amount [name of defendant]'s reasonable expenses[, including the value of the [specify categories of expenses in evidence, such as labor, materials, rents, interest on invested capital]]. [In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for [name of plaintiff]'s actual loss.]

In order to prove the amount by which Apple was unjustly enriched, Masimo and Cercacor have the burden to prove the amount of revenue Apple received from selling products that benefitted from Apple's misappropriation.  Once Masimo and Cercacor satisfy that burden, Apple then has the burden of establishing any portion of its revenue not attributable to its misappropriation.

When you determine Apple's unjust enrichment, you must consider any lost profits award to Masimo.  If you awarded Masimo profits for a sensor module that Masimo would have sold to be used in a particular Apple Watch, you should not include that watch when calculating Apple's unjust enrichment.

**Model:**  CACI No. 4410

-34-

**MASIMO'S PROPOSED INSTRUCTION NO. 40A**

If you decide that ~~[name of defendant]'s~~Apple's misappropriation caused ~~[name of plaintiff]~~ Masimo and Cercacor harm~~,~~ you must decide whether ~~that~~Apple's conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the <u>harmful</u> conduct ~~that harmed [name of plaintiff]~~, and to discourage similar conduct in the future.

~~In order to~~To recover punitive damages, ~~[name of plaintiff]~~Masimo and Cercacor must prove ~~[by clear and convincing evidence] that [name of defendant]~~that Apple acted willfully and maliciously. <u> </u>You must determine whether ~~[name of defendant]~~Apple acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. <u> </u>I will calculate the amount later.

"Willfully" means that ~~[name of defendant]~~Apple acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that ~~[name of defendant]~~Apple acted with an intent to cause injury, or that ~~[name of defendant]'s~~Apple's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.

~~[Name of defendant]~~Apple ~~ ~~acted with knowing disregard if ~~ [he/she/nonbinary pronoun/~~it] was aware of the probable consequences of ~~[his/her/nonbinary pronoun/~~its] conduct and deliberately failed to avoid those consequences.

**Model:**  CACI No. 4411

-35-

# JOINTLY PROPOSED INSTRUCTION NO. 44

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.1

**JOINTLY PROPOSED INSTRUCTION NO. 45**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves during the course of your deliberations. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have

-37-

been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.2

**JOINTLY PROPOSED INSTRUCTION NO. 46**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [bailiff],[clerk] , signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.3

**MASIMO'S PROPOSED INSTRUCTION NO. 47A**

A verdict form has been prepared for you.  [*Explain final verdict form as needed.*]
You should follow the instructions in the verdict form as you move through your
deliberations.   After you have reached unanimous agreement on a verdict, your
[presiding juror] [foreperson] should complete the verdict form according to your
deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return
to the courtroom.

**Model:**  Manual of Model Civil Jury Instructions for the District Courts of the Ninth
Circuit § 3.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX B

# Apple's Redlines to Model Instructions

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

APPLE'S PROPOSED INITIAL INSTRUCTION NO. 1 ........................................1

APPLE'S PROPOSED INITIAL INSTRUCTION NO. 2B ....................................2

APPLE'S PROPOSED INITIAL INSTRUCTION NO. 3B ....................................4

APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B ....................................5

APPLE'S PROPOSED INITIAL INSTRUCTION NO. 5B ....................................7

APPLE'S PROPOSED INSTRUCTION NO. 1B...................................................11

APPLE'S PROPOSED INSTRUCTION NO. 2B...................................................12

APPLE'S PROPOSED INSTRUCTION NO. 6B...................................................14

APPLE'S PROPOSED INSTRUCTION NO. 10B.................................................15

APPLE'S PROPOSED INSTRUCTION NO. 11...................................................16

APPLE'S PROPOSED INSTRUCTION NO. 14B.................................................17

APPLE'S PROPOSED INSTRUCTION NO. 15B.................................................18

APPLE'S PROPOSED INSTRUCTION NO. 16B.................................................19

APPLE'S PROPOSED INSTRUCTION NO. 18B.................................................20

APPLE'S PROPOSED INSTRUCTION NO. 19B.................................................21

APPLE'S PROPOSED INSTRUCTION NO. 21B.................................................22

APPLE'S PROPOSED INSTRUCTION NO. 24B.................................................23

APPLE'S PROPOSED INSTRUCTION NO. 26B.................................................24

APPLE'S PROPOSED INSTRUCTION NO. 28B.................................................26

APPLE'S PROPOSED INSTRUCTION NO. 29B.................................................27

APPLE'S PROPOSED INSTRUCTION NO. 31B.................................................28

APPLE'S PROPOSED INSTRUCTION NO. 33B.................................................30

APPLE'S PROPOSED INSTRUCTION NO. 34B.................................................31

APPLE'S PROPOSED INSTRUCTION NO. 35B.................................................32

APPLE'S PROPOSED INSTRUCTION NO. 36...................................................33

APPLE'S PROPOSED INSTRUCTION NO. 37B.................................................34

APPLE'S PROPOSED INSTRUCTION NO. 39B ...................................................36

APPLE'S PROPOSED INSTRUCTION NO. 40B ...................................................37

APPLE'S PROPOSED INSTRUCTION NO. 41B ...................................................38

APPLE'S PROPOSED INSTRUCTION NO. 42B ...................................................41

APPLE'S PROPOSED INSTRUCTION NO. 47B ...................................................43

1    **APPLE'S PROPOSED INITIAL INSTRUCTION NO. 1**

2         Members of the jury: You are now the jury in this case.  It is my duty to instruct

3    you on the law.

4         These instructions are preliminary instructions to help you understand the

5    principles that apply to civil trials and to help you understand the evidence as you listen

6    to it.  At the end of the trial, I will give you a final set of instructions.  It is the final set

7    of instructions that will govern your deliberations.

8         It is your duty to find the facts from all the evidence in the case.  To those facts

9    you will apply the law as I give it to you.  You must follow the law as I give it to you

10   whether you agree with it the law or not.  And you must not be influenced by any personal

11   likes or dislikes, opinions, prejudices, or sympathy.  In reaching a verdict, Nor may you

12   may not consider the overall wealth or poverty size of any party.  The parties' wealth or

13   poverty, because that is not relevant to any of the issues that you must decide.  That

14   means that you must decide the case solely on the evidence before you.  You will recall

15   that you took an oath to do so.

16        Please do not read into these instructions, or anything I may say or do, that I have

17   an opinion regarding the evidence or what your verdict should be.

18

19   **Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth

20   Circuit § 1.3; Judge Selna's Exemplar Initial Jury Instructions No. 1; CACI 117.

21

22

23

24

25

26

27

28

-1-

**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 2B**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiffs in this case are Masimo Corporation and Cercacor Laboratories, Inc.  The Defendant is Apple Inc.

Masimo and Cercacor ~~assert~~allege that Apple improperly obtained their trade secret information through hiring two of their former employees (Marcelo Lamego and Michael O'Reilly), that Apple disclosed certain alleged secrets in patents, and that used other alleged secrets.

Masimo and Cercacor also assert that Apple filed patents that claim inventions to which Masimo and Cercacor employees contributed, and those employees should be added as named inventors.  Masimo and Cercacor allege they should be part owners of those patents.

Masimo and Cercacor seek monetary damages for Apple's alleged trade secret misappropriation.  Masimo and Cercacor ~~allege they should be part owners of those patents.~~

~~Masimo and Cercacor seek monetary damages for Apple's alleged trade secret misappropriation.  Masimo and Cercacor~~ have the burden of ~~proving these~~proof on all of their claims.

Apple denies ~~those~~all of Plaintiffs' claims ~~and also contends that~~.  Apple contends that the alleged trade secrets do not meet the definition of trade secrets under California law, including because the information was generally known to the public and industry participants.  Apple contends that it did not misappropriate Plaintiffs' alleged trade secrets, including because Apple independently developed the information that Plaintiffs allege Apple misappropriated.  Apple further disputes that the alleged misappropriation was a substantial cause of any unjust enrichment to Apple.

Apple has also asserted a number of defenses to the claim for misappropriation of trade secrets.  Apple contends that Masimo and Cercacor did not file this lawsuit within

the time permitted by law, that they are not entitled to obtain relief because they have unclean hands, and that the information alleged to be trade secrets was readily ascertainable by proper means.  Apple has the burden of proof on these defenses.

Apple also contends that Plaintiffs' employees should not be added as co-inventors to the disputed patents and that neither Masimo nor Cercacor is a joint owner of those patents.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.5.

1

## APPLE'S PROPOSED INITIAL INSTRUCTION NO. 3B

2      This action involves allegations that certain ~~materials are~~information is subject to

3   protection as trade secrets.  To protect this information from public disclosure~~, the court~~

4   ~~will~~ while the issue of whether this information is actually subject to protection as trade

5   secrets is being decided by you, the Court will times seal the courtroom and limit the

6   ability for the attorneys and witnesses to say certain details in front of the public.  You

7   also may see documents that include confidentiality stamps at the bottom of the page

8   that the attorneys to this case have added.

9      You should make no inference from these measures that any information actually

10   qualifies as a trade secret as Plaintiffs contend.  Nor should you make any inference from

11   my sealing the courtroom or permitting any other measures that the Court has any

12   opinion on whether any information actually qualifies as a trade secret.  These

13   precautions are standard practice in a case such as this and are taken in order to preserve

14   the possibility that the information qualifies as a trade secret, which will be for you to

15   decide.

16      ~~The jury is reminded that~~ As I will instruct you at the end of the trial, Masimo and

17   Cercacor bear the burden of proving all elements of ~~its~~their claim for misappropriation

18   of trade secrets, ~~as explained in instruction number []~~including that the alleged trade

19   secrets were in fact trade secrets.  When evaluating whether Masimo and Cercacor have

20   satisfied this burden, ~~the jury is~~you are not permitted to take into account, or consider in

21   any way, the fact that the Court may occasionally seal the courtroom from the public or

22   take other precautions to prevent public access to certain information.  That is, whether

23   the courtroom is sealed has no relevance to whether the evidence provided during sealing

24   is a trade secret, or not.  And while the attorneys to this case have added confidentiality

25   stamps to the bottom of certain documents, you should make no inference from that

26   stamp that any information in the document is actually confidential.

27   **Model:** The Sedona Conference, *Commentary on Protecting Trade Secrets in Litigation*

28   *About Them*, 23 Sedona Conf. J. 741, 788-789 (2022).

## APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

You will each be provided with a juror notebook for your individual use.

The notebook contains four tabs.

Behind the first tab is lined paper for you to take any notes you wish.  If you need more paper for notes, please let [name] know and more will be provided.

Behind the second tab the notebook includes the alleged trade secrets that Masimo and Cercacor claim Apple misappropriated.  The law requires a trade secret plaintiff to provide the defendant during the litigation with a written description of the alleged trade secrets being asserted so that the defendant knows what it is accused of misappropriating.  Masimo and Cercacor produced written descriptions of the alleged trade secrets to Apple, and those are the descriptions that appear in your juror notebook behind the second tab.

Behind the third tab are copies of the patents that are the subject of Plaintiffs' claims regarding inventorship and ownership.

Behind the fourth tab is a flow chart that illustrates the decisions you will have to make during your deliberations at the end of the case.

Lastly, there is a fifth tab.  Over the course of the trial, the parties will provide you pictures of the witnesses before they testify whether live or by video.  You may put the witness pictures behind the fourth tab.  You may take notes anywhere you want in this notebook as well.  When you leave, your notebook should be left in the courtroom.

No one will read your notebook.  You will be required to return the notebook at the end of the case.  It will be destroyed at the conclusion of the case.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 12.

1    **APPLE'S PROPOSED INITIAL INSTRUCTION NO. 5B**

2    ~~This case involves a dispute relating to a United States patent. Before~~

3    ~~summarizing the positions of the parties and the issues involved in the dispute, let me~~

4    ~~take a moment to explain what a patent is and how one is obtained.~~

5    In this case, you will be hearing about different types of intellectual property

6    rights.  To help you understand the evidence as it is presented, I will now give you a

7    brief overview of patent and trade secret law and explain a few ways in which they differ.

8    Patents are granted by the United States Patent and Trademark Office (sometimes

9    called "the PTO").  To obtain a patent, one must first file an application with the PTO.

10   The PTO is an agency of the federal government and employs trained Examiners who

11   review applications for patents.  Among other things, the Examiner reviews certain

12   information about the state of the technology at the time the application was filed to

13   determine whether the invention is truly an advance over the state of the art at the time.

14   A valid United States patent gives the patent holder the right [for ~~up to 20 years from~~

15   ~~the date the patent application was filed] [for 17 years from the date the patent issued]~~a

16   certain period of time to prevent others from making, using, offering to sell, or selling

17   the patented invention within the United States, or from importing it into the United

18   States, without the patent holder's permission. ~~A violation of the patent holder's rights~~

19   ~~is called infringement. The patent holder may try to enforce a patent against persons~~

20   ~~believed to be infringers by a lawsuit filed in federal court.~~ In return for these exclusive

21   rights, the patent law imposes upon the inventor a requirement of public disclosure, so

22   the PTO publishes patents, including a full and clear description of the invention and of

23   the manner and process of making and using it.   Once published, the information in a

24   patent cannot be a trade secret—because public information is not secret.

25   Unlike patents, which are public, trade secrets are—as their name suggests—

26   secret.  Thus, in contrast to patents, trade secret law provides businesses with a different

27   form of protection for certain secret information.  A trade secret is information—such

28   as a formula, pattern, compilation, program, device, method, technique, or process—that

-7-

1    a company keeps confidential to maintain an advantage over competitors.  While a trade
2    secret need not be a new invention as is required to receive a patent, a trade secret must
3    derive independent economic value from being maintained as a secret, that is from not
4    being generally known by others who can obtain economic value from its disclosure or
5    use.  As I mentioned earlier, information disclosed in a patent is no longer entitled to
6    trade secret protection, because such information is in the public domain.  Unlike with a
7    patent, a business does not need to register or publish a trade secret with the government;
8    instead, the business must use reasonable efforts to maintain the secrecy of the business
9    information it seeks to protect as a trade secret.  And whereas patent law provides a
10   patent holder with the exclusive right to make or sell a patented technology—even if a
11   competitor has independently developed the same technology—trade secret law only
12   prohibits competitors from misappropriating a company's trade secrets by acquiring
13   them through improper means, such as through theft or by breaking a nondisclosure
14   agreement.

15        The process of obtaining a patent is called patent prosecution. To obtain a
16   patent, one must first file an application with the PTO. The PTO is an agency of the
17   Federal Government and employs trained Examiners who review applications for
18   patents. The application includes what is called a "specification," which contains a
19   written description of the claimed invention telling what the invention is, how it works,
20   how to make it, and how to use it. The specification concludes with one or more
21   numbered sentences. These are the patent "claims." If a patent is eventually granted by
22   the PTO, the claims define the boundaries of its protection and give notice to the
23   public of those boundaries.

24        After the applicant files the application, an Examiner reviews the application to
25   determine whether or not the claims are patentable (appropriate for patent protection)
26   and whether or not the specification adequately describes the invention claimed. In
27   examining a patent application, the Examiner reviews certain information about the
28   state of the technology at the time the application was filed. The PTO searches for and

1  reviews information that is publicly available or that is submitted by the applicant.

2  This information is called "prior art." The Examiner reviews this prior art to determine

3  whether or not the invention is truly an advance over the state of the art at the time.

4  Prior art is defined by law, and I will give you, at a later time during these instructions,

5  specific instructions as to what constitutes prior art. However, in general, prior art

6  includes information that demonstrates the state of technology that existed before the

7  claimed invention was made or before the application was filed. A patent lists the prior

8  art that the Examiner considered; this list is called the "cited references."

9         After the prior art search and examination of the application, the Examiner

10  informs the applicant in writing of what the Examiner has found and whether the

11  Examiner considers any claim to be patentable and, thus, would be "allowed." This

12  writing from the Examiner is called an "Office Action." If the Examiner rejects the

13  claims, the applicant has an opportunity to respond to the Examiner to try to persuade

14  the Examiner to allow the claims, and to change the claims or to submit new claims.

15  This process may go back and forth for some time until the Examiner is satisfied that

16  the application meets the requirements for a patent and the application issues as a

17  patent, or that the application should be rejected and no patent should issue.

18  Sometimes, patents 3 are issued after appeals within the PTO or to a court. The papers

19  generated during these communications between the Examiner and the applicant are

20  called the "prosecution history."

21         The fact that the PTO grants a patent does not necessarily mean that any

22  invention claimed in the patent, in fact, deserves the protection of a patent. For

23  example, the PTO may not have had available to it all other prior art that will be

24  presented to you. In addition, there is the possibility that mistakes were made or that

25  information was overlooked. Examiners have a lot of work to do and no process is

26  perfect. Also, unlike a court proceeding, patent prosecution takes place without input

27  from those who are later alleged to infringe the patent. A person accused of

28  infringement has the right to argue here in federal court that a claimed invention in the

patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not [alleged infringer] has proven that the patent is invalid.

**Model:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § A.1 (2020).

**APPLE'S PROPOSED INSTRUCTION NO. 1B**

Members of the ~~Jury: Now~~ jury, now that you have heard all ~~of~~ the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to ~~find the facts from~~ weigh and to evaluate all the evidence received in the case. ~~To those facts you will~~ and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you. ~~You must follow~~ to the ~~law~~ facts as ~~I give it to~~ you find them, whether you agree with ~~it~~ the law or not. ~~And you~~ You must ~~not be influenced by any~~ decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, ~~opinions, prejudices, or sympathy. In reaching a verdict, you may not~~ sympathy, prejudice, fear, or public opinion to influence you. Nor may you consider the overall wealth or ~~poverty~~ size of any party. ~~The parties' wealth or poverty~~, since that is not relevant to any of the issues that you must decide. ~~That means that you must~~ decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.

Please do not read into these instructions, or into anything ~~that~~ I may ~~say or do or~~ have said or done ~~that I have an opinion regarding the evidence or what your~~, any suggestion as to what verdict you should ~~be~~ return – that is a matter entirely up to you.

**Models:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4; CACI 117

**APPLE'S PROPOSED INSTRUCTION NO. 2B**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

The Plaintiffs in this case are Masimo Corporation and Cercacor Laboratories, Inc.  The Defendant is Apple Inc.

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The Plaintiffs asserts that Masimo and Cercacor allege that Apple improperly obtained their trade secret information through hiring two of their former employees (Marcelo Lamego and Michael O'Reilly), that Apple disclosed certain alleged secrets in patents, and that Apple used other alleged secrets.

Masimo and Cercacor also assert that Apple filed patents that claim inventions to which Masimo and Cercacor employees contributed, and those employees should be added as named inventors.  Masimo and Cercacor allege they should be part owners of those patents.

Masimo and Cercacor seek monetary damages for Apple's alleged trade secret misappropriation.  The plaintiffs  Masimo and Cercacor have the burden of proving these proof on all of their claims.

Apple denies those all of Plaintiffs' claims and also.  Apple contends that the alleged trade secrets do not meet the definition of trade secrets under California law, including because they do not have independent economic value and claim ideas that are generally known.  Apple contends that it did not misappropriate Plaintiffs' alleged trade secrets, including because Apple independently developed the information that Plaintiffs allege Apple misappropriated.  Apple further disputes that the alleged misappropriation was a substantial cause of any unjust enrichment to Apple.

Apple has also asserted a number of defenses to the claim for misappropriation of trade secrets.  Apple contends that Masimo and Cercacor did not file this lawsuit within

-12-

the time permitted by law, that they are not entitled to obtain relief because they have unclean hands, and that the information alleged to be trade secrets was readily ascertainable by proper means.  Apple has the burden of proof on these defenses.

Apple also contends that Plaintiffs' employees should not be added as co-inventors to the disputed patents and that neither Masimo nor Cercacor is a joint owner of those patents.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.5

## APPLE'S PROPOSED INSTRUCTION NO. 6B

This action involves allegations that certain ~~materials are~~information is subject to protection as trade secrets.  To protect this information from public disclosure~~, the court~~ while the issue of whether this information is actually subject to protection as trade secrets is being decided by you, the Court has at times, for example, sealed the courtroom and limited the ability for the attorneys and witnesses to say certain details in front of the public.  You also may have seen documents that include confidentiality stamps at the bottom of the page that the attorneys to this case have added.

You should make no inference from these measures that any information actually qualifies as a trade secret as Plaintiffs contend.  Nor should you make any inference from my sealing the courtroom or permitting any other measures that the Court has any opinion on whether any information actually qualifies as a trade secret.  These precautions are standard practice in a case such as this and are taken in order to preserve the possibility that the information qualifies as a trade secret, which will be for you to decide.

~~The jury is reminded that~~As I will instruct you, Masimo and Cercacor bear the burden of proving all elements of ~~its~~their claim for misappropriation of trade secrets, ~~as explained in instruction number []~~ including that the alleged trade secrets were in fact trade secrets.  When evaluating whether Masimo and Cercacor have satisfied this burden, ~~the jury is~~you are not permitted to take into account, or consider in any way, the fact that the Court occasionally sealed the courtroom from the public or took other precautions to prevent public access to certain information.  While the attorneys to this case have added confidentiality stamps to the bottom of certain documents, you should make no inference from that stamp that any information in the document is actually confidential.

**Model:** The Sedona Conference, *Commentary on Protecting Trade Secrets in Litigation About Them*, 23 Sedona Conf. J. 741, 788-789 (2022)

-14-

**APPLE'S PROPOSED INSTRUCTION NO. 10B**

Certain charts ~~and~~, summaries, and other demonstratives not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts ~~and~~, summaries, and other demonstratives are only as good as the underlying evidence that supports them.  They are not themselves evidence or proof of any facts.  You should, therefore, give them only such weight as you think the underlying evidence deserves.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 2.14

**APPLE'S PROPOSED INSTRUCTION NO. 11**

Certain charts ~~and~~, summaries, and other demonstratives not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.   Charts ~~and~~, summaries, and other demonstratives are only as good as the underlying evidence that supports them.   They are not themselves evidence or proof of any facts.   You should, therefore, give them only such weight as you think the underlying evidence deserves.   If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 2.14

1

## APPLE'S PROPOSED INSTRUCTION NO. 14B

2       You may consider the ability of each party to provide evidence.  If a party

3   provided weaker evidence when it could have provided stronger evidence, you may

4   distrust the weaker evidence.

5

6   **Model:** CACI 203

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPLE'S PROPOSED INSTRUCTION NO. 15B**

Masimo and Cercacor claim that they owned the 12 alleged trade secrets listed on Exhibit A and in your juror notebooks.  Masimo and Cercacor claim that the ~~alleged trade secret is a trade secret~~ information described in Exhibit A meets the legal definition of trade secrets, and that Apple misappropriated them.

"Misappropriation" means the ~~improper~~ use or disclosure of ~~the~~a trade secrets knowing or with reason to know that it was improperly acquired.

Masimo and Cercacor also claim that Apple's alleged misappropriation caused ~~them harm or~~ Apple to be unjustly enriched.

Apple denies that any of the alleged trade secrets were protectable trade secrets because they were generally known to people in the industry, denies that it misappropriated any of them rather than independently developed them, and denies that any alleged misappropriation caused any unjust enrichment.

Apple also claims that the alleged trade secrets were readily ascertainable through proper means, that Masimo and Cercacor waited too long after the alleged misappropriation to file this suit, and that Masimo and Cercacor are not entitled to obtain relief against Apple because they have "unclean hands."

**Model:** CACI 4400

# APPLE'S PROPOSED INSTRUCTION NO. 16B

Masimo and Cercacor claim that Apple has misappropriated ~~a~~the alleged trade secrets.  To succeed on this claim with respect to any particular alleged trade secret, Masimo and Cercacor must prove all of the following essential elements:

1.        That Masimo or Cercacor ~~owned~~ developed or otherwise were in lawful possession of the alleged trade secret;

2.        That ~~this~~the alleged trade secret was a trade secret at the time of the alleged misappropriation;

3.        That Apple improperly used or disclosed the alleged trade secret;

4.        That Apple was unjustly enriched; and

5.        That Apple's use or disclosure of the alleged trade secret was a substantial factor in causing Apple to be unjustly enriched.

You must consider each one of the 12 alleged trade secrets individually.  If you determine that Masimo and Cercacor have not proved one or more of the essential elements with respect to a particular alleged trade secret, you should indicate as much on the verdict form and move on to the next alleged trade secret.  If, and only if, you unanimously determine that Masimo and Cercacor have proved all five of the essential elements and that Apple has not proven any of its defenses with respect to at least one of the alleged trade secrets, then you must find Apple liable on this claim and proceed to consider the amount of damages.  However, if you determine that Masimo and Cercacor have not proved all five elements or that Apple has proven at least one of its defenses with respect to any single alleged trade secret, then you must find that Apple is not liable for misappropriation, and you may not include that alleged trade secret in any calculation of damages.

**Model:** CACI 4401

### APPLE'S PROPOSED INSTRUCTION NO. 18B

The second element of the misappropriation claim is that the information described within an alleged trade secret met the legal definition of a trade secret at the time of the alleged misappropriation.  To prove that an alleged trade secret was a trade secret, Masimo and Cercacor must prove each ~~all~~ of the following:

      1.      That the alleged trade secret was secret~~;~~.

      2.      That the alleged trade secret had actual or potential ~~independent~~ economic value because it was secret~~; and~~.

      3.      That Masimo and Cercacor made reasonable efforts to ~~keep~~maintain the secrecy of the alleged trade secret ~~secret~~.

I will now describe each of these requirements in more detail.

**Model:** CACI 4402

-20-

**APPLE'S PROPOSED INSTRUCTION NO. 19B**

An alleged trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know ~~the [it]~~ and who could obtain economic value from its disclosure or use.

In determining whether ~~an~~a particular alleged trade secret had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which Masimo and Cercacor obtained or could obtain economic value from the alleged trade secret ~~in keeping~~if it were not secret;

2. The extent to which others could obtain economic value from the alleged trade secret if it were not secret;

3. The amount of time, money, or labor that Masimo and Cercacor expended in developing the alleged trade secret;

4. The amount of time, money, or labor that would be saved by a competitor ~~who~~that used the alleged trade secret;

5. Whether Apple, Masimo, or Cercacor actually incorporate the purported secret in any product or process.

The presence or absence of any one or more of these factors is not necessarily determinative.

In determining whether Masimo and Cercacor have proven that the alleged trade has independent economic value, the fact that the words "value" or "importance" may appear in the description of the alleged trade secret should make no difference to your analysis. Masimo and Cercacor have the burden of proving that each alleged trade secret has independent economic value regardless of how they named or described their alleged trade secrets.

**Model:** CACI 4412

-21-

**APPLE'S PROPOSED INSTRUCTION NO. 21B**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Masimo's or Cercacor's use of the alleged trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret.

However, the alleged trade secret it must not have been generally known to the public or to people who could obtain value from knowing it. Under some circumstances, the publication of an alleged trade secret will be clearly sufficient to indicate that the information is generally known. For example, publication of information in a patent or a patent application makes it generally known to the public and so eliminates any trade secrecy. While the fact that the alleged trade secret has been revealed in some publication somewhere does not necessarily mean that the information is not generally known, and you may determine that information is generally known where it appeared in a publication that would generally make people in the relevant industry aware of that information.

**Model:** CACI 4403

-22-

# APPLE'S PROPOSED INSTRUCTION NO. 24B

~~All parties are equal  before the  law and a~~ The Plaintiffs and Defendant in this case are corporations.  A corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  ~~Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.~~

For Masimo and Cercacor to prove that Apple misappropriated an alleged trade secret by use or by disclosure, they must prove that Apple knew or had reason to know that it had improperly acquired the information described by the alleged trade secret through an employee of Apple who violated a duty of confidentiality to Masimo or Cercacor.  Masimo and Cercacor can prove this if they prove that a different employee of Apple learned facts within the scope of his or her job such that he or she knew or had reason to know that Masimo and Cercacor's former employee had breached his duty of confidentiality.

Likewise, to the extent that an employee of Masimo or Cercacor, while acting within the scope of his or her job, disclosed to the public elements of the information that are now alleged to be trade secrets, those actions can be imputed to Masimo or Cercacor.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 4.1, 4.2

-23-

### APPLE'S PROPOSED INSTRUCTION NO. 26B

The third element of Masimo and Cercacor's claim with respect to an alleged trade secret is that Apple misappropriated through improper use or disclosure.  I will now explain what these terms mean.

Masimo and Cercacor can prove that Apple misappropriated ~~Masimo and Cercacor's~~by use a particular alleged trade secret ~~by use if~~if they prove that Apple both:

1. ~~used it~~Used the alleged trade secret without Masimo or Cercacor's consent; and

2. At the time of its use, knew or had reason to know that (i) Apple's knowledge of the alleged trade secret came from or through Marcelo Lamego or Michael O'Reilly, and ~~that~~(ii) Dr. Lamego and Dr. O'Reilly had a duty to Masimo and Cercacor to limit use of the alleged trade secret.

To prove "use," it is not sufficient to show either that Apple had access to the alleged trade secret while developing its own products or that Apple's product design or practices were influenced by non-trade secret information obtained from a former employee of Masimo or Cercacor.  Nor is it enough to speculate that a former employee of Masimo or Cercacor would inevitably have used the alleged trade secret in his or her work at Apple.

Masimo and Cercacor may still prove that Apple disclosed or used the alleged trade secret if Apple knew it had acquired the alleged trade secret through improper means and then Apple built upon or modified the alleged trade secret before disclosing or actually using the resulting information in connection with manufacturing, producing, researching and developing, or marketing Apple Watch, provided that the information Apple actually used was substantially derived from the alleged trade secret.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the alleged use, another person at Apple knew or had reason to know that Apple had improperly obtained an alleged trade secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

**Model:** CACI 4407

## APPLE'S PROPOSED INSTRUCTION NO. 28B

Masimo and Cercacor can prove that Apple misappropriated ~~Masimo and Cercacor's~~a particular alleged trade secret by disclosure if they prove that Apple both:

1. Disclosed the alleged trade secret without Masimo's or Cercacor's consent; and

2. At the time of its disclosure, knew or had reason to know (i) that Apple's knowledge of the alleged trade secret came from or through Marcelo Lamego or Michael O'Reilly, and (ii) that Dr. Lamego and Dr. O'Reilly had a duty to Masimo and Cercacor to keep the information secret.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the alleged disclosure, another person at Apple knew or had reason to know that Apple had improperly obtained an alleged trade secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

**Model:** CACI 4406

# APPLE'S PROPOSED INSTRUCTION NO. 29B

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the a trade secret by any of the following:

1. Independent efforts to invent or discover the information;
2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a the right to possess the product;
3. Observing the information in public use or on public display;
4. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

If Apple independently developed the information that Masimo and Cercacor claim is covered by an alleged trade secret, then Apple did not employ improper means to acquire that information.   Masimo and Cercacor accordingly bear the burden to prove that Apple did not independently develop the alleged trade secret.

Additionally, recruiting or hiring employees from another company, including from a competitor, does not on its own constitute improper means.

**Model:** CACI 4408

## APPLE'S PROPOSED INSTRUCTION NO. 31B

### (Offered in the Alternative)

A corporate officer owes what is known as a fiduciary duty to his or her corporation.  A fiduciary duty imposes on ~~a~~the corporate officer a duty to act with the utmost good faith in the best interests of his or her corporation.  A fiduciary duty includes the obligation to maintain the secrecy of alleged trade secret information provided to the corporate officer by the corporation in the course of his or her employment.

Masimo and Cercacor ~~claims that it was harmed by Apple's breach of the fiduciary duty of confidentiality. To establish this claim,~~ Masimo and Cercacor must ~~prove all of the following:~~can establish that an employee had a fiduciary duty to maintain alleged trade secret information in confidence and breached that duty if they prove:

1.      That the employee was Masimo or Cercacor's corporate officer;

2.      That the employee obtained the alleged trade secret in his or her capacity as a corporate officer of Masimo or Cercacor;

~~3~~2.      That ~~the employee had information relating~~ to ~~Masimo and Cercacor that~~ he or she knew or should have known ~~was confidential~~that this information was a trade secret;

~~4~~3.      That the employee communicated Masimo or Cercacor's alleged trade secret to Apple ~~confidential information to third parties; and~~

~~5~~4.      That Masimo or Cercacor did not give informed consent to the employee's conduct~~;~~.

~~5. That the confidential information was not a matter of general knowledge;~~

~~6. That Masimo and Cercacor were harmed; and~~

~~7. That the employee's conduct was a substantial factor in causing Masimo and Cercacor's harm.~~

Masimo and Cercacor can establish that an employee was a corporate officer if they prove that he or she participated in management of the corporation, exercising discretionary authority on behalf of the corporation.  This determination depends on the

substance of the employee's management authority at the relevant time, if any, not on the employee's title or the scope of his or her prior authority.

**Models:** <mark>CACI 4100</mark>; <mark style="background-color:#00ff00">CACI 4103</mark>

**APPLE'S PROPOSED INSTRUCTION NO. 33B**

If Masimo and Cercacor prove that they possessed an alleged trade secret and that Apple misappropriated it by use or disclosure, then Masimo and Cercacor must prove that Apple's misappropriation was the cause of some provable harm.  Specifically, Masimo and Cercacor must prove that Apple's use or disclosure of a specific alleged trade secret was a substantial factor in causing them harm.

A "substantial factor" in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

**Model:** CACI 430

**APPLE'S PROPOSED INSTRUCTION NO. 34B**

Apple claims that Masimo and Cercacor's lawsuit was not filed within the time set by law.   To succeed on this defense, Apple must prove that the claimed misappropriation of ~~Masimo and Cercacor's~~a trade secret~~s~~ occurred before January 9, 2017.

However, the lawsuit was still filed on time if Masimo and Cercacor prove that before January 9, 2017, they did not discover, nor with reasonable diligence should they have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated at least one of Masimo and Cercacor's alleged trade secrets.

**Model:** CACI 4421

-31-

## APPLE'S PROPOSED INSTRUCTION NO. 35B

Apple has raised as ~~an affirmative~~a defense ~~the allegation~~ that Masimo and Cercacor ~~has~~ come into court with unclean hands and so should be barred from recovering damages on their claims.  The doctrine of unclean hands is invoked when a litigant seeking damages has violated a duty of good faith or has acted unconscionably in connection with the same subject matter or relationship out of which the litigant claims a right to damages.  If you find such a violation of good faith or conscience, then you should find that the plaintiff or plaintiffs ~~who~~that are guilty of unclean hands are not entitled to recover damages in this action.

~~Conduct that defrauds and conduct that demonstrates an intent to defraud even  if the  intent could not be accomplished are sufficient to bar a litigant  from recovering damages  from the  person defrauded or intended  to be  defrauded.~~ A person who has committed an intentional, dishonest act in connection with that person's relationship to another is barred by the doctrine of unclean hands from recovering damages from the other person.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation.  Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.

In this case, Apple alleges that Masimo and Cercacor have unclean hands because they required certain employees, including Dr. O'Reilly and Dr. Lamego, to sign employment agreements that include confidentiality, noncompete, and nonsolicitation provisions.  I have determined that these provisions were void and unenforceable under California law from their inception.

**Model:** 2 Cal. Affirmative Def. § 45:18 (2d ed.)

-32-

**APPLE'S PROPOSED INSTRUCTION NO. 36**

Apple did not misappropriate ~~Masimo and Cercacor's~~an alleged trade secret if Apple proves that the alleged trade secret was readily ascertainable by proper means at the time of the alleged acquisition, use, or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means."  In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

**Model:** CACI 4420

-33-

**APPLE'S PROPOSED INSTRUCTION NO. 37B**

If Masimo and Cercacor prove ~~that Apple misappropriated their~~all five essential elements of their misappropriation claim with respect to one or more alleged trade secrets and Apple does not prove any of its defenses, then Masimo and Cercacor are entitled to recover damages if the misappropriation caused Masimo and Cercacor to suffer an actual loss of profits and/or if the misappropriation caused Apple to be unjustly enriched. However, in determining damages, you may only consider those alleged trade secrets where you have unanimously found Apple liable, i.e., where you have decided that Masimo and Cercacor proved all essential elements and Apple did not prove any of its defenses.

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. ~~If you find for Masimo and Cercacor you must determine the plaintiffs' damages.~~ Masimo and Cercacor have the burden of proving the measure of damages by a preponderance of the evidence. ~~Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following: []~~It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

Your award of damages, whether measured by the loss of profits to Masimo and Cercacor or the unjust enrichment of Apple, must be limited solely to the time that the relevant alleged trade secrets would have remained unavailable to Apple in the absence of misappropriation. Damages therefore cannot be awarded in connection with losses to Masimo and Cercacor or unjust enrichment of Apple that occurred after Apple could have discovered or obtained the relevant information by proper means.

If Apple's misappropriation did not cause Masimo and Cercacor to suffer an actual loss of profits or Apple to be unjustly enriched, then Masimo and Cercacor may still be entitled to a reasonable royalty for no longer than the period of time the use could

have been prohibited.  However, I will calculate the amount of any royalty after you deliver your verdict.

In deciding the amount of Masimo and Cercacor's lost profits or Apple's unjust enrichment, if any, you may not consider the outcomes of Plaintiffs' remaining claims for correction of inventorship and declaration of ownership of certain disputed Apple patents.  The issues of lost profits and unjust enrichment are only relevant to Masimo and Cercacor's claim for misappropriation of trade secrets.  The inventorship and ownership claims are legally distinct, and it is the Court's duty to determine the appropriate remedy in connection with the inventorship and ownership claims, based on the facts you determine through your deliberations.

**Models:** CACI 4409; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 5.1

## APPLE'S PROPOSED INSTRUCTION NO. 39B

Masimo and Cercacor can prove that Apple was unjustly enriched if ~~its~~they prove that Apple is liable for misappropriation of ~~Masimo and Cercacor's~~an alleged trade secret and that the misappropriation caused Apple to receive a benefit that it otherwise would not have achieved.

Unjust enrichment occurs when a defendant reaps an undeserved benefit such as accelerating its own development timeline and/or saving on development costs by taking improper advantage of someone else's trade secrets.  Unjust enrichment does not occur, however, where the benefit would have been realized anyway.

I will now instruct you on how to decide the amount of any unjust enrichment you find.  By giving you this instruction, I am not suggesting you should find one way or the other regarding whether Masimo and Cercacor has proven any unjust enrichment.  To decide the amount of any unjust enrichment, you should first determine the value of Apple's benefit that would not have been achieved except for its alleged misappropriation~~. Then~~, and then subtract from that amount Apple's reasonable expenses, including the value of ~~the~~ labor, materials, and interest on invested capital.

In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Masimo and Cercacor's ~~actual loss~~lost profits.

In calculating any unjust enrichment, you may only consider those alleged trade secrets for which Masimo and Cercacor proved all five essential elements and for which Apple did not prove any of its defenses.

**Model:** CACI 4410

**APPLE'S PROPOSED INSTRUCTION NO. 40B**

If you decide that ~~Apple's misappropriation caused~~ Masimo and Cercacor ~~harm~~proved all five essential elements of their misappropriation claim with respect to an alleged trade secret, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the harmful conduct ~~that harmed Masimo and Cercacor~~ and to discourage similar conduct in the future.

In order to recover punitive damages, Masimo and Cercacor must prove by clear and convincing evidence that Apple acted willfully and maliciously.   You must determine whether Apple acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages.  I will calculate the amount later.

"Willfully" means that Apple acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Apple acted with an intent to cause injury, or that Apple's conduct was despicable and was done with a willful and knowing disregard for the rights of others.  "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  You would have to find that Apple acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

**Model:** CACI 4411

-37-

## APPLE'S PROPOSED INSTRUCTION NO. 41B

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

At the beginning of the trial, I gave you a brief overview of the patent law relevant to this case.  I will now give you more detailed instructions about the patent law that specifically relate to this case.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder the right [for up to 20 years from the date the patent application was filed] [for 17 years from the date the patent issued]a certain period of time to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.  In return for these exclusive rights, the patent law imposes upon the inventor a requirement of disclosure, so the PTO publishes patents, including a full and clear description of the invention and of the manner and process of making and using it.  Therefore, information disclosed in a patent is no longer entitled to trade secret protection, because such information is in the public domain.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the federal government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims." If a patent is eventually granted by the PTO,

the claims define the boundaries of its protection and give notice to the public of those boundaries.  Claims are usually divided into components or steps, called "limitations."

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents 3 are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

1    ~~The~~ fact that the PTO grants a patent ~~does not necessarily mean that~~ ~~any~~
2    ~~invention claimed in the patent, in fact, deserves the protection of a patent. For~~
3    ~~example, the PTO may not have had available to it all other prior art that will be~~
4    ~~presented to you. In addition, there is the possibility that mistakes were made or~~ ~~that~~
5    ~~information~~ ~~was overlooked. Examiners have a lot of work to do and no process is~~
6    ~~perfect. Also, unlike a court proceeding, patent prosecution takes place without input~~
7    ~~from those who are later alleged to infringe the patent. A person accused of~~
8    ~~infringement has the right to argue here in federal court that a claimed invention in the~~
9    ~~patent is invalid because it does not meet the requirements for a patent. It is your job to~~
10   ~~consider the evidence presented by the parties and determine independently whether or~~
11   ~~not [alleged infringer] has proven that the patent is invalid.~~

12        For example, a claim that covers the invention of a table may recite the tabletop,
13   four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue
14   are each a separate limitation of the claim.

15

16   **Model:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § A.1 (2020)

17

18

19

20

21

22

23

24

25

26

27

28

**APPLE'S PROPOSED INSTRUCTION NO. 42B**

In this case, Masimo and Cercacor ~~contends that the patent is invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.~~ contend that certain of their employees should be listed as joint inventors on five of Apple's patents.  The verdict form specifies for each claim the employees and patents associated with each of Plaintiffs' five claims for correction of inventorship.

To succeed on a correction of inventorship claim, Masimo and Cercacor bear the burden of proving both of the following:

1. ~~To be an inventor, one must make a significant contribution~~the listed employee of Masimo and/or Cercacor contributed to the conception of at least one of the claims of the patent; and

2. ~~. Whether~~ the contribution ~~is~~was significant in quality ~~is~~as measured against the scope of the full invention.

Masimo and Cercacor must prove these elements by clear and convincing evidence.  An alleged co-inventor's testimony regarding the facts surrounding his or her alleged contribution cannot, standing alone, rise to the level of clear and convincing proof.  Additional evidence to corroborate that testimony is required, though that evidence may take many forms, including contemporaneous documents, testimony from another witness, or circumstantial evidence about the inventive process.

~~If   someone only explains to the actual inventors well-known concepts or the current state of the art,   he or she is not an inventor.  Merely helping with experimentation,  by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some significant contribution to the idea claimed.~~

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the

-41-

patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or ~~at~~ approximately at the time of their inventive effort.  Therefore, if Apple independently developed the inventions and technologies disclosed and claimed by a patent without any communication with or contribution from the Masimo and/or Cercacor employees alleged to be joint inventors, then Plaintiffs' employees were not joint inventors.

In deciding whether an alleged co-inventor's contribution was significant in quality, you must measure that contribution against the dimension of the full invention.  For instance, if someone only explains to the actual inventors well-known concepts or the current state of the art, then he or she is not a joint inventor.  Similarly, if someone's contribution is too far removed from the real-world realization of the invention, such as by merely suggesting an idea of a result to be accomplished by the invention, then he or she is not an inventor.  Nor is someone an inventor if he or she focused solely on real-world realization of the invention, such as if the assistance was provided after the claim invention was conceived. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some significant contribution to the idea claimed.

**Model:** *Model Patent Jury Instructions*, Fed. Cir. Bar Assoc. § 4.3d (2020)

## APPLE'S PROPOSED INSTRUCTION NO. 47B

A verdict form has been prepared for you. The verdict form sets forth the elements of each claim and is designed to assist you in your deliberations.  You should follow the instructions in the verdict form as you move through your deliberations.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.5