UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | April 3, 2023 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Deborah Lewman | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:
Not Present  Not Present

**Proceedings:** [IN CHAMBERS] Order Re Lost Profits Dispute (Redacted)

At the Final Pretrial Conference, the issue of Plaintiffs' disclosures concerning their lost profits calculation was once again presented to the Court. The Court permitted two rounds of briefing on the latest iteration of this dispute. See Dkts. 1443, 1456 (sealed) (Apple's brief); Dkts. 1460, 1475 (sealed) (Plaintiffs' brief); Dkts. 1480, 1479-1 (sealed) (Plaintiffs' building blocks brief); Dkts. 1487, 1486-1 (sealed) (Apple's response re building blocks); Dkt. 1494 (Plaintiffs' reply)[1]; see also Dkt. 1464 (Minutes of Telephonic Hearing). The Court held a hearing on April 3, 2023. For the reasons stated in this order, the Court **EXCLUDES** Plaintiffs' lost profits theory.

I.  Discussion

The underlying issue concerning the adequacy of Plaintiffs' damages disclosures has come up frequently in this case. See, e.g., Dkt. 617 at 6; Dkt. 816 at 10-11; Dkt. 1031 at 11-12. The Court does not repeat that history here, but rather incorporates its prior orders by reference.

In response to Apple's allegations of non-disclosure and the Court's order that Plaintiffs must disclose their bottom-line number, Plaintiffs present their lost profits theory via the following equation:

Lost profits = Apple Watch units sold $x$ Masimo's per-unit profit.

---

[1] Although the Court did not authorize Plaintiffs to file a reply, the Court will accept the filing.

Plaintiffs argue each building block of this equation, along with an adequate sponsoring witness, was timely disclosed to Apple. Specifically, Plaintiffs complete the equation by considering:

- Apple Watch units sold from Q4 2018 to Q1 2023 (i.e., from the first sale of an Apple Watch to present), including Series 4-7.
- Masimo's sensor module price of $100
- Masimo's gross profit margin (overall as a company) of 65% (or, alternatively, subtracting the cost to build each sensor module from the $100 price).

The Court addresses the adequacy of the pretrial disclosures concerning each of these three building blocks below.

A.   Apple Watch Units Sold

Plaintiffs state that they disclosed this component of the lost profits calculation in a July 2022 supplemental response to Rog. No. 17 regarding damages. See Dkt. 1475-2 (Ex. B) at 37. They note that their damages expert, Kinrich, also examined quarterly sales data through Q3 2022. Dkt. 1475-10 (Ex. J) at 629-32. Plaintiffs argue Apple should stipulate to its own sales data, or it could be introduced through deposition testimony of Apple's Senior Finance Manager.

Apple responds that it never received notice of which Apple Watch models and units sold would comprise Plaintiffs' lay witness-based lost profits calculation. Apple contends the July 2022 interrogatory response did not provide such notice, because it simply cross-referenced Apple's own interrogatory response disclosing total Apple Watch sales (from Series 0 forward). Apple also argues that Plaintiffs cannot rely on the Kinrich Report disclosure because he used a different subset of models/sales (e.g., Series 4 only). Apple argues that allowing Plaintiffs to vastly expand their lost profits theory in this manner on the eve of trial would be fundamentally unfair and defeat the purpose of Rule 26 disclosures. Even considering that Apple witnesses could authenticate sales data, Apple observes that "Plaintiffs fail to explain who would introduce evidence as to *why* those sales should be included in their lost profits calculation." Dkt. 1486-1 at 6 (noting this depends on hypothetical opinions of ███████████████████████████████████████). Compare Dkt. 1283 at 7 (excluding similar expert opinion absent a timely disclosed written report).

The Court finds that Plaintiffs did not disclose during fact or expert discovery (1) the subset of Apple Watch models and sales units on which they now intend to rely at trial; or (2) an explanation of why this subset of units properly informs lost profits.

The Court acknowledges that Plaintiffs' July 2022 interrogatory response disclosed its overall theory that, "[b]ut for Apple's misappropriation of trade secrets, ███

███████████████████████████████████████.." Dkt. 1475-2 (Ex. B) at 36. But disclosing a theory is not the same as disclosing the factual basis for that theory on which a party plans to rely at trial. Rule 26 requires the disclosure of underlying facts, not just theories, during fact discovery.

First, as to the subset of models/units, Plaintiffs' reliance on Apple's response disclosing all Apple watch sales cannot provide the missing factual basis because Plaintiffs' current lost profits theory is not based on all sales; rather, it is based on a different subset of models/sales.[2] Further, although Kinrich disclosed certain units from Series 4 and later, his calculation offered only a subset of units rather than all sales. Thus, the Kinrich disclosures cannot supply the missing factual basis. Because Plaintiffs have failed to identify a timely disclosure of the subset of models/sales on which they intend to rely at trial, the newly disclosed subset violates Rule 26 and should be excluded under Rule 37(c)(1). The Court finds the March 2023 disclosure was neither substantially justified nor harmless. This is especially true considering the timing and contents of the Court's prior orders on this topic (e.g., excluding Kinrich's lost profits opinions), and the vast difference in terms of dollar amount between those prior disclosures and Plaintiffs' current disclosure. Apple would be prejudiced by having to defend against this vastly different, eleventh-hour position.

Second, as to offering a witness who can explain why this new subset of units/sales is the correct one to use for lost profits (i.e., when Masimo could have ████████ ██████████████████████), the Court will not allow Plaintiffs to repackage Kiani to do what the Court expressly prohibited Muhsin and Priddel from doing without a report. That is, if Plaintiffs' employees wanted to testify outside of their percipient knowledge concerning hypothetical scenarios relating to what Masimo would have done, a written report was required under Rule 26(a)(2)(B). None was provided for Kiani and it is too late to do so on the eve of trial.[3] See Dkt. 1283 at 7 (excluding similar expert opinions

---

[2] At the hearing, Plaintiffs argued that their March 2022 initial disclosures provided that all Apple Watch sales from Q4 2018 forward should be included at $100 per unit. Plaintiffs overstate what was provided in the initial disclosures. Those disclosures stated that, "Plaintiffs have not yet made a computation of any category of damages" because they "require discovery from Defendant to do so." Dkt. 1475-1, Ex. A at 11 (emphasis added). Plaintiffs "estimate[d] the harm from the lost value of the[] ████████████████████████ cost [Plaintiffs] at least ████████." Id. Plaintiffs observed Apple's sales for watches from Series 4 and higher from Q4 2018 to the date of the response exceeded ████████ units, and Plaintiffs posited that "[o]ne way one might quantify Apple's financial liability would be to ask how much ██████████████████████████████████████████████ ██████████, rather than misappropriate Masimo's trade secrets. Had Apple paid Masimo at least $100 per Apple Watch for Masimo's trade secrets, that would have resulted in Apple paying Masimo more than ████████████████████████████████████████████████████████████ Id. The express language of the response makes clear that this hypothetical is a not a disclosure of damages, especially where the response disclaims any damages computation at that point in the litigation.

[3] At the hearing, Plaintiffs argued they want to rely on ¶ 11 of the Muhsin disclosure concerning percipient knowledge of, e.g., the general development of the W1, technical capabilities in

offered by Muhsin and Priddell absent a timely report); Dkt. 1238 at 6-7 (striking Kinrich's lost profits opinions where they relied on those excluded expert opinions).

For these reasons, no disclosures support Plaintiffs' first building block for lost profits, Apple Watch units sold.

B.      Masimo's Sensor Module Price

Plaintiffs rely on a sensor module price of at least $100 per module. Plaintiffs state that they disclosed this component of their lost profits calculation during Kiani and Muhsin's depositions. Plaintiffs note they incorporated the relevant deposition citations into their September 2022 supplemental interrogatory response. Plaintiffs contend that Kinrich also relied on a $100/$100 per unit price (module/licensing). Plaintiffs argue that the Court's summary judgment order on this topic cited the deposition pages as something in the record on which Plaintiffs could rely. Dkt. 1283 at 12. Plaintiffs proffer that Kiani and Muhsin will testify about the $100/$100 pricing based on Masimo's offer to sell sensor modules to a third party.

Apple responds that Plaintiffs never disclosed that this third-party offer was relevant to lost profits, let alone the single data point that would prove lost profits. Apple contends that Plaintiffs' interrogatory response references this offer only in connection with their reasonable royalty theory, not lost profits. Apple also argues that references to the Kiani and Muhsin depositions did not cite the specific testimony on which Plaintiffs now rely, or identify it as relevant to lost profits. See Dkt. 1475-2 at 43. Further, Apple argues that, rather than adopt this sales offer as a lost profits input, Kinrich rejected the $100 per unit price and used a different price range. See Dkt. 1475-10 at 496-97. Additionally, Apple argues that Kiani and Muhsin cannot testify as to the statements they made to a third-party because this is inadmissible hearsay offered for the truth of the matter asserted (i.e., that a $100 offer was made).

Although the relevant supplemental damages interrogatory responses do not always label the category to which each supplement was relevant (e.g., lost profits, reasonable royalty, unjust enrichment), the Court finds that Plaintiffs' August 2022 supplement and the relevant deposition testimony about the third-party offer may have been enough to suggest to Apple that Plaintiffs intended to use the third-party offer as relevant to lost profits. See Dkt. 1475-2 at 42 ("Masimo further identifies ongoing communications between Masimo and [a third party], including those produced in Volume MASA079.").

Even assuming this was enough for disclosure purposes, the Court finds that the proffered Kiani and Muhsin testimony is inadmissable hearsay. In their initial brief,

---

2013, etc., but none of this information bridges the gap needed to calculate lost profits without the excluded hypothetical scenario.

Plaintiffs argue that the third-party offer testimony is not hearsay because "[i]t is offered for the fact that it was said." Dkt. 1475 at 11. But that is the same as offering it for the truth, i.e., the truth is that the offer was made and the offer was for $100. Plaintiffs also argue that the statements are "legally operative verbal conduct" or "verbal acts," and are therefore not hearsay. Id. at 11-12. Plaintiffs provide no support for this assertion. For example, there is no evidence that the offer of $100 was somehow legally operative. At best it appears to be an opening offer that could have led to negotiations, and ultimately no sales agreement was reached. But this is somewhat speculative because Plaintiffs have not presented any evidence supporting the offer besides what Kiani and Muhsin intend to say (i.e., that the offer was authorized / made). Plaintiffs do not provide any further argument on this point in their reply.[4]

For these reasons, even assuming adequate disclosure, there is no evidentiary basis for Plaintiffs' second building block for lost profits, Masimo sensor module price.

### C. Masimo's Gross Profit Margin (or alternatively, cost per module)

Plaintiffs rely on Masimo's "consistent[]" gross profit margin of 65%. Plaintiffs state that they disclosed this component of the lost profits calculation in several ways. For example, Muhsin testified that Masimo is targeting its normal gross profit of 70% for its W1 watch. See Dkt. 1475-6 (Ex. F) at 128; Dkt. 1475-2 (Ex. B) at 43. Since Masimo is a publicly traded company, Plaintiffs argue its publicly available 10-K filings disclose profit margins around 65%. Plaintiffs also state that Kinrich provided profit margins of about 68% in his report in connection with lost profits. Dkt. 1475-10 (Ex. J) at 496, ¶ 109. Plaintiffs argue that the Court's summary judgment order suggested that Masimo could rely on the 10-K reports for gross profit margin. Dkt. 1283 at 12. Plaintiffs state that Kiani or Muhsin can testify to the profit margins, and they may also call an Apple witness to testify about an internal Apple document that tracked Masimo's profit margins.[5]

---

[4] At the hearing, Plaintiffs argued that Kiani can testify that he authorized a price of $200, followed by the $100/$100 pricing, and that this statement falls under the hearsay exception to show a then-existing statement of mind to establish motive, intent, or plan. Plaintiffs misconstrue this exception. Rule 803(3) provides an exception to the rule against hearsay for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3). Here, Plaintiffs want to use the statement for the truth of the matter asserted (i.e., $100 was the price) rather than to show Kiani's intent to offer that price. The purpose of the exception is not to prove the historical fact, but to prove a historical state of mind.

[5] Alternatively, Plaintiffs argue that the cost per module is calculated in the ordinary course of business and could be subtracted from the $100 sales price to arrive at the profit per module unit. See Dkt. 1475-18 (Ex. T) at 1168 (Scruggs ITC Depo. at 217); Dkt. 1475-2 (Ex. B) at 42 (incorporating the Scruggs deposition testimony into rog response); see also JTX 1645 (the 2021 cost spreadsheet). Apple responds that Plaintiffs have already admitted the document was not created in the

Apple responds that the cited deposition testimony relates to the entire W1 watch, not just the sensor module. Apple argues that Plaintiffs never identified Masimo's W1 margins or Masimo's 10-K statements as relevant to lost profits for trade secret misappropriation. Apple observes that Kinrich relied on Masimo's income statements, not the 10-Ks. Apple also argues that, although Kiani and Muhsin could introduce the 10-Ks, they cannot opine that Plaintiffs' ▮▮▮▮▮▮▮▮▮▮ would have maintained those profit margins.

Even assuming the general 10-K disclosures and W1 disclosures provided general notice of Masimo's expected gross margin, and setting aside whether *gross* margin is the appropriate input for lost profits, the Court finds a lack of disclosure as to the factual basis for the ▮▮▮▮▮▮▮▮. Even if Kiani and/or Muhsin testify about Masimo's typical corporate gross profit margins, they may not offer testimony on hypothetical scenarios about what kind of arrangement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ without a written expert report. See Dkt. 1283 at 7 (excluding similar expert opinions offered by Muhsin and Priddell absent a timely report); Dkt. 1238 at 6-7 (striking Kinrich's lost profits opinions where they relied on those expert opinions).

For these reasons, even assuming adequate disclosure, there is no properly disclosed evidentiary basis for Plaintiffs' third building block for lost profits, Masimo's gross profit margin as it relates to the hypothetical scenario underlying Plaintiffs' lost profits theory.

To the extent Plaintiffs rely on the Court's summary judgment order as a basis for stating they provided adequate disclosures or presented adequate evidence, that reliance is misplaced. In the summary judgment order, the Court acknowledged that certain types of information identified in the discovery record could help support a lost profits calculation (e.g., 10-Ks, module pricing). This general acknowledgment did not absolve Plaintiffs from providing their actual lost profits figure to Apple. Once Plaintiffs did so and Apple objected based on non-disclosure, the Court could evaluate whether specific types of evidence were disclosed adequately and could provide a factual basis to support the building blocks of that calculation. As the Court has explained in this order, the lack of various factual bases and admissible evidence precludes Plaintiffs from proceeding on a lost profits theory at trial. Plaintiffs may present their unjust enrichment theory, and the Court will address the equitable issue of reasonable royalty after trial (assuming that stage becomes necessary and the previously identified reasonable royalty disclosure

---

ordinary course of business and Plaintiffs are attempting to relitigate the issue. See Dkt. 1171-2 at 7-8 (Priddell disclosure stating "I analyzed ▮▮▮▮▮▮▮▮▮ … This analysis is shown in MASA10971155 [the 2021 Cost Report] …" ); Dkt. 1120-3 (Plaintiffs' counsel representing that "[t]he documents produced [on August 18] were an update to an analysis that Masimo previously conducted and produced. This is not an analysis that Masimo performs in the ordinary course of business, nor are the documents produced kept in the ordinary course[.]"). The Court need not resolve this dispute because doing so would not fix the other infirmities identified in this order.

issues have been remedied).

II.   Conclusion

Accordingly, for the reasons stated herein, the Court **EXCLUDES** Plaintiffs' lost profits theory from trial.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | djl | |