1  MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
      HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
      HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
      HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14 [Counsel appearance continues on next page]

15 *Attorneys for Defendant Apple Inc.*

16
17          **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**
18

19 MASIMO CORPORATION,                    CASE NO. 8:20-cv-00048-JVS (JDEx)
   a Delaware corporation; and
20 CERCACOR LABORATORIES, INC.,           **APPLE'S SUPPLEMENTAL TRIAL**
   a Delaware corporation,                **MEMORANDUM REGARDING**
21                                         **PLAINTIFFS' DISCLOSURES OF**
                   Plaintiffs,            **THEIR ATTORNEY-CLIENT**
22                                         **COMMUNICATIONS**
              v.
23
   APPLE INC.,
24 a California corporation,
                                          Trial: Apr. 4, 2023
25                 Defendant.

26
        REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL
27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURES OF THEIR
ATTORNEY-CLIENT COMMUNICATIONS
                                          CASE NO. 8:20-cv-00048-JVS (JDEx)

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1
2

# TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

A.    Plaintiffs Successfully Move *In Limine* To Exclude Reference To
      Their Attorneys' Involvement In This Case ............................................ 4

B.    Plaintiffs Put Their Attorneys' Involvement At Issue On The
      Second Day Of Trial, But Block Apple From Asking Questions
      Permitted Under The Motion *In Limine* ............................................... 4

C.    Plaintiffs Again Put Their Attorneys' Involvement At Issue On The
      Third Day Of Trial, And Again Attempted To Block Apple From
      Asking Questions Permitted Under The Motion *In Limine* .................. 7

D.    On The Fourth Day Of Trial, Plaintiffs' Witnesses Repeatedly
      Professed An Inability To Discuss The Alleged Trade Secrets—
      Incorrectly Claiming That Was A Subject Just For Lawyers .................. 8

ARGUMENT ...................................................................................................... 9

I.    To Avoid Having Their Witnesses Discuss The Alleged Trade Secrets,
      Plaintiffs Have Relied On Both Sword/Shield Tactics And Incorrect Legal
      Premises ........................................................................................................ 9

      A.    Sword/Shield Tactics ............................................................................. 9

      B.    Inaccurate Statements Of Trade Secret Law ...................................... 11

            1.    Plaintiffs' Claim Is Confined To The Alleged Trade Secrets ....... 11

            2.    Fact Witnesses Are Competent To Testify About The Scope
                  And Meaning Of Trade Secrets ..................................................... 14

            3.    Plaintiffs' Inaccurate Suggestions Of Law Require A
                  Curative Instruction ...................................................................... 16

II.   Mr. Kiani's Selective Disclosures Of Attorney-Client Communications
      Constitute Subject-Matter Waivers Of Privilege Related To The Initiation
      Of This Lawsuit ........................................................................................... 17

      A.    Mr. Kiani's Selective Disclosure Of Attorney-Client
            Communications Constitutes Subject-Matter Waiver ......................... 17

      B.    Plaintiffs' Late-Breaking Subject-Matter Waiver Has Prejudiced
            Apple ................................................................................................... 19

      C.    At A Minimum, Apple Should Be Entitled To Plaintiffs' Relevant
            Attorney Communications And Another Opportunity To Cross-
            Examine Mr. Kiani .............................................................................. 20

Wilmer Cutler
Pickering Hale
and Dorr LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005) ............................................................................. 12

*Brown v. Barbacid*,
276 F.3d 1327 (Fed. Cir. 2002), 276 F.3d ......................................................... 15

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001) ............................................. 21

*Freeman Investment Manegement Co. v. Frank Russell Co.*,
2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ............................................. 14, 16

*Hoist Fitness Systems, Inc. v. TuffStuff Fitness International. Inc.*,
2019 WL 6481307 (C.D. Cal. Aug. 27, 2019) ..................................................... 10

*Imax Corp. v. Cinema Technologies, Inc.*,
152 F.3d 1161 (9th Cir. 1998) ............................................................... 11, 12, 15

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ......................................................................... 11, 13

*Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*,
552 F.3d 1033 (9th Cir. 2009) ............................................................................. 20

*Madrigal v. Allstate Indemnity Co.*,
2015 WL 12748277 (C.D. Cal. Nov. 5, 2015) .................................................... 17

*Natural-Immunogenics Corp. v. Newport Trial Group*,
2018 WL 6138160 (C.D. Cal. Jan. 24, 2018) (Selna, J.).................................... 18

*United States v. Ortland*,
109 F.3d 539 (9th Cir. 1997) ............................................................................... 18

*Ruling Meng v. Ching-Wu Paul Chu*,
643 F. App'x 990 (Fed. Cir. 2016) ..................................................................... 15

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) ............................................................................ 20

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Tennenbaum v. Deloitte & Touche*,
   77 F.3d 337 (9th Cir. 1996) .................................................................... 17

*Vital Pharmaceuticals v. PhD Marketing, Inc.*,
   2022 WL 2284544 (C.D. Cal. Apr. 15, 2022) ............................................ 20, 21

*Weil v. Inv./Indicators, Research & Management, Inc.*,
   647 F.2d 18 (9th Cir. 1981) ..................................................................... 19, 20

**Statutes**

Cal. Civ. Code § 3426.6 ............................................................................. 3

APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURES OF THEIR
ATTORNEY-CLIENT COMMUNICATIONS

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

During the first several days of trial, Plaintiffs have repeatedly put at issue undisclosed attorney-client communications that are highly relevant to the claims and defenses before the jury, and they have wrongly suggested that fact witnesses cannot specifically testify about the alleged trade secrets because they were drafted by lawyers. Plaintiffs have selectively waived privilege over the communications to aid their case while asserting privilege over other facts and circumstances surrounding those communications. Plaintiffs have also misleadingly suggested to the jury that they can prove their claim by vaguely averring to the undisclosed work of lawyers. These tactics are improper. While there likely are greater consequences, at this stage, these actions trigger subject-matter waivers of privilege, they open the door to Apple presenting its theory of the case that the alleged trade secrets were fabricated during and for this litigation, and they require curative instructions about the actual role of lawyers in a case like this.

Plaintiffs' selective waivers and misleading arguments relate to two sets of issues, each of which presents its own problems:

***Creation and meaning of the alleged trade secrets:*** Plaintiffs' first three witnesses (Messrs. Kiani, Diab, and Poeze) continually claimed not to understand what the alleged trade secrets mean—repeating the refrain that explaining the scope and meaning of the alleged trade secrets is a matter for the Plaintiffs' lawyers. Plaintiffs' CEO Joseph Kiani, testified that Plaintiffs' counsel drafted the alleged trade secrets, and he selectively revealed his communications that led Plaintiffs' counsel to draft the descriptions of the purported secrets that are the basis for the misappropriation allegations at trial. Remarkably, Mr. Kiani even suggested he might have worded the descriptions differently to match his ideas about Plaintiffs' business strategies, effectively inviting the jury to disregard the actual language set forth in Plaintiffs' 2019.210 statement and instead apply the scope purportedly in his mind. Messrs. Diab

Wilmer Cutler Pickering Hale and Dorr LLP

and Poeze simply demurred when asked about the alleged trade secrets, treating the topic as something they were not competent to discuss.  Mr. Diab's testimony, as discussed below, is flatly inconsistent with a sworn declaration he earlier submitted to the Court.

During Plaintiffs' opening statement, their lead counsel also asserted that Plaintiffs' lawyers wrote the language for the alleged trade secrets that appear in the juror notebooks—even though Plaintiffs had requested and won a pretrial order precluding Apple from referring to the lawyers' role in drafting the alleged trade secrets. And notwithstanding his own opening statement, Plaintiffs' lead counsel proceeded to falsely and repeatedly accuse Apple of violating that same order during Apple's cross examination of Mr. Kiani.

Plaintiffs' blatant attempts to engage in sword-and-shield gamesmanship trigger privilege waiver.  But another, more fundamental problem has emerged:  Plaintiffs have not even *tried* to connect their factual evidence to the alleged trade secrets, relying on the false premise that Plaintiffs need not do so because the scope and meaning of those alleged trade secrets is solely a matter for lawyers.  Again and again, Plaintiffs' witnesses have suggested exactly that to the jury.

That suggestion is simply false.  While the decision to maintain certain information as a trade secret—or, alternatively, to file a patent on it—is often handled by a corporate legal department, ***the <u>factual</u> meaning of any particular trade secret is a matter for <u>fact</u> witnesses.***  Absolutely nothing prevents an engineer, for example, from testifying about the meaning of a technical trade secret in that engineer's field.  And certainly nothing prevents an engineer ***who supposedly participated in the development of an alleged trade secret*** from testifying about what it means.  It makes no sense that an engineer who supposedly possessed the trade secret is unable to understand or explain it.  Through their witnesses' repeated deferrals to lawyers, Plaintiffs have not just exploited privilege as both a sword and a shield—because the witnesses are testifying about communications with lawyers that have never been produced to Apple—but

1    Plaintiffs have also misleadingly suggested to the jury that only lawyers can truly

2    understand the alleged trade secrets.[1]

3        ***Statute of Limitations:***    Mr. Kiani also testified about the content of

4    communications with Plaintiffs' trial team upon learning about certain Apple patents,

5    and Plaintiffs' opening statement asserted that it was those communications with counsel

6    that triggered the statute of limitations period under the discovery rule of Cal. Civ. Code

7    § 3426.6.  Specifically, Mr. Kiani testified that his lawyers apprised him in October 2019

8    of certain Apple patent filings and those patents' potential relationship to alleged

9    Masimo and/or Cercacor trade secrets—and that these communications led him to

10   authorize filing this lawsuit.  Yet, throughout discovery, Plaintiffs asserted privilege over

11   those same communications and have never produced them to Apple.

12                                          * * *

13       The bottom line is that Plaintiffs have been trying this case based on references to

14   never-disclosed communications with counsel and the false premise that the scope and

15   meaning of the alleged trade secrets is solely the province of lawyers.  As a remedy,

16   Apple respectfully requests:

17       1.    An order requiring Plaintiffs to immediately produce documents related to

18   their alleged reasons for delay, including pre-lawsuit communications about Apple,

19   Messrs. Lamego and O'Reilly, and their 2019 communications with counsel about the

20   Apple patents that supposedly put them on notice of the alleged misappropriation.

21       2.    Permission to present evidence and argument, currently precluded by the

22   Court's motions *in limine* order, concerning the role of Plaintiffs' counsel in drafting the

23   alleged trade secrets.

24

25   _____

26   [1] Although it is not yet time for Rule 50 motions, Plaintiffs' approach is resulting in a
     profound failure of proof—Plaintiffs' witnesses have punted on even trying to offer

27   sufficient factual evidence for multiple issues on which Plaintiffs bear the burden of
     proof.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

3.      A curative instruction to mitigate prejudice arising from Plaintiffs' repeated suggestions that the alleged trade secrets are technicalities for the lawyers and not a proper subject for fact witness testimony.

## BACKGROUND

### A.      Plaintiffs Successfully Move *In Limine* To Exclude Reference To Their Attorneys' Involvement In This Case

Before the trial, Plaintiffs moved *in limine* "to exclude evidence or argument about [their] attorneys' involvement in this case, including preparing trade secret disclosures and interrogatory responses." Dkt. 1297-2 at 1. Plaintiffs argued that "the process for how attorneys … describ[ed] the trade secrets to define the scope" of their misappropriation claim was not relevant and that "the jury could easily be misled or confused" if "Apple were allowed to argue that Masimo's attorneys created the trade secret disclosure." *Id.* at 3. The Court granted this aspect of Plaintiffs' motion *in limine* and precluded Apple from, e.g., "argu[ing] ***that Plaintiffs' attorneys*** copied the patent." Dkt. 1439 at 10.[2]   However, the Court permitted "Apple [to] argue [that] the ['754] patent discloses the identified trade secrets and that the patent predates any evidence of creation or possession of the trade secrets" in support of "Apple's position that the trade secrets identified in the disclosure were copied from the patent."  *Id.*

### B.      Plaintiffs Put Their Attorneys' Involvement At Issue On The Second Day Of Trial, But Block Apple From Asking Questions Permitted Under The Motion *In Limine*

Notwithstanding that Plaintiffs requested and received an order precluding reference to the role of attorneys in defining the alleged trade secrets, Plaintiffs' counsel put the attorneys' role at issue almost immediately.   During opening statements, Plaintiffs' lead counsel represented that the lawyers wrote out the language for Plaintiffs'

---

[2] Emphasis added unless otherwise noted.

Wilmer Cutler
Pickering Hale
and Dorr LLP

alleged trade secrets that appear in the juror notebooks—presumably to suggest their reliability:

> And this information is both business in nature, it's about marketing. Those are in your notebook.  They're written out.  ***The lawyers actually wrote it out to capture the type of information we're talking about.***  And it's technical information as well.

Apr. 5, 2023 AM Tr. 50:7-11.  Thus, Plaintiffs' lead counsel almost immediately did precisely what Plaintiffs moved *in limine* to preclude Apple from doing.

Plaintiffs' first witness, Plaintiffs' CEO Joseph Kiani, then further put communications with counsel at issue while presenting evidence proffered as relevant to the "statute of limitation defense."  Apr. 5, 2023 PM Tr. 50:1-2.  On direct, Plaintiffs' counsel asked a line of questioning calculated to elicit testimony regarding when Mr. Kiani purportedly first learned facts that led him to suspect that Apple had misappropriated Plaintiffs' alleged trade secrets.  Mr. Kiani answered that "[i]n 2019, a series of patents issued to Apple with Dr. [Marcelo] Lamego as the inventor, and it was our stuff, things that was in our notebooks done by [Plaintiffs' employees]."  The questioning proceeded:

> Q:   And after you saw those patents that you just mentioned, what did you do next?
>
> A:   ***I asked Steve Jensen at Knobbe to investigate and if he found we had any right to sue Apple.***
>
> ***Q:   And Steve Jensen right here, my partner?***
>
> ***A:   Yes.***
>
> Q:   Okay.  And what happened next, after you had authorized this investigation?
>
> A:   We sued Apple.

*Id.* at 50:17-51:13.  This testimony followed a line of questioning intended to establish that Mr. Kiani previously trusted Dr. Michael O'Reilly and Dr. Marcelo Lamego.  *See id.* at 38-41, 48-50.  In that context, Mr. Kiani was plainly asserting that he, and by extension Plaintiffs, had no reason to suspect that they had a viable claim against Apple

Wilmer Cutler Pickering Hale and Dorr LLP

for misappropriation of trade secrets until he asked his counsel to investigate the Apple patents and counsel advised that there were grounds to file this suit.

Later, during Apple's cross examination of Mr. Kiani, Plaintiffs' counsel repeatedly interposed "MIL objection[s]" to questions by Apple's counsel that were safely within the scope of the Court's ruling that "Apple may cross-examine witnesses regarding … [the fact] that the patent predates any evidence of creation or possession of the [alleged] trade secrets." Dkt. 1439 at 10. For instance, Plaintiffs' counsel objected to the following cross-examination questions:

> Q:   This list of alleged trade secrets that the jury has at tab 1 in their notebook, that list did not exist before this case; correct?
>
> …
>
> Q:   [I]n terms of the actual language that the jury has … you were not shown any document that has that same language and was created before this lawsuit was filed; true?

Apr. 5, 2023 PM Tr. 105:2-19.

Apple's counsel later explained, outside the jury's presence, that these questions were permissible under the motion *in limine* because they sought only to establish "the chronology of what existed and what didn't." *Id.* at 112, 104-105. The Court agreed, describing as "accurate" defense counsel's statement that he was "faithful to" the Court's motion *in limine* order. *Id.* at 112:12-20.

Yet, the very next morning, Plaintiffs' lead counsel accused Apple's counsel of suggesting "the opposite of truth" in this examination. Apr. 6, 2023 AM Tr. 6:17. This up-means-down argument was yet another attempt to prevent questions on a topic that the Court had ruled was a fair subject for cross examination—and yet another instance of Plaintiffs tactically using their counsel as a sword (in their opening) and a shield (on Apple's cross examinations).

**C.**     **Plaintiffs Again Put Their Attorneys' Involvement At Issue On The Third Day Of Trial, And Again Attempted To Block Apple From Asking Questions Permitted Under The Motion *In Limine***

Throughout the morning of the third trial day, Mr. Kiani and Plaintiffs' counsel continued to rely on communications with counsel as the basis for their positions on (1) the scope of alleged trade secrets and (2) when Plaintiffs discovered the alleged misappropriation.  At the same time, Plaintiffs selectively asserted privilege to block Apple's counsel from inquiring about the factual bases for Plaintiffs' position.



For example, ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████ Apr. 6, 2023 AM Tr. at 35:20-36:3; *see also id. at* 55:13 ████ ██████████████████████████████ .

Plaintiffs' counsel also attempted to use attorney-client privilege as both a sword and a shield during their questioning.  For instance, when Apple's counsel challenged Mr. Kiani to explain ███████████████████████████████████████████ ████ in B2, Mr. Kiani again invoked and relied on his attorneys.  He stated, ██████ ████████████████████████████████████████████████████ ███████████████████████ *Id.* at 54:7-56:1.  At this, Plaintiffs' counsel objected████ ████████████████████████████████████████████████████ ██████████████████████████████ *Id.* at 56:2-9.  Plaintiffs' counsel also (unsuccessfully) objected to examination on the gap between Mr. Kiani's asserted ██████  and the defined scope of the alleged trade secrets.  *See, e.g., id.* at 121:3-6 ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

By contrast, on redirect, Plaintiffs' counsel ***directed his client to answer a question about his interactions with attorneys*** during a patent prosecution, notwithstanding his client's statement that he was "afraid of answering that," because he was "getting into attorney/client privilege." *Id.* at 97:14-20. Mr. Kiani's subsequent testimony (i.e., that he is not aware of the prior art referenced by his patent prosecution attorneys) was apparently intended to advance Plaintiffs' position on the timeliness of their suit. Apple had previously pressed Plaintiffs on their theory that they were put on notice of the alleged misappropriation through Apple's patents that supposedly include their confidential information, and Apple had attempted to impeach Mr. Kiani's assertion that he "first … became aware of the '052 patent… [in] June of 2022." *Id.* at 78:8-20. Mr. Kiani's testimony on re-direct attempted to rehabilitate his prior concession on cross that he was listed as a co-inventor on a Masimo patent application filed on December 6, 2018 that cited as prior art one of the disputed Apple patents (the '052 patent). *Id.* at 82-83.

**D.     On The Fourth Day Of Trial, Plaintiffs' Witnesses Repeatedly Professed An Inability To Discuss The Alleged Trade Secrets— Incorrectly Claiming That Was A Subject Just For Lawyers**

Two witnesses, relevant to the alleged technical trade secrets, testified on the fourth trial day, Mohamed Diab and Jeroen Poeze. Notably, neither of these direct examinations involved ***any*** questions about the alleged trade secrets themselves. Although both witnesses were supposedly involved in developing the information in the alleged trade secrets, neither said he could understand what they mean, repeatedly suggesting that they could testify only about their work and that the alleged trade secrets were for the lawyers. Mr. Diab, for instance, admitted that he did not connect any of his testimony about technical work to the alleged trade secrets. Apr. 7, 2023 Tr. 16-17. Mr. Diab went so far as to say, "I am not an expert ***nor knowledgeable about the trade secret***, I did not talk about the trade secret. I do not have the ability to make that connection."

1  *Id.* at 18:16-19.  This testimony ***directly contradicts*** a sworn declaration that Mr. Diab

2  submitted to the Court in which he quoted and discussed the alleged trade secrets, but

3  when Mr. Diab began to testify regarding that declaration, he was instructed by his

4  lawyer not to answer on privileged grounds.  *See* Ex. 1 at 13-20; Apr. 7, 2023 Tr. 20-21.

5  Mr. Poeze similarly confirmed that while he had testified about confidential work, he

6  was "not sure how that relates to a trade secret."  Apr. 7, 2023 Tr. at 87:21-22.  Mr.

7  Poeze further testified, "I'm not sure what the trade secret is exactly."  *Id.* at 87:13-14.

**ARGUMENT**

8

9  I.   **TO AVOID HAVING THEIR WITNESSES DISCUSS THE ALLEGED TRADE**

10      **SECRETS, PLAINTIFFS HAVE RELIED ON BOTH SWORD/SHIELD TACTICS AND**

11      **INCORRECT LEGAL PREMISES**

12      As the evidence has unfolded, the Plaintiffs have made virtually no effort to

13  connect the hours of witness testimony and growing body of exhibits to the issues in this

14  case—instead relying on references to undisclosed lawyer communications and

15  incorrect characterizations of the role of lawyers in a trade secrets case.   This

16  combination of sword/shield tactics and incorrect legal premises has prejudiced Apple

17  and created a substantial risk of jury confusion.

18      A.   **Sword/Shield Tactics**

19      Before trial, this Court granted Plaintiffs' motion *in limine* to exclude "evidence

20  or argument about [their] attorneys' involvement in this case, including preparing trade

21  secret disclosures[.]"  *See* Dkt. 1297-2 at 1 (motion); Dkt. 1439 at 8-11 (order); *see also*

22  Dkt. 1371 at 2 (Plaintiffs arguing that "Apple cannot point to Masimo's lawyers'

23  involvement in drafting the Section 2019.210 statement to argue that the trade secrets

24  were not possessed by Masimo before Apple's misappropriation."); Mar. 13, 2023 Hr'g.

25  Tr. 38:20-21 (Plaintiffs' counsel stating:  "[T]his is why we filed the motion.  I want the

26  lawyers out of it.").

27

28

However, Plaintiffs' lead counsel put this point directly at issue in his opening statement, revealing that the lawyers wrote Plaintiffs' alleged trade secrets that appear in the juror notebooks.  *See* Apr. 5, 2023 AM Tr. 50:7-11.[3]  Plaintiffs' witnesses have also repeatedly put at issue Plaintiffs' counsel's drafting of the alleged trade secrets, and further suggested—contrary to the law—that the jurors should consider the witnesses' explanation of the alleged secrets regardless rather than the list in their notebooks.

Now, having tactically provided the jury with incomplete descriptions of how their counsel drafted the alleged trade secrets, Plaintiffs have opened the door to questions regarding the nature and scope of Plaintiffs' attorneys' involvement.  *Cf. Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l., Inc.*, 2019 WL 6481307, at *1 (C.D. Cal. Aug. 27, 2019) (noting that defendant "cannot refer to [plaintiffs'] products or advertisements to … rebut [plaintiff's] lost profit arguments (unless and as necessary if [plaintiff] opens the door by referring to its products to support its lost profits theories")); Mar. 13, 2023 Hr'g. Tr. 5-6 (this Court acknowledging the "ground rules" that every motion *in limine* ruling is subject to reconsideration if the moving party "open[s] the door").  Plaintiffs are trying to have it both ways:  relying on self-serving descriptions of their interactions with counsel when it benefits their position but blocking Apple from raising counter-arguments—or seeking additional information—about those same interactions.

Simply put, Apple must be permitted to advance its theory of the case that the alleged trade secrets were fabricated for the purposes of litigation.  Under the Court's motions *in limine* order, Apple is permitted to question witnesses to establish that no list or written documentation of the alleged secrets existed prior to the lawsuit, but Apple is

---

[3] Plaintiffs' counsel later defended "[his] mentioning the lawyers" by arguing "[Apple] proposed a jury instruction where we tell the jurors where the trade secrets came from." April 6, 2023 AM Tr. 8:22-24.  Not so.  Apple's proposed instructions state only that "[t]he law requires a trade secret plaintiff to provide the defendant … with a written description of the alleged trade secrets being asserted[.]"  *See* Dkt. 1500-1 19, 90.

Wilmer Cutler
Pickering Hale
and Dorr LLP

barred from discussing the role of attorneys in creating that list.  Now that Plaintiffs have repeatedly opened the door to the role their lawyers played in crafting these alleged secrets, Apple should be permitted to inquire about that role.

## B.  Inaccurate Statements Of Trade Secret Law

Two of Plaintiffs' trial themes rest on false characterizations of California trade secret law.  First, Plaintiffs' fact witnesses have suggested that the jury can consider misappropriation of supposed trade secrets that are in the witnesses' heads but concededly not described by the written alleged trade secrets that appear in the jurors' notebooks.  Second, Plaintiffs' first three fact witnesses have repeatedly declined to testify about the alleged trade secrets as they have been defined throughout this litigation, asserting that because the alleged trade secrets were drafted by lawyers, only lawyers would be competent to testify about the alleged secrets' scope and meaning. Both propositions are contrary to law.  Plaintiffs' incessant repetition of these inaccurate statements of law is prejudicial to Apple because it is plainly calculated to condition the jury to decide Plaintiffs' CUTSA claim in a manner contrary to law.

### 1.  *Plaintiffs' Claim Is Confined To The Alleged Trade Secrets*

"A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (quotation marks omitted).  Sufficient identification requires that Plaintiffs "describe the subject matter of [each alleged] trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020).  California Code of Civil Procedure section 2019.210, which implements this requirement for CUTSA litigation and which applies to this case, has several purposes.  Among those purposes is that fixing the definition of a trade secret at the outset of litigation "enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the

eve of trial to effectively defend against charges of trade secret misappropriation." *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 834 (2005). And in a highly technical trial like this one, the section 2019.210 definitions must be more precise than in a simpler case:  because Plaintiffs' "trade secrets claim involves a sophisticated and highly complex … system," no "trier of fact [c]ould … discern[] exactly which of the … system's [aspects] were trade secrets," and Apple "could not be expected to prepare its rebuttal to [Plaintiffs'] trade secrets claim without some concrete identification of exactly which [aspects Plaintiffs] allege[] were" misappropriated. *Imax Corp.*, 152 F.3d at 1167.

Plaintiffs' fact witnesses have nevertheless misled the jury by suggesting that the alleged trade secrets are the work of lawyers and that the jury should consider other ideas as part of their misappropriation claim.  For instance, Mr. Kiani insisted that B2, contrary to its text, embraces the concept of ███████████████████████████████████ ████████████████████████████████████ *See* Apr. 6, 2023 AM Tr. 35:15-24. When confronted with the fact that B2 describes no such thing, he parried by saying that ████████████████████████████████████████████████████████ ███████████████████████████ *Id.* at 36:1-3.  When Apple's counsel pressed him on the fact that ██████████████████████████████████████████ Mr. Kiani inaccurately said ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ *Id.* at 36:1-10.  Mr. Kiani did the same with B1.  He argued that ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ *Id.* at 37:12-14.  Mr. Kiani also said that the jury's task is ████████████████████████████████████████████████

A PPLE'S S UPPLEMENTAL T RIAL M EMORANDUM R EGARDING P LAINTIFFS' D ISCLOSURES O F T HEIR A TTORNEY-C LIENT C OMMUNICATIONS

12

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP

1 ███████████████████████████████████ *Id*. at 37:19-22.  Shortly

2 thereafter, when Mr. Kiani was trying to explain his contention that ████████

3 ██████████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ██████████████████████████████████████████████████

7 *Id.* at 54:7-56:21.  When challenged about this disconnect, Mr. Kiani again ███████

8 ██████████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 █████████    *Id.* at 55:1-8.

12      Ninth Circuit decisions applying California trade secret law squarely foreclose

13 Mr. Kiani's suggestion that Plaintiffs' claims somehow encompass a broader system of

14 ████████████████    as distinct from the ██████████████████████ *id.*

15 at 36:1-3.  Section 2019.210 provides that "Plaintiffs must 'clearly refer to tangible trade

16 secret material' instead of referring to a 'system which potentially qualifies for trade

17 secret protection.'"  *InteliClear, LLC*, 978 F.3d at 658.  Nor can they now suggest that

18 the words in their alleged trade secrets are "simply … 'catchall' phrases or … categories

19 of trade secrets they intend to pursue at trial."  *Id.* (quoting *Imax Corp.*, 152 F.3d at

20 1167).  If Plaintiffs' position is that the words Mr. Kiani has attempted to add to their

21 alleged trade secrets are specific examples contained in the "abstract" concepts used to

22 describe their "system," then those alleged trade secrets were not defined "with [the]

23 sufficient particularity," "concrete identification," and "precision" required for

24 "defendants…[,] the district court[,] or [the] trier of fact" to understand, and Plaintiffs

25 have "fail[ed] to separate [the alleged] trade secrets from information known in the

26 industry."  *Id.* at 658-659.  Alternatively, if Plaintiffs' alleged trade secrets were defined

27 with legally "sufficient particularity" to sustain their claim, then "Plaintiff[s'] attempt to

28

1   revise [their] trade secret identification at this stage is simply too little too late."

2   *Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, 2016 WL 5719819, at *12 (S.D. Cal.

3   Sept. 30, 2016).   Either way, Plaintiffs' trial presentation is predicated on false

4   statements of California trade secret law.

5          **2.      Fact Witnesses Are Competent To Testify About The Scope And**

6               **Meaning Of Trade Secrets**

7          Plaintiffs have also advanced a second, equally inaccurate premise:  that fact

8   witnesses are confined to testifying solely about their work in general and that only

9   lawyers are competent to discuss the alleged trade secrets themselves.  This suggestion

10  is false.  This principle has manifested in Plaintiffs' trial presentation in two ways.

11         *First*, Plaintiffs' direct examinations have spent either no time or very little time

12  addressing the alleged trade secrets themselves.   On direct, Jeroen Poeze, one of

13  Plaintiffs' former engineers who supposedly developed certain alleged trade secrets,

14  agreed that he did not spend *any* time discussing *any* of Plaintiffs' alleged trade secrets.

15  Apr. 7, 2023 Tr. 87:9-22.  Mohammed Diab, another engineer who also supposedly

16  developed certain alleged trade secrets, agreed that he never connected *any* aspect of his

17  direct testimony to *any* alleged trade secret.  *Id.* at 16:1-22.  Mr. Kiani, by contrast, did

18  discuss certain of the alleged business strategy trade secrets in his direct testimony but

19  only about half an hour of the two-hour-thirty-nine-minute direct examination

20  specifically concerned the alleged trade secrets.   Apr. 5, 2023 PM Tr. 92:5-18.

21  Furthermore, he improperly used his testimony to try to recast the scope of the alleged

22  business trade secrets, and to encourage the jury not to hew strictly to the actual language

23  in their notebooks.

24         *Second*, Plaintiffs' witnesses have repeatedly suggested, falsely, that only lawyers

25  are competent to discuss scope and meaning of the alleged trade secrets.  Mr. Diab, for

26  instance, testified that he "do[es] not know the trade secrets themselves [*sic*] and what

27  they mean."  Apr. 7, 2023 Tr. 19:12-13.  Instead, Mr. Diab asserted that he is "here to

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURES OF THEIR
ATTORNEY-CLIENT COMMUNICATIONS

14                      CASE NO. 8:20-cv-00048-JVS (JDEx)

testify about the work we have done at Masimo and who was involved in the work that was done at Masimo." *Id*. at 17:1-6.  He punted to "the Court" the job of "explain[ing] to the jury" any "ramification" of his testimony for the alleged trade secrets.  *Id*. Similarly, in testifying about his experiences with Dr. Lamego, Mr. Diab said he did not link any of his testimony to any specific L or D alleged trade secrets because he "do[es] not know those trade secrets," and he "explained what was the work that was done, what was the implication of that work, and how it is linked to our confidential information." *Id.* at 18:12-15.  Indeed, Mr. Diab conceded that he "do[es] not remember reading the list of the trade secrets," noting (before he was cut off by a privilege objection and instruction) that the "only time I remember something close to that is when I did the declaration in this case and our patent attorney explained to me for each one of those trade secrets ---."  *Id.* at 20:20-21:3.[4]  That was an apparent reference to the sworn declaration that Mr. Diab's trial testimony flatly contradicted.

Plaintiffs' suggestion that the alleged trade secrets are technicalities for the lawyers is wrong and calculated to mislead the jury not to apply the evidence to the particular claims in this case.  On a fundamental level, the section 2019.210 identifications are supposed to be written with sufficient particularity to distinguish the alleged trade secrets from matters already known in the field.  *See Imax Corp*., 152 F.3d at 1164-1165.  Nor are non-lawyer fact witnesses incompetent to testify about the alleged trade secrets merely because they were drafted by lawyers; patents likewise are often products of legal drafting, and fact witnesses—particularly alleged inventors—are competent to testify about the specific claims and assertions in the patent.  *See, e.g.*, *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002) (discussing oral testimony of

---

[4] Plaintiffs' counsel similarly elicited testimony suggesting that fact witnesses are not competent to discuss issues of inventorship.  *See, e.g.*, Apr. 7, 2023 Tr. 50:21-52:14. But an alleged co-inventor's testimony is obviously admissible to prove facts concerning the inventorship claim.  *See, e.g.*, *Ruling Meng v. Ching-Wu Paul Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016) (discussing use of alleged inventor's testimony).

an alleged inventor to prove his conception or reduction to practice).  And as the Court already held, "if a trade secret plaintiff does not know what its own trade secrets are, it has no basis for suggesting defendants misappropriated them."  Dkt. 669 at 3; *see also Freeman Inv. Mgmt. Co.*, 2016 WL 5719819, at *11 ("If Plaintiff does not know precisely what its trade secrets are, neither can Defendant or the Court.").[5]   Plaintiffs' misappropriation claim is not about, as Mr. Diab suggested, Plaintiffs' generalized "confidential information."  Apr. 7, 2023 Tr. at 18:12-15.

### 3. *Plaintiffs' Inaccurate Suggestions Of Law Require A Curative Instruction*

Plaintiffs' misappropriation claim concerns only those alleged trade secrets that were timely identified, and the Court long ago warned Plaintiffs not to employ a "strategy" (even if portrayed as an "accident") "to alter its list of trade secret claims" later in the case.  Dkt. 669 at 3.  Plaintiffs cannot now suggest, either expressly or implicitly, that their claim is unbound to the alleged trade secrets or that the alleged trade secrets are mere technicalities only for the lawyers.  Apple will be severely prejudiced if these false implications go uncorrected, because it will raise the risk that the jury's verdict is not confined to the alleged trade secrets actually at issue in the trial.  Accordingly, Apple respectfully requests the following curative instruction:

> **You have heard testimony that Plaintiffs' lawyers were involved in drafting the alleged trade secrets that appear in your juror notebooks.  The list in your notebooks forms the basis of Plaintiffs' trade secret claims.  However, a non-lawyer witness, such as an engineer, who possesses personal knowledge of an alleged trade secret is competent to testify about the alleged trade secret's scope and meaning.  If a witness asserts that he or**

---

[5] The parties' proposed jury instructions both would require Plaintiffs to prove "either that they developed the alleged trade secret[]s or otherwise were in lawful possession of it" to establish the first, possession element of their claim.  Dkt. 1500-1 at 89; *see also id.* at 78.  A failure of proof likely exists if Mssrs. Diab and Poeze, the supposed developers of some alleged trade secrets, cannot even recognize or understand them.

Wilmer Cutler Pickering Hale and Dorr LLP

1

2

**she could not discuss an alleged trade secret because he or she is not a lawyer, that assertion is not correct.**

3    While such a curative instruction would help mitigate the prejudice to Apple, the

4    problems created by these aspects of Plaintiffs' trial presentation run deeper.  Although

5    Plaintiffs' case remains open, Apple believes that there have already been incurable

6    failures of proof on several elements of Plaintiffs claims.  Apple accordingly intends to

7    reraise these and related issues in its Rule 50(a) motion at the appropriate time.

8    **II.    MR. KIANI'S SELECTIVE DISCLOSURES OF ATTORNEY-CLIENT**

9    **COMMUNICATIONS CONSTITUTE SUBJECT-MATTER WAIVERS OF PRIVILEGE**

10   **RELATED TO THE INITIATION OF THIS LAWSUIT**

11         Mr. Kiani repeatedly, selectively, and voluntarily testified on direct, cross, and re-

12   direct about his communications with counsel concerning both the definition of the

13   alleged trade secrets and his supposed discovery of Apple's alleged misappropriation

14   and reliance on his lawyers as the precipitating cause of this lawsuit.

15         **A.    Mr. Kiani's Selective Disclosure Of Attorney-Client Communications**

16   **Constitutes Subject-Matter Waiver**

17         The Ninth Circuit has repeatedly explained that the "principal purpose" of the

18   doctrine of subject matter waiver "is to protect against the unfairness that would result

19   from a privilege holder selectively disclosing privileged communications to an

20   adversary, revealing those that support the cause while claiming the shelter of the

21   privilege to avoid disclosing those that are less favorable."  *Tennenbaum v. Deloitte &*

22   *Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996).  "The Federal Rules of Evidence govern

23   the scope of waiver even if state law provides the rule of decision," and the scope of

24   "[s]ubject matter waiver is governed by Federal Rule of Evidence 502."  *Madrigal v.*

25   *Allstate Indem. Co.*, 2015 WL 12748277, at *5 (C.D. Cal. Nov. 5, 2015) (quotation

26   marks and citation omitted).  Following a "disclosure … made in a federal proceeding,"

27   a subject-matter "waiver extends to an undisclosed communication or information …

28

Wilmer Cutler Pickering Hale and Dorr LLP

if … (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a).  Applying this test, this Court should find subject-matter waiver as to communications with counsel about Plaintiffs' discovery and investigation of disputed Apple patents.

In particular, Mr. Kiani testified that he—and by extension, Plaintiffs—first discovered the alleged misappropriation through communications with counsel about certain Apple patents that Plaintiffs contend disclosed their alleged trade secrets.  *See* Apr. 5, 2023 PM Tr. 50-51.  The import of this testimony is clear: (1) Mr. Kiani did not know any facts that led him to suspect the misappropriation of Plaintiffs' alleged trade secrets until he learned of the Apple patents in 2019, and (2) after Mr. Kiani asked Plaintiffs' counsel to investigate and to advise whether Plaintiffs had a viable claim against Apple based on the information in those patents, Plaintiffs' trial counsel Mr. Jensen advised they did.  Plaintiffs' selective disclosure of these privileged communications are clearly intended to bolster their assertion that the limitations period began running when Mr. Kiani claims to have learned about the issuance of Apple's patents.  Indeed, Plaintiffs' opening treated the incident as the time when they were on notice of the alleged misappropriation, for statute of limitations purposes. *See, e.g.*, Apr. 5, 2023 AM Tr. 52:3-7 ("But it wasn't until October of 2019 that Masimo saw some of these patents beginning to issue, and Mr. Kiani will explain it was in October of 2019 when he saw the patent issue."); Ex. 2, PDX1-52 (opening statement demonstrative with a timeline that highlights "October 2019 – Masimo sees issued Apple patents").

Moreover, to the extent Plaintiffs argue that Mr. Kiani did not expressly disclose the substance of Mr. Jensen's communication, "[e]ven when a party does not explicitly disclose the content of an attorney-client communication, he may waive the privilege implicitly." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997) (citing *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Natural-*

1  *Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6138160, at *5 (C.D. Cal. Jan.

2  24, 2018) (Selna, J.) (holding that a party had "impliedly waived the attorney-client

3  privilege because they have placed the information supporting those defenses at issue").

4  Here, the content of Mr. Jensen's advice (that Plaintiffs had a viable misappropriation

5  claim against Apple) is both readily apparent from context and a critical piece of

6  evidence to Plaintiffs' response to Apple's statute of limitations defense.  Nor does it

7  matter whether Plaintiffs had the "subjective intent" to waive privilege, because

8  "'inadvertence' of disclosure does not as a matter of law prevent the occurrence of

9  waiver." *Weil*, 647 F.2d at 24.

10      **B.      Plaintiffs' Late-Breaking Subject-Matter Waiver Has Prejudiced**

11              **Apple**

12      Plaintiffs' selective disclosures of attorney-client communications for the first

13  time ***after trial has begun*** comes as a surprise.  In discovery, Plaintiffs asserted privilege

14  over these same communications upon which they have now relied, preventing Apple

15  from discovering information that has now become highly relevant to the factual

16  disputes at trial.  For instance, in response to Apple's Interrogatory No. 23, which

17  sought, *inter alia*, "the circumstances and dates relating to [Plaintiffs'] first awareness

18  of each of the Apple Patents," Plaintiffs invoked privilege to avoid providing a detailed

19  response to Apple's interrogatory asking about Plaintiffs' discovery of the disputed

20  patents.  Dkt. 580 at 8-9.  The Special Master subsequently denied Apple's motion to

21  compel additional detail.  *Id.*  Moreover, at the motion *in limine* stage, Plaintiffs

22  successfully moved to exclude any reference to their counsel having drafted the alleged

23  trade secrets, even though at trial Mr. Kiani sought to shift responsibility to his attorneys

24  for the overbreadth of the alleged trade secrets.  *See supra* pp. 7, 12-13.

25      Mr. Kiani has now left the stand, having wielded Plaintiffs' attorney advice as a

26  sword, while simultaneously shielding from Apple the facts and circumstances

27  surrounding that advice.  But Plaintiffs "cannot be allowed, after disclosing as much as

28

1  [they] please[], to withhold the remainder." *Weil*, 647 F.2d at 24.  Accordingly, the

2  "fairness principle" of "preventing [Plaintiffs] from using the privilege as both a shield

3  and a sword" requires the Court to hold that Mr. Kiani's testimony "constitutes waiver

4  of the privilege as to all other such communications on the same subject[s]."  *United*

5  *States v. Sanmina Corp.*, 968 F.3d 1107, 1116-17 (9th Cir. 2020) (quoting *Weil*, 647

6  F.2d at 24).

7      **C.     At A Minimum, Apple Should Be Entitled To Plaintiffs' Relevant**

8              **Attorney Communications And Another Opportunity To Cross-**

9              **Examine Mr. Kiani**

10          Given that trial is already in progress, Apple submits that it is entitled to

11  immediate remedies.  Plaintiffs should be ordered to immediately disclose documents

12  falling within the scope of their selective waiver that were previously withheld on

13  privilege grounds.  The Ninth Circuit has made clear that when a party's defense is

14  "based on the advice of its attorneys, [the opposing party] should have had access to []

15  otherwise privileged attorney-client communications." *Kaiser Found. Health Plan, Inc.*

16  *v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1042-43 (9th Cir. 2009).  "[I]t would be unfair to

17  allow [Plaintiffs] to present new evidence in support of [their position that triggers a

18  subject-matter privilege waiver] when [they have] prevented [Apple] from

19  discovering … information regarding relevant attorney-client communications." *Vital*

20  *Pharms. v. PhD Mktg., Inc.*, 2022 WL 2284544, at *2-3 (C.D. Cal. Apr. 15, 2022).  And

21  to have any hope of mitigating Apple's prejudice, any such disclosure must come in time

22  for Apple to use the documents to conduct a supplemental cross-examination of Mr.

23  Kiani.

24          Should Plaintiffs fail to produce all documents falling within the scope of the

25  waiver in time for Apple to use these materials at trial the Court should instruct the jury

26  to disregard any of Plaintiffs' evidence or argument—including Mr. Kiani's testimony—

27  about the issues within the scope of any subject-matter waiver.  The Ninth Circuit has

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURES OF THEIR
ATTORNEY-CLIENT COMMUNICATIONS

20                              CASE NO. 8:20-cv-00048-JVS (JDEx)

confirmed that where a party sought to advance at trial a theory that depends on testimony about "the advice of his attorney, while at the same time refusing to answer questions regarding [the] relevant communications with counsel until the 'eleventh hour,' … the district court [i]s within its discretion in precluding [the party] from invoking" that theory.  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001).  The usual remedy "where the party claiming privilege during discovery wants to testify at the time of trial" is to "ban that party from testifying on the matters claimed to be privileged." *Id.* (quoting William A. Schwarzer, et al., *Federal Civil Procedure Before Trial*, ¶ 11:37 at 11-29 (2000)); *see also Vital Pharms.*, 2022 WL 2284544, at *3 ("Given the imminent trial date, the Court finds it necessary to preclude Defendant from presenting new evidence related to its advice of counsel defense rather than allowing further discovery.").  But since Mr. Kiani has already testified, and Plaintiffs relied on privilege as a sword and a shield, this Court may "fashion remedies to prevent surprise and unfairness to the party seeking discovery." *Columbia Pictures Television, Inc.*, 259 F.3d at 1196.[6]

## CONCLUSION

Given the manifest prejudice from Plaintiffs' trial conduct detailed above, Apple respectfully requests the remedies set out above—and any other appropriate relief fashioned by the Court.

---

[6] Apple reserves the right to propose additional limiting instructions should its prejudice remain unaddressed at the time of the charge conference.

Dated:  April 8, 2023                                Respectfully submitted,


                                                     MARK D. SELWYN
                                                     JOSEPH J. MUELLER
                                                     AMY K. WIGMORE
                                                     JOSHUA H. LERNER
                                                     SARAH R. FRAZIER
                                                     NORA Q.E. PASSAMANECK
                                                     THOMAS G. SPRANKLING
                                                     WILMER CUTLER PICKERING HALE AND
                                                     DORR LLP

                                                     BRIAN A. ROSENTHAL
                                                     GIBSON, DUNN & CRUTCHER LLP

                                                     KENNETH G. PARKER
                                                     HAYNES AND BOONE, LLP



                                                     By:  */s/ Mark D. Selwyn*
                                                           Mark D. Selwyn


                                                     *Attorneys for Defendant Apple Inc.*

Wilmer Cutler
Pickering Hale
and Dorr LLP

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 6,860 words, which:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated: April 8, 2023          Respectfully submitted,

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: /s/ Mark D. Selwyn
      Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING PLAINTIFFS' DISCLOSURES OF THEIR ATTORNEY-CLIENT COMMUNICATIONS
23
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler Pickering Hale and Dorr LLP