Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MASIMO'S CONSOLIDATED OPPOSITION TO APPLE'S TRIAL MEMORANDA REGARDING MASIMO'S ALLEGED DISCLOSURES OF ITS ATTORNEY-CLIENT COMMUNICATIONS**<br><br>Hon. James V. Selna |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page No.**

I.  ARGUMENT..................................................................................................1

    A.  Apple's Brief Is Untimely and Should Be Struck.................................1

    B.  Masimo Witnesses Never Suggested They Could Not Testify About The Technical Subject Matter Captured By The Trade Secret Descriptions.................................................................................1

        1.  Fact Witnesses Need Not Opine On Trade Secret Definitions..............................................................................1

        2.  Apple Declined To Seek Facts During Discovery.....................2

        3.  Apple Continues To Avoid The Facts At Trial .........................3

    C.  Apple's "Fabrication" Theory Requires Testimony on the Facts From the Technical Witnesses ..................................................4

    D.  Apple's Accusations Against Masimo Are Baseless............................5

    E.  Apple—Not Masimo—Violated The MIL Order ................................6

        1.  Masimo's Brief Comment in Opening Statement Was Proper.......................................................................................6

        2.  Apple Has Repeatedly Violated the MIL Order.......................8

        3.  Apple's Attacks on the Credibility of Masimo Witnesses Is for the Jury ..........................................................................12

    F.  Masimo Did Not Waive Its Attorney-Client Privilege .....................12

        1.  Counsel Did Not Intend to Elicit the Testimony at Issue.........12

        2.  Kiani Did Not Disclose Privileged Communications..............13

        3.  Apple Has Not Shown Implicit Waiver....................................15

        4.  Apple Exaggerates the Breadth of any Alleged Waiver..........16

    G.  Apple's Remedy For Documents Was Addressed Long Ago ...........17

    H.  Masimo, Not Apple, Deserves a Curative Instruction ......................18

II. CONCLUSION ...........................................................................................19

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

*AngioScore, Inc. v. TriReme Medical, Inc.*,
4
    2014 WL 7188779 (N.D. Cal. Dec. 16, 2014) ..................................................2

5

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) ...............................................................................17

6

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
7
    2018 WL 1569703 (N.D. Cal. Mar. 30, 2018) .....................................................7

8

*Chicago Bd. Options Exchange, Inc. v. Int'l Sec. Exchange LLC*,
    2008 WL 3285751 (N.D. Ill. Aug. 8, 2008) ........................................................13

9

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*,
10
    2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ......................................................6

11

*Guidiville Rancheria of Cal. v. United States*,
    2013 WL 6571945 (N.D. Cal. Dec. 13, 2013) ....................................................16

12

*Hoist Fitness Sys., Inc. v. Tuffstuff Fitness Int'l, Inc.*,
13
    2018 WL 8193374 (C.D. Cal. May 14, 2018)..............................................13, 14

14

*Mendenhall v. Barbara-Greene Co.*,
15
    531 F. Supp. 948 (N.D. Ill. 1981)........................................................................15

16

*Microvention, Inc. v. Balt USA, LLC*,
    2021 WL 4840786 (C.D. Cal. Sept. 8, 2021) ..............................................1, 2, 3

17

*Murata Mfg. Co. Ltd. v. Bel Fuse, Inc.*,
18
    2007 WL 781252 (N.D. Ill. Mar. 8, 2007) .........................................................14

19

*Natta v. Hogan*,
    392 F.2d 686 (10th Cir. 1968) ............................................................................15

20

*Natural Immunogenics Corp. v. Newport Trial Grp.*,
21
    2018 WL 6138160 (Jan. 24, 2018)................................................................15, 17

22

*United States v. Amlani*,
23
    169 F.3d 1189 (9th Cir. 1999) ............................................................................15

24

*United States v. Miller*,
    874 F.2d 1255 (9th Cir. 1989) ............................................................................14

25

*Yellowstone Women's First Step House, Inc. v. City of Costa Mesa*,
26
    2018 WL 6164305 (C.D. Cal. May 9, 2018)...................................................5, 16

27

28

1

# TABLE OF AUTHORITIES
## (cont'd)

**Page No(s).**

## OTHER AUTHORITIES

Cal. Civ. Code § 3426.6 .............................................................. 15

Fed. R. Civ. P. 11 ................................................................ 14, 17

Fed. R. Civ. P. 30 .................................................................. 2

Fed. R. Civ. P. 37 .................................................................. 3

Local Rule 11-6.1 .................................................................. 21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. **ARGUMENT**

## A.   **Apple's Brief Is Untimely and Should Be Struck**

Apple requested permission to file a supplement to its prior brief.  Trial Tr. Day 3, Vol. 2 at 115:20-116:10.  The Court ordered Apple to file that supplement by Friday, April 7.  Dkt. 1546.  The Court ordered Masimo to respond by 5pm on Sunday, April 9.  *Id*.  On Friday, April 7, Apple counsel emailed Chambers offering excuses for why Apple could not make the Court-ordered deadline.  Ex. 1.  That email represented "Apple will submit its supplement as soon as it is able to tomorrow."  *Id.*

On Saturday, April 8, minutes before midnight, Apple filed its "supplemental" brief.  That 21-page brief was no supplement, but rather appears to have superseded Apple's prior 5-page brief.  By filing its lengthy brief 24 hours late, Apple took 58% of Masimo's briefing time, and gave Masimo 17 hours to respond.  The Court should deny Apple's grossly late motion.  Regardless, Masimo used its Easter Sunday to meet its Court-ordered deadline anyway.  Because of Apple's misleading cross-examinations as explained below, the Court should give the jury Masimo's proposed curative instruction set forth in Section H.

## B.   **Masimo Witnesses Never Suggested They Could Not Testify About The Technical Subject Matter Captured By The Trade Secret Descriptions**

### 1.   **Fact Witnesses Need Not Opine On Trade Secret Definitions**

In the first sentence of its brief, Apple complains that Masimo fact witnesses could not testify specifically about the trade secrets "***because they were drafted by the lawyers***."  Memo. at 1.  This is incorrect.  The witnesses were merely reluctant to opine on whether any information satisfies the legal definition of a trade secret.  *See, e.g.*, Trial Tr. Day 4 at 35:3-9, 33:16-22.  In another case, this Court recently denied a motion to compel that would have required a lay witness to similarly opine on whether a Section 2019.210 statement met the "reasonable particularity" standard under CUTSA.  *See Microvention, Inc. v. Balt USA, LLC*, 2021 WL 4840786, at *4 (C.D. Cal. Sept. 8, 2021) ("Lay witnesses should not be expected to incorporate such legal standards into their

responses"); *see also AngioScore, Inc. v. TriReme Medical, Inc.*, 2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014).   The *Balt* court observed that "making this determination would involve an inquiry into California case law, statutory history, and other tools for statutory construction." *Balt*, 2021 WL 4840786, at *4.  The same is true here.

Apple cites no authority for its views of the trade secret law in California.  Rather, it treats the trade secret descriptions in the jury notebook (hereinafter, "TSD") like a patent claim and the Masimo fact witnesses as if they were the sole inventors of the claimed invention.  The TSD is information, learned by collective efforts of Masimo's fact witnesses.  Nothing requires fact witnesses to explain the words used in the TSD or connect those words to the evidence.  As Apple knows, experts—not fact witnesses— will apply the TSD to the factual evidence presented in the case.  Experts make the connection that Apple seems to believe should be made by lay witnesses.  Fact witnesses discuss facts.  Experts give opinions.

### 2.     Apple Declined To Seek Facts During Discovery

During depositions, the witnesses explained they were prepared to testify about the technology at issue, but Apple refrained from asking those questions.  Instead, Apple repeatedly asked those witnesses for Masimo's legal contentions, such as "What does Masimo and Cercacor consider to be their trade secret?"  Apple asked some form of that question at least 30 times of Diab.  *See, e.g.*, Ex. 3 at 11:25-12:7, 12:8-11, 17:17-19, 18:2-4, 66:3-5, 95:20-22, 96:1-2, 96:16-21, 163:25-164:4, 235:24-25, even though the Special Master instructed that contention questions are improper for fact witnesses (Dkt. 894 at 5).   The Special Master explained "contention questions are more appropriately raised via interrogatory, and it is unfair to make a single Rule 30(b)(6) witness, the representative of the party, attempt a response to questions about the position of the party that ***usually require entire teams of lawyers and experts to adequately answer***." *Id.* (quoting C.D. Cal. case).  This admonition came as a result of the parties' unsuccessful motions to compel Rule 30(b)(6) witness to recite legal contentions.  *Id.* at 5-6 (denying Apple's motion and Masimo's contingent motion if

Apple succeeded).

On summary judgment, Apple made the same argument it is now making: Masimo could not prevail because its witnesses "deferred to their lawyers" on whether Masimo's information met the legal definition of a trade secret.  Dkt. 1221-1 at 4.  The Court denied Apple's motion, explaining, "Plaintiffs have presented ample testimonial and documentary evidence showing that they developed or used the techniques, procedures, or strategies prior to 2014."  Dkt. 1283 at 13.  The Court then cited lab notebooks, Masimo documents, and expert opinions from Masimo's technical expert.  *Id.*

### 3.    <u>Apple Continues To Avoid The Facts At Trial</u>

At trial, Apple continued to ask whether the witnesses had seen the TSD or had any opinions on what Masimo or Cercacor considers to be a trade secret.  *See, e.g.*, Trial Tr. Day 4 at 33:18-35:22, 36:22-37:11.  The reason Apple could not confront the witnesses with the information underlying the trade secrets is because Apple did not take proper fact depositions.  Indeed, Apple rarely showed witnesses the Section 2019.210 statement.  Apple was apparently more interested in arguing with fact witnesses and trying to construct a Rule 37 failure-to-disclose strategy.

During trial, Apple largely declined to show the witnesses, particularly Diab and Poeze, the TSD.  Indeed, the only time Apple confronted a witness concerning possession of the trade secrets is when Apple's counsel confronted Poeze about ████  ██████████████████████████████████████████████████████████████  Trial Tr. Day 4 at 104:5-107:25.

Contrary to Apple's suggestion, Diab was perfectly willing to discuss any aspect of the technology underlying the TDS and he did.  Trial Tr. Day 3, Vol. 2 at 39:4-40:16, 63:5-25, 70:20-74:5.  And when Apple cross-examined him on whether he testified about the trade secrets on direct, he explained, "Since I do not know those trade secrets, I explained what was the work that was done, what was the implication of that work and how is it linked to our confidential information" – and Apple did not show him the TSD. Trial Tr. Day 4 at 18:9-19:21.

Apple made the tactical decision not to show Diab the trade secret language during cross-examination, and now seeks to blame Diab for not connecting his technical work at Masimo to any alleged trade secret. Apple's failed trial strategy does not justify any relief.

When cross-examined as to whether his technical explanations overlapped with any of the trade secrets, Diab explained "[t]here is no question that that confidential information ultimately would overlap with some of those trade secrets you are talking about that. I do not know that connection. I just talked about the confidential information. If this confidential information is part of the trade secret, then we talked about it indirectly." April 7 at 8:13-8:14. Apple ignored the overlap identified by Diab.

Apple next suggests Diab's declaration "flatly contradicted" his trial testimony. Dkt. 1556-1 at 15:13. If that were true, Apple could have cross-examined Diab on any such inconsistency. Apple again chose not to. Had Apple shown the jury Diab's declaration, the jury would have learned that Diab "[had] not been asked to, and will not, opine on the legal standards for a trade secret." Dkt. 1556-2 ¶ 36. It also would have learned that Diab's declaration addressed the *value* of various trade secrets—not whether they met the legal definition of a trade secret. *Id.* ¶¶ 39-41, 48-50. The declaration is perfectly consistent with Diab's trial testimony.

Nothing prevented Apple from cross examining Masimo's witnesses about the TSD. For example, Apple confronted Kiani with the business trade secrets and one technical trade secret (D10). Trial Tr. Day 3, Vol. 1 at 67:18-70:25. Apple cannot now complain that it was unable to confront Masimo's witnesses with the TSD on cross examination.

## C.    Apple's "Fabrication" Theory Requires Testimony on the Facts From the Technical Witnesses

Apple's admitted theory of the case "that the alleged trade secrets were fabricated during and for this litigation" requires Apple to prove the notebooks and documentary evidence from the fact witnesses do not correspond to the TSD. Memo. at 10. The Court

instructed Apple on how to properly pursue this theory by attempting to show a lack of possession of the trade secrets. The Court specifically held "Apple may cross examine witnesses regarding a lack of *pre-litigation* documents without reference to the trade secret disclosure." Dkt. 1469 at 10. The Court also held that "Apple may argue the patent discloses the identified trade secrets and that the patent *predates* any evidence of creation or possession of the trade secrets." *Id.* As explained above, Apple made no attempt to question witnesses about pre-litigation documents (except for cross of Poeze concerning the ███████████ mentioned below).

Instead, Apple's counsel flipped the chronology by using a "lost-and-found" analogy to imply Masimo wrote its business and marketing trade secrets *after* seeing Apple's documents. April 5 Tr. at 104:3-105:24. The Court sustained Masimo's two objections to this line of questioning. *Id.* at 105:2-7, 105:16-23. As discussed in more detail below, Apple's analogy is improper and inconsistent with the true facts because Masimo described the trade secrets *before* Apple provided any discovery.

### D.    Apple's Accusations Against Masimo Are Baseless

Apple's accusation that Masimo's trial themes rest on false characterizations of trade secret law is frivolous. Memo. at 11. *First*, Masimo and its fact witnesses *never* suggested the jury should disregard the TSD. Indeed, Masimo's counsel in opening emphasized the TSD in the juror's notebooks. Trial Tr. Day 2, Vol. 1 at 50:7-11. Moreover, Kiani never suggested the TSD does not apply. He explained merely that the precise words used were not his own and were written by the lawyers to capture his strategies. Trial Tr. Day 3, Vol. 1 at 36:6-10. And he repeatedly said the TSD did capture his strategies. Trial Tr. Day 2, Vol 2 at 75:16-76:3, 79:20-80:9, 81:15-82:3, 84:4-13. Contrary to Apple's suggestion, Kiani never suggested that his explanation should somehow control over the TSD. Memo. at 12.

Moreover, Apple cannot claim Kiani's explanation of the TSD are new. For example, Apple complains that Kiani described ████████████████████ ████████████████████████████████████ Memo at 13. But when

confronted with the language of B2 ***during his deposition***, Kiani provided the **same** explanation.  Dkt. 1112-2 (Palmatier Expert Report) ¶ 264 (explaining how Masimo's development docs were consistent with B2 and Kiani's explanation of B2 as ███████ ████████████████ (quoting Kiani Tr. at 310-312).  The parties' experts fully addressed this explanation of B2 in their expert reports.  *See id*.; *see also* Dkt. 1217-3 (Kivetz Rebuttal Report) ¶ 104 (Apple's expert disputing Kiani's testimony that B2 ████████████████████████████  The trial tracks the parties' discovery disclosures and expert testimony on this and other issues.  There is nothing new here.

**Second**, as explained in detail above, Masimo's three fact witnesses never "declined to testify about the alleged trade secrets" "***because*** the alleged trade secrets were drafted by lawyers" and "only lawyers would be competent to testify about the alleged secrets' scope and meaning."  Memo. at 11.  Masimo's witnesses testified as to the facts they knew about the underlying technology that is the subject of the TSD.

**Third**, Apple's argument that Masimo's "propositions are contrary to law" is baseless.  Apple cites no authority for its views of the trade secret law in California.  The cases Apple does cite relate to disputes over the drafting of the TSD.  Apple cites cases (like *Freeman*) dismissing claims on summary judgment because of the multitude of trade secrets asserted (100 pages long) and the lack of notice to the defendant.  *Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, 2016 WL 5719819, at *12 (S.D. Cal. Sept. 30, 2016).  Apple cites all federal cases but one.  It even relies on patent cases dealing with patent claims.  However, the Section 2019.210 process is state procedure which federal courts use at their discretion, as did this Court in this case.

Apple's complaints about the descriptions are now untimely.  These descriptions have already been approved by the Court and the parties used the descriptions to guide the breadth of discovery.  Moreover, the Court rejected Apple's summary judgment motion, which attacked some of the descriptions for vagueness and generality.  Dkt. 1283 at 14 ("described too generally" or "with sufficient particularity").

**E.**     **Apple—Not Masimo—Violated The MIL Order**

    **1.**     **Masimo's Brief Comment in Opening Statement Was Proper**

Apple argues Masimo's lead counsel "opened the door" to questions regarding the "nature and scope" of Masimo's attorneys' involvement in the litigation when he described the contents of the juror notebooks during opening statement.  Memo. at 10. As a result, Apple maintains that Masimo should not have benefit of the Court's order granting Masimo's motion *in limine* ("MIL Order").

Apple's argument misconstrues this Court's order on that motion.  The Court ordered that "Apple may not suggest that attorney preparation of the disclosure document is probative of ***creation or possession*** of the underlying trade secrets." Dkt. 1469 at 10 (emphasis added).

This Court found that:

> ***Protracted evidence and argument*** concerning Plaintiffs' attorneys' preparation of the § 2019.210 trade secret disclosure is irrelevant and inadmissible.  The fact that attorneys prepared a trade secret disclosure does not tend to prove or disprove the underlying trade secrets ***are valid and protectable***.

*Id.* at 8 (emphasis added) (citing *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1569703, at *1 (N.D. Cal. Mar. 30, 2018)).

Masimo's Counsel's statement merely described the contents of the juror notebooks, that the descriptions are for the jury's benefit, and that they are not evidence (in contrast with the patents, which are admitted exhibits).  Indeed, the Court's MIL Order held that "the trade secret disclosure merely serves as an identification of the trade secrets for litigation purposes."  Dkt. 1469 at 9.  Because the descriptions are not evidence, they certainly cannot be "probative of creation or possession of the underlying trade secrets."  *Id.* at 10.  Masimo did not violate the MIL Order.

Moreover, the statement essentially tracks the parties' proposed jury instruction on the creation of a statement pursuant to Section 2019.210.  The parties' competing proposals both instruct that "the law requires a trade secret plaintiff to provide the

1    defendant during the litigation with a written description of the [alleged] trade secrets
2    being asserted so that the defendant knows what it is accused of misappropriating."  Dkt.
3    1501-1 at 86, 90.   This instruction informs the jury of the obvious "attorney
4    involvement" in drafting the trade secret descriptions after filing the lawsuit.  Counsel's
5    statement that "the lawyers actually wrote it" is consistent with this instruction.

6    **2.      Apple Has Repeatedly Violated the MIL Order**

7    Unlike Masimo, Apple repeatedly violated the MIL Order.  Just fifteen minutes
8    into its cross examination of Masimo's first witness, Kiani, Apple's attorney used a
9    "lost-and-found" analogy to suggest Masimo wrote the trade secret description only
10   *after* seeing Apple's documents:

11   Q     Now, have you ever been to a lost and found at a store?
12   A     No.

13   Q     You've never been to one?
14   A     Not in a store.

15   Q     Let me just try to explain a little bit about how it works. I have a
16         couple questions for you. You go to a lost and found, and if you
         think you lost something in the store, sometimes they ask you to fill
17         out a slip that describes what you lost and they'll keep track of it. If
         it shows up, hopefully they'll give you a call. Are you with me so
18         far?
19   A     I am.

20   Q.    Now, typically, they don't let you go in the back room and just
21         rummage around, see what's in there *and then write something*
         *describing what you lost*.  They typically don't let you do that.
22   A.    I don't know. I've never been to a lost and found at a store.
23

24   Q.    Let me tell you this. The reason for that is, they are reluctant to let
         people describe things that they see in the box as their own without
25         saying they're their own *before they walk into the lost and found*.
         Does that make sense to you so far, sir?
26   A.    Yes, it does.
27

28

> Q.    This list of alleged trade secrets that the jury has at tab 1 in their notebook, ***that list did not exist before this case***; correct?
>
> A.    I think it did.[1]
>
> MR. RE:    Your honor, MIL objection.
>
> THE COURT:    Sustained.

Trial Tr. Day 2, Vol. 2, at 104:3-105:7 (emphasis added).  As Masimo earlier explained to the Court, this analogy improperly implies the exact opposite of the true sequence of events.  Trial Tr. Day 3, Vol. 1, at 8-9.  Masimo drafted the trade-secret descriptions ***before*** discovery had commenced and before documents were produced.  Indeed, the Court sustained an objection that Apple was violating the MIL Order.  Trial Tr. Day 2, Vol. 2 at 105:6-7.

Apple's analogy was also incorrect because "the documents that pertain to the business and marketing strategy trade secrets were the ones that were untimely produced by Apple."  April 6 Tr. at 6:7-10; *see also* Dkt. 1280 at 16.  As a result, the Court directed Masimo to "take it up on redirect, Mr. Re, if you want to establish the chronology."  April 6 Tr. at 8:7-8.

Masimo followed the Court's instructions and explored this issue on redirect: Kiani testified that his explanation of these trade secrets occurred before he had access to O'Reilly's notebooks.  April 6 Tr. at 105:8-106:10, 107:3-14.  On re-cross by Apple, Kiani again reiterated that the wording of the TSD was prepared after he explained to his counsel what he believed O'Reilly took.  April 6 Tr. at 55:25-56:1.  Because Apple opened the door to testimony regarding the chronology of the trade secret preparation, it cannot complain now about the record that has been developed.

---

[1] Kiani's response is an example showing why lay witnesses should not be questioned about various events occurring through the course of litigation, such as when litigation documents (e.g. Section 2019.210 statement) were drafted or served.  This was the exact problem Masimo pointed out to the Court when discussing the impropriety of the lost-and-found analogy.  Trial Tr., Day 3, Vol. 1, at 8–9.

Apple also violated the MIL Order by questioning Kiani on ████████████ ████████████████████████████████████████████████████ ██████████████████████████ *See* Trial Tr. Day 3, Vol. 1 at 67:22-70:22.



1    Trial Tr. Day 3, Vol. 1 at 67-70. ████████████████████████████

2    ████████████████████████████    Apple was clearly suggesting that Masimo took

3    information from Apple and that the lawyers are somehow responsible.

4         Apple went even further with Masimo's second witness, Mohamed Diab

5    by claiming Masimo, not Masimo's attorneys, copied Apple's patents:



12   Trial Tr., Day 4 at 47:12-14, 47:16-18 (emphasis added).  The MIL Order prohibits

13   Apple from asking these questions: "Apple need not argue that Plaintiffs' attorneys

14   copied the patent."   Dkt. 1469 at 10.   Indeed, the Court agreed that this line of

15   questioning violates the MIL Order.  Trial Tr., Day 4 at 72:8-20.  The MIL Order told

16   Apple what it could do: attempt to show "the patent discloses the identified trade secrets

17   and that the patent predates any evidence of creation or possession of the trade secrets."

18   Dkt. 1469 at 10.  Apple did not follow the order.

19        Apple's attorneys also know that Masimo drafted the descriptions for the bulk of

20   the asserted trade secrets before Apple produced a single document in discovery.   In

21   fact, this Court may recall that Apple violated numerous court orders by refusing to

22   produce *any* confidential documents until after Masimo described its trade secrets under

23   Section 2019.210.  *See* Dkt. 123-1 at 2-4 (quoting the Court's admonition that "Now is

24   the time for Apple to act: the Court expects prompt and full compliance").   Thus, Apple

25   knows its cross-examination not only violates the MIL Order but also misleads the jury

26   to believe Masimo drafted the trade secret descriptions to match Apple's documents.

27   Apple's misdirection, especially if left uncured, is grossly unfair.

28

Masimo's suspicions of unfairness from jury confusion caused by Apple have been confirmed by some of the media coverage about this case. Obviously, reporters are in the courtroom and reporting on what they are observing. An article published in Law360 entitled "Masimo Co-Founder Hazy on Company's Claims in $3.1B Apple Suit" relays Apple's questioning of Diab, that "plaintiffs have copied the language in their alleged trade secrets from Apple's patents covering the smartwatch's health and wellness features." Ex. 5.

Apple argues that it should be permitted to advance its theory of the case that the trade secrets were allegedly "fabricated for the purposes of litigation." Memo. at 5. But the MIL Order prohibited Apple from arguing that Masimo's attorneys copied the patent. Dkt. 1469 at 10. That is exactly what Apple asked the witnesses so that it can promote its theory of the case. The order allows Apple to "cross-examine witnesses regarding a lack of pre-litigation documentation **without reference to the trade secret disclosure**." *Id.* Apple's questions clearly violated all aspects of the MIL Order including the Court's requirement that any argument about "opening the door" must first be presented to the Court outside the presence of the jury. Mar. 13 Tr. at 18:2-4 ("No doors are opened unless the Court says they have been opened. That determination is made outside the presence of the jury."). As the Court explained, the "trade secret disclosure identifies the trade secrets for litigation purposes but has **no** tendency to prove or disprove creation or possession at the time of the alleged misappropriation…" *Id.* at 9-10.

### 3.   Apple's Attacks on the Credibility of Masimo Witnesses Is for the Jury

Apple makes numerous arguments attacking the credibility of Masimo's fact witnesses. For example, Apple disparages Diab because he was unable to confirm whether his testimony related to the trade secret descriptions, because he had never seen them. Apple relies on a prior declaration by Diab. Memo. at 2. Apple suggests Diab's declaration "flatly contradicted" his trial testimony. Dkt. 1556-1 at 15:13. If that were

true, Apple could have cross-examined Diab on any such inconsistency.  Apple again chose not to.  Those issues, such as credibility, are within the province of the jury.

**F.   Masimo Did Not Waive Its Attorney-Client Privilege**

Apple argues Masimo waived the attorney-client privilege when Kiani testified that he asked counsel to investigate a potential lawsuit against Apple.  Apple is wrong for several reasons described below.

### 1.   Counsel Did Not Intend to Elicit the Testimony at Issue

Apple claims Masimo's counsel asked questions intending to imply "after Mr. Kiani asked Plaintiffs' counsel to investigate and to advise whether Plaintiffs  had a viable claim against Apple based on the information in those patents, Mr. Jensen advised they did."  Memo. at 18.  Apple's speculation is baseless.  Masimo's counsel never intended or expected to elicit any such testimony.  Decl. of Joseph Re ¶¶ 2-6.

### 2.   Kiani Did Not Disclose Privileged Communications

Apple broadly argues that several of Masimo's witnesses rely on "references to undisclosed lawyer communications."  *See* Memo. at 1, 9, 17.  Apple addresses purported waiver of attorney-client privilege only by Kiani.  Memo. at 17-21.

Kiani disclosed no more than Apple already knew from Masimo's March 10, 2021 interrogatory response.  Ex. 2 at 14.  Apple's interrogatory sought the dates when Masimo first learned of various Apple patents and patent applications (some of which name Lamego as an inventor and are part of Masimo's co-ownership claims).  Masimo's response included the following paragraph:

> To the best of their knowledge, Plaintiffs did not learn of the existence of any of the Apple Patents or Apple Applications prior to late October or early November of 2019.  In late October or early November of 2019, Plaintiffs first learned about the content of one or more of the Apple Patents and Apple Applications during ***meetings with counsel***.  Plaintiffs do not know which of the specific Apple Patents and Apple Applications they learned about at that time.  The following individuals from Plaintiffs attended one or more of those meetings: Joe Kiani, Tom McClenahan [Masimo's General Counsel], and Bilal Muhsin.  ***What was said during the meetings is privileged***.

Ex. 2 at 14 (emphasis added).  That Masimo first learned about the content of one or more of the Apple Patents and Apple Applications during meetings with counsel certainly does not waive the privilege.

That Kiani authorized an investigation after seeing some Apple patents does not reveal attorney advice.  Any belief by counsel that a suit was warranted is readily apparent from the suit being filed.  Dkt. 1 at 1.  In *Chicago Bd.*, the defendant went further than Kiani did by testifying it authorized counsel to investigate the plaintiff's potential infringement ***and*** described the general subject matter of the analysis.  *Chicago Bd. Options Exchange, Inc. v. Int'l Sec. Exchange LLC*, 2008 WL 3285751, at *3 (N.D. Ill. Aug. 8, 2008).  The court held that testimony did not waive privilege because nothing the witness disclosed was privileged.  *Id.* (cited approvingly by *Hoist Fitness Sys., Inc. v. Tuffstuff Fitness Int'l, Inc.*, 2018 WL 8193374, at * 5 (C.D. Cal. May 14, 2018)).  The court further held that this testimony was "unremarkable," "rather mundane," and "hardly confidential."  *Id.* at *4.  "After all, a party had better conduct such an investigation prior to filing suit."  *Id.* (citing Fed. R. Civ. P. 11(b)).

Kiani's testimony is likewise "unremarkable" and "mundane."  Kiani merely identified the particular attorney (Steve Jensen) he remembers directing "to investigate and if he found we had any right to sue Apple."  Trial Tr. Day 2, Vol. 2, at 61:7-8.  Such identification and authorization is not privileged information.  *See United States v. Miller*, 874 F.2d 1255, 1271 (9th Cir. 1989) ("Svetlana's authorization was not intended to be confidential and was thus not subject to the attorney-client privilege.").

Moreover, Kiani's general comment falls far short of any privileged communication.  Indeed, his comment is commensurate with any description Apple would have received if the communication needed to have been identified on Masimo's privilege log.  *See Murata Mfg. Co. Ltd. v. Bel Fuse, Inc.*, 2007 WL 781252, (N.D. Ill. Mar. 8, 2007) ("None of these topical descriptions in a privilege log would be held to waive the privilege, and the result cannot be different here simply because the topics were enunciated in deposition testimony.").  Indeed, Kiani provided far less information

-14-

than Apple did in its privilege log.  For example, one entry on Apple's log states:



Ex. 4 at 1.  The entry also disclosed the names of the Apple attorney and the third-party recipient of the communication as well as the date of the communication.  *Id.*  If Apple were correct that Kiani's testimony waived attorney-client privilege, Apple itself waived privilege and would need to produce the documents on its privilege log.

Masimo's counsel also never elicited privileged interactions with attorneys during a patent prosecution.  Memo. at 8.  Counsel's questions simply showed Kiani's unawareness of the contents of the '052 patent, which is listed as number 634 of 948 references in a 33-page information disclosure statement for a patent not at issue in this case.  Trial Tr. Day 3, Vol. 1 at 96:23-97:22.  This testimony was to rebut Apple's suggestion that Kiani must have been aware of the '052 Patent ***and its contents*** as of the date of the information disclosure statement (December 6, 2018).  Regardless, even if Apple were correct, it would not matter because December 2018 is only 13 months before Masimo sued in January 2020.  *See* Cal. Civ. Code § 3426.6 (three year statute of limitations).

Moreover, Kiani's testimony about public documents before the Patent Office are not privileged.  *See, e.g.*, *Natta v. Hogan*, 392 F.2d 686, 691-92 (10th Cir. 1968) (documents filed in patent proceedings are not privileged because the patent law requires full disclosure); *Mendenhall v. Barbara-Greene Co.*, 531 F. Supp. 948, 949-50 (N.D. Ill. 1981) (full discussion citing *Natta*).

### 3. <u>Apple Has Not Shown Implicit Waiver</u>

Apple concedes that, at most, Kiani's statement was an implicit waiver.  Memo. at 18.  But Apple makes no attempt to satisfy the test for implicit waiver.  "The Ninth Circuit uses a three-prong test to determine whether a party has impliedly waived the

1  attorney-client privilege." *Natural Immunogenics Corp. v. Newport Trial Grp.*, 2018

2  WL 6138160, at *3 (Jan. 24, 2018) (citing *United States v. Amlani*, 169 F.3d 1189, 1195

3  (9th Cir. 1999)).

4      First, the court considers whether the party is asserting the privilege as the

5      result of some affirmative act, such as filing suit.   Second, the court

6      examines whether through this affirmative act, the asserting party puts the

       privileged information at issue.   Finally, the court evaluates whether

7      allowing the privilege would deny the opposing party access to

       information vital to its defense.

8

9  *Id.*  Assuming *arguendo* that Kiani's statement was an affirmative act, his unplanned

10  response did not put the privileged information—the legal analysis associated with the

11  investigation into Apple—at issue.  Kiani did not testify to any advice or opinion from

12  any attorney.  Trial Tr. Day 2, Vol. 2 at 51:5-16.

13      Further, preserving the privilege would ***not*** deny Apple access to information ***vital***

14  to its defense.  As Apple acknowledged, Masimo's counsel questioned Kiani about

15  "***when*** Mr. Kiani . . . ***first*** learned facts that led him to suspect that Apple had

16  misappropriated Plaintiffs' alleged trade secrets."  Memo. at 5 (emphasis added).  The

17  date Kiani formed that suspicion is relevant to Apple's statute-of-limitations defense.

18  Dkt. 1483 at 10.  Apple argues, however, that Masimo waived privilege as to attorney-

19  client communication occurring ***after*** that date.  *See* Memo. at 18.

20      Apple never explains how the post-October 2019 analysis is "a critical piece of

21  evidence to Plaintiffs' response to Apple's statute of limitations defense."  Memo.

22  at 3:16-18.  Events ***after*** October 2019 and before Masimo filed its Complaint are not

23  relevant, and certainly not ***vital***, to Apple's statute of limitations defense.  To be relevant,

24  those communications would need to have occurred before January 2017.  Cal. Civ.

25  Code § 3426.6.  Because this information has no relationship to Apple's defense, let

26  alone a vital one, Apple has not shown any implied waiver occurred.

27      Regardless, even if Kiani's statement bore some relationship to Apple's defense,

28  the statement was so general in nature that it would not amount to waiver.  *Yellowstone*

*Women's First Step House, Inc. v. City of Costa Mesa*, 2018 WL 6164305, at *5 (C.D. Cal. May 9, 2018) ("General comments that an attorney has 'examined a certain matter,' without revealing the substance of the attorney's advice does not constitute a waiver."); *Guidiville Rancheria of Cal. v. United States*, 2013 WL 6571945, at *6 (N.D. Cal. Dec. 13, 2013) (substantially the same).

### 4.    Apple Exaggerates the Breadth of any Alleged Waiver

Apple asserts Kiani's testimony amounts to a subject matter waiver of Masimo's attorney-client privilege regarding Masimo's counsel's 2019 investigation of Apple's patents.  Memo. at 18-19.  Apple then requests documents and a supplemental cross-examination of Kiani about "all other such communications on the same subject." Memo. at 19-20.  As discussed, Apple has not shown any waiver.  But even if Apple could somehow show a waiver, Apple greatly expands the subject matter of any such waiver.

Apple's own case, *Natural-Immunogenics*, held "[i]f the Court finds that waiver exists, then it must 'impose a waiver no broader than needed to ensure the fairness of the proceedings before it.'  The Court should closely tailor the waiver's scope to the opposing party's ends in litigating the specific claims."  2018 WL 6138160, at 4 (quoting *Bittaker v. Woodford*, 331 F.3d 715, at 720 (9th Cir. 2003)) (internal citations omitted).  As discussed, only the chronology of events relate to Apple's statute-of-limitations defense, and whether Masimo should have sued between 2017 and 2019. Dkt. 1361 at 20.  Apple seeks to pierce Masimo's attorney-client privilege as to events occurring between October 2019 and January 2020 when the Complaint was filed.  Such events are irrelevant to Apple's statute-of-limitations defense.  Apple's baseless argument that "Mr. Jensen's advice . . . is a critical piece of evidence to Plaintiffs' response to Apple's statute of limitations defense" is incorrect.  Memo. at 19.  Thus, Apple's proposed scope of this purported waiver is neither "needed to ensure the fairness of the proceedings" nor "closely tailor[ed]" to Apple's defense.

1    Apple also argues "the content of Mr. Jensen's advice (that Plaintiffs had a viable
2    misappropriation claim against Apple) is [] readily apparent from context."  Memo.
3    at 19.  However, as discussed above, Masimo's counsel's belief regarding the suit is
4    apparent from the face of the Complaint.  Dkt. 1 at 1; Fed. R. Civ. P. 11(a)-(b).  Kiani's
5    comment did not disclose any subject that in fairness needs to be addressed by piercing
6    attorney-client privilege.

7    **G.    Apple's Remedy For Documents Was Addressed Long Ago**

8    Apple already has the two documents that Masimo withheld on privilege,
9    although in redacted form.  Apple filed a motion to compel production of documents
10   from Masimo's privilege log that included three presentations ███████████████
11   ██████████████████████████████   As a result of the motion
12   practice, Masimo produced ████████████████████████████████
13   ████████████████████████████████

14   In the short period Apple left Masimo after filing its brief late, Masimo has
15   investigated its privilege log the best it could and those three documents are the only
16   ones which Masimo has identified that it believes might be responsive to the remedy
17   sought.  Two were ████████████████████████████████
18   ████████████[2]   Masimo did not ████████████████████████
19   ████████████████████████   Ex. 2 at 13-14.  This is exactly what
20   Masimo told Apple in response to Interrogatory No. 23.  *Id.* ████████████████
21   ████████████████████████████████████████████████
22   ████████████████████████████   █████████████████████████
23   ████████████████████████   As Masimo explained in response to
24   Interrogatory No. 23, the first Masimo believes it learned ████████████████
25   ████████████████████████████████   was in October 2019.
26   *Id.* at 14.

27   ────────────────────
28   [2] If the Court would like to confirm that the redacted portions are ████████████  Masimo
     would be happy to submit the unredacted presentations for *in camera* review.

-18-

**H.**   **Masimo, Not Apple, Deserves a Curative Instruction**

To correct Apple's misleading theme of the case, the jury should now be instructed on the actual sequence of events relating to the drafting of the trade secret descriptions.  Specifically, the jury should first be instructed that the law requires such a description be drafted *as part of* the litigation.   Indeed, the parties' competing proposals both instruct that "the law requires a trade secret plaintiff to provide the defendant during the litigation with a written description of the [alleged] trade secrets being asserted so that the defendant knows what it is accused of misappropriating." Dkt. 1501-1 at 86, 90.  This instruction informs the jury that the lawyers obviously drafted the trade secret descriptions after filing the lawsuit.

Moreover, to address Apple's deceptive lost-and-found analogy and that ███ █████████████████████████████████████, the jury should be instructed that the TSD are supposed to identify the subject matter in dispute, which is claim 1.  In addition, and most importantly, the jury should know that Masimo prepared the TSD before receiving discovery from Apple.  Masimo proposes the following curative instruction.

> **Masimo and Cercacor did not need to write down the trade secret in the course of their business for them to be in possession of that trade secret.  However, after they filed this lawsuit, this Court required them to provide Apple with a written description of the asserted trade secrets before Apple was required to provide any information to Masimo in this lawsuit.  That process required that Masimo and Cercacor's lawyers draft the descriptions to best capture the information at issue.  That written description is in your juror notebook.**

## II.   CONCLUSION

In view of the above, the Court should reject Apple's Trial Memorandum and deny all of its requested relief.  Moreover, the Court should immediately instruct the jury with the instruction provided above.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 9, 2023          By: /s/ Baraa Kahf

Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Irfan A. Lateef
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

-20-

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor

3

Laboratories, Inc., certifies that this brief contains 6,340 words, which [choose one]:

4

 X  complies with the word limit of L.R. 11-6.1.

5

__ complies with the word limit set by court order dated [date].

6

7

Respectfully submitted,

8

KNOBBE, MARTENS, OLSON & BEAR, LLP

9

10

Dated: April 9, 2023            By: /s/ Baraa kahf

11

Joseph R. Re
Stephen C. Jensen

12

Sheila N. Swaroop
Brian C. Horne

13

Irfan A. Lateef
Benjamin A. Katzenellenbogen

14

Brian C. Claassen
Stephen W. Larson

15

Mark D. Kachner
Adam B. Powell

16

Kendall M. Loebbaka
Daniel P. Hughes

17

Attorneys for Plaintiffs

18

MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

19

20

57427274

21

22

23

24

25

26

27

28

-21-