Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**Knobbe, Martens, Olson & Bear, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**Knobbe, Martens, Olson & Bear, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**Knobbe, Martens, Olson & Bear, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MASIMO'S TRIAL MEMORANDUM REGARDING APPLE OPENING THE DOOR TO PREVIOIUSLY EXCLUDED EVIDENCE REGARDING APPLE'S HIRING**<br><br>Hon. James V. Selna |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. PROCEDURAL BACKGROUND ................................................................ 1

III. ARGUMENT ................................................................................................ 2

    A.    Apple Placed At Issue The Number Of Masimo Employees It Hired ................................................................................................... 2

    B.    Apple Placed At Issue Apple's Targeting Of Masimo Technology And Employees ................................................................ 4

    C.    Apple Placed At Issue Its Process Of Evaluating Candidates .............. 6

    D.    Apple Placed Its Hiring Practices At Issue .......................................... 8

        1.    Apple's Policy Arguments Placed Its Hiring Practices At Issue ............................................................................................ 8

        2.    Apple Unfairly Asked Masimo Witnesses About Employee Mobility ................................................................... 9

        3.    Masimo Would Be Unfairly Prejudiced ................................... 13

IV. CONCLUSION ........................................................................................... 14

## I. INTRODUCTION

Apple's Opening Statement asserted that there is "nothing wrong" with Apple regularly recruiting from other companies. Apple argued that (i) Apple hired only two Masimo employees to work on the watch, (ii) Apple had no plan or intent to target Masimo employees, and (iii) Masimo brought this lawsuit to prevent employees from leaving for Apple. Those suggestions are false. They are also unfair because the Court's motion *in-limine* ruling currently prevents Masimo from responding with contrary evidence.

Masimo has been unable to tell the jury that Apple targeted and hired numerous former Masimo employees other than Drs. O'Reilly and Lamego. Masimo has been unable to present evidence that Apple sought Masimo technical information during interviews and hired Masimo employees who disclosed Masimo technical information. Masimo's witnesses were also unable to respond fully to Apple's question about employee mobility. Masimo's witnesses tried to explain that there may be nothing wrong with Apple hiring Masimo employees *if* it does not involve disclosure or use of Masimo's confidential information. However, Masimo's employees could not completely respond to explain Masimo's concerns about Apple actively targeting Masimo employees. Apple's questions forced Mr. Kiani and other witnesses to make a Hobson's choice between violating the Court's Order or providing an incomplete response.

The Court should find that Apple opened the door to evidence and arguments regarding Apple's hiring practices. Thus, Masimo should be allowed to introduce evidence of Apple targeting Masimo employees other than Drs. O'Reilly and Lamego.

## II. PROCEDURAL BACKGROUND

The Court excluded argument or evidence regarding Apple's hiring of Masimo employees other than Drs. O'Reilly and Lamego unless Apple opens the door. *See* Dkt. 1469 at 3 ("should Apple, indeed, 'open the door' to such evidence at trial, the

Court may reconsider its ruling"); *see also* Pretrial Conf. Tr. at 5:4-5 ("Well, it's in fact true with respect to any motion in-limine.").

In accordance with the Court's instructions, Masimo seeks a determination of door-opening based on arguments and evidence Apple presented at trial. *See id.* at 17:20-22 ("We have to see what evidence comes in, and obviously we can raise this issue, if at all, outside the presence of the jury."); *id.* at 18:2-4 ("No doors are opened unless the Court says they have been opened.").

## III. ARGUMENT

Apple placed at issue Apple's hiring practices by making misleading assertions regarding the number of Masimo employees Apple recruited and Apple's manner of evaluating candidates. Masimo should be able to respond, including by presenting evidence that Apple targeted Masimo employees, Apple hired numerous Masimo employees, and Apple evaluated candidates based on their willingness to disclose Masimo's technical information during interviews.

This evidence is relevant to establishing Apple's "motive, opportunity, intent, preparation, plan, [and] knowledge" that Apple targeted Drs. O'Reilly and Lamego as part of a broader scheme, and not by "mistake" or "accident." Fed. R. Evid. 404(b)(2). The Court previously agreed such evidence is likely relevant, but the found it was outweighed by Rule 403 concerns. *See* Dkt. 1469 at 4. Masimo respectfully submits that the Rule 403 balancing test now swings in the other direction.

### A. Apple Placed At Issue The Number Of Masimo Employees It Hired

Apple's Opening Statement asserted that Drs. O'Reilly and Lamego could not have been critical to developing the pulse oximetry feature because they were only two out of hundreds or thousands of people who worked on the watch:

> You might have had the impression from what you've heard in Mr. Re's opening statement that Dr. Lamego and Dr. O'Reilly somehow have keys to making an Apple watch or at least the keys to the pulse oximeter portion of the Apple watch, and then when they arrived,

suddenly Apple knew what to do, that ***those two gentlemen*** were the keys.

But, in fact, when you understand what actually happened, ***Dr. O'Reilly and Dr. Lamego were just a small part of a much broader set of folks*** who spent years developing the watch. …

But even this group right here [zooming out to show Apple witnesses who appeared for depositions], which is a much larger group ***than two people***, is just a fraction. Hundreds and hundreds and even thousands of people [zooming out to show hundreds of anonymous silhouettes] worked on the watch over a period of years to create it.

*Id.* at 80:14-81:8 (emphases added).

Apple affirmatively solicited testimony regarding the number of people who worked on the Apple Watch in a further effort to minimize the perceived value of Drs. O'Reilly and Lamego's contributions. Apple asked Mr. Hotelling:

Q. Approximately how many people in total were involved in developing the first Apple Watch?

A. I'm not sure the precise number, but from my memory, it's like the high hundreds to low thousands.

Trial Tr. (rough), April 13, 2023, at 93.

When combined with Apple's extensive characterizations of Apple's hiring practices (addressed in more detail below), Apple's arguments and testimony conveyed: (1) Apple had no particular interest in hiring Masimo employees; and (2) only two of the Apple employees who worked on the watch came from Masimo. Both are false.

Masimo should be allowed to correct the false impression that Apple hired only two former Masimo employees. Masimo and its witnesses have so far been unable to tell the jury or elicit the evidence that Apple hired nearly 20 former Masimo employees. Nor has Masimo been able to present to the jury evidence that some of

these additional hires worked on the Apple Watch project. Masimo should be allowed to present the jury with evidence that Apple hired at least three additional former Masimo employees ("HH," "IL," and "CR") who were involved with Apple Watch products. *See* JTX-1786 at 16:20-18:4 (spelling CR's first name as beginning with a "K"). These three former Masimo employees were involved in clinical studies, designing studies, and developing algorithms for sleep/wake detection for the Apple Watch. *Id*. Thus, Apple hired at least five former Masimo employees (O'Reilly, Lamego, HH, IL, and CR) to work on the Apple watch project.

Apple also directly placed at issue Apple's hiring of "other" Masimo employees by explicitly asking questions about it. Apple asked Masimo's business and marketing expert, Dr. Palmatier, whether he was offering opinions regarding misappropriation by "others" at Apple.

> Q. And the same for Apple -- ***other folks at Apple beyond Dr. O'Reilly***. You've offered no opinion to this jury that ***other folks at Apple intended to take ideas from Masimo or Cercacor to bring to Apple; correct***?
>
> A. I didn't offer any opinion on that.

Trial Tr., April 11, 2023, at 91:15-19 (emphases added).

Apple's question regarding "other folks at Apple" who "intended to *take* ideas from Masimo or Cercacor to *bring* to Apple" conveyed to the jury that Apple hired other Masimo or Cercacor employees. The Court should not allow Apple to use the Court's ruling on MIL-2 as a sword and a shield by permitting Apple to ask questions about "other" former Masimo employees while preventing Masimo from asking questions about the same subject.

B. **Apple Placed At Issue Apple's Targeting Of Masimo Technology And Employees**

Apple did not merely cast a general employment net and happen to catch two Masimo employees. Apple's documents and Mr. Hotelling's recent testimony

-4-

establish that Apple targeted Masimo employees and specifically identified Drs. O'Reilly and Lamego. Apple's documents establish that Apple became interested in Masimo's sensor component technology in 2012. *See* JTX-559 at -191. Apple flagged Dr. Lamego as a person of interest in January 2013. *See* JTX-648. Apple described its goals at the time as "[i]dentifying a team of world experts who have years of experience designing and shipping PPG[.]" JTX-260 at -106. Apple identified "[t]wo standout, related companies" in the PPG space—Masimo and Cercacor. JTX-259 at -774. By May 2013, Apple had met with Mr. Kiani and was "actively talking to his EVP of Medical Affairs, Dr. Mike O'Reilly." JTX-393.

In October 2013, Apple determined that one option for engaging with Masimo was "[a]cquisition of Cercacor and/or Masimo (or people or assets)[.]" JTX-263 at -776. Apple proposed four options with respect to Dr. Lamego, three of which involved hiring Dr. Lamego. *See id.* at -778. Apple's questioning of Mr. Hotelling tried to explain away the October 2013 "Project Everest" presentation. Apple asked Mr. Hotelling the following questions regarding the damning reference to acquiring Masimo's "people or assets":

> Q. Now, in the last bullet on the slide that refers to acquisition, do you see where it says, "(or people or assets)"?
>
> A. Yes, I do.
>
> Q. What does acquisition of people or assets refer to?
>
> A. This refers to -- instead of acquiring an entire company, sometimes there's an acquisition of a subset of the company, **such as a particular division or team**.
>
> Q. **Did Apple ultimately pursue any of the engagement options identified on this slide with Masimo**?
>
> A. **No, we did not**.

Trial Tr. (rough), April 13, 2023, at 114 (emphasis added).

Contrary to Hotelling's testimony, Apple *did* seek to acquire a "team" of

Masimo employees. The evidence shows Apple was beginning to "pick" Masimo employees, so Mr. Kiani asked Dr. Lamego to "[b]e careful with your team." JTX-768. After Dr. Lamego contacted Tim Cook, an Apple internal email thread with the subject line "**Recruiting from Masimo**" revealed that Apple was "already working on researching ***next level down***" from Drs. O'Reilly and Lamego. JTX-664 at -720; JTX-2127 at -678.

The Court should allow Masimo to rebut Apple's misleading arguments by eliciting the evidence that Apple hired nearly 20 former Masimo employees, including at least five (O'Reilly, Lamego, HH, IL, and CR) who worked on the Apple watch project.

### C. Apple Placed At Issue Its Process Of Evaluating Candidates

Apple's Opening Statement argued that Apple's recruiting process did not involve looking for people who would bring trade secrets to Apple. Apple's argument directly places at issue the questions Apple asks during interviews and how Apple evaluates candidates' responses. For example, Apple argued:

- "Apple was looking for talented folks who can bring their general skills and experience to Apple, and that's what they were looking for in Dr. O'Reilly and Dr. Lamego."
- "Apple is not looking for trade secret misappropriation or having people steal ideas to bring them to Apple."

Trial Tr., April 5, 2023, at 73:12-14, 73:15-17.

Apple solicited similar testimony from Mr. Hotelling:

Q. Can you please read that sentence?

A. Yes. "Obviously, please refrain from divulging any confidential project details, and, of course, reinforce that we don't want to hear any confidential information related to his previous employers."

Q. And who are you sharing that instruction with?

A. I was sharing that instruction with the interview team.

>     Q. And what prompted you to send this email?
>
>     A. It's a **standard policy that we never want to solicit any confidential information**, but I wanted to take an extra precaution in this case to be crystal clear on that point.

Trial Tr. (rough), April 13, 2023, at 121 (emphasis added).

Apple also solicited testimony from Mr. Hotelling that Apple was interested only in candidates' general background:

>     Q. What types of candidates was Apple looking for at the time?
>
>     A. We were looking for candidates across many disciplines; mechanical, electrical, optical engineers, as well as people that had experience with health sensing.

Trial Tr. (rough), April 13, 2023, at 115.

The Court should allow Masimo to introduce contrary evidence that shows Apple sought Masimo employees who were willing to disclose confidential information. For example, Masimo employee "AG" refused to disclose confidential details regarding Masimo's technology during his interview. *See* Pretrial Conf. Tr. at 8:23-11:3; *see also* Dkt. 1363 (under seal) at 9-14. Apple did not offer AG a job. *See id.* In contrast, Masimo employee "CR" disclosed details of proprietary algorithms during his interview. *See id*. Apple hired CR and then assigned him to develop the algorithm for sleep/wake detection in the Apple Watch. *See* JTX-1786 at 16:20-18:4. Apple's interview evaluations are evidence that Apple was fishing for Masimo's confidential information.

During the Pretrial Conference, Masimo argued that this evidence was relevant to Apple's plan and intent to obtain Masimo's trade secrets by hiring Masimo employees, including Drs. O'Reilly and Lamego. *See* Pretrial Conf. Tr. at 8:23-11:3. The Court asked Apple numerous pointed questions about this evidence:

- "Isn't it potentially probative to a plan or scheme?"

-7-

- "That's fine, but if they [Apple employees] are out there generally fishing for trade secrets, whether it's the same trade secrets they fished for with Lamego or O'Reilly, it's relevant if it potentially shows a pattern."
- "Can't patterns be shown by conduct before and after the relevant event?"
- "Sir, you are missing the point. If they [Apple employees] are out there fishing generally for trade secrets, why is it excluded because they weren't fishing for the same trade secrets they were fishing for with O'Reilly and Lamego?"

Pretrial Conf. Tr. at 12:25-13:1, 13:9-12, 13:18-19, 14:1-5.

The Court ultimately agreed with Masimo that this evidence "could give rise to an inference of plan, intent, etc.," but agreed with Apple that the evidentiary value was outweighed by Rule 403 concerns. *See* Dkt. 1469 at 4. Now that Apple has opened the door by affirmatively arguing that Apple had no plan or intent to obtain Masimo's confidential information through recruiting Masimo employee, the Rule 403 balancing test swings the other way.

### D.  Apple Placed Its Hiring Practices At Issue

#### 1.  Apple's Policy Arguments Placed Its Hiring Practices At Issue

Apple's Opening Statement asserted that Apple regularly hires employees from other companies and there is "nothing wrong" with doing so. Examples of these assertions are below (all emphasis added):

- "Hiring is a good thing. Folks are entitled to work wherever they want to work. There is nothing wrong with hiring people."
- "There is nothing wrong with hiring people for their general talent and expertise. People are allowed to use talent and expertise that they have obtained over their lifetimes when they move from job to job. There is absolutely nothing wrong with that."
- "Apple also recruited some additional talent to join the watch project. There's nothing wrong with that. They're allowed to hire and recruit, including hiring

and recruiting for new projects. Companies do that all the time. It's a good thing. Hiring is a good thing. Offering folks jobs is a good thing."

- "In fact, Apple recruits talent from all corners -- universities and various academic positions, government, various public agencies, and other companies. So folks come to Apple from all different corners."

Trial Tr., April 5, 2023, at 60:25-61:2, 61:3-7, 69:14-19, 72:20-23.

When combined with Apple's misleading arguments regarding the number of people Apple recruited from Masimo, Apple invited the jury to conclude that Masimo asserts there is something wrong with Apple hiring anyone from Masimo. Apple thereby opened the door to Masimo introducing evidence showing that Apple hired many others from Masimo.

### 2. Apple Unfairly Asked Masimo Witnesses About Employee Mobility

Apple also asked Masimo witnesses questions to comment on California's policy promoting employee mobility. Masimo's witnesses could not answer fully without raising concerns about violating the Court's Order.

#### a. Joe Kiani

Apple asked Mr. Kiani numerous questions about Mr. Kiani's personal views on employee mobility. Exemplary questions are below:

Q. And there's nothing wrong with a person choosing to move from one job to another?

A. Well, it depends, but generally no.

Trial Tr., April 6, 2023, at 59:12-14.

Q. And you felt that Dr. Lamego should not be allowed to work for a competitor, correct?

A. You know, there are certain people that I don't think should be put in that position, and he is one of them. So, yeah.

Id. at 60:3-7.

Q. Now, you yourself, of course, have had a job history where you worked at

various companies over the years, correct?

A. That's correct.

*Id.* at 60:11-14.

Q. And yet **there is nothing wrong** with your moving from company to company, correct?

A. Well, they were not competitors. So Newport Medical wanted to make a pulse oximeter, and Bell Industries was distributing semiconductor chips.

Q. So **there is nothing wrong** as a general matter with folks moving from one company to another. Would you agree with that?

A. It depends. Marcelo was unique in that we had taught him everything about our technology, and a lot of it was strictly confidential. For him to take it to another company **to do the same thing** I think is wrong. Whether I believe it right or not, I'm just telling you I think that's wrong.

*Id.* at 61:8-21 (emphases added).

Masimo does not know whether Apple intentionally tried to induce Mr. Kiani to violate the Court's Order, or was simply preaching to the jury. Regardless, Apple's questions unfairly suggested a double-standard. Apple implied that Mr. Kiani thought it was "okay" for Mr. Kiani to change jobs, even to a competitor, but it was "wrong" for Masimo employees to leave for Apple. Mr. Kiani's scrupulous adherence to the Court's instructions prevented him from fully responding to Apple's questions by referring to facts that refute Apple's implication.

Mr. Kiani could not explain the full reason for his answers. In particular, he was rightfully concerned that Apple was targeting Masimo employees and continued to hire Masimo employees other than Drs. O'Reilly and Lamego. Mr. Kiani should have been able to discuss his objection to Drs. O'Reilly and Lamego sharing trade secrets with Apple in the context of the other Masimo employees that Apple targeted and hired.

          b.     <u>Mohamed Diab</u>

Ms. Frazier asked Mr. Diab the following questions:

1  Q. Now, we can agree that when Mr. Kiani asked you to join him while
2     you were working at Galeso, there was **nothing wrong** with that, right?
3  A. In what sense?
4  Q. There is **nothing wrong** for somebody to offer somebody else a job
5     offer, correct?
6  A. Yeah.
7  Q. And it's a **good thing** for engineers like yourself to be able to choose
8     where [they] want to work, correct?
9  A. That's correct.

Trial Tr., April 7, 2023, at 50:5-14.

### c.  Jeroen Poeze

Apple asked Mr. Poeze a series of questions about the same topic. Mr. Poeze tried to explain the distinction between "right" and "wrong" without referring to the numerous other Masimo employees who went to work for Apple. The exchange is below:

Q. Now, there's **nothing wrong** with leaving one company to go work for
   another company; isn't that right?
A. I believe that's right.
Q. So there is **nothing wrong** with you leaving Cercacor to go work for
   another medical device company, correct?
A. I believe that's correct.
Q. There's **nothing wrong** with you leaving Cercacor to work for another
   software company, correct?
A. I believe that's correct.
Q. And there is **nothing wrong** with you using your experience and
   expertise at a new company, correct?
A. As long as it doesn't include things like confidential stuff I worked on,
   that as long as I meet that condition, I think it should be fine.

-11-

Q. There is **nothing wrong** with you using your education at a new company, correct?

A. That's correct.

Q. **Nothing wrong** with you using your experience at a new company, correct?

A. That's correct.

Q. And **nothing wrong** with you using the expertise you gained at a new company, correct?

A. If that expertise contains things that are confidential, then I would say, no, that's not correct. As long as that experience doesn't include confidential things, then it's correct. But if it includes confidential things, then I don't believe it's correct.

Q. So we can agree, sir, that there is **nothing wrong** with you using your experience and education at a new company, correct?

A. As I said, as long as that experience doesn't include confidential things I worked on at Cercacor.

*Id.* at 97:6-98:12 (emphases added).

### d. Bilal Muhsin

Apple asked Mr. Muhsin whether it is proper for employees to leave Masimo and whether Masimo hires employees from competitors:

Q. And there is **nothing wrong** or improper about an employee leaving Masimo, correct?

A. No, there isn't.

Q. In fact, Masimo has hired employees from its competitors, correct?

A. Yes.

Trial Tr., April 10, 2023, at 101:5-10.

The Court's Order prevented Mr. Muhsin from explaining, either on cross-examination or redirect, that Masimo's hiring practices differ from Apple's in

important ways.

e. **Tracy Miller**

Apple asked Ms. Miller questions about Masimo's hiring practices, again knowing that Ms. Miller would not be able to fully explain the difference between Masimo's practices and what Apple did in this case.

> Q. And [Masimo] obtains information about the companies that might have employees with those skill sets, correct?
>
> A. Yes.
>
> Q. And sometimes it hires employees from those companies, correct?
>
> A. Yes.
>
> Q. ***And there is nothing wrong with that, correct***?
>
> A. That's correct.

*Id.* at 117:20-118:8 (emphasis added).

### 3. Masimo Would Be Unfairly Prejudiced

Masimo's witnesses had to walk an impossibly fine line when trying to explain the difference between "right" and "wrong" recruiting and employee mobility. The natural response to Apple's loaded questions would have been to refer to Apple's targeting and hiring of Masimo employees. Apple's questions unfairly took advantage of the limits on what Masimo's witnesses could say. Masimo's witnesses could not fully respond to Apple's accusation that Masimo is trying to chill employee mobility or reduce hiring. The Court should not let Apple use the Court's Order as a sword and a shield. Apple should not be allowed to make misleading arguments to which Masimo cannot respond. Nor should Apple be allowed to ask loaded questions that force Masimo's witnesses to choose between giving incomplete and potentially misleading answers and risking violation of the Court's instructions.

Providing the jury with only Apple's side of the story may also mislead the jury regarding Masimo's motivation for bringing this lawsuit. If the jury were to accept Apple's suggestion—that Masimo filed suit to stop employees from working for

Apple—it could unfairly suggest Masimo filed suit for an improper purpose.

During the Pretrial Conference, Masimo argued it should be able to present evidence "that Apple created a plan and a strategy of hiring and recruiting Masimo employees as an alternative to acquiring or partnering with Masimo." Pretrial Conf. Tr. at 7:21-23. The Court agreed, but suggested Masimo could "make that argument with respect to the two people [Drs. O'Reilly and Lamego] who are in contention[.]" *Id.* at 7:25-8:1. However, they are only part of the story. For all the reasons discussed above, Apple's arguments and questions have made evidence regarding the rest of the story even more relevant than it was before trial started. It would unfairly prejudice Masimo if it were still prevented from introducing evidence of Apple's plan and intent even after Apple affirmatively interjected such issues into the trial.

## IV. CONCLUSION

Masimo respectfully requests the Court find that Apple opened the door regarding its recruiting of Masimo employees. Masimo should be allowed to solicit and introduce evidence referring or relating to Apple's hiring of Masimo employees other than Drs. O'Reilly and Lamego, including AG and CR.

|     |     |
| --- | --- |
|     | Respectfully submitted, |
|     | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| Dated: April 14, 2023 | By: */s/ Benjamin A. Katzenellenbogen*<br>Joseph R. Re<br>Stephen C. Jensen<br>Sheila N. Swaroop<br>Brian C. Horne<br>Irfan A. Lateef<br>Benjamin A. Katzenellenbogen<br>Brian C. Claassen<br>Stephen W. Larson<br>Mark D. Kachner<br>Adam B. Powell<br>Kendall M. Loebbaka<br>Daniel P. Hughes<br><br>Attorneys for Plaintiffs<br>MASIMO CORPORATION and<br>CERCACOR LABORATORIES, INC. |

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 3,823 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 14, 2023

By: */s/ Benjamin A. Katzenellenbogen*
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Irfan A. Lateef
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

57428237