MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS' TRIAL MEMORANDUM REGARDING APPLE OPENING THE DOOR TO PREVIOUSLY EXCLUDED EVIDENCE REGARDING APPLE'S HIRING**<br><br>Trial: Apr. 4, 2023 |

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 4

    A.    Apple Has Not Suggested That Any Of Plaintiffs' Former Employees Beyond Dr. Lamego and Dr. O'Reilly Has Any Connection To The Trade Secret Allegations In This Case ...................... 4

    B.    Apple Has Not Discussed Its Recruitment Of Any Of Plaintiffs' Former Employees Beyond Dr. Lamego And Dr. O'Reilly ....................... 7

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Les Concierges, Inc. v. Robeson*,
  2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) ...................................................... 10

**Rules**

Fed. R. Evid. 103(a) ................................................................................................ 11

Fed. R. Evid. 403 ...................................................................................................... 3

Plaintiffs' case centers on allegations that Dr. Marcelo Lamego and Dr. Michael O'Reilly took trade secrets from Plaintiffs and gave them to Apple. At no point in this case have Plaintiffs ever identified *any* alleged trade secrets that Apple sought or received from *any* other former employee of Plaintiffs. As this Court summarized in its motion *in limine* ruling: "Plaintiffs have not alleged that employees other than Drs. O'Reilly and Lamego misappropriated trade secrets." Dkt. 1469 at 3. Plaintiffs' last-ditch effort to persuade the Court to reverse its *in-limine* ruling barring introduction of evidence of recruiting or hiring of other former employees should be rejected.

Two weeks of trial have made clear that the trade secret allegations against Dr. Lamego and Dr. O'Reilly amount to the following:

- A theory that Dr. O'Reilly taught Apple secret marketing "strategies" for how to market devices for both clinical and consumer audiences;
- A theory that Dr. Lamego taught Apple a secret involving use of black foam as part of one quality-control step in Apple's manufacturing process, which eventually—according to Plaintiffs—impacted the design in later Apple Watch models;
- A theory that Dr. Lamego taught Apple a secret of how to use a particular type of short circuit; and
- A theory Dr. Lamego taught Apple a secret of how to use a modulation approach—which Plaintiffs concede Apple has never used in an actual product.

Based on those theories (which Drs. Lamego and O'Reilly have repudiated in their testimony), Plaintiffs seek over $3 billion in unjust enrichment, even though their damages expert concededly has no opinion on how (if at all) that number flows from Apple's purported use of the alleged secrets. Because Plaintiffs' case is riddled with deep legal and factual flaws, Apple will—at the appropriate time—be moving for JMOL on the basis that no reasonable jury could enter a verdict in Plaintiffs' favor on either liability or damages.

Plaintiffs have repeatedly tried to shift attention away from their flimsy liability theories to issues that are at best relevant only as background context. For example, Plaintiffs have emphasized tertiary issues like Apple's past exploration of a potential business transaction with Masimo (which included only a single meeting between the companies at which even Mr. Kiani admitted no trade secrets were discussed). Apple has had to respond to Plaintiffs' detours by putting on its own witnesses to explain the irrelevance of events like the 2013 meeting. Mr. Hotelling and Mr. Perica, for example, explained what actually happened when Apple explored a transaction with Masimo—and made clear that this exploration in no way meant Apple proceeded to extract trade secrets from Dr. Lamego and Dr. O'Reilly.

Plaintiffs now seek to inject yet another distraction into this case: that employees other than Dr. Lamego and Dr. O'Reilly decided to leave (or considered leaving) Plaintiffs and later joined Apple. This fact has absolutely nothing to do with the trade secret theories in this case or, indeed, any other claim in this case. It would serve no purpose other than being used to suggest that Apple had done something wrong by recruiting and hiring at-will employees. Permitting this point to come in at this late stage would deeply prejudice Apple, both because it would (1) require Apple to devote limited remaining trial time to explaining how the hiring of Plaintiffs' former employees was permissible and completely unrelated to the actual allegations in this case and (2) give the jury the misimpression that Apple had deliberately hid the fact that it hired those former employees until the third week of trial.

Plaintiffs' articulated bases for why Plaintiffs should be permitted to inject this sideshow into this trial do not withstand scrutiny. Plaintiffs' motion relies extensively on high-level references to a basic principle of law that this Court reaffirmed in the motion *in limine* ruling itself—i.e., "employees are not only permitted but encouraged to move freely from one company to another under at-will employment." Dkt. 1469 at 3. While Plaintiffs now claim surprise that Apple has relied on this fundamental point

at trial, Apple has repeatedly raised this basic concept throughout this litigation, including in the motion *in limine* briefing and in its Trial Brief filed on March 28, 2023. Dkt. 1316 at 4 ("There is nothing unusual or improper when a company 'solicits [its] competitor's employees or … hires away one or more of [its] competitor's employees who are not under contract.'"); Dkt. 1409 at 11 ("[A]s courts have repeatedly confirmed, there is nothing unlawful about recruiting and hiring another company's employees."); Dkt. 1495 at 2 ("As this Court recently observed, the law protects the ability of employees to move freely from company to company."). That principle applies to Dr. Lamego and Dr. O'Reilly, which is why Apple has made this point at trial—Apple was in no way using it to justify its actions as to other Masimo or Cercacor employees, because (as this Court has held) those persons are irrelevant to this case.

Plaintiffs' more specific allegations (Mem. 1) about what Apple has "argued" about Apple's employment practices are false. Apple has been scrupulous in avoiding any reference to Plaintiffs' former employees who now work at Apple and for good reason. The vast majority of those individuals do not work on Apple Watch and the three who do work on Apple Watch are in areas unconnected to the trade secret allegations in this case. Plaintiffs have never said otherwise.

Finally, Plaintiffs' suggestion that the FRE 403 analysis has changed in light of Apple's high-level statements about employee mobility should be rejected. As Apple's counsel noted during the pre-trial conference, allowing Plaintiffs to argue that Apple's hiring of Plaintiffs' former employees is proof of a plan or intent to misappropriate trade secrets will raise a substantial procedural problem. Even though Plaintiffs have not identified any purported trade secrets that these other former employees misappropriated, Plaintiffs' allegations of improper interviews or recruiting would require a trial within a trial to demonstrate that none of Plaintiffs' former employees improperly shared *other* information that meets the definition of a trade

secret. 3/13/23 Tr. 61-62. As this Court rightly concluded, such a proceeding would "likely result in delay and confusion to the jury." Dkt. 1469 at 3-4. That confusion—and the prejudice to Apple—would be only amplified by the issue being injected only deep into the trial.

In sum, Plaintiffs' motion is an improper attempt to bring in evidence that will confuse the jury and distract from the alleged trade secrets at issue. Apple intends to devote its remaining trial time to completing its proof that these specific allegations are false. Apple should not have to spend that time proving it did not engage in misconduct with other hirings of individuals with no connection whatsoever to the actual issues in this case. Apple respectfully requests that the Court deny Plaintiffs' request.[1]

## ARGUMENT

This Court's motion *in limine* ruling correctly held that (1) evidence that Apple hired Plaintiffs' former employees is "largely irrelevant" absent "allegations that these other employees misappropriated trade secrets" and (2) admitting evidence of Apple's recruitment efforts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident in misappropriat[ing] Plaintiffs' trade secrets" would "result in delay and confusion to the jury." Dkt. 1469 at 4. Plaintiffs identify no new facts that affect the soundness of either aspect of this Court's decision.

### A. Apple Has Not Suggested That <u>Any</u> Of Plaintiffs' Former Employees Beyond Dr. Lamego and Dr. O'Reilly Has <u>Any</u> Connection To The Trade Secret Allegations In This Case

As Apple previously explained in the motion *in limine* briefing, Plaintiffs have not even argued—much less provided evidence—that any of their former employees

---

[1] Although Plaintiffs' brief relies largely on statements made during the early days of trial, Plaintiffs waited until 7:34 a.m. on the ninth day of trial to file the instant motion. Apple objects to this unwarranted and unexplained delay in raising the purported concern.

beyond Dr. Lamego or Dr. O'Reilly have any connection to the allegations in this case. *See, e.g.*, Dkt. 1409 at 10-14.  This Court agreed.  Dkt. 1469 at 3.

Plaintiffs do not dispute this basic point.  While they repeat their prior argument that Apple has hired "nearly 20 former Masimo employees," Mem. 3, those individuals were hired over the course of a decade, the vast majority have never worked on Apple Watch, and several worked at Masimo for a de minimis amount of time (e.g., a high school intern).  *See* Ex. 1 at 27-31 (Apple's interrogatory response).  And even Plaintiffs admit that the three former employees who did work on Apple Watch worked on "clinical studies, designing studies, and developing algorithms for sleep/wake detection for the Apple Watch," Mem. 3-4—i.e., features that are not at issue in this case.

Plaintiffs' assertion that Apple has argued that Apple "had no particular interest in hiring Masimo employees" and "only two of the Apple employees who worked on the watch came from Masimo" is incorrect.  Mem. 2-3.  Plaintiffs do not even argue that Apple made either of these arguments expressly.  Plaintiffs instead (Mem. 2-4) point to three, high-level statements, all of which make the basic point that Plaintiffs have not alleged that anyone at Apple ***beyond*** Dr. O'Reilly and Dr. Lamego misappropriated Plaintiffs' alleged secrets:

- Apple's Opening Statement:  Apple's counsel prefaced the statement that Plaintiffs quote by explaining that he was discussing Dr. O'Reilly's and Dr. Lamego's limited role in the Apple Watch project to "provide some context ***on the allegations*** that are being made in this case."  4/5/23 AM Tr. 80-81 (emphasis added).  Apple's counsel explained to the Court the purpose of referencing the broader team that worked on Apple Watch prior to delivering the opening statement—namely, to show that creating Watch required a tremendous amount of effort from an enormous amount of people.  *Id.* at 8-9 ("[T]hese are the two gentlemen who are alleged to have misappropriated

trade secrets to give to Apple. … The final [slide] is just meant to represent that there were actually thousand[s] of people who worked on the watch."). Notably, although Plaintiffs' counsel contemporaneously objected to this point on other grounds, *id.* at 7-8, they did not argue that the slide had any relevance to Apple's recruiting or hiring of Plaintiffs' former employees.

- Testimony from Mr. Hotelling: The statement Plaintiffs quote makes no reference to Plaintiffs' former employees. Plaintiffs assert that the testimony was an "effort to minimize the perceived value of Drs. O'Reilly and Lamego's contributions." Mem. 3. Even if that were correct, it is a non-sequitur to suggest this opens the door to the recruiting of Plaintiffs' other employees. If Plaintiffs wish to present their own position on the value of Dr. Lamego's and Dr. O'Reilly's contributions, they can do so by referring to *their* contributions, not those of other former employees—which Plaintiffs have never alleged to have misappropriated Plaintiffs' information (as this Court's motion *in limine* ruling recognized).

- Testimony from Dr. Palmatier: The statement Plaintiffs quote comes at the end of a colloquy where Apple's counsel was confirming that Dr. Palmatier was not offering an opinion on the issue of intent, namely, whether Dr. O'Reilly intended to take proprietary information from Plaintiffs to give to Apple. *See* 4/11/23 PM Tr. 90-91. The single question Plaintiffs cite confirms that Dr. Palmatier was limiting his testimony to Dr. O'Reilly and not by omission suggesting that any other Apple employee committed misappropriation.[2] The question is simply another example of Apple trying

---

[2] Plaintiffs themselves have put this point at issue in conversations with Apple's counsel regarding the proposed jury instructions, by suggesting that they can pursue a theory of misappropriation beyond their allegations that Apple improperly acquired the alleged trade secrets through Dr. Lamego and/or Dr. O'Reilly.

to focus the jury on what is actually alleged in this case: misappropriation by Dr. Lamego and Dr. O'Reilly.

### B. Apple Has Not Discussed Its Recruitment Of Any Of Plaintiffs' Former Employees Beyond Dr. Lamego And Dr. O'Reilly

Plaintiffs rely on a number of snippets from nine days of trial to argue that Apple has opened the door to a wide range of arguments and evidence regarding Apple's recruiting practices. The vast majority of these statements were made ***before*** Plaintiffs made clear that they did not plan to use the "smart recruiting" email from Tim Cook that had previously been a centerpiece of their case—i.e., at a time when Apple believed it was necessary to rebut Plaintiffs' reliance on that specific email. *See* 4/11/23 AM Tr. 10-14 (Plaintiffs agreeing not to use the statement); *see also* Dkt. 1484 at 2-3 (court ordering that Apple can "rebut Plaintiffs' argument" if they contend that "Apple engaged in 'smart recruiting'"). In any event, Plaintiffs are wrong to suggest Apple did anything improper or otherwise opened the door to the distraction that Plaintiffs now want to inject into the trial.

**1. "Targeting of Masimo Technology and Employees."** Plaintiffs rely chiefly on a single passage from Thursday's testimony in which Mr. Hotelling explained the context of a specific slide from the "Project Everest" presentation. Mem. 5-6.[3] To be clear, Plaintiffs put the ***same slide in front of the jury twice prior to Mr. Hotelling's testimony***. Plaintiffs introduced the slide into the record when playing snippets from the deposition of David Tom that discussed the document at some length. *See* Ex. 2 (transcript of deposition clip); *see also* 4/11/23 AM Tr. 18. And Plaintiffs' lead counsel highlighted the slide in his opening statement, both by including it in his demonstratives, *see* PDX1-44, and discussing it in detail:

---

[3] Plaintiffs also rely on cherry-picked quotes from—and summaries of—"Apple documents" that are in the record. Mem. 4-5. But Plaintiffs provide no explanation for how Apple supposedly raised those points in front of the jury. Accordingly, they should be disregarded.

> So now Apple creates a new project. This is called Project Everest, and they have engagement options with Masimo. They have various choices. Now, this is October 16th. You'll notice all the choices are always to go forward with something. There is not even an option that says leave them alone. Do it ourself.
> Instead, if you look, consulting advice on the algorithms and optics, or how about maybe we license the algorithms, test the calibration methodology, license some of their patents. They have patents, too. Or you use them for lab services when you're doing testing.
> These next ones are really good -- joint development of pulse oximetry on the back of the wrist. I love the words joint development. We're back to collaboration again. Joint venture to develop noninvasive monitoring technology, or acquisition, Bob Mansfield's recommendation, acquisition of Cercacor and/or Masimo. And look at this parentheses at the end, or people or assets. They're evaluating what's the best way to learn what we need to know to break into the medical field with pulse oximetry.

04/05/23 AM Tr. 46-47. At the end of his presentation, Plaintiffs' lead counsel expressly called out the very phrase that Plaintiffs allege violated MIL 2: "These next ones are really good … acquisition of Cercacor and/or Masimo. ***And look at this parenthesis at the end, or people or assets. They're evaluating what's the best way to learn what we need to know to break into the medical field with pulse oximetry***." *Id.* (emphasis added).

Apple did not object to this portion of the opening statement because it does not implicate the motion *in limine* ruling—it does not mention the fact that Apple has hired

Plaintiffs' former employees beyond Lamego and O'Reilly. It simply mentions acquisition of Cercacor or Masimo (or a portion of Cercacor or Masimo) as a future possibility. Mr. Hotelling's testimony is entirely consistent with that reading of the slide. He explained that instead of "acquiring an entire company, sometimes there's an *acquisition* of a subset of the company, such as a division or team." 4/13/23 PM Tr. 121 (emphasis added). And he confirmed that this *acquisition* did not in fact occur—a point that Plaintiffs do not dispute. He said nothing to suggest that Apple has never *hired* certain of Plaintiffs' *individual* former employees. Acquiring people from another company through merger or acquisition of a whole company or a subset of a company is not the same thing as hiring at-will employees. Mr. Hotelling's testimony was entirely consistent with that basic distinction. *See also* 4/14/23 Vol. 1 Tr. 55 (Mr. Hotelling testifying on cross-examination that Apple did not "acquire Masimo or Cercacor … people or assets" but did "hire [Lamego and O'Reilly] as employees").[4]

**2. Apple's "Process of Evaluating Candidates**." Plaintiffs point to four statements across nine days of trial where Apple's counsel or witnesses made the general point that Apple does not hire employees in order to misappropriate trade secrets. *See* Mem. 6-8. Plaintiffs use these statements in an attempt to relitigate an argument they already lost—i.e., that they should be allowed to argue that Apple seeks proprietary/trade secret information during recruiting interviews. This assertion is false. Equally importantly, Plaintiffs have not even tried to (1) argue that the information at issue in the two interviews that they identified has anything to do with the specific trade secret allegations in this case or (2) establish that the information requested in the two interview was proprietary, much less protected by trade secret law. *See* Dkt. 1409 at 13-14 (Apple's motion *in limine* brief making this point). As a

---

[4] Plaintiffs' complaints about prejudice are particularly ill-founded given that they cross-examined Mr. Hotelling about the "(or people or assets)" language during Friday's cross-examination. If they truly believed that this testimony suggested that Apple has never hired Plaintiffs' former employees beyond Drs. O'Reilly and Lamego, they would not have put the issue before the jury a second time.

result, this Court rightly found that introducing the interviews into the case would result in undue delay and juror confusion. *See supra* pp. 3-4. If anything, the risk of delay and confusion is even greater now, where Apple would need to devote trial time to explaining why the questions asked during the interviews were appropriate, and where both sides have presented much of their cases without addressing the interviews. The jury would surely be surprised to have this issue surface only at this late stage of the trial—and could conclude (wrongly) that Apple had hid something from them.

**3. Apple's "Hiring Practices."** Plaintiffs devote over five pages (Mem. 8-13) to cataloging places in the record where Apple has referenced the foundational legal principle that (in this Court's words) "employees are not only permitted but encouraged to move freely from one company to another under at-will employment." Dkt. 1469 at 3.

Plaintiffs rightly do not dispute that this is a correct statement of the law. *See, e.g.*, Dkt. 1409 at 11-12 (Apple's motion *in limine* reply brief collecting cases). Instead, Plaintiffs make the tenuous connection that these statements suggest that "Masimo asserts there is something wrong with Apple hiring anyone from Masimo" and the even thinner inference that such a suggestion would "open[] the door to Masimo introducing evidence showing that" Apple has hired Plaintiffs' former employees. Mem. 9. Apple asked these questions and made these statements simply to make clear for the jury that Plaintiffs must identify something beyond the mere hiring of Dr. Lamego and Dr. O'Reilly to establish misappropriation. *See Les Concierges, Inc. v. Robeson*, 2009 WL 1138561, at *3 (N.D. Cal. Apr. 27, 2009) ("California does not recognize 'the inevitable disclosure doctrine,' under which … [an] employees' new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets[.]"). And regardless, Plaintiffs' logic makes no sense. The fact that Apple has hired a small number of Plaintiffs' former employees says nothing about whether Plaintiffs believe that Apple's hiring

decisions are proper.  Plaintiffs have never even alleged that Apple violated *any* state or federal law by hiring other former Plaintiffs' employees.  Injecting the issue now would force Apple to prove to the jury that it did nothing wrong by hiring those individuals, when Plaintiffs have never even alleged otherwise.

Plaintiffs also argue that Apple's questions about the basic principle that the law encourages employee mobility forced five of their fact witnesses to answer Apple's cross-examination questions incompletely or risk violating the motion *in limine* order.  Mem. 8-13.  Plaintiffs neither objected to these questions at the time nor raised their concerns with Apple at any time prior to the filing of this brief; accordingly, they have necessarily waived the right to raise any objection now, a week later.  *See* Fed. R. Evid. 103(a) (party challenging admission of evidence must "on the record … *timely* object[] or move to strike" (emphasis added)).  In any event, with the exception of Mr. Kiani, Plaintiffs do not identify specifically what their witnesses would have said if not bound by the motion *in limine* ruling.  And for good reason.  Apple's questions were high-level; they asked Plaintiffs to agree with the "general" principle that at-will employees are allowed to change jobs.  *See*, *e.g.*, 4/6/23 AM Tr. 61 ("There is nothing wrong as a general matter with folks moving from one company to another.").

As to Mr. Kiani, Plaintiffs argue only that he was precluded from explaining that "Apple was targeting Masimo employees and continued to hire Masimo employees other than Drs. O'Reilly and Lamego." Mem. 10; *see also id*. 13.  But as explained above, this Court has found that this type of testimony would be irrelevant, given that Plaintiffs have not alleged that any of their former employees who work for Apple beyond Dr. O'Reilly or Dr. Lamego did anything wrong.  And if Mr. Kiani had wanted to caveat the general rule favoring employee mobility with his clarification that employees should be precluded from taking confidential information from a former employer when changing jobs, there is no reason he could not do so.  Such a general statement is not covered by the motion *in limine* order—indeed, Mr. Poeze made just

such a statement without either side (or this Court) raising an objection. See 4/7/23 Tr. 97-98, cited in Mem. 12.

## CONCLUSION

Apple respectfully submits that Plaintiffs' motion should be denied in its entirety so that Apple may complete its trial presentation rebutting the actual allegations Plaintiffs have made.

Dated: April 17, 2023         Respectfully submitted,

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
         Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 3,534 words (excluding the transcript passage), which:

__X__ complies with the word limit of L.R. 11-6.1.

____ complies with the word limit set by court order dated [date].

Dated: April 17, 2023

Respectfully submitted,

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: */s/ Mark D. Selwyn*
    Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*