MARK D. SELWYN, SBN 244180
 mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
 thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
 joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
 amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S TRIAL MEMORANDUM REGARDING APPLE'S RENEWED *DAUBERT* CHALLENGE** |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

## INTRODUCTION

California law is clear that Plaintiffs' unjust enrichment damages are limited to the "benefit" that Apple received from incorporating Plaintiffs' alleged trade secrets into the multi-feature Apple Watch. *E.g.*, *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 627-28 (1992); Cal. Civ. Jury Instr. 4410. Accordingly, as this Court recently summarized, "[P]laintiffs' initial obligation [is] to show that whatever the gross unjust enrichment number is[,] that that number flows from the trade secret violations." 4/12/23 AM Tr. 7:33-8:4.

Earlier this year, Apple filed a *Daubert* motion challenging one of Plaintiffs' unjust enrichment theories (the sole damages theory remaining in this case) because it violated this basic principle. Dkt. 1171 at 20. Specifically, the report of Plaintiffs' damages expert Jeffrey Kinrich merely made the high-level statements that (1) ███████████████████████████████████████████████████████████████████████ and (2) ███████████████████████████████████████████████████████████████████████ Dkt. 1171-3 ¶ 164. Apple contended that Mr. Kinrich's failure to provide a more targeted analysis rendered his approach methodologically unreliable because it meant—by way of example—that Plaintiffs could be awarded billions of dollars based on a finding that Apple misappropriated a purported trade secret that not even Plaintiffs assert are used in Apple Watch (e.g., the alleged trade secrets related to demodulation). Dkt. 1171 at 20. This Court denied Apple's motion, in part because it credited Plaintiffs' assertion that they will "present evidence from which a reasonable jury could conclude that Apple used [Plaintiffs'] technical trade secrets in developing the blood-oxygen feature and [Plaintiffs'] marketing trade secrets in marketing both the blood-oxygen and ECG features." Dkt. 1283 at 10-11.

1  Mr. Kinrich's testimony at trial, however, did not even provide the high-level
2  connection between alleged misappropriation and damages that appeared in his report.
3  He ███████████████████████████████ during direct examination.  And he
4  admitted without qualification on cross-examination that ████████████████
5  ████████████████████████████████████████  *See* 4/13/23 AM Tr.
6  110:6-13.  Rather, he conceded that ████████████████████████████
7  ████████████████████████████████████  *Id.*; *accord id.*
8  110:14-21 ███████████████████████████████; *id.* 130:6-8 ████████
9  ████████████████████████████████████████████████
10 ███████████████████████████.

11  Put simply, Plaintiffs promised to deliver proof linking the alleged trade secrets
12 to the claimed measure of damages, but failed to present any such evidence.  To
13 survive *Daubert*, they presented an unjust enrichment theory predicated on linking
14 Apple's Blood Oxygen and ECG features to Apple's alleged misappropriation.  But at
15 trial, Plaintiffs' damages expert dropped any pretext that these features can be linked to
16 the alleged misappropriation and has instead simply placed a dollar value on the
17 features themselves.

18  In light of Mr. Kinrich's trial testimony, this Court should reconsider its initial
19 *Daubert* ruling and strike Mr. Kinrich's testimony in its entirety as fundamentally
20 unreliable.  And because Plaintiffs have advanced no other viable damages theory,
21 Apple respectfully submits that this Court should instruct the jury that they need not
22 decide the appropriate remedy for any liability.  This will permit Apple to streamline
23 its own trial presentation by not calling a responsive expert (although Apple reserves
24 the right to have its expert testify, if necessary, at any subsequent reasonable royalty
25 proceeding).  Doing this will not leave Plaintiffs with no remedy for any
26 misappropriation (though, as the trial has demonstrated, there is none), because this

Court could still calculate a reasonable royalty in a separate proceeding if the Court permits this case to go to the jury on liability and the jury finds Apple liable.[1]

## ARGUMENT

### I. THIS COURT SHOULD RECONSIDER ITS DENIAL OF APPLE'S *DAUBERT* MOTION BECAUSE MR. KINRICH DID NOT DELIVER THE UNJUST ENRICHMENT THEORY PROMISED IN HIS REPORT.

#### A. This Court Should Exercise Its Reconsideration Authority Because Apple Could Not Have Raised The Instant Challenge Until After Mr. Kinrich's Trial Testimony.

This Court has the "inherent authority and power to modify its own interlocutory orders" at any time before judgment is entered. *Allergan Inc. v. Athena*, 2012 WL 12898344, at *2 (C.D. Cal. May 24, 2012). "A request from a party for a court to exercise this authority generally comes in the form of a motion for reconsideration," which is appropriate when, *inter alia*, "new developments would affect the outcome" of the previous order. *Id.* Local Rule 7-18 mirrors this basic rule, allowing reconsideration where "new material facts" have emerged since this Court's original ruling and the moving party can make a showing of good cause. Here, both procedural requirements are met by the fact that (as discussed in greater detail below) Mr. Kinrich changed his methodology ***during his testimony at trial*** and Apple responded promptly by filing this motion just four days later.[2]

---

[1] There are even deeper problems with Mr. Kinrich's testimony that Apple will raise, if necessary, in its FRCP 50(a) motion. He stated, for example, that the profit differential between Apple Watch Series 6 and 7 and Apple Watch SE was attributable solely to three features (Blood Oxygen, ECG, and Always-On Retina Display), even though he conceded there were numerous other differences. *See, e.g.*, 4/13/23 AM Tr. 125-128.

[2] In any event, this Court's "inherent authority to modify its own interlocutory orders is not limited to the circumstances set forth in Local Rule 7-18." *Allergan*, 2012 WL 12898344, at *3; *accord Universal Elecs. Inc. v. Logitech, Inc.*, 2012 WL 13028537, at *1 (C.D. Cal. July 2, 2012). Apple submits this Court should, at a minimum, exercise its plenary authority to revisit its prior *Daubert* ruling.

### B. Mr. Kinrich Stated In His Report And Deposition That He Would Testify That The Value Of The ECG And Blood Oxygen Features Flow From The Alleged Trade Secrets.

Mr. Kinrich's report identified two unjust enrichment theories: a "cost savings" approach that the Court has since excluded, Dkt. 1283 at 8, and a calculation "of the incremental profits Apple has enjoyed from the sale" of Apple Watch Series 6 and 7 "that incorporate Masimo Trade Secrets," *e.g.*, Dkt. 1171-3 ¶¶ 146-47. While the majority of Mr. Kinrich's analysis discussed the value of two Apple Watch features (ECG and Blood Oxygen), he linked those features to the purported trade secrets on the grounds that Plaintiffs' demodulation and light propagation secrets "relate" to the Blood Oxygen feature, and Plaintiffs' business secrets "relate" to both Blood Oxygen and ECG features. *Id.* ¶ 164. Mr. Kinrich confirmed his position during his deposition, agreeing for example that ██████████████████████████████████████████████████████████████████████████████████████████████████████ Dkt. 1171-5 234:3-8; *see also id.* at 233 ██████████████ *id.* 236:10-13 ████████████████████████████████████ *id.* 237:25-238:5 ██████████████████████████████████████████████████████████████.

In Apple's subsequent motion to exclude Mr. Kinrich's damages calculations under *Daubert*, Apple argued that Mr. Kinrich failed to sufficiently link Apple's alleged enrichment to its alleged misappropriation. Dkt. 1171 at 20. Apple explained that "[u]nder Kinrich's approach, if *any* alleged technical secret is found to be misappropriated, Plaintiffs are entitled to all profits attributable to the Blood Oxygen feature, even if there is no allegation of Apple using the purported secret in connection

1  with that feature or otherwise." *Id.* In response, Plaintiffs assured that they would
2  "present evidence from which a reasonable jury could conclude that Apple used
3  [Plaintiffs'] technical trade secrets in developing the blood-oxygen feature and
4  [Plaintiffs'] marketing trade secrets in marketing both the blood-oxygen and ECG
5  features." Dkt. 1186 at 21. Plaintiffs invited Apple to file a motion "after trial" if
6  Apple believed that Plaintiffs had failed to prove their case. *Id.*
7        This Court denied Apple's motion, relying in part on Plaintiffs' representation
8  about the evidence that they would present at trial. Dkt. 1283 at 10-11.

    **C.    Mr. Kinrich Failed To Testify At Trial That The Value Of The ECG
And Blood Oxygen Features Is Attributable To The Alleged Secrets.**

11        Mr. Kinrich's testimony deviated from the theory outlined in his report and
12  discussed at his deposition, in that he did not link the profits he attributed to the ECG
13  and Blood Oxygen features to the purported misappropriation at even the highest level
14  of generality. Instead, Mr. Kinrich testified only about ▇▇▇▇▇▇▇▇▇▇▇
15  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *E.g.,*
16  4/13/23 AM Tr. 83:12-15 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18  ▇▇▇▇▇▇▇; *see also id.* 84:11-85:18, 87:12-106:23 (similar).
19        As Mr. Kinrich later admitted on cross-examination, ▇▇▇▇▇
20  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
21  ▇▇▇▇▇▇▇▇▇▇▇▇▇ For example, he ▇▇▇▇▇▇
22  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23  ▇▇ 4/13/23 AM Tr. 130:6-8. Nor did he attempt to "apportion to the value of"
24  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
25  ▇▇▇ underlying Plaintiffs' light propagation and demodulation misappropriation
26  claims added to the Blood Oxygen feature. *See, e.g., id.* 129:17-130:8. Indeed, Mr.
27  Kinrich admitted that he did not link the value of Apple's alleged unjust enrichment to
28

any of Plaintiffs' specific allegations about how Apple allegedly used the light propagation or demodulation secrets:

[REDACTED]

*Id.* 113:25-114:11.

In short, Mr. Kinrich testified that [REDACTED] of the two features was [REDACTED] and agreed that [REDACTED] 4/13/23 AM Tr. 129:6-16. This analysis is both inconsistent with the prior approach documented in his report and deposition and with the basic principle that, as this Court recently explained, "[P]laintiffs' initial obligation [is] to show that whatever the gross unjust enrichment number is that that number flows from the trade secret violations." 4/12/23 AM Tr. 7:22-8:4.[3]

### D.    The Flaws In Mr. Kinrich's Approach Was Not Cured By Plaintiffs' Other Experts.

Mr. Kinrich's failure even to [REDACTED] is enough, standing alone, to render his

---

[3] Mr. Kinrich also failed to consider whether Apple's alleged misappropriation caused it to be unjustly enriched. *E.g.*, 4/13/23 AM Tr. 120-121 ([REDACTED]. This is distinct from Plaintiffs' initial burden to identify the *amount* of the benefit flowing from the misappropriation.

analysis unreliable under *Daubert*. This is because even if the value of the purported misappropriation cannot be "precisely measured, … there must be some reasonable basis for the computation." *See Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010). Because Mr. Kinrich did not attempt to provide the requisite reasonable basis for his damages figure, his testimony should be stricken.

Notably, Mr. Kinrich did not even suggest that the hole in his analysis—i.e., the lack of connection between misappropriation and the ECG and Blood Oxygen features—had been filled in by Plaintiffs' other witnesses. But even if he had, neither Dr. Robert Palmatier nor Dr. Vijay Madisetti provided a complete basis to connect the alleged misappropriation of any of the purported business strategy secrets to the full value of the Blood Oxygen and ECG features, or to the alleged misappropriation of any of the purported light propagation and demodulation secrets to the Blood Oxygen feature.

Specifically, Plaintiffs' experts have not explained how each of the alleged trade secrets connect to Blood Oxygen and ECG. Dr. Madisetti, for instance, did not ▉ ▉ ▉. *See* 4/12/23 AM Tr. 86:22-87:20, 4/12/23 PM Tr. 7:10-19:1 (▉); 4/12/23 PM Tr. 19:2-34:15 (▉). This means that he provided no basis to support the view expressed in Mr. Kinrich's report that ▉ ▉[4] Similarly, Dr. Palmatier did not ▉ ▉. *See* 4/11/23 PM Tr. 41:14-54:6 (▉), 63:9-65:18 (▉), 65:19-68:18 (▉). His discussion of the ▉ ▉

---

[4] Even if Dr. Madisetti connected Blood Oxygen to D10, Mr. Kinrich's analysis still deficient in light of Mr. Kiani's admission that D10 was no longer a secret when U.S. Patent No. 10,219,754 issued in March 2019. 4/6/23 AM Tr. 110:14-16 ("Q. But if it's in the patent and it's published in the world, how can it be a trade secret? A. It's not a trade secret anymore."); *see also* 4/11/23 PM Tr. 8:10-19 (the Court confirming same).

▊ for which Mr. Kinrich calculated unjust enrichment. *See, e.g.*, *id.* 34:21-36:6. And he mentioned ▊. *See, e.g.*, *id.* 37:14-38:17. In other words, Dr. Palmatier's testimony provides no basis for the jury to award the incremental profits ▊

Because Mr. Kinrich's testimony did not calculate unjust enrichment on a trade-secret-by-trade-secret basis and because Drs. Madisetti and Palmatier failed to explain how the ECG and Blood Oxygen features were linked to the vast majority of the purported trade secrets, Mr. Kinrich's damages calculation is fundamentally unreliable. To take just one example, if Mr. Kinrich's analysis is allowed to stand, the jury could award $3.1 billion dollars based on the misappropriation of ▊, even though ▊. That cannot be right.

## II. BECAUSE MR. KINRICH'S TESTIMONY SHOULD BE STRICKEN, PLAINTIFFS ARE AT MOST ENTITLED TO A REASONABLE ROYALTY.

Apple respectfully submits that the proper remedy for Mr. Kinrich's change in methodology (and the failure of Plaintiffs' other experts to provide supporting testimony) is for his testimony to be struck. *See, e.g.*, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 658 (M.D. Fla. 2012), *aff'd*, 725 F.3d 1377 (Fed. Cir. 2013) (striking expert testimony following jury trial where expert advanced a "new methodology … during his cross-examination" that differed from his original report). Such a ruling would also have the beneficial effect of expediting the proceedings, as Apple will have no need to call its damages expert at trial if Mr. Kinrich's testimony is stricken.

Moreover, because all of Plaintiffs' other damages theories have already been excluded, *see* Dkt. 1283 at 8, 10; Dkt. 1516 at 6; 4/12/23 AM Tr. 6:14-15:20, Plaintiffs

1  have been unable to prove entitlement to damages or unjust enrichment. Their only
2  potential remaining monetary remedy is thus "the payment of a reasonable royalty,"
3  Cal. Civ. Code § 3426.3(b), a matter which the parties have already agreed should be
4  left to this Court if there were liability, *see* Dkt. 1483 at 15. Apple accordingly
5  requests that if this case proceeds to the jury at all (and it should not for reasons Apple
6  will explain in its forthcoming FRCP 50(a) motion), the Court should instruct the jury
7  that it need not consider any damages issues. Deciding this damages issue now will
8  allow Apple to streamline its trial presentation accordingly.

## CONCLUSION

Apple respectfully requests this Court to (1) strike Mr. Kinrich's testimony as unreliable under *Daubert* and (2) instruct the jury that, if they conclude Apple is liable for misappropriation, this Court will determine any remedy.

Dated: April 17, 2023

Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: /s/ *Mark D. Selwyn*
      Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 2841 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1

 __ complies with the word limit set by court order dated [date].

Dated:  April 17, 2023                    Respectfully submitted,


                                          MARK D. SELWYN
                                          AMY K. WIGMORE
                                          JOSHUA H. LERNER
                                          SARAH R. FRAZIER
                                          NORA Q.E. PASSAMANECK
                                          THOMAS G. SPRANKLING
                                          WILMER CUTLER PICKERING HALE AND DORR LLP

                                          BRIAN A. ROSENTHAL
                                          GIBSON, DUNN & CRUTCHER LLP

                                          KENNETH G. PARKER
                                          HAYNES AND BOONE, LLP


                                          By:  /s/ *Mark D. Selwyn*
                                               Mark D. Selwyn

                                          *Attorneys for Defendant Apple Inc.*