MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING JURY INSTRUCTIONS AFFECTED BY TRIAL RECORD** |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

Apple submits this supplemental brief to highlight three legal issues that have only grown in importance during trial because of the way that Plaintiffs have presented their evidence. Apple respectfully submits that if this case survives JMOL, this Court should provide legal guidance to the jury that is tailored to the facts presented at trial. For one of these issues—described in Section II below—Apple is submitting a new jury instruction and two revised instructions. *See generally* Appx. A. For the other issues, Apple relies on its previously proposed instructions. *See generally* Dkt. 1500-1.

## I. THE TRIAL HAS CONFIRMED THE NEED FOR AN INSTRUCTION ON INTENT

California law provides that unless a trade secret defendant directly used "improper means to acquire knowledge of the trade secret," the plaintiff can only establish misappropriation by showing that the defendant knew or had reason to know their knowledge of the trade secret was wrongfully acquired. *See* Cal. Civ. Code § 3426.1(b)(1)-(2).

Plaintiffs have not made any argument that Apple directly acquired the purported trade secrets from Plaintiffs. The only evidence introduced of a direct interaction between Apple and Plaintiffs was a meeting in May 2013, and Mr. Kiani has testified that he did not provide Apple with any trade secrets during that meeting. *See* 4/6/23 AM Tr. 73; *see also, e.g.*, 4/13/23 PM Tr. 115:9-11 (similar testimony from Steve Hotelling).[1]

Rather, Plaintiffs' case rests on a theory of indirect misappropriation—i.e., that Apple obtained Plaintiffs' alleged trade secrets through Plaintiffs' former employees, Dr. Marcelo Lamego and Dr. Michael O'Reilly, after Apple hired them. Plaintiffs must accordingly show that "Apple knew or should have known" that Dr. Lamego and/or Dr. O'Reilly breached a duty by disclosing to Apple the information that Plaintiffs allege

---

[1] Shortly before the proposed jury instructions were filed, Plaintiffs made the new argument that Apple engaged in "theft, bribery, and misrepresentation." *See* Dkt. 1500-1 at 175-176. As Apple explained, this assertion is unsupported, frivolous, and offensive. *Id.* at 179-180.

constitute trade secrets. Dkt. 1275 at 9-11; *see also California Police Activities League v. California Police Youth Charities, Inc.*, 2009 WL 537091, at *3 (N.D. Cal. Mar. 3, 2009) (laying out elements to show indirect trade secret misappropriation).

The trial testimony to date has come nowhere near meeting Plaintiffs' burden to show intent. Drs. Lamego and O'Reilly each confirmed that Apple had not asked them to share Plaintiffs' confidential information and that, to the contrary, Apple had expressly told them not to "bring that type of information" to Apple. 4/13/23 PM Tr. 74 (Lamego); *see also* 4/14/23 PM Tr. 7 (O'Reilly testifying that "I never conveyed any confidential information to Apple"); *id.* at 47 (O'Reilly testifying that he has "strictly complied with … the prohibition about disclosing to Apple secret information of your former employers."). Both also testified that they had signed agreements with Apple pledging not to disclose their former employer's confidential information. 4/13/23 PM Tr. 76-77 (Lamego); 4/14/23 AM Tr. 46-47 (O'Reilly).

The Apple employees who have appeared to date have offered similar testimony. For example, Mr. Hotelling testified that he had personally explained Apple's policy prohibiting the use of a third-party's intellectual property to Dr. Lamego and that he "had no doubt" Dr. Lamego could perform his role at Apple without sharing Plaintiffs' information. 4/14/23 Tr. 21; *see also id.* at 41 (Mr. Hotelling testifying that he did not "have any reason to believe that [Lamego] shared with Apple confidential Masimo or Cercacor information"). Adrian Perica relatedly testified that "Dr. O'Reilly [had not] ever shared any Masimo confidential information with [him] or anyone else at Apple to [his] knowledge," *id.* at 103, and that Mr. Perica had neither asked "Dr. Lamego for any confidential or trade secret information from" Plaintiffs nor had been provided with such information, *id.* at 127.

Finally, Plaintiffs have not put on any evidence establishing that Apple knew or should have known that Drs. O'Reilly or Lamego were breaching a duty to Plaintiffs by providing confidential information. Indeed, both of Plaintiffs' experts testified that they

were **not** expressing an opinion on intent.  See 4/11/23 PM Tr. 91 ("Q: Just so we're clear with the jury, you are not here to offer any opinion that Dr. O'Reilly intentionally took anything from the plaintiffs to give to Apple, correct?"  "[Dr. Palmatier]: I don't know his intention."); 4/13/23 AM Tr. 25-26 ("Q: [Y]ou did not offer any opinion that other folks at Apple intentionally asked Dr. Lamego: Give us trade secrets from the plaintiffs?  We want them.… [Dr. Madisetti]: I didn't offer any evidence to that.").

Given this gaping hole in Plaintiffs' misappropriation case, if this case proceeds to the jury at all (and Apple will be moving under Rule 50(a) on the ground that it should not) it is vital that the jury receive a clear instruction on the statutory intent requirement.  Apple respectfully submits that only its proposed instruction—which provides that Plaintiffs must establish that someone at Apple beyond Drs. O'Reilly and Lamego had the requisite intent—is consistent with California law.  *See* Dkt. 1500-1 at 142-143.  Plaintiffs' suggestion—that the jury need not find that Apple had any intent at all so long as Drs. O'Reilly and Lamego were acting within the scope of their employment—is unsupported by any binding case law and would render the California Legislature's "knew or had reason to know" requirement a nullity.  *Id.* at 144-146; *see also Cisco Systems, Inc. v. Chung*, 2023 WL 2622155, at *12 (N.D. Cal. Mar. 22, 2023) ("[*E*]*ven if*" there were "a triable issue as to" the company's vicarious "disclosure or use, [the plaintiff] must *also* show that any such disclosure/use was made when [the employer] knew or had reason to know that the information was either (1) obtained by improper means, (2) subject to a duty to maintain its secrecy or limit its use." (emphases added)).[2]

---

[2] Tellingly, Plaintiffs' arguments in support of their own proposed jury instructions repeatedly contend that this Court should strictly adhere to the text of the CUTSA—except when it comes to the intent requirement.  *See, e.g.*, Dkt. 1500-1 at 79 (arguing that "the clear language of the statute" should control); *id.* at 95 (same); *id.* at 105 (same); *id.* at 118; *see also id.* at 141 (similar).

## II. THE TRIAL HAS SHOWN THE NEED FOR AN INSTRUCTION ON THE REQUIREMENTS FOR PARTICULARITY AND POSSESSION OF TRADE SECRETS

The trial record demonstrates two problems with Plaintiffs' treatment of their list of alleged trade secrets, both requiring clear instructions of law to the jury. First, Plaintiffs have treated certain of the alleged trade secrets (e.g., those relating to the purported business strategy "secrets") as amorphous and shifting in their meaning. Second, the trial has demonstrated that Plaintiffs did not possess the full breadth of the concepts recited in their alleged trade secrets—e.g., for L5, Plaintiffs developed at most particular circuitry to address an asserted problem, but now claim as a trade secret ***any*** solution to that supposed problem.

***First***, to be protectable, a "trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 43 (2014). While section 2019.210 establishes a procedural hurdle a plaintiff must clear before discovery can begin, the plaintiff must also "identify the allegedly misappropriated trade secrets with sufficient particularity for purposes of … trial." *Id.* at 44; *see also Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 712 (Fed. Cir. 2021) ("[W]ithout particularity (pre-trial and at trial), there is an inadequate basis for a fair adjudication of what information was actually used by the defendants.").

Where the trial record places the alleged trade secrets' particularity at issue, the question of whether that requirement has been satisfied should be resolved by the jury. *See, e.g.*, *Olaplex*, 855 F. App'x at 712 (noting with approval that the "Verdict Form stated the [reasonable particularity] requirement" in the special verdict question on the possession element); Jury Instructions, *LivePerson, Inc, v. (24)7.AI, Inc.*, 2021 WL 8154494 (N.D. Cal. June 17, 2021) ("In determining whether LivePerson has proved that it possessed a trade secret, identifiable with reasonable particularity, you may

consider…[.]"); Jury Instructions, *Wyndham Vacation Resorts, Inc. v. Timeshare Advocacy Int'l, LLC*, 2012 WL 4051027 (M.D. Tenn. July 19, 2012) (including in "Trade Secret Definition" instruction that "Plaintiff's proof must identify the trade secret with reasonable particularity based upon the circumstances of the case."). This Court recently clarified for the jury that it has made no finding that Plaintiffs' alleged trade secrets are defined with the requisite "particularity or specificity" necessary to constitute "true trade secrets." 4/11/23 PM Tr. 84-85.

Here, Plaintiffs' witnesses have sought in their testimony to treat the alleged trade secrets as amorphous (when compared to the written descriptions that appear in the jurors' notebooks) so as to distinguish them from concepts that were generally known and/or that Plaintiffs did not possess. For example, Plaintiffs' CEO has testified that the written description of several of the purported Business Strategies trade secrets that Plaintiffs submitted to this Court and the jury do not reflect ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 4/6/23 AM Tr. 36-37. Specifically, Mr. Kiani asserted B2 encompasses "▮▮▮▮▮▮▮▮▮▮▮▮" although none of those three terms appears in the alleged secret as written. *Id.* at 36. Mr. Kiani similarly suggested that B1 involves things like ▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 37. Later on in his testimony, Mr. Kiani further sought to redefine B2 to include words such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 54-56.

Plaintiffs' experts have taken a similar approach, contracting or stretching the language of Plaintiffs' written descriptions to suit their testimony. Dr. Madisetti, for instance, testified that Plaintiffs' possessed—and Apple misappropriated—L5 by

1 employing a finite set of solutions to the broad problem of ▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, 4/12/23 Tr. 98; *see also*
3 4/13/23 AM Tr. 70 (similar). But the written description Plaintiffs have provided of L5
4 is not limited to specific solutions—it claims the general concept of ▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In other words, Dr. Madisetti has
6 impermissibly shrunk the scope of L5 in order to fit the facts of this case. *See Waymo*
7 *LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) (plaintiff
8 cannot permissibly "claim[] broad swaths of solutions to general competing
9 considerations … rather than the single, specific solution adopted by" plaintiff)).

10 Dr. Palmatier, on the other hand, has taken the opposite approach of *expanding*
11 the written descriptions. He informed the jury that even though many of Plaintiffs'
12 purported Business Strategy trade secrets are seemingly used in the advertising for
13 common household products like a ▮▮▮▮▮ (or even in Plaintiffs' own public press
14 releases), the ▮▮▮▮▮▮▮▮▮▮▮ described by B1 and the ▮▮▮▮▮ in B2
15 necessarily cannot be discerned from public advertisements:



4/12/23 AM Tr. 67-68; *see also id.* 68 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ .

In light of this testimony, Apple requests that that the Court modify the proposed jury instructions in two ways: (1) add the "reasonable particularity" requirement to Apple's Proposed Instruction 18B ("Trade Secret Defined") and (2) provide the jury with an independent instruction on the metes and bounds of reasonable particularity. *See*

Wilmer Cutler
Pickering Hale
and Dorr LLP

Appx. A at 1-2 (setting forth Apple's revised and supplemental proposed instructions). Notably, this Court has already suggested that such instructions could be appropriately discussed at the charge conference. *See* 4/12/23 PM Tr. 117 (Mr. Mueller: "I think we take this [reasonable particularity issue] up in the final instructions, Your Honor. There are some other related issues." The Court: "Right.").

      ***Second***, the trial record reflects that for certain alleged trade secrets, Plaintiffs at most possessed some portions of a broadly worded trade secret. Possession of a part of a purported secret cannot suffice to establish the possession element of their claim. For instance, Plaintiffs defined L5 broadly to include all potential solutions for ▮▮▮▮ ▮▮▮▮ that are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, but at most they have only established that they possess a small subset of solutions (indeed, perhaps only one). *See supra* pp. 5-6 (discussing Dr. Madisetti's testimony). Similarly, Plaintiffs defined L4 to include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but have put on no evidence that they possessed the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ solution. *See* 4/12/23 PM Tr. 15-16 (striking Dr. Madisetti's testimony on Plaintiffs' possession of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ solution because it was not disclosed in his report).

      The legal requirement of possession of the full breadth of the alleged secret is another important guardrail against trade secret plaintiffs treating the scope of their alleged secrets in a nebulous fashion that is untethered to the work that led to the supposed secrets. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (prohibiting plaintiffs from "rely[ing] upon 'catchall' phrases" to identify the "trade secrets they intend to pursue at trial"); *see also* Dkt. 669 at 3 (warning Plaintiffs against "alter[ing] [their] … trade secret claims … by re-combining slippery, multi-element 'combination trade secret' claims into new subsets").

To enhance the clarity of the proposed legal guidance on this issue, Apple has revised its Proposed Instruction 17B ("Possession") to make crystal clear that Plaintiffs must prove possession of the full alleged trade secret, as they themselves defined it. *See* Appx. A at 3 (setting forth Apple's revised proposed instruction).[3]

### III. THE TRIAL HAS DEMONSTRATED THE NEED FOR AN INSTRUCTION ON COMBINATION TRADE SECRETS

For years, Plaintiffs have declined to clarify whether they are pursuing a combination trade secret case—i.e., an argument that although their purported trade secrets are generally known in whole or in part, the overall "combination of characteristics and components" is not. *See* Dkt. 1284 at 5-6; *see also* Ex. 1 (Plaintiffs responding to Apple Interrogatory No. 31's inquiry into whether they are pursuing a combination trade secret case by stating that they "are unable to determine" what a combination trade secret is). When pressed on this point at the *Daubert* stage, the only place in the record the Plaintiffs pointed to where they disclosed a combination trade secret theory was one expert's brief recitation of the relevant legal standard; they did not identify any place where Plaintiffs explained ***why*** their specific alleged trade secrets satisfy the demanding requirements of the doctrine. Dkt. 1500-1 at 132. In particular, a party pursuing a combination trade secrets case must show at least that (1) the combination is sufficiently unique and novel to give the trade secret plaintiff a competitive advantage and (2) the combination was not created just for this litigation. *Id.* at 131.

Plaintiffs' trial presentation has made clear that they are in fact pursuing a combination trade secret case for at least some of their alleged secrets. For example, Dr. Palmatier has asserted that whether the purported Business Strategy trade secrets are

---

[3] At a bare minimum, Plaintiffs' broad written descriptions for L4 and L5 raise an insurmountable hurdle when it comes to establishing possession. As Apple will explain in its Rule 50(a) brief, no reasonable jury could find that Plaintiffs possessed *both* solutions listed for L4 or all possible solutions contemplated by L5.

1 | generally known must be ▇▇▇▇▇▇▇▇ and that Plaintiffs need not show that
2 | each component of the purported trade secret taken separately is not generally known.
3 | Indeed, he has conceded that the constituent parts of certain alleged secrets were known.
4 | *See, e.g.*, 4/12/23 AM Tr. 34 ▇▇▇▇▇▇▇▇
5 | ▇▇▇▇▇▇▇▇
6 | ▇▇▇▇ (emphasis added)); *id.* at 37 ▇▇▇▇▇▇▇▇
7 | ▇▇▇▇▇▇▇▇
8 | ▇▇▇▇. That is precisely the formulation used in *Altavion Inc. v. Konica Minolta*
9 | *Sys. Lab'y Inc.*, 226 Cal. App. 4th 26, 48 (2014), which this Court has already explained
10 | stands "for the proposition that a combination of elements can constitute a protectable
11 | trade secret even if some or all of the designs were public," Dkt. 1284 at 7; *see also*
12 | *Altavion*, 226 Cal. App. 4th at 48 (combination trade secret should not be "examined bit
13 | by bit" but rather "as a whole").
14 | Dr. Palmatier's statements underscore the importance of delivering Apple's
15 | Proposed Instruction No. 22B, which lays out the metes and bounds of the combination
16 | trade secret doctrine. *See* Dkt. 1500-1 at 131-134.

## CONCLUSION

Apple respectfully requests that this Court deliver the proposed jury instructions discussed above.

Dated: April 17, 2023

Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 2,925 words, which [choose one]:

<u> X </u> complies with the word limit of L.R. 11-6.1

<u>   </u> complies with the word limit set by court order dated [date].

Dated: April 17, 2023      Respectfully submitted,

                                         MARK D. SELWYN
                                         AMY K. WIGMORE
                                         JOSHUA H. LERNER
                                         SARAH R. FRAZIER
                                         NORA Q.E. PASSAMANECK
                                         THOMAS G. SPRANKLING
                                         WILMER CUTLER PICKERING HALE AND DORR LLP

                                         BRIAN A. ROSENTHAL
                                         GIBSON, DUNN & CRUTCHER LLP

                                         KENNETH G. PARKER
                                         HAYNES AND BOONE, LLP


By: /s/ *Mark D. Selwyn*
      Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*