Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO APPLE'S TRIAL MEMORANDUM REGARDING RENEWED *DAUBERT* CHALLENGE**<br><br>Hon. James V. Selna |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND .......................................................................................... 1

        1.      Kinrich Did Not Opine On Causation In His Expert Report ............... 1

        2.      Kinrich Did Not Opine On Causation In His Deposition .................... 2

        3.      The Court Ruled That Kinrich Need Not Opine On Causation ........... 4

        4.      Kinrich Did Not Change His Opinion At Trial .................................... 5

III.    ARGUMENT ............................................................................................... 5

        1.      Apple Fails To Justify Reconsidering The Court's Prior Order .......... 5

        2.      Apple Fails To Show The Court's Prior Order Is Incorrect ................ 7

        3.      Masimo Presented Evidence That Apple Used Masimo's Trade
                Secrets To Develop And Market The Blood-Oxygen And ECG
                Features ............................................................................................... 8

                a.      Masimo's Unjust-Enrichment Claim Is Well Supported
                        ................................................................................................. 8

                b.      Apple Used L4 and L5 To Develop The Blood-Oxygen
                        Feature ..................................................................................... 9

                c.      Apple Used D1, D3, And D10 To Develop The Blood-
                        Oxygen Feature ...................................................................... 11

                d.      Apple Used Masimo's Business And Marketing Trade
                        Secrets To Market The Blood-Oxygen And ECG
                        Features................................................................................... 12

                e.      Apple Used Masimo's VIA Trade Secret To Develop
                        and Market The Blood-Oxygen And ECG Features ...... 15

IV.    CONCLUSION .......................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page No(s).**

Ajaxo Inc. v. E*Trade Fin. Corp.,
    187 Cal. App. 4th 1295 (2010) ........................................................................ 8

Alt. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal., Inc.,
    2015 WL 3825318 (C.D. Cal. June 18, 2015) ............................................... 9

Digital Envoy, Inc. v. Google, Inc.,
    2005 WL 2999364 (N.D. Cal. Nov. 8, 2005) ................................................ 9

Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.
    282 F.R.D. 655 (M.D. Fla. 2012), aff'd, 725 F.3d 1377 (Fed. Cir. 2013) ................ 6, 7

Spintouch, Inc. v. Outform, Inc.,
    2022 WL 17363902 (C.D. Cal. Sept. 28, 2022) ........................................... 7

# OTHER AUTHORITIES

Rule 50 .................................................................................................................... 1

# I.  <u>INTRODUCTION</u>

Kinrich did not change his opinions at trial.  Rather, Kinrich's expert report, his deposition, Masimo's opposition to Apple's *Daubert* motion, and the Court's order denying Apple's *Daubert* motion consistently show Kinrich would not opine on causation at trial.  Nevertheless, immediately after Kinrich testified, Apple announced that it would renew its *Daubert* arguments because Kinrich did not opine on causation.  But refraining from opining on causation was no change, and Apple's motion has not identified any other purported change in Kinrich's opinions.  Thus, Apple provides no basis to renew its *Daubert* motion or seek reconsideration on the Court's order denying that motion.  The Court should therefore deny Apple's request to strike Kinrich's testimony.

Apple's motion is actually a Rule 50(a) motion that seeks an expedited response before Masimo has even rested its case.  The Court should deny that request too.  As the Court explained in denying Apple's first *Daubert* motion, "it will be for the jury to determine whether they credit the evidence Plaintiffs intend to put forth showing Apple misappropriated its trade secrets in marketing and developing these [i.e., the blood-oxygen and ECG] features."  Dkt. 1347 at 10-11.  Masimo has already presented sufficient evidence on this point and continues to present more evidence.  The Court should deny Apple's motion in full.

# II.  <u>BACKGROUND</u>

## 1.    <u>Kinrich Did Not Opine On Causation In His Expert Report</u>

In his expert report, Kinrich calculated Apple's profits due to the blood-oxygen and ECG features in Apple's Series 6 and 7 watches.  Dkt. 1475-10 (Kinrich report) ¶¶ 147-164.  He did so by comparing Apple's profit on Series 6 and 7, which include blood oxygen and ECG, to Apple's profit on Series SE, which lack those features.  *Id*. ¶¶ 149-156.  He then determined the portion of that profit difference attributable to the blood-oxygen and ECG features.  *Id*. ¶ 157-163.

Kinrich also explained that he was "informed" that Masimo's technical trade

secrets "relate to pulse oximetry." *Id.* ¶ 164.  Similarly, he explained that he was "further informed" that Masimo's business and marketing trade secrets "relate to both the ECG and pulse oximetry features." *Id.*  Kinrich did not opine on how Masimo's trade secrets benefitted Apple's blood-oxygen or ECG features.  For example, he did not opine on how Apple used Masimo's trade secrets to develop or market those features.

### 2.      Kinrich Did Not Opine On Causation In His Deposition

At his deposition, Kinrich repeatedly confirmed he was not opining on causation or how Masimo's trade secrets relate to Apple's blood-oxygen and ECG features:

Q:   Now, you have opined that plaintiffs are entitled to all the profits attributable to the pulse oximetry feature in Apple Watch because you understand the technical *secrets relate to* pulse oximetry, is that right?

A:   Yes.

Q:   How do you understand the alleged technical trade *secrets relate to* pulse oximetry?

A:   *Because that's what I have been informed by counsel.*

Q:   And is it your understanding that the alleged technical trade *secrets related to* pulse oximetry are *related to* the pulse oximetry feature in Apple Watch?

A:   Yes.  *I don't have enough technical knowledge to answer that question.*

Dkt. 1116-6 (Kinrich Depo. Tr.) at 234:3-18 (emphasis added).  Kinrich continued to provide consistent testimony:

Q:   You have offered an opinion that plaintiffs are entitled to all profits attributable to the pulse oximetry feature in Apple Watch, correct?

A:   *That is my understanding based on what I understand plaintiffs are contending.*

Q:   And my question for you is do you understand that plaintiffs are contending that the technical *trade secrets relate to* the pulse oximetry

-2-

1  feature in Apple Watch?

2  A:  *That's a detail or level of detail that I am not comfortable answering*

3  *because I just don't know well enough.*

4  Q:  So if the alleged trade *secrets do not relate to* the pulse oximetry

5  feature in Apple Watch do you believe there is the requisite causation

6  to award incremental profits?

7  A:  *I will leave that to the lawyers to argue or to someone else to argue.*

8  I am not going to answer for them. If there isn't then that fact will come

9  out independent of anything that I say.  And if there is it will come out

10  independent of anything I say.

11  Q:  So you are not personally offering an opinion that there would be

12  causation if the asserted trade *secrets are not related to* the pulse

13  oximetry feature in Apple Watch, correct?

14  THE WITNESS: *It is my understanding* that Apple's profits related to the

15  blood oxygen measurement, SpO2 measurement is *related to the trade*

16  *secrets* and therefore is disgorgement. *I can't go a level lower than*

17  *that and talk about what it means whether the trade secrets are*

18  *embodied in the watch or not.* I understand L5 is argued to be

19  embodied in the watch. I also understand there are arguments about

20  other ones that were used of testing the watch and other things in the

21  watch and *I just don't know the legal arguments and they are not*

22  *part of my damages analysis to explain to what extent that those facts*

23  *lead to a disgorgement remedy or do not lead to a disgorgement*

24  *remedy.*  I can tell you what fraction or what dollar amount of the

25  profitability that Apple enjoys are related to pulse ox and the various

26  other elements *and then the others will have to argue whether that is*

27  *sufficient to enable disgorgement of those amounts.*

28  Q:  As part of your analysis you did not determine what portion of profits

attributable to the pulse oximetry feature in Apple Watch **relate to the asserted trade secrets**, correct?

THE WITNESS: **The amounts I have determined relate to the trade secrets in that I understand plaintiffs assert that without the trade secrets the pulse oximetry would not have been a successful component of the Apple Watch.**  So in that sense they relate to the trade secrets.

*                    *                    *

Q:  Is it your opinion that all of the profits that you calculated as attributable to pulse oximetry in Apple Watch **relate to the trade secrets**?

A:  I have apportioned everything I have got to pulse oximetry. To the extent that they are attributable to something else I do not have anything else that I can attribute them to. I understand that it would be Apple's burden to do that apportion, and I have not seen anything from Apple that suggests any further apportion beyond what I have done.

Dkt. 1116-6 (Kinrich Depo. Tr.) 235:18-239:6 (emphasis added and attorney colloquy removed).

### 3.  <u>The Court Ruled That Kinrich Need Not Opine On Causation</u>

In January 2023, Apple moved to exclude Kinrich under *Daubert*.  Dkt. 1116-1. Apple argued the Court should exclude Kinrich's unjust enrichment opinions "because they lack any reliable connection to Apple's purported misappropriation." *Id*. at 18.

Masimo argued a damages expert need not prove causation and Kinrich "properly assumed that Masimo will establish liability and causation." Dkt. 1164-1 at 18.  Masimo explained that, at trial, it would "present evidence from which a reasonable jury could conclude that Apple used Masimo's technical trade secrets in developing the blood-oxygen feature and Masimo's marketing trade secrets in marketing both the blood-oxygen and ECG features." *Id*. at 21.

-4-

The Court denied Apple's *Daubert* motion on Kinrich's unjust enrichment opinion. Dkt. 1347 at 10-11. The Court explained that Kinrich need not prove causation because other witnesses and evidence can establish causation:

> Kinrich's report itself is not required to show that Apple used Masimo's trade secrets in developing and marketing the blood-oxygen and ECG features of the Apple Watch. Therefore, Kinrich will be permitted to testify regarding his Unjust Enrichment theory damages in relation to those features and it will be for the jury to determine whether they credit the evidence Plaintiffs intend to put forth showing Apple misappropriated its trade secrets in marketing and developing these features.

*Id*.

### 4.      Kinrich Did Not Change His Opinion At Trial

At trial, Kinrich testified consistently with his expert report and deposition. He compared Apple's profit on the Series 6 and 7, which include blood oxygen and ECG, to Apple's profit on Series SE, which lack those features. 4/13/23 am Tr. (Kinrich) at 84-85, 87-92. He then used the methodology from his report to explain how much of that profit comes from the blood-oxygen and ECG features. *Id*. at 83, 92-106.

Immediately after Kinrich testified, Apple said it would renew its *Daubert* motion. Apple did not argue Kinrich's trial testimony varied from his expert report. In fact, Apple did not argue Kinrich changed anything at all. Instead, Apple argued that "[t]here is no opinion on causation, no opinion on allocation of trade secrets." 4/13/23 am Tr. at 139:9-10. Apple filed this motion four days later.

### III.  ARGUMENT

### 1.      Apple Fails To Justify Reconsidering The Court's Prior Order

Apple recognizes that it must satisfy the standard for reconsideration in Local Rule 7-18. Br. at 3. Apple's sole basis for seeking reconsideration is its assertion that Kinrich's trial testimony "deviated" from his expert report because Kinrich's trial testimony "did not link the profits he attributed to the ECG and Blood Oxygen features

to the purported misappropriation." Br. at 5.  Apple is wrong.

To support its argument, Apple incorrectly represents that Paragraph 164 of Kinrich's expert report "linked" the blood-oxygen and ECG features by explaining that the features "relate" to the trade secrets.  *Id.* at 4.  In that Paragraph, however, Kinrich stated merely that he was "informed" about which trade secrets "relate" to the blood-oxygen and ECG features.  Dkt. 1475-10 ¶ 164.  Kinrich never opined on how or why Masimo's trade secrets provide value to the blood-oxygen and ECG features.  *Id.*  During his deposition, he similarly explained that he lacked the technical expertise to link or otherwise testify to how Masimo's trade secrets relate to the blood-oxygen and ECG features.  *See supra*, Section II.B (citing Dkt. 1116-6 at 234-239).

Thus, Kinrich never opined on causation before trial.  The Court's Daubert motion acknowledged that Kinrich need not and would not opine on causation.  Dkt. 1347 at 10-11.  Kinrich did not change his opinions at trial.  His testimony adhered to his report, his deposition, and the Court's Order denying Apple's *Daubert* motion.  Thus, Apple cannot show any "new material fact" or good cause for reconsideration under Local Rule 7-18.  The Court should deny Apple's request to strike Kinrich's testimony.

Apple's single inapposite case does not support its drastic request.  *See* Br. at 8 (citing *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 658 (M.D. Fla. 2012), *aff'd*, 725 F.3d 1377 (Fed. Cir. 2013).  In *Rembrandt*, the parties requested that the court rule on the defendant's *Daubert* motion after the expert testified at trial.  *Id.* at 658.  Thus, the court struck the expert's trial testimony *after* the jury reached a verdict.  The court then ruled that without the expert's testimony, the plaintiff had no other evidence that the defendants' products meet a critical patent-claim limitation.  Accordingly, the court ordered judgment as a matter of law of no patent infringement.  *Id.* at. 669.

Moreover, the expert's behavior in *Rembrandt* went far beyond the pale and bears no similarity to this case.  The expert explained at trial that "he was not an expert" on the test protocol he cited in his expert report.  *Id.* at 658.  He also testified that he did not

follow the procedures listed in his expert report, and that "the testing procedures he actually used were markedly different from those disclosed in his expert report." *Id*. at 659. Worse, he had "no documentation to support the new procedures he claimed to have employed." *Id*. at 660. Thus, the court determined the expert "disclosed an entirely new testing protocol that formed the basis for his expert opinion." *Id*. at 663. The court also found that the expert departed from generally accepted scientific standards and his methodology was unreliable because it was undocumented. *Id*. at 667.

### 2.   Apple Fails To Show The Court's Prior Order Is Incorrect

Even if Apple had met the standard for reconsideration, Apple has not shown the Court's decision—that Kinrich need not opine on causation—was incorrect. The Court correctly held "Kinrich need not prove causation in his expert report" because "damages experts 'can assume causation.'" Dkt. 1283 at 10 (citing *Spintouch, Inc. v. Outform, Inc.*, 2022 WL 17363902, at *6 (C.D. Cal. Sept. 28, 2022)). Masimo was free to present *other* evidence "from which a reasonable jury could conclude that Apple used Masimo's technical trade secrets in developing the blood-oxygen feature and Masimo's marketing trade secrets in marketing both the blood-oxygen and ECG features." *Id.* Thus, the Court held: "Kinrich will be permitted to testify regarding his Unjust Enrichment theory damages in relation to those features and it will be for the jury to determine whether they credit the evidence Plaintiffs intend to put forth showing Apple misappropriated its trade secrets in marketing and developing these features." *Id.* Apple does not attempt to show any error in that analysis.

As explained below, Masimo presented (and continues to present) evidence on causation from witnesses other than Kinrich. Under the Court's *Daubert* order, the jury can and should decide whether they credit Masimo's evidence "showing Apple misappropriated its trade secrets in marketing and developing these features." *See id.*

**3.**  **Masimo Presented Evidence That Apple Used Masimo's Trade Secrets To Develop And Market The Blood-Oxygen And ECG Features**

Recognizing that it has no basis to exclude Kinrich, Apple argues Masimo's other experts "have not explained how each of the alleged trade secrets connect to Blood Oxygen and ECG." Br. at 7. Apple's argument is essentially a Rule 50(a) motion contending that the jury cannot "credit the evidence Plaintiffs [presented] showing Apple misappropriated its trade secrets in marketing and developing these features." *See* Dkt. 1347 at 10-11 (order denying *Daubert* motion). But Masimo's case has not even closed. Apple's premature and expedited JMOL motion, filed on an incomplete trial record, fails.

As an initial matter, Apple concedes that Madisetti ***did*** explain how Apple's misappropriation of Masimo's L4 and L5 trade secrets benefitted Apple's blood-oxygen feature. Br. at 7. Apple also concedes that Palmatier explained how Apple's misappropriation of B1 benefitted Apple's marketing and position of the blood-oxygen and ECG features. *Id*. at 7-8. Thus, Apple concedes that Masimo presented sufficient evidence for the jury to decide unjust enrichment. That alone defeats Apple's motion.

Nevertheless, as discussed below, Masimo presented evidence sufficient to show that Apple used Masimo's trade secrets to develop and market Apple's blood-oxygen and ECG features.

**a.**  **Masimo's Unjust-Enrichment Claim Is Well Supported**

Masimo introduced abundant evidence for the jury to conclude that Apple was unjustly enriched by its misappropriation of Masimo's trade secrets. Any disagreement or mathematical imprecision is a question of fact for the jury to decide. *See Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010) ("Recovery is not prohibited just because the benefit cannot be precisely measured . . . there must be some reasonable basis for the computation."). As another court in this district explained, nothing supports "the proposition that the benefit accrued by a defendant through the

-8-

use of a misappropriated trade secret must accrue from the use of the trade secret in isolation." *Alt. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal., Inc.*, 2015 WL 3825318, at *7 (C.D. Cal. June 18, 2015).  Thus "use of a party's trade secret need not be the sole source of a defendant's profits where a plaintiff has shown some causal nexus between such profits and the use of its trade secrets."  *Digital Envoy, Inc. v. Google, Inc.*, 2005 WL 2999364, at *5 (N.D. Cal. Nov. 8, 2005).  The Court should deny Apple's motion.

### b.   Apple Used L4 and L5 To Develop The Blood-Oxygen Feature





c. **Apple Used D1, D3, And D10 To Develop The Blood-Oxygen Feature**

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ███████████████████████████  ██████████████████████  ████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 █████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ████████████████████████████████  █████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20        **d.**    **Apple Used Masimo's Business And Marketing Trade Secrets**

21             **To Market The Blood-Oxygen And ECG Features**

22 ███████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25

[1] Apple argues D10 was "no longer a secret" when ████████████████████████
████████████   Br. at 7, n.4.  But Apple does not argue, or offer any support for an
argument, that D10 is unprotectable or generally known as a matter of law.  Apple also
cites no authority that it can avoid liability for its unjust enrichment by publishing
Masimo's trade secret in an Apple patent.







e. **Apple Used Masimo's VIA Trade Secret To Develop and Market The Blood-Oxygen And ECG Features**



## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Masimo respectfully requests that the Court deny Apple's Renewed Daubert Challenge and Rule 50(a) motion.

1                                  Respectfully submitted,

2                                  KNOBBE, MARTENS, OLSON & BEAR, LLP

4   Dated: April 19, 2023            By: */s/ Mark D. Kachner*

Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Irfan A. Lateef
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

57461440

1

## CERTIFICATE OF COMPLIANCE

2
        The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor

3
Laboratories, Inc., certifies that this brief contains 5,116 words, which [choose one]:

4
 X  complies with the word limit of L.R. 11-6.1.

5
__ complies with the word limit set by court order dated [date].

6

7
                              **KNOBBE, MARTENS, OLSON & BEAR, LLP**

8

9
Dated:  April 19, 2023            By: */s/ Mark D. Kachner*
                                      Joseph R. Re

10
                                      Stephen C. Jensen
                                      Sheila N. Swaroop

11
                                      Brian C. Horne
                                      Irfan A. Lateef

12
                                      Benjamin A. Katzenellenbogen
                                      Brian C. Claassen

13
                                      Stephen W. Larson
                                      Mark D. Kachner

14
                                      Adam B. Powell
                                      Kendall M. Loebbaka

15
                                      Daniel P. Hughes

16
                                      Attorneys for Plaintiffs
                                      MASIMO CORPORATION and

17
                                      CERCACOR LABORATORIES, INC.

18
57471453

19

20

21

22

23

24

25

26

27

28