Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION MEMORANDUM REGARDING APPLE'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING JURY INSTRUCTIONS AFFECTED BY TRIAL RECORD**<br><br>Hon. James V. Selna |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Masimo respectfully opposes Apple's Trial Memorandum Regarding Jury Instructions (Dkt. 1606-1).

### A. Apple's Proposed Instruction On Intent Is Improper And Unnecessary

The general rule is that, "[b]ecause trade secret misappropriation is an intentional tort, an employer may be vicariously liable for an employee's tort so long as it was committed within the scope of the employment." *Brain Inj. Ass'n of California v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020). Apple previously proposed improper instructions on a non-existent "intent" requirement. Dkt. 1500-1 at 142-43, 158-59, 172. Apple's brief merely provides more argument as to why Apple believes its instruction is appropriate. *See* Br. at 1-3. Apple's instructions are still improper.

Apple begins by arguing "direct" misappropriation requires that the defendant "used improper means to acquire knowledge of the trade secret" while "indirect" misappropriation requires that the defendant "knew or should have known" an employee used trade secrets. Br. at 1. Apple argues Masimo did not "directly" give trade secrets to Apple, so Masimo must show that Apple "knew or should have known" that Lamego and O'Reilly breached a duty by disclosing trade secrets to Apple. *Id.* Apple claims that finding Apple vicariously liable would "render the California Legislature's 'knew or had reason to know' requirement a nullity." *Id.* at 3. Apple is wrong.

The Court already rejected Apple's argument on vicarious liability. *See* Dkt. 350 at 9 (denying motion to dismiss because "the Court finds Plaintiffs have stated a theory of misappropriation based on respondeat superior as to all relevant trade secrets"). Apple presents no basis to reconsider that decision. Indeed, despite briefing this issue numerous times over several years, Apple still cites no case holding that liability under respondeat superior does not apply to trade secret claims. For support, Apple cites ***its own argument*** in the joint jury instruction filing. *See* Dkt. 1500-1 at 144-46. Apple also cites a case that dealt with the irrelevant issue of whether a defendant could be "sued for disclosing a trade secret to himself." *Cisco Systems, Inc. v. Chung*, 2023 WL 2622155, at *12 (N.D. Cal. Mar. 22, 2023).

Contrary to Apple's arguments, courts routinely find defendants vicariously liable for trade secret misappropriation by their employees. *See, e.g.*, *SolarCity Corp. v. Pure Solar Co.*, 2016 WL 11019989, at *5 (C.D. Cal. Dec. 27, 2016) (plaintiff sufficiently alleged individual "was acting within the scope of employment ... when he committed the alleged misappropriations in order to gain additional customer sales leads for" the defendant employer); *Navigation Holdings, LLC v. Molavi*, 2020 WL 5074307, at *4 (N.D. Cal. Aug. 25, 2020) (former employee-defendant used trade secrets to divert millions of dollars in orders from plaintiff to corporate defendants while employee-defendant was an officer of corporate defendants).

Nor do Apple's employment agreements insulate Apple from liability. "Misappropriation of trade secrets is within the scope of employment when it is performed, at least in part, to benefit the employer, **though the employer may forbid it**." *Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023) (emphasis added); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755–56 (1998) ("when a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, **even though it may violate the employer's policies**" (emphasis added)). Thus, the jury could find Apple vicariously liable for misappropriation by its employees.

Apple is also wrong to suggest that applying this well-established law on vicarious liability renders the "knew or had reason to know" requirement a nullity. Br. at 3. That requirement provides an alternate path to liability if the misappropriation was not within the scope of the employee's employment.

Apple argues the trial testimony comes "nowhere near meeting Plaintiffs' burden to show intent" under the "knew or had reason to know" standard. Br. at 2. For support, Apple cites only conclusory self-serving testimony from its witnesses and argues that Masimo's experts did not opine on intent. *See id.* Apple simply ignores the substantial evidence Masimo introduced through other witnesses. For example, Masimo presented evidence that Masimo warned Apple in January 2014 that Lamego "learned, and

-2-

personally conceived, a large number of very valuable trade secrets while he was at Masimo" and that Lamego "possesses detailed knowledge of trade secrets." JTX-2937; Day 9 Vol. 1 Tr. 73:16-74:4 (Hotelling). Masimo informed Apple of Lamego's confidentiality obligation to Masimo and expressly referenced and attached Lamego's Employee Confidentiality Agreement. JTX-2937; Trial Tr. Day 9 Vol. 1 at 59:21-60:19 (Hotelling). Masimo presented evidence that Lamego directly told Apple that his ten years of experience with Masimo can help Apple solve "the patient equation" which he described as "the deceptive part." JTX-672; Trial Tr. Day 9 Vol. 1 at 57:20-58:25 (Hotelling). In addition, O'Reilly warned Apple that "most of [Lamego's] knowledge (that would be directly applicable to what we are doing) may be considered confidential information of Cercacor or Masimo." JTX-672; Trial Tr. Day 9 Vol. 1 at 56:1-11. Masimo also presented evidence that Apple hired Lamego because of his technical expertise from Masimo. Trial Tr. Day 9 Vol. 1 at 63:11-23 (Hotelling). The jury could reasonably conclude from this evidence that Apple knew or should have known that the technical trade secrets were acquired or derived from Lamego and that he owed a duty to Masimo to maintain the secrecy of the information.

Masimo similarly presented evidence that Apple knew or had reason to know the non-technical trade secrets were acquired or derived from O'Reilly, who owed a duty to Masimo to maintain the secrecy of the information. *See* Cal. Civ. Code § 3426.1(b)(2)(B)(ii) and (iii). For example, Apple hired O'Reilly as Vice President of Medical Technologies. Trial Tr. Day 9 Vol. 2 at 62:9-21, 70:2-4 (O'Reilly). As a high-ranking executive, O'Reilly's knowledge is imputed to Apple. *See Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1070 (9th Cir. 1971) ("the law is clear that the knowledge of an agent is imputed to his principal particularly when he is in the executive echelon"). Thus, O'Reilly's own knowledge of his obligations to Masimo to maintain confidentiality of trade secret information is imputed to Apple. Moreover, as with Lamego, O'Reilly began providing Apple with substantial advice and know how almost immediately after arriving. Trial Tr. Day 9 Vol. 2 at 73:21-25, 81:3-82:1 (O'Reilly).

Masimo also presented substantial evidence showing that Apple recognized Masimo as the "platinum" and "golden reference." Han Depo 103:15-103:17, 105:12-6, 105:21-106:2, 106:20-107:2; Trial Tr. Day 2 Vol. 2 at 32:1-7, 36:5-12 (Kiani). Apple concluded that Masimo was the "standout" company in the space and plotted how to obtain Masimo's confidential information. Trial Tr. Day 9 Vol. 1 at 53:25-57:13 (Hotelling), 112:5-114:12 (Perica). For example, Apple's "Project Everest" discussed how to obtain Masimo's "people or assets." *Id.* at 53:25-54:24 (Hotelling). The Court's ruling this morning will allow Masimo to present evidence on Apple's plan to hire the "next level down" of Masimo employees. JTX-664. Masimo also presented evidence that Apple misappropriated Masimo's trade secrets when Apple acquired the trade secrets through improper means by hiring Lamego and O'Reilly at an inflated salary and inducing them to breach their duty of confidentiality to Masimo. Trial Tr. Day 9 Vol. 2 at 61:18-63:61- (O'Reilly); Trial Tr. Day 10 Vol. 1 at 48:23-49:25 (O'Reilly); Trial Tr. Day 8, Vol. 2 at 42:12-43:19 (Lamego); Bokma Depo 55:11-55:20, 81:8-17; Fu Depo at 113:21-114:3, 114:19-115:7, 115:17-116:8, 116:10-12, 121:11-18, 122:10-13, 122:17-123:10, 130:9-11, 131:10-132:10, 147:2-5, 147:11-148:3, 161:8-21; Kanaris Depo at 18:17-19; Sellers Depo at 82:09-18, 82:20-83:12, 257:13-22, 258:1-22.

Finally, Apple argues that its proposed jury instruction no. 24B is "consistent with California law." Br. at 3. Apple is wrong for the reasons described above, including that California law recognizes vicarious liability for trade secret misappropriation. Masimo's proposed instruction nos. 25, 26A, and 28A properly incorporate CUTSA's "knew or had reason to know" pathway to liability without ignoring the well-established parallel pathway for vicarious liability. Dkt. 1500-1. at 147, 153, 169. Masimo also provided additional arguments and support in its briefing on jury instructions. *Id.* at 139-141. The Court should reject Apple's instruction on "intent."

**B.  <u>An Instruction On Reasonable Particularity And Possession of Trade Secrets Is Improper And Unnecessary</u>**

Apple proposes instructions that add (1) a requirement of "reasonable

-4-

particularity" and (2) a "full scope" possession requirement akin to the "written description" requirement under the patent laws. Neither instruction is supported.

### 1. Apple's Reasonable Particularity Instruction Is Improper And Unnecessary

Apple seeks to add the following unsupported element to the definition of a trade secret: "That the alleged trade secret is identified with reasonable particularity." Establishing "reasonable particularity" is a procedural requirement to begin discovery, not a substantive requirement to prove existence of a trade secret. The Court found Masimo satisfied that requirement. Dkt. 264 at 5-10 (finding Masimo described trade secrets with "sufficient particularity"); Dkt. 279; Dkt. 1283 ("The Court finds this sufficiently particular to create at least a genuine issue of fact").

CUTSA does not include "reasonable particularity" as an element. CUTSA provides that information is a trade secret if it:

> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

Apple cites *Altavion v. Konica Minolta*, 226 Cal. App. 4th 26, 44 (2014), to argue that a plaintiff must "identify the allegedly misappropriated trade secrets with sufficient particularity for purposes of … trial." Br. at 4 (elipsis by Apple). But *Altavion* did not hold that "reasonable particularity" is a trial issue, much less an appropriate jury instruction. *Altavion* explained that the plaintiff must "identify the allegedly misappropriated trade secrets with sufficient particularity for purposes of discovery and trial." *Altavion*, 226 Cal. App. 4th at 44. Masimo did so here, and Masimo's compliance with Section 2019.210 is not an issue for the jury.

Apple argues for a rule that "[w]here the trial record places the alleged trade secrets' particularity at issue, the question of whether that requirement has been satisfied

-5-

should be resolved by the jury." Br. at 4. None of Apple's cited cases supports such a rule. Apple cites two cases, *Wyndham Vacation Resorts v. Timeshare*, 2012 WL 4051027 (M.D. Tenn. July 19, 2012) and *Olaplex v. L'Oreal*, 855 Fed. App'x 701 (Fed. Cir. 2021), that addressed Tennessee and Delaware law, respectively—not CUTSA. Apple argues the verdict form in *Olaplex* included the "reasonable particularity" requirement, but it actually asked "[h]as Olaplex proven" it "possessed specific, identifiable trade secrets…?" *Olaplex*, 855 F. App'x at 712.

Apple also cites the jury instruction in *LivePerson v. (24)7.AI*, 2021 WL 8154494 (N.D. Cal. June 17, 2021), which merely stated: "In determining whether LivePerson has proved that it possessed a trade secret, identifiable with reasonable particularity, you may consider the following factors: [various possession/generally known factors]." *LivePerson* did not include a separate "reasonable particularity" requirement. *See id*.

Moreover, Apple is incorrect that the trial record placed the asserted trade secrets' particularity at issue. Apple points to testimony from Masimo's CEO, Joe Kiani, that the trade secret descriptions do not reflect his language "exactly." Br. at 5. But there is no requirement that a Section 2019.210 statement perfectly match a description of the relevant confidential information at trial. Indeed, Apple's cited case rejected the similar argument that the plaintiff failed to comply with Section 2019.210 merely because the trial court described the trade secrets in different words in its final statement of decision. *Altavion*, 226 Cal. App. 4th at 49-50.

Kiani testified that he thought the jury should "look at these words" in the trade secret, "look at what Apple did, and based on the data we have what we did to decide whether these words read on it." Br. at 5. Kiani's testimony is consistent with the testimony of Apple's own expert, Kivetz, who acknowledged that he considered Kiani's testimony when interpreting the language of the trade secret. Trial Tr. Day 10 Vol. 2 at 52:15-18 (Kivetz). Apple also points to Kiani's explanation of ████████████████████████████████████████████████████████████████ Br. at 5. But this is nothing new. Kiani provided the same explanation during his

-6-

deposition, and the parties fully addressed that explanation during discovery. Kiani Depo. at 310:11-311:15.

Apple's argument that Madisetti and Palmatier purportedly restricted or stretched the trade secrets is similarly wrong. Madisetti did not "shrink" L5 by pointing to specific Masimo development work that falls within the scope of that trade secret. Br. at 5-6; Trial Tr. Day 7 Vol. 2 at 19:9-23, 19:24-20:14, 20:15-21:4 (Madisetti). Nor did Palmatier "expand[]" the trade secrets by (correctly) opining that press releases do not disclose a firm's business plans and marketing strategies. Br. at 6; Trial Tr. Day 6 Vol. 2 at 18:16-19:6 (Palmatier). Indeed, Apple quotes Palmatier's testimony that B2 "is the confidential business and marketing plan, these words, yes." Br. at 7.

None of Apple's remaining cases determined "reasonable particularity" at trial, much less as an element in a jury instruction. *See, e.g., Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 835-836 (2005) (addressing "reasonable particularity" "before discovery commences"); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845-846 (N.D. Cal. 2019) (requiring reasonable particularity on a motion for a preliminary injunction); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (granting summary judgment that "dimensions and tolerances" not specific enough); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560 at *7 (N.D. Cal. May 15, 2017) (addressing particularity on motion for preliminary injunction).

Apple argues the Court "clarified" for the jury that it "made no finding that Plaintiffs' alleged trade secrets are defined with the requisite 'particularity or specificity' necessary to constitute 'true trade secrets.'" Br. at 5. But Apple's quotes came from ***its own argument*** and witness testimony. The Court actually said that it has not yet determined whether the asserted trade secrets are trade secrets.

> THE COURT: Ladies and gentlemen, no finding has been made as to whether these items are, in fact, trade secrets. What the Court does in the beginning of a trade secret case is require the plaintiff to disclose the trade secret, the alleged trade secret.

> The Court makes the determination as to whether that is a sufficient description so that the defendant can be on notice and develop a case. It's not a finding that those are, in fact, trade secrets but, rather, that there's been a sufficient disclosure of what plaintiffs claim.

Trial Tr. Day 6 Vol. 2 at 85:10-19.

### 2. Apple's "Full Scope" Instruction Is Improper And Unnecessary

Apple also invites the Court to adopt an unprecedented instruction requiring Masimo to prove possession of the "full scope" of the trade secrets:

> Lawful possession means possession of the ***full scope*** of an alleged trade secret. Where the Plaintiffs' definition of an alleged trade secret covers multiple methods or structures, a trade secret plaintiff must prove possession of ***all*** such methods or structures.

Dkt. 1607-1 at 3. Apple seeks to argue that, if Masimo cannot show it possessed every conceivable implantation or embodiment of the trade secret description, Masimo has ***no*** trade secrets. Indeed, Apple argues that, for L5, Masimo must show it possessed ███████████████████████████████████████████████ Br. at 8. Apple further argues, for L4, that Masimo must show it possessed ██████████████████████████████████████████████████████████████████████████████ *Id*. Apple's argument makes no sense, as it would require a plaintiff to show, for example, that it used every possible LED and every conceivable photodiode to show it possessed a trade secret that references "LEDs" and "sensors." *Id*.

Not surprisingly, Apple cites nothing that supports its erroneous instruction. Contrary to Apple's suggestion, *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. Oct. 15, 2020), did not impose Apple's proposed "full scope" requirement. *InteliClear* merely required that the plaintiff describe the trade secrets

"with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade." *Id*. at 658. Nor did this Court "warn[] Plaintiffs" against altering their trade secrets. Br. at 8. Apple's quotations came from the Court's legal standard that had nothing to do with Masimo or its trade secrets. *See* Dkt. 669 at 3.

Apple also ignores that this Court recently held a plaintiff ***can*** establish partial possession and misappropriation of a trade secret. *See Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *10 (C.D. Cal. Nov. 7, 2022). There, the Court found that Masimo established "ownership" of one trade secret "with respect to pulse rate and oxygen saturation" but not "with respect to perfusion index." *Id.* The Court analyzed misappropriation for the "portion" of the trade secret that had been established. *Id.*

C. **An Instruction On "Combination Trade Secret Doctrine" Is Improper And Unnecessary**

Apple continues its attempt to create a non-existent "doctrine" called the "combination trade secrets doctrine" and impose "demanding requirements" found nowhere in the statute. That a trade secret must be "evaluated as a whole" to determine whether it is generally known does not impose the additional requirements of novelty that Apple advances. Courts routinely hold that any attempt to show a trade secret is "generally known" must be directed towards showing that "the aggregate, not the individual components, is generally known." Dkt. 1284 at 6; *see also Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 47 (2014) (courts err by examining trade secrets "bit by bit with the further requirement that [plaintiff] demonstrate protectability of its elements or some of them rather than the protectability of the [trade secret] as a whole"); *Am. Can Co. v. Mansukhani*, 728 F.2d 818, 819 (7th Cir. 1982) ("'obviousness' is not the benchmark" in trade secret cases).

Apple argues a plaintiff must meet the following "demanding" requirements: "(1) the combination is sufficiently unique and novel to give the trade secret plaintiff a competitive advantage and (2) the combination was not created just for this litigation."

Br. at 9 (citing Dkt. 1500-1 at 131). Again, Apple cites as support for that assertion ***its own argument***. *See* Dkt. 1500-1 at 131. Apple cites no authority imposing such requirements, which would be inconsistent with the law. The law does not "require[] that a trade secret be patentably nonobvious or novel." *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986). The California Court of Appeal has long held that trade secrets can be "clearly anticipated in the prior art" as well as "merely a mechanical improvement on a machine or device." *Sinclair v. Aquarius Elecs., Inc.*, 42 Cal. App. 3d 216, 222 (1974) ("patentability is not a condition precedent to the classification of a trade secret"); *see also BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *3-4 (N.D. Cal. Jan. 23, 2018) ("novelty, in the patent law sense, is not required for a trade secret"). This Court has also rejected any argument that a trade secret must be "better" than other methods. *Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021).

Apple argues its "heightened" standard for a "combination trade secret" applies even where only "some" aspects of the trade secret "were generally known at the time of the alleged misappropriation[.]" Apple's argument makes no sense. Indeed, it is hard to imagine a trade secret that would not include at least ***some*** portion that, by itself, is generally known. For example, the trade secret formula for Coca Cola undoubtedly includes at least "some" ingredients, such as sugar, that are well known in the field. Similarly, a pulse oximetry trade secret may refer to "LEDs" that are, by themselves, known in the field. As Judge Markey explained in the patent context, "virtually all inventions are 'combinations', and ... every invention is formed of 'old elements'.... Only God works from nothing. Man must work with old elements." H.T. Markey, Why Not the Statute?, 65 J. Pat. Off. Soc'y 331, 333-34 (1983). Apple presents no basis for asserting that trade secrets involving a known component must satisfy a more "demanding" standard. Indeed, even the comparably higher patentability standard does not impose such a requirement. *See In re Wright*, 848 F. 2d 1216, 1220 (Fed. Cir. 1988).

Apple cites only one case and it says nothing about the requirements Apple seeks

to impose. *See Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 47 (2014). It merely recognizes that a trade secret must be evaluated as a whole and can be protectable even if some aspect of the trade secret is "public." *Id.* ("even if some or all of the elements of Altavion's design were in the public domain and thus unprotectable, the combination was a protectable trade secret if it was secret and had independent economic value").

Apple argues that its instruction is necessary because Palmatier "asserted that whether the purported Business Strategy trade secrets are generally known must be 'evaluated as a whole' and that Plaintiffs need not show that each component of the purported trade secret taken separately is not generally known." Br. at 9-10. There is nothing surprising about Palmatier's "assertion." As Apple admits, it is the black-letter law that courts apply. *See, e.g.*, *Altavion*, 226 Cal. App. 4th at 47. Indeed, Apple's counsel literally wrote a book on trade secret law with a section captioned "combinations of information" that explains they are evaluated the same as every other trade secret and does not impose the additional standards that Apple now advances. *See* Sprankling, Understanding Trade Secret Law (2020), § 2.04[D]. Apple has no support for its purported "combination trade secret doctrine" or the made-up "demanding" standard that Apple seeks to impose.

                                            Respectfully submitted,

                                            Knobbe, Martens, Olson & Bear, LLP

Dated: April 19, 2023           By: */s/ Adam B. Powell*
                                                      Joseph R. Re
                                                      Stephen C. Jensen
                                                      Sheila N. Swaroop
                                                      Brian C. Horne
                                                      Irfan A. Lateef
                                                      Benjamin A. Katzenellenbogen
                                                      Brian C. Claassen
                                                      Stephen W. Larson
                                                      Mark D. Kachner
                                                      Adam B. Powell
                                                      Kendall M. Loebbaka
                                                      Daniel P. Hughes


57461440

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 3,698 words, which [choose one]:

 X   complies with the word limit of L.R. 11-6.1.

 __  complies with the word limit set by court order dated [date].

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: April 19, 2023        By: */s/ Adam B. Powell*
　　　　　　　　　　　　　　　　Joseph R. Re
　　　　　　　　　　　　　　　　Stephen C. Jensen
　　　　　　　　　　　　　　　　Sheila N. Swaroop
　　　　　　　　　　　　　　　　Brian C. Horne
　　　　　　　　　　　　　　　　Irfan A. Lateef
　　　　　　　　　　　　　　　　Benjamin A. Katzenellenbogen
　　　　　　　　　　　　　　　　Brian C. Claassen
　　　　　　　　　　　　　　　　Stephen W. Larson
　　　　　　　　　　　　　　　　Mark D. Kachner
　　　　　　　　　　　　　　　　Adam B. Powell
　　　　　　　　　　　　　　　　Kendall M. Loebbaka
　　　　　　　　　　　　　　　　Daniel P. Hughes

　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　MASIMO CORPORATION and
　　　　　　　　　　　　　　　　CERCACOR LABORATORIES, INC.

57474219