1  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
     thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
     joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
     amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
     HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14 [Counsel appearance continues on next page]

15 *Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>      Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br>a California corporation,<br><br>      Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY TO PLAINTIFFS' OPPOSITION TO APPLE'S RENEWED *DAUBERT* CHALLENGE** |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# INTRODUCTION

Plaintiffs ignore the basis for Apple's motion. Apple is not arguing that Mr. Kinrich was required to testify about causation as it relates to liability—i.e., whether Plaintiffs have identified that Apple suffered any unjust enrichment at all. Rather, Apple challenges the reliability of Mr. Kinrich's testimony because he failed to provide any basis for the *amount* of the unjust enrichment damages "flow[ing] from the trade secret violations." *See, e.g.*, 4/12/23 AM Tr. 7:22-8:4 (this Court discussing Plaintiffs' initial burden (emphasis added)). It is undisputed that Mr. Kinrich failed (1) to mention the purported trade secrets even once on direct or (2) to offer ███████ ████████████████████████. 4/13/23 AM Tr. 110:6-13 (emphasis added). That is fatal to Plaintiffs' position.

Because Mr. Kinrich's testimony fails to comply with the legal standard and diverges from his report and deposition—which at least purported to connect his damages calculations to the purported misappropriation at a high level—Apple respectfully submits that his testimony should be struck as insufficiently reliable under *Daubert*.

Moreover, even if this Court were to accept Plaintiffs' argument that Mr. Kinrich can rely on other witnesses' testimony to link the purported trade secrets to his damages figure, he failed to do even that. Furthermore, none of Plaintiffs' witnesses have provided an evidentiary basis that could support Mr. Kinrich's deficient methodology. While Plaintiffs devote half their brief to supposedly providing "evidence that Apple used Masimo's trade secrets to develop and market the Blood-Oxygen and ECG features," Opp. 8-16 (capitalization omitted), their summary of the evidence presented barely mentions Blood Oxygen and ECG and fails to identify record evidence linking those features to most of their purported secrets. This

evidentiary hole renders Mr. Kinrich's methodology unreliable.  It should be struck.[1]

## ARGUMENT

### I. MR. KINRICH'S METHODOLOGY FOR DETERMINING THE AMOUNT OF UNJUST ENRICHMENT IS UNRELIABLE BECAUSE HE DID NOT LINK HIS $3.1 BILLION CALCULATION TO THE PURPORTED TRADE SECRETS IN ANY WAY.

As explained, Mr. Kinrich's testimony diverged from his report and deposition because he did not explain—at even the highest level of generality—how the $3.1 billion in value he assigned to the ECG and Blood Oxygen features was connected to Apple's trade secret misappropriation.  Mem. 4-6.  Remarkably, Mr. Kinrich offered a damages opinion without even mentioning the purported trade secrets in his direct examination testimony.

Recognizing that, Plaintiffs devote much of the first half of their brief to arguing that Mr. Kinrich was not required to testify about the question of causation as it relates to liability (i.e., whether Apple received any benefit at all from the purported misappropriation).  Opp. 5-7; *see also id.* 1-4.  This is a red herring.  As Apple made clear in its opening brief, the question of whether "Apple's alleged misappropriation caused [Apple] to be unjustly enriched … is distinct from Plaintiffs' initial burden to identify the *amount* of the benefit flowing from the misappropriation."  Mem. 6 n.3.  This distinction springs directly from Apple's *Daubert* briefing, which challenged Mr. Kinrich's analysis *both* due to the lack of a causation analysis *and* because Mr. Kinrich had failed to provide a sufficient explanation for how Watch used the purported secrets.  Dkt. 1171 at 20.

Plaintiffs do not acknowledge the important difference between causation and amount, which moots a number of their arguments including: (1) this Court already

---

[1] Apple will (if necessary) address the various other flaws with Plaintiffs' unjust enrichment case—including the failure to establish causation—in its forthcoming FRCP 50(a) motion.

held that Mr. Kinrich need not address causation and (2) Mr. Kinrich did not discuss causation in his report or his deposition.[2] Nothing in this Court's *Daubert* ruling relieved Mr. Kinrich of his duty to explain that his damages calculation related to Apple's misappropriation. And the deposition testimony that Plaintiffs rely upon proves Apple's point that Mr. Kinrich previously represented that his opinion was based on his "understanding that," for example, "Apple's profits related to the blood oxygen measurement, SpO2 measurement is related to the trade secrets." *See* Dkt. 1116-6 at 236:16-237:17, *cited in* Opp. 3; *see also* Dkt. 1116-6 at 237:19-238:5 ("The amounts I have determined relate to the trade secrets in that I understand plaintiffs assert that without the trade secrets the pulse oximetry would not have been a successful component of the Apple Watch"). Mr. Kinrich's failure to repeat even this high-level "understanding" to the jury left the impression that he—as an expert recognized by this Court—believed that Plaintiffs were entitled to the total profits of the ECG and Blood Oxygen features regardless of whether they have any link to the purported trade secrets.

Plaintiffs' attempts to distinguish this case from *Rembrandt* are similarly misguided. Plaintiffs first suggest that *Rembrandt* is distinguishable on procedural grounds—i.e., because the *Rembrandt* court issued its ruling after the close of evidence and ultimately granted the defendant judgment as a matter of law. Opp. 6. But nothing in *Rembrandt* bars a renewed *Daubert* motion from being filed while evidence is still open. Such a ruling would at least be appropriate here, where Mr. Kinrich has already testified. In any event, this argument is at best a reason to slightly delay a decision on Apple's motion, not a reason to deny it.

---

[2] Plaintiffs' suggestion that Mr. Kinrich never "linked" Blood Oxygen and ECG to the alleged trade secrets, Opp. 6, ignores that he *justified* his approach based on his understanding that these features "relate" to the alleged secrets. If Mr. Kinrich truly never linked these features to the secrets, as Plaintiffs now appear to contend, then Mr. Kinrich never had any colorable basis to present his profit differential calculation.

Plaintiffs also argue that *Rembrandt* involved more extreme facts than this case. Opp. 6-7. But Apple has never argued that *Rembrandt* is factually identical; Apple cited it for the legal proposition that a renewed *Daubert* motion is an available remedy. Regardless, Plaintiffs' attempts to distinguish *Rembrandt* are overblown. In particular, while Mr. Kinrich's presentation of his calculation valuing the Blood Oxygen and ECG *features* is consistent with his report, Mr. Kinrich's failure to mention the purported secrets at all is not—that is at least analogous to the *Rembrandt* expert's decision to raise a "new methodology … during his cross-examination" that differed from his original report. *See, e.g.*, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 658, 666 (M.D. Fla. 2012), *aff'd*, 725 F.3d 1377 (Fed. Cir. 2013).

## II. Plaintiffs' Proffered "Evidence" Does Not Fill The Hole In Mr. Kinrich's Testimony.

As explained, Plaintiffs should not be permitted, *ex post facto*, to rely on the testimony of other witnesses to save Mr. Kinrich's analysis because Mr. Kinrich himself failed to do so in front of the jury. Mem. 7. But even if this Court concluded this approach is permissible, Plaintiffs' witnesses have failed to present evidence linking the value of *all* the purported trade secrets to the Blood Oxygen and/or ECG features. Mem. 7-8. And without evidence showing a link between each trade secret and at least one of the features, Mr. Kinrich's methodology is unreliable, and his damages calculation cannot stand. Mem. 8. Plaintiffs' arguments to the contrary are unavailing.

*First*, Plaintiffs contend that there is sufficient evidence in the record to render reliable Mr. Kinrich's unjust enrichment analysis so long as they have shown that Apple used at least one purported trade secret. Mem. 8. Not so. Mr. Kinrich's report indicated that use of *any* of the business strategy trade secrets justifies an award of $3.1 billion and the use of *any* of the purported technical trade secrets justifies an

award of $1.8 billion.  *See* Dkt. 1171-3 ¶ 164.  Plaintiffs must accordingly present evidence that *each* purported trade secret is linked to the Blood Oxygen and/or ECG features.  Otherwise, the jury could award damages on a purported trade secret that Plaintiffs have not even attempted to tie to supposed misappropriation in any way.

*Second*, Plaintiffs purport to provide eight pages of "evidence" that Apple used Plaintiffs' purported secrets in the Blood Oxygen and ECG features. Opp. 9-16.  But the cited testimony and exhibits barely mention those features, much less explain how those features use Plaintiffs' purported trade secrets.  Specifically:

███████████████: For L4, the only evidence Plaintiffs point to with respect to Apple Watch Series 6 and 7 is Dr. Madisetti's testimony that (1) ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████  Opp. 10.  Nowhere does Dr. Madisetti state that L4 is used in any way by the Blood Oxygen feature itself.[3]

Plaintiffs' evidence for L5 is—if possible—even weaker.  Plaintiffs identify only a single statement from Dr. Madisetti claiming that Apple identified L5 as a ████████████████.  Opp. 11.  Even taking this statement at face value (and Plaintiffs do not even provide a record citation to support it), it shows only that Apple viewed the feature alleged to relate to L5 as valuable for Apple Watch as a whole—not to the Blood Oxygen feature in particular.[4]

---

[3] Plaintiffs also cite to a slide produced by Apple that appears to relate to ████ ████████████  JTX-1078 at -632.  They do not explain how a reasonable jury would ████████████ his slide to serve as a link between L5 and Blood Oxygen.

[4] Plaintiffs appear to be referencing Dr. Madisetti's testimony ██████████████ ████████████████████████████████████████████████████████████████ 4/12/23 PM Tr. 25-26.  Plaintiffs do not explain how this ████████████████ is connected to Blood Oxygen in any way.

1         ▮▮▮▮▮▮▮▮: Plaintiffs do not identify any testimony that links D1, D3, or D10 to the Blood Oxygen feature.  Indeed, Dr. Madisetti admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 4/12/23 PM Tr. 98:25-99:2.  Instead, Plaintiffs merely cite two exhibits that they claim establish that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  Opp. 12.  But both these exhibits predated Apple's development of the Blood Oxygen feature, and Plaintiffs have offered no evidence—nor is there any—showing Apple ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the Blood Oxygen feature.  *Compare* JTX-153, 273 (▮▮▮▮▮▮▮▮▮▮) *with* 4/18/23 PM Tr. 70-71 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).



        Moreover, even if Plaintiffs had provided testimony or other evidence regarding D10's connection to Blood Oxygen, it could not support Mr. Kinrich's damages calculation.  Mr. Kinrich's calculation relies exclusively on the profits from Apple Watch Series 6 and 7, the earliest of which was not released until September 2020.  4/18/23 AM Tr. 121:19-21.  But Plaintiffs' CEO admitted earlier in this trial that D10 lost its status as a trade secret when U.S. Patent No. 10,219,754 issued in March 2019.  Mem. 7 n.4.  Plaintiffs' attempt (Opp. 12 n.1) to withdraw this strategic concession—which was elicited by Plaintiffs' counsel on *re-direct* examination—two weeks after it was made in front of the jury should be rejected.

        **Business Strategies and VIA[5]:**  With regards to the ECG feature, Plaintiffs do not identify a single line of testimony from Dr. Palmatier or any other witness that explains how the version of the feature that appears in Apple Watch Series 6 and 7 is attributable to any of the Business Strategies trade secrets.  *See* Opp. 14.  Instead, as Plaintiffs acknowledge, Dr. Palmatier's testimony discussed only B1 and addressed its

---

[5] Plaintiffs do not identify any testimony or record evidence linking VIA's reference to the technical trade secrets to the Blood Oxygen and ECG features.

1  use in the ECG feature on *Apple Watch Series 4*—a product that Mr. Kinrich did not
2  even consider in calculating unjust enrichment.  *Id.*  While Plaintiffs point to two
3  exhibits that they claim indicates that a version of the ECG feature appears on later
4  versions of Watch, Dr. Palmatier did not testify that the version used on Series 4 and
5  the version used on Series 6 and 7 are the same.

6  More broadly, Plaintiffs assert that the fact that Dr. Palmatier testified about the
7  use of B1 marketing in the Blood Oxygen and ECG features means ▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  They identify no
9  testimony or record evidence where this point has been made to the jury.  And in any
10  event, this logic does not follow at least for B7 and VIA, ▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮▮▮  VIA claims the value, importance, and appropriateness
13  of B1, B2, and B4.  Plaintiffs identify no record evidence (and no clear explanation)
14  for how the Blood Oxygen and ECG features incorporate such nebulous concepts.

## CONCLUSION

16  Apple respectfully requests this Court to (1) strike Mr. Kinrich's testimony as
17  unreliable under *Daubert* and (2) instruct the jury that, if they conclude Apple is liable
18  for misappropriation, this Court will determine any remedy.

Dated: April 20, 2023

Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: /s/ *Mark D. Selwyn*
     Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 2211 words, which [choose one]:

  X  complies with the word limit of L.R. 11-6.1

 ___ complies with the word limit set by court order dated [date].

Dated:  April 20, 2023                    Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  /s/ *Mark D. Selwyn*
         Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*