MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL TRIAL MEMORANDUM REGARDING JURY INSTRUCTIONS AFFECTED BY TRIAL RECORD** |

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

Plaintiffs' opposition misstates the law, and Plaintiffs' attempts to distinguish Apple's authority rely on false or irrelevant distinctions. Apple accordingly respectfully submits that this Court should deliver the proposed instructions that Apple requested in its opening brief.

## ARGUMENT

### I. CUTSA REQUIRES PLAINTIFFS TO SHOW INTENT; IT DOES NOT CREATE A STRICT LIABILITY REGIME

As Apple has explained, the plain text of CUTSA requires a trade secret plaintiff to show either direct misappropriation (i.e., the defendant directly engaged in taking a trade secret from another party) or—when trade secret liability is premised on an intermediary passing information from the plaintiff to defendant—that the defendant knew or should have known that the underlying information was wrongly acquired. Mem. 1-3.[1]

In their proposed instructions, Plaintiffs are treating trade misappropriation as a strict liability regime; it is not. Plaintiffs cite a quartet of district court cases—all of which were decided at the motion to dismiss stage—for the proposition that respondeat superior applies in the trade secret context. *See Brain Inj. Ass'n of California v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020); *SolarCity Corp. v. Pure Solar Co.*, 2016 WL 11019989, at *5 (C.D. Cal. Dec. 27, 2016); *Navigation Holdings, LLC v. Molavi*, 2020 WL 5074307, at *4 (N.D. Cal. Aug. 25, 2020); *Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023). Setting aside that Plaintiffs have not identified a single Ninth Circuit or California Court of Appeal decision that has adopted this approach, none of these cases discuss whether vicarious liability can be used to establish *both* the act of use/disclosure *and* intent. Courts that have considered

---

[1] Even a direct misappropriation theory requires some kind of intent to do wrong—the defendant must use/disclose the alleged trade secret "without express or implied consent" and must utilize "improper means" to acquire knowledge of the secret. *See* Cal. Civ. Code § 3426.1(b)(2)(A).

the intent question in the context of trade secret law have concluded that "it is not 'appropriate to direct a jury to impute an agent's knowledge of a secret to the principal'"—at least where the agent "did not inform *other employees* of plaintiff's concept." *Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018) (emphasis added) (quoting *Droeger v. Welsh Sporting Goods*, 541 F.2d 790, 792 (9th Cir. 1976)); *see also Cisco Systems, Inc. v. Chung*, 2023 WL 2622155, at *12 (N.D. Cal. Mar. 22, 2023) (indicating that vicarious liability in the trade secret context extends only to the act of disclosure/use and not the intent requirement).[2]

The rule laid out in *Carr* and *Chung* is consistent with the basic principle of agency law "where the principal must have actual knowledge" under the applicable standard of liability—and here the applicable standard of liability (trade secret misappropriation) requires intent. *See Herman v. Los Angeles Cnty. Metro. Transportation Auth.*, 71 Cal. App. 4th 819, 828 n.7 (1999); *accord* 2B Cal. Jur. 3d Agency § 177; *see also Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 66 (2005) (noting a defendant who acquires a trade secret from another who improperly disclosed it "is not liable under the [CUTSA] unless he knew or had reason to know that the trade secret was improperly disclosed" (emphasis omitted)). Plaintiffs' rule would also mean that a corporation could be subject to a multi-billion-dollar judgment for hiring an at-will employee who had—as an individual—taken a trade secret from a prior employer, *without the corporation having any knowledge whatsoever of such misappropriation*. That is not the law of trade secret misappropriation, and moreover transforming trade secret misappropriation into a strict liability regime would be directly contrary to California's policy of encouraging employee mobility. *See* Dkt. 1469 at 3

---

[2] Plaintiffs attempt to distinguish *Chung* on its facts, but the single line Plaintiffs quote from the decision was not addressing vicarious liability—it was explaining the limits of what constitutes disclosure under the CUTSA. *See Chung*, 2023 WL 2622155, at *8 (rejecting Plaintiffs' position on disclosure because, if taken to its extreme, it would permit "an alleged misappropriator to be sued for disclosing a trade secret to himself").

("[E]mployees are not only permitted but encouraged to move freely from one company to another under at-will employment.").

Plaintiffs also argue that there is "substantial evidence" in the record that Apple knew or should have known that Drs. Lamego and O'Reilly were providing improperly acquired trade secret information. Opp. 2-4. Apple disagrees and will address this purported "evidence" in its forthcoming FRCP 50(a) motion, most of which boils down to unrelated documents linked only by attorney argument. But even if Plaintiffs were correct, that there is a *factual* dispute over intent provides a very good reason to give clearly worded *legal* instructions on the issue.

## II. PLAINTIFFS' INCONSISTENT TESTIMONY ON THE SCOPE OF THEIR PURPORTED TRADE SECRETS JUSTIFIES TAILORED INSTRUCTIONS ON REASONABLE PARTICULARITY AND POSSESSION

As explained, during the course of this trial, Plaintiffs have treated the written descriptions of the purported trade secrets that are included in the jurors' notebooks as suggestions rather than governing definitions. Mem. 5-8. This conduct has called into question both whether the purported trade secrets as written are reasonably particular and whether Plaintiffs possess the full scope of the trade secrets that they originally claimed—necessitating clear instructions on both points. Mem. 7-9. Plaintiffs' arguments to the contrary are unavailing.

**A. Reasonable Particularity**. *First*, Plaintiffs contend that reasonable particularity is merely a "procedural" discovery requirement rather than a substantive legal requirement to make out a trade secret case. Opp. 5. But as Plaintiffs concede just a few pages later, numerous courts—including the Ninth Circuit—have treated the reasonable particularity requirement as an element that a plaintiff must satisfy at numerous stages in litigation, including when seeking a preliminary injunction or when trying to avoid a motion for summary judgment. Opp. 7.

*Second*, Plaintiffs fall back on the argument that reasonable particularity is an issue exclusively for the Court rather than for a jury. Opp. 5-6. But Plaintiffs cite no case that has reached this conclusion and the Federal Circuit has held to the contrary. Specifically, in *Olaplex, Inc. v. L'Oreal USA, Inc.*, the panel unanimously reversed the jury's finding of misappropriation, holding that "no reasonable jury could have found that" the plaintiff "met its burden of proving that [the] information was a trade secret" because *inter alia* the plaintiff had failed to articulate its trade secrets with the requisite "particularity." 855 F. App'x 701, 710-713 (Fed. Cir. May 6, 2021).

Plaintiffs attempt (Opp. 5) to distinguish *Olaplex* because it involved Delaware law, but the Federal Circuit's reasoning relied upon the Restatement and Ninth Circuit case law. 855 F. App'x at 711-712 (noting the "*general* requirement that 'a person claiming rights in a trade secret bears the burden of defining the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection … and to determine the fact of an appropriation'" (emphasis added)). Plaintiffs also quibble (Opp. 6) that the relevant *Olaplex* jury instruction asked the jury whether the plaintiff had established it "possessed specific, identifiable trade secrets" rather than using the term "reasonable particularity." But the Federal Circuit necessarily treated the two terms as synonymous—otherwise, it could not have granted judgment as a matter of law on reasonable particularity.[3]

*Third*, Plaintiffs argue their witnesses' testimony did not put the purported trade secrets' scope at issue. Opp. 6. But they concede that their very first witness—Plaintiffs' CEO Joe Kiani—informed the jurors that the written definitions that appear in their notebooks did not track his precise understanding of the purported secrets. *Id.*

---

[3] This also answers Plaintiffs' complaint that the instruction in *LivePerson* does not ask the jury to resolve reasonable particularity. If anything, the *LivePerson* instruction highlighted the reasonable particularity issue more clearly than its *Olaplex* counterpart. *See* 2021 WL 8154494 (asking jurors to determine "whether LivePerson has proved that it possessed a trade secret, identifiable with reasonable particularity …").

While Plaintiffs argue that there was "no requirement" for Mr. Kiani to "perfectly match" the trade secret definitions in the juror notebooks, Opp. 6, without clear instructions from the Court, there is no way to know how the jury understands the scope of the purported trade secrets. Plaintiffs certainly do not identify any case that has held that it is permissible as a matter of law for a trade secret plaintiffs' CEO and corporate representative to deviate from the plaintiff's previously submitted trade secret definitions *during* trial.

Plaintiffs also flatly deny that Drs. Madisetti and Palmatier modified the scope of the purported trade secrets during their testimony. Opp. 7. But Plaintiffs provide no reasoning to support their denial and do not grapple with the specific examples provided by Apple—e.g., Dr. Palmatier's suggestion that a press release that includes every component of B1 that appears in Plaintiffs' written definition does not reveal B1 to the world. *See* Mem. 6-7.

*Finally*, Plaintiffs are incorrect when they suggest that this Court has not addressed whether the reasonable particularity issue has already been settled. Opp. 7-8. Specifically, one of Plaintiffs' expert witnesses (wrongly) informed the jury that this Court had already "approved" the "particularity or specificity" of Plaintiffs' purported trade secrets before trial. 4/11/23 PM Tr. 84-85. Apple's counsel promptly objected and this Court instructed the jury that "no finding as been made as to whether these items are, in fact, trade secrets." *Id.*

**B. Possession.** Plaintiffs contend that it is unfair to require them to show that they possessed the full scope of the purported secrets that *they* chose to draft using broad strokes—i.e., by claiming two ways of performing the same task (L4) or claiming all solutions to a particular problem (L5). Opp. 8. Not only is this an issue of Plaintiffs' own making, but Plaintiffs reaped a significant benefit from their choice. By relying on broadly drafted purported secrets that capture a wide array of conduct, Plaintiffs were

able to seek broader discovery. Now the time has come for Plaintiffs to prove they actually possessed the full scope of these alleged trade secrets, or their claims must fail.

*Second*, Plaintiffs argue that they were allowed to pursue a theory under which they had "partial" possession of a trade secret in the *True Wearables* case. Opp. 9. But *True Wearables* cited no authority for this approach, and it is unclear whether the possession issue that Apple now presses was briefed by either party. Regardless, nothing in *True Wearables* suggests that a plaintiff may unilaterally narrow its purported trade secrets during the middle of a jury trial—particularly when the jury has already been provided with a detailed list of the information that the plaintiff claims as a trade secret.

### III. PLAINTIFFS' RELIANCE ON A COMBINATION TRADE SECRET THEORY FOR AT LEAST THEIR PURPORTED BUSINESS STRATEGIES SECRETS JUSTIFIES AN INSTRUCTION ON THE ISSUE

As Apple explained, Plaintiffs' trial presentation—and, in particular, Dr. Palmatier's testimony regarding the supposed business strategies trade secrets—has finally made clear what Plaintiffs have long refused to confirm: They are pursuing a combination trade secret case for some of their purported secrets. Mem. 9-10.

Remarkably, Plaintiffs do not deny that at least B1 and B4 are assembled entirely of information that is already in the public domain. *Compare* Mem. 9-10 *with* Opp. 11. The arguments they do make are unavailing.

In particular, Plaintiffs again urge that trade secret law does not impose special rules for combination trade secrets. Opp. 9, 11. That is wrong. Apple has presented Plaintiffs with a laundry list of cases that hold there are additional requirements for combination trade secrets. *See* Dkt. 1500-1 at 131 n.52 (collecting authority from the Ninth Circuit, the California Court of Appeal, California federal district courts, the Second Circuit, the Eighth Circuit, the Tenth Circuit, and this Court's own prior jury instructions); *see also id.* 132-134 (Apple's discussion of this authority). The doctrine has also been recognized by the leading treatise on trade secrets. *See* 1 Milgrim on Trade

Secrets § 1.08[5] (2023 update) (discussing trade secret protections for "new combinations of previously known matter" (capitalization omitted). And while the hornbook co-authored by one of Apple's counsel does not purport to be an exhaustive compendium of trade secret law, it too treats "combinations of information" as a special category distinct from the normal "generally known" analysis. *Compare* Sprankling & Sprankling, UNDERSTANDING TRADE SECRET LAW (2020), §2.04[B] (section entitled "Not 'Generally Known'") *with id.* §2.04[D] (section entitled "Combinations of Information," which notes that "'combinations of public information from a variety of different sources *when combined in a novel way* can be a trade secret'" (emphasis added)).[4]

Plaintiffs cite several cases that stand for the proposition that—as a general matter—information does not need to be novel or non-obvious to be protectable as a trade secret. Opp. 10. Apple does not dispute that general rule. But when a party seeks to claim as a trade secret information that is known to the public in whole or in significant part, a higher standard is applied to ensure that the unscrupulous do not reap a windfall from information that is already in the public domain.

Finally, Plaintiffs rely on the *Altavion* case in support of their position that whether any purported trade secret is generally known must be determined by considering the purported secret "as a whole" rather than "bit by bit." Opp. 9. But this Court has expressly rejected Plaintiffs' argument that *Altavion* was stating a general principle of law—as opposed to discussing the special context of combination trade secrets. *See* Dkt. 1284 at 5-6. Specifically, this Court noted that the language quoted from *Altavion* was merely "resuscitat[ing]" the Tenth Circuit's ruling in a case discussing the combination trade secret doctrine. *Id.* That Tenth Circuit case—

---

[4] Plaintiffs' complaint (Opp. 10) that Apple cited "no authority" for its position ignores that Apple cross-referenced its arguments from the combined jury instruction document—just as Plaintiffs do earlier in their own brief, *see* Opp. 4.

*Rivendell Forest Prods. v. Georgia-Pacific Corp.*—makes clear that the combination trade secret doctrine applies when "the elements are in the public domain, but there has been accomplished an effective, successful, and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage." 28 F.3d 1042, 1046 (10th Cir. 1994), *cited in* Dkt. 1500-1 at 132.  In other words, *Rivendell* imposes precisely the same requirements that Plaintiffs claim (Opp. 10) are "inconsistent with the law."

## CONCLUSION

Apple respectfully requests that this Court deliver the proposed jury instructions discussed in its supplemental trial memorandum.

Dated:  April 20, 2023

Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: /s/ *Mark D. Selwyn*
      Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 2,447 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1

 __ complies with the word limit set by court order dated [date].

Dated: April 20, 2023                    Respectfully submitted,

                                         MARK D. SELWYN
                                         AMY K. WIGMORE
                                         JOSHUA H. LERNER
                                         SARAH R. FRAZIER
                                         NORA Q.E. PASSAMANECK
                                         THOMAS G. SPRANKLING
                                         WILMER CUTLER PICKERING HALE AND DORR LLP

                                         BRIAN A. ROSENTHAL
                                         GIBSON, DUNN & CRUTCHER LLP

                                         KENNETH G. PARKER
                                         HAYNES AND BOONE, LLP


                                         By: /s/ *Mark D. Selwyn*
                                              Mark D. Selwyn


                                         *Attorneys for Defendant Apple Inc.*