Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)          Brian C. Horne (Bar No. 205621)
adam.powell@knobbe.com                    brian.horne@knobbe.com
Daniel P. Hughes (Bar No. 299695)         Mark D. Kachner (Bar No. 234192)
daniel.hughes@knobbe.com                  mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**    **KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive                  1925 Century Park East, Suite 600
San Diego, CA 92130                       Los Angeles, CA 90067
Phone: (858) 707-4000                     Phone: (310) 551-3450
Fax: (858) 707-4001                       Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JUDGMENT AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(a) ON ALL DEFENSES AND CLAIMS**<br><br>Hon. James V. Selna |

I. LEGAL STANDARD ................................................................................1

II. APPLE'S DEFENSES ............................................................................1

    A.    Masimo Is Entitled To JMOL On Apple's Statute-Of-Limitations Defense .......................................................................1

        1.    Applicable Law ................................................................1

        2.    Masimo Did Not Discover Apple's Misappropriation Before January 9, 2017 ............................................2

        3.    Masimo Could Not Have Discovered Apple's Misappropriation Before January 9, 2017 .................................3

            a.    Before January 9, 2017, Masimo Had No Reason to Suspect Misappropriation Occurred .................................3

            b.    Apple Introduced No Evidence To Show That Masimo Should Have Investigated And Could Have Discovered Facts Sufficient To Bring A Claim Before January 9, 2017 ..............................................6

    B.    Masimo Is Entitled To JMOL On Apple's Unclean Hands Defense And Any Other Defense Apple Ever Raised .........................6

III. MASIMO'S CLAIMS ...........................................................................7

    A.    Masimo Is Entitled to JMOL That Every Asserted Trade Secret Is A Trade Secret Under CUTSA .......................................7

        1.    Masimo's Trade Secrets Were Subject to Reasonable Efforts to Maintain their Secrecy ...................................7

        2.    Masimo Possessed Trade Secret L4, Which Was Not Generally Known Under CUTSA ........................................8

        3.    Masimo Possessed Trade Secret L5, Which Was Not Generally Known Under CUTSA ........................................8

        4.    Masimo Possessed Trade Secrets D1, D3, and D10, Which Were Not Generally Known Under CUTSA ............................9

        5.    Masimo Possessed Trade Secrets B1, B2, B4, and B7, Which Were Not Generally Known Under CUTSA ............................9

        6.    Masimo Possessed Trade Secret VIA, Which Was Not Generally Known Under CUTSA ........................................10

    B.    Masimo Is Entitled to JMOL That Apple Misappropriated Every Asserted Trade Secret .......................................11

        1.    Lamego and O'Reilly Had Access to the Asserted Trade

i

Secrets ....................................................................................... 11

2.  Apple Acquired Masimo's Trade Secrets Through Improper Means And Knew Or Should Have Known That Lamego And O'Reilly Improperly Provided Masimo's Trade Secrets ......... 11

3.  Apple Is Vicariously Liable For Lamego And O'Reilly's Wrongful Conduct ................................................................ 13

4.  Apple Misappropriated Trade Secret L4 ............................... 13

5.  Apple Misappropriated Trade Secret L5 ............................... 14

6.  Apple Misappropriated Trade Secret D1, D3, and D10 ........... 14

7.  Apple Misappropriated Trade Secrets B1, B2, B4, and B7 ...... 14

8.  Apple Misappropriated Trade Secret VIA .............................. 15

C.  Masimo Is Entitled to JMOL That Apple's Misappropriation Of Every Trade Secret Was Willful And Malicious ................................ 15

D.  Masimo Is Entitled to JMOL That Masimo Is A Co-Owner Of The Five Patents At Issue .................................................................. 15

1.  Lamego Made His Allegedly Inventive Contributions To The Reflectance Patents (U.S. Pat. Nos. 10,078,052 and 10,247,670) While Employed By Masimo And Cercacor ....... 16

2.  Lamego Made His Allegedly Inventive Contributions To The Demodulation Patent (U.S. Pat. No. 10,219,754) While Employed By Masimo And Cercacor .................................... 17

3.  Lamego Made His Allegedly Inventive Contributions To The Analog Front End Patents (U.S. Pat. Nos. 9,952,095 and 11,009,390) While Employed By Masimo And Cercacor ....... 17

4.  Lamego Assigned His Rights In The Patents To Masimo and Cercacor ................................................................... 18

E.  Masimo Is Entitled to JMOL That Mohamed Diab Should Be A Named Inventor On U.S. Patent Nos. 10,078,052; 10,247,670; 9,952,095; And 11,009,390 ................................................................ 18

F.  Masimo Is Entitled to JMOL That Jeroen Poeze Should Be A Named Inventor On U.S. Patent No. 10,219,754 .............................. 19

ii

1

## TABLE OF AUTHORITIES

Page No(s).

*Alamar Biosciences Inc. v. Difco Laboratories Inc.*,
   1996 WL 648286 (E.D. Cal., Feb. 27, 1996) ........................................... 1

*Cypress Semiconductor Corp.v. Superior Ct.*,
   163 Cal. App. 4th 575 (2008) ................................................................... 2

*Hays v. VDF Futureceuticals, Inc.*,
   2016 WL 5660395 (D. Haw. Sept. 28, 2016) ........................................... 2

*Mangum v. Action Collection Serv., Inc.*,
   575 F.3d 935 (9th Cir. 2009) ................................................................... 1

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ................................................................. 1

*Wilshire Westwood v. Atlantic Richfield*,
   20 Cal. App. 4th 739 (1993) .................................................................... 2

## OTHER AUTHORITIES

Fed.R.Civ. P. 50 ........................................................................................... 1

Cal. Civ. Code § 3426.6 ............................................................................ 1, 3

iii

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") respectfully move this Court for Judgment as a Matter of Law ("JMOL") on all defenses and claims.

## I. <u>LEGAL STANDARD</u>

The Federal Rules authorize courts to resolve issues against a party as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Judgment as a matter of law "is properly granted only if no reasonable juror could find in the non-moving party's favor." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1086 (9th Cir. 2014) (citing *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939 (9th Cir. 2009)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.*

## II. <u>APPLE'S DEFENSES</u>

### A. <u>Masimo Is Entitled To JMOL On Apple's Statute-Of-Limitations Defense</u>

To prevail on its statute-of-limitations defense, Apple needed to present evidence that Masimo discovered, or through exercise of reasonable diligence should have discovered, Apple's misappropriation before January 9, 2017. *See* Cal. Civ. Code § 3426.6. Apple failed to carry this burden.

#### 1. <u>Applicable Law</u>

Under the CUTSA, "[a]n action for [trade secret] misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6. Instead of running from when the cause of action ***accrues***, the CUTSA limitations period runs from when "the misappropriation ***is discovered*** or by the exercise of reasonable diligence ***should have been discovered***." *Id.* (emphases added). CUTSA effectively incorporates the common law discovery rule into the statutory predicate for triggering the limitations period. *See Alamar Biosciences Inc. v. Difco Laboratories Inc.*, 1996 WL 648286, at *3

1   (E.D. Cal., Feb. 27, 1996) (citing *Wilshire Westwood v. Atlantic Richfield*, 20 Cal.

2   App. 4th 739, 740 (1993)) ("Under both the California common law 'discovery rule'

3   and the [C]UTSA, the limitations period begins when the plaintiff has actual or

4   constructive notice of the facts giving rise to the claim.").

5        Whether a trade secret plaintiff "should have discovered the misappropriation"

6   occurs "when there is reason to suspect that a trade secret has been misappropriated, and

7   a reasonable investigation would produce facts sufficient to confirm this suspicion (and

8   justify bringing suit)." *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D.

9   Haw. Sept. 28, 2016).  "[A] suspicion that [trade secrets] theoretically could be shared

10  provides an insufficient basis for filing a trade secret misappropriation claim."  Dkt. 606

11  at 7 (citing *Cypress Semiconductor Corp.v. Superior Ct.*, 163 Cal. App. 4th 575, 587,

12  (2008)).

13      **2.**    **Masimo Did Not Discover Apple's Misappropriation Before**

14            **January 9, 2017**

15       Masimo did not discover Apple's misappropriation of Masimo's trade secrets

16  until after long January 9, 2017.  Masimo's CEO, Joe Kiani, testified that he learned

17  Lamego shared Masimo trade secrets with Apple when he saw Apple patents naming

18  Lamego as an inventor in October 2019 that disclosed work done by Mr. Diab and Jereon

19  Poeze.

20      Q.    How did you learn that what Cristiano Dalvi told you about Dr.
    Lamego's departure from Apple was not true?[1]

21      A.    In 2019, a series of patents issued to Apple with Dr. Lamego as the

22            inventor, and it was on our stuff, things that was in our notebooks

23            and done by Mr. Diab or Mr. Jeroen.

24  Trial Tr. Day 2, Vol. 2 at 50:12-19 (Kiani); Trial Tr. Day 3, Vol. 1 at 61:22-62:10

25  (Kiani).  Kiani also confirmed that he had no knowledge of "any other Dr. Lamego-filed

---

[1] Dalvi told Kiani that Lamego "left [Apple] when Apple asked him to do something competitive to [Masimo]."  Trial Tr. Day 2, Vol 2 at 49:13-50:11.

-2-

patents on behalf of Apple before October 2019." Trial Tr. Day 3, Vol. 1 at 95:16-19 (Kiani). Kiani's testimony remains uncontroverted.

Apple has presented no evidence that contradicts Kiani's testimony. Apple presented Kiani with an Information Disclosure Statement ("IDS") Masimo submitted to the Patent Office in December 2018 that lists the '052 patent among about a thousand references. *Id.* at 82:24-83:23. This IDS, of which Kiani was unaware, cannot show that Kiani had been aware of the '052 patent before January 9, 2017. Masimo filed the IDS in question in December 2018, which is after January 9, 2017. *Id.* at 83:5-8.

Apple may argue that the 2016 publication of the '052 patent should have put Masimo on notice of misappropriation. But Apple presented no facts showing that Masimo knew of the publication of the '052 patent before January 9, 2017. Moreover, neither Masimo nor Apple contends that the '052 patent discloses any of the trade secrets at issue in this case.

In sum, no reasonable jury could find that Masimo discovered Apple's misappropriation before January 9, 2017.

### 3. **Masimo Could Not Have Discovered Apple's Misappropriation Before January 9, 2017**

The evidence also does not show that Masimo should have discovered the misappropriation before January 9, 2017. *See* Cal. Civ. Code § 3426.6.

### a. **Before January 9, 2017, Masimo Had No Reason to Suspect Misappropriation Occurred**

Masimo presented evidence that Lamego and O'Reilly were both obligated to maintain the confidentiality of Masimo's trade secret information. JTX-810; JTX-1597 at -650-652; Trial Tr. Day 5 at 109:18-23, 110:6-15, 114:12-115:6 (Miller); Trial Tr. Day 9 Vol. 2 at 70:25–71:6 (O'Reilly). As explained below, Lamego and O'Reilly also repeatedly assured Masimo that they were upholding those obligations. Such assurances dissuaded Masimo from any suspicion that Apple had misappropriated Masimo's trade secrets.

Kiani testified that Lamego personally assured him that Lamego would not violate the confidentiality obligations Lamego owed to Masimo after his departure.

> Q. And do you recall what was discussed between you and [Dr. Lamego] about his resignation?
> A. Yeah. I just couldn't understand it. I said, "Look, we have noninvasive glucose. We have all these things. Why would you go?" He didn't make a lot of sense. The only thing he told me, he said, "Don't worry. I'm never going to compete with you. It goes against my integrity and ethics. If they ever ask me to do anything competitive to you, I will leave." That's what I remember.

Trial Tr. Day 2, Vol. 2 at 47:3-12 (Kiani). Kiani also testified that, later, Cristiano Dalvi, a friend of Lamego, assured Kiani that "Dr. Lamego left [Apple] when Apple asked him to do something competitive to [Masimo]." *Id.* at 49:13-50:11. Kiani testified:

> Q. And did you believe in what Cristiano Dalvi told you about Dr. Lamego's departure from Apple?
> A. I did. But obviously, I was wrong. But I did.
>
> Q. But at the time?
> A. At the time, I did. I was happy that he had not spilled our confidential information.

*Id.* at 50:6-11. Apple presented no evidence showing that it was unreasonable for Masimo to believe the assurances that Lamego would not divulge Masimo's information, or that he would quit if Apple asked him to work on projects competitive to Masimo.

In addition to assurances from Lamego, Masimo sent a letter to Apple before Lamego began working there to ensure Lamego's compliance with his confidentiality obligations to Masimo. *See* JTX-2937. The letter cautioned Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers." JTX-2937 at -094. It also declared Masimo's "trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological

information." *Id.* Thus, the letter confirms that Masimo did not suspect that misappropriation had occurred.[2]

Moreover, Masimo had no reason to doubt that O'Reilly would comply with his duty to maintain Masimo's confidentiality. O'Reilly considered Masimo to be "family." Trial Tr. Day 2, Vol. 2 at 38:15-22 (Kiani). When he left for Apple, O'Reilly personally assured Kiani that his presence at Apple was "going to get [Masimo and Apple] closer together . . . ." *Id.* at 38:15-39:3. During the initial years following O'Reilly's departure from Masimo, Kiani and O'Reilly "continued [their] friendship and dialogue." *Id.* at 39:8-20. Kiani testified:

> Q.   How did you react when you heard the news [that O'Reilly left for Apple]?
> A.   I was very saddened. And I was disappointed and thought maybe this was also the end of our relationship with Apple, which I was excited about. But he told me on that part not to be, because this is actually going to get us closer together, by him being there.
>                                    . . .
> Q.   And did you have occasion to speak with Dr. O'Reilly after he joined Apple?
> A.   Many times. We would meet every year at the ASA conference. He would come to our booth for three, four days, and we would talk. He continued to tell me Apple has no interest in pulse ox, they don't care about $SpO_2$; nobody cares about $SpO_2$. So he kind of made me feel like there's nothing to worry, competitively. So we continued our friendship and dialogue.

*Id.* at 38:23-39:16. O'Reilly and Kiani continued their friendship, with Kiani providing assistance to O'Reilly by connecting him with a top-oncologist Kiani knew. Trial Tr. Day 2, Vol. 2 at 39:8-40:11 (Kiani). O'Reilly responded by thanking "Joe, for being Joe, one person in the world who I know I can always count." *Id.* at 40:24-41:10. Their

---

[2] Indeed, the Court had previously found that the letter alone does not trigger the statutory period. Dkt. 606 at 3.

dialogue continued until October 14, 2018, when O'Reilly wrote his final text message to Kiani.  JTX-5002; Trial Tr. Day 10, Vol. 1 at 50:6-52:13 (O'Reilly).

Based on the foregoing, no reasonable jury could conclude that Masimo should have suspected misappropriation occurred before January 9, 2017.

> ### b.    Apple Introduced No Evidence To Show That Masimo Should Have Investigated And Could Have Discovered Facts Sufficient To Bring A Claim Before January 9, 2017

Even if, before January 9, 2017, Masimo had suspected that misappropriation occurred, no investigation would have revealed facts sufficient to bring a claim for misappropriation that satisfies Rule 11.  Apple has introduced no evidence to show otherwise.  In Apple's Memo of Contentions of Law and Fact, Apple identified the release of "HealthKit in 2014 and ResearchKit in 2015" should have caused Masimo to have been aware of the purported misappropriation.  Dkt. 1361 at 20.  But no evidence has explained how the release materials for HealthKit and ResearchKit in 2014 and 2015 would have revealed facts to Masimo sufficient for it to bring a claim for misappropriation and satisfy Rule 11.  Indeed, Apple did not present any evidence of what was publicly available about HealthKit and ResearchKit in 2014-2015.  Thus, the record contains no evidence that Masimo could have learned about Apple's trade secret misappropriation through public information about HealthKit and ResearchKit in 2014-2015.  Finally, Apple did not introduce any evidence tying its statute-of-limitations defense to any particular trade secret.

## B.    Masimo Is Entitled To JMOL On Apple's Unclean Hands Defense And Any Other Defense Apple Ever Raised

During the trial, Apple reserved the right to advance an unclean hands defense. Trial Tr. Day 1, Vol. 1 at 15:4-18:16.  Apple presented no evidence on the defense at all, and represented off the record to the Court in preparing the jury instructions that it would no longer advance such defense.  Masimo is entitled to judgment as a matter of law on this defense.

In addition, in its Memorandum of Contentions of Law and Fact, Apple raised numerous other defenses including laches (V), no willful or malicious misappropriation of the alleged trade secrets (VI), readily ascertainable (VIII), independent development (IX), independent invention (X), waiver (XI), no causation (XII), and failure to mitigate (XIII).   Dkt. 1361 at 14-22.   In the Pretrial Conference Order, Apple maintained its laches, statute of limitations, waiver, failure to mitigate, unclean hands, and readily ascertainable.   Dkt. 1483 at 9:21-26.   The Court has already rejected Apple's readily ascertainable defense (VIII).   Dkt. 1284 at 3-5.   Apple presented no evidence on the other defenses.   Thus, Masimo seeks JMOL on all defenses.

### III.  MASIMO'S CLAIMS

**A.** **Masimo Is Entitled to JMOL That Every Asserted Trade Secret Is A Trade Secret Under CUTSA**

> **1.** **Masimo's Trade Secrets Were Subject to Reasonable Efforts to Maintain their Secrecy**

Masimo presented unrebutted evidence that it took reasonable efforts to maintain the secrecy of trade secrets D1, D3, D10, L4, L5, B1, B2, B4, B7, and VIA ("asserted trade secrets").   Kiani, Diab, Muhsin, Dalke, Poeze, Miller, Hammarth, and O'Reilly testified about the steps Masimo took to keep the asserted trade secrets confidential and proprietary to Masimo and Cercacor.   Trial Tr. Day 2, Vol. 2 at 18:2-19:9 (Kiani); Trial Tr. Day 3, Vol. 2 at 10:13-13:22, 15:21-16:3, 58:8-11 (Diab); Trial Tr. Day 4 at 126:4-127:4, 127:12-23 (Dalke), 55:21-59:10 (Poeze); Trial Tr. Day 5 at 61:5-75:12, 79:14-80:7, 89:3-10 (Muhsin), 104:21-109:2, 109:18-115:15 (Miller), 125:13-129:24, 130:12-132:17, 136:8-139:23 (Hammarth); Trial Tr. Day 9, Vol. 2 at 70:25–71:6 (O'Reilly); *see also* Nonin Dep. Tr. at 157:12-159:6; JTX 485, 769, 828, 2217, 2263, 2266, 2388, 2561, 2563, 2564. Dr. Madisetti and Dr. Palmatier also explained their opinions that the steps Masimo took to maintain secrecy are reasonable.   Trial Tr. Day 6, Vol. 2 at 10:1-11:13 (Palmatier); Trial Tr. Day 7, Vol. 1 at 85:21-86:7 (Madisetti).

### 2. Masimo Possessed Trade Secret L4, Which Was Not Generally Known Under CUTSA

Diab and Scruggs explained that Masimo possessed, and exposed Lamego to, the information captured by the words of L4. Trial Tr. Day 3, Vol. 2 at 70:20-74:9, 77:18-89:21, 90:5-100:-25, 101:1-25, 102:1-104:9, 111:8-113:1 (Diab); Trial Tr. Day 5 at 46:5-49:9 (Scruggs); JTX-881, 935, 936, 937, 940, 941, 173, 881, 940, 941, 1016.  Dr. Madisetti explained his analysis showing that Masimo developed and uses L4.  Trial Tr. Day 7, Vol 2 at 7:13-10:14 (Madisetti); Trial Tr. Day 8, Vol 1 at 34:16-22, 40:25-41:10 (Madisetti).

Kiani, Diab, and Madisetti explained the independent economic value that Masimo and Cercacor obtained from this trade secret not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Trial Tr. Day 3 Vol. 2 at 69:1-25 (Diab); Trial Tr. Day 7, Vol 2 at 16:7-17:5, 17:6-18:7, 33:7-20 (Madisetti); Trial Tr. Day 8, Vol 1 at 71:9-72:5 (Madisetti); Trial Tr. Day 12, Vol. 2 at 64:4-70:13, 92:6-12 (Madisetti Rebuttal).

### 3. Masimo Possessed Trade Secret L5, Which Was Not Generally Known Under CUTSA

Diab and Dalke explained that Masimo possessed, and exposed Lamego to, the information captured by the words of L5. Trial Tr. Day 3, Vol. 2 at 106:18-109:11, 110:2-9 (Diab);  Trial Tr. Day 4 at 130:18-134:17, 135:16-137:9, 138:11-139:25, 140:1-8, 141:13-143:23, 144:24-148:15, 149:2-152:18 (Dalke); Trial Tr. Day 5 at 15:19-22:8 (Dalke); JTX 827, 702, 703, 1082.1, 1082.2, 704, 1086, 1091.  Dr. Madisetti explained his analysis showing that Masimo developed and uses L5.  Trial Tr. Day 7, Vol 2 at 19:9-23:20 (Madisetti); Trial Tr. Day 8, Vol 1 at 55:6-17, 57:8-18, 68:10-69:20 (Madisetti).

Kiani, Diab, Dalke, and Madisetti explained the independent economic value that Masimo and Cercacor obtained from this trade secret not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Trial Tr. Day 3, Vol. 2 at 109:12-110:1, 110:10-24 (Diab); Trial Tr. Day 4 at 134:18-

-8-

135:15, 140:2-141:12 (Dalke); Trial Tr. Day 5 at 22:9-24:13; Trial Tr. Day 7, Vol 2 at 30:15-31:7, 31:8-33:4 (Madisetti); Trial Tr. Day 12, Vol. 2 at 73:21-79:2 (Madisetti Rebuttal); *see also* Zheng Dep. Tr. at 57:8-15, 68:12-22.

### 4.   Masimo Possessed Trade Secrets D1, D3, and D10, Which Were Not Generally Known Under CUTSA

Diab and Poeze explained that Masimo possessed, and exposed Lamego to, the information captured by the words of D1, D3, and D10. Trial Tr. Day 3, Vol. 2 at 34:12-20, 38:18-40:3, 41:2-42:19, 48:5-50:7, 50:18-51:22, 52:11-20, 53:25-54:17, 55:22-56:8, 60:15-62:2, 62:9-66:21 (Diab); Trial Tr. Day 4 at 61:13-64:23, 65:9-70:12, 70:13-71:17, 73:18-80:25, 81:1-82:7 (Poeze); JTX 798, 811, 827, 827, 828, 831, 832, 831, 832, 784. Dr. Madisetti explained his analysis showing that Masimo developed and possessed D1, D3, and D10.  Trial Tr. Day 7, Vol 2 at 34:22-41:14, 47:17-49:18, 51:9-54:12, 61:14-67:22 (Madisetti); Trial Tr. Day 8, Vol 1 at 66:19-67:5 (Madisetti); Trial Tr. Day 12, Vol. 2 at 82:19-83:14 (Madisetti Rebuttal).

Kiani, Diab, and Madisetti explained the independent economic value that Masimo and Cercacor obtained from these trade secrets not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Trial Tr. Day 3 Vol. 2 at 48:5-50:7, 51:23-52:10, 52:11-53:24, 66:22-67:17, 68:4-25, 70:1-19 (Diab); Trial Tr. Day 7, Vol 2 at 46:13-47:16, 49:19-50:10, 58:4-59:23, 71:9-72:14 (Madisetti); Trial Tr. Day 12, Vol. 2 at 79:3-81:6, 81:7-82:19 (Madisetti Rebuttal); *see also* Kanaris Dep. Tr. at 48:8-17

### 5.   Masimo Possessed Trade Secrets B1, B2, B4, and B7, Which Were Not Generally Known Under CUTSA

Kiani explained that Masimo possessed, and exposed O'Reilly to, the information captured by the words of B1, B2, B4, and B7 (Masimo's "business and marketing trade secrets").  Trial Tr. Day 2 Vol. 2 at 73:9-89:13, 76:8-15, 82:18-20, 86:12-14 (Kiani); JTX-781, 484, 485, 486, 487, 528, 529, 1586, 2743, 528, 529, P-0001, P-0002, P-0018, P-0023, P-0110.  Dr. Palmatier explained his analysis showing that Masimo developed

and uses Masimo's business and marketing trade secrets.  Trial Tr. Day 6, Vol. 2 at 15:19-64:6, 65:19-66:23 (Palmatier); Trial Tr. Day 7, Vol. 1 at 24:16-25:21 (Palmatier).

Kiani and Dr. Palmatier explained the independent economic value that Masimo and Cercacor obtained from Masimo's business and marketing trade secrets not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  Trial Tr. Day 2, Vol. 2 at 76:16-23, 82:21-83:2, 85:9-19, 86:15-17, 88:22-24 (Kiani); Trial Tr. Day 3, Vol. 1 at 20:16-21:9 (Kiani); Trial Tr. Day 6, Vol. 2 at 68:19-72:21, 87:9-20 (Palmatier); Trial Tr. Day 7, Vol. 1 at 51:8-16 (Palmatier); JTX-485, 487, 499, 502, 316, 499, 1508, 1510, 1512.

## 6.   **Masimo Possessed Trade Secret VIA, Which Was Not Generally Known Under CUTSA**

Kiani and Diab explained that Masimo possessed, and exposed Lamego and O'Reilly to, the information captured by the words of the VIA trade secret.  *See, e.g.*, Trial Tr. Day 2, Vol. 2 at 24:19–25:4, 86:18-88:4 (Kiani); Trial Tr. Day 3, Vol. 2 at 33:19-34:11, 40:11-16, 48:5-50:7, 51:23-53:11, 68:4-25, 70:1-19, 73:2-75:18, 77:5-13, 104:15-105:19,  110:10-24,  113:2-13,  113:14-115:1  (Diab).   Drs. Madisetti and Palmatier explained their analyses showing that Masimo understood the value, importance, and appropriateness, including when to use the trade secrets and under what circumstances.  Trial Tr. Day 6, Vol. 2 at 65:19-68:18 (Palmatier); Trial Tr. Day 7, Vol 2 at 72:15-73:23 (Madisetti); Trial Tr. Day 8, Vol 1 at 64:7-14, 67:6-68:9 (Madisetti); Trial Tr. Day 12, Vol. 2 at 53:7-18, 120:1-20 (Madisetti Rebuttal).

Kiani, Diab, Dalke, Madisetti and Palmatier explained the independent economic value that Masimo and Cercacor obtained from this trade secret not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  *See, e.g.*, Trial Tr. Day 6, Vol. 2 at 68:9-72:21 (Palmatier); Trial Tr. Day 7, Vol 2 at 72:15-73:23 (Madisetti); Trial Tr. Day 8, Vol 1 at 64:7-14, 67:6-68:9 (Madisetti); Trial Tr. Day 12, Vol. 2 at 53:7-18, 120:1-20 (Madisetti Rebuttal); JTX 316, 499, 1508, 1510, 1512.

**B.** **Masimo Is Entitled to JMOL That Apple Misappropriated Every Asserted Trade Secret**

    **1.** **Lamego and O'Reilly Had Access to the Asserted Trade Secrets**

Diab, Muhsin, Dalke and Kiani explained that Lamego had virtually unfettered access to Masimo's confidential information. Trial Tr. Day 3, Vol. 2 at 59:12-60:14 (Diab); Trial Tr. Day 4 at 128:2-12, 129:8-19 (Dalke); Trial Tr. Day 5 at 75:13-78:8, 78:9-25 (Muhsin); Trial Tr. Day 2, Vol. 2 at 25:21–26:11, 42:2–16 (Kiani).  Kiani and Diab also testified that Masimo exposed Lamego and O'Reilly to Masimo's confidential plans, including Kiani's future plans for the company.  Trial Tr. Day 2, Vol. 2 at 23:18-25:4; 25:21-26:11, 76:8-15, 82:18-20, 86:12-14 (Kiani).

    **2.** **Apple Acquired Masimo's Trade Secrets Through Improper Means And Knew Or Should Have Known That Lamego And O'Reilly Improperly Provided Masimo's Trade Secrets**

Kiani testified about Apple's knowledge of the confidentiality obligations of Masimo employees and about Apple's desire to acquire Masimo's technology.  Trial Tr. Day 2, Vol 2 at 31:7–38:14 (Kiani); JTX-559, 2353, 3997.  Apple witnesses provided evidentiary support, including through testimony and documents, for Masimo's claim that Apple acquired Masimo's trade secrets through improper means and knew or should have known that Lamego and O'Reilly improperly disclosed to Apple Masimo's trade secrets, which Apple then used and disclosed.

Apple's "Project Rover" sought to identify a third-party expert that Apple could use as a "stepping stone" to release its own products.  JTX-260.  Apple identified Masimo as a "Tier 1" "Target" for "Sensor Components" and later elevated Masimo Corp. and Cercacor to the two "standout" companies.  JTX-556; JTX-259.  Apple approached Masimo to conduct a "deeper dive" into Masimo's technology and discuss how Apple could integrate Masimo's technology.  JTX-720.  Apple concluded that Joe Kiani was the "health/wellness leader we are looking for" and discussed acquiring Masimo.  JTX-394.  Apple then recruited Masimo's Chief Medical Officer, Michael

O'Reilly.

In September 2013, Apple executives concluded Apple's sensor designs were a "mess" and on a path to failure. JTX-337. Cercacor's Chief Technical Officer, Marcelo Lamego, then reached out to Apple in October 2013 and offered to solve Apple's problems. JTX-1719. Apple's "Project Everest" then discussed how to engage with Masimo, including by joint development, acquisition, or acquisition of Masimo's people. JTX-263. Apple then hired Lamego for his "specialized experience that we are deeply in need of." JTX-265. And Apple started a "confidential" project to pursue the "next level down" of Masimo employees. JTX-2070. Apple then hired numerous other Masimo employees. JTX-165; Trial Tr. Day 12, Vol. 1 at 17:1-20:4. Apple specifically sought the "exclusive knowledge" of Masimo employees—not their "general" experience as Apple argues. *See, e.g.*, JTX-165.

Witness testimony also confirmed that Apple sought out, obtained, and used Masimo's confidential information from Lamego and O'Reilly. Lamego confirmed that he repeatedly used and disclosed Masimo's trade secrets at Apple. Trial Tr. Day 8, Vol. 2 at 27:24-29:24, 31:1-32:9, 34:5-36:1, 36:20-25, 37:1-38:23, 40:1-42:11, 44:10-22, 44:23-25, 45:10-18, 46:19-47:8, 47:15-52:17, 52:22-56:3, 56:8-57:24, 58:6-61:14, 62:9-63:19, 64:4-65:24 (Lamego). O'Reilly also confirmed that he repeatedly used and disclosed Masimo's trade secrets at Apple. *See, e.g.*, Trial Tr. Day 9, Vol. 2 at 40:8-24, 41:8-10 (O'Reilly).

Apple's other witnesses also testified as to Apple's acquisition, use, and disclose of Masimo's trade secrets. Trial Tr. Day 8, Vol. 2 at 92:18-22, 101:18-103:17, 113:13-23, 115:19-25, 117:17-21, 118:4-16, 119:6-9, 119:13-19, 121:14-22, 122:20-22, 123:4-11, 123:14-25, 125:5-14, 129:10-15, 129:25-130:4 (Hotelling); Trial Tr. Day 8, Vol. 2 at 103:18-104:2 (Hotelling); Trial Tr. Day 9, Vol. 1 at 21:25-22:5, 22:23-23:5, 26:18-24, 35:21-23, 43:2-13, 45:7-16, 46:3-9, 46:17-25, 48:2-49:14, 50:24-51:-14, 51:23-52:8, 52:16-21, 53:4-10, 53:11-24, 54:7-56:1, 57:4-9, 57:23-58:11, 59:1-11, 60:2-19, 63:11-64:13, 64:19-66:18, 67:19-68:1 (Hotelling), 82:8-15, 86:20-87:8, 98:5-17, 101:7-8,

104:23-105:14, 106:2-18, 106:22-107:12, 107:15-108:1, 109:23-25, 112:1-10, 113:16-114:1, 115:20-116:16, 117:10-12, 117:16-21, 118:22-119:1, 119:14-16, 119:25-120:3, 120:9-16, 121:5-8, 121:9-124:21, 125:12-126:17 (Perica); Trial Tr. Day 10, Vol. 2 at 96:24-98:9, 101:6-102:16 (Land); Trial Tr. Day 11, Vol. 1 at 33:15-34:13, 34:17-35:25, 36:14-37:20, 32:11-34:13, 40:1-7, 63:5-23 (Block); JTX-259, 556, 260, 559, 393, 394, 395, 422, 423, 425, 427, 428, 558, 316, 317, 1597, 392, 507, 487, 526, 484, 485, 486, 487, 528, 529, 484-496, 263, 320, 1719, 263, 161, 140, 142, 143, 851, 14, 161, 140, 142, 143, 851, 176; *see also* Mansfield Dep. Tr. 35:11-21; Sellers Dep. Tr. 82:09-18, 82:20-83:12, 192:04-192:20, 257:13-22, 258:1-22.

Apple presented no evidence sufficient for a reasonable jury to find that Apple did not misappropriate Masimo's trade secrets.  Apple did not present documentary evidence and, instead, offered simple conclusory denials.  No reasonable jury could find such denials sufficient to overcome the extensive evidence that Masimo presented and that Masimo's experts analyzed.

### 3.  Apple Is Vicariously Liable For Lamego And O'Reilly's Wrongful Conduct

Masimo presented evidence that Lamego and O'Reilly used Masimo's trade secrets in the course and within the scope of their employment and disclosed those trade secrets to Apple in technical discussions, business discussions, marketing discussions, documents, and invention disclosures.  *See supra* Section 1; *infra* Sections 3-7; Trial Tr. Day 6, Vol. 2 at 23:19-34:20, 49:10-53:7, 58:25-61:16 (Palmatier).  Thus, Apple is liable under the doctrine of respondeat superior.

### 4.  Apple Misappropriated Trade Secret L4

Dr. Madisetti explained Apple's misappropriation of L4. Trial Tr. Day 7, Vol 2 at 10:21-15:11, 18:8-19:1, 92:11-93:24, 98:6-14 (Madisetti); Trial Tr. Day 8, Vol 1 at 44:4-20, 47:8-16, 49:7-17, 70:7-71:18 (Madisetti); Trial Tr. Day 12, Vol. 2 at 55:16-64:3, 93:16-25, 95:3-17, 95:24-96:10, 96:23-25, 97:1-16, 103:17-105:6, 107:7-108:1, 111:16-112:24, 124:9-125:2, 125:11-19 (Madisetti Rebuttal).   Apple's witnesses

provided evidentiary support for Dr. Madisetti's analysis.  Trial Tr. Day 8, Vol. 2 at 44:23-25 (Lamego); Trial Tr. Day 10, Vol. 2 at 99:17:100:2 (Land); Trial Tr. Day 11, Vol. 1 at 38:11-40:7, 42:25-44:21, 44:22-45:15, 49:17-50:10 (Block); Han Dep. Tr. 182:2-3, 182:6, 182:9-183:7; JTX-1061, 143, 1064, 434, 1068, 1069.

### 5.     Apple Misappropriated Trade Secret L5

Dr. Madisetti explained Apple's misappropriation of L5.  Trial Tr. Day 7, Vol 2 at 23:22-30:14, 33:22-34:12, 94:22-95:17 (Madisetti); Trial Tr. Day 8, Vol 1 at 53:16-21, 55:6-17, 69:22-70:6 (Madisetti); Trial Tr. Day 12, Vol. 2 at 71:23-73:20, 114:2-8, 114:23-115:10, 115:18-116:3, 116:15-20, 117:3-11 (Madisetti Rebuttal).   Apple's witnesses provided evidentiary support for Dr. Madisetti's analysis. Trial Tr. Day 8, Vol. 2 at 44:10-22 (Lamego); Trial Tr. Day 10, Vol. 2 at 98:16-99:12 (Land); Trial Tr. Day 11, Vol. 1 at 50:16-51:2, 51:25-53:14 (Block); Han Dep. Tr. at 170:4-8, 170:21-171:9, 172:12-19; Zheng Dep. Tr. at 52:5-53:3, 53:5-54:20, 55:1-5, 56:8-57:1, 57:8-15, 68:12-22; JTX 143, 184, 185, 162, 859, 1140, 1086, 541.

### 6.     Apple Misappropriated Trade Secret D1, D3, and D10

Dr. Madisetti explained Apple's misappropriation of D1, D3, and D10.  Trial Tr. Day 7,  Vol 2  at 41:15-46:12,  50:11-51:8,  54:13-58:3,  59:24-60:14,  67:23-70:15 (Madisetti); Trial Tr. Day 8, Vol 1 at 64:7-65:2 (Madisetti).  Apple's witnesses provided evidentiary support for Dr. Madisetti's analysis.  Trial Tr. Day 8 Vol. 2 at 41:7-42:11, 45:10-18, 46:19-47:8, 47:15-52:17, 52:22-56:3, 56:8-57:2, 57:3-24 (Lamego); Trial Tr. Day 11, Vol. 1 at 124:12-14, 124:19-24 (Waydo); Trial Tr. Day 11, Vol. 2 at 10:7-22, 19:16-23 (Waydo); Bokma Dep Tr. at 55:11-55:20, 81:8-17, 96:1-13; Fu Dep. Tr. at 113:21-114:3, 114:19-115:7, 115:17-116:8, 116:10-12, 121:11-18, 122:10-13, 122:17-123:10, 124:2-7, 124:14-21, 125:10-126:2, 130:9-11, 131:10-132:10, 147:2-5, 147:11-148:3, 161:8-21; Kanaris Dep. Tr. at 18:17-19; 41:4-6; JTX-142, 14, 143, 851, 161, 162, 1262, 140, 153, 238, 412, 415, 880, 851.

### 7.     Apple Misappropriated Trade Secrets B1, B2, B4, and B7

Dr. Palmatier  explained  Apple's  misappropriation  of  Masimo's  business  and

marketing trade secrets.  Trial Tr. Day 6, Vol. 2 at 22:20-41:13, 46:16-55:7, 58:25:63:8, 64:7-65:18, 66:24-68:18 (Palmatier).  Apple's witnesses, including O'Reilly, provided evidentiary support for Dr. Palmatier's analysis.  Trial Tr. Day 9, Vol. 2 at 63:15–69:16, 70:25–82:14 (O'Reilly); Trial Tr. Day 10, Vol. 1 at 24:13–48:22, 69:10–71:14 (O'Reilly); JTX-126, 535, 1351, 1586, 392, 507, 484-496, 528, 529, 499, 1508, 1510, 1512, 502, 458, 459, 462, 1516, 1518, 1520, 1521, 1811, 1814, 1815, 392, 1578, 1813, 1581, 316, 393-395, 422, 425, 428, 475, 259, 260, 337, 431, 263, 317, 526.

### 8. Apple Misappropriated Trade Secret VIA

Drs. Madisetti and Palmatier explained Apple's misappropriation of the VIA trade secret, including Lamego and O'Reilly disclosing the value, importance, and appropriateness of Masimo's trade secrets and when or where to implement them.  Trial Tr. Day 6, Vol. 2 at 65:19-68:18 (Palmatier); Trial Tr. Day 7, Vol 2 at 73:24-75:10 (Madisetti); Trial Tr. Day 6, Vol. 2 at 66:24–68:18 (Palmatier).  Apple's documents provided evidentiary support for the analyses of Drs. Madisetti and Palmatier.  JTX-487, 499, 502, 507, 535, 1508, 1510, 1512, 316, 393, 394, 395, 422, 425, 428, 475, 259, 260, 337, 431, 263, 317, 526.

### C. Masimo Is Entitled to JMOL That Apple's Misappropriation Of Every Trade Secret Was Willful And Malicious

The evidence discussed above also shows that no reasonable jury could find that Apple's misappropriation was not willful and malicious.  Apple acted specifically to obtain Masimo's trade secrets by hiring Masimo's employees with specialized and exclusive knowledge.  Steven Hotelling was tasked with the job of recruiting such employees from Masimo and Cercacor, as explained above.

### D. Masimo Is Entitled to JMOL That Masimo Is A Co-Owner Of The Five Patents At Issue

Masimo is entitled to judgment as a matter that it should be named as a co-owner of each of the five disputed Apple patents because the evidence established that at least Lamego made his inventive contribution to each patent at a time and under conditions

-15-

that created an obligation to assign to Masimo or Cercacor his rights in such inventions.

1. **Lamego Made His Allegedly Inventive Contributions To The Reflectance Patents (U.S. Pat. Nos. 10,078,052 and 10,247,670) While Employed By Masimo And Cercacor**

Diab testified, and the documentary evidence confirms, that Lamego was exposed to the concept of using reflectors and reflective surfaces in sensors to increase the signal while employed by Masimo and Cercacor. *See* Trial Tr. Day 3, Vol. 2 at 87:20-88:4 (Diab), 102:1-103:20, 103:21-104:9, 111:8-113:1; JTX-343, JTX-777, P-0005, JTX-1227.

Apple's own witness, Ness, testified that, at a high level, the subject matter of the '052 and '670 Patents is "various ways to use reflective treatment on the back of the Apple Watch in order to improve the accuracy of the heart rate sensor." Trial Tr., Day 11, Vol. 1, 94:9-16 (Ness); *see also, id.* at 107:14-108:1; JTX-47, JTX-48.

Ness testified that Lamego's contribution to the reflectance patents was "an initial idea to use reflectivity on the back of the Apple Watch." *Id.* at 95:1-19, 98:16-99:3, JTX-40. Ness testified that he interacted with Lamego on two occasions. *Id.* at 105:1-3. The first was at a brainstorming session regarding the heart rate sensor for the Apple Watch in February 2014, immediately after Lamego joined Apple. *Id.* at 105:4-16. Before that meeting, Lamego had no interaction with Ness's team. *Id.* at 105:17-25. Ness testified the second time he interacted with Lamego was in connection with submitting the invention disclosure on the reflectance concept. *Id.* at 105:6-9. Ness' description of how Lamego contributed the idea of using reflection confirms Lamego brought it with him from Masimo. *See id.* at 105:1-106:12.

Madisetti's opinions and analysis of the evidence regarding reflectance confirmed that Lamego learned of his contribution to the '052 and '670 Patents while employed by Masimo and Cercacor. *See* Trial Tr. Day 4, Vol. 1 at 79:9-82:16 (Madisetti), JTX-1910 at 669, JTX-1227 at 574, JTX-777, JTX-1206 at 622 & 650, and JTX-1207 at 694, 7008, & 7010.

### 2.   Lamego Made His Allegedly Inventive Contributions To The Demodulation Patent (U.S. Pat. No. 10,219,754) While Employed By Masimo And Cercacor

Poeze testified that he and Lamego created subject matter claimed in the demodulation patent when they created the algorithm for the Pronto-7 product while employed by Cercacor.  Trial Tr. Day 4, Vol. 1 at 61:25-71:17, 73:4-81:3 (Poeze); *id*. at 81:4-82:7, *id*. at 83:5-84:3; JTX-1262.  The documentary evidence, including Poeze's laboratory notebooks and the actual code, confirm his testimony.  *See* JTX-831, 832.

On cross-examination, Apple attempted to establish that Poeze's implementation contributions did not rise to the level of inventorship because Lamego taught Poeze about the ideas in his notebook and in the source code.  *See* Trial Tr. Day 4, Vol. 1 at 115:1-116:15 (Poeze).  At most that testimony confirmed Lamego made his allegedly inventive contributions as a Cercacor employee.  *See id.*  Apple also established that Poeze does not know whether his contributions mean he should be named as an inventor under the patent laws.  *See id.* at 113:15-22.  That is irrelevant.  Poeze explained his technical work in detail.

Madisetti's opinions and analysis of the evidence regarding possession of D10 and the '754 Patent confirmed that Lamego made his contributions to the '754 Patent while a Cercacor employee.  *See* Trial Tr. Day 7, Vol. 2 at 62:12-69:16, 77:9-79:1 (Madisetti).  Madisetti testified that Masimo and Cercacor should be at least co-owners regardless of whether Poeze is added as an inventor.  *Id.* at 78:8-17.

### 3.   Lamego Made His Allegedly Inventive Contributions To The Analog Front End Patents (U.S. Pat. Nos. 9,952,095 and 11,009,390) While Employed By Masimo And Cercacor

Diab testified that he created the analog front end subject matter at Masimo.  *See* Trial Tr. Day 3, Vol. 2, at 20:18-34:20; JTX-1267.  Diab testified that Lamego had no understanding of noninvasive physiological monitoring when he first joined Masimo, Diab worked daily with Lamego, and Diab explained everything about Masimo's

technology to Lamego, including after he returned to Masimo. *See id.* at 43:8-44:15, 53:25- 67:17, 62:4-70:19; JTX-908, JTX-782, and JTX-828.

Madisetti's opinions and analysis of the evidence regarding the analog front end subject matter confirmed that Lamego learned of this subject matter and made his contribution to the '095 and '390 Patents while employed by Masimo and Cercacor. *See* Trial Tr. Day 4, Vol. 1 at 82:23-86:19 (Madisetti); JTX-1267, JTX-1206.

### 4. Lamego Assigned His Rights In The Patents To Masimo and Cercacor

Miller testified regarding Masimo's general employment policies and agreements and specifically that Lamego signed agreements assigning to Masimo all rights in inventions he conceived while employed by Masimo. *See* Trial Tr. Day 5, Vol. 2, at 104:13- 109:17 (Miller); *id.* at 113:14-115:11. Hammarth testified regarding Cercacor's general employment policies and agreements and specifically that Lamego assigned to Cercacor all rights in inventions he conceived while employed by Cercacor. *Id.* at 125:12-129:24 (Hammarth); *Id.* at 135:16-139:23; JTX-769, JTX-2263, JTX-2388, JTX-2266, JTX-808, JTX-810, JTX-2514.

Thus, Masimo and Cercacor are entitled to judgment as a matter of law that they should be named as co-owners of U.S. Patent Nos. 10,078,052, 10,247,670, 10,219,754, 9,952,095, and 11,009,390.

### E. Masimo Is Entitled to JMOL That Mohamed Diab Should Be A Named Inventor On U.S. Patent Nos. 10,078,052; 10,247,670; 9,952,095; And 11,009,390

Diab, Kiani, and Poeze explained the development of sensors, sensor technology with filters and analog-to-digital converters, reflectors, and reflective surfaces. Trial Tr. Day 3, Vol. 2 at 20:18-27:7, 102:1-104:14, 111:8-113:1 (Diab); Trial Tr. Day 4 at 61:13-63:14, 65:9-71:17, 73:18-80:25, 81:1-82:7, 84:4-85:20  (Poeze); *see also* Trial Tr. Day 8, Vol. 2 at 25:7-26:14 (Lamego); Trial Tr. Day 2, Vol. 1 at 100:15-114:9 (Kiani); Trial Tr. Day 2, Vol. 2 at 6:23-17:17 (Kiani); JTX 1227, P-005, 777, 1206, 1207, 1267.

Apple's witnesses, including Ness, testified that Lamego alone contributed the idea to use reflectivity on the back of the Watch. Trial Tr. Day 11, Vol. 1 at 95:1-19; 105:1-108:1 (Ness).

Kiani, Diab, Lamego, and Dr. Madisetti explained that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent. *See, e.g.*, Trial Tr. Day 5, Vol. 2 at 136:24-138:2 (Hammarth), Trial Tr. Day 7, Vol. 1 at 81:21-82:20 (Madisetti), Trial Tr. Day 7, Vol. 1 at 76:19-77:8 (Madisetti). Dr. Madisetti explained his analysis of the evidence confirming that one or more Masimo employees should be named as an inventor and Masimo is at least a joint owner of U.S. Patent Nos. 10,078,052; 10,247,670; 9,952,095; 11,009,390. Trial Tr. Day 7, Vol 2 at 79:9-82:22, 82:23-86:19 (Madisetti); JTX-1239, 1241, 1268, 1269.

## F.    Masimo Is Entitled to JMOL That Jeroen Poeze Should Be A Named Inventor On U.S. Patent No. 10,219,754

Diab and Poeze explained the development of sensor technology with multiple light sources, filters, decimation, demodulation, multipliers, and analog-to-digital converters. Trial Tr. Day 3, Vol. 2 at 34:12-20, 38:18-40:3, 41:2-42:19, 48:5-50:7, 50:18-51:22, 52:11-20, 53:25-54:17, 55:22-56:8, 60:15-62:2, 62:9-66:21 (Diab); Trial Tr. Day 4 at 61:13-63:14, 65:9-71:17, 73:18-80:25, 81:1-82:7, 84:4-85:20 (Poeze); JTX-777, 1206, 1207, 1267, 1267, P-005. Apple's witnesses, including Ness, testified that Lamego alone contributed the idea to use reflectivity on the back of the Watch. Trial Tr. Day 11, Vol. 1 at 95:1-19; 105:1-108:1 (Ness).

Kiani, Diab, Lamego, and Dr. Madisetti explained that Masimo employees, including Lamego, assigned to Masimo any interest in the patent or made an inventive contribution at a time and under conditions that created an obligation to assign to Masimo any rights in the patent. *See, e.g.*, Trial Tr. Day 7, Vol. 1 at 81:21-82:20 (Madisetti). Dr. Madisetti explained his analysis of the evidence confirming that one or

1   more Masimo employees should be named as an inventor and Masimo is at least a joint

2   owner of U.S. Patent No. 10,219,754.   Trial Tr. Day 7, Vol 2 at 77:9-79:8, 106:22-

3   107:10 (Madisetti); JTX-1262.

4

5                                        Respectfully submitted,

6                                        KNOBBE, MARTENS, OLSON & BEAR, LLP

7

8   Dated:  April 22, 2023              By: /s/ Joseph R. Re

9                                           Joseph R. Re
                                            Stephen C. Jensen
10                                          Sheila N. Swaroop
                                            Brian C. Horne
11                                          Irfan A. Lateef
                                            Benjamin A. Katzenellenbogen
12                                          Brian C. Claassen
                                            Stephen W. Larson
13                                          Mark D. Kachner
                                            Adam B. Powell
14                                          Kendall M. Loebbaka
                                            Daniel P. Hughes

15                                          Attorneys for Plaintiffs
16                                          MASIMO CORPORATION and
                                            CERCACOR LABORATORIES, INC.
17  57461440

18

19

20

21

22

23

24

25

26

27

28