MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION UNDER RULE 50(a) FOR JUDGMENT AS A MATTER OF LAW ON ALL DEFENSES AND CLAIMS** |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  JOSEPH J. MUELLER, *pro hac vice*
     joseph.mueller@wilmerhale.com
2  SARAH R. FRAZIER, *pro hac vice*
     sarah.frazier@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  60 State Street
   Boston, MA 02109
5  Tel.: 617.526.6000 / Fax: 617.526.5000

6  NORA Q.E. PASSAMANECK, *pro hac vice*
     nora.passamaneck@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  1225 Seventeenth Street, Suite 2600
   Denver, CO 80202
9  Tel.: 720.274.3152 / Fax: 720.273.3133

10  BRIAN A. ROSENTHAL, *pro hac vice*
      brosenthal@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
12  New York, NY 10166-0193
    Tel.: 212.351.2339 / Fax: 212.817.9539
13
14  KENNETH G. PARKER, SBN 182911
      ken.parker@haynesboone.com
15  HAYNES AND BOONE, LLP
    660 Anton Boulevard, Suite 700
16  Costa Mesa, CA 92626
    Tel.: 650.949.3014 / Fax: 949.202.3001

17
18
19
20
21
22
23
24
25
26
27
28

APPLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RULE 50(A) MOTION FOR JMOL
CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

# **TABLE OF CONTENTS**

I.      Plaintiffs Are Not Entitled To JMOL On Apple's Defenses .............................2

        A.      Plaintiffs Have Not Proven That This Action Was Timely Filed ..............2

        B.      Plaintiffs Are Not Entitled To Judgment On Apple's Other
                Defenses ...........................................................................................4

II.     Plaintiffs Are Not Entitled To JMOL On Their Claim For
        Misappropriation Of Trade Secrets .............................................................6

        A.      Plaintiffs Have Not Proven That Their ATS Qualify As Trade
                Secrets Under CUTSA Or That They Were Improperly Acquired,
                Used, Or Disclosed ..........................................................................6

                1.      Plaintiffs Have Not Proven That They Took Reasonable
                        Efforts To Protect Their ATS .............................................6

                2.      B1, B2, B4, And B7 Were Neither Trade Secrets Nor Were
                        They Improperly Acquired, Used, Or Disclosed ..........................7

                3.      L4 And L5 Were Neither Trade Secrets Nor Were They
                        Improperly Acquired, Used, Or Disclosed .....................................8

                4.      D1, D3, And D10 Were Neither Trade Secrets Nor Were
                        They Improperly Acquired, Used, Or Disclosed .........................10

                5.      VIA Was Neither A Trade Secret Nor Was It Improperly
                        Acquired, Used, Or Disclosed.............................................11

        B.      Plaintiffs Have Not Proven That Apple Had The Requisite Intent..........12

                1.      Plaintiffs Have Not Proven That Apple Acquired The ATS
                        Through Direct Misappropriation Or That Apple Can Be
                        Held Vicariously  Liable Without A Showing Of Intent..............12

                2.      Plaintiffs Have Not Proven That Apple Knew Or Should
                        Have Known About Any Improper Acquisition, Use, or
                        Disclosure of the ATS..................................................13

        C.      Plaintiffs Have Cited No Evidence Of (Much Less Proven) Willful
                And Malicious Misappropriation .........................................................16

III.    Plaintiffs Have Not Proven Their Inventorship And Ownership Claims..........16

        A.      The '754, '095, and '390 Patents ......................................................16

        B.      The '052 and '670 Patents ................................................................17

Wilmer Cutler
Pickering Hale
and Dorr LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajaxo Inc. v. E\*Trade Group, Inc.*,
    135 Cal. App. 4th 21 (2005)................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................15

*ATEN International Co. v. Uniclass Technology*,
    2018 WL 11426504 (C.D. Cal. Jan. 22, 2018) ....................................................1

*Carr v. AutoNation Inc.*,
    2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ........................................................12

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    2022 WL 2784467 (N.D. Cal. June 15, 2022) .....................................................1

*Cisco Systems, Inc. v. Chung*,
    2023 WL 2622155 (N.D. Cal. Mar. 22, 2023)...................................................12

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D. Cal. 2000).................................................................4

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
    857 F. Supp. 2d 997 (S.D. Cal. 2012) .................................................................2

*Glue-Fold v. Slautterback Corp.*,
    82 Cal. App. 4th 1018 (2000)..............................................................................4

*Granite State Insurance Co. v. Smart Modular Technologies, Inc.*,
    76 F.3d 1023 (9th Cir. 1996).........................................................................4, 5

*In re Lopez*,
    378 F. App'x 610 (9th Cir. 2010).......................................................................16

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)......................................................................................2, 16

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs' brief does not show that the jury must rule in their favor as a matter of law. Instead, it only reinforces how flawed their case truly is. Apple has already addressed nearly all of Plaintiffs' specific arguments in its own JMOL brief, Dkt. 1655-1 (and addresses the remainder below). But three notable failings run throughout Plaintiffs' brief.

*First*, Plaintiffs provide virtually no analysis for most of their arguments and instead rely on lengthy string cites to the transcript. *See, e.g.*, Dkt. 1657 ("Mem.") at 7-19. Merely "'cit[ing] swaths of documents'" or "string cite[s] of evidence" without linking those documents or evidence to Plaintiffs' legal theories would be insufficient to raise the kind of triable question of material fact necessary to survive summary judgment. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 2022 WL 2784467, at *7 (N.D. Cal. June 15, 2022) (quoting *Traxcell Techs. v. Sprint Commc'ns Co.*, 15 F. 4th 1121, 1130 (Fed. Cir. 2021)). It cannot possibly establish Plaintiffs are entitled to judgment as a matter of law. This is particularly so because Plaintiffs bear the burden of proof on nearly every issue remaining in the case, meaning Plaintiffs must make an "affirmative showing … that [their] evidence [would] 'compel[]'" any reasonable jury to find in their favor. *ATEN Int'l Co. v. Uniclass Tech.*, 2018 WL 11426504, at *5 (C.D. Cal. Jan. 22, 2018), *aff'd in (relevant) part and rev'd in part*, 932 F.3d 1364 (Fed. Cir. 2019).

*Second*, even the highly cursory statements Plaintiffs *have* provided make clear that the cited evidence does not support their position. Take, for example, Plaintiffs' description of the evidence supporting that they possessed and protected the alleged trade secrets ("ATS"). Plaintiffs rely heavily on testimony from their eight fact witnesses, Mem. 7-10, but only one (Mr. Kiani) provided testimony about the binding written descriptions that appear in the jurors' notebooks. The remaining seven witnesses did not testify about the purported trade secrets themselves. *See* 4/7 AM Tr. 20:14-17, 21:5-8, 48:7-12 (Mr. Diab); *id.* 88:3-10, 91:9-13, 123:2-124:4 (Mr. Poeze); 4/10 PM Tr. 51:5-8 (Mr. Scruggs); *id.* 25:11-13 (Mr. Dalke); *id.* 88:25-89:2, 89:11-14, 89:20-90:10 (Mr. Muhsin); *id.* 120:24-121:2 (Ms. Miller); *id.* 141:8-17, 142:24-143:9 (Mr.

Hammarth).  Similarly, while Plaintiffs rely almost exclusively on testimony from Mr. Diab and Mr. Poeze to establish their ownership and inventorship claims, Mr. Diab testified that he has not read any of the four patents on which Plaintiffs claim he should be listed as an inventor, 4/7 AM Tr. 15:2-8, 26:4-32:7, and Mr. Poeze has testified that he does not believe himself to be an inventor of the '754 patent, *id.* 116:6-15.

*Third*, Plaintiffs largely ignore the contrary testimony and other evidence that Apple presented in support of its position.  As just one example, Plaintiffs' brief contains no reference to any of the testimony from Apple's experts (Drs. Kivetz, Sarrafzadeh, and Warren), who each testified for hours and rebutted Plaintiffs' positions on each of the ATS and patents.  Plaintiffs' failure to "give credence to the evidence favoring the nonmovant" and explain why it is entitled to judgment as a matter of law based on "the record as a whole" is—standing alone—an independent ground to deny its motion.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

In sum, Plaintiffs' motion ignores the evidence supporting Apple's position, relies on inapposite testimony to support their own, and provides virtually no meaningful analysis for Apple to rebut or this Court to consider.  Apple respectfully submits the motion should be denied in its entirety—and Apple's cross-motion should be granted.

## ARGUMENT

## I.   PLAINTIFFS ARE NOT ENTITLED TO JMOL ON APPLE'S DEFENSES

### A.   <u>Plaintiffs Have Not Proven That This Action Was Timely Filed</u>

**1.**  The statute of limitation began to run as soon as "Plaintiffs discovered or had reason to discover that a trade secret had been misappropriated." Dkt. 606 at 5; Cal. Civ. Code § 3426.6.   Apple bears only the initial burden to prove that the alleged misappropriation occurred, if at all, before January 9, 2017.  Then, as Plaintiffs had acknowledged, the burden shifts to Plaintiffs to "'show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D.

Cal. 2012); Dkt. 1500-1 at 210-211.[1]  Notably, Plaintiffs' brief argues that a single date of discovery (October 2019) applies to all their ATS.  *See* Mem. 1-6.  Apple agrees that the statute of limitation begins to run as soon as Plaintiffs discover or should have discovered the purported misappropriation of any of the ATS.  *See* Dkt. 1655-1 at 19, Dkt. 1622-1 at 9-16.

**2.**  Plaintiffs do not move for JMOL on the first step of the statute of limitations analysis.  *See generally* Mem. 6.  Indeed, the undisputed evidence proves that Apple met its burden on this issue.  *See* Dkt. 1655-1 at 20.

**3.**  Plaintiffs are not entitled to JMOL on the issue of whether they discovered or should have discovered the purported misappropriation before January 9, 2017.  Plaintiffs argue they discovered the purported misappropriation in October 2019, when their CEO Joseph Kiani was informed by counsel that Plaintiffs had a viable claim.  *See* Mem. 2-3.  But as Apple's JMOL brief explained, Plaintiffs cannot rely on this testimony referring to undisclosed legal advice, as this Court has precluded its use.  4/12 AM Tr. 16:6-11; *see also* Dkt. 1655-1 at 21.  In any event, Plaintiffs provide no explanation why Mr. Kiani's supposed individual knowledge of Apple's purported misappropriation is co-extensive with the knowledge of Plaintiffs as corporate entities.  Plaintiffs presented no evidence explaining why others at Masimo and Cercacor should not have discovered the purported misappropriation at an earlier date.

As Apple has explained, the evidence proves that Plaintiffs were on inquiry notice for at least three reasons before that date: (1) Plaintiffs' September 2014 email to Dr. O'Reilly that indicated they were aware he kept personal journals that included what Plaintiffs allege is their confidential information, (2) Plaintiffs' January 2014 letter to Apple alleged trade secret misappropriation (particularly when coupled with Mr. Kiani's assertion that he was later been told Dr. Lamego left Apple because he had been asked

---

[1] If Plaintiffs are suggesting Apple bears the burden to prove discovery, Plaintiffs did not advance that argument in their proposed jury instructions.  *See* ECF 1500-1 at 210-211.  In any event, CACI 4421's Directions for Use expressly rejects Plaintiffs' proposed rule, which no CUTSA case has adopted.

to compete with Plaintiffs), and (3) the publication of the '052 patent application. *See* Dkt. 1655 at 20-22.[2]

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs' suggestion (Mem. 3) that *Apple* has the burden to prove that Plaintiffs were not on notice of—for example—the '052 patent application misstates the law. And Plaintiffs' assertion (Mem. 5) that the January 2014 letter "confirms" that they did not suspect misappropriation violates the directive that, at JMOL, the evidence must be read in the light most favorable to the non-moving party. Indeed, given that the letter accused Apple of "attempting to gain access to … Cercacor and Masimo's trade secrets," JTX-2937, it cannot reasonably be read it as anything other than evidence of Plaintiffs' suspicion.

Finally, Plaintiffs contend that they were not on notice because Mr. Kiani had been assured that Drs. O'Reilly and Lamego were not violating their confidentiality obligations. Mem. 4-5. But Plaintiffs provide no explanation why Mr. Kiani's personal knowledge is controlling. And, in any event, it is well-established that a "mistaken[] belief[]" does not toll the statute of limitations. *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 526 (N.D. Cal. 2000); *Glue-Fold v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1024-1027 (2000).

**B.** **Plaintiffs Are Not Entitled To Judgment On Apple's Other Defenses**

Plaintiffs are not entitled to JMOL on any of Apple's equitable affirmative defenses—i.e., laches, and waiver. The Court's pretrial conference order confirmed that those defenses are not issues to be submitted to the jury. *See* Dkt. 1483 at 15. This conforms with the general rule that "equitable [defenses are] for the court, not the jury," and that "Rule 50(a) applies only to issues tried by a jury." *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030 (9th Cir. 1996). The time to address Apple's equitable defenses is during post-trial Rule 52 motion practice, to the extent that

---

[2] Although Plaintiffs' trial presentation sought to equate Mr. Kiani's knowledge with their own, Mr. Kiani is not a party to this case, so it does not matter whether he was personally aware that Plaintiffs listed the '052 patent as a prior art reference in a Masimo patent application. *See supra* p. 3.

these issues remain live after the jury's verdict.  *Id.* at 1030-1031.

The Court's pre-trial order granting Plaintiffs' *Daubert* motion precluded Apple from presenting evidence in support of its defense that the ATS are not trade secrets because they were readily ascertainable by proper means.  *See* Dkt. 1284 at 3-5.  Apple has preserved for appeal its objection to that *Daubert* ruling, *see* 4/4 PM Tr. 121:17-122:1, and filed an offer of proof describing the evidence it was precluded from presenting at trial, *see* Dkt. 1625.

The Court's pre-trial order striking Plaintiffs' sole remaining theory of damages (lost profits), *see* Dkt. 1527, necessarily mooted Apple's defense that Plaintiffs failed to mitigate any damages.  The remaining defenses pled in Apple's answer (i.e., no willful and malicious misappropriation, independent development, independent invention, and no causation) are not affirmative defenses on which Apple bears the burden but rather specific failures of proof in Plaintiffs' case that are addressed below and on which Apple moved for JMOL.  *See* Dkt. 1655-1 at 14-16, 23-24, 27-28.

Finally, as for unclean hands, Apple has not presented that defense to the jury in light of the Court's motion *in limine* order and its subsequent ruling indicating that raising unclean hands would open the door to further testimony on Apple recruiting Plaintiffs' employees.[3]  Apple defers to the Court regarding how to treat the defense as a procedural issue now, while preserving its position that had the Court ruled otherwise on the aforementioned issue, Apple would have presented this defense to the jury.

---

[3] Apple preserves for appeal its position that Plaintiffs' Employee Confidentiality Agreements' confidentiality provisions are void as a matter of law under Cal. Bus. & Prof. Code § 16600, that the Court was obligated to decide that issue, and that the confidentiality provisions should have been excluded from the trial record or, at a minimum, that the jury should be instructed that the confidentiality provisions are void.

II.     **PLAINTIFFS ARE NOT ENTITLED TO JMOL ON THEIR CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS**

A.     **Plaintiffs Have Not Proven That Their ATS Qualify As Trade Secrets Under CUTSA Or That They Were Improperly Acquired, Used, Or Disclosed**

1.     *Plaintiffs Have Not Proven That They Took Reasonable Efforts To Maintain The Secrecy Of Their ATS*

Plaintiffs have not established that the only reasonable conclusion from the trial record is that they took reasonable efforts to protect the confidentiality of their ATS—indeed, as Apple briefed in its cross-motion, the only reasonable conclusion is the opposite.

Plaintiffs' argument suffers from the flaws identified above, including that it provides no explanation for its conclusory assertions that certain portions of testimony and exhibits are relevant. *See supra* p. 1. Plaintiffs' motion also considers only the evidence favorable to their position, not the trial record as a whole. *See supra* p. 2. For example, Plaintiffs fail to address evidence adduced by Apple about specific instances in which Plaintiffs disclosed their ATS, either in patents, *see* Dkt. 1655-1 at 13 (discussing L4), or in press releases, *id.* at 10 (discussing B1, B2, B4). Apple submits that these intentional disclosures by Plaintiffs would preclude a reasonable jury from finding that Plaintiffs made reasonable efforts to protect *any* of their ATS. *See id.*; Dkt. 1275 at 8-9 (rejecting Apple's argument that reasonable efforts must be assessed separately for each ATS). Apple's experts also explained why they concluded that Plaintiffs had not used reasonable efforts, evidence Plaintiffs overlook. *See, e.g.*, 4/18 PM Tr. 30-31 (business ATS); 4/20 AM Tr. 62, 92 (███████ ATS); 4/19 PM Tr. 63, 84-85 (████████ ATS). At a minimum, this evidence requires denying Plaintiffs' motion for JMOL.

Wilmer Cutler Pickering Hale and Dorr LLP

1

2. *B1, B2, B4, And B7 Were Neither Trade Secrets Nor Were They*
*Improperly Acquired, Used, Or Disclosed*

3   Apple cross-references its JMOL brief's explanation for why no reasonable jury
4   could find B1, B2, B4, and B7 were misappropriated.  *See* Dkt. 1655-1 at 7-11.
5   Plaintiffs' contrary argument (Mem. 9-10, 14-15) suffers from the flaws discussed
6   above—it does not consider the record as a whole (e.g., it does not address the testimony
7   from Apple's expert Dr. Kivetz) and does not provide any explanation for its conclusory
8   assertions about the cited evidence.  *See supra* pp. 1-2.[4]

9   Tellingly, Plaintiffs' string cites obscure the fatal evidentiary gaps in their
10   position.  For example, with respect to misappropriation, although Dr. Palmatier
11   discussed Dr. O'Reilly's journals as purported evidence that Plaintiffs possessed the
12   business ATS and exposed Dr. O'Reilly to them, *see* 4/11 PM Tr. 23-25, Dr. Palmatier
13   later admitted on cross-examination that those journals did not disclose B1, B2, B4, or
14   B7, *see* 4/12 AM Tr. 28:7-14, 33:24-34:6, 36:9-14; *see also* 4/18 PM Tr. 35:4-10, 38:7-
15   40:5; JTX-487.  Plaintiffs' argument also ignores Dr. O'Reilly's testimony that his
16   journals were personal, and he did not "share them with anyone at Apple."  4/14 PM Tr.
17   73:9-14.  Plaintiffs do not acknowledge testimony that as a Masimo employee Dr.
18   O'Reilly had "presented publicly" the presentations that remained in his possession after
19   he left Masimo, *id.* 72:24-25; that Dr. O'Reilly neither had a role in marketing Apple
20   Watch nor gave Plaintiffs' confidential information to those who did, *see* 4/18 Tr. AM
21   71:20-23, 104:1-6; or that Dr. O'Reilly did not disclose the business ATS during his
22   Apple job interview, 4/14 PM Tr. 35:13-39:21; 4/18 PM Tr. 39:3-20.  Plaintiffs likewise
23   ignore evidence that Apple markets the accused features as consumer products, not ■

24

25

26

27

28

---

[4] As another indication of the cursory nature of Plaintiffs' brief, they have failed to provide separate explanations for why each purported secret (1) is not generally known and (2) has independent economic value.  This Court has stated these are distinct inquiries.  *See* Dkt. 1275 at 7 (considering "whether the [D ATS] were generally unknown and *if so*, whether they derived value from their secrecy") (emphasis added).

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   ████████████████████ as the business ATS contemplate.  *See* 4/18 AM Tr. 86,

2   88-90, 114:7-10; 4/18 PM Tr. 41:11-20, 45:3-7; JTX-3166; JTX-3441; JTX-3442.

3        Moreover, Dr. Kivetz's comprehensive testimony bars granting JMOL that the

4   business ATS were trade secrets.  As Dr. Kivetz explained, Plaintiffs did not possess B1,

5   B2, B4, and B7:   none of the evidence Mr. Kiani and Dr. Palmatier cited as

6   demonstrating Plaintiffs' possession of B1 (i.e., █████████████████████

7   ████████████████████) demonstrates that they possessed B1 ████████

8   ████████████████████████████████████████.  4/18

9   AM Tr. 136:23-138:11.   Dr. Kivetz also explained why each of the business ATS

10  described generally known marketing principles and strategies that were taught in

11  business schools, used by numerous companies, and described in books and articles for

12  many years before 2013.  *See id.* 138:12-141:12; 4/18 PM Tr. 11:11-34:12.  Dr. Kivetz

13  also explained why Plaintiffs had not proved that the business ATS had independent

14  economic value by virtue of secrecy.  *See id.* 30.

15            3.    *L4 And L5 Were Neither Trade Secrets Nor Were They Improperly*

16                  *Acquired, Used, Or Disclosed*

17        Apple cross-references its JMOL brief's explanation for why no reasonable jury

18  could find L4 and L5 were misappropriated.  *See* Dkt. 1655-1 at 11-13, 14-17.  Plaintiffs'

19  contrary argument (Mem. 8, 13-14) suffers from all the flaws discussed above—it does

20  not consider the record as a whole (e.g., it does not address the testimony from Apple's

21  expert Dr. Warren), it does not provide any explanation for its conclusory assertions

22  about the cited evidence, and it relies on testimony from witnesses who did not

23  specifically address Plaintiffs' trade secrets (e.g., Mr. Diab and Mr. Scruggs).  *See supra*

24  pp. 1-2.[5]

---

[5] Plaintiffs also claim to rely on testimony from Mr. Kiani, but they do not cite any and for good reason—he conceded on cross-examination that he had not provided any testimony regarding L4 and L5.  4/6 AM Tr. 57-58.

Plaintiffs' conclusory assertions about the evidentiary string cites are simply misleading. For example, the only document that Dr. Lamego actually authored that Plaintiffs cite to show L4's misappropriation is JTX-143. Mem. 12-13. Nothing in that document references black foam or ████████████████████████ ██████████████. The remaining documents cited do not remotely suggest that Dr. Lamego provided any input to the ██████████████. Indeed, JTX-1061 describes ██ ██████████ test and it was created *before* Dr. Lamego joined Apple. 4/18 PM Tr. 109-114. Similarly, for L5, Plaintiffs point to a suggestion Dr. Lamego made in JTX-184, Mem. 14, but the undisputed record confirms that Apple rejected and never implemented Dr. Lamego's suggestion, 4/18 PM Tr. 80:21-84:8; 4/19 AM Tr. 20:4-24:14; 4/20 AM Tr. 82:8-87:1; JTX-181 at 36. JTX-184 itself indicates that Apple firmly rejected the idea, with blunt comments like "Not gonna happen" and "nope."

Regardless, Dr. Warren's comprehensive testimony regarding why Apple did not misappropriate L4 and L5 at the bare minimum bars granting JMOL. Plaintiffs did not possess L4 and L5. For L4, they did not show they "████████████████████████ ███████████████████████████████████████████████████████████ ██████████████" 4/20 AM Tr. 46:25-47:21. As to L5, Plaintiffs did not show the full scope of L5 as it was broadly claimed—rather, Plaintiffs possessed one ████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████ 4/20 AM Tr. 72:1-78:15. Dr. Warren also testified that L4 and L5 are generally known because they were disclosed to the public in textbooks, journal articles, and patents—including Masimo's own patents. 4/20 AM Tr. 49:2-62:18 (L4 known); 4/20 AM Tr. 87:4-95:23 (L5 known). Dr. Warren also explained that Plaintiffs could not obtain independent economic value from L4 and L5 because, as described above, Plaintiffs did not keep them secret and instead disclosed them in patents. *See id.*

Finally, Dr. Warren testified that Apple did not improperly acquire, use, or disclose L4 and L5. As to L4, Apple independently developed a certain ████████

1

2   ███████████; Dr. Lamego played no part in that test, and results from that test are not

3   used in designing Apple Watch. *Id*. 62:19-67:13.  As to L5, Apple addressed ████████

4   ████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ██████████████████████████████████████████████ E.g.,

7   *id*. 78:16-87:1; 4/20 PM Tr. 47:9-23; JTX-181 at 36.

   4.      *D1, D3, And D10 Were Neither Trade Secrets Nor Were They*

   *Improperly Acquired, Used, Or Disclosed*

10   Apple cross-references its JMOL brief's explanation for why no reasonable jury

11   could find D1, D3, and D10 were misappropriated. *See* Dkt. 1655-1 at 17-18.  Plaintiffs'

12   contrary argument (Mem. 9, 14) suffers from all the flaws discussed above—it does not

13   consider the record as a whole (e.g., it does not address the testimony from Apple's

14   expert Dr. Sarrafzadeh), it does not provide any explanation for its conclusory assertions

15   about the cited evidence, and it relies on testimony from witnesses who did not

16   specifically address Plaintiffs' trade secrets (e.g., Mr. Diab and Mr. Poeze).  *See supra*

17   pp. 1-2.[6]

18   Once again, Plaintiffs' conclusory assertions preceding their string cites to

19   testimony are misleading, if not outright false.  For example, as support for their position

20   that Dr. Lamego "confirmed that he repeatedly used and disclosed Masimo's trade

21   secrets at Apple," Plaintiffs cite testimony that says the precise opposite—i.e., that Apple

22   told him "don't bring anything from Masimo to Apple [and] [i]f you have anything,

23   destroy it completely, and do not use anything from Masimo here."  *Compare* Mem. 12

24   *with* 4/13 PM Tr. 64:4-65:24.  And while Plaintiffs cite Jack Fu's deposition testimony

25

26   _____

27   [6] Plaintiffs also claim to rely on testimony from Mr. Kiani, but they again do not cite
     any.  This is likely because, once again, Mr. Kiani conceded on cross that he had not
28   provided any direct-examination testimony regarding D1, D3, or D10.  4/6 AM Tr. 65:6-
     24; *see also id*. ("Q: … [Y]ou yourself can't identify what specific trade secrets the
     plaintiffs claim have related to demodulation …, correct?  A: That is correct.").

to show misappropriation, they simply ignore that Mr. Fu also testified that Dr. Lamego did not "contribute to *any* algorithms regarding modulation/demodulation while he was at Apple."  Fu. Dep. Tr. 186:18-22 (emphasis added).

Nevertheless, Dr. Sarrafzadeh's extensive testimony on why D1, D3, and D10 do not qualify as trade secrets precludes granting JMOL.  Plaintiffs did not possess D1, D3, and D10 at the time of the alleged misappropriation, for example, because Plaintiffs failed to identify any documents showing the entirety of the secrets.  *See, e.g.*, 4/19 PM Tr. 37:13-42:21, 58:20-23, 71:6-74:15, 83:13-17, 88:25-91:9, 96:4-9.  Dr. Sarrafzadeh also explained that D1 and D3 were generally known because, for example, Plaintiffs published the secrets in patents and patent applications.  *Id.* 42:23-62:2, 74:16-84:2.  Likewise, Plaintiffs have not set forth any evidence of independent economic value tied specifically to D1, D3, and D10.  *Id.* 62:3-63:4, 84:3-23, 92:2-10.  With respect to improper acquisition, disclosure, and use, Dr. Sarrafzadeh testified that: (1) Dr. Lamego developed his demodulation technique while at Apple using well-known engineering principles; (2) Plaintiffs failed to identify evidence showing Dr. Lamego disclosed the secrets to Apple or that Apple disclosed the ATS through the '754 patent; and (3) Apple is not accused of actually using the ATS in any generation of Apple Watch and instead uses a technique that Plaintiffs' expert Dr. Madisetti agrees is different from the ATS.  *Id.* 63:17-69:24, 85:8-88:10, 91:5-23, 92:11-15.

    5.    *VIA Was Neither A Trade Secret Nor Was It Improperly Acquired, Used, Or Disclosed*

Apple cross-references its JMOL brief's explanation for why no reasonable jury could find VIA was a protectable trade secret.  *See* Dkt. 1655-1 at 18-19.  In short, Dr. Madisetti's and Dr. Palmatier's testimony regarding VIA was brief (less than ten minutes, combined), vague, and failed to clearly account for several required elements (e.g., not generally known, independent economic value).  *Id.*  Plaintiffs' contrary argument (Mem. 10, 15) once again provides no reasoned analysis and ignores the contrary testimony from Apple's experts Drs. Sarrafzadeh, Warren, and Kivetz.  *See*

4/19 PM Tr. 92:16-94:16; 4/20 AM Tr. 96:4-96:24; 4/18 PM Tr. 36:12-37:6.  To this day, it is not clear what falls within the nebulous concepts described by the VIA or how Apple could have misappropriated it.

### B.    Plaintiffs Have Not Proven That Apple Had The Requisite Intent

Misappropriation of trade secrets is not a strict liability tort.  To the contrary, CUTSA requires a plaintiff to prove wrongful intent—i.e., either (1) the defendant used "improper means to acquire knowledge of the trade secret" and used/disclosed the ATS without authorization or (2) the defendant knew or had reason to know their knowledge of the ATS was wrongfully acquired.  *See* Cal. Civ. Code § 3426.1(b)(1)-(2).

### 1.    *Plaintiffs Have Not Proven That Apple Acquired The ATS Through Direct Misappropriation Or That Apple Can Be Held Vicariously Liable Without A Showing Of Intent*

Plaintiffs' allegations—that Apple improperly acquired their ATS through their Plaintiffs' employees—describe indirect misappropriation, which requires the knew/should have known showing discussed above.  Tellingly, Plaintiffs declined to move for JMOL on any of their (frivolous) theories of direct misappropriation (e.g., that Apple acquired the ATS through bribery, theft, or misrepresentation).  *Compare* Mem. 11-15 *with* Dkt. 1655-1 at 2-3 (describing theories).

Plaintiffs' assertion that they have proven Apple is vicariously liable for misappropriation by Drs. Lamego and O'Reilly also fails on the law and the facts.  Courts that have considered the intent question in the context of trade secret law have concluded that "it is not 'appropriate to direct a jury to impute an agent's knowledge of a secret to the principal'"—at least where the agent "did not inform other employees of plaintiff's concept."  *Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018); *see also Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *12 (N.D. Cal. Mar. 22, 2023) (indicating that vicarious liability in the trade secret context extends only to the act of disclosure/use and not the intent requirement).  Plaintiffs yet again fail to cite a single contrary authority that supports the notion that the *respondeat superior* doctrine

permits Apple to be held liable without having known or having had reason to know about misappropriation. *See* Mem. 13. In any event, Plaintiffs nowhere present evidence sufficient to prove that either Dr. Lamego or Dr. O'Reilly misappropriated any of the ATS. Indeed, both men testified that they did not misappropriate any ATS to give to Apple and explained their compliance with Apple's policies prohibiting use or disclosure of trade secret or confidential information from a previous employer. *See* 4/13 PM Tr. 70:20-22, 74:6-8, 77:5-7, 86:6-12, 88:3-5 (Lamego); 4/14 PM Tr. 7:3-16, 46:11-48:13, 82:25-83:9 (O'Reilly). A long string of Apple witnesses corroborated them by testifying that they had not received any such information from Dr. Lamego or Dr. O'Reilly.

> **2.** *Plaintiffs Have Not Proven That Apple Knew Or Should Have Known About Any Improper Acquisition, Use, or Disclosure of the ATS*

As Apple explained in its own JMOL brief, Plaintiffs have failed to put forth evidence from which a reasonable jury could conclude that Apple knew or should have known that Dr. Lamego and/or Dr. O'Reilly breached a duty by disclosing to Apple information Plaintiffs assert constitutes their ATS. *See* Dkt. 1655-1 at 3-6.

Specifically, as Apple has explained, both Drs. Lamego and O'Reilly confirmed that Apple had directed them not to share Plaintiffs' confidential information, and that they strictly adhered to their contracts with Apple not to do so. *See id.* Plaintiffs neither elicited any testimony nor presented any document that even plausibly suggests that any Apple employee knew that Apple purportedly acquired, used, or disclosed confidential information from Plaintiffs. *See id.* at 4. Nor have Plaintiffs provided any evidence suggesting that anyone at Apple should have suspected that Plaintiffs' ATS were being used or disclosed by virtue of receiving helpful input from Drs. Lamego and O'Reilly, both of whom were hired for their technical abilities rather than their preexisting knowledge. *See id.* 4-6. Finally, Plaintiffs have not presented any evidence suggestive of intent from documents or testimony about, for example (1) Apple's hiring of at-will

employees from Plaintiffs or (2) Apple's contemplation of collaborating with or acquiring Plaintiffs—both of which are routine and lawful practices. *See id.* at 6. Tellingly, Plaintiffs' assertion that "[w]itness testimony … confirmed that Apple sought out, obtained, and used Masimo's confidential information" lacks any citation to the record, and it appears in a paragraph that cites exclusively to testimony from Drs. Lamego and O'Reilly. *See* Mem. 12:13-14.

None of the evidence Plaintiffs identify changes this calculus. For instance, they cite testimony and documents about the parties' single meeting in 2013, *see* Mem. 11-12, but Mr. Kiani conceded on the stand that Plaintiffs did not provide Apple with any trade secrets at that time, *see* 4/6 AM Tr. 73:6-75:20. Apple's employees testified similarly. *See, e.g.*, 4/13 PM Tr. 115:7-13; 4/14 AM Tr. 97-101; 4/18 PM Tr. 70:2-4.

Nor can Plaintiffs manufacture evidence of intent from the "Project Rover" or "Project Everest" documents. *See* Mem. 11-12. The Project Rover presentations at issue were surveys of sixteen companies with experience in non-invasive physiological monitoring. *See* JTX-260; JTX-259. That Apple contemplated collaborating with Masimo and Cercacor (among other companies) and collected information about them (and other companies) is unremarkable. Indeed, Adrian Perica testified about how Apple would routinely use this kind of "landscape review" to assist a unit of the company understand a field which was new to Apple. *See* 4/14 AM Tr. 82-83.

Project Everest merely referred to Apple's consideration of further engagement with Plaintiffs. *See* JTX-263. As Mr. Perica explained, Apple wanted to do a "deeper dive" into Plaintiffs' capabilities to assess whether their medical technology could work in Apple Watch, since Apple needed sensors that were very small and consumed very little power. *See* 4/14 AM Tr. 99-100. However, Apple ultimately decided for both business and technological reasons that neither acquiring nor partnering with Plaintiffs made sense. *See id.* 105:1-108:1; *see also* JTX-720. As a result, no business deal between Apple and Plaintiffs was ever discussed. *See* 4/14 AM Tr. 101:2-11.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs' evidence about Apple's hiring Plaintiffs' former employees likewise fails to prove that Apple intended to misappropriate Plaintiffs' ATS or that Apple knew or should have known of any purported misappropriation. *See* Mem. 12. All Plaintiffs have shown is that a small number of their former employees were hired by Apple during a seven-year period between 2013-2020. *See* JTX-1786.1. Beyond Drs. O'Reilly and Lamego, Plaintiffs have not accused any of their former employees of misappropriation. *See* Dkt. 1469 at 3. Among the tiny handful of Plaintiffs' employees who worked on Watch (out of thousands of other Apple employees), there is no trial evidence regarding their having made relevant contributions to the development of Apple Watch's sensors, the Blood Oxygen feature, or the ECG feature. *See* 4/20 AM Tr. 23:3-24:15 (Hotelling).[7]

More broadly, Apple has policies in place to ensure that employees involved in interviewing potential new hires do not inquire about or discuss anything with job candidates that could be proprietary or confidential to their current or prior employers. 4/20 AM Tr. 25:10-27:16. Indeed, when Plaintiffs tried to solicit testimony from Apple employee Ueyn Block that Apple seeks confidential information during hiring interviews, Block explained that he adheres to Apple's policy and asked questions about "fundamental physics" that called for no confidential information to "find out if [the interviewee] had only people managing skills or if he had technical skills as well." 4/19 AM Tr. 33:4-34:13, 59:4-25. In sum, Plaintiffs adduced no evidence affirmatively supporting an inference that Apple had the intent or knowledge required for liability under CUTSA. Rather, there is extensive record evidence rebutting that inference—sufficient to grant Apple's cross-motion—and that evidence must be credited on Plaintiffs' 50(a) motion.

---

[7] Plaintiffs' assertion that Apple sought the "exclusive knowledge" of their former employees is a reference to a single email from Dr. Lamego recommending that Apple hire a former student. That person did not begin work until after Dr. Lamego left Apple, JTX 1786.1 at 27, and that person is not accused of misappropriation.

**C.**   **Plaintiffs Have Cited No Evidence Of (Much Less Proven) Willful And Malicious Misappropriation**

Tellingly, Plaintiffs' brief lacks any citation to record evidence relevant to their allegation that Apple acted willfully and maliciously.  Because Plaintiffs must prove their entitlement to punitive damages by clear and convincing evidence, they must "present[] affirmative evidence" of willful or malicious misappropriation, because "discredited testimony is not … a sufficient basis" as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986).  Their failure to identify a single piece of affirmative evidence therefore precludes granting JMOL on this issue—and compels granting Apple's cross-motion.  Moreover, their brief addresses none of the contrary evidence—including the testimony of the numerous Apple witnesses denying that they knew of any misappropriation.  *See supra* pp. 1-2.  On Plaintiffs' Rule 50(a) motion, this testimony must be credited in Apple's favor.  *See Reeves*, 530 U.S. at 150.  Because this testimony prevents JMOL for Plaintiffs on the issue of intent, it necessarily precludes granting JMOL for Plaintiffs on willful and malicious misappropriation.  *See In re Lopez*, 378 F. App'x 610, 612 (9th Cir. 2010); *Ajaxo Inc. v. E\*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 66 (2005).

**III.   PLAINTIFFS HAVE NOT PROVEN THEIR INVENTORSHIP AND OWNERSHIP CLAIMS**

**A.**   **The '754, '095, and '390 Patents**

Apple cross-references its JMOL brief's explanation for why no reasonable jury could find Plaintiffs have established their ownership and inventorship claims as a matter of law for the '754, '095, and '390 patents.  *See* Dkt. 1655-1 at 28-29.  Plaintiffs' contrary argument (Mem. 17-19) does not address the record as a whole and ignores contradictory testimony from Dr. Sarrafzadeh and Mr. Hotelling.

As to ownership, Dr. Sarrafzadeh testified that he had seen evidence of Dr. Lamego's contributions from his time at Apple that supported these three patents, but that Plaintiffs had not provided any equivalent evidence from Dr. Lamego's time at

Masimo and Cercacor.  *See* 4/19 PM Tr. 94:23-101:4.  Indeed, the two individuals that Plaintiffs claim worked with Dr. Lamego while he was employed by Plaintiffs both testified that they did not even know whether they should be listed as inventors.  *Id.* 95:11-16, 98:2-12.

As to inventorship, Dr. Sarrafzadeh and Mr. Hotelling explained there was never any collaboration or joint effort between Mr. Poeze or Mr. Diab and the Apple inventors at the time of the invention.  4/19 PM Tr. 94:23-101:4; *see also* 4/14 AM Tr. 22:14-35:8 (Hotelling discussing origins of '095 and '390 patents); JTX-880; JTX-3657.  In addition, Plaintiffs have not established any inventive contribution by Mr. Poeze and Mr. Diab as a matter of law, including because Plaintiffs have not identified what they each specifically contributed to the patents.  4/19 PM Tr. 94:23-101:4.

**B.     The '052 and '670 Patents**

Apple cross-references its JMOL brief's explanation for why no reasonable jury could find Plaintiffs have established their ownership and inventorship claims as a matter of law for the '052 and '670 patents.  *See* Dkt. 1655-1 at 29-30.  Plaintiffs' contrary argument (Mem. 17-19) does not address the record as a whole and ignores contradictory testimony from Dr. Warren and Mr. Ness.

As to ownership, Dr. Warren explained that there was no evidence that Dr. Lamego conceived of his contribution to the '052 and '670 patents—combining reflectivity with the back of the Apple Watch—at Masimo or Cercacor, nor could he have because the Apple Watch was not yet public before Dr. Lamego arrived at Apple and he had not even seen wrist-based data at Plaintiffs.  *See, e.g.*, 4/20 AM Tr. 100:9-18; 4/19 AM Tr. 95:3-19; 4/13 PM Tr. 64:19-65:2, 99:3-5.

As to inventorship, Plaintiffs failed to meet their burden in three different ways. *First*, as Dr. Warren and Mr. Ness testified (and as Plaintiffs have failed to contest), there was no collaboration or joint effort between Mr. Diab and the Apple inventors at the time of the invention.  *See* 4/19 AM Tr. 95:20-96:10; 4/20 AM Tr. 100:9-18.  *Second*, Plaintiffs have not established any inventive contribution by Mr. Diab as a matter of law,

because Plaintiffs rely on prior art references or products publicly disclosing reflectivity up to a decade before Dr. Lamego joined Apple (e.g., JTX-777, JTX-1207, P-005; 4/6 PM Tr. 96:10-14, 102:1-4) to show they had prior knowledge of aspects of the patent claims, but fail to show Mr. Diab possessed any non-state-of-the-art aspects of any claims—such as reflective structures separate from the housing, and in particular locations proven to be reliable and mass producible.  4/20 AM Tr. 98:5-100:18; 4/19 AM Tr. 108:7-15.  *Finally*, Plaintiffs presented no evidence corroborating Mr. Diab's testimony that he allegedly shared any ideas with Dr. Lamego.  For example, Plaintiffs cited no evidence that Mr. Diab shared certain lab notebooks and the TF-I design (JTX-1910, JTX-1227, JTX-777, P-005) with Dr. Lamego, and the only other document describing reflective material (JTX-1207) is a patent publication that does not list Mr. Diab as an inventor.[8]

## CONCLUSION

Plaintiffs have not proven that the Court should grant JMOL in their favor on any claim or defense—and indeed, their arguments only confirm the fatal weaknesses in their positions.  Accordingly, Apple respectfully requests that the Court deny Plaintiffs' Rule 50(a) motion and grant Apple's cross-motion.

Dated: April 24, 2023                         Respectfully submitted,

---

[8]  Plaintiffs' citation to another patent, JTX-1206, fails to support any inventive contribution by Mr. Diab.  Dr. Madisetti simply identified in JTX-1206 a "housing, the light emitter and the light detector"—in other words, no more than well-known, state of the art components of an optical sensor.  4/12 PM Tr. 80:21-81:6; 4/20 AM Tr. 37:13-40:22, 98:11-22.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

2      JOSEPH J. MUELLER
       MARK D. SELWYN
3      AMY K. WIGMORE
       JOSHUA H. LERNER
4      SARAH R. FRAZIER
       NORA Q.E. PASSAMANECK
5      THOMAS G. SPRANKLING
       WILMER CUTLER PICKERING HALE AND
6      DORR LLP
7
8      BRIAN A. ROSENTHAL
       GIBSON, DUNN & CRUTCHER LLP
9
10     KENNETH G. PARKER
       HAYNES AND BOONE, LLP
11

12

13

14     By:  /s/ *Mark D. Selwyn*
            Mark D. Selwyn
15

16     *Attorneys for Defendant Apple Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

1

# CERTIFICATE OF COMPLIANCE

2    The undersigned, counsel of record for Defendant Apple Inc. certifies that this

3  brief contains 18 pages, which:

4    ___ complies with the word limit of L.R. 11-6.1

5     _X_ complies with the page limit set by court order on April 19, 2023.

6

7  Dated: April 24, 2023          Respectfully submitted,

8

9                    MARK D. SELWYN
                     AMY K. WIGMORE
10                   JOSHUA H. LERNER
                     SARAH R. FRAZIER
11                   NORA Q.E. PASSAMANECK
                     THOMAS G. SPRANKLING
12                   WILMER CUTLER PICKERING HALE AND
                     DORR LLP
13

14

15                   BRIAN A. ROSENTHAL
                     GIBSON, DUNN & CRUTCHER LLP
16

17                   KENNETH G. PARKER
                     HAYNES AND BOONE, LLP
18

19

20                   By:  /s/ *Mark D. Selwyn*
                          Mark D. Selwyn
21

22                   *Attorneys for Defendant Apple Inc.*
23

24

25

26

27

28