# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation | Case No. 8:20-cv-00048-JVS-JDE |
| Plaintiffs, | **JURY INSTRUCTIONS** |
| v. | |
| APPLE INC., a California corporation | Hon. James V. Selna |
| Defendant. | |

Dated: April 26, 2023

April 25, 2023                                    1

## Court's Instruction No. 1

Members of the Jury: Now that you have heard all of the evidence , it is my duty to instruct you on the law that applies to this case. Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Perform these duties fairly and impartially.  You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances.  Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

April 25, 2023                                            1

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

April 25, 2023

Court's Instruction No. 2

The Court has resolved certain issues in this case. You are not to concern yourself about that procedure or those issue.

April 25, 2023

Court's Instruction No. 3

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

In this case, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. have brought claims against defendant Apple Inc.  Masimo and Cercacor claim that Apple improperly obtained, disclosed, and used Asserted Trade Secret information through two of their former employees. Some of the information is technical in nature, and other information relates to business and marketing strategies.

Masimo and Cercacor also claim that Apple filed patents on inventions to which Masimo and Cercacor employees contributed, and Masimo and Cercacor contend those employees should be added as named inventors on those patents. Masimo and Cercacor claim that they should be part owners of those Apple patents.

Masimo and Cercacor seek monetary relief.

Apple denies all of Masimo's and Cercacor's claims. Apple contends that the information that Masimo and Cercacor claim are trade secrets are not actually trade secrets. Apple also contends it did not misappropriate Plaintiffs' Asserted Trade Secrets through Masimo's or Cercacor's former employees or through any other means.

Apple also contends that Masimo and Cercacor employees should not be added

as co-inventors to the disputed patents and neither Masimo nor Cercacor is a joint owner of those patents.

Apple also asserts the defense that Masimo and Cercacor did not file this lawsuit within the time permitted by law. Masimo and Cercacor contend that they filed the lawsuit within the time permitted by law.

Apple disputes Masimo's and Cercacor's monetary relief theories.

Court's Instruction No.  4


     This action involves allegations that certain information is subject to protection as trade secrets.  To protect this information from public disclosure, the Court has taken certain precautions to prevent public access to the information, for example by removing members of the public from the courtroom and sealing the courtroom.  You are reminded that Masimo and Cercacor bear the burden of proving all elements of their claim for misappropriation of trade secrets.  When evaluating whether Masimo and Cercacor have satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.

Court's Instruction No.  5

In this case, you will have heard about different types of intellectual property rights.  To help you understand the evidence, I will now give you a brief overview of patent and trade secret law and explain a few ways in which they differ.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the federal government and employs trained Examiners who review applications for patents.  Among other things, the Examiner reviews certain information about the state of the technology at the time the application was filed to determine whether the invention is truly an advance over the state of the art at the time.  A valid United States patent gives the patent holder the right for a certain period of time to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.  In return for these exclusive rights, the patent law imposes upon the inventor a requirement of public disclosure, so the PTO publishes patents, including a full and clear description of the invention and of the manner and process of making and using it.

Unlike patents, which are public, trade secrets are—as their name suggests—secret.  Thus, in contrast to patents, trade secret law provides businesses with a different form of protection for certain secret information.  A trade secret is information—such as a formula, pattern, compilation, program, device, method, technique, or process—that a company keeps confidential to maintain an advantage over competitors.  While a trade secret need not be a new invention as is required to receive a patent, a trade secret must derive independent economic value from being

April 25, 2023                                    7

maintained as a secret, that is from not being generally known by others who can obtain economic value from its disclosure or use.  Unlike with a patent, a business does not need to register or publish a trade secret with the government; instead, the business must use reasonable efforts to maintain the secrecy of the business information it seeks to protect as a trade secret.  And whereas patent law provides a patent holder with the exclusive right to exclude others from using the patented technology—even if a competitor has independently developed the same technology—trade secret law only prohibits competitors from misappropriating a company's trade secrets by acquiring them through improper means, such as through theft or by breaking a nondisclosure agreement.

Court's Instruction No.  6

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

1. Masimo and Cercacor's claim that Apple misappropriated one or more of the Asserted Trade Secrets.

    a. Masimo and Cercacor seek monetary relief for this claim.

    b. Masimo and Cercacor have the burden to prove this claim by a preponderance of the evidence.

2. Masimo and Cercacor's claim to correct inventorship on the following five patents: U.S. Patent Nos. 10,078,052, 10,247,670, 9,952,095, 11,009,390, and 10,219,754.

    a. Masimo and Cercacor do not seek monetary relief for this claim.

    b. Masimo and Cercacor have the burden to prove this claim by clear and convincing evidence.

3. Masimo and Cercacor's claim of ownership of the following five patents: U.S. Patent Nos. 10,078,052, 10,247,670, 9,952,095, 11,009,390, and 10,219,754.

    a. Masimo and Cercacor do not seek monetary relief for this claim.

    b. Masimo and Cercacor have the burden to prove this claim by a preponderance of the evidence.

4. Apple denies all of Masimo and Cercacor's claims.

5. Apple asserts the following defense to Masimo and Cercacor's claim for misappropriation of trade secrets:

April 25, 2023

9

a. Apple contends that Masimo and Cercacor did not file this lawsuit within the time permitted by law.

b. Apple has the burden of proof on this defense by a preponderance of the evidence to show that the claimed misappropriation of a trade secret occurred before January 9, 2017 and is therefore time barred.

c. But if Masimo and Cercacor prove by a preponderance of the evidence that, before January 9, 2017, they did not discover, nor with reasonable diligence should have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated at least one of the Asserted Trade Secrets, the lawsuit is not time barred.

<u>Court's Instruction No.  7</u>

When a party has the burden of proving any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.  A party's burden of proof is by a preponderance of the evidence unless I instruct you otherwise.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all the evidence, regardless of which party presented it.

Court's Instruction No.  8

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed, which were read to you and placed into evidence; and

4.  any facts that I have instructed you to accept as proved.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Some evidence may have been admitted only for a limited purpose.  When I instructed you that an item of evidence was admitted only for a limited purpose, you

April 25, 2023
12

may consider it only for that limited purpose and not for any other purpose.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Court's Instruction No.  9</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the evidence controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may have been received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4. Anything you may have seen or heard when the court was not in session is

not evidence.  You are to decide the case solely on the evidence received at the trial.

Court's Instruction No.  10

You may have taken notes during the trial to help you remember the evidence. Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

When you leave, your notes should be left in the jury room.  No one will read your notes.

## Court's Instruction No. 11

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  When I overruled the objection, the question may have been answered, or the exhibit received.  When I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

I may have ordered that some evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Court's Instruction No.  12

 

     A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and the lawyers for each party may ask questions.  The questions and answers are recorded.  You should not speculate about the reason why a particular witness testified by deposition rather than in court.  Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony in the same way as if the witness had been present to testify.

Court's Instruction No.  13

Certain charts, summaries, and other demonstratives not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts, summaries, and other demonstratives are only as good as the underlying evidence that supports them.  They are not themselves evidence or proof of any facts.  You should, therefore, give them only such weight as you think the underlying evidence deserves.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Court's Instruction No.  14

Certain other charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Court's Instruction No.  15

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also,

two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Court's Instruction No.  16

You have heard testimony from individuals who testified to opinions and the reasons for those opinions.  This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Experts are allowed in certain instances to rely on evidence which they did not create.  Such evidence may be considered as material which the expert relied upon, but not for the truth of that material itself.

April 25, 2023

23

Court's Instruction No.  17

1

2

3        You may consider the ability of each party to provide evidence.  If a party

4   provided weaker evidence when it could have provided stronger evidence, you may

5   distrust the weaker evidence.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Court's Instruction No.  18

Masimo and Cercacor claim that they possessed the Asserted Trade Secrets listed in your Juror Notebooks.

Masimo and Cercacor claim that these Asserted Trade Secrets are protectable and that Apple misappropriated them.  "Misappropriation" means the improper acquisition, use, or disclosure of trade secrets.  Masimo and Cercacor also claim that Apple's misappropriation caused Apple to be unjustly enriched.

Apple denies the trade secret misappropriation claims.  Apple contends that the information is not protectable as trade secrets and that Apple did not misappropriate this information.  Apple further contends that Apple was not unjustly enriched. Apple also contends that the suit was filed too late.

Court's Instruction No.  19

Masimo and Cercacor claim that Apple has misappropriated the Asserted Trade Secrets.  To succeed on this claim with respect to any particular Asserted Trade Secret, Masimo and Cercacor must prove all the following essential elements:

1.  That Masimo or Cercacor developed or otherwise were in lawful possession of the Asserted Trade Secret;

2.  That the Asserted Trade Secret was a trade secret at the time of the asserted misappropriation;

3.  That Apple improperly acquired, used or disclosed the Asserted Trade Secret.

If you find that Masimo and Cercacor have proved each element, you should find that misappropriation has occurred.

Separately, Masimo and Cercacor claim that Apple was unjustly enriched as a result of the misappropriation.   To succeed on this claim for unjust enrichment with respect to any particular Asserted Trade Secret, Masimo and Cercacor must prove all the following essential elements:

1. That Apple was unjustly enriched; and

2.  That Apple's acquisition, use or disclosure of the Asserted Trade Secret was a substantial factor in causing Apple to be unjustly enriched.

You must consider each one of the Asserted Trade Secrets individually.

April 25, 2023

Court's Instruction No.  20

Masimo and Cercacor must prove that they were in lawful possession of the
Asserted Trade Secrets at the time of the asserted misappropriation.

A party claiming that it has a trade secret does not have to prove that it was
written down before it files a claim. Of course, the party must prove the trade secret
existed prior to filing its claim.  However, once it brings a claim, that party is required
to provide a written description of its claimed trade secrets so the defendant
understands the scope of the claim. That is what happened in this case, and those
written descriptions of the Asserted Trade Secrets appear in your juror notebooks.
Those descriptions provide the controlling definitions of the Asserted Trade Secrets in
this case. You have heard testimony that Plaintiffs' lawyers were involved in drafting
those written descriptions. Even though Plaintiffs' lawyers were involved in drafting
the required disclosures, non-lawyer witnesses, such as an engineer, may testify about
the Asserted Trade Secret's scope and meaning, efforts to keep the Asserted Trade
Secret a secret, the value of the trade secrets, and other related facts. As I previously
instructed you, you must decide the facts based on evidence presented through the
witnesses, not the arguments of  counsel.

Court's Instruction No. 21

The second element of the misappropriation claim is that the information described within an Asserted Trade Secret met the legal definition of a trade secret at the time of the asserted misappropriation. To prove that an Asserted Trade Secret was a trade secret, Masimo and Cercacor must prove each of the following:

1. That the Asserted Trade Secret was secret.

2. That the Asserted Trade Secret had actual or potential independent economic value because it was secret.

3. That Masimo and Cercacor made reasonable efforts to maintain the secrecy of the Asserted Trade Secret.

Trade secret information can be technical or non-technical, such as business or marketing strategies.

These instructions use the terms "secret" and "not generally known" interchangeably to mean "not generally known to the public or to others who can obtain economic value from its disclosure or use."

I will now describe each of these requirements in more detail.

Court's Instruction No.  22

An Asserted Trade Secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know it and who could obtain economic value from its disclosure or use.

In determining whether a particular Asserted Trade Secret had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which Masimo and Cercacor obtained or could obtain economic value from the Asserted Trade Secret if it were not secret;

2. The extent to which others could obtain economic value from the Asserted Trade Secret if it were not secret;

3. The amount of time, money, or labor that Masimo and Cercacor expended in developing the Asserted Trade Secret;

4. The amount of time, money, or labor that would be saved by a competitor that used the Asserted Trade Secret;

5. Whether Apple, Masimo, or Cercacor actually incorporate the purported secret in any product or process.

The presence or absence of any one or more of these factors is not necessarily determinative.

The mere fact of publication does not necessarily mean that subject matter is generally known.  The "generally known" inquiry is not whether the Asserted Trade Secret has been publicly disclosed at all, but whether it has become generally known to the relevant people: i.e., potential competitors or other persons to whom the information would have some economic value.  Generally, publication of information

in a patent or a patent application makes it generally known to the public as of the date of publication and so eliminates any trade secrecy.   On the other end of the spectrum, the publication of a highly technical trade secret in a local Nepalese newspaper is not likely to be generally known.  Of course, you must examine the specific facts reflected in the evidence in deciding this element.

<u>Court's Instruction No.  23</u>

To establish that the Asserted Trade Secrets are protectable, Masimo and Cercacor must prove that they made reasonable efforts under the circumstances to maintain the secrecy of the Asserted Trade Secrets.  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Masimo and Cercacor, exercising due care to protect important information of the same kind and value.

In determining whether Masimo and Cercacor made reasonable efforts to maintain secrecy, you should consider all the facts and circumstances.  Among the factors you may consider are the following:

1. Whether documents or computer files containing the Asserted Trade Secrets were marked with confidentiality warnings;

2. Whether Masimo and Cercacor instructed their employees to treat the Asserted Trade Secrets as confidential;

3. Whether Masimo and Cercacor restricted access to the Asserted Trade Secrets to persons who had a business reason to know the information;

4. Whether Masimo and Cercacor kept the Asserted Trade Secrets in a restricted or secured area;

5. Whether Masimo and Cercacor required employees or others with access to the Asserted Trade Secrets to sign confidentiality or nondisclosure agreements;

6. Whether Masimo and Cercacor took any action to protect the specific Asserted Trade Secrets, or whether it relied on general measures taken to protect its business information or assets;

7.  The extent to which any general measures taken by Masimo and Cercacor would prevent the unauthorized disclosure of the Asserted Trade Secrets; or

8.  Whether there were other reasonable measures available to Masimo and Cercacor that they did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

Court's Instruction No. 24


If some or all of the components of an Asserted Trade Secret were generally known at the time of the asserted misappropriation, Masimo and Cercacor may still have a viable claim if they can establish that the Asserted Trade Secret as a whole was entitled to legal protection.


Each Asserted Trade Secret must be analyzed as a whole. A trade secret can be protectable even if some or all of the individual parts or "elements" of the trade secret were generally known to the public or to other persons who can obtain economic value from its disclosure or use. The question is whether the trade secret lacks independent economic value because the trade secret as a whole is generally known to the public or to other persons who can obtain economic value from their disclosure or use.

<u>Court's Instruction No.  25</u>

The Plaintiffs and Defendant in this case are corporations.  A corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person.  It can act only through its employees, agents, directors, or officers.

Court's Instruction No.  26

Usually, an employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

Conduct is within the scope of employment if:

a.  It is reasonably related to the kinds of tasks that the employee was employed to performed; or

b.  It is reasonably foreseeable in light of the employer's business or the employee's job responsibilities.

However, if you find that Dr. Lamego or Dr. O'Reilly violated a duty of confidentiality to Masimo or Cercacor, then Apple can only be deemed to have known, or that it should have known, about the confidentiality violation if another Apple employee knew or should have known about the unauthorized action.

April 25, 2023

Court's Instruction No.  27

Among the exhibits received in evidence are several versions of "Employee Confidentiality Agreements" that Masimo and Cercacor signed with certain employees, including Marcelo Lamego and Michael O'Reilly. The Court has not determined whether the language of the confidentiality provisions contained in those Employee Confidentiality Agreements are fully enforceable, and you should make no assumptions.

You may consider the confidentiality provisions of these Employee Confidentiality Agreements only for the limited purpose of assessing whether Masimo and Cercacor have exercised reasonable efforts to maintain the secrecy of the Asserted Trade Secrets. You may not consider the confidentiality provisions of these Employee Confidentiality Agreements in connection with any other issue in this case, including whether the alleged trade secrets were acquired by improper means.

Court's Instruction No.  28

Misappropriation may consist of a number of different acts each of which would constitute a trade secret violation: acquisition, use, derivation, or disclosure.  I will instruct you on each of these concepts.

Court's Instruction No.  29

Apple misappropriated an Asserted Trade Secret by acquisition if Apple acquired the Asserted Trade Secret and knew or had reason to know that Apple used improper means to acquire it.

Court's Instruction No. 30

Apple misappropriated a Masimo and Cercacor Asserted Trade Secret by use if Apple:

1. Used it without Masimo and Cercacor's consent; and

2. Did any of the following:

    a. Acquired knowledge of the trade secret by improper means; or

    b. At the time of use, knew or had reason to know that Apple's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    c. At the time of use, knew or had reason to know that Apple's knowledge of the trade secret was derived from or through a person who owed a duty to Masimo or Cercacor to maintain its secrecy or limit its use.

When considering (a) and (b) above, you should incorporate the Court's other instructions concerning the necessity of Apple's knowledge.

April 25, 2023

Court's Instruction No.  31

The third element of Masimo and Cercacor's claim with respect to an Asserted Trade Secret is that Apple misappropriated through improper use.  I will now explain what these terms mean.

Masimo and Cercacor can prove that Apple misappropriated a particular Asserted Trade Secret by use if they prove that Apple both:

1. Used the Asserted Trade Secret without Masimo or Cercacor's consent; and

2. At the time of its use, knew or had reason to know that (i) Apple's knowledge of the Asserted Trade Secret came from or through Marcelo Lamego or Michael O'Reilly, and (ii) Dr. Lamego and Dr. O'Reilly had a duty to Masimo and Cercacor to limit use of the Asserted Trade Secret.

Masimo and Cercacor may prove that Apple used the Asserted Trade Secret if Apple knew it had acquired the Asserted Trade Secret before actually using the resulting information in connection with manufacturing, producing, researching and developing, or marketing the Apple Watch, provided that the information Apple actually used was substantially derived from the Asserted Trade Secret.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the alleged use, another person at Apple knew or had reason to know that Apple had improperly obtained an Asserted Trade Secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

Court's Instruction No.  32

Apple misappropriated an Asserted Trade Secret if Apple unlawfully acquired the Asserted Trade Secret and then built upon or modified the Asserted Trade Secret before using, disclosing, or deriving a benefit from it, including by:

1.    Using, disclosing, or deriving a benefit from a technique or information derived from the Asserted Trade Secret;

2.    Using, disclosing, or deriving a benefit from a technique or information closely resembling the Asserted Trade Secret;

3.    Adding independent improvements or modifications, so long as the product or process is substantially derived from the Asserted Trade Secret; or

4.    Using, disclosing, or deriving a benefit from the Asserted Trade Secret without using all of the elements.

Masimo and Cercacor may prove that Apple disclosed or used the Asserted Trade Secret if Apple knew it had acquired the Asserted Trade Secret through improper means and then Apple built upon or modified the Asserted Trade Secret before disclosing or actually using the resulting information in connection with manufacturing, producing, researching and developing, or marketing the Apple Watch, provided that the information Apple actually used was substantially derived from the Asserted Trade Secret.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the asserted use, another person at Apple knew or had reason to know

April 25, 2023

41

that Apple had improperly obtained an Asserted Trade Secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

Court's Instruction No. 33

Apple misappropriated an Asserted Trade Secret by disclosure if Apple:

1. Disclosed it without Masimo or Cercacor's consent; and

2. Did any of the following:

   a. Acquired knowledge of the Asserted Trade Secret by improper means; or

   b. At the time of disclosure, knew or had reason to know that Apple's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

   c. At the time of disclosure, knew or had reason to know that Apple's knowledge of the trade secret was derived from or through a person who owed a duty to Masimo or Cercacor to maintain its secrecy or limit its use.

To prove that Apple had the required state of mind, Masimo and Cercacor must prove that before the asserted disclosure, another person at Apple knew or had reason to know that Apple had improperly obtained an Asserted Trade Secret from Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly.

April 25, 2023

43

Court's Instruction No.  34

Improper means of acquiring a trade secret or knowledge of a trade secret include theft, financial inducements, misrepresentation, or breach or inducement of a breach of a duty to maintain secrecy.

If Apple independently developed the information that Masimo and Cercacor claim is covered by an Asserted Trade Secret, then Apple did not employ improper means to acquire that information.  Additionally, recruiting or hiring employees from another company, including from a competitor, does not on its own constitute improper means.

April 25, 2023

44

Court's Instruction No.  35

1

2

3        A duty to maintain secrecy, or limit use, of trade secret information may arise

4  from a contract or by law.  One example from contract would be a contract prohibiting

5  use of confidential information.  One example from law is a duty to protect confidential

6  information from use outside of the employment in which it was gained.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

April 25, 2023                                        45

Court's Instruction No.  36

Another type of duty is what is known as a fiduciary duty.  A corporate officer owes a fiduciary duty to the corporation.  A fiduciary duty imposes on a corporate officer a duty to act with the utmost good faith in the best interests of the corporation. A corporate officer's fiduciary duty to protect confidential information continues even after leaving the corporation.

April 25, 2023

Court's Instruction No.  37

Apple claims that Masimo and Cercacor's lawsuit was not filed within the time set by law.  To succeed on this defense, Apple must prove that the claimed misappropriation of a trade secret occurred before January 9, 2017.

However, the lawsuit is not barred if Masimo and Cercacor prove that before January 9, 2017, they did not discover, nor with reasonable diligence should they have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated at least one of Masimo and Cercacor's Asserted Trade Secrets.

April 25, 2023

47

Court's Instruction No.  38

If Masimo and Cercacor prove that Apple misappropriated one or more of the Asserted Trade Secrets, and prove that the misappropriation was a substantial factor in causing Apple to be unjustly enriched, then Masimo and Cercacor are entitled to recover monetary compensation.

A "substantial factor" is a factor that a reasonable person would consider to have contributed to the unjust enrichment.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the unjust enrichment.  Conduct is not a substantial factor in causing unjust enrichment if the same unjust enrichment would have occurred without that conduct.

April 25, 2023

Court's Instruction No. 39

1

2

3      To prove unjust enrichment, Masimo and Cercacor must prove that Apple is

4  liable for misappropriation of an Asserted Trade Secret and that the misappropriation

5  caused Apple to receive a benefit that it otherwise would not have achieved.

6

7      Unjust enrichment occurs when a defendant reaps an undeserved benefit by

8  taking improper advantage of someone else's trade secret.  Unjust enrichment does not

9  occur, however, where the benefit would have been realized anyway.

10

11      I will now instruct you on how to decide the amount of any unjust enrichment

    you find.  By giving you this instruction, I am not suggesting you should find one way

12  or the other regarding whether Masimo and Cercacor has proven misappropriation or

13  any unjust enrichment.

14

15      If you find misappropriation, to decide the amount of any unjust enrichment, first

16  determine the value of Apple's benefit that it would not have achieved except for its

17  misappropriation of the Asserted Trade Secrets. Masimo and Cercacor must prove this

18  amount by a preponderance of the evidence. Then subtract from that amount the value

19  of any benefit Apple has proven by a preponderance of the evidence is not reasonably

20  attributable to the Asserted Trade Secrets, as well as Apple's reasonable expenses,

21  including the value of labor, materials, rents, expenses, and interest on invested capital,

22  etc.

23

24

25

26

27

28

April 25, 2023

Court's Instruction No.  40

If you decide that Apple's misappropriation caused Masimo and Cercacor harm you must decide whether Apple's conduct justifies an award of punitive relief.  The purposes of punitive relief are to punish a wrongdoer for the harmful conduct, and to discourage similar conduct in the future.

To recover punitive relief, Masimo and Cercacor must prove by clear and convincing evidence that Apple acted willfully and maliciously.  You must determine whether Apple acted willfully and maliciously, but you will not be asked to determine the amount of any punitive relief.  I will calculate the amount later.

"Willfully" means that Apple acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Apple acted with an intent to cause injury, or that Apple's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.

Apple acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

April 25, 2023

50

Court's Instruction No.  41

1
2
3        At the beginning of the trial, I gave you a brief overview of the patent law

4   relevant to this case.  I will now give you more detailed instructions about the patent

5   law that specifically relate to this case.

6
7        Patents are granted by the United States Patent and Trademark Office (sometimes

8   called "the PTO").  A valid United States patent gives the patent holder the right for a

9   certain period of time to prevent others from making, using, offering to sell, or selling

10  the patented invention within the United States, or from importing it into the United

11  States, without the patent holder's permission.  In return for these exclusive rights, the

12  patent law imposes upon the inventor a requirement of disclosure, so the PTO publishes

13  patents, including a full and clear description of the invention and of the manner and

14  process of making and using it.

15       To obtain a patent, one must first file an application with the PTO.  The PTO is

16  an agency of the federal government and employs trained Examiners who review

17  applications for patents.  The application includes what is called a "specification,"

18  which contains a written description of the claimed invention telling what the invention

19  is, how it works, how to make it, and how to use it.  The specification concludes with

20  one or more numbered sentences.  These are the patent "claims." If a patent is

21  eventually granted by the PTO, the claims define the boundaries of its protection and

22  give notice to the public of those boundaries.  Claims are usually divided into

23  components or steps, called "limitations."

24
25       For example, a claim that covers the invention of a table may recite the tabletop,

26  four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue

27  are each a separate limitation of the claim.

28

Court's Instruction No.  42

In this case, Masimo and Cercacor contend that certain of their employees should be listed as joint inventors on five of Apple's patents.  The verdict form specifies for each claim the employees and patents associated with each of Plaintiffs' five claims for correction of inventorship.

To succeed on a correction of inventorship claim, Masimo and Cercacor bear the burden of proving both of the following:

1. the listed employee of Masimo and/or Cercacor contributed to the conception of at least one of the claims of the patent; and

2. the contribution was significant in quality as measured against the scope of the full invention.

Masimo and Cercacor must prove these elements by clear and convincing evidence.  An asserted co-inventor's testimony regarding the facts surrounding his or her asserted contribution cannot, standing alone, rise to the level of clear and convincing proof.  The testimony must be corroborated with additional evidence. That evidence may take many forms, including contemporaneous documents, testimony from another witness, or circumstantial evidence about the inventive process.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have engaged in some collaboration or joint effort.

In this case, there is no proof that either Mohamed Diab or Jeroen Poeze worked directly with Apple employees. It would be sufficient, however, if Apple came into possession of a former Masimo employee's contributions through misappropriation of trade secrets. With respect to the '754 patent, Plaintiffs allege that Apple came into possession of a former Masimo employee's contributions through misappropriation of alleged trade secrets.

In deciding whether an asserted co-inventor's contribution was significant in quality, you must measure that contribution against the dimension of the full invention. For instance, if someone only explains to the actual inventors well-known concepts or the current state of the art, then he or she is not a joint inventor.

Court's Instruction No. 43

1

2

3       Masimo and Cercacor also seek a declaration of patent ownership in connection

4   with each of the five Disputed Patents.

5

6       The inventor or inventors of a patent are typically the initial owners of that

7   patent.  Inventors are permitted to transfer their ownership rights to another person or

    entity, such as an employer.

8

9       To prove that Masimo or Cercacor has an ownership interest in a patent requires

10  proof, by a preponderance of the evidence, that at least one inventor—Marcelo Lamego

11  or someone you have decided by clear and convincing evidence should be added as an

12  inventor—did one or both of the following:

13

14      1.  Assigned to Masimo or Cercacor his or her interest in the patent; or

15      2.  Made his or her inventive contribution to the patent at a time and under

16          conditions that created an obligation to assign to Masimo or Cercacor his

17          or her rights in such inventions.

18

19

20

21

22

23

24

25

26

27

28

Court's Instruction No.  44

1

2

3   Before you begin your deliberations, elect one member of the jury as your
4 presiding juror.  The presiding juror will preside over the deliberations and serve as the
5 spokesperson for the jury in court.

6

7   You shall diligently strive to reach agreement with all of the other jurors if you
8 can do so.  Your verdict must be unanimous.  Each of you must decide the case for
9 yourself, but you should do so only after you have considered all of the evidence,
10 discussed it fully with the other jurors, and listened to their views.

11   It is important that you attempt to reach a unanimous verdict but, of course, only
12 if each of you can do so after having made your own conscientious decision.  Do not be
13 unwilling to change your opinion if the discussion persuades you that you should.  But
14 do not come to a decision simply because other jurors think it is right or change an
15 honest belief about the weight and effect of the evidence simply to reach a verdict.

16

17

18

19

20

21

22

23

24

25

26

27

28

## Court's Instruction No. 45

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves during the course of your deliberations.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on

April 25, 2023

this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

April 25, 2023

## Court's Instruction No.  46

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Court's Instruction No. 47</u>

A verdict form has been prepared for you.  You should follow the instructions in the verdict form as you move through your deliberations.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.