## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | May 4, 2023 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable     **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **[IN CHAMBERS] <u>Order Granting-In-Part and Denying-In-Part Apple's Rule 50(a) Motion (Dkt. 1659) and Denying Plaintiffs' Rule 50(a) Motion (Dkt. 1656) (Redacted)</u>**

Before the Court are the parties' Rule 50(a) motions for judgment as a matter of law. On April 25, 2023, the Court issued a tentative ruling and heard arguments. The Court provisionally ruled from the bench and now issues its order.

I.    <u>Legal Standard</u>

A motion for judgment as a matter of law presents "a procedural issue not unique to patent law, which [the Federal Circuit] review[s] under the law of the regional circuit where the appeal from the district court normally would lie." <u>Riverwood Int'l Corp. v. R.A. Jones & Co.</u>, 324 F.3d 1346, 1352 (Fed. Cir. 2003); <u>see also</u> <u>Applied Med. Res. Corp. v. U.S. Surgical Corp.</u>, 435 F.3d 1356, 1364 (Fed. Cir. 2006).

Rule 50 authorizes the defendant to move for judgment as a matter of law any time after the plaintiff's case-in-chief. Fed. R. Civ. P. 50(a). In determining whether to grant judgment as a matter of law, the court must determine whether the jury has a "legally sufficient evidentiary basis" to find for the plaintiff. <u>Id.</u> If the judge denies the motion, and the jury later returns a verdict against the defendant, the defendant may renew its motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b); <u>EEOC v. Go Daddy Software, Inc.</u>, 581 F.3d 951, 961 (9th Cir. 2009). Like the pre-verdict motion, the post-verdict motion also challenges the sufficiency of the plaintiff's evidence. <u>Hagen v. City of Eugene</u>, 736 F.3d 1251, 1256 (9th Cir. 2013).

If the jury verdict is "supported by substantial evidence," the court must uphold the jury verdict. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); SEC v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011). However, if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury," the court may grant judgment as a matter of law to the defendant. White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (internal quotation marks omitted). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007). In making this determination, "[t]he court must not weigh the evidence, but rather should ask whether [the nonmoving party] has presented sufficient evidence to support the jury's conclusion." Todd, 642 F.3d at 1215. The court must "disregard all evidence favorable to the moving party that the jury is not required to believe."  See Wallace, 479 F.3d at 624.  Further, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Todd, 642 F.3d at 1215.

II.    Apple's Rule 50(a) Motion

Apple seeks judgment as a matter of law on Plaintiffs' claims. See Dkts. 1659, 1705 (sealed). Plaintiffs filed a response. Dkts. 1667, 1703 (sealed). The Court discusses each claim in turn.

A.    Misappropriation Claim: Intent

Apple argues that Plaintiffs have not shown that "(1) the defendant used 'improper means to acquire knowledge of the trade secret[s]' and used/disclosed the ATS without authorization or (2) the defendant knew or had reason to know their knowledge of the ATS was wrongfully acquired." Mot. at 2 (quoting Cal. Civ. Code § 3426.1(b)(1)-(2)). Specifically, Apple contends that, because Plaintiffs cannot show that Apple "knew or should have known" that Drs. O'Reilly and Lamego breached a duty to Plaintiffs, Plaintiffs have failed to prove "intent to injure or defraud." Id. Apple argues that various evidence, including internal emails and presentations, cannot support intent because they occurred before the first alleged misappropriation and/or there is nothing wrong with hiring employees from another company. Id. at 4-6.

Plaintiffs respond that they proved the mental state required by CUTSA. Opp. at 2. Plaintiffs argue they demonstrated the requisite intent by showing, e.g., that Apple "assembled a confidential 'Project Rover' to identify third parties to help develop physiological monitoring features;" Apple contacted Masimo and "frame[d]" the discussion around licensing; Apple hired O'Reilly (CMO) and Lamego (CTO) from Masimo/Cercacor; and Apple discussed joint development or acquisition of Masimo "or people or assets" to assist with the Apple Watch project, including the "next level down" from Lamego and O'Reilly.  Id. at 2-3. Plaintiffs argue that Apple acquired their trade secrets through improper means based on, e.g., the high compensation packages paid to

former Masimo employees, misrepresentations about why Apple wanted to meet with Masimo, breach of inducement of the Confidentiality Agreements, etc. <u>Id.</u> at 3-4. Plaintiffs also argue they do not have to show another employee besides Lamego or O'Reilly knew of the misappropriation under respondeat superior, but in any event, other Apple employees should have known (<u>e.g.</u>, Hotelling, employees who interviewed O'Reilly). <u>Id.</u> at 5.

Apple is correct that "it is not 'appropriate to direct a jury to impute an agent's knowledge of a secret to the principal,'" at least where the agent "did not inform other employees of plaintiff's concept." <u>See</u> <u>Carr v. AutoNation Inc.</u>, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018). But whether Drs. O'Reilly and Lamego used or shared any Masimo/Cercacor trade secrets at Apple, and whether Apple knew it, turns on witness credibility, at least for those trade secrets for which Plaintiffs have shown sufficient evidence of existence and misappropriation to send the question to the jury. For example, Apple argues that "Drs. Lamego and O'Reilly each confirmed that Apple had not asked them to share Plaintiffs' confidential information," Mot. at 3-4, but the jury is not required to believe this testimony. They may assess witness credibility and decide whether to believe the testimony counterbalanced against the documentary evidence such as emails and internal presentations. Drawing all inferences in Plaintiffs' favor, the record evidence does not permit only one reasonable conclusion on this point.

The Motion is **DENIED** on this ground.

B.    <u>Misappropriation Claim: Reasonable Particularity of Asserted Trade Secrets</u>

Apple argues that, during trial, Plaintiffs did not adhere to their disclosed asserted trade secrets, but rather the "witnesses repeatedly sought to expand and contract the scope of Plaintiffs' ATS to suit their testimony and to avoid evidence that aspects of the ATS were generally known." Mot. at 6. Apple argues this problem is particularly acute with respect to the indefinite "catchall" VIA asserted trade secret and the business methods asserted trade secrets, especially where Kiani sought to expand the definitions of the business methods secrets. <u>Id.</u> at 6-7. Apple also argues that Madisetti sought to contract the definitions of L4 and L5 by opining that they claim only specific solutions to the stated problem rather than all conceivable solutions. <u>Id.</u>

Plaintiffs respond that the Court has already rejected Apple's specificity argument and should do so again here. Opp. at 8. To the extent the scope of the trade secrets remains contested, Plaintiffs argue this issue goes to weight. <u>Id.</u> at 8-9.

A trade secret plaintiff is required to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." <u>Imax Corp. v. Cinema Techs., Inc.</u>, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (quotations omitted). For example, in <u>Imax</u>, the Ninth Circuit explained that "reasonable specificity could only be achieved

by identifying the precise numerical dimensions and tolerances as trade secrets," and therefore rejected the "contention that use of the catchall phrase 'including every dimension and tolerance that defines or reflects that design' achieved the level of specificity necessary to identify the numerical dimensions and tolerances as trade secrets." Id. at 1167.

In view of the Court's cautionary instruction concerning the scope of the asserted trade secrets, which was given during trial at the request of the parties, and will be given again during closing instructions, the Court concludes that the issues raised with respect to expanding/contracting go to weight, not admissibility. The Court's instruction advises the jury that the "written descriptions of the Asserted Trade Secrets appear[ing] in your juror notebooks . . . provide the controlling definitions of the Asserted Trade Secrets in this case." See Court's Instruction No. 19.[1] Therefore, to the extent the jury heard testimony seeking to alter the scope of the asserted trade secrets, this instruction advises the jury that it is not permissible to do so; rather, the definitions in their notebooks control. In turn, that may impact the jury's view of the credibility of the testifying witnesses.

To the extent the asserted trade secrets are not excluded as a matter of law on other grounds (e.g., generally known), and the jury returns a verdict in Plaintiffs' favor on Question 1 (proving existence of trade secrets), if Apple elects to renew its motion under Rule 50(b) as to specificity, the Court would like more briefing concerning (1) the non-specificity of the VIA asserted trade secret, and (2) whether a narrowed trade secret interpretation offered at trial could provide substantial evidence to allow a jury to find possession of a trade secret based on that narrowed interpretation (e.g., Madisetti's testimony that L4 and L5 include only specific solutions rather than every conceivable yet unspecified solution).

The Motion is **DENIED** on this ground.

C.    Proof of Asserted Trade Secrets and Acquisition, Use or Disclosure

To establish a trade secret, Plaintiffs must prove by a preponderance of the evidence that they "owned the trade secret; at the time of misappropriation the information was a trade secret; the defendant improperly acquired, used, or disclosed the trade secret; the plaintiff was harmed; and the defendant's acquisition, use, or disclosure of the trade secret was a substantial factor in causing the plaintiff harm." AMN Healthcare, Inc. v. Aya Healthcare Services, Inc., 28 Cal. App. 5th 923, 942 (2018).

Apple contends that Plaintiffs have not met their burden as to any asserted trade secret.

---

[1]    The Court declines to modify the instruction as suggested by Plaintiffs in Appendix A. See Opp. at 9, 32.

1.   <u>Business Strategies</u>

Apple argues that these asserted trade secrets fail because they "describe general
and broad marketing concepts, and there is no evidentiary basis from which a reasonable
jury could find that Plaintiffs possessed their full scope." Mot. at 7. For example, with
respect to B1, Apple argues that "Plaintiffs have not even attempted to show that they
possess all ways of ████████████████████████████████████████████████████████
████████████████████████ or every variation of the concept of ████████████████████
████████████  Even if one example suffices for possession, Apple argues Plaintiffs have
failed to show the concepts aren't generally known. <u>Id.</u> at 8.

Apple also argues that "no reasonable jury could find that the purported trade
secrets were not generally known at the time of alleged misappropriation (<u>i.e.</u>, in 2013 or
later)" because they are "'high level conceptual ideas' amounting to general marketing
principles without any details on implementation," and Plaintiffs have not shown the
admittedly generally known concepts qualify as a combination trade secret. <u>Id.</u> Further,
Apple contends "there is no evidentiary basis from which a reasonable jury could find
that the [business methods] ATS had independent economic value from being not
generally known;" that Plaintiffs took reasonable efforts to keep them secret; or that
Apple misappropriated them through O'Reilly. <u>Id.</u> at 9-10.

Plaintiffs respond that they can show possession of part of a trade secret (<u>e.g.</u>, one
type of method), and Apple fails to show documentary evidence of third-party products
showing the secrets are generally known. Opp. at 9-10. For example, Plaintiffs aver that
Apple's expert relied on a Masimo press release to show generally known, but Plaintiffs'
expert responded to explain why the press release did not contain all aspects of the
asserted trade secrets. <u>Id.</u> at 10. Plaintiffs argue that Kiani's testimony concerning
"longstanding healthcare practices and products" did not show the strategy of B1 was
generally known, and Palmatier explained that an "outward-facing" communication does
not disclose an "internal strategy." <u>Id.</u> Plaintiffs argue this testimony also undermines
Apple's arguments concerning independent economic value from and reasonable efforts
to maintain secrecy. <u>Id.</u> at 11. Moreover, Plaintiffs argue that Palmatier's testimony
shows how Apple obtained the asserted trade secrets and used them (<u>e.g.</u>, as documented
in the O'Reilly notebooks and communications). <u>Id.</u> Plaintiffs make similar arguments
concerning B2 and B4.  <u>Id.</u> at 11-13.

The Court finds that a reasonable jury could not return a verdict for Plaintiffs
concerning whether the business methods alleged trade secrets were generally known.
Neither Kiani nor Palmatier's testimony on this point can change the asserted trade
secrets, and it does not change the outcome. A comparison of each asserted trade secret
with the evidence demonstrates that these concepts were generally known.

| Trade Secret | Evidence/Ruling |
|---|---|
| **B1**. | Although stated via lengthy description, in a nutshell, this trade secret discloses a strategy to create sought after, clinically accurate products that can be used in hospitals and at home synergistically. Kiani conceded on cross-examination that B1 was captured by longstanding healthcare practices and products, including thermometers and scales that are marketed to consumers and also approved for clinical use. See, e.g., 4/5 PM Tr. 97:8-22. Kivetz testified that Kiani's description of B1 is the well-known concept "exactly the fourth principle of leveraging synergies for network effects." 4/18 PM Tr. 18-19. Even Palmatier conceded (and Plaintiffs do not dispute) that every constituent part of B1 is generally known. See 4/12 AM Tr. 34, 37. Conclusory testimony suggesting there is something more hidden behind B1 as defined by Plaintiffs cannot save it from being generally known as it was disclosed in this case.[2] |
| **B2**. | B2 describes collecting more patient data to better care for a patient. For the same reasons described with respect to B1, B2 is not a trade secret because it is generally known. |

[2] At the hearing, Plaintiffs argued that Palmatier's testimony – that products cannot disclose a marketing strategy – creates a factual dispute that should go to the jury. This argument is unpersuasive because Palmatier's conclusory testimony about product packaging generally does not address whether the example products referenced at trial disclose the marketing principles disclosed in B1. To the extent Palmatier's testimony intended to imply that some hidden strategy may be read between the lines of B1 as it was disclosed in this case, as stated, that misstates the law because an alleged trade secrets cannot evolve during trial.



The Motion is **GRANTED** on this point because no reasonable juror could find for
Plaintiffs regarding whether the alleged "B" category trade secrets were generally known.
As a result, there is also a failure of proof concerning the independent economic value
from keeping them secret and reasonable efforts to maintain secrecy elements. Because
the Court grants the motion on these elements, it need not reach misappropriation.

    2.    <u>L4/L5</u>

        a.    <u>L4</u>

Apple argues there is no evidence that it misappropriated L4. Mot. at 11-12. L4
requires ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮ Apple argues that Plaintiffs presented no evidence that they possessed L4
to the extent it requires ▮▮▮▮▮▮▮▮▮▮▮ and therefore the asserted
trade secret fails. <u>Id.</u> Apple states that it "is unaware of any case that permits Plaintiffs to
carve off a piece of an ATS during trial, <u>see</u> Dkt. 669 at 3; [and] Plaintiffs have cited
none." <u>Id.</u> at 12.

---

[3] At the hearing Plaintiffs argued that the press release does not discuss marketing practices, but
the question is not whether the press release contains the literal words of the alleged trade secret (<u>e.g.</u>,
"Masimo's marketing practices are as follows. . ."), it is whether the overall scope of what is disclosed
in the alleged trade secret may be understood from the information that was publicly disclosed and
widely disseminated, and therefore is generally known. Plaintiffs also argued that the words "▮
▮▮▮▮▮▮▮▮▮▮▮" are not in the press release, but a general concept or strategy of gathering
more patient data to better care for a patient can be generally known or disclosed even if does not use
Plaintiffs' preferred buzz words conveying the same thing.

Further, Apple asserts that, "years before Dr. Lamego joined Apple, ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were generally known." Id. (citing, e.g., the
2008 Petersen reference); compare 4/20 AM Tr. 49:9-55:21 (Warren); JTX-3778 with 4/6
PM Tr. 95:3-12 (Diab's "dark digit" test); P-0162. Apple contends that Plaintiffs did not
take reasonable efforts to keep L4 secret considering their disclosures in published
patents. Id. at 13. Apple also argues there is no evidence of misappropriation because the
Lamego email on which Plaintiffs rely references ▮▮▮▮▮▮▮▮▮▮ which "refers
to protecting against ▮▮▮▮▮▮▮▮▮▮ and has nothing to do with ▮▮▮▮▮▮.
Id. (citing 4/18 PM Tr. 80; 4/20 AM Tr. 65-66; 4/20 PM Tr. 89). Apple observes there is
also no evidence linking this Lamego email to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Plaintiffs accuse of using L4," especially where Apple was already using ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ before
Dr. Lamego arrived at Apple." Id. Apple argues the change made to have ▮▮▮▮▮
▮▮▮▮▮▮ was done per Apple engineers, not Lamego, and no changes were made
▮▮▮▮▮▮ because of Lamego. Id. at 14.

Plaintiffs respond that Diab and Poeze testified that Masimo designed its sensors ▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at 14.
In an event, Plaintiffs accuse Apple of misappropriating the other option disclosed in the
asserted trade secret, i.e., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮. Plaintiffs argue that Madisetti's testimony shows that L4 retained independent
economic value from not being generally known and Diab confirmed the industry does
not use similar methods. Id. at 14. Further, Plaintiffs aver that Madisetti offered counter
testimony concerning the Petersen reference, suggesting L4 is not generally known. Id. at
14-15. Plaintiffs argue that the patent disclosures on which Apple relies do not show
▮▮▮▮▮, as disclosed in L4. Id. at 15. Masimo employees also testified about efforts to
keep L4 confidential. Id. Plaintiffs argue that evidence supports the conclusion that
Lamego was involved in the May 2014 ▮▮▮▮▮▮▮ Apple's ▮▮▮▮▮ test to ▮
▮▮▮▮▮▮▮▮. Id. at 15-16. Madisetti also offered testimony that distinguishing the
▮▮▮▮▮▮▮ claimed in the Lamego patent from ▮▮▮▮▮▮▮▮▮▮
context. Finally, Plaintiffs argue that substantial evidence supports the conclusion that
Apple uses L4 in ▮▮▮▮▮▮▮▮▮▮. Id. at 16 ("Apple used L4 to ▮▮▮▮
▮▮▮▮▮▮▮▮").

The Court finds that the record supports competing inferences concerning whether
L4 is a trade secret (e.g., including whether Plaintiffs possessed it, whether it was
generally known, whether it derives independent economic value from being secret, and
whether Plaintiffs took reasonable efforts to maintain its secrecy), and whether Apple
misappropriated L4. These questions turn on witness credibility and several of the issues
boil down to a classic battle of the experts. Therefore, drawing all inferences in Plaintiffs'
favor as the non-moving party, the Court concludes that these questions must go to the
jury.

The Court **DENIES** the motion on this ground.[4]

> b.    <u>L5</u>

L5 recites identifying ████████████████████████████████████████
████████████████████████████████████████████████████████

Apple argues that Plaintiffs have not presented evidence that they possessed the
full scope of L5 where L5 purports to include ████████████████████████████
████████████████████████████████████████████████ Mot. at 14. As to that
one solution, Apple argues that "[n]o reasonable juror could conclude that the
██████████████████ was the same as the short circuit that Plaintiffs accuse."
<u>Id.</u> at 15. Apple also argues there is no evidence of misappropriation because admittedly
Apple never implemented the accused solution, and "Apple did so ██████████
███████████████████—an entirely different problem from ████████████████
█████████████'" <u>Id.</u>; <u>see also</u> <u>id.</u> at 15-16 (Lamego email suggesting ███
███████████████ is different than what Plaintiffs possessed, <u>i.e.</u>, █████████). Apple also
argues that the solution Plaintiffs did possess was generally known, and Plaintiffs
presented no evidence of efforts to keep it secret given their published patents. <u>Id.</u> at 16-
17.

Plaintiffs respond that the evidence shows they possessed several relevant
solutions, and nothing requires them to prove they possessed "every possible solution."
Opp. at 17. Further, Dalke testified that the solution comprised by the trade secret is not
the simple, known solution Apple claims. <u>Id.</u> Plaintiffs observe that Madisetti provided
testimony that Apple's allegedly different solution is the same as one of Masimo's
claimed solutions, and Apple ignores Madisetti's rebuttal to Warren's testimony. <u>Id.</u>
Further, Plaintiffs argue that communications between engineers at Apple and █████████
show that these engineers ████████████████████. <u>Id.</u> Plaintiffs aver that ample testimony
supports their reasonable efforts to keep L5 secret, and the evidence shows that Apple
misappropriated L5 with respect to the blood-oxygen feature in the Series 6 and 7
watches. Id. at 18. For example, Kiani and Diab testified about the ██████████████
██████████████████████████, and Apple used Lamego's suggestion to ████████████
█████████████████. <u>Id.</u>

The Court finds that the record supports competing inferences concerning whether

---

[4]    If the jury finds for Plaintiffs on misappropriation as to any asserted trade secret and
Apple elects to renew its motion under Rule 50(b), if the issue remains relevant, the Court would like
further briefing on whether a party claiming a trade secret can show that it possessed only part of the
asserted trade secret (e.g., L4 claims ███████████████████████████████████████████████████
██████████████ and Plaintiffs only accuse Apple of using the latter).

L5 is a trade secret (e.g., including whether Plaintiffs possessed it, whether it was generally known, whether it derives independent economic value from being secret, and whether Plaintiffs took reasonable efforts to maintain its secrecy), and whether Apple misappropriated L5. As with L4, these questions turn on witness credibility and several of the issues boil down to a classic battle of the experts (e.g., are ███████████ ███████████████████, did Apple ever implement Plaintiffs' specific solution). Therefore, drawing all inferences in Plaintiffs' favor as the non-moving party, the Court concludes that these questions must go to the jury.

The Court **DENIES** the motion on this ground.[5]

3.    D&D

Apple argues no reasonable jury could find that Plaintiffs possessed any of the D&D secrets, let alone the full scope of them. Mot. at 17. Apple contends that Madisetti's conclusory reference to finding evidence of D1 "in the code" is insufficient to survive JMOL where the code is not in evidence. Id. Apple contends that Madisetti also did not address possession of components 8 and 9 of D10. Id. Further, Apple argues there is no evidence contradicting that the D&D asserted trade secrets were generally known where Madisetti did not conduct any independent research or survey the literature. Apple also asserts no reasonable jury could find wrongful acquisition or disclosure based on Madisetti's testimony. Id. at 18. Apple argues this is especially true where "Madisetti conceded that 'as of today' 'D1, D3, and D10 were not used, ever, in any Apple Watch.'" Id. (quoting 4/12 PM Tr. 98-99; see also 4/19 PM Tr. 63-64, 85-87, 88, 92).

Plaintiffs respond that they presented ample evidence of possession of D1 and D10, and Apple does not contest possession of D3. Opp. at 18 (collecting Diab, Madisetti, Poeze citations). Plaintiffs argue that Madisetti provided testimony concerning ██████████████████████████████████████████ and the ███████████ ███ implemented all steps of D10, including steps 8 and 9. Id. at 19. Plaintiffs argue the presented ample evidence that the D asserted trade secrets were not generally known, and therefore retain independent economic value from being secret. Id. Further, Plaintiffs contend that a reasonable jury could find that Apple misappropriated D1, D3, and D10 because Madisetti testified that Lamego disclosed the entirety of D1 and D3 to Apple. Id. (citing JTX-161, JTX-154). Further, Plaintiffs argue that because Apple used the demodulation asserted trade secrets ██████████████████████████████████ ██████████████████████████ this is sufficient for a jury to find misappropriation. Id. at 20. Plaintiffs also argue that Apple's alleged misappropriation

---

[5]       If the jury finds for Plaintiffs on misappropriation as to any asserted trade secret and Apple elects to renew its motion under Rule 50(b), if the issue remains relevant, the Court would like further briefing on whether a party claiming a trade secret can show that it possessed only part of the asserted trade secret, especially in the context of L5 claiming ██████████████████████ ██.

"benefitted the blood-oxygen feature in Apple's Series 6 and 7 watches" because it helped Apple ███████████████████████████████ Id.

The Court finds that the record supports competing inferences concerning whether D1, D3, and D10 are each a trade secret (e.g., including whether Plaintiffs possessed them, whether they were generally known, whether they derive independent economic value from being secret, and whether Plaintiffs took reasonable efforts to maintain their secrecy), and whether Apple misappropriated the demodulation asserted trade secrets. As with L4 and L5, these questions turn on witness credibility and several of the issues boil down to a classic battle of the experts (e.g., are the solutions generally known, did Apple misappropriate). Therefore, drawing all inferences in Plaintiffs' favor as the non-moving party, the Court concludes that these questions must go to the jury.

The Court **DENIES** the motion on this ground.

4.      VIA

Apple argues that the five minutes that each of Madisetti and Palmatier spent on this alleged trade secret was insufficient to carry Plaintiffs' burden as to possession, whether it was generally known, and whether it had independent economic value from being secret. Mot. at 18-19.

Plaintiffs respond that "Madisetti explained that Masimo understood the VIA of using these [technical] trade secrets to make accurate and reliable sensors." Opp. at 20. Plaintiffs argue that "Apple misappropriated the VIA by using the technical trade secrets to develop the Apple Watch." Id. at 21.

Plaintiffs' VIA trade secret comprises ██████████████████████ ████████████████████████████████████████████ Because the Court has granted judgment as a matter of law as to B1, B3, and B5, it also grants Apple's motion concerning VIA as it relates to the business methods trade secrets.

Turning to the technical trade secrets, the Court finds that this issue is better reserved for a Rule 50(b) motion, depending on whether the jury finds any demodulation and light piping asserted trade secrets to be trade secrets, and whether it finds any misappropriation thereof. That context will help inform what, if anything, is left of VIA and whether the record supports any findings with respect to the existence and misappropriation of VIA.

The Court **GRANTS** the motion as to VIA concerning the business methods asserted trade secrets, and **DENIES** without prejudice the motion as to VIA concerning the demodulation and light piping trade secrets.

D.     Statute of Limitations Defense

Apple argues that it has met its "initial burden to show that purported misappropriation began more than three years before the suit was filed (here, January 9, 2017)." Mot. at 20 (e.g., testimony shows that O'Reilly is alleged to have used secrets in October 2012, and Lamego used secrets by the summer of 2014). Conversely, Apple argues that Plaintiffs have not met their burden to show that the three-year statute of limitations began to run at a later date because "the misappropriation was not 'discovered or by the exercise of reasonable diligence should have been discovered'" before the relevant date. Id. at 20-21. Apple argues Plaintiffs were on inquiry notice before this date because of several examples, including: (1) Plaintiffs' attorneys emailed O'Reilly requesting information from his supposedly trade-secret containing notebooks in 2014 (JTX-4393); (2) Plaintiffs' attorneys wrote to Apple in January 2014 regarding their concerns about Lamego divulging trade secrets in his new employment at Apple (JTX-2937) and Kiani was told Lamego left six months later because Apple asked him to do something competitive to Plaintiffs; and (3) the '052 Patent application, on which Lamego was listed as an inventor, published in March 2016. Id. at 21-22.

Plaintiffs respond that its trade secret misappropriation claim is timely because the three years during which the claim must be brought does not begin to run until there is reason to suspect misappropriation. Opp. at 21. Plaintiffs also argue that the time to bring the claim runs separately for each trade secret, or each group of "related" trade secrets. Id. at 21-22. Thus, Plaintiffs contend "any alleged 'inquiry notice' as to O'Reilly's misappropriation does not trigger the same for Lamego." Id. at 22. Plaintiffs also argue the technical trade secrets are unrelated to each other because they "concern different technologies and address different problems." Id. Plaintiffs argue the evidence shows they did not discover Apple's misappropriation until Kiani saw a Lamego-Apple patent in October 2019. Id. Further, Plaintiffs argue they could not have discovered Apple's misappropriation before 2017 because there was no reason to suspect misappropriation (e.g., no reason to suspect the O'Reilly notebooks contained confidential information or that Apple used it; counsel's letter to Apple was prophylactic), and they could not have learned sufficient information to sue. Id. at 23-24 (e.g., relevant patents published in 2018 and 2019). Plaintiffs aver that Apple bears the burden of proving all aspects of this defense. Id. at 24.

The Court finds that the record supports competing inferences concerning whether Plaintiffs knew or should have known of the alleged misappropriation. How the jury interprets Masimo's warning letter to Apple, Kiani's state of mind from speaking with Dalvi, and whether Kiani did enough with the information he had, etc., are matters for the jury to resolve. Taking all inferences in Plaintiffs' favor as the non-moving party, judgment as a matter of law is not available on this record.

As to burden, as stated with respect to the Jury Instructions, Apple must prove "that the claimed misappropriation of a trade secret occurred before January 9, 2017."

Court's Instruction No. 38. If Apple does so, to benefit from the discovery rule that is written in to the statute to extend the statute of limitation to the benefit of an unsuspecting plaintiff, then Plaintiffs must prove that "before January 9, 2017, they did not discover, nor with reasonable diligence should they have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated at least one of Masimo and Cercacor's Asserted Trade Secrets." <u>Id.</u>

This is true despite Plaintiffs reliance on <u>Samuels v. Mix</u>, 22 Cal. 4th 1, 10-11, 989 P.2d 701 (1999). The CACI Directions for Use state that "[t]his instruction places the burden on the plaintiff to prove that it did not know nor have any reason to suspect the misappropriation earlier than three years before filing. (<u>See</u> Civ. Code, § 3426.6.) This is the rule for the burden of proof under the nonstatutory delayed-discovery rule." The Directions for Use acknowledge <u>Samuels</u>, but distinguish the alternative delayed-discovery language applicable in that context (attorney malpractice, CCP § 340.6) from § 3426.6. They conclude, "No court has construed Civil Code section 3426.6 to transfer the burden of proof on delayed discovery to the defendant, so presumably the burden of proof remains with the plaintiff under the nonstatutory rule." The Court finds the alternative limitations provisions in <u>Samuels</u> distinguishable from § 3426.6 because the alternative limitations period in § 340.6 runs in favor of the defendant, so defendant must prove it to invoke it, whereas the CUTSA limitations period runs in favor of the plaintiff by affording plaintiff an open-ended limitations period, defined with reference to the discovery rule, thereby requiring plaintiff to prove facts supporting that extended time period.

The motion is **DENIED** on this ground.

E.    <u>Unjust Enrichment</u>

Apple argues that Plaintiffs' unjust enrichment calculation fails as a matter of law where Kinrich opined that profits from the series 6 and 7 watches were attributable to only two features, ECG and blood oxygen, resulting in purported unjust enrichment of $3.1 billion. Mot. at 22. Based on this, Apple argues that "Plaintiffs failed to introduce any evidentiary basis on which a reasonable jury could conclude any profits attributable to the ECG or Blood Oxygen features were 'caused by' the alleged misappropriation (let alone all profits attributable to those features that Mr. Kinrich calculated)." <u>Id.</u> (quoting Cal. Civ. Code. § 3426.3(a)).

Further, Apple argues that Kinrich provided no reasonable basis to support the conclusion that "his $3.1B calculation associated with the ECG and Blood Oxygen features could apply to misappropriation of any of B1, B2, B3, B7, or to any combination thereof." <u>Id.</u> at 23. Apple contends that "[t]he fact that Mr. Kinrich suggested that the measure of unjust enrichment could be the same regardless of how many or which alleged secrets are found to be misappropriated, confirms that the numbers he put forth are untethered from any benefit allegedly flowing from the purported secrets

themselves." <u>Id.</u>

Apple argues Kinrich also failed to provide any causal nexus showing that the "███
████████████ that was never used in an actual product" caused the alleged unjust enrichment
in the amount he "offered to the jury." <u>Id.</u> Further, because Kinrich based his calculation
on ECG and blood oxygen, Apple argues he failed to link it in any way to D1, D3, D10
(or VIA as it relates to them), L4/L5, and the business methods trade secrets (or VIA as it
relates to them). <u>Id.</u> at 24-26. Apple argues the calculation also improperly includes
information that was no longer a trade secret at the time of the sales. <u>Id.</u> at 26-27.

Plaintiffs respond that they have "exceeded" their burden on unjust enrichment
based on Kinrich's testimony. Opp. at 24-25. Plaintiffs contend that Kinrich properly
"apportioned" Apple's profits related to the misappropriation by comparing sales of the
Series 6 and 7 watches to the SE, which lacks the blood oxygen and ECG features. <u>Id.</u>
Kinrich then "valued the blood-oxygen and ECG features by determining how much of
the profit difference between Series 6-7 and Series SE was attributable to the
blood-oxygen and ECG features." <u>Id.</u> at 25. Plaintiffs argue this is sufficient to show
causation. <u>Id.</u> Further, although D1, D3, and D1 are ███████████████████, Plaintiffs
argue that Apple benefitted from them nonetheless because it used them to ████████████
████████████████████████████████████ <u>Id.</u> at 26. Plaintiffs argue that disputed issues of fact
concerning the misappropriation and benefit of L5 preclude JMOL as to unjust
enrichment on this asserted trade secret. <u>Id.</u>

The Court finds that Apple's motion on this ground is substantially the same as its
renewed <u>Daubert</u> challenge to Kinrich. Dkt. 1602. Accordingly, the Court's ruling applies
to both.  The Court concludes that, at this stage, Plaintiffs have presented enough
evidence to allow this question to go to the jury. As damages experts do, Kinrich assumed
misappropriation, and he attempted to isolate the difference in profits attributable to the
features he was told are relevant from a technical perspective to the misappropriated trade
secrets. Whether he did enough to isolate those profits (<u>e.g.</u>, by ignoring all other feature
differences between the Series 6 and 7 and SE), or whether Plaintiffs have proved the
misappropriation was a substantial factor in the claimed unjust enrichment is a matter for
the jury to decide. For example, if the jury concludes that Apple did not use some of the
asserted trade secrets and/or certain Apple use provided a negligible benefit in that it
informed minimal aspects of the ███████████████████████████████, it may
conclude that Plaintiffs have not shown causation and therefore may discount testimony
from Plaintiffs' technical witnesses who discussed use, as well as Kinrich's overall
opinion on unjust enrichment. Likewise, the fact that Kinrich did not distinguish between
any of the alleged trade secrets in calculating the benefit to Apple may cause the jury to
distrust his calculation generally. Apple explored these areas on cross-examination and of
course is free to raise them in closing argument.

As stated with respect to the Jury Instructions, the Court will instruct the jury consistent with the Restatement. As the Court has already observed, in that context, "the defendant's sales" that Plaintiffs must prove refer to "an accounting of the defendant's profits on sales attributable to the use of the trade secret." See Restatement (Third) Unfair Competition § 45 cmt. f (Am. Law Inst. 1995). This suggests that Plaintiffs have some threshold burden of showing a link between the proffered sales and the alleged misappropriation. For example, Plaintiffs could not claim sales on all Apple Watch models ever sold without reasonably linking the sales to the asserted trade secrets for which the jury finds misappropriation. Thus, although the Restatement is adopted, the parties may present their respective views on this and still be within the bounds of the Court's instructions (i.e., Plaintiffs can argue they reasonably showed Apple's profits on sales caused by use of the asserted trade secrets by comparing Series 6 and 7 to SE, and Apple can argue Plaintiffs provided no basis to reasonably link use of the asserted trade secrets to Kinrich's global number.

Because the evidence has not closed with respect to damages (i.e., Apple's damages expert will testify), the Court is amenable to considering this issue on a renewed Rule 50(b) motion if necessary.

Accordingly, the Court **DENIES** without prejudice the motion, and **DENIES** the renewed Daubert challenge.

F.    Willfulness and Maliciousness

Apple argues that the question of willful and malicious misappropriation should not go to the jury because Plaintiffs presented no evidence supporting this theory, and the mere hiring of O'Reilly and Lamego cannot demonstrate willful and malicious misappropriation by clear and convincing evidence. Mot. at 27-28.

Plaintiffs assert that they need prove willful and maliciousness by preponderance of the evidence only. Opp. at 27. Plaintiffs argue that the presented sufficient evidence that "Apple acted willfully and with a conscious disregard for Masimo's rights." Id. Plaintiffs' two-paragraph response on this issue does not cite any trial evidence suggesting why this issue should go to the jury.

The Court has ruled already that willfulness and misappropriation under CUTSA must be proven by clear and convincing evidence. The case on which Plaintiffs rely interprets Montana's version of the UTSA in the context of Montana law, which is irrelevant here. "[T]he existence of willful and malicious misappropriation is ordinarily considered a fact that [the finder of fact] must find by clear and convincing evidence. Mattel, Inc. v. MGA Entm't, Inc., 801 F. Supp. 2d 950, 952 (C.D. Cal. 2011).

Based on the trial record, the Court finds there is sufficient evidence giving rise to competing inferences to allow this question to go to the jury. With that said, Plaintiffs

brief was not particularly helpful because it framed the question in terms of the wrong burden of proof. Therefore, the Court is willing to revisit this issue on a renewed Rule 50(b) where both Apple's motion and Plaintiffs' response address the clear and convincing burden of proof, if such a motion becomes necessary.

The motion is **DENIED** without prejudice on this ground.

G.    Inventorship and Ownership Claims

Apple argues that no reasonable jury could find Plaintiffs have established their inventorship claim by clear and convincing evidence as to any of the disputed patents. Mot. at 28.

1.    '754 Patent

Apple argues the claim fails as to the '754 Patent because "there is no written corroboration of Mr. Poeze's inventorship, as his notebook fails to disclose any '754 patent claim;" "Mr. Poeze testified that he did not 'come up with the method' set forth in his notebook, which was instead taught to him by Dr. Lamego;" and "there is no evidence that Mr. Poeze collaborated with Dr. Lamego while Dr. Lamego was working on the ideas claimed in the '754 patent at Apple." Id. Apple asks the Court to take Mr. Poeze "at his word that he does not 'believe [he] invented' the subject matter claimed in the '754 patent." Id. (quoting 4/7 AM Tr. 116). As to Lamego, Apple argues it presented evidence that the work leading to the '754 Patent was done at Apple, and Plaintiffs presented no contrary evidence. Id. at 28-29.[6]

Plaintiffs respond that "Poeze testified that he and Lamego created subject matter claimed in the demodulation patent when they created the algorithm for the Pronto-7 product at Cercacor," and his laboratory notebooks and code confirm this. Opp. at 29 (citing JTX-1262, JTX-831, JTX-832). Plaintiffs also argue that Madisetti's testimony supports the conclusion that Lamego's inventive work occurred at Cercacor. Id.

The Court finds the challenges presented by Apple go to weight. The trial record contains sufficient competing evidence that would allow a jury to reach multiple inferences concerning, e.g., what Poeze's notebooks show, when Lamego completed the inventive work, which expert has the correct view of the evidence, etc. The jury will have to resolve these factual disputes before resolving the inventorship claim as to the '754 Patent (as to both co-inventorship (Poeze) and co-ownership (Lamego)).

The motion is **DENIED** on this ground.

_____

[6]    Apple argues that Plaintiffs' failure of proof on this claim also means no reasonable jury could find that Plaintiffs possessed ▮ since the work was done independently at Apple. Id. at 29 n.13.

2.      '095 and '390 Patents

Apple argues the testimony "that Mr. Diab contributed to the prior art" is "insufficient to make him a joint inventor." Mot. at 29. Apple contends there is no evidence "that Mr. Diab collaborated with the named inventors while they worked on the ideas claimed in the '095 and '390 patents at Apple." Id. As to Lamego, Apple argues it presented evidence that the work leading to the '095 and '390 Patents was done at Apple, and Plaintiffs presented no contrary evidence. Id. at 29.

Plaintiffs respond that "Diab testified that he created the analog front end subject matter at Masimo," and Madisetti's testimony supports the conclusion that "Lamego learned of this subject matter and made his contribution to the '095 and '390 Patents while employed by Masimo and Cercacor." Opp. at 27-28 (citing JTX-1267, 1268, 1269, 1206, 1239, 1241). Plaintiffs argue that Hotelling has no idea where or when Lamego's inventive work occurred, so his testimony is not dispositive. Id. at 28.

As with the '754 Patent, the Court finds the trial record contains sufficient competing evidence that would allow a jury to reach multiple inferences concerning, e.g., the nature of Diab's inventive contribution (if any), when Lamego completed the inventive work, which expert has the correct view of the evidence, etc. The jury will have to resolve these factual disputes before resolving the inventorship claim as to the '095 and '390 Patents (as to both co-inventorship (Diab) and co-ownership (Lamego)).

The motion is **DENIED** on this ground.

3.      '052 and '670 Patents

Apple argues that "prior art allegedly disclosing certain claim limitations" is "insufficient as a matter of law to render Mr. Diab a co-inventor." Id. at 30. Further, Apple observes that "the identified prior art does not disclose any inventive claim limitation, such as reflective layers or reflective structures separate from the housing." Id. Apple contends that "Plaintiffs also offered no evidence corroborating Mr. Diab's testimony that he taught the idea of reflectivity to Dr. Lamego." Id. Apple asserts there is no evidence rebutting Ness's testimony that the inventors conceived of the claimed inventions while at Apple. Id. As to Lamego, although he "contributed the idea of using 'reflectivity on the back of the Apple Watch,'" Apple argues "the other named inventors contributed to the novel idea of depositing reflective coating at particular locations on the Watch." Id.

Plaintiffs respond that "Lamego was exposed to use of reflectors and reflective surfaces in sensors to increase the signal while employed by Masimo and Cercacor." Opp. at 28. Plaintiffs contend that "Ness further testified that Lamego alone contributed the 'initial idea to use reflectivity on the back of the Apple Watch,'" which happened immediately after he joined Apple. Id. Further, Madisetti offered testimony concerning

why Lamego learned the relevant concepts while working at Masimo/Cercacor. Id. at 29.

As with the other patents, the Court finds the trial record contains sufficient competing evidence that would allow a jury to reach multiple inferences concerning, e.g., the nature of Diab's inventive contribution (if any), when Lamego completed the inventive work, which expert has the correct view of the evidence, etc. The jury will have to resolve these factual disputes before resolving the inventorship claim as to the '052 and '670 Patents (as to both co-inventorship (Diab) and co-ownership (Lamego)).

The motion is **DENIED** on this ground.

## III.   Plaintiffs' Rule 50(a) Motion

Plaintiffs move the Court for judgment as a matter of law "on all defenses and claims." See Dkt. 1656. Apple filed a response. See Dkt. 1664, 1705 (sealed). For the reasons stated below, the Court **DENIES** the motion.

### A.   Apple's Statute of Limitations Defense

Plaintiffs argue that, "[t]o prevail on its statute-of-limitations defense, Apple needed to present evidence that Masimo discovered, or through exercise of reasonable diligence should have discovered, Apple's misappropriation before January 9, 2017." Id. Plaintiffs argue the evidence shows that they did not learn of the misappropriation until October 2019. Id. at 2. Plaintiffs contend that "Apple has presented no evidence that contradicts Kiani's testimony," and none of the testimony concerning the '052 Patent, which does not contain any trade secrets, shows that Masimo was on inquiry notice. Id. at 3. Further, because Lamego and O'Reilly were required to maintain the confidentiality of Plaintiffs' information, and they assured Masimo they were doing so, this disuaded Masimo from having any suspicion. Id. at 3-5. Thus, Plaintiffs argue that "no reasonable jury could conclude that Masimo should have suspected misappropriation occurred before January 9, 2017." Id. at 6.

Apple responds that Plaintiffs have not proven that this action was timely filed. Opp. at 2-3. Apple argues that "Plaintiffs provide no explanation why Mr. Kiani's supposed individual knowledge of Apple's purported misappropriation is co-extensive with the knowledge of Plaintiffs as corporate entities," and "Plaintiffs presented no evidence explaining why others at Masimo and Cercacor should not have discovered the purported misappropriation at an earlier date." Id. at 3.

Plaintiffs' motion fails because they misstate the burden of proof. See, e.g., Mot. at 4 ("Apple presented no evidence showing that it was unreasonable for Masimo to believe the assurances that Lamego would not divulge Masimo's information, or that he would quit if Apple asked him to work on projects competitive to Masimo."). As already determined in the context of Jury Instructions, "Apple has the burden of proof on this

defense by a preponderance of the evidence to show that the claimed misappropriation of a trade secret occurred before January 9, 2017 and is therefore time barred." See Court's Instruction No. 5. If Apple carries its burden, then Plaintiffs must "prove by a preponderance of the evidence that, before January 9, 2017, they did not discover, nor with reasonable diligence should have discovered, facts that would have caused a reasonable person to suspect that Apple had misappropriated at least one of the Asserted Trade Secrets" to show "the lawsuit is not time barred." Id. Because Plaintiffs' request for judgment as a matter of law on Apple's statute of limitations defense is premised on an incorrect legal theory, it is denied.

Further, for the reasons stated above with respect to Apple's motion for JMOL on its statute of limitations defense, the motion is denied for the additional reason that the evidence could support competing inferences and a reasonable jury could find for either Apple or Plaintiffs. Thus, this defense must go to the jury.

The Motion is **DENIED** on this ground.

B.      Apple's Unclean Hands Defense and Other Defenses

Plaintiffs argue that, although Apple reserved the right to present an unclean hands defense, it presented no evidence in support of the defense. Mot. at 6. Plaintiffs also seek JMOL on the other defenses Apple maintained in the Final Pretrial Order, i.e., "laches, statute of limitations, waiver, failure to mitigate, unclean hands, and readily ascertainable." Id. at 7.

Apple responds that Plaintiffs are not entitled to JMOL on any of Apple's equitable affirmative defenses as those issues will not be submitted to the jury. Opp. at 4 (citing Dkt. 1483 at 15 (FPTO)). Apple argues that other rulings have either mooted the issues Plaintiffs now raise, or there is nothing further for Apple to do because it has preserved other issues for appeal. Id. at 5.

The Court rules that Plaintiffs motion fails on this ground. As Plaintiffs observe, Apple "represented off the record to the Court in preparing the jury instructions that it would no longer advance such defense." Mot. At 6.  Accordingly, the motion is moot on this ground. Turning to Apple's other defenses, for the reasons stated above, the motion is denied as to statute of limitations. The motion is moot as to the remaining defenses as none has been presented at trial.[7]

The Motion is **DENIED** as to statute of limitations and **DENIED AS MOOT** on

---

[7]      Although Apple did not present its readily ascertainable defense at trial based on the Court's prior ruling, it has preserved its arguments on this defense for appellate purposes. See, e.g., Dkt. 1625. Through motion practice and pretrial argument, Apple has also preserved its position concerning whether the confidentiality provisions in the Employee Confidentiality Agreements are void.

the other grounds.

C.    <u>Plaintiffs' Claims</u>

Plaintiffs seek JMOL on their own claims, asserting that no reasonable jury could
find against them on any of these matters. <u>See generally</u> Mot. at 7-20 (seeking JMOL that
each asserted trade secret is a trade secret as a matter of law; that Apple misappropriated
each asserted trade secret by acquiring it through improper means and because Apple is
vicariously liable for Lamego and O'Reilly's conduct; that the misappropriation was
willful and malicious; that Masimo is a co-owner of the five disputed patents; that Diab
should be added to the relevant patents; and that Poeze should be added to the relevant
patent).

Apple responds that Plaintiffs are not entitled to judgment as a matter of law on
their trade secret misappropriation claim, including whether the asserted trade secrets
qualify as trade secrets, and whether they were misappropriated, or on their patent
ownership and inventorship claims. Apple cross-references the arguments presented in its
motion on the same issues. <u>See generally</u> Opp. at 6-18.

<u>First</u>, to the extent the Court has granted Apple's motion on the same ground,
Plaintiffs' motion is **DENIED AS MOOT** since those matters are no longer in the case
and Plaintiffs cannot prevail on them (<u>e.g.</u>, business methods trade secrets).

<u>Second</u>, to the extent the Court has denied Apple's motion for the reason that the
record supports competing inferences on various grounds and therefore those issues must
be resolved by the jury, Plaintiffs' motion is **DENIED** for the same reasons.

<u>Third</u>, to the extent Plaintiffs' arguments contradict prior rulings provided by the
Court, the motion is denied. This includes Plaintiffs' assertion that Apple is vicariously
liable for Lamego and O'Reilly's conduct. As discussed and resolved in the context of
Jury Instructions,"[t]o prove that Apple had the required state of mind, Masimo and
Cercacor must prove that before the alleged use, another person at Apple knew or had
reason to know that Apple had improperly obtained an Asserted Trade Secret from
Masimo or Cercacor through either Dr. Lamego or Dr. O'Reilly." <u>See</u> Court's Instruction
Nos. 30, 31, 32. As the Court stated in that context, "the state of mind language in
Instruction Nos. 31 and 32 should remain in these instructions because, as stated, trade
secret misappropriation is not a strict liability tort. Rather, 'it is not "appropriate to direct
a jury to impute an agent's knowledge of a secret to the principal"'—at least where the
agent 'did not inform other employees of plaintiff's concept.'" <u>Id.</u> (citing <u>Carr v.
AutoNation Inc.</u>, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018); <u>Cisco Systems, Inc. v.
Chung</u>, 2023 WL 2622155, at *12 (N.D. Cal. Mar. 22, 2023) (trade secret vicarious
liability extends to disclosure/use, but not the intent requirement)).

For the reasons stated, Plaintiffs' motion is **DENIED**.

IV.   Conclusion

The Court **grants-in-part and denies-in-part** without prejudice Apple's motion for judgment as a matter of law. Dkt. 1659.[8] The Court **denies** Plaintiffs' motion for judgment as a matter of law. Dkt. 1656.

In the tentative ruling, the Court highlighted the portions of the written order it intended to seal. Plaintiffs submitted additional proposed redactions on April 28, 2023. The Court has reviewed those proposed redactions but finds that they reference general concepts and need not be sealed.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | eva | |

---

[8]      Apple did not file a docket entry styled as a "motion" such that it requires a ruling for docketing purposes, so for reference the Court cites to the publicly filed version of Apple's brief.