Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation

Plaintiffs,

v.

APPLE INC., a California corporation

Defendant.

Case No. 8:20-cv-00048-JVS-JDE

**PLAINTIFFS' MOTION TO RECONSIDER AND VACATE JUDGMENT AS A MATTER OF LAW ON BUSINESS TRADE SECRET B2**

Date: June 12*, 2023
Time: 1:30
Courtroom 10C

Hon. James V. Selna

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..... 1

II. LEGAL STANDARDS ..... 1

A. Rule 50(a) ..... 1

B. Procedural Considerations Regarding Correction of Interlocutory Orders ..... 2

1. Inherent Authority ..... 2

2. Reconsideration ..... 2

3. Rule 59(e) ..... 2

4. Rule 60(b) ..... 2

5. Local Rule 7-18 ..... 3

III. ARGUMENT ..... 3

A. The Order Rewrote Trade Secret B2 ..... 3

B. Trade Secrets Are Interpreted By The Jury, Not The Court ..... 5

C. No Evidence Supports The Order's Rewriting of Trade Secret B2 ..... 6

D. No Evidence Suggests That Trade Secret B2 Was Generally Known ..... 10

1. Kiani's Testimony Does Not Suggest B2 Was Generally Known ..... 10

2. Kivetz's Testimony Does Not Suggest B2 Was Generally Known ..... 12

3. Palmatier's Testimony Does Not Suggest B2 Was Generally Known ..... 13

4. JTX-2761 Does Not Suggest B2 Was Generally Known ..... 14

IV. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page No(s).**

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011) .......... 2

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) .......... 2

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) .......... 2

*EnerTrode, Inc. v. Gen. Capacitor Co. Ltd.*,
2019 WL 1715170 (N.D. Cal. Apr. 17, 2019) .......... *passim*

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (2020) .......... 5, 6, 8

*Krechman v. Cnty. Of Riverside*,
723 F.3d 1104 (9th Cir. 2013) .......... 1

*Nicha Leaser v. Prime Ascot, L.P.*,
2022 WL 2160386 (E.D. Cal. June 13, 2022) .......... 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .......... 5

*Ochoa v. Cnty. Of Kern*,
2023 WL 2143466 (E.D. Cal. Feb. 21, 2023) .......... 1, 12

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000) .......... *passim*

*Sch. Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) .......... 2

*Tawfilis v. Allergan, Inc.*,
2015 WL 9982762 (C.D. Cal. Dec. 14, 2015) .......... 3

*Waterbury v. Perez*,
2008 WL 4367581 (E.D. Cal. Sep. 22, 2008) .......... 3

## OTHER AUTHORITIES

Fed. R. Civ. P. 50 .......... 1, 6

Federal Rule of Civil Procedure 59 .......... 2, 3

Federal Rule 60 .......... 2, 3

Local Rule 7-18 .......... 2, 3

# I. INTRODUCTION

Masimo moves to vacate the portion of the Order Granting-In-Part and Denying-In-Part Apple's Rule 50(a) Motion and Denying Plaintiffs' Rule 50(a) Motion (the "Order") that found Masimo's trade secret B2 was "generally known." *See* Dkts. 1723 & 1724, pp. 5-7. Masimo respectfully submits that the Order's findings regarding B2 were based on manifest errors of law and fact. The Order erred by redefining phrases in the trade secret description to have overly simplistic meanings and then finding those simplistic meanings—not the trade secret itself—generally known. Testimony from ***both parties'*** witnesses establishes that the phrases in the description of B2 have specific meanings that refute the Order's re-definitions.

Regardless of how the phrases in the B2 description are defined, the Order's analysis regarding B2 cited ***no evidence*** specific to this trade secret. The evidence cited regarding B1 did not show that B2 was generally known. Moreover, the Order did not address evidence, including from Apple's expert, establishing B2 was ***not*** generally known. The Court should remedy this manifest injustice by vacating the Order as to B2.

# II. LEGAL STANDARDS

## A. Rule 50(a)

The Court may grant judgment as a matter of law only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *Krechman v. Cnty. Of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013). The Court must draw all reasonable inferences in Masimo's favor and may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000); *Krechman*, 723 F.3d at 1110-11. The Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. "The court gives credence to evidence in favor of the moving party only if it is 'uncontradicted and unimpeached' and 'comes from disinterested witnesses.'" *Ochoa v. Cnty. Of Kern*, 2023 WL 2143466, at *2 (E.D. Cal. Feb. 21, 2023) (quoting *Reeves*, 530 U.S. at 151.).

**B. Procedural Considerations Regarding Correction of Interlocutory Orders**

Masimo brings this Motion pursuant to the Court's inherent authority to reconsider interlocutory orders. Masimo also seeks reconsideration and relief under Federal Rules 59(e), 60(b), and Local Rule 7-18.

**1. Inherent Authority**

A district court has inherent authority to modify interlocutory orders before entry of final judgment. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." (italics omitted)); Dkt. 1326, p. 2.

**2. Reconsideration**

A district court may reconsider a ruling "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). *Sch. Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Local Rule 7-18 also permits motions for reconsideration.

**3. Rule 59(e)**

Because "Rule 59(e) does not list specific grounds for a motion to amend or alter," district courts have "considerable discretion in granting or denying the motion." *Nicha Leaser v. Prime Ascot, L.P.*, 2022 WL 2160386, at *6 (E.D. Cal. June 13, 2022). The Ninth Circuit has held that a Rule 59(e) motion should be granted if "necessary to correct manifest errors of law or fact upon which the judgment rests" or "to prevent manifest injustice." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101 (9th Cir. 2011).

**4. Rule 60(b)**

A court may grant relief from a judgment or order for one of six reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct of the opposing party, (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason

that justifies relief. Fed. R. Civ. P. 60(b). A court may use its discretion to reverse a prior decision under this Rule if the party moving for reconsideration sets forth "facts or law of a strongly convincing nature." *Waterbury v. Perez*, 2008 WL 4367581 (E.D. Cal. Sep. 22, 2008).

**5. Local Rule 7-18**

"Courts in this district have interpreted Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b)." *Tawfilis v. Allergan, Inc.*, 2015 WL 9982762, at *1 (C.D. Cal. Dec. 14, 2015). Local Rule 7-18 expressly confirms that reconsideration is appropriate when a party makes "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

## III. ARGUMENT

The Order found trade secret B2 was "generally known." The Order reached this conclusion based on four errors. First, the Order, tracking Apple's characterization, rewrote the description of B2 by replacing two phrases with overly simplistic concepts. These phrases are [REDACTED] and [REDACTED] Second, the Order ignored that any disputes regarding the scope of meaning of the trade secrets are resolved by the jury, not the Court. Third, the Order failed to consider the evidence in the record regarding the proper meaning of the two phrases used in the description of this trade secret. Fourth, the Order relied on evidence that addressed only the description of trade secret B1, and ignored evidence regarding the additional descriptions set forth in B2, to find the simplified concept, not Masimo's trade secret B2, was "generally known."

### A. The Order Rewrote Trade Secret B2

The Order held that "[a] comparison of each asserted trade secret with the evidence demonstrates that these concepts were generally known." Order, p. 5. The Order included a chart in which the left column recited the description of B2 (as in the juror notebook), including [REDACTED] The right column

removed these concepts and replaced them with different, and more general, concepts. The chart provided, in relevant part:

| Trade Secret | Evidence/Ruling |
|---|---|
| **B2.** [redacted] | B2 describes collecting [i] ***more patient data*** to [ii] ***better care for a patient***. |

*Id.*, p.6 (numbering and emphasis added).

The chart in the Order thereby redefined [redacted] as merely "more patient data." *Id.* The chart also redefined [redacted] as merely "better care for a patient." *Id.* The Order cited no evidence as supporting either re-definition. *Id.* Apparently based on this re-interpretation of B2, the right column of the chart held: "For the same reasons described with respect to B1, B2 is not a trade secret because it is generally known." *Id.* After the chart, the Order held more broadly:

> [A] reasonable jury could not return a verdict for Plaintiffs concerning whether the business methods alleged trade secrets were generally known. Neither Kiani nor Palmatier's testimony on this point can change the asserted trade secrets, and it does not change the outcome.

Order, p. 5. The Order then concluded:

> The Motion is **GRANTED** on this point because no reasonable juror could find for Plaintiffs regarding whether the alleged "B" category trade secrets were generally known.

*Id.*, p. 8.

As discussed in more detail below, the record supports neither the Order's simplification of B2, nor the Order's analysis. The Court was required to draw all reasonable inferences in Masimo's favor and could not make credibility determinations

or weigh the evidence. *Reeves*, 530 U.S. at 150.

**B. Trade Secrets Are Interpreted By The Jury, Not The Court**

The Order initially erred as a matter of law by rewriting phrases in Masimo's trade secret descriptions. Trade secrets are not like patent claims. In patent cases, disputes about the scope or meaning of the claims are resolved by the Court as a matter of law. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008). In contrast, disputes over the meaning of trade secrets are resolved by the jury as a question of fact based on the evidence presented at trial. As Apple emphatically recognized, "***the factual meaning of any particular trade secret is a matter for fact witnesses***." Dkt. 1556 at 2:19-20 (all emphasis in original).

For example, in *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (2020), the Ninth Circuit vacated summary judgment that the plaintiff failed to describe its trade secrets with "sufficient particularity." *Id.* at 659. The Ninth Circuit cited testimony from the plaintiff's General Manager, who "expanded upon the initial definition" that the plaintiff had provided and "described specific features" of the plaintiff's computer system as trade secrets, although these specific features were not expressly listed in the plaintiff's initial definition. *Id.* at 658. Relying on the General Manager's testimony about the scope of the asserted trade secrets, the Ninth Circuit held "***a jury properly instructed can make the determination of what trade secrets exist***, before addressing other elements of the claim." *Id.* at 660 (emphasis added). In other words, the scope and meaning of a trade secret is based on the factual record, and not dictated merely by a description trying to capture that trade secret in words.

The Northern District similarly considered a case where "[d]efining Plaintiffs' trade secret was a heavily disputed issue at trial." *EnerTrode, Inc. v. Gen. Capacitor Co. Ltd.*, 2019 WL 1715170, at *2 (N.D. Cal. Apr. 17, 2019). The court held that the parties "may 'argue the weight of the evidence' to the jury ***and dispute the scope of the trade secret*** … ." *Id.* (emphasis added). The court observed that "the parties submitted conflicting evidence about the scope of Plaintiffs' trade secret," and this raised "***a***

***question of fact to be decided by the jury***." *Id.* at *3 (emphasis added). The court found that, "given the totality of the evidence introduced at trial, a reasonable jury could have determined that Plaintiffs' trade secret [had the scope advocated by plaintiff and was protectable]." *Id.*; *see also EnerTrode*, Dkt. 346 at 60-64 (proposed instructions and supporting argument).

These authorities are consistent with the Jury Instruction in this case that "non-lawyer witnesses, such as an engineer, may testify about the Asserted Trade Secret's scope and meaning … and other related facts." Dkt. 1715 at 27:14-18 (Instruction 20).

The Order erred by substituting the broad generic concept of "more patient data" for [REDACTED] in the description of trade secret B2. Order, p. 8. Likewise, the Order erroneously substituted "better care for a patient" in place of [REDACTED] *Id.* The Court also improperly discounted Kiani's testimony explaining this trade secret by characterizing his testimony as trying to "change the asserted trade secrets" instead of explaining it. Order, p. 5 The jury should have resolved any dispute about the scope or meaning of the trade secrets. *See EnerTrode*, 2019 WL 1715170, at *2-3; *InteliClear*, 978 F.3d at 659-60. Moreover, on Apple's Rule 50(a) motion, all reasonable inferences should have been drawn in Masimo's favor without making credibility determinations or weighing the evidence. *Reeves*, 530 U.S. at 150.

Usurping the jury's role in evaluating the scope of the trade secrets and applying the evidence was manifestly unjust. The only evidence presented to the jury regarding the meaning of these terms in the description of trade secret B2 refuted the Order's simplistic and unsupported substitutions.

**C. <u>No Evidence Supports The Order's Rewriting of Trade Secret B2</u>**

The Order did not discuss the evidence in the record regarding the meaning of the phrases the Order deleted. Evidence from both parties' witnesses shows that [REDACTED] refer to unconventional approaches to medicine in which [REDACTED]

As explained by Kiani, The jury could have reasonably adopted such an understanding of based on the trial record.

For example, Kiani testified on cross-examination See Trial Tr., Day 3, vol. I, at 32:10-38:6. Apple asked Kiani about the long history of doctors taking the temperature of patients. Kiani explained that merely taking the temperature of many patients was not collecting the type of data necessary to See *id.* at 33:11-34:10. Kiani specifically explained the problem with the conventional 98.6 °F standard for body temperature. *Id.* at 34:18-35:14. He explained that the 98.6 °F standard resulted from compiling data from many different people, but it is "just one number that's supposed to describe every human being[.]" *Id.* at 34:21-25. *Id.* at 35:10-14.

Kiani further explained that, *Id.* at 34:4-7 (emphases added). He continued to explain that,

[redacted] *Id.* at 34:8-10. Accordingly, Kiani testified that the terms [redacted] *See id.* Although the words [redacted] are not expressly recited in the description of B2 provided to the jury, Kiani testified that "[i]t's implied in what we're saying." *Id.* at 35:20-22. On later cross-examination, Kiani further explained [redacted] *Id.* at 56:16-18.

The Order appeared to disregard Kiani's testimony as somehow trying to "change the asserted trade secrets[.]" Order, p. 5. Kiani was not changing anything.[1] He was explaining to the lay jury what certain trade secret terms mean.[2] This is consistent with the Court's jury instruction that "non-lawyer witnesses, such as an engineer, may testify about the Asserted Trade Secret's scope and meaning … and other related facts." Dkt. 1715 at 27:14-18 (Instruction 20). Indeed, Apple criticized other Masimo's witnesses for ***not*** explaining the "scope and meaning" of the trade secrets. *See, e.g.*, Dkt. 1556-1 at 1-2, 8-9, 14-15; Trial Tr. Day 14, vol. II at 24:6-13. More importantly, this is precisely the type of explanation that the jury should consider in resolving any factual dispute regarding the trade secret under controlling Ninth Circuit precedent. *See EnerTrode*, 2019 WL 1715170, at *2-3; *InteliClear*, 978 F.3d at 659-60.

Apple's own witness, O'Reilly, admitted that he too has a similar understanding of the meaning of [redacted] On direct examination, O'Reilly explained that [redacted]

---

[1] Nor is there any accusation Kiani created his explanation after seeing O'Reilly's notebooks. Kiani explained during his deposition, before Apple produced the notebooks, that the terms in B2 encompassed the same features Kiani described at trial. Ex. A (Kiani Depo.) at 310:8-316:15; *see also id.* at 311:14-15 [redacted]), 314:12 [redacted]"), 315:24-25 [redacted]), 316:3-4 [redacted]").

[2] This is setting aside the issue of whether it is appropriate to characterize as "the asserted trade secret" the language that was used in a Section 2019.210 disclosure to help define the scope of discovery.

Trial Tr., Day 9, vol. II, at 11:16-18. O'Reilly further explained that Id. at 11:19-20. Apple's counsel also asked him Id. (emphases added).

Kiani and O'Reilly's descriptions of B2 are also reflected in contemporaneous documents evidencing Masimo's development of this trade secret and Apple's misappropriation. For example, Palmatier carefully reviewed with the jury an O'Reilly notebook he used at Masimo and matched it to the language of B2. Trial Tr. Day 6, vol. II at 43:9-46:15; *see* PDX3-37 to PDX3-39. Palmatier explained that, as the notebook recited, Trial Tr. Day 6, vol. II at 44:10-18; *see also* PDX3-38. Palmatier explained how O'Reilly's drawing on a whiteboard during his Apple interview matched Trial Tr. Day 6, vol. II at 46:16-49:9; *see also* PDX3-42 to PDX3-43. Apple found O'Reilly's white board drawing so remarkable that Apple took a picture and circulated it via email after O'Reilly's interview. *See* JTX507; Trial Tr. Day 6, vol. II at 46:16-47:19.

Masimo also presented documentary evidence that O'Reilly saw JTX-502 at -644. In this same email thread, Perica and O'Reilly discussed Id. at -643. Apple offered no evidence disputing the meaning of the terms

A reasonable jury could have accepted the testimony of Kiani and O'Reilly (and the documentary evidence) that B2 requires more than merely "collecting more patient

data" to "better care for a patient." For example, the jury could have reasonably interpreted trade secret B2, and the [REDACTED] This view of B2, which is supported by Kiani and O'Reilly's testimony, is manifestly different from the Order's simplistic and erroneous notion of merely collecting "more patient data" to provide "better care."

**D. <u>No Evidence Suggests That Trade Secret B2 Was Generally Known</u>**

The Order held: "For the same reasons described with respect to B1, B2 is not a trade secret because it is generally known." Order, p. 6 (chart). None of the evidence that the Order cited for B1 purports to address the additional information added in B2. Specifically, the Order cited three pieces of evidence in analyzing B1: (1) testimony from Kiani, (2) testimony from Apple's expert, Kivetz, and (3) testimony from Masimo's expert, Palmatier. *See id.* The Order's characterization of each piece of evidence is limited to the information in B1. *See id.* Such assertions fail to suggest, much less establish as a matter of law, that B2 was generally known. The Order also cited to JTX-2761 in analyzing B7. *Id.*, p. 7. As discussed below, the cited evidence, individually and collectively, does not address the additional aspects of B2, much less disclose those concepts as part of a strategy involving the products described in B1.

**1. <u>Kiani's Testimony Does Not Suggest B2 Was Generally Known</u>**

The Order asserts: "Kiani conceded on cross-examination that B1 was captured by longstanding healthcare practices and products, including thermometers and scales that are marketed to consumers and also approved for clinical use." Order, p. 6 (chart) (citing 4/5 PM Tr. 97:8-22). The Order does not suggest this testimony concerned the additional descriptions in B2, much less conclusively establishes B2 was generally known. The testimony is set forth below (with additional lines for context):

Q And, of course, doctors and people at home have been taking their temperature forever; right?

A Correct.

Q And you're not here to say you own the idea of someone taking their temperature, whether it's at home or at a doctor's office or anywhere else; right?

A That's correct.

Q Okay. And there's other types of physiological parameters that have been done for a very long time. Another example would be getting on a scale to see your weight. That's a physiological parameter. Am I right, sir?

A Yes, I think so.

Q And there's others as well. Is that fair?

A Yes, like maybe blood pressure.

Q Blood pressure is another one. And there's been many companies that have developed blood pressure devices of a whole variety of shapes and sizes for decades and decades; right?

A For decades, yes.

Q Same thing with scales?

A Yes.

Q Same thing with thermometers; right?

A Yes.

Trial Tr., Day 2, vol. II, at 97:1-22. The Order cited no other testimony from Kiani.

This testimony does not address all aspects of B1, such as [REDACTED] Nor does it address the ***combination*** of all aspects of B1.

Regardless, this testimony says nothing about B2's additional aspects of [REDACTED] Under any interpretation of what that terminology means, the cited testimony does not

require that a reasonable jury find B2 was "generally known."

2. **Kivetz's Testimony Does Not Suggest B2 Was Generally Known**

The Order asserts that Apple's expert, Kivetz, "testified that Kiani's description of B1 describes 'exactly the fourth principle of leveraging synergies for network effects.'" Order, p. 6 (chart) (citing 4/18 PM Tr. 18-19). This assertion also purports to address only B1 and is insufficient to establish that the additional information in B2 was generally known. In the cited testimony, [REDACTED] Trial Tr., Day 10, vol. II, at 18:18-22. However, Kivetz did not present any such books or articles, and he did not present any class syllabus or lecture notes corroborating his allegedly teaching [REDACTED]. *See id.* at 18-19. Kivetz did not even address all aspects of B1, such as by identifying a specific product that he asserts was [REDACTED] *See id.*

He also offered no testimony about allegedly [REDACTED] Again, under any interpretation of what those terms mean, the cited testimony does not suggest the additional information in B2 was "generally known." The cited testimony certainly does not ***require*** that a reasonable jury conclude B2 was "generally known." *See Reeves*, 530 U.S. at 151 (courts "must disregard all evidence favorable to the moving party that the jury is not required to believe"); *Ochoa*, 2023 WL 2143466, at *2 ("The court gives credence to evidence in favor of the moving party only if it is uncontradicted and unimpeached and comes from disinterested witnesses.").

The Order further failed to address the evidence that Kivetz ran two Google searches on November 12, 2022, for terms in the juror notebook description of B2.

Kivetz searched for the term [REDACTED] JTX-3555; JTX-3556. Both searches returned ***zero results*** because the search terms "did not match any documents." JTX-3555; JTX-3556; *see also* Trial Tr., Day 10, vol. II, at 52:19-55:20 (Kivetz initially denying any recollection of the searches and eventually conceding that he ran them and specifically cited them in his expert report).

A reasonable jury could conclude that [REDACTED] is not "generally known" because Google returned no documents. A reasonable jury could further conclude that the concept of using [REDACTED] in connection with the strategy described in B1 was not generally known in 2014 because the term returned zero Google hits nearly eight years later. A reasonable jury could even disbelieve the entirety of Kivetz's testimony based on his alleged failure to remember running the damning searches. *See* Dkt. 1715, pp. 21-22 (Jury Instruction No. 15).

**3. <u>Palmatier's Testimony Does Not Suggest B2 Was Generally Known</u>**

Finally, the Order asserts that, "[e]ven Palmatier conceded (and Plaintiffs do not dispute) that every constituent part of B1 is generally known." Order, p.7 (chart) (citing 4/12 AM Tr. 34, 37). As with the other cited evidence, this assertion is limited to the information in B1 and is insufficient to establish that the additional information in B2 was generally known.

In the cited testimony, Masimo's expert, Palmatier agreed that, "[i]f you could take every word out of the trade secret, I'm sure we can find that word, every word, in different locations." Trial Tr., Day 6, vol. I, at 34:7-9. But he further explained that B1, like all trade secrets, "has to be evaluated as a whole" and "[i]t's got to be done as an aggregate, and that's how I analyzed it." *Id.* at 34:6-10; *id.* at 37:3-5 ("As we discussed earlier, it's the whole language, and you have to evaluate as an aggregate."). This was consistent with the Court's Jury Instructions that even if "all of the components of an Asserted Trade Secret were generally known" it may still be a trade secret if "the Asserted Trade Secret as a whole was entitled to legal protection." *See* Dkt. 1715, at

33:4-10 (Jury Instruction No. 24) ("Each Asserted Trade Secret must be analyzed as a whole.").

The Order identifies no testimony from Palmatier conceding that each aspect of B2, including [REDACTED] was individually known. Nor does the Order cite any testimony from Palmatier suggesting that B2 "as a whole" was generally known.

Thus, the cited testimony, particularly in light of other evidence elicited during trial, fails to establish that a reasonable jury would have to find that B2 was "generally known."

**4. <u>JTX-2761 Does Not Suggest B2 Was Generally Known</u>**

The Order's analysis of B2 did cite any other evidence. The analysis of B7 cited JTX-2761, stating that "the Masimo press release discussed at trial provides knowledge that Masimo was pursuing these strategies, which were themselves also generally known. <u>See</u> JTX-2761." Order, p.7 (chart). Exhibit 2761 is a 2012 press release for Masimo's iSpO2 product, a pulse oximeter that uses the iPhone as a display. *See* JTX-2761. The press release does not discuss the use of iSpO2 to [REDACTED] To the extent the Order relied on JTX-2761 to support its "generally known" analysis of B2, that reasoning would be flawed for multiple reasons.

First, the Order improperly re-defined Masimo's description of B2 and then concluded that this re-definition, not Masimo's asserted trade secret, was generally known. For the same reasons set forth above, any comparison between the disclosure in JTX-2761 and the Order's simplified re-definition of B2 would be insufficient to establish B2 was generally known. *See id.*

Second, other than citing to JTX-2761, the Order identifies no evidence or testimony establishing that JTX-2761 disclosed B2. Masimo's expert Palmatier explained that he could not tell Masimo's strategy from this press release. Trial Tr.,

Day 6, vol. II at 118:7-119:4; *see also* Trial Tr., Day 7, vol. I at 67:15-16 ("When you read one press release, it does not disclose a firm's business plans and marketing strategies."); *id.* at 55:20-21 (explaining that words and terms in a press release "don't expose what you are really trying to do underneath.").

Apple's expert Kivetz asserted, without support, that Masimo's iSpO2 was allegedly marketed using B2 because "[t]he Masimo iSpO2, in 2012 through press releases and also third-party articles that covered those press releases, told the market, told the consumers, Trial Tr. Day 10, vol. II at 34:18-23. But JTX-2761, the only press release of record relating to Masimo's iSpO2 product, does not support Kivetz' assertions. For example, JTX-2761 says nothing about *See* JTX-2761. The jury was free to reject Kivetz's unsupported testimony, particularly because it was contradicted by the documentary evidence he cited. The record as a whole fails to establish that a reasonable jury would have to find that B2 was "generally known." At the very least, the competing evidence shows it was erroneous to grant judgment as a matter of law on this issue. *See Reeves*, 530 U.S. at 150.

Third, the Order does not address the distinction between alleged publication, and being "generally known" that the Court explained in its Jury Instructions:

> The mere fact of publication does not necessarily mean that subject matter is generally known. The "generally known" inquiry is not whether the Asserted Trade Secret has been publicly disclosed at all, but whether it has become generally known to the relevant people: i.e., potential competitors or other persons to whom the information would have some economic value.

Dkt. 1715 at 29 (Jury Instruction No. 22). Kivetz offered no opinion as to whether the

information in JTX-2761 was generally known under this standard because he undertook no investigation as to how many people had reviewed that publication or any other document. *See* Trial Transcript, Day 10, vol. II at 55:21-57:7. Accordingly, regardless of whether JTX-2761 published B2 (it did not), JTX-2761 would have provided insufficient evidentiary support to conclude that B2 was generally known.

## IV. CONCLUSION

For the reasons set forth above, the Court should vacate its grant of judgment as a matter of law regarding Masimo's asserted trade secret B2.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 9, 2023

By: */s/ Benjamin A. Katzenellenbogen*
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Irfan A. Lateef
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 5,208 words, which [choose one]:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: May 9, 2023

By: */s/ Benjamin A. Katzenellenbogen*
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Irfan A. Lateef
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

57556002