MARK D. SELWYN, SBN 244180
   mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
   thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
   joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
   amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER AND VACATE JUDGMENT AS A MATTER OF LAW ON B2** <br><br> Date: June 12, 2023 <br><br> Time: 1:30pm |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

## **TABLE OF CONTENTS**

Introduction ..................................................................................................... 1

Statement ........................................................................................................ 1

    A.    Plaintiffs Agree During Trial That Their November 2020 Description Of B2 "Provide[s] The Controlling Definition[]" .................. 1

    B.    Plaintiffs' Witnesses Fail To Explain Why B2—As Drafted By Plaintiffs—Is Not Generally Known, While Apple's Witnesses Explain Why It Is ............................................................................ 2

    C.    FRCP 50(a) Proceedings .......................................................... 5

Argument ........................................................................................................ 8

I.    PLAINTIFFS' MOTION DOES NOT SATISFY THE DEMANDING REQUIREMENTS FOR RECONSIDERATION ........................................................................ 8

    A.    Local Rule 7-18 ...................................................................... 8

    B.    Inherent Authority ................................................................. 10

II.    PLAINTIFFS HAVE NOT SHOWN THAT THIS COURT COMMITTED MANIFEST LEGAL ERROR BY SUMMARIZING B2 OR BY RESOLVING THE "NOT GENERALLY KNOWN" INQUIRY AT THE RULE 50(A) STAGE ................................ 10

    A.    This Court Did Not "Rewrite" B2 ............................................ 10

    B.    The Jury Did Not Have Carte Blanche To Determine What The Trade Secrets Claim ............................................................... 11

III.    PLAINTIFFS HAVE NOT SHOWN THAT THIS COURT COMMITTED A MANIFEST FACTUAL ERROR BY SUMMARIZING B2 OR HOLDING NO REASONABLE JURY COULD FIND PLAINTIFFS HAD MET THEIR BURDEN TO SHOW B2 WAS NOT GENERALLY KNOWN ............................................................ 14

    A.    B2's Scope .............................................................................. 14

    B.    Not Generally Known .............................................................. 16

Conclusion ..................................................................................................... 20

Wilmer Cutler Pickering Hale and Dorr LLP

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005) ............................................................................... 13

*Allergan, Inc. v. Athena*,
2012 WL 12898344 (C.D. Cal. May 24, 2012) .................................................... 10

*Calendar Research LLC v. StubHub, Inc.*,
2020 WL 4390391 (C.D. Cal. May 13, 2020) ...................................................... 11

*DVD Copy Control Association v. Bunner*,
116 Cal. App. 4th 241 (2004) ............................................................................... 17

*EnterTrode, Inc. v. General Capacitor Co. Ltd.*,
2019 WL 1715170 (N.D. Cal. Apr. 17, 2019) ................................................5, 13

*Finnegan v. United States*,
2021 WL 8820874 (C.D. Cal. Dec. 9, 2021) ....................................................8, 9

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ...........................................................................5, 13

*Lopez v. Liberty Mutual Ins. Co.*,
2020 WL 13042575 (C.D. Cal. Oct. 20, 2020) ..................................................... 8

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .............................................................................................. 13

*Masimo Corp. v. True Wearables Inc.*,
2021 WL 2548690 (C.D. Cal. Apr. 28, 2021) ..................................................... 11

*Mattel, Inc. v. MGA Entertainment, Inc.*,
2011 WL 3420571 (C.D. Cal. 2011) .................................................................... 11

*MGA Entertainment Inc. v. Harris*,
2022 WL 4596585 (C.D. Cal. Sept. 7, 2022) .......................................1, 8, 9, 10

*West Coast Stock Transfer, Inc. v. Terra Tech Corp.*,
2019 WL 1878348 (C.D. Cal. Feb. 14, 2019) ..................................................... 10

**Other Authorities**

Fed. R. Civ. P. 50(a) ............................................................................*passim*

Fed. R. Civ. P. 59 ................................................................................................8

Fed. R. Civ. P. 60................................................................................................8

Local Rule 7-3....................................................................................7, 9

Local Rule 7-18........................................................................1, 8, 9, 10

# INTRODUCTION

Plaintiffs' request for the "extraordinary remedy" of reconsideration should be rejected, both because this Court's B2 ruling was right on the merits and because—at a minimum—Plaintiffs have not identified any of the "highly unusual circumstances" that justify granting a motion for reconsideration. *See MGA Ent. Inc. v. Harris*, 2022 WL 4596585, at *1-2 (C.D. Cal. Sept. 7, 2022) (Selna, J.); *see also* L.R. 7-18.

Plaintiffs' specific challenges to this Court's order are both procedurally improper and meritless. They are procedurally improper because Plaintiffs' brief merely repeats "oral [and] written argument made in opposition" to the original motion, in violation of Local Rule 7-18. And they are meritless because Plaintiffs identify no case law supporting their assertion that a trade secret plaintiff can ask the jury to change the definition of a purported trade secret based on the evidence presented at trial. While Plaintiffs quibble with the amount of detail in the Court's analysis of B2, their criticism is both wrong and unfair: the 21-page ruling is both comprehensive and well-supported by the record. At a minimum, Plaintiffs have not identified the kind of "manifest … failure to consider material facts" that even they acknowledge is necessary to justify reconsideration.

# STATEMENT

## A.    Plaintiffs Agree During Trial That Their November 2020 Description Of B2 "Provide[s] The Controlling Definition[]"

Plaintiffs first disclosed B2 two-and-a-half years ago, in November 2020, when they served Apple with their amended Section 2019.210 statement. *See* Ex. 1 at 9. In Plaintiffs' words, B2 describes ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████. *Id.*; *accord* Dkt. 296-1 at 18 (operative complaint). In April 2022, Plaintiffs requested leave to amend the language of certain purported trade secrets, including B1, but did not propose any changes to B2. *See* Dkt. 669 at 4-6. This Court

granted Plaintiffs' request, and also ruled that "additional attempts to refine identification" of the purported secrets would not be permitted.  *Id.* at 6.[1]

During trial, Plaintiffs took the position that the descriptions of the purported trade secrets in the jurors' notebooks were "controlling."  Specifically, the Court asked both sides whether they approved of the following special instruction:

> [O]nce [a trade secret plaintiff] brings a claim, that party is required to provide a written description of its claimed trade secrets so the defendant understands the scope of the claim.  That is what happened in this case, and those written descriptions of the Asserted Trade Secrets appear in your juror notebooks.  Those descriptions provide the controlling definitions of the Asserted Trade Secrets in this case.

Dkt. 1715 at 27; *see* 4/12 AM Tr. 16:14-22; 4/12 PM Tr. 116:9-117:18.  Plaintiffs' lead counsel enthusiastically endorsed the proposed instruction, stating "We would love it if this was read every day."  4/12 PM Tr. 116:20-21; *see also id.* 117:13-14 ("I think the special instruction is correct.").

**B.     Plaintiffs' Witnesses Fail To Explain Why B2—As Drafted By Plaintiffs—Is Not Generally Known, While Apple's Witnesses Explain Why It Is**

During trial, Plaintiffs put forward just two witnesses who testified regarding B2: their CEO (Mr. Kiani) and their business and marketing expert (Dr. Palmatier).

**1. Kiani.**  On direct examination, Mr. Kiani only briefly testified about the scope of B2.  He asserted that the term ██████████████████████████████████████ ███████████████████████████████████████████████████ 4/5 PM Tr. 78:15-18.[2]  And he stated that the purported trade secret was meant to deal with the problem that, because ████████████████████████████████████████████████

---

[1] Plaintiffs have not sought reconsideration of this Court's ruling that no reasonable jury could find that B1 was not generally known.  *See* Dkt. 1724 at 6.  Accordingly, this brief discusses only the aspects of B2 that are distinct from B1.

[2] Apple has redacted Mr. Kiani's testimony and other evidence Plaintiffs have requested be sealed solely as a courtesy to Plaintiffs; Apple does not agree that any of these high-level statements about basic marketing concepts warrant sealing.  *See also* Dkt. 1724 at 21 (this Court noting that Plaintiffs' proposed redactions to Rule 50(a) order "reference general concepts and need not be sealed").

1 ██████████████████████████████████████████████ *Id.* 78:20,

2 24-25.  Mr. Kiani made similar statements on cross-examination, agreeing that B2 refers

3 to ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ██████   4/6 AM Tr. 32:20-33:1.

6        Mr. Kiani did not testify that the basic concept described above was not generally

7 known.  When pressed by Apple's counsel regarding why, for example, B2 did not

8 describe the well-established practice of using ██████████████████████████

9 ████████████████████████████████████████████████████ Mr.

10 Kiani asserted that the healthcare system does not use ████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ███████████████████████████. Rather, he recognized that B2 does not use "my language

18 exactly.  This is what the lawyers gave you."  *Id.* 36:1-3; *see also id.* 36:6-7 ("I'm just

19 telling you this is not the way I would describe it."); *id.* 54:23-25 ("I didn't write these

20 words.  I'm just explaining … what we were trying to do and have done."); *id.* 55:4-5

21 ("I don't profess to understand trade secret law.  All I know is what we keep

22 confidential."); *id.* 55:25-56:1 ("What I explained to our lawyers [was] what I believe

23 Dr. O'Reilly took.").

24        Mr. Kiani also conceded on cross-examination that two of Plaintiffs' press

25 releases announcing their pulse oximetry products had publicly touted many aspects of

26 the purported business trade secrets.  *See* 4/6 AM Tr. 40-57; *see also* JTX-4636 (Rad-

27 97 press release); JTX-2761 (iSpO2 press release).  Mr. Kiani agreed that the press

28 release for the Rad-97, for example, "told the world" that the product could ████████

1 ███████████████████████████████████████████████████

2 4/6 AM Tr. 45:4-7.  He also agreed that the Rad-97 was (1) ████████████████

3 ███████████████████████████████████████████████████

4 ███████████████████ *Id.* 45:13-21.

5       Although Plaintiffs recalled Mr. Kiani to provide additional testimony at the very

6 end of the trial, he did not say anything further about whether B2 was generally known.

7 *See* 4/25 Tr. 64-95.

8       **2.  Palmatier.**  Dr. Palmatier similarly failed to testify that B2 was not generally

9 known.  On direct examination, he stated that B2 is directed to the general concept of

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ██████████  4/11 PM Tr. 42:9-15.  While he stated at a high level of generality that all

13 the purported business trade secrets derive independent economic value from not being

14 generally known (because Plaintiffs had purportedly spent money in developing them

15 and Dr. Michael O'Reilly had supposedly spoken to their value), Dr. Palmatier did not

16 specifically address whether B2 itself was generally known.  *Id.* 70-72.[3]

17       On cross-examination, Dr. Palmatier agreed that his opinions regarding trade

18 secret misappropriation "used the trade secret[s] as written, in [their] context" and

19 confirmed that he did not base his "opinions on something that's not written in the list"

20 in the jurors' notebooks.  4/11 PM Tr. 90:18-22.  He also testified that a ██████████

21 drawing that appeared in Dr. O'Reilly's notebook (a version of which Dr. O'Reilly had

22 drawn on a whiteboard during an interview with Apple) was *not* the purported B2 trade

23 secret.  4/12 AM Tr. 36:9-14 (Q: "Sir, this ██████████ that we see right here … is not a

24 Masimo or Cercacor trade secret, is it?  A:  The exact ██████████?  No[.]"); *id.* 61:23-

25 62:10 (Q: None of those words [used in the notebook ██████████] is a Masimo or Cercacor

26

27 _____

28 [3] Dr. Palmatier later admitted that he did not know whether Dr. O'Reilly's statements were directed to the purported trade secrets or to the Apple Watch project as a whole. 4/11 PM Tr. 75-76.

Wilmer Cutler
Pickering Hale
and Dorr LLP

trade secret, correct?  A: Those words themselves do not encapsulate any one of the full trade secrets.").   And at the prompting of Plaintiffs' own counsel, Dr. Palmatier conceded that while he did not specifically know one way or the other whether B2 was "generally known," "the general idea of some of [B2] is out there." *Id.* 50:22-51:7.

**3.  Apple's Witnesses**.  Even though Apple did not have the burden to present testimony on whether the purported trade secrets were generally known, it put forth two witnesses who testified that they were.  Apple's expert witness Dr. Kivetz testified at length that each of the purported business trade secrets merely described generally known marketing principles that were taught in business schools, used by numerous companies, and described in books and articles for many years before the date of the purported misappropriation.  *See* 4/18 AM Tr. 138-141; 4/18 PM Tr. 11-34; *infra* pp. 18-19.  And Dr. O'Reilly—the former Masimo employee accused of misappropriating B2—testified that he had "presented publicly" a ███████████ presentation that Plaintiffs claim discloses B2, 4/18 Tr. AM 71, 104, and that he had learned about the idea of ██████████ when he was in graduate school at the University of Vermont in the 1980s, 4/14 Tr. PM 12:5-16, 16:4-17:23.

**C.     FRCP 50(a) Proceedings**

**1.**     On April 22, Apple filed its Rule 50(a) motion, which argued *inter alia* that no reasonable jury could find that the purported business trade secrets were not generally known at the time of the purported misappropriation in 2013.  Dkt. 1705 at 8-9.

On April 24, Plaintiffs filed their opposition, which (as relevant here) raised two arguments.  *First*, Plaintiffs argued for the first time that this Court cannot resolve "disagreements about the scope or meaning of the trade secrets" "as a matter of law." Dkt. 1703 at 9.  Instead, Plaintiffs contended that the jurors should be instructed that they were ultimately responsible for "determin[ing] the scope and meaning of any trade secrets you find exist." *Id.* at 8-9, 32 (citing *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020), and *EnterTrode, Inc. v. Gen. Capacitor Co. Ltd.*, 2019 WL 1715170, at *2 (N.D. Cal. Apr. 17, 2019)).  *Second*, Plaintiffs argued that

Apple had failed to establish that the purported trade secrets were generally known.  Dkt. 1703 at 10.  Plaintiffs did not identify any record evidence showing that the purported trade secrets were *not* generally known.  *Id.*

**2.**      On the morning of April 25, this Court sent the parties a tentative, 26-page ruling that addressed the arguments raised by both sides.  While this Court allowed many issues to go to the jury, it granted JMOL on the issue of whether the purported business trade secrets were not generally known.  Although the purported secrets were "stated via lengthy description," they boiled down to basic concepts, such as (for B1) "a strategy to create sought after, clinically accurate products that can be used in hospitals and at home synergistically" and (for B2) "collecting more patient data to better care for a patient." *See* Dkt. 1724 at 5-6.

**3.**      The Court held oral argument on the Rule 50(a) briefing several hours after issuing its tentative ruling.  *See generally* 4/25 Tr. 104-115.  As to B2, Plaintiffs' counsel argued once again that Apple did not present affirmative "evidence that the strategy was generally known."  *Id.* 108-109.

After Plaintiffs' counsel had stated her position, this Court asked her ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████                4/25  Tr.  113:15-18. Counsel's response did not provide any specific answer, and merely repeated words of B2:

██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████

*Id.* 113:19-114:2.  This Court then asked counsel to clarify ███████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

1  ██████████████████████████████████████████

2  ████████████████████████████████████████ *Id.* 114:23-

3  115:5.

4      Following a lunch-time recess, Plaintiffs' counsel sought one more chance "to

5  make our record with regard to the analysis in the tentative," which the Court permitted.

6  4/25 Tr. 117:21-23.  Counsel contended that the Court had "reinterpreted" B2—and

7  specifically,  the  terms  ████████████████████  and  ████████

8  ████████—in reaching its ruling, which she argued was an "incorrect" attempt by the

9  Court to "interpret[ the purported trade secrets] as a matter of law." *Id.* 118:5-17.

10      Following counsel's argument, the Court explained that "I've had the chance to

11  engage in further reflection over the lunch hour, and I still come to the conclusion that

12  there's not enough there to submit the business trade secrets to the jury."  4/25 Tr.

13  119:11-15.  Accordingly, the Court stated that he was "going to grant the 50(a) motion

14  as to those."  *Id.*  Later the same day, the Court and the parties modified the jury

15  instructions and verdict form to eliminate references to the purported business trade

16  secrets in an off-the-record charge conference.[4]

17      **4.**    Plaintiffs filed the instant motion on May 9—six days after the parties met

18  and conferred on May 3 and in violation of Local Rule 7-3's requirement that any

19  conference of counsel "must take place at least 7 days prior to the filing of the motion."

20  The timing of the conference was the result of Plaintiffs' own delay, as they first emailed

21  Apple after the close of business on May 2.  Ex. 2.  Apple responded the following

22  morning and the parties met and conferred a few hours later.  *Id.*

---

[4] The Court subsequently added two footnotes to its Rule 50(a) decision to address several of the arguments made by Plaintiffs' counsel during oral argument.  Dkt. 1724 at 6 n.2, 7 n.3.

Wilmer Cutler Pickering Hale and Dorr LLP

## ARGUMENT

**I.** **PLAINTIFFS' MOTION DOES NOT SATISFY THE DEMANDING REQUIREMENTS FOR RECONSIDERATION**

Although Plaintiffs purport to seek reconsideration through four different procedural mechanisms—FRCP 59(e), FRCP 60(b), Local Rule 7-18, and the Court's inherent authority to change its opinion, Mem. 2-3—they in fact rely on only two mechanisms. That is because "[c]ourts in this district have interpreted Local Rule 7-18 to be *coextensive* with Rules 59(e) and 60(b)," meaning that this Court assesses motions for reconsideration under the legal standard set out in Local Rule 7-18. *MGA Ent.*, 2022 WL 4596585, at \*1-2; *Finnegan v. United States*, 2021 WL 8820874, at \*1 (C.D. Cal. Dec. 9, 2021) (emphasis added).[5]

### A.    Local Rule 7-18

Plaintiffs' motion fails to satisfy the demanding requirements of Local Rule 7-18 for three reasons. *First*, the Rule provides that "[n]o motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." Here, each of the "four errors" that Plaintiffs press (Mem. 3) was previously aired orally and/or in writing:

- Plaintiffs argue that this Court's ruling "rewrote Trade Secret B2." Mem. 3-5. Plaintiffs made the same (flawed) point in both their Rule 50(a) briefing and at oral argument. *See* Dkt. 1703 at 9; 4/25 Tr. 118:5-17.

- Plaintiffs argue that "[t]rade secrets are interpreted by the jury, not the Court." Mem. 4-6 (citing *Inteliclear* and *EnerTrode*) (capitalization omitted). Again, Plaintiffs made the same erroneous point and cited the same two cases both in their prior briefing and at oral argument. *See* Dkt. 1703 at 9; 4/25 Tr. 119:2-9.

---

[5] In any event, FRCP 59 and 60(b) "only apply to final, appealable judgments and orders"—not to "interlocutory" rulings. *Lopez v. Liberty Mutual Ins. Co.*, 2020 WL 13042575, at \*3 (C.D. Cal. Oct. 20, 2020). Plaintiffs concede this Court's Rule 50(a) decision is an "interlocutory order[]." Mem. 2.

- Plaintiffs argue that "[n]o evidence supports the Order's rewriting of Trade Secret B2" and that B2 encompasses something different than this Court's description of "collecting more patient data to better care for a patient."  Mem. at 6-10 (citing 4/6 AM Tr. 32:10-35:14 (Kiani) and 4/14 PM Tr. 11 (O'Reilly)). Plaintiffs made the same point—and cited much of the same testimony—at oral argument.  4/25 Tr. 108, 119 (citing *inter alia* 4/6 AM Tr. 34-35 (Kiani)).

- Plaintiffs argue "[n]o evidence suggests that Trade Secret B2 was generally known."  Mem. at 10-16.  Yet again, Plaintiffs made the same meritless argument in their Rule 50(a) briefing and at oral argument.  Dkt. 1703 at 10; 4/25 Tr. 108-109; 112-113.

*Second*, Local Rule 7-18 provides that a party that files its motion for reconsideration "later than 14 days after entry of the Order that is the subject of the motion" must make a showing of good cause for their untimeliness.  Plaintiffs have not even attempted to make such a showing here.

To be sure, Plaintiffs filed their motion exactly 14 days after this Court's Rule 50(a) decision on April 25, *see supra* p. 7, but they did so in violation of the local rules. Local Rule 7-3 requires parties to meet and confer seven days before any motion is filed; here, the parties met and conferred six days beforehand.  Plaintiffs should not be permitted to circumvent one local rule to avoid the constraints of another.[6]

*Third*, even if Plaintiffs had met the procedural requirements of Local Rule 7-18, they have failed to show that this case presents the "highly unusual circumstances" where a motion for reconsideration is proper.  *See Finnegan*, 2021 WL 8820874, at *1; *MGA Ent.*, 2022 WL 4596585, at *1-2.  In particular, Plaintiffs' first two arguments— i.e., that this Court "erred as a matter of law by rewriting" B2 and that only the jury can determine the scope of the purported secrets, Mem. at 3-6—are both legal challenges.

---

[6] Plaintiffs' brief does not acknowledge their violation of the local rules.  Their motion states that Plaintiffs "requested" the conference on May 2, seven days before they filed the motion.  Dkt. 1733 at 1.  But Local Rule 7-3's seven-day clock starts when the conference "take[s] place."

Plaintiffs, however, have identified neither any "change of law occurring after the Order was entered" nor any "material difference in … law from that presented to the Court" that "could not have been known" to Plaintiffs during the Rule 50(a) briefing. *See* L.R. 7-18(a)-(b). And it is well-established that "a motion for reconsideration may not be made on the grounds that a party disagrees with the Court's application of legal precedent." *West Coast Stock Transfer, Inc. v. Terra Tech Corp.*, 2019 WL 1878348, at *2 (C.D. Cal. Feb. 14, 2019); *accord MGA Ent.*, 2022 WL 4596585, at *2. Plaintiffs' remaining arguments are factual, but they rely entirely on testimony that this Court observed firsthand—much of which was expressly raised in the Rule 50(a) briefing and during oral argument. *See supra* pp. 2-5, 8-9; *infra* pp. 14-20. Plaintiffs accordingly cannot reasonably meet their burden to make a "manifest showing of a failure to consider material facts." L.R. 7-18.

### B. Inherent Authority

This Court has explained that, even when exercising its "inherent authority to modify a non-final order," "a court should generally leave a previous decision undisturbed absent a showing that it either presented clear error or would work a manifest injustice." *Allergan, Inc. v. Athena*, 2012 WL 12898344, at *4 (C.D. Cal. May 24, 2012). Put slightly differently, this authority is used to "'correct mistakes' or to grant relief from 'manifest error.'" *Id.* at *3. Plaintiffs have not identified any specific "mistake" made by this Court (nor could they reasonably do so, given that their motion is simply a rehash of arguments they already presented) and again, Plaintiffs have not established "manifest error." *See infra* pp. 10-20.

### II. PLAINTIFFS HAVE NOT SHOWN THAT THIS COURT COMMITTED MANIFEST LEGAL ERROR BY SUMMARIZING B2 OR BY RESOLVING THE "NOT GENERALLY KNOWN" INQUIRY AT THE RULE 50(A) STAGE

### A. This Court Did Not "Rewrite" B2

Plaintiffs argue that this Court was barred as a matter of law from summarizing B2 as "collecting more patient data to better care for a particular patient." Mem. 3-4.

Wilmer Cutler Pickering Hale and Dorr LLP

Plaintiffs identify no case law that supports such a rule, nor is Apple aware of any.  To the contrary, it is not uncommon for courts to summarize wordy purported trade secrets when issuing their decisions.  *See, e.g.*, *Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *1 (C.D. Cal. Apr. 28, 2021) ("In essence, the [purported trade secret] uses a process somewhat [redacted] necessary to calculate SpHb given a predetermined measure of accuracy."); *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 3420571, at *2 n.1 (C.D. Cal. 2011) (summarizing 117 trade secrets as the "appearance, operation, intended play pattern, and plans to advertise on television" of a particular product).  As this Court's decision explained, "a general concept or strategy of gathering more patient data to better care for a patient can be generally known or disclosed even if it does not use Plaintiffs' preferred buzz words conveying the same thing."  Dkt. 1724 at 7 n.3.

Any other approach would mean that a wily plaintiff could avoid a finding that a purported secret is generally known by using verbose and/or impenetrable phrasing to disguise basic concepts.  Even Dr. Palmatier did not dispute that rewording a "well-known" concept (e.g., "Soda having carbonation") in a more convoluted way (e.g., "Soda having carbonation, because the soda has been carbonated to create a soda that is having carbonation") made no real difference to what was being claimed.  4/11 PM Tr. 81-86.  Indeed, if it is not possible to boil down Plaintiffs' use of "broad technical concepts" that "creat[e] a circuitous path of unexplained jargon" into concrete ideas, B2 could be rejected on the alternative ground that Plaintiffs have failed to identify the alleged trade secret with reasonable particularity.  *See Calendar Research LLC v. StubHub, Inc.*, 2020 WL 4390391, at *7-8 (C.D. Cal. May 13, 2020) (collecting cases).

**B.    The Jury Did Not Have Carte Blanche To Determine What The Trade Secrets Claim**

Plaintiffs next argue that this Court erred by interpreting the scope of B2 rather than leaving that question to the jury.  Mem. 4-6.  To be clear, Apple does not dispute that a jury may interpret the words that a plaintiff used to describe its purported secrets.  The parties agreed that this Court could so instruct the jury, *see supra* p. 2, and nothing

in this Court's decision suggests that it deviated from this principle.  Rather, Plaintiffs' real argument is that the jury should have been granted freedom to *rewrite* Plaintiffs' list of alleged trade secrets to encompass concepts (e.g., ███████████████████ █████████████████████ ) that Plaintiffs *could* have expressly referenced in their purported trade secrets.  This argument fails for three independent reasons.

*First*, nothing in this Court's Rule 50(a) decision suggests that it "[u]surp[ed] the jury's role" (Mem. 6) by interpreting B2 as a court might interpret a contract or statute—i.e., providing a definition as a matter of law without any regard to the parties' factual disputes.  Rather, this Court did exactly what a court is supposed to do when granting relief at the Rule 50 stage.  It assessed the trial record and held that no reasonable jury could interpret B2 in any way *other* than the Court's definition.  *See, e.g.*, Dkt. 1724 at 7 ("[N]o reasonable juror could find for Plaintiffs regarding whether the alleged 'B' category trade secrets were generally known.").  In other words, this Court did not provide an authoritative interpretation of B2 based on statutory—or patent claim—interpretation principles; it merely concluded that the jury did not have a "legally sufficient evidentiary basis" to find that B2 is not generally known.  *See* Fed. R. Civ. P. 50(a).  Indeed, under Plaintiffs' approach, a court could apparently never grant JMOL regarding whether the trade secret plaintiff's information is protectable as a trade secret because that would invade the jury's sphere.  That cannot be right.

*Second*, Plaintiffs waived the right to argue that the jury can deviate from the language of the purported trade secrets that appeared in the juror notebooks.  Plaintiffs' lead counsel did not just fail to object to this Court's proposed instruction that "th[e] written descriptions of the Asserted Trade Secrets [that] appear in your juror notebooks … provide the controlling definitions of the Asserted Trade Secrets in this case."  Dkt. 1715 at 27; *supra* p. 2.  Lead counsel affirmatively endorsed that instruction, stating "We would love it if this was read every day" and "I think the special instruction is correct." *See supra* pp. 2-3.  More broadly, Plaintiffs successfully *opposed* Apple's request for a jury instruction that would have permitted the jurors to determine whether Plaintiffs'

purported trade secrets were drafted with sufficient particularity. *See* Dkt. 1633-1 at 5-8. Because Plaintiffs prevailed in convincing the Court that the jury is not entitled to determine the scope of the purported trade secrets when doing so was to Plaintiffs' benefit, they should not be permitted to argue the opposite now that their "interests have changed." *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

*Third*, Plaintiffs identified no case supporting their view that they are not bound by the definition of B2 that appeared in their 2019.210 disclosure statement. This is for good reason, as California authority holds that while "[t]he trade secret designation mandated by section 2019.210 is not itself a pleading," it "functions like one in a trade secret case." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005).

Neither of the two cases Plaintiffs cite permitted a trade secret plaintiff to deviate from the language of its purported trade secrets at trial. In *EnerTrode*, for example, the *defendants* argued that the plaintiffs' trade secret definition should be narrowed. 2019 WL 1715170, at *2. Nothing in the opinion suggests that the *plaintiffs* attempted to change or expand the definition of their purported secret at trial. Rather, the *EnerTrode* plaintiffs asked the Court to instruct the jury on the definition of trade secrets identified "[i]n discovery responses." *See EnerTrode*, No. 16-cv-02458, Dkt. 346 at 60-61.

*InteliClear* is even further afield. It held only that the trade secret plaintiff had established that there was a triable issue of material fact as to whether the plaintiff had identified at least one trade secret with reasonable particularity. 978 F.3d at 659-660. In other words, *Inteliclear* did not allow the plaintiff to adjust the scope of its purported secrets during trial; it merely left to the jury to resolve the question of whether the plaintiff had *any* trade secrets that satisfied California's particularity requirement. *Id.*

In any event, *Inteliclear* dealt with a very different factual situation—it was decided at a time in the case when "no discovery whatsoever had occurred" and the panel went to great lengths to distinguish the facts from cases where a plaintiff's trade secrets were dismissed for lack of particularity only after extended discovery had occurred. *Id.*

at 663.  Here, in contrast, Plaintiffs not only had years to amend their purported trade secrets, but they *did* in fact amend some of the supposed secrets—just not B2.  *See supra* pp. 1-2.

### III.   PLAINTIFFS HAVE NOT SHOWN THAT THIS COURT COMMITTED A MANIFEST FACTUAL ERROR BY SUMMARIZING B2 OR HOLDING NO REASONABLE JURY COULD FIND PLAINTIFFS HAD MET THEIR BURDEN TO SHOW B2 WAS NOT GENERALLY KNOWN

This Court correctly summarized B2's scope and held that no reasonable jury could find that Plaintiffs had shown that B2 was not generally known.  At a minimum, Plaintiffs have not shown that either ruling was the result of manifest error—particularly because, no matter how B2 is defined, Plaintiffs failed to put forth any evidence that it is not generally known.

### A.   B2's Scope

Plaintiffs argue that this Court's summary of the meaning of ███████████ ████████████████████████ (i.e., "collecting more patient data to better care for a patient") ignores contrary record evidence.  Mem. 6-10.  But Plaintiffs do not identify any testimony or documentary evidence stating that B2 is *limited* to Plaintiffs' preferred definition—i.e., "unconventional approaches to medicine ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████ *See* Mem. 6-7.  Plaintiffs do not point to any record cite at all where the language just quoted appears.  Instead, Plaintiffs point to—charitably described—a jumble of testimony and documents, none of which supports their position.

*First*, Plaintiffs ostensibly rely on Mr. Kiani's testimony.  Mem. 6-8.  However, they do not cite a single line from Mr. Kiani's hours of direct and re-direct examination testimony.  Instead, they primarily cite just a handful of pages from Mr. Kiani's cross-examination that discuss the use of, *inter alia*, ████████████████ to treat patients.

*See* 4/6 AM Tr. 33-38.  And Plaintiffs concede that Mr. Kiani agreed within that same page range that B2 does not expressly encompass terms like ████████████████ Mem. 8.  Rather, he explained that his testimony was merely ████████████████ at Masimo.  4/6 AM Tr. 35:20-36:3.  B2, he testified, is not written using "my language exactly," and was not written in "the way I would describe it."  *Id.* 36:1-7; *see supra* p. 3 (collecting similar statements by Mr. Kiani).[7]

Most importantly, Plaintiffs do not point to any non-conclusory testimony where Mr. Kiani stated that B2's broad language was limited to concepts like ████████ ████████████  To the contrary, Plaintiffs themselves appear to argue only that ████████ ████████████████████████████████████████████████████████ ████████████  Mem. 8 (emphasis added); *id.* ████████████████████████████ ████████████████████████████████████████████  (emphasis  added)).  That understanding of the terminology is fully consistent with this Court's summary of B2; using ████████████████████████████████████████████████████████ is *a* way of collecting more patient information to better care for that patient.  Notably, when this Court pressed Plaintiffs' counsel on this precise point at the Rule 50(a) oral argument—i.e., why the language of B2 should not be read broadly to ████████████ ████████████████████████████████████████████████████████████████ ████████████—counsel failed to draw a meaningful distinction.  *See supra* p. 6-7.

*Second*, Plaintiffs assert that Dr. O'Reilly testified that the term ████████ ████████████████████████████████████  Mem. 8-9 (citing 4/14 PM Tr. 11).  But the cited transcript page makes no reference to ████████████████ or even B2—Dr. O'Reilly simply provided a definition for the terms ████████████████ ████████████████████████████████████████  *See* 4/14 PM Tr. 11:8-

---

[7] Plaintiffs make much of the fact that Mr. Kiani referenced ████████████████ ████████████ in his deposition.  Mem. 8 n.1.  This is a red herring.  The issue is not when Mr. Kiani began taking such a narrow view of B2; it is the fact that (by Mr. Kiani's own admission), Plaintiffs' counsel purportedly did not write B2 in a way that is consistent with Mr. Kiani's views.

12:2.  Plaintiffs also wrongly claim that Dr. O'Reilly testified that ███████████

███████████████████████████████████████████████████████████████

Mem. 9; *see* 4/14 PM Tr. 33.   But this ignores Dr. O'Reilly's prior testimony that

█████████████ is a general term that means ████████████████████

███████████████████ 4/14 PM Tr. 17:12-20.   While Dr. O'Reilly

testified that █████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████ *id.* 33:12-20.

Finally, Plaintiffs claim that certain documents discussed during Dr. Palmatier's testimony—pages from Dr. O'Reilly's notebooks and a white board drawing Dr. O'Reilly made during his interview at Apple—show that the term ████████████

████████████████████████████████.  Mem. 9.

But Dr. Palmatier subsequently conceded that neither the notebooks nor the whiteboard drawing actually discloses B2 (or any other purported business trade secret).  4/12 AM Tr. 36:9-14; 61:23-62:10.  Similarly, while Plaintiffs focus (Mem. 9) on a single email chain between Dr. O'Reilly and Apple witness Adrian Perica, nothing in the chain mentions B2, ████████████████████████████.  JTX-502 at -643, -644 (discussing the broad concept of ████████████████████████).

And again, even if B2 *includes* ████████████████████████████—

Plaintiffs identify nothing in the notebooks, whiteboard drawing, or email that *limit* B2's scope.

## B.   Not Generally Known

Plaintiffs devote more than six pages to arguing that this Court did not cite sufficient evidence to support its conclusion that no reasonable jury could have found that B2 was generally known.  Mem. 10-16.  But Plaintiffs identify no case law that requires a court to identify every piece of evidence supporting its conclusions at Rule 50(a), nor is Apple aware of any.  Such a rule would be particularly inappropriate here, where Plaintiffs have the burden to establish that B2 is not generally known but their

1   Rule 50(a) opposition failed to provide any B2-specific evidence on that issue.  *See*

2   *supra* pp. 5-6.

3       This Court's conclusion that no reasonable jury could have found that B2 was not

4   generally known was well supported by the record.  Plaintiffs' motion identifies no

5   cognizable contrary evidence that contradicts this Court's ruling and for good reason—

6   it does not exist.  *See supra* pp. 2-5 (summarizing testimony from Plaintiffs' witnesses).

7   To the contrary, Plaintiffs' counsel felt comfortable discussing the language of B2 on

8   the public record, even while acknowledging that she was "in open court."  *See* 4/25 Tr.

9   118:6-11 ("[W]e have words in the trade secret, and I know we're in open court, but the

10  words 'broader precision diagnosis data set' is in the trade secret" and "[t]here's another

11  term, 'precision medicine[.]'").[8]

12      Because Plaintiffs failed to put on any of the required evidence, they now

13  improperly attempt to flip the burden by suggesting that *Apple* had to prove that no

14  reasonable jury could have found that the purported secret "was generally known."  That

15  is not the law.  *See* Dkt. 1715 at 28 (Jury Instruction No. 21); *see also DVD Copy Control*

16  *Assn. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) (Plaintiff has burden to prove "the

17  information it seeks to protect is indeed a trade secret," which includes that the

18  information is "not … generally known").  But even if it were, the only reasonable

19  conclusion that could be drawn from the uncontradicted evidence at trial was that B2

20  was generally known because it describes the rudimentary concept of "collecting more

21  patient data to better care for a patient."  *See* Dkt. 1724 at 6.

22      This is consistent with Dr. O'Reilly's statements that ████████████ is a

23  broad term that encompasses the basic concept of providing ████████ and that he

24

25

26  _____

27  [8] While Plaintiffs assert there was "evidence … establishing B2 was not generally known," Mem. 1, this appears to refer to a Google search by Apple's expert that did not return any hits for the term '██████████████████████ *id.* 12-13.  As this

28  Court already noted, that B2 uses jargon to describe a basic concept does not automatically make that concept a secret.  *See* Dkt. 1724 at 7 n.3.

had presented the subject matter of B2 at a public conference long before the purported misappropriation. *See supra* p. 5.

This Court's ruling is also fully borne out by the statements of Apple's expert, Dr. Kivetz, who testified that B2 ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ 4/18 PM Tr. 31:8-19. In other words, B2 employs the ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████ and this principle has been "generally known for decades." *Id.* 33:14-17. This basic concept (as well as the other purported business secrets) "ha[s] been known for years before 2013"—it has "been taught in universities all over the world," "written about in many articles and books," and "used and publicized by companies." 4/18 AM Tr. 141:9-12.

Dr. Kivetz's testimony identified several consumer devices that existed prior to 2013 that collected parameter data—as required by *inter alia* B2—such as ██████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ ██████████████ ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████

Dr. Kivetz also testified that companies like ████████████████████████ had disclosed B2 through press releases and other marketing materials released prior to 2013. 4/18 PM Tr. 33:19-34:12. In those materials, the companies publicized their products'

1   ability to ████████████████████████████████████████████

2   ██████████████████████████████ *Id.*; *accord id.* 29:21-30:6 (similar).

3       Finally, Dr. Kivetz testified that Masimo itself had publicized B2 in 2012 through

4   its own marketing materials and third-party articles regarding the iSpO2.  *See* 4/18 PM

5   Tr. 34:14-23.  As he explained: "This is what companies do, [they] tell the market, 'Here

6   is what the product is for.  Here is what it does.'"  *See id.* 33:3-5.  He explained that the

7   iSpO2 press release and other third-party articles disclosed B2 as they told consumers

8   that the iSpO2 could be used with ██████████████████████████████████████

9   ██████████████████████████████████████████████████████ 4/18 PM

10  Tr. 34:14-23.[9]

11      Plaintiffs do not address the vast majority of Dr. Kivetz's testimony regarding B2.

12  Their chief argument is that the iSpO2 press release does not expressly "discuss the use

13  of iSpO2 to build a ████████████████████", nor does it discuss the use of

14  iSpO2 for ████████████"  Mem. 14.  This Court rightly rejected that argument,

15  explaining that "the question is not whether the press release contains the literal words

16  of the alleged trade secret … it is whether the overall scope of what is disclosed in the

17  alleged trade secret may be understood from the information that was publicly disclosed

18  and widely disseminated, and therefore is generally known."  Dkt. 1724 at 7 n.3.

19  Plaintiffs have no response.[10]

20      Plaintiffs also contend that this Court erred by crediting the press release even

21  though Dr. Palmatier testified that he personally could not discern any of Plaintiffs'

22  purported business trade secrets from that document.  Mem. 14-15.  But this Court

23  answered this point in the context of B1, explaining that "to the extent Dr. Palmatier's

24

25  [9] Plaintiffs fault this Court for failing to specifically address how many people viewed Plaintiffs' press release.  Mem. 15-16.  This Court has rejected the argument that an
26  expert must as a matter of law specifically address that issue.  *See* Dkt. 1284 at 6-7.

27  [10] This also answers Plaintiffs' attorney argument that Dr. Kivetz did not adequately identify specific passages in the iSpO2 press release that support his testimony that
28  readers of the press release would have been able to discern B2.  *See* Mem. 15.

testimony intended to imply that some hidden strategy may be read between the lines of B1 as it was disclosed in this case, … that misstates the law because an alleged trade secret cannot evolve during trial." Dkt. 1724 at 6 n.2. The same logic applies here— Plaintiffs point to nowhere in the record where Dr. Palmatier (or any other witness) identified a specific component of B2 that is absent from the iSpO2 press release. Instead, Plaintiffs once again ignore this Court's reasoning.

## CONCLUSION

Plaintiffs' motion for reconsideration should be denied.


Dated: May 22, 2023                              Respectfully submitted,

                                                 JOSEPH J. MUELLER
                                                 MARK D. SELWYN
                                                 AMY K. WIGMORE
                                                 JOSHUA H. LERNER
                                                 SARAH R. FRAZIER
                                                 NORA Q.E. PASSAMANECK
                                                 THOMAS G. SPRANKLING
                                                 WILMER CUTLER PICKERING HALE AND
                                                 DORR LLP

                                                 BRIAN A. ROSENTHAL
                                                 GIBSON, DUNN & CRUTCHER LLP

                                                 KENNETH G. PARKER
                                                 HAYNES AND BOONE, LLP



                                                 By:  /s/ *Mark D. Selwyn*
                                                      Mark D. Selwyn


                                                 *Attorneys for Defendant Apple Inc.*

1

# <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Defendant Apple Inc. certifies that this

3   brief contains 6,920 words, which:

4       _X_  complies with the word limit of L.R. 11-6.1

5       __ complies with the page limit set by court order.

6

7   Dated:  May 22, 2023                Respectfully submitted,

8

9                                      MARK D. SELWYN
                                       AMY K. WIGMORE
10                                     JOSHUA H. LERNER
                                       SARAH R. FRAZIER
11                                     NORA Q.E. PASSAMANECK
                                       THOMAS G. SPRANKLING
12                                     WILMER CUTLER PICKERING HALE AND
                                       DORR LLP
13

14
                                       BRIAN A. ROSENTHAL
15                                     GIBSON, DUNN & CRUTCHER LLP

16
                                       KENNETH G. PARKER
17                                     HAYNES AND BOONE, LLP

18

19

20                                     By:  /s/ *Mark D. Selwyn*
                                            Mark D. Selwyn
21

22                                     *Attorneys for Defendant Apple Inc.*
23

24

25

26

27

28