1  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
     thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
     joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
      HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16              **UNITED STATES DISTRICT COURT**
17     **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18  MASIMO CORPORATION,
    a Delaware corporation; and
19  CERCACOR LABORATORIES, INC.,
    a Delaware corporation,
20
                    Plaintiffs,
21
        v.
22
    APPLE INC.,
23  a California corporation,
24                  Defendant.

|  |  |
|---|---|
| CASE NO. 8:20-cv-00048-JVS (JDEx) | |
| **APPLE'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)** | |
| Hearing: July 24, 2023 | |
| Time: 1:30pm | |

25
26          REDACTED VERSION OF DOCUMENT
27        PROPOSED TO BE FILED UNDER SEAL
28

Wilmer Cutler
Pickering Hale
and Dorr LLP

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# **TABLE OF CONTENTS**

Argument ..................................................................................................... 1

I.   PLAINTIFFS' MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW ............... 2

    A.   Plaintiffs' Remaining ATS Do Not Qualify As Trade Secrets Under CUTSA And, In Any Event, Were Not Misappropriated ......................... 2

        1.   L4 – The Black Foam Test ................................................ 2

        2.   L5 – The Short Circuit ..................................................... 7

        3.   D1, D3, and D10 – The Admittedly Unused Algorithms ............... 9

        4.   VIA – The Nebulous Catchall ........................................ 11

    B.   Plaintiffs Have Not Established Unjust Enrichment ............................... 12

    C.   No Reasonable Jury Could Find In Plaintiffs' Favor On The Remaining Issues .................................................................................. 15

        1.   Plaintiffs' trade secret claim is time-barred ................................. 15

        2.   This Court should grant JMOL based on lack of requsite intent ................................................................................ 17

        3.   Apple did not willfully and maliciously appropriate .................... 18

II.  THE INVENTORSHIP AND OWNERSHIP CLAIMS FAIL AS A MATTER OF LAW .......... 18

    A.   '052 and '670 patents. ................................................................. 18

    B.   '754 patent. .............................................................................. 20

    C.   '095 and '390 patents. ................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajaxo Inc. v. E\*Trade Fin. Corp.*,
    187 Cal.App.4th 1295 (2010) ............................................................ 12

*Ajaxo Inc. v. E\*Trade Grp. Inc.*,
    135 Cal.App.4th 21 (2005) ................................................................ 18

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ........................................................................... 18

*Atmel Corp. v. Info. Storage Devices, Inc.*,
    189 F.R.D. 410 (N.D. Cal. 1999) ................................................ 7, 9, 11

*BMW of N. America, Inc. v. Gore*,
    517 U.S. 559 (1996) ........................................................................... 15

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013) ........................................................... 1

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ......................................................... 20

*Elliott v. Versa CIC, L.P.*,
    2019 WL 414499 (S.D. Cal. Feb. 1, 2019)....................................... 1, 2

*Emazing Lights, LLC v. Ramiro Montes de Oca*,
    2016 WL 3475330 (C.D. Cal. May 3, 2016)........................................ 6

*Falana v. Kent State Univ.*,
    669 F.3d 1349 (Fed. Cir. 2012) ............................................. 19, 20, 21

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    857 F.Supp.2d 997 (S.D. Cal. 2012) ............................................ 15, 16

*Glue-Fold, Inc. v. Slautterback Corp.*,
    82 Cal.App.4th 1018 (2000) .............................................................. 15

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020).......................................................... 5, 11

Wilmer Cutler
Pickering Hale
and Dorr LLP

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974).................................................................................2, 13

*Little v. Amber Hotel Co.*,
   202 Cal.App.4th 280 (2011) ................................................................17

*Manderville v. PCG&S Grp., Inc.*,
   146 Cal.App.4th 1486 (2007) ..............................................................17

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F.Supp.2d 1095 (N.D. Cal. 2012)................................................15

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
   855 F. App'x 701 (Fed. Cir. 2021) ........................................................5

*Pixion, Inc. v. PlaceWare Inc.*,
   421 F. Supp. 2d 1233 (N.D. Cal. 2005)................................................5

*People v. Riley*,
   240 Cal.App.4th 1152 (2015) ..............................................................17

*Sargent Fletcher v. Able Corp.*,
   110 Cal.App.4th 1658 (2003) ................................................................3

*Syntel Sterling v. Trizetto*,
   -- F.4th --, 2023 WL 3636674 (2d Cir. May 25, 2023) ........................5

*Telemac Cellular v. Topp Telecom*,
   247 F.3d 1316 (Fed. Cir. 2001) ............................................................8

*Wagner v. Ashline*,
   2021 WL 5353889 (Fed. Cir. Nov. 17, 2021) ..............................19, 20

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 2123560 (N.D. Cal. May 15, 2017).......................................8

**Statutes**

Cal. Civ. Code § 3426.1(b) ..................................................................17

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S MEM. ISO ITS RENEWED MOT. FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50(B)
iii     CASE NO. 8:20-cv-00048-JVS (JDEx)

After years of discovery, the misappropriation case Plaintiffs presented at trial boiled down to (1) a piece of black foam long used in the industry in the same way as Apple has; (2) a short circuit familiar to any electrical engineer; and (3) a modulation proposal Apple never implemented because it was incredibly impractical.  After four days of deliberation, six of the seven jurors would have found in Apple's favor on all the alleged trade secrets (ATS) remaining after this Court granted JMOL on the others. Dkt. 1716.  No reasonable juror could have found otherwise: the black foam, short circuit, and rejected modulation proposal are simply not trade secrets, were not misappropriated, and do not remotely support any monetary relief, much less a ten-digit unjust enrichment demand.  Another trial would simply waste the Court's resources.

Plaintiffs' attempts to claim ownership of Apple's patents fare no better.  Plaintiffs presented zero evidence of any collaboration or joint effort between the named inventors and the claimed missing inventors.  Even the supposed missing inventors do not describe themselves as inventors—one has not read the patents and the other testified *he* was in fact taught the disputed information by the current named inventor.

Apple accordingly respectfully requests JMOL on liability and damages.[1]

## ARGUMENT

"Notwithstanding the jury's failure to reach a verdict, … a renewed motion for judgment as a matter of law under Rule 50(b) is appropriate and may be granted." *Elliott v. Versa CIC, L.P.*, 2019 WL 414499, at *5-6 (S.D. Cal. Feb. 1, 2019) (granting defendants' JMOL motion after jury "deadlocked … 6-1 in favor of Defendants"); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1331, 1339 (Fed. Cir. 2013) (affirming this Court's post-hung-jury JMOL grant on obviousness and infringement). The ultimate question is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Elliott*, 2019 WL 414499, at *5.  "[T]he mere

---

[1] Emphasis added except where noted.  Given this Court's Rule 50(a) decision dismissing the business ATS, Apple discusses only the issues that apply to the technical ATS.  In the unlikely event Plaintiffs' pending motion for reconsideration is granted, Apple reserves the right to file a supplemental brief regarding the business ATS.

existence of some alleged factual dispute between the parties or a 'scintilla of evidence' will not defeat a properly supported motion." *Id.*

I.   **PLAINTIFFS' MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW**[2]

A.   **Plaintiffs' Remaining ATS Do Not Qualify As Trade Secrets Under CUTSA And, In Any Event, Were Not Misappropriated**

1.   **L4 – The Black Foam Test**

At trial, Plaintiffs' L4 claim concerned using black foam in one quality-control step within the complex process of manufacturing Apple Watch.  Plaintiffs' expert asserted that Apple misappropriated L4 by purportedly adopting Lamego's suggestion to ███████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████   4/12 PM Tr. 11:20-12:20.  There is no evidence Lamego actually suggested this.  And there was, indisputably, nothing new or unusual about Apple's use of black foam in this manner: it had been used in the same way for years by Apple and others in the industry.  No reasonable jury could have found liability.

a.   **No Misappropriation.**  It is undisputed that Apple was already using a ███████████████████████████ in Apple Watch *in 2013*—months *before* Lamego joined. 4/18 PM Tr. 108:20-114:18 (Block); 4/19 AM Tr. 48:5-17, 61:13-62:21 (Block); 4/20 AM Tr. 62:19-67:13 (Warren); 4/12 PM Tr. 11:15-12:1 (Madisetti); JTX-1061. Plaintiffs thus cannot show Apple acquired L4 through improper means because Apple independently developed a method for testing for ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[2] Plaintiffs' attempt to wield CUTSA to prevent use of information disclosed to the public in a patent (D10) or claim control over solutions they do not possess (L5) demonstrates their overreach.  If the law were as Plaintiffs suggests, the Court would need to consider whether such expansive trade secret protection violates the Constitution.  *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479-493 (1974).

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    ███████████████" *See Sargent Fletcher v. Able Corp.*, 110 Cal.App.4th 1658, 1666-

2    1669, 1675 (2003) (plaintiff has burden to disprove independent development).

3         Unable to dispute this point, Plaintiffs attempted at trial to narrow L4 to a *specific*

4    test procedure that requires using "█████████████████" *E.g.*, Dkt. 1703 at 15.  Such

5    an eleventh-hour rewrite is impermissible.  *See infra* pp. 4-6.  But even under Plaintiffs'

6    narrower definition, no reasonable jury could find Apple misappropriated a "████████

7    ██████████ test.  As an Apple engineer confirmed, Apple's *2013* version of the test was

8    designed to █████████████████████████████████████████████████████████████

9    █████████   4/18PM Tr. 111-112 (Block).   And Plaintiffs offered no evidence that

10   Lamego was involved in Apple's decision to ████████████████.  The sole document

11   Plaintiffs cite regarding this change to the test procedure—JTX-1063—is an email to 39

12   Apple employees (including Lamego), which contains no indication Lamego

13   contributed to the attached presentation or specific change Plaintiffs accused, *id.* at -859.

14   To the contrary, Block and Land each confirmed Lamego had nothing to do with that

15   decision.  4/18 PM Tr. 77:22-78:11, 113:24-114:1; *see also* 4/20 AM Tr.62:19-66:5

16   (Warren).  Plaintiffs called Lamego as a witness, yet did not ask him a single question

17   on the subject—in tacit recognition of the disconnect between Lamego and black foam.

18        Because Plaintiffs do not have a shred of evidence connecting Lamego to the

19   accused test, they are reduced to arguing that Lamego "disclosed" L4 to Apple based on

20   one document containing the phrase "Photodiode Shielding." JTX-143.  But photodiode

21   shielding involves protection against electromagnetic interference; it has nothing to do

22   with ████████.  4/18 PM Tr. 80:6-19 (Land); 4/20 AM Tr. 65:13-66:5 (Warren).  Even

23   Madisetti recognized that a Masimo patent that described a "photodiode detector

24   shield[]" related to "reduc[ing] effects of electromagnetic radiation … ████████."

25   PDX9-21; JTX-3707; 4/20 PM Tr. 89:5-18.  JTX-143 also says absolutely nothing about

26   the "██████████████" aspects Plaintiffs now allege are central to the purported

27   secret.  4/12 PM 11:12-12:20; JTX-1064 at 857-859.

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   Finally, L4 requires that Apple ████████████████████████████

2   ███████. But Apple's engineers gave unrefuted testimony that the accused test

3   occurs solely as a quality check at the end of the *manufacturing* process, and it has never

4   been used as the basis for ██████████████████. 4/18 PM Tr. 77:22-79:11, 113:24-

5   114:18; 4/20 AM Tr. 62:19-66:5. Plaintiffs point to changes later made to ████████

6   ████████████████████████████ years *after* Lamego departed. Dkt. 1703

7   at 15. They again identify nothing that links those changes to Lamego or the accused

8   black foam tests, and for good reason—there is no connection. 4/18 PM Tr. 70:24-71:7,

9   115:4-24, 116:19-118:24; 4/20 AM Tr.66:6-19.

10   **b.   No Possession/Particularity**. As drafted by Plaintiffs in November 2020,

11   L4 describes minimizing ████████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████" *See* Dkt. 1738-2 at 6.

14   Plaintiffs never tried to alter L4 despite seeking (and receiving) leave to amend other

15   ATS. *See* Dkt. 669 at 4-6. And Plaintiffs' lead counsel embraced this Court's special

16   instruction that the ATS descriptions included in the jurors' notebooks are "the

17   controlling definitions." Dkt. 1715 at 27; *see* 4/12 PM Tr. 116:20-21 ("We would love

18   it if this was read every day").

19   At trial, Plaintiffs offered *no* evidence that they possessed the ████████████

20   ████████████████████████ portion of L4. *See* 4/12 AM Tr. 86-87

21   (Madisetti confirming L4 requires "████████████████████████████████

22   ████████████████████████"). Madisetti had not disclosed an opinion

23   on that issue and was precluded from offering one at trial. *See* 4/11 PM Tr. 5:17-7:20;

24   4/12 PM Tr. 15:8-16:5. And as Warren explained without rebuttal, the only evidence

25   Plaintiffs presented regarding ████████████████ was "not relevant to" ████

26   ████████ 4/20 PM Tr. 31:6-32:19, 44:3-19; *see also* PDX8-87 (citing JTX-935,

27   JTX-827 for reference to ████████████, but without connection to L4 ████

28   ████ testing).

1    Plaintiffs cannot establish misappropriation based on partial possession of L4,

2    and a plaintiff cannot unilaterally modify the trade secret definition after the close of

3    discovery. *Pixion, Inc. v. PlaceWare Inc.*, 421 F. Supp. 2d 1233, 1241-1242 (N.D.

4    Cal. 2005) (rejecting attempt to provide "further 'details'" regarding trade secret

5    definitions in summary judgment opposition); *see also* Dkt. 904 at 3 ("If new legal

6    theories are raised after the close of discovery, they may not be allowed at … trial.").

7    Indeed, the Court instructed the jury—at Plaintiffs' insistence—that "[e]ach [ATS]

8    must be analyzed *as a whole*."  *See* Dkt. 1517 at 33; *see also* Dkt. 1500-1 at 100, 126

9    (Plaintiffs' proposed instructions).[3]  Plaintiffs' conduct was particularly improper

10   because they used their original broad definition of L4 as a sword when it was

11   advantageous.  For example, Madisetti testified that Apple had "not shown that [the

12   elements of L4] are generally known" because, *inter alia*, Apple had not demonstrated

13   that L4's ██████ element was generally known.  4/12 PM Tr. 17:6-20:1; PDX2 at 35-

14   36; see also 4/12 AM Tr. 86:22-87:20 (Madisetti highlighting the ██████ element in

15   describing L4).

16   Relatedly, Plaintiffs failed to define L4 with sufficient particularity.  As

17   Plaintiffs concede, whether an ATS is stated with sufficient particularity is a question

18   of fact a jury can resolve.  *See* Dkt. 1703 at 8-9; Dkt. 1732-1 at 5; *see also InteliClear,*

19   *LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) (holding "a jury

20   properly instructed can make the determination" whether "at least one trade secret

21   [was identified] with sufficient particularity"); *Syntel Sterling v. Trizetto*, -- F.4th --,

22   2023 WL 3636674, at *5-7 (2d Cir. May 25, 2023) (holding particularity is question of

23   fact for jury).  At a minimum, this Court can resolve the issue under Rule 50.  *Olaplex,*

---

[3] Plaintiffs' only contrary authority is this Court's *True Wearables* decision, which did not address the substance of Apple's arguments here.  Not only did Plaintiffs waive the right to advance a similar position here by insisting that each ATS "must be analyzed as a whole," but this Court clarified in its Rule 50(a) decision that "an alleged trade secret[] cannot evolve during trial," Dkt. 1724 at 6 n.2.

*Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 712 (Fed. Cir. 2021) (granting JMOL on particularity).

Here, Plaintiffs defined L4 to include alternative ways of ████████████ ████████████████████," but at trial their expert and attorneys impermissibly asserted they were only pursuing one. 4/12 AM 86:22-87:20; 4/20 PM Tr. 31:6-17. This disconnect between L4's definition and Plaintiffs' trial presentation renders L4 fundamentally ambiguous—i.e., no reasonable jury could determine whether L4 encompasses both ████████████████████████████ ████████████████████████ (in which case Plaintiffs would only have to prove those two alternatives taken together were not generally known) or just the "████████████████████████" element (in which case Plaintiffs would have to prove that basic concept was not generally known).[4]

**c.    Generally Known.** L4 (as narrowed by Plaintiffs) and the Petersen patent involve the same test—i.e., ████████████████████████ ████████████████████. 4/20 AM Tr. 49:9-55:21; JTX-3778; 4/6 PM Tr. 95:3-12; P-0162. Petersen also taught ████████████████████ ██████, as do other references like the Webster textbook. *E.g.*, 4/20 AM Tr. 55-59; 4/20 PM Tr. 45:9-23; JTX-3778 at 20; JTX-3887 at 79. Madisetti's conclusory and unsupported claim that Petersen's suggested changes to physical characteristics can only "████████████████████ (Dkt. 1703 at 15) is insufficient to avoid JMOL. *Emazing Lights, LLC v. Ramiro Montes de Oca*, 2016 WL 3475330, at *3 (C.D. Cal. May 3, 2016). Plaintiffs published numerous patents that publicly discussed L4, and confirm that Plaintiffs failed to take reasonable efforts to protect L4's secrecy. *E.g.*,

---

[4] Apple respectfully submits that this Court's suggestion in its Rule 50(a) order that a dispute over the particularity of the ATS "go[es] to weight, not admissibility," Dkt. 1724 at 4, is irreconcilable with *Inteliclear*.

4/20 AM Tr. 36, 60:4-62:9; 4/7 Tr. 40:12-41:18, 94-95; 4/10 Tr. 53:20-57:13 (Scruggs); JTX-1207; JTX-3879; JTX-3707; JTX-3694.

Plaintiffs' evidence was also insufficient because Madisetti did not conduct any "survey of literature or other research" into what was known or not known. *Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416-417 (N.D. Cal. 1999). Plaintiffs have attempted to distinguish *Atmel* because "Madisetti reviewed numerous documents" (i.e., references *Apple*'s experts identified), Dkt. 1703 at 10 n.2, but that is precisely what *Atmel* found insufficient—i.e., "wait[ing to] see if the opposition came up with literature" and then "address[ing] … those references," *compare id.* at 413-414 *with* 4/12 PM Tr. 17:13-18:1.

## 2. L5 – The Short Circuit

Plaintiffs used L5 to accuse a single short circuit within the millions of electronic circuits within Apple Watch. L5's language merely recites knowledge of a problem that ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████ Dkt. 1483 at 30. At trial, Plaintiffs neither demonstrated that Apple used the specific solution Plaintiffs possessed (and that Lamego supposedly shared) nor established Apple was even trying to address the "████████████ ███████" problem. Rather, undisputed testimony confirmed Apple Watch never had such a problem. Again, no reasonable jury could have found liability.

**a. No Misappropriation.** No reasonable jury could find Apple used L5 based on a *rejected* proposal from Lamego suggesting a "████████████████." 4/12 PM Tr. 24:21-25:1. That ████████████ proposal is different from the particular solution Plaintiffs possessed (███████████████████████████████████) and was never implemented by Apple. 4/18 PM Tr. 80:21-84:8; 4/19 AM Tr. 20:4-24:14; 4/20 AM Tr. 82:8-87:1; JTX-181 at 36; JTX-184 (resolving Lamego's suggestion with "Not gonna happen" and "Nope"). Apple rejected Lamego's suggestion precisely because Apple did not have the problem of ████████████████. Thus, Apple

implemented a ***different solution*** (█████████████) from that which Plaintiffs possessed, to avoid the entirely ***different problem*** of ████████████████████. 4/18 PM Tr. 84-86; 4/19 AM Tr. 24; 4/20 AM Tr. 78-82; JTX-181 at 36 (documenting Apple's ████████████████████████); JTX-182 at 45; JTX-183 at 59; JTX-186 at 15.[5]

   **b.     No Possession/Particularity.**  As with L4, Plaintiffs made the strategic decision to draft L5 broadly, made no attempt to amend it before trial, and endorsed this Court's special instruction that their prior definition was "controlling."  *See supra* p. 4.  L5 as drafted covers every possible means of "███████████████ ████████████████████"  (As noted above, the Apple Watch has not had that problem, and thus Apple has not implemented *any* means for addressing that problem.)  Even Plaintiffs' lead counsel argued that "[h]ow you do it, what specific way you" solve the problem L5 describes does not matter—according to Plaintiffs, any solution would constitute misappropriation.  4/26 PM Tr. 84; *see also* 4/20 PM Tr. 20:19-21:1 ("[N]o specific solution is listed.").  And yet, Plaintiffs' own expert conceded that Plaintiffs had developed, at most, a finite number of solutions to that problem—though, as explained above, Plaintiffs corroborated only one.  *See* 4/13 AM Tr. 57 ("one of several solutions"); *id.* 69 ("many different solutions").  Accordingly, Plaintiffs have not established possession of L5.

   Similarly, Plaintiffs' attempt to claim all solutions to a particular problem rather than the one (or at best, handful) they adopted means L5 is not defined with sufficient particularity.  *See supra* pp. 5-6.  Plaintiffs cannot permissibly "claim[] broad swaths of solutions to general competing considerations … rather than the" solution (or handful of solutions) they adopted.  *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017).

---

[5] Madisetti's attempts to equate a ████████████████████ ████████████████████ are conclusory and thus insufficient to avoid JMOL.  *Telemac Cellular v. Topp Telecom*, 247 F.3d 1316, 1329 (Fed. Cir. 2001).

c.      **Generally Known.**  Not only did Madisetti fail to conduct the inquiry required by *Atmel*, but the Mims reference showing ████████████████ has been generally known since 1973 and ████████████████████████████ ██████—i.e., the same configuration Plaintiffs later used.  4/20 AM Tr. 88:16-89:10; JTX-3808 at 118-119, Fig. 5-13.7.  The Roedel article from 1979 similarly shows ████████████████████████████████████████████ 4/20 AM Tr. 89:23-91:7; JTX-4232.  And the Webster textbook confirms that it was generally known ███████████████████████████████ 4/20 AM Tr. 89:11-92:14; JTX-3887 at 60.  Plaintiffs' own patents confirm the same.  4/20 AM Tr. 92:15-95:15; JTX-3003 at 16:40-44, Fig. 8.

### 3.      D1, D3, and D10 – The Admittedly Unused Algorithms

It is undisputed both that Plaintiffs did not invent the "very, very" broad concept of demodulation and demultiplexing—which is used in, among other things, AM Radio, 4/7 Tr. 41-42 (Diab)—and that Apple rejected the demodulation approach Lamego proposed, 4/12 PM Tr. 98 (Madisetti); *see also* 4/19 AM Tr. 129-130 (Apple did "not see any benefit" to using Lamego's suggestions); 4/14 AM Tr. at 28-29 (Lamego's approach "burn[ed] too much power").

a.      **No Misappropriation.**  There is no evidence Lamego disclosed any of the demodulation ATS to Apple.  For example, Madisetti was unable to identify a single document where Lamego disclosed D1 and D3 to Apple.  *See* 4/12 PM Tr. 41-44, 54-56; *see also* 4/19 PM Tr. 64-67, 85-87.  Madisetti did not identify any passage in ██ ████████ that repeated D1 and D3 verbatim.  4/12 PM Tr. 45, 57 (█████████ ████████); *see also* 4/19 PM Tr. 67, 87-88 (Sarrafzadeh ███████████████ do not disclose D1, D3).  And although D10 matches the text of claim 1 of the '754 patent, even Madisetti has not claimed Plaintiffs wrote out D10 in the form that appears

in the jurors' notebooks before the '754 patent issued.  4/13 AM Tr. 65.[6]

Moreover, there is no misappropriation because Madisetti has conceded that "as of today," "***D1, D3, and D10 were not used, ever, in any Apple Watch***." 4/12 PM Tr. 98-99.  At most, Plaintiffs have suggested Apple employed the demodulation ATS to "▮▮▮▮▮▮▮ the demodulation technique that Apple does use. Dkt. 1703 at 20; *see also* 4/26 AM Tr. 82 (Plaintiffs' counsel arguing in closing only that the demodulation "advanc[ed] [Apple's] research").  Even if Plaintiffs had presented more than a scintilla of evidence in support of this theory (and they have not), this Court should limit any retrial on misappropriation to this single, narrow argument.

**b.      No Possession.**  For D1, Plaintiffs have not provided any concrete evidence they possessed "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Madisetti's initial explanation for why Plaintiffs possessed D1 did not mention the ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ limitation at all.  4/12 PM Tr. 34-41.  While Madisetti later made the passing statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 47-49, ▮▮▮ ▮▮▮▮▮▮, *see also* 4/19 PM Tr. 37-42 (Sarrafzadeh explaining why the materials identified by Madisetti did not show possession of this aspect of D1).  Plaintiffs have (without explanation) accused Apple of "ignor[ing] Madisetti's opinions" cited at 4/12 PM Tr. 34-41, but Apple discussed the same passage in its Rule 50(a) brief.  *Compare* Dkt. 1703 at 19 *with* Dkt. 1705 at 17.  Plaintiffs have also argued that Poeze's testimony establishes possession, Dkt. 1703 at 19, but Poeze stated he had never read the ATS, 4/7 Tr. 88; he thus logically cannot speak to possession.

Similarly, Plaintiffs failed to establish possession of D3 because they did not present any evidence that they possessed the ▮▮▮▮▮▮▮▮▮ step.  4/19 PM Tr. 71-73.  While Plaintiffs have pointed to a single entry in Poeze's notebook that references a

---

[6] Plaintiffs are wrong that JTX-161 and JTX-154 disclose (respectively) the entirety of D1 and D3.  *See* Dkt. 1703 at 19.  JTX-161 does not show D1's "▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" limitation, nor did Madisetti testify it did, 4/12 PM Tr. 43:6-18.  JTX-154 does not show D3's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" step; again, Madisetti's testimony does not cover the issue.  4/12 PM Tr. 56:9-23.

█████████████ Madisetti did not explain why this was the equivalent to the ███████████ step, 4/12 PM Tr. 51-53, and Poeze could not, since he never read D3.

Finally, no reasonable jury could find Plaintiffs possessed D10 because Madisetti (Plaintiffs' only witness on the issue) failed to address whether Plaintiffs possessed Steps 8 and 9 of D10. *See* 4/12 PM Tr. 66-67 (Plaintiffs' counsel asking Madisetti to "explain your analysis of Steps 7, 8, and 9," but Madisetti only explaining Step 7); *see also* 4/19 PM Tr. 90-91 (Sarrafzadeh noting Madisetti had failed to address Steps 8 and 9). While Plaintiffs have argued that Madisetti's testimony on *other* aspects of D10 shows possession on Steps 8 and 9, they identify nothing in the trial record where any witness or attorney took that position. Dkt. 1703 at 19.

**c.     Generally Known.** Again, Plaintiffs have not met their burden on this element because Madisetti did not perform the independent literature survey *Atmel* requires. *See supra* p. 7. While Madisetti relied on an email from Lamego in 2005 indicating (in Madisetti's words) that D1 was "████████" the cited email does not include the full D1. 4/12 PM Tr. 47; JTX-828. Apple's expert—who did conduct a full investigation—testified D1 was generally known. *See* 4/19 PM Tr. 44-62; *see also* JTX-3581; JTX-3668; JTX-3671; JTX-3584; JTX-3582.

### 4.     VIA – The Nebulous Catchall

Because Plaintiffs cannot establish liability for the ATS discussed above, the VIA ATS—which merely appends the words "value, importance, and appropriateness" to the other ATS—cannot stand. *See* Dkt. 1724 at 11.

Moreover, no reasonable jury could have found that the indefinite, "catchall" VIA was stated with sufficient particularity. *InteliClear,* 978 F.3d at 658. Neither Plaintiffs' counsel nor Madisetti has provided any details about what "value, importance, and appropriateness" mean. Even in closing, Plaintiffs simply reordered the words. *See* 4/26 AM Tr. 93 ("[T]he fact that Masimo valued the importance and the appropriateness was in and of itself good information to have.").

Finally, Madisetti's five minutes of testimony reading from slides on VIA was

insufficient to carry Plaintiffs' burden, as he did not provide any specific testimony establishing that Plaintiffs possessed VIA (as it relates to the technical ATS) or that VIA was not generally known.  4/12 PM Tr. 72:15-75:13.  Even Plaintiffs concede that Madisetti's misappropriation testimony boiled down to the assertion that Apple "us[ed] the technical trade secrets to develop the Apple Watch."  Dkt. 1703 at 21.  That conclusory statement could only support misappropriation of the underlying technical ATS; it says nothing about VIA.

## B.    Plaintiffs Have Not Established Unjust Enrichment

No reasonable juror could have credited Plaintiffs' sole theory for monetary relief, which was that Plaintiffs were entitled to the total profits of the Blood Oxygen feature used in Apple Watch Series 6 and 7.  *See* 4/13 AM Tr. 74-75, 108.[7]  This is because Plaintiffs failed to connect Apple's purported misappropriation of the ATS to Blood Oxygen in any way.  Accordingly, Plaintiffs neither established that the supposed misappropriation "was a substantial factor in causing Apple to be unjustly enriched" nor that Apple would "not have achieved" *all* profits attributed to the Blood Oxygen feature "except for its misappropriation" of one or more of the ATS.  *See* Dkt. 1715 at 26, 48 (Instructions Nos. 19 and 38); *see also Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal.App.4th 1295, 1305 (2010) (Plaintiffs must provide "some reasonable basis for the computation" of value of ATS).

***First***, no witness even attempted to link Blood Oxygen to any ATS, despite Plaintiffs' promise to this Court to "'present evidence from which a reasonable jury could conclude that Apple used [Plaintiffs'] technical trade secrets in developing the blood-oxygen feature.'"  *See* Dkt. 1283 at 10-11.  Plaintiffs' damages expert did not discuss *any* ATS during his direct and re-direct examinations.  Kinrich merely informed the jury that he valued Blood Oxygen at $1.85 billion based on 2020-2022 Watch sales

---

[7] Plaintiffs have not presented any evidence establishing they are entitled to monetary relief for Apple's purported acquisition or disclosure of the ATS.  *See* Dkt. 1676 at 9-10, 12.

Wilmer Cutler Pickering Hale and Dorr LLP

by comparing Series 6 and 7 (which had the feature) with Series SE (which did not). 4/13 AM Tr. 80, 105-106, 110.  He certainly did not explain why *each* of the ATS is independently worth $1.85 billion.  *See id.* 130:6-8 (Kinrich conceding he did "not apportion to the value of any specific alleged trade secrets").  Kinrich's one-for-all approach confirms his calculation—and Plaintiffs' request for monetary relief—is untethered from any benefit allegedly flowing from the ATS themselves (and that his testimony should not have survived *Daubert*, *see* Dkt. 1171 at 18-21; Dkt. 1626).[8]

In contrast, Apple's expert provided unrebutted testimony that no record evidence connected Apple's purported use of the technical ATS (and VIA) to the value of the Blood Oxygen feature.  *See* 4/25 Tr. 23; *see also id.* 25-26 ("I'm not aware of any testimony or evidence presented here that show[s] a causal link between the gross profits for blood oxygen … and those alleged trade secrets.").

For the demodulation ATS, Madisetti admitted that "D1, D3, and D10 *were not used, ever, in any Apple Watch*." 4/12 PM Tr. 98:25-99:2.  Even accepting Madisetti's assertion that Apple derived a benefit from the demodulation ATS because Apple learned about a supposed flaw in the algorithm Apple does use, he made no attempt to connect that benefit to the Blood Oxygen feature.  And for good reason.  The emails Plaintiffs rely upon to show a supposed benefit are from 2014, *six years* before Series 6 and Blood Oxygen came on the market.  *Compare* Dkt. 1703 at 20 *with* JTX-153 (3/17/14 email) *and* JTX-273 (same).[9]

With regards to L4 and L5, every iteration of Apple Watch from Series 1 to Series 7—*including* the SE series—used both L4 and L5.  *See* 4/25 Tr. 38-43 (Webster).  It is thus impossible to measure any value added to Watch by L4 and L5 by comparing the

---

[8] Plaintiffs have conceded that—with the business ATS out of the case—the evidence does not support more than $1.85B in damages.  4/26 PM Tr. 85.

[9] Moreover, no reasonable jury could award damages on D10 because it was "***not a trade secret anymore***" after the '754 patent published **in March 2019**—more than a year before the Series 6 went on sale.  *See* 4/6 AM Tr. 110-111; *Kewanee*, 416 U.S. at 484 ("By definition, a trade secret has not been placed in the public domain."); *see also* 4/11 PM Tr. 8:10-19 (that D10 is no longer a secret "is established by the record").

SE Series to Series 6 and 7.

For example, Madisetti testified that "███████████████████████████████████ ████████████████████████████████ 4/12 PM Tr. 13-15. Plaintiffs' only alleged evidence regarding the value of L4 in Series 6 and 7 is Madisetti's statement that the "███████████████████████████████" when pulse oximetry is introduced. 4/12 PM Tr. 14. But such general, "conclusory testimony" is insufficient to avoid JMOL. *E.g.*, Dkt. 1724 at 6 n.2. In any event, Plaintiffs failed to show any connection between the accused changes in the Series 6 and the accused testing procedures. *See supra* pp. 2-4.

As to L5, Plaintiffs offered *no* evidence how the accused short circuit (which has been in place since Series 1) benefits Blood Oxygen (which was first introduced in Series 6). 4/18 AM Tr. 87-88; JTX-3176. Block provided unrebutted testimony that Apple's use of the short circuit did not provide a performance benefit; it was simply a belt-and-suspenders feature. 4/19AM Tr. 24; *see also* 4/20AM Tr. 84. And while Madisetti claimed that Apple identified L5 ████████████████, that statement had nothing to do with Blood Oxygen—it was made months before development of that feature. *Compare* JTX-0185 *with* 4/18 PM Tr. 69, 70-71, 97. In any event, Lamego's specific proposal (████████████) was never implemented.

**Second**, Plaintiffs' $1.85 billion request is irreconcilable with their closing argument that Blood Oxygen is a "dangerous toy" and that Apple has "many more years to go before they can actually do a true monitoring device on the wrist," 4/26 AM Tr. 95. Kinrich arrived at his conclusion that Blood Oxygen was worth $1.85B only by (admittedly) ignoring the myriad other differences between the Series 6 and 7 and SE models beyond Blood Oxygen, ECG, and retina display—i.e., giving those differences "zero value." *See* 4/13 AM Tr. 116-118, 131; *but see* 4/25 Tr. 28-30 (Series 6 used *inter alia* "a faster processor chip" and "more high quality" materials for cases and Series 7 was "faster charging" and had "stronger durability"). Had Kinrich appropriately accounted for those differences and corrected for other errors in his analysis, Blood

1   Oxygen was at most worth $34.1 million.  4/25 Tr. 33-37.[10]

2   **C.**      **No Reasonable Jury Could Find In Plaintiffs' Favor On The**

3            **Remaining Issues**

4          **1.      Plaintiffs' trade secret claim is time-barred**

5          **a.**      The statute of limitations began to run for all related ATS as soon as

6   Plaintiffs could discover that Apple misappropriated a single one.  *MedioStream, Inc. v.*

7   *Microsoft Corp.*, 869 F.Supp.2d 1095, 1110 (N.D. Cal. 2012) (collecting cases).  No

8   reasonable jury could adopt Plaintiffs' unsupported assertion that the technical ATS are

9   unrelated to each other.  *See* Dkt. 1703 at 22.  Rather, the remaining ATS "concern

10   similar technology developed for use in similar products"—a wearable device that

11   measures pulse oximetry.  *See MedioStream*, 869 F.Supp.2d at 1110; *see also* Dkt. 1646

12   at 9, 11 (Plaintiffs arguing that each technical ATS is part of a group of "several

13   techniques" "critical to Masimo's … successfully developing its multi-wavelength-

14   noninvasive-blood-parameter device").  At a minimum, the technical ATS are connected

15   by the fact that Plaintiffs allege they were misappropriated through Lamego.  *See Glue-*

16   *Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1026 (2000).

17          **b.**      Apple indisputably proved that any purported misappropriation first

18   occurred before January 9, 2017.  *See Glue-Fold*, 82 Cal.App.4th at 1024.  Plaintiffs

19   allege that Apple acquired the technical ATS through Lamego, who only worked at

20   Apple in 2014.  *See, e.g.*, 4/12 AM Tr. 81-85; 4/14 AM Tr. 70.  Any misappropriation

21   must have started then.

22          **c.**      No reasonable jury could find Plaintiffs met their burden to prove that they

23   could not have discovered the purported misappropriation before 2017 "despite

24   reasonable diligence."  *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F.Supp.2d 997,

25   1003 (S.D. Cal. 2012).

26   _____

27   [10] Because the link between the $1.85B sought and Apple's purported unjust enrichment
     is non-existent, awarding anything more than a de minimis amount would be
28   unconstitutional as "grossly excessive."  *E.g., BMW of N. America, Inc. v. Gore*, 517
     U.S. 559, 568 (1996).

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs provided no evidence of "the time and manner of discovery." *Gabriel*, 857 F. Supp. 2d at 1003. Plaintiffs were precluded from relying on Kiani's testimony about his October 2019 communications with counsel. *See* 4/12 AM Tr. 16:6-11. Regardless, the inquiry is when *Masimo and Cercacor*—not a single corporate officer—discovered the supposed misappropriation.

More broadly, no reasonable jury could find Plaintiffs met their burden to prove that they lacked "reason to suspect… misappropriat[ion], … [under circumstances where] a reasonable investigation would produce facts sufficient to confirm this suspicion." Dkt. 606 at 3; *see also* Dkt. 1715 at 46. Here, Plaintiffs' January 2014 letter concerning Lamego's hiring can only reasonably be read as announcing their belief that Apple intended to misappropriate their ATS. *See* JTX-2937 ("It is difficult to imagine any reason for this sequence of events other than Apple … attempting to gain access to … Cercacor and Masimo's trade secrets.").

Plaintiffs' overt suspicion could have been confirmed before 2017 by reasonable investigation. For instance, when Kiani learned of Lamego's departure from Apple (supposedly because Apple wanted Lamego to "do something competitive to [Plaintiffs]," 4/5 PM Tr. 49), Plaintiffs should have investigated whether Lamego had misappropriated. Plaintiffs similarly should have inquired after Apple launched Watch Series 0 in 2015 or Series 1 and 2 in 2016, each of which had a heart rate sensor, *see* 4/12 AM Tr. 84, since those products implicated Apple's work on "the measurement of physiological information," and Plaintiffs' 2014 letter asserted that Apple must not "employ Lamego in [that] area," JTX-2937 at 2. In any event, had Plaintiffs simply monitored Apple's patent filings for contributions by Lamego, the '052 patent application's March 3, 2016 publication would have (under the standard laid out in Plaintiffs' 2014 letter) "confirm[ed] [their] suspicion (and justif[ied] bringing suit)." Dkt. 606 at 3. The '052 patent expressly disclosed that Lamego had worked on technology that Plaintiffs in 2014 had insisted would necessarily implicate their ATS. *See* JTX-1239 at 1, 8.

### 2. This Court should grant JMOL based on lack of requsite intent

CUTSA requires proof the defendant either (1) used "improper means to acquire knowledge of the trade secret" and used/disclosed the ATS without authorization or (2) knew or had reason to know its knowledge of the ATS was wrongfully acquired.  *See* Cal. Civ. Code § 3426.1(b)(1)-(2).

The only evidence introduced of a direct interaction between Apple and Plaintiffs was a meeting in May 2013, and Kiani has testified that Plaintiffs did not provide Apple with any trade secrets at that time.  *See* 4/6 AM Tr. 73; *see also* 4/13 PM Tr. 115; 4/14 AM Tr. 97-101; 4/18 PM Tr. 70:2-4.  Plaintiffs have also suggested that Apple acquired the purported secrets through "financial inducements, misrepresentation, or … inducement of a breach to maintain secrecy," but each theory requires proof that Apple had specific intent to injure or defraud Plaintiffs.  *See People v. Riley*, 240 Cal.App.4th 1152, 1160-1163 (2015) (commercial bribery); *Manderville v. PCG&S Grp., Inc.*, 146 Cal.App.4th 1486, 1498 (2007) (misrepresentation); *Little v. Amber Hotel Co.*, 202 Cal.App.4th 280, 291 (2011) (inducement).  The record is devoid of any such evidence.

As to whether Apple knew or should have known, Lamego confirmed that Apple expressly instructed him not to share Plaintiffs' confidential information ***and*** not to "bring that type of information" to Apple.  4/13 PM Tr. 74 (Lamego); *see also* JTX-3044 (agreement Lamego signed with Apple); 4/13 PM Tr. 76-77 (testimony on agreement).  Hotelling personally explained Apple's policy prohibiting the use of third-party intellectual property to Lamego; Hotelling did not "have any reason to believe that [Lamego] shared with Apple confidential Masimo or Cercacor information.  4/14 AM Tr. 21, 41.

In response, Plaintiffs relied on a handful of documents, but each one that specifically implicates Lamego was "written *before* Lamego began working at Apple," and thus before any misappropriation could logically begin.  Dkt. 606 at 6.  Plaintiffs have also cited materials showing Apple (1) thought highly of Plaintiffs' technology, (2) briefly considered forming a business relationship with Plaintiffs, and (3) hired or

considered hiring several of Plaintiffs' employees. *E.g.*, Dkt. 1703 at 2-3. But Plaintiffs were just two of many companies in the medical technology space that Apple met with in 2013. JTX-260 at -9120; JTX4360.1; 4/14 AM Tr. 94-96; 4/20 AM Tr. 10. And there is nothing improper with "recruiting or hiring employees from another company, including from a competitor." Dkt. 1715 at 43.

### 3.   Apple did not willfully and maliciously appropriate

Punitive damages are available only if Plaintiffs have proven by clear and convincing evidence that Apple *inter alia* acted at least despicably. Dkt. 1724 at 15-16. "Despicable conduct is conduct which is so vile and wretched that it would be looked down upon and despised by ordinary decent people." *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal.App.4th 21, 66 (2005). "Under the clear and convincing standard, Plaintiffs must present "significant probative evidence" to avoid JMOL; simply discrediting Apple's evidence is legally insufficient. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-257 (1986); *accord Ajaxo*, 135 Cal.App.4th at 66 (similar).[11]

While there is a dearth of evidence of "intent" in any event (as discussed above), Plaintiffs certainly have not identified anything that establishes Apple engaged in "vile and wretched" conduct. Dkt. 1703 at 27. The only allusions to willfulness or malice in Plaintiffs' closing concerned recruitment of Plaintiffs' employees. *See* 4/26 AM Tr. 69:13-20, 72:7-10; 4/26 PM Tr. 78:8-23. But again, recruiting from a competitor is lawful, not despicable. Dkt. 1715 at 43.

## II.   THE INVENTORSHIP AND OWNERSHIP CLAIMS FAIL AS A MATTER OF LAW

### A.   '052 and '670 patents.

No reasonable jury could find in favor of Plaintiffs' '052 and '670 inventorship arguments. *First*, to be a joint inventor, there "must have [been] some collaboration or

---

[11] Plaintiffs are wrong (Dkt. 1703 at 27) that *Ajaxo* did not require despicable conduct. *See* 135 Cal.App.4th at 67 (the jury reasonably "concluded that [the defendant's] prolonged course of thievery [wa]s" despicable). *Ajaxo* also involved extreme facts—i.e., the defendant "purposefully built and passed off as its own" stolen technology accessed from the plaintiff's computer system without authorization. *Id.*

joint effort." 4/26 Tr. AM 55:21-23; Dkt. 1715 at 51; *Falana v. Kent State Univ*., 669 F.3d 1349, 1358 (Fed. Cir. 2012).  But Plaintiffs have not argued the '052 and '670 patents stemmed from the alleged misappropriation in this case, and they presented zero evidence of joint effort between Mohamed Diab and any Apple engineers, 4/26 Tr. AM 55:24-56:6.   Trevor Ness provided unrebutted testimony that the named inventors conceived of the claimed inventions "at Apple," without any contribution from Diab. 4/19 AM Tr. 91:21-23, 92:20-23, 103:17-23.  Diab himself testified he has "no idea" whether he should be an inventor.  *See* 4/7 Tr. 14:5-15:8, 26:25-27:2, 31:2-4; 4/20 AM Tr. 99-100.

*Second*, as this Court instructed the jury, "if someone only explains … well-known concepts or the current state of the art, then he or she is not a joint inventor." 4/26 AM Tr. 56:10-12; Dkt. 1715 at 52; *accord Wagner v. Ashline*, 2021 WL 5353889, at *5 (Fed. Cir. Nov. 17, 2021).  But Plaintiffs' inventorship case rests solely on their citation to prior art.  *See* 4/6 PM Tr. 20:7-16, 96:10-21; 4/12 PM Tr. 79:9-82:19; JTX-777; JTX-1206; JTX-1207.

*Third*, the inventorship claims fail as a matter of law because Plaintiffs offered no evidence corroborating Diab's testimony he communicated the (prior art) idea of reflectivity to Lamego.  4/6 PM Tr. 87:23-88:4, 103:7-9; JTX-777 (no reference to Diab or Lamego); JTX-1207 (no reference to Diab); *Wagner*, 2021 WL 5353889 at *4-5 (affirming summary judgment where plaintiff "did not present sufficient evidence of corroboration").

Lamego did not co-invent the '052 and '670 patents while working for Plaintiffs. *See* 4/20 AM Tr. 100 (Warren).  Ness testified that work began on the '052 and '670 patents in "February of 2014" (after Lamego joined Apple), 4/19 AM Tr. 96:8-99:14; JTX-40, and Lamego's contribution was the idea of applying "reflectivity *on the back of the Apple Watch*," 4/19 AM Tr. 95:3-19.  Lamego logically could not have begun his inventive work on the unreleased Apple Watch until joining Apple.  4/13 PM Tr. 64:19-65:2; 99:3-5.

**B.    '754 patent.**

No reasonable jury could find in favor of Plaintiffs' '754 inventorship claim. ***First***, Poeze testified he did not teach Lamego the ideas claimed in the '754 patent and thus did not contribute to the invention as a matter of law.  4/7 Tr. 103:9-18, 108:23-110:8, 116; *Wagner*, 2021 WL 5353889, at \*5 (evidence that "[A] assisted [B] is not evidence that [B] assisted [A]").  ***Second***, Plaintiffs failed to show "collaboration or joint effort" between Poeze and Apple, 4/26 Tr. AM 55:21-23, *i.e.*, "'some open line of communication during or in temporal proximity to their inventive efforts,'" *Falana*, 669 F.3d at 1358  (citation omitted).  In particular, there was no evidence Poeze collaborated with Lamego when Lamego was working on the '754 patent at Apple.  ***Third***, Plaintiffs did not point to any evidence corroborating Poeze's inventorship claim beyond his notebook, which do not actually disclose any '754 patent claim.  *Wagner*, 2021 WL 5353889, at \*4-5 (requiring corroboration); *see also* 4/19 PM Tr. 91:5-92:1, 95:6-97:16.[12]

Plaintiffs' ownership claim is also unavailing because Hotelling's testimony established the work leading to the '754 patent was performed at Apple.  *See* 4/14 AM Tr. 34:3- 35:4; *id.* at 25:20-28:21; JTX-880.  Plaintiffs presented no contrary evidence. 4/19 PM Tr. 95:6-97:16.

**C.    '095 and '390 patents.**

No reasonable jury could find in favor of Plaintiffs' '095 and '390 inventorship claims.  Plaintiffs once again rely on Diab's prior art patent and patent publication to support co-inventorship.  4/19 PM Tr. 97-100; *see also* JTX-1267 ('272 patent); JTX-1206 ('924 publication).  But those publications only establish Diab contributed to the prior art; they cannot, as the Court correctly instructed, support a co-inventorship claim. 4/26 AM Tr. 56:10-12; *accord Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361 (Fed. Cir. 2004).  Regardless, no evidence shows that Diab collaborated with the named

---

[12] That no reasonable jury could find Poeze co-invented the '754 patent means no reasonable jury could find Plaintiffs possessed D10.  *See supra* p. 11.

inventors "during or in temporal proximity" to their work at Apple, *Falana*, 669 F.3d at 1358.  Diab himself conceded he has "no idea if [he] should be a named inventor." 4/7 Tr. 31, 32.

Plaintiffs' ownership claims fare no better.  Hotelling testified, without contradiction, that the work leading to the '095 and '390 patents was performed at Apple. 4/14 AM Tr. 33, 17-23; *id.* at 25-28, 22-24; JTX-880; JTX-3657; *see also* 4/19 PM Tr. 97-100 (Sarrafzadeh confirming no evidence of invention at Plaintiffs).

Dated: May 30, 2023                    Respectfully submitted,

                                       JOSEPH J. MUELLER
                                       MARK D. SELWYN
                                       AMY K. WIGMORE
                                       JOSHUA H. LERNER
                                       SARAH R. FRAZIER
                                       NORA Q.E. PASSAMANECK
                                       THOMAS G. SPRANKLING
                                       WILMER CUTLER PICKERING HALE AND
                                       DORR LLP

                                       BRIAN A. ROSENTHAL
                                       GIBSON, DUNN & CRUTCHER LLP

                                       KENNETH G. PARKER
                                       HAYNES AND BOONE, LLP

                                       By:  /s/ Mark D. Selwyn
                                            Mark D. Selwyn

                                       *Attorneys for Defendant Apple Inc.*

1

## **CERTIFICATE OF COMPLIANCE**

2       The undersigned, counsel of record for Defendant Apple Inc. certifies that this

3  brief contains 6,997 words, which:

4       __X__  complies with the word limit of L.R. 11-6.1

5       __ complies with a court order.

6

7  Dated:  May 30, 2023          Respectfully submitted,

8

9                 MARK D. SELWYN

10              AMY K. WIGMORE
                 JOSHUA H. LERNER

11              SARAH R. FRAZIER
                 NORA Q.E. PASSAMANECK

12              THOMAS G. SPRANKLING

13              WILMER CUTLER PICKERING HALE AND
                 DORR LLP

14

15              BRIAN A. ROSENTHAL
                 GIBSON, DUNN & CRUTCHER LLP

16

17              KENNETH G. PARKER
                 HAYNES AND BOONE, LLP

18

19

20              By:  /s/ Mark D. Selwyn

21                    Mark D. Selwyn

22

23              *Attorneys for Defendant Apple Inc.*

24

25

26

27

28