1  MARK D. SELWYN, SBN 244180
    mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
    thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
    HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
    joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
    HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
     amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
     HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16                  **UNITED STATES DISTRICT COURT**
17       **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18  MASIMO CORPORATION,
    a Delaware corporation; and

19  CERCACOR LABORATORIES, INC.,
    a Delaware corporation,

20                              Plaintiffs,

21         v.

22  APPLE INC.,
    a California corporation,

23

24                              Defendant.

25

26

27

28

| | |
|---|---|
| CASE NO. 8:20-cv-00048-JVS (JDEx) | |

**APPLE'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)**

Hearing: July 24, 2023

Time: 1:30pm

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

APPLE'S MEM. ISO ITS RENEWED MOT. FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50(B)
CASE NO. 8:20-cv-00048-JVS (JDEx)

# TABLE OF CONTENTS

Argument ................................................................................................ 1

I.    PLAINTIFFS' MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW ............... 2

    A.    Plaintiffs' Remaining ATS Do Not Qualify As Trade Secrets Under CUTSA And, In Any Event, Were Not Misappropriated .......................... 2

        1.    L4 – The Black Foam Test ...................................................... 2

        2.    L5 – The Short Circuit ............................................................ 7

        3.    D1, D3, and D10 – The Admittedly Unused Algorithms ............... 9

        4.    VIA – The Nebulous Catchall ................................................ 11

    B.    Plaintiffs Have Not Established Unjust Enrichment .............................. 12

    C.    No Reasonable Jury Could Find In Plaintiffs' Favor On The Remaining Issues ...................................................................... 15

        1.    Plaintiffs' trade secret claim is time-barred ................................ 15

        2.    This Court should grant JMOL based on lack of requsite intent ................................................................................ 17

        3.    Apple did not willfully and maliciously appropriate .................... 18

II.   THE INVENTORSHIP AND OWNERSHIP CLAIMS FAIL AS A MATTER OF LAW .......... 18

    A.    '052 and '670 patents. ................................................................ 18

    B.    '754 patent. .............................................................................. 20

    C.    '095 and '390 patents. ................................................................ 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajaxo Inc. v. E\*Trade Fin. Corp.*,
  187 Cal.App.4th 1295 (2010) .................................................................. 12

*Ajaxo Inc. v. E\*Trade Grp. Inc.*,
  135 Cal.App.4th 21 (2005) ...................................................................... 18

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ................................................................................. 18

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  189 F.R.D. 410 (N.D. Cal. 1999) ...................................................... 7, 9, 11

*BMW of N. America, Inc. v. Gore*,
  517 U.S. 559 (1996) ................................................................................. 15

*Broadcom Corp. v. Emulex Corp.*,
  732 F.3d 1325 (Fed. Cir. 2013) ................................................................. 1

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) ............................................................... 20

*Elliott v. Versa CIC, L.P.*,
  2019 WL 414499 (S.D. Cal. Feb. 1, 2019) ............................................ 1, 2

*Emazing Lights, LLC v. Ramiro Montes de Oca*,
  2016 WL 3475330 (C.D. Cal. May 3, 2016) .............................................. 6

*Falana v. Kent State Univ.*,
  669 F.3d 1349 (Fed. Cir. 2012) ..................................................... 19, 20, 21

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
  857 F.Supp.2d 997 (S.D. Cal. 2012) .................................................. 15, 16

*Glue-Fold, Inc. v. Slautterback Corp.*,
  82 Cal.App.4th 1018 (2000) .................................................................... 15

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) .............................................................. 5, 11

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)...................................................................................2, 13

*Little v. Amber Hotel Co.*,
    202 Cal.App.4th 280 (2011) ...............................................................17

*Manderville v. PCG&S Grp., Inc.*,
    146 Cal.App.4th 1486 (2007) .............................................................17

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F.Supp.2d 1095 (N.D. Cal. 2012).................................................15

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
    855 F. App'x 701 (Fed. Cir. 2021) .......................................................5

*Pixion, Inc. v. PlaceWare Inc.*,
    421 F. Supp. 2d 1233 (N.D. Cal. 2005)................................................5

*People v. Riley*,
    240 Cal.App.4th 1152 (2015) .............................................................17

*Sargent Fletcher v. Able Corp.*,
    110 Cal.App.4th 1658 (2003) ...............................................................3

*Syntel Sterling v. Trizetto*,
    -- F.4th --, 2023 WL 3636674 (2d Cir. May 25, 2023) ........................5

*Telemac Cellular v. Topp Telecom*,
    247 F.3d 1316 (Fed. Cir. 2001) ............................................................8

*Wagner v. Ashline*,
    2021 WL 5353889 (Fed. Cir. Nov. 17, 2021) ...............................19, 20

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017)......................................8

**Statutes**

Cal. Civ. Code § 3426.1(b) ......................................................................17

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S MEM. ISO ITS RENEWED MOT. FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50(B)
iii          CASE NO. 8:20-cv-00048-JVS (JDEx)

After years of discovery, the misappropriation case Plaintiffs presented at trial boiled down to (1) a piece of black foam long used in the industry in the same way as Apple has; (2) a short circuit familiar to any electrical engineer; and (3) a modulation proposal Apple never implemented because it was incredibly impractical.  After four days of deliberation, six of the seven jurors would have found in Apple's favor on all the alleged trade secrets (ATS) remaining after this Court granted JMOL on the others. Dkt. 1716.  No reasonable juror could have found otherwise: the black foam, short circuit, and rejected modulation proposal are simply not trade secrets, were not misappropriated, and do not remotely support any monetary relief, much less a ten-digit unjust enrichment demand.  Another trial would simply waste the Court's resources.

Plaintiffs' attempts to claim ownership of Apple's patents fare no better.  Plaintiffs presented zero evidence of any collaboration or joint effort between the named inventors and the claimed missing inventors.  Even the supposed missing inventors do not describe themselves as inventors—one has not read the patents and the other testified *he* was in fact taught the disputed information by the current named inventor.

Apple accordingly respectfully requests JMOL on liability and damages.[1]

## ARGUMENT

"Notwithstanding the jury's failure to reach a verdict, … a renewed motion for judgment as a matter of law under Rule 50(b) is appropriate and may be granted." *Elliott v. Versa CIC, L.P.*, 2019 WL 414499, at *5-6 (S.D. Cal. Feb. 1, 2019) (granting defendants' JMOL motion after jury "deadlocked … 6-1 in favor of Defendants"); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1331, 1339 (Fed. Cir. 2013) (affirming this Court's post-hung-jury JMOL grant on obviousness and infringement). The ultimate question is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Elliott*, 2019 WL 414499, at *5.  "[T]he mere

---

[1] Emphasis added except where noted.  Given this Court's Rule 50(a) decision dismissing the business ATS, Apple discusses only the issues that apply to the technical ATS.  In the unlikely event Plaintiffs' pending motion for reconsideration is granted, Apple reserves the right to file a supplemental brief regarding the business ATS.

existence of some alleged factual dispute between the parties or a 'scintilla of evidence' will not defeat a properly supported motion." *Id.*

## I.    PLAINTIFFS' MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW[2]

### A.    <u>Plaintiffs' Remaining ATS Do Not Qualify As Trade Secrets Under CUTSA And, In Any Event, Were Not Misappropriated</u>

#### 1.    **L4 – The Black Foam Test**

At trial, Plaintiffs' L4 claim concerned using black foam in one quality-control step within the complex process of manufacturing Apple Watch. Plaintiffs' expert asserted that Apple misappropriated L4 by purportedly adopting Lamego's suggestion to ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ 4/12 PM Tr. 11:20-12:20. There is no evidence Lamego actually suggested this. And there was, indisputably, nothing new or unusual about Apple's use of black foam in this manner: it had been used in the same way for years by Apple and others in the industry. No reasonable jury could have found liability.

**a.    No Misappropriation.** It is undisputed that Apple was already using a ████████████████████████████ in Apple Watch *in 2013*—months *before* Lamego joined. 4/18 PM Tr. 108:20-114:18 (Block); 4/19 AM Tr. 48:5-17, 61:13-62:21 (Block); 4/20 AM Tr. 62:19-67:13 (Warren); 4/12 PM Tr. 11:15-12:1 (Madisetti); JTX-1061. Plaintiffs thus cannot show Apple acquired L4 through improper means because Apple independently developed a method for testing for ████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████

---

[2] Plaintiffs' attempt to wield CUTSA to prevent use of information disclosed to the public in a patent (D10) or claim control over solutions they do not possess (L5) demonstrates their overreach. If the law were as Plaintiffs suggests, the Court would need to consider whether such expansive trade secret protection violates the Constitution. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479-493 (1974).

Wilmer Cutler
Pickering Hale
and Dorr LLP

1 ██████████" *See Sargent Fletcher v. Able Corp.*, 110 Cal.App.4th 1658, 1666-

2 1669, 1675 (2003) (plaintiff has burden to disprove independent development).

3     Unable to dispute this point, Plaintiffs attempted at trial to narrow L4 to a *specific*

4 test procedure that requires using "█████████████" *E.g.*, Dkt. 1703 at 15.  Such

5 an eleventh-hour rewrite is impermissible. *See infra* pp. 4-6.  But even under Plaintiffs'

6 narrower definition, no reasonable jury could find Apple misappropriated a "███

7 ████████ test.  As an Apple engineer confirmed, Apple's *2013* version of the test was

8 designed to ████████████████████████████████████████████

9 ████████     4/18PM Tr. 111-112 (Block).   And Plaintiffs offered no evidence that

10 Lamego was involved in Apple's decision to ███████████.  The sole document

11 Plaintiffs cite regarding this change to the test procedure—JTX-1063—is an email to 39

12 Apple employees (including Lamego), which contains no indication Lamego

13 contributed to the attached presentation or specific change Plaintiffs accused, *id.* at -859.

14 To the contrary, Block and Land each confirmed Lamego had nothing to do with that

15 decision.  4/18 PM Tr. 77:22-78:11, 113:24-114:1; *see also* 4/20 AM Tr.62:19-66:5

16 (Warren).  Plaintiffs called Lamego as a witness, yet did not ask him a single question

17 on the subject—in tacit recognition of the disconnect between Lamego and black foam.

18     Because Plaintiffs do not have a shred of evidence connecting Lamego to the

19 accused test, they are reduced to arguing that Lamego "disclosed" L4 to Apple based on

20 one document containing the phrase "Photodiode Shielding." JTX-143.  But photodiode

21 shielding involves protection against electromagnetic interference; it has nothing to do

22 with ████████.  4/18 PM Tr. 80:6-19 (Land); 4/20 AM Tr. 65:13-66:5 (Warren).  Even

23 Madisetti recognized that a Masimo patent that described a "photodiode detector

24 shield[]" related to "reduc[ing] effects of electromagnetic radiation … ██████████."

25 PDX9-21; JTX-3707; 4/20 PM Tr. 89:5-18.  JTX-143 also says absolutely nothing about

26 the "█████████████" aspects Plaintiffs now allege are central to the purported

27 secret.  4/12 PM 11:12-12:20; JTX-1064 at 857-859.

28

Finally, L4 requires that Apple ███████████████████████████████ ██████████. But Apple's engineers gave unrefuted testimony that the accused test occurs solely as a quality check at the end of the *manufacturing* process, and it has never been used as the basis for ███████████████████. 4/18 PM Tr. 77:22-79:11, 113:24-114:18; 4/20 AM Tr. 62:19-66:5. Plaintiffs point to changes later made to ██████ ██████████████████████████████████████ years *after* Lamego departed. Dkt. 1703 at 15. They again identify nothing that links those changes to Lamego or the accused black foam tests, and for good reason—there is no connection. 4/18 PM Tr. 70:24-71:7, 115:4-24, 116:19-118:24; 4/20 AM Tr.66:6-19.

**b.** **No Possession/Particularity**. As drafted by Plaintiffs in November 2020, L4 describes minimizing ████████████████████████████████████████████ █████████████████████████████████████████████████████████ ███████████████████████████████████" *See* Dkt. 1738-2 at 6. Plaintiffs never tried to alter L4 despite seeking (and receiving) leave to amend other ATS. *See* Dkt. 669 at 4-6. And Plaintiffs' lead counsel embraced this Court's special instruction that the ATS descriptions included in the jurors' notebooks are "the controlling definitions." Dkt. 1715 at 27; *see* 4/12 PM Tr. 116:20-21 ("We would love it if this was read every day").

At trial, Plaintiffs offered *no* evidence that they possessed the ██████████ ███████████████████████████████ portion of L4. *See* 4/12 AM Tr. 86-87 (Madisetti confirming L4 requires "██████████████████████████████████████████ ████████████████████████████████"). Madisetti had not disclosed an opinion on that issue and was precluded from offering one at trial. *See* 4/11 PM Tr. 5:17-7:20; 4/12 PM Tr. 15:8-16:5. And as Warren explained without rebuttal, the only evidence Plaintiffs presented regarding ███████████████████ was "not relevant to" ██████ ██████████ 4/20 PM Tr. 31:6-32:19, 44:3-19; *see also* PDX8-87 (citing JTX-935, JTX-827 for reference to ████████████████, but without connection to L4 ████ ████ testing).

Plaintiffs cannot establish misappropriation based on partial possession of L4, and a plaintiff cannot unilaterally modify the trade secret definition after the close of discovery. *Pixion, Inc. v. PlaceWare Inc.*, 421 F. Supp. 2d 1233, 1241-1242 (N.D. Cal. 2005) (rejecting attempt to provide "further 'details'" regarding trade secret definitions in summary judgment opposition); *see also* Dkt. 904 at 3 ("If new legal theories are raised after the close of discovery, they may not be allowed at … trial."). Indeed, the Court instructed the jury—at Plaintiffs' insistence—that "[e]ach [ATS] must be analyzed *as a whole*." *See* Dkt. 1517 at 33; *see also* Dkt. 1500-1 at 100, 126 (Plaintiffs' proposed instructions).[3] Plaintiffs' conduct was particularly improper because they used their original broad definition of L4 as a sword when it was advantageous. For example, Madisetti testified that Apple had "not shown that [the elements of L4] are generally known" because, *inter alia*, Apple had not demonstrated that L4's ▮▮▮▮ element was generally known. 4/12 PM Tr. 17:6-20:1; PDX2 at 35-36; see also 4/12 AM Tr. 86:22-87:20 (Madisetti highlighting the ▮▮▮▮ element in describing L4).

Relatedly, Plaintiffs failed to define L4 with sufficient particularity. As Plaintiffs concede, whether an ATS is stated with sufficient particularity is a question of fact a jury can resolve. *See* Dkt. 1703 at 8-9; Dkt. 1732-1 at 5; *see also InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) (holding "a jury properly instructed can make the determination" whether "at least one trade secret [was identified] with sufficient particularity"); *Syntel Sterling v. Trizetto*, -- F.4th --, 2023 WL 3636674, at *5-7 (2d Cir. May 25, 2023) (holding particularity is question of fact for jury). At a minimum, this Court can resolve the issue under Rule 50. *Olaplex,*

---

[3] Plaintiffs' only contrary authority is this Court's *True Wearables* decision, which did not address the substance of Apple's arguments here. Not only did Plaintiffs waive the right to advance a similar position here by insisting that each ATS "must be analyzed as a whole," but this Court clarified in its Rule 50(a) decision that "an alleged trade secret[] cannot evolve during trial," Dkt. 1724 at 6 n.2.

1    *Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 712 (Fed. Cir. 2021) (granting JMOL on

2    particularity).

3          Here, Plaintiffs defined L4 to include alternative ways of ████████████████

4    ████████████████████████," but at trial their expert and attorneys

5    impermissibly asserted they were only pursuing one.  4/12 AM 86:22-87:20; 4/20 PM

6    Tr. 31:6-17.  This disconnect between L4's definition and Plaintiffs' trial presentation

7    renders L4 fundamentally ambiguous—i.e., no reasonable jury could determine

8    whether L4 encompasses both █████████████████████████████████████

9    ████████████████████████████████████ (in which case Plaintiffs

10   would only have to prove those two alternatives taken together were not generally

11   known) or just the "██████████████████████████████" element (in

12   which case Plaintiffs would have to prove that basic concept was not generally

13   known).[4]

14         **c.    Generally Known.**  L4 (as narrowed by Plaintiffs) and the Petersen patent

15   involve  the  same  test—i.e., ████████████████████████████████████

16   ████████████████████████.  4/20 AM Tr. 49:9-55:21; JTX-3778; 4/6 PM Tr. 95:3-

17   12; P-0162.  Petersen also taught ████████████████████████████████

18   ████████, as do other references like the Webster textbook.  *E.g.*, 4/20 AM Tr. 55-59;

19   4/20 PM Tr. 45:9-23; JTX-3778 at 20; JTX-3887 at 79.  Madisetti's conclusory and

20   unsupported claim that Petersen's suggested changes to physical characteristics can only

21   "████████████████████ (Dkt. 1703 at 15) is insufficient to avoid JMOL.

22   *Emazing Lights, LLC v. Ramiro Montes de Oca*, 2016 WL 3475330, at *3 (C.D. Cal.

23   May 3, 2016).  Plaintiffs published numerous patents that publicly discussed L4, and

24   confirm that Plaintiffs failed to take reasonable efforts to protect L4's secrecy.  *E.g.*,

25

26

27   ─────────────────────

28   [4] Apple respectfully submits that this Court's suggestion in its Rule 50(a) order that a
     dispute over the particularity of the ATS "go[es] to weight, not admissibility," Dkt. 1724
     at 4, is irreconcilable with *Inteliclear*.

Wilmer Cutler
Pickering Hale
and Dorr LLP

4/20 AM Tr. 36, 60:4-62:9; 4/7 Tr. 40:12-41:18, 94-95; 4/10 Tr. 53:20-57:13 (Scruggs); JTX-1207; JTX-3879; JTX-3707; JTX-3694.

Plaintiffs' evidence was also insufficient because Madisetti did not conduct any "survey of literature or other research" into what was known or not known. *Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416-417 (N.D. Cal. 1999). Plaintiffs have attempted to distinguish *Atmel* because "Madisetti reviewed numerous documents" (i.e., references *Apple*'s experts identified), Dkt. 1703 at 10 n.2, but that is precisely what *Atmel* found insufficient—i.e., "wait[ing to] see if the opposition came up with literature" and then "address[ing] … those references," *compare id.* at 413-414 *with* 4/12 PM Tr. 17:13-18:1.

### 2.     L5 – The Short Circuit

Plaintiffs used L5 to accuse a single short circuit within the millions of electronic circuits within Apple Watch. L5's language merely recites knowledge of a problem that ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████ Dkt. 1483 at 30. At trial, Plaintiffs neither demonstrated that Apple used the specific solution Plaintiffs possessed (and that Lamego supposedly shared) nor established Apple was even trying to address the "████████████████ ████████" problem. Rather, undisputed testimony confirmed Apple Watch never had such a problem. Again, no reasonable jury could have found liability.

**a.     No Misappropriation.** No reasonable jury could find Apple used L5 based on a *rejected* proposal from Lamego suggesting a "████████████████." 4/12 PM Tr. 24:21-25:1. That ███████████ proposal is different from the particular solution Plaintiffs possessed (███████████████████████████████████████████) and was never implemented by Apple. 4/18 PM Tr. 80:21-84:8; 4/19 AM Tr. 20:4-24:14; 4/20 AM Tr. 82:8-87:1; JTX-181 at 36; JTX-184 (resolving Lamego's suggestion with "Not gonna happen" and "Nope"). Apple rejected Lamego's suggestion precisely because Apple did not have the problem of ███████████████████. Thus, Apple

1 implemented a ***different solution*** (███████████████) from that which Plaintiffs

2 possessed, to avoid the entirely ***different problem*** of ████████████████████.

3 4/18 PM Tr. 84-86; 4/19 AM Tr. 24; 4/20 AM Tr. 78-82; JTX-181 at 36 (documenting

4 Apple's ████████████████████████); JTX-182 at 45; JTX-183 at

5 59; JTX-186 at 15.[5]

6        **b.**    **No Possession/Particularity.**  As with L4, Plaintiffs made the strategic

7 decision to draft L5 broadly, made no attempt to amend it before trial, and endorsed

8 this Court's special instruction that their prior definition was "controlling."  *See supra*

9 p. 4.  L5 as drafted covers every possible means of "████████████████████

10 ████████████████████████"  (As noted above, the Apple Watch has not

11 had that problem, and thus Apple has not implemented *any* means for addressing that

12 problem.)  Even Plaintiffs' lead counsel argued that "[h]ow you do it, what specific

13 way you" solve the problem L5 describes does not matter—according to Plaintiffs, any

14 solution would constitute misappropriation.  4/26 PM Tr. 84; *see also* 4/20 PM Tr.

15 20:19-21:1 ("[N]o specific solution is listed.").  And yet, Plaintiffs' own expert

16 conceded that Plaintiffs had developed, at most, a finite number of solutions to that

17 problem—though, as explained above, Plaintiffs corroborated only one.  *See* 4/13 AM

18 Tr. 57 ("one of several solutions"); *id.* 69 ("many different solutions").  Accordingly,

19 Plaintiffs have not established possession of L5.

20       Similarly, Plaintiffs' attempt to claim all solutions to a particular problem rather

21 than the one (or at best, handful) they adopted means L5 is not defined with sufficient

22 particularity.  *See supra* pp. 5-6.  Plaintiffs cannot permissibly "claim[] broad swaths of

23 solutions to general competing considerations … rather than the" solution (or handful of

24 solutions) they adopted.  *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7

25 (N.D. Cal. May 15, 2017).

26 _____

27 [5] Madisetti's attempts to equate a ████████████████████████

████████████████████████████ are conclusory and thus

28 insufficient to avoid JMOL.  *Telemac Cellular v. Topp Telecom*, 247 F.3d 1316, 1329 (Fed. Cir. 2001).

**c.     Generally Known.**  Not only did Madisetti fail to conduct the inquiry required by *Atmel*, but the Mims reference showing ███████████████████ has been generally known since 1973 and ███████████████████████████ ██████—i.e., the same configuration Plaintiffs later used.  4/20 AM Tr. 88:16-89:10; JTX-3808 at 118-119, Fig. 5-13.7.  The Roedel article from 1979 similarly shows ████████████████████████████████████████████ 4/20 AM Tr. 89:23-91:7; JTX-4232.  And the Webster textbook confirms that it was generally known ████████████████████████████████ 4/20 AM Tr. 89:11-92:14; JTX-3887 at 60.  Plaintiffs' own patents confirm the same.  4/20 AM Tr. 92:15-95:15; JTX-3003 at 16:40-44, Fig. 8.

**3.     D1, D3, and D10 – The Admittedly Unused Algorithms**

It is undisputed both that Plaintiffs did not invent the "very, very" broad concept of demodulation and demultiplexing—which is used in, among other things, AM Radio, 4/7 Tr. 41-42 (Diab)—and that Apple rejected the demodulation approach Lamego proposed, 4/12 PM Tr. 98 (Madisetti); *see also* 4/19 AM Tr. 129-130 (Apple did "not see any benefit" to using Lamego's suggestions); 4/14 AM Tr. at 28-29 (Lamego's approach "burn[ed] too much power").

**a.     No Misappropriation.**  There is no evidence Lamego disclosed any of the demodulation ATS to Apple.  For example, Madisetti was unable to identify a single document where Lamego disclosed D1 and D3 to Apple.  *See* 4/12 PM Tr. 41-44, 54-56; *see also* 4/19 PM Tr. 64-67, 85-87.  Madisetti did not identify any passage in ███ █████████ that repeated D1 and D3 verbatim.  4/12 PM Tr. 45, 57 (██████████ █████████); *see also* 4/19 PM Tr. 67, 87-88 (Sarrafzadeh ██████████████████ do not disclose D1, D3).  And although D10 matches the text of claim 1 of the '754 patent, even Madisetti has not claimed Plaintiffs wrote out D10 in the form that appears

1   in the jurors' notebooks before the '754 patent issued.  4/13 AM Tr. 65.[6]

2        Moreover, there is no misappropriation because Madisetti has conceded that "as

3   of today," "***D1, D3, and D10 were not used, ever, in any Apple Watch***." 4/12 PM Tr.

4   98-99.  At most, Plaintiffs have suggested Apple employed the demodulation ATS to

5   "██████████ the demodulation technique that Apple does use. Dkt. 1703 at 20; *see also*

6   4/26 AM Tr. 82 (Plaintiffs' counsel arguing in closing only that the demodulation

7   "advanc[ed] [Apple's] research").  Even if Plaintiffs had presented more than a scintilla

8   of evidence in support of this theory (and they have not), this Court should limit any

9   retrial on misappropriation to this single, narrow argument.

10       **b.    No Possession.**  For D1, Plaintiffs have not provided any concrete evidence

11  they possessed "███████████████████████████████████████████"

12  Madisetti's initial explanation for why Plaintiffs possessed D1 did not mention the ██

13  ██████████████████████ limitation at all.  4/12 PM Tr. 34-41.  While Madisetti

14  later made the passing statement that ██████████████ *id.* at 47-49, ██████

15  ████████, *see also* 4/19 PM Tr. 37-42 (Sarrafzadeh explaining why the materials

16  identified by Madisetti did not show possession of this aspect of D1).  Plaintiffs have

17  (without explanation) accused Apple of "ignor[ing] Madisetti's opinions" cited at 4/12

18  PM Tr. 34-41, but Apple discussed the same passage in its Rule 50(a) brief.  *Compare*

19  Dkt. 1703 at 19 *with* Dkt. 1705 at 17.  Plaintiffs have also argued that Poeze's testimony

20  establishes possession, Dkt. 1703 at 19, but Poeze stated he had never read the ATS, 4/7

21  Tr. 88; he thus logically cannot speak to possession.

22       Similarly, Plaintiffs failed to establish possession of D3 because they did not

23  present any evidence that they possessed the ████████████ step.  4/19 PM Tr. 71-73.

24  While Plaintiffs have pointed to a single entry in Poeze's notebook that references a

25  ───────────────

26  [6] Plaintiffs are wrong that JTX-161 and JTX-154 disclose (respectively) the entirety of

27  D1 and D3.  *See* Dkt. 1703 at 19. JTX-161 does not show D1's "█████████████████
    █████████████████████████" limitation, nor did Madisetti testify it did,
    4/12 PM Tr. 43:6-18.  JTX-154 does not show D3's "████████████████████"

28  step; again, Madisetti's testimony does not cover the issue.  4/12 PM Tr. 56:9-23.

1      ███████████ Madisetti did not explain why this was the equivalent to the

2      ███████████ step, 4/12 PM Tr. 51-53, and Poeze could not, since he never read D3.

3          Finally, no reasonable jury could find Plaintiffs possessed D10 because Madisetti

4      (Plaintiffs' only witness on the issue) failed to address whether Plaintiffs possessed Steps

5      8 and 9 of D10.  *See* 4/12 PM Tr. 66-67 (Plaintiffs' counsel asking Madisetti to "explain

6      your analysis of Steps 7, 8, and 9," but Madisetti only explaining Step 7); *see also* 4/19

7      PM Tr. 90-91 (Sarrafzadeh noting Madisetti had failed to address Steps 8 and 9).  While

8      Plaintiffs have argued that Madisetti's testimony on *other* aspects of D10 shows

9      possession on Steps 8 and 9, they identify nothing in the trial record where any witness

10     or attorney took that position.  Dkt. 1703 at 19.

11         **c.      Generally Known.**  Again, Plaintiffs have not met their burden on this

12     element because Madisetti did not perform the independent literature survey *Atmel*

13     requires.  *See supra* p. 7.  While Madisetti relied on an email from Lamego in 2005

14     indicating (in Madisetti's words) that D1 was "██████████" the cited email does not

15     include the full D1.  4/12 PM Tr. 47; JTX-828.  Apple's expert—who did conduct a full

16     investigation—testified D1 was generally known.  *See* 4/19 PM Tr. 44-62; *see also* JTX-

17     3581; JTX-3668; JTX-3671; JTX-3584; JTX-3582.

18              **4.      VIA – The Nebulous Catchall**

19         Because Plaintiffs cannot establish liability for the ATS discussed above, the VIA

20     ATS—which merely appends the words "value, importance, and appropriateness" to the

21     other ATS—cannot stand.  *See* Dkt. 1724 at 11.

22         Moreover, no reasonable jury could have found that the indefinite, "catchall" VIA

23     was stated with sufficient particularity.  *InteliClear,* 978 F.3d at 658.  Neither Plaintiffs'

24     counsel nor Madisetti has provided any details about what "value, importance, and

25     appropriateness" mean.  Even in closing, Plaintiffs simply reordered the words.  *See* 4/26

26     AM Tr. 93 ("[T]he fact that Masimo valued the importance and the appropriateness was

27     in and of itself good information to have.").

28         Finally, Madisetti's five minutes of testimony reading from slides on VIA was

insufficient to carry Plaintiffs' burden, as he did not provide any specific testimony establishing that Plaintiffs possessed VIA (as it relates to the technical ATS) or that VIA was not generally known.  4/12 PM Tr. 72:15-75:13.  Even Plaintiffs concede that Madisetti's misappropriation testimony boiled down to the assertion that Apple "us[ed] the technical trade secrets to develop the Apple Watch."  Dkt. 1703 at 21.  That conclusory statement could only support misappropriation of the underlying technical ATS; it says nothing about VIA.

## B.   Plaintiffs Have Not Established Unjust Enrichment

No reasonable juror could have credited Plaintiffs' sole theory for monetary relief, which was that Plaintiffs were entitled to the total profits of the Blood Oxygen feature used in Apple Watch Series 6 and 7.  *See* 4/13 AM Tr. 74-75, 108.[7]  This is because Plaintiffs failed to connect Apple's purported misappropriation of the ATS to Blood Oxygen in any way.  Accordingly, Plaintiffs neither established that the supposed misappropriation "was a substantial factor in causing Apple to be unjustly enriched" nor that Apple would "not have achieved" *all* profits attributed to the Blood Oxygen feature "except for its misappropriation" of one or more of the ATS.  *See* Dkt. 1715 at 26, 48 (Instructions Nos. 19 and 38); *see also Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal.App.4th 1295, 1305 (2010) (Plaintiffs must provide "some reasonable basis for the computation" of value of ATS).

*First*, no witness even attempted to link Blood Oxygen to any ATS, despite Plaintiffs' promise to this Court to "'present evidence from which a reasonable jury could conclude that Apple used [Plaintiffs'] technical trade secrets in developing the blood-oxygen feature.'"  *See* Dkt. 1283 at 10-11.  Plaintiffs' damages expert did not discuss *any* ATS during his direct and re-direct examinations.  Kinrich merely informed the jury that he valued Blood Oxygen at $1.85 billion based on 2020-2022 Watch sales

---

[7] Plaintiffs have not presented any evidence establishing they are entitled to monetary relief for Apple's purported acquisition or disclosure of the ATS.  *See* Dkt. 1676 at 9-10, 12.

by comparing Series 6 and 7 (which had the feature) with Series SE (which did not). 4/13 AM Tr. 80, 105-106, 110.  He certainly did not explain why *each* of the ATS is independently worth $1.85 billion.  *See id.* 130:6-8 (Kinrich conceding he did "not apportion to the value of any specific alleged trade secrets").  Kinrich's one-for-all approach confirms his calculation—and Plaintiffs' request for monetary relief—is untethered from any benefit allegedly flowing from the ATS themselves (and that his testimony should not have survived *Daubert, see* Dkt. 1171 at 18-21; Dkt. 1626).[8]

In contrast, Apple's expert provided unrebutted testimony that no record evidence connected Apple's purported use of the technical ATS (and VIA) to the value of the Blood Oxygen feature.  *See* 4/25 Tr. 23; *see also id.* 25-26 ("I'm not aware of any testimony or evidence presented here that show[s] a causal link between the gross profits for blood oxygen … and those alleged trade secrets.").

For the demodulation ATS, Madisetti admitted that "D1, D3, and D10 *were not used, ever, in any Apple Watch*." 4/12 PM Tr. 98:25-99:2.  Even accepting Madisetti's assertion that Apple derived a benefit from the demodulation ATS because Apple learned about a supposed flaw in the algorithm Apple does use, he made no attempt to connect that benefit to the Blood Oxygen feature.  And for good reason.  The emails Plaintiffs rely upon to show a supposed benefit are from 2014, *six years* before Series 6 and Blood Oxygen came on the market.  *Compare* Dkt. 1703 at 20 *with* JTX-153 (3/17/14 email) *and* JTX-273 (same).[9]

With regards to L4 and L5, every iteration of Apple Watch from Series 1 to Series 7—*including* the SE series—used both L4 and L5.  *See* 4/25 Tr. 38-43 (Webster).  It is thus impossible to measure any value added to Watch by L4 and L5 by comparing the

---

[8] Plaintiffs have conceded that—with the business ATS out of the case—the evidence does not support more than $1.85B in damages.  4/26 PM Tr. 85.

[9] Moreover, no reasonable jury could award damages on D10 because it was "*not a trade secret anymore*" after the '754 patent published *in March 2019*—more than a year before the Series 6 went on sale.  *See* 4/6 AM Tr. 110-111; *Kewanee*, 416 U.S. at 484 ("By definition, a trade secret has not been placed in the public domain."); *see also* 4/11 PM Tr. 8:10-19 (that D10 is no longer a secret "is established by the record").

1  SE Series to Series 6 and 7.

2          For example, Madisetti testified that "███████████████████████████

3  ██████████████████████████████████████████  4/12 PM Tr. 13-15.

4  Plaintiffs' only alleged evidence regarding the value of L4 in Series 6 and 7 is

5  Madisetti's statement that the "████████████████████████████████" when

6  pulse oximetry is introduced.  4/12 PM Tr. 14.  But such general, "conclusory testimony"

7  is insufficient to avoid JMOL.  *E.g.*, Dkt. 1724 at 6 n.2.  In any event, Plaintiffs failed to

8  show any connection between the accused changes in the Series 6 and the accused testing

9  procedures.  *See supra* pp. 2-4.

10         As to L5, Plaintiffs offered *no* evidence how the accused short circuit (which has

11  been in place since Series 1) benefits Blood Oxygen (which was first introduced in Series

12  6).  4/18 AM Tr. 87-88; JTX-3176.  Block provided unrebutted testimony that Apple's

13  use of the short circuit did not provide a performance benefit; it was simply a belt-and-

14  suspenders feature.  4/19AM Tr. 24; *see also* 4/20AM Tr. 84.  And while Madisetti

15  claimed that Apple identified L5 ███████████████, that statement had nothing to

16  do with Blood Oxygen—it was made months before development of that feature.

17  *Compare* JTX-0185 *with* 4/18 PM Tr. 69, 70-71, 97.  In any event, Lamego's specific

18  proposal (███████████) was never implemented.

19         **Second**, Plaintiffs' $1.85 billion request is irreconcilable with their closing

20  argument that Blood Oxygen is a "dangerous toy" and that Apple has "many more years

21  to go before they can actually do a true monitoring device on the wrist," 4/26 AM Tr.

22  95.  Kinrich arrived at his conclusion that Blood Oxygen was worth $1.85B only by

23  (admittedly) ignoring the myriad other differences between the Series 6 and 7 and SE

24  models beyond Blood Oxygen, ECG, and retina display—i.e., giving those differences

25  "zero value."  *See* 4/13 AM Tr. 116-118, 131; *but see* 4/25 Tr. 28-30 (Series 6 used *inter*

26  *alia* "a faster processor chip" and "more high quality" materials for cases and Series 7

27  was "faster charging" and had "stronger durability").  Had Kinrich appropriately

28  accounted for those differences and corrected for other errors in his analysis, Blood

Oxygen was at most worth $34.1 million.  4/25 Tr. 33-37.[10]

**C.**    **No Reasonable Jury Could Find In Plaintiffs' Favor On The Remaining Issues**

**1.    Plaintiffs' trade secret claim is time-barred**

**a.**    The statute of limitations began to run for all related ATS as soon as Plaintiffs could discover that Apple misappropriated a single one. *MedioStream, Inc. v. Microsoft Corp.*, 869 F.Supp.2d 1095, 1110 (N.D. Cal. 2012) (collecting cases).  No reasonable jury could adopt Plaintiffs' unsupported assertion that the technical ATS are unrelated to each other. *See* Dkt. 1703 at 22.  Rather, the remaining ATS "concern similar technology developed for use in similar products"—a wearable device that measures pulse oximetry. *See MedioStream*, 869 F.Supp.2d at 1110; *see also* Dkt. 1646 at 9, 11 (Plaintiffs arguing that each technical ATS is part of a group of "several techniques" "critical to Masimo's … successfully developing its multi-wavelength-noninvasive-blood-parameter device").  At a minimum, the technical ATS are connected by the fact that Plaintiffs allege they were misappropriated through Lamego. *See Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1026 (2000).

**b.**    Apple indisputably proved that any purported misappropriation first occurred before January 9, 2017. *See Glue-Fold*, 82 Cal.App.4th at 1024.  Plaintiffs allege that Apple acquired the technical ATS through Lamego, who only worked at Apple in 2014. *See, e.g.*, 4/12 AM Tr. 81-85; 4/14 AM Tr. 70.  Any misappropriation must have started then.

**c.**    No reasonable jury could find Plaintiffs met their burden to prove that they could not have discovered the purported misappropriation before 2017 "despite reasonable diligence." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F.Supp.2d 997, 1003 (S.D. Cal. 2012).

---

[10] Because the link between the $1.85B sought and Apple's purported unjust enrichment is non-existent, awarding anything more than a de minimis amount would be unconstitutional as "grossly excessive." *E.g., BMW of N. America, Inc. v. Gore*, 517 U.S. 559, 568 (1996).

1    Plaintiffs provided no evidence of "the time and manner of discovery." *Gabriel*,

2    857 F. Supp. 2d at 1003.  Plaintiffs were precluded from relying on Kiani's testimony

3    about his October 2019 communications with counsel.  *See* 4/12 AM Tr. 16:6-11.

4    Regardless, the inquiry is when *Masimo and Cercacor*—not a single corporate officer—

5    discovered the supposed misappropriation.

6    More broadly, no reasonable jury could find Plaintiffs met their burden to prove

7    that they lacked "reason to suspect… misappropriat[ion], … [under circumstances

8    where] a reasonable investigation would produce facts sufficient to confirm this

9    suspicion." Dkt. 606 at 3; *see also* Dkt. 1715 at 46.  Here, Plaintiffs' January 2014 letter

10   concerning Lamego's hiring can only reasonably be read as announcing their belief that

11   Apple intended to misappropriate their ATS.  *See* JTX-2937 ("It is difficult to imagine

12   any reason for this sequence of events other than Apple … attempting to gain access to

13   … Cercacor and Masimo's trade secrets.").

14   Plaintiffs' overt suspicion could have been confirmed before 2017 by reasonable

15   investigation.  For instance, when Kiani learned of Lamego's departure from Apple

16   (supposedly because Apple wanted Lamego to "do something competitive to

17   [Plaintiffs]," 4/5 PM Tr. 49), Plaintiffs should have investigated whether Lamego had

18   misappropriated.  Plaintiffs similarly should have inquired after Apple launched Watch

19   Series 0 in 2015 or Series 1 and 2 in 2016, each of which had a heart rate sensor, *see*

20   4/12 AM Tr. 84, since those products implicated Apple's work on "the measurement of

21   physiological information," and Plaintiffs' 2014 letter asserted that Apple must not

22   "employ Lamego in [that] area," JTX-2937 at 2.  In any event, had Plaintiffs simply

23   monitored Apple's patent filings for contributions by Lamego, the '052 patent

24   application's March 3, 2016 publication would have (under the standard laid out in

25   Plaintiffs' 2014 letter) "confirm[ed] [their] suspicion (and justif[ied] bringing suit)."

26   Dkt. 606 at 3. The '052 patent expressly disclosed that Lamego had worked on

27   technology that Plaintiffs in 2014 had insisted would necessarily implicate their ATS.

28   *See* JTX-1239 at 1, 8.

### 2.     This Court should grant JMOL based on lack of requsite intent

CUTSA requires proof the defendant either (1) used "improper means to acquire knowledge of the trade secret" and used/disclosed the ATS without authorization or (2) knew or had reason to know its knowledge of the ATS was wrongfully acquired.  *See* Cal. Civ. Code § 3426.1(b)(1)-(2).

The only evidence introduced of a direct interaction between Apple and Plaintiffs was a meeting in May 2013, and Kiani has testified that Plaintiffs did not provide Apple with any trade secrets at that time.  *See* 4/6 AM Tr. 73; *see also* 4/13 PM Tr. 115; 4/14 AM Tr. 97-101; 4/18 PM Tr. 70:2-4.  Plaintiffs have also suggested that Apple acquired the purported secrets through "financial inducements, misrepresentation, or … inducement of a breach to maintain secrecy," but each theory requires proof that Apple had specific intent to injure or defraud Plaintiffs.  *See People v. Riley*, 240 Cal.App.4th 1152, 1160-1163 (2015) (commercial bribery); *Manderville v. PCG&S Grp., Inc.*, 146 Cal.App.4th 1486, 1498 (2007) (misrepresentation); *Little v. Amber Hotel Co.*, 202 Cal.App.4th 280, 291 (2011) (inducement).  The record is devoid of any such evidence.

As to whether Apple knew or should have known, Lamego confirmed that Apple expressly instructed him not to share Plaintiffs' confidential information ***and*** not to "bring that type of information" to Apple.  4/13 PM Tr. 74 (Lamego); *see also* JTX-3044 (agreement Lamego signed with Apple); 4/13 PM Tr. 76-77 (testimony on agreement).  Hotelling personally explained Apple's policy prohibiting the use of third-party intellectual property to Lamego; Hotelling did not "have any reason to believe that [Lamego] shared with Apple confidential Masimo or Cercacor information.  4/14 AM Tr. 21, 41.

In response, Plaintiffs relied on a handful of documents, but each one that specifically implicates Lamego was "written *before* Lamego began working at Apple," and thus before any misappropriation could logically begin.  Dkt. 606 at 6.  Plaintiffs have also cited materials showing Apple (1) thought highly of Plaintiffs' technology, (2) briefly considered forming a business relationship with Plaintiffs, and (3) hired or

considered hiring several of Plaintiffs' employees. *E.g.*, Dkt. 1703 at 2-3. But Plaintiffs were just two of many companies in the medical technology space that Apple met with in 2013. JTX-260 at -9120; JTX4360.1; 4/14 AM Tr. 94-96; 4/20 AM Tr. 10. And there is nothing improper with "recruiting or hiring employees from another company, including from a competitor." Dkt. 1715 at 43.

### 3. Apple did not willfully and maliciously appropriate

Punitive damages are available only if Plaintiffs have proven by clear and convincing evidence that Apple *inter alia* acted at least despicably. Dkt. 1724 at 15-16. "Despicable conduct is conduct which is so vile and wretched that it would be looked down upon and despised by ordinary decent people." *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal.App.4th 21, 66 (2005). "Under the clear and convincing standard, Plaintiffs must present "significant probative evidence" to avoid JMOL; simply discrediting Apple's evidence is legally insufficient. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-257 (1986); *accord Ajaxo*, 135 Cal.App.4th at 66 (similar).[11]

While there is a dearth of evidence of "intent" in any event (as discussed above), Plaintiffs certainly have not identified anything that establishes Apple engaged in "vile and wretched" conduct. Dkt. 1703 at 27. The only allusions to willfulness or malice in Plaintiffs' closing concerned recruitment of Plaintiffs' employees. *See* 4/26 AM Tr. 69:13-20, 72:7-10; 4/26 PM Tr. 78:8-23. But again, recruiting from a competitor is lawful, not despicable. Dkt. 1715 at 43.

## II. THE INVENTORSHIP AND OWNERSHIP CLAIMS FAIL AS A MATTER OF LAW

### A. '052 and '670 patents.

No reasonable jury could find in favor of Plaintiffs' '052 and '670 inventorship arguments. *First*, to be a joint inventor, there "must have [been] some collaboration or

---

[11] Plaintiffs are wrong (Dkt. 1703 at 27) that *Ajaxo* did not require despicable conduct. *See* 135 Cal.App.4th at 67 (the jury reasonably "concluded that [the defendant's] prolonged course of thievery [wa]s" despicable). *Ajaxo* also involved extreme facts— i.e., the defendant "purposefully built and passed off as its own" stolen technology accessed from the plaintiff's computer system without authorization. *Id.*

1    joint effort."  4/26 Tr. AM 55:21-23; Dkt. 1715 at 51; *Falana v. Kent State Univ.*, 669

2    F.3d 1349, 1358 (Fed. Cir. 2012).  But Plaintiffs have not argued the '052 and '670

3    patents stemmed from the alleged misappropriation in this case, and they presented zero

4    evidence of joint effort between Mohamed Diab and any Apple engineers, 4/26 Tr. AM

5    55:24-56:6.   Trevor Ness provided unrebutted testimony that the named inventors

6    conceived of the claimed inventions "at Apple," without any contribution from Diab.

7    4/19 AM Tr. 91:21-23, 92:20-23, 103:17-23.  Diab himself testified he has "no idea"

8    whether he should be an inventor.  *See* 4/7 Tr. 14:5-15:8, 26:25-27:2, 31:2-4; 4/20 AM

9    Tr. 99-100.

10          *Second*, as this Court instructed the jury, "if someone only explains … well-

11   known concepts or the current state of the art, then he or she is not a joint inventor."

12   4/26 AM Tr. 56:10-12; Dkt. 1715 at 52; *accord Wagner v. Ashline*, 2021 WL 5353889,

13   at *5 (Fed. Cir. Nov. 17, 2021).  But Plaintiffs' inventorship case rests solely on their

14   citation to prior art.  *See* 4/6 PM Tr. 20:7-16, 96:10-21; 4/12 PM Tr. 79:9-82:19; JTX-

15   777; JTX-1206; JTX-1207.

16          *Third*, the inventorship claims fail as a matter of law because Plaintiffs offered no

17   evidence corroborating Diab's testimony he communicated the (prior art) idea of

18   reflectivity to Lamego.  4/6 PM Tr. 87:23-88:4, 103:7-9; JTX-777 (no reference to Diab

19   or Lamego); JTX-1207 (no reference to Diab); *Wagner*, 2021 WL 5353889 at *4-5

20   (affirming summary judgment where plaintiff "did not present sufficient evidence of

21   corroboration").

22          Lamego did not co-invent the '052 and '670 patents while working for Plaintiffs.

23   *See* 4/20 AM Tr. 100 (Warren).  Ness testified that work began on the '052 and '670

24   patents in "February of 2014" (after Lamego joined Apple), 4/19 AM Tr. 96:8-99:14;

25   JTX-40, and Lamego's contribution was the idea of applying "reflectivity ***on the back***

26   ***of the Apple Watch***," 4/19 AM Tr. 95:3-19.  Lamego logically could not have begun his

27   inventive work on the unreleased Apple Watch until joining Apple.  4/13 PM Tr. 64:19-

28   65:2; 99:3-5.

**B.     '754 patent.**

No reasonable jury could find in favor of Plaintiffs' '754 inventorship claim. ***First***, Poeze testified he did not teach Lamego the ideas claimed in the '754 patent and thus did not contribute to the invention as a matter of law.   4/7 Tr. 103:9-18, 108:23-110:8, 116; *Wagner*, 2021 WL 5353889, at *5 (evidence that "[A] assisted [B] is not evidence that [B] assisted [A]").   ***Second***, Plaintiffs failed to show "collaboration or joint effort" between Poeze and Apple, 4/26 Tr. AM 55:21-23, *i.e.*, "'some open line of communication during or in temporal proximity to their inventive efforts,'" *Falana*, 669 F.3d at 1358  (citation omitted).  In particular, there was no evidence Poeze collaborated with Lamego when Lamego was working on the '754 patent at Apple.  ***Third***, Plaintiffs did not point to any evidence corroborating Poeze's inventorship claim beyond his notebook, which do not actually disclose any '754 patent claim.  *Wagner*, 2021 WL 5353889, at *4-5 (requiring corroboration); *see also* 4/19 PM Tr. 91:5-92:1, 95:6-97:16.[12]

Plaintiffs' ownership claim is also unavailing because Hotelling's testimony established the work leading to the '754 patent was performed at Apple.  *See* 4/14 AM Tr. 34:3- 35:4; *id.* at 25:20-28:21; JTX-880.  Plaintiffs presented no contrary evidence. 4/19 PM Tr. 95:6-97:16.

**C.     '095 and '390 patents.**

No reasonable jury could find in favor of Plaintiffs' '095 and '390 inventorship claims.  Plaintiffs once again rely on Diab's prior art patent and patent publication to support co-inventorship.  4/19 PM Tr. 97-100; *see also* JTX-1267 ('272 patent); JTX-1206 ('924 publication).  But those publications only establish Diab contributed to the prior art; they cannot, as the Court correctly instructed, support a co-inventorship claim. 4/26 AM Tr. 56:10-12; *accord Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1361 (Fed. Cir. 2004).  Regardless, no evidence shows that Diab collaborated with the named

---

[12] That no reasonable jury could find Poeze co-invented the '754 patent means no reasonable jury could find Plaintiffs possessed D10.  *See supra* p. 11.

inventors "during or in temporal proximity" to their work at Apple, *Falana*, 669 F.3d at 1358.  Diab himself conceded he has "no idea if [he] should be a named inventor." 4/7 Tr. 31, 32.

Plaintiffs' ownership claims fare no better.   Hotelling testified, without contradiction, that the work leading to the '095 and '390 patents was performed at Apple. 4/14 AM Tr. 33, 17-23; *id.* at 25-28, 22-24; JTX-880; JTX-3657; *see also* 4/19 PM Tr. 97-100 (Sarrafzadeh confirming no evidence of invention at Plaintiffs).

Dated: May 30, 2023                        Respectfully submitted,

                                           JOSEPH J. MUELLER
                                           MARK D. SELWYN
                                           AMY K. WIGMORE
                                           JOSHUA H. LERNER
                                           SARAH R. FRAZIER
                                           NORA Q.E. PASSAMANECK
                                           THOMAS G. SPRANKLING
                                           WILMER CUTLER PICKERING HALE AND
                                           DORR LLP

                                           BRIAN A. ROSENTHAL
                                           GIBSON, DUNN & CRUTCHER LLP

                                           KENNETH G. PARKER
                                           HAYNES AND BOONE, LLP


                                           By:  /s/ Mark D. Selwyn
                                                Mark D. Selwyn


                                           *Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 6,997 words, which:

__X__  complies with the word limit of L.R. 11-6.1

__ complies with a court order.

Dated:  May 30, 2023                    Respectfully submitted,


MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  /s/ Mark D. Selwyn
         Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*