MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION UNDER RULE 52 FOR JUDGMENT ON ITS EQUITABLE DEFENSES** <br><br> Hearing: July 24, 2023 <br><br> Time: 1:30pm |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

## **TABLE OF CONTENTS**

STATEMENT ........................................................................................................... 2

    A.    During Discovery, Plaintiffs Refused To Provide Clarity When They Became Aware of Apple's Purported Misappropriation .................. 2

    B.    The Record Establishes That Plaintiffs Should Have Become Aware Of The Purported Misappropriation Years Before They Filed Suit ........................................................................................................ 3

ARGUMENT ............................................................................................................ 5

I.    PLAINTIFFS WAIVED THEIR RIGHTS TO OBTAIN MONETARY RELIEF ................... 6

II.    THE DOCTRINE OF LACHES BARS PLAINTIFFS' MISAPPROPRIATION CLAIM .......... 7

    A.    Plaintiffs Unjustifiably Delayed In Filing Their Misappropriation Claim ................................................................................................... 8

    B.    By Delaying, Plaintiffs Acquiesced To Any Purported Misappropriation And Prejudiced Apple .................................................. 11

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ................................................................... 5, 8, 12

*Granite State Insurance Co. v. Smart Modular Technologies, Inc.*,
  76 F.3d 1023 (9th Cir. 1996) ............................................................................ 5

*Johnson v. City of Loma Linda*,
  24 Cal. 4th 61 (2000) ................................................................................. 8, 11

*Estate of Kampen*,
  201 Cal. App. 4th 971 (2011) .................................................................... 8, 11

*Pac. Hills Homeowners Association v. Prun*,
  160 Cal. App. 4th 1557 (2008) ....................................................................... 11

*Petroplast Petrofisa Plasticos S.A. v. Ameron International Corp.*,
  2012 WL 3090935 (Del. Ch. July 31, 2012) .................................................... 8

*Qualcomm Inc. v. Broadcom Corp.*,
  548 F.3d 1004 (Fed. Cir. 2008) .................................................................. 6, 7

*San Francisco Bay Area Rapid Transit District v. Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055 (N.D. Cal. 2015) ................................................ 7, 8

**Statutes**

Cal. Civ. Code § 3426.6 ........................................................................................ 8

Plaintiffs' trade secrets claim is precluded by the equitable doctrines of waiver and laches because Plaintiffs unjustifiably delayed filing this lawsuit for years after they should reasonably have discovered Apple's purported misappropriation.

Specifically, Plaintiffs informed Apple in January 2014 of their belief that if Dr. Marcelo Lamego worked at Apple on wearable electronics designed to noninvasively measure physiological parameters, his work would "necessarily" require him to use or disclose their purported trade secrets. *See* JTX 2937. For at least three reasons, Plaintiffs should have known no later than 2016 that Dr. Lamego had engaged in precisely that kind of work at Apple: (1) Plaintiffs themselves claim that a Cercacor employee told Plaintiffs' CEO Joe Kiani in 2014 that Dr. Lamego left Apple because he had been asked to compete with Plaintiffs; (2) Plaintiffs themselves told Apple in 2014 that any work by Dr. Lamego in the area of mobile health applications and the measurement of physiological information would "necessarily involve the use or disclosure of Cercacor's trade secrets," *id.* at 2, and Plaintiffs knew by 2015 that Apple had introduced Watch products that noninvasively measured physiological parameters; and (3) Apple published a patent in 2016 that disclosed its work in the area of noninvasive physiological measurement and listed Dr. Lamego as an inventor. None of this evidenced *actual* misappropriation by Dr. Lamego—there was none. But these are the actions that Plaintiffs (wrongly) contend amounted to misappropriation, and that theory should have been timely brought if brought at all. Yet, Plaintiffs waited *years* before filing suit in 2020.

Plaintiffs' extended delay in filing suit was so unreasonable as to amount to a waiver of their right to seek any relief. Plaintiffs' inexplicable delay also satisfies the requirements for laches because the delay (1) establishes Plaintiffs acquiesced to the purported misappropriation and (2) prejudiced Apple by making it more difficult for Apple to defend this case at trial. In particular, it is fundamentally inequitable for Plaintiffs to delay filing this lawsuit for over a half decade and then use that delay as a

weapon at trial—i.e., by suggesting Apple's witnesses' memories cannot be trusted because too much time has passed since the events at issue. *See, e.g.*, 4/26 AM Tr. 70:2-4 ("This is ten years ago. Documents, as Mr. Kiani said yesterday, do not lie. Memories fade but the ink doesn't.").

To be clear: there was no misappropriation by Apple at any point in time—and as discussed in Apple's parallel Rule 50(b) motion, no reasonable juror could have found otherwise. However, the key point for the instant motion is that after they delayed filing suit for five-and-a-half years, Plaintiffs' trade secrets claim not only fails on the merits, but it also fails because of waiver and laches.

## STATEMENT

### A. During Discovery, Plaintiffs Refused To Provide Clarity When They Became Aware of Apple's Purported Misappropriation

Plaintiffs filed their complaint in this action on January 9, 2020. *See* Dkt. 1. On October 6, 2020, Apple served its Interrogatory No. 23, which required Plaintiffs to, *inter alia*, "identify … the circumstances and dates relating to [their] first awareness of each of the Apple Patents," which was defined to include U.S. Patent No. 10,078,052 ("'052 patent"). *See* Dkt. 580 at 8. After Plaintiffs refused to provide any substantive response, Apple successfully moved to compel Plaintiffs to provide information regarding, *inter alia*, "the circumstances and dates relating to your first awareness of" the '052 patent. *See* Dkt. 298 at 14-17 (Magistrate Judge Early holding that this information was relevant to laches and waiver).

Plaintiffs supplemented their interrogatory response just once, on March 10, 2021. They asserted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 1582-1 at 13-14. Apple once again moved to compel, this time for a definitive answer regarding whether Plaintiffs first learned of the '052 patent on ▮▮

████████. *See* Dkt. 580 at 2.  While the Special Master denied Apple's motion, he ████████████████████████████████████████████ ████████████████████████ *Id.* at 9.  Plaintiffs never supplemented the record.

### B. The Record Establishes That Plaintiffs Should Have Become Aware Of The Purported Misappropriation Years Before They Filed Suit

At trial, Plaintiffs' theory of the case was that Apple made a strategic decision in 2013 to misappropriate Plaintiffs' pulse-oximetry technology rather than to acquire Plaintiffs or pursue a joint development agreement.  Because Plaintiffs and Apple only had one meeting during that timeframe—during which the purported trade secrets were admittedly *not* discussed, 4/5 PM Tr. 32-37; 4/6 AM Tr. 73:12-18—Plaintiffs have argued that Apple acquired the purported trade secrets indirectly, by hiring two of Plaintiffs' employees, Dr. Michael O'Reilly and Dr. Marcelo Lamego.[1]

As relevant here, Mr. Kiani learned on January 9, 2014 that Dr. Lamego was joining Apple.  *See* 4/5 PM Tr. 45:18-23; JTX 786.  A few weeks later, Plaintiffs sent a letter to Apple's CEO, Tim Cook, laying out their "belie[fs] that Apple ha[d] hired [Dr.] Lamego to design and develop products that are likely the same as the products that he was responsible for developing for Cercacor," and that "Apple's design, development, or sales efforts on any such product would compete directly with Cercacor's efforts." JTX 2937 at 1-2; 4/5 PM Tr. 47:13-16.  The letter "note[d] that Apple [had] expressed great interest in the Masimo technology on which [Dr.] Lamego was trained," and that "[i]t [wa]s difficult to imagine any reason for th[e] sequence of events other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets." JTX 2937 at 1.  Accordingly, Plaintiffs demanded that "Apple … employ [Dr.] Lamego in an area that does not involve healthcare technology, including mobile health

---

[1] At trial, Plaintiffs claimed that Apple misappropriated several purported trade secrets through Dr. O'Reilly, but the Court granted Apple JMOL on that issue.  Dkt. 1724 at 5-7.  Apple therefore only discusses why the still-live alleged trade secrets support its equitable defenses.

applications and the measurement of physiological information" because work in that area—or in any other that was in competition with Plaintiffs—would "necessarily involve the use or disclosure of Cercacor's trade secrets." *Id.* at 2. The record contains no evidence suggesting Apple ever responded to Plaintiffs' letter.

Later in 2014, according to Mr. Kiani himself, he was informed by a Cercacor employee (Cristiano Dalvi) that Dr. Lamego had left Apple after only a few months. *See* 4/5 PM Tr. 49:4-18. Mr. Dalvi supposedly "told [Mr. Kiani that] Dr. Lamego left when Apple asked him to do something competitive to [Plaintiffs]." *Id.* 49:19-50:11. There is no evidence in the record that Plaintiffs contacted either Dr. Lamego or Apple to inquire about the circumstances of Dr. Lamego's departure. *See, e.g., id.* 50:15-19.

Apple released Apple Watch Series 0 in 2015; it released Series 1 and 2 in 2016. *See* 4/12 AM at 83:24-84:14. Each of these Watch models contains sensors that use noninvasive physiological monitoring technology to monitor heart rate through the wrist, *see id.*—i.e., the kind of "measurement of physiological information" that Plaintiffs warned against in their January 2014 letter. There is no evidence in the record that Plaintiffs inquired into what role, if any, Dr. Lamego played in the development of Apple Watch.

On March 3, 2016, the U.S. Patent and Trademark Office published the application that ultimately led to the '052 patent, which is entitled "Reflective Surface Treatments for Optical Sensors." JTX 1239 at 1. Apple filed the '052 patent application, and it lists Dr. Lamego as one of six co-inventors. *Id.* The patent describes the claimed technology as useful for "an electronic device such as a wearable fitness device [that] can be positioned against the skin of a user's wrist … and can obtain therefrom certain physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on." *Id.* at 8. A few years later, Plaintiffs listed the '052 patent as relevant prior art in one of their own patent applications, reflecting their actual knowledge of the patent's existence at least as of December 6, 2018. *See* 4/6 AM Tr.

78-83.  There is no definitive evidence in the record regarding when Plaintiffs first learned of the '052 patent or why they took no steps to investigate in 2016 when the application published.

No reasonable juror could have found that any of these facts amounted to misappropriation by Apple—but these are facts on which Plaintiffs relied, and those facts were all knowable years before Plaintiffs filed suit.  The only evidence Plaintiffs presented at trial justifying their delay was Mr. Kiani's testimony that he supposedly was not aware of Apple's actions until October 2019.  *See* 4/5 PM Tr. 50:6-51:16.  But because Mr. Kiani asserted his knowledge was based on communications with counsel, however, this Court ruled that Mr. Kiani's testimony came "very, very, very close to amounting to a [subject-matter] waiver" of Plaintiffs' attorney-client privilege sufficient to require mid-trial disclosure of Plaintiffs' related privileged communications and precluded Plaintiffs from "in any way … revisit[ing] that testimony."  4/12 AM Tr. 15:21-16:13.

## ARGUMENT

Equitable defenses that are reserved "for the court, not the jury" are properly adjudicated under Rule 52—which "governs issues tried by the court"—because "Rule 50[] applies only to issues tried by a jury."  *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030-1031 (9th Cir. 1996).  Under Rule 52, "the district court … [i]s the appropriate trier of fact on [Apple's] equitable … defenses," meaning that it falls to this Court to decide the factual and legal issues presented, with its factual findings subject to review for clear error by the Federal Circuit.  *See id.* at 1028.  In resolving a Rule 52 motion, this Court may weigh evidence and decide disputed issues of fact; it is not limited to deciding whether Plaintiffs adduced sufficient evidence to withstand JMOL.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).[2]

---

[2] Apple understands that Plaintiffs *also* intend to file a Rule 52 motion on Apple's defenses of laches and waiver.  This is unnecessary (because Plaintiffs could achieve the
*(Cont'd on next page)*

I.      **PLAINTIFFS WAIVED THEIR RIGHTS TO OBTAIN MONETARY RELIEF**

To begin, Plaintiffs are precluded from obtaining relief because they impliedly waived any claim for misappropriation. The waiver doctrine bars relief if clear and convincing evidence shows "that [the plaintiffs'] conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008). Waiver is established if Plaintiffs acted "'knowing[ly] or intelligent[ly], which means the [plaintiff] ha[d] sufficient awareness of the relevant circumstances and likely consequences of [its] decision.'" *Id.* (quoting *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1170-1171 (9th Cir. 2006)). Whether or not waiver applies is "committed to the sound discretion of the trial judge." *Id.* at 1019.

In this case, Plaintiffs' conduct after Dr. Lamego began working at Apple is inconsistent with an intent to enforce their purported trade secret rights. Plaintiffs' January 2014 letter stated both that (1) they would regard any evidence that Dr. Lamego was working on "healthcare technology" as proof of misappropriation and (2) they would not hesitate to assert "rights and remedies … in the future[] against Apple." JTX 2937 at 2. Despite receiving no response from Apple, Plaintiffs did nothing for nearly six years after that letter was sent. During that period, Dr. Lamego's brief employment at Apple came and went without any complaint or inquiry from Plaintiffs. Plaintiffs made no complaint or inquiry notwithstanding that (1) Mr. Kiani claimed he was informed in 2014 that Dr. Lamego had left Apple because he was asked to compete with Plaintiffs, (2) beginning in 2015, Apple released several series of Apple Watch, each of which monitored physiological parameters, and (3) Apple publicly disclosed in the '052 patent that Dr. Lamego had worked on "the measurement of physiological information." *Id.* Indeed, Plaintiffs have conceded that ████████████████████

---

same result by opposing Apple's motion) and will needlessly increase both the Court's and the parties' workloads. Apple, on the other hand, *must* file the present motion since it seeks affirmative relief. *See, e.g.*, Dkt. 726 at n.1.

1  █████████████████████████████████, see Dkt. 1561-1 at 13-14, yet they
2  still took no action for over a year after that meeting.

3      Moreover, there is no reasonable dispute that Plaintiffs had "sufficient awareness
4  of the relevant circumstances and likely consequences" of not investigating the various
5  public signs that Apple had crossed the line Plaintiffs laid down in their letter.
6  *Qualcomm*, 548 F.3d at 1020. Again, Plaintiffs' letter was ill-founded—there had not
7  been, and would not be, any misappropriation by Apple, through Dr. Lamego or
8  otherwise. But the key point is that if Plaintiffs wanted to litigate the (incorrect) theory
9  presented in their letter, it should have been done many years ago. As to the former
10 (relevant circumstances), Mr. Kiani testified that Plaintiffs monitor patent filings for
11 assertions of intellectual property rights relevant to their technologies and business, but
12 he apparently never instructed anyone to monitor Apple's patent filings after Dr.
13 Lamego left Cercacor. *See* 4/5 PM Tr. 11:2-15; 4/6 AM Tr. 77:8-78:3; *see also* Dkt. 38-
14 7 at 32 (Masimo's 2015 Form 10-K, describing patent monitoring practices). Plaintiffs'
15 trial counsel, moreover, apparently have continually advised them on intellectual
16 property issues related to Dr. Lamego's departure for Apple. *See, e.g.*, JTX 2937; Dkt.
17 1561-1 at 13-14; 4/5 PM Tr. 51:5-16. As to the latter (likely consequences), Plaintiffs
18 are sophisticated corporations with a long history of aggressively litigating intellectual
19 property disputes. Plaintiffs have gone so far as to argue that "Masimo's rise as an
20 industry leader cannot be fairly told without explaining [its litigations against]
21 Nellcor[,]… Phillips, and Mindray." Dkt. 1362 at 1. It is therefore utterly implausible
22 that Plaintiffs were unaware that their prolonged failure to act would make it difficult—
23 if not impossible—to enforce their rights.

24 **II.    THE DOCTRINE OF LACHES BARS PLAINTIFFS' MISAPPROPRIATION CLAIM**

25      "Laches is designed to promote justice by preventing surprises through the revival
26 of claims that have been allowed to slumber until evidence has been lost, memories have
27 faded, and witnesses have disappeared." *San Francisco Bay Area Rapid Transit Dist. v.*
28

*Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055, 1073 (N.D. Cal. 2015) (internal citation omitted). It bars relief where the plaintiff "unreasonabl[y] delay[ed]" filing suit or did not diligently pursue its claim and the plaintiff either (1) "acquiesce[d] in the act about which [it] complains" or (2) "prejudice to the defendant result[ed] from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000). "[T]he existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances." *Estate of Kampen*, 201 Cal. App. 4th 971, 997 (2011).

### A. Plaintiffs Unjustifiably Delayed In Filing Their Misappropriation Claim

Courts assess delay by considering "the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit." *Danjaq*, 263 F.3d at 952. Where a statute prescribes a generally applicable time limit within which an action must be brought, the reasonableness of the plaintiffs' delay is assessed in relation to that statutory time limit, even if that limit "is not applicable" in that particular case. *Johnson*, 24 Cal. 4th at 68. Here, Plaintiffs' delay should be considered with reference to the three-year statute of limitations period provided for in Cal. Civ. Code § 3426.6. *See, e.g.*, *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2012 WL 3090935, at *14-15 (Del. Ch. July 31, 2012) (holding that laches barred relief under CUTSA because the plaintiff was on notice of the facts underlying alleged misappropriation more than three years before filing).

Plaintiffs unreasonably delayed in filing their CUTSA claim because they took no action for nearly *six* years after having been put on inquiry notice of their misappropriation claim. To start, Plaintiffs' January 24, 2014 letter expresses their overt suspicion that Apple's purpose in hiring Dr. Lamego was to obtain their purported trade secrets regarding healthcare technology. *See* JTX 2937. The letter stated that "[i]t is difficult to imagine any reason for th[e] sequence of events other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade

secrets." *Id.* at 1. And the letter expressly reserved the right to pursue legal action if Apple and Dr. Lamego did not comply with Plaintiffs' demands. *Id.* at 2.[3]

Having received no response from Apple, there are at least three inflection points when Plaintiffs were on notice to investigate whether Apple had crossed the line laid down in their January 2014 letter.

***First***, Mr. Kiani testified that he learned of Dr. Lamego's departure from Apple in a 2014 conversation with Mr. Dalvi, who supposedly told Mr. Kiani that Dr. Lamego had departed because "Apple [had] asked him to do something competitive to [Plaintiffs]." 4/5 PM Tr. 49:19-23. While Mr. Kiani took Mr. Dalvi's statement to mean that Dr. Lamego had not disclosed Plaintiffs' "confidential information," *id.* at 49:19-50:11, it was still unreasonable for Plaintiffs to have made *no* inquiries. Although he had ample opportunity, Mr. Kiani offered no explanation at trial for failing to make any inquiries. Indeed, the lack of reasonableness is established from Plaintiffs' own assertions in their January 2014 letter that Dr. Lamego would inevitably misappropriate their trade secrets if he competed with their products and services in any way, JTX 2937 at 2. Although this theory was simply wrong on the merits—Dr. Lamego did not give Apple any trade secrets—if Plaintiffs wanted to assert that theory, they should have timely conducted inquiries to identify supporting evidence.

***Second***, Apple released the Series 0 Apple Watch less than one year after Dr. Lamego left Apple, and it featured optical sensors for noninvasive measurement of heart rate. *See* 4/12 AM at 84:6-14. Apple then released the Series 1 and 2 in 2016, which included similar technology. *See id.* Given Plaintiffs' (incorrect) assertion that they had expected to form a partnership of some kind with Apple to assist in the development of technology to noninvasively monitor physiological parameters, Plaintiffs should have

---

[3] While Apple submits that the only reasonable way to read Plaintiffs' January 2014 letter is as an expression of Plaintiffs' suspicion that Apple would misappropriate purported trade secrets through Dr. Lamego, *see* Dkt. 1705 at 21-22, it is at a minimum the *best* reading of Plaintiffs' letter. And again, in this procedural posture, this Court can resolve factual disputes in the first instance.

been put on notice of their (incorrect) purported trade secret claim when Apple released such a device after declining to partner with them and hiring Cercacor's CTO. Plaintiffs now expressly argue that L4 was used to test Series 0, 1, and 2 Watches, and that L5 was used in connection with Series 1 and 2 Watches. *See* Dkt. 1703 at 16, 18.

**Third,** the '052 patent, which published on March 3, 2016, should also have put Plaintiffs on notice of their purported trade secret claim. *See* JTX 1239 at 1. The '052 patent discloses that Dr. Lamego had worked on optical sensing technology for "a wearable fitness device [that] can be positioned against the skin of a user's wrist … and can obtain therefrom certain physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on." *Id.* at 8. Under the reasoning in Plaintiffs' 2014 letter, Dr. Lamego's contribution to the '052 patent would have "necessarily involve[d] the use or disclosure of Cercacor's trade secrets." JTX 2937 at 2. Yet Plaintiffs have offered no explanation for why their existing intellectual property monitoring process did not identify a patent that claimed technology so relevant to their own business—in fact, Plaintiffs claimed at trial that their own employees should be named as inventors on the '052 patent. Mr. Kiani admitted that Plaintiffs easily could have monitored Apple's patent filings for contributions by Dr. Lamego, but Plaintiffs never explained why they failed to take this simple and obvious step, *see* 4/6 AM Tr. 77:2-78:3 (Mr. Kiani testifying that he did not instruct anyone to monitor Apple's patent filings). Plaintiffs' inaction was particularly unreasonable given that Masimo represented in its 2015 Form 10-K filing that it routinely "[s]earch[ed] for existing intellectual property rights" relevant to their own business and technologies, including rights established by "competitors [that] filed for patent protection." Dkt. 38-7 at 32.

Together, these facts establish that Plaintiffs were put on inquiry notice of their (incorrect) misappropriation claim and should have known about the essential facts underlying their claim by no later than March 2016. At a minimum, therefore, Plaintiffs'

suit was filed more than three years and ten months after they should have known about the purported misappropriation.

### B. By Delaying, Plaintiffs Acquiesced To Any Purported Misappropriation And Prejudiced Apple

While Apple need only show that Plaintiffs' unjustified delay *either* (1) amounted to "acquiesce[nce] in the act about which [they] complain[]" or (2) "prejudiced [Apple,]" *Loma Linda*, 24 Cal. 4th at 77; *see Estate of Kampen*, 201 Cal. App. 4th at 1000, the record establishes both acquiescence and prejudice.

***First***, by delaying their filing for years after Apple released the Series 0, 1, and 2 Watches, Plaintiffs acquiesced in any supposed use of the purported trade secrets by Apple. Well before those models were released, Plaintiffs had already accused Apple of using Dr. Lamego as a conduit for misappropriation, and Mr. Kiani had allegedly been told that Apple asked Dr. Lamego to work on products that would compete with Plaintiffs' offerings. *See* JTX-2937; 4/5 PM Tr. 49:19-23. Yet Plaintiffs made no inquiry and registered no objection with Apple or Dr. Lamego for nearly five years after Series 0 was released. Such "lengthy gaps in [a plaintiff's] contacts with [a] defendant[] [and] its extended inactivity … c[an] support a finding of laches" by acquiescence. *Pac. Hills Homeowners Assn. v. Prun*, 160 Cal. App. 4th 1557, 1565 (2008).

***Second***, Plaintiffs' delay imposed significant prejudice on Apple in two ways. From an evidentiary perspective, Plaintiffs sought to prove their case by focusing on snippets of old documents and then urging the jury to disregard Apple's witnesses' contrary testimony as based on stale memories supplanted by suggestions from counsel. Plaintiffs' counsel introduced this theme in their opening statement, telling the jury that "e-mails … [are] better than anybody's memory" because "e-mails last," "documents don't lie," and "[t]here is no memory needed for what's going on in these e-mails." 4/5 AM Tr. 44:2-5. In closing, Plaintiffs' counsel again argued that "[m]emories fade but the ink doesn't," stressing that witness testimony should be disregarded because the

relevant events were "ten years ago," Plaintiffs were "using documents," and "[d]ocuments … do not lie."  4/26 AM Tr. 70:2-4; *see also* 4/26 PM Tr. 87:18-24 (similar argument in Plaintiffs' rebuttal closing); 4/25 Tr. 91:6-9 (rebuttal testimony from Mr. Kiani).  Plaintiffs similarly faulted Apple for *not* having documents to corroborate certain pieces of witness testimony about events that occurred ten years ago. *See, e.g.*, 4/26 AM Tr. 72:22-25 (Plaintiffs' counsel arguing in closing "obviously, we had to introduce the e-mails.  We introduced over 90 percent of the exhibits in this case.  This is a whole lot better than testimony ten years later."); *id.* 92:24-25.  In other words, Plaintiffs sought to capitalize on their own delay by using it to sow doubts about contrary testimony.  The "[e]videntiary prejudice" Plaintiffs created and exploited—i.e., where delay leads to "stale … or degraded evidence, or witnesses whose memories have faded," *see, e.g.*, Dkt. 1552 at 20:4-12 (Mr. Mansfield testifying that he did not remember Apple's interactions with Masimo or Mr. Kiani, because "you're asking me about things that happened 10 years ago")—is a classic example of when laches should apply*, see Danjaq*, 263 F.3d at 955.[4]

Plaintiffs' delay also prejudiced Apple because Apple "suffered consequences that it would not have, had [Plaintiffs] brought suit promptly." *Danjaq*, 263 F.3d at 955. Instead of timely asserting their claim, Plaintiffs waited for Apple to sell millions of Watches, then came to this Court claiming billions of dollars in unjust enrichment.  Most notably, without their six-year delay, Plaintiffs would have no viable theory for monetary relief, as their lone unjust enrichment theory relies on Watches sold in 2020-2022.  *See, e.g.*, 4/13 AM Tr. 91:19-25.  Plaintiffs' delay is particularly inequitable because they have conceded that there is no evidence that Apple knew that Dr. Lamego allegedly used or disclosed Plaintiffs' ATS during his six-month employment in 2014.

---

[4] Notably, this Court appeared to acknowledge that Plaintiffs' case relies largely on documentary evidence and that fact witnesses' testimony on issues like intent and whether Apple acted willfully and maliciously uniformly favors Apple.  *See, e.g.*, Dkt. 1724 at 3; 4/25 Tr. 97:23-24.

Rather, Plaintiffs' lead counsel argued only that certain employees at Apple "*should have known* … that trouble would brew" after Dr. Lamego was hired. 4/26 PM Tr. 77:9-11 (emphasis added); *see also, e.g., id.* 76:23-77:4 ("I do not need to show those witnesses were lying to prevail in this case…. [T]he word isn't whether you know, it's should have known. Mr. Hotelling should have known."), 80:11-16 ("[T]hey clearly should have known. And I accuse nobody of lying.").

## CONCLUSION

As discussed in Apple's parallel Rule 50(b) motion, Plaintiffs' trade secrets claim fails on the merits. For the reasons set forth above, Plaintiffs' claim is also barred by laches and waiver.

| | | |
|---|---|---|
| 1 | Dated: May 30, 2023 | Respectfully submitted, |

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
    Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 4,300 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

___ complies with the page limit set by court order dated Apr. 10, 2023.

Dated: May 30, 2023         Respectfully submitted,

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: */s/ Mark D. Selwyn*
    Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*