Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MEMORANDUM IN SUPPORT OF MASIMO'S RULE 52 MOTION FOR JUDGMENT REGARDING APPLE'S DEFENSES**<br><br>Date: July 24, 2023<br>Time: 1:30 pm<br>CTRM: 10C<br><br>Hon. James V. Selna |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARD ............................................................................1

III.  PROCEDURAL HISTORY .....................................................................1

    A.    Pretrial Conference Order ..........................................................1

    B.    The Parties' Prior Briefing Regarding Apple's Evidence...................2

    C.    The Court's Rule 50(a) Order Regarding Apple's Affirmative Defenses ...................................................................................2

    D.    Masimo Understood The Court's Order Resolved Laches and Waiver ....................................................................................3

IV.   ARGUMENT ........................................................................................4

    A.    Laches Is Not A Defense To Trade Secret Misappropriation...............4

    B.    Apple's Laches Defense Fails On The Merits ..................................5

        1.    Apple Has Not Shown Masimo Unreasonably Delayed In Filing Suit.............................................................................5

            a.    Apple Failed To Show Masimo Knew Of Apple's Technical Trade Secret Misappropriation .....................5

            b.    Apple Failed To Show Masimo Knew Of Apple's Business Trade Secret Misappropriation........................7

            c.    The Unrebutted Evidence Shows Masimo Filed Suit Promptly After Learning About Apple's Misappropriation In Late 2019 ....................................8

        2.    Apple Has Not Shown Acquiescence Or Prejudice.................11

    C.    Apple's Waiver Defense Fails On The Merits.................................12

    D.    The Court Should Formally Dismiss Apple's Other Defenses...........13

V.    CONCLUSION ...................................................................................13

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*Blaser v. State Teachers' Ret. Sys.*,
　86 Cal. App. 5th 507 (2022), *review denied* (Mar. 15, 2023) ............................5

5

*Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*,
　6 Cal. App. 4th 1266 (1992) ...........................................................................12

6

7

*City of Ukiah v. Fones*,
　64 Cal. 2d 104 (1962) .....................................................................................12

8

9

*Connolly v. Trabue*,
　204 Cal. App. 4th 1154 (2012) .........................................................................5

10

*Conti v. Board of Civil Service Commissioners*,
　1 Cal. 3d 351 (1969) .........................................................................................5

11

12

*Cnty. of Oneida v. Oneida Indian Nation of N.Y.*,
　470 U.S. 226 (1985)........................................................................................4, 5

13

14

*Cruz v. Nat'l Steel & Shipbuilding Co.*,
　910 F.3d 1263 (9th Cir. 2018) .........................................................................12

15

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
　30 Cal. App. 4th 54 (1994) .............................................................................12

16

17

*Granite State Ins. v. Smart Modular Tech.*,
　76 F. 3d 1023 (9th Cir. 1996) ...........................................................................1

18

*Johnson v. City of Loma Linda*,
　24 Cal. 4th 61 (2000) ........................................................................................5

19

20

*Lakeside–Scott v. Multnomah Cnty.*,
　556 F.3d 797 (9th Cir. 2009) ...........................................................................10

21

*Masimo Corp. v. True Wearables, Inc.*,
　2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ...........................................*passim*

22

23

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
　572 U.S. 663 (2014).........................................................................................4, 5

24

25

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
　894 F.3d 1015 (9th Cir. 2018) .......................................................................4, 5

26

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
　580 U.S. 328 (2017).........................................................................................4, 5

27

28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Solis v. Couturier,*
  2009 WL 2022343 (E.D. Cal. July 8, 2009) ....................................... 12

*Waller v. Truck Ins. Exchange, Inc.*
  11 Cal. 4th 1 (1995) ....................................................................... 12


# OTHER AUTHORITIES

Cal. Civ. Code § 3426.1 ..................................................................... 11

Cal. Civ. Code § 3426.6 ....................................................................... 5

Fed. R. Civ. P. 50 ........................................................................... 2, 3

Fed. R. Civ. P. 52 ....................................................................... 1, 3, 4

Pursuant to Fed. R. Civ. P. 52, Plaintiffs Masimo Corp and Cercacor Labs., Inc., ("Masimo") submit this Memorandum in Support Of Masimo's Rule 52 Motion for Judgment Regarding Apple's Defenses.

## I.  INTRODUCTION

Apple bore the burden to present at trial evidence sufficient to prevail on its affirmative defenses of laches and waiver. Apple failed to do so. Indeed, Apple did not even attempt to present any evidence that Apple suffered prejudice from any alleged unreasonable delay (laches), or that Masimo intentionally relinquished a known right (waiver). By contrast, Masimo presented overwhelming evidence confirming that neither defense applied. In ruling on the parties' Rule 50(a) motions, the Court observed that Apple had not presented either defense at trial. Masimo understood the Court's ruling as disposing of Apple's defenses. If the Court has not yet formally ruled on these defenses, Masimo requests the Court formally enter findings of fact and conclusions of law pursuant to Rule 52 that reject Apple's defenses of laches and waiver. Masimo also seeks formal judgment on defenses that Apple admits it did not pursue.

## II.  LEGAL STANDARD

Rule 50 applies to issues tried to a jury and Rule 52 governs issues tried to the court. *Granite State Ins. v. Smart Modular Tech.*, 76 F. 3d 1023, 1030-31 (9th Cir. 1996). "Rule 52(c) provides the court may enter judgment after a party has been 'fully heard'" and "[t]he advisory committee notes state that the rule 'authorizes the court to enter judgment *at any time* that it can appropriately make a dispositive finding of fact on the evidence.'" *Id.* at 1031 (quoting Fed. R. Civ. P. 52(c) and Advisory Committee Notes on 1991 Amendment) (emphasis added).

## III.  PROCEDURAL HISTORY

### A.  Pretrial Conference Order

The Pretrial Conference Order held that Apple's affirmative defenses of laches and waiver were issues for the Court. *See* Dkt. 1483 at 15:5-6. The Pretrial Conference Order also held that Apple's affirmative defenses of laches and waiver were not

bifurcated from the rest of trial.  *See id.* at 19:1-6.  Accordingly, Apple was required to prove laches and waiver at trial.  *See id.*

**B.** **The Parties' Prior Briefing Regarding Apple's Evidence**

Apple did not present any evidence at trial supporting laches or waiver. Accordingly, Masimo explained in its Rule 50(a) motion that:

> Apple raised numerous other defenses including ***laches*** (V), … readily ascertainable (VIII), … [and] ***waiver*** (XI), … .  The Court has already rejected Apple's readily ascertainable defense (VIII).  ***Apple presented no evidence on the other defenses. Thus, Masimo seeks JMOL on all defenses.***

Dkt. 1657 at 7:1-9 (first and second emphases added) (record citations omitted).

Apple did not identify any supporting evidence or dispute the lack of supporting evidence.  Apple raised only a procedural argument regarding when, and under which Rule, the Court should enter judgment:

> Plaintiffs are not entitled to JMOL on any of Apple's equitable affirmative defenses—i.e., laches, and waiver. The Court's pretrial conference order confirmed that those defenses are not issues to be submitted to the jury. …
> The time to address Apple's equitable defenses is during post-trial Rule 52 motion practice, to the extent that these issues remain live after the jury's verdict.

Dkt. 1663-1 at 4:19-5:1 (record citations omitted).

**C.** **The Court's Rule 50(a) Order Regarding Apple's Affirmative Defenses**

The Court's Rule 50(a) Order recited the parties' arguments and denied as "moot" Masimo's motion regarding Apple's affirmative defenses of laches and waiver.  The Order held:

> Plaintiffs also seek JMOL on the other defenses Apple maintained in the Final Pretrial Order, i.e., "***laches***, statute of limitations, ***waiver***, failure to mitigate, unclean hands, and readily ascertainable."

Apple responds that Plaintiffs are not entitled to JMOL on any of Apple's equitable affirmative defenses as those issues will not be submitted to the jury. Apple argues that other rulings have either mooted the issues Plaintiffs now raise, or there is nothing further for Apple to do because it has preserved other issues for appeal.

The Court rules that Plaintiffs motion fails on this ground. As Plaintiffs observe, Apple "represented off the record to the Court in preparing the jury instructions that it would no longer advance such [unclean hands] defense." Accordingly, the motion is moot on this ground. Turning to Apple's other defenses, for the reasons stated above, the motion is denied as to statute of limitations. ***The motion is moot as to the remaining defenses as none has been presented at trial***.

Dkt. 1724 at 19 (record citations omitted) (emphases added).

### D.   <u>Masimo Understood The Court's Order Resolved Laches and Waiver</u>

Masimo understood the Court's ruling on the parties' JMOL motions resolved Apple's defenses of laches and waiver, whether under Rule 50 or Rule 52. Had the Order meant that Masimo needed to wait until after trial to obtain a ruling on Apple's other affirmative defenses, the Order presumably would have denied the motion without prejudice as "premature" rather than "moot."

The Order found that Apple "presented at trial" no evidence or argument in support of its "remaining defenses," including laches and waiver. Dkt. 1724 at 19. Such findings were sufficient to resolve Apple's affirmative defenses pursuant to Rule 52. *See* Fed. R. Civ. P. 52(a) ("findings and conclusions … may appear in an opinion or a memorandum of decision") & 52(c) ("If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.").

If Masimo is correct, no further analysis is necessary to enter judgment on laches and waiver.  Regardless, Masimo now moves for judgment on those defenses under Rule 52.

## IV. ARGUMENT

### A. Laches Is Not A Defense To Trade Secret Misappropriation

Apple's laches defense fails because laches is an equitable defense that does not apply to legal claims for which the legislature expressly provided a statute of limitations period.  *See Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 678 (2014) ("laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation"); *id.* at 679 ("we adhere to the position that, in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief").  The Supreme Court recently elaborated that:

> The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power.

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 334-35, (2017).  The Ninth Circuit recognized that these rulings were neither surprising nor new.  "[A]lthough *Petrella* and *SCA Hygiene* are recent decisions, the idea that laches will not bar a claim for legal relief brought within the applicable statute of limitations is not." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1024 (9th Cir. 2018); *see Cnty. of Oneida v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 245 at n.16 (1985) ("application of the equitable defense of laches in an action at law would be novel indeed").

Even before *Petrella* and *SCA Hygiene*, the California Court of Appeal observed that, "it is well-established, both in California and generally, that laches applies to equitable actions, not actions at law." *Connolly v. Trabue*, 204 Cal. App. 4th 1154, 1164, (2012).  The California Court of Appeal recently cited *Petrella* and *SCA Hygiene* and explained that, "[e]ven where equitable claims are combined with actions at law, laches remains unavailable as a defense to the legal claims." *Blaser v. State Teachers' Ret. Sys.*, 86 Cal. App. 5th 507, 540 (2022), *review denied* (Mar. 15, 2023).

Trade secret misappropriation is a legal claim for which the California legislature expressly provided a statute of limitations.  *See* Cal. Civ. Code § 3426.6.  Thus, laches is simply not a defense to trade secret misappropriation, regardless of whether Masimo also sought equitable relief.  *See Petrella*, 572 U.S. at 678-79; *SCA Hygiene*, 580 U.S. at 334-35; *Oneida*, 470 U.S. at 244, n.16; *Pinkette*, 894 F.3d at 1024; *Connolly*, 204 Cal. App. 4th at 1164; *Blaser*, 86 Cal. App. 5th at 540.  This alone is sufficient to grant judgment on Apple's laches defense.

**B.      Apple's Laches Defense Fails On The Merits**

"'The defense of laches requires [1] unreasonable delay plus either [2a] acquiescence in the act about which plaintiff complains or [2b] prejudice to the defendant resulting from the delay.'" *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000) (quoting *Conti v. Board of Civil Service Commissioners*, 1 Cal. 3d 351, 359 (1969)); *see Masimo Corp. v. True Wearables, Inc*., 2022 WL 17083396, at *20 (C.D. Cal. Nov. 7, 2022).

As shown below, Apple has not met its burden to establish either element.

**1.      Apple Has Not Shown Masimo Unreasonably Delayed In Filing Suit**

**a.      Apple Failed To Show Masimo Knew Of Apple's Technical Trade Secret Misappropriation**

In the Pretrial Conference Order, and Apple's Memorandum of Contentions of Fact and Law, Apple disclosed that its laches defense would rely on evidence that Masimo was purportedly aware of the misappropriation by 2018 based on the

publication of disputed Apple patents. *See* Dkt. 1483 at 11:9-22, 12:10-23; Dkt. 1361 at 19:11-25, 21:20-22. This is the only proffered evidence that appears to relate to Apple's contention that Masimo knew Apple was misappropriating the technical trade secrets. However, no evidence shows Masimo was aware in 2018 of any Apple patent that contained any Masimo technical trade secrets.

Apple also introduced evidence that, during prosecution of a Masimo patent, Masimo's patent prosecution attorneys submitted an Information Disclosure Statement ("IDS") to the Patent Office in December 2018 that listed one of the disputed Apple patents among about a thousand references. Trial Tr., Day 3, vol. I, at 82:24-83:23 (discussing U.S. Patent No. 10,078,052, also referred to as the '052 patent). This is irrelevant for multiple reasons.

First, neither Masimo nor Apple contends the '052 patent discloses any of the asserted trade secrets. In fact, the evidence establishes the cited patent did ***not*** include Masimo's trade secrets. Trial Tr., Day 3, vol. I, at 98:20-24. Nothing suggests the '052 patent did (or should have) informed Masimo of Apple's trade secret misappropriation.

Second, Apple did not establish that any Masimo employee (as opposed to its outside counsel) was aware of the '052 patent in 2018 or knew of its contents. Kiani expressly testified that he was not aware of the patent and was not involved in preparing the IDS. *Id.* at 82:9-11 ("I was not personally aware of it."). Apple did not ask other Masimo employees whether they were aware of the patent in 2018. Thus, no evidence shows Masimo knew of the '052 patent in 2018.

Third, Masimo filed that IDS in December 2018—one year before filing this lawsuit in January 2020. *Id.* at 83:5-8. Apple did not present any evidence that one year would have been an unreasonable amount of time to investigate the patent and trade secret claims in the complaint, or that Apple would have been prejudiced by passage of a year.

**b.** **Apple Failed To Show Masimo Knew Of Apple's Business Trade Secret Misappropriation**

In the Pretrial Conference Order, and Apple's Memorandum of Contentions of Fact and Law, Apple disclosed that its laches defense would rely on evidence that Masimo was or should have been aware of Apple's misappropriation based on Apple's release of HealthKit in 2014 and ResearchKit in 2015. *See* Dkt. 1483 at 11:9-22, 12:10-23; Dkt. 1361 at 19:11-25, 21:20-22. This is the only proffered evidence that appears to relate to the business and marketing trade secrets. The publicly available information in 2014 and 2015 about HealthKit and ResearchKit did not suggest Apple's misappropriation for multiple reasons.

For example, the available information did not disclose aspects of B1 (and therefore all business trade secrets), such as a confidential ██████████████████ to, among other things, ████████████     for use ████████████████ ████████████████████████████████████████ .]" *See* Dkt. 1430 at 23-24. Nor did the available information disclose the additional aspects of B2, which include ██████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.* at 27.

Apple's witnesses explained that ResearchKit is a set of software modules to help third-party developers create software applications. *See* Trial Tr., Day 9, vol. II, at 45:1-12 ("ResearchKit is a set of components that – they're typically called frameworks, and they are sections of code that do very specific things."). Apple's witnesses explained that HealthKit is a repository for data for use with Apple's Health application, and expressly stated it is not marketed to healthcare providers. *Id.*, Day 9, vol. II, at 43:13-16 ("It's a data repository on the phone."); *id.* Day 10, vol. I, at 79:9-17 ("It is a technology framework that developers can use to offer the users of their apps to share data in or out of the health app and iPhone."); *id.* at 80:2-6 ("it's meant to help users

share information to a third-party app or from a third-party app into the health app"). On cross-examination, Apple's witness confirmed that HealthKit does not perform any measurements or monitor any physiological parameters. *Id.* at 122:5-11.   Apple's witness also explained that Apple does not "market HealthKit to healthcare providers[.]" *Id.* at 80:7-11.

Apple's own witnesses established that neither the information available about ResearchKit nor the information available about HealthKit disclosed that Apple was implementing a business and marketing plan that involved ██████████████████ ████████████████████████████████████████████████████████ ██████████████ or ██████████████████████████████████████ ████████████████████████████████████ Therefore, Apple's launch of these applications did not notify Masimo that Apple was misappropriating Masimo's business and marketing trade secrets.

     c.    **<u>The Unrebutted Evidence Shows Masimo Filed Suit Promptly After Learning About Apple's Misappropriation In Late 2019</u>**

At trial, Kiani testified he was unaware of Apple's misappropriation until late 2019.  He also explained that Masimo did not delay filing suit.  The evidence at trial told a consistent story that Masimo filed suit just three months after Kiani learned of Apple's misappropriation.

For example, when Lamego left for Apple, Lamego personally assured Kiani that Lamego would not violate the confidentiality obligations Lamego owed to Masimo:

> Q.    And do you recall what was discussed between you and [Dr. Lamego] about his resignation?
>
> A.    Yeah.  I just couldn't understand it.  I said, "Look, we have noninvasive glucose.  We have all these things.  Why would you go?" He didn't make a lot of sense.  The only thing he told me, he said, "Don't worry.  I'm never going to compete with you. It goes against

1            my integrity and ethics.   If they ever ask me to do anything

2            competitive to you, I will leave."  That's what I remember.

3  Trial Tr., Day 2, vol. II, at 47:3-12 (Kiani).

4         Kiani testified that a friend of Lamego, who was also a former Cercacor employee,

5  further reassured Kiani that Lamego had not disclosed trade secrets.  The friend and

6  former co-worker, Cristiano Dalvi, told Kiani that, just as Lamego promised, Lamego

7  "left [Apple] when Apple asked him to do something competitive to [Masimo]."  *Id.*,

8  at 49:13-50:11.  Kiani testified that he believed Dalvi:

9      Q.     And did you believe in what Cristiano Dalvi told you about

10           Dr. Lamego's departure from Apple?

11     A.     I did.  But obviously, I was wrong.  But I did.

12     Q.     But at the time?

13     A.     At the time, I did.  I was happy that he had not spilled our confidential

14           information.

15 *Id.* at 50:6-11.   Kiani also explained how Masimo first learned of Apple's

16 misappropriation:

17     Q.     How did you learn that what Cristiano Dalvi told you about

18           Dr. Lamego's departure from Apple was not true?

19     A.     In 2019, a series of patents issued to Apple with Dr. Lamego as the

20           inventor, and it was on our stuff, things that was in our notebooks

21           and done by Mr. Diab or Mr. Jeroen [Poeze].

22 *Id.* at 50:12-19 (Kiani); Trial Tr., Day 3, vol. I, at 61:22-62:10 (Kiani).  Kiani had no

23 knowledge of "any other Dr. Lamego-filed patents on behalf of Apple before

24 October 2019." *Id.* at 95:16-19 (Kiani).

25        Apple had argued that Masimo did not conclusively prove Kiani's knowledge of

26 Apple's misappropriation is "co-extensive with the knowledge of Plaintiffs as corporate

27 entities."  Dkt. 1663-1 at 3.  But Kiani is the founder and CEO of both Masimo and

28 Cercacor.  Trial Tr., Day 2, vol. II, at 97:13-15.  He was the companies' representative

at trial.  Apple presented no evidence that anyone else at either company had earlier knowledge of Apple's misappropriation.  Apple cannot prevail on an affirmative defense by speculating that other evidence *might* exist.  *See Lakeside–Scott v. Multnomah Cnty.*, 556 F.3d 797, 808 (9th Cir. 2009) (rejecting non-movant's argument against JMOL because it "would be pure speculation").

The evidence also showed that Apple prevented Masimo from learning of the misappropriation before 2019, in part, because Apple requested that the Patent Office not publish the patent application ████████████████.  JTX-1899 at -456 (prosecution history for the patent application that issued as the '754 Patent).  As a result, that patent specification did not publish until it issued as a patent in March 2019 (*id.* at -724)—a few months before Masimo discovered it and less than one year before Masimo filed suit.  The record contains no contrary evidence.

Apple previously argued that Masimo's 2014 warning letter to Apple shows Masimo was "suspicious" that Apple might misappropriate trade secrets in the future.  Dkt. 1655-1 at 21-22.  That is irrelevant because suspicion or concern that something might happen in the future does not establish knowledge that it happened.  *See* Dkt. 606 at 3, 7 (Court explaining that "a suspicion that [trade secrets] theoretically *could* be shared provides an insufficient basis for filing a trade secret misappropriation claim").  Nor could the letter be evidence of knowledge of general wrongdoing.  Masimo sent the letter *before* Lamego even began working at Apple.  *See* JTX-2937.

Moreover, the letter cautioned Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers."  JTX-2937 at -094.  It also declared Masimo's "trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information."  *Id.*  Apple never responded, much less revealed that it misappropriated Masimo's trade secrets.  Far from showing Masimo knew of Apple's misappropriation, the letter shows Masimo was

making "reasonable efforts" to maintain the secrecy of its trade secrets and reduce the chance of *future* misappropriation. *See* Cal. Civ. Code § 3426.1(d)(2). This further confirms Masimo's diligence and reasonableness.

Accordingly, the evidence shows Masimo filed suit in January 2020, promptly after learning of Apple's misappropriation in late 2019. Even if Apple had shown Masimo learned of Apple's misappropriation in December 2018, Apple introduced no evidence that filing suit one year later would constitute undue delay. The Court should grant judgment in favor of Masimo because Apple has not met its burden on the first element of its laches defense.

### 2.     Apple Has Not Shown Acquiescence Or Prejudice

In the Pretrial Conference Order, and Apple's Memorandum of Contentions of Fact and Law, Apple did not assert that Masimo acquiesced to Apple's misappropriation, nor did Apple disclose *any* evidence it planned to present as allegedly showing that Masimo acquiesced. Apple asserted only that it would show Apple was prejudiced by Masimo's purported decision to wait nearly seven years before filing this suit. *See* Dkt. 1483 at 11:9-22, 12:10-23; Dkt. 1361 at 19:11-24, 21:20-22. Apple asserted that it would present this evidence through witnesses Hotelling and Caldbeck, and through documentary evidence. *See* Dkt. 1483 at 11:9-22, 12:10-23. Apple provided no such evidence. Nor did Apple even suggest it could provide evidence of prejudice from a one-year delay (under Apple's theory that Masimo learned of misappropriation in 2018).

Neither Hotelling nor Caldbeck were asked any questions, or offered any testimony, regarding alleged prejudice due to alleged delay in Masimo filing suit. *See* Trial Tr., Day 8, vol. II, at 88:13-133:2 & Day 9, vol. I, at 18:1-74:16 (Hotelling); *id.*, Day 10, vol. I, at 72:22- 126:8 (Caldbeck). Apple also offered no documentary evidence suggesting Apple suffered any prejudice due to alleged delay. Thus, the Court should also grant judgment in favor of Masimo because Apple has not met its burden on the second element of its laches defense.

### C.   **Apple's Waiver Defense Fails On The Merits**

"Under California law, 'waiver is the *intentional* relinquishment of a known right *after knowledge* of the facts.'" *Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018) (quoting *Waller v. Truck Ins. Exchange, Inc*. 11 Cal. 4th 1, 31 (1995)).  "The burden ... is on the party claiming a waiver of a right to prove it by ***clear and convincing evidence*** that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver'" *Waller*, 11 Cal. 4th at 31 (emphasis added, ellipsis in original) (quoting *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107-08 (1962)); *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994); *but see* Dkt. 1483 [Pretrial Conference Order] at 10:17-18 ("Apple must prove by a preponderance of the evidence, for each asserted claim, that Masimo intentionally relinquished or abandoned a known right.").  Apple's waiver defense fails under a "clear and convincing" or a "preponderance of the evidence" standard.

Apple's pretrial filings identified no evidence that would supposedly show Masimo intentionally relinquished a known right.  Consistent with those filings, Apple presented no such evidence at trial.  The record also contains no evidence of Masimo ever intentionally relinquishing any known right.  Instead, the evidence discussed above shows Masimo did not know of Apple's misappropriation until October 2019—just three months before filing suit.  *See supra*, Section B.1.

Apple's arguments regarding purported delay are particularly insufficient to establish waiver because alleged "delay in bringing this suit, so long as it satisfies the statute of limitations, cannot constitute waiver of any cause of action… ."  *Solis v. Couturier*, 2009 WL 2022343, at *2 (E.D. Cal. July 8, 2009) (striking affirmative defense of waiver); *see also Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*, 6 Cal. App. 4th 1266, 1275 (1992) ("Unreasonable delay in asserting a right does not, in itself, warrant a finding of waiver of the right.") (finding in dicta right to arbitration was neither waived nor barred by laches).

**D.     The Court Should Formally Dismiss Apple's Other Defenses**

Apple's Answer listed other affirmative defenses, including readily ascertainable (8th), intervening acts (12th), failure to mitigate (13th), and unclean hands (14th).  Dkt. 370 at 74-88.  Apple abandoned the intervening acts defense before trial.  Apple admits it did not present readily ascertainable, unclean hands, or failure to mitigate defenses at trial.  Dkt. 1663-1 at 5.  Accordingly, Masimo moved for judgment under Rule 50(a) on those defenses.  Dkt. 1657 at 7.  Masimo understood the Court's Order recognized Apple had abandoned those defenses.  *See* Dkt. 1724 at 19.

## V.  CONCLUSION

For the reasons set forth above, Masimo respectfully requests the Court formally enter findings of fact and conclusions of law supporting partial judgment rejecting Apple's affirmative defenses of laches, waiver, readily ascertainable, intervening acts, failure to mitigate, and unclean hands.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 30, 2023                    By: */s/ Benjamin A. Katzenellenbogen*

Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Irfan A. Lateef
Brian C. Horne
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 3,998 words, which [choose one]:

<u>X</u> complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated:  May 30, 2023                    By: */s/ Benjamin A. Katzenellenbogen*
                                            Joseph R. Re
                                            Stephen C. Jensen
                                            Sheila N. Swaroop
                                            Irfan A. Lateef
                                            Brian C. Horne
                                            Benjamin A. Katzenellenbogen
                                            Brian C. Claassen
                                            Stephen W. Larson
                                            Mark D. Kachner
                                            Adam B. Powell
                                            Kendall M. Loebbaka
                                            Daniel P. Hughes

                                            Attorneys for Plaintiffs
                                            MASIMO CORPORATION and
                                            CERCACOR LABORATORIES, INC.

57639529