Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | Case No. 8:20-cv-00048-JVS-JDE <br><br> **PLAINTIFFS' REPLY MEMORANDUM REGARDING ITS MOTION TO RECONSIDER AND VACATE JUDGMENT AS A MATTER OF LAW ON BUSINESS TRADE SECRET B2** <br><br> Date: June 12, 2023 <br> Time: 1:30 pm <br> Courtroom: 10C <br><br> Hon. James V. Selna |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................2

    A.    Apple Admits It Ignores Aspects Of B2 .........................................2

    B.    The Order Committed Manifest Error By Rewriting B2 .................3

        1.    Apple Agrees That Interpreting Trade Secrets Is A Question Of Fact .........................................................................3

        2.    The Order Erred By Resolving A Disputed Question Of Fact ...4

            a.    Apple Inaccurately Asserts The Order Did Not Rewrite B2.........................................................................5

            b.    Apple Does Not Justify Ignoring Masimo's Evidence Regarding The Scope And Meaning Of B2 .................5

            c.    Apple's Criticisms Identify Factual Disputes And Demonstrate Why JMOL Was Inappropriate.................7

        3.    Apple's Arguments About Masimo Being "Bound" By The 2019.210 Disclosure Lack Merit ...............................8

        4.    Apple's Cited Cases Confirm The Order Erred........................9

    C.    The Order Committed Manifest Error By Ignoring Evidence That B2 Was Not Generally Known ....................................................11

        1.    Apple Applies Incorrect Legal Standards.................................11

        2.    Neither The Order Nor Apple Address The Substantial Evidence That B2 Was Not Generally Known.........................11

            a.    Kiani Provided Substantial Evidence That B2 Was Not Generally Known............................................................12

            b.    Palmatier Provided Substantial Evidence That B2 Was Not Generally Known......................................................13

        3.    Neither the Order Nor Apple Cites Unrebutted Evidence That Compels Finding B2 Was Generally Known ...........................14

            a.    Masimo's Press Releases Do Not Compel Finding For Apple .......................................................................14

            b.    O'Reilly's Testimony Does Not Compel Finding For Apple .......................................................................16

            c.    Kivetz's Testimony Does Not Compel Finding For

Apple ............................................................................16

          d.    The Order Could Not Have Relied On Disputed Evidence ....................................................................18

          e.    Apple's Citations To The Hearing Do Not Support The Order ............................................................................18

  D.    Masimo's Motion Is Procedurally Proper ...........................................18

      1.    The Court Has Inherent Authority To Reconsider Its Order ....18

      2.    Masimo's Motion Is Proper Under The Rules.........................19

III. CONCLUSION .................................................................................21

# TABLE OF AUTHORITIES

Page No.

*389 Orange St. Partners v. Arnold*,
   179 F.3d 656 (9th Cir.1999) ..................................................20

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*,
   226 Cal. App. 4th 26 (2014) ................................................13

*EnterTrode, Inc. v. General Capacitor Co. Ltd.*,
   2019 WL 1715170 (N.D. Cal. Apr. 17, 2019).......................8

*Finnegan v. United States*,
   2021 WL 8820874 (C.D. Cal. Dec 9, 2021)........................20

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) .................................................8

*Lopez v. Am. Express Bank, FSB*,
   2010 WL 3637755 (C.D. Cal. Sept. 17, 2010) ...................20

*Masimo Corp. v. True Wearables*.
   2021 WL 2548692 (C.D. Cal. Apr. 28, 2021) .....................19

*Masimo Corp. v. True Wearables Inc.*,
   2021 WL 2548690 (C.D. Cal. Apr. 28, 2021) .......................9

*Mattel, Inc. v. MGA Ent., Inc.*,
   2011 WL 3420571 (C.D. Cal. Aug. 4, 2011) ..................9, 10

*MGA Ent. Inc. v. Harris*,
   2022 WL 4596585 (C.D. Cal. Sept. 7, 2022) ......................20

*Ochoa v. Cnty. Of Kern*,
   2023 WL 2143466 (E.D. Cal. Feb. 21, 2023) .......6, 7, 15, 17

*Pacific Fuel Co. v. Shell Oil Co.*,
   2008 WL 11336467 (C.D. Cal. Jan. 24, 2008)......................3

*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133 (2000)..............................................6, 7, 18

*West Coast Stock Transfer, Inc. v. Terra Tech Corp.*,
   2019 WL 1878348 (C.D. Cal. Feb. 14, 2019) ...............19, 20

*Whatru Holding, LLC v. Bouncing Angels, Inc.*,
   2015 WL 12862716 (C.D. Cal. Feb. 17, 2015) ....................20

*Wilson–Condon v. Allstate Indem. Co.*,
   2011 WL 3439272 (C.D. Cal. Aug. 4, 2011) .......................20

# OTHER AUTHORITIES

Fed. R. Civ. P. 50 ................................................................................7, 10, 18

Fed. R. Civ. P. 60 .......................................................................................18

Fed. R. Civ. P. 59 .......................................................................................18

Local Rule 7-18 ..........................................................................................18

# I.  **INTRODUCTION**

Apple expressly concedes that it makes no attempt to support the Order's conclusion that all aspects of B2 were generally known.  Instead, Apple addresses only the aspects of B2 that differ from B1.  But B2 incorporates all of B1.  Apple's inability to support the Order regarding B2 as a whole confirms the Order erred.

Apple also concedes that determining the scope and meaning of the asserted trade secrets is a question of fact for the jury.  Apple asserts the Order analyzed the competing evidence and concluded that no reasonable jury could reach any conclusion other than the Order's definition of B2.  Apple is wrong.  The Order cited no evidence supporting or opposing its definition and provided no analysis.  Apple's attempt to backfill the omitted analysis fails because Apple offers no reason preventing the jury from accepting Masimo's proffered interpretation.  Far from supporting JMOL, Apple's criticisms merely identify a factual issue that should have been decided by the jury.

The Order also erred by failing to consider Masimo's affirmative evidence that the asserted trade secrets derive economic value from not being generally known.  Apple argues the jury did not have to accept Masimo's evidence but identifies no reason the jury could not have accepted it.  This confirms the Order improperly granted JMOL by resolving disputed factual issues against Masimo.

Unable to present undisputed evidence supporting the Order, Apple presents confusing and inconsistent legal arguments regarding whether the jury is "bound" by the exact wording of the 2019.210 disclosure.  Apple plays word games by characterizing the Order's interpretation as a "definition" and Masimo's interpretation as an attempt to "narrow" or "limit" the trade secret.  Apple cannot have it both ways.  It is undisputed that the Order did not apply the exact wording of the 2019.210 disclosure.  The Order erred either by deviating from that language or by failing to consider disputed evidence regarding the scope and meaning of the trade secrets.

## II. __ARGUMENT__

### A. __Apple Admits It Ignores Aspects Of B2__

Apple's arguments regarding B2 are irrelevant and unhelpful because Apple does not address all aspects of B2. The description of B2 in the juror notebooks recited "***the strategy described in B1 above, and*** ███████████████████ ███████████████████████████ ████████████████████████ Dkt. 1430 at 27 (emphasis added). Apple makes no attempt to address the totality of B2, particularly the strategy and products described in B1. Instead, Apple expressly concedes that its Opposition "discusses __only__ the aspects of B2 that are __distinct from__ B1." Opp. [Dkt. 1738-1] at 2, n.1.

All aspects of B2 are important and Apple cannot ignore any of them. Masimo's expert, Palmatier, reiterated that B2 includes all of B1, as well as additional aspects. *See* Trial Tr., Day 6, vol. II, 41:21-42:18 ("B2 is all about using the product from B1's marketing strategies."); *see also id.*, Day 13, vol. I, 113:5-9. Masimo's opening brief explained that "the cited evidence, individually and collectively, does not address the additional aspects of B2, much less disclose those concepts __as part of a strategy involving the products described in B1__." Mem. [Dkt. 1736] 10:17-19 (emphasis added). Masimo also explained that the evidence did not support the Order's conclusion regarding B1. *Id.* at 10:9-11:24, 12:3-16, 13:15-14:2.

The Court correctly instructed the jury that it was to address "whether the trade secret lacks independent economic value because the trade secret __as a whole__ is generally known to the public or to other persons who can obtain economic value from their disclosure or use." Instruction No. 24 [Dkt. 1715] at 33:13-15 (emphasis added). As the Court explained, "[a] trade secret can be protectable even if some or all of the individual parts or 'elements' of the trade secret were generally known to the public or to other persons who can obtain economic value from its disclosure or use." *Id.* at 33:10-13; *see also Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 47

(2014) ("even if some or all of the elements of Altavion's design were in the public domain and thus unprotectable, the combination was a protectable trade secret if it was secret and had independent economic value").

Apple's decision to ignore the aspects of B1 incorporated into B2 render its arguments irrelevant.  Indeed, Apple cannot show that B2 *as a whole* is generally known by referring to only some aspects of the trade secret.  The Court should summarily grant Masimo's motion because Apple presented no relevant opposition.

## B.   The Order Committed Manifest Error By Rewriting B2

Apple's arguments confirm that the Order erred by usurping the jury's fact-finding role in determining the scope and meaning of the asserted trade secrets.

### 1.   Apple Agrees That Interpreting Trade Secrets Is A Question Of Fact

Apple previously argued the jury would determine the scope and meaning of the trade secrets as a question of fact based on competing evidence.  Apple asserted one expert would provide the jury with "his best understanding as a clinician of what the secret encompasses," and another would provide "his best understanding as a marketing expert of what the secret encompasses[.]"  Dkt. 1225 at 14:11-12, 14:22-23.  Apple argued the trade secrets "are long and filled with jargon, and many comprise several steps."  *Id.* at 17:3-4.  Apple asserted that its experts had to "adequately define" terms of art, including ███████████████████████  *Id.* at 17:5-8.  Apple claimed that such testimony was "permissible because the specialized meaning of such terms is typically outside the knowledge and experience of the trier of fact, and expert testimony will be helpful to an understanding of such terms'" *Id.* at 17:16-18 (quoting *Pacific Fuel Co. v. Shell Oil Co.*, 2008 WL 11336467, at *3 (C.D. Cal. Jan. 24, 2008)).

Apple's opposition also recognizes that "a jury may interpret the words that a plaintiff used to describe its purported secrets."  Opp. 11:26-27.  Apple concedes "[t]he parties agreed that this Court could so instruct the jury[.]"  *Id.* at 11:28.  Thus, there should be no dispute that, as reflected in the Court's jury instructions, interpreting the scope and meaning of the asserted trade secrets is a question of fact for the jury.

Nevertheless, Apple argues that Masimo somehow "waived" the right to argue that interpreting the trade secrets is a question of fact by endorsing the special jury instruction that ultimately became Instruction No. 20. *See* Opp. at 2:3-12, 12:20-27. But Apple conspicuously omits part of the instruction. The Court correctly told the jury:

> Even though Plaintiffs' lawyers were involved in drafting the required disclosures, ***non-lawyer witnesses, such as an engineer, may testify about the Asserted Trade Secret's scope and meaning***, efforts to keep the Asserted Trade Secret a secret, the value of the trade secrets, ***and other related facts***. As I previously instructed you, ***you must decide the facts based on evidence presented through the witnesses***, not the arguments of counsel.

Dkt. 1715 at 27:15-20 (emphases added). Thus, the full instruction recognized that the jury was obligated to decide the scope and meaning of the trade secrets based on the evidence. *See id.* The instruction was consistent with prior decisions from the Ninth Circuit and other courts in this circuit. *See* Mem. at 6:6-8. Masimo could not have "waived" the right to argue the "scope and meaning" of a trade secret is a factual question for the jury by agreeing to an instruction stating precisely that.

Apple argues that Masimo "prevailed in convincing the Court that the jury is not entitled to determine the scope of the purported trade secrets when doing so was to [Masimo's] benefit," so Masimo should "not be permitted to argue the opposite now[.]" Opp. at 13:2-4. Masimo never disputed that the jury is entitled to determine the scope and meaning of the asserted trade secrets. As Apple admits, Masimo argued the jury should not decide whether Masimo had satisfied the "sufficient particularity" requirement of Section 2019.210. *See id.* Resolving the sufficiency of Masimo's 2019.210 disclosure as a discovery issue was consistent with both parties' position that the scope and meaning of the trade secrets is a factual question for the jury.

### 2.    The Order Erred By Resolving A Disputed Question Of Fact

Apple argues that "nothing in this Court's decision suggests that it deviated from"

the "principle" that interpreting the scope and meaning of the trade secrets is a question of fact for the jury.  Opp. at 11:28-12:1.  Apple is wrong.

### a.    Apple Inaccurately Asserts The Order Did Not Rewrite B2

Apple first argues that "nothing" in the Order "suggests" the Court interpreted the scope and meaning of B2 as a matter of law.  Opp. at 12:6-9.  Apple claims the Order "assessed the trial record and held that no reasonable jury could interpret B2 in any way *other* than the Court's definition." *Id.* at 12:10-11.  That confirms the Court did, in fact, redefine the trade secret.

Moreover, Apple fails to show the Order conducted the required analysis.  Indeed, Apple's only support for its assertion is that the Order stated "no reasonable juror could find for [Masimo] regarding whether the alleged 'B' category trade secrets were generally known." *Id*. at 12 (citing Dkt. 1724 at 7).  But that says nothing about the scope and meaning of B2.  The Order did not discuss any evidence as to the scope and meaning of the disputed terms in B2. *See id.* at 5-7.  Nor did it explain why a reasonable jury could not have accepted Masimo's evidence. *See id.*

### b.    Apple Does Not Justify Ignoring Masimo's Evidence Regarding The Scope And Meaning Of B2

Masimo presented substantial evidence regarding the meaning of the terms of art in B2, including ███████████████████████████████████████  Such evidence included Kiani's testimony about the meaning of ████████████ and its relationship to the ████████  *See* Trial Tr., Day 3, vol. I, at 32:10-38:6, 33:11-34:10, 34:18-35:14, 35:20-22, 56:16-18.  Apple's own witness, O'Reilly, admitted that he too has a similar understanding of the meaning of ████████████  *Id*., Day 9, vol. II, at 11:16-20.  Palmatier testified about how a notebook and a picture of whiteboard also supported Masimo's interpretation of these terms.  *See Id*., Day 6, vol. II at 43:9-49:9; PDX3-37 to PDX3-39; PDX3-42 to PDX3-43; JTX507.  Masimo also offered an internal Apple email regarding the importance of ████████████████████ ████████████████████████████████████████████████████

████████████████████████████████ JTX-502 at -644, -643.

The Order appears to have improperly discounted Masimo's evidence as somehow irrelevant or improper.  *See* Order at 6 n.2 ("To the extent Palmatier's testimony intended to imply that some hidden strategy may be read between the lines of B1 as it was disclosed in this case, as stated, that missates the law because an alleged trade secrets cannot evolve during trial."); *see also id.* at 5 ("[n]either Kiani nor Palmatier's testimony on this point can change the asserted trade secrets"), 6 ("[c]onclusory testimony suggesting there is something more hidden behind B1 as defined by Plaintiffs cannot save it").  But that is not permissible on JMOL.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) (courts "must disregard all evidence favorable to the moving party that the jury is not required to believe") *Ochoa v. Cnty. Of Kern*, 2023 WL 2143466, at *2 (E.D. Cal. Feb. 21, 2023) ("The court gives credence to evidence in favor of the moving party only if it is 'uncontradicted and unimpeached' and 'comes from disinterested witnesses.'" (quoting *Reeves*, 530 U.S. at 151)).

Apple argues that Masimo failed to "identify any testimony or documentary evidence stating that B2 is *limited* to [Masimo's] preferred definition[.]" Opp. at 14:16-18 (emphasis added).  But Masimo did not attempt to "limit" B2 to a "preferred definition."  As explained above, Masimo offered evidence regarding the ***meaning*** of the terms of art used in B2.  Apple itself agreed such evidence is proper because B2 used terms of art that needed to be explained to the jury.  *See, e.g.,* Dkt. 1225 at 17:5-8.  Thus, Masimo's evidence was not narrowing, limiting, or changing the scope of B2.

Apple then asserts that Masimo does not "point to any record cite at all where the language [in the exemplary description of B2] appears."  Opp. at 14:21-22.  Apple's suggestion that Masimo's evidence needed to use the specific words of B2 is inconsistent with the Order.  The Order recognized the question is not whether evidence "contains the literal words of the alleged trade secret" but "whether the overall scope of what is

disclosed in the alleged trade secret may be understood from the information" presented. Order at 7 n.3; Opp. at 19:14-18 (quoting same).

### c. **Apple's Criticisms Identify Factual Disputes And Demonstrate Why JMOL Was Inappropriate**

Apple does not dispute it offered no affirmative evidence of the terms ████ ██████████████████████████ much less one that any reasonable jury would have needed to accept. Instead, Apple complains that Masimo does not identify any "non-conclusory" Kiani testimony that B2 was "limited" to particular concepts. Opp. at 15:7-10. Apple does not explain why Kiani's testimony is "conclusory." Regardless, that criticism would merely be a basis to argue the jury should not accept the testimony. Such criticism, at best, identifies a factual dispute for the jury to resolve. It does not support ignoring Masimo's evidence and granting JMOL.

Apple also inaccurately suggests that Masimo was unable to explain at oral argument why the trade secrets differ from other knowledge. *See* Opp. at 15:15-19; *see also id.* at 6:16-7:3. Masimo's counsel explained why B2 did not encompass decades-old knowledge, including because B2 involved more than just data collection. *See* Trial Tr., Day 13, vol. II at 114:17-115:5; *see also id.* at 115:18-22.

Apple also presents its own interpretation of O'Reilly's testimony. *See* Opp. at 15:20-16:8. Apple similarly discounts documentary evidence. *See id.* at 16:9-21. Again, that merely identifies a factual dispute for the jury. On Rule 50(a), the Order could not adopt Apple's interpretation over Masimo's. *See Reeves*, 530 U.S. at 151; *Ochoa*, 2023 WL 2143466, at *2.

Apple asserts that Palmatier "conceded that neither the notebooks nor the whiteboard drawing actually discloses B2[.]" Opp. at 16:13-14. That is irrelevant to whether they provided evidence on which the jury could rely to understand disputed terms of art. Regardless, Apple's characterization of the testimony is false. Palmatier testified that the whiteboard drawing reflected only ***part*** of B2 because it primarily related to B1. Trial Tr., Day 7, vol. I, at 36:9-14. Palmatier then merely testified "[t]hose

-7-

words themselves do not encapsulate any one of the full trade secrets." *Id.* at 62:2-12. That is entirely consistent with the Order's statement that the relevant question is "whether the overall scope of what is disclosed in the alleged trade secret may be understood from the information" presented. *See* Order at 7 n.3.

Finally, Apple attempts to distinguish an email that establishes both the meaning of the terms of art, and O'Reilly and Perica's enthusiasm for the trade secret, by arguing the email does not "*limit* B2's scope." Opp. at 16:20-21. Masimo never argued the email "limits" the scope of B2. The email provides evidence from which the jury can ascertain the scope and meaning of B2. Apple provides no basis to ignore such evidence.

### 3.   Apple's Arguments About Masimo Being "Bound" By The 2019.210 Disclosure Lack Merit

Apple asserts that Masimo cited no case supporting the view that Masimo is not "bound by the definition of B2 that appeared in [Masimo's] 2019.210 disclosure statement." Opp. at 13:6-14:3. But Apple recognized the jury is supposed to interpret the meaning of terms of art used in the trade secrets as a question of fact based on witness testimony and other evidence. *See supra*, Section II.B.1. The jury cannot simultaneously consider only the exact words in the trade secret descriptions *and* apply the jury's interpretation of the meaning of terms in the trade secret descriptions.

Apple's argument is also wrong because Masimo *did* cite cases that establish interpreting the trade secrets is a question of fact for the jury. *See EnterTrode, Inc. v. General Capacitor Co. Ltd*., 2019 WL 1715170, at *2-*3 (N.D. Cal. Apr. 17, 2019) (conflicting evidence about the scope of a trade secret, raised "a question of fact to be decided by the jury"); *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020). Apple attempts to distinguish *EnterTrode* because the defendants, not the plaintiffs, sought to narrow the scope of the trade secrets. That is irrelevant. Interpreting the trade secrets based on the evidence is a question of fact regardless of which party proffers the evidence or seeks the interpretation. It is also irrelevant how strongly these cases support an undisputed premise. Apple unequivocally recognized in its trial brief

1  that "***the <u>factual</u> meaning of any particular trade secret is a matter for <u>fact</u> witnesses***."
2  Dkt. 1556-1 at 2:19-20 (emphasis in original).

3       Apple also cites a state case as holding that a 2019.210 disclosure is not a
4  pleading, but "functions like one in a trade secret case."  Opp. at 13:8-11 (quoting
5  *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835
6  (2005).  Apple omits that the rest of the quoted sentence states "because it limits the
7  scope of discovery in much the same way as the allegations of a complaint limit
8  discovery in other types of civil actions."  *AMS*, 132 Cal. App. 4th at 835.  Apple's case
9  casts no doubt on the parties' agreement that the scope and meaning of a trade secret is
10  a question of fact for the jury.

11      Finally, it is undisputed that the Order did ***not*** apply the trade secrets "as written"
12  in Masimo's 2019.210 disclosure.  Apple concedes, as it must, that the Order applied
13  the "Court's definition" of B2, not the description in the juror binders.  *See* Opp. at 12:11.
14  Thus, if the Order were "bound" to apply the exact wording in the juror notebook, the
15  Order would still be erroneous for failing to apply that wording.

16      **4.    <u>Apple's Cited Cases Confirm The Order Erred</u>**

17      Apple claims "it is not uncommon for courts to summarize wordy purported trade
18  secrets when issuing their decisions."  Opp. at 11:2-3.  Apple cites only introductory
19  summaries from two decisions and ignores that the substantive analysis in the opinions
20  supports Masimo.  *See id.* at 10:27-11:8.

21      First, Apple cites this Court's preliminary non-confidential summary of a trade
22  secret in *True Wearables* and ignores the redacted analysis of the confidential details.
23  *Compare Masimo Corp. v. True Wearables Inc.*, 2021 WL 2548690, at *1 (C.D. Cal.
24  Apr. 28, 2021) (summarizing technology at issue) *with id.* at *4-*6 (finding likelihood
25  of success on the merits).  Apple also ignores that the opinion granted a motion for
26  preliminary injunction.  This Court determined Masimo was likely to prevail—not
27  whether any reasonable jury could reach any other conclusion regarding the scope and
28  meaning of the asserted trade secrets.

Second, Apple cites the beginning of another opinion that provided an introductory high-level summary of the field of the trade secrets. *See Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 3420571, at *2 n.1 (C.D. Cal. Aug. 4, 2011) (summarizing 114 trade secrets). Apple cites nothing in the opinion suggesting the court determined as a matter of law the scope and meaning of specific trade secrets. The jury was presented with asserted 114 trade secrets, the jury found that 40 qualified as trade secrets, and the jury found 26 had been misappropriated. *Id.* at *2. Far from taking these issues away from the jury, the opinion denied JMOL and deferred to the jury regarding which trade secrets has independent economic value from not being generally known. *See id.* at *7-*10. The Rule 50(a) Order should have done the same.

The *Mattel* opinion also substantively supports granting this motion because it emphasized the low bar for establishing a trade secret has value from not being generally known. The court held a trade secret owner need not "adduce evidence about the independent economic value that each of the 26 claimed trade secrets derived from not being generally known." *Id.* at *7. The court added that value is a factual issue that cannot be evaluated in isolation for individual trade secrets and keeping product strategies confidential generally has value. The Court added that, "[e]ven if a particular fashion or theme sported by an unreleased MGA product *may not have been valuable in a vacuum*, *a reasonable jury could have concluded that MGA derived value from keeping its product strategies secret*." *Id.* at *9 (emphasis added).

The court further held that evidence a competitor could, or did, use the asserted trade secret to market a competing product does not prevent the information from being valuable. "Indeed, the jury could have concluded that information about unreleased products derived independent economic value from not being *generally known regardless of whether a competitor could (or did) use that information to manufacture a matching product*." *Id.* (emphasis added). Thus, *Mattel* strongly supports that the Order erred by preventing the jury from determining whether B2 had value from not being generally known.

-10-

Accordingly, Apple fails to establish that no reasonable jury could have accepted Masimo's evidence regarding the scope and meaning of the terms of art in B2. The Order was manifestly erroneous and should be reconsidered.

## C. The Order Committed Manifest Error By Ignoring Evidence That B2 Was Not Generally Known

Apple does not dispute the Order provides no analysis of any evidence regarding whether B2 was generally known. Apple attempts to backfill with evidence in its statement of purported facts and at the end of its argument section. *See* Opp. at 2:13-5:16, 16:22-20:6. As explained below, Apple's arguments do not support the Order because none establish the jury could not have found for Masimo.

### 1. Apple Applies Incorrect Legal Standards

Apple characterizes Masimo as arguing the Order did not "cite sufficient evidence" or "identify every piece of evidence" supporting its finding in favor of Apple. Opp. at 16:23-27. Apple also accuses Masimo of "improperly attempt[ing] to flip the burden by suggesting that ***Apple*** had to prove that no reasonable jury could have found that the purported secret 'was generally known.'"[1]  *Id.* at 17:12-18 (emphasis in original). Masimo did no such thing. The issue was whether sufficient evidence existed to support a jury finding in favor of Masimo as the ***non***-moving party. *See* Order at 1-2. Neither the Order nor Apple establishes Masimo's evidence was insufficient to support a finding that B2 was not generally known, or that Apple introduced uncontradicted evidence compelling the opposite finding.

### 2. Neither The Order Nor Apple Address The Substantial Evidence That B2 Was Not Generally Known

Masimo presented evidence sufficient to support a jury finding in favor of Masimo that B2 was not generally known. Such evidence includes the testimony of Kiani and Palmatier, as detailed below and in Masimo's Motion. *See* Mem. at 10-16.

---

[1]  A finding that B2 "was generally known" would be in Apple's favor. Masimo presumes Apple meant "not" generally known.

### a.   Kiani Provided Substantial Evidence That B2 Was Not Generally Known

Kiani testified that Masimo maintained its business & marketing strategies as confidential and did not disclose them outside of the company.  Trial Tr., Day 2, vol. II at 71:12-72:5 (Kiani did not share Masimo's long-term business and marketing strategies beyond Masimo's executive team); *id.* at 88:18-89:13 (Masimo kept B2 and other business strategies confidential); *id.* at 86:24-87:11 (explaining "we [Masimo] do everything we can" to maintain confidentiality of B2 and other aspects of "what we [Masimo] think is important"); *see also id.* at 67:21-68:2 (confidentiality is "extremely important" to Masimo's business); *id.* at 68:3-11, 68:19-23 (discussing some of the "many things" Masimo does to protect its confidential information); *id.* at 68:12-18 ("every person" at Masimo is responsible for maintaining the confidentiality of Masimo's information); *Id.*, Day 3, vol. I at 109:18-22 (Masimo follows a general rule to "[k]eep things confidential that we believe are confidential.").

Kiani offered testimony specific to B2:

Q:   And what efforts did Masimo take to keep the B2 strategy confidential?

A:   As usual, anything we regarded as confidential, we only disclose it if necessary to people who needed to know under confidentiality agreement.  So just because you had a confidentiality agreement with us, it didn't mean you were exposed to it.

*Id.*, Day 2, vol. II at 82:21-83:2; *see also id.*, Day 3, vol. I at 103:23-104:8 (explaining that B1, which is incorporated into B2, is "confidential to us [Masimo] and important to us").  Neither the Order nor Apple identifies any reason why a reasonable jury could not have credited Kiani's testimony to find B2 was not generally known.

Apple discounts Kiani's testimony regarding B2 because Kiani also referred to his understanding of the meaning of terms used in B2 and testified he would have described the trade secret concept using different words.  *See* Opp. at 3:6-23.  That does

-12-

not limit the value of his testimony because, as discussed above, the focus is on "the overall scope" not the "literal words" that are used. *See* Order at 7 n.3.

### b.   Palmatier Provided Substantial Evidence That B2 Was Not Generally Known

Palmatier testified that "B1, B2, B4, B7, and VIA all derive economic value from – independent economic value from not being generally known to the public or to other persons that could generate economic value from its disclosure or use." Trial Tr., Day 6, vol. II at 69:12-15. He reviewed all the information identified by Apple and testified that he "found no public disclosure of Masimo's confidential business trade secrets." *Id.* at 71:24-72:3. Neither the Order nor Apple identifies any reason why a reasonable jury could not have credited Palmatier's testimony to find B2 was not generally known.

Apple claims that Palmatier "failed to testify that B2 was not generally known." As shown above, that is false. Trial Tr., Day 6, vol. II, at 69:12-15, 71:24-72:3. Apple also relies on a portion of an answer given by Palmatier stating that "the ***general*** idea of ***some*** of this [B2] is out there." Opp. 5:2-4 (emphasis added) (quoting Trial Tr., Day 7, vol. I at 50:19-25). This testimony does not preclude a finding for Masimo or compel a finding for Apple. The generally known inquiry considers whether a trade secret ***as a whole***, not merely one or more aspects, is generally known. Instruction No. 24 at 33:13-15; *Altavion*, 226 Cal. App. 4th at 47. The remaining portion of Palmatier's answer—which Apple does not address—explains that, "[i]f you get to the specific words of the trade secret in this case, it includes trade secret B1, … I have no knowledge of this information being generally known." Trial Tr., Day 7, vol. I at 51:1-7.

Masimo presented precisely the sort of evidence that the California Court of Appeal has found sufficient. *See Altavion*, 226 Cal. App. 4th at 63 (plaintiff "kept secret all but the most general idea for its DST" and plaintiff's president "testified he was not aware" of others using the same idea). Accordingly, Masimo presented substantial evidence from which a reasonable jury could find B2 was not generally known.

-13-

**3.** **Neither the Order Nor Apple Cites Unrebutted Evidence That Compels Finding B2 Was Generally Known**

Apple cites evidence that it asserts supports a finding that B2 was generally known. *See* Opp. at 16:22-20:6. None of that evidence supports the Order because none compels a finding that B2 was generally known. *See* Order at 2.

**a.** **Masimo's Press Releases Do Not Compel Finding For Apple**

Apple argues that Masimo publicized B2 through a 2012 press release announcing iSpO2 (JTX-2761). Opp. 3:24-27, 19:3-20:6. But neither the iSpO2 press release, nor the testimony discussing it, compels a finding that B2 was generally known. Indeed, the Order did not cite the press release regarding B2 and Apple does not assert that the press release discussed all aspects of B2. Nor does Apple argue the press release constitutes undisputed evidence that compels a finding that B2 was generally known.

Apple argues that Masimo fails to identify record citations where a "witness[] identified a specific component of B2 that is absent from the iSpO2 press release," Opp. 20:3-6. But the iSpO2 press release, on its face, omits several aspects of B2. For example, the iSpO2 press release does not disclose many aspects of B1 that are incorporated into B2, including a ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ JTX-2761. The iSpO2 press release also fails to disclose either additional aspect of B2: ████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████ *Id.* Tellingly, Apple fails to identify where it claims the iSpO2 press release discloses any of these aspects of B1 or B2, much less explain how the press release renders B2 as a whole generally known.

Apple asserts that the Order rejected the argument that the iSpO2 press release does not expressly discuss ████████████████████████████████████ ████████████████████████ Opp. 19:11-18. Apple cites a portion of the Order that

1  recognizes the focus is on "the overall scope of what is disclosed" not the "literal

2  words[.]" Order at 7 n.3.  The iSpO2 press release discloses neither the "literal words"

3  in the juror notebook nor "the overall scope" of B2.  Mem. at 14:17-18, 15:12-14; JTX-

4  2761.

5          Palmatier explained in detail why he "could not tell Masimo's strategy by looking

6  at" the iSpO2 press release.  Trial Tr., Day 6, vol. II at 114:15-119:4.  Palmatier also

7  explained why press releases do not disclose an underlying marketing strategy.  *Id.* at

8  114:17-119:4, 116:25-118:6 (differentiating a marketing strategy from an advertising

9  "campaign"), 118:7-24 ("I could not tell Masimo's strategy by looking at this").[2]  Kiani

10 similarly explained the iSpO2 press release does not disclose B2, just as "selling Coke

11 doesn't mean you're telling people the recipe of Coke."  *Id.*, Day 3, vol. I at 94:19-95:4.

12         Apple also relies on Kivetz's testimony that the iSpO2 press release (JTX-2761)

13 "disclosed B2."  Opp. 19:3-19.  The jury need not accept that testimony because both

14 Kiani and Palmatier explained the iSpO2 press release does not disclose B2.  *See* Trial

15 Tr., Day 3, vol. I at 94:19-95:4 (Kiani); *id.*, Day 6, vol. II at 114:17-119:4 (Palmatier).

16 The JMOL analysis must disregard Kivetz's testimony because it was neither

17 "uncontradicted" nor "from disinterested witnesses."  *Ochoa*, 2023 WL 2143466, at *2.

18 At most, Kivetz's testimony raises a factual dispute for the jury to decide.

19         Apple also argues that Masimo's press release for Rad-97 touted "many aspects"

20 of the "business trade secrets."  Opp. at 3:24-27.  But no press release regarding the Rad-

21 97 was admitted as an exhibit and the Rad-97 is a ███████████████ not a ██████████

22 ██████  Trial Tr., Day 7, vol. II at 57:25-58:16.  Apple identifies no expert testimony

23 suggesting the Rad-97 product (or any unadmitted press release) somehow rendered B2

24 generally known.  Neither the Rad-97 product (or any unadmitted press release) is

25 ─────────────────────────────────────────

26 [2] Apple misconstrues Palmatier's testimony as stating "he ***personally*** could not discern"
   Masimo's trade secrets from JTX-2761.  Opp. 19:20-22.  Palmatier provided opinions,

27 based on his unchallenged expertise, including that a press release "does not disclose a
   firm's business plans and marketing strategies" and its words "don't expose what you

28 are really trying to do underneath."  Trial Tr., Day 7, vol. I at 67:15-16, 55:20-21.

1   discussed in the Order.   Moreover, Kiani testified the Rad-97 press release did not

2   describe Masimo's strategy, including because it did not describe ███████████

3   ████████████████████ of B2, and did not even issue until 2018.  *Id.*, at 42:8-12,

4   42:19-20, 45:4-12.  The press release does not compel a finding that B2 was generally

5   known.

### b.   O'Reilly's Testimony Does Not Compel Finding For Apple

7          Apple cites testimony from O'Reilly but does not assert it compels a finding that

8   B2 was generally known.  *See* Opp. at 5:12-16, 17:22-18:2.  Apple argues only that

9   O'Reilly's testimony is "consistent with" a finding that B2 was generally known.

10  Opp. 17:22-18:2.  Testimony that is merely "consistent" with B2 being generally known

11  does not support granting JMOL in Apple's favor.

12         Moreover, Apple's cited testimony addresses only a portion of B2 and was

13  impeached on cross-examination.   In particular, Apple cites to O'Reilly testimony

14  regarding ███████████ and ████████  Opp. at 5:14-16, 17:22-23.  Those

15  phrases address only one aspect of B2 and do not address the whole of B2, which

16  incorporates the entirety of B1 and further recites ████████████ B1 for more

17  than just ████████████  Order at 6.

18         Apple also cites O'Reilly's testimony claiming he publicly presented slides about

19  "Smart Monitoring" at a conference.  Opp. at 5:12-14, 17:22-18:2.  That testimony was

20  impeached  on  cross-examination,  where  O'Reilly  admitted  he  only  "probably"

21  presented the slides and did not "recall" giving the presentation in the less than the seven

22  minutes he would have been allotted at that conference.  Trial Tr., Day 10, vol. I, at 46:1-

23  48:7.  Every slide was also marked "confidential."  *See* JTX-528.  A reasonable jury

24  could have considered all this evidence and concluded that O'Reilly did not publicly

25  disclose the slides, regardless of how much of B2 they disclosed.

### c.   Kivetz's Testimony Does Not Compel Finding For Apple

27         Apple cites testimony from Kivetz but does not respond to Masimo's arguments

28  regarding why his testimony does not compel a finding that B2 was generally known.

For example, Apple relies on Kivetz's testimony that marketing principles were disclosed in publications and that he taught about them for years.  Opp. at 5:7-12.  Masimo's opening brief explained that a reasonable jury need not accept Kivetz's conclusory testimony because he did not present any books, articles, class syllabuses, or lecture notes corroborating his assertions.  Mem. at 12:7-12.  Apple did not respond.

Instead, Apple pointed to more conclusory Kivetz testimony asserting that a principle that B2 allegedly "employs" has existed in "consumer devices" and has been "taught in universities," written about in "many articles and books," "used and publicized by companies," and disclosed in "press releases" and "marketing materials." Opp. at 18:3-19:2.  But, again, a reasonable jury could have rejected Kivetz's testimony because did not provide any such devices, articles, books, publications, press releases, marketing materials, or other documents supporting his assertions.

A reasonable jury could also reject Kivetz's conclusory testimony because it addresses a principle that B2 allegedly "employs," rather than B2 itself.  Opp. at 18:3-19:2.  Even when purportedly connecting that principle to B2, Kivetz ignores B1, which is incorporated into B2.  Trial Tr. Day 10, vol. II at 31:15-19 (reciting only the additional aspects of B2).  A reasonable jury could also reject Kivetz's assertions regarding mature technology, such as blood pressure cuffs or thermometers because the cited marketing would not "█████████████████████████████████████████ as required by B1.

Masimo's opening brief also cited Kivetz's multiple Google searches for terms in the description of B2 that returned zero results.  Mem. at 12:27-13:13.  Apple does not dispute that a reasonable jury could find the lack of results supports Masimo's position.  Instead, Apple argues in a footnote that the description of B2 uses "jargon" that "does not automatically make that concept a secret." Opp. at 17:26-28, n.8.  But the question is not whether the evidence "automatically" compels a finding for Masimo.  The question is whether there is evidence "adequate to support" a finding for Masimo.  *See* Order at 2.  Apple does not dispute that a reasonable jury could conclude from Kivetz's

1  Google searches that B2 was not generally known.  Likewise, a reasonable jury could

2  disbelieve Kivetz's testimony based on his failure to remember running the searches.

### d.    The Order Could Not Have Relied On Disputed Evidence

4       Neither the Order nor Apple establish that jury was "required to believe" O'Reilly,

5  Kivetz, or Kivetz's characterization of the iSpO2 press release.  Nor could the Order

6  have relied on their testimony to grant JMOL in favor of Apple because their testimony

7  was rebutted and impeached, and neither is a disinterested witness.  *See Ochoa*, 2023

8  WL 2143466, at *2 (evidence for the moving party must be "'uncontradicted and

9  unimpeached'" and "'come[] from disinterested witnesses'").  Indeed, the Order "must

10  disregard" their testimony to the extent it favors Apple.  *See Reeves*, 530 U.S. at 151

11  (courts "must disregard all evidence favorable to the moving party that the jury is not

12  required to believe.").  Thus, no evidence precludes a reasonable jury from finding that

13  B2 is not generally known.

### e.    Apple's Citations To The Hearing Do Not Support The Order

15       Apple argues that Masimo's counsel used two terms from B2 on the public record

16  during oral argument on Apple's 50(a) motion.  Opp. 17:7-11.  That argument provides

17  no support for the Order.  The statements were not presented to the jury and do not

18  disclose B2 as a whole.  *See* Instruction No. 24 at 33:13-15.  Moreover, statements from

19  a 2023 hearing cannot possibly show B2 was generally known years earlier at the time

20  of misappropriation.

## D.    Masimo's Motion Is Procedurally Proper

22       Apple devotes much of its brief to procedural attacks.  None have merit.

### 1.    The Court Has Inherent Authority To Reconsider Its Order

24       Masimo's primary procedural basis for seeking reconsideration is this Court's

25  inherent authority.  *See* Dkt. 1736 at 2:5-11.  Apple cannot dispute this Court's authority

26  to "reconsider, rescind, or modify" an interlocutory order for any reasons this Court

27  deems "to be sufficient."  Indeed, Apple sought and obtained reconsideration of a prior

28  order *in this case* under precisely that inherent authority.  *See* Dkt. 1326 at 2 (rescinding

prior decision to allow damages discovery regarding Apple's AirPods).  Apple obtained relief even though it did not satisfy the standards for reconsideration under Local Rule 7-18 or Federal Rules 59 or 60.  *See* Dkt. 1320 at 2-5.  In granting Apple's request, this Court cited the same Circuit cases on which Masimo now relies.  *Compare* Dkt. 1326 at 2 *with* Dkt. 1736 at 2:5-11.  Apple does not mention either Ninth Circuit decision or this Court's prior decision in this case.  There is no dispute that this Court has the authority to modify its Order regardless of the Local Rules.

### 2. <u>Masimo's Motion Is Proper Under The Rules</u>

Apple's criticisms of Masimo's rule-based procedural mechanisms for seeking reconsideration are also wrong for multiple reasons.

***First***, Apple argues Masimo improperly repeats prior arguments.  Opp. at 8:16-9:10.  Masimo relies on the Order's "failure to consider material facts" regarding the definition and scope of B2.  Masimo addresses deficiencies in the Order, which Masimo could not have addressed in prior briefing.  Indeed, Apple primarily cites arguments Masimo made during oral argument.  *See id*.  Apple itself cites a case granting in-part reconsideration based on facts identified during oral argument.  *West Coast Stock Transfer, Inc. v. Terra Tech Corp.*, 2019 WL 1878348, at *3 (C.D. Cal. Feb. 14, 2019).

This Court observed the perceived tension between Local Rule 7-18's prohibition on repeating arguments, and its requirement for a "manifest showing of a failure to consider material facts," is "difficult to understand."  *Masimo Corp. v. True Wearables*, 2021 WL 2548692, at *5 (C.D. Cal. Apr. 28, 2021).  This Court observed: "How can a party make a 'manifest showing of a failure [by the Court] to consider material facts presented to the Court before such decision' while also not 'repeat[ing] any oral or written argument made in support of or in opposition to the original motion,' as Local Rule 7-18 requires?"  *Id.* (alterations in original).  Thus, identifying material facts that a court overlooked requires at least some repetition.  Any repetition is understandable here, where the parties and the Court addressed extensive JMOL motions on a highly compressed schedule during trial.  *See id.* (reconsideration appropriation where party

-19-

"had 24 hours to respond to a 24-page *ex parte* application").

*Second*, Apple argues Masimo did not show good cause for filing this motion "later than 14 days after entry of the Order." Opp. at 9:11-14. But the Court entered the Order on May 4, explaining "[t]he Court *provisionally* ruled from the bench and *now issues* its order." Order at 1 (emphases added). Masimo filed this Motion just *five days* later. *See* Dkt. 1733. Apple appears to rely on the Court's oral comments on April 25, but admits that Masimo filed the present motion "14 days" after April 25. Opp. at 9:15-19.

*Third,* Apple faults Masimo for filing this motion six days after the meet and confer. *Id*. Masimo did so in an abundance of caution in case the Court treated its oral comments on April 25 as the "order." Regardless, Apple concedes that Masimo requested the conference seven days before filing. Apple identifies no prejudice and does not suggest it would have agreed to any aspect of the motion if Masimo waited one more day before filing. Courts decline to deny motions under such circumstances. *See, e.g.*, *Whatru Holding, LLC v. Bouncing Angels, Inc.*, 2015 WL 12862716, *4 (C.D. Cal. Feb. 17, 2015) (declining request to deny motion filed three days after conference because "the Court does not find Plaintiff's failure to have resulted in any prejudice to Defendants"); *Wilson–Condon v. Allstate Indem. Co.*, 2011 WL 3439272, *1 (C.D. Cal. Aug. 4, 2011) ("Allstate does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance.").

*Fourth*, Apple argues Masimo failed to show that this case presents "highly unusual circumstances" warranting reconsideration. Opp. at 9:20-23. Cases describing reconsideration as "highly unusual" do not impose a heightened procedural requirement. Reconsideration is appropriate where, "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Lopez v. Am. Express Bank, FSB*, 2010 WL 3637755, at *2 (C.D. Cal. Sept. 17, 2010) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999)). Reconsideration "*may also be granted* if there is . . . a manifest showing of

-20-

a failure to consider material facts presented to the Court." *Id.* (emphasis added). Apple's cited cases do not suggest otherwise. They merely denied reconsideration where the moving party failed to establish grounds for reconsideration. *See Finnegan v. United States*, 2021 WL 8820874, at *2 (C.D. Cal. Dec 9, 2021); *MGA Ent. Inc. v. Harris*, 2022 WL 4596585, at *2-*6 (C.D. Cal. Sept. 7, 2022); *West Coast*, 2019 WL 1878348, at *2-*3.

## III.  CONCLUSION

Accordingly, the Court should vacate its grant of judgment as a matter of law regarding trade secret B2.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 30, 2023                    By: */s/ Benjamin A. Katzenellenbogen*
                                       Joseph R. Re
                                       Stephen C. Jensen
                                       Sheila N. Swaroop
                                       Brian C. Horne
                                       Irfan A. Lateef
                                       Benjamin A. Katzenellenbogen
                                       Brian C. Claassen
                                       Stephen W. Larson
                                       Mark D. Kachner
                                       Adam B. Powell
                                       Kendall M. Loebbaka
                                       Daniel P. Hughes

                                       Attorneys for Plaintiffs
                                       MASIMO CORPORATION and
                                       CERCACOR LABORATORIES, INC.

57461440

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,998 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].


**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated:  May 30, 2023         By: */s/ Benjamin A. Katzenellenbogen*
                                       Joseph R. Re
                                       Stephen C. Jensen
                                       Sheila N. Swaroop
                                       Brian C. Horne
                                       Irfan A. Lateef
                                       Benjamin A. Katzenellenbogen
                                       Brian C. Claassen
                                       Stephen W. Larson
                                       Mark D. Kachner
                                       Adam B. Powell
                                       Kendall M. Loebbaka
                                       Daniel P. Hughes

                                       Attorneys for Plaintiffs
                                       MASIMO CORPORATION and
                                       CERCACOR LABORATORIES, INC.

57664911

-22-