# EXHIBIT E

# Ex-Masimo execs deny divulging trade secrets as Apple's emails show 'bad karma' concerns

Apple's lawyers began calling witnesses last Thursday in their defense of a medical tech company's $3.1 billion trade secrets and patent lawsuit over the Apple Watch.



MEGHANN CUNIFF
APR 18, 2023

 3                                                                    Share   



(l-r) Apple, Inc., Vice President of Corporate Development Adrian Perica and Steve Hotelling, vice president in hardware technologies, outside the federal courthouse in Santa Ana, California, on April 13, 2023. (Photo by Meghann M. Cuniff)

As Apple, Inc., engineers worked on the first version of the Apple Watch 10 years ago, company executives were immersed in two efforts to help solidify their success.

One was Project Rover, which focused on finding other companies that could work with the global technology giant to develop the watch. The other was Project Everest, which narrowed in on the medical technology company Masimo Corp. and its affiliate, Cercacor Laboratories.

But despite Apple's keen interest in Masimo and its bluntly stated internal need for help with the watch, an influential Apple employee testified last week that he hired Cercacor Chief Technical Officer Marcelo Lamego for unrelated reasons.

"We considered the need to relate these things to each other. We decided, ultimately, 'No, people are free to interview and change jobs as they wish,'" said Steve Hotelling, a 21-year Apple employee and the current vice president for hardware technologies. "He's a qualified candidate, so we should pursue the interview independent of Project Everest."

Lamego's time at Apple was brief but productive. In his first two weeks as the company's chief sensing scientist, he filed 12 applications "in the Apple patent system," citing them in an email to Hotelling as an example of his early credibility building. He also boasted of developing key engineering techniques for extracting and encoding information — known as modulations and demodulation — and sharing them with the Apple Watch development team.

Lamego left Apple after six months, but he went on to become a named inventor on many Apple patents. Five are at the center of a $3.1 billion battle between his two former employers, and Masimo and Apple's trial lawyers have presented conflicting narratives surrounding Apple's hiring of Lamego and Masimo Chief Medical Officer Michael O'Reilly, who joined Apple in July 2013, six months before Lamego.

A jury of eight Orange County, California, residents — all are women — could begin deliberations as early as next week. The claims include alleged trade secrets as well as Masimo's request for co-ownership of the five patents by having current employees added as co-inventors.

5/24/23, 4:19 PM
Case 8:20-cv-00048-JVS-JDE   Document 1772-7   Filed 06/01/23   Page 4 of 14   Page ID #:152711
Apple starts calling witnesses in Masimo's Apple Watch trial

Masimo's lawyers at Knobbe Martens LLP allege Apple hired O'Reilly and Lamego to specifically target Masimo's trade secrets regarding pulse oximetry in an effort to bolster development of the first version of the Apple Watch, which was released in 2015. Apple's lawyers at Wilmer Cutler Pickering Hale and Dorr LLP say the company rightfully hired two highly qualified job applicants who adhered to strict policies regarding intellectual property rights. They also say Masimo is trying to advance its own watch for consumers, released last year.

## Apple doctor attended trade under fake company name

Both Lamego and O'Reilly testified last week that they never incorporated Masimo's intellectual property into their Apple work.

Masimo's lawyers are trying to persuade the jury that can't be true, in part through internal company emails between Apple executives that demonstrate both frustration with the pulse oximetry function of Apple Watch development and intense interest in Masimo, a company based in Irvine, California, that had mastered pulse oximetry technology through its decades creating medical devices.

They've tried to discredit Apple's inference of high internal moral standards regarding its interactions with other companies, including by highlighting the fact that O'Reilly, who is a clinical professor of anesthesiology at Stanford University, attended a consumer electronics trade show early in his Apple tenure under the guise of a fake company name.

"You were instructed by Apple to disguise that you worked for Apple, correct?" Knobbe Martens partner Joseph Re asked in cross-examination on Friday.

"No, not exactly," O'Reilly answered.

"Are you saying that was your idea to do that?" Re asked.

"No," O'Reilly answered.

5/24/23, 4:19 PM
Apple starts calling witnesses in Masimo's Apple Watch trial
Case 8:20-cv-00048-JVS-JDE    Document 1772-7    Filed 06/01/23    Page 5 of 14    Page ID #:152712



Center: Michael O'Reilly, a physician on Apple, Inc.'s health special projects team, leaves court on Friday, April 14, 2023, with WilmerHale's Joshua Lerner (left) and Brittany Amadi (right). (Photo by Meghann M. Cuniff)

Testimony regarding the specifics of Masimo's alleged trade secrets is subject to a protective order, as is testimony about other company information such as Apple's finances. But the emails displayed in open court have offered a rare look at how the world's first $3 trillion company struggled to secure the success of an innovation Hotelling testified has "changed the world."

Hotelling is a named inventor with Lamego on two Apple patents of which Masimo is seeking co-ownership. They're among the approximately 700 Apple patents on which he is the sole inventor or a co-inventor. Hotelling testified on Thursday that he's most proud of co-inventing multitouch technology, which is the fingertip-sensing technology that "quickly became the ubiquitous standard in smartphones."

"A lot of people felt like it was magic," Hotelling said.

5/24/23, 4:19 PM
Apple is still calling witnesses in Masimo's Apple Watch trial
Case 8:20-cv-00048-JVS-JDE   Document 1732-7   Filed 06/01/23   Page 6 of 14   Page ID #:152713

Hotelling is the sole inventor on a patent for which Apple in 2006 regarding multi-functional hand-held devices that's believed to be the first iPhone patent. That makes him arguably the biggest luminary within Apple's sphere of secrecy to testify in Senior U.S. District Judge James Selna's courtroom at the Ronald Reagan Federal Building and Courthouse in Santa Ana since the trial opened on April 5.

The most powerful has been Adrian Perica, Apple's current vice president of corporate development who reports directly to CEO Tim Cook and took the witness stand Friday morning after Hotelling. Jurors also heard from retired Apple executive Bob Mansfield through a deposition video last Tuesday. Both were at the forefront of the company's development of the Apple Watch, with Mansfield first floating the idea of acquiring Masimo in an email that said simply, "Why don't we acquire them?"

Asked about the email on Friday, Perica testified, "Mr. Mansfield is very succinct in his emails." He cited Masimo's size when explaining why Apple determined not to try to acquire it because it wouldn't "accelerate our roadmaps and products."

"Acquisitions of this size aren't our style," Perica said.

## Apple exec suggests an 'olive branch' for Masimo

Perica remembered Masimo CEO Joe Kiani well, as did Hotelling. But Mansfield testified in his deposition video that he didn't recognize Masimo when he was subpoenaed in the lawsuit, and he said he doesn't remember O'Reilly or Lamego.

"You're asking me about things that happened 10 years ago," said Mansfield, who retired in the last few years as Apple's senior vice president of technologies. "I met probably hundreds of CEOs and dealt with maybe hundreds of companies. I wouldn't remember most of them unless I met with people multiple times and they were key to Apple's investments or something."

Masimo's lawyer Mark Kachner of Knobbe Martens questioned Mansfield about an email he wrote Jony Ive — Apple's now-former chief design officer and Steve Jobs' close friend — that said simply, "Frankly, I think this is a mess," with Mansfield confirming he was referring to the sensor.

5/24/23, 4:19 PM
Apple starts calling witnesses in Masimo's Apple Watch trial
Case 8:20-cv-00048-JVS-JDE   Document 1772-7   Filed 06/01/23   Page 7 of 14   Page ID #:152714

Kachner also questioned Mansfield about a December 2013 email in which he lamented his team's progress on the Apple Watch and its "shower head design."

"It doesn't feel to me like we're making rapid progress," Mansfield wrote. He added, "on current path sensor effort will fail and with it will go probably the most important feature of the device."

Mansfield invoked the late Jobs, who was his direct supervisor, when explaining to Kachner why he wrote what he wrote.

"Sometimes I wrote things like that because I wanted them to work hard and figure it out," said a white-haired Mansfield, speaking to Kachner via video conference. "Like when Steve Jobs would say to me, 'I want you to work on the phone and I don't care if you ever work on another Macintosh.' He didn't really mean that. He just wanted me to work hard on the phone."

"So sometimes I said things like this because I believed it required focus and should be the subject of a lot of hard work. It shouldn't be blown off," Mansfield said.

Perica shared Mansfield's concerns about the progress of the Apple Watch development.

In a Sept. 11, 2013, email, Perica said the Apple Watch "is already way behind in my book" because "wearables is taking off." Then in April 2014, after Lamego had joined Apple, Perica emailed colleagues, including O'Reilly, about possibly providing Kiani and Masimo tickets for an elite Apple conference.

"I know these tickets are super hard to come by," Perica wrote, asking if there was "any chance it would make sense" to provide Masimo tickets as an "olive branch."

Masimo's lawyer Joseph Re asked Perica on Friday why he thought Masimo may need an "olive branch" from Apple.

"I wanted to be polite," Perica answered.

## Apple's leadership recruiter confirms 'bad karma' concern

5/24/23, 4:19 PM
Apple starts calling witnesses in Masimo's Apple Watch trial
Case 8:20-cv-00048-JVS-JDE    Document 1772-7    Filed 06/01/23    Page 8 of 14    Page ID #:152715

An Apple employee since 2009, Perica earned a bachelor's degree in physics at the United States Military Academy at West Point and a master's in business administration from the Massachusetts Institute of Technology. He was a lieutenant in the U.S. Army with top-secret clearance before he joined Apple to work in mergers and acquisitions. (Asked in direct if he's ever exposed confidential military information while at Apple, he answered, "No, I have not.")

Perica played a key role in Apple's early interest in Masimo, and Masimo's lawyers have repeatedly highlighted an email he wrote on May 22, 2013, in which he said he "can see Joe Kiani being the wellness leader we need….He's a medical CEO now and wants to help the world. That's a great starting point."

Perica was writing to Denby Sellers, Apple's executive recruiter since 2004. Jurors last week saw excerpts of her video deposition in which she described Perica's email as "characteristic of him."

"He falls in love with people quickly," Sellers testified. "He's very opportunistic. This was not the first time Adrian had made a comment like that to somebody I had brought in."

"But I think that was just, you know, his musing at the moment," Sellers continued.

5/24/23, 4:19 PM
Apple starts calling witnesses in Masimo's Apple Watch trial
Case 8:20-cv-00048-JVS-JDE    Document 1732-7    Filed 06/01/23    Page 9 of 14    Page ID #:152716



Masimo Corp. CEO Joe Kiani. (Photo by Meghann M. Cuniff)

In an earlier email, Perica wondered if there could be "bad karma in pursuing Mike and having business discussions with Joe." He was referring to trying to hire O'Reilly while negotiating with Kiani, and Sellers testified in her deposition that she agreed with Perica.

"Yes, being engaged with Mike at the time would be, in his words, bad karma," Sellers said.

O'Reilly joined Apple less than two months later. Sellers said he was one of "at least eight" candidates who interviewed for the newly created chief medical officer position, and he was hired because of his medical background, his time in anesthesiology, his consulting work for medical device companies "and the combination of all that."

"He was also very passionate about product and improving people's lives," Sellers said.

5/24/23, 4:19 PM
Apple starts calling witnesses in Masimo's Apple Watch trial
Case 8:20-cv-00048-JVS-JDE Document 1772-7 Filed 06/01/23 Page 10 of 14 Page ID #:152717

Internal Apple emails obtained by Masimo's lawyers show O'Reilly weighed in on Apple's hiring of his former Masimo colleague, telling Apple executives that Lamego "would be an incredible addition to the team."

But, O'Reilly said, "Most of his knowledge that would be directly applicable may be considered confidential information of Cercacor or Masimo."

He added, "Not sure how that could play into a decision."

O'Reilly had been working for Apple for several months at that point, so Masimo's lawyers seem to be drawing the jury's attention to his stated uncertainty as a way to refute the complaint's claims of strict policies regarding intellectual property laws.

But Sellers said she didn't see much to the statement.

"It shows he's just trying to be helpful. I don't find that comment all that valuable or impactful or relevant," Sellers said in her deposition. "He's just trying to call out that connection. It would not play into a decision of Apple."

Sellers added, "We view our confidentiality incredibly seriously."

## 'Had to exercise extra care to avoid IP conflict'

Apple's lawyers have emphasized the company's adherence to confidentiality requirements throughout trial, including in their questioning of Lamego and O'Reilly. WilmerHale lead trial chair Joseph Mueller, a partner in the Boston office, began his exam of each man by asking point blank if he shared confidential information from Masimo with Apple. Both said no.

"Did you do it?" Mueller asked O'Reilly after summarizing the allegation.

"No. Absolutely not," O'Reilly answered.

Apple's lawyers have also highlighted Lamego's own words regarding confidentiality, including in a post-midnight job solicitation email he sent to Cook in October 2013 in which Lamego said he was sure he could "add significant value" to Apple "without conflicting with the large IP I have developed with Masimo." Lamego also stated in a

5/24/23, 4:19 PM
Case 8:20-cv-00048-JVS-JDE   Document 1772-7   Filed 06/01/23   Page 11 of 14   Page ID
Apple starts calling witnesses in Masimo's Apple Watch trial
#:152718

June 30, 2014, email to Hotelling that he'd worked on algorithm development for the last three weeks and "had to exercise extra care to avoid IP conflict."

WilmerHale partner Amy Wigmore used the email to segue into questions to Hotelling about Lamego's departure from Apple in July 2014. He told Hotelling he'd worked on algorithm developments, "even though (i) this is not my responsibility (ii) It is a task for Sherpa engineers over the course of several months."

Lamego testified that Masimo's threatening letter to Perica and Cook regarding his employment had a chilling effect on his work.

"I was supposed to join Apple, have a budget and team and resources, and Apple after that really didn't give anything," Lamego said.

Hotelling testified that Lamego struggled to work with his Apple colleagues, and jurors saw a letter Hotelling wrote Lamego telling him so.

"It's extremely important at Apple to collaborate across these large groups," Hotelling said. "He was not able to adapt very well to that culture."

But Apple employees have also struggled to explain emails that show Lamego's work at Apple included particular focus on the same sensor work he did at Masimo that was deemed so crucial to the Apple Watch's success. In one, an engineering program manager tells Jack Chang Fu, Apple's senior director of human interface devices, that someone mentioned Chang was updating firmware to change the modulation "per Marcelo's design."

"Do you have any idea what 'Marcelo's design' means in this context?" asked Knobbe Martens partner Baraa Kahf.

"No," Fu answered. He testified later, "What I recall was he never really even did it. … It fizzled out."

"So you don't recall making a firmware update to incorporate a design by Marcelo Lamego?" Kahf asked.

"That's correct," Fu answered.

## 'Not in emails, but that was indeed our intent'

Masimo's lawyers have drawn the jury's attention to a slideshow presentation for Apple's Project Everest, which focused specifically on how Apple could maximize a relationship with Masimo and Cercacor.

One of the slides lists four options for Marcello Lamego: Don't hire him, hire him after signing a deal with Masimo, hire him while negotiating with Masimo or hire him before starting negotiations with Masimo.

"None of those options contemplates not engaging further with Masimo, does it? Each one of those options anticipates further engagement with Masimo, doesn't it?" Knobbe Martens partner Stephen Jensen asked Hotelling in cross-examination on Friday.

"These are just ideas to show landscape and spur discussion," Hotelling testified.

Jensen also highlighted an email Hotelling's boss Lynn Youngs wrote just before Lamego was hired that said, "Marcello has specialized experience that we are deeply in need of on current and future N27 sensors."

N27 was Apple's codename for the Apple Watch.

"Neither of you said simply you were looking for his general experience in sensors in those emails, did you?" Jensen asked.

"Not in emails, but that was indeed our intent," Hotelling answered.

Testimony continues Tuesday. For a detailed look at Masimo's claims, read [this 58-page proposed verdict form](#) that includes arguments from both sides.

**Previous coverage:**

April 13: [Masimo lawyer's promise dashes Apple's hopes for witness stand appearance by CEO Tim Cook](#)

April 10: ['This is a mess': Masimo trade secrets trial reveals details of Apple Watch development](#)

*Thank you for supporting my independent legal affairs journalism. Your paid subscriptions enable me to go in-depth and unfiltered on major issues. If you're not already a paid subscriber, please consider purchasing a subscription for yourself or a gift subscription for someone else. Your support is absolutely essential to my work.*

| Type your email... | Subscribe |

**This is an independent, reader-supported project. Anyone who pays for a subscription is providing crucial assistance to bolster my independent coverage. Thank you!**

Legal Affairs and Trials with Meghann Cuniff is a reader-supported publication. To further support my work, become a paid subscriber.

| Type your email... | Subscribe |



3 Likes · 2 Restacks

# Comments



Write a comment...

Exhibit E
-47-

© 2023 Meghann Cuniff · [Privacy](#) · [Terms](#) · [Collection notice](#)
[Substack](#) is the home for great writing