EXHIBIT F

5/24/23, 4:22 PM Case 8:20-cv-00048-JVS-JDE Document 1772-8 Filed 06/01/23 Page 2 of 17 Page ID
#:152723
Jury learns of other Masimo hires after Apple's trade secrets testimony / Masimo v. Apple

# Jury learns of more Masimo hires after Apple's 'misleading and incomplete' testimony

The $3.1 billion trade secrets battle could close this week after an unexpected return to the witness stand last week by veteran Apple, Inc., engineer Steve Hotelling.

**MEGHANN CUNIFF**
APR 24, 2023

♡ 4    💬                                          ⬆ Share    •••



A collection of screenshot from briefs in *Masimo v. Apple*. (U.S. District Court)

Masimo Corp.'s lawyers scored a major win in their ongoing trade secrets trial with Apple, Inc., last week when the judge allowed them to tell jurors about other company employees hired by the tech giant during its development of the Apple Watch.

Exhibit F
-49-

5/24/23, 4:23 PM    Case 8:20-cv-00048-JVS-JDE    Document 1772-8    Filed 06/01/23    Page 3 of 17    Page ID
Jury learns of other Masimo hires
#:152724

Apple Vice President for Hardware Technologies Steve Hotelling returned to court Thursday morning to answer questions about five employees of Masimo and its affiliate Cercacor Laboratories, Inc. hired by Apple in addition to the two at the center of $3.1 billion trade secrets and patent ownership dispute.

Under a pre-trial ruling, the jury never was to hear about hires other than scientist Marcelo Lamego and physician Michael O'Reilly.

But Hotelling's witness stand denial that Apple targeted Masimo employees changed the litigation landscape. Masimo's lawyers at Knobbe Martens LLP cited it when asking the judge to allow them to re-call Hotelling for continued cross-examination, saying his original testimony was "at a minimum, misleading and incomplete."

"Masimo should be allowed to correct the false impression that Apple hired only two former Masimo employees," according to a brief filed April 14 after Hotelling's initial testimony at the Ronald Reagan Federal Building and U.S. Courthouse in Santa Ana.

Senior U.S District Judge James V. Selna apparently agreed, because he allowed the Knobbe team to cross-examine Hotelling on Thursday about an email exchange with Apple engineering recruiter Lan Nguyen in which Hotelling asked Nguyen to expedite research on Masimo and referenced "researching next level down." The subject line was "Recruiting from Masimo."

Jurors also saw an email Lamego sent Hotelling on March 21, 2014, in which he said Masimo's Johannes Bruinsma would "bring value to the sensing team" working on the Apple Watch.

Lamego noted that "the same could be accomplished by taking some of the new hires, however it will take some time until they are on pare to the exclusive knowledge and experience Johannes was exposed to while working on my team in the past."

"Honestly, I don't remember this email," testified Hotelling, who is an inventor or co-inventor on approximately 700 Apple patents, including the multi-touch technology that ushered in the smartphone era.

5/24/23, 4:23 PM    Case 8:20-cv-00048-JVS-JDE    Document 1772-8    Filed 06/01/23    Page 4 of 17    Page ID
Jury learns of other Masimo hires
#:152725

"You do know that Apple ultimately hired Johanas to work at Apple?" Knobbe partner Steve Jensen asked.

"The name is familiar, so I believe that's probably correct," Hotelling said.

Jensen then showed Hotelling an internal Apple document that confirmed the hiring of Bruinsma as well as at least four other Masimo employees.

## Apple mulls acquisition of Masimo's 'people or assets'

The document wasn't displayed on the public monitor in the gallery, so it's unclear how many employees were listed on the documents shown to jurors. Only five hires were named in testimony, but Jensen also told Hotelling the document showed "quite a few" defections from Masimo to Apple.

Hotelling disputed Jensen's suggestion that the employees were hired as part of a specific development plan for the Apple Watch.

"It could also be true that some of these people could have come before that or independent of that," Hotelling testified.

"But you ended up with quite a few employees from Masimo and Cercacor?" Jensen asked.

"I would say it's accurate that these people joined Apple. ... Though not unusual for people for other companies to join Apple or vice versa," Hotelling answered.



(l-r) Apple, Inc., Vice President of Corporate Development Adrian Perica and
Steve Hotelling, vice president in hardware technologies, outside the federal
courthouse in Santa Ana, California, on April 13, 2023. (Photo by Meghann
M. Cuniff)

Hotelling's testimony centered on a key piece of evidence for Masimo: An October 2013
slideshow detailing Apple's Project Everest, an internal, high-level company effort that
studied ways to target Masimo in order to help the Apple Watch. One engagement
option was "acquisition of Cercacor and/or Masimo (or people or assets)."

During his initial testimony, Hotelling told WilmerHale partner Amy Wigmore in
direct-exam that "people or assets" referred to the acquisition of a team or division
within a company, but that Apple didn't pursue that option or any others regarding
Masimo.

That's the testimony Masimo's lawyers said gave jurors a false impression because
"contrary to Hotelling's testimony, Apple did seek to acquire a 'team of Masimo'
employees."

"The evidence shows Apple was beginning to 'pick' Masimo employees, so Mr. [CEO Joe] Kiani asked Dr. Lamego to '[b]e careful with your team,'" according to the April 14 brief.  "After Dr. Lamego contacted Tim Cook, an Apple internal email thread with the subject line 'Recruiting from Masimo' revealed that Apple was 'already working on researching next level down' from Drs. O'Reilly and Lamego."

## 'The jury should be allowed to hear the truth'

The Knobbe team argued before trial that jurors should hear of Apple's recruitment of other Masimo employees, but Judge Selna sided with Apple and said only Lamego and O'Reilly were relevant to Masimo's claims. But his ruling was close, as Masimo's lawyers explained in their April 14 motion.

During the Pretrial Conference, Masimo argued that this evidence was relevant to Apple's plan and intent to obtain Masimo's trade secrets by hiring Masimo employees, including Drs. O'Reilly and Lamego. *See* Pretrial Conf. Tr. at 8:23-11:3. The Court asked Apple numerous pointed questions about this evidence:

- "Isn't it potentially probative to a plan or scheme?"

-7-

- "That's fine, but if they [Apple employees] are out there generally fishing for trade secrets, whether it's the same trade secrets they fished for with Lamego or O'Reilly, it's relevant if it potentially shows a pattern."
- "Can't patterns be shown by conduct before and after the relevant event?"
- "Sir, you are missing the point. If they [Apple employees] are out there fishing generally for trade secrets, why is it excluded because they weren't fishing for the same trade secrets they were fishing for with O'Reilly and Lamego?"

Pretrial Conf. Tr. at 12:25-13:1, 13:9-12, 13:18-19, 14:1-5.

The Court ultimately agreed with Masimo that this evidence "could give rise to an inference of plan, intent, etc.," but agreed with Apple that the evidentiary value was outweighed by Rule 403 concerns. *See* Dkt. 1469 at 4. Now that Apple has opened the door by affirmatively arguing that Apple had no plan or intent to obtain Masimo's confidential information through recruiting Masimo employee, the Rule 403 balancing test swings the other way.

A screenshot from Masimo lawyer's April 14 <u>motion</u>. (U.S. District Court)

The judge's change in course during trial gives jurors a more expansive view of Apple's relationship with Masimo, and Hotelling's return to the witness stand could raise questions about his initial testimony.

Exhibit F
-54-

Apple's defense team seemed to try to address this by Wigmore emphasizing what she'd emphasized in her direct-examination regarding the true meaning of Project Everest's possible acquisition of Masimo's "people or assets."

"Does that bullet refer to recruiting individual people?" Wigmore asked on Thursday.

"No, it does not," Hotelling answered, before confirming it referred to acquiring "potential groups of people from other companies." He also reiterated that the hirings were coincidental to Apple's interest in Masimo.

The WilmerHale team opposed Masimo's April 14 request to further question Hotelling by arguing in part that Masimo's objection was too late because Apple had been arguing all trial that it didn't target Masimo employees. Their brief also said forcing Hotelling to re-take the stand a week after he finished testifying would be unfair.

"The jury would surely be surprised to have this issue surface only at this late stage of the trial—and could conclude (wrongly) that Apple had hid something from them," according to the April 17 brief, signed by WilmerHale partner Mark Selwyn.

Masimo's lawyers said in their reply that the problems accumulated through trial:

> Apple argues Masimo "waived the right to raise any objection now" because Masimo did not object earlier. Dkt. 1599 at 11. But Masimo is not objecting that the testimony Apple elicited is inadmissible. Rather, Masimo argues that Apple has sufficiently misled the jury that Masimo should have the opportunity to respond with corrective evidence that the Court preliminarily excluded. Apple is correct that it began misleading the jury in its Opening Statement and continued in its cross-examination of Masimo's witness. The cumulative effect required corrective action after Apple's first witness, Hotelling, falsely denied that Apple implemented the Project Everest plan to acquire Masimo's people.

A partial screenshot from according to the April 17 Masimo's April 17 reply
to WilmerHale's opposition. (U.S. District Court)

5/24/23, 4:22 PM    Case 8:20-cv-00048-JVS-JDE    Document 1772-8    Filed 06/01/23    Page 9 of 17    Page ID
Jury learns of other trade secrets trial against Masimo hires
#:152730

"The jury should be allowed to hear the truth," the brief continued.

In continued re-direct last Thursday, Wigmore tried to emphasize that the five
additional Masimo employees were hired by Apple between 2014 and 2020, and that
their work was not specific to the Apple Watch's blood-oxygen monitoring and
electrocardiogram functions on which Masimo's alleged trade secrets are focused.

She finished by asking Hotelling about the heart of Masimo's case: "Can you please tell
the members of the jury: Did Apple ever have a plan or scheme to fish for trade secrets
during interviews of candidates?"

"Absolutely not. That's against our principle," Hotelling answered.

## 'The day the history of medicine was rewritten'

Other testimony has shown that Apple's urgency regarding the watch's functionality
extended beyond the initial 2013-14 development phase in which O'Reilly and Lamego
were hired.

Knobbe partner Sheila Swaroop last week questioned Deidre Caldbeck, director of
product marketing for Apple Health, about problems with the watch generating heart
rate readings when it was sitting on a desk or wrapped around a wine bottle or
computer mouse.

Caldbeck said she didn't remember the issues, but Swaroop displayed a 2016 internal
Apple email in which Caldbeck alerted colleagues, including Hotelling, to online chatter
about an Apple Watch reading a heart rate on a wine bottle.

Caldbeck said in the email that she'd tested a watch on a computer mouse and it had
generated a heart rate. She called the issue "a particularly troublesome because of the
vitality."

The timing of the email relates to Apple's incorporation of electrocardiogram
technology into the watch, which is part of Masimo's trade secrets claims.

Caldbeck, who has been at the defense table all trial as Apple's official
representative, testified that she didn't remember the email or the problems with the

Exhibit F
-56-

phantom readings.

Jurors have already seen correspondence within Apple that establishes the company's urgency surrounding watch development in 2013.

They saw more last week as Knobbe partner Joseph Re finished his cross-examination of O'Reilly, including an Aug. 17, 2013, email in which Adrian Perica, the vice president for corporate development who testified on April 14, told O'Reilly he was "very focused that we need to ship something great next year that works across the world."

Perica's email begins:

"I'm super focused on wellness because:

1) Tim said to focus on wellness

2) Wellness is likely a better overlap with our current customers. It's definitely a better overlap with our current level of internal competency. We are newbies to this space.

O'Reilly replied that Apple would provide "tremendous value by providing these data to providers and others."

"That's medical data, right?" Re asked in court last Tuesday.

"Yes," O'Reilly answered.

Perica then wrote O'Reilly on Dec. 15, 2013, "If you told me I could write a billion dollar check to get the world's health information in one spot for the benefit of our customers, medical care, medical research and humanity, I'd do it in a heartbeat. And I don't think this will take a billion dollars."

O'Reilly replied, "I couldn't agree more. … This is the best news that I could imagine and I'll remember December 15th 2013 as the day the history of medicine was rewritten."

The doctor ended his email, "I'm so excited I could squeal."

On the witness stand last week, O'Reilly appeared uncomfortable as he tried to explain his words to an unreceptive Re.

"I was excited about the possibility…of providing medical information to their own—" O'Reilly said before Re cut him off.

"But you wrote that?" Re asked.

"Uh, those are my words, yes," O'Reilly answered.



Center: Michael O'Reilly, a physician on Apple, Inc.'s health special projects team, leaves court on Friday, April 14, 2023, with WilmerHale's Joshua Lerner (left) and Brittany Amadi (right). (Photo by Meghann M. Cuniff)

## 'Please don't bother contacting me socially or otherwise'

Re also questioned O'Reilly about a Feb. 4, 2016, email he sent to an employee with the U.S. Food and Drug Administration in which he asked that his name be removed from the public list of participants in a working group related to medical devices.

Exhibit F
-58-

"It would greatly simplify my life to just not list me there," O'Reilly wrote then.

At the time, O'Reilly still had a relationship with Masimo CEO Joe Kiani. Jurors have known since opening statements that Kiani helped O'Reilly find a doctor for his wife when she was sick with cancer in 2016.

It was another few years before Masimo and Apple's legal problems exploded: Masimo sued in January 2020 after patents were issued to Apple in late 2019 that the company alleges incorporates its trade secrets. But jurors heard through Re's cross of O'Reilly last week that his friendship with Kiani ended acrimoniously in October 2018 after Kiani told O'Reilly not to spend time in Masimo's booth during an American Society of Anesthesiology conference.

O'Reilly was five years into his job with Apple, and Kiani was bothered that he'd invited a longtime Masimo consultant to instead consult for Apple. Still, Kiani told O'Reilly they could remain social friends.

O'Reilly, however, rejected Kiani's friendship in a text message displayed for jurors last Tuesday.

*"Please don't bother contacting me socially or otherwise. I devoted 5 1/2 years of my life to Masimo and have done things to help Masimo since including at Stanford. I made NO money from my time at Masimo other than my salary. I am deeply offended."*

Re confirmed with O'Reilly that his salary as Masimo "was well over $400,000 a year."

Re ended his cross there, but Apple's lawyer Joseph Mueller continued the discussion in re-direct after asking the Knobbe team to "please" keep the text message displayed.

"Let me pick up where Mr. Re left off," the Boston-based co-chair of WilmerHale's trial practice said, describing O'Reilly's fall out with Kiani as "a bit of an argument."

"Sir, did that have anything whatsoever to do with allegations of trade secret theft?" Mueller asked.

When O'Reilly answered no, Mueller asked, "What did it have to do with?"

"It had to do with Kiani asked me not to go into his booth at the American Society of Anesthesiology meeting. ... It just felt like a mean act and this was a frustrated response," O'Reilly answered.

"Does this have any connection whatsoever to what we're here at this trial to discuss?" Mueller asked.

"Not that I can see," O'Reilly answered.

Mueller used a similar line of questioning to address other topics from Re's cross. His question about O'Reilly's contact with the FDA in 2016 — "Does Masimo hold a trade secret on communicating with the FDA?" — drew a rare argumentative objection against the persistently polite litigator, but Judge Selna overruled it so O'Reilly answered, "Not that I know of."

Mueller also addressed Re's questions about O'Reilly's Dec. 15, 2013, exchange with Perica. After O'Reilly wrote that he'd forever remember the day "as the day the history of medicine was rewritten" he added, "No kidding."

"I think this will save countless lives and decrease costs" given the burdensome cost of health care. "We may save the world. I know that sounds ridiculous, but I really believe it," O'Reilly wrote in 2013.

"Were you referring to Masimo trade secrets?" Mueller asked O'Reilly last week. After O'Reilly said no, Mueller asked, "What were you referring to, sir?"

O'Reilly cited the medical advances that could come from so many humans sharing their health data "with enough data from enough people we can figure out how the whole organism works."

## Miscellaneous trial notes

**Apple's case in chief:** Apple's lawyers said earlier in the trial that they expected to rest on April 20, but Judge Selna's decision to allow continued cross-examination of Hotelling delayed that.

In addition to Hotelling, Masimo's expert Vijay Madisetti, a professor at the Georgia
Institute of Technology, also re-took the stand last Thursday. Much of his testimony was
sealed because it addressed the specifics of the alleged trade secrets and patents.

The briefs about Hotelling's additional testimony requested more testimony from other
witnesses, too, but Madisetti wasn't one of them. So I'm not sure why he was called
back, but the point is the additional testimony means Apple did not rest on Thursday.
(Also, all this extra testimony really isn't good for Apple.) That may happen Tuesday, the
next day trial is back in session, with closing arguments Wednesday. But that's tentative.

**Rule 50 motion:** The WilmerHale team filed their Rule 50 motion on Saturday. Motions
for judgment as a matter of law or for directed verdicts are standard in basically every
case I cover, from civil to criminal to state to federal, but you wouldn't know it from
reading WimerHale's 39 pager. The filing casts not only the trial but the continued
existence of this case as a dire injustice requiring immediate rectification. "Plaintiffs'
case crumbled within a matter of days," it says.

Read the full motion here.

**The folks at Apple:** Along with courtroom courtesy, Mueller appears to have a knack for
humanizing the massive corporations he defends in front of juries. He's worked to do so
with Apple from the first day of trial, and he consistently refers to Apple employees as
"folks."

But in one instance, those folks appeared to be the very Masimo hires Judge Selna had
agreed wouldn't be mentioned in trial. Mueller asked Masimo's expert Robert Palmatier,
a marketing professor at the University of Washington, "You've offered no opinion to
this jury that other folks at Apple intended to take ideas from Masimo or Cercacor to
bring to Apple; correct?"

Masimo cited the question when asking Selna to allow them put Hotelling back on the
stand:

Apple's question regarding "other folks at Apple" who "intended to **take** ideas from Masimo or Cercacor to **bring** to Apple" conveyed to the jury that Apple hired other Masimo or Cercacor employees. The Court should not allow Apple to use the Court's ruling on MIL-2 as a sword and a shield by permitting Apple to ask questions about "other" former Masimo employees while preventing Masimo from asking questions about the same subject.

A partial screenshot from Masimo's April 14 <u>motion</u>. (U.S. District Court)

It's unclear if that factored into Judge Selna's decision to allow Hotelling's continued cross-examination because no written order has yet been issued.

**Future coverage:** The trial is dark today. I'll be in Los Angeles County Superior Court's downtown criminal courthouse for the opening day of actor and Scientologist Danny Masterson's rape trial, so look for full coverage of that case later today or early Tuesday morning. But I'm committed to covering *Masimo v. Apple* through the verdict, so I'll be back in Judge Selna's courtroom Tuesday morning and writing more articles. Thank you for reading and for helping spread the word about <u>www.legalaffairsandtrials.com</u>!

**Previous coverage:**

April 20: <u>On tap in the Masimo v. Apple trade secrets trial: Politeness, not pirate flags</u>

April 18: <u>Ex-Masimo execs deny divulging trade secrets as Apple's emails show 'bad karma' concerns</u>

April 13: <u>Masimo lawyer's promise dashes Apple's hopes for witness stand appearance by CEO Tim Cook</u>

April 10: <u>'This is a mess': Masimo trade secrets trial reveals details of Apple Watch development</u>

*Thank you for supporting my independent legal affairs journalism. Your paid subscriptions enable me to go in-depth and unfiltered on major issues. If you're not already a paid subscriber,*

*please consider purchasing a subscription for yourself or a gift subscription for someone else.
Your support is absolutely essential to my work and will help build
www.legalaffairsandtrials.com into a hub for quality journalism about our judiciary.*

| Type your email... | Subscribe |

**This is an independent, reader-supported project. Anyone who pays for a subscription is providing crucial assistance to bolster my independent coverage. Thank you!**

Legal Affairs and Trials with Meghann Cuniff is a reader-supported publication. To receive new posts via email and support my work, become a free or paid subscriber.

| Type your email... | Subscribe |

 4 Likes · 2 Restacks

## Comments

 Write a comment...

© 2023 Meghann Cuniff · Privacy · Terms · Collection notice
Substack is the home for great writing

Exhibit F
-64-