1   MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2   THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5   Tel.: 650.858.6000 / Fax: 650.858.6100

6   JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7   WILMER CUTLER PICKERING
      HALE AND DORR LLP
8   One Front Street, Suite 3500
    San Francisco, CA 94111
9   Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
      HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16                   **UNITED STATES DISTRICT COURT**

17     **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

18

19  MASIMO CORPORATION,            CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
20  CERCACOR LABORATORIES, INC.,   **APPLE'S MEMORANDUM IN**
    a Delaware corporation,        **OPPOSITION TO PLAINTIFFS'**
21                                 **MOTION FOR JUDGMENT AS A**
                  Plaintiffs,      **MATTER OF LAW UNDER FED. R.**
22                                 **CIV. P. 50(b)**
          v.
23                                 Hearing: July 24, 2023
    APPLE INC.,
24  a California corporation,      Time: 1:30pm
25                  Defendant.

26              REDACTED VERSION OF DOCUMENT
27              PROPOSED TO BE FILED UNDER SEAL
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

APPLE'S OPP'N TO PLAINTIFFS' RULE 50(b) MOTION

CASE NO. 8:20-cv-00048-JVS (JDEx)

# <u>TABLE OF CONTENTS</u>

STATEMENT ........................................................................................................ 2

    A.    The Record Establishes that Plaintiffs Should Have Become Aware Of The Supposed Misappropriation By 2016 ............................................. 2

    B.    This Court Denied Plaintiffs' Rule 50(a) Motion In Full ........................ 5

ARGUMENT ....................................................................................................... 6

I.    PLAINTIFFS ARE NOT ENTITLED TO JMOL ON APPLE'S STATUE OF LIMITATIONS DEFENSE ........................................................................ 6

    A.    Plaintiffs Do Not Dispute Apple Satisfied Its Burden To Show The Purported Misappropriation Occurred Before January 9, 2017 ................ 7

    B.    Plaintiffs Have Failed To Establish That No Reasonable Jury Could Find That Plaintiffs Should Have Known About The Misappropriation Before January 9, 2017 .................................................... 7

        1.    The statute of limitations began to run for all purported trade secrets as soon as Plaintiffs were on notice of a single act of supposed misappropriation ................................................................ 7

        2.    Plaintiffs failed to prove as a matter of law that they were not on notice of the purported misappropriation before 2017 ............. 10

CONCLUSION .................................................................................................. 17

Wilmer Cutler
Pickering Hale
and Dorr LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamar Biosciences Inc. v. Difco Laboratories Inc.*,
  1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ....................................................... 14

*Cypress Semiconductor Corp. v. Superior Court*,
  163 Cal. App. 4th 575 (2008) ................................................................... 9, 16, 17

*Equal Employment Opportunity Commission v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) ........................................................................ 1, 6, 8

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ........................................................................................ 17

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
  857 F. Supp. 2d 997 (S.D. Cal. 2012) ..................................................... 10, 11, 14

*Glue-Fold, Inc. v. Slautterback Corp.*,
  82 Cal. App. 4th 1018 (2000) ............................................................................. 10

*i4i Ltd. Partnership v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)..................................... 6

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ................................................................... 2, 12, 16, 17

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012)....................................................... 7, 8, 9

*Pollara v. Radiant Logistics, Inc.*,
  2014 WL 12585781 (C.D. Cal. June 6, 2014).................................................... 14

*Ultimate Franchises, Inc. v. Parsons*,
  2018 WL 6016153 (C.D. Cal. June 13, 2018) (Selna, J.).................................. 10

**Other Authorities**

Fed. R. Civ. P. 37(c) .................................................................................................. 12

Wilmer Cutler
Pickering Hale
and Dorr LLP

Plaintiffs failed at trial to prove numerous essential elements of their trade secret claim—including that they possessed the alleged trade secrets and that Apple misappropriated them—resulting in Apple's cross-motion under Rule 50(b).

Plaintiffs' own Rule 50(b) motion implicitly acknowledges the fundamental problems with their case by challenging only one aspect of one affirmative defense, i.e., whether Plaintiffs carried their burden to prove that they should not have discovered their purported claim before January 9, 2017.  Here too, however, Plaintiffs came up short.  Even if Plaintiffs' core theory of the case is taken at face value, Plaintiffs filed suit years too late despite being on at least inquiry notice of the conduct they claim amounts to misappropriation.  Accordingly, it is Apple, not Plaintiffs, that is entitled to judgment in its favor regarding its statute of limitations defense.  *See* Dkt. 1765 at 15-16.  Plaintiffs' motion fails to establish otherwise and instead advances unpreserved legal theories and unsupported arguments.

*First*, a party cannot raise theories in its Rule 50(b) motion that were not advanced in its Rule 50(a) motion, *see E.E.O.C. v. Go Daddy Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009), but that is exactly what Plaintiffs do.  Plaintiffs' Rule 50(a) motion made no mention of their theories that the statute of limitations period (1) runs separately for each alleged trade secret and (2) is only triggered once granular facts are available about the alleged misappropriation of the specific alleged trade secrets at issue at trial (as opposed to facts that would establish a misappropriation claim of any kind).  Plaintiffs accordingly cannot raise these points now.

*Second*, Plaintiffs' brief both misstates the evidentiary record and fails to consider the evidence in the light most favorable to Apple, as is required at the Rule 50(b) stage.  Plaintiffs first expressed overt suspicion in a January 2014 letter that Apple would "necessarily" misappropriate purported trade secrets if it employed Dr. Marcelo Lamego in the field of healthcare technology.  JTX 2937.  Not "possibly."  Not "potentially."  Plaintiffs staked out a position in that letter—sent six years before filing their

complaint—that employing Dr. Lamego in the very position that Plaintiffs indisputably knew he had taken at Apple would "necessarily" lead to the claim that they have pursued in this lawsuit.  Then, over the following two years, Plaintiffs heard about Dr. Lamego's departure from Apple and witnessed Apple's launch of the Series 0, 1, and 2 Watches with optical heart rate sensors.  After these events, Plaintiffs were aware of the supposed injury that they would later assert in this suit—i.e., that instead of acquiring Plaintiffs or entering into a business relationship with them, Apple had decided to develop wearable physiological monitoring technology on its own.  Plaintiffs accordingly had a duty to act with reasonable diligence to learn if there was a factual basis to their suspicion that Apple had employed Dr. Lamego on projects related to optical sensing of blood oxygenation, work that Plaintiffs had insisted in their 2014 letter would "necessarily" involve misappropriation.  *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) (statute of limitations period begins to run when plaintiff could have learned facts sufficient to justify a misappropriation claim).

To be clear: there was no misappropriation by Apple, no reasonable juror could have found otherwise, and this case can be resolved now on that basis.  But even beyond the fundamental merits problems, Plaintiffs' case also suffers from basic procedural problems.  Simply put, Plaintiffs waited too long to bring their meritless claims.

## STATEMENT

A.   **The Record Establishes that Plaintiffs Should Have Become Aware Of The Supposed Misappropriation By 2016**

At trial, Plaintiffs' theory of the case was that Apple made a strategic decision in in 2013-2014 to misappropriate Plaintiffs' technology rather than to acquire Plaintiffs or pursue a joint development agreement.  Plaintiffs and Apple only had one meeting during that timeframe. 4/6 AM Tr. 73:3-5.  According to Plaintiffs' CEO Joseph Kiani's testimony, Plaintiffs had hoped their 2013 meeting with Apple would result in an agreement of some kind under which Plaintiffs would integrate their technology for

noninvasive measurement of physiological parameters into Apple's products. *See* 4/6 AM Tr. 74-75. However, the purported trade secrets were admittedly *not* discussed. 4/5 PM Tr. 32-37; 4/6 AM Tr. 73:3-18.

Plaintiffs have accordingly argued that Apple acquired the purported technical trade secrets by hiring Cercacor's former Chief Technology Officer, Dr. Marcelo Lamego. As explained in Apple's Rule 50(b) motion, this theory is both wrong and wholly unsupported by the trial record. *See generally* Dkt. 1765 at 2-12. In particular, it became clear at trial that Plaintiffs' supposed technical trade secrets—which boil down to an industry-standard piece of black foam, a demodulation proposal rejected for its impracticality, and a short circuit familiar to any electrical engineer—are not cognizable trade secrets under California law, were not misappropriated, and did not unjustly enrich Apple. Yet even taking Plaintiffs' logic on its face, the record shows that Plaintiffs should have known by 2016 about the facts underlying their misappropriation theory. *See* Dkt. 1765 at 15-16; Dkt. 1766 at 3-5.

Dr. Lamego informed Plaintiffs in early January 2014 that he was resigning from Cercacor to join Apple. *See* 4/5 PM Tr. 45:18-23; JTX 786. A few weeks later, Plaintiffs sent a pointed letter to Apple's CEO, Tim Cook, laying out their "belie[f] that Apple ha[d] hired [Dr.] Lamego to design and develop products that are likely the same as the products that he was responsible for developing for Cercacor," and that "Apple's design, development, or sales efforts on any such product would compete directly with Cercacor's efforts." JTX 2937 at 1-2; 4/5 PM Tr. 47:13-16.

The letter did not mince words about Plaintiffs' belief that the hiring of Dr. Lamego would result in misappropriation of their alleged trade secrets. The letter "note[d] that Apple [had] expressed great interest in the Masimo technology on which [Dr.] Lamego was trained," and that ***"[i]t [wa]s difficult to imagine any reason for th[e] sequence of events other than Apple is attempting to gain access to, or at least the***

*benefit of, Cercacor and Masimo's trade secrets*."   JTX 2937 at 1.[1]   Accordingly, Plaintiffs demanded that "Apple … employ [Dr.] Lamego in an area that does not involve healthcare technology, including mobile health applications and *the measurement of physiological information*" because work in that area—or in any other that was in competition with Plaintiffs—would "*necessarily involve the use or disclosure of Cercacor's trade secrets*."   *Id.* at 2.[2]

Dr. Lamego left Apple in summer 2014.   At trial, Mr. Kiani testified that he was informed by a Cercacor employee (Cristiano Dalvi) that "Dr. Lamego left when Apple asked him to do something competitive to [Plaintiffs]."   4/5 PM Tr. 49:19-50:11.   There is no evidence in the record that Plaintiffs contacted either Dr. Lamego or Apple to inquire about the circumstances of Dr. Lamego's departure.   *See, e.g.*, *id.* 50:15-19.   Over the following two years, Apple released three models of Apple Watch—Series 0, 1, and 2—each of which uses noninvasive physiological monitoring technology to measure heart rate at the wrist (i.e., products that fall within the type of technology discussed in the January 2014 letter).   *See* 4/12 AM at 83:24-84:14.   Again, Plaintiffs neither presented evidence that they inquired into what role Dr. Lamego played in the development of Apple Watch nor explained why the Watch did not put them on notice of Apple's purported misappropriation.

On March 3, 2016, the U.S. Patent and Trademark Office published Apple's patent application that ultimately led to the '052 patent, which is entitled "Reflective Surface Treatments for Optical Sensors."   JTX 1239 at 1.   The '052 patent application lists Dr. Lamego as one of six co-inventors and describes the claimed technology as

---

[1] Unless otherwise specified, emphases have been added to quoted material and internal citations, quotation marks, and alterations have been omitted.

[2] The letter also referenced "Apple hir[ing] Masimo's [CMO] Dr. Michael O'Reilly." JTX 2937 at 1.   The evidence showed Plaintiffs knew by September 2014 that Dr. O'Reilly had not returned his personal notebooks that they allege contained their confidential business information and were the basis of the purported misappropriation of their alleged business trade secrets.   *See* JTX 4393.

useful for "an electronic device such as a wearable fitness device [that] can be positioned against the skin of a user's wrist … and can obtain therefrom certain physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on." *Id.* at 1, 8. A few years later, Plaintiffs listed the '052 patent as relevant prior art in one of their own patent applications, reflecting their actual knowledge of the patent's existence at least as of December 6, 2018. *See* 4/6 AM Tr. 78-83. While Plaintiffs have a general practice of monitoring patent filings for assertions of intellectual property rights relevant to their technologies and business, Mr. Kiani testified that he never instructed anyone to monitor Apple's patent filings after Dr. Lamego left Cercacor, and he is not aware of anyone undertaking such a search on Masimo's or Cercacor's behalf. *See* 4/5 PM Tr. 11:2-15; 4/6 AM Tr. 77:8-78:3. Again, Plaintiffs failed to present evidence regarding when they first learned of the '052 patent, why they took no steps to investigate in 2016 when the application published, or why the patent's publication did not put them at least on inquiry notice of Apple's purported misappropriation.

## B. This Court Denied Plaintiffs' Rule 50(a) Motion In Full

At the end of trial, the parties cross-moved for JMOL under Rule 50(a). Plaintiffs argued that no reasonable jury could find that the suit was barred by the statute of limitations because (1) they first became aware of the purported misappropriation during a meeting Mr. Kiani had with counsel in October 2019 and (2) they could not have reasonably discovered the relevant facts earlier because Mr. Kiani trusted Dr. Lamego not to share any of Plaintiffs' purported secrets with Apple. *See* Dkt. 1657 at 2-6. Plaintiffs' Rule 50(a) brief did not discuss whether Plaintiffs were on notice of any specific alleged trade secrets. *See id.* Nor did the brief argue that each alleged trade secret was subject to a separate statute of limitations period. To the contrary, Plaintiffs treated their claim as subject to a single limitations period and asserted that the

1  limitations period was triggered as to all alleged trade secrets in October 2019.  *See id.*
2  at 2-6.

3    The Court denied Plaintiffs' Rule 50(a) motion in full, including because
4  Plaintiffs misstated the legal standard.  Dkt. 1724 at 18-19.

## ARGUMENT

6    In evaluating a Rule 50(b) motion, this Court "view[s] the evidence in the light
7  most favorable to the nonmoving party and draw[s] all reasonable inferences in that
8  party's favor."  *Go Daddy Software, Inc.*, 581 F.3d at 961.  "The test applied is whether
9  the evidence permits only one reasonable conclusion."  *Id.*  However, because a "Rule
10 50(b) motion for [JMOL] is not a freestanding motion," but rather "a renewed Rule 50(a)
11 motion, … a party cannot properly raise arguments in its post-trial motion for [JMOL]
12 under Rule 50(b) that it did not raise in its … Rule 50(a) motion."  *Id.*; *accord i4i Ltd.
13 P'ship v. Microsoft Corp.*, 598 F.3d 831, 845 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)
14 (a party must "file a pre-verdict JMOL motion on all theories, and with respect to all
15 [factual bases for its positions] it wishes to challenge" at Rule 50(b)).

16 **I.**  **PLAINTIFFS ARE NOT ENTITLED TO JMOL ON APPLE'S STATUE OF**
17   **LIMITATIONS DEFENSE**

18   As this Court properly instructed the jury, CUTSA's statute of limitations
19 provision requires a two-step analysis.  *See* Dkt. 1715 at 46 (Instruction No. 36).  First,
20 Apple was required to prove that "the claimed misappropriation of a trade secret
21 occurred before January 9, 2017."  *Id.*  Once Apple met its burden, Plaintiffs were
22 required to prove "that before January 9, 2017, they did not discover, nor with reasonable
23 diligence should [they] have discovered, facts that would cause a reasonable person to
24 suspect that Apple had misappropriated at least one of Masimo and Cercacor's Asserted
25 Trade Secrets."  *Id.*  At least "for purposes of this motion," even Plaintiffs do not dispute
26 that they bear the burden on the second step.  Mem. 2.

27
28

**A.   Plaintiffs Do Not Dispute Apple Satisfied Its Burden To Show The Purported Misappropriation Occurred Before January 9, 2017**

Plaintiffs do not dispute—and accordingly concede—that Apple met its burden to show that according to Plaintiffs' theory, the purported misappropriation in this case occurred before January 9, 2017.  And for good reason:  Plaintiffs allege that Apple acquired the remaining purported trade secrets through Dr. Lamego, who only worked at Apple in 2014.  *See, e.g.*, 4/12 AM Tr. 81-85; 4/14 AM Tr. 70.  Although nothing Apple did constituted misappropriation of trade secrets, the facts that Plaintiffs allege amounted to misappropriation necessarily must have occurred in 2014.

**B.   Plaintiffs Have Failed To Establish That No Reasonable Jury Could Find That Plaintiffs Should Have Known About The Misappropriation Before January 9, 2017**

**1.   *The statute of limitations began to run for all purported trade secrets as soon as Plaintiffs were on notice of a single act of supposed misappropriation***

As Apple explained in its Rule 50(b) brief, the statute of limitations began to run on all related alleged trade secrets as soon as Plaintiffs could have discovered that Apple misappropriated a single one.  *See* Dkt. 1765 at 15; *see also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1110 (N.D. Cal. 2012) (collecting cases).  Plaintiffs' contrary argument (Mem. 2) that "the statute of limitations runs separately for each trade [alleged] trade secret" should be rejected for both procedural and substantive reasons.

*First*, Plaintiffs are procedurally barred from raising this new legal theory because they failed to raise it in their Rule 50(a) motion.  Plaintiffs' memorandum in support of their Rule 50(a) motion actually argued the opposite.  Adopting the formulation that appears in the jury instructions, Plaintiffs summarized the relevant legal test as "a trade secret plaintiff 'should have discovered the misappropriation … 'when there is reason

to suspect that *a* trade secret has been misappropriated.'" Dkt. 1657 at 2.  Even at oral argument on the parties' Rule 50(a) motions, Plaintiffs' counsel addressed the statute of limitations defense but did not advance their current argument.  *See* 4/25 Tr. 101-102 (Plaintiffs' counsel agreeing that "[t]he statute of limitation began to run as soon as plaintiffs discovered or had reason to discover that *a* trade secret had been misappropriated").  Plaintiffs accordingly may not now argue that a separate statute of limitation applies to each trade secret because there is no such argument for them to "renew … under Rule 50(b)."  *Go Daddy Software*, 581 F.3d at 961.  Nor may they advance factual arguments in support of that position, since they marshaled no such evidence in their Rule 50(a) motion.

*Second*, Plaintiffs' position is wrong on the law.  California law is clear that the first discoverable misappropriation commences the limitations period for all allegedly related trade secrets.  *MedioStream*, 689 F. Supp. 2d at 1110.  Plaintiffs do not cite a single authority supporting their new argument that the statute of limitations necessarily runs separately for related trade secrets.  Instead, they baldly assert that this "Court [already] held the statute of limitations runs separately for each [alleged trade secret]." *See* Mem. 2.  Tellingly, the Court's thorough Rule 50(a) opinion did not address this issue, *see* Dkt. 1724 at 12-13, despite Apple's Rule 50(a) motion having presented it, *see* Dkt. 1705 at 19-20.  Plaintiffs accordingly point only to the verdict form, which does not make any such determination.

At most, the verdict form suggests that the Court intended to leave it to the jury to determine the timeliness of each alleged trade secret.  *See* Dkt. 1719 at 4 (directing jury to answer separately for each of six remaining alleged trade secrets whether "Apple has proven that the statute of limitations prevents Masimo and Cercacor from asserting a claim for misappropriation").  Specifically, the Court instructed the jury that "the lawsuit" was time barred unless Plaintiffs "prove[d] that before January 9, 2017, they did not discover, nor with reasonable diligence should they have discovered, facts that

would have caused a reasonable person to suspect that Apple had misappropriated ***at least one*** of Masimo and Cercacor's Asserted Trade Secrets." Dkt. 1715 at 46 (Court's Instruction No. 36). This formulation adopted the relevant language from Apple's proposed instruction. *See* Dkt. 1500-1 at 214. Instruction No. 36 also meaningfully differed from the Court's other instructions, which directed the jury to assess evidence concerning only "*the* Asserted Trade Secret" when considering Plaintiffs' "claim with respect to any particular Asserted Trade Secret." Dkt. 1715 at 26; *see also, e.g.*, *id.* at 27-29, 33, 38-43, 48.

Applying the proper legal test under *MedioStream*, this Court can and should decide at the Rule 50(b) stage that a single statute of limitations period applies to Plaintiffs' entire CUTSA claim, as a matter of law. *See* Dkt. 1746-1 at 15. In any event, when all reasonable inferences are drawn in Apple's favor, there is certainly no basis to hold that the alleged technical trade secrets were *unrelated* as a matter of law. That is because all the alleged technical trade secrets "concern similar technology developed for use in similar products"—a wearable device that measures physiological parameters using light. *See MedioStream*, 869 F. Supp. 2d at 1110. Plaintiffs themselves argued in opposition to Apple's renewed *Daubert* motion that each alleged technical trade secret is part of the same group of ███████████████████████████████████ ███████████████████████████████████████████ Dkt. 1646 at 9, 11. And Plaintiffs' theory of unjust enrichment treats the alleged technical trade secrets as so interchangeable that (under Plaintiffs' view) they are entitled to the same monetary award regardless of how many (or which) alleged trade secrets are found to be misappropriated. *See, e.g.*, 4/13 AM Tr. 105:22-106:23.

Moreover, "in … California … the interest protected by trade secret law is the contractual or confidential relationship within which the trade secrets were disclosed," so "[t]he cause of action arises but once." *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 582 (2008). At a minimum, therefore, the remaining alleged

technical trade secrets are connected by the fact that Plaintiffs allege they were all misappropriated through Dr. Lamego, and "California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1027 n.6 (2000); *see also Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012) (holding that because "all of [p]laintiffs' purported trade secrets were allegedly shared in the same time period and in connection with the same relationship," plaintiffs' "suspicion of the first act of alleged misappropriation triggered the statute of limitations for [their] entire claim").

Plaintiffs' motion has no answer to these arguments, which Apple has raised in the past, including in the Rule 50(a) briefing. *See* Dkt. 1705 at 19-22; Dkt. 1706 at 2-4; Dkt. 1617 at 2-5. Moreover, on Plaintiffs' JMOL motion, it is their burden to prove that CUTSA's discovery rule tolled the statute of limitations as a matter of law, so they must establish that no reasonable jury could find that the alleged technical trade secrets were related, and thus that there was a single statute of limitations period for the whole claim. *See* Dkt. 1724 at 13. Plaintiffs' motion provides no argument at all on this point. They should not be permitted to do so for the first time on reply. *See Ultimate Franchises, Inc. v. Parsons*, 2018 WL 6016153, at *3 (C.D. Cal. June 13, 2018) (Selna, J.) ("Issues raised for the first time in the reply brief are not considered by the Court.").

### 2. *Plaintiffs failed to prove as a matter of law that they were not on notice of the purported misappropriation before 2017*

a. Plaintiffs failed to prove that they could not have discovered the purported misappropriation before 2017 "despite reasonable diligence," let alone prove it as a matter of law. *Gabriel Techs.*, 857 F. Supp. 2d at 1003. As this Court previously held, the limitations period begins to run "[w]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient

Wilmer Cutler
Pickering Hale
and Dorr LLP

to confirm this suspicion (and justify bringing suit) … even though … [Plaintiffs did] not conduct[] such an investigation." Dkt. 606 at 3. In other words, "[s]o long as a suspicion exists, it is clear that the [CUTSA] plaintiff must go find the facts; she cannot wait for the facts to find her." *Gabriel Techs.*, 857 F. Supp. 2d at 1003. To carry their "burden of proving the facts necessary to toll the statute … [P]laintiffs must show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.*

Plaintiffs have met neither requirement. As Apple has explained in its own motions under Rules 50(b) and 52, the record reflects that:

- By January 2014, Plaintiffs had accused Apple of hiring of Dr. Lamego to misappropriate their purported trade secrets, going so far as to assert it was "difficult to imagine" that Apple was doing anything other than "attempting to gain access to, or least the benefit of, Cercacor and Masimo's trade secrets," *see* JTX 2937;

- By summer 2014, Plaintiffs' CEO was allegedly told that Apple had asked Dr. Lamego to work on projects that were "competitive" to Plaintiffs' own products*, see* 4/5 PM Tr. 49:19-50:11;

- By April 2015, Plaintiffs had actual knowledge that Apple had released the Series 0 Watch with optical sensors developed without Plaintiffs' assistance, *see* 4/12 AM at 83:24-84:14; DDX-13.2;[3] and

- By March 2016, Plaintiffs could have confirmed from public patent filings that Dr. Lamego had performed the type of work that Plaintiffs insisted in 2014 would "necessarily" indicate misappropriation of their purported trade secrets, *see* JTX 1239 at 1.

*See generally* Dkt. 1765 at 15-16; Dkt. 1766 at 3-5.

---

[3] Apple later released the updated Watch Series 1 and Series 2 models in September 2016 with an updated heart rate sensor. *See* 4/19 AM Tr. 24:7-17; DDX-13.2.

More broadly, Plaintiffs should have known by March 2016 that—based on Apple's silence since the single meeting three years earlier—the hoped-for joint development proposal or acquisition offer was not forthcoming.  4/5 PM Tr. 35-39; 4/6 AM Tr. 74-75.  This matters because Plaintiffs' only theory for harm (i.e., lost profits) was that Apple's purported misappropriation prevented a potentially lucrative business deal for Plaintiffs.  *See* Dkt. 1283 at 6-10.[4]  The Court denied Apple's motion for summary judgment on the statute of limitations defense because, drawing all inferences in Plaintiffs' favor, it concluded that Plaintiffs had no duty before 2017 to "act on th[eir] suspicion" because they were unaware of any alleged injury.  Dkt. 606 at 7.  However, the subsequent trial record conclusively proved the contrary:  the trial record established that Plaintiffs "knew [they] had suffered [their purported] injury" at least by the time the '052 patent application published, and that they "suspect[ed that Apple wa]s responsible for [that] injury," so "it was up to [Plaintiffs] to seek redress against the cause of that injury."  *Id*.  In other words, Plaintiffs had "an incentive to sue" by March 2016, *id.*, and so by 2016 they had a duty to "go find the facts; [they could] []not wait for the facts to find [them]," *Jolly*, 44 Cal. 3d at 1111.

**b.**     Plaintiffs' brief does not come close to establishing that ***any*** fair-minded jury could find that Plaintiffs met their burden to show that the statute of limitations period did not begin until January 2017, let alone that ***every*** reasonable juror would reach that conclusion.  To the contrary, the only reasonable conclusion is that they have not met that burden.

*First*, Plaintiffs place heavy weight on Mr. Kiani's testimony that he personally did not learn about Apple's supposed misappropriation until discussing certain Apple patents with counsel in October 2019, going so far as to assert that Mr. Kiani "provided

---

[4] The Court ultimately struck Plaintiffs' lost profits theories from this litigation under Fed. R. Civ. P. 37(c), because they were not timely disclosed.  *See* Dkt. 1527.  To be clear, Plaintiffs were ***not*** injured by Apple, but their lost profits theories were the only type of "injury" Plaintiffs have even attempted to allege.

*the only evidence* as to when Masimo learned of Apple's [purported] misappropriation." Mem. 3-4, 6.  This concession is fatal to Plaintiffs' argument, because (as Apple explained in its Rule 50(a) motion) Plaintiffs should not be permitted to rely on Mr. Kiani's testimony about his October 2019 communications with counsel.  *See* 4/12 AM Tr. 16:6-11; *see also* Dkt. 1705 at 21.  Plaintiffs' motion does not even acknowledge this issue, let alone explain how they can obtain JMOL in reliance on such evidence.

More broadly, Mr. Kiani's testimony speaks only to his own personal knowledge—it does not provide evidence about what was or should have been known to *Masimo and Cercacor* as corporate entities, which together have thousands of employees.  Plaintiffs identify no case law that suggests that the CEO's knowledge alone is coextensive with that of the corporations'.

Plaintiffs argue that a reasonable jury would have had no choice but to accept Mr. Kiani's testimony because "Apple identifies no contrary evidence" to suggest that corporate knowledge differed from Mr. Kiani's knowledge.  Mem. 6.  But this is nothing more than improper burden shifting, as it is Plaintiffs that have the duty to put forth sufficient evidence to establish Masimo and Cercacor were not on inquiry notice of the purported misappropriation.  In any event, Mr. Kiani's own testimony makes clear that someone at Masimo was aware of—for example—the '052 patent years before Mr. Kiani.  Specifically, although Mr. Kiani asserted that he was not personally aware of the '052 patent until June 2022, the Information Disclosure Statement for a Masimo patent lists the '052 patent as prior art—conclusively establishing that *Masimo* was aware of the '052 patent no later than December 2018.  *See* 4/6 AM Tr. 78:8-20.  Moreover, Plaintiffs admitted that ███████████████████████████████████████████████ ████████████████████████████████████████████, *see* Dkt. 1582-1 at 13-14, yet the only evidence Plaintiffs presented to the jury was that Mr. Kiani first became aware of any disputed Apple patents was a year later, in October 2019, *see* 4/6 AM Tr.  78:4-13.  Therefore, even if the Court were to consider Mr. Kiani's testimony

1    about his October 2019 communications with counsel, that does not establish when

2    *Plaintiffs* first discovered the facts upon which their claim is based.

3         *Second*, Plaintiffs ask this Court to treat their January 2014 letter as irrelevant

4    because this Court noted at the summary judgment stage that the letter was written a few

5    days before Dr. Lamego started at Apple. *See* Mem. 6-7. As a threshold matter, this

6    Court's "determination at the summary judgment phase … does not bar the Court from"

7    reaching a different conclusion at Rule 50(b), in light of the full trial record. *Pollara v.*

8    *Radiant Logistics, Inc.*, 2014 WL 12585781, at *11 (C.D. Cal. June 6, 2014).

9         Regardless, even if Plaintiffs could not have confirmed their overt suspicion of

10   what they asserted would "necessarily" occur when they sent the letter on January 24

11   2014, they had "'a duty to investigate further and [are] charged with knowledge of

12   matters with would have been revealed by such an investigation.'" *Alamar Biosciences*

13   *Inc. v. Difco Lab'ys Inc*., 1996 WL 648286, at *3 (E.D. Cal. Feb. 27, 1996). Plaintiffs

14   identify no authority suggesting that Plaintiffs' initial suspicion must arise at a time

15   when the suspicion was confirmable. To the contrary, courts assessing the timeliness of

16   a CUTSA claim routinely analyze "separate instances" over time to establish that a

17   plaintiff became suspicious and then later learned (or should have learned) facts to

18   confirm that suspicion. *Gabriel*, 857 F. Supp. 2d at 1004-1007; *see also, e.g.*, *Alamar*

19   *Biosciences*, 1996 WL 648286 at *3-4 (considering expressions of suspicion upon

20   employee's 1987 departure and observations in 1990 and 1991 of former employee's

21   activities). And Plaintiffs cite no cognizable evidence suggesting that Masimo's and

22   Cercacor's suspicions expressed in the letter were later dispelled.[5] The only reasonable

23   inference is that Plaintiffs remained suspicious thereafter, including when Dr. Lamego

24

25

26   _____

     [5] Mr. Kiani's self-serving testimony that Mr. Dalvi's statements reinforced *his* trust in

27   Dr. Lamego, 4/5 PM Tr. 49-50, does not prove that *Plaintiffs'* suspicions as corporate
     entities were allayed (and certainly not when the record is read in the light most favorable

28   to Apple).

departed from Apple, when Apple released Watch Series 0, 1, and 2, and when the '052 patent was published.

*Third*, Plaintiffs argue that because Apple maintains that no misappropriation occurred, Apple's "arguments on the merits are irreconcilable with its statute-of-limitations defense." Mem. 9. But Apple's argument that its conduct did not constitute misappropriation of any purported trade secret is not in tension (let alone "irreconcilable") with its position that facts that form the basis of Plaintiffs' theory of misappropriation were known or should have been known to Plaintiffs more than three years before they filed. While a defense on the merits and a statute of limitations defense may, on a thematic level, be "somewhat conflicting cases to [present simultaneously to] the jury," Dkt. 524 at 16 (quoted in Mem. 9), Apple's merits defense in no way constitutes an admission with respect to the statute of limitations defense. There is no analytical conflict between the two. And Plaintiffs' only specific example in support of this argument—Apple supposedly arguing that Masimo "did not have enough facts to sue," Mem. 9 (quoting Dkt. 121 at 16-17)—is highly misleading. The cited argument from Apple's motion to dismiss asserted only that Plaintiffs' January 2014 letter "is not a basis for alleging knowledge of misappropriation by Apple," because that inference relies on the "inevitable disclosure" premise that California courts uniformly reject. Dkt. 121 at 16-17. Apple's bottom-line position is that Plaintiffs waited too long to bring meritless claims—resulting in two independent grounds for dismissing the case: (1) the claims are meritless and (2) the claims are untimely. Those grounds are not in conflict.

*Fourth*, Plaintiffs devote the remainder of their brief to the argument that the statute of limitations does not start running until they could have known facts sufficient to prove *all* aspects of each element of their CUTSA claim—including details about the alleged misappropriation of each of the six remaining alleged trade secrets. *See* Mem. 4-5 & 7-8.

As a threshold matter, Plaintiffs are procedurally barred from raising this theory because they failed to press it (or, indeed, to refer to any specific facts regarding their lack of knowledge of a specific purported trade secret) in their Rule 50(a) motion. *See generally* Dkt. 1657 at 1-5; *supra* pp. 7-8.

Plaintiffs' argument also fails on the law. Plaintiffs cite no authority for the proposition that knowledge of such granular information (or at least access to such granular information) is required to start the statute-of-limitations clock. To the contrary, this Court *rejected* Plaintiffs' current position at the summary judgment stage, explaining that "definitive knowledge" of the details of alleged misappropriation "is not required" for the discovery rule to be triggered. Dkt. 606 at 7. This Court's approach is consistent with the California Supreme Court's holding that for the statute of limitations to begin, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." *Jolly*, 44 Cal. 3d at 1111; *see also id.* (rejecting argument that the statute of limitations period does not run "until [a] plaintiff discover[s] the facts constituting the misconduct").

California courts "do not [accept Plaintiffs'] hypertechnical approach to the application of the discovery rule" of "examining whether the plaintiffs suspect facts supporting each specific legal element," but rather "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Cypress Semiconductor*, 163 Cal. App. 4th at 586. It is therefore irrelevant, for example, that the '754 patent had not yet published in 2016, because Plaintiffs were on notice of facts about Dr. Lamego's work at Apple that they alleged—both in their January 2014 letter and in this lawsuit—"necessarily" required misappropriation of their purported trade secrets.

Plaintiffs' conduct in this litigation illustrates why this approach to the discovery rule makes sense. As Plaintiffs' motion emphasizes, they added L5 to the case and amended other alleged trade secrets in April 2022—more than two years into this

litigation and in response to discovery.  *See* Mem. 5 (citing Dkt. 650).  It is for precisely this type of factual scenario that "[c]ourts have rejected the notion that the statute of limitations begins running only when a plaintiff can unassailably establish a legal claim for trade secret misappropriation."  *Cypress Semiconductor*, 163 Cal. App. 4th at 586.  Such a rule "would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers 'smoking gun' evidence of misappropriation," or only discovers on-point evidence during pre-trial discovery.  *Id.*  Instead, a trade secret plaintiff must diligently inquire after their suspicions and timely file a claim if those inquiries provide a basis to reasonably suspect misappropriation occurred.  *See Jolly*, 44 Cal. 3d at 1111.

Although Plaintiffs cite *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005), in passing, that decision does not justify their position.  *Fox* requires only "that [a] plaintiff reasonably suspects that the cause of action is a meritorious one" and be able to plead "supporting facts."  *Fox,* 35 Cal. 4th at 815.  *Fox* nowhere suggests that a plaintiff can sit by while information is available that could confirm their suspicion of supposed misappropriation with facts about a defendant's conduct that they believe "necessarily" would require use or disclosure of their purported trade secrets.  *See id.*; JTX 2937.  Plaintiffs' (1) overt suspicion of Apple, (2) stated belief that in 2014 the circumstances of Dr. Lamego's hiring "necessarily" would lead to misappropriation, (3) knowledge of Dr. Lamego's brief employment at Apple, and (4) awareness of Apple Watch were—particularly when taken together—sufficient to impose a duty on Plaintiffs to "go find the facts" required to confirm their suspicions.  *Jolly*, 44 Cal. 3d at 1111.

## CONCLUSION

Plaintiffs' misappropriation claim fails on the merits as a matter of law.  But even taking Plaintiffs' merits arguments on their face, the claim would still be barred because it was untimely filed—and no reasonable juror could find otherwise.  Therefore, for the

reasons explained above, Plaintiffs' motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) should be denied, and Apple's cross-motion should be granted.

Dated: June 26, 2023                    Respectfully submitted,


                                        MARK D. SELWYN
                                        JOSEPH J. MUELLER
                                        AMY K. WIGMORE
                                        JOSHUA H. LERNER
                                        SARAH R. FRAZIER
                                        NORA Q.E. PASSAMANECK
                                        THOMAS G. SPRANKLING
                                        WILMER CUTLER PICKERING HALE AND
                                        DORR LLP

                                        BRIAN A. ROSENTHAL
                                        GIBSON, DUNN & CRUTCHER LLP

                                        KENNETH G. PARKER
                                        HAYNES AND BOONE, LLP



                                        By:  */s/ Mark D. Selwyn*
                                             Mark D. Selwyn


                                        *Attorneys for Defendant Apple Inc.*

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 5,810 words, which:

 <u>X</u>  complies with the word limit of L.R. 11-6.1.

 ___ complies with the page limit set by court order dated Apr. 10, 2023.


Dated: <u>  June 26, 2023     </u>          Respectfully submitted,


MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: <u>*/s/ Mark D. Selwyn*                    </u>
        Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*