Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**Knobbe, Martens, Olson & Bear, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)          Brian C. Horne (Bar No. 205621)
adam.powell@knobbe.com                    brian.horne@knobbe.com
Daniel P. Hughes (Bar No. 299695)         Mark D. Kachner (Bar No. 234192)
daniel.hughes@knobbe.com                  mark.kachner@knobbe.com
**Knobbe, Martens, Olson & Bear, LLP**    **Knobbe, Martens, Olson & Bear, LLP**
3579 Valley Centre Drive                  1925 Century Park East, Suite 600
San Diego, CA 92130                       Los Angeles, CA 90067
Phone: (858) 707-4000                     Phone: (310) 551-3450
Fax: (858) 707-4001                       Fax: (310) 551-3458

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO APPLE'S MOTION UNDER RULE 52 FOR JUDGMENT ON ITS EQUITABLE DEFENSES**<br><br>Date: July 24, 2023<br>Time: 1:30 pm<br>Courtroom 10C<br><br>Hon. James V. Selna |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT.............................................................................................. 1

    A.   Apple Ignores The Court's Rule 50(a) Order Addressing
        Apple's Affirmative Defenses............................................................ 1

    B.   Apple Did Not Establish Laches ........................................................ 2

        1.   Laches Does Not Apply To Claims Under CUTSA ........................ 2

        2.   Apple Did Not Establish The Elements Of Laches ...................... 4

            a.   Masimo Did Not Unjustifiably Delay ................................. 4

                i.    Masimo's 2014 Letter ................................................. 4

                ii.   Lamego's Departure From Apple ............................... 5

                iii.  Apple's Release Of Apple Watch Series 0,
                     1, And 2 .......................................................................... 6

                iv.   Apple's   '052   Patent   And   Patent
                     Application ................................................................... 7

            b.   Masimo Did Not Acquiesce And Apple Was Not
                Prejudiced ........................................................................... 8

                i.    Masimo Did Not Acquiesce ........................................ 8

                ii.   Apple Suffered No Prejudice ................................... 10

    C.   Apple Did Not Establish Waiver ...................................................... 11

        1.   Waiver  Requires  More  Than  Alleged  Delay  Or
            Inaction .................................................................................. 12

        2.   Apple Did Not Satisfy Its Heavy Burden Of Proof ..................... 14

III.  CONCLUSION ......................................................................................... 16

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*Arizona v. Tohono O'odham Nation,*

5
    944 F. Supp. 2d 748 (D. Ariz. 2013) ........................................................................12

6

*Blaser v. State Teachers' Ret. Sys.,*
    86 Cal. App. 5th 507 (2022), *review denied* (Mar. 15, 2023) ...............................2

7

8

*Clark v. Capital Credit & Collection Servs.,*
    460 F.3d 1162 (9th Cir. 2006) .........................................................................13, 15

9

*Cnty. of Oneida v. Oneida Indian Nation of N.Y.,*

10
    470 U.S. 226 (1985)................................................................................................3

11

*Connolly v. Trabue,*

12
    204 Cal. App. 4th 1154 (2012) ..............................................................................2

13

*Danjaq LLC v. Sony Corp.,*

14
    263 F.3d 942 (9th Cir. 2001) ..........................................................................10, 11

15

*Duncan v. Office Depot,*

16
    973 F. Supp. 1171 (D. Or. 1997) ....................................................................12, 14

17

*Groves v. Prickett,*

18
    420 F.2d 1119 (9th Cir. 1970) ..............................................................................14

19

*Johnson v. City of Loma Linda,*
    24 Cal. 4th 61 (2000)..........................................................................................3, 4

20

*Kay v. Kay,*

21
    188 Cal. App. 2d 214 (1961) ..........................................................................12, 13

22

*Novell, Inc. v. Weird Stuff, Inc.,*

23
    1993 WL 13767335 (N.D. Cal. Aug. 2, 1993)................................................12, 14

24

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*

25
    572 U.S. 663 (2014)...........................................................................................2, 3

26

*Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.,*

27
    2011 WL 2623991 (Del. Ch. July 1, 2011) ..........................................................3

28

1
2

# TABLE OF AUTHORITIES
## (*cont'd*)

3

**Page No(s).**

4

*Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*,
5
    2012 WL 3090935 (Del. Ch. July 31, 2012) ........................................3, 4

6

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
7
    894 F.3d 1015 (9th Cir. 2018) ...................................................................3

8

*Qualcomm Inc. v. Broadcom Corp.*,
9
    548 F.3d 1004 (Fed. Cir. 2008) .................................................12, 13, 15

10

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    580 U.S. 328 (2017)....................................................................................3

11
12

*Solis v. Couturier*,
    2009 WL 2022343 (E.D. Cal. July 8, 2009)....................................12, 14

13
14

*United States v. Amwest Surety Ins. Co.*,
    54 F.3d 601 (9th Cir. 1995) .....................................................................14

15
16

*United States v. King Features Entm't, Inc.*,
    843 F.2d 394 (9th Cir. 1988) ...................................................................11

17
18

*United States v. Park Place Assocs., Ltd.*,
    563 F.3d 907 (9th Cir. 2009) ...................................................................12

19
20

# OTHER AUTHORITIES

21

Cal. Civ. Code § 3426.1................................................................................5

22

Cal. Civ. Code § 3426.6................................................................................2

23

Fed. R. Civ. P. 11 .........................................................................................5

24

Fed. R. Civ. P. 50 ...................................................................................1, 16

25

Fed. R. Civ. P. 52 ...................................................................................2, 16

26
27
28

# I.  INTRODUCTION

Apple did not meet its burden to establish laches by a preponderance of the evidence.  Nor did Apple meet its burden to establish waiver by clear and convincing evidence.  Apple does not assert Masimo had actual knowledge of Apple's misappropriation.  Apple merely argues Masimo should have known of such misappropriation and investigated sooner.  Apple's delay arguments are based on combing various events, none of which provided a reason for Masimo to investigate.  To the contrary, many of Apple's cited events suggested Apple had not misappropriated trade secrets.  Moreover, Apple fails to identify any information that Masimo would have discovered through an earlier investigation.

Apple's affirmative defenses also fail for additional reasons.  The Supreme Court has confirmed that laches is an equitable defense that cannot bar a legal claim subject to a statute of limitations.  Further, Apple failed to prove laches because Apple did not establish either acquiescence by Masimo or prejudice to Apple.  Apple failed to prove implied waiver[1] because Apple did not identify any clear, decisive, and unequivocal conduct manifesting an intent to waive Masimo's rights.  A mere passage of time cannot constitute waiver.

The Court should thus enter judgment in favor of Masimo and against Apple on Apple's affirmative defenses of laches and waiver.

# II.  ARGUMENT

## A.    Apple Ignores The Court's Rule 50(a) Order Addressing Apple's Affirmative Defenses

Apple twice cites the Court's Rule 50(a) Order, but does so only in footnotes addressing ancillary issues.  *See* Mot. [Dkt. 1751-1] at 3 n.1, 12 n.4.  Apple fails to acknowledge, much less explain, the portion of the Court's Rule 50(a) Order that suggested Apple abandoned its laches and waiver defense.  *See* Dkt. 1724 at 19 ("The

---

[1] Apple does not assert express or actual waiver.

1    motion is ***moot*** as to the remaining defenses [including laches and waiver] ***as none has***

2    ***been presented at trial***." (emphases added)).  The Court's findings appeared to resolve

3    Apple's affirmative defenses.  *See* Fed. R. Civ. P. 52(c) ("[i]f a party has been fully

4    heard on an issue during a nonjury trial and the court finds against the party on that issue,

5    the court may enter judgment against the party on a claim or defense"); *id.* at 52(a)

6    ("findings and conclusions … may appear in an opinion").

7        If the Court already determined that Apple did not present its laches or waiver

8    defenses at trial, no further analysis is necessary to enter judgment rejecting these

9    defenses under Rule 52.

10   **B.**    **Apple Did Not Establish Laches**

11       **1.**    **Laches Does Not Apply To Claims Under CUTSA**

12       Apple concedes that trade secret misappropriation is a legal claim with a three-

13   year statute of limitations.  *See* Cal. Civ. Code § 3426.6; Mot. at 8:16-17 (referring to

14   "the three-year statute of limitations period provided for in Cal. Civ. Code § 3426.6").

15   "[I]t is well-established, both in California and generally, that laches applies to equitable

16   actions, not actions at law."  *Connolly v. Trabue*, 204 Cal. App. 4th 1154, 1164, (2012).

17   "Even where equitable claims are combined with actions at law, laches remains

18   unavailable as a defense to the legal claims."  *Blaser v. State Teachers' Ret. Sys.*, 86 Cal.

19   App. 5th 507, 540 (2022), *review denied* (Mar. 15, 2023).

20       The Supreme Court has repeatedly held that laches cannot bar legal claims that

21   are subject to a statute of limitations.  *See Petrella v. Metro-Goldwyn-Mayer, Inc*., 572

22   U.S. 663, 678 (2014) ("laches is a defense developed by courts of equity; its principal

23   application was, and remains, to claims of an equitable cast for which the Legislature

24   has provided no fixed time limitation"); *id.* at 679 ("we adhere to the position that, in

25   face of a statute of limitations enacted by Congress, laches cannot be invoked to bar

26   legal relief").  The Supreme Court has explained that:

27           The enactment of a statute of limitations necessarily reflects a

28           congressional decision that the timeliness of covered claims is better judged

-2-

on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power.

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 334-35, (2017); *see Cnty. of Oneida v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 244-245 at n.16 (1985) ("application of the equitable defense of laches in an action at law would be novel indeed").

The Ninth Circuit recognized these recent Supreme Court rulings are neither surprising nor new. "[A]lthough *Petrella* and *SCA Hygiene* are recent decisions, the idea that laches will not bar a claim for legal relief brought within the applicable statute of limitations is not." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1024 (9th Cir. 2018).

Apple addresses none of these cases. Nor does Apple cite any case applying laches to bar a claim brought within the relevant statutory period. Instead, Apple cites two state court cases addressing untimely claims that were not barred by a statute of limitations period for procedural reasons. *See* Mot. at 8:12-20. In the first case, the petitioner delayed more than 12 times the statutory time limit. *See Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000). The court applied laches only because the statute of limitations was inapplicable due to the city failing to provide the required notice. *Id.*

In the second case, the plaintiff waited longer than the statutory time limit before obtaining a tolling agreement. *See Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2012 WL 3090935, at *14-15 (Del. Ch. July 31, 2012). The Delaware Chancery court applied laches because it "is a court of equity" that "generally analyzes questions of time bars and undue delay under the doctrine of laches." *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2011 WL 2623991, at *14 (Del. Ch. July 1, 2011); *see Petroplast*, 2012 WL 3090935, at *9 ("In determining what constitutes an

-3-

1  unreasonable delay for purposes of laches, [Delaware Chancery] generally looks to the
2  statute of limitations for analogous claims at law.")

3      *Johnson* and *Petroplast* are entirely consistent with the general rule articulated by
4  the Supreme Court and the Ninth Circuit.  Laches cannot bar a legal claim that is subject
5  to an applicable statute of limitations.  Accordingly, the Court should grant judgment on
6  Apple's laches defense as a matter of law because laches is not available in this case.

### 2.    <u>Apple Did Not Establish The Elements Of Laches</u>

8      Regardless of whether laches is available in this case, Apple did not establish the
9  required elements.  Apple concedes that its laches defense requires proof that Masimo
10  unreasonably delayed filing suit and that either (i) Masimo acquiesced in the
11  misappropriation or (ii) the delay prejudiced Apple.  Mot. at 8:2-5.  Apple established
12  none of these elements.

### a.    <u>Masimo Did Not Unjustifiably Delay</u>

14      Apple does not assert laches should apply because Masimo had actual knowledge
15  of Apple's misappropriation.  Instead, Apple argues that Masimo " unjustifiably delayed
16  filing this lawsuit for years after [Masimo] ***should reasonably have discovered*** Apple's
17  purported misappropriation."  Mot. at 1:1-3 (emphasis added).  Specifically, Apple
18  argues that Masimo "unreasonably delayed" filing its CUTSA claim "for nearly *six* years
19  after having been put on ***inquiry notice*** of their misappropriation claim."  *Id*. at 8:21-23
20  (second emphasis added).  None of Apple's cited facts put Masimo on inquiry notice
21  that Apple had misappropriated trade secrets.

### i.    <u>Masimo's 2014 Letter</u>

23      Apple asserts that Masimo's 2014 warning letter to Apple expressed "overt
24  suspicion" that Apple ***might*** misappropriate trade secrets in the future.  Mot. at 8:22-25.
25  But Masimo sent the letter on January 24, 2014—just ***three days*** after Lamego left
26  Cercacor and ***before*** Lamego began working at Apple.  *See* JTX-2937.

27      For this reason, this Court has repeatedly concluded the letter was not sufficient
28  to show Masimo should have discovered Apple's misappropriation.  For example, in

resolving one of Apple's motions to dismiss, this Court held that, "[a]lthough this letter certainly suggests that Plaintiffs had a *suspicion* Lamego would be in a position to compete with his former employer by drawing upon Plaintiffs' trade secrets, he had not yet begun his employment." Dkt. 60 at 6.  The Court concluded that Masimo did "not have reason to suspect that a trade secret had already been misappropriated[.]" *Id.*  Later, in resolving a motion for summary judgment, this Court observed that the 2014 letter "remains insufficient to raise a statute of limitations bar or preclude the discovery rule for the reasons stated in the MTD Order." Dkt. 606 at 6.  The Court explained that "a suspicion that [trade secrets] theoretically ***could*** be shared provides an insufficient basis for filing a trade secret misappropriation claim" and that "a mere suspicion that misappropriation may or may not have occurred provides an insufficient basis under Rule 11 to file suit." *Id.* at 7 (emphasis added).

If anything, the letter—and Apple's lack of response—helps explain how Apple lulled Masimo into a false sense of security.  Masimo's letter cautioned Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers." JTX-2937 at -094.  It also declared Masimo's understanding "that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information." *Id*.  Far from showing Masimo had a basis to suspect misappropriation, the letter shows Masimo was making "efforts that are reasonable" to maintain the secrecy of its trade secrets and reduce the chance of ***future*** misappropriation. *See* Cal. Civ. Code § 3426.1(d)(2).

### ii.   Lamego's Departure From Apple

Apple next argues that Masimo should have inquired about Apple's misappropriation after Lamego left Apple in July 2014.  Mot. at 9:6-18.  But Kiani testified that Cristiano Dalvi, a former Cercacor employee and friend of Lamego, indicated Lamego did not disclose any trade secrets to Apple.  Dalvi told Kiani that, just

as Lamego had promised, Lamego "left [Apple] when Apple asked him to do something competitive to [Masimo]." Trial Tr., Day 2, Vol. II at 49:13-50:11.  Kiani also testified that he believed Dalvi:

> Q.   And did you believe in what Cristiano Dalvi told you about Dr. Lamego's departure from Apple?
>
> A.   I did.  But obviously, I was wrong.  But I did.
>
> Q.   But at the time?
>
> A.   At the time, I did.  I was happy that he had not spilled our confidential information.

*Id.* at 50:6-11.  Thus, Masimo had no reason to investigate further.  Moreover, Apple fails to identify anything that an investigation in 2014 supposedly would have uncovered.

### iii.   Apple's Release Of Apple Watch Series 0, 1, And 2

Next, Apple argues that its release of Apple Watch Series 0, 1, and 2 put Masimo on notice of Apple's misappropriation.  Mot. at 9:19-10:4.  But unrebutted evidence shows Masimo had no reason to suspect Apple misappropriated Masimo trade secrets in developing those early Apple Watch Series.  For example, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Apple released the Series 4 watch in September 2018—16 months before Masimo filed suit. *See* JTX-3166.  Thus, the record contains no evidence suggesting Masimo had reason to suspect Apple misappropriated L4 before September 2018, at the earliest.

Masimo did not know Apple misappropriated L5 until Apple produced documents during discovery in this case.  Indeed, Masimo asserted this trade secret only after

/ / /

-6-

1  obtaining  discovery  in  this  case.   *See* Dkt. 650  at 4; Dkt. 669.[2]  ████████████

2  ██████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ████████████████████████████████  Thus,  Masimo  had  no  reason  to  suspect  Apple

8  misappropriated L5 before obtaining discovery in this case.

### iv.  Apple's '052 Patent And Patent Application

Apple next argues that an Apple patent application, which published in 2016 and later issued as U.S. Patent No. 10,078,052 ("the '052 Patent"), "should" have put Masimo on notice of Apple's misappropriation.  Mot. at 10:5-23.  Apple presented no evidence that Kiani or any Masimo employee was aware of this application or the patent before ████████████  Indeed, Apple argues in its brief that "[t]here is no definitive evidence in the record regarding when [Masimo] first learned of the '052 patent[.]"  *Id.* at 5:1-2.  Apple cannot meet its burden to prove laches by pointing to a lack of evidence.

Apple also argues that Masimo should have known about the '052 Patent in December 2018 when Masimo's outside patent attorneys listed the patent (among about a thousand other references) in an Information Disclosure Statement.  *Id.* at 4:25-27; Trial Tr., Day 3, Vol. I at 82:24-83:23.  But December 2018 is just thirteen months before Masimo filed suit.  Apple presented no evidence or argument that thirteen months could amount to unreasonable delay, much less establish acquiescence or cause prejudice.

/ / /

---

[2] Apple argued Masimo lacked "good cause" to amend based on asserting Masimo should have learned Apple misappropriated L5 earlier *in discovery*.  Dkt. 650-2 at 4-5. Apple never suggested Masimo could have learned Apple misappropriated L5 before obtaining discovery in this lawsuit.

1    Moreover, Apple makes no argument that Masimo should have been expected to

2    be aware of every document, much less the content of every document, listed in every

3    Information Disclosure Statement filed by outside counsel.  Apple also fails to show

4    such knowledge would have notified Masimo of Apple's misappropriation.  Indeed,

5    neither Masimo nor Apple contends the patent application or the '052 Patent discloses

6    *any* of the asserted trade secrets.  *See* Trial Tr., Day 3, Vol. I at 98:20-24; Trial Tr.,

7    Day 11, Vol. I at 93:22-24 (Apple's counsel representing that Masimo's trade secrets

8    "don't relate to anything described" in the '052 patent).

9    Apple next assets a complex theory that the '052 Patent should have informed

10   Masimo that Lamego worked on technology for Apple that should have caused Masimo

11   to investigate.  Mot. at 10:5-13.  However, nothing in the application or patent identifies

12   Lamego's allegedly inventive contribution.   Moreover, even if Masimo had been

13   required to begin investigating, Apple fails to identify anything that an inquiry by

14   Masimo would have uncovered.  First, Masimo already warned Apple and received no

15   response.  Second, Lamego assured Kiani he would not work on competing technology.

16   Third, Dalvi told Kiani that Lamego left Apple before Apple put him in a position to

17   potentially disclose Masimo trade secrets.  Fourth, no evidence shows a further inquiry

18   by Masimo would have revealed Apple's misappropriation.   Thus, there was no

19   unreasonable delay.

20                     b.    **Masimo Did Not Acquiesce And Apple Was Not Prejudiced**

21                          i.    **Masimo Did Not Acquiesce**

22   As a preliminary matter, Apple's pretrial disclosures never suggested Apple

23   would seek to establish acquiescence.  *See* Dkt. 1483 [Pretrial Conference Order] at

24   19:22-23; Dkt. 1361 [Apple's Mem. of Contentions of Fact and Law] at 11:19-22.

25   Instead, Apple's pretrial disclosures identified only that Apple would seek to prove

26   alleged prejudice.  *Id.*  Thus, the Court need not consider whether Apple presented

27   evidence of acquiescence.

28   / / /

-8-

Regardless, Apple's short argument regarding acquiescence is factually and legally wrong. *See* Mot. at 11:9-18. Apple asserts that, before Apple released the Series 0, Masimo "had already accused Apple of using Dr. Lamego as a conduit for misappropriation[.]" Mot. at 11:11-12. That is false. Apple bases its assertion on the 2014 warning letter Masimo sent to Apple **before** Lamego began working at Apple. *See* JTX-2937. As discussed above, the letter cautioned Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers." JTX-2937 at -094. It also set forth Masimo's understanding that "Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information." *Id*. Apple never disputed Masimo's understanding, much less revealed that Apple had misappropriated Masimo's trade secrets. The 2014 letter provides no evidence that Masimo approved of or was indifferent to Apple's misappropriation.

Apple points to Kiani's testimony that he was told "Lamego left [Apple] when Apple asked him to do something competitive to us." Trial Tr., Day 2, Vol. II, at 49:13-50:11 (Kiani). Far from suggesting Lamego had been a "conduit for misappropriation," Kiani offered unrebutted testimony that he was reasonably reassured that Lamego "had not spilled our confidential information." *Id*. at 50:6-11. Apple nonetheless complains that Masimo "made no inquiry and registered no objection with Apple or Dr. Lamego for nearly five years after Series 0 was released." Mot. at 11:14-16. That is irrelevant because, as explained above, Masimo had no reason to investigate and an investigation would not have revealed relevant facts.

Apple next uses five brackets and one ellipsis to try to make it appear as though the California Court of Appeal suggested that alleged delay alone can establish acquiescence. Mot. at 11:16-18 (quoting *Pac. Hills Homeowners Assn. v. Prun*, 160 Cal. App. 4th 1557, 1565 (2008)). But purported delay cannot establish acquiescence. The cited case held that "[t]here is no question plaintiff delayed … and in the right fact

situation, which we do not define, such delays could **support** a finding of laches." *Id.* (emphasis added).  In the following paragraph, the court held, "we agree with the trial court that defendants cannot show prejudice" and, therefore, "it would not have mattered whether plaintiff was diligent." *Id.*  The court then found that "[n]or, despite the delays, can defendants show plaintiff acquiesced" and "[t]hus, the defense of laches must **fail**." *Id.* (emphasis added).  Thus, Apple's own case establishes that delay is not sufficient. Apple failed to establish acquiescence.

### ii.     Apple Suffered No Prejudice

Apple also failed to present evidence of, much less establish, prejudice.  Apple cites a case holding that "[c]ourts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001).  "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Id.* "A defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id.*  Apple asserts both types of prejudice but provided evidence of neither.

Apple failed to present evidence of evidentiary prejudice.  In *Danjaq*, evidentiary prejudice existed because it was "uncontested that many of the key figures … died in the intervening forty years." *Id.*  Moreover, the evidence included "unrebutted testimony that many of the relevant records are missing." *Id.*  The Ninth Circuit concluded that arguing "there are a few survivors to tell part of the story does nothing to erase the prejudice caused by the unavailability of most of the key players." *Id.* at 956.

Apple cannot point to anything like those facts.  Apple's only argument is that Masimo told the jury that documents are more reliable than subjective personal memory. *See* Mot. at 11:19-12:15.  Masimo certainly argued that "'e-mails … [are] better than anybody's memory'" because "'e-mails last,' 'documents don't lie,' and '[t]here is no memory needed for what's going on in these e-mails.'" *Id.* at 11:24-25 (alterations in original).  Apple is also correct that Masimo "faulted Apple for *not* having documents

to corroborate certain pieces of witness testimony[.]" *Id.* at 12:4-5. But Apple does not argue, much less show, that it lacked documentary support *because* documents were lost in the intervening years. Thus, Masimo would have made the same arguments regardless of when the events occurred. Apple identified no witness that became unavailable due to the passage of time. Nor did Apple present evidence of any lost, stale, degraded, or missing documentary evidence.

Apple also failed to present evidence of economic prejudice. In *Danjaq*, the economic prejudice was investment of over one billion dollars promoting the James Bond franchise over 40 years. *Danjaq*, 263 F.3d at 956. In contrast, Apple presents no evidence of any investment or other action Apple would not have taken if Masimo had sued earlier. Apple asserts that Masimo "waited for Apple to sell millions of Watches, then came to this Court claiming billions of dollars in unjust enrichment." Mot. at 12:18-19. But Apple acknowledges that Masimo's "unjust enrichment theory relies on Watches sold in 2020-2022." *Id.* at 12:20-22. Masimo filed this lawsuit on January 9, 2020—before Apple sold those watches. *See* Dkt. 1. Thus, Apple chose to sell watches in 2020-2022 even *after* learning of Masimo's claims. Accordingly, the evidence shows Apple would not have acted differently if Masimo sued earlier. Apple did not establish economic prejudice.

For all these reasons, Apple did not establish any, much less all, of the requirements for laches.

## C.   Apple Did Not Establish Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). Apple does not assert that Masimo expressly waived any right. Rather, Apple argues that Masimo "impliedly waived any claim for misappropriation." Mot. at 6:2-3. Apple argues that Masimo's purported "extended delay in filing suit was so unreasonable as to amount to a waiver of [its] right to seek any relief." *Id.* at 1:22-23. Apple is, again, both legally and factually wrong.

1    **1.**    <u>**Waiver Requires More Than Alleged Delay Or Inaction**</u>

California courts have recognized for nearly a century that "mere lapse of time does not amount to a waiver."  *Kay v. Kay*, 188 Cal. App. 2d 214, 218 (1961) (citing *Ross v. Gentry*, 94 Cal. App. 742, 744-45 (1928) ("[l]apse of time and delay do not of themselves amount to a waiver")).

District courts in the Ninth Circuit similarly recognize that "delay in bringing this suit, so long as it satisfies the statute of limitations, cannot constitute waiver of any cause of action against [defendant]."  *Solis v. Couturier*, 2009 WL 2022343, at *2 (E.D. Cal. July 8, 2009); *see Duncan v. Office Depot*, 973 F. Supp. 1171, 1177 (D. Or. 1997) ("Although mere silence can be a basis for a claim of estoppel when a legal duty to speak exists, waiver must be manifested in an unequivocal manner."); *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 757-58 (D. Ariz. 2013) (quoting *Duncan*); *Novell, Inc. v. Weird Stuff, Inc.*, 1993 WL 13767335, at *13 (N.D. Cal. Aug. 2, 1993) ("[F]ailure to act, without more, is insufficient evidence of a trademark owner's intent to waive its right to claim infringement.").

The Ninth Circuit explained that the difference between waiver and other defenses is the difference between an affirmative act and the mere failure to act.  "'[W]aiver is "the intentional relinquishment or abandonment of a known right," whereas forfeiture is "the failure to make the timely assertion of [that] right."'"  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 n.10 (9th Cir. 2009) (quoting *United States v. Jacobo Castillo*, 496 F.3d 947, 952 n.1 (9th Cir. 2007) (*en banc*) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

Apple cites a Federal Circuit case for the proposition that "[w]aiver is established if [Masimo] acted "'knowing[ly] or intelligent[ly], which means [Masimo] ha[d] sufficient awareness of the relevant circumstances and likely consequences of [its] decision.'"  Mot. at 6:7-10 (quoting *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008)) (alterations in original).  Apple is correct that waiver must be knowing, intelligent, and with full knowledge of the circumstances and likely

-12-

consequences.  However, those requirements are necessary but not **sufficient** to establish waiver.  In addition, some act manifesting waiver must exist.  The Federal Circuit never suggested otherwise.

Moreover, in the quoted passage, the Federal Circuit was not announcing its view of the law of waiver.  Rather, the Federal Circuit was quoting a Ninth Circuit case that the Federal Circuit then immediately distinguished on the grounds that "[t]he *Clark* case also makes clear that waiver depends on the right at issue."  *Qualcomm*, 548 F.3d at 1020 (discussing *Clark v. Capital Credit & Collection Servs*., 460 F.3d 1162, 1170-71 (9th Cir. 2006)).  The Federal Circuit observed that "[t]here was a different right at issue in *Clark*, based on a different statutory scheme, in a much different context than the present case[.]"  *Id.* at 1020.[3]  The Federal Circuit concluded, "we are not convinced that the *Clark* analysis is particularly helpful here."  *Id.*

*Qualcomm* is likewise unhelpful here because it also involved a different right, based on a different statutory scheme, in a much different context.  In *Qualcomm*, the waiver arose because Qualcomm participated in a standard setting organization and breached its affirmative duty to identify its standard-essential patents.  *Id.* at 1020-21.  Qualcomm was not allowed to assert the concealed patent against a company that complied with the standard.  *Id.*  Masimo neither had, nor breached, any such duty to speak.

Accordingly, the Court should reject Apple's waiver defense because Apple's arguments are legally irrelevant.  The evidence Apple cites in arguing that Masimo's "extended delay" was "unreasonable" is irrelevant because all the delay in the world would be legally insufficient to establish waiver.  *See Kay*, 188 Cal. App. 2d at 218;

---

[3] *Clark* addressed waiver of rights created by a cease communication directive under the Fair Debt Collection Practices Act.  *Clark*, 460 F.3d 1170-71.  In contrast, *Qualcomm* addressed waiver of the right to enforce a patent through "intentional nondisclosure in the face of a duty to speak" due to participating in a standard setting organization (SSO). *Qualcomm*, 548 F.3d at 1021.

1    *Solis v. Couturier*, 2009 WL 2022343, at *2; *Duncan*, 973 F. Supp. at 1177; *Novell*,
2    1993 WL 13767335, at *13.

3         2.    **Apple Did Not Satisfy Its Heavy Burden Of Proof**

4         Apple also fails to establish any "extended" or "unreasonable" delay for the same
5    reason Apple failed to establish unreasonable delay in support of laches.  Apple's failure
6    regarding waiver is even more pronounced because Apple concedes it would have
7    needed to present "clear and convincing evidence" to establish waiver.  Mot. at 6:3-4.
8    In addition, to establish the "minimum requirements to constitute an 'implied waiver' of
9    substantial rights, the conduct relied upon must be ***clear, decisive and unequivocal*** of a
10   purpose to waive the legal rights involved."  *Groves v. Prickett*, 420 F.2d 1119, 1125-
11   26 (9th Cir. 1970) (emphasis added).  "Otherwise, there is no waiver."  *Id.*; *United States
12   v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (quoting *Groves*).

13        Apple identifies no conduct coming close to a "clear, decisive and unequivocal"
14   waiver of Masimo's claim for trade secret misappropriation.  Apple merely recycles the
15   same evidence and arguments Apple offered in support of its laches and statute-of-
16   limitations defenses.  First, Apple argues that, "[d]espite receiving no response from
17   Apple" to the 2014 letter, Masimo "did nothing for nearly six years after that letter was
18   sent."  Mot. at 6:17-18.  As explained above, Masimo had no reason to investigate
19   precisely because Apple never disputed Masimo's understanding that Apple would
20   respect Masimo's intellectual property rights, as stated in the letter.  Specifically, Apple
21   never rejected Masimo's demand that Apple refrain from inducing Lamego to violate
22   his confidentiality obligation and refrain from employing Lamego in areas including
23   measurement of physiological information.  *See* JTX-2937 at -094.

24        Apple argues that "Lamego's brief employment at Apple came and went without
25   any complaint or inquiry" from Masimo and that Dalvi informed Kiani in 2014 that
26   Lamego had left Apple because Apple asked him to compete with Masimo.  Mot.
27   at 6:18-22.  As explained above, these facts provided no reason for Masimo to
28   investigate.  To the contrary, at the time they appeared to corroborate Lamego's promise

that he would quit if Apple ever asked him to compete.  Trial Tr., Day 2, Vol. II at 49:13-50:11.  The communication conveyed to Kiani that Lamego had not disclosed any confidential information.

Apple also repeats its argument that, after Lamego left, Apple released several series of Apple Watch that monitored physiological parameters (other than blood oxygen).  Mot. at 6:22-23.  Apple provides no reason why Masimo should have connected those products to Lamego misappropriating trade secrets.  *See id.*  Nor does Apple identify any information an investigation would have revealed showing Apple had misappropriated trade secrets.  *See id.*

Apple again points to the fact that Masimo's outside patent prosecution counsel cited the '052 Patent in a lengthy Information Disclosure Statement Office in December 2018.  Mot. at 6:23-25.  As explained above, however, neither Masimo nor Apple contends the patent application or the '052 Patent discloses ***any*** of the asserted trade secrets.  Apple also identifies no evidence any Masimo employee actually knew of the patent until ████████  Apple also identifies no information Masimo could have uncovered through an investigation.  Even if Masimo could somehow be charged with constructive knowledge of misappropriation in October 2018, Masimo filed its lawsuit just thirteen months later.  *See supra*, Section II. B.2.a.  Such diligence would be the opposite of waiver.

Finally, Apple points to Masimo's purported awareness of "relevant circumstances" and "likely consequences."  Mot. at 7:3-23.  As discussed above, neither *Qualcomm* nor *Clark* suggested such factors would be sufficient to establish waiver.  Apple complains about the sufficiency of Masimo's monitoring of Apple's intellectual property, and Masimo's history of successfully enforcing its intellectual property rights.  *See id.*  But Masimo's litigation history is not in evidence because Apple successfully ***excluded*** any evidence of or reference to Masimo's litigation history.  *See* Dkt. 1469 at 1-2.  Apple fails to identify any conduct that conveyed Masimo knowingly and intentionally waived its right to sue Apple for trade secret misappropriation.

1   The Court's Rule 50(a) Order previously found that "the record supports

2   competing inferences concerning whether Plaintiffs knew or should have known of the

3   alleged misappropriation."   Dkt. 1724 at 12.   Evidence that supports competing

4   interpretations as to whether Masimo should have known of Apple's misappropriation

5   is not clear, decisive, and unequivocal evidence of an intent to waive a cause of action

6   under a clear and convincing standard.  Thus, Apple did not establish waiver.

7   ### III.  CONCLUSION

8   For the reasons set forth above, and in Masimo's briefing in support of its co-

9   pending Rule 52 Motion, *see* Dkt. 1774, the Court should enter judgment in favor of

10  Masimo and against Apple on Apple's affirmative defenses of laches and waiver.

12                                         Respectfully submitted,

13                                         KNOBBE, MARTENS, OLSON & BEAR, LLP

15  Dated:  June 26, 2023                  By: */s/ Benjamin A. Katzenellenbogen*
16                                            Joseph R. Re
                                              Stephen C. Jensen
17                                            Sheila N. Swaroop
                                              Brian C. Horne
18                                            Irfan A. Lateef
                                              Benjamin A. Katzenellenbogen
19                                            Brian C. Claassen
                                              Stephen W. Larson
20                                            Mark D. Kachner
                                              Adam B. Powell
21                                            Kendall M. Loebbaka
                                              Daniel P. Hughes

22                                         Attorneys for Plaintiffs
23                                         MASIMO CORPORATION and
                                           CERCACOR LABORATORIES, INC.

25  57707569

-16-

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 5,114 words, which [choose one]:

<u>X</u>     complies with the word limit of L.R. 11-6.1.

__     complies with the word limit set by court order dated [date].

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: June 26, 2023 _____     By: */s/ Benjamin A. Katzenellenbogen* _____
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Irfan A. Lateef
Benjamin A. Katzenellenbogen
Brian C. Claassen
Stephen W. Larson
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

57707569

-17-