MARK D. SELWYN, SBN 244180
    mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
    thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
    joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
    amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RULE 52 MOTION FOR JUDGMENT REGARDING APPLE'S DEFENSES** <br><br> Hearing: July 24, 2023 <br><br> Time: 1:30pm |

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

# <u>TABLE OF CONTENTS</u>

STATEMENT ................................................................................................................ 2

    A.    Plaintiffs Were On Notice Of The Facts They Rely Upon To Establish Their (Meritless) Trade Secret Claim Years Before Filing Suit ...................................................................................................... 2

    B.    Apple Timely Discloses Its Equitable Defenses Of Waiver And Laches ................................................................................................ 4

    C.    Plaintiffs Provide No Explanation For Why This Duplicative Motion Is Necessary And Fail To Meet And Confer On A Subset Of Their Arguments ............................................................................. 6

ARGUMENT .............................................................................................................. 7

I.      PLAINTIFFS' PROCEDURAL ARGUMENTS ARE MERITLESS ................ 7

    A.    This Court Has Not Yet Addressed The Merits Of Apple's Waiver And Laches Defenses ................................................................... 7

        1.    The Parties Agreed Prior To Trial That This Court—Not The Jury—Would Resolve The Laches And Waiver Defenses .............. 7

        2.    This Court's Passing Statements In The Rule 50(a) Decision Cannot Reasonably Be Read As A Ruling On Apple's Waiver and Laches Defenses ................................................. 7

    B.    Apple Fully And Properly Preserved Its Laches And Waiver Arguments ........................................................................................ 9

II.    LACHES BARS PLAINTIFFS' MISAPPROPRIATION CLAIM .................. 10

    A.    Laches Is An Available Defense To Trade Secret Misappropriation ...... 10

    B.    Plaintiffs Unreasonably Delayed Filing Their Claim ............................. 12

    C.    Plaintiffs' Delay Constitutes Acquiescence and Prejudiced Apple ......... 15

III.   PLAINTIFFS WAIVED THEIR MISAPPROPRIATION CLAIM .................. 16

IV.   PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON APPLE'S OTHER DEFENSES ................................................................................ 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamar Biosciences Inc. v. Difco Lab'ys Inc.*,
1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ......................................................13

*Alta Devices, Inc. v. LG Elecs., Inc.*,
2019 WL 1924992 (N.D. Cal. Apr. 30, 2019)....................................................14

*American Safety Indemnity Co. v. Penny Vision LLC*,
2015 WL 13048441 (C.D. Cal. Feb. 9, 2015) ....................................................18

*United States v. Bohn*,
956 F.2d 208 (9th Cir. 1992) ..............................................................................10

*Bono v. Clark*,
103 Cal. App. 4th 1409 (2002) ...........................................................................13

*Clark v. Capital Credit & Collection Services*,
460 F.3d 1162 (9th Cir. 2006) ............................................................................17

*Colchester v. Lazaro*,
16 F.4th 712 (9th Cir. 2021) .................................................................................8

*Cypress Semiconductor Corp. v. Superior Ct.*,
163 Cal. App. 4th 575 (2008) .............................................................................13

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ....................................................................7, 13, 16

*Granite State Insurance Co. v. Smart Modular Technologies, Inc.*,
76 F.3d 1023 (9th Cir. 1996) .............................................................6, 7, 8, 17

*Johnson v. City of Loma Linda*,
24 Cal. 4th 61 (2000) ....................................................................................10, 15

*Estate of Kampen*,
201 Cal. App. 4th 971 (2011) .......................................................................10, 15

*New Hampshire v. Maine*,
532 U.S. 742 (2001).............................................................................................9

*Masimo Corp. v. True Wearables, Inc.*,
    2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ...................................................10

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................10

*NYKO Techs. Inc v. Energizer Holdings Inc.*,
    2013 WL 12134128 (C.D. Cal. Sept. 19, 2013) ..............................................10

*Obispo v. United States Postal Service*,
    2020 WL 10047005 (C.D. Cal. Feb. 11, 2020) ..................................................8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014).................................................................................10, 11

*Petroplast Petrofisa Plasticos S.A. v. Ameron International Corp.*
    2012 WL 3090935 (Del. Ch. July 31, 2012) ...................................................10

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008) ......................................................................17

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
    580 U.S. 328 (2017)........................................................................................11

*Torres v. Secure Communication Systems, Inc.*,
    2020 WL 6162156 (C.D. Cal. July 25, 2020) ...................................................8

*Wang v. Palo Alto Networks, Inc.*,
    2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)..................................................14

*Wells Fargo Bank v. Bank of America*,
    32 Cal. App. 4th 424 (1995) ...........................................................................12

*Whittaker Corp. v. Execuair Corp.*,
    736 F.2d 1341 (9th Cir. 1984) ...................................................................10, 16

**Other Authorities**

Fed. R. Civ. P. 50 ................................................................................2, 5, 6, 7, 8

Fed. R. Civ. P. 52 ..................................................................................*passim*

At trial, Plaintiffs failed as a matter of law to prove numerous essential elements of their trade secret claim—most notably, that they had possession of the purported secrets and that Apple misappropriated them.  But even if all of Plaintiffs' allegations are taken at face value, their case runs into a fatal defect:  Plaintiffs filed suit years too late despite being on at least inquiry notice by no later than 2016 of the conduct they claim amounts to misappropriation.

As Apple explained in its cross-Rule 52 motion, Plaintiffs' trade secret claim is barred by the equitable doctrines of laches and/or waiver.  Plaintiffs' waiver and laches arguments in their motion should be rejected for the same basic reasons that Apple's motion should be granted.  Specifically, Plaintiffs expressed their overt suspicion of misappropriation in a January 2014 letter to Apple, just after Dr. Marcelo Lamego resigned from Cercacor, asserting that Dr. Lamego would "necessarily … use or disclose … Cercacor's trade secrets" if "Apple … employ[ed him] in an area … involv[ing] … the measurement of physiological information."  JTX 2937 at 2.  The January 2014 letter even went so far as to assert that it was "difficult to imagine any reason for th[e] sequence of events other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets."  *Id.* at 1.  Yet Plaintiffs sat on their hands even after (1) their CEO says he heard that Dr. Lamego had supposedly been asked to compete against Plaintiffs, (2) Apple released products that relied on the kind of noninvasive physiological monitoring technology that Plaintiffs claimed would "necessarily" use their purported trade secrets, and (3) Apple's application for the '052 patent published, which names Dr. Lamego as a co-inventor and again involves physiological monitoring.  Plaintiffs' course of conduct was so inconsistent with an intent to enforce the supposed rights Plaintiffs reserved in their 2014 letter as to constitute waiver.  *See* Dkt 1766 at 6-7.  The same delay also establishes laches, particularly because Plaintiffs' trial strategy was to exploit their delay by casting doubt

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   on the memories of Apple's witnesses, whose testimony was uniformly unhelpful for

2   their claims. *Id.* at 12-13.

3     The only arguments Plaintiffs raise that were not covered in Apple's Rule 52

4   motion (i.e., those involving Apple's affirmative defenses beyond laches and waiver)

5   are not properly before this Court because Plaintiffs failed to meet and confer on those

6   issues.  Plaintiffs' arguments are also meritless, as none of those defenses is ripe for a

7   Rule 52 motion—two have already been definitively rejected and the remainder are moot

8   because they are tied to Plaintiffs' stricken lost profits theory.

9   **STATEMENT**

10  **A.**  **Plaintiffs Were On Notice Of The Facts They Rely Upon To Establish**

11      **Their (Meritless) Trade Secret Claim Years Before Filing Suit**

12    Plaintiffs' theory of the case was that Apple made a strategic decision in 2013 to

13  misappropriate Plaintiffs' pulse-oximetry technology by hiring two of Plaintiffs'

14  employees, Dr. Michael O'Reilly and Dr. Marcelo Lamego, rather than to acquire

15  Plaintiffs or pursue a joint development agreement.[1]  As explained in Apple's Rule 50(b)

16  motion, this theory is both wrong and wholly unsupported by the trial record.  *See*

17  *generally* Dkt. 1765.  In particular, it became clear at trial that Plaintiffs' supposed trade

18  secrets—which boil down to an industry-standard piece of black foam, a demodulation

19  proposal rejected for its impracticality, and a short circuit familiar to any electrical

20  engineer—are not cognizable trade secrets under California law, were not

21  misappropriated, and did not unjustly enrich Apple.  Yet even if Plaintiffs were right,

22  the record shows that Plaintiffs should have known at least by 2016 about the facts

23  underlying their misappropriation theory.  *See* Dkt. 1766 at 3-5.

24

25

---

26  [1] At trial, Plaintiffs claimed that Apple misappropriated several purported trade secrets

27  through Dr. O'Reilly, but the Court granted Apple JMOL on that issue.  Dkt. 1724 at 5-7.  This brief accordingly focuses on why the still-live alleged technical trade secrets

28  support its equitable defenses.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    Mr. Kiani learned on January 9, 2014 that Dr. Lamego was joining Apple.  *See*

2  4/5 PM Tr. 45:18-23; JTX 786.  A few weeks later, Plaintiffs sent a strongly-worded

3  letter to Apple accusing it of "attempting to gain access to, or at least the benefit of,

4  Cercacor and Masimo's trade secrets" by "hir[ing] [Dr.] Lamego to design and develop

5  products that are likely the same as the products that he was responsible for developing

6  for Cercacor." JTX 2937 at 1-2.  The letter asserted that "employ[ing] [Dr.] Lamego in

7  an area … involv[ing] healthcare technology, including mobile health applications and

8  the measurement of physiological information" "would necessarily involve the use or

9  disclosure of Cercacor's trade secrets."  *Id.* at 2.  Plaintiffs concede that Apple never

10  responded, and they never followed up.  *See* Mem. 10.  Nor did Plaintiffs make any

11  inquiry of Dr. Lamego or Apple after another Cercacor employee supposedly "told [Mr.

12  Kiani that] Dr. Lamego left when Apple asked him to do something competitive to

13  [Plaintiffs]."  4/5 PM Tr. 49:19-50:11.

14    Apple released Apple Watch Series 0 in 2015 and Watch Series 1 and 2 in 2016.

15  *See* 4/12 AM at 83:24-84:14.  Each of these Watch models contains sensors that use

16  noninvasive physiological monitoring technology to monitor heart rate through the

17  wrist, *see id.*—i.e., the kind of "measurement of physiological information" that

18  Plaintiffs warned against in their January 2014 letter, JTX 2937 at 2.  Under the logic in

19  Plaintiffs' 2014 letter, if Dr. Lamego had worked on these products, he "would

20  necessarily" have "use[d] or disclose[d] … [Plaintiffs' purported] trade secrets." *Id.*  Yet

21  Plaintiffs still did nothing.

22    On March 3, 2016, the U.S. Patent and Trademark Office published the

23  application that ultimately led to the '052 patent, which is entitled "Reflective Surface

24  Treatments for Optical Sensors." JTX 1239 at 1.  Apple filed the '052 patent application,

25  and it lists Dr. Lamego as one of six co-inventors.  *Id.*  The patent describes the claimed

26  technology as useful for "an electronic device such as a wearable fitness device [that]

27  can be positioned against the skin of a user's wrist … and can obtain therefrom certain

28

physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on." *Id.* at 8.  Plaintiffs concede they had actual knowledge via counsel at least by December 6, 2018, when Masimo listed the '052 patent as prior art in a patent application, *see* 4/6 AM Tr. 78-83, but there is no definitive evidence in the record regarding when Plaintiffs first learned of the '052 patent or why they took no steps to investigate in 2016 when the application published, *see* Dkt. 1766 at 2-3; Dkt. 1582-1 at 13-14.

**B.    Apple Timely Discloses Its Equitable Defenses Of Waiver And Laches**

On May 7, 2021, Apple filed its operative answer, which raised several affirmative defenses including laches (5th affirmative defense) and waiver (11th affirmative defense).  Dkt. 370 ¶¶ 379-383, 408-410.  In Apple's final supplemental response to Plaintiffs' Interrogatory No. 6, which sought Apple's "bases for each affirmative defense," Apple explained that both its laches and waiver defenses contended that "Plaintiffs … unjustifiably delayed in asserting their purported rights" because they were "aware of Apple's conduct on which they base Apple's liability since at least January 2014, or, alternatively, since at least March 3, 2016, yet only brought suit in January 2020." Ex. 1 at 71; *see also id.* at 24, 32 (similar statements in earlier supplements to interrogatory response).  Apple listed a variety of evidence in support of these defenses, including publication of the '052 patent application.  *Id.* at 71-73; *see also id.* at 32 (similar).  Apple also incorporated by reference its briefing in support of its motion for partial summary judgment on its statute of limitations defense, indicating that its waiver and laches arguments incorporated the evidence Apple cited in briefing the statute of limitations issue.  *See id.* at 71-72; *see also id.* at 32-33 (similar).

Before trial, Apple submitted its Memorandum of Contentions of Fact and Law, which set forth in abbreviated form the key evidence in support of its defenses.  *See* Dkt.

1361 at 19-22.[2]  In the sections devoted to the laches defense, Apple indicated that it would argue that Plaintiffs "were aware or should have been aware of the purported misappropriation at least by the end of 2016 and possibly significantly earlier," and it expressly "incorporate[d] by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6." *Id.* at 19.  With respect to the waiver defense, Apple "incorporate[d] by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6 and" its evidence and arguments in support of the statute of limitations defense. *Id.* at 21.  In the joint pretrial conference order entered March 27, 2023, the parties and the Court agreed that both laches and waiver were issues for the Court, not the jury.  Dkt. 1483 at 15.  The pretrial order also reaffirmed Apple's laches and waiver defenses were based on the argument that "Masimo has been aware of Apple's conduct on which it bases allegations of trade secret liability since at least the end of 2016, and possibly significantly earlier." Dkt. 1483 at 11, 12.

At trial, Apple presented evidence in support of its statute of limitations defense—and by extension, evidence relevant to its laches and waiver defenses—including *inter alia* through its cross examination of Plaintiffs' CEO Joseph Kiani.  *See, e.g.*, 4/6 AM Tr. 74-86.  The timeliness of Plaintiffs' suit was a running theme throughout the case, appearing in the opening and closing statements.  *See, e.g.*, 4/5 AM Tr. 52:11-15 (Plaintiffs' opening); 4/26 PM Tr. 29:20-30:7 (Apple's closing).  The jury was clearly aware of the significance of Plaintiffs' delay, as its first note asked about the statute of limitations defense.  *See* Dkt. 1698.

Before the jury was charged, Plaintiffs moved under Rule 50(a) for judgment on Apple's equitable defenses.  Dkt. 1657 at 6-7.  Apple explained that this was procedurally improper, because laches and waiver were equitable defenses to be

---

[2] Apple's Memorandum was abbreviated due to the 7,000-word limit set by Local Rule 11-6.1 for "memorandum[s] of points and authorities" and "pre-trial brief[s]." Dkt. 1361 at 27 (27-page Memorandum was 6963 words).  While Plaintiffs have criticized Apple for not providing more detail, *e.g.*, Dkt. 1550 at 7, Plaintiffs were only able to do so by ignoring the word limit in their own 52-page filing, *see* Dkt. 1430.

submitted to the Court, not the jury, and that "'Rule 50(a) applies only to issues tried by a jury.'" Dkt. 1706 at 4 (quoting *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030 (9th Cir. 1996). The Court subsequently denied Plaintiffs' Rule 50(a) motion in full. *See* Dkt. 1724 at 18. With respect to Apple's equitable and other defenses, the Court denied Plaintiffs' motion as "moot." *Id.* at 19.

### C. Plaintiffs Provide No Explanation For Why This Duplicative Motion Is Necessary And Fail To Meet And Confer On A Subset Of Their Arguments

On May 17, 2023, Apple informed Plaintiffs that it intended to file a Rule 52 motion regarding its laches and waiver defenses. Ex. 2. On May 22—a few minutes before the parties' scheduled meet-and-confer on Apple's Rule 52 motion—Plaintiffs informed Apple that they would *also* be filing a Rule 52 on laches and waiver. *Id.* ("Masimo intends to move under Rule 52 on Apple's equitable defenses—laches and waiver.… Masimo maintains that Apple did not present evidence to support either of those defenses.").

On May 30, Plaintiffs filed the instant motion, which targets both (1) Apple's laches and waiver defenses and (2) four other defenses that were not mentioned during the meet and confer. Plaintiffs' brief makes no attempt to justify the failure to meet and confer on the latter set of issues. And Plaintiffs' motion itself does not contain the required certification under Local Rule 7-3 that "This motion is made following the conference of counsel pursuant to Local Rule 7-3[.]" *See* Dkt. 1756 at 1; *compare* Dkt. 1752 (Plaintiffs' Rule 50(b) motion, which includes the requisite statement).[3]

---

[3] This is not the first time Plaintiffs have disregarded Local Rule 7-3's requirements. *See* Dkt. 1743 at 9 & n.6 (Plaintiffs filed motion for reconsideration less than seven days after meet and confer); Dkt. 1779 at 1 (Plaintiffs filed a 6,000 word "application" to unseal certain documents without meeting and conferring).

---

Wilmer Cutler
Pickering Hale
and Dorr LLP

**ARGUMENT**

In resolving a Rule 52 motion, this Court may weigh evidence and decide disputed issues of fact; it is not limited to deciding whether Plaintiffs adduced sufficient evidence to withstand JMOL.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

**I.     PLAINTIFFS' PROCEDURAL ARGUMENTS ARE MERITLESS**

**A.     This Court Has Not Yet Addressed The Merits Of Apple's Waiver And Laches Defenses**

**1.     *The Parties Agreed Prior To Trial That This Court—Not The Jury—Would Resolve The Laches And Waiver Defenses***

Equitable defenses that are reserved "for the court, not the jury" are properly adjudicated under Rule 52—which "governs issues tried by the court"—because "Rule 50[] applies only to issues tried by a jury." *Granite State Ins.*, 76 F.3d at 1030-1031. Under Rule 52, "the district court … [i]s the appropriate trier of fact on [Apple's] equitable … defense[s]," meaning that it falls to this Court to decide the factual and legal issues presented, with its factual findings subject to review for clear error by the Federal Circuit. *See id.* at 1028.  Indeed, the parties agreed in the pretrial conference order that Apple's waiver and laches defenses would be resolved by this Court and not by the jury. Dkt. 1483 at 15 ("Issues for the Court include: 10) Whether Masimo's claims are barred by the doctrine of laches; 11) Whether Masimo's claims are barred by waiver[.]").

**2.     *This Court's Passing Statements In The Rule 50(a) Decision Cannot Reasonably Be Read As A Ruling On Apple's Waiver and Laches Defenses***

Plaintiffs are wrong that this Court resolved Apple's wavier and laches defenses in responding to Plaintiffs' (procedurally improper) arguments during the Rule 50(a) briefing. *See* Mem. 3.  Rule 50(a) empowers district courts to grant judgment as a matter of law on issues that were in front of the *jury*.  *See* Fed. R. Civ. P. 50(a)(1) (Court must conclude "that a reasonable jury would not have a legally sufficient evidentiary basis to

Wilmer Cutler
Pickering Hale
and Dorr LLP

1   find for the party on that issue."); *see also Granite State Ins.*, 76 F.3d at 1030-1031.

2   Plaintiffs identify no reason why this Court would have made a separate determination

3   under Rule 52—without a request to do so from either party and without providing the

4   kind of explanatory "findings of fact and conclusions of law" required by Rule 52(a) and

5   (c). *See Colchester v. Lazaro*, 16 F.4th 712, 727-728 (9th Cir. 2021) (reversing trial

6   court decision under Rule 52 where court's ruling merely stated a legal conclusion and

7   failed to provide factual findings that were "'explicit enough to give the appellate court

8   a clear understanding of the basis of the trial court's decision").[4]

9         Plaintiffs' response is that they "understood" this Court's statement that Plaintiffs'

10  Rule 50(a) motion was "moot" as to Apple's equitable defenses to be a *sua sponte* ruling

11  under Rule 52 granting Plaintiffs the relief they sought.  Mem. 3-4.  But this ignores that

12  the Court ***denied*** Plaintiffs' motion in full.  *See* Dkt. 1724 at 19.  Plaintiffs do not explain

13  how they could have prevailed on laches and waiver through a denial of their motion.

14  Rather, the Court appears to have used the word "moot" as a shorthand indicating that

15  Plaintiffs' arguments were premature and/or inoperative, given that they did not properly

16  fall under Rule 50(a).  *See* MOOT, Black's Law Dictionary (11th ed. 2019) ("[h]aving

17  no practical significance"); *see also, e.g.*, *Torres v. Secure Commc'n Sys., Inc.*, 2020 WL

18  6162156, at *4 (C.D. Cal. July 25, 2020) (Selna, J.) ("Therefore, the Court finds these

19  issues premature and denies as moot the motion to strike."); *Obispo v. USPS*, 2020 WL

20  10047005, at *1 (C.D. Cal. Feb. 11, 2020) (where "Plaintiff filed a motion for default

21  judgment before the clerk had entered a default[,] … [t]hat the motion was found to be

22  premature and moot").

23

24

25

26

27  ---

28  [4] Telling, this Court *has* asked the parties to prepare proposed findings of fact and conclusions of law in support of the instant Rule 52 motions.  *See* Dkt. 1776.

**B.      Apple Fully And Properly Preserved Its Laches And Waiver Arguments**

Plaintiffs are wrong when they suggest that Apple failed to preserve the laches and waiver defenses—or preserved only very narrow versions of those defenses.  *See* Mem. 1, 5-6, 7.  As detailed above, Apple has long taken the position that its laches and waiver defenses rely on the same basic set of evidence as its statute of limitations defense.  *See supra* pp. 4-6.  This is, at a minimum, clear from Apple's Memorandum of Contentions of Fact and Law, which (1) explained that Apple would present "[t]estimony and evidence showing that although Plaintiffs have alleged that Apple's purported misappropriation began nearly ten years ago, they were aware or should have been aware of the purported misappropriation at least by the end of 2016 and possibly significantly earlier" and (2) "incorporate[d] by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6." Dkt. 1361 at 19, 21.  Apple's description of its waiver defense expressly incorporated  "all evidence and arguments" discussed in the statute of limitations section of the Memorandum.  *Id.* at 21.

Plaintiffs ignore these passages without explanation.  *See, e.g.*, Mem. 5-6 (mentioning only evidence related to Plaintiffs' knowledge of patents in 2018 when discussing Apple's laches argument as it relates to the purported technical trade secrets). Plaintiffs' silence is all the more telling given that they successfully opposed Apple's motion to bifurcate the statute-of-limitations issue from the rest of the case by arguing that Apple's "laches defenses includes a near word-for-word recitation of the *entirety* of Apple's statute-of-limitations defense."  Dkt. 556 at 22.  Plaintiffs should not be permitted to disavow that prior statement simply because their interests have changed. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  Nor should they be permitted to address the full scope of Apple's laches and waiver defenses "for the first time in [their] reply brief," because that would "not permit [Apple] an opportunity to respond[.]"

Wilmer Cutler
Pickering Hale
and Dorr LLP

*NYKO Techs. Inc v. Energizer Holdings Inc.*, 2013 WL 12134128, at *1 (C.D. Cal. Sept. 19, 2013) (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).

## II.   LACHES BARS PLAINTIFFS' MISAPPROPRIATION CLAIM

Laches bars relief where the plaintiff "unreasonabl[y] delay[ed]" filing suit or did not diligently pursue its claim and either (1) the plaintiff "acquiesce[d] in the act about which [it] complains" or (2) "prejudice to the defendant result[ed] from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000). "[T]he existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances." *Estate of Kampen*, 201 Cal. App. 4th 971, 997 (2011). As explained below—and in Apple's cross-motion for Rule 52 relief—laches is available here, and Apple has proven all required elements. *See* Dkt. 1766 at 12.

### A.   Laches Is An Available Defense To Trade Secret Misappropriation

As this Court has previously recognized, the equitable doctrine of laches bars a plaintiff from obtaining relief on a CUTSA claim that was brought with unreasonable or prejudicial delay. *See Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, ¶¶ 197, 345 (C.D. Cal. Nov. 7, 2022) (holding that defendants had failed to prove their laches defense to trade secret misappropriation); *see also, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1018 (C.D. Cal. 2011) (denying CUTSA counter-claimant's motion for summary judgment on laches defense). Other courts have squarely held that laches barred unreasonably delayed CUTSA claims. *E.g.*, *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1346 (9th Cir. 1984) (noting that district court granted summary judgment on CUTSA under laches doctrine); *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.* 2012 WL 3090935, at *14-15 (Del. Ch. July 31, 2012) (holding that "the claim[] under CUTSA … [is] barred by laches").

While Plaintiffs contend that laches does not apply to this suit, they do not cite a single trade secret case—let alone a CUTSA case—that supports their position. Mem. 4-5. Instead, Plaintiffs rely on the Supreme Court's decisions in *Petrella v. Metro-*

1  *Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), and *SCA Hygiene Products Aktiebolag v.*

2  *First Quality Baby Products, LLC*, 580 U.S. 328, 334-335 (2017), which construed the

3  Copyright Act and the Patent Act, respectively.  Those cases are inapposite because they

4  relied in significant part on the principle that it would violate the constitutional

5  separation of powers for a *federal* court to rewrite *federal* law—i.e., "'jettison Congress'

6  judgment on the timeliness of suit.'"  *SCA Hygiene*, 580 U.S. at 334-335 (discussing

7  *Petrella*'s holding); *see also id.* 336 ("By the logic of *Petrella*, we infer that this

8  provision represents a judgment by Congress that a patentee may recover damages for

9  any infringement committed within six years of filing the claim.").  The same federal

10  separation-of-powers concerns do not exist here, as CUTSA is a state statute.

11  Moreover, *Petrella* and *SCA Hygiene* hold only that "laches cannot defeat a

12  damages claim brought within the period prescribed by the … statute of limitations."

13  *SCA Hygiene*, 580 U.S. at 334.  Apple does not seek to apply laches to a claim that was

14  timely under CUTSA's statute of limitations.  *See* Dkt. 1766 at 8 (arguing that Plaintiffs'

15  delay of more than three years was unreasonable); Dkt. 1765 at 15-16 (moving for JMOL

16  on Apple's statute of limitations defense).  Rather, whether this Court roots its decision

17  in laches or the statute of limitations, the same basic principle will apply—Plaintiffs

18  were required to file their suit much earlier.

19  Finally, as Plaintiffs themselves acknowledge, *Petrella* and *SCA Hygiene* speak

20  only to whether laches applies to "a claim for legal relief."  Mem. 4.  As Plaintiffs' lead

21  counsel stressed in closing, this is "not a damages case"; Plaintiffs' sole remaining

22  monetary remedies arise under the "equitable doctrine[s]" of unjust enrichment and

23  reasonable royalties.  4/26 PM Tr. 84:16-20.  Plaintiffs fail to explain why Apple should

24  not be able to present an equitable defense against at least Plaintiffs' claims for equitable

25  relief.  To the contrary, the California Court of Appeal has expressly held that "an

26  unreasonable delay in asserting an equitable right, causing prejudice to an adverse

27

28

1  party … render[s] the granting of relief … inequitable," *Wells Fargo Bank v. Bank of*
2  *America*, 32 Cal. App. 4th 424, 439 (1995).

3       **B.    Plaintiffs Unreasonably Delayed Filing Their Claim**

4       As explained above, Apple did not misappropriate any alleged trade secret.  In
5  any event, Plaintiffs waited far too long to bring their claim.

6       **1.**    With respect to the alleged technical trade secrets—the only aspect of the
7  case still relevant at this juncture, *see* Dkt. 1724 at 5-7 (granting JMOL on Plaintiffs'
8  alleged business strategy secrets)—Plaintiffs unreasonably delayed in filing their
9  CUTSA claim because they took no action for nearly *six* years after having been put on
10  inquiry notice of their purported misappropriation claim.

11      Immediately before Dr. Lamego started his six months of employment at Apple
12  in January 2014, Plaintiffs sent Apple a letter insinuating that Apple's purpose in hiring
13  Dr. Lamego was to obtain their purported trade secrets regarding healthcare technology.
14  *See* JTX 2937.  Plaintiffs reserved the right to pursue legal action if Apple and Dr.
15  Lamego did not comply with Plaintiffs' demands.  *Id.* at 2.  As Plaintiffs concede,
16  "Apple never responded" to Plaintiffs' letter.  Mem. 10.  Yet over the following two
17  years, Apple proceeded to launch *three* products—Apple Watch series 0, 1, and 2—
18  containing optical sensors that used technology similar to that Plaintiffs had accused
19  Apple of targeting (and similar to what Plaintiffs had hoped in 2013 to sell to Apple).
20  *See* 4/12 AM at 84:6-14.  Plaintiffs did nothing.

21      Plaintiffs' failure to act is particularly notable because Mr. Kiani testified that by
22  late 2014, he understood that Apple had sought to enlist Dr. Lamego's assistance with
23  work "competitive to" Plaintiffs.  4/5 PM Tr. 49:19-23.  And in the '052 patent
24  application published on March 3, 2016, Apple disclosed that Dr. Lamego had
25  contributed to its research and development efforts on those optical sensing
26  technologies.  *See* JTX 1239 at 1.  Although Plaintiffs were "familiar with the patent
27  search procedure and strongly suspected that [Apple] was using" purported trade secrets

28

1    known to Dr. Lamego, they inexplicably failed to take "the elementary step of checking

2    all readily available patent applications" from Apple for relevant work by Dr. Lamego.

3    *Alamar Biosciences Inc. v. Difco Lab'ys Inc.*, 1996 WL 648286, *4 (E.D. Cal. Feb. 27,

4    1996).   Had Plaintiffs done so, they would have seen that Apple was developing

5    noninvasive sensing technologies for "a wearable fitness device [that] can be positioned

6    against the skin of a user's wrist … and can obtain therefrom certain physiological data

7    about the user such as heart rate, respiration rate, blood oxygenation, blood pressure,

8    and so on." JTX 1239 at 8.

9         Plaintiffs therefore had constructive notice by no later than March 2016, when the

10   '052 patent application published, that Apple had "employ[ed] [Dr.] Lamego in an

11   area … involv[ing] healthcare technology, including mobile health applications and the

12   measurement   of   physiological   information"—the   conduct   they   claimed   would

13   necessarily constitute misappropriation.    JTX 2937 at 2.    Contrary to Plaintiffs'

14   suggestions (Mem. 6), it does not matter whether the '052 patent disclosed the particular

15   alleged trade secrets still at issue in this case, because California courts "do not [accept

16   Plaintiffs'] hypertechnical approach" to understanding when a CUTSA plaintiff should

17   have known of its claim.  *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App.

18   4th 575, 586 (2008).  By their own logic, as articulated in the January 2014 letter, had

19   Plaintiffs diligently pursued their claim, they "should have known[] of the allegedly

20   infringing conduct" and filed suit.   *Danjaq*, 263 F.3d at 952.   Instead, Plaintiffs

21   "neglect[ed] their rights … to the detriment of [Apple]," waiting almost four more years

22   before filing the instant suit.  *Bono v. Clark*, 103 Cal. App. 4th 1409, 1417 (2002).[5]

23        **2.**     Although this Court need not reach the issue in light of its decision granting

24   JMOL on Plaintiffs' purported business trade secrets, Plaintiffs unreasonably delayed in

---

[5] Plaintiffs are wrong that the January 2014 letter is "irrelevant" to the laches analysis because it (slightly) predates Lamego's employment at Apple. *See* Mem. 10.  The letter establishes (1) Plaintiffs were suspicious of Apple and (2) lays out specific scenarios under which (in Plaintiffs' erroneous view) Apple's actions would necessarily qualify as misappropriation—several of which later came to pass.

pursuing their claim based on those supposed secrets as well. Plaintiffs' case relied heavily on the notebooks kept by Dr. Michael O'Reilly, but the evidence establishes that as of 2014, Plaintiffs were well aware that (1) Dr. O'Reilly had a practice of keeping business-related notes in his personal journals, *see* 4/14 PM Tr. 53-55, and (2) Dr. O'Reilly retained those personal journals, including business-related notes, after he resigned from Masimo, JTX 4393. On September 20, 2014, a Masimo executive emailed Dr. O'Reilly at his Apple email address asking him to review the notebooks he maintained as a Masimo employee to find certain supposedly confidential business information. *Id.* Plaintiffs were, as a matter of law, on notice of their misappropriation claim (at least as related to the alleged business trade secrets) by no later than September 20, 2014, because a trade secret plaintiff is put "on inquiry notice of potential misappropriation of trade secrets when [the alleged misappropriator] breached [his] duty to return confidential information." *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *13 (N.D. Cal. Apr. 30, 2019); *see also Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *7 (N.D. Cal. Apr. 11, 2014) (same). Moreover, Plaintiffs had expressed suspicion in their January 2014 letter that Apple's hiring of Dr. O'Reilly was part of the "sequence of events" that Plaintiffs took as indicating that Apple was "attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets." JTX 2937 at 1.[6]

**3.** Plaintiffs' primary explanation for why they could not have learned of the purported misappropriation sooner was that Mr. Kiani himself was not aware until an October 2019 meeting with counsel. Mem. 8-9. To start, Plaintiffs should not be permitted to rely on this testimony, which concerned selectively disclosed communications with counsel. *See* 4/12 AM Tr. 16:6-11. In any event, the extent of

---

[6] Because this evidence establishes Plaintiffs were on notice of the supposed misappropriation of the purported business trade secrets, there is no need to address their argument about whether the purported misappropriation was discernible from Apple's releases of HealthKit and ResearchKit. *See* Mem. 7.

Plaintiffs' delay depends on what Masimo and Cercacor knew or should have known, and Plaintiffs continue to conflate Mr. Kiani's knowledge with *Masimo and Cercacor's* knowledge without any support from legal authority or the factual record.  Under the logic Plaintiffs used in urging this Court to adopt a *respondeat superior* standard for trade secret liability, Plaintiffs should be charged with the knowledge of *any* of their employees or agents—not just their CEO.  *See* Dkt. 1548 at 141 (Plaintiffs arguing in support of their proposed jury instruction that "'knowledge acquired by an agent is imputed to the principal even when the knowledge is not actually communicated to the principal'" (quoting 2B Cal. Jur. 3d Agency § 177)).[7]

Plaintiffs also contend that Apple "prevented" Plaintiffs from learning about the supposed misappropriation because Apple asked the PTO not to publish the '754 patent application.  Mem. 10.  But Plaintiffs have never put forth any evidence suggesting that the delay in publication was unusual, improper, or had anything to do with the facts at issue in this case.  To the contrary, at trial, Plaintiffs declined to ask *any* Apple witnesses about the prosecution histories of any Apple patent.  *See* 4/26 AM Tr. 19:11-21:13.

### C.    Plaintiffs' Delay Constitutes Acquiescence and Prejudiced Apple

Although Apple need only establish acquiescence *or* prejudice to prove laches, Plaintiffs' unjustified delay constituted both.  *Loma Linda*, 24 Cal. 4th at 77; *see Estate of Kampen*, 201 Cal. App. 4th at 1000.  As explained more fully in Apple's Rule 52 motion, Plaintiffs acquiesced in any supposed use of the purported trade secrets by Apple in Apple Watch by making no inquiry and registering no objection with Apple or Dr. Lamego for nearly five years after Apple released Series 0.  *See* Dkt. 1766 at 11. Plaintiffs also exploited their delay (to Apple's prejudice) by urging the jury to disregard Apple's witnesses' testimony because it was supposedly too old while at the same time

---

[7] Plaintiffs try to dismiss as irrelevant their admission that some of their employees were aware that Apple was working on pulse oximetry technology by at least October 2018. Mem. 6.  This misses the point, which is that this admission establishes that Mr. Kiani's knowledge is not coextensive with Plaintiffs' knowledge as corporate entities.

Wilmer Cutler
Pickering Hale
and Dorr LLP

playing up the reliability of Plaintiffs' documentary exhibits. *See id.* at 11-12; *see, e.g.,* 4/5 AM Tr. 44:2-5 (Plaintiffs' counsel arguing in their opening statement that "e-mails … [are] better than anybody's memory" because "e-mails last," "documents don't lie," and "[t]here is no memory needed for what's going on in these e-mails"); 4/26 PM Tr. 87:18-24 (similar argument in Plaintiffs' rebuttal closing); 4/25 Tr. 91:6-9 (rebuttal testimony from Mr. Kiani). Plaintiffs' delay also prejudiced Apple because Apple "suffered consequences that it would not have, had [Plaintiffs] brought suit promptly." *Danjaq*, 263 F.3d at 955. Instead of timely asserting their claim, Plaintiffs waited for Apple to sell millions of Watches, then came to this Court claiming billions of dollars in unjust enrichment. Most notably, without their six-year delay, Plaintiffs would have no viable theory for monetary relief, as their lone unjust enrichment theory relies on Watches sold in 2020-2022. *See, e.g.*, 4/13 AM Tr. 91:19-25. Apple was therefore "prejudiced because it continued engaging in its existing practices, incurring additional potential liability by reason of [Plaintiffs'] failure to take prompt action." *Whittaker Corp.*, 736 F.2d at 1347.

Plaintiffs' only argument to the contrary—that Apple did not elicit witness testimony on the extent of the prejudice, *see* Mem. 11—is meritless. Apple's witnesses *did* describe the development of Apple's Watch program over time, evidence that illustrates the Apple's decisions to "continue[] engaging in its existing practices," *Whittaker Corp.*, 736 F.2d at 1347. In any event, the evidentiary prejudice created by Plaintiffs' delay became much more apparent at trial, once Plaintiffs started arguing to the jury that the age of the case weighed in favor of ignoring testimony unhelpful to their claims.

## III.  PLAINTIFFS WAIVED THEIR MISAPPROPRIATION CLAIM

Plaintiffs' motion does not justify granting judgment in their favor on Apple's waiver defense. The parties appear to agree on the basic test for waiver, *compare* Dkt. 1774 at 12 *with* Dkt. 1766 at 6, although Plaintiffs omit the applicable standard for

1   determining that a plaintiff knowingly and intelligently relinquished its rights:   a

2   "'waiver was knowing or intelligent … [if] the individual has sufficient awareness of

3   the relevant circumstances and likely consequences of his decision.'"   *Qualcomm Inc. v.*

4   *Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008) (quoting *Clark v. Capital Credit*

5   *& Collection Servs*., 460 F.3d 1162, 1170-71 (9th Cir. 2006)).   As Apple's own Rule 52

6   motion explains, Plaintiffs did nothing for nearly six years after their January 2014 letter,

7   a period during which Dr. Lamego's employment came and went, Apple released Watch

8   Series 0, 1, and 2, and Apple's '052 patent application published.   *See* Dkt. 1774 at 6.

9           Plaintiffs do not substantively address the testimony cited above.   Mem. 12.

10   Setting aside Plaintiffs' repetition of arguments already addressed, Plaintiffs' only new

11   assertion is that undue delay cannot amount to waiver if the suit was filed within the

12   applicable statute of limitations.   *See id*.   But as with laches, this misunderstands Apple's

13   position, which is that Plaintiffs' prolonged delay in filing violated both the CUTSA's

14   statute of limitations *and* constituted waiver.   The two doctrines have different legal

15   requirements and, most notably, this Court need not interpret the facts in light most

16   favorable to Plaintiffs in resolving waiver as an equitable defense under Rule 52.

17   *Granite State Ins.*, 76 F.3d at 1030-1031.

18   IV.    **PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON APPLE'S OTHER DEFENSES**

19           Plaintiffs are not entitled to judgment on Apple's other defenses.   As a preliminary

20   matter, Plaintiffs did not disclose their intent to move on these defenses during the pre-

21   motion meet and confer, as required by Local Rule 7-3.    Failure to "discuss

22   thoroughly … the substance of the contemplated motion" during the meet and confer

23   process justifies striking this portion of the Plaintiffs' motion.   *American Safety Indem.*

24   *Co. v. Penny Vision LLC*, 2015 WL 13048441, at *1 (C.D. Cal. Feb. 9, 2015) (Selna, J.).

25   In any event, Plaintiffs are not entitled to judgment on Apple's intervening acts and

26   failure to mitigate defenses.   *See* Mem. 13.   Both these defenses are moot because they

27   concerned Plaintiffs' claims for damages, all of which were stricken prior to trial.   *See*

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

Dkt. 370 ¶¶ 411-420; Dkt. 1031 at 9-12; Dkt. 1283 at 4-10; Dkt. 1527.  By contrast, Apple was precluded from presenting its unclean hands and readily ascertainable defenses by the Court's pretrial *Daubert* and discovery rulings.  *See* Dkt. 1526 (unclean hands); Dkt. 1284 (readily ascertainable).  Apple's legal positions and the evidence underlying these defenses are preserved for appeal.  *See* Dkt. 1724 at 19 n.7.

## CONCLUSION

Plaintiffs' misappropriation claim fails on the merits as a matter of law.  But even if Plaintiffs' merits arguments were accepted, the claim would still be barred because it was untimely filed.  Therefore, for the reasons explained above, Plaintiffs' motion should be denied.

1    Dated:  June 26, 2023                  Respectfully submitted,

2

3
                                           MARK D. SELWYN
4                                          JOSEPH J. MUELLER
                                           AMY K. WIGMORE
5                                          JOSHUA H. LERNER
6                                          SARAH R. FRAZIER
                                           NORA Q.E. PASSAMANECK
7                                          THOMAS G. SPRANKLING
8                                          WILMER CUTLER PICKERING HALE AND
                                           DORR LLP
9

10                                         BRIAN A. ROSENTHAL
11                                         GIBSON, DUNN & CRUTCHER LLP

12                                         KENNETH G. PARKER
13                                         HAYNES AND BOONE, LLP

14

15
                                           By:  */s/ Mark D. Selwyn*
16                                                Mark D. Selwyn

17

18                                         *Attorneys for Defendant Apple Inc.*

19

20

21

22

23

24

25

26

27

28

APPLE'S OPP'N TO PLAINTIFFS' RULE 52 MOTION
                                    19              CASE NO. 8:20-cv-00048-JVS (JDEx)

1

# CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Defendant Apple Inc. certifies that this

3  brief contains 5,947 words, which:

4      _X_ complies with the word limit of L.R. 11-6.1.

5      ___ complies with the page limit set by court order dated Apr. 10, 2023.

6

7  Dated: _June 26, 2023_            Respectfully submitted,

8

9                             MARK D. SELWYN
                              JOSEPH J. MUELLER
10                            AMY K. WIGMORE
                              JOSHUA H. LERNER
11                            SARAH R. FRAZIER
                              NORA Q.E. PASSAMANECK
12                            THOMAS G. SPRANKLING
                              WILMER CUTLER PICKERING HALE AND
13                            DORR LLP

14

15                            BRIAN A. ROSENTHAL
16                            GIBSON, DUNN & CRUTCHER LLP

17                            KENNETH G. PARKER
18                            HAYNES AND BOONE, LLP

19

20                            By: _/s/ Mark D. Selwyn_____
                                   Mark D. Selwyn
21

22                            *Attorneys for Defendant Apple Inc.*

23

24

25

26

27

28