1 | MARK D. SELWYN, SBN 244180
    mark.selwyn@wilmerhale.com
2 | THOMAS G. SPRANKLING, SBN 294831
    thomas.sprankling@wilmerhale.com
3 | WILMER CUTLER PICKERING
    HALE AND DORR LLP
4 | 2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5 | Tel.: 650.858.6000 / Fax: 650.858.6100

6 | JOSHUA H. LERNER, SBN 220755
    joshua.lerner@wilmerhale.com
7 | WILMER CUTLER PICKERING
    HALE AND DORR LLP
8 | One Front Street, Suite 3500
    San Francisco, CA 94111
9 | Tel.: 628.235.1000 / Fax: 628.235.1001

10 | AMY K. WIGMORE, *pro hac vice*
     amy.wigmore@wilmerhale.com
11 | WILMER CUTLER PICKERING
     HALE AND DORR LLP
12 | 2100 Pennsylvania Ave NW
     Washington, DC 20037
13 | Tel.: 202.663.6000 / Fax: 202.663.6363

14 | [Counsel appearance continues on next page]

15 | *Attorneys for Defendant Apple Inc.*

16 |

17 | **UNITED STATES DISTRICT COURT**
     **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

18 |

19 | MASIMO CORPORATION,
     a Delaware corporation; and
20 | CERCACOR LABORATORIES, INC.,
     a Delaware corporation,
21 |
                     Plaintiffs,
22 |
           v.
23 |
     APPLE INC.,
24 | a California corporation,
25 |                  Defendant.

| CASE NO. 8:20-cv-00048-JVS (JDEx) |
| **APPLE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(b)** |
| Hearing: July 24, 2023 |
| Time: 1:30pm |

26 |

27 | REDACTED VERSION OF DOCUMENT
     PROPOSED TO BE FILED UNDER SEAL

28 |

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    JOSEPH J. MUELLER, *pro* hac *vice*
       joseph.mueller@wilmerhale.com
2    SARAH R. FRAZIER, *pro hac vice*
       sarah.frazier@wilmerhale.com
3    WILMER CUTLER PICKERING
       HALE AND DORR LLP
4    60 State Street
     Boston, MA 02109
5    Tel.: 617.526.6000 / Fax: 617.526.5000

6    NORA Q.E. PASSAMANECK, *pro hac vice*
       nora.passamaneck@wilmerhale.com
7    WILMER CUTLER PICKERING
       HALE AND DORR LLP
8    1225 Seventeenth Street, Suite 2600
     Denver, CO 80202
9    Tel.: 720.274.3152 / Fax: 720.273.3133

10   BRIAN A. ROSENTHAL, *pro hac vice*
       brosenthal@gibsondunn.com
11   GIBSON, DUNN & CRUTCHER LLP
     200 Park Avenue
12   New York, NY 10166-0193
     Tel.: 212.351.2339 / Fax: 212.817.9539
13

14   KENNETH G. PARKER, SBN 182911
       Ken.parker@haynesboone.com
15   HAYNES AND BOONE, LLP
     660 Anton Boulevard, Suite 700
16   Costa Mesa, CA 92626
     Tel. 650.949.3014 / Fax: 949.202.3001

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S REPLY ISO ITS RULE 50(b) MOTION

CASE NO. 8:20-cv-00048-JVS (JDEx)

1
2
## **TABLE OF CONTENTS**
3

ARGUMENT ..................................................................................................... 1

**I.    PLAINTIFFS' MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW** ....................................................................... 1

    A.    The Remaining ATS Are Not Trade Secrets And Were Not Misappropriated .......................................................................... 1

          1.    L4 – The Black Foam Test ...................................... 1

          2.    L5 – The Short Circuit ............................................. 8

          3.    D1, D3, and D10 – The Unused Algorithms ......... 11

          4.    VIA – The Nebulous Catchall ............................... 13

    B.    Plaintiffs Have Failed To Establish Unjust Enrichment ......................... 14

          1.    No Link Between ATS and Blood Oxygen ............ 14

          2.    No Link Between $1.85 Billion Valuation And Blood Oxygen ....................................................... 16

    C.    Plaintiffs Have Failed To Establish Any Reasonable Jury Could Rule In Their Favor On The Remaining Issues ......................... 17

          1.    Plaintiffs' claim is time-barred ............................. 17

          2.    Apple did not have the requisite intent .................. 17

          3.    Apple Did Not Willfully Misappropriate ............... 18

**II.   PLAINTIFFS' INVENTORSHIP AND OWNERSHIP CLAIMS FAIL** ................................................................................................ 18

    A.    '052 and '670 Patents ............................................................... 18

    B.    '754 Patent .............................................................................. 20

    C.    '095 and '390 Patents ............................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamar Biosciences Inc. v. Difco Laboratories Inc.*,
   1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ....................................................17

*Altavion, Inc. v. Konica Minolta Systems Laboratory Inc.*,
   226 Cal. App. 4th 26 (2014) ..............................................................................10

*Atmel Corp. v. Information Storage Devices, Inc.*,
   189 F.R.D. 410 (N.D. Cal. 1999) .........................................................................7

*Bianco v. Globus Medical, Inc.*,
   2014 WL 5462388 (E.D. Tex. Oct. 27, 2014) ....................................................6

*BladeRoom Group Ltd. v. Emerson Electric Co.*,
   331 F. Supp. 3d 977 (N.D. Cal. 2018) .................................................................5

*Business Intelligence Services, Inc. v. Hudson*,
   580 F. Supp. 1068 (S.D.N.Y. 1984) ..................................................................10

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   2022 WL 2784467 (N.D. Cal. June 15, 2022)................................................4, 11

*Computer Place, Inc. v. Hewlett-Packard Co.*,
   607 F. Supp. 822 (N.D. Cal. 1984), *aff'd*, 779 F.2d 56 (9th Cir. 1985)..............3

*Dana-Farber Cancer Institute v. Ono Pharmaceutical Co.*,
   964 F.3d 1365 (Fed. Cir. 2020) ...................................................................19, 21

*Equal Employment Opportunity Commission v. Go Daddy Software, Inc.*,
   581 F.3d 951 (9th Cir. 2009) ...............................................................................2

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) .........................................................................19

*Emazing Lights, LLC v. Ramiro Montes de Oca*,
   2016 WL 3475330 (C.D. Cal. May 3, 2016)....................................................2, 3

*Falana v. Kent State University*,
   669 F.3d 1349 (Fed. Cir. 2012) ...................................................................19, 20

*In re Frye*,
   2008 WL 8444822 (B.A.P. 9th Cir. Aug. 19, 2008) .........................................10

*Intellectual Science & Technology, Inc. v. Sony Electronics*, *Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) ......................................................................12

*JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*,
   2020 WL 9311954 (C.D. Cal. Dec. 30, 2020).....................................................4

*Masimo Corp. v. True Wearables, Inc*.,
   2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ....................................................6

*Pannu v. Iolab Corp*.,
   155 F.3d 1344 (Fed. Cir. 1998) ......................................................................19

*Patriot Rail Corp. v. Sierra Railroad Co*.,
   2015 WL 4662720 (E.D. Cal. Aug. 5, 2015) ......................................................5

*Pollara v. Radiant Logistics, Inc*.,
   2014 WL 12585781 (C.D. Cal. June 6, 2014)...................................................10

*Reeves v. Sanderson Plumbing Products, Inc*.,
   530 U.S. 133 (2000).........................................................................................2

*UniRAM Technology, Inc. v. Taiwan Semiconductor Manufacturing Co*.,
   617 F. Supp. 2d 938 (N.D. Cal. 2007)...............................................................4

*Whyte v. Schlage Lock Co*.,
   101 Cal. App. 4th 1443 (2002) .......................................................................18

*Wi-Lan Inc. v. Sharp Electronics Corp*.,
   992 F.3d 1366 (Fed. Cir. 2021) ......................................................................12

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S REPLY ISO ITS RULE 50(B) MOTION
iii
CASE NO. 8:20-cv-00048-JVS (JDEX)

Plaintiffs' opposition brief employs the same tactic they took during the jury trial: using jargon and confusion to try to conjure trade secrets from an ordinary piece of black foam, a conventional short circuit, and a rejected demodulation approach.  These are not secrets and were not misappropriated by Apple.  All but one member of the jury rightly rejected Plaintiffs' claims.  This Court should do the same, as Plaintiffs' ever-shifting arguments and inapposite record citations crumble under scrutiny.

## ARGUMENT

**I.     PLAINTIFFS' MISAPPROPRIATION CLAIM FAILS AS A MATTER OF LAW**

    **A.     The Remaining ATS Are Not Trade Secrets And Were Not Misappropriated**

        **1.     L4 – The Black Foam Test**

            **a.     No Misappropriation.**

No reasonable jury could find misappropriation for three independent reasons: (1) Apple independently developed a black foam test that performed L4 in 2013—the year before Lamego joined Apple, (2) there is no evidence that Lamego was involved in Apple's subsequent decision to adopt the "████████████" test Plaintiffs focused on at trial, and (3) Apple did not make any ████████████████████████ ████████, as L4 requires.  Mem. 2-4.  Plaintiffs' responses lack merit.

*First*, Plaintiffs argue that Apple's 2013 black foam test did not practice L4, contending that because Apple's test had "███████████████████████," it necessarily did not █████████████████  Opp. 3-4.  Plaintiffs are wrong; the testimony established that Apple's approach ██████████████████████ ████████████████████, 4/18 PM Tr. 111:10-22, just as a lunar eclipse can block the light from the sun even though the moon is far from the Earth.  Plaintiffs cite *nothing* to support their argument that ████ means that Apple's test does not satisfy L4.  Opp.

1    3.  Such "unsubstantiated attorney argument" cannot defeat JMOL.  *Emazing Lights,*

2    *LLC v. Ramiro Montes de Oca*, 2016 WL 3475330, at *3 (C.D. Cal. May 3, 2016).[1]

3          Nor did Apple waive this argument by failing to raise it in Apple's Rule 50(a)

4    motion.  Opp. 3.  Apple argued Plaintiffs had not established misappropriation because,

5    *inter alia*, "Apple was already using a black foam manufacturing test to check for light

6    piping … *before* Dr. Lamego arrived at Apple."  Dkt. 1705 at 13 (emphasis in original).[2]

7    While Apple's motion did not use the words "independent development," it made the

8    same substantive point that appears in Apple's Rule 50(b) motion.[3]

9          Relatedly, Plaintiffs argue that Apple's 2013 black foam test does not satisfy L4

10    because it did not apply ▮▮▮▮▮▮▮▮▮▮  Opp. 3-4.  But L4 does not mandate

11    such a narrow approach, and Plaintiffs cannot rewrite their ATS after trial to skirt

12    Apple's defenses.  *See* Mem. 4-6 (collecting cases).  Even if Plaintiffs were right, they

13    concede (Opp. 3-4) that Apple's 2013 black foam testing machinery "*could* handle ▮

14    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15    ▮▮▮▮▮▮  4/18 PM Tr. 112:1-114:1.  Plaintiffs do not dispute that

16    "configur[ing] the test in that manner" performs L4, and they cite no evidence for their

17    speculative assertion that Apple *never* did so prior to Lamego's arrival.  Opp. 4 (relying

18    on testimony that Apple did not decide to make ▮▮▮▮▮▮▮ until 2014).

19    Regardless, Apple undisputedly knew how to ▮▮▮▮▮▮▮—like putting the

20    cap on a flashlight (4/18 PM Tr. 112:1-113:23)—before Lamego arrived, meaning that

21    Plaintiffs have not established Apple acquired that information through improper means.

22

23

24    [1] While *Emazing* is a summary judgment decision, "the inquiry under" summary

25    judgment and JMOL "is the same." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

26    [2] All emphasis is added unless otherwise noted.

27    [3] Furthermore, Rule 50(a) motions are subject to a "liberal interpretation" when it comes

28    to waiver, and an issue is preserved even if there is some "ambigui[ty]." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

1    *Second*, the record belies Plaintiffs' assertion (Opp. 3) that Apple's decision to

2    use ███████████████████ had any connection to Lamego.  Both Land and Block,

3    for example, confirmed that it did not.  Mem. 3.  Plaintiffs' contrary position largely

4    depends on one email from 2013, received—not authored—by Lamego and 38 other

5    employees.  JTX-1063.  Nothing in the email suggests Lamego contributed to the

6    attached presentation or the modified black foam test that Plaintiffs accuse, and all

7    relevant testimony was to the contrary.  Mem. 3.  Plaintiffs do not directly dispute this

8    point.  Instead, they argue that the email "detail[ed] the work of a smaller group that

9    included Lamego" and surmise that this work involved the black foam test.  Opp. 4.

10   Again, "unsubstantiated attorney argument" cannot defeat JMOL.  *Emazing*, 2016 WL

11   3475330, at *3.  Regardless, the guesswork of Plaintiffs' attorneys is wrong.  The email

12   references Lamego's work with the ████████ group (JTX-1063 at -845-847).  "SiP"

13   means "System-in-Package," JTX-3176 at -347, -349, i.e., a way of packaging integrated

14   circuits together into a single unit.  It has nothing to do with black foam.

15        Plaintiffs also cite a list of potential "improvements" that Lamego authored, JTX-

16   0143, but that document refers only to a ████████████████████

17   ████████████████████████████████████

18   ████████████████████████████████████

19   ████████████████████████████████████

20   ██████████████ the basic concept of light piping is not a trade secret—it appears

21   in Plaintiffs' published patents.  4/10 PM Tr. 55.  Regardless, a "conclusory opinion

22   from an expert" cannot defeat JMOL.  *Emazing Lights*, 2016 WL 3475330, at *3.

23        As a fallback, Plaintiffs rely on a fluke of timing—the bare fact that Lamego

24   happened to be working for Apple at the time when ████████████████████.

25   Opp. 4.  But "[s]peculation based on coincidence" cannot defeat JMOL, much less

26   support a ten-digit misappropriation claim.  *Comp. Place, Inc. v. Hewlett-Packard Co.*,

27

28

APPLE'S REPLY ISO ITS RULE 50(B) MOTION

3

CASE NO. 8:20-cv-00048-JVS (JDEx)

607 F.Supp. 822, 830 (N.D. Cal. 1984), *aff'd*, 779 F.2d 56 (9th Cir. 1985).[4]  Plaintiffs'

cases (Opp. 4) are not to the contrary, as they involved significantly more circumstantial

evidence beyond a timing coincidence.  *See JBF Interlude 2009 Ltd. v. Quibi Holdings

LLC*, 2020 WL 9311954, at *20 (C.D. Cal. Dec. 30, 2020) (ex-employee "did all of the

development work on [defendant's] prototype" for accused technology); *UniRAM Tech.,

Inc. v. Taiwan Semiconductor Mfg. Co*., 617 F.Supp.2d 938, 944 (N.D. Cal. 2007)

(describing  specific  "1998  meeting"  where  information  was  conveyed,  and

memorandum "detailing changes to [] products after [the] meeting").

    *Third*, Plaintiffs misrepresent the record in suggesting that ███████████

███ the accused black foam test to ████████████████. Opp. 5.  Plaintiffs'

purported "extensive evidence" is not supported by their record citations.  For example,

no evidence showed Apple ████████████████████████████████

████████████████████████████████████████████

██████.  *See* Mem. 14.  The passage from Madisetti's testimony that Plaintiffs primarily

rely upon was referencing a different test using black foam that relates to the iPhone,

4/20 PM Tr. 60:10-62:10, and thus establishes no connection to the  ████████

████████ test for Apple Watch that Plaintiffs claim uses L4.  The remainder of

Madisetti's cited testimony does not explain how Apple's changes to second- and third-

generation sensors are connected to the ████████████████ test or Lamego.  *E.g.*,

4/12 PM Tr. 13:16-14:19.[5]

### b.    No Possession/Particularity

    Plaintiffs presented no evidence at trial that they possessed ████████████

████████████████████████████████████████████

---

[4] Plaintiffs also improperly try to shift their burden to Apple by complaining that Apple
failed to identify *who* decided Apple's existing black foam test ████████████
Opp. 4.  Regardless, Apple *did* put forth testimony on this point.  4/18 PM Tr. 78:5-11.

[5] The unexplained string cite to Madisetti's testimony that appears at Opp. 3 should be
disregarded.  *See Cellspin Soft, Inc. v. Fitbit, Inc*., 2022 WL 2784467, at *7 (N.D. Cal.
June 15, 2022) ("string cit[ing] evidence" is "insufficient" to avoid judgment).

1  ████ Mem. 4-5.  At a minimum, Plaintiffs' shifting position at trial about  the

2  ████████ element means that no reasonable jury could find they defined

3  L4 with sufficient particularity.  *Id.* 5-6.

4      As to particularity, Plaintiffs do not dispute that their trial presentation regarding

5  the scope of L4 differed from the definition they provided the jury.  They argue only that

6  the Court resolved the particularity question at the 12(b)(6) stage.  Opp. 3.  But the

7  decision Plaintiffs cite does not expressly address L4 or any other light piping ATS, *see*

8  Dkt. 264, and regardless Plaintiffs did not advance their "alternative options" theory of

9  L4 until two years after the motion-to-dismiss ruling.  Mem. 6.[6]

10     As to possession, Plaintiffs first claim that they showed they possessed the

11  ████████" requirement, relying on the fact that two of their exhibits

12  reference an ████████ Opp. 2 (citing JTX-827, JTX-935).  But Warren's

13  unrebutted testimony establishes that these exhibits were "not relevant to" the ██

14  ████ claimed in L4.  Mem. 4.  And they certainly do not show Masimo ████

15  ████████████ *Id.* Plaintiffs'

16  only response—that the exhibits use the general term "light piping," Opp. 2—is

17  unsubstantiated argument.  Plaintiffs' assertion that they were not required to present

18  expert testimony to prove their case is undermined by their own authority.  *See*

19  *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F.Supp.3d 977, 982 (N.D. Cal. 2018)

20  (expert testimony required when "trade secret ownership [involved technology] beyond

21  the common knowledge of a layperson").[7]

22     Plaintiffs next argue that they "need not prove possession of" the ████████

23  ████████ because it is one of two "alternative" ways of performing L4.  Opp.

24  ————————————

25  [6] At best, the 12(b)(6) decision suggests that if a plaintiff wishes to put forth a trade secret with "optional" elements, the purported trade secret must use the word "optional."
26  Dkt. 264 at 6 n.1.

27  [7] Plaintiffs also rely on *Patriot Rail Corp. v. Sierra Railroad Co.*, but the cited passage addressed only whether the dollar amount of a bid on a railroad contract constituted a trade secret.  2015 WL 4662720, at *6-8 (E.D. Cal. Aug. 5, 2015).

28

2-3.  This argument cannot be squared with this Court's jury instruction that Plaintiffs must "establish that [each] Asserted Trade Secret *as a whole* was entitled to legal protection," a showing that required proof Plaintiffs "developed or otherwise were in lawful possession of the Asserted Trade Secret."  Dkt. 1715 at 26, 33.  Requiring Plaintiffs to establish possession of the whole purported trade secret that *they* drafted does not render L4's use of the word "or" superfluous.  Apple does not dispute that Plaintiffs could establish misappropriation by pointing to Apple's use or disclosure of one option.  What Plaintiffs cannot do is effectively delete a portion of a purported trade secret while simultaneously relying on the full L4 when it is to their advantage.  Mem. 5; *see also, e.g.*, Dkt. 1096-15 ¶¶478-501 (Madisetti report arguing L4 is not generally known because of *inter alia*, "███████████" element); Dkt. 1096-16 ¶617 (same).

Tellingly, Plaintiffs fail to cite a single case that squarely supports their position on possession.  While they rely on *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396 (C.D. Cal. Nov. 7, 2022), they do not dispute that (1) the parties in that case did not brief the propriety of Plaintiffs' partial possession theory, and (2) this Court's rulings in this case (e.g., that an "alleged trade cannot evolve during trial" and that an ATS "must be analyzed as a whole") are at odds with their position based on *True Wearables*.  *Compare* Mem. 5 n.3, *with* Opp. 2.  Plaintiffs' reliance on *Bianco v. Globus Medical, Inc.*, 2014 WL 5462388 (E.D. Tex. Oct. 27, 2014), is even further afield.  *Bianco* held only that a plaintiff needed to show that the "core idea" of the trade secret (as opposed to "ancillary features") was conveyed to defendant to establish *misappropriation*.  *Id*. at *7.  *Bianco* did not address the test for possession and, in any event, the "███████████" element is hardly ancillary to L4.  *See supra* pp.5-6.

### c.    Generally Known

No reasonable jury could have found Plaintiffs met their burden to show L4 was not generally known because (1) their expert did not conduct any independent research

1   into what was known in the industry and, regardless, (2) Apple identified several

2   references—e.g., the Petersen patent—that recite L4.  Mem. 6-7.

3        Plaintiffs cite a grab bag of inapposite evidence in a futile attempt to establish a

4   reasonable jury could have found that L4 was not generally known.  Opp. 5.  But

5   evidence of "impact on business operations" and "resources invested" merely goes to

6   whether L4 had *independent economic value* from being kept secret—not to whether L4

7   itself was actually secret.  *See* Dkt. 1275 at 6 (citing these as considerations for whether

8   the ATS "derived value from their secrecy"), *cited in* Opp. 5.  Plaintiffs also cite to

9   Diab's testimony, Opp. 5, but Diab never even read the text of L4 and thus cannot

10   reasonably provide probative evidence on whether it is generally known, 4/7 Tr. 20:14-

11   21:8, 22:11-19.  Finally, Plaintiffs rely on Madisetti's testimony that the materials put

12   forward by Apple and its expert do not show that L4 was generally known, Opp. 5-6,

13   but *Atmel Corp. v. Information Storage Devices, Inc.*, establishes that an alleged trade

14   secret expert must conduct his/her own independent search in order for the expert's

15   opinion to be sufficiently reliable.  189 F.R.D. 410, 416 (N.D. Cal. 1999).  Madisetti

16   could not meet Plaintiffs' burden simply by reviewing Warren's "limited universe" of

17   references, *id.*, particularly when Madisetti never knew or described Warren's search,

18   and never conducted an independent search.

19        As to the Petersen patent, Plaintiffs do not dispute that Petersen discloses the same

20   test to measure light piping as L4.  Mem. 6; Opp. 5-6.  Instead, Plaintiffs rely solely on

21   Madisetti's testimony that Petersen only ███████████████████████ not ██████

22   ███████████.  Opp. 5-6.  But Warren testified that Petersen states that to remove light

23   piping "not only can you change the software, but ***you can change the hardware***," such

24   as by "includ[ing] resister encoders," "not using white bandages," or "using circuit

25   boards that are not translucent."  4/20 AM Tr. 56.  Madisetti's statements otherwise were

26   conclusory and unsupported, and Plaintiffs fail to cite any part of Petersen that limits its

27   changes to "███████████████" or "discourages" █████████████.  *Id.*

28

### 2.    *L5 – The Short Circuit*

####    a.    **No Misappropriation.**

Plaintiffs fail to identify evidence from which a reasonable jury could find Apple (1) ever had the problem in L5, and (2) used the same solution Plaintiffs possessed. Mem. 7-8.

As to the former, Plaintiffs concede L5 concerns the problem of ███████████ ███████████████████████████████████████████████ whereas Apple addressed the problem of "█████████████████████████." Opp. 8; JTX-185 at -824. Plaintiffs instead try to argue these two problems are related, apparently relying on Madisetti's testimony that a "████████████████████████████████████ ██████████████████████████" 4/20 PM Tr. 73:12-20. Madisetti offered no explanation for this conclusory, jargon-riddled statement and for good reason—it is nonsensical. As Warren explained in unrebutted testimony, ██████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████ 4/20 AM Tr. 70:15-71:25. ████████████████████████████████████████████████████████████████ ██████████ *Id.* 79:2-20. Warren, Land, and Block each confirmed that the two ideas are fundamentally different problems. 4/20 AM Tr. [Warren] 81:19-22; 4/18 PM Tr. [Land] 86:13-19; 4/19 AM Tr. [Block] 26:19-27:14. While both problems *can* lead the same unwanted outcome ("████████████████"), that says nothing about whether the problems or their solutions are the same. A fire, flood, and earthquake can all cause damage to a house, but each problem is different and so are the various ways to protect against damage caused by those phenomena.

As to the solution, Plaintiffs again do not dispute their solution was ██████ ████████████████████████████, whereas Apple implemented a ████████████ approach. Opp. 8. Instead, Plaintiffs rely on a conclusory statement from Madisetti that Apple's ██████████████████ is equivalent to Masimo's ████████████. *Id.* (citing

4/20 PM Tr. 71-73, 113-15).  This testimony is inconsistent with the position Plaintiffs take just a few pages earlier in their brief, where they list ███████████ and "████ ████" as distinct possible solutions to the problem of L5.  Opp. 6.[8]  And Madisetti, reading from a slide, offered no explanation for why a dynamic ████ is the same as a static ████ (they are not), identified no document equating the two (there is none), and did not even account for the ███████████ aspect of Plaintiffs' solution.   In contrast, Warren consistently explained that a ███████████ and ██████████ are "two different ideas," and why ███████████ is different from ████████████████ ███████████.  4/20 AM Tr. 73:9-75:14; 80:6-83:16; 77:1-9; 4/20 PM Tr. 21:2-20, 46:22-47:23.

As a fallback, Plaintiffs argue that misappropriation occurred so long as Lamego informed Apple of the problem of ████████████████ and ██████████████ █." Opp. 9.  But Plaintiffs never presented this position to the jury.  Madisetti's theory was L5 claimed Plaintiffs' "███████████████" and that Plaintiffs derived value from "██████████████████████████████████████"  4/12 PM Tr. 20:24-22:14, 30:15-31:7.

### b.    No Possession/Particularity

No reasonable jury could find Plaintiffs possessed L5, as they made the strategic choice to draft L5 so broadly as to cover *every* possible solution to a particular problem, even though their own expert conceded Plaintiffs only possessed a finite number of solutions.  Mem. 8.  Plaintiffs' failure to specify the solutions claimed also renders L5 insufficiently particular.  *Id.*

Remarkably, Plaintiffs' opposition treats L5 as *even more abstract*, arguing for the first time that L5 only claims knowledge of the problem and not also knowledge of

---

[8] To be clear, no reasonable jury could find Plaintiffs possessed a ███████████ solution for L5.  Madisetti's testimony was conclusory, and the only record document describing Plaintiffs using a ████████████ *predated* Plaintiffs' realization of L5's problem.  *See* JTX-827 at -679 (11/6/03), -858 (9/8/04); JTX-703 at -058-059 (8/1/05); 4/12 PM Tr. 20-21.

the solutions.  *Compare* Opp. 8 *with* 4/12 AM Tr. 86 (Madisetti testifying Plaintiffs developed L5—they "understood the problem and developed solutions"); 4/12 PM Tr. 27:20-23 (Apple used "Masimo's L5 solution"); *id.* 28:21-25 ("solution that was proposed by L5"); *id.* 30-24-31:7 ("Masimo uses the L5 solution").  This only exacerbates the deficiencies in L5, and because Plaintiffs have failed to explain how any reasonable jury could find they possessed the multitude of solutions contemplated by L5 (or that the general language in L5 is sufficiently particular), Apple is entitled to JMOL.[9]

Moreover, Plaintiffs do not cite any authority supporting their assertion that knowledge of a technical problem—standing alone—can be a protectable trade secret. While Plaintiffs rely on *Business Intelligence Services, Inc. v. Hudson*, 580 F.Supp. 1068 (S.D.N.Y. 1984), that case dealt with the special context of confidential "customer" or "client information," *id.* at 1072.  In any event, New York does not follow the UTSA, meaning New York decisions are of little utility in interpreting the CUTSA.  *See In re Frye*, 2008 WL 8444822, at *7 (B.A.P. 9th Cir. Aug. 19, 2008).  Finally, Plaintiffs' attempt (Opp. 7) to analogize their new reading of L5 to "knowing where to locate a stitch during heart surgery" falls flat.  L5 does not describe a specific circuit or where to use it—it is the equivalent of claiming the general knowledge that tissue damage can occur during heart surgery and saying "fix it."  Opp. 8.

As to particularity, Plaintiffs once again argue only that the Court resolved the issue at an earlier stage (here, summary judgment).  Opp. 8.  But this Court can and should reach a different conclusion at the Rule 50 stage.  *Pollara v. Radiant Logistics, Inc.*, 2014 WL 12585781, at *11 (C.D. Cal. June 6, 2014).  Here, Madisetti's testimony that Plaintiffs possessed at best a handful of solutions to L5 even while L5 as defined by Plaintiffs purports to claim them all prevents a reasonable jury from understanding what L5 encompasses, *see* Mem. 8.

---

[9] Plaintiffs rely on *Altavion, Inc. v. Konica Minolta Systems*, 226 Cal.App.4th 26, 56 (2014), but that case merely held specific "design concepts" for a barcode were protectable.

Wilmer Cutler
Pickering Hale
and Dorr LLP

### c.      Generally Known

Plaintiffs failed to meet their burden to establish L5 was not generally known, as the Mims reference, the Roedel article, and the Webster textbook all disclose L5, as do Plaintiffs' patents, Mem. 9—all the more so if Plaintiffs reduce L5 to recognizing a technical problem and saying, "████"  *See, e.g.*, JTX-3808 12-13 (1973 Mims book describing "█████████████"), 4/20 AM Tr. 88:4-95:15.  In particular, as with L4, Madisetti only responded to the references Warren identified.  Under *Atmel*, he thus could not provide a reliable, nonconclusory opinion as to whether L5 was not generally known by the relevant community.  While Plaintiffs argue (Opp. 9) Warren's testimony about Mims, Roedel, Webster, and their own patents was insufficient to overcome Warren's purported "concessions and Madisetti's rebuttal," Plaintiffs do not attempt to explain what those concessions and that rebuttal were—they merely provide an unreasoned string cite.  That is insufficient to avoid JMOL.  *See Cellspin*, 2022 WL 2784467, at *7; *supra* n.5.

### 3.      D1, D3, and D10 – The Unused Algorithms

No reasonable jury could have found that the D ATS were (1) misappropriated by Apple, (2) possessed by Plaintiffs, or (3) not generally known.  Mem. 9-11.  Plaintiffs' response depends mainly on unexplained string cites, which cannot defeat JMOL.  *See Cellspin*, 2022 WL 2784467, at *7.[10]

As to misappropriation, Plaintiffs argue that Lamego disclosed D1 and D3 to Apple through three exhibits.  *See* Opp. 11 (citing JTX-161, JTX-154, and JTX-1262).  But ██████████████████████, which does not recite either D1 or D3 verbatim.  Mem. 9.  Apple already explained why JTX-161 and JTX-154 do not disclose D1 and D3.  Mem. 10 n.6.  Plaintiffs have no answer.  As to D10, Plaintiffs do not

---

[10] Many unexplained record cites do not support the sentence they follow.  Apple's expert did not "agree" Plaintiffs possessed D1's "more than two light sources" element.  *Compare* Opp. 10, *with* 4/19 PM Tr. 35-37 (expert summarizing *meaning* of D1).  And Plaintiffs' expert did not "explain[] the Pronto-7 code performed all steps of D10"—he said nothing about steps eight and nine.  *Compare* Opp. 10-11, *with* 4/12 PM Tr. 62-67.

dispute that D10 was not written down in a single place before the '754 patent issued, Opp. 11, meaning they have not established Lamego would have had sufficient knowledge of D10 to transmit it to Apple.  Finally, Plaintiffs do not (1) deny that their only remaining use theory is that Apple employed D1, D3, and D10 to "benchmark" the demodulation technique Apple actually does use, or (2) dispute that any retrial should be limited to this single, narrow theory of use.  *Compare* Mem. 10, *with* Opp. 12.

As to possession, Plaintiffs still fail to provide any concrete evidence that they possessed D1's "███████████" element.  While they rely on Poeze's testimony and notebooks, they have no satisfactory answer to Apple's argument that Poeze could not logically testify about whether Plaintiffs possessed D1 because he had no idea what D1 is.  *Compare* Mem. 10, *with* Opp. 10.  Their response is that Madisetti reviewed Poeze's testimony and relied on it to establish possession, Opp. 10, but Madisetti said nothing about the "███████████" element beyond his conclusory statement that it was "in the code," Mem. 10.  Plaintiffs do not identify any case holding an expert can rely on a vague reference to evidence outside the record to establish an ultimate issue, such as possession.  To the contrary, "[a]n expert's unsupported conclusion on [an] ultimate issue … will not alone" be sufficient to avoid JMOL.  *See Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) (rejecting expert's conclusory testimony unsupported by underlying document that presented "an unexplained array of electronic symbols").[11]

As to possession of D3, Plaintiffs do not identify anything in Madisetti's testimony explaining how a "crosstalk matrix" is the equivalent of D3's ███████ step.  Opp. 10.  While Plaintiffs fall back on Poeze's testimony, he never read D3 and—again—Madisetti failed to link Poeze's testimony about ███████████.  Finally, Plaintiffs are wrong (Opp. 10) that Apple's Rule 50(a) brief failed to argue

---

[11]  Plaintiffs' cited case law rejected the movant's "conclusory" argument that inadmissible "source code evidence" can be considered under Rule 703.  *Wi-Lan Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1376 (Fed. Cir. 2021).

1   Plaintiffs did not possess D3.  *See* Dkt. 1705 at 17 ("Plaintiffs have not established that
2   they possessed *any* of the alleged D secrets."); *supra* n.3.

3          Plaintiffs have also failed to identify any evidence establishing possession of
4   D10's steps eight and nine.  Opp. 10-11.  They rely on Poeze's testimony, but he was
5   never asked about the portion of the '754 that purportedly discloses D10.  And they cite
6   nothing relevant from Madisetti regarding steps eight and nine beyond his one-word
7   answer ("yes") to a leading question about whether Plaintiffs developed D10.  Such
8   conclusory testimony is not sufficient to avoid JMOL.  *See supra* pp.3,12.

9          As to whether D1 and D3 were "not generally known," Plaintiffs again (1) rely
10  on evidence that goes to the purported value of the ATS from being kept secret, rather
11  than establishing secrecy and (2) do not identify any independent inquiry that their
12  expert conducted into whether the D ATS were not generally known.  Opp. 12.  That is
13  insufficient to avoid JMOL.  *See supra* p.7.  In support of their D1 argument, Plaintiffs
14  also point to a 2005 email from Lamego, Opp. 12, but Plaintiffs have no answer to
15  Apple's point that the email does not include the full D1, Mem. 12.  Finally, Plaintiffs
16  falsely claim Apple's expert "conceded" a portion of D3 was not generally known.  Opp.
17  12.  The cited transcript passage merely identifies two references that did not disclose a
18  particular element (D3(c)); Apple's expert stated elsewhere that a *different* reference
19  disclosed that element.  *See, e.g.*, 4/19 PM Tr. 82:19-83:23 (relying on Lamego 2011);
20  DDX-15.60 (same).

21               **4.     VIA – The Nebulous Catchall**

22         Plaintiffs do not dispute that if technical ATS fall, the VIA must as well.  *Compare*
23  Mem. 11, *with* Opp. 12-13.  Nor do Plaintiffs meaningfully respond to Apple's argument
24  that VIA is not sufficiently particular.  *Compare* Mem. 11 *with* Opp. 13.  Plaintiffs are
25  wrong that Apple waived the particularity issue by not raising it at Rule 50(a).  *See* Dkt.
26  1705 at 6-7 (discussing VIA's particularity).  And while they cite this Court's summary

27

28

judgment decision, this Court is not bound to that ruling, *supra* p.10, particularly in light of a trial record proving even Plaintiffs are unaware what VIA claims, *see* Mem. 11.

Plaintiffs also lack any meaningful response to the argument that they failed to present evidence that VIA was not generally known and that Plaintiffs possessed it. *Compare* Mem. 11-12, *with* Opp. 12-13.  Plaintiffs do not identify *any* evidence that VIA was not generally known.  While Plaintiffs rely on Diab's, Dalke's, and Poeze's testimony to show possession, none was asked about the VIA ATS or had even read it.

### B.    Plaintiffs Have Failed To Establish Unjust Enrichment

No reasonable jury could find Plaintiffs connected Apple's purported misappropriation of the ATS to Apple's Blood Oxygen feature in any way—both because Plaintiffs' witnesses failed to link the ATS to that feature and because Plaintiffs' damages expert dramatically overvalued it by ignoring myriad other features.  Mem. 12-15.

### 1.    No Link Between ATS and Blood Oxygen

Although Plaintiffs put on a rebuttal case, they failed to offer anything in response to Webster's testimony that no record evidence connected the technical ATS to the value of Apple's Blood Oxygen feature.  Mem. 13.[12]  Lacking direct evidence to support their unjust enrichment claim, they rely on (1) a mishmash of exhibits connected only by attorney argument and (2) the testimony of a witness (Diab) who did not testify about Apple technology and who was ignorant about the ATS.  *See, e.g.*, 4/7 Tr. 19 (Q: "[Y]ou do not know whether the information you discussed is part of any of the specific alleged trade secrets."  A: "I do not know the trade secrets themself and what they mean."); *id.* (Q: "You never used the term L4, L5, D1, D3, or D10 in your testimony yesterday, correct?  A: Correct.").

---

[12] Plaintiffs misstate the testimony by asserting Webster "conceded she lacked expertise to *evaluate* Masimo's technical evidence."  Opp. 13 (citing 4/25 AM Tr. 46-47). Webster acknowledged she was not a "technical expert"—not that she was unable to assess the value of technology.  Without objection, this Court found she is "an expert in the field of *economic evaluation* of intellectual property."  4/25 AM Tr. 17.

### a.   D1, D3, D10

Plaintiffs do not dispute that (1) their technical expert testified that D1, D3, and D10 have never been used in any Apple Watch or (2) their CEO testified that D10 lost its trade secret status a year before the damages period began.  *Compare* Mem. 13 *with* Opp. 13, 15.  Plaintiffs' chief argument is that Apple used the D ATS to "adopt an improved DCS2 algorithm, which benefited Apple's blood-oxygen feature."  Opp. 15. Plaintiffs attempt to support this attorney argument with five internal Apple documents and a snippet of testimony from an Apple engineer, none of which references Plaintiffs' ATS (as opposed to the general concept of modulation) *or* Blood Oxygen.  *See* JTX-153; JTX-273; JTX-411; JTX-4199; JTX-183; 4/18 PM Tr. 99.  In any event, Plaintiffs have no plausible answer to the fact that the demodulation emails Plaintiffs rely upon are from March 2014—six years before Blood Oxygen was introduced, Mem. 13, and months before Apple began development on Blood Oxygen in November/December 2014, *see* 4/18 PM Tr. 70-71.  Their only response is more attorney argument and citations to three more exhibits, none of which clearly supports Plaintiffs' bald assertion that Apple used D1, D3, and D10 in developing Blood Oxygen beginning in 2014.  Opp. 15.

### b.   L4 and L5

Plaintiffs do not dispute Webster's testimony that Apple Watch SE *and* Apple Watch Series 6-7 (i.e., the two sets of Watches that Kinrich compared in order to assess the value of Blood Oxygen) are *both* alleged to use L4 and L5 under Plaintiffs' incorrect misappropriation theory.  Mem. 13-14.  Plaintiffs instead attempt to rehabilitate Kinrich's comparison by contending that "the trade secrets are more important to blood oxygen" in Series 6-7 than they are for the heart-rate calculations used in the SE Series. Opp. 14.  But no testimony supports this bald assertion.  Plaintiffs' only support for the blood oxygen/heart rate distinction is a single slide produced by Apple that appears to relate to light propagation.  JTX-1078 at -632.  They do not explain how a reasonable

1    jury would understand this slide to convey their preferred message.  This total failure of

2    proof requires JMOL of no unjust enrichment on L4 and L5.

3          Plaintiffs' remaining arguments are equally unpersuasive.  As to L4, Plaintiffs are

4    wrong that there is a connection between Apple's purported use of L4 and Apple's

5    changed sensor design, *supra* p.4, and even if there were, there is no evidence the change

6    had any link to Blood Oxygen.  While Plaintiffs attempt for the first time to rely on

7    Diab's testimony to establish such a connection, Diab lacked any knowledge of Apple's

8    technology or L4.  *Supra* pp.7,14.  Finally, Plaintiffs fall back on attorney argument

9    about the meaning of the slide show presentation (JTX-1078), but the handful of

10   diagrams on the cited slides say nothing about Blood Oxygen or L4.

11         As to L5, Plaintiffs do not dispute that they offered no evidence showing the

12   accused short circuit benefits Apple's Blood Oxygen feature.  *Compare* Mem. 14, *with*

13   Opp. 14.  Plaintiffs cite Diab's testimony but, again, he knew nothing about Apple's

14   technology or L5.  They also point to the fact that Apple purportedly "identified L5 as a

15   '███████,'" but as Apple explained, this statement predated the development of Blood

16   Oxygen by months.  Mem. 14.  Plaintiffs' unsourced assertion (Opp. 14) that Apple

17   "began developing Blood Oxygen in 2012" is false.  The only evidence presented on the

18   issue pegs the date as November/December 2014.  4/18 PM Tr. 70-71

19              **2.    No Link Between $1.85 Billion Valuation And Blood Oxygen**

20         Plaintiffs do not dispute that Kinrich's damages calculation gave "zero value" to

21   the many differences between Series 6-7 and Series SE.  Mem. 14-15.  Plaintiffs claim

22   it was appropriate for Kinrich to ignore all differences between models except for Blood

23   Oxygen, ECG, and retina display because those are "*the* three features Apple itself

24   promoted to differentiate th[e] models."  Opp. 15.  But Kinrich offered nothing to

25   substantiate his suggestion that those were the *only* features Apple promoted.

26   Regardless, he acknowledged there were "more technical … differences" between Series

27   6 and Series SE beyond Blood Oxygen, ECG, and retina display that did not appear in

28

the cherry-picked advertising copy he reviewed.  4/13 AM Tr. 94-95.  He provided no explanation for how—if his methodology was to consider the various differences between two products—he could reliably justify valuing only some differences and assigning zero value to others.

**C.     Plaintiffs Have Failed To Establish Any Reasonable Jury Could Rule In Their Favor On The Remaining Issues**

### 1.     *Plaintiffs' claim is time-barred*

The single statute of limitations began to run as to all ATS over three years before Plaintiffs filed suit in January 2020.  *See* Mem. 15-16; Dkt. 1790-2 at 7-12.  By 2016, Plaintiffs had expressed overt suspicion that Apple sought to misappropriate their ATS (shown by their January 2014 letter) and were on at least constructive notice Lamego had performed the kind of work they insisted would constitute misappropriation (e.g., the publication of the '052 patent application, which revealed Lamego worked on physiological monitoring at Apple).  *See Alamar Biosciences Inc. v. Difco Lab'ys Inc.*, 1996 WL 648286, at *5 (E.D. Cal. Feb. 27, 1996).

### 2.     *Apple did not have the requisite intent*

Plaintiffs present no evidence from which a reasonable jury could find Apple directly obtained the ATS through financial inducements, misrepresentation, or inducement of a breach to maintain secrecy.  *Compare* Mem. 17, *with* Opp. 16-18. While Plaintiffs criticize Apple's cases setting out the definitions under California law of these terms, Plaintiffs have never cited any authority purporting to define the terms any differently. *See, e.g.*, Opp. 18.  Plaintiffs do not even attempt to prove specific intent to injure or defraud, which their direct-misappropriation theories require.  *See* Mem. 17.

Plaintiffs accuse Apple of ignoring an alternate theory of direct misappropriation—i.e., Lamego's intent can be imputed to Apple under *respondeat superior*.  Opp. 16-17.  But this Court rejected that argument in its Rule 50(a) decision.

*See* Dkt. 1724 at 20.   Moreover, the jury was instructed *not* to impute Lamego's knowledge to Apple.  Dkt. 1715 at 39-42.

Plaintiffs also failed to present evidence Apple knew or should have known that it improperly obtained any ATS through Lamego.  At best, the evidence established only that Apple believed Lamego would be a productive employee and that he quickly dove into his work at Apple.  *See* Opp. 17-18.  While Plaintiffs point to Apple's supposed plan to hire experienced people from other companies, California favors employee mobility and rejects "the inevitable disclosure doctrine"—i.e., similarities between an employee's prior work and current duties "cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets."  *Whyte v. Schlage Lock Co*., 101 Cal.App.4th 1443, 1463-64 (2002).

### 3.    *Apple Did Not Willfully Misappropriate*

Plaintiffs have not identified any behavior amounting to "conduct … so vile and wretched that it would be looked down upon and despised by ordinary decent people."  Mem. 18.  Plaintiffs' opposition does not identify any specific evidence that would permit a reasonable jury to make such a finding.  Rather, Plaintiffs make a handful of accusations that were neither presented to the jury in closing nor supported by citations to the record.  Opp. 18-19.  Regardless, Plaintiffs do not identify a single case that has found willfulness on similar allegations.

## II.    PLAINTIFFS' INVENTORSHIP AND OWNERSHIP CLAIMS FAIL

### A.    '052 and '670 Patents

No reasonable jury could find Diab should be named as an inventor of the '052 and '670 patents, or that Lamego conceived his inventive contribution at Masimo or Cercacor.  Mem. 18-19.

***First***, no reasonable jury could find there was collaboration/joint effort between Apple and Diab.  Mem. 18-19.  Plaintiffs do not dispute "the inventors [must] have some open line of communication during or in temporal proximity to their inventive efforts."

*Falana v. Kent State Univ.*, 669 F.3d 1349, 1358 (Fed. Cir. 2012); *see* Dkt. 1715 at 51 (jury instruction).  Nor do they dispute that "Diab did not collaborate directly with Apple."  Opp. 19.  While Plaintiffs appear to rely on a limited exception carved out in the jury instructions (over Apple's objection) where "Apple came into possession of a former Masimo employee's contributions [for these patents] through misappropriation of trade secrets," Dkt. 1715 at 52, that exception is inapplicable to the '052 and '670 patents.  Plaintiffs have not alleged that either patent contains ATS.

**Second**, no reasonable jury could find Diab conveyed anything more than prior art to Lamego.  Mem. 19.  Plaintiffs admit that, at most, Diab conveyed the idea of "reflectivity" to Lamego.  Plaintiffs also do not dispute that they themselves placed "reflectivity" in the prior art.  Opp. 19-20.  While Plaintiffs claim providing information on the prior art can be sufficient for inventorship so long as that information was not "well-known," Opp. 19-20, the cases they cite for that proposition do not support it.  *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (joint inventor must "do more than merely explain … well-known concepts *and/or the current state of the art*"); *Dana-Farber Cancer Inst. v. Ono Pharm. Co.*, 964 F.3d 1365, 1372 (Fed. Cir. 2020) ("simply informing another about the state of the prior art does not make one a joint inventor").[13]  Rather, "[c]ontributions … may not amount to a contribution to conception if they merely explain what was 'then state of the art.'"  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).

**Third**, no reasonable jury could find corroboration that Diab contributed ideas to Lamego.  Mem. 19.  Plaintiffs point to "notebooks and the white surfaces on Masimo's products," Opp. 20, but those documents lack any mention of Lamego and at most show Diab's knowledge of "reflectivity"—not that he discussed those notebooks or products with Lamego.

---

[13] *Dana-Farber* carved out a limited exception where a collaborator in a year-long "collaborative enterprise" made public information "a few weeks prior to conception." 964 F.3d at 1372.  There was no such collaboration here.

*Fourth*, no reasonable jury could find Lamego made his contribution to the patents while employed by Plaintiffs.  Mem. 19.  Plaintiffs concede Lamego's contribution to the patents was "us[ing] reflectivity *on the back of the Apple Watch*"—Opp. 19-20.  No reasonable jury could find Lamego came up with an idea to improve Apple Watch while working for Plaintiffs and before he had seen the device. 4/19 AM Tr. 85:14-18; JTX-49.

### B.    '754 Patent

No reasonable jury could find Poeze should be named as an inventor of the '754 patent or that the patent should be assigned to Plaintiffs.  Mem. 20.

*First*, Plaintiffs do not identify any inventive aspects of the '754 patent Poeze contributed.  Plaintiffs suggest that is a "question of fact for the jury," Opp. 20, but no reasonable jury could find Poeze made any inventive contribution when Plaintiffs identify none—particularly where Poeze testified that Lamego taught him the information in his notebooks.  4/7 Tr. 103:9-18, 108:23-110:8, 116:6-15.

*Second*, Plaintiffs do not dispute there was no evidence of an open line of communication between Poeze and Apple in temporal proximity with the inventive efforts.  Rather, Plaintiffs assert "collaboration was not required," Opp. 20, which violates *Falana*.

*Third*, Plaintiffs cite no evidence corroborating a transfer of inventive contributions from Poeze to Lamego.  While Plaintiffs rely on Poeze's source code and notebooks, those documents provide no insight into whether Lamego taught information to Poeze or vice versa.

*Fourth*, no reasonable jury could find the work leading to the '754 patent was done while Lamego was employed by Plaintiffs because the only relevant testimony in the record establishes the work was done at Apple.  Mem. 20.  Plaintiffs' attorneys disagree with Hotelling's testimony, but cite no evidence contradicting it.  Opp. 20.

### C.    '095 and '390 Patents

No reasonable jury could find Diab should be named as an inventor of the '095 and '390 patents or that Plaintiffs should be assigned ownership. ***First***, Plaintiffs do not dispute Diab's alleged contributions were published in prior art patents and patent publications. Mem. 20; Opp. 21. Plaintiffs' only response is to reiterate their mistaken position that teaching information about prior art qualifies for joint inventorship. *See supra* p.19.

***Second***, Plaintiffs do not dispute Diab did not collaborate with Apple in temporal proximity with the inventive efforts, and he was not part of any collaborative enterprise (meaning the *Dana-Farber* exception does not apply, *supra* n.13). And again, Diab does not fall into the narrow exception in the jury instructions for information conveyed through misappropriation of trade secrets, as Plaintiffs do not allege the '095 and '390 patents disclose their ATS.

***Finally,*** no reasonable jury could find Lamego conceived his inventive contributions while working for Plaintiffs. Contrary to Plaintiffs' suggestion, Madisetti offered no opinion that Lamego conceived his inventive contribution while employed by Masimo and Cercacor. *See* Opp. 21 (citing only 4/12 PM Tr. 82-86). As with the '754 patent, the only evidence is Hotelling's unrebutted testimony that the work was performed at Apple. Mem. 21.

Dated:  July 10, 2023                    Respectfully submitted,


                                         MARK D. SELWYN
                                         JOSEPH J. MUELLER
                                         AMY K. WIGMORE
                                         JOSHUA H. LERNER
                                         SARAH R. FRAZIER
                                         NORA Q.E. PASSAMANECK
                                         THOMAS G. SPRANKLING
                                         WILMER CUTLER PICKERING HALE AND
                                         DORR LLP

                                         BRIAN A. ROSENTHAL
                                         GIBSON, DUNN & CRUTCHER LLP

                                         KENNETH G. PARKER
                                         HAYNES AND BOONE, LLP



                                         By:  */s/ Mark D. Selwyn*
                                               Mark D. Selwyn


                                         *Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 6,985 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

___ complies with the page limit set by court order dated Apr. 10, 2023.


Dated: _July 10, 2023_____          Respectfully submitted,


MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: _/s/ Mark D. Selwyn_____
      Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*