MARK D. SELWYN, SBN 244180
 mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
 thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
 joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
 amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF ITS MOTION UNDER RULE 52 FOR JUDGMENT ON ITS EQUITABLE DEFENSES**<br><br>Hearing: July 24, 2023<br><br>Time: 1:30pm |

JOSEPH J. MUELLER, *pro* hac *vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 2

I.  THE RULE 50(A) DECISION DID NOT RESOLVE APPLE'S WAIVER AND LACHES DEFENSES ................................................................ 2

II. PLAINTIFFS WAIVED THEIR RIGHT TO OBTAIN MONETARY RELIEF ........................................................................................................... 2

III. PLAINTIFFS' UNREASONABLY DELAYED MISAPPROPRIATION CLAIM IS BARRED BY LACHES ........................................................... 4

    A. Laches Is An Available Defense ............................................................ 4

    B. Plaintiffs Unreasonably Delayed Filing Their Claim ............................. 6

    C. Plaintiffs Both Acquiesced To Any Purported Misappropriation And Prejudiced Apple ........................................................................ 10

CONCLUSION ..................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alamar Biosciences Inc. v. Difco Laboratories Inc.*,
  1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ..........................................................9

*Blaser v. State Teachers' Retirement System*,
  86 Cal. App. 5th 507 (2022) ...............................................................................6

*Colchester v. Lazaro*,
  16 F.4th 712 (9th Cir. 2021) ...............................................................................2

*Cypress Semiconductor Corp. v. Superior Ct.*,
  163 Cal. App. 4th 575 (2008) ..........................................................................3, 9

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ..................................................................6, 10, 11

*Johnson v. City of Loma Linda*,
  24 Cal. 4th 61 (2000) ..............................................................................5, 6, 10

*Kay v. Kay*,
  188 Cal. App. 2d 214 (1961) ..............................................................................3

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) (Selna, J.) ....................................4

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................5

*Norcia v. Samsung Telecomm. Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ............................................................................7

*Pacific Hills Homeowners Assn. v. Prun*,
  160 Cal. App. 4th 1557 (2008) ....................................................................10, 11

*United States v. Park Place Associates, Ltd.*,
  563 F.3d 907 (9th Cir 2009) ...............................................................................3

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014) ............................................................................................6

*Petroplast Petrofisa Plasticos S.A. v. Ameron International Corp.*,
   2012 WL 3090935 (Del. Ch. July 31, 2012) ................................................... 5, 6

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
   894 F.3d 1015 (9th Cir. 2018) ................................................................................ 6

*Qualcomm Inc. v. Broadcom Corp.*,
   548 F.3d 1004 (Fed. Cir. 2008) ........................................................................ 3, 4

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
   580 U.S. 328 (2017) .................................................................................................. 6

*Torres v. Secure Communication Systems, Inc.*,
   2020 WL 6162156 (C.D. Cal. July 25, 2020) (Selna, J.) ................................ 2

*Whittaker Corp. v. Execuair Corp.*,
   1980 WL 787350 (C.D. Cal. Mar. 21, 1980), *aff'd* 736 F.2d 1341 (9th
   Cir. 1984) ............................................................................................................ 5, 7

As explained in Apple's Rule 50(b) briefing, no reasonable jury could find that Plaintiffs met their burden to prove trade secret misappropriation—both because an industry-standard piece of black foam, a conventional short circuit, and a rejected demodulation proposal are not trade secrets protectable under California law, and because there is no evidence that Apple misappropriated any of these purported trade secrets. This Court can and should resolve this case on those grounds.

This motion—along with Plaintiffs' wholly duplicative cross-motion and their Rule 50(b) motion—deal with the second-order issue of whether Plaintiffs timely filed their misappropriation claim. This Court need not reach that timeliness issue if it concludes Plaintiffs' underlying claim is meritless. But the record is clear that Plaintiffs simply waited too long to bring suit, regardless of whether their delay is considered under the statute of limitations (as discussed in Apple's 50(b) brief, Dkt. 1765 at 15-16) or the equitable doctrines of laches and waiver (as discussed in Apple's opening Rule 52 brief, Dkt. 1766 ("Mem.")). Put briefly, Plaintiffs stated in January 2014 that any work by Dr. Lamego on a certain type of technology (physiological monitoring) while he was at Apple would "necessarily" amount to misappropriation of their trade secrets. By 2016, Plaintiffs learned (or at least should have learned) information that would have put any reasonable person on inquiry notice that Dr. Lamego had indeed worked on that technology while at Apple—including a patent on physiological monitoring technology that listed Dr. Lamego as an inventor. *See* Mem. 3-5; *see also* Dkt. 1765 at 15-16; Dkt. 1790-2 at 11-12. Plaintiffs' failure to act for four more years after that was prejudicial, amounted to acquiescence in the conduct about which they now complain, and is, as a whole, totally inconsistent with an intent to enforce their supposed rights.

Plaintiffs' opposition to Apple's motion largely rehashes the arguments they presented in their cross-motion under Rule 52 and that Apple already answered in detail in its opposition brief. *See* Dkt. 1774; Dkt. 1798. Accordingly, Apple's reply addresses Plaintiffs' duplicative arguments as succinctly as possible.

# ARGUMENT

## I. THE RULE 50(A) DECISION DID NOT RESOLVE APPLE'S WAIVER AND LACHES DEFENSES

Plaintiffs argue in passing that this Court's Rule 50(a) decision "suggested" that Apple abandoned its waiver and laches arguments. Opp. 1. But the Rule 50(a) order cannot reasonably be read to have granted judgment on Apple's equitable defenses. *See* Dkt. 1798 at 7-8. Rule 50(a) only empowers the Court to enter judgment on matters that were before the jury. Here, the pretrial conference order specified that Apple's waiver and laches defenses would be resolved by this Court. *See id.*; Dkt. 1483 at 15.

Contrary to Plaintiffs' suggestion (Opp. 8), this Court's statement that Plaintiffs' Rule 50(a) motion was "moot" as to Apple's equitable defenses was not a *sub silentio* decision in Plaintiffs' favor. This Court denied Plaintiffs' motion in full. Dkt. 1798 at 8. Regardless, the Court could not have granted judgment under Rule 52 without providing explanatory "findings of fact and conclusions of law," *see Colchester v. Lazaro*, 16 F.4th 712, 727-728 (9th Cir. 2021) (reversing trial court decision under Rule 52 where court's ruling merely stated a legal conclusion and failed to provide factual findings). Rather, this Court appears to have used the word "moot" as a shorthand indicating that Plaintiffs' arguments were premature and/or inoperative, as they did not fall under Rule 50(a). *See, e.g.*, *Torres v. Secure Commc'n Sys., Inc.*, 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020) (Selna, J.) ("Therefore, the Court finds these issues premature and denies as moot the motion to strike.").

## II. PLAINTIFFS WAIVED THEIR RIGHT TO OBTAIN MONETARY RELIEF

As Apple explained, Plaintiffs impliedly waived the right to bring a misappropriation claim by doing nothing for years, despite a series of events that put them on notice that Dr. Lamego had performed work at Apple in a manner that, under Plaintiffs' reasoning, would have "necessarily involve[d] the use or disclosure of [their purported] trade secrets." JTX 2937 at 2; Mem. 3-4, 6-7. Apple's opening brief

explained how this was "conduct so inconsistent with the intent to enforce the[ir asserted] right … as to induce a reasonable belief that it ha[d] been relinquished." *Kay v. Kay*, 188 Cal. App. 2d 214, 218 (1961); *accord Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).[1] Plaintiffs' responses are unavailing.

Plaintiffs primarily contend that a party's failure to act—standing alone—cannot constitute waiver. Opp. 12 (citing, *inter alia*, *Kay*, 188 Cal. App. 2d at 218); *see also id.* at 14-15.[2] But Apple's theory of waiver *begins* with an affirmative act: Plaintiffs' 2014 letter accusing Apple of a scheme to misappropriate trade secrets and reserving rights to press that claim in litigation. *See* Mem. 6 (quoting JTX 2937 at 2). In their 2014 letter, Plaintiffs drew a clear line in the sand, namely, any work done by Dr. Lamego in the area of healthcare technology would constitute misappropriation. Plaintiffs later learned information putting them on notice that Dr. Lamego had, in fact, worked at Apple in the area of healthcare technology. *See* Mem. 6-7; Dkt. 1798 at 2-4. Under those circumstances, Plaintiffs' failure to file suit was "conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished." *Kay*, 188 Cal. App. 2d at 218.

While Plaintiffs argue that the available facts did not provide information about the specific alleged trade secrets still at issue, *see* Opp. 14-15, California courts "do not [accept Plaintiffs'] hypertechnical approach to" determining when a CUTSA plaintiff is on notice to sue. *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 586 (2008); *see also* Dkt. 1809 at 16 (Apple's opposition to Plaintiffs' Rule 50(b) motion

---

[1] Plaintiffs criticize Apple's reliance on *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008), because they believe the facts are inapposite. Opp. 13. But Apple cited *Qualcomm* only for its legal standard, Mem. 6-7, and as the above makes clear, Plaintiffs' own authority (*Kay*) uses the same standard.

[2] Plaintiffs' citation (Opp. 12) to *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 921 n.10 (9th Cir 2009), and to the cases *Park Place* cites (*Jacobo Castillo* and *Olano*) is inapposite. The quoted language concerned waiver of *arguments* (in *Park Place*, "waiver of the right to arbitration") as a consequence of strategic choices in litigation, not the affirmative, equitable defense of waiver. *Id.*

explaining this point in greater detail). Indeed, Plaintiffs do not appear to dispute (Opp. 15) that they were "aware[] of the relevant circumstances and likely consequences" of not investigating the various public signs that Apple had crossed the line Plaintiffs laid down in their letter, *Qualcomm*, 548 F.3d at 1020. That awareness—coupled with the act of sending the January 2014 letter—establishes waiver.

Plaintiffs also contend that their delay cannot constitute waiver as a matter of law so long as their suit was filed within the applicable statute of limitations. *See* Opp. 12. That is true but irrelevant. Plaintiffs' claim *was* untimely as a matter of law under CUTSA's statute of limitations because the limitations period began running for all remaining alleged trade secrets by no later than 2016. *See* Dkt. 1809 at 10-17; Dkt. 1765 at 15-16. For similar reasons, Plaintiffs' conduct *also* qualifies as waiver. This matters because when issuing a decision under Rule 52, the Court resolves factual disputes *de novo* rather than applying the standard JMOL presumptions in favor of the non-movant. Accordingly, this Court neither is bound to follow its Rule 50(a) decision (where it was assessing whether any reasonable jury could find that Plaintiffs' claim was timely) nor is it required to reach the same factual conclusions in its Rule 50(b) decision as it does in resolving the instant motion.

### III. PLAINTIFFS' UNREASONABLY DELAYED MISAPPROPRIATION CLAIM IS BARRED BY LACHES

#### A. Laches Is An Available Defense

Plaintiffs reiterate the argument from their Rule 52 cross-motion that laches is unavailable as a defense to misappropriation. *Compare* Opp. 2-4 *with* Dkt. 1774 at 4-5. The argument fails for the reasons explained in Apple's opposition to Plaintiffs' Rule 52 motion. *See* Dkt. 1798 at 10-12.

In short, this Court (and others) have held that laches is an available defense to a CUTSA misappropriation claim. *See, e.g.*, *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, ¶¶ 197, 345 (C.D. Cal. Nov. 7, 2022) (Selna, J.) (holding that defendants

had failed to prove their laches defense to trade secret misappropriation); *see also, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1018 (C.D. Cal. 2011) (denying CUTSA counter-claimant's motion for summary judgment on laches defense). Multiple courts, including in this District, have held that laches barred unreasonably delayed CUTSA claims. *E.g.*, *Whittaker Corp. v. Execuair Corp.*, 1980 WL 787350, at *2 (C.D. Cal. Mar. 21, 1980), *aff'd* 736 F.2d 1341 (9th Cir. 1984) (granting summary judgment for defendants on CUTSA claim under laches); *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2012 WL 3090935, at *14-15 (Del. Ch. July 31, 2012) (holding untimely "claim[] under CUTSA … [is] barred by laches"). Although Plaintiffs attempt to distinguish *Petroplast* on the grounds that the plaintiff "waited longer than the statutory time limit" to file, *see* Opp. 3-4, the same is true here, *see supra* p. 4. And while the Chancery Court is a "court of equity," its summary judgment opinion nowhere suggests that the court's distinctive jurisdiction affects the California trade secret claim at issue. *See Petroplast*, 2012 WL 3090935, at *14-15.[3]

Plaintiffs' argument (Opp. 3) that laches is inapplicable to a claim that is timely under CUTSA's statute of limitations is true but irrelevant. Apple is entitled *both* to JMOL on its statute of limitations defense and to a Rule 52 decision on its equitable defenses, like laches. *See supra* p. 4. But as Plaintiffs themselves highlight (Opp. 3), there are circumstances where a defendant may not be able to obtain judgment on a statute of limitations defense for procedural reasons (here, due to the difference between the Rule 50(b) and Rule 52 standards) but may still prevail on laches. *See, e.g.*, *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000).

Plaintiffs also argue that laches does not apply to legal claims. *See* Opp. 2-3. This is yet another red herring. As Plaintiffs' counsel emphasized in closing, this is "not a

---

[3] In any event, Plaintiffs' *Petroplast* quotations about the Chancery Court's jurisdiction come from portions of opinions (including one Apple does not cite) dealing solely with the application of laches to a Delaware contract law claim, not the CUTSA claim. *See* Opp. 3-4.

damages case"—all that is left of Plaintiffs' case are claims for equitable remedies. 4/26 PM Tr. 84:16-20; *see* Dkt. 1798 at 11. Plaintiffs identify no authority holding that laches is unavailable as a defense to requested equitable relief. Their lone case—*Blaser v. State Teachers' Retirement System*, 86 Cal. App. 5th 507 (2022)—concerned a declaratory judgment action by retirees seeking "recovery of money" (i.e., money withheld from pension payments), "which constituted a legal claim," *id.* at 542. It did not involve a request for equitable relief, such as unjust enrichment or laches.

Finally, Plaintiffs fall back on cases holding that laches cannot defeat legal claims under the Copyright and Patent Acts that are timely under the applicable statutes of limitations. *See* Opp. 2-3 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), and *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017)). As Apple has explained, these cases are inapposite both because Plaintiffs' claim is *untimely* under the CUTSA statute of limitations and because *Petrella* and *SCA Hygiene* are rooted in federal separation of powers principles inapplicable to a state statute like CUTSA. *See* Dkt. 1798 at 10-12.[4]

### B. Plaintiffs Unreasonably Delayed Filing Their Claim

As explained (Mem. 8), in assessing delay for the purposes of a laches defense, courts consider "the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit," *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001), and compare it to any applicable statute of limitations, *Loma Linda*, 24 Cal. 4th at 68; *Petroplast Petrofisa Plasticos S.A.*, 2012 WL 3090935, at *14-15. Here, Plaintiffs first accused Apple of attempting to misappropriate its purported trade secrets in January 2014. JTX-2937. They then took no action for nearly *six* years, despite a series of events that put Plaintiffs on notice of facts underlying

---

[4] *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.* does not support Plaintiffs' position (*see* Opp. 3), because it *reversed* the district court for failing to consider laches as an available defense to a Lanham Act cancellation claim. 894 F.3d 1015, 1024-1025 (9th Cir. 2018). In any event, *Pinkette*'s summary of *SCA* and *Patrella* can be distinguished for the same reasons as the underlying cases.

this suit and that they had insisted in 2014 would "necessarily" involve misappropriation. *See* Mem. 8-11; *see also* Dkt. 1798 at 12-15; Dkt. 1809 at 10-17. A six-year delay between a plaintiff knowing a defendant acquired alleged trade secrets and filing a CUTSA claim is long enough to be unreasonable and thus to establish a laches defense. *See Whittaker*, 1980 WL 787350, at *2.

Plaintiffs' opposition ignores that Apple's laches defense involves a series of events and addresses each event as if the others do not exist. But Plaintiffs identify no authority that supports this blinkered approach, which ignores the cumulative effect of the evidence. Regardless, Apple has repeatedly addressed Plaintiffs' well-worn excuses for their inaction in prior briefing. *See* Dkt. 1798 at 12-15; Dkt 1809 at 10-17. Apple quickly summarizes these points below.

**1. The January 2014 Letter.** Plaintiffs do not dispute that they sent Apple a letter in early 2014 accusing Apple of plotting misappropriation and asserting that they would exercise their legal rights if Apple put Dr. Lamego to work on healthcare technology. Opp. 4-5. Instead, Plaintiffs counterintuitively argue that their *failure* to take the promised action constitutes diligence because Apple "lulled [them] into a false sense of security." Opp. 5.[5] That is an odd position given Plaintiffs point to nothing Apple said that would have "lulled" them. In any event, it is black letter law that silence does not indicate consent. *See, e.g.*, *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). Apple was under no duty to respond to Plaintiffs' unfounded demand, so Apple's silence could hardly be construed as confirmation of "Masimo's understanding" about how Apple would employ Dr. Lamego. Opp. 5.

Plaintiffs also argue that "the letter was … [in]sufficient" to trigger the statute of limitations on its own. Opp. 4. Apple's opening brief did not argue that it did. Rather,

---

[5] Plaintiffs' assertion that their 2014 "letter show[ed] Masimo was making 'efforts that are reasonable' to maintain the secrecy of its [purported] trade secrets" is irrelevant. Opp. 5 (quoting Cal. Civ. Code § 3426.1(d)(2)). Reasonable efforts to maintain secrecy is an element of substantive CUTSA liability; it has nothing to do with timeliness, either under laches or CUTSA's statute of limitations.

the letter shows that (1) Plaintiffs raised the same theory of misappropriation that they pressed at trial as early as January 2014 and (2) Plaintiffs believed Dr. Lamego would "necessarily" use or disclose their purported trade secrets if he worked on products that either competed with Plaintiffs' or concerned measurement of physiological information. *See* JTX 2937 at 1-2. Put simply, the letter lays out Plaintiffs' suspicions and identifies a bright line regarding what (in Plaintiffs' erroneous view) would "necessarily" constitute misappropriation. It is the later events that establish that Apple crossed the line set out by Plaintiffs.

**2. Dr. Lamego's Summer 2014 Departure From Apple.** Plaintiffs argue that Mr. Kiani understood "that [Dr.] Lamego left Apple before Apple put him in a position to potentially disclose [Plaintiffs' purported] trade secrets." Opp. 8. But Mr. Kiani never testified that he was told Dr. Lamego left *before* doing anything competitive to Plaintiffs. *See* 4/5 PM Tr. 49-50. Rather, he testified to understanding that Apple asked Dr. Lamego "to do something competitive" to Plaintiffs and, at some later time, Dr. Lamego left. *Id.* At a minimum, Mr. Kiani's testimony makes clear that Plaintiffs received notice, which Mr. Kiani apparently believed reliable, that Apple had asked Dr. Lamego to work on something that would compete with Plaintiffs, which their January 2014 letter (wrongly) insisted "would necessarily involve" misappropriation, JTX 2937 at 2.

Mr. Kiani's testimony dispels the notion that Apple's conduct in 2014 "lulled [Plaintiffs] into a false sense of security." Opp. 5. Moreover, Mr. Kiani's state of mind does not establish whether Plaintiffs Masimo and Cercacor "had … reason to investigate." *Id.* 6. Plaintiffs identify no authority or facts that suggest that their company's CEO's knowledge is co-extensive with that of the corporations'—indeed, such a view contradicts their argument that the knowledge of any employee is attributable to his or her employer. *See* Dkt. 1798 at 15; Dkt 1790-2 at 13.

**3. Apple's 2015 Release of Watch Series 0.**[6] Plaintiffs argue that the Watch releases are irrelevant unless they could have discerned the use of the specific alleged trade secrets at issue in the trial in those Watch models. *See* Opp. 6-7. Plaintiffs are wrong. By the terms of their own January 2014 letter, the Watch's release should have put Plaintiffs on notice that Apple had been developing noninvasive physiological monitoring technology while employing Dr. Lamego, the very scenario Plaintiffs had warned would necessarily constitute misappropriation. *See* JTX 2937 at 2. In any event, Plaintiffs' CUTSA claim accrued when they "ha[d] reason to at least suspect that a type of wrongdoing ha[d] [allegedly] injured them"; "accrual does not wait 'until a plaintiff is in a position to present evidence'" on each element. *Cypress Semiconductor*, 163 Cal. App. 4th at 585-586; *see also* Dkt. 1790-2 at 16-17.

**4. The '052 Patent Application's March 2016 Publication.** Plaintiffs contend that the patent application is entitled to no weight because Apple did not present evidence that Plaintiffs were aware of it until October 2019. Opp. 7-8. But such evidence is not required. Had Plaintiffs diligently pursued their claim by taking the "elementary step of checking all readily available patent applications" from Apple for contributions by Dr. Lamego, *Alamar Biosciences Inc. v. Difco Laboratories Inc.*, 1996 WL 648286, at *5 (E.D. Cal. Feb. 27, 1996), they would have learned in March 2016 that he was listed as an inventor of technology useful for "an electronic device such as a wearable fitness device [that] can be positioned against the skin of a user's wrist … and can obtain therefrom certain physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on." JTX 1239 at 8. Under Plaintiffs' 2014 reasoning (however erroneous it is), Dr. Lamego's work on this patent would have "necessarily involve[d]" misappropriation. JTX 2937 at 2. This was enough to put Plaintiffs on at least inquiry notice of their claim, *see Alamar Biosciences*, 1996

---

[6] Apple also released Watch Series 1 and 2 in September 2016. *See* Dkt. 1798 at 3.

WL 648286, *4-5, which is the start of the chargeable delay for laches, *Danjaq*, 263 F.3d at 952.

Plaintiffs also argue that the patent application is irrelevant because—although it named Dr. Lamego as an inventor—it did not identify his specific contribution. Opp. 8. But Plaintiffs do not say why this would possibly matter given the subject matter of the patent application is noninvasive monitoring of physiological parameters. *See* JTX 1239 at 8. Dr. Lamego's involvement with the project expressly crossed the (spurious) line Plaintiffs drew in their 2014 letter. If anything, the supposed lack of specificity provided more incentive for Plaintiffs to make inquiries into Apple or Dr. Lamego. Instead, Plaintiffs did nothing for almost four more years.

### C.  Plaintiffs Both Acquiesced To Any Purported Misappropriation And Prejudiced Apple

As explained, Plaintiffs' unjustified delay both (1) amounted to "acquiesce[nce] in the act about which [they] complain[]" and (2) "prejudiced [Apple]." *See* Mem 8; *see also Loma Linda*, 24 Cal. 4th at 77. Plaintiffs' responses are unavailing.

With regards to acquiescence, Plaintiffs repeat their meritless arguments that (1) Apple's failure to respond to the January 2014 letter established Apple was complying with Plaintiffs' demands and (2) Mr. Kiani's personal knowledge that Dr. Lamego had left Apple assured him that there was no misappropriation. Opp. 8. These assertions do not negate Apple's evidence of acquiescence for the same reasons they do not negate Apple's evidence of delay. *See supra* pp. 6-10.[7]

Plaintiffs also argue that delay cannot establish acquiescence as a matter of law. *See* Opp. 9-10 (discussing *Pacific Hills Homeowners Assn. v. Prun*, 160 Cal. App. 4th 1557, 1565 (2008)). To be clear, the California Court of Appeal held that "in the right

---

[7] Plaintiffs cite no authority establishing that the scope of Apple's defense is limited by its Memorandum of Contentions of Fact and Law (which quoted *Loma Linda*, *see* Dkt. 1340 at 16). *Cf.* Dkt. 1798 at 5 n.2. Regardless, Plaintiffs cannot claim surprise, *see* Opp. 8; their own cross-motion under Rule 52 applied the *Loma Linda* standard requiring proof of *either* acquiescence *or* prejudice to establish laches. *See* Dkt. 1774 at 5

fact situation, which we do not define, such delays *could* support a finding of laches" via acquiescence. 160 Cal. App. 4th at 1565 (emphasis added). However, in *Pacific Hills*, the defendant homeowner conceded he *knew* the plaintiff had not acquiesced (i.e., because he knew that the plaintiff HOA "appeared to want" him to take a certain action). *Id.* Moreover, Plaintiffs' delay here is substantially worse: rather than three, one-year gaps between objections from the plaintiff (as in *Pacific Hills*), Plaintiffs took *no action* whatsoever for *six years*.[8]

With regards to prejudice, Plaintiffs agree that *Danjaq* establishes the relevant legal standard, but then argue that their exploitation of the nine-year gap between the events at issue and trial was not as prejudicial as the loss of evidence in *Danjaq*, a case in which many witnesses died during a 40-year delay. *See* Opp. 10-11. But it does not follow that Plaintiffs' delay is harmless, and they cite no authority suggesting that these facts fail to establish prejudice. As Plaintiffs acknowledge (Opp. 10), *Danjaq* contemplates that delay can be prejudicial when "witnesses['] … memories have faded." 263 F.3d at 955. Here, a key point in Plaintiffs' opening and closing arguments was that Apple witnesses' memories *had* faded since 2014, and so their testimony should be disregarded in favor of documents standing alone. *See* Mem. 11-12. Plaintiffs simply ignore this argument and thus implicitly concede its correctness.

As for economic prejudice, Plaintiffs argue that Apple was not harmed by their years of delay because—even once suit was brought—Apple did not alter its designs or practices. Opp. 11. But the protective order has prohibited anyone at Apple from seeing any of the alleged trade secrets, so even if Apple had something that could have been changed after Plaintiffs filed suit, no one at Apple would have been permitted to know. In any event, Plaintiffs' argument ignores the long lead-time required for development

---

[8] Plaintiffs also misleadingly cite the *Pacific Hills* court's statement that "it would not have mattered whether [the HOA] was diligent" because the homeowners "began building the gate before they submitted an application for approval." 160 Cal. App. 4th at 1565; Opp. 10. This language addressed the separate issue of whether the defendant could prove laches through the prejudice prong (as opposed to the acquiescence prong).

of Apple Watch technologies. Although none of Apple's products or processes have used any of the alleged trade secrets, had Plaintiffs informed Apple of their allegations in 2014 (after Dr. Lamego's departure), in 2015 (after the release of Watch Series 0), or in 2016 (after the '052 patent's application published), Apple could have taken steps to alleviate Plaintiffs' concerns, such as sequestering specific projects on which Dr. Lamego worked. And while Plaintiffs' *lawsuit* may have been filed in January 2020, the specific alleged trade secrets still at issue entered the litigation much later (e.g., L4 was first concretely defined in November 2020, *see* Dkt. 1738-2 at 6, and L5 was added to the case in April 2022, *see* Dkt. 669).

## CONCLUSION

For the reasons set forth above, Apple respectfully requests that the Court grant judgment in its favor under Rule 52 on its equitable defenses of laches and waiver.

| | | |
|---|---|---|
| 1 | Dated: July 10, 2023 | Respectfully submitted, |

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
       Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 4,093 words, which:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the page limit set by court order.

Dated: July 10, 2023                    Respectfully submitted,

MARK D. SELWYN
JOSEPH J. MUELLER
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
         Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*