MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ITS RULE 52 MOTION FOR JUDGMENT REGARDING APPLE'S EQUITABLE DEFENSES**<br><br>Hearing: July 24, 2023<br><br>Time: 1:30pm |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  JOSEPH J. MUELLER, *pro hac vice*
     joseph.mueller@wilmerhale.com
2  SARAH R. FRAZIER, *pro hac vice*
     sarah.frazier@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  60 State Street
   Boston, MA 02109
5  Tel.: 617.526.6000 / Fax: 617.526.5000

6  NORA Q.E. PASSAMANECK, *pro hac vice*
     nora.passamaneck@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  1225 Seventeenth Street, Suite 2600
   Denver, CO 80202
9  Tel.: 720.274.3152 / Fax: 720.273.3133

10 BRIAN A. ROSENTHAL, *pro hac vice*
     brosenthal@gibsondunn.com
11 GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
12 New York, NY 10166-0193
   Tel.: 212.351.2339 / Fax: 212.817.9539

13 KENNETH G. PARKER, SBN 182911
     Ken.parker@haynesboone.com
14 HAYNES AND BOONE, LLP
   660 Anton Boulevard, Suite 700
15 Costa Mesa, CA 92626
   Tel. 650.949.3014 / Fax: 949.202.3001

Pursuant to this Court's Order dated June 2, 2023, Dkt. 1776, Apple respectfully submits the following proposed findings of fact and conclusions of law in support of its Motion Under Rule 52 For Judgment On Its Equitable Defenses, *see* Dkt. 1753.

## FINDINGS OF FACT

1. On May 3, 2013, representatives from Apple and Plaintiffs met at Apple's headquarters in Cupertino, California to discuss information potentially relevant to a possible business arrangement and/or the integration of Plaintiffs' technology for noninvasive monitoring of physiological parameters into Apple's products. 4/5 PM Tr. 33:7-8; 4/6 AM Tr. 72-76; 4/14 AM Tr. 49:17. Plaintiffs' CEO Joseph Kiani attended the meeting and hoped that it could lead to a joint development or acquisition agreement between Apple and one or both Plaintiffs. 4/6 AM Tr. 75-76; 4/5 PM Tr. 36:13-24. Plaintiffs did not discuss anything they considered to be a trade secret at the meeting. 4/6 AM Tr. 75-76. Apple and Plaintiffs held no further meetings, and Plaintiffs' hoped-for business relationship never developed. *Id.* 73:3-5; 4/14 AM Tr. 107:15-17.

2. On January 9, 2014, Mr. Kiani learned that Dr. Marcelo Lamego resigned his position as Cercacor Laboratories, Inc.'s Chief Technology Officer. *See* 4/5 PM Tr. 45:18-23; JTX 786.

3. On January 24, 2014, Plaintiffs sent a letter to Apple's CEO Tim Cook asserting that "[i]t is difficult to imagine any reason for [the] sequence of events"—which included Apple's hiring of Dr. Michael O'Reilly, Masimo's former Chief Medical Officer, and Dr. Lamego—"other than [that] Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets." JTX-2937 at 1. The letter insisted that Apple should not "employ [Dr.] Lamego in an area that … involve[s] healthcare technology, including mobile health applications and the measurement of physiological information," because it would inevitably result in Dr. Lamego using and disclosing Cercacor trade secrets. *Id.* at 2. According to the letter, any work by Dr.

Lamego in those areas "would necessarily involve the use or disclosure of Cercacor's trade secrets." *Id*.

4. Apple did not respond to Plaintiffs' January 24, 2014 letter. *See* 4/14 AM Tr. 20-21; *see also* Dkt. 1774 at 10.

5. Plaintiffs did not follow up on their January 24, 2014 letter to Apple in any way before filing this lawsuit in January 2020. For example, they did not send another letter or otherwise ask Apple whether Dr. Lamego had in fact worked on healthcare applications and/or measurement of physiological information. *See* Dkt. 1774 at 10; Dkt. 1794-1 at 4-8.

6. Apple employed Dr. Lamego for approximately six months beginning in January 2014. 4/13 PM Tr. 63, 74.

7. Mr. Kiani testified that shortly after Dr. Lamego left Apple, Cercacor employee Cristiano Dalvi "told [Mr. Kiani that] Dr. Lamego left when Apple asked him to do something competitive to [Plaintiffs]." 4/5 PM Tr. 49:22-23.

8. Apple released Apple Watch Series 0 in April 2015. Apple Watch Series 0 has an optical sensor on the back for noninvasive measurement of the user's physiological information, including heart rate. 4/12 AM Tr. 83:24-84:14. The Apple Watch Series 0's heart rate sensor was well publicized. *See id*.

9. Apple released Apple Watch Series 1 and 2 in September 2016. Apple Watch Series 1 and 2 have optical sensors on the back for noninvasive measurement of the user's physiological information, including heart rate. 4/12 AM at 83:24-84:14.

10. On March 3, 2016, the U.S. Patent and Trademark Office published Apple's patent application that ultimately led to U.S. Patent No. 10,078,052. The '052 patent, which is entitled "Reflective Surface Treatments for Optical Sensors," lists Dr. Lamego as one of the inventors. JTX 1239 at 1. The patent describes the claimed technology as useful for "an electronic device such as a wearable fitness device [that] can be positioned against the skin of a user's wrist … and can obtain therefrom certain

physiological data about the user such as heart rate, respiration rate, blood oxygenation, blood pressure, and so on." *id.* at 1:48-53.

11. Plaintiffs have a practice of monitoring patent filings for assertions of intellectual property rights relevant to their technologies and business, for instance before launching a product. 4/5 PM Tr. 11:2-15; 4/6 AM Tr. 77:8-78:3; Dkt. 38-7 at 32.

12. Had Plaintiffs diligently monitored public patent filing databases for filings by Apple or Dr. Lamego, they would have identified the '052 patent in early 2016.

13. If, as Plaintiffs contend, they did not discuss the '052 patent and other relevant Apple patents with counsel until ▮▮▮▮▮▮▮▮—i.e., two-and-a-half years after the patent application published, it was due to their lack of diligence. Dkt. 1561-1 at 13-14.

14. Plaintiffs' inaction cannot be ascribed to ignorance of the likely consequences because Plaintiffs have been continuously advised by counsel on intellectual property issues related to Dr. Lamego's departure for Apple. For instance, Plaintiffs' counsel authored the January 24, 2014 letter to Apple concerning Dr. Lamego's hiring. *See* JTX 2937. Plaintiffs' employees, including Mr. Kiani, also met with their counsel in 2018 and 2019 to discuss certain Apple patents and patent applications, including the '052 patent. *See* Dkt. 1561-1 at 13-14; 4/5 PM Tr. 51:5-16.

## CONCLUSIONS OF LAW

I. **WAIVER**

1. A plaintiff waives any right to obtain relief when it engages in "conduct … so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008). Waiver is established if Plaintiffs acted "'knowing[ly] or intelligent[ly], which means the[y] ha[d] sufficient awareness of the relevant circumstances and likely consequences of [its] decision.'" *Id.* (quoting *Clark v. Cap. Credit & Collection Servs.*, 460 F.3d 1162, 1170-1171 (9th Cir. 2006)).

2. Plaintiffs waived their right to obtain relief for the alleged misappropriation because they did nothing for nearly six years to follow up on their January 2014 warning letter to Apple, despite being put on notice of key facts upon which they eventually sued. Specifically, by 2016, Plaintiffs (1) had expressed overt suspicion that Apple sought to misappropriate their alleged trade secrets; (2) asserted that work by Dr. Lamego on physiological monitoring would "necessarily" lead to misappropriation, JTX 2937; (3) believed Apple had asked Dr. Lamego to compete with Plaintiffs during his brief 2014 employment; (4) were aware of Apple Watch Series 0, 1, and 2, which contained well-publicized optical heart-rate sensors; (5) knew the 2013 meeting with Apple would not lead to a business deal; and (6) could, had they exercised reasonable diligence, have located the published '052 patent application listing Dr. Lamego as inventor. Plaintiffs also had sufficient awareness of the relevant circumstances and consequences of their inaction because they are sophisticated and experienced litigants in intellectual property cases, and they have been continually advised on these issues by their counsel. *See, e.g.*, JTX 2937; Dkt. 1561-1 at 13-14; 4/5 PM Tr. 51:5-16. If Plaintiffs planned to seek relief under CUTSA, they should have filed their claim when they were put on notice of facts that they had asserted would "necessarily" involve misappropriation. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) (plaintiff has a duty to timely file once it could have learned facts sufficient to justify a misappropriation claim).

3. For the reasons stated above, the Court finds that Apple has proven by clear and convincing evidence all required elements of its equitable defense of waiver. Plaintiffs' CUTSA claim for misappropriation of trade secrets is therefore barred by the doctrine of waiver, and they are precluded from obtaining the equitable relief of unjust enrichment or reasonable royalties.

## II.  LACHES

4. Laches is an available defense to a CUTSA claim seeking equitable relief, such as unjust enrichment or reasonable royalties. *See, e.g.*, *Whittaker Corp. v. Execuair*

*Corp.*, 1980 WL 787350, at *2 (C.D. Cal. Mar. 21, 1980), *aff'd*, 736 F.2d 1341 (9th Cir. 1984) (granting summary judgment in defendants' favor on laches defense to CUTSA claim); *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.* 2012 WL 3090935, at *14-15 (Del. Ch. July 31, 2012) (holding that an untimely "claim[] under CUTSA … [is] barred by laches").

5. The doctrine of laches bars relief where a plaintiff "unreasonabl[y] delay[ed]" filing suit or did not diligently pursue its claim and either (1) the plaintiff "acquiesce[d] in the act about which [it] complains" or (2) "prejudice to the defendant result[ed] from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000).

6. For laches, the delay in bringing suit consists of "the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). The reasonableness of such a delay in filing suit under CUTSA is assessed in relation to CUTSA's three-year statute of limitations. See *Johnson*, 24 Cal. 4th at 68; *Petroplast*, 2012 WL 3090935, at *14-15. Here, had Plaintiffs exercised reasonable diligence, they would have known of their claims by no later than March 2016. They did not file this suit until January 9, 2020. That delay was unreasonable.

7. Although Apple did not misappropriate any alleged trade secret, to the extent any alleged trade secret was used in Apple Watch's development, manufacturing, or testing, Plaintiffs acquiesced in such alleged use through their "extended inactivity" with respect to their CUTSA claim and the "lengthy gaps in [Plaintiffs'] contacts with [Apple]." *Pacific Hills Homeowners Assn. v. Prun*, 160 Cal. App. 4th 1557, 1565 (2008).

8. Plaintiffs' delay created "evidentiary prejudice" that unfairly harmed Apple's presentation of its case at trial because Plaintiffs sought to capitalize on their own delay by using it to sow doubts about contrary testimony by Apple witnesses. *Danjaq*, 263 F.3d at 955; *see, e.g.*, 4/5 AM Tr. 44:2-5 (Plaintiffs' counsel arguing in

opening that "e-mails … [are] better than anybody's memory" because "e-mails last," "documents don't lie," and "[t]here is no memory needed for what's going on in these e-mails"); 4/25 Tr. 91:6-9; 4/26 AM Tr. 70:2-4 (Plaintiffs' counsel arguing in closing that "[m]emories fade but the ink doesn't," stressing that the relevant events were "ten years ago"); *id.* 72:22-25; *id.* 86-87 (arguing that, because Apple could not identify who specifically proposed changing the black foam test, that the jury should infer from an email's recipient list that it was Dr. Lamego); *id.* 92:24-25; 4/26 PM Tr. 87:18-24.

9. Plaintiffs' delay also "prejudiced [Apple] because it continued engaging in its existing practices, incurring additional potential liability by reason of [Plaintiffs'] failure to take prompt action." *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). Most notably, without their six-year delay, Plaintiffs would have no viable theory for monetary relief, as their lone unjust enrichment theory relies on Watches sold in 2020-2022. *See, e.g.*, 4/13 AM Tr. 91:19-25. Plaintiffs' delay is particularly inequitable because they have conceded that there is no evidence that Apple knew that Dr. Lamego allegedly used or disclosed Plaintiffs' asserted trade secrets during his six-month employment in 2014. Rather, Plaintiffs' lead counsel argued only that certain employees at Apple "should have known … that trouble would brew" after Dr. Lamego was hired. 4/26 PM Tr. 77:9-11; *see also, e.g.*, *id.* 76:23-77:4, 80:11-16.

10. For the reasons stated above, the Court finds that Apple has proven all required elements of its equitable defense of laches. Plaintiffs' CUTSA claim for misappropriation of trade secrets is therefore barred by the doctrine of laches, and they are precluded from obtaining the equitable relief of unjust enrichment or reasonable royalties.

### III. CONCLUSION

11. The Court therefore grants judgment under Rule 52 in Apple's favor on its equitable defenses of waiver and laches, each of which is a complete defense to the remaining aspects of Plaintiffs' CUTSA claim for misappropriation of trade secrets.

12. Judgment on Plaintiffs' CUTSA claim is hereby entered in Apple's favor.

**IT IS SO ORDERED.**

Date: _____   By: _____
                                  Honorable James V. Selna
                                  United States District Judge

Dated: July 10, 2023          Respectfully submitted,

                              MARK D. SELWYN
                              JOSEPH J. MUELLER
                              AMY K. WIGMORE
                              JOSHUA H. LERNER
                              SARAH R. FRAZIER
                              NORA Q.E. PASSAMANECK
                              THOMAS G. SPRANKLING
                              WILMER CUTLER PICKERING HALE AND DORR LLP

                              BRIAN A. ROSENTHAL
                              GIBSON, DUNN & CRUTCHER LLP

                              KENNETH G. PARKER
                              HAYNES AND BOONE, LLP


                              By: */s/ Mark D. Selwyn*
                                  Mark D. Selwyn

                              *Attorneys for Defendant Apple Inc.*