UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

```
MASIMO CORPORATION, et al.,  )CERTIFIED TRANSCRIPT
                  Plaintiffs, )
      vs.                     )
                              )  SACV-20-00048-JVS
APPLE, INC.,                  )
                  Defendant.  )
-----------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

March 13, 2023

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

2

1    APPEARANCES OF COUNSEL:

2    For the Plaintiffs:

3    **JOSEPH R. RE**
     **STEPHEN C. JENSEN**
4    BENJAMIN A. KATZENELLENBOGEN
     **BRIAN CHRISTOPHER CLAASSEN**
5    KNOBBE MARTENS OLSON & BEAR, LLP
     2040 Main Street, 14th Floor
6    Irvine, CA  92614
     (949) 760-0404
7
     **BRIAN C. HORNE**
8    **KNOBBE MARTENS OLSON & BEAR, LLP**
     **1925 Century Park East, Suite 600**
9    **Los Angeles, CA  90067**
     **(310) 551-3450**
10
     For the Defendant:
11
     **JOSEPH J. MUELLER**
12   SARAH R. FRAZIER
     **WILMER CUTLER PICKERING HALE & DORR, LLP**
13   60 State Street
     **Boston, MA  02109**
14   **(617) 526-6000**

15   **MARK D. SELWYN**
     **WILMER CUTLER PICKERING HALE & DORR, LLP**
16   **2600 El Camino Real, Suite 400**
     **Palo Alto, CA  94302**
17   **(650) 858-6031**

18   **AMY K. WIGMORE**
     **BRITTANY B. AMADI**
19   **WILMER CUTLER PICKERING HALE & DORR, LLP**
     **2100 Pennsylvania Avenue N.W.**
20   **Washington, D.C.  20037**
     **(202) 663-6096**

21

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

|   | 1 | SANTA ANA, CALIFORNIA; MONDAY, MARCH 13, 2023; 11:00 A.M. |
11:00 | 2 | THE CLERK:  Calling Item No. 2, SACV-20-00048-JVS,
11:00 | 3 | Masimo Corporation, et al., versus Apple Inc.
11:00 | 4 | Counsel, please state your appearance for the
11:00 | 5 | record.
11:00 | 6 | MR. RE:  Good morning, Your Honor.  For the
11:00 | 7 | plaintiffs Masimo and Cercacor, Joseph Re from Knobbe
11:00 | 8 | Martens, Irvine California.  With me are three of my
11:00 | 9 | partners, Steve Jensen, Brian Claassen, Ben
11:00 | 10 | Katzenellenbogen, and Brian Horne.
11:00 | 11 | THE COURT:  Good morning.
11:00 | 12 | MR. MUELLER:  Good morning, Your Honor.  Joe
11:00 | 13 | Mueller, Wilmer Hale, on behalf of Apple.  With me today
11:00 | 14 | from Wilmer Hale are a few folks who are going to be arguing
11:00 | 15 | today, so I will just identify them.  Amy Wigmore, Mark
11:00 | 16 | Selwyn, Sarah Frazier, and Brittany Amadi.  I will also note
11:00 | 17 | that Ryan Moran, who is senior in-house counsel at Apple, is
11:00 | 18 | here as well.
11:00 | 19 | THE COURT:  Good morning.
11:00 | 20 | This matter is here for the pretrial conference.
11:00 | 21 | Let's take up the in-limine motions first.
11:00 | 22 | Apple's first with regard to reference to other
11:01 | 23 | litigation.
11:01 | 24 | MS. FRAZIER:  Good morning, Your Honor.  Sarah
11:01 | 25 | Frazier on behalf of Apple.

11:01  1          The parties have agreed to stipulate to Your

11:01  2   Honor's tentative ruling with respect to Apple's first

11:01  3   motion in-limine, so I don't believe there will be any

11:01  4   argument.

11:01  5          MR. RE:  That's correct.

11:01  6          THE COURT:  Apple's second, reference to certain

11:01  7   operations.

11:01  8          MS. FRAZIER:  My colleague, Mark Selwyn, will

11:01  9   address that motion.

11:01  10          MR. SELWYN:  Good morning.  Mark Selwyn for Apple.

11:01  11          Your Honor, Apple submits on the tentative, but

11:01  12   obviously we will be happy to respond to any arguments that

11:01  13   Masimo makes.

11:01  14          THE COURT:  Very good.  Thank you.

11:01  15          Who is going to address this?

11:01  16   Mr. Katzenellenbogen?

11:01  17          MR. KATZENELLENBOGEN:  Yes, Your Honor.  Thank

11:01  18   you.

11:02  19          Your Honor, with regard to the ruling on Motion

11:02  20   In-Limine 2, we are largely submitting on the tentative with

11:02  21   one suggestion, which has to do with a statement on page 2

11:02  22   of the tentative, the third paragraph under the heading B.

11:02  23   and specifically the last sentence of that paragraph which

11:02  24   is in the fourth line where the Court notes:  "However,

11:02  25   should Apple, indeed, 'open the door' to such evidence at

| | | |
|---|---|---|
| 11:02 | 1 | trial, the Court may reconsider its ruling." |
| 11:02 | 2 | We noted that that was mentioned specifically with |
| 11:02 | 3 | regard to that aspect of Motion In-Limine 2. |
| 11:02 | 4 | THE COURT:  Well, it's in fact true with respect |
| 11:02 | 5 | to any motion in-limine.  It just seemed to be a little more |
| 11:02 | 6 | problematic here. |
| 11:02 | 7 | MR. KATZENELLENBOGEN:  That was our understanding |
| 11:03 | 8 | as well.  That was the point we wanted to raise and to |
| 11:03 | 9 | clarify that applies to everything.  I was going to suggest |
| 11:03 | 10 | that the Court could include that same statement in the |
| 11:03 | 11 | concluding paragraphs of both two and three.  If the Court |
| 11:03 | 12 | thinks that's unnecessary, that's fine. |
| 11:03 | 13 | THE COURT:  I think everybody understands the |
| 11:03 | 14 | ground rules. |
| 11:03 | 15 | MR. KATZENELLENBOGEN:  Thank you, Your Honor. |
| 11:03 | 16 | There were a couple of examples of that where I |
| 11:03 | 17 | thought it was most likely to come up, but as long as that's |
| 11:03 | 18 | understood, I think I can skip those, and if they come up at |
| 11:03 | 19 | trial, we can address it then. |
| 11:03 | 20 | THE COURT:  Very good.  Thank you. |
| 11:03 | 21 | Any further comments from the defendants on this |
| 11:03 | 22 | one? |
| 11:03 | 23 | MR. SELWYN:  No, Your Honor. |
| 11:03 | 24 | THE COURT:  Okay.  No. 3, Apple's No. 3. |
| 11:03 | 25 | MS. WIGMORE:  Good morning.  Amy Wigmore for |

11:03   **1**    Apple.

11:03   **2**        Apple submits on Your Honor's tentative ruling on

11:04   **3**    Motion In-Limine No. 3, but we would happy to respond.

11:04   **4**        THE COURT:  Mr. Katzenellenbogen.

11:04   **5**        MR. KATZENELLENBOGEN:  With regard to Motion

11:04   **6**    In-Limine 3, we understood the tentative as observing that

11:04   **7**    on its own there is nothing inherently wrong with Masimo

11:04   **8**    employees leaving Masimo to go to work for Apple or with

11:04   **9**    Apple hiring Masimo employees.  Accordingly, I'm not going

11:04 **10**    to address the part of the tentative that addresses that

11:04 **11**    issue generally.  As set forth in our papers, we thought the

11:04 **12**    number of employees who were hired by Apple was relevant.

11:04 **13**    We understand the arguments and the position in the

11:04 **14**    tentative.

11:04 **15**        What I would like to focus on is a specific of the

11:04 **16**    tentative where I think the tentative may be taking too

11:04 **17**    narrow of a view of what's going to be relevant here.

11:04 **18**    Specifically, that's a part on page 3 of the tentative, and

11:05 **19**    that's the second full paragraph that starts off "Finally."

11:05 **20**    The second sentence which begins on the third line says:

11:05 **21**    "Plaintiffs contend such evidence is relevant to show

11:05 **22**    intent, motive, knowledge and plan to misappropriate

11:05 **23**    plaintiffs' trade secrets."  That's exactly right.  I would

11:05 **24**    add that under Rule 404 it's also relevant to showing

11:05 **25**    preparation, absence of mistake, and lack of accident.

11:05   1          What I'd like to address is the sentence after
11:05   2   that in the tentative which says:  "However, plaintiffs have
11:05   3   not alleged that employees other than Drs. O'Reilly and
11:05   4   Lamego misappropriated trade secrets, and therefore evidence
11:05   5   of Apple's recruitment of other employees is irrelevant."
11:05   6          You know what, Your Honor, I'm sorry.  I
11:06   7   apologize, Your Honor.  This is an argument relating to 2.
11:06   8   I apologize.  I had gotten 2 and 3 confused on this one.
11:06   9   With the Court's indulgence, I would like to formally reopen
11:06  10   2 and address this aspect.
11:06  11          THE COURT:  That's fine.  Strange things happen on
11:06  12   Mondays.
11:06  13          MR. KATZENELLENBOGEN:  Thank you, Your Honor.  I
11:06  14   appreciate that.  I'm not sure -- well, I will continue.
11:06  15          THE COURT:  Okay.
11:06  16          MR. KATZENELLENBOGEN:  That plaintiffs have not
11:06  17   alleged employees other than O'Reilly and Lamego
11:06  18   misappropriated trade secrets, I think there is a little bit
11:06  19   of a disconnect in that the tentative is not addressing the
11:06  20   specifics of plaintiffs' arguments, which had to do with
11:06  21   that Apple created a plan and a strategy of hiring and
11:07  22   recruiting Masimo employees as an alternative to acquiring
11:07  23   or partnering with Masimo.
11:07  24          We understand that the Court's --
11:07  25          THE COURT:  Why can't you make that argument with

| | | |
|---|---|---|
| 11:07 | 1 | respect to the two people who are in contention? |
| 11:07 | 2 | MR. KATZENELLENBOGEN:  I think we can.  There are |
| 11:07 | 3 | just a couple of buckets of evidence, and I was trying to |
| 11:07 | 4 | get a little bit of clarity as to which ones the tentative |
| 11:07 | 5 | views are in and which ones the tentative views are out to |
| 11:07 | 6 | try to head off arguments during trial and to make sure we |
| 11:07 | 7 | understand what is appropriate during opening statements. |
| 11:07 | 8 | Specifically -- so there are categories of |
| 11:07 | 9 | evidence that specifically relate to the recruiting of |
| 11:07 | 10 | O'Reilly and Lamego, and we understand those are in. |
| 11:07 | 11 | There are a number of e-mails and pieces of |
| 11:07 | 12 | evidence in 2013 -- so prior to Lamego starting in |
| 11:08 | 13 | January of 2014 at Apple -- that relate to Apple's plan to |
| 11:08 | 14 | engage in smart recruiting as an alternative to partnering |
| 11:08 | 15 | with Masimo or acquiring Masimo.  We understand that those |
| 11:08 | 16 | are also in and are fair game. |
| 11:08 | 17 | Where the question came was with respect to |
| 11:08 | 18 | e-mails that maybe after Lamego started in January of 2014 |
| 11:08 | 19 | that nonetheless discuss or evidence Apple's plan, Apple's |
| 11:08 | 20 | strategy, to recruit Masimo employees for the purpose of |
| 11:08 | 21 | obtaining Masimo's technical information, Masimo trade |
| 11:08 | 22 | secrets, as an alternative to entering into a business deal. |
| 11:08 | 23 | And there were two specific examples that I wanted |
| 11:08 | 24 | to address.  And this will -- the first has to do with |
| 11:09 | 25 | Exhibit S to the motion, which related to the recruiting of |

| | | |
|---|---|---|
| 11:09 | 1 | a person named Andy Gamelin.  I have copies of the exhibits |
| 11:09 | 2 | if that would be easier for the Court. |
| 11:09 | 3 | THE COURT:  Sure. |
| 11:09 | 4 | (Document handed to the Court) |
| 11:09 | 5 | MR. KATZENELLENBOGEN:  May I approach, Your Honor? |
| 11:09 | 6 | THE COURT:  You may. |
| 11:09 | 7 | MR. KATZENELLENBOGEN:  Specifically, with regard |
| 11:09 | 8 | to Exhibit S, in May 2014 -- this relates to the interviews |
| 11:10 | 9 | of Andy Gamelin and Apple's engineer Ueyn Block -- |
| 11:10 | 10 | interviewed Mr. Gamelin and asked him specific questions |
| 11:10 | 11 | about highly confidential Masimo trade secrets.  It's |
| 11:10 | 12 | internally on pages 525 and 526 under the heading |
| 11:10 | 13 | "Technical" under Mr. Block's evaluation.  It talks about |
| 11:10 | 14 | how -- "I asked how one chooses wavelengths for the Masimo |
| 11:10 | 15 | rainbow sensor as a function of what analyte you are trying |
| 11:10 | 16 | to measure."  So he was trying to illicit specific |
| 11:10 | 17 | technical, confidential information and -- |
| 11:10 | 18 | THE COURT:  It was specific to that? |
| 11:10 | 19 | MR. KATZENELLENBOGEN:  Yes, and how Masimo chooses |
| 11:10 | 20 | those wavelengths, although it is not specifically the trade |
| 11:10 | 21 | secrets asserted here, in combination with what was asked in |
| 11:10 | 22 | the next paragraph.  And I think when you juxtapose that to |
| 11:11 | 23 | Exhibit U you will see where I'm going with this and why we |
| 11:11 | 24 | believe it's relevant to this overall plan. |
| 11:11 | 25 | In the next paragraph on the next page, page 526, |

11:11  1    the evaluation says:  "With Masimo's product, he seemed to

11:11  2    know that there were specs, and he helped drive the product

11:11  3    to meet those specs, but he was not able to demonstrate

11:11  4    whether he had much insight of where the specs came from."

11:11  5    As a result, at the end, Mr. Block recommended against

11:11  6    hiring Mr. Gamelin.

11:11  7             We are going to contrast this with Exhibit U,

11:11  8    which is an evaluation of an interview of Cornelius Raths,

11:11  9    another former employee.  The part I would like to highlight

11:11  10   and draw the Court's attention to is on internally numbered

11:11  11   page 585, and it's an evaluation by someone whose name I

11:12  12   believe is Shonn.  I apologize that the formating didn't

11:12  13   quite come through here.  But under the heading "Technical

11:12  14   Ability," there are questions about Masimo's SedLine

11:12  15   technology which uses EEG to measure the depths of

11:12  16   anesthesia.

11:12  17            Starting at the end of the third line, the

11:12  18   evaluation says:  "He went through the source of signal and

11:12  19   explained how he developed the algorithm for detecting depth

11:12  20   of propofol anesthesia."  So there we have an example of

11:12  21   Apple asking how the algorithm itself for doing this was

11:12  22   created.  Mr. Raths disclosed that in an interview, and as a

11:12  23   result, the recommendation was to hire him.

11:12  24            We believe at least with respect to interviews and

11:12  25   the evaluations of Mr. Gamelin and Mr. Raths those should be

11:13   1   fairly part of the bucket, shall we say, of evidence that

11:13   2   relates to what we assert was part of Apple's plan for smart

11:13   3   recruiting.

11:13   4          So we think that even under the tentative as it

11:13   5   currently states anything prior to, I guess, January 2014

11:13   6   when Dr. Lamego was hired would be in.  But we think that

11:13   7   even though we are not going to attempt to introduce

11:13   8   evidence regarding all 22 people that were hired or all of

11:13   9   that information, at least with respect to these two, we

11:13   10  believe this evidence should be able to come in.  And we can

11:13   11  present this as part of what we understand and what we are

11:13   12  going to assert was Apple's plan for smart recruiting.

11:13   13  Apple can dispute that.

11:13   14         We would request that the tentative be changed and

11:14   15  specifically on page 3, the last sentence of that second

11:14   16  paragraph that we were discussing.  I would submit that that

11:14   17  should be changed to say something more like:  Absent

11:14   18  allegations that Apple's recruiting of a particular former

11:14   19  employee shows or was part of Apple's plan or strategy to

11:14   20  acquire Masimo's trade secrets, evidence of his or her

11:14   21  hiring may be irrelevant.  As long as the evidence relates

11:14   22  to this plan of smart recruiting, we think it should come

11:14   23  in.

11:14   24         THE COURT:  Okay.  Mr. Selwyn.

11:14   25         MR. SELWYN:  Thank you.  Mark Selwyn for Apple.

11:14   1           I think, Your Honor, that I can be brief because

11:14   2   the Court already considered and addressed in the tentative

11:14   3   the arguments that were made.  The tentative correctly finds

11:14   4   that evidence of Apple's recruitment of hiring of employees

11:15   5   other than Dr. Lamego and Dr. O'Reilly is irrelevant, and

11:15   6   further to quote Your Honor's tentative:  "Employees are not

11:15   7   only permitted but encouraged to move freely from one

11:15   8   company to another under at-will employment."

11:15   9           What they are now trying to do is go outside the

11:15  10   alleged trade secrets and essentially create a trial within

11:15  11   a trial as to things that were not alleged.  Plaintiffs are

11:15  12   attempting to justify this under Rule 404 and under Rule

11:15  13   406.  But evidence of actual hiring --

11:15  14           THE COURT:  It's not the evidence of hiring.  It's

11:15  15   not the fact of interviewing.  The passages which

11:15  16   Mr. Katzenellenbogen drew my attention to are at least

11:15  17   susceptible to the inference that they were probing for

11:15  18   trade secret information.  Wouldn't you agree with at least

11:15  19   that, that those passages are susceptible of being

11:16  20   interpreted as fishing for confidential information?

11:16  21           MR. SELWYN:  Not at all, because the allegation of

11:16  22   trade secret misappropriation pertains to Dr. O'Reilly and

11:16  23   to Dr. Lamego, and what they have pointed to is not

11:16  24   probative of all --

11:16  25           THE COURT:  Isn't it potentially probative to a

| | | |
|---|---|---|
| 11:16 | 1 | plan or scheme? |
| 11:16 | 2 | MR. SELWYN:  No, because the allegation relates to |
| 11:16 | 3 | Dr. Lamego and Dr. O'Reilly. |
| 11:16 | 4 | THE COURT:  Do they not allege an overall plan to |
| 11:16 | 5 | go beyond Lamego and O'Reilly to gather information? |
| 11:16 | 6 | MR. SELWYN:  No.  They had to recite specific |
| 11:16 | 7 | trade secrets, and those alleged trade secrets pertained to |
| 11:16 | 8 | Dr. Lamego and Dr. O'Reilly. |
| 11:16 | 9 | THE COURT:  That's fine, but if they are out there |
| 11:16 | 10 | generally fishing for trade secrets, whether it's the same |
| 11:16 | 11 | trade secrets they fished for with Lamego or O'Reilly, it's |
| 11:16 | 12 | relevant if it potentially shows a pattern. |
| 11:17 | 13 | MR. SELWYN:  I don't think so, Your Honor.  It's |
| 11:17 | 14 | well after the time of the allegations that pertain to |
| 11:17 | 15 | Dr. O'Reilly and to Dr. Lamego.  And with respect to those |
| 11:17 | 16 | two gentlemen, there are specific alleged secrets that are |
| 11:17 | 17 | recited.  So it's not probative -- |
| 11:17 | 18 | THE COURT:  Can't patterns be shown by conduct |
| 11:17 | 19 | before and after the relevant event? |
| 11:17 | 20 | MR. SELWYN:  In some instances but not in this |
| 11:17 | 21 | instance. |
| 11:17 | 22 | THE COURT:  Why not in this instance? |
| 11:17 | 23 | MR. SELWYN:  Because in this instance what's |
| 11:17 | 24 | alleged are particular trade secrets with respect to those |
| 11:17 | 25 | two individuals. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:17  1          THE COURT:  Sir, you are missing the point.  If
11:17  2   they are out there fishing generally for trade secrets, why
11:17  3   is it excluded because they weren't fishing for the same
11:17  4   trade secrets they were fishing for with O'Reilly and
11:17  5   Lamego?
11:17  6          MR. SELWYN:  One, because there is no allegation
11:17  7   that they are in fact trade secrets that are at issue in the
11:17  8   e-mail that was just shown to you.  Those aren't included in
11:17  9   any disclosure of any trade secrets that Masimo has made in
11:17  10  this case.
11:18  11         THE COURT:  Okay.
11:18  12         MR. SELWYN:  The other point I would make, Your
11:18  13  Honor, is that California law provides employees with broad
11:18  14  freedom to move between employers and to seek employment
11:18  15  within their given profession.  So the suggestion that Apple
11:18  16  hiring people who once worked elsewhere which is in their
11:18  17  words "damning" shows this is exactly the type of evidence
11:18  18  that should be precluded under Rule 403.
11:18  19         THE COURT:  The Court agrees with you generally on
11:18  20  that, but when we get down to specifics, the fact of freedom
11:18  21  of movement doesn't trump leaving with a trade secret and
11:18  22  divulging it.
11:18  23         MR. SELWYN:  But the things that they are pointing
11:18  24  to in these other e-mails are not things they have ever
11:18  25  suggested are Masimo trade secrets.  Essentially, they are

11:18  1  trying to back door in new alleged trade secrets through

11:18  2  these e-mails.  It's just an inference to apply to

11:18  3  Dr. Lamego and Dr. O'Reilly.

11:18  4          THE COURT:  Thank you.

11:18  5          Mr. Katzenellenbogen.

11:18  6          MR. KATZENELLENBOGEN:  Briefly, Your Honor.  I

11:19  7  think the Court's comments got this exactly right.  Rule 404

11:19  8  specifically addresses 404(b), other bad acts, so inherently

11:19  9  they are not --

11:19  10          THE COURT:  The same bad acts.

11:19  11          MR. KATZENELLENBOGEN:  Exactly.  We are not going

11:19  12  to be litigating whether those specific issues are or are

11:19  13  not trade secrets exactly as the Court commented.  The issue

11:19  14  is the inference that when they are asking for specific

11:19  15  technical information that may or may not be proprietary,

11:19  16  that that supports the allegations that as Apple itself said

11:19  17  they were engaging in smart recruiting as an alternative to

11:19  18  a business deal.

11:19  19          The rest of the packet I handed up had to do with

11:19  20  e-mails that were earlier in the 2013 timeframe regarding

11:19  21  this plan or strategy.  I'm guessing that the Court doesn't

11:19  22  want me to go through those now.  Therefore, the Court can

11:20  23  read them.

11:20  24          THE COURT:  Okay.  I want to take one more look at

11:20  25  this one.

11:20   1           So let's move to 3.  Do you still want to address

11:20   2   that?

11:20   3           MR. KATZENELLENBOGEN:  I think that I have my

11:20   4   notes reversed.  Give me one moment.

11:20   5           Yes, with regard to Motion In-Limine 3, my prior

11:20   6   statement that we largely submit on that is correct, and the

11:20   7   caveat to that is with the note that to the extent Apple

11:20   8   raises related issues opens the door, particularly with

11:20   9   regard to issues of corporate culture or formal policies

11:20   10  regarding the intellectual property rights of others -- if

11:21   11  Apple attempts to introduce that type of affirmative

11:21   12  evidence, then we should be able to introduce contrary

11:21   13  evidence that Apple has an unwritten policy of encouraging

11:21   14  or at least turning the other way with respect to copying or

11:21   15  stealing the good ideas of others.

11:21   16          THE COURT:  In other words, on the present record,

11:21   17  the Court is correct in granting the motion?

11:21   18          MR. KATZENELLENBOGEN:  Your Honor, I would

11:21   19  probably phrase it as we disagree for the reasons set forth

11:21   20  in our briefing, but we understand, and I'm not going to

11:21   21  waste the Court's time arguing what I think is an understood

11:21   22  caveat to the order.

11:21   23          THE COURT:  Okay.

11:21   24          MS. WIGMORE:  We do have a concern about the

11:21   25  statement just made about a formal policy.  To the extent

11:21    1    Apple introduces evidence of its formal policy that

11:21    2    employees have to sign that make clear that they can't use

11:21    3    confidential information from a prior employer, that would

11:22    4    not be opening the door to the evidence that has been at

11:22    5    issue in this motion.

11:22    6            The evidence at issue, as the Court recognized, is

11:22    7    irrelevant to the claims in this case.  And that includes

11:22    8    antecdotes from years before this litigation and the facts

11:22    9    relating to it that began, statements by Steve Jobs who

11:22   10    admittedly on the plaintiffs' side had nothing to do with

11:22   11    any interactions involving this case.

11:22   12            So to the extent we put in formal statements of

11:22   13    the company about how intellectual property should be

11:22   14    handled, that shouldn't open the door to statements about

11:22   15    flags that flew over the company many years ago allegedly

11:22   16    that have not been authenticated or explained by any witness

11:22   17    that has been deposed in the case.  So we do not agree that

11:22   18    that would open the door to the type of inflammatory

11:22   19    irrelevant evidence that they seek to introduce.

11:22   20            THE COURT:  We have to see what evidence comes in,

11:22   21    and obviously we can raise this issue, if at all, outside

11:23   22    the presence of the jury.

11:23   23            MS. WIGMORE:  That's fine with us, Your Honor, as

11:23   24    long as it's raised outside the presence of the jury and

11:23   25    does not inflame the jury before we have a chance to address

11:23  1   it.

11:23  2            THE COURT:  No doors are opened unless the Court

11:23  3   says they have been opened.  That determination is made

11:23  4   outside the presence of the jury.

11:23  5            MS. WIGMORE:  Thank you, Your Honor.

11:23  6            THE COURT:  Let's turn to Masimo's motions.

11:23  7            MR. RE:  Your Honor, there is a No. 4.  Apple had

11:23  8   a Motion In-Limine No. 4 concerning the confidentiality

11:23  9   agreements.  Masimo submits and will respond.

11:23  10           MS. AMADI:  Good morning.  Brittany Amadi on

11:24  11   behalf of Apple.

11:24  12           There are a few issues we wanted to raise with

11:24  13   respect to the tentative ruling on No. 4.  First, Your Honor

11:24  14   suggested in the tentative that Apple's Motion In-Limine No.

11:24  15   4 was untimely because it wasn't raised at the summary

11:24  16   judgment stage.  We would respectfully submit we disagree

11:24  17   with the timeliness filing on three grounds.

11:24  18           First, none of the claims at issue assert a breach

11:24  19   of contract claim against Apple, nor could they because

11:24  20   Apple is not party to the agreements that are at issue with

11:24  21   respect to MIL No. 4.  So there was no reason for Apple to

11:24  22   raise the validity of those agreements at the summary

11:24  23   judgment stage.  They do not address a claim or defense.

11:24  24           This is really an evidentiary issue where the

11:24  25   plaintiffs are seeking to raise these confidentiality

11:24  1   agreements as evidence to support aspects of their case.  So
11:24  2   we believe it's properly raised at the in-limine stage
11:25  3   because we believe that evidence is unduly prejudicial and
11:25  4   not relevant given the invalidity of the provisions at issue
11:25  5   and should be excluded.

11:25  6          Second, there is no requirement for a party to
11:25  7   move for summary judgment on any issue, including issues of
11:25  8   law, at the summary judgment stage in order to preserve that
11:25  9   issue.  So to the extent that Your Honor does not address
11:25  10  the validity of the contractual provision of that issue at
11:25  11  this stage, we believe that issue is still one that will
11:25  12  have to be addressed by the Court going forward because it's
11:25  13  relevant, as we explained in our papers, to the issues that
11:25  14  the parties have raised in the case.

11:25  15         And then the third point to make here is that the
11:25  16  admissibility of the agreements is properly decided by Your
11:25  17  Honor as an issue of law, and we think it's proper to
11:25  18  address that issue at this stage of the case before trial.
11:25  19  We believe there is a suggestion in the tentative that Your
11:25  20  Honor did not want a mini-trial regarding the validity of
11:26  21  those provisions, the confidentiality provisions, but we do
11:26  22  think it's important to address those issues.  And to the
11:26  23  extent that the Court allows those agreements to come into
11:26  24  evidence, Apple will need to be able to respond and to point
11:26  25  out that those provisions are invalid under California law.

11:26   1   So whether it's now or at a later stage as we head into

11:26   2   trial, we believe that will be an issue that the Court will

11:26   3   need to address.

11:26   4              THE COURT:  I agree with that, but it seems to me

11:26   5   you're asking for a substantive ruling of the law, and

11:26   6   that's not what motions in-limine are for.

11:26   7              MS. AMADI:  We think in this case --

11:26   8              THE COURT:  Why is this case the exception in that

11:26   9   regard?

11:26   10             MS. AMADI:  In this case, we are not asking for a

11:26   11  judgment on invalidity on a contractual claim here.  There

11:26   12  is no contractual claim at issue unlike the True Wearables

11:26   13  case where there was a breach of contract asserted.  There

11:26   14  is no breach of contract claim here likely for the reason

11:27   15  that the provisions at issue are invalid under California

11:27   16  law, so there was no reason for Apple to seek at the summary

11:27   17  judgment stage invalidation of those provisions.  Instead,

11:27   18  the plaintiffs are attempting to use those agreements as

11:27   19  evidence to support the case when the provisions at issue

11:27   20  are invalid and could not be breached.

11:27   21             Your Honor, I think the other issue that we wanted

11:27   22  to raise is some clarification on the scope of Your Honor's

11:27   23  ruling.  While the Court found that the confidentiality

11:27   24  provisions are relevant to the plaintiffs' reasonable

11:27   25  efforts to protect the alleged trade secrets in this case,

| 11:27 | 1 | we have a concern that the plaintiffs will actually seek to |
|---|---|---|
| 11:27 | 2 | use those agreements for additional purposes and more |
| 11:27 | 3 | broadly than what Your Honor discussed in the tentative |
| 11:27 | 4 | ruling. |
| 11:27 | 5 | Specifically, we believe that plaintiffs may |
| 11:27 | 6 | suggest that either Dr. O'Reilly or Dr. Lamego breached the |
| 11:28 | 7 | confidentiality provisions at issue in those agreements, and |
| 11:28 | 8 | that that breach constitutes an acquisition of the trade |
| 11:28 | 9 | secrets by improper means.  We think that that would be |
| 11:28 | 10 | highly prejudicial here because the provisions themselves |
| 11:28 | 11 | are invalid, and there has been no allegation of a breach |
| 11:28 | 12 | separate from the trade secret misappropriation allegations |
| 11:28 | 13 | in this case. |
| 11:28 | 14 | So to the extent that the plaintiffs seek to rely |
| 11:28 | 15 | on the agreements for that purpose, we think it would be |
| 11:28 | 16 | highly prejudicial to allow them to do that without Apple |
| 11:28 | 17 | having an opportunity to address the invalidity of those |
| 11:28 | 18 | provisions. |
| 11:28 | 19 | Second, Your Honor indicated in the tentative |
| 11:28 | 20 | ruling that you may restrict the questions that can be asked |
| 11:28 | 21 | related to the agreement.  We think that if they are |
| 11:28 | 22 | introduced into the record, Apple should have the |
| 11:28 | 23 | opportunity to show that the provisions are not valid under |
| 11:28 | 24 | California law.  That goes directly to whether or not the |
| 11:28 | 25 | plaintiffs took reasonable efforts to protect the alleged |

11:29    1    trade secrets, but also to the extent the plaintiffs seek to

11:29    2    rely on those provisions to assert improper means, it would

11:29    3    go directly to that issue as well.  So Apple would need to

11:29    4    address that issue at trial if the agreements are permitted

11:29    5    to come in before the jury.

11:29    6         Relatedly, the tentative mentioned that there may

11:29    7    be cross-examination of Mr. Kiani to address that issue.  We

11:29    8    don't think that that would be sufficient for a couple of

11:29    9    reasons.  First, Mr. Kiani admitted only that the

11:29   10    non-compete provisions of the agreement are invalid, and

11:29   11    that's really not disputed.  There's no real dispute that

11:29   12    the non-compete provisions of the agreement are invalid

11:29   13    under California law under the Edwards case.

11:29   14         THE COURT:  16600.

11:29   15         MS. AMADI:  Exactly.  What the issue here is that

11:29   16    the confidentiality provisions, which are the ones that

11:29   17    plaintiffs are going to try to leverage either for the

11:30   18    reasonable efforts issue or for the improper means issue --

11:30   19    those provisions we believe are also invalid.  So

11:30   20    cross-examination of a fact witness who is not a lawyer to

11:30   21    get at the invalidity of those provisions we don't believe

11:30   22    will be sufficient.

11:30   23         So we just wanted to raise those issues because we

11:30   24    think this issue will come back before, Your Honor, as we

11:30   25    head into trial or during trial, and to the extent that

11:30  1   those agreements come in, Apple will need the ability to

11:30  2   explain why they are invalid under California law.

11:30  3           If Your Honor would like me to, I can address the

11:30  4   merits of the invalidity issue, which is addressed in our

11:30  5   papers, but we submit as explained in our papers that under

11:30  6   the Brown decision, the Court of Appeals decision in

11:30  7   California, the agreements are invalid.  In that case, as

11:30  8   explained in our papers, there was a confidentiality

11:30  9   provision at issue.  There was a definition of "confidential

11:30  10  information" that was quite broad but was narrower than the

11:31  11  confidentiality provision that we have here, and the Court

11:31  12  held that that provision was invalid under 16600.

11:31  13          We think the same should apply here where we have

11:31  14  a confidentiality provision that is not even as narrow as

11:31  15  the one at issue in the Brown case and is much broader.  Any

11:31  16  information that Masimo may consider to be confidential we

11:31  17  think violates 16600 under Brown.  For that reason, we think

11:31  18  that the provisions should not come into evidence and are in

11:31  19  fact invalid under California law.

11:31  20          THE COURT:  Thank you.

11:31  21          Mr. Re.

11:31  22          MR. RE:  I don't know where to begin.  First of

11:31  23  all, it sure sounds like summary judgment to me.

11:31  24          Second of all, what is confusing about this issue

11:31  25  is Apple maintained in the Pretrial Conference Order that

11:31   1   their unclean hands defense should go to the jury, and the

11:32   2   sole basis for the unclean hands defense turns on the

11:32   3   validity of these agreements.

11:32   4         So it's not true that the agreements, as counsel

11:32   5   said, don't relate to any claim or defense.  It is the sole

11:32   6   basis of Apple's unclean hands defense, which they think

11:32   7   goes to the jury which we obviously disagree.

11:32   8         This entire issue has gotten off the rails because

11:32   9   this shouldn't even be a jury issue.  But of course the

11:32   10  agreements are part of Masimo's attempts to implement

11:32   11  reasonable precautions to protect the confidential

11:32   12  information, and they are of course relevant for that

11:32   13  purpose and that purpose alone, which is why they will be

11:32   14  offered.

11:32   15        Your Honor, you are correct.  There is no breach

11:32   16  of contract claims in the case.  So what I heard is another

11:32   17  reason why this unenforceability issue should be an

11:32   18  equitable issue for the Court, if at all, if they are going

11:32   19  to maintain this unclean hands defense.

11:32   20        I do want to correct the record.  There is no

11:33   21  Kiani admission.  I looked at that testimony.  What Mr.

11:33   22  Kiani said is that the agreements can't be judged like that

11:33   23  because they're used around the world and state by state.

11:33   24  So he obviously declined to pontificate on what the law is

11:33   25  in any state.  But this, again, goes to the merits of

11:33    1    Apple's unclean hands defense which shouldn't even go to the

11:33    2    jury, this whole unenforceability issue.

11:33    3            We think the tentative is actually correct.  They

11:33    4    should come in for what their probative for.  There

11:33    5    probative to show reasonable precautions to protect trade

11:33    6    secrets.  To the extent they want to preserve this issue,

11:33    7    they can preserve it if it didn't require a summary

11:33    8    judgment, but it certainly can't be knocked out at this

11:33    9    stage as we are heading into trial.

11:33   10            With that, I have nothing further.

11:33   11            THE COURT:  Ms. Amadi.

11:33   12            MS. AMADI:  I would like to briefly respond on the

11:33   13    unclean hands issue.  Counsel is right that it is the

11:34   14    invalidity of their provisions that are at issue in our

11:34   15    unclean hands defense.  I think that further emphasizes why

11:34   16    Apple will need -- if the agreements come into the record

11:34   17    before the jury, Apple would need to be able to explain the

11:34   18    provisions that the plaintiffs are relying on for aspects of

11:34   19    their claims in this case that are invalid under California

11:34   20    law, and we believe they are under the governing case law.

11:34   21            THE COURT:  Thank you.  I will take one more look

11:34   22    at this.

11:34   23            Let's turn to Masimo's motion.

11:34   24            MR. RE:  We would submit other than to clarify

11:34   25    what the Court wanted from the parties with regard to the

| | | |
|---|---|---|
| 11:34 | 1 | last sentence on page 11. |
| 11:34 | 2 | THE COURT:  You mean with regard to sealing? |
| 11:35 | 3 | MR. RE:  No.  The dispute with regard to the |
| 11:35 | 4 | narrowing of the issues in Section C, the last sentence of |
| 11:35 | 5 | Section C prior to the astericks where it says:  "To the |
| 11:35 | 6 | extent there is a dispute, the parties must explain the |
| 11:35 | 7 | dispute at today's hearing so the Court can resolve it |
| 11:35 | 8 | before trial." |
| 11:35 | 9 | This really goes to an issue that is in the |
| 11:35 | 10 | Pretrial Conference Order, and it relates to the differences |
| 11:35 | 11 | between Exhibit A and Exhibit B which are attached to the |
| 11:35 | 12 | Pretrial Conference Order that the parties submitted. |
| 11:35 | 13 | It appears from looking at Exhibit B, which is |
| 11:35 | 14 | Apple's version of the trade secrets, they are maintaining |
| 11:35 | 15 | that the documents should contain withdrawn trade secrets. |
| 11:35 | 16 | And they justify that by saying value, importance, and |
| 11:35 | 17 | appropriateness is a collective aggregation of all of the |
| 11:35 | 18 | preceding trade secrets.  Therefore, the withdrawn trade |
| 11:36 | 19 | secrets need to be shown on the document.  That's the |
| 11:36 | 20 | argument that they have given us. |
| 11:36 | 21 | I disagree with that for many reasons.  First of |
| 11:36 | 22 | all, Apple always knew that the -- let's call it the |
| 11:36 | 23 | dependent claims, so to speak -- the dependent value, |
| 11:36 | 24 | importance, and appropriateness of the preceding trade |
| 11:36 | 25 | secrets was with regard to each and every one individually. |

11:36   1   Apple maintained that position as far back as 2020.  They

11:36   2   even maintained that position on summary judgment.  They

11:36   3   moved for summary judgment on the value, importance, and

11:36   4   appropriateness trade secret as being vague and undefined,

11:36   5   and they lost on that on summary judgment.

11:36   6          But even then when they briefed the issue to the

11:36   7   Court -- and I have the briefs -- they acknowledged that we

11:36   8   were attempting -- they excoriated us for attempting to

11:36   9   double the number of trade secrets.  Well, it would only be

11:36   10  doubling if the value, importance, and appropriateness

11:37   11  applies to each one individually.

11:37   12         The other thing I wanted to raise is the fact that

11:37   13  their Exhibit B includes other withdrawn trade secrets that

11:37   14  don't even relate to value, importance, and appropriateness.

11:37   15  The last page, the last sentence, of their Exhibit B talks

11:37   16  about plaintiffs withdrawing all of the asserted, alleged

11:37   17  oxygen saturation trade secrets and alleged hospital

11:37   18  interaction trade secrets, and that doesn't relate to value,

11:37   19  importance, or appropriateness at all.

11:37   20         So for some reason, they are insisting that the

11:37   21  list of trade secrets, whether it goes to the jury or not --

11:37   22  that whatever list of trade secrets that's going to used at

11:37   23  this trial, they are insisting that it include all of the

11:37   24  withdrawn trade secrets.  I don't see why.  That's the

11:37   25  disagreement we are having.

| | |
|---|---|
| 11:37 | 1 |
| 11:38 | 2 |
| 11:38 | 3 |
| 11:38 | 4 |
| 11:38 | 5 |
| 11:38 | 6 |
| 11:38 | 7 |
| 11:38 | 8 |
| 11:38 | 9 |
| 11:38 | 10 |
| 11:38 | 11 |
| 11:38 | 12 |
| 11:38 | 13 |
| 11:38 | 14 |
| 11:38 | 15 |
| 11:38 | 16 |
| 11:39 | 17 |
| 11:39 | 18 |
| 11:39 | 19 |
| 11:39 | 20 |
| 11:39 | 21 |
| 11:39 | 22 |
| 11:39 | 23 |
| 11:39 | 24 |
| 11:39 | 25 |

1           MR. MUELLER:  Your Honor, just briefly,

2   Ms. Wigmore will address the particular argument that Mr. Re

3   just raised.  As Mr. Re just mentioned, that is an argument

4   that is relevant to the joint pretrial order.

5           We have a couple more things on Motion In-Limine

6   No. 1, but for purposes of joining issue immediately,

7   Ms. Wigmore can take those up right now.

8           THE COURT:  Okay.  Thank you.

9           MS. WIGMORE:  Your Honor, I believe there is some

10  confusion as to the purpose of Exhibit A and Exhibit B which

11  I believe I can clarify.  Apple is not taking the position

12  that the jury should be made aware of the abandoned trade

13  secrets, but we do have concerns about how Masimo and

14  Cercacor are planning to present the trade secrets to the

15  jury.  The purpose of Exhibit B was to preserve for the

16  Court and for appeal the fact that there were these

17  initially pled trade secrets.

18          In terms of what the jury should be told, our

19  position is that the plaintiffs' proposed formulation in

20  Exhibit A is unfair and inaccurate.  The reason for that is

21  because they have renumbered the trade secrets in a way that

22  is different from their 2019 210 statement, and they have

23  changed them substantively by taking that set list that was

24  the subject of our summary judgment and putting it in

25  different places using A's, B's and C's.

| 11:39 | 1 | I think if the Court would like we could look at |
| 11:39 | 2 | Exhibit A, because what they have done is they only have a |
| 11:39 | 3 | few remaining trade secrets, alleged secrets, in each |
| 11:39 | 4 | category -- the categories are D&D -- I won't use the terms |
| 11:39 | 5 | in open court -- LP and BM. |
| 11:39 | 6 | The way that the 2019, 210 statement was written |
| 11:40 | 7 | is there were a number of alleged secrets in those |
| 11:40 | 8 | categories, and at the end, there was this VIA -- value, |
| 11:40 | 9 | importance, and appropriateness -- secret which the Court |
| 11:40 | 10 | found in the summary judgment motion that we just argued |
| 11:40 | 11 | that that was applying to a set list.  It was at the end of |
| 11:40 | 12 | the list.  There was not an individual VIA secret for each |
| 11:40 | 13 | independently asserted secret.  It was a category at the end |
| 11:40 | 14 | that applied to the set list.  At the beginning, the list |
| 11:40 | 15 | was longer.  So for the D&D category, there were 15 alleged |
| 11:40 | 16 | secrets, and then No. 16 was this VIA category. |
| 11:40 | 17 | What the plaintiffs now propose to do in their |
| 11:40 | 18 | Exhibit A is to create a list where the remaining alleged |
| 11:40 | 19 | secrets are listed as, for example, 1A, and then for 1B they |
| 11:40 | 20 | refer to the value, importance, and appropriateness of |
| 11:40 | 21 | alleged Secret 1.  Then for D&D they moved to alleged Secret |
| 11:41 | 22 | 3, and they have a 3A for what that secret was.  And then |
| 11:41 | 23 | they add a VIA for category 3B, and they do the same with |
| 11:41 | 24 | alleged Secret 10. |
| 11:41 | 25 | Our position is they can't now take each of their |

11:41　　**1**　alleged remaining secrets and add a VIA secret for each

11:41　　**2**　individual one.  That's not how they framed their alleged

11:41　　**3**　secrets in their 2019, 210 statement.  There can be a final

11:41　　**4**　category in each bucket for VIA, but it should pertain to

11:41　　**5**　the set list of alleged secrets that remain.

11:41　　**6**　　　　So if we take D&D as an example, they can allege

11:41　　**7**　-- they have alleged Secret 1, alleged Secret 3, alleged

11:41　　**8**　Secret 10, and then they can keep No. 16 which was how it

11:41　　**9**　was originally numbered and say the alleged value,

11:41　　**10**　importance, and appropriateness of 1, 3, and 10.  They can't

11:42　　**11**　create new secrets for each one.  That was the concern that

11:42　　**12**　we had when we brought this summary judgment motion.

11:42　　**13**　　　　They are trying to get away from the set list.  We

11:42　　**14**　appreciate the set list can shrink because they have

11:42　　**15**　abandoned certain secrets, and we don't object to that.

11:42　　**16**　They can't now create a new VIA secret for each category

11:42　　**17**　because that's not how it was initially pled.

11:42　　**18**　　　　It's duplicative, and it creates confusion because

11:42　　**19**　value is something the jury needs to determine for each of

11:42　　**20**　these alleged secrets.  So to create a 1B for each one that

11:42　　**21**　refers to its value is confusing, and it's not how they

11:42　　**22**　initially pled their trade secrets.

11:42　　**23**　　　　So the way it should work is their Exhibit A

11:42　　**24**　should have Secrets 1, 3, 10, whatever the remaining ones

11:42　　**25**　are, and then the VIA one at the end that refers to that set

11:42   1    list of secrets that remain.

11:42   2            Another reason for this is that we have taken

11:42   3    discovery with the numbering they initially included in

11:43   4    their statements.  We have experts reports with statements

11:43   5    about, for example, alleged Secret 16.  We have testimony

11:43   6    from deponents.  If we start changing the numbers at this

11:43   7    point, it's unfairly confusing.

11:43   8            So I don't think the dispute is as was

11:43   9    characterized by Mr. Re.  We are not arguing that we should

11:43   10   be talking to the jury about the abandoned secrets.  We are

11:43   11   talking about using the numbering and the formatting that

11:43   12   they used initially rather than create a new VIA secret to

11:43   13   accompany each individual one.

11:43   14           I will just add there is a similar issue with the

11:43   15   BM trade secrets.  There is a knowledge category at the end.

11:43   16   There was alleged BM Secret No. 7.  They have done the same

11:43   17   thing there in their Exhibit A, where they have taken

11:43   18   knowledge of the plaintiffs allegedly practicing this secret

11:43   19   and included it as a Category C for each of the remaining

11:43   20   secrets.

11:43   21           So they have alleged BM Secret 1 which is A, the

11:43   22   initially pled secret.  They have added 1B which is the

11:44   23   knowledge, and No. 1C which is the VIA.  So they are again

11:44   24   multiplying the number of secrets, creating new numbers.

11:44   25   Whatever they do with those final categories should remain

11:44   1   as they initially pled, and it should pertain to the set

11:44   2   list as Your Honor's summary judgment opinion acknowledges.

11:44   3   It should not be imported into each individual secret.

11:44   4           THE COURT:  Thank you.

11:44   5           MR. RE:  Okay, now I think the issue is more

11:44   6   narrow.  What I am hearing is we should write it the same

11:44   7   way as the 2019.  But in the 2019, the list was much longer.

11:44   8   First of all, the 2019 was a discovery tool, so we are now

11:44   9   free to negotiate how it should be presented at trial.

11:44   10          What I now hear is it seems at least there is

11:44   11  agreement on what the trade secret is.  And what I was

11:44   12  hearing earlier, what I thought the issue was, is there is a

11:44   13  dispute about the "or" or the "and."  I can't tell from what

11:45   14  was just argued that -- if there is agreement that the

11:45   15  value, importance, goes to each trade secret or is it

11:45   16  collective?

11:45   17          If there is agreement that it is individual like

11:45   18  Apple always understood it to be -- now, we are not talking

11:45   19  about a miscommunication here.  As I said, Apple has always

11:45   20  maintained that the value, importance, and appropriateness

11:45   21  dependent claim for lack of a better word applies to each

11:45   22  trade secret in the alternative.  That's what I thought the

11:45   23  key issue was.  I can't tell if Apple is agreeing that the

11:45   24  value, importance, and appropriateness trade secret applies

11:45   25  to each trade secret individually or collectively because

11:45   1   they always understood.

11:45   2           To the extent Ms. Wigmore is arguing about value

11:46   3   being unclear and confusing, that was specifically argued on

11:46   4   summary judgment, and they lost on the vagueness of that

11:46   5   term on summary judgment.  So I can't tell -- I think maybe

11:46   6   we need to negotiate a little more, but I can't tell if they

11:46   7   are in agreement that it's in the alternative that the

11:46   8   value, importance, and appropriateness applies to each trade

11:46   9   secret, 1 or 3 or 10.  I thought they thought it was an

11:46   10  "and," but I can't tell if we are in the agreement that it

11:46   11  was at least in the alternative.

11:46   12          THE COURT:  Ms. Wigmore.

11:46   13          MS. WIGMORE:  What Apple is seeking is the same

11:46   14  formatting and description that has been part of the case

11:46   15  all along.  So to use D&D as an example, initial D&D Secret

11:46   16  16 was phrased the value, importance, and appropriateness of

11:47   17  1 through 15 above, and it goes on to use some words I won't

11:47   18  read into the public record, but that's the relevant

11:47   19  portion.

11:47   20          Now 1 to 15 don't all remain in the case.  We

11:47   21  would ask that that format remain the same, that No. 16

11:47   22  remain in the case, but instead of referring to 1 through 15

11:47   23  above, it refer to 1, 3, and 10 above because those are the

11:47   24  ones that remain.  That's what we're asking for.  We are

11:47   25  asking that they not be permitted to create a new alleged

```
11:47    1    secret for each of 1, 3, and 10 called value.  They get one
11:47    2    at the end that refers to the set list of 1, 3, and 10,
11:47    3    which is exactly how they phrased it before with the minor
11:47    4    exception that we have taken out from 1 through 15 the ones
11:47    5    that are no longer part of the case.  So it's one alleged
11:47    6    secret at the end of the list.  It's not an individual value
11:48    7    secret for each of the claimed secrets.
11:48    8              THE COURT:  You would agree that some or all of
11:48    9    the remaining trade secrets would figure as part of the
11:48   10    value of the trade secret.
11:48   11              MS. WIGMORE:  Yes, but it shouldn't be listed
11:48   12    multiple times for the jury.
11:48   13              THE COURT:  It seems to me we can solve the basic
11:48   14    problem at the time of the instructions.
11:48   15              MS. WIGMORE:  We think it's relevant for opening
11:48   16    statement and for how witnesses are cross-examined.
11:48   17              THE COURT:  In terms of numbering, I think if you
11:48   18    only have 3 or 4 out of the initial 16, it leaves the unfair
11:48   19    implication that some of the matters asserted weren't trade
11:48   20    secrets.  I don't think they need to bear that burden.  I
11:48   21    don't have any trouble just numbering from the top 1, 2, 3,
11:48   22    as long as the secrets are the same.  It may be experts
11:48   23    refer to them differently in their reports, but it's not a
11:48   24    giant task especially if we are only talking about 3 or 4
11:49   25    trade secrets for them to refer to them by the current
```

11:49   **1**   number.

11:49   **2**          MS. WIGMORE:  Even the plaintiffs are not

11:49   **3**   suggesting a renumbering.  They have phrased in Exhibit A --

11:49   **4**   they have used the numbers 1, 3, and 10.  They haven't gone

11:49   **5**   consecutive.  But what they have done is added another one

11:49   **6**   after each of 1, 3, and 10 that refers to value.  We think

11:49   **7**   the value, whatever that is, should be one alleged secret at

11:49   **8**   the end that refers back to the three that remain.

11:49   **9**          THE COURT:  Okay.  Thank you.  I think we're --

11:49 **10**          Mr. Re.

11:49 **11**          MR. RE:  No, we're not.  I beg to differ, Your

11:49 **12**   Honor.  What I hear is she did not respond to my question.

11:49 **13**   And, that is, they are sticking us with the 2019, and they

11:49 **14**   are arguing an ambiguity to perpetuate that to the trial.

11:49 **15**          THE COURT:  But if the jury is told as part of

11:49 **16**   considering the value you may consider each of the

11:49 **17**   individual ones individually or collectively to determine

11:49 **18**   whether there is anything to support a value trade secret,

11:49 **19**   what's the difference?

11:50 **20**          MR. RE:  Well, if it's individually, in the

11:50 **21**   alternative.

11:50 **22**          THE COURT:  Right.

11:50 **23**          MR. RE:  But Ms. Wigmore didn't say that.

11:50 **24**          THE COURT:  But I'm saying that.

11:50 **25**          MR. RE:  Then we are in agreement.  We are in the

| | | |
|---|---|---|
| 11:50 | 1 | alternative and it's "or," then we're in agreement.  Then |
| 11:50 | 2 | it's easy. |
| 11:50 | 3 | THE COURT:  Some or all. |
| 11:50 | 4 | MR. RE:  Some or all. |
| 11:50 | 5 | THE COURT:  It's only one value trade secret. |
| 11:50 | 6 | MR. RE:  But it applies to each one, the value, |
| 11:50 | 7 | importance -- |
| 11:50 | 8 | THE COURT:  No, no.  In determining value, you may |
| 11:50 | 9 | consider each of the trade secrets either individually or |
| 11:50 | 10 | collectively in determining whether there is value. |
| 11:50 | 11 | MR. RE:  Correct.  That is correct. |
| 11:50 | 12 | THE COURT:  So I think the concern is that by |
| 11:50 | 13 | listing it for each individual one, there is some sort of |
| 11:50 | 14 | potential beyond the original contention of a single value |
| 11:50 | 15 | trade secret.  So I think that's the way we are going to go |
| 11:50 | 16 | at it and clarify the trade secret.  I think you are all on |
| 11:51 | 17 | the same page. |
| 11:51 | 18 | MR. RE:  I think we -- I think you and I are.  I |
| 11:51 | 19 | will find out tomorrow if we all are. |
| 11:51 | 20 | THE COURT:  Mr. Mueller. |
| 11:51 | 21 | MR. MUELLER:  Masimo's Motion In-Limine No. 1 |
| 11:51 | 22 | refers to a couple different categories of information, and |
| 11:51 | 23 | with respect to certain aspects of Your Honor's tentative, |
| 11:51 | 24 | we would submit.  In particular, Your Honor's tentative |
| 11:51 | 25 | decision that we may not refer to the lawyers preparing |

11:51   1   certain materials, we submit on that point.  We ask for
11:51   2   clarification on one issue, and there is one issue where we
11:51   3   would request reconsideration.
11:51   4           The clarification point -- we understand the
11:51   5   tentative to allow us to still refer to the chronology of
11:51   6   when materials were created or not.  So if there was a lack
11:51   7   of materials, for example, in writing, corroborating the
11:52   8   existence of an alleged trade secret before the litigation,
11:52   9   we understand under Your Honor's tentative we are allowed to
11:52   10  make that point during cross-examination.  We are not
11:52   11  referring to lawyers at all, just making the point referring
11:52   12  to a timeline matter.
11:52   13          THE COURT:  Correct.
11:52   14          MR. MUELLER:  The second point we would ask for
11:52   15  reconsideration on is Dr. Palmatier's expert report.  We
11:52   16  understand Your Honor's tentative to be that we may not
11:52   17  refer to the correspondence between certain language in that
11:52   18  report and discovery responses provided by Masimo and
11:52   19  Cercacor in this case, but Your Honor did say we may inquire
11:52   20  into his independence or any critique that we may have with
11:52   21  the report.
11:52   22          THE COURT:  Right.
11:52   23          MR. MUELLER:  So we would ask that we be permitted
11:52   24  to show Dr. Palmatier the similarities between portions of
11:52   25  his report and material submitted by Masimo and Cercacor

| 11:52 | 1 | without reference to the lawyers.  We wouldn't say the |
| 11:53 | 2 | lawyers created these.  We would just say that these are |
| 11:53 | 3 | materials that Masimo and Cercacor provided to us.  Your |
| 11:53 | 4 | report and certain sections is verbatim, the same.  We think |
| 11:53 | 5 | that goes to his independence without any mention of |
| 11:53 | 6 | lawyers. |
| 11:53 | 7 | We would ask respectfully that we be permitted to |
| 11:53 | 8 | make a comparison of his report and the materials submitted |
| 11:53 | 9 | by the plaintiffs in this case without referring to the |
| 11:53 | 10 | lawyers' involvement in the creation of either. |
| 11:53 | 11 | THE COURT:  Mr. Re. |
| 11:53 | 12 | MR. RE:  We're back to why I filed the motion. |
| 11:53 | 13 | For me to respond to him, I have to tell him exactly what |
| 11:53 | 14 | happened.  He has the who copied from whom in reverse.  For |
| 11:53 | 15 | me to explain and respond to that, I need to tell you what |
| 11:53 | 16 | happened with the lawyers.  I don't think that's fair to |
| 11:53 | 17 | confer something that I know to be absolutely false and does |
| 11:53 | 18 | not bear on the independence of Dr. Palmatier.  It's the |
| 11:53 | 19 | reverse.  He helped the lawyers, not the other way around. |
| 11:54 | 20 | To get into those facts -- this is why we filed |
| 11:54 | 21 | the motion.  I want the lawyers out of it.  If he does that, |
| 11:54 | 22 | starts showing documents written by the lawyers, the only |
| 11:54 | 23 | way to bring that to fairness is to start to put the lawyers |
| 11:54 | 24 | into the trial, and I'm trying to keep the lawyers out of |
| 11:54 | 25 | it.  I think he enjoys showing documents written by the |

11:54   1   lawyers.

11:54   2          MR. MUELLER:  Dr. Palmatier at his deposition

11:54   3   admitted that he did not author those discovery responses.

11:54   4   So what was just represented is exactly the opposite of what

11:54   5   the expert said at his deposition.  Our point is simply

11:54   6   this.  We would ask permission to inquire into the

11:54   7   similarity between a document that he concededly did not

11:54   8   author, namely, the discovery responses on the one hand and

11:54   9   the report on other.  We think that goes to his independence

11:54  10   or lack thereof.  We can do that without referring to the

11:54  11   lawyers at all.

11:55  12          THE COURT:  I want to take one more look at this.

11:55  13          Let's go to the Pretrial Conference Order.

11:55  14          MR. MUELLER:  We have a number of issues with the

11:55  15   Pretrial Conference Order.  We are happy to let the

11:55  16   plaintiffs go first, whatever Your Honor's preference.

11:55  17          MR. RE:  Yes, I do have some issues with the

11:55  18   Pretrial Conference Order that the parties jointly submitted

11:55  19   on March 1.

11:55  20          The first modification that I believe there will

11:55  21   be no debate about is we did narrow some claims.  Masimo

11:55  22   dropped claims 18, 19, 24, 25, and 27 that are listed on

11:55  23   pages 3 and 4 of the Joint Pretrial Conference Order that

11:55  24   was proposed by the parties on March 1.  So those can be

11:55  25   eliminated.

11:55  1              THE COURT:  Give me those again, please.

11:55  2              MR. RE:  On page 3, it's claims 18, 19, 24, 25,

11:56  3     and 27.

11:56  4              THE COURT:  Okay.

11:56  5              MR. RE:  The next issue we did deal with was the

11:56  6     dispute on page 4.  I don't know to what extent you want to

11:56  7     go into some of these footnotes, but Footnote 4 on page 4

11:56  8     was the issue we just discussed with regard to Exhibit A

11:56  9     versus Exhibit B.  It sounds like the parties have a little

11:56  10    more work to do to come up with an agreed upon exhibit.

11:56  11             The one issue I did want to call the Court's

11:56  12    attention to which I'm sure you noticed was the issue I

11:56  13    raised earlier.  There seems to be one issue where the

11:56  14    parties disagree what goes to the jury and what does not.

11:56  15    That's on page 16 where Apple is contending that this

11:56  16    unclean hands defense dealing with the unenforceability of

11:57  17    the confidentiality agreements they think goes to the jury.

11:57  18    I see no support for that whatsoever.  I have studied this

11:57  19    issue, and it's very clear this is an issue for you and not

11:57  20    the jury.

11:57  21             The jury shouldn't be deciding an equitable issue

11:57  22    that's dependent on a legal issue.  It seems like the

11:57  23    parties should agree that the unclean hands doesn't go to

11:57  24    the jury.  I don't know if you want me to keep going or

11:57  25    allow counsel to respond to that.

11:57  1          MR. MUELLER:  Briefly, Your Honor.  Your Honor
11:57  2   does have the discretion to send this to the jury or not.
11:57  3   It's certainly up to Your Honor.  We don't think there's a
11:57  4   categorical rule that it go to the jury or not go to the
11:57  5   jury.
11:57  6          I think what we would say, Your Honor, is to the
11:57  7   extent they -- for all the reasons Ms. Amadi said earlier,
11:57  8   to the extent they are allowed to rely on an agreement which
11:57  9   we believe is invalid as a matter of law, it would be unfair
11:57  10  to not allow us to also present a context on the validity of
11:58  11  that same agreement.
11:58  12          They want to be able to use an agreement that is
11:58  13  subject to the legal dispute that Mr. Re just mentioned with
11:58  14  the jury.  We agree there is a legal dispute as to the
11:58  15  validity of those agreements.  We think it's an issue that
11:58  16  is ripe for decision by Your Honor.  But if it is permitted
11:58  17  to go to the jury, we think in the matter of Your Honor's
11:58  18  discretion the jury should also consider the unclean hands
11:58  19  defense.
11:58  20          We believe it's in the --
11:58  21          THE COURT:  I guess I want to see what the trial
11:58  22  record looks like at the time we settle the instructions.
11:58  23          MR. RE:  I want to clarify one point by
11:58  24  Mr. Mueller.  He keeps saying the validity of the agreement.
11:58  25  That's not correct under California law.  Under California

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:58 | 1 | law, it's the validity of a provision.  There is no real |
| 11:58 | 2 | debate that only a provision can be invalidated.  I think we |
| 11:58 | 3 | had this very issue in the True Wearables case. |
| 11:59 | 4 | Secondly, Mr. Kiani and what they are relying upon |
| 11:59 | 5 | deals with the non-compete provision.  That's not what's at |
| 11:59 | 6 | issue in this case.  What's at issue in this case is the |
| 11:59 | 7 | preservation of confidentiality.  That's what's really at |
| 11:59 | 8 | issue, showing Masimo's reasonable precautions in |
| 11:59 | 9 | maintaining confidentiality. |
| 11:59 | 10 | So an unclean hands defense that isn't even |
| 11:59 | 11 | connected to challenge the validity of this agreement that |
| 11:59 | 12 | they are not even a party to -- I think the theory is that |
| 11:59 | 13 | if some parts are invalid then we are not being reasonable |
| 11:59 | 14 | in our precautions.  I don't understand that issue, but it |
| 11:59 | 15 | sounds like there's agreement that it's not for the jury. |
| 11:59 | 16 | It's for you to decide at the appropriate time. |
| 11:59 | 17 | THE COURT:  Well, let's see what the record looks |
| 11:59 | 18 | like. |
| 11:59 | 19 | The next issue -- I have a couple.  Do you have |
| 11:59 | 20 | anything else? |
| 11:59 | 21 | MR. RE:  Another dispute that I would like |
| 11:59 | 22 | resolved is on Footnote 18 on page 26.  We have a dispute |
| 12:00 | 23 | about disclosure of cross-examination exhibits prior to the |
| 12:00 | 24 | cross-examination.  It's our position that those exhibits |
| 12:00 | 25 | that will be used in cross-examination need not be disclosed |

12:00  1    to the other side along with other exhibits.

12:00  2              THE COURT:  Why?

12:00  3              MR. RE:  Well, I think it gives a much more clear

12:00  4    honest cross-exam if the witness is not prepared with regard

12:00  5    to the exhibits that will be used on cross.

12:00  6              Interestingly, we have experience dealing with

12:00  7    this trial team.  We just tried a case together at the ITC,

12:00  8    and Apple was the side that insisted that there be no

12:00  9    disclosure of cross-examination exhibits, and we agreed to

12:00  10   that.

12:00  11             There are many reasons why.  One of them is in my

12:00  12   experience if you require disclosure of cross-examination

12:00  13   exhibits, what invariably happens is there is disclosure of

12:00  14   numerous exhibits, and in fact, it really becomes a lot of

12:01  15   work to go through exhibits that never get used.

12:01  16             So I think Apple had it right in the last trial we

12:01  17   had where Apple insisted that the witness open up the list

12:01  18   of cross-examination exhibits on camera for the

12:01  19   administrative law judge to see so that the witness could

12:01  20   verify that they had not seen the cross-examination exhibits

12:01  21   in advance, and that was fine.  That's what we did in our

12:01  22   last trial.

12:01  23             For reasons that I can't really tell, Apple has

12:01  24   done a 180 and wants full disclosure a day in advance of the

12:01  25   exhibits you might use on cross-examination of a witness.  I

12:01   1   looked.  I did some research.  It seems to be uniform on

12:01   2   Pretrial Conference Orders, particularly by Chief Judge

12:01   3   Stark in Delaware -- he never required disclosure of the

12:02   4   cross-examination exhibits prior to the cross-exam.

12:02   5           I think it should be handed over at the time of

12:02   6   the cross-exam, handed to the witness, and then you can get

12:02   7   a fresh, clear, realistic cross-exam rather than one where

12:02   8   the witness has prepared the night before knowing what the

12:02   9   cross-examination is going to be.  I just want a more

12:02   10  truthful, honest cross-exam.

12:02   11          THE COURT:  Mr. Mueller.

12:02   12          MR. MUELLER:  I have done this both ways many

12:02   13  times.  We defer to Your Honor as to how you want to do

12:02   14  this.  What we had suggested in connection with the Pretrial

12:02   15  Order was that the parties disclose cross-examination

12:02   16  exhibits that would be admitted as distinct from used for

12:02   17  impeachment only which would not need to be disclosed, the

12:02   18  idea being that if something was going to be actually

12:02   19  admitted into the record to go back with the jury during

12:02   20  deliberations, it would be good for both sides to assess

12:02   21  whether there is a proper foundation with that witness.  But

12:02   22  if Your Honor's preference is no disclosure, we're of course

12:02   23  fine with that.  Whatever Your Honor would prefer, we will

12:03   24  of course abide by.

12:03   25          THE COURT:  Mr. Re.

12:03   1          MR. RE:  I believe that it is faster, better that

12:03   2   it not be disclosed.  They are all on the exhibit list.  I'm

12:03   3   not talking about using exhibits that are not on the exhibit

12:03   4   list, so the objections are known in advance.  These are not

12:03   5   impeachment exhibits.  These are substantive

12:03   6   cross-examination exhibits.  These are already disclosed on

12:03   7   the exhibit list, and objections are known in advance.

12:03   8          THE COURT:  We will go with no disclosures.

12:03   9          MR. RE:  Thank you, Your Honor.

12:03   10         The next issue, which I think many of these issues

12:03   11  can be deferred -- there is one I wanted to raise on

12:03   12  page 30.  There seems to be some debate about the ability to

12:03   13  present a rebuttal case.  I think this is an issue that you

12:03   14  obviously have wide discretion on at that time.

12:03   15         THE COURT:  It seems to me that the scope of

12:03   16  rebuttal is not necessarily eliminated by the fact that we

12:04   17  are going to try to call witnesses once.  If you need to go

12:04   18  beyond the scope, you take the person as your witness.  I

12:04   19  don't think that's inconsistent with the potential for a

12:04   20  rebuttal case.

12:04   21         MR. RE:  I totally agree.  With that taken care

12:04   22  of, I think that might eliminate counsel's argument.

12:04   23         The parties agreed on the cases-in-chief tht we

12:04   24  only call a witness once regardless of which party it is,

12:04   25  and the plaintiffs' case will remain open until all the

12:04   1   cross-exams are done of the Apple witnesses for whom are on

12:04   2   our list.  It makes the trial go a lot more quickly.

12:04   3           MR. MUELLER:  We certainly have no objection to

12:04   4   that.  Our concern is a bit different.  Our concern is that

12:04   5   the scope of rebuttal case we believe should be limited to

12:04   6   issues on which Masimo and Cercacor bear the burden of

12:04   7   proof.  The reason for that is we believe that the orderly

12:04   8   progression of evidence would be on the issues for which

12:05   9   they bear the burden of proof.  They put on that evidence.

12:05   10  We have offered that that could be held open through the

12:05   11  Apple case to ensure if there is a witness that they wanted

12:05   12  to use to help support issues on which they bear the burden

12:05   13  of proof.

12:05   14          THE COURT:  That's a different issue.

12:05   15          MR. MUELLER:  We think a rebuttal case is

12:05   16  different.  The rebuttal case is after we have finished.

12:05   17  And if they're unveiling new arguments, new theories, new

12:05   18  witness testimony on issues for which they bear the burden

12:05   19  of proof at the end of the trial, it deprives us of an

12:05   20  opportunity to fully and fairly respond unless we are given

12:05   21  a surrebuttal case.

12:05   22          THE COURT:  The scope is going to be limited by

12:05   23  the scope of your case.

12:05   24          MR. MUELLER:  We would ask not just the scope of

12:05   25  our case, but also that they not be allowed to present

| | | |
|---|---|---|
| 12:05 | 1 | rebuttal testimony on issues for which they bear the burden. |
| 12:05 | 2 | THE COURT:  Why is that?  I mean, you make an |
| 12:05 | 3 | attack on a particular argument in your case-in-chief on |
| 12:05 | 4 | which they have the burden.  Why can't they come back in |
| 12:05 | 5 | rebuttal with evidence saying your argument isn't valid for |
| 12:06 | 6 | X, Y, and Z? |
| 12:06 | 7 | MR. MUELLER:  Because if they raise new points -- |
| 12:06 | 8 | THE COURT:  They are limited by the scope of your |
| 12:06 | 9 | case.  If you bring up new attacks on an issue where they |
| 12:06 | 10 | have the burden of proof, I think they ought to be able to |
| 12:06 | 11 | come in with a rebuttal witness to address what new attack |
| 12:06 | 12 | you advance.  If they made their prima facie case, they made |
| 12:06 | 13 | their prima facie case.  I don't think they have to |
| 12:06 | 14 | anticipate in their prima facie case all the arguments that |
| 12:06 | 15 | you advance in the defense case. |
| 12:06 | 16 | MR. MUELLER:  Well, to the extent that they raise |
| 12:06 | 17 | new points in their rebuttal case, we would request a |
| 12:06 | 18 | surrebuttal case to address that. |
| 12:06 | 19 | THE COURT:  I can't tell you until we get there. |
| 12:06 | 20 | Indeed, it may be such that no rebuttal case is appropriate. |
| 12:06 | 21 | MR. MUELLER:  Understood.  I take Your Honor's |
| 12:06 | 22 | point that to the extent we make new arguments as part of |
| 12:07 | 23 | our opposition case they would be permitted a rebuttal case. |
| 12:07 | 24 | If they made new arguments as part of their case, we could |
| 12:07 | 25 | ask Your Honor for leave to present surrebuttal testimony. |

| | | |
|---|---|---|
| 12:07 | 1 | THE COURT:  Right. |
| 12:07 | 2 | MR. MUELLER:  Understood. |
| 12:07 | 3 | MR. RE:  I'm burdened by having done this a little |
| 12:07 | 4 | too long.  The issue now -- what Mr. Mueller -- the word he |
| 12:07 | 5 | used was "new."  That was the weasel word.  You are correct. |
| 12:07 | 6 | I agree with everything you said. |
| 12:07 | 7 | I think the issue is this.  We don't know what |
| 12:07 | 8 | Apple is going to present.  If you look at their memo of |
| 12:07 | 9 | contentions, we have no idea what references they are going |
| 12:07 | 10 | to rely upon.  They just incorporated all their prior |
| 12:07 | 11 | discovery.  It comes down to issues such as the generally |
| 12:08 | 12 | known.  It's generally known to those in the industry.  We |
| 12:08 | 13 | don't even know what references they're going to present, so |
| 12:08 | 14 | it's impossible to anticipate in our prima facie case what |
| 12:08 | 15 | Apple might do the following week.  That's why we want the |
| 12:08 | 16 | ability to respond to not what Mr. Mueller called new but |
| 12:08 | 17 | to, for example, references that their experts may rely on |
| 12:08 | 18 | to show the trade secret is in the public domain. |
| 12:08 | 19 | THE COURT:  They are going to be disclosed |
| 12:08 | 20 | references, or they won't be able to use them. |
| 12:08 | 21 | MR. RE:  They disclosed hundreds of them, and I |
| 12:08 | 22 | doubt they are going to present hundreds at this trial. |
| 12:08 | 23 | THE COURT:  That's probably true, but it seems to |
| 12:08 | 24 | me the parties should have been discussing claims and prior |
| 12:08 | 25 | art reference limitations long ago.  If you think there are |

12:08  1    too many out there, it's a little late in the day to solve

12:08  2    that problem.

12:08  3            MR. RE:  Well, we tried, and their memo to this

12:09  4    day doesn't reveal any references.  It's a big long memo,

12:09  5    but it doesn't tell me anything about their case.  I learned

12:09  6    nothing from reading their memo.  So the reason this

12:09  7    rebuttal matters is that we can't possibly anticipate what

12:09  8    they will say on certain issues.  That's why the rebuttal

12:09  9    case is important.

12:09  10           THE COURT:  Let's see what the record looks like

12:09  11   at the end of the defense case, and if there is a rebuttal

12:09  12   case, what the record looks like then, but I understand the

12:09  13   issues.

12:09  14           MR. RE:  I think everything else in the Pretrial

12:09  15   Conference Order can be resolved through the charge

12:09  16   conference.  And many of the debates in the footnotes I

12:09  17   think are really jury instruction issues unless the Court

12:09  18   wants to hear further on those changes.

12:09  19           I see it's past the noon hour, so all the other

12:09  20   issues that I have do not relate specifically to the

12:09  21   Pretrial Conference Order.  I do have a few miscellaneous

12:09  22   issues.

12:09  23           THE COURT:  Mr. Mueller.

12:09  24           MR. MUELLER:  There are a couple more on the

12:09  25   Pretrial Order, two in particular.

12:10  1          First, Your Honor, there are a couple of damages

12:10  2    issues that we wanted to raise mainly for the purpose of

12:10  3    putting on the Court's radar some issues that we expect will

12:10  4    require further attention as the trial unfolds.  Ms. Frazier

12:10  5    can address those.

12:10  6          MS. FRAZIER:  Thank you, Your Honor.

12:10  7          Two issues related to damages that have come to

12:10  8    light through the Joint Pretrial Order exchanges and also

12:10  9    Plaintiffs' Memo of Contentions of Fact and Law.

12:10  10          The first issue is the scope of information

12:10  11    plaintiffs will be permitted to present regarding damages

12:10  12    related to any lost profits they have alleged to have

12:10  13    suffered.  The second is whether the jury should be asked to

12:10  14    decide if Apple misappropriated any alleged trade secret

12:10  15    through acquisition alone.

12:10  16          With respect to lost profits, the last time we

12:10  17    were before you plaintiff suggested that they could put on a

12:11  18    lost profit case through fact witness testimony.  Your Honor

12:11  19    observed at the time that in the abstract they could do that

12:11  20    without an expert, but if they go that route, there would be

12:11  21    disclosure issues.

12:11  22          We are now three weeks away from trial, and Apple

12:11  23    has no disclosure as to what lost profits plaintiffs may be

12:11  24    seeking or how they are calculating those lost profits.

12:11  25    Rule 26(a), as Your Honor well knows, requires a disclosure

12:11   1    of the computation.  Rule 26(e) required plaintiffs to

12:11   2    supplement anything when they learned it was incomplete.

12:11   3    Their last most recent disclosures which were made on

12:11   4    August 3, 2022, said that plaintiffs had not yet made a

12:11   5    computation of any category of damages.

12:11   6              THE COURT:  It's getting awfully late in the day

12:12   7    if that's the case.

12:12   8              MS. FRAZIER:  They have made no supplemental

12:12   9    disclosures since Mr. Kinrich's lost profits opinions were

12:12  10    excluded.  Moreover, the only disclosures we have are vague

12:12  11    statements in their Memo of Contentions of Fact and Law that

12:12  12    raise very serious concerns for us.  They appear to be

12:12  13    intending, Your Honor, to introduce through different fact

12:12  14    witnesses the same hypothetical opinions that you already

12:12  15    ruled were stricken when offered through the disclosures in

12:12  16    the fall.

12:12  17              The Contentions of Fact and Law also allude to new

12:12  18    evidence of -- since we're on the public record, I won't go

12:12  19    into specifics but new evidence about conversations with

12:12  20    third parties that again, Your Honor, have not been

12:12  21    disclosed to us.

12:12  22              I would like if we could to speak more

12:12  23    specifically about some of the representations in the

12:12  24    Contentions of Fact and Law and our concerns with them, but,

12:13  25    Your Honor, needless to say, we do not think there should be

12:13  1    a lost profits case at this point.

12:13  2          THE COURT:  Bottom line, you are entitled to the

12:13  3    computation.  You were entitled to the computation the day

12:13  4    the initial disclosures were made.  Bedrock, you are

12:13  5    entitled to computations before you go to trial.

12:13  6          MS. FRAZIER:  Absolutely, and you have noted

12:13  7    before the close of fact discovery that there had been

12:13  8    continuing issues with the damages disclosures and warned at

12:13  9    that time we were reaching a late stage to defend ourselves

12:13  10   against a damages theory, the parameters of which are not

12:13  11   known.

12:13  12         We now submit, Your Honor, we are way too late.

12:13  13   It's way too close to trial to be interjecting a new theory,

12:13  14   a new lost profits number, at this stage.  So we would

12:13  15   request, Your Honor, clarity that plaintiffs are not

12:13  16   permitted to introduce a lost profits demand.

12:13  17         THE COURT:  Well, I'm obviously not going to deal

12:13  18   with that issue on the fly at the pretrial conference.

12:14  19         But where is your computation and what's the

12:14  20   number?  Bottom line, when one of you makes the argument to

12:14  21   the jury, how much are you going to tell the jury you should

12:14  22   be given.  What is that number?

12:14  23         MR. HORNE:  Your Honor, to your point --

12:14  24         THE COURT:  Do you have that number?

12:14  25         MR. HORNE:  I don't have that number with me.

| | | |
|---|---|---|
| 12:14 | 1 | THE COURT:  Where is it? |
| 12:14 | 2 | MR. HORNE:  I have to check with the team.  This |
| 12:14 | 3 | is forced on me right now.  This hasn't come up in any of |
| 12:14 | 4 | the meetings.  It didn't come up with discussions about the |
| 12:14 | 5 | Pretrial Conference Order.  It didn't come up after we got |
| 12:14 | 6 | our Memo of Contentions out, so I'm taken back. |
| 12:14 | 7 | THE COURT:  You mean you are being blind-sided? |
| 12:14 | 8 | MR. HORNE:  Yes.  I understand the irony, Your |
| 12:14 | 9 | Honor. |
| 12:14 | 10 | THE COURT:  Somewhat ironic position.  You are |
| 12:14 | 11 | going to need to make your disclosure that complies with |
| 12:14 | 12 | Rule 26(a).  Depending on what it is and what the |
| 12:14 | 13 | sufficiency is and what the complexity is, we are going to |
| 12:14 | 14 | have a discussion as to whether it's adequate or timely. |
| 12:15 | 15 | MR. HORNE:  Understood, Your Honor. |
| 12:15 | 16 | MS. FRAZIER:  May we have a chance to respond once |
| 12:15 | 17 | we have received that disclosure to Your Honor with respect |
| 12:15 | 18 | to sufficiency?  How would you like us to approach that? |
| 12:15 | 19 | THE COURT:  Put in a memo. |
| 12:15 | 20 | MS. FRAZIER:  Your Honor, the second issue is the |
| 12:15 | 21 | question of whether the jury should be asked to decide |
| 12:15 | 22 | whether Apple has misappropriated any alleged trade secret |
| 12:15 | 23 | through acquisition alone.  Our position, Your Honor, is |
| 12:15 | 24 | that they should not be asked that because plaintiffs have |
| 12:15 | 25 | never disclosed a damages theory based on acquisition alone. |

12:15    1    The parties dispute on this issue is reflected on page 5 of

12:15    2    the Joint Pretrial Order at Footnotes 5 and 6.

12:15    3            Had we known plaintiffs were intending to pursue

12:15    4    this, we could have discussed it earlier at summary

12:15    5    judgment.  But simply put, Your Honor, plaintiffs have not

12:15    6    disclosed any theory of damages based on acquisition alone.

12:15    7    The CACI jury instructions are explicit that unless there is

12:16    8    such a theory, the jury should not be asked to determine

12:16    9    whether there is misappropriation by acquisition alone as

12:16   10    distinct from misappropriation by use or disclosure.

12:16   11            We have asked plaintiffs repeatedly over the

12:16   12    course of the last week or two to identify for us if they

12:16   13    disclosed anywhere in the record a theory of damages based

12:16   14    on acquisition alone.  They have not identified one for us.

12:16   15    They have simply pointed to Mr. Kinrich's damages opinions

12:16   16    and claimed that those are not limited to any specific type

12:16   17    of misappropriation.

12:16   18            However, following this Court's Daubert order,

12:16   19    Mr. Kinrich is left with only one viable opinion, which

12:16   20    relates to the profits earned that he says are attributable

12:16   21    to the blood oxygen and ECG features in the Apple Watch.

12:16   22    That theory necessarily depends on use of those features.

12:17   23    And, in fact, we noted that in our Daubert motion, that our

12:17   24    concern was he was not differentiating between secrets that

12:17   25    were used versus not used.  And plaintiffs responded in the

12:17    1    Daubert briefing that Mr. Kinrich had assumed causation for

12:17    2    purposes of his opinions and that they would prove causation

12:17    3    at trial.

12:17    4              With respect to his surviving opinion in

12:17    5    particular, they represented that they would present, quote:

12:17    6    "Evidence from which a reasonable jury could conclude that

12:17    7    Apple used Masimo's technical trade secrets in developing

12:17    8    the blood oxygen feature and Masimo's marketing trade

12:17    9    secrets in marketing both the blood oxygen and ECG

12:17   10    features."  That was at Docket 1164-1.

12:17   11              In short, this is not an acquisition only theory.

12:17   12    It depends on use.  So we ask, Your Honor, that the jury not

12:18   13    be asked to decide misappropriation by acquisition alone.

12:18   14    For today's purposes, we just wanted to preview it because

12:18   15    it will come up in the context of both the jury instructions

12:18   16    and the verdict form.

12:18   17              Thank you, Your Honor.

12:18   18              THE COURT:  Okay.

12:18   19              MS. FRAZIER:  Thank you, Your Honor.

12:18   20              MR. HORNE:  Brian Horne for Masimo and Cercacor.

12:18   21              First, I want to point out that on page 5 of the

12:18   22    Pretrial Conference Order -- 4 and 5, these are the elements

12:18   23    of misappropriation.  This part of the Pretrial Conference

12:18   24    Order doesn't relate to damages at all.  What I think I hear

12:18   25    Apple saying is if you don't have a damages theory on

| | | |
|---|---|---|
| 12:18 | 1 | acquisition, you don't even get a liability question on |
| 12:18 | 2 | acquisition.  We believe that's wrong. |
| 12:19 | 3 | Second, we did disclose that our lost profits |
| 12:19 | 4 | theory is based on acquisition alone.  We disclosed that in |
| 12:19 | 5 | our interrogatory response.  I won't read through all the |
| 12:19 | 6 | interrogatory disclosures.  We do through our interrogatory |
| 12:19 | 7 | response.  Our opposition to the summary judgment made this |
| 12:19 | 8 | clear.  Apple's Daubert motion made clear they understood -- |
| 12:19 | 9 | we believe made clear they understood that our lost profits |
| 12:19 | 10 | theory is based on acquisition as well as use. |
| 12:19 | 11 | So we agree this is a jury instruction fight.  I |
| 12:19 | 12 | can go into more depth if the Court would like, but I don't |
| 12:19 | 13 | think that's necessary right now. |
| 12:19 | 14 | THE COURT:  Mr. Mueller. |
| 12:19 | 15 | MR. MUELLER:  We have one final issue on the Joint |
| 12:19 | 16 | Pretrial Conference order.  Mr. Selwyn will handle that. |
| 12:19 | 17 | MR. SELWYN:  Your Honor, I want to briefly address |
| 12:19 | 18 | the issue of who the plaintiffs say are the unnamed |
| 12:19 | 19 | inventors on certain Apple patents.  That issue has been a |
| 12:19 | 20 | moving target throughout this case, and the Joint Pretrial |
| 12:20 | 21 | Conference order shows it continues to be. |
| 12:20 | 22 | To give Your Honor just one example, for the '475, |
| 12:20 | 23 | '754 patent, the plaintiffs now say in the Joint Pretrial |
| 12:20 | 24 | Conference Order that four of plaintiffs' employees should |
| 12:20 | 25 | be named as an inventor.  In their Fourth Amended Complaint, |

12:20  1    they had identified three.  Plaintiffs' expert only offered

12:20  2    an opinion with respect to one, and the one that he

12:20  3    identified is not even one identified in the Fourth Amended

12:20  4    Complaint.

12:20  5            Then on page 9 of the Joint Pretrial Conference

12:20  6    Order, the plaintiffs say that their expert will testify

12:20  7    that four of plaintiffs' employees should be named as an

12:20  8    inventor, again, where he identified only one of them in his

12:20  9    report.  So it appears to us that their expert intends to

12:20  10   dramatically exceed the scope of his report.

12:20  11           THE COURT:  Well, the remedy is obvious, isn't it?

12:21  12           MR. SELWYN:  That he be confined to his report.

12:21  13           THE COURT:  I don't think that's a novel

12:21  14   proposition.  Does that solve your issue?

12:21  15           MR. SELWYN:  That would solve our issue with

12:21  16   respect to the shifting sands of the inventors.

12:21  17           There is one other issue that the Joint Pretrial

12:21  18   Conference Order presents, and this is on page 6.  The

12:21  19   plaintiffs are suggesting that they only need prove that at

12:21  20   least one inventor assigned to Masimo his or her interest in

12:21  21   the patent or made an inventive contribution under

12:21  22   obligation to assign.

12:21  23           There are certain patents where they are claiming

12:21  24   that there are multiple unnamed inventors.  We are concerned

12:21  25   that the lack of specificity in the Joint Pretrial

12:21  1   Conference Order is a preview again of plaintiffs' intent

12:21  2   both to have a shifting sands approach and also to have

12:21  3   ambiguity in the jury instructions about who is the unnamed

12:21  4   inventor to the extent that the jury finds that.

12:21  5          So this is both an issue of disclosure and also an

12:22  6   issue that we think is likely to come up in the context of

12:22  7   the jury instructions to the extent that they insist on it

12:22  8   saying at least one named inventor without giving the jury

12:22  9   an opportunity to the extent that they agree on the

12:22  10  allegation to identify who that is.

12:22  11          THE COURT:  Okay.  Again, I think this is an issue

12:22  12  we will take up at the time of settling or on a Rule 50(a)

12:22  13  motion with respect to particular claims and particular

12:22  14  elements.

12:22  15          Thank you.

12:22  16          MR. MUELLER:  That's all we had for the Joint

12:22  17  Pretrial Conference Order.  We also have some miscellaneous

12:22  18  issues.

12:22  19          THE COURT:  Let's take a short break.  Let's not

12:22  20  take a lunch break, but let's take a short break.

12:22  21          (Recess)

12:31  22          THE COURT:  Mr. Re.

12:31  23          MR. RE:  Thank you, Your Honor.

12:31  24          One issue.  I think the parties agree that the

12:31  25  rule is going to apply, sequestration of witnesses, and that

| | | |
|---|---|---|
| 12:31 | 1 | would apply to everybody with the exception of one client |
| 12:31 | 2 | representative and the retained experts. |
| 12:31 | 3 | THE COURT:  Retained experts? |
| 12:31 | 4 | MR. RE:  Correct. |
| 12:31 | 5 | THE COURT:  Okay. |
| 12:31 | 6 | MR. MUELLER:  We are fine with that, Your Honor. |
| 12:31 | 7 | THE COURT:  Okay. |
| 12:31 | 8 | MR. RE:  Next, with regard to the closing of the |
| 12:31 | 9 | courtroom, I would like to keep that to a minimum. |
| 12:31 | 10 | THE COURT:  Yes. |
| 12:31 | 11 | MR. RE:  We are trying our best to limit only to |
| 12:31 | 12 | the disclosure of the trade secrets themselves.  I don't |
| 12:31 | 13 | believe there is really much else as far as e-mails and |
| 12:31 | 14 | things like that.  I don't think the courtroom should be |
| 12:31 | 15 | closed.  I don't know if counsel has any problem with that. |
| 12:32 | 16 | MR. MUELLER:  I do have a few things to say about |
| 12:32 | 17 | that. |
| 12:32 | 18 | THE COURT:  Okay. |
| 12:32 | 19 | MR. MUELLER:  Your Honor, I certainly agree with |
| 12:32 | 20 | the general principle that the courtroom should be sealed -- |
| 12:32 | 21 | or the sealing of the courtroom should be kept to a minimum. |
| 12:32 | 22 | I very much agree. |
| 12:32 | 23 | There is a particular issue we have that we want |
| 12:32 | 24 | to raise with Your Honor with respect to sealing which will |
| 12:32 | 25 | manifest itself in the proposed jury instructions, but there |

12:32   1   are a couple connected issues that I would like to also

12:32   2   raise now.  The particular issue is we think the jury should

12:32   3   be instructed that when Your Honor seals the courtroom that

12:32   4   Your Honor is not in any way validating or corroborating the

12:32   5   contention that these are in fact trade secrets.

12:32   6           THE COURT:  That's fine.  Remind me of that the

12:32   7   first time we have a sealed section.

12:32   8           MR. MUELLER:  The more fundamental question goes

12:32   9   beyond sealing, and it really bears on the complexity of the

12:33  10   issues that the jury is going to be presented with here,

12:33  11   which includes some trade secret allegations, some patent

12:33  12   allegations, various buckets.  So what we are trying to do,

12:33  13   Your Honor -- we'd ask for Your Honor's consideration of

12:33  14   ideas that we propose with respect to helping the jury

12:33  15   working through the complexity.  I just want to raise a few

12:33  16   right now.  One was the proposed jury instruction I just

12:33  17   mentioned, but there are a couple of other ones as well.

12:33  18           I think both sides believe that once Your Honor

12:33  19   has resolved the proper format of the description of the

12:33  20   trade secrets which Ms. Wigmore and Mr. Re discussed

12:33  21   earlier -- whatever Your Honor's final ruling is on that

12:33  22   should be part of the juror notebooks.  Why we think that is

12:33  23   significant is it will give the jurors a reference point

12:33  24   that we can cross-reference over the course of the trial

12:33  25   including to avoid having to seal the court.

| 12:34 | 1 | As Your Honor knows, pursuant to Your Honor's |

12:34  1          As Your Honor knows, pursuant to Your Honor's

12:34  2    ruling, we can't even tell the Apple folks what the alleged

12:34  3    trade secrets are, and one way we can try to navigate around

12:34  4    that is by cross-referencing the description that the jurors

12:34  5    have that the witnesses don't.  I think both parties ask

12:34  6    that that be part of the juror notebooks.

12:34  7          We would also ask if you could give us an

12:34  8    opportunity to make a proposal to you on transition

12:34  9    statements for witnesses to allow us to say to the jury the

12:34 10    next witness we believe is relevant to 4, 7, and 8.

12:34 11          THE COURT:  I think that's appropriate.

12:34 12          MR. MUELLER:  Now, also with respect to the

12:34 13    navigation of issues for the jury, I think our concerns were

12:34 14    only amplified with what we heard this morning with respect

12:34 15    to Motion In-Limine No. 2.  I will explain why that relates

12:34 16    to logistical issues right now.

12:34 17          We heard that there is going to be an attempt, if

12:34 18    Your Honor would permit it, to use certain e-mails that have

12:35 19    utterly nothing to do with the actual trade secrets in the

12:35 20    case to establish a pattern or practice or plan.  Now, we

12:35 21    think that's inappropriate for all the reasons Mr. Selwyn

12:35 22    covered, but the logistical reason why it's problematic is

12:35 23    that these are things that have never been listed on their

12:35 24    disclosure of alleged trade secrets, so how could it be a

12:35 25    pattern or a plan of bad acts when there has never been an

12:35  1    allegation of a bad act at all?

12:35  2            For us to respond to these attempts to draw

12:35  3    inferences from things that were never alleged to be trade

12:35  4    secrets would require us to show, for example, that the

12:35  5    information that was quoted this morning was generally

12:35  6    available information that simply bore on a candidate's

12:35  7    technical expertise as a general matter, not any attempt to

12:35  8    acquire a trade secret.  We would have to call a witness on

12:35  9    that subject.  We would have to explain to the witness what

12:35  10   the allegation is, none of which we can do under the current

12:35  11   rules.

12:35  12           So we are very concerned that in addition to

12:35  13   having difficulty of navigating the thicket of the actual

12:36  14   trade secret allegations in this case which have been

12:36  15   narrowed down, now we are seeing an eleventh hour attempt to

12:36  16   throw in additional material having nothing to do with the

12:36  17   narrow set of trade secrets allegations and we are not going

12:36  18   to have a meaningful way procedurally to rebut that

12:36  19   information.

12:36  20           So what we would ask, Your Honor, is both Your

12:36  21   Honor's consideration of mechanisms like transition

12:36  22   statements, reference to the jury notebooks to help the

12:36  23   jurors understand what the allegations are and how the

12:36  24   evidence relates to it, but also we would very much request

12:36  25   that Your Honor maintain the tentative order on No. 2 and

```
12:36   1   not allow additional material to come in at the eleventh
12:36   2   hour and add to an already complex case.
12:36   3                THE COURT:  I'm not sure that's a logistical
12:36   4   issue.
12:36   5                MR. RE:  I raised closing of the courtroom, and he
12:36   6   reargues MIL No. 2.  I was more concerned about the e-mail
12:36   7   traffic.  It seems like everything in this case is
12:36   8   designated AEO, but that in no ways suggests the courtroom
12:37   9   should be closed when all this e-mail traffic is shown to
12:37  10   the jury.  That's all my concern was.  I won't reargue the
12:37  11   point on MIL No. 2.
12:37  12                Last is I want an agreement on the opening
12:37  13   statement.  I see the Court's standing order suggests a
12:37  14   75-minute maximum.
12:37  15                THE COURT:  Tell me what you want in your
12:37  16   individual case, and I will get back to you.  I don't have a
12:37  17   75-minute rule that I can recall.
12:37  18                MR. RE:  I think it might be in your standing
12:37  19   order.  We propose 60 minutes per side for openings.
12:37  20                THE COURT:  That's fine.
12:37  21                MR. RE:  One other issue I want to raise is the
12:37  22   examination of witnesses.  We propose that there be no
12:37  23   recross.  I'm concerned about the time limit in this case.
12:37  24   I propose that each witness come up, direct, cross,
12:37  25   redirect, done, no fourth round.  I ask the Court to
```

| | | |
|---|---|---|
| 12:38 | 1 | consider that. |
| 12:38 | 2 | THE COURT:  It seems to me that it's fair if each |
| 12:38 | 3 | side has two opportunities with the witness. |
| 12:38 | 4 | MR. RE:  Understood. |
| 12:38 | 5 | THE COURT:  I'm pretty strong about not going past |
| 12:38 | 6 | that, but it seems to me that's balanced.  You're concern |
| 12:38 | 7 | for time -- you know what the time is, and you get to spend |
| 12:38 | 8 | it the way you want. |
| 12:38 | 9 | MR. RE:  I do have some memory in the last case |
| 12:38 | 10 | where I would raise one or two questions on redirect, and |
| 12:38 | 11 | then there is 45 minutes of recross. |
| 12:38 | 12 | THE COURT:  It's that party's time.  They can |
| 12:38 | 13 | spend it however they want within reason. |
| 12:38 | 14 | MR. RE:  That seems to be unfair to raise new |
| 12:38 | 15 | issues on recross. |
| 12:38 | 16 | THE COURT:  Well, that may be. |
| 12:38 | 17 | MR. RE:  The last issue I want to notify the Court |
| 12:38 | 18 | about is that the parties have agreed in view of the fact |
| 12:38 | 19 | that the trial has been postponed one week -- that we agreed |
| 12:39 | 20 | to move the jury instructions back one week to March 28. |
| 12:39 | 21 | THE COURT:  That's fine. |
| 12:39 | 22 | MR. RE:  With that, I have nothing further. |
| 12:39 | 23 | THE COURT:  Mr. Mueller. |
| 12:39 | 24 | MR. MUELLER:  Yes, Your Honor, just a few other |
| 12:39 | 25 | miscellaneous issues. |

12:39   1            First, with respect to the rule on sequestration

12:39   2   of witnesses, we understand that would apply after the

12:39   3   opening statements.  Is that correct?

12:39   4            THE COURT:  That's fine.

12:39   5            MR. MUELLER:  The additional issues I have I will

12:39   6   take in no particular order.

12:39   7            For the jury selection, we heard Your Honor's

12:39   8   guidance the last time we were before you.  Just a question

12:39   9   on that.  If someone in the pool of 14 that have been seated

12:39   10  in the box is struck for cause, is it Your Honor's practice

12:39   11  to then seat the next numerical witness in the pool, i.e.

12:39   12  15?

12:39   13           THE COURT:  I'm not sure what you are asking me.

12:40   14  I and the clerk have a random list.  You will get an alpha

12:40   15  list.  If someone is excused for cause, we will go to the

12:40   16  next person on the random list and seat them in that seat.

12:40   17           MR. MUELLER:  Do we have that list?

12:40   18           THE COURT:  No.

12:40   19           MR. MUELLER:  So we are not going to know who the

12:40   20  next person would be?

12:40   21           THE COURT:  No.

12:40   22           MR. MUELLER:  Understood.

12:40   23           The next question we have is in regards to trial

12:40   24  time.  Your Honor has given us days.

12:40   25           THE COURT:  I have given you hours in a week.

12:40    1              MR. MUELLER:  I don't think we have hours.

12:40    2              THE COURT:  We get five-and-a-quarter net hours on

12:40    3    average with the jury in a day, so it's 26-and-a-quarter

12:40    4    hours each.

12:40    5              MR. MUELLER:  Understood.  That's helpful.

12:40    6              THE COURT:  Let me say I don't care how many days

12:40    7    it takes to get that done.  You will get those hours.

12:40    8              MR. MUELLER:  Thank you, Your Honor.

12:40    9              In terms of audiovisual resources, is Your Honor

12:40   10    open to the parties meeting and conferring on bringing in

12:41   11    additional TV screens, for example?

12:41   12              THE COURT:  Sure.  In one trial, we had a 10 by 16

12:41   13    screen up there.  The parties seemed to find that useful,

12:41   14    but I have no objection to additional audiovisual equipment.

12:41   15              MR. MUELLER:  The last issue I have is you will

12:41   16    recall there was motion practice both before the Special

12:41   17    Master and before Your Honor on Tim Cook and whether there

12:41   18    should be a deposition of Mr. Cook.  Your Honor eventually

12:41   19    overruled our objections ordering that deposition and it in

12:41   20    fact occurred.

12:41   21              He was deposed, and the parties both had the

12:41   22    opportunity -- or Masimo and Cercacor had the opportunity to

12:41   23    ask the questions in the categories that Your Honor

12:41   24    permitted.  We have now been told that they're not going to

12:41   25    play any portion of that deposition which is, of course,

12:42  1    their choice.  We are concerned that they are going to try

12:42  2    to draw some inferences about Mr. Cook.

12:42  3           We are investigating whether he could testify live

12:42  4    at trial.  It's obviously a difficult proposition given the

12:42  5    competing considerations on his time, but I wanted to notify

12:42  6    Your Honor that we may be shortly amending our witness list

12:42  7    if he is available to testify live.

12:42  8           The reason for that is the deposition that he sat

12:42  9    for has not been designated by the plaintiffs, and we think

12:42  10   that in the interests of ensuring that there are no

12:42  11   inferences to be drawn against Apple on that basis, we are

12:42  12   at least looking into whether he might be able to testify

12:42  13   live.

12:42  14          THE COURT:  Absent a representation, there will be

12:42  15   no reference to Mr. Cook.

12:42  16          MR. RE:  Well, Mr. Cook's name does appear on some

12:42  17   documents, some e-mails chains with some of the other

12:42  18   witnesses, so to that extent, Mr. Cook's name will appear.

12:42  19   But I don't believe it's fair to put him on the witness list

12:42  20   when we were limited in the topics we could depose him on.

12:43  21   We are not relying on Mr. Cook.  I don't think they can use

12:43  22   him now offensively.

12:43  23          It appeared to me at the deposition what they were

12:43  24   trying to do was get direct testimony of him.  At the end of

12:43  25   the deposition, it was direct testimony from their own

| | | |
|---|---|---|
| 12:43 | 1 | counsel -- I believe it was Ms. Frazier -- asked Mr. Cook |
| 12:43 | 2 | many questions and basically did the direct exam of their |
| 12:43 | 3 | own witness.  Now that we are not calling Mr. Cook or |
| 12:43 | 4 | designating his testimony, I don't think it's fair for them |
| 12:43 | 5 | now to bring him live. |
| 12:43 | 6 | THE COURT:  Do you want to waive the |
| 12:43 | 7 | unavailability and let him use the deposition? |
| 12:43 | 8 | MR. RE:  I need to think about that one. |
| 12:43 | 9 | THE COURT:  Well, think about it. |
| 12:43 | 10 | MR. RE:  I don't think it's fair to call him at |
| 12:43 | 11 | all.  Using their own deposition of their own witness?  I |
| 12:43 | 12 | need to look at the transcript and discuss it because he is |
| 12:44 | 13 | available. |
| 12:44 | 14 | THE COURT:  Well, I don't think he is in the |
| 12:44 | 15 | subpoena power of this Court. |
| 12:44 | 16 | MR. RE:  I don't know that.  I don't know.  We |
| 12:44 | 17 | were limited to very, very specific topics to depose him.  I |
| 12:44 | 18 | don't think he should be allowed to come live.  I think |
| 12:44 | 19 | that's totally unfair. |
| 12:44 | 20 | MR. MUELLER:  If they would consent to our playing |
| 12:44 | 21 | the deposition, there may be no issue at all. |
| 12:44 | 22 | THE COURT:  Well, talk it through. |
| 12:44 | 23 | MR. RE:  I was a little confused about the list. |
| 12:44 | 24 | So when juror 15 is put in the box, we won't know who juror |
| 12:44 | 25 | 15 is going to be? |

| | | |
|---|---|---|
| 12:44 | 1 | THE COURT:  Until juror 15 sits in the box. |
| 12:44 | 2 | MR. RE:  So our list will only show 15, 16, 17, |
| 12:44 | 3 | 18? |
| 12:44 | 4 | THE COURT:  It will, but they won't be 15, 16, 17, |
| 12:44 | 5 | and 18 on your list.  You will get all the names.  You won't |
| 12:45 | 6 | get the order in which they will be called. |
| 12:45 | 7 | MR. RE:  So they are not in seat order and number |
| 12:45 | 8 | order?  Normally, 15, 16, and 17 -- |
| 12:45 | 9 | THE COURT:  They just come in and sit wherever |
| 12:45 | 10 | they would like to sit.  We call 14 at random, and they are |
| 12:45 | 11 | seated.  You learn after the fact, but nobody knows coming |
| 12:45 | 12 | in the door who is first and who is last. |
| 12:45 | 13 | MR. MUELLER:  Will we be sitting on Mondays during |
| 12:45 | 14 | trial? |
| 12:45 | 15 | THE COURT:  No.  Mondays is criminal matters in |
| 12:45 | 16 | the morning, law and motion, and specific things at 3:00. |
| 12:45 | 17 | So absent something usual, Monday is never a trial day. |
| 12:45 | 18 | Well, let's talk about that first week, the week |
| 12:45 | 19 | of the 4th of April.  That's a break week for most kids. |
| 12:46 | 20 | The 5th is Passover.  The 7th is Good Friday.  Any thoughts? |
| 12:46 | 21 | I want to start that week, but I also want to be sympathetic |
| 12:46 | 22 | to people with religious concerns. |
| 12:46 | 23 | MR. MUELLER:  We are fine to start that week, and |
| 12:46 | 24 | we are happy to cooperate on any witness conflicts that |
| 12:46 | 25 | Masimo and Cercacor might have, but we are happy to start on |

12:46   1    that Tuesday.

12:46   2            MR. RE:  We are as well.

12:46   3            THE COURT:  What about Friday?

12:46   4            MR. MUELLER:  It's not an issue for our team.  We

12:46   5    can be here to do the trial.  If Your Honor prefers not to

12:46   6    sit that day, we certainly understand.

12:46   7            THE COURT:  People often make plans for Easter.

12:47   8            MR. RE:  I will check.  I don't know the answer to

12:47   9    that.

12:47   10           MR. MUELLER:  The lawyers are okay.  I'm just

12:47   11   worried about maybe a witness or two.

12:47   12           THE COURT:  Come back to me.  We don't need an

12:47   13   answer today.

12:47   14           Okay, mechanical things on my list, hours 9:00 to

12:47   15   12:00, 15-minute break about 10:30, 1:30 to 4:30, a

12:47   16   15-minute break about 3:00.  I try and time the breaks so

12:47   17   they make sense in terms of the flow of witnesses.  If you

12:47   18   or a witness would like to take a break at another point,

12:47   19   let me know or let Ms. Vargas know.  I tell the jurors the

12:47   20   same thing.  I want people to be comfortable.

12:47   21           I will do the initial instructions, and I will

12:47   22   think about adding in the definition of the relevant trade

12:47   23   secrets here.  My standard instructions are pretty

12:47   24   vanilla/vanilla.

12:48   25           The final instructions, I will remind you of the

```
12:48    1   format that is laid out in the order for a jury trial.  One
12:48    2   joint packet.  Each instruction in the order in which they
12:48    3   will be read.  If there's an objection, it's right there.
12:48    4   If there is a counterproposal, it's right there.  So I have
12:48    5   in one neat packet for each instruction and whatever
12:48    6   arguments, pro or con, for that or for the alternative.
12:48    7            What volume of depositions do you intend to use
12:48    8   substantively?  I'm concerned about the volume and being
12:48    9   able to rule on the objections in a timely fashion.  I have
12:48   10   learned somewhat painfully of late that I want to make sure
12:48   11   I have time to consider whatever objections are raised.  I
12:48   12   know what you have got laid out in the Pretrial Conference
12:48   13   Order.
12:48   14            MR. RE:  Well, we are willing to submit them
12:49   15   earlier because there are quite a few deposition transcripts
12:49   16   at issue.  We are willing to submit them earlier if you
12:49   17   would like.
12:49   18            THE COURT:  I will modify the order, back
12:49   19   everything up at least a couple days.  It doesn't mean you
12:49   20   are barred from submitting marked-up transcripts earlier so
12:49   21   I don't get deluged.
12:49   22            MR. RE:  We will submit ours early.
12:49   23            THE COURT:  I received a joint statement of the
12:49   24   case.  I will put that in the initial instructions, and I
12:49   25   will also read it as context for the voir dire.
```

12:49  1          Each side will have 45 minutes of voir dire.  I

12:49  2    think that's plenty notwithstanding the complexities of this

12:49  3    case.  I don't cut people off if they're on to something

12:49  4    about prejudice, but 45 minutes just to visit with the

12:50  5    prospective jurors I think is plenty.

12:50  6          In terms of the peremptories, if we seat a jury of

12:50  7    eight, three peremptories.  If you exercise all of them, we

12:50  8    have eight.  You don't lose a peremptory if you pass.  Two

12:50  9    passes in a row, we stop.  For example, if you accept the

12:50  10   panel each as initially constituted, Jurors 1 through 8

12:50  11   would be the jury.

12:50  12         If you have any questions about that now or later,

12:50  13   please feel free to raise them.

12:50  14         MR. RE:  Understood, Your Honor.

12:50  15         THE COURT:  At the moment, I don't perceive any

12:50  16   other logistical problem.  There is nominally a criminal

12:50  17   case on for the next week, but I'm sure that's not going to

12:51  18   go.

12:51  19         Anything else anyone would like to raise?

12:51  20         MR. RE:  No, Your Honor.

12:51  21         MR. MUELLER:  No, Your Honor.

12:51  22         THE COURT:  If we have any need any further

12:51  23   discussions between now and then on any issues, contact

12:51  24   Ms. Vargas, and we will set up a telephone conference.

12:51  25         Okay, thank you.

| | | |
|---|---|---|
| 12:51 | 1 | (Whereupon, the proceedings were concluded.) |
| 12:51 | 2 | *   *   * |
| 12:51 | 3 | |
| 12:51 | 4 | |
| 12:51 | 5 | |
| 12:51 | 6 | |
| 12:51 | 7 | |
| 12:51 | 8 | |
| 12:51 | 9 | |
| 12:51 | 10 | |
| 12:51 | 11 | |
| 12:51 | 12 | |
| 12:51 | 13 | |
| 12:51 | 14 | |
| 12:51 | 15 | |
| 12:51 | 16 | |
| 12:51 | 17 | |
| 12:51 | 18 | |
| 12:51 | 19 | |
| 12:51 | 20 | |
| 12:51 | 21 | |
| 12:51 | 22 | |
| 12:51 | 23 | |
| 12:51 | 24 | |
| 12:51 | 25 | |

74

**CERTIFICATE**


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  March 19, 2023



/s/   Sharon A. Seffens  3/19/23
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER