# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | August 4, 2023 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Plaintiffs' Motion to Reconsider Rule 50(a) Order Re Trade Secret B2 (Redacted)

Before the Court is Plaintiffs' Motion to Reconsider and Vacate Judgment as a Matter of Law on Business Trade Secret B2 (Dkts. 1723 (sealed), 1724 ("R50 Order")). See Mot., Dkts. 1733, 1736 (sealed); Opp., Dkts. 1739, 1743 (sealed); Reply, Dkts. 1759, 1775 (sealed). The Court held a hearing on the Motion on July 31, 2023.

For the reasons stated below, the Court **DENIES** the Motion.

## I. BACKGROUND

The parties are familiar with the factual and procedural background of this case so the Court recites it here only as necessary to resolve the Motion. During trial, the Court granted Apple's Rule 50(a) motion for judgment as a matter of law concerning Plaintiffs' asserted business methods trade secrets. R50 Order at 5–7. The Court ruled that "a reasonable jury could not return a verdict for Plaintiffs concerning whether the business methods alleged trade secrets were generally known." Id. at 5.

Plaintiff moves for reconsideration concerning asserted Trade Secret B2, which incorporates B1. B1 is ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



In turn, B2 is: ▮▮▮▮ plus ▮▮▮▮

In the R50 Order, regarding B1, the Court observed that, "in a nutshell, this trade secret discloses a strategy to create sought after, clinically accurate products that can be used in hospitals and at home synergistically." Id. at 6. The Court found that no reasonable jury could return a verdict for Plaintiffs concerning whether B1 was generally known based on the evidence presented. Stated another way, Plaintiffs did not present substantial evidence to allow a reasonable jury to find that B1 was *not* generally known, which is required to qualify for trade secret protection. The Court based its ruling on the evidence offered by Plaintiffs' witnesses. First, the Court observed that "Kiani conceded on cross-examination that B1 was captured by longstanding healthcare practices and products, including thermometers and scales that are marketed to consumers and also approved for clinical use." Id. (citing 4/5 Day 2 PM Tr. 97:8-22).[1] Second, the Court noted that Plaintiffs' expert, Palmatier, "conceded (and Plaintiffs do not dispute) that every constituent part of B1 is generally known." Id. (citing 4/12 Day 7 AM Tr. 34, 37). Relatedly, the Court summarized B2 as "collecting more patient data to better care for a patient," and found B2 generally known "[f]or the same reasons described with respect to B1."

Plaintiffs move for reconsideration of the Court's ruling regarding B2 on four related grounds. *First*, Plaintiffs argue that the Court "rewrote" B2 with an "overly simplistic concept" while omitting the key concepts of ▮▮▮▮ and ▮▮▮▮ Mot. at 3. Plaintiffs suggest the evidence showed these key concepts "refer to unconventional approaches to medicine in which ▮▮▮▮ ▮▮▮▮" Id. at 6-7 (citing 4/6 Day 3 AM at 32:10-38:6).

*Second*, Plaintiffs aver that "any disputes regarding the scope of meaning of the trade secrets are resolved by the jury, not the Court." Id. at 3. *Third*, and relatedly, Plaintiffs contend that the R50 Order ignored evidence concerning the meaning of the omitted key concepts. Id. As to that meaning, Plaintiffs suggest that Kiani permissibly

---

[1] Apple's expert, Kivetz agreed with Kiani, explaining that "Kiani's description of B1 is the well-known concept 'exactly the fourth principle of leveraging synergies for network effects.'" Id. (quoting 4/18 Day 10 PM Tr. 18-19).

explained the trade secret rather than changed it. Id. at 6. And "this is precisely the type of explanation that the jury should consider in resolving any factual dispute regarding the [scope and meaning of the] trade secret." Id. at 8. Plaintiffs argue that "the jury could have reasonably interpreted trade secret B2, and the terms ▮▮▮ and ▮▮▮" as ▮▮▮ Id. at 10.

*Fourth*, Plaintiffs assert that the R50 Order relied on evidence concerning B1 to find that the oversimplified version of B2 was generally known. Id. at 3; see also id. at 10-14 (reviewing cited testimony from Kiani, Kivetz, and Palmatier), id. at 14-15 (reviewing evidence concerning JTX-2761 (iSpO2 press release)).

Apple responds that, if the Court reaches the merits of Plaintiffs' Motion, Plaintiffs did not present sufficient evidence for a reasonable jury to conclude that B2 is not generally known.[2] Opp at 2. *First*, Apple avers that Kiani testified only that ▮▮▮ means ▮▮▮ and B2 accounts for the fact that "people are different." Id. (quoting 4/5 Day 2 PM Tr. 78:15-18, 78:20, 78:24-25); see also id. at 3 (quoting 4/6 Day 3 AM Tr. 32:20-33:1 (B2 refers to ▮▮▮). Apple observes that Kiani attempted to distinguish B2 from the well-established practice of using compilations of patient data by asserting that the healthcare system does not use ▮▮▮ Id. at 3 (quoting 4/6 Day 3 AM Tr. 33:13-15, 34:8-9, 54:12-21). Apple argues that Kiani admitted B2 does not include terms such as ▮▮▮ but his only explanation for the discrepancy was that B2 does not use "my language," and instead uses "what the lawyers gave you." Id. at 3 (quoting 4/6 Day 3 AM Tr. 35:20-25, 36:1-3, 36:6-7, 37:2-5, 54:17-56:1).

*Second*, Apple contends that Palmatier never testified that B2 is not generally known. Id. at 4 (citing 4/11 Day 6 PM Tr. 70-72). Instead, he admitted he did not know whether B2 was generally known, but "the general idea of some of [B2] is out there." Id. at 5 (quoting 4/12 Day 7 AM Tr. 50:22-51:7).

Regarding the four purported errors identified by Plaintiffs, Apple responds that the Court permissibly summarized the concept embodied in B2. Id. at 10-11. Apple

---

[2] Apple first argues that the Court should not reach the merits because Plaintiffs have not demonstrated that relief is warranted under Local Rule 7-18, and the Motion is either untimely or violates Local Rule 7-3. See Opp. at 7-9. In its discretion, the Court will consider the merits of the Motion. The Court incorporates by reference the Orders stated at the end of its Order on Plaintiffs' Application to Unseal.

agrees that the jury may interpret the trade secrets as written, but the jury may not rewrite the trade secrets to include concepts that Plaintiffs could have included in their alleged trade secrets but did not (e.g., ███████████████████ ███████). Id. at 11-12. Apple observes that, when considering scope, neither case on which Plaintiffs rely allowed a plaintiff to rewrite an alleged trade secret. Id. at 13. To the extent Plaintiffs argue that B2's concepts of █████████████████████ are broad enough to encompass ██████████████████, Apple argues that this is "fully consistent" with the Court's summarization of B2. Id. at 15 (i.e., "using computers and artificial intelligence is *a* way of collecting more patient information to better care for that patient").

## II. Legal Standards

A.   Reconsideration

Reconsideration is an "extraordinary remedy, to be used sparingly." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). It is appropriate when an order "is demonstrably wrong, or if new developments would affect the outcome of the motion." *Network Signatures, Inc. v. ABN-AMRO, Inc.*, No. SA CV 06-629 JVS-RNBx, 2007 WL 7601871, at *1 (C.D. Cal. Apr. 10, 2007). Thus, it should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); see also L.R. 7-18.

B.   Rule 50

Rule 50 authorizes the defendant to move for judgment as a matter of law any time after the plaintiff's case-in-chief. Fed. R. Civ. P. 50(a). In determining whether to grant judgment as a matter of law, the court must determine whether the jury has a "legally sufficient evidentiary basis" to find for the plaintiff. Id. If the judge denies the motion, and the jury later returns a verdict against the defendant, the defendant may renew its motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Like the pre-verdict motion, the post-verdict motion also challenges the sufficiency of the plaintiff's evidence. *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013).

## III. DISCUSSION

The Court has carefully considered each of Plaintiffs' arguments supporting their request for reconsideration. For the reasons stated below, the Court **DENIES** the Motion.

The Court begins by addressing Plaintiffs' contention that a manifest injustice occurred because the Court "rewrote" B2. By summarizing B2–based on how it was written by Plaintiffs–the Court neither construed B2 similar to construing a patent claim

or rewrote it. For the avoidance of doubt, the Court clarifies that, when it summarized B2 as "collecting more patient data to better care for a patient," it intended this summary description to be coextensive with using the products described in B ███████████
███████████████████████████████████████████████████████████████

With this clarification, Plaintiffs' first challenge does not support reconsideration.

The Court next addresses Plaintiffs' contention that the Court improperly resolved factual disputes concerning the scope of B2 as a matter of law. Plaintiffs have the burden to demonstrate B2 is not generally known. More specifically, the Court instructed the jury, "[t]o prove that an Asserted Trade Secret was a trade secret, Masimo and Cercacor must prove," inter alia, "[t]hat the Asserted Trade Secret was secret." Dkt. 1715 at 28 (Instruction No. 21). The Court clarified that "[t]hese instructions use the terms 'secret' and 'not generally known' interchangeably to mean 'not generally known to the public or to others who can obtain economic value from its disclosure or use.'" Id. The Court also advised that "th[e] written descriptions of the Asserted Trade Secrets [that] appear in your juror notebooks . . . provide the controlling definitions of the Asserted Trade Secrets in this case." Id. at 27 (Instruction No. 20). Further, "non-lawyer witnesses, such as an engineer, may testify about the Asserted Trade Secret's scope and meaning, efforts to keep the Asserted Trade Secret a secret, the value of the trade secrets, and other related facts." Id.

With these instructions in mind, the Court agrees that disputes concerning the scope of a trade secret are factual questions to be resolved by a jury. See, e.g., EnerTrode, Inc. v. Gen. Capacitor Co., No. 16-CV-02458-HSG, 2019 WL 1715170, at *3 (N.D. Cal. Apr. 17, 2019) (where "the parties submitted conflicting evidence about the scope of Plaintiffs' trade secret, [this] rais[es] a question of fact to be decided by the jury"). The parties do not meaningfully dispute this principle–both Plaintiffs and Defendant agreed to the Court's special instruction, which was given during trial and as closing Instruction No. 20. The instruction contemplates fact witnesses testifying about the scope and meaning of the asserted trade secrets. Rather, the parties dispute, and Plaintiffs challenge the Court's ruling regarding, whether testimony asserting a narrower scope than the controlling definitions in the juror notebooks can present a factual dispute about scope (as opposed to presenting an impermissible mid-trial change to the asserted trade secret).

To illustrate the difference, the Court provides a hypothetical. B2 discloses ████████████████████████████████████████████ If Plaintiffs presented a witness at trial who testified that ████████████████ requires using nanotechnology tools to deliver specific therapies on the cellular level, Defendant likely would have challenged this testimony as providing a new, narrower definition of B2 than the controlling definition described in the jury notebooks which was the focus of discovery. Because no trial evidence would have supported the contention that ████████████████ requires "nanotechnology only," the Court would have granted JMOL because evidence supporting a changed scope is not

substantial evidence of the scope of the asserted trade secret. Stated differently, testifying about the bounds of existing scope is permissible whereas changing the scope is not.

The dispute presented here is similar. To support the contention that they proved B2 is not generally known, Plaintiffs argue that a fact question exists concerning the scope of B2. In support of not being generally known, Plaintiffs argue that the proper understanding of ▉▉▉▉ is ▉▉▉▉ Mot. at 6-7 (citing 4/6 Day 4 AM Tr. at 32:10-38:6). In support of this scope interpretation, Plaintiffs rely on Joe Kiani's testimony.

During his cross-examination, the only time when Kiani apparently addressed the scope of B2, he testified that ▉▉▉▉ As to whether this idea is known, Kiani admitted that ▉▉▉▉ Id. at 34:11-17. For example, Kiani described it as ▉▉▉▉ Kiani testified that his words for these concepts, including ▉▉▉▉ are not stated in B2 but rather are "implied." Id. at 35:15-36:10; see also id. at 37:2-8 (testifying ▉▉▉▉[3]

---

[3] At trial, Plaintiffs' expert, Palmatier, adopted Kiani's modified version of B2, so Palmatier's testimony does not change the analysis in this section. See 4/11 Day 6 PM 42:19-43:6 ("First, my evaluation showed that Masimo developed and used Trade Secret B2. *We heard in Mr. Kiani's testimony in detail that outlined this business and marketing strategy.* There are consistent Masimo documents and notebook entries that reflect Trade Secret B2. And Dr. O'Reilly -- Mr. Kiani testified that he exposed Dr. O'Reilly to Trade Secret B2. And Mr. Kiani also described products that used this trade secret, like the ▉▉▉ here.") (emphasis added); 4/12 Day 7 AM 50:1-11 ▉▉▉▉ 4/12 Day 7 PM Tr. 44:10-18 (Opining that O'Reilly misappropriated B2 based on notebook drawing

Thus, the question underlying the Rule 50(a) motion was not whether the jury functions to resolve factual disputes concerning trade secret scope (it does); rather, it was whether Kiani sought to change during trial the scope of B2 as disclosed, by narrowing B2 to *require* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or whether all of this necessarily is "implied" in the scope of B2 as written. This distinction is illustrated below.

| B2 | Kiani's Testimony |
|---|---|
|  | as stated in B2 |

Plaintiffs' controlling definition of B2 derives from their section 2019.210 disclosure. Although a trade secret plaintiff "is not required to convince defendants or the court in its section 2019.210 statement that its alleged trade secrets are not generally known to the public," it must "identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery." Brescia v. Angelin, 172 Cal. App. 4th 133, 147 (2009). "In a highly specialized technical field ... a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." Perlan Therapeutics, Inc. v. Super. Ct., 178 Cal. App. 4th 1333, 1351 (2009). This disclosure requirement affords both parties "a fair opportunity to prepare and present their best case or defense at a trial on the merits." Advanced Modular Sputtering, Inc. v. Super. Ct., 132 Cal. App. 4th 826, 836 (2005). At trial, of course, a trade secret plaintiff *is* required to prove that a trade secret is not generally known to the public.

Courts have held that a trade secret plaintiff may not modify its trade secret disclosures to survive summary judgment. See, e.g., Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co., No. 13-CV-2856 JLS (RBB), 2016 WL 5719819, at *10 (S.D. Cal. Sept. 30, 2016) (party may not change disclosures to avoid summary judgment), aff'd, 729 F. App'x 590 (9th Cir. 2018); Pixion, Inc. v. PlaceWare, Inc., 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005) (rejecting trade secret plaintiff's contention in opposition to summary judgment that trade secret definitions did not disclose the "how to" so there was

---

because has required ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Case 8:20-cv-00048-JVS-JDE Document 1902 Filed 08/04/23 Page 8 of 10 Page ID #:158968

more underlying the trade secrets that could survive summary judgment), aff'd, 177 F. App'x 85 (Fed. Cir. 2006).

The Court finds that the same is true when a case goes to trial: a trade secret plaintiff may not defend against challenges to its trade secret by arguing that a further "secret" lies behind the alleged trade secret as defined and disclosed and that further secret is what has been misappropriated.[4] Cf. Pixion, 421 F. Supp. 2d at 1242 ("Allowing [plaintiff] to defend against summary judgment by asserting now that its method is secret even if the functionality disclosed [in its trade secret definition] is not would defeat the purposes of § 2019(d), limiting both [defendant's] ability to defend against the trade secret claim and the Court's ability to review the issue of secrecy."); Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (a trade secret plaintiff must identify bounds of trade secret to, among other reasons, "enable[ ] defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial [or during trial] to effectively defend against charges of trade secret misappropriation").

Plaintiffs aver that Kiani's testimony provided "evidence regarding the *meaning* of the terms of art used in B2." Reply at 6. But if Plaintiffs believed what makes B2 not generally known was a *requirement* that ▮▮▮ they "could have written [their] § 2019(d) statement to reflect" these alleged terms of art so the "controlling definition" of B2 in the juror notebooks reflected this requirement. See id. As stated, where a trade secret derives from "a highly specialized technical field ... a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." Perlan, 178 Cal. App. 4th at 1351. Instead of drafting B2 to *require* these highly specialized and technical aspects, Plaintiffs elected to draft B2 generally to require only ▮▮▮ Defining B2 this way was Plaintiffs' prerogative; however, Plaintiffs may not avoid judgment as a matter of law as to their failure to prove that B2– as defined and disclosed–was not generally

---

[4] Applying the same logic, a trade secret plaintiff cannot change the scope of a trade secret by having a witness offer a different scope during a deposition.

[5] O'Reilly's testified that the concept of ▮▮▮ has been known since O'Reilly was in graduate school, and it means ▮▮▮ 4/14 Day 9 PM Tr. 17:12-23. Setting aside the fact that B2 does not claim the broad concept of ▮▮▮ standing alone as a trade secret, O'Reilly's testimony does not change Plaintiffs' broad definition of B2 as a whole, as defined and disclosed.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 8 of 10

known by invoking trial testimony directed toward adding technical requirements to the defined and disclosed scope of B2.[6]

Although B2 as broadly defined and disclosed certainly does not *preclude* ▮ ▮ it does not *require* it.[7] Thus, in the Rule 50 Order, the Court held that "testimony suggesting there is something more hidden behind B1 as defined by Plaintiffs cannot save it from being generally known as it was disclosed in this case," and "[f]or the same reasons described with respect to B1, B2 is not a trade secret because it is generally known." R50 Order at 6; see also id. at 4 ("to the extent the jury heard testimony seeking to alter the scope of the asserted trade secrets, th[e] [special] instruction advises the jury that it is not permissible to do so; rather, the definitions in their notebooks control"). This ruling rests on a failure of proof by Plaintiffs–that is, a failure to present substantial evidence on which a reasonable jury could rely to find that B2 as defined and disclosed–was not generally known. The testimony that Plaintiffs presented concerning whether B2 was generally known relates to an impermissible mid-trial revised scope of B2, and therefore it cannot create a disputed issue of fact for the jury to resolve.[8] This ruling construes all reasonable inferences in Plaintiffs' favor and disregards the competing evidence presented by Apple.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion.

---

[6] Plaintiffs' argument that the Rule 50 Order did not cite evidence demonstrating that B2 is generally known ignores their burden. Plaintiffs bear the burden to demonstrate that B2 is not generally known; if Plaintiffs failed to present substantial evidence that B2, as defined and disclosed, is not generally known, there is nothing for the Court to cite. Although Plaintiffs state that, regardless of how B2 is defined, the Rule 50 Order is wrong, the fact that Plaintiffs' opposition to the Rule 50(a) motion and Plaintiffs' current Motion analyze B2 according to how Kiani defined it at trial (e.g., ▮ ) suggests that Plaintiffs have no evidence that B2, as broadly defined and disclosed, is not generally known.

[7] This distinction can be illustrated from Kiani's testimony. At trial, Kiani rejected the assertion that "[t]he words [of B2] that are actually in the list in the jurors' notebooks . . . would cover things much broader than ▮ instead, he took the position that "the jury is going to have to look at these words [of B2], look at what Apple did, and based on the data that we have what we did to decide whether these words read on it." 4/6 Day 3 AM 37:15-22. In other words, Kiani was inviting the jury to see if B2 encompassed what Masimo did with data and if Apple did the same thing as Masimo, not whether B2 as broadly written was generally known because it swept in more than just AI, etc. If a trade secret is written so broadly as to sweep in some concepts that are generally known and some that are not, as a whole it cannot be a trade secret.

[8] That Kivetz's Google search for ▮ did not return any results does not say anything about whether Plaintiffs disclosed one definition before trial and relied on another definition during trial.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of this sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | eva | |