UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED**CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048 JVS (JDEx) | Date | August 7, 2023 |
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Erica Bustos for Elsa Vargas | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS] <u>Order Regarding (1) Defendant's Renewed Motion for Judgment as a Matter of Law under Rule 50(b) and (2) Plaintiffs' Motion for Judgment as a Matter of Law under Rule 50(b) (Redacted)</u>**

Before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law under Rule 50(b). See Mot., Dkts. 1748, 1765 (sealed); Opp., Dkts. 1789, 1812 (sealed); Reply, Dkts. 1815, 1841 (sealed); see also Dkts. 1723 (sealed), 1724 ("R50 Order")). The Court held a hearing on the Motion on July 31, 2023. For the reasons stated below, the Court **GRANTS-IN-PART**, **DENIES-IN-PART** and **DEFERS-IN-PART** the Motion.

Also before the Court is Plaintiffs' renewed Motion for Judgment as a Matter of Law under Rule 50(b) on Apple's statute of limitations defense. See Mot., Dkts. 1752, 1773 (sealed); Opp., Dkts. 1792, 1809 (sealed); Reply, Dkts. 1825, 1844 (sealed). The Court also held a hearing on this Motion on July 31, 2023. For the reasons stated below, the Court **DENIES** the Motion.

## I. BACKGROUND

The parties are familiar with the factual and procedural background of this case so the Court recites it here only as necessary to resolve the Motions. During trial, in relevant part, the Court denied Apple's Rule 50(a) motion for judgment as a matter of law. See R50 Order at 2-11 (misappropriation and use or disclosure for L4, L5, D&D, and related VIA), id. at 12-13 (statute of limitations), id. at 13-15 (unjust enrichment), id. at 15-16 (willfulness), id. at 16-18 (inventorship and ownership). Apple now renews its motion for

judgment as a matter of law on these elements under Rule 50(b). The Court also denied Plaintiffs' Rule 50(a) motion. See R50 Order at 18-20. Plaintiffs renew their motion for judgment as a matter of law on Apple's statute of limitations defense only.


## II. Legal Standard

A motion for judgment as a matter of law presents "a procedural issue not unique to patent law, which [the Federal Circuit] review[s] under the law of the regional circuit where the appeal from the district court normally would lie." Riverwood Int'l Corp. v. R.A. Jones & Co., 324 F.3d 1346, 1352 (Fed. Cir. 2003); see also Applied Med. Res. Corp. v. U.S. Surgical Corp., 435 F.3d 1356, 1364 (Fed. Cir. 2006).

Rule 50 authorizes the defendant to move for judgment as a matter of law any time after the plaintiff's case-in-chief. Fed. R. Civ. P. 50(a). In determining whether to grant judgment as a matter of law, the court must determine whether the jury has a "legally sufficient evidentiary basis" to find for the plaintiff. Id. If the judge denies the motion, and the jury later returns a verdict against the defendant, the defendant may renew its motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b); EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). Like the pre-verdict motion, the post-verdict motion also challenges the sufficiency of the plaintiff's evidence. Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013).

If the jury verdict is "supported by substantial evidence," the court must uphold the jury verdict. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); SEC v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011).  Here, of course, there is no verdict because the jury deadlocked.  However, if the evidence "permits only one reasonable conclusion," the court may grant judgment as a matter of law to the defendant. White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (internal quotation marks omitted). In making this determination, "[t]he court must not weigh the evidence, but rather should ask whether [the nonmoving party] has presented sufficient evidence to support a jury's [possible] conclusion." Todd, 642 F.3d at 1215. The court must "disregard all evidence favorable to the moving party that the jury is not required to believe." See Wallace, 479 F.3d at 624. Further, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Todd, 642 F.3d at 1215.


## III. APPLE'S RULE 50(b) MOTION

For the reasons stated below, the Court **GRANTS-IN-PART**, **DENIES-IN-PART** and **DEFERS-IN-PART**  the Motion.

A.     Proof of Trade Secrets and Misappropriation

    1.     L4

        a.     <u>Summary of Arguments</u>

Plaintiffs' asserted trade secret L4 is 

    Apple seeks judgment as a matter of law regarding L4, the alleged misappropriation of which relates to "using black foam in one quality-control step within the complex process of manufacturing Apple Watch," for four reasons. Mot. at 2. First, Apple argues it is not a trade secret because it was used in the industry for years. <u>Id.</u> Second, Apple argues no misappropriation because no evidence shows Lamego suggested a more narrowly defined ▉▉▉▉▉▉▉ black foam test, and Apple engineers testified that the black foam is used for quality control at the end of the manufacturing process, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. <u>Id.</u> at 2-4. Third, Plaintiffs did not show they possessed the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉ aspect of L4, and relying on only part of L4 at trial rendered it ambiguous or lacking sufficient particularity. <u>Id.</u> at 4-6. Fourth, as narrowed at trial, L4 is generally known because the Petersen reference discloses the same test, i.e., ▉▉▉▉▉ anc Plaintiffs published several patents disclosing the same thing. <u>Id.</u> at 6.

    Plaintiffs respond that they presented sufficient evidence of possession, including for ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ because Masimo designed its pulse oximeters ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Opp. at 2 (quoting 4/6 Day 3 PM Tr. 36; 4/7 Day 4 Tr. 67); <u>see also id.</u> (citing JTX-935 at -966; JTX-827 at -796 (Masimo's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Plaintiffs argue that their expert, Madisetti, testified that all aspects of L4 were not generally known, 4/12 Day 7 PM 11-2, 16-18, 33, and this Court already found L4 sufficiently particular. Opp. at 3 (citing Dkt. 264 at 4-10); <u>see also id.</u> at 5-6 (summarizing competing expert testimony). Regarding misappropriation, Plaintiffs argue that, after Lamego arrived at Apple, Apple changed its test, which was used to design prototypes, to be like Masimo's test. <u>Id.</u> at 3 (citing 4/12 Day 7 PM at 7-13; JTX-1063 at -857-9; JTX-143; JTX-434; JTX-1064; JTX-1068).

b.      Analysis

In the Rule 50 Order, with respect to L4, the Court ruled

that the record supports competing inferences concerning whether
L4 is a trade secret (e.g., including whether Plaintiffs possessed it, whether it was
generally known, whether it derives independent economic value from being
secret, and whether Plaintiffs took reasonable efforts to maintain its secrecy), and
whether Apple misappropriated L4. These questions turn on witness credibility and
several of the issues boil down to a classic battle of the experts. Therefore, drawing
all inferences in Plaintiffs' favor as the non-moving party, the Court concludes that
these questions must go to the jury.

R50 Order at 8.

The Court has reviewed Apple's present challenges but finds they do not change
the prior ruling. Thus, the Court denies the Rule 50(b) Motion as to L4.

*First*, Plaintiffs presented sufficient evidence for a jury to consider whether L4 as
defined as and disclosed was a trade secret. Although Apple used a "black foam test" in
the factory as early as 2013, which was "meant to measure for the existence of optical
crosstalk" and "prevent any light from going through the normal path, where it leaves the
product and has to come back into the window," at that time, Apple kept ' ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because it is
"desirable in manufacturing to make contact with the product as few times as possible" so
as not "to scratch it" or "leave fingerprints." 4/18 Day 10 PM Tr. 111:4-112:23. Apple
"tried testing it [the foam distance] at different levels to see if [it] could make it work
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
which happened "in the middle of 2014," because Apple "decided that [it] wanted the
best measurement possible," while also "implement[ing] processes to regularly monitor
the foam and change out the pieces of foam to make sure [to] never scratch[] any
watches." Id. at 113:2-23. This distinction is sufficient to allow the jury to consider
whether what is claimed in L4 is a trade secret, including whether it is different than what
was used at Apple and in the industry before Lamego joined Apple.

*Second*, the fact that Apple changed the black foam test to ▮▮▮▮▮▮▮▮▮ after
Lamego joined Apple, combined with the fact that contemporaneous documents were
sent to or reference Lamego, provide sufficient circumstantial evidence to allow the jury
to consider misappropriation. See JTX-1063 at -846-847. Madisetti testified that
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. 4/20 Day 12 PM
Tr. 90-93. Other testimony allows Plaintiffs to argue that Apple made changes to ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For example, Madisetti
testified that, after changing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 4/12

Day 7 PM Tr. 13:7-25. Regarding the later versions, Madisetti testified that ███████████ ████████████████████████████████████████████ ███████ Id. at 14:1-16; see also id. at 15:3-7 ███████ ███████████████████████████████████████████ see also JTX-1064 at -859 (regarding how test was used). This testimony is sufficient to allow the jury to consider Plaintiffs' claim that Apple, after changin ████████████████████ ███████████████████████████████████████████████████████

*Third*, the parties presented conflicting testimony on whether Masimo possessed the ████████████████████████████████████████ component of L4. This evidence is sufficient to create a factual dispute that should be resolved by the jury. Compare, e.g., 4/20 PM Tr. 31:6-32:19, 44:3-19 (Warren finding no possession) with Day 3 PM Tr. 36, Day 4 Tr. 67 (Masimo designed its pulse oximeters to ███████████████ ████████████████████████████████████ and JTX-935 at -966, JTX-827 at -796 (regarding ████████████████████████████████████████████████████████.

*Fourth*, the parties also presented conflicting expert testimony on whether L4 is generally known. This evidence is also sufficient to create a factual battle of the experts for the jury. Compare, e.g., 4/20 Day 12 AM Tr. 49:9-55:21 (Warren), JTX-3778, 4/6 Day 3 PM Tr. 95:3-12, and P-0162 with 4/12 Day 7 PM at 10, 16-18 and 4/20 Day 12 PM at 34-35, 66-70 (Madisetti). Apple does not explain why Madisetti's testimony should be disregarded. Apple's reliance on Emazing Lights, LLC v. Ramiro Montes de Oca, 2016 WL 3475330, at *3 (C.D. Cal. May 3, 2016), a summary judgment case considering a conclusory statement, does not provide a basis for disregarding Madisetti's opinions. This case is also unlike Atmel Corp. v. Info. Storage Devices, Inc., 189 F.R.D. 410, 416 (N.D. Cal. 1999), in which the court excluded proposed expert testimony at the Daubert stage because the expert "consciously refrained, at the direct suggestion of litigation counsel, from educating himself on the universe of literature in the relevant time frame or even determining what he himself had been aware of during the relevant period or what others in the industry generally knew;" instead choosing "to argue that if he personally could not now remember knowing about the seventeen claimed trade secrets prior to the end of 1992, then they must not have been generally known in that time frame."

Accordingly, the Court **DENIES** the Motion as to L4.

2.     L5

    a.     <u>Summary of Arguments</u>

Plaintiffs' asserted trade secret L5 is ███████████████████

██████████████████████████████████████████████

██████████████████████

Apple seeks judgment as a matter of law regarding L5 because Apple contends that the Apple Watch never had the problem L5 was trying to solve ████████████ ████████████ and Apple never used the specific solution suggested by L5 ███████████

Mot. at 7. Apple acknowledges that Lamego proposed a █████████████████ but Apple argues it rejected that suggestion, so there can be no misappropriation. <u>Id.</u> (citing 4/12 Day 7 PM Tr. 24:21-25:1). Further, Apple argues that Lamego's ████████████ ████████ is different from the particular solution Plaintiffs possessed █████████ ███████████████████████" <u>Id.</u> Instead, Apple avers that the evidence shows it implemented "a different solution █████████████████ from that which Plaintiffs possessed, to avoid the entirely different problem of ████████████ when turned off." <u>Id.</u> at 8.

Apple also argues that Plaintiffs failed to demonstrate possession of L5 because, although it is drafted in broad terms to encompass any solutions to the problem, at trial they corroborated only one solution. <u>Id.</u> (contrasting Plaintiffs' counsel's concession that the language of L5 does not list or require a "specific solution" with Madisetti's testimony that, at best, Plaintiffs have developed only a finite number of solutions). Further, Apple contends that Plaintiffs failed to show L5 is not secret because the "Mims reference showing███████████████████ has been generally known since 1973 and depicts ██████████████████████████—i.e., the same configuration Plaintiffs later used." <u>Id.</u> at 9 (also citing 1979 Roedel article, Webster textbook, Plaintiffs' patents, etc.).

Plaintiffs respond that it "took years" for Masimo to discover solutions to this problem on which Lamego worked, including ████████████████████ ██████████ Opp. at 6. Based on Plaintiffs' evidence, Madisetti concluded that they possessed L5, and Plaintiffs aver this is sufficient to avoid JMOL. <u>Id.</u> Plaintiffs assert that "L5 does not recite every possible means of ████████████ ██████ to address the identified problem;" instead, it "concerns recognizing a problem and designing circuits to address the problem." <u>Id.</u> at 7. Plaintiffs argue that "Apple's ██████ ██████ [is] equivalent to Masimo's ██████████████ <u>Id.</u> at 8 (citing 4/20 Day 12 PM Tr. 71-73, 113-117). Plaintiffs contend they presented sufficient evidence of misappropriation to avoid JMOL, including that Lamego suggested ████████████████ ████████████████████ and Apple ████████████████████

██████████████████. Id. at 8. Plaintiffs contend that Lamego's identification of the problem and recommended solution is sufficient to constitute misappropriation even if Apple did not implement that solution; but in any event, Madisetti opined there was no difference in the solution Apple implemented. Id. at 9.

Plaintiffs also argue that they presented sufficient evidence to support that L5 is not generally known. Id. For example, Madisetti testified that Apple was unaware of L5 and even Apple's expert failed to identify any references disclosing L5. Id.

      b.   <u>Analysis</u>

In the Rule 50 Order, with respect to L5, the Court ruled

that the record supports competing inferences concerning whether L5 is a trade secret (<u>e.g.</u>, including whether Plaintiffs possessed it, whether it was generally known, whether it derives independent economic value from being secret, and whether Plaintiffs took reasonable efforts to maintain its secrecy), and whether Apple misappropriated L5. As with L4, these questions turn on witness credibility and several of the issues boil down to a classic battle of the experts (<u>e.g.</u>, are ████████ and shortcircuit the same concepts, did Apple ever implement Plaintiffs' specific solution). Therefore, drawing all inferences in Plaintiffs' favor as the non-moving party, the Court concludes that these questions must go to the jury.

R50 Order at 9-10.

Further, the Court stated that, "if Apple elects to renew its motion under Rule 50(b) as to specificity, the Court would like more briefing concerning . . . whether a narrowed trade secret interpretation offered at trial could provide substantial evidence to allow a jury to find possession of a trade secret based on that narrowed interpretation (<u>e.g.</u>, Madisetti's testimony that L4 and L5 include only specific solutions rather than every conceivable yet unspecified solution)." Id. at 4.

The Court begins by addressing specificity. In response to the Court's question posed in the Rule 50 Order, Apple submits that "Plaintiffs cannot permissibly 'claim[] broad swaths of solutions to general competing considerations … rather than the' solution (or handful of solutions) they adopted." Mot. at 8 (quoting <u>Waymo LLC v. Uber Techs., Inc.</u>, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017)). Plaintiffs respond that, as the Court recognized at the MSJ stage, L5 does not impermissibly claim broad swaths of solutions, but rather falls under the category of trade secrets that are "protectable as 'an idea and not a fully developed product….'" Opp. at 7 (quoting Dkt. 1283 at 14 (MSJ Order)). Thus, Plaintiffs conclude they presented sufficient evidence they possessed "the idea" claimed in L5, which does not envision claiming any and all solutions. Id.

The Court finds that the idea claimed in L5 is sufficiently particular to let the possession question go to the jury. See BladeRoom Grp. Ltd. v. Facebook, Inc., No. 5:15-CV-01370-EJD-HRL, 2017 WL 2224838, at *2 (N.D. Cal. May 22, 2017) (describing permissible continuum of trade secrets, from "general idea," to "mid-level concepts," to "granular information such as source code") (citing Altavion, Inc. v. Konica Minolta Systems Laboratory, 226 Cal. App. 4th 26 (2014)). As stated, L5 is ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ Thus, L5 comprises knowledge concerning what causes the errors, and the ability to reduce the errors ████████████████████████ to prevent the problem. Unlike Waymo, this case does not involve laying claim to "broad swaths of solutions" to "general competing considerations and engineering trade-offs" that are problems well known in the industry. 2017 WL 2123560, at *7. Rather, it (1) it identifies a problem unknown in the industry and (2) comprises the knowledge that ████████████████████████ will fix it; it does not claim every solution to this problem.

Plaintiffs attempted to show possession of the idea by introducing testimony about certain specific solutions. Unlike B2, which Plaintiffs attempted to modify during trial, the Court finds that, during trial, Plaintiffs provided examples to show possession of the idea of L5 as defined and disclosed, not to claim every undisclosed possible solution to the problem. The jury could properly consider whether the evidence presented supports the claimed scope of L5, and whether the evidence related to Plaintiffs' solutions supports possession. Therefore, the Court concludes that noting in the Rule 50(b) Motion changes the ruling in the Rule 50 Order.

Turning to the other challenges, they are the same as those presented at the Rule 50(a) stage. As stated in the Rule 50 Order, competing inferences may be drawn about the relevant evidence, which includes Lamego's suggestion to Apple, whether Apple faced that problem, whether Apple adopted Lamego's solution or a different solution to that problem or a different problem, whether the solution proposed by Lamego was generally known, and the like. See, e.g., JTX-184 at -173 (Lamego's suggestion); JTX-185 at -824 (Apple discussing design relating to ███████████████████ ███████████████████); JTX-185 at -836 (labeling it as a "████████ feature); 4/20 Day 12 PM Tr. 71-73, 113-117 (explaining overlapping concepts); JTX-541 at -581 (advising Broadcom engineers to maintain feature from "Marcelo time"); 4/12 Day 7 PM Tr. 22-31, 4/20 Day 12 PM Tr. 73 (Madisetti's testimony concerning misappropriation).[1]

Accordingly, the Court **DENIES** the Motion as to L5.

---

[1] In a footnote, Apple argues that Madisetti's solution-comparison testimony is conclusory, Mot. at 8 n.5, but this conclusory argument made in passing and relegated to a footnote provides an insufficient basis to disregard the entirety of Madisetti's testimony on this point.

3. D1, D3, D10

a. <u>Summary of Arguments</u>

As summarized by Plaintiffs, D1 encompasses a ███████████████████ D3 encompasses ███████████████ and D10 is embodied in ███████████ ███ Opp. at 9-10.[2]

Apple argues there is no evidence that Lamego disclosed D1 and D3 to Apple, and no evidence supports the conclusion that Apple used D10 to draft Claim 1 of the '754 Patent, but rather they drafted D10 well after that patent issued. Mot. at 9-10. Further, Apple argues there is no misappropriation because Madisetti conceded that Apple never used D1, D3, or D10 in the Apple Watch. <u>Id.</u> at 10 (citing 4/12 Day 7 PM Tr. 98-99). Apple contends that allegedly using the asserted demodulation trade secrets to "benchmark" the technique Apple uses is insufficient to show misappropriation. <u>Id.</u>[3] Apple also argues that Plaintiffs failed to present evidence that they possessed D1's ███████████████████████████████████ D3's ██████████████ step, and D10's ██████████████ <u>Id.</u> at 10-11. Further, Apple contends that Plaintiffs failed to present evidence that the asserted D&D trade secrets were not generally known. <u>Id.</u> at 11.

Plaintiffs respond that the evidence supports the conclusion that Lamego understood these techniques and taught them to Poeze; and Madisetti relied on this to conclude that Plaintiffs possessed the trade secrets. Opp. at 10. Plaintiffs contend that Madisetti permissibly relied on the Pronto-7 source code without having it admitted in evidence. <u>Id.</u> Plaintiffs argue that the evidence supports misappropriation, including that "Lamego disclosed to Apple detailed diagrams and matlab scripts explaining D1, D3, and D10," JTX-153; JTX-154; JTX-880; JTX-851; "Apple filed a patent containing

---

[2] As defined and disclosed, the alleged demodulation and demultiplexing trade secrets are as follows.



See Dkt. 1433, Ex. B at 3-6.

[3] Apple suggest that, "[e]ven if Plaintiffs had presented more than a scintilla of evidence in support of this theory (and they have not), this Court should limit any retrial on misappropriation to this single, narrow argument [about the alleged demodulation trade secrets advancing Apple's research]." Mot. at 10.

D1, D3, and D10, naming Lamego as the sole inventor," JTX-1262; and "Apple used
these trade secrets to benchmark and re-design its watch algorithm (DCS 2.0)," JTX-153;
JTX-273; JTX-411; JTX-4199; 4/12 Day 7 PM Tr. 69-70. Opp. at 11. Plaintiffs also
argue that "Apple plans to include the trade secrets in future watches," JTX-238, 4/12
Day 7 PM Tr. 70. Id. Further, Plaintiffs contend they presented sufficient evidence that
the demodulation trade secrets were not generally known. Id. at 12.

      b.    <u>Analysis</u>

In the Rule 50 Order, with respect to L5, the Court ruled

> that the record supports competing inferences concerning whether
> D1, D3, and D10 are each a trade secret (<u>e.g.</u>, including whether Plaintiffs
> possessed them, whether they were generally known, whether they derive
> independent economic value from being secret, and whether Plaintiffs took
> reasonable efforts to maintain their secrecy), and whether Apple misappropriated
> the demodulation asserted trade secrets. As with L4 and L5, these questions turn on
> witness credibility and several of the issues boil down to a classic battle of the
> experts (<u>e.g.</u>, are the solutions generally known, did Apple misappropriate).
> Therefore, drawing all inferences in Plaintiffs' favor as the non-moving party, the
> Court concludes that these questions must go to the jury.

R50 Order at 11.

In substance, Apple's present challenges are the same as those presented at the
Rule 50(a) stage. As stated in the Rule 50 Order, competing inferences may be drawn
about the relevant evidence, which includes Madisetti's testimony that Plaintiffs
possessed D1, D3, and D10. Madisetti permissibly testified that the Pronto-7 source code
contains ████████████████████████████████████████████ <u>See</u> 4/12
Day 7 PM Tr. 47-48. Experts may rely on information that is not admitted into evidence.
<u>See</u> Fed. R. Evid. 703.

Turning to misappropriation, the Court agrees with Plaintiffs that if Apple included
the scope of the demodulation trade secrets in the '754 Patent, this is enough to constitute
use and therefore misappropriation. The Court agrees with Apple, however, that at any
subsequent trial, Plaintiffs may not expand their theory of use to extend beyond use in the
patent and underlying use to design Apple's algorithm. Planned future use is speculative
and cannot establish misappropriation.

Accordingly, the Court **DENIES** the Motion as to D1, D3, and D10.

4.      VIA

a.      <u>Summary of Arguments</u>

Plaintiffs' alleged VIA trade secret comprises "[t]he value, importance, and appropriateness of the foregoing trade secrets [L4, L5, D1, D3, and D10], individually or collectively or in any combination."

Apple argues that Plaintiffs failed to present any evidence that the "nebulous catchall" alleged VIA trade secret is itself a trade secret. Mot. at 11-12. Apple contends that, at best, the VIA-related testimony concerns possession and misappropriation of the technical trade secrets themselves, not some unspecified additional trade secret. <u>Id.</u>

Plaintiffs respond that "Madisetti explained that Masimo understood the VIA of using the trade secrets to make accurate and reliable sensors." Opp. at 12 (citing 4/12 Day 7 PM at Tr. 72-74). And the manner in which Apple misappropriated the technical trade secrets shows that Apple understood the value, importance, and appropriateness of adopting them. <u>Id.</u>

b.      <u>Analysis</u>

In the Rule 50 Order, with respect to VIA, the Court found

that this issue is better reserved for a Rule 50(b) motion, depending on whether the jury finds any demodulation and light piping asserted trade secrets to be trade secrets, and whether it finds any misappropriation thereof. That context will help inform what, if anything, is left of VIA and whether the record supports any findings with respect to the existence and misappropriation of VIA.

R50 Order at 11.

Because the jury did not reach a verdict, the record concerning VIA remains the same as it did at the Rule 50(a) stage. Nonetheless, because the Court did not analyze the merits of Apple's request for judgment as a matter of law as to VIA, it will do so now.

During trial, Madisetti explained the VIA trade secret as follows: "Masimo's *technical trade secrets* allow the creation of accurate and reliable pulse oximeters that work under a variety of real-life deployment conditions," and "[o]ne of the benefits of the technology is that it works under very stressful conditions, like motion as well as low perfusion." 4/12 Day 7 PM Tr. 73:3-7 (emphasis added). He testified that VIA also relates to the fact that it is "appropriate that these technologies are applied to the area of noninvasive physiological parameters of measurement and monitoring." <u>Id.</u> at 73:20-23. Madisetti opined that Apple misappropriated the VIA trade secret because *the technical trade secrets* "have excellent performance" and "Apple benefitted from the use of

Masimo's *trade secrets* in all its Apple watch products." Id. at 74:4-11 (emphasis added). Madisetti further opined that, as to "Masimo's trade secret VIA, Masimo developed and possessed VIA," and "Masimo exposed *these* trade -- *technical trade secrets* to Lamego. Masimo took reasonable steps to maintain secrecy. And Masimo derives independent economic value from *these* not being generally known. So that concludes the analysis of the VIA." Id. at 75:3-10 (emphasis added).

Construing Madisetti's testimony in the light most favorable to Plaintiffs, and ignoring any competing testimony from Apple's witnesses, the Court finds that no reasonable jury could find a sufficient evidentiary basis to conclude that VIA is a trade secret. At best, Madisetti's testimony is circular because he uses the label of "VIA" to bolster his testimony about why the technical trade secrets are themselves trade secrets (e.g., they derive independent economic value from being secret because they produce excellent results, allow for accurate products, etc.). The rest of his testimony restates aspects of the technical trade secrets (e.g., it is appropriate to use the technical trade secrets for noninvasive monitoring, but by definition that is their application).

If this type of testimony were sufficient to establish an independent trade secret, every trade secret plaintiff could tack on a catchall "value, importance, appropriateness" trade secret to an underlying trade secret by alleging nothing more than, the underlying trade secret is valuable/important/appropriate in its respective context. But for the underlying trade secret to qualify as a trade secret, by definition, it must have economic value by virtue of being secret. In this context, the alleged tack-on trade secret collapses into the underlying trade secret to which it relates. Setting aside the fact that neither party cites a case recognizing or rejecting the concept of VIA, considering the scant testimony presented on the alleged VIA tack-on trade secret in this case, which provides opinions about the technical trade secrets themselves, VIA as defined and disclosed cannot constitute an independent trade secret as a matter of law.

Accordingly, the Court **GRANTS** the Motion as to VIA.

B.    Unjust Enrichment

1.    Summary of Arguments

Apple argues that "[n]o reasonable juror could have credited Plaintiffs' sole theory for monetary relief, which was that Plaintiffs were entitled to the total profits of the Blood Oxygen feature used in Apple Watch Series 6 and 7," because "Plaintiffs failed to connect Apple's purported misappropriation of the ATS [asserted trade secrets] to Blood Oxygen in any way." Mot. at 12; see also id. at 14 ("zero value" assigned to other features like a faster processing chip, faster charging, better materials, more durability). Apple contends this is fatal to Plaintiffs' damages claim because Plaintiffs showed neither "that the supposed misappropriation 'was a substantial factor in causing Apple to be unjustly enriched' nor that Apple would 'not have achieved' all profits attributed to

the Blood Oxygen feature 'except for its misappropriation' of one or more of the ATS. Id. at 12 (citing Dkt. 1715 at 26, 48 (Jury Instructions Nos. 19 and 38); Ajaxo Inc. v. E*Trade Fin. Corp., 187 Cal. App. 4th 1295, 1305 (2010) (Plaintiffs must provide "some reasonable basis for the computation" of value of ATS)). Apple argues no link between the alleged misappropriation on the one hand, and the later blood oxygen feature on the other, was established at trial because "[t]he emails Plaintiffs rely upon to show a supposed benefit are from 2014, six years before Series 6 and Blood Oxygen came on the market." Id. at 13. For example, the accused short circuit relating to L5 has been in place since Series 1, and Apple argues no testimony links L5 to Blood Oxygen, which was added in Series 6 and 7. Id. at 14. Moreover, Apple argues that Plaintiffs' request for a $1.85 billion damages award is inconsistent with their closing argument that "Blood Oxygen is a 'dangerous toy' and that Apple has 'many more years to go before they can actually do a true monitoring device on the wrist." Id. (quoting 4/26 Day 14 AM Tr. 95). Thus, Apple concludes that, "[b]ecause the link between the $1.85B sought and Apple's purported unjust enrichment is non-existent, awarding anything more than a de minimis amount would be unconstitutional as 'grossly excessive.'" Id. at 15 n.10 (quoting BMW of N. America, Inc. v. Gore, 517 U.S. 559, 568 (1996)).

Plaintiffs respond that the Court already ruled that they "presented sufficient evidence for the jury to decide 'whether Plaintiffs have proved the misappropriation was a substantial factor in the claimed unjust enrichment.'" Opp. at 13 (quoting Dkt. 1724 at 14). Plaintiffs contend that nothing in Apple's damages expert's testimony warrants revisiting this ruling. Id. Further, Plaintiffs contend that each misappropriated trade secret "helped reduce noise and create a cleaner PPG signal," which is "critical to calculating blood oxygen." Id. at 13-14 (citing JTX-1078 at -632). For example, Plaintiffs aver that "Apple used L4 when it modified its sensor to include blood oxygen" (citing 4/12 Day 7 PM Tr. 11-15; JTX-1064 at -859); using L5 for "minimizing cross talk is critical for blood oxygen (citing 4/6 Day 3 PM Tr. 106-110; JTX-1078 at -632); Apple used D1, D3, and D10 to "to understand limitations of [its Dark Channel Subtraction algorithm] and adopt an improved DCS2 algorithm, which benefitted Apple's blood-oxygen feature; and Apple started developing its blood oxygen feature as early as 2014. Id. at 14-15. Further, as to the "dangerous toy" argument, Plaintiffs respond that closing argument is not evidence, and in any event it is not inconsistent to say that, while Apple improved its blood oxygen feature by stealing Plaintiffs' trade secrets, it is still inadequate. Id. at 15.

In reply, Apple argues that Plaintiffs improperly attempt to link the alleged misappropriation to the Blood Oxygen feature based on "(1) a mismash of exhibits connected only by attorney argument and (2) the testimony of a witness (Diab) who did not testify about Apple technology and who was ignorant about the ATS." Reply at 14. As to D1, D3, and D10, Apple rejects Plaintiffs' "attempt to support [their] attorney argument with five internal Apple documents [that predate development of Blood Oxygen] and a snippet of testimony from an Apple engineer, none of which references Plaintiffs' ATS (as opposed to the general concept of modulation) or Blood Oxygen." Id. at 15 (citing JTX-153; JTX-273; JTX-411; JTX-4199; JTX-183; Day 10 4/18 PM Tr. 99).

Turning to L4 and L5, Apple rejects Plaintiffs' new assertion that "'the trade secrets are more important to blood oxygen' in Series 6-7 than they are for the heart-rate calculations used in the SE Series" because no trial testimony or evidence supports it. Id. at 15. Further, Apple observes that "Plaintiffs do not dispute that they offered no evidence showing the accused short circuit benefits Apple's Blood Oxygen feature." Id. at 16.

2.      Analysis

In the Rule 50 Order, the Court ruled, in relevant part, that

whether Plaintiffs have proved the misappropriation was a substantial factor in the claimed unjust enrichment is a matter for the jury to decide. For example, if the jury concludes that Apple did not use some of the asserted trade secrets and/or certain Apple use provided a negligible benefit in that it informed minimal aspects of the design and development of the Apple Watch, it may conclude that Plaintiffs have not shown causation and therefore may discount testimony from Plaintiffs' technical witnesses who discussed use, as well as Kinrich's overall opinion on unjust enrichment.

Rule 50 Order at 14.

The Court also stated that, "[b]ecause the evidence ha[d] not closed with respect to damages (i.e., Apple's damages expert will testify), the Court is amenable to considering this issue [unjust enrichment] on a renewed Rule 50(b) motion if necessary." Id. at 15.

Given the compressed time frame associated with the Rule 50(a) proceedings and the Court's ruling, the Court will consider this issue further to ensure that the ruling is correct.

The Court observes that the Rule 50 Order focused on the shortcomings in Kinrich's economic-value testimony (e.g., assigning zero value to all other watch features in Series 6 and 7), which Apple was permitted to and did explore on cross-examination. Id. at 14 ("Whether he did enough to isolate those profits (e.g., by ignoring all other feature differences between the Series 6 and 7 and SE) . . . is a matter for the jury to decide."). The Court stands by that portion of the ruling because these issues go to weight, not admissibility. See also Dkt. 1602 (Daubert Order).

Upon further review of the trial record, when considered in view of the parties' unjust enrichment arguments, the Court concludes that the Rule 50 Order did not sufficiently consider whether Plaintiffs presented a sufficient evidentiary basis relating to causation for their unjust enrichment theory to go to the jury. The parties' brief Rule 50(b) arguments do not make clear whether trial evidence supports Plaintiffs' contention that misappropriation of L4, L5, D1, D3, and D10 specifically caused, i.e., was a substantial factor, in the alleged unjust enrichment. The Court must examine on what

evidence Plaintiffs rely to causally link the misappropriation of these specific trade secrets to profits flowing from the Blood Oxygen feature specifically (without regard to the separate question of whether Plaintiffs should receive all or some of those profits).

As the parties are aware, the Court instructed the jury that, if it finds misappropriation, it should consider Plaintiffs' unjust enrichment claim.

> To succeed on this claim for unjust enrichment with respect to any particular Asserted Trade Secret, Masimo and Cercacor must prove all the following essential elements:
>
> 1. That Apple was unjustly enriched; and
> 2. That Apple's acquisition, use or disclosure of the Asserted Trade Secret was a substantial factor in causing Apple to be unjustly enriched.
>
> You must consider each one of the Asserted Trade Secrets individually.

Dkt. 1715 at 26 (Instruction No. 19).

Further, the Court instructed that

> A "substantial factor" is a factor that a reasonable person would consider to have contributed to the unjust enrichment. It must be more than a remote or trivial factor. It does not have to be the only cause of the unjust enrichment. Conduct is not a substantial factor in causing unjust enrichment if the same unjust enrichment would have occurred without that conduct.

Id. at 47 (Instruction No. 37); see also id. at 48 (Instruction No. 38 ("To prove unjust enrichment, Masimo and Cercacor must prove that Apple is liable for misappropriation of an Asserted Trade Secret and that the misappropriation caused Apple to receive a benefit that it otherwise would not have achieved."); id. ("to decide the amount of any unjust enrichment, first determine the value of Apple's benefit that it would not have achieved except for its misappropriation of the Asserted Trade Secrets").

Against this backdrop, Plaintiffs argue that Apple used L4 when it modified its sensor to include blood oxygen, used L5 to minimizing cross talk, which is critical for blood oxygen, and used D1, D3, and D10 to improve its algorithm that benefitted Apple's blood-oxygen feature. Plaintiffs support these attorney arguments with string-cite record citations, including transcript and exhibit citations, without analysis. The Court assumes that Plaintiffs did so because they assumed the Court would not be revisiting unjust enrichment in the Rule 50(b) Order. However, as stated, because the Court finds that it did not sufficiently address causation in the Rule 50(a) Order, it will order supplemental briefing on this issue. The parties shall focus on the causation element of unjust enrichment as it relates to linking specific trial evidence (testimony and exhibits)

concerning each specific alleged misappropriated trade secret with the Blood Oxygen feature specifically, including an analysis of the timeline (e.g., the date a relevant email was sent or document was created in relation to when Apple started developing its Blood Oxygen feature).

Therefore, the Court orders as follows:

(1) Within 14 days of this Order, Apple shall file a supplemental Rule 50(b) Motion regarding unjust enrichment causation not to exceed 8 pages.

(2) Within 14 days of Apple filing its supplement, Plaintiffs shall file a supplemental response regarding unjust enrichment causation not to exceed 8 pages.

(3) In their supplements, the parties shall include specific citations to trial testimony and exhibits by describing and/or quoting the evidence and explaining how it is relevant to the Court's specific inquiry regarding unjust enrichment causation. String citations without more are not permitted. Relevant trial exhibits should be attached as exhibits.

(3) No reply is necessary unless otherwise ordered.[4]

Accordingly, the Court **DEFERS** the Motion as to unjust enrichment causation concerning whether the evidence presented at trial provides a sufficient link to the allegedly misappropriated trade secrets to the Blood Oxygen profits to send the question to a jury.

C.     Statute of Limitations

1.     <u>Summary of Arguments</u>

Apple argues that the statute of limitations on Plaintiffs' misappropriation claim began to run as to all asserted trade secrets as soon as it began to run for one of them because no reasonable jury could adopt Plaintiffs' unsupported assertion that the technical ATS are unrelated to each other. Mot. at 15. Apple contends that, "[a]t a minimum, the technical ATS are connected by the fact that Plaintiffs allege they were misappropriated through Lamego." <u>Id.</u> Apple asserts that it "indisputably proved that any purported misappropriation first occurred before January 9, 2017" because Plaintiffs allege misappropriation through Lamego, which necessarily had to occur in 2014. <u>Id.</u> Apple asserts that "[n]o reasonable jury could find Plaintiffs met their burden to prove that they could not have discovered the purported misappropriation before 2017 'despite reasonable diligence.'" <u>Id.</u> (quoting <u>Gabriel Techs. Corp. v. Qualcomm Inc.</u>, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)). Apple contends that Plaintiffs' January 2014 letter shows they had reason to suspect Apple was misappropriating the trade secrets at that time. <u>Id.</u>

---

[4] The Court will decide at a later time whether to hold further oral argument on the unjust enrichment causation issue. No further argument is needed on Plaintiffs' "dangerous toy" argument. The Court declines to grant JMOL on that basis.

at 16. Apple argues that Plaintiffs never investigated after Lamego left or after Apple released Series 0, 1, and 2 Watch through 2014 through 2016, respectively. Id. And Apple observes that Plaintiffs did not monitor Apple's patent filings, which could have confirmed their allegations by 2016. Id.

Plaintiffs respond that, "[a]s explained in Masimo's Rule 50(b) Motion, Masimo did not know or have reason to suspect Apple misappropriated any asserted trade secret before January 2017 (three years before suit)." Opp. at 16 (citing  Dkt. 1749-1 at 3-7). And "[a] reasonable investigation before January 2017 also would not have revealed facts sufficient to bring suit." Id.

2.    Analysis

In the Rule 50 Order, the Court ruled that "that the record supports competing inferences concerning whether Plaintiffs knew or should have known of the alleged misappropriation." R50 Order at 12. This is because "[h]ow the jury interprets Masimo's warning letter to Apple, Kiani's state of mind from speaking with Dalvi, and whether Kiani did enough with the information he had, etc., are matters for the jury to resolve." Id. Thus, "[t]aking all inferences in Plaintiffs' favor as the non-moving party, judgment as a matter of law is not available on this record." Id.

Apple's Rule 50(b) Motion presents no basis on which to deviate from the Court's Rule 50 Order. The Court stands by its ruling that the statute of limitations defense must go to the jury.

Before the hearing, the Court's tentative ruling advised the parties that it may be amenable to partial JMOL on this defense concerning the first prong. The Court asked the parties to meet and confer to determine whether any aspect of this defense could be streamlined given the trial record. At the hearing, the parties advised that they have reached agreement that, since the alleged misappropriation derives from Lamego, Apple has met prong (1) (proving that any alleged misappropriation first occurred before January 9, 2017). See Dkt. 1715 at 10 (Instruction No. 6 ("Apple has the burden of proof on this defense by a preponderance of the evidence to show that the claimed misappropriation of a trade secret occurred before January 9, 2017 and is therefore time barred."). Because the parties have reached agreement on this seemingly non-controversial issue, the Court need not grant JMOL on it. The relevant jury instruction(s) should be updated before any future trial.

The Court's tentative ruling also observed that Plaintiffs' Opposition does not address Apple's argument that the trade secrets are related and thus the statute of limitations should begin to run as of the date that Plaintiffs discovered or with reasonable diligence should have discovered, facts that would have caused a reasonable person to

suspect that Apple had misappropriated that trade secret. <u>See</u> <u>id.</u>[5] The Court asked the parties to meet and confer on this issue as well, but the parties reported they were unable to reach agreement concerning whether, at a minimum, they can agree that L4 and L5 are related, and D1, D3, and D10 are related.[6] Because the parties did not reach agreement, the Court addresses the merits of this dispute.

The parties do not dispute that the statute of limitations begins to run for all related trade secrets as soon as Plaintiffs could have discovered that Apple misappropriated a single one. <u>Compare</u> D-Mot. at 15 <u>with</u> Dkt. 1703 (P's Rule 50(a) Opp.) at 22 (both citing <u>MedioStream, Inc. v. Microsoft Corp.</u>, 869 F. Supp. 2d 1095, 1110 (N.D. Cal. 2012) (collecting cases)).

To determine whether the technical trade secrets are related, the Court considers whether they "concern similar technology developed for use in similar products." <u>Id.</u> at 1110. Applying this test, the Court finds that LP4, LP5, D1, D3, and D10 are related for statute-of-limitations-notice purposes because they concern a similar technology (noninvasive monitoring of physiological parameters) used in a similar application (all allegedly used to improve Plaintiffs' products and misappropriated by Apple in the Apple Watch). <u>See, e.g.</u>, Dkt. 1646 at 9, 11 (Plaintiffs aver that the technical trade secrets comprise "several techniques" "critical to Masimo's … successfully developing its multi-wavelength noninvasive-blood-parameter device").

Further, because Plaintiffs assert that Apple misappropriated the technical trade secrets through Lamego, which they allege occurred during Lamego's short tenure at Apple, this further supports the conclusion that the technical trade secrets are related for statute of limitations purposes because it shows alleged use in the same application. <u>See</u> <u>Glue-Fold, Inc. v. Slautterback Corp.</u>, 82 Cal. App. 4th 1018, 1026 (2000).[7]

Although Plaintiffs have argued in the past that the now-eliminated business methods trade secrets "have no overlapping subject matter with the technical trade secrets," they have acknowledged that the technical trade secrets share "overlapping

---

[5] Plaintiffs' Reply on its Rule 50(b) Motion asserts that "It does not matter whether the statute of limitations runs on each trade secret separately or all related trade secrets together . . . ." Dkt. 1844 at 2. Based on this acknowledgment, the Court believed the parties could reach agreement on this point.

[6] If Plaintiffs intended to argue that none of the technical trade secrets is related to any other technical trade secret, the Court's tentative ruling advised that they should be prepared to cite record evidence from the trial establishing this point. The tentative ruling also asked Plaintiffs to address the seeming contradiction that in their Rule 50(a) motion, they treated all trade secrets as subject to a single limitations period that began to run in October 2019. <u>See</u> Dkt. 1657 at 2-6. Neither of these questions was addressed in detail at the hearing.

[7] At the hearing, Plaintiffs made a passing argument that they maintain their respondeat superior argument, but the Court has already ruled on this issue as it relates to the jury instructions and verdict form and does not intend to revisit it for any future trial.

application." Dkt. 1703 at 22. Plaintiffs have also analyzed the technical trade secrets as one category when considering whether they were on notice of misappropriation. Id. at 22-24. These admissions further support the Court's finding.[8]

Finally, the Court's finding that the technical trade secrets are related is also supported by Plaintiffs' presentation of evidence concerning development of the trade secrets, Plaintiffs' theory concerning how Apple used each trade secret to develop the Apple Watch, and Plaintiffs' overarching unjust enrichment theory which values all the trade secrets as a related package. Thus, the Court finds that, as soon as Plaintiffs were (or should have been) on notice of Lamego's alleged misappropriation, the statute of limitations began to run for the technical trade secrets. Any future verdict form will have a single question relating to the statute of limitations.

Accordingly, the Court **DENIES** the Motion as to the overall statute of limitations defense; adopts the parties' agreement concerning January 9, 2017; and finds that the technical trade secrets are related for purposes of the statute of limitations.

D.    Intent

1.    <u>Summary of Arguments</u>

Apple seeks JMOL on lack of requisite intent because there is no evidence it (1) used "improper means to acquire knowledge of the trade secret[s]" and used/disclosed the ATS without authorization or (2) "knew or had reason to know its knowledge of the ATS was wrongfully acquired." Mot. at 17 (citing Cal. Civ. Code § 3426.1(b)(1)-(2)).

Plaintiffs respond that "[t]he Court held Apple's knowledge and intent raised factual issues for the jury" and "[t]hat holding was correct and should not be disturbed." Opp. at 16 (citing Dkt. 1724 at 3). Plaintiffs argue Apple is liable under respondeat superior, and other evidence supports a finding of intent. Id. at 16-18.

2.    <u>Analysis</u>

The Court denied Apple's Rule 50(a) motion concerning intent, ruling that

Apple is correct that "it is not 'appropriate to direct a jury to impute an agent's knowledge of a secret to the principal,'" at least where the agent "did not inform other employees of plaintiff's concept." See Carr v. AutoNation Inc., 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018). But whether Drs. O'Reilly and Lamego used or shared any Masimo/Cercacor trade secrets at Apple, and whether Apple knew it, turns on witness credibility, at least for those trade secrets for which Plaintiffs have shown sufficient evidence of existence and misappropriation to

---

[8] At the hearing, Plaintiffs agreed that at least D1, D3, and D10 should be grouped together.

send the question to the jury. For example, Apple argues that "Drs. Lamego and O'Reilly each confirmed that Apple had not asked them to share Plaintiffs' confidential information," Mot. at 3-4, but the jury is not required to believe this testimony. They may assess witness credibility and decide whether to believe the testimony counterbalanced against the documentary evidence such as emails and internal presentations. Drawing all inferences in Plaintiffs' favor, the record evidence does not permit only one reasonable conclusion on this point.

R50 Order at 3.

Apple presents no basis to revisit the ruling in the Rule 50 Order. Accordingly, that ruling is adopted and the Motion is **DENIED** on this basis.

E.      Willfulness

1.      Summary of Arguments

Apple argues that "Plaintiffs certainly have not identified anything that establishes Apple engaged in 'vile and wretched' conduct," and "recruiting from a competitor is lawful, not despicable." Mot. at 18 (citing Dkt. 1715 at 43, Dkt. 1703 at 27).

Plaintiffs respond that "[t]he Court found sufficient evidence of willfulness" and the trial evidence is "sufficient to show willful, malicious, and despicable conduct by 'clear and convincing evidence.'" Opp. at 18 (quoting Dkt. 1724 at 15-16).

2.      Analysis

In the Rule 50 Order, the Court held, "[b]ased on the trial record, the Court finds there is sufficient evidence giving rise to competing inferences to allow this question to go to the jury." R50 Order at 15. Although the Court expressed "willing[ness] to revisit this issue on a renewed Rule 50(b) where both Apple's motion and Plaintiffs' response address the clear and convincing burden of proof," id. at 16, the Court has reviewed the parties' briefs and concludes that the Rule 50 Order is correct and will be adopted.

Accordingly, the Court **DENIES** the Motion as to willfulness.

F.      Inventorship and Ownership

1.      '052 and '670 Patents

Apple argues that no reasonable jury could find in favor of Plaintiffs' '052 and '670 Patents inventorship arguments. Mot. at 18-19 (arguing no joint effort, explaining well-known concepts). Further, Apple contends that the claims fail because Plaintiffs

"offered no evidence corroborating Diab's testimony he communicated the (prior art) idea of reflectivity to Lamego." <u>Id.</u> at 19.

Plaintiffs respond that "it was sufficient for Lamego to convey the inventive contribution from Diab to Apple" and Apple adopted the idea to use reflectivity on the back of the Apple Watch. Opp. at 19. Plaintiffs argue reflectivity was not well-known in the prior art. <u>Id.</u> at 20. Further, Plaintiffs argue they "corroborated Diab's contributions through notebooks and the white surfaces on Masimo products." <u>Id.</u>

Apple has not presented any basis to change the Court's Rule 50 Order as to the '052 and '670 Patents. Accordingly, the Court adopts that ruling:

As with the other patents, the Court finds the trial record contains sufficient competing evidence that would allow a jury to reach multiple inferences concerning, <u>e.g.</u>, the nature of Diab's inventive contribution (if any), when Lamego completed the inventive work, which expert has the correct view of the evidence, etc. [Any future] jury will have to resolve these factual disputes before resolving the inventorship claim as to the '052 and '670 Patents (as to both co-inventorship (Diab) and co-ownership (Lamego)).

R50 Order at 18.

2.      '754 Patent

Apple argues that no reasonable jury could find in favor of Plaintiffs' '754 Patent inventorship claim because "Poeze testified he did not teach Lamego the ideas claimed in the '754 patent," so did not contribute to the invention as a matter of law. Mot. at 20 (arguing no evidence Poeze collaborated with Lamego when he started working on the '754 Patent at Apple).

Plaintiffs respond that "[t]he weight to give Lamego's ideas and Poeze's implementation is a question of fact for the jury," and Apple's arguments regarding Poeze's notebooks go to weight. Opp. at 20.

Apple has not presented any basis to change the Court's Rule 50 Order as to the '754 Patent. Accordingly, the Court adopts that ruling:

The Court finds the challenges presented by Apple go to weight. The trial record contains sufficient competing evidence that would allow a jury to reach multiple inferences concerning, <u>e.g.</u>, what Poeze's notebooks show, when Lamego completed the inventive work, which expert has the correct view of the evidence, etc. [Any future] jury will have to resolve these factual disputes before resolving the inventorship claim as to the '754 Patent (as to both co-inventorship (Poeze) and co-ownership (Lamego)).

R50 Order at 16.

3.      '095 and '390 Patents

Apple argues that no reasonable jury could find in favor of Plaintiffs' '095 and '390 Patents inventorship claims because Diab's prior art patents and publications "only establish Diab contributed to the prior art; they cannot, as the Court correctly instructed, support a co-inventorship claim." Mot. at 20.

Plaintiffs respond that Apple ignores the testimony that Diab created the analog front-end subject matter at Masimo; he explained everything about the technology to Lamego; and Madisetti opined that Lamego made his contributions to the patented technology while still employed by Plaintiffs. Opp. at 21.

Apple has not presented any basis to change the Court's Rule 50 Order as to the '095 and '390 Patents. Accordingly, the Court adopts that ruling:

As with the '754 Patent, the Court finds the trial record contains sufficient competing evidence that would allow a jury to reach multiple inferences concerning, e.g., the nature of Diab's inventive contribution (if any), when Lamego completed the inventive work, which expert has the correct view of the evidence, etc. [Any future] jury will have to resolve these factual disputes before resolving the inventorship claim as to the '095 and '390 Patents (as to both co-inventorship (Diab) and co-ownership (Lamego)).

R50 Order at 17.

## IV. PLAINTIFFS' RULE 50(b) MOTION

Plaintiffs renew their motion for judgment as a matter of law on Apple's statute of limitations defense. See Mot., Dkts. 1752, 1773 (sealed); Opp., Dkts. 1792, 1809 (sealed); Reply, Dkts. 1825, 1844 (sealed). In support of their Motion, Plaintiffs argue that they "presented unrebutted evidence that [they] did not learn of Apple's misappropriation until October 2019—just months before Masimo sued in January 2020," and they "presented unrebutted evidence that [they] had no reason to suspect misappropriation had occurred more than three years before Masimo filed suit." Mot. at 1. Further, Plaintiffs contend that they "presented unrebutted evidence that a reasonable investigation before 2017 would not have revealed facts sufficient for Masimo to sue because the relevant facts were not public until much later." Id.

Apple responds that Plaintiffs do not dispute that Apple carried its burden to show that the purported misappropriation occurred before January 9, 2017; Plaintiffs have failed to establish that they are entitled to a JMOL on the remainder of Apple's defense;

the statute began to run for all trade secrets when it began to run as to the first alleged misappropriation; and Plaintiffs have failed to prove as a matter of law that they were not on notice before January 9, 2017. <u>See</u> <u>generally</u> Opp.

As stated, in the Rule 50 Order, the Court ruled that "that the record supports competing inferences concerning whether Plaintiffs knew or should have known of the alleged misappropriation." R50 Order at 12. This is because "[h]ow the jury interprets Masimo's warning letter to Apple, Kiani's state of mind from speaking with Dalvi, and whether Kiani did enough with the information he had, etc., are matters for the jury to resolve." <u>Id.</u> Thus, "[t]aking all inferences in [Defendant's] favor as the non-moving party, judgment as a matter of law is not available on this record." <u>Id.</u>

Plaintiffs' Rule 50(b) Motion presents no basis on which to deviate from the substance of the Court's Rule 50 Order. The Court stands by its ruling that the overall merits of the statute of limitations defense must go to the jury. The Court adds that, if it adopted Plaintiffs' test–that in essence argues a trade secret plaintiff has no reason to suspect misappropriation until information demonstrating misappropriation is made public–then no such claim would be ripe until a trade secret has been destroyed. Plaintiffs cite no authority for this sweeping proposition and the Court declines to adopt it.

Finally, at the end of its Motion, Plaintiffs request that, "[i]f the Court finds an issue of fact remains as to any particular trade secret, Masimo respectfully requests the Court grant judgment as a matter of law on Apple's defense for all other trade secrets." Mot. at 9.[9] Plaintiffs's Motion presents no basis on which the Court can analyze this question on a trade-secret-by-trade-secret basis. Moreover, the parties' partial agreement and Court's ruling with regard to relatedness of the trade secrets moots this line of inquiry. Therefore, the Court declines Plaintiffs' request to consider entering partial judgment as a matter of law.

Accordingly, for the reasons stated above and in connection with Defendant's Rule 50(b) Motion on the same issue, Plaintiffs' Motion is **DENIED**.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART**, **DENIES-IN-PART** and **DEFERS-IN-PART** Apple's Rule 50(b) Motion. The Court **DENIES** Plaintiffs' Rule 50(b) Motion.

The Court observes that the issues resolved through the Rule 50 Order, this Order, and the information the parties learned at trial (<u>e.g.</u>, the hung jury's vote split; the resources required to complete trial) should place the parties in a good position for resuming settlement discussions. The parties shall meet and confer and file a Joint Report

---

[9] Plaintiffs do not address whether they preserved this issue in their initial Rule 50(a) motion.

within 21 days of this Order, providing their views on the timing and format of the type of settlement procedure that may be most productive at this point. The Joint Report shall also address the parties' availability for trial from November 2023 through November 2024. Even if the parties cannot reach an overall settlement, the Court encourages the parties to discuss reaching agreement on subsidiary issues that would streamline and reduce the resources needed to conduct a second trial, if necessary. The Court intends to reduce the trial time allocation to account for its rulings at the Rule 50(a) and 50(b) stages.  In light of the Court's grant of judgment on the business strategy and VIA claims and the narrowing of issues on the statute of limitations defense, the Court now believes that 8 or 9 days is sufficient for any retrial.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of this sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | eb | |