# EXHIBIT A

1  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
     thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
     HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
     joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
     HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
     amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
     HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14 [Counsel appearance continues on next page]

15 *Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL RULE 50(B) MOTION OF NO UNJUST ENRICHMENT** |

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

While Plaintiffs' opposition mostly repeats arguments addressed in Apple's opening brief, Plaintiffs also rely on new exhibits and a new legal theory of unjust enrichment never presented to the jury.  Plaintiffs waived the right to raise these new points by failing to include them in their FRCP 50(a) briefing.  *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  Regardless, Apple files this short reply to explain why Plaintiffs' new arguments are wrong.

*First*, Plaintiffs now assert they can meet their burden to establish Apple's purported misappropriation was a substantial factor by showing Apple hired Dr. Lamego with the purpose of misappropriating Plaintiffs' trade secrets.  Opp. 1.  But Plaintiffs' lone authority deals with a standalone claim for unjust enrichment (not a trade secret claim) under Massachusetts (not California) law.  *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 58-61 (1st Cir. 2009).  The *QLT* district court granted the defendants JMOL on a "related trade secrets claim" based on the same underlying facts, *id.* at 61-62, and no California court has ever applied *QLT* to California law.  In any event, Plaintiffs' closing statement disclaimed the argument that Apple had knowingly misappropriated Plaintiffs' purported secrets.  4/26 PM Tr. 76:23-77:4.

*Second*, Plaintiffs contend they can rely on pre-November 2014 evidence to connect the Blood Oxygen feature to their purported secrets because—despite the unrebutted testimony of Apple's engineers—Apple purportedly began work on Blood Oxygen in 2012.  Opp. 1-2, 6.  But the document they rely upon for the 2012 date is a "proposal" which mentions pulse oximetry as one of many features being considered for Watch.  JTX-431 at -722.  Even Plaintiffs' opening statement asserted that JTX-431 showed Apple's aspirational "goals" in "a field they know absolutely nothing about."  4/5 AM Tr. 35:9-14.  Plaintiffs also cite two documents authored by Dr. Lamego in 2014, but one does not mention pulse oximetry or blood oxygen at all, *see* JTX-143, and the other refers to pulse oximetry as one of six "possible … functionalities" in a future Watch design, *see* JTX-297 at -775.  No evidence suggests

Apple started work on the Blood Oxygen feature in 2012; to the contrary, unrebutted testimony confirms it did not begin until late 2014.  4/18 PM Tr. [Land] 70:24-71:1.

*Third*, Plaintiffs accuse Apple of misrepresenting the record on whether Apple has one or two different demodulation algorithms.  Opp. 7-8.  Apple has one algorithm, which unrebutted testimony establishes was "fully developed" in 2013.  Mot. 4.  Because the full name for Apple's technique is "two-sided dark channel subtraction," a single internal email abbreviates Apple's approach using a "2"—*i.e.*, "DCS2."  JTX-4199 at -193.  That same email confirms that this abbreviation is not Dr. Lamego's suggested approach, nor derived from it.  *Id.* (email to Dr. Lamego noting that because Apple's dark channel subtraction approach was adequate, "we don't need to continue down the mod/demod path"); *see also* 4/19 AM Tr. [Waydo] 126-127 (discussing JTX-4199).

*Finally*, Plaintiffs argue their purported secrets "substantially contributed" to Blood Oxygen.  Opp. 2, 4, 6.  But they do not dispute that (1) they must do more than show "circumstances [that] are consistent" with their theory of unjust enrichment and (2) a reasonable jury would have to find that each purported secret was "singled out … as a key element" of Blood Oxygen in order for that supposed secret to qualify as substantial factor.  Mot. 3, 7-8 (collecting case law).  Plaintiffs do not even attempt to show that D1, D3, D10, or L5 were singled out by Apple as particularly vital to Blood Oxygen.  Their only evidence regarding L4's importance is the same single slide from a single 2018 presentation, Opp. 4 (citing JTX-1078 at -632), but Plaintiffs identify nothing suggesting that Apple viewed that one tiny aspect of Blood Oxygen as particularly important.  "Put another way, no juror could reasonably conclude that [Blood Oxygen] would have [been ineffective] had the" black foam test not been used.  *Premier Displays & Exhibits v. Cogswell*, 2009 WL 8623588, at *11 (C.D. Cal. Dec. 23, 2009).  That is particularly so given that their own damages expert admitted that his testimony did "not address[] the issue of causation at all."  4/13 AM Tr. 120:21-121:5, 121:21-25.

Dated: September 7, 2023            Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: /s/ *Mark D. Selwyn*
         Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 1113 words, which [choose one]:

   X   complies with the word limit of L.R. 11-6.1

   __   complies with the page limit set by court order dated TBD.

Dated: September 7, 2023         Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: /s/ *Mark D. Selwyn*
      Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*