UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00048 JVS (JDEx) | Date | December 12, 2023 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Defendant's Supplemental Rule 50(b) Motion of No Unjust Enrichment (Dkts. 1909, 1911) (Redacted)**

Before the Court is Defendant's Rule 50(b) Motion supplement regarding unjust enrichment causation. See Mot., Dkts. 1909, 1911 (sealed); Opp., Dkts. 1917, 1919 (sealed); Reply, Dkt. 1923. A review of the briefing demonstrates that no further Rule 50(b) hearing is necessary. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the Court **DENIES** Defendant's Motion as to the remaining causation dispute.

**I. BACKGROUND**

The parties are familiar with the factual and procedural background of this case. Accordingly, the Court recites it here only as necessary to resolve the Motion.

In the Order Regarding Defendant's Rule 50(b) Motion, the Court concluded that its earlier Rule 50(a) order "did not sufficiently consider whether Plaintiffs presented a sufficient evidentiary basis relating to causation for their unjust enrichment theory to go to the jury." Dkt. 1905 at 14. The Court therefore asked the parties to provide more information on what " trial evidence supports Plaintiffs' contention that misappropriation of L4, L5, D1, D3, and D10 specifically caused, i.e., was a substantial factor, in the alleged unjust enrichment." Id. The Court ordered supplemental briefing on this issue and stated that "[t]he parties shall focus on the causation element of unjust enrichment as it relates to linking specific trial evidence (testimony and exhibits) concerning each specific alleged misappropriated trade secret with the Blood Oxygen feature specifically, including an analysis of the timeline (e.g., the date a relevant email was sent or document

was created in relation to when Apple started developing its Blood Oxygen feature)." Id. at 15-16. Further, the Court stated that the supplemental briefs "shall include specific citations to trial testimony and exhibits by describing and/or quoting the evidence and explaining how it is relevant to the Court's specific inquiry regarding unjust enrichment causation. String citations without more are not permitted. Relevant trial exhibits should be attached as exhibits." Id. at 16.

Having received the parties' supplemental briefs, the Court now consider the question it previously deferred: "whether the evidence presented at trial provides a sufficient link [between] the allegedly misappropriated trade secrets [and] the Blood Oxygen profits to send the question to a jury." Id.

## II. Legal Standard

A motion for judgment as a matter of law presents "a procedural issue not unique to patent law, which [the Federal Circuit] review[s] under the law of the regional circuit where the appeal from the district court normally would lie." Riverwood Int'l Corp. v. R.A. Jones & Co., 324 F.3d 1346, 1352 (Fed. Cir. 2003); see also Applied Med. Res. Corp. v. U.S. Surgical Corp., 435 F.3d 1356, 1364 (Fed. Cir. 2006).

Rule 50 authorizes the defendant to move for judgment as a matter of law any time after the plaintiff's case-in-chief. Fed. R. Civ. P. 50(a). In determining whether to grant judgment as a matter of law, the court must determine whether the jury has a "legally sufficient evidentiary basis" to find for the plaintiff. Id. If the judge denies the motion, and the jury later returns a verdict against the defendant, the defendant may renew its motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b); EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). Like the pre-verdict motion, the post-verdict motion also challenges the sufficiency of the plaintiff's evidence. Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013).

If the jury verdict is "supported by substantial evidence," the court must uphold the jury verdict. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002); SEC v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011). Here, of course, there is no verdict because the jury deadlocked. However, if the evidence "permits only one reasonable conclusion," the court may grant judgment as a matter of law to the defendant. White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (internal quotation marks omitted). In making this determination, "[t]he court must not weigh the evidence, but rather should ask whether [the nonmoving party] has presented sufficient evidence to support a jury's [possible] conclusion." Todd, 642 F.3d at 1215. The court must "disregard all evidence favorable to the moving party that the jury is not required to believe." See Wallace, 479 F.3d at 624. Further, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Todd, 642 F.3d at 1215.

## III. DISCUSSION

Apple argues that, at trial, Plaintiffs failed to present evidence that "Apple's purported misappropriation of (1) a black foam test, (2) a short circuit, or (3) a rejected demodulation proposal was a substantial factor in causing any profits attributable to Apple Watch's Blood Oxygen feature." Dkt. 1911 at 1. Apple states that Plaintiffs presented no expert opinion on this issue, and the "scattershot documents" on which Plaintiffs now rely "have nothing to do with the Blood Oxygen feature." Id. For example, Apple argues that a single presentation slide  do not support Plaintiffs' theory about L4, L5, D1, D3, and D10. Id. at 3 (citing JTX-1078 at -632).

Plaintiffs respond that oxygen saturation is more susceptible to noise than pulse rate, and Apple misappropriated Masimo's trade secrets to measure blood oxygen. Dkt. 1919 at 1. Plaintiffs contend various trial evidence supports the link between the alleged misappropriation and benefits to the blood oxygen feature. For example, a Id. (quoting JTX-431 at -722). Apple showed interest in acquiring "Masimo or just its 'people or assets,'" given Masimo's standout SpO2 technology. Id. at 2 (quoting JTX-263 at -776). Plaintiffs observe that, after Apple hired Lamego, he "explained that Id. (quoting JTX-142 at -671). Therefore, he "recommended some of which included Masimo's trade secrets," e.g., (L4), (L5), and (D1, D3, and D10)." Id. (quoting JTX-143 at -568).

The Court addresses unjust enrichment causation as to L4, L5, and D1/D3/D10 in turn.

### L4

With respect to L4, Apple argues that  is insufficient for any reasonable jury to find Apple's alleged use of the black foam test was a factor (let alone more than a trivial factor) in causing the Blood Oxygen profits." Dkt. 1911 at 3. Apple contends that, while the pertinent slide mentions it does not "state or imply that were made" to the blood oxygen feature, and Plaintiffs presented no evidence that Apple used the black foam test to . Id. at 6. Even assuming Apple argues that Plaintiffs have not shown that it was "a substantial factor in causing Blood Oxygen profits." Id. at 7; see also id. at 7-8 (same as to "short circuit" and L5).

Plaintiffs respond that L4 substantially contributed to the value of Apple's blood oxygen feature because, ▊ Dkt. 1919 at 3 (quoting JTX-1064 at -859). Plaintiffs argue an internal Apple presentation summarized this improvement. Id. at 3-4 (citing JTX-1078 at -632).

At trial, the jury instructions provided that, to prove unjust enrichment, Plaintiffs must established that Apple's misappropriation "was a substantial factor in causing Apple to be unjustly enriched." Dkt. 1715 at 26. The Court finds that Plaintiffs presented sufficient evidence as to L4 to let this question go to the jury. For example, construing the evidence in the light most favorable to Plaintiffs, the internal Apple presentation acknowledged ▊ See JTX-1078 at -632. Further, Apple changed ▊ See JTX-1064 at -859 (Apple changed ▊. Madisetti relied on the presentation when opining about the importance of ▊ to blood oxygen, and Diab also testified about how ▊ of blood oxygen measurements. Although somewhat attenuated, this is enough to keep the unjust enrichment claim alive with respect to L4. The jury will have to resolve whether changing the test constitutes misappropriation of L4 as disclosed, and if so, whether it resulted in the alleged improvement to the blood oxygen feature, and whether that improvement was a substantial factor in Apple's alleged unjust enrichment.

## L5

Apple's L4 arguments also relate to its L5 ▊ arguments. Apple also argues that the only testimony concerning L5 shows that a short circuit was adopted as "best practice," but it had no impact on performance, and therefore it cannot be a substantial factor in blood oxygen profits. Dkt. 1911 at 8. Even assuming design changes concerning a "short circuit," Apple argues that Plaintiffs have not shown that it was "a substantial factor in causing Blood Oxygen profits." Id. at 7-8.

Plaintiffs respond that testimony shows Masimo ▊ and Lamego was involved in discovering this solution. Dkt. 1919 at 4-5 (collecting record cites). Plaintiffs argue that internal Apple communications show that ▊ (i.e., the L5 solution)." Id. at 5 (quoting JTX-143 at -568; see also JTX-184 -173 JTX-541 at -58 ▊). Thus, Plaintiffs conclude that, "[b]ecause eliminating signal interference is important for measuring blood oxygen, and L5 ▊, L5 substantially benefitted Apple's blood-oxygen feature." Id. at 5. Plaintiffs contend that Apple's ▊ Id.

As with L4, construing the record in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have presented sufficient evidence as to L5 to let this question go to the jury. For example, an internal presentation ▉▉▉▉▉▉▉▉▉▉ Although somewhat attenuated, this is enough to keep the unjust enrichment claim alive with respect to L5. The jury will have to resolve whether the alleged changed feature constitutes misappropriation, and if so, whether it resulted in the alleged improvement to the blood oxygen feature, and whether the improvement was a substantial factor in Apple's alleged unjust enrichment.

### D1, D3, and D10

As to the demodulation techniques, Apple observes that Plaintiffs agree Apple never used D1, D3, and D10 in an Apple Watch. Apple argues that the purported benefit Plaintiffs contend Apple received – i.e., "understand[ing] limitations of DCS and adopt[ing] an improved DCS2 algorithm, which benefitted Apple's blood-oxygen feature" – is attorney argument not supported by the trial record. Dkt. 1911 at 4. Apple avers that the DCS technique it uses was developed before Lamego joined Apple, and the emails on which Plaintiffs rely do not show Apple used Lamego's later proposal. Id. at 5.



Plaintiffs respond that Apple used these trade secrets to ▉▉▉▉▉▉▉ Dkt. 1919 at 6. Plaintiffs explain that, before Lamego joined Apple, Apple used "dark channel subtraction" ▉▉▉▉▉ Id. at 7. Plaintiffs contend that DCS ▉▉▉▉▉ Id. (citing JTX-153 at -842). Plaintiffs aver that, after Lamego arrived at Apple, "he identified ▉▉▉▉▉ Id. at 7 (quoting JTX-143 at -568; see also JTX-140 at 729 (Lamego email re ▉▉▉▉▉ Plaintiffs contend that Lamego provided ▉▉▉▉▉ Id. (quoting JTX-153 at -842-843). Plaintiffs theorize that Apple further modified that solution to create DCS2, ▉▉▉▉▉ Id. at 7.

The Court finds that, construing the record in the light most favorable to Plaintiffs, they have presented sufficient evidence concerning the demodulation alleged trade secrets to let this question go to the jury. The parties present factual disputes concerning whether Apple's DCS2 algorithm uses any of the alleged "D" trade secrets, when DCS2 was developed, and the benefits of DCS2. But if a jury were to resolve those questions in Plaintiffs' favor, the jury would have a sufficient basis to consider whether Plaintiffs proved misappropriation, and if so, DCS2 provides the alleged improvements to the blood oxygen feature, and whether the improvements were a substantial factor in Apple's alleged unjust enrichment. As with the other trade secrets, although the link is somewhat

attenuated, the record provides a sufficient basis under the Rule 50 substantial-evidence standard to allow the jury to consider unjust enrichment causation.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion as to the remaining causation question.

The Court asks the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of this sealed order should be redacted from the publicly filed version of the order. If the parties request that any portion of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | eva | |