Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax:(949) 760-9502

Adam B. Powell (Bar. No. 272725)        Brian C. Horne (Bar No. 205621)
adam.powell@knobbe.com                  brian.horne@knobbe.com
Daniel P. Hughes (Bar No. 299695)       Mark D. Kachner (Bar No. 234192)
daniel.hughes@knobbe.com                mark.kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP      KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive                1925 Century Park East, Suite 600
San Diego, CA 92130                     Los Angeles, CA 90067
Phone: (858) 707-4000                   Phone: (310) 551-3450
Fax: (858) 707-4001                     Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF ADAM B. POWELL IN SUPPORT OF MASIMO'S STATEMENT REGARDING TRIAL SCHEDULE**<br><br>Hon. James V. Selna |

I, Adam B. Powell, hereby declare:

1.      I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.

2.      Attached hereto as **Exhibit A** is a true and correct copy of an Order denying Apple's Petition for Rehearing, entered on March 15, 2024, as Dkt. 42 in *Apple, Inc. v. Masimo Corp.*, No. 2022-1890 (Fed. Cir.).

3.      Attached hereto as **Exhibit B** is a true and correct copy of mandates entered on October 19, 2023, as Dkt. 51 in *Apple, Inc. v. Masimo Corp.*, No. 2022-1631 (Fed. Cir.), February 20, 2024, as Dkt. 39 in *Apple, Inc. v. Masimo Corp.*, No. 2022-1891 (Fed. Cir.), and March 22, 2024, as Dkt. 43 in *Apple, Inc. v. Masimo Corp.*, No. 2022-1890 (Fed. Cir.).

4.      Attached hereto as **Exhibit C** is a true and correct copy of a transcript of the February 26, 2024, hearing before Judge Selna in this case.

5.      Attached hereto as **Exhibit D** is a true and correct copy of my email correspondence to counsel for Apple, dated March 5, 2024, including the attachment.

6.      Attached hereto as **Exhibit E** is a true and correct copy of a transcript of the July 10, 2020, hearing before Judge Selna in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 22, 2024, at San Diego, California.

          */s/ Adam B. Powell*
          Adam B. Powell

-1-

# EXHIBIT A

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**APPLE INC.,**
*Appellant*

**v.**

**MASIMO CORPORATION,**
*Appellee*

———————————

2022-1890

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-01523.

———————————

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

———————————

Before MOORE, *Chief Judge*, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.[1]

PER CURIAM.

———

[1]   Circuit Judge Newman did not participate.

**EXHIBIT A**
**-2-**

# O R D E R

Apple Inc. filed a combined petition for panel rehearing and rehearing en banc. The petition was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc was referred to the circuit judges who are in regular active service.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue on March 22, 2024.

FOR THE COURT

Jarrett B. Perlow
Clerk of Court

March 15, 2024
Date

**EXHIBIT A**
**-3-**

# EXHIBIT B

# United States Court of Appeals
# for the Federal Circuit

---

**MASIMO CORPORATION,**

*Appellant*

**v.**

**APPLE INC.,**

*Appellee*

---

2022-1631, 2022-1632, 2022-1633, 2022-1634, 2022-1635, 2022-1636, 2022-1637, 2022-1638

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-01520, IPR2020-01521, IPR2020-01714, IPR2020-01715, IPR2020-01536, IPR2020-01537, IPR2020-01538, IPR2020-01539.

---

**MANDATE**

---

In accordance with the judgment of this Court, entered September 12, 2023, and pursuant to Rule 41 of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

FOR THE COURT

October 19, 2023                    /s/ Jarrett B. Perlow
Date                                Jarrett B. Perlow
                                    Clerk of Court

**EXHIBIT B**
-4-

# United States Court of Appeals
# for the Federal Circuit

---

**APPLE INC.,**
*Appellant*

v.

**MASIMO CORPORATION,**
*Appellee*

---

2022-1891

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-01524.

---

**MANDATE**

---

In accordance with the judgment of this Court, entered January 12, 2024, and pursuant to Rule 41 of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

FOR THE COURT

February 20, 2024
Date

Jarrett B. Perlow
Clerk of Court

**EXHIBIT B**
-5-

# United States Court of Appeals
# for the Federal Circuit

---

**APPLE INC.,**
*Appellant*

**v.**

**MASIMO CORPORATION,**
*Appellee*

---

2022-1890

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-01523.

---

**MANDATE**

---

In accordance with the judgment of this Court, entered January 12, 2024, and pursuant to Rule 41 of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

FOR THE COURT



March 22, 2024
Date

Jarrett B. Perlow
Clerk of Court

**EXHIBIT B**
-6-

# EXHIBIT C

1

```
 1

 2

 3

 4                UNITED STATES DISTRICT COURT

 5               CENTRAL DISTRICT OF CALIFORNIA

 6                     SOUTHERN DIVISION

 7                         - - -

 8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

 9
         MASIMO CORPORATION, et al.,  )CERTIFIED TRANSCRIPT
10                       Plaintiffs, )
            vs.                      )
11                                   ) SACV-20-00048-JVS
         APPLE, INC.,                )
12                       Defendant.  )
         ----------------------------)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 Santa Ana, California

17                 February 26, 2024

18

19                      SHARON A. SEFFENS, RPR
                        United States Courthouse
20                      411 West 4th Street, Suite 1-1053
                        Santa Ana, CA  92701
21                      (612) 804-8655

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT C
-7-

2

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiffs:

 3    BRIAN CHRISTOPHER CLAASSEN
      STEPHEN C. JENSEN
 4    KNOBBE MARTENS OLSON & BEAR, LLP
      2040 Main Street, 14th Floor
 5    Irvine, CA  92614
      (949) 760-0404
 6

 7    For the Defendant:

 8    JOSEPH J. MUELLER
      WILMER CUTLER PICKERING HALE & DORR, LLP
 9    60 State Street
      Boston, MA  02109
10    (617) 526-6000

11    THOMAS GREGORY SPRANKLING
      WILMER CUTLER PICKERING HALE & DORR, LLP
12    2600 El Camino Real, Suite 400
      Palo Alto, CA  94306
13    (650) 858-6031

14    KENNETH G. PARKER
      HAYNES & BOONE, LLP
15    600 Anton Boulevard, Suite 700
      Costa Mesa, CA  92626
16    (949) 202-3014

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT C
-8-

3

```
 1    SANTA ANA, CALIFORNIA; MONDAY, FEBRUARY 26, 2024; 1:44 P.M.
 2              THE CLERK:  Calling Item No. 7, SACV-20-00048-JVS,
 3    Masimo Corporation, et al. versus Apple, Inc.
 4              If you could please state your appearances for the
 5    record, counsel.
 6              MR. CLAASSEN:  Good afternoon, Your Honor.  Brian
 7    Claassen on behalf of Masimo.
 8              THE COURT:  Good afternoon.
 9              MR. CLAASSEN:  Here with me is my partner, Steve
10    Jensen.
11              THE COURT:  Good afternoon.
12              MR. MUELLER:  Good afternoon, Your Honor.  Joe
13    Mueller on behalf of Apple.  With me are my partner, Tom
14    Sprankling; our co-counsel, Ken Parker, from Haynes and
15    Boone; and Tucker Terhufen from Apple.
16              THE COURT:  Good afternoon all.
17              Who's going to argue this?  Mr. Claassen.
18              MR. CLAASSEN:  Good afternoon, Your Honor.
19              I'd like to walk the Court through a few things
20    that we'd like to talk about on the tentative, and I'll go
21    into --
22              THE COURT:  Assume I stick with the tentative.  Is
23    60 days going to be that big a deal?
24              MR. CLAASSEN:  No, Your Honor, provided that --
25              THE COURT:  If they came down tomorrow and
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT C**
**-9-**

4

01:46  1    decided, it would set the clock, and we're off and running.
01:46  2            MR. CLAASSEN:  One important update, Your Honor.
01:46  3    The mandates have issued on two of the three patents.
01:46  4            THE COURT:  Okay, but --
01:46  5            MR. CLAASSEN:  So that is a little bit of an
01:46  6    update.  The 60 days isn't problematic for us, so long as
01:46  7    the stay were to be lifted at the end of that 60 days and we
01:46  8    don't have to go through another round of motion practice.
01:46  9            THE COURT:  Well, that's what I contemplate in
01:46  10   suggesting you can apply to the Court with ten days' notice.
01:46  11           MR. CLAASSEN:  That's what we would prefer, Your
01:46  12   Honor.  We'd also like to propose a schedule at that time,
01:46  13   if that's amenable to the Court.
01:46  14           THE COURT:  That seems appropriate.  Well, I'm
01:46  15   just not going to let this languish in terms of how the
01:46  16   Federal Circuit manages its docket.
01:46  17           MR. CLAASSEN:  Understood, Your Honor.  So we'd
01:46  18   propose that we move forward pursuant to the Court's order
01:46  19   and propose a schedule.  If the Federal Circuit for some
01:46  20   reason has not ruled within 60 days, as noted in your order,
01:47  21   we'd come back to the Court at the time.
01:47  22           THE COURT:  Well, I'm accelerating that now,
01:47  23   having you meet and confer and put together a schedule, or
01:47  24   at least express your views on what the schedule ought to
01:47  25   be, so when the time comes, we'll promptly enter a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT C
-10-

5

| 01:47 | 1 | scheduling order. |
| 01:47 | 2 | MR. CLAASSEN:  Yes, we'd do it now, Your Honor. |
| 01:47 | 3 | Yes, we would agree with that. |
| 01:47 | 4 | THE COURT:  Okay. |
| 01:47 | 5 | MR. CLAASSEN:  Anything further that you'd like me |
| 01:47 | 6 | to go through on earlier -- |
| 01:47 | 7 | THE COURT:  Well, yes.  I mean, the big issue for |
| 01:47 | 8 | me in terms of timing is we're scheduled to commence trial |
| 01:47 | 9 | again on the trade secret -- mostly trade secret, the first |
| 01:47 | 10 | part, in October.  Can we put these two together? |
| 01:47 | 11 | MR. CLAASSEN:  Yes, Your Honor.  Masimo believes |
| 01:47 | 12 | that's entirely appropriate, and we believe that there's |
| 01:47 | 13 | sufficient time remaining between now and October to |
| 01:47 | 14 | complete the necessary discovery in order to present the |
| 01:47 | 15 | patents at the same trial. |
| 01:48 | 16 | THE COURT:  Okay.  Thank you. |
| 01:48 | 17 | Mr. Mueller. |
| 01:48 | 18 | MR. MUELLER:  May I just have one moment, Your |
| 01:48 | 19 | Honor? |
| 01:48 | 20 | THE COURT:  Sure. |
| 01:48 | 21 | (Counsel conferring) |
| 01:48 | 22 | MR. CLAASSEN:  Your Honor, there is one small |
| 01:48 | 23 | typographical error in the order that you might want to |
| 01:48 | 24 | correct. |
| 01:48 | 25 | THE COURT:  Sure. |

**EXHIBIT C**

**-11-**

01:48   1         MR. CLAASSEN:   The patent number on the first page
01:48   2   for the '554 Patent, it's currently listed as 10,558,554,
01:48   3   but the actual number is 10,588,554.
01:48   4         THE COURT:  Okay.  Thank you.
01:48   5         Mr. Mueller.
01:48   6         MR. MUELLER:  Sure.  May I proceed?
01:48   7         THE COURT:  Please.
01:48   8         MR. MUELLER:  Your Honor, if I understand, the
01:48   9   procedural proposal would be that if there has not been a
01:48   10  decision on the petition for rehearing or there's been a
01:49   11  denial that the stay would be lifted in 60 days, and that
01:49   12  Your Honor would prefer that the parties meet and confer
01:49   13  before then on an appropriate schedule to enter if the stay
01:49   14  were lifted at that time.  If I have that right, we have no
01:49   15  objection to that.
01:49   16        THE COURT:  I think you have that right.  If they
01:49   17  don't act, we'll have a prompt scheduling conference, and
01:49   18  we'll discuss either the agreed or differences in your
01:49   19  proposed schedule, and we go forward.  If they act sooner,
01:49   20  I'll accelerate, and we'll hold -- as soon as the mandate
01:49   21  comes down on the last patent, I would set a scheduling
01:49   22  conference.
01:49   23        MR. MUELLER:  Understood.  So we have no objection
01:49   24  to any of that, Your Honor.
01:49   25        I would like to address the trial in October if I

EXHIBIT C
-12-

01:49    1    could.

01:49    2             THE COURT:  Sure.

01:49    3             MR. MUELLER:  Your Honor, we feel that that trial

01:49    4    should go forward on the date scheduled.  We're not trying

01:49    5    to delay this at all.  In fact, we very much want this trial

01:49    6    to occur as soon as possible.  That case, as you well know,

01:49    7    has not only been ready for trial, but it's been tried.  We

01:50    8    had proposed dates for the retrial during meet and confer

01:50    9    discussions as early as last year, 2023, and also early this

01:50   10    year, 2024.

01:50   11             THE COURT:  But the date that you proposed to me

01:50   12    jointly, I believe, contemplated that the ITC litigation

01:50   13    would be wrapped up, and there would be some possibility or

01:50   14    opportunity for a global settlement.  Otherwise, I wouldn't

01:50   15    have put it out that far.

01:50   16             MR. MUELLER:  Well, Your Honor, I'm just speaking

01:50   17    for Apple.  We would have been happy to have it earlier or

01:50   18    happy where it is now, but we are not trying to delay that

01:50   19    trial a day.

01:50   20             THE COURT:  Okay.

01:50   21             MR. MUELLER:  Now, we want that trial to go

01:50   22    forward as scheduled, and there's a couple reasons for that,

01:50   23    Your Honor.  One of the most important reasons is the facts

01:50   24    that underlie that case are now nearly a decade old, and

01:50   25    some of the critical facts are quite aged.  Some of the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT C
-13-

01:50  1   witnesses in terms of availability may change.

01:50  2           THE COURT:  They're quite aged, too.

01:50  3           MR. MUELLER:  We all have.  Your Honor, you know,

01:50  4   just to give you one example, Steve Hotelling, who Your

01:50  5   Honor may recall, has retired.  Now, we're hoping to bring

01:51  6   him to trial to testify.  But as time goes along, it's going

01:51  7   to be more and more difficult to arrange witness

01:51  8   availability.

01:51  9           THE COURT:  Understood.

01:51  10          MR. MUELLER:  And for the trade secret claims in

01:51  11  particular, that percipient witness testimony is obviously

01:51  12  critical.  So just in terms of the timing of the evidence

01:51  13  itself, we think there's a premium on trying that case as

01:51  14  soon as we can feasibly do so, and we think the October 31

01:51  15  date -- we don't want that to move.

01:51  16          The second thing I'd say, Your Honor, is that

01:51  17  these new -- the patent claims, which would come out of the

01:51  18  Federal Circuit and for which we will discuss the schedule

01:51  19  with the plaintiff do involve, as Your Honor noted in the

01:51  20  tentative, different technology.  The trade secret trial was

01:51  21  alone a very complicated trial as Your Honor well recalls.

01:51  22  We had, of course, the big board with all the different

01:51  23  issues on it.

01:51  24          THE COURT:  Right.

01:51  25          MR. MUELLER:  It was a lot for the jurors to

EXHIBIT C
-14-

9

01:51   1   digest and to comprehend.  We have a lot of concern about

01:52   2   adding a whole new issue set on top of those issues.  To

01:52   3   boot, if the trial on the patent issues were going to occur

01:52   4   this fall, between now and then, we have to do all the fact

01:52   5   discovery, all the expert discovery, Markman proceedings,

01:52   6   summary judgment.  It's a lot.

01:52   7        We're prepared to do that on a brisk schedule,

01:52   8   Your Honor.  To be very, very clear, we're not trying to

01:52   9   delay it.  We're prepared to move quickly on the patent

01:52   10  issues.  But we would respectfully submit to Your Honor --

01:52   11  and we can more formally submit this after we've met and

01:52   12  conferred with the plaintiff on the schedule -- that the

01:52   13  most appropriate course, both in terms of ensuring the trade

01:52   14  secret claims are brought to a prompt resolution and also

01:52   15  ensuring that the trial on those issues is not confused by

01:52   16  injecting a whole new set of technologically distinct

01:52   17  issues -- our suggestion right now, Your Honor, would be to

01:52   18  keep that first trial where it is on the schedule as it is

01:52   19  in terms of issue set.  It's been fully tried, and we can

01:52   20  try it again on the date scheduled.

01:52   21       In parallel, we will work with the plaintiff to

01:53   22  set a brisk schedule on fact discovery, expert discovery,

01:53   23  Markman proceedings, summary judgment, and pretrial motion

01:53   24  practice on the patent issues.  But at this point, Your

01:53   25  Honor, we respectfully request from Your Honor a second

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT C**
**-15-**

10

01:53   1    trial on those issues.

01:53   2             Again, we're not trying to delay it, but we think

01:53   3    the most feasible way to do it from the Court's perspective,

01:53   4    from the parties' perspective, and from the jury's

01:53   5    perspective, is to finish the part that we had not just

01:53   6    started but we had tried and then to finish the rest.

01:53   7             So what we would say, Your Honor, is we can take

01:53   8    this up further with the plaintiff in the meet and confer

01:53   9    discussions.  We're not asking for anything specific right

01:53   10   now.  But I did want to provide you with our perspective as

01:53   11   we see it now given what Your Honor had said in the

01:53   12   tentative about not having made up your mind quite yet on

01:53   13   one trial versus two.

01:53   14            THE COURT:  Right.  But I think we ought to wrap

01:53   15   the whole thing once and for all.  Maybe that requires a

01:54   16   slight extension of the October date, but I think one trial

01:54   17   is preferable to two.

01:54   18            MR. MUELLER:  I think the problem, Your Honor, is

01:54   19   going to be -- again, we can make this more concrete in our

01:54   20   submissions to Your Honor after we've met and conferred with

01:54   21   the plaintiff.  It's going to be very, very difficult to

01:54   22   hold that date in October with everything else that we need

01:54   23   to do.

01:54   24            THE COURT:  Yes, but what I'm suggesting is that

01:54   25   that's one option.  Another option is to slip the October

EXHIBIT C
-16-

11

| | | |
|---|---|---|
| 01:54 | 1 | date slightly to accommodate whatever discovery is fair and |
| 01:54 | 2 | necessary for the patent part of the case which hasn't been |
| 01:54 | 3 | tried. |
| 01:54 | 4 | MR. MUELLER:  Well, Your Honor, again on that, I |
| 01:54 | 5 | think there's two problems.  One is it's going to be a |
| 01:54 | 6 | substantial amount that needs to be done.  Again, we can |
| 01:54 | 7 | make this more concrete in our submissions to Your Honor. |
| 01:54 | 8 | The second thing, though, is again -- |
| 01:54 | 9 | THE COURT:  That's why I'm suggesting perhaps a |
| 01:54 | 10 | slight delay in the start of the October trial to address |
| 01:54 | 11 | that issue. |
| 01:54 | 12 | MR. MUELLER:  I'm not sure a slight delay would, |
| 01:54 | 13 | but we can take it up in our submissions. |
| 01:54 | 14 | THE COURT:  Okay, sure. |
| 01:54 | 15 | MR. MUELLER:  Again, Your Honor, with a trade |
| 01:55 | 16 | secret trial, we do have a strong concern that that evidence |
| 01:55 | 17 | is aging by the day in terms of witnesses and documents. |
| 01:55 | 18 | THE COURT:  Right. |
| 01:55 | 19 | MR. MUELLER:  And we do want that trial with Your |
| 01:55 | 20 | Honor's permission of course to occur as soon as it possibly |
| 01:55 | 21 | can. |
| 01:55 | 22 | THE COURT:  Okay.  Well, we have much to talk |
| 01:55 | 23 | about down the line it's clear to me. |
| 01:55 | 24 | Anything further, Mr. Claassen? |
| 01:55 | 25 | MR. CLAASSEN:  No, Your Honor.  Just as a quick |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT C

-17-

12

01:55  1    point, in the Delaware case, we prepared for trial on a

01:55  2    similar schedule on 15 patents in about the same period of

01:55  3    time.  I think the parties are well capable of preparing

01:55  4    these three patents for trial in roughly the October

01:55  5    timeframe.  It may need to slip a little bit but not

01:55  6    significantly, and we're ready for trial as well.

01:55  7              THE COURT:  Okay.

01:55  8              Well, anything else for today?

01:55  9              MR. MUELLER:  No, Your Honor.  Thanks very much.

01:55  10             THE COURT:  Okay.  Let's just see how things play

01:55  11   out once we are either 60 days out or we have the mandate,

01:55  12   and one way or another, we're going to be getting together

01:56  13   quite shortly to work out scheduling.

01:56  14             MR. MUELLER:  Thank you, Your Honor.

01:56  15             THE COURT:  Okay.  Thank you.

01:56  16             MR. CLAASSEN:  Thank you.

02:01  17             (Whereupon, the proceedings were concluded.)

02:01  18                       *   *   *

02:01  19

02:01  20

02:01  21

02:01  22

02:01  23

02:01  24

02:01  25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT C
-18-

13

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  March 7, 2024

/s/   Sharon A. Seffens  3/7/24
_____
**SHARON A. SEFFENS, U.S. COURT REPORTER**

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT C**
**-19-**

# EXHIBIT D

**From:** Adam Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 5, 2024 1:39 PM
**To:** WH Apple-Masimo Service List <WHApple-MasimoServiceList@wilmerhale.com>; Apple-Masimo <apple-masimo@gibsondunn.com>; Apple-Masimo <apple-masimo@haynesboone.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple (CD Cal) - Proposed Schedule

Counsel,

Pursuant to the February 26th hearing, we write to meet and confer on a schedule for when the patent stay is lifted.  Attached is Masimo's proposal.  Please let us know if Apple agrees to this schedule.  If not, please let us know when you are available to meet and confer this week.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**
**Knobbe Martens**

**EXHIBIT D**
**-20-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 8:20-cv-00048-JVS-JDE <br><br> Hon. James V. Selna <br> Magistrate Judge John D. Early <br><br> **[PROPOSED] ORDER GRANTING STIPULATION TO AMEND THE SCHEDULING ORDER** |

**EXHIBIT D**
**-21-**

1    This matter is before the Court pursuant to the parties' Stipulation to Amend the

2    Scheduling Order.  Based on the stipulation of the parties, and good cause appearing,

3    the Court GRANTS the Stipulation and AMENDS the Scheduling Order as shown

4    below.

| Event | Proposed Schedule |
|-------|-------------------|
| Revised Infringement Contentions (Patent L.R. 3-1 and 3-2) | April 15, 2024 |
| Invalidity Contentions (Patent L.R 3-3 and 3-4) | April 29, 2024 |
| Simultaneous Opening Markman Briefs (Patent L.R. 4-5) | May 20, 2024 |
| Simultaneously Responding Markman Briefs, Tutorials and Presentation Materials (Patent L.R. 4-5) | June 3, 2024 |
| *Markman* hearing | June 17, 2024 (or such other date as the Court deems proper) |
| Opening Expert Reports | July 1, 2024 |
| Rebuttal Expert Reports | July 15, 2024 |
| Reply Expert Reports | July 22, 2024 |
| Discovery Cut-Off | August 5, 2024 |

EXHIBIT D
-22-

| Event | Proposed Schedule |
|---|---|
| Fed. R. Civ. P. 56 and *Daubert* Motions (concerning patent infringement claims and defenses only; one per side absent prior approval by the Court at least seven days in advance of filing date) and supporting documents | August 12, 2024 |
| Fed. R. Civ. P. 56 and *Daubert* oppositions and supporting documents | August 26, 2024 |
| Fed. R. Civ. P. 56 and *Daubert* replies | September 2, 2024 |
| Fed. R. Civ. P. 56 and *Daubert* hearing cutoff date | September 16, 2024 (or such other date as the Court deems proper) |
| Deadline To File Motions In Limine | September 23, 2024 |
| Deadline To File Pretrial Documents | October 7, 2024 |
| Final Pretrial Conference | October 21, 2024 |
| Jury Trial | October 31, 2024 (or such other date as the Court deems proper) |

**IT IS SO ORDERED.**

Dated:_____        _____
                                                            The Honorable James V. Selna
                                                            United States District Judge

54829582

**EXHIBIT D**
**-23-**

# EXHIBIT E

**Page 1**

```
 1
 2
 3
 4              UNITED STATES DISTRICT COURT
 5              CENTRAL DISTRICT OF CALIFORNIA
 6                   SOUTHERN DIVISION
 7                        - - -
 8   THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING
 9
10   MASIMO CORPORATION, et al., )
            Plaintiffs, )
11            vs.            )
                            ) SACV-20-00048-JVS
12   APPLE, INC.,           )
            Defendant.  )
13   ------------------------------)
14
15         REPORTER'S TRANSCRIPT OF PROCEEDINGS
16              Santa Ana, California
17              July 10, 2020
18
19              SHARON A. SEFFENS, RPR
20               United States Courthouse
              411 West 4th Street, Suite 1-1053
21              Santa Ana, CA  92701
              (714) 543-0870
22
23
24
25                                          11:46
```

**Page 2**

```
 1   APPEARANCES OF COUNSEL:
 2   For the Plaintiffs:
 3   JOSEPH R. RE
     STEPHEN JENSEN
 4   KNOBBE MARTENS
     2040 Main Street, 14th Floor
 5   Irvine, CA  92614
     (949) 760-0404
 6
 7   For the Defendant:
 8   H. MARK LYON
     JOSHUA LERNER
 9   BRIAN ROSENTHAL
     GIBSON DUNN & CRUTCHER, LLP
10   1881 Page Mill Road
     Palo Alto, CA  93403-1211
11   (650) 849-5307
12   JOSHUA LERNER
     GIBSON DUNN & CRUTCHER, LLP
13   555 Mission Street, Suite 3000
     San Francisco, CA  94105-0921
14   (415) 393-8254
15   BRIAN ROSENTHAL
     GIBSON DUNN & CRUTCHER, LLP
16   200 Park Avenue
     New York, NY  10166-0193
17   (212) 351-2339
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1   SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.      02:59
 2        (Per telephonic conference)
 3        THE CLERK:   Calling Item No. 1, SACV-20-00048-JVS,     03:00
 4   Masimo Corporation versus Apple, Inc.                        03:00
 5        Appearances on behalf of the plaintiff, please.         03:00
 6        MR. RE:   Thank you.  Good afternoon, Your Honor,       03:00
 7   this is Joseph Re of Knobbe Martens on behalf of Masimo      03:00
 8   Corporation, and with me is my partner Stephen Jensen.       03:00
 9        THE CLERK:   And on behalf of the defendants,           03:00
10   please.                                                      03:00
11        MR. LYON:   Good afternoon, Your Honor.  It's Mark      03:00
12   Lyon on behalf of Apple, and with me is Joshua Lerner, and   03:00
13   Brian Rosenthal.                                             03:00
14        THE COURT:   Good afternoon.                            03:00
15        Thank you for your joint report that you filed          03:01
16   last week.  Let me share my thoughts with you, and then I'd  03:01
17   be happy to hear you.                                        03:01
18        I believe it's fundamentally unfair to the parties      03:01
19   and inefficient to require reduction of the number of claims 03:01
20   for prior art references prior to the full disclosure of the 03:01
21   infringement contentions and the invalidity contentions.    03:01
22   Let me give you an example of the poker world.  Suppose      03:01
23   Masimo has a claim that it would evaluate as a for basis,    03:01
24   but when Apple makes its invalidity disclosures, it comes up 03:01
25   with prior art that would amount to Royal Fresh.  It's       03:01
```

**Page 4**

```
 1   better for Masimo to designate a claim in light of prior art
 2   demonstrating it wasn't viable.
 3        So my thought is that the initial round of
 4   disclosures ought to come after the parties have made their
 5   invalidity disclosures and their prior art disclosures.  The
 6   date for invalidity contentions is 9/7.  What I would
 7   propose is that within two weeks of that date, the parties
 8   present me with a proposal for an initial reduction of
 9   claims and prior art references that would contemplate
10   actual disclosure of those reductions within 30 days of the
11   Court adopting a specific proposal.  I would then
12   contemplate that there would be a further reduction after
13   the Markman hearing, and I would leave to your discretion
14   the time for final disclosure as to what we go to trial on.
15        I think that may require some adjustments to
16   events leading to the Markman hearing.  If the invalidity
17   contentions come in 9/7, the parties' exchange of
18   proposed claim terms is 9/21.  I don't think that gives you
19   enough time to reflect on both sides' disclosures, come up
20   with your proposal, and then for narrowing selections of
21   claims and prior art references.
22        So the dates between the exchange of
23   claim terms and the Markman hearing need to be adjusted to
24   accommodate the disclosures pursuant to whatever proposal I
25   adopt for the disclosures following the invalidity and the
```

EXHIBIT E
-24-

5

1  infringement contentions and the Markman hearing. I'm not
2  adverse to slipping the Markman hearing a month or six weeks
3  if that makes sense. That's in February, and we don't have
4  a trial date in 2021.
5       So those are my general thoughts. I'll be happy
6  to hear you.
7       Let's begin with you, Mr. Re.
8       MR. RE:   Thank you, Your Honor.
9       I think we're in complete agreement with
10 everything you said. I do think there needs to be an
11 exchange of information. I do want to alert the Court that
12 we are planning on amending our pleading that's set forth in
13 the Court's order regarding the Motion to Dismiss. In fact,
14 we will be substituting out some patents, so there needs to
15 be some more time for the parties to fully evaluate the
16 claims.
17      And, yes, we have not yet received the other
18 party's technical documents which were due back in June, and
19 that we of course need before we do our contentions. But we
20 agree with everything you said, and I think the parties will
21 work it out and will come up with a proposal for this by
22 September 21 as you indicated.
23      THE COURT:   Mr. Lyon.
24      MR. LYON:   Thank you, Your Honor.
25      Just a couple points. Let me just raise a

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

6

1  concern, and you may have already considered this, but let
2  me at least just throw it out there so that we can have a
3  discussion if it's helpful. The one thing I would say with
4  not putting in some kind of target limits at this point is
5  that you end up with potentially hundreds of claims that
6  both parties are going to be charting, that they're going to
7  be discussing and potentially arguing over as far as what
8  claim terms might be involved.
9       That is not a trivial aspect. I mean, that's
10 something where some of these -- I'm sure you've seen them.
11 Some of these claim charts can wind up being hundreds or
12 thousands of pages long, which is a very significant effort
13 to create, even if it is copying and pasting some of the
14 information because these claims are so related, which still
15 winds up that somebody has to sit down and analyze each
16 individual claim to decide whether or not you can simply
17 copy a paragraph from a different claim or not. You have to
18 do that, and then that has to go through whatever levels of
19 review with the client and with the firm to make sure that
20 that's okay.
21      Then to the extent that there's any dispute about
22 that, instead of having a single claim that the Court is
23 worrying about, it may end up being 15 or 16 claims, which
24 the Court would then have to do a similar review to make
25 sure it all makes sense, and the same argument applies

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

7

1  equally to each of those 15 or 16 claims.
2       So our view of this would be if we set some
3  number, and it could be -- we don't think the numbers we
4  picked are terrible, but if there's a higher number, we
5  could talk about it. But pick some target numbers now so
6  that we can get a bit more reign in on the case before we
7  get into charting everything with the idea that if there's
8  reasons to change these things down the road, that's
9  something that can always be done in good cause.
10      But it really needs to be done at the stage of
11 preparing it for Markman, and then have that kind of a
12 target, sort of like page limits in the brief in a lot of
13 ways. If you put these claims and limits on people, they'll
14 make some hard choices that they otherwise wouldn't make or
15 -- and that they probably should make, but because of the
16 fact that they don't have to, everything just gets thrown in
17 with the kitchen sink.
18      That's why we were suggesting trying to do
19 something now. Then if we need to have some discussions
20 about whether, you know, it's 50, 40, claims, whatever it is
21 we pick -- maybe the plaintiffs need a little bit more than
22 that, maybe another ten or so -- we could have those kinds
23 of discussions and maybe stipulate to that at the beginning.
24      This is the first we've heard that they're
25 planning on changing the patents again, so that's a little

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

8

1  troubling because we are already very far into the case, and
2  we're already trying to start gearing up for discovery on
3  the patents that we have. But that may also throw a monkey
4  wrench into not just this but to more parts of the case
5  schedule if it changes substantially.
6       THE COURT:   I appreciate the fact that at some
7  point the parties will have to make hard choices. I believe
8  they ought to be able to make fair hard choices. But if you
9  want to have further discussions among yourselves and come
10 to a consensus as to how to do some limits at this time,
11 that's fine, but I'm not going to impose it.
12      What I'm going to order is that no later than 9/21
13 the parties will submit a joint proposal for the initial
14 round of productions and the number of infringement
15 contentions and prior art references, and a final proposal
16 as to what we ought to do following the Markman hearing, and
17 then what we ought to do as a final third stage in terms of
18 what we're actually going to go to trial on.
19      MR. RE:   T?hank you, Your Honor.
20      May I ask one more question about this, though,
21 Your Honor? If we have currently set up infringement
22 contentions due on July 27, which then triggers our
23 invalidity contentions on September 7 to trigger off of
24 those -- if the patents are going to be changing because of
25 the new pleading, I guess I would want to know when is that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT E**

**-25-**

9

```
03:07   1    going to happen, and are those target changes going to be
03:07   2    reflected in the infringement contentions we are going to
03:07   3    see in July, or is that going to be a completely separate
03:07   4    ball of wax that we have to deal with?
03:07   5         THE COURT:   Well, if Masimo changes the line of
03:07   6    both patents, I would reevaluate the dates for infringement
03:07   7    and invalidity contentions in light of that on a fairly
03:07   8    short ex-parte basis.
03:07   9         Let me circle back to one thing Mr. Re said.  I
03:07  10    don't think that Masimo should be required to make its
03:07  11    infringement contentions until you produce the core
03:08  12    technical information. I understand that there is presently
03:08  13    in place a protective order to permit that, but to the
03:08  14    extent that production is made, these dates are just going
03:08  15    to drift out there and out there and out there.  And I would
03:08  16    be likely to entertain a motion made to me, not the
03:08  17    magistrate judge, with regard to patent production on the
03:08  18    core confidential information.
03:08  19         MR. LYON:   Your Honor, on that point -- this is
03:08  20    Mark Lyon again, Your Honor.  On that point, we did produce
03:08  21    nonconfidential technical documentation as part of the
03:08  22    schedule, and we're waiting on the protective order which
03:08  23    now is in place.  But as you may know, we filed an objection
03:08  24    to certain orders of Magistrate Early on the staging of
03:08  25    that, which we do hope to have -- because the issue, as you
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10

```
03:08   1    may know, is that there needs to be a 2019 trade secret
03:08   2    statement in place before we can proceed on the trade secret
03:09   3    discovery.
03:09   4         The whole basis for that rule is to really avoid
03:09   5    the situation where plaintiffs get ahold of all these
03:09   6    technical documents and then can hunt and peck and kind of
03:09   7    try to come up with a list of trade secrets that they
03:09   8    otherwise really don't have but that they are trying to
03:09   9    create that way.  That is the whole purpose of being able to
03:09  10    have those trade secrets in before all that technical
03:09  11    information is out.
03:09  12         If that information is provided ahead of getting
03:09  13    those trade secrets, that bell can't be unrung. That's one
03:09  14    concern, and we actually have that motion in place.  We
03:09  15    understood from yesterday that Masimo was asking us to
03:09  16    produce that information. The first that they had come back
03:09  17    and talked to us was in an email yesterday asking for that
03:09  18    information immediately, knowing that we had these
03:09  19    objections out there.  We may need to actually file some
03:09  20    type of an ex-parte application, if necessary, to seek
03:09  21    relief on that so we can get that issue decided first, if
03:09  22    possible.
03:10  23         I don't know, Mr. Lerner, if you want to say
03:10  24    anything more on that.  Please feel free.
03:10  25         MR. LERNER:   First of all, thank you for having
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11

```
03:10   1    this hearing by telephone, Your Honor.  We know during these
03:10   2    times it's busy, and we appreciate the opportunity to be
03:10   3    heard.
03:10   4         Second, I do not believe that anybody can dispute
03:10   5    the point that once these documents are out there you have
03:10   6    the issue that is raised by every case on point, which is,
03:10   7    one can make vague trade secret allegations and then claim
03:10   8    Apple's valuable confidential information based on years of
03:10   9    hard work on this product as their own.  That simply cannot
03:10  10    be undone once these documents are produced, and it leads to
03:10  11    all kinds of issues.
03:10  12         I think the two most relevant here are that what,
03:10  13    for example, do you do with the people that are going to
03:10  14    work on the trade secret disclosure when first Your Honor
03:11  15    did order compliance with Section 2019.210 many months ago?
03:11  16    What do you do with the lawyers who have seen our
03:11  17    confidential information, but also might want to work on
03:11  18    that disclosure, which does at some point obviously need to
03:11  19    be provided?  Our view, as we briefed, is that it should
03:11  20    have been provided a long time ago.
03:11  21         The other key policy matter here, I think, is that
03:11  22    we would not be having these discussions or these problems
03:11  23    if that disclosure had been provided, because I think the
03:11  24    most basic policy guidance behind the rule is it enables the
03:11  25    Court to determine the proper scope of discovery and whether
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12

```
03:11   1    or not discovery requests fall within it.  That just can't
03:11   2    be done until they provide those document, which the parties
03:12   3    briefed before the scheduling order, which Your Honor then
03:12   4    ruled on.
03:12   5         So as Mr. Lyon says, if necessary -- in fact,
03:12   6    we're planning on it if necessary to raise it as quickly as
03:12   7    possible now, so that we don't run into this waterfall of
03:12   8    problems that will follow if there's not compliance with
03:12   9    this basic rule.
03:12  10         THE COURT:   I guess I analyze things differently.
03:12  11    If core confidential documents are relevant to the patents,
03:12  12    they should be disclosed now, notwithstanding the fact that
03:12  13    they may overlap the trade secrets case.  We need to go
03:12  14    forward with the patent case.  And if and when there is
03:12  15    adequate disclosure for trade secrets, all other materials
03:12  16    should be produced.  But to the extent the core confidential
03:12  17    technical documents are relevant to the patent case, they
03:12  18    should be disclosed now and in advance of Masimo having to
03:12  19    identify which claims it wants to proceed on.
03:12  20         MR. LERNER:   If I may just very briefly respond to
03:12  21    that, Your Honor.  I understand that Masimo has raised that
03:13  22    argument, but it does render the statute a nullity.
03:13  23    2019.210 expressly states:  "Discovery related to the trade
03:13  24    secrets" -- indeed, in cases before Judge Early before, he
03:13  25    said just because discovery relates to a non-trade secret
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

13

1    claim it doesn't mean it also doesn't relate to the trade
2    secret.  Here, there's no dispute -- there can't be any
3    dispute that discovery on the patent side relates to the
4    trade secrets.  So if we're going to do that, it does render the
5    statute in this instance a nullity, and we will have, I
6    think, all the problems that follow and are the very basis
7    for the rule there.  So I think that it is important to
8    consider both the express language of that statute and then
9    what's behind it.
10
11         The only other thing I will mention is that every
12   case that Masimo has cited on this point that involved
13   parallel claims -- every single one there was a prior trade
14   secret disclosure.  It's possible that it could have been
15   amended at some later time, but there was at the very least
16   some disclosure.
17         The only exception I can think of was one where
18   there was a date certain order, and the plaintiff would have
19   had to show good cause if they ever wanted to change it
20   later.  Because without either the disclosure or that date
21   certain and an order that it can't be changed without good
22   cause, then we have the very real situation that Masimo can
23   just look through our confidential information in a case
24   with a patent thicket and use our confidential information
25   to try and craft their purported secrets in a way that (a)

14

1    is allegedly theirs, even though it's based on our
2    confidential information, but (b) tries to weave around
3    their many patents so they don't run into the problem that
4    it's been disclosed.
5         For those reasons, I think it's in some ways of
6    critical importance here that we do it.  It's even more
7    important than I would say in a normal case where there
8    might not be quite so many patents in the space or so many
9    allegations that the secrets were allegedly disclosed in the
10   patents.
11         THE COURT:   Let's assume Masimo never asserted a
12   trade secret claim.  The confidential information which
13   involves the patent claims would be subject to production
14   whether it was a trade secret or not.  That's what
15   protective orders are for.
16         MR. LERNER:   We completely agree with that, Your
17   Honor.  If there were no trade secret claims in this case,
18   this would not be a problem.  But every case where there is
19   a trade secret, given the express language of the statute,
20   has found that you can't avoid that language.  I'm not aware
21   of any finding that ignores the language on point.
22         That's why in all of the cases there was a trade
23   secret disclosure before you had a ruling that patent
24   discovery could go forward, or at least as I said, an order
25   that the trade secret disclosure be produced by a date

15

1    certain along with admonition that the list couldn't change
2    without good cause.
3         So, yes, if there were no trade secret claim, then
4    2019.210 by and large would not come into play.  There are
5    some cases holding that if it's kind of, you know, a wolf in
6    sheep's clothing and it's obvious it's coming, then the
7    Court would say you still have to do the 2019.210
8    disclosure.
9         But here we don't have that situation.  This is a
10   case where they've suggested they have a serious trade
11   secret claim.  They've never described it with any
12   specificity whatsoever, even though they allege it has been
13   disclosed in public patent filings.  One could just say
14   here's the page and line number.
15         Not withstanding all of those things, there's no
16   description in a case that's, you know, roughly seven months
17   old, and they want this confidential information.  Again,
18   once that's done, we just cannot undo it, and we'll have I
19   think unfortunately a lot of unnecessary disputes both about
20   the scope of discovery, but also what to do about the fact
21   that you then have lawyers who have seen our secrets
22   drafting what their alleged secrets are.
23         THE COURT:   Mr. Re.
24         MR. RE:   Well, Your Honor, this is at least the
25   second or third time they've made this argument.  You are

16

1    correct.  Our patent case is independent of the trade secret
2    case.  The case law that we already cited and briefed to
3    Judge Early on these other motions were breach of contract
4    cases that were factually dependent on the trade secret
5    claims.  Our case is not dependent on our trade secret case.
6    And currently the trade secret case has been dismissed on
7    their Motion to Dismiss.  It's not even pending before the
8    Court, and obviously the patent case gets to go forward.
9         I've never seen such strenuous objections to
10   producing just the core technical documents in a case.  They
11   are fighting tooth and nail, and they will keep fighting and
12   fighting no matter what.  They're going to file more motions
13   I understand today to prevent the disclosures that were due
14   back in June.  I think the time has come we move forward now
15   as the Court has indicated.
16         THE COURT:   Are you going to replead your trade
17   secret claim?
18         MR. RE:   Yes, we are.  We plan on complying with
19   the 30-day leave to amend date at the end of the month.
20         THE COURT:   Okay.  Well, I think you have my
21   general views.  Let's see what motion practice that results
22   in.
23         Anything else we should take up today?
24         MR. RE:   No.  Thank you, Your Honor.
25         MR. LYON:   Thank you, Your Honor.

**EXHIBIT E**
-27-



03:20 1    MR. LERNER:   Thank you very much, Your Honor.

03:20 2    THE COURT:   Okay.  Thank you very much.

03:20 3    (Whereupon, the proceedings were concluded.)

03:20 4                    *  *  *

17

18

CERTIFICATE

I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.

Date:  July 20, 2020

/s/   Sharon A. Seffens  7/20/20
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**EXHIBIT E**
**-28-**

**/**

**/s [1]** 18/15

**0**

**0193 [1]** 2/16
**0404 [1]** 2/5
**0870 [1]** 1/21
**0921 [1]** 2/13

**1**

**1-1053 [1]** 1/20
**10 [2]** 1/17 3/1
**10166-0193 [1]** 2/16
**1053 [1]** 1/20
**1211 [1]** 2/10
**14th [1]** 2/4
**15 [2]** 6/23 7/1
**16 [2]** 6/23 7/1
**1881 [1]** 2/9

**2**

**20 [2]** 18/13 18/15
**200 [1]** 2/15
**2019 [1]** 10/1
**2019.210 [4]** 11/15 12/23 15/4 15/7
**2020 [3]** 1/17 3/1 18/13
**2021 [1]** 5/4
**2040 [1]** 2/4
**21 [3]** 4/18 5/22 8/12
**212 [1]** 2/16
**2339 [1]** 2/16
**27 [1]** 8/22
**28 [1]** 18/7
**2:58 [1]** 3/1

**3**

**30 [1]** 4/10
**30-day [1]** 16/19
**3000 [1]** 2/12
**351-2339 [1]** 2/16
**393-8254 [1]** 2/13

**4**

**40 [1]** 7/20
**411 [1]** 1/20
**415 [1]** 2/13
**4th [1]** 1/20

**5**

**50 [1]** 7/20
**5307 [1]** 2/10
**543-0870 [1]** 1/21
**555 [1]** 2/12

**6**

**650 [1]** 2/10

**7**

**7/20/20 [1]** 18/15
**714 [1]** 1/21
**753 [1]** 18/6
**760-0404 [1]** 2/5

**8**

**8254 [1]** 2/13
**849-5307 [1]** 2/10

**9**

**9/21 [2]** 4/18 8/12
**9/7 [2]** 4/6 4/17
**92614 [1]** 2/5
**92701 [1]** 1/20
**93403-1211 [1]** 2/10
**94105-0921 [1]** 2/13
**949 [1]** 2/5

**A**

**able [2]** 8/8 10/9
**about [7]** 6/21 6/23 7/5 7/20 8/20 15/19 15/20
**above [1]** 18/9
**above-entitled [1]** 18/9
**accommodate [1]** 4/24
**actual [1]** 4/10
**actually [3]** 8/18 10/14 10/19
**adequate [1]** 12/15
**adjusted [1]** 4/23
**adjustments [1]** 4/15
**admonition [1]** 15/1
**adopt [1]** 4/25
**adopting [1]** 4/11
**advance [1]** 12/18
**adverse [1]** 5/2
**after [2]** 4/4 4/12
**afternoon [3]** 3/6 3/11 3/14
**again [3]** 7/25 9/20 15/17
**ago [2]** 11/15 11/20
**agree [2]** 5/20 14/16
**agreement [1]** 5/9
**ahead [1]** 10/12
**ahold [1]** 10/5
**al [1]** 1/9
**alert [1]** 5/11
**all [9]** 6/25 10/5 10/10 10/25 11/11 12/15 13/7 14/22 15/15
**allegations [2]** 11/7 14/9
**allege [1]** 15/12
**alleged [1]** 15/22
**allegedly [2]** 14/1 14/9
**along [1]** 15/1
**already [4]** 6/1 8/1 8/2 16/2
**also [4]** 8/3 11/17 13/1 15/20
**Alto [1]** 2/10
**always [1]** 7/9
**amend [1]** 16/19
**amended [1]** 13/15
**amending [1]** 5/12
**among [1]** 8/9
**amount [1]** 3/25
**Ana [3]** 1/16 1/20 3/1
**analyze [2]** 6/15 12/10
**another [1]** 7/22
**any [4]** 6/21 13/2 14/21 15/11
**anybody [1]** 11/4
**anything [2]** 10/24 16/23
**APPEARANCES [2]** 2/1 3/5
**APPLE [4]** 1/11 3/4 3/12 3/24
**Apple's [1]** 11/8
**application [1]** 10/20
**applies [1]** 6/25
**appreciate [2]** 8/6 11/2
**are [25]**
**arguing [1]** 6/7
**argument [3]** 6/25 12/22 15/25
**around [1]** 14/2
**art [7]** 3/20 3/25 4/1 4/5 4/9 4/21 8/15
**as [18]** 3/23 4/14 5/22 6/7 6/7 8/10 8/16 8/17 9/21 9/23 9/25 11/9 11/19 12/5 12/6 12/6 14/24 16/15
**ask [1]** 8/20
**asking [2]** 10/15 10/17
**aspect [1]** 6/9
**asserted [1]** 14/11
**assume [1]** 14/11
**Avenue [1]** 2/15
**avoid [2]** 10/4 14/20
**aware [1]** 14/20

**B**

**back [4]** 5/18 9/9 10/16 16/14
**ball [1]** 9/4
**based [2]** 11/8 14/1
**basic [2]** 11/24 12/9
**basis [4]** 3/23 9/8 10/4 13/7
**be [36]**
**because [8]** 6/14 7/15 8/1 8/24 9/25 11/23 12/25 13/20
**been [6]** 11/20 11/23 13/14 14/4 15/12 16/6
**before [9]** 5/19 7/6 10/2 10/10 12/3 12/24 12/24 14/23 16/7
**begin [1]** 5/7
**beginning [1]** 7/23
**behalf [4]** 3/5 3/7 3/9 3/12
**behind [2]** 11/24 13/10
**being [3]** 6/11 6/23 10/9
**believe [3]** 3/18 8/7 11/4
**bell [1]** 10/13
**better [1]** 4/1
**between [1]** 4/22
**bit [2]** 7/6 7/21
**both [5]** 4/19 6/6 9/6 13/9 15/19
**breach [1]** 16/3
**BRIAN [3]** 2/8 2/14 3/13
**brief [1]** 7/12
**briefed [3]** 11/19 12/3 16/2
**briefly [1]** 12/20
**busy [1]** 11/2

**C**

**CA [4]** 1/20 2/5 2/10 2/13
**CALIFORNIA [3]** 1/5 1/16 3/1
**Calling [1]** 3/3
**can [12]** 6/2 6/11 6/16 7/6 7/9 10/2 10/6 10/21 11/4 11/7 13/17 13/22
**can't [5]** 10/13 12/1 13/2 13/21 14/20
**cannot [2]** 11/9 15/18
**case [22]**
**cases [4]** 12/24 14/22 15/5 16/4
**cause [4]** 7/9 13/19 13/22 15/2
**CENTRAL [1]** 1/5
**certain [4]** 9/24 13/18 13/21 15/1
**CERTIFICATE [1]** 18/4
**certify [1]** 18/6
**change [3]** 7/8 13/19 15/1
**changed [1]** 13/21
**changes [3]** 8/5 9/1 9/5
**changing [2]** 7/25 8/24
**charting [2]** 6/6 7/7
**charts [1]** 6/11
**choices [3]** 7/14 8/7 8/8
**circle [1]** 9/9
**cited [2]** 13/12 16/2
**claim [15]** 3/23 4/1 4/18 4/23 6/8 6/11 6/16 6/17 6/22 11/7 13/1 14/12 15/3 15/11 16/17
**claims [15]** 3/19 4/9 4/21 5/16 6/5 6/14 6/23 7/1 7/13 7/20 12/19 13/13 14/13 14/17 16/5
**client [1]** 6/19
**clothing [1]** 15/6
**Code [1]** 18/7
**come [9]** 4/4 4/17 4/19 5/21 8/9 10/7 10/16 15/4 16/14
**comes [1]** 3/24
**coming [1]** 15/6
**complete [1]** 5/9
**completely [2]** 9/3 14/16
**compliance [2]** 11/15 12/8
**complying [1]** 16/18
**concern [2]** 6/1 10/14
**concluded [1]** 17/3
**conference [2]** 3/2 18/11
**confidential [10]** 9/18 11/8 11/17 12/11 12/16 13/23 13/24 14/2 14/12 15/17
**conformance [1]** 18/10
**consensus [1]** 8/10

## C

consider [1] 13/9
considered [1] 6/1
contemplate [2] 4/9 4/12
contentions [12] 3/21 3/21 4/6 4/17 5/1
  5/19 8/15 8/22 8/23 9/2 9/7 9/11
contract [1] 16/3
copy [1] 6/17
copying [1] 6/13
core [5] 9/11 9/18 12/11 12/16 16/10
CORPORATION [3] 1/9 3/4 3/8
correct [2] 16/1 18/8
could [6] 7/3 7/5 7/22 13/14 14/24 15/13
couldn't [1] 15/1
COUNSEL [1] 2/1
couple [1] 5/25
course [1] 5/19
COURT [10] 1/4 4/11 5/11 6/22 6/24
  11/25 15/7 16/8 16/15 18/16
Court's [1] 5/13
Courthouse [1] 1/19
craft [1] 13/25
create [2] 6/13 10/9
critical [1] 14/6
CRUTCHER [3] 2/9 2/12 2/15
currently [2] 8/21 16/6

## D

date [8] 4/6 4/7 5/4 13/18 13/20 14/25
  16/19 18/13
dates [3] 4/22 9/6 9/14
day [1] 16/19
days [1] 4/10
deal [1] 9/4
decide [1] 6/16
decided [1] 10/21
Defendant [1] 1/12 2/6
defendants [1] 3/9
demonstrating [1] 4/2
dependent [2] 16/4 16/5
described [1] 15/11
description [1] 15/16
designate [1] 4/1
determine [1] 11/25
did [2] 9/20 11/15
different [1] 6/17
differently [1] 12/10
disclosed [5] 12/12 12/18 14/4 14/9
  15/13
disclosure [13] 3/20 4/10 4/14 11/14
  11/18 11/23 12/15 13/14 13/16 13/20
  14/23 14/25 15/8
disclosures [8] 3/24 4/4 4/5 4/5 4/19
  4/24 4/25 16/13
discovery [9] 8/2 10/3 11/25 12/1 12/23
  12/25 13/3 14/24 15/20
discretion [1] 4/13
discussing [1] 6/7
discussion [1] 6/3
discussions [7] 7/19 7/23 8/9 11/22
Dismiss [2] 5/13 16/7
dismissed [1] 16/6
dispute [4] 6/21 11/14 13/2 13/3
disputes [1] 15/19
DISTRICT [1] 1/4 1/5
DIVISION [1] 1/6
do [19]
document [1] 12/2
documentation [1] 9/21
documents [7] 5/18 10/6 11/5 11/10
  12/11 12/17 16/10
does [3] 11/18 12/22 13/5
doesn't [2] 13/1 13/1
don't [10] 4/18 5/3 7/3 7/16 9/10 10/8
  12/23 12/7 14/3 15/9

## E

each [2] 6/15 7/1
Early [3] 9/24 12/24 16/3
effort [1] 6/12
either [1] 13/20
else [1] 16/23
email [1] 10/17
enables [1] 11/24
end [3] 6/5 6/23 16/19
enough [1] 4/19
entertain [1] 10/16
entitled [1] 18/9
equally [1] 7/1
et [1] 1/9
evaluate [2] 3/23 5/15
even [5] 6/13 14/1 14/6 15/12 16/7
events [1] 13/17
ever [1] 13/19
every [4] 11/6 13/11 13/13 14/18
everything [4] 5/10 5/20 7/7 7/16
ex [2] 9/8 10/20
ex-parte [2] 9/8 10/20
example [2] 3/22 11/13
exception [1] 13/17
exchange [3] 4/17 4/22 5/11
express [2] 13/9 14/19
expressly [1] 12/23
extent [3] 6/21 9/14 12/16

## F

fact [6] 5/13 7/16 8/6 12/5 12/12 15/20
factually [1] 16/4
fair [1] 8/8
fairly [1] 9/7
fall [1] 12/1
far [2] 6/7 8/1
February [1] 5/3
feel [1] 10/24
fighting [3] 16/11 16/11 16/12
file [2] 10/19 16/12
filed [2] 3/15 9/23
filings [1] 15/13
final [3] 4/14 8/15 8/17
finding [1] 14/21
fine [1] 8/11
firm [1] 6/19
first [5] 7/24 10/16 10/21 10/25 11/14
Floor [1] 2/4
follow [2] 12/8 13/7
following [2] 4/25 8/16
foregoing [1] 18/7
format [1] 18/10
forth [1] 5/12
forward [4] 12/14 14/24 16/8 16/14
found [1] 14/20
Francisco [1] 2/13
free [1] 10/24
Fresh [1] 3/25
FRIDAY [1] 3/1
full [1] 3/20
fully [1] 5/15
fundamentally [1] 3/18
further [2] 4/12 8/9

## G

gearing [1] 8/2
general [2] 5/5 16/21
get [4] 7/6 7/7 10/5 10/21

gets [2] 7/16 16/8
getting [1] 16/12
GIBSON [3] 2/9 2/12 2/15
give [1] 3/22
given [1] 14/19
gives [1] 4/18
go [6] 4/14 6/18 8/18 12/13 14/24 16/8
going [15] 6/6 6/6 8/11 8/12 8/18 8/24
  9/1 9/1 9/2 9/3 9/14 11/13 13/5 16/12
  16/16
good [7] 3/6 3/11 3/14 7/9 13/19 13/21
  15/2
guess [2] 8/25 12/10
guidance [1] 11/24

## H

had [5] 10/16 10/18 11/23 13/19 14/23
hank [1] 8/19
happen [1] 9/1
happy [2] 3/17 5/5
hard [4] 7/14 8/7 8/8 11/9
has [10] 3/23 6/15 6/18 12/21 13/12
  14/20 15/12 16/6 16/14 16/15
have [34]
having [4] 6/22 10/25 11/22 12/18
he [1] 12/24
hear [2] 3/17 5/6
heard [2] 7/24 11/3
hearing [7] 4/13 4/16 4/23 5/1 5/2 8/16
  11/1
held [1] 18/9
helpful [1] 6/3
here [5] 11/12 11/21 13/2 14/6 15/9
here's [1] 15/14
hereby [1] 18/6
higher [1] 7/4
holding [1] 15/5
Honor [17] 3/6 3/11 5/8 5/24 8/19 8/21
  9/19 9/20 11/1 11/14 12/3 12/21 14/17
  15/24 16/24 16/25 17/1
HONORABLE [1] 1/8
hope [1] 9/25
how [1] 8/10
hundreds [2] 6/5 6/11
hunt [1] 10/6

## I

I'd [1] 3/16
I'll [1] 5/5
I'm [5] 5/1 6/10 8/11 8/12 14/20
I've [1] 16/9
idea [1] 7/7
identify [1] 12/19
ignores [1] 14/21
immediately [1] 10/18
importance [1] 14/6
important [2] 13/8 14/7
impose [1] 8/11
INC [2] 1/11 3/4
indeed [1] 12/24
independent [1] 16/1
indicated [2] 5/22 16/15
individual [1] 6/16
inefficient [1] 3/19
information [15] 5/11 6/14 9/12 9/18
  10/11 10/12 10/16 10/18 11/8 11/17
  13/23 13/24 14/2 14/12 15/17
infringement [7] 3/21 5/1 8/14 8/21 9/2
  9/6 9/11
initial [3] 4/3 4/8 8/13
instance [1] 13/6
instead [1] 6/22
invalidity [8] 3/21 3/24 4/5 4/6 4/16 4/25
  8/23 9/7
involved [2] 6/8 13/12
involves [1] 14/13

EXHIBIT E
-30-

**I**

irvine [1]  2/5
is [42]
issue [3]  9/25 10/21 11/6
issues [1]  11/11
it [35]
it's [15]  3/11 3/18 3/25 6/3 7/20 11/2
13/14 14/1 14/4 14/5 14/6 15/5 15/6
15/6 16/7
Item [1]  3/3
its [2]  3/24 9/10

**J**

JAMES [1]  1/8
JENSEN [2]  2/3 3/8
joint [2]  3/15 8/13
JOSEPH [2]  2/3 3/7
JOSHUA [3]  2/8 2/11 3/12
judge [4]  1/8 9/17 12/24 16/3
Judicial [1]  18/11
July [5]  1/17 3/1 8/22 9/3 18/13
July 27 [1]  8/22
June [2]  5/18 16/14
just [13]  5/25 5/25 6/2 7/16 8/4 9/14
12/1 12/20 12/25 13/23 15/13 15/18
16/10
JVS [2]  1/11 3/3

**K**

keep [1]  16/11
key [1]  11/21
kind [4]  6/4 7/11 10/6 15/5
kinds [2]  7/22 11/11
kitchen [1]  7/17
KNOBBE [2]  2/4 3/7
know [8]  7/20 8/25 9/23 10/1 10/23 11/1
15/5 15/16
knowing [1]  10/18

**L**

language [4]  13/9 14/19 14/20 14/21
large [1]  15/4
last [1]  3/16
later [3]  2/16 13/15 13/20
law [1]  16/2
lawyers [2]  11/16 15/21
leading [1]  4/16
leads [1]  11/10
least [4]  6/2 13/15 14/24 15/24
leave [2]  4/13 16/19
LERNER [4]  2/8 2/11 3/12 10/23
let [5]  3/16 3/22 5/25 5/25 6/1 9/9
Let's [3]  5/7 14/11 16/21
levels [1]  6/18
light [2]  4/1 9/7
like [1]  7/12
likely [1]  9/16
limits [4]  6/4 7/12 7/13 8/10
line [2]  9/5 15/14
list [2]  10/7 15/1
little [2]  7/21 7/25
LLP [3]  2/9 2/12 2/15
long [2]  6/12 11/20
look [1]  13/23
lot [2]  7/12 15/19
LYON [5]  2/7 3/12 5/23 9/20 12/5

**M**

made [4]  4/4 9/14 9/16 15/25
magistrate [1]  9/17 9/24
Main [1]  2/4
make [9]  6/19 6/24 7/14 7/14 7/15 8/7
8/8 9/10 11/7
makes [3]  3/24 5/3 6/25
many [4]  11/15 14/3 14/8 14/8

**MARK [3]**  2/7 3/11 9/20
Markman [7]  1/43 4/16 4/23 5/3 9/2
8/16
MARTENS [2]  2/4 3/7
MASIMO [13]  1/9 3/4 3/7 3/23 4/1 9/5
9/10 10/15 12/18 12/21 13/12 13/22
14/11
materials [2]  12/15
matter [3]  11/21 16/12 18/9
may [4]  4/15 6/1 6/23 8/3 8/20 9/23
10/1 10/19 12/13 12/20
maybe [3]  7/21 7/22 7/25
me [9]  3/8 3/12 3/16 3/22 4/8 5/25 6/2
9/9 9/16
mean [2]  6/9 13/1
mention [1]  13/11
might [3]  6/8 11/17 14/8
Mill [1]  2/9
Mission [1]  2/12
monkey [1]  8/3
month [2]  12/6 16/19
months [2]  11/15 15/16
more [8]  5/15 7/6 7/21 8/4 8/20 10/24
14/6 16/12
most [2]  11/12 11/24
motion [5]  5/13 9/16 10/14 16/7 16/21
motions [2]  16/3 16/12
move [1]  16/14
Mr [1]  12/5
Mr. [5]  5/7 5/23 9/9 10/23 15/23
Mr. Lerner [1]  10/23
Mr. Lyon [1]  5/23
Mr. Re [3]  5/7 9/9 15/23
much [2]  17/1 17/2
my [5]  3/8 3/16 4/3 5/5 16/20

**N**

nail [1]  16/11
narrowing [1]  4/20
necessary [3]  10/20 12/5 12/6
need [7]  4/23 5/19 7/19 7/21 10/19
11/18 12/13
needs [4]  5/10 5/14 7/10 10/1
never [3]  14/11 15/11 16/9
new [2]  2/16 8/25
no [8]  3/3 8/12 13/2 14/17 15/3 15/15
16/12 16/24
non [1]  12/25
non-trade [1]  12/25
nonconfidential [1]  9/21
normal [1]  14/7
not [21]
notwithstanding [1]  12/12
now [7]  7/5 7/19 9/23 12/7 12/12 12/18
16/14
nullity [2]  12/22 13/6
number [5]  3/19 7/3 7/4 8/14 15/14
numbers [2]  7/3 7/5
NY [1]  2/16

**O**

objection [1]  9/23
objections [2]  10/19 16/9
obvious [1]  15/6
obviously [1]  11/18 16/8
off [1]  8/23
okay [3]  6/20 16/20 17/2
old [1]  15/17
once [3]  11/5 11/10 15/18
one [8]  6/3 8/20 9/9 10/13 11/7 13/13
13/17 15/13
only [2]  13/11 13/17
opportunity [1]  7/11
order [9]  5/13 8/12 9/13 9/22 11/15 12/3
13/18 13/21 14/24
orders [2]  9/24 14/15

**other [9]**  5/17 11/21 12/15 13/11 16/3
16/6
otherwise [2]  7/7 8/13 8/8
ought [4]  4/4 8/8 8/16 8/17
our [13]  5/12 5/19 7/2 8/22 11/6 11/19
13/23 13/24 14/1 15/21 16/1 16/5 16/5
out [9]  5/14 5/21 6/2 9/15 9/15 9/15
10/11 10/19 11/5
over [1]  6/7
overlap [1]  12/13
own [1]  11/9

**P**

P.M [1]  3/1
page [4]  2/9 7/12 15/14 18/10
pages [1]  6/12
Palo [1]  2/10
paragraph [1]  6/17
parallel [1]  13/13
Park [1]  2/15
part [1]  9/21
parte [2]  9/8 10/20
parties [9]  3/18 4/4 4/7 5/15 5/20 6/6 8/7
8/13 12/2
parties' [1]  4/17
partner [1]  3/8
parts [1]  8/4
party's [1]  5/18
pasting [1]  6/13
patent [10]  9/17 12/14 12/17 13/3 13/24
14/13 14/23 15/13 16/1 16/8
patents [9]  5/14 7/25 8/3 8/24 9/6 12/11
14/3 14/8 14/10
peck [1]  10/6
pending [1]  16/7
people [2]  7/13 11/13
Per [1]  3/2
permit [1]  9/13
pick [2]  7/5 7/21
picked [1]  7/4
place [4]  9/13 9/23 10/2 10/14
plaintiff [2]  3/5 13/18
plaintiffs [4]  1/10 2/2 7/21 10/5
plan [1]  16/18
planning [3]  5/12 7/25 12/6
play [1]  15/4
pleading [5]  5/12 8/25
please [3]  3/5 3/10 10/24
point [9]  6/4 8/7 9/19 9/20 11/5 11/6
11/18 13/12 14/22 16/6
points [1]  5/25
poker [1]  3/22
policy [2]  11/21 11/24
possible [2]  10/22 12/7 13/14
potentially [2]  6/5 6/7
practice [1]  16/21
preparing [1]  7/11
present [1]  4/8
presently [1]  9/12
PRESIDING [1]  1/8
prevent [1]  16/13
prior [9]  3/20 3/20 3/25 4/1 4/5 4/9 4/21
8/15 13/13
probably [1]  7/15
problem [2]  14/3 14/18
problems [3]  11/22 12/8 13/7
proceed [2]  10/2 12/19
proceedings [3]  1/15 17/3 18/9
produce [3]  9/11 9/20 10/16
produced [3]  11/10 12/16 14/25
producing [1]  16/10
product [1]  11/9
production [3]  9/14 9/17 14/13
productions [1]  8/14
proper [1]  11/25
proposal [7]  4/8 4/11 4/20 4/24 5/21
8/13 8/15

**P**

propose [1]  4/7
proposed [1]  4/18
protective [3]  9/13 9/22 14/15
provide [1]  12/2
provided [4]  10/12 11/19 11/20 11/23
public [1]  15/13
purported [1]  13/25
purpose [1]  10/9
pursuant [2]  4/24 18/6
put [1]  7/13
putting [1]  6/4

**Q**

question [1]  8/20
quickly [1]  12/6
quite [1]  14/8

**R**

raise [2]  5/25 12/6
raised [2]  11/6 12/21
RE [5]  2/3 3/7 5/7 9/9 15/23
real [1]  13/22
really [3]  7/10 10/4 10/8
reasons [2]  7/8 14/5
received [1]  5/17
reduction [3]  3/19 4/8 4/12
reductions [1]  4/10
reevaluate [1]  9/6
references [4]  3/20 4/9 4/21 8/15
reflect [1]  4/19
reflected [1]  9/2
regard [1]  9/17
regarding [1]  5/13
regulations [1]  18/11
reign [1]  7/6
relate [1]  13/1
related [2]  6/14 12/23
relates [2]  12/25 13/3
relevant [3]  11/12 12/11 12/17
relief [1]  10/21
render [2]  12/22 13/5
replead [1]  16/16
report [1]  3/15
reported [1]  18/8
REPORTER [1]  18/16
REPORTER'S [1]  1/15
requests [1]  12/1
require [2]  3/19 4/15
required [1]  9/10
respond [1]  12/20
results [1]  16/21
review [2]  6/19 6/24
road [2]  2/9 7/8
ROSENTHAL [3]  2/8 2/14 3/13
roughly [1]  15/16
round [2]  4/3 8/14
Royal [1]  3/25
RPR [1]  1/19
rule [4]  10/4 11/24 12/9 13/8
ruled [1]  12/4
ruling [1]  14/23
run [2]  12/7 14/3

**S**

SACV [1]  1/11 3/3
SACV-20-00048-JVS [2]  1/11 3/3
said [5]  5/10 5/20 9/9 12/25 14/24
same [1]  6/25
San [1]  2/13
Santa [3]  1/16 1/20 3/1
say [5]  6/3 10/23 14/7 15/7 15/13
says [1]  12/5
schedule [2]  8/5 9/22
scheduling [1]  12/3

scope [2]  11/25 15/20
second [2]  11/9 15/25
secret [20]
secrets [11]  10/7 10/10 10/13 12/13
 12/15 12/24 13/4 13/25 14/9 15/21
 15/22
Section [2]  11/15 18/6
see [2]  9/3 16/21
seek [1]  10/20
seen [4]  6/10 11/16 15/21 16/9
SEFFENS [3]  1/19 18/15 18/16
selections [1]  4/20
SELNA [1]  1/8
sense [2]  5/3 6/25
separate [1]  9/3
September [2]  5/22 8/23
September 21 [1]  5/22
serious [1]  15/10
set [3]  5/12 7/2 8/21
seven [1]  15/16
share [1]  9/7
SHARON [3]  1/19 18/15 18/16
sheep's [1]  15/6
short [1]  9/8
should [7]  7/15 9/10 11/19 12/12 12/16
 12/18 16/23
show [1]  13/19
side [1]  13/3
sides' [1]  4/19
significant [1]  6/12
similar [1]  6/24
simply [2]  6/16 11/9
single [2]  6/22 13/13
sink [1]  7/17
sit [1]  6/15
situation [3]  10/5 13/22 15/9
six [1]  5/2
slipping [1]  5/2
so [19]
some [19]
somebody [1]  6/15
something [3]  6/10 7/9 7/19
sort [1]  7/12
SOUTHERN [1]  1/6
space [1]  3/4
specific [1]  4/11
specificity [1]  15/12
stage [2]  7/10 8/17
staging [1]  9/24
start [1]  8/2
statement [1]  8/2
states [5]  1/4 1/19 12/23 18/7 18/11
statute [4]  12/22 13/6 13/9 14/19
stenographically [1]  18/8
STEPHEN [2]  2/3 3/8
still [2]  6/14 15/7
stipulate [1]  7/23
Street [3]  1/20 2/4 2/12
strenuous [1]  16/9
subject [1]  14/13
submit [1]  8/13
substantially [1]  8/5
substituting [1]  5/14
such [1]  16/9
suggested [1]  15/10
suggesting [1]  7/18
Suite [2]  1/20 2/12
Suppose [1]  3/22
sure [3]  6/10 6/19 6/25

**T**

take [1]  16/23
talk [1]  7/5
talked [1]  10/17
target [4]  6/4 7/5 7/12 9/1
technical [7]  5/18 9/12 9/21 10/6 10/10

12/17 16/10
telephone [3]  3/10 3/14
telephonic [1]  3/2
ten [1]  7/22
terms [4]  4/18 4/23 6/8 8/17
terrible [1]  7/4
than [3]  7/21 8/12 14/7
thank [9]  3/6 3/15 5/8 5/24 10/25 16/24
 16/25 17/1 17/2
that [119]
that's [13]  5/3 5/12 6/9 6/20 7/8 7/18
 7/25 8/11 10/13 14/14 14/22 15/16
 15/18
their [7]  4/4 4/5 11/9 13/25 14/3 15/22
 16/7
theirs [1]  14/1
them [1]  6/10
then [19]
there [22]
there's [6]  6/21 7/4 7/7 12/8 13/2 15/15
these [14]  6/10 6/11 6/4 7/8 7/13 9/14
 10/5 10/18 11/1 11/5 11/10 11/22 11/22
 16/3
they [18]  7/14 7/15 7/16 8/8 10/7 10/8
 10/16 12/2 12/12 12/13 12/17 13/19
 14/3 15/10 15/12 15/17 16/10 16/11
they'll [1]  7/13
they're [3]  6/6 7/24 16/12
they've [3]  15/10 15/11 15/25
thicket [1]  13/24
thing [3]  6/3 9/9 13/11
things [3]  7/8 12/10 15/15
think [18]  4/15 4/18 4/22 5/9 5/10 5/20
 7/3 9/10 11/12 11/21 11/23 13/7 13/8
 13/17 14/5 15/19 16/14 16/20
third [2]  8/17 15/25
this [23]
those [10]  4/10 5/5 7/1 7/22 8/24 9/1
 10/10 10/13 14/5 15/15
though [3]  8/20 14/1 15/12
thought [1]  4/3
thoughts [2]  3/16 5/5
thousands [1]  6/12
through [2]  6/18 13/23
throw [2]  6/2 8/3
thrown [1]  7/16
time [8]  4/14 4/19 5/15 8/10 11/20 13/15
 15/25 16/14
times [1]  11/2
Title [1]  18/7
today [2]  16/13 16/23
tooth [1]  16/11
trade [27]
transcript [3]  1/15 18/8 18/10
trial [3]  4/14 5/4 8/18
tries [1]  14/2
trigger [1]  8/23
triggers [1]  8/22
trivial [1]  6/9
troubling [1]  8/1
true [1]  18/7
try [2]  10/7 13/25
trying [3]  7/18 8/2 10/8
two [2]  4/7 11/12
type [1]  10/20

**U**

U.S [1]  18/16
understand [3]  9/12 12/21 16/13
understood [1]  10/15
undo [1]  15/18
undone [1]  11/10
unfair [1]  3/18
unfortunately [1]  15/19
UNITED [4]  1/4 1/19 18/7 18/11
unnecessary [1]  15/19

## U

**unrung [1]**  10/13
**until [2]**  9/11 12/2
**up [11]**  3/24 4/19 5/21 6/5 6/11 6/15
6/23 8/2 8/21 10/7 16/23
**us [2]**  10/15 10/17
**use [1]**  13/24

## V

**vague [1]**  11/7
**valuable [1]**  11/8
**versus [1]**  3/4
**very [8]**  6/12 8/1 12/20 13/7 13/15 13/22
17/1 17/2
**viable [1]**  4/2
**view [2]**  7/2 11/19
**views [1]**  16/21

## W

**waiting [1]**  9/22
**want [6]**  5/11 8/9 8/25 10/23 11/17
15/17
**wanted [1]**  13/19
**wants [1]**  12/19
**was [8]**  10/15 10/17 13/13 13/15 13/17
13/18 14/14 14/22
**wasn't [1]**  4/2
**waterfall [1]**  12/7
**wax [1]**  9/4
**way [2]**  10/9 13/25
**ways [2]**  7/13 14/5
**we [52]**
**we'll [1]**  15/18
**we're [6]**  5/9 8/2 8/18 9/22 12/6 13/5
**we've [1]**  7/24
**weave [1]**  14/2
**week [1]**  3/16
**weeks [2]**  4/7 5/2
**Well [3]**  9/5 15/24 16/20
**were [9]**  5/18 7/18 14/9 14/17 15/3 16/3
16/4 16/13 17/3
**West [1]**  1/20
**what [14]**  4/6 4/14 6/7 8/12 8/16 8/17
8/18 11/12 11/16 14/14 15/20 15/22
16/12 16/21
**what's [1]**  13/10
**whatever [3]**  4/24 6/18 7/20
**whatsoever [1]**  15/12
**when [4]**  3/24 8/25 11/14 12/14
**where [6]**  6/10 10/5 13/17 14/7 14/18
15/10
**Whereupon [1]**  17/3
**whether [4]**  6/16 7/20 11/25 14/14
**which [13]**  5/18 6/12 6/14 6/23 8/22 9/22
9/25 11/6 11/18 12/2 12/3 12/19 14/12
**who [2]**  11/16 15/21
**whole [2]**  10/4 10/9
**why [2]**  7/18 14/22
**will [9]**  5/14 5/20 5/21 8/7 8/13 12/8 13/6
13/11 16/11
**wind [1]**  6/11
**winds [1]**  6/15
**within [3]**  4/7 4/10 12/1
**without [3]**  13/20 13/21 15/2
**withstanding [1]**  15/15
**wolf [1]**  15/5
**work [4]**  5/21 11/9 11/14 11/17
**world [1]**  3/22
**worrying [1]**  6/23
**would [20]**
**wouldn't [1]**  7/14
**wrench [1]**  8/4

## Y

**years [1]**  11/8

**yes [3]**  5/17 15/3 16/18
**yesterday [2]**  9/23 10/17
**yet [1]**  5/17
**York [1]**  2/16
**you [43]**
**you've [1]**  6/10
**your [21]**
**yourselves [1]**  8/9