Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax:(949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **MASIMO'S OPENING CLAIM**<br>) **CONSTRUCTION BRIEF**<br>)<br>) Hon. James V. Selna<br>)<br>) Date:        July 1, 2024<br>) Time:       3:00 PM<br>) Location:   Courtroom 10C<br>) |

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ....................................................................................1

II.     TECHNICAL BACKGROUND ............................................................1

III.    CONSTRUCTION OF DISPUTED TERMS .......................................5

        A.      "processing characteristics" ......................................................6

        B.      "reduce/reducing activation of an attached sensor".................9

IV.     APPLE'S INDEFINITENESS ARGUMENTS LACK MERIT......................10

        A.      The Patent Examiners, Apple, The PTAB, And The Federal
                Circuit All Understood These Phrases .................................10

        B.      "higher power consumption level" .........................................12

        C.      "first control protocol" ..........................................................14

        D.      "continuously operating" .......................................................16

        E.      "relatively small amount of power" / "relatively large
                amount of power"...................................................................18

V.      CONCLUSION ...................................................................................19

1

## TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*Apple Inc. v. Masimo Corp.*,
5
   2024 WL 137336 (Fed. Cir. Jan 12, 2024)....................................................6, 7, 8

6

*Apple Inc. v. Masimo Corp.*,
7
   2024 WL 139570 (Fed. Cir. Jan 12, 2024)......................................................15

8

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
9
   713 F.3d 1377 (Fed. Cir. 2013) ....................................................................7

10

*Core Optical Techs., LLC v. Fujitsu Network Comms., Inc.*,
   2016 WL 7507760 (C.D. Cal. Sept. 12, 2016) ..............................................5

11

*FullView, Inc. v. Polycom, Inc.*,
12
   2021 WL 1253653 (N.D. Cal. Apr. 5, 2021)..................................................6

13

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
14
   327 F.3d 1364 (Fed. Cir. 2003) ................................................................8, 10

15

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
16
   572 U.S. 898 (2014)...........................................................................*passim*

17

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
18
   884 F.3d 1350 (Fed. Cir. 2018) ....................................................................7

19

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
20
   30 F.4th 1339 (Fed. Cir. 2022) ..........................................................10, 12, 19

21

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ....................................................................5

22

*Omega Eng'g, Inc. v. Raytek Corp.*,
23
   334 F.3d 1314 (Fed. Cir. 2003) ................................................................8, 9

24

*Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*,
25
   924 F.3d 1243 (Fed. Cir. 2019) ....................................................................6

26

*Phillips v. AWH Corp.*,
27
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).....................................................5, 6

28

1

# TABLE OF AUTHORITIES
### (*cont'd*)

2

3

**Page No(s).**

4

*Promptu Sys. Corp. v. Comcast Corp.*,

5

    92 F.4th 1372 (Fed. Cir. 2024) ........................................................................8, 9

6

*Regents of Univ. of Minn. v. LSI Corp.*,

7

    2023 WL 5520958 (N. D. Cal. Aug. 25, 2023) ..............................................6, 7

8

*U.S. Surgical Corp. v. Ethicon, Inc.*,

9

    103 F.3d 1554 (Fed. Cir. 1997) ..........................................................................5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. <u>INTRODUCTION</u>

The parties have submitted competing constructions for only two phrases.  For the first phrase ("processing characteristics"), Masimo proposes that the Court adopt verbatim the construction already provided by the Patent Trial and Appeal Board ("PTAB"), which the Federal Circuit affirmed in rejecting on the merits Apple's petition for *inter partes* review ("IPR").  The second phrase ("reduce/reducing activation of an attached sensor") requires no construction, as demonstrated by Apple's use of all words in the phrase to define it.  The additional words Apple proposes would not help any jury understand the phrase any better.  For both phrases, Apple proposes negative limitations without explaining why they are necessary or how they impact the case.  Apple appears to have proposed limitations to concoct noninfringement arguments where none exist.  The Court should reject Apple's unsupported insertion of negative-limitations.

Apple also argues four phrases are indefinite.  But these phrases were all readily understood by the patent examiner during prosecution.  They were also understood by Apple, Apple's expert, the PTAB, and the Federal Circuit during Apple's unsuccessful IPR proceedings.  Indeed, Apple has repeatedly argued these phrases were present in various references without suggesting it had difficulty understanding the scope of these phrases.  The Court should reject Apple's feigned confusion.

# II. <u>TECHNICAL BACKGROUND</u>

The two patents[1] at issue share a specification and claim systems and methods to reduce the power consumed by a physiological monitoring device.

The patents explain problems with the prior art.  The prior art relied on "sleep modes" to reduce power consumption.  In sleep mode, a physiological monitor powers

---

[1] U.S. Patent No. 8,457,703 ("the '703 Patent") is included as Ex. 14 to Declaration of Daniel Hughes in Support of Masimo's Claim Construction Brief ("Hughes Decl."); U.S. Patent No. 10,433,776 B ("the '776 Patent") is included as Hughes Decl. Ex. 15. All numbered exhibits cited herein are attached to the Hughes Decl. unless otherwise noted.

*1*    down the processor. '703 Patent at 1:63-67; 2:1-16.[2] Such a device periodically powers

*2*    up the processor and measures a physiological parameter to determine if a change has

*3*    occurred from a previous measurement. *Id.* at 2:1-16. If a change has occurred, the

*4*    device wakes from its sleep mode. *Id.* The patents describe disadvantages of this sleep

*5*    mode. For example, during sleep mode, the physiological monitor is not functioning.

*6*    *Id.* at 2:17-28. Thus, the monitor will miss events, such as oxygen desaturations or

*7*    irregular pulse rates, if the sleep periods are too long. *Id.* at 2:17-28; *see also*

*8*    Declaration of Dr. Vijay K. Madisetti, Ph.D. in support of Plaintiff's Claim

*9*    Construction Brief ("Madisetti Decl.") ¶ 30. But if the sleep periods are too short, the

*10*    device uses too much power because it must power up the processor each time it leaves

*11*    sleep mode. '703 Patent at 2:17-28; *see also* Madisetti Decl. ¶ 30.

*12*      The patents describe an innovative device that reduces power consumption

*13*    without relying on sleep mode. The device reduces the power it consumes by reducing

*14*    the time that the device's sensors are on or by reducing the amount of processing the

*15*    device does. Figure 4 shows a diagram of one such device, which includes a "sampling

*16*    controller" with a "control engine," labeled in red. '703 Patent at Fig. 4, 5:55-57. The

*17*    control engine controls "emitter drivers," labeled in blue, which are circuits that control

*18*    LED(s) that emit light into tissue. '703 Patent at Fig. 4; 1:30-32; 5:28-39; Madisetti

*19*    Decl. ¶ 32. The control engine also controls a "detector front-end," labeled in green,

*20*    which is a circuit that controls photodetector(s) that measure light after it has passed

*21*    through tissue. '703 Patent at Fig. 4; 5:28-54; Madisetti Decl. ¶ 32.

*27*

*28*    [2] Because the patents share a specification, Masimo cites only the '703 Patent in this section for simplicity.



FIG. 4

'703 Patent at Figure 4 (annotated).   The patents disclose at least three different "sampling mechanisms" to alter the power the device consumes. *Id.* at 5:59-6:8.

**First**, the patents explain that operating the LEDs requires a significant portion of the power budget for the device. *Id.* at 6:64-66.   Thus, reducing the amount of time the LEDs are on can reduce the power consumed. *Id.* at 5:59-66.   One way the control engine can alter the amount of time the LEDs are on is by changing the "duty cycle" of the LEDs using the emitter drivers. *Id.* at 5:61-66.   The parties agree that the duty cycle is "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent."   Dkt. 1947 at 1.   Thus, the control engine can reduce the duty cycle to reduce power consumption.   *Id.* at 6:67-7:4; Madisetti Decl. ¶¶ 35-36.

**Second**, the patents explain another way to reduce LED power consumption.   The control engine can create "a 'data off' time period," where at least the LEDs and emitter drivers are turned off completely.   '703 Patent at 7:8-12.   The patents teach that the control engine can also turn off the photodetector and detector front end during the data

off time period.  *Id.* at 7:12-14; *see also id.* at 8:19-22 ("In the data off state 818, the control engine 440 (FIG. 4) turns off the emitter drivers 480 (FIG. 4) and powers down the detector front-end 490 (FIG. 4).").  By turning off these components during a data off time period, the control engine saves power.  *Id.* at 5:66-6:8; Madisetti Decl. ¶ 37.

**Third**, the patents explain that calculating physiological measurements also requires a significant portion of the power budget for the device.  '703 Patent at 7:46-65.  Thus, the patents teach how to more efficiently calculate physiological measurements to reduce power consumption.  '703 Patent at 7:46-65; *see also id.* at 5:55-6:4.  Specifically, the patents describe the concept of "data blocks."  Data blocks are snapshots of detected signals received by the device over specific time intervals.  *Id.* at 7:27-29.  The device calculates physiological measurements from the data blocks.  *See id.* at 7:27-65; Madisetti Decl. ¶ 38.  But data blocks can overlap such that signals from the same time period are repeated in multiple data blocks.  *Id.* at 7:46-65.  The patents teach that the control engine can reduce or eliminate that overlap to reduce power consumption.  *Id.* at 7:46-65; *see also id.* at 5:55-6:4; Madisetti Decl. ¶ 38.

The control engine uses these three mechanisms alone or "in combination" with each other to target particular power consumption levels.  *Id.* at 11:1-24.  For example, the patents explain that the control engine can use the data off period to reduce power independently or in conjunction with changing the duty cycle.  *Id.* at 7:8-12.  Thus, the patents teach complex combinations of sampling mechanisms to achieve "a power target."  '703 Patent at 5:61-6:4, 11:10-24; Madisetti Decl. ¶ 39.

The patents also recognize that reducing power consumption using the three sampling mechanisms can reduce measurement accuracy.  *See* '703 Patent at 6:4-8; Madisetti Decl. ¶ 40.  To counteract this drawback, the patents teach that the device can recognize "events."  *Id.* at 6:28-34.  The patent identifies examples of events such as "oxygen desaturation, a fast or irregular pulse rate, or an unusual plethysmograph wave form."  *Id*.  When the device recognizes such events, the device can increase power consumption to increase accuracy.  '703 Patent at Abstract; Madisetti Decl. ¶ 40.

-4-

The patents further teach that the control engine can use the three sampling mechanisms to reduce power consumption when signal quality is high while increasing power consumption when signal quality is low. '703 Patent at 6:11-15. The patents teach that the processor determines low signal quality conditions based on, for example, signal statistics. *Id.* at 6:25-41. The patents give examples of low signal quality conditions, such as low-signal level, high-noise level, or signal artifacts caused by motion of the user. *Id.* Conversely, the patents recognize high-signal level, low-noise, or the absence of signal artifacts as high signal quality conditions. *See id.* at 6:25-41; Madisetti Decl. ¶ 41. Thus, the patents teach that "[t]hese various sampling mechanisms provide the flexibility to reduce power without sacrificing performance during, for example, high noise conditions or oxygen desaturation events." '703 Patent at 6:4-8. Madisetti Decl. ¶ 41.

## III.  CONSTRUCTION OF DISPUTED TERMS

Words of a claim are given the meaning they would have to one of ordinary skill in the relevant art at the time the application was filed. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*). In certain situations, a court may appropriately determine that a claim phrase needs no construction and its plain and ordinary meaning applies. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Phillips*, 415 F.3d at 1314. Where the language is clear, the Court need not "repeat or restate every claim term." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "is not an obligatory exercise in redundancy").

When courts construe claims, they first look to intrinsic evidence, which includes the claims, specification, and file history. *Philips*, 415 F.3d at 1317. Courts should also consider any other patent office proceedings, like IPRs. *See, e.g., Core Optical Techs., LLC v. Fujitsu Network Comms., Inc.*, 2016 WL 7507760, at *2 (C.D. Cal. Sept. 12, 2016) ("the intrinsic record" developed during a IPR "may inform on issues like claim construction"); After reviewing the intrinsic evidence, courts may consider extrinsic

1   evidence, but such evidence is "less significant than the intrinsic record" because it is
2   generally "less reliable." *Philips*, 415 F.3d at 1317-1318.  Courts should disregard
3   extrinsic evidence that is at odds with the intrinsic record. *Id.* at 1317.

4         Here, the parties dispute the construction of two claim phrases.  The Court should
5   adopt Masimo's position on both phrases for the reasons described below.

6   **A.    "processing characteristics"**

| Claim Term, Phrase or Clause | Masimo's Construction | Apple's Construction |
| --- | --- | --- |
| processing characteristics<br><br>('703 Patent, Claims 1-22)<br><br>('776 Patent, Claims 1-16) | characteristics determined from a signal received from one or more detectors configured to detect light | characteristics determined from a signal received from one or more detectors configured to detect light (i.e., the only signal received and processed in the claimed patient monitor) |

14      Masimo's proposal matches the PTAB and Federal Circuit's construction of
15  "processing characteristics" from the IPR proceedings initiated by Apple.  In affirming
16  the PTAB, the Federal Circuit held "the Board correctly construed the term 'processing
17  characteristics' as 'determined from a signal received from one or more detectors
18  configured to detect light.'" *Apple Inc. v. Masimo Corp.*, 2024 WL 137336, at *3 (Fed.
19  Cir. Jan 12, 2024).  The Court should adopt this construction for multiple reasons.

20      ***First***, the Federal Circuit affirmance of the IPR decisions collaterally estops
21  Apple from advancing a different claim construction here. *Regents of Univ. of Minn. v.*
22  *LSI Corp.*, 2023 WL 5520958, at *7 (N. D. Cal. Aug. 25, 2023); *see Papst Licensing*
23  *GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019)
24  (collecting cases).[3]  When dealing with collateral estoppel in a patent suit, courts apply

25

26  _____
27  [3] Because the PTAB now applies the same claim construction standard as the district
    court, PTAB claim constructions in IPR proceedings have a preclusive effect. *Regents*
    *of Univ. of Minn.*, 2023 WL 5520958, at *6-*7; *see also FullView, Inc. v. Polycom, Inc.*,
    2021 WL 1253653, at *7 n.3 (N.D. Cal. Apr. 5, 2021).  *See* Ex. 1at 1 (Apple advocating
28  preclusive effect of IPR proceedings to the Federal Circuit).

-6-

regional circuit law except as to aspects that have "special or unique application to patent cases." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).   In the Ninth Circuit, collateral estoppel applies when "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Regents of Univ. of Minn.*, 2023 WL 5520958, at *7 (quoting *Hydranautics v. FilmTex Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)).

Here, all three elements are met.   During IPR proceedings, the parties disputed the correct claim construction of "processing characteristics."   The PTAB construed this limitation and the Federal Circuit affirmed.   Thus, the same parties already litigated this same issue to a final decision on the merits.   Because the '703 Patent and '776 Patent share a specification, the Federal Circuit decision on the construction of "processing characteristics" in the '703 Patent also controls for the '776 Patent.  *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) (prior claim construction decision was preclusive on related patent when there was no "material difference" between the patents).   Thus, Apple is precluded from proposing a different construction for this term now.

***Second***, regardless of collateral estoppel, the patents support the Federal Circuit's construction.   As the Federal Circuit explained, "[i]n the claim language, 'processing characteristics' refers to the processing of 'one or more signals from one or more detectors configured to detect' light attenuated by the tissue." *Apple Inc. v. Masimo Corp.*, 2024 WL 137336, at *3 (Fed. Cir. Jan 12, 2024) (citing '703 Patent at 11:32-51). The Federal Circuit also held "[t]hroughout the specification, 'processing characteristics' are described as being determined based on the signals received from the light detectors, the sole source of signals that are then processed.'" *Id.* (citing '703 Patent at 5:11–23, 5:40–48, Figs. 3 & 4).

Similarly, Masimo's expert explains why a person skilled in the art would have understood that processing characteristics are determined from the signal received from the detector.  Madisetti Decl. ¶ 47.  As Madisetti explains, (1) the signal received from the detector is the only signal referenced in the claims, (2) all data processing in the claims depends on the signal from the detector, and (3) as discussed herein, the specification consistently describes determining the processing characteristics from the signal received form the detector.  *Id.*

Apple changes the meaning of the Federal Circuit's construction by adding "(i.e., the ***only*** signal received and processed in the claimed patient monitor)".  Apple seeks to add a negative limitation excluding other types of signals.  During the parties' conference of counsel, Apple refused to explain how this negative limitation affects infringement, validity or any other issue in the case.  Hughes Decl. ¶ 3.  As Apple admitted during the IPR, "claim terms need only be construed to the extent necessary to resolve the controversy."  Ex. 2 at 6 (quoting *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011)); *see also Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").  Thus, the Court should decline to adopt Apple's limitation.  That is especially true because it is a negative limitation that the Federal Circuit views with scrutiny.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003).

Apple appears to have proposed this language to argue incorrectly the Apple Watch does not infringe because the Apple Watch sensor both (a) receives signals from one or more detectors ***and*** (b) receives other signals, such as accelerometer data.  But the claims use the transitional phrase "comprising," which "indicates that the claim is open-ended and allows for additional steps."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003).  Thus, receiving signals beyond those recited in the claim would be irrelevant to infringement.

The Court should adopt the PTAB and Federal Circuit's construction of this phrase, which does not include Apple's negative limitation.

**B.    "reduce/reducing activation of an attached sensor"**

| Claim Term, Phrase or Clause | Masimo's Construction | Apple's Construction |
|---|---|---|
| reduce/reducing activation of an attached sensor<br><br>('703 Patent, Claims 1-8, 15-19) | no construction needed<br><br>However, the ordinary meaning of "activation" in the phrase is "on time." | reducing the amount of time the attached sensor is active (or on), but not by adjusting the LED level or intensity (i.e., by adjusting current) |

A jury will readily understand the phrase "reduce/reducing activation of an attached sensor" without further explanation, especially with the evidence presented in the trial.

Apple's proposal includes two portions: (1) "reducing the amount of time the attached sensor is active (or on)" and (2) "but not by adjusting the LED level or intensity (i.e., by adjusting current)."  The first portion largely repeats the claim language that Apple is asking the Court to construe, and Masimo has no objection to that unneeded portion.  But Masimo objects to the second portion.

The second portion adds a disfavored negative limitation nowhere found in the claim language.  *See Omega*, 334 F.3d at 1322-23.  As with "processing characteristics," Apple again refused to explain how this negative limitation affects infringement, validity, or any other issue in the case.  Hughes Decl. ¶¶ 3-4.  Thus, the Court should decline to adopt Apple's negative limitation because "claim terms need only be construed to the extent necessary to resolve the controversy." Ex. 2 at 6 (quoting *Wellman*, 642 F.3d at 1361); *Promptu*, 92 F.4th at 1380.

Apple appears to have proposed its negative limitation so that it could again manufacture a misleading and irrelevant non-infringement position.  In particular, Apple appears to be arguing the Apple Watch does not infringe because the Apple Watch both (1) reduces the amount of time the sensor is on **and** (2) adjusts the LED

-9-

level or intensity by adjusting current.  But, again, the claims use the transitional phrase "comprising," which "indicates that the claim is open-ended and allows for additional steps." *Invitrogen*, 327 F.3d at 1368.  As a result, a device that both reduces activation ***and*** adjusts the LED level or intensity by adjusting current still satisfies the claim.

The Court should decline to construe this phrase.  If the Court issues a construction, it should simply construe "activation" as "on time," the plain meaning, to aid the jury in understanding the limitation at issue.

## IV.  APPLE'S INDEFINITENESS ARGUMENTS LACK MERIT

A claim is indefinite only "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  "[A]bsolute precision" is not required. *Id.* at 910.

Here, Apple raises four indefiniteness challenges.  All of them lack merit.

## A.   The Patent Examiners, Apple, The PTAB, And The Federal Circuit All Understood These Phrases

Facts demonstrating "the examiner understood [the] phrase throughout the prosecution, as did both parties' experts during the course of litigation" are "highly relevant" in showing a claim is not indefinite. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347-1348 (Fed. Cir. 2022) (reversing district court finding of indefiniteness).  Here, as explained below, the patent examiners, Apple, Apple's expert, the PTAB, and the Federal Circuit all understood the disputed phrases throughout prosecution and the IPR proceedings.

***First***, the patent examiners for both patents understood the scope of the claims during prosecution.  The examiners asserted that many of the disputed phrases were present in various references. Ex. 3, Office Action dated August 30, 2012, at 2-5; Ex. 4, 1/17/2019 Office Action dated January 17, 2019, at 2-7.  The '703 patent examiner even relied on some of the phrases Apple argues are indefinite as reasons supporting

his notice of allowance.  Ex. 3, Notice of Allowance dated February 1, 2013, at 3 (explaining the prior art did not teach or suggest "said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor" and "said continuously operating at said lower power consumption level comprises reducing an amount of processing by a signal processor").  The examiners thus understood the disputed terms.

**Second**, Apple challenged all claims of the two patents in multiple IPR petitions. In those IPRs, Apple argued that numerous references disclosed the limitations that Apple now alleges are indefinite.  Ex. 5 at 8-63; Ex. 2 at 7-70.  Apple did not allege any limitation was indefinite and instead claimed that no construction was necessary because "the prior art's description of the claimed elements" was similar to the patents' specification.  Ex. 5 at 7; Ex. 2 at 6.  Apple also filed a declaration from Dr. Brian W. Anthony (Research Scientist at Massachusetts Institute of Technology) in each of its IPRs.  Dr. Anthony identified prior art that allegedly disclosed the limitations Apple challenges.  Ex. 6 at 19-63; Ex. 7 at 19-81.  Dr. Anthony never opined that he could not understand any limitation.  Instead, he interpreted all phrases "according to their plain meaning." Ex. 6 at 19; Ex. 7 at 19.  And at his depositions, Dr. Anthony discussed the claims of the asserted patents at length and never asserted that he could not understand the claims.  Ex. 8; Ex. 9.

**Third**, the PTAB considered every claim of the two patents during the IPRs and determined that no "explicit construction" was necessary for the phrases that Apple now argues are indefinite.  Ex. 10 at 21; Ex. 11 at 14-15.  The Federal Circuit likewise affirmed the PTAB's decisions on appeal.  The PTAB and the Federal Circuit never suggested that the claims had any ambiguity.

Accordingly, the patent examiners, Apple, Apple's expert, the PTAB, and the Federal Circuit all thoroughly considered the claims and never suggested that the claims were indefinite.  Apple's invalidity contentions in this case also identified 185 systems, patents, and publications that allegedly disclose claim limitations that Apple argues are

-11-

indefinite.[4]  Such facts are "highly relevant" in showing a person of ordinary skill in the art would understand the scope of the claims.  *See Niazi*, 30 F.4th at 1347.  That alone should defeat Apple's indefiniteness arguments.  At a minimum, it should cause the Court to be highly skeptical of the indefiniteness arguments Apple raised now only after losing its IPRs.

With regard to each of the limitations at issue, Apple's arguments also fail for additional reasons described in the below sections.

**B.**   **"higher power consumption level"**

| Claim Term, Phrase or Clause | Masimo's Construction | Apple's Construction |
|---|---|---|
| higher power consumption level<br><br>('703 Patent,<br>Claims 1-16) | not indefinite and no construction needed | indefinite |

Apple argues the limitation is indefinite because various claims suggest it has different characteristics.  According to Apple, independent claims 1 and 9 require the "higher power consumption level" to comprise an "increased activation" of the claimed sensor and/or "increased amount of processing" by the claimed processor.  In contrast, Apple argues independent claims 15 and 20 require the "higher power consumption level" to comprise "reducing activation" of the claimed sensor and/or "reduced amount of processing" by the claimed processor.  Ex. 12 at 421.  But Apple is wrong for many reasons.

***First***, Apple misreads claims 15 and 20.  These claims do ***not*** require that the "higher power consumption" level comprises the reducing activation or processing steps.  Rather, the claims explain how to reduce activation of the sensor by selecting the subset of time when the power consumption is increased.  Claim 15, with notations for convenience, states in its final limitation:

---

[4] When asking this Court for a stay, Apple represented that its IPRs would streamline the case.  Yet, Apple asserts an enormous number of references, ignoring estoppel effects of IPRs.

[A] **_one or more processors_** continuously operating at a lower power consumption level to determine measurement values for one or more physiological parameters of said patient,

[B] **_said processors_** comparing processing characteristics to a predetermined threshold, and when said processing characteristics pass said threshold, said processors transitioning to continuously operating at a higher power consumption level,

[C] **_wherein processors reduce activation_** of an attached sensor.

'703 Patent at 12:59-67.  The comma and the phrase "wherein processors" of [C] modifies [A] and [B].  By limiting the periods of higher power consumption level described by [B], the processors reduce activation of the sensors.  In other words, by limiting the periods of the higher power consumption level, the activation of the sensor is reduced overall.  Contrary to Apple's argument, the claim does not require that the processors reduce activation of the sensor when the processors are operating in a higher power consumption level.

Claim 20 is similar, except clause [C] recites "wherein said processors reduce an amount of processing by a signal processor."  *See* '703 Patent at 13:22-14:3.  Again, clause [C] modifies [A] and [B], and not merely the words "high power consumption level."  A person of skill in the art reading the patents would understand that the wherein clause of Claims 15 and 20 encompass the processor activities as a whole.  Madisetti Decl. ¶ 72.

**_Second_**, even if the claims were somehow to require that the processors reduce activation of an attached sensor (claim 15) or amount of processing (claim 20) when operating at the "higher power consumption level," this would not be inconsistent with the specification.  As described above, the patent describes three different "sampling mechanism" that can be used "in conjunction" with each other to control the power level.  *See supra at* p. 4.  Thus, the device can still be in a high power consumption level even if the control engine reduces either activation of an attached sensor (claim 15) or amount of processing (claim 20).  Madisetti Decl. ¶ 74.  For example, the device could

1   be in a high power consumption level because the processor is processing a large

2   amount of data even if the device is reducing the activation of the sensor.  *See* '703

3   Patent at 5:61-6:4, 11:10-24; Madisetti Decl. ¶ 75.

4        ***Third***, throughout its IPRs Apple never took the position that claims 15 and 20

5   require the "higher power consumption level" to comprise "reducing activation" and/or

6   "reduced amount of processing."   In fact, Apple did not present any independent

7   arguments regarding these limitations in Claims 15 and 20.   Instead, Apple merely

8   incorporated by reference its analysis of Claims 1 and 9.  *See* Ex. 2 at 26-27, 45-46, 62-

9   63, 69; *see also* Ex. 13 at 4-15 (addressing Claims 9 and 20 together).  Apple thus relied

10  on the identical references and identical arguments for Claims 1, 9, 15, and 20.  Having

11  done so, Apple cannot now reasonably argue some fundamental inconsistency exists

12  between Claims 1 and 9, and Claims 15 and 20.

13       Accordingly, a person of ordinary skill would have "reasonable certainty"

14  regarding the scope of the phrase "higher power consumption."  *See* Madisetti Decl.

15  ¶¶ 66-76; *see Nautilus*, 572 U.S. 898, 910 (2014).

16  **C.**    <u>**"first control protocol"**</u>

| Claim Term, Phrase or Clause | Masimo's Construction | Apple's Construction |
|---|---|---|
| when operating according to the first control protocol, calculat[e/ing], by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source<br><br>('776 Patent, Claims 1-16) | not indefinite and no construction needed | indefinite |

25       Apple argues this phrase is indefinite because of a supposed inconsistency

26  between the independent and dependent claims.  Independent Claims 1 and 11 of the

27  '776 Patent recite a "first control protocol" with a light source at a "duty cycle," which

28  the parties have agree cannot be zero percent.  Dependent Claims 6 and 15 require that

the "first control protocol" also include operating a light source in a "data off state." Apple argues those claim are inconsistent because a "first control protocol" cannot include both a duty cycle (which cannot be zero) and a "data off" state.  Ex. 12 at 420.

Apple's argument is based on a misreading of Claims 6 and 15 that both the PTAB and Federal Circuit rejected.  During the IPRs, Apple argued "[t]o satisfy [claims 6 and 15], the 'first duty cycle' corresponds to 'a data off state.'"  Ex. 13 at 2.  The PTAB rejected Apple's argument, holding "claims 6 and 15 do not state that the first duty cycle is a data off state, as Petitioner argues."  Ex. 10 at 20.  The PTAB held: "Rather, claims 6 and 15 use the word 'comprises,' which requires operating according to the first control protocol to encompass operating the first control protocol light source both 'according to a first duty cycle' (claims 1/11) and 'a data off state' (claims 6/15)."  *Id.*  The PTAB explained that "data off and reduced duty cycle states can operate 'in conjunction with' each other, not simultaneously."  *Id.* (citing '776 Patent at 8:33-46, Fig. 8).

The Federal Circuit affirmed, holding "Claims 6 and 15 require that the first control protocol includes a period of 'data off' time as well as a period associated with the first duty cycle during which a light must be on."  *Apple Inc. v. Masimo Corp.*, 2024 WL 139570, at *3 (Fed. Cir. Jan 12, 2024).  Thus, the PTAB and Federal Circuit already rejected the premise of Apple's argument, that a "first control protocol" supposedly cannot include both a duty cycle (which cannot be zero) and a "data off" state.

The PTAB and Federal Circuit rulings were correct.  A POSITA reviewing the Asserted Patents would have understood that a first control protocol can include both a duty cycle and "data off" state working in conjunction with each other.  Madisetti Decl. ¶ 83.  Indeed, the '776 Patent expressly explains how to combine a duty cycle with "data off" to achieve a desired power consumption.  For example, it explains:

> In ***conjunction with*** an intermittently reduced duty cycle or as an independent sampling mechanism, there may be a "data off" time period longer than one drive current cycle where the emitter drivers 480 (FIG. 4) are turned off.

'776 Patent at 7:11-18.  Thus, the '776 Patent explains how a single control protocol can include periods of LED activation pursuant to a duty cycle "in conjunction with" a period of "data off" to further reduce power usage.  A person of ordinary skill would have "reasonable certainty" regarding the scope of the phrase "first control protocol."  *See* Madisetti Decl. ¶ 86; *see Nautilus*, 572 U.S. 898, 910 (2014).

**D.    "continuously operating"**

| Claim Term, Phrase or Clause | Masimo's Construction | Apple's Construction |
|---|---|---|
| wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor<br><br>wherein said continuously operating at said lower power consumption level comprises reducing an amount of processing by a signal processor<br><br>('703 Patent,<br>Claims 1-8, 9-11) | not indefinite and<br>no construction needed | indefinite |

Apple argues these phrases are indefinite because a "lower power consumption" could include periods of "data off" and the '703 Patent does not explain how a monitor can be operated continuously to determine measurements values during data off.  Ex. 12 at 421-422.  Apple also argues these phrases are indefinite because the specification disclaims "sleep mode" and the patent does not provide a basis to distinguish between "sleep mode" and "data off."  Ex. 12 at 422.  These are attacks on the sufficiency of the specification and not on the indefiniteness of the recited terms.  Never does Apple explain which words a POSITA would not understand.  *Id.*

Moreover, Apple is distorting the specification.  The specification explains that a pulse oximeter in "sleep mode" will "power down the processor" and then have a timer that triggers the processor "to periodically sample the oxygen saturation value" to determine if the processor should leave sleep mode.  '703 Patent at 2:7-16.  The

specification analogizes this process to "sleep mode" commonly seen in a notebook computer. *Id.* at 1:63-67.

In contrast, "data off" does not require shutting down the processor of the device. Madisetti Decl. ¶ 91. The patent explains that data off shuts down the "emitter drivers" and possibly the "detector front-end" during the time in which some samples would be taken. *See id.* at 7:8-14. Thus, "data off" is a small period of time when only the sensor of the device is turned off, not the processor. Madisetti Decl. ¶ 91.

Further unlike "sleep mode," the specification explains that "data off" occurs over a small timeframe such that the device can still continuously calculate physiological measurements. *Id.* ¶ 92. The patent explains that the device calculates physiological measurements using data blocks of a range of samples taken many times per second. *See, e.g.*, '703 Patent at 7:40-45 (example device that takes 600 samples in 9.6 seconds). The processor "continues to function during off portions" and simply relies on data blocks that do not include data off portions to calculate physiological measurements. *Id.* at 7:27-39. The patent distinguishes the invention from a device using conventional sleep mode because such a "device is not functioning during sleep mode." *Id.*; '703 Patent at 2:17-28.

The '703 patent examiner also considered these phrases in detail and never suggested he had any problem understanding them. In the notice of allowance, the examiner explained that the prior art did not "teach the reducing activation/ duty cycle/ on-off stages of the energy source(s) during operating the sensor." Ex. 3, Notice of Allowance dated February 1, 2013, at 3. He found the prior art did not teach or suggest the very requirements at issue here: "said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor" or "said continuously operating at said lower power consumption level comprises reducing an amount of processing by a signal processor." *Id.*

Thus, the '703 Patent explains that the device can use "data off" to save power but still operate continuously. *See* Madisetti Decl. ¶ 95. The patent also explains in

detail the differences between "sleep mode" and "data off." *Id.*  A person of ordinary skill would have "reasonable certainty" regarding the scope of these phrases.  *Id.*; *see Nautilus*, 572 U.S. 898, 910 (2014).

**E.**   **"relatively small amount of power" / "relatively large amount of power"**

| Claim Term, Phrase or Clause | Masimo's Construction | Apple's Construction |
| --- | --- | --- |
| relatively small amount of power<br><br>relatively large amount of power<br><br>('776 Patent,  Claim 5) | not indefinite and no construction needed | indefinite |

Apple argues these "relatively" phrases are indefinite "terms of degree" such that a person skilled in the art would not understand the bounds of the claims.  Ex. 12 at 421.  Apple's arguments are wrong and do not comport with Federal Circuit caselaw.

Here, the '776 Patent uses the word "relatively" to compare two different levels and the specification provides examples of "relatively" small and large power consumption.  Figure 10 shows an example system operating at 300 mw, 150 mw, and 75 mw.  In the "large overlap state," the processor "exhibits ***relatively high*** power consumption under these conditions, say 300 mw."  '776 Patent at 9:31-36.  In the "medium overlap state," the processor "consumes half the nominal power, say 150 mw."  *Id.* at 9:36-42.  In the "small overlap state," the processor "consumes a quarter of the nominal power, say 75 mw, as for the large overlap state."  *Id.* at 9:42-50.  Thus, the specification uses "relatively" as a comparative term.  It demonstrates that a "relatively large" power consumption is more than "relatively small" power consumption.  *See* Madisetti Decl. ¶¶ 98-99.

Apple and its experts understood the phrases had that meaning during the IPR proceedings.  For example, Apple and its expert argued a reference operating at a "first selected frequency" consumes "a relatively small amount of power" and the "second selected frequency" consumes "a relatively large amount of power ***as compared to that***

*of the first selected frequency of 1[a].*" Ex. 5 at 35. Apple and its expert also argued:

> Because there would be times where the first control protocol and the second control protocol have different frequencies and different duty cycles resulting in different power consumption, there would be times where the amount of power consumed during operating the light sources at the first control protocol is ***relatively small*** and the amount of power consumed during operating the light sources at the second control protocol is ***relatively large***.

*Id.* at 61-62.

The Federal Circuit has explained that "descriptive words (or terms of degree) in a claim may inherently result in broader claim scope than a claim defined with mathematical precision" but "a claim is not indefinite just because it is broad." *Niazi*, 30 F.4th at 1347. In *Niazi*, the Court held a claim reciting a "resilient" outer catheter and "pliable" inner catheter were definite. The Federal Circuit found that the specification made clear "the degree of stiffness and flexibility for each [catheter] is relative: the outer catheter has a greater degree of stiffness and less flexibility compared to the inner catheter." *Id.* at 1350. This relative language sufficiently informed a person or ordinary skill in the art about the scope of the invention. *Id.*

Thus, one skilled in the art would readily understand a "relatively small amount of power" and "relatively large amount of power" are comparative phrases that mean smaller or larger than each other. Madisetti Decl. ¶ 104. A person of ordinary skill would have "reasonable certainty" regarding the scope of the phrases "relatively small amount of power" and "relatively large amount of power." *Id.*; *see Nautilus*, 572 U.S. 898, 910 (2014). *Niazi*, 30 F.4th at 1350.

## V.  CONCLUSION

For the reasons described herein, Masimo respectfully requests the Court (1) adopt the Federal Circuit's construction of "processing characteristics," (2) decline to construe "reduce/reducing activation of an attached sensor" as Apple proposes, and (3) reject Apple's indefiniteness arguments.

/ / /

1
2
3                                    KNOBBE, MARTENS, OLSON & BEAR, LLP
4
5     Dated: June 3, 2024                    By: */s/Daniel. P. Hughes*
6                                               Joseph R. Re
                                                Stephen C. Jensen
7                                               Sheila N. Swaroop
                                                Brian C. Horne
8                                               Irfan A. Lateef
                                                Benjamin A. Katzenellenbogen
9                                               Brian C. Claassen
                                                Stephen W. Larson
10                                              Mark D. Kachner
                                                Adam B. Powell
11                                              Kendall M. Loebbaka
                                                Daniel P. Hughes

12                                              Attorneys for Plaintiffs
                                                MASIMO CORPORATION and
13                                              CERCACOR LABORATORIES, INC.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 6,158 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 3, 2024                    By: */s/ Daniel P. Hughes*
                                            Joseph R. Re
                                            Stephen C. Jensen
                                            Sheila N. Swaroop
                                            Brian C. Horne
                                            Irfan A. Lateef
                                            Benjamin A. Katzenellenbogen
                                            Brian C. Claassen
                                            Stephen W. Larson
                                            Mark D. Kachner
                                            Adam B. Powell
                                            Kendall M. Loebbaka
                                            Daniel P. Hughes

                                            Attorneys for Plaintiffs
                                            MASIMO CORPORATION and
                                            CERCACOR LABORATORIES, INC.