1  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN
     294831
3  thomas.sprankling@wilmerhale.com
   WILMER CUTLER PICKERING
4    HALE AND DORR LLP
   2600 El Camino Real, Suite 400
5  Palo Alto, CA 94306
   Tel.: 650.858.6000 / Fax: 650.858.6100
6
   JOSHUA H. LERNER, SBN 220755
7    joshua.lerner@wilmerhale.com
   WILMER CUTLER PICKERING
8    HALE AND DORR LLP
   One Front Street, Suite 3500
9  San Francisco, CA 94111
   Tel.: 628.235.1000 / Fax: 628.235.1001
10
   AMY K. WIGMORE, *pro hac vice*
11 amy.wigmore@wilmerhale.com
   WILMER CUTLER PICKERING
12   HALE AND DORR LLP
   1875 Pennsylvania Ave NW
13 Washington, DC 20006
   Tel.: 202.663.6000 / Fax: 202.663.6363
14
   [Counsel appearances continue on next page]
15
   *Attorneys for Defendant Apple Inc.*
16
              **UNITED STATES DISTRICT COURT**
17          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                     **SOUTHERN DIVISION**
18

| | |
|---|---|
| 19 MASIMO CORPORATION, a Delaware corporation; and 20 CERCACOR LABORATORIES, INC., a Delaware corporation, 21 Plaintiffs, 22 v. 23 APPLE INC., a California corporation, 24 Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) **JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION TO COMPEL SUPPLEMENTAL INFRINGEMENT CONTENTIONS** **[PROPOSED] ORDER LODGED HEREWITH** Judge: Magistrate Judge John D. Early Date/Time: 6/27/24 at 10:00AM Discovery Cutoff: 7/15/24 Final Pre-Trial Conf.: 10/28/24 Trial: 11/5/24 |

1
2
3
4

SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

5
6
7
8

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

9
10
11
12

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

13
14
15

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

16
17

*Attorneys for Defendant Apple Inc.*

18
19
20
21
22
23
24
25
26
27
28

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
Daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Mark D. Kachner (Bar No. 234,192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

*Attorneys for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      Introductory Statements.................................................................................. 1

    A.      Apple's Introductory Statement ......................................................... 1

    B.      Masimo's Introductory Statement...................................................... 2

II.     The Infringement Contentions At Issue ........................................................ 3

III.    Parties' Positions ........................................................................................... 4

    A.      Apple's Contentions and Points of Authority ................................... 4

        1.      Plaintiffs Have Not Provided Apple Notice of Their Theories For How Any Claim Is Allegedly Infringed................................. 4

        2.      Plaintiffs Have Not Articulated Infringement Theories for All  Accused Products................................................................. 7

        3.      Plaintiffs Have Not Articulated Any Theory of Representativeness.................................................................... 9

        4.      Plaintiffs Have Sufficient Technical Documents To Supplement Their Contentions. ................................................ 9

        5.      Apple's Proposed Resolution. ....................................................... 11

    B.      Masimo's Contentions and Points of Authority............................ 12

        1.      Factual Background ........................................................ 12

        2.      Apple's Motion Is Moot .................................................... 13

        3.      Masimo's Infringement Contentions Are Sufficient ..................... 14

        4.      Masimo's May 2024 Supplement Addressed Apple's Stated Concerns .................................................................. 17

        5.      The Deadline To Serve Final Infringement Contentions Is Weeks Away ................................................................... 19

        6.      Apple Is Still Producing Relevant Discovery............................... 20

        7.      Apple's Other Arguments Lack Merit......................................... 21

        8.      Conclusion ..................................................................... 22

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple") as movant, and Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (together, "Plaintiffs" or "Masimo") as respondents, respectfully submit the following Joint Stipulation regarding Apple's Motion to Compel Supplemental Infringement Contentions. Apple asserts the parties met and conferred on May 22, 2024, but were unable to resolve the disputes presented herein. Masimo disagrees for the reasons set forth in its portion of the joint stipulation. Copies of the Parties' meet-and-confer correspondence are attached hereto as Apple Exhibits 1-5 and Masimo Exs. C-F, H, and K.[1]

# I.     INTRODUCTORY STATEMENTS

## A.     Apple's Introductory Statement

Just two months ago, Plaintiffs represented that their remaining patent infringement claims (directed to the '703 and '776 patents) could be litigated under a very expedited schedule and tried in November 2024, together with the trade secret claims previously tried to a jury last year, "because most discovery is complete." Dkt. 1943-1 at 2. But since making that representation, after which the Court largely adopted Plaintiffs' proposed expedited schedule, Plaintiffs served infringement contentions that added nine Apple Watch models (including three that had already been released before the litigation stay) and asserted nearly 40 patent claims. Despite their prior representations that the case could be tried quickly, Plaintiffs have failed to identify a coherent theory of infringement for any asserted claim. Instead, Plaintiffs' contentions largely parrot claim language and generically reference (or cite documents discussing) an assortment of different Apple Watch features—without articulating how those features, either alone or in combination with other features, supposedly meet the requirements of even a single asserted claim.

---

[1] "Apple Exhibit" and "Apple Ex." refer to the exhibits attached to the Declaration of James Lyons, submitted herewith. "Masimo Exhibit" and "Masimo Ex." Refer to the exhibits attached to the Declaration of Daniel P. Hughes, submitted herewith.

Wilmer Cutler
Pickering Hale
and Dorr LLP

In short, Plaintiffs' theory of infringement remains a mystery, just five months before the scheduled trial date. This lack of disclosure is impeding Apple's ability to fully defend itself; Apple cannot disclose its *non*-infringement positions without first knowing what Plaintiffs allege infringes. It also has hindered Apple's ability to develop its invalidity positions, including to identify prior art covering the full scope of the claims, given that claim construction has not yet occurred and Plaintiffs' interpretation is unclear in view of their still-undisclosed infringement theories. Accordingly, to address that continuing and substantial prejudice, Apple respectfully requests an order compelling Plaintiffs to supplement their infringement contentions to provide the specific details of their infringement theories for each accused product.

**B.     Masimo's Introductory Statement**

Apple's Motion is moot because Masimo supplemented its contentions on May 31—just like it promised to do before Apple served the joint stipulation on May 28. Masimo originally provided its infringement contentions on April 15—one week ***before*** its deadline. Masimo identified specific core technical documents that Apple had failed to produce and agreed to supplement after Apple produced the missing documents. When Apple claimed to "substantially complete" its production on May 22, Masimo agreed to supplement by May 31—a mere nine days later.

Apple ignored Masimo's offer, served this joint stipulation on May 28, and then refused to withdraw its Motion after Masimo supplemented.[2] Apple argues its Motion is not moot because Masimo's May 2024 supplemental contentions are also deficient. But the parties have not even met and conferred—much less briefed—the substantial additions in Masimo's May 2024 Infringement Contentions. Thus, Apple's motion is moot regardless of the merits of Apple's arguments about the May 2024 contentions.

---

[2] Apple claims it asked Masimo to supplement "by May 25 (***or another reasonable date proposed by Plaintiffs***)." *Infra* § III.A.5 (emphasis added). Apple never suggested it would consider a "reasonable date" proposed by Masimo. Apple ignored Masimo's reasonable date and rushed to serve its joint stipulation, demonstrating it had more interest in filing this Motion than obtaining the information that it claims to seek.

Apple is also wrong on the merits. Both Masimo's April 2024 and May 2024 contentions were far more detailed than required. The April 2024 contentions were over 700 pages long and described in detail how the accused Apple Watches infringe the asserted claims. Based on the documents that Apple finally produced in late May 2024, Masimo supplemented with additional tables and charts identifying and detailing how the hardware, firmware, and software for each of the Apple Watch Series 0-9, Ultra, Ultra 2, and SE (1st and 2nd Generations) infringes the asserted claims in the '703 and '776 patents. Masimo also specifically addressed the criticisms raised by Apple and provided extensive citations to the documents that Apple recently produced.

Accordingly, Masimo's infringement contentions are more than sufficient at this phase. That is especially true because Apple did not "substantially complete" its production of core technical documents until May 22 and still has not fully completed that production.[3] Moreover, the scheduling order here includes separate deadlines for "preliminary" and "final" infringement contentions, thereby contemplating updates throughout discovery. The Court should deny Apple's Motion.

## II.    THE INFRINGEMENT CONTENTIONS AT ISSUE

**Apple's Statement**: Given the volume of the disputed contentions, Plaintiffs' Infringement Contentions are attached hereto as Apple Exhibit 6.

**Masimo's Statement**: Masimo's *Initial* Infringement Contentions are attached as Apple Exhibit 6. As Masimo promised before Apple served its portion of this joint stipulation on May 28, Masimo supplemented its contentions on May 31. Masimo's *Supplemental* Infringement Contentions are attached as Masimo Ex. A.

---

[3] Apple is still producing technical documents on a rolling basis. For example, Apple produced additional technical documents on May 31, 2024. Masimo Ex. G. Masimo obviously did not have a chance to consider or include those documents in its May 2024 contentions served the same day.

## III.    PARTIES' POSITIONS

### A.    Apple's Contentions and Points of Authority

Plaintiffs assert two patents against Apple, U.S. Patent Nos. 8,457,703 (Apple Ex. 7) and 10,433,776 (Apple Ex. 8).  The patents claim patient monitors and methods of patient monitoring in which a device switches from a lower power consumption level to a higher power consumption level based on a particular trigger.

On March 22, 2024, Plaintiffs sought an expedited schedule for their patent infringement claims, representing that they were prepared to provide preliminary infringement contentions on April 15 (Dkt. 1943 at 1) and that "[p]reparing for trial here on three[4] patents will take far less time, particularly because of efficiencies from the IPR process and **because most discovery is complete**."  Dkt. 1943-1 at 2.

On April 15, Plaintiffs served their infringement contentions, which dramatically expanded the scope of accused products to include *every* Apple Watch:  Series 0, 1, 2, 3, 4, 5, 6, 7, 8, 9, Ultra, Ultra 2, SE 1st generation, and SE 2nd generation (the "Accused Products")—including Apple Watch versions (Series 0, 1, and 2) that were released before the stay, yet were not previously accused.  Apple Ex. 6 at 2.  Plaintiffs' contentions cite documents relating to numerous separate heart rate features in Apple Watch, including the background heart rate features, workout heart rate feature, abnormally high and abnormally low heart rate features, irregular heart rhythm feature and others.  Although the inclusion and implementation of these various heart rate features differs across the different Accused Products, Plaintiffs' contentions failed to provide separate contentions for each Accused Product.

### 1.    Plaintiffs Have Not Provided Apple Notice of Their Theories For How Any Claim Is Allegedly Infringed.

Although Plaintiffs indiscriminately cite various documents related to different Apple Watch heart rate-related features, Plaintiffs' contentions fail to provide Apple

---

[4] Since this filing, Plaintiffs have withdrawn their claims with respect to U.S. Patent No. 10,558,554.

notice of *how* Plaintiffs contend each asserted claim is purportedly infringed by any particular feature or specific combinations of features.  This is plainly insufficient under Patent Local Rule 3-1.  *See Tech. Prop.*, 114 F. Supp. 3d at 848 (explaining that "the accused instrumentalities" should be "charted *through an entire claim*" (emphasis added)).

The asserted claims all relate generally to changes between two different operating modes based on a particular "trigger" or exceeded "threshold" that requires switching from one mode to another.  For example, '776 patent claim 1 requires a patient monitor operating according to a "first control protocol," and that, in response to a claimed "trigger signal," the patient monitor transitions to operating according to a "second control protocol" different from the "first control protocol."  Similarly, '703 patent claim 1 requires "operating a patient monitor at a lower power consumption level," "comparing processing characteristics to a predetermined threshold," and when the processing characteristics cross the threshold, transitioning to "operating [the] patient monitor at a higher power consumption level."  Although each asserted claim requires two separate operating modes and a trigger for transitioning from one mode to the other, Plaintiffs' contentions merely point to various documents for each limitation separately, without explaining for any particular feature, for example, what constitutes the first operating mode, what constitutes the second operating mode, and what the triggers or exceeded thresholds are that cause the device to switch from one operating mode to another.

**'703 patent.**  While Plaintiffs cite documents that they allege disclose each of these limitations separately, they never explain which purported lower power consumption levels is transitioned to which purported higher power consumption levels, based on which purported thresholds.  Instead, Apple is left to guess which of the many different combinations of purported power consumption levels and triggers Plaintiffs are accusing.  For example, in charting limitation [1E], Plaintiffs assert that "Apple Watch transitions to continuously operating at a higher power consumption by increasing its

sampling rate and using green LEDs, such as changing from 8 Hz infrared LEDs to 64 and/or 256 Hz green LEDs." Apple Ex. 6 at Exhibit 1 ('703 patent chart), p. 171. Plaintiffs then assert that "discordant BGHRs, irregular pulse rhythms, and heart rate levels exceeding predetermined thresholds **may** result in the Apple Watch using green LEDs and/or a high sampling rate." *Id.* Plaintiffs do not, however, describe any transition from a specific lower power level to a specific higher power level based on a specific threshold. It is unclear therefore, if, for example, Plaintiffs are alleging that a transition occurs from "8 Hz infrared LEDs" to "256 Hz green LEDs" based on "irregular pulse rhythms," or whether, if such a transition does occur, Plaintiffs are alleging that it is infringing.

   ***'776 patent.*** While Plaintiffs cite a number of documents that they allege disclose a "first control protocol," a number of documents that they allege disclose a "trigger signal," and a number of documents that they allege disclose "a second control protocol," they never identify which trigger signals and second control protocols correspond with which first control protocols in the manner that is required by the claims. Instead, the elements they point to are used in connection with **different** heart rate features. For example, in charting limitation [1D], Plaintiffs identify two purported "first protocol[s]" and two purported "second protocol[s]." Apple Ex. 6 at Exhibit 2 ('776 patent chart), p. 191. However, rather than identify specific corresponding first and second protocols in the Accused Products, Plaintiffs broadly define the purported protocols in a manner that is not mutually exclusive, such that a given protocol could simultaneously be considered a "first protocol" or a "second protocol," even though the claims require the two protocols to be different. *Id.* Moreover, while Plaintiffs assert that six different values may purportedly be compared with predetermined thresholds to cause a purported change in the protocols (discordant BGHRs, irregular pulse rhythms, heart rate levels, confidence levels, photodiode mean Gn DCs, signal to noise ratios), they do not explain what those thresholds are and how the comparison actually causes a transition between two identified control protocols. *Id.*

In short, Apple is left to speculate as to which of the different heart features in the different Apple Watch models and in what combinations Plaintiffs allege infringe.

Because Plaintiffs' contentions fail to provide notice of Plaintiffs' theories for any particular Apple Watch heart rate feature, Apple respectfully requests Plaintiffs be compelled to supplement their contentions to provide adequate disclosures, including to: (1) identify each specific heart rate feature or specific combination of features that is accused of infringing each asserted claim of the '703 and '776 patents, (2) for each identified feature or combination of features alleged to infringe the '703 patent, identify for each specific accused "lower power consumption level," the corresponding "higher power consumption level," and the specific "processing characteristic(s)" and "predetermined threshold" triggering a transition between those two power consumption levels, and (3) for each identified feature alleged to infringe the '776 patent, identify a specific "first control protocol," the "first duty cycle" that you allege corresponds to that first control protocol, a specific "second control protocol" and corresponding "second duty cycle," and the specific "trigger signal" causing a transition between those two particular control protocols.

### 2.     Plaintiffs Have Not Articulated Infringement Theories for All Accused Products.

Plaintiffs have also failed to provide Apple notice of their infringement theories for each Accused Product. Patent Local Rule 3-1(c) requires that a plaintiff provide charts "identifying specifically where and how each limitation of each asserted claim is found within *each* Accused Instrumentality" (emphasis added). To meet that requirement, a party "must generally include a separate chart for *each* combination of asserted claim and accused product." *Cap Co. v. McAfee, Inc.*, No. 14-CV-05068-JD, 2015 WL 4734951, at *4 (N.D. Cal. Aug. 10, 2015) (emphasis added); *see also Tech. Properties Ltd. LLC v. Samsung Elecs. Co.*, 114 F. Supp. 3d 842, 848 (N.D. Cal. 2015) (explaining that "the whole point of the Local Rule is to give notice to accused infringers of where within their instrumentalities they allegedly infringe" so contentions are

insufficient where they "do not address any product individually on a limitation-by-limitation basis, and none of the accused instrumentalities are charted through an entire claim or against each limitation of each asserted claim"). Plaintiff have not done so.

Plaintiffs have accused fourteen different Apple Watch models. The different Accused Products each contain different hardware components and operate on different software. Yet rather than separately charting each Accused Product, Plaintiffs' infringement contentions mix and match features from different products. This "undifferentiated treatment" of the Accused Products "throughout [Plaintiffs'] infringement contentions is not sufficiently clear." *Tech. Properties*, 114 F. Supp. 3d at 849 (N.D. Cal. 2015) (ordering plaintiffs to amend infringement contentions to "at a minimum, provid[e] a separate claim chart for each accused microprocessor"). Plaintiffs' failure to provide separate charts for each Accused Product is highly prejudicial to Apple, as there are key differences among the products that may impact Plaintiffs' infringement theories.

For example, all asserted claims include limitations relating to optical hardware (requiring, *e.g.*, "light sources" and "optical sensor[s]"), but Apple Watch has used three different optical hardware modules across the fourteen different Accused Products. Series 0 used one module; a new module was introduced in Series 4; and a third module was introduced in Series 6. Plaintiffs' charts, however, cite documents relating to all these different hardware modules, without distinguishing between which Accused Products they appear.

Similarly, the software used by the Accused Products has meaningful differences. For example, while Plaintiffs' contentions repeatedly excerpt documents relating to the high and low heart rate notification feature (Apple Ex. 6 at 5, 8), those features are only available on "Apple Watch Series 1 or later," (*id.* at 8). Apple Watch Series 0 cannot provide high and low heart rate notifications, and Plaintiffs have failed to address this difference or explain how it does or does not affect their infringement allegations.

Plaintiffs should be compelled to provide "a separate chart for ***each*** combination of asserted claim and accused product." *Cap Co*, 2015 WL 4734951, at *4 (emphasis added).

### 3.   Plaintiffs Have Not Articulated Any Theory of Representativeness.

Plaintiffs' contentions do not purport to rely on any particular Accused Product as representative of any other Accused Product.  Nor could they, given the differences between the Accused Products, as discussed above.  Nevertheless, Plaintiffs have suggested that their contentions are sufficient because one or more of the Accused Products is "representative" of others, or perhaps that certain hardware or software components are representative of other hardware or software components.  Regardless of which of these undisclosed theories Plaintiffs now seek to rely on, Plaintiffs have failed to include any support for any claim of representativeness in their contentions.

"[R]epresentative products may only be charted 'when supported by adequate analysis showing that the accused products share the same critical characteristics.'" *Oyster Optics, LLC v. Ciena Corp.*, No. 20-CV-02354-JSW(LB), 2022 WL 561931 at *3 (N.D. Cal. Feb. 24, 2022) (citations omitted).  "[I]n order to rely on a claim that one accused product represents another for purposes of Rule 3-1(c), a patentee must do more than state as much.  A patentee must state how."  *Id.* (quotations omitted).  If Plaintiffs intend or seek to rely on charts of "representative products," they must provide "adequate analysis showing that the accused products share the same critical characteristics" as the representative product.  *Id.*   In any event, any attempt to rely on a single Apple Watch model as representative would necessarily fail given the differences between the Accused Products, including those described above.

### 4.   Plaintiffs Have Sufficient Technical Documents To Supplement Their Contentions.

Attempting to justify the deficiencies in their contentions, Plaintiffs have tried to shift the burden to Apple by suggesting Plaintiffs lacked "core technical documents" necessary to provide adequate contentions.  But Plaintiffs could have, and should have,

provided adequate disclosures of their infringement theories based on information available prior to the contention deadline.

Plaintiffs' original initial infringement contentions, served in July 2020, only accused the Apple Watch Series 3 and later of infringing the asserted patents. Apple produced hundreds of thousands of documents and extensive volumes of source code related to Apple Watch Series 0 through 7, including the source code for Apple Watch heart rate features, before the close of fact discovery as to the trade secret claims in 2022. These documents and source code[5] were available to Plaintiffs to review, but Plaintiffs' counsel did not even seek to review any of that source code until May 20, 2024. Apple Ex. 9.

For the remaining Accused Products, it was not until Plaintiffs served their contentions on April 15, 2024, that they expressly asserted—for the first time—that Apple Watch Series 0, 1, 2, 6, 7, 8, 9, SE, SE (2nd gen), Ultra, and Ultra 2 infringe the asserted claims. Plaintiffs' infringement contentions also included an "Appendix A" that sought additional categories of documents. Apple Ex. 6 at 31-33. Plaintiffs further served 45 new requests for production (Apple Exs. 10, 11, 12) and asked Apple to supplement responses to approximately 50 previously served Requests for Production. While thousands of relevant core technical documents had already been produced that are relevant to the operation of Apple Watch heart rate features and are sufficient on their own for Plaintiff to provide adequate contentions, after Plaintiffs' drastically expanded the number of accused products, Apple began to diligently collect and produce any remaining potentially relevant source code and documents for these newly accused products, including the documents specifically sought by Plaintiffs in "Appendix A" to their April 15 infringement contentions and related requests for production. By May 22,

---

[5] Apple identified that it "**_has made_** and will make source code available for inspection" pursuant to P.L.R. 3-4(a) on May 6, 2024 in its invalidity contentions. Apple Ex. 13 at 425. In addition, Apple identified specific source code files relevant to this dispute, including source code related to late-accused Watch models 8, 9, Ultra and Ultra 2, in supplemental responses to Interrogatory Nos. 9 and 33 on May 10, 2024. Apple Ex. 14 at 122-123; Ex. 15 at 53.

Apple had completed production of the source code and core technical documents for the newly identified products that Apple could locate after a reasonable search, including as to the documents requested by Plaintiffs in "Appendix A." Nevertheless, while simultaneously arguing that these newly accused products are sufficiently similar to the previously accused products such that they do not need to include separate claim charts for each Accused Product, Plaintiffs have not provided adequate disclosures for any Accused Product. Apple respectfully requests that they be ordered to do so.

**5. Apple's Proposed Resolution.**

During the Parties' meet and confer, Apple proposed that by May 25 (or another reasonable date proposed by Plaintiffs): (1) Plaintiffs provide separate contentions laying out their infringement theories for each of the fourteen Accused Products, or identify a purportedly representative product and explain, with supporting evidence, how that product is representative of the other Accused Products with regard to each of the accused features; and (2) for each infringement theory, Plaintiffs explain how the claim as a whole is purportedly infringed, including at a minimum for each infringement theory for the '703 patent identifying a specific "lower power consumption level," the corresponding "higher power consumption level," and the specific "processing characteristic(s)" that are compared to a "predetermined threshold" purportedly causing a change between those two particular power consumption levels, and for each infringement theory for the '776 patent, identifying a specific "first control protocol," the "first duty cycle" that Plaintiffs allege corresponds to that first control protocol, a specific "second control protocol" and corresponding "second duty cycle," and the specific "processing characteristic(s)" that are compared to a "predetermined threshold" purportedly causing a change between those two particular control protocols.

**B.      Masimo's Contentions and Points of Authority**

**1.      Factual Background**

At the onset of this case years ago, the parties agreed—and the Court ordered—that Apple would produce core technical documents ***before*** Masimo provided its patent infringement contentions.  Dkt. 33 at 26; Dkt. 37.  Judge Selna and this Court then repeatedly rejected Apple's refusal to produce core technical documents.  Dkt. 43; Dkt. 54 at 8; Dkt. 59 at 1; Masimo Ex. B at 9:19-12:9.  In July 2020, Judge Selna ordered Apple to produce core technical documents "now" and "in advance of Masimo having to identify which claims it wants to proceed on."  Masimo Ex. B at 12:10-19.  Judge Selna then extended Masimo's deadline for providing its infringement contentions until "forty-two (42) days after Apple ***completes*** its production of core technical documents."  *Id.* (emphasis added).[6]  He also warned:

> This issue has been litigated multiple times, and Apple has not prevailed. ***Now is the time for Apple to act: The Court expects prompt and full compliance.***  Any further recalcitrance on Apple's part will likely draw an application for contempt or sanctions under 28 U.S.C. § 1927 or an invitation from the Court to seek such relief.

Dkt. 92 (emphasis added).  Before Apple completed its production of core technical documents, the Court stayed the patent claims pending *inter partes* review in October 2020.  Dkt. 222.

The Court lifted the patent stay in April 2024.  Dkt. 1944 at 1, 3.  On April 15, even before receiving the schedule or Apple's production of core technical documents, Masimo served Initial Infringement Contentions.  Apple Ex. 6.  Masimo's April 2024 Initial Infringement Contentions included over 700 pages of claim charts illustrating how the fourteen Accused Products infringed the '703 and '776 patents.  *See id.*  Masimo

---

[6] As of the July 27, 2020, deadline to serve preliminary infringement contentions, Judge Selna had not yet extended Masimo's deadline.  Masimo thus served preliminary contentions based on public information.  Two days later, Judge Selna retroactively extended the deadline.  *See* Dkt. 92.

1  also outlined numerous deficiencies in Apple's production of core technical documents.
2  *Id*. at 1, 31-33; *see also* Masimo Ex. C at 1.

3  On April 30, Apple agreed to produce the missing core technical documents on a
4  "rolling basis" and informed Masimo that it would provide Apple Watch source code
5  for inspection "shortly."  Masimo Ex. D at 1.  Apple did not commit to dates by which
6  it would complete its production or make its source code available.  *See id.*  Masimo
7  responded that it would supplement its contentions "within 30 days of Apple notifying
8  Masimo that it produced the core technical documents."  Apple Ex. 2 at 1-2.

9  On May 6, Apple **began** producing the missing core technical documents.
10 Masimo Ex. E at 1.  On May 21, Apple claimed its production would be "substantially
11 complete" by May 22.  Apple Ex. 5 at 7-8.  On May 22, Apple produced over 10,000
12 pages of technical documents and acknowledged its production was still not complete.
13 Masimo Ex. F at 1.  Yet Apple still told Masimo it would move to compel if Masimo
14 had not supplemented by noon on May 24—just 36 hours after Apple's production.  *Id.*
15 at 4.  Masimo explained that it could not review so many documents and supplement in
16 so little time.  *Id.* at 1.  Masimo agreed to supplement by May 31—a mere nine days
17 after Apple had "substantially completed" its production.  *Id.* at 1-2.

18 Apple ignored Masimo's offer and served its portion of this Joint Stipulation on
19 May 28.  Masimo Ex. H at 3.  Masimo supplemented on May 31 as promised and asked
20 Apple to withdraw its Motion.  *Id.* at 2.  Apple refused.  *Id.*

21 ## 2.    Apple's Motion Is Moot

22 Masimo supplemented its contentions on May 31—just as it promised on May 24
23 before Apple served the joint stipulation on May 28.  Masimo Ex. A.  As explained in
24 detail below, the May 2024 contentions include significant additional information from
25 the core technical documents that Apple produced in late May 2024.  *Infra* § III.B.3.
26 Moreover, the additional detailed information addresses Apple's stated concerns in this
27 Motion, including by adding additional charts and tables directed towards each specific
28 version of hardware and software at issue.  *Infra* § III.B.4.

Thus, Apple's motion is moot because it addresses infringement contentions that are no longer at issue.  *See* Masimo Ex. I (Order at 2, *Haddad v. United States*, No. 1:17-cv-00307-RTH (Fed. Cl. June 2, 2021), Dkt. 131) ("defendants filed a motion to compel plaintiff to serve supplemental infringement contentions. . . . As plaintiff agrees to serve infringement contentions, defendants' Mot. to Compel [citation] is DENIED as moot"); *Data Treasury Corp. v. Wells Fargo & Co.*, 2009 WL 10677805, at \*6 (E.D. Tex. May 13, 2009) ("the Court finds that Wells Fargo's Motion to Strike is rendered moot as the infringement contentions to which the motion pertains are no longer live").  Moreover, Apple knew when it served its portion of joint stipulation that Masimo had committed to supplementing just 3 days later.  *See* Masimo Ex. F at 1-2.

Apple now argues its Motion was not moot because Masimo's May 2024 contentions were supposedly deficient.  Masimo Ex. H at 1.  But the parties have not met and conferred on the substantial additions that Masimo provided in its May 2024 Infringement Contentions.  Nor could Apple's May 28 joint stipulation address Masimo's May 31 supplement.  Thus, regardless of the merits of Apple's arguments, Apple's motion is moot because it is directed to an old version of Masimo's infringement contentions.  *See Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*, 2014 WL 7185357, at \*1 (C.D. Cal. Dec. 15, 2014) (denying motion as moot in view of amended infringement contentions and instructing the parties to meet and confer instead of prematurely filing a motion).  Moreover, any attempt by Apple to address Masimo's May 31 contentions in a supplemental memorandum would be improper because Masimo would not have a fair chance to respond.

**3.     Masimo's Infringement Contentions Are Sufficient**

Apple's Motion also fails on the merits.  N.D. Cal. Local Patent Rule 3-1 & 3-1(c) require:

> Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:
>
> . . .

(c)     A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

L.P.R. 3-1.  "'[A]ll courts agree that the degree of specificity under [Rule 3-1] must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement,' and to 'raise a reasonable inference that all accused products infringe.'"  *Word to Info, Inc. v. Google Inc.*, 2016 WL 3648605, at *4 (N.D. Cal. July 8, 2016); s*ee also Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co. Ltd.*, 2006 WL 5097360, at *2 (C.D. Cal. June 5, 2006) (denying sanctions, stating "Plaintiff's initial PICs clearly identify the claims at issue as well as the offending products, by name and product number.  Plaintiff also provides a chart matching up the accused devices with each claim.") (citation omitted).

In April 2024, Masimo provided detailed 700-plus page contentions with claim charts that thoroughly described how the different Apple Watches infringe each of the asserted claims.  Masimo explained how the hardware of the all the accused Apple Watches meets each hardware claim limitation.  *See, e.g.*, Apple Ex. 6, Ex. 1 at 1. Masimo cited the relevant final engineering specifications for every model of watch for which Apple had produced such specifications.  *See, e.g.*, *id.*, Ex. 1 at 14.  Masimo also explained how the software of the Apple Watch met each software limitation (*see, e.g.*, *id.*, Ex. 1 at 1) and cited numerous documents regarding the Apple Watch pulse rate software (*see, e.g.*, *id.*, Ex. 1 at 66-93).  Masimo identified how the Apple Watch pulse rate software changes "sampling rates," and explained how changing the "sampling rate" infringes the claims.  *See, e.g.*, *id.*, Ex. 1 at 171-249.

Masimo provided this information despite Apple's failure to produce its final engineering documents that describe the software of the Apple Watch.  Masimo then further identified a limited universe of missing core technical documents that would allow Masimo to provide further information to Apple.  Apple Ex. 6 at 31-33.  Thus, the

April 2024 contentions were sufficient to put Apple on notice of Masimo's theories and identified the information that Masimo needed from Apple to further explain its contentions. Apple has not shown otherwise. To the contrary, Apple's ability to articulate specific critiques in its Motion demonstrates that it fully understood Masimo's April 2024 contentions and simply disagrees on the merits. *See supra* § III.A.1.

Masimo's May 2024 supplemental contentions provided even more detail. Masimo identified the hardware "generation" for each version of the Apple Watch. Masimo Ex. A, Ex. 1 at 1-2; *id.*, Ex. 2 at 1.[7] Masimo then explained how each generation of the Apple Watch infringes each hardware limitation. *See, e.g.*, *id.*, Ex. 1 at 34-37 (Generation One (Apple Watch Series 0-3)), 38-41 (Generation Two (Apple Watch Series 4-5, SE (1st and 2nd generation)), 42-47 (Generation Three (Apple Watch Series 6-9, Ultra, Ultra 2)); *id.*, Ex. 2 at 389-392 (Generation One), 392-396 (Generation Two), 396-401 (Generation Three).

Masimo provided an overview, with supporting cites, that explain how the relevant portions of the Apple Watch pulse rate software operates. Specifically, Masimo explained the operation of the Apple Watch real time processor firmware (RTP FW) and the Apple Watch optical power calibration and automatic gain control software (OPC AGC). *Id.*, Ex. 1 at 5-29; *id.*, Ex. 2 at 1. For each version of these portions of software, Masimo then provided tables that identify: (1) how the relevant portion of the software operates; (2) the Apple Watch models on which each version of the Apple Watch this software operates; and (3) exemplary supporting evidence. *Id.*, Ex. 1 at 5-29; *id.*, Ex. 2 at 1. Masimo then included claim charts explaining for each limitation how the disclosures of the tables correspond to the relevant limitations. *Id.*, Exs. 1-2. Masimo's claim charts also identified additional evidence of Apple's infringement. *Id.* Throughout the May 2024 contentions, Masimo cited extensively to the core technical

---

[7] Apple acknowledges the hardware for each generation is the same. *Supra* § III.A.2 (acknowledging Apple Watches have only three different optical hardware modules).

1  documents that Apple produced in May 2024.  *See, e.g.*, *id.*, Ex. 1 at 6-8, 20-29, 100,

2  150-154 (citing bates stamped documents following APL-MAS_03104818).

3      Accordingly, Masimo provided fulsome contentions based on the technical

4  documents that Apple had produced as of April 2024 and supplemented those

5  contentions in May 2024 based on more recent productions of technical documents.

6  Masimo's contentions are more than sufficient to put Apple on notice of Masimo's

7  theories.

8      **4.      Masimo's May 2024 Supplement Addressed Apple's Stated Concerns**

9      Masimo's May 2024 supplement also specifically provided the information that

10  Apple now seeks in its motion to compel.  Apple's "Proposed Resolution" seeks two

11  supplements.  *Supra* § III.A.5.  Masimo addresses each in turn below.

12      In request "(1)", Apple seeks "separate contentions laying out [Masimo's]

13  infringement theories for each of the fourteen Accused Products" or the identification of

14  a "representative product" along with an explanation "how that produce is representative

15  of the other Accused Products with regard to each of the accused features."  *Supra*

16  § III.A.5.   Masimo's May 2024 contentions provided this information.   Masimo

17  explained how each generation of Apple Watch infringes each hardware limitation.

18  Masimo Ex. A, Ex. 1 at 1-2; *id.*, Ex. 2 at 1; *see also, e.g.*, *id.*, Ex. 1 at 34-37, 38-41, 42-

19  47; *id.*, Ex. 2 at 389-392, 392-396, 396-401.  Masimo also identified the infringing

20  software versions and identified the Apple Watch series on which each version of the

21  software operates.  Masimo Ex. A, Ex. 1 at 4-29; *id.*, Ex. 2 at 1.

22      In request "(2)", Apple seeks an explanation of how specific claim limitations are

23  satisfied.  *Supra* § III.A.5.  First, Apple seeks an explanation of how each Apple Watch

24  transitions between various power levels.  Masimo's May 2024 contentions provide this

25  information.  *Supra* § III.A.1.  In particular, they explain how, in each Accused Product

26  and software version, the relevant software transitions between "sampling rates" or

27  frequencies.  *See, e.g.*, Masimo Ex. A, Ex. 1 at 4-29.  The contentions further explain

28  how (1) a "lower power consumption level" corresponds to the pulse rate algorithm

Wilmer Cutler
Pickering Hale
and Dorr LLP

operating at a lower "sampling rate" and (2) a "higher power consumption level" corresponds to the pulse rate algorithm operating at a higher "sampling rate." *See, e.g.*, *id.*, Ex. 1 at 66-149, 229-313.  Masimo further explained why the different "sampling rates" correspond to lower and higher power consumption levels. *See, e.g. id.*, Ex. 1 at 4 ("An LED that turns on and off a higher number of times within one time period uses more power than an LED that turns on and off a lower number of times within the same time period.  Thus, the Apple Watch transitions between lower power consumption levels and higher power consumption levels when adjusting sampling frequency."); *see also, e.g.*, *id.*, Ex. 1 at 229.

Second, Apple's Motion seeks information on how the predetermined thresholds cause a change between power levels. *Supra* § III.A.1.  The May 2024 supplement explains how, in each Accused Product, the "processing characteristic(s)" are compared to a "predetermined threshold" to cause a change between power levels.  Masimo Ex. A, Ex. 1 at 4, 17.  For example, Masimo provided a table that, for each version of the two portions of software at issue, identified the triggers that cause the algorithm to change "sampling rates," the thresholds for those triggers, and how the "sampling rate" changes. *See, e.g.*, *id.*, Ex. 1 at 9-16, 21-29.  Masimo's claim charts explain how those triggers infringe and also identify additional evidence. *See, e.g.*, *id.*, Ex. 1 at 149-228

Third, Apple's Motion seeks information on the "first control protocol," the "first duty cycle," "second control protocol," "second duty cycle," and "trigger signal" recited by the claims. *Supra* § III.A.1.  The May 2024 supplement identifies in each Accused Product the "first control protocol," "first duty cycle," "second control protocol," and "second duty cycle."  Masimo Ex. A, Ex. 2 at 7, 197, 315.  For example, Masimo provided a table identifying how the different versions of the two relevant portions of software change between "sampling rates" and explained why those "sampling rates" correspond to different duty cycles. *See, e.g.*, *id.*, Ex. 1 at 4-29; *id.*, Ex 2. at 1 (incorporating tables by reference).  The supplement further details, for each Accused Product, how "processing characteristic(s)" are compared to a "predetermined

threshold" to cause a change between the two protocols. *See, e.g.*, *id.*, Ex. 1 at 4-29; *id.*, Ex 2. at 1.  Indeed, Masimo provided a table that, for each version of the two portions of software at issue, identified the triggers that cause the algorithm to change "sampling rates," the thresholds for those triggers, and how the "sampling rate" changes. *See, e.g.*, *id.*, Ex. 1 at 9-16, 21-29; *id.*, Ex 2. at 1.  Masimo's claim charts explain how the information in Masimo's tables meet the claim limitations and provide additional evidence. *See id.*, Ex. 2.

Accordingly, Masimo's supplemental contentions already provide Apple with the details it purportedly seeks through this Motion.

**5.      The Deadline To Serve Final Infringement Contentions Is Weeks Away**

The Court's schedule contemplates and permits Masimo to supplement its contentions until the close of fact discovery.  Dkt. 1944 at 2; Dkt. 1946 at 1.  Indeed, Masimo's ***final*** infringement contentions are not due until July 15, 2024. *Id*.  Thus, the schedule distinguishes this case from those on which Apple relies. *Supra* § III.A.3.  The parties in *Cap Co*., *Tech. Props.*, and *Oyster Optics* were subject to local patent rules that limited a patent owner to initial infringement contentions and prohibited supplementation absent "good cause." *Cap Co. v. McAfee, Inc.*, 2015 WL 4734951, at *4 (N.D. Cal. Aug. 10, 2015) (applying N.D. Cal patent local but granting leave to amend as a "as a one-time exception to the usual rules"); *see also Tech. Props. Ltd. LLC v. Samsung Elecs. Co.*, 114 F. Supp. 3d 842, 844 (N.D. Cal. 2015) (applying N.D. Cal patent local rules); *Oyster Optics, LLC v. Ciena Corp.*, 2022 WL 561931 at *3 (N.D. Cal. Feb. 24, 2022) (same); N.D. Cal. P.L.R. 3-6.

Where the schedule allows for both initial and final infringement contentions—as in this case—courts impose a lower burden for initial infringement contentions. *John Keeler & Co., Inc. v. Heron Point Seafood, Inc.*, 2017 WL 3705863, at *6 (N.D. Ohio Aug. 28, 2017) ("The infringement contentions now at issue are ***merely preliminary***. After Keeler has been given an opportunity for discovery, it may seek to amend its contentions, if necessary, ***before they become final*** . . . ." (emphasis added)); *IGT v.*

*Zynga Inc.*, 2022 WL 606719, at *2 (W.D. Tex. Mar 1, 2022) ("a higher standard of detailing claim charts with specific descriptions . . . applies to a plaintiff's ***final*** infringement contentions.   But at the ***preliminary*** infringement contention stage, a plaintiff need only illustrate that the additional uncharted products are 'reasonably similar' . . . ." (emphasis added)); *see also Shurtape Techs., LLC v. 3M Co.*, 2011 WL 4750586, at *2 (W.D. N.C. Oct. 7, 2011) ("It is equally important, however, to distinguish the requirements of initial infringement contentions from later stages in litigation. . . . infringement contentions are not the correct stage to 'pre-try the case . . . by conducting a highly detailed and rigorous analysis of the ***preliminary*** claim infringement contentions.'" (emphasis added)).   This provides an additional basis to deny Apple's Motion.

### 6.    Apple Is Still Producing Relevant Discovery

Apple's Motion should also be denied because Apple admittedly has failed to provide at least two categories of discovery relevant to Masimo's contentions.

First, Judge Selna held that Apple must ***complete*** its production of core technical documents before Masimo had to provide infringement contentions.  *See, e.g.*, Dkt. 92 (extending Masimo's deadline "forty-two (42) days after Apple completes its production of core technical documents").   As explained above, Apple did not even assert that it "substantially completed" its production until May 22—just 36 hours before it demanded that Masimo supplement its contentions.  Apple Ex. 5 at 7-8.  Apple produced additional technical documents on May 31—after it served the joint stipulation.  Masimo Ex. G.  And Apple agreed to produce (but has not yet produced) some core technical documents in response to Masimo's Request For Production No. 811.  Masimo Ex. J. Under Judge Selna's prior holding, Masimo should not be obligated to supplement its contentions until a reasonable time after Apple ***completes*** its production of core technical documents.  *See* Dkt. 92.

Second, Apple has agreed to supplement—but has not yet supplemented—its response to Masimo's Interrogatory No. 33, which seeks information about the

differences between pulse rate features of the various versions of accused products. Masimo Ex. K.  Apple has agreed to supplement its response to Interrogatory No. 33 sometimes the week of June 3 (*id.*) but has not done so as of the time Masimo provided its portion of the joint stipulation.  Yet Apple argues that material differences exist such that Masimo needs to separately chart infringement for each version of the Apple Watch. *Supra* § III.A.2.  Apple's impending supplement is thus directly relevant to the issues raised in Apple's Motion.

### 7.    Apple's Other Arguments Lack Merit

Apple also raises other arguments.  Apple's arguments are largely irrelevant, but Masimo addresses some of them briefly for completeness.

First, Apple claims Masimo expanded the scope of accused products from Series 3-5 in its July 2020 contentions to Series 0-9, SE, and Ultra in its April 2024 contentions. *Supra* § III.A.4.  Apple's argument is misleading.  Apple had not even released most of those products (Series 6-9, SE, and Ultra) as of July 2020.  Moreover, as discussed, Masimo served contentions in July 2020 based on public information because Judge Selna had not yet extended Masimo's deadline.  *See* Dkt. 92 (extending deadline two days later).  Masimo later accused Series 0-2 based on documents that Apple had withheld in 2020.  *See, e.g.*, Apple Ex. 6, Ex. 1 at 14, 38, 68, 69 (APL-MAS_00099524, APL-MAS_01336535, APL-MAS_01385297, APL-MAS_01385302, all of which were produced in 2021 and later).

Second, Apple accuses Masimo of seeking too much discovery after asserting that "most discovery is complete."  *Supra* § III.A.1.  The statement that "most discovery is complete" was (and remains) true.  Before the stay was lifted, the parties had responded to more than 1,200 document requests, responded to more than 75 interrogatories, produced more than 8 million pages of documents, and taken about 200 hours of depositions.  The parties need a small fraction of that discovery to prepare the remaining patent claims for trial.  That necessary discovery includes a small and well-defined list of missing core technical documents that Masimo identified in an appendix to its April

2024 contentions.  Apple Ex. 6 at 31-33; Masimo Ex. A, at 37-40.  Masimo could not have anticipated that Apple would delay producing such a small number of documents or that Apple would try to blame Masimo for its own delay.

### 8.    Conclusion

Apple's Motion is moot because Masimo already supplemented its contentions just like it promised to do before Apple served its portion of the joint stipulation. Regardless, Masimo's infringement contentions are more than sufficient, particularly because this case allows for final infringement contentions and Apple is still producing technical documents.  The Court should deny Apple's Motion.

Respectfully submitted,

Dated: June 6, 2024    By: /s/ *Mark D. Selwyn*
                           Mark D. Selwyn
                           Joshua H. Lerner
                           Nora Passamaneck
                           WILMER CUTLER PICKERING
                           HALE AND DORR LLP

                           Kenneth G. Parker
                           HAYNES AND BOONE, LLP

                           Brian A. Rosenthal
                           GIBSON, DUNN & CRUTCHER LLP

                           *Attorneys for Defendant Apple Inc.*

Dated: June 6, 2024    By: /s/ *Adam B. Powell*
                           Joseph R. Re
                           Stephen C. Jensen
                           Benjamin A. Katzenellenbogen
                           Perry D. Oldham
                           Stephen W. Larson
                           Mark D. Kachner
                           Adam B. Powell
                           Daniel P. Hughes
                           KNOBBE, MARTENS, OLSON &
                           BEAR, LLP

                           *Attorneys for Plaintiffs*
                           *Masimo Corporation and*
                           *Cercacor Laboratories, Inc.*

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

Dated: June 6, 2024    By: /s/ *Mark D. Selwyn*