Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)          Brian C. Horne (Bar No. 205621)
adam.powell@knobbe.com                     brian.horne@knobbe.com
Daniel P. Hughes (Bar No. 299695)          Mark D. Kachner (Bar No. 234192)
daniel.hughes@knobbe.com                   mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**     **KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive                   1925 Century Park East, Suite 600
San Diego, CA 92130                        Los Angeles, CA 90067
Phone: (858) 707-4000                      Phone: (310) 551-3450
Fax: (858) 707-4001                        Fax: (310) 551-3458

[Counsel appearance continues on next page]

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER PRECLUDING DEFENDANT FROM DISCLOSING PLAINTIFFS' CONFIDENTIAL MATERIALS TO DR. PATRICK MERCIER**<br><br>Date: 7/25/24 / 10:00 a.m.<br>Discovery Cutoff: 7/15/2024<br>Pre-Trial Conf.:      10/28/2024<br>Trial:                     11/05/2024<br><br>Judge: Judge James V. Selna<br>Mag. Judge John D. Early |

1
2  MARK D. SELWYN, SBN 244180
     mark.selwyn@wilmerhale.com
3  THOMAS G. SPRANKLING, SBN 294831
     thomas.sprankling@wilmerhale.com
4  WILMER CUTLER PICKERING
     HALE AND DORR LLP
   2600 El Camino Real, Suite 400
5  Palo Alto, CA 94306
   Tel.: 650.858.6000 / Fax: 650.858.6100
6
   JOSHUA H. LERNER, SBN 220755
7    joshua.lerner@wilmerhale.com
   WILMER CUTLER PICKERING
8    HALE AND DORR LLP
   One Front Street, Suite 3500
9  San Francisco, CA 94111
   Tel.: 628.235.1000 / Fax: 628.235.1001
10
   AMY K. WIGMORE, *pro hac vice*
11   amy.wigmore@wilmerhale.com
   WILMER CUTLER PICKERING
12   HALE AND DORR LLP
   1875 Pennsylvania Ave NW
13 Washington, DC 20006
   Tel.: 202.663.6000 / Fax: 202.663.6363
14
   SARAH R. FRAZIER, *pro hac vice*
15   sarah.frazier@wilmerhale.com
   WILMER CUTLER PICKERING
16   HALE AND DORR LLP
   60 State Street
17 Boston, MA 02109
   Tel.: 617.526.6000 / Fax: 617.526.5000
18
   NORA Q.E. PASSAMANECK, *pro hac vice*
19   nora.passamaneck@wilmerhale.com
   WILMER CUTLER PICKERING
20   HALE AND DORR LLP
   1225 Seventeenth Street, Suite 2600
21 Denver, CO 80202
   Tel.: 720.274.3152 / Fax: 720.273.3133
22
   BRIAN A. ROSENTHAL, *pro hac vice*
23   brosenthal@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
24 200 Park Avenue
   New York, NY 10166-0193
25 Tel.: 212.351.2339 / Fax: 212.817.9539
26 KENNETH G. PARKER, SBN 182911
     Ken.parker@haynesboone.com
27 HAYNES AND BOONE, LLP
   660 Anton Boulevard, Suite 700
28 Costa Mesa, CA 92626

Tel. 650.949.3014 / Fax: 949.202.3001

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

I. INTRODUCTORY STATEMENTS ...................................................................1

    A.    Masimo's Introductory Statement..................................................1

    B.    Apple's Introductory Statement ....................................................4

II. CONTENTIONS AND POINTS OF AUTHORITY ........................................6

    A.    Masimo's Contentions and Points of Authority............................6

        1.    Procedural Background.....................................................6

        2.    Dr. Mercier Is Precluded Because He Is A Director Of A Competitor ......................................................................7

        3.    Dr. Mercier Presents An Unreasonable Risk Of Misuse And Inadvertent Disclosure .............................................8

        4.    Apple Improperly Rejected Masimo's Reasonable Request For Additional Information......................................11

        5.    Apple Cannot Show Its Own Mere Inconvenience Outweighs The Risks To Masimo...................................11

    B.    Apple's Response .......................................................................13

        1.    The Test For Exclusion Is Not As Broad As Argued By Plaintiffs ...................................................................13

        2.    Professor Mercier Does Not "Compete" With Plaintiffs ........14

        3.    There Is No Risk of Misuse of Plaintiffs' Confidential Information .................................................................16

        4.    Apple Properly Responded To Plaintiffs' Requests For Additional Information ................................................16

        5.    Apple Has a Right To Defend Itself and Choose Its Experts Over Plaintiffs' Baseless Objections ........................17

1   Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs
2   Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo"), as
3   movant, and Defendant Apple Inc. ("Apple"), as respondent, respectfully submit the
4   following Joint Stipulation in connection with Masimo's Motion for a Protective Order
5   Precluding Apple from Disclosing Masimo's Confidential Materials to Apple's
6   Proposed Expert, Dr. Patrick Mercier.

7   Pursuant to Local Rule 37-1, the parties prepared this Joint Stipulation following
8   the conference of counsel, which took place on June 21, 2024.

9   ## I.  INTRODUCTORYSTATEMENTS

10  ### A. Masimo's Introductory Statement

11  Masimo moves for a protective order precluding Apple from disclosing
12  Masimo's confidential materials to Apple's proposed expert, Dr. Patrick Mercier.
13  Dr. Mercier is a director of a competitor to Masimo and is thus prohibited under the
14  Protective Order in this case from receiving Masimo's confidential materials.  Dkt. 67,
15  § 9.2(c) (prohibiting disclosure to a proposed expert who is a "director . . . of a
16  competitor of a Party").  Dr. Mercier also develops competing technology as a scientific
17  advisor to NeuroVigil.  Dr. Mercier's professional roles and work thus present an
18  unreasonable risk that Masimo's confidential information will be misused or
19  inadvertently disclosed.

20  ***Dr. Mercier Is A Director Of A Competitor***.  Masimo's trade secret
21  misappropriation and patent infringement claims relate to Masimo's non-invasive
22  physiological monitoring technology, systems, and devices.  Masimo's patent
23  infringement claims are also directed to reduced- and low-power sensor systems.

24  Dr. Mercier is a Co-Founder and Co-Director of the Center for Wearable Sensors
25  ("Center"), which includes faculty from the University of California, San Diego.
26  Ex. A;[1] Ex. B; Ex. E.  The Center develops non-invasive physiological monitoring

27
28  ---
[1] Lettered Exhibits are included in the Declaration of Kendall Loebbaka, filed concurrently herewith.

-1-

technology, devices, and systems that compete with Masimo.  In particular, the Center works with "industry partners" to develop electrophysiological sensors that "monitor heart rate, hydration levels, blood sugar and more, without any direct user interaction required."  Ex. F.  The Center also develops "ultra-low power" sensors.  Ex. B.

The Center provides its "industry partners" with "access to [a] commercialization engine with [a] lab-to market focus."  Ex. B.  It develops "real-world applications" to "ensure that breakthroughs and innovations have the greatest chance of moving from the lab to the marketplace."  Ex. B; Ex. E.  The Center's "industry partners" include Samsung, Google, and Dexcom.  *Id*.  Samsung and Google sell wearables for non-invasive monitoring, such as wearables for monitoring heart rate, that compete with Masimo.  Ex. D, ¶ 3.  Dexcom sells glucose monitors, and Cercacor has been researching and developing glucose monitoring technologies for years and has produced many documents in this case regarding this research and development.

As a director of a competitor, Dr. Mercier's role at the Center precludes him from receiving Masimo's confidential materials.  Dkt. 67, § 9.2(c).  Apple asserts that Dr. Mercier's "current work at the Center" does not involve "optical sensing technologies."  Ex. C.  Apple's assertion evades the relevant inquiry for three reasons.  First, the Protective Order precludes disclosure to directors of a competitor ***regardless*** of whether the director's personal "work" involves competing technology.  Dkt. 67, § 9.2(c).  Second, Apple does not explain how it (narrowly) defines Dr. Mercier's "work."  As a Director, Dr. Mercier may be involved in varying degrees with much, if not all, of the development work at the Center.  Third, Masimo does not compete solely with non-invasive monitoring technology that is optically based.  Ex. D, ¶ 3.  For example, Masimo also competes with monitoring technology based on electrical activity and is the only company with a non-invasive hydration measurement, a technology the Center is pursuing.  *Id*. ¶¶ 3-4.  The parties already expressly contemplated that the risk of inadvertent disclosure was not limited to working on optically-based applications and instead encompassed non-invasive monitoring in general.  Dkt. 67, § 10 (establishing a

-2-

prosecution bar "in the field of non-invasive monitoring").

At the least, Dr. Mercier's role at the Center presents a serious risk of misuse or inadvertent disclosure of Masimo's confidential information.  If given access to Masimo's confidential information, Dr. Mercier could not be expected to avoid inadvertently using Masimo's information in his ongoing work at the Center.  Courts consistently recognize that it is impossible for the human mind to suppress or erase information learned through litigation that is relevant to that person's ongoing and future work.

*Dr. Mercier Also Develops Competing Brain Monitoring Technology*.  In addition to his role as a Director at the Center, Dr. Mercier also serves as a Scientific Advisor to NeuroVigil, which develops "non-invasive brain monitors." Ex. G. Masimo also developed and markets non-invasive brain monitoring solutions, such as SedLine®.  *See* Ex. H.  The document production in this case includes many references to Masimo's confidential information relating to SedLine®.  Dr. Mercier's work for NeuroVigil presents additional risk of misuse and inadvertent disclosure.

*Apple Improperly Rejected Masimo's Request For Additional Information*. The Protective Order requires Apple to provide information regarding its proposed expert's professional activities "reasonably requested by [Masimo] to evaluate whether good cause exists to object to the disclosure of Protected Material." Dkt. 67, § 9.2. Because of Masimo's concerns regarding Dr. Mercier's role at the Center and his work at NeuroVigil, Masimo requested that Apple identify and describe the physiological parameters for which the Center was developing or planned to develop monitoring technology.  Ex. C.  Masimo also requested that Apple explain the Center's work on low-power sensor systems.  *Id.*  Apple refused Masimo's reasonable request, describing it as "nothing more than a fishing expedition."  *Id*.  Apple's refusal was a violation of the Protective Order.  Dkt. 67, § 9.2.

*Apple Disclosed Dr. Mercier Late And Has Other Experts*.  Apple complains that Masimo's objection to Dr. Mercier makes it difficult for Apple to comply with

upcoming expert report deadlines.  But Apple is responsible for its delay.  This case has been pending since January 2020. Dkt. 1; Dkt. 1711.  The Court lifted the stay on April 16, 2024, and set a July 15 deadline for opening expert reports.  Dkt. 1944; *see also* Dkt. 1946 (moving expert deadline from July 22 to July 15).  Yet Apple did not disclose Dr. Mercier until June 12—two months after the Court lifted the patent stay and just one month before the deadline for opening expert reports.  Ex. C.   Thus, any inconvenience to Apple is the result of Apple's late disclosure—not Masimo's objection.  Apple also already has several other technical experts that Masimo has approved under the Protective Order.   Apple cannot show that its inconvenience outweighs the risk that Masimo's confidential information will be misused or inadvertently disclosed.

**B.      Apple's Introductory Statement**

In an obvious effort to delay Apple's ability to disclose case materials to a technical expert—against the backdrop of a case schedule in which opening expert reports are due in about two weeks—Masimo has raised groundless objections to Dr. Patrick Mercier, a fully-tenured professor at the University of California, San Diego ("UCSD").  Professor Mercier conducts fundamental research on "multiple domains, from near-zero-power integrated circuits, power management, energy harvesting, neural interfaces, wearable physiochemical sensors, RFICs and RF systems, and beyond." *See* Loebbaka Decl. Ex. A.  Plaintiffs object to Professor Mercier accessing their confidential material, arguing that, as the protective order requires, Professor Mercier is "an officer, director, or employee of . . . a competitor" to Plaintiffs, and/or that he is involved in "competitive decision-making" for a competitor of Plaintiffs. Plaintiffs can establish neither.

Plaintiffs' argument relies on an overly expansive interpretation of "competition" as covering Professor Mercier's role as Co-Director at UCSD's Center for Wearable Sensors, and his advisory role at NeuroVigil—a company that develops brain monitoring technology completely irrelevant to the technology asserted in this case.

1    Plaintiffs' efforts to stretch the protective order in this manner is improper because, in
2    this context, "competition" requires ***direct*** competition involving the asserted
3    technology.  *See Codexis, Inc. v. EnzymeWorks, Inc.*, No. 3:16-CV-00826-WHO, 2017
4    WL 5992130, at *8 (N.D. Cal. Dec. 4, 2017) (overruling objection to expert where party
5    failed to establish that "the companies with which [the expert] has an ongoing
6    relationship directly compete with them," and "the technology at issue here is clearly
7    different than the subjects of 'competition' identified"); *Alta Devices, Inc. v. LG*
8    *Elecs., Inc.*, No. 18CV00404LHKVKD, 2018 WL 5023373, at *1 (N.D. Cal. Oct. 16,
9    2018) (rejecting broad assertion of competition where plaintiff did not explain how the
10   technologies at issue in the case compare to expert's work).

11       The technology in this case involves light-based physiological monitoring and
12   managing power consumption of low power pulse oximeters.  Although Professor
13   Mercier has extensive knowledge and experience regarding optical sensors and power
14   management techniques for optical sensors, he has never been involved in any efforts
15   to develop optical sensors for commercial applications or products, whether at the
16   Center or NeuroVigil.  Passamaneck Decl. at Ex. J ¶5.  As to the Center, its research is
17   purely academic, and neither Professor Mercier nor the Center develops any
18   commercial applications or products in any technological field, much less the
19   technology at issue here.  *Id.* ¶6.  As to NeuroVigil, a company developing brain-
20   monitoring technology, Professor Mercier is not  an officer, director, or employee, and
21   is not involved in competitive decision making for NeuroVigil.  *Id.* ¶9.  In any event,
22   NeuroVigil is not a competitor because Plaintiffs' brain-monitoring technology is not
23   at issue in this case.  Plaintiffs therefore have no basis for arguing that there is any risk
24   that Professor Mercier would use Plaintiffs' confidential material in any manner
25   prohibited by the protective order.

26       Plaintiffs' other arguments are likewise unavailing.  Plaintiffs argue that Apple
27   refused to answer questions regarding the Center's work.  But, as Apple explained,
28   Plaintiffs' request that Apple identify ***every*** physiological parameter that the Center is

1   currently developing or plans to develop is manifestly unreasonable where the only

2   relevant inquiry under the protective order is whether ***Professor Mercier*** is an officer,

3   director, employee, or competitive decision-maker for an entity that develops products

4   that directly compete with the technology at issue in this case.  Plaintiffs also argue that

5   Apple should have disclosed Professor Mercier earlier and can use its other retained

6   experts.   But Plaintiffs have shown no likelihood of misuse of their confidential

7   material, and Apple diligently disclosed Professor Mercier in light of the compressed

8   discovery schedule that Plaintiffs themselves requested.

## II.   CONTENTIONS AND POINTS OF AUTHORITY

### A.   Masimo's Contentions and Points of Authority

#### 1.   Procedural Background

12   This case has been pending since January 2020 and involves trade secret and

13   patent claims.  Dkt. 1; Dkt. 28.  Masimo's claims relate to its non-invasive physiological

14   monitoring technology, including low-power systems.  *Id*.  In October 2020, the Court

15   stayed Masimo's patent infringement claims pending Apple's IPRs.  Dkt. 222.  The

16   Court held an initial trial on Masimo's trade secret claims in April 2023, but the jury

17   could not reach a verdict.  Dkt. 1171.

18   By January 2024, three Masimo patents survived Apple's IPRs and Federal

19   Circuit appeals.  Dkt. 1929-3 ¶ 3.  Masimo decided not to pursue one patent, leaving

20   U.S. Patent Nos. 8,457,703 ("the '703 patent") and 10,433,776 ("the '776 patent").  The

21   '703 and '776 patents both relate to low-power sensor technology.  Dkt. 28.  In April

22   2024, the Court lifted the patent stay and set a July 15, 2024, deadline for expert reports.

23   Dkt. 1944; Dkt. 1946 (moving expert report deadline from July 22 to July 15).

24   On June 12—two months after the Court lifted the stay and just one month before

25   the deadline for opening expert reports—Apple notified Masimo that it intended to

26   disclose confidential materials to Dr. Mercier.  Ex. C.  The Protective Order provided

27   Masimo 14 days to object; Masimo responded one week early on June 19.  Ex. C

28   (notifying Apple of Masimo's objection).

Masimo explained that "Dr. Mercier appears to be involved in developing non-invasive physiological monitoring technology that competes with Plaintiffs." *Id.* Accordingly, Masimo requested that Apple "identify and describe each physiological parameter for which the Center is currently developing or researching monitoring technology, as well as each physiological parameter for which the Center plans to develop or research monitoring technology in the future, either on its own or in collaboration with an 'industry partner.'" *Id.* Masimo also requested that Apple "further explain the Center's work developing and researching low-power systems, as well as the current and planned applications for NeuroVigil's brain monitoring technology." *Id.*

Apple responded on June 20, refusing the requested information, and the parties conferred on June 21; the parties were unable to resolve their dispute.

### 2.    Dr. Mercier Is Precluded Because He Is A Director Of A Competitor

The Protective Order precludes Apple from disclosing Masimo's confidential materials to an expert who is an "officer, director, or employee" of a competitor. Dkt. 67, § 9.2(c).  Dr. Mercier is a Co-Founder and Co-Director of the Center.  Ex. A. While the Protective Order does not expressly define "competitor," the Center's advertising material shows that it develops competing non-invasive monitoring technology, systems, and devices for commercial purposes.  The Center develops non-invasive sensors that "monitor heart rate, hydration levels, blood sugar and more." Ex. F; Ex. B; Ex. E.  The Center also develops low-power sensors. *Id*.

The Center expressly acknowledges that it provides "industry partners" "access to [a] commercialization engine with [a] lab-to-market focus." Ex. B; Ex. E.  The Center also focuses on "real-world applications" "to ensure that breakthroughs and innovations have the greatest chance of moving from the lab to the marketplace."  *Id*.  These "industry partners" include Samsung and Google, which sell wearables for non-invasive monitoring, such as wearables for monitoring heart rate, that compete with Masimo. *Id*.; Ex. D, ¶ 3.  These "industry partners" also include Dexcom, which sells glucose monitors.  Ex. B; Ex. E.  Cercacor has been researching and developing glucose

monitoring technologies for years, and Cercacor has produced many documents in this case regarding this research and development.  Thus, according to its own advertising materials, the Center, directed by Dr. Mercier, develops competing technology for commercial purposes.  As a director of a competitor, the Protective Order precludes Dr. Mercier from receiving Masimo's confidential materials. Dkt. 67, § 9.2(c).

Apple asserts that Dr. Mercier's "current work" at the Center does not "involve[] optical sensing technologies." Ex. C.  This assertion on a single item that he does *not do* evades disclosing what he *does do* and is therefore unhelpful for several reasons. First, Apple does not explain how it defines Dr. Mercier's "work." As a Director of the Center, he may be involved in varying degrees with much or all of the development work at the Center.  Second, the Protective Order indicates that the proper assessment of the risk of misuse or inadvertent disclosure of confidential materials is not limited to a proposed expert's individual "work" but instead extends to the work pursued at the expert's business entity. Dkt. 67, § 9.2(c).  In particular, the Protective Order prevents disclosure to an expert who is a director of a competitor.  *Id.*  The Protective Order includes no provision allowing an expert to avoid exclusion by virtue of his or her individual "work" or what he or she does *not* do.  *See id.*

Regardless of whether Dr. Mercier and the Center's "work" involved optical sensing technologies, the Center remains a competitor of Masimo.  Masimo competes with non-invasive monitoring technologies that are not optically based. Ex. D, ¶ 3.  For example, Masimo competes with non-invasive monitoring technology that is based on electrical activity in the body and provides the only known non-invasive hydration measurement available on the market.  *Id*. ¶¶ 3-4.  Moreover, the Center develops low-power sensor systems, which directly compete with Masimo.

### 3.   Dr. Mercier Presents An Unreasonable Risk Of Misuse And Inadvertent Disclosure

Although the Protective Order already makes clear Dr. Mercier's exclusion, he should also be excluded because his role and work at the Center and as a Scientific

1  Advisor to NeuroVigil (Ex. C) presents an unreasonable risk of misuse or inadvertent
2  disclosure of Masimo's confidential information.  That risk greatly outweighs any
3  inconvenience to Apple.

4      As discussed, Dr. Mercier actively develops non-invasive physiological
5  monitoring technologies as Co-Director of the Center and through his work at
6  NeuroVigil.  Masimo offers competing non-invasive wearable products and non-
7  invasive brain monitoring products, known as SedLine®.  Ex. D, ¶ 3; Ex. H.  Courts
8  uniformly recognize that this set of circumstances places even the most well-intentioned
9  recipient of confidential information in an impossible position and requires the exclusion
10  of that person from receiving confidential information.  As explained by one Court of
11  Appeals, "it is very difficult for the human mind to compartmentalize and selectively
12  suppress information once learned, no matter how well-intentioned the effort may be to
13  do so."  *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) (affirming
14  preclusion).

15      Similarly, "[a] review of the relevant case law supports a finding that [an expert's]
16  ongoing work in the field of [the litigation] creates a substantial risk and that absent a
17  showing that [the expert] possesses unique expertise he should not be allowed access to
18  [a party's] highly confidential information." *Symantec Corp. v. Acronis Corp.*, No. 11-
19  5310 EMC JSC, 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012).  There, the court
20  noted that "[n]either the parties nor the Court on its own have been able to identify a
21  case within the Ninth Circuit where a party's objections to an expert were overruled
22  where that expert actively consulted in the very field at issue."  *Id.* at *3 n.1. The court
23  added that sustaining the objections did not effectively allow veto power with respect to
24  the other side's experts.  *Id.*  The court found it was entirely reasonable to insist that
25  litigants retain technical experts who do not work for or consult with competitors in the
26  field of the litigation.  *Id.*

27      Other courts have reached the same conclusion.  For example, the court in *Digital*
28  *Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 492 (D. Colo. 1992), precluded access

1    to confidential information in circumstances similar to those here.  The court explained

2    that "[o]nce [the plaintiff's] confidential and proprietary data is reviewed by [the

3    proposed expert], it will become part of his general acquired knowledge, which cannot

4    be 'unlearned' or utilized only on a selective basis." *Id.  See also Safe Flight Instrument*

5    *Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) ("Mr. Greene

6    is a man of great moral fiber, we nonetheless question his human ability during future

7    years of research to separate the applications he has extrapolated from Sundstrand's

8    documents from those he develops from his own ideas.").

9         Apple itself argues for even broader exclusion, at least when Apple is on the other

10   side.  For example, Apple sought to exclude an opposing party representative from

11   having access to confidential information by arguing that "[c]ourts have recognized the

12   high risk of inadvertent use of highly confidential information if disclosed to inventors,

13   engineers and scientists." *Voice Domain Techs., LLC v. Apple, Inc.*, No. 4:13-cv-40138-

14   TSH, Dkt. 45 (D. Mass. July 17, 2014) (emphasis added) (citing cases holding that, even

15   with the best of intentions, it is not reasonable to expect an inventor to segregate

16   information acquired under a protective order) (Ex. I).

17        Masimo's arguments are much narrower, because Dr. Mercier is not only a

18   scientist, but his work is directly in Masimo's and Cercacor's field.  At the Center, Dr.

19   Mercier develops "wearable sensor systems" in partnership with industry partners who

20   compete directly with Masimo.  This is particularly concerning given Dr. Mercier's role

21   as Co-Director of the Center, which refutes Apple's assertion that "only Dr. Mercier's

22   work is relevant, not that of the entire Center." *See* Ex. C.

23        Similarly, Dr. Mercier's work at NeuroVigil creates a serious risk if he were to

24   access Masimo's confidential materials.  Apple asserts that Dr. Mercier's work on "brain

25   monitoring technology" at NeuroVigil is not a basis for objection because "no such

26   technology is at issue here" and "Dr. Mercier's work with NeuroVigil does not relate to

27   PPG technologies." Ex. C.  But Masimo has produced confidential documents relating

28   to SedLine® (Masimo's brain monitoring technology) in response to Apple's broad

discovery demands.   This includes confidential information relating to Masimo's customers, marketing strategy, and pricing for SedLine®.

Finally, Apple argues that "Masimo's patents are public and Masimo itself asserts that it has been incorporating the alleged inventions in their products since 2002."  Ex. C.  This is irrelevant.  Masimo does not object to Dr. Mercier accessing Masimo's public patents—Masimo objects to Dr. Mercier receiving Masimo's confidential information.

### 4.   **Apple Improperly Rejected Masimo's Reasonable Request For Additional Information**

Apple is required under the Protective Order to provide information regarding its proposed expert's professional activities "reasonably requested by [Masimo] to evaluate whether good cause exists to object to the disclosure of Protected Material."  Dkt. 67, § 9.2.  Dr. Mercier's role and work at the Center and NeuroVigil indicated material risks of misuse and inadvertent disclosure of Masimo's confidential materials and was expressly prohibited by the Protective Order.  Masimo thus reasonably requested that Apple identify and describe the physiological parameters for which the Center was developing or planned to develop monitoring technology, as well as to explain the Center's work on low-power sensor systems.  Ex. C.  Apple refused, characterizing Masimo's request as "nothing more than a fishing expedition."  *Id*.  Apple's refusal was not only a violation of the Protective Order, but there is no "fishing expedition" at issue because Dr. Mercier is not accused of anything.  The Court should preclude Dr. Mercier.

Moreover, to the extent Apple asserts that Masimo should support its request to preclude Dr. Mercier with more detail regarding the Center's competing development work, Apple's argument should be rejected.  Apple cannot improperly refuse to provide the information that Masimo reasonably requested and then fault Masimo for not including it in its Motion.

### 5.   **Apple Cannot Show Its Own Mere Inconvenience Outweighs The Risks To Masimo**

Courts also balance the risk of inadvertent use or disclosure against the potential

harm to the non-movant from restricting its choice of experts.  As the party seeking disclosure, Apple bears the burden of showing that there is a dearth of experts in the field or that Apple will be seriously prejudiced by the exclusion of this particular expert. *See Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*, 2011 WL 197811 at *5 (N.D. Cal. Jan. 20, 2011); *Emerson Electric Co. v. Sipco, LLC*, 2016 WL 6833741 at *5 (N.D. Cal. Nov. 21, 2016) (party seeking access bears the burden of establishing that the injury from restrictions imposed on its choice of expert exceeds the risk of inadvertent use).  Apple has never attempted to make such a showing.

At most, Apple asserts that precluding Dr. Mercier would present inconvenience because opening expert reports are due on July 15, 2024.  Apple—not Masimo—caused any purported inconvenience.  This case has been pending since January 2020.  Dkt. 1. In April 2024, the Court lifted the patent stay and set opening expert report deadlines in July 2024.  Dkt. 1944; Dkt. 1946.  Apple has thus been well aware of the relevant deadlines and its alleged need for Dr. Mercier for months.  Apple also knew the stay being lifted was coming well before it was lifted, as the Court told the parties of its plans to lift the stay once the mandate was received.  Yet Apple did not disclose Dr. Mercier to Masimo until June 12—just one month before the deadline for opening expert reports. Ex. C.[2]

Apple's assertion of inconvenience is also questionable because Apple already has several technical experts in the field of non-invasive monitoring that Masimo approved under the Protective Order.

In sum, Apple cannot identify any prejudice that would outweigh the risk of misuse or inadvertent disclosure of Masimo's confidential information.  The Court therefore should preclude Dr. Mercier from accessing Masimo's confidential materials.

---

[2] Masimo notes that while Masimo had until June 26, 2024, to provide Apple with its objection to Dr. Mercier (14 days from Apple's June 12, 2024 date of disclosure, Dkt. 67 § 9.2), Masimo responded one week early, on June 19, 2024.  Ex. C.  Masimo also notes that it provided its portion of this Joint Stipulation earlier than the deadline required under the Protective Order.

-12-

**B.    Apple's Response**

Plaintiffs object to Professor Mercier receiving their confidential information on the basis that he "competes" with Plaintiffs (1) as a co-director of the Center for Wearable Sensors ("the Center") at UCSD; and (2) as a member of the Scientific Advisory Board of NeuroVigil.  Neither is remotely a basis for exclusion in this case.

**1.    <u>The Test For Exclusion Is Not As Broad As Argued By Plaintiffs</u>**

Plaintiffs wrongly suggest that an expert may be prevented from accessing confidential material merely if there exists any overlap between the expert's and the objecting party's work or research.   Under the protective order, a party receiving confidential information (Receiving Party) may share it with:

> (c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action, including the expert's support staff, provided that: (1) such consultants or experts are not presently an officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party.

Dkt. 67, ¶ 9.2(c).  As the objecting party, Plaintiffs "have the burden of proving the need for a protective order," i.e., that the receiving expert is "an officer, director, or employee of . . . a competitor," or that the receiving expert is "involved in competitive decision-making" for a competitor.  *Id.*

Although "compete" is not defined in the protective order, courts addressing challenges to experts under similar protective order provisions have explained that the party challenging an expert has the "burden to establish that the companies with which [the expert] has an ongoing relationship ***directly compete*** with them."  *Codexis, Inc.*, 2017 WL 5992130, at *8.  Even if found to directly compete, the asserted technology must overlap with the subject of competition identified for the expert.  *Id.* ("And even

if the companies were found to be competitors, the technology at issue here is clearly different than the subjects of 'competition' identified by defendants, and, as a result, none of their disclosures pertain to those potentially problematic areas."); *Alta Devices, Inc.*, 2018 WL 5023373 at *1 (finding that the objecting party "defines 'competitor' too broadly," and rejecting broad assertion of competition where plaintiff did not explain how the technologies at issue in the case compare to expert's work); *see also Olin v. Facebook, Inc.*, No. 18-CV-01881-RS (TSH), 2019 WL 5802020, at *3 (N.D. Cal. Nov. 7, 2019) (allowing the expert in part because the expert's "prior work for [the competitor] was wholly unrelated to the technology at issue in this case").

The rationale for these holdings is simple: where there is no overlap between the technology at issue and the industry work of an expert, there is little to no risk of misuse, even inadvertent use. *See Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*, No. 11CV2214-GPC KSC, 2013 WL 3367575, at *3 (S.D. Cal. July 5, 2013) ("When a party is concerned about the competitive misuse of confidential information and a protective order appears to be insufficient protection, the court must balance the risk of disclosure to competitors against the risk of damaging the claims or defenses of the party seeking access."). Defining "competition" too broadly— as Plaintiffs advocate here—would "effectively give a party 'the power of veto over its adversary's choice of experts." *Codexis, Inc.*, 2017 WL 5992130, at *8 (quoting *Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, No. 95-20169 RMW (EAI), 1996 WL 908654, at *3 (N.D. Cal. Oct. 28, 1996)).

### 2. Professor Mercier Does Not "Compete" With Plaintiffs

Plaintiffs cannot show that Professor Mercier is an officer, director, employee, or competitive decision-maker for any entity that competes with Plaintiffs in the area of technology at issue in this action, i.e., light-based physiological monitors or low power pulse oximeters. Professor Mercier is a professor conducting fundamental research on the design of energy-efficient microsystems, the design of RF circuits, power converters, and sensor interfaces for miniaturized systems and biomedical applications.

*See* Loebbaka Decl. Ex. A. Plaintiffs have not identified *any* product that Professor Mercier works on that competes with the asserted technology in this action, and that is because he does not.

Plaintiffs vaguely assert that Professor Mercier's research with UCSD's Center for Wearable Sensors and with NeuroVigil should disqualify him. Plaintiffs have not carried their burden of demonstrating that either of these organizations "compete" with Plaintiffs in the field of light-based physiological monitors or low power pulse oximeters.

First, UCSD's Center for Wearable Sensors does not compete with Plaintiffs. The Center is an academic and research-focused organization that is part of UCSD. It does not develop or commercialize any products. Ex. J ¶6. Professor Mercier, UCSD, and the Center do not develop any commercial applications or products in ***any*** technological field, much less in the specific area of light-based physiological monitoring and low power pulse oximeters that is at issue here. *Id.* Although the Center receives funding from several companies that are then considered "partners," these contributions are made on a donation basis. *Id.* ¶7. The Center pools the donations and distributes funds in response to requests for proposals submitted by UCSD faculty. *Id.* Plaintiffs specifically complain about the Center's partnership with Dexcom, Samsung, and Google. Samsung and Google are not current industry partners with the Center. *Id.* ¶8. Dexcom is a current partner of the Center, but that company focuses on glucose monitoring via wearable micro-needle platforms involving electrochemical sensing. *Id.* This technology is not at issue here.

Second, NeuroVigil does not compete with Plaintiffs in the technology at issue in this case. As an initial matter, Professor Mercier is a member of NeuroVigil's scientific board, and is not an officer, director, or employee of NeuroVigil, and is not involved in competitive decision making for NeuroVigil. Ex. J ¶9. But, more importantly, for purposes of this litigation NeuroVigil is not a competitor because Plaintiffs' brain-monitoring technology is not at issue in this case. Plaintiffs assert that

they produced confidential documents regarding their own brain-monitoring technology
Sedline®, but Plaintiffs do not argue that any of the Sedline® documents are actually
relevant to this action or that Professor Mercier would need access to these documents.
Given that Professor Mercier has no need to review such irrelevant documents, his
affiliation with NeuroVigil is not a basis for disqualification.  Moreover, Apple is
willing to certify that it will not provide Professor Mercier with any Sedline®
documents that Plaintiffs identify to Apple.

### 3.    There Is No Risk of Misuse of Plaintiffs' Confidential Information

Given that there is no overlap between the technology at issue in this case and
Professor Mercier's work at the Center and for NeuroVigil, there is no risk of his misuse
of Plaintiffs' confidential information.  Further, Professor Mercier attested that he read
the protective order and signed its Exhibit A, acknowledging and declaring that he
agrees to be bound by its terms and consent to the jurisdiction of said Court for the
purpose of any proceeding to enforce the terms of the Order.  Ex. J ¶10.  As any expert
should, he takes this acknowledgement very seriously and will abide by his obligations.
*Id.*   Under these circumstances, allowing Professor Mercier access poses no risk of
misuse of Plaintiffs' confidential information. *See, e.g.*, *Olin*, 2019 WL 5802020, at *3
("If [the expert] signs the acknowledgment and agreement to be bound that is attached
. . . to the Protective Order, there is no reason to think there is a risk of harm from
disclosure.").

### 4.    Apple Properly Responded To Plaintiffs' Requests For Additional Information

Plaintiffs further argue that the Court should preclude Professor Mercier not
based on any analysis of his work and potential for misuse of Plaintiffs' information,
but because Apple purportedly refused to provide information requested by Masimo.
The protective order requires Apple to provide "information regarding the person's
professional activities reasonably requested," Dkt. 67, ¶ 9.2.  Plaintiffs' requests were
not reasonable: they broadly demanded information regarding *all* the Center's current

and planned work, regardless of whether it relates to the technology in this case—and regardless of whether Professor Mercier is involved in any way.  Specifically, Plaintiffs requested Apple to "identify and describe each physiological parameter for which the Center is currently developing or researching monitoring technology, as well as each physiological parameter for which the Center plans to develop or research monitoring technology in the future, either on its own or in collaboration with an 'industry partner.'"  Ex. C.  Apple explained that this request was overbroad, and during the parties' meet-and-confer, Plaintiffs were unable to articulate how the Center competes with them.  *Id.*

### 5.   Apple Has a Right To Defend Itself and Choose Its Experts Over Plaintiffs' Baseless Objections

Plaintiffs incorrectly assert that Apple must show there is a "a dearth of experts in the field or that Apple will be seriously prejudiced by the exclusion of this particular expert."  § II.A.5, *supra*.  The two cases Plaintiffs cite address prosecution bars, which have a specific burden-shifting framework not applicable here.  *See Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*, 2011 WL 197811, at *5 (N.D. Cal. Jan. 20, 2011); *Emerson Electric Co. v. Sipco, LLC*, 2016 WL 6833741, at *5 (N.D. Cal. Nov. 21, 2016) (outlining framework).  Indeed, the court in *In re MacBook Keyboard Litigation* specifically found that the prosecution bar analysis of *Applied Signal* does not apply to determining whether an expert is a "competitor" of a party.  No. 5:18-CV-02813-EJD, 2022 WL 1604753, at *5 (N.D. Cal. Jan. 25, 2022).

Where Plaintiffs have shown no likelihood of misuse by Professor Mercier, it would be highly prejudicial to Apple for Professor Mercier to be disqualified.  In the first trial, Plaintiffs sought over a billion dollars in damages, and that number will only increase with Plaintiffs' patent claims.  Apple is entitled to put on a defense supported by experts it believes are most capable of conveying highly technical information to a jury.  *See Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, No. 95-20169 RMW (EAI), 1996 WL 908654, at *3 (N.D. Cal. Oct. 28, 1996).  Further,

1    Plaintiffs requested and received a short discovery period in this case, and Apple did not

2    delay in disclosing Professor Mercier.  Accepting that Plaintiffs can disqualify Professor

3    Mercier on such a thin showing of "competition" would essentially give them veto

4    power over any expert working the general field of light-based physiological monitors

5    and low power pulse oximeters.   *See Codexis, Inc.*, 2017 WL 5992130, at *8.  The

6    balance between the risk of harming Apple's ability to put on its defenses and the

7    minimal to no risk of inadvertent disclosure of Plaintiffs' information weighs far in

8    Apple's favor.  *See Isis Pharms., Inc.*, 2013 WL 3367575, at *3 (explaining the need to

9    "balance the risk of disclosure to competitors against the risk of damaging the claims or

10   defenses of the party seeking access").

11   / / /

12   / / /

13   / / /

-18-

Respectfully submitted,

| | |
|---|---|
| Dated:  June 30, 2024 | By: */s/ Kendall M. Loebbaka*<br>Joseph R. Re<br>Stephen C. Jensen<br>Sheila N. Swaroop<br>Brian C. Horne<br>Brian C. Claassen<br>Mark D. Kachner<br>Adam B. Powell<br>Kendall M. Loebbaka<br>Daniel P. Hughes<br>Knobbe, Martens, Olson & Bear, LLP<br><br>Attorneys for Plaintiffs<br>Masimo Corporation and<br>Cercacor Laboratories, Inc. |
| Dated:  June 30, 2024 | By: */s/ Nora Passamaneck (w/ permission)*<br>Mark D. Selwyn<br>Joshua H. Lerner<br>Nora Passamaneck<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br><br>Kenneth G. Parker<br>HAYNES AND BOONE, LLP<br><br>Brian A. Rosenthal<br>GIBSON, DUNN & CRUTCHER LLP<br><br>Attorneys for Defendant Apple Inc. |

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

Dated:  June 30, 2024          By: */s/ Kendall M. Loebbaka*

Kendall M. Loebbaka