Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER PRECLUDING DEFENDANT FROM DISCLOSING PLAINTIFFS' CONFIDENTIAL MATERIALS TO DR. PATRICK MERCIER**<br><br>Date: 7/25/24 / 10:00 a.m.<br>Discovery Cutoff: 7/15/2024<br>Pre-Trial Conf.: 10/28/2024<br>Trial: 11/05/2024<br><br>Judge: Judge James V. Selna<br>Mag. Judge John D. Early |

## INTRODUCTION

Apple does not undermine the conclusion that Dr. Mercier is a director of two organizations that compete with Masimo and poses an unreasonable risk of misuse or inadvertent disclosure. Apple also fails to excuse its refusal to provide the information that Masimo reasonably requested about Dr. Mercier's board service. Nor has Apple shown prejudice or any unique qualities about Dr. Mercier not possessed by alternatives. Dr. Mercier should be precluded from receiving Masimo's confidential materials.

## ARGUMENT

### A. Apple Ignores The Evidence Showing That Dr. Mercier Is A Director Of A Competitor And Precluded Under The Protective Order

Apple fails to address or overcome the evidence showing that the Center develops non-invasive physiological monitoring technology, systems, and devices that compete with Masimo. Joint Stipulation ("JS") 7-8; Loebbaka Decl., Exs. B, E, and F. Apple argues that the Center "does not develop or commercialize any products," and cites Dr. Mercier's declaration in support. JS at 5, 15. But Dr. Mercier's declaration does not support Apple's assertion. Dr. Mercier stated that the Center is merely "academic and research-*focused*" and does not "use [its] academic research" to "develop any commercial products." Passamaneck Decl., Ex. J ¶ 6. Notably, Dr. Mercier does not testify that the Center is **solely** academic and develops **no** commercial products or applications. *See id*. Nor could he. Indeed, in public statements, the Center describes itself as a "commercialization engine with [a] lab-to-market focus" on "real-world applications." Loebbaka Decl., Exs. B, E. Apple ignores these public statements.

Apple also argues that competition must involve the "asserted technology," and that the technology at issue here is limited to "light-based physiological monitoring and managing power consumption of low power pulse oximeters." JS at 5, 14-15. But the discovery to which Dr. Mercier would be exposed extends beyond the trade secrets and patents that remain at issue. Dkt. 1, Exs. 9, 10. Apple does not argue otherwise.

Moreover, the Protective Order identifies the relevant technology in its

prosecution bar. Dkt. 67, § 10. Under the prosecution bar, a receiving party is precluded from participating in prosecution activities in the field of non-invasive monitoring. Dkt. 67, § 10. Apple negotiated and already agreed to the scope of the prosecution bar. And the court in *Alta,* on which Apple relies (JS at 5), also looked to the prosecution bar to interpret "competitor." *Alta Devices, Inc. v. LG Elecs., Inc.*, 2018 WL 5023373, at *1 (N.D. Cal. Oct. 16, 2018). The evidence shows that Masimo and the Center compete in the field of non-invasive monitoring technology. *See* JS at 8-10.

Apple and Dr. Mercier also narrowly focus on Dr. Mercier's individual "work" rather than the Center's. For example, in his declaration, Dr. Mercier states that, "I have not worked with any companies to develop optical sensors for commercial applications or products." Passamaneck Decl., Ex. J, ¶ 5. But the exclusion in the Protective Order applies on a company-wide basis and is not limited by an individual's work at the company. *See* Dkt. 67, ¶ 9.2(c) (excluding any "officer, director, or employee of . . . a competitor"). And, regardless, Dr. Mercier is a director and not simply an employee of the Center. Apple and Dr. Mercier provide insufficient assurances regarding the Center's work. Thus, Apple and Dr. Mercier fail to establish that the Center has not or will not work with any companies to develop competing products.

Apple attempts to dismiss the Center's relationship with Samsung and Google, which offer wearable products for non-invasive physiological monitoring that compete with Masimo. Loebbaka Decl., Ex. D ¶ 3. Apple argues that Samsung and Google "are not current industry partners with the Center." JS at 15. But this assertion is inconsistent with the Center's public statements, which describe Samsung and Google as current industry partners. Loebbaka Decl., Exs. B, E. Moreover, the Protective Order also precludes experts who anticipate a prohibited relationship with a competitor, Dkt. 67, § 9.2(c), and Apple and Dr. Mercier do not assert that the Center will not partner with Samsung or Google in the future. *See* JS at 15; Passamaneck Decl., Ex. J, ¶ 8.

Finally, Apple relies on *Codexis* and *Olin*, JS at 13-14, but those cases are inapposite. In *Codexis*, the court found insufficient technological overlap between a

disclosing party and a proposed expert because the disclosing party manufactured and sold engineered enzymes while the proposed expert worked in the cosmetics space and sold software.  *Codexis*, 2017 WL 5992130, at *8.  Here, Masimo and the Center develop competing non-invasive sensors for physiological measurements.  *See* JS at 7-8.  In *Olin*, the court agreed with the objecting party and precluded one expert as posing too much of a risk because he worked for a competitor, consistent with Masimo's position here.  *Olin*, 2019 WL 5802020, at *3.  The court permitted disclosure to a different expert, but only because the expert had stopped working for the competitor seven years earlier.  *Id*.  In contrast, Dr. Mercier is a Director at the Center today.

### B. Apple Fails To Rebut That Dr. Mercier's Role And Work At The Center And NeuroVigil Presents An Unreasonable Risk Of Misuse And Inadvertent Disclosure

Even if Dr. Mercier were not a director of a competitor, his role and work at the Center and NeuroVigil presents an unreasonable risk of misuse or inadvertent disclosure of Masimo's confidential information.  *See supra* Part A; JS 8-9.  Dr. Mercier acknowledges he is a board member of NeuroVigil and reviews and evaluates NeuroVigil's non-invasive brain monitors.  Passamaneck Decl., Ex. J, ¶ 9.  Apple does not dispute that Masimo and NeuroVigil develop and sell competing non-invasive brain monitoring technology that relies on EEG.  *See* JS at 15-16.  Instead, Apple asserts that "for purposes of this litigation" there is no competitive issue "because Plaintiffs' brain-monitoring technology is not at issue in this case."  JS at 15-16.  But the parties' status as competitors does not depend on the scope of this litigation.  Masimo's SedLine® technology and product relies on non-invasive monitoring sensors, which is within the scope of relevant technology outlined in the Protective Order's prosecution bar.  And Apple does not dispute that in response to its broad discovery requests, Masimo produced thousands of documents relating to SedLine®.  *See id*.

Apple attempts to downplay the risk associated with Masimo's SedLine® materials by asserting that Dr. Mercier may not need to see those documents.  JS at 16.

But Masimo cannot control which documents Apple shows to its approved experts. Apple also suggests it is willing to refrain from providing Dr. Mercier with "any Sedline® documents that Plaintiffs identify to Apple." JS at 16. However, a search of Masimo's document production database identified 33,936 documents that refer to Masimo's SedLine®. Apple's suggestion is thus impractical.

Apple asserts that Dr. Mercier has agreed to be bound by the Protective Order and thus "poses no risk of misuse of Plaintiffs' confidential information." JS at 16. But "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) (affirming preclusion).

Apple also asserts that it would be prejudiced if Dr. Mercier were precluded because he is well qualified, the damages at issue in this action are significant, and because Masimo "requested and received a short discovery period." JS at 17-18. But Masimo has established the risk of harm is significant, and none of Apple's asserted considerations are persuasive. First, Apple has not established that Dr. Mercier is uniquely qualified or that it needs Dr. Mercier in particular. *See Olin*, 2019 WL 5802020, at *3. Second, the damages at issue does not reduce the risk of harm from misuse or inadvertent disclosure. Third, Apple has been aware of the deadlines and its alleged need for Dr. Mercier for months. JS at 11-12. Apple is responsible for any inconvenience associated with disclosing Dr. Mercier near the deadline for opening expert reports. Apple should not be permitted to benefit from its own delay.

**C. Apple Fails To Justify Its Refusal To Provide Requested Information**

Apple asserts that Masimo's request for additional information regarding Dr. Mercier's board service was unreasonable because it sought information beyond "the technology at issue in this case." JS at 5-6, 16-17. But, again, Apple relies on an overly narrow definition of relevant technology. *Supra* Part A. Masimo's request tracked the scope of relevant technology, and Apple should have provided the requested information. Dkt. 67, § 9.2(c).

# CONCLUSION

For the foregoing reasons and the reasons explained by Masimo in the Joint Stipulation, Masimo respectfully requests the Court grant a protective order precluding Apple from disclosing Masimo's confidential materials to Dr. Mercier.

Respectfully submitted,

Dated: June 30, 2024

By: /s/ Kendall M. Loebbaka
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Brian C. Claassen
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes
Knobbe, Martens, Olson & Bear, LLP

Attorneys for Plaintiffs
Masimo Corporation and Cercacor Laboratories, Inc.