MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel:  650.858.6000 / Fax:  650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.:  202.663.6000 / Fax:  202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION TO CONFIRM THE CURRENTLY-SCHEDULED NOVEMBER 2024 TRIAL DATE FOR THE CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE PATENT INFRINGEMENT CLAIMS**<br><br>Judge:             Judge James V. Selna<br>Hearing:           8/5/24<br>Discovery Cutoff:  7/15/24<br>Final Pre-Trial Conf.: 10/28/24<br>Trial:             11/5/24 |

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)

# TABLE OF CONTENTS

A. Argument ...................................................................................................... 2

    1. Judicial Economy Does Not Favor Delaying For A Single Trial. ............. 2

    2. Separate Trials Would Not Prejudice Plaintiffs. ........................................ 4

    3. Further Delay Of The Retrial Will Prejudice Apple. ................................. 7

    4. Plaintiffs' Claims Are Plainly Separable, And Indeed Have Already Been Tried Separately. .................................................................................. 9

    5. Separate Jury Trials Will Reduce Jury Confusion. .................................. 11

    6. Plaintiffs' Counsel's Trial Schedule Does Not Support A Stay Of The Scheduled Retrial. ............................................................................. 13

B. Conclusion ................................................................................................... 13

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. v. Cnty. of San Bernardino*,
  2023 WL 9646224 (C.D. Cal. Dec. 28, 2023) ...................................................... 7

*Audio MPEG, Inc. v. Dell Inc.*,
  254 F. Supp. 3d 798 (E.D. Va. 2017) ................................................................. 11

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) ..................................................................... 10, 11

*Clinton v. Jones*,
  520 U.S. 681 (1997) ............................................................................................. 8

*Davis & Cox v. Summa Corp.*,
  751 F.2d 1507 (9th Cir. 1985) .......................................................................... 2, 3

*Indus. Hard Chrome, Ltd. v. Hetran, Inc.*,
  2001 WL 128156 (N.D. Ill. Feb. 9, 2001) ....................................................... 3, 12

*Intel Corp. v. Broadcom Corp.*,
  173 F. Supp. 2d 201 (D. Del. 2001) ..................................................................... 4

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
  2013 WL 2099739 (D. Utah May 14, 2013) .............................................. *passim*

*Ormco Corp. v. Align Tech.*,
  463 F.3d 1299 (Fed. Cir. 2006) ............................................................................ 5

*Pagtalunan v. Galaza*,
  291 F.3d 639 (9th Cir. 2002) ................................................................................ 8

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  252 F. Supp. 3d 537 (E.D. Va. 2017) ........................................... 3, 4, 10, 11, 12

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
  683 F.3d 1356 (Fed. Cir. 2012) .......................................................................... 11

**Statutes**

35 U.S.C. § 102 ........................................................................................................ 9

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR
CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
ii

Wilmer Cutler
Pickering Hale
and Dorr LLP

35 U.S.C. § 103 ................................................................................................................9

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR
CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)

iii

In April 2023—nearly fifteen months ago—this Court held a trial on Plaintiffs' trade secret and patent ownership claims (the "retrial claims"), for which Plaintiffs sought billions from Apple. That trial ended in a mistrial because a single juror held out for Plaintiffs; all other jurors, after hearing the month-long presentation of evidence, were on Apple's side. Dkts. 1713, 1714. Since then, Apple has tried to return to a retrial as quickly as possible, beginning by proposing a retrial in 2023. Apple's interest in a speedy retrial has been motivated by a desire to avoid the passage of more time from the events that are the focus of Plaintiffs' claims. Even from the time of the original trial, key Apple witnesses have retired, and the retrial evidence grows more stale every day. It is long past time to bring these claims to closure.

Yet at every turn, Plaintiffs have delayed retrying their own claims. Plaintiffs should not be permitted to delay any longer. The retrial should take place this November as scheduled—and as the parties and the Court have planned for months. The current trial date is already nineteen months after the original trial. The retrial evidence—which relates to events from over a decade ago—is at risk of degradation, and there is no cause for further delay that would compound the prejudice to Apple.

Plaintiffs' opposition is simply another attempt at delay. In particular, Plaintiffs try to tie the retrial claims to separate patent-infringement claims that will not be ripe for trial in November because of Plaintiffs' own conduct—namely, their untimely service (on July 5, 2024) of a new set of 864-page-long infringement contentions. Plaintiffs' foot-dragging led the Court to request a Special Master to assess whether the contentions asserted new infringement theories—a process that will prevent the patent-infringement claims from being ripe for trial in November. It is because of Plaintiffs' behavior that it is necessary to bifurcate the patent-infringement claims—which, until a few months ago, were already on a separate track—to allow them to be tried when ripe for trial, while allowing the currently-scheduled November trial to proceed with the retrial claims.

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE No. 8:20-cv-00048-JVS (JDEx)
1

Wilmer Cutler Pickering Hale and Dorr LLP

Plaintiffs make several (meritless) arguments against allowing the retrial to proceed as scheduled in November. But they do not dispute—nor could they—that the retrial claims are poised to be taken "off the shelf" because they are "ready to go." Ex. 1 [7/12/24 Hr'g Tr.] at 18:1-11. The parties and the Court have been reserving November for trial for nearly ten months, and holding that proceeding as scheduled will bring the retrial claims to verdict before Thanksgiving. Apple is not aware of, nor have Plaintiffs identified, any case where a Court has declined to bifurcate in such a scenario—i.e., where already-tried-once claims are ready for a long-scheduled retrial and unrelated claims are not ripe for trial. As discussed below, courts confronted with similar facts have done exactly what Apple is requesting here: try the ripe claims and not delay them further until other, different claims are ready for trial.

Accordingly, Apple respectfully requests that the Court hold the November trial as scheduled, and in that trial bring the retrial claims to final resolution. The patent-infringement claims can be tried later when they are ready for trial.

### A. Argument

#### 1. *Judicial Economy Does Not Favor Delaying For A Single Trial.*

Plaintiffs wrongly argue that judicial economy requires a single, consolidated trial of both the retrial claims and the patent-infringement claims. Dkt. 2042-1 ("Resp. Br.") 3-4. This ignores, of course, that the parties have already tried the retrial claims, which are "ready to go," without the patent-infringement claims for which discovery is incomplete. Under very similar circumstances, the Ninth Circuit has held that separate trials "serve[] judicial efficiency" by preventing "needless[] … delay[]" for claims that are ready for trial. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985) (affirming district court order for separate trials where "the parties had completed discovery on the [first set of] issues, [but] discovery on the [second set of] issues was not finished," and "[w]ithout the severance order, the trial of the [first set of] issues would needlessly have been delayed"). The facts here weigh even more strongly in favor of holding the November trial, given the parties have already tried the retrial claims once

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR
CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
2

before, and the retrial evidence is becoming more stale with every passing day. That Ninth Circuit precedent thus strongly militates in favor of proceeding in November with the claims that will have been waiting nineteen months for retrial, rather than indulging Plaintiffs' delay tactics.

Plaintiffs argue that bifurcation should be denied based on their assumption that a first trial on retrial claims would not "eliminate, or even simplify, a second trial." Resp. Br. 3-4. In reality, numerous courts have granted bifurcation on independent and separable claims, such that the outcome of the first trial would not necessarily eliminate the need for a second. *See, e.g.*, *Davis & Cox*, 751 F.2d at 1517 (affirming separate trials on separable issues); *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 2013 WL 2099739, at *1 (D. Utah May 14, 2013) (bifurcating plaintiff's "patent claims from the non-patent claims" that included trade secret misappropriation claims, and explaining the nonpatent claims "are 'clearly separable' because they involve different facts and legal elements"); *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 2001 WL 128156, at *2 (N.D. Ill. Feb. 9, 2001) (bifurcating plaintiffs' fraudulent conveyance claims from their contractual claims); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 252 F. Supp. 3d 537, 550 (E.D. Va. 2017) (splitting case into three proceedings because the "case presents three different cases: an antitrust case; a trade secrets case; and a contract/breach of warranty case. Each of these, under the forecast facts and the known legal principles applicable to each, is complex in its own right").

Moreover, contrary to Plaintiffs' assumption (Resp. Br. 3-4), separate trials here would substantially streamline the issues presented to both juries and will be easier to schedule and manage. A sprawling trial on disparate and complex trade secret, trade-secret damages, patent-inventorship, patent-infringement, patent-validity, and patent-damages claims would pose considerable "trial management problems and difficulty in presenting understandable instructions," whereas conducting separate trials would "effectuate efficiencies in trial presentation and case management that will *offset* any

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR
CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
3

inefficiency created by having [multiple] trials." *Steves & Sons*, 252 F. Supp. 3d at 550-551 (separating case into three separate trials).[1] Other judicial-economy considerations are at worst neutral. While on one hand there will be two versions of certain events like jury selection, on the other hand the retrial can easily be completed in November before Thanksgiving, leaving a shorter patent-infringement trial to occur when those claims are ripe. Importantly, these two shorter trials will likely be easier for the Court and each jury to complete without interruption than a single longer and more-complicated trial. Dkt. 2031-1 ("Mot.") 8-9; *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 205 (D. Del. 2001) (noting that the court had previously separated infringement claims for five asserted patents into two trials "[i]n order to simplify the issues before the jury and to shorten the length of the jury trial").

### 2. *Separate Trials Would Not Prejudice Plaintiffs.*

Plaintiffs' suggestion that bifurcation would "greatly prejudice" them (Resp. Br. 4, 6-8) is belied by the fact that the retrial claims have ***already been tried separately from*** the patent-infringement claims—and indeed, the parties did so at Plaintiffs' urging. When the patent-infringement claims were stayed because of IPR proceedings, Plaintiffs asked the Court to proceed forward with their trade secret and patent inventorship claims. Dkt. 209-1 at 24-25 (arguing that "staying the trade secret case would prejudice Plaintiffs. … There is no reason to delay Plaintiffs' ability to seek relief for such misappropriation"). At no point during or after the April 2023 trial did Plaintiffs object or argue they were prejudiced by omitting the patent-infringement claims—to the contrary, they argued for proceeding with the trade-secret and patent-ownership claims without the then-stayed patent-infringement claims. Later, in August and October 2023, the parties twice proposed dates for another trial on the retrial claims, *see* Dkts. 1913, 1925, and again Plaintiffs never suggested that retrial be delayed until their patent-infringement claims were ready, or that they would suffer prejudice from omitting the

---

[1] All emphasis is added unless otherwise stated.

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
4

Wilmer Cutler Pickering Hale and Dorr LLP

patent-infringement claims. For good reason: the truth is that there is no meaningful overlap between the retrial claims and the patent-infringement claims that could cause Plaintiffs prejudice by (again) trying the retrial claims separately.

Each of Plaintiffs' newfound grounds for prejudice is independently meritless.

***First***, Plaintiffs argue that a bifurcated trial would prejudice them because Apple intends to take inconsistent positions in the two trials. Resp. Br. 4-6. This is false. Plaintiffs' strained suggestion that Apple has taken divergent positions on the role of "battery life" relies on conflating two different issues. Specifically, Plaintiffs cherry-pick quotes that relate to, on one hand, how ***Apple engineers*** assess technical needs vis-à-vis battery life (which was relevant to the feasibility and undesirability of incorporating certain of Plaintiffs' alleged trade secrets), and, on the other hand, whether ***customers*** prioritize battery life as among other factors driving purchasing decisions (which Plaintiffs ostensibly believe is relevant to damages or invalidity).[2] Resp. Br. 4-6. Viewed in context, the quotes Plaintiffs rely upon are not inconsistent, and could be presented in trials involving the retrial claims, or the patent-infringement claims, or both. Apple's engineers have confirmed that Apple rejected certain ideas from Dr. Lamego because they were too power hungry. And Apple's corporate representative regarding consumer demand for battery life explained that Apple's "███████████████████████████████████████████████████████████████████████████████████████████████████████████████." Ex. 2 [Caldbeck Dep.] 18:21-20:22; *see also id.* 40:11-21; 117:20-118:4 ("████████████████████████████████████████████████████████."). Her further statements that only "████████████████" of customers have purchased the Apple Watch models offering double that 18-hour battery life, or that Apple does not understand customers to

---

[2] Apple disputes that "reducing power" or "preserving battery life," Resp. Br. 5, is coextensive with the '703 and '776 patents, which concern discrete solutions out of a constellation of methods. *See, e.g.*, Dkt. 2039-1 [Al-Ali Dep.] at 106:7-109:6, 154:22-156:1, 276:8-287:16; *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) (commercial success must be due to a "nexus [with] the claimed invention").

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
5

Wilmer Cutler Pickering Hale and Dorr LLP

make decisions based on battery *size* (as compared to battery life) are not at odds either with Apple's goal to provide its users with all-day battery or the fact that Apple's engineers would accordingly reject technical suggestions that unnecessarily consume power.

But even if there were any inconsistency (and there is not),[3] Plaintiffs have simple remedies. If Plaintiffs believe a witness in any trial (either the retrial on the retrial claims, or trial on the patent-infringement claims) is testifying inconsistently with prior positions, Plaintiffs can seek to impeach that witness, or play allegedly inconsistent deposition testimony. Likewise, if Plaintiffs believe Apple is taking inconsistent corporate positions at trial, Plaintiffs can raise that with the Court. Plaintiffs' speculation as to future inconsistencies is both unmerited and premature.

***Second***, Plaintiffs puzzlingly contend that they will be prejudiced "by further delaying the patent claims." Resp. Br. 6. Plaintiffs' suggestion that Apple has improperly delayed the adjudication of Plaintiffs' patent-infringement claims is doubly wrong. First, Plaintiffs are wrong to suggest that Apple's IPR petitions were a delay tactic. In truth, the IPR petitions were overwhelmingly successful on the merits, resulting in the Patent Office finding all asserted claims from twelve asserted patents unpatentable with just two exceptions: the claims from the '703 and '776 patents. Dkt. 1930 at 2-3.[4] Second, Plaintiffs are wrong to suggest that Apple is responsible for the recent interruption in the patent-infringement proceedings. It was Plaintiffs' choice to serve 864 pages of untimely infringement contentions on the eve of opening expert reports. And it was Plaintiffs that—when pressed by the Court on whether it could rule immediately (i.e., without further delay) on whether those contentions asserted new theories—indicated that a special master was needed before such a ruling could be made.

---

[3] Nor have Plaintiffs alleged any other potential inconsistency. They cannot, because the retrial claims and patent-infringement claims concern different factual issues.

[4] Some unasserted claims from U.S. Patent No. 10,588,554 also survived IPR, but Plaintiffs do not assert those claims now.

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
6

Wilmer Cutler Pickering Hale and Dorr LLP

Ex. 1 [7/12/24 Hr'g Tr.] 7:22-8:23.  Apple, in contrast, expressly stated that the Court could rule immediately, but deferred to the Court with regard to a special master.  *Id*.  The record thus shows the opposite of what Plaintiffs now contend.

In any event, bifurcation will not delay trial on the patent-infringement claims.  Those claims can be tried as soon as they are ready.  There is no support for Plaintiffs' contention that the need for separate pre- and post-trial briefing "would undoubtedly delay trial on the patent claim," Resp. Br. 6.  Indeed, bifurcation is likely to result in a ***faster*** trial on the patent claims as the Court and the parties would need only find a single week to schedule a trial on the patent-infringement claims; a joint trial is likely to require three to four weeks and, as experience has shown, will be much more difficult to schedule quickly.

### 3.     ***Further Delay Of The Retrial Will Prejudice Apple.***

Plaintiffs' argument that Apple's claims of prejudice are "trivial and unsupported" (Resp. Br. 7) ignores the real risks of further delay on claims that relate to events that occurred over a decade ago.  As Apple explained, it is significantly prejudiced by "[w]itnesses relocat[ing]," "memories and reliability … degrad[ing]," and "evidence … becom[ing] stale," *A.H. v. Cnty. of San Bernardino*, 2023 WL 9646224, at *4, 7 (C.D. Cal. Dec. 28, 2023), due to the passage of time since the relevant events occurred a decade or more ago.  Moreover, Plaintiffs cannot reasonably dispute that this delay harms Apple the most.  It was Apple that highlighted to the jury what live "witnesses actually said" (4/26/23 Trial Tr. [PM] 8:8-13), Masimo that relied heavily on the documentary evidence (Mot. 5; 4/25/23 Trial Tr. 97:8-24), and two of Apple's key trial witnesses (Hotelling and Russell-Clarke) who have retired, with no guarantee that Apple will be able to secure the testimony of retired employees in the future.  *Id*.

None of Plaintiffs' unfounded assumptions ameliorates the prejudice to Apple of delay.  ***First***, Plaintiffs assert that the patent-infringement claims are at equal risk of fading memories.  But that is no justification for delaying the trade secret and inventorship claims that are ready for trial.  In fact, as noted above, trying the retrial

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
7

claims first could *expedite* the trial on patent-infringement claims making it easier to schedule the patent-infringement trial (which will necessarily be much shorter). *See supra* at 3-4, 7. In addition, testimonial evidence (and witness credibility) is particularly crucial for the trade secret claims, as the patent-infringement claims have no knowledge requirement. *See, e.g.*, Dkt. 1715 [Jury Instructions] at 39-42 (requiring proof of Apple's "state of mind"). The patent-infringement claims thus do not depend on memories of interactions a decade ago, nor have any of Apple's fact witnesses for those patent-infringement claims already retired.

**Second**, Plaintiffs observe that some of Apple's cases did not involve bifurcation motions. Resp. Br. 7-8. This is a red herring—those cases were cited for the legal principle that delaying trial can cause prejudice to a party because memories can fade, witnesses can move and become unavailable, and evidence can become stale. Mot. 5. Plaintiffs do not explain why the nature of those harms would change depending on whether they were raised in the bifurcation context or (as in certain cases Apple cited) the context of a motion for continuance or stay. Indeed, Plaintiffs are effectively seeking a continuance/stay of the trade secret and inventorship claims, making those cases more relevant.

**Third**, Plaintiffs blithely suggest that witnesses for the retrial claims should simply "review their prior testimony." Resp. Br. 7. This is not a serious argument. If it were that simple, then courts would never cite the risk of failing memories as a consideration in scheduling trials. But, of course, human memories do fade, and courts accordingly seek to promptly schedule trials to avoid the risk of memory loss impairing fair adjudication of the merits. *Clinton v. Jones*, 520 U.S. 681, 707-708 (1997) (finding that "delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts"); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) (holding that unnecessary delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale").

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
8

### 4. *Plaintiffs' Claims Are Plainly Separable, And Indeed Have Already Been Tried Separately.*

Claims are "separable" if they "involve different facts and legal elements." *Lutron*, 2013 WL 2099739, at *1. Plaintiffs' claims address plainly separate issues.

The retrial claims and patent-infringement claims involve manifestly different legal elements, and Plaintiffs do not contend otherwise. The retrial claims involve California trade secret law and patent inventorship law, whereas the patent-infringement claims involve patent infringement and validity law. Indeed, to the extent that there are any analogies to be drawn between trade secrets and patents, the substantive differences despite superficial linguistic similarity would only serve to confuse the jury. *Compare* Dkt. 1715 at 29-30 (describing meaning of "generally known"), *with* 35 U.S.C. §§ 102-103 (an invention is invalid if it was, e.g., "known or used by others … or patented or described in a printed publication").

The retrial claims and patent-infringement claims also involve different factual elements. The retrial claims involve factual allegations that (1) Apple misappropriated (via Dr. Lamego) purported technical trade secrets relating to demodulation, a short circuit, and a black foam test (Dkt. 1928 at 3; Dkt. 650-1 at ECF 42-48); and (2) Plaintiffs' employees should be named inventors on certain Apple patents. Plaintiffs did not seek damages for the inventorship claims and the only Apple Watch feature that Plaintiffs targeted for damages was the **Blood Oxygen feature**. Mot. 6. In contrast, the patent-infringement claims allege that Apple's power management algorithms infringe certain independent claims of two patents directed to changing the duty cycle of LEDs and claims depending therefrom.[5] *See* '703 patent, claims 1, 9; '776 patent, claims 1, 11. Plaintiffs do not dispute that the accused features for the patent-infringement claims

---

[5] Setting aside Plaintiffs' new attempt to characterize the April 2023 trial as being generically about both "heart rate" and "blood oxygen," Resp. Br. 9, the claimed inventions in the '703 and '776 patents bear no resemblance to the purported technical trade secrets. *See* Dkt. 1937 at 3 (recognizing the "limit[ed] [] possible overlap between the patent and trade secret claims"); Dkt. 650-1 at ECF 42-48.

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
9

Wilmer Cutler Pickering Hale and Dorr LLP

***do not include the Blood Oxygen feature***, and instead comprise the "*Workout app*," the "*Background HR*" feature, and the "*irregular rhythm*," "*high heart rate notification*," and "*low heart rate notification*" features. Mot. 6-7.

Plaintiffs conclusorily assert that numerous fact witnesses are "relevant to both sets of claims," Resp. Br. 10, but do not attempt to explain why—of the nine Apple witnesses they listed—they deposed only two (Deidre Caldbeck and Steve Waydo) to obtain discovery regarding the patent-infringement claims. Masimo also asserts there may be some overlap in technical experts but that does not preclude trying the claims separately—the experts will simply have "given one opinion for the patent claims and a separate opinion for the non-patent claim." *Lutron*, 2013 WL 2099739, at *1 (holding that, in that scenario, expert's opinions did "not overlap and are separable"). Even if there were some degree of witness "overlap" causing some "witnesses … to be called twice," that "does not rise to the level of prejudice" to Plaintiffs. *Id*. Any overlapping witness testimony "will address different topics"—e.g., related to purported trade secrets, on one hand, or alleged patent infringement on the other—such that "the fact that the same witnesses will testify is of no real moment." *Steves & Sons*, 252 F. Supp. 3d at 549.

Plaintiffs' remaining attempts to link the retrial claims to their patent-infringement claims all fail. Plaintiffs suggest that "the same [Masimo] monitors and sensors combined practice" the purported trade secrets and asserted patents, Resp. Br. 11, but never explain the relevance of that allegation. Regardless, Plaintiffs would need to focus on different aspects of their products as practicing the purported trade secrets and asserted patents because the patents and trade secrets (necessarily) cover different ground. Dkt. 1937 at 3. Plaintiffs also argue that the "Masimo-Apple relationship" is somehow relevant to copying as a secondary consideration of non-obviousness. Resp. Br. 11. But copying requires a "nexus between the copying and the novel aspects of the claimed invention," *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356,

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE No. 8:20-cv-00048-JVS (JDEx)
10

1364 (Fed. Cir. 2012), and Plaintiffs do not identify any evidence regarding the "Masimo-Apple relationship," from the April 2023 trial or otherwise, relating to switching duty cycles or the amount of data blocks based on processing characteristics. In any event, some small degree of factual overlap does not preclude bifurcation. *Lutron*, 2013 WL 2099739, at *1; *Steves & Sons*, 252 F. Supp. 3d at 549; *Ciena Corp. v. Corvis Corp*. 210 F.R.D. 519, 520 (D. Del. 2002) (bifurcating patent-infringement claims and invalidity counterclaims).

In sum, Plaintiffs' suggestion that the degree of overlap between the retrial claims and the patent-infringement claims is significant is both a reversal of their prior position that the trade secret and patent ownership claims could be tried separately, and unsupported on the merits.

### 5. *Separate Jury Trials Will Reduce Jury Confusion.*

As described above (*supra* at 9-10) and in Apple's opening brief (Mot. 7-8), the retrial claims and patent-infringement claims involve different technical concepts, and different legal doctrines—each of which is also difficult and complex.[6] The technology at issue and doctrines of patent law and trade secret law are "matters of fact and issues of law that are not as intuitive to the average reasonable juror as more common actions such as actions for personal injury or breach of contract, would be." *Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 807 (E.D. Va. 2017) (granting bifurcation of patent claims and antitrust counterclaims to aid "juror comprehension," "(1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time"). Numerous courts have recognized the real-world problem of jury confusion in complex cases, a problem that cannot simply be waved away by reference to jury instructions or verdict forms, and

---

[6] Although Apple agrees that Plaintiffs' asserted patents "concern relatively straightforward" technology to a skilled artisan, Resp. Br. 12, at minimum the accused power management algorithms in the accused products are not straightforward, as evidenced by the 864 pages of supplemental infringement contentions Plaintiffs served.

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
11

Wilmer Cutler Pickering Hale and Dorr LLP

have granted bifurcation in similar cases to prevent it.  *See, e.g., Lutron*, 2013 WL 2099739, at *1 (bifurcating patent claims from trade secret misappropriation claims, and finding "[t]he most significant factor for the court, however, is based on the complexity of the case. The substantive differences and potential for juror confusion are appreciable"); *Ciena Corp.*, 210 F.R.D. at 520-521 (bifurcating patent case involving "complex technology" and five patents, to "ensure that the cases are resolved in a just manner by juries that understand the complex issues before them" "by presenting the evidence in a manner that is easier for the jurors to understand" and "limiting the number of legal issues the jury must address at any particular time"); *Steves & Sons*, 252 F. Supp. 3d at 550 (separating antitrust, trade secret, and contract claims because certain claims were "complex in one way" and the "trade secret issues are complex in other ways," such that each "is complex in its own right"); *Indus. Hard Chrome,* 2001 WL 128156, at *1 (bifurcating claims that required "completely different elements and proofs" and "if all seven claims were tried together, a significant likelihood of jury confusion and prejudice would be presented").

Nothing Plaintiffs say alleviates those concerns.  Notably, Plaintiffs observe that the retrial claims include patent inventorship claims (which is not at issue in the patent-infringement claims).  Resp. Br. 11.  Those additional inventorship claims do not simplify matters—they complicate them.  The inventorship and ownership allegations raise different questions of facts and law related to ***Apple*** patents (rather than the Masimo patents at issue in the infringement claims).  Adding yet another set of claims to a witches' brew of patent facts and law that a consolidated trial jury must potentially digest—including direct infringement, indirect infringement, doctrine of equivalents, willfulness, invalidity, subject matter eligibility, marking, and damages—can only increase complexity and confusion.

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
12

### 6. *Plaintiffs' Counsel's Trial Schedule Does Not Support A Stay Of The Scheduled Retrial.*

Plaintiffs suggest in the background section of their brief (although not the argument section) that the proximity of the current November trial date and the parties' separate Delaware trial on Apple's patent-infringement claims is "unfair[]" to Plaintiffs. Resp. Br. 2. But Plaintiffs fail to explain why it would be unfair for them now to proceed to trial only on the retrial claims when they previously advocated to include the patent-infringement claims on the same timeline. Plaintiffs were aware of the likely trial date in Delaware *before* they advocated earlier this year that this Court keep the fall trial date and add to it Plaintiffs' patent-infringement claims. Ex. 3 [3/20/24 D. Del. Hr'g Tr.] at 5:22-6:5 ("[The Court:] I'm inclined to find that the most reasonable and appropriate manner of proceeding is to have a five-day trial here beginning on October 21st of 2024."); Dkt. 1943 at 3 (two days later, Plaintiffs urging this Court to adopt a November 5, 2024 trial date). Plaintiffs cite no case where a court declined to bifurcate—or ordered a continuance on claims ready for trial—because the long-scheduled trial date was less convenient for counsel. Plaintiffs also suggest that Apple "believes its chances of succeeding are higher if each jury is unaware of the scope of Apple's infringement and misappropriation." Resp Br. 1. But all but one juror in the first trial concluded that there was no misappropriation at all. Dkts. 1713, 1714. Regardless, whether Apple misappropriated Masimo's trade secrets is legally irrelevant to whether it infringed Masimo's patents (Apple did neither), which claim different subject matter. Ultimately, Masimo's insinuations about Apple's motives and attempts to blur the lines between different legal doctrines are meritless and irrelevant.

### B. Conclusion

The Court should maintain the current November 5, 2024 trial date for the trade secret and patent ownership claims, and bifurcate Plaintiffs' patent-infringement claims and the defenses thereto for a separate trial when such claims are ready for trial.

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE No. 8:20-cv-00048-JVS (JDEx)
13

| | |
|---|---|
| Dated: July 30, 2024 | Respectfully submitted, |
| | MARK D. SELWYN<br>AMY K. WIGMORE<br>JOSHUA H. LERNER<br>JOSEPH J. MUELLER<br>SARAH R. FRAZIER<br>NORA Q.E. PASSAMANECK<br>THOMAS G. SPRANKLING<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br><br>BRIAN A. ROSENTHAL<br>GIBSON, DUNN & CRUTCHER LLP<br><br>KENNETH G. PARKER<br>HAYNES AND BOONE, LLP<br><br><br>By: */s/ Mark D. Selwyn*<br>      Mark D. Selwyn<br><br>*Attorneys for Defendant Apple Inc.* |

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE NO. 8:20-cv-00048-JVS (JDEx)
14

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Apple, Inc., certifies that this brief contains 4,496 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 30, 2024

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: */s/ Mark D. Selwyn*

Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

Wilmer Cutler Pickering Hale and Dorr LLP

APPLE'S REPLY ISO MOT. TO CONFIRM CURRENTLY-SCHEDULED TRIAL DATE FOR CLAIMS FIRST TRIED IN APRIL 2023, AND TO BIFURCATE THE SEPARATE CLAIMS
CASE No. 8:20-cv-00048-JVS (JDEx)
15