1  MARK D. SELWYN, SBN 244180
      mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
      thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
      HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, California 94306
5  Tel:  650.858.6000 / Fax:  650.858.6100

6  JOSHUA H. LERNER, SBN 220755
      joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
   HALE AND DORR LLP
8  1 Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
      amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
   HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
   Washington, DC 20037
13  Tel.:  202.663.6000 / Fax:  202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16
17  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**
18

19  MASIMO CORPORATION,
   a Delaware corporation; and
20  CERCACOR LABORATORIES, INC.,
   a Delaware corporation,

21              Plaintiffs,

22      v.

23  APPLE INC.,
   a California corporation,

24              Defendant.

25
26
27
28

|  |  |
|---|---|
| CASE NO. 8:20-cv-00048-JVS (JDEx) | |
| **APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' "UPDATED" AND "SUPPLEMENTAL" EXPERT REPORTS SERVED AUGUST 9, 2024** | |
| Date:  September 9, 2024[1] | |
| Time: 1:30pm | |
| Courtroom: 10C | |
| Pre-Trial Conference: Oct. 28, 2024 | |
| Trial: Nov. 5, 2024 | |

---

[1] Earlier today, Apple filed a proposed stipulation for expedited briefing and oral argument.

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:  617.526.6000 / Fax:  617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## **TABLE OF CONTENTS**

3    INTRODUCTION ................................................................................................ 1

4    BACKGROUND .................................................................................................. 2

5        A.    Plaintiffs' Prior Damages Theories .................................................... 2

6        B.    Plaintiffs' Misappropriation Theory For The Purported L5 Trade

7              Secret ................................................................................................... 4

8        C.    Plaintiffs Belatedly Serve New Trade Secret-Related Expert
              Reports ................................................................................................. 5

9    ARGUMENT ....................................................................................................... 6

10   I.    The "Updated" Kinrich Report Is Untimely And Improper. ............................... 6

11        A.    The "Updated" Report Improperly Seeks To Expand Mr. Kinrich's
              "Incremental Profits" Theory Beyond Apple Watch Series 6 And 7 ........ 6

12        B.    The "Updated" Report Improperly Discloses New Theories And
13              Calculations To Attempt To Evade Prior Criticisms ................................. 8

14        C.    The "Updated" Report Improperly Discloses A New Theory That
              Violates The Court's *In Limine* Order ...................................................... 11

15   II.   The "Supplemental" Madisetti Report Is Untimely And Improper. .................. 12

16
17   III.  The Proper Remedy Is To Strike The New Kinrich And Madisetti Reports
              In Their Entirety. .................................................................................................. 14

18   CONCLUSION .................................................................................................... 15

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

1

# **TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

4

*Akeva L.L.C. v. Mizuno Corp.*,

5

212 F.R.D. 306 (M.D.N.C. 2002)................................................................10

6

*Hologram USA, Inc. v. Pulse Evolution Corp.*, Case No. 2:14-cv-00772,

7

2016 WL 3965190 (D. Nev. July 21, 2016)................................................14

8

*Luke v. Fam. Care & Urgent Med. Clinics*,

9

323 F. App'x 496 (9th Cir. 2009)..........................................................11, 14

10

*Merchant v. Corizon Health, Inc.*,

11

993 F.3d 733 (9th Cir. 2021) .....................................................................14

12

*O'Connor v. Boeing North American, Inc.*, Case No, 2:97-cv-01554,

2005 WL 6035243 (C.D. Cal. Sept. 12, 2005).............................................10

13

*Reinsdorf v. Skechers U.S.A.*,

14

922 F. Supp. 2d 866 (C.D. Cal. Feb. 6, 2013)............................................10

15

*Smartflash LLC v. Apple Inc.*,

16

621 F. App'x 995 (Fed. Cir. 2015).............................................................15

17

*Wong v. Regents of Univ. of California*,

18

410 F.3d 1052 (9th Cir. 2005)...................................................................14

19

**RULES**

20

FRCP 26...............................................................................................................14

21

FRCP 37(c)(1)......................................................................................................14

22

23

24

25

26

27

28

# INTRODUCTION

In the nearly 16 months since the jury deadlocked 6-1 in Apple's favor on Plaintiffs' trade secret and patent-ownership claims, Plaintiffs have not once suggested that any aspect of their case needs to be updated. In fact, as recently as last month, Plaintiffs did not dispute the Court's recognition that those claims were "'ready to go'" and could be simply "taken 'off the shelf.'" *See, e.g.*, Dkt. 2052 at 13. And as this Court summarized in granting Apple's motion to bifurcate, "[f]act and expert discovery for these claims have been complete since prior to the April 2023 trial" and "[t]here is nothing left to do but retry the claims." Dkt. 2064 at 2.

Plaintiffs' position suddenly changed at 5pm on Friday, August 9, 2024, when—without warning or explanation—they served a so-called "updated" report from their damages expert and a so-called "supplemental" report from their technical expert. Ex. 1 [8/9/24 Kinrich Rpt.]; Ex. 2 [8/9/24 Madisetti Rpt.]. Both reports contain new theories related to the trade secret case that could have been raised before the close of fact and expert discovery years ago in 2022, and plainly reflect an improper attempt to patch flaws in their case revealed during the prior trial. Mr. Kinrich's "updated" damages report also violates several existing court orders by relying on additional products and information from an unrelated ITC proceeding.

This is not the first time that Masimo has (unsuccessfully) attempted to introduce new and untimely theories of the case through its experts. It is not even the first time that Masimo has served a belated Kinrich Report that purports to "provide updated calculations using the same methodology" as Mr. Kinrich's timely served October 2022 report. *See* Dkt. 1347 at 5, 9-10 (hereinafter "Kinrich Order"). As the Court explained in previously rejecting Masimo's prior improper attempts to inject untimely new theories under the guise of an "update," "[p]roper supplementation does not include an opportunity for an expert to 'revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein … after this court's deadline for doing so has passed.'" *Id.* at 9-10. This Court should apply the same rule here and exclude entirely

the "updated" and "supplemental" expert reports.

As the Court recently confirmed, the trade secret and patent ownership claims will be tried and finally resolved in November, and Apple respectfully requests that the Court reject Plaintiffs' latest attempt to disrupt that retrial. Apple has noticed a hearing at the earliest possible date (September 9th), but Apple submits that given the impending trial, an earlier hearing would be appropriate—or an early ruling with no hearing at all, given the compelling reasons for striking Plaintiffs' latest improper reports.

## BACKGROUND

### A.    Plaintiffs' Prior Damages Theories

Fact discovery related to Plaintiffs' trade secret claims closed on August 12, 2022, and expert discovery closed on December 12, 2022. Dkt. 627. Since then, Plaintiffs have tried repeatedly and without success to revamp the opinions of their damages expert, Jeffrey Kinrich.

Mr. Kinrich timely served an opening expert report in October 2022, in which he offered three theories of damages for the purported trade secret misappropriation: (1) lost profits; (2) unjust enrichment based on a "cost savings" model; and (3) unjust enrichment based on an "incremental profits" theory. *See* Kinrich Order at 6, 10. With respect to the first two theories, Mr. Kinrich's analysis relied on FRCP 26(a)(2)(c) disclosures from Plaintiffs' employees provided after the close of fact discovery. Those employee opinions were subsequently stricken. *See* Dkt. 1031. In November 2022, Mr. Kinrich served a supplemental report "purporting to remove any reliance on stricken material and provide updated calculations using the same methodology as his [opening] report but without regard to [the] stricken material." Kinrich Order at 5.

Two months before trial, the Court granted Apple's motion to exclude entirely Mr. Kinrich's lost profits and "cost savings" opinions from his opening report "because they [we]re premised on information this Court previously excluded." *Id.* at 5-8. At the same time, the Court struck Mr. Kinrich's supplemental report noting it would "not permit Plaintiffs to end run its [earlier] order by attempting to utilize facts and opinions

the Court previously excluded, just in different packaging" and that the supplemental report was "also untimely." *Id.* at 9. In doing so, the Court observed that "[p]roper supplementation does not include an opportunity for an expert to 'revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein … after the court's deadline for doing so has passed.'" *Id.* at 9-10.[2]

At the start of trial, Plaintiffs attempted to revive their lost profits theory, and the Court rejected Plaintiffs' request due to the "lack of various factual bases and admissible evidence." Dkt. 1516 at 6. Among other things, the Court found that Plaintiffs "failed to identify a timely disclosure of the subset of models/sales on which they intend to rely at trial" and "Apple would be prejudiced by having to defend against this vastly different, eleventh-hour position." *Id.* at 3.

As a result of the Court's orders, Plaintiffs had one theory of damages remaining to present before the jury: Mr. Kinrich's theory of unjust enrichment based on incremental profits. Specifically, Mr. Kinrich calculated gross profits he attributed to three features, including the Blood Oxygen feature that purportedly relates to Plaintiffs' alleged technical trade secrets, for two Apple Watch models: Series 6 and Series 7. Ex. 3 [Kinrich Op. Rpt.] at ¶ 8



; *id.* at ¶ 142 .[3] Indeed, Mr. Kinrich emphasized that he opined on incremental profits *Id.* ¶

---

[2] In a separate order, the Court held that Mr. Kinrich's reasonable royalty analysis improperly relied on information that was not properly disclosed during fact discovery. Dkt. 1076 at 5 ("Although Plaintiffs have been on notice regarding the importance of being forthcoming regarding their damages theories and contentions … the Court finds that, once again, Plaintiffs now attempt to explain away deficient disclosures.").

[3] Emphasis added unless otherwise noted.

Wilmer Cutler
Pickering Hale
and Dorr LLP

165; *see also* Ex. 4 [4/10/23 Trial Tr.] at 158:6-9 (Court acknowledging Mr. Kinrich's report ███████████████████████████████████████████████).

During trial, the Court rejected Plaintiffs' attempt to expand Mr. Kinrich's remaining unjust enrichment theory to include Watch products beyond Series 6 and 7. Ex. 5 [4/12/23 Trial Tr. AM] at 15:6-18. The Court "limit[ed] the unjust enrichment calculation to Series 6 and 7" because it had "great difficulty getting beyond th[e] limitations" of Mr. Kinrich's disclosures in his report and deposition. *Id.*

Following the Court's ruling, Mr. Kinrich testified to the jury that he valued Apple's Blood Oxygen feature at $1.85 billion based on 2020-2022 Watch sales by comparing Series 6 and 7 Watches (which had the feature) with Series SE (which did not). Ex. 6 [4/13/23 Trial Tr. AM] at 84-85, 87-95, 100-106. Mr. Kinrich did not provide a reason why any particular purported trade secret was worth $1.85 billion. *Id.* at 130:6-8. On cross examination, Mr. Kinrich conceded that he attributed ***all*** the difference in profit between the Series 6 and 7 on one hand and the SE on the other to three features: Blood Oxygen, ECG, and the Always-On retina display. *Id.* at 116-18, 130-31. He admitted he gave other technical distinctions between the models—such as the fact that Series 6 used a "very powerful computer chip … that is not in the SE," *id.* at 118—"zero value," *id.* at 124-27; *see also* Ex. 7 [4/25/23 Trial Tr.] at 28-31 (Apple's expert Shirley Webster critiquing Mr. Kinrich's failure to attribute value to the faster processor). The Court's FRCP 50(a) ruling later singled out Mr. Kinrich's failure to adjust for the numerous other differences in features between Series 6 and 7 and SE as a reason a jury could find Masimo had failed to meet its burden to establish damages. *See* Dkt. 1724 at 14 ("Whether [Kinrich] did enough to isolate [Apple's] profits (*e.g.*, by ignoring all other feature differences between the Series 6 and 7 and SE) … is a matter for the jury to decide.").

**B.    Plaintiffs' Misappropriation Theory For The Purported L5 Trade Secret**

In his pre-trial expert reports and at trial, Plaintiffs' technical expert Dr. Madisetti

1    opined that Apple (1) misappropriated L5 through the incorporation of a single short

2    circuit (or ███████████) in certain chips within Apple Watch known as ASICs, Ex. 8

3    [4/12/23 Trial Tr. PM] at 94:22-95:17, and (2) used L5 in each version of those ASICs

4    starting with the Series 1, including the ████████████████████████████████████

5    ████████████████████ *id.* at 28:17-29:7 (citing JTX-186, a ██████████████). He also

6    testified that Apple had purportedly disclosed L5 to one third party—"██████████████

7    ████████████████████ Ex. 8 [4/12/23 Trial Tr. PM] at 26:12-28:8.

### C.    Plaintiffs Belatedly Serve New Trade Secret-Related Expert Reports

8

9    In September 2023, the parties jointly suggested holding the trade secret retrial in

10   late October 2024. Dkt. 1925. Plaintiffs later proposed—and this Court ordered—a

11   combined trial on all of Plaintiffs' trade secret and patent law claims to start on

12   November 5, 2024. Dkt. 1944. Masimo never requested, and the schedule made no

13   provision for, reopening fact or expert discovery into the trade secret claims (in fact, the

14   schedule was directed exclusively to the Masimo's patent infringement claims). Dkt.

15   1944 at 2; *see also* 1943-1 (Plaintiffs' statement regarding trial schedule making no

16   reference to reopening trade secret discovery).

17   On August 1, 2024, the Court bifurcated the patent infringement claims from the

18   trade secret and patent ownership claims due to delays in the patent infringement

19   schedule associated with the need to appoint a technical advisor to assess an 864-page

20   set of new infringement contentions that Plaintiffs untimely served on July 5, 2024. *See*

21   *generally* Dkts. 2031-1, 2062. One reason for bifurcation was this Court's recognition

22   that the trade secret and ownership claims could be taken "off the shelf" and were "ready

23   to go" without further proceedings. Ex. 9 [7/12/24 Hr'g Tr.] at 18:1-11. Although

24   Plaintiffs opposed bifurcation, they did not dispute that the trade secret and ownership

25   claims were ready to be tried. Rather, they argued only that "some claims being 'ready'

26   does not justify bifurcation" and that (supposedly) "the patent claims are nearly ready

27   for trial too." Dkt. 2041-2 at 13 (capitalization omitted).

28   A week after the bifurcation order, Plaintiffs served a 165-page "updated" expert

report from Mr. Kinrich regarding damages and a 12-page "supplemental" expert report from Dr. Madisetti regarding a new misappropriation theory for purported L5 trade secret. Plaintiffs had never previously raised with Apple or the Court even the possibility that they would serve these reports.

One business day after receiving the reports, Apple requested a meet and confer regarding the instant motion to strike. Ex. 10 [Email Thread] at 5-6. As part of that meet and confer, Plaintiffs (1) attempted to justify Mr. Kinrich's new report as allegedly just "updat[ing] his calculations to include the most recent data," *id.* at 2, and (2) asserted that Dr. Madisetti's report was appropriate because it purports to rely on documents that Apple had first produced in June 2024 (in response to new fact discovery that Masimo had recently served in connection with its patent infringement claims) that Plaintiffs claim "reveal[ed] that Apple had ███████████████████████ ███████████████████████ Ex. 10 [Email Thread] at 1-2.

To date, Plaintiffs have not provided any legitimate explanation for why they waited until less than three months before retrial to serve these reports. Accordingly, and for the reasons below, both reports should be excluded.

## ARGUMENT

## I.   THE "UPDATED" KINRICH REPORT IS UNTIMELY AND IMPROPER.

At trial, Plaintiffs' evidence of damages was—at best—exceedingly thin. Mr. Kinrich's "updated" report is simply the latest in Plaintiffs' ongoing attempts to belatedly—and improperly—shore up the many flaws in their position. Because the "updated" report violates this Court's prior orders and contains untimely disclosed new theories, it should be stricken.

### A.   The "Updated" Report Improperly Seeks To Expand Mr. Kinrich's "Incremental Profits" Theory Beyond Apple Watch Series 6 And 7.

For the first time in this litigation, the "updated" Kinrich report opines on the purported value of the Blood Oxygen feature to Apple Watch models other than the Series 6 and 7—*i.e.*, the Series 8, Series 9, Ultra, and Ultra 2 Watches. Ex. 1 [8/9/24

1  Kinrich Rpt.] at ¶ 12, Ex. 1A-F.  This approach violates this Court's prior ruling, which

2  limited Plaintiffs to presenting an unjust enrichment "incremental profits" theory for

3  only the Series 6 and 7, Ex. 5 [4/12/23 AM Trial Tr.] at 15:6-18—precisely because Mr.

4  Kinrich's original report was explicitly limited to those models, *see supra* p.4.  As this

5  Court previously observed, Mr. Kinrich explained that he did "███████████████████

6  █████████████" and therefore did ████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████."

8  Ex. 3 [Kinrich Original Rpt.] at ¶ 165; *see also* Ex. 5 [4/12/23 AM Tr.] at 15:6-18 (Court

9  relying on paragraph 165 to limit scope of Kinrich's testimony).  Plaintiffs cannot simply

10  disregard this prior order, nor have they sought reconsideration of it.

11      When pressed on this issue during the parties' meet and confer, Plaintiffs' counsel

12  suggested it was appropriate to consider the later models because they were "new"

13  models not available at the time of Mr. Kinrich's opening report.  Ex. 10 [Email Thread]

14  at 2.  That is untrue.  Apple Watch Series 8 and Ultra (and the Apple Watch SE2 that

15  Mr. Kinrich compares them to) launched in September 2022—*before* Mr. Kinrich served

16  his opening expert report.  Ex. 1 [8/9/24 Kinrich Rpt.] at ¶ 12 ("Apple Watch Series 8,

17  Ultra, and SE2 all launched in September 2022").  Indeed, when producing updated sales

18  data prior to trial, Apple informed Plaintiffs that it would not produce data for Series 8

19  or Ultra, notwithstanding that such data existed, because "Plaintiffs have no disclosed

20  damages theory related to those products."  Ex. 11 [3/8/23 Email from Apple counsel]

21  at 1.  Specifically, Apple explained that "Mr. Kinrich's only remaining damages theory

22  is his unjust enrichment opinion concerning the profit differential between Apple Watch

23  Series 6/Series 7 and Apple Watch SE."  *Id.*  Plaintiffs did not take issue with this

24  position at the time (or, for that matter, at any time in the following 17 months before

25  last Friday).

26      Plaintiffs' attempt to now introduce a calculation of incremental profits

27  attributable to these later models is not only untimely but conflicts with Mr. Kinrich's

28  own opinions.  As Mr. Kinrich explained at trial, he compared Apple Watch Series 6

1   and SE because they " ████████████████████████████," ████████

2   ████████████████████ " ██████████████████████████████

3   ████████████████████████████████████████████████

4   ████ " Ex. 6 [4/13/23 Trial Tr. AM] at 87:12-89:10; Ex. 3 [Kinrich Op. Rpt.] at ¶ 153.

5   And defending the appropriateness of his methodology, he responded to criticism from

6   Apple's expert, Ms. Webster, that he should have compared Apple Watch Series 6 to

7   Series 5, Ex. 7 [4/25/23 Trial Tr.] at 28:7-23, by testifying that ██████████

8   ████████████████████████████████████████████████

9   ████████," which "████████████████████████████████," Ex.

10  6 [4/13/23 Trial Tr. AM] at 87:12-89:10.  Mr. Kinrich informed the jury that it was

11  ████████████████████████████████████████████████

12  ██████████████████████████████████████." *Id.*  But by

13  the time Series 8, Ultra, and the other newer models launched, the Blood Oxygen was

14  no longer a "new feature."  By Mr. Kinrich's own logic, therefore, the later models

15  would have said little about the value of Blood Oxygen.

**B.    The "Updated" Report Improperly Discloses New Theories And Calculations To Attempt To Evade Prior Criticisms.**

18  Even as to the Series 6 and Series 7 Apple Watch models, Mr. Kinrich's "updated"

19  report contains previously undisclosed opinions that should be excluded as untimely.

20  ***First***, Mr. Kinrich's updated report purports to consider—and value—far more

21  Apple Watch features than his original report and perform that valuation based on

22  different materials.  Specifically, Mr. Kinrich's October 2022 report relied on Apple's

23  marketing of Apple Watch Series 6 and SE at launch to (wrongly) conclude that the only

24  meaningful differences between the two products were the Blood Oxygen, ECG, and

25  Always-On Retina Display features.  Ex. 6 [4/13/23 Trial Tr. AM] at 124:2-128:20,

26  131:10-17; Ex. 3 [Kinrich Op. Rpt.] at ¶ 153.  Using the differences he identified

27  between Series 6 and SE based on this marketing, Mr. Kinrich utilized a subset of

28  Apple's surveys of Apple Watch buyers to ascertain the value these features purportedly

had for Series 6 and Series 7—even though there were numerous other differences between the Series 6 and 7 as compared to the SE. *See* Ex. 7 [4/25/23 Trial Tr.] at 29:17-30:16.    Mr. Kinrich provided an encapsulation of his approach during cross-examination:



Ex. 6 [4/13/23 Trial Tr. AM] at 116-117.  The cross-examination went on to discuss other features that Apple marketed heavily but that Mr. Kinrich had failed to take into account, such as the fact that the Series 6 had a more powerful chip than the Series SE:



*Id.* at 117:12-118:24.

The "updated" Kinrich report takes a dramatically different approach.  While Mr.

Wilmer Cutler
Pickering Hale
and Dorr LLP

Kinrich's October 2022 report assigned value to only *3* features (Blood Oxygen, ECG, Always-On Retina), the new report assigns value to *21 other* features. C*ompare* Ex. 3 [Kinrich Original Rpt.] at Ex. 5B, n.4 *with* Ex. 1 [8/9/24 Kinrich Rpt.] at Ex. 1C. This change is an obvious attempt to avoid cross-examination forcing Mr. Kinrich to admit he had given "zero value" to other features. Ex. 6 [4/13/23 Trial Tr. AM] at 124:2-128:20, 131:10-17; *see also* Dkt. 1901 at 14 (Court recognizing that "the shortcomings in Kinrich's economic-value testimony" included "assigning zero value to all other watch features in Series 6 and 7").

Plaintiffs' attempted do-over is vividly apparent when it comes to accounting for the value of the S6 chip discussed in the cross-examination excerpt discussed above. While Mr. Kinrich conceded at the April 2023 trial that he had given the S6 chip no value, he now provides a new, alternative damages calculation that specifically "███████████████████████████████" Ex. 1 [8/9/24 Kinrich Rpt.] at ¶ 17 n.21; *see also id.* at Ex. 1F (███████████████████████████). Such a change in opinion is clearly improper. The duty to supplement "does not give license to sandbag one's opponent[s]," *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 880 (C.D. Cal. Feb. 6, 2013), but that is precisely what Plaintiffs have done here— an approach that, if permitted, would "essentially allow for unlimited bolstering of expert opinions." *O'Connor v. Boeing North American, Inc.*, 2005 WL 6035243, at *9 (C.D. Cal. Sept. 12, 2005) (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306 (M.D.N.C.2002)).

***Second***, in calculating the purported value of the broader feature set he now considers, Mr. Kinrich relies on a broader set of surveys of Apple Watch buyers than he previously considered. Mr. Kinrich's original analysis considered Apple Watch buyer surveys from Q1FY2019 – Q1FY2021 but did not consider buyer surveys from Q2FY2021 – Q2FY2022, notwithstanding that they had been produced prior to his opening report. Ex. 7 [4/25/23 Trial Tr.] at 31:10-33:2. As Apple's expert explained, exclusion of these surveys caused Mr. Kinrich to "overstate[] the importance of the

1    blood oxygen feature." *Id.*  Mr. Kinrich's new analysis now includes the surveys he

2    previously omitted.  *See, e.g.*, Ex. 1 [8/9/24 Kinrich Rpt.] at Ex. 4A (considering buyer

3    survey responses from Q1FY2019 – Q2FY2024).

4         Once again, as this Court has previously observed, supplementation is not

5    intended to create a "loophole" for a party that "wishes to revise her disclosures in light

6    of her opponent's challenges to the analysis and conclusions therein … after the court's

7    deadline for doing so has passed." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F.

8    App'x 496, 500 (9th Cir. 2009); *accord* Kinrich Order at 9-10.  This Court applied this

9    rule once in rejecting another untimely Kinrich report—it should do the same here.

10        **C.    The "Updated" Report Improperly Discloses A New Theory That**

11            **Violates The Court's *In Limine* Order.**

12        Mr. Kinrich's report should be excluded for the additional reason that it relies on

13   the International Trade Commission's ruling in *Certain Light-Based Physiological*

14   *Measurement Devices And Components Thereof* and follow-on Federal Circuit

15   proceedings to justify his conclusions about the purported value of the Blood Oxygen

16   feature.  *See* Ex. 1 [8/9/24 Kinrich Rpt.] at ¶¶ 8-10.  That approach conflicts with this

17   Court's motion *in limine* ruling barring direct reference to any other litigation or

18   administrative proceeding.  *See* Dkt. 1469 at 1-2 (granting Apple's motion to exclude

19   other proceedings, finding that "evidence, rulings, and dispositions of other cases will

20   shed little, if any, probative value" and would risk "danger of unfair prejudice, confusion

21   of the issues, and misleading the jury").  Apple would be unable to cross-examine Mr.

22   Kinrich on the basis for his "updated" damages opinion without running afoul of the

23   Court's order—which would create a prejudicial "trial within a trial."

24        During the telephonic meet-and-confer, Plaintiffs suggested that this Court's prior

25   motion *in limine* rulings would have to be revisited before the next trial in order for Mr.

26   Kinrich's opinions to be permissible.  Plaintiffs cannot reasonably proceed on the

27   assumption that an existing court order will be modified when they have not even sought

28   reconsideration.  Regardless, any request for reconsideration would fail because any

supposed relevance of the International Trade Commission proceeding is heavily outweighed by the unfair prejudice and confusion that would arise from introducing a ruling involving different patents and different evidence.[4]

## II.    THE "SUPPLEMENTAL" MADISETTI REPORT IS UNTIMELY AND IMPROPER.

Dr. Madisetti testified at trial that Apple misappropriated L5 through use of a short circuit ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. Ex. 8 [4/12/23 Trial Tr. PM] at 26:12-28:8. In his new "supplemental" report, Dr. Madisetti seeks to add an entirely new theory of misappropriation for the purported L5 trade secret based on a claim that Apple supposedly ██████████████████████████. Ex. 2 [8/9/24 Madisetti Rpt.] ¶ 3. But that new, previously undisclosed theory should be excluded as untimely because nothing prevented Plaintiffs or Dr. Madisetti from raising ████████ ████████████████ before expert discovery closed for the trade secret portion of this case. During the meet and confer process, Plaintiffs suggested the supplement was justified by Apple's production—in response to Plaintiffs' discovery demands relating to the patent infringement claims—of three ██████████████," alleging that it was these documents that "reveal that Apple █████████████████████████████████ ██████████████████████████████." Ex. 10 [Email Thread] at 1. However, as is plain from a review of the "supplemental" report, Plaintiffs were in possession of this same information *years ago*.

Indeed, Dr. Madisetti's new report cites seven documents, four of which were indisputably produced long before Dr. Madisetti submitted his original report before trial. For example, in paragraphs 5-7, Dr. Madisetti recites excerpts from two ██████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

---

[4] In later email correspondence, Plaintiffs simply asserted that they "disagree" that this Court's motion *in limine* bar references to the ITC proceedings. *See* Ex. 10 [Email Thread] at 1-3. But the Court's order is clear: Neither party may reference "evidence, rulings, and dispositions of other cases." Dkt. 1469 at 1-2.

Wilmer Cutler
Pickering Hale
and Dorr LLP

1    ███████████████████████████████████████    But (1) Apple produced both

2    documents **three years ago in 2021**—well before the close of expert discovery in the

3    trade secret portion of the case, and (2) Dr. Madisetti relied on ████████████████

4    █████████████████████████████████████████████████████████████████████

5    ██████████████████████████████    *E.g.*, Ex. 12 [9/23/22 Madisetti Rpt.] ¶ 531

6    ("███████████████████████████████████"); Ex. 8 [4/12/23 Trial Tr. PM]

7    at 28:17-29:7  (testifying ██████████████████████████████████████████

8    ███████████████████████)).

9         Plaintiffs  cannot  claim  that  Apple  somehow  ███████████████████

10   ██████████████████████    before  the  last  trial,  as  confirmed  by  the  numerous

11   documents that Apple produced before that trial that identified ████████████████

12   ██████████████████████:

13   ███████████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████████████

16   █████████████████████████████████████████████████████████████████████

17   █████████████████████████████████████████████████████████████████████

18   █████████████████████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████████████████████

22   ████████████████████████.  Nor can Apple be faulted simply because Plaintiffs chose

23   to depose  Apple  witnesses  about ████████████████████████████████████████

24   █████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████    *See, e.g.*, Ex. 18

26   [7/28/22 Land Dep.] at 62:12-63:2 (████████████████████████████████████

27   ████████████████); *id.* at 89:6-7, 91:20-21 (████████████████████████████

28   ████████████████████████████████).

In short, Plaintiffs had more than sufficient evidence before the close of trade secret fact discovery in 2022 to know that ████████████████████ ████████████████████████████████████████, and thus to offer a theory of misappropriation based on any such disclosure. Thus, Dr. Madisetti's new "supplemental" report is untimely.

## III. THE PROPER REMEDY IS TO STRIKE THE NEW KINRICH AND MADISETTI REPORTS IN THEIR ENTIRETY.

FRCP 37(c)(1) requires "automatic exclusion" of material that was not timely disclosed under FRCP 26 unless the non-moving party can show that "the failure to disclose was either substantially justified or harmless." *E.g.*, *Luke*, 323 F. App'x at 498-499; *see also Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021). Here, Plaintiffs' failure to disclose new liability and damages theories prior to August 9, 2024—and their willful disregard of this Court's orders limiting their damages case and references to the ITC proceedings—justify striking the two new reports in their entirety. *See, e.g.*, *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3965190, at *4 (D. Nev. July 21, 2016) ("'[E]ven though the ultimate trial date was still some months away[,]' late supplemental disclosures are not harmless where parties disregard the Court's clear scheduling orders" (quoting *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005)).

Plaintiffs have no justification for their delay. Discovery in the trade secret portion of the case closed ***two years ago***. *See supra* p.2. Plaintiffs have asserted that they could not have filed Dr. Madisetti's supplemental report much earlier because a supposed key document was not disclosed by Apple until June 2024.[5] But as explained above, Plaintiffs had all the information they needed to raise their new misappropriation

---

[5] Plaintiffs implied in correspondence that they intended to serve their new reports on July 15, 2024—*i.e.*, the original expert report deadline for the *patent infringement* claims. Ex. 10 [Email Thread] at 2. While that makes no sense, as such discovery was explicitly limited to the patent infringement claims, it also does not explain why Plaintiffs waited nearly a month after that deadline before providing the present reports.

Wilmer Cutler
Pickering Hale
and Dorr LLP

theory long before the close of trade secret fact discovery.  *See supra* pp.12-13.

Nor is Plaintiffs' improper conduct harmless.  Trial is set to begin in less than three months.  As discussed above, Plaintiffs' correspondence reveals that they intended to inject these opinions into their patent expert reports—well before the parties' discussions regarding bifurcation.  Despite knowing this, Plaintiffs chose not to inform Apple or the Court of their intent to amend their expert's opinions, nor did they seek leave to do so.  In fact, despite contending that their experts' supplements are based on documents produced during fact discovery relating to the patent infringement claims, Plaintiffs did not even attempt to disclose their new theories in any interrogatory response.  Preparing for and attending trial is already "the most burdensome task" in a litigation.  *See Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015). Responding to these new opinions, without notice and in such close proximity to trial, is highly prejudicial.  The only remedy to cure the prejudice to Apple is striking Mr. Kinrich and Dr. Madisetti's belated opinions.

## CONCLUSION

For the foregoing reasons, the Court should strike Mr. Kinrich and Dr. Madisetti's August 9, 2024 expert reports.

Dated:  August 16, 2024                     Respectfully submitted,


                                            MARK D. SELWYN
                                            AMY K. WIGMORE
                                            JOSHUA H. LERNER
                                            JOSEPH J. MUELLER
                                            SARAH R. FRAZIER
                                            NORA Q.E. PASSAMANECK
                                            THOMAS G. SPRANKLING
                                            WILMER CUTLER PICKERING
                                            HALE AND DORR LLP

                                            BRIAN A. ROSENTHAL
                                            GIBSON, DUNN & CRUTCHER LLP

                                            KENNETH G. PARKER
                                            HAYNES AND BOONE, LLP


                                            By:  */s/ Mark D. Selwyn*
                                                  Mark D. Selwyn


                                            *Attorneys for Defendant Apple Inc.*

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2          The undersigned, counsel of record for Defendant Apple Inc. certifies that this

3    brief contains 5199 words, which [choose one]:

4          _X_ complies with the word limit of L.R. 11-6.1

5          ___ complies with the word limit set by court order dated [date].

6

7    Dated: August 16, 2024                    Respectfully submitted,

8

9                                              MARK D. SELWYN
                                               AMY K. WIGMORE
10                                             JOSHUA H. LERNER
                                               JOSEPH J. MUELLER
11                                             SARAH R. FRAZIER
                                               NORA Q.E. PASSAMANECK
12                                             THOMAS G. SPRANKLING
                                               WILMER CUTLER PICKERING
13                                             HALE AND DORR LLP

14

15                                             BRIAN A. ROSENTHAL
16                                             GIBSON, DUNN & CRUTCHER LLP

17
                                               KENNETH G. PARKER
18                                             HAYNES AND BOONE, LLP

19

20

21                                             By: _/s/ Mark D. Selwyn_
                                                   Mark D. Selwyn
22

23                                             *Attorneys for Defendant Apple Inc.*
24

25

26

27

28