Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
Douglas B. Wentzel (Bar No. 313542)
Douglas.Wentzel@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)         Brian C. Horne (Bar No. 205621)
adam.powell@knobbe.com                   brian.horne@knobbe.com
Daniel P. Hughes (Bar No. 299695)        Mark D. Kachner (Bar No. 234192)
daniel.hughes@knobbe.com                 mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive                 1925 Century Park East, Suite 600
San Diego, CA 92130                      Los Angeles, CA 90067
Phone: (858) 707-4000                    Phone: (310) 551-3450
Fax: (858) 707-4001                      Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MASIMO'S OPPOSITION TO APPLE'S MOTION TO STRIKE UPDATED AND SUPPLEMENTAL EXPERT REPORTS**<br><br>Date:       September 9, 2024<br>Time:       1:30 p.m.<br>Location:   Courtroom 10C<br><br>Hon. James V. Selna |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..................................................................................... 1
II. BACKGROUND ....................................................................................... 1
    A. Kinrich's Reports on Unjust Enrichment ....................................... 1
        1. Kinrich's Opening Report ..................................................... 1
        2. Kinrich's Updated Calculations ........................................... 2
    B. Madisetti's Reports on Misappropriation of L-5 ........................... 4
        1. Madisetti's Opening Report ................................................. 4
        2. Madisetti Updated Report .................................................... 5
III. LEGAL STANDARD ............................................................................... 6
IV. KINRICH'S UPDATE WAS PROPER ..................................................... 7
    A. Kinrich Properly Updated His Calculations To Include Unjust Enrichment For Series 8, 9, Ultra, and Ultra 2 ................... 7
    B. Kinrich Properly Updated With New Facts From 2024 About The Importance Of Blood Oxygen to Apple ...................... 9
    C. Kinrich Properly Updated Based On New Survey Data For Apple Watch Series 6 and 7 ..................................................10
    D. Kinrich Does Not Use the Series 6 Processor to Value the Blood Oxygen Feature ...................................................................11
    E. Kinrich's Update Was Justified And Harmless ...........................12
V. MADISETTI'S UPDATE WAS PROPER ...............................................13
    A. Madisetti Properly Updated Based On New Evidence .................13
    B. Madisetti's Update Was Justified And Harmless .........................14
VI. CONCLUSION .......................................................................................15

# TABLE OF AUTHORITIES

Page No(s).

*Cross-Fit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
  2018 WL 3491854 (S.D. Cal. July 18, 2018) .................................................. 7

*Focal Point Films, LLC v. Sandhu*,
  2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) ................................................ 6

*L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*,
  2019 WL 13095324 (C.D. Cal. Oct. 29, 2019) ............................................... 6

*Liberty Insurance Corp. v. Brodeur*,
  41 F4th 1185 (9th Cir. 2022) ........................................................................... 6

*Plymouth Grain Terminals, LLC v. Lansing Grain Co.*,
  2013 WL 12177094 (E.D. Wash., Nov. 21, 2013) .......................................... 6

*Semtech Corp. v. Royal Ins. Co. of Am.*,
  2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ..................................... 6, 12, 15

*Wechsler v. Macke Int'l Trade, Inc.*,
  221 F.R.D. 619 (C.D. Cal. 2004) .................................................................... 6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ......................................................................... 6

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ................................................................................................ 6, 11

Fed. R. Civ. P. 37 ...................................................................................................... 6

# I. INTRODUCTION

Masimo's experts updated their reports to address evidence that was not available to them two years ago when fact discovery closed. Masimo's financial expert (Kinrich) updated his calculations to account for new data and new versions of the Apple Watch released after his opening report. Masimo's technical expert (Madisetti) updated his report to add newly produced evidence that Apple misappropriated one of Masimo's trade secrets by disclosing it to an additional vendor. Neither expert changed his theory or methodology. And neither expert could have provided these updates at the time of their original reports. The Court should deny Apple's motion.

# II. BACKGROUND

## A. Kinrich's Reports on Unjust Enrichment

### 1. Kinrich's Opening Report

In his October 2022 expert report, Kinrich calculated the amount of profit in Apple's Series 6 and Series 7 watches that was attributable to Apple's blood-oxygen feature. Ex. 3 (Kinrich Rpt.) at ¶147.[1] To do so, Kinrich used three sources of information: (1) Apple's financial data, (2) Apple's website, and (3) Apple's surveys of people who purchased an Apple Watch. *See* Ex. 3 ¶¶147, 153, 157.

Kinrich used Apple's financial data to calculate the profit difference between the Series 6 and 7 watches (with the blood-oxygen feature) and the SE watch (without the blood-oxygen feature). Ex. 3 at ¶¶147, 154, 161.

Kinrich then used Apple's website touting the key feature differences of these watches. Apple's website identified blood oxygen, ECG, and always-on display as key features included on the Series 6 and absent from the Series SE. Ex. 3 ¶153, n. 287.

---

[1] Unless stated otherwise, numbered exhibits are attached to the Selwyn Declaration and lettered exhibits are attached to the Kachner Declaration. All emphasis is added unless stated otherwise.

-1-

Kinrich then examined Apple's quarterly surveys that asked consumers to identify the feature that most influenced their decision to purchase an Apple Watch. Ex. 3 ¶157. When Kinrich served his opening report, he had only the first quarter of survey results for the Series 6 and no results for the Series 7. *See* Ex. 6 at 103:3-13. Kinrich used that Q1 Series 6 survey data to allocate the profit difference between the Series 6 and SE among the key features Apple identified on its website. Ex. 6 at 103:3-13. Because Kinrich had no surveys for the Series 7, he applied the allocation from the Q1 Series 6 survey data to perform a similar calculation for the Series 7. Ex. A at 5.C and 10.C; Ex. 6 at 103:3-13; Ex. 3 at ¶¶150, 157.

Apple did not produce any data for its Series 8 and later watches until 2024. Kachner Decl. ¶14. Therefore, Kinrich could not address those watches in his report or at the 2023 trial.

## 2. **Kinrich's Updated Calculations**

On August 9, 2024, Kinrich served an update that addressed the following issues:[2]

***First***, Kinrich used Apple's newly produced financial data and survey results to calculate the amount of profit attributable to the blood-oxygen feature in Series 8 and later watches. Ex. 1 (Kinrich Update) at ¶¶11-16. Kinrich's update applied the ***identical*** methodology he used in his original report to calculate the value of blood oxygen in Series 6 and 7. Ex. 1 at ¶¶14, 16. He used only new financial data and new survey data that Apple did not produce until May-July 2024.[3]

---

[2] Apple complains about the length of Kinrich's update. The report is only 9 pages. The rest is Kinrich's CV (PDF pages 12-28), a list of materials considered including all materials previously considered (29-64), and updated schedules (65-165), most of which merely reformat Apple's data.

[3] Apple provided some of this data before May 2024 in a different case but insisted the protective order in that case precluded Masimo from using it here. Masimo could not use the data here until May 2024 when Apple agreed to cross-use. Ex. C.

-2-

***Second***, Kinrich cited Apple's Q1 2024 sales data showing Apple's sales of Apple Watch Series 9 and Ultra 2 ▓▓▓▓▓▓▓▓▓▓ when Apple disabled the blood-oxygen feature. Ex. 1 ¶8. Apple produced the data in July 2024. Kachner Decl. ¶14. Similarly, Kinrich cited Apple's August 8, 2024, brief to the Federal Circuit arguing that disabling the blood-oxygen feature harmed Apple. Ex. 1 ¶10. Specifically, Apple argued that disabling the blood-oxygen feature causes "harm to Apple" and the blood-oxygen feature is "an important health-and-wellness feature."[4] *Id.*; Ex. B at 2. Apple filed this brief the day before Kinrich's update. Kinrich did not use this new evidence to change any calculation. Instead, he merely explained that the evidence supported his prior opinions regarding the importance of the blood-oxygen feature. *Id.* at ¶¶9-10.

***Third***, Kinrich updated his calculations for Apple Watch Series 6 and 7 to include survey data after the Q1 Series 6 data. *Id.* at ¶15. Kinrich's update applied the identical methodology as his original report but used additional surveys for the Series 6 and 7 that he did not have when he served his October 2022 report. *Id.* at ¶¶14, 16. This update did not change his opinions or methodology. *Compare* Ex. 1 (Kinrich Update) at 1.B-C, 4.C *with* Ex A (Kinrich Exs.) at 5.C, 10.C. And it actually ***reduced*** the profits attributed to the blood-oxygen feature for Series 6 and 7.

***Fourth***, Kinrich quantified Apple's critique that he should have accounted for the S6 processor in the Series 6. Ex. 1 at 8, n. 21. Apple had argued the S6 processor was an improvement over the SE processor, even though Apple's website did not tout the processor as a key difference. Br. at 4. Kinrich explained

---

[4] Apple continues to make similar arguments. On August 19, after Kinrich's update, Apple argued it "has suffered—and will continue to suffer—real harm every day the permanent injunction at issue is in place because Apple cannot sell a fully-featured product that includes the Blood Oxygen feature in the U.S." Ex. F at 3.

that, using Apple's survey data like he did in his opening report, including the processor ▇. Ex.1 at 8, n. 21. Kinrich did not change his opinion. Rather, he included this alternative to show the magnitude of Apple's criticism in case Apple argued the S6 processor should have been accounted for in the update. It is entirely independent of, and has no impact on, the other updates.

**B.   Madisetti's Reports on Misappropriation of L-5**

**1.   Madisetti's Opening Report**

Dr. Madisetti's October 2022 expert report included his opinions that Apple misappropriated Trade Secret L-5. *See, e.g.*, Ex. D (Madisetti Rpt.) at ¶¶502-508. Madisetti opined that Marcelo Lamego used L-5 while at Apple. *Id.* at ¶506. Within weeks of starting at Apple, Lamego disclosed to Apple ▇ ▇ ▇. *Id.* And he disclosed ▇ ▇. *Id.* He then recommended specific changes to Apple hardware, including ▇ ▇ ▇. *Id.* at ¶522 (*citing* APL-MAS_00067173 attached as Ex. G). Madisetti also explained how Apple later disclosed L-5 ▇ ▇. During development, ▇ ▇ Ex. D at ¶543. ▇ ▇ ▇ ▇

-4-

Madisetti explained that Apple used L-5 in that ▓▓▓ and later ▓▓▓ Ex. D at ¶¶507, 532. At the time, Masimo did not have evidence that Apple had disclosed L-5 to anyone else besides ▓▓▓.

### 2. Madisetti Updated Report

On August 9, 2024, Madisetti updated his report to address evidence that Apple disclosed L-5 ▓▓▓ Ex. 2 at ¶¶14-15; Ex. E at APL-MAS_03228700. Apple produced this new evidence on June 17, 2024. Apple buried this evidence in a large set of documents responsive to Masimo's patent infringement claims. That evidence was from 2019-2020 and Apple should have produced it during trade secret discovery years ago.

The newly produced evidence shows that ▓▓▓ Ex. E at APL-MAS_03228700. That description mirrors the explanation ▓▓▓ Ex. D ¶543 (citing JTX-363 (APL-MAS_00403581-85 at 81) attached as Ex. H). ▓▓▓ Ex. J

at APL-MAS_03228588; Ex. E at APL-MAS_03228700; Ex. I at APL-MAS_03229039. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓ *See*, *e.g.*, Exs. I at APL-MAS_03229039; Ex. E at APL-MAS_03228700. Madisetti's update explains that Apple's new production provides further evidence supporting Apple's misappropriation of L-5 by disclosure to another supplier.

### III. <u>LEGAL STANDARD</u>

Courts impose sanctions under Rule 37(c)(1) only if there is both a Rule 26 violation and the violation was not "substantially justified or harmless." *See Liberty Insurance Corp. v. Brodeur*, 41 F4th 1185, 1191-92 (9th Cir. 2022); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 26(e)(1) requires that "[a] party who has made a disclosure under Rule 26(a) [] must supplement or correct its disclosure or response." Supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Plymouth Grain Terminals, LLC v. Lansing Grain Co.*, 2013 WL 12177094 *3 (E.D. Wash., Nov. 21, 2013) (properly correcting calculations based on newly produced data). Rule 26(e)(2) requires that any supplements to expert reports "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

Courts in this District routinely allow experts to update their calculations to account for new data. *See, e.g.*, *Semtech Corp. v. Royal Ins. Co. of Am.,* 2005 WL 6192906, at *2 (C.D. Cal. Sept. 8, 2005) (allowing supplement based on newer raw data); *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, 2019 WL 13095324 *5 (C.D. Cal. Oct. 29, 2019) (same); *Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 622 (C.D. Cal. 2004) (same). Courts in other districts do the same. *Plymouth Grain Terminals, LLC v. Lansing Grain Co., LLC*, 2013 WL 12177094 (E.D. Wash. Nov. 21, 2013) (allowing supplement based on newer raw data); *Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *3 (N.D. Cal. Sept. 28, 2020)

(allowing updated calculation based on newer information). That is particularly true in a case like this one that "experiences lengthy delays" before trial. *Cross-Fit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2018 WL 3491854, at *11 (S.D. Cal. July 18, 2018) (refusing to strike second report).

## IV. KINRICH'S UPDATE WAS PROPER

Masimo addresses the four Kinrich updates that Apple challenges below in turn. Each is independent of one another.[5]

### A. Kinrich Properly Updated His Calculations To Include Unjust Enrichment For Series 8, 9, Ultra, and Ultra 2

Apple challenges Kinrich updating his calculations based on sales and survey data for new versions of the Apple Watch (Series 8, 9, Ultra, and Ultra 2). Br. at 6-7. Apple does not argue Kinrich could have provided this analysis in October 2022 at the time of his opening report. Nor could it. At that time, Apple had just released the Series 8 and Ultra about two weeks earlier and had not provided *any* sales or survey data. Ex. 1 at ¶12; Br. at 7. And Apple did not release the Series 9 and Ultra 2 until a year later. Ex. 1 at 2.B. Indeed, Apple did not produce the data necessary for this analysis until May-July 2024—long after Kinrich's opening report and the prior trial. Kachner Decl. ¶14.

Rather than contest the timeliness of this update, Apple raises a series of spurious arguments. **First**, Apple argues the Court precluded Kinrich from calculating unjust enrichment on the Series 8, 9, Ultra, and Ultra 2 Watches. Br. at 7. Apple is wrong. The Court addressed only whether Masimo could pursue unjust enrichment for *old* versions of the Apple Watch (Series 1-5 and SE), which incorporated Masimo's trade secret but did *not* include blood oxygen. Ex. 5

---

[5] Apple does not challenge a fifth part of Kinrich's update: his reliance on a December 2023 news publication about the importance of the blood oxygen feature. Ex. 1 at ¶11. Thus, the parties agree this portion of the update should not be struck.

-7-

(4/12/2023 AM Tr.) at 7:10-21, 9:7-19.  The Court said nothing about the later Series 8, 9, Ultra, or Ultra 2 watches.  *See id.*  Indeed, Apple had not produced any sales data for these watches. See Kachner Decl. ¶14.  And two of them (Series 9 and Ultra 2) did not even exist.

**Second**, Apple argues Kinrich's update does not concern new information because the Series 8 and Ultra "launched in September 2022—before Mr. Kinrich served his opening expert report."  Br. at 7.  That argument is irrelevant to the Series 9 and Ultra 2, which launched in September 2023.  Moreover, the Series 8 and Ultra launched just two weeks before Kinrich's opening report and Apple did not produce ***any*** data on those models until May-July 2024.  Kachner Decl. ¶14.  Kinrich timely updated in August 2024.

**Third**, Apple argues Kinrich's update somehow "conflicts" with his opinion that the best comparison is between products "simultaneously on the market" rather than between current and older models.  Br. at 8.  But Kinrich's update did not compare current and older models.  Like his opening report, Kinrich's update compared products sold simultaneously: Series 8, 9, Ultra, and Ultra 2 (with blood oxygen) to SE 2nd generation (without blood oxygen).  Ex. 1 at ¶16.

**Fourth**, Apple argues that Kinrich's analysis is inapplicable to the Series 8 and later watches because by then "blood oxygen was no longer a 'new feature.'"  Br. at 8.  But Kinrich's original analysis did not depend on blood oxygen being a "new feature" with the Series 6.  He compared Series 6 to SE because the two products were sold simultaneously with and without blood oxygen. Ex. 6 at 87:12-89:10.  Regardless, Apple's argument goes to the merits—not whether the update was proper.  Indeed, Apple does not identify any new or changed opinion, but appears to fault Kinrich for adhering to his original methodology.

**Fifth**, Apple argues that Kinrich changed his opinion because his October 2022 report assigned value to "3 features (Blood Oxygen, ECG, Always-On Retina)" while his update assigns value to "21 other features."  Br. at 10.  But

-8-

Kinrich did not change his opinion. He has always valued the features that *Apple* identified on its website as the key differences between watches with blood oxygen and those without. Kinrich's opening report analyzed three features (Blood Oxygen, ECG, and Always-On Retina) because those were the only features that Apple's website identified to differentiate Series 6 from SE.[6] Ex. 3 at ¶153; Ex. 6 at 93:11-95:1. Kinrich's update again analyzed the features that Apple's website identified to differentiate between the watches sold at the time, Series 8, 9, Ultra, and Ultra 2 from SE 2nd generation. Ex. 1 at ¶16. Because Apple continues to add new features to its watch each year, the key features Apple's website identifies changes with each new watch version.[7]

### B. **Kinrich Properly Updated With New Facts From 2024 About The Importance Of Blood Oxygen to Apple**

Apple challenges Kinrich's analysis of evidence showing Apple's sales of Apple Watch Series 9 and Ultra 2 ▇▇▇▇▇▇▇▇▇▇ after Apple disabled the blood-oxygen feature. Br. at 11. Apple also challenges Kinrich's reliance on a very recent Apple brief stressing the importance of the blood-oxygen feature to Apple. *Id*. Apple does not challenge this portion of the update as untimely. Nor could it. Apple produced the sales data in July 2024—just a few weeks before Kinrich updated. Kachner Decl. ¶14. And Apple filed its brief just one day before Kinrich's update.

Apple argues only that the Court's prior *in limine* ruling bars Kinrich from relying on the ITC ruling and "follow-on Federal Circuit proceedings." Br. at 11.

---

[6] Kinrich lacked survey data to value the additional differences Apple identified between the Series 7 and SE.

[7] For example, the Series 8 and later watches included features not available in earlier watches, e.g., temperature sensor, dual-frequency GPS, double tap gesture, and diving features. Ex. 1 at ¶¶15-16, 1.C and 4.C. Apple identified these as key features not included in the second-generation SE. *Id*. at 1.C n.C-F.

But the March 2023 ruling weighed the probative value and prejudicial effect of the evidence existing at that time. The Court found that "evidence, rulings, and dispositions of other cases will shed little, if any, probative value." Dkt. 1469 at 1. In contrast, the Court found a risk of prejudice **from the jury** "defer[ring] to findings and determinations relevant to credibility" made in another proceeding. *Id*. at 2 (quoting *United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007)). The new sales data completely changes that analysis because the new evidence is highly relevant and supports Masimo's argument that the blood-oxygen feature enriched Apple. Additionally, the risk of prejudice is reduced because Kinrich's update is not about the ITC ruling but rather ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ after disabling the blood-oxygen feature. *See* Ex. 1 at ¶8.

Moreover, the March 2023 *in limine* ruling did not prohibit the parties from relying on evidence from other cases. It contemplated that evidence from another proceeding may be used for proper purposes, so long as it is described without referencing the other proceeding. Dkt. 1469 at 2. Kinrich could do so here. Thus, Apple is wrong that Masimo necessarily must rely on the "ruling" from the ITC to introduce this evidence. Br. at 12.

C. **Kinrich Properly Updated Based On New Survey Data For Apple Watch Series 6 and 7**

Apple challenges Kinrich's use of new survey data to update his calculations for the Series 6 and 7 watches. Br. at 8. When Kinrich served his initial report, he had only one quarter of survey data for Series 6, and no data for Series 7. Ex. A at 10.C; Ex. 6 at 103:3-13. He thus used that one quarter of data for the Series 6 and Series 7. Ex. A at 5.C, 10.C. When Kinrich served his update, he had a full four quarters of survey data for both the Series 6 and Series 7. Ex. 1 at ¶15. Therefore, following the same methodology, he updated his calculations to use that survey data. *Compare* Ex. 1 (Kinrich Update) at 1.C and 4.C *with* Ex. A (Kinrich Exs.) at 5.C and 10.C. This **reduced** the value he attributed to the blood-oxygen feature for

the Series 6 and Series 7. *Compare* Ex. 1 at 1.B *with* Ex. A at 5.C.

The survey data that Kinrich did not have when he served his initial report includes some data that Apple produced only in 2024. Kachner Decl. ¶16. It also includes data that Apple did not produce until the last 3 days of fact discovery in 2022 buried among 24,969 documents covering 220,423 pages. Kachner Decl. ¶15. Apple does not fault Kinrich for relying on the data it produced in 2024. *See* Br. at 10-11. Apple thus admits that Kinrich justifiably updated with the data produced in 2024. Thus, to make the update as accurate as possible, it only makes sense to address all the survey data available to him. Indeed, Apple surely would have argued that relying on just the data produced in 2024 was incomplete. Kinrich thus included all relevant data that he was aware of at the time of his update. Apple should not benefit from burying survey data at the end of discovery.

### D. Kinrich Does Not Use the Series 6 Processor to Value the Blood-Oxygen Feature

Apple also challenges Kinrich for ███ difference in the Series 6. Br. at 10. At trial, Apple criticized him for not accounting for the value of the chip. But Kinrich did not change his opinion. Kinrich maintains that he need not account for this feature. He merely showed the magnitude of Apple's critique: that ███ ███ Ex.1 at 8, n. 21. Kinrich calculated that value in case Apple argued that any update had to address this critique under Rule 26(e). Masimo will not offer this calculation in Kinrich's direct testimony. Masimo would offer the calculation in rebuttal and only if Apple were to suggest Kinrich does not know the effect of accounting for the chip or makes a misleading argument about the effect.

/ / /

/ / /

E.  **Kinrich's Update Was Justified And Harmless**

Kinrich's update is proper and consistent with extensive caselaw allowing financial experts to update calculations with more recent data. *See supra* § III. Even if the update were untimely, it is nevertheless substantially justified and harmless.

Kinrich's update is substantially justified because it updates calculations using data Kinrich did not have for his opening report, most of which Apple provided in the past few months. Kinrich updates calculations for new watches that Apple had not sold by the close of fact discovery two years ago. *See* Ex. 1 at ¶¶12-16. Kinrich also comments on how ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at ¶8. Kinrich properly provided his update just a few weeks after Apple produced the data in 2024. *See* Kachner Decl. ¶14. Kinrich's update for Series 6 and 7 is also substantially justified because Apple either buried the data on the last day of discovery or did not produce it until 2024. Kachner Decl. ¶¶15-16. Apple admits Kinrich properly updated with the data produced in 2024 and it would have made little sense for him to omit the data Apple buried. *See* Br. at 10-11.

Kinrich's update is also harmless because it applied the same methodology as his opening report and Apple can depose Kinrich on his update. *See Semtech*, 2005 WL 6192906, at *2-3 (update caused no harm where expert applied the same methodology to new raw data and opposing party could redepose expert).

Accordingly, Kinrich's update was timely, substantially justified, and harmless. Thus, the Court should not strike any of the challenged analyses. If the Court finds otherwise for any particular analysis, the remaining analyses are independent and should not be struck.

/ / /

/ / /

/ / /

# V. MADISETTI'S UPDATE WAS PROPER

Apple challenges Madisetti's opinion that Apple misappropriated trade secret L-5 by ▓▓▓▓▓▓▓▓ Madisetti's update was timely or at least substantially justified and harmless.

## A. Madisetti Properly Updated Based On New Evidence

Madisetti originally opined that Apple misappropriated L-5 by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. D (Madisetti Rpt.) at ¶543. Madisetti's update did not change this theory. Rather, it addressed new evidence that Apple *also* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 2 at ¶¶8-11, 14-15. Apple does not dispute that it first produced evidence revealing that disclosure in **June 2024**. Instead, Apple raises a strawman by arguing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Apple argues Masimo somehow should have discerned that Apple ▓▓▓▓▓▓ ▓▓▓▓▓▓ based on prior discovery. *See* Ex. 10 at 4-5 (Apple claiming "the same substantive information" was set forth in other documents). But none of the prior discovery revealed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Instead, each document merely identifies ▓▓▓▓▓▓▓▓▓▓. None show that Apple ▓▓▓▓▓▓▓▓ Br. at 13 (citing Exs. 13-17). All of those documents are also internal to Apple— not communications ▓▓▓▓▓▓ *Id.* (citing Exs. 13-17).

Apple also complains that Madisetti's update cites four other documents that Apple had produced before Madisetti's original report. Br. at 12. But none of these four documents ▓▓▓▓▓▓▓▓ much less show that Apple ▓▓▓▓▓▓▓ ▓▓ These documents provide context for the newly produced documents. Two documents are trial exhibits on which Madisetti previously relied. *See* Ex. D (Madisetti Rpt.) at ¶¶522-523 (citing JTX-143 & JTX-185, attached as Exs. K-L) (documenting Lamego's disclosure to Apple). The other two documents correlate dates when Apple apparently communicated with its vendor, but do not show actual

-13-

1    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 2 at ¶¶5-7. And these two
2 documents refer to earlier versions of trial exhibits on which Madisetti relied.
3 Indeed, Apple concedes that "Madisetti relied on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4 ▓▓▓▓▓▓▓▓ at the first trial." Br. at 13.

5    Apple also argues Masimo did not ask about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in
6 any deposition. Br. at 13. But Apple withheld documents showing Apple ▓▓▓▓
7 ▓▓▓▓▓▓ Apple provided no discovery before June 2024 that revealed Apple
8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But Apple should have produced these documents two years
9 earlier in trade secret discovery. Thus, Masimo had no reason to question whether
10 Apple ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Court should not reward Apple for withholding
11 highly relevant documents until June 2024 and burying them in a production
12 relating to the patent case.

13 **B.  Madisetti's Update Was Justified And Harmless**

14    Madisetti's update was proper and consistent with the caselaw allowing
15 experts to update based on new information. *See* supra § III. Even if the update
16 were untimely, it is nevertheless substantially justified and harmless.

17    Madisetti's update is substantially justified because it is based on new
18 information that Apple has apparently been concealing for years. Until June 2024,
19 Apple withheld all discovery showing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Madisetti
20 promptly updated his report after Masimo learned of this additional disclosure of
21 Masimo's trade secret.

22    Madisetti's update is also harmless. Madisetti's update offers no new
23 opinion. His prior report disclosed Madisetti's opinion that Apple misappropriated
24 L-5 by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ He merely updates that opinion
25 to state that Apple misappropriated L-5 by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26 ▓▓▓▓▓▓ And his update relies on documents that Apple has had in its possession
27 for years, failed to produce, and buried in a June 2024 patent document production
28 / / /

-14-

in June 2024. Regardless, if Apple believes it is necessary, it is free to depose Madisetti on his update. *See Semtech,* 2005 WL 6192906, at *2-3.

Accordingly, Madisetti's update was timely and proper. At a minimum, however, it was substantially justified and harmless. Thus, the Court should not strike Madisetti's update.

## VI. CONCLUSION

Masimo's experts updated their reports to address evidence that was not available to them two years ago when fact discovery closed. Neither expert changed his theory or methodology. And neither expert could have provided these updates at the time of their original reports. Their updates were timely or at least substantially justified and harmless. The Court should deny Apple's motion.

Respectfully submitted,

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: August 23, 2024

By: */s/ Mark D. Kachner*
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Brian C. Claassen
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes
Douglas B. Wentzel

Attorneys for Plaintiffs,
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 4,719 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

 __ complies with the word limit set by court order dated [date].

Dated: August 23, 2024

By: */s/ Mark D. Kachner*
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Brian C. Claassen
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes
Douglas B. Wentzel

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.