# EXHIBIT 2

1

```
 1

 2

 3

 4                 UNITED STATES DISTRICT COURT

 5                CENTRAL DISTRICT OF CALIFORNIA

 6                     SOUTHERN DIVISION

 7                         - - -

 8        THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

 9
          MASIMO CORPORATION, et al.,  )CERTIFIED TRANSCRIPT
10                      Plaintiffs, )
             vs.                      )
11                                    )  SACV-18-02001-JVS
          TRUE WEARABLES, INC., et al., )
12                      Defendants. )
          ----------------------------)
13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Santa Ana, California

17              December 20, 2021

18

19                    SHARON A. SEFFENS, RPR
                      United States Courthouse
20                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
21                    (714) 543-0870

22

23

24

25
```

Exhibit 2
-4 -

2

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiffs:

3    JOSEPH R. RE
     STEPHEN C. JENSEN
4    BRIAN CHRISTOPHER CLAASEN
     KNOBBE MARTENS OLSON & BEAR, LLP
5    2040 Main Street, 14th Floor
     Irvine, CA  92614
6    (949) 760-0404

7    For the Defendants:

8    PETER A. GERGELY
     MERCHANT & GOULD, PC
9    767 Third Avenue, Suite 23C
     New York, NY  10017
10   (212) 223-6520

11   RYAN J. FLETCHER
     MERCHANT & GOULD, PC
12   1801 California Street, Suite 3300
     Denver, CO  80202
13   (303) 357-1670

14   SCOTT P. SHAW
     MERCHANT & GOULD, PC
15   611 Wilshire Boulevard, Suite 808
     Los Angeles, CA  90017
16   (303) 357-1670

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-5-

3

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA; MONDAY, DECEMBER 20, 2021; 10:07 A.M. |
| | 2 | (Proceedings held via Zoom) |
| 10:07 | 3 | THE CLERK:  Calling Item No. 1, SACV-18-02001-JVS, |
| 10:07 | 4 | Masimo Corporation, et al, versus True Wearables, Inc., et |
| 10:07 | 5 | al. |
| 10:07 | 6 | Counsel, please state your appearances for the |
| 10:07 | 7 | record.20 |
| 10:07 | 8 | MR. RE:  Good morning, Your Honor.  For the |
| 10:07 | 9 | plaintiffs Masimo and Cercacor, Joseph Re from Knobbe |
| 10:07 | 10 | Martens, and with me in this conference room are my partners |
| 10:08 | 11 | Stephen Jensen, Brian Claassen, and Mark Kachner. |
| 10:08 | 12 | THE COURT:  Good morning. |
| 10:08 | 13 | MR. GERGELY:  Good morning, Your Honor.  For the |
| 10:08 | 14 | defendants, Peter Gergely, Ryan Fletcher, and Scott Shaw of |
| 10:08 | 15 | Merchant & Gould PC. |
| 10:08 | 16 | THE COURT:  Good morning. |
| 10:08 | 17 | I have had a chance to review and to consider the |
| 10:08 | 18 | parties' briefs on the issue before me, that Masimo has |
| 10:08 | 19 | effectively waived its right to a jury trial. |
| 10:08 | 20 | Mr. Gergely, I have a couple of questions for you. |
| 10:08 | 21 | Suppose a plaintiff files what's simply a one patent |
| 10:09 | 22 | infringement action, and all the plaintiff asks for is |
| 10:09 | 23 | injunctive relief, but also files a request for a jury |
| 10:09 | 24 | trial.  Assume you are the defendant.  Do you have a right |
| 10:09 | 25 | to a jury trial? |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-6-

4

| | | |
|---|---|---|
| 10:09 | 1 | THE COURT:  Sir, can you hear me? |
| 10:09 | 2 | MR. GERGELY:  Your Honor, are you addressing me? |
| 10:09 | 3 | The audio quality is really bad.  Are you asking for |
| 10:09 | 4 | argument on whether the defendants have a right to a jury |
| 10:09 | 5 | trial? |
| 10:09 | 6 | THE COURT:  No.  I am asking you a very specific |
| 10:09 | 7 | question.  In my hypothetical, plaintiff files a patent |
| 10:09 | 8 | infringement action and seeks only injunctive relief but |
| 10:09 | 9 | requires a Rule 38 request for a jury trial.  Does the |
| 10:09 | 10 | defendant have a right to a jury trial? |
| 10:09 | 11 | MR. GERGELY:  In that hypothetical as opposed to a |
| 10:10 | 12 | single claim for patent infringement seeking only injunctive |
| 10:10 | 13 | relief? |
| 10:10 | 14 | THE COURT:  Right, but the plaintiff also files a |
| 10:10 | 15 | request for a jury demand.  With those facts, does the |
| 10:10 | 16 | defendant have a right to a jury? |
| 10:10 | 17 | MR. GERGELY:  If the plaintiff files a jury demand |
| 10:10 | 18 | in a patent infringement case, I believe so. |
| 10:10 | 19 | THE COURT:  Let me make sure you understand the |
| 10:10 | 20 | facts I'm positing.  One, a patent infringement action is |
| 10:10 | 21 | filed; two, the only relief sought is an injunction; and, |
| 10:10 | 22 | three, notwithstanding seeking only an injunction, plaintiff |
| 10:10 | 23 | files a request for a jury demand.  Does the defendant have |
| 10:10 | 24 | a right to a jury? |
| 10:10 | 25 | MR. GERGELY:  I think in that hypothetical I would |

Exhibit 2
-7-

5

| | |
|---|---|
| 10:10 | 1 |

say no.

THE COURT: Okay. The next question is would you agree that disgorgement and damages can overlap, but they can also be separate elements or partially overlapping?

MR. GERGELY: I think they possibly can, but I'm not certain in what exact context Your Honor is asking the question.

THE COURT: Let me give you this hypothetical. Company A sues for patent infringement. Company A has lost profits as a result of the diversion of $100, but defendant having exploited the patent has earned $1,000 in sales. Suppose, one, on those facts, would you agree that damages and disgorgement can be two separate things?

MR. GERGELY: Your Honor, within the context of a patent infringement case, I believe that there are generally three types of damages available. It would be --

THE COURT: Sir, stop, stop, stop.

MR. GERGELY: I'm not aware of disgorgement simply in the context of a patent infringement case.

THE COURT: How about a trade secret case, same facts but a trade secret case? Plaintiff is a very strong company, and the diversion that they sustain is relatively modest, but they are out $100 in lost profits. Can diverted sales be based on trade secrets, that defendant using the trade secrets makes $1,000 in sales? Under those facts,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2

-8-

6

| | | |
|---|---|---|
| 10:13 | 1 | aren't disgorgement and damages separate? |
| 10:13 | 2 | MR. GERGELY:  Your Honor, in that precise |
| 10:13 | 3 | hypothetical that you posited, I would agree that the |
| 10:13 | 4 | plaintiff's lost profits of $100 and defendant's sales of |
| 10:13 | 5 | $1,000 would be different.  But in a trade secret case, I |
| 10:13 | 6 | believe what you are entitled to would be either lost |
| 10:13 | 7 | profits or unjust enrichment, or in the absence of those, |
| 10:14 | 8 | you could get a default reasonable royalty. |
| 10:14 | 9 | THE COURT:  Well, doesn't the statute say |
| 10:14 | 10 | something different?  Doesn't the statute -- the California |
| 10:14 | 11 | Uniform Trade Secret Act say that to the extent unjust |
| 10:14 | 12 | enrichment can be segregated out from any lost profits, you |
| 10:14 | 13 | are entitled to unjust enrichment?  Isn't that what 3426 |
| 10:14 | 14 | says? |
| 10:14 | 15 | MR. GERGELY:  Your Honor, I agree that -- I |
| 10:14 | 16 | believe you are summarizing the statute accurately.  What I |
| 10:14 | 17 | am saying is in the absence of those two categories the |
| 10:14 | 18 | default would be a reasonable royalty.  Within the context |
| 10:14 | 19 | of this case, the plaintiffs aren't seeking either of the |
| 10:15 | 20 | first two categories.  They are not seeking profits.  They |
| 10:15 | 21 | said that in their pleadings.  They said that they are not |
| 10:15 | 22 | seeking -- I'm sorry.  They are not seeking defendants' |
| 10:15 | 23 | profits nor are they seeking their own profits.  What they |
| 10:15 | 24 | are seeking is something called enterprise value of up to a |
| 10:15 | 25 | $12 million to $14 million claim. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-9-

| | |
|---|---|
| 10:15 | 1 |
| 10:15 | 2 |
| 10:15 | 3 |
| 10:15 | 4 |

10:15  1          I'm not aware of any case in California or

10:15  2   elsewhere that would award those types of damages in a trade

10:15  3   secret case.  It just seems to be sort of a free-wheeling

10:15  4   category of damages that is not recognized in the law.

10:15  5          My issue is that if it's unclear what type of

10:15  6   relief the plaintiff is seeking, the presumption is there is

10:15  7   a presumed right to a jury trial.  What they are seeking is

10:15  8   damages in the form of a personal judgment against the

10:15  9   defendants.  They are not seeking to disgorge any particular

10:16  10  property or profits from the defendants, and that's been

10:16  11  clearly admitted.  They are not seeking to disgorge

10:16  12  defendants' profits, so what is it?  It's essentially a

10:16  13  claim for damages.

10:16  14          THE COURT:  Well, what plaintiff has announced is

10:16  15  it only wishes to proceed on a disgorgement theory.  A

10:16  16  disgorgement theory is clearly equitable relief.  Now, if

10:16  17  plaintiff announces that it's going to proceed on that

10:16  18  theory, it will be bound by what you can in fact recover

10:16  19  under that equitable claim.

10:16  20          Now, it's entirely possible that plaintiff will

10:16  21  come forward with a monetary calculation that's sufficient

10:16  22  as a matter of disgorgement and in fact reflects your theory

10:16  23  simply as an alternative to lost profits or some other --

10:16  24  but my point is I think that the plaintiff is entitled to

10:16  25  announce it's only going to pursue an equitable recovery,

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-10-

10:17  1   and if it fails, it fails.

10:17  2            MR. GERGELY:  Your Honor, I was trying to figure

10:17  3   out whether the procedure the plaintiffs are following has

10:17  4   ever really been done before.  It's really unusual for me to

10:17  5   proceed for three years in a case assuming it's going to be

10:17  6   simply a claim for damages, including a jury trial, and then

10:17  7   at the eleventh hour, they recharacterize it.

10:17  8            Actually, I did find a case where something

10:17  9   similar to this happened.  It was tendered to the Court

10:17  10  before this hearing.  It's Sonner v. Premier Nutrition

10:17  11  Corporation where the plaintiff basically said we are not

10:17  12  going to be pursuing our legal damages claim anymore.  We

10:17  13  are just going to be pursuing equitable restitution.  And

10:18  14  the Court said before he would allow that to proceed they

10:18  15  would have to establish that they don't have an adequate

10:18  16  remedy at law.

10:18  17           I think that case is particularly apt here because

10:18  18  the same thing is going on.  We have all proceeded on the

10:18  19  assumption that this was going to be a jury trial for three

10:18  20  years.  Then at the last minute they change everything.  We

10:18  21  haven't had the opportunity to do any motion practice on

10:18  22  what essentially is a new Complaint, really no discovery

10:18  23  into the equitable issues, no Motion for Summary Judgment,

10:18  24  no investigation or briefing on this very important issue of

10:18  25  lack of an equitable remedy at law, which the Sonner case

Exhibit 2
-11-

10:18   1   said is critical.  So really what they are doing is they are

10:18   2   recharacterizing everything at the last second.

10:18   3         I think what would be appropriate is for the

10:18   4   plaintiffs to actually file a new Complaint that we could

10:19   5   actually investigate and respond to in the ordinary course

10:19   6   and not deal with the it at the last minute because really

10:19   7   the pleadings haven't changed.

10:19   8         Your Honor, I appreciate what you are saying if

10:19   9   the plaintiffs at some point can come up with some theory as

10:19   10   to unjust enrichment.  But we are about a month out before

10:19   11   trial, and this is just too little too late, and it's not

10:19   12   fair to my client to investigate a new theory on the fly.

10:19   13         THE COURT:  Well, sir, the monetary loss that they

10:19   14   seek to recover is covered in their expert reports.  They

10:19   15   are going to offer the same evidence they might have

10:19   16   introduced under other theories, but the record is closed in

10:19   17   terms of expert evidence that would support any monetary

10:19   18   calculation, true?

10:19   19         MR. GERGELY:  The record is closed, correct, but

10:20   20   what we didn't appreciate or have an opportunity to

10:20   21   investigate or really attack with any kind of motion

10:20   22   practice was this idea that this was going to be a purely

10:20   23   equitable claim.  They called this claim damages for the

10:20   24   past three years.  That's what their expert called it.

10:20   25   That really changes the complexion of the case.  My client

Exhibit 2
-12-

| | | |
|---|---|---|
| 10:20 | 1 | you should have an opportunity to attack that in motion |
| 10:20 | 2 | practice and discovery. |
| 10:20 | 3 | Lack of an adequate remedy at law is an absolute |
| 10:20 | 4 | defense to an equitable claim, but we have been proceeding |
| 10:20 | 5 | on the theory that these are legal damages as they have |
| 10:20 | 6 | characterized it throughout the case and as their expert |
| 10:20 | 7 | characterized it. |
| 10:20 | 8 | THE COURT:  Sir, are there any other points you |
| 10:20 | 9 | would like to make? |
| 10:21 | 10 | MR. GERGELY:  Well, I think that fairly addresses |
| 10:21 | 11 | the trade secret issue.  Again, there is no theory under |
| 10:21 | 12 | California law or anywhere else for that matter that would |
| 10:21 | 13 | allow a plaintiff to seek the entire value of the company as |
| 10:21 | 14 | a remedy for trade secret misappropriation.  The traditional |
| 10:21 | 15 | theory is an accounting for profits, which they are not |
| 10:21 | 16 | seeking here. |
| 10:21 | 17 | I think really what they would be entitled to, if |
| 10:21 | 18 | anything, in terms of money damages would be a reasonable |
| 10:21 | 19 | royalty, not this enterprise value.  So really what we are |
| 10:21 | 20 | dealing with here is in fact a new claim. |
| 10:21 | 21 | With respect to breach of fiduciary duty, one of |
| 10:21 | 22 | the cases cited in our brief, DePinto versus Provident |
| 10:21 | 23 | Security Life Insurance Company, 323 F.2d 826, at page 837, |
| 10:22 | 24 | a Ninth Circuit case, says:  "We hold that where a claim of |
| 10:22 | 25 | breach of fiduciary duty is predicated upon underlying |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-13-

| | | |
|---|---|---|
| 10:22 | 1 | conduct, such as negligence, which is actionable in a direct |
| 10:22 | 2 | suit at common law, the issue of whether there has been a |
| 10:22 | 3 | breach is, subject to an appropriate instruction, a jury |
| 10:22 | 4 | question." |
| 10:22 | 5 | That's exactly what the plaintiff is seeking here. |
| 10:22 | 6 | In their pretrial submission, they are advocating  a |
| 10:22 | 7 | negligence theory in support of their breach of fiduciary |
| 10:22 | 8 | duty claim.  We think that's squarely a jury question. |
| 10:22 | 9 | They have also -- they tried to -- again, this is |
| 10:22 | 10 | another instance where they are trying to change their |
| 10:22 | 11 | theory at the last minute.  Their expert posited a damages |
| 10:22 | 12 | theory where he said that Cercacor was entitled to recover |
| 10:22 | 13 | its research and development expenses as well as labor |
| 10:22 | 14 | expenses as a form of damages, which he said in his |
| 10:22 | 15 | deposition he was trying to quantify the harm to Cercacor. |
| 10:23 | 16 | That's just a classic legal damages theory. |
| 10:23 | 17 | Now, I see in their papers they are saying, well, |
| 10:23 | 18 | we are just pursuing the compensation of Dr. Lamego.  Well, |
| 10:23 | 19 | that's just basically a narrow version of their damages |
| 10:23 | 20 | claim.  If they paid him compensation and they are seeking |
| 10:23 | 21 | to get that compensation back, that's the same thing as the |
| 10:23 | 22 | labor expense they were trying to get back before, which |
| 10:23 | 23 | they said was the harm to Cercacor.  So it's still a damages |
| 10:23 | 24 | theory, and it's still legal. |
| 10:23 | 25 | Also, on that point, their expert was the person |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-14-

| | |
|---|---|
| 10:23 | 1 | who was designated to testify on damages.  There's basically |
| 10:23 | 2 | been no expert designated by the plaintiffs to testify on |
| 10:23 | 3 | damages with respect to breach of fiduciary duty in their |
| 10:23 | 4 | initial disclosures.  Instead, when we were seeking that |
| 10:24 | 5 | information, they pointed towards their expert who said, |
| 10:24 | 6 | well, we will give you a computation of damages through our |
| 10:24 | 7 | expert.  Now they are saying that they are not relying on |
| 10:24 | 8 | their expert. |
| 10:24 | 9 | Well, it's not even clear who is going to be |
| 10:24 | 10 | testifying on this, and we haven't disclosed witnesses on |
| 10:24 | 11 | this issue.  So, again, it's the same thing.  It's the |
| 10:24 | 12 | eleventh hour.  We haven't had precise discovery on the |
| 10:24 | 13 | damages theory, which now they are saying it's going to be |
| 10:24 | 14 | for compensation to Lamego. |
| 10:24 | 15 | Again, the Sonner case is on all fours from the |
| 10:24 | 16 | Ninth Circuit, which is if they are really saying that they |
| 10:24 | 17 | are pursuing an equitable claim for monetary relief against |
| 10:24 | 18 | Lamego, that sort of begs the question.  Are they even |
| 10:24 | 19 | entitled to do that without showing a loss of an adequate |
| 10:25 | 20 | remedy at law? |
| 10:25 | 21 | That sort of takes us back to square one, which is |
| 10:25 | 22 | my client attack should have the right to attack this new |
| 10:25 | 23 | pleading, attack it in discovery, file a Motion for Summary |
| 10:25 | 24 | Judgment.  It's too little too late.  They shouldn't be able |
| 10:25 | 25 | to do it at the last minute.  That's the problem with this |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2

-15-

| | | |
|---|---|---|
| 10:25 | 1 | case.  They are trying to have their cake and eat it, too. |
| 10:25 | 2 | They are trying to file this case as just equitable, but yet |
| 10:25 | 3 | they can't seem to let go of all these monetary claims, |
| 10:25 | 4 | which we are think are legal in nature.  Even if they are |
| 10:25 | 5 | recharacterizing it as equitable, they haven't shown that |
| 10:25 | 6 | they don't have an adequate remedy at law, which the Ninth |
| 10:25 | 7 | Circuit says you have to do in order to proceed on those |
| 10:25 | 8 | types of equitable claims. |
| 10:25 | 9 | THE COURT:  Thank you. |
| 10:25 | 10 | Mr. Re. |
| 10:25 | 11 | MR. RE:  Your Honor, you are absolutely right.  We |
| 10:25 | 12 | waive any legal claims.  If they are legal, don't give them |
| 10:25 | 13 | to us.  That can be determined at the end of the case as we |
| 10:26 | 14 | explained.  But it doesn't suggest a right to trial by jury. |
| 10:26 | 15 | Second of all, Sonner is not applicable.  Sonner |
| 10:26 | 16 | is a diversity case where the plaintiff sought the exact |
| 10:26 | 17 | same number and just changed the theory under the common law |
| 10:26 | 18 | count saying federal common law applies.  As the Court |
| 10:26 | 19 | noted, the trade secret statute specifically authorizes |
| 10:26 | 20 | unjust enrichment. |
| 10:26 | 21 | Also, we have always maintained our equitable |
| 10:26 | 22 | theories and equitable relief.  Mr. Gergely is not correct. |
| 10:26 | 23 | He needs to go back to the early discovery responses.  Over |
| 10:26 | 24 | two years ago, we set forth our equitable claims for |
| 10:26 | 25 | forfeiture and disgorgement, not disgorgement of profits as |

Exhibit 2
-16-

10:26    1    Mr. Gergely keeps saying.  That's the DePinto case.  The

10:26    2    DePinto case was a shareholder derivative case just like

10:26    3    Ross v. Bernhard.  Those were cases where damages were

10:26    4    sought.

10:26    5         We must make it clear that we know that the

10:26    6    defendant cannot pay any actual damages, and I don't think

10:27    7    there is even a debate.  In fact, their own brief said he

10:27    8    spent all his money.  He has no money.  So even if Sonner

10:27    9    were to apply, there is not an adequate remedy in law to

10:27    10   compensate for damages, so we have dropped the damages

10:27    11   claim.

10:27    12        If there is any dispute about what remedy is

10:27    13   legal, what remedy is equitable, well, just don't give us

10:27    14   any legal remedy.  We will fight for the equitable remedy

10:27    15   only.  So it has no bearing on whether it's a trial by jury.

10:27    16   That will be taken care at the remedy phase.  For that

10:27    17   reason, I don't think the defendant under these

10:27    18   circumstances with no claims against us can insist on a

10:27    19   jury.  It just cannot happen.

10:27    20        THE COURT:  Anything further, Mr. Gergely?

10:27    21        MR. GERGELY:  Your Honor, the breach of fiduciary

10:27    22   duty claim is seeking to quantify harm to Cercacor.  They

10:28    23   can say it's defendant's compensation, but that was part of

10:28    24   their damages theory in their expert report.  Again, it's

10:28    25   still damages.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2

-17-

10:28    1              I think Mr. Re is putting the cart before the

10:28    2    horse.  He is saying we can waive a jury trial and try this

10:28    3    case, and if there are no equitable remedies, you don't have

10:28    4    to give it to us.  I think what we are saying here is that

10:28    5    these are in fact legal issues.

10:28    6              The DePinto case didn't turn on what was the

10:28    7    specific type of money being requested.  I mean, that case

10:28    8    is just unequivocal that if it is a breach of fiduciary case

10:28    9    it's based on an underlying charge of negligence, which is

10:28   10    exactly what is going on here, and we are entitled to a

10:28   11    jury.

10:29   12              THE COURT:  Well, I'm prepared to rule -- do you

10:29   13    want to add something, Mr. Gergely?

10:29   14              MR. GERGELY:  The Sonner case is on all fours.  I

10:29   15    don't think it matters whether it's a diversity case or

10:29   16    there's federal question jurisdiction.  I mean, the claims

10:29   17    at issue here that we are talking about are breach of

10:29   18    fiduciary duty and trade secrets, which are both state law

10:29   19    claims.  The issue is whether there is an adequate remedy at

10:29   20    law.  I think they do have an adequate remedy at law, which

10:29   21    is a reasonable royalty on trade secret misappropriation and

10:29   22    a claim for damages on the breach of fiduciary duty.

10:29   23              Mr. Re is saying, well, my client is essentially

10:29   24    judgment proof, so there is no adequate remedy at law.  But

10:29   25    what they are seeking is in fact an eight-figure judgment

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-18-

| | |
|---|---|
| 10:30 | 1 |

against my client for disgorgement, so it logically doesn't
even make sense.

THE COURT:  I'm prepared to rule.  I find that
Masimo has effectively withdrawn all claims that would
support a grant of a jury trial.

With respect to the argument that under 38(d) of
the Federal Rules of Civil Procedure defendants have to give
their consent before plaintiff can withdraw, that no longer
is effective given the absence of any claims that would
support a jury trial.

The law clearly reflects that disgorgement and
damages are two different things, although they may overlap.
And that view is I think most succinctly and most precisely
expressed in California's trade secrets statute at Code of
Civil Procedure -- Cal. Civil Code 3426(3)(a).  "A
complainant may recover damages for the actual loss caused
by misappropriation.  A complainant also may recover for the
unjust enrichment caused by misappropriation that is not
taken into account in computing damages for actual loss."

I believe that as an equitable matter the
plaintiff can recover unjust enrichment or disgorgement.
Disgorgement is clearly an equitable remedy.  And as I have
indicated, I think it's theoretically there.  If at the end
of the day Masimo comes forth with a theory that in fact
turns out to be damages, the award is zero.  So I think as

Exhibit 2
-19-

10:32  1  we go forward it preserves the argument of the defendants

10:32  2  that what is being sought is really damages.  At the end of

10:32  3  the day if that's what I conclude, the result is a zero

10:32  4  dollar award.

10:32  5          A number of other arguments were not really

10:32  6  discussed here, but I have considered them.  I don't believe

10:32  7  the statute of limitations creates a jury trial.  The case

10:32  8  law is fairly clear that whether a jury is entitled or not

10:32  9  is determined by the nature of the claim, not the nature of

10:32  10  the defense.  Moreover, the cases cited by True Wearables

10:32  11  are all state cases dealing with state situations.  I think

10:32  12  that the catalyst case indicates that a breach of fiduciary

10:33  13  duty is not as a matter of law a legal claim.

10:33  14          Accordingly, we are going to proceed with a bench

10:33  15  trial.  As you know, I do bench trials with direct coming in

10:33  16  by way of declaration.  I proposed a schedule at the last

10:33  17  hearing, which I appreciate your reaction.

10:33  18          MR. GERGELY:  Your Honor, with respect to

10:33  19  scheduling, I know it hasn't quite become an issue in

10:33  20  California yet, but in the rest of the country where I live,

10:33  21  the Omicron variant has started exploding.  It's becoming

10:33  22  very problematic.  I'm very concerned about bringing a team

10:33  23  to California and traveling and then being in a courtroom

10:34  24  while this Omicron outbreak is going on.

10:34  25          THE COURT:  Well, sir, we have dealt with that.

Exhibit 2
-20-

18

| 10:34 | 1 | We are proceeding in accordance with the CDC |
| 10:34 | 2 | recommendations.  I have conducted three or four criminal |
| 10:34 | 3 | trials during the course of the pandemic, including 26 days |
| 10:34 | 4 | in the Avenatti trial until I had to declare a mistrial. |
| 10:34 | 5 | People were masked.  All the people are socially distanced, |
| 10:34 | 6 | except for witnesses when they were testifying who wore a |
| 10:34 | 7 | shield such as I have on for this hearing.  I think we can |
| 10:34 | 8 | deal with the COVID situation at least as it presently |
| 10:34 | 9 | exists. |
| 10:34 | 10 | MR. GERGELY:  Your Honor, we are getting probably |
| 10:34 | 11 | maybe about 20 percent of what you are saying.  The audio is |
| 10:34 | 12 | fairly poor. |
| 10:34 | 13 | THE COURT:  Hang up and come back in and see if |
| 10:34 | 14 | you can get a better circuit coming in. |
| 10:35 | 15 | MR. GERGELY:  Is everyone else able to hear |
| 10:35 | 16 | besides me? |
| 10:35 | 17 | THE COURT:  I can hear you just fine, sir. |
| 10:35 | 18 | Can you hear me, Mr. Re? |
| 10:35 | 19 | MR. RE:  I can hear you fine, Your Honor. |
| 10:35 | 20 | THE COURT:  Mr. Fletcher? |
| 10:35 | 21 | MR. FLETCHER:  Your Honor, it sounded off and on, |
| 10:35 | 22 | but it seems better now. |
| 10:35 | 23 | THE COURT:  Mr. Fletcher, can you hear me? |
| 10:35 | 24 | MR. FLETCHER:  You were coming in and out before, |
| 10:35 | 25 | but you sound better now. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-21 -

19

| | | |
|---|---|---|
| 10:35 | 1 | MR. GERGELY:  I'm hearing you better now.  It was |
| 10:35 | 2 | really choppy before.  I think the issue is we are getting |
| 10:35 | 3 | some feedback from a lot of mics from the computers at |
| 10:35 | 4 | Knobbe Martens.  If might help if everyone would mute |
| 10:35 | 5 | themselves while you are speaking. |
| 10:35 | 6 | THE COURT:  Yes. |
| 10:35 | 7 | I proposed a schedule at the last hearing that led |
| 10:36 | 8 | to a February 1 trial.  At this point, I'm asking what your |
| 10:36 | 9 | reaction is.  I laid out some dates in accordance with the |
| 10:36 | 10 | Court's bench trial order for filing testimony, responsive |
| 10:36 | 11 | testimony, and so on.  What's your reaction to that |
| 10:36 | 12 | schedule? |
| 10:36 | 13 | MR. RE:  If I understood Your Honor, plaintiffs' |
| 10:36 | 14 | statements will be due January 12, defendants' statements |
| 10:36 | 15 | due January 19, and objections due January 27. |
| 10:36 | 16 | MR. GERGELY:  Your Honor, it would be my |
| 10:36 | 17 | preference to push the trial out by at least another 90 |
| 10:36 | 18 | days, one, because of travel and COVID issues; and, two, it |
| 10:37 | 19 | gives us more time to prepare.  We were preparing that this |
| 10:37 | 20 | was going to be a jury trial, and now it's going to be by |
| 10:37 | 21 | declarations, which is a lot.  It's substantially more work. |
| 10:37 | 22 | THE COURT:  I will push it 30 days.  We will |
| 10:37 | 23 | proceed to trial on March 1, which I believe is a Tuesday. |
| 10:37 | 24 | THE CLERK:  It is, Your Honor. |
| 10:37 | 25 | MR. GERGELY:  Your Honor, I am supposed to be out |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-22-

| | | |
|---|---|---|
| 10:37 | 1 | of the country the third week of February and probably -- |
| 10:37 | 2 | I'm not looking at my calendar, but I will probably be |
| 10:38 | 3 | getting back right around the 1st. |
| 10:38 | 4 | THE COURT:  Folks are prepared to try this case, |
| 10:38 | 5 | and I don't want to lose the momentum that you already had |
| 10:38 | 6 | heading for a jury trial January 11, so I will push this to |
| 10:38 | 7 | March 15, but that's it. |
| 10:38 | 8 | Now, I believe you have received a copy of my |
| 10:38 | 9 | bench trial order.  Is that so?  If not, we will send it or |
| 10:38 | 10 | send it again.  Could you tell me whether you have received |
| 10:39 | 11 | that order or not, please? |
| 10:39 | 12 | MR. GERGELY:  Your Honor, I believe so, yes, and |
| 10:39 | 13 | I'm aware of that order on your website. |
| 10:39 | 14 | MR. RE:  We have it as well, Your Honor. |
| 10:39 | 15 | THE COURT:  All right.  Then the pretrial |
| 10:39 | 16 | conference date will be three weeks before, whatever that |
| 10:39 | 17 | Monday is -- oh, this is the pretrial conference.  I guess |
| 10:39 | 18 | we don't need it. |
| 10:39 | 19 | If you want to get together and visit on any |
| 10:39 | 20 | additional subjects, we can arrange a conference call, which |
| 10:39 | 21 | seems to be more be effective than Zoom right now. |
| 10:39 | 22 | Any other issues we should take up? |
| 10:39 | 23 | MR. RE:  Yes, Your Honor.  I have one question, |
| 10:39 | 24 | and it did deals with the possibility of a rebuttal case. |
| 10:40 | 25 | And I don't know how witness statements were to be done for |

| | | |
|---|---|---|
| 10:40 | 1 | a rebuttal case, or is a rebuttal case live after we have |
| 10:40 | 2 | had a chance to see the defendants evidence? |
| 10:40 | 3 | THE COURT:  Anticipate doing a rebuttal case live. |
| 10:40 | 4 | MR. RE:  Thank you, Your Honor. |
| 10:40 | 5 | THE COURT:  Now, I think given that the direct is |
| 10:40 | 6 | coming in by declaration that I'm going to set aside six |
| 10:40 | 7 | trial days for cross-examination and any further redirect. |
| 10:40 | 8 | I translate it to a time budget.  I figure we should get |
| 10:40 | 9 | about five-and-a-quarters hours in in a day.  I will round |
| 10:40 | 10 | it up to 16 hours for cross-examination and redirect. |
| 10:41 | 11 | Okay, anything else? |
| 10:41 | 12 | MR. RE:  Nothing for the plaintiff, Your Honor. |
| 10:41 | 13 | MR. GERGELY:  Your Honor, there was an issue that |
| 10:41 | 14 | was raised in the papers with respect to attendance of |
| 10:41 | 15 | client representatives. |
| 10:41 | 16 | THE COURT:  Right. |
| 10:41 | 17 | MR. GERGELY:  Our client representative is likely |
| 10:41 | 18 | Dr. Lamego.  I just want to make sure that he will be able |
| 10:41 | 19 | to attend the trial and listen to all the evidence and that |
| 10:41 | 20 | he won't be excluded in any way, shape, or form from the |
| 10:41 | 21 | trial. |
| 10:41 | 22 | THE COURT:  He is a party.  I don't see how he can |
| 10:41 | 23 | be excluded. |
| 10:41 | 24 | MR. GERGELY:  There is a Protective Order |
| 10:41 | 25 | governing discovery.  I just want to make sure that is not |

Exhibit 2
-24-

22

```
10:42   1   going create some sort of impediment.  I understood that was
10:42   2   for discovery.  But now we are actually going to be in
10:42   3   trial, and I just want to make sure it will be okay for him
10:42   4   to attend the trial, and he is not going to have any
10:42   5   Protective Order provisions enforced against him for
10:42   6   attending trial.
10:42   7               THE COURT:  I will enforce the Protective Order
10:42   8   even if he is a party.
10:42   9               MR. GERGELY:  I'm sorry, Your Honor.  I didn't
10:42  10   catch that.
10:42  11               THE COURT:  I will enforce the Protective Order
10:42  12   during the course of trial even if he is a party.
10:42  13               MR. GERGELY:  What does that mean, Your Honor?
10:42  14               THE COURT:  If the examination goes into materials
10:42  15   that he is not authorized to have access to, he will be
10:43  16   excluded from that portion of the proceeding just as any
10:43  17   individual not authorized under the Protective Order to have
10:43  18   access to trade secrets would be.
10:43  19               Any further questions about that, Mr. Gergely?
10:43  20               MR. GERGELY:  No, Your Honor.
10:43  21               THE COURT:  Okay.  Then we are adjourned.  Thank
10:43  22   you.
10:43  23               (Whereupon, the proceedings were concluded.)
10:43  24                         *    *    *
10:43  25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2

-25 -

23

| | | |
|---|---|---|
| 10:43 | 1 | |
| 10:43 | 2 | |
| 10:43 | 3 | |
| 10:43 | 4 | **CERTIFICATE** |
| 10:43 | 5 | |
| 10:43 | 6 | I hereby certify that pursuant to Section 753, |
| 10:43 | 7 | Title 28, United States Code, the foregoing is a true and |
| 10:43 | 8 | correct transcript of the stenographically reported |
| 10:43 | 9 | proceedings held in the above-entitled matter and that the |
| 10:43 | 10 | transcript page format is in conformance with the |
| 10:43 | 11 | regulations of the Judicial Conference of the United States. |
| 10:43 | 12 | |
| 10:43 | 13 | Date:  December 21, 2021 |
| 10:43 | 14 | |
| 10:43 | 15 | /s/   Sharon A. Seffens  12/21/21 |
| 10:43 | 16 | |
| 10:43 | 17 | SHARON A. SEFFENS, U.S. COURT REPORTER |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 2
-26 -