MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
  thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
  amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' "UPDATED" AND "SUPPLEMENTAL" EXPERT REPORTS SERVED AUGUST 9, 2024**<br><br>Date: September 9, 2024<br>Time: 1:30pm<br>Courtroom: 10C<br><br>Pre-Trial Conference: Oct. 28, 2024<br>Trial: Nov. 5, 2024 |

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel. 650.949.3014 / Fax: 949.202.3001

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.     Mr. Kinrich's New Report Is Untimely And Improper ........................................ 2

      A.    The Report Violates This Court's Ruling On The Scope Of Mr. Kinrich's "Incremental Profits" Theory ........................................................ 2

      B.    The Report Includes At Least Two Previously Undisclosed Opinions Regarding How To Value Apple Watch Features ..................... 4

      C.    The Report Violates This Court's Existing *In Limine* Order Barring Reference To The ITC Proceeding. ....................................................... 7

II.    Dr. Madisetti's New Report Is Also Untimely And Improper. ........................... 8

III.   The New Kinrich And Madisetti Reports Should Be Struck In Their Entirety. .............................................................................................. 10

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cross-Fit, Inc. v. Nat'l Strength and Conditioning Assn.*,
  2018 WL 3491854 (S.D. Cal. July 18, 2018) ...................................................... 11

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
  2016 WL 3965190 (D. Nev. July 21, 2016) ....................................................... 10

*L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*,
  2019 WL 13095324 (C.D. Cal. Oct. 29, 2019) .................................................... 11

*Plymouth Grain Terminals, LLC v. Lansing Grain Co., LLC*,
  2013 WL 12177094 (E.D. Wash. Nov. 21, 2013) ............................................... 11

*Reinsdorf v. Skechers U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. Feb. 6, 2013) .................................................... 11

*Robinson v. HD Supply, Inc.*,
  2013 WL 5817555 (E.D. Cal. Oct. 29, 2013) ...................................................... 11

*Smartflash LLC v. Apple Inc.*,
  621 F. App'x 995 (Fed. Cir. 2015) ..................................................................... 10

# INTRODUCTION

Over two years after expert discovery closed for Plaintiffs' trade-secret and patent-ownership claims, and less than three months before the retrial on those same claims, on August 9, 2024, Plaintiffs served new expert reports from Dr. Madisetti and Mr. Kinrich. Masimo has no proper procedural or substantive justification for these new reports. The reports should be stricken, and the parties should proceed to the November trial relying on the long-since-closed expert record.

Plaintiffs' threshold representation (at 1) that neither Mr. Kinrich nor Dr. Madisetti "*could* have provided"[1] their August 2024 updates as part of their original reports is wrong. To take just one example, Mr. Kinrich's October 2022 damages report valued just three features when comparing the difference between Apple Watch Series 6 and SE, and he admitted under cross-examination he did not attempt to value *any* other features. Ex. 6 [4/13/23 Trial Tr. AM] at 118, 124-128. Now, Mr. Kinrich's "updated" report values many additional features, including features he was previously aware of and chose to ignore, such as the S6 chip that was the focus on cross-examination—a valuation that Plaintiffs admit they plan to use to "rebut[]" the argument that Mr. Kinrich's analysis did not adequately consider all the differences between Series 6 and SE. Opp. at 11. This Court has previously barred Plaintiffs from engaging in precisely this kind of inappropriate backfilling. *See, e.g.*, Dkt. 1347 at 9-10; *see generally* Dkts. 1031, 1076, 1516.

The other additions to the Kinrich and Madisetti reports are equally improper. In particular, Plaintiffs do not seriously dispute that Mr. Kinrich's "update" considers additional Apple Watch models beyond the Series 6 and Series 7 that his original "incremental profit" was limited to, accounts for surveys produced during trade secret discovery that he previously omitted from his analysis, and violates this Court's existing motion *in limine* ruling barring reference to other proceedings. As to Dr. Madisetti,

---

[1] Emphasis is added unless otherwise noted.

while Plaintiffs assert that particular documents produced during patent discovery would have provided them with a stronger basis for advancing a new disclosure theory for L5, they do not seriously dispute (nor could they) that Apple produced more than enough information to put them on notice of this (flawed) theory.

Ultimately, Plaintiffs fall back on blaming Apple for their failure to include these belated theories in Mr. Kinrich's and Dr. Madisetti's original reports. But they have no explanation for why they waited until just a few months before the start of a long-planned retrial to supplement reports based on information admittedly provided by August 2022 (*e.g.*, the surveys) or—at worst—during fact discovery in the patent infringement case. Plaintiffs never sought re-opening of discovery related to the trade secret claims or even alerted the Court or Apple to their intent to serve these new reports, notwithstanding extensive discussion about the case schedule and trial. Plaintiffs' untimely service of new opinions is yet another attempt to disrupt the November trial. The reports should be stricken.

## ARGUMENT

### I. MR. KINRICH'S NEW REPORT IS UNTIMELY AND IMPROPER

Plaintiffs are wrong that Mr. Kinrich August 9, 2024 report simply "appl[ies] the identical methodology he used in his original report." Opp. at 2. The "updated" report is a clear attempt to correct numerous methodological mistakes that Apple highlighted at trial.

#### A. The Report Violates This Court's Ruling On The Scope Of Mr. Kinrich's "Incremental Profits" Theory.

Mr. Kinrich's new report violates this Court's April 12, 2023 order at trial "limit[ing] the unjust enrichment calculation to Series 6 and 7." Ex. 5 [4/12/23 Trial Tr. AM] at 15:6-18; *see also* Mot. at 6-8. Plaintiffs' explanations for why this Court should disregard both its past ruling and Mr. Kinrich's prior express limitation on his damages calculation are without merit.

***First***, Plaintiffs are wrong that Apple does not contest the timeliness of Mr.

Kinrich's updates regarding the new watches. Opp. at 7. As Apple wrote in its opening brief: "Plaintiffs' attempt to now introduce a calculation of incremental profits attributable to these later models is … untimely[.]" Mot. at 7. Plaintiffs acknowledge (at 7) that Apple Watch Series 8, Ultra, and SE2 were released *before* Mr. Kinrich's opening report (and thus over six months before this Court's April 2023 ruling). Yet Mr. Kinrich did not attempt to address them in any way in his opening report or suggest he would update his calculation to account for those products or any other future models. Rather, as this Court summarized in April 2023, Series 6 and 7 "are the only series on which [Mr. Kinrich's report says] Masimo seeks unjust enrichment." Ex. 4 [4/10/23 Trial Tr.] at 158:6-9.

That Series 8 and Ultra were released a few weeks before Mr. Kinrich's opening report does not excuse the timing of his recent supplement *two years* later. While Plaintiffs (at 8) try to fault Apple for failing to produce Series 8 and Ultra sales data until earlier this year (in the context of the patent infringement case), they ignore that Plaintiffs previously requested the information prior to the April 2023 trial and Apple refused precisely because that data was irrelevant to Mr. Kinrich's unjust enrichment methodology. *See* Ex. 11 [3/8/23 Email from Apple counsel] at 1; Mot. at 7. Plaintiffs did not object then—nor did they re-raise the issue when Series 9 and Ultra 2 were released eleven months ago.[2] Plaintiffs cannot reasonably sit on their hands for months or years and then blame Apple for their lack of diligence.

***Second***, Plaintiffs wrongly suggest that the Court's April 2023 Order addressed only whether Masimo could pursue unjust enrichment for older versions of Apple Watch. Opp. at 7. The Court did not limit its ruling to particular models; rather, it correctly held that Plaintiffs' remaining theory of unjust enrichment was limited to Apple Watch Series 6 and 7 because Mr. Kinrich had expressly limited his analysis to

---

[2] *See, e.g.*, "Apple introduces the advanced new Apple Watch Series 9" (Sept. 12, 2023), *available at*: https://tinyurl.com/425dfph5; "Apple unveils Apple Watch Ultra 2" (Sept. 12, 2023), *available at*: https://tinyurl.com/3u26pyvp.

those models. *See* Ex. 5 [4/12/23 Trial Tr. AM] at 15:6-18 (Court noting that it had "great difficulty getting beyond th[e] limitations" of Mr. Kinrich's report). In any event, Plaintiffs should not be rewarded for failing to timely advance their new argument that Mr. Kinrich should be permitted to testify to the value of later-issued models—an argument that they could have advanced as early as the March 2023 email exchange between counsel. *See* Ex. 11 [3/8/23 Email from Apple counsel].

***Third***, even aside from the (dispositive) timeliness issues, Plaintiffs are wrong to argue that Mr. Kinrich's calculations based on the new models are merely an extension of his prior theories. *See* Opp. at 7-8. It was Mr. Kinrich himself who explained at trial (at the prompting of Plaintiffs' counsel) that comparing Series 6 and SE was more appropriate than comparing Series 5 and 6 because "one … expects the new model to replace the old model and add new features." Ex. 6 [4/13/23 Trial Tr. AM] at 87:12-89:10. It is impossible to square Mr. Kinrich's sworn testimony with the newfound view reflected in his updated report that Blood Oxygen can be reliably valued regardless of whether it is a "new feature[]."[3]

**B.    The Report Includes At Least Two Previously Undisclosed Opinions Regarding How To Value Apple Watch Features.**

As explained, Mr. Kinrich's "updated" report changes his prior methodology in two ways intended to address critiques Apple raised at trial: (1) Mr. Kinrich purports to value seven times as many Apple features as before (including the S6 chip), and (2) Mr. Kinrich now accounts for buyer surveys that were produced during discovery on the trade secret claims. Mot. at 8-11. Plaintiffs tellingly do not dispute that the new report values new features and for the first time addresses buyer surveys that Apple timely produced in August 2022. The arguments Plaintiffs do make are meritless.

***First***, Plaintiffs erroneously contend that Mr. Kinrich should be permitted to rely in the first instance on buyer surveys from Q2FY2021 – Q2FY2022 because Apple

---

[3] Plaintiffs' assertion (at 8) that this point "goes to the merits" of Mr. Kinrich's opinion is a red herring. Mr. Kinrich's logic is both new ***and*** flawed.

supposedly "buried" the surveys in its discovery productions. Opp. at 11.[4] This is not a serious argument. Apple timely produced these documents by the close of fact discovery in August 2022, two months before Mr. Kinrich served his opening report. *See* Ex. 3 [Kinrich Op. Rpt.] (dated Oct. 6 and updated Oct. 17, 2022). Had Plaintiffs needed more time to prepare and serve Mr. Kinrich's expert report in light of Apple's timely production, they should have sought it at that time. Indeed, the parties later agreed to push back certain expert discovery deadlines, including the deadline for Mr. Kinrich's report. *See* Dkt. 1029-3 at 900. Plaintiffs cannot reasonably wait ***two years*** to raise a dispute about whether certain information was timely produced.

Plaintiffs' related suggestion (at 11) that Apple "does not fault" Mr. Kinrich for relying on buyer surveys produced in 2024 is also wrong. Plaintiffs offer no reasonable justification for why they should be permitted to selectively "update" expert reports to incorporate materials produced in response to discovery requests related to their patent infringement claims. Discovery on Plaintiffs' trade secret claims closed long ago, and they neither sought nor received a schedule for re-opening such discovery. In any event, Mr. Kinrich's reliance on the recently produced surveys was also improper because (as discussed next) they were part of a broader, methodological shift. *See also* Mot. at 8-11.

***Second***, Plaintiffs wrongly argue that Mr. Kinrich's methodology did not change because his original and "updated" report both rely on statements made on "Apple['s] … website" regarding which features were the most important. Opp. at 8-9. Plaintiffs' admission a few pages later that Mr. Kinrich's updated calculation "***reduce*[*s*]**" his unjust enrichment estimate, Opp. at 10-11 (emphasis in original), makes clear that—as a matter of logic—Mr. Kinrich cannot be applying the same methodology. Unjust enrichment measures the value to Apple from the purported use of Plaintiffs' supposed trade secrets.

---

[4] Plaintiffs' assertion (at 9) that "Kinrich lacked survey data to value the additional differences Apple identified between the Series 7 and SE" is thus highly misleading. Mr. Kinrich "lacked" data only because Plaintiffs' attorneys failed to provide him with it, not because Apple failed to produce it. Dkt. 1171-5 [Kinrich Dep.] at 279:17-280:17.

Dkt. 1715 at 48 (Jury Instruction No. 38: "to decide the amount of any unjust enrichment, first determine the value of Apple's benefit that it would not have achieved except for its misappropriation"). And any value Apple has received from Blood Oxygen would presumably only increase over time—particularly when considering two new years of sales and four new Apple Watch models. That Mr. Kinrich's bottom-line damages number is now lower than when he was relying on fewer sales and models only makes sense if he used a new approach.

In any event, Plaintiffs mislead when they assert (at 9) that Mr. Kinrich's updated report relies on "the features that *Apple's website* identif[ies] to differentiate between" Series 8, 9, Ultra, and Ultra 2 on the one hand and Series SE2 on the other. The passage from the "updated" report that Plaintiffs cite (paragraph 16) makes no mention of Apple's website. Instead, his analysis focuses on "███████████████████████████████████████████████" Ex. 1 [8/9/24 Kinrich Rpt.] ¶ 16. While an underlying appendix includes a few passing references to a "compare" feature on Apple's website, this too is a significant change from Mr. Kinrich's report, which relied on the *marketing* for particular products. *See, e.g.*, Ex. 3 [Kinrich Op. Rpt.] ¶ 153 ("█████████████████████████████████████████"); Ex. 6 [4/13/23 Trial Tr. AM] at 101-102 (Mr. Kinrich testifying he apportioned value of purported trade secrets by considering "██████████████████████████"). Only some of that supposed marketing even appeared on Apple's website. For example, Mr. Kinrich's original report relied on *New York Times* and *CNET* articles to justify his position, Ex. 3 at 75 fn.288-289, and at trial, Mr. Kinrich focused on Apple's video launch of the Series 6. Ex. 6 [4/13/23 Trial Tr. AM] at 95:8-23.

More broadly, there was nothing that stopped Mr. Kinrich from relying on a similar buyer survey break-down of top features in his original report because the buyer surveys he originally analyzed also included lists of "top" features. Ex. 1 [8/9/24 Kinrich Rpt.] at Ex. 4.C at 17 ("███████████████████

1   ▮▮▮▮▮▮▮▮▮▮"). At trial itself, Mr. Kinrich referenced JTX-367 (a survey from
2   Q1FY2021). Ex. 6 at 100. This survey included a list of "top" features: ▮▮▮
3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6   ▮▮▮▮▮▮▮▮▮▮. Ex. 19 [JTX-367] at -664.[5] Still, Mr. Kinrich conceded on cross-
7   examination that he had only accounted for Blood Oxygen, ECG, and always-on in his
8   original analysis. *See* Mot. at 8-9.

9   ***Finally***, Plaintiffs wrongly assert that Mr. Kinrich's calculation of the value of
10  the S6 chip—a particularly blatant deviation from his prior report, *see* Mot. at 10-11—
11  is appropriate because Mr. Kinrich still maintains that the S6 chip should not be
12  considered as part of the unjust enrichment award. Opp. at 11. But in the same breath,
13  Plaintiffs admit that they intend to use the valuation as "rebuttal" evidence in response
14  to Apple's "critique" that Mr. Kinrich's approach did not adequately account for most
15  of the differences between Series 6/7 and Series SE. *Id.*; *see also* Opp. at 3 ("Kinrich
16  quantified Apple's critique that he should have accounted for the S6 processor in Series
17  6."). This kind of behavior is precisely what this Court's prior order striking another
18  untimely Kinrich report forbids. *See* Dkt. 1347 at 9-10 (improper to "revise …
19  disclosures in light of … opponent's challenges to the analysis and conclusions therein
20  … after the court's deadline for doing so has passed").

21      **C.**    **The Report Violates This Court's Existing *In Limine* Order Barring**
22          **Reference To The ITC Proceeding.**

23  Mr. Kinrich's report improperly relies on certain statements made by Apple in
24  International Trade Commissions proceedings and follow-on Federal Circuit

---

[5] While Mr. Kinrich's report considers some new features that did not exist in Series 6 or 7, that makes no difference to the analysis. The issue is that Mr. Kinrich previously asserted that only three features were relevant and no others.

proceedings. Mot. at 11-12.[6] Plaintiffs do not seriously dispute that Apple could not cross-examine Mr. Kinrich on the basis for these statements without violating the existing *in limine* order. While Plaintiffs wrongly imply (at 10) that the *in limine* order includes a blanket exception permitting "evidence from another proceeding" to be admitted for "proper purposes," the order only expressly contemplates that such evidence can be used for impeachment. Dkt. 1469 at 2. Plaintiffs' suggestion (at 10) that Apple will suffer minimal prejudice because Mr. Kinrich's analysis is more focused on the effects of the ITC ban rather than the ruling itself is specious—Apple cannot address the effects without also addressing their cause. Finally, Plaintiffs attempt (at 9-10) to re-argue the merits of this Court's prior decision, but they ignore both the rigorous legal standards for requesting reconsideration, L.R. 7-18, and this Court's longstanding guidance that any request for affirmative relief requires a separate motion, *see, e.g.*, Dkt. 1469 at 2—and in any event, Plaintiffs provide no substantive cause for the Court to change the substance of its prior decision.[7]

## II. DR. MADISETTI'S NEW REPORT IS ALSO UNTIMELY AND IMPROPER.

As explained, Dr. Madisetti could have—and should have—presented his new L5 disclosure theory in his original report in September 2022. Mot. at 12-14. Plaintiffs' contrary arguments are unavailing.

***First***, Plaintiffs' assertion (at 13) that "Apple does not dispute that it first produced evidence revealing th[e] disclosure in June 2024" is baseless. Apple's opening brief not only took exactly the opposite view (*i.e.*, "Plaintiffs were in possession of this

---

[6] The same error infects paragraph 11 of Mr. Kinrich's report, which cites a Bloomberg article summarizing the parties' arguments in this litigation and the ITC proceedings. *See* Ex. 1 at 5 & n.17 (citing article located at https://tinyurl.com/328tv6vs). Indeed, the same passage that Mr. Kinrich relies upon to justify his opinion appears simply to paraphrase ***Masimo's*** arguments in prior filings for why Blood Oxygen is important.

[7] In particular, Apple's Federal Circuit filings hardly contain the kind of "new material facts" that have emerged since the *in limine* order that would justify reconsideration. Apple made similar points about Blood Oxygen in ITC filings that predate the *in limine* order. *Compare, e.g.*, Ex. 1 [8/9/24 Kinrich Rpt.] ¶ 10 *with Certain Light-Based Physiological Measurement Devices*, Inv. No. 337-TA-1276, EDIS Doc ID 791062 [Apple's 2/23/2023 Public Interest Statement] at 1.

1  same information *years ago*," Mot. at 12-13), but it identified multiple documents
2  showing why that was so.  Plaintiffs barely acknowledge that evidence and instead
3  merely assert that the documents produced prior to the close of fact discovery do not
4  show Apple actually transferred L5 to ▌.  This assertion cannot be squared with Dr.
5  Madisetti's own "supplemental" report, which concludes Apple disclosed L-5 based on
6  an ▌ (APL-MAS_00315919) that
7  (by Dr. Madisetti's own description) "▌
8  ▌"  *See* Mot. at 12-
9  13; Ex. 2 [8/9/24 Madisetti Rpt.] ¶¶ 5-7 (▌
10 ▌).  That ▌ was undisputedly
11 produced *in 2021*.  Moreover, the ▌ was attached to an email—also produced in
12 2021—that stated "▌"  *See* Ex. 14 [APL-
13 MAS_00315918] (email dated 10/12/2018).  Plaintiffs' assertion (at 13) that this
14 evidence was "internal to Apple" is another red herring.  All the documents relied on in
15 Dr. Madisetti's supplement were produced from Apple's internal files.  Nothing
16 prevented Dr. Madisetti from earlier drawing the conclusion he now draws that Apple
17 allegedly disclosed L-5 to ▌ based on its sharing of the ▌.

18      ***Second***, Plaintiffs assert—without clear explanation—that Apple deliberately
19 "withheld documents" that would have supported Plaintiffs' new disclosure theory.
20 Opp. at 14.  Such a serious accusation should be backed by evidence; Plaintiffs cite none.
21 It is entirely reasonable and expected that new documents would be produced in
22 response to Plaintiffs' voluminous requests related to their patent infringement claims
23 that would not have been produced previously.  During trade secret discovery, Apple
24 produced over 300,000 documents from over 130 different custodians, including 39 ESI
25 custodians identified by Masimo.  Apple searched the e-mails of those custodians for
26 dozens of agreed-to terms.  Plaintiffs do not identify a single custodian from the trade
27 secret case who supposedly had possession of the three documents they now claim are
28 crucial, all three of which were produced as a result of requests made during ***patent***

discovery.

### III. THE NEW KINRICH AND MADISETTI REPORTS SHOULD BE STRUCK IN THEIR ENTIRETY.

As explained, this Court should strike the eleventh-hour Kinrich and Madisetti reports because their late disclosure was neither substantially justified nor harmless. Mot. at 14-15. Plaintiffs have not met their burden to prove otherwise.

***First***, Plaintiffs' argument for why they were substantially justified in serving the Kinrich and Madisetti reports two years after the close of fact discovery and three months before the retrial merely repeat the same basic points already addressed above. *See* Opp. at 12 (arguing new Kinrich report was appropriate because it relied on data Mr. Kinrich purportedly did not have and was consistent with his prior methodology); *id.* at 14 (arguing new Madisetti report was appropriate because it relied on information Apple was supposedly "concealing"). Because Plaintiffs' arguments on the merits are severely flawed, they cannot provide the requisite substantial justification for disregarding the time limits laid out by the Federal Rules of Civil Procedure. *See* Dkt. 2052 at 13 (Court recognizing that trade secret claims were "ready to go" and could be "taken 'off the shelf'").

***Second***, Plaintiffs wrongly assert that the eleventh-hour service of the new Kinrich and Madisetti reports was harmless based on (1) the same merits arguments disposed of above, and (2) the fact that Apple retains the ability to depose either expert. Opp. at 12, 14. In other words, Plaintiffs do not dispute that their experts' belated reports will require reopening expert discovery just a few months before trial starts. *See* Mot. at 15. This process will not only require deposing Mr. Kinrich and Dr. Madisetti but also having Apple's experts produce their own rebuttal reports and sit for depositions at a time when they and Apple's counsel will be preparing for trial. *See, e.g.*, *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (trial is "the most burdensome task" in a litigation); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3965190, at *4 (D. Nev. July 21, 2016) ("'[E]ven though the ultimate trial date was

1  still some months away[,]' late supplemental disclosures are not harmless where parties
2  disregard the Court's clear scheduling orders" (quoting *Wong v. Regents of Univ. of*
3  *California*, 410 F.3d 1052, 1062 (9th Cir. 2005))); *Robinson v. HD Supply, Inc.*, 2013
4  WL 5817555, at *3 (E.D. Cal. Oct. 29, 2013) ("Failure to disclose the scope of
5  expected expert testimony may prejudice an opposing party in its ability to properly
6  depose that witness, select a rebuttal expert witness, and prepare for trial").

7        To be clear:  Apple is not requesting and does not want a delay of the retrial.
8  Following extensive arguments by the parties, the Court recently confirmed that the trial
9  on the trade-secret and patent-ownership claims will proceed as scheduled in November,
10  and Apple respectfully submits that under no circumstances should the Court reconsider
11  that decision.  It is time to bring these claims to closure, and Plaintiffs' latest effort to
12  disrupt and delay the retrial should be rejected.

13        At the end of the day, Plaintiffs do not cite a single case where a court has
14  permitted a party to serve supplemental expert reports two years after the close of fact
15  discovery and based on changes to methodology or opinions that could have been
16  disclosed at the time the original reports were served.  That is for good reason.  "The
17  duty to supplement 'does not give a license to sandbag one's opponent.'" *Reinsdorf v.*
18  *Skechers U.S.A.*, 922 F. Supp. 2d 866, 880 (C.D. Cal. Feb. 6, 2013) (citation omitted).
19  Plaintiffs' cited cases stand for the same principle.  *See, e.g.*, *L.A. Int'l Corp. v. Prestige*
20  *Brands Holdings, Inc.*, 2019 WL 13095324, at *5 (C.D. Cal. Oct. 29, 2019) (holding
21  new opinions "masquerading as a supplemental report" especially where "'the plaintiff
22  substituted new analyses … in direct response to an adverse argument' are not truly
23  supplemental" (citation omitted)); *Plymouth Grain Terminals, LLC v. Lansing Grain*
24  *Co., LLC*, 2013 WL 12177094, at *3 (E.D. Wash. Nov. 21, 2013) ("gam[ing] the system
25  by proposing a new damages calculation because [plaintiffs] fear … Report will not
26  stand up to … scrutiny" is improper) (collecting cases); *Cross-Fit, Inc. v. Nat'l Strength*
27  *and Conditioning Assn.*, 2018 WL 3491854, at *8 (S.D. Cal. July 18, 2018) (recognizing
28  same).

1   *Reinsdorf*, *L.A. Int'l Corp.*, *Plymouth*, and *Cross-Fit* (not to mention this Court's
2   own prior decisions barring Plaintiffs' repeated attempts to change their theory of the
3   case, *see* Dkts. 1347, 1031, 1076, 1516) all support the same conclusion. The Kinrich
4   and Madisetti reports should be stricken entirely.

## CONCLUSION

6   For the foregoing reasons, the Court should strike Mr. Kinrich's and Dr.
7   Madisetti's August 9, 2024 expert reports.

Dated: August 28, 2024                    Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: */s/ Mark D. Selwyn*
        Mark D. Selwyn


*Attorneys for Defendant Apple Inc.*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 3978 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1

 __ complies with the word limit set by court order dated [date].

Dated: August 28, 2024                    Respectfully submitted,

> MARK D. SELWYN
> AMY K. WIGMORE
> JOSHUA H. LERNER
> JOSEPH J. MUELLER
> SARAH R. FRAZIER
> NORA Q.E. PASSAMANECK
> THOMAS G. SPRANKLING
> WILMER CUTLER PICKERING
> HALE AND DORR LLP
>
> BRIAN A. ROSENTHAL
> GIBSON, DUNN & CRUTCHER LLP
>
> KENNETH G. PARKER
> HAYNES AND BOONE, LLP
>
> By: */s/ Mark D. Selwyn*
>      Mark D. Selwyn
>
> *Attorneys for Defendant Apple Inc.*