1  MARK D. SELWYN, SBN 244180
       mark.selwyn@wilmerhale.com
2  THOMAS G. SPRANKLING, SBN 294831
   thomas.sprankling@wilmerhale.com
3  WILMER CUTLER PICKERING
       HALE AND DORR LLP
4  2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
5  Tel.: 650.858.6000 / Fax: 650.858.6100

6  JOSHUA H. LERNER, SBN 220755
       joshua.lerner@wilmerhale.com
7  WILMER CUTLER PICKERING
       HALE AND DORR LLP
8  One Front Street, Suite 3500
   San Francisco, CA 94111
9  Tel.: 628.235.1000 / Fax: 628.235.1001

10 AMY K. WIGMORE, *pro hac vice*
   amy.wigmore@wilmerhale.com
11 WILMER CUTLER PICKERING
       HALE AND DORR LLP
12 2100 Pennsylvania Ave NW
   Washington, DC 20037
13 Tel.: 202.663.6000 / Fax: 202.663.6363

14 [Counsel appearance continues on next page]

15 *Attorneys for Defendant Apple Inc.*

16      **UNITED STATES DISTRICT COURT**
17  **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18 MASIMO CORPORATION,
   a Delaware corporation; and        CASE NO. 8:20-cv-00048-JVS (JDEx)
19 CERCACOR LABORATORIES, INC.,       **APPLE'S MEMORANDUM OF**
   a Delaware corporation,            **CONTENTIONS OF FACT AND LAW**
20
                Plaintiffs,
21
           v.
22
                                      Pre-Trial Conference: Oct. 28, 2024
23 APPLE INC.,                        Trial: Nov. 5, 2024
   a California corporation,
24
                Defendant.
25

26      REDACTED VERSION OF DOCUMENT PROPOSED TO BE
27              FILED UNDER SEAL

28

1

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# **TABLE OF CONTENTS**

Page

I.   Claims and Defenses ................................................................................ 1

    A.   Plaintiffs' Claims.......................................................................... 1

        1.   Summary of Claims Plaintiffs Plan to Pursue .................. 1

        2.   Elements Required to Establish Plaintiffs' Claims........................ 2

        3.   Key Evidence in Opposition to Plaintiffs' Claims .......................... 6

    B.   Apple's Defenses......................................................................... 12

        1.   Summary of Affirmative Defenses Apple Intends to Purse
           At Trial.................................................................................. 12

        2.   Elements of Counterclaims and Affirmative Defenses ................. 14

        3.   Key Evidence in Support of Apple's Defenses ............................ 16

II.  Anticipated Evidentiary Issues ........................................................... 19

III. Issues of Law ...................................................................................... 21

IV.  Attorneys' Fees .................................................................................. 21

V.   Abandonment of issues........................................................................ 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajaxo Inc. v. E\*Trade Fin. Corp.*,
   187 Cal. App. 4th 1295 (2010) ...................................................................................4

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   28 Cal. App. 5th 923 (2018) .......................................................................................4

*Board of Education ex rel. Board of Trustees Florida State University v. American
   Bioscience Inc.*, 333 F.3d 1330 (Fed. Cir. 2003)........................................................5

*Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   563 U.S. 776 (2011).....................................................................................................6

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
   2019 WL 12521480 (C.D. Cal. Aug. 9, 2019) ..........................................................15

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*,
   2011 WL 38909933 (C.D. Cal. Aug. 25, 2011) ........................................................15

*DTM Rsch., L.L.C. v. AT&T Corp.*,
   245 F.3d 327 (4th Cir. 2001) .......................................................................................3

*Eco-Separator Co. v. Shell Canada Ltd.*,
   872 F.2d 427 (9th Cir. 1989) .....................................................................................15

*Edwards II v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (2008) ...............................................................................................19

*Eli Lilly and Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ............................................................................5, 15

*Enovsys LLC v. Nextel Commc'ns, Inc.*,
   614 F.3d 1333 (Fed. Cir. 2010) ...................................................................................6

*Fladeboe v. Am. Isuzu Motors Inc.*,
   150 Cal. App. 4th 42 (2007) ......................................................................................16

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) .......................................................................14

*General Elec. Co. v. Wilkins*,
  750 F.3d 1324 (Fed. Cir. 2014) ................................................................. 5

*GSI Tech., Inc. v. United Memories, Inc.*,
  2015 WL 5655092 (N.D. Cal. Sept. 25, 2015) ......................................... 14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ................................................................... 16

*Jasmine Networks, Inc. v. Superior Ct.*,
  180 Cal. App. 4th 980 (2009) .................................................................... 3

*Johnson v. City of Loma Linda*,
  24 Cal. 4th 61 (2000) .............................................................................. 14

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) ......................................... 14

*Rubin v. Gen. Hosp. Corp.*,
  523 F. App'x 719 (Fed. Cir. 2013) ........................................................... 15

*San Jose Construction, Inc. v. S.B.C.C., Inc.*,
  155 Cal. App. 4th 1528 (2007) ................................................................ 15

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (2003) .................................................................. 3

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
  959 F.3d 1065 (Fed. Cir. 2020) ................................................................. 6

*Shapiro v. Hasbro Inc.*,
  2016 WL 9113998 (C.D. Cal. July 18, 2016) .......................................... 15

*Teets v. Chromalloy Gas Turbine Corp.*,
  83 F.3d 403 (Fed. Cir. 1996) ..................................................................... 5

**Statutes**

Business and Professions Code § 16600 .............................................. 13, 19

Cal. Civ. Code § 3426.3 ......................................................................... 1, 4, 16

Wilmer Cutler
Pickering Hale
and Dorr LLP

APPLE'S MEM. OF CONTENTIONS OF FACT AND LAW

iii

CASE NO. 8:20-cv-00048-JVS (JDEx)

Pursuant to Local Rule 16-4, Apple Inc. ("Apple") respectfully submits this Memorandum of Contentions of Fact and Law. Apple reserves the right to amend and/or supplement these contentions based on this Court's pretrial rulings and other pre-trial findings and events.

## I. CLAIMS AND DEFENSES

### A. Plaintiffs' Claims[1]

Plaintiffs have indicated that they intend to pursue the following claims at trial.

#### 1. Summary of Claims Plaintiffs Plan to Pursue

**Count XIII:** Plaintiffs claim that Apple violated California's Uniform Trade Secrets Act by misappropriating five alleged trade secrets that distill to three things: a particular use of black foam, a specific kind of short circuit, and a particular form of demodulation. To the extent the Court finds misappropriation of any trade secret, Plaintiffs are seeking an unjust enrichment award pursuant to Cal. Civ. Code § 3426.3.

**COUNT XIV:** Plaintiffs seek correction of inventorship of U.S. Patent No. 10,078,052 ("'052 patent"), alleging that Masimo's employee (Mohamed Diab) should be added as joint inventor.

**COUNT XV:** Plaintiffs seek correction of inventorship of U.S. Patent No. 10,247,670 ("'670 patent"), alleging that Masimo's employee (Mohamed Diab) should be added as joint inventor.

**COUNT XVI:** Plaintiffs seek correction of inventorship of U.S. Patent No. 9,952,095 ("'095 patent"), alleging that Masimo's employee (Mohamed Diab) should be added as joint inventor.

**COUNT XX:** Plaintiffs claim that Masimo's employee (Mohamed Diab) made contributions to the '052 patent and was under an obligation to assign any interest in that

---

[1] On August 9, 2024, Plaintiffs' counsel informed Apple that Plaintiffs would seek to modify the case caption to substitute "Willow Laboratories, Inc." for Cercacor. Plaintiffs first provided limited incorporation information for Willow on October 13, 2024. During a meet-and-confer on October 14, 2024, Plaintiffs provided no explanation for the delay nor said when more information would be forthcoming. The limited information sheds no light on Willow's interest in the claims at issue.

Wilmer Cutler
Pickering Hale
and Dorr LLP

patent to Masimo. Plaintiffs thus seek a declaration that Masimo is at least a joint owner of the '052 patent.

**COUNT XXI:** Plaintiffs claim that Masimo's employee (Mohamed Diab) made contributions to the '670 patent and was under an obligation to assign any interest in that patent to Masimo. Plaintiffs thus seek a declaration that Masimo is at least a joint owner of the '670 patent.

**COUNT XXII:** Plaintiffs claim that Masimo's employee (Mohamed Diab) made contributions to the '095 patent and was under an obligation to assign any interest in that patent to Masimo. Plaintiffs thus seek a declaration that Masimo is at least a joint owner of the '095 patent.

**COUNT XXIII:** Plaintiffs seek a declaration that Cercacor is at least a joint owner of the '754 patent. Plaintiffs have withdrawn their claim that Jeroen Poeze made contributions to the '754 patent that warrant him being identified as an inventor. During a meet-and-confer call on October 14, 2024, Plaintiffs indicated that the sole ownership theory they are pursuing is that Marcelo Lamego made his contributions to the patent while at Cercacor and thus was under a duty to assign his rights in the '754 patent to Cercacor.

**COUNT XXVI:** Plaintiffs claim that Masimo's employee (Mohamed Diab) made contributions to U.S. Patent No. 11,009,390 ("'390 patent") and was under an obligation to assign any interest in that patent to Masimo. Plaintiffs thus seek a declaration that Masimo is at least a joint owner of the '390 patent.

**COUNT XXVIII:** Plaintiffs seek correction of inventorship of the '390 patent, alleging that Masimo's employee (Mohamed Diab) should be added as joint inventor.

### 2. Elements Required to Establish Plaintiffs' Claims

#### a. Trade Secret Misappropriation

To prove a claim for misappropriation under CUTSA, Plaintiffs must prove by a preponderance of the evidence "(1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret." Dkt. 1275 at 3 (citing Cal. Civ. Code

Wilmer Cutler
Pickering Hale
and Dorr LLP

§ 3426.1); *see also* Cal. Civ. Jury Instr. 4400-4401. Plaintiffs must also establish that Apple's "actions damaged" Plaintiffs. *See Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003); *see also* Cal. Civ. Jury Instr. 4401; Dkt. 1715 (Court's Instruction No. 19).

To establish ownership of each purported secret, Plaintiffs must prove that they developed the supposed secret or were otherwise in lawful possession of it at the time of the alleged misappropriation. *See Jasmine Networks, Inc. v. Superior Ct.*, 180 Cal. App. 4th 980, 997-1000 (2009); *DTM Rsch., L.L.C. v. AT&T Corp.*, 245 F.3d 327, 331 (4th Cir. 2001).[2]

To establish the existence of each purported trade secret, Plaintiffs must show that the information at issue "(1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the reasonable subject of efforts that are reasonable under the circumstances to maintain its secret." Dkt. 1275 at 4 (citing Cal. Civ. Code § 3426.1(d)); *see also* Cal. Civ. Jury Instr. 4402; Dkt. 1715 (Court's Instruction No. 21).

To establish misappropriation for each purported trade secret, Plaintiffs must show that Apple acquired, used, or disclosed the purported secrets, knowing or having reason to know that Apple gained access to the purported trade secret through improper means. *See* Dkt. 1275 at 9 (citing Cal. Civ. Code § 3426.1(a)-(b)); *see also* Cal. Civ. Jury Instr. 4405-4407. A trade secret is acquired through improper means when, *inter alia*, a party acquires it as a result of "breach or inducement of a breach of duty to maintain secrecy." Dkt. 1275 at 9; *see also* Cal. Civ. Jury Instr. 4408; Dkt. 1715 (Court's Instruction No. 33). To prove that Apple had the required state of mind, Plaintiffs must prove that before the asserted acquisition, use, or disclosure, another person at Apple

---

[2] This Court previously declined to place weight on the *Jasmine* case because, in that decision, "standing was disputed." Dkt. 1283 at 4. Standing is now disputed, given the failure of Plaintiffs to provide any information regarding the transformation of Cercacor into Willow.

knew or had reason to know that Apple had improperly obtained an alleged trade secret from Plaintiffs through Dr. Lamego. Dkt. 1715 (Court's Instruction No. 31). Plaintiffs must also prove that Apple's alleged "acquisition, use, or disclosure of the trade secret was a substantial factor in causing the[m] … harm." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 942 (2018).

### b. Relief

Under CUTSA, a plaintiff may recover for a defendant's unjust enrichment caused by misappropriation. Cal. Civ. Code § 3426.3(a). Here, Plaintiffs have waived or had stricken any claim to other forms of monetary relief available under CUTSA, including damages for actual loss, payment of a reasonable royalty, and exemplary damages. *See* Dkt. 2100 at 1 (waiving exemplary damages); Dkt. 2098 at 2 (withdrawing claim for payment of a reasonable royalty); Dkt. 1516 (striking lost profits claim); *see also generally* Cal. Civ. Code § 3426.3.[3]

Plaintiffs may only recover for unjust enrichment caused by alleged misappropriation and that is not taken into account in computing damages for actual loss. Cal. Civ. Code § 3426.3(a). To establish such causation, Plaintiffs must prove that the alleged "misappropriation was a substantial factor in causing Apple to be unjustly enriched." Dkt. 1715 (Court's Instruction No. 37). Plaintiffs must establish a "reasonable basis for the computation" to be awarded unjust enrichment damages. *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010). If Apple "has either not utilized the [alleged] stolen secret commercially or has not benefitted in any way that can be measured in monetary terms," there is insufficient "evidence to support a monetary award measured by … unjust enrichment." *Id.* at 1310.[4]

---

[3] As explained at Dkt. 2145-1, Plaintiffs have also voluntarily waived their right to appeal this Court's decisions striking their lost profits claim.

[4] Apple preserves for appeal its position that Plaintiffs bear the burden to prove the value of any benefit not reasonably attributable to misappropriation of the asserted trade secrets. *See* Dkt. 1676 at 16; Dkt 1643.

Wilmer Cutler
Pickering Hale
and Dorr LLP

### c. Correction of Inventorship

To establish that Plaintiffs' employees should be listed as joint inventors on the Apple patents at issue, Plaintiffs must "meet the heavy burden" of proving by clear and convincing evidence that Plaintiffs' employees made a significant contribution to at least one of the claims of each patent. *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-1359 (Fed. Cir. 2004); *Board of Education ex rel. Board of Trustees Florida State University v. American Bioscience Inc.*, 333 F.3d 1330, 1337 (Fed. Cir. 2003); Dkt. 1715 (Court's Instruction No. 41); *see also* Fed. Cir. Bar Ass'n., Model Patent Jury Instr. § 4.3d (2020).

Whether the contribution was significant in quality is measured against the scope of the full invention. *Eli Lilly*, 376 F.3d at 1359. Thus, a contribution does not qualify if it (1) "merely explain[s] what was 'then state of the art,'" (2) is "too far removed from the real-word realization of an invention'" (e.g., the purported joint inventor "merely suggests the idea of a result to be accomplished"), or (3) is focused "solely on [real-world] realization" (i.e., the assistance was provided "after conception of the claimed invention"). *Id.*; Dkt. 1715 (Court's Instruction No. 41). Thus, for example, "one does not qualify as a joint inventor merely by assisting the actual inventor," *Board of Education*, 333 F.3d at 1338, and "evidence of discussions between named inventor and putative co-inventor concerning subject matter of [the] claimed invention [i]s insufficient to establish co-inventorship," *General Elec. Co. v. Wilkins*, 750 F.3d 1324, 1332 (Fed. Cir. 2014).

A joint inventor must also show that his or her work was "conjoined with the efforts of the named inventors"—i.e., that "the inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly*, 376 F.3d at 1359.

### d. Declaratory Judgment of Patent Ownership

While "[o]wnership springs from invention[,] … contract law allows individuals to … consent by contract to assign all rights in inventive ideas to the employer." *Teets*

*v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996). Whether a party has ownership rights in a patent is determined by state contract law. *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020); *see also Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010) ("Who has legal title to a patent is a question of state law. Accordingly, we look to California law to determine who had an ownership interest in the patents." (citations omitted)).

"[A]lthough others may acquire an interest in an invention, any such interest—as a general rule—must trace back to the inventor." *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 786 (2011). Accordingly, where an alleged joint inventor has failed to "meet the heavy burden" of proving by clear and convincing evidence that he or she is indeed a joint inventor, there is no ownership interest to be acquired. *See supra* § I.A.2.c.

### 3. Key Evidence in Opposition to Plaintiffs' Claims

Apple provides the following summary of key evidence it expects to offer at trial in response to Plaintiffs' claims.

#### a. Trade Secret Misappropriation (Claim 13)

##### i. Alleged "Demodulation" Trade Secrets

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' alleged Demodulation trade secrets are not trade secrets and that, in any event, Apple has not misappropriated them:

- Testimony and evidence establishing Apple's independent development of Apple Watch, including the demodulation techniques therein;
- Testimony and evidence establishing that Plaintiffs' purported D1 and D3 secrets were generally known prior to any alleged misappropriation, including because of Plaintiffs' publication of the alleged secrets in their own patents and products;
- Testimony and evidence establishing that the alleged secrets do not have any independent economic value from being a secret;

- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged Demodulation trade secrets a secret, including but not limited to Plaintiffs' publication of the alleged secrets in their own patents and products;

- Testimony and evidence demonstrating that Plaintiffs did not possess the alleged Demodulation trade secrets at the time of the purported misappropriation, including but not limited to, testimony and evidence demonstrating that Marcelo Lamego did not learn of the techniques described in the alleged secrets from Plaintiffs, but instead learned them in school or through other public sources;

- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence establishing that the Apple Watch does not use, and has never used, Plaintiffs' alleged Demodulation secrets; and

- Testimony and evidence demonstrating that Apple has not caused any harm to Plaintiffs based on or received any benefit from the purported misappropriation.

Apple incorporates by reference all evidence and arguments in (1) its responses to Plaintiffs' Interrogatory Nos. 7-9, 12-13, and 17, (2) its expert reports, including but not limited to, the technical expert reports of Professor Majid Sarrafzadeh, Ph.D., and (3) its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1908-1; and Rule 52, Dkt. 1766.

### ii. Alleged "Light Piping" Trade Secrets

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' alleged Light Piping trade secrets are not trade secrets and that, in any event, Apple has not misappropriated them:

- Testimony and evidence establishing Apple's independent development of Apple Watch, the alleged secrets and accused components;

Wilmer Cutler
Pickering Hale
and Dorr LLP

- Testimony and evidence establishing that Plaintiffs' alleged Light Piping secrets were generally known, including but not limited to because of Plaintiffs' publication of the alleged secrets in their own patents;

- Testimony and evidence establishing that the alleged secrets do not have any independent economic value derived from being kept secret;

- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged Light Piping secrets a secret, including but not limited to Plaintiffs' publication of the alleged secrets in their own patents;

- Testimony and evidence demonstrating that Plaintiffs did not develop, possess, or own the alleged Light Piping secrets prior to any alleged misappropriation by Apple, including testimony and evidence demonstrating that Marcelo Lamego did not learn of the technology from Plaintiffs but instead learned them from public sources;

- Testimony and evidence demonstrating that Plaintiffs did not develop, possess, or own every method of "███████████████████████████████████ ███████████" prior to any alleged misappropriation by Apple but at most allegedly developed, possessed, or owned a limited subset of designs associated with solving the alleged problem of "████████████████████" (e.g., ████████ ████████████);

- Testimony and evidence demonstrating that Plaintiffs did not develop, possess, or own "████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████" in response to or as a result of ████████████ ███████████████████████████████████████ ██████████ ████████ ████████ ████████ ████████ ███████" prior to any alleged misappropriation by Apple, including because Plaintiffs did not possess "████████████████████████████████████████████████ ████████████████████████████████" in response to or as a result of

"█████████████████████████████████████████████

████████████████████████████████████████████████"

- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence demonstrating that Apple does not use, and has never used, Plaintiffs' alleged light piping trade secrets in an Apple product;

- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence that Apple solves a generally known problem ██████████████ different from "████████ ████████████████████████," and uses generally known circuitry ████ ████████████ different from the limited subset of methods of Plaintiffs allegedly developed, possessed, or owned to "████████████████████████ ████████████████████" and also different from any alleged circuitry suggested by Dr. Lamego;

- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence that Apple did not acquire the accused ████████████ from Dr. Lamego, Apple did not acquire the accused "█████████████████████████████████████████████████████" from Dr. Lamego, and Apple did not "d███████████████████████████ ████████████████" in response to or as a result of the accused ██████████;

- Testimony and evidence demonstrating that Apple has not caused any harm to Plaintiffs based on or received any benefit from the purported misappropriation.

Apple incorporates by reference all evidence and arguments in (1) Plaintiffs' Interrogatory Nos. 7-9, 12-13, 17, 20, and 26-27, (2) its expert reports, including but not limited to, the technical expert reports of Professor Steven Warren, Ph.D., and (3) its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

Wilmer Cutler
Pickering Hale
and Dorr LLP

### b. Monetary Relief For Trade Secret Misappropriation (Claim 13)

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs are not entitled to any monetary remedy with respect to any of the alleged trade secrets:

- Testimony and evidence establishing Apple's independent development of Apple Watch, the alleged trade secrets and accused features;
- Testimony and evidence establishing that Apple did not improperly acquire, use, or disclose the alleged secrets, including testimony and evidence establishing that Apple does not use, and has never used, Plaintiffs' alleged trade secrets in an Apple product;
- Testimony and evidence establishing that Apple was not unjustly enriched by any purported misappropriation;
- Testimony and evidence showing that any head start advantage to Apple from any purported misappropriation was immaterial;
- Testimony and evidence to rebut the "damages" opinions offered by Plaintiffs' fact and expert witnesses; and
- Testimony and evidence cited above in § I.A.3.a.

Apple incorporates by reference (1) its responses to Plaintiffs' Interrogatory No. 16, (2) all evidence and arguments in its expert reports, including but not limited to, the expert reports of Shirley Webster and Professors Steven Warren, Ph.D. and Majid Sarrafzadeh, Ph.D., and (3) its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### c. Correction of Inventorship (Claims 14-16 and 28)

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs are not entitled to correction of inventorship with respect to any of the '052, '670, '095, and '390 patents (collectively, the "Disputed Patents"):

- Testimony and evidence showing that the allegedly omitted inventors did not invent the subject matter claimed by the Disputed Patents;

- Testimony and evidence showing any information allegedly omitted inventors discussed with Marcelo Lamego was information that was already known in the prior art, including by virtue of Plaintiffs' publication, public use, or sale;

- Testimony and evidence showing that certain information known to allegedly omitted inventors was not conveyed to Marcelo Lamego;

- Testimony and evidence showing that certain information, including information not known in the prior art, was not possessed by the allegedly omitted inventors and thus could not have been conveyed to Marcelo Lamego;

- Testimony and evidence showing that Apple engineers (including, at the time, Marcelo Lamego) independently conceived of and reduced to practice the inventions described in the Disputed Patents; and

- Testimony and evidence cited above in Part I.A.3.a.

Apple incorporates by reference all evidence and arguments in (1) its response to Plaintiffs Interrogatory No. 14, (2) its expert reports, including but not limited to, the expert reports of Professors Steven Warren, Ph.D. and Majid Sarrafzadeh, Ph.D., and (3) its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### d. Declaratory Judgment of Patent Ownership (Claims 20-23, 26)

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs are not entitled to declarations of patent ownership with respect to any of the Disputed Patents:

- Testimony and evidence showing that the allegedly omitted inventors did not invent the subject matter claimed by the Disputed Patents;

- Testimony and evidence showing that Marcelo Lamego did not invent the subject matter claimed by the '754 Patent while employed by Plaintiffs;

- Testimony and evidence showing any information the allegedly omitted inventors discussed with Marcelo Lamego was information that was already known in the prior art, including by virtue of Plaintiffs' publication, public use, or sale;

- Testimony and evidence showing that certain information known to allegedly omitted inventors was not conveyed to Marcelo Lamego;

- Testimony and evidence showing that Apple's employees are the correct named inventors of the subject matter of the Disputed Patents;

- Testimony and evidence rebutting any testimony and evidence offered by Plaintiffs regarding any contractual agreements that purportedly obligate any employee of Plaintiffs to assign any of the Disputed Patents to Plaintiffs.

- Testimony and evidence cited above in §§ I.A.3.a and I.A.3.c.

Apple incorporates by reference all evidence and arguments in (1) its response to Plaintiffs Interrogatory No. 14, (2) its expert reports, including but not limited to, the expert reports of Professors Steven Warren, Ph.D. and Majid Sarrafzadeh, Ph.D., and (3) its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

## B. Apple's Defenses

Apple intends to present the following defenses at trial.

### 1. Summary of Affirmative Defenses Apple Intends to Purse At Trial[5]

**Affirmative Defense V: Laches.** Plaintiffs have unjustifiably delayed in asserting their trade secret misappropriation and inventorship/ownership claims.

---

[5] Apple does not intend to present its affirmative defenses that relate solely to the patent infringement claims, which are currently stayed. These include (1) patent non-infringement, (2) patent invalidity, (3) estoppel – patent, (4) failure to mark; no damages, and (5) no willful infringement.

Wilmer Cutler
Pickering Hale
and Dorr LLP

**Affirmative Defense VII: Statute of Limitations.** Plaintiffs' trade secret misappropriation claim is not timely under the relevant three-year statute of limitations and Plaintiffs have failed to justify their delay in bringing the case.[6]

**Affirmative Defense VIII: Readily Ascertainable.** Each of Plaintiffs' purported trade secrets is readily ascertainable through proper means, and thus does not constitute a trade secret as a matter of California law.[7]

**Affirmative Defense IX: Independent Development.** Apple developed its Apple Watch features independently from any alleged trade secrets Plaintiffs contend were misappropriated by Apple.

**Affirmative Defense X: Independent Invention.** Apple independently developed the inventions and technologies disclosed and claimed in the patents that are the subject of Plaintiffs' correction of inventorship and declaratory judgment claims.

**Affirmative Defense XI: Waiver.** Plaintiffs have unjustifiably delayed in asserting their trade secret misappropriation and inventorship/ownership claims.

**Affirmative Defense XII: No Causation.** None of the alleged trade secrets caused Apple to earn any of the profits that Plaintiffs allege are attributable to the Blood Oxygen feature on Apple Watch.

**Affirmative Defense XIV: Unclean Hands.** Plaintiffs' misappropriation claims are barred, in whole or in part, by the doctrine of unclean hands, including because Plaintiffs' conduct violates California Code, Business and Professions Code § 16600 and Unfair Competition Law, § 17200, et seq., and is contrary to public policy.[8]

---

[6] Plaintiffs have conceded that any purported misappropriation must have first occurred more than three years before the suit was filed, so Apple met its initial burden on the statute of limitations defense. *See* Dkt. 1901 at 17; *see also* 7/13/23 Tr. 52:13-15 (statement from Plaintiffs' counsel). The only remaining question is whether Plaintiffs have met their burden to show their delay in bringing the case was justified. *See* Dkt. 1901 at 17

[7] Apple acknowledges the Court's contrary ruling and formally presents this defense solely for appellate preservation. *See* Dkt. 1284 at 3-5.

[8] Apple acknowledges the Court's prior rulings on its unclean hands defense but preserves the full scope of that defense for appeal. *See* Dkt. 1526; 1900 at 5.

Wilmer Cutler
Pickering Hale
and Dorr LLP

### 2. Elements of Counterclaims and Affirmative Defenses

#### a. Laches

The equitable defense of laches "requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000); *see also Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *20 (C.D. Cal. Nov. 7, 2022) (citing *Johnson* for the proposition that laches requires a showing that "(1) Masimo unreasonably delayed asserting or diligently pursuing a claim for misappropriation of trade secrets and (2) any delay prejudiced Defendants").

#### b. Statute Of Limitations

Under CUTSA, "an action for [trade secret] misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Dkt. 606 at 3; *see also* Cal. Civ. Jury Instr. 4421. "The limitations period begins" "[w]hen there is reason to suspect that a trade secret has been misappropriated and a reasonable investigation would produce facts sufficient confirm this suspicion (and justify bringing suit)." Dkt. 606 at 3; *see also* Cal. Civ. Jury Instr. 4421. When (as here) "it is undisputed that the alleged misappropriation of trade secrets took place outside the limitations period, Plaintiffs 'have the burden of proving the facts necessary to toll the statute.'" *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012); *see also* Cal. Civ. Jury Instr. 441; Dkt. 1901 at 17. Because the remaining demodulation and light piping trade secrets "are related[,] … as soon as Plaintiffs were (or should have been) on notice of Lamego's alleged misappropriation, the statute of limitations began to run for [all] the [remaining] trade secrets." Dkt. 1901 at 19.

#### c. Readily Ascertainable

A purported trade secret is readily ascertainable by proper means if the information "can easily be gathered together from various sources through a minimum of time and labor." *GSI Tech., Inc. v. United Memories, Inc.*, 2015 WL 5655092, at *12

(N.D. Cal. Sept. 25, 2015); *see also, e.g.*, Cal. Civ. Jury Instr. 4420 ("In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort or expense."); *San Jose Construction, Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1542-1544 (2007) (question was whether defendant "could have replicated [the trade secret] within the short period it claimed to have needed" the underlying information").

### d.    Independent Development

"A defendant misappropriates a trade secret when they acquire, disclose, or use plaintiff's trade secret via improper means," which excludes "reverse engineering or independent development." *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2019 WL 12521480, at *9 (C.D. Cal. Aug. 9, 2019); *see also Eco-Separator Co. v. Shell Canada Ltd.*, 872 F.2d 427 (9th Cir. 1989) ("[P]roof of independent development would defeat a trade secret claim even if the two process were identical."); *Shapiro v. Hasbro Inc.*, 2016 WL 9113998, at *3 (C.D. Cal. July 18, 2016) ("[I]ndependent creation is, in fact, a viable defense to a misappropriation of trade secrets claim.").

### e.    Independent Invention

"Joint inventorship … can only arise when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly*, 376 F.3d at 1359.  Thus, where there the named inventors operated "independent" from alleged joint inventors, there can be no joint invention. *Rubin v. Gen. Hosp. Corp.*, 523 F. App'x 719, 723 (Fed. Cir. 2013); *see also supra* p. 5.

### f.    Waiver

"To establish waiver, Defendant must show that Plaintiff intentionally relinquished or abandoned a known right." *Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, 2011 WL 38909933, at *2 (C.D. Cal. Aug. 25, 2011).

### g.    No Causation

Under CUTSA, a plaintiff may only recover damages for unjust enrichment that is "caused by misappropriation." Cal. Civ. Code § 3426.3(a); *see also* Cal. Civ. Jury Instr. 4401(5) (misappropriation must have been "a substantial factor in causing" harm or unjust enrichment).

### h.    Unclean Hands

"The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). Under the doctrine, a plaintiff "must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 56 (2007), *as modified* (Apr. 24, 2007). Unclean hands thus applies where "it would be inequitable to provide the plaintiff any relief, and provides a complete defense to both legal and equitable causes of action." *Id.*

### 3.    Key Evidence in Support of Apple's Defenses

### a.    Laches

Apple intends to introduce at least the following categories of testimony and evidence establishing that Plaintiffs' suit is barred by laches:

- Testimony and evidence showing that Plaintiffs expressed overt suspicion as early as January 2014 that Apple intended to misappropriate their alleged trade secrets and evidence that Plaintiffs' suspicion could have been confirmed before 2017 through reasonable investigation.

- Testimony and evidence showing that Plaintiffs were aware of the Disputed Patents at least as early as December 2018 and possibly significantly earlier.

- Testimony and evidence showing that Apple has been prejudiced by Plaintiffs' strategic decision to wait nearly seven years before filing this suit in January 2020.

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6 and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### b. Statute Of Limitations

Apple intends to introduce at least testimony and evidence establishing that although Plaintiffs have alleged that Apple's purported misappropriation began nearly ten years ago, they were aware or should have been aware of the purported misappropriation at least by the end of 2016 and possibly significantly earlier (based on, among other things, Plaintiffs' overt expressions of suspicion about misappropriation). Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6; its briefing and argument concerning Plaintiffs' disclosures at trial of their attorney-client communications, Dkt. 1586; and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### c. Readily Ascertainable

Apple intends to produce at least testimony and evidence showing that each of Plaintiffs' purported trade secrets is publicly known or could otherwise be obtained, discovered, developed, or compiled without significant difficulty, effort or expense. Apple incorporates by reference all evidence and arguments in (1) its responses to Plaintiffs' Interrogatory Nos. 6, 12-14, (2) the expert reports from Professors Steven Warren, Ph.D., and Professor Majid Sarrafzadeh, Ph.D., and (3) its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### d. Independent Development

Apple intends to introduce at least testimony and evidence establishing Apple's independent development of Apple Watch, including for the accused features. Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory Nos. 3, 6, 13, and 14; in Part I.A.3.a, above; and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### e.     Independent Invention

Apple intends to introduce at least testimony and evidence establishing that Apple engineers (including, at the time, Marcelo Lamego) independently conceived of and reduced to practice the inventions described in the Disputed Patents.  Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 14; in Parts I.A.3.a, I.A.3.b, and I.A.3.c, above; and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### f.     Waiver

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6; in Parts I.B.3.c, above; and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### g.     No Causation

Apple intends to introduce at least the following categories of testimony and evidence:

- Testimony and evidence establishing that Apple was not unjustly enriched through the alleged misappropriation;
- Testimony and evidence that the supposed Blood Oxygen profits that Plaintiffs seek to recover were not caused by any misappropriation;
- Testimony and evidence establishing that Plaintiffs have not taken reasonable measures to keep their alleged trade secrets a secret, including but not limited to Plaintiffs' publication of the alleged secrets in their own patents, products, and/or publicly available documents;

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory Nos. 6 and 16; in Parts I.A.3.a-b above; and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

### h. Unclean Hands

Apple intends to introduce at least the following categories of testimony and evidence:

- Testimony and evidence establishing that Plaintiffs' actions violate California Code, Business and Professions Code § 16600 and Unfair Competition Law, § 17200, et seq., and are contrary to public policy;

- Testimony and evidence establishing that the confidentiality provisions of the Employee Confidentiality Agreements between Plaintiffs and Marcelo Lamego and other of Plaintiffs' employees are void as a matter of law because they restrain Lamego's and others' ability to practice their profession;

Apple incorporates by reference all evidence and arguments in its responses to Plaintiffs' Interrogatory No. 6; in Parts I.B.3.a and I.B.3.c, above; and in its post-trial motions under Rule 50(a), Dkt. 1705; Rule 50(b), Dkts. 1765, 1909; and Rule 52, Dkt. 1766.

## II. ANTICIPATED EVIDENTIARY ISSUES

The parties have agreed that the Court's prior motion *in limine* rulings remain binding for the retrial, subject to Plaintiffs' motion requesting modifications to those rulings. Dkt. 2125-2 at 1. Plaintiffs first contend that the Court's prior motion *in limine* rulings "are moot if a bench trial occurs." *Id.* at 4. Apple disagrees. Plaintiffs have not met the standard for reconsideration of these rulings. Nor have Plaintiffs identified any reason why the *in limine* rulings should be vacated so they can reargue the same relevance, hearsay, and other evidentiary issues with a witness on the stand. *See* Dkt. 2136. At a bare minimum, this Court's decision on the *in limine* motions should not affect this Court's related decision (first announced in a footnote to the MIL order) that Plaintiffs may not rely on the overly expansive confidentiality provisions in Masimo/Cercacor Employee Confidentiality agreements "to prove acquisition by improper means by … Lamego." Dkt. 1469 at 7 n.2; Dkt. 1526; Dkt. 1900 at 5. Among

other things, this ruling vindicates "California['s] settled public policy in favor of open competition." *Edwards II v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008).

Plaintiffs' motion also asks the Court to modify its ruling granting Apple's motion *in limine* No. 2 barring admission of evidence "about Apple's recruitment of Plaintiffs' employees other than those alleged to have conveyed trade secrets to Apple." Dkt. 1469 at 3; *see also* Dkt. 2125-2 at 6-10. Apple opposes this modification because evidence of hiring employees that are not accused of misappropriation is irrelevant. As this Court has observed, "employees are not only permitted but encouraged to move freely from one company to another under at-will employment." Dkt. 1469 at 3. Apple further maintains that the Court's prior ruling on motion *in limine* No. 2 now bars evidence concerning Apple's recruitment of Dr. Michael O'Reilly, because he is not alleged to have conveyed to Apple any of the alleged trade secrets still at issue.

Plaintiffs are also seeking to expand the issues to be tried in certain ways. First, Plaintiffs have added six Apple witnesses to their "may call" live witness list, even though the allocated trial time would not permit so many new witnesses. Plaintiffs also seek to alter the stipulated form of an exhibit admitted at the first trial to present a "smart recruiting" theory, which they previously agreed not to present. Apple opposes both attempts to expand the retrial.

Finally, Plaintiffs are also seeking to use in this trial deposition testimony taken and documents produced in separate patent litigation between the parties in the United States District Court for the District of Delaware. *See Apple, Inc. v. Masimo Corp.*, No. 22-cv-1377 (D. Del.). Following the original trial, the parties reached an agreement permitting cross-use of materials from the Delaware litigation in as evidence for the *patent infringement* claims in this case. However, that limited agreement provides no basis for using deposition testimony or documents in this retrial of the *trade secret* and *patent inventorship/ownership* claims. Indeed, to permit their use in the retrial absent Apple's consent would violate the protective order entered in the Delaware case. *See Apple, Inc. v. Masimo Corp.*, No. 22-cv-1377 (D. Del. Jun. 16, 2023) Dkt. 127 ¶ 16(a).

## III. ISSUES OF LAW[9]

Apple respectfully submits that at least the following legal issues remain to be decided:

- Whether each of the alleged trade secrets existed and was possessed and/or owned by Plaintiffs at the time of Apple's purported misappropriation;

- Whether each of Plaintiffs' alleged trade secrets is readily ascertainable—i.e., could be discovered from various sources through a relatively minimal amount of time and effort. *See, e.g.*, Dkt. 1225 (Apple's brief raising this issue). While this Court has not adopted Apple's interpretation of this affirmative defense, *see* Dkt. 1284, Apple reserves the right to raise this question on appeal.

- Whether Apple misappropriated any of the alleged trade secrets;

- Whether Plaintiffs can prove any unjust enrichment caused by Apple's alleged misappropriation;

- Whether Plaintiffs claim for misappropriation of trade secrets is barred by the statute of limitations and/or by the doctrines of laches and/or waiver;

- Whether any allegedly omitted inventor is a proper named inventor of any of the Disputed Patents; and

- Whether Plaintiffs are a joint or exclusive owner of any of the Disputed Patents.

Apple also reserves the right to identify additional legal issues based on arguments made by Plaintiffs in advance of trial (e.g., in connection with the proposed findings of fact and conclusions of law).

## IV. ATTORNEYS' FEES

Apple reserves the right to seek attorney's fees and costs from Plaintiffs.

## V. ABANDONMENT OF ISSUES

Plaintiffs have abandoned the following alleged trade secrets:

---

[9] Apple preserves for appeal its objection to the Court's order determining that Plaintiffs' trade secret claim would be retried without a jury. *See* Dkt. 2133.

- Demodulation Trade Secret Nos. 2, 4-9, and 11-15.[10]

- Light Piping Trade Secret Nos. 1-3, and 6-9.[11]

- ████████████████ Trade Secrets.

- Business & Marketing Trade Secret Nos. 3, 5 and 6.

- ████████████████ Trade Secrets.

- Strategies for Interacting with Hospitals Trade Secrets.

In addition, the Court has dismissed Plaintiffs' Hospital Interaction Trade Secret Nos. 1-4, *see* Dkt. 350 at 5-8; Business and Marketing Trade Secret Nos. 1, 2, 4, and 7, *see* Dkt. 1723 at 8; and the Value, Importance, and Appropriateness Trade Secret, *see* Dkt. 1901 at 12.[12]

Plaintiffs have also abandoned their claim for correction of inventorship for the '754 Patent (Count XVII).

---

[10] For clarity, the only purported Demodulation trade secrets Plaintiffs pressed at the last trial were D1, D3, and D10. *See* Dkt. 1719 at 2.

[11] For clarity, the only purported Light Piping trade secrets Plaintiffs pressed at the last trial were L4 and L5. *See* Dkt. 1719 at 2.

[12] The purported VIA trade secret was created late in the case. *See* Dkt. 1483 at 31. Previously, it was described as several individual purported trade secrets. *See, e.g.* Dkt. 296-1 at 15-21 (fourth amended complaint asserting the "value, importance and appropriateness" of each category of alleged trade secret).

Dated: October 15, 2024          Respectfully submitted,


                                 MARK D. SELWYN
                                 AMY K. WIGMORE
                                 JOSHUA H. LERNER
                                 JOSEPH J. MUELLER
                                 SARAH R. FRAZIER
                                 NORA Q.E. PASSAMANECK
                                 THOMAS G. SPRANKLING
                                 WILMER CUTLER PICKERING HALE AND
                                 DORR LLP

                                 BRIAN A. ROSENTHAL
                                 GIBSON, DUNN & CRUTCHER LLP

                                 KENNETH G. PARKER
                                 HAYNES AND BOONE, LLP



                                 By: */s/ Mark D. Selwyn*
                                       Mark D. Selwyn


                                 *Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple, Inc., Certifies that this brief contains 6,524 words, which:

    __X__ complies with the word limit of L.R. 11-6.1.

    ___ complies with the word limit set by court order dated [date].

Dated:_ October 15, 2024 _      Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By: _/s/ Mark D. Selwyn_____
      Mark D. Selwyn