| | |
|---|---|
| 1 | MARK D. SELWYN, SBN 244180<br>  mark.selwyn@wilmerhale.com |
| 2 | THOMAS G. SPRANKLING, SBN 294831<br>  thomas.sprankling@wilmerhale.com |
| 3 | WILMER CUTLER PICKERING<br>  HALE AND DORR LLP |
| 4 | 2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306 |
| 5 | Tel.: 650.858.6000 / Fax: 650.858.6100 |
| 6 | JOSHUA H. LERNER, SBN 220755<br>  joshua.lerner@wilmerhale.com |
| 7 | WILMER CUTLER PICKERING<br>  HALE AND DORR LLP |
| 8 | One Front Street, Suite 3500<br>San Francisco, CA 94111 |
| 9 | Tel.: 628.235.1000 / Fax: 628.235.1001 |
| 10 | AMY K. WIGMORE, *pro hac vice*<br>  amy.wigmore@wilmerhale.com |
| 11 | WILMER CUTLER PICKERING<br>  HALE AND DORR LLP |
| 12 | 2100 Pennsylvania Ave NW<br>Washington, DC 20037 |
| 13 | Tel.: 202.663.6000 / Fax: 202.663.6363 |
| 14 | [Counsel appearance continues on next page] |
| 15 | *Attorneys for Defendant Apple Inc.* |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation, | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S TRIAL BRIEF** |
| Plaintiffs, | |
| v. | |
| APPLE INC.,<br>a California corporation, | Trial: Nov. 5, 2024 |
| Defendant. | |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

---

APPLE'S TRIAL BRIEF FOR THE NOVEMBER 5, 2024 RETRIAL

CASE NO. 8:20-cv-00048-JVS (JDEx)

Wilmer Cutler
Pickering Hale
and Dorr LLP

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

## **TABLE OF CONTENTS**

A. Apple's Summary of The Case .................................................................... 1

B. Plaintiffs' Memorandum Omits Discussion Of Their Permanent Injunction Request, Which Is Barred ........................................................ 3

C. Plaintiffs' Memorandum Misstates The Law And The Record ................. 7

    1. The Statute Of Limitations ............................................................... 7

    2. Liability Under A Respondeat Superior Theory.............................. 8

    3. Liability Under An Acquisition Theory .......................................... 9

    4. The [REDACTED] Theory Of Harm............................... 9

    5. Waiver Of The Right To Appeal Lost Profits ............................... 10

D. The Presence Of A New Party In This Case Raises Numerous Questions About Ownership, Possession, Secrecy, and Remedies ........ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asphalt Trader Ltd. v. Beall*,
  2024 WL 698313 (10th Cir. Feb. 21, 2024) ...................................................... 7

*Bennett v. Isagenix Int'l, LLC*,
  2024 WL 4343009 (9th Cir. Sept. 30, 2024) ................................................. 6, 7

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .......................................................................................... 6

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
  857 F. Supp. 2d 997 (S.D. Cal. 2012) .............................................................. 8

*Klang v. Pflueger*,
  2014 WL 4922401 (C.D. Cal. July 10, 2014) .................................................. 8

*Masimo Corp. v. True Wearables, Inc.*,
  2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) .................................................. 5

*Parker v. Winnipiseogee Lake Cotton & Woollen Co.*,
  67 U.S. 545 (1862) ............................................................................................ 6

*Robert L. Cloud & Associates v. Mikesell*,
  69 Cal. App. 4th 1141 (1999) ........................................................................... 6

*TD Bank N.A. v. Hill*,
  928 F.3d 259 (3d Cir. 2019) ............................................................................. 7

*Waymo LLC v. Uber Techs., Inc.*,
  2018 WL 466510 (N.D. Cal. Jan. 18, 2018) ..................................................... 5

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ...................................................................... 4, 5

Apple submits the following brief pursuant to Local Rule 16-10 to (1) provide a counter summary of the case in response to Plaintiffs' Memorandum of Contentions of Fact and Law, (2) address issues that should have been—but were not—raised in the Plaintiffs' Memorandum, and (3) highlight several of Plaintiffs' Memorandum's legal errors and factual misstatements.[1]

### A.  Apple's Summary of The Case

Introduced in 2015, Apple Watch is an engineering marvel that is the product of years of hard work and innovation by thousands of Apple engineers and other employees. From its industrial design to its internal workings, every aspect of Apple Watch reflects Apple's dedication to the consumer and to consumer electronics. Apple Watch offers consumers hundreds of features, including numerous health and wellness features.

Plaintiffs, in contrast to Apple, have historically been and remain today focused on medical devices. For decades, Plaintiffs have marketed and sold large medical devices, engineered for use in hospitals and clinics. Only recently have they turned any attention to attempting to develop and market a smartwatch of their own, apparently motivated by a desire to emulate Apple's success with Apple Watch.

Plaintiffs have wrongly tried to use this litigation as a maneuver to clear a path for their smartwatch. Plaintiffs began this litigation by asserting claims of patent infringement under twelve patents, asserting that Apple infringed at least 245 claims. But in response to IPRs filed by Apple, the Patent Office subsequently determined that the vast majority of these claims should never have issued in the first place because Plaintiffs tried to claim as their own what others had already done before. Ultimately, Plaintiffs' twelve patent infringement claims were reduced to two.

---

[1] Apple also objects to Plaintiffs' decision to file a Memorandum that appears to exceed the normal 7,000-word limit. *See* L.R. 11-6.1.

Left without a patent infringement case, Plaintiffs pivoted to trying to manufacture a case based on alleged trade secret misappropriation. For more than a year, Plaintiffs struggled to state such a claim, eventually amending their complaint four times before the Court permitted them to proceed. Even then, the complete lack of support for Plaintiffs' claims forced them to drop most of their alleged trade secrets—including the lone alleged trade secret that Plaintiffs previously used to justify their request for a preliminary injunction—and ultimately to abandon all requests for monetary relief.

The weakness of Plaintiffs' claims was readily apparent at the April 2023 trial, where this Court granted Apple judgment as a matter of law on nearly half of Plaintiffs' alleged trade secrets and all but one juror was prepared to vote in Apple's favor on the remainder. In the intervening time, Plaintiffs' case has only shrunk further. In an effort to secure a bench trial, Plaintiffs have abandoned all claims to punitive damages, a reasonable royalty, and lost profits damages. Earlier this month, Plaintiffs voluntarily surrendered their demand for $1.85 billion in unjust enrichment damages.

Today, Plaintiffs are not seeking a penny for alleged trade secrets they claimed for years were worth many billions of dollars. Although Plaintiffs have attempted in the last two weeks to reframe this nearly five-year-old litigation as an injunction case, they have not preserved the right to seek that remedy. Nor would an injunction be appropriate here, where Plaintiffs' past damages requests make clear that legal remedies are available and where the alleged trade secrets affect—at absolute best—one circuit among millions in a tiny sliver of one of Apple Watch's many features.

Apple looks forward to once again demonstrating at trial that not a shred of Plaintiffs' confidential information was ever used for Apple Watch, and that what Plaintiffs claim as "trade secrets" are ideas long known and used by multiple companies. Plaintiffs tellingly have not come forward with even a single pre-litigation

document that records—in full—any of their alleged trade secrets.  That is because they have been contrived for this litigation.

Plaintiffs are also relying on certain invalid and anticompetitive provisions of an employee confidentiality agreement to launch meritless claims of misconduct against a former employee.  Apple repeatedly told Dr. Marcelo Lamego not to share any confidential information from his former employers and he did not convey any trade secrets to Apple.  Indeed, Apple Watch, including its health sensing features, was well into development when Dr. Lamego worked at Apple for a mere six months in 2014.  And there is nothing wrong with an employee changing jobs.  As this Court has observed, the law protects the ability of employees to move freely from company to company—"employees are not only permitted but encouraged" to do so.  Dkt. 1439 at 3.

Plaintiffs' case ultimately rests on a series of out-of-context quotes and misdirection.  Apple took nothing from Plaintiffs.  The responsibility for Plaintiffs' failure to successfully commercialize a smartwatch is theirs alone.

### B. Plaintiffs' Memorandum Omits Discussion Of Their Permanent Injunction Request, Which Is Barred

Local Rule 16-4.1 required Plaintiff to provide both a "summary statement of the claims Plaintiff has pleaded and plans to pursue" and "a brief description of the key evidence in support of each of the claims.  Here, Plaintiffs have failed to provide any discussion at all regarding their request for a permanent injunction, much less describe the evidence in support of that claim.

In the nearly five years since this case began, Plaintiffs have failed to disclose any facts that would support an injunction, despite their responsibility to do so under Federal Rule of Civil Procedure 37(c) if they wanted to pursue such relief.  The Memorandum, for example, describes *other* types of relief Plaintiffs were seeking (including unjust enrichment pursuant to Cal. Civ. Code § 3426.3 and attorney's fees pursuant to Cal. Civ.

Code § 3426.4), but makes **no mention** of an injunction request. *See* Dkt. 2175 at 4-5; *see also id.* at 21-24 (discussing facts supporting requests for unjust enrichment and attorney's fees). Where Plaintiffs' filings refer to an injunction, they do so only in passing and in the most conclusory way. *See, e.g.*, Dkt. 296-1 at 132 (operative complaint).[2]

Equally important, Plaintiffs have failed to provide any meaningful response to Apple's Interrogatory No. 17 regarding any injunction, which asked Plaintiffs to "[s]tate *in detail* all factual and legal bases for Your contention that You are entitled to any relief in this case, including … injunctive relief." Dkt. 2181-2 at 5 (emphasis added). Since that interrogatory was first served in 2020, Plaintiffs have supplemented it nine times before the first trade secret trial and three times after that—most recently in July 2024—and have never identified their purported basis for seeking an injunction. *Id.* at 6, 13, 21.

Put simply, despite years of litigation, Plaintiffs have failed to identify what harm they believe to be irreparable or why it could not be adequately compensated through legal remedies (which they have now abandoned) or disclosed any facts relevant to the remaining factors that would need to be evaluated in any injunction analysis. Plaintiffs' failure to provide information about their request for injunctive relief means that the request is "untimely and should be excluded under Rule 37(c)(1)." Dkt. 1526 at 1 (excluding part of Apple's unclean hands defense shortly before April 2023 trial); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-1108 (9th Cir. 2001) (discussing FRCP 37).

"[N]either of the[] exceptions" to Rule 37(c)(1)—substantial justification or harmlessness—"applies here." *Yeti*, 259 F.3d at 1106. Plaintiffs have not met their burden to show that their decision to provide no details regarding their request for

---

[22] Masimo has since abandoned its request for monetary relief for unjust enrichment. Dkt. 2181-1 at 1-2.

injunctive relief throughout four years of litigation was justified. Nor have Plaintiffs "show[n]" that the delay was harmless. *Id*. at 1107. Plaintiffs' failure to disclose anything about the sole meaningful remedy they now purportedly seek deprived Apple of the opportunity to take discovery on Plaintiffs' (still undisclosed) theory of irreparable harm and precluded Apple from obtaining opinions from their expert witnesses on any aspect of Plaintiffs' claim for injunctive relief.

To date, Plaintiffs have not provided any substantive defense of their four years of silence on their permanent injunction request. At most, Plaintiffs have suggested that Apple's invocation of Rule 37(c)(1) is untimely because it was not asserted in the original pretrial conference order. *See* Dkt. 2177-1 at 5 n.10. But Plaintiffs have identified "no authority" for the proposition that the "parties' joint pretrial order somehow supersedes and cures any deficiencies" in Plaintiffs' discovery obligations. *Waymo LLC v. Uber Techs., Inc.*, 2018 WL 466510, at *1 (N.D. Cal. Jan. 18, 2018). This Court granted Plaintiffs relief under Rule 37(c)(1) just one week before the April 2023 trial on an issue not raised in the pretrial order. Dkt. 1526 at 1 (Apple's unclean hands defense). Similarly, this Court granted True Wearables Rule 37(c)(1) relief in the final findings of fact and conclusions of law. *See Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *11 (C.D. Cal. Nov. 7, 2022). Regardless, the parties mutually agreed to file an amended pretrial conference order on October 23, 2024, and there can be no dispute that Apple indicated in that document that Plaintiffs had failed to preserve their remaining remedies. Dkt. 2177-1 at 5 n.10.

At the pretrial conference hearing, Plaintiffs also suggested for the first time that they had preserved their right to seek a permanent injunction in November 2024 because they filed a motion for a preliminary injunction in August 2020. *See* 10/28/24 Tr. 19; *see also* Dkt. 116. That motion provides no guidance regarding Plaintiffs' current theory of the case, as it was based on an alleged trade secret no longer at issue and sought very narrow relief—advance notice of any Apple publication that "[c]oncerns measurement

or tracking of health-related or physiological information" **and** "[n]ames as an inventor or author one or more of Plaintiffs' former employees." Dkt. 198 at 3-4. The permanent injunction contemplated in the operative complaint and in the pretrial conference order is not so limited. *E.g.*, Dkt. 2177-1 at 18 (asking this Court to "enjoin Apple from further misappropriation").

In any event, even if Plaintiffs had preserved an injunction argument, they would be precluded from receiving an injunction because they had adequate "remedies available at law," *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006), which they simply have given up on pursuing. As discussed above, Plaintiffs have long acknowledged that any injury they have suffered from Apple's purported misappropriation is compensable via money—whether through a reasonable royalty (a remedy Plaintiffs waived in order to limit this case to equitable issues) or lost profits (a remedy Plaintiffs recently waived the right to seek on appeal)—and any purported benefit to Apple is redressable through an award of unjust enrichment. Plaintiffs have provided detailed calculations for each potential form of relief and, at various points in this case, have sought between $1.85 billion and considerably more. Dkt. 2181-1 at 1-2.

CUTSA's injunction provision is not meant to be invoked in such a situation. Rather, it is to be reserved for "(1) where pecuniary compensation would not afford adequate relief or (2) where ascertaining adequate compensation would be extremely difficult." *Robert L. Cloud & Associates, v. Mikesell*, 69 Cal. App. 4th 1141, 1150 (1999). Neither condition applies here.

Moreover, that Plaintiffs have "voluntarily chosen to *forego* a legal remedy does not mean that 'no adequate legal remedy' exists." *Bennett v. Isagenix Int'l, LLC*, 2024 WL 4343009, at *7 (9th Cir. Sept. 30, 2024). As the Supreme Court has long held, "***where the remedy at law[] is*** " "***plain, adequate, and complete,*** " "***the party seeking redress must pursue it***.'" *Parker v. Winnipiseogee Lake Cotton & Woollen Co.*, 67 U.S.

545, 551 (1862) (emphasis added). Put slightly differently, a party "cannot bolster its request for equitable relief by abandoning its request for … damages." *TD Bank N.A. v. Hill*, 928 F.3d 259, 282-283 (3d Cir. 2019); *accord Asphalt Trader Ltd. v. Beall*, 2024 WL 698313, at *9 (10th Cir. Feb. 21, 2024) ("Plaintiffs cannot artificially adjust their damages this way to claim that they have no adequate remedy at law and must resort to an equitable claim"); *Bennett*, 2024 WL 4343009, at *7 ("relinquishment of what would otherwise be an adequate legal remedy … should not suffice for purposes of" establishing the right to an injunction).

### C. Plaintiffs' Memorandum Misstates The Law And The Record

Plaintiffs' Memorandum also includes particularly glaring misstatements regarding the law governing Apple's statute of limitations defense, Plaintiffs' *respondeat superior* theory, and Plaintiffs' theory that Apple can be held liable for improper acquisition of the alleged trade secrets. In addition, Plaintiffs are wrong to suggest that (1) they can present a theory of harm based on a missed business opportunity with Apple or (2) they have preserved the right to appeal this Court's decision striking Plaintiffs' lost profits damages theory (a claim that was debunked at the pretrial conference).[3]

#### 1. The Statute Of Limitations

Plaintiffs wrongly assert that "***Apple*** must prove that Masimo, prior to January 9, 2017, either: [a] discovered the misappropriation, or [b] should have discovered the misappropriation if it exercised reasonable diligence." Dkt. 2175 at 28 (emphasis added). In reality, the burden is on Plaintiffs to establish that they should not have discovered the misappropriation prior to January 9, 2017.

---

[3] Apple's focus on these particular issues should not be read to suggest Plaintiffs otherwise correctly state the law or the facts. In particular, the correct legal principles are laid out in Apple's Memorandum, and Apple objects to any deviation from those principles.

This is because, at the FRCP 50(b) stage, this Court "adopt[ed] the parties' agreement" that "since the alleged misappropriation derives from Lamego, Apple has met prong (1) [of the statute of limitations defense],"—i.e., "proving that any alleged misappropriation first occurred before January 9, 2017. Dkt. 1901 at 17, 19; *see also* 7/13/23 Tr. 52:13-15 (concession from Plaintiffs' counsel). The Court expressly stated that this ruling would apply to "any future trial," (*id.* at 17), and the parties further memorialized that agreement in the operative pretrial conference order, Dkt. 2177-1 at 14.

"Since it is undisputed that the alleged misappropriation of trade secrets took place outside the limitations period, Plaintiffs have the burden of proving the facts necessary to toll the statute," *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)—i.e., that the misappropriation was not "discovered or by the exercise of reasonable diligence should have been discovered" before January 9, 2017, Cal. Civ. Code § 3426.6. The only case cited in Plaintiffs' Memorandum outlines the same basic rule, albeit in the motion to dismiss context. *See Klang v. Pflueger*, 2014 WL 4922401, at *6 (C.D. Cal. July 10, 2014) ("Plaintiffs have the burden to show diligence.").

### 2.  *Liability Under A Respondeat Superior Theory*

Plaintiffs wrongly contend that Apple can be "liable under the doctrine of respondeat superior" because Lamego knew or should have known that he was improperly conveying confidential information to Apple. Dkt. 2175 at 21. Again, this issue was definitively resolved at the last trial. The parties briefed the question extensively and this Court concluded that "Apple is correct that 'it is not 'appropriate … to impute an agent's knowledge of a secret to the principal'" at least where the agent "did not inform other employees of plaintiff's concept." Dkt. 1723 at 3; *accord Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018); *see also Cisco Systems, Inc. v. Chung*, 2023 WL 2622155, at *12 (N.D. Cal. Mar. 22,

2023) (vicarious liability in the trade secret context does not extend to the intent requirement). Moreover, as the Court explained in its Rule 50(b) order, "the Court already ruled on this issue as it relates to the jury instructions and verdict form and does not intend to revisit it for any future trial." Dkt. 1901 at 18 n.7.

### 3. *Liability Under An Acquisition Theory*

Plaintiffs wrongly suggest that this Court can find Apple liable under a trade secret ***acquisition*** theory (as opposed to a use or disclosure theory). *See* Dkt. 2175 at 4 (asserting "Apple improperly acquired, used, or disclosed the [alleged] Trade Secret[s]"); *see also, e.g., id.* at 7 ("Apple Improperly Acquired and Used Trade Secret L4"); *id.* at 12 ("Apple Improperly Acquired, Disclosed and Used Trade Secret D1"). Plaintiffs may not, as a matter of law, rely on an acquisition-only theory of liability because they have failed to identify any acquisition-only theory of relief. Rather, "throughout this litigation the only discernible damages theories preserved by [Plaintiffs] have been grounded in [Apple's] alleged use … of trade secrets," and "[t]hese theories reference acquisition only insofar as it forms a logical prerequisite to use[.]" *Waymo*, 2018 WL 466510, at *3; *see also, e.g.*, Directions for Use, CACI 4405. Put slightly differently, Plaintiffs have not articulated any theory of liability where Apple's acquisition of the alleged trade secrets alone has caused them harm or gave Apple a benefit.

### 4. *The ▇▇▇▇▇▇▇▇▇▇ Theory Of Harm*

Plaintiffs' Memorandum improperly relies on a theory of harm that this Court struck prior to the last trial as a discovery sanction—i.e., that Apple's alleged misappropriation harmed Plaintiffs by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 2175 at 23-24. This Court has clearly and repeatedly barred Plaintiffs from relying both on this theory of harm and the underlying facts because neither were timely disclosed during fact discovery. *See* Dkt. 1283 at 6-8 (Plaintiffs could not advance a theory about "▇▇▇▇▇▇▇▇▇

1  ██████████████████████████████████████████.").  Although
2  this Court's prior ruling was in the specific context of barring Plaintiffs' lost profits
3  damages theory, the same rule would logically apply to Plaintiffs' attempts to show
4  harm for purposes of liability.  Indeed, several passages from the Memorandum recite
5  nearly verbatim the factual theories that this Court held were barred under FRCP 37.
6  *Compare* Dkt. 1275 at 24 ("████████████████████████████
7  ████████████████████████████████████████████████
8  ████████████████████████████████████████████████
9  ███████████████████) *with* Dkt. 1283 at 7 (noting that witness improperly
10 relied on "█████████████████████████████████████████
11 ████████████████████████████████████████████████
12 ████████████████████████████).

### 5. Waiver Of The Right To Appeal Lost Profits

14  Plaintiffs contend in an erroneous footnote that Masimo "reserves all rights to
15  appeal" this Court's decision dismissing Plaintiffs' "lost profits damages theory" from
16  this case.  Dkt. 2175 at 1 n.1.  Plaintiffs unambiguously waived the right to pursue
17  such an appeal in order to secure a bench trial.  *See* Dkt. 2143-6 at 32.  During
18  yesterday's pretrial conference, this Court confirmed that Plaintiffs' waiver of the right
19  to appeal made a difference in his decision to grant a bench trial and indicated that
20  Plaintiffs would be judicially estopped from now changing position.  10/28/24 Tr. 10-
21  11.

### D. The Presence Of A New Party In This Case Raises Numerous Questions About Ownership, Possession, Secrecy, and Remedies

24  On August 9, 2023, Plaintiffs (1) informed Apple that Plaintiff "Cercacor
25  Laboratories, Inc. reincorporated in Nevada and changed its name to Willow
26  Laboratories" and (2) requested that Apple stipulate to modify the case caption.  Ex. 1.
27  In response, Apple asked Plaintiffs to "explain why this new entity is a proper

plaintiff" and sought (a) documentation regarding incorporation, (b) agreements between Willow and Masimo/Cercacor, (c) documents concerning the allocation or transfer of intellectual property to Willow, and (d) Willow's most recent financial statements. Ex. 1. Apple's response was met with silence for two months. In the meantime, Plaintiffs' counsel continued to represent on court filings that Cercacor was still a party to this litigation. Even Plaintiffs' Memorandum—filed on October 15, 2024—states that the Memorandum is being filed by "Plaintiffs' Masimo Corporation and Cercacor Laboratories, Inc.," (*see* Dkt. 2175 at 1), and does not mention the word "Willow" even once.

Plaintiffs provided Apple with some of the requested information regarding Willow for the first time on October 13, 2024. *See* Dkt. 2177-1 at 1 n.2. That documentation suggests that Cercacor dissolved—and Willow was incorporated—in late December 2023. *Id.* To date, Plaintiffs have provided no explanation for why they waited eight months to notify Apple of this new entity (and another two months to notify this Court), or why they have failed to update their response to Apple's Interrogatory No. 33 (regarding ownership of the alleged trade secrets, *see* Dkt. 1097-1) to provide details regarding the change in ownership and possession of the alleged trade secrets at issue here. Apple's first opportunity to seek answers to the four questions it posed in August was earlier today, when Willow employee Gerry Hammarth sat for a deposition.

Plaintiffs' delay in revealing—and providing details regarding—the transition from Cercacor to Willow is both unjustified and prejudicial. Among other things, the identity of the Plaintiffs matters for questions ranging from (1) possession/ownership (does Willow have independent standing to bring suit?), (2) liability (has Willow made reasonable efforts to maintain the secrecy of the alleged trade secrets?), and (3) remedies (even assuming Plaintiffs have preserved the right to bring an injunction, should Willow's supposed irreparable harm and lack of monetary remedies matter?).

Dated: October 29, 2024                Respectfully submitted,

JOSEPH J. MUELLER
MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
SARAH R. FRAZIER
NORA Q.E. PASSAMANECK
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


By:  /s/ *Mark D. Selwyn*
         Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc. certifies that this brief contains 3,575 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1

 __ complies with the word limit set by court order dated [date].

Dated: October 29, 2024          Respectfully submitted,

                                MARK D. SELWYN
                                AMY K. WIGMORE
                                JOSHUA H. LERNER
                                SARAH R. FRAZIER
                                NORA Q.E. PASSAMANECK
                                THOMAS G. SPRANKLING
                                WILMER CUTLER PICKERING HALE AND DORR LLP

                                BRIAN A. ROSENTHAL
                                GIBSON, DUNN & CRUTCHER LLP

                                KENNETH G. PARKER
                                HAYNES AND BOONE, LLP

                                By: /s/ *Mark D. Selwyn*
                                              Mark D. Selwyn

                                *Attorneys for Defendant Apple Inc.*