UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Claim Construction

    Plaintiffs Masimo Corp. and Cercacor Labs., Inc. ("Masimo") filed this action against Defendant Apple Inc. ("Apple") alleging patent and trade secret infringement, among other claims. See generally Compl., Dkt. No. 1; First Am. Compl., Dkt. No. 28; Second Am. Compl., Dkt. Nos. 88-2, 89-1 (sealed); Third An. Compl., Dkt. Nos. 230-2, 231-1 (sealed); Fourth Am. Compl., Dkt. Nos. 295-2, 296-1 (sealed). Masimo presently asserts only U.S. Patent Nos. 8,457,703 (the "'703 Patent") and 10,433,776 (the "'776 Patent"). See Dkt. No. 2019 at 2.

    The parties now seek construction of three claim terms from the '703 and '776 Patents.[1] They filed the following claim construction briefs and supporting documents: Joint Claim Construction and Pre-hearing Statement ("JCCPS") (Dkt. No. 1947); Masimo's Opening Claim Construction Brief ("Masimo Op. Br.," Dkt. No. 1948); Apple's Opening Claim Construction Brief ("Apple Op. Br.," Dkt. No. 1952); Masimo's Responsive Claim Construction Brief ("Masimo Resp. Br.," Dkt. No. 1981); Apple's Responsive Claim Construction Brief ("Apple Resp. Br.," Dkt. No. 1974). The Court held a technology tutorial on June 29, 2024 and a claim construction hearing on July 22, 2024. Following the hearing, the parties submitted supplemental briefing. Masimo's Supplemental Claim Construction Brief ("Masimo Supp. Br.," Dkt. No. 2063); Apple's Supplemental Claim Construction Brief ("Apple Supp. Br.," Dkt. No. 2064). This Order reflects the post-hearing briefing.

---

    [1]     The parties filed notices indicating disputes as to three other claims terms are now moot or withdrawn. Masimo's Notice of Mooted Issue in Claim Construction Briefing, Dkt. No. 2026; Apple's Notice of Narrowing of Proposed Terms for Claim Construction, Dkt. No. 2030.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

The Court construes the disputed terms as summarized in § IV.

I.    TECHNICAL BACKGROUND

The '703 and '776 Patents, both titled "Low Power Pulse Oximeter," claim earliest priority to a provisional application filed on July 2, 2001. The '776 Patent is a continuation of the '703 Patent. The two patents share a common specification. At a high level, both patents relate to pulse oximeters and more specifically to efficiently managing power consumption for these devices. See '703 Patent, Abstract.

Prior art devices typically relied on "sleep modes" to reduce power consumption. Id. at 1:63-67. In a sleep mode, "circuitry is powered down when the devices are idle." Id. Using sleep modes with pulse oximeters can be disadvantageous because devices may miss measurements during sleep mode. Id. at 2:16-21. Additionally, frequent switching between active and sleep modes can be power intensive. Id. at 2:22-27.

The '703 Patent purports to disclose an alternative to sleep mode, in which a control engine outputs sampling controls to reduce the power consumption of the pulse oximeters. See id. at 5:57-59. At a high level, pulse oximeters emit light into tissue and then make physiological measurements based on the light after it has passed through the tissue. Here, sampling controls control the power to the portion of the pulse oximeters that emit and measure light. Id. at 5:38-39. Figure 4 shows an example of a low power pulse oximeter with a sampling controller:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SA CV 20-00048-JVS-JDE　　　　　　　Date  November 27, 2024

Title  Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc.



FIG. 4

Id., FIG. 4.  The alternative method involves several types of sampling controls.  One sampling mechanism alters power consumption by adjusting the duty cycle.[2]  Id. at 5:61-66.  Another method involves using a "data off" period in which power to the portion that emits and/or measures light is turned off.  Id. at 5:66-6:2; 7:8-13.  Another method involves reducing or eliminating overlap in the data blocks that are used to calculate the physiological measurements.  Id. at 6:2-4.  These sampling mechanisms may be used alone or in combination with each other.  See id. at 11:1-24.

Masimo alleges that Apple infringes at least claim 1 of the '703 Patent.  See Fourth Am. Compl., Dkt. No. 295-2, 296-1 (sealed) ¶ 195.  Claim 1 discloses:

---

[2]  The parties agree that "duty cycle" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent."  See § III.A, infra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

> 1. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:
> driving one or more light sources configured to emit light into tissue of a monitored patient;
> receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;
> continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;
> comparing **processing characteristics** to a predetermined threshold; and
> when said **processing characteristics** pass said threshold, transitioning to continuously operating said patient monitor at a **higher power consumption level**, wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue.

'703 Patent, Claim 1 (emphasis added to show disputed claim terms).

Masimo alleges that Apple infringes at least Claim 1 of the '776 Patent. See Fourth Am. Compl., Dkt. No. 295-2, 296-1 (sealed) ¶ 210. Claim 1 discloses:

> 1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method comprising:
> operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources;
> when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

> generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of **processing characteristics** to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;
>
> in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources; and
>
> when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor,
>
> wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.

'776 Patent, Claim 1 (emphasis added to show disputed terms).

II.   LEGAL STANDARD

   A.   General Principles of Claim Construction

Claim construction is "exclusively within the province of the court." Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "must begin and remain centered on" the claim language itself. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). ] But extrinsic evidence may also be consulted "if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art (POSITA) in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

"In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." Id. at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal quotation marks omitted).

But it is improper to read limitations from the specification into the claim. Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.") (quoting Phillips, 415 F.3d at 1312). A court does "not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

to be strictly coextensive.'" JVW Enters., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations omitted) (emphasis added).

    B.    Indefiniteness

A patent's specification must conclude "with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b); see also 35 U.S.C. § 112 ¶ 2 (2006). In order to meet this "definiteness" requirement, "a patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty." Nautilus, Inc. v. Biosig Instruments, Inc. ("Nautilus I"), 572 U.S. 898, 910 (2014). The Supreme Court in Nautilus I emphasized that patents must be precise enough to afford clear notice of what is claimed, thereby "appris[ing] the public of what is still open to them," while recognizing that absolute precision is unobtainable given "the inherent limitations of language." Id. at 899, 910 (quoting Markman, 517 U.S. at 373).

General claim construction principles apply to indefiniteness challenges, but the burdens are different. See Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("In the face of an allegation of indefiniteness, general principles of claim construction apply") (internal quotations and citations omitted).

Although courts construing claim language sit in relative equipoise, a patent is "presumed valid under 35 U.S.C. § 282." Biosig Instruments, Inc. v. Nautilus, Inc. ("Nautilus II"), 783 F.3d 1374, 1377 (Fed. Cir. 2015). "[C]onsistent with that principle, a fact finder is instructed to evaluate . . . whether an invalidity defense has been proved by clear and convincing evidence." Id. (quoting Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 111 (2011)) (emphasis added and brackets removed); Young v. Lumenis, Inc., 492 F.3d 1336, 1345 (Fed. Cir. 2007) ("Because a patent is presumed to be valid, the evidentiary burden . . . is one of clear and convincing evidence.").

III.   DISCUSSION

    A.    Agreed Upon Claim Terms

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | SA CV 20-00048-JVS-JDE |
| Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. |

The parties agree upon the following constructions:

| Claim Term | Agreed Construction |
|---|---|
| "duty cycle" ('703 Patent, Claims 2 and 6; '776 Patent, Claims 1-16) | "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent" |
| "first duty cycle / second duty cycle ('776 Patent, Claims 1-16) | "the 'second duty cycle' is different from the 'first duty cycle'" |

JCCPS at 1. The Court adopts the agreed upon constructions. See MyMail, Ltd. v. Am. Online, Inc., 476 F.3d 1372, 1377–78 (Fed. Cir. 2007) (rejecting appellate challenge to claim construction agreed to by party in district court).

   B.  Disputed Claim Terms

     1. "processing characteristics" ('703 Patent, Claims 1-22; '776 Patent, Claims 1-16)

| Masimo's Proposed Construction | Apple's Proposed Construction |
|---|---|
| "characteristics determined from a signal received from one or more detectors configured to detect light" | "characteristics determined from a signal received from one or more detectors configured to detect light (i.e., the only signal received and processed in the claimed patient monitor)" |

During inter partes review ("IPR") proceedings, the Patent Trial and Appeal Board ("PTAB") construed "processing characteristics" to mean characteristics "determined from a signal received from one or more detectors configured to detect light." Apple Inc. v. Masimo Corp., 2024 WL 137336, at *3 (Fed. Cir. Jan. 12, 2024). The parties dispute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

Apple's parenthetical indicating that light is the only signal received and processed in the claimed patient monitor. Masimo argues estoppel prevents further construction of "processing characteristics." Masimo Op. Br. at 6-7. Masimo further argues that the intrinsic record is sufficient on this issue. Id. at 8. Apple argues the additional language is appropriate given both the Federal Circuit's ruling and due to disclaimers Masimo made during the IPR proceeding and subsequent appeal. Apple Op. Br. at 4-5. Apple argues Masimo is estopped form arguing otherwise. Id. at 4.

Here, the important question is the extent to which Apple's proposed construction comports with the Federal Circuit's ruling, which both parties accept. As explained below, the Court finds that Apple's proposed construction largely restates the Federal Circuit's ruling.

Both parties acknowledge that the Federal Circuit held "[t]hroughout the specification, 'processing characteristics' are described as being determined based on the signals received from the light detectors, **the sole source** of signals that are then processed.'" Apple, 2024 WL 137336, at *3 (citing '703 Patent at 5:11–23, 5:40–48, Figs. 3 and 4) (emphasis added). The Court understands Apple's "only" language, which Masimo disputes, to mean that the light detectors are the sole source of the signals that are received and processed.

In view of this finding, Masimo's arguments about infringement appear misplaced. The Court does not understand Apple to advance a negative limitation. Neither does Apple. Apple Resp. Br. at 4. Thus, to the extent an accused product determines characteristics from a signal received from a light detector (whether or not it also receives and processes other types of signals), the product would infringe the limitation at issue.

In any event, because Apple's construction merely restates the Federal Circuit's ruling, the Court finds it unnecessary. The Federal Circuit already found that the processing characteristics are "determined from a signal received from one or more detectors **configured to detect light**." Apple, 2024 WL 137336, at *3 (emphasis added). Apple admits as much. Apple Resp. Br. at 3 ("The language at issue comes directly from the section of the Federal Circuit's opinion discussing the meaning of this exact term.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

Though district courts must resolve fundamental claim construction issues, claim construction "is not an obligatory exercise in redundancy." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008) (quoting U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed.Cir.1997)). Here, the Federal Circuit adequately and fully construed this term. Apple's parenthetical does not raise a new dispute.

Accordingly, "processing characteristics" means "characteristics determined from a signal received from one or more detectors configured to detect light," as the Federal Circuit already found.

> 2. "reduce/reducing activation of an attached sensor" ('703 Patent, Claims 1-8, 15-19)

| Masimo's Proposed Construction | Apple's Proposed Construction |
|---|---|
| No construction needed. However, the ordinary meaning of "activation" in the phrase is "on time." | "reducing the amount of time the attached sensor is active (or on), but not by adjusting the LED level or intensity (i.e., by adjusting current)" |

The parties dispute Apple's proposed language, "but not by adjusting the LED level or intensity (i.e., by adjusting current)." Masimo Op. Br. at 9; see Dkt. Apple Op. Br. at 11-12. They agree that the first half of Apple's construction is appropriate. Id. Masimo argues the "but" clause is an unnecessary negative limitation. Id. at 9-10. Apple argues the clause is appropriate both because the specification does not disclose any embodiment adjusting the LED level or intensity and because Masimo disclaimed these types of adjustments during the IPR proceeding. Apple Op. Br. at 11-12.

The parties do not present a fundamental claim construction dispute as to the "but" clause. See O2 Micro, 521 F.3d at 1362. Rather, Apple expresses concern that Masimo may argue that the reduce/reducing activation of an attached sensor" step could be met by solely by adjusting the LED level or intensity. Apple Resp. Br. at 7. Masimo indicates it will not present this argument. Masimo Resp. Br. at 8. Masimo opposes Apple's construction to the extent it precludes adjusting current in addition to reducing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
|---|---|---|---|
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

on time. Id. at 9. The Court does not read Apple's proposed language to exclude additional types of adjustments. Accordingly, there is no fundamental dispute as to the "but" clause.

Moreover, the first part of Apple's construction, which the parties agree upon, adequately defines the term at issue. Thus, the additional language Apple proposes is not necessary. See O2 Micro, 521 F.3d at 1362. The parties agree that "reduce/reducing activation of an attached sensor" means "reducing the amount of time the attached sensor is active (or on)." "[R]educe/reducing activation of an attached sensor" thus cannot mean something else, such as "adjusting the LED level or intensity (i.e., by adjusting current)." Still, from an infringement perspective, a device could both reduce on time and adjust current and it would still meet the "reducing" limitation.

For the foregoing reasons, the Court adopts the agreed portion of Apple's construction and declines to apply the rest as unnecessary. "[R]educe/reducing activation of an attached sensor" means "reducing the amount of time the attached sensor is active (or on)."

        3.     "higher power consumption level" ('703 Patent, Claims 1-16)

| Masimo's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Not indefinite and no construction needed. | Indefinite. |

Apple argues the claims use the term "higher power consumption level" in an internally inconsistent way, rendering the term indefinite. Apple Op. Br. at 9. Masimo disagrees. Masimo Op. Br. at 12. Specifically, Apples argues that in Claims 1 and 9, "higher power consumption level" means increased activation of the sensor or processing, compared to "lower power consumption level" but that in Claims 15 and 20, "higher power consumption level" means reduced activation of a sensor. Apple Op. Br. at 9-10. Masimo argues that Apple misinterprets Claims 15 and 20 and that even adopting Apple's view of Claims 15 and 20, a "higher power consumption level" is not necessarily inconsistent with reduced activation of the sensor. Masimo Op. Br. at 12-14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

At the outset, the Court does not find a lack of indefiniteness based generally on the prosecution history, IPR proceeding, and subsequent appeal. Masimo argues the term is not indefinite because the examiner understood it during prosecution and that the PTAB and Federal Circuit understood it during the IPR and appeal. Id. at 10-11. The Court does not find this line of argument persuasive. If the examiner's ability to understand the claims during prosecution were dispositive, district courts would never be asked to evaluate indefiniteness.[3] Additionally, IPR proceedings allow only limited bases to challenge patents. 35 U.S.C. § 311(b). These include invalidity challenges based on prior art patents and printed publications but exclude indefiniteness challenged under § 112(b). Id. Thus, the PTAB and Federal Circuit never evaluated indefiniteness. The Court evaluates this issue now, for the first time.

Here, Claims 1, 9, 15, and 20 each discuss continuously operating a patient monitor at "a higher power consumption level" and at "a lower power consumption level." '703 Patent, Claims 1, 9, 15, and 20. Claim 1 discloses that "continuously operating at said lower power consumption level comprises reducing activation of an attached sensor." Id., Claim 1. Claim 9 discloses that "continuously operating at said lower power consumption level comprises reducing an amount of processing by a signal processor." Id., Claim 9. Claim 15 discloses:

> one or more processors continuously operating at a lower power consumption level to determine measurement values for one or more physiological parameters of said patient, said processors comparing processing characteristics to a predetermined threshold, and when said processing characteristics pass said threshold, said processors transitioning to continuously operating at a higher power consumption level, wherein processors reduce activation of an attached sensor

---

[3] Masimo cites Niazi Licensing Corp. v. St. Jude Med. S.C., Inc., 30 F.4th 1339, 1347–48 (Fed. Cir. 2022), which in turn cites Sonix Tech. Co. v. Publications Int'l, Ltd., 844 F.3d 1370, 1379–81 (Fed. Cir. 2017), in support of its argument. In Sonix, however, the Court found a patent examiner understood claim terms well enough to withdraw rejections in a reexamination proceeding after considering expert testimony, among other findings. This case does not have the same history.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

Id., Claim 15.  Claim 20 includes a nearly identical limitation having a corresponding final wherein clause disclosing "wherein processors reduce an amount of processing by a signal processor."  Id., Claim 20.

First, Claims 15 and 20 may be read to require that reduced activation / processing occur during operation at a <u>higher</u> power consumption level.  Claims 1 and 9 require reduced activation/processing during operation at a lower power consumption level.  Id., Claims 1 and 9.  Claims 15 and 20 appear to require reduced activation/processing during operation at a high power consumption level because the clause immediately preceding the final "wherein" clause discloses transitioning to a higher power consumption level.  Id., Claims 15 and 20.  See, e.g., Barnhart v. Thomas, 540 U.S. 20, 26, 124 S. Ct. 376, 380, 157 L. Ed. 2d 333 (2003) ("[A] limiting clause or phrase . . . should ordinary be read as modifying only the . . . phrase that it immediately follows . . . .")

Second, Claims 15 and 20 could also be read to require that reduced activation / processing occur during operation at a <u>lower</u> power consumption level.  The limitation at issue begins by disclosing "one or more processors continuously operating at a lower power consumption level" and then goes on to explain that these same processors determine measurement values, compare characteristics to a threshold, transition to a higher power consumption level during certain conditions, and reduce activation of an attached sensor.  Thus, it is possible that Claims 15 and 20 disclose reduced activation/ processing at the lower power consumption level, given how the limitation begins and the subsequent listing of different processes.

Third, Masimo argues that the final "wherein" clause of Claims 15 and 20 describes processor activities as a whole.  Masimo Op. Br. at 13.  The Court also finds Masimo's characterization plausible because the limitation at issue describes operations at both levels and, as discussed above, it is not clear whether the final limitation pertains to lower power consumption or higher power consumption levels.  The possibility that it could include any processor activities, regardless of power level, remains open.

Following the claim construction hearing, the parties filed supplemental briefing regarding this disputed term.  They addressed (1) whether expert testimony supports an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

indefiniteness finding here and (2) whether the three potential meanings render the final "wherein" clause indefinite.

First, the Court addresses the expert testimony. Masimo's technical expert, Dr. Madisetti, opined that "the wherein clause of Claims 15 and 20 encompass the processor activities as a whole." Declaration of Vijay K. Madisetti, Ph.D in Support of Plaintiff's Claim Construction Brief ("Madisetti Decl."), Dkt. No. 1948-1 ¶ 72. This opinion is consistent with the third interpretation, discussed above. Apple's expert, Dr. Sarrafzadeh, opined that a person having skill in the art would not know when a device reduces sensor activation or processing based on the claim language. Response Declaration of Majid Sarrafzadeh, Ph.D Regarding Claim Construction ("Sarrafzadeh Decl.") Dkt. No. 1974-1 ¶ 10. This testimony appears conclusory. Absent further explanation regarding why a person of skill in the art would be confused, or what possibilities might be left open, the Court does not find this testimony probative here. The inventor of the '703 Patent, Mr. Al-Ali, testified that reducing activation of the sensor "should not" increase power consumption and confirmed that "the technology is about reducing the power, not increasing the power." 30(b)(6) Deposition of Ammar Al-Ali ("Al-Ali Dep."), Dkt No. 2039-1 at 75:9-76:10. Thus, at first glance, Mr. Al-Ali's testimony appears inconsistent with both possibilities one and three, above. Still, Masimo argues that his testimony refers to sensor activation alone and that processing may occur in combination with other mechanisms and thus is not necessarily tied to operating at a particular power consumption level. Dkt. No. 2063 at 2.

In sum, the expert testimony does not assist a person of ordinary skill in determining the scope of claims 15 and 20. All three possibilities appear to remain open in view of both Dr. Madisetti and Mr. Al-Ali's testimony. As discussed above, Dr. Sarrafzadeh's testimony is conclusory.

Second, because the claim language leaves open three different and inconsistent possibilities, the Court finds the final "wherein" clause of claims 15 and 20 indefinite. In Nautilus I, the Court found "that a patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty." Id. at 910. Claim language open to multiple and contradictory interpretations fails to provide sufficient clarity about claim scope. Here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

the first possibility suggests an inverse relationship between sensor activation / processing (reduced) and power consumption level (high).  The second possibility suggests a direct relationship between sensor activation / processing (reduced) and power level (low).  The third possibility suggests there is no relationship between sensor activation / processing and power consumption level.  These possibilities contradict each other.  They cannot all be true.  However, based on the claim language, a POSITA would not know which option to select.  Thus, the Court turns to the specification to determine which interpretation, if any, is correct.

The specification discloses sampling mechanisms that may be used alone or in combination to alter power consumption.  '703 Patent at 5:59-6:9 and 11:1-24.  The specification describes different types of sampling mechanisms including, for example "a data block overlap control 366 that varies the number of data blocks processed by the post processor 430" (id. at 6:2-8) and "a 'data off' time period longer than one drive current cycle where the emitter drivers 480 (FIG. 4) are turned off" (id. at 7:8-12).  The specification further discloses, "[a] 'reduced overlap' state relating to the post-processing of data blocks is added to the diagram of FIG. 9 between the 'low duty cycle' state and the 'data off' state.  That is, sampling is varied between a high duty cycle state, a low duty cycle state, a reduced overlap state and a data off state in response to signal quality and physiological events, with or without a power target."  Id. at 11:17-24.  Thus, reducing activation of an attached sensor or reducing processing by a signal processor may alter power consumption levels.  Still, the reduced activation / processing may occur alone or in combination with other mechanisms and is not necessarily tied to operating at a particular power consumption level.  Thus, the specification does not assist a person of ordinary skill in determining the scope of claims 15 and 20.

Accordingly, the Court finds the final "wherein" clause of both claims 15 and 20 indefinite for the reasons stated above.  The Court does not make any indefiniteness finding as to claims 1 and 9 because these claims do not include a final wherein clause subject to three potential meanings. In other words, the basis for the Court's decision is on the wherein clause, as a whole, but not the specific "higher power consumption level" phrase that Apple identifies as problematic.  Thus, the problem affects only claims 15 and 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV 20-00048-JVS-JDE | Date | November 27, 2024 |
| Title | Masimo Corp. and Cercacor Labs., Inc., v. Apple Inc. | | |

IV.  CONCLUSION

The Court construes the disputed terms as follows:

| Term | Construction |
|---|---|
| "processing characteristics" | "characteristics determined from a signal received from one or more detectors configured to detect light" |
| "reduce/reducing activation of an attached sensor" | "reducing the amount of time the attached sensor is active (or on)" |
| "higher power consumption level" | This phrase alone is not indefinite, however, the final "wherein" clause of claims 15 and 20 renders those claims indefinite because it has three potential, contradictory meanings. |

**IT IS SO ORDERED.**