1   MARK D. SELWYN, SBN 244180
       mark.selwyn@wilmerhale.com
2   THOMAS G. SPRANKLING, SBN 294831
    thomas.sprankling@wilmerhale.com
3   WILMER CUTLER PICKERING
       HALE AND DORR LLP
4   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5   Tel.: 650.858.6000 / Fax: 650.858.6100

6   JOSHUA H. LERNER, SBN 220755
       joshua.lerner@wilmerhale.com
7   WILMER CUTLER PICKERING
       HALE AND DORR LLP
8   One Front Street, Suite 3500
    San Francisco, CA 94111
9   Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
    amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
       HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16                    **UNITED STATES DISTRICT COURT**
17          **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| 18  MASIMO CORPORATION, a Delaware corporation; and | CASE NO. 8:20-cv-00048-JVS (JDEx) |
| 19  CERCACOR LABORATORIES, INC., a Delaware corporation, | **APPLE'S POST-TRIAL REPLY BRIEF** |
| 20                              Plaintiffs, | |
| 21          v. | Trial: Nov. 5, 2024 |
| 22  APPLE INC., | Hearing: February 3, 2025 |
| 23  a California corporation, | |
| 24                              Defendant. | |

25                    REDACTED VERSION OF DOCUMENT
26                 PROPOSED TO BE FILED UNDER SEAL
27

28

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

NORA Q.E. PASSAMANECK, *pro hac vice*
  nora.passamaneck@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Tel.: 720.274.3152 / Fax: 720.273.3133

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

ARGUMENT .....................................................................................................2

I.    PLAINTIFFS HAVE NOT PROVEN THAT THEY POSSESSED, LET ALONE THAT APPLE MISAPPROPRIATED, ANY PROTECTABLE TRADE SECRET ......................................2

    A.    Plaintiffs Have Not Made Out A CUTSA Claim For L4..........................2

    B.    Plaintiffs Have Not Made Out A CUTSA Claim For L5........................10

    C.    Plaintiffs Have Not Made Out A CUTSA Claim For D1, D3, and D10 . 16

II.   APPLE DID NOT HAVE THE REQUISITE INTENT TO MISAPPROPRIATE .................19

    A.    No Direct Misappropriation ................................................................19

    B.    No *Respondeat Superior* Liability ......................................................19

    C.    No Indirect Misappropriation..............................................................20

III.  THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CUTSA CLAIM ....................21

IV.   PLAINTIFFS ARE NOT ENTITLED TO ANY RELIEF ON THEIR CUTSA CLAIM ......22

    A.    No Declaratory Relief ........................................................................22

    B.    No Injunction......................................................................................22

    C.    Any Attorney's Fees Award Should Be To Apple ................................24

V.    PLAINTIFFS HAVE NOT PROVEN THE INVENTORSHIP AND OWNERSHIP CLAIMS . 25

CONCLUSION..................................................................................................25

# **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Acromed Corp. v. Sofamor Danek Grp., Inc.*,
253 F.3d 1371 (Fed. Cir. 2001) ...........................................................25

*Advanced Fluid Sys., Inc. v. Huber*,
295 F. Supp. 3d 467 (M.D. Pa. 2018)....................................................24

*Ajaxo Inc. v. E\*Trade Grp. Inc.*,
135 Cal. App. 4th 21 (2005) ..................................................................24

*Altavion Inc. v. Konica Minolta Sys. Lab. Inc.*,
226 Cal. App. 4th 26 (2014) ..................................................................11

*Atmel Corp. v. Info. Storage Devices, Inc.*,
189 F.R.D. 410 (N.D. Cal. 1999) .............................................................3

*Bennett v. Isagenix Int'l*,
118 F.4th 1120 (9th Cir. 2024) ..............................................................23

*Bianco v. Globus Med., Inc.*,
2014 WL 5462388 (E.D. Tex. Oct. 27, 2014) ..........................................3

*Cypress Semiconductor Corp. v. Superior Court*,
163 Cal. App. 4th 575 (2008) ................................................................22

*eBay v. MercExchange*,
547 U.S. 388 (2006)...............................................................................23

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*,
2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ......................................20

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ...............................................................12

*Infospan, Inc. v. Emirates NBD*,
2016 WL 8849699 (C.D. Cal. June 8, 2016)............................................3

*Little v. Amber Hotel Co.*,
202 Cal. App. 4th 280 (2011) ................................................................19

*Masimo Corp. v. True Wearables*,
    2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) .......................................................3

*Masimo Corp. v. True Wearables, Inc.*,
    2022 WL 205485 (Fed. Cir. Jan. 24, 2022)...........................................................5

*Waymo LLC v. Uber Techs. Inc.*,
    2018 WL 466510 (N.D. Cal. Jan. 18, 2018)........................................................23

**Statutes And Rules**

Cal. Civ. Code § 3426.1 .......................................................................................3, 4

Federal Rule of Civil Procedure 26 .........................................................................23

Federal Rule of Civil Procedure 37 ...................................................................22, 23

Federal Rule of Civil Procedure 54 .........................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

Plaintiffs' post-trial brief underscores the fundamental flaws in their case: The alleged trade secrets are not actual trade secrets, and no thread ties any secret information they possessed to either (1) the suggestions Dr. Lamego made at Apple or (2) any technologies used in Apple Watch. Dr. Lamego did not transmit any secret information possessed by Plaintiffs to Apple, and Apple did not use any such information. This is, in short, a trade secret case with no secrets and no misappropriation.

Plaintiffs try to gloss over those deficiencies with overheated rhetoric, shape-shifting treatment of the "secrets," inapposite references to commonplace technical terms (like "crosstalk" and "demodulation") in Apple documents, and improper burden-shifting—but Plaintiffs cannot escape the trial record. There is *no evidence* that Apple "coveted" the idea of ███████████████, using a single short circuit, or employing a demodulation algorithm that Apple quickly determined was unsuitable for a consumer wearable device. And the trial record firmly disproved that Apple acquired, used, or disclosed anything Plaintiffs maintained as an actual trade secret.

Six Apple witnesses, Dr. Lamego, and Apple's two independent technical experts testified consistently and credibly that (1) Apple never sought, used, or disclosed Plaintiffs' confidential information, (2) Dr. Lamego did not disclose any such information to Apple, (3) Apple independently developed its black foam quality control test and short-circuit to supply, and (4) Dr. Lamego's demodulation suggestion was never used in Apple Watch.

Plaintiffs' misappropriation case accordingly rests on attorney argument, a handful of irrelevant or out-of-context documents, and a single expert witness (Dr. Madisetti) whose testimony was not credible for many reasons—and who was forced to make key concessions, including under questioning from the Court. Apple respectfully submits that the Plaintiffs did not come anywhere close to meeting their burden to prove trade secret misappropriation—or patent inventorship/ownership—and that it is time to finally reject these claims and bring this portion of the case to a close.

# ARGUMENT

## I. PLAINTIFFS HAVE NOT PROVEN THAT THEY POSSESSED, LET ALONE THAT APPLE MISAPPROPRIATED, ANY PROTECTABLE TRADE SECRET

### A. Plaintiffs Have Not Made Out A CUTSA Claim For L4

Plaintiffs' brief underscores that (1) they did not possess L4 as they defined it, (2) the version of L4 they did possess was generally known, and (3) nothing connects what Plaintiffs actually possessed to █████████████████████████████████████ ████████████████████████████████

**1. No Possession.** Plaintiffs presented no evidence that they possessed the aspect of L4 requiring ████████████████████████████████████████████████ ██████████████████████████. Dkt. 2447 (Apple's Post-Trial Brief ("A-PT Br.")) at 7-8. Plaintiffs do not dispute that Dr. Madisetti offered no opinion that Plaintiffs possessed ████████████████. Instead, Plaintiffs (at 8) merely point to testimony from Mr. Dalke and Mr. Poeze that Plaintiffs' ███████████████████████████████████ ████████████████████████████████████ But that is irrelevant; L4 requires ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Madisetti Direct ¶ 82; Warren Direct ¶¶ 36-38.[1]   Neither witness offered any evidence to prove those requirements.   Rather, both confirmed that Plaintiffs ████████████████████████ ████████████████████████████. A-PT Br. 7. Mr. Poeze testified ████ ███████████████████████████████████████████ 11/6 AM Tr. 13:10-12, and Mr. Dalke conceded that he knew so little about light piping that he was "not comfortable discussing" it, *id.* at 35:25-36:7.

Plaintiffs try to sidestep this failure of proof by arguing (at 8) that they need not possess all of L4, as they defined it.  But Plaintiffs' attempt to discard L4's ████████ ██████████████ cannot be squared with this Court's ruling that Plaintiffs cannot "modify … trade secret disclosures … when a case goes to trial." Dkt. 1898 at 7-8. Plaintiffs' cited

---

[1] Emphasis added—and internal quotation marks omitted—unless otherwise noted.

cases do not suggest a different conclusion, as the defendant in *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *10-11 (C.D. Cal. Nov. 7, 2022), did not contest the propriety of Plaintiffs' unprecedented partial possession theory, and the other two cases do not address the possession element, *Bianco, M.D. v. Globus Med., Inc.*, 2014 WL 5462388, at *7 (E.D. Tex. Oct. 27, 2014) (misappropriation); *Infospan, Inc. v. Emirates NBD Bank PJSC*, 2016 WL 8849699, at *14 (C.D. Cal. June 8, 2016) (remedies). This Court concluded in 2023 that L4 survived JMOL on possession only because there was a "factual dispute" over "whether Masimo possessed the ████████' component of L4;" the Court did not adopt Plaintiffs' assertion (repeated now) that they could rewrite L4 at trial to ████████████████. *See* Dkt. 1901 at 5 (FRCP 50(b) decision); *cf.* Dkt. 1812 at 2 (Plaintiffs' FRCP 50(b) opposition citing *True Wearables* and *Bianco*).[2]

**2. Generally Known.** Plaintiffs—not Apple—have the burden to prove that their purported trade secrets were not generally known. *See* Cal. Civ. Code § 3426.1(d)(1). Plaintiffs have not come close to satisfying that burden, nor could they, because the common-sense methodology in L4—████████████████████████████ ████████████████████████████—was generally known. Plaintiffs offered no witness who assessed the public's or the industry's knowledge of L4, as required, *see Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999). Rather, the only witness to testify on that front was Apple's expert, Professor Warren, who testified that this purportedly secret methodology was generally known, including because it was disclosed in Nellcor's 2008 Petersen patent. A-PT Br. 8-12. Plaintiffs tellingly chose not to put on any rebuttal case in response.

Having failed to put forward meaningful affirmative evidence, Plaintiffs argue only that (1) Plaintiffs purportedly kept L4 secret, (2) ████████████████████ ████████████████████████████, and (3) in Mr. Kiani's

---

[2] Plaintiffs also cannot reconcile their shifting interpretation of L4 with a plaintiff's burden to define alleged trade secrets with sufficient particularity. *See* A-PT Br. 13-14.

and Mr. Diab's subjective view (which only considers technology from *1995* or earlier), ███████████████████████████. Dkt. 2429 (Plaintiffs' Post-Trial Brief ("P-PT Br.")) at 8. The first point largely speaks to a different element—whether Plaintiffs took reasonable efforts to maintain secrecy, Cal. Civ. Code § 3426.1(d)(2)— and says nothing about whether competitors or other interested parties were aware of L4 from other sources. The second and third points speak only to the general concept of ███████████ —not whether L4 specifically was generally known. Plaintiffs do not dispute that light piping itself was long known, P-PT Br. 18 ("[l]ight piping in general is not L4"); 11/5 AM Tr. [Kiani] 105-106 (███████████████████ ███████████████████), and ███████████████ ███████████████████████ 11/5 PM Tr. 65:16-25.[3]

Unable to meet *their* burden, Plaintiffs level unsupported attacks on the evidence offered by Apple. *First*, Plaintiffs allege that "Apple does not identify *any* publication disclosing all of L4" in one place. P-PT Br. 9; *see also id.* at 15, 25, 29 (similar for L5, D1, and D3). Plaintiffs' premise is that a single reference must disclose the entirety of an alleged secret—but this Court has already held Apple's experts could rely on multiple publications to rebut Plaintiffs' "generally known" showing. *Compare* Dkt. 1174 at 8-9 (Plaintiffs' *Daubert* motion) *and* P-PT Br. 9, 15 (citing same case law as *Daubert* motion) *with* Dkt. 1284 at 5-6 (*Daubert* ruling). Regardless, Apple *did* identify a single publication disclosing all of L4 as possessed by Plaintiffs: the Petersen patent, which describes ███████████████████████████ ███████████████████████████. *See* A-PT Br. 8-12.

Plaintiffs' brief (at 10-11) does not dispute that Petersen "discloses ███████ ███████████ ███████████████████████

---

[3] Plaintiffs make no attempt to show that L4's ███████████ was not generally known.

[4] Plaintiffs' proposed finding (¶ 120) that "Petersen discloses 'placing false tissue on the sensor' … ███████████████████████ *See* JTX-3778 at 6:20-29 ("[T]he false tissue should *absorb the light that impinges on it* so that any signal *detected by the detector* … may be attributed to shunting.").

APPLE'S POST-TRIAL REPLY BRIEF

CASE NO. 8:20-cv-00048-JVS (JDEx)



*See* JTX- 3778 at 3:51-57, 7:18-29; Warren Direct ¶ 50; Dkt. 2448 (Apple's Post-Trial Proposed Findings of Fact and Conclusions of Law) ("AF-C")) ¶ 52; *see also* 11/13 Tr. [Warren] 115:10-25

A-PT Br. 9-10.[5]

**Second**, Plaintiffs wrongly argue (at 9, 15, 25, 29) that Apple had to show that each of Professor Warren's references was "well known." Again, Plaintiffs—not Apple—bear the burden on this issue; this Court long ago rejected Plaintiffs' argument that Apple's witnesses were required to quantify the degree to which a particular reference is well known. Dkt. 1284 at 6. Regardless, Petersen—and all other references Professor Warren relied on beyond the "very well known" Webster textbook—are patents, and it is well-established that "information disclosed in a patent *is generally known* to the public for purposes of the CUTSA." *See, e.g.*, *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 (Fed. Cir. Jan. 24, 2022); *see also* Dkt. 1715 at 29-30 ("Generally, publication of information in a patent or a patent application makes it generally known to the public … and so eliminates any trade secrecy.").

**Third**, Plaintiffs argue a particular ▓▓▓▓▓▓▓▓▓▓▓▓▓ they have used was not generally known. P-PT Br. 10-11; Dkt. 2430 (Plaintiffs' Post-Trial Proposed

---

[5] Plaintiffs offer no real explanation for why the other patents Apple cited in its opening brief do not disclose L4's constituent parts. Their suggestion (PFF ¶ 140) that the 1995 and 2001 Masimo patents are irrelevant simply because Masimo owns them misunderstands the law. *See* A-PT Br. 10.

Findings of Fact) ("PFF") ¶¶ 114-123.  But L4 recites ████████████████████.
Plaintiffs "may not defend against challenges to [their] trade secret by arguing that a
further 'secret' lies behind the alleged trade secret as defined and disclosed and that
further secret is what has been misappropriated."  Dkt. 1898 at 8.

**3.  Insufficient Efforts To Preserve Secrecy.**  Plaintiffs failed to prove they made
reasonable efforts to maintain L4's secrecy.  A-PT Br. 14.  Plaintiffs' argument (at 7)
rests almost entirely on ***general*** evidence about their corporate information security
policies.    Professor Warren, however, testified that Plaintiffs' disclosures of L4's
teachings in their own Mason 2006 and Diab 2008 patents show that Plaintiffs did not
protect the ***specific*** information alleged to be a trade secret.  *See* Warren Direct ¶¶ 60-
64.  Plaintiffs' only response (at 11) is to assert that "those patents [do not] disclose ██
██████████████████ But as Professor Warren testified, implicit in a disclosure
that Plaintiffs possessed ways ███████████████████████████████
█████████████.  *See, e.g.*, 11/13 Tr. [Warren] 81:25-83:2, 84:25-85:24.  No more
specific disclosure is required to show Plaintiffs' lack of reasonable efforts, particularly
since L4 itself █████████████████████.  *See, e.g.*, 11/6
PM Tr. [Madisetti] 77:6-78:17 (agreeing that ███████████████████████
██████████████████████.

**4.  No Improper Acquisition/Disclosure/Use.**  Plaintiffs have failed to connect
the dots between Plaintiffs' purported possession of L4, Dr. Lamego, and Apple's
accused black foam test.  The uncontroverted evidence establishes that by November
2013—months before Dr. Lamego was hired—Apple engineers had already designed
█████████████████████████████████████████████████
█████████████.  *See* AF-C ¶¶ 69-79; A-PT Br. 15-18.

While Plaintiffs do not directly address Apple's independent development of that
November 2013 test, they appear to contend (at 11) that the test did not practice L4
because it did not ██████████████████████████████████.  But
nothing in L4 specifies ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████    ████████████████████████

██████████████████████████████████    ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ and is another improper attempt by Plaintiffs to rewrite the controlling definitions of their purported trade secrets. *See, e.g.*, A-PT Br. 12-14; Dkt. 2345 at 8-9.[6]  But Plaintiffs cannot now narrow the scope of L4.  *See* Dkt. 1898 at 8. Indeed, if Plaintiffs believed a key aspect of L4 was ██████████████████████ ████ "they could have written their § 2019(d) statement to reflect" that requirement. *Id.*

In any event, Plaintiffs identify no evidence linking Dr. Lamego to Apple's decision to ████████████████████████████████████████. Mr. Land and Dr. Block testified under oath there was no such connection and explained Apple was always aware that ██████████████████████████████████████████ ████████████████████████████████. *See* Block Direct ¶ 24; Land Direct ¶ 42.  This is an obvious, common-sense idea akin to ██████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████.  Although Plaintiffs attempt (at 10) to dismiss this analogy ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████

Because Plaintiffs cannot even tie Dr. Lamego to black foam, they again try to

---

[6] Even Dr. Madisetti initially agreed t██████████████████████████████ ████████████████████████████████████████████████████

shift their burden to Apple.  Plaintiffs primarily rely on a single document authored by Dr. Lamego, which mentions (among 24 other suggestions) ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████, *see* JTX-3707 at Abstract.[7]  Plaintiffs do not come close to carrying their burden to show otherwise or explain how the 4 words ███████████████████████████████████ supposedly convey the nearly 70 words that define L4.  Tellingly, while Plaintiffs' proposed findings state that "significant evidence supports  the ████████████████████████████████████████████████ Plaintiffs do not provide a ***single*** record citation to back up that assertion.  PFF ¶ 265.

Next, Plaintiffs argue (at 12) that Dr. Lamego ***could*** have secretly been behind Apple's use of a ████████████████████ because Mr. Land testified that he could not rule out that Dr. Lamego had discussed it with another team member.  11/12 PM Tr. [Land] 21:8-12 (Land agreeing that he "do[es] not have first-hand knowledge of every conversation Marcelo Lamego had at Apple").  This is improper burden shifting, as it is Plaintiffs' obligation to prove Dr. Lamego ***did*** suggest the ████████████████.  Regardless, Mr. Land confirmed the decision was made by members of his team (which includes Dr. Block) working in conjunction with the Hardware Test Engineering and Reliability teams after they identified ████████████████████████████████████ ████████████████  AF-C ¶ 83.  And both Mr. Land and Dr. Block were unequivocal

---

[7] As Professor Warren explained, ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

that Dr. Lamego had no involvement in the decision.  A-PT Br. 16-17; AF-C ¶ 82.

The evidence Plaintiffs claim (at 12) "points to Lamego" boils down to (1) Dr. Lamego *receiving* one email along with 38 other Apple employees, JTX-1063, and another sent to 14 other Apple employees, JTX-45, and (2) Dr. Lamego hiring and working with Dr. Guocheng Shao, who in turn worked on ███████████ ██████████████████████████████████████████████████████████ ███████████████ *see* 11/13 Tr. [Block] 10:4-11:21; JTX-1066 (email chain dated May/June 2015).  The clear implication of the trial record is that—just as Mr. Land, Dr. Block, and Professor Warren ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████, and Dr. Lamego had nothing to do with it.  A-PT Br. 15-18, 35-36.

The only witness who offered a contrary theory was Dr. Madisetti, whose testimony was deeply flawed.  The testimony of Dr. Madisetti, who has testified against Apple on numerous occasions, 11/6 PM Tr. 59-60, held himself out as an expert on an expansive variety of unrelated technical subjects, *see id.* 60-62, and who repeatedly evaded questions at trial—resulting in multiple admonitions from the Court, *see, e.g.*, 11/7 AM Tr. 46, 52, 104—cannot satisfy Plaintiffs' burden.

Finally, Plaintiffs assert ████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ P-PT Br. 13 (citing JTX-1064 and JTX-1078).  But Plaintiffs cite no evidence that ██████████ █████████ Dr. Madisetti was unable to link ████████████████████ █████████████████████████, and Mr. Land and Dr. Block testified ████████ ████████████████████, A-PT Br. 18-19; *see* AF-C ¶¶ 94-95.

Plaintiffs also raise a new theory about JTX-1064—i.e., ████████████ ████████████████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

1  ████████████████████. P-PT Br. 13.  Plaintiffs cite nothing beyond JTX-1064's

2  (cryptic) text for their undisclosed attorney argument that t████████████████

3  ██████████████████████████[8]  Contrary to Plaintiffs' new theory, both Mr.

4  Land and Dr. Block confirmed ████████████████████████████████████

5  ████████████████████████ AF-C ¶¶ 91-92.  Apple does not ████████████

6  █████████████████████████████████████████████████████████████

7  ████████████████████████████████████ *Id.* ¶ 90.[9]

## B.    Plaintiffs Have Not Made Out A CUTSA Claim For L5

After five years and two trials, Plaintiffs continue to engage in shape-shifting on the scope of L5, but Plaintiffs cannot prevail on any of their varying interpretations. █

█████████  ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████  ███████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

Apple has thus never used L5, either as possessed by Plaintiffs, or as written.

## 1.  No Possession Or Particularity.    Plaintiffs' new assertion that L5

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

---

[8] The only substantive testimony on this text in JTX-1064 is from Dr. Block, who ████████████████████████████████████████████████████████████

[9] Plaintiffs' suggestion (at 13) ███████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████

Plaintiffs' remarkable new position—that they "obviously need not possess every solution [to L5]" because L5 "is not limited to a particular solution," P-PT Br. 20—cannot be squared with CUTSA's requirement that Plaintiffs "must prove that they … lawful[ly] possess[ed L5] … at the time of the asserted misappropriation," Dkt. 1715 at 27. "The *sine qua non* of a trade secret … is the plaintiff's possession of information of a type that can, at the possessor's option, be made known to others, or withheld from them[.]" *Altavion Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 56 (2014).[10]  Plaintiffs have previously (and successfully) argued that trade secret law requires "possessing the trade secret and having the right to prevent dissemination." Dkt. 1188 at 9-10; Dkt. 1283 at 3-4.  A trade secret plaintiff cannot logically exercise a "right to control the dissemination of information," Dkt. 1283 at 4, when it did not have that information in the first place.  This alone is enough to rule against Plaintiffs on L5.

Tacitly recognizing L5's fatal flaws as written, Plaintiffs suggest the Court rewrite L5—an approach this Court has rejected. *See supra* p. 2, 5-6.  For example, Plaintiffs suggest (at 16, 20) that this Court could narrow L5 ██████████████████████ ██████████████████  This would be inconsistent with Dr. Madisetti's testimony and L5's plain text ███████████████████████████████—and it would wrongly give Plaintiffs ownership of an idea known for 50 years, *see infra* pp. 12-13.

Plaintiffs make these extreme arguments because they failed to show possession ████████████████████████████████████████████████ ███████████████████████████████████. Plaintiffs concede that Mr. Dalke and Mr. Smith only became ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Plaintiffs contend that Mr. Dalke

---

[10] Plaintiffs rely on *Altavion* (at 20-21), but the asserted trade secret there was limited to "particular design concepts" underlying Altavion's "digital stamping technology."  226 Cal. App. 4th at 34, 47.  *Altavion* does not suggest that the trade secret was defined as the problem identified by those design concepts and all solutions to that problem.

1

2

3

4

5          That

6 should end the inquiry, as Plaintiffs concede L5 requires

7 .

8       Plaintiffs' case also fails for an independent reason—they have not shown L5 has

9 sufficient particularity. Plaintiffs' claim to

10 , 11/7 AM Tr. [Madisetti] 106:13-107:7, is no more

11 specific than the vague "dimensions and tolerances" trade secret disclosure that the

12 Ninth Circuit rejected as insufficiently particular, *see Imax Corp. v. Cinema Techs., Inc.*,

13 152 F.3d 1161, 1167 (9th Cir. 1998).

14       **2. Generally Known.** To carry their burden to prove L5 was not generally

15 known, Plaintiffs rely on the same kind of deficient evidence they advanced in support

16 of L4—i.e., an assertion that Plaintiffs kept L5 secret and references to the supposed

17 value of ***products*** that purportedly use L5, rather than anything inherent to L5 itself.

18 *Compare* A-PT Br. 14-15 *with supra* pp. 3-5. Plaintiffs also cite (at 14) the purported

19

20

21 [11] In fact, several Apple witnesses (who have never read the purported

22 trade secrets) testified that

23

24 .

25       Regardless, Apple and Professor Warren affirmatively demonstrated that—based

26 on the Mims, Roedel, and Webster references—it has been generally known for decades

27 [11] For that reason, Plaintiffs cannot prove the broader industry was unaware of the

28 merely by citing (at 14) an email chain between two Apple engineers (JTX-541).

1 ████████████████████████████████████████████████████████

2 ████████████████████████. A-PT Br. 21-22. Plaintiffs' brief does not mention

3 any of these three references—an omission explainable by the dearth of evidence

4 supporting their positions, Dr. Madisetti's conclusory trial analysis (merely marking

5 "NO" in a chart), and Plaintiffs' failure to put on a rebuttal case.[12] Instead, Plaintiffs

6 rest on the same erroneous legal arguments addressed above (i.e., that Apple supposedly

7 cannot rely on multiple references and must demonstrate the degree to which references

8 are known generally). *See supra* pp. 4-5. Plaintiffs also offer no response to Professor

9 Warren's unrebutted testimony that Webster ██████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████.

15      Plaintiffs' brief addresses only Dalke 2006, a Masimo patent that (as explained)

16 discloses ***all of*** L5 as possessed by Plaintiffs—████████████████████ A-PT

17 Br. 21-22. But Plaintiffs mislead by asserting that ████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████ P-PT Br. 15 (emphasis in original). In reality, Masimo ████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████ JTX-4233 at 16:39-43;

23 AF-C ¶¶ 125-127, 338. And while Plaintiffs offer attorney argument (at 15) that Dalke

24 2006 does not disclose L5, ████████████████████████████████

25 ████████████████████████████████████████████████████████

_____

26 [12] In portions of the Proposed Findings of Fact not cited anywhere in Plaintiffs' brief,

27 ████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████

**3. Insufficient Efforts To Preserve Secrecy.** Plaintiffs cannot show reasonable efforts to protect secrecy when they published the entirety of L5 in the Dalke 2006 patent. AT-Br. 22-23. Indeed, Mr. Smith admitted that Plaintiffs made no efforts to maintain the secrecy of ███████████████. *Id*. Plaintiffs' only response (at 15-16) is to again incorrectly assert Dalke 2006 does not describe L5.

**4. No Acquisition/Disclosure/Use.** Plaintiffs failed to prove Apple improperly used, disclosed, or acquired L5 as they possessed it. The evidence instead establishes that ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████ Plaintiffs' brief never contends that Dr. Lamego said Apple should ████████████—he did not—and ignores Dr. Madisetti's admission, when examined by the Court, that ████████████████████████████████

████████████████████████████████████ *See* 11/7 AM Tr. 104:3-105:24. The arguments Plaintiffs do make are meritless.

*First*, Plaintiffs wrongly suggest (at 17) that ████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████ Numerous Apple witnesses also confirmed ███████████

██████████████████████████████████████

██████████████████████████████████████

██████████████ And while Plaintiffs criticize Dr. Block (at 17) for stating that █

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

████████████████████████████████████████

***Second***, Plaintiffs erroneously contend (at 16-17) that Dr. Lamego actually ███████████████████████████ and that Apple "followed" his recommendation ████████████████████████. But the lone document Plaintiffs cite in support confirms that Dr. Lamego's proposal was ████████████████████████████ ████████████████ JTX-184 at -173.[13]  Plaintiffs also ignore entirely the portion of the same document that expressly ***rejects*** Dr. Lamego's proposal. *See* JTX-184 at -173 ██████████████████████████ Plaintiffs' reliance (at 16-17) on JTX-185 and JTX-143 cannot save their argument, as both documents merely use the phrase ████████ as a shorthand in a brief table entry.  Nothing suggests either document is a discussion of a ████████████████████ ██████████████████████. *See* Land Direct ¶¶ 51-53.

***Third***, Plaintiffs argue (at 16-17) that Apple disclosed L5 to ██████. But the cited Apple internal email exchange (JTX-541) and ████████ presentation (JTX-1156) do not mention ██████████████████.[14]  Warren Direct ¶¶ 133-135. Consistent with the final ERS (JTX-181), ████████ presentation (JTX-1156) reinforces that Apple implemented ███████████████████████████████████████ ████████████████████████████████████████ ████████████ *See* Land Direct ¶¶ 65-66 (JTX-1156 confirms that the plan conveyed to ████████ was ████████████████████████████████████; Warren Direct ¶ 135 ("JTX1156 merely confirms Apple disclosed to ████████ … to ████████████████████████████████████).

As with L4, the record presents a stark contrast between the consistent testimony of Apple's engineers, Dr. Lamego, and Professor Warren, on one hand, and Dr.

---

[13] Dr. Madisetti's response to JTX-184 is to accuse the document's author of "misquot[ing]" Dr. Lamego, 11/7 AM Tr. [Madisetti] 85, without providing any concrete basis for such an assertion. Even Plaintiffs' brief does not press this argument.

[14] Although JTX-541 could be read as referring to ████████████████████ ████████, it did not disclose it—the relevant portion is an internal email exchange between two Apple engineers, not anything sent to ████████.

Madisetti on the other.  Dr. Madisetti's unsupported opinions are not remotely enough for Plaintiffs to meet their burdens on the various legal requirements applicable to L5.

### C.     Plaintiffs Have Not Made Out A CUTSA Claim For D1, D3, and D10

Plaintiffs' brief underscores that their misappropriation case for D1, D3, and D10 is disconnected from Apple Watch.  Plaintiffs target a single demodulation algorithm that Dr. Lamego proposed, but that Apple quickly rejected and that has never been used in any Apple Watch.  Plaintiffs also failed to prove that they possessed any of D1, D3 or D10 and—if Plaintiffs possessed D1 and D3—they disclosed D1 and D3 in patents.

**1. No Possession.**  Plaintiffs did not show that any product, document, or source code—or any combination thereof—proves they possessed all elements of D1, D3, or D10.  A-PT Br. 26-28.  Plaintiffs' reliance on multiple references to show possession of D1, D3, and D10 (at 23-24, 27-28 and 30-31) cannot be reconciled with their assertion that Apple cannot do the same for the "generally known" inquiry.  *See* A-PT Br. 28.

As to D1, Plaintiffs have at least failed to show possession of ███████ ████████████████████████████  ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████  *see* Sarrafzadeh Direct ¶¶ 42-43.  Mr. Poeze's (unexplained) testimony that ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██.  Moreover, as Mr. Poeze acknowledged on cross, he has never read D1 and so could not address the alleged secret.  11/5 PM Tr. 110:17-111:5 (agreeing he did not "discuss any of the alleged trade secrets" in his direct testimony or "attempt to connect the notebook … to any of the alleged trade secrets").  Plaintiffs also rely on Dr. Madisetti's assertion that ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

*See* Madisetti Direct ¶¶ 180-182.  The testimony amounts to Dr. Madisetti pointing to these technical terms and asking the Court to trust him about their meaning.  By contrast, Dr. Sarrafzadeh explained that ███████████████████████████████ ██████████████ and unlike Dr. Madisetti, Dr. Sarrafzadeh had support for his explanations.  *See* Sarrafzadeh Direct ¶¶ 49-50; 11/12 AM Tr. [Sarrafzadeh] 62:20-63:8.

Plaintiffs' suggestion ███████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

As to D3, Plaintiffs failed to prove (at 27-28) they possessed at least the ██████ ███████████████    ████████████████████████████████
████████████████████████████████████████████████████
███████████████████ Poeze Direct ¶ 39; *see* 11/6 AM Tr. [Poeze] 11:4-15.  As with D1, Plaintiffs also rely on page -935's reference to █████████████████████████ Plaintiffs did not prove that █████████████████████████.  *See supra* pp. 16-17.

Finally, Plaintiffs' brief (at 30-31) never specifically explains how Plaintiffs supposedly possessed each of D10's ████████████████████████████████
Tellingly, Plaintiffs ignores Dr. Sarrafzadeh's testimony that Plaintiffs cannot use ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████.  Plaintiffs' brief (at 30-31) does not even attempt to show how Plaintiffs possessed ████████████████.  Plaintiffs similarly fail to explain how ████████████████████████████████████
████████████████████████████████████████████████████

Wilmer Cutler
Pickering Hale
and Dorr LLP

████████████ *Compare* Madisetti Direct ¶¶ 242-243 *with* Sarrafzadeh Direct ¶ 157.

**2. Generally Known/Insufficient Efforts to Preserve Secrecy.** Plaintiffs have not proven that D1 and D3 were secret, nor that they took reasonable efforts to maintain them as secrets. A-PT Br. 28-30. Plaintiffs do not seriously dispute (at 25-26) that their Weber 2018 patent disclosed D1 in full. They argue only that it published after Dr. Lamego worked at Apple and that Dr. Sarrafzadeh supposedly "conceded" Weber 2018 does not disclose a ████████████. That was not Dr. Sarrafzadeh's testimony. Dr. Sarrafzadeh merely indicated that if Plaintiffs can establish they possessed a ████████████ (as Dr. Madisetti asserted, *see supra* p. 16-17), then that means Weber 2018's reference to a matrix (JTX-3584 at 17:44-54) discloses ████████████. *See* 11/12 PM Tr. 14:5-23, 65:19-66:3. While Plaintiffs baldly assert (at 25) that Weber 2005 does not disclose "████████████ ████████████" in one place, they do not dispute that Weber 2005 discloses each component part. PFF ¶ 183; *see also* Sarrafzadeh Direct ¶ 62. Nor do Plaintiffs substantively dispute (at 28-29) that ████████████ ████████████. The Court already rejected the incorrect legal arguments (at 25, 28-29) that Apple cannot rely on combinations of references and must prove that each cited patent was well known. *See supra* pp. 4-5.

**3. No Use/Disclosure/Acquisition.** Apple did not improperly acquire, use or disclose D1, D3, or D10. A-PT Br. 30-32. Plaintiffs' discussion of misappropriation (at 26-27, 29-30, 32) cannot obscure their fundamental problem: Apple ***never*** used Dr. Lamego's demodulation proposal in any product, ████████████ ████████████. Plaintiffs concede that Apple developed its dark channel subtraction ("DCS") algorithm ***before*** hiring Dr. Lamego, and that Apple Watch has continuously used only DCS since then. *See, e.g.*, PFF ¶ 340. Plaintiffs assert without citation that "Apple recognized how valuable [D1, D3, and D10] are and attributed a continuous benefit to [them] over … DCS[]," *id.* ¶ 341, but they never identify any technological change traceable to Dr.

Lamego's proposal.[15]  Plaintiffs instead allege (e.g., at 27) that Apple ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

*See* PFF ¶ 340; AF-C ¶ 157.  Apple did not make ***any*** change to its implementation of DCS as a result of this purported "benchmarking."  *See* AF-C ¶¶ 368, 386, 394.

## II.    APPLE DID NOT HAVE THE REQUISITE INTENT TO MISAPPROPRIATE

### A.    No Direct Misappropriation

Plaintiffs' October 2024 pretrial filings identified no specific theory for how Apple had acquired the alleged trade secrets through "improper means," but they now contend Apple "used financial incentives to" induce Dr. Lamego to breach his contractual duty of secrecy to Plaintiffs.  P-PT Br. 35.  This theory requires Plaintiffs to prove, *inter alia*, Apple "***intended*** to induce [Lamego to] breach" his contract.  *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 291 (2011).  No affirmative evidence supports this theory of intentional misconduct—and the record contradicts it.  A-PT Br. 33, 43-45.  Apple offered Dr. Lamego higher compensation than most other engineers at his level for a sensible business reason:  "he came from a much higher comp and title position at his previous company."  11/8 PM Tr. [Hotelling] 57:23-58:15; *see* AF-C ¶ 13.  Plaintiffs do not engage with this point or with testimony regarding the myriad instances Apple cautioned Dr. Lamego not to divulge confidential information.  *See, e.g.*, AF-C ¶¶ 12-13, 15-17; Hotelling Direct ¶¶ 49-54; 11/7 PM Tr. [Lamego] 130:3-11.

### B.    No *Respondeat Superior* Liability

Plaintiffs attempt (at 34-35) to revive their meritless theory that Apple had the requisite state of mind because ***Dr. Lamego*** knew or should have known that he breached his duty of secrecy (though he did not).  This Court has definitively rejected this legal argument and instructed Plaintiffs not to raise it again.  Dkt. 1901 at 18 n.7. Plaintiffs' latest request for reconsideration continues to rely on the same basic cases

---

[15] Plaintiffs failed to prove the proposal conveyed D1 or D3.  *See* AF-C ¶¶ 176-182.

they were aware of in April 2023, none of which provides precedential support for their position.  *See* A-PT Br. 34-35; Dkt. 2414-1 at 1-2.  Plaintiffs' two new cases actually support Apple's position that a corporate defendant is liable for misappropriation only when an agent *other than* the alleged conveyor of trade secrets knew or had reason to know about the misappropriation.  *See Extreme Reach, Inc. v. Spotgenie Partners, LLC*, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (CEO); *Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 471, 485-486 (M.D. Pa. 2018) (CEO and sales manager).

But through hours of questioning, Dr. Lamego consistently testified that he did not believe—and has no reason to believe—he conveyed any supposed trade secrets to Apple.  A-PT Br. 35; *see generally* 11/7 PM Tr. [Lamego] 9-126.  While Plaintiffs cite this Court's findings in *True Wearables* about the startup Dr. Lamego operated after leaving Apple, the rulings in that case "shed little, if any, probative value," Dkt. 1469 at 1, on his conduct at Apple.  At Apple, he never disclosed any of Plaintiffs' trade secrets.

## C.    No Indirect Misappropriation

Plaintiffs have not presented evidence establishing that any Apple employee knew or should have known Dr. Lamego was conveying Plaintiffs' confidential information. A-PT Br. 35.  Plaintiffs now identify just a single Apple employee (Mr. Hotelling) that they argue knew or should have known that Dr. Lamego had conveyed Plaintiffs' alleged trade secrets.  P-PT Br.32; Dkt. 2430 at 88.  Plaintiffs do not even attempt to address the myriad contrary pieces of evidence establishing that Apple in general and Mr. Hotelling in particular relentlessly instructed Dr. Lamego not to divulge Plaintiffs' confidential information.  *See supra* p. 19.  And they ignore Dr. Lamego's acceptance of Apple's Intellectual Property Agreement (JTX-3044) and Business Conduct Policy (JTX-4181), his counseling on Apple's policies from Mr. Hotelling, 11/7 PM Tr. [Lamego] 100:4-16; Hotelling Direct ¶ 49, and Dr. Lamego's written reassurances to Mr. Hotelling that he had "exercise[d] extra care to avoid IP conflicts" in his drafting ███████ that allegedly conveyed D1, D3, and D10, JTX-3050 at -213.

The documents Plaintiffs do cite are irrelevant or unremarkable.  For instance,

while Plaintiffs claim (at 5) that Dr. Lamego disclosed "all the asserted trade secrets" in a single chart, the page they cite merely includes a few high-level terms (including the basic concept of "demodulation") that are far from the detailed, purported secrets at issue. *See* JTX-143 at -568. Plaintiffs' assertion (at 33) that Mr. Hotelling "determined that Lamego was likely to disclose trade secrets and insulated *Apple's* trade secrets but continued to use Lamego as a 'consultant'" is misleading. In the June 2014 email that Plaintiffs reference, Mr. Hotelling rejected a colleague's suggestion to sideline Dr. Lamego (as a "consultant") and asked her to put Dr. Lamego on notice that he *should* be engaging in "tactical hands-on work" if he wanted "a productive future at Apple." JTX-15 at 1-2; *id.* at 1 (another employee stating later in the chain that it "[s]ounds like [Hotelling] would like [Lamego] to have another chance"). Moreover, while Plaintiffs try to pair the June 2014 email exchange with a snippet of Dr. Lamego's testimony to imply that Apple chose not to expose Dr. Lamego to *Apple* confidential material toward the end of his employment, P-PT Br. 6, that is both incorrect (the cited testimony refers to shortly after Dr. Lamego was hired) and immaterial (the undisputed evidence establishes that Apple was taking extra steps to be "very careful" to avoid inadvertently learning *Plaintiffs'* confidential information, 11/5 PM Tr. [Lamego] 97:7-14, 100:4-16).

## III.    THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CUTSA CLAIM

Plaintiffs' CUTSA claim is not just meritless, but also time-barred. A-PT Br. 36-39. There can be no meaningful dispute that by the end of 2014, Plaintiffs had at least a *reason* to suspect what they now claim is misappropriation (though it is not remotely that). Plaintiffs do not dispute that their January 2014 warning letter to Apple articulated their "'suspicion that [trade secrets] theoretically could be shared.'" P-PT Br. 38 (quoting Dkt. 606 at 7). While the letter did not assert Apple *had* taken trade secrets, it undeniably articulates suspicion that Dr. Lamego *would* convey their purported trade secrets should Apple "employ Mr. Lamego in an area that … involve[s] healthcare technology, including … the measurement of physiological information." JTX-2937 at -094. That suspicion should have been further heightened later in 2014, when Plaintiffs'

then-CEO Joe Kiani purportedly heard "[Cristiano] Dalvi's representation that Apple had attempted to coerce Lamego into divulging trade secrets." Dkt. 2348 at 2. That "Kiani believed Dalvi," P-PT Br. 37, means that (in this Court's words) Dalvi's statement "potentially should have triggered an investigation," Dkt. 2348 at 2.

A reasonable investigation would have produced facts to confirm Dr. Lamego had worked on optical sensors by at least March 2016, when the '052 patent application published. The application "public[ly]" "link[ed] Dr. Lamego to physiological sensors at Apple," 11/5 PM Tr. [Kiani] 16:10-15, including for measurement of "blood oxygenation," JTX-1239 at 1:53. Had Plaintiffs taken the very basic step of monitoring patent filings for Dr. Lamego's name after sending the January 2014 letter and/or hearing Mr. Dalvi's statements, that "would [have] produce[d] facts sufficient to confirm th[eir] suspicion" that Apple employed Dr. Lamego in a field they asserted would *necessitate* misappropriation of trade secrets. Dkt. 606 at 3. Plaintiffs' assertion (at 38) that the '052 patent did not "disclose[] any trade secret" is immaterial, as the '052 patent provided the type of proof Plaintiffs claimed they need to establish misappropriation. "'[S]moking gun' evidence of misappropriation" is not required; courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 586-587 (2008).

## IV. PLAINTIFFS ARE NOT ENTITLED TO ANY RELIEF ON THEIR CUTSA CLAIM

### A. No Declaratory Relief

Plaintiffs cannot seek declaratory relief as it is not identified in the PTC order. *See* Dkt. 2280 at 11-13, 27 (modification only "to prevent manifest injustice").

### B. No Injunction

**1. Waiver**. Apple has repeatedly argued Plaintiffs waived their right to seek an injunction under FRCP 37(c) and by abandoning their request for monetary remedies. *E.g.*, Dkt. 2182 at 2-3; Dkt. 2285 ¶¶ 361-368; Dkt. 2294 at 3-6. This Court instructed the parties to brief both waiver issues. 11/13 Tr. 143:7-144:4. Apple did so. A-PT Br. 39-42. Plaintiffs did not meaningfully comply—their brief never mentions FRCP 37(c)

and their discussion of the *eBay* (at 45-46) only baldly asserts that legal remedies are generally insufficient. Plaintiffs cite FRCP 54(c), but that rule merely permits granting relief not pled—neither it nor Plaintiffs' cases (at 47-48) address FRCP 37(c). Plaintiffs also (at 48) note that an injunction was mentioned in the pretrial conference order, but Apple **objected** in the operative order. Dkt. 2280 at 3 n.4. And "the parties' joint pretrial order" cannot "cure[] any deficiencies" in a party's disclosure requirements under FRCP 26. *Waymo LLC v. Uber Techs. Inc.*, 2018 WL 466510, at *1 (N.D. Cal. Jan. 18, 2018). Finally, Plaintiffs contend they identified "supporting facts" in response to Apple's interrogatory on injunctive relief, but only cite passages discussing Plaintiffs' **damages** case. *See* Dkt. 2181-2 at 10-11, 15-17.

**2. eBay.** Plaintiffs fail (at 44-47) to justify an expansive order "enjoin[ing] Apple from making or selling Apple Watches that embody L4 or L5."[16] ***First***, Plaintiffs do not try to explain how the monetary remedies they sought until recently could not compensate for harm they supposedly suffered—and cannot explain how waiving those remedies does not preclude an injunction claim. Equitable principles forbid Plaintiffs from "voluntarily cho[osing] to ***forego*** a legal remedy" to create the impression that "no adequate legal remedy exists." *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024). Nor can they square their suggestion that monetary relief can ***never*** remedy future harm with *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393-394 (2006), which rejects the approach that an injunction should almost always be granted when liability is found. *See* A-PT Br. 42 (distinguishing *Universal*, *Equate*, and *Trans-World*).

***Second***, Plaintiffs' assertion that irreparable harm can be presumed based on liability was rejected by the Ninth and Federal Circuits as inconsistent with *eBay*. A-PT Br. 41 (citing *Citcon* and *Robert Bosch*). The district court cases Plaintiffs rely upon (at 45) do not address either *Citcon* or *Robert Bosch*. And beyond the presumption, Plaintiffs cannot articulate a non-speculative basis for finding that they have suffered an

---

[16] Plaintiffs do not assert (at 47) that any liability arising from D1, D3, or D10 would justify enjoining "making or selling Apple Watch," which makes good sense—Apple indisputably has never used Dr. Lamego's demodulation proposal in Apple Watch.

irreparable injury.  *See* A-PT Br. 40-41.  This Court has already observed the lack of any "persuasive" evidence that "misappropriation … weakened consumer interest in [Plaintiffs'] products," Dkt. 2348 at 2, and neither Plaintiffs' brief (at 45) nor proposed findings (PFF ¶¶ 389-401) cite *any* fact in evidence to support their assertions about alleged "chilling open engineering collaboration" or a "further risk of dissemination."

*Third*, Plaintiffs have not established (at 46-47) that either the balance of the hardships or the public interest favors taking the extreme step of enjoining Apple from "making or selling Apple Watches that embody L4 or L5."  Plaintiffs have failed to establish a factual link between ███████████████████████████ ██████ (L4) or a single short circuit (L5) and the Blood Oxygen feature, let alone Apple Watch's optical sensor or selling the Watch as a whole.  A-PT Br. 42-43.  Plaintiffs are also wrong (at 46) to assert that "Apple witnesses confirmed Apple would suffer no hardship if enjoined from using [L4 or L5]."  Apple's employee witnesses could not provide a complete answer to that question because they were not permitted to read the purported trade secrets.  As Mr. Hotelling put it, Apple would not be harmed by enjoining Apple from using Dr. Lamego's ideas only if the injunction "correctly identified what [Dr. Lamego] contributed."  11/8 PM Tr. [Hotelling] 95:10-14.

### C.    Any Attorney's Fees Award Should Be To Apple

There is no evidence of willful and malicious misappropriation.  A-PT Br. 43-44.  Plaintiffs' argument (at 49-50) rests on the same basic materials they (unsuccessfully) rely upon to establish intent.  *See supra* pp. 19-21.  Because that evidence does not establish intent, it logically cannot rise to the type of conduct necessary to establish willfulness or maliciousness.  *Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 66-67 (2005).  Finally, Plaintiffs' suggestion (at 50) that a discretionary fee award would be appropriate because "Apple … earned significant profits from its misappropriation" has absolutely no factual basis in the record—Plaintiffs have never established a causal connection between the slivers of technology claimed by the purported secrets and any Apple Watch feature, much less Apple Watch itself.  *See* 11/7 AM Tr. [Kinrich] 114:12-

1  17 ("I have not analyzed the causation from the trade secrets themselves."); Webster

2  Direct ¶ 14.  Any fees award should be to Apple, not Plaintiffs.  *See* A-PT Br. 45.

3  ## V.    PLAINTIFFS HAVE NOT PROVEN THE INVENTORSHIP AND OWNERSHIP CLAIMS

4          Plaintiffs have not proven co-inventorship or co-ownership of the disputed

5  patents.  A-PT Br. 46-49.  As to inventorship, Plaintiffs concede that Mr. Diab at most

6  taught Dr. Lamego prior art.  With respect to the '052 and '670 patents, Plaintiffs assert

7  (at 43) that Mr. Diab should be a co-inventor because he supposedly "taught Lamego

8  about using reflective surfaces on sensors" in connection with development of Masimo's

9  TF-I sensor—a sensor was released more than a decade before the August 2014 priority

10  date, *see* Warren Direct ¶¶ 161, 163; *see also, e.g.*, PFF ¶ 344 (relying on Dr. Lamego's

11  work on TF-I).  Similarly, for the '095 and '390 patents, Plaintiffs assert (at 44) only

12  that Mr. Diab's contribution is that he "taught the subject matter" of an ***already issued***

13  patent (the '272 patent) to Dr. Lamego.  Neither showing establishes inventorship.  "[A]

14  purported inventor must show that he … 'did more than merely explain to the real

15  inventors well-known concepts and/or the current state of the art.'" *Acromed Corp. v.*

16  *Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001); *see also* AF-C ¶ 476.

17          As to ownership, Plaintiffs primarily argue (at 32, 41-42) that Dr. Lamego could

18  not have come up with his contributions to the '095, '390, and '754 patents in the short

19  time he worked at Apple.  But contemporaneous evidence—including a figure in an

20  Apple patent, a MATLAB script, and a figure created during an Apple brainstorming

21  session—shows he did.  *See* A-PT Br. 47-49.  Such quick work is "common" because

22  new engineers provide a fresh perspective when exposed to the details of Apple's

23  products and prototypes.  Hotelling Direct ¶ 70.  That happened with the other two

24  disputed patents (the '052 and '670 patents).  Dr. Lamego proposed applying reflectivity

25  to the back of Apple Watch—an idea he could not have had at Cercacor, where he never

26  worked on a wrist-worn device.  Warren Direct ¶ 164.

## CONCLUSION

27          This Court should grant judgment in Apple's favor on Plaintiffs' claims.

28

1

2  Dated:  January 13, 2025                    Respectfully submitted,

3

4                                             MARK D. SELWYN
                                              AMY K. WIGMORE
5                                             JOSHUA H. LERNER
                                              JOSEPH J. MUELLER
6                                             SARAH R. FRAZIER
                                              NORA Q.E. PASSAMANECK
7                                             THOMAS G. SPRANKLING
                                              WILMER CUTLER PICKERING HALE AND
8                                             DORR LLP
9

10                                            BRIAN A. ROSENTHAL
                                              GIBSON, DUNN & CRUTCHER LLP
11

12                                            KENNETH G. PARKER
                                              HAYNES AND BOONE, LLP
13

14

15

16                                            By:  */s/ Mark D. Selwyn*
                                                     Mark D. Selwyn
17

18                                            *Attorneys for Defendant Apple Inc.*
19

20

21

22

23

24

25

26

27

28

APPLE'S POST-TRIAL REPLY BRIEF

CASE NO. 8:20-cv-00048-JVS (JDEx)

1

## CERTIFICATE OF COMPLIANCE

2    The undersigned, counsel of record for Defendant Apple, Inc., certifies that this

3 brief is 25 pages long, which:

4    ___ complies with the word limit of L.R. 11-6.1.

5    X_ complies with the 25 page limit set by court order dated November 26,

6    2024.

7

8 Dated: _January 13, 2025_    Respectfully submitted,

9
                                        MARK D. SELWYN
10                                       AMY K. WIGMORE
                                        JOSHUA H. LERNER
11                                       JOSEPH J. MUELLER
                                        SARAH R. FRAZIER
12                                       NORA Q.E. PASSAMANECK
                                        THOMAS G. SPRANKLING
13                                       WILMER CUTLER PICKERING HALE AND
                                        DORR LLP
14

15

16                                       BRIAN A. ROSENTHAL
                                        GIBSON, DUNN & CRUTCHER LLP
17

18                                       KENNETH G. PARKER
                                        HAYNES AND BOONE, LLP
19

20

21                                       By: _/s/ Mark D. Selwyn_____
                                             Mark D. Selwyn
22

23

24

25

26

27

28