1   Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2   Stephen C. Jensen (Bar No. 149894)
    steve.jensen@knobbe.com
3   Sheila N. Swaroop (Bar No. 203476)
    sheila.swaroop@knobbe.com
4   Brian C. Claassen (Bar No. 253627)
    brian.claassen@knobbe.com
5   Kendall M. Loebbaka (Bar No. 285908)
    kendall.loebbaka@knobbe.com
6   Douglas B. Wentzel (Bar No. 313452)
    douglas.wentzel@knobbe.com
7   KNOBBE, MARTENS, OLSON & BEAR, LLP
    2040 Main Street, Fourteenth Floor
8   Irvine, CA 92614
    Phone: (949) 760-0404
9   Fax:(949) 760-9502

10  Adam B. Powell (Bar. No. 272725)          Brian C. Horne (Bar No. 205621)
    adam.powell@knobbe.com                    brian.horne@knobbe.com
11  Daniel P. Hughes (Bar No. 299695)         Mark D. Kachner (Bar No. 234192)
    daniel.hughes@knobbe.com                  mark.kachner@knobbe.com
12  KNOBBE, MARTENS, OLSON & BEAR, LLP        KNOBBE, MARTENS, OLSON & BEAR, LLP
    3579 Valley Centre Drive                  1925 Century Park East, Suite 400
13  San Diego, CA 92130                       Los Angeles, CA 90067
    Phone: (858) 707-4000                     Phone: (310) 551-3450
14  Fax: (858) 707-4001                       Fax: (310) 551-3458

15  Attorneys for Masimo,
    MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

16

## IN THE UNITED STATES DISTRICT COURT

17

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

18

## SOUTHERN DIVISION

19

20   MASIMO CORPORATION,                ) Case No. 8:20-cv-00048-JVS-JDE
     a Delaware corporation; and        )
21   CERCACOR LABORATORIES, INC.,       ) **RESPONSIVE POST-TRIAL BRIEF**
     a Delaware corporation             ) **OF MASIMO CORPORATION AND**
                                        ) **CERCACOR LABORATORIES, INC.**
22              Masimo,                 )
                                        ) Trial:    11/05/2024
23          v.                          )
                                        ) Hon. James V. Selna
24   APPLE INC., a California corporation )
                                        )
25          Defendant.                  )
                                        )
26                                      )
                                        )
27                                      )

28   ███**REDACTED VERSION OF DOCUMENT**
     **PROPOSED TO BE FILED UNDER SEAL**

████████████████████

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A.    Trade Secret L4 ........................................................................................ 2

        1.    Masimo Possessed L4 ................................................................. 2

        2.    L4 Has Value From Not Being Generally Known ...................... 3

                a.    Apple Applies The Wrong Legal Standards ................... 3

                b.    Masimo Proved L4's Economic Value ........................... 4

                c.    Apple's References Do Not Show L4 Is Generally Known .............................................................................. 4

                d.    Masimo Kept L4 Secret ................................................... 5

                e.    Masimo Did Not Change The Scope Of L4 ..................... 5

        3.    Apple Misappropriated L4 ........................................................... 6

                a.    Lamego Disclosed L4 To Apple ..................................... 6

                b.    Apple Used The L4 ███████████████ ██████ .............. 7

    B.    Trade Secret L5 ........................................................................................ 8

        1.    Masimo Possessed L5 ................................................................. 8

        2.    L5 Has Value From Not Being Generally Known ...................... 9

        3.    Masimo Kept L5 Secret ............................................................. 10

        4.    Apple Misappropriated L5 ......................................................... 10

    C.    Trade Secret D1, D3, And D10 .............................................................. 12

        1.    Masimo Possessed D1, D3, And D10 ....................................... 12

        2.    D1, D3, And D10 Have Value From Not Being Generally Known ........................................................................................ 13

        3.    Apple Misappropriated D1, D3, And D10 ................................. 14

    D.    Masimo Proved Any Required "Intent" Element ................................... 16

# TABLE OF CONTENTS
### (*cont'd*)

Page No.

| | | | |
|---|---|---|---|
| | 1. | Apple Knew Or Should Have Known It Was Using And Disclosing Masimo's Trade Secrets | 16 |
| | 2. | Apple Is Also Liable For Lamego's Acts Under Respondeat Superior | 18 |
| | 3. | Apple Also Acquired The Trade Secrets Through Improper Means | 19 |
| E. | | Apple's Defenses Are Meritless | 20 |
| F. | | Masimo Proved It Is Entitled To An Injunction And Attorneys Fees | 21 |
| | 1. | Masimo Is Not Barred From Receiving An Injunction | 21 |
| | 2. | Masimo Satisfied the *eBay* Factors | 22 |
| | 3. | Masimo is Entitled to Reasonable Attorneys' Fees | 23 |
| G. | | Masimo Proved Its Patent Ownership Claims | 24 |
| H. | | Masimo Proved Its Patent Inventorship Claims | 25 |

# TABLE OF AUTHORITIES

**Page No(s).**

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*,
226 Cal. App. 4th 26 (2014) ................................................................. 9

*Atmel Corp. v. Info. Storage Devices, Inc.*,
189 F.R.D. 410 (N.D. Cal. 1999) ........................................... 3, 10, 13

*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,
383 F. Supp. 3d 1169 (W.D. Wash. 2019) ..................................... 19

*Carr v. AutoNation Inc.*,
2018 WL 288018 (E.D. Cal. Jan. 3, 2018) .................................... 19

*Citcon USA, LLC v. RiverPay Inc.*,
2022 WL 287563 (9th Cir. Jan. 31, 2022) ..................................... 22

*Comet Techs. USA Inc. v. XP Power LLC*,
2022 WL 4625149 (N.D. Cal. Sept. 30, 2022) .............................. 22

*DVD Copy Control Ass'n, Inc. v. Bunner*,
116 Cal. App. 4th 241 (2004) ............................................................ 3

*Equate Media v. Suthar*,
2024 WL 1217217 (C.D. Cal. Mar. 20, 2014) ............................... 22

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .................................................................... 21

*Gable-Leigh, Inc. v. N. Am. Miss*,
2001 WL 521695 (C.D. Cal. Apr. 13, 2001) .................................. 17

*JBF Interlude 2009 Ltd., v. Quibi Holdings LLC*,
2020 WL 9311954 (C.D. Cal. Dec. 30, 2020) ............................... 17

*Masimo Corp. v. True Wearables Inc.*,
2021 WL 2548690 (C.D. Cal. Apr. 28, 2021) .................................. 3

*Masimo Corp. v. True Wearables, Inc.*,
2022 WL 17083396 (C.D. Cal. Nov. 7, 2022) .............................. 2, 3

*Masimo Corp. v. True Wearables, Inc.*,
2022 WL 205485 (Fed. Cir. Jan. 24, 2022) ..................................... 3

*Mattel, Inc. v. MGA Ent., Inc.*,
801 F. Supp. 2d 950 (C.D. Cal. 2011) ........................................... 24

# TABLE OF AUTHORITIS
### (*cont'd*)

**Page No(s).**

*Monster Energy Co. v. Vital Pharms., Inc.*,
2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) ..................................................22

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
399 F. Supp. 2d 1064 (N.D. Cal. 2005) ......................................................15

*PMC, Inc. v. Kadisha*,
78 Cal. App. 4th 1368 (2000) ....................................................................15

*PQ Labs, Inc. v. Yang Qi*,
2014 WL 4954161 (N.D. Cal. Sept. 30, 2014) ..............................................3

*Q-Co Indus., Inc. v. Hoffman*,
625 F. Supp. 608 (S.D.N.Y.1985) ..............................................................17

*Robert L. Cloud & Assocs. v. Mikesell*,
69 Cal. App. 4th 1141 (1999) ....................................................................22

*Rogers v. B. Braun Med., Inc.*,
Civ. No. 98-cv-250-B (RBB), Dkt. 390, Dkt. 415
(S.D. Cal. Sept. 13, 2004) ..........................................................................24

*Sargent Fletcher, Inc. v. Able Corp.*,
110 Cal. App. 4th 1658 (2003) ........................................................6, 7, 15, 17

*SkinMedica, Inc. v. Histogen Inc.*,
869 F. Supp. 2d 1176 (S.D. Cal. 2012) ......................................................15

*Tyan, Inc. v. Garcia*,
2017 WL 1658811 (C.D. Cal. May 2, 2017) ................................................3

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
617 F. Supp. 2d 938 (N.D. Cal. 2007) ........................................................17

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*,
573 F.3d 1290 (Fed. Cir. 2009) ..................................................................25

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 2123560 (N.D. Cal. May 15, 2017) ............................................8, 9

## OTHER AUTHORITIES

Cal. Civ. Code § 3426.1 ..............................................................................3, 20

Fed. R. Civ. P. 54 ......................................................................................21

1
2

**TABLE OF ABBREVIATIONS**

| MBR | Masimo's Opening Post-Trial Brief (Dkt. 2429) |
|-----|-----------------------------------------------|
| MFF | Masimo's Post-Trial [Proposed] Findings of Fact and Conclusions of Law (Dkt. 2430) |
| ABR | Apple's Opening Post-Trial Brief (Dkt. 2447) |
| AFF | Apple's Post-Trial [Proposed] Findings of Fact and Conclusions of Law (Dkt. 2448) |

All emphasis in quotations is added unless noted otherwise.

# I.  <u>INTRODUCTION</u>

Apple's brief begins by speculating why "Joe Kiani chose to file this suit."  Apple ignores the obvious reason: to stop Apple's brazen misappropriation of trade secrets and patent infringement.  Kiani spent his entire professional life leading Masimo to develop the most accurate non-invasive monitoring technology on earth and understands the unfairness in Apple quickly misappropriating that technology.

Trial overwhelmingly demonstrated Apple's misappropriation.  Apple determined a key feature of its watch was health technology.  Having zero experience, Apple sought a third-party to use as a "stepping stone" to develop health technology.  Apple identified Masimo as the "standout" candidate and told Masimo it wanted to work together.  But then Lamego—who Apple recognized was "one of Joe's key guys"—offered to solve Apple's health monitoring problems.  When Hotelling saw Lamego's email, he quickly strategized that Apple could get what it needed by acquiring Masimo's "people" instead of working with Masimo.  Apple then stopped discussing any partnership with Masimo the ***same day*** that Hotelling interviewed Lamego.  Apple recognized Lamego's relevant knowledge was "confidential" to Masimo and paid him handsomely for his "specialized" experience that Apple was "deeply in need of."  Apple then aggressively sought ideas from Lamego, who readily provided Masimo's trade secrets because he was eager to show he was the "real deal."  And, when Apple realized Lamego posed a threat to ***Apple's*** confidential information, it insulated him from Apple's information while using him as a "consultant" to obtain Masimo's information.

Rather than address this damning evidence, Apple offers hindsight excuses.  Apple now rewrites history, arguing it sought only "general" knowledge from Lamego.  But Apple's contemporaneous documents reveal otherwise: Apple deeply needed Lamego's "specialized" knowledge.  Apple also relies on its witnesses' self-serving blanket denials.  But those witnesses repeatedly admitted they had no basis for their denials.  Finally, Apple astonishingly argues Masimo should have filed suit earlier.  But Apple admits Masimo could not have learned facts sufficient to bring suit until well

within the statute of limitations.   The Court should find misappropriation, enter a permanent injunction, and award Masimo attorneys' fees.

## II. ARGUMENT

### A.   Trade Secret L4

#### 1.   Masimo Possessed L4

Apple disputes whether Masimo possessed the "███████████████████ ███████████████" portion of L4.  ABR at 7.  But Apple omits the word "or" before that phrase.  Apple thus ignores that L4 recites two alternatives: "██████ ████████████████████████████████ ██████████████." Thus, Masimo need not prove possession of █████████████████. MBR at 8 (citing *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 17083396, at *10-11 (C.D. Cal. Nov. 7, 2022) (finding misappropriation where Masimo showed it possessed two of three alternatives)).  Apple does not contest Masimo possessed the L4 alternative Apple misappropriated: "█████████████████████████████████."

Regardless, Masimo proved possession of ████████████.  Apple concedes ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ Apple also argues ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ Though not required, Masimo possessed ████████████.

-2-
████████████████████████████

## 2. **L4 Has Value From Not Being Generally Known**

### a. **Apple Applies The Wrong Legal Standards**

Masimo must show L4 "[d]erives ***independent economic value***, actual or potential, ***from not being generally known*** to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1). Thus, the focus is on whether the information derives value from not being generally known— not whether it has been published or could be derived from public sources.

This Court recognized—and the Federal Circuit affirmed—that publication alone does ***not*** render information "generally known." *Masimo Corp. v. True Wearables, Inc.*, 2022 WL 205485, at *3 (Fed. Cir. Jan. 24, 2022); *see also DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004). As the Court explained, information "available in trade journals, reference books, or published materials" could be the basis for a "readily ascertainable" defense. *Masimo Corp. v. True Wearables Inc*., 2021 WL 2548690, at *4 (C.D. Cal. Apr. 28, 2021) (quoting CUTSA legislative history). But the Court already held that Apple has no such defense here. Dkt. 1284 at 3-4.

Apple incorrectly argues Masimo must perform a "survey of literature or other research" to show that its trade secrets are not generally known. ABR at 8 (citing *Atmel*). This Court has already rejected this survey argument, explaining:

> This case is also unlike *Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999), in which the court excluded proposed expert testimony at the Daubert stage because the expert "consciously refrained, at the direct suggestion of litigation counsel, from educating himself on the universe of literature in the relevant time frame or even determining what he himself had been aware of during the relevant period or what others in the industry generally knew;" instead choosing "to argue that if he personally could not now remember knowing about the seventeen claimed trade secrets prior to the end of 1992, then they must not have been generally known in that time frame."

Dkt. 1901 at 5. Indeed, courts routinely find trade secrets exist without mentioning any survey evidence. *See, e.g.*, *True Wearables*, 2022 WL 17083396, at *12, *14, *17; *Tyan, Inc. v. Garcia*, 2017 WL 1658811, at *15 (C.D. Cal. May 2, 2017); *PQ Labs, Inc. v.*

-3-

1  *Yang Qi*, 2014 WL 4954161, at *3 (N.D. Cal. Sept. 30, 2014).

2  **b.    Masimo Proved L4's Economic Value**

3  Kiani and Diab explained L4's economic value.  Kiani ¶¶138-47; Diab ¶¶218-19.

4  Both Kiani and Diab explained L4 enables Masimo's products to deliver superior

5  clinical accuracy.  Diab ¶¶218-19; Kiani ¶¶139-41; MFF ¶107.  And because of L4's

6  value, Masimo marks its ███████████████████ "Confidential and Proprietary" and

7  does not share them with others.  Scruggs ¶14; Diab ¶219; MFF ¶105; JTX-937.

8  Apple argues Masimo offered no witness who assessed public and industry

9  knowledge of L4.  ABR at 8.  Apple is wrong.  Kiani explained that competitors'

10  products exhibit poor performance because of light piping, indicating they do not

11  appreciate ██████████████████████.  Kiani ¶¶140-42.  Indeed,

12  Nellcor—the industry leader with 90% market share at the time—█████████████

13  ██████████████████████████.  Kiani ¶142; Diab ¶219.  Apple was

14  also unaware of L4 until Lamego revealed it.  Madisetti ¶117.  And Masimo took years

15  to develop L4.  Madisetti ¶115; MFF ¶¶26-44.  This demonstrates that highly qualified

16  engineers throughout the industry did not understand L4.  Madisetti also explained why

17  L4 had value from not being generally known.  Madisetti ¶¶115-127.

18  **c.    Apple's References Do Not Show L4 Is Generally Known**

19  Apple ignores much of the above evidence and argues Masimo conceded on cross

20  that "concepts claimed by L4" were disclosed in Nellcor and Masimo patents.  ABR at

21  9.  But such general "concepts" fall well short of L4.  Further, Kiani on cross refuted

22  Apple's assertion by explaining Nellcor "████████████████████████

23  ████████████."  T1-1 at 107:4-25.  Diab on cross likewise refuted Apple's assertion

24  by explaining the Masimo patents "did not disclose any technique on how to measure

25  [light piping] or how to minimize it."  T1-2 at 52:8-14.  Masimo's ████ are not disclosed

26  in any patent.  Diab ¶219; T1-2 (Diab) at 52:8-14; Scruggs ¶14; Kiani ¶146.

27  Apple relies solely on Petersen (JTX-3778) as supposedly disclosing ████

28  ██████████████████.  But Apple's expert identified Petersen after searching for

-4-

████████████████████████████

hundreds of hours and never attempted to assess whether it was known ***generally***.  MBR

at 11.  Regardless, Petersen "████████████████████████████████████████

████████████████████████████████████."  Kiani ¶143; *see also* Diab ¶237;

T1-2 (Diab) at 103:7-105:4; MFF ¶¶115-23; JTX-3778 at FIGS. 4-5, 6:13-15; 7:7-31,

7:65-8:2.  Petersen teaches its software calibration "provide[s] adequate cancellation of

shunted light to allow for increased accuracy in measurements." JTX-3778 at 6:41-43.

Thus, Petersen suggests no need to ████████████.  *See* Kiani ¶143; T3-1 (Madisetti)

at 19:6-23, 74:19-79:7; T2-2 (Madisetti) at 80:6-13; T6-1 at 135:7-136:18.  Further,

Petersen is from Nellcor who ████████████████████████████████████████

████████████████████████.  Kiani ¶142; Diab ¶219.

    Apple falsely argues ████████████████████████████████████████

████████████████████████  ABR 10 (citing T2-2 at 80:6-13).  Speculating

about what designers "could" do does not show L4 was generally known.  Regardless,

Madisetti said no such thing.  He explained Petersen "████████████████████████

████████████████████████████."  T2-2 at 80:6-13.

### d.    <u>Masimo Kept L4 Secret</u>

    Apple also argues the Masimo patents discussed above show Masimo did not keep

L4 secret.  ABR at 14.  As discussed, Apple is wrong.  *Supra* §II.A.2.c.  Apple relies on

Warren to argue Masimo's patents make "████████████████████████████████████

████"  ABR at 14 (citing Warren ¶60).  But Warren merely speculated that "██

████████████████████████████████."  Warren ¶60.  He failed to show

Masimo's patents disclose L4, including "████████████████████████."

### e.    <u>Masimo Did Not Change The Scope Of L4</u>

    Apple argues that Kiani, Diab, and Madisetti tried to narrow L4 to avoid Apple's

"generally known" references by importing requirements from Masimo's specific test

procedure.  ABR at 12.  But Apple's references do not disclose ████████████████

████████████████.  *Supra* §II.A.2.c.  Thus, importing requirements from

Masimo's procedures was not necessary to distinguish Apple's references.

-5-

Regardless, Masimo did not change the scope of L4.  The Kiani and Diab testimony on which Apple relies explains how Masimo implemented L4.  T1-1 at 108:1-5, 109-110; T1-2 at 60.  Neither suggested L4 requires the specifics of how Masimo implemented L4.  Madisetti also never asserted L4 requires aspects not mentioned in L4, like using a "█████████" ████████████, as Apple represents.  ABR at 12 (citing T2-2 at 80:14-81:20).  Apple quotes its own questions asking whether L4 mentions such aspects.  *Id.*  And Madisetti never testified as Apple represents.  *See id.*  He responded to Apple's use of ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████, as recited in L4.  T2-2 at 75:24-76:13; T3-1 at 26:16-27:14.

Moreover, ████████████████████████████████████████████ █████████████████████████.  *Compare* JTX-1045 *with* JTX-1064 at -859; MFF ¶273. Masimo did not identify this evidence to change the scope of L4 as Apple suggests. Masimo did so as damning evidence of Apple's misappropriation.  *See Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669 (2003) (explaining that showing "access" to a trade secret and similar implementation as plaintiff is evidence that "the party did not independently derive or reverse engineer").

### 3. **Apple Misappropriated L4**

#### a. **Lamego Disclosed L4 To Apple**

Apple argues it "independently developed" ██████████████████████ ███████████████████████  ABR at 15.  Not so.  Before Lamego, ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

-6-

████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2  Apple next argues it is "no surprise" that Apple had a black foam test based on

3 counsel's "science project" demonstrative at trial.  ABR at 15-16.  That trial

4 demonstrative is not evidence of anything, much less Apple's independent development

5 before Lamego.  Indeed, no Apple engineer testified about the trial demonstrative.  And

6 Madisetti explained the numerous issues with the demonstrative.  MBR at 10.

7  Apple argues the "only question" when Lamego arrived was ████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████  Many Apple documents

10 show Lamego's involvement.  MBR at 12.  Apple largely ignores this evidence and

11 relies on Land's testimony.  ABR at 16-17 (citing Land ¶¶41-42; AFF ¶¶82-83).  But

12 Land could not identify who suggested the change and could not rule out Lamego doing

13 so.  MBR at 12.  And he admitted he is not aware of any document suggesting ████████

14 ████████████  before Lamego arrived.  T5-2 at 42:8-20.  To the contrary, *every* pre-

15 Lamego document shows Apple ████████████████████████████████

16 ████████████████████.  JTX-1061 at -718; JTX-4553 at -869; JTX-5003 at -651.

17  Apple also offered no explanation for ████████████████████████

18 ████████.  Apple implementing L4 just like Masimo is damning evidence that Apple

19 obtained L4 from Lamego.  *See Sargent Fletcher*, 110 Cal. App. 4th at 1669.

20  **b.   Apple Used The L4 ████████████████████████████**

21  Apple argues ████████████████████████████████████████

22 ████████  ████████████  ████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████

27  Apple argues ████████████████████████████████████████

28 ████████████████████████████████████████████████████████

-7-

████████████████████████████████████████

1

2

3

4

5      Apple argues

6

7                                                                          Apple's

8      continued use of the same test years after Lamego left demonstrates its value to Apple.

9   **B.    Trade Secret L5**

10      **1.    Masimo Possessed L5**

11      Masimo possessed L5 as written.  Apple does not genuinely dispute otherwise.

12  Rather, Apple argues L5 lacks particularity because it is too broad and, with such

13  breadth, Masimo could not have possessed it.  ABR at 19-20.  Apple is wrong.

14      ***First***, neither Masimo nor the Court limited L5 to

15          .  Rather, in the order Apple cites, the Court correctly held "(1) [L5] identifies a

16  problem unknown in the industry and (2) comprises the knowledge that

17                              will fix it; it does not claim every solution to this problem."

18  Dkt. 1901 at 8 (cited by ABR at 19).  Thus, the Court correctly recognized L5 "does not

19  claim every solution to this problem" because the solution is immaterial.  Masimo's brief

20  did the same, explaining "L5 does not recite every possible means of

21                  to address the identified problem;" instead, it "concerns recognizing a

22  problem and designing circuits to address the problem."  *Id.* at 6 (citing Dkt. 1812 at 7).

23      In that context Madisetti agreed that L5

24

25

26

27      Apple cites *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560 at *7 (N.D. Cal.

28  May 15, 2017).  ABR at 20.  But this Court distinguished *Waymo* from L5 because the

-8-

trade secret in *Waymo* covered "problems well known in the industry" whereas L5 is directed to "a problem unknown in the industry…." Dkt. 1901 at 8. This Court also rejected Apple's argument that trade secrets are limited to "how" an "idea or conceptualization" is used. Dkt. 1283 at 14. This is consistent with the California Court of Appeal's holding that a plaintiff may identify a trade secret that is not limited to a particular solution. *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, at 51-52, 65 (2014) (plaintiff showed defendant took "design concepts" without having to show it possessed every solution encompassed by those concepts).

**Second**, Apple argues Masimo cannot show possession of "every" solution because it had "just one solution." ABR at 20. As discussed, Masimo need not show possession of "every" solution. Regardless, Masimo possessed several solutions. For example, ███████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████
██ ███████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████

2.    <u>**L5 Has Value From Not Being Generally Known**</u>

Apple does not dispute L5's value. MBR at 14. Instead, Apple argues references disclose "███████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ██████████████████████████████████████████

6      Apple does not dispute any of these points.  Instead, Apple again relies on *Atmel*.

7 ABR at 22.  As discussed, Apple is legally incorrect.  *Supra* §II.A.2.a.  Moreover,

8 Masimo showed its engineers were "mind blown" by the L5 discovery and Ph.D.

9 engineers from both Apple and Broadcom were unaware of L5 before Lamego revealed

10 it.  Madisetti ¶¶162-63; JTX-541 at -581; MFF ¶¶146, 148.  That experienced engineers

11 at these companies were unaware of the problem also shows it was not generally known.

### 3.    Masimo Kept L5 Secret

13      Apple argues Masimo published only "concepts" of L5 in a patent (JTX-4233),

14 effectively conceding that Masimo did not publish L5 itself.  ABR at 22-23.  Indeed, the

15 Masimo patent on which Apple relies does not disclose the problem, any of Masimo's

16 solutions, or even an actual circuit.  MBR at 15.  Apple also relies on Smith's testimony

17 to argue Masimo did not keep secret ████████████████████████████████

18 █████████████ ABR at 23.  But that is not L5.  Smith's testimony says nothing about

19 the ███████████████████████████████████████████████

20 ███████████████████████████████████████████████

21 ███████.  Apple did not ask Smith if Masimo kept such knowledge secret.

### 4.    Apple Misappropriated L5

23      Apple does not dispute ██████████████████████████████████

24 ███████████████████████.  Apple also does not seriously dispute that Lamego

25 disclosed █████████████████████████████████████.  But Apple

26 argues it did not misappropriate L5 for three reasons.  ABR 23-25.  Each fails.

27      ***First***, Apple argues █████████████████████████████

28 ███████████████████████████████████████████████

████████████████████████████████

1 ██████████████████████████████████████████

2 █████████████████████████████████████████ 1.

3 ***Second***, Apple argues ████████████████████

4 ██████████████████████████████████████████

5 ██████████████████████████████████████████

6 ██████████████████████████████████████████

7 ██████████████████████████████████████████

8 ██████████████████████████████████████████

9 ██████████████████████████████████████████

10 ██████████████████████████████████████████

11 ██████████████████████████████████████████

12 ████████████████████████████████ Apple's

13 ██████ solution came from ██████████ JTX-541 at -581.

14 Apple also argues ████████████████████████

15 ██████████████████████████████████████████

16 ██████████████████████████████████████████

17 █████████████████████████████████████████

18 ***Third,*** Apple argues ██████████████████████

19 ██████████████████████████████████████████

20 ██████████████████████████████████████████

21 ██████████████████████████████████████████

22 ██████████████████████████████████

23 ████████████████████████████████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████

27 JTX-541 at -581.  Finally, Apple quibbles about whether ████████ implemented the

28 specific design (ABR at 25), which is irrelevant to Apple's disclosure.  Apple simply

████████████████████████████████████

1  has no explanation for this "smoking gun."

2  **C.    Trade Secret D1, D3, And D10**

3      **1.    Masimo Possessed D1, D3, And D10**

4      **D1:** Apple does not dispute that Masimo possessed the D1 ██████████████.

5  Apple challenges only that Masimo possessed █████████████████████

6  █████████████████████████████████████.  ABR at 26.

7      Masimo possessed both features ████████████████████████████

8  ███████████████████████████████████████████████████████████

9  ██████████████     ██████████████████████████████████████████

10 ███████████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████████

17 ██████████████████████████████████████████

18     Apple criticizes Masimo for relying on multiple Masimo documents.  ABR at 26.

19 The Court rejected Apple's single-document possession "requirement" as "unsupported

20 by legal authority."  *See* Dkt. 1283 at 13; MBR at 23-24.  Apple also faults Madisetti for

21 requiring more from Apple's references than Masimo's possession documents.  ABR at

22 26, 28.  Not so.  Madisetti relied on Poeze's testimony and corroborating Masimo

23 documents to show Masimo possessed D1, ████████████████████████████.

24 Madisetti ¶¶176-84.  On the other hand, Madisetti explained Apple's references did not

25 ███████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████.

27     **D3:** Apple argues ████████████████████████████████████████

28 ███████████████████████████████████████████████████████████

-12-
████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ██████████████████████████. Apple is wrong for the reasons discussed above.

4 **D10**: ████████████████████████████████████████

5 ███████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 ████████████████████████████

Apple also argues Madisetti inconsistently opined that possession can be shown by multiple Masimo documents while "generally known" cannot. ABR at 28. Not so. Multiple documents from Masimo show it possessed the information because Masimo's witnesses testified the documents describe the same system. Madisetti ¶¶208-09 (Poeze notebook entries), 230 (user manual), 231-48 (source code); Poeze ¶65. Apple provides no evidence or reasoning to combine various Masimo references to prove that the combined information is generally known *by others*. MBR at 25, 28-29. Regardless, Apple's references, even when combined, do not disclose the trade secrets.

## 2. D1, D3, And D10 Have Value From Not Being Generally Known

Apple does not dispute evidence showing the value of D1, D3, and D10 to Masimo. MFF ¶¶175-78, 191-93, 208-09 (Diab ¶¶153-57, 174-78, 238). Apple does not argue D10 was generally known, so this element is undisputed for D10.

For D1 and D3, Apple again argues *Atmel* requires a literature search. ABR at 28. Apple is incorrect. *Supra* §II.A.2.a. Regardless, Masimo was unaware of D1 and D3 before extensive R&D efforts and Ph.D. engineers at Apple were unaware of D1 and D3 before Lamego revealed them. MFF ¶¶178, 193; Madisetti ¶¶204, 218. This shows D1 and D3's economic value from not being generally known. Apple's other arguments on D1 and D3 fail for the reasons discussed below.

███████████████████████████████

**D1**: Apple argues Madisetti did not dispute that Weber 2018 discloses D1. ABR at 28. Madisetti explained that Weber 2018 is irrelevant because it published years after Apple's misappropriation. MFF ¶189; Madisetti ¶202. And Sarrafzadeh conceded that ███████████████████████████████████████████████. T5-1 at 14:7-23. Sarrafzadeh's concession left nothing for Madisetti to dispute.

Apple argues Weber 2005 shows D1 was generally known because ███████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████.

**D3**: Apple ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████ Madisetti also identified additional reasons. MFF ¶198.

Apple argues D3 is "disclosed by Poeze 2011 when considered in combination with Weber 2005 and Lamego 2011." ABR at 29. As discussed, speculating about what could be derived from patents does not show information is generally known. *Supra* §II.A.2.a. Regardless, Apple identifies no reason to combine the patents and its proposed combination is still missing aspects of D3. *See* FF ¶¶198-206.

### 3.    <u>Apple Misappropriated D1, D3, And D10</u>

Apple argues the Apple Watch does not incorporate D1, D3, or D10. ABR at 30. But Apple used, acquired, and disclosed D1, D3, and D10 in other ways.

-14-

*Apple's* ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████████   ██████████████████████

████████████████████████████████████   ABR at 30 (citing

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012)).  But

*SkinMedica* never limited the types of use that can constitute misappropriation.  *See id.*

As the California Court of Appeal explained, a trade secret may be misappropriated by

use in many ways, including "research" or "development."  *PMC, Inc. v. Kadisha*, 78

Cal. App. 4th 1368, 1383 (2000); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys.,

Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005) ("[I]nternal experimentation" not

"resulting in a market product can constitute use.").

**Lamego's Proposals Came From Masimo** – Apple argues Lamego developed his

demodulation proposals at Apple using well-known concepts.  ABR at 31.  But

Lamego's short time at Apple, and the similarity of his disclosures to his work at

Masimo, show that Lamego's proposals came from Masimo.  MFF ¶¶250-54, 319-37;

*see also Sargent Fletcher*, 110 Cal. App. 4th at 1669 (access and similarity creates a

"prima facie showing that the party did not independently derive or reverse engineer the

product").    And  Apple's  many  Ph.D.  engineers  were  unaware  of  Lamego's

demodulation proposals.  MFF ¶¶178, 193, 209; JTX-273 at -369.

████████████ – For D1, Apple argues ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

-15-

████████████████████████████████

**D.    Masimo Proved Any Required "Intent" Element**

Apple misappropriated Masimo's trade secrets under three alternative theories. MBR at 32-35.  Apple fails to rebut Masimo's showing on any theory.

**1.    Apple Knew Or Should Have Known It Was Using And Disclosing Masimo's Trade Secrets**

Apple argues Masimo did not present "a shred of evidence" that any Apple employee knew or should have known Lamego was using Masimo's trade secrets. ABR at 35.  Not so.  For example, Apple identified Masimo as the "standout" candidate that Apple would use as a "stepping stone" to develop health technology.  MBR at 3. Apple told Masimo it was the "platinum" in the space and wanted to work with Masimo. Kiani ¶¶169-75.  But, when Lamego offered to solve Apple's problems, Hotelling realized Apple could get what it needed by instead acquiring Masimo's "people."  MBR at 4.  Apple then stopped discussing any partnership the ***same day*** Hotelling interviewed Lamego.  *Id.*  After the interview, Apple hired Lamego for his "specialized" knowledge that Apple knew was "confidential to Masimo."  *Id*. at 4-5.  Apple then strategically placed Lamego in multiple teams and extracted information from him.  *Id.* at 4-5. Recognizing Lamego's loose lips posed a threat to ***Apple's*** information, Apple insulated him from its algorithms while continuing to use him to obtain Masimo's information. *Id.* at 6.  And Apple continues to use Masimo's trade secrets today as discussed above.

Rather than address this evidence, Apple relies on Lamego's testimony that he took care "to avoid intellectual property conflicts."  ABR at 35.  But Lamego admitted he did so for patents—not trade secrets.  T3-2 at 39:21-40:4.  Further, Lamego has already been found to have misappropriated Masimo's trade secrets in the past and he admitted it is "very difficult" to distinguish between his personal "know how" and what he learned from Masimo.  T3-2 at 33:20-35:13, 125:7-25.

Likewise, Apple relies on its own employees' testimony that they did not know Lamego was giving them trade secrets.  ABR at 35.  But they repeatedly admitted they had no idea what the trade secrets were.  For example, Land testified he had "no

knowledge" or "exposure" to "any confidential information," but then admitted he had no way to verify his denial. T5-2 at 41:24-42:5 ("No, I can't -- I have no way of knowing -- because I don't know the confidential information, I don't know."). Hotelling claimed he did not receive trade secrets, but then admitted "[o]ther than the opening arguments … I'm not aware of the trade secrets." T4-2 at 95:6-9. Other witnesses provided similar admissions. T3-2 at 150:12-151:1 (Russell-Clarke); T4-1 at 47:11-19 (Perica); T6-1 at 22:7-18 (Block). Further, Perica, Land, and Block all admitted they spent little time with Lamego. Land ¶22; T4-1 at 47:20-22, 48:12-16; T5-2 at 39:15-17, 77:23-24.

Such bare denials have little, if any, probative value. *See Gable-Leigh, Inc. v. N. Am. Miss*, 2001 WL 521695, at *16 (C.D. Cal. Apr. 13, 2001). In *Gable-Leigh*, the defendant submitted declarations stating the plaintiff never "told them that the customer lists were trade secrets and/or confidential." *Id.* The Court discounted such testimony because most declarants worked for defendant. *Id.* at *17. The Court explained:

> [m]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place. Against this often delicate construction of circumstantial evidence there frequently must be balanced defendants and defendants' witnesses who directly deny everything.

*Id.* (quoting *Q-Co Indus., Inc. v. Hoffman*, 625 F. Supp. 608, 617 (S.D.N.Y.1985)) (granting preliminary injunction). Another court in this district also discounted mere "denials from each" employee alleged to misuse trade secrets. *JBF Interlude 2009 Ltd., v. Quibi Holdings LLC*, 2020 WL 9311954, at *22 (C.D. Cal. Dec. 30, 2020); *see also UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007). As discussed, showing "access" to a trade secret and a similar product is "a prima facie showing that the party did not independently derive or reverse engineer the product." *Sargent Fletcher*, 110 Cal. App. 4th at 1669. Masimo presented far more direct evidence of Apple's intent, easily overcoming Apple's bare denials. MBR at §II.

Apple argues Hotelling and others had no reason to "doubt[]" Lamego's

-17-

representation that he would not use Masimo's intellectual property. ABR at 35. But Apple ignores Lamego's behavior. As evidenced at trial, Lamego is very talkative and wanted to show Apple he was the "real deal." T3-2 at 58:8-59:5. Further, contrary to Hotelling's self-serving testimony, the contemporaneous documents establish that Hotelling and another Apple VP recognized that Lamego could misuse even *Apple's* trade secrets, so they took steps to insulate Lamego from Apple's algorithms while continuing to use him as a "consultant" to obtain ideas. JTX-15 at -009; MFF ¶256.

Apple also argues Masimo relied on "a single, out-of-context remark" in an email about a sensor design being a "mess" to show Apple needed outside help. ABR at 36. Apple ignores other evidence. The whole point of Projects Rover and Everest was to obtain outside help. MBR at 3-5. Apple also mischaracterizes the "mess" email as discussing only an outdated "showerhead design." ABR at 36. The email referred to Apple's "sensor design**s**" as a "mess" on track to "fail" and "come off the product" unless someone helped "change course and lead the team out of confusion." JTX-337 at -427-28. Mansfield sent the email on September 13, 2013—just two weeks before Lamego emailed Cook. *Id.* at -427. Regardless of the specific design referenced in the email, the email shows the status of Apple's efforts when Apple decided to hire Lamego.

Finally, Apple's trial narrative that Apple's "intent" was to hire Lamego for his "general expertise" directly contradicts the contemporaneous documents. ABR at 36. Apple gave Lamego an "exceptional" offer because of his "*specialized* experience that we are deeply in need of on current and future n27 [watch project] sensors." JTX-265 at -567; MFF ¶¶243-44; *see also* JTX-628 at -439 ("acquisition-like need for *specialized* capability" Apple did not have). The contemporaneous evidence rebuts Apple's denials.

### 2. <u>Apple Is Also Liable For Lamego's Acts Under Respondeat Superior</u>

Apple argues Masimo improperly seeks reconsideration of the Court's orders that respondeat superior does not apply to trade secret misappropriation. ABR at 34 (citing Dkt. 1723 at 3; Dkt. 1901 at 19). Those orders followed the Court's decision at the charge conference not to instruct the jury on respondeat superior. Apple ignores that the

-18-

1   Court previously held respondeat superior ***does*** apply to trade secret claims.  Dkt. 361

2   at 9 (denying motion to dismiss and holding Masimo "stated a theory of

3   misappropriation based on respondeat superior").  That decision was correct and

4   supported by extensive authority.  *See* MBR at 33-34 (compiling cases).

5       Apple relies on the Court's prior citation to *Carr v. AutoNation Inc.*, 2018 WL

6   288018 (E.D. Cal. Jan. 3, 2018) (cited by ABR at 34).  But *Carr* did not address

7   respondeat superior or the extensive authority applying respondeat superior to trade

8   secret claims.  *See id.* at *2-3.  Instead, it rejected a plaintiff's attempt to impute all of

9   an agent's knowledge on a corporation.  *Id.* at *3 (rejecting allegations that a corporation

10  knew of a trade secret because its corporate investor employed someone who received

11  the trade secret years earlier).  A later case addressed *Carr* in the context of former

12  employees alleged to have used trade secrets at their new employer.  *See Bombardier*

13  *Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1187-88 (W.D. Wash. 2019).

14  There, the court agreed with *Carr* that the former employee's knowledge could not

15  simply be imputed upon the new employer.  *Id.* at 1187.  But the court held the new

16  employer ***could*** be liable under respondeat superior if the employee acted "within the

17  scope of employment" even though "the employer may forbid it."  *Id.* at 1188.

18      Here, Apple does not deny that Lamego was acting within the scope of his

19  employment when he misappropriated Masimo's trade secrets.  Apple argues only that

20  Lamego testified "he does not believe" he gave trade secrets to Apple.  ABR at 35.  Such

21  a bare denial is not credible, particularly in view of Lamego's behavior and testimony.

22  MBR at 34.  Apple is liable under the doctrine of respondeat superior.

23      ### 3.    <u>Apple Also Acquired The Trade Secrets Through Improper Means</u>

24      Apple argues that Masimo has not shown acquisition of a trade secret through

25  improper means.  ABR at 33.  Apple cites its prior brief's discussion of cases to argue

26  improper means requires "specific intent to injure or defraud."  *Id.* (citing Dkt. 1765 at

27  17).  But, as Masimo explained, Apple's cases concerned the standards for proving

28  various ***crimes***—not the elements of a civil CUTSA claim.  *See* Dkt. 1812 at 18.

On the merits, Apple again cites to bare denials and company policies. ABR at 33, 35-36. As discussed, such evidence is not helpful. The evidence at trial showed that Apple sought Masimo's trade secrets from Lamego and paid far outside guidelines for his "specialized" experience that Apple deeply needed. MFF ¶¶243-45. Apple did so even though it knew that Lamego owed confidentiality obligations to Masimo. JTX-512 at -253; JTX-2937; MFF ¶¶233, 238, 249. Thus, Apple acquired Masimo's trade secrets through improper means by inducing Lamego to breach his obligations to Masimo. *See* Cal. Civ. Code § 3426.1(b)(1); Cal. Civ. Code § 3426.1(b)(2)(A). Contrary to Apple's argument, Masimo never abandoned these theories. *See* Dkt. 2282 (COL) ¶¶8-9, 27-36.

## E.    Apple's Defenses Are Meritless

Apple uses brackets and ellipses to change the Court's articulation of the legal standard for statute of limitations. ABR at 37 (citing Dkt. 606 at 3). The Court explained "when there is reason to suspect that ***a trade secret has been misappropriated***, and a reasonable investigation would produce facts sufficient to confirm this suspicion (***and justify bringing suit***), the limitations period begins, even though the plaintiff has not conducted such an investigation." Dkt. 606 at 3. Thus, the statute of limitations applies only if (1) Masimo had reason to suspect Apple misappropriated a particular trade secret and (2) a reasonable investigation would have revealed facts sufficient to bring suit. The evidence supports Masimo on both points.

***First***, Kiani explained why Masimo had no reason to suspect Apple's misappropriation until late 2019. Kiani ¶¶206-12. Apple identifies no contrary evidence. Apple argues Masimo suspected misappropriation based on its January 2014 letter to Apple and Kiani's testimony that Masimo was "worried" Apple was trying to take trade secrets. ABR at 37, 39. But Masimo sent the letter ***before*** Lamego started at Apple. JTX-2937. And Apple never explains how the letter or Kiani's testimony shows Masimo had reason to suspect any particular trade secret had been misappropriated.

***Second***, Apple identifies no evidence that a reasonable investigation would have revealed facts sufficient to bring suit. Apple argues a reasonable investigation would

have showed Lamego "was working on physiological sensors." ABR at 37. But Apple then admits that fact would ***not*** "amount to trade secret misappropriation." *Id.* Apple thus admits that Apple working on physiological sensors (the only fact Apple asserts Masimo could have learned) would not have been sufficient to bring suit. That admission alone dooms Apple's statute-of-limitations defense.

Apple cites the Court's statement that Dalvi's representation "potentially should have triggered an investigation." ABR at 39. The issue is not whether Masimo should have investigated, but what an investigation would have revealed. Apple identifies no evidence that an investigation before 2017 would have revealed facts sufficient to bring suit. The California Supreme Court rightly rejected statute-of-limitations defenses in such circumstances because it is "contrary to public policy to require plaintiffs to file a lawsuit 'at a time when the evidence available to them failed to indicate a cause of action.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005).

Apple addresses laches and waiver only in a footnote. ABR at 38, n.19. Those defenses fail because Apple's statute-of-limitations defense fails (Dkt. 1900 at 4) and for additional reasons that Masimo explained (MBR at 40).

### F.  Masimo Proved It Is Entitled To An Injunction And Attorneys Fees

#### 1.  Masimo Is Not Barred From Receiving An Injunction

Apple argues Masimo had to explain in the complaint or during discovery the bases and precise "scope" of the injunction it would seek after trial. ABR at 39-40. Apple cites no authority for such a requirement. Indeed, Fed. R. Civ. P. 54(c) allows the Court to issue an injunction "even if the party has not demanded that relief in its pleadings." Here, the parties agreed, and the Court ordered, in both pre-trial conference orders that the Court would decide "[w]hether to enjoin Apple from further misappropriation." Dkt. 1483 at 15; Dkt. 2157-1 at 17; Dkt. 2280 at 12. Apple cannot now argue that Masimo has somehow waived its right to an injunction. Regardless, Apple is factually wrong for the reasons described in Masimo's opening. MBR at 48.

### 2.    <u>Masimo Satisfied the *eBay* Factors</u>

**Factor 1**: Apple argues Masimo's harm is speculative because Masimo described what "would" happen if Apple continues its misappropriation. ABR at 40-41. But Masimo presented significant evidence of the irreparable harm it already suffered and will suffer if Apple continues its misappropriation. MBR at 35-36, 45 (cataloging evidence). Apple ignores most of this evidence. Instead, Apple mischaracterizes Masimo's argument about chilling innovation as limited to "future misappropriation." ABR at 41. But Apple's theft already chilled collaboration at Masimo. MBR at 45. Without an injunction, Masimo engineers would continue to believe their collaborations cannot be protected. *Id*. Apple does not explain how money could cure such harm. Apple also argues Masimo never connected the trade secrets to Apple's Blood Oxygen feature. ABR at 41. But Apple again ignores Masimo's evidence. MBR at 35-36.

Moreover, "[a] finding of misappropriation is generally adequate for a finding of irreparable injury in trade secret cases." *Equate Media v. Suthar*, 2024 WL 1217217, at *3 (C.D. Cal. Mar. 20, 2014) (quoting *Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL 8168854, at *18 (C.D. Cal. Oct. 6, 2023); *Comet Techs. USA Inc. v. XP Power LLC*, 2022 WL 4625149, at *2 (N.D. Cal. Sept. 30, 2022)). *Citcon* did not hold otherwise. As Apple's parenthetical shows, *Citcon* held the plaintiff is not automatically entitled to injunctive relief. *Citcon USA, LLC v. RiverPay Inc.*, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022). It did not reject a presumption of ***irreparable harm*** in trade secret cases. *Id*. Apple's other cited cases (*San Miguel*, *Robert Bosch*, and *eBay*) were trademark or patent cases that said nothing about irreparable harm in trade secret cases.

**Factor 2**: Apple claims Masimo argued its "harm could be compensated via money" until recently. ABR at 41-42. Not so. Masimo always sought an injunction. Dkt. 1 at 61. None of Apple's cases support Apple's bright-line rule that a party cannot seek an injunction if it also sought monetary relief. In fact, one of Apple's cases refuted Apple's position by affirming damages ***and*** an injunction. *Robert L. Cloud & Assocs. v. Mikesell*, 69 Cal. App. 4th 1141, 1150 (1999). The other two cases (*Bennett* and *TD*

-22-

*Bank*) held merely that foregoing a monetary remedy by itself does not establish no adequate remedy at law. Masimo does not argue otherwise. Rather, Masimo presented extensive evidence showing it had had no adequate remedy at law. MBR at 45-46.

**Factors 3 and 4**: Apple sets up a strawman by assuming an injunction against the entire Apple Watch to fabricate an argument that such an injunction would cause hardship and disserve the public interest. ABR at 43. As Masimo explained, L4 and L5 are inextricably linked to Apple's **sensor designs**, so Apple should not be allowed to sell watches with those sensor designs. MBR at 47. Apple identifies no evidence of hardship to Apple or the public if Apple were not allowed to sell those sensor designs. Instead, Apple relies solely on conclusory attorney argument of supposed harm to Apple, "third-party businesses," "suppliers," "customers," and "retail sellers." ABR at 43. But Apple's witnesses repeatedly admitted Apple would suffer **no harm**. MBR at 46. Apple's brief similarly asserts the trade secrets "are essentially *de minimis* to Apple Watch's functioning." ABR at 42. As a result, Apple should be able to easily remove the trade secrets without causing hardship or disserving the public interest.

### 3.    Masimo is Entitled to Reasonable Attorneys' Fees

Apple argues it did not intend to misappropriate because it did "everything it could" to avoid obtaining Masimo's trade secrets. ABR at 44. Not so. Apple desperately sought to obtain Masimo technology. *Supra* §II.D1. After Lamego offered to solve Apple's problems, Hotelling devised a scheme to obtain Masimo's information by acquiring Masimo's "people." *Id.* Apple hired Lamego for his "specialized" knowledge, which it knew was confidential, and quickly sought Masimo's technology from him. *Id.* Recognizing he posed a threat to **Apple's** information, Apple insulated him from its algorithms while continuing to use him to obtain Masimo's information.

Apple largely ignores this evidence and argues Masimo should not obtain fees because it focused its trade secrets and declined to pursue unjust enrichment at trial. ABR at 44-45. Masimo focused the trade secrets to fit in the allotted trial time. And Masimo focused its case on injunctive relief because that is the primary remedy in a

trade secret case.  As Masimo explained, Masimo sought to prevent Apple from using Masimo's monetary request as a "diversion" from Apple's theft.  T1-1 at 30:17-22.

Apple also relies on *True Wearables*.  ABR at 44.  Unlike *True Wearables*, Apple obtained billions of dollars from using Masimo's trade secrets.  Apple is extraordinarily well-funded with effectively limitless resources.  *See Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 956 (C.D. Cal. 2011).  Apple's scheming is exactly the type of corporate malfeasance that supports awarding attorneys' fees.  *See Rogers v. B. Braun Med., Inc.*, Civ. No. 98-cv-250-B (RBB), Dkt. 390 at 12, Dkt. 415 (S.D. Cal. Sept. 13, 2004).[1]

## G.   Masimo Proved Its Patent Ownership Claims

Apple argues Lamego contributed to the disputed patents at Apple, and nothing suggests Diab contributed.  ABR at 46-49.  Apple is wrong for several reasons.

**'052 and '670 Patents:** Apple admits Lamego alone contributed the idea of applying reflectivity to the Apple Watch sensor.  *Id.* at 46-47.  Apple now attempts to trivialize Lamego's reflectivity contribution as "modest."  *Id.*  But Apple argued those very limitations were the only aspects that were not well known.  MFF ¶351.

Apple also argues Lamego's contribution was not related to Masimo because he did not work on a wrist-worn device at Masimo.  ABR at 47.  But the independent claims of these patents are not limited to a wrist-worn device.  T4-2 at 106:23-110:3; MFF ¶343.  They recite "electronic devices," capturing Lamego's work at Masimo.  *Id.*

**'095 and '390 Patents:** Apple argues the concepts underlying these patents were developed by Lamego and Hotelling at Apple because one figure of the patents (FIG. 4) looks "similar to" a figure Lamego created just weeks after joining Apple.  ABR at 48-49.  That figure does not suggest Lamego first conceived of the subject matter at Apple.  In fact, Lamego drawing it just weeks after joining Apple suggests it came from his prior work at Masimo.  Apple also does not dispute that the '095 Patent Claim 17 and '390 Patent Claim 1 recite analog-front-end circuitry nearly identical to what Diab taught

---

[1] The Court should ignore Apple's untimely request for attorneys' fees.  Apple waived its request by omitting it from the pretrial conference order.  Dkt. 2157-1 at 15-17.

Lamego years earlier at Masimo.  MFF ¶¶357-64.  Lamego's contribution repeats, and these patents claim, Lamego's earlier work at Masimo.  *Id.* ¶¶362-64.

**'754 Patent:**  Apple argues Lamego conceived of the concepts of the '754 Patent at Apple because certain subject matter is similar to a presentation and MATLAB script he wrote at Apple.  ABR at 47-48.  Again, that does not show Lamego first conceived of that subject matter at Apple.  Both the presentation (JTX-3657) and MATLAB script (JTX-880) repeat Lamego's work ███████████████████.  MFF ¶¶365-69.

## H.    Masimo Proved Its Patent Inventorship Claims

Masimo proved Diab should be a named inventor on the '052, '670, '095, and '390 Patents.  MBR at 43-44.  Apple's arguments fail to show otherwise.

**'052 and '670 Patents:**  Apple argues Diab did not contribute "anything" or his contributions were not "significant."  ABR at 47.  But Apple ignores that Diab conceived of, and taught Lamego about, using reflective surfaces on sensors.  MFF ¶¶353-55.  Diab's contribution is significant because Apple asserts the reflectivity limitations are the only aspects that were ***not*** well known.  MFF ¶351.  Apple also argues Diab did not communicate with the Apple engineers about these patents.  ABR at 47.  But this Court held coinventors need not work together.  Dkt. 1715 at 51; *see Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1298-99 (Fed. Cir. 2009).  Regardless, Diab and Lamego communicated at Masimo.  MFF ¶¶345, 10.

**'095 and '390 Patents:**  Apple argues nothing shows Lamego learned these concepts from Diab rather than his "education and experience outside" Masimo.  ABR at 49.  But Lamego had no knowledge or experience in noninvasive monitoring before working at Masimo.  Diab ¶¶139-42; T1-1 at 121:6-13; T1-2 at 11:16-17.  And Apple did not dispute Diab taught the '272 patent's subject matter to Lamego.  Diab ¶¶139-42; Madisetti ¶¶297-306; MFF ¶¶357, 362.  Instead, Apple argues the concepts Diab taught Lamego were well known.  ABR at 48-49.  But Apple argued the opposite to the Patent Office (JTX-1900.1) and cannot reasonably argue otherwise now.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 13, 2025          By: /s/ Adam B. Powell
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Sheila N. Swaroop
                                     Brian C. Horne
                                     Brian C. Claassen
                                     Mark D. Kachner
                                     Adam B. Powell
                                     Kendall M. Loebbaka
                                     Daniel P. Hughes
                                     Douglas B. Wentzel

                                     Attorneys for Masimo
                                     MASIMO CORPORATION and
                                     CERCACOR LABORATORIES, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 25 pages, which [choose one]:

_ complies with the word limit of L.R. 11-6.1.

X complies with the page limit set by court order dated 12/18/2024.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: _January 13, 2025_          By: _/s/ Adam B. Powell_
                                        Joseph R. Re
                                        Stephen C. Jensen
                                        Sheila N. Swaroop
                                        Brian C. Horne
                                        Brian C. Claassen
                                        Mark D. Kachner
                                        Adam B. Powell
                                        Kendall M. Loebbaka
                                        Daniel P. Hughes
                                        Douglas B. Wentzel

                                        Attorneys for Plaintiffs
                                        MASIMO CORPORATION and
                                        CERCACOR LABORATORIES, INC.