MARK D. SELWYN, SBN 244180
mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERTS REBBECCA REED-ARTHURS AND JIM BERGMAN**<br><br>Date and Time: Sept. 8, 2025, 1:30pm<br>Location: Courtroom 10C<br>Pre-Trial Conference: Oct. 20, 2025<br>Trial: Nov. 4, 2025 |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

BRIAN A. ROSENTHAL, *pro hac vice*
brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# TABLE OF CONTENTS


INTRODUCTION .......... 3

BACKGROUND .......... 4

A. The Asserted Patents .......... 4

B. The Accused Features .......... 4

C. Dr. Reed-Arthurs' Survey .......... 6

D. Mr. Bergman Relies On Dr. Reed-Arthurs' Survey And Opinions In Estimating Plaintiffs' Damages .......... 7

ARGUMENT .......... 8

I. DR. REED-ARTHURS' OPINIONS AND TESTIMONY SHOULD BE EXCLUDED .......... 9

A. Dr. Reed-Arthurs Fails To Account For The Unaccused 2017 Version Of The High Heart Rate Notification Feature .......... 9

B. Dr. Reed-Arthurs' Descriptions Of The Inventions Covered By The Asserted Claims Are Misleading And Overbroad .......... 11

II. MR. BERGMAN'S OPINIONS AND TESTIMONY THAT ARE BASED ON DR. REED-ARTHURS' OPINIONS SHOULD ALSO BE EXCLUDED .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AVM Techs., LLC v. Intel Corp.*, 2017 WL 1536390 (D. Del. Apr. 27, 2017) .......... 13

*Ecofactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc) .......... 3, 8

*Fractus, S.A. v. Samsung*, 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011) .......... 11

*Guardant Health, Inc. v. Foundation Medicine, Inc.* 2020 WL 2461551 (D. Del. May 7, 2020) .......... 13

*Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) .......... 8

*NetAirus Technologies, LLC v. Apple, Inc.*, 2013 WL 12322092 (C.D. Cal. Oct. 23, 2013) .......... 10

*Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489 (Fed. Cir. 2019) .......... 9

*ResQNet.com, Inc. v. Lansa*, 594 F.3d 860 (Fed. Cir. 2010) .......... 11

*San Francisco Baykeeper v. City of Sunnyvale*, 2022 WL 4133299 (N.D. Cal. Sept. 12, 2022) .......... 13

*Sprint Communications Co. L.P. v. Comcast IP Holdings, LLC*, 2015 WL 410342 (D. Del. Jan 29, 2015) .......... 14

*Unwired Planet, LLC v. Apple Inc.*, 2017 WL 589195 (N.D. Cal. Feb. 14, 2017) .......... 11

## INTRODUCTION

Plaintiffs' damages case turns in significant part on a single survey prepared by Plaintiffs' expert, Dr. Rebbecca Reed-Arthurs, which purports to value how much a consumer would be willing to spend on Apple Watch's allegedly infringing features. But that survey—and the expert opinions that depend on it—are methodologically flawed because they overstate the scope of the claimed invention. Accordingly, the survey and any related expert opinions and testimony should be excluded under *Daubert* and FRE 702.

***First***, the survey and related expert testimony and opinions described the High/Low Heart Rate Notifications features presented to survey respondents using language so broad that it captures an earlier version of the High Heart Rate Notification feature ***not*** accused of infringement. This critical flaw—in a survey that purports to isolate the value of Apple's supposed infringement of the two asserted patents—renders Dr. Reed-Arthurs' results inherently unreliable.

***Second***, the survey and related testimony and opinions do not accurately describe the accused features. Most notably, the survey fails entirely to account for the purported benefit of the asserted patents—i.e., power saving—by presenting users with a binary choice (having or not having the allegedly infringing features) regardless of the effect on battery life. In other words, it fails to evaluate whether users would pay less (or nothing) for the accused features as a trade-off of a somewhat shorter battery life and accordingly drastically exaggerates the value of the asserted patents.

Given these serious methodological issues, Apple respectfully submits that this Court should exercise its "essential" gatekeeping role to exclude the survey and the expert testimony and opinions based on it "to ensure [that Plaintiffs'] expert's conclusions do not 'go beyond what the expert's basis and methodology may reliably support.'" *Ecofactor, Inc. v. Google LLC*, 137 F.4th 1333, 1339 (Fed. Cir. 2025) (en banc).

## BACKGROUND

### A. The Asserted Patents

Following *inter partes* review, Plaintiffs' case has narrowed to just two related patents, U.S. Patent Nos. 8,457,703 and 10,433,776. Entitled "Low Power Pulse Oximeter," both patents claim the concept of monitoring "[v]arious parameters … to trigger or override a reduced power consumption state … [in order to permit] a pulse oximeter [to] lower power consumption without sacrificing performance during, for example, high noise conditions or oxygen desaturations." *E.g.*, '703 Patent abstract. During the *inter partes* review process, Plaintiffs (successfully) took the position that: (1) the '703 patent "controls power consumption by intermittently changing the number of input samples received and processed by the monitor's processor while continuously maintaining monitoring capability" and (2) the '776 Patent "controls power consumption by intermittently changing the duty cycle of current supplied to sensor LEDs." Ex. 1 ['703 IPR Patent Owner Resp.] at 1; Ex. 2 ['776 IPR Patent Owner Resp.] at 1.

### B. The Accused Features

Plaintiffs contend that Apple Watch infringes the asserted patents in two ways: (1) by measuring and displaying periodic heart rate data in Apple Watch's Workout Mode app (all Watch models) and (2) via the High/Low Heart Rate Notifications features first released in Apple Watch Series 4 that alert users who have the feature enabled if their heart rate while stationary for at least 10 minutes is above or below a pre-set threshold. *E.g.*, Ex. 3 [Madisetti Opening] ¶ 137.

#### 1. Workout Mode

The Workout Mode app on Apple Watch gives users tools to manage individual workout sessions, such as by providing estimates of calories burned and distances traveled while biking, running, hiking, and other types of exercise. *E.g.*, Ex. 4 [Mercier Rebuttal] ¶ 173. During workout sessions, Apple Watch also attempts to provide users with periodic data about their heart rate. Ex. 5 [Apple Watch User Guide].

Plaintiffs accuse all Apple Watch versions and all Apple Watch operating systems (called "watchOS") of infringing the asserted patents based on this heart rate aspect of the Workout app. Specifically, Plaintiffs assert that the manner in which [redacted] *See, e.g.*, Ex. 3 ¶ 138.

**2. High/Low Heart Rate Notifications**

In 2017, Apple first released its High Heart Rate Notification feature with the launch of Apple Watch Series 3 and watchOS 4. Once enabled, that feature alerted users if their heart rate was above a certain threshold if, among other things, the user had been stationary for at least 10 minutes. Ex. 6 [Apple's Resp. to Interrog. No. 33] at 56; Ex. 4 ¶¶ 225, 758. This original version of the High Heart Rate Notification feature [redacted] Ex. 4 ¶ 236; Ex. 7 [Shapiro Dep.] at 101:17-102:13, 119:13-120:8; Ex. 3 ¶ 230. Plaintiffs have not accused the 2017 High Heart Rate Notification feature of infringing either patent at issue. *See* Ex. 8 [Bergman Opening] ¶ 98 n.197 (feature did not "beg[i]n to infringe" until Apple Watch Series 4); *see also* Ex. 9 [Reed-Arthurs Opening] ¶ 12 (similar); Ex. 10 [Madisetti Opening, Appx. 3B] at 3 (confirming Series 1-3 not alleged to infringe unless/until updated to watchOS5).

In 2018, Apple introduced a modified version of the High Heart Rate Notification feature in conjunction with the release of Apple Watch Series 4 and watchOS 5. The 2018 version [redacted] *See* Ex. 7 at 93:2-103:18. At the same time, Apple also introduced a Low Heart Rate Notification feature that alerts users if their heart rate drops below a set threshold [redacted]

[redacted] Ex. 6 at 56; Ex. 4 ¶ 236. As with the new High Heart Rate Notification feature, the Low Heart Rate Notification feature uses [redacted] Ex. 4 ¶¶ 247-252. Plaintiffs assert that this [redacted] infringes the asserted patents. Ex. 3 ¶ 152.

### C. Dr. Reed-Arthurs' Survey

Plaintiffs retained Dr. Rebbecca Reed-Arthurs to put a dollar value on the two accused features. Ex. 9 ¶¶ 7, 10. Dr. Reed-Arthurs attempted to do so by designing and conducting a "choice-based conjoint survey" that purports to measure consumer willingness to pay for "certain features … enabled by" the asserted patents. *Id.* ¶ 7. To develop her survey, Dr. Reed-Arthurs states that she worked with Plaintiffs' technical expert Dr. Vijay Madisetti in an attempt "to accurately describe the benefits enabled by the Asserted Patents relative to Apple's ***next-best alternatives*** without those benefits." *Id.* ¶ 40.[1]

Dr. Reed-Arthurs' survey describes the accused Workout Mode heart rate measurements as "Dynamic Heart Rate Tracking." Ex. 9 ¶ 41. Specifically, it distinguishes between two types of "Exercise Heart Rate" tracking:

> **Fixed:** Your smartwatch tracks heart rate during exercise using a single measurement technique. This approach works when the signal quality is good (e.g., when movement or physiology does not interfere with measurements).
>
> **Dynamic:** Your smartwatch assesses the signal quality during exercise and automatically adjusts the measurement technique when signal quality is bad to improve accuracy.

*Id.* (bolding and underlining in original). Dr. Reed-Arthurs' survey then asks consumers to choose between smartwatches with a "Fixed" or "Dynamic" feature (among other features). *See generally* Ex. 9 at 118-146.

---

[1] Emphasis added unless otherwise noted.

Dr. Reed-Arthurs' survey similarly distinguishes the accused High/Low Heart Rate Notifications feature from a "Background Tracking" feature:

> **<u>Background Tracking</u>**: Your watch tracks your resting heart rate which is the average heart beats per minute when you are not exercising.
>
> **<u>High/Low Notification</u>**: Your watch can warn you if the watch confirms that your heart rate is above or below expected boundaries when not exercising.

Ex. 9 ¶ 41. Survey respondents were not given the option to choose a heart rate notification feature consistent with Apple's original (and unaccused) version of the High Heart Rate Notification feature. *See generally* Ex. 9 at 118-146. Rather, Dr. Reed-Arthurs assumes that the only alternative to a watch without the accused high/low notification feature she described is no heart rate notification feature at all. *See, e.g.*, Ex. 9 ¶ 11; Ex. 11 [Reed-Arthurs Dep.] at 172:3-173:2, 223:4-19, 232:8-17.

Based on survey responses, Dr. Reed-Arthurs asserts that an average consumer would be willing to pay $17.38 for the Workout Mode feature, i.e., "Dynamic" Exercise Heart-Rate tracking (as compared to so-called "Fixed" Exercise Heart-Rate tracking) and $16.12 for the High/Low Heart Rate Notifications feature (as compared to no notification feature at all). Ex. 9 ¶ 114. She further asserts that the Workout Mode feature increases Apple's profits per device between $12.90 and $14.90, and that the High/Low Heart Rate Notifications feature increases Apple's profits per device between $16.07 and $18.99. *Id.* at p. 226.

### D. Mr. Bergman Relies On Dr. Reed-Arthurs' Survey And Opinions In Estimating Plaintiffs' Damages

Plaintiffs' damages expert James Bergman estimated damages for each of the two accused functionalities using two separate methodologies: (1) an "incremental profit" approach based on Dr. Reed-Arthurs' survey analysis and (2) a "cost savings" approach based on inputs from Plaintiffs' technical expert Dr. Madisetti. Mr. Bergman ultimately concludes that, "for the Heart Rate Notifications feature," the parties "would agree to the incremental profit per unit royalty numbers" based on Dr. Reed-Arthurs' survey, but

for "Workout Mode … the parties would agree [to] the costs savings per unit royalty rate." Ex. 8 ¶¶ 553-554; *see also id*. ¶¶ 231-239; Ex. 12 [Bergman Dep.] at 150:20-151:8.

Mr. Bergman's estimate of the per unit reasonable royalty he believes the parties would have agreed to in connection with the accused High/Low Heart Rate Notifications starts with Dr. Reed-Arthurs' per unit profit numbers for that feature [redacted] Ex. 8 ¶¶ 234-235, 545, 550-551. Mr. Bergman ultimately opines that the parties would have agreed to a per-unit royalty of between $14.72 and $17.39 for High/Low Heart Rate Notifications. *Id.* ¶¶ 13, 552.

Mr. Bergman likewise relies on Dr. Reed-Arthurs' survey as a starting place to calculate the (supposed) incremental profit Apple receives from the Workout Mode feature, which he concludes is $12.06-$13.92 per unit. Ex. 8 ¶¶ 231-239. However, as noted above, Mr. Bergman ultimately concludes his survey-based opinion is not what the parties would have agreed to at the hypothetical negotiation. *Id.* ¶¶ 553-555.

In total, Mr. Bergman asserts that Plaintiffs are entitled to a reasonable royalty between $2.46 and $2.79 billion. Ex. 8 ¶ 13.

## ARGUMENT

"[T]he proponent of expert testimony bears the burden of establishing its admissibility." *Ecofactor*, 137 F.4th at 1339. Although some courts have suggested that "the critical questions of the sufficiency of the expert's basis, and the application of the expert's methodology" go to weight rather than admissibility, such rulings "are an incorrect application of" FRE 702. *Id.* Rather, a court has the threshold obligation to "ensure an expert's conclusions do not go beyond what the expert's basis and methodology may reliably support." *Id.*; *see also, e.g.*, *Hardeman v. Monsanto Co.*, 997

F.3d 941, 962 (9th Cir. 2021) ("[E]xpert evidence is inadmissible where the analysis is the result of a faulty methodology or theory.").

# I. DR. REED-ARTHURS' OPINIONS AND TESTIMONY SHOULD BE EXCLUDED

Dr. Reed-Arthurs' survey—and her related opinions—should be excluded because they do not reliably measure the value of the claimed invention for two reasons. First, the survey erroneously attempts to value the ***existence*** of High/Low Heart Rate Notifications—completely ignoring that Apple offered an ***unaccused*** heart rate notification feature—and rather than limiting the tested attribute to only the benefit purportedly enabled by the asserted patents. Second, the survey's descriptions of the High/Low Heart Rate Notifications and Workout Mode features are both misleading and significantly overbroad, meaning that they likely caused survey respondents to overvalue the asserted patents.

## A. Dr. Reed-Arthurs Fails To Account For The Unaccused 2017 Version Of The High Heart Rate Notification Feature

Dr. Reed-Arthurs' survey presented respondents with a binary choice as it related to heart rate notifications—either a smartwatch with high/low heart rate notifications or one with no notifications at all. *See supra* pp. 6-7. But this framing wrongly equates the benefit of the alleged invention with the mere ***presence*** of the High/Low Heart Rate Notifications. As the Federal Circuit has recognized, a "survey and related expert testimony" that is "not adequately tied to the asserted claims" is properly excluded under FRE 702 and *Daubert*. *See Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489, 492 (Fed. Cir. 2019) (affirming exclusion of survey and testimony that *inter alia* "did not distinguish between infringing and non-infringing uses").

Here, as Dr. Reed-Arthurs acknowledges, Apple offered an earlier version of the High Heart Rate Notification feature in the Series 3 Watch. Ex. 9 ¶ 21 ("In 2017, Apple described its third-generation Apple Watch … [as] featur[ing] an updated Heart Rate App[.] Customers can … choose to receive a notification when their heart rate is elevated above a specific threshold when inactive."). Plaintiffs do not accuse the 2017

High Heart Rate Notification feature of infringement, *see supra* p. 5, and there can be no dispute that the original, ***unaccused*** version would meet the description that Dr. Reed-Arthurs used to describe the feature that she surveyed—i.e., having a watch that "can warn you if the watch confirms your heartrate is above … expected boundaries when not exercising." *See supra* p. 7; *see also, e.g.*, Ex. 13 [redacted] (explaining that [redacted]); Ex. 3 ¶ 230 (quoting testimony explaining [redacted]).

At her deposition, Dr. Reed-Arthurs testified that she omitted the 2017 version of the feature in her survey because she understood from Dr. Madisetti that it was purportedly not "commercially viable." Ex. 11 at 222:6-15; *see also id.* at 173:3-174:2 (not "commercially acceptable"); Ex. 14 [Reed-Arthurs Reply] ¶ 60 (asserting Apple found 2017 version "unacceptable"). But Dr. Reed-Arthurs' reliance on Dr. Madisetti was misplaced, as he subsequently admitted at his deposition that he was not "offer[ing] any opinions in this case about what features make a watch commercially viable or not." Ex. 15 [Madisetti Dep.] at 237:6-10. Nor can Dr. Reed-Arthurs square her "commercially viable" position with the undisputed fact that (as she acknowledged at her deposition) Apple sold [redacted] Series 3 Watches with the 2017 version of the feature available. *See* Ex. 11 at 221:13-18. Put slightly differently, there is no question that the 2017 version of the feature was commercially viable since it was already sold commercially. *See* Ex. 4 ¶ 758.

Because the survey measured consumer willingness to pay for ***any*** feature that tracks a user's abnormal heart rate—using a description so generic it includes the original version of high heart rate ***not*** accused of infringement—Dr. Reed-Arthurs' survey results and related opinions necessarily swept more broadly than the claimed invention and should be excluded. *See NetAirus Techs., LLC v. Apple Inc.*, 2013 WL 12322092, at *5 (C.D. Cal. Oct. 23, 2013) (explaining that a survey that "seek[s] to value

features that go beyond those circumscribed by the asserted claims" goes to admissibility rather than weight); *see also Unwired Planet, LLC v. Apple Inc.*, 2017 WL 589195, at *1 (N.D. Cal. Feb. 14, 2017) (excluding expert testimony as unreliable where "survey question—and survey responses—targeted … an invention other than the one at issue"); *Fractus, S.A. v. Samsung*, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (holding that a survey not sufficiently "tied to the alleged advantageous technical characteristics of the patents-in-suit … confuses the issues and must be excluded"). This is because "[a]llowing the jury to hear such evidence not tied to the claimed invention risks 'compensation for infringement [that] punishes beyond the reach of the statute.'" *Fractus*, 2011 WL 7563820 at *1 (quoting *ResQNet.com, Inc. v. Lansa*, 594 F.3d 860, 869 (Fed. Cir. 2010)).

**B. Dr. Reed-Arthurs' Descriptions Of The Inventions Covered By The Asserted Claims Are Misleading And Overbroad**

Dr. Reed-Arthurs' survey is also methodologically flawed because it failed to accurately describe the scope of the claimed inventions.

***First***, the survey presents respondents with two fictitious options for each purportedly infringing feature—"High/Low Notification" vs. "Background Tracking" in one instance and "Dynamic Heart Rate Tracking" as opposed to "Fixed" tracking in another. *See* Ex. 16 [Gal Rebuttal] ¶¶ 141-142.

As to the first set of options, the survey's wording suggests that "High/Low Notifications" is "an additional feature on top of background tracking." Ex. 16 ¶ 141; *see also* Ex. 17 [Gal Dep.] at 181:2-17, 184:6-185:9 (similar). This approach improperly led survey-takers to "gravitate towards choosing options offering High/Low notifications not because of any preference for High/Low notifications" but because such options "appear to be more feature rich" and "more features are generally considered better than fewer." Ex. 16 ¶ 141. The references to "Fixed" or "Dynamic" when discussing Workout Mode adjacent features is similarly self-serving. Apple Watch's heart rate feature is not "'Fixed' or 'Dynamic'—there is just one version." *Id.*

¶ 142; *see also* Ex. 17 at 181:2-17, 184:6-185:9 (similar). And by using a more desirable action word for the feature purportedly claimed by the asserted patents ("Dynamic"), the survey makes the "Fixed" option seem "inferior" by comparison. Ex. 16 ¶ 142; *see also id.* ¶ 145. Dr. Reed-Arthurs has no real answer to the methodological failings beyond stating (without elaboration) that she "confirmed the technical accuracy and appropriateness of the final descriptions" with another expert (Dr. Madisetti). Ex. 14 ¶¶ 66, 69; *accord id.* ¶ 67 (asserting it is "necessary and appropriate to present these features as binary options ***since it is consistent with what the patents enable***").[2]

***Second***, the survey's suggestion that Apple cannot provide what the survey describes as the "High/Low Notifications" and "Dynamic" features without infringing the patents is false. Ex. 16 ¶¶ 143-144. Neither asserted patent claims the concept of more accurate heart rate monitoring. They merely claim the concept of ***conserving power*** (i.e., by transitioning between different power modes or duty cycles) while monitoring information like a heart rate. *Id.* In other words, there can be no dispute that Apple ***could*** offer (in the survey's words) "High/Low Notifications" and "Dynamic" features—it would simply come at a cost to Apple Watch's battery life. *Id.*; *see also* Ex. 17 at 94:9-16 (similar). Nothing in Dr. Reed-Arthurs' survey alerts respondents about this tradeoff "between improved accuracy and improved battery life," much less provides the opportunity for the survey-takers to value it. Ex. 16 ¶¶ 143-144. Again, Dr. Reed-Arthurs has no real response to this point, other than to note that it has been a "goal" of Apple's to offer a consistent (and high) battery life for its Apple Watches. Ex. 14 ¶ 71. But Dr. Reed-Arthurs identifies nothing in the record suggesting Apple would pursue that "goal" at all costs, including by abandoning existing features. Nor does Dr. Reed-Arthurs explain why she did not at least offer that option (decreased battery life vs. increased accuracy) to survey respondents.

---

[2] Dr. Reed-Arthurs also points to a page from Apple's website that mentions "High and low heart rate notifications" to support her assertion that it is a distinct feature. Ex. 14 ¶ 68. But nothing on that page describes the High/Low Heart Rate Notifications feature as distinct from a "Background Tracking" feature.

## II. MR. BERGMAN'S OPINIONS AND TESTIMONY THAT ARE BASED ON DR. REED-ARTHURS' OPINIONS SHOULD ALSO BE EXCLUDED

Mr. Bergman's opinion and testimony regarding damages for Apple's purported infringement via the High/Low Heart Rate Notifications should be excluded because they depend on Dr. Reed-Arthurs' unreliable methodology. There is no dispute that Mr. Bergman relies on Dr. Reed-Arthurs' survey as a starting place for his estimate of Apple's profits from the purportedly infringing features. *See, e.g.*, Ex. 12 at 187:15-20 ([redacted]); *supra* pp. 7-8. And Mr. Bergman's subsequent, relatively minor adjustments to Dr. Reed-Arthurs' dollar figures do nothing to account for the survey's methodological failings. Indeed, Mr. Bergman does not attempt to apportion to account for ***non-infringing*** elements of the High/Low Heart Rate Notifications valued by Dr. Reed-Arthurs, such as by reducing Dr. Reed-Arthurs' estimates to account for [redacted] Ex. 12 at 41:15-42:16. Mr. Bergman only (purportedly) accounted for [redacted] Ex. 8 ¶¶ 234-235, 550-551.

Where, as here, "an expert bases her opinion on … the unreliable opinion of another expert, the district court may properly exclude the first expert's testimony." *San Francisco Baykeeper v. City of Sunnyvale*, 627 F. Supp. 3d 1085, 1100 (N.D. Cal. 2022) (quotation marks and citation omitted). Accordingly, if this Court excludes Dr. Reed-Arthurs' testimony and opinions on the High/Low Heart Rate Notifications, it should exclude Mr. Bergman's testimony and opinions as well. *See, e.g.*, *Guardant Health, Inc. v. Foundation Med., Inc.* 2020 WL 2461551, at *18-19 (D. Del. May 7, 2020) (granting motion to exclude where the "exclusive basis" for an aspect of an expert's damages calculation was another expert's unreliable report); *AVM Techs., LLC v. Intel Corp.*,

2017 WL 1536390, at *6 (D. Del. Apr. 27, 2017) (granting motion to exclude where expert's damages calculations were "founded on [another expert's] unreliable conclusions"); *Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, 2015 WL 410342, at *3 (D. Del. Jan 29, 2015) (granting motion to exclude plaintiff's damages experts where one expert "relie[d] almost exclusively" on another expert's unreliable report). And because Mr. Bergman concluded his alternative "cost savings"-based calculation is ***not*** what the parties would have agreed to base a reasonable royalty on for the High/Low Heart Rate Notifications, he should not be permitted to offer that as an alternative. Ex. 8 ¶ 554; *see also id.* ¶ 244 (acknowledging "cost savings" approach for High/Low Heart Rate Notifications relies on "an alternative Apple would not accept").

Moreover, while Mr. Bergman does not rely on Dr. Reed-Arthurs' survey results for his ultimate opinion as to the proper measure of damages for the Workout Mode, to the extent her survey is found unreliable, he too should be precluded from introducing any evidence or opinion based on that survey, including his estimate of the alleged per unit "incremental profit" calculations for that feature.

## CONCLUSION

For the foregoing reasons, Apple respectfully submits that Dr. Reed-Arthurs' testimony and opinions regarding the High/Low Heart Rate Notifications and Workout Mode features—and Mr. Bergman's testimony and opinions, to the extent they are dependent on Dr. Reed-Arthurs'—should be excluded under *Daubert* and FRE 702.

Dated: July 28, 2025

Respectfully submitted,

By: */s/ Mark D. Selwyn*
Mark D. Selwyn

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple, Inc., certifies that this brief contains 3,905 words, which:

X complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated: July 28 , 2025

Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: */s/ Mark D. Selwyn*
Mark D. Selwyn