1   MARK D. SELWYN, SBN 244180
       mark.selwyn@wilmerhale.com
2   THOMAS G. SPRANKLING, SBN 294831
    thomas.sprankling@wilmerhale.com
3   WILMER CUTLER PICKERING
       HALE AND DORR LLP
4   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
5   Tel.: 650.858.6000 / Fax: 650.858.6100

6   JOSHUA H. LERNER, SBN 220755
       joshua.lerner@wilmerhale.com
7   WILMER CUTLER PICKERING
       HALE AND DORR LLP
8   50 California Street, Suite 3600
    San Francisco, CA 94111
9   Tel.: 628.235.1000 / Fax: 628.235.1001

10  AMY K. WIGMORE, *pro hac vice*
    amy.wigmore@wilmerhale.com
11  WILMER CUTLER PICKERING
       HALE AND DORR LLP
12  2100 Pennsylvania Ave NW
    Washington, DC 20037
13  Tel.: 202.663.6000 / Fax: 202.663.6363

14  [Counsel appearance continues on next page]

15  *Attorneys for Defendant Apple Inc.*

16                    **UNITED STATES DISTRICT COURT**
17         **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

18  MASIMO CORPORATION,              CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
19  CERCACOR LABORATORIES, INC.,     **APPLE'S MEMORANDUM IN**
    a Delaware corporation,          **SUPPORT OF ITS MOTION FOR**
20                                   **SUMMARY JUDGMENT ON**
                    Plaintiffs,      **PLAINTIFFS' PATENT**
21                                   **INFRINGEMENT CLAIMS**
         v.
22                                   Date and Time: Sept. 8, 2025, 1:30pm
    APPLE INC.,                      Location: Courtroom 10C
23  a California corporation,        Pre-Trial Conference: Oct. 20, 2025
                                     Trial: Nov. 4, 2025
24                  Defendant.

25

26              REDACTED VERSION OF DOCUMENT
27             PROPOSED TO BE FILED UNDER SEAL

28

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

UNDISPUTED FACTUAL BACKGROUND .................................................2

    A.    The Scope Of Plaintiffs' Asserted Claims ..................................2

    B.    The Accused Apple Watch Features ...........................................3

    C.    Plaintiffs' Allegedly Practicing Products....................................4

    D.    Apple's Alleged Intent ...............................................................4

ARGUMENT ......................................................................................................4

I.    THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT ..... 4

    A.    There is No Infringement Because the Accused Features Use Non-Light Detector Inputs to Determine Whether to Change Duty Cycles................4

    B.    The Accused Features Do Not Infringe The Asserted Method Claims Because No Evidence Establishes The Claims Were Performed On "A Patient" In The United States ....................................................................9

    C.    Plaintiffs' Conditional Doctrine of Equivalents Theories Should Be Rejected As Inapplicable—Or, At Minimum, Unduly Conclusory.........11

    D.    Plaintiffs Cannot Establish Contributory Infringement Because (Even Under Plaintiffs' Meritless Infringement Theory) Apple Watch Has Myriad Non-Infringing Uses ...........................................................12

II.    THIS COURT SHOULD GRANT SUMMARY JUDGMENT ON NUMEROUS ISSUES BECAUSE THERE IS NO EVIDENCE OF INTENTIONAL INFRINGEMENT OR COPYING .................................................................................................... 13

    A.    There Is No Evidence Establishing Willfulness ..................... 13

    B.    There Is No Evidence Establishing Apple Had The Intent Required For Induced Infringement .................................................................. 15

    C.    Plaintiffs Have Not Satisfied Their Burden Of Production To Identify Evidence Supporting The Copying Indicia of Non-Obviousness........... 15

III.    AT MINIMUM, THIS COURT SHOULD NARROW PLAINTIFFS' DAMAGES CASE ..... 17

    A.    Plaintiffs Are Not Entitled To Pre-Suit Damages Because They Failed To Adequately Mark Patent-Practicing Products ......................................... 17

    B.    Plaintiffs' Damages For The Asserted Method Claims Should—At Most—Be Limited To 44 Instances Of Allegedly Infringing Use .......... 19

CONCLUSION...............................................................................................21

1

# <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

## CASES

4

*Akeso Health Sciences, LLC v. Designs for Health*,
5
    2017 WL 5125751 (C.D. Cal. Feb. 27, 2017)................................................13

6

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
7
    876 F.3d 1350 (Fed. Cir. 2017)....................................................................17

8

*Bayer Healthcare, LLC v. Baxalta Inc.*,
9
    989 F.3d 964 (Fed. Cir. 2021) ...............................................................13, 15

10

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
    576 F.3d 1348 (Fed. Cir. 2009)....................................................................19

11

*Commil USA LLC v. Cisco Systems, Inc.*,
12
    575 U.S. 632 (2015) .....................................................................................15

13

*Crown Packaging Technology Inc. v. Rexam Beverage Can Co.*,
14
    559 F.3d 1308 (Fed. Cir. 2009)....................................................................17

15

*Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*,
16
    130 F. Supp. 2d 1152 (C.D. Cal. 2001)..................................................17, 19

17

*DivX, LLC v. Hulu, LLC*,
18
    2021 WL 4459368 (C.D. Cal. June 11, 2021)..............................................17

19

*Fox Factory, Inc. v. SRAM, LLC*,
20
    944 F.3d 1366 (Fed. Cir. 2019) ...................................................................16

21

*Global-Tech Appliances v. SEB S.A.*,
    563 U.S. 754 (2011) .....................................................................................15

22

*Hambleton Brothers Lumber Co. v. Balkin Enterprises*,
23
    397 F.3d 1217 (9th Cir. 2005).......................................................................10

24

*In re Body Science LLC Patent Litigation*,
25
    167 F. Supp. 3d 152 (D. Mass. 2016)............................................................10

26

*K&K Jump Start/Chargers, Inc. v. Schumacher Electric Corp.*,
27
    52 F. App'x 135 (Fed. Cir. 2002) .................................................................18

28

*Koniklikjike Philips N.V. v. Zoll Medical Corp.*,
    656 F. App'x 504 (Fed. Cir. 2016) ................................................................ 12

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................ 13

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996) ................................................................ 18

*MR Technologies GMBH v. W. Digital Technologies, Inc*.,
    2024 WL 5495289 (C.D. Cal. Dec. 5, 2024) ................................................................ 13

*NexStep, Inc. v. Comcast Cable Communications*,
    119 F.4th 1355 (Fed. Cir. 2024) ................................................................ 12

*Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*,
    30 F.4th 1339 (Fed. Cir. 2022) ................................................................ 19

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ................................................................ 19, 20

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ................................................................ 20

*RJ Tech., LLC v. Apple, Inc.*,
    2023 WL 3432237 (C.D. Cal. Mar. 23, 2023) ................................................................ 14

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    30 F.4th 1109 (Fed. Cir. 2022) ................................................................ 15

*Separation Design Group IP Holdings, LLC v. Inogen, Inc.*,
    2016 WL 7486596 (C.D. Cal. Oct. 21, 2016) ................................................................ 10

*Tonal Systems v. ICON Health & Fitness, Inc.*,
    2021 WL 1785072 (D. Del. May 5, 2021) ................................................................ 13

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
    34 F. Supp. 3d 1061 (C.D. Cal. 2014) ................................................................ 18

*Volvo Penta of the Americas, LLC v. Brunswick Corp*.,
    81 F.4th 1202 (Fed. Cir. 2023) ................................................................ 16

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) ................................................................ 16

Wilmer Cutler
Pickering Hale
and Dorr LLP

1
2

*ZUP, LLC v. Nash Manufacturing, Inc.*,
    896 F.3d 1365 (Fed. Cir. 2018) .......................................................15

3

## STATUTES, RULES, AND REGULATIONS

4

35 U.S.C. § 287(a) ...........................................................................17, 18

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Apple respectfully submits that this Court should grant summary judgment on three sets of issues—non-infringement, Apple's intent, and Plaintiffs' damages case—that, taken together, would dispose of or significantly narrow Plaintiffs' patent infringement claims.

***First***, this Court should grant summary judgment of non-infringement on all asserted claims from the two asserted patents (U.S. Patent Nos. 8,457,703 and 10,433,776) because under this Court's construction of "processing characteristics," the accused Workout Mode and High/Low Heart Rate Notification features must change LED duty cycles based ***solely*** on the signal received from the light detector(s).  It is, however, undisputed that the accused features determine when to switch LED duty cycles by considering one or more inputs ***not*** derived from a light detector, such as ███████████████.  Therefore, Apple is entitled to summary judgment of non-infringement on all asserted claims for this reason alone.

Separately, Apple should be granted summary judgment of non-infringement with respect to the asserted method claims because Plaintiffs have not shown the accused features were ever used to monitor a "patient" as those claims require.  Summary judgment should also be granted on Plaintiffs' doctrine of equivalents claims that are expressly conditional on Apple making certain arguments that Apple did not ultimately advance.  And Plaintiffs' contributory infringement theory cannot stand because the accused product—Apple Watch—has innumerable non-infringing uses.

***Second***, this Court should grant summary judgment on Plaintiffs' arguments that turn on intent—i.e., willfulness, indirect infringement, and the copying indicia of non-obviousness.  There is no evidence establishing that Apple knew about (or was willfully blind to) the two asserted patents prior to this litigation and certainly no evidence establishing that Apple deliberately infringed or was willfully blind to infringement after the litigation began—given Apple's good-faith non-infringement defenses.  Finally,

Plaintiffs have not met their burden to produce evidence suggesting Apple replicated or made a product with substantial similarity to Plaintiffs' patent-practicing products.

**Third**, this Court should grant summary judgment to limit Plaintiffs' damages claims. Plaintiffs are not entitled to any pre-suit damages because they cannot show compliance with the marking requirement, and any damages for the asserted method claims must be limited to only instances of actual use identified by Plaintiffs' experts.

## UNDISPUTED FACTUAL BACKGROUND

### A.    The Scope Of Plaintiffs' Asserted Claims

Plaintiffs currently assert '703 patent claims 1, 2, 5, and 6 and '776 patent claims 3, 4, and 9-14. SUF No. 1.[1] All asserted claims of the '703 patent and claims 3, 4, 9, and 10 of the '776 patent are method claims. SUF No. 2.

At a high level, the asserted patents relate to a "low power pulse oximeter" and methods for using the same to monitor physiological traits of a "patient." SUF No. 4. All asserted '703 patent claims require transitioning between a "lower power consumption level" and a "higher power consumption level" "when" "processing characteristics" determined from "one or more detectors configured to detect … light" cross a certain threshold. SUF No. 5. Similarly, all asserted '776 patent claims require switching between two different duty cycles caused by "a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector." SUF No. 6.

During IPR proceedings, Plaintiffs distinguished prior art by stating that the claimed "processing characteristics" requirement is not met if the decision whether to transition between different duty cycles occurs based on signals ***not*** received from an optical sensor (such as motion-based data received from an accelerometer). SUF No. 7. The Patent Office and the Federal Circuit necessarily adopted Plaintiffs' position in finding the '703 patent not unpatentable. SUF No. 8. During *Markman*, this Court

---

[1] Earlier in this litigation, Plaintiffs also alleged that Apple had infringed several '703 patent apparatus claims. SUF No. 3.

construed "processing characteristics" to mean "characteristics determined from a signal received from one or more detectors configured to detect light" and cited the Federal Circuit's finding that the term refers to characteristics "'being determined based on the signal received from light detectors, *the sole source* of signals that are then processed.'" SUF Nos. 9-10 (emphasis in original).[2]  Apple had proposed including additional language—"(i.e., the only signal received and processed in the claimed patient monitor)." SUF No. 11.  Apple stated that this additional language was to make clear the "processing characteristics" requirement cannot be met if inputs that are not from a light detector are used in duty cycle switching decisions.  SUF Nos. 12-13.  The Court stated that Apple's additional language was "unnecessary" "because Apple's construction merely restates the Federal Circuit's ruling."  SUF No. 14.

### B. The Accused Apple Watch Features

Plaintiffs accuse Apple of infringing the asserted patents based on the Workout Mode heart rate measurements (all Apple Watches) and the High/Low Heart Rate Notifications (Apple Watch Series 4 and later).  SUF No. 32.  Apple Watch has many uses that have no alleged connection to the asserted patents, including text messaging, email, phone calls, music, photos, weather, alarms and many more.  SUF No. 33.

The accused Workout Mode has utilized two different versions of the ████ ███████████████████████  SUF No. 15.  Both the Workout Mode and the High/Low Notifications features undisputedly rely on inputs *not* received from a light detector (i.e., data from an ████████████████) in determining whether to change LED duty cycles.  SUF Nos. 16-19.

Plaintiffs have presented no evidence that any accused feature has ever been used on a "patient"—i.e., a person receiving care from a medical professional.  SUF Nos. 20-21.  The only timely disclosed opinion regarding actual use of the asserted method claims comes from Dr. Madisetti, who identified 44 instances in which consumers

---

[2] Emphasis added unless noted.

purportedly used the accused High/Low Heart Rate Notifications (but without identifying evidence that any of them did so as a patient at the direction of a medical professional—much less that they did so in the United States). SUF No. 51.

### C.    Plaintiffs' Allegedly Practicing Products

Plaintiffs allege that they have sold products that practice the '703 and '776 patents. SUF No. 40. But Plaintiffs did not mark any product allegedly practicing the '776 patent until July 2020—months after this litigation was filed. SUF No. 41. Plaintiffs' "OEM boards"—components sold to third party original equipment manufacturers for incorporation into patient monitors—account ███████████ of Plaintiffs' pre-suit sales following the issuance of the '703 patent. SUF Nos. 42-43.

███████████████████████████████████████

███████████████████████████████████████

███████████████████. SUF No. 43. Plaintiffs made no efforts to ███████

████████████████████████████████ SUF No. 44.

### D.    Apple's Alleged Intent

There is no evidence that Apple copied Plaintiffs' patented products. SUF No. 38. There is also no evidence establishing that Apple knew of—or was willfully blind to—the existence of the asserted patents before this litigation was filed. SUF Nos. 36-37. After suit was filed, Apple had a good-faith belief in non-infringement. SUF No. 34. Indeed, every Apple employee deposed on this issue testified that they did not believe that Apple infringed either patent. SUF No. 35.

## ARGUMENT

### I.    THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT

### A.    There is No Infringement Because the Accused Features Use Non-Light Detector Inputs to Determine Whether to Change Duty Cycles

The asserted '703 patent claims require transitioning a light sensor between higher and lower power consumption levels (i.e., by changing the sensor "on" time/duty cycles) when "processing characteristics" pass a "predetermined threshold." *See supra* p. 2.

The asserted '776 patent claims similarly require a transition between different duty cycles caused by "a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector." *supra* p. 2.

During *Markman*, the parties agreed that "processing characteristics" should be construed to mean at least "characteristics determined from a signal received from one or more detectors configured to detect light." SUF No. 10. Apple proposed including additional parenthetical language, "i.e., the only signal received and processed in the claimed patient monitor." Dkt. 2390 at 8. This language was drawn from (1) representations Plaintiffs made in IPR proceedings, where they argued that prior art devices did not meet the "processing characteristics" requirement because they used non-light detector inputs (e.g., from accelerometers) to decide when to change duty cycles, and (2) the Federal Circuit's decision in the appeal from the IPR proceedings. Dkt. 1952 [Apple Br.] at 2-6; Dkt. 1974 [Apple Reply Br.] at 2-6; Dkt. 2390 [*Markman* Order] at 9 (this Court stating that "Apple argues the additional language is appropriate given both the Federal Circuit's ruling and due to disclaimers made during the IPR proceeding and subsequent appeal.").

In its *Markman* Order, this Court declined to adopt Apple's proposed parenthetical but noted that "Apple's 'only' language, which Masimo disputes, [] mean[s] that the light detectors are the sole source of the signals that are received and processed," and explained that "because Apple's construction merely restates the Federal Circuit's ruling, the Court finds it unnecessary." Dkt. 2390 at 9. The Court acknowledged "that the Federal Circuit held 'throughout the specification, 'processing characteristics' are described as being determined based on the signals received from the light detectors, ***the sole source*** of signals that are then processed.'" *Id*. (emphasis in original).

Despite this Court's *Markman* ruling, Plaintiffs now seek to present infringement theories that accuse Apple Watch of meeting the "processing characteristics"

Wilmer Cutler
Pickering Hale
and Dorr LLP

requirements of the asserted claims through features that determine whether to change LED duty cycles based, in part, on inputs **not** derived from a light detector. No reasonable jury could find that either the High/Low Heart Rate Notifications or the Workout Mode features satisfy the "processing characteristics" limitation because they do not involve transitioning between duty cycles where "signals received from the light detectors [are] **the sole source** of signals that are then processed." Dkt. 2390 at 9 (emphasis in original).

***High/Low Heart Rate Notifications:*** Plaintiffs allege that Apple Watch's High/Low Heart Rate Notification features meet the "processing characteristics" limitations based ██████████████████████████████████████████████ ████████████████████████████████ Ex. 3 [Madisetti Opening] ¶¶ 152-154. But the undisputed factual record demonstrates that the decision whether to perform ████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████. Ex. 4 [Mercier Rebuttal] ¶¶ 229, 653-654. Dr. Madisetti does not dispute that these features use ████████████████████ information. *E.g.*, Ex. 5 [Madisetti Reply] ¶ 309, 358.

***Workout +*** ████████████: Plaintiffs allege that when Workout Mode is operated in connection with ████████████, Apple Watch meets the "processing requirements" limitations based on ██████████████████████████████████████ ████████ Ex. 3 ¶¶ 138-143. However, it is undisputed that the determination of whether to change ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 4 ¶¶ 196-198, 404-406, 467-468. Dr. Madisetti does not deny that ████████████████████ are used in this manner. *E.g.*, Ex. 5 ¶¶ 309, 351-353.

***Workout +*** ████████████: Plaintiffs similarly allege that when Workout Mode is operated in connection with the ████████████ algorithm, Apple Watch meets the

1    "processing requirements" limitation based on changes that █████████████

2    ███████████    Ex. 3 ¶¶ 144-151.  But it is again undisputed that the feature relies

3    in part on ██████████████████████████████████████████████

4    ████████████████████████████████████    Ex. 4 ¶¶ 533-534; 581-582; *cf.* Ex.

5    5 ¶¶ 309, 356.

6     Because the undisputed factual record demonstrates that the accused features use

7    **_non_**-light detector inputs as part of the decision of whether ████████████

8    ████████████████████████████████████████████████████████

9    ██████    in connection with High/Low Heart Rate Notifications, Apple is entitled to

10   summary judgment of non-infringement.

11    Notwithstanding the undisputed factual record, Plaintiffs apparently intend to

12   suggest that the "processing characteristics" limitation can be met even if duty cycle

13   changes are based, in part, on inputs derived from sources other than a light detector

14   based on the Court's observation that: "To the extent an accused product determines

15   characteristics from a signal received from a light detector (whether or not it also

16   receives and processes other types of signals), the product would infringe the limitation

17   at issue."  *See* Dkt. 2390 at 9; Ex. 5 ¶¶ 309-345.

18    But that sentence was addressing a different point—Plaintiffs' argument that

19   Apple's proposed parenthetical might confuse a jury into thinking that there would be

20   no infringement if Apple Watch used non-light detector signals for **_any_** purpose:

21     Apple's negative limitation could also mislead the jury into deciding
22     the case based on a legally erroneous premise.  Apple argues its
23     limitation ensures a "processing characteristic" is not derived from "a
24     source **_other than_** a light detector" (Dkt. 1952 at 5), but that is not what
25     Apple's limitation requires.  Instead, Apple's limitation suggests the
26     claimed processing characteristic is derived from "the **_only signal_**
27     received and processed in the claimed patient monitor."  Such language
28     would improperly suggest the Apple Watch does not infringe if it (a)
       receives signals from one or more detectors **_and_** (b) receives other
       signals, such as accelerometer data.

1    Dkt. 1981 [Plaintiffs' Responding Claim Construction Brief] at 6 (emphasis in original).

2         The Court described that argument as "misplaced" and made clear that if duty

3    cycle changes are made based on the claimed "processing characteristics" (i.e., inputs

4    derived solely from a light detector), then Apple cannot avoid infringement just because

5    Apple Watch also "receives and processes other types of signals" for *other* purposes.

6    Dkt. 2390 at 9.  Thus, in the sentence Plaintiffs appear poised to exploit, the Court merely

7    reinforced that Apple was not trying to inject a "negative limitation" that would allow it

8    to avoid infringement just because Apple Watch also "receives and processes other types

9    of signals" for *other purposes*.  *Id*.  That sentence did not purport to undo the Court's

10   separate analysis finding Apple's proposed parenthetical "unnecessary" because it

11   merely "restated" the Federal Circuit's earlier decision.  *Id*.  And Dr. Madisetti is simply

12   wrong that Plaintiffs can prevail even under the proper understanding of the *Markman*

13   Order.  Dr. Madisetti identifies certain inputs used in duty cycle decisions that come

14   from a light detector, Ex. 5 ¶¶ 350-359, but those inputs cannot establish infringement

15   because it is undisputed that other inputs used for that same determination do not come

16   from a light detector, *see supra* p. 3.

17        In short, Plaintiffs cannot square their infringement arguments with the Court's

18   express finding that Apple's proposed "only" parenthetical language meant "that the

19   light detectors are the *sole source* of the signals that are received and processed," and

20   that it was thus "unnecessary" to include that added language in a formal construction

21   because it "merely restates the Federal Circuit's ruling."  Dkt. 2390 at 9 (emphasis in

22   original).  Because Plaintiffs' infringement position would effectively read those

23   passages out of the Court's *Markman* ruling, Apple is entitled to summary judgment of

24   no infringement.

25

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

**B.**   **The Accused Features Do Not Infringe The Asserted Method Claims Because No Evidence Establishes The Claims Were Performed On "A Patient" In The United States**

All asserted claims of the '703 patent are method claims that require measuring the "physiological parameters of *a patient*," and claims 3, 4, 9, and 10 of the '776 patent are method claims that require "monitor[ing] at least a pulse rate of *a patient*." *See supra* p. 2; SUF No. 2; *see also* Ex. 6 [Warren Rebuttal] ¶¶ 102-103.  However, Plaintiffs have presented no evidence of the accused Apple Watch features being used in the United States to monitor "a patient," the plain and ordinary meaning of which is a person receiving care from a medical professional.  *See* Ex. 7 [Madisetti Dep.] at 133:6-134:12, 123:13-19, 125:14-127:3; *see also Patient*, Merriam-Webster's Collegiate Dictionary (10th ed. 2001) ("an individual awaiting or under medical care and treatment"); *Patient*, Random House Webster's College Dictionary (2d ed. 2001) ("a person who is under medical care or treatment"); *Patient*, Cambridge Dictionary of American English (1999 ed.) ("a person who is receiving medical care, esp. in a hospital, or who is cared for by a particular doctor or dentist when necessary").[3]

Plaintiffs cannot identify such evidence in part because Apple Watch is a consumer product, not a medical device.  In an attempt to cure this clear deficit of proof, Dr. Madisetti argued for the first time in his reply report that the claim term "patient" can satisfied by any "person."  SUF No. 22; Ex. 5 ¶¶ 192, 195, 197.  But nothing in the intrinsic record supports that belated attempt to broaden the claims.  To the contrary, in the "Summary of the Invention" section, the specification describes a "patient" as someone receiving direct care from a medical professional:  "a pulse oximeter may be attached to *a patient during emergency transport* and remain with *the patient* as they are *moved between hospital wards*."  '703 patent at 1:56-59.  The specification draws a

---

[3] Although not at issue in this motion, Apple maintains that the accused products do not practice the "patient monitor" limitation of the asserted claims and will present that defense at trial.

sharp contrast between devices covered by the asserted patents that are used on a "patient" (such as a pulse oximeter) and those used in a different context (such as "consumer electronics"): "*Unlike consumer electronics*, *pulse oximetry* cannot afford to miss events, such as *patient* oxygen desaturation." *Id.* 2:20-21. And the specification directly links the word "patient" to the presence of a healthcare provider: "The display port 304 connects to a display device … which a *healthcare provider* typically uses for *monitoring a patient's* oxygen saturation, pulse rate, and plethysmograph." *Id.* 5:7-10.[4] The extrinsic evidence also conflicts with Dr. Madisetti's new attempt to rewrite the claims. In fact, the same dictionaries that Dr. Madisetti cites elsewhere in his report (for the word "monitor"), Ex. 5 ¶ 205, all confirm that "patient" does not mean person, *see supra* p. 9.

Therefore, consistent with rulings of courts in this and other districts, Plaintiffs cannot avoid summary judgment of no infringing use merely by having Dr. Madisetti try to rewrite the claims to make "patient" interchangeable with "person." *See, e.g., Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*, 2016 WL 7486596, at *16 (C.D. Cal. Oct. 21, 2016) (rejecting plaintiff's attempt to equate "user" and "patient" as "synonymous" or "interchangeable alternative[s]"); *In re Body Sci. LLC Pat. Litig.*, 167 F. Supp. 3d 152, 160-161 (D. Mass. 2016) (rejecting attempt to "effectively replace[] the word 'patient' in the claims with 'individual'").[5]

Because Plaintiffs have not pointed to any evidence that the accused features have been used to monitor a *patient*, Apple is entitled to summary judgment of non-infringement on each asserted method claim.

---

[4] The passages from the specification that Dr. Madisetti quotes in support of his expansive reading of "patient" (Ex. 5 ¶¶ 197, 200) do not even use that word and—in both instances—are table-setting sentences that only describe the general capabilities of a pulse oximeter rather than the claimed invention. *See* '703 patent at 1:18-20, 1:61-63.

[5] Dr. Madisetti testified that "patient" refers to ▬▬▬▬▬▬▬▬▬▬ Ex. 7 at 127:4-15. This again equates "patient" with "a person since ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Experts cannot avoid summary judgment by tactically contradicting prior sworn statements. *See Hambleton Bros. Lumber Co. v. Balkin Enterprises*, 397 F.3d 1217, 1225 (9th Cir. 2005).

**C.      Plaintiffs' Conditional Doctrine of Equivalents Theories Should Be Rejected As Inapplicable—Or, At Minimum, Unduly Conclusory**

In his opening report, Dr. Madisetti raised several doctrine of equivalents theories defined as conditional on whether Apple takes a specific non-infringement position, including:

- "*To the extent that Apple argues* a single processing characteristic and threshold is required … the Apple Watch also infringes under the doctrine of equivalents."  SUF No. 23; Ex. 18 [Madisetti Opening, Appx 1A] at 66, 91; Ex. 19 [Appx. 1B] at 120, 159 (same); Ex. 20 [Appx. 1C] at 73, 97 (similar); Ex. 21 [Appx. 2A] at 49-50, 121-122 (similar).

- "*To the extent that Apple argues* that … operation of the ▮▮▮▮▮▮▮ algorithms fall outside the scope of 'interruption,' then the claims are infringed under the doctrine of equivalents."  SUF No. 25; Ex. 18 at 90-91; *id.* at 52; Ex. 19 at 93; Ex. 21 at 24.

- *"To the extent that Apple argues* that the 'predetermined' threshold must stand alone to satisfy 'comparing processing characteristic to a predetermined threshold' and 'when said processing characteristics pass said threshold …', the Apple Watch also infringes under the doctrine of equivalents."  SUF No. 27; Ex. 19 at 120; *id.* at 158; Ex. 22 [Appx. 2B] at 131-132, 213.

- *"To the extent that Apple argues* the 'predetermined' threshold must stand alone to satisfy 'wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold,' the Apple Watch also infringes under the doctrine of equivalents."  SUF No. 29; Ex. 19 at 158; *see also* Ex. 22 at 131.

Apple has not advanced any of the four non-infringement arguments discussed above, which Dr. Madisetti stated were the conditions precedent for these doctrine of equivalents theories.  SUF Nos. 24, 26, 28, 30; *e.g.*, Ex. 4 ¶ 404 (explaining Apple's understanding of "processing characteristics").   In his reply report, however, Dr.

Madisetti repeated these same conditional theories without any similar conditional language, Ex. 5 ¶¶ 499, 557, 659, 718, 862, and at his recent deposition Dr. Madisetti contended that these equivalents theories are not conditional at all, *e.g.*, Ex. 7 at 252:22-253:4 (theories are ███████████████████████████████████████).

Dr. Madisetti's new opinions in his reply report should be struck as requested in Apple's co-pending motion. But even if that motion to strike were denied, these theories should be rejected on the merits because the Federal Circuit has "consistently rejected doctrine of equivalents theories as a matter of law when a patentee's case lacks particularized testimony and linking argument." *NexStep, Inc. v. Comcast Cable Commc'ns*, 119 F.4th 1355, 1372 (Fed. Cir. 2024). Dr. Madisetti's discussion of each theory is brief and generic—he asserts merely that the accused features are "substantially the same" as the asserted claim limitations—without providing any concrete explanation for why that is supposedly so. SUF No. 31; *e.g.*, Ex. 18 at 66, 90-91; Ex. 19 at 120, 158. Because Dr. Madisetti failed to put forth the bare minimum necessary to "ensure that a jury is provided with the proper evidentiary foundation from which it may permissibly conclude that a claim limitation has been met by an equivalent," *NexStep*, 119 F.4th at 1371, Apple is entitled to summary judgment.

### D. Plaintiffs Cannot Establish Contributory Infringement Because (Even Under Plaintiffs' Meritless Infringement Theory) Apple Watch Has Myriad Non-Infringing Uses

"An accused contributory infringer will not be held liable for such infringement if the 'component' or 'material or apparatus' that the party sells is 'suitable for substantial noninfringing use.'" *Koniklikjike Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 523-524 (Fed. Cir. 2016). There can be no reasonable dispute that Apple Watch (i.e., what Plaintiffs accuse as the claimed "patient monitor") has numerous, non-infringing uses that have nothing to do with heart rate, much less the two accused features. *See supra* p. 3.

Apple Watch is the relevant item, rather than the individual Workout and High/Low Heart Rate Notification features, which are not "'separate and distinct,'" *Koniklijike*, 656 F. App'x at 524, from the overall Watch product. Put differently, Apple did not "merely … embed [the purportedly infringing features] in a larger product with some additional, separable feature before importing it and selling it," *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009)—and the fact that the features run on Apple Watch is necessary to Plaintiffs' infringement theory, *see Akeso Health Sciences, LLC v. Designs for Health*, 2017 WL 5125751, at *3 (C.D. Cal. Feb. 27, 2017) (no contributory infringement where plaintiff targeted "a single, standalone product from which [components] not appearing in the claims of the [asserted patent] cannot be separated out").[6]

## II. THIS COURT SHOULD GRANT SUMMARY JUDGMENT ON NUMEROUS ISSUES BECAUSE THERE IS NO EVIDENCE OF INTENTIONAL INFRINGEMENT OR COPYING

### A. There Is No Evidence Establishing Willfulness

A finding of "willfulness requires deliberate or intentional infringement." *Bayer Healthcare, LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021); *accord MR Techs. GMBH v. W. Digital Techs., Inc.*, 2024 WL 5495289, at *8 (C.D. Cal. Dec. 5, 2024) (Selna, J.). Here, Plaintiffs have identified no facts from which a reasonable jury could find that Apple had a "specific intent to infringe at the time of the challenged conduct." *Bayer*, 989 F.3d at 987.[7] Plaintiffs have not even identified evidence that Apple **knew** of the asserted patents before this lawsuit. SUF No. 36. For example, Dr. Madisetti has

---

[6] Separately, summary judgment can also be granted on the basis that Plaintiffs are accusing a whole product rather than a particular "component." *See Tonal Sys. v. ICON Health & Fitness, Inc.*, 2021 WL 1785072, at *5 (D. Del. May 5, 2021) (holding contributory infringement claim against a whole product is impermissible and collecting cases).

[7] Notably, Dr. Madisetti relies on the wrong legal standard for willfulness. *See* Ex. 5 ¶ 36 ("[W]illful infringement occurs when the infringer acted despite **a risk of** infringement that was either known or so obvious that it should have been known to the infringer.").

1   asserted that Apple had the requisite knowledge because ██████████████

2   ████████████████████████████████████████████████████████████████

3   ████████   Ex. 5 ¶¶ 131, 168.  As a preliminary matter, knowledge of the patent itself—

4   without knowledge of any alleged infringement—is insufficient.  *RJ Tech. v. Apple*,

5   2023 WL 3432237, at *8 (C.D. Cal. Mar. 23, 2023) ("continued use of the accused

6   products despite knowledge of the asserted patent … is insufficient to state a claim" for

7   willful infringement).  In any event, Dr. Madisetti fails to show even knowledge of the

8   patent; he identifies no instance of anyone at Apple ████████████████  and even he

9   concedes that ██████████████████████████████████████  Ex.

10  5 ¶ 168.  Dr. Madisetti also asserts that Apple knew "or should have known" about the

11  '703 and '776 patents because two Apple employees were (at some point in time) co-

12  inventors of "patents that cited to the asserted patents and/or family members of the

13  asserted patents."  Ex. 3 ¶ 99.  But "should have known" is the wrong legal standard,

14  and again Dr. Madisetti does not point to anything in the record showing that either

15  employee was actually aware of the asserted patents.

16      Absent any evidence relating to the asserted patents, Plaintiffs rely on the

17  inaccurate, stale, and generic accusations that Apple engages in "efficient infringement"

18  or accepts copying, based on out-of-context quotes.  *See* Ex. 17 [ROG 18 Response] at

19  7-8; *infra* pp. 15-17.  Plaintiffs also point to ████████████████████████

20  ██████████████████████  *see* Ex. 5 ¶¶ 880-892, but such conduct says nothing about

21  whether Apple's **products** infringe—much less whether Apple intentionally infringed.

22  Tellingly, Plaintiffs have not even tried to draw a specific link between ████████████

23  ██████████████████████████████  and the invention described in the asserted claims.

24  *Id*.  Similarly, the fact that Apple hired certain of Plaintiffs' employees, Ex. 17 at 13-16,

25  is irrelevant to whether Apple **intended** to infringe—particularly given that Plaintiffs fail

26  to identify any connection between these employees and either the patents-in-suit or the

27  accused features.  Finally, Dr. Madisetti suggests that Apple has "specific[] inten[t]" to

28  infringe because Apple provides its users with information that purportedly allows them

to infringe the patents.  Ex. 5 ¶ 135.  But this is simply a restatement of Dr. Madisetti's indirect infringement theory and "evidence of infringement is necessary, but not sufficient, for a finding of willfulness."  *Bayer*, 989 F.3d at 988.

**B.    There Is No Evidence Establishing Apple Had The Intent Required For Induced Infringement**

To prevail on induced infringement, Plaintiffs are required to show *inter alia* that Apple "took deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."  *Global-Tech Appliances v. SEB S.A.*, 563 U.S. 754, 769-770 (2011).  As demonstrated above, there is no evidence that Apple even knew about the asserted patents pre-suit, and neither Plaintiffs nor Dr. Madisetti identifies specific "deliberate actions" Apple took to avoid learning about them.  SUF No. 37.[8]  (For the same reason, no reasonable jury could find that Apple had the requisite intent for contributory infringement before the suit was filed. *See Commil USA LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) (same willful blindness standard for both induced and contributory infringement).)  Regarding the post-suit period, Apple has maintained good-faith non-infringement defenses to all of the currently asserted claims, several of which are discussed above.  *See supra* pp. 4-13; *see also, e.g.*, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1119 (Fed. Cir. 2022) (no reasonable jury could find intent requirement satisfied where defendant had a "subjective belief that it wasn't infringing or inducing infringement").

**C.    Plaintiffs Have Not Satisfied Their Burden Of Production To Identify Evidence Supporting The Copying Indicia of Non-Obviousness**

"[A] patentee bears the burden of production with respect to evidence of secondary considerations of non-obviousness," *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d

---

[8] No reasonable jury could credit Dr. Madisetti's assertion that ██████████████ ████████████████████████████████████ Ex. 3 ¶ 103.  The only support for that assertion is Dr. Lamego's deposition in the trade secret case, in response to a question about actions that Apple ██████████████████████ *See* Dkt. 1085-5 [Lamego Dep.] at 218.

1365, 1373-1374 (Fed. Cir. 2018), and that any such secondary consideration must have a "nexus" to the asserted patents, *see Fox Factory, Inc. v. SRAM,* LLC, 944 F.3d 1366, 1373-1374 (Fed. Cir. 2019).  While Plaintiffs and Dr. Madisetti have both asserted—as part of a broader secondary considerations argument—that Apple copied the claimed invention, Plaintiffs have failed to identify evidence to create a genuine factual dispute as to whether Apple made "efforts *to replicate* a specific product [of Plaintiffs]" or had "access to the patented product *combined with* substantial similarity to the patented product."  *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).

Specifically, Plaintiffs rely on evidence that—at best—shows Apple's general awareness of Masimo's reputation in the field of noninvasive physiological sensing.  *See* SUF Nos. 36-39; Ex. 8 [Plaintiffs' Supp. Resp. to Interrogatory Nos. 2 and 3 Response] at 29-30; *see also* Ex. 9 [Madisetti Rebuttal] ¶ 1474 (incorporating by reference Plaintiffs' interrogatory response).  Mere knowledge of a company's business reputation does not establish an intent to use its technology.  Plaintiffs also recycle the same meritless and irrelevant accusations raised in the trade secret proceedings that Apple has a general practice of deliberately copying others, relying on, *inter alia*, out-of-context quotes from its late founder.  *See* Ex. 8 at 30.  Even if this evidence were probative (it is not), it is inadmissible—the Court has excluded it in the two prior trials.  *See* Dkt. 1439, Dkt. 2227 at 1-3; *see also supra* p. 14.  Finally, while Plaintiffs recite a litany of other allegations regarding Apple's hiring and market research efforts, Ex. 8 at 30-40, Plaintiffs do not explain how a reasonable jury could find the test laid out in *Wyers* satisfied.

At minimum, Plaintiffs have failed to create a genuine dispute as to whether "a nexus [existed] between the unique features of the claimed invention … and the evidence of secondary considerations."  *Volvo Penta of the Americas, LLC v. Brunswick Corp.*, 81 F.4th 1202, 1212 (Fed. Cir. 2023).  Plaintiffs point to nothing showing Apple copied the specific power management or signal processing techniques claimed by the

1   patents-in-suit.  Instead, "Dr. Madisetti's cited evidence relates almost exclusively to

2   Apple's development of its blood oxygen feature."  Ex. 10 [Warren Reply] ¶ 495.

3   **III.   AT MINIMUM, THIS COURT SHOULD NARROW PLAINTIFFS' DAMAGES CASE**

4           **A.       Plaintiffs Are Not Entitled To Pre-Suit Damages Because They Failed**

5                      **To Adequately Mark Patent-Practicing Products**

6           A patentee is not entitled to damages until the date by which it gave the defendant

7   actual or constructive notice of the alleged infringement.  *See* 35 U.S.C. § 287(a).

8   Plaintiffs have the "duty of alleging and the burden of proving" that they met the notice

9   requirement.  *Arctic Cat v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366

10  (Fed. Cir. 2017).  Here, there is no evidence or argument that Plaintiffs provided actual

11  notice of the purported infringement to Apple prior to this lawsuit.  They did not.  SUF

12  No. 45; Ex. 25 at 109.  Nor have they seriously attempted to argue that Apple was on

13  constructive notice of its purported infringement of the '776 patent.  *Cf.* Ex. 5 ¶ 131.

14  Plaintiffs' own damages expert assumes that the damages period for the '776 patent does

15  not begin until the complaint's filing date, SUF No. 46; Ex. 11 [Bergman Opening]

16  ¶¶ 149-150, and Plaintiffs' relevant interrogatory response concedes the '776 patent was

17  not listed on Plaintiffs' marking website until July 2020.  Ex. 12 [ROG 17 Response] at

18  63.

19          As to the '703 patent, although Plaintiffs' remaining asserted claims are all

20  method claims, because Plaintiffs previously asserted apparatus claims they were

21  required to comply with the marking requirements.  *See Crown Packaging Tech. Inc. v.*

22  *Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) (Section 287(a) applies

23  when a patentee has previously asserted an apparatus claim *inter alia* in combination

24  with one or method claims); *DivX, LLC v. Hulu, LLC*, 2021 WL 4459368, at *5 (C.D.

25  Cal. June 11, 2021) (non-method claims in complaint "trigger[ed] § 287(a) for

26  infringement claims seeking pre-suit damages").  But no evidence exists that most of the

27  products allegedly practicing the '703 patent were marked, *Cybiotronics, Ltd. v. Golden*

28  *Source Elecs. Ltd.*,130 F. Supp. 2d 1152, 1160 (C.D. Cal. 2001) (full compliance with

Wilmer Cutler
Pickering Hale
and Dorr LLP

the constructive notice requirement not achieved until patentee shows that it "consistently marked substantially all of its patented products), or even that Plaintiffs took "reasonable efforts to ensure compliance with the marking requirements," *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1112 (Fed. Cir. 1996). Specifically, Plaintiffs cannot show that products incorporating their OEM boards were marked or that they took reasonable efforts to ensure they were. ████████████████████████

████████████████████████████████████████████████████

███████████████ SUF No. 35. ████████████████████████

████████████████████████████████████ SUF No. 30. But Plaintiffs have failed to identify *any* evidence showing these third-party practicing products were marked. Indeed, Masimo's COO and corporate representative on marking ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ Ex. 13 at 32:20-33:3; *see also K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 52 F. App'x 135, 141 (Fed. Cir. 2002) ("Although there was a provision in the contract … requiring marking, [patentee] took no steps to determine if [licensee] was actually marking the products until after the start of the current litigation."). Between 2015 (when the first accused Apple Watch was released, SUF No. 47) and the end of 2019 (after which this lawsuit was filed), Masimo sales of OEM Boards in the United States accounted for ████ of the total units of products that they allege practiced the '703 patent, SUF No. 48. Accordingly, even assuming Plaintiffs could show all other allegedly practicing products were continually marked during the relevant time [9]—i.e., ████—they fall well short of the "substantially all" bar. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 34 F. Supp. 3d 1061, 1097 (C.D. Cal. 2014) (marking of only 77% of products insufficient "by a wide measure");

---

[9] Apple disputes that Plaintiffs' can show marking of substantially all of its other products alleged to practice the '703 patent but does not raise those arguments here as Plaintiffs' failure to show marking of products incorporating their OEM boards alone is fatal to their claim for pre-suit damages.

*cf. Cybiotronics, Ltd.*, 130 F. Supp.2d at 1160 (noting *Maxwell* decision found "95% marking" sufficient to comply with reasonable efforts requirement).

### B. Plaintiffs' Damages For The Asserted Method Claims Should—At Most— Be Limited To 44 Instances Of Allegedly Infringing Use

As discussed in Section I.B, *supra*, Apple is entitled to summary judgment of non-infringement of all asserted method claims because Plaintiffs have failed to show that anyone in the United States has used the accused Apple Watch features in an infringing manner, i.e., to monitor a patient. To the extent the Court disagrees that summary judgment of non-infringement is warranted, Plaintiffs "can only receive infringement damages on those devices that ***actually performed the patented method*** during the relevant infringement period." *Cardiac Pacemakers, Inc. v. St. Jude Med. Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009); *see also Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) (similar). Plaintiffs "cannot recover damages based on sales of products with the mere capability to practice the claimed method." *Niazi*, 30 F.4th at 1357.

There can be no genuine dispute that Plaintiffs have failed to satisfy their burden to tie their damages theory to actual use of the claimed invention. Plaintiffs' damages expert, Mr. Bergman, calculated a per-unit reasonable royalty for the '703 patent (for which only method claims are asserted) using a royalty base comprising ***all sales*** of accused Apple Watch devices. SUF No. 49; *see* Ex. 11 ¶¶ 556-558, 559, 565. Indeed, Mr. Bergman conceded in his deposition that his royalty base ████████████ ████████████████████████████████████████████ ███████████████████████ SUF No. 51; Ex. 15 [Bergman Dep.] at 90:3-90:9. But an expert "cannot simply count sales of the [device] accused of infringing the [] patent as sales of the method claimed." *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314-1315 (Fed. Cir. 2020). And while Mr. Bergman suggested during his deposition that ███████████████████████████ ████████████████████████████████████████████

1  ████████████████████████████████████ not any actual use of the

2  accused features.  *See* Ex. 15 at 239:22-243:20.  Indeed, the Federal Circuit has

3  previously faulted Mr. Bergman for "appl[ying] a calculated reasonable royalty to

4  revenue from [a defendant's] ***sales*** of [accused] products" and thereby proffering a

5  "damages base [that] was not tailored to any alleged … use of the claimed methods."

6  *Packet*, 965 F.3d at 1315-1316 (reversing and granting JMOL on this issue).  In sum,

7  having failed to "carefully tie proof of damages to the claimed invention's footprint in

8  the market place," Plaintiffs' damages estimate for the method claims is "pure

9  speculation" and thus fails as a matter of law.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594

10  F.3d 860, 869 (Fed. Cir. 2010).

11      Apple should accordingly be granted summary judgment that any damages for the

12  alleged infringement of method claims must be limited to actual instances of use that

13  were timely identified.  The only such evidence that even arguably fits this description

14  is a table in Dr. Madisetti's opening report that purports to identify alleged instances of

15  use of the High/Low Notifications features.  *See* Ex. 3 ¶¶ 165, 171, 175.  To be clear,

16  Apple disputes that the evidence cited in Dr. Madisetti's table suffices to show use of

17  the claimed methods.  *See supra* pp. 9-11.  But even crediting that evidence, Plaintiffs

18  have identified ***at most 44 instances*** in which someone purportedly used an accused

19  Apple Watch product in an allegedly infringing manner. SUF No. 50; *see* Ex. 14

20  [Webster Rebuttal] at 159, Schedule 1.1.  Any damages for alleged infringement of the

21  asserted method claims must therefore be limited to—at most—those 44 units.[10]

---

[10] For the reasons explained in Apple's simultaneously filed motion to strike, Dr. Madisetti's and Mr. Bergman's assertions made for the first time in their reply reports that that "nearly all" accused Apple Watch products have "used" the asserted method claims, Ex. 5 ¶¶ 368-408, Ex. 16 [Bergman Reply] ¶¶ 221-222, should be stricken as untimely.

**CONCLUSION**

For the foregoing reasons, Apple respectfully submits that this Court should grant summary judgment on Plaintiffs' patent infringement claims—or at minimum—significantly narrow their case prior to trial.

Dated:  July 28, 2025                Respectfully submitted,

By: */s/ Mark D. Selwyn*
                    Mark D. Selwyn

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND
DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP


*Attorneys for Defendant Apple Inc.*

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Apple, Inc., certifies that this brief contains 6,867 words, which:

 <u>X</u>  complies with the word limit of L.R. 11-6.1.

 ___ complies with the word limit set by court order dated [date].

Dated:<u> July 28, 2025 </u>               Respectfully submitted,


                                    By:  <u>*/s/ Mark D. Selwyn*</u>
                                         Mark D. Selwyn

                                    MARK D. SELWYN
                                    AMY K. WIGMORE
                                    JOSHUA H. LERNER
                                    JOSEPH J. MUELLER
                                    SARAH R. FRAZIER
                                    THOMAS G. SPRANKLING
                                    WILMER CUTLER PICKERING HALE AND
                                    DORR LLP

                                    BRIAN A. ROSENTHAL
                                    GIBSON, DUNN & CRUTCHER LLP

                                    KENNETH G. PARKER
                                    HAYNES AND BOONE, LLP