Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
Douglas B. Wentzel (Bar No. 313452)
douglas.wentzel@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MASIMO'S OPPOSITION TO APPLE'S MOTION TO EXCLUDE PORTIONS OF OPINIONS AND TESTIMONY OF MASIMO'S EXPERTS REBBECCA REED-ARTHURS AND JIM BERGMAN**<br><br>Date: September 4, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10C |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................1

   A.  Reed-Arthurs' Opinions Are Reliable And Admissible ...........................1

      1.  Reed-Arthurs Properly Accounts For A 2017 Notification Feature ..................................................................2

         a.  Reed-Arthurs Excluded The 2017 Notification Feature Because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ..................2

         b.  Apple's Other Arguments Lack Merit ...............................4

      2.  Reed-Arthurs' Survey Accurately and Reliably Describes The Benefits of the Patents To Apple Consumers ..........................................................................5

   B.  Bergman's Opinions Based on Reed-Arthurs' Opinions Are Reliable and Admissible ..............................................................................8

   C.  Bergman Can Present His Cost-Savings Opinion Regardless Of The Court's Ruling On The Survey ......................................................8

III. CONCLUSION ....................................................................................................9

# TABLE OF AUTHORITIES

Page No(s).

*Fractus, S.A. v. Samsung*,
  2011 WL 7563820 (E.D. Tex. Apr. 29, 2011) ...................................................... 5

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) ...................................................................... 3, 7

*NetAirus Techs., LLC v. Apple Inc.*,
  2013 WL 12322092 ........................................................................................ 5, 7

*Parallel Networks Licensing, LLC v. Microsoft Corp.*
  777 F. App'x 489 (Fed. Cir. 2019) ..................................................................... 5

*ParkerVision, Inc. v. Qualcomm Inc.*,
  116 F.4th 1345 (Fed. Cir. 2024) ..................................................................... 4, 7

*Unwired Planet, LLC v. Apple Inc.*,
  2017 WL 589195 (N.D. Cal. Feb. 14, 2017) ...................................................... 5

# I. INTRODUCTION

One part of Jim Bergman's reasonable-royalty analysis relied on a survey conducted by Rebbecca Reed-Arthurs. Reed-Arthurs applied techniques from the Nobel-Prize-winning work of economist Daniel McFadden. Dkt. 2551-6 ¶95.[1] Reed-Arthurs evaluated the two accused features in the Apple Watch: (1) Workout Mode and (2) HR Notifications. *Id*. ¶¶10-12. The survey measured how much consumers value each accused feature compared to the next-best acceptable alternative to that feature, as determined by Masimo's technical expert. *Id*. ¶¶11, 40.

Apple argues the survey failed to consider that the 2017 feature would fall within the survey feature description for HR Notifications. ██████████ ██████████ Apple's disagreement with Madisetti is a matter for trial, not *Daubert* for Reed-Arthurs' survey. Apple also argues the survey included "misleading and overbroad" feature descriptions, but this too is fodder for cross-examination, not a basis for *Daubert*.

Apple separately argues Bergman fails to apportion for non-infringing elements related to HR Notifications. But the Reed-Arthurs' survey on which Bergman relied already accounted for such non-infringing elements.

Finally, Apple suggests that Bergman agreed the low-end of his damages range for HR Notifications based on cost savings was not reliable. Bergman said no such thing. Bergman is entitled to offer his cost-savings damages opinion even if the Court were to exclude the Reed-Arthur survey.

# II. ARGUMENT

## A. Reed-Arthurs' Opinions Are Reliable And Admissible

Apple seeks to exclude Reed-Arthurs' opinions for two reasons: (1) she allegedly ignored a 2017 feature that purportedly would fall within the survey feature description,

---

[1] Unless noted otherwise, numbered exhibits submitted by the parties are referenced by docket number, lettered exhibits are attached to the Omnibus Powell Declaration, and all emphasis in quotations is added.

-1-

and (2) the survey's feature descriptions are allegedly "misleading and overbroad." Mot. at 9, 11. Both lack merit.

### 1. Reed-Arthurs Properly Accounts For A 2017 Notification Feature

Apple does not challenge the fundamental economics or methodology behind the Reed-Arthurs survey. Apple instead disputes whether the feature description for HR Notifications included the value of an unaccused heart rate notification feature from an Apple Watch sold in 2017. Mot. at 9-10. Apple asserts Reed-Arthurs' survey should have allowed respondents to choose that 2017 feature. *Id*. at 7. Apple's critique is no basis to exclude the survey under *Daubert*. Apple is free to make such argument at trial.

#### a. Reed-Arthurs Excluded The 2017 Notification Feature Because ▮

Reed-Arthurs specifically considered the 2017 feature and excluded it ▮ Dkt. 2551-6 ¶11; Dkt. 2551-1 ¶¶216-253; Dkt. 2552-4 ¶¶902-911. ▮ Dkt. 2551-1 ¶241; Dkt. 2552-4 ¶910. ▮. Therefore, it would ▮ Dkt. 2551-1 ¶231.

Apple learned that the 2017 feature was subject to ▮ ▮. ¶232. This produced ▮. *Id*. ¶¶218, 231-232. Apple understood that alerting users of ▮ ▮ *Id*. ¶218. Not only did these ▮ *Id*. ¶¶181, 231, 238. ▮

-2-

1
2 ██████ *Id*. ¶238. ████████████
3 ████████████████████████████ *Id*. ¶226.
4
5
6
7 ██ Dkt. 2551-1 ¶218. Masimo's experts were free to take Apple's documents at face value ████████████████████████████. Apple is free to explore its critiques on cross examination at trial.
10
11
12
13 ████████████████████████ *Id*. ¶¶236-237. Apple fixed its problems by infringing Masimo's patents. *Id*. ¶242.

Apple ignores all these facts and opinions. Instead, it baldly asserts "there is no question that the 2017 version of the feature was commercially viable since it was already sold commercially."[2] Mot. at 10. But tickets to ride the Hindenburg also were sold, which hardly shows that it was a commercially acceptable alternative to get from Germany to New Jersey. ████████████████████████████████████████

Apple's mere disagreement with Madisetti does not justify excluding Reed-Arthurs' survey. The jury is free to accept Madisetti's opinion or the facts that support it. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393-4 (Fed. Cir. 2003). In *Micro Chem.*, the Federal Circuit held a district court properly admitted reasonable

---

[2] Apple argues it "sold ████████ Series 3 Watches with the 2017 version of the feature available." Mot. at 10. But Apple sold just ██████ Series 3 Watches before September 2018, when Apple discontinued the 2017 notification feature. *See* 2551-5 at Sch. 15.2.

royalty opinions that a different version of the accused system was unacceptable and should not be considered to reduce the reasonable royalty rate. *Id.* That is just one example; this type of factual dispute routinely plays out in a patent trial. As the Federal Circuit explained, "attacks on [the opposing party's] experts may well persuade a jury not to credit the expert's [technical] opinions," but district courts should leave "it to jurors to 'evaluate the correctness of facts underlying an expert's testimony.'" *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1363-64 (Fed. Cir. 2024) (finding abuse of discretion and reversing exclusion of expert). Thus, Apple's factual dispute about ▇▇▇▇▇ the 2017 notification feature is no basis to exclude the Reed-Arthurs survey.

### b. Apple's Other Arguments Lack Merit

Apple also raises a series of meritless arguments. First, Apple argues Madisetti testified he was not "offering any opinions in this case about what features make a watch commercially viable or not." Mot. at 10 (citing Dkt. 2551-12 at 237:6-10). But the context shows that is not what Madisetti said. Madisetti merely acknowledged he is not a marketing expert. Dkt. 2551-12 at 236:25-237:10. But Apple ignores Madisetti's earlier testimony that the 2017 feature ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ Madisetti testified:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Id.* at 225:17-23.

Second, Apple argues Reed-Arthurs' survey feature description for "High/Low Notifications" was so broad that it encompassed the 2017 feature. Not so. The survey stated the "watch *confirms* that your heart rate is above *or below* expected boundaries" before warning the user. Dkt. 2551-6 ¶41 Fig. 1. Thus, the description ties directly to

1   Apple's infringing use of the claimed invention, which utilizes ▮▮▮▮
2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Third, Apple's cited cases are distinguishable on their facts.

- *Parallel Networks Licensing, LLC v. Microsoft Corp.*, did not involve a damages survey. 777 F. App'x 489 (Fed. Cir. 2019). Instead, the plaintiff submitted an infringement survey that the court excluded because it did not address infringement. *Id*. at 492.
- *NetAirus Techs., LLC v. Apple Inc.,* 2013 WL 12322092 *4; *see also id*. n.4 (C.D. Cal. Oct. 23, 2013), excluded one survey that violated the court's order on supplemental discovery. The court also characterized the survey methodology as "fundamentally flawed" for numerous reasons that are inapplicable here. *Id*. at *5
- *Unwired Planet, LLC v. Apple Inc.*, 2017 WL 589195, at *1 (N.D. Cal. Feb. 14, 2017), excluded a survey that reflected a broad claim construction the plaintiff proposed, but which the court expressly rejected.
- *Fractus, S.A. v. Samsung*, 2011 WL 7563820, *1 (E.D. Tex. Apr. 29, 2011), related to particular features of internal antennas. But, rather than focusing on any features of internal antennas, the survey compared the value of internal antennas to external antennas. Unlike Reed-Arthurs, the survey expert in *Fractus* did not rely on a technical expert's opinion on the acceptability of other alternatives.

### 2. **Reed-Arthurs' Survey Accurately and Reliably Describes The Benefits of the Patents To Apple Consumers**

Apple also criticizes the Reed-Arthurs survey for using feature descriptions that Apple characterizes as "misleading and overbroad." Mot. at 11. Apple first challenges Reed-Arthurs' decision to present respondents with a "High/Low Notification" feature compared to a "Background Tracking" feature. *Id.* Apple argues that this "wording suggests that 'High/Low Notifications' is an additional feature on top of background

tracking." *Id.* (punctuation omitted). That is no mere suggestion—it is a fact. The original Apple Watch measured heart rate in the background and displayed the value to the user. Ex. BB. It had no notification feature. The notification feature came later as an additional feature separate from background tracking. Dkt. 2551-5 ¶¶181-183 (citing Ex. AA (APL-MAS_00744479) at -480 and Ex. Z (MASA03664535) at -539). Reed-Arthurs' survey properly compared "High/Low Notification" (the infringing feature) with "Background Tracking" (the next-best alternative). Dkt. 2551-6 ¶11.

Relying on its expert Gal, Apple argues the survey's language led users to "gravitate towards" the accused feature. Mot. at 11. But Gal did not propose alternative feature descriptions and did nothing to measure whether his argument had any impact on the survey results. Gal's speculation that the survey language might have led some unknown number of users to "gravitate" somewhat towards one choice is no basis to exclude the Reed-Arthurs' survey. And Apple ignores Reed-Arthurs' explanation of why the specific language she selected was appropriate and consistent with how Apple markets the feature. Dkt. 2551-11 ¶68.

For Workout Mode, Apple argues the words "Fixed" and "Dynamic" are "self-serving" because there is just one version of Workout Mode. Mot. at 11. But Masimo was comparing the accused feature against the next-best alternative. "Dynamic" accurately captures that one accused version of Workout Mode. The "Fixed" refers to the next-best alternative.

Apple also cites Gal to argue that "Dynamic" is a "more desirable action word" than "Fixed." Mot. at 12. But again, Gal merely hypothesizes that Reed-Arthurs' descriptions had some unknown impact on her survey. Dkt. 2551-11 ¶¶69-70. Apple conducted no survey of its own to show that using different descriptions would have measurably affected the survey's results. After the fact, anyone could quibble about the precise words used in the survey. But the question here is whether the Reed-Arthurs language was so flawed as to render the survey unreliable. Apple fails to make such a showing.

Apple argues that Reed-Arthurs should have "alert[ed] respondents to the tradeoff between improved accuracy and improved battery life" and offered respondents an option with "increased accuracy" in heart-rate notifications but "decreased battery life." Mot. at 12. But this presupposes Apple was willing to decrease the Watch's battery life. Apple's internal documents and witnesses make clear that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 8 ¶¶200-205; Dkt. 2552-27 at 86:14-87:12; Dkt. 2551-4 at 135:15-136:2; Ex. T (Sarwar Dep. Tr.) at 17:14-18:14. Apple's watch development history shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 2551-1 ¶¶183-191, 281-285. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 2551-1 ¶¶177-78, 250-253. And Apple itself elicited the following testimony from Madisetti:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dkt. 2551-12 at 234:25-236-17.

Apple is free to raise its arguments through cross-examining Reed-Arthurs or offering its own evidence. But this is not a basis to exclude Reed-Arthurs' survey. *See*

-7-

*ParkerVision*, 116 F.4th at 1363-64; *Micro Chem.*, 317 F.3d at 1394; *NetAirus*, 2013 WL 12322092 at *3.

### B. Bergman's Opinions Based on Reed-Arthurs' Opinions Are Reliable and Admissible

Apple separately argues that Bergman does not apportion "to account for the value of the unaccused version of the High Heart Rate Notification feature." Mot. at 13. But Reed-Arthurs' conjoint survey "apportioned" for the value of the next-best alternative by determining the value the infringing feature provides ***over and above the value provided by the next-best alternative***. That Apple disagrees regarding the next-best alternative forms no basis to exclude the survey. Apple's mere disagreement with a factual input does not mean that Bergman failed to apportion.

As also discussed above, Reed-Arthurs' feature description apportions for the 2017 feature because her description states the "watch ***confirms*** that your heart rate is above ***or below*** expected boundaries." Dkt. 2551-6 §3.2 (Fig. 1). Neither simple heart monitoring nor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### C. Bergman Can Present His Cost-Savings Opinion Regardless Of The Court's Ruling On The Survey

In a single sentence near the end of its brief, Apple also attempts to exclude Bergman's entire cost-savings approach for HR Notifications. Mot at 14. That sentence states: "And because Mr. Bergman concluded his alternative 'cost savings'-based calculation is ***not*** what the parties would have agreed to base a reasonable royalty on for the High/Low Heart Rate Notifications, he should not be permitted to offer that as an alternative." *Id*. Apple is wrong.

Bergman offered a range of reasonable royalties for each accused feature. Dkt. 2551-5 ¶¶552-554. The cost-savings model determined the costs Apple saved because it was not required to use a bigger battery. *Id.* ¶242. It is the floor of Bergman's range because it reflects the mere cost Apple saves by not needing to use the bigger

Case 8:20-cv-00048-JVS-JDE   Document 2568-2   Filed 08/18/25   Page 12 of 14
Page ID #:244903

battery. *Id*. ¶244. In contrast, the survey provides the upper end of his damages range because it incorporates additional benefits to Apple and its customers. *Id*. ¶554.

Bergman then analyzed the two accused features to determine where in the range the parties would "gravitate" during the hypothetical negotiation. *Id*. ¶553-554. For HR Notifications, he explained that Apple would be willing to spend significantly more than its cost savings to avoid the far larger battery necessary for HR Notifications. He also explained that change would have necessitated significant design changes in addition to the additional battery cost. *Id*. ¶554. For Workout Mode, he conservatively explained that Apple would not be willing to spend much more than its cost savings because the increase in battery size would not impact the overall industrial design. *Id*. ¶553. Thus, Bergman opined that the parties would "gravitate towards" the higher end (survey model) for HR Notifications and lower end (cost-savings model) for Workout Mode. *Id*. ¶¶553-554. He explained that his cost-savings opinion understates the value of a reasonable royalty for either feature, particularly for HR Notifications given the importance of the patented invention to support that feature. *Id*. ¶¶539-541.

Apple's Motion uses Bergman's opinion (the parties would "gravitate towards" the higher end for HR Notifications) to suggest Bergman "concluded" the lower end (cost-savings) for HR Notifications is unreliable. Mot. at 14. But Apple never supports that suggestion. Moreover, Apple ignores that Bergman was merely explaining how to select the best value within his range. It does not eliminate the bottom end of the range, which Bergman will present with or without the survey. Even though Apple should pay more than its cost savings, Bergman appropriately opined that the cost savings is still the minimum floor that Apple would be willing to pay. In fact, Bergman expressly explained that the lower end is a reliable and "conservative" estimate of a reasonable royalty. *See* Dkt. 2551-5 ¶¶270, 541, 544.

### III.  CONCLUSION

For the foregoing reasons, the Court should deny Apple's motion.

Case 8:20-cv-00048-JVS-JDE   Document 2568-2   Filed 08/18/25   Page 13 of 14
Page ID #:244904

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 18, 2025        By: */s/ Adam B. Powell*
          Joseph R. Re
          Stephen C. Jensen
          Sheila N. Swaroop
          Brian C. Horne
          Brian C. Claassen
          Mark D. Kachner
          Adam B. Powell
          Kendall M. Loebbaka
          Daniel P. Hughes
          Douglas B. Wentzel

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 2,831 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

 __ complies with the word limit set by court order dated [date].

Dated: August 18, 2025            By: /s/ Adam B. Powell
                                      Joseph R. Re
                                      Stephen C. Jensen
                                      Sheila N. Swaroop
                                      Brian C. Horne
                                      Brian C. Claassen
                                      Mark D. Kachner
                                      Adam B. Powell
                                      Kendall M. Loebbaka
                                      Daniel P. Hughes
                                      Douglas B. Wentzel

                                      Attorneys for Plaintiffs
                                      MASIMO CORPORATION and
                                      CERCACOR LABORATORIES, INC.