MARK D. SELWYN, SBN 244180
  mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
  joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSEPH J. MUELLER, *pro hac vice*
  joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
  sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
  Ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

BACKGROUND..................................................................................................1

    A.    Apple Timely Discloses And Updates Its Invalidity Contentions.............1

    B.    Apple's Final Invalidity Contentions Identify Six Obviousness Combinations Per Claim, Each Of Which Relies On Product Prior Art...2

ARGUMENT ......................................................................................................6

I.    PLAINTIFFS' REQUESTS FOR SUMMARY JUDGMENT BASED ON THEIR MOTIVATION TO COMBINE AND PRODUCT PRIOR ART ARGUMENTS SHOULD BE DENIED BECAUSE PLAINTIFFS' MOTION TO STRIKE SHOULD BE DENIED .........................6

II.    WHILE APPLE'S OBVIOUSNESS CASE DOES NOT TURN ON PUBLIC USE, WHETHER THE PRODUCT ART WAS IN PUBLIC USE BEFORE JULY 2001 IS A QUESTION OF DISPUTED FACT ...................................................................................7

    A.    Plaintiffs' Arguments Ignore Apple's Invalidity Defenses Under Section 102(b)'s On-Sale Bar And Section 102(g)..................................7

    B.    There Is At Least A Material Question of Fact Over Whether The Product Prior Art Was In Public Use Under Sections 102(a) and (b)....................8

        1.    The MIT Ring Product Was In Public Use Long Before July 2001 8

        2.    The Nonin Onyx 9500 Product Was In Public Use Long Before July 2001 ........................................................................................13

        3.    The Nellcor NPB-40 Product Was In Public Use Long Before July 2001..............................................................................................15

CONCLUSION..................................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**CASES**

4

*ART+COM Innovationpool GmbH v. Google Inc.*,
5
     155 F.Supp.3d 489 (D. Del. 2016) .........................................................11, 14

6

*BASF Corp. v. SNF Holding Co.*,
7
     955 F.3d 958 (Fed. Cir. 2020) ...................................................................7, 8

8

*In re Caveney*,
9
     761 F.2d 671 (Fed. Cir. 1985) ........................................................................7

10

*Ingenico Inc. v. IOENGINE, LLC*,
11
     136 F.4th 1354 (Fed. Cir. 2025) ...............................................................8, 10

12

*Lough v. Brunswick Corp.*,
13
     86 F.3d 1113 (Fed. Cir. 1996) ......................................................................10

14

*Minerva Surgical, Inc. v. Hologic, Inc.*,
15
     59 F.4th 1371 (Fed. Cir. 2023) ................................................................9, 10

16

*Netscape Commc'ns Corp. v. Konrad*,
17
     295 F.3d 1315 (Fed. Cir. 2002) ......................................................................6

18

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
19
     684 F.Supp.2d 699 (E.D. Va. 2010) ........................................................11, 12

20

*Puff Corp. v. SHO Prods., LLC*,
21
     2024 WL 2208929 (C.D. Cal. Apr. 19, 2024)................................................12

22

*Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*,
23
     339 F. Supp. 3d 803 (N.D. Ill. 2018)..............................................................12

24

*Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*,
25
     774 F.3d 968 (Fed. Cir. 2014) ........................................................................7

26

27

28

Wilmer Cutler
Pickering Hale
and Dorr LLP

# INTRODUCTION

The bulk of Plaintiffs' motion for summary judgment concededly depends on their pending motion to strike portions of Dr. Steven Warren's invalidity opinions. Because that motion to strike should be denied, Plaintiffs' requests for summary judgment on Apple's motivation-to-combine and product prior art theories should be denied as well.

Plaintiffs' remaining summary judgment argument—that Apple failed to establish its product art was in public use before the asserted patents' priority date of July 2, 2001—fares no better. For every product that Plaintiffs challenge (MIT Ring, Nonin-Onyx 9500, and Nellcor NPB-40), they fail to account for record evidence that supports Apple's position and at least raises a genuine dispute of fact. For example, Plaintiffs' discussion of whether former MIT researcher Dr. Phillip Shaltis's testimony is adequate to establish public use of the MIT Ring Product ignores percipient witness evidence from Dr. Warren himself and documentary evidence that goes to the same point. Similarly, Plaintiffs' focus on whether the specific Nonin-Onyx 9500 and Nellcor NPB-40 devices that Dr. Warren tested were in public use ignores Dr. Warren's statements that his invalidity opinions stand regardless of whether the testing evidence is considered. In any event, even if Apple were relying solely on Dr. Shaltis's testimony and Dr. Warren's testing, there is ample evidence of public use of each product prior to July 2001 to create a genuine dispute of material fact.

# BACKGROUND

## A.    Apple Timely Discloses And Updates Its Invalidity Contentions

Plaintiffs assert that Apple Watch's Workout Mode and High/Low Heart Rate Notifications features infringe two patents: U.S. Patent Nos. 8,457,703 and 10,433,776. Both patents share a specification and claim "a "low power pulse oximeter." Dkt. 2548-7 ("Warren Opening") ¶¶ 103, 105, 120. As this Court has summarized, "[a]t a high level, both patents relate to … efficiently managing power consumption for" pulse oximeters. Dkt. 2390 at 2. The patents both have a priority date of no earlier than July 2, 2001. Warren Opening ¶¶ 107, 124.

Apple has long maintained that the asserted patents are invalid. In late 2020, Apple served its initial invalidity contentions and—shortly thereafter—successfully sought a stay of Plaintiffs' patent infringement claims pending IPR proceedings. *See* Dkt. 196-1 at 4; Dkt. 220 at 1. This Court lifted its stay on the asserted patents in April 2024 and set a trial schedule. *See* Dkt. 1944. Plaintiffs served supplemental infringement contentions that significantly expanded the scope of their case, and Apple accordingly moved to strike. *E.g.*, Dkt. 1955-1. At roughly the same time, Plaintiffs moved to strike Apple's updated invalidity contentions, alleging *inter alia* that Apple's contentions disclosed too many obviousness combinations and Apple had failed to adequately disclose its motivation to combine theories. Dkt. 1949.

In July 2024, this Court ordered both sides to narrow "the number of asserted claims and prior art combinations" prior to trial. Dkt. 2019 at 14. The Court declined to strike Apple's motivation-to-combine contentions, noting that—although Apple could not rely on undisclosed theories—Apple's expert could "provide additional detail, explanation, and supporting calculations" in the service of the theories already disclosed. *Id.* The parties later stipulated that Apple would narrow its prior art combinations to no more than six combinations per asserted claim by February 18, 2025, and both sides' opening expert reports would be "treated as final infringement and invalidity contentions." Dkt. 2501 at 1. Apple timely provided Plaintiffs with a list of six combinations per claim. Dkt. 2534-6.

**B.** **Apple's Final Invalidity Contentions Identify Six Obviousness Combinations Per Claim, Each Of Which Relies On Product Prior Art**

Apple timely served Dr. Steven Warren's opening expert report—which, again, the parties agreed would constitute the final invalidity contentions—in April 2025. *See generally* Warren Opening. Dr. Warren's report provides that the patents are obvious in light of product prior art that falls under one of three subsections of the pre-AIA Section 102: (1) the products were known or used by others prior to the date of invention

(Section 102(a)); (2) the products were "in public use" or "on sale" more than one year prior to the date of invention (Section 102(b)), and (3) the products were invented by another in the United States and were not abandoned, suppressed or concealed (Section 102(g)). *See* Warren Opening ¶¶ 337-339, 348-350, 377-379.

Consistent with Apple's February 2025 disclosure, Dr. Warren's report identifies six different combinations of prior art that render the asserted patents obvious. Specifically, Dr. Warren relies on three base references—the MIT Ring Product, the Nonin-Onyx 9500 Product, and Nellcor NPB-40 Product—that are each combined with U.S. Patent No. 6,553,242 ("SPO Medical")[1] or considered in view of the general knowledge of a POSITA. Warren Opening ¶ 5. Each base reference is briefly summarized below.

The **MIT Ring Product** is a non-invasive optical pulse oximeter designed to be worn on user's finger, which was designed at the Massachusetts Institute of Technology in connection with a project that began in 1996. Warren Opening ¶¶ 326, 330. Three early iterations of the MIT Ring (including the 1999 double-ring design of the device that Dr. Warren relied upon for his obviousness opinions) are pictured below:



---

[1] The SPO Medical patent discloses an optical signal processing method under which "an energy savings is achieved by reducing the duty cycle of [a] light source … [thereby] reducing the current drain from the battery and extending its useful life." Warren Opening ¶ 425.

*See* Warren Opening ¶ 327.[2]  Dr. Phillip Shaltis, who was a graduate student at MIT and worked on the 1999 double-ring version while the product was being developed, testified that the 1999 double-ring version of the device was accessible to the public prior to July 2001.  *See, e.g.*, Dkt. 2534-9 ("Shaltis Dep.") 67-68, 114-117, 119-120, 208-214.  Dr. Warren himself also observed the MIT Ring Product at a 1999 electrical engineering conference.  Warren Opening ¶¶ 341-345.

The **Nonin-Onyx 9500 Product** is a battery-operated and portable light-based pulse oximeter that Nonin marketed in 1999 as the "World's First Self-contained Finger Pulse Oximeter."  Warren Opening ¶¶ 380-381.  The product was used in the United States as early as 1996 and received FDA clearance on May 1, 2000.  Warren Opening ¶¶ 403-405.  The product is also mentioned in several patents, archived webpages, and a textbook that predate the priority date.  *Id.* ¶ 403.  Dr. Warren also personally used the product in the 1996 timeframe.  Dkt. 2548-10 ("Warren Dep.") 51-52, 118-119, 180.  Images of the product are reproduced below:



---

[2] As Dr. Warren explained, his invalidity opinion for the MIT Ring Product is based on the "1999 double-ring design as it existed at the time of the alleged invention" in July 2001.  Dkt. 2548-9 ("Warren Reply") ¶ 87; *see also infra* pp. 8-12.  This brief and its supporting papers use the term the "1999 double-ring design" or "1999 double-ring version" as shorthand for that opinion.

*See* Warren Opening ¶ 386.  The version of the product that Dr. Warren tested includes a chip stamped with the number "2000," which Dr. Warren has stated "very likely corresponds to the year in which the device was manufactured":



*Id.* ¶ 387.

The **Nellcor NPB-40 Product** is a portable handheld monitor and attached finger-clip sensor designed to be worn on a user's fingertip.  Warren Opening ¶¶ 351, 359.  The product received FDA clearance on December 13, 1996 and was discussed in service and operator manuals in at least 1998, 1999, and 2001.  *Id.* ¶¶ 374-375.  Dr. Warren also had personal knowledge of the product prior to the priority date.  Warren Dep. 51, 165.  An image of the product appears below:



Warren Opening ¶ 356.  The version of the product that Dr. Warren tested includes the number "1997" after the serial number, indicating the unit was manufactured in 1997:



*Id.* ¶ 358.

## ARGUMENT

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1319 (Fed. Cir. 2002).  "When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor." *Id.*  "Summary judgment is improper 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## I.    PLAINTIFFS' REQUESTS FOR SUMMARY JUDGMENT BASED ON THEIR MOTIVATION TO COMBINE AND PRODUCT PRIOR ART ARGUMENTS SHOULD BE DENIED BECAUSE PLAINTIFFS' MOTION TO STRIKE SHOULD BE DENIED

Plaintiffs concede that two of their three arguments for summary judgment can only succeed if this Court grants Plaintiffs' pending motion to strike.  *See* Mot. 1; *see also id.* 3-4.  For all the reasons explained in Apple's opposition to Plaintiffs' motion to strike, Apple properly preserved its motivation-to-combine and product prior art theories.  Because Plaintiffs have failed to establish that all of Apple's motivation-to-

combine and product prior art theories should be struck, summary judgment should be denied on both these grounds.

## II. WHILE APPLE'S OBVIOUSNESS CASE DOES NOT TURN ON PUBLIC USE, WHETHER THE PRODUCT ART WAS IN PUBLIC USE BEFORE JULY 2001 IS A QUESTION OF DISPUTED FACT

### A. Plaintiffs' Arguments Ignore Apple's Invalidity Defenses Under Section 102(b)'s On-Sale Bar And Section 102(g)

At the threshold, Plaintiffs are wrong that "Apple's obviousness theories *all depend*" on Apple showing its prior art was "known or used publicly." Mot. 4.[3]  Dr. Warren opined that the MIT Ring, Nonin Onyx 9500, and Nellcor NPB-40 products all qualify as prior art under pre-AIA Section 102(g) because the products were (1) made in the United States prior to the asserted patents' priority date by someone other than the asserted patents' named inventor and (2) not abandoned, suppressed, or concealed by that person.  Warren Opening ¶¶ 302, 339, 350, 373, 379, 403; *see Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 976-977 (Fed. Cir. 2014) (prior art under Section 102(g) can be "secret" so long as it is not "abandoned, suppressed, or concealed after reduction to practice").  Dr. Warren also provided opinions that the Nellcor NPB-40 and the Nonin Onyx 9500 products were both on sale within the meaning of Section 102(b) before the priority date.  Warren Opening ¶¶ 373-374, 403-405; *see BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020) (on-sale bar applies when the item is "the subject of a commercial offer for sale and is ready for patenting"); *In re Caveney*, 761 F.2d 671, 675 (Fed. Cir. 1985) (holding that "a sale or offer to sell" made before the critical date constitutes grounds for invalidity under § 102, even if "kept secret from the trade").  Accordingly, Plaintiffs' motion does not affect these aspects of Apple's obviousness defense.

---

[3] Internal quotation marks and citations omitted and emphasis added unless noted.

Wilmer Cutler
Pickering Hale
and Dorr LLP

**B.** **There Is At Least A Material Question of Fact Over Whether The Product Prior Art Was In Public Use Under Sections 102(a) and (b)**

For purposes of this motion, Apple does not dispute that a reference qualifies as prior art under pre-AIA Sections 102(a) or (b) if it was in public use before the priority date. *See BASF Corp.*, 955 F.3d at 964, 966 (holding that section 102(a) requires "use which is accessible to the public" and 102(b) requires use that is "not purposely hidden").[4]  The public use analysis is "replete with factual considerations" and considers factors such as "the nature of the activity that occurred in public, public access to and knowledge of the public use, existence of an actual or implied confidentiality obligation, and the relevant skill and knowledge of observers." *Id.* at 967.  Moreover, whether the reference was in public use can be established by circumstantial evidence, meaning a reference can qualify as prior art even if there is no direct evidence that "anyone in this country (or anywhere) ever actually … used it." *Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1361-1362 (Fed. Cir. 2025).

**1.** **The MIT Ring Product Was In Public Use Long Before July 2001**

As discussed, the MIT Ring Product is rooted in design work that began in 1996. *See supra* pp. 3-4.  Dr. Shaltis, who worked on the project as a graduate student, has provided Dr. Warren with details on the structure, functionality, and public use of the 1999 double-ring version of the MIT Ring Product.  *See* Warren Opening ¶¶ 327-328. Dr. Warren also personally observed the MIT Ring Product before the priority date.  Dr. Warren attended a 1999 electrical engineering conference in Atlanta, Georgia, where he viewed a poster presentation about the MIT Ring Product, sketched details of the product's design in his notebook, spoke to the MIT presenters about the product, and handled a prototype of the product.  *Id.* ¶¶ 341-345.  The documentary record also

---

[4] As *BASF* makes clear, the tests for Sections 102(a) and 102(b) are worded somewhat differently.  While both tests lead to the same result here, Apple reserves the right to argue the two legal tests are different in future filings to the extent Plaintiffs rely on new or different facts.

Wilmer Cutler
Pickering Hale
and Dorr LLP

contains other evidence of public disclosures of the MIT Ring Product prior to July 2001, including in articles and in a lecture given by the head of the MIT research team in April 2000 that is still available online today.  *Id.* ¶¶ 339-340, 346.

Rather than address this evidence, Plaintiffs argue only that Apple failed to identify which particular iteration of the MIT Ring Product (and which features of that device) were in public use prior to the priority date.  Mot. 6-9.  Plaintiffs' arguments are meritless and—at absolute most—merely highlight a material dispute between Dr. Warren and Plaintiffs' own expert (Dr. Madisetti) that a jury should resolve.

*First*, Dr. Warren's reports expressly identified the MIT Ring Product at issue: "[T]he 1999 'double-ring' version of the MIT Ring Product."  Warren Opening ¶ 329; Warren Reply ¶ 87; *supra* n. 2.  And Plaintiffs do not even mention Dr. Warren's "own personal observations at [a] 1999 … conference" where the MIT Ring Product was publicly demonstrated.  Warren Reply ¶ 107.  Dr. Warren's notes from the conference include "a drawing of the double-ring version of the MIT Ring Product" and included a summary of its components and features.  *Id.* (discussing APL-MAS_03485369); Warren Opening ¶ 344.  Indeed, Dr. Warren was handed "the physical version of the MIT Ring Product to inspect."  Warren Reply ¶ 111.  Dr. Warren was obviously not "under [any] limitation, restriction, or obligation of confidentiality" when shown the MIT Ring Product in a public exhibition hall at a scientific conference.  *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1378 (Fed. Cir. 2023) (affirming that public display of medical device at a conference constituted "public use"); *see* Warren Opening ¶ 342.

Plaintiffs also ignore the existence of a public lecture from April 2000 given by the head of the MIT lab that discussed the double-ring design, included a picture of the design in a slide, and noted that the MIT team was "deploying about 100 ring sensors at various locations" at the time of the lecture.  Warren Opening ¶ 346.  This evidence of distribution of the MIT Ring Product well over a year before the priority date is at least

strong circumstantial evidence of public use, which is all that is required, *see Ingenico*, 136 F.4th at 1361.

Dr. Warren's statements and the April 2000 lecture (not to mention the various articles regarding the MIT Ring Product, *see supra* pp. 8-9) are more than enough evidence standing alone to establish public use.[5]  But Plaintiffs are also wrong when they suggest Dr. Shaltis's testimony was insufficiently precise.  Like Dr. Warren, Dr. Shaltis stated that the MIT Ring Product he was most familiar with was the double-ring version that was used before July 2001.  Shaltis Dep. 206.  He further testified that (1) the double-ring version was pictured on MIT's publicly available website when he joined the MIT team in 2000, *id.* 207; *see also id.* 68 ("it would be on the main MIT page as, here is a research in the spotlight"); (2) he likely demonstrated the MIT Ring Product to lab visitors five to ten times prior to July 2001, *id.* 208-211; and (3) the MIT lab gave regular "updates on the progress of the ring sensor" to the lab's sponsors (which may or may not have been confidential), *id.* 68, 212; *see also* Warren Reply ¶ 108.  Dr. Shaltis also testified that while he personally did not use the MIT Ring Product outside of the lab until 2002, one of his colleagues had conducted "a study outside the lab" with a prototype that likely used the double-ring design "before 2000."  Shaltis Dep. 118-120; Warren Reply ¶ 114.[6]

That Dr. Shaltis cannot recall every detail of events that occurred nearly a quarter century ago is a basis for cross-examination, not grounds for summary judgment. Plaintiffs' cited cases are not to the contrary, as they both involve scenarios where there

---

[5] Plaintiffs' assertion (at 7) that the MIT Ring Product was "never a commercial 'product'" is a red herring.  "[L]ack of commercialization … is not dispositive of the public use question," *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1121 (Fed. Cir. 1996), and the Federal Circuit has recently affirmed the **grant** of summary judgment of public use when a product was shown at a conference, *Minerva*, 59 F.4th at 1378-1380.

[6] Plaintiffs are wrong (at 8) that Dr. Shaltis "could not remember any specifics" of the prototype shared with sponsors.  Even in the deposition exchange that Plaintiffs cite, Dr. Shaltis observed that "the double ring" design was "consistent" with the prototype design Dr. Warren considered and that the boards "were very, very similar, if not the same."  Shaltis Dep. 67.

Wilmer Cutler
Pickering Hale
and Dorr LLP

was simply no evidence of public use rather than (as here) a witnesses' failure to remember certain details about that use. *See Netscape Commc'ns Corp. v. ValueClick, Inc.*, 684 F.Supp.2d 699, 720 (E.D. Va. 2010) (vaguely worded email did not show "actual transfer of the patented technology"); *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F.Supp.3d 489, 502 (D. Del. 2016) (witness "could not recall" whether certain software was presented at conference and no other evidence supported assertion that software demonstration occurred). And to the extent that Plaintiffs' argument boils down to the assertion that Apple was required as a matter of law to rely on a single prototype that employs a common design, they identify no authority that supports such a position.

*Second*, Dr. Warren's reports—and the substantial evidence he relies upon—establish that the invalidating features of the MIT Ring Product were in public use prior to July 2001. *Compare* Mot. 6-8 *with*, *e.g.*, Warren Opening ¶¶ 439-549, 782-879 (explaining why 1999 double-ring MIT Ring Product is invalidating). For example, Dr. Warren's notes from the 1999 conference describe the relevant features he observed as a member of the public, *see supra* p. 9, and Dr. Warren identified a July 2001 research paper containing "photographs of the MIT Ring Product" and describing its features as it existed before July 2001, Warren Reply ¶ 117.

While Dr. Warren's opinions and the underlying documentary evidence are sufficient to prove public availability—or at the very least raise a question of material fact—Plaintiffs are wrong (at 6-7) that Dr. Shaltis "was unable to identify which particular prototype(s) existed before July 2001" and had the relevant features/functionality. Dr. Shaltis testified that the specific physical prototype that Dr. Warren tested was the 1999 double-ring design, and was "a similar vintage" to the 1999 version pictured in the slideshow above—it had the "same double ring" and only

"slightly different … circuit boards."  Shaltis Dep. 204-205; *accord id.* 85.[7]  While Dr. Shaltis acknowledged that "there might have been a different **sensor band**" (e.g., one made of a "different" "material") added to the prototype after 1999, *e.g.*, Shaltis Dep. 58, Dr. Warren's invalidity case is not affected by any such changes to the band, *e.g.*, Warren Opening Report ¶¶ 327-336.[8]

Plaintiffs' cited cases (at 5, 8, 11) do not support their position that summary judgment should be granted on public use on the MIT Ring Product or any of Apple's other product references.  Rather, they stand only for the proposition that a product cannot be prior art is if there is "**no** evidence" that the product had the requisite functionality before the priority date.  *See Puff Corp. v. SHO Prods., LLC*, 2024 WL 2208929, at *25-26 (C.D. Cal. Apr. 19, 2024); *see also Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 339 F.Supp.3d 803, 837 (N.D. Ill. 2018) (purported system reference did not quality as prior art because "it is not clear … whether it was ever finished"); *Netscape Commc'ns*, 684 F.Supp.2d at 708 ("[n]o record evidence" that reference (a test version of a web browser) had the requisite functionality).  Dr. Warren's statements and the documentary record standing alone confirm that the MIT Ring Product's relevant functionality (e.g., the double-ring design) was in public use before the priority date and Dr. Shaltis's testimony further supports that conclusion.  *See supra* pp. 8-12.

---

[7] In any event, Dr. Warren "did not limit [his] invalidity opinions solely to the physical prototype of the MIT Ring Product provided by Dr. Shaltis."  Warren Reply ¶ 176; *id.* ¶ 89 (While the prototype was "a useful physical point of reference," Dr. Warren "did not limit [his] analysis … just to that specific prototype."); *see also supra* n. 2.

[8] Plaintiffs again misstate the record (at 7-8) when they assert that Dr. Shaltis "admitted his answers did not refer to a particular device."  Dr. Shaltis testified merely that when he was asked questions about a particular version of the MIT Ring device, his responses were about that same version.  Shaltis Dep. 239.

### 2.    The Nonin Onyx 9500 Product Was In Public Use Long Before July 2001

As discussed, the Nonin Onyx 9500 Product was used in the United States as early as 1996, received FDA clearance in May 2000, and is mentioned in multiple publications (including webpages and patents) from before July 2001.  *See supra* pp. 4-5.  Tellingly, neither Plaintiffs nor Dr. Madisetti disputes that *a* Nonin Onyx 9500 Product was used and sold in the United States before the priority date.  *See* Warren Reply ¶ 139; Mot. 9-11.  Plaintiffs' arguments about whether that product had the requisite functionality are meritless and do not entitle them to judgment as a matter of law.

*First*, Plaintiffs are wrong (at 9) that Dr. Warren failed to identify documentary evidence regarding the Nonin Onyx 9500 Product's functionality prior to July 2001.  While Plaintiffs focus on the fact that Dr. Warren quotes from an FDA filing created in 2005 that described a Nonin 95**50** Model, Mot. 9, Dr. Warren also cites numerous other documents that are undisputedly from before the priority date, *see* Warren Reply ¶ 132 (discussing Nonin webpages from 1997 and 1999).  Plaintiffs ignore Dr. Warren's statements that these webpages standing alone "are sufficient to support [his] description" of the Nonin Onyx 9500 Product regardless of whether the FDA filing is considered.  *Id.* ¶ 131.  In any event, Plaintiffs have no response to Dr. Warren's explanation for why the FDA filing is probative: "[T]he FDA determined that the Nonin Model 9550 Onyx II Finger Pulse Oximeter is '***substantially equivalent*** to the [Nonin Onyx 9500 Product] in terms of accuracy, functional design and principles of operation.'"  *Id.* ¶ 132.  While Plaintiffs may subjectively disagree with this statement, they cannot reasonably deny that it creates a genuine dispute of material fact.

*Second*, Plaintiffs erroneously contend (at 9-10) that Dr. Warren did not present "any evidence" that the version of the Nonin Onyx 9500 Product he tested had the same functionality as the device that existed before the priority date.  Again, Plaintiffs ignore crucial aspects of Dr. Warren's report.  In particular, Dr. Warren made clear his invalidity opinions for the product do not rise and fall with the results of his testing—he

1    simply used the testing to "**confirm** my understanding of certain details."  Warren Reply

2    ¶ 140.  Put differently, there is a material dispute regarding whether the Nonin Onyx

3    9500 Product was in public use before July 2001 regardless of whether the finder-of-fact

4    considers the testing evidence.

5         Regardless, Dr. Warren explained that he believed the tested device predated the

6    priority date because the device (1) "operates in a manner consistent with the description

7    provided in printed materials [from before July 2001]," (2) "contains a chip labeled

8    2000," which "very likely corresponds to the year in which the device was

9    manufactured," and (3) "does not appear to contain any replacement parts or to otherwise

10   have been modified."  Warren Opening ¶ 387; Warren Reply ¶¶ 140-141; *see also*

11   Warren Dep. 51 (Warren testifying he was "personally familiar" with the Nonin Onyx

12   9500 pulse oximeter because "it is the same pulse oximeter that I used for my work at

13   Sandia National Laboratories in the 1996 time frame"); *id.* 118, 180 (similar).  Plaintiffs

14   describe Dr. Warren's statements as "speculation," but they fail to explain why a jury

15   could not rely on this type of circumstantial evidence—particularly given that all

16   reasonable inferences must be drawn in Apple's favor at summary judgment.[9]

17        Plaintiffs' remaining arguments about the date of the tested device fare no better.

18   For example, that the device's chip is labeled as "REV G" does not provide insight into

19   when the device was manufactured.  While Plaintiffs are right (at 10) that Nonin only

20   produced a schematic for a REV F chip in response to Apple's subpoena for prior art

21   "before July 2, 2001," nothing in Nonin's response suggests that REV F was the last

22   chip produced before the priority date.  Rather, Nonin was unable to conduct a thorough

23   search "due to the passage of 23 years and document storage/retention issues."  Warren

24   Reply ¶ 142.  Plaintiffs' observation (at 10) that Nonin upgraded Onyx 9500 software

25   after 2001 to improve the device's battery life says nothing about whether the specific

---

[9] Plaintiffs' only cited authority for its "speculation" argument involved a very different
scenario, where the defendant failed to "identify **any evidence**" supporting its position.
*ART+COM*, 155 F.Supp.3d at 502.

Wilmer Cutler
Pickering Hale
and Dorr LLP

device that Dr. Warren tested postdates the priority date.  While Plaintiffs (at 10) fault Apple/Dr. Warren for failing to conduct additional investigation into the tested device's origins (e.g., a further Nonin subpoena), they provide no explanation for why the depth of Apple's investigation negates the evidence Dr. Warren did supply.

### 3.    The Nellcor NPB-40 Product Was In Public Use Long Before July 2001

As discussed, the Nellcor NPB-40 Product received FDA clearance in 1996 and was discussed in printed publications (manuals and a journal publication) from 1998, 1999, and 2001.  *See supra* pp. 5-6.  As with the Nellcor product, neither Plaintiffs nor Dr. Madisetti disputes that *a* Nellcor NPB-40 product was used and sold in the United States on sale prior to July 2001.  Warren Reply ¶ 126; Mot. 11.

Plaintiffs' challenge (at 11) as to whether the Nellcor NPB-40 product Dr. Warren tested predates the priority date is similar to the argument Plaintiffs raise regarding the Nonin Onyx 9500 Product and fails for the same basic reasons.  Once again, for example, Plaintiffs ignore that Dr. Warren made clear that his testing only "confirm[s]" his "understanding of certain details concerning how *all* Nellcor NPB-40 Products worked at least one year before the claimed priority date."  Warren Reply ¶ 127.  In other words, Dr. Warren's invalidity opinions stand regardless of whether the testing evidence is considered.

In any event, Dr. Warren identified circumstantial evidence supporting his opinion that the tested device predated the priority date, including (1) "the device operates in a manner consistent with the descriptions provided in the prior art user manuals," (2) "the device includes components marked with labels bearing dates in the 1990s," and (3) "the device does not appear to contain replacement parts or to have been altered or modified."  Warren Reply ¶ 128; *see also* Warren Dep. 51 (Warren testifying he was "personally familiar" with the Nellcor NPB-40 product and "[it] is a standard product that has been in existence … for almost 30 years).  While Plaintiffs label this evidence "speculation," they present no contrary testimony and a jury drawing all

inferences in Apple's favor could reasonably rely on Dr. Warren's opinions.  Finally, although Plaintiffs again fault Apple/Dr. Warren for failing to further investigate the origins of the tested devices, they fail to explain why the fact that Apple could have presented **more** evidence renders the evidence Apple did present insufficient as a matter of law.

## CONCLUSION

Plaintiffs' partial motion for summary judgment should be denied in full.

Dated:  August 18, 2025                    Respectfully submitted,


By:  */s/ Mark D. Selwyn*

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP



*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Apple Inc., certifies that this brief contains 4765 words, which:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated: _August 18, 2025_          Respectfully submitted,


By: _/s/ Mark D. Selwyn_____

MARK D. SELWYN
AMY K. WIGMORE
JOSHUA H. LERNER
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP