UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, et al., Plaintiffs, vs. APPLE, INC., Defendant.

CERTIFIED TRANSCRIPT

SACV-20-00048-JVS

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

October 20, 2025

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(612) 804-8655

APPEARANCES OF COUNSEL:

For the Plaintiffs:

JOSEPH R. RE
STEPHEN C. JENSEN
BRIAN CHRISTOPHER CLAASSEN
SHEILA N. SWAROOP
DOUGLAS BRYANT WENTZEL
NICHOLAS MATTHEW ZOVKO
ISABELLA C. PESTANA
KNOBBE MARTENS OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

BRIAN C. HORNE
MARK D. KACHNER
KNOBBE MARTENS OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450

ADAM B. POWELL
KNOBBE MARTENS OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
(858) 707-4000

For the Defendant:

JOSEPH J. MUELLER
SARAH R. FRAZIER
WILMER CUTLER PICKERING HALE & DORR, LLP
60 State Street
Boston, MA 02109
(617) 526-6000

MARK D. SELWYN
THOMAS GREGORY SPRANKLING
Wilmer Cutler Pickering Hale & Dorr, LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6031

**AMY K. WIGMORE**
**BRITTANY B. AMADI**
**WILMER CUTLER PICKERING HALE & DORR, LLP**
**2100 Pennsylvania Avenue N.W.**
**Washington, D.C. 20037**
**(202) 663-6096**

**KENNETH G. PARKER**
**HAYNES & BOONE, LLP**
**600 Anton Boulevard, Suite 700**
**Costa Mesa, CA 92626**
**(949) 202-3014**

**ALSO PRESENT:**

**TUCKER TERHUFEN**
**Apple In-House Counsel**

10:42

10:42

10:42

10:42 SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 21, 2025; 11:00 A.M.

THE CLERK: Calling Item No. 2, SACV-20-00048-JVS, Masimo Corporation, et al., versus Apple, Inc.

Counsel, please state your appearances for the record.

11:00

MR. RE: Good morning, Your Honor. Joseph Re from Knobbe Martens for Masimo.

THE COURT: Good morning.

MR. RE: With me are my colleagues all from Knobbe Martens: Brian Claassen, Brian Horne, Sheila Swaroop, Steve Jensen, Adam Powell, Doug Wentzel, Mark Kachner, Isabella Pestana, and Nick Zovko.

11:00

THE COURT: Good morning.

Did you skip somebody?

11:01 MR. RE: I definitely did not skip anybody.

THE COURT: Okay. Good morning.

MR. MUELLER: Good morning, Your Honor. Joe Mueller of WilmerHale on behalf of Apple. With me are Sarah Frazier.

11:01 THE COURT: Good morning.

MR. MUELLER: Amy Wigmore.

THE COURT: Good morning.

MR. MUELLER: Mark Selwyn, Tom Sprankling.

THE COURT: Good morning.

11:01 MR. MUELLER: All from WilmerHale. And co-counsel

11:01 Ken Parker.

THE COURT: Good morning.

MR. MUELLER: And from Apple, Tucker Terhufen.

THE COURT: Good morning. Welcome.

11:01 Well, I want to begin with good news. We have money to do jury trials. We don't have the money to do a lot of other things, but we have money to do that. So November 4 is a good date, a go date.

Why don't we take up the motions first. On which 11:01 would you like to be heard?

Mr. Claassen.

MR. CLAASSEN: Your Honor, I propose we follow the Court's calendar, and the first thing that I had on calendar was Plaintiffs' MIL No. 1.

11:02 THE COURT: Right.

MR. CLAASSEN: Masimo believes the tentative is correctly decided, and we'll respond to any arguments from Apple.

THE COURT: Okay.

11:02 Mr. Mueller.

MR. MUELLER: Yes, Your Honor.

So there's a couple issues that Motion In-Limine No. 1 touched on that we wanted to raise with Your Honor. They go beyond Motion In-Limine No. 1 insofar as they 11:02 intersect with the jury instructions in certain respects,

11:02 but we think it would make sense to discuss them now because they are certainly a part of Motion In-Limine No. 1 and, in particular, the issues concerning "patient" and "patient monitor," the terms in the claims that Your Honor has analyzed not only in the context of this motion in-limine, but also the summary judgment decision and so on.

So we had a couple discrete issues we wanted to raise with Your Honor. First, with respect to Your Honor's analysis of the plain meaning of those terms, we fully agree with Your Honor's analysis of what those terms mean and what their plain meaning is, so we have no dispute or quarrel with the substance of Your Honor's analysis of "patient" and "patient monitor." We think those fairly capture the plain meaning of those terms as corroborated by various statements made by Masimo in the patent specification as well as the IPR proceedings and the like, so we have no dispute on the substance.

We do continue to think that it would benefit the jury to have an encapsulation of Your Honor's interpretation of those terms -- or Your Honor's memorialization of the plain meaning I think is a better way to put it. And the reason for that, Your Honor, is we do think that --

THE COURT: Well, have you sought a stipulation as to the construction?

MR. MUELLER: What we have done, Your Honor, is

11:04 the equivalent. We proposed with Masimo jury instructions that capture what we believe to be Your Honor's guidance on those terms, and we would propose that be given to the jury as part of the jury instructions. We think it would be 11:04 useful to give the jury that at the outset of the trial, something they would have in their binders along with the patent itself, so that they know what the patent is, and they have Your Honor's guidance as to the meaning of certain terms. So we have raised that in the context of jury 11:04 instructions at some length with Masimo, and we continue to think that would be an appropriate place to include for the jury's benefit Your Honor's guidance on those terms.

So that's our first point, Your Honor. We agree with the substance. We think that substance is important to 11:04 the case. It's really at the heart of this case in terms of what remains to be adjudicated, and we think having the jury have that guidance would be important.

Again, the reason why we think it's important, Your Honor, is we do expect Dr. Madisetti in particular to 11:05 be diverging from that, and we think that having that touchstone in terms of the actual guidance from the Court as to the plain meaning would be a useful --

THE COURT: There's a difference between guidance from the Court, namely, the constructions, and factual 11:05 discussions about what these terms mean in the ordinary

course. I don't know that I'm willing to go beyond constructions in the juror notebook. But if you have an agreed -- basically an agreed construction, I'll add it, but I'm not inclined to do what you suggested either in opening instructions or in the notebook.

MR. MUELLER: Well, to be clear, Your Honor, I'm just proposing the construction.

THE COURT: Well, fine.

MR. MUELLER: And nothing more than that. So what we're envisioning would be, you know, for "patient" and "patient monitor," essentially a sentence, or even a phrase, capturing -- using language of Your Honor from the opinions, what you have said about those terms. So it would be the functional equivalent of a construction for the jury, not the application of the facts.

THE COURT: Okay.

MR. MUELLER: So we can continue to meet and confer on that, Your Honor, but I just wanted to apprise Your Honor that --

THE COURT: Well, at present, I'm not going to include that in the initial instructions or as a quasi-construction in the notebooks.

MR. MUELLER: Understood. I just wanted to let Your Honor know that that's our position.

THE COURT: Fine. Okay.

MR. MUELLER: The second related point, Your Honor, which, again, I think is implicated by Motion In-Limine No. 1 in your discussion of "patient" and "patient monitor," but it continues later in other motions in-limine, including our motions in-limine, is the ability of Dr. Madisetti in particular to rely on materials in support of his opinion that the Apple Watch accused features are patient monitor features. I think it makes sense to raise that now, Your Honor, even though it goes beyond Motion In-Limine No. 1 if Your Honor would indulge me on this because it's tied into the same constellation of issues in terms of what is and what is not a patient monitor.

The problem from our perspective is this. Your Honor has indicated that Dr. Madisetti can rely on certain statements by physicians, and those are statements by physicians, for example, that have been offered to the International Trade Commission during the stage of the International Trade Commission proceeding between the parties where the public was offered the ability to make statements that bear on the public interest. Many of those physicians have no affiliation with Apple whatsoever, but they're offering statements in support of their perspective that Apple Watch had, you know, health and wellness benefits that the public should not be deprived of.

To be clear, they were not dealing with the issue

11:07 of is Apple Watch a patient monitor or not? The problem, Your Honor, is we see this aspect of your motion in-limine decisions as potentially in conflict with your decision at Daubert to preclude Dr. Raja, a physician that we have 11:08 retained for this case to offer opinions to the jury on whether Apple Watch, the accused features, are patient monitor features.

With Your Honor's permission, I can hand Your Honor a copy of Dr. Raja's report that directly responds to 11:08 the Dr. Madisetti materials at issue in the motions in-limine. I can hand it up if Your Honor would permit me.

THE COURT: We're getting pretty far afield from the motions.

MR. MUELLER: Well, this is part of the motions. 11:08 It's not Motion In-Limine No. 1, but it's another patient monitor issue. It is -- I think we're on page -- it's No. 2. Yeah, it's No. 2 for the record, and this is on page -- sorry, Your Honor. Just one moment.

May I pass this up while we're getting the exact 11:09 page number?

THE COURT: Sure.

(Document handed to the Court)

MR. MUELLER: Your Honor, what I just handed up is Dr. Raja's report responding to Dr. Madisetti's citation of 11:09 evidence, and this is -- sorry, I should have the line cite

here for Your Honor. It's page 6 of your motion in-limine decision.

If you look at the top paragraph on page 6, Your Honor, you say: "As to the ITC and CBP proceedings, the identified statements made by Apple during the proceedings are relevant to whether the accused Apple Watch is a patient monitor. Madisetti may reference statements from doctors in these proceedings in support of his opinion that the Apple Watch is a patient monitor within the meaning of the '776 Patent," and you continue.

And there's a couple points, Your Honor. So this is part of the motion in-limine, but it intersects with the patient monitor issue again, and here's our concern. First of all, those statements were not by Apple. Many of those were independent physicians who were offering statements of their own. The second is those statements, you know, had utterly nothing to do with the '776 Patent. They were offered in a different proceeding with different patents. Moreover, they were offered for different purposes, you know, whether or not the public interest supported or did not support banning the exclusion of Apple Watch based on the patent assertions made in that case.

Here, we take from what Your Honor is saying, again, at the top of page 6, to be that the gist of those statements can be used by Dr. Madisetti to support his

opinion that the accused features here are a patient monitor within the meaning of the patent at issue here. So we have Dr. Madisetti, who's an engineering professor, taking physician statements from a different case and using those to support his opinion on a patient monitor.

Dr. Raja, who's a medical physician, has looked at those exact statements. If, for example, Your Honor were to look at paragraph 93 of his report that I handed up -- it's highlighted in yellow -- he's taking on exactly this material.

THE COURT: Look, if you're couching this as a reconsideration of the Court's earlier ruling with Dr. Raja, fine, but present it as such. I'm not going to take it up in the middle of these motions in-limine.

MR. MUELLER: Well, Your Honor, this is a new fact that we didn't have until we received your opinion on Friday, and --

THE COURT: Well, I'm not going to take up a Motion for Reconsideration in the middle of this. Your position may have merit, and I'm not ruling on that, but this isn't the procedural way to present it.

MR. MUELLER: Well, let me ask Your Honor in terms of a --

THE COURT: This isn't the procedural way to present it.

MR. MUELLER: Okay. Well, I'd say two things, Your Honor. With respect to this particular motion in-limine decision, the issue that is before Your Honor today, the tentative, paragraph six, we don't see how that can stand in light of the summary judgment order precluding Raja. So we would respectfully submit that either that needs to be stricken and Dr. Madisetti can't refer to those materials, or we would ask for the opportunity to seek reconsideration of Dr. Raja.

Otherwise, we're left with a situation where Dr. Madisetti is going to refer to physician statements from another case involving different patents and say that those statements support concluding the Apple Watch is a patient monitor. And here we have a physician who's offered opinions in this case -- in this case -- not being allowed to testify, including in response to those exact same materials. So it would create a stilted record, and we believe for no good reason.

So again, we'd ask that either this be stricken, the paragraph at the top of page 6, that Dr. Madisetti not be allowed to refer to those materials, or if he is, we should be allowed to respond, including with an expert who's analyzed those precise materials for purposes of this case.

Dr. Raja's opinions have greater relevance to this case than those materials. Yet, if you're going to

preclude -- we just don't think it's consistent logically to have the two. So we would ask for either this order to be changed or for the opportunity to seek reconsideration of the previous order.

THE COURT: Okay.

MR. MUELLER: And with respect to that process, Your Honor, again, if it would be helpful, we're happy to bring Dr. Raja here and have him offer an oral proffer as to what he would say on this very material.

THE COURT: It can't be outside his report.

MR. MUELLER: A hundred percent it would not be. In fact, it would rely on, for example, paragraph 93 of his report, which a full copy of his report is before Your Honor. We have highlighted certain sections that deal with these issues. And as you'll see, paragraph 93 and the ones that follow deal specifically -- specifically -- with the materials that Dr. Madisetti is relying on that you have cited at the top of page 6.

THE COURT: I'll go back and take a look at the earlier ruling on Raja's testimony in deciding this point.

MR. MUELLER: Understood. Thank you, Your Honor. That's all we had on No. 1.

THE COURT: Okay.

MR. MUELLER: So we had a couple of other issues, but I'll let Masimo --

THE COURT: Mr. Claassen.

MR. CLAASSEN: Well, Your Honor, Mr. Mueller just said that was Motion In-Limine No. 1. I think we bounced around between three different MILs. Procedurally, these MILs had nothing to do with Dr. Madisetti, the ones that Mr. Mueller was addressing. First, the Daubert challenge was to Raja and Carter, not Madisetti. MIL No. 1 was addressing Apple witnesses, not Masimo's MIL No. 1. It was addressing Apple witnesses and not Dr. Madisetti.

So whatever Mr. Mueller is talking about here is not in the context of at least Masimo's MILs. I'll leave it to Ms. Swaroop to address Apple's MIL No. 1, which is the real point Mr. Mueller seemed to have made.

But fundamentally, Dr. Raja was not a POSITA, and that was the basis. So it's his expertise as a so-called expert on claim construction and on infringement that was the basis for the exclusion, and nothing about that has changed. Your final order is correct on that.

THE COURT: Okay.

Ms. Swaroop.

MS. SWAROOP: Your Honor, if I could just respond to the point from Mr. Mueller that I think he was making regarding Apple's MIL 1 in your tentative at page 6 about the statements from the ITC proceeding. These statements were by physicians, but the point that we made to the Court

is that these were statements that were adopted by Apple and constitute adopted admissions and therefore are admissible. And we cited two cases to Your Honor. One was your Glaukos case, where there was an article that one party relied upon, and it was -- you permitted the other party to also bring that into evidence. And the second was a GenPro case from the Southern District of California.

So that's I think the difference here, that these are physician statements that were submitted to a government agency that Apple then relied upon to make their public interest arguments.

THE COURT: Okay.

MR. MUELLER: May I respond briefly?

THE COURT: Very.

MR. MUELLER: So to address the point that Mr. Claassen made about a person of ordinary skill, there's zero evidence -- zero -- that any of the physician statements were authored by persons of ordinary skill in the art for the '776 Patent. Again, that --

THE COURT: Isn't that a bit of a red herring in this context?

MR. MUELLER: I'm not sure why it would be, Your Honor. What Masimo is asking permission to do is to have Dr. Madisetti catalog physician statements and to say, see, ladies and gentlemen, these are physicians saying this is a

patient monitor when they weren't saying that, and they weren't even looking at the '776 Patent.

We have a physician -- a physician -- who's looked at this precise issue for this case who's precluded by your Daubert ruling. It's going to create a slanted record where they can say they have physician evidence and we don't, and that's just not true. It's absolutely not true. We have a physician who would testify live on the stand about why this is not a "patient monitor" under the plain and ordinary meaning of that term, and would respond to the evidence that Dr. Madisetti has cataloged from the perspective of a medical physician, and Your Honor has precluded that person. To allow them then to still cite physician testimony when our physician is precluded would create a one-sided record for no reason.

THE COURT: I have your point. Let's move on.

MR. CLAASSEN: Your Honor, I'm moving on to Masimo's MIL 2. We also believe that MIL 2 is correctly decided.

MR. MUELLER: So with respect to No. 2, Your Honor, this is the motion in-limine directed to evidence -- well, let me back up. For MIL 2, we have nothing beyond what we have said previously on "patient monitor" and "patient." We think that the construction should be given to the jury. And we have the Raja issue that we discussed

previously, but nothing further beyond that. Many of these issues overlap, but we have nothing further on that constellation of "patient" and "patient monitor" issues.

THE COURT: Okay.

MS. POWELL: Good morning, Your Honor.

On Masimo's MIL 3, we also believe the tentative is correct and would submit subject to responding to Apple.

MR. MUELLER: We have nothing further on this one, Your Honor.

I will preview that with respect to our motion in-limine on trade secret evidence where Your Honor said that Mr. Bergman, the damages expert, can discuss some of that, we do have some thoughts for Your Honor, some questions for Your Honor, about how we will be able to enforce this. I can come to that at the appropriate time or now, whatever Your Honor's preference is. It's related to this, which is why I'm raising it now.

THE COURT: Well, make your point.

MR. MUELLER: So our concern is this, that we take the core of Your Honor's analysis of the trade secret evidence to be that it has limited relevance to this trial, but any limited relevance it might have would be in the context of damages, not infringement but damages, and that with respect to damages, the relationship between the parties and the interactions between the parties

historically under Your Honor's view might have some relevance to damages. That's what we took to be your reasoning.

Our concern is just that this exception could become too large over the course of the trial, and we --

THE COURT: Is it too large now?

MR. MUELLER: We don't think that any of that evidence should come in, but we understand Your Honor's opinion, and we're not going to contest the principle that there could -- we're going to submit, I should say, on the principle that there could be some limited relevance.

THE COURT: Okay.

MR. MUELLER: We'll preserve our prior positions and leave it at that.

What we think we need to do, though, is to have clarity as to what we're talking about. So what we would suggest as a process mechanism for ensuring that this does not become a sideshow is that we meet and confer with Masimo on a stipulation about the basic facts regarding the historical interactions between the parties, and then we could present that to Your Honor for approval that could be given to the jury as a stipulated set of facts, and that would be it. Mr. Bergman could use those stipulated facts for whatever relevance Your Honor deems appropriate.

But our concern is that this will become, again, a

11:21 sideshow, and that there could be an attempt to introduce evidence far beyond the limited relevance that Your Honor has identified this evidence is having. So again, our view is we shouldn't go down this road at all, but we are 11:21 submitting on Your Honor's analysis that it has some limited relevance. Our concern is that the limited relevance needs to be policed.

THE COURT: Isn't the parties' commercial interaction relevant to the hypothetical negotiation?

11:22 MR. MUELLER: So in some circumstances, it can, Your Honor. But again, it depends on the details. And here, for example, the hypothetical negotiation would occur in 2019. You'll recall, Your Honor, that some of the Rover and Everest events were years and years before, and at some 11:22 point, those historical events become too attenuated to have any legal significance for a hypothetical negotiation happening half a decade later. It had nothing to do with the particular features at issue in this case.

So we're talking about a brief set of 11:22 interactions, extremely brief, one meeting, that happened over half a decade before the hypothetical negotiation. We think under those circumstances, any relevance is faint, and the risk of prejudice is significant because this could turn into a sideshow and a reprise of the trade secret trial.

11:22 To be clear, on the trade secret issues, we think

11:22 there's absolutely no there there, but it takes a long time to show that through all the details that we had to go through in a multi-week trial before Your Honor last November, and before that, with the jury the previous year.
11:23 We don't have time to do that in the patent trial that we're starting on November 4.

So our concern is not that there is some there there. There's absolutely zero there. It just takes too long to show that in the context of a trial that's actually
11:23 focused on a different set of issues; namely, are they accused features, or do they meet the limitations of the claims of the '776 Patent?

So in that context, we think at most we should be talking about a very narrow set of facts with respect to the
11:23 interactions between the parties, and that a stipulation would be the best mechanism to identify those and to keep ourselves focused on what really matters in this trial.

THE COURT: I'll hold this ruling for a week. If you can present me a stipulation as to facts within a week,
11:23 fine, I'll reflect it in this order. But otherwise, the tentative will be the order of the Court.

MR. MUELLER: Understood. Thank you, Your Honor.

THE COURT: Okay.

MR. HORNE: Your Honor, to address Apple's MIL 2,
11:24 Brian Horne for Masimo.

11:24 I'm assuming I don't need to address the issue on the relevance of Rover and Everest. I will say that most, if not all, of this evidence is going to come in through deposition designations, so the concern that this is going 11:24 to run wild I don't think is there. So I don't think we need to stipulate to facts. We can play the deposition testimony.

Similarly, on -- one other thing on timing as well. Their expert agreed that the hypothetical negotiation 11:24 date, whether it's September of '18, whether it's a '15, or whether it's a '19, doesn't change the outcome of the hypothetical negotiation.

There was another issue in the same MIL that the Court addressed, and I think the issue of teardowns got 11:25 conflated with testing. I have some documents I can share with the Court. Masimo does not want to present evidence of Apple tearing down Masimo's products. I can pass up some exhibits if it's okay with the Court.

(Document handed to the Court)

11:25 THE COURT: Thank you.

MR. HORNE: Besides tearing down, Apple also benchmarked the watch when it was designing the watch against Masimo's product. It even called Masimo "the golden reference," and I can get you to the slides on this.

11:25 So if you look at Exhibit 10 that I just handed

11:25 the Court, this was -- it's an excerpt of Exhibit 10 that we provided in our opposition to MIL 2. So this was of record. If you go to the page ending in 744, you will see in that box in red that it refers to Masimo as "the reference
11:26 center" -- sorry, I'll let the Court get there.

THE COURT: Okay.

MR. HORNE: So here, we see when Apple is developing the watch, or the sensor for the watch, their benchmarking it against the Masimo product. Similarly, if
11:26 you go a few pages earlier, the page ending in 737 -- again, Exhibit 10 -- if you look at the second bullet, in the third indent from that second bullet, they're talking about collecting data simultaneously with the golden reference, which is the Masimo heart rate monitor.

11:27 So we're not talking about tearing down. We're talking about developing the product and benchmarking it against a medical device. And we understand the Court's order on page 7, where it says evidence that Apple was merely interested in designing a patient monitor is not
11:27 relevant, but this goes beyond mere interest. This is a concrete step towards designing a patient monitor.

And given that it's benchmarking and not tearing down, there is no allegation of copying. We're not using this for willfulness. We're using this to show that Apple
11:27 was making concrete steps to design a patient monitor by

11:27 testing that watch against a medical heart rate monitor when they designed it.

The order says we can't reference teardowns. We don't plan to. But this benchmarking got conflated with the teardowns during the briefing, so we would request a clarification on this issue.

And then on hiring --

MR. MUELLER: Your Honor, may I respond to that?

THE COURT: Let Mr. Horne finish, please.

MR. HORNE: So on hiring, we're not looking to tell the jury that Apple hired dozens of Masimo employees. There's only two we want to address, and that's Mr. Lamego and Mr. O'Reilly. We're not arguing that they brought trade secret or confidential proprietary Masimo information over with them. Again, it's this hiring of people with medical device expertise to help design the watch is what is relevant to show that, again, Apple was making concrete steps towards designing a patient monitor.

In the packet I handed the Court, there are some excerpts from deposition testimony we've designated. Again, this would come in through deposition designations, so the Court can take a look at it when we submit those. You will see that we see testimony excerpts regarding Lamego, and this is from Denby Sellers, her 2021 deposition. She says, "and we were looking for people with an understanding of

that, from an EE standpoint, from a body standpoint" -- I'm on page 26, lines 1 through 2 -- "from a healthcare standpoint, and we were looking more specifically to build out an understanding of sensors."

Further down, on pages 29 through 30:

"Q. What did James like about Marcelo's background?

"A. The fact that he had worked in medical devices."

Further down, page 96, line 13: "He understood a lot. You know, working with a medical device...in terms of producing a viable medical device."

So they're talking about hiring somebody for his experience in medical devices. We're not trying to say they were stealing from Masimo. Obviously, Masimo was a medical device company.

Similarly, with Dr. O'Reilly, on page 3 of the handout I gave the Court, this is Mr. Hotelling's deposition, page 166, a little bit down the page, line 1, talking about Apple's medical team being a team of doctors.

On the next page, this is Mr. Perica's deposition, page 59, lines 11 through 12, talking about hiring Dr. O'Reilly because "He understands noninvasive sensors really well," and talking about "the sensors that would maybe go into the watch."

If you go down to page 61, lines 19 and 20, "Apple was interested in noninvasive sensors in particular." That's what they were interested in. That's why they're hiring Dr. O'Reilly in his experience with sensors.

So again, we understand the Court's ruling on mere interest. That's why the Court didn't allow us to present Rover or Everest for infringement, and we understand and respect that ruling. But as far as the hiring, hiring these two specific people to work on the sensors for the Apple Watch shows Apple was taking concrete steps toward making a medical device and a patient monitor.

THE COURT: Mr. Mueller.

MR. MUELLER: This is precisely the reason why we want a construction of "patient" and "patient monitor," precisely the reason why I requested a moment ago that we have a stipulation as to what would come in on these issues.

This is essentially the same thing we saw in the trade secret case, I mean, the grand narrative. And at the end of the day, it was black foam, a short circuit, and a rejected demodulation proposal, none of which had anything to do with what Mr. Horne just said, and also none of which was a trade secret.

Here, we hear a similar narrative. There are references to Dr. Lamego and Dr. O'Reilly that have utterly nothing -- utterly nothing -- to do with the issues in this

11:32 case, the '776 Patent, and whether or not Apple Watch meets the requirements of the claims that are asserted in the '776 Patent. It is an utter sideshow that has no connection to this case whatever.

11:32 And I'll just make that more concrete. Your Honor ruled in the --

THE COURT: Well, can't they argue that if they're hiring people with medical device experience, maybe Apple is thinking about making a medical device?

11:32 MR. MUELLER: Your Honor, no, and the reason why is because none of those people have been shown to be connected to the features at issue in this case.

Your Honor granted summary judgment in our favor on the issue of copying. This is your summary judgment 11:33 decision, and now final summary judgment decision, on page 20. You granted our motion on copying.

If they thought that any of this connected to the features in this case, they could have said that Dr. O'Reilly and Dr. Lamego were hired -- that the work they did 11:33 tied into the features at issue in this case. There's no such connection. None. Zero. So we would have to disprove an allegation that hasn't even been made, that these folks, Dr. Lamego and Dr. O'Reilly, have some relationship to what's at issue in this case. There is none. Absolutely 11:33 none. It's the definition of a "sideshow."

11:33 This case should be exactly what Your Honor said in your decisions. It should be an analysis of the claims that are asserted from the '776 Patent, and whether or not those are satisfied by the accused features of which there 11:33 are two, the High/Low Heart Notification and the Workout Mode, in the Apple Watch. We don't think they are, and we don't think it's a close call, but that's the issue for the trial. Do those two features meet the requirements of the claims? Dr. Lamego, Dr. O'Reilly, Rover, and Everest have 11:34 absolutely nothing to do with that.

As Your Honor said in your motion in-limine tentative, at most -- and we think, frankly, that this even goes arguably too far -- at most, that would speak to the relationship between the parties for damages purposes. But 11:34 Mr. Horne just went beyond that, and I think he acknowledges he went beyond that in saying that they should be able to talk about teardowns and so on that have nothing to do with this case.

The teardown that you were shown referring to the 11:34 Masimo reference device has nothing do with duty cycles. It has nothing to do with adjusting duty cycles. It has nothing to do with whether or not Apple Watch is a patient monitor. It's just not relevant to the issues that the jury in this trial needs to decide.

11:34 So I think actually that recitation of the

11:34 evidence that Mr. Horne is requesting permission for Masimo to use illustrates quite vividly the problem that we think exists with opening this door. This should be a case where you take the claims -- the jury takes the claims and tries to see if they fit or not in two accused features. That's it. It's not trade secret case Part 3. It's the application of these claims to the accused features. This has nothing to do with that, nothing to do with that.

THE COURT: Mr. Horne.

11:35 MR. HORNE: Number one, Your Honor, the watch is the accused product, and the testimony I handed you with Mr. Lamego -- I think I may have left it on the desk. Oh, here it is. There's testimony saying that Mr. Lamego did work on the watch. So he worked on the watch and the accused product.

He referred to teardowns. I just told the Court we're not looking to introduce evidence of teardowns. That document I handed the Court has a stray page about teardowns. We'll redact that. This is talking about benchmarking their watch, their accused product, against a medical device for the heart rate feature, which is key to the features in this case.

THE COURT: Okay.

Anything further on the motions?

11:36 MR. MUELLER: Just very briefly.

11:36 I mean, again, this is not a case about the watch writ large. There's two accused features. And Dr. Madisetti in his analysis focuses on two, High/Low Heart Notification and something called Workout Mode. Those are 11:36 two cardiac features in the Apple Watch. Those are the two. So again, what we're getting is a mix and match where Masimo is saying, well, for this purpose, we're going to look at the watch writ large, and for this purpose, we're going to look at this. That's not the way this should work.

11:36 The two accused features are the High/Low Heart Notification and the Workout Mode. Those two features don't meet the requirements of the claim, and attempts to refer to Dr. O'Reilly or Dr. Lamego working on the watch in the abstract have nothing to do with the actual question before 11:36 the jury: Do these two accused features, High/Low Heart Notification and Workout Mode, meet the claim limitations?

So again, we have concerns with the attempt to bring before the jury confusing evidence that has nothing do with that very simple set of questions: High/Low Heart 11:36 Notification, Workout Mode, do they meet the claim requirements or not?

THE COURT: Okay.

Mr. Horne.

MR. HORNE: These are both heart rate features. 11:37 and Mr. Lamego worked on the heart rate sensor for the

11:37 watch, so it's clearly relevant.

THE COURT: Okay. Let me take a look at this.

You indicate to me that much of this will come in through deposition testimony, and there's a nice schedule for presenting designations and so on. But depending on the volume, I'm not going to be rushed in reviewing designations, particularly where this is a sensitive and key issue, so you might consider giving me materials earlier than what you lay out in the Proposed Pretrial Conference Order.

MR. HORNE: I understand, and we'll work on it, Your Honor.

THE COURT: Okay.

MR. MUELLER: Your Honor, from our perspective, that would be great. The earlier we can flush this out and bring it before Your Honor for any decisions the better.

THE COURT: Well, if the designations are presented to me in a concrete form, that's the best way to rule.

MR. HORNE: We'll do that.

THE COURT: Okay.

MR. RE: Just to be clear on the record, on this last issue that was permeating many of the pretrial documents, I think the tentative got it correct. The accused product is the Apple Watch. You can't infringe

without the integrated whole. The two features at issue are what caused the Apple Watch to infringe. They have been pushing this as if the two features are the sole subject of the case when that's not really true. Low duty cycle/high duty cycle has no meaning unless you have a battery, unless you're taking measurements, and that's all done through the watch as a product.

So this argument that you've been hearing from Mr. Mueller you're going to hear again and again and again until we have rulings on the verdict form, the jury instructions, et cetera, et cetera. And I want to make it clear that page 6 is correct. They describe the accused product, the Apple Watch. That's on page 6, line 8 or so.

THE COURT: Of the tentative?

MR. RE: From the tentative.

THE COURT: Yeah, okay.

MR. MUELLER: Your Honor, on this, may I respond, Your Honor? On that same page, this is page 6 of the tentative decision where you're discussing the materials from the ITC proceedings that Dr. Madisetti cited, you stated: "Apple may cross-examine Madisetti regarding the context for the statements and whether or not they relate to accused features," and Your Honor was properly putting the focus on the accused features.

Our concern -- one of our concerns, one that

11:39 Masimo seems poised to try to do, is even though the accused features they claim meet the limitations of the claims are High/Low Heart Notification and the Workout Mode -- even though -- we think they're wrong about that, but set that 11:39 dispute to the side. What we're going to hear before the jury is a lot of discussion of other features having utterly nothing to do with High/Low Heart Notification and Workout Mode. That's going to be confusing for the jury. So I think we -- we believe, Apple submits, that the more we can 11:40 give the jury a clear understanding of what they are here to decide the better.

Is there going to be some discussion of the watch in a broader sense? Of course. I expect Masimo will do that, and we will need to do that ourselves in response. So 11:40 we don't dispute that the watch will be discussed at a high level to some extent. But we also think that the jury needs to be given a clear roadmap as to what they are being asked to decide, and what they are being asked to decide are do the High/Low Heart Notification and the Workout Mode meet 11:40 the requirements of these patient monitor claims?

That's part of the reason -- I'll just very briefly say why we thought Dr. Raja would be a useful witness for the jury, because he could explain why those two features and the materials Dr. Madisetti is citing from the 11:40 ITC do not suffice to show that these are patient monitor

11:41 features. In fact, they're not in the view of medical physicians.

So again, I would just sum up, Your Honor, I do think that Mr. Re is right that this is going to be a recurring issue. We think it's going to be a recurring issue because we believe the jury should keep their eye on the ball as best we can keep them focused on it, and what matters in this case is the actual accused features, the High/Low Heart Notification and Workout Mode.

11:41 Again, this is akin to the trade secret case where we kept trying to push, push, push, to find out what the alleged secrets were. We ended up with black form, a short circuit, and a rejected demodulation proposal. But the trial had a lot more evidence beyond that. And we tried our best -- Your Honor saw us twice -- to keep the focus on what was actually alleged trade secrets, none of which were. Same here. We're trying to keep the focus on the actual alleged infringing features, not sideshows.

THE COURT: Okay.

11:41 MR. RE: To finish this, I just want for the record to be clear I just disagree with virtually everything Mr. Mueller said. I'll leave it at that, and we can duke it out on our own with the other documents. But you cannot infringe based on features. You infringe because it's in a watch that reads signals from the hand into the product.

And we're going to have this in all the documents, but I think we should do this with more concrete documents in front of the Court.

THE COURT: Fine.

Well, let's turn to the pretrial conference. You folks indicated to me that 15 days -- six days of trial would be sufficient with 15 hours a side, and that's fine. I mean, there are divergent views as to whether that's more than enough, but people have that much time.

Apart from my concerns about trying to accelerate the rulings on deposition designations, I don't have any other concerns about the form of the Pretrial Conference Order. It's apparent that an awful lot of thought went into this and some give and take, and I expect the parties to follow the timetables in here. Absent extraordinary circumstances, I'm just not going to entertain new material.

MR. MUELLER: We agree, Your Honor. I will say that we met and conferred at great length to arrive at the consensus proposals that we made.

THE COURT: And I thank you for that.

MR. MUELLER: We worked very collaboratively on it. Masimo as well was very collaborative in preparing separate proposals for Your Honor.

I had three quick things that relate to this. Number one, on the trial timing, we agree we certainly won't

need more than that. We think it would be good for us to try to aim for closing if not on the second Thursday certainly the second Friday to finish the trial by the end of that second week if we can. We think that will be feasible. But we did have a question for Your Honor, which is this --

THE COURT: Well, you've got to remember Veterans Day is in there.

MR. MUELLER: That's our question. So Veterans Day, of course, is the holiday on the second Tuesday. We understand Your Honor typically doesn't hear trials on Mondays, but would Your Honor consider a Monday session because of the Veterans Day holiday?

THE COURT: No.

MR. MUELLER: Okay. The second question we had with respect to the pretrial conference had to do with the -- I think the only point in dispute on process is disclosure of closing demonstratives. Our request, Your Honor, is that the parties should disclose only new demonstratives for the closings. Everything else that's been previously disclosed doesn't need to be redisclosed.

THE COURT: What's the volume of previously disclosed material?

MR. MUELLER: I would say in our experience in terms of what's going to be used in closing, if that's not

11:44 100 percent, it will be 95 percent.

THE COURT: That's not the question. What's the volume of the previously disclosed material, not what will be used in the closings?

11:45 MR. MUELLER: I'm not sure I understand, Your Honor.

THE COURT: You want to rely on anything previously disclosed?

MR. MUELLER: I think the parties both agree that 11:45 there needs to be no redisclosure of previously disclosed materials. We are saying --

THE COURT: What's the volume of previously disclosed materials? Six inches, a Beacons box, three Beacons boxes? What are we talking about?

11:45 MR. MUELLER: It's not from materials over the course of the case, Your Honor. We're referring to the course of the trial. So it would be previously disclosed at the trial, exhibits introduced at trial, testimony from the trial, demonstratives used at the trial. When we say 11:45 previously disclosed, we mean in the trial, within the four corners of the trial. And my understanding is Masimo agrees with that as well. So neither side is saying that for closing arguments we need to redisclose slides used during the trial, exhibits used during the trial, witness testimony 11:46 from the trial.

11:46 The remaining point of dispute, we, Apple, are requesting that the parties disclose new demonstratives or new slides that have been generated for the closing argument only to see if there's an objection to those slides before the closing arguments are delivered. That's the narrow dispute that remains, just that one issue.

THE COURT: Mr. Re.

MR. RE: I can't believe I'm arguing this. First of all, when Apple was plaintiff and obviously had the advantage, we don't want any disclosure on the closing arguments because we are the plaintiffs, and we get to rebut. When Apple was plaintiff in Delaware when we had the same situation, Apple refused to give us any of the slides for their closing. And we even asked the Court, and the court said no. So it's interesting when Apple is the plaintiff, they won't disclose anything, but when they're the defendant, they want to take away the advantage of the plaintiff having rebuttal close.

THE COURT: My usual practice is to require disclosure of anything that's going to be used in the closing, and you can set the timetable for that. I think you have a timing for some of that, but I think you ought to know what's coming.

MR. RE: Well, if -- then I would like to see their entire close because they use electronic movements,

11:47 and it's very complicated in today's day and age. It's not like the old days with the simple PowerPoint. Their closing, I promise you, will have things that move, shift, highlight, manipulate. And it's very difficult when you use 11:47 that kind of technology to actually disclose unless you actually get the entire electronic file.

If that's the way you want to do it, I have no problem with that. I just don't want to -- what's great about trying something is we've tried cases before, and you 11:47 know what's coming. It would be complicated electronics. Then I'd want to see the entire electronic file and how everything is manipulated and maneuvered.

THE COURT: I'm going to require that disclosure. You agree on the timing of that disclosure.

11:48 MR. RE: Thank you, Your Honor.

THE COURT: I just think we'll get a better closing argument if everyone knows in advance what's coming.

MR. MUELLER: We have no problem with that, Your Honor.

11:48 THE COURT: Okay.

MR. MUELLER: We have nothing further. That's the only remaining issue we had.

THE COURT: Okay.

The ABA standard patent instructions have a 11:48 discussion of the role of the Patent Office and so on. The

Federal Judicial Center also has a video. I think the video is better for a jury, and I'd be inclined to use the video unless there's an objection.

MR. RE: No objection from Masimo.

MR. MUELLER: No objection, Your Honor.

THE COURT: Okay. Then I won't put similar content in the instructions.

You've already indicated that you're in agreement with notebooks with the patents and the constructions and perhaps a little bit more.

How do you see us handling the willfulness issue?

MR. RE: I'm not quite sure what you mean by that, but willfulness is still in the case.

THE COURT: Yes.

MR. RE: And it's going to be submitted to the jury like -- as one of the four questions on the verdict form. The verdict form is very short. It's only four questions, and willfulness is one of the questions.

THE COURT: Okay.

MR. MUELLER: So as long as they're presenting it, we'll of course respond to it. Your Honor indicated in your orders that our fact witnesses could respond on willfulness.

THE COURT: Right.

MR. MUELLER: And we think that's correct. So if they want to maintain the willfulness position, then we

would ask that our engineers be permitted to respond to it, and to say that they have reviewed the patent and there's no infringement in their subjective view, which is precisely the issue for willfulness.

MR. RE: Your Honor, there's no such disclosure of such testimony. No one -- we are aware of no disclosure of any Apple witness knowing about these patents and making any decision based on these patents in 2020 or 2021. The testimony Mr. Mueller is referring to is from witnesses who see the patent for the first time preparing for their deposition, but none of that is probative to willfulness, and there's been no such disclosure of such a willfulness defense.

MR. MUELLER: That's the only remaining argument they're making is post-suit willfulness. What Mr. Re is saying is that we shouldn't be allowed to respond to the only argument they're making. That's correct, there was no copying of these patents or use of these patents to design the devices. But after this litigation began, the engineers reviewed them, and they had their own subjective views as to whether or not there's infringement. In their view, there's not, and they should be entitled to say that if they're going to argue post-suit willfulness.

THE COURT: Ms. Swaroop.

MS. SWAROOP: Yes, Your Honor.

11:50 Your Honor has made some rulings on summary judgment on willfulness. So the period of time we're talking about is from the filing of this suit in January of 2020 through expiration of the patent in June of 2022. In 11:51 discovery -- and I have the interrogatory response where we asked Apple for their position on the no willfulness, and there is absolutely no disclosure of any kind of belief by Apple during the relevant period of noninfringement or invalidity. There's no disclosure of any witness. There's 11:51 no information like that at all. And I'm happy to share the interrogatory with Your Honor if you'd like to see it.

THE COURT: No, but, you know, present it at the appropriate time.

MS. SWAROOP: Thank you, Your Honor.

11:51 MR. MUELLER: And I'll just note they were all deposed about this.

THE COURT: I'm sorry?

MR. MUELLER: I'll just note that the engineers at issue were deposed about this very subject and would not be 11:51 saying anything new.

MS. SWAROOP: Your Honor, they were deposed in 2024 and said that they had read the patents for the first time just a few days before their deposition. So their awareness of patents in 2024 has absolutely no relevance to 11:51 whether Apple had any kind of belief in their defenses for

this patent during the relevant period for willfulness, which is the 2020 to 2022 time period.

THE COURT: Okay.

Anything else? Any housekeeping questions?

MR. RE: Nothing further from Masimo.

MR. MUELLER: We have just one more, Your Honor. The final one is with respect to voir dire and the jury selection process.

THE COURT: Right.

MR. MUELLER: Your Honor may recall for the last jury trial between the parties a couple years ago that we arrived at a process with Your Honor where we had the jurors come in one by one to discuss certain questions that Your Honor posed to them, in particular, strongly-held views about one party or the other, and did that on an individual basis, and then you allowed both sides the opportunity to ask a couple follow-up questions of the individual jurors.

We thought that process was effective, and we believe that we should do the same thing here for the same reasons. To have the entire jury pool hear about strongly-held opinions, favorable or unfavorable, about the different parties and explanations of why they hold those opinions is only going to risk infecting the jury pool writ large. We believe that it worked quite efficiently, and it was administratively feasible to have them in for relatively

brief periods of questioning one by one to go through the questions from Your Honor, allow both sides an opportunity for a short follow-up, and then be done with it.

THE COURT: Would you propose asking anything other than strong feelings with respect to the parties?

MR. MUELLER: We can take another look at the proposed voir dire, which the parties submitted to Your Honor I think within the last week -- oh, today. I'm sorry, I misspoke. Today we submitted proposed voir dire. We can take a look and meet and confer with Masimo as to which ones we think might be appropriate for that. Some of them would not need to be asked in that individual setting. For example, you know, the basic background questions would be fine to do with the full jury pool. But there's a discrete set that we think would be useful to do in that individual setting, again, to keep this insulated from the full pool.

THE COURT: At the moment, I only see a set of one.

MR. MUELLER: I'm sorry?

THE COURT: At the moment, I only see a set of one.

MR. MUELLER: In terms of what would be appropriate?

THE COURT: Right.

MR. MUELLER: Well, certainly the ones on

11:54 strongly-held views of the parties we think would fall within that category. We can take another look to see if anything else falls in that category.

THE COURT: Mr. Re.

11:54 MR. RE: No objection. We'll discuss it.

THE COURT: Okay. You know, that can be very time consuming, very time consuming. We'll probably call between 30 and 35 folks. To talk to each one of those takes time.

MR. MUELLER: Maybe we can do this, Your Honor.

11:54 If we could meet and confer with Masimo on which questions would fall in that category -- I think it would be a very small number -- we could e-mail chambers with our joint thoughts on that if that makes sense.

THE COURT: I think it's better if you file it.

11:54 MR. MUELLER: Okay, we'll file it.

MR. RE: And if the Court is concerned about time as we are, I have no problem not having that process and doing it in front of the whole jury. So I'm flexible. I'll follow what you want to do, but I'm always in favor of

11:55 whatever is faster.

THE COURT: Okay. I don't have anything additional.

MR. MUELLER: Nothing further from Apple, Your Honor. Thank you.

11:55 THE COURT: Okay.

Mr. Re.

MR. RE: I was so pleased to hear that. Nothing further from Masimo. Thank you, Your Honor.

THE COURT: All right. Well, we'll see you on the 4th of November. If you need the Court on an expedited basis, arrange something with Ms. Vargas.

MR. MUELLER: Thank you, Your Honor.

MR. RE: Thank you.

THE COURT: Okay. Thank you.

(Whereupon, the proceedings were concluded.)

* * *

11:55

CERTIFICATE

11:55

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

11:55

Date: October 21, 2025

11:55

/s/ Sharon A. Seffens 10/21/25

SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. CLAASSEN: [4]** 5/12 5/16 15/2 17/17
**MR. HORNE: [8]** 21/24 22/21 23/7 24/10 29/10 30/24 31/11 31/20
**MR. MUELLER: [63]**
**MR. RE: [18]** 4/6 4/9 4/15 31/22 32/15 34/20 38/8 38/24 39/15 40/4 40/12 40/15 41/5 43/5 45/5 45/16 46/2 46/8
**MS. POWELL: [1]** 18/5
**MS. SWAROOP: [4]** 15/21 41/25 42/14 42/21
**THE CLERK: [1]** 4/2
**THE COURT: [87]**

**'**

**'15 [1]** 22/10
**'18 [1]** 22/10
**'19 [1]** 22/11
**'776 [8]** 11/9 11/17 16/19 17/2 21/12 27/1 27/2 28/3

**/**

**/s [1]** 47/15

**0**

**02109 [1]** 2/18
**0404 [1]** 2/8

**1**

**1-1053 [1]** 1/20
**10 [3]** 22/25 23/1 23/11
**10/21/25 [1]** 47/15
**100 percent [1]** 37/1
**1053 [1]** 1/20
**11 [1]** 25/22
**11:00 [1]** 4/1
**12 [1]** 25/22
**13 [1]** 25/10
**14th [1]** 2/7
**15 [2]** 35/6 35/7
**166 [1]** 25/19
**19 [1]** 26/1
**1925 [1]** 2/10

**2**

**20 [3]** 1/17 26/1 27/16
**20037 [1]** 3/3
**2019 [1]** 20/13
**202 [1]** 3/3
**202-3014 [1]** 3/6
**2020 [3]** 41/8 42/4 43/2
**2021 [2]** 24/24 41/8
**2022 [2]** 42/4 43/2
**2024 [2]** 42/22 42/24
**2025 [3]** 1/17 4/1 47/13
**2040 [1]** 2/7
**21 [2]** 4/1 47/13
**2100 [1]** 3/2
**25 [1]** 47/15
**26 [1]** 25/2
**2600 [1]** 2/21
**28 [1]** 47/7
**29 [1]** 25/5

**3**

**30 [2]** 25/5 45/8
**3014 [1]** 3/6
**310 [1]** 2/11
**3450 [1]** 2/11
**35 [1]** 45/8
**3579 [1]** 2/13

**4**

**400 [1]** 2/21
**4000 [1]** 2/14
**411 [1]** 1/20
**4th [2]** 1/20 46/5

**5**

**526-6000 [1]** 2/19
**551-3450 [1]** 2/11
**59 [1]** 25/22

**6**

**60 [1]** 2/18
**600 [2]** 2/10 3/5
**6000 [1]** 2/19
**6031 [1]** 2/22
**6096 [1]** 3/3
**61 [1]** 26/1
**612 [1]** 1/21
**617 [1]** 2/19
**650 [1]** 2/22
**663-6096 [1]** 3/3

**7**

**700 [1]** 3/5
**707-4000 [1]** 2/14
**737 [1]** 23/10
**744 [1]** 23/3
**753 [1]** 47/6
**760-0404 [1]** 2/8

**8**

**804-8655 [1]** 1/21
**858 [1]** 2/14
**858-6031 [1]** 2/22
**8655 [1]** 1/21

**9**

**90067 [1]** 2/11
**92130 [1]** 2/14
**92614 [1]** 2/7
**92626 [1]** 3/6
**92701 [1]** 1/20
**93 [3]** 12/8 14/12 14/15
**94306 [1]** 2/22
**949 [2]** 2/8 3/6
**95 percent [1]** 37/1
**96 [1]** 25/10

**A**

**A.M [1]** 4/1
**ABA [1]** 39/24
**ability [2]** 9/5 9/19
**able [2]** 18/14 28/16
**about [38]** 7/25 8/13 15/10 15/17 15/23 16/16 17/8 18/14 19/16 19/19 20/19 21/14 23/12 23/15 23/16 25/6 25/13 25/20 25/22 25/24 27/9 28/17 29/18 29/19 30/1 33/4 35/10 35/12 37/14 39/9 41/7 42/3 42/16 42/19 43/15 43/20 43/21 45/16
**above [1]** 47/9
**above-entitled [1]** 47/9
**Absent [1]** 35/15
**absolutely [7]** 17/7 21/1 21/8 27/24 28/10 42/7 42/24
**abstract [1]** 30/14
**accelerate [1]** 35/10
**accused [20]** 9/7 10/6 11/6 12/1 21/11 28/4 29/5 29/7 29/11 29/15 29/20 30/2 30/10 30/15 31/25 32/12 32/23 32/24 33/1 34/8
**acknowledges [1]** 28/15
**actual [4]** 7/21 30/14 34/8 34/17
**actually [5]** 21/9 28/25 34/16 39/5 39/6
**ADAM [2]** 2/12 4/11
**add [1]** 8/3
**additional [1]** 45/22
**address [5]** 15/12 16/15 21/24 22/1 24/12
**addressed [1]** 22/14
**addressing [3]** 15/6 15/8 15/9
**adjudicated [1]** 7/16
**adjusting [1]** 28/21
**administratively [1]** 43/25
**admissible [1]** 16/2
**admissions [1]** 16/2
**adopted [2]** 16/1 16/2
**advance [1]** 39/17
**advantage [2]** 38/10 38/17
**affiliation [1]** 9/21
**afield [1]** 19/12
**after [1]** 41/19
**again [24]** 7/18 9/2 11/13 11/24 13/19 14/7 16/19 19/25 20/3 20/11 23/10 24/15 24/17 24/20 26/5 30/1 30/6 30/17 32/9 32/9 32/9 34/3 34/10 44/16
**against [5]** 22/23 23/9 23/17 24/1 29/20
**age [1]** 39/1
**agency [1]** 16/10
**ago [2]** 26/15 43/11
**agree [6]** 6/9 7/13 35/17 35/25 37/9 39/14
**agreed [3]** 8/3 8/3 22/9
**agreement [1]** 40/8
**agrees [1]** 37/21
**aim [1]** 36/2
**akin [1]** 34/10
**al [2]** 1/9 4/3
**all [13]** 4/9 4/25 11/14 14/22 20/4 21/2 22/3 32/6 35/1 38/9 42/10 42/15 46/4
**allegation [2]** 23/23 27/22
**alleged [3]** 34/12 34/16 34/18
**allow [3]** 17/13 26/6 44/2
**allowed [5]** 13/15 13/21 13/22 41/16 43/16
**along [1]** 7/6
**already [1]** 40/8
**also [9]** 3/7 6/6 16/5 17/18 18/6 22/21 26/21 33/16 40/1
**Alto [1]** 2/22
**always [1]** 45/19
**AMADI [1]** 3/1
**AMY [2]** 3/1 4/21
**Ana [3]** 1/16 1/20 4/1
**analysis [7]** 6/9 6/10 6/12 18/20 20/5 28/2 30/3
**analyzed [2]** 6/5 13/23
**Angeles [1]** 2/11
**another [5]** 10/15 13/12 22/13 44/6 45/2
**Anton [1]** 3/5
**any [17]** 5/17 16/17 18/22 19/7 20/16 20/22 27/17 31/16 35/11 38/10 38/13 41/7 41/7 42/7 42/9 42/25 43/4
**anybody [1]** 4/15
**anything [10]** 26/20 29/24 37/7 38/16 38/20 42/20 43/4 44/4 45/3 45/21
**Apart [1]** 35/10
**apparent [1]** 35/13
**appearances [2]** 2/1 4/4
**APPLE [52]**
**Apple's [4]** 15/12 15/23 21/24 25/20
**application [2]** 8/15 29/7
**apprise [1]** 8/18
**appropriate [6]** 7/11 18/15 19/24 42/13 44/11 44/23
**approval [1]** 19/21
**are [41]** 4/9 4/18 6/2 9/7 9/15 10/6 11/6 12/1 16/2 16/9 16/25 20/4 21/10 24/19 26/23 27/2 28/3 28/4 28/5 28/6 30/4 30/5 30/10 30/24 31/17 32/1 32/3 33/2 33/10 33/17 33/18 33/18 33/25 35/8 37/11 37/14 38/1 38/5 38/11 41/6 45/17
**arguably [1]** 28/13
**argue [2]** 27/7 41/23
**arguing [2]** 24/13 38/8
**argument [5]** 32/8 38/3 39/17 41/14 41/17
**arguments [5]** 5/17 16/11 37/23 38/5 38/11
**around [1]** 15/4
**arrange [1]** 46/6
**arrive [1]** 35/18
**arrived [1]** 43/12
**art [1]** 16/19
**article [1]** 16/4
**as [39]** 5/24 6/14 6/15 6/15 6/23 7/4 7/8 7/21 8/21 10/3 11/4 12/11 12/13 14/8 14/15 15/15 19/16 19/17 19/22 21/19 22/8 23/4 26/8 26/8 26/16 28/11 32/3 32/7 33/17 34/7 35/8 35/22 37/22 40/16 40/20 40/20 41/20 44/10 45/17
**ask [6]** 12/22 13/8 13/19 14/2 41/1 43/17
**asked [5]** 33/17 33/18 38/14 42/6 44/12

## A


**asking [2]** 16/23 44/4
**aspect [1]** 10/2
**asserted [2]** 27/2 28/3
**assertions [1]** 11/22
**assuming [1]** 22/1
**attempt [2]** 20/1 30/17
**attempts [1]** 30/12
**attenuated [1]** 20/15
**authored [1]** 16/18
**Avenue [1]** 3/2
**aware [1]** 41/6
**awareness [1]** 42/24
**away [1]** 38/17
**awful [1]** 35/13


## B


**back [2]** 14/19 17/22
**background [2]** 25/7 44/13
**ball [1]** 34/7
**banning [1]** 11/21
**based [3]** 11/21 34/24 41/8
**basic [2]** 19/19 44/13
**basically [1]** 8/3
**basis [4]** 15/15 15/17 43/16 46/6
**battery [1]** 32/5
**be [80]**
**be a [1]** 7/22
**Beacons [2]** 37/13 37/14
**bear [4]** 2/6 2/10 2/13 9/20
**because [11]** 6/1 9/11 20/23 25/23 27/11 33/23 34/6 34/24 36/13 38/11 38/25
**become [4]** 19/5 19/18 19/25 20/15
**been [8]** 9/16 27/11 27/22 32/2 32/8 36/21 38/3 41/12
**before [13]** 13/3 14/13 20/14 20/21 21/3 21/4 30/14 30/18 31/16 33/5 38/4 39/9 42/23
**began [1]** 41/19
**begin [1]** 5/5
**behalf [1]** 4/18
**being [4]** 13/15 25/20 33/17 33/18
**belief [2]** 42/7 42/25
**believe [9]** 7/2 13/18 17/18 18/6 33/9 34/6 38/8 43/19 43/24
**believes [1]** 5/16
**benchmarked [1]** 22/22
**benchmarking [5]** 23/9 23/16 23/22 24/4 29/20
**benefit [2]** 6/18 7/12
**benefits [1]** 9/23
**Bergman [2]** 18/12 19/23
**Besides [1]** 22/21
**best [4]** 21/16 31/18 34/7 34/15
**better [6]** 6/21 31/16 33/11 39/16 40/2 45/14
**between [10]** 7/23 9/18 15/4 18/24 18/25 19/20 21/15 28/14 43/11 45/7
**beyond [10]** 5/24 8/1 9/9 17/22 18/1 20/2 23/20 28/15 28/16 34/14
**binders [1]** 7/6
**bit [3]** 16/20 25/19 40/10
**black [2]** 26/19 34/12
**body [1]** 25/1
**BOONE [1]** 3/5
**Boston [1]** 2/18
**both [4]** 30/24 37/9 43/16 44/2
**Boulevard [1]** 3/5
**bounced [1]** 15/3
**box [2]** 23/4 37/13
**boxes [1]** 37/14
**BRIAN [5]** 2/4 2/9 4/10 4/10 21/25
**brief [3]** 20/19 20/20 44/1
**briefing [1]** 24/5
**briefly [3]** 16/13 29/25 33/22
**bring [4]** 14/8 16/5 30/18 31/16
**BRITTANY [1]** 3/1
**broader [1]** 33/13
**brought [1]** 24/13
**BRYANT [1]** 2/5
**build [1]** 25/3
**bullet [2]** 23/11 23/12


## C


**CA [6]** 1/20 2/7 2/11 2/14 2/22 3/6
**calendar [2]** 5/13 5/13
**CALIFORNIA [4]** 1/5 1/16 4/1 16/7
**call [2]** 28/7 45/7
**called [3]** 15/15 22/23 30/4
**Calling [1]** 4/2
**Camino [1]** 2/21
**can [27]** 8/17 9/14 10/8 10/11 11/25 13/5 17/6 18/12 18/15 20/10 21/19 22/6 22/15 22/17 22/24 24/22 31/15 33/9 34/7 34/22 36/4 38/21 44/6 44/9 45/2 45/6 45/9
**can't [6]** 13/7 14/10 24/3 27/7 31/25 38/8
**cannot [1]** 34/23
**capture [2]** 6/13 7/2
**capturing [1]** 8/12
**cardiac [1]** 30/5
**Carter [1]** 15/7
**case [32]** 7/15 7/15 10/5 11/22 12/4 13/12 13/15 13/15 13/23 13/25 16/4 16/6 17/4 20/18 26/18 27/1 27/4 27/12 27/18 27/20 27/24 28/1 28/18 29/3 29/6 29/22 30/1 32/4 34/8 34/10 37/16 40/13
**cases [2]** 16/3 39/9
**catalog [1]** 16/24
**cataloged [1]** 17/11
**category [3]** 45/2 45/3 45/11
**caused [1]** 32/2
**CBP [1]** 11/4
**center [2]** 23/5 40/1
**CENTRAL [1]** 1/5
**Centre [1]** 2/13
**Century [1]** 2/10
**certain [5]** 5/25 7/8 9/14 14/14 43/13
**certainly [4]** 6/2 35/25 36/3 44/25
**CERTIFICATE [1]** 47/4
**CERTIFIED [1]** 1/9
**certify [1]** 47/6
**cetera [2]** 32/11 32/11
**challenge [1]** 15/6
**chambers [1]** 45/12
**change [1]** 22/11
**changed [2]** 14/3 15/18
**CHRISTOPHER [1]** 2/4
**circuit [2]** 26/19 34/13
**circumstances [3]** 20/10 20/22 35/16
**citation [1]** 10/24
**cite [2]** 10/25 17/13
**cited [3]** 14/18 16/3 32/20
**citing [1]** 33/24
**CLAASSEN [5]** 2/4 4/10 5/11 15/1 16/16
**claim [5]** 15/16 30/12 30/16 30/20 33/2
**claims [10]** 6/4 21/12 27/2 28/2 28/9 29/4 29/4 29/7 33/2 33/20
**clarification [1]** 24/6
**clarity [1]** 19/16
**clear [8]** 8/6 9/25 20/25 31/22 32/12 33/10 33/17 34/21
**clearly [1]** 31/1
**close [3]** 28/7 38/18 38/25
**closing [11]** 36/2 36/18 36/25 37/23 38/3 38/5 38/10 38/14 38/21 39/3 39/17
**closings [2]** 36/20 37/4
**co [1]** 4/25
**co-counsel [1]** 4/25
**Code [1]** 47/7
**collaborative [1]** 35/22
**collaboratively [1]** 35/21
**colleagues [1]** 4/9
**collecting [1]** 23/13
**come [7]** 18/15 19/8 22/3 24/21 26/16 31/3 43/13
**coming [3]** 38/23 39/10 39/17
**commercial [1]** 20/8
**Commission [2]** 9/17 9/18
**company [1]** 25/16
**complicated [2]** 39/1 39/10
**concern [8]** 11/13 18/19 19/4 19/25 20/6 21/7 22/4 32/23
**concerned [1]** 45/16
**concerning [1]** 6/3
**concerns [4]** 30/17 32/25 35/10 35/12
**concluded [1]** 46/10
**concluding [1]** 13/13
**concrete [7]** 23/21 23/25 24/17 26/10 27/5 31/18 35/2
**confer [4]** 8/18 19/18 44/10 45/10
**conference [5]** 31/9 35/5 35/12 36/16 47/11
**conferred [1]** 35/18
**confidential [1]** 24/14
**conflated [2]** 22/15 24/4
**conflict [1]** 10/3
**conformance [1]** 47/10
**confusing [2]** 30/18 33/8
**connected [2]** 27/12 27/17
**connection [2]** 27/3 27/21
**consensus [1]** 35/19
**consider [2]** 31/8 36/12
**consistent [1]** 14/1
**constellation [2]** 9/11 18/3
**constitute [1]** 16/2
**construction [8]** 6/24 8/3 8/7 8/14 8/22 15/16 17/24 26/14
**constructions [3]** 7/24 8/2 40/9
**consuming [2]** 45/7 45/7
**content [1]** 40/7
**contest [1]** 19/9
**context [8]** 6/5 7/9 15/11 16/21 18/23 21/9 21/13 32/22
**continue [4]** 6/18 7/10 8/17 11/10
**continues [1]** 9/4
**copy [2]** 10/9 14/13
**copying [4]** 23/23 27/14 27/16 41/18
**core [1]** 18/20
**corners [1]** 37/21
**CORPORATION [2]** 1/9 4/3
**correct [7]** 15/18 18/7 31/24 32/12 40/24 41/17 47/8
**correctly [2]** 5/17 17/18
**corroborated [1]** 6/14
**Costa [1]** 3/6
**couching [1]** 12/11
**could [14]** 15/21 19/4 19/10 19/11 19/21 19/21 19/23 20/1 20/23 27/18 33/23 40/22 45/10 45/12
**counsel [4]** 2/1 3/9 4/4 4/25
**couple [6]** 5/22 6/7 11/11 14/24 43/11 43/17
**course [7]** 8/1 19/5 33/13 36/10 37/16 37/17 40/21
**court [24]** 1/4 7/21 7/24 10/22 15/25 21/21 22/14 22/16 22/18 22/19 23/1 23/5 24/19 24/22 25/18 26/6 29/16 29/18 35/3 38/14 38/15 45/16 46/5 47/16
**Court's [4]** 5/13 12/12 23/17 26/5
**Courthouse [1]** 1/19
**create [3]** 13/17 17/5 17/14
**cross [1]** 32/21
**cross-examine [1]** 32/21
**CUTLER [3]** 2/17 2/21 3/2
**cycle [2]** 32/4 32/5
**cycle/high [1]** 32/4
**cycles [2]** 28/20 28/21


## D


**D.C [1]** 3/3
**damages [6]** 18/12 18/23 18/23 18/24 19/2 28/14
**data [1]** 23/13
**date [4]** 5/8 5/8 22/10 47/13
**Daubert [3]** 10/4 15/6 17/5
**day [5]** 26/19 36/8 36/10 36/13 39/1
**days [4]** 35/6 35/6 39/2 42/23
**deal [2]** 14/14 14/16
**dealing [1]** 9/25
**decade [2]** 20/17 20/21
**decide [4]** 28/24 33/11 33/18 33/18

**D**

**decided [2]** 5/17 17/19
**deciding [1]** 14/20
**decision [8]** 6/6 10/3 11/2 13/3 27/15 27/15 32/19 41/8
**decisions [3]** 10/3 28/2 31/16
**deems [1]** 19/24
**defendant [3]** 1/12 2/15 38/17
**defense [1]** 41/13
**defenses [1]** 42/25
**definitely [1]** 4/15
**definition [1]** 27/25
**Delaware [1]** 38/12
**delivered [1]** 38/5
**demodulation [2]** 26/20 34/13
**demonstratives [4]** 36/18 36/20 37/19 38/2
**Denby [1]** 24/24
**depending [1]** 31/5
**depends [1]** 20/11
**deposed [3]** 42/16 42/19 42/21
**deposition [11]** 22/4 22/6 24/20 24/21 24/24 25/19 25/21 31/4 35/11 41/11 42/23
**deprived [1]** 9/24
**describe [1]** 32/12
**design [3]** 23/25 24/16 41/18
**designated [1]** 24/20
**designations [6]** 22/4 24/21 31/5 31/7 31/17 35/11
**designed [1]** 24/2
**designing [4]** 22/22 23/19 23/21 24/18
**desk [1]** 29/12
**details [2]** 20/11 21/2
**developing [2]** 23/8 23/16
**device [9]** 23/17 24/16 25/12 25/16 26/11 27/8 27/9 28/20 29/21
**device...in [1]** 25/11
**devices [3]** 25/9 25/14 41/19
**did [8]** 4/14 4/15 11/20 25/6 27/19 29/13 36/5 43/15
**didn't [2]** 12/16 26/6
**Diego [1]** 2/14
**difference [2]** 7/23 16/8
**different [8]** 11/18 11/18 11/19 12/4 13/12 15/4 21/10 43/22
**difficult [1]** 39/4
**dire [3]** 43/7 44/7 44/9
**directed [1]** 17/21
**directly [1]** 10/9
**disagree [1]** 34/21
**disclose [4]** 36/19 38/2 38/16 39/5
**disclosed [8]** 36/21 36/23 37/3 37/8 37/10 37/13 37/17 37/20
**disclosure [10]** 36/18 38/10 38/20 39/13 39/14 41/5 41/6 41/12 42/7 42/9
**discovery [1]** 42/5
**discrete [2]** 6/7 44/14
**discuss [4]** 6/1 18/12 43/13 45/5
**discussed [2]** 17/25 33/15
**discussing [1]** 32/19
**discussion [4]** 9/3 33/6 33/12 39/25
**discussions [1]** 7/25
**disprove [1]** 27/21
**dispute [7]** 6/11 6/16 33/5 33/15 36/17 38/1 38/6
**DISTRICT [3]** 1/4 1/5 16/7
**divergent [1]** 35/8
**diverging [1]** 7/20
**DIVISION [1]** 1/6
**do [46]** 5/6 5/6 5/7 6/18 6/22 7/19 8/4 11/17 15/5 16/23 18/13 19/15 20/17 21/5 21/11 26/21 26/25 28/8 28/10 28/17 28/20 28/21 28/22 29/8 29/8 30/14 30/15 30/18 30/20 31/20 33/1 33/7 33/13 33/14 33/18 33/25 34/3 35/2 36/16 39/7 40/11 43/19 44/14 44/15 45/9 45/19
**doctors [2]** 11/7 25/20
**document [3]** 10/22 22/19 29/18
**documents [5]** 22/15 31/24 34/23 35/1 35/2
**does [2]** 19/17 22/16
**doesn't [3]** 22/11 36/11 36/21
**doing [1]** 45/18
**don't [20]** 5/6 5/9 6/1 13/4 14/1 17/6 19/7 21/5 22/1 22/5 22/5 24/4 28/6 28/7 30/11 33/15 35/11 38/10 39/8 45/21
**done [3]** 6/25 32/6 44/3
**door [1]** 29/3
**DORR [3]** 2/17 2/21 3/2
**Doug [1]** 4/11
**DOUGLAS [1]** 2/5
**down [9]** 20/4 22/17 22/21 23/15 23/23 25/5 25/10 25/19 26/1
**dozens [1]** 24/11
**Dr [10]** 9/5 10/10 25/17 25/22 26/4 26/24 27/18 27/23 28/9 30/13
**Dr. [31]** 7/19 9/14 10/4 10/9 10/24 10/24 11/25 12/3 12/6 12/12 13/7 13/9 13/11 13/20 13/24 14/8 14/17 15/5 15/9 15/14 16/24 17/11 26/24 27/19 27/23 28/9 30/3 30/13 32/20 33/22 33/24
**Dr. Lamego [4]** 27/19 27/23 28/9 30/13
**Dr. Madisetti [15]** 7/19 9/14 11/25 12/3 13/7 13/11 13/20 14/17 15/5 15/9 16/24 17/11 30/3 32/20 33/24
**Dr. Madisetti's [1]** 10/24
**Dr. O'Reilly [1]** 26/24
**Dr. Raja [7]** 10/4 12/6 12/12 13/9 14/8 15/14 33/22
**Dr. Raja's [3]** 10/9 10/24 13/24
**Drive [1]** 2/13
**duke [1]** 34/22
**during [7]** 9/17 11/5 24/5 37/23 37/24 42/8 43/1
**duty [4]** 28/20 28/21 32/4 32/5

**E**

**e-mail [1]** 45/12
**each [1]** 45/8
**earlier [5]** 12/12 14/20 23/10 31/8 31/15
**East [1]** 2/10
**EE [1]** 25/1
**effective [1]** 43/18
**efficiently [1]** 43/24
**either [4]** 8/4 13/6 13/19 14/2
**El [1]** 2/21
**electronic [3]** 38/25 39/6 39/11
**electronics [1]** 39/10
**else [3]** 36/20 43/4 45/3
**employees [1]** 24/11
**encapsulation [1]** 6/19
**end [2]** 26/19 36/3
**ended [1]** 34/12
**ending [2]** 23/3 23/10
**enforce [1]** 18/15
**engineering [1]** 12/3
**engineers [3]** 41/1 41/19 42/18
**enough [1]** 35/9
**ensuring [1]** 19/17
**entertain [1]** 35/16
**entire [4]** 38/25 39/6 39/11 43/20
**entitled [2]** 41/22 47/9
**envisioning [1]** 8/10
**equivalent [2]** 7/1 8/14
**essentially [2]** 8/11 26/17
**et [4]** 1/9 4/3 32/11 32/11
**even [9]** 8/11 9/9 17/2 22/23 27/22 28/12 33/1 33/3 38/14
**events [2]** 20/14 20/15
**Everest [4]** 20/14 22/2 26/7 28/9
**everyone [1]** 39/17
**everything [3]** 34/21 36/20 39/12
**evidence [18]** 10/25 16/6 16/17 17/6 17/10 17/21 18/11 18/21 19/8 20/2 20/3 22/3 22/16 23/18 29/1 29/17 30/18 34/14
**exact [3]** 10/19 12/7 13/16
**exactly [2]** 12/9 28/1
**examine [1]** 32/21
**example [5]** 9/16 12/7 14/12 20/12 44/13
**exception [1]** 19/4
**excerpt [1]** 23/1
**excerpts [2]** 24/20 24/23
**exclusion [2]** 11/21 15/17
**Exhibit [3]** 22/25 23/1 23/11
**Exhibit 10 [2]** 22/25 23/1
**exhibits [3]** 22/18 37/18 37/24
**exists [1]** 29/3
**expect [3]** 7/19 33/13 35/14
**expedited [1]** 46/5
**experience [4]** 25/14 26/4 27/8 36/24
**expert [4]** 13/22 15/16 18/12 22/9
**expertise [2]** 15/15 24/16
**expiration [1]** 42/4
**explain [1]** 33/23
**explanations [1]** 43/22
**extent [1]** 33/16
**extraordinary [1]** 35/15
**extremely [1]** 20/20
**eye [1]** 34/6

**F**

**fact [5]** 12/15 14/12 25/8 34/1 40/22
**facts [7]** 8/15 19/19 19/22 19/23 21/14 21/19 22/6
**factual [1]** 7/24
**faint [1]** 20/22
**fairly [1]** 6/13
**fall [2]** 45/1 45/11
**falls [1]** 45/3
**far [4]** 10/12 20/2 26/8 28/13
**faster [1]** 45/20
**favor [2]** 27/13 45/19
**favorable [1]** 43/21
**feasible [2]** 36/5 43/25
**feature [1]** 29/21
**features [32]** 9/7 9/8 10/6 10/7 12/1 20/18 21/11 27/12 27/18 27/20 28/4 28/8 29/5 29/7 29/22 30/2 30/5 30/10 30/11 30/15 30/24 32/1 32/3 32/23 32/24 33/2 33/6 33/24 34/1 34/8 34/18 34/24
**Federal [1]** 40/1
**feelings [1]** 44/5
**few [2]** 23/10 42/23
**file [4]** 39/6 39/11 45/14 45/15
**filing [1]** 42/3
**final [3]** 15/18 27/15 43/7
**find [1]** 34/11
**fine [7]** 8/8 8/25 12/13 21/20 35/4 35/7 44/14
**finish [3]** 24/9 34/20 36/3
**first [9]** 5/9 5/13 6/8 7/13 11/13 15/6 38/8 41/10 42/22
**fit [1]** 29/5
**flexible [1]** 45/18
**Floor [1]** 2/7
**flush [1]** 31/15
**foam [1]** 26/19
**focus [3]** 32/24 34/15 34/17
**focused [3]** 21/10 21/17 34/7
**focuses [1]** 30/3
**folks [3]** 27/22 35/6 45/8
**follow [6]** 5/12 14/16 35/15 43/17 44/3 45/19
**follow-up [2]** 43/17 44/3
**foregoing [1]** 47/7
**form [6]** 31/18 32/10 34/12 35/12 40/17 40/17
**format [1]** 47/10
**four [3]** 37/20 40/16 40/17
**frankly [1]** 28/12
**FRAZIER [2]** 2/17 4/19
**Friday [2]** 12/17 36/3
**front [2]** 35/3 45/18
**full [3]** 14/13 44/14 44/16
**fully [1]** 6/9
**functional [1]** 8/14
**fundamentally [1]** 15/14
**further [10]** 18/1 18/2 18/8 25/5 25/10 29/24 39/21 43/5 45/23 46/3

**G**

**gave [1]** 25/18

## G

**generated [1]** 38/3
**GenPro [1]** 16/6
**gentlemen [1]** 16/25
**get [5]** 22/24 23/5 38/11 39/6 39/16
**getting [3]** 10/12 10/19 30/6
**gist [1]** 11/24
**give [4]** 7/5 33/10 35/14 38/13
**given [5]** 7/3 17/24 19/22 23/22 33/17
**giving [1]** 31/8
**Glaukos [1]** 16/3
**go [11]** 5/8 5/24 8/1 14/19 20/4 21/2 23/3 23/10 25/24 26/1 44/1
**goes [3]** 9/9 23/20 28/13
**going [27]** 8/20 12/13 12/18 13/11 13/25 17/5 19/9 19/10 22/3 22/4 30/7 30/8 31/6 32/9 33/5 33/8 33/12 34/4 34/5 35/1 35/16 36/25 38/20 39/13 40/15 41/23 43/23
**golden [2]** 22/23 23/13
**good [15]** 4/6 4/8 4/13 4/16 4/17 4/20 4/22 4/24 5/2 5/4 5/5 5/8 13/18 18/5 36/1
**got [4]** 22/14 24/4 31/24 36/7
**government [1]** 16/9
**grand [1]** 26/18
**granted [2]** 27/13 27/16
**great [3]** 31/15 35/18 39/8
**greater [1]** 13/24
**GREGORY [1]** 2/20
**guidance [6]** 7/2 7/8 7/12 7/17 7/21 7/23

## H

**had [22]** 5/13 6/7 9/23 11/16 14/22 14/24 15/5 20/17 21/2 25/8 26/20 34/14 35/24 36/15 36/16 38/9 38/12 39/22 41/20 42/22 42/25 43/12
**HALE [3]** 2/17 2/21 3/2
**half [2]** 20/17 20/21
**hand [3]** 10/8 10/11 34/25
**handed [8]** 10/22 10/23 12/8 22/19 22/25 24/19 29/11 29/18
**handling [1]** 40/11
**handout [1]** 25/18
**happened [1]** 20/20
**happening [1]** 20/17
**happy [2]** 14/7 42/10
**has [20]** 6/4 9/14 12/6 15/17 17/11 17/12 18/21 20/3 20/5 27/3 28/20 28/21 28/21 29/8 29/18 30/18 32/5 40/1 42/1 42/24
**hasn't [1]** 27/22
**have [77]**
**having [6]** 7/16 7/20 20/3 33/6 38/18 45/17
**HAYNES [1]** 3/5
**he [11]** 13/21 14/9 15/22 25/8 25/10 25/23 28/15 28/16 29/14 29/16 33/23
**he's [1]** 12/9
**health [1]** 9/23
**healthcare [1]** 25/2
**hear [6]** 26/23 32/9 33/5 36/11 43/20 46/2
**heard [1]** 5/10
**hearing [1]** 32/8
**heart [15]** 7/15 23/14 24/1 28/5 29/21 30/3 30/10 30/15 30/19 30/24 30/25 33/3 33/7 33/19 34/9
**held [4]** 43/14 43/21 45/1 47/9
**help [1]** 24/16
**helpful [1]** 14/7
**her [1]** 24/24
**here [16]** 11/1 11/23 12/1 12/2 13/14 14/8 15/10 16/8 20/12 23/7 26/23 29/13 33/10 34/17 35/15 43/19
**here's [1]** 11/13
**hereby [1]** 47/6
**herring [1]** 16/20
**high [11]** 28/5 30/3 30/10 30/15 30/19 32/4 33/3 33/7 33/15 33/19 34/9
**High/Low [9]** 28/5 30/3 30/10 30/15 30/19 33/3 33/7 33/19 34/9
**highlight [1]** 39/4
**highlighted [2]** 12/9 14/14
**him [1]** 14/8
**hired [2]** 24/11 27/19
**hiring [9]** 24/8 24/13 24/15 25/13 25/22 26/4 26/8 26/8 27/8
**his [12]** 9/7 11/8 11/25 12/5 12/8 14/10 14/12 14/13 15/15 25/13 26/4 30/3
**historical [2]** 19/20 20/15
**historically [1]** 19/1
**hold [2]** 21/18 43/22
**holiday [2]** 36/10 36/13
**Honor [100]**
**Honor's [14]** 6/8 6/10 6/12 6/19 6/20 7/2 7/8 7/12 10/8 18/16 18/20 19/1 19/8 20/5
**HONORABLE [1]** 1/8
**HORNE [9]** 2/9 4/10 21/25 24/9 26/21 28/15 29/1 29/9 30/23
**Hotelling's [1]** 25/18
**hours [1]** 35/7
**House [1]** 3/9
**housekeeping [1]** 43/4
**how [4]** 13/4 18/14 39/11 40/11
**hundred [1]** 14/11
**hypothetical [6]** 20/9 20/12 20/16 20/21 22/9 22/12

## I

**I'd [3]** 13/1 39/11 40/2
**I'll [13]** 8/3 14/19 14/25 15/11 21/18 21/20 23/5 27/5 33/21 34/22 42/15 42/18 45/18
**I'm [24]** 8/1 8/4 8/6 8/20 12/13 12/18 12/20 16/22 17/17 18/17 22/1 25/1 31/6 35/16 37/5 38/8 39/13 40/12 42/10 42/17 44/8 44/19 45/18 45/19
**identified [2]** 11/5 20/3
**identify [1]** 21/16
**illustrates [1]** 29/2
**implicated [1]** 9/2
**important [3]** 7/14 7/17 7/18
**INC [2]** 1/11 4/3
**inches [1]** 37/13
**inclined [2]** 8/4 40/2
**include [2]** 7/11 8/21
**including [3]** 9/5 13/16 13/22
**indent [1]** 23/12
**independent [1]** 11/15
**indicate [1]** 31/3
**indicated [4]** 9/14 35/6 40/8 40/21
**individual [4]** 43/15 43/17 44/12 44/15
**indulge [1]** 9/10
**infecting [1]** 43/23
**information [2]** 24/14 42/10
**infringe [4]** 31/25 32/2 34/24 34/24
**infringement [5]** 15/16 18/23 26/7 41/3 41/21
**infringing [1]** 34/18
**initial [1]** 8/21
**insofar [1]** 5/24
**instructions [9]** 5/25 7/1 7/4 7/10 8/5 8/21 32/11 39/24 40/7
**insulated [1]** 44/16
**integrated [1]** 32/1
**interaction [1]** 20/9
**interactions [4]** 18/25 19/20 20/20 21/15
**interest [5]** 9/20 11/20 16/11 23/20 26/6
**interested [3]** 23/19 26/2 26/3
**interesting [1]** 38/15
**International [2]** 9/17 9/18
**interpretation [1]** 6/19
**interrogatory [2]** 42/5 42/11
**intersect [1]** 5/25
**intersects [1]** 11/12
**introduce [2]** 20/1 29/17
**introduced [1]** 37/18
**invalidity [1]** 42/9
**involving [1]** 13/12
**IPR [1]** 6/16
**Irvine [1]** 2/7
**is [133]**
**ISABELLA [2]** 2/6 4/11
**isn't [4]** 12/21 12/24 16/20 20/8
**issue [28]** 9/25 10/10 10/16 11/13 12/2 13/3 17/4 17/25 20/18 22/1 22/13 22/14 24/6 27/12 27/14 27/20 27/24 28/7 31/8 31/23 32/1 34/5 34/6 38/6 39/22 40/11 41/4 42/19
**issues [13]** 5/22 6/3 6/7 9/11 14/15 14/24 18/2 18/3 20/25 21/10 26/16 26/25 28/23
**it [80]**
**it's [38]** 7/15 7/18 9/11 10/15 10/15 10/16 10/17 11/1 12/8 14/1 15/15 17/5 17/7 18/16 22/10 22/10 22/11 22/18 23/1 23/22 24/15 27/25 28/7 28/23 29/6 29/6 31/1 34/5 34/24 35/13 37/15 38/15 39/1 39/1 39/4 40/15 40/17 45/14
**ITC [4]** 11/4 15/24 32/20 33/25
**Item [1]** 4/2
**itself [1]** 7/7

## J

**JAMES [2]** 1/8 25/6
**January [1]** 42/3
**JENSEN [2]** 2/3 4/11
**Joe [1]** 4/17
**joint [1]** 45/12
**JOSEPH [3]** 2/3 2/16 4/6
**JUDGE [1]** 1/8
**judgment [6]** 6/6 13/5 27/13 27/14 27/15 42/2
**Judicial [2]** 40/1 47/11
**June [1]** 42/4
**juror [1]** 8/2
**jurors [2]** 43/12 43/17
**jury [34]** 5/6 5/25 6/19 7/1 7/3 7/4 7/5 7/9 7/16 8/14 10/5 17/25 19/22 21/4 24/11 28/23 29/4 30/15 30/18 32/10 33/6 33/8 33/10 33/16 33/23 34/6 40/2 40/16 43/7 43/11 43/20 43/23 44/14 45/18
**jury's [1]** 7/12
**just [31]** 8/7 8/18 8/23 10/18 10/23 14/1 15/2 15/21 17/7 19/4 21/8 22/25 26/21 27/5 28/15 28/23 29/16 29/25 31/22 33/21 34/3 34/20 34/21 35/16 38/6 39/8 39/16 42/15 42/18 42/23 43/6
**Just to [1]** 31/22
**JVS [2]** 1/11 4/2

## K

**KACHNER [2]** 2/9 4/11
**keep [6]** 21/16 34/6 34/7 34/15 34/17 44/16
**Ken [1]** 5/1
**KENNETH [1]** 3/4
**kept [1]** 34/11
**key [2]** 29/21 31/7
**kind [3]** 39/5 42/7 42/25
**KNOBBE [5]** 2/6 2/10 2/13 4/7 4/9
**know [13]** 7/7 8/1 8/10 8/24 9/23 11/16 11/20 25/11 38/23 39/10 42/12 44/13 45/6
**knowing [1]** 41/7
**knows [1]** 39/17

## L

**ladies [1]** 16/25
**Lamego [10]** 24/12 24/23 26/24 27/19 27/23 28/9 29/12 29/13 30/13 30/25
**language [1]** 8/12
**large [5]** 19/5 19/6 30/2 30/8 43/24
**last [4]** 21/3 31/23 43/10 44/8
**later [2]** 9/4 20/17
**lay [1]** 31/9
**least [1]** 15/11
**leave [3]** 15/11 19/14 34/22
**left [2]** 13/10 29/12
**legal [1]** 20/16
**length [2]** 7/10 35/18
**let [7]** 8/23 12/22 14/25 17/22 23/5 24/9 31/2
**let's [2]** 17/16 35/5
**level [1]** 33/16
**light [1]** 13/5
**like [8]** 5/10 6/16 25/6 38/24 39/2 40/16 42/10 42/11
**limine [19]** 5/22 5/24 6/2 6/5 9/3 9/4 9/5 9/10

## L

**limine... [11]** 10/2 10/11 10/15 11/1 11/12 12/14 13/3 15/3 17/21 18/11 28/11
**limitations [3]** 21/11 30/16 33/2
**limited [6]** 18/21 18/22 19/11 20/2 20/5 20/6
**line [4]** 10/25 25/10 25/19 32/13
**line 1 [1]** 25/19
**line 13 [1]** 25/10
**line 8 [1]** 32/13
**lines [3]** 25/2 25/22 26/1
**litigation [1]** 41/19
**little [2]** 25/19 40/10
**live [1]** 17/8
**LLP [7]** 2/6 2/10 2/13 2/17 2/21 3/2 3/5
**logically [1]** 14/1
**long [3]** 21/1 21/9 40/20
**look [13]** 11/3 12/8 12/11 14/19 22/25 23/11 24/22 30/7 30/9 31/2 44/6 44/10 45/2
**looked [2]** 12/6 17/3
**looking [5]** 17/2 24/10 24/25 25/3 29/17
**Los [1]** 2/11
**lot [5]** 5/7 25/11 33/6 34/14 35/13
**Low [10]** 28/5 30/3 30/10 30/15 30/19 32/4 33/3 33/7 33/19 34/9

## M

**MA [1]** 2/18
**made [9]** 6/15 11/5 11/22 15/13 15/25 16/16 27/22 35/19 42/1
**Madisetti [20]** 7/19 9/6 9/14 10/10 11/7 11/25 12/3 13/7 13/11 13/20 14/17 15/5 15/7 15/9 16/24 17/11 30/3 32/20 32/21 33/24
**Madisetti's [1]** 10/24
**mail [1]** 45/12
**Main [1]** 2/7
**maintain [1]** 40/25
**make [6]** 6/1 9/19 16/10 18/18 27/5 32/11
**makes [2]** 9/8 45/13
**making [8]** 15/22 23/25 24/17 26/10 27/9 41/7 41/15 41/17
**maneuvered [1]** 39/12
**manipulate [1]** 39/4
**manipulated [1]** 39/12
**many [4]** 9/20 11/14 18/1 31/23
**Marcelo's [1]** 25/6
**MARK [4]** 2/9 2/20 4/11 4/23
**MARTENS [5]** 2/6 2/10 2/13 4/7 4/10
**MASIMO [32]** 1/9 4/3 4/7 5/16 6/15 7/1 7/10 14/25 16/23 19/18 21/25 22/16 22/23 23/4 23/9 23/14 24/11 24/14 25/15 25/15 28/20 29/1 30/6 33/1 33/13 35/22 37/21 40/4 43/5 44/10 45/10 46/3
**Masimo's [6]** 15/8 15/11 17/18 18/6 22/17 22/23
**match [1]** 30/6
**material [5]** 12/10 14/9 35/16 36/23 37/3
**materials [14]** 9/6 10/10 13/8 13/17 13/21 13/23 13/25 14/17 31/8 32/19 33/24 37/11 37/13 37/15
**matter [1]** 47/9
**matters [2]** 21/17 34/8
**MATTHEW [1]** 2/5
**may [9]** 10/19 11/7 12/20 16/13 24/8 29/12 32/17 32/21 43/10
**maybe [3]** 25/24 27/8 45/9
**me [12]** 4/9 4/18 9/10 10/11 12/22 17/22 21/19 31/2 31/3 31/8 31/18 35/6
**mean [7]** 6/10 7/25 26/18 30/1 35/8 37/20 40/12
**meaning [10]** 6/9 6/11 6/14 6/21 7/8 7/22 11/9 12/2 17/10 32/5
**measurements [1]** 32/6
**mechanism [2]** 19/17 21/16
**medical [16]** 12/6 17/12 23/17 24/1 24/15 25/8 25/11 25/12 25/14 25/15 25/20 26/11 27/8 27/9 29/21 34/1
**meet [11]** 8/17 19/18 21/11 28/8 30/12 30/16 30/20 33/2 33/19 44/10 45/10
**meeting [1]** 20/20
**meets [1]** 27/1
**memorialization [1]** 6/20
**mere [2]** 23/20 26/5
**merely [1]** 23/19
**merit [1]** 12/20
**Mesa [1]** 3/6
**met [1]** 35/18
**middle [2]** 12/14 12/19
**might [4]** 18/22 19/1 31/8 44/11
**MIL [12]** 5/14 15/7 15/8 15/12 15/23 17/18 17/18 17/22 18/6 21/24 22/13 23/2
**MILs [3]** 15/4 15/5 15/11
**misspoke [1]** 44/9
**mix [1]** 30/6
**Mode [9]** 28/6 30/4 30/11 30/16 30/20 33/3 33/8 33/19 34/9
**moment [4]** 10/18 26/15 44/17 44/20
**MONDAY [2]** 4/1 36/12
**Mondays [1]** 36/12
**money [3]** 5/6 5/6 5/7
**monitor [30]** 6/4 6/13 8/11 9/4 9/8 9/12 10/1 10/7 10/16 11/7 11/9 11/13 12/1 12/5 13/14 17/1 17/9 17/23 18/3 23/14 23/19 23/21 23/25 24/1 24/18 26/11 26/14 28/23 33/20 33/25
**more [10]** 8/9 25/3 27/5 33/9 34/14 35/2 35/8 36/1 40/10 43/6
**Moreover [1]** 11/19
**morning [11]** 4/6 4/8 4/13 4/16 4/17 4/20 4/22 4/24 5/2 5/4 18/5
**most [4]** 21/13 22/2 28/12 28/13
**motion [17]** 5/22 5/24 6/2 6/5 9/2 9/9 10/2 10/15 11/1 11/12 12/19 13/2 15/3 17/21 18/10 27/16 28/11
**motions [8]** 5/9 9/4 9/5 10/10 10/13 10/14 12/14 29/24
**move [2]** 17/16 39/3
**movements [1]** 38/25
**moving [1]** 17/17
**Mr [6]** 5/11 15/1 15/2 29/1 34/4 46/1
**Mr. [27]** 5/20 15/6 15/10 15/13 15/22 16/16 18/12 19/23 24/9 24/12 24/13 25/18 25/21 26/12 26/21 28/15 29/9 29/12 29/13 30/23 30/25 32/9 34/22 38/7 41/9 41/15 45/4
**Mr. Bergman [2]** 18/12 19/23
**Mr. Claassen [1]** 16/16
**Mr. Horne [5]** 24/9 26/21 28/15 29/9 30/23
**Mr. Hotelling's [1]** 25/18
**Mr. Lamego [4]** 24/12 29/12 29/13 30/25
**Mr. Mueller [9]** 5/20 15/6 15/10 15/13 15/22 26/12 32/9 34/22 41/9
**Mr. O'Reilly [1]** 24/13
**Mr. Perica's [1]** 25/21
**Mr. Re [3]** 38/7 41/15 45/4
**Ms [2]** 15/20 41/24
**Ms. [2]** 15/12 46/6
**Ms. Swaroop [1]** 15/12
**Ms. Vargas [1]** 46/6
**much [2]** 31/3 35/9
**MUELLER [12]** 2/16 4/18 5/20 15/2 15/6 15/10 15/13 15/22 26/12 32/9 34/22 41/9
**multi [1]** 21/3
**multi-week [1]** 21/3
**my [4]** 4/9 35/10 37/21 38/19

## N

**N.W [1]** 3/2
**namely [2]** 7/24 21/10
**narrative [2]** 26/18 26/23
**narrow [2]** 21/14 38/5
**need [9]** 19/15 22/1 22/6 33/14 36/1 36/21 37/23 44/12 46/5
**needs [5]** 13/7 20/6 28/24 33/16 37/10
**negotiation [6]** 20/9 20/12 20/16 20/21 22/9 22/12
**neither [1]** 37/22
**new [6]** 12/15 35/16 36/19 38/2 38/3 42/20
**news [1]** 5/5
**next [1]** 25/21
**nice [1]** 31/4
**NICHOLAS [1]** 2/5
**Nick [1]** 4/12
**no [48]**
**none [8]** 26/20 26/21 27/11 27/21 27/24 27/25 34/16 41/11
**noninfringement [1]** 42/8
**noninvasive [2]** 25/23 26/2
**not [71]**
**note [2]** 42/15 42/18
**notebook [2]** 8/2 8/5
**notebooks [2]** 8/22 40/9
**nothing [25]** 8/9 11/17 15/5 15/17 17/22 18/1 18/2 18/8 20/17 26/25 26/25 28/10 28/17 28/20 28/21 28/22 29/8 29/8 30/14 30/18 33/7 39/21 43/5 45/23 46/2
**Notification [9]** 28/5 30/4 30/11 30/16 30/20 33/3 33/7 33/19 34/9
**November [4]** 5/8 21/4 21/6 46/5
**November 4 [2]** 5/8 21/6
**now [6]** 6/1 9/9 18/16 18/17 19/6 27/15
**number [4]** 10/20 29/10 35/25 45/12

## O

**O'Reilly [9]** 24/13 25/17 25/23 26/4 26/24 27/19 27/23 28/9 30/13
**objection [5]** 38/4 40/3 40/4 40/5 45/5
**obviously [2]** 25/15 38/9
**occur [1]** 20/12
**October [3]** 1/17 4/1 47/13
**offer [2]** 10/5 14/8
**offered [5]** 9/16 9/19 11/18 11/19 13/14
**offering [2]** 9/22 11/15
**Office [1]** 39/25
**oh [2]** 29/12 44/8
**okay [32]** 4/16 5/19 8/16 8/25 13/1 14/5 14/23 15/19 16/12 18/4 19/12 21/23 22/18 23/6 29/23 30/22 31/2 31/13 31/21 32/16 34/19 36/15 39/20 39/23 40/6 40/19 43/3 45/6 45/15 45/21 45/25 46/9
**old [1]** 39/2
**OLSON [3]** 2/6 2/10 2/13
**one [25]** 10/18 16/3 16/4 17/14 18/8 20/20 22/8 29/10 32/25 32/25 35/25 38/6 40/16 40/18 41/6 43/6 43/7 43/13 43/13 43/15 44/1 44/1 44/18 44/21 45/8
**one-sided [1]** 17/14
**ones [4]** 14/15 15/5 44/10 44/25
**only [12]** 6/5 24/12 36/17 36/19 38/4 39/22 40/17 41/14 41/17 43/23 44/17 44/20
**opening [2]** 8/4 29/3
**opinion [6]** 9/7 11/8 12/1 12/5 12/16 19/9
**opinions [6]** 8/12 10/5 13/15 13/24 43/21 43/23
**opportunity [4]** 13/8 14/3 43/16 44/2
**opposition [1]** 23/2
**oral [1]** 14/8
**order [10]** 13/5 14/2 14/4 15/18 21/20 21/21 23/18 24/3 31/10 35/13
**orders [1]** 40/22
**ordinary [4]** 7/25 16/16 16/18 17/9
**other [10]** 5/7 9/4 14/24 16/5 22/8 33/6 34/23 35/12 43/15 44/5
**otherwise [2]** 13/10 21/20
**ought [1]** 38/22
**our [28]** 7/13 8/24 9/5 9/13 11/13 17/14 18/10 18/19 19/4 19/13 19/25 20/3 20/6 21/7 23/2 27/13 27/16 31/14 32/25 32/25 34/14 34/23 36/9 36/18 36/24 40/22 41/1 45/12
**ourselves [2]** 21/17 33/14
**out [5]** 25/4 31/9 31/15 34/11 34/23
**outcome [1]** 22/11
**outset [1]** 7/5
**outside [1]** 14/10
**over [4]** 19/5 20/21 24/14 37/15
**overlap [1]** 18/2
**own [3]** 11/16 34/23 41/20

## P

**packet [1]** 24/19

**P**

**page [27]** 10/16 10/17 10/20 11/1 11/3 11/24 13/20 14/18 15/23 23/3 23/10 23/18 25/2 25/10 25/17 25/19 25/19 25/21 25/22 26/1 27/15 29/18 32/12 32/13 32/18 32/18 47/10
**page 26 [1]** 25/2
**page 3 [1]** 25/17
**page 59 [1]** 25/22
**page 6 [9]** 11/1 11/3 11/24 13/20 14/18 15/23 32/12 32/13 32/18
**page 61 [1]** 26/1
**page 7 [1]** 23/18
**page 96 [1]** 25/10
**pages [2]** 23/10 25/5
**pages 29 [1]** 25/5
**Palo [1]** 2/22
**paragraph [6]** 11/3 12/8 13/4 13/20 14/12 14/15
**Park [1]** 2/10
**PARKER [2]** 3/4 5/1
**part [6]** 6/2 7/4 10/14 11/12 29/6 33/21
**particular [7]** 6/3 7/19 9/6 13/2 20/18 26/2 43/14
**particularly [1]** 31/7
**parties [15]** 9/19 18/25 18/25 19/20 21/15 28/14 35/14 36/19 37/9 38/2 43/11 43/22 44/5 44/7 45/1
**parties' [1]** 20/8
**party [3]** 16/4 16/5 43/15
**pass [2]** 10/19 22/17
**patent [20]** 6/15 7/7 7/7 11/10 11/17 11/22 12/2 16/19 17/2 21/5 21/12 27/1 27/3 28/3 39/24 39/25 41/2 41/10 42/4 43/1
**patents [9]** 11/18 13/12 40/9 41/7 41/8 41/18 41/18 42/22 42/24
**patient [35]** 6/3 6/3 6/12 6/13 8/10 8/11 9/3 9/3 9/8 9/12 10/1 10/6 10/15 11/6 11/9 11/13 12/1 12/5 13/13 17/1 17/9 17/23 17/24 18/3 18/3 23/19 23/21 23/25 24/18 26/11 26/14 26/14 28/22 33/20 33/25
**Pennsylvania [1]** 3/2
**people [6]** 24/15 24/25 26/9 27/8 27/11 35/9
**percent [3]** 14/11 37/1 37/1
**perhaps [1]** 40/10
**Perica's [1]** 25/21
**period [4]** 42/2 42/8 43/1 43/2
**periods [1]** 44/1
**permeating [1]** 31/23
**permission [3]** 10/8 16/23 29/1
**permit [1]** 10/11
**permitted [2]** 16/5 41/1
**person [2]** 16/16 17/12
**persons [1]** 16/18
**perspective [4]** 9/13 9/22 17/11 31/14
**PESTANA [2]** 2/6 4/12
**phrase [1]** 8/11
**physician [15]** 10/4 12/4 12/6 13/11 13/14 16/9 16/17 16/24 17/3 17/3 17/6 17/8 17/12 17/13 17/14
**physicians [7]** 9/15 9/16 9/21 11/15 15/25 16/25 34/2
**PICKERING [3]** 2/17 2/21 3/2
**place [1]** 7/11
**plain [6]** 6/9 6/11 6/13 6/21 7/22 17/9
**plaintiff [4]** 38/9 38/12 38/16 38/18
**plaintiffs [3]** 1/10 2/2 38/11
**Plaintiffs' [1]** 5/14
**plan [1]** 24/4
**play [1]** 22/6
**please [2]** 4/4 24/9
**pleased [1]** 46/2
**point [12]** 7/13 9/1 14/20 15/13 15/22 15/25 16/15 17/16 18/18 20/15 36/17 38/1
**points [1]** 11/11
**poised [1]** 33/1
**policed [1]** 20/7
**pool [4]** 43/20 43/23 44/14 44/16
**posed [1]** 43/14
**POSITA [1]** 15/14
**position [4]** 8/24 12/20 40/25 42/6
**positions [1]** 19/16
**post [2]** 41/15 41/23
**post-suit [2]** 41/15 41/23
**potentially [1]** 10/3
**POWELL [2]** 2/12 4/11
**PowerPoint [1]** 39/2
**practice [1]** 38/19
**precise [2]** 13/23 17/4
**precisely [3]** 26/13 26/15 41/3
**preclude [2]** 10/4 14/1
**precluded [3]** 17/4 17/12 17/14
**precluding [1]** 13/5
**preference [1]** 18/16
**prejudice [1]** 20/23
**preparing [2]** 35/22 41/10
**present [10]** 3/7 8/20 12/13 12/21 12/25 19/21 21/19 22/16 26/6 42/12
**presented [1]** 31/18
**presenting [2]** 31/5 40/20
**preserve [1]** 19/13
**PRESIDING [1]** 1/8
**pretrial [5]** 31/9 31/23 35/5 35/12 36/16
**pretty [1]** 10/12
**preview [1]** 18/10
**previous [2]** 14/4 21/4
**previously [10]** 17/23 18/1 36/21 36/22 37/3 37/8 37/10 37/12 37/17 37/20
**principle [2]** 19/9 19/11
**prior [1]** 19/13
**probably [1]** 45/7
**probative [1]** 41/11
**problem [6]** 9/13 10/1 29/2 39/8 39/18 45/17
**procedural [2]** 12/21 12/24
**Procedurally [1]** 15/4
**proceeding [3]** 9/18 11/18 15/24
**proceedings [8]** 1/15 6/16 11/4 11/5 11/8 32/20 46/10 47/9
**process [7]** 14/6 19/17 36/17 43/8 43/12 43/18 45/17
**producing [1]** 25/12
**product [10]** 22/23 23/9 23/16 29/11 29/15 29/20 31/25 32/7 32/13 34/25
**products [1]** 22/17
**professor [1]** 12/3
**proffer [1]** 14/8
**promise [1]** 39/3
**properly [1]** 32/23
**proposal [2]** 26/20 34/13
**proposals [2]** 35/19 35/23
**propose [3]** 5/12 7/3 44/4
**proposed [4]** 7/1 31/9 44/7 44/9
**proposing [1]** 8/7
**proprietary [1]** 24/14
**provided [1]** 23/2
**public [5]** 9/19 9/20 9/24 11/20 16/10
**purpose [2]** 30/7 30/8
**purposes [3]** 11/19 13/23 28/14
**pursuant [1]** 47/6
**push [3]** 34/11 34/11 34/11
**pushing [1]** 32/3
**put [2]** 6/21 40/6
**putting [1]** 32/23

**Q**

**quarrel [1]** 6/11
**quasi [1]** 8/22
**quasi-construction [1]** 8/22
**question [5]** 30/14 36/5 36/9 36/15 37/2
**questioning [1]** 44/1
**questions [11]** 18/14 30/19 40/16 40/18 40/18 43/4 43/13 43/17 44/2 44/13 45/10
**quick [1]** 35/24
**quite [3]** 29/2 40/12 43/24

**R**

**raise [3]** 5/23 6/8 9/8
**raised [1]** 7/9
**raising [1]** 18/17
**Raja [10]** 10/4 12/6 12/12 13/6 13/9 14/8 15/7 15/14 17/25 33/22
**Raja's [4]** 10/9 10/24 13/24 14/20
**rate [5]** 23/14 24/1 29/21 30/24 30/25
**RE [7]** 2/3 4/6 34/4 38/7 41/15 45/4 46/1
**read [1]** 42/22
**reads [1]** 34/25
**real [2]** 2/21 15/13
**really [4]** 7/15 21/17 25/23 32/4
**reason [8]** 6/22 7/18 13/18 17/15 26/13 26/15 27/10 33/21
**reasoning [1]** 19/3
**reasons [1]** 43/20
**rebut [1]** 38/12
**rebuttal [1]** 38/18
**recall [2]** 20/13 43/10
**received [1]** 12/16
**recitation [1]** 28/25
**reconsideration [4]** 12/12 12/19 13/9 14/3
**record [8]** 4/5 10/17 13/17 17/5 17/14 23/2 31/22 34/21
**recurring [2]** 34/5 34/5
**red [2]** 16/20 23/4
**redact [1]** 29/19
**redisclose [1]** 37/23
**redisclosed [1]** 36/21
**redisclosure [1]** 37/10
**refer [4]** 13/7 13/11 13/21 30/12
**reference [6]** 11/7 22/24 23/4 23/13 24/3 28/20
**references [1]** 26/24
**referred [1]** 29/16
**referring [3]** 28/19 37/16 41/9
**refers [1]** 23/4
**reflect [1]** 21/20
**refused [1]** 38/13
**regarding [4]** 15/23 19/19 24/23 32/21
**regulations [1]** 47/11
**rejected [2]** 26/20 34/13
**relate [2]** 32/22 35/24
**related [2]** 9/1 18/16
**relationship [3]** 18/24 27/23 28/14
**relatively [1]** 43/25
**relevance [12]** 13/24 18/21 18/22 19/2 19/11 19/24 20/2 20/6 20/6 20/22 22/2 42/24
**relevant [8]** 11/6 20/9 23/20 24/17 28/23 31/1 42/8 43/1
**relied [2]** 16/4 16/10
**rely [4]** 9/6 9/14 14/12 37/7
**relying [1]** 14/17
**remaining [3]** 38/1 39/22 41/14
**remains [2]** 7/16 38/6
**remember [1]** 36/7
**report [6]** 10/9 10/24 12/8 14/10 14/13 14/13
**reported [1]** 47/8
**REPORTER [1]** 47/16
**REPORTER'S [1]** 1/15
**reprise [1]** 20/24
**request [2]** 24/5 36/18
**requested [1]** 26/15
**requesting [2]** 29/1 38/2
**require [2]** 38/19 39/13
**requirements [5]** 27/2 28/8 30/12 30/21 33/20
**respect [11]** 6/8 13/2 14/6 17/20 18/10 18/24 21/14 26/8 36/16 43/7 44/5
**respectfully [1]** 13/6
**respects [1]** 5/25
**respond [11]** 5/17 13/22 15/21 16/13 17/10 24/8 32/17 40/21 40/22 41/1 41/16
**responding [2]** 10/24 18/7
**responds [1]** 10/9
**response [3]** 13/16 33/14 42/5
**retained [1]** 10/5
**reviewed [2]** 41/2 41/20
**reviewing [1]** 31/6
**right [6]** 5/15 34/4 40/23 43/9 44/24 46/4
**risk [2]** 20/23 43/23
**road [1]** 20/4
**roadmap [1]** 33/17

## R

**role [1]** 39/25
**Rover [4]** 20/13 22/2 26/7 28/9
**RPR [1]** 1/19
**rule [1]** 31/19
**ruled [1]** 27/6
**ruling [7]** 12/12 12/20 14/20 17/5 21/18 26/5 26/8
**rulings [3]** 32/10 35/11 42/1
**run [1]** 22/5
**rushed [1]** 31/6

## S

**SACV [2]** 1/11 4/2
**SACV-20-00048-JVS [2]** 1/11 4/2
**said [11]** 8/13 15/3 17/23 18/11 26/21 27/18 28/1 28/11 34/22 38/15 42/22
**same [9]** 9/11 13/16 22/13 26/17 32/18 34/17 38/13 43/19 43/19
**San [1]** 2/14
**Santa [3]** 1/16 1/20 4/1
**SARAH [2]** 2/17 4/18
**satisfied [1]** 28/4
**saw [2]** 26/17 34/15
**say [15]** 11/4 13/1 13/12 14/9 16/24 17/6 19/10 22/2 25/14 33/22 35/17 36/24 37/19 41/2 41/22
**saying [10]** 11/23 16/25 17/1 28/16 29/13 30/7 37/11 37/22 41/16 42/20
**says [3]** 23/18 24/3 24/24
**schedule [1]** 31/4
**second [10]** 9/1 11/16 16/6 23/11 23/12 36/2 36/3 36/4 36/10 36/15
**secret [9]** 18/11 18/20 20/24 20/25 24/14 26/18 26/22 29/6 34/10
**secrets [2]** 34/12 34/16
**Section [1]** 47/6
**sections [1]** 14/14
**see [19]** 10/2 13/4 14/15 16/24 23/3 23/7 24/23 24/23 29/5 38/4 38/24 39/11 40/11 41/10 42/11 44/17 44/20 45/2 46/4
**seek [2]** 13/8 14/3
**seemed [1]** 15/13
**seems [1]** 33/1
**SEFFENS [3]** 1/19 47/15 47/16
**selection [1]** 43/8
**Sellers [1]** 24/24
**SELNA [1]** 1/8
**SELWYN [2]** 2/20 4/23
**sense [4]** 6/1 9/8 33/13 45/13
**sensitive [1]** 31/7
**sensor [2]** 23/8 30/25
**sensors [6]** 25/4 25/23 25/24 26/2 26/4 26/9
**sentence [1]** 8/11
**separate [1]** 35/23
**September [1]** 22/10
**September of [1]** 22/10
**session [1]** 36/12
**set [10]** 19/22 20/19 21/10 21/14 30/19 33/4 38/21 44/15 44/17 44/20
**setting [2]** 44/12 44/16
**share [2]** 22/15 42/10
**SHARON [3]** 1/19 47/15 47/16
**She [1]** 24/24
**SHEILA [2]** 2/4 4/10
**shift [1]** 39/3
**short [4]** 26/19 34/12 40/17 44/3
**should [17]** 9/24 10/25 13/22 17/24 19/8 19/10 21/13 28/1 28/2 28/16 29/3 30/9 34/6 35/2 36/19 41/22 43/19
**shouldn't [2]** 20/4 41/16
**show [5]** 21/2 21/9 23/24 24/17 33/25
**shown [2]** 27/11 28/19
**shown referring [1]** 28/19
**shows [1]** 26/10
**side [3]** 33/5 35/7 37/22
**sided [1]** 17/14
**sides [2]** 43/16 44/2
**sideshow [5]** 19/18 20/1 20/24 27/3 27/25
**sideshows [1]** 34/18
**signals [1]** 34/26
**significance [1]** 25/6
**significant [1]** 20/23
**similar [2]** 26/23 40/6
**Similarly [3]** 22/8 23/9 25/17
**simple [2]** 30/19 39/2
**simultaneously [1]** 23/13
**situation [2]** 13/10 38/13
**six [3]** 13/4 35/6 37/13
**Six inches [1]** 37/13
**skill [2]** 16/16 16/18
**skip [2]** 4/14 4/15
**slanted [1]** 17/5
**slides [5]** 22/24 37/23 38/3 38/4 38/13
**small [1]** 45/12
**so [68]**
**so-called [1]** 15/15
**sole [1]** 32/3
**some [21]** 7/10 18/12 18/13 18/13 19/1 19/11 20/5 20/10 20/13 20/14 21/7 22/15 22/17 24/19 27/23 33/12 33/16 35/14 38/22 42/1 44/11
**somebody [2]** 4/14 25/13
**something [4]** 7/6 30/4 39/9 46/6
**sorry [6]** 10/18 10/25 23/5 42/17 44/8 44/19
**sought [1]** 6/23
**SOUTHERN [2]** 1/6 16/7
**speak [1]** 28/13
**specific [1]** 26/9
**specifically [3]** 14/16 14/16 25/3
**specification [1]** 6/15
**SPRANKLING [2]** 2/20 4/23
**stage [1]** 9/17
**stand [2]** 13/5 17/8
**standard [1]** 39/24
**standpoint [3]** 25/1 25/1 25/3
**starting [1]** 21/6
**state [2]** 2/18 4/4
**stated [1]** 32/21
**statements [22]** 6/14 9/15 9/15 9/20 9/22 11/5 11/7 11/14 11/15 11/16 11/25 12/4 12/7 13/11 13/13 15/24 15/24 16/1 16/9 16/18 16/24 32/22
**STATES [4]** 1/4 1/19 47/7 47/11
**stealing [1]** 25/15
**stenographically [1]** 47/8
**step [1]** 23/21
**STEPHEN [1]** 2/3
**steps [3]** 23/25 24/18 26/10
**Steve [1]** 4/10
**still [2]** 17/13 40/13
**stilted [1]** 13/17
**stipulate [1]** 22/6
**stipulated [2]** 19/22 19/23
**stipulation [5]** 6/23 19/19 21/15 21/19 26/16
**stray [1]** 29/18
**Street [3]** 1/20 2/7 2/18
**stricken [2]** 13/7 13/19
**strong [1]** 44/5
**strongly [3]** 43/14 43/21 45/1
**strongly-held [3]** 43/14 43/21 45/1
**subject [3]** 18/7 32/3 42/19
**subjective [2]** 41/3 41/20
**submit [4]** 13/6 18/7 19/10 24/22
**submits [1]** 33/9
**submitted [4]** 16/9 40/15 44/7 44/9
**submitting [1]** 20/5
**substance [4]** 6/12 6/17 7/14 7/14
**such [6]** 12/13 27/21 41/5 41/6 41/12 41/12
**suffice [1]** 33/25
**sufficient [1]** 35/7
**suggest [1]** 19/17
**suggested [1]** 8/4
**suit [3]** 41/15 41/23 42/3
**Suite [4]** 1/20 2/10 2/21 3/5
**sum [1]** 34/3
**summary [6]** 6/6 13/5 27/13 27/14 27/15 42/1
**support [7]** 9/6 9/22 11/8 11/21 11/25 12/5 13/13
**supported [1]** 11/20
**sure [4]** 10/21 16/22 37/5 40/12
**SWAROOP [5]** 2/4 4/10 15/12 15/20 41/24

## T

**take [14]** 5/9 11/23 12/13 12/18 14/19 18/19 24/22 29/4 31/2 35/14 38/17 44/6 44/10 45/2
**takes [4]** 21/1 21/8 29/4 45/8
**taking [4]** 12/3 12/9 26/10 32/6
**talk [2]** 28/17 45/8
**talking [14]** 15/10 19/16 20/19 21/14 23/12 23/15 23/16 25/13 25/20 25/22 25/24 29/19 37/14 42/3
**team [2]** 25/20 25/20
**teardown [1]** 28/19
**teardowns [7]** 22/14 24/3 24/5 28/17 29/16 29/17 29/19
**tearing [4]** 22/17 22/21 23/15 23/22
**technology [1]** 39/5
**tell [1]** 24/11
**tentative [10]** 5/16 13/4 15/23 18/6 21/21 28/12 31/24 32/14 32/15 32/19
**TERHUFEN [2]** 3/8 5/3
**term [1]** 17/10
**terms [17]** 6/4 6/9 6/10 6/14 6/20 7/3 7/9 7/12 7/15 7/21 7/25 8/13 9/12 12/22 25/11 36/25 44/22
**testify [2]** 13/16 17/8
**testimony [12]** 14/20 17/13 22/7 24/20 24/23 29/11 29/13 31/4 37/18 37/24 41/6 41/9
**testing [2]** 22/15 24/1
**than [6]** 8/9 13/25 31/9 35/9 36/1 44/5
**thank [11]** 14/21 21/22 22/20 35/20 39/15 42/14 45/24 46/3 46/7 46/8 46/9
**that [247]**
**that's [33]** 7/13 8/24 14/22 16/8 17/7 19/2 21/9 24/12 26/3 26/3 26/6 28/7 29/5 30/9 31/18 32/4 32/6 32/13 33/8 33/21 35/7 35/8 36/9 36/20 36/25 37/2 38/5 38/20 39/7 39/21 40/24 41/14 41/17
**their [21]** 6/11 7/6 9/22 11/16 16/10 22/9 23/8 29/20 29/20 34/6 38/14 38/25 39/2 41/3 41/10 41/20 41/21 42/6 42/23 42/23 42/25
**them [8]** 6/1 17/13 24/15 34/7 41/20 43/14 43/25 44/11
**then [10]** 16/10 17/13 19/20 24/7 38/24 39/11 40/6 40/25 43/16 44/3
**there [24]** 16/4 19/10 19/11 20/1 21/1 21/1 21/7 21/7 21/8 21/8 22/5 22/13 23/5 23/23 24/19 26/23 27/24 28/4 33/12 35/8 36/8 37/10 41/17 42/7
**there's [21]** 5/22 7/23 11/11 16/16 21/1 21/8 24/12 27/20 29/13 30/2 31/4 38/4 40/3 41/2 41/5 41/12 41/21 41/21 42/9 42/9 44/14
**therefore [1]** 16/2
**these [22]** 7/25 11/8 12/14 14/15 15/4 15/24 16/1 16/8 16/25 18/1 26/8 26/16 27/22 29/7 30/15 30/24 33/20 33/25 41/7 41/8 41/18 41/18
**they [45]** 5/24 5/24 6/2 7/6 7/7 7/8 9/25 11/17 11/19 17/1 17/1 17/6 17/6 21/10 21/11 24/2 24/13 25/14 26/3 27/7 27/17 27/18 27/19 28/6 28/16 29/5 30/20 32/2 32/12 32/22 33/2 33/10 33/17 33/18 38/16 38/17 38/25 40/25 41/2 41/20 41/22 42/15 42/21 42/22 43/22
**they're [12]** 9/22 23/12 25/13 26/3 27/7 33/4 34/1 38/16 40/20 41/15 41/17 41/22
**thing [4]** 5/13 22/8 26/17 43/19
**things [4]** 5/7 13/1 35/24 39/3
**think [56]**
**thinking [1]** 27/9
**third [1]** 23/11
**this [113]**
**THOMAS [1]** 2/20
**those [37]** 6/9 6/10 6/13 6/14 6/20 7/3 7/12 8/13 9/15 9/20 11/14 11/14 11/16 11/24 12/4 12/7 13/7 13/12 13/16 13/21 13/23 13/25 19/23 20/15 20/22 21/16 24/22 27/11 28/4

**T**

**those... [8]** 28/8 30/4 30/5 30/11 33/23 38/4 43/22 45/8
**though [4]** 9/9 19/15 33/1 33/4
**thought [4]** 27/17 33/22 35/13 43/18
**thoughts [2]** 18/13 45/13
**three [3]** 15/4 35/24 37/13
**through [11]** 21/2 21/3 22/3 24/21 25/2 25/5 25/22 31/4 32/6 42/4 44/1
**Thursday [1]** 36/2
**tied [2]** 9/11 27/20
**time [13]** 18/15 21/1 21/5 35/9 41/10 42/2 42/13 42/23 43/2 45/6 45/7 45/8 45/16
**timetable [1]** 38/21
**timetables [1]** 35/15
**timing [4]** 22/8 35/25 38/22 39/14
**Title [1]** 47/7
**today [3]** 13/4 44/8 44/9
**today's [1]** 39/1
**told [1]** 29/16
**Tom [1]** 4/23
**too [5]** 19/5 19/6 20/15 21/8 28/13
**took [1]** 19/2
**top [4]** 11/3 11/24 13/20 14/18
**touched [1]** 5/23
**touchstone [1]** 7/21
**toward [1]** 26/10
**towards [2]** 23/21 24/18
**trade [12]** 9/17 9/18 18/11 18/20 20/24 20/25 24/13 26/18 26/22 29/6 34/10 34/16
**transcript [4]** 1/9 1/15 47/8 47/10
**trial [25]** 7/5 18/21 19/5 20/24 21/3 21/5 21/9 21/17 28/8 28/24 34/14 35/6 35/25 36/3 37/17 37/18 37/18 37/19 37/19 37/20 37/21 37/24 37/24 37/25 43/11
**trials [2]** 5/6 36/11
**tried [2]** 34/14 39/9
**tries [1]** 29/4
**true [4]** 17/7 17/7 32/4 47/7
**try [2]** 33/1 36/2
**trying [5]** 25/14 34/11 34/17 35/10 39/9
**TUCKER [2]** 3/8 5/3
**Tuesday [1]** 36/10
**turn [2]** 20/23 35/5
**twice [1]** 34/15
**two [18]** 13/1 14/2 16/3 24/12 26/9 28/5 28/8 29/5 30/2 30/3 30/5 30/5 30/10 30/11 30/15 32/1 32/3 33/23
**typically [1]** 36/11

**U**

**U.S [1]** 47/16
**under [3]** 17/9 19/1 20/22
**understand [7]** 19/8 23/17 26/5 26/7 31/11 36/11 37/5
**understanding [4]** 24/25 25/4 33/10 37/21
**understands [1]** 25/23
**understood [4]** 8/23 14/21 21/22 25/10
**unfavorable [1]** 43/21
**UNITED [4]** 1/4 1/19 47/7 47/11
**unless [4]** 32/5 32/5 39/5 40/3
**until [2]** 12/16 32/10
**up [13]** 5/9 10/11 10/19 10/23 12/8 12/13 12/18 17/22 22/17 34/3 34/12 43/17 44/3
**upon [2]** 16/4 16/10
**us [5]** 26/6 34/15 36/1 38/13 40/11
**use [6]** 19/23 29/2 38/25 39/4 40/2 41/18
**used [7]** 11/25 36/25 37/4 37/19 37/23 37/24 38/20
**useful [4]** 7/5 7/22 33/22 44/15
**using [4]** 8/12 12/4 23/23 23/24
**usual [1]** 38/19
**utter [1]** 27/3
**utterly [4]** 11/17 26/24 26/25 33/6

**V**

**Valley [1]** 2/13
**Vargas [1]** 46/6
**various [1]** 6/14
**verdict [3]** 32/10 40/16 40/17
**versus [1]** 4/3
**very [15]** 14/9 16/14 21/14 29/25 30/19 33/21 35/21 35/22 39/1 39/4 40/17 42/19 45/6 45/7 45/11
**Veterans [3]** 36/7 36/9 36/13
**viable [1]** 25/12
**video [3]** 40/1 40/1 40/2
**view [5]** 19/1 20/3 34/1 41/3 41/21
**views [4]** 35/8 41/20 43/14 45/1
**virtually [1]** 34/21
**vividly [1]** 29/2
**voir [3]** 43/7 44/7 44/9
**volume [4]** 31/6 36/22 37/3 37/12
**vs [1]** 1/10

**W**

**want [14]** 5/5 22/16 24/12 26/14 32/11 34/20 37/7 38/10 38/17 39/7 39/8 39/11 40/25 45/19
**wanted [4]** 5/23 6/7 8/18 8/23
**was [37]** 5/14 9/19 15/3 15/6 15/7 15/7 15/8 15/14 15/15 15/16 15/22 16/3 16/4 16/5 16/6 22/13 22/22 23/1 23/2 23/18 23/25 24/17 25/15 26/2 26/10 26/19 26/22 31/23 32/23 34/16 35/22 38/9 38/12 41/17 43/18 43/25 46/2
**Washington [1]** 3/3
**watch [35]** 9/7 9/23 10/1 10/6 11/6 11/9 11/21 13/13 22/22 22/22 23/8 23/8 24/1 24/16 25/25 26/10 27/1 28/6 28/22 29/10 29/14 29/14 29/20 30/1 30/5 30/8 30/13 31/1 31/25 32/2 32/7 32/13 33/12 33/15 34/25
**way [6]** 6/21 12/21 12/24 30/9 31/18 39/7
**we [173]**
**we'd [1]** 13/19
**we'll [11]** 5/17 19/13 29/19 31/11 31/20 39/16 40/21 45/5 45/7 45/15 46/4
**we're [27]** 8/10 10/12 10/16 10/19 13/10 14/7 19/9 19/10 19/16 20/19 21/5 23/15 23/23 23/24 24/10 24/13 25/14 29/17 30/6 30/7 30/8 33/5 34/17 35/1 37/16 42/2
**we've [2]** 24/20 39/9
**week [5]** 21/3 21/18 21/19 36/4 44/8
**Welcome [1]** 5/4
**well [26]** 5/5 6/15 6/23 8/6 8/8 8/20 10/14 12/15 12/18 12/22 13/1 15/2 17/22 18/18 22/9 25/24 27/7 30/7 31/17 35/5 35/22 36/7 37/22 38/24 44/25 46/4
**wellness [1]** 9/23
**went [3]** 28/15 28/16 35/13
**WENTZEL [2]** 2/5 4/11
**were [25]** 9/25 11/14 11/15 11/15 11/17 11/19 12/7 15/25 16/1 16/1 16/9 16/18 20/14 24/25 25/3 25/15 26/3 27/19 28/19 34/12 34/16 42/15 42/19 42/21 46/10
**weren't [2]** 17/1 17/2
**West [1]** 1/20
**what [44]** 6/10 6/10 6/25 7/2 7/7 7/16 7/25 8/4 8/9 8/13 9/12 9/12 10/23 11/23 14/9 16/23 17/23 19/2 19/15 19/16 19/16 21/17 24/16 25/6 26/3 26/16 26/21 28/1 30/6 31/9 32/2 33/5 33/10 33/17 33/18 34/7 34/11 34/15 37/3 37/14 40/12 41/15 44/22 45/19
**what's [9]** 27/24 36/22 36/25 37/2 37/12 38/23 39/8 39/10 39/17
**whatever [5]** 15/10 18/16 19/24 27/4 45/20
**whatsoever [1]** 9/21
**when [14]** 17/1 17/13 22/22 23/7 24/1 24/22 32/4 37/19 38/9 38/12 38/12 38/15 38/16 39/4
**where [13]** 9/19 13/10 16/4 17/5 18/11 23/18 29/3 30/6 31/7 32/19 34/10 42/5 43/12
**Whereupon [1]** 46/10
**whether [13]** 10/6 11/6 11/20 22/10 22/10 22/11 27/1 28/3 28/22 32/22 35/8 41/21 42/25
**which [17]** 5/9 9/2 14/13 15/12 18/17 23/14 26/20 26/21 28/4 29/21 34/16 36/5 41/3 43/2 44/7 44/10 45/10
**while [1]** 10/19
**who [3]** 11/15 17/8 41/9
**who's [6]** 12/3 12/6 13/14 13/22 17/3 17/4
**whole [2]** 32/1 45/18
**why [13]** 5/9 7/18 16/22 17/8 18/17 26/3 26/6 26/13 26/15 27/10 33/22 33/23 43/22
**WIGMORE [2]** 3/1 4/21
**wild [1]** 22/5
**will [16]** 18/10 18/14 19/25 21/21 22/2 23/3 24/22 31/3 33/13 33/14 33/15 35/17 36/4 37/1 37/3 39/3
**willfulness [14]** 23/24 40/11 40/13 40/18 40/22 40/25 41/4 41/11 41/12 41/15 41/23 42/2 42/6 43/1
**willing [1]** 8/1
**WILMER [3]** 2/17 2/21 3/2
**WilmerHale [2]** 4/18 4/25
**within [6]** 11/9 12/2 21/19 37/20 44/8 45/2
**without [1]** 32/1
**witness [4]** 33/23 37/24 41/7 42/9
**witnesses [4]** 15/8 15/9 40/22 41/9
**won't [3]** 35/25 38/16 40/6
**work [5]** 26/9 27/19 29/14 30/9 31/11
**worked [5]** 25/8 29/14 30/25 35/21 43/24
**working [2]** 25/11 30/13
**Workout [9]** 28/5 30/4 30/11 30/16 30/20 33/3 33/7 33/19 34/9
**would [57]**
**writ [3]** 30/2 30/8 43/23
**wrong [1]** 33/4

**Y**

**Yeah [2]** 10/17 32/16
**year [1]** 21/4
**years [3]** 20/14 20/14 43/11
**yellow [1]** 12/9
**Yes [3]** 5/21 40/14 41/25
**Yet [1]** 13/25
**you [70]**
**you'd [1]** 42/11
**you'll [2]** 14/15 20/13
**you're [6]** 12/11 13/25 32/6 32/9 32/19 40/8
**you've [3]** 32/8 36/7 40/8
**your [132]**

**Z**

**zero [4]** 16/17 16/17 21/8 27/21
**ZOVKO [2]** 2/5 4/12