Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Nicholas M. Zovko (Bar No. 238248)
nicholas.zovko@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
Douglas B. Wentzel (Bar No. 313452)
douglas.wentzel@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949)760-0404/Fax: (949)760-9502

Adam B. Powell (Bar. No. 272725)      Brian C. Horne (Bar No. 205621)
adam.powell@knobbe.com                brian.horne@knobbe.com
Daniel P. Hughes (Bar No. 299695)     Mark D. Kachner (Bar No. 234192)
daniel.hughes@knobbe.com              mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive              1925 Century Park East, Suite 400
San Diego, CA 92130                   Los Angeles, CA 90067
Phone: (858) 707-4000                 Phone: (310) 551-3450
Fax: (858) 707-4001                   Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

[Counsel for Apple appears on next page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, | CASE NO. 8:20-cv-00048-JVS (JDEx) **JOINT PROPOSED JURY INSTRUCTIONS** |
| Plaintiffs, | |
| v. | |
| APPLE INC., a California corporation, | Pretrial Conf.: October 20, 2025 Trial: November 4, 2025 |
| Defendant. | |

MARK D. SELWYN, SBN 244180
mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

JOSEPH J. MUELLER, *pro hac vice*
joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

BRIAN A. ROSENTHAL, *pro hac vice*
brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

Attorneys for Defendant Apple Inc.

1

2

# <u>TABLE OF CONTENTS</u>

**JOINT PROPOSED INITIAL INSTRUCTION NO. 1
DUTY OF THE JURY** ................................................................................ **1**
    Redlined Joint Proposed Initial Instruction No. 1 ................................. 2

**JOINT PROPOSED INITIAL INSTRUCTION NO. 2
WHAT A PATENT IS AND HOW ONE IS OBTAINED** ...................... **3**
    Redlined Joint Proposed Initial Instruction No. 2 ................................. 6

**JOINT PROPOSED INITIAL INSTRUCTION NO. 3
THE ASSERTED PATENT** ..................................................................... **9**
    Redlined Joint Proposed Initial Instruction No. 3 .............................. 10

**MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A
SUMMARY OF CONTENTIONS** .......................................................... **12**
    Redlined Masimo's Proposed Initial Instruction No. 4A ................... 13
    Masimo's Position: Proposed Initial Instruction No. 4A .................. 15

**APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B
SUMMARY OF CONTENTIONS** .......................................................... **16**
    Redlined Apple's Proposed Initial Instruction No. 4B ..................... 17
    Apple's Position: Proposed Initial Instruction No. 4B...................... 19

**JOINT PROPOSED INITIAL INSTRUCTION NO. 5
BURDENS OF PROOF** ............................................................................ **21**
    Redlined Joint Proposed Initial Instruction No. 5 .............................. 22

**JOINT PROPOSED INITIAL INSTRUCTION NO. 6
WHAT IS EVIDENCE** .............................................................................. **23**
    Redlined Joint Proposed Initial Instruction No. 6 .............................. 24

**JOINT PROPOSED INITIAL INSTRUCTION NO. 7
WHAT IS NOT EVIDENCE** ................................................................... **25**
    Redlined Joint Proposed Initial Instruction No. 7 .............................. 26

**JOINT PROPOSED INITIAL INSTRUCTION NO. 8**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**.................................................**27**

**JOINT PROPOSED INITIAL INSTRUCTION NO. 9**
**RULING ON OBJECTIONS**.................................................**28**

**JOINT PROPOSED INITIAL INSTRUCTION NO. 10**
**CREDIBILITY OF WITNESSES**.................................................**29**
    Redlined Joint Proposed Initial Instruction No. 10.............................31

**JOINT PROPOSED INITIAL INSTRUCTION NO. 11**
**EXPERT OPINION**.................................................**33**
    Redlined Joint Proposed Initial Instruction No. 11.............................34

**JOINT PROPOSED INITIAL INSTRUCTION NO. 12**
**DEPOSITION OR OTHER PRIOR SWORN TESTIMONY IN LIEU**
**OF LIVE TESTIMONY**.................................................**35**
    Redlined Joint Proposed Initial Instruction No. 12.............................36

**JOINT PROPOSED INITIAL INSTRUCTION NO. 13**
**CONDUCT OF THE JURY**.................................................**37**
    Redlined Joint Proposed Initial Instruction No. 13.............................39

**JOINT PROPOSED INITIAL INSTRUCTION NO. 14**
**NO TRANSCRIPT AVAILABLE TO JURY**.................................................**41**
    Redlined Joint Proposed Initial Instruction No. 14.............................42

**JOINT PROPOSED INITIAL INSTRUCTION NO. 15**
**TAKING NOTES**.................................................**43**

**JOINT PROPOSED INITIAL INSTRUCTION NO. 16**
**OUTLINE OF TRIAL**.................................................**44**
    Redlined Joint Proposed Initial Instruction No. 16.............................45

**JOINT PROPOSED FINAL INSTRUCTION NO. 1**
**DUTY OF THE JURY**.................................................**46**
    Redlined Joint Proposed Final Instruction No. 1.............................47

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 2A**
**SUMMARY OF CONTENTIONS**.................................................**49**
    Redlined Masimo's Proposed Final Instruction No. 2A.............................50
    Masimo's Position: Proposed Final Instruction No. 2A.............................52

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 2B**
**SUMMARY OF CONTENTIONS** ...................................................................... **54**
    Redlined Apple's Proposed Final Instruction No. 2B ...................................... 55
    Apple's Position: Proposed Final Instruction No. 2B ..................................... 57

**JOINT PROPOSED FINAL INSTRUCTION NO. 3**
**WHAT IS EVIDENCE; DIRECT AND CIRCUMSTANTIAL**
**EVIDENCE; EVIDENCE FOR A LIMITED PURPOSE** ................................ **59**
    Redlined Joint Proposed Final Instruction No. 3 .............................. 60

**JOINT PROPOSED FINAL INSTRUCTION NO. 4**
**WHAT IS NOT EVIDENCE** .......................................................................... **62**
    Redlined Joint Proposed Final Instruction No. 4 .............................. 63

**JOINT PROPOSED FINAL INSTRUCTION NO. 5**
**EXPERT OPINION** ........................................................................................ **64**
    Redlined Joint Proposed Final Instruction No. 5 .............................. 65

**JOINT PROPOSED FINAL INSTRUCTION NO. 6**
**RULING ON OBJECTIONS** .......................................................................... **66**
    Redlined Joint Proposed Final Instruction No. 6 .............................. 67

**JOINT PROPOSED FINAL INSTRUCTION NO. 7**
**CREDIBILITY OF WITNESSES** .................................................................. **68**
    Redlined Joint Proposed Final Instruction No. 7 .............................. 70

**JOINT PROPOSED FINAL INSTRUCTION NO. 8**
**TAKING NOTES** ............................................................................................ **72**
    Redlined Joint Proposed Final Instruction No. 8 .............................. 73

**JOINT PROPOSED FINAL INSTRUCTION NO. 9**
**CHARTS, SUMMARIES, AND DEMONSTRATIVES  NOT**
**RECEIVED IN EVIDENCE** .......................................................................... **74**
    Redlined Joint Proposed Final Instruction No. 9 .............................. 75

**JOINT PROPOSED FINAL INSTRUCTION NO. 10**
**CHARTS, SUMMARIES, AND DEMONSTRATIVES IN EVIDENCE** ............. **76**
    Redlined Joint Proposed Final Instruction No. 10 ........................... 77

**JOINT PROPOSED FINAL INSTRUCTION NO. 11**
**BURDENS OF PROOF** .................................................................................. **78**
    Redlined Joint Proposed Final Instruction No. 11 ........................... 79

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 12A**
**CLAIM CONSTRUCTION** ................................................................. **80**
    Redlined Masimo's Proposed Final Instruction No. 12A ........................... 83
    Masimo's Position: Proposed Final Instruction No. 12A ........................... 86

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 12B**
**CLAIM CONSTRUCTION** ................................................................. **88**
    Redlined Apple's Proposed Final Instruction No. 12B.............................. 91
    Apple's Position: Proposed Final Instruction No. 12B............................. 95

**JOINT PROPOSED FINAL INSTRUCTION NO. 13**
**PATENT INFRINGEMENT—GENERALLY** ................................. **97**
    Redlined Joint Proposed Final Instruction No. 13 .................................. 98

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 14**
**INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT**
**TO INFRINGE ARE IMMATERIAL** ............................................. **99**
    Redlined Masimo's Proposed Final Instruction No. 14 ......................... 100
    Masimo's Position: Proposed Final Instruction No. 14 ......................... 101
    Apple's Position: Proposed Final Instruction No. 14............................ 102

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 15A**
**INFRINGEMENT – LITERAL INFRINGEMENT** ....................... **104**
    Redlined Masimo's Proposed Final Instruction No. 15A ...................... 105
    Masimo's Position: Proposed Final Instruction No. 15A ...................... 106

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 15B**
**INFRINGEMENT – LITERAL INFRINGEMENT** ....................... **110**
    Redlined Apple's Proposed Final Instruction No. 15B.......................... 112
    Apple's Position: Proposed Final Instruction No. 15B.......................... 114

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 16A**
**INFRINGEMENT – DOCTRINE OF EQUIVALENTS** ................ **116**
    Redlined Masimo's Proposed Final Instruction No. 16A ...................... 117
    Masimo's Position: Proposed Final Instruction No. 16A ...................... 118

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 16B**
**INFRINGEMENT – DOCTRINE OF EQUIVALENTS** ................ **119**
    Redlined Apple's Proposed Final Instruction No. 16B.......................... 120
    Apple's Position: Proposed Final Instruction No. 16B.......................... 122

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 17**
**WILLFUL INFRINGEMENT** ........................................................................ **123**
    Redlined Masimo's Proposed Final Instruction No. 17 ................................. 124
    Masimo's Position: Proposed Final Instruction No. 17 ................................. 126
    Apple's Position: Proposed Final Instruction No. 17 .................................... 128

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 18**
**INVALIDITY—BURDEN OF PROOF** ........................................................ **129**
    Redlined Masimo's Proposed Final Instruction No. 18 ................................. 130
    Masimo's Position: Proposed Final Instruction No. 18 ................................. 131
    Apple's Position: Proposed Final Instruction No. 18 .................................... 132

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 19**
**PRIOR ART** ................................................................................................. **133**
    Redlined Masimo's Proposed Final Instruction No. 19 ................................. 136
    Masimo's Position: Proposed Final Instruction No. 19 ................................. 139
    Apple's Position: Proposed Final Instruction No. 19 .................................... 141

**JOINT PROPOSED FINAL INSTRUCTION NO. 20**
**OBVIOUSNESS INTRODUCTION** ............................................................. **142**
    Redlined Joint Proposed Final Instruction No. 20 ....................................... 143
    Apple's Position: Proposed Final Instruction No. 20 .................................... 144
    Masimo's Position: Proposed Final Instruction No. 20 ................................. 145

**JOINT PROPOSED FINAL INSTRUCTION NO. 21**
**LEVEL OF ORDINARY SKILL IN THE ART** ............................................ **146**
    Redlined Joint Proposed Final Instruction No. 21 ....................................... 147

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 22A**
**SCOPE AND CONTENT OF PRIOR ART** ................................................. **148**
    Redlined Masimo's Proposed Final Instruction No. 22A .............................. 149
    Masimo's Position: Proposed Final Instruction No. 22A .............................. 150

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 22B**
**SCOPE AND CONTENT OF PRIOR ART** ................................................. **153**
    Redlined Apple's Proposed Final Instruction No. 22B.................................. 157
    Apple's Position: Proposed Final Instruction No. 22B.................................. 163

**JOINT PROPOSED FINAL INSTRUCTION NO. 23**
**DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMED**
**INVENTION** ................................................................................................ **168**
    Redlined Joint Proposed Final Instruction No. 23 ....................................... 169

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 24A**
**OBJECTIVE INDICIA OF NON-OBVIOUSNESS**.................................................**171**
    Redlined Masimo's Proposed Final Instruction No. 24A ............................ 172
    Masimo's Position: Proposed Final Instruction No. 24A .............................. 173

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 24B**
**OBJECTIVE INDICIA OF NON-OBVIOUSNESS**.................................................**175**
    Redlined Apple's Proposed Final Instruction No. 24B.................................. 176
    Apple's Position: Proposed Final Instruction No. 24B.................................. 179

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 25A**
**DAMAGES INTRODUCTION** .............................................................................**180**
    Redlined Masimo's Proposed Final Instruction No. 25A ............................. 181
    Masimo's Position: Proposed Final Instruction No. 25A ............................. 183

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 25B**
**DAMAGES INTRODUCTION** .............................................................................**185**
    Redlined Apple's Proposed Final Instruction No. 25B.................................. 186
    Apple's Position: Proposed Final Instruction No. 25B.................................. 188

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 26A**
**REASONABLE ROYALTY – ENTITLEMENT** ....................................................**190**
    Redlined Masimo's Proposed Final Instruction No. 26A ............................. 191
    Masimo's Position: Proposed Final Instruction No. 26A ............................. 192

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 26B**
**REASONABLE ROYALTY – ENTITLEMENT** ....................................................**196**
    Redlined Apple's Proposed Final Instruction No. 26B.................................. 197
    Apple's Position: Proposed Final Instruction No. 26B.................................. 198

**JOINT PROPOSED FINAL INSTRUCTION NO. 27**
**DAMAGES PERIOD** ..........................................................................................**201**
    Redlined Joint Proposed Final Instruction No. 27 ........................................ 202

**JOINT PROPOSED FINAL INSTRUCTION NO. 28**
**REASONABLE ROYALTY—DEFINITION** ........................................................**203**
    Redlined Joint Proposed Final Instruction No. 28 ........................................ 204

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 29A**
**REASONABLE ROYALTY—RELEVANT FACTORS** .........................................**205**
    Redlined Masimo's Proposed Final Instruction No. 29A ............................. 206
    Masimo's Position: Proposed Final Instruction No. 29A ............................. 208

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 29B**
**REASONABLE ROYALTY—RELEVANT FACTORS ................................209**
    Redlined Apple's Proposed Final Instruction No. 29B...................211
    Apple's Position: Proposed Final Instruction No. 29B ..................214

**JOINT PROPOSED FINAL INSTRUCTION NO. 30**
**REASONABLE ROYALTY – COMPARABLE AGREEMENTS ....................215**
    Redlined Joint Proposed Final Instruction No. 30 ..........................216

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 31A**
**DAMAGES – APPORTIONMENT ..........................................................217**
    Redlined Masimo's Proposed Final Instruction No. 31A ...............218
    Masimo's Position: Proposed Final Instruction No. 31A ...............219

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 31B**
**DAMAGES – APPORTIONMENT ..........................................................220**
    Redlined Apple's Proposed Final Instruction No. 31B...................221
    Apple's Position: Proposed Final Instruction No. 31B ..................223

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 32**
**WILLFUL INFRINGEMENT...................................................................224**
    Redlined Apple's Proposed Final Instruction No. 32 .....................226
    Apple's Position: Proposed Final Instruction No. 32......................228
    Masimo's Position: Proposed Final Instruction No. 32 ..................231

**JOINT PROPOSED FINAL INSTRUCTION NO. 33**
**DUTY TO DELIBERATE .......................................................................233**

**JOINT PROPOSED FINAL INSTRUCTION NO. 34**
**CONDUCT OF THE JURY......................................................................234**
    Redlined Joint Proposed Final Instruction No. 34 ..........................236

**JOINT PROPOSED FINAL INSTRUCTION NO. 35**
**COMMUNICATION WITH COURT........................................................238**
    Redlined Joint Proposed Final Instruction No. 35 ..........................239

**JOINT PROPOSED FINAL INSTRUCTION NO. 36**
**VERDICT FORM ..................................................................................240**
    Redlined Joint Proposed Final Instruction No. 36 ..........................241

## JOINT PROPOSED INITIAL INSTRUCTION NO. 1[1]

### DUTY OF THE JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with the law or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

---

[1] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 1.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 1**

**DUTY OF THE JURY**

Ladies and gentlemen~~Members of the jury~~: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with the law~~it~~ or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 1.

## JOINT PROPOSED INITIAL INSTRUCTION NO. 2[2]

## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right during the term of the patent to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons or companies believed to be infringing claims of the patent by filing a lawsuit in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and

---

[2] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.1.

reviews information that is publicly available or that is submitted by the applicant.  This information is called "prior art."  The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.  Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed.  A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed."  This writing from the Examiner is called an "Office Action."  If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims.  This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue.  Sometimes, patents are issued after appeals within the PTO or to a court.  The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked.  Examiners have a lot of work to do and no process is perfect.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

It is your job to consider the evidence presented by the parties and determine independently whether or not the alleged infringer has proven that the patent is invalid.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 2**

**WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right during[for up to 20 years from the term ofdate the patent application was filed] [for 17 years from the date the patent issued] to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons or companies believed to be infringing claims of the patentinfringers by filing a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews

-6-

information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. ~~Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent.~~ A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not

meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not the [alleged infringer] has proven that the patent is invalid.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.1.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 3[3]

## THE ASSERTED PATENT

I am now going to show you the patent at issue in this case. This case involves a patent that is owned by Plaintiff Masimo. Masimo asserts that patent against Defendant Apple. The asserted patent is U.S. Patent No. 10,433,776. We usually refer to patents by the last three digits of its number, so we will refer to the asserted patent as "the '776 Patent." My instructions may also refer to the '776 Patent as "the Asserted Patent." A copy of the '776 Patent appears in your juror notebook.

A patent has several parts. You can see on the front cover of the asserted patent is a paragraph called the "Abstract," which is a very short description of what the patent is generally about. The Abstract is followed by figures and a detailed discussion of the invention. The drawings and text discussion are called the "specification."

At the end of the specification is a numbered list of patent claims. Each claim has a series of requirements (sometimes called claim "elements" or "limitations"), and each claim separately defines the boundaries of the invention. For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each a separate limitation of the claim.

The '776 Patent is directed to reducing power consumption of patient monitors configured to use light to measure physiological parameters, such as heart rate. Masimo contends that Apple infringes Claims 11-14 of the '776 Patent. My instructions refer to these patent claims collectively as "the Asserted Claims."

I have already determined the meaning of certain terms in the Asserted Claims of the '776 Patent. You have been given a document setting forth those meanings. My interpretation of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

---

[3] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ A.2, A.3.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 3**

**THE ASSERTED PATENT**

I am now going to [The Court should show you the jury the patent at issue and point out the parts, which include the specification, drawings, and claims, including the claims at issue. The Court may wish to include a joint, nonargumentative statement of the patented subject matter at this point in the instructions. The parties in this case. This are [patent holder] and [alleged infringer]. The case involves a United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent that is owned by Plaintiff Masimo. Masimo asserts that patent against Defendant Apple. The asserted patent is holder]. For your convenience, the parties and I will often refer to U.S. Patent No. 10,433,776. We usually refer to patents[full patent number] by the last three digitsnumbers of itsthe patent number, so we will refer to the assertednamely, as the "[last three numbers of the patent as "the '776 Patent." My instructions may also refer to the '776 Patent as "the Asserted Patent." A copy of the '776 Patent appears in your juror notebook.

A] patent has several parts. You can see on the front cover of the asserted patent is a paragraph called the "Abstract," which is a very short description of what the patent is generally about. The Abstract is followed by figures and a detailed discussion of the invention. The drawings and text discussion are called the "specification.".."

At the end of the specification is a numbered list of patent claims. Each claim has a series of requirements (sometimes called claim "elements" or "limitations"), and each claim separately defines the boundaries of the invention. For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each a separate limitation of the claim.

The '776 Patent is directed to reducing power consumption of patient monitors configured to use light to measure physiological parameters, such as heart rate. Masimo contends that Apple infringes Claims 11-14 of the '776 Patent. My instructions refer to

-10-

1   these patent claims collectively as "the Asserted Claims."

2        I have already determined the meaning of certain terms in the Asserted claims of

3   the '776 Patent. [ ] patent. You have been given a document setting forth those meanings.

4   reflecting those meanings. For a claim term for which I have not provided you with a

5   definition, you should apply the ordinary meaning of that term in the field of the patent.

6   You are to apply my definitions of the terms I have construed throughout this case.

7   However, my interpretation of the language of the claims should not be taken as an

8   indication that I have a view regarding issues such as infringement and invalidity. Those

9   issues are yours to decide. I will provide you with more detailed instructions on the

10  meaning of the claims before you retire to deliberate your verdict.

11

12  **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ A.2, A.3.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A[4]
## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will give you a brief summary of each side's contentions in this case.

The parties in this case are Plaintiff Masimo Corporation and Defendant Apple Inc. The case involves the '776 Patent, which Masimo owns. Masimo filed suit in this court, alleging Apple infringed the Asserted Claims of the '776 Patent by importing into the United States, and offering for sale and selling in the United States the Apple Watch with the Workout Mode and/or High/Low Heart Rate Notifications features. Masimo alleges that Apple's infringement was willful, beginning when Masimo filed this lawsuit making Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims. Apple also contends the claims are invalid. I will instruct you later as to ways in which a patent may be invalid. In general, however, a patent is invalid if it is obvious in view of the state of the art at the relevant time.

Your job will be to decide whether or not the Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Masimo to compensate it for the infringement. You will also need to make a finding as to whether any infringement that occurred after this lawsuit was filed was willful. If you determine that any post-suit infringement was willful, that decision must not affect the amount of any damages award you give for infringement. I will take willfulness into account later if you find it.

---

[4] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**REDLINED MASIMO'S PROPOSED INITIAL INSTRUCTION NO. 4A**

**SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will ~~now~~ give you a brief summary of each side's contentions in this case. ~~the positions of the parties.~~

The parties in this case are Plaintiff Masimo Corporation~~[patent holder]~~ and Defendant Apple Inc. ~~[alleged infringer]~~. The case involves the '776~~United States~~ Patent, which Masimo owns. Masimo ~~No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."~~

~~[Patent holder]~~ filed suit in this court, alleging Apple infringed ~~seeking money damages from [alleged infringer] for allegedly infringing~~ the Asserted Claims of the '776~~[ ]~~ patent by ~~[making],~~ [importing into the United States, and ], ~~[using], [selling],~~ [offering for sale and selling in], ~~[supplying or causing to be supplied in or from~~ the United States the Apple Watch with the Workout Mode and/or High/Low Heart Rate Notifications features. Masimo alleges~~all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States]~~ that Apple's~~[patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced~~ infringement was willful, beginning when Masimo filed this lawsuit making Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent. ~~of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

Apple~~The [products] [methods] that are alleged to infringe are [list of accused products or methods].~~

~~[Alleged infringer]~~ denies that it has infringed any~~claims [ ]~~ of the Asserted Claims. Apple~~[ ] patent. [Alleged infringer]~~ also contends the~~argues that~~ claims ~~[ ]~~ are invalid. I will instruct you later as to ~~the~~ ways in which a patent may be invalid. In

general, however, a patent is invalid if it is ~~not new or is~~ obvious in view of the state of the art at the relevant time~~., or if the description in the patent does not meet certain requirements. [Add other defenses, if applicable.]~~

Your job will be to decide whether or not ~~claims [ ] of~~ the <u>Asserted Claims</u>~~[ ] patent~~ have been infringed and whether or not those claims are invalid. If you decide that any ~~claim~~ of the <u>Asserted Claims</u>~~[ ] patent~~ has been infringed and is not invalid, you will then need to decide any money damages to be awarded to <u>Masimo</u>~~[patent holder]~~ to compensate it for the infringement. ~~[~~You will also need to make a finding as to whether <u>any</u>~~the~~ infringement <u>that occurred after this lawsuit was filed</u> was willful. If you <u>determine</u>~~decide~~ that any <u>post-suit</u> infringement was willful, that decision <u>must</u>~~should~~ not affect <u>the amount of</u> any damages award you give <u>for infringement.</u> ~~.~~ I will take willfullness into account later <u>if you find it.</u>~~.]~~

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**Masimo's Position: Proposed Initial Instruction No. 4A**

Masimo's proposed instruction provides a concise, neutral, and legally correct summary of the parties' contentions.   Apple's proposed instruction differs because Apple includes at lines 13-17: "Apple also contends that ***under Masimo's interpretation and application of the Asserted Claims***, the claims are invalid.   In other words, Apple contends that ***if the claims are interpreted and applied in a way*** that covers the Workout Mode and/or High/Low Heart Rate Notification features, then they are also invalid."   Such language improperly asks the jury decide claim construction issues.   For example, Apple's proposal would require the jury to determine what "Masimo's interpretation" of the asserted claims is and whether it applies.   But claim interpretation is a legal question that the Court has already decided.   *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), *aff'd* 517 U.S. 370 (1996).   Claim construction is not a factual finding for the jury.   *Id.*; *see also Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury.").

For these reasons, the Court should adopt Masimo's proposed instruction.

## APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B[5]
## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will give you a brief summary of each side's contentions in this case.

The parties in this case are Plaintiff Masimo Corporation and Defendant Apple Inc. The case involves the '776 Patent, which Masimo owns. Masimo filed suit in this court, alleging Apple infringed the Asserted Claims of the '776 Patent by importing into the United States, and offering for sale and selling in the United States Apple Watches with the Workout Mode and/or High/Low Heart Rate Notifications features. Masimo alleges that Apple's infringement was willful, beginning when Masimo filed this lawsuit and made Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims. Apple also contends that under Masimo's interpretation and application of the Asserted Claims, the claims are invalid. In other words, Apple contends that if the claims are interpreted and applied in a way that covers the Workout Mode and/or High/Low Heart Rate Notification features, then they are also invalid. I will instruct you later as to ways in which a patent may be invalid. In general, however, a patent is invalid if it is obvious in view of the state of the art at the relevant time.

Your job will be to decide whether or not the Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Masimo to compensate it for the infringement. You will also need to make a finding as to whether any infringement that occurred after this lawsuit was filed was willful. If you determine that any post-suit infringement was willful, that decision must not affect the amount of any damages award you give for infringement. I will take willfulness into account later if you find it.

---

[5] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**REDLINED APPLE'S PROPOSED INITIAL INSTRUCTION NO. 4B**

**SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will ~~now~~ give you a <u>brief</u> summary of ~~the positions of the parties~~<u>each side's contentions in this case</u>.

The parties in this case are ~~[patent holder] and [alleged infringer]~~<u>Plaintiff Masimo Corporation and Defendant Apple Inc</u>. The case involves ~~United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."~~<u>the '776 Patent, which Masimo owns. Masimo filed suit in this court, alleging Apple infringed the Asserted Claims of the '776 Patent by importing into the United States, and offering for sale and selling in the United States Apple Watches with the Workout Mode and/or High/Low Heart Rate Notifications features. Masimo alleges that Apple's infringement was willful, beginning when Masimo filed this lawsuit and made Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.</u>

~~[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

~~The [products] [methods] that are alleged to infringe are [list of accused products or methods].~~

~~[Alleged infringer]~~<u>Apple</u> denies that it has infringed ~~claims [ ] of the [ ] patent.~~

-17-

1    [Alleged infringer] also argues that claims [ ] are any of the Asserted Claims. Apple also

2    contends that under Masimo's interpretation and application of the Asserted Claims, the

3    claims are invalid. In other words, Apple contends that if the claims are interpreted and

4    applied in a way that covers the Workout Mode and/or High/Low Heart Rate

5    Notification features, then they are also invalid. I will instruct you later as to the ways

6    in which a patent may be invalid. In general, however, a patent is invalid if it is not new

7    or is obvious in view of the state of the art at the relevant time, or if the description in

8    the patent does not meet certain requirements. [Add other defenses, if applicable.].

9           Your job will be to decide whether or not claims [ ] of the [ ] patent Asserted

10   Claims have been infringed and whether or not those claims are invalid. If you decide

11   that any claim of the [ ] patent Asserted Claims has been infringed and is not invalid, you

12   will then need to decide any money damages to be awarded to [patent holder]Masimo to

13   compensate it for the infringement. [You will also need to make a finding as to whether

14   the any infringement that occurred after this lawsuit was filed was willful. If you

15   decide determine that any post-suit infringement was willful, that decision should must

16   not affect the amount of any damages award you give for infringement. I will take

17   willfulness into account later.] if you find it.

18

19   **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

20

21

22

23

24

25

26

27

28

**Apple's Position: Proposed Initial Instruction No. 4B**

The parties agree that the Federal Circuit Bar Association model should serve as a starting place for this instruction.  The only dispute is whether the jury should be provided with a brief description of Apple's conditional invalidity position.  While Masimo suggests that Apple is barred as a matter of law from arguing this theory to the jury, the Federal Circuit has said otherwise.  Nothing "preclude[s] a litigant from arguing that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art."  *01 Communique Laboratory, Inc. v. Citrix Systems, Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018).  Accordingly, in *01 Communique*, "[t]here was nothing improper about [defendant's] argument" to the jury "that under the trial court's claim construction claims 24 and 45 were valid, but not infringed, … but that if Communique attempted to expand the scope of its claims to [cover the accused items] … then the claims would be invalid in light of the prior art."  *Id.*

More broadly, courts from across the country—including in this District—have held that a litigation strategy like Apple's properly reflects the *01 Communique* principle.  *See Deere & Co. v. AGCO Corp.*, 659 F.Supp. 3d 418, 448 (D. Del. 2023) (permitting defendant to rely on an *01 Communique* argument); *GeigTech East Bay LLC v. Lutron Elecs Co.* , 2023 WL 6614486, at *34-35 (S.D.N.Y. Sept. 20, 2023) (same); *Longhorn HD LLC v. NetScout Sys., Inc.*, 2022 WL 1792904, at *2 (E.D. Tex. Mar. 30, 2022) (same); *see also Glauckos Corp. v. Ivantis, Inc.*, 2020 WL 10501851, at *14 (C.D. Cal. July 23, 2020) (Selna, J.) ("Federal Circuit precedent would have permitted Dr. Tanna to opine that if the distal portion and proximal portion limitations are construed" "to read on an accused device, then this same broad construction will read on the prior art."); *Hoist Fitness System, Inc. v. TuffStuff Fitness Int'l, Inc.*, 2019 WL 6481307, at *2 (C.D. Cal. Aug. 27, 2019) ("[A]rguing that a patent is invalid if it is interpreted in the manner proposed by the patentee in arguing infringement is permissible.").  Indeed, in the three iterations of Masimo's briefing that Apple has received, Masimo has been

1  unable to identify a single authority prohibiting a defendant from pursuing a conditional

2  invalidity case.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 5[6]
## BURDENS OF PROOF

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  A party's burden of proof is by a preponderance of the evidence unless I instruct you otherwise.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all the evidence, regardless of which party presented it.

---

[6] **Authority:** Dkt. 1715 at Jury Instruction No. 7; Judge Selna's Exemplar Initial Jury Instructions No. 3; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.6, 1.7.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 5**

**BURDENS OF PROOF**

When a party has the burden of proof on any claim or ~~affirmative~~ defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  A party's burden of proof is by a preponderance of the evidence unless I instruct you otherwise.

~~You should base your decision on all of the evidence, regardless of which party presented it.~~

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party ~~you~~ must present ~~be persuaded by the~~ evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. ~~is highly probable.~~ This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all ~~of~~ the evidence, regardless of which party presented it.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 3.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 6[7]

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence; and

3.      any facts to which the lawyers have agreed.

---

[7] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 4.

# REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 6

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that~~which~~ are admitted~~received~~ into evidence; and

3.    any facts to which the lawyers have agreed.


**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 4.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 7[8]

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[8] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 7; Dkt. 1715 at Jury Instruction No. 9.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 7**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I ~~have instructed you to consider certain evidence only~~ ~~forgive~~ a limited purpose~~limiting instruction~~, you must ~~do so, and you may not consider that evidence for any other purpose~~~~follow it~~.

4.      Anything you may ~~see~~~~have seen~~ or ~~hear~~~~heard~~ when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 7.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 8[9]

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.   You should consider both kinds of evidence.   The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.   Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

---

[9] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 6.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 9[10]

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

---

[10] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 8.

## JOINT PROPOSED INITIAL INSTRUCTION NO. 10[11]

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

---

[11] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 9; Dkt. 1715 at Jury Instruction No. 15.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 10**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case;

5.    the witness's bias or prejudice, if any;

6.    whether other evidence contradicted the witness's testimony;

7.    the reasonableness of the witness's testimony in light of all the evidence; and

8.    any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the

1    truth about others, you may accept the part you think is true and ignore the rest.

2        The weight of the evidence as to a fact does not necessarily depend on the number

3    of witnesses who testify about it.  What is important is how believable the witnesses

4    were, and how much weight you think their testimony deserves.

5

6    **Model:** Judge Selna's Exemplar Initial Jury Instructions No. 9.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 11[12]

## EXPERT OPINION

You will hear testimony from individuals who are qualified as "experts" in this case.  Expert witnesses testify to their opinions and the reasons for those opinions.  Such expert opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Experts are allowed in certain instances to rely on evidence which they did not create.  Such evidence may be considered as material which the expert relied upon, but not for the truth of that material itself.

---

[12] **Authority:** Dkt. 1715 at Jury Instruction No. 16; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 11**

**EXPERT OPINION**

You will[have heard] [are about to hear] testimony from individuals[*name*] who are qualified as "experts" in this case.  Expert witnesses testify to their [testified] [will testify] about [his] [her]opinions and the reasons for those opinions.  Such expertThis opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education or experience of these witnessesthis witness.

Such opinion testimony should be judged just like any other testimony. You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education andspecialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

Experts are allowed in certain instances to rely on evidence which they did not create.  Such evidence may be considered as material which the expert relied upon, but not for the truth of that material itself.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13.

# JOINT PROPOSED INITIAL INSTRUCTION NO. 12[13]
## DEPOSITION OR OTHER PRIOR SWORN TESTIMONY
## IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and the lawyers for each party may ask questions.  The questions and answers are recorded.   Sometimes witnesses testify by video deposition rather than appearing in court or you may be read a witnesses' prior sworn testimony.  You should not speculate about the reason why a particular witness testified live in court or not.  As much as possible, you should consider testimony presented via video or read to you in court in lieu of live testimony in the same way as if the witness had been present to testify.

---

[13] **Authority:** Dkt. 1715 at Jury Instruction No. 12; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.4.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 12**
**DEPOSITION OR OTHER PRIOR SWORN TESTIMONY**
**IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and the lawyers for each party may ask questions. The questions and answers are recorded.  Sometimes witnesses [When a person is unavailable to testify by video at trial, the deposition rather than appearing in court or youof that person may be read a witnesses' prior sworn testimony.  You should not speculate aboutused at the reason why a particular witness testified live in court or not. As much as possible, you should consider testimony presented via video or read to you in court in lieu of live testimony in the same way as if the witness had been present to testify.trial.]

The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.4.

## JOINT PROPOSED INITIAL INSTRUCTION NO. 13[14]
## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as Twitter), Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

---

[14] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 10.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

# REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 13
## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other electronic means, via email, ~~via~~ text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as Twitter)~~,~~, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. ~~.~~ If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and ~~to~~ report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting

dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 10.

**JOINT PROPOSED INITIAL INSTRUCTION NO. 14[15]**

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know immediately so that I can correct the problem.

---

[15] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 11.

**REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 14**

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know immediately so that I can correct the problem.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 11.

## JOINT PROPOSED INITIAL INSTRUCTION NO. 15[16]

## TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

---

[16] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 12.

**JOINT PROPOSED INITIAL INSTRUCTION NO. 16[17]**

**OUTLINE OF TRIAL**

Trial will now proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The Plaintiff, Masimo, will then present evidence, and counsel for Defendant Apple may cross-examine. Then the Defendant, Apple, may present evidence, and counsel for Masimo may cross-examine. Then finally, Masimo will present rebuttal evidence, and Apple may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

---

[17] **Authority:** Judge Selna's Exemplar Initial Jury Instructions No. 13.

# REDLINED JOINT PROPOSED INITIAL INSTRUCTION NO. 16

## OUTLINE OF TRIAL

Trial will now~~Trials~~ proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The Plaintiff, Masimo,~~Buffington~~ will then present evidence~~in support of its complaint~~, and counsel for Defendant Apple~~defendants~~ may cross-examine. Then the Defendant, Apple,~~defendants~~ may present evidence, and counsel for Masimo may cross-examine.  Then finally, Masimo will present rebuttal evidence, and Apple~~defendants~~ may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Model:** Judge Selna's Exemplar Initial Jury Instructions No. 13.

## JOINT PROPOSED FINAL INSTRUCTION NO. 1[18]

## DUTY OF THE JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case. Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Perform these duties fairly and impartially. You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

---

[18] **Authority:** Dkt. 1715 at Jury Instruction No. 1; Judge Selna's Exemplar Initial Jury Instructions No. 1; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 1**

**DUTY OF THE JURY**

Members of the Jury: Now that you have heard all of the evidence, ~~[and the arguments of the attorneys]~~, it is my duty to instruct you on the law that applies to this case.

~~[~~Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations. ~~.]~~

*~~or~~*

~~[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]~~

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Perform these duties fairly and impartially. You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should

1    be.

2

3    **Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth

4    Circuit § 1.4.

# MASIMO'S PROPOSED FINAL INSTRUCTION NO. 2A[19]

## SUMMARY OF CONTENTIONS

As I did at the start of the case, I will give you a brief summary of each side's contentions in this case.

Masimo alleges that Apple infringed Claims 11-14 of the '776 Patent (the "Asserted Claims") by importing into the United States, and offering for sale and selling in the United States, the Apple Watch. Each accused watch includes a Workout Mode feature and a High/Low Heart Rate Notifications feature. Masimo alleges that each of those features in the Apple Watch separately causes Apple to infringe. Masimo alleges that Apple's infringement was willful, beginning in January 2020 when Masimo filed this lawsuit making Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims. Apple also argues that the Asserted Claims are invalid.

Your job will be to decide whether or not the Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Masimo to compensate it for the infringement. You will also need to make a finding as to whether any infringement that occurred after this lawsuit was filed was willful.

---

[19] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 2A**

**SUMMARY OF CONTENTIONS**

As I did at~~To help you follow~~ the start of the case~~evidence~~, I will ~~now~~ give you a brief summary of each side's contentions~~the positions of the parties~~. ~~The parties~~ in this case~~. are [patent holder] and [alleged infringer]. The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."~~

Masimo alleges that Apple infringed Claims 11-14 of the '776 Patent (the "Asserted Claims") by importing into the United States, and offering for sale and selling in the United States, the Apple Watch.  Each accused watch includes a Workout Mode feature and a High/Low Heart Rate Notifications feature.  Masimo alleges that each of those features in the Apple Watch separately causes Apple to infringe.  Masimo alleges that Apple's infringement was willful, beginning in January 2020 when Masimo filed this lawsuit making Apple aware of the '776 Patent.  Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims.  Apple also argues that the Asserted Claims are invalid.

~~[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

1   The [products] [methods] that are alleged to infringe are [list of accused products or
2   methods].
3   [Alleged infringer] denies that it has infringed claims [ ] of the [ ] patent. [Alleged
4   infringer] also argues that claims [ ] are invalid. I will instruct you later as to the ways
5   in which a patent may be invalid. In general, however, a patent is invalid if it is not new
6   or is obvious in view of the state of the art at the relevant time, or if the description in
7   the patent does not meet certain requirements. [Add other defenses, if applicable.]

8   Your job will be to decide whether or not ~~claims [ ] of~~ the Asserted Claims~~[ ]~~
9   ~~patent~~ have been infringed and whether or not those claims are invalid. If you decide
10  that any ~~claim~~ of the Asserted Claims~~[ ] patent~~ has been infringed and is not invalid, you
11  will then need to decide any money damages to be awarded to Masimo~~[patent holder]~~ to
12  compensate it for the infringement. ~~[~~You will also need to make a finding as to whether
13  any~~the~~ infringement ~~was willful. If you decide~~ that occurred after this lawsuit was
14  filed~~any infringement~~ was willful.~~, that decision should not affect any damages award~~
15  ~~you give. I will take willfulness into account later.]~~

16

17  **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

18

19

20

21

22

23

24

25

26

27

28

**Masimo's Position: Proposed Final Instruction No. 2A**

Masimo's proposed instruction includes several minor additions in lines 7-9 that clarify Masimo's allegations.  These additions specify that each accused Apple Watch includes both the Workout Mode and the High/Low Heart Rate Notifications feature.  The additions further clarify Masimo's position that Apple infringes based upon importing, offering for sale, and selling each Apple Watch with either feature separately.

Apple's proposal includes unnecessary and improper instructions.  First, Apple adds the following sentence at lines 8-9: "I will refer to the Workout Mode and High/Low Heart Rate Notifications as the 'Accused Features' of Apple Watch."  Apple's reference to "Accused Features" does not reflect the appropriate infringement liability analysis.  Masimo asserts apparatus claims against a device configured to monitor physiological parameters, such as heart rate.  The accused products here are various models of the Apple Watch, not merely individual "features" of the watch.  Masimo alleges that Apple infringes based on its importation, sale, and offer for sale of the Apple Watch.  Thus, the jury must determine whether Apple infringes the asserted claims by importing, selling, or offering for sale each Apple Watch.  Apple's reference to specific features is incorrect and could confuse the jury.  *See* Masimo's Position: Proposed Final Instruction No. 15A.  Masimo addresses the separate issue of apportionment for damages in the damages instructions.

Apple relies on opinions from the parties' technical experts to argue the jury instructions should use the term "Accused Features."  *See* Apple's Position: Proposed Final Instruction No. 2B.  But Masimo's expert, Dr. Madisetti, opined that the "***Accused Apple Watch Products***" infringe the asserted claims.  Dkt. 2523-2 ("Madisetti Opening") ¶¶ 11-12.  Similarly, Apple's expert, Dr. Mercier, opined that Apple does not infringe because the "***accused Apple Watch models***" do not meet all limitations of the asserted claims.  Dkt. 2536-4 ("Mercier Rebuttal") ¶ 5.  Indeed, to determine infringement, Dr. Mercier explained that "the Asserted Claims as properly construed are compared to the ***accused products*** . . . to determine whether each limitation of the claim-

1    at-issue is met." *Id.* ¶ 47.  Thus, the parties' technical experts support using terms such

2    as "Apple Watch" and "Accused Products," as Masimo proposes.

3        Second, Apple includes the following underlined phrase at lines 13-14: "Apple

4    also argues that—to the extent it infringes any Asserted Claim—that claim is invalid."

5    As Masimo explained above for its Proposed Initial Instruction No. 4A, this language

6    would require the jury to interpret the claims, which is a legal question that the Court

7    has already decided.  *See* Masimo's Position: Proposed Initial Instruction No. 4A.

8    Masimo proposes the following language instead: "Apple also argues that the Asserted

9    Claims are invalid."   Masimo's proposed language conveys to the jury Apple's

10   contentions in a simple and legally correct way.

11       For these reasons, the Court should adopt Masimo's proposed instruction.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPLE'S PROPOSED FINAL INSTRUCTION NO. 2B[20]
## SUMMARY OF CONTENTIONS

As I did at the start of the case, I will give you a brief summary of each side's contentions in this case.

Masimo alleges Apple infringed Claims 11-14 of the '776 Patent (the "Asserted Claims") by importing into the United States, and offering for sale and selling in the United States, the Apple Watch including the Workout Mode and/or High/Low Heart Rate Notifications features. I will refer to the Workout Mode and High/Low Heart Rate Notifications as the "Accused Features" of Apple Watch. Masimo alleges that Apple's infringement was willful, beginning in January 2020 when Masimo filed this lawsuit and made Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims. Apple also argues that—to the extent it infringes any Asserted Claim—that claim is invalid.

Your job will be to decide whether or not the Asserted Claims have been infringed and whether or not those claims are invalid. If you decide that any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Masimo to compensate it for the infringement. You will also need to make a finding as to whether any infringement that occurred after this lawsuit was filed was willful.

---

[20] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 2B**

**SUMMARY OF CONTENTIONS**

~~To help you follow the evidence~~As I did at the start of the case, I will ~~now~~ give you a brief summary of ~~the positions of the parties~~each side's contentions in this case.

Masimo alleges Apple infringed Claims 11-14 of the '776 Patent (the "Asserted Claims") by importing into the United States, and offering for sale and selling in the United States, the Apple Watch including the Workout Mode and/or High/Low Heart Rate Notifications features. I will refer to the Workout Mode and High/Low Heart Rate Notifications as the "Accused Features" of Apple Watch. Masimo alleges that Apple's infringement was willful, beginning in January 2020 when Masimo filed this lawsuit and made Apple aware of the '776 Patent. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

~~The parties in this case are [patent holder] and [alleged infringer]. The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."~~

~~[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

~~The [products] [methods] that are alleged to infringe are [list of accused products or methods].~~

1    [Alleged infringer]Apple denies that it has infringed claims [ ] of the [ ] patent.

2    [Alleged infringer] also argues that claims [ ] are invalid. I will instruct you later as to

3    the ways in which a patent may be invalid. In general, however, a patent is invalid if it

4    is not new or is obvious in view of the state of the art at the relevant time, or if the

5    description in the patent does not meet certain requirements. [Add other defenses, if

6    applicable.]any of the Asserted Claims. Apple also argues that—to the extent it infringes

7    any Asserted Claim—that claim is invalid.

8        Your job will be to decide whether or not claims [ ] of the [ ] patentAsserted

9    Claims have been infringed and whether or not those claims are invalid. If you decide

10    that any claim of the [ ] patentAsserted Claims has been infringed and is not invalid, you

11    will then need to decide any money damages to be awarded to [patent holder]Masimo to

12    compensate it for the infringement. [You will also need to make a finding as to whether

13    theany infringement that occurred after this lawsuit was filed was willful. If you decide

14    that any infringement was willful, that decision should not affect any damages award

15    you give. I will take willfulness into account later.]

16

17    **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

18

19

20

21

22

23

24

25

26

27

28

## Apple's Position: Proposed Final Instruction No. 2B

Apple and Masimo largely agree on this opening instruction, with two notable exceptions.

*First*, Apple submits that this instruction and all other related instructions should refer to the "Accused Features" of Apple Watch—i.e., Workout Mode and High/Low Heart Rate Notifications—that Masimo alleges infringe the asserted claims of the '776 Patent—not "Apple Watch" as a whole or "Accused Products."[21]  This approach flows from Dr. Madisetti's assertion that Apple Watch models "infringe the Asserted Patents in two ways":  (1) "using the Automatic Gain Control and Optical Power Control algorithm for the workout feature," and (2) "based on escalations of the heart rate algorithm performed … for heart rate notifications."  *See, e.g.*, Dkt. 2550-1 ("Madisetti Opening") ¶ 137.  Apple Watch "can perform numerous functions that Dr. Madisetti does not accuse of infringing" including "phone calls, texting, music, email, games, clock-related features, mapping, Background Heart Rate Walking, A-Fib History, Irregular Rhythm Notification, Breathe, and other health and wellness features."  Dkt. 2552-3 ("Mercier Rebuttal") ¶ 317.

In fact, Dr. Madisetti elected not to respond to a section of Dr. Mercier's report discussing "Non-Accused Apple Watch Heart-Related Features"—a section that references "(1) Background Heart Rate Walking, (2) Background Tachogram, (3) Irregular Heart Rate Notifications, (4) A-Fib History, (5) ECG, and (6) Blood Oxygen," Mercier Rebuttal   ¶ 254—precisely "[b]ecause these features are not accused of infringement, [so] they are not relevant to any issue in this case," Dkt. 2550-2 ("Madisetti Reply") ¶ 109; *see also id.* ("[B]ecause this section of [Dr. Mercier's] report is irrelevant to infringement of the … '776 Patent[], I will not address it further.").  Masimo's suggestion that Dr. Mercier's report assumes that Apple Watch as a whole is

---

[21] This dispute regarding whether to use the term "Accused Features" recurs in Final Instructions Nos. 15, 16, 29, and 31.  The arguments Apple makes here apply equally to those other instructions.

accused is both irrelevant (Masimo, as plaintiff, controls the scope of its allegations) and

wrong, as the following passage emphasizes:

> I understand that Masimo accuses Apple of infringing the Asserted Patents
> based on the following: (1) Workout in connection with AGC/OPC 1.0, (2)
> Workout in connection with AGC/OPC 2.0, and (3) escalations from
> Background Heart Rate to High and Low Heart Rate Notifications. Below
> I discuss the applications and algorithms related to heart rate, both accused
> and not accused.

Mercier Rebuttal ¶ 170.

Clarity on this issue is particularly important because several of Masimo's most

recent briefs have cited evidence regarding non-accused features to support its merits

positions, suggesting Masimo will make the same arguments at trial. *See, e.g.*, Dkt. 2629

at 5 (noting Masimo relied on data regarding ECG and IRN features in opposing motion

to strike); Dkt. 2743 at 7 (noting Masimo's opposition to Apple's MIL No. 1 indicates

Masimo intends to rely on statements made in unrelated administrative proceedings

regarding the Blood Oxygen and Atrial Fibrillation features). Apple submits that the

jury be instructed to focus on Workout Mode and High/Low Heart Rate Notifications

(i.e., the Accused Features) so that the jury does not mix-and-match evidence regarding

those features with evidence regarding pulse-rate-related features that were never—or

are no longer—accused.

**Second**, Apple's conditional validity argument (i.e., that the Asserted Claims are

invalid "to the extent [Apple] infringes any Asserted Claim") is appropriate and has been

expressly approved by the Federal Circuit. *See 01 Communique Laboratory, Inc. v.

Citrix Systems, Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) (noting that nothing "preclude[s]

a litigant from arguing that if a claim term must be broadly interpreted to read on an

accused device, then this same broad construction will read on the prior art.").

## JOINT PROPOSED FINAL INSTRUCTION NO. 3[22]

## WHAT IS EVIDENCE; DIRECT AND CIRCUMSTANTIAL EVIDENCE; EVIDENCE FOR A LIMITED PURPOSE

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed, which were read to you and placed into evidence; and

4. any facts that I have instructed you to accept as proved.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Some evidence may have been admitted for a limited purpose only. When I instructed you that an item of evidence was admitted only for a limited purpose, you may consider it only for that limited purpose and not for any other purpose.

---

[22] **Authority:** Dkt. 1715 at Jury Instruction No. 8; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.9, 1.11, 1.12, 2.2.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 3**

**WHAT IS EVIDENCE; DIRECT AND CIRCUMSTANTIAL EVIDENCE;**

**EVIDENCE FOR A LIMITED PURPOSE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed, which were read to you and placed into evidence; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

Some evidence may have beenbe admitted only for a limited purpose only.

When I instructedinstruct you that an item of evidence washas been admitted only for a limited purpose, you maymust consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.]

1  **Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth
2  Circuit §§ 1.9, 1.11, 1.12.

## JOINT PROPOSED FINAL INSTRUCTION NO. 4[23]

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the evidence controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may have been received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4. Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[23] **Authority:** Dkt. 1715 at Jury Instruction No. 9; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.10.

## REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 4
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they ~~[may say]~~ [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of <u>the evidence</u>~~them~~ controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that <u>has been</u>~~is~~ excluded or stricken, or that you ~~[are]~~ [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence ~~[may~~ <u>have been</u>~~be] [was]~~ received only for a limited purpose; when I ~~[instruct]~~ [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

4. Anything you may ~~[see or hear]~~ [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.10.

# JOINT PROPOSED FINAL INSTRUCTION NO. 5[24]

## EXPERT OPINION

You have heard testimony from individuals who are qualified as "experts" in this case.  Expert witnesses testify to their opinions and the reasons for those opinions.  Such expert opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Experts are allowed in certain instances to rely on evidence which they did not create.  Such evidence may be considered as material which the expert relied upon, but not for the truth of that material itself.

---

[24] **Authority:** Dkt. 1715 at Jury Instruction No. 16; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 5**

**EXPERT OPINION**

You [have heard] [are about to hear] testimony from individuals[*name*] who are qualified as "experts" in this case.  Expert witnesses[testified] [will] testify to their ] about [his] [her]opinions and the reasons for those opinions.  Such expertThis opinion testimony is allowed, because of the education orspecialized knowledge, skill, experience of these witnesses, training, or education of this witness.

Such opinion testimony should be judged just like any other testimony. You may accept it or reject it, and you should give it as much weight as you think it deserves, considering the witness's education andspecialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

Experts are allowed in certain instances to rely on evidence which they did not create.  Such evidence may be considered as material which the expert relied upon, but not for the truth of that material itself.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13.

# JOINT PROPOSED FINAL INSTRUCTION NO. 6[25]

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. When I overruled the objection, the question may have been answered, or the exhibit received. When I sustained the objection, the question was not answered, and the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

I may have ordered that some evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

---

[25] **Authority:** Dkt. 1715 at Jury Instruction No. 11; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.13.

# REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 6
## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  When~~If~~ I overruled~~overrule~~ the objection, the question may have been~~be~~ answered, or the exhibit received.  When~~If~~ I sustained~~sustain~~ the objection, the question was not~~cannot be~~ answered, and the exhibit was not~~cannot be~~ received. Whenever I sustained~~sustain~~ an objection to a question, you must ignore the question and must not guess what the answer might have been.

~~Sometimes~~ I may have ordered~~order~~ that some evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.13.

## JOINT PROPOSED FINAL INSTRUCTION NO. 7[26]

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

---

[26] **Authority:** Dkt. 1715 at Jury Instruction No. 15; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.14.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

# REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 7
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case, if any;

5.    the witness's bias or prejudice, if any;

6.    whether other evidence contradicted the witness's testimony;

7.    the reasonableness of the witness's testimony in light of all the evidence; and

8.    any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the

-70-

1  other hand, if you think the witness testified untruthfully about some things but told the

2  truth about others, you may accept the part you think is true and ignore the rest.

3       The weight of the evidence as to a fact does not necessarily depend on the number

4  of witnesses who testify. What is important is how believable the witnesses were, and

5  how much weight you think their testimony deserves.

6

7  **Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth

8  Circuit § 1.14.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL INSTRUCTION NO. 8[27]**

**TAKING NOTES**

You may have taken notes during the trial to help you remember the evidence. Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

When you leave, your notes should be left in the jury room.  No one will read your notes.

---

[27] **Authority:** Dkt. 1715 at Jury Instruction No. 10; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.18.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 8**

**TAKING NOTES**

~~If you wish, y~~Y̲ou may <u>have taken</u>~~take~~ notes <u>during the trial</u> to help you remember the evidence. ~~If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.~~

Whether or not you <u>took</u>~~take~~ notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

<u>When you leave, your notes should be left in the jury room.  No one will read your notes.</u>

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.18.

**JOINT PROPOSED FINAL INSTRUCTION NO. 9[28]**

**CHARTS, SUMMARIES, AND DEMONSTRATIVES**

**NOT RECEIVED IN EVIDENCE**

Certain charts, summaries, and other demonstratives not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts, summaries, and other demonstratives are only as good as the underlying evidence that supports them. They are not themselves evidence or proof of any facts. You should, therefore, give them only such weight as you think the underlying evidence deserves. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[28] **Authority:** Dkt. 1715 at Jury Instruction No. 13; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.14.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 9**

**CHARTS, SUMMARIES, AND DEMONSTRATIVES**

**NOT RECEIVED IN EVIDENCE**

Certain charts, ~~and~~ summaries, and other demonstratives not admitted into evidence ~~[may be]~~ [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts, ~~and~~ summaries, and other demonstratives are only as good as the underlying evidence that supports them. They are not themselves evidence or proof of any facts. You should, therefore, give them only such weight as you think the underlying evidence deserves. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.14.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JOINT PROPOSED FINAL INSTRUCTION NO. 10[29]

## CHARTS, SUMMARIES, AND DEMONSTRATIVES IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Such charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

---

[29] **Authority:** Dkt. 1715 at Jury Instruction No. 14; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.15.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 10**

**CHARTS, SUMMARIES, AND DEMONSTRATIVES IN EVIDENCE**

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial.  Such cCharts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.15.

# JOINT PROPOSED FINAL INSTRUCTION NO. 11[30]

## BURDENS OF PROOF

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means that party must persuade you by the evidence that the claim or affirmative defense is more probably true than not true. A party's burden of proof is by a preponderance of the evidence unless I instruct you otherwise.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all the evidence, regardless of which party presented it.

---

[30] **Authority:** Dkt. 1715 at Jury Instruction No. 7; Judge Selna's Exemplar Initial Jury Instructions No. 3; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.6, 1.7.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 11**

**BURDENS OF PROOF**

When a party has the burden of ~~proof on~~ proving any claim [or ~~affirmative defense]~~ by a preponderance of the evidence, it means ~~that party~~you must ~~persuade you~~be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.  A party's burden of proof is by a preponderance of the evidence unless I instruct you otherwise.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all ~~of~~ the evidence, regardless of which party presented it.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit §§ 1.6, 1.7.

# MASIMO'S PROPOSED FINAL INSTRUCTION NO. 12A[31]

## CLAIM CONSTRUCTION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are referred to interchangeably as the "elements," "limitations," or "requirements" of the claim. The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim. The asserted independent claim in this case is Claim 11 of the '776 Patent. The remainder of the Asserted Claims (Claims 12-14 of the '776 Patent) are dependent claims. A "dependent claim" incorporates all the requirements of the claim(s) to which it refers, and then adds its own requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if a product meets all the requirements of the dependent claim and any claim(s) to which it refers, the product is covered by that dependent claim.

---

[31] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.  Therefore, I have determined the meaning of certain claim terms and I will now provide to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity:

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light";
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent";
- "**second duty cycle**" must be different from the "first duty cycle."

The beginning portion of a claim is called the "preamble" of the claim.  In this case, every Asserted Claim either uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that an accused product includes all the requirements of that claim, the claim is infringed.  This is true even if the Accused Product contains additional elements.

For any words in the claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent.

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and validity.  These issues are yours to decide.

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 12A**

**CLAIM CONSTRUCTION**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are ~~often~~ referred to <u>interchangeably</u> as <u>the</u> ""~~claim~~ elements,<u>" ""</u>~~or "claim~~ limitations,<u>"</u> <u>or "requirements" of the claim.</u> ~~"~~ The coverage of a patent is assessed claim- by-claim. When a thing (such as a product ~~or a process~~) meets all ~~of~~ the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product ~~or process~~ where each of the claim elements or limitations is present in that product ~~or process.~~

This case involves two types of patent claims: independent claims and dependent claims.  An "independent claim" sets forth all ~~of~~ the requirements that must be met in order to be covered by that claim.  <u>The asserted</u>~~Thus, it is not necessary to look at any other claim to determine what an~~ independent claim ~~covers.~~ In this case <u>is Claim 11,</u> ~~claim(s) [ ]~~ of the <u>'776 Patent.</u>  ~~[ ] patent are each independent claims.~~

The remainder of the <u>Asserted Claims (Claims 12-14 of</u> ~~claims in~~ the <u>'776 Patent)</u>~~[ ] patent~~ are "dependent claims.<u> .</u> ~~"~~ A "dependent claim"~~ does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim~~ incorporates all ~~of~~ the requirements of the claim(s) to which it refers<u>, and</u> ~~. The dependent claim~~ then adds its own ~~additional~~ requirements. To determine what a dependent claim covers, it is

necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if A product [or process] that meets all of the requirements of both the dependent claim and any the claim(s) to which it refers, the product is covered by that dependent claim.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and [I will now provide [I have provided] to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity:.

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light";
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent";
- "**second duty cycle**" must be different from the "first duty cycle."

[Optional For Comprising: The beginning portion, also known as the preamble, of a claim is called the "preamble" of the claim. In this case, every Asserted Claim eitheroften uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising." :" The word "comprising," when used in the

preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all ~~of~~ the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.~~;~~

For any words in the claims~~claim~~ for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and validity. ~~invalidity.~~ These issues are yours to decide.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

**Masimo's Position: Proposed Final Instruction No. 12A**

The parties' proposals differ in three ways.  First, Apple adds a new construction of "patient monitor" despite the Court ruling that the plain and ordinary meaning applies.  Second, Apple adds a construction of "patient" despite the Court ruling that the plain and ordinary meaning applies.  At the October 20, 2025, Pretrial Conference, the Court indicated that it was not inclined to include constructions for "patient" and "patient monitor."  Masimo's proposal is consistent with the Court's indication.  Third, Apple deviates from the model instruction by changing "accused product" to "accused feature."  Masimo objects to Apple's proposal as follows.

For "patient monitor," the Court has explained that "[p]lain and ordinary meaning applies."  10/17/25 Tentative MIL Order at 2.  The Court also found that in its Final MSJ and Daubert Order, "[t]he Court did not fully construe the term but rather resolved the limited issue of whether Mercier and Warren's testimony was appropriate."  *Id.* at 3.  Apple nevertheless attempts to stitch together a new construction based upon the order that the Court explained did not fully construe the term.

Apple's proposed construction of "patient monitor" also requires that the device is "used on a person."  But Masimo asserts apparatus claims only, not method claims.  For the asserted claims, there is no requirement that the device be "used" on anyone.  Rather, the asserted claims recite that the device is "configured to" monitor at least pulse rate.  The parties also briefed this "used on" issue with respect to Masimo's Motion *in Limine* #1, and the Court tentatively ruled in Masimo's favor.

Moreover, there is no basis for Apple's combination of the construction of "patient" with the separate claim term "patient monitor."

Regarding "patient," the Court should also reject Apple's attempt to provide a construction to the jury.  The Court recently explained as follows: "The Court did not construe the term, 'patient.'  Plain and ordinary meaning applies."  Order re Summary Judgment and Related Motions (Oct. 17, 2025) at 18.  Thus, Apple's proposal to instruct the jury that the Court construed "patient" is improper.

-86-

The Court should also reject Apple's attempt to change "Accused Products" to "Accused Features" for the reasons discussed above with respect to Masimo's Proposed Final Instruction No. 2A and below with respect to Masimo's Proposed Final Instruction No. 15A. *See* Masimo's Position: Proposed Final Instruction Nos. 2A & 15A.

For these reasons, the Court should adopt Masimo's proposed instruction on claim construction.

# APPLE'S PROPOSED FINAL INSTRUCTION NO. 12B[32]
## CLAIM CONSTRUCTION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are referred to interchangeably as the "elements," "limitations," or "requirements" of the claim. The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim. The asserted independent claim in this case is Claim 11 of the '776 Patent. The remainder of the Asserted Claims (Claims 12-14 of the '776 Patent) are dependent claims. A "dependent claim" incorporates all the requirements of the claim(s) to which it refers, and then adds its own requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if a product meets all the requirements of the dependent claim and any claim(s) to which it refers, the product is covered by that dependent claim.

---

[32] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of certain claim terms and I will now provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity:

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light";
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent";
- "**patient**" means "a person receiving care from a medical professional";
- "**patient monitor**" means "a device used on a person receiving care from a medical professional, that should not miss events";
- "**second duty cycle**" must be different from the "first duty cycle."

The beginning portion of a claim is called the "preamble" of the claim. In this case, every Asserted Claim either uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused

Feature includes all the requirements of that claim, the claim is infringed.  This is true even if the Accused Feature contains additional elements.

For any words in the claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and validity.  These issues are yours to decide.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 12B**

**CLAIM CONSTRUCTION**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are ~~often~~ referred to interchangeably as the "~~claim~~ elements," "limitations," or "requirements" of the claim ~~limitations~~." The coverage of a patent is assessed ~~claim-by-claim~~ claim-by-claim. When a thing (such as a product ~~or a process~~) meets all ~~of~~ the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product ~~or process~~ where each of the claim elements or limitations is present in that product ~~or process~~.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim. The asserted independent claim in this case is Claim 11 of the '776 Patent. The remainder of the Asserted Claims (Claims 12-14 of the '776 Patent) are dependent claims. A "dependent claim" incorporates all the requirements of the claim(s) to which it refers, and then adds its own requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if a product meets all the requirements of the dependent claim and any claim(s) to which it refers, the product is covered by that dependent claim.

You will first need to understand what each claim covers in order to decide

whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you , I have determined the meaning of certain claim terms and [I will now provide] [I have provided] to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light;"
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent;"
- "**patient**" means "a person receiving care from a medical professional"
- "**patient monitor**" means "a device used on a person receiving care from a medical professional, that should not miss events;"
- "**second duty cycle**" must be different from the "first duty cycle."

[Optional For Comprising:  The beginning portion, also known as the preamble, of a claim often of a claim is called the "preamble" of the claim. In this case, every Asserted Claim either uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product Accused Feature includes all of the requirements of that claim, the claim is

infringed. This is true even if the ~~accused product~~ Accused Feature contains additional elements.]

[Optional For Consisting: The beginning portion, also known as the preamble, of a claim often uses the word "consisting of." The word "consisting of," when used in the preamble, means "including the following and excluding others." When "consisting of" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim and that the accused product includes additional elements, then claim is not infringed.]

For any words in the ~~claim~~ claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and ~~invalidity~~ validity. These issues are yours to decide.

[This instruction should only be given where dependent claims are at issue.]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all ~~of~~ the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim(s) [ ] of the [ ] patent are each independent claims.

The remainder of the claims in the [ ] patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product [or process] that meets all of the requirements of

-93-

1    ~~both the dependent claim and the~~ claim(s) to which it refers is covered by that dependent
2    claim.

3         [Note: It may be helpful to submit to the jury a chart setting forth all dependencies
4    for each dependent claim.]

5

6    **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

1    **Apple's Position: Proposed Final Instruction No. 12B**

2        The Federal Circuit Bar Association model that both sides agree is an appropriate

3    starting place for this instruction contemplates that the jury should be instructed on the

4    meaning of all claim terms that the Court has defined.  The chief remaining dispute is

5    whether Apple's proposed instruction should include the terms "patient" and "patient

6    monitor," as this Court interpreted those terms in its ruling on the parties' summary

7    judgment and *Daubert* motions.  *See* 10/17/25 MSJ Order at 10-11, 18.  During the

8    October 20, 2025 pretrial conference hearing, this Court indicated that it was still

9    considering whether to provide the jury with claim constructions of the "patient" and

10   "patient monitor" terms that are consistent with its discussions of those terms in its

11   October 17, 2025 *Daubert*/MSJ Order.  Apple respectfully submits that it should do so.

12       Apple's proposed language regarding "patient" is drawn directly from this Court's

13   ruling holding the "plain and ordinary meaning of the term" is "'a person receiving care

14   from a medical professional.'"  10/17/25 MSJ Order at 18.  This Court provided this

15   definition in order to resolve a dispute between the parties that otherwise would

16   (improperly) be in front of the jury.  *Id.* ("[R]esolving a claim construction dispute is not

17   a task for the jury.").  Apple submits that providing a definition of "patient" in the jury

18   instructions is the best way for the Court to communicate its resolution of this dispute to

19   the jury.

20       As to the term "patient monitor," Apple's proposed construction accurately

21   reflects the Court's conclusion that the claimed "patient monitor" is a "high

22   performance, power intensive clinical device[]" that should not "miss events."  10/17/25

23   MSJ Order at 10-11.  And providing the jury with a clear definition of this term in the

24   jury instructions will help ensure that the jury properly applies the Court's legal rulings

25   on this issue without either party "defin[ing] the term 'patient monitor' for the jury,"

26   10/17/25 MIL Tentative at 3.

27

28

1    While Masimo apparently disagrees with the precise language Apple uses to

2 explaining the meaning of "patient monitor," its arguments are unpersuasive. Masimo's

3 ***own expert*** has argued that the meaning of the term "patient monitor" should reflect the

4 definitions of "patient" and "monitor." Dkt. 2552-4 [Madisetti Reply] ¶ 205. This

5 Court's *Daubert* and MSJ rulings that support Apple's definition are now final. Finally,

6 this Court's tentative decision on the parties' MILs establishes both that use is relevant

7 to infringement and that a patient monitor generally should not miss events. 10/17/25

8 MIL Tentative at 2-3.

9    The parties also disagree whether this instruction should refer to "Accused

10 Features" rather than to "Accused Product." Apple submits it should, as the Accused

11 Features (Workout Mode and High / Low Heart Rate Notifications) are the only aspects

12 of Apple Watch that Dr. Madisetti alleges infringe the '776 Patent. *See supra* Apple's

13 Position on Final Instruction No. 2B.

1

2

## JOINT PROPOSED FINAL INSTRUCTION NO. 13[33]

## PATENT INFRINGEMENT—GENERALLY

3

4

5

I will now instruct you how to decide whether or not Masimo has proven that Apple has infringed the '776 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

6

7

8

In order to prove infringement, Masimo must prove that the requirements of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

9

I will now explain infringement in more detail.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[33] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1.

1
2

## REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 13
## PATENT INFRINGEMENT—GENERALLY

3
4

I will now instruct you how to decide whether or not Masimo[patent holder] has proven that Apple[alleged infringer] has infringed the '776 Patent. [ ] patent.

5
6

Infringement is assessed on a claim-by-claim basis.    Therefore, there may be infringement as to one claim but no infringement as to another.

7
8
9
10

In order to prove infringement, Masimo[patent holder] must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

11

I will now explain each of these types of infringement in more detail.

12
13

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MASIMO'S PROPOSED FINAL INSTRUCTION NO. 14[34]

# INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT TO

# INFRINGE ARE IMMATERIAL

In this case, Masimo asserts that Apple has infringed the '776 Patent.  Apple is liable for infringing Masimo's patent if you find that Masimo has proven that it is more likely than not that Apple imported, offered to sell, or sold the invention defined in at least one claim of Masimo's patent during the term of the '776 Patent.

A party can infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

---

[34] **Authority:** AIPLA Model Patent Jury Instructions § 3.1; 35 U.S.C. § 271(a); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754, 760-61 n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997).

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 14**

**INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT TO**

**INFRINGE ARE IMMATERIAL**

In this case, Masimo [the Plaintiff] asserts that Apple[the Defendant] has directly infringed the '776 Patent. Apple[abbreviated patent number] patent. [The Defendant] is liable for directly infringing Masimo's[the Plaintiff]'s patent if you find that Masimo[the Plaintiff] has proven that it is more likely than not that Apple the Defendant] made, used, imported, offered to sell, or sold the invention defined in at least one claim of Masimo's[the Plaintiff]'s patent during the term of the '776[abbreviated patent number] patent.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

**Model:** AIPLA Model Patent Jury Instructions § 3.1.

1

**Masimo's Position: Proposed Final Instruction No. 14**

2          Masimo's proposed instruction tracks the applicable AIPLA model (§ 3.1).  The

3   instruction is important to help ensure the jury applies the correct legal standard for

4   direct patent infringement.  Direct infringement under 35 U.S.C. § 271(a) is a strict-

5   liability offense that requires no proof of the infringer's knowledge or intent.  *Commil*

6   *USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 638-39 (2015) ("[A] Defendant's mental

7   state is irrelevant.  Direct infringement is a strict-liability offense.").  In contrast, willful

8   infringement requires proof of a mental state.  Masimo's proposed instruction helps

9   differentiate the requirements for direct infringement and willful infringement, thus

10  ensuring that jurors do not improperly import knowledge or intent requirements from

11  the test for willful infringement into their analysis of direct infringement.

12         In other cases, this Court has given a standalone jury instruction stating that

13  knowledge of the patent and intent to infringe are immaterial.  *See, e.g.*, *Panasonic*

14  *Holdings Corp. v. Getac Tech. Corp.*, No. SA CV 19-01118-DOC, Dkt. 385, Instruction

15  No. 23 (C.D. Cal. June 8, 2022); *Top Lighting Corp. v. Linco, Inc.*, No. EDCV 15-1589-

16  JVS, Dkt. 231, Instruction No. 17 (C.D. Cal. May 31, 2019); *EcoServices, LLC v.*

17  *Certified Aviation Services, LLC*, No. 5:16-cv-01824-RSWL, Dkt. 255, Instruction

18  No. 20 (C.D. Cal. July 2, 2018).  Such an instruction is also helpful and appropriate here.

19         Apple argues that the first paragraph of Masimo's proposed instruction is

20  duplicative of other instructions and would risk jury confusion.  But Apple does not

21  explain how the first paragraph would confuse the jury.  The first paragraph merely

22  tracks the model instruction, does not repeat other instructions, and is straightforward

23  and easy to understand.

24

25

26

27

28

1

**Apple's Position: Proposed Final Instruction No. 14**

2   Apple objects to Masimo's proposal to insert a standalone instruction stating that

3 direct infringement liability does not include a knowledge or intent element.  The Federal

4 Circuit Bar Association's model jury instructions—which the parties have relied on for

5 almost all other issues—have no such instruction.  Rather, the model instructions omit

6 any mention of a mental state for direct infringement.  They only mention mental state

7 where it is a required element—e.g., for willful infringement.

8   Masimo's purported contrary authority is not persuasive.  The structure of the

9 AIPLA model instructions is fundamentally different from the Federal Circuit Bar

10 Association model instructions, in that the AIPLA instructions are often a series of short

11 paragraphs on a number of discrete sub-issues, rather than (as is generally the case in

12 the Federal Circuit Bar Association model) longer, cohesive instructions that address a

13 number of doctrinal issues in a single passage.  *Compare, e.g.*, AIPLA Model

14 Instructions §§ 6.1-6.82 (a dozen instructions addressing anticipation), *with* Federal

15 Circuit Bar Association Model Instruction 4.3b-1 (single instruction on anticipation).  In

16 two of the three cases Masimo identifies where a standalone instruction was given,

17 moreover, the defendant apparently did not object.  *Panasonic Holdings Corp. v. Getac*

18 *Tech. Corp.*, No. 8:19-cv-01118 (C.D. Cal. May 13, 2022) Dkt. 315 at Instruction No.

19 34 (listing parties' "**Agreed** Proposed Jury Instructions" (emphasis added)); *Top*

20 *Lighting Corp. v. Linco Inc.*, No. 15-cv-01589 (C.D. Cal. May 14, 2019) Dkt. 191 at 3

21 (chart noting instruction on "Direct Infringement – Knowledge of Patent or Intent To

22 Infringe Is Immaterial" was undisputed).  And in the third case, the defendant apparently

23 objected to *any* instruction to the jury on the mental state for direct infringement.  *See*

24 *EcoServices, LLC v. Certified Aviation Servs, LLC,* No. 5:16-cv-01824, Dkt. 235,

25 Instruction No. 7 (C.D. Cal. June 20, 2018) (defendant arguing that the instruction "is

26 intended to distinguish direct and indirect infringement" and is "not relevant" where "no

27 indirect infringement is alleged" (emphasis and capitalization omitted)).

28

To be clear, Apple does not object to instructing the jury regarding the lack of a mental state requirement for direct infringement, nor does Apple contend that there is a *mens rea* element to Masimo's remaining infringement claim.  Apple objects to the use of a ***standalone*** instruction.  Neither party relies solely on the AIPLA model for virtually any other instruction, and Masimo provides no reason why this instruction should be the chief exception.  The only reason apparent is that Masimo hopes to unbalance the instructions by highlighting a statement of law that it believes is favorable to its position.

Instead of highlighting the *mens rea* issue in a standalone instruction, Apple proposes including a more neutral statement—drawn from this Court's instructions in the recent *SPEX* case—to be delivered as part of a longer instruction regarding the standards for direct infringement.  *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 16-cv-1799 (C.D. Cal. Oct. 18, 2024) Dkt. 592 Instruction No. 15.  Indeed, both sets of jury instructions Masimo relies upon above use very similar language to Apple's proposal in Proposed Final Instruction 15B.  *See Panasonic*, Dkt. 385, Instruction No. 23; *Top Lighting Corp. v. Linco, Inc.*, No. 15-cv1589-JVS (C.D. Cal. May 31, 2019) Dkt. 231, Instruction No. 17.

Finally, the first paragraph of Masimo's proposed instruction is, at best, duplicative of the direct infringement instruction from the Federal Circuit Bar Association model that the parties have already largely agreed upon.  Masimo does not explain why the jury should be given two overlapping instructions on basic infringement principles, and doing so would risk jury confusion.

1
2

### MASIMO'S PROPOSED FINAL INSTRUCTION NO. 15A[35]

### INFRINGEMENT – LITERAL INFRINGEMENT

3   There are two types of infringement: (1) "literal infringement" and
4   (2) "infringement under the doctrine of equivalents."   In order to prove literal
5   infringement, Masimo must prove by a preponderance of the evidence, i.e., that it is
6   more likely than not, that Apple offered for sale or sold within the United States, or
7   imported into the United States, a product that meets all the requirements of an Asserted
8   Claim of the '776 Patent and did so without the permission of Masimo during the time
9   the patent was in force.  You must compare the Accused Products with each and every
10  one of the requirements of a claim to determine whether all the requirements of that
11  claim are met.  The Asserted Claims cover what a device is, not what a device does.
12  Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale,
13  or importation, the Accused Products met the claim limitations.

14   You must determine, separately for each Asserted Claim, whether or not there is
15  infringement.  For dependent claims, if you find that a claim to which a dependent claim
16  refers is not infringed, there cannot be infringement of that dependent claim.  On the
17  other hand, if you find that an independent claim has been infringed, you must still
18  decide, separately, whether the Accused Products meet the additional requirement(s) of
19  any Asserted Claims that depend from the independent claim to determine whether those
20  asserted dependent claims have also been infringed.  A dependent claim includes all the
21  requirements of any of the claims to which it refers plus additional requirement(s) of its
22  own.

23
24
25
26

---

27  [35] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a; *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311–12 (Fed. Cir. 2005); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990).
28

1    **REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 15A**

2    **INFRINGEMENT—LITERAL INFRINGEMENT**

3    There are two types of ~~"direct~~ infringement:~~"~~: (1) "literal infringement" and (2)

4    "infringement under the doctrine of equivalents." In order to prove ~~direct infringement~~

5    ~~by~~ literal infringement, Masimo~~[patent holder]~~ must prove by a preponderance of the

6    evidence, i.e., that it is more likely than not, that Apple~~[alleged infringer] made, used,~~

7    ~~sold,~~ offered for sale or sold within the United States, or imported into the United States,

8    a [product ~~or process]~~ that meets all ~~of~~ the requirements of an Asserted Claim of the'776

9    Patent~~a claim~~ and did so without the permission of Masimo~~[patent holder]~~ during the

10   time the ~~[ ]~~ patent was in force. You must compare the Accused Products~~[product or~~

11   ~~process]~~ with each and every one of the requirements of a claim to determine whether

12   all ~~of~~ the requirements of that claim are met.  The Asserted Claims cover what a device

13   is, not what a device does.  Therefore, for infringement, the issue is whether, at the time

14   of the offer for sale, sale, or importation, the Accused Products met the claim limitations.

15   You must determine, separately for each asserted claim, whether or not there is

16   infringement. For dependent claims, if you find that a claim to which a dependent claim

17   refers is not infringed, there cannot be infringement of that dependent claim. On the

18   other hand, if you find that an independent claim has been infringed, you must still

19   decide, separately, whether the Accused Products meet~~[product or process] meets~~ the

20   additional requirement(s) of any Asserted claims that depend from the independent

21   claim to determine whether those asserted dependent claims have also been infringed. A

22   dependent claim includes all the requirements of any of the claims to which it refers plus

23   additional requirement(s) of its own.

24

25   **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a.

26

27

28

**Masimo's Position: Proposed Final Instruction No. 15A**

Masimo's proposed instruction tracks the FCBA model (§ 3.1a) and this Court's tentative MIL Order.  Masimo adds two sentences to the model instruction per the Court's guidance in its October 17, 2025 tentative MIL Order that, "The jury instructions should carefully track the relevant authority on this issue." *See* Tentative MIL Order at 1-2.  Accordingly, Masimo adds the appropriate legal standard for direct infringement based on a sale (or offer for sale or importation) of an accused device, which tracks the case law that the Court cites in its tentative Order.

In contrast, Apple deviates from the model and is unsupported by the Court's tentative MIL Order.  Apple's changes are unnecessary, unhelpful, and may confuse the jurors.

First, Apple tacks on the following sentence to the end of the first paragraph:
"Apple may infringe one of the Asserted Claims even though Apple in good faith believes that what it is doing is not an infringement of any patent and even if it did not know of the patent."
Apple takes this sentence from an instruction in the *SPEX* case.  But Apple omits two related instructions that immediately followed the sentence Apple seeks to add:
1) "[a] patent holder is not required to give notice of infringement, such as a cease and desist letter, in order to enforce his rights[,]" and
2) "[l]iteral infringement does not require proof that [Defendant] copied a product or the patent."
*SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 16-cv-1799 (JVS), Dkt. 592, Instruction No. 15 (C.D. Cal. Oct. 8, 2024).  The Court should reject Apple's proposed addition because it deviates from the model instruction and softens and obscures the important point, which is that a finding of direct infringement requires no intent or knowledge.  For the reasons explained above regarding Proposed Final Instruction No. 14, this topic merits a standalone instruction in accordance with the AIPLA model and this Court's jury instructions in prior patent cases.

Second, Apple's proposal deletes the term "Accused Products" and replaces it with the term "Accused Features." Apple's use of the term "Accused Features" in an infringement instruction is unsupported—Apple cites no model instruction, actual instruction, or any other authority supporting its proposed change. The AIPLA and FCBA model instructions use the term "product" and not "feature" in their model infringement instructions. AIPLA Model Instruction No. 3.2; FCBA Model Instruction No. 3.1a. Even the instruction in the *SPEX* case, which Apple cites, uses the term "Accused Products" in its infringement instruction. *SPEX Techs.*, Dkt. 592, Instruction No. 15.

In this case, Masimo accuses entire products (Apple Watches) of infringing the asserted patent, not merely features of products. Therefore, the instruction on liability for infringement should refer to the "Accused Products."

Jury instructions in this District have consistently used "product," not "feature," in infringement instructions. *See, e.g.*, *SPEX Techs.*, Dkt. 592, Instruction No. 15; *Medtronic, Inc. et al v. Axonics Modulation Techs., Inc*., No. 8-19-cv-02115 (DOC), Dkt. 597, Instruction No. 16 (C.D. Cal. Sept. 18, 2024); *Guangzhou Yucheng Trading Co., Ltd. v. Dbest Prods., Inc*., No. 2-21-cv-04758 (JVS), Dkt. 190, Instruction No. 17 (C.D. Cal Mar. 03, 2023).

Apple relies on opinions from the parties' technical experts to argue the jury instructions should use the term "Accused Features." *See* Apple's Position: Proposed Final Instruction No. 2B. But Masimo's expert, Dr. Madisetti, opined that the "***Accused Apple Watch Products***" infringe the asserted claims. Dkt. 2523-2 ("Madisetti Opening") ¶¶ 11-12. Similarly, Apple's expert, Dr. Mercier, opined that Apple does not infringe because the "***accused Apple Watch models***" do not meet all limitations of the asserted claims. Dkt. 2536-4 ("Mercier Rebuttal") ¶ 5. Indeed, to determine infringement, Dr. Mercier explained that "the Asserted Claims as properly construed are compared to the ***accused products*** . . . to determine whether each limitation of the claim-

1  at-issue is met." *Id.* ¶ 47. Thus, the parties' technical experts support using the term

2  "Accused Products," as Masimo proposes.

3      The Court should reject Apple's proposed change because it deviates from the

4  model and actual instructions, is inappropriate in the context of liability for infringement

5  where products (not features) are accused, and could cause juror confusion.

6      Third, Apple adds the following sentences that are inconsistent with the Court's

7  tentative ruling on Masimo's MIL 1:

8      "The Asserted Claims cover a particular type of device, whose characteristics are

9      defined by the claim limitations. . . . In determining whether the Accused Features

10     have the characteristics required by the claim limitations, you may consider how

11     the Accused Features are ultimately used—along with other evidence of the

12     characteristics of the Accused Features."

13  The Court explained in its tentative MIL Order as follows: "For direct infringement of

14  an apparatus claim based on the sale of an accused device, the issue is not whether the

15  accused device was subsequently used in an infringing manner. Rather, the issue is

16  whether, at the time of the sale, the accused device meets the claim limitation." 10/17/25

17  Tentative Order re MILs at 1. Apple's proposal to instruct the jury that, for example, it

18  "may consider how the Accused Features are ultimately used" is inconsistent with the

19  Court's tentative MIL Order and the legal standard for direct infringement. That the

20  Court will permit Apple to present some evidence of subsequent use does not mean that

21  the jury instructions on infringement should emphasize such evidence. Apple's

22  proposed instruction would distort the Court's analysis and place undue emphasis on

23  such evidence. Thus, the Court should reject Apple's proposal.

24      Fourth, Apple further deviates from the model by including more language from

25  the *SPEX* Instruction:

26     "If you find that Masimo has proven by a preponderance of the evidence

27     that each and every limitation of an Asserted Claim is present in an Accused

28     Feature, then you must find that the Accused Feature literally infringes that

claim.  Conversely, if you find that an Accused Feature meets fewer than all the requirements of a claim—in other words, if there is at least one claim requirement that is missing from the Accused Feature—then that Accused Feature does not literally infringe that claim."

The first sentence of Apple's proposed addition unnecessarily duplicates the standard of proof already in the instruction:

"Masimo must prove by a preponderance of the evidence… that Apple offered for sale or sold …, a product that meets all the requirements of an Asserted Claim of the '776 Patent.  You must compare the Accused Products with each and every one of the requirements of a claim to determine whether all the requirements of that claim are met."

The second sentence of Apple's proposed addition is confusing because it inverts the legal test and states no standard of proof.  Apple's proposed change is unnecessary and unhelpful.

For these reasons, the Court should adopt Masimo's proposed instruction on literal infringement, which tracks the model, and reject Apple's proposal.

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 15B[36]

## INFRINGEMENT – LITERAL INFRINGEMENT

As relevant to this case, there are two types of infringement: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." Apple may infringe one of the Asserted Claims even though Apple in good faith believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.

In order to prove literal infringement, Masimo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Apple offered for sale or sold within the United States, or imported into the United States, a product that meets all the requirements of an Asserted Claim of the '776 Patent and did so without the permission of Masimo during the time the patent was in force. You must compare the Accused Features with each and every one of the requirements of a claim to determine whether all the requirements of that claim are met. The Asserted Claims cover a particular type of device, whose characteristics are defined by the claim limitations. Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale, or importation, the Accused Features met the claim limitations. In determining whether the Accused Features have the characteristics required by the claim limitations, you may consider how the Accused Features are ultimately used—along with other evidence of the characteristics of the Accused Features.

You must determine, separately for each Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Features meet the additional requirement(s) of

---

[36] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a; *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 16-cv-1799, Dkt. 592 Instruction No. 15 (C.D. Cal.); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012); *In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1286 (Fed. Cir. 2016); 10/17/25 Tentative MIL Order at 1-2.

1  any Asserted Claims that depend from the independent claim to determine whether those

2  asserted dependent claims have also been infringed.  A dependent claim includes all the

3  requirements of any of the claims to which it refers plus additional requirement(s) of its

4  own.

5       If you find that Masimo has proven by a preponderance of the evidence that each

6  and every limitation of an Asserted Claim is present in an Accused Feature, then you

7  must find that the Accused Feature literally infringes that claim.  Conversely, if you find

8  that an Accused Feature meets fewer than all the requirements of a claim—in other

9  words, if there is at least one claim requirement that is missing from the Accused

10  Feature—then that Accused Feature does not literally infringe that claim.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 15B**

**INFRINGEMENT—LITERAL INFRINGEMENT**

~~There~~As relevant to this case, there are two types of "~~direct~~ infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." Apple may infringe one of the Asserted Claims even though Apple in good faith believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.

In order to prove ~~direct infringement by~~ literal infringement, ~~[patent holder]~~Masimo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that ~~[alleged infringer] made, used, sold,~~Apple offered for sale or sold within the United States, or imported into the United States, a ~~[product or process]~~that meets all ~~of~~the requirements of ~~a claim~~an Asserted Claim of the '776 Patent and did so without the permission of ~~[patent holder]~~Masimo during the time the ~~[]~~patent was in force. You must compare the ~~[product or process]~~Accused Features with each and every one of the requirements of a claim to determine whether all ~~of~~the requirements of that claim are met. The Asserted Claims cover a particular type of device, whose characteristics are defined by the claim limitations. Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale, or importation, the Accused Features met the claim limitations. In determining whether the Accused Features have the characteristics required by the claim limitations, you may consider how the Accused Features are ultimately used—along with other evidence of the characteristics of the Accused Features.

You must determine, separately for each ~~asserted claim~~Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the ~~[product or process] meets~~Accused Features meet the additional requirement(s) of any ~~claims~~Asserted Claims that depend from the

independent claim to determine whether those asserted dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

If you find that Masimo has proven by a preponderance of the evidence that each and every limitation of an Asserted Claim is present in an Accused Feature, then you must find that the Accused Feature literally infringes that claim. Conversely, if you find that an Accused Feature meets fewer than all the requirements of a claim—in other words, if there is at least one claim requirement that is missing from the Accused Feature—then that Accused Feature does not literally infringe that claim.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a.

### Apple's Position: Proposed Final Instruction No. 15B

The parties agree that the Federal Circuit Bar Association model should serve as the framework for this instruction. The remaining disputes are narrow.

***First***, in light of this Court's tentative MIL ruling, Apple has added language clarifying that use of Apple Watch is relevant for the limited purpose of determining whether Watch constitutes a "patient monitor." 10/17/25 MIL Tentative at 2. Masimo's proposal is largely incorporated within Apple's language, but would be confusing to the jury standing alone, as it incorrectly suggests that the use of Apple Watch is ***never*** relevant to infringement. While Masimo asserts that Apple's proposal puts "undue emphasis" on the relevance of use, Apple's proposal is consistent with this Court's tentative and is certainly preferable to Masimo's proposal, which would provide the jury with no guidance whatsoever on when "use" can be considered.

***Second***, Apple has proposed several additional modifications to the Federal Circuit Bar Association model that are drawn directly from this Court's corresponding instruction delivered in the recent *SPEX Techs., Inc. v. W. Digital Techs., Inc.* trial. No. 16-cv-1799 (C.D. Cal. Oct. 28, 2024) Dkt. 592 Instruction No. 15. In particular, Apple proposes adding (1) this Court's statement that there is no *mens rea* requirement to establish direct infringement in the place of Masimo's unbalanced standalone and (2) a final paragraph to make clear to the jury that it should find infringement if and only if Masimo proves all elements by a preponderance of the evidence.

Masimo does not dispute that Apple's modifications are drawn directly from this Court's instruction in *SPEX*. Masimo's chief objection to Apple's first modification (regarding *mens rea*) is that Apple did not reproduce ***other*** language from the *SPEX* case. But if Masimo believed that such language were necessary and appropriate, Masimo should have proposed it. And while Masimo suggests that Apple's language somehow "softens" the *mens rea* requirement, Apple's proposed wording is very similar to two of the three jury instructions upon which Masimo relies in requesting its standalone *mens rea* instruction. *See Panasonic*, Dkt. 385, Instruction No. 23

("Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of the patent."); *Top Lighting Corp.*, Dkt. 231, Instruction No. 17 ("Someone can infringe a patent without knowing what they are doing is an infringement of the patent. They also may infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.").

Masimo also (wrongly) asserts that Apple's second modification is improperly duplicative of language that appears in the first paragraph of the current proposed instruction. In fact, that same supposed "duplication" appeared in *SPEX*, which includes a near identical first paragraph to what the parties have proposed here:

> SPEX must prove by a preponderance of the evidence … that Western Digital … sold or offered for sale … a product that meets all of the requirements of a claim[.] You must compare each of the Accused Products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met."

*SPEX*, Dkt. 592, Instruction No. 15.

Finally, Masimo's assertion that the second sentence of Apple's proposed second modification is "confusing," and "unnecessary and unhelpful" is simply an (unwarranted) critique of this Court's prior instruction. Masimo does not seriously dispute that Apple's proposed instruction—taken as a whole—includes the proper standard of proof and the right legal test. The sentence Masimo targets merely emphasizes the crucial point that there can be no infringement if the accused features do not meet every claim limitation.

*Third*, Apple again proposes to refer to "Accused Features" rather than "Accused Products," since only Workout Mode and High / Low Heart Rate Notifications are germane to the infringement determination. *See supra* Apple's Position: Final Instruction No. 2B.

1

2

### MASIMO'S PROPOSED FINAL INSTRUCTION NO. 16A[37]

### INFRINGEMENT – DOCTRINE OF EQUIVALENTS

3    If you find that Apple sells, offers to sell within, or imports into the United States

4  Accused Products that do not literally meet all the elements of a claim and thus do not

5  literally infringe that claim, there can still be infringement if the Accused Products

6  satisfy that claim element under the doctrine of equivalents.   In this case, there is one

7  exception to this rule: The claim element "processing characteristics" cannot be satisfied

8  by the doctrine of equivalents.

9    Under the doctrine of equivalents, products infringe a claim if the Accused

10  Products contain elements that literally meet or are equivalent to each and every element

11  of the claim.  You may find that an element of the Accused Products is equivalent to an

12  element of a claim that is not met literally if a person having ordinary skill in the field

13  of technology of the patent would have considered the differences between them to be

14  "insubstantial" or would have found that the structure of the Accused Products:

15  (1) performs substantially the same function, (2) in substantially the same way,

16  (3) to achieve substantially the same result as the element of the claim.  In order to prove

17  infringement under the doctrine of equivalents, Masimo must prove the equivalency of

18  the structure of the Accused Products to the claim element by a preponderance of the

19  evidence.  Thus, each element of a claim must be met by the Accused Products either

20  literally or under the doctrine of equivalents for you to find infringement.

21

22

23

24

25

26

27

28

---

[37] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c.

# REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 16A

# INFRINGEMENT—DOCTRINE OF EQUIVALENTS

If you find that Applea [person] [company] makes, uses, sells, offers to sell within, or imports into the United States Accused Productsa [product] [process] that dodoes not literally meet all of the elements of a claim and thus dodoes not literally infringe that claim, there can still be direct infringement if the Accused Products satisfythat [product or process] satisfies that claim element elements "under the doctrine of equivalents. In this case, there is one exception to this rule: The claim element "processing characteristics" cannot be satisfied by the doctrine of equivalents.."

Under the doctrine of equivalents, products infringea [product or process] infringes a claim if the accused Products contain[product or process] [contains elements or performs steps] that literally meet or are equivalent to each and every element of the claim. You may find that an element of the Accused Productsor step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure of the Accused Products:or action]: (1) performs substantially the same function, and (2) works in substantially the same way, (3) to achieve substantially the same result as the element of the claim. In order to prove infringement under the doctrine of by "equivalents, Masimo," [patent holder] must prove the equivalency of the [structure of the Accused Productsor action] to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the Accused Products[accused product or process] either literally or under the doctrine of equivalents for you to find infringement.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c.

1

**Masimo's Position: Proposed Final Instruction No. 16A**

2     Masimo's proposed instruction tracks the applicable FCBA model (§ 3.1c).  Apple

3 again proposes that the term "Accused Products" be replaced with "Accused Features."

4 For the reasons explained above regarding Masimo's Proposed Final Instruction

5 Nos. 2A and 15A, the term "Accused Products" is proper for infringement liability

6 instructions rather than "Accused Features."  *See* Masimo's Position: Proposed Final

7 Instruction Nos. 2A & 15A.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 16B[38]

## INFRINGEMENT – DOCTRINE OF EQUIVALENTS

If you find that Apple sells, offers to sell within, or imports into the United States Accused Features that do not literally meet all the elements of a claim and thus do not literally infringe that claim, there can still be infringement if the Accused Features satisfy that claim element under the doctrine of equivalents.  In this case, there is one exception to this rule: The claim element "processing characteristics" cannot be satisfied by the doctrine of equivalents.

Under the doctrine of equivalents, products infringe a claim if the Accused Features contain elements that literally meet or are equivalent to each and every element of the claim.  You may find that an element of the Accused Features is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure of the Accused Features: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the element of the claim.  In order to prove infringement under the doctrine of equivalents, Masimo must prove the equivalency of the structure of the Accused Features to the claim element by a preponderance of the evidence.  Thus, each element of a claim must be met by the Accused Features either literally or under the doctrine of equivalents for you to find infringement.

---

[38] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 3.1c; 9/3/25 MSJ Tentative.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 16B**

**INFRINGEMENT—DOCTRINE OF EQUIVALENTS**

[This instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.]

If a [person] [company] makes, uses, you find that Apple sells, offers to sell within, or imports into the United States a [product] [process] that does Accused Features that do not literally meet all of the elements of a claim and thus does do not literally infringe that claim, there can still be direct infringement if that [product or process] satisfies the Accused Features satisfy that claim elements "element under the doctrine of equivalents."² In this case, there is one exception to this rule: The claim element "processing characteristics" cannot be satisfied by the doctrine of equivalents.

Under the doctrine of equivalents, a [product or process] infringes products infringe a claim if the accused [product or process] [contains Accused Features contain elements or performs steps] that literally meet or are equivalent to each and every element of the claim. You may find that an element or step of the Accused Features is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action] of the Accused Features: (1) performs substantially the same function and, (2) works in substantially the same way, (3) to achieve substantially the same result as the element of the claim.  In order to prove infringement by "under the doctrine of equivalents," [patent holder] Masimo must prove the equivalency of the [structure or action] of the Accused Features to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the [accused product or process] Accused Features either literally or under the doctrine of equivalents for you to find infringement.

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the [structure or action] to be considered interchangeable, the [claim element]

must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

If claims with means-plus-function clauses are at issue: When the claim element that is not literally met by the [product or process] is a ["means-plus-function" or "step-plus-function"] element, and if you determined that there is no "literal infringement" because there is no [structure or set of structures/action or set of actions] in the [product or process] that performs the identical function of the means-plus-function element, you may decide that the [structure or action] nonetheless corresponds to the element of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" [structure or action].

On the other hand, if you find that the accused [product or process] does not have identical or equivalent [structure or set of structures/action or set of actions] to [any of] the [set(s) of] [structure(s) or action(s)] that I defined as performing that function in the [ ] patent, then you may only find infringement under the doctrine of equivalents if the [structure or set of structures/action or set of actions] did not exist at the time the patent issued.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c.

-121-

**Apple's Position: Proposed Final Instruction No. 16B**

The parties' only dispute regarding the doctrine of equivalents instruction concerns the same "Accused Features" / "Accused Products" issue addressed above. *See supra* Apple's Position: Final Instruction No. 2B.

## MASIMO'S PROPOSED FINAL INSTRUCTION NO. 17[39]

## WILLFUL INFRINGEMENT

In this case, Masimo alleges that Apple willfully infringed Masimo's patent. If you have decided that Apple has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Masimo proved that it is more likely than not that Apple knew of Masimo's patent and that the infringement by Apple was intentional. You may not determine that the infringement was willful just because Apple was aware of the '776 Patent and infringed it. Instead, you must also find that Apple deliberately infringed the '776 Patent.

To determine whether Apple acted willfully, consider all facts and assess Apple's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

(1)    Whether or not Apple acted consistently with the standards of behavior for its industry;

(2)    Whether or not Apple intentionally copied a product of Masimo that is covered by the '776 patent;

(3)    Whether or not Apple reasonably believed that it did not infringe or that the patent was invalid;

(4)    Whether or not Apple made a good-faith effort to avoid infringing the '776 Patent, for example, whether Apple attempted to design around the '776 Patent;

(5)    Whether or not Apple tried to cover up its infringement.

If you determine that any post-suit infringement was willful, that decision must not affect the amount of any damages award you give for infringement. I will take willfulness into account later if you find it.

---

[39] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.10; *see also* N.D. Cal. Model Patent Jury Instructions § 3.8 (part of infringement instructions).

# REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 17

## WILLFUL INFRINGEMENT

In this case, Masimo alleges~~[patent holder] argues~~ that Apple~~[alleged infringer]~~ willfully infringed Masimo's ~~the~~ [patent. ~~holder]'s patent.~~ If you have decided that Apple~~[alleged infringer]~~ has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Masimo~~[patent holder]~~ proved that it is more likely than not that Apple~~[alleged infringer]~~ knew of Masimo's~~[patent holder]'s~~ patent and that the infringement by Apple~~[alleged infringer]~~ was intentional. You may not determine that the infringement was willful just because Apple~~[alleged infringer]~~ was aware of the '776~~[ ]~~ patent and infringed it. Instead, you must also find that Apple~~[alleged infringer]~~ deliberately infringed the '776 Patent. ~~[ ] patent.~~

To determine whether Apple~~[alleged infringer]~~ acted willfully, consider all facts and assess Apple's~~[alleged infringer's]~~ knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited~~,~~ to:

(1) Whether or not Apple~~[alleged infringer]~~ acted consistently with the standards of behavior for its industry;

(2) Whether or not Apple~~[alleged infringer]~~ intentionally copied a product of Masimo ~~[patent holder]~~ that is covered by the '776~~[ ]~~ patent;

(3) Whether or not Apple~~[alleged infringer]~~ reasonably believed that it did not infringe or that the patent was invalid;

(4) Whether or not Apple~~[alleged infringer]~~ made a good-faith effort to avoid infringing the '776~~[ ]~~ patent, for example, whether Apple~~[alleged infringer]~~ attempted to design around the '776 Patent;~~[ ] patent; and~~

(5) Whether or not Apple~~[alleged infringer]~~ tried to cover up its infringement.

If you determine that any post-suit~~[Give this additional instruction only if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement~~ was willful.~~]~~

-124-

[Alleged infringer] argues it did not act willfully because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that decisionthe [ ] patent was invalid. You must not affect the amount of any damages award you give for infringement.  I will take willfulness into account later if youevaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.

[If jury is made aware that there was not a legal opinion that alleged infringer is relying on]

You may not assume that merely because [alleged infringer] did not obtain a legal opinion about whether [it] infringed the [ ] patent, that the opinion would have been unfavorable. The absence of a legal opinion may not be used by you to find it. that [alleged infringer] acted willfully. Rather, the issue is whether, considering all the facts, [patent holder] has established that [alleged infringer]'s conduct was willful.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.10.

-125-

1

**Masimo's Position: Proposed Final Instruction No. 17**

2      The parties disagree on ***when*** in the final instructions the Court should instruct the

3 jury on willful infringement.    Masimo proposes instructing the jury on willful

4 infringement after infringement and before Apple's invalidity defense.  Apple proposes

5 that the Court instruct the jury on willful infringement last, after instructing the jury on

6 infringement, validity, and damages.  Masimo's proposal follows the order of both the

7 FCBA and Northern District of California model instructions and should be adopted.

8      The sequence of jury instructions is important to ensure that jurors understand the

9 legal framework and apply it correctly to the facts of the case.  The FCBA and N.D. Cal.

10 model instructions provide a structured approach that emphasizes the logical progression

11 of legal concepts.  The FCBA and N.D. Cal. models position the willful infringement

12 instruction with the other infringement instructions.  This Court has followed such an

13 approach.  *Top Lighting Corp. v. Linco, Inc.*, No. EDCV 15-1589-JVS, Dkt. 231,

14 Instruction No. 19 (C.D. Cal. May 31, 2019).    Masimo's proposal helps the jury

15 understand the difference between infringement and willful infringement without the

16 disruption of numerous instructions on validity and damages.

17      Apple argues that the jury need not decide willfulness if it finds the asserted patent

18 claims are invalid.  But, as Masimo explains in connection with the verdict form, the

19 jury should decide willful infringement regardless of validity.  Apple also argues that

20 the jury may inadvertently take willfulness into account when determining damages.

21 But Apple's concern is unfounded because both parties propose instructing the jury

22 multiple times as follows: "If you determine that any post-suit infringement was willful,

23 that decision ***must not affect*** the amount of any damages award you give for

24 infringement.  I will take willfulness into account later if you find it." *See* Apple's

25 Proposed Final Instruction 2B; Apple's Proposed Final Instruction 32; Masimo's

26 Proposed Initial Instruction 4A; Masimo's Proposed Final Instruction 17.

27

28

Masimo addresses the content of the parties' competing instructions on willful infringement below in Masimo's Position on Apple's Proposed Final Instruction No. 32. *See* Masimo's Position: Proposed Final Instruction No. 32.

### Apple's Position: Proposed Final Instruction No. 17

Apple submits that willfulness should be discussed at the end of the substantive instructions, just before the jointly proposed "Duty To Deliberate" Instruction. *See* Proposed Final Instruction No. 32.[40]  While Masimo has suggested including willfulness immediately after infringement, the jury need not reach willfulness if it finds that the asserted patent is invalid.  After all, an invalid claim cannot be infringed—willfully or otherwise.  *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 644-645 (2015) ("To say that an invalid patent cannot be infringed … is in one sense a simple truth[.]"); *see also, e.g.*, *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1353 & nn.3, 13 (Fed. Cir. 2019) (setting aside jury's finding of willful infringement because, *inter alia*, it could have been based on infringement of claims that "were abandoned during [an] ex parte reexamination proceeding").  Indeed, even one set of jury instructions that Masimo relies upon for another point lists willfulness only after invalidity.  *Medtronic, Inc. v. Axonics Inc.*, No. 8-19-cv-02115, Dkt. 597, Instruction No. 27 (C.D. Cal. Sept. 18, 2024).

Moreover, Masimo's assertion that the jury may get confused if willfulness is discussed separately from infringement ignores a greater risk.  By asking the jury to consider and resolve willfulness before it awards damages, the jury may be conditioned to inadvertently (and impermissibly) take willfulness into account when determining the amount of compensatory damages.  Listing the willfulness instruction last is consistent with both the structure of the AIPLA model instructions (which even Masimo relies upon for some aspects of its proposed instructions) and this Court's past practice in, for example, *Dbest Products v. Guangzhou Yucheng Trading Co.*, No. 21-cv-4758, Dkt. 190, at 36 (C.D. Cal. Mar. 3, 2023).

---

[40] Apple's substantive argument regarding its proposed willfulness instruction is discussed in connection with Proposed Final Instruction No. 32.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MASIMO'S PROPOSED FINAL INSTRUCTION NO. 18[41]

### INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not Apple has proven that Claims 11-14 of the '776 Patent are invalid. To prove that any claim of a patent is invalid, Apple must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

---

[41] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.1.

1
2

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 18**

**INVALIDITY—BURDEN OF PROOF**

3    I will now instruct you on the rules you must follow in deciding whether or not

4   Apple[alleged infringer] has proven that claims 11-14[ ] of the '776[ ] patent are invalid.

5   To prove that any claim of a patent is invalid, Apple[alleged infringer] must persuade

6   you by clear and convincing evidence, that is, you must be left with a clear conviction

7   that the claim is invalid.

8

9   **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.1.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Masimo's Position: Proposed Final Instruction No. 18**

2      Masimo's proposal tracks the FCBA model instruction (§ 4.1).  It informs the jury

3 of the applicable standard of proof for Apple's invalidity defense.  This approach also

4 tracks Joint Proposed Final Instruction No. 15, which is the parties' agreed-to

5 introductory infringement instruction informing the jury of the applicable standard of

6 proof for Masimo's infringement claim.

7      It is logical and necessary to have a separate instruction addressing the higher

8 burden of proof for validity.  A separate instruction helps prevent jury confusion and

9 ensures that jurors do not inadvertently apply a lower standard of proof to the issue of

10 validity.  By providing a separate instruction on the burden of proof, courts can help

11 jurors appreciate the significance of the clear and convincing evidence standard and the

12 rationale behind the presumption of validity set forth in 35 U.S.C. § 282.  *Medtronic*,

13 Dkt. 597, Instruction No. 21; *MGI Digital Tech. SA v. Duplo USA Corp.*, No. 8-22-cv-

14 00979, Dkt. 382, Instruction No. 19 (C.D. Cal. Feb. 13, 2024); *Colibri Heart Valve LLC*

15 *v. Medtronic CoreValve LLC et al.*, No. 8-20-cv-00847, Dkt. 443, Instruction No. 19

16 (C.D. Cal. Feb. 8, 2023).

17      Apple argues that the instruction is unnecessary and intended for situations where

18 multiple invalidity theories are at issue.  But nothing about FCBA model § 4.1 limits it

19 to trials with multiple invalidity theories.  As explained above, it is helpful to instruct

20 the jury separately about the clear and convincing evidence standard, particularly

21 because the lower preponderance of the evidence standard applies to several other issues

22 at trial, including infringement, willful infringement, and damages.

23

24

25

26

27

28

## Apple's Position: Proposed Final Instruction No. 18

Apple objects to Masimo's proposal to include an unnecessary, standalone instruction regarding the burden of proof for invalidity. All information in this instruction is contained in the instruction introducing the obviousness doctrine (Joint Final Instruction No. 20), including the clear and convincing standard of proof. While Masimo's proposed instruction appears in the Federal Circuit Bar Association model, in context, it appears intended for a situation where multiple invalidity theories are at play (e.g., anticipation and obviousness). *See generally* Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 4.1-4.3d. Here, however, Apple is advancing only one invalidity theory at trial: obviousness. Masimo's proposed instruction is thus duplicative and would unfairly emphasize the standard of proof applicable to invalidity.

Masimo analogizes this instruction to Joint Proposed Instruction No. 13 (Patent Infringement—Generally), but that analogy only proves Apple's point. Masimo advances two types of infringement theories (literal infringement and doctrine of equivalents), so an introductory instruction makes sense in that context. It does not make sense when there is only one invalidity theory at play. Indeed, each of Masimo's cited examples of instructions that included a standalone introduction to invalidity involved multiple invalidity theories. *See, e.g.*, *Medtronic, Inc. v. Axonics Inc*., No. 8-19-cv-2115, Dkt. 597, Instruction Nos. 21-26 (C.D. Cal. Sept. 18, 2024) (anticipation, obviousness and written description); *MGI Digital Tech. SA v. Duplo USA Corp*., No. 8-22-cv-979 Dkt. 382, Instruction No. 19-24 (C.D. Cal. Feb. 13, 2024) (anticipation, obviousness, enablement); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8-20-cv-00847, Dkt. 443, Instruction No. 19 (C.D. Cal. Feb. 8, 2023) (anticipation and obviousness).

## MASIMO'S PROPOSED FINAL INSTRUCTION NO. 19[42]

## PRIOR ART

Apple contends that the following references are prior art to the '776 Patent: (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical.

You must determine whether (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical are prior art that can be considered in determining whether Claims 11-14 of the '776 Patent would have been obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Apple must prove by clear and convincing evidence that (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical are prior art. If you find that Apple has not proven that a specific reference is prior art, you must not consider that reference in your obviousness analysis.

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they were known to or used by others in the United States before July 2, 2001. An invention is "known" as of a certain date when information about it was reasonably accessible to the public on that date.

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they were publicly used, sold, or offered for sale in the United States more than one year before July 2, 2001, which is the effective

---

[42] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 4.3a-2, 4.3c(ii); AIPLA Model Patent Jury Instructions §§ 6.2.1, 6.5; 35 U.S.C. §§ 102(a), (b), (e), (g) (pre-AIA); *Raytheon Techs. Corp. v. GE Co.*, 993 F.3d 1374, 1380-81 (Fed. Cir. 2021); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 297 (Fed. Cir. 1985); *In re Kumar*, 418 F.3d 1361, 1368 (Fed. Cir. 2005); *In re Antor Media Corp.*, 689 F.3d 1282, 1287-1289 (Fed. Cir. 2012); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036-1039 (Fed. Cir. 2001); *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys.*, Inc., 166 F.3d 1190, 1996 (Fed. Cir. 1999); *ABT Systems, LLC v. Emerson Elecric Co.*, No. 11-cv-00374 (E.D. Mo. Feb. 21, 2013), Dkt. 464 Jury Instruction No. 17.

filing date of the '776 Patent. An invention was "publicly used" when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they were made by another person in the United States before the claimed inventions of the '776 Patent were made by inventor Ammar Al-Ali and the other person did not abandon, suppress, or conceal the invention. For someone else to have made the invention before Ammar Al-Ali, the other person must have (1) reduced the alleged prior art to practice before July 2, 2001 or (2) conceived of the alleged prior art before July 2, 2001 and exercised diligence in reducing it to practice starting just before July 2, 2001.

Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the alleged prior inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the alleged prior inventor did not know at the time that the invention would work. Conception of an alleged prior invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the alleged prior inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the alleged prior inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the alleged prior invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at

1    trial. An alleged prior invention is "reduced to practice" when it has been constructed,

2    used, or tested sufficiently to show that it will work for its intended purpose or when the

3    alleged prior inventor files a patent application that fully describes the alleged prior

4    invention.

5         Apple has the burden to show by clear and convincing evidence that the alleged

6    prior invention was not abandoned, suppressed, or concealed. Absent a satisfactory

7    explanation for the delay in reducing a prior invention to practice, the prior invention is

8    deemed abandoned, suppressed, or concealed if within a reasonable time after

9    completion, no steps are taken to make the prior invention publicly known.

10        The parties agree that SPO Medical is an issued United States patent and the

11    application for that patent was filed before July 2, 2001. However, the parties dispute

12    whether SPO Medical is enabled.

13        The disclosure of the claimed invention in the printed publication must be

14    complete enough to enable one of ordinary skill in the art to use the invention without

15    undue experimentation. In determining whether the disclosure is enabling, you should

16    consider what would have been within the knowledge of a person of ordinary skill in the

17    art as of July 2, 2001, and you may consider evidence that sheds light on the knowledge

18    such a person would have had.

19

20

21

22

23

24

25

26

27

28

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 19**

**PRIOR ART**

Apple [Alleged infringer] contends that the following references are is prior art to the '776 Patent: (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical. [ ] patent: [describe art]

You must determine whether (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical are[disputed alleged prior art] is prior art that can be considered in determining whether Claims 11-14claim(s) [ ] of the '776 Patent would have been[ ] patent are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Apple[Alleged infringer] must prove by clear and convincing evidence that (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical are[alleged prior art.  If you find that Apple has not proven that a specific reference] is prior art, you must not consider that reference in your obviousness analysis.

Apple.] [Alleged infringer] contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are[describe alleged prior art because they were known to or used by others in the United States before July 2, 2001.  An invention] is "known" as of a certain date when information about it was reasonably accessible to the public on that date.

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they wereit was publicly used, sold, or offered for sale in the United States more than one year before July 2, 2001,[insert date], which is the effective filing date of the '776 Patent. application for the [ ] patent. An invention was "publicly used" when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology

1　could have made and used the claimed invention, even if it was not yet reduced to

2　practice or publicly disclosed.

3　　　Apple[Alleged infringer] contends that the MIT Ring, the Nellcor NPB-40

4　Product, and the Nonin Onyx 9500 Product are[describe alleged prior art] is prior art

5　because they wereit was made by another person in the United States before the claimed

6　inventions of the '776 Patent wereinvention was made by [named inventor Ammar Al-

7　Ali] and the other person did not abandon, suppress, or conceal the invention. [For

8　someone else to have made the claimed invention before Ammar Al-Ali,the [named

9　inventor], the other person must have either (1) reduced the alleged prior artinvention to

10　practice before July 2, 2001[the named inventor's invention date] or (2) conceived of

11　the alleged prior artclaimed invention before July 2, 2001[named inventor] and exercised

12　diligence in reducing it to practice starting just before July 2, 2001. the named inventor's

13　conception date.]

14　　　The date of invention is either when the invention was reduced to practice or when

15　conceived, provided the inventor(s) were diligent in reducing the invention to practice.

16　Diligence means working continuously, though not necessarily every day. Conception

17　is the mental part of an inventive act, i.e., the formation in the mind of the alleged prior

18　inventor of a definite and permanent idea of the complete and operative invention as it

19　is thereafter to be applied in practice, even if the alleged prior inventor did not know at

20　the time that the invention would work. Conception of an alleged prior invention is

21　complete when the idea is so clearly defined in the inventor's mind that, if the idea were

22　communicated to a person having ordinary skill in the field of the technology, he or she

23　would be able to reduce the invention to practice without undue research or

24　experimentation. This requirement does not mean that the alleged prior inventor has to

25　have a prototype built, or actually explained her or his invention to another person. But,

26　there must be some evidence beyond the alleged prior inventor's own testimony that

27　confirms the date on which the inventor had the complete idea. Conception may be

28　proven when the alleged prior invention is shown in its complete form by drawings,

-137-

disclosure to another person, or other forms of evidence presented at trial. An alleged prior~~A claimed~~ invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the alleged prior inventor files a patent application that fully describes the alleged prior invention.~~.]~~

Apple has the burden to show by clear and convincing evidence that the alleged prior invention was not abandoned, suppressed, or concealed. Absent a satisfactory explanation for the delay in reducing a prior invention to practice, the prior invention is deemed abandoned, suppressed, or concealed if within a reasonable time after completion, no steps are taken to make the prior invention publicly known.

The parties agree that SPO Medical is an issued United States patent and the application for that patent was filed before July 2, 2001. However, the parties dispute whether SPO Medical is enabled.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should consider what would have been within the knowledge of a person of ordinary skill in the art as of July 2, 2001, and you may consider evidence that sheds light on the knowledge such a person would have had. [~~Cutoff Date~~],

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3a-2; AIPLA Model Patent Jury Instructions § 6.5.

1

**Masimo's Position: Proposed Final Instruction No. 19**

2          The parties disagree on whether the Court should instruct the jury on prior art

3   before instructing the jury on obviousness.    Masimo proposes having a separate

4   instruction on prior art before any obviousness instructions.  Such an approach is logical

5   and appropriate because whether a reference is prior art is a threshold issue.  The jury

6   must first determine whether a reference is prior art.  If a reference is not prior art, then

7   the jury should not consider the reference in deciding obviousness.  Blending a detailed

8   instruction on prior art with obviousness instructions could confuse the jury and cause it

9   to misapply the legal standards for prior art.

10          Masimo's approach is also consistent with the model instructions.  Both the FCBA

11  and AIPLA model instructions have separate prior-art instructions before obviousness

12  instructions.  Namely, the FCBA model has a separate instruction on disputed prior art,

13  Model Instruction 4.3.a-2, before any instructions on obviousness.  The AIPLA model

14  has a separate entire section of instructions on prior art, Section 5 with Model

15  Instructions 5.0-5.3, before instructions on obviousness.

16          Masimo's approach is also consistent with prior cases in this District.  *See, e.g.*,

17  *Medtronic*, Dkt. 597, Instruction No. 23; *MGI Digital*, Dkt. 382, Instruction No. 22;

18  *Colibri*, Dkt. 443, Instruction No. 20.

19          Thus, the Court should adopt Masimo's proposal of having a separate instruction

20  on prior art before any obviousness instructions.

21          The parties also disagree on the content of the jury instruction on prior art.

22  Masimo's proposed instruction largely tracks FCBA model 4.3a-2 and AIPLA model

23  6.5.

24          The first two paragraphs (page 1, lines 3-10) of Masimo's proposal track the first

25  two paragraphs of FCBA model 4.3a-2.

26          In the third paragraph (page 1, lines 11-14) of Masimo's proposal, the first

27  sentence tracks the last paragraph of FCBA model 4.3a-2.  Masimo proposes moving

28  the sentence earlier in the instruction to explain the burden of proof before discussing

1    legal standards for various types of prior art, which is logical and may help the jury.

2    Masimo includes the second sentence of the third paragraph to clarify that the jury

3    should not consider a reference if Apple does not prove that the reference is prior art,

4    which is missing from the model.

5        The fourth paragraph (page 1, lines 15-18) addresses prior art under pre-AIA

6    35 U.S.C. § 102(a) and tracks FCBA model 4.3a-2. The fifth paragraph (page 1, line 19

7    to page 2, line 6) addresses prior art under pre-AIA 35 U.S.C. § 102(b) and also tracks

8    FCBA model 4.3a-2.

9        The sixth, seventh, and eighth paragraphs address prior art under pre-AIA

10   35 U.S.C. § 102(g). The sixth paragraph (page 2, lines 7-14) tracks FCBA model 4.3a-2.

11   The seventh paragraph (page 2, line 15 to page 2, line 4) also tracks FCBA model 4.3a-2,

12   except that Masimo edited the model to clarify that the issue here is conception,

13   diligence, and reduction to practice of an alleged prior invention of another, not the

14   claimed invention of the asserted patent. Accordingly, Masimo changed "inventor" to

15   "alleged prior inventor" and "claimed invention" to "alleged prior invention." Masimo

16   added the eighth paragraph (page 3, lines 5-9) to explain the legal standard for

17   abandonment, suppression, or concealment, which is missing from the FCBA model.

18   Masimo's proposed language concisely describes the legal standard for alleged prior

19   invention under pre-AIA 35 U.S.C. § 102(g) and reflects that Apple bears the burden to

20   prove invalidity under Section 102(g) by clear and convincing evidence. *See, e.g.,*

21   *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036-39 (Fed. Cir. 2001).

22       The ninth and tenth paragraphs (page 3, lines 10-18) address the disputed issue of

23   whether one of Apple's references, SPO Medical, is enabled. The FCBA does not have

24   a model instruction on such an issue, but the AIPLA does. Accordingly, Masimo tracks

25   the last paragraph of AIPLA model 6.5.

26       For these reasons, the Court should adopt Masimo's Proposed Final Instruction

27   No. 19. Masimo provides objections to Apple's proposed prior-art instruction below in

28   addressing Apple's Proposed Final Instruction 22B.

1

**Apple's Position: Proposed Final Instruction No. 19**

2      Apple proposes placing the Prior Art instruction later in the final instructions—

3   i.e., after the Court has already introduced the jury to the concept of obviousness.

4   Apple's position on ordering is set forth in Apple's position on Proposed Final

5   Instruction No. 20.  Apple's position on the substance of the Prior Art instruction is set

6   forth at Proposed Final Instruction No. 22 concerning the Scope And Content Of Prior

7   Art.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JOINT PROPOSED FINAL INSTRUCTION NO. 20[43]
## OBVIOUSNESS INTRODUCTION

As relevant to this case, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the field of technology of the patent before the July 2, 2001 filing date of the patent.

Apple may establish a patent claim is invalid by proving by clear and convincing evidence that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the '776 patent was filed in July 2, 2001.

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field of the invention that someone would have had at the time the '776 Patent was filed (July 2, 2001), (2) the scope and content of the prior art, (3) any differences between the prior art and the claimed invention, and, (4) if present, so-called objective evidence or secondary considerations. Do not use hindsight; consider only what was known at the time of the patent's filing date, July 2, 2001.

In determining whether a claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then any claim from which it depends is necessarily obvious as well.

I will now explain the four factors in more detail.

---

[43] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

## REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 20

## OBVIOUSNESS INTRODUCTION

As relevant to this case ~~Even though an invention may not have been identically disclosed or described before it was made by an inventor~~, in order to be patentable, an~~the~~ invention must ~~also~~ not have been obvious to a person of ordinary skill in the field of technology of the patent ~~[at the time the invention was made]~~ [before the July 2, 2001 filing date of the patent. ~~].~~

Apple~~[Alleged infringer]~~ may establish ~~that~~ a patent claim is invalid by proving~~,~~ by clear and convincing evidence~~,~~ that the claimed invention would have been obvious to a person~~persons~~ having ordinary skill in the art at the time the '776 ~~[invention was made]~~ [patent was filed in July 2, 2001.] ~~in the field of [insert the field of the invention].~~

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field ~~[of the invention]~~ that someone would have had at the time the '776 ~~[invention was made]~~ [patent was filed (July 2, 2001), (2) ],~~the~~ scope and content of the prior art, (3) any differences between the prior art and the claimed invention, and, (4) if present, so-called objective evidence or secondary considerations. ~~, which I will describe shortly.~~ Do not use hindsight; consider only what was known at the time of the ~~invention [or the~~ patent's filing date, July 2, 2001.~~].~~

In determining whether a~~the~~ claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then any claim~~the claims~~ from which it depends is~~are~~ necessarily obvious as well.

I will now explain the four factors in more detail.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c.

**Apple's Position: Proposed Final Instruction No. 20**

Proposed Final Instruction No. 20 is listed as a "joint" proposal only because the parties agree on the *language* of the instruction. However, the parties are not making a joint proposal regarding the *placement* of this instruction. Specifically, the parties disagree whether this instruction should precede an instruction on prior art. Apple proposes the following order:

- Obviousness Introduction
- Level of Ordinary Skill In The Art
- Scope And Content Of Prior Art
- Differences Between The Prior Art And The Claimed Invention
- Objective Indicia Of Non-Obviousness

Proceeding in this order would first present the jury with the overall framework to apply to the obviousness issues in this case (Obviousness Introduction), followed by detailed explanations of the underlying factors to be considered in assessing obviousness.

While the Federal Circuit Bar Association's model instructions introduce the prior art instruction before addressing obviousness, that ordering appears to assume that the defendant will present multiple invalidity theories (e.g., anticipation and obviousness). Indeed, Masimo's cited examples (*Medtronic, MGI Digital, and Colibri*) in its proposed instruction on Prior Art all charged the jury on both anticipation and obviousness. *See supra* Apple's Position: Proposed Final Instruction No. 18. In a case like this one, where Apple is proceeding only under an obviousness theory, it makes no sense to instruct the jury on what constitutes prior art without first telling them why that analysis matters. Masimo's assertion that a Prior Art instruction should go first because it "is a threshold issue" could equally be applied to other obviousness factors (e.g., an obviousness defense cannot succeed if there is no motivation to combine). Worse, it is a recipe for confusion: If jurors do not yet know why prior art matters, they are unlikely to understand the complicated requirements set forth in this instruction.

**Masimo's Position: Proposed Final Instruction No. 20**

Proposed Final Instruction No. 20 is a joint proposal.  Masimo does not believe it is necessary or appropriate for the parties to provide their positions on a joint proposal. Masimo's position on the ordering of the prior-art jury instruction is set forth in Masimo's Positions on Final Instruction Nos. 19 and 22A.

# JOINT PROPOSED FINAL INSTRUCTION NO. 21[44]

## LEVEL OF ORDINARY SKILL IN THE ART

To determine the obviousness of the invention, you must consider the level of ordinary skill in the field of the invention as of July 2, 2001.

In this case, the parties agree that the level of ordinary skill in the art is someone with a working knowledge of physiological monitoring technologies. The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies. Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.

---

[44] **Authority:** Dkt. 2521-1 at 3.; Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c(i).

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 21**

**LEVEL OF ORDINARY SKILL IN THE ART**

To determine the obviousness of the invention, you must consider ~~In deciding what~~ the level of ordinary skill in the field of ~~the [~~invention as of July 2, 2001.

In this case, the parties agree that the level of ordinary skill in the art] is someone with a working knowledge of physiological monitoring technologies. The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or~~, you should consider all the evidence introduced~~ at least one to two years of related work experience with capture and processing of data or information~~trial~~, including but not limited to~~: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to~~ physiological monitoring technologies. Alternatively, ~~those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of~~ the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline~~technology~~.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c(i).

-147-

1

2

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 22A[45]**

**SCOPE AND CONTENT OF PRIOR ART**

3

4

5

6

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. As I previously explained, Apple must prove by clear and convincing evidence that (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical are prior art.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[45] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c(ii).

1  **REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 22A**

2  **SCOPE AND CONTENT OF PRIOR ART**

3      In considering whether the claimed invention was obvious, you must first

4  determine the scope and content of the prior art.  As I previously explained, Apple must

5  prove by clear and convincing evidence that (1) the MIT Ring, (2) the Nellcor NPB-40

6  Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical are prior art.

8  **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c(ii).

## Masimo's Position: Proposed Final Instruction No. 22A

Masimo's proposal is concise and tracks the applicable FCBA model 4.3c(ii) (first paragraph), which addresses scope and content of the prior art. For the reasons explained above for Masimo's Proposed Instruction No. 19, the Court should reject Apple's proposal to include pages of details regarding legal standards for prior art in the "Scope and Content of the Prior Art" instruction for obviousness.

Masimo objects to the content of Apple's proposed instruction for several reasons. First, Masimo objects to Apple deviating from the model instruction and omitting any explanation of the burden of proof in the jury instruction on prior art. Apple omits that it must prove by clear and convincing evidence that each reference is prior art. As explained above for Masimo's Proposed Instruction No. 19, FCBA model 4.3a-2 includes such language. Such language is helpful and necessary for the jury to under the correct legal standard.

Second, Masimo objects to Apple's proposal addressing the issue of "abandoned, suppressed, or concealed." Apple deviates from the FCBA model. Apple selectively chooses and edits a part of AIPLA model 6.6, but does not include the rest of that model instruction. FCBA model 4.3a-2 is more concise and appropriate. However, if the Court were to rely on AIPLA model 6.6, then the instruction should include all of AIPLA model 6.6—not merely the portion Apple likes. Apple also adds language about Masimo's supposed burden of production on the issue of "abandoned, suppressed, or concealed." By adding such language and from only a portion of AIPLA model 6.6, Apple's proposed instruction incorrectly suggests that Apple has a lower burden, and Masimo carries a higher burden, than is required on the issue of proving prior art under pre-AIA 35 U.S.C. § 102(g).

For example, on page 2, lines 17-20 of Apple proposed instruction, Apple revised the model as follows:

You may find that a prior invention was abandoned, suppressed, or concealed if you find ~~clear and convincing evidence~~ that **Masimo has**

1   **presented evidence establishing a genuine dispute as to whether** (1) the

2   prior inventor actively concealed the invention from the public or (2) the

3   prior inventor unreasonably delayed in making the invention publicly

4   known.

5   AIPLA Model Patent Jury Instructions §6.6 (emphasis added).  Apple also omitted the

6   following paragraph from the model:

7   **[The Defendant] must show by clear and convincing evidence** that (1)

8   before [the patentee] invented his invention, [third party] reduced to

9   practice a [[product] [method]] that included all of the features of claim

10   ___ of the [abbreviated patent number] patent, or (2) [third party] was first

11   to conceive the invention and exercised reasonable diligence in later

12   reducing the invention to practice. **In addition, [the Defendant] must**

13   **show** that [third party]'s [[product] [method]] was sufficiently developed

14   that one skilled in the art would have recognized that it would work for its

15   intended purpose.

16   *Id.* (emphasis added).  Taken together, Apple's edits to, and omissions from, the model

17   instruction improperly shift the burden of proof from Apple to Masimo.

18       Third, Apple edited the last paragraph of its proposed instruction to deviate

19   significantly from the model instruction with respect to prior art enablement.   As

20   explained above for Masimo's Proposed Instruction No. 19, Masimo tracks AIPLA

21   model 6.5 on the issue of whether a reference has an enabling disclosure.  Apple departs

22   from the model by twice suggesting that the prior art need not be enabled for

23   obviousness, which is contrary to case law.  *See, e.g.*, *Raytheon Techs. Corp. v. GE Co.*,

24   993 F.3d 1374, 1380-81 (Fed. Cir. 2021).  Unlike Apple's proposal, Masimo's proposal

25   properly accounts for the law of prior art enablement in the context of obviousness,

26   which requires that ultimately, "the prior art, taken as a whole, must enable a skilled

27   artisan to make and use the claimed invention." *Id*.  Apple's departure from the model

28   also ignores that while "a non-enabling reference can play a role in an obviousness"

1  (e.g., to supply a claim element enabled by another prior art reference), ultimately "the

2  evidence of record must establish that a skilled artisan could have made the claimed

3  invention." *See, e.g.*, *id.* at 1381.  The Court should thus reject Apple's proposal.

4      For these reasons, the Court should reject Apple's Proposed Final Instruction 22B

5  and adopt Masimo's Proposed Final Instructions 19 and 22A.

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 22B[46]

### SCOPE AND CONTENT OF PRIOR ART

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. Apple contends that the following references are prior art to the '776 Patent: (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical.

You must determine whether those references are prior art that can be considered in determining whether Claims 11-14 of the '776 Patent would have been obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Publicly Known Or Used

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they were known to or used by others in the United States before July 2, 2001. An invention is "known" as of a certain date when information about it was reasonably accessible to the public on that date.

Publicly Used Or Sold/Offered For Sale

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they were publicly used (or in the case of the Nellcor and Nonin references) sold, or offered for sale in the United States more than one year before July 2, 2001, which is the effective filing date of the '776 Patent. An invention was "publicly used" when it was either accessible to the public or

---

[46] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 4.3a-2, 4.3c(ii); AIPLA Model Patent Jury Instructions §6.6; 35 U.S.C. §§ 102(a), (b), (e), (g) (pre-AIA); *Raytheon Techs. Corp. v. GE Co.*, 993 F.3d 1374, 1380-1381 (Fed. Cir. 2021); *In re Antor Media Corp.*, 689 F.3d 1282, 1287-1289 (Fed. Cir. 2012); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036-1039 (Fed. Cir. 2001); *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys.*, Inc., 166 F.3d 1190, 1996 (Fed. Cir. 1999); *ABT Systems, LLC v. Emerson Elecric Co.*, No. 11-cv-00374 (E.D. Mo. Feb. 21, 2013), Dkt. 464 Jury Instruction No. 17.

commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., (1) it was reduced to practice or (2) it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.  A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose.

Made By A Prior Inventor

Apple contends that the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art because they were made by another person in the United States before the claimed inventions of the '776 Patent were made by inventor Ammar Al-Ali, and the other person did not abandon, suppress, or conceal the invention.  For someone else to have made the invention before Ammar Al-Ali, the other person must have (1) reduced the alleged prior art to practice before July 2, 2001 or (2) conceived of the alleged prior art before July 2, 2001 and exercised diligence in reducing it to practice starting just before July 2, 2001.

You may find that a prior invention was abandoned, suppressed, or concealed if you find that Masimo has presented evidence establishing a genuine dispute as to whether (1) the prior inventor actively concealed the invention from the public or (2) the prior inventor unreasonably delayed in making the invention publicly known.

Diligence means working continuously, though not necessarily every day.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does

not mean that the alleged prior inventor has to have a prototype built, or actually explained her or his invention to another person. But there must be some evidence beyond the alleged prior inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the alleged prior invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

If Masimo has presented evidence of abandonment, concealment, or suppression, Apple then has the burden to show by clear and convincing evidence that the alleged prior invention was not abandoned, suppressed, or concealed.

Generally, a prior invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose. A period of delay does not constitute abandonment, suppression, or concealment, provided the prior inventor was engaged in reasonable efforts to bring the prior invention to market during this period.

Patent Prior Art

The parties agree that SPO Medical is an issued United States patent and the application for that patent was filed before July 2, 2001. However, the parties dispute whether SPO Medical is enabled.

A prior art patent like SPO Medical is presumed to be enabled, meaning the disclosure is complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. If Masimo claims that a disclosure in a prior art patent is not enabled, Masimo must provide persuasive evidence that this is the case. Even if the patent is not enabling and even if it discloses an inoperative device, the patent can still can be used for all that it actually teaches in determining whether the Asserted Claims would have been obvious. In determining whether the disclosure is enabling, you should consider what would have been within the knowledge of a person of ordinary skill in the art as of July 2, 2001, and you may consider evidence that sheds light on the knowledge such a person would have had. Although a particular reference need not be

enabling to be considered in the obviousness inquiry, as I will instruct you shortly, the asserted combination must provide a reasonable expectation of successfully practicing the claimed invention.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 22B**

**SCOPE AND CONTENT OF PRIOR ART**

[Alleged infringer] contends that the following is prior art to the [ ] patent: [describe art]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. Apple contends that the following references are prior art to the '776 Patent:  (1) the MIT Ring, (2) the Nellcor NPB-40 Product, (3) the Nonin Onyx 9500 Product, and (4) SPO Medical.

You must determine whether [disputed alleged prior art] isthose references  are prior art that can be considered in determining whether claim(s) [ ] of the [ ] patent are anticipated orClaims 11-14 of the '776 Patent would have been obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Publicly Known Or Used

Apple the MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are they were  July 2, 2001.  as of a certain date

Publicly Used Or Sold/Offered For Sale

[Choose those that apply based on alleged infringer's contentions] [Where appropriate, add limitation that subject matter developed by another which qualifies as prior art only under one or more of subsections (e), (f), and (g) of 35 U.S.C. § 102 where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by the same person, or subject to an obligation of assignment to the same person.]

[Alleged infringer]  [describe alleged prior art] is it was  or patented or described in a printed publication anywhere in the world  [insert date of invention]  [A description is a "printed publication" only if it was publicly accessible.]

[Alleged infringer] contends that [describe alleged prior art] is prior art because it was already patented or described in a printed publication, anywhere in the world by

[patent holder] or anyone else, more than a year before [insert date], which is the effective filing date of the application for the [ ] patent.

[Alleged infringer]Apple contends that [describe allegedthe MIT Ring, the Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art] is prior art because it wasthey were publicly used, (or in the case of the Nellcor and Nonin references) sold, or offered for sale in the United States more than one year before [insert date]July 2, 2001, which is the effective filing date of the application for the [ ] patent'776 Patent.  An invention was "publicly used" when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., (1) it was reduced to practice or (2) it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed. .

[Alleged infringer] contends that [describe alleged prior art] is prior art because the [named inventor] derived it from another who conceived of it and communicated it to [named inventor]. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

1    Made By A Prior Inventor

2    [Alleged infringer]Apple contends that [describe allegedthe MIT Ring, the

3    Nellcor NPB-40 Product, and the Nonin Onyx 9500 Product are prior art] is prior art

4    because it wasthey were made by another person in the United States before the

5    invention was made by [namedclaimed inventions of the '776 Patent were made by

6    inventor] Ammar Al-Ali, and the other person did not abandon, suppress, or conceal the

7    invention. [ For someone else to have made the claimed invention before the [named

8    inventor]Ammar Al-Ali, the other person must have either (1) reduced the

9    inventionalleged prior art to practice before [the named inventor's invention date]July

10   2, 2001 or (2) conceived of the claimed invention before [named inventor]alleged prior

11   art before July 2, 2001 and exercised diligence in reducing it to practice starting just

12   before the named inventor's conception date.]July 2, 2001.

13   [If invention date is disputed: In this case, you must determine the date of

14   invention [or conception] [and/or] [reduction to practice] for the [claimed invention or

15   alleged prior art].

16   You may find that a prior invention was abandoned, suppressed, or concealed if

17   you find that Masimo has presented evidence establishing a genuine dispute as to

18   whether (1) the prior inventor actively concealed the invention from the public or (2) the

19   prior inventor unreasonably delayed in making the invention publicly known.

20   The date of invention is either when the invention was reduced to practice or when

21   conceived, provided the inventor(s) were diligent in reducing the invention to practice.

22   Diligence means working continuously, though not necessarily every day. Conception

23   is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a

24   definite and permanent idea of the complete and operative invention as it is thereafter to

25   be applied in practice, even if the inventor did not know at the time that the invention

26   would work. Conception of an invention is complete when the idea is so clearly defined

27   in the inventor's mind that, if the idea were communicated to a person having ordinary

28   skill in the field of the technology, he or she would be able to reduce the invention to

practice without undue research or experimentation. This requirement does not mean that the alleged prior inventor has to have a prototype built, or actually explained her or his invention to another person. But there must be some evidence beyond the alleged prior inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the alleged prior invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. or when the inventor files a patent application that fully describes the invention.]

[Alleged infringer] must prove by clear and convincing evidence that [alleged prior art] is prior art.]

[Option 1: parties stipulate to prior art.]

In considering whether the claimed invention was obvious at the time it was made, you should consider the scope and content of the following prior art: [Insert art as stipulated].

[Option 2: parties dispute the prior art.]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where [alleged infringer] is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

1    [The Defendant] contends that claim ____ of the [abbreviated patent number]

2    patent is invalid because the invention defined in that claim was invented by another

3    person in the United States, [third party], before [§ 102(a) (pre-AIA) Cutoff Date].

4    That patent claim is invalid if the invention defined in that claim was invented by

5    [third party] before [the patentee] invented his invention, [and that other person did not

6    abandon, suppress, or conceal the invention].

7    [The Defendant] must show by clear and convincing evidence that (1) before [the

8    patentee] invented his invention, [third party] reduced to practice a [[product] [method]]

9    that included all of the features of claim ____ of the [abbreviated patent number] patent,

10   or (2) [third party] was first to conceive the invention and exercised reasonable diligence

11   in later reducing the invention to practice. In addition, [the Defendant] must show that

12   [third party]'s [[product] [method]] was sufficiently developed that one skilled in the art

13   would have recognized that it would work for its intended purpose.

14   If the prior invention was abandoned, suppressed, or concealed, it does not

15   anticipate the [abbreviated patent number] patent.

16   If Masimo has presented evidence of abandonment, concealment, or suppression,

17   Apple then has the burden to show by clear and convincing evidence that the alleged

18   prior invention was not abandoned, suppressed, or concealed.

19   You may find that a prior invention was abandoned, suppressed, or concealed if

20   you find clear and convincing evidence that (1) the prior inventor actively concealed the

21   invention from the public, or (2) the prior inventor unreasonably delayed in making the

22   invention publicly known. Generally, a prior invention was not abandoned, suppressed,

23   or concealed if the invention was made public, sold, or offered for sale, or otherwise

24   used for a commercial purpose. A period of delay does not constitute abandonment,

25   suppression, or concealment, provided the prior inventor was engaged in reasonable

26   efforts to bring the prior invention to market during this period.

27   Patent Prior Art

28   The parties agree that SPO Medical is an issued United States patent and the

1    application for that patent was filed before July 2, 2001. However, the parties dispute

2    whether SPO Medical is enabled.

3    A prior art patent like SPO Medical is presumed to be enabled, meaning the

4    disclosure is complete enough to enable one of  to use the invention without undue

5    experimentation. If Masimo claims that a disclosure in a prior art patent is not enabled,

6    Masimo must provide persuasive evidence that this is the case. Even if the patent is not

7    enabling and even if it discloses an inoperative device, the patent can still can be used

8    for all that it actually teaches in determining whether the Asserted Claims would have

9    been obvious. In determining whether the disclosure is enabling, you should consider

10   what would have been within the knowledge of a person of  as of July 2, 2001, and you

11   may consider evidence that sheds light on the knowledge such a person would have

12   had. Although a particular reference need not be enabling to be considered in the

13   obviousness inquiry, as I will instruct you shortly, the asserted combination must

14   provide a reasonable expectation of successfully practicing the claimed invention.

15   **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 4.3a-2, 4.3c(ii); AIPLA

16   Model Patent Jury Instructions § 6.6

17

18

19

20

21

22

23

24

25

26

27

28

## Apple's Position: Proposed Final Instruction No. 22B

Apple's proposed instruction regarding prior art closely follows the Federal Circuit Bar Association model (and, for one doctrine where the FCBA model is too cursory, the AIPLA model). Masimo's proposed Prior Art instruction (i.e., Proposed Final Instruction 19) is repetitive, confusing, and—in some places—simply wrong on the law.

For instance, Masimo's proposal lists Apple's four prior art references three separate times in the first three paragraphs; Apple proposes to delete the second and third iterations. Masimo's explanation—that it combined portions of model instructions—does not justify such repetition. *See supra* Masimo's Position: Proposed Final Instruction No. 19. Masimo's proposal to split the prior art instruction across Proposed Instruction No. 19 (which includes the substance) and Proposed Instruction 22A (which essentially merely cross-references Proposed Instruction No. 19) will create even further redundancy if adopted.

Apple similarly proposes deleting Masimo's repetition of the clear and convincing evidence standard, which the parties agree should appear in the Obviousness Introduction instruction. Masimo provides no reason to repeat the burden of proof here if the Prior Art instruction is placed after the Obviousness – Introduction instruction (as it should be).

Apple also proposes an introductory sentence to clarify for the jury that the prior art analysis is a prerequisite for the obviousness analysis (a point that Masimo also makes in Proposed Instruction No. 22A). That the jury needs to be instructed on how these prior art issues fit into the broader obviousness analysis reinforces why the concept of obviousness should be introduced before this prior art instruction. *See supra* Apple's Position: Proposed Instruction No. 20.[47]

---

[47] This Court's practice of omitting the titles of jury instructions renders moot Masimo's objection concerning the heading under which to set forth the relevant standards for cognizable prior art references. *See generally* Dkt. 1715.

Apple's position on the individual subsections of its proposed instruction are detailed below:

**Section 102(a) (Pre-AIA)** – The parties agree on this aspect of the instruction

**Section 102(b) (Pre-AIA)** – The parties' disputes here are narrow. Apple proposes a parenthetical clarifying that it contends only the Nellcor and Nonin references, but not the MIT Ring, were publicly sold at the relevant time—which is an accurate statement of Apple's allegations. Apple also proposes moving up the definition of "reduced to practice" from Masimo's proposed position farther down the instruction, because this legal term should be explained on first reference. While Apple's language differs from Masimo's, Masimo has not attempted to specifically defend its language in the version of the briefing Apple received.

**Section 102(g) (Pre-AIA)** – The parties' disputes regarding Section 102(g) (i.e., Apple's theory that its references were made by a prior inventor before July 2001) are more wide-ranging.

**First**, Apple proposes defining what it means for an invention to be "abandoned, suppressed, or concealed," using the definition provided in AIPLA model instruction § 6.6, modified to take into account that Apple is not raising an anticipation theory and to account for the Federal Circuit's burden-shifting rules.

Specifically, Apple has proposed adding the entire last paragraph of AIPLA § 6.6, although it has split the paragraph's text to add the statement about what does not establish abandonment, suppression, or concealment at the end of the subsection.

Apple's proposed instruction also articulates the burden-shifting framework established by Federal Circuit precedent, under which the patentee has "the burden of production … to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor has suppressed or concealed the invention," although "the ultimate burden of persuasion remains with the party challenging the validity of the patent." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037-1038 (Fed. Cir. 2001). Masimo cites *Apotex* when describing the burden of persuasion on Apple, *see supra*

1  Masimo's Position: Proposed Instruction No. 19, but ignores *Apotex*'s statements
2  regarding Masimo's burden of production.  Masimo's assertion that Apple's (accurate)
3  recitation of the *Apotex* burden-shifting rule implies Apple has a lower burden than
4  Masimo is unsupported.  Apple's proposed language is clear that Masimo must come
5  forward with evidence that establishes a dispute on this issue, and Apple then has the
6  burden to establish by clear and convincing evidence that there was no abandonment,
7  suppression, or concealment.

8      In the briefing Apple received, Masimo argues for the first time that Apple should
9  have ***also*** included the third paragraph from AIPLA § 6.6.  Masimo does not include this
10  language in its own proposal and for good reason.  The first sentence of that paragraph
11  (regarding reduction to practice and conception/diligence) is duplicative of the FCBA
12  model, which the parties agree should be given, and does not provide sufficient
13  granularity on the parties' respective burdens.  The second sentence (which addresses
14  whether the prior art reference at issue "was sufficiently developed that one skilled in
15  the art would have recognized it would work for its intended purpose") appears to apply
16  to an ***anticipation*** analysis, not an obviousness analysis—where all art should be
17  considered for whatever it teaches.  *See Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d
18  1569, 1578 (Fed. Cir. 1991) ("[A] non-enabling reference may qualify as prior art for
19  the purpose of determining obviousness.").

20      ***Second***, Apple proposes deleting Masimo's vague sentence suggesting that Apple
21  has the burden to provide "a satisfactory explanation for the delay in reducing a prior
22  invention to practice."  In the briefing that Apple received, Masimo does not even
23  attempt to justify this language despite Apple previously asking Masimo for authority to
24  support it.

25      ***Third*** (and as noted above), Apple moved up the definition of "reduced to
26  practice," so it will be defined on first reference.  Again, although the parties have
27  previously discussed this issue, Masimo provides no justification for its proposal, which
28  would involve placing the definition of a term far below its first usage.

1   **SPO Medical** – The parties dispute how to articulate the relevant test for

2   enablement of prior art in connection with the SPO Medical patent. Masimo's proposal

3   is wrong on the law in two ways.

4   **First**, Masimo's proposal fails to mention that a prior art patent is presumed to be

5   enabled. *See In re Antor Media Corp.*, 689 F.3d 1282, 1288 (Fed. Cir. 2012). Apple's

6   proposal adds this point.

7   **Second**, Masimo's proposal incorrectly suggests that—when a party is alleging

8   obviousness based on a combination of references—each reference must individually

9   meet the enablement requirement. The language that appears in Masimo's proposed

10  instructions appears to be drawn from case law regarding a different doctrine (e.g.,

11  anticipation), which makes sense as the AIPLA instructions (including AIPLA § 6.6)

12  discuss prior art under the broader header of anticipation.

13  In the context of obviousness, the Federal Circuit has made clear that a non-

14  enabling patent may be considered for all it discloses when it is used as part of an

15  obviousness combination. *See Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578

16  (Fed. Cir. 1991) ("[A] non-enabling reference may qualify as prior art for the purpose

17  of determining obviousness."). Even the authority Masimo quotes in the briefing

18  provided to Apple (*Raytheon*) provides that "the prior art, **taken as a whole**" must be

19  enabling. *See Raytheon Techs. Corp. v. GE Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021)

20  (emphasis added). *Raytheon* thus proves Apple's point that **individual references** do

21  not need to be enabling. Indeed, the very next sentence in *Raytheon* after the one that

22  Masimo quotes states that "[i]n general, a prior art reference asserted under § 103 does

23  not necessarily have to enable its own disclosure, i.e., be 'self-enabling,' to be relevant

24  to the obviousness inquiry." *Id. Raytheon* goes on to quote precisely the same line from

25  *Symbol* that Apple relies upon. *Id.* ("While a reference must enable someone to practice

26  the invention in order to anticipate under § 102(b), a non-enabling reference may qualify

27  as prior art for the purpose of determining obviousness under § 103.").

28  Masimo's citation to AIPLA Model § 6.5 is inapt. That instruction is presented

-166-

under the heading of anticipation rather than obviousness and thus understandably omits the legal framework applicable to *combinations* of prior art references pursuant to Section 103.

# JOINT PROPOSED FINAL INSTRUCTION NO. 23[48]

## DIFFERENCES BETWEEN THE PRIOR ART AND THE CLAIMED INVENTION

In considering whether Apple has shown that a claimed invention was obvious, you must also analyze whether there are any differences between the prior art and the claimed invention, from the view of a person of ordinary skill in the art as of July 2, 2001.

Keep in mind that the mere existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the patent's filing date, there was a reason that would have motivated a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does.

In considering motivation to combine, you can take account of such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must also find that the prior art provided a reasonable expectation of success.

---

[48] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 23**

**DIFFERENCES BETWEEN THE PRIOR ART**

**AND THE CLAIMED INVENTION**

In considering~~determining~~ whether Apple has shown that a claimed invention was~~is~~ obvious, you must also analyze whether there are~~consider the level of ordinary skill in the field [of the invention] that someone would have had at the time the [invention was made] [patent was filed], the scope and content of the prior art~~, any differences between the prior art and the claimed invention, from the view of a person of ordinary skill in the art as of July 2, 2001.~~and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention [or the patent's filing date].~~

Keep in mind that the mere existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of ~~[the claimed invention]~~ [the patent's filing date~~],~~], there was a reason that would have motivated~~prompted~~ a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does.

In considering motivation to combine, you can take~~, taking into~~ account of such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must also find that the prior art provided a reasonable

1    expСexpectation of success. ~~Obvious to try is not sufficient in unpredictable technologies.~~

2

3    **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c.

## MASIMO'S PROPOSED FINAL INSTRUCTION NO. 24A[49]

## OBJECTIVE INDICIA OF NON-OBVIOUSNESS

In determining whether a claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention would have been obvious, such as:

- Whether the claimed invention satisfied a long-felt need;
- Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);
- Whether others had tried and failed to make the claimed invention;
- Whether others in the field were skeptical regarding the claimed invention; and
- Whether others in the field praised the claimed invention.

---

[49] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c.

# REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 24A
## OBJECTIVE INDICIA OF NON-OBVIOUSNESS

In determining whether a claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether

or not the claimed invention would have been~~is~~ obvious, such as:

- Whether the claimed invention satisfied a long-felt need;
- ~~a.~~ Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

~~b. Whether the claimed invention satisfied a long-felt need;~~

- ~~c.~~ Whether others had tried and failed to make the claimed invention;
- ~~d.~~ Whether others in the field~~invented the claimed invention at roughly the same time;~~
- ~~e. Whether others copied the claimed invention;~~
- ~~f. Whether there~~ were skeptical regarding the claimed invention; and~~changes or related technologies or market needs contemporaneous with~~

~~the claimed invention;~~

~~g. Whether the claimed invention achieved unexpected results;~~

- ~~h.~~ Whether others in the field praised the claimed invention. ~~;~~

~~i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;~~

~~j. Whether others sought or obtained rights to the patent from the patent holder; and~~

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c.

1    **Masimo's Position: Proposed Final Instruction No. 24A**

2          Masimo's proposal tracks relevant parts of the FCBA model on objective indicia

3    of non-obviousness.

4          Masimo objects to Apple's addition of an entire paragraph following the standard

5    model instruction.  Apple's proposed additional instruction, set forth below, will bias

6    the jury:

7          "These factors are relevant only if Masimo presents evidence establishing a

8          connection, or nexus, between the evidence and the invention covered by the

9          patent claim.  Even if you conclude that some of the above factors have been

10         established, those factors should be considered along with all the other

11         evidence in the case in determining whether Apple has proven that the claimed

12         invention would have been obvious."

13   The first sentence deviates from the model and overemphasizes Masimo's burden to

14   establish a nexus between the factors and the claimed technology.  Nexus is already

15   expressly addressed in the model, and the parties' proposed instructions, by including

16   "the claimed invention" in each factor. The second sentence also deviates from the

17   model and discourages jurors from relying on objective indicia of non-obviousness.

18         Apple singled out this paragraph from an instruction in *MR Techs, GMBH v.*

19   *Western Digital Techs., Inc.*, No. 8:22-cv-1599 (JVS), Dkt. 578, Jury Instruction No. 20

20   (C.D. Cal. Jul. 26, 2024).  But Apple omitted the remainder of the *MR Techs.* Instruction,

21   which balances out the prejudicial nature of Apple's proposal:

22         "The presence of any of these factors may be considered by you as an

23         indication that the claimed invention was not obvious.

24         In deciding obviousness, you must avoid using hindsight; that is, you

25         should not consider what is known today or what is learned from the

26         teachings of the patent.  You should not use the patent as a road map for

27         selecting and combining items of prior art.

28

1

2

3

4

5

6

      A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether [Defendant] has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention."

7

8

9

10

11

12

      The Court should adopt Masimo's proposed instruction because it tracks the model and concisely provides the jury with the appropriate information regarding objective indicia of non-obviousness.  If, however, the court is inclined to include Apple's addition from *MR Techs.* that deviates from the model instruction, Masimo requests that the Court include the remainder of the *MR Techs.* instruction to maintain balance and provide a more neutral instruction than Apple's proposal.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

### APPLE'S PROPOSED FINAL INSTRUCTION NO. 24B[50]

### OBJECTIVE INDICIA OF NON-OBVIOUSNESS

3
4
5
6
7

In determining whether a claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole. These factors include:

8
9
10
11
12
13
14

- Whether the claimed invention satisfied a long-felt need;
- Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);
- Whether others had tried and failed to make the claimed invention;
- Whether others in the field were skeptical regarding the claimed invention; and
- Whether others in the field praised the claimed invention.

15
16
17
18
19

These factors are relevant only if Masimo presents evidence establishing a connection, or nexus, between the evidence and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Apple has proven that the claimed invention would have been obvious.

20
21
22
23
24
25
26
27
28

---

[50] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c; *MR Techs, GMBH v. Western Digital Techs., Inc.*, No. 8:22-cv-1599 (JVS) (C.D. Cal. Jul. 26, 2024) Dkt. 578 Jury Instruction No. 20; *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373-1374 (Fed. Cir. 2018); *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373-1374 (Fed. Cir. 2019); *Volvo Penta of the Americas. LLC v. Brunswick Corp.*, 81 F.4th 1202, 1210 (Fed. Cir. 2023).

# REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 24B

## OBJECTIVE INDICIA OF NON-OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent [at the time the invention was made] [before the filing date of the patent].

[Alleged infringer] may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the [invention was made] [patent was filed] in the field of [insert the field of the invention].

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field [of the invention] that someone would have had at the time the [invention was made] [patent was filed], the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention [or the patent's filing date].

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of [the claimed invention] [the patent's filing date], there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4)

1  ~~whether the prior art teaches away from combining elements in the claimed invention;~~
2  ~~(5) whether it would have been obvious to try the combinations of elements, such as~~
3  ~~when there is a design incentive or market pressure to solve a problem and there are a~~
4  ~~finite number of identified, predictable solutions. To find it rendered the claimed~~
5  ~~invention obvious, you must find that the prior art provided a reasonable expectation of~~
6  ~~success. Obvious to try is not sufficient in unpredictable technologies.~~

7  In determining whether ~~the~~a claimed invention is obvious, you should take into
8  account any objective evidence (sometimes called "secondary considerations") that may
9  shed light on whether or not the claimed invention ~~is obvious, such as~~would have been
10 obvious. No factor alone is dispositive, and you must consider the obviousness or non-
11 obviousness of the invention as a whole. These factors include:

12  • Whether the claimed invention satisfied a long-felt need;
13  • ~~a.~~ Whether the claimed invention was commercially successful as a result of
14     the merits of the claimed invention (rather than the result of design needs or
15     market-pressure advertising or similar activities);
16  ~~b. Whether the claimed invention satisfied a long-felt need;~~
17  • ~~c.~~ Whether others had tried and failed to make the claimed invention;
18  ~~d. Whether others invented the claimed invention at roughly the same time;~~
19  • ~~e.~~ Whether others ~~copied~~in the field were skeptical regarding the claimed
20     invention; and
21  ~~f.  Whether there were changes or related technologies or market needs~~
22     ~~contemporaneous with the claimed invention;~~
23  ~~g. Whether the claimed invention achieved unexpected results;~~
24  • ~~h.~~ Whether others in the field praised the claimed invention~~;~~.
25  These factors are relevant only if Masimo presents evidence establishing a
26 connection, or nexus, between the evidence and the invention covered by the patent
27 claim. Even if you conclude that some of the above factors have been established, those
28

factors should be considered along with all the other evidence in the case in determining whether Apple has proven that the claimed invention would have been obvious.

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 4.3c.

1

## Apple's Position: Proposed Final Instruction No. 24B

2      The parties largely agree on the instruction regarding secondary indicia of non-
3 obviousness.  However, Apple adds three points taken directly from this Court's prior
4 jury instructions that explain to the jury how to assess the listed factors—i.e., that no one
5 factor is dispositive, that Masimo bears the burden to establish a nexus between any
6 evidence of non-obviousness and the claimed invention, and that the secondary
7 considerations must be considered in context with the rest of the evidence.  *See MR*
8 *Techs, GMBH v. Western Digital Techs., Inc.*, No. 8:22-cv-1599 (JVS), Dkt. 578 Jury
9 Instruction No. 20 (C.D. Cal. Jul. 26, 2024); *see also, e.g.*, *Medtronic, Inc. v. Axonics,*
10 *Inc.*, No. 8:19-cv-2115 Dkt. 597 at 42 (C.D. Cal. Sept. 18, 2024); *Pavemetrics Sys., Inc.*
11 *v. Tetra Tech, Inc.*, No. 2:21-cv-1289 Dkt. 307 at 43-44 (C.D. Cal. Aug. 24, 2022);
12 *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, No. 11-cv-9185 Dkt. 228 at 39 (C.D. Cal.
13 Nov. 29, 2012).  While these points do not appear in the Federal Circuit Bar Association
14 model, Masimo does not dispute that they are legally correct and fails to address Apple's
15 cited case law in the version of the brief that Apple received.

16      Masimo's objections to Apple's proposed language are unavailing.  For example,
17 that Masimo's proposed instruction references "the claimed invention" in each factor
18 does not adequately convey the nexus requirement—at least because it omits Masimo's
19 burden of production on that issue.  And while Masimo complains that Apple omitted
20 language from the *MR Techs.* instruction, Masimo ignores that the purportedly omitted
21 concepts (regarding hindsight and motivation to combine) appear elsewhere in the
22 jointly proposed instructions.  *See* Joint Proposed Final Instruction No. 20 (hindsight);
23 Joint Proposed Instruction No. 23 (motivation to combine).  In any event, had Masimo
24 believed the additional language from *MR Techs* should be added to this instruction, it
25 should have made that proposal (but did not).

26

27

28

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 25A[51]**

**DAMAGES INTRODUCTION**

If you find that Apple infringed a valid Asserted Claim, you must then consider what amount of damages to award to Masimo.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that Apple has not infringed any valid Asserted Claim, then Masimo is not entitled to any damages.

The damages you award must be adequate to compensate Masimo for the infringement.  They are not meant to punish Apple.

Masimo has the burden to establish the amount of damages by a preponderance of the evidence.  While Masimo is not required to prove the amount of damages with mathematical precision, it must prove damages with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Masimo seeks a reasonable royalty.  A reasonable royalty is the amount of money that Masimo and Apple would have agreed upon as a fee for use of the invention just prior to when infringement began.

---

[51] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.1; 35 U.S.C. § 284.

## REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 25A
## DAMAGES INTRODUCTION

If you find that [alleged infringer]Apple infringed anya valid Asserted Celaim of the [ ] patent, you must then consider what amount of damages to award to [patent holder]Masimo.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that [alleged infringer]Apple has not infringed any valid Asserted Celaim of the patent, then [patent holder]Masimo is not entitled to any damages.

The damages you award must be adequate to compensate [patent holder]Masimo for the infringement.  They are not meant to punish an infringerApple.  Your damages award, if you reach this issue, should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred.

[Patent holder]Masimo has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that [patent holder] establishes that it more likely than not has suffered.  While [patent holder]Masimo is not required to prove the amount of its damages with mathematical precision, it must prove themdamages with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that [patent holder] may be entitled to recover.  In this case, [patent holder]Masimo seeks [insert as appropriate, e.g., lost profits, price erosion, lost convoyed sales, or a reasonable royalty].  Lost profits consist of any actual reduction in business profits [patent holder] suffered as a result of [alleged infringer]'s infringement.  A reasonable royalty is defined as the amount of money amountthat [patent holder]Masimo and [alleged infringer]Apple would have agreed upon as a fee for use of the invention at the time just prior to when infringement began.  But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

1

2       ~~I will give more detailed instructions regarding damages shortly. Note, however,~~

3       ~~that [patent holder] is entitled to recover no less than a reasonable royalty for each~~

4       ~~infringing [sale; fill in other 56 infringing act].~~

5

6       **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.1.

**Masimo's Position: Proposed Final Instruction No. 25A**

Masimo's proposed instruction largely tracks the FCBA model (§ 5.1) but omits material that is irrelevant because Masimo seeks only a reasonable royalty and does not seek lost profits.  Apple's proposed instruction does not align with the facts of this case.  Apple seeks to include language from the model instruction that is appropriate when both lost profits and a reasonable royalty are at issue.  Because Masimo seeks only a reasonable royalty, the Court should not instruct the jury on other forms of damages not at issue.

First, Apple argues Masimo "apparently" does not believe a reasonable royalty is compensatory damages.  Not so.  Masimo's instruction maintains the language from the FCBA model instructing the jury that the "award must be adequate to compensate Masimo for the infringement."  Masimo also maintains the key language from the FCBA model instructing the jury exactly what the reasonable royalty is meant to compensate Masimo for: the amount of money that Masimo and Apple "would have agreed upon as a fee for use of the invention just prior to when infringement began."

Apple seeks to include two additional clauses that do not relate to a reasonable royalty.  Apple seeks to instruct the jury that the damages award "should put Masimo in approximately the same financial position that it would have been in had the infringement not occurred."  Apple also seeks an instruction that Masimo is entitled to "only those damages that Masimo establishes that it more likely than not experienced."  Such additional language would be appropriate only if Masimo sought damages for harm suffered, such as lost profits.  Though Apple modified the model instruction to replace the word "suffered" with the word "experienced," Apple's edit does not cure the confusion.  Because Masimo seeks only a reasonable royalty, Masimo need not show it suffered or experienced any harm or that damages should reflect Masimo's suffering or changed financial position caused by Apple's infringement.

Apple argues its "prefatory" language is needed to clarify that Masimo is entitled to compensatory damages only (as opposed to, for example, punitive damages).  But the

1    parties agree to instruct the jury that damages "are not meant to punish Apple."

2        Apple contends *MR Techs, GMBH v. Western Digital Techs., Inc.*, No. 8:22-cv-

3    1599 (JVS) (C.D. Cal. Jul. 26, 2024) (Dkt. 578, Jury Instruction No. 21) and *SPEX*

4    *Techs., Inc. v. W. Digital Techs., Inc.*, No. 8:16-cv-1799 (JVS) (C.D. Cal. Oct. 18, 2024)

5    (Dkt. 592 at 26), support its request to include additional language introducing patent

6    damages. But neither case supports Apple's unnecessary language. In *MR Techs.*, the

7    Court did not instruct the jury that the damages award "should put [plaintiff] in

8    approximately the same financial position that it would have been in had the

9    infringement not occurred" or that the jury should award "only those damages that

10   [plaintiff] establishes that it more likely than not experienced." *See MR Techs,* Dkt. 578

11   at 29, Jury Instruction No. 21. And though the Court instructed the *SPEX* jury with some

12   of the additional language Apple seeks to add here, SPEX never challenged the

13   language. SPEX itself proposed the language. *See SPEX*, Dkt. 490 at 66-67, Jury

14   Instruction No. 16A. The Court should not provide confusing instructions on damages

15   theories Masimo is not pursuing, merely because SPEX failed to tailor its jury instruction

16   to facts of that case.

17

18

19

20

21

22

23

24

25

26

27

28

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 25B[52]

## DAMAGES INTRODUCTION

If you find that Apple infringed a valid Asserted Claim, you must then consider what amount of damages to award to Masimo. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Apple has not infringed any valid Asserted Claim, then Masimo is not entitled to any damages.

The damages you award must be adequate to compensate Masimo for any proven infringement. Your damages award, if you reach this issue, should put Masimo in approximately the same financial position that it would have been in had the infringement not occurred. Keep in mind that the damages you award are not meant to punish Apple.

Masimo has the burden to establish the amount of damages by a preponderance of the evidence. In other words, you should award only those damages that Masimo establishes that it more likely than not experienced. While Masimo is not required to prove the amount of damages with mathematical precision, it must prove damages with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Masimo seeks a reasonable royalty. A reasonable royalty is the amount of money that Masimo and Apple would have agreed upon as a fee for use of the invention just prior to when infringement began.

---

[52] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.1; *MR Techs, GMBH v. Western Digital Techs., Inc.*, No. 8:22-cv-1599 (JVS) (C.D. Cal. Jul. 26, 2024) Dkt. 578 Jury Instruction No. 21; *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 8:16-cv-1799 (JVS) (C.D. Cal. Oct. 18, 2024) Dkt. 592 at 26.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 25B**

**DAMAGES INTRODUCTION**

If you find that [alleged infringer]Apple infringed anya valid claim of the [ ] patentAsserted Claim, you must then consider what amount of damages to award to [patent holder]Masimo. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that [alleged infringer]Apple has not infringed any valid claim of the patentAsserted Claim, then [patent holder]Masimo is not entitled to any damages.

The damages you award must be adequate to compensate [patent holder] for theMasimo for any proven infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put [patent holder]Masimo in approximately the same financial position that it would have been in had the infringement not occurred. Keep in mind that the damages you award are not meant to punish Apple.

[Patent holder]Masimo has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that [patent holder]Masimo establishes that it more likely than not has sufferedexperienced. While [patent holder]Masimo is not required to prove the amount of its damages with mathematical precision, it must prove themdamages with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Masimo seeks a reasonable royalty. A reasonable royalty is the amount of money that Masimo and Apple would have agreed upon as a fee for use of the invention just prior to when infringement began.

There are different types of damages that [patent holder] may be entitled to recover. In this case, [patent holder] seeks [insert as appropriate, e.g., lost profits, price erosion, lost convoyed sales, or a reasonable royalty]. Lost profits consist of any actual reduction in business profits [patent holder] suffered as a result of [alleged infringer]'s

1    infringement. A reasonable royalty is defined as the money amount [patent holder] and

2    [alleged infringer] would have agreed upon as a fee for use of the invention at the time

3    just prior to when infringement began. But, regardless of the type of damages you may

4    choose to award, you must be careful to ensure that award is no more and no less than

5    the value of the patented invention.

6    [Add if patent holder is under a FRAND obligation: A reasonable royalty must

7    reflect that [the patent holder] committed to license the [asserted patent] on fair,

8    reasonable and nonDiscriminatory ("FRAND") terms. Because of this FRAND

9    commitment, I will refer at times in my instructions to "standard-essential" patents. By

10   referring to standard-essential patents, the Court is not instructing you that the asserted

11   patents are actually essential to any standard. Again, it is up to you, the jury, to decide

12   whether or not [the patent holder] has proven that the patents are standard-essential and

13   infringed.

14   [The patent holder] submitted a written commitment to [insert standard body]

15   covering [the asserted patents], agreeing to grant an irrevocable license to [the asserted

16   patents] on fair, reasonable, and non-discriminatory or FRAND terms and

17   conditions. Therefore, a reasonable royalty in this case cannot exceed the amount

18   permitted under [the patent holder's] FRAND obligations.]

19   I will give more detailed instructions regarding damages shortly. Note, however,

20   that [patent holder] is entitled to recover no less than a reasonable royalty for each

21   infringing [sale; fill in other infringing act].

22

23   **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.1.

24

25

26

27

28

-187-

## Apple's Position: Proposed Final Instruction No. 25B

Apple's proposed instruction closely tracks the Federal Circuit Bar Association's Model—which both sides agree is the appropriate starting point for this instruction—and a comparable instruction that this Court delivered in another fairly recent patent case. *See SPEX Techs., Inc. v. Western Digital Techs., Inc.*, No. 8:16-cv-1799 (JVS), (C.D. Cal. Oct 18, 2024) Dkt. 592 at 26.

The chief difference between the parties' instructions is that Apple's proposal restores two sentences Masimo omits, which make clear that (1) any reasonable royalty award must put Masimo in roughly the same position it would have been without the alleged infringement  and (2) Masimo has the burden to show the damages it has more likely than not experienced.  In prior briefing, Masimo also objected to informing the jury that the damages awarded "must be adequate to compensate" for the infringement on the basis that a reasonable royalty is not compensatory.  Masimo has now abandoned that position and rightly so, as Section 284 "promises the patentee … a reasonable royalty *as compensation* for infringement." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) (emphasis added).

Masimo's current objection to Apple's language is that it purportedly applies only when a party seeks a lost profits remedy.  But nothing in the text of the Federal Circuit Bar Association's instruction—which is generally labeled "DAMAGES—INTRODUCTION"—supports Masimo's assertion that Apple's language does not apply in reasonable royalty cases.  The model instructions make clear when language is optional or context specific (e.g., by using brackets), and none of the language Masimo cut was bracketed.[53]

Masimo's assertion that this Court should ignore the *SPEX* instruction because it

---

[53] For example, the parties based this instruction on FCBA Model Instruction 5.1. Section 5.1 includes brackets for the parties to fill in, including the specific types of damages sought, the patentee's specific infringement theories (e.g., sale, use), and the name of the patentee.  The model instruction also includes a bracketed section for use only in FRAND cases.

was undisputed appears to imply (without evidence or supporting authority) that this Court made a legal error in *SPEX*. If Masimo's position is credited (and it should not be), this Court should also disregard the undisputed instructions that Masimo relies in support of its position in other instructions.

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 26A[54]**

**REASONABLE ROYALTY – ENTITLEMENT**

If you find that a patent claim is infringed and not invalid, Masimo is entitled to at least a reasonable royalty to compensate it for that infringement.

---

[54] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.5; 35 U.S.C. § 284.

1

2

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 26A**

**REASONABLE ROYALTY—ENTITLEMENT**

3

4

If you find that a patent claim is infringed and not invalid, Masimo[patent holder] is entitled to at least a reasonable royalty to compensate it for that infringement.

5

6

7

8

9

10

[Give this instruction only if the patent holder is seeking both lost profits and a reasonable royalty] If you find that [patent holder] [has not proved its claim for lost profits]/[or has proved its claim for lost profits for only a portion of the infringing sales], then you must award [patent holder] a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

11

12

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.5.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### Masimo's Position: Proposed Final Instruction No. 26A

2      Upon a finding of infringement, Masimo is entitled to "in no event less than a

3  reasonable royalty." 35 U.S.C. § 284.  The Court should adopt Masimo's simple

4  instruction that follows the statute and the FCBA model.  The Court should reject

5  Apple's proposal to add an instruction on nominal damages.  Apple's proposal

6  contradicts the law and the facts of this case.

7      Any argument by Apple that Masimo is entitled to only nominal damages is a

8  legal argument to be made post-trial.  Apple's argument would not be appropriate to

9  present to the jury.  The patent damages statute (35 U.S.C. § 284) is unique.  It "is

10  unequivocal that the district court must award damages in an amount no less than a

11  reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir.

12  2003).  As the Federal Circuit recently explained, where the patent holder puts forward

13  evidence the jury could reasonably rely on to determine damages, a finding of "no

14  damages would be inappropriate." *Rex Med., L.P. v. Intuitive Surgical, Inc.*, ---F. 4th--

15  -, No. 2024-1072, 2025 WL 2799030 (Fed. Cir. Oct. 2, 2025).  Even if the jury

16  determines the record evidence does not fully support either party's royalty estimate, the

17  jury "must still determine what constitutes a reasonable royalty from the record

18  evidence." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327–28 (Fed. Cir. 2014),

19  *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed.

20  Cir. 2015).  And when the jury fails to award a reasonable royalty, under 35 U.S.C. §

21  284, the Court still must "award such reasonable royalties as the record evidence will

22  support." *Dow Chem.*, 341 F.3d at 1382.

23      The law requires that the jury assess "in no event less than a reasonable royalty

24  for the use made of the invention by the infringer," 35 U.S.C. § 284, and Apple should

25  not be permitted to instruct the jury to ignore the law and award no or nominal damages

26  (*e.g.*, $1).  Apple can argue post-trial that Masimo's trial evidence supporting a

27  reasonable royalty was so lacking that neither the jury nor the Court could set a

28  reasonable royalty and that an alleged complete dearth of record evidence would require

the Court to enter judgment of nominal damages. But that is not an appropriate issue to present to the jury. Just as enhanced damages under 35 U.S.C. § 284 is a post-trial issue for the Court, not the jury, the legal question of whether Masimo here should be awarded only nominal damages is for the Court alone. It would confuse the jury to be properly instructed, under 35 U.S.C. § 284, that it should award no less than a reasonable royalty, but then have Apple's counsel repeatedly tell them not to follow the instruction and instead award essentially nothing. Apple can argue that the reasonable royalty should be *lower* than what Masimo advocates, but it should not be allowed to argue that no reasonable royalty, or merely a nominal royalty, should be awarded.

Apple's reliance on *Info-Hold, Inc. v. Muzak LLC,* 783 F.3d 1365, 1372 (Fed. Cir. 2015) and *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 8:16-cv-1799 (JVS) (C.D. Cal. Oct. 18, 2024), does not support instructing the jury on nominal damages. In *Info-Hold*, the district court granted summary judgment of no damages after striking the plaintiff's damages expert. The Federal Circuit reversed because "there was no evidence of record supporting a zero royalty and the evidence of record which could be used to determine a non-zero royalty was ignored." *Info-Hold*, 783 F.3d at 1372. *Info-Hold* says nothing about instructing the jury or arguing to the jury about nominal damages. In *SPEX*, this Court instructed the jury on nominal damages only after excluding plaintiff's damages expert from testifying entirely. Dkt. 530 at 3. The Court also explained: "The parties and the Court have already envisioned a Rule 50(a) motion at the close of SPEX's case in chief. The Court anticipates that [the] parties will be developing their written showings as SPEX's case proceeds." Dkt. 518 at 1. Thus, *SPEX* was an unusual case that should be limited to its unique facts and circumstances.

Apple's reliance on *Rex Med., L.P. v. Intuitive Surgical, Inc.*, ---F. 4th---, No. 2024-1072, 2025 WL 2799030 (Fed. Cir. Oct. 2, 2025), is also misplaced. There, the district court excluded the plaintiff's damages expert entirely because he relied on a settlement agreement without attempting to apportion value among the multiple patents in the agreement. *Id*. at *1. At trial, the plaintiff attempted to prove damages with a fact

1  witness relying on the same settlement agreement.  *Id*. at *3.  **After trial**, the court

2  awarded nominal damages as a matter of law.  *Id*.  Like *Info-Hold*, *Rex Medical* says

3  nothing about instructing the jury or arguing to the jury about nominal damages.

4  Apple's reliance on *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291-1292 (Fed.

5  Cir. Oct. 23, 2020), is similarly misplaced.  There, the court affirmed a ***post-trial***

6  ***reduction*** of the jury's damages award.  *Id*.  Accordingly, *TecSec* also says nothing about

7  instructing the jury about nominal damages.  Furthermore, Apple proposes instructing

8  the jury to award nominal damages if "Masimo's evidence establishing damages is

9  weak."  But TecSec "presented no evidence of damages."  *Id*.  Apple cites no case

10  supporting nominal damages where the patentee's damages evidence is "weak."

11  Apple also cites *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 13228 (Fed. Cir.

12  2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339

13  (Fed. Cir. 2015), to argue that "a *fact finder* may award no damages only when the record

14  supports a zero royalty award."  Apple omits the court's instructive analysis providing

15  two examples of the type of case that could support a zero royalty: (1) "a case completely

16  lacking any evidence" to support damages, and (2) a case where "defendant considered

17  the patent valueless and the patentee would have accepted no payment for the

18  defendant's infringement."  *Id*.  Apple also omits the court's recognition that for other

19  cases, "it seems unlikely that a willing licensor and willing licensee would agree to a

20  zero royalty payment in a hypothetical negotiation, where both infringement and validity

21  are assumed."  *Id*.  Here, the jury will hear no evidence that nominal damages are

22  appropriate.  The court should not instruct the jury they may give an award that would

23  be unsupported.

24  This case is very different than the cases Apple cites.  Here, the Court denied

25  Apple's attempt to eliminate Masimo's damages case on the apparatus claims of the '776

26  Patent.  Moreover, Apple has identified no evidence it could present at trial that Masimo

27  is entitled to only nominal damages.  Apple's own damages expert (Webster) offered no

28  such opinion.  Rather, she offered an affirmative opinion that the reasonable royalty is

1    millions of dollars.  She also attempted to correct Masimo's affirmative opinion.  But

2    the supposed corrections would result in a royalty ranging from approximately a million

3    to more than a hundred million dollars.  Accordingly, like in *Info-Hold*, the jury will

4    have no evidence to support a zero royalty, and significant evidence to support a non-

5    zero royalty.  Based on the evidence available for trial, Apple should be precluded from

6    even arguing for nominal damages—let alone instructing the jury on nominal damages.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 26B[55]

## REASONABLE ROYALTY – ENTITLEMENT

If you find that a patent claim is infringed and not invalid, Masimo is entitled to at least a reasonable royalty to compensate it for that infringement unless there is insufficient evidence for you to determine the amount of any royalty. If you find that Masimo's evidence establishing damages is weak, then you may award what is called nominal damages, which the law defines as a small amount of money, typically $1.

---

[55] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.5; 35 U.S.C. § 284; *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015); *Rex Medical L.P. v. Intuitive Surgical, Inc.* -- F.4th -- , 2025 WL 2799030, at *6-7 (Fed. Cir. Oct. 2, 2025); *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291-1292 (Fed. Cir. Oct. 23, 2020); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327–28 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 8:16-cv-1799 (JVS) (C.D. Cal. Oct. 18, 2024) Dkts. 592 at 31, 594, 651; *Black's Law Dictionary*, Damages (12th ed. 2024).

1 **REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 26B**

2 **REASONABLE ROYALTY – ENTITLEMENT**

3    If you find that a patent claim is infringed and not invalid, ~~[patent holder]~~Masimo

4 is entitled to at least a reasonable royalty to compensate it for that infringement~~.~~ unless

5 there is insufficient evidence for you to determine the amount of any royalty. If you find

6 that Masimo's evidence establishing damages is weak, then you may award what is

7 called nominal damages, which the law defines as a small amount of money, typically

8 $1.

9    ~~[Give this instruction only if the patent holder is seeking both lost profits and a~~

10 ~~reasonable royalty] If you find that [patent holder] [has not proved its claim for lost~~

11 ~~profits]/[or has proved its claim for lost profits for only a portion of the infringing sales],~~

12 ~~then you must award [patent holder] a reasonable royalty for all infringing sales for~~

13 ~~which it has not been awarded lost profits damages.~~

14

15 **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.5.

1    **Apple's Position: Proposed Final Instruction No. 26B**

2    While 35 U.S.C. § 284 provides that a patentee is entitled to "no less than a

3 reasonable royalty" upon a finding that a patent claim is valid and infringed, the Federal

4 Circuit makes clear that Section 284 has at least two important limits—both of which

5 are reflected in Apple's proposed instruction.

6    ***First***, as the Federal Circuit reaffirmed earlier this month, Section 284 "does not

7 require an award of damages if none are proven that adequately tie a dollar amount to

8 the infringing acts." *Rex Medical, L.P. v. Intuitive Surgical, Inc.*, -- F.4th --, 2025 WL

9 2799030, at *6 (Fed. Cir. Oct. 2, 2025); *accord TecSec, Inc. v. Adobe Inc.*, 978 F.3d

10 1278, 1291 (Fed. Cir. 2020) (same).  This is because it would "go[] beyond the possible

11 meaning of the statute" "to argue that [the reasonable royalty] requirement exists even

12 in the absence of any evidence form which a court may derive a reasonable royalty."

13 *Rex Medical*, 2025 WL 2799030, at *6 (quoting *Devex Corp. v. Gen. Motors Corp.*, 667

14 F.2d 347, 363 (3d Cir. 1981)).  In short, a reasonable royalty is required only when there

15 is "enough evidence in the record to allow the factfinder to formulate a royalty." *Id.*

16 (quoting *Devex*, 662 F.2d at 363).

17    If there is no evidence permitting the jury to formulate a royalty, none should be

18 awarded.  *See, e.g.*, *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 8:16-cv-1799, Dkt.

19 651 at 19 (C.D. Cal.).  To the extent Masimo believes the jury should be informed of

20 Section 284's reasonable royalty requirement, Apple submits the jury should also be

21 informed of its limitations.

22    ***Second***, the Federal Circuit has twice confirmed that even if there is enough

23 evidence to support a reasonable royalty, the amount of that royalty may be quite low if

24 the patentee fails to put on a convincing case.  While "the fact finder is still required to

25 determine what royalty is supported by the record," "if the patentee's proof is weak, the

26 court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported

27 by the record." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-1329 (Fed. Cir. 2014),

28 *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed.

Cir. 2015). As the Federal Circuit summarized a year later (in the summary judgment context): "[W]here the patentee's proof is weak, the court may award nominal damages." *Info-Hold,* 783 F.3d at 1371-1372.

This Court addressed both lines of case law as recently as last year in *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 8:16-cv-1799 (C.D. Cal.). There, this Court instructed the jury that Section 284 "authorizes an award of nominal damages" and that the jury should award nominal damages if it found that "SPEX has failed to prove damages as defined in these instructions." *Id.,* Dkt. 592 at 31. The Court also cited the *Info-Span* decision's holding that "'where the patentee's proof is weak, the Court may award nominal damages'" in explaining the Court's reasoning for denying the defendant's FRCP 50(a) motion and allowing the case to go to the jury. Dkt. 594 at 75-76 ("I think between *DMF Inc.* and *Info-Hold*, there is sufficient room for the plaintiff to go forward" on damages). And after trial, the Court re-examined the record and revised its prior decision, concluding at the FRCP 50(b) stage that the *TecSec* line of cases applied. *See* Dkt. 651 at 19 ("[T]here is insufficient evidence from which the Court could determine a reasonable royalty.").

Masimo's argument provides no reason for the Court to depart from its conclusion about this same issue in *SPEX*. While Masimo attempts to distinguish *SPEX* on the grounds that the damages evidence in that case was particularly weak, whether the *SPEX* plaintiff had a strong case is irrelevant to Masimo's contention that, as a matter of law, a jury can never award nominal or zero damages

And tellingly, the *SPEX* plaintiff unsuccessfully made the same basic argument that Masimo now makes—i.e., that the plain text of Section 284 requires that the jury award ***some*** amount of reasonable royalty. *SPEX*, Dkt. 490 at 86 ("The patent statute requires the award of at least a reasonable royalty for any infringement"). The passages quoted from *Rex Medical* and *TecSec* make clear that Section 284 does ***not*** require a reasonable royalty if there is insufficient evidence to calculate a reasonable royalty.

Masimo relatedly argues that the decision whether to award nominal or zero

1    damages is a question of law for the court.  But if that were so, this Court would not

2    have delivered the *SPEX* jury instruction discussed above.  In fact, this Court was right

3    in *SPEX*.  While the Federal Circuit cases discussed above took place in the summary

4    judgment context (*Apple* and *Info-Hold*) or the FRCP 50 context (*TecSec* and *Rex*),

5    nothing in those decisions casts doubt on the notion that the ultimate finder-of-fact can,

6    in the right circumstances, decide to award nominal or zero damages.  Indeed, *Apple*

7    emphasizes that "[i]f a patentee's evidence fails to support its specific royalty estimate,

8    the ***fact finder*** is still required to determine what royalty is supported by the record" and

9    that "a ***fact finder*** may award no damages only when the record supports a zero royalty

10   award."  757 F.3d at 1327-1328 (emphases added).  While Masimo implies that the

11   Federal Circuit's *Dow Chemical* decision supports its position about the role of the jury

12   in assessing zero or nominal damages awards, that case dealt with the aftermath of "six-

13   day bench trial," *see Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1371, 1373 (Fed. Cir.

14   2003), and thus had no occasion to consider the scope of the jury's mandate.  To the

15   contrary, as FRCP Rule 50 decisions, *Rex Medical* and *TecSec* both address what a

16   reasonable jury could determine from the trial record.

17           Finally, Masimo has (wrongly) contended elsewhere that Apple must "identif[y]

18   … evidence it could present at trial that Masimo is entitled only to nominal damages."

19   Dkt. 2722 at 8.  As the undisputed portion of Apple's Proposed Final Instruction No. 25

20   establishes, the burden is on Masimo to prove the amount of its damages, and both *Apple*

21   and *Info-Hold* expressly state that nominal damages may be awarded when the

22   "***patentee's*** proof is weak."  *Apple*, 757 F.3d at 1328; *Info-Hold*, 783 F.3d at 1372

23   (emphasis added).  Masimo is thus simply wrong when it asserts that Apple "cites no

24   case supporting nominal damages where the patentee's damages evidence is 'weak.'"

25

26

27

28

# JOINT PROPOSED FINAL INSTRUCTION NO. 27[56]

## DAMAGES PERIOD

Masimo and Apple agree that the damages period began on January 9, 2020, when this lawsuit was filed, and ended on June 26, 2022, when the '776 Patent expired.

---

[56] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.10.

# REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 27

## DAMAGES PERIOD

Masimo and Apple agree that the damages period began on January 9, 2020, when this lawsuit was filed, and ended on June 26, 2022, when the '776 Patent expired.

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that [alleged infringer] has both infringed and been notified of the alleged infringement of the [ ] patent [choose those that apply]:

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.10.

**JOINT PROPOSED FINAL INSTRUCTION NO. 28[57]**

**REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to import or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

---

[57] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.6.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 28**

**REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to ~~import~~make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.6.

# MASIMO'S PROPOSED FINAL INSTRUCTION NO. 29A[58]

## REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The rates paid by Apple for other patents comparable to the '776 Patent;

(2) The commercial relationship between Masimo and Apple, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(3) The effect of selling the Accused Products in promoting sales of other Apple products and the extent of such derivative or convoyed sales;

(4) The established profitability of the Accused Products, their commercial success, and their current popularity;

(5) The utility and advantages of the patented property over the old modes or devices that had been used for working out similar results; and

(6) The portion of realizable profit that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risk, or significant features or improvements added by Apple.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Apple would have been willing to pay and Masimo would have been willing to accept, acting as normally prudent businesspeople.

---

[58] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instruction § 5.8.

1    **REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 29A**

2    **REASONABLE ROYALTY—RELEVANT FACTORS**

3    In determining the reasonable royalty, you should consider all the facts known

4 and available to the parties at the time the infringement began. Some of the kinds of

5 factors that you may consider in making your determination are:

6    (1) The rates paid by Apple for other patents comparable to the '776 Patent;

7    (2) The commercial relationship between Masimo and Apple, such as whether

8    they are competitors in the same territory in the same line of business, or

9    whether they are inventor and promoter;

10   (3) The effect of selling the Accused Products in promoting sales of other Apple

11   products and the extent of such derivative or convoyed sales;

12   (4) The established profitability of the Accused Products, their commercial

13   success, and their current popularity;

14   (5) The utility and advantages of the patented property over the old modes or

15   devices that had been used for working out similar results; and

16   (6) The portion of realizable profit that should be credited to the invention as

17   distinguished from nonpatented elements, the manufacturing process, business

18   risk, or significant features or improvements added by Apple.

19   (1) The value that the claimed invention contributes to the accused product.

20   (2) The value that factors other than the claimed invention contribute to the accused

21   product.

22   (3) Comparable license agreements or other transactions, such as those covering the use

23   of the claimed invention or similar technology.

24   [Add if a Standard Essential Patent or a patent otherwise subject to a RAND obligation

25   is involved: You have heard evidence that the asserted patent is a standard essential

26   patent, that is, the [industry standard] cannot be practiced without infringing the patent.

27   If you agree that the patent is essential to the [standard], you must ensure that your

28   damages award reflects only the value of the patented invention and not the additional

-206-

1  ~~value that resulted from the patent's inclusion in the [standard]. In other words, you may~~
2  ~~not consider the success of the standard itself in determining a reasonable royalty for the~~
3  ~~patent(s)-in-suit.]~~

4         No one factor is dispositive and you can and should consider the evidence that has
5  been presented to you in this case on each of these factors. You may also consider any
6  other factors which in your mind would have increased or decreased the royalty
7  <u>Apple</u>~~the alleged infringer~~ would have been willing to pay and <u>Masimo</u>~~the patent holder~~
8  would have been willing to accept, acting as normally prudent <u>businesspeople.</u>  ~~business~~
9  ~~people.~~

10
11  **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instruction § 5.8.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Masimo's Position: Proposed Final Instruction No. 29A**

Masimo's proposed instruction adapts the FCBA model instruction to the facts in this case.  Masimo properly excluded *Georgia-Pacific* factors for which neither party will present evidence.  Apple's proposed instruction includes one issue not relevant to the case.  Apple's proposal also deviates from the model and contradicts the law.

In factors 3 and 4 below, Apple proposes referring to "Accused Features," rather than "Accused Products."  Apple identifies no legal or factual basis to deviate from the model instruction, which refers to "Accused Products."  For reasons similar to those explained above regarding Masimo's Proposed Final Instruction Nos. 2A and 15A, the term "Accused Products" is more appropriate than "Accused Features" or "Apple Watch with the Accused Features."  *See* Masimo's Position: Proposed Final Instruction Nos. 2A & 15A.

At factor 5 below, Apple proposes changing the model instruction on *Georgia-Pacific* factor 9, concerning "the utility and advantages of the patent property over the old modes or devices."  But the FCBA model instruction accurately and adequately instructs the jury on this factor.  Masimo also disagrees with Apple's argument regarding Dr. Madisetti's and Mr. Bergman's reliance on a particular alternative.  Masimo specifically disagrees that such an alternative was unavailable as Apple argues.  Indeed, the alternative operates at only the single duty cycle used by Apple in the higher power mode, but removing the ability to switch to the lower power mode.

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 29B[59]

## REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The rates paid by Apple for other patents comparable to the '776 Patent;

(2) The commercial relationship between Masimo and Apple, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(3) The effect of selling Apple Watch with the Accused Features in promoting sales of other Apple products and the extent of such derivative or convoyed sales;

(4) The established profitability of Apple Watch with the Accused Features, its commercial success, and its current popularity;

(5) The utility and advantages of the patented property over the old modes, devices, and next best available alternatives, if any, that had been used for similar results; and

(6) The portion of realizable profit that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risk, or significant features or improvements added by Apple.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Apple would have been willing to pay and Masimo would have been willing to accept, acting

---

[59] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instruction § 5.8; *Salazar v. HTC Corp.*, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018); *WhereverTV, Inc. v. Comcast Cable Commc'ns*, 2022 WL 2773292, at *7 (M.D. Fla. May 23, 2022); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

as normally prudent businesspeople.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 29B**

**REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

~~(1) The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.~~

(1)~~(2)~~ The rates paid by ~~the licensee~~Apple for ~~the use of~~ other patents comparable to the ~~patent in suit.~~'776 Patent;

~~(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.~~

~~(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.~~

(2)~~(5)~~ The commercial relationship between ~~the licensor~~Masimo and ~~licensee~~Apple, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter~~.~~;

(3)~~(6)~~ The effect of selling ~~the patented specialty~~Apple Watch with the Accused Features in promoting sales of other ~~products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items,~~Apple products and the extent of such derivative or convoyed sales~~.~~;

~~(7) The duration of the patent and the term of the license.~~

(4)~~(8)~~ The established profitability of ~~the product made under the patents~~Apple Watch with the Accused Features, its commercial success, and its current popularity~~.~~;

(5)~~(9)~~ The utility and advantages of the patented property over the old modes ~~or,~~

1    devices, and next best available alternatives, if any, that had been used for

2    ~~working out~~ similar results~~.~~; and

3    ~~(10) The nature of the patented invention, the character of the commercial~~

4    ~~embodiment of it as owned and produced by the licensor, and the benefits~~

5    ~~to those who have used the invention.~~

6    ~~(11) The extent to which the infringer has made use of the invention and any~~

7    ~~evidence probative of the value of that use.~~

8    ~~(12) The portion of the profit or of the selling price that may be customary in~~

9    ~~the particular business or in comparable business to allow for the use of the~~

10    ~~invention or analogous inventions.~~

11    (6) ~~(13)~~ The portion of ~~the~~ realizable ~~profits~~profit that should be credited to the

12    invention as distinguished from nonpatented elements, the manufacturing

13    process, business ~~risks~~risk, or significant features or improvements added by

14    ~~the infringer~~Apple.

15    ~~(14) The opinion and testimony of qualified experts.~~

16    ~~(15) The amount that a licensor (such as the patentee) and a licensee (such as~~

17    ~~the infringer) would have agreed upon (at the time the infringement began~~

18    ~~if both had been reasonably and voluntarily trying to reach an agreement;~~

19    ~~that is, the amount which a prudent licensee—who desired, as a business~~

20    ~~proposition, to obtain a license to manufacture and sell a particular article~~

21    ~~embodying the patented invention—would have been willing to pay as a~~

22    ~~royalty and yet be able to make a reasonable profit and which amount would~~

23    ~~have been acceptable by a prudent patentee who was willing to grant a~~

24    ~~license.~~

25    ~~[Add if a Standard Essential Patent or a patent otherwise subject to a RAND~~

26    ~~obligation is involved: You have heard evidence that the asserted patent is a standard~~

27    ~~essential patent, that is, the [industry standard] cannot be practiced without infringing~~

28    ~~the patent. If you agree that the patent is essential to the [standard], you must ensure that~~

1  ~~your damages award reflects only the value of the patented invention and not the~~
2  ~~additional value that resulted from the patent's inclusion in the [standard]. In other~~
3  ~~words, you may not consider the success of the standard itself in determining a~~
4  ~~reasonable royalty for the patent(s)-in-suit.]~~

5      No one factor is dispositive and you can and should consider the evidence that has
6  been presented to you in this case on each of these factors. You may also consider any
7  other factors which in your mind would have increased or decreased the royalty ~~the~~
8  ~~alleged infringer~~Apple would have been willing to pay and ~~the patent holder~~Masimo
9  would have been willing to accept, acting as normally prudent ~~business~~
10  ~~people~~businesspeople.

11

12  **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instruction § 5.8.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Apple's Position: Proposed Final Instruction No. 29B**

2       Apple's proposed instruction tracks the Federal Circuit Bar Association's Model

3   and the *Georgia-Pacific* factors, which both sides agree should be the starting point for

4   this instruction.  Apple's proposal diverges from Masimo's in two significant ways.

5       ***First***, as discussed above in Final Instruction No. 2B, Apple submits that the

6   instructions should expressly reference the two specific accused features rather than

7   Apple Watch as a whole.  Apple incorporates by reference that discussion here. ***Second***,

8   Apple's instruction explains that the jury can consider next-best alternatives in the

9   reasonable royalty analysis if they are available.  While this Court has now ruled that

10  ***Apple's*** experts cannot testify about next-best alternatives that were not available at the

11  time of the hypothetical negotiation, 10/17/25 MSJ Order at 14-15, Apple submits that

12  the jury should still be instructed on the doctrine.  This is because—as Masimo's briefing

13  confirms—Dr. Madisetti and Mr. Bergman intend to testify regarding an (unavailable)

14  256 Hz alternative.  *See* Dkt. 2588 at 20-21.  That the parties disagree over whether the

15  alternative was available or unavailable is a ***reason*** to instruct the jury on the issue and

16  not—as Masimo suggests—a reason not to do so.  Because Masimo intends to rely on

17  such testimony, the jury should be aware of the legal standard and its limits.[60]

18

19

20

21

22

23

24

25

26

27

_____

28  [60] Apple also proposes omitting the words "working out" from the standard *Georgia-Pacific* language to avoid any confusion with the accused "Workout Mode" in this case.

1

2

**JOINT PROPOSED FINAL INSTRUCTION NO. 30[61]**

**REASONABLE ROYALTY – COMPARABLE AGREEMENTS**

3

4

5

6

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

7

8

9

10

11

12

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether the license agreement involves comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[61] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.9; *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

# REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 30
## DAMAGES—COMPARABLE AGREEMENTS

[Instructions about comparable licenses should only be given if the jury is presented with evidence of comparable licenses]

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they the license agreement involves comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

[Include only if litigation-related agreement are presented to the jury] The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.9.

**MASIMO'S PROPOSED FINAL INSTRUCTION NO. 31A[62]**

**DAMAGES – APPORTIONMENT**

The amount you find as a reasonable royalty must be based on the value attributable to the patented invention, as distinct from unpatented features of the Accused Products or other factors such as marketing or advertising, or either party's size or market position.  A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.

Because Apple Watch has infringing features and non-infringing features, your award must be apportioned so that it is based only on the value of the infringing features, and no more.

---

[62] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.12.

1

2

## REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 31A

## DAMAGES—APPORTIONMENT

3

4

[Use this instruction if neither party contends that the entire market value rule is satisfied] The amount you find as a reasonable royalty damages must be based on the

5

value attributable to the patented invention, as distinct from unpatented features of the

6

accused Products product or other factors such as marketing or advertising, or either

7

party's[the patent holder's] size or market position. A royalty compensating the patent

8

holder for damages must reflect the value attributable to the infringing features of the

9

product, and no more. The process of separating the value of the allegedly infringing

10

features from the value of all other features is called apportionment. When the accused

11

infringing products have both patented and unpatented features, your award must be

12

apportioned so that it is based only on the value of the patented features, and no more.

13

Because Apple Watch has infringing features and non-infringing features, your

14

award must be apportioned so that it is based only on the value of the infringing features,

15

and no more.

16

17

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.12.

18

19

20

21

22

23

24

25

26

27

28

-218-

### Masimo's Position: Proposed Final Instruction No. 31A

Masimo's proposed instruction includes minor edits to the FCBA model instruction, that Masimo and Apple agree on, to adapt the model instruction to the facts of this case.

The Court should deny Apple's request to further modify the model instruction on apportionment and instruct the jury to subapportion the value of patented features for "unpatented aspects of the Accused Features." Apple's argues the accused watches have "features that are not alleged to infringe **and** the two accused features have non-infringing uses." But, the model instruction already properly instructs on the apportionment requirement to address exactly this issue. Apple identifies nothing special about this case that requires a different apportionment instruction.

Apple's reliance on *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) and *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) is misplaced. Just as the FCBA model instructs, both cases explain that the patentee must apportion "between the patented feature and the unpatented features." *Finjan*, 879 F.3d at 1310; *Ericsson*, 773 F.3d 1226. Apple offers no legal support requiring the patentee to apportion for "unpatented aspects of the Accused Features." Accordingly, the Court should instruct the jury on the apportionment requirement as set forth in the model and reject Apple's unsupported change.

1

2

### APPLE'S PROPOSED FINAL INSTRUCTION NO. 31B[63]

### DAMAGES – APPORTIONMENT

3

4

5

6

7

8

9

     The amount you find as a reasonable royalty must be based on the value attributable to the patented invention, as distinct from unpatented aspects of the Accused Features, other features of Apple Watch, other factors such as marketing or advertising, or either party's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.

10

11

12

     Because Apple Watch has infringing features and non-infringing features, your award must be apportioned so that it is based only on the value of the infringing feature or features, and no more.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[63] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.12.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 31B**

**DAMAGES – APPORTIONMENT**

~~[This instruction is designed to be used in cases where reasonable royalty damages are sought].~~

~~[Use this instruction if neither party contends that the entire market value rule is satisfied]~~ The amount you find as ~~damages~~<u>a reasonable royalty</u> must be based on the value attributable to the patented invention, as distinct from unpatented <u>aspects of the Accused Features, other</u> features of ~~the accused product or~~<u>Apple Watch,</u> other factors such as marketing or advertising, or ~~[the patent holder's]~~<u>either party's</u> size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. ~~When the accused~~

<u>Because Apple Watch has</u> infringing ~~products have both patented and unpatented~~<u>features and non-infringing</u> features, your award must be apportioned so that it is based only on the value of the ~~patented~~<u>infringing feature or</u> features, and no more.

~~[Use the following three paragraphs only if a party contends that the entire market value rule is satisfied]  According to the "entire market value rule," a royalty based on the total value of a multicomponent product is only proper where the entire value of the product comes from the patented feature. [Patent holder] is not permitted to recover damages based on the entire market value of the accused products unless [patent holder] proves that the claimed patented features are the sole driving factor for customers' demand. It is not enough for [patent holder] to show that the patented feature is viewed as valuable, important, or even essential to the use of the accused product. It is also not enough for [patent holder] to show that the accused product is commercially unviable without the patented feature. Unless you find that the claimed invention is the sole driving factor for customers' demand for the accused product, [patent holder] may not use the value of the entire product to calculate a reasonable royalty.~~

1  ~~If the claimed patented features are not the sole driving factor for customer~~
2  ~~demand for the accused infringing product, then you must perform what is called~~
3  ~~apportionment. When damages must be apportioned, the amount you find as damages~~
4  ~~must be based on the value attributable to the patented invention, as distinct from~~
5  ~~unpatented features of the accused product or other factors such as marketing or~~
6  ~~advertising, or [the patent holder's] size or market position. Put differently, when~~
7  ~~apportionment is required, a royalty compensating the patent holder for damages must~~
8  ~~reflect the value attributable to the infringing features of the product, and no more.~~

9  ~~On the other hand, if demand for the entire accused product depends only on the~~
10 ~~claimed feature(s), then apportionment is not necessary even though the accused product~~
11 ~~includes non-patented features.~~

13 **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 5.12.

1

**Apple's Position: Proposed Final Instruction No. 31B**

2

Apple's proposed instruction tracks the Federal Circuit Bar Association's Model,

3

which both sides agree should be the starting point for this instruction.  Apple has added

4

a small amount of language to clarify that the accused Apple Watches have myriad

5

features that are not alleged to infringe **and** the two accused features have non-infringing

6

uses.  For example, Workout Mode can track "elapsed time, distance (using GPS), speed,

7

pace, elevation (using an altimeter), calorie burn, and heart rate" but only allegedly

8

infringes when it tracks heart rate.  Dkt. 2536-4 (Mercier Rbtl. Rpt.) ¶ 173.  And at least

9

one early iteration of the High Heart Rate Notification feature is not accused of

10

infringing, as it does not involve a change in duty cycle, which the asserted claims

11

require.  *Id.* ¶ 758; *see also* Dkt. 2531-1 at 9-11 (Apple's *Daubert* motion explaining this

12

distinction).  This approach is consistent with Federal Circuit case law, which holds that

13

a patentee's damages case must account for the "non-infringing functions" of a

14

purportedly infringing portion of a device.  *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879

15

F.3d 1299, 1310-1311 (Fed. Cir. 2018)  (patentee is only entitled to the "incremental

16

value that the ***patented invention*** adds to the end product" (emphasis added); *see also*

17

*Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("As a

18

substantive matter, it is the 'value of what was taken' that measures a 'reasonable

19

royalty' under 35 U.S.C. § 284.").  Masimo's suggestion that it is entitled to damages

20

even for aspects of the accused features that have no connection to the claimed invention

21

whatsoever is inconsistent with this case law and with common sense.

22

Apple has also added language to clarify that the jury may find that one or two

23

features infringe ("the infringing feature ***or features***").

24

25

26

27

28

## APPLE'S PROPOSED FINAL INSTRUCTION NO. 32[64]

## WILLFUL INFRINGEMENT

In this case, Masimo alleges that Apple willfully infringed Masimo's patent during the time since Apple was made aware of the patent's existence on January 9, 2020.  If you have decided that Apple has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine whether Masimo proved that it is more likely than not that Apple knew of Masimo's patent and that the infringement by Apple after January 9, 2020 was intentional.  You may not determine that the infringement was willful just because Apple was aware of the '776 Patent and infringed it.  Instead, you must also find that Apple deliberately infringed the '776 Patent.

To determine whether Apple acted willfully, consider all facts and assess Apple's knowledge at the time of the challenged conduct.  Facts that may be considered include, but are not limited to:

(1)    Whether or not Apple acted consistently with the standards of behavior for its industry;

(2)    Whether or not Apple reasonably believed that it did not infringe or that the patent was invalid;

(3)    Whether or not Apple made a good-faith effort to avoid infringing the '776 Patent, for example, whether Apple attempted to design around the '776 Patent;

(4)    Whether or not Apple tried to cover up its infringement.

You may also consider the undisputed fact that Apple did not copy any technology claimed by the Asserted Patent from any Masimo product.

---

[64] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.10; 9/3/25 MSJ Tentative.

If you determine that any post-suit infringement was willful, that decision must not affect the amount of any damages award you give for infringement.  I will take willfulness into account later if you find it.

# REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 32

## WILLFUL INFRINGEMENT

[This instruction should be given only if willfulness is in issue.]

In this case, [patent holder] argues that [alleged infringer]Masimo alleges that Apple willfully infringed the [patent holder]'s patentMasimo's patent during the time since Apple was made aware of the patent's existence on January 9, 2020. If you have decided that [alleged infringer]Apple has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether [patent holder]Masimo proved that it is more likely than not that [alleged infringer]Apple knew of [patent holder]'sMasimo's patent and that the infringement by [alleged infringer]Apple after January 9, 2020 was intentional. You may not determine that the infringement was willful just because [alleged infringer]Apple was aware of the [ ] patent'776 Patent and infringed it. Instead, you must also find that [alleged infringer]Apple deliberately infringed the [ ] patent'776 Patent.

To determine whether [alleged infringer]Apple acted willfully, consider all facts and assess [alleged infringer's]Apple's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1)     Whether or not [alleged infringer]Apple acted consistently with the standards of behavior for its industry;

(2) Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the [ ] patent;

(2)     (3) Whether or not [alleged infringer]Apple reasonably believed that it did not infringe or that the patent was invalid;

(3)     (4) Whether or not [alleged infringer]Apple made a good-faith effort to avoid infringing the [ ] patent'776 Patent, for example, whether [alleged infringer]Apple attempted to design around the [ ] patent'776 Patent; and

(4)     (5) Whether or not [alleged infringer]Apple tried to cover up its infringement.

You may also consider the undisputed fact that Apple did not copy any technology claimed by the Asserted Patent from any Masimo product.

   If you determine that any post-suit infringement was willful, that decision must not affect the amount of any damages award you give for infringement. I will take willfulness into account later if you find it.


**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.10.

## Apple's Position: Proposed Final Instruction No. 32

Apple's proposed instruction tracks the Federal Circuit Bar Association's model, which both sides agree should be the starting point for this instruction. The parties appear to disagree on three points—the location of the instruction, whether to include the earliest date on which the jury can permissibly find willfulness, and whether the instruction should suggest that whether Apple copied Masimo's products is an open issue. To match Masimo's ordering, Apple's briefing on the appropriate location of this instruction (which is consistent with AIPLA, this Court's past practice, and common sense) is discussed in Apple's Position: Proposed Final Instruction No. 17.

As to the substance, Apple submits the jury should be instructed that the earliest possible date when willfulness could be found is January 9, 2020—i.e., when Masimo filed this litigation and when Apple was put on notice of the '776 patent. This addition reflects the Court's grant of summary judgment for Apple on pre-suit willfulness, and Masimo's tacit concession in the underlying briefing that Apple had neither actual nor constructive notice of the '776 patent prior to this litigation. *See* 10/17/25 MSJ Order at 20-21; *see also* Dkt. 2630-1 at 58-59 (Masimo unable to identify any evidence of actual notice but arguing constructive notice of asserted patents due to patent marking); Dkt. 2552-11 at 63 (Masimo interrogatory response conceding Masimo's products were not marked with '776 Patent until July 14, 2020).

In the briefing Apple received, Masimo provided no explanation for why its proposed instruction omits the date on which the purported willful infringement began. While Masimo has in the past objected to Apple's reference to the fact that "fil[ing] this lawsuit … made Apple aware of the '776 Patent," it does not dispute that the statement is accurate and does not explain why it is purportedly improper. Apple's proposed clarification, as a whole, is necessary because the jury will hear evidence concerning Apple's pre-suit development of the Accused Features, and Apple's proposed addition will avoid jury confusion on whether such evidence is potentially relevant to willfulness. Masimo cannot reasonably object to the inclusion of a few words that accurately

1    summarize Masimo's position on the timing of Apple's knowledge.

2    Second, Apple submits that the instruction should reflect the fact that this Court

3    has granted summary judgment on Masimo's (now abandoned) assertion that the

4    accused features were copying a patent-practicing Masimo product. 10/17/25 MSJ Order

5    at 20.    Using Masimo's proposed language regarding copying (i.e., that the jury can

6    consider "Whether or not Apple intentionally copied a product of Masimo that is covered

7    by the '776 patent") would imply that copying is an open issue for the jury to decide

8    when Masimo was unwilling to even defend that issue in opposing Apple's motion for

9    summary judgment.    *See* Dkt. 2592 at 16; *see also* Dkt. 2630-1 at 53 (Masimo

10   "[d]ispu[ting]" the fact that there is "no evidence that Apple replicated Plaintiffs' patent-

11   practicing products" without providing any supporting evidence).[65]

12   While Masimo quibbles that this Court granted summary judgment on copying as

13   it relates to invalidity as opposed to willfulness, Masimo does not identify any

14   substantive distinction between the two doctrines.    If anything, the bar was lower for

15   Masimo in the context of obviousness, since Masimo merely had to meet a burden of

16   production (i.e., come forward with evidence of copying) in the context of obviousness,

17   *e.g.*, Dkt. 2552 at 15-16, but has the burden of persuasion in the context of willfulness.

18   Masimo also argues that it is appropriate to instruct the jury that copying is an

19   open issue because Masimo has not insisted on a willfulness instruction that references

20   the fact that Apple has dropped aspects of its invalidity defenses (e.g., written

21   description, anticipation).    This is a non-sequitur, as the Federal Circuit Bar Association

22   model instruction does not mention either of those specific defenses—it simply

23   references invalidity as a whole.    In contrast, the model instruction includes copying as

24   one of just five specific factors for the jury to consider.    Apple submits that Masimo

25   

26   _____

27   [65] Masimo's assertion that there was "no dispute about copying as objective indicia of
     non-obviousness" belies the fact that both Masimo's interrogatory responses and its
     expert report insisted that there was copying.    *See* Dkt. 2552 at 16.    Masimo simply

28   concluded at summary judgment that its copying position was so weak as to be
     indefensible.

should not be permitted to suggest copying is an open issue when this Court has held the opposite.

## Masimo's Position: Proposed Final Instruction No. 32

Apple proposes that the Court instruct the jury on willful infringement last, after instructing the jury on infringement, validity, and damages.  As explained above in Masimo's position for its Proposed Final Instruction No. 17, Masimo's proposal follows the FCBA and N.D. Cal. model instructions, including the ordering of those instructions, and should be adopted.  *See* Masimo's Position: Proposed Final Instruction No. 17.

Apple's proposal also deviates from the model instruction.  Apple removes one of the bulleted factors for willfulness in the FCBA model ("(2) Whether or not Apple intentionally copied a product of Masimo that is covered by the '776 patent").  Apple changes the language of the model and moves it below the numbered factors to stand apart:

"You may also consider the undisputed fact that Apple did not copy any technology claimed by the Asserted Patent from any Masimo product."

This aspect of Apple's proposal is wrong, and whether Apple copied the claimed technology from a Masimo product is not an "undisputed fact" for at least two reasons.

First, in the context of willful infringement, whether Apple copied the claimed technology is not an "undisputed fact."  That issue has never been raised by Apple, conceded by Masimo, or decided by the Court.

Second, Apple's proposal appears to rely on a mischaracterization of the summary judgment briefing and the Court's order.  The parties' summary judgment briefing and the Court's order did not address copying in the context of willful infringement.  Instead, Apple moved for summary judgment on a different issue relating to validity.  Namely, Apple argued that "plaintiffs have not satisfied their burden of production to identify evidence supporting the copying *indicia of non-obviousness*."  Dkt. 2552 at 15-17.  Masimo then confirmed it would "not argue copying as objective indicia of *non-obviousness*."  Dkt. 2592 at 16.  Because Masimo's opposition did not dispute copying as objective indicia of non-obviousness, the Court granted summary judgment on that limited issue.  Order re Summary Judgment and Related Motions (Oct. 17, 2025) at 20.

1    Such a reasonable focusing of issues does not support instructing the jury on some "fact"

2    as undisputed.  As a further example, Masimo does not request an "undisputed fact"

3    directed towards issues Apple no longer disputes, such as the claims are not anticipated

4    by any prior art and satisfy all requirements of Section 112.  Thus, the Court's order

5    about copying as objective indicia of non-obviousness does not support Apple's

6    proposed departure from the FCBA model instruction on willful infringement.

7        Accordingly, the Court should adopt Masimo's proposed instruction on willful

8    infringement and reject Apple's proposed instruction.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL INSTRUCTION NO. 33[66]**

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[66] **Authority:** Dkt. 1715 at Jury Instruction No. 43; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.1.

# JOINT PROPOSED FINAL INSTRUCTION NO. 34[67]

## CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves during the course of your deliberations. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as Twitter), Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have

---

[67] **Authority:** Dkt. 1715 at Jury Instruction No. 44; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.2.

been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

# REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 34
## CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves during the course of your deliberations. ~~.~~ Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as Twitter)~~,~~, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it~~[, although I have no information that there will be news reports about this case]~~; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. ~~[, and a mistrial could result that would require the entire trial process to start over].~~ If any juror is exposed to any outside information, please notify the court immediately.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.2.

# JOINT PROPOSED FINAL INSTRUCTION NO. 35[68]

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

---

[68] **Authority:** Dkt. 1715 at Jury Instruction No. 45; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.3.

# REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 35

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk,] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.3.

# JOINT PROPOSED FINAL INSTRUCTION NO. 36[69]

## VERDICT FORM

A verdict form has been prepared for you.  You should follow the instructions in the verdict form as you move through your deliberations.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

---

[69] **Authority:** Dkt. 1715 at Jury Instruction No. 46; Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.5.

**REDLINED JOINT PROPOSED FINAL INSTRUCTION NO. 36**

**VERDICT FORM**

A verdict form has been prepared for you.  ~~You should follow the instructions in the~~[*Explain* verdict form as ~~you move through your deliberations.~~ *needed.*] After you have reached unanimous agreement on a verdict, your ~~[presiding juror] [~~foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the ~~[clerk] [bailiff]~~ that you are ready to return to the courtroom.

**Model:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 3.5.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 23, 2025          By: /s/ Nicholas M. Zovko
                                     Nicholas M. Zovko

                                 Attorneys for Plaintiffs
                                 MASIMO CORPORATION and
                                 CERCACOR LABORATORIES, INC.


                                 WILMER CUTLER PICKERING HALE AND DORR, LLP

Dated: October 23, 2025          By: /s/ Mark Selwyn
                                     Mark Selwyn

                                 Attorneys for Defendant
                                 APPLE INC.


## **FILER'S ATTESTATION**

Pursuant to Local Rule 5-4.3.4 regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all signatories above.


Dated: October 23, 2025     By: /s/ Nicholas M. Zovko
                                Nicholas M. Zovko