UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:20-cv-48-JVS-JDE                        Date   October 17, 2025

Title   Masimo Corporation et al. v. Apple Inc.

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                    Not Present

Proceedings:   **[IN CHAMBERS] Order Re Summary Judgment and Related Motions** (Redacted)

Plaintiffs Masimo Corp. and Cercacor Labs., Inc. ("Masimo") filed this action against Defendant Apple Inc. ("Apple") alleging patent and trade secret infringement, among other claims.  See generally Compl., Dkt. No. 1; First Am. Compl., Dkt. No. 28; Second Am. Compl., Dkt. Nos. 88-2, 89-1 (sealed); Third Am. Compl., Dkt. Nos. 230-2, 231-1 (sealed); Fourth Am. Compl., Dkt. Nos. 295-2, 296-1 (sealed).  Masimo presently asserts only U.S. Patent Nos. 8,457,703 (the "'703 Patent") and 10,433,776 (the "'776 Patent").  See Dkt. No. 2019 at 2.

Before the Court are two Daubert motions, two motions to strike, and two summary judgment motions related to the patent claims and defenses in this action.  The Court rules as follows:

| Motion | Ruling |
|---|---|
| Masimo's Daubert Motion to Exclude Apple Experts (Motion, Dkt. 2522; Memo, Dkt. 2548 (sealed); Opp'n, Dkt. 2588 (sealed); Reply, Dkt. 2625 (sealed)) | **GRANTED-IN-PART** and **DENIED-IN-PART** |
| Apple's Motion to Strike Undisclosed Opinions of Madisetti, Bergman, and Reed-Arthurs (Motion, Dkt. 2528; Memo, Dkt. 2550 (sealed); Opp'n, Dkt. 2591 (sealed); Reply, Dkt. 2629 (sealed)) | **DENIED-IN-PART** and **GRANTED-IN-PART** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                              Date    October 17, 2025

Title       Masimo Corporation et al. v. Apple Inc.

| | |
|---|---|
| Apple's Motion to Exclude Portions of Opinions and Testimony of Masimo's Experts Reed-Arthurs and Bergman (Motion, Dkt. 2533; Memo, Dkt. 2551 (sealed); Opp'n, Dkt. 2571 (sealed); Reply, Dkt. 2628 (sealed)) | **DENIED** |
| Apple's Motion for Summary Judgment on Masimo's Patent Infringement Claims (Motion, Dkt. 2537; Memo, Dkt. 2552 (sealed); Opp'n, Dkt. 2592 (sealed); Reply, Dkt. 2630 (sealed))[1] | **DENIED-IN-PART** and **GRANTED-IN-PART** |
| Masimo's Motion to Strike Portions of Apple's Expert Reports (Motion, Dkt. 2529; Memo, Dkt. 2549 (sealed); Opp'n, Dkt. 2570 (sealed); Reply, Dkt. 2626 (sealed)) | **DENIED** |
| Masimo's Motion for Partial Summary Judgment (Motion, Dkt. 2532; Memo, Dkt. 2532-2; Opp'n, Dkt. 2579 (sealed); Reply, Dkt. 2627 (sealed)) | **DENIED** |
| Apple's Request to Strike Bergman's Opinion regarding the Apparatus Claims of the '776 Patent (Apple's Supp. Brief, Dkts. 2644, 2647 (sealed); Masimo's Supp. Brief, Dkt. 2654; Apple's Supp. Reply, Dkt. 2675) | **DENIED** |

## I.    Background

Masimo accuses the Workout Mode and High/Low Heart Rate Notification features of the Apple Watch of infringing the asserted claims.  Apple's Response to Plaintiffs' Statement of Genuine Disputes ("SUF") ¶¶ 32.  The Apple Watch has other uses beyond these features.  Id. ¶ 3.

The '703 and '776 Patents, both titled "Low Power Pulse Oximeter," claim earliest

---

[1] Apple also filed objections to evidence cited in Masimo's statement of genuine disputes of material facts.  Dkt. 2618-2.  The Court resolves those objections herein only as needed to resolve the parties' motions for summary judgment.  Any objection not expressly addressed is **OVERRULED**.  Apple may revive any objection not expressly addressed herein should Masimo indicate it intends to rely on the challenged evidence at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

priority to a provisional application filed on July 2, 2001. The '776 Patent is a continuation of the '703 Patent. The two patents share a specification. At a high level, both patents relate to pulse oximeters and more specifically to efficiently managing power consumption for these devices. See '703 Patent, Abstract.

Prior art devices typically relied on "sleep modes" to reduce power consumption. Id. at 1:63-67. In a sleep mode, "circuitry is powered down when the devices are idle." Id. Using sleep modes with pulse oximeters can be disadvantageous because devices may miss measurements during sleep mode. Id. at 2:16-21. Additionally, frequent switching between active and sleep modes can be power intensive. Id. at 2:22-27.

The '703 Patent purports to disclose an alternative to sleep mode, in which a control engine outputs sampling controls to reduce the power consumption of the pulse oximeters. See id. at 5:57-59. At a high level, pulse oximeters emit light into tissue and then make physiological measurements based on the light after it has passed through the tissue. Here, sampling controls control the power to the portion of the pulse oximeters that emit and measure light. Id. at 5:38-39. Figure 4 shows an example of a low power pulse oximeter with a sampling controller:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                    Date    October 17, 2025

Title    Masimo Corporation et al. v. Apple Inc.



FIG. 4

Id., FIG. 4.  The alternative method involves several types of sampling controls.  One sampling mechanism alters power consumption by adjusting the duty cycle.[2]  Id. at 5:61-66.  Another method involves using a "data off" period in which power to the portion that emits and/or measures light is turned off.  Id. at 5:66-6:2; 7:8-13.  Another method involves reducing or eliminating overlap in the data blocks that are used to calculate the physiological measurements.  Id. at 6:2-4.  These sampling mechanisms may be used alone or in combination with each other.  See id. at 11:1-24.

Masimo alleges that Apple infringes Claims 1-2 and 5-6 of the '703 Patent.  SUF ¶ 1.  All asserted claims are method claims.  Claim 1 discloses:

---

[2] The parties agree that "duty cycle" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:20-cv-48-JVS-JDE                                    Date   October 17, 2025

Title   Masimo Corporation et al. v. Apple Inc.

> 1. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:
>
> driving one or more light sources configured to emit light into tissue of a monitored patient;
>
> receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;
>
> continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;
>
> comparing processing characteristics to a predetermined threshold; and
>
> when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level, wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue.

'703 Patent, Claim 1.

Masimo alleges that Apple infringes Claims 3, 4, and 9-14 of the '776 Patent. SUF ¶ 1. Claims 3-4 and 9-10 are method claims. Claim 1, from which claims 3-4 and 9-10 depend, discloses:

> 1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method comprising:
>
> operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources;
>
> when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;

in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources; and

when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor,

wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.

'776 Patent, Claim 1. Claim 11, from which claims 12-14 depend, is directed to a patient monitor but otherwise includes similar limitations.

## II.    Legal Standard

### A.    Summary Judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. |

Summary judgment is appropriate where the record, read in the light most favorable to the non-movant,[3] shows "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[4]; see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). The moving party bears the initial burden to demonstrate an absence of a genuine issue of material fact.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). If, and only if, the moving party meets its burden, then the non-moving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact. MEMC, 420 F.3d at 1373; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the non-moving party meets this burden, then the motion will be denied. See generally Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001). Where the parties have made cross-motions for summary judgment, each motion "must be independently assessed on its own merit." California v. United States, 271 F.3d 1377, 1380 (Fed. Cir. 2001).

## B.    Daubert Motions

Rule 702 allows expert testimony where "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  A party who plans to rely on expert testimony must disclose it and comply with the requirements of Rule 26(a)(2), including providing a written expert report.  In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592–93, 597 (1993), the Supreme Court explained that, in applying Rule 702, "the trial judge plays a 'gatekeeping role,' which 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1295 (Fed. Cir. 2015).  "The Court emphasized that the focus

---

[3] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  L.R. 56-3.

[4] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'"  Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

'must be solely on principles and methodology, not on the conclusions that they generate.'" Id. (quoting 509 U.S. at 595). "This admissibility assessment, while a flexible one, may consider the following factors: (1) whether the methodology is scientific knowledge that will assist the trier of fact; (2) whether the methodology has been tested; (3) whether the methodology has been published in peer-reviewed journals; (4) whether there is a known, potential rate of error; and (5) whether the methodology is generally accepted." Id.; see also Fed. R. Evid. 702, 703.

"Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." Summit 6, 802 F.3d at 1295. Rule 702 gives courts broad discretion to discharge their gatekeeping role. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004). "But the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." Id. at 1296. Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

## C. Supplementation and Exclusion

"Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or correct, among other things, responses to discovery requests 'in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" Jones v. Travelers Cas. Ins. Co. of Am., 304 F.R.D. 677, 678–79 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "The parties are expected to supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel or an order from the Court." Id.

"In addition, Rule 37 mandates that a party's failure to comply with the obligations under Rule 26(e)(1) results in that party being precluded from 'use [of] that information . . . to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless.'" Id. (quoting Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1) is 'self-executing' and 'automatic.'" Id. (quoting Yeti by Molly Ltd v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                    Date    October 17, 2025

Title    Masimo Corporation et al. v. Apple Inc.

Although appellate courts "review every discovery sanction for an abuse of discretion," those courts "give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)."  Yeti by Molly, 259 F.3d at 1106; see also Hoffman v. Constr. Prot. Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming district court's order excluding undisclosed damages evidence).

## III.    Discussion

### A.    Masimo's Daubert Motion to Exclude Apple Experts (Dkt. 2522)

#### 1.    Carter and Raja's Opinions about the "Patient Monitor" Limitation

Carter is a firefighter and paramedic.  Carter Rebuttal Report, Docket No. 2548-1 ¶ 11.  Raja is a practicing physician.  Raja Rebuttal Report, Docket No. 2548-2 ¶ 12).  Both provide opinions about the plain and ordinary meaning of the terms, "patient monitor," "patient monitoring," "patient," and "monitored patient."  Carter Rebuttal Report, Docket No. 2548-1 ¶ 3; Raja Rebuttal Report, Docket No. 2548-2 ¶ 3.  The Court did not construe these terms.  The parties agree these terms have their plain and ordinary meaning to a person having ordinary skill in the art ("POSITA").  See Motion at 8; Opp'n at 2.  Here, Apple contends that a POSITA has at least a bachelors degree in electrical, computer, or software technologies, as well as at least one year of related work experience.  See Motion at 3.

"To offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art."  Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n, 22 F.4th 1369, 1376–77 (Fed. Cir. 2022).  "Without that skill, the witness' opinions are neither relevant nor reliable."  Id.; see also Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1362 (Fed. Cir. 2008) ([a]dmitting testimony from a person . . . with no skill in the pertinent art[] serves only to cause mischief and confuse the factfinder.")

The parties agree that neither Carter nor Raja are POSITAs.  Motion at 6; Opp'n at 9.  Carter and Raja themselves admit they are not POSITAs.  Deposition of Bryan Carter, Docket No. 2548-3 at 27:4-28:8; Deposition of Ali Shabaz Raja, M.D., Docket No. 2548-4 at 14:23-18:21.  Apple's other technical experts agree.  Deposition of Patrick Mercer, Ph.D., Docket No. 2548-6 at 36:8-10; Deposition of Steven Warren, Ph.D. at 34:11-22.  Courts exclude the opinions of non-POSITAs regarding claim construction, non-infringement, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                      Date    October 17, 2025

Title    Masimo Corporation et al. v. Apple Inc.

invalidity opinions. See, e.g., Extreme Networks, Inc. v. Enterasys Networks, Inc., 395 F. App'x 709, 715 (Fed. Cir. 2010) (affirming exclusion of expert lacking specific "experience and skill . . . necessary to resolve patent issues"); Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351, 1360–61 (Fed. Cir. 2006) (similar). Carter and Raja may not opine on these topics.

Apple argues that Carter and Raja do not offer claim construction opinions. Opp'n at 9. Apple further argues that Carter and Raja will not offer opinions from the perspective of POSITAs on power management issues and will instead "testify on the discrete medical/factual question of why Apple Watch's physiological sensing capabilities are insufficient to make them 'patient monitors." Id. Apple's arguments are not persuasive. Testimony as to why the Apple Watch is not a patient monitor is claim construction and non-infringement testimony. An opinion that the Apple Watch cannot be a patient monitor due to insufficient physiological sensing capabilities both interprets the term "patient monitor" and applies that interpretation to the accused products. Only POSITAs can reliably perform this analysis. Apple cites no binding authority that allowing a non-POSITA to testify as to claim construction or non-infringement is acceptable.

For the forgoing reasons, the Court **GRANTS** Masimo's motion as to Carter and Raja. They may not testify as to either claim construction or non-infringement.

        2.      Mercier and Warren's Opinions about the "Patient Monitor" Limitation

For the reasons stated above, Mercier and Warren's opinions are improper to the extent they rely on the improper opinions of Carter and Raja. As to the "patient" portion of the term, Mercier and Warren's opinions comport with the Court's clarification, discussed herein. See § III.C.1, infra. One issue remains. The parties dispute whether Mercier and Warren's opinions that a "patient monitor" cannot miss events improperly narrows the claim scope. See Motion at 9-10; Opp'n at 3-4.

The specification and statements made during Patent Trial and Appeal Board ("PTAB") proceedings support Apple's position that the claimed "patient monitor" must capture important medical events. For example, the '703 Patent discloses that, "[u]nlike consumer electronics, pulse oximetry cannot afford to miss events, such as patient oxygen desaturation." '703 Patent at 2:20-21. Within the context of the specification, this statement distinguishes high performance, power intensive clinical devices from typical consumer devices having a sleep mode. Id. at 1:61-67. The disclosed solution is a power management

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                                    Date    October 17, 2025

Title    Masimo Corporation et al. v. Apple Inc.

method that reduces power needs without compromising device performance in the way that prior methods, like sleep mode, would. Though the specification does not definitively say that the claimed "patient monitor," which is not necessarily a pulse oximeter, can never miss an event, the distinction between prior art consumer devices using sleep mode and clinical devices suggests that the claimed patient monitor must perform at a level like a clinical device would in terms of event capture. The statements made during the *Inter Partes* Review ("IPR") proceeding are consistent with this understanding. Docket No. 2582-3 at 23:20-24:3 (explaining that parameters change to lower power consumption without the monitor missing critical events). Expert testimony also supports this understanding. 30(b)(6) Deposition of Ammar Al-Ali, Docket No. 2588-1 at 61:7-8 (confirming that a patient monitor cannot miss events).[5] Thus, Mercier and Warren may testify about whether the Apple Watch does or does not miss events and whether its performance is more like the prior art "sleep mode" consumer devices or a high performance clinical device. Warren and Mercier may not testify that only a device with a 100% capture rate meets the claim limitations, as that is not supported by the intrinsic record.

Accordingly, Masimo's Motion is **DENIED** on this issue.

3.    Mercier and Warren's Opinions about the "Processing Characteristics" Limitation

Masimo objects to Mercier and Warren's opinions about the "processing characteristics" limitation of the Asserted Patents as contrary to the Court's claim construction ruling. Motion at 11-12. Specifically Masimo objects to Mercier's opinion that "Apple's ███████████ are not 'processing characteristics' because they are determined from detected optical sensor signals but also partly from 'data generated by the Apple Watch's ████████████. Id. (citing Mercier Rebuttal Report, Docket No. 2548-5 ¶¶ 404-11, 466-72, 533-39, 581-87, 651-60, and 705-14). Masimo objects to Warren's opinion that "'processing characteristics' cannot be determined from detected optical sensor signals and ██████████████████' Id. at 12 (citing Warren Opening Report, Docket No. 2548-7 ¶¶ 511, 628, 743, 810, 908, and 1006; Warren Reply Report, Docket No. 2548-9 ¶¶ 187-88).

---

[5]    Apple also cites the Dkt. 2548-12 [Madisetti Rebuttal] ¶ 1484. Opp'n at 13. Madisetti's Rebuttal Report only goes up to ¶ 1087.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

The Court construed "processing characteristics" to mean "characteristics determined from a signal received from one or more detectors configured to detect light." Order Regarding Claim Construction, Docket No. 2390 at 10.  The Court declined to adopt Apple's proposed parenthetical specifying that "the only signal received and processed in the claimed patent monitor" is the "signal received from one or more detectors configured to detect light" as unnecessary. Id. at 9.  In reaching its decision, the Court stated that it understood Apple to argue that "the light detectors are the sole source of the signals that are received and processed." Id.  The Court went on to state that a product could not escape infringement if it also received and processed non-light signals, in addition to light signals. Id.  The characterization of Apple's parenthetical as unnecessary is inconsistent with this statement.  Either the light detectors are the sole source of the signals or they are not.  The Court must clarify whether the light detectors are the sole source of the signals.

The "sole" language comes from the Federal Circuit decision.  There, the Federal Circuit explained that light signals "represent the only signal received and processed in the claimed patient-monitoring invention."  Apple Inc. v. Masimo Corp., No. 2022-1890, 2024 WL 137336, at *3 (Fed. Cir. Jan. 12, 2024).  It further held that, "[t]hroughout the specification, 'processing characteristics' are described as being determined based on the signals received from the light detectors, the sole source of signals that are then processed." Id. (citing '703 Patent at 5:11–23, 5:40–48, Figs. 3 & 4).  It then affirmed the Patent Trial and Appeal Board ("PTAB") construction for "processing characteristics," which the Court adopted here in its claim construction order.  The adopted construction does not include the words "sole" or "only."

The Federal Circuit's statements emphasize that the processing characteristics must be based on light signals, as the specification does not disclose any other signals on which the processing characteristics could be based.  At first glance, they also appear to limit the claim scope to only light signals.  However, the context for the Federal Circuit's ruling is important.  The Federal Circuit considered a challenged PTAB ruling that addressed whether Amano, a prior art reference, invalidated the claims at issue.  Amano disclosed determining processing characteristics based only on accelerometer data and not at all based on light signals.  Thus, the Federal Circuit ruling addressed whether the processing characteristics must be based on light signals, as opposed to some other type of signal or data.  The Federal Circuit did not address whether the signal could be based on light signals and other inputs.  Therefore, the Court declines to expand the Federal Circuit's statement to this unaddressed issue.  Though the claims and specification focus on light signals, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

disclose only light signals, there is no basis to exclude additional inputs. Accordingly, the Court's prior statement that, "to the extent an accused product determines characteristics from a signal received from a light detector (whether or not it also receives and processes other types of signals), the product would infringe the limitation at issue," remains correct. Order Regarding Claim Construction, Docket No. 2390 at 9. The Court interprets the "sole" language as emphasizing that the "processing characteristics" must be based on light signals but not as a negative limitation excluding additional signals.

Here, Mercier and Warren opine that certain characteristics are not "processing characteristics" because they are determined from both detected optical sensor signals and ███████████████████████ This not consistent with the construction for the term, "processing characteristics," as clarified above. For this reason, the Court **GRANTS** Masimo's motion at to the objected to portions of Mercier and Warren's testimony. Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury.")

### 4.    Warren and Webster's Opinions about Licenses

Masimo asks the Court to exclude Warren and Webster's opinions relying on certain agreements as part of a reasonable royalty analysis. Motion at 14. Masimo argues these licenses are not comparable to the hypothetical negotiation. See id. Apple argues that the degree of comparability is a fact issue that does not warrant outright exclusion. See Opp'n at 15.

"Assessing the comparability of licenses requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc., 967 F.3d 1353, 1372–73 (Fed. Cir. 2020) (citing Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 79 (Fed. Cir. 2012). When the licenses an expert consults pass this comparability threshold, "[t]he degree of comparability" is a fact issue, "best addressed by cross examination and not exclusion." ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1333 (Fed. Cir. 2012) (internal citation omitted). When the license fails the comparability threshold, the appropriate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

remedy is exclusion.  See, e.g.,  MLC Intell. Prop., LLC v. Micron Tech., Inc., 10 F.4th 1358, 1366–67 (Fed. Cir. 2021).

First, the Patent Security Agreement that Webster relies upon is not economically comparable.  The parties to that agreement were not situated in the same way that the parties to this action were situated at the time of the hypothetical negotiation.  See Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1329 (Fed. Cir. 2009).  Webster admitted the agreement is not comparable.  Deposition of Shirley Webster, Docket No. 2548-14 at 103:4-6.  Apple indicates Webster does not rely on this agreement as comparable but rather intends to use it only to corroborate valuation as to the '703 Patent.  Opp'n at 18.  Given the differences here, the agreement is not reliable for this purpose.  The Court **GRANTS** Masimo's motion as to this agreement.  However, this does not eliminate Webster's reasonable royalty opinion as the agreement was only used to corroborate, but not supply, the determined royalty.

Second, the five Apple agreements meet the threshold level of comparability needed to be admissible at trial.  Webster opines that the Apple agreements are economically comparable at least because they are not settlement agreements, they were not entered into under threat of litigation, and because the parties to the licenses were not competitors at the time of the licenses. See, e.g., Expert Rebuttal Report of Shirley Webster, Docket No. 2548-13 at 119.  Webster acknowledged the fact that these agreements were freedom to operate agreements.  Masimo argues that the agreements are not sufficiently comparable because Apple did not intend to actually use the technologies covered in the agreements.  See Reply at 19.  Still, a freedom to operate agreement would allow Apple to use covered technologies without triggering an infringement lawsuit.  At the time of the hypothetical negotiation here, Apple was interested in collaborating with Masimo to use the kinds of technology Masimo developed in Apple's consumer devices.  Thus, the parties were situated similarly enough to allow Webster to discuss the agreements at trial.  Masimo may cross examine Webster regarding differences between Apple's goals in entering into the agreements and Apple's goals at the time of the hypothetical negotiation. The Court **DENIES** Masimo's motion as to the five Apple licenses.

## 5.    Mercier and Webster's Opinions about Alternatives

Masimo argues that Mercier's opinions that (1) ███████ and (2) reducing the maximum LED rate from ███████████ are alternatives are unreliable.  Motion at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

Here, the parties primarily dispute whether the expert offering the alternative must show that the alternative was available at the time of the hypothetical negotiation. The standards for introducing an alternative for purposes of establishing a reasonable royalty are less stringent than the standards for introducing an alternative in the lost profits context. Salazar v. HTC Corp., 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) (collecting Federal Circuit caselaw and explaining that "'acceptable non-infringing alternatives' don't play the same role in a reasonable-royalty determination.") Still, in the reasonable royalty context, courts typically require some showing that the alternative at least could have been available at the time of the hypothetical negotiation. WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC, 2022 WL 2773292, at *7 (M.D. Fla. May 23, 2022); see also Puff Corp. v. SHO Prods., LLC., 2024 WL 2208929, at *13 (C.D. Cal. Apr. 19, 2024) (citing AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1340 (Fed. Cir. 2015)). Apple has not met its burden to show either alternative could have been available at the time of the hypothetical negotiation. Accordingly, the Court **GRANTS** Masimo's motion.

### B.    Apple's Motion to Strike Undisclosed Opinions of Madisetti, Bergman, and Reed-Arthurs (Dkt. 2528)

Apple challenges two opinions that it contends Madisetti disclosed for the first time in his reply expert report. <u>See generally</u>, Motion. Apple also asks the Court to strike the opinions of Reed-Arthurs and Bergman relying on the challenged opinions from Madisetti. <u>Id</u>. at 4.

### 1.    Opinions about Extent of Use of Patented Methods

Apple argues that the Court should strike certain opinions in Madisetti's Reply Expert Report concerning the extent of use as not disclosed in Madisetti's Opening Report. Motion at 3-4.

In his Opening Expert Report, Madisetti opined that Apple used the accused features of the Apple Watch by preparing advertisements using them and testing them. Madisetti Opening Expert Report, Dkt. 2550-1 ¶¶ 165 and 171. These portions of his report expressly mention the heart rate feature but not Workout Mode. Madisetti also testified that at least one user of each accused Apple Watch product enabled the Heart Rate Notification feature. Id. ¶ 175. Madisetti also cited ███████████████████████████████████ ███████████████████. Id. ¶ 209. This portion of the report discusses use of the Apple

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. |

Watch during workouts and also ███████████████████████████████.
Id. at 209-210.  Madisetti also opined that ██████████████
███████████████████████████████. Id. ¶ 160.  In his Reply Expert Report, Madisetti cites
████████████████████████████████████████
███. Madisetti Reply Expert Report ¶¶ 371-72.  He also cites
████████████████████████████████████████████
███. Id. ¶¶ 401-02.  Madisetti also opined that nearly all accused Apple Watch products
infringe the asserted method claims, for both Workout Mode and the Heart Rate Notification
feature.  Id. ¶ 368.

Madisetti's opinions in his reply report do not significantly diverge from the opinions
disclosed in his opening report.  He simplify expands his discussion of the data.  However,
his conclusion that nearly all accused products infringe is not supported by his opening
report.  Accordingly, the Court declines to limit Madisetti's opinion to only the instances
of use discussed in the Motion.  However, the Court finds it appropriate to strike the "nearly
all" opinion.

      **2.**      **Opinions about whether Doctrine of Equivalents Theories Depend upon Apple's Arguments**

Apple argues that Madisetti's Reply Expert Report walked back Madisetti's framing
of certain doctrine of equivalents ("DOE") theories as dependent upon infringement theories
that Apple could advance.  Motion at 7-8.  Apple objects to Madisetti's contention that these
are "standing" theories and argues that these DOE theories should be struck because Apple
did not raise the infringement theories upon which they depend.  Id.

Apple challenged four of the DOE theories Madisetti presented in his opening expert
report.  Madisetti Opening Expert Report, App'x 1A, Dkt. 2550-7 at 66, 91; Madisetti
Opening Expert Report, App'x 1B, Dkt. 2550-8 at 120, 158.  The language, "to the extent
that Apple argues [infringement theory], the Apple Watch also infringes under the doctrine
of equivalents" precedes each of the challenged theories.  Id.  Madisetti referenced these
same DOE theories in his reply expert report but omitted the conditional language.
Madisetti Reply Expert Report, Dkt. 2550-2 ¶¶ 499, 557, 659, 718, and 862.

Madisetti's phrasing suggests that Masimo intended to advance these theories only
if Apple intended to advance certain infringement theories.  Apple did not advance the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. |

identified infringement theories and, consequently, did not prepare any expert response to the challenged theories.  At this late stage in the case, it would be improper to allow Masimo to proceed on the challenged DOE theories.  Apple relied on Madisetti's characterization of these theories as conditional to its detriment.  Allowing the theories would prejudice Apple as Apple has no response.  Liberty Insurance Corp. v. Brodeur, 41 F.4th 1185, 1192 (9th Cir. 2022).  For at least this reason, the Court excludes the challenged DOE theories.

The Court **DENIES** Apple's motion as to the extent of use issue but **GRANTS** Apple's motion as to the challenged DOE theories.

## C.  Apple's Motion for Summary Judgment (Dkt. 2537)

### 1.  Non-Infringement

Apple argues that the Apple Watch does not infringe either asserted patent for two reasons: (1) the accused features use non-light detector inputs to determine whether to change duty cycles; and (2) there is no evidence that the claims were performed on "a patient" in the United States.  See generally, Motion.  Apple also argues that Madisetti's conditional DOE theories of infringement should be struck.  Id. at 11-12.  Apple further argues that Masimo cannot establish contributory infringement because the Apple Watch has non-infringing uses.  Id. at 12-13.

Non-light Detector Inputs.  In view of the ruling on Masimo's motion to strike, above, Apple's argument does not present a basis to grant summary judgment of non-infringement. See § III.A.3, supra.  The "processing characteristics" limitation requires that the processing characteristics be based on a light signal but does not exclude other signal inputs.  Id.

On a Patient.  All asserted claims of the '703 Patent and claims 3-4 and 9-11 of the '776 Patent require either measuring physiological parameters of a patient or monitoring a pulse rate of a patient.  '703 Patent, Claims 1-2 and 5-6; '776 Patent, Claims 3-4 and 9-10.[6] Apple argues that the Court should grant summary judgment of non-infringement because Masimo fails to proffer any evidence that the Apple Watch was used in the U.S. to measure

---

[6] Claims 11-14 of the '776 Patent are directed to a "patient monitoring" device but also use the term "patient."  The construction determined here applies equally to these claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

or monitor a patient. Motion at 9. Masimo argues summary judgment is improper because the parties dispute the plain and ordinary meaning of "patient." Opp'n at 7.

The Court did not construe the term, "patient." Plain and ordinary meaning applies. Here, Apple does not seek a belated construction for the term patient. Rather, Apple applies the plain and ordinary meaning of the term: "a person receiving care from a medical professional." Motion at 3.[7] Apple object's to Madisetti's opinion equating "patient" with "person." The patentee chose to use the term, "patient," as opposed to a broader term such as, "user," or "person." Madisetti's definition nullifies the choice to use the term, "patient." See, e.g., '703 Patent at 2:20-21 (distinguishing "consumer electronics" from the focus of the patent). No reasonable jury could find otherwise and, in any event, resolving a material claim construction dispute is not a task for the jury.[8] O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("In this case, the 'ordinary' meaning of a term does not resolve the parties' dispute, and claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit.") Moreover, the broader definition Masimo advances appeared for the first time in Madisetti's reply brief. Madisetti Reply Expert Report, Dkt. 2552-4 ¶ 192 (defining "patient" as "person"). This is untimely. Accordingly, the Court does not find persuasive Masimo's position that there is a factual dispute as to the plain and ordinary meaning of "patient." The only remaining question is whether Masimo proffers any evidence that the Apple Watch was used on "patients," within the meaning of the Asserted Patents.

Here, there is at least a fact issue as to whether use of the Apple Watch infringes the claimed methods because Masimo proffers evidence that the Apple Watch has been used in clinical settings. It is undisputed that "Apple maintains a "Healthcare" website for use by doctors with the tagline: 'Apple Watch. Empowering your patients to live a healthier day.'"

---

[7]     At the hearing, Masimo asked that the Court include the qualifier, "when necessary." The Court finds it unnecessary to include this qualifier. Patients need only be individuals receiving care from a medical professional. Patients need not be physically present at a medical office to qualify as patients.

[8]     Masimo's argument that "patient" is a non-limiting use is also unpersuasive because the claims at issue here are method claims, not device claims, and because the term "patient" appears throughout the claims instead of just in the preamble. The question is whether all steps of the claimed method are performed. The fact that a device may be used in a way that infringes the claimed method in some situations but not others does not support the broad construction for "patient" that Masimo advances.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

SUF ¶ 70. Apple characterizes the Apple Watch as a device that would be useful and reliable in clinical settings. Id. However, the statements on the website do not establish that a clinician has actually used the Apple Watch for such purposes. It is further undisputed that Apple's marketing materials reference use of the Apple Watch in clinical settings. Id. ¶ 71. Apple does not dispute the substance of these statements. Id. ¶ 21. Rather, Apple responds that the mere appearance of the word "patient" in written materials is insufficient evidence of use. Id. However, the marketing materials represent that the Apple Watch was actually used in a clinical setting. See, e.g., Dkt. 2552-17 at 7 ("describing Apple Heart Study, which uses 'user data detected via Apple Watch,' as 'continuous-style monitoring of patients in a relatively unobtrusive way that will allow us to detect a change in a patient status before they end up actually coming into hospital'"). Similarly, Perez, an expert witness for Apple and doctor, testified that he uses the Apple Watch as part of his medical practice. Perez Depo. Tr., Dkt. 2592-11 at 42:7-12. Apple also responded that the evidence proffered by Masimo did not specifically identify the "Workout or High/Low Heart Rate Notification" features of the Apple Watch, which are the accused features here. SUF ¶ 21. However, Perez testified that the data he used included the patients' heart rate and ECG. Perez Depo. Tr., Dkt. 2592-11 at 42:7-12. Thus, based on the evidence identified by Masimo, including the evidence discussed here, there is at least a fact issue as to whether the accused features of the Apple Watch have been used in clinical settings to monitor or measure patients. See SUF ¶¶ 71-74.

For the foregoing reasons, Apple's arguments do not present a basis to grant summary judgment of non-infringement.

DOE Theories. The Court **GRANTS** Apple's motion for summary judgment of no infringement under the four challenged DOE theory for the reasons stated above. See § III.B.2, supra.

Contributory Infringement. The parties dispute whether, for purposes of assessing contributory infringement, the relevant item is the Apple Watch or the accused features. Motion at 12. An accused infringer is not liable for contributory infringement if the relevant item has substantial noninfringing uses. Koninklijke Philips N.V. v. Zoll Med. Corp., 656 F. App'x 504, 524 (Fed. Cir. 2016). Identifying the relevant item requires determining whether the infringing component is "separate and distinct" from other components of the whole product. Id. (internal citations and quotations omitted). The Federal Circuit is "fairly liberal in finding the accused components separate." Id. (internal citations and quotations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. |

omitted). Here, the Workout Mode and High/Low Heart Rate notification features of the Apple Watch are separate and distinct from other components of the watch. Like the software package at issue in <u>Lucent</u>, the Apple Watch has a variety of tools, including many tools that could be protected or offered independent of the watch. <u>See Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Thus, for purposes of assessing contributory infringement, the analysis should focus on the accused features. As to the asserted device claims (Claims 11-14 of the '776 Patent), Apple's arguments do not present a basis to grant summary judgment of no contributory infringement.

However, as to the asserted method claims (Claims 1, 2, and 5-6 of the '703 Patent and Claims 3-4 and 9-10 of the '776 Patent), there is a problem. Even focusing on just the accused features, there are substantial non-infringing uses. Because of the way the method claims were drafted, infringement occurs only when the Apple Watch is used to measure or monitor a patient. <u>See</u> § III.C.1, <u>supra</u>. As discussed above, a patient is not any person or user of the Apple Watch but rather someone under professional medical care. <u>Id</u>. Thus, personal use of the accused features of the Apple Watch are substantial non-infringing uses.

For the foregoing reasons, the Court **DENIES** Apple's motion of no contributory infringement as to the device claims but **GRANTS** Apple's Motion as to the method claims.

## 2.    Issues related to Intentional Infringement or Copying

Given the absence of dispute, the Court **GRANTS** Apple's motion for summary judgment as to the copying issue. See Opp'n at 16; Reply at 12.

The evidence Masimo relies upon is insufficient to support a claim of pre-suit willfulness.[9] Willful infringement requires infringement on purpose. <u>SRI Int'l, Inc. v. Cisco Sys., Inc.</u>, 14 F.4th 1323, 1330 (Fed. Cir. 2021). To prove willfulness, the patentee must show that the accused infringer knew of the asserted patents and knew or should have known that its acts risked infringement. <u>See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.</u>, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

---

[9]    There is at least a fact issue as to post-suit willfulness here because Masimo's complaint identified the asserted patents and alleged a specific charge of infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                                      Date    October 17, 2025

Title    Masimo Corporation et al. v. Apple Inc.

It is undisputed that Apple tore down products that Masimo contends were marked with the '703 Patent.  SUF ¶ 45.  It is also undisputed that Apple hired Masimo employees to develop Apple products.  SUF ¶ 36.  The fact that Apple tore down products marked with the '703 Patent establishes that Apple could have known of the '703 Patent.  It does not establish that Apple did in fact know of the '703 Patent.  Thus, there is potentially a fact issue as to knowledge of the patent, which a claim for willfulness requires.  However, even if Apple did know of the '703 Patent, the fact that Apple hired Masimo employees does not prove that Apple knew its development of its own products constituted an obvious risk of infringement.  It would depend on exactly what the Masimo employees were hired to do.  At most the facts suggest that Apple was interested in Masimo and the technologies Masimo was developing.  The facts do not suggest that Apple knew of the '703 Patent and intended to violate Masimo's intellectual property rights by infringing that specific patent.

Though the legal standards for inducement and willfulness differ in some ways, both claims require knowledge of the asserted patent.  Induced infringement also requires knowledge that the induced acts constitute infringement.  Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011).  For the reasons above, the evidence Masimo proffers is insufficient to support a jury finding that Masimo both knew of the '703 Patent and of its infringing acts.

Accordingly, the Court **GRANTS** Apple's motion for summary judgment of no pre-suit willful or induced infringement.

### 3.    Damages

No Pre-suit Damages.  The parties agree that Masimo does not claim pre-suit damages for the '776 Patent. Motion at 17; Reply at 16.  As to the '703 Patent, the parties appear to agree that Masimo did not provide actual notice.  Id.  The only remaining question is whether Masimo complied with the marking statute as to certain third-party products incorporating Masimo's original equipment manufacturer ("OEM") boards.  Id. at 18.

Persons making, offering, and selling patented articles in the United States may notify the public that the articles are patented by "marking" the articles with the applicable patent number.  35 U.S.C. § 287.  To recover pre-suit damages, the patentee must either comply with the marking statute or provide actual notice of infringement to the infringing party.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:20-cv-48-JVS-JDE                          Date   October 17, 2025

Title      Masimo Corporation et al. v. Apple Inc.

Compliance with the marking statute is a question of fact.  <u>Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.</u>, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  An alleged infringer who challenges compliance with the marking statute at summary judgment "bears an initial burden of production to articulate the products it believes are unmarked 'patent articles' subject to § 287."  <u>Arctic Cat</u>, 876 F.3d at 1368.  "[T]his is a low bar."  <u>Id.</u>  "[T]he patentee bears the burden of pleading and proving he complied with § 287(a)."  <u>Id.</u> at 1367 (citing at <u>Maxwell v. J. Baker, Inc.</u>, 86 F.3d 1098, 1111 (Fed. Cir. 1996)).  Products may be marked virtually.  <u>Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC</u>, 397 F. Supp. 3d 560, 577 (D. Del. 2019) (citing 35 U.S.C. § 287) (internal markings omitted).

"[W]hen third parties are involved, the number of [articles] sold without proper marking is not conclusive of the issue whether the patentee's marking was 'substantially consistent and continuous.'"  <u>Maxwell</u>, 86 F.3d at 1111.  "When the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements."  <u>Id.</u> at 1111-12.  Some courts have reasoned that making reasonable efforts "could be as simple as 'a contractual provision requiring marking.'"  <u>Adrea, LLC v. Barnes & Noble, Inc.</u>, No. 13-CV-4137 JSR, 2015 WL 4610465, at *2 (S.D.N.Y. July 24, 2015) (quoting <u>K & K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.</u>, 52 F. App'x 135, 141 (Fed. Cir. 2002)).  Typically, though, a plaintiff would also need to show it took some steps to ensure that the licensees actually complied with such a provision.  <u>See K&K</u>, 52 F. App'x at 141.

Here, the alleged failure to mark is on the part of the third-party OEMs.  Masimo may survive summary judgment by showing there is at least a fact issue as to whether it made reasonable efforts to ensure third-party compliance.  It is undisputed that Masimo's Purchase and License Agreements with its OEMs ("OEM Agreements") ████████████ ███████████████████.  SUF, Dkt. 2630-1 ¶ 81.

████████████████████████████████████████████████████████████████████
At his deposition, Muhsin, testified that he was ██████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████  Muhsin Depo. Tr., Dkt. 2552-12 at 32:20-33:3.  The other documents that Masimo cites include ████████████████████████████████

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
| Title | Masimo Corporation et al. v. Apple Inc. | | |

██████. See SUF, Dkt. 2630-1 ¶¶ 83 and 87.[10] ████████████████
███████████████████. Dkt. 2592-17 at 828. It does not describe any steps that Masimo took █████████████████████████████████████.

The parties also dispute whether it is sufficient for Masimo to mark component parts of its products that are later incorporated into the product sold by the third parties. To the extent the marking is not visible, this is not sufficient. See Glob. Traffic Techs. LLC v. Morgan, 620 F. App'x 895, 905 (Fed. Cir. 2015); Juno Mfg., LLC v. Nora Lighting, Inc., 2015 WL 11438613, at *5 (C.D. Cal. Aug. 13, 2015). Masimo does not argue or present any evidence that the marking is visible or otherwise sufficient.

For at least these reason, the Court **GRANTS** Apple's motion for summary judgment of no pre-suit damages for either asserted patent.

No Damages for Unaccused Uses. The Federal Circuit has moved away from the rigid analysis warranted by the unique circumstances in Cardiac Pacemakers. Compare Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 576 F.3d 1348, 1359 (Fed. Cir. 2009) (holding that plaintiffs "can only receive infringement damages on those devices that actually performed the patented method during the relevant infringement period") with Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1334 (Fed. Cir. 2009) ("[W]e have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence.") The Federal Circuit explained that such rigidity does not reflect the realities of negotiating a license when the value of a patented technology is not necessarily tied to its actual use and where monitoring usage can be too expensive. Lucent, 580 F.3d at 1334. Still, "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers." Id.; see also Packet Intel. LLC v. NetScout Sys., Inc., 965 F.3d 1299, 1314–15 (Fed. Cir. 2020) (explaining that plaintiffs "cannot simply count sales of the software accused of infringing" the asserted patents as sales of the methods claimed in those patents and must instead, "produce evidence that the claimed method was actually used"). In sum, though the law does not require rigidity, evidence of actual use is not optional.

---

[10] Apple also argues that several documents should be struck as untimely. The Court need not reach this issue given the rulings herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

The Federal Circuit excluded an expert report that both failed "to explain why a royalty based on use of the method would be impractical" and included all device sales "even though it was undisputed that not all of those sold devices had been used to practice the claimed method." Niazi Licensing Corp. v. St. Jude Med. S.C., Inc., 30 F.4th 1339, 1357 (Fed. Cir. 2022). The Federal Circuit faulted the expert for failing to rely on any evidence "that estimated the amount or percentage of sold devices that were actually used to infringe the claimed method." Id.

Here, it is undisputed that Bergman calculated a per-unit reasonable royalty for the '703 Patent. SUF ¶ 75. Bergman testified that he did not account for only those Apple Watches that were actually used to perform the claimed method in the royalty base but did account for it in the rate. Dkt. 2552-15 at 90:3-9. He testified that he used "all units sold" in the base. Id. The testimony alone is not dispositive. As Bergman explains, "it's also difficult to divorce the base from the rate." Id. at 93:22-23. As to the High/Low Heart Rate Notification feature, Bergman explained that he apportioned based on the expected value of use, i.e., whether surveys respondents indicated that they would use the feature. Id. at 240:17-241:3. Bergman also responded that he used Apple's data on battery usage to estimate the amount of use of the accused features. Id. at 244:20-245:8.

The apportionment Bergman discussed during his deposition is insufficient. Here Bergman did attempt to estimate the amount of devices that would have used the infringing features. However, it is unclear whether he accounted for non-infringing uses of those features. As explained above, because of the way the method claims were drafted, measuring or monitoring a patient is required. Uses that do not involve a patient are not infringing uses. An apportionment would also need to account for these non-infringing uses. Apple requests summary judgment of no damages. Reply at 22. However, the briefing reads as a Daubert motion to strike Bergman's reasonable royalty opinion for failure to apportion. Striking an expert report does not automatically foreclose any damages position. Accordingly, the Court **STRIKES** Bergman's reasonable royalty opinion for failure to apportion out non-infringing uses but does not grant summary judgment of no damages. The decision to strike Bergman's reasonable royalty opinion pertains only to the challenged method claims. Challenges to Bergman's opinion regarding the device claims are addressed below. See § III.G.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|----------|--------------------|------|------------------|

| Title | Masimo Corporation et al. v. Apple Inc. |
|-------|------------------------------------------|

D.    **Apple's Motion to Exclude Portions of Opinions and Testimony of
Masimo's Experts Reed-Arthurs and Bergman (Dkt. 2533)**

Masimo's damages expert, Reed-Arthurs, prepared a survey to determine the consumer value of the allegedly infringing Apple Watch features. Motion at 3. Apple argues the Court should exclude the survey because it is flawed in two respects: (1) Reed-Arthurs assumes the only alternative to the accused heart rate notification features is no heart rate notification feature, as opposed to an earlier, non-accused version and (2) the survey's descriptions of both the accused heart rate notification feature and Workout Mode are misleading and overbroad. Id. at 9. Masimo argues that Reed-Arthurs did not include the non-accused version in reliance on Masimo's technical expert's opinions that the version was not an acceptable alternative. Opp'n at 2. Masimo further argues that there is support for Reed-Arthurs' descriptions that makes exclusion inappropriate. See id. at 4-7.

First, the appropriateness of Reed-Arthurs' decision to eliminate the non-accused version of the heart rate notification feature is a question of fact. The parties dispute whether the unaccused version is an acceptable non-infringing alternative. They agree that Apple Watches with the non-accused version of the feature were sold but Masimo contends Apple soon discarded the non-accused heart rate feature ██████████████████████████ ███████████████████. Motion at 10; Opp'n at 2. Masimo argues that Apple later introduced an accused version of the heart rate notification feature that used █████████ to mitigate this issue. Id. at 3. Thus, the solution to the technically unacceptable feature, in Masimo's view, involved infringing the Asserted Patents. Id. Masimo contends that any workable heart rate notification feature would infringe. Because there was a basis for Reed-Arthurs to determine the unaccused version was not the next best alternative to the claimed invention, and in fact there was no next best alternative, her survey is not unreliable. See Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1394 (Fed. Cir. 2003) (declining to exclude where expert testimony was based on the plaintiff's version of disputed facts regarding whether alternatives were "available"). Whether Reed-Arthurs was correct to eliminate the non-accused version and the affect that decision had on the survey are appropriate issues for cross examination. The Court declines to exclude the survey in its entirety.

Second, the accuracy and scope of Reed-Arthurs' descriptions of the accused features also goes to weight instead of admissibility. The parties dispute whether "fixed" versus

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

"dynamic" are appropriate labels and whether the background and heart rate notification features can be separated. Motion at 11-12; Opp'n at 5-6. Masimo and Apple dispute whether the "background tracking" and "High/Low Notification" features are in fact separate. Id. They also dispute whether the "fixed" and "dynamic" labels led consumers to gravitate toward "dynamic" features. Id. The appropriateness of the labels and descriptions are issues of disputed fact that can be explored on cross examination. Because there is support for the labels and descriptions, these decisions do not render the survey unreliable. Apple also argues that Reed-Arthurs treats accurate heart rate monitoring as a binary instead of presenting it as a tradeoff with battery life. Motion at 12. As discussed above, Reed-Arthurs relies on Masimo's position that the accused features could not be offered without the power management techniques claimed in the Asserted Patents, which is a disputed fact issue. Masimo further argues that Apple would not have been willing to compromise battery life. Opp'n at 7. Again, there are disputed fact issues here and exclusion is not warranted.

Apple also objects to Bergman's testimony as relying on the survey. As discussed above, the Court will not exclude the survey in its entirety but Apple may cross examine Reed-Arthurs about it. Similarly, Apple may cross examine Bergman about any flaws in Reed-Arthurs' survey and how those issues affected his analysis.

For the foregoing reasons, the Court **DENIES** Apple's Motion.

**E.    Masimo's Motion to Strike Portions of Apple's Expert Reports (Dkt. 2529)**

Masimo argues that the Court should strike several portions of Apple's expert reports regarding invalidity because these portions express new theories not disclosed in Apple's invalidity contentions. See generally Motion.

Given the purpose behind contention disclosure requirements, it is well settled that "'a party may not use an expert report to introduce new . . . theories . . . not disclosed'" in the party's contentions. Finjan, Inc. v. Sophos, Inc., No. 14-CV-01197-WHO, 2016 WL 2988834, at *5 (N.D. Cal. May 24, 2016) (quoting Verinata Health, Inc. v. Sequenom, Inc., No. 12-cv-00865-SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (internal quotation marks omitted)). "The scope of contentions and expert reports are not, however,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. |

coextensive." <u>Golden Bridge Tech. Inc v. Apple, Inc.</u>, No. 12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (internal quotation marks omitted). "[E]xpert reports are expected to provide more information than . . . contentions." <u>Digital Reg of Texas, LLC v. Adobe Sys. Inc.</u>, No. 12-cv-01971-KAW, 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014). "Thus, '[t]he threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether.'" <u>Finjan</u>, 2016 WL 2988834 at *5 (quoting <u>Digital Reg of Texas</u>, 2014 WL 1653131 at *5).

## 1.    Testimony about Motivation to Combine

Masimo asks the Court to strike motivations to combine particular references disclosed for the first time in Warren's expert report. <u>See generally</u> Motion. Apple did not disclose motivation to combine for individual reference combinations in its contentions. Rather, each invalidity chart stated that the references could be combined, "for the reasons set forth in Apple's cover pleading." See, e.g., Invalidity Contentions, Dkt. 2534-11, Chart A1 at 2. Apple's cover pleading disclosed general rationales for combining all asserted invalidity references. For instance, the cover pleading states that all references are from the same or overlapping fields of endeavor. <u>Id.</u> at 144. The cover pleading did not articulate a basis to combine any specific references.

In its prior order addressing the parties' preliminary contentions, the Court cautioned Apple that its expert "cannot opine regarding previously undisclosed motivation to combine" but left the decision of whether to supplement to Apple's discretion. Dkt. 2019 at 14. The parties agreed that the opening expert reports would serve as final invalidity contentions, which largely moots the Court's warning regarding supplementation.

Further, the Court is not aware of any binding authority addressing whether an expert witness may testify as to a motivation to combine not disclosed in the defendant's invalidity contentions. At the district court level, some courts, including this Court, have struck these types of opinions. <u>Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.</u>, 644 F. Supp. 3d 637, 667–68 (C.D. Cal. 2022) (striking motivations to combine in expert report where invalidity contentions expressly disclaimed the need to state any particular motivations to combine); <u>Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.</u>, No. CIV.A. 9:06-CV-151, 2009 WL 5842062, at *2 (E.D. Tex. Mar. 30, 2009) (striking motivations to combine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:20-cv-48-JVS-JDE                              Date   October 17, 2025

Title      Masimo Corporation et al. v. Apple Inc.

disclosed for the first time in an expert report even though the defendant argued they "could be extrapolated from other statements made in [their] Invalidity Contentions.")

However, other courts interpreting the N.D. Cal. Local Patent Rules ("LPRs") have opted not to strike these types of opinions. <u>Slot Speaker Techs., Inc. v. Apple, Inc.</u>, No. 13-CV-01161-HSG, 2017 WL 4354999, at *4 (N.D. Cal. Sept. 29, 2017) (finding LPRs, as amended in 2008, do not "require the disclosure of motivation to combine."); <u>Glaukos Corp. v. Ivantis, Inc.</u>, No. SACV 18-620JVS(JDEX), 2021 WL 4551173, at *5 (C.D. Cal. Aug. 18, 2021) (finding defendant "did not have to disclose its specific motivation to combine theories in its invalidity contentions . . . .")

Despite its prior warning to Apple to contemplate whether to amend its contentions to add motivation to combine, the Court opts to follow the <u>Slotspeaker</u> line of cases on this issue. The Court declines to strike Warren's opinions regarding motivation to combine.

## 2.    Testimony about State-of-the-Art References

Defendants may present state of the art evidence to establish a person having ordinary skill in the art's knowledge and for other purposes. ASUS Comp. Int'l v. Round Rock Rsch., LLC, 2014 WL 1463609, at *8 (N.D. Cal. Apr. 11, 2014) (distinguishing references used "to show the knowledge of a PHOSITA" from references "used as anticipatory prior art"); Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd., 2019 WL 6841993, at *3 n.1 (C.D. Cal. Sept. 25, 2019) (distinguishing "prior art *disclosing structures* that anticipate or render obvious" from references "*demonstrating knowledge* of an ordinary artisan) (emphasis in original); <u>Brilliant Instruments, Inc. v. GuideTech, Inc.</u>, 2011 WL 900369, at *2 (N.D. Cal. Mar. 15, 2011) (striking references to the extent expert relied on them as "invalidating prior art" but acknowledging the expert could rely upon them for other purposes). However, defendants cannot label prior art references as "background" or "state of the art" material in an effort to avoid constraints on invalidity theories and evidence. <u>Life Techs. Corp. v. Biosearch Techs., Inc.</u>, No. C 12-00852 WHA, 2012 WL 4097740, at *2 (N.D. Cal. Sept. 17, 2012)("Other courts have rejected such attempts to elude patent local rules by defining materials as 'background' or 'context.'"); Pavo Sols. LLC v. Kingston Tech. Co., Inc., No. 814CV01352JLSKES, 2019 WL 8138163, at *11 (C.D. Cal. Nov. 20, 2019), aff'd, 35 F.4th 1367 (Fed. Cir. 2022)(finding "use of previously undisclosed references as background is proper only when they are not being used as invalidating prior art references.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

Here, Warren's expert report includes an extensive discussion of the state of the art. Opening Expert Report of Steven Warren, Ph.D., Docket No. 2549-1 ¶¶ 151-320. That discussion cites several references, including references that Apple did not disclose in its preliminary invalidity contentions. Id. Warren references this portion of his report in his substantive invalidity analysis. See, e.g., id. ¶458, fn. 31. Warren does not appear to identify any of the references designated as "background" by name in his substantive analysis. Thus, his analysis does not seem to depend on any particular reference. See California Inst. of Tech. v. Broadcom Ltd., No. CV 16-3714-GW-AGRX, 2020 WL 10054680, at *29 (C.D. Cal. July 17, 2020), aff'd in part, vacated in part, remanded, 25 F.4th 976 (Fed. Cir. 2022)(finding discussions "getting into the technical weeds regarding particular prior art references" would improperly "backdoor invalidity arguments into the trial.") Still, the discussion in the "State of the Art" section of his report does a lot of heavy lifting here. As best as the Court can discern, though, this "state of the art" discussion does not use claim terms or apply claim constructions to the identified references. See Pavo, 2019 WL 8138163, at *11 (finding discussion applying claim language and constructions to reference went beyond background material). Accordingly, based on the limited authority on this issue and a review of Warren's report, the Court **DENIES** Masimo's motion. However, the Court cautions Apple that individual references cited in the state of the art section cannot be presented as invalidating prior art at trial.

At this time, the Court defers ruling on whether this evidence may be used for purposes other than Apple's invalidity theories under 35 U.S.C. § 103. The Court will resolve any objections regarding this testimony during trial. To be admissible, the testimony would have to come in within the context of some other discussion, like doctrine of equivalents or damages, and there would have to be some opinion from Warren or another expert supporting the testimony.

### 3. Testimony about System Art

Masimo argues that the Court should strike Apple's invalidity contentions because Apple failed to identify a single product for any system art theory. Motion at 14. Masimo acknowledges that the contentions identify the "MIT Ring Product," "Nellcor NPB-40 Product," and "Nonin Onyx 9500 Product." Still, Masimo challenges Apple's contentions on the grounds that they (1) cited only publications instead of the actual products; (2) mixed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

publications without showing they all related to the same product; and (3) reserved Apple's right to rely on variants of the identified products. Motion at 14.

The patent challenger has the ultimate burden to establish a particular reference is prior art by clear and convincing evidence. See Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1576 (Fed. Cir. 1996). "Nonetheless, it is permissible for a defendant to establish anticipation by using several documents that reveal how a single prior art system works." IOENGINE, LLC v. PayPal Holdings, Inc., 607 F. Supp. 3d 464, 518-19 (D. Del. 2022), aff'd sub nom. Ingenico Inc. v. IOENGINE, LLC, 136 F.4th 1354 (Fed. Cir. 2025) (citing Brit. Telecomms. PLC v. IAC/InterActiveCorp, No. 18-cv-366, 2020 WL 3047989, at *6 (D. Del. June 8, 2020)). However, a "post-hoc, reconstructed interpretation of how a [prior-art] system *might* have been constructed does not constitute prior art for purposes of anticipation." Id. (emphasis in original) (quoting Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2012 WL 2576136, at *3 (N.D. Cal. July 3, 2012)); see also Radware, Ltd. v. F5 Networks, Inc., No. 5:13-CV-02024-RMW, 2016 WL 861065, at *2 (N.D. Cal. Mar. 5, 2016) (quoting IP Innovation L.L.C. v. Red Hat, Inc., No. 2:07-cv-447-RRR, 2010 WL 9501469, *4 (E.D. Tex. Oct. 13, 2010)) ("This court sees no error in using multiple references to describe a single prior art system for the purpose of showing anticipation.").

MIT Ring Product. Apple relies on several documents that it contends disclose the features of the MIT Ring product. Invalidity Contentions, Dkt. 2534-11 at Charts A4 and B4. This, alone, is not a problem. IOENGINE, LLC, 607 F. Supp. 3d at 518–19. The question is whether the documents describe a system that was publicly available or in public use, which is addressed below. Id. As to Masimo's second and third argument, Warren identified the 1999 "double ring" as the relevant product. Warren Opening Expert Report, Dkt. 2549-1 ¶¶ 328-29. Warren acknowledges that "there are slight differences between" this product and "the version displayed in publications about the product" but contends, "there are no material differences with respect to the features relevant to my invalidity analysis." Id. ¶ 329. Madisetti does not opine that the differences are material; rather, he expresses concern that the publications fail to show the prototype Warren identified was in public use or publicly available. See Madisetti Rebuttal Report, Dkt. 2552-8 ¶¶ 208. Even if there were material differences, it is not clear that the identification of a specific prototype in the expert report harmed or prejudiced Masimo. The parties agreed to treat the opening expert reports as final invalidity contentions, so there is not a timeliness issue here. Additionally, Masimo had an opportunity to depose Shaltis after Apple served Warren's opening report and had an opportunity to inspect the prototypes Shaltis relied upon in his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

report. Opp'n at 16. For these reasons, the Court declines to strike Warren's opinions regarding the MIT Ring product.

<u>Nellcor NPB-40 and Nonin Onyx 9500 Products</u>. Again, Masimo argues that the documents Apple cites do not establish "the existence or features of an actual NPB-40 product pre-dating the patents-in-suit." Motion at 17. That is a summary judgment issue but does not establish a disclosure problem. Masimo also argues that Warren discusses tear downs of the Nellcor and Nonin products conducted months after Apple served its invalidity contentions. <u>Id.</u> at 17 and 18-19. Warren conducted the tear downs days before the close of fact discovery. <u>Id.</u> Again, though, the parties agreed to treat opening expert reports as final invalidity contentions and Masimo had an opportunity to depose Warren concerning the tear downs. For these reasons, the Court declines to strike Warren's opinions regarding the Nellcor and Nonin products.

For the foregoing reasons, the Court **DENIES** Masimo's Motion.

### F.    Masimo's Motion for Partial Summary Judgment (Dkt. 2532)

Masimo argues the Court should grant summary judgment of no invalidity for three independent reasons: (1) lack of motivation to combine, (2) lack of "product" prior art theories, and (3) insufficient evidence establishing any "product" as in public use. See generally Motion. The Court declines to grant summary judgment based on either the first or second ground for the above reasons. See §§ III.E.1 and III.E.3, supra. The Court addresses only the public use issue.

Masimo's motion addresses only whether Apple presents sufficient evidence of a public use. Masimo's motion does not address whether Apple presents sufficient evidence under 35 U.S.C. § 102(g) or of an on-sale bar. Accordingly, the Court does not address those issues here.

Public use requires actual use. Ingenico Inc. v. IOENGINE, LLC, 136 F.4th 1354, 1361 (Fed. Cir. 2025). However, circumstantial evidence may be used to establish actual use. Id. at 1361-62. ("Thus, '[e]ither direct or circumstantial evidence corroborating public use may be sufficient for a party to meet its burden of proof.'") (quoting TransWeb, LLC v. 3M Innovative Props. Co., 16 F. Supp. 3d 385, 393 (D.N.J. 2014), aff'd, 812 F.3d 1295 (Fed. Cir. 2016)). For example, evidence that "customers were encouraged to download the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

[accused product] and instructed how to use it" provided "substantial circumstantial evidence" allowing a reasonable jury to make an invalidity finding. Id. at 1362.

<u>MIT Ring Product</u>. As explained in the previous section, Apple relies on a specific prototype, the 1999 "double ring." Opp'n at 9. Warren testifies that Shaltis provided him "the pre-July 2, 2001 physical samples" of the 1999 "double ring" product. Warren Opening Report, Dkt. 2547 ¶ 3258. Shaltis testified that he was given several prototypes when he graduated, after the priority date, which he then gave to Apple. Shaltis Depo. Tr., Dkt. 2534-9 at 62:15-19. He believed he made one of the prototypes in Spring of 2001. Id. at 58:16-59:9. Warren also testified that the double ring design was disclosed in several articles from January 2000 to July 2001. Warren Opening Report, Dkt. 2547 ¶ 339. He also testified that the double ring product was disclosed during an April 2000 lecture. <u>Id.</u> ¶ 346. It is unclear whether the documents and lecture sufficiently establish that the prototype included the necessary functionality before the priority date. It also seems that even though Warren recalled seeing a prototype at the lecture, he was not able to operate the device. Dkt. 2548-10 at 96:16-97:2. Further, none of the prototypes given to Apple were operable because they did not have software. Shaltis Depo. Tr. at 74:16-75:5. Shaltis did testify that at least one prototype included a manual duty cycle feature. <u>Id.</u> at 106:10-15; 228:20-229:4. He also testified that he answered questions differently for different prototypes. <u>Id.</u> at 239:10-240:6.

Taking all of this together and in view of the holdings in <u>Ingenico</u>, there is at least a fact issue as to whether the 1999 "double ring" was in public use. There is some evidence that the product was publicly available, including documentary evidence as well as Warren's recollection from the lecture he attended. However, this evidence does not necessarily establish that the prototype included the necessary functionality as of the priority date. Shaltis offers testimony that some prototypes did include certain functionality but it is difficult to discern which prototype he is discussing. Accordingly, there is circumstantial evidence, although limited, that the 1999 "double ring" or an equivalent prototype was in public use.[11]

---

[11] In its Reply, Masimo argues that the evidence does not establish that the relevant MIT Ring prototype included duty cycle changing functionality as of the priority date. It is not clear to the Court that Apple relies on the MIT Ring product to disclose the duty cycle changing functionality. It appears that Apple relies on this product in combination with the SPO Medical patent and that the SPO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                           Date    October 17, 2025

Title        Masimo Corporation et al. v. Apple Inc.

<u>Nonin Onyx 9500.</u>  Warren opines that this product was publicly available before the priority date because it includes a chip labeled "2000" which "very likely corresponds to the year in which the device was manufactured."  Warren Opening Report ¶ 387.  Warren also opined that the product was used in the U.S. and received FDA clearance before the priority date.  <u>Id</u>. ¶¶ 403-405.  This evidence at least creates a fact issue as to whether the Nonin product was in public use.

<u>Nellcor NPB-40.</u>  Warren opines that this product was publicly available before the priority date because the device includes an adhesive label that says 1997 after the serial number.  <u>Id</u>. ¶ 357.  Like for Nonin, Warren also testified that the product received FDA clearance in 1996 and was publicly described in operator manuals before the priority date.  <u>Id</u>. ¶¶ 374-75.  This evidence at least creates a fact issue as to whether the Nellcor product was in public use.

For the foregoing reasons, the Court **DENIES** Masimo's Motion.

**G.    Apple's Request to Strike Bergman's Opinion re the Apparatus Claims of the '776 Patent**

Bergman offered a reasonable royalty damages opinion but the opinion was excluded as to the method claims for both the '703 and '776 Patents.   See § III.C.3, supra.  Masimo also asserts apparatus claims for the '776 Patent.  See Apple's Supp. Damages Brief, Docket No. 2647 at 1.  However Bergman did not offer any opinions about the split of damages as to method versus apparatus claims.  See Masimo's Supp. Damages Brief, Docket No. 2654 at 4.  For this reason, Apple asks the Court to exclude Bergman's damages opinion in its entirety.  Masimo contends Bergman's royalty opinion is not claim dependent.  Id.  Masimo argues that because the accused Apple Watch infringes the method and apparatus claims in a similar way, his opinion can be applied to any claim that Apple may infringe.  <u>See id</u>.

The issue here is whether Bergman's claim independent approach is admissible or whether damages experts in patent cases must apportion as to infringed versus non-infringed

Medical patent discloses a reduction in the duty cycle of a light source.  Accordingly, the Court declines to grant summary judgment based on this argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:20-cv-48-JVS-JDE                    Date    October 17, 2025

Title    Masimo Corporation et al. v. Apple Inc.

claims. Generally, the Federal Circuit does not require claim by claim apportionment in patent cases. Oracle Am., Inc. v. Google Inc., No. C 10-03561 WHA, 2012 WL 850705, at *7 (N.D. Cal. Mar. 13, 2012). In fact, a claim by claim damages calculation could be improper to the extent it double counts patents. See MiiCs & Partners, Inc. v. Funai Elec. Co., 2017 WL 6268072, at *5 (D. Del. Dec. 7, 2017) (finding applying a "royalty base that includes units accused under any asserted patent to a royalty rate with contributions from every asserted patent" improper); see also Finjan, Inc. v. Sophos, Inc.,, 2016 WL 4702651, at *2 (N.D. Cal. Sept. 8, 2016) (faulting expert for "incorporat[ing] the full value of module 1 five separate times when she calculate[d] the individual apportionment base for each patent.").

Here, Masimo's infringement theory as to both the method and apparatus claims depends on a single accused product. Thus, this case is not like those cases that required further apportionment between method and apparatus claims. Hologic, Inc. v. Minerva Surgical, Inc., 957 F.3d 1256, 1271 (Fed. Cir. 2020), vacated and remanded, 594 U.S. 559 (2021), and reinstated in part by 44 F.4th 1358 (Fed. Cir. 2022) (denying new trial in case where damages expert explained that the same royalty rate would apply to either patent, or both collectively, since both patents "cover[ed] the entire procedure and device respectively"). Because Bergman's royalty rate is based on a single accused product and because it is claim independent, it actually avoids the double counting issue identified in MiiC and other cases. The fact that Bergman's opinion does not differentiate between the '703 Patent and the '776 Patent also does not compel exclusion. Hypothetically, if an accused Apple Watch were found to infringe both the '703 and '776 Patents, that product would be treated the same, for purposes of assessing damages, as if it only infringed the '776 Patent. Put simply, this is not a situation in which the two asserted patents have different value contributions to the royalty rate that Bergman failed to differentiate. Chrimar Holding Co., LLC v. ALE USA Inc., 732 F. App'x 876, 886 (Fed. Cir. 2018), as amended (June 1, 2018) (finding "the absence of an infringement judgment on the '012 patent is immaterial to damages because any damages that would result from the alleged infringement of the '012 patent also results from the infringement of the '107 and '760 patents.")

As the Court understands it, Bergman's opinion assumes there would not be a situation in which an Apple Watch infringed method claims of either the '703 or '776 Patents but did not infringe the apparatus claims of the '776 Patent. If Bergman's opinion assumed this could occur, then a finding eliminating the apparatus claims, but not the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:20-cv-48-JVS-JDE | Date | October 17, 2025 |

| | |
|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. |

method claims, would be problematic.  See Colibri Heart Valve LLC v. Medtronic CoreValve LLC, 2021 WL 7285995, at *14-15 (C.D. Cal. Nov. 16, 2021) (excluding royalty not apportioned between method and apparatus claims after apparatus claims were eliminated because method claims were only infringed sometimes and the royalty opinion failed to take this into account).  However, the situation is the reverse.  Moreover, this is not a situation like in Colbri where the asserted patents' claims "differ in both scope and subject matter." Id.  The subject matter is same for purposes of assessing damages due to the single accused product infringement theory.

In any event, even if the Court's reasoning on this is not correct, in many of the cases the parties cite, the expert was allowed to supplement their report to reflect the value of only the remaining patent(s) in suit.  See Colbri, 2021 WL 7285995, at *15; see also MiiCs, 2017 WL 6268072, at *5, fn. 4.  This type of supplementation would be acceptable here, if needed.

Accordingly, the Court **DENIES** Apple's supplemental request to exclude Bergman's reasonable royalty opinion in its entirety.

## IV.    Conclusion

For the foregoing reasons, the Court rules on the motions as stated in the summary table on the first page of this Order.