1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Sheila N. Swaroop (Bar No. 203476)
   sheila.swaroop@knobbe.com
4  Brian C. Claassen (Bar No. 253627)
   brian.claassen@knobbe.com
5  Nicholas M. Zovko (Bar No. 238248)
   nicholas.zovko@knobbe.com
6  Kendall M. Loebbaka (Bar No. 285908)
   kendall.loebbaka@knobbe.com
7  Douglas B. Wentzel (Bar No. 313452)
   douglas.wentzel@knobbe.com
8  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
9  Irvine, CA 92614
   Phone: (949)760-0404/Fax: (949)760-9502
10

11 Adam B. Powell (Bar. No. 272725)            Brian C. Horne (Bar No. 205621)
   adam.powell@knobbe.com                      brian.horne@knobbe.com
   Daniel P. Hughes (Bar No. 299695)           Mark D. Kachner (Bar No. 234192)
12 daniel.hughes@knobbe.com                    mark.kachner@knobbe.com
   KNOBBE, MARTENS, OLSON & BEAR, LLP          KNOBBE, MARTENS, OLSON & BEAR, LLP
13 3579 Valley Centre Drive                    1925 Century Park East, Suite 400
   San Diego, CA 92130                         Los Angeles, CA 90067
14 Phone: (858) 707-4000                       Phone: (310) 551-3450
   Fax: (858) 707-4001                         Fax: (310) 551-3458
15

16 Attorneys for Plaintiffs,
   MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

17  [Counsel for Apple appears on next page]

18            **UNITED STATES DISTRICT COURT**
19            **CENTRAL DISTRICT OF CALIFORNIA**
                    **SOUTHERN DIVISION**
20

21  MASIMO CORPORATION,                    CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
22  CERCACOR LABORATORIES, INC.,           **JOINT REVISED PROPOSED**
    a Delaware corporation,                **FINAL JURY INSTRUCTIONS**
23                                          **(NOS. 2, 12, 14, 15, 16)**
                    Plaintiffs,
24
           v.
25                                          Pretrial Conf.: October 20, 2025
    APPLE INC.,                             Trial: November 4, 2025
26  a California corporation,

27                  Defendant.

28

MARK D. SELWYN, SBN 244180
mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

JOSHUA H. LERNER, SBN 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Tel.: 628.235.1000 / Fax: 628.235.1001

AMY K. WIGMORE, *pro hac vice*
amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

JOSEPH J. MUELLER, *pro hac vice*
joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

BRIAN A. ROSENTHAL, *pro hac vice*
brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

Attorneys for Defendant Apple Inc.

On October 23, 2025, the parties filed joint proposed jury instructions.  Dkt. 2765. The parties hereby submit certain revised proposed jury instructions in light of the first week of trial.  Specifically, the parties submit the following revised or supplemental proposed jury instructions:

- Masimo submits Revised Proposed Instruction 2A (Summary of Contentions);
- Apple submits Revised Proposed Instruction 2B (Summary of Contentions);
- Masimo submits Revised Proposed Instruction 12A (Claim Construction);
- Apple submits Revised Proposed Instruction 12B (Claim Construction);
- Apple submits Supplemental Proposed Instruction 12B.1 (Patient Monitor);
- Masimo submits Revised Proposed Instruction 14 (Infringement – Knowledge of the Patent and Intent to Infringe are Immaterial);
- Masimo submits Revised Proposed Instruction 15A (Infringement – Literal Infringement);
- Apple submits Revised Proposed Instruction 16B (Infringement – Doctrine of Equivalents).

The parties also have submitted updated positions for each revised proposed instruction listed above.

**MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 2A[1]**

**SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will give you a brief summary of each side's contentions in this case. My preliminary instructions included certain issues that you no longer need to decide. More specifically, Apple no longer contends that the '776 Patent is invalid and thus you need not concern yourself about that issue.

Masimo alleges that Apple infringed Claims 11 through 14 of the '776 Patent by importing into the United States, and offering for sale and selling in the United States, certain models of the Apple Watch. I will refer to Claims 11 through 14 as the "Asserted Claims." Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims.

Your job will be to decide whether or not the Asserted Claims have been infringed. If you decide that any of the Asserted Claims has been infringed, you will then need to decide any money damages to be awarded to Masimo to compensate it for the infringement.

---

[1] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**REDLINED MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 2A**

**SUMMARY OF CONTENTIONS**

As I did at~~To help you follow~~ the start of the case~~evidence~~, I will ~~now~~ give you a brief summary of each side's contentions~~the positions of the parties.~~

~~The parties~~ in this case. ~~are [patent holder] and [alleged infringer]. The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."~~ My preliminary instructions included certain issues that you no longer need to decide. More specifically, Apple no longer contends that the '776 Patent is invalid and thus you need not concern yourself about that issue.

Masimo alleges that Apple infringed Claims 11 through 14 of the '776 Patent by importing into the United States, and offering for sale and selling in the United States, certain models of the Apple Watch. I will refer to Claims 11 through 14 as the "Asserted Claims." Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims.

~~[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

~~The [products] [methods] that are alleged to infringe are [list of accused products or~~

-3-

1 ~~methods].~~

2 ~~[Alleged infringer] denies that it has infringed claims [ ] of the [ ] patent. [Alleged~~

3 ~~infringer] also argues that claims [ ] are invalid. I will instruct you later as to the ways~~

4 ~~in which a patent may be invalid. In general, however, a patent is invalid if it is not new~~

5 ~~or is obvious in view of the state of the art at the relevant time, or if the description in~~

6 ~~the patent does not meet certain requirements. [Add other defenses, if applicable.]~~

7     Your job will be to decide whether or not ~~claims [ ] of~~ the <u>Asserted Claims</u>~~[ ]~~

8 ~~patent~~ have been infringed ~~and whether or not those claims are invalid~~. If you decide

9 that any ~~claim~~ of the <u>Asserted Claims</u>~~[ ] patent~~ has been infringed ~~and is not invalid~~, you

10 will then need to decide any money damages to be awarded to <u>Masimo</u>~~[patent holder]~~ to

11 compensate it for the infringement. ~~[You will also need to make a finding as to whether~~

12 ~~the infringement was willful. If you decide that any infringement was willful, that~~

13 ~~decision should not affect any damages award you give. I will take willfulness into~~

14 ~~account later.]~~

15

16 **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**Masimo's Position: Revised Proposed Final Instruction No. 2A**

Masimo updated instruction 2A to remove instructions on willful infringement and invalidity because those issues are no longer for the jury to decide.

Because Apple withdrew its invalidity defense ***during trial***, Masimo proposes in the first paragraph that the jury be explicitly instructed that the defense is no longer for its consideration. Such an instruction is necessary because when the trial began, Apple contended that all of the asserted claims are invalid for obviousness. Based on that contention, the Court informed the jury that Apple contends the claims are invalid for obviousness when reading the parties' agreed-upon Statement of the Case. 11/4/2025 AM Tr. at 71:19-72:1 ("Apple contends that the asserted claims of the '776 Patent are invalid because the claimed inventions would have been obvious to a person of skill in the field of technology of the patent when the patent was first filed in 2001.").

After the jury was selected and sworn, the Court instructed the jury as follows: "Apple also contends that the claims are invalid. I will instruct you later as to ways in which a patent may be invalid." 11/4/2025 PM Tr. at 75:1-3; Dkt. 2801 (Initial Jury Instruction No. 3) at 5. The Court also instructed the jury that "your job is to decide whether or not the asserted claims have been infringed and whether or not those claims are invalid." *Id.* at 75:4-9.

Then, Masimo told the jury about Apple's invalidity theory in its opening statement. 11/5/2025 AM Tr. at 39-41 ("Apple is also going to say that the invention was obvious, that the Patent Office messed up and never should have granted Masimo its patent."). Masimo also addressed it when examining witnesses, without Apple objecting. *See, e.g.*, 11/6/2025 AM Tr. (Al-Ali direct) at 23-24 ("I will represent to you that Apple is taking the position that your patent is invalid as obvious."). Masimo's instruction is necessary to explain to the jury why Masimo raised Apple's invalidity defense earlier in the case but then stopped addressing it altogether. Without Masimo's proposed instruction, the jury would be left to wonder as to what happened to Apple's invalidity defense.

Apple's proposal conceals that it no longer contends that the patent is invalid. Apple proposes simply: "My preliminary instructions included ***certain issues*** that have been resolved.  You are not to concern yourself with ***those issues***."  Apple's proposal is too vague by instructing merely that "certain issues . . . have been resolved."  That never informs the jury what those issues are.  In contrast, Masimo's proposal clearly informs the jury that Apple no longer contends that the '776 Patent is invalid.

Finally, the invalidity defense is the lone dropped ***claim*** or ***defense*** during trial about which the jury was instructed.  Thus, Apple's use of the plural "issues" is incorrect. Masimo dropped its willfulness claim ***before trial*** and thus that claim was never mentioned to the jury.[2]

Regarding the second paragraph concerning Masimo's infringement allegations, Masimo eliminated any mention of the Workout Mode which is not at issue and was never presented to the jury as an infringement theory.  Moreover, Masimo eliminated the language that the High/Low Heart Rate Notifications feature causes Apple to infringe because Apple has been confusingly arguing that that feature by itself somehow is the accused device.  Obviously, the feature alone cannot be a device.  The accused devices are certain models of the Apple Watch that include all of the hardware and software to enable the High/Low Heart Rate Notifications feature.

Apple continues the confusion by defining the "Accused Features" in its latest proposal and refers to the High/Low Heart Rate Notifications feature.  For the reasons explained above and in Masimo's previously filed position statement (*see* Dkt. 2765 at 52-53), the Court should reject Apple's proposal.

Thus, the Court should adopt Masimo's Proposed Final Instruction No. 2A for these reasons, as well as the reasons Masimo previously explained (*see* Dkt. 2765 at 52-53).

---

[2] Because Apple dropped its invalidity claim/defense during trial, Masimo is entitled to judgment as a matter of law on invalidity.  *GoTV Streaming, LLC v. Netflix, Inc.*, 2023 WL 8872129, at *2-3 (C.D. Cal. Nov. 28, 2023).

# APPLE'S REVISED PROPOSED FINAL INSTRUCTION NO. 2B[3]

## SUMMARY OF CONTENTIONS

As I did at the start of the case, I will give you a brief summary of each side's contentions in this case. My preliminary instructions included certain issues that have been resolved. You are not to concern yourself about those issues.

Masimo alleges Apple infringed Claims 11 through 14 of the '776 Patent by importing into the United States, and offering for sale and selling in the United States, the Apple Watch including the High/Low Heart Rate Notifications features. I will refer to Claims 11 through 14 as the "Asserted Claims," and I will refer to the High/Low Heart Rate Notifications as the "Accused Features" of Apple Watch. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

Apple denies that it has infringed any of the Asserted Claims.

Your job will be to decide whether or not the Asserted Claims have been infringed. If you decide that any of the Asserted Claims has been infringed, you will then need to decide any money damages to be awarded to Masimo to compensate it for the infringement.

---

[3] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2; Dkt. 1715 at 3.

**REDLINED APPLE'S REVISED PROPOSED FINAL INSTRUCTION NO. 2B**

**SUMMARY OF CONTENTIONS**

~~To help you follow the evidence~~As I did at the start of the case, I will ~~now~~ give you a brief summary of ~~the positions of the parties~~each side's contentions in this case. My preliminary instructions included certain issues that have been resolved. You are not to concern yourself about those issues.

Masimo alleges Apple infringed Claims 11 through 14 of the '776 Patent (the "Asserted Claims") by importing into the United States, and offering for sale and selling in the United States, the Apple Watch including High/Low Heart Rate Notifications features. I will refer to Claims 11 through 14 as the "Asserted Claims," and I will refer to High/Low Heart Rate Notifications as the "Accused Features" of Apple Watch. Masimo seeks money damages from Apple for allegedly infringing the '776 Patent.

~~The parties in this case are [patent holder] and [alleged infringer]. The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to U.S. Patent No. [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."~~

~~[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent. [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]~~

~~The [products] [methods] that are alleged to infringe are [list of accused products or methods].~~

-8-

[Alleged infringer]Apple denies that it has infringed claims [ ] of the [ ] patent. [Alleged infringer] also argues that claims [ ] are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements. [Add other defenses, if applicable.]any of the Asserted Claims.

Your job will be to decide whether or not claims [ ] of the [ ] patentAsserted Claims have been infringed and whether or not those claims are invalid. If you decide that any claim of the [ ] patentAsserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder]Masimo to compensate it for the infringement. [You will also need to make a finding as to whether theany infringement that occurred after this lawsuit was filed was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.]

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § A.2.

**Apple's Position: Revised Proposed Final Instruction No. 2B**

Apple and Masimo largely agree on this opening instruction, with two exceptions.

***First***, Apple has modified its proposed instruction to eliminate references to issues that the parties have dropped (Workout Mode, willful infringement, invalidity). Pursuant to the Court's guidance on November 10, and consistent with the parties' past practice before the Court, Apple has proposed language instructing the jury not to consider any arguments no longer at issue in the case. *See* 11/10 Vol. 1 Tr. 6 (The Court noting that "[i]t's common to tell the jury that certain claims have been resolved. You are not to concern yourselves with them."). Apple's proposed new language is adapted from an instruction delivered in the 2023 trial, after the Court granted JMOL on Masimo's alleged Business trade secrets. Dkt. 1715 at 3 (Instruction No. 2: "The Court has resolved certain issues in this case. You are not to concern yourself about that procedure or those issues.").

Masimo's counter-proposal would unfairly highlight one specific Apple case-narrowing decision (invalidity). That would both cause confusion (because it would needlessly re-introduce a dead issue to the jury) and would be in violation of the parties' agreement not to reference specific case-narrowing decisions. *See* Dkt. 2678 at 12-13 (Apple's MIL No. 1); Dkt. 2790 at 5 (this Court finding Apple's case-narrowing MIL moot in light of Masimo's failure to oppose).

***Second***, as to the substance of the parties' contentions, only one notable dispute remains: Apple submits that this instruction and all other related instructions should refer to the "Accused Features" of Apple Watch—i.e., High/Low Heart Rate Notifications—that Masimo alleges infringe the asserted claims of the '776 Patent—not "Apple Watch" as a whole or "Accused Products."[4] This approach flows from Dr. Madisetti's assertion that Apple Watch models "infringe the Asserted Patents … based

---

[4] This dispute regarding whether to use the term "Accused Features" recurs in Final Instructions Nos. 15, 16, 29, and 31. The arguments Apple makes here apply equally to those other instructions.

on escalations of the heart rate algorithm performed … for heart rate notifications." *See, e.g.*, Dkt. 2550-1 ("Madisetti Opening") ¶ 137.  Apple Watch "can perform numerous functions that Dr. Madisetti does not accuse of infringing" including "phone calls, texting, music, email, games, clock-related features, mapping, Background Heart Rate Walking, A-Fib History, Irregular Rhythm Notification, Breathe, and other health and wellness features."  Dkt. 2552-3 ("Mercier Rebuttal") ¶ 317.

In fact, Dr. Madisetti elected not to respond to a section of Dr. Mercier's report discussing "Non-Accused Apple Watch Heart-Related Features"—a section that references "(1) Background Heart Rate Walking, (2) Background Tachogram, (3) Irregular Heart Rate Notifications, (4) A-Fib History, (5) ECG, and (6) Blood Oxygen," Mercier Rebuttal  ¶ 254—precisely "[b]ecause these features are not accused of infringement, … [so] they are not relevant to any issue in this case," Dkt. 2550-2 ("Madisetti Reply") ¶ 109; *see also id.* ("[B]ecause this section of [Dr. Mercier's] report is irrelevant to infringement of the … '776 Patent[], I will not address it further.").  Masimo's suggestion that Dr. Mercier's report assumes that Apple Watch as a whole is accused is both irrelevant (Masimo, as plaintiff, controls the scope of its allegations) and wrong, as the following passage emphasizes:

> I understand that Masimo accuses Apple of infringing the Asserted Patents based on the following: (1) Workout in connection with AGC/OPC 1.0, (2) Workout in connection with AGC/OPC 2.0, and (3) escalations from Background Heart Rate to High and Low Heart Rate Notifications.  Below I discuss the applications and algorithms related to heart rate, both accused and not accused.

Mercier Rebuttal ¶ 170.  Dr. Madisetti conceded on cross-examination at trial that the only accused features are High/Low Heart Rate Notifications, and that Masimo has accused none of Apple Watch's other heart-related health and wellness features.  *See* 11/7 PM Tr. 25-31.

Clarity on this issue is particularly important because several of Masimo's pretrial briefs cited evidence regarding non-accused features to support its merits positions, suggesting Masimo will make the same arguments to the jury in closing.  *See, e.g.*, Dkt.

2629 at 5 (noting Masimo relied on data regarding ECG and IRN features in opposing motion to strike); Dkt. 2743 at 7 (noting Masimo's opposition to Apple's MIL No. 1 indicates Masimo intends to rely on statements made in unrelated administrative proceedings regarding the Blood Oxygen and Atrial Fibrillation features).   Apple submits that the jury be instructed to focus on High/Low Heart Rate Notifications (i.e., the Accused Features) so that the jury does not mix-and-match evidence regarding those features with evidence regarding pulse-rate-related features that were never—or are no longer—accused.

## MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 12A[5]

## CLAIM CONSTRUCTION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are referred to interchangeably as the "elements," "limitations," or "requirements" of the claim. The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim. The asserted independent claim in this case is Claim 11 of the '776 Patent. The remainder of the Asserted Claims (Claims 12-14 of the '776 Patent) are dependent claims. A "dependent claim" incorporates all the requirements of the claim(s) to which it refers, and then adds its own requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if a product meets all the requirements of the dependent claim and any claim(s) to which it refers, the product is covered by that dependent claim.

---

[5] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.  Therefore, I have determined the meaning of certain claim terms and I will now provide to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement:

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light";
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent";
- "**second duty cycle**" must be different from the "first duty cycle."

The beginning portion of a claim is called the "preamble" of the claim.  In this case, every Asserted Claim either uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that an accused product includes all the requirements of that claim, the claim is infringed.  This is true even if the Accused Product contains additional elements.

For any words in the claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent.  You should not take my definition of the language of the claims as an indication that I

have a view regarding how you should decide the issues that you are being asked to decide, such as infringement.  These issues are yours to decide.

**REDLINED MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 12A**

**CLAIM CONSTRUCTION**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are ~~often~~ referred to interchangeably as the ""~~claim~~ elements." "" or "claim limitations." or "requirements" of the claim. ." The coverage of a patent is assessed claim- by-claim. When a thing (such as a product ~~or a process~~) meets all ~~of~~ the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product ~~or process~~ where each of the claim elements or limitations is present in that product ~~or process~~.

This case involves two types of patent claims: independent claims and dependent claims.  An "independent claim" sets forth all ~~of~~ the requirements that must be met in order to be covered by that claim.  The asserted~~Thus, it is not necessary to look at any other claim to determine what an~~ independent claim ~~covers. In this case~~ is Claim 11, ~~claim(s) [·]~~ of the '776 Patent.  ~~[·] patent are each independent claims.~~

The remainder of the Asserted Claims (Claims 12-14 of ~~claims in~~ the '776 Patent)~~[ ] patent~~ are "dependent claims. ." A "dependent claim"~~ does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim~~ incorporates all ~~of~~ the requirements of the claim(s) to which it refers, and~~. The dependent claim~~ then adds

its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if A product [or process] that meets all of the requirements of both the dependent claim and anythe claim(s) to which it refers, the product is covered by that dependent claim.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and [I will now provide] [I have provided] to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.;

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light";
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent";
- "**second duty cycle**" must be different from the "first duty cycle."

[Optional For Comprising: The beginning portion, also known as the preamble, of a claim is called the "preamble" of the claim.  In this case, every Asserted Claim eitheroften uses the word "comprising" in its preamble or depends from a claim whose

preamble uses the word "comprising." .² The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.³

For any words in the claimsclaim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

**Masimo's Position: Revised Proposed Final Instruction No. 12A**

Masimo updated instruction 12A to remove three mentions of invalidity because that issue is no longer for the jury to decide.

Despite the Court's rulings to the contrary, Apple requests an untimely construction of "patient" (and of "patient monitor" though it moved and changed that construction to the next new instruction, 12B.1). As Masimo previously explained (*see* Dkt. 2765 at 86-87), and will explain further in its to-be-filed brief in response to Apple's most recent bench memo (Dkt. 2814), the Court should reject Apple's attempt to provide any new constructions to the jury at this late stage of the case. This Court has already explained: "The Court did not construe the term, 'patient.' Plain and ordinary meaning applies." Dkt. 2745, 2771 (MSJ and Dauber Order) at 18. Additionally, the jury has had notebooks throughout trial with the Court's claim constructions. The jury notebooks include no construction for "patient" (or "patient monitor"). *See* 10/20/2025 Tr. at 7-8 (Court: "I don't know that I'm willing to go beyond constructions in the juror notebook."). Thus, Apple's proposal to instruct the jury at the conclusion of trial that the Court construed "patient" is untimely, improper, and as explained in Masimo's to-be-filed brief, extremely prejudicial to Masimo.

Thus, the Court should adopt Masimo's Proposed Final Instruction No. 12A, and reject Apple's Proposed Final Instruction No. 12B, for the reasons Masimo previously explained (*see* Dkt. 2765 at 86-87).

## APPLE'S REVISED PROPOSED FINAL INSTRUCTION NO. 12B[6]

## CLAIM CONSTRUCTION

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are referred to interchangeably as the "elements," "limitations," or "requirements" of the claim. The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim. The asserted independent claim in this case is Claim 11 of the '776 Patent. The remainder of the Asserted Claims—namely Claims 12-14 of the '776 Patent—are dependent claims. A "dependent claim" incorporates all the requirements of the claim(s) to which it refers, and then adds its own requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if a product meets all the requirements of the dependent claim and any claim(s) to which it refers, the product is covered by that dependent claim.

---

[6] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of certain claim terms and I will now provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement:

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light";
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent";
- "**patient**" means "a person receiving care from a medical professional";
- "**second duty cycle**" must be different from the "first duty cycle."

The beginning portion of a claim is called the "preamble" of the claim. In this case, every Asserted Claim either uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused Feature includes all the requirements of that claim, the claim is infringed. This is true even if the Accused Feature contains additional elements.

For any words in the claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent.

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement.  These issues are yours to decide.

**REDLINED APPLE'S REVISED PROPOSED FINAL INSTRUCTION NO. 12B**

**CLAIM CONSTRUCTION**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to interchangeably as the "claim elements," "limitations," or "requirements" of the claim limitations." The coverage of a patent is assessed claim-by-claimclaim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim. The asserted independent claim in this case is Claim 11 of the '776 Patent. The remainder of the Asserted Claims (Claims 12-14 of the '776 Patent) are dependent claims. A "dependent claim" incorporates all the requirements of the claim(s) to which it refers, and then adds its own requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. Therefore, if a product meets all the requirements of the dependent claim and any claim(s) to which it refers, the product is covered by that dependent claim.

You will first need to understand what each claim covers in order to decide

whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you , I have determined the meaning of certain claim terms and [I will now provide] [I have provided] to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.:

- "**processing characteristics**" means "characteristics determined from a signal received from one or more detectors configured to detect light;"
- "**duty cycle**" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage, wherein the duty cycle cannot be zero percent;"
- "**patient**" means "a person receiving care from a medical professional"
- "**second duty cycle**" must be different from the "first duty cycle."

[Optional For Comprising:  The beginning portion, also known as the preamble, of a claim often of a claim is called the "preamble" of the claim. In this case, every Asserted Claim either uses the word "comprising" in its preamble or depends from a claim whose preamble uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product Accused Feature includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product Accused Feature contains additional elements.]

[Optional For Consisting:  The beginning portion, also known as the preamble, of a claim often uses the word "consisting of." The word "consisting of," when used in the preamble, means "including the following and excluding others." When "consisting of" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim and that the accused product includes additional elements, then claim is not infringed.]

For any words in the ~~claim~~claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement ~~and invalidity~~. These issues are yours to decide.

[This instruction should only be given where dependent claims are at issue.]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all ~~of~~ the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim(s) [ ] of the [ ] patent are each independent claims.

The remainder of the claims in the [ ] patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

1    ~~[Note: It may be helpful to submit to the jury a chart setting forth all dependencies~~
2    ~~for each dependent claim.]~~

3

4    **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions §§ 2.1, 2.1a.

1

### Apple's Position: Revised Proposed Final Instruction No. 12B

2    The Federal Circuit Bar Association model that both sides agree is an appropriate

3    starting place for this instruction contemplates that the jury should be instructed on the

4    meaning of all claim terms that the Court has defined.  The chief remaining dispute is

5    whether Apple's proposed instruction should include the terms "patient," as this Court

6    interpreted that terms in its ruling on the parties' summary judgment and *Daubert*

7    motions.  *See* Dkt. 2745 at 18.  During the October 20, 2025 pretrial conference hearing,

8    this Court indicated that it was still considering whether to provide the jury with claim

9    constructions of the "patient" term that is consistent with its discussions of that term in

10    its October 17, 2025 *Daubert*/MSJ Order.  *See* 11/20/25 Hrg. Tr. 6-8.  Apple respectfully

11    submits that it should do so.

12    Apple's proposed language regarding "patient" is drawn directly from this Court's

13    ruling holding the "plain and ordinary meaning of the term" is "'a person receiving care

14    from a medical professional.'"  Dkt. 2745 at 18.  This Court provided this definition in

15    order to resolve a dispute between the parties that otherwise would (improperly) be in

16    front of the jury.  *Id.* ("[R]esolving a material claim construction dispute is not a task for

17    the jury.").  Apple submits that providing a definition of "patient" in the jury instructions

18    is the best way for the Court to communicate its resolution of this dispute to the jury.

19    The parties also disagree whether this instruction should refer to "Accused

20    Features" rather than to "Accused Product."  Apple submits it should, as the Accused

21    Features (Workout Mode and High / Low Heart Rate Notifications) are the only aspects

22    of Apple Watch that Dr. Madisetti alleges infringe the '776 Patent.  *See supra* Apple's

23    Position on Final Instruction No. 2B.

24

25

26

27

28

1

2

## APPLE'S SUPPLEMENTAL PROPOSED FINAL INSTRUCTION NO. 12B.1[7]
## "PATIENT MONITOR"

3

4

5

6

7

8

9

10

11

The Asserted Claims in the '776 Patent are apparatus claims.  To infringe an apparatus claim, a device must meet each and every requirement of the claim.  Here, the asserted claims require a "patient monitor." A patient monitor is a device designed to capture important medical events while connected to a patient.  In terms of performance, a patient monitor need not capture 100 percent of important medical events, but it must be designed not to miss important medical events.  In assessing Masimo's infringement allegations, you must decide whether Apple Watch's accused High/Low Heart Rate Notifications make Apple Watch a "patient monitor" that meets the requirements of the asserted claims.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[7] **Authority:** *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002); Dkt. 2745 at 18; Dkt. 2790 at 3-4.

**Apple's Position: Supplemental Proposed Final Instruction No. 12B.1**

Apple maintains its position that the Court should construe "patient monitor" for the jury for the reasons set forth in its Bench Memorandum Regarding "Patient Monitor." *See generally* Dkt. 2814 [Bench Memorandum Regarding "Patient Monitor"]; *see also* Dkt. 2790 at 3-4 (MIL order defining "patient monitor"); Dkt. 2745 at 18 (summary judgment order defining "patient"). Apple now proposes a standalone "patient monitor" final instruction to address the misimpressions and juror confusion created by Dr. Madisetti's testimony, which contradicted the '776 patent's intrinsic record, the testimony of Masimo's fact witnesses, and the Court's pretrial rulings and was inconsistent with principles of claim construction. *See* Dkt. 2814 at 9-13. Specifically, Apple's proposal conveys the logical import of this Court's pretrial rulings (and the proper reading of the intrinsic evidence and the '776 patent inventor's testimony) that a "patient monitor" must be designed to capture important medical events but that its actual performance need not achieve 100 percent event capture.

**Masimo's Position: Supplemental Proposed Final Instruction No. 12B.1**

For all the reasons explained in Masimo's to-be-filed brief in response to Apple's most recent bench memo (Dkt. 2814), as well as the reasons Masimo previously explained in jury instructions (*see* Dkt. 2765 at 86-87), the Court should reject Apple's attempt to provide any new claim constructions to the jury at this late stage of the case.

## MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 14[8]
## INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT TO INFRINGE ARE IMMATERIAL

In this case, Masimo asserts that Apple has infringed the '776 Patent. Apple is liable for infringing Masimo's patent if you find that Masimo has proven that it is more likely than not that Apple imported, offered to sell, or sold the invention defined in at least one claim of Masimo's patent during the term of the '776 Patent.

A party can infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. Additionally, the intent of the designers of the accused products is immaterial. What matters for infringement is how the accused products actually work.

---

[8] **Authority:** AIPLA Model Patent Jury Instructions § 3.1; 35 U.S.C. § 271(a); Dkt. 2790 at 7-8; *Rex Medical, L.P. v. Intuitive Surgical, Inc.*, No. 2024-1072, ---F.4th---, 2025 WL 2799030, at *10-11 (Fed. Cir. Oct. 2, 2025); *Cochlear Bone Anchored Sol'ns AB v. Oticon Med. AB*, 958 F.3d 1348, 1356 (Fed. Cir. 2020); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754, 760-61 n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997).

# REDLINED MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 14

# INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT TO INFRINGE ARE IMMATERIAL

In this case, Masimo [the Plaintiff] asserts that Apple[the Defendant] has ~~directly~~ infringed the '776 Patent.  Apple[abbreviated patent number] patent. [The Defendant] is liable for ~~directly~~ infringing Masimo's[the Plaintiff]'s patent if you find that Masimo[the Plaintiff] has proven that it is more likely than not that Apple~~the Defendant] made, used,~~ imported, offered to sell, or sold the invention defined in at least one claim of Masimo's[the Plaintiff]'s patent during the term of the '776[abbreviated patent number] patent.

A party can ~~directly~~ infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.  Additionally, the intent of the designers of the accused products is immaterial.  What matters for infringement is how the accused products actually work.

**Model:** AIPLA Model Patent Jury Instructions § 3.1.

1    **Masimo's Position: Revised Proposed Final Instruction No. 14**

2        The Court should include two additional sentences at the end of Masimo's original

3    proposed instruction: "Additionally, the intent of the designers of the accused products

4    is immaterial.  What matters for infringement is how the accused products actually

5    work."  This language is necessary to explain relevant law to the jury in light of Apple's

6    argument that, in deciding infringement, the jury should consider the intent of the

7    designers of the accused products.

8        Throughout trial, Apple has argued and suggested to the jury that Apple's intent

9    in designing the Apple Watch somehow determines whether the device infringes Claim

10   11.  For example, in its opening statement, Apple argued that the Apple Watch "is not a

11   patient monitor. It's not *designed* to capture every event."  11/5/2025 AM Tr. at 68:17-

12   18.  When Masimo objected, Apple argued that "the distinction here is between *designed*

13   to capture important events, which patient monitors *must be designed to do*… versus do

14   they always succeed in that effort?... If it's not designed to capture important events,

15   Your Honor, it's not a patient monitor."  11/6/2025 AM Tr. at 9:6-14.

16       Apple's cross examinations of Masimo witnesses also suggested to the jury that

17   the definition of "patient monitor" is tied to the designer's intent.  *See, e.g.*, 11/7/2025

18   PM Tr. (Madisetti cross) at 22:2-10 (Mueller Q: "That is how [the Apple Watch] is

19   designed, not to provide notifications in times of movement, correct?"); *id.* at 41:5-6

20   (Mueller Q: "Sir, I'm going to ask you to distinguish between design on the one hand

21   versus performance on the other…"); *id.* at 92:13-14 (Mueller Q: "[The Apple Watch

22   is] functioning as designed. It's not designed to be a patient monitor; isn't that true?").

23       This Court has already ruled that the intent of Apple's designers is irrelevant.  For

24   example, the Court precluded Masimo from showing Apple designed the Apple Watch

25   as a patient monitor when it hired individuals with expertise in designing patient

26   monitors to work on the accused product.  Dkt. 2790 at 7-8; Dkt. 2705 at 5-6.  The Court

27   found such evidence was irrelevant, holding: "As to infringement, the issue is whether

28   the Apple Watch, as it was actually designed, is a patient monitor.  The issue is not

-33-

whether Apple hoped to design a patient monitor. ***Either the Apple Watch meets the claim limitations or it does not, regardless of what Apple hoped to accomplish***." Dkt. 2790 at 7.

The Federal Circuit wholly supports this Court's holding. In *Rex Medical L.P. v. Intuitive Surgical, Inc.*, the Federal Circuit rejected a non-infringement argument that a component of the accused product was "designed for a completely different purpose" regardless of how it actually operated. --F.4th--, 2025 WL 2799030, at *11 (Fed. Cir. 2025). The Court held that "it is immaterial whether the designers of the accused devices ***intended*** for the lower portion of the beam to cause the staple pusher to move a staple. What matters for infringement is that the lower portion of the beam ***actually does*** cause the staple pusher to move a staple." *Id.*; *see also Cochlear Bone Anchored Sol'ns AB v. Oticon Med. AB*, 958 F.3d 1348, 1356 (Fed. Cir. 2020) ("To the extent that Cochlear is suggesting that the language [of the claim term at issue] requires a particular intent or objective of a hearing aid designer or manufacturer, we reject the suggestion.").

Thus, the Court should adopt Masimo's Proposed Final Instruction No. 14 for these reasons, as well as the reasons Masimo previously explained (*see* Dkt. 2765 at 101).

1

**Apple's Revised Position: Proposed Final Instruction No. 14**

2      Apple objects to Masimo's proposal to insert a standalone instruction stating that

3  direct infringement liability does not include a knowledge or intent element.  The Federal

4  Circuit Bar Association's model jury instructions—which the parties have relied on for

5  almost all other issues—have no such instruction.  Rather, the model instructions omit

6  any mention of a mental state for direct infringement.  Masimo's prior justification for

7  this instruction—to distinguish the mental state requirements of direct infringement and

8  willful infringement—no longer applies after Masimo dropped its willfulness claim.

9      Nor is Masimo's purported contrary authority persuasive.  The structure of the

10 AIPLA model instructions is fundamentally different from the Federal Circuit Bar

11 Association model instructions, in that the AIPLA instructions are often a series of short

12 paragraphs on a number of discrete sub-issues, rather than (as is generally the case in

13 the Federal Circuit Bar Association model) longer, cohesive instructions that address a

14 number of doctrinal issues in a single passage.  *Compare, e.g.*, AIPLA Model

15 Instructions §§ 6.1-6.82 (a dozen instructions addressing anticipation), *with* Federal

16 Circuit Bar Association Model Instruction 4.3b-1 (single instruction on anticipation).  In

17 two of the three cases Masimo identifies where a standalone instruction was given,

18 moreover, the defendant apparently did not object.  *Panasonic Holdings Corp. v. Getac

19 Tech. Corp.*, No. 8:19-cv-01118 (C.D. Cal. May 13, 2022) Dkt. 315 at Instruction No.

20 34 (listing parties' "***Agreed*** Proposed Jury Instructions" (emphasis added)); *Top

21 Lighting Corp. v. Linco, Inc.*, No. 15-cv-01589 (C.D. Cal. May 14, 2019) Dkt. 191 at 3

22 (chart noting instruction on "Direct Infringement – Knowledge of Patent or Intent To

23 Infringe Is Immaterial" was undisputed).  And in the third case, the defendant apparently

24 objected to ***any*** instruction to the jury on the mental state for direct infringement.  *See

25 EcoServices, LLC v. Certified Aviation Servs, LLC,* No. 5:16-cv-01824, Dkt. 235,

26 Instruction No. 7 (C.D. Cal. June 20, 2018) (defendant arguing that the instruction "is

27 intended to distinguish direct and indirect infringement" and is "not relevant" where "no

28 indirect infringement is alleged" (emphasis and capitalization omitted)).

1    To be clear, Apple does not object to instructing the jury regarding the lack of a

2  mental state requirement for direct infringement, nor does Apple contend that there is a

3  *mens rea* element to Masimo's remaining infringement claim.  Apple objects to the use

4  of a ***standalone*** instruction.  Neither party relies solely on the AIPLA model for virtually

5  any other instruction, and Masimo provides no reason why this instruction should be the

6  chief exception.  The only reason apparent is that Masimo hopes to unbalance the

7  instructions by highlighting a statement of law that it believes is favorable to its position.

8    Instead of highlighting the *mens rea* issue in a standalone instruction, Apple

9  proposes including a more neutral statement—drawn from this Court's instructions in

10  the recent *SPEX* case—to be delivered as part of a longer instruction regarding the

11  standards for direct infringement.  *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 16-

12  cv-1799 (C.D. Cal. Oct. 18, 2024) Dkt. 592 Instruction No. 15.  Indeed, both sets of jury

13  instructions Masimo relies upon above use very similar language to Apple's proposal in

14  Proposed Final Instruction 15B.  *See Panasonic*, Dkt. 385, Instruction No. 23; *Top

15  Lighting Corp. v. Linco, Inc.*, No. 15-cv1589-JVS (C.D. Cal. May 31, 2019) Dkt. 231,

16  Instruction No. 17.

17    Finally, the first paragraph of Masimo's proposed instruction is, at best,

18  duplicative of the direct infringement instruction from the Federal Circuit Bar

19  Association model that the parties have already largely agreed upon.  Masimo does not

20  explain why the jury should be given two overlapping instructions on basic infringement

21  principles, and doing so would risk jury confusion.

22    Apple further objects to Masimo's mid-trial addition of two new final sentences,

23  which are unduly confusing.  To be sure, a jury can permissibly find infringement if an

24  accused device "actually does" perform a claim limitation even if the "designers of the

25  accused device[ did not] intend[]" that action to occur.  *Rex Medical, L.P.*, *v. Intuitive

26  Surgical, Inc.*, -- F.4th --, 2025 WL 2799030, at *11 (Fed. Cir. Oct. 2, 2025).  But

27  Masimo's recitation of that principle risks confusing the jury about a core issue in this

28  case—whether they can consider what a device was designed for when determining

1    whether it fits into a category of devices (here, "patient monitors").  *See* Dkt. 2814

2    [Bench Memorandum Regarding "Patient Monitor"] at 3-8.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 15A[9]
### INFRINGEMENT – LITERAL INFRINGEMENT

There are two types of infringement: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove literal infringement, Masimo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Apple offered for sale or sold within the United States, or imported into the United States, a product that meets all the requirements of an Asserted Claim of the '776 Patent and did so without the permission of Masimo during the time the patent was in force.

You must compare the Accused Products with each and every one of the requirements of a claim to determine whether all the requirements of that claim are met. The Asserted Claims cover what a device is, not what a device does. Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale, or importation, the Accused Products met the claim limitations.

In deciding infringement, the only proper comparison is between the Accused Products and the limitations of the Asserted Claims as the Court has construed the claims previously. You should not compare the Accused Products with any specific example set out in the patent. A product may infringe even if it does not appear as an example in

---

[9] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a; AIPLA Model Patent Jury Instructions § 3.0; *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311–12 (Fed. Cir. 2005); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985); *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1404 (Fed. Cir. 2022); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985); *SPEX Techs., Inc. v. Apricorn*, No. 16-cv-7349 JVS (AGRx), Instruction No. 6 (C.D. Cal. Feb. 7, 2020); *SPEX Techs., Inc. v. Western Digital Techs., Inc.*, No. 8:16-cv-01799-JVS-AGR, Instruction No. 15 (C.D. Cal. Oct. 18, 2024); *MR Techs., GMBH v. Western Digital Techs., Inc.*, No. 8:22-cv-01599-JVS-DFM, Instruction No. 14 (C.D. Cal. July 26, 2024).

1   the patent.  A product may also infringe even if it did not exist when Masimo first filed
2   its patent application in 2001.

3          You learned that Masimo filed the patent application that became the '776 Patent
4   on October 29, 2018.  I have instructed you that the '776 Patent has an effective filing
5   date or priority date of July 2, 2001, which is the date when Masimo filed its first patent
6   application disclosing the inventions of Claims 11-14.  Because of that disclosure,
7   Masimo gains the benefit of that 2001 priority date.  Thus, that Apple may have sold
8   watches before October 29, 2018, but after the priority date, has no bearing on whether
9   sales of the accused watches infringe the '776 Patent.

10         You have heard evidence about both Masimo's products and Apple's Accused
11  Products.  However, in deciding the issue of infringement you may not compare Apple's
12  Accused Products to Masimo's products.

13         You must determine, separately for each Asserted Claim, whether or not there is
14  infringement.  For dependent claims, if you find that a claim to which a dependent claim
15  refers is not infringed, there cannot be infringement of that dependent claim.  On the
16  other hand, if you find that an independent claim has been infringed, you must still
17  decide, separately, whether the Accused Products meet the additional requirement(s) of
18  any Asserted Claims that depend from the independent claim to determine whether those
19  asserted dependent claims have also been infringed.  A dependent claim includes all the
20  requirements of any of the claims to which it refers plus additional requirement(s) of its
21  own.

22
23
24
25
26
27
28

**REDLINED MASIMO'S REVISED PROPOSED FINAL INSTRUCTION NO. 15A**

**INFRINGEMENT—LITERAL INFRINGEMENT**

There are two types of ~~"direct~~ infringement:~~"~~: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove ~~direct infringement by~~ literal infringement, Masimo~~[patent holder]~~ must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Apple~~[alleged infringer] made, used, sold,~~ offered for sale or sold within the United States, or imported into the United States, a [product ~~or process]~~ that meets all ~~of~~ the requirements of an Asserted Claim of the '776 Patent~~a claim~~ and did so without the permission of Masimo~~[patent holder]~~ during the time the ~~[ ]~~ patent was in force. You must compare the Accused Products~~[product or process]~~ with each and every one of the requirements of a claim to determine whether all ~~of~~ the requirements of that claim are met. The Asserted Claims cover what a device is, not what a device does. Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale, or importation, the Accused Products met the claim limitations.

In deciding infringement, the only proper comparison is between the Accused Products and the limitations of the Asserted Claims as the Court has construed the claims previously. You should not compare the Accused Products with any specific example set out in the patent. A product may infringe even if it does not appear as an example in the patent. A product may also infringe even if it did not exist when Masimo first filed its patent application in 2001.

You learned that Masimo filed the patent application that became the '776 Patent on October 29, 2018. I have instructed you that the '776 Patent has an effective filing date or priority date of July 2, 2001, which is the date when Masimo filed its first patent application disclosing the inventions of Claims 11-14. Because of that disclosure, Masimo gains the benefit of that 2001 priority date. Thus, that Apple may have sold watches before October 29, 2018, but after the priority date, has no bearing on whether sales of the accused watches infringe the '776 Patent.

You have heard evidence about both Masimo's products and Apple's Accused Products. However, in deciding the issue of infringement you may not compare Apple's Accused Products to Masimo's products.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Products meet[product or process] meets the additional requirement(s) of any Asserted claims that depend from the independent claim to determine whether those asserted dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a.

**Masimo's Position: Revised Proposed Final Instruction No. 15A**

Masimo proposes adding three paragraphs to its proposed instruction 15A on literal infringement. These additions are necessary and helpful to clarify the applicable law for infringement in light of Apple's misleading arguments to the jury.

***First***, Masimo proposes adding the paragraph:

> In deciding infringement, the only proper comparison is between the Accused Products and the limitations of the Asserted Claims as the Court has construed the claims previously. You should not compare the Accused Products with any specific example set out in the patent. A product may infringe even if it does not appear as an example in the patent. A product may also infringe even if it did not exist when Masimo first filed its patent application in 2001.

The paragraph accurately reflects the law of infringement. Indeed, this Court has included at least the first two sentences verbatim in prior jury instructions. *See SPEX Techs., Inc. v. Apricorn*, No. 16-cv-7349 JVS (AGRx), Instruction No. 6 (C.D. Cal. Feb. 7, 2020); *SPEX Techs., Inc. v. Western Digital Techs., Inc.*, No. 8:16-cv-01799-JVS-AGR, Instruction No. 15 (C.D. Cal. Oct. 18, 2024); *MR Techs., GMBH v. Western Digital Techs., Inc.*, No. 8:22-cv-01599-JVS-DFM, Instruction No. 14 (C.D. Cal. July 26, 2024).

But the whole paragraph is necessary to specifically address confusing statements and arguments that Apple has made at trial. For example, Apple argued in its opening statement that, "You can look high, low, up, down, in the patient monitor patent that you have before you, and ***you will not see a watch***." 11/5/2025 AM Tr. at 64:19-21. During Apple's cross examination of Masimo's expert, Dr. Madisetti, Apple suggested that the '776 patent cannot cover a watch because it did not appear as an embodiment in the patent specification. *See, e.g.*, 11/7/2025 PM Tr. (Madisetti cross) at 74:17-18 (Mueller Q: "And, in fact, there's no picture or description of a watch in the '776 patent, correct?").

But the patent need not disclose the accused device. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002) ("[T]he specifications did not

need to include a drawing of a multi-component, curved member for the claimed invention to cover that particular embodiment."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit.").   Apple emphasized that Masimo had not even started to build its commercial embodiment of its W1 Watch until 18 years after the filing of the 2001 application.  *See, e.g.*, 11/7/2025 PM Tr. (Madisetti cross) at 75:14-19 (Mueller Qs: "And the W1 watch was released in 2022, 21 years after the provisional application in July of 2001, right?" and "21 years, and Masimo had not even started the development process to build that watch 18 years after the 2001 application, right?").

The final and fourth sentence addresses any implication that a patent cannot read on or even relate to a product released many years after the patent was filed. Such a suggestion also contradicts the law of infringement.  *SRI Int'l*, 775 F.2d at 1121 ("The law does not require the impossible. Hence, it does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention.").

**_Second_**, Masimo proposes adding the following paragraph:

You learned that Masimo filed the patent application that became the '776 Patent on October 29, 2018.  I have instructed you that the '776 Patent has an effective filing date or priority date of July 2, 2001, which is the date when Masimo filed its first patent application disclosing the inventions of Claims 11-14.  Because of that disclosure, Masimo gains the benefit of that 2001 priority date.  Thus, that Apple may have sold watches before October 29, 2018, but after the priority date, has no bearing on whether sales of the accused watches infringe the '776 Patent.

This paragraph is also needed to address misleading arguments by Apple and to provide a more meaningful understanding of a patent's priority date.  Apple argued in its opening statement that "[n]otably, Apple Watch was released in 2015, **_three years_**

-43-

*before this application*. The original High Heart Rate Notification feature was released as Mr. Horne said in 2017… *The issue date of this patent was October 8 of 2019*… So the high/low heart notifications were released *before this patent issued*." 11/5/2025 AM Tr. at 60:19-61:2. Similarly, Apple argued that its engineers "developed the High/Low Heart Rate Notification features . . . years, years, before the original application . . . and . . . before this patent issued." *Id.* at 61:4-11.

Here, too, Apple's suggestion is contrary to law because what counts is a patent's priority date and not when an intervening application (like the application leading to the '776 patent) is filed. *See BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1404 (Fed. Cir. 2022) (upholding district court's grant of preliminary injunction "[e]ven where a patent is applied for and granted after the allegedly infringing product enters the market."); *see id.* at 1404-5 ("[T]here is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market.") (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988)).

*__Third__*, Masimo proposes adding language tracking AIPLA Model Patent Jury Instructions § 3.0:

> You have heard evidence about both Masimo's products and Apple's Accused Products. However, in deciding the issue of infringement you may not compare Apple's Accused Products to Masimo's products.

During its cross examination of Dr. Madisetti, Apple compared the Apple Watch to Masimo's products to support its non-infringement position. *See, e.g.*, 11/7/2025 PM Tr. at 72:2-4 (Meuller Q: "[Masimo's SET technology is] Designed differently than Apple Watch, which does not measure high and low heart rate notifications during conditions of movement, true?"); *id.* at 80:5-17 (comparing Apple Watch with Masimo's Rad-7: "Sir, if I were to go like this (indicating), Apple Watch would not notify the user of high or low heart rates… This would report, this device right here, the Rad-7 root platform would report even while I'm moving, correct?"). But it is black letter law, that "[i]nfringement, literal or by equivalence, is determined by comparing an accused

product not with a preferred embodiment described in the specification, ***or with a commercialized embodiment of the patentee***, but with the properly and previously construed claims in suit." *SRI Int'l*, 775 F.2d at 1121.

The Court should instruct the jury on the specific legal standards for infringement discussed above to mitigate any confusion caused by Apple's misleading statements at trial. Thus, the Court should adopt Masimo's Proposed Final Instruction No. 15A for these reasons, as well as the reasons Masimo previously explained (*see* Dkt. 2765 at 106-109).

**APPLE'S PROPOSED FINAL INSTRUCTION NO. 15B[10]**

**INFRINGEMENT – LITERAL INFRINGEMENT**

As relevant to this case, there are two types of infringement: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." Apple may infringe one of the Asserted Claims even though Apple in good faith believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.

In order to prove literal infringement, Masimo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Apple offered for sale or sold within the United States, or imported into the United States, a product that meets all the requirements of an Asserted Claim of the '776 Patent and did so without the permission of Masimo during the time the patent was in force. You must compare the Accused Features with each and every one of the requirements of a claim to determine whether all the requirements of that claim are met. The Asserted Claims cover a particular type of device, whose characteristics are defined by the claim limitations. Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale, or importation, the Accused Features met the claim limitations. In determining whether the Accused Features have the characteristics required by the claim limitations, you may consider how the Accused Features are ultimately used—along with other evidence of the characteristics of the Accused Features.

You must determine, separately for each Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Features meet the additional requirement(s) of

---

[10] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a; *SPEX Techs., Inc. v. W. Digital Techs., Inc.*, No. 16-cv-1799, Dkt. 592 Instruction No. 15 (C.D. Cal.); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012); *In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1286 (Fed. Cir. 2016); 10/17/25 Tentative MIL Order at 1-2.

any Asserted Claims that depend from the independent claim to determine whether those asserted dependent claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

    If you find that Masimo has proven by a preponderance of the evidence that each and every limitation of an Asserted Claim is present in an Accused Feature, then you must find that the Accused Feature literally infringes that claim.  Conversely, if you find that an Accused Feature meets fewer than all the requirements of a claim—in other words, if there is at least one claim requirement that is missing from the Accused Feature—then that Accused Feature does not literally infringe that claim.

**REDLINED APPLE'S PROPOSED FINAL INSTRUCTION NO. 15B**

**INFRINGEMENT—LITERAL INFRINGEMENT**

~~There~~As relevant to this case, there are two types of ~~"direct~~ infringement~~"~~: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." Apple may infringe one of the Asserted Claims even though Apple in good faith believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.

In order to prove ~~direct infringement by~~ literal infringement, ~~[patent holder]~~Masimo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that ~~[alleged infringer] made, used, sold,~~Apple offered for sale or sold within the United States, or imported into the United States, a ~~[product or process]~~that meets all ~~of~~the requirements of ~~a claim~~an Asserted Claim of the '776 Patent and did so without the permission of ~~[patent holder]~~Masimo during the time the ~~[ ]~~patent was in force. You must compare the ~~[product or process]~~Accused Features with each and every one of the requirements of a claim to determine whether all ~~of~~the requirements of that claim are met. The Asserted Claims cover a particular type of device, whose characteristics are defined by the claim limitations. Therefore, for infringement, the issue is whether, at the time of the offer for sale, sale, or importation, the Accused Features met the claim limitations. In determining whether the Accused Features have the characteristics required by the claim limitations, you may consider how the Accused Features are ultimately used—along with other evidence of the characteristics of the Accused Features.

You must determine, separately for each ~~asserted claim~~Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the ~~[product or process] meets~~Accused Features meet the additional requirement(s) of any ~~claims~~Asserted Claims that depend from the

independent claim to determine whether those asserted dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

If you find that Masimo has proven by a preponderance of the evidence that each and every limitation of an Asserted Claim is present in an Accused Feature, then you must find that the Accused Feature literally infringes that claim. Conversely, if you find that an Accused Feature meets fewer than all the requirements of a claim—in other words, if there is at least one claim requirement that is missing from the Accused Feature—then that Accused Feature does not literally infringe that claim.

**Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1a.

**Apple's Revised Position: Proposed Final Instruction No. 15B**

The parties agree that the Federal Circuit Bar Association model should serve as the framework for this instruction. The remaining disputes are narrow.

*First*, Apple has added language clarifying that use of Apple Watch is relevant for determining whether Watch constitutes a "patient monitor." This language was originally added in response to this Court's tentative MIIL ruling, which stated that "[t]he jury instructions should carefully track the relevant authority on" the relevance of the manner of use of the Accused Features. Dkt. 2771 at 2. While the sentence referencing jury instructions has been removed from the final MIL order, *see* Dkt. 2778 at 2, Apple has retained its proposal in case the Court wishes to instruct the jury on the issue. That said, Apple believes the model instruction is sufficient on this point and would have no objection to simply omitting language regarding use.

Masimo's proposal is largely incorporated within Apple's language, but would be confusing to the jury standing alone, as it incorrectly suggests that the use of Apple Watch is *never* relevant to infringement. While Masimo asserts that Apple's proposal puts "undue emphasis" on the relevance of use, Apple's proposal is consistent with the sentence in this Court's tentative discussed above and is certainly preferable to Masimo's proposal, which would provide the jury with no guidance whatsoever on when "use" can be considered.

*Second*, Apple has proposed several additional modifications to the Federal Circuit Bar Association model that are drawn directly from this Court's corresponding instruction delivered in the recent *SPEX Technologies, Inc. v. W. Digital Technologies, Inc.* trial. No. 16-cv-1799 (C.D. Cal. Oct. 18, 2024) Dkt. 592 Instruction No. 15. In particular, Apple proposes adding (1) this Court's statement that there is no *mens rea* requirement to establish direct infringement in the place of Masimo's unbalanced standalone and (2) a final paragraph to make clear to the jury that it should find infringement if and only if Masimo proves all elements by a preponderance of the evidence.

Masimo does not dispute that Apple's modifications are drawn directly from this Court's instruction in *SPEX*. Masimo's chief objection to Apple's first modification (regarding *mens rea*) is that Apple did not reproduce ***other*** language from the *SPEX* case. But if Masimo believed that such language were necessary and appropriate, Masimo should have proposed it. And while Masimo suggests that Apple's language somehow "softens" the *mens rea* requirement, Apple's proposed wording is very similar to two of the three jury instructions upon which Masimo relies in requesting its standalone *mens rea* instruction. *See Panasonic*, Dkt. 385, Instruction No. 23 ("Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of the patent."); *Top Lighting Corp.*, Dkt. 231, Instruction No. 17 ("Someone can infringe a patent without knowing what they are doing is an infringement of the patent. They also may infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.").

Masimo also (wrongly) asserts that Apple's second modification is improperly duplicative of language that appears in the first paragraph of the current proposed instruction. In fact, that same supposed "duplication" appeared in *SPEX*, which includes a near identical first paragraph to what the parties have proposed here:

> SPEX must prove by a preponderance of the evidence … that Western Digital … sold, or offered for sale … a product that meets all of the requirements of a claim[.] You must compare each of the Accused Products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met."

*SPEX*, Dkt. 592, Instruction No. 15.

Finally, Masimo's assertion that the second sentence of Apple's proposed second modification is "confusing," and "unnecessary and unhelpful" is simply an (unwarranted) critique of this Court's prior instruction. Masimo does not seriously

dispute that Apple's proposed instruction—taken as a whole—includes the proper standard of proof and the right legal test. The sentence Masimo targets merely emphasizes the crucial point that there can be no infringement if the accused features do not meet every claim limitation.

*Third*, Apple again proposes to refer to "Accused Features" rather than "Accused Products," since only Workout Mode and High / Low Heart Rate Notifications are germane to the infringement determination. *See supra* Apple's Position: Final Instruction No. 2B.

*Fourth*, Masimo added three paragraphs of unnecessary new instructions on the fifth day of trial that nearly double the length of its prior proposed instruction.

The first and third new paragraphs are merely an elaboration on the basic principle—already reflected in the agreed-upon portion of the instruction—that direct infringement requires comparing each and every claim element to the accused products themselves. Masimo's additions will only confuse the jury regarding that simple and straightforward test. That is particularly so because the examples set out in the '776 patent and the Masimo products that the patent's inventor was working on at the time of the invention *are* relevant to the infringement-adjacent issue of the plain and ordinary meaning of the term "patient monitor," which the jury must resolve if this Court does not instruct the jury on Apple's proposed claim construction. *See generally* Dkt. 2814 [Bench Memorandum Regarding "Patient Monitor"].

Masimo's second new paragraph—regarding the effective filing date and priority date of the '776 patent—has no basis in any model or jury instruction precedent. It is also wholly irrelevant to the dispute between the parties, which undisputedly turns on whether the accused Apple Watch models with accused High/Low Heart Rate Notifications infringed the now-expired '776 patent between the dates of ***January 9, 2020 and June 26, 2022***. *See* Joint Proposed Final Instruction No. 27.

## MASIMO'S PROPOSED FINAL INSTRUCTION NO. 16A[11]

## INFRINGEMENT – DOCTRINE OF EQUIVALENTS

If you find that Apple sells, offers to sell within, or imports into the United States Accused Products that do not literally meet all the elements of a claim and thus do not literally infringe that claim, there can still be infringement if the Accused Products satisfy that claim element under the doctrine of equivalents.   In this case, there is one exception to this rule: The claim element "processing characteristics" cannot be satisfied by the doctrine of equivalents.

Under the doctrine of equivalents, products infringe a claim if the Accused Products contain elements that literally meet or are equivalent to each and every element of the claim.  You may find that an element of the Accused Products is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure of the Accused Products: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the element of the claim.  In order to prove infringement under the doctrine of equivalents, Masimo must prove the equivalency of the structure of the Accused Products to the claim element by a preponderance of the evidence.  Thus, each element of a claim must be met by the Accused Products either literally or under the doctrine of equivalents for you to find infringement.

---

[11] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c.

1

**REDLINED MASIMO'S PROPOSED FINAL INSTRUCTION NO. 16A**

2

**INFRINGEMENT—DOCTRINE OF EQUIVALENTS**

3  If you find that Applea [person] [company] makes, uses, sells, offers to sell within,

4 or imports into the United States Accused Productsa [product] [process] that dodoes not

5 literally meet all of the elements of a claim and thus dodoes not literally infringe that

6 claim, there can still be direct infringement if the Accused Products satisfythat [product

7 or process] satisfies that claim element elements "under the doctrine of equivalents. In

8 this case, there is one exception to this rule: The claim element "processing

9 characteristics" cannot be satisfied by the doctrine of equivalents.."

10  Under the doctrine of equivalents, products infringea [product or process]

11 infringes a claim if the accused Products contain[product or process] [contains elements

12 or performs steps] that literally meet or are equivalent to each and every element of the

13 claim. You may find that an element of the Accused Productsor step is equivalent to an

14 element of a claim that is not met literally if a person having ordinary skill in the field

15 of technology of the patent would have considered the differences between them to be

16 "insubstantial" or would have found that the [structure of the Accused Products:or

17 action]: (1) performs substantially the same function, and (2) works in substantially the

18 same way, (3) to achieve substantially the same result as the element of the claim. In

19 order to prove infringement under the doctrine of by "equivalents, Masimo," [patent

20 holder] must prove the equivalency of the [structure of the Accused Productsor action]

21 to the claim element by a preponderance of the evidence. Thus, each element of a claim

22 must be met by the Accused Products[accused product or process] either literally or

23 under the doctrine of equivalents for you to find infringement.

24

25 **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c.

26

27

28

**Masimo's Position: Proposed Final Instruction No. 16A**

The parties previously agreed upon a proposed instruction on the doctrine of equivalents, except for whether to use the language "Accused Products" or "Accused Features." *See* Dkt. 2765 at 116-122 (Apple: "The parties' only dispute regarding the doctrine of equivalents instruction concerns the same 'Accused Feature' / 'Accused Products' issue addressed above."). The parties' largely agreed-upon instruction closely followed Fed. Cir. Bar. Assoc. Model Patent Jury Instruction § 3.1c.

Apple now seeks to depart significantly from the model instruction and from the parties' previously agreed-upon language. But Apple's proposal adds instructions that are irrelevant to the issues in this case and would confuse the jury.

**First**, Apple proposes adding the following language:

To meet its burden, Masimo must rely on specific testimony from an expert witness to provide a meaningful explanation why the differences between the asserted claim element and the Accused Features are insubstantial. Generally worded expert testimony about the overall similarity between the claims and the accused features will not suffice

This paragraph is confusing because it is not relevant to any issue presented in this case. As the Court is well aware, one way to prove infringement under the doctrine of equivalents is to present evidence of insubstantial differences "on a limitation-by-limitation basis" rather than "[g]eneralized testimony as to the overall similarity between the claims and the accused infringer's product." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1304-05 (Fed. Cir. 2007).

However, in this case, there is only a single disputed limitation—whether the accused device is a "patient monitor." Accordingly, Dr. Madisetti's testimony of equivalency was unmistakably linked to that claim limitation, as Apple has not disputed any other limitation. Instructing the jury on the prohibition against "[g]enerally worded

1    expert testimony about the overall similarity between the claims and the accused

2    features" would thus raise an issue not supported by the record at trial.

3         **Second**, Apple proposes adding the following language: "The doctrine of

4    equivalents cannot be used to nullify or expand the language of a patent claim."  This

5    newly added language is both irrelevant and improper.  In support of its proposal, Apple

6    cites *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1367 (Fed. Cir.

7    2020), where the court found that "fluorinated" and "non-fluorinated" are "diametric

8    opposites" and thus cannot be equivalent because that would "vitiate" the claim

9    language.  Apple has never contended that the claimed patient monitor and the accused

10   Apple Watches are "diametric opposites," so Apple's proposed vitiation instruction is

11   not relevant to the actual issues in this case.  Moreover, vitiation is "***a legal conclusion***

12   of a lack of equivalence based on the evidence presented and the theory of equivalence

13   asserted." *Id.* (emphasis added).  Accordingly, it would be improper to task the jury—a

14   factfinder—with making this legal conclusion.

15        Finally, all of the cases cited by Apple do not pertain to instructing the jury.

16   Rather, they are cases where the appellate court is examining the record to determine

17   whether substantial evidence supports a verdict of infringement under the doctrine of

18   equivalents.  But, as mentioned above, this case does not present the complexities of

19   Apple's cited cases involving multiple limitations not satisfied literally or the legal issue

20   of vitiation.

21

22

23

24

25

26

27

28

## APPLE'S REVISED PROPOSED FINAL INSTRUCTION NO. 16B[12]

## INFRINGEMENT – DOCTRINE OF EQUIVALENTS

If you find that Apple sells, offers to sell within, or imports into the United States Accused Features that do not literally meet all the elements of a claim and thus do not literally infringe that claim, there can still be infringement if the Accused Features satisfy that claim element under the doctrine of equivalents.  In this case, there is one exception to this rule: The claim element "processing characteristics" cannot be satisfied by the doctrine of equivalents.

Under the doctrine of equivalents, products infringe a claim if the Accused Features contain elements that literally meet or are equivalent to each and every element of the claim.  You may find that an element of the Accused Features is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure of the Accused Features: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the element of the claim.

In order to prove infringement under the doctrine of equivalents, Masimo must prove the equivalency of the structure of the Accused Features to the claim element by a preponderance of the evidence.  To meet its burden, Masimo must rely on specific testimony from an expert witness to provide a meaningful explanation why the differences between the asserted claim element and the Accused Features are insubstantial.  Generally worded expert testimony about the overall similarity between the claims and the Accused Features will not suffice.

The doctrine of equivalents cannot be used to nullify or expand the language of a patent claim.  Each element of a claim must be met by the Accused Features either

---

[12] **Authority:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c; *NexStep, Inc. v. Comcast Cable Communications,* LLC, 119 F.4th 1355, 1371 (Fed. Cir. 2024); *Bio-Rad Laboratories, Inc.,* 967 F.3d 1353, 1367 (Fed. Cir. 2020); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1109 (Fed. Cir. 1996).

1  literally or under the doctrine of equivalents for you to find infringement.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REDLINED APPLE'S REVISED PROPOSED FINAL INSTRUCTION NO. 16B**

**INFRINGEMENT—DOCTRINE OF EQUIVALENTS**

[This instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.]

If a [person] [company] makes, uses, you find that Apple sells, offers to sell within, or imports into the United States a [product] [process] that does Accused Features that do not literally meet all of the elements of a claim and thus does do not literally infringe that claim, there can still be direct infringement if that [product or process] satisfies the Accused Features satisfy that claim elements "element under the doctrine of equivalents." In this case, there is one exception to this rule: The claim element "processing characteristics" cannot be satisfied by the doctrine of equivalents.

Under the doctrine of equivalents, a [product or process] infringes products infringe a claim if the accused [product or process] [contains Accused Features contain elements or performs steps] that literally meet or are equivalent to each and every element of the claim. You may find that an element or step of the Accused Features is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action] of the Accused Features: (1) performs substantially the same function and, (2) works in substantially the same way, (3) to achieve substantially the same result as the element of the claim.

In order to prove infringement by "under the doctrine of equivalents," [patent holder] Masimo must prove the equivalency of the [structure or action] of the Accused Features to the claim element by a preponderance of the evidence. To meet its burden, Masimo must rely on specific testimony from an expert witness to provide a meaningful explanation why the differences between the asserted claim element and the Accused Features are insubstantial. Generally worded expert testimony about the overall similarity between the claims and the Accused Features will not suffice.

1       The doctrine of equivalents cannot be used to nullify or expand the language of a

2 patent claim. ~~Thus, E~~each element of a claim must be met by the ~~[accused product or~~

3 ~~process]~~Accused Features either literally or under the doctrine of equivalents for you to

4 find infringement.

5       ~~Known interchangeability of the claim element and the proposed equivalent is a~~

6 ~~factor that can support a finding of infringement under the doctrine of equivalents. In~~

7 ~~order for the [structure or action] to be considered interchangeable, the [claim element]~~

8 ~~must have been known at the time of the alleged infringement to a person having~~

9 ~~ordinary skill in the field of technology of the patent. Interchangeability at the present~~

10 ~~time is not sufficient.~~

11       ~~If claims with means-plus-function clauses are at issue: When the claim element~~

12 ~~that is not literally met by the [product or process] is a ["means-plus- function" or "step-~~

13 ~~plus-function"] element, and if you determined that there is no "literal infringement"~~

14 ~~because there is no [structure or set of structures/action or set of actions] in the [product~~

15 ~~or process] that performs the identical function of the means-plus-function element, you~~

16 ~~may decide that the [structure or action] nonetheless corresponds to the element of the~~

17 ~~claim under the doctrine of equivalents if it performs an "equivalent" function and has~~

18 ~~an "equivalent" [structure or action].~~

19       ~~On the other hand, if you find that the accused [product or process] does not have~~

20 ~~identical or equivalent [structure or set of structures/action or set of actions] to [any of]~~

21 ~~the [set(s) of] [structure(s) or action(s)] that I defined as performing that function in the~~

22 ~~[ ] patent, then you may only find infringement under the doctrine of equivalents if the~~

23 ~~[structure or set of structures/action or set of actions] did not exist at the time the patent~~

24 ~~issued.~~

25

26 **Model:** Fed. Cir. Bar Assoc. Model Patent Jury Instructions § 3.1c.

27

28

**Apple's Position: Revised Proposed Final Instruction No. 16B**

The parties dispute the same "Accused Features" / "Accused Products" issue addressed above.  *See supra* Apple's Position: Final Instruction No. 2B.

Apple has also proposed adding several sentences to the Federal Circuit Bar Association model in light of the first week of trial testimony.  The new material makes clear that (1) the doctrine of equivalents cannot be used to vitiate claim language or otherwise expand the claim's language and (2) Masimo cannot meet its burden unless it presents expert witness testimony that provides a meaningful explanation for why the differences between the asserted claim element and the Accused Features are insubstantial.

These statements closely track the relevant Federal Circuit case law, which provides that (1) the doctrine of equivalents cannot be used to vitiate claim language or justify applying a different claim construction than for literal infringement, *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1366 (Fed. Cir. 2020) ("Claim vitiation presents another bar to a finding of infringement under the doctrine of equivalents."); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1109 (Fed. Cir. 1996) (rejecting district court analysis that, after correctly finding no literal infringement, "applied a different and incorrect claim construction" when assessing doctrine of equivalents), and (2) a patentee "must provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device," *NexStep, Inc. v. Comcast Cable Communications, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024).

Apple submits this additional guidance is necessary in light of Dr. Madisetti's re-direct testimony, which strongly suggested that the jury could ignore the "patient monitor" limitation of the asserted claims so long as they believe the accused Apple Watch with accused High/Low Heart Rate Notifications was "similar" to the invention in the asserted claims:

Q: Did [Apple's counsel] ask you anything about infringement under the doctrine of equivalents for a patient monitor?

A: He did not.

Q: What is the doctrine of equivalents again?

A: It says that if something works … to perform in a similar function in a similar way to produce a similar result, it can be a patient monitor even if it's not the patient monitor as one would understand it to be.

Q: So counsel [was] legally incorrect when he said you could stop reading the claim after the third word [of asserted claim 11]?

A: Again, I'm not a legal expert, but my understanding is that there are ways by which even if it were not a real patient monitor, if it were equal to one as per the DOE … that would be fine.

11/7 PM Tr. 98-99; *see also* Dkt. 2814 [Bench Memorandum Regarding "Patient Monitor"] at 12-13.

In addition, Dr. Madisetti's substantive testimony on why the doctrine of equivalents is purportedly satisfied in this case for the term "patient monitor" was exceptionally cursory—roughly a minute long. *See* 11/7 AM Tr. 85:16-25, 86:11-13. While Apple intends to move for JMOL on this issue at the close of evidence, the jury should also be instructed on the demanding standard (particularized testimony and linking argument) that Masimo must satisfy in order to prevail on this issue. *See NexStep*, 119 F.4th at 1370 ("A finding of infringement under the doctrine of equivalents is exceptional, and we have emphasized that the doctrine of equivalents is the exception … not the rule." (alterations, quotation marks, and citation omitted).

1

2

KNOBBE, MARTENS, OLSON & BEAR, LLP

3  Dated: November 11, 2025          By: */s/ Kendall M. Loebbaka*
                                         Kendall M. Loebbaka

4

5                                        Attorneys for Plaintiffs
                                         MASIMO CORPORATION and
6                                        CERCACOR LABORATORIES, INC.

7

8                                        WILMER CUTLER PICKERING HALE AND DORR, LLP

9  Dated: November 11, 2025          By: */s/ Mark Selwyn*
                                         Mark Selwyn

10

11                                       Attorneys for Defendant
                                         APPLE INC.

12

13

14

15                      **FILER'S ATTESTATION**

16        Pursuant to Local Rule 5-4.3.4 regarding signatures, I hereby attest that

17  concurrence in the filing of this document has been obtained from all signatories above.

18

19  Dated: November 11, 2025    By: */s/ Kendall M. Loebbaka*
                                     Kendall M. Loebbaka

20

21

22

23

24

25

26

27

28