Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Sheila N. Swaroop (Bar No. 203476)
sheila.swaroop@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
Nicholas M. Zovko (Bar No. 238248)
nicholas.zovko@knobbe.com
Kendall M. Loebbaka (Bar No. 285908)
kendall.loebbaka@knobbe.com
Douglas B. Wentzel (Bar No. 313452)
douglas.wentzel@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
Daniel P. Hughes (Bar No. 299695)
daniel.hughes@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Fax: (858) 707-4001

Brian C. Horne (Bar No. 205621)
brian.horne@knobbe.com
Mark D. Kachner (Bar No. 234192)
mark.kachner@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Phone: (310) 551-3450
Fax: (310) 551-3458

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**MASIMO'S RESPONSE TO APPLE'S BENCH MEMORANDUM REGARDING "PATIENT MONITOR"**<br><br>Trial:        November 4, 2025 |

**TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ....................................................................................................... 3

    A.   There Is No Excuse Or Good Cause For Apple's Untimely Request For Supplemental Claim Construction .......................................... 3

    B.   Apple Has Not Shown Good Cause To Modify The Court's Scheduling Order On The Presentation Of Claim Construction Disputes ................................................................................... 5

    C.   *O2 Micro* Does Not Require A Claim Construction ................................. 7

    D.   Entertaining Apple's Request Would Require Supplemental Briefing And Potentially Supplemental Evidence ................................... 10

III.  CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

Page No(s).

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
   2014 WL 3939356 (E.D. Cal. Aug. 11, 2014) ...................................................... 9

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ........................................................ 9

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
   661 F.3d 629 (Fed. Cir. 2011) ........................................................................ 7, 8

*Boston Sci. Corp. v. Johnson & Johnson*,
   534 F. Supp. 2d 1062 (N.D. Cal. 2007) .............................................................. 9

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) ........................................................................ 8

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005) ........................................................................ 9

*Ecolab, Inc. v. Paraclipse, Inc.*,
   2008 WL 3413808 (D. Neb. Aug. 8, 2008) ........................................................ 7

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ........................................................................ 5, 6

*Mobile Hi-Tech Wheels v. CIA Wheel Grp.*,
   514 F. Supp. 2d 1172 (C.D. Cal. 2007) ............................................................ 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................... 2, 7, 8, 9

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
   106 F. Supp. 3d 369 (S.D.N.Y. 2015) ................................................................ 9

*In re Papst Licensing Digital Camera Patent Litig.*,
   778 F.3d 1255 (Fed. Cir. 2015) ........................................................................ 9

*PerdiemCo, LLC. v. Industrack LLC*,
   2016 WL 6432699 (E.D. Tex. Oct. 31, 2016) .................................................... 9

# TABLE OF AUTHORITIES
## (*cont'd*)

Page No(s).

*Rawcar Grp., LLC v. Grace Med., Inc.*,
   2014 WL 12577590 (S.D. Cal. Dec. 16, 2014) ................................................. 6

*Reckitt Benckiser Pharm. Inc. v. Watson Laby's, Inc.*,
   2017 WL 3820943 (D. Del. Aug. 31, 2017) ..................................................... 7

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
   No. 2024-1072, ---F.4th---, 2025 WL 2799030 (Fed. Cir. Oct. 2, 2025) ........... 11

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005) ........................................................................ 9

*SEVEN Networks, LLC v. Google LLC*,
   2018 WL 3472639 (E.D. Tex. July 19, 2018) .................................................. 9

*Skyhook Wireless, Inc. v. Google, Inc.*,
   159 F. Supp. 3d 144 (D. Mass. 2015) .............................................................. 9

*Wi-LAN USA, Inc. v. Apple, Inc.*,
   830 F.3d 1374 (Fed. Cir. 2016) ....................................................................... 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 16 .................................................................................................. 5

LPR 4.3(c) ............................................................................................................. 3

## I. INTRODUCTION

The Apple Watch is a patient monitor configured to measure at least pulse rate. The Apple Watch constantly monitors pulse rate once per second, like the patient monitor disclosed in the '776 Patent. And with respect to the additional functionality of the high/low heart rate algorithm, the Apple Watch is designed to monitor constantly for the medical events of interest—a high or low *resting* heart rate (sometimes referred to as tachycardia or bradycardia).[1] The evidence has established clearly that the Apple Watch includes a patient monitor under the plain and ordinary meaning of that term, so Apple now makes a highly prejudicial longshot for untimely claim construction after Masimo put on its infringement expert based on the plain and ordinary meaning. Notably, during the past ten weeks, Apple has offered *three different* belated constructions of patient monitor. Apple attempted to gerrymander a "construction" based on how it expected Masimo to present its case and now proposes a different construction based on how Masimo is presenting its case. The Court should reject Apple's ploy and adhere to its prior rulings—neither party timely requested construction of "patient monitor," and it has its plain and ordinary meaning.

The procedural history is important. Apple never proposed a construction of "patient" or "patient monitor" during the extensive *Markman* process in 2024. This Court's order required disputed claim terms to be identified *eighteen months ago*, in May 2024. Apple had available at that time the IPR record, the prosecution history, and the specification on which it now relies. Nor did Apple request supplemental claim construction during or after the close of expert discovery. And Apple did not even request supplemental claim construction during dispositive-motion or pre-trial briefing.

Instead of proposing a claim construction, Apple argued that "patient monitor" had a "plain and ordinary meaning" and argued Masimo was seeking to depart from that meaning. Masimo and its experts have adhered fastidiously to the Court's rulings,

---

[1] Apple advertises the Watch as measuring "heart rate," but the Watch actually measures pulse rate. For simplicity, this brief refers to pulse rate or heart rate interchangeably.

showing overwhelmingly that the Apple Watch includes a patient monitor under the plain and ordinary meaning of that term. Apple cannot now reverse course and change the rules mid-trial after Masimo has put on its liability expert. If Apple wanted a claim construction, it had every opportunity to request one in 2024, early 2025, mid-2025, and the months leading up to trial. There is no excuse or good cause for this mid-trial bid to change course and severely prejudice Masimo.

There also is no merit to Apple's suggestion that this Court must surrender to Apple's repeated demands for untimely claim construction because of the *O2 Micro* decision. In *O2 Micro*, the parties timely presented a specific claim construction dispute (whether the conditional phrase "only if" had exceptions) and the Court declined to resolve it, applying plain and ordinary meaning. The Federal Circuit held that was error. The Federal Circuit later expressly addressed *O2 Micro* and explained it does not eliminate a trial court's typical case management discretion. When a party requests untimely claim construction, the typical rules on good cause and prejudice apply. The trial court may decline to engage in further claim construction for sound procedural and case-management reasons, which is reviewed for abuse of discretion on appeal.

Apple's ploy also presents a practical problem: if the Court were to decide to allow untimely claim construction, the Court would need to set a schedule for supplemental *Markman* briefing and a supplemental *Markman* hearing. Apple's three different claim constructions should not be briefed and argued "on the fly." But, given Apple's decision to lie in wait until Masimo put on its liability expert, there is no time for supplemental briefing and a supplemental *Markman* hearing, with the parties still expecting to submit the case to the jury this coming Friday. Entertaining Apple's request would also require revisiting prior MIL rulings that excluded evidence that clearly should be allowed under Apple's new proposed construction.

Accordingly, the Court should reject Apple's mid-trial request for claim construction because (1) there is no excuse, much less good cause, for Apple's extraordinary delay, (2) Apple repeatedly told the Court to apply the plain and ordinary

meaning of "patient monitor" and it cannot now reverse course, (3) mid-trial claim construction would be unfairly prejudicial to Masimo, and (4) there is no way to accommodate mid-trial *Markman* briefing and a supplemental hearing given the advanced stage of the trial.

## II.  ARGUMENT

### A.  No Excuse Or Good Cause Supports Apple's Untimely Request For Supplemental Claim Construction

When the Court lifted the stay on Masimo's patent claims, it adopted detailed dates for *Markman* from the Northern District of California's Local Patent Rules ("LPR"). Dkt. 1944.  Those dates included: (1) Exchange of Proposed Terms for Construction on May 3, 2024, (2) Exchange of Preliminary Claim Constructions and Extrinsic Evidence on May 10, 2024, (3) Joint *Markman* Prehearing Statement on May 24, 2024, (4) Simultaneous *Markman* Opening Briefs on June 3, 2024, (5) Simultaneous *Markman* Response Briefs on June 17, 2024, and (6) *Markman* hearing on July 1, 2024. *Id.* at 1-2.  Apple never sought to construe "patient monitor" during that detailed *Markman* process, much less identify it as a "significant" or "claim dispositive" term as required by LPR 4.3(c).  That is probably because the claim makes clear that the "patient monitor" is "configured to measure at least a pulse rate," and there is no dispute Apple Watch measures heart rate constantly once per second, like the patient monitor described in the '776 Patent.

Of course, in 2024, Apple had access to the claims, the IPR record, and the prosecution history to decide to propose and argue for its various proposed constructions of "patient monitor."  It also was abundantly clear since the inception of this case that Masimo accused the Apple Watch of being the claimed "patient monitor."  If Apple believed the term "patient monitor" required construction, it had every opportunity to timely raise the issue, but Apple strategically chose to focus elsewhere.  Apple has zero excuse or good cause to raise this issue more than eighteen months after the Court's ordered deadlines.

-3-

Moreover, even if Apple implausibly did not understand in 2024 that Masimo accused the Apple Watch of including the claimed "patient monitor," that would have been glaringly obvious after Apple received Masimo's opening expert reports in April 2025. Yet Apple raised no issue and did not timely request supplemental claim construction. In fact, each of Apple's four "expert" witnesses applied the "plain and ordinary meaning" of "patient monitor." Dkt. 2548, Ex. 1 ¶ 31; *id.*, Ex. 2 ¶ 25; *id.*, Ex. 5 ¶ 137; *id.*, Ex. 10 at 70:25-71:9.

At the MSJ and *Daubert* phase, Apple "maintain[ed] that the term has a plain meaning" but offered a construction in the alternative. Dkt. 2588 at 12. Far from seeking a claim construction, Apple suggested that Madisetti had improperly "defined [a] patient monitor." *Id.* at 4, n.2. In the *Daubert* order, the Court found it "did not construe" "patient monitor" and similar terms, and "[t]he parties agree these terms have their plain and ordinary meaning" to a POSITA. Dkt. 2745 at 9.

Then, at the MIL phase, rather than request a construction, Apple confirmed that its experts "consistently applied the plain and ordinary meaning" of "patient monitor." Dkt. 2703 at 8-9. Apple again suggested Masimo was seeking a construction. *Id.* at 8-9 (arguing Apple applied the plain and ordinary meaning "unlike Masimo and Dr. Madisetti"). In the MIL Order, the Court again found "[t]he parties did not request construction of the term, 'patient monitor'" and held "[p]lain and ordinary meaning applies." Dkt. 2790 at 3. The Court held "[w]hether the accused devices were 'patient monitors' at the time of sale is a fact issue that the jury will need to resolve." *Id.* at 2. This is fully dispositive of the issue. Not only did Apple fail to request timely construction, but Apple also affirmatively told the Court the issue should go to the jury under the plain and ordinary meaning. Apple is getting what it wanted and cannot now prejudicially change course mid-trial because its singular defense appears to be failing.

To be sure, at the last pretrial conference, Apple requested the Court instruct the jury on the meaning of "patient monitor." Dkt. 2760, 10/20/2025 Tr. at 6:18-22. But the Court responded it would do so only if the parties conferred and offered an "agreed

-4-

construction," which they did not. *Id.* at 8:1-5.  Masimo thus prepared its case on the understanding that "patient monitor" would be given its plain and ordinary meaning.  On the first day of trial—apparently looking forward to appeal—Apple insisted "formal claim construction" was "necessary" for the terms "patient" and "patient monitor."  Dkt. 2792 at 1 (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-1362 (Fed. Cir. 2008)).  Apple has now filed a ***second*** brief on Sunday night in the middle of trial—a lengthy supplemental *Markman* brief.  Dkt. 2814 at 1.  Notably, this latest brief offers Apple's ***third*** proposed construction in the space of ten weeks:

| Date | Apple's Proposed Construction |
|---|---|
| 8/20/2025 | "[A] monitor that allows a clinician to receive patient information without missing events."  Dkt. 2588 at 12.[2] |
| 11/4/2025 | "[A] device used on a person receiving care from a medical professional, that should not miss events."  Dkt. 2792 at 1. |
| 11/9/2025 | "A patient monitor is a device designed to capture important medical events while connected to a patient.  In terms of performance, a patient monitor need not capture 100 percent of important medical events, but it must be designed not to miss important medical events."  Dkt. 2814 at 1. |

Apple had every opportunity to seek a claim construction but did not do so.  Apple has no excuse or good cause for its bid for mid-trial claim construction, which would be extremely prejudicial to Masimo.

**B.   Apple Has Not Shown Good Cause To Modify The Court's Scheduling Order On The Presentation Of Claim Construction Disputes**

Turning to the formalities, the Court's scheduling order required that the parties identify claims for construction eighteen months ago in May 2024.  Dkt. 1944.  A party must show "good cause" for relief from a scheduling order.  Fed. R. Civ. P. 16(b)(4).  The good cause standard "primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

---

[2] Apple made this proposal as an alternative in its *Daubert* opposition brief, but maintained in the same brief that the plain and ordinary meaning was more appropriate. Dkt. 2588 at 12.

Courts may grant relief from a scheduling deadline if the deadline could not "reasonably be met despite the diligence of the party seeking the extension." *Id.*

Here, Apple cannot show good cause because it had notice of the purported dispute at every step of this litigation and repeatedly argued the plain and ordinary meaning should apply. Most of the claim construction arguments Apple now raises are based on the patent specification and intrinsic evidence, including the IPR record. But Apple had the patent specification, the complete IPR record, and the complete Federal Circuit record before this Court lifted the patent stay. If Apple believed that the plain language of "patient monitor" did not adequately describe the legal scope of the asserted claims because of the intrinsic record, Apple should have raised this term for construction as part of the original *Markman* proceedings. *See Rawcar Grp., LLC v. Grace Med., Inc.*, 2014 WL 12577590, at *6 (S.D. Cal. Dec. 16, 2014) ("[B]y failing to raise a claim construction issue at a Markman hearing, the defendant implicitly conceded that the meanings of the terms in the claim were clear and not in need of construction.").

Apple also cites deposition transcripts and expert reports from July 2024, which it had for more than a year before trial. If Apple believed that evidence created a need for supplemental claim construction, Apple should have requested supplemental claim construction long ago rather than lie in wait until trial. Instead of requesting supplemental claim construction, Apple repeatedly asserted "patient monitor" should have its "plain and ordinary meaning." Dkt. 2588 at 12.

Apple cites evidence from the trial record, but there is nothing new. Apple has known since 2020 that Masimo accused the Apple Watch of including the claimed "patient monitor." Apple had everything it needed to seek claim construction in 2024 consistent with the Court's scheduling order—or at least by mid-2025.

Moreover, the portions of the trial transcript cited by Apple show that Mr. Al-Ali and Dr. Madisetti did not provide any testimony contrary to the Court's guidance in pre-trial orders. Dr. Madisetti was aware of that guidance and fastidiously followed it. 11/7/2025 PM Tr. at 65:10-66:15. Apple's counsel chose to question Dr. Madisetti about

opinions he had ***before*** the Court issued guidance in its pre-trial orders—drawing an overruled objection from Masimo's counsel, *id.* at 66:16-21.  But it is common in patent cases for an expert to give opinions before the court's legal rulings.  What matters is that the expert adheres to the Court's subsequent legal rulings in his or her testimony to the jury, which Dr. Madisetti did here.  Apple cannot use its own misguided decision to question Dr. Madisetti about opinions pre-dating the Court's guidance as a basis to seek a claim construction.  The infringement opinions Dr. Madisetti gave to the jury, as elicited by Masimo, applied the plain and ordinary meaning of "patient monitor," and they adhered to the Court's guidance in the pre-trial orders.

Apple lacks excuse or good cause for untimely claim construction, which should be fully dispositive.  But additionally, mid-trial claim construction would unfairly prejudice Masimo.  Masimo has already presented its liability expert.  Such a construction would be particularly problematic because the record shows here Apple made a strategic choice to remain silent on an issue it could have raised more than a year ago.  *See Reckitt Benckiser Pharms. Inc. v. Watson Lab'ys, Inc.*, 2017 WL 3820943, at *2 (D. Del. Aug. 31, 2017) ("plac[ing] significant weight on the fact that [defendant] was aware of" the purported claim construction issue "but nonetheless did not pursue that construction . . . [as] a strategic decision" in deeming the dispute waived); *Ecolab, Inc. v. Paraclipse, Inc.*, 2008 WL 3413808, at *4 (D. Neb. Aug. 8, 2008) (rejecting defendant's attempt "to place at issue additional claim construction" that defendant "could have requested" at the time of the original Markman hearing).

### C.    *O2 Micro* Does Not Require A Claim Construction

Apple relies on *O2 Micro* and its progeny, suggesting the Court must engage in supplemental claim construction.  Dkt. 2814 at 1.  But the Federal Circuit has expressly recognized that *O2 Micro* does not hamstring a district court's sound case management authority.  *O2 Micro* requires only that the district court resolve claim construction disputes that are ***timely*** presented to the court.  *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640–41 (Fed. Cir. 2011).  In *O2 Micro*, the parties timely raised a

dispute during the *Markman* process, agreeing that the term should be construed but putting forward very different proposals. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1357, 1361 (Fed. Cir. 2008). Despite the parties' agreement that a dispute existed, the district court declined to resolve the dispute. *See id.* The Federal Circuit held that, because "the parties [had] present[ed]" the court with "a fundamental dispute regarding the scope of the claim term, it [was] the court's duty to resolve it." *Id.* at 1362.

Subsequent Federal Circuit case law makes clear that *O2 Micro* is limited to timely presented claim construction disputes. In *Bettcher*, the Federal Circuit upheld the district court's refusal to construe two terms on the basis that defendant's request had come "too late" after the defendant waited more than a year following claim construction to raise the issue. 661 F.3d at 635, 640. In doing so, the Federal Circuit specifically rejected the argument "that not construing these terms violated *O2 Micro*." *Id.* at 640. Because the defendant had "ample opportunity to seek construction of the" disputed terms, the district court acted within its discretion when it "declin[ed] to construe" the terms. *Id.* at 640–41.

Similarly, in *Wi-LAN*, the Federal Circuit concluded that the district court had not abused its discretion when it "used its case-management discretion to decline to find [the] new construction barred." *Wi-LAN USA, Inc. v. Apple, Inc.*, 830 F.3d 1374, 1385 (Fed. Cir. 2016). The Federal Circuit explained "[w]e generally support a district court's case-management authority to set a schedule for claim construction that requires parties to take positions on various dates and holds the parties to these positions." *Id.* The Federal Circuit specifically noted that it had elsewhere "upheld [a] district court's determination" to decline to consider a claim construction argument raised after the end of claim construction "because no good cause supported [the] change in position." *Id.*

*Bettcher* and *Wi-LAN* simply represent a continuation of what had long been the rule even before *O2 Micro*. *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that

[defendant] waived any argument with respect to this term by failing to raise it during the claim construction phase. We agree."); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (holding that district court did not abuse its discretion by declining to "entertain [defendant's] untimely [claim construction] arguments" raised "after the relevant cut-off dates under the . . . trial court's scheduling order").

Following the Federal Circuit, district courts frequently have declined the "invitation back down the rabbit hole of renewed claim construction." *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 383–85 (S.D.N.Y. 2015) (declining to entertain newly raised claim construction dispute where "the Court first rendered its Markman decision over a year ago"); *see, e.g., PerdiemCo, LLC. v. Industrack LLC*, 2016 WL 6432699, at *3 (E.D. Tex. Oct. 31, 2016); *Skyhook Wireless, Inc. v. Google, Inc.*, 159 F. Supp. 3d 144, 157 (D. Mass. 2015); *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 2014 WL 3939356, at *4 (E.D. Cal. Aug. 11, 2014); *Boston Sci. Corp. v. Johnson & Johnson*, 534 F. Supp. 2d 1062, 1074–75 (N.D. Cal. 2007). In doing so, district courts reject any suggestion that *O2 Micro* required a second round of claim construction. *See Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) ("The Court fulfilled [its *O2 Micro*] duty when it provided a thorough claim construction opinion earlier in these proceedings"); *SEVEN Networks, LLC v. Google LLC*, 2018 WL 3472639, at *3 (E.D. Tex. July 19, 2018) ("This Court will not allow one party's unilateral conduct refusing to submit disputed terms as directed to countermand the [c]ourt's previous [o]rders").

None of Apple's cited cases are comparable. Apple's first case addressed claim construction long before trial at the summary judgment phase. *In re Papst Licensing Digital Camera Pat. Litig.*, 778 F.3d 1255 (Fed. Cir. 2015). Apple's second case addressed unique circumstances where "the parties agreed, contrary to the district court's wishes, not to have a *Markman* hearing" and then extensively argued claim construction to the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). Apple's third case involved a design patent that the Court determined was simple

-9-

enough that it did not have to construe claims before trial. *Mobile Hi-Tech Wheels v. CIA Wheel Grp.*, 514 F. Supp. 2d 1172 (C.D. Cal. 2007). The defendant suffered no prejudice because the court construed the claim at "an early point in the trial" after openings and one of plaintiff's witnesses before defendant cross-examined all other witnesses and presented its own case. *Id.* Here, Masimo had already presented its liability expert before Apple filed this brief.

### D. Entertaining Apple's Request Would Require Supplemental Briefing And Potentially Supplemental Evidence

The Court should decline to consider Apple's untimely bid for more claim construction. If the Court were to allow untimely supplemental claim construction, however, it should set a supplemental *Markman* briefing schedule and a supplemental *Markman* hearing to allow Masimo a fair opportunity to respond. Masimo should not be forced to address Apple's three different claim constructions "on the fly" while trying to prepare for the last three days of trial.

In addition to standard claim construction issues, Apple's request would require the Court to revisit several prior evidentiary rulings. For example, Apple's latest proposed construction looks to Apple's **intent in designing** the Apple Watch by requiring "it must **be designed** to not miss important medical events." Dkt. 2814 at 1 (emphasis added). But the Court precluded Masimo from showing overwhelming evidence that Apple designed the Apple Watch as a patient monitor by seeking to duplicate the performance of Masimo's patient monitors, which Apple called the "golden reference." Dkt. 2790 at 7-8; Dkt. 2705 at 5 (citing Ex. 10 at -737). The Court also precluded Masimo from showing Apple designed the Apple Watch as a patient monitor when it hired individuals with expertise in designing patient monitors to work on the accused product. Dkt. 2790 at 7-8; Dkt. 2705 at 5-6. The Court found such evidence was irrelevant: "Either the Apple Watch meets the claim limitations or it does not, regardless of what Apple hoped to accomplish." Dkt. 2790 at 7.

Apple's latest proposed construction would now squarely put at issue "what Apple

hoped to accomplish" with its design of the Apple watch—*i.e.*, what Apple intended with its design of the Apple Watch. That is clear legal error, as shown by Federal Circuit caselaw as recent as October 2025. *Rex Med., L.P. v. Intuitive Surgical, Inc.*, No. 2024-1072, ---F.4th---, 2025 WL 2799030, at *10-11 (Fed. Cir. Oct. 2, 2025) ("It is immaterial whether the designers of the accused devices ***intended*** for the lower portion of the beam to cause the staple pusher to move a staple. What matters is that the lower portion of the beam ***actually does*** cause the staple pusher to move a staple.") (emphasis in original). At the very least, if the Court adopted Apple's latest proposed construction, Masimo would then need to supplement its liability case with the evidence the Court excluded at Apple's request.

To be clear, Masimo is not currently requesting that the Court revisit its MIL order. But it is plain that allowing Apple's mid-trial request for claim construction—more than eighteen months after Apple could have raised the issue—will create a mess. As shown above, this Court has discretion to decline to create a mess and instead let this case go to the jury, as Apple previously requested. That case management decision will be reviewed on appeal for abuse of discretion, and declining Apple's untimely request here is far from an abuse of discretion.

### III. CONCLUSION

The Court should deny Apple's untimely request for claim construction. It should adhere to its prior rulings that "patient" and "patient monitor" have their plain and ordinary meaning. If the Court were to allow Apple's untimely request for supplemental claim construction, Masimo respectfully requests a schedule for supplemental *Markman* briefing and a supplemental *Markman* hearing.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 11, 2025

By: */s/ Joseph R. Re*
Joseph R. Re
Stephen C. Jensen
Sheila N. Swaroop
Brian C. Horne
Brian C. Claassen
Nicholas M. Zovko
Mark D. Kachner
Adam B. Powell
Kendall M. Loebbaka
Daniel P. Hughes
Douglas B. Wentzel

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs' Masimo Corp. and Cercacor Laboratories, Inc., certifies that this brief contains 3,881 words, which [choose one]:

X complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: November 11, 2025      By: */s/ Joseph R. Re*
                                                   Joseph R. Re
                                                 Stephen C. Jensen
                                                 Sheila N. Swaroop
                                                 Brian C. Horne
                                                 Brian C. Claassen
                                                 Mark D. Kachner
                                                 Adam B. Powell
                                                 Kendall M. Loebbaka
                                                 Daniel P. Hughes
                                                 Douglas B. Wentzel

                                                 Attorneys for Plaintiffs
                                                 MASIMO CORPORATION and
                                                 CERCACOR LABORATORIES, INC.