UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, et al., )CERTIFIED TRANSCRIPT
Plaintiffs, )
vs. )
) SACV-20-00048-JVS
APPLE, INC., )
Defendant. ) TRIAL DAY 1, VOL. I
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

November 4, 2025

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(612) 804-8655

APPEARANCES OF COUNSEL:

For the Plaintiffs:

JOSEPH R. RE
BRIAN CHRISTOPHER CLAASSEN
SHEILA N. SWAROOP
KNOBBE MARTENS OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

BRIAN C. HORNE
KNOBBE MARTENS OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450

For the Defendant:

JOSEPH J. MUELLER
SARAH R. FRAZIER
WILMER CUTLER PICKERING HALE & DORR, LLP
60 State Street
Boston, MA 02109
(617) 526-6000

MARK D. SELWYN
THOMAS GREGORY SPRANKLING
Wilmer Cutler Pickering Hale & Dorr, LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6031

AMY K. WIGMORE
WILMER CUTLER PICKERING HALE & DORR, LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6096

KENNETH G. PARKER
HAYNES & BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
(949) 202-3014

**ALSO PRESENT:**

**CHARLES DADSWELL**
**Masimo Executive Vice-President and General Counsel**

**STEVEN SCRUGGS**
**Masimo Corporate Representative**

**CHRISTOPHER BROUSE**
**Apple Corporate Representative**

**TUCKER TERHUFEN**
**Apple In-House Counsel**

**NATALIE POUS**
**KIMBERLY WALTER**

# I-N-D-E-X

| | PAGE |
|---|---|
| JURY SELECTION | 14 |

SANTA ANA, CALIFORNIA; TUESDAY, NOVEMBER 4, 2025; 8:31 A.M.

THE CLERK: Calling Case No. SACV-20-00048-JVS, Masimo Corporation, et al., versus Apple, Inc.

Counsel, please state your appearances for the record.

08:13

MR. RE: Good morning, Your Honor. Joseph Re from Knobbe Martens for plaintiff Masimo. With me are my partners Brian Horne, Brian Claassen, and Sheila Swaroop.

THE COURT: Good morning.

08:14

MR. RE: We also have Masimo's Executive Vice-President and General Counsel, Charles Dadswell.

THE COURT: Good morning. Welcome.

MR. RE: And the corporate representative for the trial will be Stephen Scruggs of Masimo.

08:14

THE COURT: Good morning. Welcome.

MR. MUELLER: Good morning. Joe Mueller of Wilmer Hale on behalf of Apple.

First, I will introduce our corporate representative for this trial, who is Dr. Christopher Brouse from Apple.

08:14

THE COURT: Good morning.

MR. MUELLER: Amy Wigmore.

THE COURT: Good morning.

MR. MUELLER: Mark Selwyn.

08:14

THE COURT: Good morning.

08:14 MR. MUELLER: Your Honor, Jamie Laird will be joining us for jury selection.

THE COURT: Good morning.

MR. MUELLER: Sarah Frazier.

08:14 THE COURT: Good morning.

MR. MUELLER: And a few of the folks here are Tom Sprankling, our co-counsel Ken Parker, and from Apple, we have Natalie Pous, Kim Walter, and Tucker Terhufen.

We are ready to proceed, Your Honor.

08:14 THE COURT: Very good.

This matter is here for trial. Is Masimo ready to proceed?

MR. RE: We are, Your Honor, but I --

THE COURT: That's all I want right now. Thank 08:15 you.

Is Apple ready to proceed?

MR. MUELLER: We are.

THE COURT: I received overnight a brief from Masimo withdrawing its claim for willful infringement. I would like to take that up after Apple has had a chance to respond in writing. It seems to me we are not going to get to that issue for a while anyway, and it won't be discussed by either side in opening statements.

MR. MUELLER: We just filed a response in the last 08:15 ten minutes, Your Honor. We don't think there is anything

to take up right now, but just so you know, we have now on the docket responded.

THE COURT: Thank you.

MR. RE: I was simply going to mention that any preliminaries that are given, we do have the updates. It would be to Court's Instruction No. 3. It does extensively mention willfulness. Also, there is one other narrowing of the issues. Workout Mode is no longer at issue.

THE COURT: Tell me where you are.

MR. RE: This is page 5, Court's Instruction No. 3.

THE COURT: Okay.

MR. RE: On line 11, it says "Workout Mode and/or," which should be deleted.

THE COURT: Okay.

MR. RE: Also, in the next sentence, I don't believe it should be "features" anymore. It should be a singular feature, the high/low heart rate notification feature, singular.

The next line would be deleted: "Masimo alleges that Apple's infringement was willful beginning when Masimo filed this lawsuit making Apple aware of the '776 patent." That would be deleted.

Also, everything from line 22 where it says, "You will also need to make..." From that point to the end can

08:17 all be deleted.

THE COURT: Okay.

MR. MUELLER: Just one minor suggestion. I agree on everything with Mr. Re except one word. There has been a
08:17 bit of a debate about feature versus features right after high/low heart rate notifications. As a formal matter, there are two different notifications. I suggest you just put a period after "notifications."

MR. RE: No objection.

08:17 MR. MUELLER: There are two other just typos, Your Honor.

THE COURT: Fine.

MR. MUELLER: On page 8, No. 5, there is just a dash before the word "as."

08:17 THE COURT: Just a minute.

Page 8, line 5?

MR. MUELLER: No. 5. It's the last paragraph.

THE COURT: Okay. Sure.

MR. MUELLER: Then on page 18 in the middle,
08:18 there's just a stray period right above the word "the."

THE COURT: Right. Thank you.

MR. MUELLER: Thank you. We have nothing further on the preliminary jury instructions.

THE COURT: Okay.

08:18 I have had quite some difficulty in dealing with

08:18 the parties' proposed jury instructions. I'm working my way through it as best as possible, but one of those problems is that I can't recall this document in this form at the moment. So I will have a hard copy to give you, but it may 08:18 not -- its form may be wanting. Okay.

You had asked me if we could go on Monday, the 10th. Lo and behold, my civil calendar has cleared out for Monday afternoon of the 10th. If you want to use that for trial, I'm prepared to do that.

08:19 MR. RE: That sounds wonderful, Your Honor.

MR. MUELLER: We agree.

THE COURT: Okay. Let me come back to whether we start at 1:00 or 1:30.

I had indicated that rather than give the standard 08:19 instructions re the patent process that we are going to use the FJC video.

Has someone got that, and are you prepared to play it?

MR. RE: We have it, Your Honor.

08:19 THE COURT: I propose to play that right after the opening statement.

MR. RE: No objection.

MR. MUELLER: No objection.

Your Honor, it might be helpful to do it before 08:19 the opening statements.

08:19 THE COURT: That's fine, too. Okay, we will do that.

MR. RE: That's excellent.

THE COURT: Okay.

08:20 I need a projected date at some point to give to the jury as to how long this case is going to last. I'm inclined to tell them Thursday or Friday of next week.

MR. RE: That sounds very safe.

MR. MUELLER: We agree. We think there is a very 08:20 good chance -- especially with sitting on Monday afternoon, there is a very good chance that the jury has it at some point on Thursday and certainly Friday.

MR. RE: Agreed.

THE COURT: Okay. I will get you a draft of the 08:20 final jury instructions as soon as possible.

There is an application to seal the exhibit list at Docket 2781. I don't understand that request, Mr. Selwyn.

MR. SELWYN: Your Honor, there are a few 08:21 references on the list itself, code names that Apple has used, so we have some very narrow redactions that we propose to make. Your Honor did seal the initial draft with the identical information, and it's the revised draft that Apple would like to seal.

08:21 THE COURT: Okay, I will go back and take a look

08:21 at that.

Mr. Re, any comment?

MR. RE: No objection.

THE COURT: Okay. We have approximately 35 prospective jurors who have been called. Once they come in, they will fill out the four-question questionnaire. I propose to start -- we will bring them up ten at a time and see how quickly we go. There are not a lot of places to sit out in the hallway, and I don't want to inconvenience those folks more than necessary, so we will bring up ten and see how we go. And then we will bring however many more we need.

Okay, I believe you may have provided an estimate of the opening statements at the pretrial conference, but could you remind me again? Estimate for opening statement?

MR. RE: One hour. Mr. Horne will be delivering the opening statement.

MR. MUELLER: And I expect it will be a little bit under an hour for our opening statement. I would ask for the same boundary, but I think we will come in under that.

THE COURT: Okay. I will try and get back to you the first batch of deposition designations and objections by the end of the day.

Any other matters we ought to take up at this point?

08:23 MR. MUELLER: The Joint Statement of the Case, the final jury instructions, we are still hashing it out in light of the withdrawal of certain allegations.

THE COURT: Fine.

08:23 MR. MUELLER: We can give Your Honor a new joint version in the next two days.

Does that work for Your Honor for the final jury instructions?

THE COURT: At Docket 2751, you provided a Joint

08:23 Statement of the Case, and I intend to read that before we start the voir dire.

MR. MUELLER: It should just be the same edits as the preliminary jury instructions.

THE COURT: Okay, come back to me. I can see a

08:24 couple things you will want to change.

MR. MUELLER: I have just one more housekeeping matter, if I could.

THE COURT: Sure.

MR. MUELLER: With respect to previously decided

08:24 motions consistent with what Your Honor has done in the previous jury trial, we would just ask for a standing objection with respect to arguments that we have made that Your Honor has already issued definitive rulings. Just in the interest of the record, I'll just read the docket

08:24 numbers. It would take me 30 seconds if that would be

acceptable.

THE COURT: Fine.

MR. MUELLER: Again, we assume Your Honor doesn't want us to keep getting up to interrupt the proceedings, so we would request a running objection with respect to the arguments on our motions in-limine, summary judgment motions, Daubert motion, and Motion to Strike. The docket numbers, Your Honor, are Docket Nos. 2551, 2552, 2528, 2647, 2677, 2678, and 2766. Again, Your Honor, all we are requesting at this point is just a running objection on the arguments that were previously denied by Your Honor as opposed to having to raise them again serially.

THE COURT: Those objections limited to the precise scope in which they were formally made will be deemed carried forward.

MR. MUELLER: We appreciate that, Your Honor.

A final thing, just as a note for the docket, we will likely be filing over the course of the next week or so some limited proffers on evidence that we would have presented. I'm not asking for any action by the Court. It's purely for preservation purposes. I only note that in case Your Honor sees it on the docket.

THE COURT: What is the purpose of the proffers?

MR. MUELLER: There are a couple where we just kind of want to make it clear for the record the content of

the testimony that is subject to the ruling. You will have seen these before. I will give you an example. For the expert witnesses whose opinions have been excluded, we will just note the reports that were the subject of those opinions. It's in that vein.

THE COURT: Okay.

MR. MUELLER: That's all we have, Your Honor.

THE COURT: Anything else we should take up?

MR. RE: No, Your Honor.

THE COURT: As soon as we get the first batch of jurors, we will go back on the record. Thank you.

(Recess)

THE COURT: Many of the jurors answered "No" to all the questions. I don't think we need to talk to those people individually.

MR. HORNE: Agreed, Your Honor.

THE COURT: Okay. Let's confirm who they are. I'm just going to page through.

GWB, AWB -- no, there's a yes there. GCB, JMG, LG, SG, CFH, JRJ, BJ, SMK, JL, WM, JMM, TN, RKN, HLP, SMP, JCR, RRR, AMR, DDS, DTV, SW. So we will pass over those people and not call them up.

So the balance, we will just take the first ten to start.

MR. MUELLER: Your Honor, I may have misheard you,

but I believe you recited the name of AWB. He did have one yes answer.

THE COURT: I didn't put him in the no pile. He will be examined.

MR. MUELLER: Thank you, Your Honor.

THE COURT: We have only got 14 to examine. I'm going to ask that all of them come up. Those are the ones we need.

(Court and clerk conferring)

MR. HORNE: Your Honor, we noticed on one of the questionnaires, one of our law partners at Knobbe Martens is in there.

THE COURT: I noticed that.

MR. HORNE: I don't know if Mr. DS needs to come up to answer questions.

MR. MUELLER: Your Honor, we are happy to dismiss him right off the bat, but I do think we should just ask him if he talked to anybody before he leaves.

THE COURT: Ask him -- I'm sorry, what?

MR. MUELLER: We would just ask if we could have confirmation -- if Your Honor can confirm with him that he has not spoken with the other jurors. At that point, we would be happy to dismiss him.

THE COURT: All right, let's ask him to come up to the bench real quick.

09:33 Okay, then let's call those folks up, please.

I will mark this complete set of questionnaires as Court's next in order.

(Court's exhibit marked for identification)

09:35 THE COURT: Okay, we will be in recess briefly.

(Recess)

THE COURT: Let's begin with your partner. That's Mr. DS. Let's ask for Mr. DS, please.

(Prospective juror enters courtroom)

09:55 THE COURT: Good morning, Mr. DS.

PROSPECTIVE JUROR: Good morning.

THE COURT: I understand you are a partner at Knobbe.

PROSPECTIVE JUROR: I am.

09:55 THE COURT: What part are you in?

PROSPECTIVE JUROR: I'm in the patent prosecution side.

THE COURT: Have you ever been involved in a dispute between Masimo and Apple?

09:55 PROSPECTIVE JUROR: No, I have not.

THE COURT: I take it you knew that the firm was representing Masimo.

PROSPECTIVE JUROR: Yes, I do.

THE COURT: Sir, have you talked to any of the

09:55 jurors downstairs about the case?

PROSPECTIVE JUROR: No, I have not.

THE COURT: Have you told them even where you work?

PROSPECTIVE JUROR: They may have overheard me speaking to the clerk, but I didn't tell anyone specifically.

THE COURT: Did you express any thoughts or opinions about the case?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Mueller.

MR. MUELLER: Nothing further, Your Honor.

THE COURT: Sir, you are excused. Thank you for coming down to the courthouse.

PROSPECTIVE JUROR: Thank you.

(Prospective juror DS excused)

THE COURT: Okay, let's call the first juror, Mr. AWB.

(Prospective juror enters courtroom)

THE COURT: Good morning, Mr. AWB.

PROSPECTIVE JUROR: Good morning.

THE COURT: Thanks for coming down to the courthouse today.

You indicated in response to the questionnaire that you had strong feelings with regard to Apple or its products.

09:57 PROSPECTIVE JUROR: Yes, sir.

THE COURT: Why don't you tell me about that.

PROSPECTIVE JUROR: I do use a lot of their products. I was born with one hand, so they have a lot of
09:58 accessibility options that make it easier for me to use day-to-day things.

THE COURT: Tell me what products you use.

PROSPECTIVE JUROR: I use the current IPhone, MacBook Pro, as well as for some hobbies, some music-making
09:58 software as well.

THE COURT: I take it those are all favorable feelings.

PROSPECTIVE JUROR: Yes.

THE COURT: Given your favorable feelings, do you
09:58 think you can put those feelings aside and just listen to the evidence and decide the case?

PROSPECTIVE JUROR: I think so.

THE COURT: Well, I think you have to tell us pretty much one way or the other. The parties are entitled
09:58 to have jurors that start out absolutely even. Nobody is a bit ahead. Nobody is a bit behind. In your mind because of your favorable experiences, is Apple starting out a bit ahead?

PROSPECTIVE JUROR: Can you repeat the question?

09:58 THE COURT: Sure. I want to know if one party

09:59 starts out a bit ahead or behind given your favorable experiences with Apple.

PROSPECTIVE JUROR: One party would start out ahead.

09:59 THE COURT: And that is?

PROSPECTIVE JUROR: Apple.

THE COURT: If you were required to put those feelings aside and just decide the case on the evidence you hear in the courtroom from the witnesses and the documents 09:59 and so on, could you do that?

PROSPECTIVE JUROR: I could.

THE COURT: Okay. Would you like to inquire?

MR. HORNE: Good morning, Mr. AWB. It's a pleasure to meet you. My name is Brian Horne. I represent 09:59 the plaintiff Masimo in the case.

You mentioned that Apple might be starting just a little bit ahead in your mind.

PROSPECTIVE JUROR: Correct.

MR. HORNE: So my client might be starting a 09:59 little bit further behind, and it's just a small hurdle to overcome the case with you, correct?

PROSPECTIVE JUROR: Yes.

MR. HORNE: You mentioned you might be able to put those feelings aside. How would you do that, sir?

09:59 PROSPECTIVE JUROR: Just looking at the facts.

10:00 MR. HORNE: Apple would still have a bit of an advantage starting off with you, correct, sir?

PROSPECTIVE JUROR: Correct.

THE COURT: Mr. Mueller.

10:00 MR. MUELLER: Good morning, Mr. AWB.

My name is Joe Mueller. It's very nice to meet you. I just want to follow up on your statement to His Honor that you are could set your feelings aside and decide the case based on the evidence. I am going to ask a few

10:00 more questions about that.

There is going to be witnesses in this case and various exhibits, and His Honor will provide instructions on the law, and we are all bound by the evidence in the courtroom and the instructions on the law.

10:00 Could you make your decision in this trial only based on the evidence you hear, witnesses, documents, and His Honor's instructions on the law?

PROSPECTIVE JUROR: I could.

MR. MUELLER: Whatever your feelings before you

10:00 arrived here, you are here now, and you could make a decision based on the evidence in this trial and on His Honor's instructions; is that fair?

PROSPECTIVE JUROR: That's fair.

MR. MUELLER: That's a firm deal?

10:01 PROSPECTIVE JUROR: Yes, sir.

MR. MUELLER: Thank you very much, sir. I appreciate it.

THE COURT: Thank you, sir.

Would you go back to the jury room for just a minute, please.

(Prospective juror exits courtroom)

THE COURT: Having listened to the totality of his testimony, I'm not going to excuse him.

MR. HORNE: Your Honor, we believe he should be stricken. He said that Apple would be starting off ahead in the case. He has personal experience with Apple, especially given his condition and the number of products he uses.

THE COURT: Did you listen to the last four or five questions that Mr. Mueller asked him?

MR. HORNE: I did, but --

THE COURT: Are you disregarding his responses?

MR. HORNE: I'm not disregarding those, Your Honor, but I think they just conflict with his other responses.

THE COURT: In the end, he said he could put those feelings aside. Objection noted.

Let's bring in JMC.

(Prospective juror enters courtroom)

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.

10:03 THE COURT: Thanks for coming down to the courthouse today.

Sir, you answered yes to a couple of questions. The first one is whether you had any strong feelings with regard to Apple or its products. Tell me about that.

10:03 PROSPECTIVE JUROR: I have been using Apple for quite some time now, and, yes, it's user friendly, so I like using products from Apple.

THE COURT: Would your favorable experience with Apple and Apple products -- is it fair that you have a favorable experience?

10:03 PROSPECTIVE JUROR: Favorable experience?

THE COURT: Yes.

PROSPECTIVE JUROR: Yes.

10:03 THE COURT: Would that cause you sight unseen to favor one party over the other just based on the fact that you've had a favorable experience with Apple?

PROSPECTIVE JUROR: I'm sorry. Can you repeat the question?

10:04 THE COURT: Sure. In this case, does Apple start out a little bit ahead because you've had a favorable experience with Apple?

PROSPECTIVE JUROR: If I have a favorable experience with Apple? Yes, I do have a favorable experience with Apple.

10:04

10:04 THE COURT: The question is can you put that aside and decide the case just on the evidence that you hear in this courtroom and the Court's instructions? Can you do that?

10:04 PROSPECTIVE JUROR: I could try.

THE COURT: Well, but we need to know one way or the other.

PROSPECTIVE JUROR: Yes, I could be fair if I have to be fair.

10:04 THE COURT: Well, you would have to be fair. But the precise question is when you are thinking about all the evidence in the case, if you are seated on this jury, can you just put aside your personal favorable experience?

PROSPECTIVE JUROR: Yes, I could do that.

10:05 THE COURT: Okay. Mr. Horne.

MR. HORNE: Good morning. How do I pronounce your name, sir?

PROSPECTIVE JUROR: JMC.

MR. HORNE: JMC, it's a pleasure to meet you. My
10:05 name is Brian Horne. I represent Masimo, the plaintiff in the case.

Given your experience, sir, is it possible that -- it sounds like Apple is starting off a little bit ahead in the case for you.

10:05 PROSPECTIVE JUROR: Yes.

10:05 MR. HORNE: I know the Judge will instruct you to look at just the evidence and just the rules of the case, but is it possible that might be just a little bit more difficult for you to do given your positive experience with
10:05 Apple?

PROSPECTIVE JUROR: Like I told the Judge, I could be fair and look at the evidence.

MR. HORNE: I know you would do your best to be fair and look at the evidence, but is it possible Apple
10:06 might have just a slight advantage even giving your best efforts?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Mueller.

MR. MUELLER: Good morning, sir. My name is Joe
10:06 Mueller. Nice to meet you.

I think you indicated on your questionnaire that you had at least one negative experience with Apple as well; is that right?

PROSPECTIVE JUROR: Yes.

10:06 MR. MUELLER: Could you tell me a little bit about that?

PROSPECTIVE JUROR: It was Apple Pay. So there was a delay, and then you got passed on from one customer service to another, so I don't think that they are talking
10:06 to each other, and that was a really bad experience.

10:06 MR. MUELLER: Understood.

Any other negative experiences with Apple?

PROSPECTIVE JUROR: None so far.

MR. MUELLER: As His Honor asked you a few moments ago, this case is going to be about the evidence in this courtroom, witnesses, and documents presented to the jury during this trial.

10:06

Could you make your decision in this trial based only on that evidence and the legal instructions from His Honor?

10:07

PROSPECTIVE JUROR: Yes.

MR. MUELLER: Thank you, sir.

THE COURT: Thank you, sir. Would you go back to the jury room, please.

10:07 (Prospective juror exits courtroom)

THE COURT: Well, he has both positive and negative experiences, and he says he can put those aside. I'm not inclined to excuse him.

MR. HORNE: At one point, he said he could try. He equivocated there. He did at one point say that Apple is starting out ahead. He said yes to that. We would move to strike for cause.

10:07

THE COURT: Denied.

I'm sorry, Mr. Mueller.

10:07 MR. MUELLER: Very briefly, Your Honor.

10:07 As you said, he has mixed experiences, and I think at one point he was asked a question -- I can't remember the exact form of the words Mr. Horne used, but would he be able to hear the evidence? I believe he expressed affirmation on that. 10:08 So I think coupled with Your Honor's questions and my questions, it is clear that he has expressed that he is capable on making a decision based only on what he hears here.

THE COURT: The challenge is noted. Denied.

10:08 Next is Mr. TKC.

(Prospective juror enters courtroom)

THE COURT: Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: Thanks for coming down to the 10:09 courthouse today.

In answering the questions, you indicated two things, that you had some strong feelings about Apple or its products, and you also indicated that you've had a negative experience. Would you tell me about that?

10:09 PROSPECTIVE JUROR: So with Apple, my main experience goes back to 2011. In 2011, my sister had cancer. She was two years old, and at that time, I was struggling with money and rent. We had bought different cell phones for us, and they had like overcharged us on a 10:09 warranty. I was 11 at the time, and my mom was very upset

about this, so we went to Apple to talk to a manager and things like that.

When we were talking to the manager, they just weren't -- they didn't really care about our situation. They weren't trying to accommodate us. They basically said that we will just have to pay the fee, and we will just have to pay the warranty that we did not want on our cell phones at all. Like we said that we went to get the cell phones, and they wouldn't help us at all.

After that, we ended up having to pay the warranty in general, so after that, I just never -- I have like a huge disdain for Apple. Also, just like the manager straight up said because we tried to explain our situation to them -- they just straight up said that they didn't care that my sister had cancer. So it was after that I just didn't care for Apple anymore at all.

THE COURT: Have you ever purchased any Apple products since then?

PROSPECTIVE JUROR: We actually have. That's the funny part. We actually have gone back to them just for the fact that they are so much better than Android, but we still hate the products, so it's very ironic that we are still with Apple right now.

THE COURT: Hate the products, its products, or hate the products because of your experience?

PROSPECTIVE JUROR: Hate the products because of my experience.

THE COURT: Does the totality of your experiences cause you to favor one side over the other? We haven't heard any evidence.

PROSPECTIVE JUROR: Yes. I have a vendetta against Apple just for -- just for honestly that manager really painted that picture of Apple for me just by saying that she doesn't care about my sister having cancer at the time and what we were going through, just even to try to talk to us as a human being about being overcharged on the warranty, things like that. She was very mean, like not trying to understand us as customers. If she was, it would be a lot different, but that really -- that was a switch in my head kind of.

THE COURT: Do you think you could put that experience aside and just rule on the case based on the evidence that you hear at the trial?

PROSPECTIVE JUROR: I do not think I could do that.

THE COURT: Okay. Thank you.

Mr. Horne.

MR. HORNE: No questions.

THE COURT: Mr. Mueller.

MR. MUELLER: Nothing, Your Honor.

Thank you, sir.

THE COURT: Thank you, sir.

Why don't you go back in the jury room.

(Prospective juror exits courtroom)

THE COURT: I'm going to excuse him.

MR. HORNE: No objection.

THE COURT: I don't think he could have expressed his disdain for Apple more strongly than indicating that he had a vendetta. He will be excused.

Why don't you call the next person, MNC, and would you let Mr. TKC go.

(Prospective juror enters courtroom)

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.

THE COURT: Thank you for coming down to the courthouse today.

In going through the questionnaire, you indicated you had some strong feelings about Apple and its products.

PROSPECTIVE JUROR: Yes.

THE COURT: Can you tell me about that?

PROSPECTIVE JUROR: I am a shareholder of Apple.

THE COURT: Okay.

PROSPECTIVE JUROR: I have a family member who worked there but does not currently work there.

THE COURT: Okay. I think being a shareholder

disqualifies you, so thank you for coming down to the courthouse today. You will be excused.

PROSPECTIVE JUROR: Thank you.

(Prospective juror MNC excused)

THE COURT: The next person is MCF.

(Prospective juror enters courtroom)

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.

THE COURT: Thank you for coming down to the courthouse.

PROSPECTIVE JUROR: Thank you.

THE COURT: You indicated in the questionnaire that you had some strong feelings about Apple or its products. Tell me about that, please.

PROSPECTIVE JUROR: I mean, I just like them. I have positive things, strong feelings. I just like them. I have everything that Apple does, you know, the phones, the headphones, the iPad, Apple TV. That's all. Other than that, nothing else.

THE COURT: Okay. Given your favorable experience with Apple and its products, do you think you could put that aside and listen to this case?

PROSPECTIVE JUROR: Sure, yeah. I mean it's not that -- I just like them. It's not like that I -- yeah.

THE COURT: Okay. You will be asked to decide the

10:16 case solely on the evidence that you hear in the trial and not about your past experiences.

In that context, do you think you can put your past experiences aside?

10:16 PROSPECTIVE JUROR: I think so.

THE COURT: Given your favorable experience, do you think either side starts out a little bit ahead because you have had that favorable experience?

PROSPECTIVE JUROR: What was that question again?

10:17 THE COURT: Sure. It's a question of whether in your mind one side or the other starts off just a little bit ahead because of your favorable experience.

PROSPECTIVE JUROR: No, I don't think so.

THE COURT: Okay. Thank you.

10:17 PROSPECTIVE JUROR: I do need to say something about Masimo.

We were asked about Apple and Masimo, too, right?

THE COURT: Right.

PROSPECTIVE JUROR: I don't have strong feelings 10:17 about Masimo. I don't know them, but I do know people that work there, so I just wanted to disclose that.

THE COURT: Okay. Have you learned anything favorable or unfavorable from those people?

PROSPECTIVE JUROR: No.

10:17 THE COURT: Do you know what Masimo does?

10:17 PROSPECTIVE JUROR: I know it's an American device company, but, no, I'm not familiar with the products. I just know people that work there.

THE COURT: Okay. Thank you.

10:18 Mr. Horne.

MR. HORNE: Good morning, Ms. MCF. My name is Brian Horne. I represent Masimo, the plaintiff in this case.

It sounds like you are a big fan of Apple 10:18 products.

PROSPECTIVE JUROR: I am.

THE COURT: Could you tell us what it is that you like so much about the Apple products?

PROSPECTIVE JUROR: I like, you know, the product 10:18 itself. It's not that I am super technically savvy or anything, but I have been using the iPhone forever, which I guess is the case of many people. I just like them.

MR. HORNE: And just to be clear, this case is not a products liability case or an employment case. This 10:18 involves an actual Apple product and whether it uses some technology from my clients.

Given that information, do you still you think you could be fair, or is it possible Apple might start just a little bit ahead?

10:18 PROSPECTIVE JUROR: I don't think so. I can be

10:19 fair.

MR. HORNE: Thank you.

THE COURT: Mr. Mueller.

MR. MUELLER: Good morning, ma'am. My name is Joe

10:19 Mueller. It's very nice to meet you.

PROSPECTIVE JUROR: Good morning.

MR. MUELLER: Just a couple of questions. In a case like this, we are all strictly bound by the evidence presented in the trial, the witnesses at the trial, the

10:19 documents at the trial, and His Honor's legal instructions. It sounds like you can limit yourself to just that, the evidence in this trial and His Honor's legal instructions in making your decision. Is that fair?

PROSPECTIVE JUROR: Yes.

10:19 MR. MUELLER: That's firm. You can follow that appropriate process?

PROSPECTIVE JUROR: Yes, I can.

THE COURT: Thank you.

Would you go back to the jury room, please.

10:19 (Prospective juror exits courtroom)

THE COURT: I don't see a basis to excuse her.

MR. HORNE: We would object, Your Honor, given that everything she owns is Apple products.

THE COURT: The objection is overruled. She will

10:20 not be excused.

THE COURT: JL.

(Prospective juror enters courtroom)

THE COURT: Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: Thank you for coming down to the courthouse today.

In answering the questionnaire, you indicated that you'd had some -- a negative experience with Apple or Apple products. Tell me about that, please.

PROSPECTIVE JUROR: I've had some experiences with just like updating the phones, and, you know, sometimes the software doesn't work as well after that. Sometimes it seems like maybe a software issue may be kind of encouraging you to get a new one. But, you know, I still use them. Everybody seems to use Apple products. So I don't feel like -- I put on there I don't feel super strongly, but I've definitely had some negative experiences.

THE COURT: Do you feel that your personal experience would affect the way you approach this case?

PROSPECTIVE JUROR: I don't think so, but, you know --

THE COURT: If you're seated on the jury, you'll be asked to decide the case solely on the basis of evidence received in the trial, the witnesses, and the documents, and you'll be required to put aside that experience. Can you do

10:22 that?

PROSPECTIVE JUROR: Yes, I believe I could.

THE COURT: All right. You got to tell us pretty much straight out whether you can or you can't.

10:22 PROSPECTIVE JUROR: Yes, I could.

THE COURT: Okay. Do you think because of your experiences Apple starts out a little bit ahead or a little bit behind based on your experience?

PROSPECTIVE JUROR: You know, like I said, I
10:22 could. I mean, I guess it would be even then.

THE COURT: Okay. Thank you, sir.

Mr. Horne.

MR. HORNE: Good morning, sir. My name is Brian Horne.

10:23 PROSPECTIVE JUROR: Good morning.

MR. HORNE: I represent the plaintiff Masimo in the case.

It sounds like you're good with following the Court's instructions and listening to just the evidence and
10:23 deciding the case just on the evidence alone.

PROSPECTIVE JUROR: Yes, sir.

MR. HORNE: Can you just tell me what Apple products that you own?

PROSPECTIVE JUROR: I own an iPhone and some
10:23 AirPods, and that's it.

MR. HORNE: Thank you.

THE COURT: Mr. Mueller.

MR. MUELLER: Good morning, sir. My name is Joe Mueller. It's nice to meet you.

PROSPECTIVE JUROR: Thank you.

MR. MUELLER: I just have a couple questions. In a case like this, it is really important that both parties start on equal footing, on equal footing.

Can you given your past experiences, your feelings, keep Apple on exactly the same footing as Masimo during this trial?

PROSPECTIVE JUROR: Yes, sir.

MR. MUELLER: Thank you very much, sir.

THE COURT: Thank you.

Would you go back in the jury room, please.

(Prospective juror exits courtroom)

THE COURT: Challenges?

MR. MUELLER: No challenge, Your Honor.

MR. HORNE: No, Your Honor.

THE COURT: Then we have SO.

(Prospective juror enters courtroom)

THE COURT: Good morning, sir.

PROSPECTIVE JUROR: Good morning.

THE COURT: Thanks for coming down to the courthouse today.

In filling out the questionnaire, you indicated that you had some strong feelings about Apple or its products. Would you tell me about that, please.

PROSPECTIVE JUROR: About the products? I'm sorry.

THE COURT: No, no, about your feelings.

PROSPECTIVE JUROR: Oh, my feelings about those products?

THE COURT: Yeah.

PROSPECTIVE JUROR: I don't have any feelings about -- oh, oh, strong feelings. I mean, I'm a user of Apple products, so I don't have strong feelings about --

THE COURT: Oh, okay. Well, let me rephrase the question.

PROSPECTIVE JUROR: Okay.

THE COURT: Do you have any strong feelings with regard to Apple, Inc., or its products?

PROSPECTIVE JUROR: Not adversely, no. I'm a user of Apple products, so I have a strong feeling of satisfaction let's say.

THE COURT: Okay. Do those feelings cause you -- no evidence -- you haven't heard anything -- to favor Apple in this dispute.

PROSPECTIVE JUROR: I have an opinion of Apple and their products. I don't know if I'd favor -- if it might

10:26 color my opinion. It could possibly, yes.

THE COURT: Do you think you could put those feelings aside and just decide the case based on the witnesses, the evidence, and the Court's instructions?

10:26 PROSPECTIVE JUROR: Possibly. I'm more concerned about my ability to be unbiased in this matter based on my own personal experiences aside from the product or the case at hand here.

THE COURT: Well, at the end of the day, you've

10:26 got to tell us, up or down, you're not going to let those experiences enter into your thoughts in deciding this case. Yes or no?

PROSPECTIVE JUROR: My biases, yes, it could.

THE COURT: Okay. Thank you, sir.

10:26 Mr. Horne.

MR. HORNE: Good morning, SO.

PROSPECTIVE JUROR: Good morning.

MR. HORNE: My name is Brian Horne. I represent the plaintiff in the case, Masimo. Pleasure to meet you.

10:26 PROSPECTIVE JUROR: Thank you.

MR. HORNE: Could you tell us a little bit more about your feeling for Apple?

PROSPECTIVE JUROR: Like I said, I'm a user of their products, so I'm satisfied with what they deliver in

10:27 terms of the products that I own and operate.

10:27 MR. HORNE: Which products do you own?

PROSPECTIVE JUROR: MacBook Pro, iPhone, AirPods, Watch. Let's see. I think that's the extent of the products I own.

10:27 MR. HORNE: It sounds like despite your best efforts that Apple might be starting a little bit ahead in the case.

PROSPECTIVE JUROR: Possibly, yes.

MR. HORNE: It might be hard for you to put those 10:27 feelings aside even despite trying your best and being instructed by the Court.

PROSPECTIVE JUROR: It could be.

MR. HORNE: Thank you.

THE COURT: Mr. Mueller.

10:27 MR. MUELLER: Good morning, sir. My name is Joe Mueller. It's nice to meet you.

We are confined in a case like this to the evidence that we hear in the courtroom, the witness testimony before the jury, and the documents that are 10:28 received into evidence during the trial.

Could you make your decision in this case based strictly on that evidence and the legal instructions from His Honor?

PROSPECTIVE JUROR: Possibly not.

10:28 MR. MUELLER: Thank you, sir.

10:28 I have no further questions, Your Honor.

THE COURT: Sir, would you go back in the jury room, please.

PROSPECTIVE JUROR: Yes.

10:28 (Prospective juror exits courtroom)

THE COURT: Challenges?

MR. HORNE: Move to strike, Your Honor.

MR. MUELLER: No objection.

THE COURT: Okay, then we'll excuse SO.

10:28 Okay, JP.

(Prospective juror enters courtroom)

MR. MUELLER: Your Honor, just briefly, I think LP.

THE COURT: Yeah. I'm just having trouble

10:29 deciphering the handwriting.

MR. MUELLER: No problem.

(Prospective juror enters courtroom)

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.

10:29 THE COURT: How are you?

PROSPECTIVE JUROR: I'm well, thanks.

How are you?

THE COURT: Good. Thank you for coming down to the courthouse.

10:29 In filling out the questionnaire, you indicated

10:29 that you had some strong feelings with regard to Masimo Corporation or Cercacor Laboratories.

PROSPECTIVE JUROR: So Masimo -- I'm in healthcare, so I'm familiar with the company. We do use 10:30 their equipment.

THE COURT: Okay. Tell me about your feelings towards them.

PROSPECTIVE JUROR: Oh, nothing bad. All good. We use a lot of their CO2 monitors on our patients, and that 10:30 was basically it.

THE COURT: Do you think your favorable experience with Masimo would affect the way you approach this case?

PROSPECTIVE JUROR: Well, I mean, I have nothing but favorable comments about them, so I haven't had anything 10:30 negative.

THE COURT: Do you think your favorable experiences sight unseen, no evidence yet, would cause you to favor Apple?

PROSPECTIVE JUROR: Favor Apple?

10:30 THE COURT: Yes.

PROSPECTIVE JUROR: Oh, I see what you're saying.

THE COURT: Or let me say it again. To favor Masimo?

PROSPECTIVE JUROR: Okay, yeah, I see what you're 10:31 asking. Yes.

THE COURT: Okay. At the start of the trial, we need to have jurors who are disposed such that nobody starts a little bit ahead, and nobody starts a little bit behind.

Given your experiences, do you feel that Masimo starts a little bit ahead?

PROSPECTIVE JUROR: Yes.

THE COURT: Do you feel that you could put that thought aside and decide this case solely on the evidence, the witnesses, and so on?

PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Thank you.

Mr. Horne.

MR. HORNE: Good morning, LP.

PROSPECTIVE JUROR: Good morning.

MR. HORNE: My name is Brian Horne. I represent Masimo in this lawsuit. Pleasure to meet you.

PROSPECTIVE JUROR: Thank you. You, too.

MR. HORNE: It sounds like -- so when the case happens, the Judge is going to instruct the jury on the law. The parties will come in and present testimony and evidence. It sounds like you can put any feelings aside you have and judge the case just on that evidence and the rules as the Judge gives those to you.

PROSPECTIVE JUROR: Yes.

MR. HORNE: And give each party a fair shot.

10:32 PROSPECTIVE JUROR: Yes.
MR. HORNE: Thank you.
THE COURT: Mr. Mueller.
MR. MUELLER: My name is Joe Mueller. It's very
10:32 nice to meet you.
PROSPECTIVE JUROR: Good morning.
MR. MUELLER: Could you tell me a bit more about your experiences with Masimo equipment, and in particular, I'm interested in I think you mentioned CO2 monitors?
10:32 PROSPECTIVE JUROR: Yes.
MR. MUELLER: Any other patient-monitoring equipment that you've used from Masimo?
PROSPECTIVE JUROR: Well, the only one I'm familiar with is the CO2 monitor.
10:32 MR. MUELLER: And in what circumstances have you used that equipment?
PROSPECTIVE JUROR: We use it daily on our patients.
MR. MUELLER: And if you don't mind me asking,
10:32 what type of patients do you --
PROSPECTIVE JUROR: EP cardiology.
MR. MUELLER: And so what do you use the monitor for in that context?
PROSPECTIVE JUROR: Just basically when we do
10:32 intakes every day with patients. Their equipment is used

every morning.

MR. MUELLER: Understood. And you have had favorable experiences over the years with the Masimo equipment?

PROSPECTIVE JUROR: Yes.

MR. MUELLER: And the key for a case like this is a hundred percent that we really start on equal footing.

Would you be able to treat Apple and Masimo on exactly the same footing --

PROSPECTIVE JUROR: Yes.

MR. MUELLER: -- notwithstanding your prior experiences?

PROSPECTIVE JUROR: Yes.

MR. MUELLER: Thank you very much, LP.

PROSPECTIVE JUROR: Thank you.

THE COURT: Thank you.

Would you go back in the jury room, please.

(Prospective juror exits courtroom)

THE COURT: Challenges?

MR. HORNE: No challenge, Your Honor.

MR. MUELLER: No challenge.

THE COURT: Okay. Very good.

Let's go next to LP.

(Prospective juror enters courtroom)

THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.
THE COURT: Thank you for coming down to the courthouse today.
In answering the questionnaire, you'd had a negative experience with an Apple product. Could you tell me about that?
PROSPECTIVE JUROR: Yeah. So I just got the brand new iPhone 17, and when it came, it didn't charge. So I just had to get a brand new phone. So it's just a recent negative experience I had with them.
THE COURT: How difficult was it for you to get a new phone?
PROSPECTIVE JUROR: I had to wait a couple days, and the phone that I had previously wasn't charging itself, so it was really difficult not having a phone when I went to go buy a brand new phone and running into the same problem.
THE COURT: Do you think your recent experience would affect the way you approach this case?
PROSPECTIVE JUROR: Possibly.
THE COURT: Do you think it would cause you to slightly disfavor Apple because of your experience?
PROSPECTIVE JUROR: Yes.
THE COURT: If the Court instructed you to put aside that experience and decide the case just on the evidence, the witnesses, the documents and so on, could you

10:35 put that recent negative experience aside and just decide the case on the evidence?

PROSPECTIVE JUROR: No.

THE COURT: Okay. Thank you.

10:36 Mr. Horne.

MR. HORNE: No questions, Your Honor.

THE COURT: Mr. Mueller.

MR. MUELLER: Nothing, Your Honor.

THE COURT: Okay. Thank you very much.

10:36 (Prospective juror exits courtroom)

THE COURT: Challenges?

MR. MUELLER: She clearly indicated that she could not follow the Court's instructions and follow the evidence and the instructions of law.

10:36 THE COURT: She'll be excused.

MR. HORNE: No objection, Your Honor.

THE COURT: Next is JQ.

(Prospective juror enters courtroom)

THE COURT: Good morning, sir.

10:37 PROSPECTIVE JUROR: Good morning.

THE COURT: Thank you for coming down to the courthouse today.

In filling out the questionnaire, you indicated that you had some strong feelings about Apple or its

10:38 products, and you also indicated you'd had a negative

experience. Let's start with the negative experience. Could you tell me about that, please?

PROSPECTIVE JUROR: Yeah, so in general, I'm a software engineer that works on -- for iOS and Android. So I am locked into their ecosystem in order to develop applications for their ecosystem, and they are our most profitable application. So pretty much I have to -- whenever I make applications, I have to cater to whatever requirements Apple has, which then influences how I can design the apps that I work on.

THE COURT: And you take that as a negative influence?

PROSPECTIVE JUROR: Yes, like it forces me to do things the way that Apple requires me to do them versus however I think is the best for the product.

THE COURT: Okay. If you're seated on this jury, you'll be asked to decide this case based solely on the evidence, the witnesses, the documents, and so on.

Do you think you could put aside your own experience and just decide the case on the evidence that you hear and the witnesses you see?

PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Thank you.

Mr. Horne.

MR. HORNE: Good morning, sir.

10:39 Is it JQ?

PROSPECTIVE JUROR: Yes.

MR. HORNE: Good morning. It's a pleasure to meet you.

10:39 PROSPECTIVE JUROR: A pleasure.

MR. HORNE: My name is Brian Horne. I represent Masimo, the plaintiff in this lawsuit. Thank you for coming in this morning.

Sir, do you own any Apple products?

10:39 PROSPECTIVE JUROR: I used to. I -- well, yeah, actually, I still do. I just switched from iOS to Android, but I still own a MacBook.

MR. HORNE: And this case, sir, will not deal with software development, anything like that.

10:39 PROSPECTIVE JUROR: Awesome.

MR. HORNE: So given what the Court said, the Court's going to instruct you on the law, and do you think you can just consider the evidence here presented in this case, and follow the instructions by the Judge, and treat 10:40 each party fairly?

PROSPECTIVE JUROR: Yes.

MR. HORNE: Thank you.

THE COURT: Okay. Mr. Mueller.

MR. MUELLER: Good morning, sir.

10:40 PROSPECTIVE JUROR: Good morning.

10:40 MR. MUELLER: My name is Joe Mueller. Very nice to meet you.

PROSPECTIVE JUROR: Likewise.

THE COURT: Could you tell me a bit more about

10:40 just the work you do on app development and how you interact with Apple?

PROSPECTIVE JUROR: Yeah, so I'm a software engineer, a software engineering manager, so at a mobile game company where we develop games for iOS and Android. We

10:40 have some of the top games. So I'm both working as a manager for my direct reports who are working on the games, but I also work on the games myself, so I have a close connection to all that.

MR. MUELLER: And it sounds like you may have some

10:40 frustrations with the Apple constraints in terms of the types of code you can develop; is that fair?

PROSPECTIVE JUROR: Yes.

MR. MUELLER: And is that something you encounter on a weekly basis, daily basis? How frequently do you run

10:40 into those constraints?

PROSPECTIVE JUROR: Probably not that frequently, like once a quarter. It's most often -- once a year Apple releases a brand new OS that requires us to change direction of what we're working on. The most recent one was Apple 18,

10:41 iOS 18, or something like that. Yeah.

10:41 MR. MUELLER: Fair enough. But it sounds like this is a bit of an ongoing source of frustration for you; is that fair?

PROSPECTIVE JUROR: Yes, that is correct.

10:41 MR. MUELLER: And I appreciate very much that you would try to follow the evidence in the trial, but is it possible that this ongoing source of frustration with Apple would leave us just a little bit behind in your mind?

PROSPECTIVE JUROR: I -- possibly. I don't know. 10:41 It's hard for me to say because I'm in the industry, and Apple is a company that I have considered as a potential future employer, so that -- yeah.

MR. MUELLER: But is it fair to say, sir, that there's a possibility that whatever your intentions, there 10:41 could be frustration with Apple bleeding over into your decision-making here? Is that possible?

PROSPECTIVE JUROR: No. I would try to keep that out, yeah.

MR. MUELLER: Understood. Thank you, sir.

10:42 THE COURT: Thank you.

Would you go back to the jury room, please.

(Prospective juror exits courtroom)

THE COURT: Any challenges?

MR. MUELLER: No challenge, Your Honor.

10:42 MR. HORNE: No, Your Honor.

10:42 THE COURT: Okay. Thank you.

Next JR.

(Prospective juror enters courtroom)

THE COURT: Good morning, JR.

10:43 PROSPECTIVE JUROR: Good morning.

THE COURT: Sir, thank you for coming down to the courthouse today.

In filling out the questionnaire, you indicated that you'd had a negative experience with an Apple product. 10:43 Could you tell me about that, please?

PROSPECTIVE JUROR: Just we had a laptop, and it didn't work so good. I took it to an Apple store, and I thought we fixed it but apparently not. And then -- so it wasn't a big major thing. I just traded the Apple in for 10:43 another different computer than the one that I had gotten.

THE COURT: Different brand or --

PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Do you think that experience would affect the way you approach this case?

10:44 PROSPECTIVE JUROR: Not to my knowledge because I'm currently sitting with an iPhone.

THE COURT: Okay. Because of your experience, do you feel that one side or the other starts out a little bit ahead or a little bit behind rather than everybody starting 10:44 in the same place?

PROSPECTIVE JUROR: I'm not really sure.

THE COURT: What would help you determine that.

PROSPECTIVE JUROR: I like the phone that I have. I didn't -- I had a problem with the laptop, so I would say it's a pretty even push right now.

THE COURT: Okay. But then do Apple and Masimo start out even, in the same place, nobody ahead of one another in your mind?

PROSPECTIVE JUROR: No. I would be as fair as possible.

THE COURT: No, no, you've got to answer the question.

Does anybody start out a little bit ahead or a little bit behind because of your experiences with Apple?

PROSPECTIVE JUROR: I would say Apple starts out a little bit behind.

THE COURT: Okay. Do you think you could put those feelings aside?

PROSPECTIVE JUROR: Yeah.

THE COURT: Do you understand that you'd be asked to decide the case if you're on the jury just on the basis of the evidence, witness documents, and so on that you hear?

PROSPECTIVE JUROR: Yeah.

THE COURT: You can do that?

PROSPECTIVE JUROR: Yes.

10:45 THE COURT: Okay. Thank you.

Mr. Horne.

MR. HORNE: Good morning, JR.

PROSPECTIVE JUROR: Good morning.

10:45 MR. HORNE: My name is Brian Horne. I represent Masimo, the plaintiff in the lawsuit. Pleasure to meet you.

PROSPECTIVE JUROR: Okay.

MR. HORNE: Sir, you mentioned you own an iPhone and an Apple computer.

10:45 PROSPECTIVE JUROR: Yes.

MR. HORNE: Have you ever owned any other Apple products?

PROSPECTIVE JUROR: No.

MR. HORNE: And what has your experience been with 10:45 the iPhone, sir?

PROSPECTIVE JUROR: The iPhone has been pretty good. I had to learn transferring it over from Samsung, but once I learned everything, the camera was better, and I enjoy it.

10:46 MR. HORNE: What about your experience with the computer?

PROSPECTIVE JUROR: The laptop problem, it might have been that I didn't know enough to where I should have learned more. But we had a problem, and I took it down to 10:46 the Apple store. Most of the time they're really good at

10:46 helping you, but we had a challenge with that, and I couldn't get that to work. So then I just said -- it's not a real big thing, but I said I don't want to deal with it anymore, so I changed over to a Dell computer.

10:46 MR. HORNE: Thank you, sir.

THE COURT: Mr. Mueller.

MR. MUELLER: Good morning, sir. My name is Joe Mueller. It's very nice to meet you.

You said at one point that Apple would start out a 10:46 little bit behind if I heard you correctly. Could you just tell me a bit more about why that is?

PROSPECTIVE JUROR: I may have misspoke. I don't discredit Apple for anything. I mean, I'm very happy with the iPhone. I'm very happy with that. My dad, who passed a 10:47 few -- a couple years ago, he was very much an Apple fanatic. He loved everything Apple, and he taught me a lot of things, so we worked on it. But as far as being on a downside, I did have that experience with the -- one of the Air Books way back when, but that was five or six years ago.

10:47 MR. MUELLER: Understood.

So in this trial, you would treat both parties as on equal footing and would decide the case based on the evidence you hear in this courtroom?

PROSPECTIVE JUROR: Yes. I'm not even sure what 10:47 it's about. Yes.

10:47 MR. MUELLER: Thank you very much, sir. Appreciate it.

PROSPECTIVE JUROR: No problem.

THE COURT: Thank you.

10:47 Would you go back in the jury room, please.

(Prospective juror exits courtroom)

THE COURT: Okay, DS we spoke to already.

GS.

(Prospective juror enters courtroom)

10:49 THE COURT: Good morning.

PROSPECTIVE JUROR: Good morning.

THE COURT: How are you?

PROSPECTIVE JUROR: I'm well.

THE COURT: Good. Thank you for coming down to 10:49 the courthouse.

In filling out the little questionnaire, you indicated that you'd had a negative experience with an Apple product.

PROSPECTIVE JUROR: That's correct. I've been 10:49 working with Apple products for 30-plus years, so I've had very good experiences and maybe a few negative. You know, a battery might go down, or you might have a problem with an upgrade or a little bit of the technology, but I wanted to be complete and honest, so --

10:49 THE COURT: Okay. Do you think your personal

experiences, both good and bad, would have any bearing on how you approach this case?

PROSPECTIVE JUROR: It's hard to say, but I don't know the details of the case at this point, so --

THE COURT: Okay. Do you think because of your experiences Apple starts out a little bit ahead or a little bit behind --

PROSPECTIVE JUROR: I'd put it ahead --

THE COURT: -- or right in the same place?

PROSPECTIVE JUROR: Yeah, I mean, I don't feel necessarily negative or positive about the company, so --

THE COURT: Okay. Do you think you could put aside your experiences with Apple and decide the case just on the evidence, the witnesses you see here, and so on during the course of the trial and put that experience, whether good or bad, aside?

PROSPECTIVE JUROR: I could do that.

THE COURT: Okay. Thank you.

Mr. Horne.

MR. HORNE: Good morning, GS.

PROSPECTIVE JUROR: Good morning.

MR. HORNE: Pleasure to meet you. My name is Brian Horne. I represent Masimo, the plaintiff in this lawsuit.

You mentioned, sir -- you said you've been working

10:50 with Apple for about 30 years I thought I heard you say.

PROSPECTIVE JUROR: Working with their products, so --

MR. HORNE: Thirty years. So what products have 10:50 you owned over the years?

PROSPECTIVE JUROR: Mac computers all the way back to probably like the Quadra back in the early '90s and more recently iPads and iPhones and the iOS, so --

MR. HORNE: And what about -- do you own an Apple 10:51 Watch?

PROSPECTIVE JUROR: I don't own an Apple Watch, no.

MR. HORNE: You also mentioned at one point -- I thought you said you put Apple a little bit ahead.

10:51 PROSPECTIVE JUROR: I think so.

MR. HORNE: And could you tell us a little bit more about that?

PROSPECTIVE JUROR: I mean, their innovations and their products are quite good. I mean, I'm both -- I'm 10:51 bi-platform, so I have Macs and PCs, so --

MR. HORNE: But you think their innovation is pretty good?

PROSPECTIVE JUROR: Yeah.

MR. HORNE: So this is a case involving some 10:51 technology and some patents -- or a patent.

10:51 Do you think it's possible that Apple might be starting just a little bit ahead in your mind given this is a technology case?

PROSPECTIVE JUROR: Ahead of? Ahead of other --

10:51 MR. HORNE: Ahead of my client in this case. So we're supposed to start off on equal footing.

Is it possible that Apple might have just a little bit of a nose advantage over my client in this case given your positive experience with Apple?

10:52 PROSPECTIVE JUROR: I don't know what your client's products are, so I guess I would be pretty neutral on that.

MR. HORNE: Do you think given all of your experience with Apple you're going to be able to put all 10:52 that aside, or that might leak in a little bit in your view of the case as you hear the evidence?

PROSPECTIVE JUROR: I think I could be neutral about it, but, you know, everybody has their own experiences and everything, so it's hard to give you a concrete answer 10:52 on that. I guess, you know, I could be neutral.

MR. HORNE: Okay. And I know we all do our best to be neutral and fair, but --

PROSPECTIVE JUROR: That's about it, yeah.

MR. HORNE: Would that be a little bit harder for 10:52 you with Apple in this case, sir?

PROSPECTIVE JUROR: I don't think so.

MR. HORNE: Thank you, sir.

PROSPECTIVE JUROR: Sure.

THE COURT: Mr. Mueller.

MR. MUELLER: Good morning, sir.

PROSPECTIVE JUROR: Good morning.

MR. MUELLER: My name is Joe Mueller. Very nice to meet you. Just a couple questions.

I understand you're now retired. Is that right, sir?

PROSPECTIVE JUROR: Correct.

MR. MUELLER: What did you do for work before you retired?

PROSPECTIVE JUROR: Business presentations, a video producer, so I used Apple products for doing a lot of editing. A lot of the programs that I've worked with had their products on Apple platforms.

MR. MUELLER: And what types of businesses were they for?

PROSPECTIVE JUROR: Companies and organizations that used -- you know, we needed to tell a story for them for their clients, for their employees, for their customers, so --

MR. MUELLER: Understood.

PROSPECTIVE JUROR: Does that help?

10:53 MR. MUELLER: It does. Thank you very much.

PROSPECTIVE JUROR: Sure.

MR. MUELLER: In a case like this, it's very important that we strictly limit the decision-making of the jury to the evidence we hear in the courtroom, the witness testimony, the documents that are admitted into evidence, and His Honor's legal instructions.

Could you make your decision in this trial only on that basis, the evidence presented in court, His Honor's instructions, and the law?

PROSPECTIVE JUROR: Just limiting it to that, I could do that.

MR. MUELLER: Thank you, sir. I appreciate it.

PROSPECTIVE JUROR: Okay.

10:54 THE COURT: Thank you, sir.

Would you go back in the jury room, please.

PROSPECTIVE JUROR: Sure.

(Prospective juror exits courtroom)

THE COURT: Challenges?

10:54 MR. HORNE: Yes, Your Honor. We object. He did say it would be hard to say. Apple would start ahead. The innovations have been good. I mean, when he was talking about being neutral, he said I think I could be neutral. Hard to give you a concrete answer. So we object and move to strike.

10:54 THE COURT: Mr. Mueller.

MR. MUELLER: We think that he expressed quite clearly that he could be bound by the evidence and the instructions on the law. He mentioned he uses multiple
10:54 types of products, including other computers as well. I think he was sincerely answering questions about the process but not exhibiting any deep-held inability to follow the process. In fact, when we asked him directly could he be strictly limited to the evidence in this courtroom and Your
10:55 Honor's legal instructions, he said yes.

THE COURT: The challenge will be overruled.

Okay, our last juror, PW.

(Prospective juror enters courtroom)

THE COURT: Good morning.

10:56 PROSPECTIVE JUROR: Good morning.

THE COURT: They'll probably have some questions for you, too, so not to worry.

PROSPECTIVE JUROR: Okay.

THE COURT: Okay, in filling out the
10:56 questionnaire, you indicated -- let's take Apple first -- that you had some strong feelings about Apple and that you had a negative experience.

Could you tell me about your Apple experiences?

PROSPECTIVE JUROR: My personal experience, I
10:56 don't like Apple. I believe they're made to last two years

only. I do not like Apple. I have an Apple phone because it's a family preference. But my last experience, my iPhone was infected. I bought a new one. It was infected, and they sent me a refurbishment, a used phone, as my replacement, so I do not like Apple.

THE COURT: If you're seated on this jury, do you think you could put those feelings aside and decide the case just on what you hear in the courtroom?

PROSPECTIVE JUROR: I don't know to be honest.

THE COURT: Okay. You also indicated that you had some strong feelings toward Masimo and some negative experiences. Why don't you tell us about that.

PROSPECTIVE JUROR: Work experience. I work for a company called AVANTA Solutions, and I do the -- I'm the accounts payable manager, and I'm dealing with some issues with their accounts receivables manager who's holding some of our vendor repair -- or customer repairs I should say. And so I've been dealing with that for a month, so they're not on my Christmas list right now because I'm getting calls from everywhere trying to figure out why customers aren't getting their orders and salespeople not being able to make sales. So, yeah, it's just -- it's not personal. It's just work, personal.

THE COURT: Well, same question, do you think you could put aside your experiences with regard to Masimo and

10:57 decide the case solely on the evidence you hear in this courtroom?

PROSPECTIVE JUROR: Perhaps on that one, yeah. I don't know to be honest if I don't know what I'm looking at or dealing with. Perhaps yes.

10:58 THE COURT: Well, we haven't heard any evidence, so --

PROSPECTIVE JUROR: Yeah.

THE COURT: We really don't know the facts of the case yet, but it is important that jurors are committed to the proposition, if they can, that everybody starts out in the same place. Nobody is a little bit ahead. Nobody is a little bit behind. Can you do that?

10:58 PROSPECTIVE JUROR: I believe I can on that, yes.

10:58 THE COURT: Okay.

Mr. Horne.

MR. HORNE: Good morning, ma'am.

PROSPECTIVE JUROR: Good morning.

MR. HORNE: My name is Brian Horne. I represent Masimo in this lawsuit. Pleasure to meet you.

10:58 Can you tell me a little bit more about your experiences with Masimo and this -- you said it was an AR issue?

PROSPECTIVE JUROR: Yes. The company I work for filed bankruptcy about a year ago, and so some of the orders

10:59

that we sent for reimbursement from some of our customers, they're denying to return that order until we've paid the balance from the bankruptcy -- pre-filing, I should say, and we're not able to do that, so it's just been a big deal the last month.

MR. HORNE: Sounds like you're a little frustrated with Masimo.

PROSPECTIVE JUROR: Well, yeah, because it delays my work, and I get calls from frustrated sales people that are not able to make their sales, but I don't -- there's nothing that I can do, but it all comes back to accounts payable.

MR. HORNE: Yeah, it's making your life a little difficult.

PROSPECTIVE JUROR: My work life, yeah.

MR. HORNE: Is it possible Masimo might be a little behind in this case?

PROSPECTIVE JUROR: I'm sorry. What was that?

MR. HORNE: Sorry. You might come into this case with some negative feelings towards Masimo?

PROSPECTIVE JUROR: Towards the company, I'm not sure, but maybe for the accounts receivable manager, maybe a little bit.

MR. HORNE: Do you think it's possible that those feelings for the accounts receivable manager from Masimo

11:00 might bleed into the case against my client?

PROSPECTIVE JUROR: I don't believe so. I want to think I'm a fair person, so I don't think that it would.

MR. HORNE: Thank you.

11:00 PROSPECTIVE JUROR: You're welcome.

THE COURT: Mr. Mueller.

MR. MUELLER: Good morning. My name is Joe Mueller. Very nice to meet you.

PROSPECTIVE JUROR: Good morning.

11:00 MR. MUELLER: You've mentioned that you've had some bad experiences with Apple; is that right?

PROSPECTIVE JUROR: Correct.

MR. MUELLER: And it sounds like -- and I appreciate your candor, first of all.

11:00 PROSPECTIVE JUROR: No problem.

MR. MUELLER: But it sounds like given those experiences Apple would not be starting on equal footing in this case; is that fair?

PROSPECTIVE JUROR: Yes, because it's personal.

11:00 MR. MUELLER: Understood. Thank you very much, ma'am.

THE COURT: Okay. Thank you.

Would you go back in the jury room, please.

(Prospective juror exits courtroom)

11:00 THE COURT: Challenges?

MR. HORNE: I think we agree on this one, Your Honor.

THE COURT: She'll be excused.

Why don't we take about a 15-minute break, and then we'll start with the regular voir dire.

(Recess)

(Prospective jurors enter courtroom)

THE CLERK: Calling Item No. 1, SACV-20-00048-JVS, Masimo Corporation, et al., versus Apple, Inc.

Counsel, please state your appearances for the record.

MR. RE: Good morning, Your Honor. Brian Horne from Knobbe Martens for Masimo. I'm joined with my partners Joseph Re, Brian Claassen, and Sheila Swaroop.

THE COURT: Good morning.

MR. MUELLER: Good morning, Your Honor. Joe Mueller on behalf of Apple. With me are Apple's corporate representative, Dr. Christopher Brouse, Amy Wigmore, Mark Selwyn, Jamie Laird, and Sarah Frazier.

THE COURT: Good morning.

And good morning to you, ladies and gentlemen. I want to thank you for coming down to the courthouse today. In time of peace, after voting, probably your next and most important civic duty is serving on a jury. Our Founding Fathers thought so much of the right to a jury trial that

they put it in the United States Constitution. Both for civil and criminal cases, people can come to court, and they have a right to a jury.

Think about that, 250 years ago our Founding Fathers putting the government together and structuring it thinking about who ought to do what. They had a role for citizens in the justice system, and that role continues today, and really, you're here in part to carry forward that role in the justice process.

Let me introduce my courtroom staff to you. Ms. Sharon Seffens is our court reporter, and Elsa Vargas is our courtroom deputy.

Let me again ask counsel to introduce themselves, particularly their client representatives.

Mr. Horne.

MR. HORNE: Yes, Your Honor.

My name is Brian Horne again. I represent Masimo Corporation. We're here with our corporate representative, Mr. Stephen Scruggs from Masimo. And I'll introduce my partners again, Mr. Joseph Re, Mr. Brian Claassen, and Ms. Sheila Swaroop.

THE COURT: Thank you.

MR. MUELLER: Good morning, ladies and gentlemen. My name again is Joe Mueller. I am here on behalf of Apple. And our corporate representative is Dr. Chris Brouse. He's

11:22 an engineer at Apple. And then my colleagues, who you will be hearing from in terms of examining witnesses over the course of this trial, my partners Amy Wigmore, Mark Selwyn, and Sarah Frazier. Thank you very much. Nice to meet you.

11:22 THE COURT: Thank you.

Let me tell you what we're going to be doing shortly, ladies and gentleman. We'll be picking a jury for this case. It's a civil case entitled Masimo Corporation and Cercacor Laboratories versus Apple, Inc.

11:22 Shortly, we'll be inviting 14 folks to come to the jury box, and I'll be asking them some questions. The purpose of this process is to let the parties learn a little bit more about you, your background, and experience to make some important decisions about who should be serving on this jury. 11:22 It's not intended to invade your privacy or make you uncomfortable at all, but it's simply trying to get some basic facts out there to help counsel make some decisions in this most important part of the case.

After counsel and I have had a chance to ask 11:23 questions of the jurors, each side will have an opportunity to exercise what are called peremptory challenges. Each side may invite the Court to excuse up to three prospective jurors. The thought behind this is that we want a jury that's fair and impartial from the perspective of the 11:23 plaintiff and from the perspective of the defendant, and

11:23 this is part of that process.

If you're excused on a peremptory, you shouldn't take it as a reflection of your honesty or integrity. Indeed, it may have been because you were very forthright in 11:23 answering the questions that counsel thought perhaps it would be better for you to serve on another case. Likewise, if you met somebody down in the jury assembly room and you were looking forward to serving on this case with them and they get excused, please don't hold it against counsel or 11:24 the parties. It's simply part of our process.

I sat for almost five years on the Superior Court before being appointed to the Federal Court, and it was my practice to send the jurors a short note after each trial asking can we make this better? Can we make it more 11:24 convenient for you? Do you have any other suggestions? One gentleman after a short criminal trial wrote back to me: "You will come away from this experience knowing that one person has a true say in justice in this great country."

Regardless of your role in this case, whether you 11:24 actually serve, perhaps you answer some questions and are excused, or at the end of the day you find yourself in the audience, I trust that you'll leave with that same feeling because your service is really truly important.

At this time, we'll seat 14 prospective jurors, 11:25 please.

11:25 (Court and clerk conferring)

(Prospective jurors sworn)

THE CLERK: In Seat No. 1, RN.

In Seat No. 2, MF.

11:26 In Seat No. 3, JM.

In Seat No. 4, JR.

In Seat No. 5, GB.

In Seat No. 6, DS.

In Seat No. 7, JG.

11:27 In Seat No. 8, GB.

In Seat No. 9, AR.

In Seat No. 10, TN.

In Seat No. 11, JL.

In Seat No. 12, LP.

11:29 In Seat No. 13, CH.

In Seat No. 14, JQ.

THE COURT: Good morning to our 14 new prospective jurors. I'm going to be asking you some questions as a group. If you have an answer, would you raise your hand, 11:30 please, and I'll work from top to bottom and make sure we get everybody's answer. After that, I'm going to visit with each of you individually and get some personal background. I think you each should have a little placard in front of you. Yep, I'll be asking you for the information on that.

11:30 The parties have prepared a brief statement, a

11:30 brief summary, to give you some context for my questions and their questions.

In this case, plaintiff Masimo Corporation has brought a claim of patent infringement against defendant Apple, Inc. Masimo owns Patent No. 10,433,776, which you will hear referred to as the '776 Patent. In this trial, you may hear testimony or see documents about Cercacor, which was created by Masimo as a separate company, but Cercacor has no interest in the '776 Patent.

11:31 Masimo contends that Apple has infringed certain claims of the '776 Patent by importing into the United States and offering for sale and selling in the United States Apple Watches. Masimo contends that Apple infringed on certain models of the Apple Watch with a feature called High and Low Heart Rate Notifications. Masimo also seeks monetary damages in the form of a reasonable royalty for the period from January 9, 2020, when Masimo filed this suit, through June 26, 2022, when the '776 Patent expired.

Apple contends that the asserted claims of the '776 Patent are invalid because the claimed inventions would have been obvious to a person of skill in the field of technology of the patent when the patent was first filed in 2001.

Apple contends that Masimo is not entitled to any damages because Apple has not infringed any of its valid

11:32 claims.

Based on that brief statement of facts about the case, do any of you have any feelings about this case one way or another?

11:32 Do any of you have any feelings one way or another whether this is an appropriate type of dispute to bring to court?

Does anybody have any feelings one way or another whether this is an appropriate type of dispute to ask a jury to decide? 11:33

Do any of you have any financial or other interests in the outcome of the case?

Does anyone own any Apple stock?

PROSPECTIVE JUROR: I think I do.

11:33 THE COURT: Okay. Tell me about that.

THE CLERK: Hold on a second.

THE COURT: Okay, CH.

PROSPECTIVE JUROR: I'm CH, and I work as an assistant to a financial planner. Although my account is discretionary, I believe I've got Apple in one of my accounts. 11:33

THE COURT: What do you mean --

PROSPECTIVE JUROR: Discretionary? That means I make no decisions. My financial planner makes the decisions. 11:33

11:33 THE COURT: Okay. But you're the owner of the account that has Apple stock?

PROSPECTIVE JUROR: Yeah, I think so.

THE COURT: Okay. Well, I'm afraid we have to excuse you.

11:33

PROSPECTIVE JUROR: Thank you.

THE COURT: Thank you for coming down today.

(Prospective juror CH excused)

THE COURT: Anyone else have any?

11:34 Yes, sir, JQ.

PROSPECTIVE JUROR: I don't have directly Apple, but they are a part of the mutual funds that I have.

THE COURT: I don't believe holdings in a mutual fund disqualify you.

11:34 Any dissent from that?

MR. HORNE: No, Your Honor.

MR. MUELLER: No objection, Your Honor.

THE COURT: Okay.

Okay, we'll seat one more prospective juror then, please.

11:34

THE CLERK: In Seat No. 13, AB.

THE COURT: Good morning, AB.

Sir, I'm just a couple of questions into all the questions that I'm going to ask, but if you heard the first couple of questions, would you have a response to any of

11:35

11:35 those?

PROSPECTIVE JUROR: No, sir.

THE COURT: Okay.

Again, I'd ask you, ladies and gentlemen in the audience, if you have an answer to any of the questions I ask, would you make a mental note so that if you're called to the jury box, you're able to share that information with us.

Do any of you know any of the lawyers or court staff in this case, or have you heard of any of them?

Have any of you read anything about this case in the press?

Okay, JL.

PROSPECTIVE JUROR: I've read a little bit of background about it when I was researching watches for my mother based on the recommendation of her cardiologist, so it's a little bit of background in terms of there was a case, but I went with a different brand anyway.

THE COURT: Okay. How long ago did you do this research?

PROSPECTIVE JUROR: About four months ago.

THE COURT: Okay. Thank you.

JQ.

PROSPECTIVE JUROR: Yeah, so I keep up with the technology industry, so I listen to podcasts, and amongst

11:37 the topics is Apple versus Masimo. It has come up.

THE COURT: How frequently have you read stories about this case?

PROSPECTIVE JUROR: So every time it comes up,

11:37 I've heard it, so I don't know when the last article was written.

THE COURT: And in what publications do you find this material?

PROSPECTIVE JUROR: The primary one is

11:37 theverge.com.

THE COURT: Okay.

I'm going to read a list of potential witnesses. If you know any of them or if you've heard of any of them, would you raise your hand, please.

11:37 Ammar Al-Ali, Jim Bergman, Chris Brouse, Deidre Caldbeck, Mohamed Diab, Vijay Madisetti, Rebecca Reed-Arthurs, Stephen Scruggs, Stephen Waydo, Teddy Framhein, Eric Jue, Afshad Mistri, Michael O'Reilly, Ian Shapiro, David Amor, Molly Anderson, Ueyn Block, Mathieu

11:39 Charbonneau-Lefort, Tim Cook.

Yes, okay, TN.

PROSPECTIVE JUROR: Nothing specific. Just generally his role in the company.

THE COURT: And what do you understand that to be?

11:39 PROSPECTIVE JUROR: CEO.

11:40 THE COURT: Okay. Thank you.

Then JQ.

PROSPECTIVE JUROR: Yeah, so I am aware that he is the CEO of Apple since 2011.

11:40 THE COURT: Have you ever seen any press coverage associating him with this case?

PROSPECTIVE JUROR: No.

THE COURT: Okay. Thank you.

Sumbul Desai, Chinsan Han, Tobias Harrison-Noonan, 11:40 Steven Hotelling, Michael Jaynes, Brian Land, Paul Mannheimer, Robert Mansfield, Divya Nag, Marco Perez, Adrian Perica, Mark Rollins, Fletcher Rothkopf, Peter Russell-Clarke, Mushtaq Sarwar, Denby Sellers, Jeff Williams.

11:41 Let me say I don't think we're going to hear from all these folks.

Stephen Waydo, David Gal, Patrick Mercier, Ali Raja, Steven Warren, Shirley Webster, June Munford, Phillip Shaltis, Kristen Budreau, Joseph Kiani, Bilal Muhsin, 11:43 Richard Priddell, Blaire Tripodi, William Wilson.

Okay, ladies and gentlemen, I think we're going to stop here for the lunch break. We'll resume at 1:30, but I need to share a couple things with you.

Number one, you are not to discuss the case with 11:43 anybody, and that means anyone. And you're not to form any

opinions about the issues in the case. We haven't heard any evidence. But still, you need to keep an open mind until the end of the case about the case and how its issues should be decided.

Also, I want to preserve your independence as the factfinders in this case and the independence of counsel. Their duty in a lawsuit is to zealously represent their clients. That's the word in the Canons of Ethics, "zealous." In order to preserve your independence and their independence, I'm going to ask you to steer clear of counsel and anybody you perceive to be a party or a witness throughout this case.

If you're coming up tomorrow or coming through the magnetometer and counsel is right behind you and they don't talk to you, they don't exchange your pleasantries, good morning or how are you, they're respecting the Court's wishes. They're not being rude or disrespectful to you. They're following the Court's wishes to preserve your independence.

So with those thoughts in mind, ladies and gentleman, we'll be in recess until 1:30.

(Prospective jurors not present)

THE COURT: Anything for the record before we take the break?

MR. HORNE: Just one thing, Your Honor. I was

11:45 passed a note. We believe that LP raised her hand in response to the question about media. I don't think she was called on, so you might want to make sure and double back on that.

11:46 THE COURT: Which juror now?

MR. HORNE: She's No. 12.

THE COURT: Okay. We'll resume with her.

Anything else?

MR. MUELLER: We saw that, too, Your Honor, so I

11:46 was going to mention that.

But also, if we could when we return, if you'd question possibly LP and JQ -- I don't know if I'm pronouncing his name correctly -- at sidebar on the media reports. We'd rather not inquire into that in front of the

11:46 whole pool, but he's seen a fair amount of it, so we'd like to ask him some questions about that outside the presence of the full jury.

THE COURT: When we come back, why don't I just ask the two of them to come in.

11:46 MR. MUELLER: Perfect.

THE COURT: Okay.

MR. HORNE: One logistics question, Your Honor. Apple is maintaining some objections to our opening slides and exhibits. I wanted to know when the Court would like to

11:47 take those up.

11:47 THE COURT: Why don't we take them up after we've selected a jury. I trust that they're not extensive.

MR. HORNE: I think there's a handful, and most of them cover one issue. I think there's two, maybe three,
11:47 issues total.

THE COURT: Well, why don't we do that right now and get it done.

MR. MUELLER: Ms. Frazier will address those for us, Your Honor.

11:47 THE COURT: Very good.

Would you hand up a set of the slides, please.

MS. FRAZIER: Good morning, Your Honor.

Did you ask for a copy of the slides?

THE COURT: Yes, please.

11:48 MS. FRAZIER: Your Honor, if it's okay, we're just going to pass up the ones that remain in dispute. The others we've scribbled over during our negotiations.

THE COURT: I'm sorry, the others were?

MS. FRAZIER: We marked them up as Mr. Horne and I
11:48 were compromising on things.

THE COURT: Oh, okay. Okay, good.

(Slides handed to the Court)

MS. FRAZIER: Your Honor, Sarah Frazier for the record.

11:48 We have two objections to Masimo's slides and one

11:49 with respect to an exhibit that I understand will be shown during opening.

If we could start with the slide objections, our first objection relates to four of the slides, PDX 1.50, PDX 11:49 1.51, PDX 1.56, and PDX 1.57.

Your Honor, our objection here relates --

THE COURT: I'm looking at 1.5, but I don't see 1.5 sub --

MS. FRAZIER: You do not see --

11:49 THE COURT: I think you handed up a separate set, but I have it.

MS. FRAZIER: Sorry.

THE COURT: I've got them.

MS. FRAZIER: Your Honor, our objection here -- 11:50 the flavor of the objection is the same with respect to all of these, which is they violate the entire market value rule. If you look at PDX 1.50, what's set forth there in the table is Mr. Bergman's -- Masimo's damages expert's opinion on the appropriate per unit royalty rate in this 11:50 case for the accused features, the High/Low Heart Rate Notifications. What is shown below that then is a watch with a price tag of the average price of the watch.

They are trying to draw a comparison to make their damages numbers seem reasonable in context of the overall 11:50 price or revenues of the product. And lest there be any

11:50 confusion, that's what they're trying to do. If you look at Slide 51, they do just that with a pie chart showing the reasonable royalty Mr. Bergman seeks to put forward as a sliver of the pie that is the overall product price.

11:51 The same issue in another pie chart infects Slide 56 and Slide 57.

Your Honor, this type of comparison is explicitly prohibited by Federal Circuit precedent. Perhaps the clearest case on point is LaserDynamics versus Quanta 11:51 Computer. That is at 694 F.3d 51. I would be happy to pass a copy up for the Court if you would appreciate --

THE COURT: Why don't you just quote the relevant language.

MS. FRAZIER: Your Honor, the Court couldn't say 11:51 it any clearer or better than I can. It says, quote -- and this is at page 68 of that opinion -- "One way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete 11:52 product rather than the patented component only. In Uniloc, we observed that such disclosure to the jury of the overall product revenues 'cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.'"

11:52 It then goes on, Your Honor, to say: "Admission

11:52 of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's 11:53 damages calculation beyond that which is 'adequate to compensate for the infringement.'"

Your Honor, that's exactly what they're trying do with these slides, is skew the horizon by attempting to make their damages ask look small in comparison to an overall 11:53 price theory.

And lest there be any confusion, the Uniloc case that I just referred to in that LaserDynamics passage, which is Uniloc versus Microsoft -- that's at 632 F.3d 1292, another Federal Circuit case -- dealt with a pie chart. And 11:53 in that case, the Court affirmed the district court's grant of a new trial finding that it was prejudicial to have this type of comparison between an overall product revenue to a damages ask absent a circumstance where the entire market rule has been invoked.

11:54 It has not in this case. There is no argument or evidence that the two features at issue, High/Low Heart Rate, drive demand for the whole product. And so we believe this comparison is improper under Federal Circuit precedent.

THE COURT: Mr. Horne.

11:54 MR. HORNE: A few things, Your Honor. To be

11:54 clear, Mr. Bergman is not relying on the entire market value rule, and that was the objection --

THE COURT: But that's not the point.

MR. HORNE: Right. Understood.

11:54 So, number one --

THE COURT: There is no contention that the royalties numbers do not reflect an appropriate apportionment and are not predicated on the whole market value.

11:54 MR. HORNE: Correct. He determined his royalty by apportioning the value of the patented invention to the product.

THE COURT: Right. That's not the objection here.

MR. HORNE: Understood. So in the expert report,
11:55 he disclosed the price. They filed the MIL not on the price. They filed the MIL on their overall company revenue. The case she just referred to was overall product revenues, not the cost of a product, not the price of a product. It was overall revenue, like billions and billions of dollars
11:55 or hundreds of millions of dollars. That's not what he's doing here.

Also, Your Honor, I think it's important to note in light of -- well, two things. Number one, Ms. Webster in her report compared Mr. Bergman's royalty to Apple's profits
11:55 and said it's unreasonable. Look how high his royalty is

11:55 compared to the profits. So she did a percentage calculation there.

But most importantly, I have Apple's slides for opening, and I'd like to show you just one.

11:56 In Slide DDX 14 where they appear to be showing -- look at all the different things on the watch, look at all the different features the watch has, purportedly to show that this feature is one of many, so we ought to have context of what the watch costs. I think it's going to come 11:56 out anyway by the per price unit of the watch. So if we can't show -- put that into context, they shouldn't be able to come up and show all the different things the watch does.

THE COURT: I disagree on both counts. The passage that was read to me very clearly says the use of a 11:56 pie chart in this manner is improper.

MR. HORNE: Well, that was a pie chart with the overall revenue. It's not on a per unit basis.

THE COURT: What's the difference?

MR. HORNE: Well, in overall revenues, you're 11:57 talking hundreds of millions of dollars. That gives a much different picture to the jury than just what the product costs on one unit. In that case, you didn't have a situation I don't believe of this demonstrative that they want to use to show, hey, look at all the other different 11:57 features in the watch. They're getting a lot of value for

11:57 all those different features, even under Mr. Bergman's royalty analysis. They're keeping 95 percent of the revenue. So if they're not going to talk about all the different features, then we have a different story, and 11:57 that's different than what she mentioned in Uniloc versus General Dynamics.

THE COURT: Ms. Frazier.

MS. FRAZIER: May I respond, Your Honor?

Your Honor, there is no distinction between 11:57 overall revenues or looking at it on a product-by-product basis. There's a case from right down the street in the Southern District, Lucent Technologies versus Microsoft Corp., 2011 WL 2728317, that addresses exactly this issue, you know, making clear that the Federal Circuit wasn't 11:58 saying this was problematic only if you looked at the revenues multiplied by the number of units. It's the same issue, which is you are improperly drawing a comparison between the total price to what is at issue.

What we are seeking to do with our slide, Your 11:58 Honor, is entirely consistent with Federal Circuit precedent on damages law, which is that you have to apportion down to the feature, so it is appropriate to put the accused feature in context of everything in the watch. What is not appropriate is what these slides do, which is compare the 11:58 royalty for that feature to an overall product revenue.

11:58 THE COURT: It's the comparison that's objectionable, and I agree.

MS. FRAZIER: Thank you, Your Honor.

THE COURT: And I'm not going to bar the use of
11:58 DDX 1.14 at least at this point.

MS. FRAZIER: Thank you, Your Honor.

THE COURT: Okay. You had some others?

MS. FRAZIER: One other objection. It is actually to the same slide, Your Honor. With respect to PDX 1.57,
11:59 the slide with Ms. Webster on it -- sorry, 1.56.

THE COURT: Okay.

MS. FRAZIER: 1.56 is the one that has Ms. Webster on it. Your Honor, we have separate objections to this slide in addition to the fact that it does the same
11:59 comparison we just talked about. First and foremost, Apple's proposed royalty in this case is zero. We believe we do not infringe. The appropriate royalty is zero. It is Masimo's burden to prove damages. What, and if, Ms. Webster presents her opinions will depend on how Masimo's
11:59 case-in-chief comes in. So we don't believe it's appropriate for Masimo to present alleged evidence to the jury when they don't know one way or the other whether it will actually come in.

THE COURT: Is she going to present competing
12:00 damage numbers?

MS. FRAZIER: Your Honor, at this point, we don't know. It will depend on how Masimo's case comes in.

THE COURT: Well, if there's a possibility you're going to present a counter royalty number, I don't know why in opening that can't be used.

MS. FRAZIER: Understood, Your Honor. We would then just ask that the 7 cents, 14 cents, be stricken since her number was the 3 to 6.

MR. HORNE: Your Honor, we ought to be able to translate that to a per unit. We can take the price of the watch off as the Court ordered, but --

THE COURT: Then take that off, please, and discuss how this ought to be -- well, if there's a possibility you're going to present a competing royalty number, then that heading is proper.

MS. FRAZIER: Understood, Your Honor.

MR. HORNE: So, Your Honor, we'll remove the watch, but we can keep the 7 cents and the 14 cents?

THE COURT: Right.

MR. HORNE: Correct?

THE COURT: Right.

MR. HORNE: Thank you, Your Honor.

MS. FRAZIER: And then, Your Honor, our final objection deals with an exhibit.

May I approach with a copy?

12:01 THE COURT: Please.

(Document handed to the Court)

MS. FRAZIER: Your Honor, with respect to JTX 7562, this is a letter authored by a doctor that was submitted in connection with the ITC proceedings. 12:01 I won't belabor the point. We preserve our objections with respect to the prior dispute over whether Dr. Madisetti can rely on this. We understand you said he can, but we do object to the admission of the underlying exhibit. It is hearsay and 12:02 contains a number of references to the ITC proceedings that of course are barred under the MIL.

So while we understand that Dr. Madisetti may talk about this, and we think it would be fine for Mr. Horne in his opening statement to refer to the fact that there may be 12:02 testimony about such letters, we do not believe at this stage where the exhibit is not admitted and where we have an objection to its admission that it would be appropriate to show it to the jurors.

THE COURT: Okay.

12:02 Ms. Swaroop.

MS. SWAROOP: Yes, Your Honor. We were surprised to see this objection because we thought Your Honor had already ruled on this issue in connection with the motions in-limine. Specifically, in Docket 2570 at page 6, Your 12:02 Honor ruled that these exact type of doctor letters that

were submitted to the International Trade Commission were adopted by Apple and were admissible under the hearsay objection for adopted admissions under 801(d)(2)(B).

Your Honor indicated that, quote: "Dr. Madisetti may reference statements from doctors in these proceedings in support of his opinion that the Apple Watch is patient monitor within the meaning of the '776 Patent." Your Honor indicated that Apple may cross-examine Madisetti regarding the context for these statements and whether or not they relate to accused features. And you also indicated that the amount of context needed to introduce these types of statements is minimal. Masimo may indicate that doctors testifying in another proceeding made the statements about the Apple Watch.

So, Your Honor, we had offered to prepare and we've provided Apple with a redacted version that would redact any reference to the fact that this was in connection with an ITC proceeding and any references to the litigation I have a copy of the redacted letter, but we think that Mr. Horne should be able to refer to this in opening given Your Honor's ruling on the hearsay issue.

THE COURT: Okay. Ms. Frazier.

MS. FRAZIER: Your Honor, the MIL ruling addressed, again, whether Dr. Madisetti may rely on it. There is no specific ruling nor has the Court looked at

anything as to whether any specific statements in this letter were adopted by Apple. So we would maintain our objection to the admission of the exhibit.

THE COURT: Well, the fact that an expert permissibly relies on hearsay doesn't get that hearsay in.

MS. FRAZIER: Exactly our point, Your Honor.

THE COURT: Ms. Swaroop.

MS. SWAROOP: Again, Your Honor, we have made the point that this was an exception to the hearsay rule, and that it was adopted by Apple, and that was what Your Honor had ruled in the motion in-limine rulings, that these were statements adopted by Apple in connection with that proceeding.

THE COURT: On that basis, I'll let it come in but redact the reference to the "ITC."

MS. SWAROOP: Thank you, Your Honor.

MS. FRAZIER: Your Honor, may I be heard on that?

THE COURT: Sure.

MS. FRAZIER: There is not a finding that these specific statements in this exhibit were adopted by Apple.

THE COURT: Well, why don't you come back to me with further information on that point.

MS. FRAZIER: Thank you, Your Honor.

THE COURT: Okay, we're in recess.

(Recess)

**(Miriam Baird reported Vol. II)**

*** * ***

12:05

## CERTIFICATE

12:05

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

12:05

Date: November 4, 2025

12:05

/s/ Sharon A. Seffens 11/4/25

SHARON A. SEFFENS, U.S. COURT REPORTER

12:05

**MR. HORNE: [95]**
**MR. MUELLER: [100]**
**MR. RE: [19]** 5/6 5/10 5/13 6/13 7/4 7/10 7/13 7/16 8/9 9/10 9/19 9/22 10/3 10/8 10/13 11/3 11/16 14/9 66/12
**MR. SELWYN: [1]** 10/19
**MS. FRAZIER: [23]** 79/12 79/15 79/19 79/23 80/9 80/12 80/14 81/14 85/8 86/3 86/6 86/8 86/12 87/1 87/6 87/16 87/23 88/3 89/23 90/6 90/17 90/19 90/23
**MS. SWAROOP: [3]** 88/21 90/8 90/16
**PROSPECTIVE JUROR: [231]**
**THE CLERK: [5]** 5/2 66/8 70/3 72/16 73/21
**THE COURT: [295]**

**'**

**'776 [7]** 7/22 71/6 71/9 71/11 71/18 71/20 89/7
**'90s [1]** 57/7
**'adequate [1]** 82/5
**'cannot [1]** 81/22

**/**

**/s [1]** 92/15

**0**

**02109 [1]** 2/13
**0404 [1]** 2/6

**1**

**1-1053 [1]** 1/20
**1.14 [1]** 86/5
**1.5 [2]** 80/7 80/8
**1.50 [2]** 80/4 80/17
**1.51 [1]** 80/5
**1.56 [3]** 80/5 86/10 86/12
**1.57 [2]** 80/5 86/9
**10 [1]** 70/12
**10,433,776 [1]** 71/5
**1053 [1]** 1/20
**10th [2]** 9/7 9/8
**11 [3]** 7/13 26/25 70/13
**11/4/25 [1]** 92/15
**12 [2]** 70/14 78/6
**1292 [1]** 82/13
**13 [2]** 70/15 73/21
**14 [9]** 4/5 15/6 68/10 69/24 70/16 70/17 84/5 87/7 87/18
**14th [1]** 2/5
**15-minute [1]** 66/4
**17 [1]** 45/8
**18 [3]** 8/19 49/24 49/25
**1925 [1]** 2/8
**1:00 [1]** 9/13
**1:30 [3]** 9/13 76/22 77/21

**2**

**2001 [1]** 71/23
**20037 [1]** 2/19
**2011 [4]** 26/21 26/21 76/4 85/13
**202 [1]** 2/20
**202-3014 [1]** 2/23
**2020 [1]** 71/17
**2022 [1]** 71/18
**2025 [3]** 1/17 5/1 92/13
**2040 [1]** 2/5
**2100 [1]** 2/19
**22 [1]** 7/24
**25 [1]** 92/15
**250 [1]** 67/4
**2528 [1]** 13/8
**2551 [1]** 13/8
**2552 [1]** 13/8
**2570 [1]** 88/24
**26 [1]** 71/18
**2600 [1]** 2/16
**2647 [1]** 13/8
**2677 [1]** 13/9
**2678 [1]** 13/9
**2728317 [1]** 85/13
**2751 [1]** 12/9
**2766 [1]** 13/9
**2781 [1]** 10/17
**28 [1]** 92/7

**3**

**30 [1]** 57/1
**30 seconds [1]** 12/25
**30-plus [1]** 55/20
**3014 [1]** 2/23
**310 [1]** 2/9
**3450 [1]** 2/9
**35 [1]** 11/4

**4**

**400 [1]** 2/16
**411 [1]** 1/20
**4th [1]** 1/20

**5**

**51 [2]** 81/2 81/10
**526-6000 [1]** 2/13
**551-3450 [1]** 2/9
**56 [1]** 81/6
**57 [1]** 81/6

**6**

**60 [1]** 2/12
**600 [2]** 2/8 2/22
**6000 [1]** 2/13
**6031 [1]** 2/17
**6096 [1]** 2/20
**612 [1]** 1/21
**617 [1]** 2/13
**632 [1]** 82/13
**650 [1]** 2/17
**663-6096 [1]** 2/20
**68 [1]** 81/16
**694 [1]** 81/10

**7**

**700 [1]** 2/22
**753 [1]** 92/6
**7562 [1]** 88/4
**760-0404 [1]** 2/6

**8**

**801 [1]** 89/3
**804-8655 [1]** 1/21
**858-6031 [1]** 2/17
**8655 [1]** 1/21
**8:31 [1]** 5/1

**9**

**90067 [1]** 2/8
**92614 [1]** 2/5
**92626 [1]** 2/22
**92701 [1]** 1/20
**94306 [1]** 2/16
**949 [2]** 2/6 2/23
**95 percent [1]** 85/2

**A**

**A.M [1]** 5/1
**AB [2]** 73/21 73/22
**ability [1]** 38/6
**able [11]** 19/23 26/3 44/8 58/14 62/21 64/4 64/10 74/7 84/11 87/9 89/20
**about [80]** 8/5 16/25 17/8 18/2 20/10 22/5 23/11 24/20 25/5 26/17 26/19 27/1 27/4 28/9 28/11 29/18 29/20 30/13 30/14 31/2 31/16 31/17 31/20 32/13 34/9 37/2 37/3 37/4 37/6 37/7 37/11 37/12 38/6 38/22 41/6 41/14 43/7 45/6 46/24 47/2 49/4 51/10 53/20 54/11 54/25 56/11 57/1 57/9 57/17 58/18 58/23 60/23 61/6 61/21 61/23 62/12 63/21 63/25 66/4 67/4 67/6 68/13 68/14 71/7 72/2 72/3 72/15 74/11 74/15 74/21 75/3 77/1 77/3 78/2 78/16 85/3 86/15 88/13 88/15 89/13
**above [2]** 8/20 92/9
**above-entitled [1]** 92/9
**absent [1]** 82/18
**absolutely [1]** 18/20
**acceptable [1]** 13/1
**accessibility [1]** 18/5
**accommodate [1]** 27/5
**account [2]** 72/19 73/2
**accounts [6]** 62/15 62/16 64/11 64/22 64/25 72/21
**accused [4]** 80/20 81/19 85/22 89/10
**action [1]** 13/20
**actual [1]** 32/20
**actually [6]** 27/19 27/20 48/11 69/20 86/8 86/23
**addition [1]** 86/14
**address [1]** 79/8
**addressed [1]** 89/24
**addresses [1]** 85/13
**admissible [1]** 89/2
**admission [4]** 81/25 88/9 88/17 90/3
**admissions [1]** 89/3
**admitted [3]** 60/6 81/17 88/16
**adopted [6]** 89/2 89/3 90/2 90/10 90/12 90/20
**Adrian [1]** 76/11
**advantage [3]** 20/2 24/10 58/8
**adversely [1]** 37/18
**affect [4]** 34/19 41/12 45/18 51/19
**affirmation [1]** 26/4
**affirmed [1]** 82/15
**afraid [1]** 73/4
**Afshad [1]** 75/18
**after [14]** 6/20 8/5 8/8 9/20 27/10 27/11 27/15 34/12 66/23 68/19 69/13 69/16 70/21 79/1
**afternoon [2]** 9/8 10/10
**again [13]** 11/15 13/3 13/9 13/12 31/9 41/22 67/13 67/17 67/20 67/24 74/4 89/24 90/8
**against [4]** 28/7 65/1 69/9 71/4
**ago [7]** 25/5 54/15 54/19 63/25 67/4 74/19 74/21
**agree [5]** 8/3 9/11 10/9 66/1 86/2
**Agreed [2]** 10/13 14/16
**ahead [28]** 18/21 18/23 19/1 19/4 19/17 21/10 22/21 23/23 25/21 31/7 31/12 32/24 35/7 39/6 42/3 42/5 51/24 52/7 52/13 56/6 56/8 57/14 58/2 58/4 58/4 58/5 60/21 63/12
**Air [1]** 54/19
**AirPods [2]** 35/25 39/2
**al [4]** 1/9 5/3 66/9 75/15
**Al-Ali [1]** 75/15
**Ali [2]** 75/15 76/17
**all [34]** 6/14 8/1 13/9 14/7 14/14 15/7 15/24 18/11 20/13 23/11 27/8 27/9 27/16 30/18 33/8 35/3 41/8 49/13 57/6 58/13 58/14 58/21 64/11 65/14 68/16 73/23 76/16 80/15 84/6 84/6 84/12 84/24 85/1 85/3
**allegations [1]** 12/3
**alleged [1]** 86/21
**alleges [1]** 7/20
**almost [1]** 69/11
**alone [2]** 35/20 82/2
**already [3]** 12/23 55/7 88/23
**also [17]** 3/1 5/10 7/7 7/16 7/24 7/25 26/18 27/12 46/25 49/12 57/13 62/10 71/15 77/5 78/11 83/22 89/10
**Although [1]** 72/19
**Alto [1]** 2/16
**am [8]** 16/14 20/9 29/21 32/11 32/15 47/5 67/24 76/3
**American [1]** 32/1
**Ammar [1]** 75/15
**amongst [1]** 74/25
**Amor [1]** 75/19
**amount [3]** 78/15 82/3 89/11
**AMR [1]** 14/21
**AMY [4]** 2/18 5/22 66/18 68/3
**Ana [3]** 1/16 1/20 5/1

## A

**analysis [1]** 85/2
**Anderson [1]** 75/19
**Android [4]** 27/21 47/4 48/11 49/9
**Angeles [1]** 2/8
**another [10]** 24/24 51/15 52/8 69/6 72/4 72/5 72/8 81/5 82/14 89/13
**answer [9]** 15/2 15/15 52/11 58/19 60/24 69/20 70/19 70/21 74/5
**answered [2]** 14/13 22/3
**answering [5]** 26/16 34/7 45/4 61/6 69/5
**Anton [1]** 2/22
**any [50]** 7/4 11/2 11/24 13/20 16/24 17/7 22/4 25/2 27/17 28/5 37/10 37/16 42/21 43/11 48/9 50/23 53/11 56/1 61/7 63/6 69/15 71/24 71/25 72/3 72/3 72/5 72/5 72/8 72/11 72/11 72/13 73/9 73/15 73/25 74/5 74/9 74/9 74/10 74/11 75/13 75/13 76/5 76/25 77/1 80/25 81/15 82/11 89/17 89/18 90/1
**anybody [5]** 15/18 52/13 72/8 76/25 77/11
**anymore [3]** 7/17 27/16 54/4
**anyone [4]** 17/5 72/13 73/9 76/25
**anything [12]** 6/25 14/8 31/22 32/16 37/22 41/14 48/14 54/13 74/11 77/23 78/8 90/1
**anyway [3]** 6/22 74/18 84/10
**app [1]** 49/5
**apparently [1]** 51/13
**appear [2]** 82/3 84/5
**appearances [3]** 2/1 5/4 66/10
**APPLE [157]**
**Apple's [5]** 7/21 66/17 83/24 84/3 86/16
**application [2]** 10/16 47/7
**applications [2]** 47/6 47/8
**appointed [1]** 69/12
**apportion [1]** 85/21
**apportioning [1]** 83/11
**apportionment [1]** 83/8
**appreciate [7]** 13/16 21/2 50/5 55/2 60/13 65/14 81/11
**approach [6]** 34/19 41/12 45/18 51/19 56/2 87/25
**appropriate [10]** 33/16 72/6 72/9 80/19 83/7 85/22 85/24 86/17 86/21 88/17
**approximately [1]** 11/4
**apps [1]** 47/10
**AR [2]** 63/22 70/11
**are [62]** 5/7 6/6 6/9 6/13 6/17 6/21 7/5 7/9 8/7 8/10 9/15 9/17 10/19 11/8 12/2 13/8 13/9 13/24 14/17 15/7 15/16 16/12 16/15 17/12 18/11 18/19 20/8 20/13 20/20 21/16 23/11 23/12 24/24 27/21 27/22 32/9 33/8 39/17 39/19 40/20 40/22 42/2 47/6 49/11 55/12 57/19 58/11 60/6 63/10 64/10 66/17 68/21 69/20 71/20 73/12 76/24 77/16 80/23 83/8 85/17 85/19 88/11
**aren't [1]** 62/20
**argument [1]** 82/20
**arguments [3]** 12/22 13/6 13/11
**arrived [1]** 20/20
**Arthurs [1]** 75/17
**article [1]** 75/5
**artificially [1]** 82/4
**as [45]** 8/6 8/14 9/2 9/2 10/6 10/15 10/15 12/12 13/11 13/17 14/10 14/10 16/2 18/9 18/9 18/10 24/17 25/4 26/1 28/11 28/13 34/12 36/10 42/22 47/11 49/10 50/11 52/9 52/9 54/17 54/17 54/21 58/16 61/5 62/4 69/3 70/18 71/6 71/8 72/18 77/5 79/19 81/3 87/11 90/1
**aside [26]** 18/15 19/8 19/24 20/8 21/21 23/1 23/13 25/17 28/17 30/22 31/4 34/25 38/3 38/7 39/10 42/8 42/21 45/24 46/1 47/19 52/18 56/13 56/16 58/15 62/7 62/25
**ask [22]** 11/19 12/21 15/7 15/17 15/19 15/20 15/24 16/8 20/9 67/13 68/19 72/9 73/24 74/4 74/6 77/10 78/16 78/19 79/13 82/9 82/18 87/7
**asked [10]** 9/6 21/14 25/4 26/2 30/25 31/17 34/23 47/17 52/20 61/8
**asking [7]** 13/20 41/25 43/19 68/11 69/14 70/18 70/24
**assembly [1]** 69/7
**asserted [1]** 71/19
**assistant [1]** 72/16
**associated [1]** 81/19
**associating [1]** 76/6
**assume [1]** 13/3
**attempting [1]** 82/8
**audience [2]** 69/22 74/5
**authored [1]** 88/4
**AVANTA [1]** 62/14
**Avenue [1]** 2/19
**average [1]** 80/22
**aware [2]** 7/22 76/3
**away [1]** 69/17
**AWB [6]** 14/19 15/1 17/17 17/19 19/13 20/5
**Awesome [1]** 48/15

## B

**back [26]** 9/12 10/25 11/21 12/14 14/11 21/4 25/13 26/21 27/20 29/3 33/19 36/15 40/2 44/17 50/21 54/19 55/5 57/6 57/7 60/16 64/11 65/23 69/16 78/3 78/18 90/21
**background [4]** 68/13 70/22 74/15 74/17
**bad [5]** 24/25 41/8 56/1 56/16 65/11
**Baird [1]** 91/1
**balance [2]** 14/23 64/3
**bankruptcy [2]** 63/25 64/3
**bar [1]** 86/4
**barred [1]** 88/11
**based [15]** 20/9 20/16 20/21 22/16 25/8 26/7 28/17 35/8 38/3 38/6 39/21 47/17 54/22 72/2 74/16
**basic [1]** 68/17
**basically [3]** 27/5 41/10 43/24
**basis [9]** 33/21 34/23 49/19 49/19 52/21 60/9 84/17 85/11 90/14
**bat [1]** 15/17
**batch [2]** 11/22 14/10
**battery [1]** 55/22
**be [104]**
**BEAR [2]** 2/4 2/7
**bearing [1]** 56/1
**because [23]** 18/21 22/21 27/13 27/25 28/1 31/7 31/12 35/6 45/21 50/10 51/20 51/22 52/14 56/5 62/1 62/19 64/8 65/19 69/4 69/23 71/20 71/25 88/22
**been [17]** 8/4 11/5 14/3 16/18 22/6 32/16 53/14 53/16 53/23 55/19 56/25 60/22 62/18 64/4 69/4 71/21 82/19
**before [10]** 8/14 9/24 12/10 14/2 15/18 20/19 39/19 59/12 69/12 77/23
**begin [1]** 16/7
**beginning [1]** 7/21
**behalf [3]** 5/17 66/17 67/24
**behind [15]** 18/21 19/1 19/20 35/8 42/3 50/8 51/24 52/14 52/16 54/10 56/7 63/13 64/17 68/23 77/14
**behold [1]** 9/7
**being [9]** 28/11 28/11 29/25 39/10 54/17 60/23 62/21 69/12 77/17
**belabor [1]** 88/6
**believe [17]** 7/17 11/13 15/1 21/9 26/4 35/2 61/25 63/14 65/2 72/20 73/13 78/1 82/22 84/23 86/16 86/20 88/15
**below [1]** 80/21
**bench [1]** 15/25
**Bergman [3]** 75/15 81/3 83/1
**Bergman's [3]** 80/18 83/24 85/1
**best [7]** 9/2 24/8 24/10 39/5 39/10 47/15 58/21
**better [5]** 27/21 53/18 69/6 69/14 81/15
**between [4]** 16/19 82/17 85/9 85/18
**beyond [1]** 82/5
**bi [1]** 57/20
**bi-platform [1]** 57/20
**biases [1]** 38/13
**big [4]** 32/9 51/14 54/3 64/4
**Bilal [1]** 76/19
**billions [2]** 83/19 83/19
**bit [50]** 8/5 11/18 18/21 18/21 18/22 19/1 19/17 19/20 20/1 22/21 23/23 24/3 24/20 31/7 31/11 32/24 35/7 35/8 38/21 39/6 42/3 42/3 42/5 43/7 49/4 50/2 50/8 51/23 51/24 52/13 52/14 52/16 54/10 54/11 55/23 56/6 56/7 57/14 57/16 58/2 58/8 58/15 58/24 63/12 63/13 63/21 64/23 68/13 74/14 74/17
**BJ [1]** 14/20
**Blaire [1]** 76/20
**bleed [1]** 65/1
**bleeding [1]** 50/15
**Block [1]** 75/19
**Books [1]** 54/19
**BOONE [1]** 2/21
**born [1]** 18/4
**Boston [1]** 2/13
**both [8]** 25/16 36/7 49/10 54/21 56/1 57/19 67/1 84/13
**bottom [1]** 70/20
**bought [2]** 26/23 62/3
**Boulevard [1]** 2/22
**bound [3]** 20/13 33/8 61/3
**boundary [1]** 11/20
**box [2]** 68/11 74/7
**brand [6]** 45/7 45/9 45/16 49/23 51/16 74/18
**break [3]** 66/4 76/22 77/24
**BRIAN [19]** 2/3 2/7 5/8 5/8 19/14 23/20 32/7 35/13 38/18 42/15 48/6 53/5 56/23 63/19 66/12 66/14 67/17 67/20 76/10
**brief [4]** 6/18 70/25 71/1 72/2
**briefly [3]** 16/5 25/25 40/12
**bring [5]** 11/7 11/10 11/11 21/22 72/6
**brought [1]** 71/4
**BROUSE [5]** 3/5 5/19 66/18 67/25 75/15
**Budreau [1]** 76/19
**burden [1]** 86/18
**Business [1]** 59/14
**businesses [1]** 59/18
**buy [1]** 45/16

## C

**CA [5]** 1/20 2/5 2/8 2/16 2/22
**calculation [2]** 82/5 84/2
**Caldbeck [1]** 75/16
**calendar [1]** 9/7
**CALIFORNIA [3]** 1/5 1/16 5/1
**call [4]** 14/22 16/1 17/16 29/10
**called [6]** 11/5 62/14 68/21 71/14 74/6 78/3
**Calling [2]** 5/2 66/8
**calls [2]** 62/19 64/9
**came [1]** 45/8
**camera [1]** 53/18
**Camino [1]** 2/16
**can [39]** 7/25 12/5 12/14 15/21 18/15 18/24 22/18 23/1 23/3 23/12 25/17 29/20 31/3 32/25 33/11 33/15 33/17 34/25 35/4 35/22 36/9 42/21 47/9 48/18 49/16 52/24 63/11 63/13 63/14 63/21 64/11 67/2 69/14 69/14 81/15 87/10 87/18 88/7 88/8
**can't [5]** 9/3 26/2 35/4 84/11 87/5
**cancer [3]** 26/22 27/15 28/9
**candor [1]** 65/14
**Canons [1]** 77/8
**capable [1]** 26/7
**cardiologist [1]** 74/16
**cardiology [1]** 43/21
**care [4]** 27/4 27/14 27/16 28/9
**carried [1]** 13/15
**carry [1]** 67/8
**case [107]**
**cases [1]** 67/2
**cater [1]** 47/8
**cause [6]** 22/15 25/22 28/4 37/21 41/17 45/20
**cell [3]** 26/24 27/7 27/8
**CENTRAL [1]** 1/5
**cents [4]** 87/7 87/7 87/18 87/18
**Century [1]** 2/8
**CEO [2]** 75/25 76/4
**Cercacor [4]** 41/2 68/9 71/7 71/9

## C

**certain [3]** 12/3 71/10 71/14
**certainly [1]** 10/12
**CERTIFICATE [1]** 92/4
**CERTIFIED [1]** 1/9
**certify [1]** 92/6
**CFH [1]** 14/20
**CH [4]** 70/15 72/17 72/18 73/8
**challenge [7]** 26/9 36/18 44/20 44/21 50/24 54/1 61/11
**challenges [8]** 36/17 40/6 44/19 46/11 50/23 60/19 65/25 68/21
**chance [4]** 6/20 10/10 10/11 68/19
**change [2]** 12/15 49/23
**changed [1]** 54/4
**Charbonneau [1]** 75/20
**Charbonneau-Lefort [1]** 75/20
**charge [1]** 45/8
**charging [1]** 45/14
**CHARLES [2]** 3/2 5/11
**chart [5]** 81/2 81/5 82/14 84/15 84/16
**chief [1]** 86/20
**Chinsan [1]** 76/9
**Chris [2]** 67/25 75/15
**Christmas [1]** 62/19
**CHRISTOPHER [4]** 2/3 3/5 5/19 66/18
**Circuit [5]** 81/8 82/14 82/23 85/14 85/20
**circumstance [1]** 82/18
**circumstances [1]** 43/15
**citizens [1]** 67/7
**civic [1]** 66/24
**civil [3]** 9/7 67/2 68/8
**CLAASSEN [4]** 2/3 5/8 66/14 67/20
**claim [2]** 6/19 71/4
**claimed [1]** 71/20
**claims [3]** 71/11 71/19 72/1
**Clarke [1]** 76/13
**clear [6]** 13/25 26/6 32/18 77/10 83/1 85/14
**cleared [1]** 9/7
**clearer [1]** 81/15
**clearest [1]** 81/9
**clearly [3]** 46/12 61/3 84/14
**clerk [3]** 15/9 17/5 70/1
**client [5]** 19/19 58/5 58/8 65/1 67/14
**client's [1]** 58/11
**clients [3]** 32/21 59/22 77/8
**close [1]** 49/12
**co [1]** 6/7
**co-counsel [1]** 6/7
**CO2 [3]** 41/9 43/9 43/14
**code [3]** 10/20 49/16 92/7
**colleagues [1]** 68/1
**color [1]** 38/1
**come [20]** 9/12 11/5 11/20 12/14 15/7 15/14 15/24 42/20 64/19 67/2 68/10 69/17 75/1 78/18 78/19 84/9 84/12 86/23 90/14 90/21
**comes [4]** 64/11 75/4 86/20 87/2
**coming [19]** 17/13 17/21 22/1 26/14 29/15 30/1 30/9 34/5 36/24 40/23 45/2 46/21 48/7 51/6 55/14 66/22 73/7 77/13 77/13
**comment [1]** 11/2
**comments [1]** 41/14
**Commission [1]** 89/1
**committed [1]** 63/10
**Companies [1]** 59/20
**company [11]** 32/2 41/4 49/9 50/11 56/11 62/14 63/24 64/21 71/8 75/23 83/16
**compare [1]** 85/24
**compared [2]** 83/24 84/1
**comparison [9]** 80/23 81/7 82/4 82/9 82/17 82/23 85/17 86/1 86/15
**compensate [1]** 82/6
**competing [2]** 86/24 87/14
**complete [3]** 16/2 55/24 81/19
**component [2]** 81/20 81/24
**compromising [1]** 79/20
**computer [5]** 51/15 53/9 53/21 54/4 81/10
**computers [2]** 57/6 61/5
**concerned [1]** 38/5
**concrete [2]** 58/19 60/24
**condition [1]** 24/12
**conference [2]** 21/14 92/11
**conferring [2]** 15/9 70/1
**confined [1]** 39/17
**confirm [2]** 14/17 15/21
**confirmation [1]** 15/21
**conflict [1]** 21/18
**conformance [1]** 92/10
**confusion [2]** 81/1 82/11
**connection [5]** 49/13 88/5 88/23 89/17 90/12
**consider [1]** 48/18
**considered [1]** 50/11
**consistent [2]** 12/20 85/20
**Constitution [1]** 67/1
**constraints [2]** 49/15 49/20
**contains [1]** 88/10
**contends [4]** 71/10 71/13 71/19 71/24
**content [1]** 13/25
**contention [1]** 83/6
**context [9]** 31/3 43/23 71/1 80/24 84/9 84/11 85/23 89/9 89/11
**continues [1]** 67/7
**contribution [1]** 81/23
**convenient [1]** 69/15
**Cook [1]** 75/20
**copy [5]** 9/4 79/13 81/11 87/25 89/19
**Corp [1]** 85/13
**corporate [7]** 3/4 3/5 5/13 5/18 66/17 67/18 67/25
**CORPORATION [7]** 1/9 5/3 41/2 66/9 67/18 68/8 71/3
**correct [11]** 19/18 19/21 20/2 20/3 50/4 55/19 59/11 65/12 83/10 87/20 92/8
**correctly [2]** 54/10 78/13
**correlation [1]** 82/2
**cost [1]** 83/18
**Costa [1]** 2/22
**costs [2]** 84/9 84/22
**could [60]** 9/6 11/15 12/17 15/20 19/10 19/11 20/8 20/15 20/18 20/20 21/20 23/5 23/8 23/14 24/6 24/20 25/8 25/19 28/16 28/19 29/7 30/21 32/12 32/23 35/2 35/5 35/10 38/1 38/2 38/13 38/21 39/12 39/21 42/7 43/7 45/5 45/25 46/12 47/2 47/19 49/4 50/15 51/10 52/17 54/10 56/12 56/17 57/16 58/17 58/20 60/8 60/12 60/23 61/3 61/8 61/23 62/7 62/25 78/11 80/3
**couldn't [2]** 54/2 81/14
**counsel [15]** 2/1 3/2 3/7 5/4 5/11 6/7 66/10 67/13 68/17 68/19 69/5 69/9 77/6 77/10 77/14
**counter [1]** 87/4
**country [1]** 69/18
**counts [1]** 84/13
**couple [11]** 12/15 13/24 22/3 33/7 36/6 45/13 54/15 59/8 73/23 73/25 76/23
**coupled [1]** 26/5
**course [4]** 13/18 56/15 68/3 88/11
**court [24]** 1/4 13/20 15/9 39/11 45/23 48/16 60/9 67/2 67/11 68/22 69/11 69/12 70/1 72/7 74/9 78/24 79/22 81/11 81/14 82/15 87/11 88/2 89/25 92/16
**court's [12]** 7/6 7/10 16/3 16/4 23/3 35/19 38/4 46/13 48/17 77/16 77/18 82/15
**courthouse [16]** 1/19 17/13 17/22 22/2 26/15 29/16 30/2 30/10 34/6 36/25 40/24 45/3 46/22 51/7 55/15 66/22
**courtroom [40]** 16/9 17/18 19/9 20/14 21/6 21/23 23/3 25/6 25/15 26/11 29/4 29/12 30/6 33/20 34/2 36/16 36/21 39/18 40/5 40/11 40/17 44/18 44/24 46/10 46/18 50/22 51/3 54/23 55/6 55/9 60/5 60/18 61/9 61/13 62/8 63/2 65/24 66/7 67/10 67/12
**cover [1]** 79/4
**coverage [1]** 76/5
**created [1]** 71/8
**criminal [2]** 67/2 69/16
**cross [1]** 89/8
**cross-examine [1]** 89/8
**current [1]** 18/8
**currently [2]** 29/24 51/21
**customer [2]** 24/23 62/17
**customers [4]** 28/13 59/22 62/20 64/1
**CUTLER [3]** 2/12 2/15 2/18

## D

**D.C [1]** 2/19
**dad [1]** 54/14
**DADSWELL [2]** 3/2 5/11
**daily [2]** 43/17 49/19
**damage [1]** 86/25
**damages [11]** 71/16 71/25 80/18 80/24 81/22 82/3 82/5 82/9 82/18 85/21 86/18
**dash [1]** 8/14
**date [2]** 10/5 92/13
**Daubert [1]** 13/7
**David [2]** 75/19 76/17
**day [7]** 1/12 11/23 18/6 18/6 38/9 43/25 69/21
**days [2]** 12/6 45/13
**DDS [1]** 14/21
**DDX [2]** 84/5 86/5
**deal [4]** 20/24 48/13 54/3 64/4
**dealing [4]** 8/25 62/15 62/18 63/5
**deals [1]** 87/24
**dealt [1]** 82/14
**debate [1]** 8/5
**decide [18]** 18/16 19/8 20/8 23/2 30/25 34/23 38/3 42/8 45/24 46/1 47/17 47/20 52/21 54/22 56/13 62/7 63/1 72/10
**decided [2]** 12/19 77/4
**deciding [2]** 35/20 38/11
**deciphering [1]** 40/15
**decision [9]** 20/15 20/21 25/8 26/7 33/13 39/21 50/16 60/4 60/8
**decision-making [2]** 50/16 60/4
**decisions [4]** 68/14 68/17 72/24 72/25
**deemed [1]** 13/15
**deep [1]** 61/7
**deep-held [1]** 61/7
**defendant [4]** 1/12 2/10 68/25 71/4
**definitely [1]** 34/17
**definitive [1]** 12/23
**Deidre [1]** 75/15
**delay [1]** 24/23
**delays [1]** 64/8
**deleted [4]** 7/14 7/20 7/23 8/1
**deliver [1]** 38/24
**delivering [1]** 11/16
**Dell [1]** 54/4
**demand [1]** 82/22
**demonstrated [1]** 82/1
**demonstrative [1]** 84/23
**Denby [1]** 76/13
**denied [3]** 13/11 25/23 26/9
**denying [1]** 64/2
**depend [2]** 86/19 87/2
**deposition [1]** 11/22
**deputy [1]** 67/12
**Desai [1]** 76/9
**design [1]** 47/10
**designations [1]** 11/22
**despite [2]** 39/5 39/10
**details [1]** 56/4
**determine [1]** 52/2
**determined [1]** 83/10
**develop [3]** 47/5 49/9 49/16
**development [2]** 48/14 49/5
**device [1]** 32/1
**Diab [1]** 75/16
**did [13]** 10/22 15/1 17/7 21/13 21/15 25/20 27/7 54/18 59/12 60/20 74/19 79/13 84/1
**didn't [10]** 15/3 17/5 27/4 27/14 27/16 45/8 51/12 52/4 53/23 84/22
**difference [1]** 84/18
**different [15]** 8/7 26/23 28/14 51/15 51/16 74/18 84/6 84/7 84/12 84/21 84/24 85/1 85/4 85/4 85/5
**difficult [4]** 24/4 45/11 45/15 64/14
**difficulty [1]** 8/25

## D

**dire [2]** 12/11 66/5
**direct [1]** 49/11
**direction [1]** 49/23
**directly [2]** 61/8 73/11
**disagree [1]** 84/13
**disclose [1]** 31/21
**disclosed [1]** 83/15
**disclosure [2]** 81/18 81/21
**discredit [1]** 54/13
**discretionary [2]** 72/20 72/23
**discuss [2]** 76/24 87/13
**discussed [1]** 6/22
**disdain [2]** 27/12 29/8
**disfavor [1]** 45/21
**dismiss [2]** 15/16 15/23
**disposed [1]** 42/2
**dispute [6]** 16/19 37/23 72/6 72/9 79/16 88/7
**disqualifies [1]** 30/1
**disqualify [1]** 73/14
**disregarding [2]** 21/16 21/17
**disrespectful [1]** 77/17
**dissent [1]** 73/15
**distinction [1]** 85/9
**district [4]** 1/4 1/5 82/15 85/12
**DIVISION [1]** 1/6
**Divya [1]** 76/11
**do [98]**
**docket [9]** 7/2 10/17 12/9 12/24 13/7 13/8 13/17 13/22 88/24
**doctor [2]** 88/4 88/25
**doctors [2]** 89/5 89/12
**document [2]** 9/3 88/2
**documents [11]** 19/9 20/16 25/6 33/10 34/24 39/19 45/25 47/18 52/22 60/6 71/7
**does [14]** 7/6 12/7 22/20 28/3 29/24 30/17 31/25 52/13 59/25 60/1 72/8 72/13 84/12 86/14
**doesn't [4]** 13/3 28/9 34/12 90/5
**doing [3]** 59/15 68/6 83/21
**dollars [3]** 83/19 83/20 84/20
**don't [61]** 6/25 7/16 10/17 11/9 14/14 15/14 18/2 24/24 29/3 29/7 29/10 31/13 31/19 31/20 32/25 33/21 34/15 34/16 34/20 37/10 37/12 37/25 43/19 50/9 54/3 54/12 56/3 56/10 57/11 58/10 59/1 61/25 62/9 62/12 63/4 63/4 63/9 64/10 65/2 65/3 66/4 69/9 73/11 73/13 75/5 76/15 77/14 77/15 78/2 78/12 78/18 79/1 79/6 80/7 81/12 84/23 86/20 86/22 87/1 87/4 90/21
**done [2]** 12/20 79/7
**DORR [3]** 2/12 2/15 2/18
**double [1]** 78/3
**down [22]** 17/13 17/21 22/1 26/14 29/15 30/1 30/9 34/5 36/24 38/10 40/23 45/2 46/21 51/6 53/24 55/14 55/22 66/22 69/7 73/7 85/11 85/21
**downside [1]** 54/18
**downstairs [1]** 16/25
**Dr. [7]** 5/19 66/18 67/25 88/7 88/12 89/4 89/24
**Dr. Chris [1]** 67/25
**Dr. Christopher [2]** 5/19 66/18
**Dr. Madisetti [4]** 88/7 88/12 89/4 89/24
**draft [3]** 10/14 10/22 10/23
**draw [1]** 80/23
**drawing [1]** 85/17
**drive [1]** 82/22
**DS [7]** 15/14 16/8 16/8 16/10 17/15 55/7 70/8
**DTV [1]** 14/21
**during [6]** 25/7 36/11 39/20 56/15 79/17 80/2
**duty [2]** 66/24 77/7
**Dynamics [1]** 85/6

## E

**each [8]** 24/25 42/25 48/20 68/20 68/21 69/13 70/22 70/23
**early [1]** 57/7
**earned [1]** 81/19
**easier [1]** 18/5
**East [1]** 2/8
**ecosystem [2]** 47/5 47/6
**editing [1]** 59/12
**edits [1]** 12/12
**efforts [2]** 24/11 39/6
**either [2]** 6/23 31/7
**El [1]** 2/16
**Elsa [1]** 67/11
**else [4]** 14/8 30/19 73/9 78/8
**employees [1]** 59/22
**employer [1]** 50/12
**employment [1]** 32/19
**encounter [1]** 49/18
**encouraging [1]** 34/13
**end [6]** 7/25 11/23 21/20 38/9 69/21 77/3
**ended [1]** 27/10
**engineer [3]** 47/4 49/8 68/1
**engineering [1]** 49/8
**enjoy [1]** 53/19
**enough [2]** 50/1 53/23
**enter [2]** 38/11 66/7
**enters [15]** 16/9 17/18 21/23 26/11 29/12 30/6 34/2 36/21 40/11 40/17 44/24 46/18 51/3 55/9 61/13
**entire [4]** 80/16 81/17 82/18 83/1
**entirely [1]** 85/20
**entitled [4]** 18/19 68/8 71/24 92/9
**EP [1]** 43/21
**equal [6]** 36/8 36/8 44/7 54/22 58/6 65/17
**equipment [6]** 41/5 43/8 43/12 43/16 43/25 44/4
**equivocated [1]** 25/20
**Eric [1]** 75/18
**error [1]** 81/17
**especially [2]** 10/10 21/11
**estimate [2]** 11/13 11/15
**et [3]** 1/9 5/3 66/9
**Ethics [1]** 77/8
**even [10]** 17/2 18/20 24/10 28/10 35/10 39/10 52/5 52/7 54/24 85/1
**ever [4]** 16/18 27/17 53/11 76/5
**every [3]** 43/25 44/1 75/4
**everybody [4]** 34/15 51/24 58/18 63/11
**everybody's [1]** 70/21
**everything [8]** 7/24 8/4 30/17 33/23 53/18 54/16 58/19 85/23
**everywhere [1]** 62/20
**evidence [53]** 13/19 18/16 19/8 20/9 20/13 20/16 20/21 23/2 23/12 24/2 24/7 24/9 25/5 25/9 26/4 28/5 28/18 31/1 33/8 33/12 34/23 35/19 35/20 37/22 38/4 39/18 39/20 39/22 41/17 42/8 42/20 42/22 45/25 46/2 46/13 47/18 47/20 48/18 50/6 52/22 54/23 56/14 58/16 60/5 60/6 60/9 61/3 61/9 63/1 63/6 77/2 82/21 86/21
**exact [2]** 26/3 88/25
**exactly [5]** 36/10 44/9 82/7 85/13 90/6
**examine [2]** 15/6 89/8
**examined [1]** 15/4
**examining [1]** 68/2
**example [1]** 14/2
**excellent [1]** 10/3
**except [1]** 8/4
**exception [1]** 90/9
**exchange [1]** 77/15
**excluded [1]** 14/3
**excuse [7]** 21/8 25/18 29/5 33/21 40/9 68/22 73/5
**excused [12]** 17/12 17/15 29/9 30/2 30/4 33/25 46/15 66/3 69/2 69/9 69/21 73/8
**Executive [2]** 3/2 5/10
**exercise [1]** 68/21
**exhibit [8]** 10/16 16/4 80/1 87/24 88/9 88/16 90/3 90/20
**exhibiting [1]** 61/7
**exhibits [2]** 20/12 78/24
**exits [12]** 21/6 25/15 29/4 33/20 36/16 40/5 44/18 46/10 50/22 55/6 60/18 65/24
**expect [1]** 11/18
**experience [52]** 21/11 22/9 22/11 22/12 22/17 22/22 22/24 22/25 23/13 23/22 24/4 24/17 24/25 26/19 26/21 27/25 28/2 28/17 30/20 31/6 31/8 31/12 34/8 34/19 34/25 35/8 41/11 45/5 45/10 45/17 45/21 45/24 46/1 47/1 47/1 47/20 51/9 51/18 51/22 53/14 53/20 54/18 55/17 56/15 58/9 58/14 61/22 61/24 62/2 62/13 68/13 69/17
**experiences [31]** 18/22 19/2 25/2 25/17 26/1 28/3 31/2 31/4 34/10 34/17 35/7 36/9 38/7 38/11 41/17 42/4 43/8 44/3 44/12 52/14 55/21 56/1 56/6 56/13 58/18 61/23 62/12 62/25 63/22 65/11 65/17
**expert [3]** 14/3 83/14 90/4
**expert's [1]** 80/18
**expired [1]** 71/18
**explain [1]** 27/13
**explicitly [1]** 81/7
**express [1]** 17/7
**expressed [4]** 26/4 26/6 29/7 61/2
**extensive [1]** 79/2
**extensively [1]** 7/6
**extent [1]** 39/3

## F

**F.3d [2]** 81/10 82/13
**fact [7]** 22/16 27/21 61/8 86/14 88/14 89/17 90/4
**factfinders [1]** 77/6
**facts [4]** 19/25 63/9 68/17 72/2
**fair [22]** 20/22 20/23 22/10 23/8 23/9 23/10 24/7 24/9 32/23 33/1 33/13 42/25 49/16 50/1 50/3 50/13 52/9 58/22 65/3 65/18 68/24 78/15
**fairly [1]** 48/20
**familiar [3]** 32/2 41/4 43/14
**family [2]** 29/23 62/2
**fan [1]** 32/9
**fanatic [1]** 54/16
**far [2]** 25/3 54/17
**Fathers [2]** 66/25 67/5
**favor [7]** 22/16 28/4 37/22 37/25 41/18 41/19 41/22
**favorable [21]** 18/11 18/14 18/22 19/1 22/9 22/11 22/12 22/17 22/21 22/23 22/24 23/13 30/20 31/6 31/8 31/12 31/23 41/11 41/14 41/16 44/3
**feature [9]** 7/18 7/19 8/5 71/14 82/2 84/8 85/22 85/22 85/25
**features [9]** 7/17 8/5 80/20 82/21 84/7 84/25 85/1 85/4 89/10
**Federal [6]** 69/12 81/8 82/14 82/23 85/14 85/20
**fee [1]** 27/6
**feel [7]** 34/15 34/16 34/18 42/4 42/7 51/23 56/10
**feeling [3]** 37/19 38/22 69/22
**feelings [39]** 17/24 18/12 18/14 18/15 19/8 19/24 20/8 20/19 21/21 22/4 26/17 29/18 30/13 30/16 31/19 36/10 37/2 37/6 37/7 37/10 37/11 37/12 37/16 37/21 38/3 39/10 41/1 41/6 42/21 46/24 52/18 61/21 62/7 62/11 64/20 64/25 72/3 72/5 72/8
**few [7]** 6/6 10/19 20/9 25/4 54/15 55/21 82/25
**field [1]** 71/21
**figure [1]** 62/20
**filed [7]** 6/24 7/22 63/25 71/17 71/22 83/15 83/16
**filing [2]** 13/18 64/3
**fill [1]** 11/6
**filling [6]** 37/1 40/25 46/23 51/8 55/16 61/19
**final [5]** 10/15 12/2 12/7 13/17 87/23
**financial [3]** 72/11 72/19 72/24
**find [2]** 69/21 75/7
**finding [2]** 82/16 90/19
**fine [5]** 8/12 10/1 12/4 13/2 88/13
**firm [3]** 16/21 20/24 33/15
**first [12]** 5/18 11/22 14/10 14/23 17/16 22/4 61/20 65/14 71/22 73/24 80/4 86/15
**five [3]** 21/14 54/19 69/11

**F**

**fixed [1]** 51/13
**FJC [1]** 9/16
**flavor [1]** 80/15
**Fletcher [1]** 76/12
**Floor [1]** 2/5
**folks [5]** 6/6 11/10 16/1 68/10 76/16
**follow [7]** 20/7 33/15 46/13 46/13 48/19 50/6 61/7
**following [2]** 35/18 77/18
**footing [8]** 36/8 36/8 36/10 44/7 44/9 54/22 58/6 65/17
**forces [1]** 47/13
**foregoing [1]** 92/7
**foremost [1]** 86/15
**forever [1]** 32/16
**form [5]** 9/3 9/5 26/3 71/16 76/25
**formal [1]** 8/6
**formally [1]** 13/14
**format [1]** 92/10
**forth [1]** 80/17
**forthright [1]** 69/4
**forward [4]** 13/15 67/8 69/8 81/3
**Founding [2]** 66/24 67/4
**four [4]** 11/6 21/13 74/21 80/4
**four-question [1]** 11/6
**Framhein [1]** 75/18
**FRAZIER [8]** 2/11 6/4 66/19 68/4 79/8 79/23 85/7 89/22
**frequently [3]** 49/19 49/21 75/2
**Friday [2]** 10/7 10/12
**friendly [1]** 22/7
**front [2]** 70/23 78/14
**frustrated [2]** 64/6 64/9
**frustration [3]** 50/2 50/7 50/15
**frustrations [1]** 49/15
**full [1]** 78/17
**fund [1]** 73/14
**funds [1]** 73/12
**funny [1]** 27/20
**further [5]** 8/22 17/11 19/20 40/1 90/22
**future [1]** 50/12

**G**

**Gal [1]** 76/17
**game [1]** 49/9
**games [4]** 49/9 49/10 49/11 49/12
**GB [2]** 70/7 70/10
**GCB [1]** 14/19
**general [5]** 3/2 5/11 27/11 47/3 85/6
**generally [1]** 75/23
**gentleman [3]** 68/7 69/16 77/21
**gentlemen [4]** 66/21 67/23 74/4 76/21
**get [16]** 6/21 10/14 11/21 14/10 27/8 34/14 45/9 45/11 54/2 64/9 68/16 69/9 70/21 70/22 79/7 90/5
**getting [4]** 13/4 62/19 62/21 84/25
**give [9]** 9/4 9/14 10/5 12/5 14/2 42/25 58/19 60/24 71/1
**given [18]** 7/5 18/14 19/1 21/12 23/22 24/4 30/20 31/6 32/22 33/22 36/9 42/4 48/16 58/2 58/8 58/13 65/16 89/20
**gives [2]** 42/23 84/20
**giving [1]** 24/10
**go [20]** 9/6 10/25 11/8 11/11 14/11 21/4 25/13 29/3 29/11 33/19 36/15 40/2 44/17 44/23 45/16 50/21 55/5 55/22 60/16 65/23
**goes [2]** 26/21 81/25
**going [33]** 6/21 7/4 9/15 10/6 14/18 15/7 20/9 20/11 21/8 25/5 28/10 29/5 29/17 38/10 42/19 48/17 58/14 68/6 70/18 70/21 73/24 75/12 76/15 76/21 77/10 78/10 79/16 84/9 85/3 86/4 86/24 87/4 87/14
**gone [1]** 27/20
**good [98]**
**got [9]** 9/17 15/6 24/23 35/3 38/10 45/7 52/11 72/20 80/13
**gotten [1]** 51/15
**government [1]** 67/5
**grant [1]** 82/15
**great [1]** 69/18
**GREGORY [1]** 2/15
**group [1]** 70/19
**GS [2]** 55/8 56/20
**guess [4]** 32/17 35/10 58/11 58/20
**GWB [1]** 14/19

**H**

**had [53]** 6/20 8/25 9/6 9/14 17/24 22/4 22/17 22/21 24/17 26/17 26/18 26/21 26/23 26/24 27/15 29/9 29/18 30/13 31/8 34/8 34/10 34/17 37/2 41/1 41/14 44/2 45/4 45/9 45/10 45/13 45/14 46/24 46/25 51/9 51/11 51/15 52/4 53/17 53/24 54/1 55/17 55/20 59/16 61/21 61/22 62/10 65/10 67/6 68/19 86/7 88/22 89/15 90/11
**HALE [4]** 2/12 2/15 2/18 5/17
**hallway [1]** 11/9
**Han [1]** 76/9
**hand [6]** 18/4 38/8 70/19 75/14 78/1 79/11
**handed [3]** 79/22 80/10 88/2
**handful [1]** 79/3
**handwriting [1]** 40/15
**happens [1]** 42/19
**happy [5]** 15/16 15/23 54/13 54/14 81/10
**hard [7]** 9/4 39/9 50/10 56/3 58/19 60/21 60/24
**harder [1]** 58/24
**Harrison [1]** 76/9
**Harrison-Noonan [1]** 76/9
**has [29]** 6/20 8/4 9/7 9/17 10/11 10/20 12/20 12/23 15/22 21/11 25/16 26/1 26/6 47/9 53/14 53/16 58/18 69/18 71/3 71/9 71/10 71/25 73/2 75/1 82/19 82/20 84/7 86/12 89/25
**hashing [1]** 12/2
**hate [4]** 27/22 27/24 27/25 28/1
**have [123]**
**haven't [5]** 28/4 37/22 41/14 63/6 77/1
**having [6]** 13/12 21/7 27/10 28/9 40/14 45/15
**HAYNES [1]** 2/21
**he [46]** 15/1 15/3 15/18 15/18 15/21 21/9 21/10 21/11 21/12 21/20 21/20 25/16 25/17 25/17 25/19 25/19 25/20 25/20 25/21 26/1 26/2 26/3 26/4 26/6 26/6 26/7 29/7 29/8 29/9 54/15 54/16 54/16 60/20 60/22 60/23 61/2 61/3 61/4 61/4 61/6 61/8 61/10 76/3 83/10 83/15 88/8
**he's [3]** 67/25 78/15 83/20
**head [1]** 28/15
**heading [1]** 87/15
**headphones [1]** 30/18
**healthcare [1]** 41/4
**hear [17]** 19/9 20/16 23/2 26/4 28/18 31/1 39/18 47/21 52/22 54/23 58/16 60/5 62/8 63/1 71/6 71/7 76/15
**heard [11]** 28/5 37/22 54/10 57/1 63/6 73/24 74/10 75/5 75/13 77/1 90/17
**hearing [1]** 68/2
**hears [1]** 26/7
**hearsay [6]** 88/9 89/2 89/21 90/5 90/5 90/9
**heart [5]** 7/18 8/6 71/15 80/20 82/21
**held [2]** 61/7 92/9
**help [5]** 27/9 52/2 59/25 68/17 81/22
**helpful [1]** 9/24
**helping [1]** 54/1
**her [7]** 33/21 74/16 78/1 78/7 83/24 86/19 87/8
**here [17]** 6/6 6/11 20/20 20/20 26/8 38/8 48/18 50/16 56/14 67/8 67/18 67/24 76/22 80/6 80/14 83/13 83/21
**here relates [1]** 80/6
**hereby [1]** 92/6
**hey [1]** 84/24
**high [6]** 7/18 8/6 71/15 80/20 82/21 83/25
**high/low [4]** 7/18 8/6 80/20 82/21
**him [14]** 15/3 15/17 15/17 15/19 15/21 15/23 15/24 21/8 21/14 25/18 29/5 61/8 76/6 78/16
**his [22]** 20/7 20/12 20/17 20/21 21/7 21/12 21/16 21/18 25/4 25/9 29/8 33/10 33/12 39/23 60/7 60/9 76/23 78/13 83/10 83/25 88/14 89/6
**HLP [1]** 14/20
**hobbies [1]** 18/9
**hold [2]** 69/9 72/16
**holding [1]** 62/16
**holdings [1]** 73/13
**honest [3]** 55/24 62/9 63/4
**honestly [1]** 28/7
**honesty [1]** 69/3
**Honor [101]**
**Honor's [9]** 20/17 20/22 26/5 33/10 33/12 60/7 60/9 61/10 89/21
**HONORABLE [1]** 1/8
**horizon [2]** 81/22 82/8
**HORNE [32]** 2/7 5/8 11/16 19/14 23/15 23/20 26/3 28/22 32/5 32/7 35/12 35/14 38/15 38/18 42/12 42/15 46/5 47/24 48/6 53/2 53/5 56/19 56/23 63/16 63/19 66/12 67/15 67/17 79/19 82/24 88/13 89/20
**Hotelling [1]** 76/10
**hour [2]** 11/16 11/19
**House [1]** 3/7
**housekeeping [1]** 12/16
**how [21]** 10/6 11/8 11/11 19/24 23/16 40/20 40/22 45/11 47/9 49/5 49/19 55/12 56/2 74/19 75/2 77/3 77/16 83/25 86/19 87/2 87/13
**however [2]** 11/11 47/15
**huge [1]** 27/12
**human [1]** 28/11
**hundred [1]** 44/7
**hundreds [2]** 83/20 84/20
**hurdle [1]** 19/20

**I**

**I'd [4]** 37/25 56/8 74/4 84/4
**I'll [6]** 12/24 67/19 68/11 70/20 70/24 90/14
**I'm [59]** 9/1 9/9 10/6 13/20 14/18 15/6 15/19 16/16 21/8 21/17 22/18 25/18 25/24 29/5 32/2 37/4 37/11 37/18 38/5 38/23 38/24 40/14 40/21 41/3 41/4 43/9 43/13 47/3 49/7 49/10 50/10 51/21 52/1 54/13 54/14 54/24 55/13 57/19 57/19 62/14 62/15 62/19 63/4 64/18 64/21 65/3 66/13 70/18 70/21 72/18 73/4 73/23 73/24 75/12 77/10 78/12 79/18 80/7 86/4
**I've [10]** 34/10 34/16 55/19 55/20 59/16 62/18 72/20 74/14 75/5 80/13
**I-N-D-E-X [1]** 4/3
**Ian [1]** 75/18
**identical [1]** 10/23
**identification [1]** 16/4
**II [1]** 91/1
**impartial [1]** 68/24
**important [8]** 36/7 60/4 63/10 66/24 68/14 68/18 69/23 83/22
**importantly [1]** 84/3
**importing [1]** 71/11
**improper [2]** 82/23 84/15
**improperly [2]** 81/17 85/17
**inability [1]** 61/7
**INC [6]** 1/11 5/3 37/17 66/9 68/9 71/5
**inclined [2]** 10/7 25/18
**including [1]** 61/5
**inconvenience [1]** 11/9
**Indeed [1]** 69/4
**independence [5]** 77/5 77/6 77/9 77/10 77/19
**indicate [1]** 89/12
**indicated [20]** 9/14 17/23 24/16 26/16 26/18 29/17 30/12 34/7 37/1 40/25 46/12 46/23 46/25 51/8 55/17 61/20 62/10 89/4 89/8 89/10
**indicating [1]** 29/8
**individually [2]** 14/15 70/22
**industry [2]** 50/10 74/25
**infected [2]** 62/3 62/3
**infects [1]** 81/5
**inflate [1]** 82/4
**influence [1]** 47/12
**influences [1]** 47/9

**I**

**information [5]** 10/23 32/22 70/24 74/7 90/22
**infringe [1]** 86/17
**infringed [3]** 71/10 71/13 71/25
**infringement [3]** 6/19 7/21 71/4
**infringement.' [1]** 82/6
**infringer [1]** 81/19
**initial [1]** 10/22
**innovation [1]** 57/21
**innovations [2]** 57/18 60/22
**inquire [2]** 19/12 78/14
**instruct [3]** 24/1 42/19 48/17
**instructed [2]** 39/11 45/23
**Instruction [2]** 7/6 7/10
**instructions [25]** 8/23 9/1 9/15 10/15 12/2 12/8 12/13 20/12 20/14 20/17 20/22 23/3 25/9 33/10 33/12 35/19 38/4 39/22 46/13 46/14 48/19 60/7 60/10 61/4 61/10
**intakes [1]** 43/25
**integrity [1]** 69/3
**intend [1]** 12/10
**intended [1]** 68/15
**intentions [1]** 50/14
**interact [1]** 49/5
**interest [2]** 12/24 71/9
**interested [1]** 43/9
**interests [1]** 72/12
**International [1]** 89/1
**interrupt [1]** 13/4
**introduce [5]** 5/18 67/10 67/13 67/19 89/11
**invade [1]** 68/15
**invalid [1]** 71/20
**invention [1]** 83/11
**inventions [1]** 71/20
**invite [1]** 68/22
**inviting [1]** 68/10
**invoked [1]** 82/19
**involved [1]** 16/18
**involves [1]** 32/20
**involving [1]** 57/24
**iOS [5]** 47/4 48/11 49/9 49/25 57/8
**iPad [1]** 30/18
**iPads [1]** 57/8
**iPhone [11]** 18/8 32/16 35/24 39/2 45/8 51/21 53/8 53/15 53/16 54/14 62/2
**iPhones [1]** 57/8
**ironic [1]** 27/22
**Irvine [1]** 2/5
**is [162]**
**issue [12]** 6/22 7/8 34/13 63/23 79/4 81/5 82/21 85/13 85/17 85/18 88/23 89/21
**issued [1]** 12/23
**issues [5]** 7/8 62/15 77/1 77/3 79/5
**it [131]**
**it's [52]** 8/17 10/23 13/21 14/5 19/13 19/20 20/6 22/7 23/19 27/22 30/23 30/24 31/10 32/1 32/15 33/5 36/4 39/16 43/4 45/9 48/3 49/22 50/10 52/5 54/2 54/8 54/25 56/3 58/1 58/19 60/3 62/2 62/22 62/22 62/22 64/4 64/13 64/24 65/19 68/8 68/15 68/16 69/10 74/17 79/15 83/22 83/25 84/9 84/17 85/16 86/1 86/20
**ITC [4]** 88/5 88/10 89/18 90/15
**Item [1]** 66/8
**its [15]** 6/19 9/5 17/24 22/5 26/17 27/24 29/18 30/13 30/21 37/2 37/17 46/24 71/25 77/3 88/17
**itself [4]** 10/20 32/15 45/14 81/18

**J**

**JAMES [1]** 1/8
**Jamie [2]** 6/1 66/19
**January [1]** 71/17
**January 9 [1]** 71/17
**Jaynes [1]** 76/10
**JCR [1]** 14/21
**Jeff [1]** 76/13
**JG [1]** 70/9
**Jim [1]** 75/15
**JL [4]** 14/20 34/1 70/13 74/13
**JM [1]** 70/5
**JMC [3]** 21/22 23/18 23/19
**JMG [1]** 14/19
**JMM [1]** 14/20
**Joe [13]** 5/16 20/6 24/14 33/4 36/3 39/15 43/4 49/1 54/7 59/7 65/7 66/16 67/24
**joined [1]** 66/13
**joining [1]** 6/2
**joint [3]** 12/1 12/5 12/9
**JOSEPH [6]** 2/3 2/11 5/6 66/14 67/20 76/19
**JP [1]** 40/10
**JQ [7]** 46/17 48/1 70/16 73/10 74/23 76/2 78/12
**JR [4]** 51/2 51/4 53/3 70/6
**JRJ [1]** 14/20
**JTX [1]** 88/3
**judge [7]** 1/8 24/1 24/6 42/19 42/22 42/23 48/19
**judgment [1]** 13/6
**Judicial [1]** 92/11
**Jue [1]** 75/18
**June [2]** 71/18 76/18
**June 26 [1]** 71/18
**juror [34]** 16/9 17/15 17/16 17/18 21/6 21/23 25/15 26/11 29/4 29/12 30/4 30/6 33/20 34/2 36/16 36/21 40/5 40/11 40/17 44/18 44/24 46/10 46/18 50/22 51/3 55/6 55/9 60/18 61/12 61/13 65/24 73/8 73/19 78/5
**jurors [17]** 11/5 14/11 14/13 15/22 16/25 18/20 42/2 63/10 66/7 68/20 68/23 69/13 69/24 70/2 70/18 77/22 88/18
**jury [47]** 4/5 6/2 8/23 9/1 10/6 10/11 10/15 12/2 12/7 12/13 12/21 21/4 23/12 25/6 25/14 29/3 33/19 34/22 36/15 39/19 40/2 42/19 44/17 47/16 50/21 52/21 55/5 60/5 60/16 62/6 65/23 66/24 66/25 67/3 68/7 68/11 68/15 68/23 69/7 72/9 74/7 78/17 79/2 81/21 81/23 84/21 86/22
**jury's [1]** 82/4
**just [107]**
**justice [3]** 67/7 67/9 69/18
**JVS [3]** 1/11 5/2 66/8

**K**

**keep [6]** 13/4 36/10 50/17 74/24 77/2 87/18
**keeping [1]** 85/2
**Ken [1]** 6/7
**KENNETH [1]** 2/21
**key [1]** 44/6
**Kiani [1]** 76/19
**Kim [1]** 6/8
**KIMBERLY [1]** 3/8
**kind [3]** 13/25 28/15 34/13
**knew [1]** 16/21
**KNOBBE [6]** 2/4 2/7 5/7 15/11 16/13 66/13
**know [40]** 7/1 15/14 18/25 23/6 24/1 24/8 30/17 31/20 31/20 31/25 32/1 32/3 32/14 34/11 34/14 34/21 35/9 37/25 50/9 53/23 55/21 56/4 58/10 58/18 58/20 58/21 59/21 62/9 63/4 63/4 63/9 74/9 75/5 75/13 78/12 78/24 85/14 86/22 87/2 87/4
**knowing [1]** 69/17
**knowledge [1]** 51/20
**Kristen [1]** 76/19

**L**

**Laboratories [2]** 41/2 68/9
**ladies [6]** 66/21 67/23 68/7 74/4 76/21 77/20
**Laird [2]** 6/1 66/19
**Land [1]** 76/10
**language [1]** 81/13
**laptop [3]** 51/11 52/4 53/22
**LaserDynamics [2]** 81/9 82/12
**last [9]** 6/24 8/17 10/6 21/13 61/12 61/25 62/2 64/5 75/5
**law [10]** 15/11 20/13 20/14 20/17 42/19 46/14 48/17 60/10 61/4 85/21
**lawsuit [7]** 7/22 42/16 48/7 53/6 56/24 63/20 77/7
**lawyers [1]** 74/9
**leak [1]** 68/15
**learn [2]** 53/17 68/12
**learned [3]** 31/22 53/18 53/24
**least [2]** 24/17 86/5
**leave [2]** 50/8 69/22
**leaves [1]** 15/18
**Lefort [1]** 75/20
**legal [6]** 25/9 33/10 33/12 39/22 60/7 61/10
**lest [2]** 80/25 82/11
**let [11]** 9/12 29/11 37/13 38/10 41/22 67/10 67/13 68/6 68/12 76/15 90/14
**let's [12]** 14/17 15/24 16/1 16/7 16/8 17/16 21/22 37/20 39/3 44/23 47/1 61/20
**letter [3]** 88/4 89/19 90/2
**letters [2]** 88/15 88/25
**LG [1]** 14/20
**liability [1]** 32/19
**life [2]** 64/13 64/15
**light [2]** 12/3 83/23
**like [54]** 6/20 10/24 19/12 22/7 23/23 24/6 26/24 27/2 27/8 27/11 27/12 28/12 28/12 30/15 30/16 30/24 30/24 32/9 32/13 32/14 32/17 33/8 33/11 34/11 34/13 34/15 35/9 35/18 36/7 38/23 39/5 39/17 42/18 42/21 44/6 47/13 48/14 49/14 49/22 49/25 50/1 52/3 57/7 60/3 61/25 62/1 62/5 64/6 65/13 65/16 78/15 78/24 83/19 84/4
**likely [1]** 13/18
**Likewise [2]** 49/3 69/6
**limine [3]** 13/6 88/24 90/11
**limit [2]** 33/11 60/4
**limited [3]** 13/13 13/19 61/9
**limiting [1]** 60/11
**line [4]** 7/13 7/20 7/24 8/16
**line 11 [1]** 7/13
**line 22 [1]** 7/24
**line 5 [1]** 8/16
**list [4]** 10/16 10/20 62/19 75/12
**listen [4]** 18/15 21/13 30/22 74/25
**listened [1]** 21/7
**listening [1]** 35/19
**litigation [1]** 89/18
**little [45]** 11/18 19/17 19/20 22/21 23/23 24/3 24/20 31/7 31/11 32/24 35/7 35/7 38/21 39/6 42/3 42/3 42/5 50/8 51/23 51/24 52/13 52/14 52/16 54/10 55/16 55/23 56/6 56/6 57/14 57/16 58/2 58/7 58/15 58/24 63/12 63/13 63/21 64/6 64/13 64/17 64/23 68/12 70/23 74/14 74/17
**LLP [6]** 2/4 2/7 2/12 2/15 2/18 2/21
**Lo [1]** 9/7
**locked [1]** 47/5
**logistics [1]** 78/22
**long [2]** 10/6 74/19
**longer [1]** 7/8
**look [11]** 10/25 24/2 24/7 24/9 80/17 81/1 82/9 83/25 84/6 84/6 84/24
**looked [2]** 85/15 89/25
**looking [5]** 19/25 63/4 69/8 80/7 85/10
**Los [1]** 2/8
**lot [9]** 11/8 18/3 18/4 28/14 41/9 54/16 59/15 59/16 84/25
**loved [1]** 54/16
**low [5]** 7/18 8/6 71/15 80/20 82/21
**LP [7]** 40/13 42/13 44/14 44/23 70/14 78/1 78/12
**Lucent [1]** 85/12
**lunch [1]** 76/22

**M**

**MA [1]** 2/13
**ma'am [3]** 33/4 63/17 65/21
**Mac [1]** 57/6
**MacBook [3]** 18/9 39/2 48/12
**Macs [1]** 57/20
**made [5]** 12/22 13/14 61/25 89/13 90/8
**Madisetti [6]** 75/16 88/7 88/12 89/4 89/8 89/24

## M


**magnetometer [1]** 77/14
**main [2]** 2/5 26/20
**maintain [1]** 90/2
**maintaining [1]** 78/23
**major [1]** 51/14
**make [24]** 7/25 10/22 13/25 18/5 20/15 20/20 25/8 39/21 47/8 60/8 62/21 64/10 68/13 68/15 68/17 69/14 69/14 70/20 72/24 74/6 78/3 80/23 82/3 82/8
**makes [1]** 72/24
**making [8]** 7/22 18/9 26/7 33/13 50/16 60/4 64/13 85/14
**manager [10]** 27/1 27/3 27/12 28/7 49/8 49/11 62/15 62/16 64/22 64/25
**manifests [1]** 81/18
**manner [1]** 84/15
**Mannheimer [1]** 76/11
**Mansfield [1]** 76/11
**many [4]** 11/11 14/13 32/17 84/8
**Marco [1]** 76/11
**mark [6]** 2/14 5/24 16/2 66/18 68/3 76/12
**marked [2]** 16/4 79/19
**market [5]** 80/16 81/17 82/18 83/1 83/8
**MARTENS [5]** 2/4 2/7 5/7 15/11 66/13
**MASIMO [60]** 1/9 3/2 3/4 5/3 5/7 5/14 6/11 6/19 7/20 7/21 16/19 16/22 19/15 23/20 31/16 31/17 31/20 31/25 32/7 35/16 36/10 38/19 41/1 41/3 41/12 41/23 42/4 42/16 43/8 43/12 44/3 44/8 48/7 52/6 53/6 56/23 62/11 62/25 63/20 63/22 64/7 64/16 64/20 64/25 66/9 66/13 67/17 67/19 68/8 71/3 71/5 71/8 71/10 71/13 71/15 71/17 71/24 75/1 86/21 89/12
**Masimo's [6]** 5/10 79/25 80/18 86/18 86/19 87/2
**material [1]** 75/8
**Mathieu [1]** 75/19
**matter [5]** 6/11 8/6 12/17 38/6 92/9
**matters [1]** 11/24
**may [20]** 9/4 9/5 11/13 14/25 17/4 34/13 49/14 54/12 68/22 69/4 71/7 85/8 87/25 88/12 88/14 89/5 89/8 89/12 89/24 90/17
**maybe [5]** 34/13 55/21 64/22 64/22 79/4
**MCF [2]** 30/5 32/6
**me [47]** 5/7 6/21 7/9 9/6 9/12 11/15 12/14 12/25 17/4 18/2 18/5 18/7 22/5 24/20 26/19 28/8 29/20 30/14 34/9 35/22 37/3 37/13 41/6 41/22 43/7 43/19 45/6 47/2 47/13 47/14 49/4 50/10 51/10 54/11 54/16 61/23 62/4 63/21 66/17 67/10 67/13 68/6 69/16 72/15 76/15 84/14 90/21
**mean [12]** 28/12 30/15 30/23 35/10 37/11 41/13 54/13 56/10 57/18 57/19 60/22 72/22
**meaning [1]** 89/7
**means [2]** 72/23 76/25
**media [2]** 78/2 78/13
**meet [19]** 19/14 20/6 23/19 24/15 33/5 36/4 38/19 39/16 42/16 43/5 48/3 49/2 53/6 54/8 56/22 59/8 63/20 65/8 68/4
**member [1]** 29/23
**mental [1]** 74/6
**mention [3]** 7/4 7/7 78/10
**mentioned [9]** 19/16 19/23 43/9 53/8 56/25 57/13 61/4 65/10 85/5
**Mercier [1]** 76/17
**Mesa [1]** 2/22
**met [1]** 69/7
**MF [1]** 70/4
**Michael [2]** 75/18 76/10
**Microsoft [2]** 82/13 85/12
**middle [1]** 8/19
**might [20]** 9/24 19/16 19/19 19/23 24/3 24/10 32/23 37/25 39/6 39/9 53/22 55/22 55/22 58/1 58/7 58/15 64/16 64/19 65/1 78/3
**MIL [4]** 83/15 83/16 88/11 89/23
**millions [2]** 83/20 84/20
**mind [9]** 18/21 19/17 31/11 43/19 50/8 52/8 58/2 77/2 77/20
**minimal [1]** 89/12
**minor [1]** 8/3
**minute [3]** 8/15 21/8 66/4
**minutes [1]** 6/25
**Miriam [1]** 91/1
**misheard [1]** 14/25
**misspoke [1]** 54/12
**Mistri [1]** 75/18
**mixed [1]** 26/1
**MNC [2]** 29/10 30/4
**mobile [1]** 49/8
**Mode [2]** 7/8 7/13
**models [1]** 71/14
**modest [1]** 82/4
**Mohamed [1]** 75/16
**Molly [1]** 75/19
**mom [1]** 26/25
**moment [1]** 9/4
**moments [1]** 25/4
**Monday [3]** 9/6 9/8 10/10
**monetary [1]** 71/16
**money [1]** 26/23
**monitor [3]** 43/14 43/22 89/7
**monitoring [1]** 43/11
**monitors [2]** 41/9 43/9
**month [2]** 62/18 64/5
**months [1]** 74/21
**more [18]** 11/10 11/11 12/16 20/10 24/3 29/8 38/5 38/21 43/7 49/4 53/24 54/11 57/7 57/17 63/21 68/13 69/14 73/19
**morning [81]** 5/6 5/9 5/12 5/15 5/16 5/21 5/23 5/25 6/3 6/5 16/10 16/11 17/19 17/20 19/13 20/5 21/24 21/25 23/16 24/14 26/12 26/13 29/13 29/14 30/7 30/8 32/6 33/4 33/6 34/3 34/4 35/13 35/15 36/3 36/22 36/23 38/16 38/17 39/15 40/18 40/19 42/13 42/14 43/6 44/1 44/25 45/1 46/19 46/20 47/25 48/3 48/8 48/24 48/25 51/4 51/5 53/3 53/4 54/7 55/10 55/11 56/20 56/21 59/5 59/6 61/14 61/15 63/17 63/18 65/7 65/9 66/12 66/15 66/16 66/20 66/21 67/23 70/17 73/22 77/16 79/12
**most [8]** 47/6 49/22 49/24 53/25 66/23 68/18 79/3 84/3
**mother [1]** 74/16
**motion [3]** 13/7 13/7 90/11
**motions [4]** 12/20 13/6 13/7 88/23
**move [3]** 25/21 40/7 60/24
**Mr [5]** 36/2 43/3 63/16 65/6 85/1
**Mr. [50]** 8/4 10/18 11/2 11/16 15/14 16/8 16/8 16/10 17/10 17/17 17/19 19/13 20/4 20/5 21/14 23/15 24/13 25/24 26/3 26/10 28/22 28/24 29/11 32/5 33/3 35/12 38/15 39/14 42/12 46/5 46/7 47/24 48/23 53/2 54/6 56/19 59/4 61/1 67/15 67/19 67/20 67/20 79/19 80/18 81/3 82/24 83/1 83/24 88/13 89/20
**Mr. AWB [4]** 17/17 17/19 19/13 20/5
**Mr. Bergman [2]** 81/3 83/1
**Mr. Bergman's [2]** 80/18 83/24
**Mr. Brian [1]** 67/20
**Mr. DS [4]** 15/14 16/8 16/8 16/10
**Mr. Horne [17]** 11/16 23/15 26/3 28/22 32/5 35/12 38/15 42/12 46/5 47/24 53/2 56/19 67/15 79/19 82/24 88/13 89/20
**Mr. Joseph [1]** 67/20
**Mr. Mueller [13]** 17/10 20/4 21/14 24/13 25/24 28/24 33/3 39/14 46/7 48/23 54/6 59/4 61/1
**Mr. Re [2]** 8/4 11/2
**Mr. Selwyn [1]** 10/18
**Mr. Stephen [1]** 67/19
**Mr. TKC [2]** 26/10 29/11
**Ms [3]** 85/7 89/22 90/7
**Ms. [9]** 32/6 67/11 67/21 79/8 83/23 86/10 86/12 86/18 88/20
**Ms. Frazier [1]** 79/8
**Ms. MCF [1]** 32/6
**Ms. Sharon [1]** 67/11
**Ms. Sheila [1]** 67/21
**Ms. Swaroop [1]** 88/20
**Ms. Webster [4]** 83/23 86/10 86/12 86/18
**much [17]** 18/19 21/1 27/21 32/13 35/4 36/13 44/14 46/9 47/7 50/9 54/18 55/1 60/9 65/20 66/25 68/4 84/20
**MUELLER [30]** 2/11 5/16 17/10 20/4 20/6 21/14 24/13 24/15 25/24 28/24 33/3 33/5 36/2 36/4 39/14 39/16 43/3 43/4 46/7 48/23 49/1 54/6 54/8 59/4 59/7 61/1 65/6 65/8 66/17 67/24
**Muhsin [1]** 76/19
**multiple [1]** 61/4
**multiplied [1]** 85/16
**Munford [1]** 76/18
**Mushtaq [1]** 76/13
**music [1]** 18/9
**music-making [1]** 18/9
**mutual [2]** 73/12 73/13
**my [64]** 5/7 9/1 9/7 19/14 19/19 20/6 23/19 24/14 26/5 26/20 26/21 26/25 27/15 28/2 28/9 28/15 32/6 32/21 33/4 35/13 36/3 37/7 38/1 38/6 38/6 38/13 38/18 39/15 42/15 43/4 48/6 49/1 49/11 51/20 53/5 54/7 54/14 56/22 58/5 58/8 59/7 61/24 62/2 62/2 62/4 62/19 63/19 64/9 64/15 65/1 65/7 66/13 67/10 67/17 67/19 67/24 68/1 68/3 69/12 71/1 72/19 72/20 72/24 74/15
**myself [1]** 49/12


## N


**N.W [1]** 2/19
**Nag [1]** 76/11
**name [25]** 15/1 19/14 20/6 23/17 23/20 24/14 32/6 33/4 35/13 36/3 38/18 39/15 42/15 43/4 48/6 49/1 53/5 54/7 56/22 59/7 63/19 65/7 67/17 67/24 78/13
**names [1]** 10/20
**narrow [1]** 10/21
**narrowing [1]** 7/7
**NATALIE [2]** 3/8 6/8
**necessarily [1]** 56/11
**necessary [1]** 11/10
**need [10]** 7/25 10/5 11/12 14/14 15/8 23/6 31/15 42/2 76/23 77/2
**needed [2]** 59/21 89/11
**needs [1]** 15/14
**negative [20]** 24/17 25/2 25/17 26/18 34/8 34/17 41/15 45/5 45/10 46/1 46/25 47/1 47/11 51/9 55/17 55/21 56/11 61/22 62/11 64/20
**negotiations [1]** 79/17
**neutral [6]** 58/11 58/17 58/20 58/22 60/23 60/23
**never [1]** 27/11
**new [10]** 12/5 34/14 45/8 45/9 45/12 45/16 49/23 62/3 70/17 82/16
**next [13]** 7/16 7/20 10/7 12/6 13/18 16/3 26/10 29/10 30/5 44/23 46/17 51/2 66/23
**nice [11]** 20/6 24/15 33/5 36/4 39/16 43/5 49/1 54/8 59/7 65/8 68/4
**no [75]** 5/2 7/6 7/8 8/9 9/22 9/23 11/3 14/9 14/13 14/19 15/3 16/20 17/1 17/9 24/12 28/23 29/6 31/13 31/24 32/2 36/18 36/19 37/6 37/6 37/18 37/22 38/12 40/1 40/8 40/16 41/17 44/20 44/21 46/3 46/6 46/16 50/17 50/24 50/25 52/9 52/11 52/11 53/13 55/3 57/12 65/15 66/8 70/3 70/4 70/5 70/6 70/7 70/8 70/9 70/10 70/11 70/12 70/13 70/14 70/15 70/16 71/5 71/9 72/24 73/16 73/17 73/21 74/2 76/7 78/6 82/1 82/20 83/6 85/9 89/25
**No. [3]** 7/11 8/13 8/17
**No. 3 [1]** 7/11
**No. 5 [2]** 8/13 8/17
**nobody [7]** 18/20 18/21 42/2 42/3 52/7 63/12 63/12
**None [1]** 25/3
**Noonan [1]** 76/9
**Nos. [1]** 13/8
**Nos. 2551 [1]** 13/8
**nose [1]** 58/8
**not [74]** 6/21 9/5 11/8 13/20 14/22 15/22 16/20 17/1 21/8 21/17 25/18 27/7 28/12 28/19

## N

**not... [60]** 29/24 30/23 30/24 31/2 32/2 32/15 32/18 33/25 37/18 38/10 39/24 45/15 46/13 48/13 49/21 51/13 51/20 52/1 54/2 54/24 61/7 61/17 62/1 62/5 62/19 62/21 62/22 64/4 64/10 64/21 65/17 68/15 71/24 71/25 76/24 76/25 77/17 77/22 78/14 79/2 80/9 82/20 83/1 83/3 83/7 83/8 83/13 83/15 83/18 83/18 83/20 84/17 85/3 85/23 86/4 86/17 88/15 88/16 89/9 90/19
**note [7]** 13/17 13/21 14/4 69/13 74/6 78/1 83/22
**noted [2]** 21/21 26/9
**nothing [9]** 8/22 17/11 28/25 30/19 41/8 41/13 46/8 64/11 75/22
**noticed [2]** 15/10 15/13
**notification [1]** 7/18
**notifications [5]** 8/6 8/7 8/8 71/15 80/21
**notwithstanding [1]** 44/11
**November [3]** 1/17 5/1 92/13
**now [11]** 6/14 7/1 7/1 20/20 22/7 27/23 52/5 59/9 62/19 78/5 79/6
**number [9]** 21/12 76/24 83/5 83/23 85/16 87/4 87/8 87/15 88/10
**numbers [5]** 12/25 13/8 80/24 83/7 86/25

## O

**O'Reilly [1]** 75/18
**object [4]** 33/22 60/20 60/24 88/8
**objection [25]** 8/9 9/22 9/23 11/3 12/22 13/5 13/10 21/21 29/6 33/24 40/8 46/16 73/17 80/4 80/6 80/14 80/15 83/2 83/13 86/8 87/24 88/17 88/22 89/3 90/3
**objectionable [1]** 86/2
**objections [7]** 11/22 13/13 78/23 79/25 80/3 86/13 88/6
**observed [1]** 81/21
**obvious [1]** 71/21
**off [8]** 15/17 20/2 21/10 23/23 31/11 58/6 87/11 87/12
**offered [1]** 89/15
**offering [1]** 71/12
**often [1]** 49/22
**oh [7]** 37/7 37/11 37/11 37/13 41/8 41/21 79/21
**okay [93]**
**old [1]** 26/22
**OLSON [2]** 2/4 2/7
**once [4]** 11/5 49/22 49/22 53/18
**one [57]** 7/7 8/3 8/4 9/2 11/16 12/16 15/1 15/10 15/11 18/4 18/19 18/25 19/3 22/4 22/16 23/6 24/17 24/23 25/19 25/20 26/2 28/4 31/11 34/14 43/13 49/24 51/15 51/23 52/7 54/9 54/18 57/13 62/3 63/3 66/1 69/15 69/17 72/3 72/5 72/8 72/20 73/19 75/9 76/24 77/25 78/22 79/4 79/25 81/16 83/5 83/23 84/4 84/8 84/22 86/8 86/12 86/22
**ones [2]** 15/7 79/16
**ongoing [2]** 50/2 50/7
**only [11]** 13/21 15/6 20/15 25/9 26/7 43/13 60/8 62/1 81/20 82/2 85/15
**open [1]** 77/2
**opening [13]** 6/23 9/21 9/25 11/14 11/15 11/17 11/19 78/23 80/2 84/4 87/5 88/14 89/20
**operate [1]** 38/25
**opinion [5]** 37/24 38/1 80/19 81/16 89/6
**opinions [5]** 14/3 14/5 17/8 77/1 86/19
**opportunity [1]** 68/20
**opposed [1]** 13/12
**options [1]** 18/5
**order [4]** 16/3 47/5 64/2 77/9
**ordered [1]** 87/11
**orders [2]** 62/21 63/25
**organizations [1]** 59/20
**OS [1]** 49/23
**other [23]** 7/7 8/10 11/24 15/22 18/19 21/18 22/16 23/7 24/25 25/2 28/4 30/18 31/11 43/11 51/23 53/11 58/4 61/5 69/15 72/11 84/24 86/8 86/22
**others [3]** 79/17 79/18 86/7
**ought [5]** 11/24 67/6 84/8 87/9 87/13
**our [33]** 5/18 6/7 11/19 13/6 15/11 27/4 27/7 27/13 41/9 43/17 47/6 58/21 61/12 62/17 64/1 66/24 67/4 67/11 67/12 67/18 67/25 69/10 70/17 78/23 79/17 80/3 80/6 80/14 85/19 87/23 88/6 90/2 90/6
**out [30]** 9/7 11/6 11/9 12/2 18/20 18/22 19/1 19/3 22/21 25/21 31/7 35/4 35/7 37/1 40/25 46/23 50/18 51/8 51/23 52/7 52/13 52/15 54/9 55/16 56/6 61/19 62/20 63/11 68/17 84/10
**outcome [1]** 72/12
**outside [1]** 78/16
**over [13]** 13/18 14/21 22/16 28/4 44/3 50/15 53/17 54/4 57/5 58/8 68/2 79/17 88/7
**overall [13]** 80/24 81/4 81/21 82/1 82/9 82/17 83/16 83/17 83/19 84/17 84/19 85/10 85/25
**overcharged [2]** 26/24 28/11
**overcome [1]** 19/21
**overheard [1]** 17/4
**overnight [1]** 6/18
**overruled [2]** 33/24 61/11
**own [14]** 35/23 35/24 38/7 38/25 39/1 39/4 47/19 48/9 48/12 53/8 57/9 57/11 58/18 72/13
**owned [2]** 53/11 57/5
**owner [1]** 73/1
**owns [2]** 33/23 71/5

## P

**page [9]** 4/4 7/10 8/13 8/16 8/19 14/18 81/16 88/24 92/10
**page 18 [1]** 8/19
**page 5 [1]** 7/10
**page 6 [1]** 88/24
**page 68 [1]** 81/16
**page 8 [2]** 8/13 8/16
**paid [1]** 64/2
**painted [1]** 28/8
**Palo [1]** 2/16
**paragraph [1]** 8/17
**Park [1]** 2/8
**PARKER [2]** 2/21 6/7
**part [7]** 16/15 27/20 67/8 68/18 69/1 69/10 73/12
**particular [1]** 43/8
**particularly [1]** 67/14
**parties [7]** 18/19 36/7 42/20 54/21 68/12 69/10 70/25
**parties' [1]** 9/1
**partner [2]** 16/7 16/12
**partners [5]** 5/8 15/11 66/13 67/20 68/3
**party [6]** 18/25 19/3 22/16 42/25 48/20 77/11
**pass [3]** 14/21 79/16 81/10
**passage [2]** 82/12 84/14
**passed [3]** 24/23 54/14 78/1
**past [3]** 31/2 31/4 36/9
**patent [14]** 7/22 9/15 16/16 57/25 71/4 71/5 71/6 71/9 71/11 71/18 71/20 71/22 71/22 89/7
**patented [4]** 81/20 81/23 82/2 83/11
**patentee's [1]** 82/3
**patents [1]** 57/25
**patient [2]** 43/11 89/6
**patient-monitoring [1]** 43/11
**patients [4]** 41/9 43/18 43/20 43/25
**Patrick [1]** 76/17
**Paul [1]** 76/10
**pay [4]** 24/22 27/6 27/7 27/10
**payable [2]** 62/15 64/12
**PCs [1]** 57/20
**PDX [6]** 80/4 80/4 80/5 80/5 80/17 86/9
**peace [1]** 66/23
**Pennsylvania [1]** 2/19
**people [8]** 14/15 14/22 31/20 31/23 32/3 32/17 64/9 67/2
**per [4]** 80/19 84/10 84/17 87/10
**perceive [1]** 77/11
**percent [2]** 44/7 85/2
**percentage [1]** 84/1
**peremptory [2]** 68/21 69/2
**Perez [1]** 76/11
**Perfect [1]** 78/20
**perhaps [5]** 63/3 63/5 69/5 69/20 81/8
**Perica [1]** 76/12
**period [3]** 8/8 8/20 71/17
**permissibly [1]** 90/5
**person [5]** 29/10 30/5 65/3 69/18 71/21
**personal [10]** 21/11 23/13 34/18 38/7 55/25 61/24 62/22 62/23 65/19 70/22
**perspective [2]** 68/24 68/25
**Peter [1]** 76/12
**Phillip [1]** 76/18
**phone [8]** 45/9 45/12 45/14 45/15 45/16 52/3 62/1 62/4
**phones [5]** 26/24 27/7 27/8 30/17 34/11
**PICKERING [3]** 2/12 2/15 2/18
**picking [1]** 68/7
**picture [2]** 28/8 84/21
**pie [6]** 81/2 81/4 81/5 82/14 84/15 84/16
**pile [1]** 15/3
**placard [1]** 70/23
**place [4]** 51/25 52/7 56/9 63/12
**places [1]** 11/8
**plaintiff [11]** 5/7 19/15 23/20 32/7 35/16 38/19 48/7 53/6 56/23 68/25 71/3
**Plaintiffs [2]** 1/10 2/2
**planner [2]** 72/19 72/24
**platform [1]** 57/20
**platforms [1]** 59/17
**play [2]** 9/17 9/20
**pleasantries [1]** 77/15
**please [28]** 5/4 16/1 16/8 21/5 25/14 30/14 33/19 34/9 36/15 37/3 40/3 44/17 47/2 50/21 51/10 55/5 60/16 65/23 66/10 69/9 69/25 70/20 73/20 75/14 79/11 79/14 87/12 88/1
**pleasure [9]** 19/14 23/19 38/19 42/16 48/3 48/5 53/6 56/22 63/20
**plus [1]** 55/20
**podcasts [1]** 74/25
**point [20]** 7/25 10/5 10/12 11/25 13/10 15/22 25/19 25/20 26/2 54/9 56/4 57/13 81/9 83/3 86/5 87/1 88/6 90/6 90/9 90/22
**pool [1]** 78/15
**positive [5]** 24/4 25/16 30/16 56/11 58/9
**possibility [3]** 50/14 87/3 87/14
**possible [13]** 9/2 10/15 23/22 24/3 24/9 32/23 50/7 50/16 52/10 58/1 58/7 64/16 64/24
**possibly [7]** 38/1 38/5 39/8 39/24 45/19 50/9 78/12
**potential [2]** 50/11 75/12
**POUS [2]** 3/8 6/8
**practice [1]** 69/13
**pre [1]** 64/3
**pre-filing [1]** 64/3
**precedent [3]** 81/8 82/23 85/20
**precise [2]** 13/14 23/11
**predicated [1]** 83/8
**preference [1]** 62/2
**prejudicial [1]** 82/16
**preliminaries [1]** 7/5
**preliminary [2]** 8/23 12/13
**prepare [1]** 89/15
**prepared [3]** 9/9 9/17 70/25
**presence [1]** 78/16
**present [7]** 3/1 42/20 77/22 86/21 86/24 87/4 87/14
**presentations [1]** 59/14
**presented [5]** 13/20 25/6 33/9 48/18 60/9
**presents [1]** 86/19
**preservation [1]** 13/21
**preserve [4]** 77/5 77/9 77/18 88/6
**President [2]** 3/2 5/11
**PRESIDING [1]** 1/8
**press [2]** 74/12 76/5
**pretrial [1]** 11/14
**pretty [7]** 18/19 35/3 47/7 52/5 53/16 57/22 58/11
**previous [1]** 12/21
**previously [3]** 12/19 13/11 45/14

**P**

**price [11]** 80/22 80/22 80/25 81/4 82/10 83/15 83/16 83/18 84/10 85/18 87/10
**Priddell [1]** 76/20
**primary [1]** 75/9
**prior [2]** 44/11 88/7
**privacy [1]** 68/15
**Pro [2]** 18/9 39/2
**probably [4]** 49/21 57/7 61/16 66/23
**problem [8]** 40/16 45/16 52/4 53/22 53/24 55/3 55/22 65/15
**problematic [1]** 85/15
**problems [1]** 9/2
**proceed [3]** 6/9 6/12 6/16
**proceeding [3]** 89/13 89/18 90/13
**proceedings [6]** 1/15 13/4 88/5 88/10 89/5 92/9
**process [8]** 9/15 33/16 61/6 61/8 67/9 68/12 69/1 69/10
**producer [1]** 59/15
**product [21]** 32/14 32/20 38/7 45/5 47/15 51/9 55/18 80/25 81/4 81/20 81/22 82/17 82/22 83/12 83/17 83/18 83/18 84/21 85/10 85/10 85/25
**products [47]** 17/25 18/4 18/7 21/12 22/5 22/8 22/10 26/18 27/18 27/22 27/24 27/24 27/25 28/1 29/18 30/14 30/21 32/2 32/10 32/13 32/19 33/23 34/9 34/15 35/23 37/3 37/4 37/8 37/12 37/17 37/19 37/25 38/24 38/25 39/1 39/4 46/25 48/9 53/12 55/20 57/2 57/4 57/19 58/11 59/15 59/17 61/5
**proffered [1]** 82/3
**proffers [2]** 13/19 13/23
**profitable [1]** 47/7
**profits [2]** 83/24 84/1
**programs [1]** 59/16
**prohibited [1]** 81/8
**projected [1]** 10/5
**pronounce [1]** 23/16
**pronouncing [1]** 78/13
**proper [1]** 87/15
**propose [3]** 9/20 10/21 11/7
**proposed [2]** 9/1 86/16
**proposition [1]** 63/11
**prosecution [1]** 16/16
**prospective [38]** 11/5 16/9 17/15 17/18 21/6 21/23 25/15 26/11 29/4 29/12 30/4 30/6 33/20 34/2 36/16 36/21 40/5 40/11 40/17 44/18 44/24 46/10 46/18 50/22 51/3 55/6 55/9 60/18 61/13 65/24 66/7 68/22 69/24 70/2 70/17 73/8 73/19 77/22
**prove [1]** 86/18
**provide [1]** 20/12
**provided [3]** 11/13 12/9 89/16
**publications [1]** 75/7
**purchased [1]** 27/17
**purely [1]** 13/21
**purportedly [1]** 84/7
**purpose [2]** 13/23 68/12
**purposes [1]** 13/21
**pursuant [1]** 92/6
**push [1]** 52/5
**put [33]** 8/8 15/3 18/15 19/7 19/23 21/20 23/1 23/13 25/17 28/16 30/21 31/3 34/16 34/25 38/2 39/9 42/7 42/21 45/23 46/1 47/19 52/17 56/8 56/12 56/15 57/14 58/14 62/7 62/25 67/1 81/3 84/11 85/22
**putting [1]** 67/5
**PW [1]** 61/12

**Q**

**Quadra [1]** 57/7
**Quanta [1]** 81/9
**quarter [1]** 49/22
**question [14]** 11/6 18/24 22/19 23/1 23/11 26/2 31/9 31/10 37/14 52/12 62/24 78/2 78/12 78/22
**questionnaire [13]** 11/6 17/23 24/16 29/17 30/12 34/7 37/1 40/25 45/4 46/23 51/8 55/16 61/20
**questionnaires [2]** 15/11 16/2
**questions [28]** 14/12 15/15 20/10 21/14 22/3 26/5 26/6 26/16 28/23 33/7 36/6 40/1 46/6 59/8 61/6 61/16 68/11 68/20 69/5 69/20 70/18 71/1 71/2 73/23 73/24 73/25 74/5 78/16
**quick [1]** 15/25
**quickly [1]** 11/8
**quite [4]** 8/25 22/7 57/19 61/2
**quote [3]** 81/12 81/15 89/4

**R**

**raise [3]** 13/12 70/19 75/14
**raised [1]** 78/1
**Raja [1]** 76/18
**rate [6]** 7/18 8/6 71/15 80/19 80/20 82/22
**rather [4]** 9/14 51/24 78/14 81/20
**re [7]** 2/3 5/6 8/4 9/15 11/2 66/14 67/20
**read [7]** 12/10 12/24 74/11 74/14 75/2 75/12 84/14
**ready [3]** 6/9 6/11 6/16
**real [3]** 2/16 15/25 54/3
**really [12]** 24/25 27/4 28/8 28/14 36/7 44/7 45/15 52/1 53/25 63/9 67/8 69/23
**reasonable [3]** 71/16 80/24 81/3
**Rebecca [1]** 75/16
**recall [1]** 9/3
**receivable [2]** 64/22 64/25
**receivables [1]** 62/16
**received [3]** 6/18 34/24 39/20
**recent [4]** 45/9 45/17 46/1 49/24
**recently [1]** 57/8
**recess [7]** 14/12 16/5 16/6 66/6 77/21 90/24 90/25
**recited [1]** 15/1
**recommendation [1]** 74/16
**record [7]** 5/5 12/24 13/25 14/11 66/11 77/23 79/24
**redact [2]** 89/17 90/15
**redacted [2]** 89/16 89/19
**redactions [1]** 10/21
**Reed [1]** 75/17
**Reed-Arthurs [1]** 75/17
**refer [2]** 88/14 89/20
**reference [3]** 89/5 89/17 90/15
**references [3]** 10/20 88/10 89/18
**referred [3]** 71/6 82/12 83/17
**reflect [1]** 83/7
**reflection [1]** 69/3
**refurbishment [1]** 62/4
**regard [5]** 17/24 22/5 37/17 41/1 62/25
**regarding [1]** 89/8
**regardless [2]** 69/19 81/23
**regular [1]** 66/5
**regulations [1]** 92/11
**reimbursement [1]** 64/1
**relate [1]** 89/10
**relates [2]** 80/4 80/6
**releases [1]** 49/23
**relevant [1]** 81/12
**relies [1]** 90/5
**rely [2]** 88/7 89/24
**relying [1]** 83/1
**remain [1]** 79/16
**remember [1]** 26/2
**remind [1]** 11/15
**remove [1]** 87/17
**rent [1]** 26/23
**repair [1]** 62/17
**repairs [1]** 62/17
**repeat [2]** 18/24 22/18
**rephrase [1]** 37/13
**replacement [1]** 62/5
**report [2]** 83/14 83/24
**reported [2]** 91/1 92/8
**reporter [2]** 67/11 92/16
**REPORTER'S [1]** 1/15
**reports [3]** 14/4 49/11 78/14
**represent [12]** 19/14 23/20 32/7 35/16 38/18 42/15 48/6 53/5 56/23 63/19 67/17 77/7
**representative [7]** 3/4 3/5 5/13 5/19 66/18 67/18 67/25
**representatives [1]** 67/14
**representing [1]** 16/22
**request [2]** 10/17 13/5
**requesting [1]** 13/10
**required [2]** 19/7 34/25
**requirements [1]** 47/9
**requires [2]** 47/14 49/23
**research [1]** 74/20
**researching [1]** 74/15
**respect [8]** 12/19 12/22 13/5 80/1 80/15 86/9 88/3 88/6
**respecting [1]** 77/16
**respond [2]** 6/21 85/8
**responded [1]** 7/2
**response [4]** 6/24 17/23 73/25 78/2
**responses [2]** 21/16 21/19
**resume [2]** 76/22 78/7
**retired [2]** 59/9 59/13
**return [2]** 64/2 78/11
**revenue [6]** 82/17 83/16 83/19 84/17 85/3 85/25
**revenue.' [1]** 81/24
**revenues [8]** 80/25 81/18 81/22 82/1 83/17 84/19 85/10 85/16
**revised [1]** 10/23
**Richard [1]** 76/20
**right [27]** 6/14 7/1 8/5 8/20 8/21 9/20 15/17 15/24 24/18 27/23 31/17 31/18 35/3 52/5 56/9 59/9 62/19 65/11 66/25 67/3 77/14 79/6 83/4 83/13 85/11 87/19 87/21
**RKN [1]** 14/20
**RN [1]** 70/3
**Robert [1]** 76/11
**role [5]** 67/6 67/7 67/9 69/19 75/23
**Rollins [1]** 76/12
**room [12]** 21/4 25/14 29/3 33/19 36/15 40/3 44/17 50/21 55/5 60/16 65/23 69/7
**Rothkopf [1]** 76/12
**royalties [1]** 83/7
**royalty [12]** 71/16 80/19 81/3 83/10 83/24 83/25 85/2 85/25 86/16 86/17 87/4 87/14
**RPR [1]** 1/19
**RRR [1]** 14/21
**rude [1]** 77/17
**rule [6]** 28/17 80/17 81/17 82/19 83/2 90/9
**ruled [3]** 88/23 88/25 90/11
**rules [2]** 24/2 42/22
**ruling [4]** 14/1 89/21 89/23 89/25
**rulings [2]** 12/23 90/11
**run [1]** 49/19
**running [3]** 13/5 13/10 45/16
**Russell [1]** 76/13
**Russell-Clarke [1]** 76/13

**S**

**SACV [3]** 1/11 5/2 66/8
**SACV-20-00048-JVS [3]** 1/11 5/2 66/8
**safe [1]** 10/8
**said [22]** 21/10 21/20 25/19 25/21 26/1 27/5 27/8 27/13 27/14 35/9 38/23 48/16 54/2 54/3 54/9 56/25 57/14 60/23 61/10 63/22 83/25 88/8
**sale [1]** 71/12
**sales [3]** 62/22 64/9 64/10
**salespeople [1]** 62/21
**same [16]** 11/20 12/12 36/10 44/9 45/16 51/25 52/7 56/9 62/24 63/12 69/22 80/15 81/5 85/16 86/9 86/14
**same with [1]** 80/15
**Samsung [1]** 53/17
**Santa [3]** 1/16 1/20 5/1
**SARAH [5]** 2/11 6/4 66/19 68/4 79/23
**Sarwar [1]** 76/13
**sat [1]** 69/11
**satisfaction [1]** 37/20
**satisfied [1]** 38/24

## S


**savvy [1]** 32/15
**saw [1]** 78/9
**say [18]** 25/20 31/15 37/20 41/22 50/10 50/13 52/4 52/15 56/3 57/1 60/21 60/21 62/17 64/3 69/18 76/15 81/14 81/25
**saying [3]** 28/8 41/21 85/15
**says [5]** 7/13 7/24 25/17 81/15 84/14
**scope [1]** 13/14
**scribbled [1]** 79/17
**SCRUGGS [4]** 3/3 5/14 67/19 75/17
**seal [3]** 10/16 10/22 10/24
**seat [17]** 69/24 70/3 70/4 70/5 70/6 70/7 70/8 70/9 70/10 70/11 70/12 70/13 70/14 70/15 70/16 73/19 73/21
**seated [4]** 23/12 34/22 47/16 62/6
**second [1]** 72/16
**seconds [1]** 12/25
**Section [1]** 92/6
**see [13]** 11/8 11/10 12/14 33/21 39/3 41/21 41/24 47/21 56/14 71/7 80/7 80/9 88/22
**seeking [1]** 85/19
**seeks [2]** 71/15 81/3
**seem [1]** 80/24
**seems [3]** 6/21 34/13 34/15
**seen [3]** 14/2 76/5 78/15
**sees [1]** 13/22
**SEFFENS [4]** 1/19 67/11 92/15 92/16
**selected [1]** 79/2
**selection [2]** 4/5 6/2
**Sellers [1]** 76/13
**selling [1]** 71/12
**SELNA [1]** 1/8
**SELWYN [5]** 2/14 5/24 10/18 66/19 68/3
**send [1]** 69/13
**sent [2]** 62/4 64/1
**sentence [1]** 7/16
**separate [3]** 71/8 80/10 86/13
**serially [1]** 13/12
**serve [3]** 69/6 69/20 82/3
**service [2]** 24/24 69/23
**serving [3]** 66/24 68/14 69/8
**set [5]** 16/2 20/8 79/11 80/10 80/17
**SG [1]** 14/20
**Shaltis [1]** 76/19
**Shapiro [1]** 75/19
**share [2]** 74/7 76/23
**shareholder [2]** 29/21 29/25
**SHARON [4]** 1/19 67/11 92/15 92/16
**she [13]** 26/22 28/9 28/12 28/13 33/23 33/24 46/12 46/12 78/2 83/17 84/1 85/5 86/24
**She'll [2]** 46/15 66/3
**She's [1]** 78/6
**SHEILA [4]** 2/4 5/8 66/14 67/21
**Shirley [1]** 76/18
**short [2]** 69/13 69/16
**shortly [2]** 68/7 68/10
**shot [1]** 42/25
**should [14]** 7/14 7/17 7/17 12/12 14/8 15/17 21/9 53/23 62/17 64/3 68/14 70/23 77/3 89/20
**shouldn't [2]** 69/2 84/11
**show [6]** 84/4 84/7 84/11 84/12 84/24 88/18
**showing [2]** 81/2 84/5
**shown [2]** 80/1 80/21
**side [8]** 6/23 16/17 28/4 31/7 31/11 51/23 68/20 68/22
**sidebar [1]** 78/13
**sight [2]** 22/15 41/17
**simply [3]** 7/4 68/16 69/10
**since [3]** 27/18 76/4 87/7
**sincerely [1]** 61/6
**singular [2]** 7/18 7/19
**sir [52]** 16/24 17/12 18/1 19/24 20/2 20/25 21/1 21/3 22/3 23/17 23/22 24/14 25/12 25/13 26/12 29/1 29/2 34/3 35/11 35/13 35/21 36/3 36/12 36/13 36/22 38/14 39/15 39/25 40/2 46/19 47/25 48/9 48/13 48/24 50/13 50/19 51/6 53/8 53/15 54/5 54/7 55/1 56/25 58/25 59/2 59/5 59/10 60/13 60/15 73/10 73/23 74/2
**sister [3]** 26/21 27/15 28/9
**sit [1]** 11/8
**sitting [2]** 10/10 51/21
**situation [3]** 27/4 27/13 84/23
**six [1]** 54/19
**skew [2]** 81/22 82/8
**skill [1]** 71/21
**slide [9]** 80/3 81/2 81/5 81/6 84/5 85/19 86/9 86/10 86/14
**slides [9]** 78/23 79/11 79/13 79/22 79/25 80/4 82/8 84/3 85/24
**slight [1]** 24/10
**slightly [1]** 45/21
**sliver [1]** 81/4
**small [2]** 19/20 82/9
**SMK [1]** 14/20
**SMP [1]** 14/20
**so [121]**
**software [7]** 18/10 34/12 34/13 47/4 48/14 49/7 49/8
**solely [5]** 31/1 34/23 42/8 47/17 63/1
**Solutions [1]** 62/14
**some [44]** 8/25 10/5 10/11 10/21 13/19 18/9 18/9 22/7 26/17 29/18 30/13 32/20 34/8 34/10 34/17 35/24 37/2 41/1 46/24 49/10 49/14 57/24 57/25 61/16 61/21 62/11 62/11 62/15 62/16 63/25 64/1 64/20 65/11 68/11 68/14 68/16 68/17 69/20 70/18 70/22 71/1 78/16 78/23 86/7
**somebody [1]** 69/7
**someone [1]** 9/17
**something [3]** 31/15 49/18 49/25
**sometimes [2]** 34/11 34/12
**soon [2]** 10/15 14/10
**sorry [9]** 15/19 22/18 25/24 37/5 64/18 64/19 79/18 80/12 86/10
**sounds [14]** 9/10 10/8 23/23 32/9 33/11 35/18 39/5 42/18 42/21 49/14 50/1 64/6 65/13 65/16
**source [2]** 50/2 50/7
**SOUTHERN [2]** 1/6 85/12
**speaking [1]** 17/5
**specific [4]** 75/22 89/25 90/1 90/20
**specifically [2]** 17/6 88/24
**spoke [1]** 55/7
**spoken [1]** 15/22
**SPRANKLING [2]** 2/15 6/7
**staff [2]** 67/10 74/10
**stage [1]** 88/16
**standard [1]** 9/14
**standing [1]** 12/21
**start [19]** 9/13 11/7 12/11 14/24 18/20 19/3 22/20 32/23 36/8 42/1 44/7 47/1 52/7 52/13 54/9 58/6 60/21 66/5 80/3
**starting [11]** 18/22 19/16 19/19 20/2 21/10 23/23 25/21 39/6 51/24 58/2 65/17
**starts [11]** 19/1 31/7 31/11 35/7 42/2 42/3 42/5 51/23 52/15 56/6 63/11
**state [3]** 2/12 5/4 66/10
**statement [10]** 9/21 11/15 11/17 11/19 12/1 12/10 20/7 70/25 72/2 88/14
**statements [10]** 6/23 9/25 11/14 89/5 89/9 89/12 89/13 90/1 90/12 90/20
**STATES [7]** 1/4 1/19 67/1 71/12 71/13 92/7 92/11
**steer [1]** 77/10
**stenographically [1]** 92/8
**Stephen [5]** 5/14 67/19 75/17 75/17 76/17
**STEVEN [3]** 3/3 76/10 76/18
**still [9]** 12/2 20/1 27/21 27/22 32/22 34/14 48/11 48/12 77/2
**stock [2]** 72/13 73/2
**stop [1]** 76/22
**store [2]** 51/12 53/25
**stories [1]** 75/2
**story [2]** 59/21 85/4
**straight [3]** 27/13 27/14 35/4
**stray [1]** 8/20
**street [4]** 1/20 2/5 2/12 85/11
**stricken [2]** 21/10 87/7
**strictly [4]** 33/8 39/22 60/4 61/9
**strike [4]** 13/7 25/22 40/7 60/25
**strong [16]** 17/24 22/4 26/17 29/18 30/13 30/16 31/19 37/2 37/11 37/12 37/16 37/19 41/1 46/24 61/21 62/11
**strongly [2]** 29/8 34/16
**structuring [1]** 67/5
**struggling [1]** 26/23
**sub [1]** 80/8
**subject [2]** 14/1 14/4
**submitted [2]** 88/5 89/1
**such [4]** 42/2 81/21 82/1 88/15
**suggest [1]** 8/7
**suggestion [1]** 8/3
**suggestions [1]** 69/15
**suit [1]** 71/17
**Suite [4]** 1/20 2/8 2/16 2/22
**Sumbul [1]** 76/9
**summary [2]** 13/6 71/1
**super [2]** 32/15 34/16
**Superior [1]** 69/11
**support [1]** 89/6
**supposed [1]** 58/6
**sure [15]** 8/18 12/18 18/25 22/20 30/23 31/10 52/1 54/24 59/3 60/2 60/17 64/22 70/20 78/3 90/18
**surprised [1]** 88/21
**SW [1]** 14/21
**SWAROOP [6]** 2/4 5/8 66/14 67/21 88/20 90/7
**switch [1]** 28/14
**switched [1]** 48/11
**sworn [1]** 70/2
**system [1]** 67/7


## T


**table [1]** 80/18
**tag [1]** 80/22
**take [18]** 6/20 7/1 10/25 11/24 12/25 14/8 14/23 16/21 18/11 47/11 61/20 66/4 69/3 77/23 78/25 79/1 87/10 87/12
**talk [6]** 14/14 27/1 28/11 77/15 85/3 88/12
**talked [3]** 15/18 16/24 86/15
**talking [4]** 24/24 27/3 60/22 84/20
**taught [1]** 54/16
**technically [1]** 32/15
**Technologies [1]** 85/12
**technology [6]** 32/21 55/23 57/25 58/3 71/22 74/25
**Teddy [1]** 75/17
**tell [32]** 7/9 10/7 17/5 18/2 18/7 18/18 22/5 24/20 26/19 29/20 30/14 32/12 34/9 35/3 35/22 37/3 38/10 38/21 41/6 43/7 45/5 47/2 49/4 51/10 54/11 57/16 59/21 61/23 62/12 63/21 68/6 72/15
**ten [4]** 6/25 11/7 11/10 14/23
**ten minutes [1]** 6/25
**TERHUFEN [2]** 3/6 6/8
**terms [4]** 38/25 49/15 68/2 74/17
**testifying [1]** 89/13
**testimony [7]** 14/1 21/8 39/19 42/20 60/6 71/7 88/15
**than [11]** 9/14 11/10 27/21 29/8 30/18 51/15 51/24 81/15 81/20 84/21 85/5
**thank [79]** 6/14 7/3 8/21 8/22 14/11 15/5 17/12 17/14 21/1 21/3 25/12 25/13 28/21 29/1 29/2 29/15 30/1 30/3 30/9 30/11 31/14 32/4 33/2 33/18 34/5 35/11 36/1 36/5 36/13 36/14 38/14 38/20 39/13 39/25 40/23 42/11 42/17 43/2 44/14 44/15 44/16 45/2 46/4 46/9 46/21 47/23 48/7 48/22 50/19 50/20 51/1 51/6 53/1 54/5 55/1 55/4 55/14 56/18 59/2 60/1 60/13 60/15 65/4 65/20 65/22 66/22 67/22 68/4 68/5 73/6 73/7 74/22 76/1 76/8 86/3 86/6 87/22 90/16 90/23
**thanks [5]** 17/21 22/1 26/14 36/24 40/21
**that [336]**
**that's [24]** 6/14 10/1 10/3 14/7 16/7 20/23 20/24 27/19 30/18 33/15 35/25 39/3 55/19 58/23 68/24 77/8 81/1 82/7 82/13 83/3 83/13

## T

**that's... [3]** 83/20 85/5 86/1
**their [28]** 18/3 37/25 38/24 41/5 41/9 43/25 47/5 47/6 57/2 57/18 57/19 57/21 58/18 59/17 59/22 59/22 59/22 62/16 62/21 64/10 67/14 71/2 77/7 77/7 77/9 80/23 82/9 83/16
**them [29]** 10/7 11/7 13/12 14/22 15/7 17/2 27/14 27/20 30/15 30/16 30/24 31/20 32/17 34/14 41/7 41/14 45/10 47/14 59/21 68/11 69/8 74/10 75/13 75/13 78/19 79/1 79/4 79/19 80/13
**themselves [1]** 67/13
**then [23]** 8/19 11/11 16/1 24/23 27/18 35/10 36/20 40/9 47/9 51/13 52/6 54/2 66/5 68/1 73/19 76/2 80/21 81/25 85/4 87/7 87/12 87/15 87/23
**theory [2]** 81/18 82/10
**there [35]** 6/25 7/7 8/4 8/7 8/10 8/13 10/9 10/11 10/16 10/19 11/8 13/24 14/19 15/12 20/11 24/22 25/20 29/24 29/24 31/21 32/3 34/16 50/14 68/17 74/17 80/17 80/25 82/11 82/20 83/6 84/2 85/9 88/14 89/25 90/19
**there's [9]** 8/20 14/19 50/14 64/10 79/3 79/4 85/11 87/3 87/13
**these [11]** 14/2 76/16 80/16 82/8 85/24 88/25 89/5 89/9 89/11 90/11 90/19
**theverge.com [1]** 75/10
**they [39]** 11/5 11/6 13/14 14/17 17/4 18/4 21/18 24/24 26/24 27/3 27/4 27/5 27/5 27/9 27/14 27/14 27/21 38/24 47/6 59/19 62/4 63/11 67/1 67/2 67/6 69/9 73/12 77/14 77/15 80/16 80/23 81/2 83/15 83/16 84/5 84/11 84/23 86/22 89/9
**They'll [1]** 61/16
**they're [13]** 53/25 61/25 62/18 64/2 77/16 77/17 77/18 79/2 81/1 82/7 84/25 85/2 85/3
**thing [4]** 13/17 51/14 54/3 77/25
**things [14]** 12/15 18/6 26/17 27/2 28/12 30/16 47/14 54/17 76/23 79/20 82/25 83/23 84/6 84/12
**think [71]** 6/25 10/9 11/20 14/14 15/17 18/15 18/17 18/18 21/18 24/16 24/24 26/1 26/5 28/16 28/19 29/7 29/25 30/21 31/3 31/5 31/7 31/13 32/22 32/25 34/20 35/6 38/2 39/3 40/12 41/11 41/16 43/9 45/17 45/20 47/15 47/19 48/17 51/18 52/17 55/25 56/5 56/12 57/15 57/21 58/1 58/13 58/17 59/1 60/23 61/2 61/6 62/7 62/24 64/24 65/3 65/3 66/1 67/4 70/23 72/14 73/3 76/15 76/21 78/2 79/3 79/4 80/10 83/22 84/9 88/13 89/19
**thinking [2]** 23/11 67/6
**Thirty [1]** 57/4
**this [125]**
**THOMAS [1]** 2/15
**those [32]** 9/2 11/9 13/13 14/4 14/14 14/21 15/7 16/1 18/11 18/15 19/7 19/24 21/17 21/20 25/17 31/23 37/7 37/21 38/2 38/10 39/9 42/23 49/20 52/18 62/7 64/24 65/16 74/1 77/20 78/25 79/8 85/1
**thought [8]** 42/8 51/13 57/1 57/14 66/25 68/23 69/5 88/22
**thoughts [3]** 17/7 38/11 77/20
**three [2]** 68/22 79/4
**through [6]** 9/2 14/18 28/10 29/17 71/18 77/13
**throughout [1]** 77/12
**Thursday [2]** 10/7 10/12
**Tim [1]** 75/20
**time [9]** 11/7 22/7 26/22 26/25 28/10 53/25 66/23 69/24 75/4
**Title [1]** 92/7
**TKC [2]** 26/10 29/11
**TN [3]** 14/20 70/12 75/21
**Tobias [1]** 76/9
**today [13]** 17/22 22/2 26/15 29/16 30/2 34/6 36/25 45/3 46/22 51/7 66/22 67/8 73/7
**together [1]** 67/5
**told [2]** 17/2 24/6
**Tom [1]** 6/6
**tomorrow [1]** 77/13
**too [5]** 10/1 31/17 42/17 61/17 78/9
**took [2]** 51/12 53/24
**top [2]** 49/10 70/20
**topics [1]** 75/1
**total [2]** 79/5 85/18
**totality [2]** 21/7 28/3
**toward [1]** 62/11
**towards [3]** 41/7 64/20 64/21
**Trade [1]** 89/1
**traded [1]** 51/14
**transcript [4]** 1/9 1/15 92/8 92/10
**transferring [1]** 53/17
**translate [1]** 87/10
**treat [3]** 44/8 48/19 54/21
**trial [30]** 1/12 5/14 5/19 6/11 9/9 12/21 20/15 20/21 25/7 25/8 28/18 31/1 33/9 33/9 33/10 33/12 34/24 36/11 39/20 42/1 50/6 54/21 56/15 60/8 66/25 68/3 69/13 69/16 71/6 82/16
**tried [1]** 27/13
**Tripodi [1]** 76/20
**trouble [1]** 40/14
**true [2]** 69/18 92/7
**truly [1]** 69/23
**trust [2]** 69/22 79/2
**try [6]** 11/21 23/5 25/19 28/10 50/6 50/17
**trying [8]** 27/5 28/13 39/10 62/20 68/16 80/23 81/1 82/7
**TUCKER [2]** 3/6 6/8
**TUESDAY [1]** 5/1
**TV [1]** 30/18
**two [11]** 8/7 8/10 12/6 26/16 26/22 61/25 78/19 79/4 79/25 82/21 83/23
**two days [1]** 12/6
**two years [1]** 26/22
**type [6]** 43/20 72/6 72/9 81/7 82/17 88/25
**types [4]** 49/16 59/18 61/5 89/11
**typos [1]** 8/10

## U

**U.S [1]** 92/16
**Ueyn [1]** 75/19
**unbiased [1]** 38/6
**uncomfortable [1]** 68/16
**under [7]** 11/19 11/20 82/23 85/1 88/11 89/2 89/3
**underlying [1]** 88/9
**understand [9]** 10/17 16/12 28/13 52/20 59/9 75/24 80/1 88/8 88/12
**Understood [10]** 25/1 44/2 50/19 54/20 59/24 65/20 83/4 83/14 87/6 87/16
**unfavorable [1]** 31/23
**Uniloc [4]** 81/20 82/11 82/13 85/5
**unit [5]** 80/19 84/10 84/17 84/22 87/10
**UNITED [7]** 1/4 1/19 67/1 71/11 71/12 92/7 92/11
**units [1]** 85/16
**unreasonable [1]** 83/25
**unseen [2]** 22/15 41/17
**until [3]** 64/2 77/2 77/21
**up [30]** 6/20 7/1 11/7 11/10 11/24 13/4 14/8 14/22 15/7 15/15 15/24 16/1 20/7 27/10 27/13 27/14 38/10 68/22 74/24 75/1 75/4 77/13 78/25 79/1 79/11 79/16 79/19 80/10 81/11 84/12
**updates [1]** 7/5
**updating [1]** 34/11
**upgrade [1]** 55/23
**upset [1]** 26/25
**us [19]** 6/2 13/4 18/18 26/24 26/24 27/5 27/9 28/11 28/13 32/12 35/3 38/10 38/21 49/23 50/8 57/16 62/12 74/8 79/9
**use [15]** 9/8 9/15 18/3 18/5 18/7 18/8 34/14 34/15 41/4 41/9 43/17 43/22 84/14 84/24 86/4
**used [10]** 10/21 26/3 43/12 43/16 43/25 48/10 59/15 59/21 62/4 87/5
**user [4]** 22/7 37/11 37/18 38/23
**uses [3]** 21/12 32/20 61/4
**using [3]** 22/6 22/8 32/16

## V

**valid [1]** 71/25
**value [7]** 80/16 81/17 82/2 83/1 83/9 83/11 84/25
**Vargas [1]** 67/11
**various [1]** 20/12
**vein [1]** 14/5
**vendetta [2]** 28/6 29/9
**vendor [1]** 62/17
**version [2]** 12/6 89/16
**versus [10]** 5/3 8/5 47/14 66/9 68/9 75/1 81/9 82/13 85/5 85/12
**very [34]** 6/10 10/8 10/9 10/11 10/21 20/6 21/1 25/25 26/25 27/22 28/12 33/5 36/13 43/4 44/14 44/22 46/9 49/1 50/5 54/8 54/13 54/14 54/15 55/1 55/21 59/7 60/1 60/3 65/8 65/20 68/4 69/4 79/10 84/14
**Vice [2]** 3/2 5/11
**Vice-President [2]** 3/2 5/11
**video [2]** 9/16 59/15
**view [1]** 58/15
**Vijay [1]** 75/16
**violate [1]** 80/16
**visit [1]** 70/21
**voir [2]** 12/11 66/5
**VOL [2]** 1/12 91/1
**voting [1]** 66/23
**vs [1]** 1/10

## W

**wait [1]** 45/13
**WALTER [2]** 3/8 6/8
**want [16]** 6/14 9/8 11/9 12/15 13/4 13/25 18/25 20/7 27/7 54/3 65/2 66/22 68/23 77/5 78/3 84/24
**wanted [3]** 31/21 55/23 78/24
**wanting [1]** 9/5
**warranty [4]** 26/25 27/7 27/10 28/12
**Warren [1]** 76/18
**was [52]** 7/4 7/21 16/21 18/4 24/22 24/23 24/25 26/2 26/22 26/22 26/25 26/25 27/15 28/12 28/13 28/14 31/9 41/10 45/11 45/15 49/24 53/18 54/15 54/19 60/22 61/6 62/3 62/3 63/22 64/18 69/12 71/8 71/22 74/15 74/17 75/5 77/25 78/2 78/10 82/16 83/2 83/17 83/19 84/14 84/16 85/15 87/8 88/4 89/17 90/9 90/10 90/10
**Washington [1]** 2/19
**wasn't [3]** 45/14 51/14 85/14
**watch [17]** 39/3 57/10 57/11 71/14 80/21 80/22 84/6 84/7 84/9 84/10 84/12 84/25 85/23 87/11 87/18 89/6 89/14
**watches [2]** 71/13 74/15
**way [15]** 9/1 18/19 23/6 34/19 41/12 45/18 47/14 51/19 54/19 57/6 72/4 72/5 72/8 81/16 86/22
**Waydo [2]** 75/17 76/17
**we [158]**
**we'd [2]** 78/14 78/15
**we'll [10]** 40/9 66/5 68/7 68/10 69/24 73/19 76/22 77/21 78/7 87/17
**we're [9]** 49/24 58/6 64/4 67/18 68/6 76/15 76/21 79/15 90/24
**we've [4]** 64/2 79/1 79/17 89/16
**Webster [5]** 76/18 83/23 86/10 86/12 86/18
**week [2]** 10/7 13/18
**weekly [1]** 49/19
**welcome [3]** 5/12 5/15 65/5
**well [28]** 18/9 18/10 18/18 23/6 23/10 24/17 25/16 34/12 37/13 38/9 40/21 41/13 43/13 48/10 55/13 61/5 62/24 63/6 64/8 73/4 79/6 83/23 84/16 84/19 87/3 87/13 90/4 90/21
**went [4]** 27/1 27/8 45/15 74/18
**were [19]** 13/11 13/14 14/4 19/7 27/3 28/10 31/17 59/18 69/4 69/8 79/18 79/20 88/21 89/1 89/1 89/2 90/2 90/11 90/20
**weren't [2]** 27/4 27/5
**West [1]** 1/20
**what [50]** 12/20 13/23 15/19 16/15 18/7 26/7

## W

**what... [44]** 28/10 31/9 31/25 32/12 35/22 38/24 41/21 41/24 43/15 43/20 43/22 48/16 49/24 52/2 53/14 53/20 54/24 57/4 57/9 58/10 59/12 59/18 62/8 63/4 64/18 67/6 68/6 68/21 72/22 75/7 75/24 80/21 81/1 82/7 83/20 84/9 84/21 85/5 85/18 85/19 85/23 85/24 86/18 90/10
**what's [2]** 80/17 84/18
**whatever [3]** 20/19 47/8 50/14
**when [19]** 7/21 23/11 27/3 42/18 43/24 45/8 45/15 54/19 60/22 61/8 71/17 71/18 71/22 74/15 75/5 78/11 78/18 78/24 86/22
**whenever [1]** 47/8
**where [10]** 7/9 7/24 13/24 17/2 49/9 53/23 82/18 84/5 88/16 88/16
**whether [14]** 9/12 22/4 31/10 32/20 35/4 56/16 69/19 72/6 72/9 86/22 88/7 89/9 89/24 90/1
**which [16]** 7/14 13/14 32/16 39/1 47/9 71/5 71/8 78/5 80/16 81/16 82/1 82/5 82/12 85/17 85/21 85/24
**while [2]** 6/22 88/12
**who [10]** 5/19 11/5 14/17 29/23 42/2 49/11 54/14 67/6 68/1 68/14
**who's [1]** 62/16
**whole [3]** 78/15 82/22 83/8
**whose [1]** 14/3
**why [13]** 18/2 29/3 29/10 54/11 62/12 62/20 66/4 78/18 79/1 79/6 81/12 87/4 90/21
**WIGMORE [4]** 2/18 5/22 66/18 68/3
**will [48]** 5/14 5/18 6/1 7/25 9/4 10/1 10/14 10/25 11/6 11/7 11/10 11/11 11/16 11/18 11/20 11/21 12/15 13/14 13/18 14/1 14/2 14/3 14/11 14/21 14/23 15/4 16/2 16/5 20/12 24/1 27/6 27/6 29/9 30/2 30/25 33/24 42/20 48/13 61/11 68/1 68/20 69/17 71/6 79/8 80/1 86/19 86/23 87/2
**willful [2]** 6/19 7/21
**willfulness [1]** 7/7
**William [1]** 76/20
**Williams [1]** 76/14
**WILMER [4]** 2/12 2/15 2/18 5/16
**Wilson [1]** 76/20
**wishes [2]** 77/17 77/18
**withdrawal [1]** 12/3
**withdrawing [1]** 6/19
**within [1]** 89/7
**witness [4]** 39/18 52/22 60/5 77/11
**witnesses [15]** 14/3 19/9 20/11 20/16 25/6 33/9 34/24 38/4 42/9 45/25 47/18 47/21 56/14 68/2 75/12
**WL [1]** 85/13
**WM [1]** 14/20
**won't [2]** 6/22 88/5
**wonderful [1]** 9/10
**word [4]** 8/4 8/14 8/20 77/8
**words [1]** 26/3
**work [20]** 12/7 17/3 29/24 31/21 32/3 34/12 47/10 49/5 49/12 51/12 54/2 59/12 62/13 62/13 62/23 63/24 64/9 64/15 70/20 72/18
**worked [3]** 29/24 54/17 59/16
**working [7]** 9/1 49/10 49/11 49/24 55/20 56/25 57/2
**Workout [2]** 7/8 7/13
**works [1]** 47/4
**worry [1]** 61/17
**would [79]** 6/20 7/6 7/20 7/23 10/24 11/19 12/21 12/25 12/25 13/5 13/19 15/20 15/23 19/3 19/12 19/24 20/1 21/4 21/10 22/9 22/15 23/10 24/8 25/13 25/21 26/3 26/19 28/13 29/10 33/19 33/22 34/19 35/10 36/15 37/3 40/2 41/12 41/17 44/8 44/17 45/18 45/20 50/6 50/8 50/17 50/21 51/19 52/2 52/4 52/9 52/15 54/9 54/21 54/22 55/5 56/1 58/11 58/24 60/16 60/21 60/21 65/3 65/17 65/23 69/6 70/19 71/20 73/25 74/6 75/14 78/24 79/11 81/10 81/11 87/6 88/13 88/17 89/16 90/2
**wouldn't [1]** 27/9
**writing [1]** 6/21
**written [1]** 75/6
**wrote [1]** 69/16

## Y

**yeah [26]** 30/23 30/24 37/9 40/14 41/24 45/7 47/3 48/10 49/7 49/25 50/12 50/18 52/19 52/23 56/10 57/23 58/23 62/22 63/3 63/8 64/8 64/13 64/15 73/3 74/24 76/3
**year [2]** 49/22 63/25
**years [11]** 26/22 44/3 54/15 54/19 55/20 57/1 57/4 57/5 61/25 67/4 69/11
**Yep [1]** 70/24
**yes [64]** 14/19 15/2 16/23 18/1 18/13 19/22 20/25 22/3 22/7 22/13 22/14 22/24 23/8 23/14 23/25 24/19 25/11 25/21 28/6 29/19 33/14 33/17 35/2 35/5 35/21 36/12 38/1 38/12 38/13 39/8 40/4 41/20 41/25 42/6 42/10 42/24 43/1 43/10 44/5 44/10 44/13 45/22 47/13 47/22 48/2 48/21 49/17 50/4 51/17 52/25 53/10 54/24 54/25 60/20 61/10 63/5 63/14 63/24 65/19 67/16 73/10 75/21 79/14 88/21
**yet [2]** 41/17 63/10
**you [451]**
**you'd [7]** 34/8 45/4 46/25 51/9 52/20 55/17 78/11
**you'll [4]** 34/22 34/25 47/17 69/22
**you're [22]** 34/22 35/18 38/10 41/21 41/24 47/16 52/21 58/14 59/9 62/6 64/6 65/5 67/8 69/2 73/1 74/6 74/7 76/25 77/13 84/19 87/3 87/14
**you've [10]** 22/17 22/21 26/18 38/9 43/12 52/11 56/25 65/10 65/10 75/13
**your [183]**
**yourself [2]** 33/11 69/21

## Z

**zealous [1]** 77/9
**zealously [1]** 77/7
**zero [2]** 86/16 86/17