MARK D. SELWYN, SBN 244180
mark.selwyn@wilmerhale.com
THOMAS G. SPRANKLING, SBN 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel.: 650.858.6000 / Fax: 650.858.6100

AMY K. WIGMORE, *pro hac vice*
amy.wigmore@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: 202.663.6000 / Fax: 202.663.6363

JOSEPH J. MUELLER, *pro hac vice*
joseph.mueller@wilmerhale.com
SARAH R. FRAZIER, *pro hac vice*
sarah.frazier@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: 617.526.6000 / Fax: 617.526.5000

[Counsel appearance continues on next page]

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

Plaintiffs,

v.

APPLE INC.,
a California corporation,

Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PREJUDGMENT AND POST-JUDGMENT INTEREST**

Hearing: Oct. 5, 2026
Time: 1:30 p.m.
Courtroom: 10C

Hon. James V. Selna

BRIAN A. ROSENTHAL, *pro hac vice*
brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

KENNETH G. PARKER, SBN 182911
ken.parker@haynesboone.com
HAYNES AND BOONE, LLP
660 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Tel.: 650.949.3014 / Fax: 949.202.3001

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THE COURT SHOULD NOT AWARD ANY PREJUDGMENT INTEREST .......... 2

II. IN THE ALTERNATIVE, ANY PREJUDGMENT INTEREST AWARD SHOULD BE AT THE TREASURY BILL RATE WITH ONLY SIMPLE INTEREST .......... 6

A. If Awarded, Prejudgment Interest Should Be At The Treasury Bill Rate .......... 6

B. Any Prejudgment Interest Should Not Be Compounded .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)........8

*CH2O, Inc. v. Meras Engineering, Inc.*,
2020 WL 13388230 (C.D. Cal. Apr. 6, 2020)........4

*Conceptus, Inc. v. Hologic, Inc.*,
2012 WL 44064 (N.D. Cal. Jan. 9, 2012)........1, 2, 6

*Devex Corp. v. General Motors Corp.*,
667 F.2d 347 (3d Cir. 1981)........4

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
340 F. Supp. 3d 1004 (C.D. Cal. 2018)........10

*Energy Transp. Grp. v. William Demant Holding*,
697 F.3d 1342 (Fed. Cir. 2012)........4

*General Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983)........2

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
2020 WL 2844410 (C.D. Cal. Apr. 2, 2020)........7

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997)........7

*MGA Ent. Inc. v. Harris*,
2025 WL 1416045 (C.D. Cal. Apr. 15, 2025)........4

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
2023 WL 3749992 (D.N.J. June 1, 2023)........7, 9

*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1996)........4

*Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*,
2025 WL 284643 (W.D. Tex. Jan. 23, 2025)........7

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) (en banc) ........ 9

*Schumacher v. AK Steel Corp. Retirement Accumulation Plan*,
711 F.3d 675 (6th Cir. 2013) ........ 4

*Sight Scis., Inc. v. Ivantis, Inc.*,
2026 WL 851257 (D. Del. Mar. 27, 2026) ........ 7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Products Liability Litig.*,
838 F. Supp. 2d 967 (C.D. Cal. 2012) ........ 5, 7

*Transmatic, Inc. v. Gulton Indus.*,
180 F.3d 1343 (Fed. Cir. 1999) ........ 4

*TransPerfect Global, Inc. v. MotionPoint Corp.*,
2014 WL 6068384 (N.D. Cal. Nov. 13, 2014) ........ 9

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
2018 WL 4849681 (N.D. Cal. Oct. 4, 2018) ........ 7, 8

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
809 F. Appx. 965 (Fed. Cir. 2020) ........ 2, 6, 7, 9

*Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*,
2012 WL 12868479 (S.D. Cal. Mar. 19, 2012) ........ 9

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ........ 5, 6

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*,
2009 WL 981843 (E.D. Cal. Apr. 13, 2009) ........ 10

**Docketed Case**

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
No. 3:12-cv-5501 (N.D. Cal. Oct. 25, 2012), Dkt. 1 ........ 8

**Statutes**

28 U.S.C. § 1961(a) ........ 8

**Other Authorities**

Robert A. Matthews, *Annotated Patent Digest* § 30:125.30 (2026) .........................7

## INTRODUCTION

This Court should reject Masimo's request for nearly a quarter-billion dollars in prejudgment interest. The jury's award of $634 million amounts to a staggering roughly $15 per Apple Watch for use between 2020 and 2022 of a confirmation step—specifically, the green-light double check—on the High/Low Heart Rate Notifications feature. It is undisputed that the accused feature is essentially identical to an unaccused 2017 version ***except*** for the green-light double check. Masimo correctly acknowledges that the decision to award any prejudgment interest at all is discretionary, Dkt. 2935-2 ("Mot.") at 2, and it is well within this Court's discretion to deny prejudgment interest on the grounds that "[t]he jury award was generous enough," *Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012). This Court should exercise that discretion here, as the jury award already amounts to a windfall for Masimo.

If the Court ultimately awards prejudgment interest, it should do so in a manner that avoids giving Masimo a further windfall. In particular, this Court should exercise its discretion to limit Masimo to simple interest at the 52-week Treasury Bill ("T-bill") rate, which would amount to $114,502,149. Webster Decl. ¶7. As to the rate in particular, countless courts—including federal courts in California—have awarded the T-bill rate, the Federal Circuit has affirmed that approach, and Congress itself concluded that the T-bill rate is both administrable and fair by codifying it as the appropriate rate for ***post***-judgment interest. While Masimo acknowledges that this Court's decision should be made with the purpose of ensuring that Masimo is in as good a position as it would have been had Apple "'entered into a reasonable royalty agreement,'" Mot. 4, Masimo has provided no evidence—such as information about its borrowing costs during the relevant period—for why the use of a flat 7% rate (or any rate higher than the T-bill rate) is required to serve that purpose. Where a prevailing party "articulates no reason in its opening brief for why a higher rate is appropriate," a "prejudgment interest award[] at the Treasury Bill rate" is "well within the [district] court's discretion."

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965, 977 (Fed. Cir. 2020).[1]

## ARGUMENT

### I. THE COURT SHOULD NOT AWARD ANY PREJUDGMENT INTEREST

The Supreme Court has emphasized that prejudgment interest is a form of compensatory damages, not "a penalty awarded on the basis of the defendant's conduct." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 & n.10 (1983). The award of prejudgment interest to a successful patent plaintiff is not automatic, and courts retain "some discretion" to "deny it altogether." *Id.* at 656-657. For example, prejudgment interest can be denied in a patent case when it would be a windfall in light of the size of the jury's damages award. *See Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012) (denying request in case involving $18 million verdict). A court may also "properly take into account the nature of the patent and the strength of the defendant's challenge" when "exercising its discretion to deny such interest." *General Motors*, 461 U.S. at 658 (Stevens, J., concurring).

Under the circumstances of this case, the Court should exercise its discretion to deny prejudgment interest. Over the course of this litigation, Masimo asserted that Apple infringed well over a dozen of Masimo's patents. *See, e.g.*, Dkt. 296-1 ¶¶51-222. By the time the jury issued its verdict in November 2025, the vast majority of the ultimately asserted patent claims had been held invalid at the Federal Circuit, this Court had granted Apple summary judgment on a number of Masimo's theories regarding contributory infringement, induced infringement, and infringement under the doctrine of equivalents (Dkt. 2745 at 16-17, 19-21), and Masimo had abandoned all but four related claims from expired U.S. Patent No. 10,433,776 (*see* Dkt. 2838 at 2). Based on

---

[1] Apple assumes the validity of the jury's verdict for purposes of this motion only, as Apple's appeal of that verdict remains pending. Although Apple does not oppose Masimo's request for ***post***-judgment interest at the rate prescribed by federal law, it reserves the right to challenge any such award if any aspect of the patent infringement judgment is vacated or reversed on appeal.

its finding that a single feature among a multitude in Apple Watch infringed those clams, the jury awarded $634 million in damages—roughly $15 per Watch and about 10% of Apple's margin per watch across all Watch series. *See* 11/12 AM Tr. 10; Dkt. 2531-6 at 205; *see also* Dkt. 2838 at 2 (verdict).

Adding $242.7 million to the jury's award would be an enormous windfall for Masimo rather than mere compensation, particularly because Masimo's damages theory rested on speculation. During post-trial briefing, Masimo did not dispute that (1) the accused High/Low Heart Rate Notifications feature released in 2018 was essentially identical to an unaccused version of the feature from 2017 except for the green-light double check step and (2) Masimo's damages calculation relied on the value of the feature ***as a whole*** but its experts failed to subtract ***any*** value attributable to the technology already present in the 2017 feature. *Compare* Dkt. 2882 at 22 *with* Dkt. 2876 at 41-45; *see also* 11/7 AM Tr. 26-28 (Madisetti testimony about similarity between 2017 and 2018 features). More broadly, there is no dispute that the 2017 feature was released to millions of users despite Apple's advance knowledge of the issue that Masimo claimed rendered the feature commercially non-viable—or that Masimo's experts were unable to identify a single customer complaint about the feature before trial. *See* Dkt. 2882 at 22.[2] This Court declined to grant JMOL in Apple's favor on that issue, but it did so under a supremely deferential standard that required denial of Apple's motion so long as "'more than a mere scintilla'" of evidence supported the verdict. Dkt. 2915 at 8-10.

In contrast, *General Motors* grants this Court discretion to assess whether the jury award—which, as just discussed, did not account for the value springing from the aspects of the accused feature that were present in the unaccused 2017 version—was sufficiently large to provide full compensation. Under similar circumstances, this Court

---

[2] ***During*** the trial, Masimo's counsel relied on two purported consumer complaints, which were introduced into evidence during Masimo's damages expert's re-direct examination. Dkt. 2915 at 11. This Court later held that these documents never should have been admitted, as they were never disclosed during discovery. *Id.*

exercised discretion in an intellectual property case just last year to deny prejudgment interest. *MGA Ent. Inc. v. Harris*, 2025 WL 1416045, at *2, *7-*8 (C.D. Cal. Apr. 15, 2025) (holding prejudgment interest "not appropriate" where the "law support[ed]" nearly $18 million award for common law misappropriation of name or likeness, but award "likely still provide[d] a windfall"). This Court should exercise the same kind of discretion here, where Masimo's proposed prejudgment interest award could—when combined with mandatory post-judgment interest—ultimately result in a total award of over $1 billion.

Masimo agrees that this Court "has discretion on whether to award prejudgment interest." Mot. 2. Its arguments against the exercise of that discretion in this case are unavailing.

***First***, Masimo (at 3) cites a trio of non-binding cases that it claims show that "denying interest would unfairly reward the infringer." Those cases, however, look nothing like this one. For example, *Schumacher v. AK Steel Corp. Retirement Accumulation Plan*, 711 F.3d 675, 686 (6th Cir. 2013), was an ERISA case, and Masimo provides no explanation for why it is relevant to a patent case like this one. In *CH2O, Inc. v. Meras Engineering, Inc.*, 2020 WL 13388230, at *15 (C.D. Cal. Apr. 6, 2020), the nonprevailing party "ha[d] not provided any justification" for denying prejudgment interest. And the Third Circuit's decision in *Devex Corp. v. General Motors Corp.*, 667 F.2d 347 (3d Cir. 1981), predates the Supreme Court's subsequent holding that courts retain discretion to deny prejudgment interest altogether. *See supra* p. 2.[3]

***Second***, Masimo (at 2) contends that prejudgment interest is needed because Masimo would have "reinvest[ed]" any money earned from royalties back into "research and development." But this argument is irrelevant, given that the jury awarded Masimo

[3] Masimo's other cases (at 1-2) are further afield. *See Transmatic, Inc. v. Gulton Indus.*, 180 F.3d 1343, 1344 (Fed. Cir. 1999) (***post***-judgment interest rate's applicability); *Energy Transp. Grp. v. William Demant Holding*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (no abuse of discretion to award some interest); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) (abuse of discretion to award ***too much*** interest).

more than it was reasonably entitled to as a royalty. *See supra* pp. 2-3. In any event, Masimo has presented no evidence that it invests royalty payments into research and development. While Masimo cites Dr. Al-Ali's trial testimony, it is hopelessly vague on precisely this point. *See* Claassen Decl. Ex. 3 at 25 (Dr. Al-Ali: "I ***think a lot of what we make*** we put back into the system for innovating for the future[.]" (emphasis added)). Moreover, Dr. Al-Ali's testimony is undercut by the very corporate filings that Masimo cites without explanation, which show that Masimo's total revenues dwarf its research and development expenses, meaning that there is no reason to think that the revenue from any royalties paid by Apple would have been directed to research and development in particular. *See, e.g.*, Claassen Decl. Ex. 9 at 45 (Masimo's most recent 10-K, stating that Masimo's revenue was $1.5 billion, compared to research and development expenses of $126.4 million); *see also id.* Ex. 10 at 48 (10-Q stating, for first quarter of 2026, Masimo's revenue was $403.6 million and its research and development costs were $30 million). It is telling that Masimo has been unable to identify any evidence supporting its attorney argument that the royalties that would have been paid by Apple between 2020 and 2022 would have been put to work. And even if Masimo had not left this gap, it still has not presented any evidence indicating any expected returns on its research and development activities, let alone returns that would justify interest at a 7% rate if the funds invested in research and development were relatively inexpensive to borrow. *See infra* § II.A. Any attempt to build such a record in Masimo's reply would be both inequitable and procedurally improper. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 974 n.6 (C.D. Cal. 2012) ("The failure to raise this argument until the Reply brief is a separate, independent reason for rejecting [the] argument[.]").

***Finally***, Masimo contends that a court cannot "deny[] prejudgment interest without justification" and "'a full explanation why.'" Mot. 2 (quoting *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 36-37 (Fed. Cir. 2012)). But there is nothing wrong with concluding, as at least one federal court in California has already done, that

no prejudgment interest is warranted because the jury's award (here, $634 million) was fully compensatory. *See Conceptus*, 2012 WL 44064, at *4. *Whitserve* is inapposite. In that case, the district court concluded that the jury's $8.4 million award was "'adequate to compensate for the defendant's infringement'" without prejudgment interest, but only after it "specifically instructed the jury that they may 'not award any interest on any damages.'" *Whitserve*, 694 F.3d at 36. The Federal Circuit found an abuse of discretion because—***in light of the jury instruction***—"[t]he jury's award could not … constitute compensation," and the Federal Circuit apparently remanded for a "full explanation" of any future denial of prejudgment interest to make sure that the district court did not repeat its error. *Id.* at 36-37.

Neither Masimo nor Apple sought a jury instruction regarding interest in this case, even though such an instruction appears in a commonly used model instruction. *See* AIPLA, *Model Patent Jury Instructions* §10.0 (2025), https://tinyurl.com/323x7ybk; *see also* Dkt. 2765 at 180-189 (parties' competing damages instructions). If anything, *Whitserve* supports Apple's position that courts normally have discretion to decline to award prejudgment interest when the jury's award is fully compensatory. If the *Whitserve* district court's reasoning were *per se* invalid, there would have been no need for the Federal Circuit to reference the jury instruction—or to note that, in the absence of such an instruction, "[d]istrict courts are given broad discretion to interpret verdict forms." *Whitserve*, 694 F.3d at 36.

## II. In The Alternative, Any Prejudgment Interest Award Should Be At The Treasury Bill Rate With Only Simple Interest

### A. If Awarded, Prejudgment Interest Should Be At The Treasury Bill Rate

"[A]wards at the Treasury Bill rate are well within the court's discretion," *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. Appx. 965, 977 (Fed. Cir. 2020), and would be appropriate based on the specific facts of this case—namely, that any award of prejudgment interest would be a windfall, *see supra* pp. 2-3. Even if some

additional compensation were necessary, "[t]he Treasury Bill rate has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2018 WL 4849681, at *2 (N.D. Cal. Oct. 4, 2018) (collecting cases), *aff'd*, 809 F. App'x 965 (Fed. Cir. 2020).[4]

Applying the T-bill rate makes particular sense here, where Masimo has "not presented evidence suggesting it needed to borrow money because it was deprived of the damages award." *Verinata*, 2018 WL 4849681, at *2. Even then, it would be well within this Court's discretion to hold that a higher rate would still be unwarranted without proof of "a causal connection between [the] borrowing and the loss of the use of the money awarded as a result of … infringement." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming prejudgment interest at the 52-week T-bill rate); *see also Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2020 WL 2844410, at *5 (C.D. Cal. Apr. 2, 2020) ("Plaintiffs have not argued that they actually borrowed money at a rate higher than the T-bill rate, or that they did so because they did not possess the money from a reasonable royalty agreement." (emphasis omitted)). Masimo should not be permitted to remedy this failure of proof for the first time on reply. *See Toyota*, 838 F. Supp. 2d at 974 n.6; *see supra* p. 5.

Although Masimo contends that this Court's discretion should be "guided by" the goal of putting Masimo "'in as good a position as [it] would have been'" had the parties reached a reasonable royalty agreement (Mot. 4), Masimo does not identify any evidence supporting its suggestion that a flat prejudgment interest rate of 7% (or the prime rate) is needed to provide full compensation. In fact, publicly available data suggests that Masimo's effective borrowing rate during the relevant period was at one point as low as

---

[4] Even outside California, district courts frequently use the T-bill rate in patent cases. *E.g.*, *Sight Scis., Inc. v. Ivantis, Inc.*, 2026 WL 851257, at *18 (D. Del. Mar. 27, 2026); *Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*, 2025 WL 284643, at *3 (W.D. Tex. Jan. 23, 2025); *Mondis Tech. Ltd. v. LG Elecs., Inc.*, 2023 WL 3749992, at *12 (D.N.J. June 1, 2023); *see generally* Matthews, *Annotated Patent Digest* § 30:125.30 (2026).

1.88%, with a mean of 5.09%. Webster Decl. ¶¶11-12 (calculating Masimo's "cost of debt[,] … which is an indicator of the effective interest rate Masimo pays on borrowed funds"). The 52-week T-bill rate is accordingly a closer proxy for any harm that Masimo suffered than a flat 7% rate. *See id.* ¶12.

Unable to justify its requested rate based on historical fact, Masimo (at 5-6) presents three generic (and flawed) arguments for adopting the California rate. ***First***, Masimo erroneously asserts that the 7% rate should apply because "both parties are located in California." Mot. 5. A state's substantive law (particularly a constitutional provision apparently enacted to guard against the unethical practice of "Usury," *see* Cal. Const. art. XV, § 1), does not govern federal court proceedings regarding a matter like patent infringement that is exclusively federal. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989) ("Since the Patent Act of 1800, Congress has lodged exclusive jurisdiction of actions 'arising under' the patent laws in the federal courts, thus allowing for the development of a uniform body of law[.]"). In any event, prejudgment interest at the T-bill rate has been found appropriate even where parties on both sides of the case are based in California. *E.g.*, *Verinata*, 2018 WL 4849681, at *2; *see also* Compl. ¶¶3-5, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 3:12-cv-5501 (N.D. Cal. Oct. 25, 2012), Dkt. 1.

***Second***, Masimo wrongly argues that the 7% rate is "reasonable[]" because it is roughly the same (albeit higher) than the amount of interest Masimo would be entitled to under the prime rate. Mot. 6. This is a non-sequitur. While courts have relied on the prime rate to calculate interest, Masimo has presented no evidence why the prime rate is appropriate on the specific facts of this case.

***Third***, Masimo mistakenly contends that the flat 7% rate required by the California Constitution as a default in state law cases is more "administrable" than a rate that changes on a weekly or monthly basis. Mot. 5-6. Congress implicitly rejected this type of argument when it codified the T-bill rate for post-judgment interest. *See* 28 U.S.C. § 1961(a). In any event, both parties have retained qualified damages experts

who have demonstrated themselves capable of determining how to address fluctuations in interest rates and arrive at a single, prejudgment interest number. *Compare* Webster Decl. ¶¶7-9 (award calculated using T-bill rate) *with* Bergman Decl. ¶5 & Ex. 2 (award calculated using prime rate).

Ultimately, this case is very similar to *Verinata*, where the Federal Circuit rejected the plaintiff's request to replace prejudgment interest at the T-bill rate with an award at a higher prime rate. 809 F. App'x at 977. Like the plaintiff there, here Masimo "articulates no reason … why a higher rate is appropriate." *Id.* Apple respectfully submits that, as in *Verinata* and the many other cases cited above, this Court should apply the T-bill rate—if it awards prejudgment interest at all. *See TransPerfect Global, Inc. v. MotionPoint Corp.*, 2014 WL 6068384, at *5 (N.D. Cal. Nov. 13, 2014) (using the T-bill rate where the plaintiffs did "not present[] any compelling reasons to deviate from the method used to calculate post-judgment interest").

**B. Any Prejudgment Interest Should Not Be Compounded**

"[T]he determination whether to award simple or compound interest is a matter largely within the discretion of the district court." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (en banc). The same windfall concerns that support awarding no prejudgment interest at all—or at least applying the T-bill rate—also support awarding at most simple interest in this case. *See supra* pp. 2-3; *see also Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*, 2012 WL 12868479, at *2 (S.D. Cal. Mar. 19, 2012) (awarding simple interest and a rate below California's flat 7% where plaintiff's counter-proposal "would appear to overcompensate [the patentee] and be punitive to [the defendant]"); *Mondis*, 2023 WL 3749992, at *12 (awarding simple interest given "the absence of any demonstration that [the plaintiff was] entitled to quarterly compounding").

If this Court adopts Masimo's flat 7% rate request, the argument for simple interest is even stronger. California law does not dictate compound interest, and court decisions—including Masimo's leading case (at 4)—have awarded the 7% rate using

only simple interest. *E.g.*, *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1033 (C.D. Cal. 2018) (awarding interest "at the rate of seven percent simple interest per annum"), *vacated in part on other grounds*, 830 F. App'x 634 (Fed. Cir. 2020); *see also Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 2009 WL 981843, at *7 (E.D. Cal. Apr. 13, 2009) (similar). And granting Masimo interest at a 7% flat rate with annual compounding would make a meaningful difference; it would result in an award over $31 million more than the same rate in simple interest. *Compare* Mot. 1 *with* Webster Decl. ¶10. Masimo should not be permitted to pick and choose among different court decisions to maximize the benefits of California's default rate and favorable compounding, particularly when the jury verdict more than compensates Masimo for Apple's purported infringement.

## CONCLUSION

Masimo's motion for prejudgment interest should be denied. In the alternative, any prejudgment interest should be limited to simple interest at the T-bill rate, which amounts to $114,502,149.

Dated: September 4, 2026

Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: */s/ Mark D. Selwyn*
Mark D. Selwyn

*Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Apple Inc. certifies that this brief contains 3,465 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

Dated: September 4, 2026

Respectfully submitted,

MARK D. SELWYN
AMY K. WIGMORE
JOSEPH J. MUELLER
SARAH R. FRAZIER
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING HALE AND DORR LLP

BRIAN A. ROSENTHAL
GIBSON, DUNN & CRUTCHER LLP

KENNETH G. PARKER
HAYNES AND BOONE, LLP

By: */s/ Mark D. Selwyn*
Mark D. Selwyn